

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   APR - 4 2006

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| COLLEEN BERTHELOT, WIFE OF/AND | * | CIVIL ACTION |
| JACKIE BERTHELOT, HEBER | * | |
| DUNAWAY, ERIC ANDERSON & | * | NO. 05-4182 |
| AMY JANUSA WIFE OF/AND | * | |
| MICHAEL JANUSA | * | SECTION "K" |
|  | * | |
| PLAINTIFFS, | * | JUDGE DUVAL |
|  | * | |
| v. | * | MAGISTRATE 2 |
|  | * | |
| BOH BROS. CONSTRUCTION CO., LLC, | * | |
| WASHINGTON GROUP INTERNATIONAL, | * | |
| INC., VIRGINIA WRECKING COMPANY, INC., | * | |
| GULF GROUP, INC. OF FLORIDA, MODJESKI | * | |
| AND MASTER, INC., C.R. PITTMAN | * | |
| CONSTRUCTION COMPANY, INC., BURK- | * | |
| KLEINPETER, INC., BURK-KLEINPETER, LLC, | * | |
| B & K CONSTRUCTION COMPANY, INC., | * | |
| MILLER EXCAVATING SERVICES, INC., | * | |
| JAMES CONSTRUCTION GROUP, LLC, | * | |
|  | * | |
| DEFENDANTS. | * | |
|  | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *


**WASHINGTON GROUP INTERNATIONAL, INC.'S MOTION TO
RECUSE JUDGE STANWOOD R. DUVAL, JR. PURSUANT TO 28 U.S.C. § 455(A)**

_____ Fee_____
_____ Process_____
__X__ Dktd_____
_____ CtRmDep_____
_____ Doc. No_____

- 1 -

803681v.1

NOW INTO COURT, through its undersigned counsel, comes Defendant Washington Group International, Inc. ("WGI"), which pursuant to 28 U.S.C. § 455(a) and for reasons more fully set forth in the accompanying memorandum, moves for the disqualification of Judge Stanwood R. Duval, Jr., in this matter.  Defendant WGI further submits that after such recusal has been entered on the record, this case be reassigned to a United States District Judge not required to recuse himself in this matter pursuant to 28 U.S.C. § 455.

WHEREFORE, defendant WGI prays that this Honorable Court grant this Motion to Recuse Judge Stanwood R. Duval, Jr., and following recusal, refer this matter for designation of a United States District Judge whose recusal in this matter is not compelled pursuant to 28 U.S.C. § 455.

Dated:  April 4, 2006

Respectfully submitted,

*William D. Feeley*

William D. Treeby, State Bar No. 12901
John M. Landis, State Bar No. 7958
Heather S. Lonian, State Bar No. 29956
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone:  504-581-3200
Fax:  504-581-3361

Of Counsel:

George T. Manning
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309-3053
Phone:  404-521-3939
Fax:  404-581-8330

803681v.1

Adrian Wager-Zito
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: 202-879-3939
Fax: 202-626-1700

*Attorneys for Defendant*
*Washington Group International*

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Motion to Recuse has been

served upon all counsel of record by facsimile, this 4ᵗʰ day of April, 2006.

*[signature: William D. Treeby]*

803681v.1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | * | |
| | * | |
| COLLEEN BERTHELOT, WIFE OF/AND | * | CIVIL ACTION |
| JACKIE BERTHELOT, HEBER | * | |
| DUNAWAY, ERIC ANDERSON & | * | NO. 05-4182 |
| AMY JANUSA WIFE OF/AND | * | |
| MICHAEL JANUSA | * | SECTION "K" |
| | * | |
| PLAINTIFFS, | * | JUDGE DUVAL |
| | * | |
| v. | * | MAGISTRATE 2 |
| | * | |
| BOH BROS. CONSTRUCTION CO., LLC, | * | |
| WASHINGTON GROUP INTERNATIONAL, | * | |
| INC., VIRGINIA WRECKING COMPANY, INC., | * | |
| GULF GROUP, INC. OF FLORIDA, MODJESKI | * | |
| AND MASTER, INC., C.R. PITTMAN | * | |
| CONSTRUCTION COMPANY, INC., BURK- | * | |
| KLEINPETER, INC., BURK-KLEINPETER, LLC, | * | |
| B & K CONSTRUCTION COMPANY, INC., | * | |
| MILLER EXCAVATING SERVICES, INC., | * | |
| JAMES CONSTRUCTION GROUP, LLC, | * | |
| | * | |
| DEFENDANTS. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>NOTICE OF HEARING</u>

**PLEASE TAKE NOTICE** that the undersigned will bring the foregoing Motion

to Recuse Judge Stanwood R. Duval, Jr. pursuant to 28 U.S.C. § 455(a) before the Honorable

- 1 -

Stanwood R. Duval, Jr. in the United States District Courthouse, 500 Camp Street, New Orleans,

Louisiana 70130, on the 19th day of April 2006, at 9:30 a.m.

