1   on that.  It may be clear to you, it's not quite clear to us, but I

2   am sure that anybody who read the Old Testament has a fear of

3   flooding.  But we just need to know the context of where, what you

4   mean by it.  Just in thinking about classes.

5        Let me point out to you something that, I look at the size

6   of this and we don't know how much we are going to let it grow.  Let

7   me point out right now, too, before I make this point, that Judge

8   Vance has a ton of cases under the umbrella relating to insurance

9   coverage, not the kind, it's 22:695 coverage, so it's a different

10  case than you have, but she has about 45 of those, but I don't think

11  any of those are included in this umbrella; but she has her own

12  umbrella and she volunteered to do that in an attempt to have

13  consistent rulings coming out of this court.

14        All right.  When we get to the committee structure, it's

15  going to be very important, and I am going to make those

16  appointments and then you're going -- I'd like you to, who are on

17  the committee to name the lead person.  Just to let you know, if you

18  really want to be on the committee there may be, I am not saying

19  there will be, I am not omniscient, but there may be cost for

20  staffing, administrative costs, may be a special master down the

21  line; in other words, if you don't have, if you don't want to pony

22  up a little money, don't do it.  Have the wherewithal to do it and

23  include that in your applications, when we do that.

24        On April the 6th I will formalize that more, I am

25  interested to see what you think about my suggested structure, you

1   may hate it and you may have a better suggestion.

2           As we said in our other order, because of the number of

3   people, we love to hear from you, if you're calling to invite us to

4   a party that's great.  But otherwise, don't call chambers with

5   questions, fax them in writing because we simply, we do have other

6   customers, believe it or not, and this would be impossible unless I

7   can designate one person for those calls and I don't have the luxury

8   of that.  So for the present time, if you have questions, and you

9   may have plenty, please fax them and make it a lot easier.

10          Janet on occasion will e-mail you and then of course you

11  can reply by e-mail.  My only request is please don't abuse that

12  because she has other customers, too, and we have tons of motions

13  right now.  So we're all busy just like all of you, just use your

14  discretion and limit that accordingly.

15          Judge, do you have anything else to say before we hear

16  from this illustrious group?

17          MAGISTRATE WILKINSON:  I am not sure that you said this or

18  not.  The preliminary report that we want from you all, Mr. Meunier

19  and Hubbard are going to type it up and send it in to us, we would

20  like it sent to us no later than April 4.  And for the scribes

21  purposes, it should be as inclusive of ideas as possible.

22          THE COURT:  One other thing I want to mention.  On April

23  6th when we have our next meeting, I am going to give you X days,

24  any others of you to file a motion to recuse, which I will hear.  I

25  am not going to do the thing which I would do normally that is let

1  you blindly recuse me.  I just think -- I've thought long and hard

2  about this and I know that I can be fair, you may not know that, but

3  I just think it's our responsibility.

4        This is not going to be a lot of fun for most of us

5  anyhow, unless you have a very strange sense of fun.  But it can be

6  done, I think, fairly and efficiently and in a civilized fashion.

7  But I will certainly look at a motion to recuse, if you file it, and

8  I know we already have one for all of the Middle District (SIC)

9  which I am going to hear.  And you might want to speak to that as

10  well and whatever else you want to speak about.

11        Realizing we are going to have another meeting on the 6th,

12  but you might want to speak about how you want to oppose, which I

13  have not even seen yet, if you want to oppose the motion of all of

14  the Eastern District judges, maybe you can get a group together and

15  file a master opposition.

16        MAGISTRATE WILKINSON:  Mr. Kirsch, when is that motion set

17  for hearing?

18        MR. KIRSCH:  19th I believe, your Honor.

19        MAGISTRATE WILKINSON:  Of April?

20        MR. KIRSCH:  April 19th.

21        MR. BECNEL:  May I speak?

22        THE COURT:  Yes, sir.  Anyone here may speak.  Mr. Becnel.

23        MR. BECNEL:  May it please the court, Daniel Becnel.  The

24  only reason I am trying to come first is I have to get out of here.

25        THE COURT:  I know that.

1          MR. BECNEL:  I have a rather important matter with all

2     deference to this court.

3          I think since you have used the term the Manual For

4     Complex Litigation, it might be wise for the court, and that manual

5     was first put together by Judge Pointer, Mr. Fayard and I were

6     involved with the breast implant case when he did that.

7          MAGISTRATE WILKINSON:  We are familiar with it,

8     Mr. Becnel.

9          MR. BECNEL:  But what I was going to suggest is that

10    federal judge, Judge Breyer last week in San Francisco has an MDL

11    case and appointed Judge Fern Smith who also served as the head of

12    the Federal Judicial Center for a number of years and has retired,

13    and he appointed her in a very, very complex case with glowing

14    reports.  I would suggest maybe someone of that caliber might help

15    all of us to reach compromise instead of having the court -- and I

16    would like the court to know that many of us are trying to do this

17    on a pro bono basis.  This is not a fee generating case for most of

18    us, unless some miracle happens.

19         The other thing I think mainly because my parish did not

20    suffer damage and we were kind of the jumping off point for the Army

21    and the State Police and everything else, probably I've heard from

22    more people than almost anybody else in terms of this.  Some of them

23    are so poor and so destitute that I think we need to do different

24    things.  Instead of forcing people, whether we do master complaints

25    or whether we do class actions or whether we do mass joinders, try

1   to streamline this, as is being done now in many of the federal

2   cases in the last few weeks, only because I've been appointed to

3   some of the committees and Medtronics and Bextra, Celebrex, et

4   cetera, they are allowing in the mass joinder to file just hundreds

5   of cases.

6          And Judge Fallon has allowed tolling agreements which is

7   an excellent idea for the parties to get together once you decide

8   who is doing what.  It just eliminates the clerk's office from being

9   inundated that we could possibly get some plaintiff fact sheet or

10   defendant fact sheet that is done.  But this is so massive I think

11   anything we've ever done, any of us in the past is just almost

12   irrelevant because we don't know what we're undertaking.

13          I've attempted to contact Author Miller at the Harvard Law

14   School and Ken Starr at Pepperdine to see if we could get assistance

15   from those type, one on the right, one on the left, let's say, law

16   schools and all of those in the middle, assistants as a major pro

17   bono project to assist in brief writing and organization and maybe

18   summer internships.

19          But I think this is the case that calls for this unique

20   thinking rather than what we've also done in the litigation mode,

21   and I would suggest to the court that we have to keep the costs

22   done, I know everybody runs out and gets these experts and we pay

23   tens of thousands of and millions of dollars for these experts, we

24   have a lot of people that have done a lot of this work already,

25   although nobody has been put under oath, the Corps of Engineers has

 1  done their own research, the National Sciences Foundation.  Mr. Will

 2  Percy of my office has contacted the head of those various people

 3  and we could do some maybe expedited depositions dealing with the

 4  finding or at least the facts before we get into gigantic motion

 5  practice, before we get in even and kind of take class certification

 6  as Judge Bechtel did in the Phen-Fen litigation and maybe hear

 7  arguments on it if you have to, but maybe just put it on the side

 8  and leave that until you develop some facts.

 9          And I am certain that most of the lawyers around here,

10  Mr. Bruno has acted as a conduit for us and held a number of

11  meetings at his facility, Mr. Lambert has worked on it.  In fact,

12  many of the lawyers that are sitting here, Ms. Jacobs and others

13  have worked very hard over the last few months trying to figure out

14  how can we do this, (a) efficiently, how can we try to avoid, if

15  there is recovery, to charge these people money because even if

16  everybody paid everything that was other than the federal

17  government, I mean we can't even start to comprehend what we're

18  dealing with.  So -- and with the benefit of the federal judiciary

19  from around the country who are very sympathetic to the situation

20  and nobody knows how to handle this, nobody knows and there is no

21  road map.

22          So I just think we have to have innovative thinking and I

23  think we have to have more than just "the local bar" because it's

24  bigger than this area, it's bigger than all of us, and maybe none of

25  us know what we're getting into but we're here and we've got to be

1  somewhere.  So I'd appreciate the opportunity to talk to you if I

2  leave, I hope you don't take it the wrong way.

3        THE COURT:  Absolutely not, Mr. Becnel.  Thank you, thank

4  you very much.

5        MR. BRUNO:  Judge, I rise.  We have met on numerous

6  occasions and I can actually report preliminarily on many of the

7  issues that you've raised, and I would like to do that now if I may.

8  We have a little slide presentation.

9        THE COURT:  Just for the record can show that Mr. Joe

10  Bruno is speaking.

11        MR. BRUNO:  I'm sorry, Joseph Bruno.  The slides are just,

12  for the purposes of indicating, your Honor, to the court --

13        THE COURT:  Excuse me just a minute.  Judge Wilkinson

14  isn't fortunate enough to have this.  All right.  Thank you.

15        MR. BRUNO:  Indicate to the court the nature of the claims

16  that have been made, not here to argue the correctness or

17  incorrectness or the position of the parties at this time.

18  Something just died.  I have the PC on.

19        THE COURT:  Just to let you know, unfortunately today we

20  are going to have to shut it down about 11:30.

21        MR. BRUNO:  I'll be brief, Judge.  Let me tell you that I

22  met with everyone, invited everyone who was on your list of cases

23  consolidated today.  Most of them did show up and we have met

24  several times so I believe I am giving you accurate information as

25  to some consensus.

1          We've also spoken to defense counsel and even have some

2    proposals that I think you will find are consistent with what you

3    just said.  Very briefly, Judge, that's Lady Katrina, just to

4    illustrate, some folks don't really understand how the winds went

5    but it's nothing more than an indication of where or how the winds

6    affected the community.

7          The next slide simply indicates the amount of water that

8    was actually sustained by the city.  You can see the little yellow

9    dotted lines.  All of the area within the yellow dotted line

10   sustained flooding, which as you can see is about 90% of the city of

11   New Orleans.

12         Here is an illustration of the protective barriers that

13   were supposed to be in place to guard against this water that we

14   just saw inundate the city.  You can see the 17th Street canal,

15   Orleans canal, London, the Inner Harbor Navigation Canal, sometimes

16   known as the Industrial Canal and then it's labeled MR-GO but it's

17   really two bodies of water, it's the Intracoastal Waterway which

18   then veers off to the MR-GO.  Now, here, Judge, is an indication of

19   where either breaches, all of the breaches that are reported by the

20   Corps of Engineers occurred.

21         If you start with the 17th Street canal you can see, and I

22   think this thing allows me to --

23         THE COURT:  You can zoom in or make a mark.

24         MR. BRUNO:  Anyway that's the breach of the 17th Street

25   canal, there were two breaches on the London Avenue canal, there was

1   two breaches of the Industrial Canal, which allowed water to go into

2   downtown New Orleans, and there was a breach of the Industrial Canal

3   which allows the water to go into the lower 9th Ward.  You can see

4   this line here, that's called Reach 1 of the MR-GO.  No real levee

5   breaches there.  This is called Reach 2 of the MR-GO and you can see

6   there's a large number of breaches there (INDICATING).

7           You talk a little bit about the MR-GO and whether or not

8   that may be a case to be brought here, I shouldn't say brought here

9   I should say included.  I just want you to be aware that the

10  allegation will likely be that the storm surge came from Lake Borgne

11  in what has been referred to as a funnel, the water went up the

12  Industrial Canal and believed to be responsible for the breaching of

13  the levees at the Industrial Canal, among other causes.

14          Now, I make that point, Judge, because the MR-GO will

15  likely be part of this umbrella of broken levees.  These are just

16  pictures of the --

17          THE COURT:  We are going off of ELMO?

18          MR. BRUNO:  Here we go.  I'm sorry, very quickly.  This is

19  a very interesting map because it allows you to see, and again this

20  is from the Times Picayune, nothing special about this, this allows

21  you to see a couple of things.  It allows you to see the water depth

22  in the various areas and how they relate to the various breaches.

23  Really what's interesting about this is you can see that there is a

24  natural barrier which would include an area likely to have been

25  damaged by the 17th Street canal, which is this area here bounded on

1   the north by the lake, on the west by the Jefferson Parish line, on

2   the east really by the Orleans Canal because the Orleans Canal

3   didn't breach at all, so the water mostly affected Lakeview and then

4   moved down into Mid City and then down into the Uptown area.

5           If you look at the colors of the map you can see the green

6   and the blue are higher levels, and you can see there really is an

7   easy way to draw a line around each of these areas.  The Lakeview

8   area here, the Gentilly area here affected by the 17th Street.  This

9   area, again you can see the Gentilly Boulevard ridge which goes to

10   the City Park Avenue and then into Metairie Road is a natural ridge,

11   which allows you to see that this area here is easily defined as an

12   area of major impact or significant impact from the breaches of the

13   Industrial Canal (INDICATING).

14           Lower 9th Ward likewise and New Orleans East from the

15   overtopping of levees from the MR-GO.  The point being that all of

16   these areas were impacted by broken levees or the failures by the

17   United States Corps of Engineers.  All of that to say this.  We see

18   the case divided into three larges areas with three subparts.  The

19   first area are the levee cases, which you've already talked about,

20   and that is people who are responsible for building and maintaining

21   those levees.  We believe that the Corps of Engineers' liability is,

22   should be treated as a separate grouping because, as you know, we

23   have to go through the administrative process.

24           THE COURT:  I did want to mention that because you have

25   the Federal Tort Claims Act.

1          MR. BRUNO:  Precisely.

2          THE COURT:  You have to go through the administrative

3    procedure, no question.

4          MR. BRUNO:  Exactly.  And the fact of the matter is that

5    there will be, we believe, thousands and thousands of claims made.

6    We will have to wait the six months, and there is no reason in the

7    world to delay any of what we do while that's going on.  There is

8    going to be litigation against the Corps of Engineers, there is no

9    question about it.  There will be litigation against the Corps

10   relative to the levee breaks, there will be litigation against the

11   Corps of Engineers relative to MR-GO.  But because of the

12   administrative component we think that needs to be treated

13   separately.

14          Then you've got the levee cases.  And again there's

15   allegations that the Levee Board is responsible for all three

16   breaches --

17          THE COURT:  None of which as I recall except a couple of

18   pro se mention the Corps, maybe one.  Most of them do not mention

19   the Corps as a defendant in the levee breach cases.

20          MR. BRUNO:  Right.  And the reason for that, since I

21   drafted the first lawsuit which you can see somewhat, if not very

22   similar to subsequent lawsuits, the logic was not to bring the Corps

23   for that administrative issue.

24          The final grouping of cases is what we call the insurance

25   cases.  The reason why they're in this soup at all is because the

1   allegation is that the insurance policies ought to cover water

2   damage resulting from breaks in levees.  That's the allegation,

3   good, bad or ugly.  There is a relationship.

4        Now the first thing is, we thank you very much for having

5   this hearing because one of the things that's delayed the filing of

6   these lawsuits there is a sense of this community that we really

7   didn't know which judge was going to end up with the case, and there

8   are a lot of lawyers out there who have been sort of waiting to see

9   where the thing is going to land.  So my first point is there will

10  be additional lawsuits that we know will be filed.  That's number

11  one.

12       The second thing is that we have met with the defense

13  counsel and we do have, I believe, a lot of agreements as to how we

14  should proceed.  We do agree, first, and obviously that the recusal

15  issue should be taken up and should be taken up once and only once

16  and be resolved and we can decide and move on.

17       The next issue that we believe should be taken up is

18  remand.  And again, because we've got all of these different types

19  of cases that regard what we believe to be these similar issues,

20  they should naturally be taken up at one time, in one place so we

21  know where these cases are going to land.  And that obviously

22  impacts --

23            THE COURT:  We are very much in agreement on that.

24            MR. BRUNO:  I think the defendants are in the same view,

25  you have the CAFA issues, if not --

1      THE COURT:  Oddly enough, I have quite a few CAFA issues

2  already.

3      MR. BRUNO:  As the court knows and the parties know it

4  would apply to mass joinders in any case.  So we haven't decided

5  even whether we want to pursue --

6      THE COURT:  Attempt to remand on the basis of CAFA you're

7  talking about?

8      MR. BRUNO:  No, my point is that CAFA would -- I make that

9  point for this point.  We may not proceed with the motions for class

10  certification, we may decide to handle this as a mass joinder.  And

11  the fact is that if we did that CAFA would still have some

12  application, so that's something that the court needs to consider.

13      And as an aside, I would like to ask the court on behalf

14  of all of the parties to allow us to stay or put off the requirement

15  that we file the motion for certification within the 90 days

16  because -- and I don't know that anybody --

17      THE COURT:  That was something I was already thinking

18  about, in the April 6th meeting and in the report we talked about

19  earlier you can, of course, talk to Mr. Meunier, and in the report

20  of things you want us to consider, we will make that decision on

21  April the 6th, but I think it's certainly my initial reaction is

22  that's what I plan to do anyway.

23      MR. BRUNO:  I want to make the point we are all of one

24  mind that, we're already discussed that and we are there.

25      THE COURT:  Sure, it makes sense.

1      MR. BRUNO:  The next issue that we want to discuss, we

2  have discussed this with the defense, and your Honor is right, it's

3  there already.  There are many motions that would be dispositive, of

4  particular defendant's liability, some which may or may not require

5  discovery.  Our thinking is that we ask the defendants to simply

6  identify what those motions might be.  And then the plaintiffs would

7  have an opportunity to say, well, we need or don't need discovery;

8  in other words, we could hash that issue out.  If we could agree

9  that there is no discovery on a particular motion, those would go to

10 the top.

11     MAGISTRATE WILKINSON:  This is exactly the sort of thing

12 we want you to put in that report.  Mr. Becnel raised the specter of

13 massive motion practice, that's not what we have in mind for these

14 initial motion filings.  What we have in mind are basically the

15 things you just mentioned, remand, recusal --

16     THE COURT:  Immunity.

17     MAGISTRATE WILKINSON:   Immunity.

18     MR. BRUNO:  Preemption, prescription.

19     MAGISTRATE WILKINSON:  The basic kinds of things that will

20 help us define who is involved and let us go forward.

21     MR. BRUNO:  My point is, Judge, we're there.  We are

22 there.  You will get the report but we've already decided and I am

23 here to report we're there.

24     THE COURT:  Very encouraging.

25     MR. BRUNO:  And in discussions with defense counsel as

1   recently as about 15 minutes ago, their only concern, as I

2   understand it, is to get the recusal issues, once that's resolved --

3            THE COURT:  I am, too.  Let me say that the recusal issues

4   impact this court and me in particular quite a bit.  When I say

5   because we don't -- let's get it done.  I want to give it time, a

6   specific time when the recusal motions must be filed.  We already

7   have one, but it relates to all of the judges in the Eastern

8   District.  That's a different motion than recusing Judge Duval

9   and/or Judge Wilkinson.

10           I can just tell you this.  I haven't read your motion,

11  Mr. Kirsch, but it's highly unlikely, unless there is a statutory

12  violation, you are going to prevail on that motion.  But I am going

13  to look at it.

14           MR. BRUNO:  Judge, consider this --

15           THE COURT:  We need to get the individual motions filed,

16  too.

17           MR. BRUNO:  I agree.  But we need to address the en banc,

18  if you will, or the venue issues first because you also have Judge

19  Vance, as you said, she's got all of those cases.  The logic to me

20  is if for -- my point is if for some reason this whole bench can't

21  handle hurricane related cases and they can't handle any

22  hurricane -- or at least you would want one consistent ruling across

23  the board.  So that's why I think we take the en banc issue first,

24  and you're correct the next issue would be a particular judge should

25  be recused or not recused.

1          THE COURT:  En banc is going to be quick.  So I am going

2     to give you a specific time to file for recusal, you and anybody

3     else to do that.  I might do that today and confer with judge --

4          MR. BRUNO:  I can tell you right now the plaintiffs have

5     no intention and will oppose any such motion to recuse this bench.

6     We think the case has got to say here for any number of reasons,

7     this is our community, our people are hurt, our people are affected

8     and that's enough said.

9          THE COURT:  I might want to hear from a defense counsel.

10    But I think they need the opportunity to file that and I am going to

11    give them X number of days, whoever wants to do this, plaintiff or

12    defense.

13         MR. BRUNO:  Right.  In any case, Judge, so then we would

14    resolve the issue of how much discovery.  We would hope to be able

15    to do that by agreement; and if we couldn't, we would just submit to

16    you alternative plans of how much discovery would be necessary on a

17    particular type or series of motions.

18         THE COURT:  Absolutely.

19         MR. BRUNO:  The discovery, Judge, you may not realize, a

20    lot of this discovery is on the internet already, it's there.  It's

21    going to be a little different than you normally see.  A lot of this

22    information is out there, and Mr. Becnel is right, there's a lot of

23    stuff that has been done by a lot of experts on this issue.  And

24    frankly, we would like to have as many of these dispositive issues

25    moved to the front.

1          As I said, it's unfortunate I had frankly hoped that the

2     United States would not make the people of this community jump

3     through this administrative hoop.  We are going to get there.

4     Apparently they are going make us wait six months and that's fine.

5     But that is kind of looming out there and many of the issues and

6     many of the rulings may impact that subsequent litigation.  So I

7     would like you to kind of, I don't know how to say this except to

8     say keep an eye on it or maybe if there was some way to

9     administratively close those cases and put off the ruling.  I

10    understand the argument about jurisdiction, believe me.  I didn't

11    file an opposition in Greer --

12          THE COURT:  Which cases are we talking about?

13          MR. BRUNO:  We're talking about Greer.

14          THE COURT:  Those, Greer has been dismissed.

15          MR. BRUNO:  You dismissed it.  And you have Dahlgren which

16    is a MR-GO case.  Just think about parking that somewhere, I

17    understand.  We will not file an opposition to the motion to dismiss

18    for jurisdictional issues, we did not file the Form 95.  We are

19    going to file the Form 95 and we are going to, you will see,

20    hundreds of thousands of these 95 forms filed.  It's going to

21    happen.

22          I just think that, well, I would just pray that the United

23    States of America would recognize that it's an issue that's

24    ultimately going to be before somebody at some point in time.  Why

25    don't we all be stand up about it and just try to plan for it.  My

1    only request for you is that it be under this umbrella, I'll just

2    leave it at that.

3            THE COURT:  All right.  I understand.

4            MR. BRUNO:  And, Judge, I think that's all I have to say.

5    Let me just check my notes.  I thought had made some other points.

6            Oh, master complaint, we've already agreed, the plaintiffs

7    have gotten together, we can either make our pleadings conform or

8    file a master complaint.  Our only thought was it would be one

9    complaint and not a complaint for each --

10           THE COURT:  I am going to tell you, Mr. Bruno, to try to

11   certify this as one class action for every, it's going to be

12   extraordinary --

13           MR. BRUNO:  Judge, I didn't mean to suggest that it would

14   be for certification purposes, rather I would suggest that it would

15   be a master complaint for the purposes of allowing you and the

16   defendants to file all of the dispositive motions.

17           THE COURT:  I see.  Okay.

18           MR. BRUNO:  Because the truth of it is, when you think

19   about it, a motion to certify could be a part of the case or a

20   section or something.  There is any number of ways to address this

21   business --

22           THE COURT:  Ultimately we do have to engage in the

23   certification hearing if we get past all of this.

24           MR. BRUNO:  Exactly.

25           THE COURT:  Unless you make it a mass joinder case and you

1    name everybody individually.

2         MR. BRUNO:  Precisely.  And that's why our original

3    thought was, Judge, we will give you a master complaint, one master

4    complaint, lay it all out --

5         THE COURT:  Give me your thoughts on April 6, but I

6    understand what your thinking is, but eventually we will have to

7    cross the certification bridge, unless you choose to do it another

8    way.

9         MR. BRUNO:  We are of this mind.  We would like to put

10   that off for now.

11        THE COURT:  I understand.

12        MR. BRUNO:  We would like to resolve what I would call

13   them preliminary dispositive.  In the state court we call them, you

14   know, exceptions of no cause of action.

15        THE COURT:  I understand your dilatory conclusory

16   exceptions of state court and here as well.

17        MR. BRUNO:  Thank you for helping me with that.

18        THE COURT:  I can remember a little of that.  I filed

19   quite a few of them in my day.

20        MR. BRUNO:  Judge, that's it unless you have some

21   questions.

22        THE COURT:  Mr. O'Dwyer, you raised your hand, and I am

23   interested in what the defendants might have to say about this, too.

24        MR. O'DWYER:  Just two quick points, your Honor.  For the

25   benefit of plaintiff's counsel in the room that may not know what

1    the Form 95 is, there is no requirement that a Form 95 be filed.  An

2    administrative claim can be perfected by a letter that identifies

3    the plaintiff, sets forth the identity of the agency against whom

4    the claim is being made, sets forth the basis of the claim and sets

5    forth some cert.  It can be done by letter there is no requirement

6    for a Form 95.

7            The second point I wanted to make, your Honor, I heard

8    your Honor say that these cases do not involve MR-GO.  Maureen

9    O'Dwyer, 05-4181, most definitely involves MR-GO.  I filed a claim

10   against the Corps of Engineers dealing with the defective design,

11   construction, inspection and maintenance of the MR-GO way back when,

12   months ago.  And I have recently filed an amendment which is pending

13   before Magistrate Knowles for next Wednesday.  I don't know whether

14   Magistrate Wilkinson is going to rule on that motion or not.

15           He just ruled on a similar motion granting me leave to

16   amend Parfait and my claim and third-party complaint against the

17   government in Ingram allowing the amendment to assert a claim for

18   the defective design of an entire navigable waterway system;

19   including the Mississippi River Gulf outlet, the Gulf Intracoastal

20   Waterway, the Inner Harbor Navigation Canal, also known as the

21   Industrial Canal, the 17th Street canal and the London Avenue canal,

22   all of which are navigable waters of the United States, your Honor.

23   So this case does involve MR-GO.

24           THE COURT:  I think I mentioned the paragraph that we read

25   earlier.  Yes, Ms. Barrasso.

1          MS. BARRASSO:  Judge, I just want to continue my mantra

2    about the insurance coverage issues.  I am also involved in the

3    Chehardy case, as is Mr. Lee.  And we believe that those, that the

4    insurance coverage issues are completely separate from this case.

5    And the Chehardy case we had filed motion for judgment on the

6    pleadings way back in October, and that issue on coverage which

7    would be dispositive of the whole case if granted --

8          THE COURT:  You would acknowledge the allegations as true?

9          MS. BARRASSO:  Yes, Judge.

10         THE COURT:  In other words, you would say, yes, there was

11   negligence in these canal breaches.  Now, if you lose then, but then

12   they're related.

13         MS. BARRASSO:  Judge, what we would ask that those

14   dispositive motions be considered first before you throw us into

15   this.

16         THE COURT:  Absolutely.  Any 12(b)(6) motions that don't

17   require discovery, I would certainly consider them.

18         MS. BARRASSO:  And we would ask before you throw us into

19   this and throw us into those procedures --

20         MAGISTRATE WILKINSON:  Is it fully briefed?

21         MS. BARRASSO:  The plaintiffs have not responded yet and

22   we had asked -- Judge Polozola spent a lot of time --

23         THE COURT:  I will decide that when it comes to me and

24   it's set for hearing.

25         MS. BARRASSO:  Judge, it's a legal issue and we think

```
 1   either way it's decided --
 2           THE COURT:  Pleadings are true still no coverage.
 3           MS. BARRASSO:  Exactly.  And the three companies that are
 4   left in that case I think have has had the motion pending, and we
 5   think that either way it's a type of issue that should go up to the
 6   Fifth Circuit, it's a legal issue.
 7           THE COURT:  It'll go up to the Fifth Circuit eventually
 8   whether I think it should right away or think, I don't know.
 9   Depends how right you are.  Yes.
10           MR. SEEMANN:  Charles Seemann.  I understand Judge
11   Wilkinson's about putting it all in the report and writing, there
12   are a couple of things that might be addressed.  No. 1, the state of
13   the U.S. Mail today is uncertain at best and I think the court ought
14   to consider ordering some form of duplicative service of papers.
15   I'm finding sometimes it takes one week for mail to get from one
16   place in New Orleans to another, if you're coming from outside the
17   city it can take more time.
18           MAGISTRATE WILKINSON:  What mode of service alternatively
19   do you suggest?
20           MR. SEEMANN:  It's up to the court.
21           THE COURT:  We are going have electronic service but
22   probably not for another, it's going to come in incrementally, we
23   won't probably have in about six months.
24           MR. SEEMANN:  Fax would work for the short-term but that's
25   something we need now.
```

1          The sign in sheet identifying all of the lawyers and all

2    of the players in the different suits, will that be available to us?

3          THE COURT:  I will get you, the court reporter will, since

4    it was announced we will have that transcribed and try to e-mail it

5    to you, if we have e-mail addresses.

6          MR. SEEMANN:  Should I just e-mail my address to chambers

7    or what?

8          THE COURT:  We have, we have it I'm sure if you filed a

9    pleadings.

10         MR. SEEMANN:  I am not sure that I filed a pleading.

11         MAGISTRATE WILKINSON:  Make arrangements with the court

12   reporter to send you whatever mode you want to send you a list of

13   lawyers who made appearances today.

14         MR. SEEMANN:  And the last item while it addresses itself

15   to the conference on April 6th has immediate practical consequences

16   for some us, which is you made the inquiry about why defendants

17   haven't answered when the suits are out there and so forth.  One of

18   the problems is the enormous number of trees have already given

19   their lives for the paper in this litigation, and Judge Porteous put

20   a stay on pleadings with the idea of maybe getting a master

21   complaint, at least that's the way I understood.

22         I am wondering if we can have a blanket relief from

23   answering, I join with Mr. Bruno in the idea that I've got

24   relatively small insurance limits for this coverage and they

25   declined by the cost of defense.  So it's a very real expense to

1    answer seven detailed complaints, many of which are practically

2    identical.  If we can have relief until they're all put in a master

3    complaint, it would make an awful lot of sense and the record would

4    be measured in inches instead of feet.

5         THE COURT:  Maybe April 6 is not that far away maybe we

6    can get that all.

7         MR. BRUNO:  I forgot to mention.

8         THE COURT:  Nobody is going to default you or dismiss you

9    now.

10        MR. SEEMANN:  That's the only issue.

11        MAGISTRATE WILKINSON:  We didn't mean to suggest that

12   everybody had to answer by April 6th.  What was meant is April 6 --

13        THE COURT:  Tell us why and now you are telling us why.

14        MR. BRUNO:  When the case was before Judge Porteous we had

15   agreed to have the case, the pleadings either be similar in that we

16   would serve everybody and that we would waive service.

17        THE COURT:  We will to save your clients --

18        MR. SEEMANN:  Frankly the only reason I haven't waived

19   service in some of them is just to try to wait --

20        THE COURT:  Certainly at this point let's have a

21   standstill of entering on defaults.

22        MR. SEEMANN:  I wanted that to be on the record.

23        THE COURT:  All right.  That's on the record.  Mr. Lee,

24   Wayne Lee.

25        MR. LEE:  Just a couple of questions mostly for

1    clarification.  As Ms. Barrasso noted I am a party in the Chehardy

2    cases, and I don't know whether the court has actually made a

3    decision whether it's going to be before the court or not or under

4    this umbrella?

5         THE COURT:  Right now if Encompass is under the umbrella,

6    you're under the umbrella because it's somewhat related to

7    Encompass.  When I say the umbrella, it may be a separate umbrella

8    but they're all in Section K right now anyhow.

9         MR. LEE:  Chehardy is the one that's been transferred.

10        THE COURT:  Right.

11        MR. LEE:  If it's here that's fine, your Honor, we just

12   need to know the process and when we will be able to start putting

13   things on the docket which we assume will come offer the April 6th

14   conference.

15        THE COURT:  Yes.

16        MR. LEE:  What we do have, we have a different category

17   which is not just the Encompass type case which includes Vanderbrook

18   which is not a class, where we don't have class action parties here

19   at all.  And with respect to those, for example --

20        THE COURT:  Except for Chehardy came in, all of the

21   insurance cases involving the Levee Board and/or the homeowners

22   insurer were not class actions.

23        MR. LEE:  That's correct, your Honor.

24        THE COURT:  I intend to put those in a separate category

25   to some degree.  If we're getting to a point where we're having

1    discovery, if say you lose your preliminary motions on coverage

2    because if I find, well, if I read the complaint and if they prove

3    that there may be coverage, I'm not sure what we do because then

4    coverage is dependent upon a finding of negligence in reference to

5    the breach.

6              MR. LEE:  In Vanderbrook, for example, we haven't gotten

7    to the point of that issue yet because we've got still pending

8    motions for severance.

9              THE COURT:  You have a motion to remand in a lot of these

10   cases.

11             MR. LEE:  That's correct.

12             THE COURT:  Which I have not ruled upon.

13             MR. LEE:  We will be addressing that and I am not quite

14   sure to what extent that that fits under how you anticipate the

15   umbrella fitting.

16             THE COURT:  I am not sure either, it's one of my

17   conundrums.  I understand it's difficult, absolutely.

18             MR. LEE:  And the last category, your Honor, I am also

19   involved in the Sullivan case which we have motions pending right

20   now for the 5th, which really it doesn't fit any of this --

21             THE COURT:  The Sullivan case I happen to have, I think

22   just by random allotment.

23             MR. LEE:  That's correct, your Honor.

24             THE COURT:  Yes.

25             MR. LEE:  Since it was noticed I want, I didn't know

1    whether you were considering us part of the levee grouping?

2           THE COURT:  Not really, no.

3           MR. LEE:  Is not, thank you.

4           THE COURT:  I don't think I am.  I didn't notice if it's

5    in the group.  It's not.

6           MR. LEE:  Thank you, your Honor.

7           THE COURT:  Thank you.

8           MR. FAYARD:  Judge, Calvin Fayard.  Have you recognized

9    someone else?

10          THE COURT:  No, sir.

11          MR. FAYARD:  Friendship or not friendship aside, I had a

12   checklist of about two pages to go through today with respect to

13   organization, and from my perspective I think they've all been

14   touched on.  I don't see a need to reiterate any of that except a

15   couple of things.

16          No. 1, as the court knows organization is extremely

17   important in a matter like this.  I would suggest that we have

18   regular meetings.  I understand calendars of everyone, including the

19   court, you have a lot of business going on other than this case.

20   However, we can meet late in the afternoon or early in the morning

21   and I think regular meetings, even on a weekly basis at the

22   beginning would be extremely beneficial.

23          We did that in this very courtroom on another case many

24   years ago, and the judge found that afternoons worked very well with

25   people that had travel and they would get through their morning

1  dockets.

2       Recusal is something that has to be addressed, and I agree

3  with the court on that as well as the immunity issues and the other

4  issues with respect to other cases.

5       Now, on the Chehardy case, and that's why I rise.  I am

6  assuming I am before this court until I am told otherwise.

7       THE COURT:  Yes, sir.

8       MR. FAYARD:  I am going to comply with the orders of this

9  court, and I will submit and my cocounsel will submit to the scribes

10  and thereafter to the court the organization that we think needs to

11  be implemented with respect to those cases.  I cannot, however,

12  leave your Honor with the impression that they are in the posture as

13  the defendants have described ready for dismissal.  They are not.

14       These cases were brought in state court in East Baton

15  Rouge Parish, the Commissioner of Insurance was named as a defendant

16  and the defendants removed them to the Middle District court.  The

17  Middle District court has dismissed the insurance commissioner, has

18  retained jurisdiction, but transferred the cases over the

19  defendant's objection to this court.

20       So once we're here, we are ready, but the case will be in

21  a little different posture, I think, with many additional issues.

22       Now, presently on the pleadings, Judge, we as a plaintiffs

23  did not want to be in Baton Rouge because we didn't want to be in a

24  vacuum, we didn't want to be in a closet.  We need to be in the

25  courtroom where the decisions that are made that impact our case,

1   and that's this courtroom today.  Tomorrow it may be somewhere else,

2   I am not sure because we got to get through these preliminary

3   motions and the court has to make those decisions.

4        If you send us to Texas, we will address it in Texas.  But

5   right now I think we're here.  And so we want the opportunity and we

6   appreciate the opportunity to give our positions to your Honor by

7   April the 6th and we will be present in court to discuss those.

8        Now, just one question about the committee.  And I am not

9   rising, I am not volunteering and I am not nominating myself or

10  anyone else.

11       MR. BECNEL:  I am going to nominate him.

12       MR. FAYARD:  But I have been asked in the back.  Do the

13  applications need to be in by the 6th or are you envisioning that at

14  some later date?

15       THE COURT:  I am envisioning on the 6th giving you a

16  deadline for the applications.  So you don't have to put the

17  applications in now.  On the 6th I will tell you anybody who wants

18  to apply you have until April 15th or whatever date you think is

19  reasonable.  That's really what I was thinking.

20       MR. FAYARD:  Thank you, Judge.

21       THE COURT:  Once we decide what we think the committee

22  structure should be.

23       MR. FAYARD:  If the criteria is to be technically educated

24  like Mr. Bruno where he put his notes up on the screen, I probably

25  won't --

1          THE COURT:  Thank you, Mr. Fayard, I feel your pain.

2          MR. PENDLEY:  May it please the court, your Honor, Patrick

3  Pendley for the Slaton case.  For those of us who have, compared to

4  the few number that are not, that are here in this court, we would

5  assume, with the consent of the court, we would like, at least I

6  would anyway, like to participate in the process as outlined by the

7  court until it's affirmatively established that I won't be here.

8          THE COURT:  Has the Slaton case been transferred?

9          MR. PENDLEY:  I have no knowledge of that.

10          THE COURT:  Can you tell me a little bit about it, Mr.

11  Pendley?

12          MR. PENDLEY:  It's a suit against Orleans Levee Board

13  only.

14          MAGISTRATE WILKINSON:  What court?

15          MR. PENDLEY:  It's in the Middle District, Judge Parker.

16          THE COURT:  To my knowledge he has not transferred it yet,

17  but we will certainly include you since you have, as a courtesy to

18  you, Mr. Pendley, we will do that whether we have it or not.

19          MR. PENDLEY:  Thank you, Judge.

20          THE COURT:  Do you have the number, please?

21          MR. PENDLEY:  I gave it earlier, Judge.

22          THE COURT:  It's on the record.

23          MR. PENDLEY:  CA-05-1138(A), which is Judge Parker's

24  division.

25          THE COURT:  Thank you very much.

1          MAGISTRATE WILKINSON:  Has anybody asked him to transfer

2    it down here, Mr. Pendley?

3          MR. PENDLEY:  No, Judge.

4          THE COURT:  I won't be sending him any letters.

5          MR. PENDLEY:  I think it was the adverse, Judge, that the

6    motion was to go up to Baton Rouge.

7          THE COURT:  Right.

8          MR. HONEYCUTT:  Dwayne Honeycutt, actually our case is

9    consolidated with the Slaton case, and it was my understanding that

10   the magistrate had indicated that Judge Parker was waiting for Judge

11   Polozola to make a ruling.

12         THE COURT:  So you think it's coming?

13         MR. HONEYCUTT:  It's my understanding --

14         THE COURT:  The case is in the mail, so to speak.

15         MR. HONEYCUTT:  But no official order yet.

16         THE COURT:  Okay.  Thank you.

17         MR. WILES:  May it please the court, Stephen Wiles, your

18   Honor.  When we first met with Judge Porteous we had some discrete

19   assignments with respect to the master complaint, service of process

20   that were placed on Mr. Bruno.  And I am just trying to get some

21   clarification of how we are going to proceed with that considering

22   what Judge Wilkinson said this morning as to -- we have been meeting

23   and working on that, are we to continue that assignment --

24         THE COURT:  You've heard what I said today.  I am going to

25   crystallize it better on the 6th.  I made no specific decision about

1   whether I think, a master complaint that would encompass what

2   actions, there are a lot of complaints, there's a lot of different

3   things here so I need to know the nature of the master complaint and

4   you need to talk about it now that you've heard all of this.  So I

5   think we're probably going to defer that until the 6th, if I

6   understand what you're saying.

7          Because I think Mr. Bruno is saying, well, let's have a

8   master complaint where we all get together, make one master

9   complaint which is going to include everything, which is not going

10  to go for class certification.  I am telling you, you understand

11  that if we do get to a class certification situation I am going to

12  strongly urge you break up the master complaint and do several

13  master complaints, I don't know how many yet.

14         But for the purposes of organization you feel like it's a

15  good idea here, you need to sit down, now that you've heard what

16  other cases we may have, what you think this master complaint might

17  encompass.  And on the 6th we will make a final decision on that.

18         MR. WILES:  Thank you, your Honor.

19         THE COURT:  Anything else?  Mr. Meunier, Mr. Hubbard.  Now

20  that you've been labeled as scribes, have you taken minutes of this

21  meeting?

22         MR. MEUNIER:  I've tried, your Honor, and I have some good

23  note takers with me, but I believe the substantive I have.  And

24  Ralph and I would just like to address some of the logistics of the

25  report.

1          THE COURT:  Yes, sir.

2          MR. MEUNIER:  First of all, let me get some contact

3   information for people who are listening so that we can send me by

4   e-mail, for example, what they may suggest for inclusion in the

5   report.  My e-mail address is gmeunier@gainsben.com.

6          MR. HUBBARD:  And I would appreciate, Ralph Hubbard, the

7   other scribe, I would appreciate it if everybody would send, on the

8   defense side -- I think we should do it everybody on the plaintiff

9   side send their e-mail information and address book for them and all

10  of the defendants would send their initial e-mail today preferably

11  to the e-mail address I am about to give you, we will create an

12  address book for defendants and will have two separate address books

13  and Jerry and I can swap back and forth so we can that communicate

14  with everybody or just plaintiffs or just defendants because we have

15  a pretty short time frame we are working with here.

16          And I am going to give you my e-mail address as well,

17  Ms. Joe Guichet who works with me in my office and I would

18  appreciate it if you send your initial e-mail to him just to keep

19  from loading up my box.  And that address is jguichet@lawla.com.

20  And I have the same email address but it's rhubbard@lawla.com.

21          THE COURT:  You're not involved with scientology, are you?

22          MR. HUBBARD:  I have nothing to do -- no relation.

23          THE COURT:  I am teasing, that's a joke.

24          MR. HUBBARD:  I only wish I had written all of those books

25  or sold all of those books anyway.

1      THE COURT:  Right.  Exactly.  If you would please, when

2  you get this master list please email it to Janet.

3      MR. HUBBARD:  Certainly we will do that.

4      THE COURT:  And she will give you her email address.

5      MR. HUBBARD:  And you send it to me and Gerry, please

6  include your address, telephone number, your fax number and who you

7  represent.  And then we will talk some more today and get back to

8  everybody about whether there's going to be a meeting or when there

9  would be one and the like.

10      MR. MEUNIER:  Our thought was that we would first get sent

11  to us all of the various ideas for inclusion in the joint report,

12  you've heard a lot of discussion about that already from counsel,

13  and then when Ralph and I assemble all of that probably would make

14  sense for us to set up some sort of meeting together with

15  appropriate people there so that we can fashion this joint report on

16  time for you.  Because we are on a fairly short time schedule.

17      THE COURT:  I agree.  And understand that we realize this

18  is an imperfect world and we all have constraints.  So if there is

19  something else that needs to be refined, we are going to work with

20  you.  We are going to be imperious in our notice, but hopefully

21  reasonable in every other aspect of this matter.

22      MR. MEUNIER:  Thank you, Judge.

23      MAGISTRATE WILKINSON:  One thing that Mr. Becnel mentioned

24  earlier and I would like to have as an attachment to this report.

25  If there is a list of experts who everyone recognizes to be experts

1   have already conducted studies and maybe reached conclusions about

2   failure mode, why don't you attach that to this report so that we

3   can see who it is you think already is out there in the expert world

4   so that there wouldn't be additional, so that we can consider

5   holding the expense down of retaining further experts to do things.

6           MR. BECNEL:  Judge, it was the National Sciences

7   Foundation and it's a professor of civil engineering out of, Dr. Vee

8   (PHONETIC) out of Stanford.

9           MAGISTRATE WILKINSON:  There may be some others as well.

10          MR. BECNEL:  There's a number of them, he was the head,

11  independently appointed head.

12          THE COURT:  Back to the recusal issue because it drives

13  everything else.  I would hate -- look, all of you and your clients

14  deserve a court that's going to be stable.  I am telling you that I

15  am not talking about mentally stable, but at least not a lot, no

16  more additional allotments to other judges stable.  So I'd like, I'm

17  interested in when you think you might like to be able to -- we have

18  Mr. Kirsch's, the omnibus recusal issue, but I am interested in one

19  that's going to relate to Judge Duval and Judge Wilkinson.

20          She's got a note here and I'm sure it has some relevance,

21  it doesn't dawn on me quite yet.  I was born and practiced law in

22  Houma, Louisiana.  I've only been here as a result of President

23  Clinton's brilliance in appointing me as a federal judge.  I am not

24  a native New Orleanian, I was born here but only stayed here for

25  three days.  And probably saying I don't know my way around the

1    city.

2              MAGISTRATE WILKINSON:  I guess I should disclose I was

3    born in Terrytown and I live in Gretna.  I don't know what that has

4    to do with anything.

5              THE COURT:  But the recusal issue really does concern me,

6    so I'd like a motion, if there's going to be a motion to recuse me,

7    I would like to get a time limit.

8              Do any of you have any idea what would be a reasonable

9    time limit to file a motion for recusal so we can get that disposed

10   of.

11             MR. BECNEL:  Five days.

12             MR. MEUNIER:  I think the facts are known, I don't think

13   we need to delay the filing too much.

14             THE COURT:  I would like it filed on or before April 6th

15   in notice for the next hearing date.  I will be in Caneel Bay,

16   sorry.  I will be.

17             MR. MEUNIER:  Any motions to recuse at all need to be

18   filed by that time?

19             THE COURT:  Any motions about recusal need to be filed on

20   or before April 5th so we will have them in hand for the meeting.

21   And notice them and -- well, nobody will have a chance to file an

22   opposition to it.  We'll get it straight.  Anything else?  We have a

23   few minutes.

24             MR. O'DWYER:  I have one question.

25             THE COURT:  Yes, sir, Mr. O'Dwyer.

1      MR. O'DWYER:  Your Honor, can Judge Wilkinson address my

2  motion whether or not the motion to leave to amend that is set for

3  hearing before Judge Knowles next Wednesday for the 29th will be

4  transferred to your Honor?

5      MAGISTRATE WILKINSON:  I think what we're going to do is

6  sever out your Jefferson Parish pump operator claim out from that

7  case and assign it a separate number, it's going to be allotted to,

8  it's already allotted to Judge Duval.  That is going to be allotted

9  to Judge Knowles, and the remainder of 4181 is going to be

10  reallotted to me where it was originally.

11      MR. O'DWYER:  There is that motion to be heard next

12  Wednesday that you should be aware of.

13      MAGISTRATE WILKINSON:  I'm sure the ruling that would

14  result would be the same whether it was me or Knowles.

15      MR. BECNEL:  The other thing I wanted to disclose, my

16  daughter-in-law formerly was with the U.S. Attorney's Office

17  resigned this past month.  My other daughter-in-law was with the

18  City Attorney's Office and has resigned this past month.  So I don't

19  think I have any conflicts, neither one of them work on either one

20  of these cases on either side.

21      THE COURT:  Okay.  I think we've had a lot of disclosure.

22  The only one that I didn't make is my wonderful courtroom deputy

23  Sheena Demas lived in New Orleans East, she's now in the paradise of

24  the western world Houma, Louisiana, with her family but she commutes

25  here.  But she was flooded, she obviously she is my courtroom

```
 1   deputy, but I just thought I should divulge it.

 2           All right.  We really appreciate all of you coming and we

 3   will continue to meet.

 4           THE DEPUTY CLERK:  All rise.

 5       (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

 6

 7                           *  *  *  *  *  *

 8

 9

10                       REPORTER'S CERTIFICATE

11

12       I, Karen A. Ibos, CCR, Official Court Reporter, United States

13   District Court, Eastern District of Louisiana, do hereby certify

14   that the foregoing is a true and correct transcript, to the best of

15   my ability and understanding, from the record of the proceedings in

16   the above-entitled and numbered matter.

17

18

19                           _____

20                           Karen A. Ibos, CCR, RPR

21                           Official Court Reporter

22

23

24

25
```

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 24   AM 9: 05

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, WIFE OF/AND | * | CIVIL ACTION |
| JACKIE BEERTHELOT, HEBER | * | |
| DUNAWAY, ERIC ANDERSON & | * | NUMBER 05-4182 |
| AMY JANUSA WIFE OF/AND | * | |
| MICHAEL JANUSA | * | SECTION "K" |
| | * | |
| VERSUS | * | JUDGE DUVAL |
| | * | |
| BOH BROTHERS CONSTRUCTION CO., | * | MAGISTRATE NO. 2 |
| L.L.C. AND GULF COAST, INC. | * | WILKINSON |
| | * | |

* * * * * * * * * * * * * * * * *

### MOTION FOR DISQUALIFICATION OF THE DISTRICT AND MAGISTRATE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA *EN BANC*

**NOW INTO COURT,** through undersigned counsel, comes defendant, the Board of Commissioners of the Orleans Levee District, which pursuant to 28 U.S.C. § 455 and for the reasons more fully set forth in the accompanied memorandum, moves for the *en banc* disqualification of the district court judges for the United States District Court for the Eastern District of Louisiana as to all of the levee breach cases associated with Hurricane Katrina. It is further submitted that, pursuant to 28 U.S.C. § 292, post recusal, a district judge from within this circuit but outside the affected area should be appointed.[1]

---

[1]*See* 28 U.S.C. § 292.

Fee_____
Process_____
X Dktd_____
✓ CtRmDep_____
Doc. No_____


EXHIBIT

**WHEREFORE**, defendant, the Board of Commissioners of the Orleans Levee District,

prays that this Honorable Court grant its Motion for Disqualification of the Judges of the United

States District Court for the Eastern District of Louisiana *En Banc*, and, post

disqualification/recusation, refer same for designation of a district court judge from outside of the

area made subject of the instant lawsuit and not a member of the purported class of the respective

class actions.

Respectfully submitted,

_____
THOMAS P. ANZELMO, T.A. (#2533)
MARK E. HANNA (#19336)
KYLE P. KIRSCH (#26363)
ANDRE J. LAGARDE (#28649)
MCCRANIE, SISTRUNK, ANZELMO,
HARDY, MAXWELL & MCDANIEL
3445 N. Causeway Boulevard, Ste. 800
Metairie, LA  70002
Telephone:  (504) 831-0946
Facsimile:  (504) 831-2492

-and-

JAMES L. PATE (#10333)
BEN L. MAYEAUX (#19042)
Laborde & Neuner
One Petroleum Center, Suite 200
1001 West Pinhook Road, Suite 200
Post Office Drawer 52828
Lafayette, LA 70505-2828
Telephone: (337) 237-7000
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by placing same in the U.S. Mail, postage prepaid and properly addressed this 29th day of MARCH, 2006.

_____

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, WIFE OF/AND | * | CIVIL ACTION |
| JACKIE BEERTHELOT, HEBER | * | |
| DUNAWAY, ERIC ANDERSON & | * | NUMBER 05-4182 |
| AMY JANUSA WIFE OF/AND | * | |
| MICHAEL JANUSA | * | SECTION "K" |
| | * | |
| VERSUS | * | JUDGE DUVAL |
| | * | |
| BOH BROTHERS CONSTRUCTION CO., | * | MAGISTRATE NO. 2 |
| L.L.C. AND GULF COAST, INC. | * | WILKINSON |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>NOTICE OF HEARING</u>

**PLEASE TAKE NOTICE** that the undersigned will bring the foregoing *Motion for Disqualification of the Judges of the United States District Court for the Eastern District of Louisiana En Banc* before the Honorable Stanwood R. Duval, Jr. at 500 Poydras Street, New Orleans, Louisiana, 70130, on the 19th day of April, 2006, 9:30 a.m.

Respectfully submitted,

_____
THOMAS P. ANZELMO, T.A. (#2533)
MARK E. HANNA (#19336)
KYLE P. KIRSCH (#26363)
ANDRE J. LAGARDE (#28649)
MCCRANIE, SISTRUNK, ANZELMO,
HARDY, MAXWELL & MCDANIEL
3445 N. Causeway Boulevard, Ste. 800
Metairie, LA  70002
Telephone:  (504) 831-0946
Facsimile:  (504) 831-2492

-and-

JAMES L. PATE (#10333)
BEN L. MAYEAUX (#19042)
Laborde & Neuner
One Petroleum Center, Suite 200
1001 West Pinhook Road, Suite 200
Post Office Drawer 52828
Lafayette, LA 70505-2828
Telephone: (337) 237-7000
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all
counsel of record by placing same in the U.S. Mail, postage prepaid and properly addressed this
24th day of MARCH, 2006.

_____

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COLLEEN BERTHELOT, WIFE OF/AND | *  CIVIL ACTION |
| JACKIE BEERTHELOT, HEBER | * |
| DUNAWAY, ERIC ANDERSON & | *  NUMBER 05-4182 |
| AMY JANUSA WIFE OF/AND | * |
| MICHAEL JANUSA | *  SECTION "K" |
| | * |
| VERSUS | *  JUDGE DUVAL |
| | * |
| BOH BROTHERS CONSTRUCTION CO., | *  MAGISTRATE NO. 2 |
| L.L.C. AND GULF COAST, INC. | *  WILKINSON |
| | * |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY DISTRICT AND MAGISTRATE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA *EN BANC*

**MAY IT PLEASE THE COURT:**

Defendant, the Board of Commissioners of the Orleans Levee District (hereinafter

"OLD"), respectfully moves to recuse all the District and Magistrate Judges of the United States

District Court for the Eastern District of Louisiana *en banc* pursuant to 28 U.S.C. §455 (a) and/or

(b)(4), for the following reasons:

I.      **FACTS:**

On August 29, 2005, Hurricane Katrina made landfall slightly east of New Orleans,

Louisiana, bringing with it unprecedented wind, rain, and storm surge to the entire region.

Breaches in levees at the 17th Street, London Avenue, and Industrial Canals resulted in the

flooding of approximately eighty percent (80%) of the city.   The United States District Court for

the Eastern District of Louisiana sits in downtown New Orleans.

As a result of the flooding, power outages, lack of public utilities, and civil unrest that followed the hurricane, this Honorable Court's courthouse became inaccessible to both members of the bench and their staff.[2]  The entire courthouse closed its doors for over two months, forcing Judges and their staff to work from other locations within the State (e.g., the Middle District of Louisiana, the Western District of Louisiana, and this Court's Houma courthouse), as well as remote locations in other States (e.g., Eastern District of Texas).  Members of the Eastern District's bench and  staff did not re-open the courthouse until November 1, 2005.[3]

Because of the extraordinary circumstance this Court encountered as a result of Hurricane Katrina and the subsequent flooding, Chief Judge Helen G. Berrigan issued a Global Order granting the United States of America's Motion to Continue all pending criminal proceedings in the Eastern District.  Part of the underpinning of the United States' Motion was that Eastern District's personnel, members of the bar, criminal defendants, law enforcement officers and members of the United States Attorney's Office for the Eastern District had lost their homes, offices, and other personal effects.[4]

Since Judge Berrigan issued this Global Order, other District Court and Magistrate Judges have issued rulings recognizing the incalculable impact of Hurricane Katrina on themselves, their families, and the Court as a whole.  Judge Jay Zainey recently recused himself

---

[2]Exhibit "A"(08/31/05 United States Motion & Order continuing all criminal matters).

[3]Exhibit "B" (Judge Berrigan's 11/03/05 Order).

[4]Exhibit "A" at ¶¶4-8 (08/31/05 United States' Motion & Order continuing all criminal matters).

2

from an action relating to "water damage caused by the breaches in the 17th Street Canal and/or

London Canal that occurred during or immediately after the hurricane." In the Order of Recusal,

wherein he "excuses himself from adjudication of this dispute to avoid any appearance of bias or

impropriety," Judge Zainey observes that his "home was damaged on or about August 29, 2005

as a result of the breach of the 17th Street Canal levee that occurred during or immediately after

Hurricane Katrina"[5]

Judge Englehardt has followed suit, recusing himself in a case against the OLD brought

for an alleged failure to adequately maintain said levees, reasoning:

> The undersigned's home was flooded on or about August 29, 2005, as a result of
> the breach of the 17th Street Canal levee that occurred during or immediately after
> Hurricane Katrina. Accordingly, pursuant to 28 U.S.C. §455, and Canons 2 and
> 3-C of the Code of Conduct for United States Judges, the undersigned excuses
> himself from the adjudication of this dispute to avoid any appearance of bias or
> impropriety.[6]

Voicing the same concerns Judge Englehardt articulated above, Judge Porteous recused himself

from ten (10) levee breach cases pending before him, ruling:

> The undersigned's son's home was flooded on or about August 29, 2005, as a
> result of the levee breaches that occurred during or immediately after Hurricane
> Katrina. Accordingly, pursuant to 28 U.S.C. §455, and Canons 2 and 3-C of the
> Code of Conduct for United States Judges, the undersigned excuses himself from
> adjudication of this dispute to avoid any appearance of bias or impropriety.[7]

Magistrate Judge Chasez has also recused herself from presiding over a levee breach case, noting

---

[5]Exhibit "C" attached *in globo* (Order in *Conlay v. Encompass Ins. Co. et al.*, Docket No.
06-0151 and Order in *Charles Villa, et al. v. Columbia Gulf Transmission Co., et al.*, Civil
Action No. 05-4569).

[6]Exhibit "D," *in globo* (Order in *Bruce Conlay v. Encompass Ins. Co., et al.*, Civil Action
No. 06-151, and Order in *Armstead v. C. Ray Nagin et al*, No. 05-6438).

[7]Exhibit "E," *in globo* (Recusal Orders signed by Judge Thomas Porteous).

3

that she lived "on Canal Boulevard and the bottom part of my house got seven feet of water in it."[8] Flooding related to levee breaches following Hurricane Katrina has had such widespread effect on the Eastern District that Judge Beer recently stated:

> **The United States District Court for the Eastern District of Louisiana is located in very close proximity to some of our most devastated areas. All of us here at the U.S. District Court have lived and worked during the past six months as children of the storm.**
>
> **Our experiences here are similar, almost identical in many, many ways, to tens of thousands of our community brothers and sisters including, of course, those in St. Bernard Parish. In this unique brotherhood we have come, with each other, to comprehend many of the Katrina facts of life that fill our days and nights.[9]** (Emphasis added).

The plaintiffs' Bar within the Eastern District also recognizes the profound effects the hurricane has had on area residents. In the purported class action of *Bradley et al. v. OLD, et al.*, plaintiffs seek class certification to pursue a claim on behalf of the class against the OLD for, inter alia, "inconvenience and other losses associated with evacuation and displacement from their homes."[10] In the *O'Dwyer* matter, the proposed class includes all "citizens and/or residents" of Orleans and Jefferson Parishes.[11] Similar class allegations exist in the *Berthelot* matter. There, plaintiffs seek to represent a class including: "all residents, domiciliaries, and property owners" in Jefferson and Orleans Parishes "who were affected by flooding caused by the

---

[8]Exhibit "F," *in globo* (Excerpts from *O'Dwyer* 01/06/06 Hearing Transcript and Orders in O'Dwyer, et al. v. USA No. 05-4181).

[9]Exhibit "G" (*Elizabeth Jung, et al. v. Federal Emergency Management Agency*, No. 06-0947).

[10]Exhibit "H," at ¶15 (*Bradley et al. v. Pittman Construction Co. et al*, U.S.D.C. E.D. La. Docket No. 05-12915).

[11]Exhibit "I," at Count II (*O'Dwyer, et al. v. OLD et al*, Docket No. 05-4181).

4

failure of the hurricane protection levees and flood walls in New Orleans...."[12]

These class allegations are representative of the class allegations made in over one dozen class actions filed in response to flooding following Hurricane Katrina. Consequently, in the event a court certifies any one of these classes, it is substantially certain that the District Judges and their families, the Magistrate Judges and their families, and the court staff and their families will be members of the putative class. Additionally, even if this particular action is not a class action, plaintiff herein would certainly fall within the class as pled in the other (proposed) class actions which are pending before this Court. Judges Zainey and Engelhardt surely recognized this very issue when they *sua sponte* recused themselves in an individual action.[13]

Certain federal publications have also discussed the Hurricane Katrina's impact on the entire Eastern District. *The Third Branch*, a newsletter published by the Administrative Office of the United States Court, has on several occasions taken up this issue.[14]  In the November 2005 issue, Chief Judge Berrigan is quoted as saying: "We have all suffered losses, some minor, some severe, but we are committed to the city of New Orleans and the Eastern District and look forward to playing our part in rebuilding this marvelous city and community."[15]  The October

---

[12]Exhibit "J," at ¶XI (*Berthelot et al v. OLD, et al.*, U.S.D.C. E.D. La., Docket No. 05-4182).

[13]*See* Exhibit "C" attached *in globo* (Order in *Conlay v. Encompass Ins. Co. et al.*, Docket No. 06-0151 and Order in *Charles Villa, et al. v. Columbia Gulf Transmission Co., et al.*, Civil Action No. 05-4569); Exhibit "D," *in globo* (Order in *Bruce Conlay v. Encompass Ins. Co., et al.*, Civil Action No. 06-151, and Order in *Armstead v. C. Ray Nagin et al*, No. 05-6438).

[14]See, Exhibit "K", *in globo* (*The Third Branch*, Vol. 37, No. 10 (October 2005) and No. 11 (November 2005)).

[15]Id.

5

2005 issue observes that: "Hurricane Katrina wreaked havoc on federal courts across Louisiana, Mississippi, Alabama and parts of Florida."[16] Even the Judicial Conference of the United States adopted a resolution expressing: "special thanks to the judges and employees of the Fifth and Eleventh Circuits who have suffered great personal loss but continue to work tirelessly to restore court operations."[17]

## II.     LAW & ARGUMENT:

### A.     SUMMARY OF ARGUMENT:

As a preliminary matter, it must be noted that the instant motion is not predicated on any assertion of actual, personal bias or partiality on the part of this Court. However, disqualification is mandated in light of the purely objective standard under 28 U.S.C. § 455 for two principal reasons: (1) All the judges, their staff, and the clerk's office for the United States District Court for the Eastern District of Louisiana were displaced and affected in some way by the flooding caused by Hurricane Katrina, making them all putative class members of the levee breach lawsuits.[18] Further, the impartiality of any judge from this Court might be reasonably questioned if he or she were to adjudicate matters relative to what part, if any, the OLD's conduct played in the post-hurricane flooding, thereby mandating disqualification under 28 U.S.C. § 455(a); and (2) disqualification is also required under 28 U.S.C. § 455(b)(4) because each member of the bench

---

[16]Id.

[17]Exhibit "L," at p.6 (Excerpts from *Report of the Proceedings of the Judicial Conference of the United States*, September 20, 2005).

[18]*See* for example Exhibit H, at ¶¶15-16 (*Bradley, et al. v. Pittman Constr. Co., Inc.*, No. 06-0225 Complaint providing as part of the putative class individuals who suffered "inconvenience and other losses associated with evacuation and displacement from their homes.").

6

is a putative class member, and has an interest, financial or otherwise, that could be substantially

affected by the outcome of this proceeding.[19]  Because the entire Court is disqualified under §

455, it is appropriate that, pursuant to 28 U.S.C. §292, a district judge from outside the Eastern

District of Louisiana (preferably a United States District Court Judge from either the Middle or

Western Districts of Louisiana)[20] be assigned to handle this litigation.[21]

**B.    DISQUALIFICATION IS MANDATED UNDER 28 U.S.C. § 455(a):**

28 U.S.C. § 455(a) provides that "[a]ny . . . judge, or magistrate judge of the United

States shall disqualify himself in any proceeding in which his impartiality might reasonably be

questioned."[22]  This section is a self-enforcing standard for disqualification.[23]  The general

standard under § 455(a) was designed to "promote the public's confidence in the impartiality and

integrity of the judicial process by saying, in effect, that if any reasonable factual basis for

doubting the judge's impartiality exists, the judge '**shall**' disqualify himself and let another judge

---

[19]*Id.*

[20]A Louisiana judge should be assigned to this case because of the unique Louisiana legal issues that are presented by these cases, i.e. La. R.S. 9:2772, La. R.S. 9:2798.1, La. R.S. 9:2800,

[21]*See* Nichols v. Alley, 71 F.3d 347 (10th Cir. 1995)("balanc[ing] the possible question of impartiality by a reasonable person against the relative ease of replacing [Oklahoma District Court Judge] with an available judge from the very large pool of judges outside the State of Oklahoma.").  The United States Supreme Court Justice over the United States Fifth Circuit Court of Appeals may have to choose the district judge to preside over this matter since the Fifth Circuit's primary court house is also located in New Orleans. *See* In Re Nettles, 394 F.3d 1091 (7th Cir. 2005).

[22]*See* Liljeberg v. Health Service Acquisition Corp., 486 U.S. 847, 858, 108 S.Ct. 2194, 2202 (1988); Tramonte v. Chrysler Corp., 136 F.3d 1025, 1031 (5th Cir. 1998).

[23]McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1259-1260 (5th Cir. 1983); Tramonte, 136 F.3d at 1031(district judge is under the "duty to police her disqualification status.")

preside."[24] This statute requires that a judge "be watchful of . . . disqualifying circumstances and decide any requests to recuse with disclosure necessary to the decision made clear upon the record."[25] In Liljeberg, the Supreme Court further notes:

> The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart.[26]

In order to determine whether a court's impartiality is reasonably in question, "the objective inquiry is whether a well-informed, thoughtful and objective observer would question the court's impartiality."[27] Under § 455(a)'s objective standard, "[w]hat matters is not the reality of bias or prejudice, but its appearance."[28] Here, in light of the fact that every judge, clerk and staff member of the Eastern District of Louisiana was displaced and would be putative class members in the levee breach litigation, a reasonable factual basis exists to question the Court's impartiality.

The Fifth Circuit has even warned against a judge adjudicating a case where his relatives could be class members, stating "even if a judge's relative is not yet a party to a class action, a

---

[24]Potashnick v. Port City Constr. Co., 609 F.2d 1101, 1111 (5th Cir. 1980) (emphasis added); See also, Liljeberg, 486 U.S. at 861, 108 S.Ct. at 2203(providing that if a judge "concludes that his impartiality might reasonably be questioned, then he should find that the statute has been violated.").

[25]Tramonte, 136 F.3d at 1031.

[26]Liljeberg, 486 U.S. at 860-861, 108 S.Ct. at 2203.

[27]Republic of Panama v. American Tabacco Co., Inc., 217 F.3d 343, 346 (5th Cir. 2000).

[28]Liteky v. United States, 510 U.S. 540, 548 (1994).

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

The following order pertains to a Motion for Disqualification of the District and

Magistrate Judges of the United States District Court for the Eastern District of Louisiana *En*

*Banc* which was filed in each of the following cases, the document number being noted

thereafter:

| | |
|---|---|
| 05-4181 "K"(2) | O'Dwyer, et al. v. USA, et al. (Doc. No. 173) |
| 05-4182 "K"(2) | Berthelot, et al. v. Boh Bros. Construction, et al. (Doc. No. 53) |
| 05-4568 "K"(2) | Harvey v. Board of Commissioners for the Orleans Levee Board (Doc. No. 28) |
| 05-5237 "K"(2) | Vodanovich v. Boh Bros. Construction, et al. Doc. No. (Doc. No. 45) |
| 05-6073 "K"(2) | Kirsch, et al. v. Boh Bros. Construction Co., et al. (Doc. No. 40) |
| 05-6314 "K"(2) | Ezell, et al. v. Boh Bros. Construction Co., et al. (Doc. No. 30) |
| 05-6323 "K"(2) | Vanderbrook, et al. v. State Farm Fire & Casualty (Doc. No. 27) |
| 05-6324"K"(2) | Brown, et al. v. Boh Brothers Construction, et al. (Doc. No. 16) |
| 05-6327 "K"(2) | LeBlanc, et al. v. Boh Bros. Construction Co., et al. (Doc. No. 36) |
| 05-6438 "K"(2) | Armstead, et al. v. C. Ray Nagin, Mayor, et al. (Doc. No.13) |
| 06-0020 "K"(2) | Tauzin, et al. v. Board of Comm. for the Orleans Levee Board (Doc. No. 16) |
| 06-0151 "K"(2) | Conlay v. Encompass Ins. Co., et al. |



(Doc. No. 30)

06-0152 "K"(2)      Rogers v. Encompass Ins. Co., et al
                   (Doc. No. 23)

06-0153 "K"(2)      Baird, et al. v. Encompass Ins. Co., et al.
                   (Doc. No. 25)

06-0169 "K"(2)      Humphreys v. Encompass Ins. Co., et al.
                   (Doc. No. 26)

06-0225 "K"(2)      Bradley, et al. v. Pittman Const. Co., et al.
                   (Doc. No. 9)

06-0886 "K"(2)      Finney, et al. v. Boh Brothers, et al.
                   (Doc. No. 9)

## ORDER AND REASONS

Before the Court is a Motion for Disqualification of the District and Magistrate Judges of the United States District Court for the Eastern District of Louisiana *En Banc* which was filed by the Board of Commissioners of the Orleans Levee District ("OLD") in each of the above-captioned cases. As noted by the title, OLD seeks to disqualify every judge and magistrate judge of the Eastern District of Louisiana from these cases contending that pursuant to the constricts of 28 U.S.C. § 455(a)[1] and § 455(b)(4)[2], such a recusal is mandated.

The Court has reviewed this motion and finds that the motion is cast in a procedurally improper posture. At the present time, each of the above-captioned cases is allotted to the

---

[1] Section 455(a) provides, "Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.."

[2] Section 455(b)(4) provides in relevant part: "He shall also disqualify himself . . . [where] he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."

2

undersigned and Magistrate Judge Jay Wilkinson. As disclosed in open court on March 24, 2006, the undersigned suffered no damage caused by flooding. Thus, neither does the undersigned have any financial interest in the subject matter of these suits, nor does his spouse or any minor child residing in his household. To attempt to recuse every judge and magistrate judge of this Court *en banc* is premature, given the fact that the undersigned may not have a basis to recuse. Likewise, it is not for this judge to rule on the propriety of Magistrate Judge Wilkinson or any other judge's qualifications under 28 U.S.C. 455. Accordingly,

**IT IS ORDERED** that the Motion to Disqualify in each of the above-numbered cases is **DENIED** as procedurally improper.

**IT IS FURTHER ORDERED** that should the Commissioners of the Orleans Levee District find it necessary, a proper motion to recuse **solely** the undersigned must be filed on or before **April 5, 2006**, and noticed for hearing before the undersigned.

**IT IS FURTHER ORDERED** that should the Commissioners of the Orleans Levee District find it necessary, a proper motion to recuse Magistrate Judge Jay Wilkinson must be filed on or before **April 5, 2006**, and noticed for hearing before him.

New Orleans, Louisiana, this ___28th___ day of March, 2006.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**

3

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

APR 15  4 32 PM '99

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

KRISTIE A. TRAMONTE, ET AL          CIVIL ACTION

VERSUS                               NO: 95-2109

CHRYSLER CORPORATION, ET AL          SECTION: "S" (3)

### ORDER AND REASONS

An out-of-state nephew has today informed me that he
purchased a second-hand Chrysler with flaking paint, which he
used as a temporary replacement automobile following the loss of
his own automobile, and that he used it for a brief period and
then sold it.

Although the remote connection[1] of a relative's brief
encounter with a used Chrysler with flaking paint in my opinion
would not require my recusal, the 5th Circuit's ruling seems to,
and I hereby recuse myself, and order that the case be
reallotted.

_____

[1] It would be interesting to know which judge, if any, will
not have a connection to Chrysler at least as close as this when
an inquiry as thorough as this is made.

APR 20
REALLOTTED TO
SECT. L

APR 2 1 1999
DATE OF ENTRY _____

Fee _____
Process ___
X Dktd ___
CtRmDep ___
Doc.No. 55


EXHIBIT
P

New Orleans, Louisiana, this _15_ day of April, 1999.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE