# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

## KATRINA-RELATED CASES
### JOINT REPORT NO. 1

1. **Scope of Proceedings and Report**:

*05 - 4182 K*

The following joint report, submitted by the parties at the Court's direction, pertains to

these cases, which have all been allotted to Section K (Magistrate Section 2):[1]

| | |
|---|---|
| 05-4181 | O'Dwyer, et al. v. USA, et al. |
| 05-4182 | Berthelot, et al. v. Boh Bros. Construction, et al. |
| 05-4191 | Vodanovich v. Boh Bros. Construction, et al. |
| 05-4568 | Harvey v. Board of Commissioners for the Orleans Levee Board |
| 05-5237 | Vodanovich v. Boh Bros. Construction, et al. |
| 05-6073 | Kirsch, et al. v. Boh Bros. Construction Co., et al. |
| 05-6314 | Ezell, et al. v. Boh Bros. Construction Co., et al. |
| 05-6323 | Vanderbrook, et al. v. State Farm Fire & Casualty |
| 05-6324 | Brown, et al. v. Boh Brothers Construction, et al. |
| 05-6327 | LeBlanc, et al. v. Boh Bros. Construction Co., et al. |
| 05-6359 | Bradley, et al. v. Modjeski and Master, Inc. |
| 06-0004 | Sullivan, et al. v. State Farm Fire & Cas. Ins. |
| 06-0020 | Tauzin, et al. v. Board of Comm. for the Orleans Levee Board |
| 06-0151 | Conlay v. Encompass Ins. Co., et al. |
| 06-0152 | Rogers v. Encompass Ins. Co., et al. |
| 06-0153 | Baird, et al. v. Encompass Ins. Co., et al. |
| 06-0169 | Humphreys v. Encompass Ins. Co., et al. |
| 06-0225 | Bradley, et al. v. Pittman Const. Co., et al. |
| 06-0886 | Finney, et al. v. Boh Brothers, et al. |

The following additional cases have been transferred to the EDLA and are now allotted to

this Section (per the Court's Minute Entry of 3/24/06):

| | |
|---|---|
| 05-1140 | Chehardy, et al. v. J. Robert Wooley, et al. |
| 05-1162 | Chehardy, et al. v. J. Robert Wooley, et al. |

---

[1] Counsel for the United States has advised that Armstead, et al. v. C. Ray Nagin, Mayor, No. 05-6438, is being severed from these cases and should not be included in this report. Consequently, this report is not intended to address that suit.

05-1163        Cheardy, et al. v. J. Robert Wooley, et al.[2]

The following cases were removed to the MDLA, and certain plaintiffs aver that they may be transferred to this Court:

05-1138-A-M-3        Slaton, et al. v. St. Paul Fire and Marine Ins. Co., et al.
05-1301-A-M-3        Gillaspie, et al. v. St. Paul Fire and Marine Ins. Co., et al.

Defendants are unaware of any order to transfer these cases to the EDLA.

Plaintiffs' counsel submit that the decision as to which matters should be consolidated is a threshold matter. For example, counsel may require this information prior to applying to serve on any committees herein.

Defendant homeowner insurers submit that the claims against homeowner insurers in Vanderbrook, et al. v. State Farm, et al., the Encompass cases and Chehardy should be handled separately from the Levee Board cases.

The United States suggests that it be excluded from the consolidated case management order because the Court lacks subject-matter jurisdiction over the tort actions against the United States. None of the plaintiffs has exhausted their administrative remedies under the Federal Tort Claims Act, and there is no colorable claim that the Court has subject-matter jurisdiction over the tort suits against the United States in the absence of such exhaustion.

The State of Louisiana, Governor Kathleen Blanco, the City of New Orleans, Mayor C. Ray Nagin, former Police Superintendent Compass, and Clerk of Criminal Court Butler also suggest that they be excluded from the consolidated case management order. The Court lacks

---

[2] The three cases bearing the Chehardy caption are actually only one case but were assigned different federal court case numbers as a result of the removal of that case by separate defendants. For the purpose of simplifying this proceeding, the Chehardy defendants submit that the matter ought to proceed under the 05-1140 case number only.

subject matter jurisdiction over the claims against these parties because they are entitled to sovereign immunity.  Additionally, the claims against these parties are unrelated to the levees.

2.     **Order Suspending Deadline on Motion to Certify**:

The deadline for filing any motion to certify a class has been suspended by this Court's minute Entry of 3/24/06.  Certain Plaintiffs' counsel believe that class certification procedures should be "fast-tracked in order to allow for the speedy trials of damages."

Defendants' counsel aver that all class certification issues, including discovery on same, should be postponed until the resolution of the dispositive motions identified herein.

3.     **Master Service Lists**:

a.     **Plaintiffs' Master Service List**:

Plaintiffs' counsel should submit to the Court and to Defendants a Master Service List containing service information (including email addresses) for all counsel.  So that this may be facilitated, the Court should order all plaintiffs' counsel to submit the appropriate contact information to the Court.

b.     **Defendants' Master Service List**:

Defendants' counsel should submit to the Court and to Plaintiffs a Master Service List containing service information (including email addresses) for all counsel.  So that this may be facilitated, the Court should order all Defendants' counsel to submit the appropriate contact information to the Court.

4.      **Rule 4 Service on Defendants**:

The Court should set a deadline for service of process to ensure that all parties are represented and involved in the litigation. Furthermore, counsel for the defendants suggest the Court should set a deadline for the filing and service of supplemental and amending complaints prior to the filing of any Master Complaint. Counsel for the plaintiffs suggest the Court should likewise set a deadline for the filing of answers.

5.      **Recusal Motion Practice**:

The Court has ordered that all Motions to Recuse be filed by April 4, 2006 and noticed for hearing on April 19, 2006. Defendants' counsel aver that certain defendants shall seek Fifth Circuit review of the recusal issue if the trial court denies the defendants' motions to recuse. Certain defendants' counsel further aver that any further action in these cases should await final resolution of this issue by the Fifth Circuit.

6.      **Plaintiffs' and Defendants' Committees**:

a.      **Plaintiffs' Master Committee**:

The Court has indicated (in its 3/24/06 Minute Entry) that it intends to appoint a Plaintiffs' Master Committee ["PMC"] in order to "facilitate the prosecution of this litigation." Applications to the PMC (and to other specified committees, as discussed infra) will be submitted to this Court for consideration on or before the deadline to be announced. The PMC, which the Court has suggested be composed of five members, will then meet and confer, with appropriate input allowed from other plaintiffs' counsel. Certain plaintiffs believe that the PMC then should propose to the Court for appointment a Plaintiffs' Liaison Counsel, and that this

proposed Plaintiffs' Liaison Counsel should either be one of the five already-appointed members of the PMC, or possibly selected from the other applicants for appointment to the PMC.

Subsequent to the appointment of the Plaintiffs' Liaison Counsel, the PMC and Plaintiffs' Liaison Counsel shall confer and thereafter make a recommendation to the Court with respect to the number and subject area responsibilities of the intended specific committees referenced in the Court's Minute Entry. Based upon the Court's consideration of this recommendation, applications for membership of the designated specific committees then may be considered for appointment by the Court. Any prior applicants to the PMC who are interested in serving on the designated specific committees may either resubmit applications to these specific committees, or simply indicate the specific committee to which their prior application (to the PMC) should be directed.

b.      **Defendants' Steering Committees**:

The Court should appoint a Defendants Steering Committee comprised of a representative of the (1) contractor defendants, (2) the engineering defendants, (3) the Orleans Levee District, (4) the homeowner insurer defendants[3], and (5) the government defendants. Applications for the Defendants' Steering Committee should be submitted expeditiously to this Court for consideration.

The United States and other federal defendants should not be represented by or on a Steering Committee unless and until the jurisdiction of this Court over the actions against them is established. The United States cannot be sued by classes, because the Federal Tort Claims Act,

---

[3] The homeowners' insurance defendants do not wish to be part of the Defendants' Steering Committee if the claims against them are severed.

28 U.S.C. § 2675(a), requires each and every litigant to exhaust his administrative remedies before suit is filed.  Additional defenses arising out of the sovereign immunity of the United States must also be surmounted before jurisdiction is established.

The State, Governor, City, Mayor, former Police Superintendent and Clerk of Criminal Court also suggest that they should not be represented by or on a steering committee until the jurisdiction of this Court over the actions against these parties are established and/or their pending motions to dismiss based on sovereign immunity, qualified immunity or other grounds are decided.

7.    **Status Conferences**:

Both Plaintiffs and Defendants feel that status conferences in these proceedings should be held on at least a monthly basis.  Certain plaintiffs' counsel feel the meetings, at least initially, should be on no less than a bi-monthly basis.  Prior to each conference, Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel, following court appointment, should submit an agenda to the Court.

8.    **Remand/Subject Matter Jurisdiction/Severance Motions**:

As soon as practical, the Court should address remand, subject matter jurisdiction, consolidation and severance issues.  The Court should provide deadlines for requests for limited discovery on these issues, assign hearing dates, and provide a briefing schedule.  The Court may consider the appointment of a Plaintiffs' State Court Liaison Counsel to facilitate remand briefing and argument by plaintiffs.

9.    **Division of Claims for Discovery and Trial**

Defendants aver that the claims before the Court should be divided into three over-arching groups of claims: (1) levee design, construction, engineering, and maintenance claims (and related general liability insurance claims), (2) homeowners' insurance claims, and (3) non-levee preparation and response to the Hurricane claims against governmental officials.  Certain defendants' counsel believe that the levee design, construction, engineering, and maintenance claims should be further broken down into subcategories.  Each over-arching group would proceed on a separate litigation track from the others.  Certain Defendant's aver that this division of claims should be performed immediately after recusal issues are resolved and prior to the resolution of any additional issues, such as remand, subject matter jurisdiction or severance.

Certain Plaintiffs' counsel are prepared to identify the categories of claims at this time.  Other Plaintiffs' counsel believe that the decision should be made by the Court appointed PMC.

10.   **Master Complaint(s) and Master Answer(s)**:

Subsequent to formation of the PMC, the Court should order the filing of separate Administrative Master Complaints directed to class issues only.  Certain plaintiffs feel that any discussion of Master Complaints is premature, pending meetings among plaintiffs' counsel to identify potential defendants and attempt to resolve differences of opinion about which should be sued herein.  Other plaintiffs believe that the designated subject areas of these Master Complaints should and will be addressed following the formation of the PMC.  Plaintiffs' counsel should be given an opportunity to object to the perceived failure to include certain claims, theories, or defendants in a given Master Complaint.

Defendants' counsel aver that no Master Complaint should be filed with regard to the homeowners' insurance claims because of the individual nature of those claims.

11.   **Preliminary Motion Practice**:

Following the division of the claims and/or the filing of Plaintiffs' Administrative Master Complaints (where appropriate), the Court should set a deadline for the filing of various motions.

Defendants' counsel aver that the preliminary motion practice for the levee design, construction, engineering, and maintenance claims should be handled in three phases as follows:

1.   Motions based on legal or factual defenses that require no or very little discovery, including without limitation incorrectly named defendant issues, absolute immunity issues, basic issues on causation, etc.

2.   Peremption defenses

3.   Government Contractor and other 12(b) motions

4.   Venue

The PMC will respond in briefs on behalf of all Plaintiffs' counsel to issues raised by Defendants' preliminary motion practice, where appropriate and to the extent practical.  In addition, Plaintiffs' counsel aver that plaintiffs may initiate motion practice on threshold issues such as the applicability of the administrative claims procedure of the FTCA.

Defendants' counsel aver that with respect to the homeowners' insurance claims and the governmental malfeasance claims, the defendants should be permitted to file Rule 12(b) and Rule 56 motions as soon as all recusal and jurisdictional issues are resolved.  Most, if not all, of the homeowners' insurance defendants and the government defendants expect to file motions to dismiss or motions for summary judgment to dismiss the claims against them.  The United States will move to dismiss any suit filed against it in which administrative remedies have not been

exhausted.  Defense counsel for the Chehardy matter submit that the Motions for Judgment on the Pleadings filed on October 31, 2005 in Chehardy should be promptly considered without awaiting resolution of jurisdictional issues in the unrelated cases. Defendants' counsel aver that no discovery should transpire until resolution of these dispositive motions.

12.    **Discovery**

Discovery protocol should be addressed through the Court-Appointed committees.  The scope of discovery — and the need for same in connection with motions filed — should be addressed after the filing of the Administrative Master Complaints and the filing of the preliminary motions discussed above. At the appropriate time, the Court should consider implementing the automatic disclosures provided for in FRCP 26(a).

In addition:

a.      **Preservation of Evidence:**

All parties should be reminded of their duty to preserve evidence that may be relevant to this action.  The duty extends to documents, data and tangible things in the possession, custody and control of the parties to this action, and any employees, agents, contractors, carriers, bailees, or other non-parties who possess materials reasonably anticipated to be subject to discovery in this action.  Certain government defendants aver that the preservation of evidence shall not take precedence over the public safety.

b.      **Document Depository**:

The PMC and the Defendants' Steering Committee will meet to choose and establish one or more depository sites for the parties.

c.    **Depositions**:

Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel should submit a joint proposed protocol for the taking of depositions in these proceedings.  Reasonable efforts will be made to coordinate production of witnesses and scheduling matters.

13.    **List of Investigators**

At the Court's request, the undersigned attach as Exhibit "A" a list of investigators identified in the news media coverage of events giving rise to the litigation.

Defendants' counsel aver that this list is being provided for informational purposes only, pursuant to the Court's request.  This list is not exhaustive, and may or may not include qualified individuals or teams.  There may be far more prominent and qualified investigators who are not on this list, and neither the plaintiffs nor the defendants vouch for the expertise or qualifications of any of the individuals on this list.  In response to the Court's specific inquiry in its Minute Entry of March 24, 2006, defendants' counsel aver that they do not believe that an agreed upon panel of experts could be utilized in any of these cases.

14.    **Trial**:

Prior to this Court's decisions on class certification, discussion of proposed trial plans and phases for these proceedings is premature.[4]

_____

[4]Certain plaintiffs' counsel have identified categories of plaintiffs and claims for prospective "representative" trials.

15.     **Proposed Scheduling Order**:

Defendants' counsel attach as Exhibit "B" a proposed Scheduling Order that they

encourage the Court to consider and adopt.  The proposed Scheduling Order follows the

sequence of events provided for by this Joint Initial Report and assigns a brisk but reasonable

schedule for the filing and hearing of the motions expected by the parties.

16.     **Additional Attachments:**

Certain Plaintiffs' counsel attach as Exhibit "C" and Exhibit "D" additional submissions

to the Court addressing the Chehardy matter and the Mississippi River Gulf Outlet.  Undersigned

counsel for certain of the defendants avers that these submissions were first received at

approximately 2:45 p.m. on the date of the filing of this initial report and were not circulated

among the remaining defense counsel prior to the filing of this report for lack of time.

Additionally, undersigned counsel avers that the Defendants' counsel did not address in detail the

arguments presented by the additional Chehardy submission as such arguments were not viewed

to be within the scope of the report requested by the Court.  Further, the Defendants' counsel did

not address any claims concerning the Mississippi River Gulf Outlet on the understanding (as per

the Court's 3/24/06 Minute Entry) that such claims are not part of this grouping of cases.  The

defendants will brief these issues should the Court wish.

Respectfully submitted:

_____

Ralph S. Hubbard III, T.A., La. Bar. # 7040
Joseph P. Guichet, La. Bar # 24441
Seth A. Schmeeckle, La. Bar # 27076
LUGENBUHL, WHEATON, PECK,
    RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Tel:  (504) 568-1990
Fax: (504) 310-9195
rhubbard@lawla.com
jguichet@lawla.com
sschmeeckle@lawla.com


and

_____

Gerald E. Meunier, T.A., La. Bar. #9471
Kara M. Hadican, La. Bar. #29234
GAINSBURGH, BENJAMIN, DAVID,
    MEUNIER & WARSHAUER,
    L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Tel: (504) 522-2304
Fax: (504) 528-9973
dmartin@gainsben.com
khadican@gainsben.com

cc:    All known counsel of record
       (By e-mail)

**EXHIBIT "A" TO JOINT REPORT No. 1**

The following report pertains to these cases, which have all been allotted to Division K,

Magistrate 2:

| | |
|---|---|
| 05-4181 | O'Dwyer, et al. v. USA, et al. |
| 05-4182 | Berthelot, et al. v. Boh Bros. Construction, et al. |
| 05-4191 | Vodanovich v. Boh Bros. Construction, et al. |
| 05-4568 | Harvey v. Board of Commissioners for the Orleans Levee Board |
| 05-5237 | Vodanovich v. Boh Bros. Construction, et al. |
| 05-6073 | Kirsch, et al. v. Boh Bros. Construction Co., et al. |
| 05-6314 | Ezell, et al. v. Boh Bros. Construction Co., et al. |
| 05-6323 | Vanderbrook, et al. v. State Farm Fire & Casualty |
| 05-6324 | Brown, et al. v. Boh Brothers Construction, et al. |
| 05-6327 | LeBlanc, et al. v. Boh Bros. Construction Co., et al. |
| 05-6359 | Bradley, et al. v. Modjeski and Master, Inc. |
| 06-0004 | Sullivan, et al. v. State Farm Fire & Cas. Ins. |
| 06-0020 | Tauzin, et al. v. Board of Comm. for the Orleans Levee Board |
| 06-0151 | Conlay v. Encompass Ins. Co., et al. |
| 06-0152 | Rogers v. Encompass Ins. Co., et al. |
| 06-0153 | Baird, et al. v. Encompass Ins. Co., et al. |
| 06-0169 | Humphreys v. Encompass Ins. Co., et al. |
| 06-0225 | Bradley, et al. v. Pittman Const. Co., et al. |
| 06-0886 | Finney, et al. v. Boh Brothers, et al. |
| 05-1140 | Chehardy, et al. v. J. Robert Wolley, et al. |
| 05-1162 | Chehardy, et al. v. J. Robert Wolley, et al. |
| 05-1163 | Chehardy, et al. v. J. Robert Wolley, et al |

## LIST OF INVESTIGATORS[1]

Upon information and belief, the following individuals have investigated the levee

systems at issue in these consolidated matters:

1.  **Dan Hitchings**, Director, Regional business Directorate, Mississippi Valley Division, U.S. Army Corps of Engineers and currently assigned to Mississippi Valley Division (Forward)

2.  **Brigadier General Robert Crear**, Commander, Mississippi Valley Division, u.S. Army Corps of Engineers

---

[1]Compiled by reference to *The Times Picayune, The Wall Street Journal, The New York Times,* and http://www.wdsu.com. Additional biographical information for certain individuals provided by the United States.

**EXHIBIT**

**A**

3.   **Colonel Richard Wagenaar**, Commander, New Orleans District, U.S. Army Corps of Engineers

4.   **Jim Taylor**, Public Affairs Officer, Task Force Guardian, U.S. Army Corps of Engineers

5.   **Paul Mlaker**, Engineer Research and Development Center, U.S. Army Corps of Engineers, Vicksburg, Mississippi, and member of the Interagency Performance Evaluation Team

6.   **James T. Young**, Retired and recently rehired annuitant, Mississippi Valley Division, U.S. Army Corps of Engineers

7.   **Reed Mosher**, Engineer Research and Development Center, U.S. Army Corps of Engineers, Vicksburg, Mississippi, and member of the Interagency Performance Evaluation Team

8.   **Ernest Murry**, Construction Division, U.S. Army Corps of Engineers, New Orleans District

9.   **Colonel Duane P. Gapinski**, Commander, Rock Island District, U.S. Army Corps of Engineers

10.  **Alan Dooley**, Public Affairs Officer, St. Louis District, U.S. Army Corps of Engineers

11.  **James Michael Duncan**, professor of geotechnical engineering, Virginia Tech University

12.  **Paul Kemp**, Louisiana State University Center for Coastal, Energy, and Environmental Resources

13.  **Mitchell D. Frazier**, South Pacific Division, Regulatory Branch, U.S. Army Corps of Engineers

14.  **Tim Dugan**, Public Affairs Officer, New England District, U.S. Army Corps of Engineers

15.  **Fred Young**, Project Manager, New Orleans District, U.S. Army Corps of Engineers, and currently assigned to Task Force Guardian.

16.  **Al Naomi**, Project Manager, New Orleans District, U.S. Army Corp of Engineers

17.  **Interagency Performance Evaluation Task Force** (Army Corps of Engineers)
             **Ed Link**, University of Maryland

> **Janis Hote**, Engineering Division, Hydraulics and Hydrology Branch, New
> Orleans District, U.S. Army Corps of Engineers
> **Lieutenant General Carl Strock**, Commander, U.S. Army Corps of Engineers

18.  **Clay Zollars**, AquaTerra Contracting

19.  **American Society of Civil Engineers** (reviewing the investigation conducted by the
     Interagency Performance Evaluation Task Force):
>     **William Marcus**, President
>     **Dr. Peter Nicholson**, engineering professor at the University of Hawaii, leader of
>     investigative team
>     **Lawrence Roth**, deputy executive director
>     **Gus Cantrell**, civil engineer

20.  **National Science Foundation** (34 members in all):
>     **J. David Rogers**, University Missouri-Rolla
>     **Raymond Seed**, University of California-Berkeley
>     **Robert G. Bea**, University of California-Berkeley
>     **Thomas Wolff**, assistant dean of engineering at Michigan State University
>     **Gordon Boutwell**, Baton Rouge soils specialist
>     **Joseph Wartman**, geotechnical engineer at Drexel University

21.  **Dobroslav Znidarcic**, professor of geotechnical engineering at the University of
     Colorado at Boulder

22.  **Guillermo Ramirez**, professor of civil and environmental engineering, University of
     Texas at Arlington

23.  **Thomas Eagar**, Massachusetts Institute of Technology

24.  **Joseph Suhayda**, Louisiana State University coastal engineer (retired)

25.  **Hassan Mashriqui**, storm-surge researcher at the Louisiana State University Hurricane
     Center

26.  **Will Shaffer**, storm modeler for the National Weather Service and the National
     Hurricane Center

27.  **Barry Keim**, climatologist, Louisiana State University

28.  **Greg Stone**, Coastal Geologist, Louisiana State University

29.  **Ivor van Heerden**, assistant director of the Louisiana State University Hurricane Center

30.   **Jack Beven**, National Hurricane Center

31.   **Lee Clarke,** sociologist at Rutgers University who studies the institutional role in disasters

32.   **Gerald Galloway**, University of Maryland

33.   **Scott Slaughter,** branch manager for Southern Earth Sciences ("Team Louisiana")

34.   **Leon Schieber**, levee and floodwall engineer, Black & Veatch, Kansas

**EXHIBIT "B" TO JOINT REPORT No. 1**

**DEFENDANTS' PROPOSED SCHEDULING ORDER**

|  | ORDER OF ISSUES | TENTATIVE SCHEDULING |
|---|---|---|
| 1. | All Motions to Recuse to be filed | April 4, 2006 |
| 2. | Hearing on Motions to Recuse | April 19, 2006 |
| 3. | Decision on Motions to Recuse | |
| 4. | Writ Applications on Recusal Ruling (if applicable) | Within delays provided by law |
| 5. | Filing of Motions to Remand, Motions to Sever, and/or Subject Matter Jurisdiction Motions (where applicable and to the extent not already filed) | 14 days after #3 |
| 6. | Filing of Oppositions to Motions to Remand, Motions to Sever, and/or Subject Matter Jurisdiction Motions (where applicable and to the extent not already filed) | 14 days after #5 |
| 7. | Hearing on Motions to Remand, Motions to Sever, and/or Subject Matter Jurisdiction Motions | The later of (1) 8 days after #6, or (2) 5 days after ruling on recusal by 5th Circuit |
| 8. | Resolution of Motions to Remand, Motions to Sever, and/or Subject Matter Jurisdiction Motions | |
| 9. | Divide cases in three groups of claims: (A) levee design, construction, engineering, and maintenance claims, (B) homeowners' insurance claims, and (C) government officer preparation and response claims.  Each group to proceed on its own schedule. | Same as #8. |
|  | **Continuation of Schedule for Levee Design, Construction, Engineering and Maintenance Claims (Schedule A)** | |
| 10-A | Motions requiring no to very little discovery (including incorrectly named defendants, limited causation issues, etc.), and motions based on peremption to be filed | 20 days after #8. |

EXHIBIT
B

|  | ORDER OF ISSUES | TENTATIVE SCHEDULING |
|---|---|---|
| 11-A | Voluntary Rule 26(a)(1) disclosure of discovery materials relevant to motions filed.  This disclosure should include a physical or a visual copy of the relevant and material records that are not attached to said motions. | Same as #10-A. |
| 12-A | Oppositions to motions requiring no to very little discovery, including incorrectly named defendants, limited causation issues, etc., but not including peremption motions. | 20 days after #10-A. |
| 13-A | Hearing on motions requiring no to very little discovery, including incorrectly named defendants, limited causation issues, etc., but not including peremption motions. | 7 days after #12-A. |
| 14-A | Oppositions to peremption motions | 45 days after #10-A. |
| 15-A | Hearing on peremption motions | 7 days after #14-A. |
| 16-A | Dispositive motions based on governmental contractor immunity and similar motions to be filed | 15 days after ruling on peremption motions |
| 17-A | Voluntary Rule 26(a)(1) disclosure of discovery material relevant to filed motions | Same as #16-A. |
|  | **Continuation of Schedule for Homeowners' Insurance Claims (Schedule B)** |  |
| 10-B | Preliminary Motions, including Motions to Dismiss or Motions for Summary Judgment, to be filed (to the extent not already filed). | 20 days after #8. |
| 11-B | Oppositions to Preliminary Motions to be filed (to the extent not already filed). | 20 days after #10-B. |
| 12-B | Hearing on Preliminary Motions | 7 days after #11-B. |
|  | **Continuation of Schedule for Government Officer Preparation and Response Claims (Schedule C)** |  |
| 10-C | Preliminary Motions, including Motions to Dismiss or Motions for Summary Judgment, to be filed (to the extent not already filed). | 20 days after #8. |
| 11-C | Oppositions to Preliminary Motions to be filed (to the extent not already filed). | 20 days after #10-C. |
| 12-C | Hearing on Preliminary Motions | 7 days after #11-C. |

# FAYARD AND HONEYCUTT
## A Professional Corporation

**519 Florida Avenue, SW**
**Denham Springs, Louisiana  70726**
**Telephone: (225) 664-4193**
**Fax: (225) 664-6925**
**E-mail: calvinfayard@fayardlaw.com**

**Calvin C. Fayard, Jr.,**
A Professional Corporation
**D. Blayne Honeycutt**

**Wanda J. Edwards**

Of Counsel
**Haydn S. Berey**

March 4, 2006

*Delivered via E-mail c/o Gerald Meunier*

The Honorable Stanwood R. Duval, Jr.
United States District Court Judge
United States District Court fot the Eastern District of Louisiana
500 Poydras Street
Room C368
New Orleans, LA 70130

Re:   Gladys Chehardy, et al. vs. Louisiana Insurance Commissioner J. Robert
        Wooley, et al.
        C. A. No. 05-CV-_____

Dear Judge Duval:

The undersigned counsel, represent policyholder class representatives in actions against
fifteen various insurance companies, seeking, among other things, a declaratory judgment
relating to the construction and interpretation of various homeowners' insurance polices.  The
actions, 1) Gladys Chehardy, et al. v. J. Robert Wooley, et al., C. A. No. 05-1140-FJP-CN,
2) Gladys Chehardy, et al. v. J. Robert Wooley, et al., C. A. No. 05-1162-FJP-CN; 3) Gladys
Chehardy, et al. v. J. Robert Wooley, et al., C.A. No 05-1163-FJP-CN (collectively, the
"Chehardy Cases"), were transferred to the Eastern District of Louisiana from the Middle District
of Louisiana, and are presently allotted to Your Honor.  While some of the defendants originally
sued have been dismissed, we anticipate renaming some or all of them in additional or amended
pleadings.

The claims in the Chehardy Cases, involve, among other things, insurance coverage
issues that are common, similar, or substantially the same as the issues present in twenty cases

EXHIBIT
C
tabbies

(the "Levee Cases")[1] presently pending before this Court.  Centralized handling of the Chehardy and Levee Cases is required because: (1) the cases contain common questions of fact and law that are significant to the litigations; (2) it will avoid duplication of discovery and prevent inconsistent pretrial rulings; (3) it will conserve the resources of the parties, their counsel, and the judiciary; (4) it will promote the efficient utilization of judicial facilities and manpower; and (5) it will avoid duplicative and inconsistent rulings, orders, or judgments, as discussed below.

### A.    Commonality of Factual and Legal Issues

Fourteen (14) of the twenty Levee Cases have insurance company defendants and assert claims for insurance coverage.  The Chehardy Cases share claims with several Levee cases against insurance company defendants Standard Fire Insurance Company and State Farm Fire and Casualty.[2]  Thus, among other things, the Chehardy and Levee Cases share core factual and legal issues related to insurance coverage.

For example in addition to a commonality of factual issues concerning the construction, design, maintenance, and inspection of the levees in New Orleans, illustrative common insurance coverage issues include:

(1)    Whether the levee failures were the cause of some, most, or all of the property damage endured by homes, businesses, and personal property because of Hurricane Katrina;

(2)    Whether the levee failures were the efficient cause of the property damage suffered throughout New Orleans;

(3)    Whether the losses stemming from damage to structures because of Hurricane Katrina stem from wind and rain versus flood damage;

(4)    Whether two concurring causes were independent or dependent causes of losses;

(5)    Whether the property damage from Hurricane Katrina constitutes a "man-

---

[1]    05-4181 "K"(2) - O'Dwyer, et al. v. USA, et al.; 05-4182 "K"(2) - Berthelot, et al. v. Boh Bros. Construction, et al.; 05-4191 "K"(2) - Vodanovich v. Boh Bros. Construction, et al.; 05-4568 "K"(2) - Harvey v. Board of Commissioners for the Orleans Levee Board; 05-5237 "K"(2) - Vodanovich v. Boh Bros. Construction, et al.; 05-6073 "K"(2) - Kirsch, et al. v. Boh Bros. Construction Co., et al.; 05-6314 "K"(2) - Ezell, et al. v. Boh Bros. Construction Co., et al.; 05-6323 "K"(2) - Vanderbrook, et al. v. State Farm Fire & Casualty; 05-6324 "K"(2) - Brown, et al. v. Boh Brothers Construction, et al.; 05-6327 "K"(2) - LeBlanc, et al. v. Boh Bros. Construction Co., et al.; 05-6359 "K"(2) - Bradley, et al. v. Modjeski and Master, Inc.; 05-6438 "K"(2) - Armstead, et al. v. C. Ray Nagin, et al.; 06-0004 "K"(2) - Sullivan, et al. v. State Farm Fire & Cas. Ins.; 06-0020 "K"(2) - Tauzin, et al. v. Board of Comm. for the Orleans Levee Board; 06-0151 "K"(2) - Conlay v. Encompass Ins. Co., et al.; 06-0152 "K"(2) - Rogers v. Encompass Ins. Co., et al; 06-0153 "K"(2) - Baird, et al. v. Encompass Ins. Co., et al.; 06-0169 "K"(2) - Humphreys v. Encompass Ins. Co., et al.; 06-0225 "K"(4) - Bradley, et al. v. Pittman Const. Co., et al.; 06-0886 "K"(2) - Finney, et al. v. Boh Brothers, et al.

[2]    05-6323 "K"(2) - Vanderbrook, et al. v. State Farm Fire & Casualty and 06-0004 "K"(2) - Sullivan, et al. v. State Farm Fire & Cas. Ins.

made disaster"; and

(6)   Whether the causes of the losses resulted from standard covered perils under the relevant insurance policies.

**B.    Commonality of Discovery and Pretrial Issues**

Because the Chehardy and Levee Cases contain numerous common issues of fact and law, the same or substantially similar evidence will be relevant and material to the matters at issue in both matters.  Permanent assignment of the Chehardy Cases to the same docket as the Levee cases will permit the overlapping procedural and substantive issues to be addressed in a coordinated manner.

Consolidation of the Chehardy and Levee cases on one docket will significantly shorten the combined discovery period for the multiple litigations.  The parties likely will rely on common witnesses, particularly regarding (1) the construction, design, and maintenance of the levee or flood walls; (2) Insurance forms, drafting history, language, and exclusions; and (3) Causation of and liability for losses sustained by policyholders.  If the Chehardy and Levee Cases are on one docket, it will permit coordination of witnesses for depositions, thereby reducing the number of times experts, corporate representatives and common witnesses (e.g., governmental agencies, builders, developers, architects, engineers, etc.) have to be produced for their depositions.  Moreover, witnesses with testimony that is not case-specific but is relevant to several cases can be produced once for their deposition.  We intend to submit a proposed Master Case Management Order that will govern the coordinated approach to discovery that will use devices such as liaison counsel and mandatory scheduling procedures to move these matters forward as efficiently as possible.

Similarly, some parties in the Chehardy and Levee Cases will have some common discovery with respect to written discovery.  The parties can therefore serve liaison counsel with a master set of common discovery answers that apply to all relevant parties and pending Katrina-related cases and any cases transferred onto the docket in the future.  The cost savings in having to answer interrogatories or produce documents only once can be substantial.

**C.    Economy of Judicial Resources**

In addition to the foregoing substantive factors that support assignment of the Chehardy Cases to the same docket as the Levee Cases, there are equally important procedural factors in support thereof.  Procedural factors that support the same docket assignment include the following:

- The Chehardy and Levee Cases, in some respects, are in similar stages of readiness;

- Assignment of the Chehardy Cases to the same docket as the Levee Cases would not drain the resources of several judges and would allow the parties in these cases to contribute, where appropriate, resources to assist the Court in the management of these cases;

- Familiarity with the Levee cases would make it appropriate for the same judge to hear related matters to promote efficient disposition of common issues; and

While this list is not exhaustive, these factors will facilitate important time and cost saving objectives.

### D.  <u>Uniformity of Judgments for Common Issues of Law and Fact</u>

Lastly, retention of the Chehardy Cases on the same docket as the Levee Cases will avoid piecemeal, repetitive, and possibly inconsistent adjudications by various courts on substantially the same questions of law and fact.

We appreciate the opportunity to submit our comments to the Court in advance of Thursday's conference and stand ready to cooperate with the Court and other counsel.

Respectfully submitted,

**MCKERNAN LAW FIRM**

**FAYARD & HONEYCUTT**

_____

_____

Joseph J. McKernan, Esquire
Bar Roll No. 10027
Gordon J. McKernan, Esquire
Bar Roll No. 21768
Chet Boudreaux, Esquire
Bar Roll No. 28504
8710 Jefferson Highway
Baton Rouge, Louisiana
PH: (225) 926-1234
FX: (225) 926-1202

Calvin Clifford Fayard, Jr., Esquire
519 Florida Avenue, SW
Denham Springs, LA 70726
PH: (225) 664-4193
FX: (225) 664-6925

**ANDERSON KILL & OLICK, P.C.**

_____

**BRUNO & BRUNO**

John N. Ellison, Esquire (admitted *pro hac vice*)
1600 Market Street
Suite 2500
Philadelphia, PA 19103

_____

Joseph M Bruno, Esquire (3604)
David S. Scalia, Esquire (21369)
Stephen S. Kreller, Esquire (28440)
855 Baronne St.
New Orleans, LA 70113
PH: (504) 525-1335
FX: (504) 581-1493

Vernon P. Thomas, Esquire
1524 North Claiborne Avenue
New Orleans, LA 70116
PH: (504) 944-9703
FX: (504) 945-6910

April 4, 2006

VIA E-MAIL ONLY

Mr. Gerald Meunier
Gainsburgh Benjamin David Meunier & Warshauer, LLC
2800 Entergy Center
1100 Poydras Street
New Orleans, LA  70163

   Re: MR-GO Litigation Group Report

Dear Mr. Meunier:

   In accordance with the Court's Order of March 24, 2006, I have enclosed the Mississippi River Gulf Outlet Litigation Group's Report on MR-GO Lawsuits.

         Yours very truly,

         JONATHAN B. ANDRY
         On Behalf of The MR-GO Litigation Group

JBA/glh
Encls.


EXHIBIT
D

<u>**REPORT ON MR-GO LAWSUITS BY THE MR-GO LITIGATION GROUP**</u>

**I. INTRODUCTION**

At the Court's request, the undersigned counsel are pleased to provide their views on the status and proposed management of litigation against the United States Army Corps of Engineers ("Army Corps") for Katrina-related flood damages caused by the negligent design, construction, maintenance, and operation of the Mississippi River-Gulf Outlet ("MR-GO"). While we have no pending MR-GO lawsuit, we wish to inform the Court that we will shortly be filing one that complies with all jurisdictional prerequisites and that falls within this Court's umbrella of Katrina cases. Undersigned counsel have already formed a MR-GO Litigation Group ("MR-GO Group") comprised of seasoned trial lawyers from Louisiana and elsewhere who are experienced in prosecuting complex, mass tort lawsuits in state and federal courts and who have successfully sued the United States in major matters. For the past six months, the MR-GO Group has conducted a comprehensive factual and legal investigation of the liability of the Army Corps for massive flooding caused by the MR-GO during and after Hurricane Katrina.

Within the next several weeks, counsel—acting on behalf of fewer than a dozen individuals and businesses, each of whom has complied with the mandatory jurisdictional requirement of submitting an administrative claim (Form SF-95) to the Army Corps and waiting six months—will file in the United States District Court for the Eastern District of Louisiana a complaint for negligence against the Army Corps pursuant to the Federal Tort Claims Act ("FTCA"). To our knowledge, this will be the only pending case involving the MR-GO that has satisfied the notice requirement pursuant to 28 U.S.C. Section 2675 (a). It is contemplated that this will be a bellwether lawsuit establishing the federal government's liability for the flooding of the Lower Ninth Ward, New Orleans

East, and St. Bernard Parish, and providing a judgment that can be relied upon by thousands of later claimants.  Counsel have decided for now to dispense with a class action in favor of seeking a prompt determination of the federal government's liability in the hope that this adverse ruling will serve as a catalyst for the swift and equitable resolution of all MR-GO damages claims in time for the money to benefit meaningfully the devastated victims of the Army Corps' negligence.

As detailed below, we recommend that our soon-to-be-filed MR-GO lawsuit be assigned to this Court because it relates to damages claims involving Hurricane Katrina and the flooding that resulted from the overtopping and failure of levees along the Industrial Canal, Inner Harbor Navigational Canal, and the MR-GO.  Unlike any other pending cases, however, our MR-GO case will involve only the Army Corps as a defendant, will not be designated as a class action, and will focus exclusively on the role of the MR-GO in causing the flooding of the Lower Ninth Ward, New Orleans East, and St. Bernard Parish.  We also recommend that the MR-GO litigation be fast-tracked for expedited but coordinated discovery and an early trial to the Court because, although the MR-GO case is intertwined with the levee and insurance cases, the issues of liability and damages in the MR-GO case are comparatively straightforward.  Moreover, there is only one defendant, the MR-GO plaintiffs will need only limited, targeted fact and expert discovery of the Army Corps to prove their case, and our MR-GO case does not involve multiple plaintiffs and numerous private and government defendants or such time-consuming matters as remand, class discovery and certification, statutory immunity under the Mississippi Flood Control Act of 1928, statutory and contractual indemnities, insurance coverage, and a host of other similar factors.

2

Finally, in terms of case management, we respectfully recommend that the already-organized MR-GO Group serve as the lead counsel for any MR-GO litigation and that our soon-to-be filed case be allowed to proceed on its own expedited discovery and trial schedule set by the Court upon a motion that counsel will be filing along with the complaint. Counsel support some form of an oversight or coordinating committee for all of the cases retained by the Court as discussed in detail in Section V below.

## II. THE TWO PENDING MR-GO CASES

Two cases pending in this district seek damages from the United States for the flooding caused by the MR-GO, and they are readily distinguishable from our soon-to-be- filed MR-GO lawsuit. Both cases—*Dahlgren v. The United States of America*, No. 06-0188, Sec. E, Mag. 4 and *Maureen O'Dwyer, et. al. v. The United States of America, et. al.*, No. 05-4181, Sec. K—were filed before the plaintiffs provided any notice to the Army Corps as required by the FTCA. There is a strong possibility that both cases will dismissed as soon as the United States' respective motions to dismiss are decided.

Filed on January 17, 2006, *Dahlgren* is before Judge Livaudais. In that case, a husband and wife from the town of Violet brought a putative class action against the United States for property damage and personal injuries as a result of the flooding caused by the MR-GO. Basing their claim on the FTCA, plaintiffs sought to represent a class comprised essentially of all residents, domiciliaries, and property owners of St. Bernard Parish who sustained damage as a result of the flooding along the MR-GO.

The United States filed a motion to dismiss, claiming that the *Dahlgren* plaintiffs failed to exhaust the administrative requirements before filing suit. Their complaint does not allege that the two plaintiffs provided the requisite notice, and the United States

3

produced affidavits indicating that it had not received no such notice.  The motion to
dismiss is scheduled to be heard by Judge Livaudais on April 12, 2006.  Counsel for the
*Dahlgren* plaintiffs has indicated that he will not oppose the dismissal.

The *O'Dwyer* case involves Mrs. O'Dwyer and numerous plaintiffs who filed suit
against the United States and numerous defendants on September 19, 2006.  In her
original complaint, Mrs. O'Dwyer alleged a class action.  Since that time, Mrs. O'Dwyer
has filed eleven amended complaints and has a pending motion for leave to file her
twelfth amended complaint.  In each amended complaint, she added numerous plaintiffs
and defendants (more than 300 at this point), and alleged that she and the additional
plaintiffs are representatives of additional putative classes.  Mrs. O'Dwyer's eleven
complaints, and proposed twelfth, are breathtakingly broad, alleging violations of the
U.S. Constitution and various federal statutes ranging from the National Environmental
Policy Act to the Resource Conservation and Recovery Act.

Procedurally, all of her complaints have one thing in common:  they are devoid of
any allegation that she, or any of the additional plaintiffs, complied with the FTCA notice
requirements.  On February 14, 2006, the United States filed a motion to dismiss
asserting that Mrs. O'Dwyer and all of the other plaintiffs failed to give the required
notice.  In her response, Mrs. O'Dwyer asked this Court to equitably waive those
requirements and argued that this Court has jurisdiction pursuant to federal statutes other
than the FTCA.  In its reply brief, the United States outlined how the other statutes are
inapplicable and reiterated why Mrs. O'Dwyer's action against the United States should
be dismissed for failure to file a notice prior before filing suit.  This Court currently has
the motion to dismiss under advisement.

*Dahlgren* likely will be dismissed in light of the non-opposition to the Government's motion to dismiss. Because the plaintiffs failed to fulfill the pre-litigation administrative requirements imposed by the FTCA, *O'Dwyer* may well be dismissed.[1]   In either event, our MR-GO case should be well into discovery before any *O'Dwyer* plaintiff has satisfied the presuit notice requirements.   In addition, because *O'Dwyer* involves numerous counts based upon widely divergent legal theories, it will face protracted motion, discovery, and class certification practice, including a potential appeal, before the threshold class certification issue is resolved.

Given the above, we submit that the pending MR-GO cases should not be allowed to impact the speedy determination of our MR-GO case.

### III.  THE LEVEE AND INSURANCE CASES

This Court also has before it a host of levee-related actions and the so-called "insurance cases," all of which relate to the flooding of New Orleans.  The "levee cases" involve numerous complaints against private and governmental entities relating primarily to the design, construction, and maintenance of the levees and retaining walls along London Canal and Seventeenth Street Canal.  The "insurance cases," recently transferred to this Court, involve interpretive issues (including "wind vs. water" issues) arising in connection with the same events giving rise to the "levee cases."  It would be sensible, then, for the Court to retain administrative and adjudicative control over these related cases.

---

[1] In *McNeil v. United States*, 508 US 106, 111-12 (1993), the Supreme Court held that failure to completely exhaust administrative remedies prior to filing an FTCA claim is a jurisdictional defect that cannot be cured by administrative exhaustion after suit is filed.  Even where no substantial progress has taken place in the litigation before the administrative remedies are exhausted, plaintiff must refile his lawsuit. *Id.*

The soon-to-be-filed MR-GO action also arises in this context, and we submit to the Court that it would be advisable to exercise control over it. None of these cases arose in a vacuum. All will involve some evidentiary overlap, at least with respect to the hurricane itself. Taken together, they form a "big picture" of underlying events, and it would make sense for this Court to administer and adjudicate these various actions with a birds-eye view of those events. At the same time, however, the soon-to-be filed MR-GO action should be managed by the Court as a discrete case unfettered by the numerous and complex evidentiary and procedural concerns that may inhere in the levee and insurance cases.

First and foremost, there will be no allegation in our MR-GO case that any levee or retaining wall was negligently designed, constructed, or maintained. The alleged negligence pertains exclusively to the design, construction, and maintenance of the MR-GO itself. It will involve a handful of representative plaintiffs and a single defendant—the United States. It will be a streamlined one-count, non-class action. It will involve no questions of insurance coverage or interpretation. While the Government obviously cannot be forbidden to claim immunity under the Mississippi Flood Control Act of 1928, we submit that the matter will be relatively straightforward because the issue of such immunity with respect to the MR-GO already has been decided (against the government) in an earlier Fifth Circuit case.[2]

---

[2] In FTCA litigation arising out of Hurricane Betsy, the Fifth Circuit definitively held that the Army Corps is not immune from suit for damages arising out of the negligent design, construction, operation, and maintenance of the MR-GO. *See Graci v. United States*, 456 F.2d 20, 23 (5th Cir. 1971). Agreeing with the District Court that the purpose of the MR-GO was clearly navigation and not flood control, the Fifth Circuit expressly held that "the immunity clause of Section 702c did not bar a claim against the  under the FTCA for floodwater damage caused by the negligent and wrongful acts of its employees that were unconnected with any flood control project." *Id.*

We anticipate motions directed to discretionary function immunity—such as the Court will face in the levee cases—but suggest disposition of those motions will turn on facts and arguments relating to the waterway, not to the levees.  More generally speaking, the MR-GO case is one aspect of the "big picture" this Court will draw from all the Katrina-related cases, although it involves distinct harms resulting from a discrete cause.

In short, there are inherent efficiencies in having a single Court administer and adjudicate the MR-GO case alongside the levee and insurance cases while also recognizing that the MR-GO case is procedurally and factually distinct, warranting separate fast-track treatment within that group.

## IV. THE MR-GO LAWYER GROUP

The lawyers from the nine law firms who have formed the MR-GO Group are among the most experienced trial lawyers in Louisiana and the nation.[3]  The MR-GO Group lawyers already have organized themselves and have pledged to devote whatever resources are necessary in order to secure speedy economic justice for Katrina victims harmed by the Army Corps' negligence.  We are veterans of many mass tort and complex litigations, including catastrophic disasters (hurricanes, explosions, floods, tornados), asbestos, tobacco, Phen-Fen, Rezulin, breast implant, Dalkon Shield, toxic torts, groundwater pollution, insurance bad faith, Superfund, and others.  Several members have successfully sued the United States for negligence under the FTCA and for cost recovery under CERCLA.  In numerous MDLs and class actions, we have served as lead and liaison counsel, members of the plaintiffs' or defendants' executive committees, class counsel, and lead trial counsel.  In addition, members of our group live in the

---

[3] Brief biographies of the founding members of the MR-GO Group are attached as Attachment 1.

flooded areas, witnessed the devastating environmental changes caused by the MR-GO, and were involved with the precedent-setting MR-GO case arising out of Hurricane Betsy (*Graci v. United States*).

The MR-GO Group already has devoted six months of considerable time and money to investigating the causes of the Katrina flooding and the legal basis for holding the Army Corps accountable.[4]  That six-month investigation recently concluded, and a master complaint against the Army Corps is now being prepared for filing in the near future.  In addition, we are drafting a motion for expediting the case and setting an early trial, and we are drafting our request for production of documents, interrogatories, and requests for admission.  We anticipate that this advance work is necessitated by the paramount need to obtain a definitive judgment of liability as soon as possible against the Army Corps and to secure just compensation for the hundreds of thousands victims of its negligence.[5]  We believe our advance effort, together with the management skills of this

---

[4] Among other things, we have collected and reviewed all publicly-available information about the origins of the MR-GO, its legislative history, and its design, construction, operation, and maintenance.  We have reviewed tens of thousands of pages of Army Corps documents relating to New Orleans levee design and construction as well as the Army Corps' long-held knowledge of the serious threat of massive flooding and resulting levee failures and overtopping that the MR-GO posed to Greater New Orleans in the event of a hurricane like Katrina.  In addition to interviewing eyewitnesses, we have reviewed the reports of the scientific teams investigating the causes of Katrina, interviewed engineers and environmental experts familiar with the levee breaches and the cataclysmic loss of wetlands that protect New Orleans from wind-driven storm surges, and analyzed hundreds of newspaper, magazine, and other media reports about the levee failures and the flooding of New Orleans.  Furthermore, we have analyzed the procedural and substantive legal issues likely to arise in an FTCA action against the Army Corps.  All of this research was compiled in a 150-page internal report for the MR-GO Group in anticipation of filing a lawsuit against the federal government.

[5] The Court undoubtedly is aware of the human suffering, property damage, and loss of government services in the wake of the most destructive natural disaster in American history.  With 80% of the City of New Orleans and all of St. Bernard Parish flooded, the region lies in ruins.  More than 1,300 people lost their lives to Katrina, 3,000 are missing, 770,000 residents were displaced, and 300,000 homes were destroyed or made uninhabitable.  This metropolis of 470,000 before Hurricane Katrina now is home to barely 100,000 people.  Nearby St. Bernard Parish has been similarly devastated and remains a wasteland—only four out of 6,000 homes survived the raging floodwaters, and only 7,000 residents—out of 70,000 before the storm—remain, but are forced to live in temporary housing.  With its tax base destroyed, public utilities not restored, professionals and business people fleeing the city, hospitals and schools closed, police and fire facilities compromised, sewage and water systems inoperable, New Orleans teeters on the brink of bankruptcy.  The preliminary estimate of property damages and business losses runs into the

Court, will result in an efficient, streamlined case devoid of many of the delays and
diversions typically associated with such a significant case. One decision already made
by counsel—not to proceed for now as a class action—certainly will eliminate protracted
class discovery, motion practice, and a possible interlocutory appeal.[6]

## V.  CASE MANAGEMENT

The MR-GO litigation—with a limited number of plaintiffs suing one defendant on a
single count of negligence in a non-class action—raises discrete, manageable issues
unrelated to the myriad of procedural and substantive issues involved with the levee and
insurance cases. As noted above, the MR-GO case will be untouched by the thorny
factual and legal issues surrounding government immunity for the design and
construction of the levees, and there will be no issues of remand, insurance policy
interpretation, failure to advise insureds of the need for (and availability of) flood
insurance, causation (wind vs. water), improper adjustment of claims, and class
certification that will be addressed in the insurance cases. It also is noted that the levee
and insurance cases are sure to present their own set of discrete and unique issues.

Thus, to the extent that the underlying fact of Hurricane Katrina and/or breaches of
the Industrial Canal, or other overlapping factual and legal issues, may be common
subjects between the other suits and the MR-GO litigation, the Court should require

---

hundreds of billions of dollars. The toll in human misery is incalculable. *See* U.S. House of
Representatives, A Failure of Initiative, Final Report of the Select Bipartisan Committee to Investigate the
Preparation and Response to Hurricane Katrina 1-9 (2006). It is this unprecedented disaster—and the
failure of the United States to acknowledge its share of responsibility and to appropriate the money
necessary to rebuild Greater New Orleans and compensate victims—that necessitates the soonest possible
trial of the MR-GO case.

[6] Counsel anticipate that thousands of individuals and businesses—as well as several governmental
entities—will file the required Form SF-95 within two years of Hurricane Katrina. As a matter of law, class
actions in FTCA actions are available. *See. e.g.. Powers v. United States*, 996 F.2d 1121, 1123 (11th Cir.
1993). The prevailing view is that each member must have satisfied the jurisdictional requirement of filing
a presuit claim. *Hoskins v. United States*, 2001 WL 175237, at *3 (E.D. La. Feb. 20, 2001).

coordinated discovery. Otherwise, the "just, speedy, and inexpensive determination" of the MR-GO case would best be achieved by independent, fast-track treatment in recognition of its unique character.

It should also be noted that the MR-GO case will be tried to the Court sitting without a jury. 28 U.S.C. § 2402; *see also Carlson v. Green*, 446 U.S. 14, 22 (1980) ["[A] plaintiff cannot opt for a jury trial in an FTCA action . . . .").

All these substantial procedural and substantive differences among the three categories of cases suggest that they should be organized under the Court's umbrella, but managed separately where required. While coordination and cooperation are essential to effective case management, it would appear to make the most sense to allow the soon-to-be-filed MR-GO case—which will entail limited discovery and surely will be the first case ready for trial—to proceed along a coordinated but independent path. Thus, the MR-GO lawsuit should have its own separate governance apparatus. Indeed, the lawyers bringing the first MR-GO suit satisfying the jurisdictional six-month claims process already have organized and established an internal management protocol. **We respectfully recommend that the Court designate this existing committee (or a few of its members) as the lead counsel in prosecuting the MR-GO litigation. If the Court establishes some form of oversight or coordinating committee, we request that the MR-GO Group be afforded meaningful representation.**

Commenting specifically on the Court's recent Minute Entry relating to "Committee Structure," we suggest that the five-person Master Committee or Oversight Committee consist of attorney representatives from Levee, Insurance and MR-GO cases in order to achieve true communication, exchange of information, and coordination among the various groups of specific interest. The Master Committee should recommend to the

Court the appointment of one or more Liaison Counsel who may or may not be selected from the membership of the Master Committee.

The Master Committee should be charged with organizing and reporting to the Court its recommendation of management of the various cases under the Court's umbrella. Specific committees for Insurance Litigation and MR-GO Litigation should also be established. The duties and responsibilities of the Master Committee and the Specific Committees should also be outlined for the Court's review.

We appreciate the opportunity to provide the Court with our views about the management of the Hurricane Katrina litigation. We look forward to working with the Court and counsel in achieving an expeditious resolution of the MR-GO litigation.

Dated: April 4, 2006              Respectfully submitted,

Andry Law Firm
Jonathan B. Andry
610 Baronne Street
New Orleans, Louisiana 70133

Bruno & Bruno
Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70133

Domengeaux Wright Roy & Edwards LLC
Bob F. Wright & James P. Roy
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502-3668

Fayard & Honeycutt
Calvin C. Fayard, Jr. & Blayne Honeycutt
519 Florida Avenue, S.W.
Denham Springs, Louisiana 70726

Girardi and Keese
Thomas V. Girardi
1126 Wilshire Boulevard
Los Angeles, California 90017

Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
Clay Mitchell & Matt Schultz
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996

McKernan Law Firm
Joseph Jerry McKernan & John Smith
8710 Jefferson Highway
Baton Rouge, Louisiana  70809

O'Donnell Shaeffer Mortimer LLP
Pierce O'Donnell & Nina Froeschle
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Rainier Gayle & Elliot LLC
Drew Rainier & Frank Elliot
1419 Ryan Street
P.O. Box 1890
Lake Charles, Louisiana 70602

By: _____
       JONATHAN B. ANDRY

## MR-GO LITIGATION GROUP MEMBER FIRMS

**ANDRY LAW FIRM, LLC, New Orleans, LA**: The Andry Law Firm is a second-generation family practice located in New Orleans, Louisiana, (the first generation of which handled the *Graci* action concerning MR-GO in the aftermath of Hurricane Betsy). The firm specializes in complex and mass tort litigation. It is represented by Jonathan B. Andry, who has extensive experience in mass tort litigation, including environmental mass tort claims.

**BRUNO & BRUNO, New Orleans, LA**: Bruno & Bruno is a New Orleans firm well-known for its handling of class actions and mass tort litigation. It is represented by managing partner Joseph Bruno, who has more than 26 years of experience in complex litigation, having participated as co-lead counsel in three of the largest class actions tried to judgment in the state of Louisiana: In re New Orleans Train Car Leakage Fire; Scott vs American Tobacco, et al; and In re Chemical Release at Bogalusa.

**DOMENGEAUX, WRIGHT, ROY & EDWARDS, LLC, Lafayette, LA**: Domengeaux, Wright, Roy, & Edwards has specialized in all manner of injury claims for nearly 50 years, including extensive experience with mass tort and class actions. The firm is represented by former LTLA and Louisiana Bar President Bob Wright and by former LTLA President Jim Roy. Both are listed in the "Best Lawyers in America" in the sections of Personal Injury Litigation and Maritime Law, and both are Fellows in the International Academy of Trial Lawyers.

**FAYARD & HONEYCUTT, APC, Denham Springs, LA**: Fayard & Honeycutt is known nationally for its ability to resolve extremely complex litigation involving multiple parties and a myriad of legal issues, and it specializes in protecting the legal rights of victims in class action and mass tort litigation as well as individual personal injury cases. The firm is represented by founding partners Calvin Fayard and Blayne Honeycutt.

**GIRARDI & KEESE, Los Angeles, CA**: Girardi & Keese has more than 40 years experience in the field of complex commercial and mass tort litigation, including significant experience in toxic tort and product liability cases. The firm has made landmark recoveries against the largest companies in the world, including Pacific Gas & Electric, Unocal, Exxon, Shell, Dupont, Ashland, and Farmers Insurance. Thomas Girardi and Robert Keese have received numerous honors, including: Los Angeles Trial Lawyers Trial Lawyer of the Year award in 1995-1996, the Lawyers for Public Justice Trial Lawyer of the Year award in 1996, the Cal-ABOTA Trial Lawyer of the Year award in 1996, Los Angeles Business Journals Top 50 Trial Attorneys of 1999, and California Law Business Top 100 Most Influential Attorneys in California. Mr. Girardi is currently President of the International Academy of Trial Lawyers, has served as National President of the American Board of Trial Advocates, and is listed in "First Lawyers of America."

**Attachment 1**

**LEVIN, PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, P.A., Pensacola, FL:** Levin Papantonio is nationally recognized as a leader in mass tort and complex environmental litigation and has handled hundreds of Hurricane Ivan-related cases. The firm is represented by former Circuit Court Judge and veteran trial lawyer Clay Mitchell and associate Matt Schultz, a *summa cum laude* graduate of FSU Law School and former federal law clerk.

**McKERNAN LAW FIRM, Baton Rouge, LA:** The McKernan Law Firm is widely recognized as a leading personal injury law firm with involvement in numerous national mass tort and class actions. The firm is represented by senior partner Jerry McKernan, a past President of LTLA, author of the McKernan Personal Injury Reporter, and lecturer for the National Board of Trial Advocacy and partner John Smith, 2005-2006 LTLA Toxic Tort chairperson.

**O'DONNELL, SHAEFFER, MORTIMER, LLP, Los Angeles, CA:** O'Donnell Shaeffer Mortimer is a nationally recognized litigation firm specializing in complex commercial and tort litigation, including environmental tort cases, pharmaceutical product liability cases, and one of the largest class action antitrust practices in the country. The firm is represented by preeminent trial attorney, Pierce O'Donnell, recently recognized by the National Law Journal as one of the "100 Most Influential Lawyers in America." Mr. O'Donnell clerked for Supreme Court Justice Byron R. White and Ninth Circuit Judge Shirley M. Hufstedler and is a Fellow for the American College of Trial Lawyers and the American Board of Trial Advocates.

**RANIER, GAYLE, & ELLIOT, LLC, Lake Charles, LA:** Ranier, Gayle & Elliot, a premier plaintiffs' firm in Louisiana, is a noted leader in mass tort and class action litigation. The firm is represented by partners Drew Ranier and Frank Elliot, both of whom practice extensively in complex litigation, including mass torts and insurance matters.

**Attachment 1**

**LAW OFFICES OF
ASHTON R. O'DWYER, JR.
ONE CANAL PLACE
365 CANAL STREET
SUITE 2670
NEW ORLEANS, LA 70130**
TELEPHONE: (504) 561-6561
FACSIMILE: (504) 561-6560

April 4, 2006

**VIA HAND DELIVERY AND
FACSIMILE**
Honorable Judge Stanwood R. Duval, Jr.
United States District Court
Eastern District of Louisiana
U.S. Courthouse
500 Poydras Street
New Orleans, LA 70130

Magistrate Joseph C. Wilkinson, Jr.
United States District Court
Eastern District of Louisiana
Division "5"
500 Poydras Street
New Orleans, LA 70130

> Re:   Maureen O'Dwyer, et al.
>       vs. The United States of America, et al.
>       No. 05-4181 "K"(3)

Dear Judge Duval and Magistrate Wilkinson:

Please permit me to throw a skunk into the jury box.

Following the Status Conference of March 24th, I tried to reach out to my brothers and sisters at the plaintiffs' bar through Mr. Meunier.  I enclose my communications with Mr. Meunier on the following dates:

    1.    Facsimile of Monday, March 27th;
    2.    Facsimile of Wednesday, March 29th;[1]  and

---

[1]   Since transmitting that missive, I learned of another investigative report in the public domain, which I believe should be made available to the Court, namely the Report of The Center for Progressive Reform, entitled:  "An Unnatural Disaster:  The Aftermath of Hurricane KATRINA", which is available at www.progressivereform.org/Unnatural_Disaster_512.pdf.  See numbered paragraph "9", pp. 10-11, of my March 29th facsimile to Mr. Meunier.

April 4, 2006
Page 2

      3.      E-mail of Monday, April 3rd.

      I will not reiterate what I already have put in writing.

      I respectfully submit that the Court has unwittingly created a "distraction" from very important substantive and procedural issues which simply are not getting proper attention, namely the appointment of "interim or permanent steering committees".   I believe it is entirely premature to be talking about steering committees until we address more fundamental issues, like who has sued whom, who wants to sue whom and who doesn't, and what are the issues in this litigation.

      I am only one voice;   however, for now I want to do my own talking, and thinking.

Respectfully,

Ashton R. O'Dwyer, Jr.

AROD/vtb
cc:      All counsel of record (W/Encls.) (plaintiffs and defendants)

E-Mail: AROD@odwyerlaw.com

March 27, 2006

**VIA FACSIMILE**
**504-528-9973**

Gerald E. Meunier, Esq.
Gainsburgh, Benjamin
1100 Poydras Street
Suite 2800
New Orleans, LA 70163-2800

       Re:    Maureen O'Dwyer, et al. vs.
              The United States of America, et al.
              No. 05-4181 "K" (3)
              U.S.D.C., Eastern District of Louisiana

Dear Gerry:

    I spoke with your secretary, Denise, this morning, to give her my contact details. Apparently, she has not heard from anyone else from the plaintiffs' side as of yet.

    I want to alert you to some serious issues, which I elected not to bring up in front of Judge Duval, Magistrate Wilkinson or defense counsel. There appears to be a profound difference of opinion about whether the "target" defendant should be the United States of America; and there appears to be no unanimity of opinion about who should be co-defendants. The City and the Mayor are prime examples. I believe that "Body Bags" should be run into personal bankruptcy, and put in jail; some other plaintiff-lawyers want him and the City as clients.

    I am of the view that we have to "hit" the United States of America; otherwise, there is not going to be enough money to adequately compensate all persons harmed by the failures of government, at all levels. This topic has to be thrown onto the table for discussion because any "plan" to be submitted to Judge Duval by April 4th has got to revolve around who is being pursued for what money damages.

March 27, 2006
Page 2


      Although I am no longer with Lemle & Kelleher, my offices here in Canal Place have a very large conference room.   The only time I am not available this week is Thursday afternoon.  I intend to take "point" for this meeting which I would like you to schedule.

Yours very truly,

Ashton R. O'Dwyer, Jr.

AROD/vtb
cc:    Joseph M. Bruno, Esq.

Gerry:
P.S.  As soon as you and Denise obtain the contact details of counsel for other plaintiffs, please share them with me.

**AROD**

LAW OFFICES OF
ASHTON R. O'DWYER, JR.
ONE CANAL PLACE
365 CANAL STREET
SUITE 2670
NEW ORLEANS, LA 70130
Telephone (504) 561-6561
Facsimile (504) 561-6560

**E-Mail:  AROD@odwyerlaw.com**

March 29, 2006

**VIA FACSIMILE**
**504-528-9973**

Gerald E. Meunier, Esq.
Gainsburgh, Benjamin
1100 Poydras Street
Suite 2800
New Orleans, LA 70163-2800

      Re:    Maureen O'Dwyer, et al. vs.
            The United States of America, et al.
            No. 05-4181 "K" (3)
            U.S.D.C., Eastern District of Louisiana

Dear Jerry:

      The following are my thoughts for your consideration in advance of your meeting with Ralph Hubbard tomorrow.  I would still like the opportunity to discuss these topics, and other ideas, with plaintiffs' counsel in KATRINA litigation in advance of your submission of a written report to Judge Duval and Magistrate Wilkinson on April 4th.

      1)      My brightest idea for "out-of-the-box-thinking" is for the Court to take the bull by the horns and to fast-track class certification(s), and to schedule trials on the issue of damages, as soon as possible for representative groups of claimants.  With the proper "profiles" for plaintiffs established, and damage awards in various ranges (like

March 29, 2006
Page 2

"bracketing" a target with artillery rounds, before ordering "fire-for-effect")determined,

this idea might (with emphasis on the "might") facilitate settlement of claims.

The broad categories of claimants which I have identified in my litigation, C.A.

No. 05-4181, are:

Plaintiffs are representative of the following classes of people, *inter alia*:

A.    Survivors of human beings who died as a result of government's
      intentional and negligent malfeasance, misfeasance and non-feasance prior
      to and after Hurricane KATRINA.

B.    Citizens and/or residents of the Parish of Orleans, State of Louisiana, who
      suffered bodily injury, mental suffering and emotional distress as a result
      of government's intentional and negligent malfeasance, misfeasance and
      non-feasance prior to and after Hurricane KATRINA.

C.    Citizens and/or residents of the Parish of Orleans, State of Louisiana, who
      suffered loss of or damage to property as a result of government's
      intentional and negligent malfeasance, misfeasance and non-feasance,
      whether by flood, fire or governmental sanctioning of urban terrorism.
      See *infra*.

D.    Citizens and/or residents of the Parish of Orleans, State of Louisiana, and
      their survivors, who suffered death, bodily injury, mental suffering, and
      emotional distress as a result of government's *de facto* sanctioning of
      urban terrorism which commenced even before Hurricane KATRINA had

March 29, 2006
Page 3

        abated, and continued, virtually unchecked, until the arrival of the United

States Military in the City of New Orleans, long after KATRINA had

abated.

E.      Citizens and/or residents of the Parish of Orleans, State of Louisiana, who

sustained mental suffering and emotional distress as a result of

government's *ultra vires* acts such as claimed "mandatory evacuation due

to exigent circumstances", which is not a legal concept sanctioned by the

Constitution of the United States of America, and deprivation of food and

water to hungry and thirsty so-called "hold-outs", who remained in the

City because the U.S. Constitution gives them the right to bear arms and

protect their property at their own risk, and who were entirely self-

sufficient, did not increase government's burden during admittedly trying

times, and performed services for the community which government

proved incompetent to perform.

F.      Citizens and/or residents of the Parish of Orleans, State of Louisiana, who

suffered environmental damages akin to contamination of natural

resources under the federal and state legislation which make provision for

Natural Resource Damage Assessments and damages recoverable under

the Oil Pollution Act of 1990, the Louisiana Oil Spill Prevention and

Recovery Act and CERCLA, among others.

G.     The same categories of persons, firms and corporations identified in

Article II(A) through (F), <u>supra</u>, but who are citizens and/or residents of

the Parish of Jefferson, State of Louisiana, and who suffered loss and/or

March 29, 2006
Page 4

        damage in the Parish of Jefferson, State of Louisiana, or experienced the

threat of loss or damage in Jefferson Parish.

H.    [1]The same categories of persons, firms and corporations identified in

Article II(A) through (G),[2] supra, but who suffered loss and/or damage, or

who experienced the threat of loss and/or damage, as a result of the

defective design, construction, maintenance and inspection of the

Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway, and the

Inner Harbor Navigation Canal a/k/a the "Industrial Canal", and their

environs and levees, by the United States Army Crops of Engineers and

other parties defendant named herein.  See infra.

    I submit that the foregoing are "reasonable" categories of claimants, and are

applicable to all KATRINA litigation, regardless of where each claimant lived in or near

the City, and regardless of race, color, creed or educational or financial background.

    2.    Either Judge Duval is going to have to accommodate us or we are going to

have to reach some accommodation with counsel for the United States of America, but

something has got to be done to allow our clients to "short-stop" the administrative

claims procedure arguably required by the provisions of the Federal Tort Claims Act and

other Federal legislation.  In a Second Supplemental Memorandum in Opposition to the

Government's Motion to Dismiss in C.A. No. 05-4181, I have argued as follows:

---

[1]  The Complaint, as amended, erroneously identified this paragraph as "G".
[2]  The Complaint, as amended, erroneously identified this letter as "F".

March 29, 2006
Page 5

## DISMISSAL OF PLAINTIFFS' CLAIMS AGAINST THE GOVERNMENT WOULD NOT FURTHER THE REASON(S) WHY CONGRESS PASSED ADMINISTRATIVE CLAIM PROCEDURES

The reasons for the administrative claims procedure in the Federal

Tort Claims Act are succinctly set forth in the "lead" case cited by the

Government in support of dismissal for lack of subject-matter jurisdiction,

namely McNeil v. United States, 508 U.S. 106, 113 S.Ct. 1980 (1993):[3]

> "Prior to 1966, FTCA claimants had the option of filing suit in federal court without first presenting their claims to the appropriate federal agency. Moreover, federal agencies had only limited authority to settle claims. (Citations omitted). Because of the vast majority of claims ultimately were settled before trial, the Department of Justice proposed that Congress amend the FTCA to require all claims to be presented to the appropriate agency for consideration and possible settlement before a Court action could be instituted. This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage. The agency would have the best information concerning the activity which gave rise to the claim. Since it is the one directly concerned, it can be expected that the claims which are found to be meritorious can be settled more quickly without the need for filing suit and possible expensive in time-consuming litigation. (Citations omitted). The Senate Judicial Committee further noted that "the improvements contemplated by [the 1966 amendments] would not only benefit private litigants, but would also be beneficial to the Courts, the agencies, and the Department of Justice itself." (Citations omitted). McNeil, supra, Fn. 7.

---

[3]   Incidentally, the plaintiff in McNeil was a federal prisoner, who was an inmate at a federal penitentiary. Does the Government really equate plaintiffs in this action with a convicted felon?

March 29, 2006
Page 6

The McNeil Court went on to explain that the administrative claims procedure would "reduce congestion in the Courts", because "every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions". 113 S.Ct. at p. 1984. It is respectfully submitted that if any parties have been "burdened" in KATRINA litigation, it is the plaintiffs (and their counsel) who have been burdened by multiple motions, memoranda, supplemental memoranda, reply memoranda, and the like, filed by the Government, not only in this action, but in Civil Action Nos. 05-4237 and 05-4419,[4] as well.   In other words, if the Department of Justice has felt any increased "burden" because of this case, then the DOJ's "burden" has been entirely self-inflicted.

The Fifth Circuit also has weighed in, emphasizing that the administrative claims procedure makes it possible for the Government to expedite the fair settlement of tort claims asserted against the United States.  Gregory v. Mitchell, 634 F.2d 499 (5th Cir. 1981).  If "the fair settlement of tort claims" is really of interest to the Government in this case, then why hasn't the Government "reached out" to plaintiffs with firm proposals to pay them just compensation for the damages which they have sustained as a result of Government ineptitude and malfeasance?

---

[4]   Incidentally, thus far the Government is 0 for 3 on motions against plaintiffs or oppositions to plaintiffs' motions in KATRINA litigation to date.

March 29, 2006
Page 7

Plaintiffs respectfully submit that requiring dismissal and re-filing under the circumstances of this case would further no real legal purpose whatsoever.

Although I have perfected administrative claims in writing for virtually 98% of the people I currently represent, I am attaching the Corps of Engineers' recent "response" to my administrative claims, together with my reply.  Note that I am urging Judge Duval to agree with me that the COE's letter should be treated as a denial of my clients' administrative claims.

Perhaps the most direct way to address this perplexing issue "head-on" is to request that the Government simply stipulate to the denial of each and every potential claim by each and every potential plaintiff in the Greater New Orleans Metropolitan Area.  Certainly, the Congressional intent for administrative claims as interpreted by the Supreme Court and the 5th Circuit, <u>supra</u>, will not be furthered by making every potential plaintiff and their attorneys jump through ridiculous and unnecessary hoops, having no justification if the true function of the Court is to administer justice.

Parenthetically, perhaps the biggest "lie" told in the case to date is the suggestion in a recent Court filing by the Government (Record Document No. 159 in C.A. No. 05-4181) that it is the Government's wish that "[this] litigation can proceed normally and expeditiously".  As the COE's letter re my clients' administrative claims makes clear, "normally and expeditiously" means dismissal to the Government!

March 29, 2006
Page 8

3.     Early identification of which plaintiffs' attorneys wish to pursue the United States of America as a defendant should be made.   To my knowledge, Mr. Bruno's claims against the United States in Greer (C.A. No. 05-5709) have been dismissed without prejudice.  If that is true, then the only suit (other than my own) in which the Government has been sued is Tauzin (C.A. No. 06-0020), but the Government has already filed a Motion to Dismiss.   A Motion to Dismiss my suit also is pending before Judge Duval, but has not yet been ruled upon.

4.     The various plaintiffs' attorneys involved have got to meet in order to decide, among ourselves, who the realistic "universe" of defendants should be.  I have stated publicly that I believe the Governor and the Mayor belong in jail.  Others either want to represent one or both, or don't want to sue them at all.  Mr. Bruno and others have joined a host of corporate defendants whom I have not sued.  I do not know the factual bases for liability on the part of many of those corporate defendants.  I don't see how we can go forward without a detailed discussion of who has sued whom, and why and for what, and whether we as a group should expand or streamline our original "hit lists".

5.     All viable defendants should be subjected to an Order issued by the Court, sua sponte, requiring the production of liability insurance policies by a certain date.  I propose that the Order to be issued should require each defendant to do the following:

March 29, 2006
Page 9

"Produce for inspection and copying certified copies of each and every policy of insurance, binder, cover note, terms of entry or other written evidence of insurance coverage available to (Insert name of defendant) and/or its parent, subsidiary, affiliated or related companies, purporting to evidence the existence of insurance available to the aforesaid parties for liability to third-parties as of August 28-29, 2005, and whether the same be primary, excess, bumbershoot or umbrella coverage, and regardless of limits or deductible.

6.   A "user-friendly" document repository needs to be established ASAP for each of the following "target" defendants:

a.   The United States of America, through the Corps of Engineers;

b.   The United States of America, through FEMA;

c.   The State of Louisiana, through the Office of the Governor;

d.   The State of Louisiana, through the Office of Homeland Security and Emergency Preparedness;

e.   The State of Louisiana, through the Department of Transportation and Development.

f.   The City of New Orleans;

g.   The Orleans Parish Levee Board;  and

h.   The New Orleans Sewerage & Water Board.

March 29, 2006
Page 10

I suggest that one place to start would be for Judge Duval to order the production

of whatever requests were made to each of the above-identified entities by Congressional

investigative committees, and each entity's response to those Congressional requests.

Once we have the opportunity to review the requests and the responses, and to identify,

and perhaps even depose, relevant witnesses, plaintiffs would later be allowed to

supplement with requests for more detailed information.

7.     The Court should order the entities identified in No. 6, supra, to produce

their emergency operations or response plans as they existed on August 28-29, 2005, and

how they exist now and in the future.

8.     We need a list from each defendant identifying each individual and/or

department who/which testified before a Congressional investigative committee, and

some means established in order to obtain transcripts of the sworn testimony, including

opening statements and questions asked by Members of Congress and the witnesses'

answers, under oath.

9.     The Court should be furnished with copies of the following reports:

1.     American Society of Civil Engineers Report of November 2/17,

2005, entitled:   "Preliminary Report on the Performance of the New

Orleans Levee Systems in Hurricane KATRINA on August 29, 2005".

2.     Interagency Performance Evaluation Task Force Reports of

December 5, 2005, January 10, 2006 and March 10, 2006.

3.    March   12,   2006   National   Science   Foundation-Sponsored

Independent Investigation Team critique of the IPET report of March 10,

2006;

4.    March 23, 2006 American Society of Civil Engineers critique of

the IPET report of March 10, 2006;

5.    Senate Homeland Security and Governmental Affairs Committee

Report(s);

6.    Report of the House Select Bipartisan Committee to Investigate the

Preparation for and Response to Hurricane KATRINA, entitled:   "A

Failure of Initiative";

7.    Report of the Government Accountability Office;  and

8.    White House Report entitled:  "The Federal Response to Hurricane

KATRINA:  Lessons Learned".

       If anyone knows of any other reports currently in the public domain, please

identify them for all concerned.   Additionally, as new reports are released, the Court

should be furnished copies as well, with the agreement of counsel.

       10.    To my knowledge, the only discovery issues addressed to date have been

addressed in C.A. No. 05-4181, in which there is a pending Motion for Review of

Magistrate Knowles' adverse ruling on Plaintiffs' Motion for a Protective Order, which

accused the United States Army Corps of Engineers, quite literally, of "cover-up".  The

purpose of the Motion for a Protective Order, which was filed initially on December 30,

March 29, 2006
Page 12

2005, was to get the COE to give us the opportunity to at least look at evidence, which is still being destroyed on an almost daily basis, before it is destroyed and lost forever. One issue which has not been addressed by any of the so-called "independent" investigations to date is the connection between steel sheetpiles and concrete monolith retaining wall panels (if any there be), as well as the connection between joints of concrete panels. See my March 27, 2006 letter to Ms. Finnegan and Ms. Finnegan's reply of March 29, 2006, attached. Subsequently, it has come to my attention that there are certain steel sheetpiles and concrete panels which are in danger of imminent destruction at the South breach of the London Avenue Canal site, and the Court should take this up as well as a matter of some urgency. Some excavation may be required in order to permit plaintiffs and their experts to make an adequate inspection of as-yet-undestroyed evidence at both the Vintage Drive and London Avenue South locations. In 35 years of practicing law I have never encountered such "arrogance of power" from a party litigant, as has been encountered from the United States of America. I predict serious "spoliation" issues in this case and possible imposition of sanctions, which may include asking Judge Duval to strip the Federal Government of any claimed immunity. I submitted a very detailed FOIA request to the Corps of Engineers on October 12, 2005, and we should ask Magistrate Wilkinson to assist us in having production of the items in that FOIA request made an Order of the Court.


11.    The Interagency Performance Evaluation Task Force actually has a "Perishable Data Team" whose stated purpose is "to gather vital perishable data before it was or is damaged or obscured by emergency repair operations". The IPET Perishable

March 29, 2006
Page 13

Data Team should be ordered, _sua sponte_, to produce the records of extrinsic evidence observed and gathered at each breach location which the PDT visited, and presumably documented with photographs or videotape since August 29, 2005.


     12.    I have retained and have been working with the following expert witnesses:

> Hector Pazos
> Ocean Oil Expert Witness, Inc.
> 3501 Holiday Drive, Suite 203-A
> New Orleans, LA 70114
>
> Robert Bartlett
> Bartlett Engineering
> 2817 Edenborn Avenue
> Metairie, LA 7002-7047
>
> John J. Gallagher
> Gallagher Marine Systems, Inc.
> 100 Century Parkway
> Suite 130
> Mount Laurel, NJ 08054
>
> Dr. Harold M. Ginzburg
> 3340 Severn Avenue
> Metairie, LA 70002

I would like these experts, some of whom already have generated "reams" of discoverable documents, including factual observations and opinions, to be part of whatever team that plaintiffs' attorneys, as a group, put together. Thus far, I have been sailing "solo" in terms of compensating these experts for their fees and expenses, which is having an adverse effect on my quality of life.

March 29, 2006
Page 14

13.    I made my views about the motions which the defendants will no doubt

want heard and argued, quickly, known to you yesterday.  For instance, on the issue of

immunity, whether we are talking about Federal immunity or State or Municipal

immunity, there are numerous factual issues to be determined before the Court can

intelligently take up the availability of immunity, including, inter alia, the role played by

the surge which came up the Mississippi River Gulf Outlet in the flooding of New

Orleans, the "character of the waters" that caused the damages complained of herein,

whether each of the structures or projects designed and constructed by the U.S. Army

Corps of Engineers were flood control projects, navigation projects, water resources

development projects, or something else, and how the money which paid for the

structures or projects was appropriated or drawn down on, and issues revolving around

the claim that the U.S. Army Corps of Engineers negligently designed, constructed,

inspected and maintained an entire navigable waterway system, in violation of Acts of

Congress, their own manuals and procedures, and State Law.  Factual issues involving

the claimed immunity of the Governor, the Mayor and others, under State law, and more

particularly under LSA:R.S. 9:2798.1 and/or LSA-R.S. 29:735, are to be found in record

document Nos. 73, 114, 148, 157 and 164 in C.A. No. 05-4181, and include issues of

Federal pre-emption (assuming admiralty and maritime law to be applicable against

certain defendants), the fact that the officials involved committed ultra-vires acts in direct

violation of State and Municipal laws, failed to have or follow their own plans, and are

guilty of criminal malfeasance and misconduct pursuant to LSA-R.S. 14:134, and/or

malicious, intentional, willful, outrageous, reckless, or flagrant misconduct, for which no

immunity is available.

March 29, 2006
Page 15

    14.    "Sooner" rather than "later", Judge Duval should familiarize himself with the issues in C.A. No. 05-4237 and 05-4419 or ask counsel to do so and (perhaps in consultation with Judge Berrigan) reach some conclusion about whether those actions should properly be transferred and consolidated with C.A. No. 05-4181.

    The foregoing are merely my "stream-of consciousness" thoughts on matters which should be addressed going forward, and I invite your comments and/or comments from other sources.  I also take this opportunity to renew my request for a meeting before submission of a written report to Judge Duval.

                           Yours very truly,

                           Ashton R. O'Dwyer, Jr.

AROD/vtb
cc:    Joseph M. Bruno, Esq.



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

REPLY TO
ATTENTION OF

March 22, 2006

<u>CERTIFIED MAIL — RETURN RECEIPT REQUESTED</u>

CEMVN-OC

Mr. Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, Louisiana 70130-1193

Dear Mr. O'Dwyer:

This letter responds to your January 10, January 20 and February 17, 2006, letters wherein you attempt to file claims under the Federal Tort Claims Act (FTCA) for several hundred individuals for various alleged damages resulting from Hurricane Katrina. None of the individuals named in your letters has submitted valid FTCA administrative tort claims for the following reasons:

1. Proof that you legally represent each individual listed as a claimant was not provided with your letters. 28 C.F.R. § 14.2(a). Further, for any individual asserting a claim for wrongful death or survival actions, appropriate testamentary letters granting that individual the authority to file a claim on behalf of the decedent or their heirs must be submitted with their claim. 28 C.F.R. § 14.3(c).

2. Listed individuals have failed to submit to this Agency adequate information that would allow us to thoroughly investigate their alleged claims. Specifically, your letters state that individuals are claiming for loss or damage to their real and/or personal property. However, no evidence was provided that: (a) identifies the address of the real property or location of the personal property that was damaged or destroyed; (b) demonstrates the lawful owner of the real or personal property; (c) identifies exactly what was damaged or destroyed; and (d) specifically explains how the Army caused the individuals' real and/or personal property losses or damages. Further, for the alleged death of an individual, you must state the circumstances of the death and how the Army was responsible for that individual's death. 28 C.F.R. § 14.4.

Your clients have not filed a valid FTCA administrative claim until they each provide the above requested information within two years from the date of the incident giving rise to their alleged claims. 28 U.S.C. § 2401(b).

Sincerely,

Randall C. Merchant
Assistant District Counsel



<div align="center">March 28, 2006</div>

**VIA FACSIMILE**
The United States Army Corps of Engineers
c/o Its Assistant District Counsel
Randall C, Merchant, Esq.
Foot of Prytania Street at the
 Mississippi River
New Orleans, LA 70118

> Re:   Maureen O'Dwyer, <u>et al</u>.
>         vs. The United States of America, <u>et al</u>.
>         No. 05-4181 "K"(5)

Dear Randy:

This acknowledges receipt of your certified letter of March 22nd, which was received today, 6 days after posting.  So much for the efficiency of the U.S. Postal Service.  Please don't take it personally, but my clients and I view your letter as insulting.  Does the U.S. Army Corps of Engineers really believe that I would risk criminal prosecution by representing to you that I have authority to speak on behalf of people who have not authorized me to do so, either directly or through a duly-authorized family representative?   Ask me anything you or the COE might want to know about any claimant, and I will respond to your request(s) for additional information in due course.  In the meantime, my clients and I are treating your letter as constituting formal denial of our claims by the Corps of Engineers, and we intend to so inform Judge Duval.

<div align="center">Yours very truly,</div>

> Ashton R. O'Dwyer, Jr., on his own behalf
> and as Agent for, Attorney-in-Fact and
> Legal Representative of the previously
> identified Individual Claimants

AROD/vtb
cc:   Ms. Tess Finnegan (via facsimile)

March 24, 2006

<u>**VIA FACSIMILE**</u>

Ms. Tess Finnegan
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Benjamin Franklin Station
Washington, DC 20044

<div align="center">

Re:     Maureen O'Dwyer, <u>et</u> <u>al</u>.
vs. The United States of America, <u>et</u> <u>al</u>.
No. 05-4181 "K"(2)
United States District Court
Eastern District of Louisiana

</div>

Dear Ms. Finnegan:

      There was a feature on our local television news within the past few days, which covered work proposed by the Corps of Engineers in connection with distressed retaining wall monolith panels along the canal separating Jefferson Parish from St. Charles Parish. I believe the location is known as "Vintage Drive" in Kenner, Louisiana.

      Notwithstanding my Motion for a Protective Order, and the appeal of Magistrate Knowles' ruling on my motion, which has not yet been ruled upon by Judge Duval, I have received no additional invitation from any agency of the United States of America to witness evidence at any site where your client continues to destroy evidence on an almost daily basis, other than the one invitation to visit the 17th Street Canal breach site, which precipitated my Motion for a Protective Order.

      None of the so-called "independent" investigations which are underway by various groups, all of which (with the exception of "Team Louisiana") can trace their funds to the Department of Defense or the Corps of Engineers, has focused on the "connection" (if any there be) between sheetpiles and concrete monolith panels or the "joints" between monolith panels which, in many cases, consisted of nothing more

March 24, 2006
Page 2

"substantial" than a flimsy concrete lip, in which was inserted an even more flimsy polyvinylchloride water stop.

I am treating what may happen soon at Vintage Drive in Kenner as a discovery matter, which may require expedited action. Please give me and my experts adequate notice to inspect the connection between the sheetpiles and concrete monolith panels and the joints between monolith panels before this evidence is destroyed in connection with the impending work contemplated by the Corps of Engineers at the referenced location.

Yours very truly,

Ashton R. O'Dwyer, Jr.

AROD/vtb
cc:     Randall C. Merchant, Esq.
        All counsel of record



**U.S. Department of Justice**

Civil Division, Torts Branch
Federal Tort Claims Act Staff

---

*Catherine J. Finnegan*
*Trial Attorney*

PFF:TFinnegan
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

*P.O. Box 888, Benjamin Franklin Station*
*Washington, DC 20044*

*Tel.: (202) 616-4916*
*Fax: (202) 616-5200*

March 29, 2006

VIA ELECTRONIC AND FIRST CLASS MAIL

Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street, Suite 2670
New Orleans, LA 70130
arod@odwyerlaw.com

Re:   O'Dwyer, et al., v. United States of America, et. al., Civil Action No. 05-4181

Dear Mr. O'Dwyer:

I received your letter of March 24, 2006, inquiring as to whether you and your experts may "inspect the connection between the sheetpiles and concrete monolith panels and the joints between the monolith panels" at the Vintage Drive site in Kenner, LA. I am consulting with the Army Corps of Engineers and hope to have an answer for you shortly.

If you have any questions regarding the foregoing, please call me at (202) 616-4916.

Sincerely,

Tess Finnegan
Trial Attorney
Civil Division, Torts Branch

cc:   Randy Merchant, Army Corps of Engineers
      All counsel of record

## Ashton O'Dwyer

**From:**   Ashton O'Dwyer [arod@odwyerlaw.com]
**Sent:**   Monday, April 03, 2006 2:39 PM
**To:**   'GMeunier@Gainsben.com'
**Cc:**   'jbruno@brunobrunolaw.com'
**Subject:** O'Dwyer vs. USA

Dear Jerry:

Although I fully realize that we have to "start-somewhere", I am disappointed in the quality and in the content of the proposed "First Joint Report" which you and Mr. Hubbard plan to submit to Judge Duval tomorrow.

I reiterate what I set forth in my prior written communications with you, namely that before we can accomplish anything more mundane than the exchanging of contact details for the various lawyers involved, the plaintiffs' group has to meet in person and exchange ideas about who is suing (or wants to sue) whom.  The 10,000 pound gorilla in the room is the Federal Government and, like it or not, everyone else is a "two-bit" player. Until, I know what is on peoples' minds I feel like I am "playing bouree' in the dark".

Who else wants to target the USA?

Your proposed "First Joint Report" then demonstrates purely "provincial" thinking rather than "outside-the-box" thinking.  How are we to make real progress in this case when you virtually ignore my very first "bright" idea, namely early class certification and damages trials, which are not dependent upon "motion practice" by defendant-lawyers who are charging by the hour, by the word, or by pound of paper generated?  Additionally, since there seems to be a "fundamental disagreement" between the plaintiffs and defendants as to class certification issues, how can we move forward without Judge Duval taking command and exercising some case management discretion pursuant to Rule 16?

I don't know where you and Mr. Hubbard got the idea that class certification(s) would proceed on "separate tracks", or that proper "grouping" should consist of "levee design", "homeowners insurance" and "malfeasance".  You didn't hear those things from me, and since no one else has shared any ideas with me, even orally, I have no idea how those matters found their way into the proposed First Joint Report.

I dissent until I can think more about these matters and listen to others.

4/4/2006

As far as a Master Complaint is concerned, it is entirely too soon to discuss this very important subject. I drafted my own Complaint, as supplemented and amended, in this case. I have not authorized any "Plaintiffs' Steering Committee" to do my thinking, or my talking, for me and my clients. Until plaintiffs' counsel have settled on who the proper "target" defendants should be and what causes of action are to be asserted against them by proper categories of plaintiffs, I don't think we should be talking, either about Master Complaint(s) or about any Plaintiffs' Steering Committee.

In terms of Motion practice, it appears that defense-lawyer provincial thinking unduly influenced the proposed First Joint Report. I already have gone on record opining that some very "heady" factual issues exist with respect to claimed "statutory immunity" at all levels of Government. How did statutory immunity wind up as a matter which appears to be scheduled for disposition as a summary matter?

I strongly dissent.

I submit that the List of Investigators which you and Mr. Hubbard have compiled is misleading.

Lastly, I recently came across Record Document Nos. 19 and 20 in the Berthelot matter (C.A. No. 05-4182). Can you (or can others) explain those documents to me, please?

Yours very truly,


**Ashton R. O'Dwyer, Jr.**
Law Offices of Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
AROD@odwyerlaw.com


**Ashton R. O'Dwyer, Jr.**
Law Offices of Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
AROD@odwyerlaw.com


4/4/2006

# BARRASSO · USDIN · KUPPERMAN
## FREEMAN & SARVER, L.L.C.
### - C O U N S E L L O R S   A T   L A W -

**Judy Y. Barrasso**
Direct Dial: (504) 589-9720
Direct Fax: (504) 589-9920
E-Mail: jbarrasso@barrassousdin.com

Our Files:
14,270
14,271
14,272
14,280

April 4, 2006

**BY HAND**

The Honorable Stanwood R. Duval, Jr.
Judge, Eastern District of Louisiana
U.S. Courthouse - Section K
500 Poydras Street
New Orleans, Louisiana  70130

Magistrate Judge Joseph C. Wilkinson, Jr.
U.S. Courthouse – Division 2
500 Poydras Street
New Orleans, Louisiana  70130

Re:   *William R. Baird, et al. v. Encompass Insurance Co., et al.;*
*Diane W. Rogers v. Encompass Insurance Co., et al.;*
*Bruce Conlay v. Encompass Insurance Co., et al.;*
*Kelly A. Humphreys v. Encompass Insurance Co., et al.* and
*Gladys Chehardy, et al. v. Louisiana Insurance Commissioner,*
*J. Robert Wooley, et al.*

Dear Judge Duval and Magistrate Judge Wilkinson:

I enclose copies of Encompass Insurance Company's Report for April 6, 2006 Status Conference and a copy of Allstate Indemnity Company's Report for April 6, 2006 Status Conference.

Sincerely,

Judy Y. Barrasso

JYB/cb
Enclosures

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

GLADYS CHEHARDY, ET AL.          *    CIVIL ACTION NO.: 06-1672
                                 *
VERSUS                           *    JUDGE: STANWOOD R. DUVAL, JR.
                                 *
LOUISIANA INSURANCE COMMISSIONER, *   MAGISTRATE: JOSEPH C. WILKINSON, JR.
J. ROBERT WOOLEY, ET AL.         *
                                 *
* * * * * * * * * * * * * * * * * * * * * * * * * *    *

## REPORT OF ALLSTATE INDEMNITY COMPANY
## FOR APRIL 6, 2006 STATUS CONFERENCE

Allstate Indemnity Company ("Allstate") submits this Report to be considered at

the April 6, 2006 Status Conference.

This homeowner insurance coverage case has been swept up into the morass of

the numerous levee breach class action and individual cases, although it involves totally distinct

factual and legal issues. This unrelated homeowner insurance coverage case should be severed

and/or handled separately from the levee breach cases.

The *Chehardy* insurance coverage case does not involve the same legal or factual

issues inherent in the levee breach cases. Rather, *Chehardy* presents the legal questions of

whether various exclusions in the defendant insurers' homeowner policies exclude flood damage

suffered by the plaintiffs. Resolution of the complex legal and factual issues inherent in

determining the cause of the various levee breaches is not required to resolve the insurance

coverage questions at issue in *Chehardy*.  In fact, the *Chehardy* putative class includes residents

of Jefferson and St. Tammany Parishes whose flood damage obviously is totally unrelated to the

levee breach claims.   *Chehardy* does not belong and should not be handled under the levee

breach umbrella.

<div style="margin-left: 40%;">

Respectfully submitted,

Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
Susan M. Rogge, 28203
   Of
BARRASSO USDIN KUPPERMAN
     FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone:  (504) 589-9700

Attorneys for Allstate Indemnity
  Company

</div>

## C E R T I F I C A T E

I hereby certify that a copy of the foregoing Report for Allstate Indemnity

Company for the April 6, 2006 Status Conference has been served upon all counsel of record via

facsimile or electronic mail this 4th day of April, 2006.

- 2 -

59386

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WILLIAM R. BAIRD AND | * | CIVIL ACTION NO.: 06-0153 |
| BETTY K. BAIRD | * | |
| | * | |
| VERSUS | * | JUDGE: STANWOOD R. DUVAL, JR. |
| | * | |
| ENCOMPASS INSURANCE COMPANY | * | |
| AND THE ORLEANS LEVEE DISTRICT | * | MAGISTRATE: JOSEPH C. WILKINSON, JR. |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

## REPORT OF ENCOMPASS INSURANCE COMPANY
## FOR APRIL 6, 2006 STATUS CONFERENCE

Encompass Insurance Company ("Encompass") submits this Report to be considered at the April 6, 2006 Status Conference.

This homeowner insurance coverage case has been swept up into the morass of the numerous levee breach class action and individual cases, although it involves totally distinct factual and legal issues. This unrelated homeowner insurance coverage case should be severed and/or handled separately from the levee breach cases.

Joinder of this claim against Encompass with those against the Orleans Levee District ("OLD") is improper pursuant to Rule 20 of the Federal Rules of Civil Procedure. The claim against Encompass is brought by an individual policyholder seeking coverage under his

own policy for his Hurricane Katrina losses. The Petition asserting this claim does not allege any collusion or joint conduct against Encompass and the OLD. The Petition neither purports to state a claim for conspiracy nor provides any facts or allegations to form a basis for any type of joint liability. Nor does the Petition allege that the plaintiff's claims against Encompass arise out of the same transaction or occurrence or series of transactions or occurrences as the claims against OLD. Rather, Plaintiff's allegations against Encompass, consisting of an alleged failure to adjust and pay a claim under a homeowners' policy, are wholly distinct from and unrelated to his allegations against the OLD, consisting of alleged negligent maintenance of levees and storm walls. The claims against the two unrelated defendants involve two separate and distinct transactions -- one is a contract claim alleging liability for an insurer's actions in handling a claim and interpreting an insurance policy while the other claim is a tort claim alleging that the OLD negligently maintained the levees. Joinder is improper pursuant to Rule 20.

Severance also is required to prevent undue prejudice to Encompass. The claims against the OLD present complex issues which will include extensive discovery, documents, investigation, additional parties, numerous experts, and legal and factual issues which may take years to resolve and have no relevance whatsoever to plaintiff's insurance contract claims against Encompass. Further, as a result of joinder of the unrelated claims, Encompass will be subjected to extensive discovery and greatly increased trial time. And, given the variety of evidence and

- 2 -

59593

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DIANE W. ROGERS | * | |
| | * | CIVIL ACTION NO.: 06-0152 |
| Plaintiff | * | |
| VERSUS | * | |
| | * | JUDGE:  STANWOOD R. DUVAL, JR. |
| | * | |
| ENCOMPASS INSURANCE COMPANY | * | MAGISTRATE: JOSEPH C. WILKINSON, JR. |
| AND THE ORLEANS LEVEE DISTRICT | * | |
| | * | |
| Defendants | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

### REPORT OF ENCOMPASS INSURANCE COMPANY
### FOR APRIL 6, 2006 STATUS CONFERENCE

Encompass Insurance Company ("Encompass") submits this Report to be considered at the April 6, 2006 Status Conference.

This homeowner insurance coverage case has been swept up into the morass of the numerous levee breach class action and individual cases, although it involves totally distinct factual and legal issues.  This unrelated homeowner insurance coverage case should be severed and/or handled separately from the levee breach cases.

Joinder of this claim against Encompass with those against the Orleans Levee District ("OLD") is improper pursuant to Rule 20 of the Federal Rules of Civil Procedure.  The

59597

claim against Encompass is brought by an individual policyholder seeking coverage under his own policy for his Hurricane Katrina losses. The Petition asserting this claim does not allege any collusion or joint conduct against Encompass and the OLD. The Petition neither purports to state a claim for conspiracy nor provides any facts or allegations to form a basis for any type of joint liability. Nor does the Petition allege that the plaintiff's claims against Encompass arise out of the same transaction or occurrence or series of transactions or occurrences as the claims against OLD. Rather, Plaintiff's allegations against Encompass, consisting of an alleged failure to adjust and pay a claim under a homeowners' policy, are wholly distinct from and unrelated to his allegations against the OLD, consisting of alleged negligent maintenance of levees and storm walls. The claims against the two unrelated defendants involve two separate and distinct transactions – one is a contract claim alleging liability for an insurer's actions in handling a claim and interpreting an insurance policy while the other claim is a tort claim alleging that the OLD negligently maintained the levees. Joinder is improper pursuant to Rule 20.

Severance also is required to prevent undue prejudice to Encompass. The claims against the OLD present complex issues which will include extensive discovery, documents, investigation, additional parties, numerous experts, and legal and factual issues which may take years to resolve and have no relevance whatsoever to plaintiff's insurance contract claims against Encompass. Further, as a result of joinder of the unrelated claims, Encompass will be subjected to extensive discovery and greatly increased trial time. And, given the variety of evidence and

59597

the ensuing lengthening of the trial, the risk of juror confusion is great, causing prejudice to Encompass.  Accordingly, the Court should sever the claims against Encompass.

Respectfully submitted,

Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
Susan M. Rogge, 28203
    Of
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone:  (504) 589-9700

Attorneys for Encompass Insurance
  Company

# C E R T I F I C A T E

I hereby certify that a copy of the foregoing Report of Encompass Insurance Company for the April 6, 2006 Status Conference has been served upon all counsel of record via facsimile or electronic mail this 4th day of April, 2006.

- 3 -

59597

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRUCE CONLAY | * | |
| | * | CIVIL ACTION NO.: 06-151 |
| Plaintiff | * | |
| | * | |
| VERSUS | * | JUDGE: STANWOOD R. DUVAL, JR. |
| | * | |
| ENCOMPASS INSURANCE COMPANY | * | |
| AND THE ORLEANS LEVEE DISTRICT | * | MAGISTRATE: JOSEPH C. WILKINSON, JR. |
| | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT OF ENCOMPASS INSURANCE COMPANY
## FOR APRIL 6, 2006 STATUS CONFERENCE

Encompass Insurance Company ("Encompass") submits this Report to be considered at the April 6, 2006 Status Conference.

This homeowner insurance coverage case has been swept up into the morass of the numerous levee breach class action and individual cases, although it involves totally distinct factual and legal issues. This unrelated homeowner insurance coverage case should be severed and/or handled separately from the levee breach cases.

Joinder of this claim against Encompass with those against the Orleans Levee District ("OLD") is improper pursuant to Rule 20 of the Federal Rules of Civil Procedure. The

claim against Encompass is brought by an individual policyholder seeking coverage under his own policy for his Hurricane Katrina losses. The Petition asserting this claim does not allege any collusion or joint conduct against Encompass and the OLD. The Petition neither purports to state a claim for conspiracy nor provides any facts or allegations to form a basis for any type of joint liability. Nor does the Petition allege that the plaintiff's claims against Encompass arise out of the same transaction or occurrence or series of transactions or occurrences as the claims against OLD. Rather, Plaintiff's allegations against Encompass, consisting of an alleged failure to adjust and pay a claim under a homeowners' policy, are wholly distinct from and unrelated to his allegations against the OLD, consisting of alleged negligent maintenance of levees and storm walls. The claims against the two unrelated defendants involve two separate and distinct transactions – one is a contract claim alleging liability for an insurer's actions in handling a claim and interpreting an insurance policy while the other claim is a tort claim alleging that the OLD negligently maintained the levees. Joinder is improper pursuant to Rule 20.

Severance also is required to prevent undue prejudice to Encompass. The claims against the OLD present complex issues which will include extensive discovery, documents, investigation, additional parties, numerous experts, and legal and factual issues which may take years to resolve and have no relevance whatsoever to plaintiff's insurance contract claims against Encompass. Further, as a result of joinder of the unrelated claims, Encompass will be subjected to extensive discovery and greatly increased trial time. And, given the variety of evidence and

59595

the ensuing lengthening of the trial, the risk of juror confusion is great, causing prejudice to Encompass. Accordingly, the Court should sever the claims against Encompass.

Respectfully submitted,

Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
Susan M. Rogge, 28203
    Of
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 589-9700

Attorneys for Encompass Insurance
  Company

# C E R T I F I C A T E

I hereby certify that a copy of the foregoing Report of Encompass Insurance Company for the April 6, 2006 Status Conference has been served upon all counsel of record via facsimile or electronic mail this 4th day of April, 2006.

59595

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|   |   |   |
|---|---|---|
| KELLY A. HUMPHREYS | * | CIVIL ACTION NO.: 06-0169 |
| | * | |
| VERSUS | * | JUDGE: STANWOOD R. DUVAL, JR. |
| | * | |
| ENCOMPASS INSURANCE COMPANY | * | MAGISTRATE: JOSEPH C. WILKINSON, JR. |
| AND THE ORLEANS LEVEE DISTRICT | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT OF ENCOMPASS INSURANCE COMPANY
## FOR APRIL 6, 2006 STATUS CONFERENCE

Encompass Insurance Company ("Encompass") submits this Report to be considered at the April 6, 2006 Status Conference.

This homeowner insurance coverage case has been swept up into the morass of the numerous levee breach class action and individual cases, although it involves totally distinct factual and legal issues. This unrelated homeowner insurance coverage case should be severed and/or handled separately from the levee breach cases.

Joinder of this claim against Encompass with those against the Orleans Levee District ("OLD") is improper pursuant to Rule 20 of the Federal Rules of Civil Procedure. The claim against Encompass is brought by an individual policyholder seeking coverage under his own policy for his Hurricane Katrina losses. The Petition asserting this claim does not allege

any collusion or joint conduct against Encompass and the OLD.  The Petition neither purports to state a claim for conspiracy nor provides any facts or allegations to form a basis for any type of joint liability.  Nor does the Petition allege that the plaintiff's claims against Encompass arise out of the same transaction or occurrence or series of transactions or occurrences as the claims against OLD.  Rather, Plaintiff's allegations against Encompass, consisting of an alleged failure to adjust and pay a claim under a homeowners' policy, are wholly distinct from and unrelated to his allegations against the OLD, consisting of alleged negligent maintenance of levees and storm walls.   The claims against the two unrelated defendants involve two separate and distinct transactions – one is a contract claim alleging liability for an insurer's actions in handling a claim and interpreting an insurance policy while the other claim is a tort claim alleging that the OLD negligently maintained the levees.  Joinder is improper pursuant to Rule 20.

Severance also is required to prevent undue prejudice to Encompass.  The claims against the OLD present complex issues which will include extensive discovery, documents, investigation, additional parties, numerous experts, and legal and factual issues which may take years to resolve and have no relevance whatsoever to plaintiff's insurance contract claims against Encompass.  Further, as a result of joinder of the unrelated claims, Encompass will be subjected to extensive discovery and greatly increased trial time.  And, given the variety of evidence and

59598

the ensuing lengthening of the trial, the risk of juror confusion is great, causing prejudice to

Encompass.  Accordingly, the Court should sever the claims against Encompass.

<div style="text-align: right;">

Respectfully submitted,

_____
Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
Susan M. Rogge, 28203
        Of
BARRASSO USDIN KUPPERMAN
        FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone:  (504) 589-9700

Attorneys for Encompass Insurance
    Company

</div>

## C E R T I F I C A T E

I hereby certify that a copy of the foregoing Report of Encompass Insurance

Company for the April 6, 2006 Status Conference has been served upon all counsel of record via

facsimile or electronic mail this 4th day of April, 2006.

_____

- 3 -

59598

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| JARED VODANOVICH | * | NO. | 05-4191 |
| | * | | |
| VERSUS | * | | |
| | * | | |
| BOH BROS. CONSTRUCTION, ET AL. | * | | |
| | | | |
| ANN VODANOVICH | * | NO. | 05-5237 |
| | * | | |
| VERSUS | * | | |
| | * | | |
| BOH BROS. CONSTRUCTION, ET AL | * | | |
| | | | |
| BETH LEBLANC, ET AL | * | NO. | 05-6327 |
| | * | | |
| VERSUS | * | | |
| | * | | |
| BOH BROS. CONSTRUCTION, ET AL | * | | |

BRUNO MEMORANDUM REGARDING
JOINT REPORT IN THE KATRINA CASES

**MAY IT PLEASE THE COURT**: .

Undersigned counsel has for several months been contemplating the very issues raised by the Court at the Status Conference held on March 24, 2006. Indeed, counsel has convened meetings among plaintiffs' counsel and has discussed many of the issues with representatives of defense counsel. Considering those discussions, undersigned counsel has formulated the following proposed plan for the efficient management of these Katrina related cases.

This litigation involves three categories of claims included under a broad umbrella of damages arising from breaches in the levees in and around New Orleans which I have named as follows: (1) Corps Claims, (2) Design Construction and Maintenance Claims, and (3) Insurance Claims. The three areas have discrete categories of defendants. "The Corps Claims" include

only the United States Government, for the acts of the Army Corps of Engineers, as a defendant. "The Design, Construction and Maintenance Claims" include the engineers, contractors, and state agencies who designed, constructed, and maintained the levees/flood walls as defendants. In the "Insurance Claims" category, the defendants are the homeowners' insurance companies.  The claims that relate to the three categories of defendants are: (1) the fault/fraud, and/or concealment relative to the levee/flood wall breaches by the  US Army Corps of Engineers; (2) the fault of the contractors and state agencies who designed, constructed, and maintained the levees; and (3) the claims by homeowners against their insurers based upon the homeowner's assertions that water damages, as a result of levee/floodwall breaches, are covered by homeowner's insurance. Undersigned counsel believes this litigation should be divided into these three areas with at least three Master Complaint's filed—one for each category.

Further, the case can be divided into six geographic and zip code based zones.   The zones describe areas of the city and which of the Levee/floowall breaches caused damages therein.   They areas follows:

| Zone 1: | Zip Code 70124 | 17th Street Canal |
|---|---|---|
| Zone 2: | Zip Code 70126 and a small part of 70126 west of the Industrial Canal | London Ave. Canal |
| Zone 3: | Zip Code 70119 east of Esplanade Zip Code 70116 east of Esplanade Zip Code 70117 west of Industrial Canal | MR–GO |

| Zone 4 | Zip Code 70117 east of the Industrial Canal | MR–GO |
|---|---|---|
| Zone 5 | Zip Codes 70118, 70125, 70115, 70113, 70130<br>Zip Codes 70119 west of Esplanade<br>Zip Codes 70116 west of Esplanade<br>Metairie south of Metairie Rd. and east of Causeway | Primarily the 17th Street Canal |
| Zone 6 | Zip Codes 70126, 70127, 70128, and 70129 | MR–GO |

The fact that there are potentially discrete zones does not in any way suggest that there are not common issues of law and fact applicable to the geographic region encompassed by all six zones.

It is important, I believe to, at least, articulate the purposes, reasons, expectations and/or goals attendant to putting these three groups of cases under one umbrella.  An understanding of this issue is important to plaintiff counsel who might consider applying for selection to the "oversight" committee and to defense counsel who might have a mistaken impression that they are being sucked into litigation to which they are not a party.

My own view is that while these three groups or categories ought to proceed as those who filed them direct regarding issues of strategy or tactics including but not limited to master complaints, amendments to pleadings, or  determinations of appropriate parties, there will be issues sought to be resolved in one group or category of cases that affect another category of cases.  It is likely that discovery in one group or category will be of interest to other groups. There is substantial benefit in avoiding redundancy.  Furthermore overseeing the timing and/or

-3-

order by which these matters might be taken up, give all parties an opportunity to be aware of and take the benefit of the opportunity to participate in an issue that affects them.

The role of any oversight committee then would simply be to coordinate and organize the resolution of the various categories of issues to these articulated ends.

This group as a group should not be entitled to a fee. Rather, each member ought to be able to make claim for a common benefit contribution from the particular category of case that he or she has an interest.  This would eliminate the fear that anyone might naturally have that someone who has not filed or has no interest in a particular category of litigation might dictate strategy in that category of litigation.

**The US Army Corps of Engineers.**

Plaintiffs point out that any lawsuit against the Corps of Engineers must be preceded by an administrative claim (Form SF–95).  The filing of such a claim must be within two years of the event and a lawsuit may not be filed until the passage of six months from the denial of the administrative claim or six months after submitting the administrative claim if no response is made by the government.  Because of the legislatively mandated delay in pursuing these claims in court, counsel believes that these claims should be separate from levee breach cases brought against defendants other than the United States.  Plaintiffs had hoped that the number of potential claimants involved would persuade the United States to waive the requirement of completing the administrative process, however, it is now clear that no such waiver will be made, and as such renders ineffective our attempts to confer jurisdiction in this court without such formality.  Plaintiffs suggest that while it may appear that all levee breach claims against the United States could be filed (at the appropriate time) under the umbrella of a Master Complaint against the

-4-

Corps of Engineers, the extant jurisprudence mandates a distinction between damages caused by breaches of the levees/floodwalls on th 17th Street and London Avenue Canals and the breaches of the levees/floodwalls on the Inner Harbor Navigation Canal. The reason is that there has already been a determination by the United States Fifth Circuit Court of Appeals that the United States Army Corps of Engineers is *not immune* from suit for damages arising out of the negligent design, construction, and maintenance of the Mississippi River Gulf Outlet.[1] No such determination has yet been made with regard to the 17th Street Canal and/or the London Avenue Canal, and it is anticipated that the United States will vigorously argue that it is immune from liability for damages arising from the breaches in those levees/floodwalls.

Thus, the cases against the Army Corps of Engineers should be split with one Master Complaint encompassing the breaches in the levees/floodwalls of 17th Street and London Avenue Canals alleging fraudulent failure to disclose facts about known defects and the potential for failure of the levees/floodwalls, on a theory that the Corps enjoys no immunity from such claims; and another Master Complaint alleging negligent design, construction and maintenance of the Mississippi River Gulf Outlet.

### Contractors and State Agencies

Plaintiffs believe that most, if not all of the possible defendants in this category have been named in the lawsuits filed to date.

The litigation as to this group of defendants should proceed under a separate Master Complaint.

Plaintiffs propose that the Court waive the 90-day delay to move for class certification to

---

[1] See *Graci v United States of America,* 456 F.2d 20 (5th Cir. 1971)

allow the plaintiffs to confer and decide whether they wish to proceed as a class action or as a mass joinder. Plaintiff recognize the Court's concerns with regard to class certification involving all three ( 17th Street, London Avenue, Industrial) canals levee/flood wall breaches, and as such would like an opportunity to decide whether to proceed as a class action (perhaps with subclasses for the claimants in each canal levee/floodwall area) or as a mass joinder.

### Insurance Claims

This category of claims includes those claims made in the *Chehardy* case recently transferred to this Court for the Middle District.   The issue as to the role of the levee/floodwall breaches or failures is central to this claim.

### Recommendation for Proceeding

1. Recusal issues be resolved through the invitation of any such motion to be filed by a date certain;

2. The Court waive the 90-day deadline to move for class certification;

3. Resolution of the remand issue through the establishment of a deadline for filing;

4. The contractor/state agency defendants disclose any and all factual information relative to what contacts or involvement each of them had with the design, construction, and maintenance of any of the levees/flood walls involved in this litigation.

5. The United States of America disclose the names, addresses, and phone numbers of all persons who have filed a Katrina related form SF-95 or other presentment of a claim.

6. The homeowners insurers disclose the names, addresses, and phone numbers of

all persons whose claims have been denied as excluded perils

7.      The plaintiffs disclose the names, addresses, and phone numbers of all persons

who have signed on to make a claim in this litigation.

Upon completion of the above disclosures, plaintiffs propose that the defendants identify

all motions that they believe can be briefed and decided without any discovery.  If the plaintiffs

agree that no discovery is necessary to resolve these motions then the parties will either agree or

the court will set a hearing schedule to resolve these motions.

The defendants would next identify all motions that they believe can be briefed and

decided with limited discovery.  The parties will the agree or the court will impose a discovery

schedule and then the parties will either agree or the court will set a hearing schedule to resolve

these motions.

Respectfully submitted,
BRUNO & BRUNO

_____
Joseph M. Bruno (3604)
David S. Scalia  (21369)
855 Baronne Street
New Orleans, LA 70113
PH (504) 525-1335
FX:(504) 581-1493
EM:     jbruno@brunobrunolaw.com
            dscalia@brunobrunolaw.com
Counsel for Plaintiffs in:
05-4191        Vodanovich v. Boh Bros.
               Construction, et al.
05-5237        Vodanovich v. Boh Bros.
               Construction, et al.
05-6327        LeBlanc, et al. v. Boh Bros.
               Construction Co., et al.

CERTIFICATE OF SERVICE

-7-

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing a copy of same in the United States mail, properly addressed and first class postage prepaid, or by hand delivery, or by fax transmission, this _____ day of April, 2006.

_____
Joseph M. Bruno