UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS

MAUREEN O'DWYER                      :        CIVIL ACTION 05-4181 "K"3
                                     :
VERSUS                               :
                                     :        New Orleans, Louisiana
THE UNITED STATES OF AMERICA,  :       February 22, 2006
ET AL.                               :        11:00 a.m.
: : : : : : : : : : : : : : : :

MOTION FOR LEAVE TO SUPPLEMENT AND AMEND COMPLAINT
HONORABLE MAGISTRATE JUDGE DANIEL E. KNOWLES, III,
UNITED STATES DISTRICT COURT

APPEARANCES:

  For the Plaintiff:          ASHTON R. O'DWYER, JR., ESQUIRE
                              In Proper Person
                              One Canal Place
                              365 Canal Street, Suite 2670
                              New Orleans, Louisiana  70130


  For the United States      U.S. DEPARTMENT OF JUSTICE
  of America:                CATHERINE J. FINNEGAN, ESQUIRE
                             Torts Branch - Civil Division
                             U.S. Department of Justice
                             Benjamin Franklin Station
                             P.O. Box 888
                             Washington, D.C. 20044


  For the Parish of          BURGLASS & TANKERSLEY, LLC
  Jefferson & Aaron          BY:  DENNIS J. PHAYER, ESQUIRE
  Broussard:                 5213 Airline Drive
                             Metairie, Louisiana  70001-5602


  For the Orleans            McCranie, Sistrunk, Anzelmo, Hardy,
  Levee District:            MAXWELL & McDaniel, P.C.
                             BY: THOMAS P. ANZELMO, ESQUIRE
                             3445 N. Causeway Blvd., Suite 800
                             Metairie, Louisiana  70002


APPEARANCES (Continued)

EXHIBIT
tabbies®
No. 2

2

For the City of New          City Attorneys' Office
Orleans, Mayor Ray           BY:  JAMES B. MULLALY, ESQUIRE
Nagin & Former               City Attorneys' Office
Superintendent of            City Hall
Police Eddie Compass:        1300 Perdido St.
                             Room 5E01
                             New Orleans, Louisiana  70112


Reported By:                 Arlene Movahed, CSR
                             501 Magazine Street
                             New Orleans, Louisiana  70130
                             (504) 589-7777


        Proceedings recorded by mechanical stenography;
transcript produced by dictation.

1                      P R O C E E D I N G S

2                         MORNING SESSION

3                      (February 22, 2006)

4       (The following is a transcript of the Motion for Leave to

5    Supplement and Amend Complaint taken on February 22, 2006.)

6       (Open court.)

7            THE COURT:   Be seated.   Good morning, everyone.   Call

8    the first one.

9            THE CLERK:   05-4181, Maureen O'Dwyer, et al versus

10   the United States of America.

11           Would counsel make their appearances for the record,

12   please.

13           MR. O'DWYER:   May it please the Court, Your Honor,

14   Ashton O'Dwyer for plaintiffs, movers.

15           THE COURT:   Good morning.

16           MS. FINNEGAN:   May it please the Court, Your Honor,

17   Catherine Finnegan for the United States.

18           THE COURT:   Good morning.

19           MR. PHAYER:   Dennis Phayer for Jefferson Parish and

20   Aaron Broussard.

21           MR. ANZELMO:   Good morning, Your Honor.   Tommy

22   Anzelmo representing the Orleans Levee District.

23           THE COURT:   Good morning, Mr. Anzelmo.

24           MR. MULLALY:   Good morning, Your Honor.   Jim Mullaly

25   on behalf of the City of New Orleans, Mayor Nagin and former

4

1  Superintendent of Police, Eddie Compass.

2            THE COURT:   Mr. O'Dwyer, it's your motion.

3            MR. O'DWYER:   Yes, Your Honor.  May it please the

4  Court, preliminarily, Your Honor, I didn't learn until

5  yesterday that the City of New Orleans had actually opposed my

6  motion.  I discovered it on Pacer.  I have not been served

7  through the mail.  The mail is just horrible still.  And Mr.

8  Mullaly and I are going to probably reach some accommodation in

9  that respect.

10           I don't know what they taught you in judge school

11  about motions for leave to amend.  There is a great body of   --

12           THE COURT:   That makes two of us.  I don't recall.

13           MR. O'DWYER:   There is a great body of law dealing

14  with amendment of pleadings.  And the tenor of the purpose of

15  allowing amendments, the reason for Rule 15, was not to try the

16  case on the pleadings, it was to give the defendant or the

17  parties, let's say, the notice of the type of claims that were

18  being asserted against them so that they could mount some kind

19  of defense that didn't require them to guess about what

20  evidence the plaintiff was going to present at trial.

21           In that respect, Your Honor, I respectfully submit

22  that my handwritten original complaint put everybody on notice

23  of exactly what Ashton O'Dwyer, other plaintiffs, and the

24  classes who were represented were shooting at our government;

25  federal, state and local.

5

1    I apologize to you if you had to plow through that

2 handwritten complaint and the amendment.  This was written out

3 in my driveway in long hand because I didn't have a typewriter.

4 And it's hard to follow.  I hope that in my papers, the Reply

5 Memo filed yesterday, that I simplified things a little for

6 you.

7    Contrary to what my opponents are urging here, I have

8 not changed anything of the original tenor of my complaint.  If

9 you look at the original complaint, you will see where I

10 specifically identified who the plaintiffs were:  Survivors of

11 people who died, persons who suffered bodily injury, persons

12 who suffered property damage whether it was caused by flood,

13 fire or government sponsored urban terrorism, people who

14 suffered environmental damage.  And I specifically invoked

15 quote state and federal legislation, including The Oil

16 Pollution Act of 1990, The Louisiana Oil Spill Prevention and

17 Response Act and CERCLA, among others.

18    In my original complaint, I only alleged jurisdiction

19 against the United States of America.  There's no contesting

20 that.  This is the court of exclusive jurisdiction for claims

21 against the United States.  And I remembered from law school

22 something that we used to call supplemental jurisdiction or

23 ancillary and pendant jurisdiction, which they now call

24 supplemental jurisdiction, against the remaining defendants.

25 But I amended on October 25th and when I did that, with leave

6

1  of Court, I specifically pleaded, and I will quote, "This Court
2  also has original subject matter jurisdiction of the claims
3  herein asserted, since plaintiffs were deprived of rights to
4  life, property and pursuit of happiness, guaranteed by the U.S.
5  constitution, and the laws, statutes and treaties amendatory
6  thereto, by State and/or municipal governmental action, giving
7  rise to purely federal causes of action."  Now if that didn't
8  put them on notice what my jurisdictional allegations were,
9  shame on them, shame on them.

10      Your Honor, I stand here today urging you not to deny
11  me leave to amend.  And I am going to sit down in a few
12  minutes, but I challenge any of them to point to one
13  jurisdictional allegation in my eleventh amendment that they
14  maintain is futile and that they maintain the Court definitely
15  doesn't have jurisdiction for.  I guarantee you they're not
16  going to be able to do it.  They will argue, oh, he hasn't
17  exhausted his administrative remedies under the Federal Tort
18  Claims Act.  Well, guess what, I have perfected my
19  administrative claims.  I don't have control over what the
20  government does in either paying me and my clients or denying
21  the claims.  So, I think, that argument is sophistry.

22      And I remind the Court of the arguments that I
23  advanced on my Motion for Protective Order, which is currently
24  being appealed to Judge Duval; namely, that I have asserted
25  claims both within and without the Federal Tort Claims Act.

1  The Tucker Act, I believe, gives this Court concurrent

2  jurisdiction with inverse condemnation claims at least to the

3  extent of $10,000.  Many of the people I represent are not land

4  owners.  They didn't lose their homes like my sister or like,

5  you know, 150 to 300 others.  They lost everything they had,

6  though.  And I respectfully submit that this Court has

7  concurrent jurisdiction for those claims under $10,000 for

8  whatever possessions they lost concurrent with the Federal

9  Court of Claims regardless of the environmental statutes.

10      Your Honor, I want to remind the Court once again of

11  what I pleaded initially in the first original complaint

12  amended with leave of Court.  Not without leave of Court, with

13  leave of Court every time.  Your Honor even signed one.

14  Magistrate Chasez signed at least one, maybe two.  And Judge

15  Duval signed all the others.  My original complaint was replete

16  with repetitive references to:  1, incompetence; 2, violation

17  of duty and statute; negligence; gross negligence; malfeasance;

18  misfeasance; and non-feasance.

19      It so happens that there is a Louisiana criminal

20  statute which prohibits malfeasance in office.  I am pursuing

21  body bags, Eddie non/Compass mentis, Aaron Broussard on those

22  charges, criminal charges.  I am accusing them of willful

23  misconduct.  My original complaint did not have the word

24  misconduct in it but it had intentional in it.  I only learned

25  since we started the round of motions and oppositions, et

8

1  cetera, that there existed two obscure immunity statutes under

2  state law that immunize representatives of state and municipal

3  governments from action which they claim falls within the

4  furtherance of the laws which the people elected them to carry

5  out and safeguard.

6          Well, number one, if they followed those laws, we

7  wouldn't be here today because the levees wouldn't have failed,

8  people wouldn't have been removed from their homes at gunpoint.

9  Aaron Broussard wouldn't have turned off the pumps when they

10 were most needed.  Secondly, these two statutes also allegedly

11 immunize elected officials from conduct that constitutes

12 willful, intentional, flagrant, or reckless quote misconduct.

13 They have raised this now in their pleadings.  I have got to

14 counter it.  And I respectfully submit that I should be granted

15 leave to amend to assert that, particularly, when we are still

16 within the one year anniversary of Hurricane Katrina, no status

17 conference has been called, no discovery has been had yet.

18 They were on notice of this a long time ago.

19          Your Honor, two points that I would make before I sit

20 down.  I would appreciate the opportunity for brief rebuttal.

21 What we're dealing with here, what I am dealing with here is

22 opposition to a Motion to Amend Pleadings at an early stage of

23 litigation filed by our own government, the United States of

24 America.  Are you kidding me?  My clients did nothing wrong.

25 They're here because someone wronged them.  The same with the

1  state officials, body bags and Eddie non-Compass mentis and

2  Aaron Broussard.  Our own government is opposing a motion that

3  is of a nature that is routinely granted by courts within the

4  Eastern District.  I believe this is maybe the first motion for

5  leave to amend that has ever been opposed in 35 years of

6  practicing law.  All I can say is, I must have hit a nerve with

7  something.

8          The last point I would make, Your Honor, and I cited

9  Wright, Miller and Kane several times, the most egregious case

10 that I found pre Rule 15 where a Motion for Leave to Amend  --

11 I'm sorry  --  where the party was held to his pleadings was a

12 case from a state jurisdiction prior to Congress' passage of

13 the Federal Rules of Civil Procedure, including Rule 15.  A

14 Judge entered a JNOV because the original petition alleged half

15 a cent off what the jury awarded the plaintiff in the case and

16 the Judge JNOV'd a verdict in the plaintiff's favor and threw

17 him out of court.  What I found extremely interesting in

18 reading Wright, Miller and Kane was the following quote:

19 "Particularly when dealing with amendments which do nothing

20 more than tweak what was originally pleaded and which

21 originally put the other parties on notice of the claims, quite

22 appropriately the courts have not imposed any arbitrary timing

23 restrictions on a party's request for leave to amend and

24 permission has been granted under Rule 15(a) at various stages

25 of the litigation following discovery  --"  We haven't even had

10

1   discovery. "-- after a pretrial conference." We haven't even

2   had a status conference yet, although there is one set at 11:30

3   today. "-- at a hearing on a Motion to Dismiss off of a

4   Summary Judgment." We're not even there yet. These clowns are

5   filing motions based on the pleadings. We're not summary

6   judgment time yet.

7           THE COURT:   Mr. O'Dwyer, never refer to another

8   attorney in this court that way again.

9           MR. O'DWYER:   I was referring to the parties, Your

10  Honor. I wasn't referring to the attorneys.

11          THE COURT:   Don't refer to anybody as clowns in my

12  court. Are we understood?

13          MR. O'DWYER:   All right, Your Honor. "After a Motion

14  to Dismiss has been granted but before the Order of Dismissal

15  has been entered. When the case is on the trial calendar and

16  has been set for a hearing by the District Court. At the

17  beginning, during, and at the close of trial --" And this is

18  unbelievable, "-- after a judgment has been entered." And

19  even more unbelievable, "and even on remand following appeal."

20          THE COURT:   I get the message, Mr. O'Dwyer.

21          MR. O'DWYER:   Thank you.

22          THE COURT:   Opposition.

23          MS. FINNEGAN:   Yes, Your Honor. May it please the

24  Court, Katherine Finnegan for the United States.

25          The United States has filed an opposition to

1   plaintiff's motion.  And certainly it is within this Court's

2   discretion to grant plaintiff's motion for leave to amend their

3   complaint for the eleventh time.  However, the United States

4   respectfully requests that it do not do so.  But, if it does,

5   that the plaintiffs be instructed that this is their last such

6   amendment.

7        The United States' opposition essentially focuses on

8   three grounds.  First, that an amendment here would be futile.

9   And the case in point would be Davis versus United States which

10  is an FTCA case in which one of the exceptions to the FTCA

11  applied when plaintiffs attempted to amend their complaint so

12  as to cure the jurisdictional problem. There it was actually a

13  pro se plaintiff and they attempted to amend to include a

14  Constitutional Tort against the United States.  However, the

15  Court and the Fifth Circuit affirmed that such an amendment

16  would be futile.

17        The other point that the United States raises in its

18  opposition is that here plaintiff appears to be amending its

19  complaint so as to avoid the dispositive motions that have

20  previously been filed by the defendants.  Case in point on that

21  is Wimm versus Eckard Drugs.  In that case, it was a wrongful

22  death suit brought by parents of the child who died from an

23  overdose of cough syrup.  There, importantly, the amendment

24  came at an early stage of the proceedings.  It was before

25  discovery was had.  It was nine months before the deadline for

1   amendments of pleadings.  But it was after dispositive motions

2   had been filed.  And there the District Court and the Fifth

3   Circuit, again, affirmed and held that the amendment was used

4   basically for a dilatory purpose.

5          The other case which is on point is <u>Gregory versus</u>

6   <u>Mitchell</u>, which is the leading FTCA case on exhaustion of

7   administrative remedies.  Like here, in that case the plaintiff

8   had failed to exercise their administrative remedies before

9   filing suit.  Plaintiffs attempted to amend the pleadings so as

10  to create diversity jurisdiction and the District Court and,

11  again, the Fifth Circuit affirmed that such amendment should

12  not be had.

13         Well let me say this, that plaintiffs have not dealt

14  with these cases that were cited in the United States' brief.

15  The plaintiff has come forward after being granted ten

16  opportunities to amend their complaint.  They have now raised

17  23 additional statutes as grounds for jurisdiction, none of

18  which will lie against the United States as has been

19  articulated in our papers in our Motion to Dismiss.  They have

20  added claims under the Constitution, none of which will lie

21  against the United States.  And they have also added additional

22  plaintiffs and defendants in addition to additional damage

23  claims.

24         Plaintiffs have not articulated why these amendments

25  could not have been done sooner.  If it is true that these were

1   all in there, which the United States contests, but if it is

2   true that these grounds were raised in their original

3   complaint, why in the first ten amendments were these

4   allegations not perfected?  At some point the United States

5   respectfully submits that the plaintiff should commit to a

6   theory of their case so that litigation can proceed both

7   normally and as expeditiously as possible.

8          THE COURT:   Thank you very much.  Anyone else?

9          MR. PHAYER:   Your Honor, Dennis Phayer on behalf of

10  Jefferson Parish and Aaron Broussard.  We have adopted the

11  United States' arguments.

12          I would point out that the meat of our opposition is

13  that we had dispositive motions on the table at the time.

14  Dispositive jurisdictional motions on the table.  I submit that

15  it's not clear to anyone but plaintiffs' counsel what

16  jurisdictional allegations are being alleged against what

17  defendants based on the pleadings that have been filed in this

18  case.

19          The original allegation against Jefferson Parish and

20  Broussard was that it was purely supplemental jurisdiction.  I

21  don't think it's clear from these pleadings that any

22  constitutional allegations were ever alleged up until the time

23  of the proposed eleventh amendment complaint which, again, was

24  after we had already filed our jurisdictional motions.  And,

25  again, the basis was on  --  it was really a back door attempt

14

1   to oppose the 12(b) Motion rather than to clarify the

2   pleadings.

3          THE COURT:   Thank you, sir.

4          MR. MULLALY:   Good morning, Your Honor.   I echo the

5   sentiments just expressed by able counsel for the United States

6   and Jefferson Parish.

7          I would submit, however, that the proposed eleventh

8   amended complaint really doesn't set forth any violation of

9   federal law.  Really, what it says, as the Court is probably

10  well aware, Section 1983 and those statutes don't themselves

11  create a cause of action.  They are procedural vehicles for

12  bringing about alleged constitutional deprivation.

13         Other than that, Your Honor, we adopted the brief

14  filed by the United States and object to the filing.

15         THE COURT:   Mr. Anzelmo.

16         MR. ANZELMO:   Your Honor, anybody can read Rule 15,

17  read the Federal Rules, Rule 8, short, plain and concise

18  statements.  These rules contemplate that there must be an end.

19  That there is a focus approach to litigation.

20         What has happened here is the constant amendments

21  causing a loss of focus.  It is actually causing undue delay to

22  the progress of the litigation because things remain in a

23  constant state of flux.

24         And the Court has the prerogative to grant amendments,

25  but the Rule, because Rule 15 requires an order of Court to do

1  it indicates that there must be some limitations.  I think that

2  the limitations have been reached.  Especially with the now non

3  focused approach that we are seeing because we are not dealing

4  any longer with short concise statements of pleadings nor are

5  we being put on notice other than a repeat notice.

6          If we accept counsel's statements as true, he is

7  telling us again what he told us before.  And in light of that

8  environment, the Court possesses the discretion either to tell

9  counsel that this amendment is opposed in the form that it is

10  presently submitted, or to allow it and then suggest to counsel

11  that any further amendments should follow the Federal Rules and

12  leave will not be granted lightly.

13          Thank you very much, Your Honor.

14          THE COURT:   Mr. O'Dwyer, briefly.

15          MR. O'DWYER:   Yes, sir.  First of all, I would state

16  that I challenge counsel to say what statutes were totally

17  inapplicable to this case.  I didn't hear one statute

18  mentioned.  I heard a conclusory statement made by Ms. Finnegan

19  on behalf of the government to the effect that, oh, we have a

20  pending Motion to Dismiss and the amendment would be futile

21  under the Federal Tort Claims Act.  That's not before the

22  Court.  It hasn't been heard yet.  That's a conclusory

23  statement with no meat.

24          Why did I not address the dispositive motions?

25  Because they're frivolous.  Why did Judge Duval continue

1  Kimberly Williamson Butler's motion?  Why did Judge Duval

2  continue Aaron Broussard's and the Parish's motion instead of

3  just granting them?  We have a status conference at 11:30.  I

4  think he is signaling a message to us.  I hope I am right.

5          THE COURT:  All right, Mr. O'Dwyer.

6          MR. O'DWYER:  Two more points, Your Honor.

7          THE COURT:  No, it's 11:25.  I don't want you to be

8  late for your conference so I think you have argued enough.

9          Perhaps I had a hangover the morning I attended

10  judges' school and they talked about motions to amend but I

11  don't exactly recall what was said.  However, since I have been

12  on the bench I have managed to learn that the rule is that the

13  two things to be considered in looking at motions to amend are

14  the futility, or the timeliness of the amendment.

15          Mr. O'Dwyer, I am going to grant your motion.  If they

16  had a rule in judges' school, again, I wasn't aware of it.  If

17  they had a rule in judges' school saying that ten strikes and

18  you're out, I didn't hear it.  However, since I have been on

19  the bench for three years, I think it's time we have a Knowles'

20  rule and until it's reversed upstairs we're going to have a

21  Knowles' rule and that is eleven strikes and you're out.

22  Future amendments are not going to be granted in this case, Mr.

23  O'Dwyer, unless you give me some really, really, really good

24  reasons to do so.

25          Motion is granted.  Thank you all very much for

1  coming.

2        MR. O'DWYER:   Your Honor, can I say one thing?

3        THE COURT:   Sure.

4        MR. O'DWYER:   Since my eleventh amendment, I

5  represent several hundred more plaintiffs and there is

6  litigation pending in this Court.  I believe there's 16 or 17

7  other cases  --

8        THE COURT:   Right.

9        MR. O'DWYER:   --  under the Civil Action Number

10  05-4182, Berthelot, and there are a number of other parties,

11  defendants in the Berthelot and related cases that, you know, I

12  know nothing about yet.  I am going to be coming back with

13  motions for leave to add plaintiffs and new defendants.  That's

14  a foregone conclusion.

15        THE COURT:   That's a different case, that's another

16  matter.  But, also, I'll have to look at it on a case by case

17  basis.  I am just saying that basically your complaint in this

18  case, to me, was borderline because I think you were restating

19  a lot of things that went on in the past and I do think you

20  were partially responding to dispositive motions.  That kind of

21  motion is not going to be granted.  If there is some other

22  grounds, obviously, I have to look at it.

23        MR. O'DWYER:   Thank you, Your Honor.

24        THE COURT:   Thank you all, folks.  Appreciate you

25  coming.

1        (End of proceedings.)


                    REPORTER'S CERTIFICATE


        I, Arlene Movahed, Official Court Reporter, for the

United States District Court for the Eastern District of

Louisiana, appointed pursuant to the provisions of Title 28,

United States Code, Section 753, do hereby certify that the

foregoing is a full, true and correct transcript of proceedings

had in the within-entitled and numbered cause on the date

herein before set forth and I do further certify that the

foregoing transcript has been prepared by me or under my

direction.





ARLENE MOVAHED
Official Court Reporter
United States District Court
Eastern District of Louisiana

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

MAUREEN O'DWYER, ET AL.          *          NO. 05-4181

VERSUS                           *          SECTION "K"

THE UNITED STATES OF             *          MAGISTRATE "3"
AMERICA, ET AL.

PLAINTIFFS' REPLY MEMORANDUM
TO THE GOVERNMENT'S AND OTHER DEFENDANTS
MEMORANDA IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE SUPPLEMENTAL
AND AMENDING COMPLAINT

**MAY IT PLEASE THE COURT:**

While plaintiffs concede that a few cases (a very few) may exist which interpret

amendment and supplementation of pleadings under Rule 15, Federal Rules of Civil

Procedure, in a very Draconian way, none of the cases cited by the Government or by any

of the other defendants should operate to deny plaintiffs the right to supplement and

amend their Complaint for the eleventh, or even for the "umpteenth", time where, as here,

we are still (1) well within the first anniversary of Hurricane KATRINA, (2) all

defendants have not yet answered, (3) no status conference for the setting of deadlines,

much less a trial date, has been held, or even scheduled, and (4) neither the Government

nor the other defendants can make any serious claim that plaintiffs or their counsel are

guilty of undue delay, bad faith, dilatory motive, repeated failure to cure real or perceived



EXHIBIT

"deficiencies" by prior amendment, undue prejudice to the opposing parties, or futility of the sought-after amendments. Further, both the Government and the other defendants have failed to even cite the Court to 28 U.S.C. §1653, which specifically addresses amendments to allegations of jurisdiction and which, arguably, supercedes Rule 15. For these reasons, and for the reasons which follow, plaintiffs respectfully submit that their Motion for Leave to Supplement and Amend the Complaint should be granted.

### WHAT ARE PLAINTIFFS SEEKING TO ACCOMPLISH BY WAY OF AMENDMENT AND SUPPLEMENTATION?

The Government and the other defendants are treating the proposed Eleventh Amendment of plaintiffs' Complaint as a "cause celebre" suggesting that the sought-after amendment and supplementation somehow changes the entire theory of the plaintiffs' case. What the Government and the other defendants ignore is the fact that the Original Complaint more than aptly described plaintiffs theory of the case, and that each amendment since the Original Complaint was filed has been filed only with leave of court, either from Judge Duval, from Magistrate Chasez (who the Government successfully persuaded should recuse herself), or from Your Honor. The Government and the other defendants also ignore the fact that plaintiffs are not only seeking amendment of the Complaint, but supplementation of their pleadings as amended to address issues which were only recently brought to the attention of plaintiffs and their counsel by virtue of positions being urged by certain defendants and their counsel. The proposed amendment being the subject of Plaintiffs' Motion for Leave to Supplement and Amend the Complaint accomplishes five (5) things:

1)    It adds new parties plaintiffs who are represented by undersigned counsel;

2)   It identifies as a party defendant, and substitutes for the fictitious originally sued "ABC Insurance Company", the insurance carrier of the New Orleans Levee Board who was only recently identified by Counsel for the Board, namely St. Paul Fire & Marine Insurance Company;

3)   It adds specific jurisdictional bases for plaintiffs' claims, supplementing and better articulating plaintiffs' adequate prior jurisdictional allegations;

4)   It better specifies allegations against State and local elected and/or appointed officials; and

5)   It pleads compensation, the right of recoupment, offset and set-off in the event the finder-of-fact decides not to award plaintiffs damages.

Once again, it should be noted that plaintiffs obtained leave of Court, either from Judge Duval, from Magistrate Chasez, or from Your Honor, for every other amendment prior to the proposed eleventh amendment.  Accordingly, none of the defendants should be allowed to complain about how many times plaintiffs have amended in the past, since the current proposed amendment is the first which defendants have opposed, even half-heartedly.

Neither the Government nor the other defendants have cited the Court to one case in which the facts are remotely similar to the case at bar, or where an appellate court has held that a Judge or Magistrate had abused his discretion by allowing amendment of a Complaint under circumstances similar to those in this case.  Indeed citing a case which was in a procedural posture similar to this case, Learned Commentators have said that "The broad scope and liberal application of Rule 15(a) can best be illustrated by an example":

The board scope and liberal application of Rule 15(a) can best be illustrated by an example. In Jenn-Air Products Company v. Penn Ventilator Company, a patent infringement suit, plaintiff moved for leave to amend its complaint to assert a claim for the infringement of two additional patents, a claim charging defendant with unfair competition, and two separate claims for libel and trade disparagement. Defendant opposed the amendment on the ground that the addition of these claims would prejudice his action. The district court held that inasmuch as the discovery process had just begun, defendant would not be prejudiced by the amendment. The court also concluded that since plaintiffs' patent claims against defendant were simply part of a continuing commercial battle between two competitors and plaintiff's claims of unfair competition and libel were related to the same basic set of circumstances as was presented by the original complaint, it was appropriate to have all of the claims litigated at the same time. According to the court: "[I]f plaintiff's motion were denied here a separate action against the defendant could be instituted and, in the absence of creating undue complications at trial, it is clearly preferable to dispose of all the contentions between the parties in one proceeding." Wright, Miller & Kane, Federal Practice and Procedure, Civil 2nd §1473, p. 523.

Would judicial economy truly be served by Your Honor denying plaintiffs the right to supplement and amend their Complaint, and forcing plaintiffs to institute a new, separate action? ANSWER: Of course not.

### WHO ARE PLAINTIFFS AND WHAT DID PLAINTIFFS PLEAD AGAINST THE MOVING DEFENDANTS INITIALLY?

In the Original Complaint, over fifty (50) named plaintiffs[1] claimed to be representative of the following classes of people which are relevant to the claims against the defendants opposing plaintiffs' proposed eleventh amendment:

A.    Survivors of human beings who died as a result of government's intentional and negligent malfeasance, misfeasance and non-feasance prior and after Hurricane KATRINA.

---

[1]   That number has now swelled to something in the neighborhood of 1000.

B.     Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered bodily injury, mental suffering and emotional distress as a result of government's intentional and negligent malfeasance, misfeasance and non-feasance prior to and after Hurricane KATRINA.

C.     Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered loss of or damage to property as a result of government's intentional and negligent malfeasance, misfeasance and non-feasance, whether by flood, fire or governmental sanctioning of urban terrorism. See *infra*.

\* \* \*

F.     Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered environmental damages akin to contamination of natural resources under the federal and state legislation which make provision for Natural Resource Damage Assessments and damages recoverable under the Oil Pollution Act of 1990, the Louisiana Oil Spill Prevention and Recovery Act and CERCLA, among others. Original Complaint, Article II, pp. 6-12.[2]

Although plaintiffs sued a large number of defendants, the only parties who have opposed the latest proposed amendment to the Complaint are the Government (through the Corps of Engineers and FEMA), the Levee Board, and Aaron Broussard and The Parish of Jefferson.

---

[2]   The Original Complaint has now been amended to include plaintiffs from Jefferson Parish and New Orleans East, as well as St. Bernard Parish.

In their Original Complaint plaintiffs alleged that the moving parties were liable to them for the damages sustained by plaintiffs on a number of legal theories applicable to claims against the Government and public officials, including:

Incompetence

Violation of duty and statute

Negligence

Gross negligence

Malfeasance

Misfeasance

Non-feasance

More particularly, plaintiffs pleaded as follows in the Original Complaint:

ARTICLE VIII.
COUNT 2

Plaintiffs reaver and reiterate all of their allegations as aforesaid and, in addition aver that certain of the defendants intentionally, negligently, and with malfeasance, misfeasance and non-feasance, failed in their duty to ensure a competent design of the levee systems for the London Avenue Canal and the 17th Street Canal,[3] which were defectively designed, the result being that 80% of "something" was destroyed – not by Hurricane KATRINA but by incompetence on the part of men to whom the citizens of New Orleans entrusted the safety of their lives and property. (Original Complaint, p. 34.).

ARTICLE IX
COUNT 3

Plaintiffs reaver and reiterate their allegations as aforesaid, and in addition aver that certain defendants intentionally, negligently and with malfeasance, misfeasance and non-feasance failed to timely stop the flooding of 80% of "something" which had survived Hurricane KATRINA but which could not survive the incompetence of government officials at the local, state and federal levels. (Original Complaint, p. 35.).

---

[3]   The Complaint has now been amended to include claims involving the Industrial Canal, the Mississippi River Gulf Outlet and the Gulf Intracoastal Waterway.

\* \* \*

ARTICLE XV.
COUNT 9

      Plaintiffs reaver and reiterate all of their allegations as aforesaid, and in addition aver that certain of the defendants negligently, intentionally and with malfeasance, misfeasance and non-feasance caused pollution of the environment of the territory and atmosphere of the Parish of Orleans, State of Louisiana, which not only caused damage to plaintiffs and other persons, firms and corporations similarly situated to plaintiffs, but which pollution must be contained, cleaned up, remediated and disposed of – a Herculean and expensive task. (Original Complaint, pp. 43-45.).

The Court will note the repeated use of the following words in the Original Complaint when describing the acts and omissions of federal, state and local officials:

      Incompetence

      Intentionally

      Negligently

      Malfeasance

      Misfeasance

      Non-feasance

Plaintiffs also remind the Court that although their Complaint, as supplemented and amended, specifically alleges the terms "malfeasance, misfeasance and non-feasance",[4] which plaintiffs aver was both negligent and intentional, plaintiffs are also alleging violation of a criminal statute by state and local elected and appointed officials and, more particularly, violation of LSA-R.S. 14:134, which deals specifically with the crime of malfeasance in office and which provides as follows:

---

[4]  In addition to incompetence, violation of duty and statute, negligence, gross negligence, etc.

-7-

**Malfeasance in office**

Malfeasance in office is committed when any public officer or public employee shall:

(1)     Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee, or

(2)     Intentionally perform any such duty in an unlawful manner, or

(3)     Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner ;

(4)     Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee.  The delegation of such lawful duty shall not relieve the public officer or employee of his lawful duty.

(5)     Whoever commits the crime of malfeasance in office shall be imprisoned for not more than five

years with or without hard labor or shall be fined

not more than five thousand dollars or both.

Accordingly, it is respectfully submitted that plaintiffs' Original Complaint very adequately meets both the meaning and intent of Rule 8 that "[e]ach averment of a pleading shall be simple, concise and direct."

Although the Original Complaint charged incompetence as well as negligent and intentional malfeasance, misfeasance and non-feasance, the word "misconduct" did not appear in the Original Complaint. Accordingly, plaintiffs recently filed their Motion for Leave to Supplement and Amend the Complaint to specifically allege the violation of LSA-R.S. 9:2798.1 and LSA-R.S. 29:735 and the term "misconduct", which plaintiffs submit should operate to strip State and local elected and appointed officials of the immunity they might otherwise have enjoyed under Louisiana law. Thus, arguably, the proposed amendment by adding Article XIXXI to the Complaint could be viewed as superfluous "tweaking" of the pleadings. However, plaintiffs would rather be "safe" than "sorry". Assuming that the Motion for leave to Supplement and Amend the Complaint is granted, then the following allegation will have been perfected against State and local elected and appointed officials:

"Plaintiffs aver that the acts and omissions by State and local elected and/or appointed officials, complained of herein, constituted criminal, malicious, intentional, willful, outrageous, reckless and/or flagrant misconduct, so as to deprive those officials of immunity from liability pursuant to the provisions of LSA-R.S. 9:2798.1, and, additionally,

aver that those officials were in derogation of and violated specific rules and regulations promulgated pursuant to the provisions of LSA-R.S. 29:735, so as to deprive those officials of immunity from liability under the provisions of that statute as well.[5]

It is respectfully submitted that plaintiffs proposed amendments to their original allegations do not really change any original theory of the case, but merely more specifically charge certain defendants with misconduct and other behavior which should strip them of any claimed statutory immunity from liability, and which defendants were already on notice of, early on.

Such amendments are specifically sanctioned by Rule 15.

"A more common use of Rule 15(a) amendments is correct insufficiently stated claims or defenses. . . . Along the same lines, a party may make an amendment to simplify a previously alleged claim or defense. A liberal policy toward allowing amendments to correct errors in the pleadings clearly is desirable and furthers one of the basic objectives of the Federal Rules – the determination of cases on their merits." Wright, Miller& Kane, Federal Practice and Procedure: Civil 2nd §1474, pp. 529-536.

Plaintiffs respectfully submit that their proposed amendments to plead exceptions to immunity should be allowed.

---

[5]  Proposed Eleventh Supplemental and Amending Complaint, Article IV, pp. 5-6.

## PLAINTIFFS ALSO SEEK TO AMEND THEIR JURISDICTIONAL ALLEGATIONS TO PLEAD MORE PRECISELY

Plaintiffs' original jurisdictional allegations were as follows:

IV.

This Court is the exclusive Court of competent
jurisdiction over the United States of America. This Court
has ancillary or pendant jurisdiction over the remaining
defendants. Original Complaint, Article IV, p. 17.

However, plaintiffs also pleaded in their Original Complaint as follows:

XIXX.

Undersigned counsel for plaintiffs represent to the Court
that this Complaint has been prepared without the benefit of a law
library. Accordingly, undersigned counsel reserves the right to
amend this Complaint after they have the opportunity to read the
law.

Accordingly, by Fourth Supplemental and Amending Complaint, filed with leave
of Court (Judge Duval) on October 25, 2005, plaintiffs pleaded as follows:

III.

By amending Article IV of the Complaint, as supplemented and
amended, to add the following language:

"This Court also has original subject matter jurisdiction of
the claims herein asserted, since plaintiffs were deprived of
rights to life, property and the pursuit of happiness,
guaranteed by the U.S. Constitution, and the laws, statutes

-11-

and treaties amendatory thereto, by State and/or municipal

governmental action, giving rise to purely federal causes of

action."

The above and foregoing jurisdictional allegation is "simple, concise and direct". Accordingly, it is respectfully submitted that plaintiffs originally pleaded all that was reasonably necessary to properly invoke the jurisdiction of This Honorable Court. In an abundance of caution, however, plaintiffs have now accomplished two additional matters: (1) they filed their Motion for Leave to Supplement and Amend Complaint, and (2) they perfected their administrative claims against the Federal Government through the Corps of Engineers and FEMA. The proposed amendment of the Complaint would add the following jurisdictional allegations against all defendants:

"More particularly, this Court has jurisdiction of the claims herein asserted by virtue of the following, inter alia: Original jurisdiction pursuant to the Second, Fifth and Fourteen Amendments to the United States Constitution

Original jurisdiction pursuant to 28 USC §1331

Original jurisdiction pursuant to 28 USC §1346

Original jurisdiction pursuant to 28 USC §2671, et seq.

Original jurisdiction pursuant to Title XI of the Civil Rights Act

Original jurisdiction pursuant to 42 USC §1983

Original jurisdiction pursuant to 42 USC §1985

Original jurisdiction pursuant to 42 USC §1986

Original jurisdiction pursuant to 42 USC §1988

Original jurisdiction pursuant to the Class Action Fairness Act, 28 USC §1332, by virtue of the fact that the matter in

-12-

controversy in this civil action exceeds the sum of $5 million, exclusive of interest and costs.

Supplemental jurisdiction pursuant to 28 USC §1367

This Court also has jurisdiction of the claims herein asserted by virtue of the following environmental statutes, inter alia, which defendants violated, thus entitling Plaintiffs to damages from defendants:

The Oil Pollution Act of 1990 and precursor legislation

The Comprehensive Environmental Response Compensation and Liability Act and precursor legislation

The Federal Water Pollution Control Act

The Clean Water Act

The Clean Air Act

The National Environmental Policy Act

The Toxic Substances Control Act

The Resource Conservation and Recovery Act

The Louisiana Environmental Quality Act

The Louisiana Air Control Law

The Louisiana Water Control Law

The Louisiana Oil Spill Prevention and Response Act

Plaintiffs administrative claims against the Government, which are embodied in the attached letter to the Corps of Engineers and FEMA dated February 17, 2006, include the following:

The statutory bases for each individual claim against your agencies may include the following, *inter alia:*

Malfeasance, misfeasance and nonfeasance

-13-

Violation of LSA-R.S. 14:134

Unconstitutional taking of property without just compensation in violation of the Fifth Amendment to the Constitution of the United States

Articles 667, 2315, 2315.1, 2315.2, 2315.6, 2316, 2317, 2317.1 and 2322 of the Louisiana Civil Code

The Oil Pollution Act of 1990 and precursor legislation

The Comprehensive Environmental Response Compensation and Liability Act and precursor legislation

The Federal Water Pollution Control Act

The Clean Water Act

The Clean Air Act

The National Environmental Policy Act

The Toxic Substances Control Act

The Resource Conservation and Recovery Act

The Louisiana Environmental Quality Act

The Louisiana Air Control Law

The Louisiana Water Control Law

The Louisiana Oil Spill Prevention and Response Act

It is respectfully submitted that having alleged deprivation of "rights to life, property and the pursuit of happiness guaranteed by the U.S. Constitution, and the laws, statutes and treaties amendatory thereto", were sufficient to include most of the newly-referenced federal statutes.  Thus, it is respectfully submitted that any technical defect in plaintiffs' original jurisdictional allegations should be allowed to be cured by plaintiffs, who should also be allowed to amend their Complaint to include purely Federal

-14-

jurisdictional allegations, including the invocation of federal jurisdiction under the Fifth Amendment,  which prohibits the taking the property without just compensation, jurisdiction under various Federal pollution statutes,[6] jurisdiction pursuant to the Class Action Fairness Act, and of course supplemental jurisdiction.  In short, plaintiffs' proposed amendment doesn't "change" anything, it simply better articulates the Court's jurisdiction, which has always existed anyway.

### THE GOVERNMENT AND THE OTHER DEFENDANTS IGNORE 28 USC §1653

28 USC §1653 also is invoked by plaintiffs and, arguably, supercedes Rule 15(a). 28 USC §1653 is quite broad, and liberal in scope, providing as follows:

> "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

Since the moving defendants appear to have challenged plaintiffs original jurisdictional allegations, which plaintiffs submit were more than adequate, plaintiffs proposed amendment simply seeks to clarify their original jurisdictional allegations, which may have been technically insufficiently stated.

### RULE 15 TAKES A LIBERAL APPROACH TO AMENDING AND SUPPLEMENTING PLEADINGS

The tenor of the Government's and the other defendants' opposition to the plaintiffs' Motion for Leave to Supplement and Amend the Complaint is reflective of a "GOTCHA" approach to the practice of law which Rule 15 was specifically adopted to eliminate.  Wright, Miller & Kane, Federal Practice and Procedure:  Civil 2d §1472, pp.

---

[6]   The Court will recall that the Original Complaint specifically included causes of action "under the federal and state legislation" dealing with pollution, including "the Oil Pollution Act of 1990, the Louisiana Oil Spill Prevention and Recovery Act, and CERCLA, among others."  Original Complaint, Article II, p. 11.

505-507, recites Rule 15's importance to fulfilling the purposes of the Federal Rules of

Civil Procedure:

> "Rule 15 reflects two of the most important policies of the federal rules. First, the rule's purpose is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities. This is demonstrated by the emphasis Rule 15 places on the permissive approach that the district courts are to take to amendment requests, no matter what their character may be; the rule is in sharp contrast to the common law and code restriction that amendments could not change the original cause of action. No longer is a party to be irrevocably bound to the legal or factual theory of his first pleading. The thrust of the rule also is reinforced by the elimination of the wooden cause-of-action test for determining whether an amended pleading should relate back and when a supplemental pleading is appropriate.

> Second, Rule 15 reflects the fact that the Federal Rules assign the pleadings the limited role of providing the parties with notice of the nature of the pleader's claim or defense and the transaction, event, or occurrence that has been called into question; they no longer carry the burden of fact revelation and the issue formulation which is now discharged by the discovery process, or control the trial phase of the action. Thus the strong policy against variances between pleading and proof that existed at common law and to a lesser degree under the codes has been rejected.

## THE GOVERNMENT AND THE OTHER DEFENDANTS READ MORE INTO THE JURISPRUDENCE INTERPRETING RULE 15 THAN THE LAW ACTUALLY ALLOWS

The government and the other defendants put undue emphasis on the effect of

amendment of pleadings to the opposing or non-moving party, but ignore possible

prejudice to the moving party, in this case plaintiffs:

> "Perhaps the most important fact enlisted by the Court and the most
>
> frequent reason for denying leave to amend is that the opposing party will
>
> be prejudiced if the movant is permitted to alter his pleading. Conversely,
>
> if the Court is persuaded that no prejudice will accrue, the amendment
>
> should be allowed. Thus, the facts of each case must be examined to

determine if the threat of prejudice is sufficient to justify denying leave to amend. In order to reach a decision on this point, the Court will consider the position of both parties and the effect the request will have on them. This entails an inquiry into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleadings, and the injustice resulting to the party opposing the motion should it be granted." Wright, Miller & Kane, §1487, pp. 613-623.

What has the Supreme Court said about amendment of pleadings? In Foman v. Davis, 83 S.Ct. 227, 371 U.S. 178 (1962), the Supreme Court enunciated the following general standard, which is to be employed under Rule 15 (a) by district courts:

> If the underlying facts or circumstances relied upon by a plaintiffs may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given". 83 S.Ct. @ 230, 371 U.S. @ 182.

Both the case law and the Learned Commentators make clear that "prejudice" to the opposing party, not the mover's lack of diligence, is the crucial factor in determining whether or not to grant leave to amend the complaint. Wright, Miller & Kane, Federal Practice and Procedure: Civil Second §1487, p. 613, et seq., and cases cited therein. In the case at bar, no one has even claimed, much less proven, how plaintiffs' Motion for Leave to Supplement and Amend would cause any defendant prejudice.

It is also interesting that the Learned Commentators report many circumstances much more egregious than in the case at bar where amendments have been allowed:

> Quite appropriately, the Courts have not imposed any arbitrary timing restrictions on a party's request for leave to amend and permission has been granted under Rule 15(a) at various stages of the litigation: following discovery;   after a pre-trial conference;   at a hearing on a motion to dismiss or for summary judgment;   after a motion to dismiss has been granted but before the order of dismissal has been entered;   when the cases on the trial calendar and has been set for a hearing by the district court;   at the beginning, during, and at the close of trial;   after a judgment has been entered;   and even on remand following appeal." Wright, Miller & Kane, §1488, p. 652, et seq., and cases cited therein.

This case does not come "close" to duplicating the foregoing "egregious" circumstances in which amendments were allowed.

The law as enunciated in the Fifth Circuit is as follows:

Fed.R.Civ.P. 15(a) permits amendment of a pleading after a responsive pleading has been served with leave of court.  However, the court should freely give leave to amend "when justice so requires."  It is often said that this determination rests in the sound discretion of the district court. *See, e.g., Chitimacha, Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982), *cert. denied*, (1983).  However, the Rule "evinces a bias in favor of granting leave." *Id.* (quoting *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)).  The policy of the federal rules is to permit liberal pleading and amendment, thus facilitating adjudication on the merits while

-18-

avoiding an excessive formalism. *Dussouy*, 660 F.2d at 598, (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 9 L.Ed. 2d 48, 78 S.Ct. 99, 103, 2 L.Ed. 2d 80 (1957)). Thus, if the district court lacks a "substantial reason" to deny leave, its discretion "is not broad enough to permit denial." *Id.*  Jamieson by and through Jamieson v. Shaw, 772 F.2d 1205, 1208 (Fifth Cir. 1985).

It is respectfully submitted that, at this early stage of this litigation, there is no "substantial reason" why this Court should deny leave to amend, and that Your Honor really has no discretion to permit denial, according to the Fifth Circuit.

## WHAT HAS JUDGE DUVAL ALREADY "SIGNALED" COUNSEL AND THE COURT?

It is also respectfully submitted that Judge Duval has already "signaled" both counsel for the parties and Your Honor concerning how he may be viewing plaintiffs' proposed Eleventh Amendment.  In the attached Minute Entry dated February 17, 2006, Judge Duval continued the hearing date on Rule 12 Motions to Dismiss filed by Defendants Aaron Broussard and The Parish of Jefferson and by Defendant Kimberly Williamson Butler from February 22, 2006, until March 8, 2006, stating in his Minute Entry:

> "The Court is aware that a Motion to File Eleventh Supplemental and Amending Complaint which adds new jurisdictional allegations[7] that may have a bearing on these motions is set for hearing before Magistrate Judge Knowles at 11:00 A.M. on February 22, 2006, the same date.  As a result, the Court believes that it is in the interest of judicial economy to continue the hearing on the noted Motions to Dismiss."

If Judge Duval truly believes that the referenced Rule 12 Motions had any merit, would he have continued the hearings, or would he simply have ruled on the motions?

---

[7]   Plaintiffs submit that the jurisdiction of the Court always has existed, and that plaintiffs prior jurisdictional allegations were broad enough to include the "new" specific allegations.

By referencing "the interest of judicial economy", was Judge Duval signaling his awareness of Rule 15's liberal amendment policy, particularly at this early stage of litigation? If Judge Duval truly believed that the Court lacks jurisdiction over plaintiffs' claims, and that plaintiffs' proposed amendment of their jurisdictional allegations would be "futile", would he have gone to the trouble of continuing the hearings on the Motions to Dismiss, invoking "the interest of judicial economy"? ANSWER: Of course not.

<u>CONCLUSION</u>

In concluding, plaintiffs refer the Court one last time to the following specific language from Rule 15(a), ". . . and leave shall be freely given when justice so requires", as authority for the proposition that leave to supplement and amend the Complaint should be granted to plaintiffs in this particular instance.


Respectfully submitted,


**LAW OFFICES OF
ASHTON R. O'DWYER, JR.
Counsel for Plaintiffs**


**By:**_____

> **Ashton R. O'Dwyer, Jr.
> In Proper Person
> Bar No. 10166
> One Canal Place
> 365 Canal Street
> Suite 2670
> New Orleans, LA 70130
> Tel. (504) 561-6561
> Fax. (504) 561-6560**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via facsimile, this ___ day of _____, 2006.

_____