

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED  APR 1 3 2006
LORETTA G. WHYTE
CLERK

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MAUREEN O'DWYER, ET AL. * | CIVIL ACTION NO. | |
| VERSUS * | 05-0481  05-4182 | |
| UNITED STATES OF AMERICA, ET AL. * | SECTION " " K | |
| * | MAGISTRATE 2 | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION FOR LEAVE TO SUPPLEMENT AND AMEND COMPLAINT

**MAY IT PLEASE THE COURT:**

The plaintiffs' proposed 12th amendment of their Complaint is not being filed by a lawyer who is in bad faith, or to retard the progress of this litigation, nor is it an untimely or futile filing.

The only reason why plaintiffs' proposed 12th amendment, less than one (1) year from the event of Hurricane KATRINA, before most parties have even answered plaintiffs' lawsuit, and before any substantive activity in the case has taken place, has become a "cause celebré", is due to the to the following unfortunate statement which was made on the record in Open Court by Magistrate Judge Knowles on February 22, 2006, in connection with his granting plaintiffs' Motion for Leave to Supplement and Amend Complaint for the 11th time:

___ Fee_____
___ Process___
X  Dktd____
✓ CtRmDep___
___ Doc. No 78

"Mr. O'Dwyer, I am going to grant your motion. If they had a rule in judges' school, again, I wasn't aware of it. If they had a rule in judges' school saying that ten strikes and you're out, I didn't hear it. However, since I have been on the bench for three years, I think it's time we have a Knowles' rule and until its reversed upstairs we're going to have a Knowles' rule and that is eleven strikes and you're out. Future amendments are not going to be granted in this case, Mr. O'Dwyer, unless you give me some really, really, really good reasons to do so.

Motion is granted."

That statement on the record occupied but one page of the "official" transcript of the proceedings on February 22, 2006, and ignores the arguments advanced on plaintiffs' behalf in the other 16 pages of transcript. It is respectfully submitted that what was argued on behalf of plaintiffs in the other 16 pages is what should be focused on by This Honorable Court in deciding whether to grant plaintiffs' pending Motion for Leave to Supplement and Amend Complaint for the 12th time, in order to, essentially, invoke admiralty and maritime jurisdiction as a separate jurisdictional basis for plaintiffs' claims, and to "tweak" their allegations against the United States of America.

A copy of the complete transcript of the proceedings in Open Court on February 22, 2006 is attached as Exhibit No. 1, [1] and the arguments advanced on behalf of plaintiffs at oral argument at the time that motion was decided are specifically incorporated herein by reference thereto. Your Honor should also should know that the legal issues revolving around amendment of pleadings was fairly extensively briefed to Magistrate Judge Knowles, and Your Honor is particularly directed to Record Document No. 112, attached and marked for identification as Exhibit No. 2, all of which, it is respectfully submitted, also support the granting of leave to file the proposed 12th

---

[1] The transcript also was attached to the Government's Memorandum in Opposition to plaintiffs' Motion.

amendment of plaintiffs' Complaint, Magistrate Knowles' unfortunate admonishment to the undersigned on the record notwithstanding.

Plaintiffs do owe the Court and the defendants an explanation for why the Court's admiralty and maritime jurisdiction, and more particularly jurisdiction under the Suits in Admiralty Act, was not invoked earlier. The answer is quite simple, and does not involve any bad faith or dilatory motive, but simply, "He didn't think of it sooner."

It was only while doing legal research in the separate litigation involving the Lower Ninth Ward, and the barge owned by Ingram Barge Company in the care, custody and control of other parties, namely Civil Action Nos. 05-4237 and 05-4419, that exceptions to the administrative claims requirements of the Federal Tort Claims Act were discovered in an admiralty and maritime context under the Suits in Admiralty Act. (46 U.S.C. §741, et seq.). The Government has filed Motions to Dismiss the cases involving the Lower Ninth Ward, which clearly involve Ingram's barge and purely admiralty and maritime proceedings in which the barge owner is seeking exoneration from or limitation of liability, as well as allegations against non-governmental parties who had care, custody or control of the barge or who secured the barge prior to Hurricane KATRINA. In the course of researching the law in an attempt to defeat the Government's Motion to Dismiss those case, it became abundantly clear that the invocation of admiralty and maritime jurisdiction, and more particularly the Suits in Admiralty Act, would defeat the Government's Motions to Dismiss.[2] Accordingly, plaintiffs filed motions for leave to amend their pleadings as follows: in C.A. No. 05-4237 on March 1, 2006, Record

---

[2] Incidentally, the adverse admiralty and maritime law was not cited to the court by the Government in those cases.

Document No. 36; and in C.A. No. 05-4419 on March 2, 2006, Record Document No. 72.

Thereafter, while "thinking" about the pleadings which had been filed in C.A. Nos. 05-4237 and 05-4419 in the context of allegations that the Government had negligently designed, constructed, inspected and maintained an entire navigable waterway system, the Times Picayune ran a story on March 8, 2006, entitled: "CORPS IGNORED CRUCIAL LEVEE DATA". That newspaper article, which was attached to plaintiffs' original Memorandum in Support of their Motion to Supplement and Amend Complaint, reflected:

> "In 1965, Congress authorized the corps to develop a system to protect the New Orleans area from 'the most severe meteorological conditions that are considered reasonably characteristic of the region,' giving birth to the Lake Pontchartrain and Vicinity Hurricane Protection project.
>
> * * *
>
> Hassan Mashriqui, a storm surge modeler at LSU, said the increased intensity outlined in the 1979 report would have raised the predicted storm surge along the Mississippi River-Gulf Outlet from 22 feet to 30 feet. During Katrina much of St. Bernard Parish suffered catastrophic flooding when long sections of the 17.5-foot –high MR-GO levee were topped and collapsed by storm surges that the crops has measured at 18.5 feet.
>
> The Industrial Canal, meanwhile, was topped and collapsed by a peak storm surge that the corps measured at 15.9 feet. That breach destroyed much of the Lower 9th Ward and contributed to flooding in parts of St. Bernard Parish.
>
> It is unclear whether higher floodwalls would have prevented the breaches at the 17th Street and London Avenue canals that put much of the rest of New Orleans underwater. Forensic engineers working with the National Science Foundation have said weak soil layers beneath the floodwalls failed when the canals began filling with water, causing the breaches.

\* \* \*

>Other GAO reports indicate the corps actually was lowering its levee heights even as the new science was raising the heights of expected storm surges.

\* \* \*

>Neither the National Weather service nor corps officials could shed light on why the changed parameters were not reflected in the crops project specifications. A weather service spokesman said current staffers either were not at the agency then or were uninvolved in writing the reports."

After reading that, the thought immediately occurred to the undersigned that, if applicable to Civil Action Nos. 05-4237 and 05-4419, why wouldn't admiralty and maritime jurisdiction, and the Suits in Admiralty Act (insofar as the claims against the Government are concerned) not also be applicable to Civil Action No. 05-4181? After all, if New Orleans is viewed as a "bowl", then wouldn't one breach in a levee fill up the bowl until the breach was closed or the water level equalized on either side of the breach?

Accordingly, the very next day, March 9, 2006, a Motion for Leave to Supplement and Amend Complaint was drafted and filed in the Maureen O'Dwyer matter, C.A. No. 05-4181, as well. Predictably, many of the parties defendant in this case, none of whom concede that they are legally responsible for anything, notwithstanding their standing in elected and protective capacities to the innocent citizenry of the Greater New Orleans Metropolitan Area, have "squealed like stuck pigs". The Court is now faced with deciding a motion to be taken under submission on Wednesday, April 19, 2006, essentially rehashing law which was cited to Magistrate Judge Knowles previously, under facts which plaintiffs maintain are distinguishable from the authorities cited by those opposing plaintiffs' most recently sought amendment.

Plaintiffs are ever mindful of Magistrate Judge Knowles' admonishment that further amendments will not be allowed without good cause. Plaintiffs respectfully submit that they have presented good cause, because new facts about the inundation of the Greater New Orleans Metropolitan Area continue to be revealed. Further, all of the legal authorities cited by the parties opposing plaintiffs' motion for leave to amend are distinguishable from the facts presented in the case at bar.

<b><u>THE CASES CITED BY OPPOSING<br>PARTIES ARE DISTINGUISHABLE</u></b>

1) <u>Wimm v. Jack Eckard Corp.</u>, 3 F.3d 137 (5th Cir. 1993)

>The plaintiffs first sought leave to amend 33 months after a child's death, and 9 months after the action had been commenced, while a summary judgment (that's a Rule 56 motion for summary judgment, not a Rule 12(b) motion to dismiss) filed by the defendants was already pending. The Court found that the plaintiffs were aware of the factual basis for which they sought leave to amend for <u>more than one year prior to the action being filed</u>. Additionally, in the proposed amendment the plaintiffs asserted an entirely new, separate "mislabeling" claim, which constituted an entirely new and separate basis for recovery. The Court found as a matter of fact that the child did not receive a toxic amount of cough syrup. Also, the Court made a factual finding that the Government was prejudiced because the amendment would have required adding additional parties. Obviously, this case is distinguishable from the case at bar.

2) <u>Davis v. United States</u>, 961 F.2d 53 (5th Cir. 1991)

>The plaintiffs erroneously brought suit under the Federal Tort Claims Act, alleging breach of contract, which the FTCA does not provide relief for. As was the case in <u>Wimm</u>, supra, the plaintiffs filed their motion for leave to amend to avoid a motion for summary judgment, which had already been filed. The proposed amendment was not even attached to plaintiffs' motion for leave to amend, and alleged violations of constitutional rights, which also are not covered under the Federal Tort Claims Act. Obviously, this case is distinguishable from the case at bar.

3) <u>**Stafford v. Mobile Oil Corp.**</u>, 945 F.2d 803 (5th Cir. 1991)

>In this case, there was a specific finding of bad faith and dilatory motive in order to avoid summary judgment where the plaintiff alleged diversity jurisdiction by amendment, which was specifically contested by the defendants. Additionally, the plaintiff sought to "prove" diversity where diversity had not been pleaded, and the Court made a factual determination that there was no diversity. Accordingly, leave to amend was denied as futile. Obviously, this case is distinguishable from the case at bar.

4) <u>**Gregory v. Michell**</u>, 634 F.2d 199 (5th Cir. 1981)

>The facts relevant to this case, which was decided in 1981, had begun in 1974. Also, the plaintiffs' motion for leave to amend was filed only after motions to dismiss and/or for summary judgment had been <u>taken under submission</u>, and were framed so as to realign a party as a defendant in order to assert diversity jurisdiction. Obviously, this case is distinguishable from the case at bar.

5) <u>**Chitimacha Tribe of Louisiana v. Harry L. Laws Company, Inc.**</u>, 690 F.2d 1157 (5th Cir. 1982)

>The case's admittedly "complicated procedural history" began with the commencement of the action in July 1977. The plaintiffs' first amendment, with leave of Court, was not filed until July 1979, 2 years after the filing of the original complaint. A motion for leave to file the second amendment was filed in August 1979, and set for hearing in November. The day before the hearing, the plaintiffs filed a motion to recuse the District Judge. The action was then transferred to the Chief Judge, who ruled that an amendment to add Iberia Parish to the suit, not pleaded originally, was a gratuitous basis for attempting to qualify the District Judge. Obviously, this case is distinguishable from the case at bar.

6) <u>**Thompson v. Boggs**</u>, 33 F.3d 847 (7th Cir. 1994)

>This case involved a third amendment to assert an illegal seizure claim against one defendant, three years and nine months after the event, and <u>less than one month prior to the trial</u> being set to convene. The Court ruled that there was no abuse of discretion in denying leave to amend under those circumstances, which are far more egregious than the circumstances in the case at bar.

## **CONCLUSION**

Although undersigned counsel for plaintiffs would much prefer that the Court rule in his clients' favor on the motion before it, one admittedly distasteful alternative to his clients being denied substantive rights would be the filing of a new action, which would be a timely one, and there would be precious little the parties opposing plaintiffs' Motion for Leave to Supplement and Amend Complaint could do about it. This may yet happen, because the undersigned has promised the Untied States of America "an Easter Surprise". Perhaps the best course is for counsel opposing the subject motion to look to what Your Honor said and did in C.A. Nos. 05-4237 and 05-4419:

MOTIONS:

> (1) MOTIONS: Plaintiffs' Motion for Leave to File Supplemental and Amending Complaint, Record Doc. No. 90 (No. 36 in C.A. No. 05-4237)
>
> (2) Plaintiffs' Motion for Leave to Amend Answer and For Leave to Supplement and Amend Claim and Third-Party Complaint, Record Doc. No. 72

O R D E R E D:

> (1), (2): GRANTED. The policy of the Federal Rules of Civil procedure is liberal in favor of permitting amendment of pleadings, and the trial court's discretion is not broad enough to permit denial of leave to amend "unless there is a substantial reason" to do so. Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 598 (5th cir. 1981). Thus, leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), but "is by no means automatic." Wimm v. Jack Eckerd Corp., 3 F.2d 137, 139 (5th Cir. 1993) (quotation omitted). Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." Id.
>
> Weighing these factors militates in favor of granting these motions. The amendments to claims are being filed well before the August 29, 2006 deadline previously established by the court. Record Doc. No. 21. Under these circumstances, I find no undue delay, bad faith, dilatory motive or prejudice to the only party which opposes this motion, the United States. In addition, I cannot

determine on the current record that the motion is futile, an issue that in any event is more appropriately addressed by the district judge when she rules on the pending motion of the United States to dismiss. Record Doc. No. 88 (No. 32 in C.A. No. 05-4237). Accordingly, these motions are granted.

Undersigned counsel reiterates that he is not in bad faith, is not seeking leave to amend for purposes of delay or to retard the progress of this litigation, which he wants to move forward; nor is the proposed amendment an untimely or futile filing. It is respectfully submitted that plaintiff should be granted leave to supplement and amend their complaint for the 12th time.

Respectfully submitted,

**LAW OFFICES OF
ASHTON R. O'DWYER, JR.
Counsel for Plaintiffs**

By: _____
Ashton R. O'Dwyer, Jr.
In Proper Person
Bar No. 10166
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Telephone: (504) 561-6561
Facsimile: (504) 561-6560

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via facsimile this 11th day of April 2006.

_____