UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAVID J. KIRSCH and ALI HAGHIGHI, | * | CIVIL ACTION NO. |
| on behalf of themselves and all others | * | 05-6073 |
| similarly situated | * | DIVISION: K(2) |
| | * | |
| VERSUS | * | Judge Stanwood R. Duval, |
| | * | Jr. |
| BOH BROTHERS CONSTRUCTION CO., | * | |
| WASHINGTON GROUP INTERNATIONAL, INC., | * | Magistrate Judge Joseph C. |
| VIRGINIA WRECKING COMPANY, INC., | * | Wilkinson, Jr. |
| GULF GROUP, INC. OF FLORIDA, MODJESKI AND | * | |
| MASTERS, INC., C.R. PITTMAN CONSTRUCTION | * | |
| COMPANY, INC., PITTMAN CONSTRUCTION CO. | * | |
| OF LA, INC., BURK-KLEINPETER, INC., | * | |
| BURK-KLEINPETER, LLC., B&K CONSTRUCTION | * | |
| CO., INC., MILLER EXCAVATING SERVICES, INC., | * | |
| JAMES CONSTRUCTION GROUP, LLC, BOARD OF | * | |
| COMMISSIONERS FOR THE ORLEANS LEVEE | * | |
| DISTRICT, ST. PAUL FIRE AND MARINE | * | |
| INSURANCE COMPANY, THE CITY OF NEW | * | |
| ORLEANS, SEWERAGE AND WATER BOARD | * | |
| OF NEW ORLEANS, EUSTIS ENGINEERING | * | |
| COMPANY, INC. AND, LA DEPARTMENT OF | * | |
| TRANSPORTATION AND DEVELOPMENT | * | |

**************************************************

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO WASHINGTON GROUP'S MOTION FOR TRANSFER OF VENUE

NOW INTO COURT, through undersigned counsel, come Plaintiffs, David J. Kirsch, et al,

for the purpose of submitting this Memorandum in Opposition to the Motion For Transfer of Venue

filed by Defendant, Washington Group International, Inc., and state as follows:

## 1. INTRODUCTION

Defendant, Washington Group International, Inc., requested that this Honorable Court

transfer certain cases to the Middle District of Louisiana. Plaintiffs oppose the request to transfer

and respectfully suggest that it is not well taken and should be denied. Defendant, Orleans Levee

-1-

District, has recently filed a Motion which appears very similar to the Washington Group's Motion. Plaintiffs request that this Memorandum also be considered as an opposition to that motion.

Defendant presents no compelling arguments that these cases, which involve Plaintiffs from the Eastern District of Louisiana, which involve many Defendants from the Eastern District of Louisiana, and which involve an incident that took place in the Eastern District of Louisiana, should be uprooted and moved to another District. A review of the applicable factors indicates that the Eastern District is the favored forum.

The applicable statute regarding transfer of venue is 28 U.S.C. § 1404 (a). Under that statute, transfer should not be granted unless it will serve both the convenience of the parties and witnesses and the interests of justice. Here, transfer would serve neither.

The applicable factors to be considered regarding a motion to transfer venue were set forth by this Honorable Court in *Morgan v. Metropolitan Life Insurance Company,* 2003 WL 1903344 (E.D. La. 2003):

> [Private or] Convenience factors [which] include: (1) plaintiff's choice of forum; (2) convenience of the parties or witnesses; (3) place of the alleged wrong; (4) location of counsel; (5) cost of obtaining the attendance of witnesses; (6) accessibility and location of sources of proof; and (7) possibility of delay and prejudice if transfer is granted.
>
> Public interest factors [which] include (1) administrative difficulties caused by court congestions (2) local interest in adjudicating local disputes; (3) unfairness of burdening citizens of an unrelated forum with jury duty; and (4) avoidance of unnecessary problems in conflict of law.[1]

In the instant case, both the public and private factors mitigate overwhelmingly in favor of retaining the Eastern District of Louisiana as the forum for these cases.

---

[1] *Morgan* at page 2 quoting from *Hanby v. Shell Oil Company,* 144 F.Supp.2d 673,676 (E.D. Tex. 2001).

## 2. PLAINTIFFS' CHOICE OF FORUM FAVORS
## THE EASTERN DISTRICT OF LOUISIANA

The Plaintiffs' choice of forum favors the Eastern District of Louisiana. This factor has been

widely held to be a primary factor in transfer cases. As this Court recognized in *Morgan v.*

*Metropolitan Life Insurance Co.*, 2003 WL 1903344 (E.D. LA 2003), the Plaintiffs' choice of

forum is " highly esteemed" and is entitled to great weight. This is especially true if the district

chosen by Plaintiff is one in which he resides. *Morgan* at 2. See also *Time v. Manning*, 366

F.2d 690 (5th Cir. 1966); *Sorrels Steel Company, Inc.* 651 F.Supp. 623, 328 (S.D. Miss 1986).

Both the fact that Plaintiffs reside within the forum and the fact that the operative facts

occurred within the forum add to the weight given to Plaintiffs' choice of forum. *Morgan* at 3.

## 3. CONVENIENCE OF THE PARTIES AND WITNESSES
## FAVORS THE EASTERN DISTRICT OF LOUISIANA

The convenience of the parties and witnesses likewise favors the Eastern District of

Louisiana. Most or all of Plaintiffs in these matters are residents of the Eastern District of

Louisiana. Likewise, many of the Defendants are residents of the Eastern District. These include

governmental entities located in the Eastern District, such as the Board of Commissioners for the

Orleans Levee District, the City of New Orleans, and the Sewerage and Water Board of New

Orleans. Thus, the Eastern District most certainly is more convenient for the parties. Likewise,

the vast majority of the witnesses are likely to be from the Eastern District because this incident

occurred in the Eastern District and because so many of the parties are residents of the Eastern

District.

The only connection to the Middle District pointed out by Defendant is that they have an

agent for service of process located in Baton Rouge. This hardly counterbalances the numerous

connections that these cases have with the Eastern District of Louisiana. Thus, the convenience of

the parties and witnesses weighs heavily in favor of the Eastern District and against transfer.

## 4. PLACE OF ALLEGED WRONG FAVORS THE EASTERN DISTRICT OF LOUISIANA

The levee and flood wall breaches occurred in Orleans Parish and had effects in Orleans and Jefferson Parish. Both Parishes are within the Eastern District. This factor favors retaining these cases in the Eastern District of Louisiana.

## 5. LOCATION OF COUNSEL FAVORS THE EASTERN DISTRICT OF LOUISIANA[2]

Almost all of the attorneys for the parties that have made appearances thus far are from the Eastern District of Louisiana. Many are located within blocks of the Eastern District Courthouse in New Orleans. From the docket report, it appears that there are some attorneys from the Western District enrolled for the Sewerage and Water Board. However, even then, they are co-counsel with the New Orleans law firm. This factor favors retaining these cases in the Eastern District of Louisiana.

## 6. COST OF OBTAINING ATTENDANCE OF WITNESSES FAVORS THE EASTERN DISTRICT OF LOUISIANA

Since it is very likely that most of the witnesses reside within the Eastern District of Louisiana, the cost of obtaining their attendance likewise will favor the Eastern District. Defendants have certainly produced no evidence to show that obtaining the attendance of witnesses would be more cost effective or even as cost effective in the Middle District than in the Eastern District. This factor favors retaining these cases in the Eastern District of Louisiana.

---

[2] It is true that *In re: Horseshoe Entertainment*, 337 F.3d 429 (5th Cir. 2003), which was decided several months after *Morgan*, calls into question the propriety of using location of Counsel as one of the factors in the transfer inquiry. However, a close reading of the language in that case leaves open the question of whether the Fifth Circuit would preclude this factor in all cases. For these reasons, Plaintiffs include a brief discussion of this issue.

## 7. ACCESSIBILITY AND LOCATION OF THE SOURCES OF PROOF FAVOR THE EASTERN DISTRICT OF LOUISIANA

All of the physical structures, the levees and the flood walls are located in the Eastern District. The Plaintiffs' damaged properties are located within the Eastern District. Moreover, it is highly likely that the vast majority of the documentation evidence will be located within the Eastern District. This factor favors retaining these cases in the Eastern District of Louisiana.

## 8. POSSIBILITY OF DELAY AND PREJUDICE IF TRANSFER IS GRANTED FAVORS THE EASTERN DISTRICT OF LOUISIANA

Although this case is still in its early stages, it is inevitable that transfer would cause at least some delay. There have been numerous docket entries in the Eastern District. Transfer would mean physically moving files from New Orleans to Baton Rouge. It would also mean unnecessary work for the Clerks of both Courts and it would mean that a Middle District Judge would have to familiarize himself with documentation that this Court has already reviewed. This factor favors retaining these cases in the Eastern District of Louisiana.

## 9. ADMINISTRATIVE DIFFICULTIES CAUSED BY COURT CONGESTION FAVORS THE EASTERN DISTRICT OF LOUISIANA

Defendant attempts to argue that "transferring the consolidated cases to the Middle District will alleviate the potential for additional congestion in the Eastern District..." However, the Fifth Circuit has held in *In re: Horseshoe Entertainment,* 337 F.3d at 429 (5th Cir. 2003) that allegations regarding delay or prejudice are only considered in "rare and special circumstances" and then only if they are "established by clear and convincing evidence." *In re: Horseshoe Entertainment,* 337 F.3d at 434.

In this case, there is certainly no clear and convincing evidence that transfer to the Middle District of Louisiana will alleviate the potential for congestion. In fact, the evidence suggests that

the Middle District is much more congested than the Eastern District. Total cases pending per judge and length of time from filing to disposition are all much more favorable in the Eastern District than in the Middle District.

The official records indicate that the docket of the Eastern District is much less congested than the docket of the Middle District. The Judicial Caseload report for the Eastern District, attached hereto as Exhibit A, shows that, for the years 2000 through 2005, the number of pending cases was between 2,935 per year in 2000 and 5,326 per year in 2005. The Judicial Caseload report for the Middle District attached hereto as Exhibit B shows that during the same period, the number of pending cases in the Middle District was between 8,925 in 2000 and 9,642 in 2005.

This discrepancy is exacerbated by the fact that the Eastern District has 12 Judgeships while the Middle District has 3 Judgeships. Exhibit A shows that the total pending cases per Judge in the Eastern District was between 245 in 2000 and 444 in 2005. Exhibit B shows that, during the same period of time, the total pending cases per Judge was between 2,975 in 2000 and 3,214 in 2005.

Moreover, for civil cases, the median time from filing to disposition in the Eastern District was less than 10 months for every year between 2000 and 2005. In the Middle District, the median time from filing to disposition for the years 2000 to 2005 was more than 10 months for every year except 2002.

Thus, the records make it clear that the Eastern District has had and continues to have a less crowded and speedier docket than the Middle District. This factor favors retaining these cases in the Eastern District of Louisiana.

## 10. LOCAL INTEREST IN ADJUDICATING LOCAL DISPUTES FAVORS THE EASTERN DISTRICT OF LOUISIANA

The citizens of the Eastern District of Louisiana clearly have an interest in the handling of

these consolidated cases. The cases involve events that occurred within the Eastern District and are of interest to the citizens of the district. This factor favors retaining these cases in the Eastern District of Louisiana.

## 11. UNFAIRNESS OF BURDENING CITIZENS OF AN UNRELATED FORUM WITH JURY DUTY FAVORS THE EASTERN DISTRICT OF LOUISIANA

Clearly, this case involves uniquely Eastern District concerns. Defendant posits that the good citizens of the Middle District have been host to some of the people displaced from the Eastern District. This might be true to some extent (although Defendant presents no evidentiary proof or details regarding this proposition). However, that does not mean that these Middle District citizens should now be called upon to serve on a jury or otherwise get involved in this uniquely Eastern District case. This factor favors retaining these cases in the Eastern District of Louisiana.

## 12. AVOIDANCE OF UNNECESSARY PROBLEMS IN CONFLICT OF LAWS IS NEUTRAL

Because both the Eastern District and the Middle District sit in Louisiana, neither site presents any unique choice of law issues. This factor cannot be said to favor either venue and, thus, does not lend support to Defendant's request for transfer. This factor is neutral.

## 13. DEFENDANT HAS NOT SHOWN JUROR BIAS EXISTS OR THAT A FAIR MINDED JURY COULD NOT BE DRAWN FROM THE EASTERN DISTRICT OF LOUISIANA

Defendant argues that it may be impossible to empanel jurors who are free of bias or interest in this litigation. However, this argument is simply not well taken and must be rejected. Defendant offers no evidence that a fair and impartial jury cannot be seated in the Eastern District. In *Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 59 (N.D.N.Y. 1990), the court declined Plaintiff's request to simply "recognize" that juries in central Florida might be unduly friendly to Walt Disney World based on two magazine articles produced by Plaintiffs. The

court held that the evidence produced simply did "not establish that a fair minded jury could not be drawn from the Middle District of Florida."

In *Government of the Canal Zone v. Thrush*, 616 F.2d 188, 190 (5th Cir. 1980), the court held that although there were several newspaper articles, they did not exhibit bias of such nature as to require a change of venue. Likewise, in *Canual v. Oskoian*, 23 F.R.D. 307, 314 (R.I. 1959), the court held that transfer must be denied where "there has been no showing of any local sentiment at the present time that would preclude the defendants from having a fair and impartial trial."

Here, Defendant has not shown that an impartial jury cannot be drawn from the Eastern District, that they cannot receive a fair and impartial trial in the Eastern District , or that there exists bias of such a nature as to require a change of venue.

## 14. PLAINTIFFS ADOPT THE OPPOSITIONS FILED IN THE VODANOVICH AND LEBLANC CASES

Plaintiffs herein adopt the arguments contained in the oppositions previously filed by the Plaintiffs in the *Vodanovich v. Boh Bros.* (#05-4237) and *LeBlanc v. Boh Bros.* (#05-6227) cases.

## 15. CONCLUSION

The relevant factors overwhelmingly favor retaining these cases in the Eastern District of Louisiana. Defendant's Motion for Transfer of these cases to the Middle District should be denied.

**WHEREFORE**, Plaintiffs pray that the Motion for Transfer of Venue filed by Defendant, Washington Group International, Inc., (and the similar motion filed by Defendant, Orleans Levee District) be denied

Respectfully submitted,

HUGH P. LAMBERT (LSBA # 7933)
Lambert & Nelson, PLC
701 Magazine Street

-8-

New Orleans, Louisiana 70130
Telephone:    (504) 581-1750
Facsimile:    (504) 529-2931


## CERTIFICATE OF SERVICE

I hereby certify that I have on this 11th day of April, 2006, served a copy of the above and foregoing pleading on counsel for all parties to this action by U.S. Mail, properly addressed and first class postage prepaid, by hand delivery or by fax transmission.

_____
HUGH P. LAMBERT

Judicial Caseload Profile Report

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

## LOUISIANA EASTERN

### 12-MONTH PERIOD ENDING SEPTEMBER 30

| | | 2005 | 2004 | 2003 | 2002 | 2001 | 2000 | Numerical Standing U.S. | Numerical Standing Circuit |
|---|---|---|---|---|---|---|---|---|---|
| **OVERALL CASELOAD STATISTICS** | Filings* | 5,152 | 3,783 | 3,990 | 4,187 | 3,933 | 4,054 | | |
| | Terminations | 3,339 | 3,584 | 3,883 | 3,834 | 4,028 | 4,133 | | |
| | Pending | 5,326 | 3,526 | 3,324 | 3,213 | 2,855 | 2,935 | | |
| | % Change in Total Filings — Over Last Year | 36.2 | | | | | | 2 | 1 |
| | % Change in Total Filings — Over Earlier Years | | | 29.1 | 23.0 | 31.0 | 27.1 | 12 | 5 |
| | Number of Judgeships | 12 | 12 | 12 | 12 | 12 | 12 | | |
| | Vacant Judgeship Months** | .0 | .0 | .0 | 12.1 | 14.7 | .0 | | |
| **ACTIONS PER JUDGESHIP** | **FILINGS** Total | 429 | 316 | 332 | 348 | 328 | 338 | 53 | 8 |
| | Civil | 398 | 283 | 297 | 315 | 304 | 313 | 24 | 4 |
| | Criminal Felony | 24 | 25 | 27 | 26 | 24 | 25 | 94 | 9 |
| | Supervised Release Hearings** | 7 | 8 | 8 | 7 | - | - | 86 | 8 |
| | Pending Cases | 444 | 294 | 277 | 268 | 238 | 245 | 32 | 5 |
| | Weighted Filings** | 317 | 314 | 320 | 339 | 306 | 322 | 80 | 9 |
| | Terminations | 278 | 299 | 324 | 320 | 336 | 344 | 84 | 9 |
| | Trials Completed | 12 | 12 | 13 | 12 | 13 | 17 | 79 | 9 |
| **MEDIAN TIMES (months)** | From Filing to Disposition — Criminal Felony | 9.1 | 6.8 | 7.2 | 7.2 | 7.7 | 8.1 | 55 | 9 |
| | From Filing to Disposition — Civil** | 9.6 | 9.3 | 9.8 | 8.7 | 9.7 | 9.4 | 44 | 3 |
| | From Filing to Trial** (Civil Only) | 17.0 | 16.2 | 17.4 | 16.4 | 18.3 | 17.4 | 13 | 4 |
| | Civil Cases Over 3 Years Old** — Number | 314 | 225 | 40 | 21 | 16 | 30 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 6.2 | 6.9 | 1.3 | .7 | .6 | 1.1 | 56 | 8 |
| **OTHER** | Average Number of Felony Defendants Filed Per Case | 1.6 | 1.7 | 1.5 | 1.5 | 1.5 | 1.7 | | |
| | Jurors — Avg. Present for Jury Selection | 36.84 | 27.30 | 28.51 | 27.28 | 30.81 | 23.33 | | |
| | Jurors — Percent Not Selected or Challenged | 30.1 | 28.8 | 30.6 | 26.5 | 32.4 | 23.1 | | |

### 2005 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE

| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 4774 | 83 | 1938 | 655 | 10 | 51 | 105 | 413 | 880 | 87 | 361 | 1 | 190 |



EXHIBIT A

Judicial Caseload Profile Report

| Criminal* | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 289 | 6 | 68 | 22 | 73 | 52 | 17 | 5 | 11 | 7 | 10 | 7 | 11 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

# U.S. DISTRICT COURT – JUDICIAL CASELOAD PROFILE

**12-MONTH PERIOD ENDING SEPTEMBER 30**

## LOUISIANA MIDDLE

| | | | 2005 | 2004 | 2003 | 2002 | 2001 | 2000 | Numerical Standing U.S. | Numerical Standing Circuit |
|---|---|---|---|---|---|---|---|---|---|---|
| **OVERALL CASELOAD STATISTICS** | Filings* | | 1,651 | 1,286 | 1,272 | 1,424 | 1,294 | 1,205 | | |
| | Terminations | | 1,198 | 1,185 | 1,247 | 1,326 | 1,220 | 1,244 | | |
| | Pending | | 9,643 | 9,194 | 9,081 | 9,089 | 8,997 | 8,925 | | |
| | % Change in Total Filings | Over Last Year | 28.4 | | | | | | 3 | 2 |
| | | Over Earlier Years | | 29.8 | 15.9 | 27.6 | 37.0 | | 3 | 2 |
| | Number of Judgeships | | 3 | 3 | 3 | 3 | 3 | 3 | | |
| | Vacant Judgeship Months** | | .0 | .0 | .0 | .0 | .0 | 7.9 | | |
| **FILINGS / ACTIONS PER JUDGESHIP** | Total | | 550 | 428 | 424 | 475 | 431 | 402 | 18 | 4 |
| | Civil | | 474 | 359 | 339 | 432 | 368 | 345 | 8 | 2 |
| | Criminal Felony | | 67 | 58 | 83 | 40 | 63 | 57 | 54 | 4 |
| | Supervised Release Hearings** | | 9 | 11 | 2 | 3 | - | - | 82 | 6 |
| | Pending Cases | | 3,214 | 3,065 | 3,027 | 3,030 | 2,999 | 2,975 | 1 | 1 |
| | Weighted Filings** | | 526 | 416 | 420 | 471 | 438 | 391 | 25 | 4 |
| | Terminations | | 399 | 395 | 416 | 442 | 407 | 415 | 62 | 8 |
| | Trials Completed | | 50 | 42 | 32 | 18 | 11 | 9 | 1 | 1 |
| **MEDIAN TIMES (months)** | From Filing to Disposition | Criminal Felony | 8.3 | 8.8 | 8.0 | 7.1 | 7.6 | 7.1 | 42 | 6 |
| | | Civil** | 11.8 | 10.4 | 11.1 | 8.3 | 11.1 | 10.3 | 83 | 7 |
| | From Filing to Trial** (Civil Only) | | 40.0 | 43.0 | 26.0 | 25.5 | 37.0 | - | 81 | 9 |
| **OTHER** | Civil Cases Over 3 Years Old** | Number | 7,882 | 7,867 | 7,829 | 7,852 | 7,828 | 7,851 | | |
| | | Percentage | 85.2 | 88.9 | 89.3 | 88.1 | 88.9 | 89.7 | 94 | 9 |
| | Average Number of Felony Defendants Filed Per Case | | 1.0 | 1.2 | 1.1 | 1.1 | 1.1 | 1.2 | | |
| | Jurors | Avg. Present for Jury Selection | 23.58 | 29.69 | 28.92 | 29.19 | 23.61 | 61.05 | | |
| | | Percent Not Selected or Challenged | 7.7 | 20.4 | 26.1 | 18.7 | 16.0 | 58.7 | | |

## 2005 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE

| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 1421 | 25 | 81 | 338 | 8 | 10 | 472 | 111 | 160 | 12 | 140 | - | 64 |



EXHIBIT "B"

Judicial Caseload Profile Report

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

| Criminal* | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 201 | 3 | 28 | 2 | 78 | 68 | 1 | 4 | 2 | 2 | 3 | 1 | 9 |