FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 APR 11  P 4: 46

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANN VODANOVICH, ET AL. | § § | CIVIL ACTION NO.: 05-5237 |
| VERSUS | § § | SECTION "K" |
| BOH BROS. CONSTRUCTION CO., ET AL. | § § § | MAGISTRATE (2) |

| | | |
|---|---|---|
| BETH LEBLANC, ET AL. | § § | CIVIL ACTION NO.: 05-6227 |
| VERSUS | § § | SECTION "K" |
| BOH BROS. CONSTRUCTION CO., ET AL. | § § § | MAGISTRATE (2) |

**MEMORANDUM IN OPPOSITION TO WASHINGTON GROUP INTERNATIONAL, INC.'S MOTIONS TO RECUSE JUDGE JOSEPH C. WILKINSON, JR., AND JUDGE STANWOOD R. DUVAL, JR. PURSUANT TO 28 U.S.C. § 455(a)**

MAY IT PLEASE THE COURT:

### INTRODUCTION

Defendant Washington Group International, Inc. (WGI) has filed identical motions in the captioned cases to recuse both United States District Judge Stanwood R. Duval, Jr., and United States Magistrate Judge Joseph C. Wilkinson, Jr. The motions seek recusal pursuant to 28 U.S.C. § 455(a). Plaintiffs address both recusal motions in this single memorandum in opposition. WGI's motions lack merit and must be denied.

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No_____

## LAW AND ARGUMENT

". . . a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified."[1]

While it is true that "[e]ven though § 455 was intended to do away with the formal 'duty to sit' doctrine, the judge must still tread cautiously, recognizing, on the one hand, the great importance to the judicial institution of avoiding any appearance of partiality, while simultaneously remaining aware of the potential injustices that may arise out of unwarranted disqualification."[2] Unless WGI can demonstrate that a reasonable person knowing all of the circumstances would harbor doubts about Judge Duval's and Magistrate Judge Wilkinson's impartiality[3], then both judges remain qualified and should continue to preside over these cases.

The Fifth Circuit has recognized that § 455(a) claims are fact driven, and as a result, the analysis of a particular claim must be guided not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue.[4] Thus, while recusal may have been appropriate in

---

[1] *Laird v. Tatum*, 409 U.S. 824, 837, 93 S.Ct. 7, 15, 34 L.Ed.2d 50 (1972), *citing Edwards v. United States*, 334 F.2d 360, 362 (5th Cir. 1964); *Tynan v. United States*, 126 U.S.App.D.C. 206, 376 F.2d 761 (D.C. Cir.1967); *In re Union Leader Corporation*, 292 F.2d 381 (1st Cir. 1961); *Wolfson v. Palmieri*, 396 F.2d 121 (2nd Cir. 1968); *Simmons v. United States*, 302 F.2d 71 (3rd Cir. 1962); *United States v. Hoffa*, 382 F.2d 856 (6th Cir. 1967); *Tucker v. Kerner*, 186 F.2d 79 (7th Cir. 1950); *Walker v. Bishop*, 408 F.2d 1378 (8th Cir. 1969).

[2] *In re Allied-Signal, Inc.*, 891 F.2d 967, 970 (1st Cir. 1989) (*internal citations omitted*).

[3] See *United States v. Anderson*, 160 F.3d 231, 233 (5th Cir. 1998).

[4] See *United States v. Jordan*, 49 F. 3d 152, 157 (5th Cir. 1995).

2

*Nichols*[5] and *Nettles*[6] as cited in by WGI in its supporting memoranda, those decisions were driven by an independent examination of the unique facts of those particular cases. An independent examination of the unique facts in the instant case does not yield the same result. Indeed, even if comparison of this case to *Nichols* and *Nettles* were proper, the comparison would not be of "similar" cases—it would be more like comparing apples to oranges.

In *Nichols*, the Tenth Circuit, recognizing the *extraordinary circumstances* of the case held that a reasonable person could not help but harbor doubts about the impartiality of the judge.[7] Of course, it is those *extraordinary circumstances* that make *Nichols* different from the instant case. In *Nichols*, the defendant was on trial for the Oklahoma City terrorist bombing of the Alfred P. Murrah Federal Building. It was an intentional act of terrorism that in addition to killing 169 people and injuring many others caused horrendous damage during working hours to the courthouse itself including Judge Alley's courtroom and chambers. Such an act takes on the character of being personal—a criminal attack upon the judge, his courthouse, and his staff. Under such a scenario it is easy to see how a reasonable person might harbor doubts about the judge's ability to remain impartial.

The same holds true for the *Nettles* case. There the defendant was charged with attempting to purchase ammonium nitrate fertilizer in a plot to bomb the Dirksen Federal

---

[5] *Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995).

[6] *In re Nettles*, 394 F.3d 1001 (7th Cir. 2005).

[7] See *Nichols, supra.*, at 352.

3

Courthouse in downtown Chicago. The alleged crime involved a threat to the safety of all of the judges of the district court as well as those of the Seventh Circuit whose courtrooms and chambers were located in the same building. This was a *personal attack* upon the judges of the district court and the Seventh Circuit—an intentional act to destroy the courthouse and its occupants. To allow any of the judges to preside over the case would require that a reasonable person harbor no doubt that the *intended victims* of a murder plot could remain impartial while presiding over the trial of their would be assassin. Clearly, a reasonable person given those unique facts could not reach such a conclusion.

The instant case is decidedly different from both *Nichols*, and *Nettles*. Here, there are no allegations of intentional criminal acts directed at the courthouse, the judges, or their staffs. Indeed, what is alleged are negligent acts or failures to act occurring years ago that has resulted in a wide range of damage over a broad area. There is no allegation of a personal attack directed to the judges of the Eastern District. Indeed, when Katrina made landfall it is likely that all of the judges as well as their staffs had already evacuated the city, not as a result of the negligence of WGI or any other defendant, but rather as a result of the evacuation orders already in place as Katrina took aim on New Orleans. While it is true that the failure of the levees and flood walls that occurred after the storm had passed prevented the courthouse from reopening until November, this does not equate to the extraordinary circumstances found in *Nichols* and *Nettles*. WGI has failed to demonstrate that a reasonable person would harbor doubts about either judge's impartiality. Instead, WGI's suggestion that it would be reasonable to question the partiality of any judge sitting in the Eastern District relies heavily on comparison to recusals in other

"disaster" cases, and does nothing more than speculate and raise a suspicion of bias. However, the hypothetical "reasonable person" is not a hypersensitive[8] or cynical[9] person, or a person unduly suspicious or concerned about a trivial risk that a judge may be biased.[10] However, speculation, and opinions are not sufficient.[11] Rather the statute requires that a reasonable person knowing all of the facts and circumstances to harbor a doubt about the judge's impartiality.[12]

The facts and circumstances here do not give rise to any reasonable person harboring a doubt about the Judges' impartiality. As noted by WGI, Judge Duval has stated that he suffered no flood damage, that his daughter had only six inches of water and is satisfied with her recovery as is his courtroom deputy whose home was flooded in New Orleans east. Certainly these facts and circumstances, just like the facts and circumstances cited by WGI, must be considered by the reasonable outside observer. WGI has failed to demonstrate that a reasonable outside observer would harbor doubts about the judges impartiality, knowing that the failure of the levees and flood walls has had some affect on all citizens, but also knowing that Judge Duval suffered no flooding and that his family members and staff are satisfied with their recoveries. The same

---

[8] *Sensley v. Albritton,* 385 F.3d 591 (5th Cir. 2004); *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975 (7th Cir. 2001); *Hook v. McDade,* 89 F.3d 350 (7th Cir. 1996)

[9] *Sensley v. Albritton,* 385 F.3d 591 (5th Cir. 2004)

[10] *U.S. v. DeTemple,* 162 F.3d 279 (4th Cir. 1998).

[11] See *Hoffman v. Caterpillar, Inc.,* 368 F.3d 709, 64 Fed. R. Evid. Serv. 498, 58 Fed. R. Serv. 3d 432 (7th Cir. 2004); *Cauthon v. Rogers,* 116 F.3d 1334 (10th Cir. 1997); *Green v. Branson,* 108 F.3d 1296 (10th Cir. 1997).

[12] *United States v. Anderson, supra.*

holds true for Magistrate Judge Wilkinson who likewise suffered no flooding but has family members and a law clerk who did, all of whom appear to be satisfied with their insurance recoveries.

Finally, plaintiffs herein adopt the arguments advanced by the plaintiffs in *Berthelot v. Boh Bros.* (#05-4182), *Bradley v. Pittman Construction Co.* (#06-0225) and *Kirsch v. Boh Bros.* (#05-6073) cases.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court deny the Defendant's Motion for Disqualification.

Respectfully submitted,

BRUNO & BRUNO

BY: _____
JOSEPH M. BRUNO, #3604
DAVID S. SCALIA, #21369
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 581-1492

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all counsel of record by placing same in the United States Mail, properly addressed and postage prepaid, this 11th day of April, 2006.

_____
DAVID S. SCALIA