

*Re-file in Master Case 05-4182*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| RICHARD VANDERBROOK, MARY JANE SILVA, JAMES CAPELLA, SOPHIA GRANIER, JACK CAPELLA, AS THE EXECUTOR OF THE SUCCESSION OF LILLIAN CAPELLA, GREGORY JACKSON, PETER ASCANI III, AND ROBERT HARVEY **Plaintiffs** | CIVIL ACTION<br><br>NO. 05-6323<br><br>SECTION:  F<br><br>MAGISTRATE: 5 |

**VERSUS**

STATE FARM AND CASUALTY
COMPANY, KEMPER INSURANCE CO.,
HARTFORD INSURANCE COMPANY,
TRAVELERS INSURANCE COMPANY,
HANOVER INSURANCE COMPANY,
ST. PAUL TRAVELERS INSURANCE
COMPANY, AND THE BOARD OF
COMMISSIONERS FOR THE
ORLEANS LEVEE DISTRICT FOR
THE PARISH OF ORLEANS
                        **Defendants**

---

## MOTION AND INCORPORATED MEMORANDUM TO REMAND

**NOW INTO COURT**, through undersigned counsel, come plaintiffs Richard Vanderbrook,

*et al*, who move this Honorable Court to remand the above captioned matter back to the Civil

District Court for the Parish of Orleans, for the grounds set forth below:

____ Fee_____
____ Process_____
_X_ Dktd_____
____ CtRmDep_____
____ Doc. No._____

## THE PETITION FOR DAMAGES

### 1.

Plaintiffs filed suit in state court against the Board of Commissioners for the Orleans Levee District (hereinafter "Orleans Levee District" or "OLD") in addition to the above mentioned defendant insurance companies on October 14, 2005, raising solely state law allegations of negligence, solely against non-federal, non-diverse defendants.

### 2.

Complainants allege that the defendant, the OLD, was negligent in the following respects:

a.     Failing to inspect and monitor the levee during Katrina; and

c.     Failing to correct the break in the levee or warn others of the impending water intrusion, apparently absent from their post.

## DEFENDANT OLD'S GROUNDS FOR REMOVAL

### 3.

Defendant, OLD, bases its Removal on the following grounds:

a.     Federal officer jurisdiction under 28 U.S.C.A. 1442(a)(1); and

b.     Federal question jurisdiction under 28 U.S.C.A. 1331.

## DEFENDANT INSURERS' GROUNDS FOR REMOVAL

### 4.

Defendant insurers base their Removal on the following grounds:

2

a.      Diversity jurisdiction under 28 U.S.C.A. 1332(a) in conjunction with the alleged

fraudulent joinder of OLD;

b.      Federal question jurisdiction under 28 U.S.C.A. 1331, and supplemental

jurisdiction under 28 U.S.C.A. 1367.

## THE "OLD" IS NOT A FEDERAL OFFICER/ENTITY

### 5.

To invoke "federal officer" status under statute granting the right of removal, defendants are

required to  show that the OLD's actions were performed pursuant to federal officer's direct orders

or comprehensive and detailed regulations, and that the official must have had direct and detailed

control over defendant. 28 U.S.C.A. §1442(a)(1) As previously stated, the U.S. Corps of Engineers

did not direct the OLD to leave its post unattended.

### 6.

Direct and detailed control required to establish that private defendant "acted under" federal

officer, for purposes of federal officer removal, is established by showing strong government

involvement and the possibility that defendant could be sued in state court as a result of the federal

control. 28 U.S.C.A. § 1442(a)(1)

### 7.

The nexus requirement for federal officer is established by showing that the state action has

arisen out of the acts done by defendant under color of federal authority and in enforcement of federal law. 28 U.S.C.A. § 1442(a)(1) Those facts do not exist in the instant matter.

**8.**

Critical under statute granting the right of removal to federal officers if the extent to which defendant acted under federal direction at the time it was engaged in the conduct being sued upon. 28 U.S.C.A. § 1442(a)(1)

**9.**

There were no daily inspections of OLD's work or lack thereof by the U.S. Corps of Engineers in this case, unlike the *Miles* case relied upon by the removing defendants.

**10.**

In *Miles*, the federal contractor  undisputedly acted under the direction of the Corps of Engineers, and more particularly the chief engineer for the project in question. Also,  the Corps of Engineers performed **daily** inspections to ensure that the contracted work was being performed in compliance with the specifications of the Corps. Before performing each stage of the work, proposed construction methods were submitted which had to be approved by the Corps. *Miles*, 2004 WL 1794527 (E.D. La.) at *2, paragraph 2.

**11.**

No such evidence exists in the instant  matter as the project has been completed for many years and the Corps of Engineers has no daily control over the OLD. Interestingly the OLD attempts

to boot strap a project completed many years ago as "federal", by referring to an "Act of Assurance", not a contract, signed many years by the OLD in which they agree to "inspect" the levees bi-annually. As admitted to by the Corps of Engineers and the OLD recently, this inspection is nothing more than a brief drive-around visual of the levee system followed by an expensive lunch which took longer to eat than the inspection itself. Such loose requirements should not be allowed to create federal jurisdiction where none exists.

12.

The Orleans Levee District is not a branch of, nor is it under the authority of the U.S. Corps of Engineers as defendants assert in their Notice of Removal. Additionally, the U.S. Corps of Engineers has not been sued herein. More importantly the very "act of assurance" referred to by the OLD, states, in Paragraph (c) that it will "Hold and save the United States free from damages due to the construction works". (See attached "Act of Assurance", Exhibit A) Accordingly, the levee board should be estopped from any reference to this act of assurance as a basis for federal jurisdiction. Aside from the absolute immunity enjoyed by the Corps, the levee board could never sue the Corps for damages under the act of assurance. The position of the OLD would lead to absurd results if applied to all such transactions where federal entities partner funding. For example, the Louisiana RTA enjoys federal transportation funding. Thus, by the OLD's rationale, every accident involving the RTA could be characterized as removal under "federal question". That argument is illogical and as such, this matter should be remanded.

5

**13.**

The Orleans Levee District is defined by La. R.S. 38:281 as a political subdivision "organized

for the purpose and charged with the duty of constructing and maintaining levees, and all other things

incidental thereto within its territorial limits". It was not, and is not defined as an entity "created for

the purpose of coordinating and contracting with federal agencies for the design, installation, and

maintenance of flood control structures in Orleans Parish", as claimed by removing defendants.

### THERE IS NO FEDERAL QUESTION

**14.**

There is no federal question jurisdiction pursuant to 28 U.S.C. 1331 or pursuant to the

Federal Tort Claims Act. A motion to remove cannot be based upon suggested "implications" that

a non-named entity has been "implicated".

**15.**

The plaintiffs' allegations speak for themselves. The finder of fact need only make a factual

determination as to the validity of the allegations in the plaintiffs' petition. The OLD has failed to

third party the Corps of Engineers as a defendant, despite its claim that they are "necessarily

implicated" herein. If the OLD were to third party the Corps of Engineers, then this Honorable Court

would have a decision to make as to the validity of the third party claims. The plaintiffs have not

made any allegations that the Corps did anything wrong. While it appears to be the popular theory

6

at this time, the plaintiffs have absolutely no knowledge or facts of any wrong doing by the Corps of Engineers in failing to discover, warn, or correct the outfall canal walls once discovered. More specifically, the OLD has not cited a single act  by the Corps related to the recent hurricanes to support any implication in this suit. The alleged conclusions by the OLD relating to the Corps occurred over ten years ago and have absolutely nothing to do with the allegations in plaintiffs suit. To suggest the OLD cannot commit an independent act of negligence without implicating the Corps of Engineers is ludicrous.

The pleadings  do not warrant federal question jurisdiction.

## 16.

The removing defendants herein were not acting under any federal authority as officers of the United States or any Federal Agency thereof.  Moreover, there is no causal connection between the charged conduct and the asserted official authority. The removing  defendants do  not have a colorable defense under federal law.

## 17.

There is no causal connection between the OLD's alleged "federal duties" and the allegations contained in the complainants' petition herein. There is NO allegation seeking damages for the OLD's conduct "while acting under color of an officer or agency of the United States", as alleged in defendants' removal petition.

## THERE IS NO DIVERSITY JURISDICTION

### 18.

Defendants assert, in the Notice of Removal, that the OLD has been "fraudulently joined" to the lawsuit to defeat diversity jurisdiction. As this matter hinges upon the OLD's negligence and the subsequent actions leading up to the defendant insurers refusing coverage, all defendants are necessary and proper. Moreover, defendant insurers cannot claim fraudulent joinder in one breath and assert diversity jurisdiction in another.

## THE STATUTORY DUTIES OF THE "OLD"

### 19.

The OLD's Louisiana State duties, designated by Louisiana State statutes, are specifically within the realm of state law.

### 20.

The OLD is statutorily, in the Louisiana Statutes, charged with regular maintenance of the levee system, including the inspection and monitoring of levees during storms.

### 21.

According to Louisiana Revised Statutes 37:281(7), the "levee and drainage district" means a **political subdivision of this state** organized for the purpose and charged with the duty of

constructing and maintaining levees, drainage, and all other things incidental thereto within its territorial limits. (Emphasis added)

## 22.

The Louisiana Revised Statutes 38:301(A)(1) further provides that the Levee Boards and levee and drainage boards of this state may construct and maintain levees, drainage, and levee drainage, and do all other things incidental thereto. La. R.S. 38:301(A)(2) states that the levee boards and levee and drainage boards may do all drainage work incidental to or made necessary by the construction of the levee system in this or adjoining states. However, any construction project undertaken shall be in accordance with the provisions of R.S. 38:2211, *et seq.*

## 23.

The Powers of the Board of Commissioners of the Orleans Levee District is provided for in La. R.S. 38:307(A)(1). The Statute outlines that

> The board of commissioners of the Orleans Levee District shall have and exercise all and singular the powers now conferred upon that board by law, as well as such powers as are herein granted. The board shall have full and exclusive right, jurisdiction, power, and authority to locate, relocate, construct, maintain, extend, and improve levees, embankments, seawalls, jetties, breakwaters, water-basins, and other works in relation to such projects and to conduct all dredging operations necessary in connection therewith or incidental thereto along, over, and on the shores, bottom, and bed of Lake Pontchartrain in the parish of Orleans from its western boundary to the boundary line separating township 11 south, range 12 east, from township 11 south, range 13 east, at a distance not to exceed three miles from the present shore line, as the board may determine, and along and on the shores adjacent to the lake and along the canals connected therewith.

9

The levees, embankments, seawalls, jetties, breakwaters, waterbasins, and other works shall be of such character and extent and of such height, width, slope, design, and material as the board determines, with power and authority to improve and to protect the same with such other structures as are deemed necessary and proper by the board. All final plans and specifications covering and relating to works of a permanent nature shall be submitted to the office of public works or its successor for approval as to soundness of engineering practice and feasibility, but not as to form, extent of area, or detail and such plans and specifications shall be approved by the office of public works prior to their adoption by the levee board.

(2) The office of public works, or its successor, shall promptly and with all possible preference over other work pass upon the plans and specifications so submitted to it by the levee board.

B. (1) The board shall have the right, jurisdiction, power, and authority to plan, execute, and maintain all the works and all the phases of the projects and improvements undertaken hereunder.

(2) For the purpose of construction and administration the total area is divided into five zones as follows:

Zone 1. From New Basin Canal to Orleans Canal.
Zone 2. From Orleans Canal to Bayou St. John.
Zone 3. From Bayou St. John to London Avenue.
Zone 4. From London Avenue to Industrial Canal.
Zone 5. From Industrial Canal to lower limits of project.

(3) Except as to fill and flood and wave protection, these zones shall be completed one at a time, so that one zone shall be finished before another is begun; however, no work, except that connected with the construction and the creation of aviation fields, shall be commenced in Zone 5 until three Zones are completed.

10

C. (1) In the planning, designing, and executing of a project, the board shall have jurisdiction, power, and authority, within the territorial limits of the project, to dedicate to public use and to lay out, construct, embellish, and maintain a system of parks, beaches, tracts of lands, and streets, with the necessary and related or unrelated buildings and the usual adjuncts to the kind of development contemplated hereunder and to construct and equip and maintain playgrounds, places of amusement and entertainment, golf links, gymnasiums, swimming pools, bathing beaches, aviation fields, and other like places.

### 24.

The OLD is statutorily responsible for daily inspection of the levee(s) at issue. Although the U.S. Corps of Engineers assisted in the original *construction* of the levee, petitioners are not alleging any construction flaws or negligence upon the part of the U.S. Corps of Engineers. Moreover, an Act of Assurance does not constitute "direct and detailed control" over the OLD as is required by law for removal.

### 25.

The OLD's obligations to the complainants herein are governed by La. R.S. 38:281. As such, the OLD was not and is not acting under the direction of any officer or agency of the United States.

### THE "OLD" HAD GARDE OVER THE LEVEE

### 26.

Pursuant to Louisiana Civil Code article 2317, liability arises from the OLD's legal

11

relationship to the levee, a defect in which created an unreasonable risk of injury to others. That legal relationship, based on custody or "garde", is the obligation imposed by law on the thing's owner, or one who avails himself of it, to prevent it from causing damages to others.

27.

The things to which one has "garde" are those to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. *King v. Louviere*, 543 So. 2d 1327 (La. 1989).

28.

The OLD cannot deny that the Corps of Engineers had long since turned the levee project over to it for OLD's  exclusive ownership and state control via the Orleans Levee Board. At the completion of a construction project in which there is a state and federal partnership, the U.S. Corps of Engineers accepts the work as being in compliance with the Corps' design and specifications. At that point, the project is turned over to the OLD for maintenance as required by Louisiana State law using state tax dollars. All federal contributions toward the project ended when the construction of the levee system was completed over ten years ago. Accordingly, the OLD had garde over the levee system in question.[1]

---

[1] Please see attached affidavit of Stevan G. Spencer, Chief Engineer of the Board of Commissioners, OLD. (Exhibit "B") The affidavit was attached to another lawsuit against the OLD which was also removed using the same nexus of law, even though the factual allegations were different.

12

**29.**

In order to recover against a political subdivision under either a negligence or strict liability theory, a plaintiff must prove the following: (1) that the defendant owned or had custody of the thing which caused the damage; (2) that the thing was defective in that it created an unreasonable risk of harm to others; (3) the defendant had actual or constructive knowledge of the defect and failed to take corrective action within a reasonable time; and (4) that the defect was a cause-in-fact of the accident. *Haley v. Calcasieu Parish School Board*, 753 So. 2d 882 (La. App. 3 Cir. 12/8/99).

**30.**

The facts of the Petition for Damages clearly show that the four above-listed duty risk criteria have been met.

**31.**

In determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair; simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. *Bourquard v. Winn Dixie Louisiana, Inc.*, 900 So. 2d 131 (La. App. 5 Cir. 3/1/05)

**32.**

The OLD failed to repair an inherently faulty levee system, of which it had actual knowledge,

13

thus making the risk, and subsequent breach, of the 17th Street Canal a foreseeable and unreasonable risk of harm for plaintiffs. It is equally foreseeable that leaving the city during a storm would expose lives and property to water intrusion since the *only* entity with men and equipment responsible for repairing levee breaches, *"the levee board"*, had abandoned its post. In this instance if the levee breach, when it first occurred, was only 20 feet in width as reported, then it is more probable than not that the well trained and experienced 200 plus levee workers with massive amounts of equipment could have plugged or minimized the breach saving hundreds of lives and billions of dollars in property damage.

### 33.

Factors to be considered and weighed in determining whether a thing presents an unreasonable risk of harm are (1) the claims and interests of the parties; (2) the probability of the risk occurring; (3) the gravity of the consequences; (4) the burden of adequate precautions; (5) individual and societal rights and obligations; and (6) the social utility involved. *Sims v. Liberty Mutual Insurance Co.*, 897 So. 2d 834 (La. App. 3 Cir. 3/2/05).

### 34.

The instant matter hinges upon the OLD's statutory duties, the factors involved with an "unreasonable risk" and whether the OLD's departure from New Orleans constitutes negligence. As

14

such, this suit specifically relies upon state statutes and Louisiana jurisprudence and as such it should

be remanded to the Civil District Court.

## THE DEFENDANTS' CASES ARE DISTINGUISHABLE

### 35.

In *Mouton v. Flexitallic, Inc.*, 1999 WL225438 (E.D.La), the Honorable Thomas Porteous

addressed the *Lalonde* decision relied upon by defendants, as well as 28 U.S.C. 1442(a)(1). Judge

Porteous found that the defendants failed to establish a causal connection between the U.S. Navy's

direction pursuant to contracts with defendants, and the plaintiffs' claims due to the absence of

"express contractual government specifications..." *Mouton, id*, at *3.

### 36.

There is neither evidence nor allegations shown by removing defendants to show "express

contractual government specifications" that relate to complainants' allegations in the above

captioned suit.

### 37.

There are no contracts between the OLD and the U.S. government which define, determine,

or affect the OLD's obligations to the complainants in the above-captioned matter.

15

**38.**

The Petition for Damages expressly and unequivocally holds the OLD responsible for breaching its duty to Petitioners by failing to discover and correct the break or warn others of the impeding water intrusion. It is well known and reported by the Corps of Engineers that they were not notified of the breach until the day after the storm by the party responsible for notice,  the Orleans Levee Board.

**39.**

The OLD failed to warn petitioners and others including the Corps of Engineers, as it abandoned its post and sought refuge from the storm in Baton Rouge, safely securing equipment and funds, but not the welfare of the citizens it deserted. The president of the levee board felt it more important to arrange emergency payment of rent to his wife's  relative, than tend to the immediate discovery and repair of the levee breaches.

**40.**

The U.S. Corps of Engineers did not direct the OLD to evacuate from New Orleans. The Corp of Engineers does not own the levees or outfall canals, nor does it have a duty to monitor these during hurricanes. The levee board receives state and city tax dollars to carry out its state statutory duties.

**41.**

In the *Teague* case, cited by removing defendants herein, the defendant operated a dam **only**

pursuant to the terms of a **license** that was procured directly from the federal government and provided that he was "at all times...subject to the control of the Secretary of War under such rules and regulations as he may prescribe in the interests of navigation and flood control..." *Teague*, 279 F. Supp. at 704.

42.

In marked contrast, the OLD is <u>not</u> involved in a direct contract with the federal to provide specified products and services to the government. Thus, the OLD herein acted merely as a participant in a partially regulated area, a fact that does not provide a viable basis for removal under 28 U.S.C. 1442. *Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315 (S.D. Miss. 2003); *Guckin v. Nagle*, 259 F. Supp. 2d 406 (E.D. Penn. 2003) (Emphasis added)

43.

The removing defendants have cited no authority for their proposition that the OLD is entitled to a "federal government contractor" defense. There is little danger of the OLD being held liable for innocent conduct. Accordingly, this Honorable Court may not expand the claimed sovereign immunity dramatically by extending it to the OLD herein. *Richardson v. McKnight*, 521 U.S. 399, 117 S. Ct. 2100, 138 L. Ed. 2d 540 (1997); *United States v. Daniel, Mann, Johnson & Mendenhall*, 355 F. Supp. 1140 (9th Cir. 2004)

44.

In the *Boyle* case relied upon by the removing defendants, the defendant government

17

contractors had supplied equipment to the United States for military use. Removing defendants have cited no case in which any exception to the Federal Tort Claim Act's waiver of sovereign immunity has been held to bar or preempt claims against a contractor other than situations in which a defense contractor has provided allegedly defective products. Further, *Boyle* involved claims involving complex equipment acquired by the Government in its procurement process, which inevitably nuanced discretion and sophisticated judgments by military experts. *Boyle*, 487 U.S. 511, 108 S. Ct. 2510 [FN6].

45.

Plaintiffs' claims in this case do not involve any allegation that defendants supplied equipment, defective or otherwise, to the United States military. Therefore, the extension of the government contractor defense beyond its current boundaries is unwarranted. *Fisher v. Halliburton*, 2005 WL1562411 (S.D. Tex.)

46.

Federal law does NOT displace tort law when the matter at issue does not involve a **uniquely** federal interest. Federal law does NOT displace state tort law when there is no significant conflict between federal interest or policy, and the operation of state law. *Adams v. Alliant Techsystems, Inc.*, 201 F. Supp. 2d 700 (W.D. Va. 2002) (emphasis added)

47.

The "*Drawhorn*" case relied upon by the removing defendants, at 121 F. Supp. 561 (E.D.

18

Tex. 1954), has absolutely nothing to do with the Federal Tort Claims Act. The cited case was an action by a school district for alleged delinquent ad valorem taxes on realty. The only federal statute at issue was 15 U.S.C.A. 607. The holding in that case was that the school district could only tax real property of the defendant corporation and could not tax personal property. 121 F. Supp. 561, 565.

### 48.

Similarly, the *Grable* case relied upon by removing defendants is also inapplicable. First, unlike the plaintiffs in *Grable*, the Vanderbrook plaintiffs herein do not allege any fault on the part of the U.S. Corps of Engineers. In *Grable*, the plaintiffs alleged that the United States Internal Revenue Service failed to give *Grable* adequate notice of a tax sale. The Vanderbrook plaintiffs' allegations simply do not "necessarily raise federal issues".

### 49.

Federal preemption of state law does not lie unless it is the clear and manifest purpose of Congress. U.S.C.A. Const. Art. 6, cl. 2; *Myrick v. Freuhauf Corporation*, 13 F. 3d 1516 (11th Cir. 1994)

### 50.

The presumption exists that the only state action that is preempted by federal statute is that which Congress has clearly indicated is to be preempted. U.S.C.A. Const. Art. 6, cl. 2; *Myrick v. Freuhauf Corporation*, 13 F. 3d 1516 (11th Cir. 1994)

### 51.

There is no "implied" preemption in the law. *Myrick v. Freuhauf Corporation*, 13 F. 3d 1516 (11th Cir. 1994). Further, there is no general inherent conflict between the alleged federal preemption and the state law damage action at issue herein. Therefore, even under the *Cipollone* case relied upon by the removing defendants, there is no federal question jurisdiction. *Myrick, id.*, at 1529, citing *Cipollone* at 112 S.C.t at 2618.

### DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROOF FOR REMOVAL

### 52.

The burden of proof for establishing federal jurisdiction is placed upon the party seeking removal. *Willy v. Coastal Corp.*, 855 F. 2d 1160, 1164 (5th Cir. 1998)

### 53.

The nature of removal jurisdiction is a method of transferring into federal court a state court suit containing a federal jurisdiction ground. It also lies in the balance between federal and state judicial power-a balance that requires the federal courts to give "[d]ue regard for the rightful independence of state governments" and to "scrupulously confine their own jurisdiction to the precise limits which the statute has defined". *Romero v. International Terminal Operating Company*, 358 U.S. 354, 79 S. Ct. 468 (1959).

**54.**

Especially when the ground for removal is not contained in the plaintiff's own complaint, as it IS NOT in the instant suit, it preserves the plaintiff's right to choose a state forum. Accordingly, federal courts must carefully scrutinize the bounds of removal. *Spencer v. Orleans Levee Board, et al*, 737 F. 2d 435 (5 Cir. 7/3/84).

**55.**

Removal jurisdiction, when challenged by a motion to remand, must be clearly demonstrated and if there are significant doubts about its propriety, those doubts must be resolved against removal. 28 U.S.C.A. §§ 1441(b), 1442(a).

**56.**

The rules for determining if a court has federal jurisdiction are well established. First, federal law must be an essential element of the plaintiff's cause of action. *Gully v. First National Bank in Meridian*, 229 U.S. 109, 57 S. Ct. 96 (1936). Second, the federal question that is the predicate for removal "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal". *Id.*

**57.**

The federal question raised must be a substantial one. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372 (1974). Additionally, the party seeking removal bears the burden of satisfying each pre-condition. *Phillips Petroleum Company v. Texaco, Inc.*, 415 U.S. 125, 94 S. Ct. 1002 (1974)

**58**.

Moreover, it has been held that while the federal removal statutes should be construed to effect their purpose of maintaining the supremacy of federal law, they should be interpreted with the highest regard for the right of the states to make and enforce their own laws in fields belonging to them under the Constitution. *Dixon v. Georgia Indigent Legal Services, Inc.*, 388 F. Supp. 1156, (S.D.Ga. 1974) aff'd, 532 F. 2d 1373 (5 Cir. 1976).

**59.**

Federal courts are of limited jurisdiction and removal is improper unless and until federal jurisdiction can be established.

**60.**

Defendants have failed to assert the proper federal jurisdiction to warrant the removal of this action.

**61.**

In the interest of avoiding unintended encroachment on the authority of States, a court interpreting a federal statute pertaining to subjects traditionally governed by state law must be reluctant to find federal preemption. U.S.C.A. Const. Art. 6, cl. 2; *Myrick v. Freuhauf Corporation*, 13 F. 3d 1516 (11th Cir. 1994)

**62.**

Absent evidence that the OLD was acting pursuant to federal direction in neglecting their

22

duties as alleged in the plaintiffs' petition herein, removal was inappropriate in the above captioned matter. *Transitional Hospitals Corporation of Louisiana, Inc. v. Louisiana Health Service & Indemnity Company*, 2002 WL 1768893 (E.D.La.)

63.

A simple reading of the plaintiffs' claims herein refutes the removing defendants's claim that the Corps of Engineers is a necessary party herein. If that were true, then the OLD certainly would have third partied the Corps into this suit. In addition, the removing defendant failed to cite a single case to support that proposition. This is a state law matter and should be remanded.

**CONCLUSION**

64.

There is no federal question involved in the above captioned matter;  the Orleans Levee District is a state created entity and is not a "federal officer" either pursuant to federal statute or applicable jurisprudence and case law; and as the OLD is a defendant, there is no diversity jurisdiction.

This Honorable Court lacks subject matter jurisdiction pursuant to 28 U.S.C. 1331, 28 U.S.C. 1442, or any other federal statute or basis for federal jurisdiction.

23

**WHEREFORE**, plaintiffs, Richard Vanderbrook, *et al*, move this Honorable Court to remand the above captioned matter to the Civil District Court for the Parish of Orleans, where it was properly filed, and where it properly belongs.

Respectfully submitted,

**Robert G. Harvey, Sr. # 18615**
2609 Canal St., Fifth Floor
New Orleans, LA 70119
Tel.: (504) 822-2136

**TEMPORARY ADDRESS**
3431 Prytania Street
New Orleans, LA 70115
Tel.: (504) 895-3431
Fax: (504) 895-1312

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of February 2006 that I have served a copy of the above and foregoing pleading on all counsel of record via US mail, postage prepaid, properly addressed.

**ROBERT G. HARVEY, SR.**

24

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RICHARD VANDERBROOK, MARY JANE SILVA, JAMES CAPELLA, SOPHIA GRANIER, JACK CAPELLA, AS THE EXECUTOR OF THE SUCCESSION OF LILLIAN CAPELLA, GREGORY JACKSON, PETER ASCANI III, AND ROBERT HARVEY<br>         Plaintiffs | CIVIL ACTION<br><br>NO. 05-6323<br><br>SECTION: F<br><br>MAGISTRATE: 5 |

VERSUS

STATE FARM AND CASUALTY
COMPANY, KEMPER INSURANCE CO.,
HARTFORD INSURANCE COMPANY,
TRAVELERS INSURANCE COMPANY,
HANOVER INSURANCE COMPANY,
ST. PAUL TRAVELERS INSURANCE
COMPANY, AND THE BOARD OF
COMMISSIONERS FOR THE
ORLEANS LEVEE DISTRICT FOR
THE PARISH OF ORLEANS
         Defendants

---

## ORDER

**CONSIDERING THE FOREGOING MOTION TO REMAND**, it is hereby ORDERED

that United States District Court Civil Action Number 05-6323 be remanded to the Civil District

Court for the Parish of Orleans.

NEW ORLEANS, LOUISIANA, this _____ day of _____, 2006.

_____
**UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF LOUISIANA**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

RICHARD VANDERBROOK, MARY                         CIVIL ACTION
JANE SILVA, JAMES CAPELLA,
SOPHIA GRANIER, JACK CAPELLA,                      NO. 05-6323
AS THE EXECUTOR OF THE SUCCESSION
OF LILLIAN CAPELLA, GREGORY JACKSON,               SECTION: F
PETER ASCANI III, AND ROBERT HARVEY
                    Plaintiffs                     MAGISTRATE: 5

VERSUS

STATE FARM AND CASUALTY
COMPANY, KEMPER INSURANCE CO.,
HARTFORD INSURANCE COMPANY,
TRAVELERS INSURANCE COMPANY,
HANOVER INSURANCE COMPANY,
ST. PAUL TRAVELERS INSURANCE
COMPANY, AND THE BOARD OF
COMMISSIONERS FOR THE
ORLEANS LEVEE DISTRICT FOR
THE PARISH OF ORLEANS
                    Defendants

---

## NOTICE

To:     Wayne Lee
        546 Carondelet Street
        New Orleans, LA 70130

        Ralph S, Hubbard, III
        601 Poydras Street, Suite 2775
        New Orleans, LA 70130

Christopher W. Martin
808 Travis Street, Suite 1800
Houston, Texas 77002

Paul E. B. Glad
7800 Sears Tower
Chicago, IL 60606

Neil Abramson
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534

Thomas P. Anzelmo
3445 N. Causeway Blvd., Suite 800
Metairie, LA 70002

James L. Pate
One Petroleum Center, Suite 200
1001 West Pinhook Road, Suite 200
Post Office Drawer 52828
Lafayette, LA 70505-2828

**PLEASE TAKE NOTICE** that the foregoing Plaintiff's Motion for Remand shall be set

for hearing on the 22nd day of March 2006, at 10:00 o'clock a..m. in Section F of the United

States District Court, 500 Camp Street, New Orleans, Louisiana.


Respectfully submitted,


Robert G. Harvey, Sr. # 18615
2609 Canal St., Fifth Floor
New Orleans, LA 70119
Tel.: (504) 822-2136

**TEMPORARY ADDRESS**
3431 Prytania Street
New Orleans, LA 70115
Tel.: (504) 895-3431
Fax: (504) 895-1312

ACT OF ASSURANCE

UNITED STATES OF AMERICA
STATE OF LOUISIANA
PARISH OF ORLEANS

BE IT KNOWN, That on this 28th

day of the month of July

of the Year of Our Lord, One

Thousand Nine Hundred and Sixty-

Six .

BEFORE ME, _____ James E. Glancey, Jr. _____, a Notary Public, duly
commissioned and qualified, in and for the Parish of Orleans, State of Louisi-
ana, and in the presence of the witnesses hereinafter named and undersigned,

CAME AND APPEARED the Board of Commissioners of the Orleans Levee Dis-
trict, represented herein by _____ Milton E. Dupuy _____, its President,
pursuant to and by virtue of the provisions of a resolution adopted by the
said Board of Commissioners of the Orleans Levee District on the 28th day of
_____ July _____ 1966 , a duly certified copy of such resolution being
annexed hereto and made a part hereof, paraphed "Ne Varietur" of this date by
me, Notary, to identify same herewith, who declared that, in accordance with
the said resolution and pursuant thereto, he, the said President of the Board
of Commissioners of the Orleans Levee District, has assured and does hereby
assure the Secretary of the Army of the United States that the said Board of
Commissioners of the Orleans Levee District is authorized and empowered to
comply with all the required conditions of local cooperation for the said Lake
Pontchartrain and Vicinity, Louisiana, Project, Barrier Plan, and that it will
participate in said project to the extent that it will, without cost to the
United States;

   (a) Provide all lands, easements, and rights-of-way, including
borrow and spoil-disposal areas necessary for construction, opera-
tion, and maintenance of the project;

   (b) Accomplish all necessary alterations and relocations to
roads, railroads, pipelines, cables, wharves, drainage structures,
and other facilities required by the construction of the project;

   (c) Hold and save the United States free from damages due to
the construction works;

   (d) Bear 30 percent of the first cost, to consist of the fair
market value of the items listed in subparagraphs (a) and (b) above
and a cash contribution as presently estimated below, to be paid
either in a lump sum prior to initiation of construction or in
installments at least annually in proportion to the Federal appro-
priation prior to start of pertinent work items, in accordance with
construction schedules as required by the Chief of Engineers, or;





as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined:

| Project | Total contribution for construction | Lands and relocations | Cash contribution for construction |
|---|---|---|---|
| Lake Pontchartrain barrier plan | $28,940,400 | $6,241,100 | $22,699,300 |

(e)  Provide an additional cash contribution equivalent to the estimated capitalized value of maintenance and operation of the Rigolets navigation lock and channel to be undertaken by the United States, presently estimated at $3,816,000, the final determination to be made after construction is complete, said amount to be paid either in a lump sum prior to initiation of construction of the barrier or in installments at least annually in proportion to the Federal appropriation for construction of the barrier;

(f)  Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

(g)  Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, seawalls, and stoplog structures, but excluding the Rigolets navigation lock and its appurtenant navigation channels and the modified dual purpose Seabrook lock; and

(h)  Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly.

THUS DONE AND PASSED in my office at ___New Orleans___

Louisiana, on the day and date hereinabove set forth in the presence of

___Mary H. Brown___  and  ___Barbara A. Faller___

competent witnesses, who hereunto sign their names, together with appearer and me, said Notary, after due reading of the whole.

WITNESSES:

*Mary H Brown*

*Barbara Faller*

*James E Glancy Jr*

NOTARY PUBLIC

My commission is issued for life.

(SEAL)

BOARD OF COMMISSIONERS
ORLEANS LEVEE DISTRICT

BY: _____
            PRESIDENT

APPROVED

30 September 1966
            Date

_____
Chief, Real Estate Division

2

STATE OF LOUISIANA

PARISH OF ORLEANS

    I, _____James E. Glancey, Jr._____, being the duly elected, qualified and acting Secretary of the Board of Commissioners of the Orleans Levee District, aforesaid, do hereby certify that the above and foregoing is a true and correct copy of a resolution adopted at a meeting of the Board of Commissioners of the Orleans Levee District held on ____July 28_____ 1966, in connection with the giving of the Secretary of the Army required assurances of local cooperation for the construction, maintenance and operation of Lake Pontchartrain and Vicinity, Louisiana, Project, and that the original minutes appear of record in my office in Minute Book __26__, from which the above has been taken and compared.

    IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Board of Commissioners of the Orleans Levee District this _28th_ day of ___July_____ 1966.

_James E. Glancey Jr._
SECRETARY

(SEAL)

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT HARVEY, DARLEEN JACOBS LEVY, AND SUSAN AND WILLIAM LAURENDINE | * * * | CIVIL ACTION NO. 05-4568 |
| **Plaintiffs** | * | SECTION "R" |
| VERSUS | * * | JUDGE VANCE |
| | * | MAGISTRATE NO. 2 |
| THE BOARD OF COMMISSIONERS FOR THE ORLEANS LEVEE DISTRICT, PARISH OF ORLEANS | * * * | MAGISTRATE WILKINSON |
| **Defendant** | * | A JURY IS DEMANDED |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### AFFIDAVIT

STATE OF LOUISIANA

PARISH OF JEFFERSON

**BEFORE ME,** the undersigned authority, personally came and appeared

STEVAN G. SPENCER, P.E.

who, after being duly sworn and based on personal knowledge did depose and say that:

1.

Affiant employed by the Board of the Commissioners of the Orleans Levee District (hereinafter "OLD"), as Chief Engineer,  a position he has held since April, 1993.

2.

Affiant has been employed by the Orleans Levee District since April, 1993.

- 1 -



PLAINTIFF'S EXHIBIT B

3.

The information contained in this affidavit is based on the knowledge Affiant gained as a result of his involvement and experience with OLD.

4.

The United States Army Corps of Engineers (hereinafter "Corps") conducts inspections and construction management during the construction of flood control structures to ensure that the flood control structures are built in accordance with the Corps' designs and specifications.

5.

The Corps, at the completion of construction work on a flood control project, accepts the work as being in compliance with the Corps' designs and specifications.

6.

In regards to the maintenance of the levees in Orleans Parish, the Corps requires the OLD to maintain said levees in accordance with the assurance agreements.

7.

The Corps conducts an annual inspection of the levees and flood control structures in Orleans Parish to determine if the levees are maintained in accordance with the Corps' regulations.

8.

After conducting the annual inspection the Corps has issued to OLD a rating of "Outstanding." Copies of the Corps' "Outstanding" ratings for 2000-2004 are attached as Exhibit A *in globo*.

9.

The Corps would review all submissions and, as it found necessary, revise, reject, modify or

- 2 -

make suggestions to any proposed designs, specifications or plans for levees/flood control structures that were submitted by independent consultants to the Corps.

10.

The Corps would not use any designs, specifications or plans for levees/flood control structures from any independent consultants on a flood control project without the Corps carefully reviewing, analyzing, approving and signing off on said designs, specifications or plans.

11.

Attached as Exhibit B is a true and correct copy of excerpts from the Corps' General Design Memorandum No. 19A for the London Avenue Outfall Canal.

12.

Attached as Exhibit C is a true and correct copy of excerpts from the Corps' General Design Memorandum No. 20 for the 17th Street Outfall Canal.

13.

Attached as Exhibit D is a true and correct copy of excerpts from the Corps' General Design Memorandum No. 13.

14.

Attached as Exhibit E is a true and correct copy of excerpts from the Corps' Solicitation for bids for work on the London Avenue Outfall Canal.

-  3  -

15.

Attached as Exhibit E is a true and correct copy of excerpts from the Corps' final specifications to be used in the solicitation for bids for work on the 17th Street Outfall Canal.

STEVAN G. SPENCER, P.E.

SWORN TO AND SUBSCRIBED

BEFORE ME, THIS 17th DAY

OF _November_, 2005.

NOTARY PUBLIC

Kyle P. Kirsch
Bar Roll # 26363

- 4 -