

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED
APR 11 2006
LORETTA G. WHYTE
CLERK

Refile in master case #05-4182

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN -6 PM 1:59

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MAUREEN V. O"DWYER | * | CIVIL ACTION |
| VERSUS | * | NO. 05-4181 |
| THE UNITED STATES OF AMERICA, ET AL | * | SECTION "K" |

*   *   *   *   *   *   *   *

## MOTION TO DISMISS FOR WANT OF STANDING OR, ALTERNATIVELY, PURSUANT TO FRCP 12(b)(1), FRCP 12(b)(6) AND FRCP 11 (b)(2) WITH INCORPORATED MEMORANDUM IN SUPPORT THEREOF

**MAY IT PLEASE THE COURT:**

Defendants, the City of New Orleans, the Honorable C. Ray Nagin, Mayor, and former Superintendent of Police Edwin Compass, III, respectfully submit that Plaintiffs' Complaint (1) fails to establish that Plaintiffs' have standing before this Court, (2) fails to formerly aver the basis for, and that the court otherwise lacks jurisdiction over Plaintiffs' claims, (3) fails to assert a cause of action against these particular defendants, and (4) asserts claims that are legally and in all other respects frivolous.[1]

Accordingly, defendants herein respectfully pray that Plaintiffs' Complaint be dismissed as against these defendants with prejudice.

---

[1]   There are other obvious challenges that may be made regarding the sufficiency of Plaintiffs' Complaint, most notably with regard to the proper certification of the alleged class, which Defendants reserve the right to pursue at another time if necessary.

Fee
Process
X   Dktd
CtRmDep
Doc. No

## LAW AND ARGUMENT

First, Plaintiffs have failed to properly establish standing before the Court. Second, Plaintiffs' Complaint *prima facia* fails to aver the basis for the Court's jurisdiction or allege a non-frivolous case or controversy that arises out of federal law, and therefore ought to dismissed pursuant to FRCP 12(b)(1). Third, and alternatively, the Plaintiffs' Complaint, *prima facie*, accepting every allegation to be true and resolving any doubt in favor of maintaining Plaintiffs' action, fails to state a cause of action against these Defendants, as Plaintiffs have failed to allege that they were deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States, or which federal law was violated, and the Complaint may therefore be properly dismissed pursuant to FRCP 12(b)(6). Fourth, and in the further alternative, Plaintiff's claims are legally frivolous and therefore may properly be dismissed for failure to comply with Rule 11(b)(2) in that Plaintiff does not supply the Court with a basis for subject matter jurisdiction and the allegations are otherwise without legal merit.

## I.   PLAINTIFFS' ALLEGATIONS AS AGAINST THE CITY DEFENDANTS

In Paragraph IV. of Plaintiffs' Original Complaint, Plaintiffs appear to set forth the basis for the Court's supposed jurisdiction over their claims. Plaintiffs submit that "[t]his Court is the exclusive Court of competent jurisdiction over the United States of America. This Court has ancillary or pendent jurisdiction over the remaining defendants."

In Paragraph V. of Plaintiff's Original Complaint, Plaintiffs set forth their claims for relief. Plaintiffs appear to allege the following as against the City defendants: **(1)** Mayor Nagin and Superintendent Compass failed to have "urban terrorists" convicted and incarcerated

before the approach of Hurricane Katrina; **(2)** the City and the Mayor had on hand 6,000 body bags and ordered 25,000 more; **(3)** the use of the word or term "body-bag" was an embarrassment to civilized society; **(4)** the Defendants should have prepared for Hurricane Katrina by preparing and formulating a contingency plan, or, if one existed, should have followed it; **(5)** Mayor Nagin failed to invoke "posse comitatus" status resulting in "government sponsored urban terrorism;" **(6)** Governor Blanco and Mayor Nagin failed to order evacuation of critical care patients in hospitals, nursing homes, etc.; **(7)** Mayor Nagin and Superintendent Compass should have prevented drugs from pouring into the city before the storm; and **(8)** that Nagin's alleged statement that the Superdome was so "trashed" that it would have to be destroyed demonstrates incompetence.

Plaintiffs then set forth the alleged causes of action in no particular order and not directed to any particular defendant. Based on the allegations set forth above, Defendants will assume, *arguendo*, that Plaintiffs intended to allege the following causes as against these Defendants: **(1)** failure to order the timely evacuation of critical care patients; **(2)** failure to protect the public from marauding bands of convicted felons (again, if arguably directed at these Defendants).

Plaintiffs, as Defendants just came to realize on the day of the drafting of this Motion, have filed Seven Supplemental and Amending Complaints. Only in Plaintiffs' Fourth Supplemental and Amending Pleading do Plaintiffs set forth any arguably new claims or causes of action against these Defendants. In Paragraph IV., Plaintiffs aver **(1)** that Mayor Nagin abandoned his post and settled his family in Dallas, Texas, **(2)** that Mayor Nagin, at some unspecified time, failed to exercise leadership to effect the repeal of the "residency

requirement" for the N.O.P.D., which resulted in the competency of the N.O.P.D. being

compromised, the standards being lowered, and the manpower shortened, **(3)** that Mayor

Nagin continues to plot the return of the "large underclass" to the City of New Orleans to the

detriment of Plaintiffs, and **(4)** that a "nickname" given to the former Superintendent of Police,

Edwin Compass, continues to embarrass the City.

## II.   PLAINTIFFS HAVE FAILED TO ESTABLISH STANDING

"The doctrine of standing encompasses both constitutional and statutory

considerations. Constitutional standing requirements must be satisfied in every federal case.

The Article III "cases and controversies" limitation on federal court jurisdiction requires the

party who invokes the court's authority to show (1) actual or threatened injury (2) suffered as a

result of the allegedly illegal conduct of the defendant, which (3) fairly can be traced to the

challenged action and (4) is likely to be redressed by a favorable decision." *Salmon River

Concerned Citizens, et al., v. Dale Robertson,* 32 F.3d 1346, 1353-54 (9th Cir. 1994); *citing Valley

Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464,

472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

The Supreme Court has summarized these requirements as follows:

> "Over the years, our cases have established that the irreducible
> constitutional minimum of standing contains three elements: First, the
> plaintiff must have suffered an "injury in fact"--an invasion of a legally-
> protected interest which is (a) concrete and particularized; and (b) "actual
> or imminent, not 'conjectural' or 'hypothetical,' " *Whitmore v. Arkansas,* 495
> U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990)(quoting *Los
> Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675
> (1983)). Second, there must be a causal connection between the injury and
> the conduct complained of--the injury has to be "fairly ... trace[able] to the
> challenged action of the defendant, and not ... th[e] result [of] the
> independent action of some third party not before the court." *Simon v.*

> *Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926,
> 48 L.Ed.2d 450 (1976). Third, it must be "likely," as opposed to merely
> "speculative," that the injury will be "redressed by a favorable decision."
> *Id.* at 38, 43, 96 S.Ct. at 1924, 1926.  The party invoking federal jurisdiction
> bears the burden of establishing these elements. Since they are not mere
> pleading requirements but rather an indispensable part of the plaintiff's
> case, each element must be supported in the same way as any other matter
> on which the plaintiff bears the burden of proof, *i.e.,* with the manner and
> degree of evidence required at the successive stages of the litigation.

*Id.,* at 1353-54; *citing Lujan v. Defenders of Wildlife,* 504 U.S. 555 – 112 S.Ct. 2130, 119 L.Ed.2d 351

(1992)(some citations omitted) (footnote omitted).

In the case *sub judice,* Plaintiffs have simply failed to meet any of the above

requirements to establish standing before this Court.  First, Plaintiffs have failed to allege an

invasion of a protected interest that is by any means concrete or particularized.   The

allegations set forth in Plaintiffs' Complaint, especially as they pertain to these Defendants, are

not merely speculative or conjectural, but in most instances incoherent.  Second, with regard to

the particular allegations against these Defendants, there is absolutely no semblance of a

causal connection between the largely nonsensical rants of Plaintiffs and any injury.  Lastly,

assuming all of Plaintiffs' allegations to be true, there is simply no foreseeable likelihood that a

judgment in favor of Plaintiffs' claims as against these Defendants would redress any

purported injury suffered by Plaintiffs.

Accordingly, Plaintiffs' claims ought to be dismissed for want of standing.

## III.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiffs have failed to assert any independent basis for federal jurisdiction against

these Defendants. Rather, it appears Plaintiffs allege supplemental jurisdiction as the basis for

the Court's jurisdiction.  Indeed, the only clear statement regarding the Court's jurisdiction in Plaintiffs' entire fifty-six page Original Complaint and seven Supplemental and Amended Complaints, appears in Paragraph IV. of Plaintiffs' Original Complaint, which avers "[t]his Court is the exclusive Court of competent jurisdiction over the United States of America... and "[t]his Court has ancillary or pendent jurisdiction over the remaining defendants."   In Paragraph II. of Plaintiffs' Original Complaint, Plaintiffs reference the Constitution of the United States, referring it seems to the Second Amendment, and the "Oil Pollution Act of 1990."  Plaintiffs proceed to reference the Constitution and laws of the State of Louisiana in the same paragraph.  Plaintiffs otherwise aver that they suffered damages as a result of the intentional and negligent acts of the defendant government agencies and employees.    Thus, although not artfully drafted, one can only assume that Plaintiffs are suing the United States alleging both violations of Acts of Congress and constitutional deprivations, and that the Court therefore has "ancillary and pendent" (supplemental) jurisdiction over the remaining state law claims against the remaining Defendants.

For purposes herein, although not properly plead, Defendants will assume that Plaintiffs intended to invoke supplemental jurisdiction over these Defendants and the state law claims against them pursuant to 28 U.S.C. § 1367, which became effective in 1990 and combined and codified the two closely related doctrines of ancillary and pendent jurisdiction. *See Peacock v. Thomas*, 516 U.S. 349, 355 n. 5, 116 S.Ct. 862, 867 n. 5, 133 L.Ed.2d 817 (1996).  28 U.S.C. § 1367 provides, in pertinent part, as follows:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have

supplemental jurisdiction over all other claims that are *so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution*. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In the Practice Commentary, David D. Siegal explains the operation of supplemental

jurisdiction under § 1367 as follows:

"As long as a U.S. district court has original jurisdiction of a claim, subdivision (a) of the new § 1367 dictates that the court shall have supplemental jurisdiction over all other claims that *are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.*

The conferral is in mandatory terms--the court "shall" have the supplemental jurisdiction--but subdivision (c), treated below, gives the court discretion to "decline to exercise" the supplemental jurisdiction in various circumstances.

The conferral is in very broad terms, and by using the "case or controversy" standard found in the Constitution's own statement of the outer limits of federal jurisdiction, Congress indicates that it wants supplemental jurisdiction, at least in first instance--*subject to its rejection as a matter of judicial discretion* under subdivision (c)--to go the constitutional limit..." (emphasis added)

First, even assuming that Plaintiffs had managed to assert standing as against any

Defendant, it cannot possibly be said that the state law claims as against these Defendants form part of the same case or controversy as those against all other Defendants herein as required by § 1367 (*supra*).[2]    In order for their to be supplemental jurisdiction over non-diverse claims, § 1367 requires that their be some connection between the supplemental count(s) and the count(s) that already exist - here the claims against the United States. *See, e.g., Ammerman v. Sween*, 54 F.3d 423, 424 *7th Cir. 1995).   In this case, it appears as though Plaintiffs consider Hurricane Katrina to be the case and controversy and every action of every individual and entity, whether local, state or federal to be inextricably intertwined.   Nothing could be more misguided.  The fact is none of the claims against these Defendants as set forth above and in Plaintiffs' Complaint could in any way be connected to those of any of the other Defendant as to confer supplemental jurisdiction.

Second, and even assuming that the alleged actions or inactions of Defendants as set forth in Plaintiffs' Complaint could be considered part of the same case or controversy, Defendants submit that the Court ought to exercise it's discretion under § 1367 (c) to decline supplemental jurisdiction.    First, the Court ought to decline jurisdiction under subsection (c)(1) of § 1367 insofar as, Plaintiffs' claims, however misguided, would tend to raise novel issues of State law to the extent that the State of Louisiana has seldom if ever in its history dealt with a catastrophe of the magnitude of Hurricane Katrina and, as such, it is in the interest of justice and economy that all such claims based solely on state law be brought before the courts of the state.  Indeed, though Plaintiffs' claims are frivolous, the precedent remains the

---

2    Defendants will assume for purposes herein that Plaintiffs' met the initial prerequisite for Supplemental Jurisdiction by naming the United States as a party, although there exists some pre-1990 precedent opining that making the United States a party is not, in itself, enough to confer jurisdiction on state law claims.

same, namely that there is likely to be a great deal of litigation before the state courts arising out of alleged violations of state law during the state of emergency, and with which the courts are unfamiliar, and it would best serve the interests of justice and judicial economy if jurisdiction remained in the state courts to avoid, among other potential issues, differing results.

Second, the Court ought to decline jurisdiction pursuant to subsection (c)(4) of § 1367 for all of the same reasons set forth above insofar as same provide compelling reasons for declining jurisdiction.

## IV.   PLAINTIFFS COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FRCP 12(B)(6)

### A.   12(b)(6) Standard

A claim may be dismissed under Federal Rule 12(b)(6) either because it asserts a legal theory that is not cognizable as a matter of law or because it fails to allege sufficient facts to support a cognizable legal claim. Fed.R.Civ.Pro. 12(b)(6); *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). As with a Rule 12(b)(1) jurisdictional challenge, when a claim is challenged under this Rule, the court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *Id.* Notwithstanding this generally liberal approach, a litigant's pleading obligations in the federal courts, while minimal, are not "toothless"; the pleader must still allege facts, either directly or inferentially, that satisfy each element required for recovery under some actionable legal theory. *See Albright v. Oliver*, 510 U.S.

266, 267 114 S.Ct. 807, 810 127 L.Ed.2d 114 (1994).

The court *will not accept as true the pleader's bald assertions and legal conclusions, nor will the court draw unwarranted inferences to aid the pleader*. *See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 359-60 (1990); citing *Aulson v. Blanchard*, 88 F.3d 1, 3 (1st Cir. 1996)(commenting that Rule's deferential standard does not obligate a court "to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited"). (emphasis added).

The Court may consider allegations contained in the Complaint, exhibits attached to the complaint, *matters of public record*, and other materials subject to judicial notice, all *without converting the motion to one for summary judgment*. *See* Baicker-McKee, Janssen & Corr, *Federal Civil Rules Handbook, Sixth Edition*, (1999), *citing*, amongst others, *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 n. 14 (5th Cir. 1997)(contents of public records); *International Audiotext Network, Inc. v. American Tel & Tel Co.*, 62 F.3d 69, 72 (2nd Cir. 1995)( emphasis added).

### B.    Plaintiff has Failed to Set Forth a Cause of Action

As set forth above, Plaintiffs' Complaint fails to set forth a claim of a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States caused by these Defendants while acting under color of state law, and no such deprivation can be inferred from a fair reading of the allegations set forth therein. Further, none of the alleged state law negligence claims, assuming them to be true and resolving any doubt in favor of maintaining Plaintiffs' cause, can possibly prevail under

any theory of liability.

First and foremost, all but perhaps a few of the allegations in Plaintiffs' Original and Fourth Supplemental and Amending Complaint's are *prima facie* frivolous and fail to even remotely allege a cause of action arising under any theory of liability. Second, with regard to the claims that are at least arguably rational, Defendants are shielded from liability pursuant to the statutory law and jurisprudence of the state and otherwise fail to assert a viable theory of liability. Specifically, with regard to the claims that **(1)** the Defendants should have prepared for Hurricane Katrina by preparing and formulating a contingency plan, or, if one existed, should have followed it, **(2)** Mayor Nagin failed to invoke "posse comitatus" status resulting in "government sponsored urban terrorism," **(3)** Governor Blanco and Mayor Nagin failed to order evacuation of critical care patients in hospitals, nursing homes, etc., even assuming these allegations to be true and actually based on a legally cognizable claim, Defendants would be shielded by a state statute providing for official or discretionary immunity, especially during a time of emergency, and Louisiana Supreme Court jurisprudence. With regard to the claim that Mayor Nagin failed to exercise leadership to effect the repeal of the "residency requirement" for the N.O.P.D., this was, prior to the state of emergency, not an executive, but rather a legislative function, thereby precluding any cause of action as against the Mayor or executive branch of government. Further, the Mayor in fact did, under his emergency powers, repeal the residency requirement.

1.      **Defendants are Immune from Suit**

La. R.S. 9:2798.1 provides, in pertinent part:

A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.

B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

Immunity from liability for discretionary acts conferred upon public entities is essentially same as immunity conferred on federal government by exception in Federal Tort Claims Act. *Varnado v. Department of Employment and Training, App. 1 Cir.1996, 687 So.2d 1013, 1995-0787 (La.App. 1 Cir. 6/28/96).* That is, any actions based on public policy entitle the public entity to immunity. *Id.* In this case, there is no question that the actions taken and command decisions made by the Executive staff were made in the interest of and pursuant to public policy. Accordingly, Defendants are immune from suit for any alleged negligence claims based upon the exercise or performance, or the failure to exercise or perform their policymaking or discretionary.

Further, the Louisiana Supreme Court has held, and it is axiomatic that a public official acting pursuant statutory authority, even if that statute is later deemed unconstitutional, is immune from suit. *Kyle v. City of New Orleans*, 353 So.2d 969 (La. 1977). The Statute upon which Defendants were at all times pertinent hereto acting, and which has heretofore not been declared unconstitutional, was La. R.S. 29:927, which sets forth the powers of the parish president (or Mayor in the Case of the City of New

Orleans). La. R.S. 29:727 provides, in pertinent part, as follows:

D. A local disaster or emergency may be declared only by the parish president [Mayor], except as otherwise provided in this Chapter.

E. Notwithstanding any other provision of this Chapter, when the parish president declares a local disaster or emergency within such subdivision the parish president *shall* carry out the provisions of this Chapter. Nothing contained herein shall be construed to confer upon the parish president any authority to control or direct the activities of any state agency. When the disaster or emergency is beyond the capabilities of the local government, the parish president shall request assistance from the state office of emergency preparedness. The declaration of a local emergency will serve to activate the response and recovery program of the local government.

F. In addition to any other powers conferred upon the parish president by the constitution, laws, or by a home rule charter or plan of government, such authority may do any or all of the following:

(1) Suspend the provisions of any regulatory ordinance prescribing the procedures for conduct of local business, or the orders, rules, or regulations of any local agency, if strict compliance with the provisions of any ordinance, order, rule, or regulation would in any way prevent, hinder, or delay necessary action in coping with the emergency.
(2) Utilize all available resources of the local government as reasonably necessary to cope with the local disaster or emergency.
(3) Transfer the direction, personnel, or functions of local departments and agencies or units thereof for the purpose of performing or facilitating emergency services.
(4) Subject to any applicable requirements for compensation, commandeer or utilize any private property if he finds this necessary to cope with the local disaster.
(5) Direct and compel the evacuation of all or part of the population from any stricken or threatened area within the boundaries of the parish if he deems this action necessary for mitigation, response, or recovery measures.
(6) Prescribe routes, modes of transportation, and destinations in connection with evacuation within the local government's jurisdiction.
(7) Control ingress and egress to and from the affected area, the movement of persons within the area, and the occupancy of premises therein.
(8) Suspend or limit the sale, dispensing, or transportation of alcoholic

beverages, firearms, explosives, and combustibles.

G. In the event of an emergency declared by the parish president pursuant to this Chapter, any person or representative of any firm, partnership, or corporation violating any order, rule, or regulation promulgated pursuant to this Chapter, shall be fined not more than five hundred dollars, or confined in the parish jail for not more than six months, or both.

Here, the Mayor of New Orleans issued a Proclamation Declaring a State of Emergency on August 27, 2005 pursuant to the authority conferred by La. R.S. 29:727.  (See Mayoral Proclamation of Hurricane Emergency, attached hereto as Exhibit 1[again this is a matter of public record of which this Court may consider without converting this Motion to a motion for summary judgment]).   Accordingly, Defendants cannot be held liable under any theory of state law for actions taken pursuant to that statutory authority, and Plaintiffs have therefore failed to state a cause of action.

Therefore, Plaintiffs' claims ought to be dismissed.

**2.     Plaintiffs' Failed to State a Cause of Action for Failing to Lift "Residency Requirement**

Plaintiffs' claim that the Mayor's failure to "effect leadership" by lifting the "residency requirement" (which Defendants can only assume is akin to some sort of wrongful hire or other claim) is without any legal merit.  The "residency requirement," or requirement that all municipal officers or employees have their actual domicile with the Parish of Orleans, is set forth by Ordinance of the City of New Orleans as contained in Municipal Ordinance 2-974 (See Exhibit 2) and is therefore legislation requiring a legislative act in order to be repealed.  The Mayor, prior to the Proclamation of the State of Emergency, was powerless to unilaterally repeal the Ordinance.  Therefore, Plaintiffs' claim is without any merit.

Furthermore, the Mayor did in fact repeal the Ordinance pursuant to his emergency powers as set forth above (See Mayoral Proclamation of Suspension of Ordinances and Regulations During Time of Emergency (Personnel), which is a matter of public record and attached hereto as Exhibit 3).

Therefore, Plaintiffs' claims are frivolous and otherwise without any legal merit and ought to be dismissed.

## V.   PLAINTIFFS COMPLAINT SHOULD BE DISMISSED AS FRIVILOUS PURSUANT TO RULE 11(b)(2)

Indeed, as set forth above, Plaintiff failed to facially aver the basis for the court's subject matter jurisdiction. Further, Plaintiff has failed to demonstrate a non-frivolous claim based on federal law such that the Court may infer jurisdiction substantively. Therefore, Plaintiff's claims may be properly dismissed pursuant to F.R.C.P. 11(b)(2). In a recent similar case entitled *Angela M. Boutte v. William J. Clinton et al.*, the Honorable Magistrate Judge Wilkinson set forth the appropriate Rule 11 standard as follows:

> "Dismissal pursuant to Fed. R. Civ. Proc. 11(b)(2) is proper if the Plaintiff's claims are not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law. Fed. R. Civ. P. 11(b)

> Rule 11(b) provides in pertinent part:

> (b)   By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

> (1)   it is not being presented for any improper purpose, such as to harass or to cause

> unnecessary delay or needless increase in the cost of litigation;
>
> (2)   the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3)   the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .

Fed. R. Civ. P. 11(b)

The standard of reasonable inquiry required by Rule 11(b) is objective, rather than subjective and good faith is not a defense. *Angela M. Boutte v. William J. Clinton et al.*, Civil Action No. 01-661, Record Doc. No. 35 (citations omitted).

In that case, the Honorable Judge Joseph C. Wilkinson, Jr., recommended and the District Court dismissed Plaintiff's case with prejudice. The reasoning set forth by Magistrate Wilkinson was that her complaint violated Rule 11(b)(2) because her claims were not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law.

The Court reasoned as follows:

"In determining the reasonableness of a legal inquiry, a court must consider the time available to the pleader, the plausibility of the legal arguments, the litigant's pro se status and the complexity of the legal and factual issues raised.

The only factor that weighs in Boutte's favor is her pro se status. The other factors weigh heavily in support of a finding that she did not make a reasonably inquiry into the law before filing her complaint. Because the actions alleged in her complaint took place in 1996, she had ample time to prepare her complaint. The legal issues are not complex. Her legal arguments are implausible. Thus, her complaint would be subject to dismissal under Fed. R. Civ. P. 12(b)(1) and

12(b)(6) if defendants were required to go forward with this action.

First, as a court of limited jurisdiction, this court must always be satisfied of its own jurisdiction, must raise the issue *sua sponte* if necessary and "shall dismiss the action" if subject matter jurisdiction is lacking. Plaintiff bears the burden to show the basis for the court's subject matter jurisdiction.

Boutee's complaint does not allege any basis for subject matter jurisdiction, as required by Fed. R. Civ. P. 8(a)...

Rule 11 violations are punishable by a range of sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may impose an appropriate sanction upon the party who has violated subdivision (b).

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. The sanction may consist of, or include, directives of a non-monetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

The purpose of Rule 11 sanctions is to deter the filing of groundless or frivolous lawsuits. Once a district court finds a Rule 11 violation, it must impose some sanctions. The district court has broad discretion in imposing sanctions reasonably tailored to further the objectives of Rule 11. Reasonableness must be considered in tandem with the rule's goals of deterrence, punishment, and compensation. The sanction should be the least severe that adequately furthers the purpose of Rule 11.

The Fifth Circuit has upheld the imposition of sanctions when a plaintiff's attorney failed to perform a reasonable inquiry into the facts, made numerous frivolous arguments before the district court, or failed to perform a reasonable inquiry into the law such that his request on petitioner's behalf embodied existing legal principles or a good faith argument for the extension, modification, or reversal of existing law. Sanctions have been held appropriate in this circuit when a plaintiff's attorney has harassed Defendant, its counsel, and this Court with pages and pages of inarticulate claims and incoherent argument, has submitted 21 pages of miscellaneous, and often irrelevant, information, has completely failed to apply the law to the facts of this case and has submitted causes of action that were untimely. Sanctions are also appropriate when a plaintiff has filed a frivolous lawsuit against the President of the United States, or

others who enjoy absolute immunity from suit...

The Fifth Circuit has upheld the dismissal of a plaintiff's claims against a defendant as a sanction for frivolous filings, and has affirmed the imposition of Rule 11 sanctions against a *pro se* litigant who failed to conduct the reasonably inquiry that would have disclosed that his filings were not warranted by existing law." *Id.* (citations omitted).

In this case, Plaintiff failed to supply the Court with a basis for subject matter jurisdiction and the allegations and causes of actions outlined above are frivolous as against these Defendants. Further, by filing claims that are not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law, Plaintiff has arbitrarily and capriciously burdened this Court as well as defendants with frivolous motions and arguments. Accordingly, Plaintiff's claims ought to be dismissed.

**WHEREFORE,** defendants herein respectfully pray that the Plaintiffs' Complaint be dismissed for want of standing;

**ALTERNATIVELY,** defendants herein respectfully pray that the Plaintiffs' Complaint be dismissed pursuant to FRCP 12(b)(1);

**IN THE FURTHER ALTERNATIVE,** defendants herein respectfully pray that the Plaintiffs' Complaint be dismissed pursuant FRCP 12(b)(6);

**IN THE FURTHER ALTERNATIVE,** defendants herein respectfully pray that the Plaintiffs' Complaint be dismissed pursuant 11(b)(2).

Defendants further pray that Plaintiffs' Complaint be dismissed, with prejudice

and at Plaintiffs' cost, and for all other legal and equitable relief available under the law.

Respectfully submitted,

**JAMES B. MULLALY, LSB#28296**
**ASSISTANT CITY ATTORNEY**
1300 Perdido Street
City Hall 5th Floor
New Orleans, Louisiana 70112
(504) 565-6200

**JOSEPH V. DIROSA, LSB# 4959**
**CHIEF DEPUTY CITY ATTORNEY**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been sent to

all counsel of record, placing same in the United States Mail, by facsimile, hand delivery

or by e-mail delivery this 6th day of January 2006.

**JAMES B. MULLALY**

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

MAUREEN V. O"DWYER                *        CIVIL ACTION

VERSUS                           *        NO.  05-4181

THE UNITED STATES OF AMERICA,    *        SECTION "K"
ET AL

\*     \*     \*     \*     \*     \*     \*     \*

### NOTICE OF HEARING

Please take notice that the undersigned will bring the above motion on for

hearing before the Honorable Stanwood R. Duvall, Jr., United States District Court, 500

Poydras Street, Room C-352, New Orleans, Louisiana, on the 25th day of January 2006,

at 9:30 a.m., of that day or as soon thereafter as counsel can be heard.


Respectfully submitted,


JAMES B. MULLALY, LSB#28296
ASSISTANT CITY ATTORNEY
1300 Perdido Street
City Hall 5th Floor
New Orleans, Louisiana 70112
(504) 565-6200

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

### STATE OF LOUISIANA

NO.                          DIVISION " "        DOCKET

### CITY OF NEW ORLEANS

FILED: _8/27/05   5:21p_        _Chelsa Rich Napoleon_
                                          DEPUTY CLERK

### MAYORAL PROCLAMATION OF
### HURRICANE EMERGENCY

**WHEREAS,** the National Weather Service has advised on August 25, 2005 that the City of New Orleans may experience extreme weather as a result of Hurricane Katrina;

**WHEREAS,** the National Weather Service has indicated that Hurricane Katrina will likely affect the Louisiana coast with hurricane force winds and heavy rainfall by this Sunday evening or Monday morning;

**WHEREAS,** because of anticipated high lake and marsh tides due to tidal surge, combined with the possibility of intense thunderstorms, hurricane force winds, the City of New Orleans may experience wide-spread localized severe flooding and gale force winds which could result in the endangerment and threat of life, injury and possible property damage;

**NOW THEREFORE,** I, as Mayor and Chief Executive Officer of the City of New Orleans, do by these presents declare pursuant to R.S. 29:727 that due to the above-recited circumstances, a disaster and state of emergency exists in the City of New Orleans, warranting the use of all extraordinary measures appropriate to ensure the public health, safety, welfare, and convenience.

In furtherance of this declaration, the Superintendent of Police is hereby directed pursuant to the provisions of R.S. 40:1387, to take command and control of all peace officers and police officers within the City, when and if and to the extent that their services are needed to deal with the present emergency.

All available resources of the City of New Orleans and its boards and agencies are hereby ordered to be commandeered and utilized by the Emergency Authority for the purpose of performing or facilitating emergency services.

The direction, personnel, and functions of all local departments, agencies and units are hereby transferred, to the extent necessary, to the Emergency Authority for the purpose of

**EXHIBIT**

_1_

performing or facilitating emergency services.

The Emergency Authority may commandeer or utilize any private property if it finds this necessary to cope with the local disaster emergency.

The Emergency Authority, on orders of the Mayor, is hereby empowered to direct and compel the evacuation of any and all persons from any part of the City deemed by the Emergency Authority to be suitable for evacuation, if necessary for the preservation of life or other disaster mitigation, response, or recovery.

The Emergency Authority is hereby empowered to prescribe the routes, modes of transportation and destinations for such evacuation, to control ingress and egress to and from the disaster area and the movement of persons and occupancy of premises therein.

The Emergency Authority is hereby empowered, as necessary, to suspend or limit the sale, dispensing or transportation of alcoholic beverages, firearms, explosives and combustibles.

The Emergency Authority is hereby empowered and directed in conjunction with HANO, HUD and any other appropriate agencies, public and private, to make provisions, as necessary, for the availability and use of temporary emergency housing.

The Superintendents of Fire and Police are directed to take all necessary steps within legal bounds to ensure that no looting or arson occurs within any area ordered evacuated.

Pursuant to R. S. 29:703(2), all radio and television stations and newspapers are hereby requested and directed to distribute news of this proclamation and any orders or directives issued under authority of this proclamation, at the request of the Emergency Authority.

The Emergency Authority is hereby empowered to suspend the provisions of any regulatory ordinance prescribing the procedures for conduct of local business or the orders, rules, or regulation of any local agency, whenever in a particular set of circumstances strict compliance with any statute order, rule or regulation would in any way, prevent, hinder or delay necessary action in coping with the emergency.

The Emergency Authority is hereby authorized to invoke any relevant provisions of the City Code.

The "Emergency Authority" as used in this Proclamation refers to the Superintendents of Police and of Fire under supervision of the Office of the Mayor through the Chief Administration Officer, or under direct supervision of the Office of the Mayor, all acting directly under the supervision and control of the Mayor of the City of New Orleans.

The City Attorney is directed to file this proclamation promptly in the office of the Clerk of

Court.

IN WITNESS wherefore I have fixed my hand and the seal of the City of New Orleans this

__27__ day of August, 2005.

C. RAY NAGIN, MAYOR

ADMINISTRATION
§ 2-975

shall be *determined* on the basis of actual facts and not on the basis of his or her mere declaration of domicile.

*Actual domicile* means a person's principal domestic establishment, the determination of which is based upon such actual facts as where a person sleeps, takes his meals, has established his household, and surrounds himself with his family and the comforts of home, as contrasted with a business establishment or a residence that is not a principal home. For the purpose of this article, one may have only one actual domicile, and that actual domicile shall be deemed to be the residence which meets the following criteria more than any other residence:

(1) He or she usually sleeps there;

(2) He or she keeps most clothing, toiletries, household appliances, and similar personal property of daily utility there;

(3) He or she is registered to vote there;

(4) He or she or a spouse with whom he or she lives has a telephone there in his or her name which is not usually on call-forward to another residence;

(5) He or she directly receives and opens most noncity mail addressed to him or her there;

(6) He or she is free to enter the premises without notice to or permission from others.

However, for the purposes of this article, voters registered in another parish or county are presumed not to have their actual domicile in Orleans Parish.
(Code 1956, § 2-802)

**Sec. 2-973. Policy.**

Except as otherwise expressly provided in this article, it shall be the policy of the city to provide employment, promotions, reemployment or reinstatement, and retention of employment opportunities with the city to persons who do or will have an actual domicile in the parish at the time their employment commences and who thereafter maintain their actual domicile in the parish.
(Code 1956, § 2-803)

**Sec. 2-974. Prohibitions.**

Except as otherwise specifically authorized in this article:

(1) No officer or employee of the city who has responsibility for or authority over the hiring or supervision of employees of the city shall knowingly permit any person who does not have his actual domicile in the parish to commence, resume or continue in city employment or to be appointed to a new position or classification with the city compensated at a higher rate of pay.

(2) No officer or employee of the city shall establish his or her actual domicile outside of the parish or shall fail to maintain continuously his or her domicile within the parish.
(Code 1956, § 2-804)

**Sec. 2-975. Exemptions.**

(a) Any officer or employee of the city who maintained their actual domicile outside of the parish on February 16, 1995, shall be exempt from the prohibitions of subsection 2-974(2) for so long as the officer or employee maintains their actual domicile at the same physical address and location. No officer or employee exempted by this section shall be entitled to retain the benefits of the exemption if the officer or employee establishes a new actual domicile which is also outside the parish. If any officer or employee exempted by this section qualifies to be appointed to a new position or classification compensated at a higher rate of pay, the *officer or employee identified for the new position or classification by the appointing authority shall establish an actual domicile in the parish within 180 days prior to appointment to such position and the exemption granted by this section shall not thereafter apply to the officer or employee.*

(b) Any officer or employee who believes he or she is entitled to maintain an actual domicile outside of the parish pursuant to the provisions of this section shall file with the *administrative office and the department of civil service* a declaration of such entitlement, on a form prescribed by the *chief administrative officer.* Unexcused failure to file such a declaration timely shall

EXHIBIT
2

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

## STATE OF LOUISIANA

NO. 05 - 11663    DIVISION " "    DOCKET

## CITY OF NEW ORLEANS

FILED: 9-26-05                  *Dale M. Atkis*
          5:30p.m.        **DEPUTY CLERK**

## MAYORAL PROCLAMATION
## OF SUSPENSION OF ORDINANCES AND REGULATIONS
## DURING STATE OF EMERGENCY
## (PERSONNEL)

**WHEREAS,** on the Twenty-seventh day of August, 2005, in anticipation of the landfall of Hurricane Katrina, and thereafter on the Sixth day of September 2005, having assessed the devastation caused thereby, I, C. Ray Nagin, Mayor of the City of New Orleans, did issue a Proclamations and Declarations of a State of Emergency; and,

**WHEREAS,** the passage of Hurricane Katrina through the City of New Orleans has caused widespread devastation and flooding; and,

**WHEREAS,** the government of the City of New Orleans is operating under emergency conditions in temporary facilities; and,

**WHEREAS,** many employment positions in the classified and unclassified service are currently unneeded or eliminated by the emergency circumstances; and,

**WHEREAS,** those personnel deemed essential to the operations, relief and recovery effort of the City of New Orleans may or may not be members of the classified service; and,

Page 1 of 4

EXHIBIT

3

**WHEREAS,** it is impossible or impracticable for the members of the Civil Service Commission for the City of New Orleans to continue operating under the present emergency conditions; and,

**WHEREAS,** basic job descriptions, assignments and other rules are impossible or impractical to adhere to for either the City of New Orleans or the members of the Civil Service Commission, for the duration of the present emergency; and,

**WHEREAS,** major areas of the City of New Orleans have been rendered uninhabitable, necessitating citizens and employees of the City to find alternative or temporary housing outside of the limits of the City of New Orleans and the Parish of Orleans; and,

**WHEREAS,** Chapter 2, Article X of the Code of the City of New Orleans provides that the domicile of all employees of the City of New Orleans shall be within its borders; and,

**WHEREAS,** enforcement of such ordinances is impossible, impracticable and a significant hindrance to the recovery, relief and restoration operations during the present emergency; and,

**WHEREAS,** the Emergency Authority is hereby empowered to suspend the provisions of any regulatory ordinance prescribing the procedures for conduct of local business or the orders, rules, or regulation of any local agency, whenever in a particular set of circumstances strict compliance with any order, rule or regulation would in any way prevent, hinder or delay necessary action in coping with the emergency;

**NOW THEREFORE,** I, as Mayor and Chief Executive Officer of the City of New Orleans, do by these presents declare pursuant to Louisiana Revised Statutes, Title 29 Section 727(F)(1) that due to the above-recited circumstances, and having proclaimed a State of Emergency and Disaster, in accordance with Louisiana Revised Statutes Title 29 Section 723 and 727, et al., that the Rules of

Page 2 of 4

the Civil Service Commission shall be and hereby are suspended for the duration of the present emergency originally declared by me on August 27, 2005 and September 6th 2005.

I DO FURTHER PROCLAIM that, under those same powers, the Domicile Ordinance for employees of the City of New Orleans, specifically, Chapter 2, Administration, Article X. Domicile of Officers and Employees, Sections 2-971 through 2-979, shall be and hereby is suspended for the duration of the present emergency originally declared by me on August 27, 2005, and September 6, 2005, including for the duration of any renewals or extensions proclaimed under that proclamation of Declaration of Emergency, or until this Proclamation is specifically rescinded by the Mayor of the City of New Orleans or by other operation of law.

The City Attorney is directed to file this proclamation promptly in the office of the Clerk of Court, as soon as in reasonably possible under the circumstances.

IN WITNESS wherefore I have fixed my hand and the seal of the City of New Orleans hereto this 23rd day of September, 2005.

C. RAY NAGIN, MAYOR

Page 3 of 4