Dated:  April 4, 2006

Respectfully submitted,

*William D. Treeby*

William D. Treeby, State Bar No. 12901
John M. Landis, State Bar No. 7958
Heather S. Lonian, State Bar No. 29956
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone:  504-581-3200
Fax:  504-581-3361


Of Counsel:

George T. Manning
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309-3053
Phone:  404-521-3939
Fax:  404-581-8330

Adrian Wager-Zito
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone:  202-879-3939
Fax: 202-626-1700

*Attorneys for Defendant*
*Washington Group International*

803681v.1

# **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Notice of Hearing has been served upon all counsel of record by facsimile, this ___4th___ day of April, 2006.

_William P. Seeley_

803681v.1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| COLLEEN BERTHELOT, WIFE OF/AND JACKIE BERTHELOT, HEBER DUNAWAY, ERIC ANDERSON & AMY JANUSA WIFE OF/AND MICHAEL JANUSA | CIVIL ACTION<br><br>NO. 05-4182<br><br>SECTION "K" |
| PLAINTIFFS, | JUDGE DUVAL |
| v. | MAGISTRATE 2 |
| BOH BROS. CONSTRUCTION CO., LLC, WASHINGTON GROUP INTERNATIONAL, INC., VIRGINIA WRECKING COMPANY, INC., GULF GROUP, INC. OF FLORIDA, MODJESKI AND MASTER, INC., C.R. PITTMAN CONSTRUCTION COMPANY, INC., BURK-KLEINPETER, INC., BURK-KLEINPETER, LLC, B & K CONSTRUCTION COMPANY, INC., MILLER EXCAVATING SERVICES, INC., JAMES CONSTRUCTION GROUP, LLC, |  |
| DEFENDANTS. |  |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

- 1 -

## MEMORANDUM IN SUPPORT OF DEFENDANT
## WASHINGTON GROUP INTERNATIONAL, INC.'S
## MOTION TO RECUSE THE HONORABLE STANWOOD R. DUVAL, JR.
## PURSUANT TO 28 U.S.C. § 455(a)

Defendant Washington Group International, Inc. ("WGI") submits this memorandum of law in support of its Motion to Recuse The Honorable Judge Stanwood R. Duval, Jr. pursuant to 28 U.S.C. § 455(a). The issue, under § 455(a) and analogous cases applying it, is not the subjective ability of the Court or any judge in this District to maintain the same high standards of impartiality and fairness brought to every case. Rather, the question is whether a reasonable person might legitimately question the impartiality of a court which experienced Hurricane Katrina and its aftermath firsthand. In light of this objective standard, appellate courts have not hesitated to recuse entire benches affected by smaller-scale disasters, *see In re Nettles*, 394 F.3d 1001 (7th Cir. 2005) and *Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995), or to require recusal of individual judges whose family members may have a financial interest in the litigation. *Tramonte v. Chrysler Corp.*, 136 F.3d 1025 (5th Cir. 1998). Given the unprecedented destruction caused by Hurricane Katrina and its impact on the Court, its family, and staff, WGI respectfully submits that recusal is warranted under the objective standards set forth in § 455.

### BACKGROUND

Hurricane Katrina has affected everyone in and around New Orleans in ways impossible to quantify and difficult to appreciate. More than 1,000 Louisiana residents were killed as a result of the storm and its immediate aftermath.[1] Hundreds of thousands of New Orleans residents – including the very individuals that plaintiffs in this action purport to represent – have been displaced and scattered throughout the country, from locations in neighboring states such as

---

[1] Associated Press, "Half a Year Later, New Orleans is Far From Whole," Feb. 25, 2006, attached as Exhibit A.

803756v.1

Texas[2] to places as far away as Massachusetts, Nevada and California.[3]  Those that remained or

returned still have to contend on a daily basis with widespread destruction and the loss of many

of the most basic amenities:  less than 40% of the pre-Katrina residents have electrical power,

and only 32% are receiving gas for their homes.[4]  In the Lower Ninth Ward, a midnight-to-6 a.m.

curfew remains in effect, and only 3% of residents have access to gas.[5]  Moreover, the extent of

publicity attendant to the devastation and destruction caused by Hurricane Katrina, the ongoing

"blame game" coloring every edition of the local newspaper, and storm-driven passions are

likely to forever change the face of the city.[6]

The storm also impacted the lives of the judges and staff of the federal courthouse in New

Orleans.  As the Court well knows, in the immediate aftermath of Hurricane Katrina, the court's

operations were suspended and judges were forced to relocate to temporary offices in Baton

Rouge, Lafayette, Houma,[7] and even as far away as Houston.[8]  Months passed before judges and

---

[2]     See, e.g., Tara Young, "Evacuees May Dry Up Houston Job Market," *Times-Picayune*, Sept. 19, 2005 at B08, attached as Exhibit B.

[3]     See, e.g., Jessica Fargen, "Big Easy Exiles find Lots to be Thankful for in Hub," *The Boston Herald*, Nov. 25, 2005 at p. 6, attached as Exhibit C; Bill Walsh, "Evacuees in Hotels Get FEMA Reprieve," *Times-Picayune*, Nov. 23, 2005 at A.1, attached as Exhibit D.

[4]     Joe Gyan, Jr., "Infrastructure Repair, Cleanup Massive Jobs," *The Advocate*, A6, March 4, 2006, attached as Exhibit E.

[5]     *Id.*

[6]     The court is undoubtedly aware of public sentiments about Hurricane Katrina (and toward certain defendants in these cases), whether expressed as jokes about the preparedness for or the response to the storm, or anger about the pace of recovery and rebuilding efforts.  The Court has previously described some of those efforts as "notoriously erratic and numbingly insensitive."  *McWaters v. Federal Emergency Management Agency*, Civil Action No. 05-5488, 2005 U.S. Dist. LEXIS 39580 at *32-33 (Dec. 12, 2005).

[7]     See, e.g., Susan Finch, "U.S. Court Nearly Ready to Make Return to N.O.," *Times-Picayune*, Oct. 25, 2005 at B1, attached as Exhibit F.

[8]     See, e.g., Associated Press, "Federal Vioxx Cases Moving to Houston Due to Katrina," Sept. 6, 2005, attached as Exhibit G.

803756v.1

courthouse staff were able to return to their chambers in New Orleans,[9] and since its reopening, the courthouse has graciously volunteered to share its limited space with the state courts.[10] Moreover, the judges and staff of the Eastern District are members of the New Orleans community and these "children of the storm" (as Judge Beer recently described courthouse residents) unquestionably share in the loss brought about by Hurricane Katrina and its aftermath.[11]

This case – and the dozens like it pending in this District (collectively, the "Katrina Cases") – arises out of this unprecedented natural disaster.[12] Some of the judges to whom the Katrina Cases were previously assigned elected to recuse themselves given actual or perceived interests in the litigation.[13] Judge Porteous recused himself from this very case because his adult son's home was flooded as a result of the levee breaches in the wake of Hurricane Katrina.[14]

---

[9]   *See* Order Terminating Suspension of Deadlines and Delays, Nov. 3, 2005 (noting that the federal courthouse in New Orleans reopened on November 1, 2005), attached as Exhibit H.

[10]   *See, e.g.*, Associated Press, "State Courts to Use Federal Building in New Orleans," Dec. 9, 2005 (noting that state criminal courts will use two federal courtrooms four days a week), attached as Exhibit I.

[11]   Order, *Elizabeth Jung, et al. v. Federal Emergency Management Agency*, Civil Action No. 06-0947 (Mar. 3, 2006), attached as Exhibit J.

[12]   *O'Dwyer, et al. v. United States of America, et al.*, Civil Action No. 05-4181; *Berthelot, et al. v. Boh Bros. Construction, et al.*, Civil Action No. 05-4182; *Vodanovich v. Boh Bros. Construction, et al.*, Civil Action No. 05-4191; *Harvey v. Board of Commissioners for the Orleans Levee District*, Civil Action No. 05-4568; *Vodanovich v. Boh Bros. Construction, et al.*, Civil Action No. 05-5237; *Kirsch, et al. v. Boh Bros. Construction Co., et al.*, Civil Action No. 05-6073; *Ezell, et al. v. Boh Bros. Construction Co., et al.*, Civil Action No. 05-6314; *Vanderbrook, et al. v. State Farm Fire & Casualty*, Civil Action No. 05-6323; *Brown, et al. v. Boh Brothers Construction, et al.*, Civil Action No. 05-6324; *LeBlanc, et al. v. Boh Bros. Construction Co., et al.*, No. 05-6327; *Bradley, et al. v. Modjeski and Master, Inc.*, Civil Action No. 05-6359; *Armstead, et al. v. C. Ray Nagin, Mayor*, Civil Action No. 05-6438; *Sullivan, et al. v. State Farm Fire & Cas. Ins.*, Civil Action No. 06-0004; *Tauzin, et al. v. Board of Comm. for the Orleans Levee District*, Civil Action No. 06-0020; *Conlay v. Encompass Ins. Co., et al.*, Civil Action No. 06-0151; *Rogers v. Encompass Ins. Co., et al.*, Civil Action No. 06-0152; *Baird, et al. v. Encompass Ins. Co., et al.*, Civil Action No. 06-0153; *Humphreys v. Encompass Ins. Co., et al.*, Civil Action No. 06-0169; *Bradley, et al. v. Pittman Const. Co., et al.*, Civil Action No. 06-0225; *Finney, et al. v. Boh Brothers, et al.*, Civil Action No. 06-0886; *Chehardy, et al. v. J. Robert Wolley, et al.*, Civil Action No. 06-1140; *Chehardy, et al. v. J. Robert Wolley, et al.*, Civil Action No. 06-1162; *Chehardy, et al. v. J. Robert Wolley, et al.*, Civil Action No. 06-1163.

[13]   WGI is aware, for example, that Judge Zainey recently recused himself from a class action in which the plaintiffs sought to represent a class of all persons who suffered "damage as a result of Hurricane Katrina's

803756v.1

The Court has previously informed the parties that his daughter's house was damaged in the flooding after Hurricane Katrina, apparently making her a member of the proposed plaintiff classes in various of the Katrina Cases.[15]  The Court also informed the parties that the flood damage suffered by his daughter did not appear to provide grounds for his recusal pursuant to § 455 because she had already been compensated by her insurance company, and that she would opt out of any plaintiff class that may be certified in the future.[16]  The Court also stated that his courtroom deputy suffered flooding in her home in New Orleans East and has been forced to relocate her family to Houma as a result.[17]

On March 24, 2006 counsel for the Orleans Levee District ("OLD") filed a motion in this case (and each of the Katrina Cases naming OLD as a defendant) calling for *en banc* recusal of the judges of the Eastern District of Louisiana pursuant to § 455(a), or in the alternative,

---

(continued...)

wind and storm surge." Judge Zainey observed that he and his spouse, three of his siblings, and his entire staff suffered substantial wind and water damage in the wake of the storm. Citing 28 U.S.C. §455, Judge Zainey recused himself from the proceedings.  A copy of the order in *Charles Villa, et al. v. Columbia Gulf Transmission Co., et al.,* Civil Action No. 05-4569 (Zainey, J.) is attached as Exhibit K.

[14]   Judge Porteous recused himself citing 28 U.S.C. § 455(a), which provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a) (2006).  *See Berthelot, et al. v. Boh Bros. Construction Co., et al,* Civil Action No. 05-4182 (Porteous, J.), Feb. 23, 2006, attached as Exhibit L.  The case, along with six other related cases, were subsequently reassigned to this Section.

[15]   *See* Transcript of Hearing at 25, *O'Dwyer, et al. v. United States of America, et al.,* Civil Action No. 05-4181 (March 24, 2006) (noting that the Court's daughter "had six inches of water [in her home]").  A copy of the transcript is attached as Exhibit M.

[16]   *See* Transcript of Hearing at 25, *O'Dwyer, et al. v. United States of America, et al.,* Civil Action No. 05-4181 (March 24, 2006) (noting that because Court's daughter "was very fortunate in her insurance coverage and has absolutely zero economic damage," "she will opt out of any class").  The United States Magistrate Judge assigned to this case, Magistrate Judge Joseph C. Wilkinson, Jr., has made similar statements, informing the parties that while some of his family members' homes flooded as a result of the hurricane, they too would opt out of any classes that may be certified since, he presumed, they were satisfied with their insurance recoveries.  *Id.* at 26.  Magistrate Judge Wilkinson also noted that his law clerk's home flooded, but that she also had "adequate coverage which has already paid off and probably doesn't have any damage."  *Id.*  In light of this fact, Magistrate Judge Wilkinson informed counsel, his recusal did not appear necessary under § 455.

[17]   *Id.* at 73-74.

803756v.1

§ 455(b)(4).[18]  On March 28, the Court issued an order denying OLD's motion as procedurally

improper.[19]   In its Order, the Court addressed potential conflicts of interest.   The Court

concluded that "it had no financial interest in the subject matter of these cases as neither he nor

his family experienced any economic damage as a result of the subject flooding," and therefore

there was "no basis for recusal in these matters."[20]   Nonetheless, the Court directed the parties to

file any individual recusal motions on or before April 4, 2006.

## ARGUMENT

**I.      THE OBJECTIVE STANDARD OF 28 U.S.C. § 455(a) REQUIRES
RECUSAL IN CASES INVOLVING LARGE-SCALE DISASTERS
THAT AFFECT JUDGES AND COURTHOUSE PERSONNEL.**

The recusal provision of § 455(a) is applied according to a mandatory, objective standard

in order to prevent even the *appearance* of judicial partiality, and *regardless* of the existence or

lack of actual bias on the part of the court.   Settled Supreme Court precedent holds that this

objective standard is necessary to preserve the public's confidence in the integrity of the nation's

judicial system.   When faced with a large-scale disaster such as that caused by Hurricane

Katrina, this mandatory and objective standard requires that judges who are members of the

---

[18]      A copy of the motion is attached as Exhibit N.  Eight of the cases subject to the motion also name WGI as a
defendant.  The cases are *Berthelot, et al. v. Boh Bros. Construction Co., et al.*, Case No. 05-4182; *Ann
Vodanovich, et al. v. Boh Bros. Construction Co., et al.*, Case No. 05-5237; *Kirsch, et al. v. Boh Bros.
Construction Co., et al.*, Case No. 05-6073; *Brown, et al. v. Boh Bros. Construction Co., et al.*, Case No.
05-6324; *LeBlanc, et al. v. Boh Bros. Construction Co., et al.*, Case No. 05-6237; *Ezell, et al. v. Boh Bros.
Construction Co., et al.*, Case No. 05-6314; *Tauzin, et al. v. Board of Commissioners of the Orleans Levee
District, et al.*, Case No. 06-0020; and *Finney v. Boh Bros. Construction Co., et al.*, Case No. 06-0886.
With minor variations not pertinent here, each of these cases seek recovery on behalf of a class of persons
who suffered damages as a result of flooding caused by the failure of the levees and floodwalls in New
Orleans on or about August 29, 2005.

[19]      A copy of the March 28 order is attached as Exhibit O.  In the interest of judicial efficiency, WGI believes
that OLD's motion for *en banc* recusal with Judge Duval was a proper method to address this issue.
However, in deference to the Court and in the interest of securing a ruling on the merits of the required
recusal, WGI is filing individual motions in each case pending before Judge Duval and Magistrate Judge
Wilkinson.

[20]      *Id.* at 3.

- 6 -

community affected by such a profound catastrophe must recuse themselves in accordance with the purpose underlying the statute.

> A.   Recusal Decisions Under 28 U.S.C. § 455(a) are Determined Under an Objective Standard, Regardless of the Subjective Impartiality of the Presiding Judge.

Pursuant to 28 U.S.C. § 455(a) (2006), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The purpose of the provision is not simply to ensure an impartial judge presides over a case for the benefit of the parties in that case, but also "to promote public confidence in the integrity of the judicial process." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859-60 (1988) (citing legislative history of § 455); *accord United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995) (noting that "public respect for the judiciary demands" the standards for recusal pursuant to § 455(a)).

The language of the statute sets forth an objective test, without regard to the presence of any actual bias on the part of the judge; instead, "[t]he goal of section 455(a) is to avoid even the *appearance* of partiality." *Liljeberg v. Health Services Acquisition Corp.*, 796 F.2d 796, 802 (5th Cir. 1986), *aff'd* 486 U.S. 847 (1988) (emphasis added).  To this end, the Supreme Court has held that "[i]f it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an *appearance of partiality is created* even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. at 860 (emphasis added); *accord United States v. Anderson*, 160 F.3d 231, 233 (5th Cir. 1998) ("The party seeking recusal must demonstrate that, if a reasonable person knew of all of the circumstances, they would harbor doubts about the judge's impartiality.") (citation omitted).  Thus, "[i]f the question of whether §

- 7 -

455(a) requires disqualification is a close one, the balance tips in favor of recusal." *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995); *accord In re Chevron U.S.A., Inc.*, 121 F.3d 163, 164 (5th Cir. 1997).

Under this objective standard, it is entirely possible that § 455(a) would serve to "bar trial by [a] judge[ ] who ha[s] no actual bias and who would do [his] very best to weigh the scales of justice equally between contending parties." *Nichols*, 71 F.3d at 352 (quoting *Jordan*, 49 F.3d at 157). Even when a judge has every intent to be impartial – and would, if permitted to hear the case, prove a model of even-handed judicial temperament – recusal may be required to preserve the public's trust in the impartiality of the judiciary. *See, e.g., United States v. Anderson*, 160 F.3d 231, 234 (5th Cir. 1998); *accord U.S. v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998) ("Judges, accustomed to the process of dispassionate decision making and keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regard asserted conflicts to be more innocuous than an outsider would."). Consequently, regardless of a judge's intent to be a neutral and fair arbiter of the case before him, § 455(a) may still compel his recusal when the totality of the circumstances creates a reasonable doubt as to his ability to be impartial.

> B.    Appellate Courts Have Consistently Held That the Impartiality of Judges Who Have Been Affected in Any Way By a Disaster Would Reasonably Be Questioned Pursuant to § 455(a).

The unprecedented impact Hurricane Katrina continues to have on the City of New Orleans and its residents renders any other disaster an imperfect analogy.[21] Nonetheless, prior cases addressing large-scale disasters compel the conclusion that members of the court who

---

[21] To be sure, any inquiry under § 455(a) is fact-intensive "and must be judged on its unique facts and circumstances rather than by comparison to situations considered in prior jurisprudence." *United States v. Anderson*, 160 F.3d 231, 233 (5th Cir. 1998) (*citing Jordan*, 49 F.3d at 157).

- 8 -

experienced flooding (whether directly or through family or staff) should recuse themselves from any matter relating to the cause of the flooding.

In the two closest analogies to this situation, the United States Courts of Appeal for the Tenth and Seventh Circuits held that all judges in the affected districts should be recused. First, in the case of the bombing of the Alfred P. Murrah federal building in Oklahoma City, the Tenth Circuit found that no judge in the Western, Eastern, or Northern District of Oklahoma could preside over the trial of an alleged co-conspirator to the bombing because some court employees – none of them judges or their immediate families – were injured in the explosion, or had friends or relatives who were. *Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995). Second, in the case of a plot to attack the federal courthouse in Chicago, the Seventh Circuit found that no judge from the Northern District of Illinois could preside over the trial of the plotter even though his threat to the judges' safety never materialized. *In re Nettles*, 394 F.3d 1001 (7th Cir. 2005). Neither of these cases presented a situation in which a judge had a direct interest in the case, nor did either involve any accusations of actual bias. But both reflect §455(a)'s concern with the appearance of partiality, and demonstrate the consistently applied rule that where the case of disqualification is a close one, recusal is the appropriate course. *Nichols*, 71 F.3d at 352; *accord Chevron*, 121 F.3d at 164 (citing *Nichols*).

In *Nichols*, the Tenth Circuit addressed the question whether an Oklahoma district judge was required to recuse himself pursuant to § 455(a) in the trial of Terry Nichols, one of the alleged coconspirators in the 1995 bombing of the Murrah building. The explosion destroyed the Murrah building and caused "massive damage" to the U.S. Courthouse one block south, shattering glass windows, jarring loose ceiling tiles and light fixtures, and severely damaging the district court chambers located therein. *Nichols*, 71 F.3d at 349-50. Apart from the cosmetic

- 9 -

damage to the building itself, a number of court personnel were injured in the explosion, and a few court employees had friends or relatives who were injured or killed in the explosion. *Id.* at 350. None of the judges in the courthouse were injured in the explosion, nor were their immediate family members affected. *Id.* In the prosecution that followed, Nichols' criminal case was randomly assigned to Judge Wayne Alley. Nichols moved for Judge Alley's recusal pursuant to § 455(a). *Nichols*, 71 F.3d at 350. Judge Alley denied the motion, and Nichols timely filed a petition for a writ of mandamus with the Tenth Circuit asking for either (i) disqualification of all judges of the Western District of Oklahoma, or (ii) an order requiring Judge Alley to permit discovery and hold a hearing on the factual bases for the disqualification motion. *Id.*

After considering the relevant facts, the Tenth Circuit granted Nichols' motion to recuse all of the judges in the Western District of Oklahoma. The Court of Appeals noted at the outset that there was "no allegation here of judicial impropriety; Judge Alley has conducted himself and these proceedings with true professionalism. Were the standard by which we must judge this case a subjective one, we could end our discussion here. But our task is to address the objective requirements of § 455(a)." *Id.* at 352. The court concluded that the application of these objective requirements mandated Judge Alley's recusal:

> Judge Alley's courtroom and chambers were one block away from the epicenter of a massive explosion that literally rocked downtown Oklahoma City, heavily damaged the Murrah building, killed 169 people, and injured many others. The blast crushed the courthouse's glass doors, shattered numerous windows, ripped plaster from ceilings, dislodged light fixtures, showered floors with glass, damaged Judge Alley's courtroom and chambers, and injured a member of his staff, as well as other court personnel and their families.

*Id.* In light of these extraordinary circumstances, the Tenth Circuit held, "a reasonable person could not help but harbor doubts about the impartiality of Judge Alley," and granted Nichols' petition for a writ of mandamus. *Id.*

- 10 -

In rendering its decision, the Tenth Circuit did not require a finding that the judges of the Western District had any *actual* interest or bias in the case.  Instead, the court decided the issue in light of the totality of the circumstances surrounding the litigation and held that, when the facts were viewed objectively, it was impossible not to question the impartiality of *any* judge in the district who might preside over the case.  In fact, the Tenth Circuit took the additional step of disqualifying *all* federal judges in Oklahoma (including the Northern, Eastern and Western Districts) and ordering that the case be reassigned to "an available judge from [the] very large pool of judges outside the State of Oklahoma."  *Id.*

Recently, the Seventh Circuit confronted a similar recusal issue in *In re Nettles*, 394 F.3d 1001 (7th Cir. 2005).  Gale Nettles was charged with attempting to purchase ammonium nitrate fertilizer in a plot to bomb the Dirksen Federal Courthouse in downtown Chicago.  *Nettles*, 394 F.3d at 1002.  The Dirksen Courthouse housed the United States District Court for the Northern District of Illinois as well as the United States Court of Appeals for the Seventh Circuit.  *Id.*  The case was randomly assigned to Judge Bucklo of the Northern District.  Nettles moved to recuse her and the other judges of the Northern District, arguing that because the alleged crime involved a threat to the safety of the judges in the Dirksen Courthouse, their impartiality in the subsequent trial could reasonably be questioned pursuant to § 455(a).  *Id.*  After Judge Bucklo denied the motion, Nettles petitioned the Seventh Circuit for a writ of mandamus disqualifying the judges of the Northern District from hearing the case.

In deciding whether to grant the writ, Judge Posner, writing for the panel, noted that in determining whether – in accordance with the statute – a reasonable outside observer would question the judges' impartiality, it was important to remember that "these outside observers are

803756v.1

less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be."

*Id.* (quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990)). Moreover, the court observed,

> [a] reasonable observer would think that a judge who works in the Dirksen
> building would want Nettles to be convicted and given a long sentence, rather
> than to be set free, either forthwith or sooner rather than later, to make another
> attempt to destroy the courthouse or its occupants. It is true that if Nettles is
> innocent, and therefore not a threat, the judge's incentive to convict him would be
> eliminated or at least attenuated. But (it might appear to the reasonable, but
> outside, observer of the judicial system) a judge might be convinced of Nettles'
> guilt yet concerned that a jury might acquit him, and might therefore rule against
> him on evidentiary and procedural issues, regardless of the merits.

*Nettles*, 394 F.3d at 1003. The Seventh Circuit, like the Tenth before it, took great pains to note

that the question of whether Judge Bucklo harbored any *actual* bias against Nettles was

immaterial. *Id.* ("We do not suggest that Judge Bucklo would in fact be prejudiced against

Nettles. *The issue is appearances.*") (emphasis added). Consequently, the court granted Nettles'

petition and issued the writ disqualifying Judge Bucklo and any other judge of the Northern

District from hearing the case.[22]

   In both of these cases, the Court of Appeals required recusal, regardless of the judges'

subjective impartiality because "[s]cienter is not an element of a violation of § 455(a)."

*Liljeberg*, 486 U.S. at 859. Rather, applying the plain language of § 455(a), those courts held

that the totality of the *objective* facts was such that a reasonable person might question the

---

[22]   Indeed, the judges of the Seventh Circuit were so concerned about the appearance of impartiality that after
granting Nettles' petition for mandamus disqualifying the district judges of the Northern District, they
subsequently recused themselves on their own motion, observing that

> Although we feel ourselves to be no more prejudiced against Nettles than Judge Bucklo does, a
> reasonable observer might conclude that, should he be convicted and sentenced, and appeal, he
> would no more get a fair shake in our court that he would in the district court, since the appellate
> judges in the Courthouse are as menaced by an Oklahoma City style attack as the district
> judges. . . . [Instead of this panel designating a district judge from outside the Northern District, a]
> more efficient method of proceeding is for us to recuse ourselves now, to be replaced by judges
> from other circuits who will be designated to hear any further proceedings instituted by Nettles in
> the Court.

*Nettles*, 394 F.3d 1001, 1003 (7th Cir. 2005).

objective impartiality of any judge of the affected district.   Given the far greater scope and destruction wrought by Hurricane Katrina, that conclusion is all the more compelling here.

## II.   THE OBJECTIVE OBSERVER STANDARD COMPELS RECUSAL IN THIS CASE.

### A.   The Court's Impartiality Would Reasonably Be Questioned Under § 455(a).

The scale of the destruction wrought by Hurricane Katrina is orders of magnitude greater than that present in either *Nichols* or *Nettles,* tragedies in which the Courts of Appeal held it was reasonable to question the impartiality of any federal judge sitting in the district where the incidents in question occurred.   A similar result must follow in the face of the damage confronting the citizens of New Orleans – including the Court, its family, and staff – in the wake of Hurricane Katrina.

When compared to the attempted bombing of the Dirksen Courthouse in *Nettles* (in which, thankfully, no one was harmed) or the terrorist attack that gave rise to *Nichols* (killing 169 people, completely destroying one federal building, and causing nearly one million dollars' worth of damage to another), the extent of the damage wrought by Hurricane Katrina stands worlds apart.   As the Court observed when presiding over cases involving the Federal Emergency Management Agency's Short-Term Lodging Program, more than 1,000 Louisianans perished as a result of Hurricane Katrina, which left 80% of New Orleans under water and a minority of homes and structures untouched.   *McWaters v. Federal Emergency Management Agency*, Civil Action No. 05-5488, 2005 U.S. Dist. LEXIS 39580 at *3-4 (Dec. 12, 2005).   By any estimate, the storm and its aftermath caused billions of dollars in damage.

WGI harbors no doubt that the Court has every intention to address this litigation with the same impartiality and exemplary standard of judicial conduct brought to every case in the courtroom.   As the foregoing discussion makes clear, however, the subjective intent of the Court

803756v.1

to remain impartial has absolutely no bearing on the objective question of whether recusal is mandated pursuant to § 455(a).  The objective facts of this case clearly show that the Court – which is located in close proximity to the Ernest N. Morial Convention Center and the Louisiana Superdome, two monuments to the devastation caused by the storm – has been affected by Hurricane Katrina in such a way as to require recusal under the objective standard set forth in § 455(a).

      B.      Even if The Court's Family Members Were to Opt Out of the Purported Plaintiff Class, § 455(a) Would Still Require Recusal in This Case.

The Court informed the parties that his adult daughter suffered flood damage in her home as a result of Hurricane Katrina, that she has been compensated by her insurance company, and that she has no interest in joining the purported plaintiff class in this action.[23]  While the parties certainly appreciate the Court's disclosure, WGI respectfully submits that such assurances are insufficient to neutralize a reasonable observer's questions about the Court's impartiality in this matter.  Indeed, settled Fifth Circuit precedent expressly holds that facts giving rise to a duty to recuse under § 455 cannot be "cured" through any pledge – however sincere and well-intentioned – that a judge or his family member will "opt out" of a proposed class.[24]

In *Tramonte v. Chrysler Corp.*, 136 F.3d 1025 (5th Cir. 1998), the Fifth Circuit considered whether Judge Lemmon's recusal was required under § 455(b) in a putative class action brought on behalf of all persons who had purchased defective Chrysler automobiles.

---

[23]    *See* Transcript of Hearing at 25, *O'Dwyer, et al. v. United States of America, et al.*  The Court also disclosed that his deputy courtroom clerk was forced to move her home and her family from New Orleans East to Houma following the storm.  *Id.* at 73-74.  As a result, she would apparently be a member of the putative classes described in various of the Katrina Cases.

[24]    Nor would an objective violation of §455 be remedied by the court's assurances that "neither he nor his family experienced any economic damage as a result of the subject flooding."  *See* Exhibit O at 3.  It appears that the Court's conclusion rests on a narrow reading of the putative class definitions, as well as an assumption that payment by his daughter's insurance company might render her ineligible for membership in the putative classes.

803756v.1

*Tramonte*, 136 F.3d at 1026.  While the case was pending before Judge Lemmon, Chrysler ran a

"routine" check of its records and discovered that someone in Judge Lemmon's household owned

a Chrysler automobile.  Chrysler subsequently moved for Judge Lemmon's recusal pursuant to

§ 455.  *Id.* at 1027.  Two months later, Judge Lemmon denied the motion, noting in the minute

order that "[a]lthough members of my family are present and past owners of Chrysler vehicles,

only one of them is a present owner and he has no interest in joining the putative class in this

case.  I have no 'direct or immediate' interest in this case which requires my recusal."  *Id.*

On appeal, the Fifth Circuit noted that while the record was ambiguous as to two facts

critical to the recusal determination,[25] it was nevertheless clear that if the family member was

Judge Lemmon's spouse or minor child residing in her home, Judge Lemmon would have no

choice but to recuse herself pursuant to § 455(b)(4).  *Id.* at 1030 ("Although few federal courts

have ever reached the issue squarely, it seems fairly obvious that where a judge or an immediate

family member is a member of a class seeking monetary relief, § 455(b)(4) requires recusal

because of the judge's financial interest in the case.").  The court went on to hold that if recusal

was required under § 455, any proposed "opt out" by Judge Lemmon on behalf of her family

members was immaterial.[26]  *Id.* at 1031-32.  Judge Lemmon ultimately recused herself and the

case was realloted to Judge Fallon.[27]

---

[25]   In order to rule on the propriety of Judge Lemmon's decision not to recuse herself in this case pursuant to § 455(b)(4) (which mandates recusal when a judge "knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy") or § 455(b)(5)(i) (mandating recusal when the judge or his spouse is within the third degree of relationship to a party to the litigation) it needed to determine (i) whether the family member who currently owned a Chrysler was her spouse or a minor child residing in Judge Lemmon's household, and (ii) whether the Chrysler was purchased during the time period alleged in the plaintiff's complaint.  *Tramonte*, 136 F.3d 1029.  Ultimately, the Fifth Circuit remanded the case to Judge Lemmon for her to consider her recusal decision in light of the additional detail she could provide on this point, as well as in accordance with the guidance set forth by the court.  *Id.* at 1031.

[26]   While subsection (f) of § 455 allows a judge to avoid an otherwise mandatory recusal if he (or his family member) promptly divests himself of the disqualifying interest, the plain text of the provision states that

- 15 -

While the present motion relies on subsection (a) of § 455 as opposed to subsection (b), the *Tramonte* court's observations regarding a judge's inability to "cure" an otherwise mandatory recusal merely by pledging to opt out – or to cause a family member to opt-out – of any purported class applies squarely to these facts.[28]   Under the objective standard set forth in § 455(a), the existence of any family or staff ties to the putative classes here strengthens the case for the Court's recusal.   The Court's assurances that any family members would opt out of any class certified in this case is indistinguishable from the similar pledge made by Judge Lemmon in *Tramonte*.   While WGI does not doubt the Court's good intentions in its attempt to avoid the appearance of partiality, such conscientious assurances have no bearing on the objective-observer standard of § 455(a), which requires the Court's recusal under these extraordinary circumstances.

---

(continued...)

this option is available only after the judge has devoted "substantial judicial time" to the matter. *Id.* at 1031. That was not the case in *Tramonte*, and is not the case here.   In *Tramonte*, the Fifth Circuit observed:

> Chrysler argues to us that Judge Lemmon's disavowal of an interest in participating in the class action was somehow inadequate, as it was not formal and it was not clear that Judge Lemmon had the legal authority to speak on behalf of her family member. Whether this is true or not is immaterial, however, because § 455 makes the divestment option unavailable to Judge Lemmon. Judge Lemmon first received this case on July 24, 1996, and she ruled on the recusal and remand motions summarily on November 8, 1996. From the record, it appears that Judge Lemmon did little additional work on the matter in the interim. Thus, it can hardly be said that Judge Lemmon devoted "substantial judicial time" to the case.

*Id.* at 1031-32.

[27]   Order, *Tramonte v. Chrysler Corp.*, Civil Action No. 95-2109 (April 15, 1999) (copy attached as Exhibit P).

[28]   Although this motion does not argue that any provision of § 455(b) mandates the Court's recusal in this case, WGI observes that the Orleans Levee District's Motion For Disqualification of the District and Magistrate Judges of the United States District Court for the Eastern District of Louisiana *En Banc* correctly noted that every member of the Court would be a putative class member in classes described by several other Katrina Cases. *See* Exhibit O. If the Katrina Cases are to be consolidated or administered as a group, the Court should bear this fact in mind when considering the present motion.

- 16 -

803756v.1

**CONCLUSION**

For the foregoing reasons, WGI respectfully asks that the Court issue an order pursuant to

28 U.S.C. § 455(a) recusing itself from any further consideration of this case.

Dated: April 4, 2006

Respectfully submitted,

*William D. Treeby*

William D. Treeby, Bar No. 12901
John M. Landis, Bar No. 7958
Heather S. Lonian, Bar No. 29956
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone: 504-581-3200
Fax: 504-581-3361

Of Counsel:

George T. Manning
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309-3053
Phone: 404-521-3939
Fax: 404-581-8330

Adrian Wager-Zito
Julie E. McEvoy
Christopher R. Farrell
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: 1-202-879-3939
Fax: 1-202-626-1700

*Attorneys for Defendant*
*Washington Group International*

**C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Memorandum in Support

of Defendant Washington Group International, Inc.'s Motion to Recuse the Honorable Stanwood

R. Duval, Jr. Pursuant to 28 U.S.C. § 455(a) has been served upon all counsel of record by

facsimile, this 4th day of April, 2006.

*William D. Treeby*

William D. Treeby

- 17 -

803756v.1

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED