FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 APR 18 AM 11: 46

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, ET AL. | * | CIVIL ACTION NO. 05-4182 |
| | * | |
| Plaintiffs | * | SECTION "K" |
| | * | |
| VERSUS | * | |
| | * | JUDGE DUVAL |
| BOH BROTHERS CONSTRUCTION CO., | * | |
| L.L.C., ET AL. | * | |
| | * | MAGISTRATE NO. 2 |
| Defendants | * | |
| | * | |
| THIS DOCUMENT RELATES TO: | * | MAGISTRATE WILKINSON |
| Docket Nos. 05-4181, 05-4182, 05-4568, | * | |
| 05-5237, 05-6073, 05-6314, 05-6323, 05-6324, | * | |
| 05-6327, 06-0020, 06-0151, 06-0152, | * | A JURY IS DEMANDED |
| 06-0153, 06-0169, 06-0225, 06-0886 | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISQUALIFY

NOW INTO COURT, through undersigned counsel, comes defendant, the Board of

Commissioners of the Orleans Levee District (hereinafter "OLD"), who respectfully submits the

following Reply Memorandum in Support of OLD's Motions to Disqualify The Honorable Stanwood

R. Duval, Jr. and The Honorable Jay C. Wilkinson:[1]

---

[1]While it is commendable that Judge Duval and Magistrate Wilkinson see it as their "clear judicial duty" to handle this matter. Nevertheless, where there is an appearance of partiality "public respect for the judiciary demands" recusal. See Nichols v. Alley, 71 F.3d 347, 352 (10th Cir. 1995), quoting, U.S. v. Jordan, 49 F.3d 152, 157 (5th Cir. 1995).

1



___ Fee_____
___ Process_____
X / Dktd_____
__ CtRmDep_____
___ Doc. No_____

**I.     PLAINTIFFS' RELIANCE ON <u>IN RE CITY OF HOUSTON</u> IS MISPLACED BECAUSE THE CASES BEFORE THIS COURT SEEK MONETARY RELIEF:**

The Fifth Circuit in <u>In Re City of Houston</u> distinguished the case before it from the Ninth circuit decision in <u>In Re Cement Antitrust Litigation</u> by noting:

> The framers of section 455 laid down a *per se* rule where financial interests are concerned, so that even the slightest financial stake in the outcome of litigation–on the part of the judge, his spouse, or minor child–would disqualify the judge. Here we have a different case, in which Judge McDonald is considering a voting rights dispute where **none of the plaintiffs has a financial interest.  Hence the per se rule does not apply**.[2]

This is not true in the instant case because the plaintiffs in these cases are seeking monetary damages, and thus, have a financial interest in the case as does the Court.

Rather, the cases on point are <u>Tramonte v. Chrysler Corp.</u> and <u>Gordon v. Reliant Energy, Inc.</u>[3]  In <u>Tramonte</u> the Fifth Circuit recognized that "it seems fairly obvious that where a judge or an immediate family member is a member of a **class seeking monetary relief**, §455 (b)(4) requires recusal because of the judge's financial interest in the case."[4]   The <u>Tramonte</u> court then held that "where a judge, her spouse, or a minor child residing in her household is a **member of a putative**

---

[2]<u>In Re City of Houston</u>, 745 F.2d 925, 928 (5th Cir. 1984)(emphasis added).

[3]<u>Gordon v. Reliant Energy, Inc</u>, 141 F.Supp.2d 1041 (S.D. Cal. 2001).  OLD notes that the opposition filed by the plaintiffs, in *Harvey v. The Board of Commissioners of the Orleans Levee District*, demonstrates these cases are applicable to the instant as they resort to relying on a case that disagrees with the Fifth Circuit's interpretation of §455.  *See Harvey* Opposition Memo., at p.3 relying on <u>In Re Initial Public Offering Securities Litigation</u>, 174 F.Supp.2d 70, 88-89 (S.D.N.Y. 2001).

[4]<u>Tramonte v. Chrysler Corp.</u>, 136 F.3d 1025, 1029 (5th Cir. 1998)(emphasis added).

**class**, there exists a 'financial interest' in the case mandating recusal under §455 (b)(4)."[5]  The Fifth

Circuit then noted that any "assertion that a member of a putative class lacks a financial interest

relevant to the trial court's decision until after the class is certified blinks at reality."[6]  Moreover, the

Tramonte court specifically determined that where a judge or his spouse or minor child is a member

of the putative class they do "not have the option under §455(f) to divest herself of that interest" to

avoid recusal.[7]

    Relying on Tramonte's reasoning the district judge in Gordon v. Reliant Energy, Inc,[8] recused

himself from two class actions brought on behalf of those who purchased electricity for purposes

other than resale or distribution and a lawsuit filed by individuals against various generators and

traders of wholesale electricity.  The Gordon court "*sua sponte* raised the issue of recusal in light of

the fact that the Court was a **putative class member** in both cases."[9]  The court noted that "the Fifth

Circuit concluded that **putative class members qualify as parties under §455(b)(4)**."[10]  The

plaintiffs there attempted to moot the recusal issue by amending their complaint to exclude the judge

---

[5]Tramonte, 136 F.3d at 1030(emphasis added).

[6]Tramonte, 136 F.3d at 1030.

[7]Tramonte, 136 F.3d at 1032.

[8]Gordon v. Reliant Energy, Inc, 141 F.Supp.2d 1041 (S.D. Cal. 2001).

[9]Gordon, 141 F.Supp.2d at 1042 (emphasis added).

[10]Gordon, 141 F.Supp.2d at 1043, *citing*, Tramonte, 136 F.3d 1025 (5th Cir.
1998)(emphasis added).

and his family members from the class.[11]  The <u>Gordon</u> court rejected plaintiffs' attempt to moot the

recusal issue reasoning as "customers of SDG&E, the undersigned judge his family members, and

staff have legal claims identical to those raised by plaintiffs, regardless of the exclusionary

provisions in plaintiffs' suits."[12]  Thus, "even if members of the judge's family or staff were involved

in related litigation not before the judge, decisions of the judge could nevertheless have a preclusive

effect in any related actions. . ..  Undoubtedly, as these scenarios illustrate, the exclusionary

provisions do not escape the reach of section 455(b)."[13]  The <u>Gordon</u> court then went on to find that

recusal was mandated under §455(b)(4) because "its interests here qualify both as financial and as

any other interest.  *See* 28 U.S.C. §455(b)(4)."[14]  The <u>Gordon</u> court also addressed the provision of

Canon 3C of the Code of Judicial Conduct noting that the provision which permits a judge to handle

a class action "that seeks only injunctive or declaratory relief"[15] was inapplicable since "these suits

seek monetary damages."[16]

The <u>Gordon</u> court next found recusal was mandated in the actions brought by individual

plaintiffs reasoning:

As discussed, *supra*, in relation to the *Hendricks* and *Gordon* cases, issues decided

---

[11]<u>Gordon</u>, 141 F.Supp.2d at 1043.

[12]<u>Gordon</u>, 141 F.Supp.2d at 1043.

[13]<u>Gordon</u>, 141 F.Supp.2d at 1044.

[14]<u>Gordon</u>, 141 F.Supp.2d at 1044.

[15]<u>Gordon</u>, 141 F.Supp.2d at 1045.

[16]<u>Gordon</u>, 141 F.Supp.2d at 1045.

4

in any related action, including *Sweetwater*, could have preclusive effect in *Hendricks* and *Gordon*. Thus, any decision on the merits made by the Court could result in collateral estoppel in the related cases in which the undersigned judge, a member of his family, or a member of his staff has a personal interest.[17]

Therefore, this Court should find that the cases applicable to the recusal question before it are Tramonte and Gordon, not the cases cited by plaintiffs which either deal with a class action seeking non-monetary relief, or that disagree with the Fifth Circuit.

## II.   THE JUDGES OF THE EASTERN DISTRICT ARE PUTATIVE CLASS MEMBERS AND, AS A RESULT, MUST RECUSE UNDER §455 (b)(4):

Plaintiffs make the conclusory statement that because Judge Duval and Magistrate Wilkinson did not sustain flood damage to their properties they have no financial interest in the captioned matters.[18] Curiously, plaintiffs fail to cite the proposed class definitions in the Complaints filed in the instant cases. This was purposely done since the class actions before this Court include, but are not limited to, individuals who sustained the following damages from the flooding caused by the levee breaches: inconvenience, displacement, loss of use of property, loss of property value, fear of future injury, mental anguish, and/or emotional distress.[19] It cannot be seriously asserted that the

---

[17] Gordon, 141 F.Supp.2d at 1046.

[18] *See Bradley v. Pittman Constr.* Opposition Memo, at p.3; See also, *Ann Vodanovich v. Boh Bros. Constr.* Opposition Memo., at p.8.

[19] Exhibit H, at ¶15 (Excerpts of Complaint in *Bradley et al. v. Pittman Constr., et al*, Docket No.06-225); See also, Exhibit M, at ¶13-14, 40 (Excerpts of First Supp. & Amending Complaint in Tauzin v. USA, Docket No. 06-0020); Exhibit N, at p.23, ¶11 (Excerpts of Complaint in *Finney, et al. v. Boh Bros. Constr., et al*, Docket No.06-886); Exhibit O, at pp.22-23, ¶11 (Excerpts of Complaint in *Brown v. Boh Bros. Constr.*, Docket No. 05-6324); Exhibit P, at p. 24, ¶11 (Excerpts of Complaint in *Ezell v. Boh Bros. Constr.*, Docket No. 05-6314); Exhibit Q, at p.22, ¶11 (Excerpts of Complaint in *Kirsch v. Boh Bros. Constr.*, Docket No. 05-6073).

judges who were displaced from their home and workplace were not inconvenienced, sustained no

financial damages (i.e. cost of food, lodging, gas etc.),[20] sustained no loss of use of their property,[21]

sustained no mental anguish or emotional distress over whether or not their homes were flooded, or

were not troubled with a fear of possible future flooding.  While some or all of these damages may

have been offset by insurance proceeds or assistance received from other sources, such assistance

would constitute "collateral sources" and would not eliminate the "financial interest" that the judges

and court employees have in the pending lawsuits.[22]  Therefore, this Court should recuse itself since

recusal is mandated by §455 (b)(4).

_____

[20]The fact that this Court applied for and received assistance from FEMA demonstrates at
the very least that this Court sustained some type of damage which required the assistance of the
federal government. *See* Exhibit R, at pp.58-61 (04/06/06 hearing transcript).  See also, Exhibit S
(Blank Application for FEMA Assistance)

[21]The very fact that the judges of the instant case were displaced from their homes gives
rise to a claim for loss of use of their property.

[22]See Trico Marine Assets, Inc. v. Diamond Marine Services, Inc., 332 F.3d 779, 794 (5th
Cir. 2003)(providing "The collateral source rule is a substantive rule of law that bars a tortfeasor
from reducing the quantum of damages owed to a plaintiff by the amount of recovery the plaintiff
receives from other sources collateral to the tortfeasor.  Sources of compensation that have no
connection to the tortfeasor are inevitably collateral.");  Griffin v. Louisiana Sheriff's Auto Risk
Association, 99-2944 (La. App. 1 Cir. 06/22/01), 802 So.2d 691, 713-714 (holding the collateral
source rule in Louisiana "serves to prevent a defendant from receiving a windfall because the
victim has chosen to provide, by contract, other sources of redress for injury.");  Aucoin v.
Doerner, 98-255 (La. App. 5 Cir. 08/25/98), 717 So.2d 1239, 1241 (holding under the collateral
source rule "a tortfeasor is not entitled to a credit for payments made to a plaintiff through a
collateral source independent of the wrongdoer's procuration or contribution.");  Dumas v.
Harry, 94-19 (La. App. 5 Cir. 05/11/94), 638 So.2d 283, 286 (holding that "[t]he evidence of
disability and medical payments made by Avondale and Blue Cross are clearly inadmissible
collateral sources.");  LeBlanc v. Acadian Ambulance Service, Inc., 99-271 (La. App. 3 Cir.
10/13/99), 746 So.2d 665, 672 (holding that "the evidence submitted with regard to insurance
payments was improperly permitted by the trial court.").

Moreover, in Tramonte the Fifth Circuit specifically held that "where a judge, her spouse, or a minor child residing in her household is a member of a putative class, there exists a 'financial interest' in the case . . .."[23]  Thus, any assertion that the Court (Judge Duval and/or Magistrate Wilkinson) does not have a "financial interest" in this matter would be incorrect as a matter of law since it is undisputed that said judges fall within the class definition due to the fact that they were both displaced from their workplace and Judge Duval from his home as a result of the flooding caused by Hurricane Katrina.

III.   **PLAINTIFFS' ATTEMPT TO DISTINGUISH NICHOLS v. ALLEY FAILS BECAUSE THERE WERE NO CRIMINAL ACTS DIRECTED AT THE COURTHOUSE OR THE JUDGES IN NICHOLS:**

Plaintiffs contend that the instant case is distinguishable from Nichols v. Alley[24] because there are "no allegations of intentional criminal acts directed at the courthouse, the judges, or their staff."[25]  Notably, there were "no allegations of intentional criminal acts directed at the courthouse, the judges, or their staff"[26] in Nichols either.  In fact, Nichols involved collateral damage to the courthouse and its staff members as a result of the bombing of "Murrah Building" which was one block away from the courthouse.[27]  Rather, like Nichols, the instant case involves the *extraordinary*

---

[23]Tramonte, 136 F.3d at 1030.

[24]Nichols v. Alley, 71 F.3d 347 (10th Cir. 1995) (mandating recusal pursuant to the application of 455(a).

[25]*See Ann Vodanovich v. Boh Bros. Constr.* Opposition Memo., at p.6.

[26]*See Ann Vodanovich v. Boh Bros. Constr.* Opposition Memo., at p.6.

[27]Nichols, 71 F.3d at 349 (providing "the United States Federal Courthouse, which is located one block south of the Murrah Building.")

*circumstances* in which the entire courthouse, its staff and judges were affected in various ways by the levee failures.  The courthouse was shut down for two months as a result of the flooding in New Orleans, forcing all its judges and staff to work from temporary offices in Houma, the Middle District of Louisiana, the Western District of Louisiana and the Eastern District of Texas.  Moreover, like Judge Alley in Nichols, both Judge Duval[28] and Magistrate Wilkinson[29] had staff members who were damaged as a result of the incident that was the subject to the litigation.

Further, both Judge Duval[30] and Magistrate Wilkinson[31] were more profoundly affected than Judge Alley because: (1) they were displaced from their courthouse for two months; (2) they both had family members who flooded as a result of Hurricane Katrina and its aftermath; (3) as a result of the flooding Judge Duval and his family were displaced from their home and forced to relocate in Houma;  and (5) Judge Duval and his staff received financial assistance from the federal government as a consequence of their displacement.

When asking "whether a well-informed, thoughtful and objective observer  would question

---

[28]At the 03/24/06 status conference Judge Duval disclosed that his court room deputy was flooded.

[29]At the 03/24/06 status conference Magistrate Wilkinson disclosed that his law clerk was flooded but that she was not assigned to the instant case.

[30]At the 03/24/06 status conference Judge Duval disclosed that his adult daughter flooded but had her flood insurance claim favorably resolved so that she sustained no economic damages.

[31]At the 03/24/06 status conference Magistrate Wilkinson disclosed that his uncle flooded as a result of Hurricane Katrina.

the court's impartiality"[32] the court should be "mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary."[33] "[T]he purpose of §455(a), and the principle of recusal itself is not just to prevent *actual* partiality but to 'avoid even the appearance of partiality.'"[34] This "stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weight the scales of justice equally between contending parties. But to perform its high function in the best way justice must satisfy the appearance of justice."[35] OLD respectfully submits, for the reasons discussed above, that Judge Duval and Magistrate Wilkinson should conclude, as Nichols court did, that recusal under §455(a) is appropriate because their "impartiality might reasonably be questioned in the instant case."[36]

---

[32]Republic of Panama v. American Tabacco Company, Inc., 217 F.3d 343, 346 (5th Cir. 2000).

[33]U.S. v. Jordan, 49 F.3d 152, 157 (5th Cir. 1995).

[34]Republic of Panama, 217 F.3d at 346.

[35]U.S. v. Jordan, 49 F.3d 152, 157 (5th Cir. 1995); See also, Nichols, 71 F.3d at 352.

[36]Nichols, 71 F.3d at 352.

## IV.  CONCLUSION:

WHEREFORE, OLD prays for the reasons discussed above that Judge Duval and Magastrate

Wilkinson recuse themselves from the captioned matters.

Respectfully submitted,

THOMAS P. ANZELMO (#2533)
MARK E. HANNA (19336)
KYLE P. KIRSCH (26363)
ANDRE' J. LAGARDE (28649)
McCRANIE, SISTRUNK, ANZELMO,
HARDY, MAXWELL & McDANIEL
3445 N. Causeway Blvd., Suite 800
Metairie, Louisiana  70002
Telephone: (504) 831-0946

JAMES L. PATE (#10333)
BEN L. MAYEAUX (#19042)
Laborde & Neuner
One Petroleum Center, Suite 200
1001 West Pinhook Road, Suite 200
Post Office Drawer 52828
Lafayette, LA 70505-2828
Telephone: (337) 237-7000
ATTORNEYS FOR DEFENDANT

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of

record by e-mail this 17th day of April, 2006.

M

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

COLLEEN BERTHELOT, ET AL.,                    CIVIL ACTION NO. 05-4182

VERSUS                                        SECTION "K" (2)

BOH BROTHERS CONSTRUCTION CO.,                 CONS. KATRINA CANAL
L.L.C., ET AL

THIS DOCUMENT RELATES TO:

JULIE E. TAUZIN, PAULETTE L. HELDNER,         CIVIL ACTION NO. 06-0020
WIFE OF AND JOHN MICHAEL HOLAHAN,
RIVERBEND FINE WINES, INC., and               SECTION "K" (2)
MICHELLE M. ZORNES

VERSUS

THE BOARD OF COMMISSIONERS
FOR THE ORLEANS PARISH
LEVEE DISTRICT, THE UNITED STATES
OF AMERICA
GULF GROUP, INC. OF FLORIDA,
PITTMAN CONSTRUCTION CO.
OF LOUISIANA, INC., PITTMAN
CONSTRUCTION COMPANY, INC.,
BURK-KLEINPETER, INC.,
BURK-KLEINPETER, L.L.C.,
B&K CONSTRUCTION COMPANY, INC.,
MILLER EXCAVATING SERVICES, INC.,
JAMES CONSTRUCTION GROUP, INC.,
EUSTIS ENGINEERING CO., INC.,
MODJESKI AND MASTERS, INC.,
WASHINGTON GROUP INTERNATIONAL, INC.,
VIRGINIA WRECKING COMPANY, INC.,



EXHIBIT

M

BOH BROS. CONSTRUCTION CO., L.L.C., AND
THE STATE OF LOUISIANA, DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT

### FIRST SUPPLEMENTAL AND AMENDED CLASS ACTION COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs Julie E. Tauzin, John M. Holahan, Paulette H. Holahan, Riverbend Fine Wines, Inc., and Michelle M. Zomes, individually and on behalf of other similarly situated plaintiffs respectfully, who respectfully present the following First Supplemental and Amended Complaint.

Plaintiffs respectfully amend, supplement, and re-state their original Complaint, as follows:

### INTRODUCTION

Plaintiffs file this Complaint, on their own behalf and on behalf of the class of all similarly affected persons, seeking damages that they sustained when their homes, apartments and businesses were flooded when the levees failed in the aftermath of Hurricane Katrina. This is a class action brought on behalf of residents of New Orleans and Metairie who have suffered damage as a result of defective design, construction, maintenance and inspection of the levees and floodwalls protecting the residents of New Orleans and Metairie and their property. The levees in question include levees and floodwalls along the 17th Street Canal, the London Avenue Canal, and the Industrial Canal.

The Defendants were repeatedly put on notice that the design specifications for the New Orleans levee system was defective and that levee protection for the City of New Orleans failed to provide the protections provided for in its designs. Construction of the levees resulted in massive subsidence of properties adjacent to the levees, including soil movement, detrimental

10.

Plaintiff, Riverbend Fine Wines, Inc., is a business entity domiciled in the Parish of Orleans, State of Louisiana, that sustained damage as a result of the failure of the 17th Street Canal Levee.

11.

Plaintiff, Julie E. Tauzin, is a person of the full age of majority residing in the Parish of Orleans, State of Louisiana, who sustained damage as a result of the failure of the London Avenue Canal Levees.

12.

Plaintiff, Michelle M. Zornes, is a person of the full age of majority residing in the Parish of Orleans, State of Louisiana, who sustained damage as a result of the failure of the Industrial Canal Levees.

## PLAINTIFF CLASS

### Proposed Class Definitions

13.

This class action proceeding is brought on behalf of:

> All residents, domiciliaries, and property owners of the Parishes of Orleans and Jefferson, in the State of Louisiana whose persons or properties were or may hereafter be damaged by flooding caused by the failure of the hurricane protections levees and floodwalls located along the 17[th] Street Canal, the London Avenue Canal, and the Industrial Canal, in New Orleans, Louisiana, on or shortly after August 29, 2005.

Proposed Subclasses

14.

This class action proceeding involves subclasses, which can be defined as follows:

a.    Subclass 1:  Those individuals and entities who sustained damage as a result of the failure of the 17th Street Canal Levee;

b.    Subclass 2:  Those individuals and entities who sustained damage as a result of the failure of the London Avenue Canal Levees; and

c.    Subclass 3:  Those individuals and entities who sustained damage as a result of the failure of the Industrial Canal Levees.

## DEFENDANTS

15.

Made Defendants herein are the following:

a.    The Board of Commissioners of the Orleans Levee District (the "Levee Board"), is a political subdivision of the State of Louisiana, domiciled in the Parish of Orleans, State of Louisiana, which, was responsible for the development and maintenance of, and directly in charge of and responsible for the efficient operation and maintenance of all of the levee structures and facilities during flood periods and for continuous inspection and maintenance of the levees and floodwalls during periods of low water.

7

### Industrial Canal Claims

39.

On or about September 11, 2004 a New Orleans Public Belt Railroad train derailment caused a thirty-two and a half foot wide (32.5' wide) gap in Floodgate W-30 which is part of the floodwall system situated immediately west of, and running in a north-south direction parallel to, the Industrial Canal just north of the Interstate 10 high-rise.

40.

As a direct and proximate result of the Orleans Levee District's negligence, plaintiffs sustained damages that include but are not limited to destruction and contamination of property, mental anguish, emotional distress, inconvenience, loss of use of property, loss of property value, loss of income, loss of profits, loss of business opportunity, and fear of future injury.

41.

Upon information and belief, Defendant Washington Group International, Inc. contracted to level and clear abandoned industrial sites along the Industrial Canal between the flood wall and the canal. It is believed that the use of heavy vehicles and/or other heavy construction equipment along the Industrial Canal between the flood wall and the canal damages the levee and floodwall and caused or contributed the above mentioned failure of the levee and floodwall.

42.

Upon information and belief, Defendant Virginia Wrecking Company, Inc. contracted for the demolition, removal and disposal of the Galvez Street Wharf, a warehouse and an adjacent storeroom and for the removal of the debris by barge along the Industrial Canal. It is believed

17

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

2006 FEB 22  PM 12: 38

LORETTA G. WHYTE
CLERK

MARY BETH FINNEY, WIFE OF/AND          *       CIVIL ACTION
KEVIN PATRICK FINNEY; JEANETTE         *
RUBICK; AND  ROBIN MICHAEL D'AUNOY,    *
WIFE OF/AND MARTY D'AUNOY,             *
INDIVIDUALLY AND ON   BEHALF OF        *       NUMBER: **06 - 0886**
THEIR MINOR SON NOAH D'AUNOY;          *
JESSICA A. NEWTON WIFE OF/AND          *
JACK A. NEWTON  INDIVIDUALLY AND       *
ON BEHALF  THEIR MINOR DAUGHTER        *
CAITLIN NEWTON; ANN R. MCGUINNESS,     *
WIFE OF/AND JAMES C. MCGUINNESS, JR.;  *
AND ALIREE Y. HUTSON                   *
                                       *
                                       *
                                       *
VERSUS                                 *       SECTION: **SECT.R MAG2**
                                       *
                                       *       MAGISTRATE: _____
BOH BROTHERS CONSTRUCTION              *
COMPANY, LLC., WASHINGTON GROUP        *
INTERNATIONAL, INC.; VIRGINIA          *
WRECKING COMPANY, INC.; GULF GROUP,    *
INC. OF FLORIDA; MODJESKI AND          *
MASTERS, INC. C.R. PITTMAN             *
CONSTRUCTION COMPANY, INC.; PITTMAN    *
CONSTRUCTION CO. OF LA., INC.;         *
BURK-KLEINPETER,INC.;                  *
BURK-KLEINPETER, LLC.; B&K             *
CONSTRUCTION CO., INC.; MILLER         *
EXCAVATING SERVICES, INC.; JAMES       *
CONSTRUCTION GROUP, LLC; BOARD OF      *
COMMISSIONERS FOR THE ORLEANS LEVEE    *
DISTRICT; ST. PAUL FIRE AND MARINE     *
INSURANCE COMPANY; THE CITY OF NEW     *
ORLEANS AND THE SEWERAGE AND           *
WATER BOARD                            *
                                       *
                                       *
* * * * * * * * * * * * * * * * * * * * * * * *

Fee _____
Process _____
X  Dktd_____
___ CtRmDep_____
___ Doc. No._____

EXHIBIT
N

Page 1 of 26

**10**.  Despite having been   paid $427,387.96 on December 14, 2004, the full estimated costs of

reconstruction of Floodgate W-30, the Orleans Levee District, by its negligence, failed for eight

and a half months to repair the floodgate, leaving only sandbags to fill the gap of the missing

gate as hurricane Katrina approached on August 29, 2005.

**11.**  As a direct and proximate result of the Orleans Levee District's negligence, plaintiffs

sustained damages that include but are not limited to destruction and contamination of property,

mental anguish, emotional distress, inconvenience, loss of use of property, loss of property

value, loss of income, loss of profits, loss of business opportunity, and fear of future injury.


### E.  CITY OF NEW ORLEANS

**1.**  The City of New Orleans is the owner of the land along, over and on the shores, bottom, and

bed of Lake Pontchartrain, in the Parish of Orleans and along   and on the shores adjacent to the

lake and along the canals connected therewith, and therefore have the care, custody, control and

garde of said land including the levees, embankments, sea walls, jetties, breakwaters, water

basins and other works.

**2.**  The 17th Street Canal, the London Avenue Canal, and the Industrial Canal are canals

connected to Lake Pontchartrain in Orleans Parish and are part of the land owned and in the care,

custody, control and garde of the City of New Orleans.

**3.**  Upon information and belief, the levees and floodwalls located on the land owned by the

City of New Orleans as described above contained vices and defects which were known or

should have been known to the City of New Orleans, thus rendering the City of New Orleans

strictly liable in accordance with La. C.C. arts. 2317 and 2317.1.

.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC -2 P 12: 02

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| DAVID M. BROWN, SR., KIM MARIE LAMERSON; DOROTHY ANDRY AND BEVERLY EVANS | * * * * * * | CIVIL ACTION |
| | * | NUMBER: **05 - 6324** |
| VERSUS | * | SECTION: |
| | * | MAGISTRATE: **SECT. T MAG. 4** |
| BOH BROTHERS CONSTRUCTION COMPANY, LLC., WASHINGTON GROUP INTERNATIONAL, INC.; VIRGINIA WRECKING COMPANY, INC.; GULF GROUP, INC. OF FLORIDA; MODJESKI AND MASTERS, INC. C.R. PITTMAN CONSTRUCTION COMPANY, INC.; PITTMAN CONSTRUCTION CO. OF LA., INC.; BURK-KLEINPETER,INC.; BURK-KLEINPETER, LLC.; B&K CONSTRUCTION CO., INC.; MILLER EXCAVATING SERVICES, INC.; JAMES CONSTRUCTION GROUP, LLC; BOARD OF COMMISSIONERS FOR THE ORLEANS LEVEE DISTRICT; ST. PAUL FIRE AND MARINE INSURANCE COMPANY; THE CITY OF NEW ORLEANS AND THE SEWERAGE AND WATER BOARD | * * * * * * * * * * * * * * * * * * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## CLASS ACTION COMPLAINT

NOW INTO COURT, through the undersigned counsel, come David M. Brown, Sr., Kim

Marie Lamerson; Dorothy Andry and Beverly Evans; all persons of the full age of majority and

residents of the Parish of Orleans, State of Louisiana; and submit this Class Action Complaint.

1.

Fee     250.
___ Process_____     Page 1 of 27
X   Dktd_____
___ CtRmDep_____
___ Doc. No._____



EXHIBIT

0

damages. Further, the levees and floodwalls were within the exclusive care, custody, control and garde of the Orleans Levee District, and said levees and floodwalls contained vices and defects which were known or should have been known to the Orleans Levee District, thus rendering the Orleans Levee District strictly liable in accordance with LA. C.C. arts. 2317 and    2317.1.

**6**. On or about September 11, 2004, a New Orleans Public Belt Railroad Train derailment caused a thrity tow and a half foot wide (32.5 ' wide) gap in Floodgate W-30 which is part of the flood wall system situated immediately west of, and funning in a north-south direction parallel to, the Industrial Canal, just north of the Interstate 10 high rise.

**7**. Floodgate W-30 is a floodgate within the flood control system under the authority, control and administration of the Orleans Levee District.

**8.** Defendant herein, the Board of Commissioners of the Orleans Levee District, filed suit against the City of New Orleans, by and through the New Orleans Public Belt Railroad Commission, CSX Transportation, Inc. and the Burlington Northern and Santa Fe Railroad Company on December 3, 2004 in the Civil District Court for the Parish of Orleans, NO. 2004-17143, Division: "F", for damages to the floodgates arising from the derailment.

**9.** On December 14, 2004, the New Orleans Public Belt Railroad paid the Orleans Levee District Four Hundred Twenty Seven Thousand Three Hundred Eighty Seven Dollars and Ninety Six Cents ($427,387.96), the full estimated cost of reconstruction of Floodgate W-30.

**10**.  Despite having been   paid $427,387.96 on December 14, 2004, the full estimated costs of reconstruction of Floodgate W-30, the Orleans Levee District, by its negligence, failed for eight and a half months to repair the floodgate, leaving only sandbags to fill the gap of the missing gate as hurricane Katrina approached on August 29, 2005.

**11.** As a direct and proximate result of the Orleans Levee District's negligence, plaintiffs

Page 22 of  27

sustained damages that include but are not limited to destruction and contamination of property, mental anguish, emotional distress, inconvenience, loss of use of property, loss of property value, loss of income, loss of profits, loss of business opportunity, and fear of future injury.

## E. CITY OF NEW ORLEANS

1.  The City of New Orleans is the owner of the land along, over and on the shores, bottom, and bed of Lake Pontchartrain, in the Parish of Orleans and along   and on the shores adjacent to the lake and along the canals connected therewith, and therefore have the care, custody, control and garde of said land including the levees, embankments, sea walls, jetties, breakwaters, water basins and other works.

2.  The 17th Street Canal, the London Avenue Canal, and the Industrial Canal are canals connected to Lake Pontchartrain in Orleans Parish and are part of the land owned and in the care, custody, control and garde of the City of New Orleans.

3.  Upon information and belief, the levees and floodwalls located on the land owned by the City of New Orleans as described above contained vices and defects which were known or should have been known to the City of New Orleans, thus rendering the City of New Orleans strictly liable in accordance with La. C.C. arts. 2317 and 2317.1.

## F. THE SEWERAGE AND WATER BOARD OFF NEW ORLEANS

1.  The Sewerage and Water Board had at all times relevant hereto the care, custody, control and garde of hte land along, over and on the shores, bottom, and bed of Lake Pontchartrain in the

Parish of Orleans, and along and on the shores adjacent to the lake and along the canals

Page 23 of  27

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

UNITED STATES DISTRICT COURT 2005 DEC -1  PM 2: 41

EASTERN DISTRICT OF LOUISIANA LORETTA G. WHYTE
                                                                              CLERK

JIM EZELL, HUSBAND OF/AND          *     CIVIL ACTION
BONNIE EZELL                       *
                                   *
                                   *
                                   *
                                   *     NUMBER:
                                   *
                                   *     **05 - 6314**
VERSUS                             *     SECTION:
                                   *     **SECT. I MAG. 3**
                                   .
BOH BROTHERS CONSTRUCTION CO.,     *     MAGISTRATE:
WASHINGTON GROUP                   *
INTERNATIONAL, INC., VIRGINIA      *
WRECKING COMPANY, INC., GULF       *
GROUP, INC. OF FLORIDA,            *
MODJESKI AND MASTERS, INC., C. R.  *
PITTMAN CONSTRUCTION COMPANY, INC.,*
BURK-KLEINPETER, INC., BURK-KLEINPETER, *
LLC., B&K CONSTRUCTION CO., INC.,  *
MILLER EXCAVATING SERVICES, INC.,  *
JAMES CONSTRUCTION GROUP, LLC,     *
BOARD OF COMMISSIONERS FOR THE     *
ORLEANS LEVEE DISTRICT, ST. PAUL FIRE *
AND MARINE INSURANCE COMPANY,      *
THE CITY OF NEW ORLEANS AND THE    *
SEWERAGE AND WATER BOARD OF NEW    *
ORLEANSL.L.C. AND EUSTIS ENGINEERING *
COMPANY, INC.                      *
                                   *

* * * * * * * * * * * * * * * * * * * * * * * * * *

## **CLASS ACTION COMPLAINT**

NOW INTO COURT, through the undersigned counsel, come Jim Ezell, husband

of/and Bonnie Ezell, all  persons of the full age of majority and residents of the Parish of

LAW OFFICES OF
RONNIE G. PENTON

209 Hoppen Place
Bogalusa, LA 70427
Tel: 985.732.5651
Toll Free: 800.419.3445
Fax: 985.735.5579

Fee $250.00
___ Process_____
_X_ Dktd_____ Days Log 28
_V_ CtRmDep
___ Doc. No

**EXHIBIT**
P

Ninety Six Cents ($427,387.96), the full estimated cost of reconstruction of Floodgate W-30.

**10.** Despite having been   paid $427,387.96 on December 14, 2004, the full estimated costs of reconstruction of Floodgate W-30, the Orleans Levee District, by its negligence, failed for eight and a half months to repair the floodgate, leaving only sandbags to fill the gap of the missing gate as hurricane Katrina approached on August 29, 2005.

**11.** As a direct and proximate result of the Orleans Levee District's negligence, plaintiffs sustained damages that include but are not limited to destruction and contamination of property, mental anguish, emotional distress, inconvenience, loss of use of property, loss of property value, loss of income, loss of profits, loss of business opportunity, and fear of future injury.

### E.  CITY OF NEW ORLEANS

**1.**  The City of New Orleans is the owner of the land along, over and on the shores, bottom, and bed of Lake Pontchartrain, in the Parish of Orleans and along   and on the shores adjacent to the lake and along the canals connected therewith, and therefore have the care, custody, control and garde of said land including the levees, embankments, sea walls, jetties, breakwaters, water basins and other works.

**2.**  The 17th Street Canal, the London Avenue Canal, and the Industrial Canal are canals connected to Lake Pontchartrain in Orleans Parish and are part of the land owned and in the care, custody, control and garde of the City of New Orleans.

**3.**  Upon information and belief, the levees and floodwalls located on the land owned by



**LAW OFFICES OF
RONNIE G. PENTON**

209 Hoppen Place
Bogalusa, LA 70427
Tel: 985.732.5651
Toll Free: 800.419.3445
Fax: 985.735.5579

Παγε 24 οφ  28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAVID J. KIRSCH and ALI HAGHIGHI, on behalf of themselves and all others similarly situated | * * * * * | CIVIL ACTION NO. DIVISION: |
| VERSUS | * * * | **05-6073** JURY DEMAND |
| BOH BROTHERS CONSTRUCTION CO., WASHINGTON GROUP INTERNATIONAL, INC., VIRGINIA WRECKING COMPANY, INC., GULF GROUP, INC. OF FLORIDA, MODJESKI AND MASTERS, INC., C.R. PITTMAN CONSTRUCTION COMPANY, INC., PITTMAN CONSTRUCTION CO. OF LA, INC., BURK-KLEINPETER, INC., BURK-KLEINPETER, LLC., B&K CONSTRUCTION CO., INC., MILLER EXCAVATING SERVICES, INC., JAMES CONSTRUCTION GROUP, LLC, BOARD OF COMMISSIONERS FOR THE ORLEANS LEVEE DISTRICT, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, THE CITY OF NEW ORLEANS, AND SEWERAGE AND WATER BOARD OF NEW ORLEANS | * * * * * * * * * * * * * * * | **SECT. C MAG. 1** |

```
*****************************************************
```

FILED: _____     _____

                                        DEPUTY CLERK

## CLASS ACTION COMPLAINT

    **NOW INTO COURT**, through undersigned counsel, come **DAVID J. KIRSCH** and **ALI HAGHIGHI**, both persons of the full age of majority, on behalf of themselves and all others similarly situated, and submit the following Complaint to this Honorable Court:

Fee $250.00     Page 1 of 28
Process_____
X  Dktd_____
✓  CtRmDep_____
__  Doc. No._____

EXHIBIT

Q

floodwall system situated immediately west of, and running in a north-south direction parallel to, the Industrial Canal, just north of the Interstate 10 high rise.

7.   Floodgate W-30 is a floodgate within the flood control system under the authority, control and administration of the Orleans Levee District.

8.   Defendant herein, the Board of Commissioners of the Orleans Levee District, filed suit against the City of New Orleans, by and through the New Orleans Public Belt Railroad Commission, CSX Transportation, Inc. and the Burlington Northern and Santa Fe Railroad Company on December 3, 2004 in the Civil District Court for the Parish of Orleans, NO. 2004-17143, Division: "F", for damages to the floodgates arising from the train derailment.

9.   On December 14, 2004, the New Orleans Public Belt Railroad paid the Orleans Levee District Four Hundred Twenty Seven Thousand Three Hundred Eighty Seven Dollars and Ninety Six Cents ($427,387.96), the full estimated cost of reconstruction of Floodgate W-30.

10.   Despite having been paid $427,387.96 on December 14, 2004, the full estimated costs of reconstruction of Floodgate W-30, the Orleans Levee District, by its negligence, failed for eight and a half months to repair the floodgate, leaving only sandbags to fill the gap of the missing gate as hurricane Katrina approached on August 29, 2005.

11.   As a direct and proximate result of the Orleans Levee District's negligence, Plaintiffs sustained damages that include, but are not limited to, destruction and contamination of property, mental anguish, emotional distress, inconvenience, loss of use of property, loss of personal property and property value, loss of income, loss of profits, loss of business opportunity, and fear of future injury, as well as other damages.

```
 1                    UNITED STATES DISTRICT COURT.
                      EASTERN DISTRICT OF LOUISIANA
 2
     ***********************************************************
 3   O'DWYER, ET AL
                                    Docket No. 05-CV-4181
 4   V.                             New Orleans, Louisiana
                                    Thursday, April 6, 2006
 5   UNITED STATES OF AMERICA, ET AL
     ***********************************************************
 6   BERTHELOT, ET AL
                                    Docket No. 05-CV-4182
 7   v.                             New Orleans, Louisiana
                                    Thursday, April 6, 2006
 8
     BOH BROTHERS CONSTRUCTION, INC., ET AL
 9   ***********************************************************
     JARED VODANOVICH
10
                                    Docket No. 05-CV-4191
11   v.                             New Orleans, Louisiana
                                    Thursday, April 6, 2006
12   BOH BROTHERS CONSTRUCTION, INC., ET AL
     ***********************************************************
13   ROBERT HARVEY
14                                  Docket No. 05-CV-4568
     v.                             New Orleans, Louisiana
15                                  Thursday, April 6, 2006

16   THE BOARD OF COMMISSIONERS FOR
     THE ORLEANS PARISH LEVEE DISTRICT
17   ***********************************************************
     ANN VODANOVICH
18
                                    Docket No. 05-CV-5237
19   v.                             New Orleans, Louisiana
                                    Thursday, April 6, 2006
20
     BOH BROTHERS CONSTRUCTION, INC., ET AL
21   ***********************************************************
     GREER, ET AL
22                                  Docket No. 05-CV-5709
     V.                             New Orleans, Louisiana
23                                  Thursday, April 6, 2006
     U. S. ARMY CORPS OF ENGINEERS
24   ***********************************************************

25
```


EXHIBIT
R

```
 1   ANN VODANOVICH
                                        Docket No. 05-CV-6069
 2   V.                                 New Orleans, Louisiana
                                        Thursday, April 6, 2006
 3   BOH BROTHERS CONSTRUCTION, ET AL
     ************************************************************
 4   DAVID KIRSCH

 5                                       Docket No. 05-CV-6073
     v.                                  New Orleans, Louisiana
 6                                       Thursday, April 6, 2006

 7   BOH BROTHERS CONSTRUCTION, INC., ET AL
     ************************************************************
 8   JIM EZELL

 9                                       Docket No. 05-CV-6314
     v.                                  New Orleans, Louisiana
10                                       Thursday, April 6, 2006

11   BOH BROTHERS CONSTRUCTION, INC., ET AL
     ************************************************************
12   RICHARD VANDERBROOK, ET AL
                                        Docket No. 05-CV-6323
13   V.                                 New Orleans, Louisiana
                                        Thursday, April 6, 2006
14   STATE FARM FIRE & CASUALTY
     ************************************************************
15   DAVID M. BROWN, SR.
                                        Docket No. 05-CV-6324
16   v.                                 New Orleans, Louisiana
                                        Thursday, April 6, 2006
17
     BOH BROTHERS CONSTRUCTION, INC., ET AL
18   ************************************************************
     BETH A. LeBLANC
19                                       Docket No. 05-CV-6327
     v.                                  New Orleans, Louisiana
20                                       Thursday, April 6, 2006

21   BOH BROTHERS CONSTRUCTION, INC., ET AL
     ************************************************************
22   FREDERICK BRADLEY, ET AL
                                        Docket No. 05-CV-6359
23   V.                                 New Orleans, Louisiana
                                        Thursday, April 6, 2006
24   MODJESKI AND MASTER, INC.
     ************************************************************
25
```

```
 1   SULLIVAN, ET AL
                                     Docket No. 05-CV-0004
 2   V.                              New Orleans, Louisiana
                                     Thursday, April 6, 2006
 3   STATE FARM FIRE & CASUALTY
     INSURANCE
 4   ***********************************************************
     JULIE E. TAUZIN, ET AL
 5                                   Docket No. 06-CV-0020
     v.                              New Orleans, Louisiana
 6                                   Thursday, April 6, 2006

 7   THE BOARD OF COMMISSIONERS FOR
     THE ORLEANS PARISH LEVEE DISTRICT
 8   ***********************************************************
     BRUCE CONLAY
 9                                   Docket No. 06-CV-0151
     V.                              New Orleans, Louisiana
10                                   Thursday, April 6, 2006
     ENCOMPASS INSURANCE COMPANY, ET AL
11
     ***********************************************************
12   DIANE W. ROGERS
                                     Docket No. 06-CV-0152
13   V.                              New Orleans, Louisiana
                                     Thursday, April 6, 2006
14   ENCOMPASS INSURANCE COMPANY, ET AL
     ***********************************************************
15   WILLIAM R. BAIRD
                                     Docket No. 06-CV-153
16   V.                              New Orleans, Louisiana
                                     Thursday, April 6, 2006
17   ENCOMPASS INSURANCE COMPANY, ET AL
     ***********************************************************
18   KELLY A. HUMPHREYS
                                     Docket No. 06-CV-0169
19   V.                              New Orleans, Louisiana
                                     Thursday, April 6, 2006
20   ENCOMPASS INSURANCE COMPANY, ET AL
     ***********************************************************
21   FREDERICK BRADLEY, ET AL
                                     Docket No. 06-CV-0225
22   V.                              New Orleans, Louisiana
                                     Thursday, April 6, 2006
23   PITTMAN CONSTRUCTION COMPANY, ET AL
     ***********************************************************
24

25
```

```
 1  MARY BETH FINNEY, ET AL
                                      Docket No. 06-CV-0886
 2  V.                                New Orleans, Louisiana
                                      Thursday, April 6, 2006
 3  BOH BROTHERS, ET AL
    ***************************************************************
 4  MARY BETH GILLASPIE
                                      Docket No. 05-CV-1301
 5  V.                                New Orleans, Louisiana
                                      Thursday, April 6, 2006
 6  ST. PAUL FIRE AND MARINE
    INSURANCE COMPANY
 7                   (MIDDLE DISTRICT CASE)
    ***************************************************************
 8  GLADYS CHEHARDY
                                      Docket No. 05-CV-1140
 9  V.                                New Orleans, Louisiana
                                      Thursday, April 6, 2006
10  J.P. ROBERT WOLLEY, ET AL
                     (MIDDLE DISTRICT CASE)
11  ***************************************************************

12

13                  TRANSCRIPT OF STATUS CONFERENCE
           HEARD BEFORE THE HONORABLE STANWOOD R. DUVAL
14                   UNITED STATES DISTRICT JUDGE

15
    APPEARANCES:
16
    FOR THE PLAINTIFFS:         BRUNO & BRUNO
17                              BY:  JOSEPH M. BRUNO, ESQ.
                                     DAVID S. SCALIA, ESQ.
18                              855 Baronne Street
                                New Orleans, LA 70113
19

20
                                GAINSBURGH, BENJAMIN, DAVID,
21                                   MEUNIER & WARSHAUER
                                BY:  GERALD E. MEUNIER, ESQ.
22                                   TODD R. SLACK, ESQ.
                                     KARA M. HADICAN, ESQ.
23                              1100 Poydras Street, Suite 2800
                                Energy Centre
24                              New Orleans, LA 70163-2800

25
```

```
 1        JACOBS & SARRAT
          BY:   DARLEEN M. JACOBS, ESQ.
 2              AL SARRAT, ESQ.
          823 St. Louis Street
 3        New Orleans, LA 70112

 4
          LAW OFFICES OF RONNIE G. PENTON
 5        BY:   RONNIE G. PENTON, ESQ.
          209 Hoppen Place
 6        Bogalusa, LA 70427

 7
          LAW OFFICE OF DANIEL BECNEL,JR.
 8        BY:   DANIEL E. BECNEL, ESQ.
                DARRYL J. BECNEL, ESQ.
 9        106 Seventh Street
          Reserve, LA 70084
10

11        ASHTON R. O'DWYER, JR., ESQ.
          One Canal Place, Suite 2670
12        New Orleans, LA 70130

13
          LAW OFFICE OF ROBERT HARVEY SR.
14        BY:   KELLY LOISEL, ESQ.
          3431 Prytania Street
15        New Orleans, LA 70115

16
          LANDRY & SWARR
17        BY:   FRANK J. SWARR, ESQ.
          1010 Common Street, Suite 2050
18        New Orleans, LA 70112

19
          ROBERT L. MANARD, PLC
20        BY:   PAUL E. MAYEAUX, ESQ.
          1100 Poydras Street, Suite 2610
21        New Orleans, LA 70163

22
          LAW OFFICES OF ROBERT M. BECNEL
23        BY:   MEGHAN F. BECNEL, ESQ.
          425 West Airline Highway, Suite
24        LaPlace, LA 70068

25
```

```
 1                                    FAYARD & HONEYCUTT
                                      BY:  CALVIN C. FAYARD JR., ESQ.
 2                                    519 Florida Avenue Southwest
                                      Denham Springs, LA 70726
 3

 4                                    JESSE LEE WIMBERLY, III
                                      ATTORNEY AT LAW
 5                                    120 Lisa Lane
                                      Mandeville, LA  70448
 6

 7   FOR THE BOARD OF COMMISSIONERS
     FOR THE ORLEANS LEVEE DISTRICT:  McCRANIE, SISTRUNK, ANZELMO,
 8                                         HARDY, MAXWELL & McDANIEL
                                      BY:  KYLE P. KIRSCH, ESQ.
 9                                         THOMAS P. ANZELMO, ESQ.
                                       N. Causeway Blvd., Suite 800
10                                    Metairie, LA 70002

11
                                           - AND -
12

13                                    LABORDE & NEUNER
                                      BY:  BEN L. MAYEAUX, ESQ.
14                                    One Petroleum Center
                                      1001 W. Pinhook Rd., Suite 200
15                                    Lafayette, LA 70505

16
     FOR WASHINGTON GROUP
17   INTERNATIONAL, INC.:
     WITTMANN                         STONE, PIGMAN, WALTHER,
18                                    BY:  WILLIAM D. TREEBY, ESQ.
                                           HEATHER LONIAN, ESQ.
19                                    546 Carondelet Street
                                      New Orleans, LA 70130
20

21   FOR BOH BROTHERS CONSTRUCTION
     COMPANY, L.L.C:
22                                    KINGSMILL RIESS, L.L.C.
                                      BY:  CHARLES B. COLVIN, ESQ.
23                                    201 St. Charles Avenue Ste 3300
                                      New Orleans, LA 70170-3300
24

25
```

```
 1   FOR VIRGINIA WRECKING
     COMPANY, INC.:                    GAUDRY, RANSON, HIGGINS &
 2                                         GREMILLION, L.L.C.
                                       BY:   THOMAS DARLING, ESQ.
 3                                     401 Whitney Avenue, Suite 500
                                       Gretna, LA 70054-1910
 4

 5

 6   FOR JAMES CONSTRUCTION
     GROUP, L.L.C:                     JONES, WALKER, WAECHTER,
 7                                     POITEVENT, CARRERE & DENEGRE
                                       BY:   RICHARD J. TYLER, ESQ.
 8                                     201 St. Charles Avenue, 50thFlr
                                       New Orleans, LA 70170-5100
 9

10   FOR ST. PAUL FIRE & MARINE
     INSURANCE COMPANY:                LUGENBUHL, WHEATON, PECK,
11                                     RANKIN & HUBBARD
                                       BY:   RALPH S. HUBBARD, ESQ.
12                                         JOSEPH P. GUICHET, ESQ.
                                           MARTIN R. SADLER, ESQ.
13                                         SETH SCHMEECKLE, ESQ.
                                       601 Poydras Street, Suite 2775
14                                     New Orleans, LA 70130

15   FOR STANDARD FIRE INSURANCE
     COMPANY:                          ROBINSON & COLE
16                                     BY:   STEPHEN E. GOLDMAN, ESQ.
                                       280 Turnbull Street
17                                     Hartford, CT 06103-3597

18

19   FOR B&K CONSTRUCTION
     COMPANY, INC.:                    SIMON, PERAGINE, SMITH &
20                                     REDFEARN, L.L.P.
                                       BY:   HERMAN HOFFMANN JR..  ESQ
21                                     Energy Centre
                                       1100 Poydras Street, 30th Floor
22                                     New Orleans, LA 70163-3000

23

24   FOR MODJESKI AND MASTERS, INC.:   DEUTSCH, KERRIGAN & STILES
                                       BY:   VICTOR STILWELL JR., ESQ
25                                     755 Magazine Street
                                       New Orleans, LA 70130
```

```
 1   FOR SEWERAGE AND WATER BOARD
     OF NEW ORLEANS:
 2                                    SEWERAGE & WATER BOARD
                                           LEGAL DEPT
 3                                    BY:  GEORGE R. SIMNO, III, ESQ.
                                      625 St. Joseph Street, Room 201
 4                                    New Orleans, LA 70165

 5
     FOR BURK-KLEINPETER, INC.:       DEUTSCH, KERRIGAN & STILES
 6                                    BY:  CHARLES SEEMANN, JR., ESQ.
                                      755 Magazine Street
 7                                    New Orleans, LA 70130

 8
     FOR EUSTIS ENGINEERING
 9   COMPANY, INC.:
                                      GARDNER & KEWLEY
10                                    BY:  THOMAS F. GARDNER, ESQ.
                                      1615 Metairie Rd., Suite 200
11                                    Metairie, LA 70005

12   FOR C.R. PITTMAN:                GALLOWAY, JOHNSON, TOMPKINS,
                                      BURR & SMITH
13                                    BY:  GERALD A. MELCHIODE, ESQ.
                                           J. MARSTON FOWLER, ESQ.
14                                    One Shell Square
                                      701 Poydras Street, 40th Floor
15                                    New Orleans, LA 70130

16
     FOR C. RAY NAGIN, EDWIN COMPASS,
17   III AND CITY OF NEW ORLEANS:     CITY ATTORNEY'S OFFICE
                                      BY:  JOSEPH V. DiROSA JR., ESQ.
18                                    CITY HALL
                                      1300 Perdido Street
19                                    Room 5E01
                                      New Orleans, LA 70112
20

21   FOR THE UNITED STATES
     OF AMERICA:                      U.S. DEPARTMENT OF JUSTICE
22                                    BY:  CATHERINE FINNEGAN, ESQ.
                                           ROBIN D. SMITH, ESQ.
23                                    Torts Branch, Civil Division
                                      Benjamin Franklin Station
24                                    P.O. Box 888
                                      Washington, D.C. 20044
25
```

```
 1   FOR THE STATE OF LOUISIANA AND
     GOVERNOR KATHLEEN BLANCO:
 2                                          LOUISIANA DEPARTMENT OF JUSTICE
                                            BY:  PHYLLIS E. GLAZER, ESQ.
 3                                          Office of Attorney General
                                            Litigation Division
 4                                          601 Poydras Street, Suite 1725
                                            New Orleans, LA 70130
 5
     FOR JEFFERSON PARISH AND
 6   AARON BROUSSARD:
                                            BURGLASS & TANKERSLEY, L.L.C.
 7                                          BY:  DENNIS J. PHAYER, ESQ.
                                            5213 Airline Drive
 8                                          Metairie, LA 70001

 9   FOR UNITRIN PREFERRED
     INSURANCE COMPANY:
10                                          PHELPS DUNBAR
                                            BY:  NEIL C. ABRAMSON, ESQ.
11                                          365 Canal Street
                                            Canal Place - Suite 2000
12                                          New Orleans, LA 70130-6534

13   FOR STATE FARM FIRE AND
     CASUALTY COMPANY:
14                                          STONE PIGMAN WALTHER WITTMANN
                                            BY:  WAYNE J. LEE, ESQ.
15                                          546 Carondelet Street
                                            New Orleans, LA 70130-3588
16

17   FOR ENCOMPASS INSURANCE COMPANY:       BARRASSO USDIN KUPPERMAN
                                            FREEMAN & SARVER
18                                          BY:  JUDY Y. BARRASSO, ESQ.
                                            LL&E Tower, Suite 1800
19                                          909 Poydras Street
                                            New Orleans, LA 70112
20

21   FOR KIMBERLY WILLIAMSON BUTLER:        BELHIA V. MARTIN, ESQ.
22                                          317 Magazine Street
                                            New Orleans, LA 70130
23

24

25
```

```
 1  ALSO APPEARING:
                                    JERRY McKERNAN, ESQ.
 2
                                    CALVIN FAYARD, ESQ.
 3
                                    SUSAN ROGSE, ESQ.
 4
                                    CHRIS FARRELL, ESQ.
 5
                                    JOHN ANDRY, ESQ.
 6
                                    ROBERT CREELY, ESQ.
 7
                                    CAMILO SALAS, III, ESQ.
 8
                                    JAMES P. ROY, ESQ.
 9
                                    MATT SCHULTZ, ESQ.
10
                                    KELLY BOGART, ESQ.
11
                                    STEPHEN BULLOCK, ESQ.
12
                                    ALEXIS BEVIS, ESQ.
13
                                    WILL PERCY, ESQ.
14
                                    OWEN ST. AMANT, ESQ.
15
16
    Official Court Reporter:       Cathy Pepper, CCR, RPR
17                                  500 Poydras Street, Room HB-406
                                    New Orleans, Louisiana 70130
18                                  (504) 589-7776
19
20
    Proceedings recorded by mechanical stenography.  Transcript
21  produced by computer.
22
23
24
25
```

1  more efficiently and more intelligently.

2  So today myself and Judge Wilkinson are going to

3  outline some things we're thinking about.  They only take us to a

4  certain point, and then we're going to want your input, and then

5  we'll ultimately very quickly render a minute entry saying that

6  what we're going to do.  But this status conference is only going

7  to cover a certain period of time, because there are a lot of

8  issues and we've got to wait until they begin to coalesce before

9  we really do specifically definitive things.

10  Let me point out on the recusal issue, there have been

11  two motions filed, one by the Washington Group International, I

12  say two motions, Washington is in seven or eight cases and filed

13  in each case, and the Orleans Levee District.  I will decide

14  those -- they are set for hearing April 19th.  I'm going to

15  decide if I need oral argument, and I will decide those -- I

16  think set for hearing April 19th -- and I'm going to decide those

17  very, I'll get the mike, I'll decide those very quickly, if not

18  on the 19th.

19  Let me make another point, and this is not a consensus

20  point.  This is something that I'm going to do.

21  MR. ANZELMO:  Your Honor, did you say with or without

22  oral argument?

23  JUDGE DUVAL:  I haven't made that decision yet.  I will

24  apprise you well ahead of time.

25  MR. ANZELMO:  Forgive me, Your Honor.  My hearing is

1   down.   I'm having difficulty hearing you.

2           JUDGE DUVAL:   And I'll try to use the mike.

3           THE COURT REPORTER:   Excuse me, what was your name?

4           MR. ANZELMO:   I'm sorry, Tommy Anzelmo for the Orleans

5   Levee District.

6           JUDGE DUVAL:   I'm going to make that decision probably

7   on April 19th.   I am not going to withhold rendering decisions on

8   motions already submitted.   Let me tell you why.   Assuming I

9   don't recuse, because, one, they can be reviewed *de novo* under

10  the Fifth Circuit Law under the *Patterson* case, 335 F.3rd 476.   I

11  happened to be on that panel.   That's why I remembered the case.

12  If a judge should recuse and doesn't, those things that are

13  reviewed *de novo* are not vacated.   Unlike *Tremonte*, they, in

14  essence, went back to the old law before *Tremonte*.

15          So I don't intend to do that.   Let me tell you why.

16  Mandamus may be quick but let's assume the Court refuses to hear

17  it on mandamus.   Then we have an appeal that can take a long

18  time.   So I don't even want to get myself in any kind of position

19  where I'm going to slow this thing down based on recusal.

20          But I'm going to deal with those two parties,

21  Washington Group and Orleans Levee District, and I probably will

22  have oral argument because of the nature of it, because there are

23  some things that I want to get on the record as well and not just

24  in writing.

25          MR. BRUNO:   Judge, a question.

1   some expert to consult with as we go through it, you can

2   certainly do so.  We'll permit one representative of the

3   plaintiffs and one representative of the defendants for you all

4   to decide who to appoint to ask questions of these persons.

5          After we receive the evidence about what's happening

6   now, then Judge Duval will make a decision as to whether what

7   you're doing now is sufficient, whether the plaintiffs'

8   objections are well founded, and if they are, whether some

9   different protocol ought to be developed.

10          This is a difficult thing for us because we have two

11   concerns with this, and they have got to be balanced.  One is, we

12   don't want that work to stop.  We would like to see it finished

13   before June 1st.  That's just a personal view.  But at the same

14   time, we want to balance, we have to balance that with the need

15   to preserve necessary evidence.

16          We certainly don't expect you, I don't think, to save

17   every 16-foot piece of sheet metal that you pull out of there,

18   but, you know, we're not in a position to say what should be

19   saved and what should not.

20          So we're going to start this in this way, and we're

21   going to direct you simply at this time to, in the interim,

22   before we put this protocol into place, to direct the people who

23   are making the repairs and overseeing them, to pay careful

24   attention and be sensitive to the need to preserve technically

25   necessary evidence.

1  then we can decide finally on grouping for the purposes of

2  litigation and for the common fund issues.  And before I decide

3  that, I'm going to want to know what the committee is going to

4  say about that.  I've gotten some suggestions, but I'm interested

5  in when I get the committee to make a proposal on how we handle

6  common fund issues and other issues.

7          But one of the things I wanted to accomplish today

8  is -- because, in my opinion, we're going to be patient but at

9  the same time we're going to be moving, not necessarily on all

10  fronts but moving -- I want to coordinate a master motion

11  practice.  And I've already said about the undue repetition, but

12  I'm not going to preclude you from what you might consider as due

13  process.

14          I want all Rule 12 motions that do not require

15  discovery filed, and I'll tell you when, all motions to remand or

16  sever, all immunity motions, all preemption motions, and all

17  coverage issues that require no discovery.

18          Now, if you file a motion and your opponent says, Wait

19  a minute, this requires discovery, well, then if I really feel

20  like it does, I'm going to say that the motion is premature.

21          And I would like those motions filed by June 1st.  Of

22  course, all of this is dependent upon the fact that I'm not going

23  to grant the recusal motion.  If I do, then that's that.

24          I might point out, in considering these recusal

25  motions, I'm looking at our docket, and although these cases, we

1   have 270 cases that relate to Katrina right now, so if there is a

2   455(a) recusal, that means we could take a long vacation and

3   somebody in Topeka is going to a heck of a time, because I don't

4   think Baton Rouge is certainly the right place because

5   Baton Rouge, I got problems with Baton Rouge because it got a

6   tremendous impact from this storm.

7          These are things that I'm thinking about, and frankly,

8   455(a) is the basis on which I'm going to be looking at because

9   there is no 455(b) recusal that I see.  Yet.  I haven't read all

10  of your motions, but I don't see it yet.  455(b) would be

11  mandatory recusal.

12         All right.  By June 15th -- these are suggestions.  If

13  these things make you gag, you know, you can let us know, and you

14  can let us know now and you can let us know in writing.  The

15  reason we are being inhospitable about phone calls, although

16  we've gotten a few, is there are just too many of you.  We can't

17  do it so you need to fax.

18         Yes, sir, Mr. O'Dwyer.

19         MR. O'DWYER:  Your Honor, you said that you haven't had

20  a chance to read everything submitted to the Court in connection

21  with Mr. Meunier's and Mr. Hubbard's report.  I submitted a

22  minority report.  I'm assuming it's a minority report because I

23  don't know what other people are thinking, because --

24         UNIDENTIFIED SPEAKER:  It's a very small minority

25  report.

1          Your Honor, I think you know, we have a pending motion

2    to remand, and it's only against the levee district, and we would

3    just like to know if the Court is going to rule on that before we

4    get lumped in with all of the other motions that are going to be

5    filed by June 1st.  We filed our motion on November 1, 2005,

6    which was the day that this court reopened again.

7          JUDGE DUVAL:   I'm not going to rule on anything like

8    that on the remand motion until after the 19th because that's

9    nonappealable.  So I want to make sure I've ruled that I'm not

10   going to recuse.

11          We have a hearing date set, and so precisely what are

12   you asking?

13          MR. SARRAT:   There is now a hearing date set on it?

14          JUDGE DUVAL:   We think there is.

15          MR. SARRAT:   Thank you, Your Honor.  That's my only

16   question.

17          JUDGE DUVAL:   Okay.  Judge Wilkinson may have a couple

18   of other things to say, but our next meeting -- and this is

19   draconian -- our next meeting is May 12, 10 o'clock.  And in

20   fact, I would have a -- one reason is we'll have our committee

21   structure by then, and you can set part of the agenda as well as

22   the Court.

23          Mr. Anzelmo.

24          MR. ANZELMO:   I'm sorry, You Honor.  Can you conclude

25   that --

1          JUDGE DUVAL:  Yes, I am.

2          MR. ANZELMO:  Tommy Anzelmo representing the Orleans

3   Levee District.  In connection with the last status conference

4   and the orders that you issued relative to service, you mandated

5   that service was going to be made through fax.  I wanted to see

6   if your Your Honor would allow us to make service through e-mail.

7          The trouble that we are finding is it gets to be a

8   technical problem with the machines, the ability to record and

9   transmit the data.  Everybody seems to have an e-mail system and

10  it's --

11         JUDGE DUVAL:  We're about to do that manditorily in this

12  court, so I don't have a problem with it.  Does anybody here,

13  hopefully all of you -- does anybody here have a problem with

14  that?  Then hearing no objection, we will put that in the minute

15  entry.

16         Sheena, can you remember to tell Janet.

17         Yes, sir.

18         MR. SMITH:  Your Honor, Robin Smith for the

19  United States.  Yesterday something was brought to my attention

20  which I thought I should bring up this morning.

21         At our last hearing, Your Honor disclosed a lot of

22  popular bases for recusal.  I was informed yesterday, and I don't

23  know whether it's correct or not, that Your Honor may have

24  received some assistance from FEMA.

25         JUDGE DUVAL:  Yes.

1          MR. SMITH:  And possibly other members of your staff

2    also have received FEMA assistance.

3          JUDGE DUVAL:  Possibly.  I've tried FEMA cases, by the

4    way, and am doing it right now.  They didn't move to recuse under

5    cause because I wasn't part of the class.

6          MR. SMITH:  I think it would be appropriate if

7    Your Honor would disclose more of the circumstances surrounding

8    that assistance, what prompted that assistance, what the nature

9    of that assistance was, and, also, any other members of

10   Your Honor's staff or Judge Wilkinson's staff who also may

11   similarly have had transactions with the federal government with

12   respect to Hurricane Katrina.

13         JUDGE DUVAL:  Certainly.  To the extent you think it may

14   bias against the Government if we weren't treated well or

15   something?  Is that the intention?  I'm handling cases right now

16   with FEMA.  I'm talking about large cases, nationwide cases with

17   FEMA as we speak, where the Government did not seek to recuse me.

18   But if you ask for something, I'll be glad to do it for whatever

19   relevance it has in this case, which is --

20         MR. BRUNO:  Your Honor, I think --

21         JUDGE DUVAL:  -- minor.

22         MR. BRUNO:  -- I think the burden is first to

23   demonstrate the relevance because you pay taxes, I believe, and

24   you are a federal judge.

25         JUDGE DUVAL:  I have to think about this.  I'm not sure

1  where it's coming from, frankly.

2          MR. BRUNO:  I would respectfully suggest the burden

3  would be on the person asking the question to suggest the

4  relevance of the question before that there is somehow some

5  suggestion that you have to respond.

6          JUDGE DUVAL:  I also like things done in writing.  File

7  something.  File something.

8          MR. SMITH:  Thank you, Your Honor.

9          MR. MEUNIER:  I would suggest it's more of a plaintiff

10  issue.

11          JUDGE DUVAL:  I would be glad to tell anyone what it is,

12  but I certainly have -- anything that I asked the Government,

13  which was miniscule -- in fact, I didn't even ask -- was

14  delivered.  I was not flooded.  I was evacuated.  Had no damage.

15  No economic loss.  No inconvenience.  Was paid a per diem while I

16  was evacuated because I was lucky enough to work for the

17  Government and got to stay in a very nice place in Houma, my

18  hometown.

19          So, you know, file whatever you may, but I like things

20  to be a little more precise, and give me the legal basis for it.

21  I would loved to have recused, but I think it's my duty to hear

22  cases that I shouldn't recuse in.

23          I have two FEMA cases right now, one a national case

24  that we've ruled on -- just to let you know -- directly related

25  to FEMA.  I'm not sure what this case has to do with FEMA, if

 1  anything.

 2          MR. BRUNO:  Nothing.

 3          JUDGE DUVAL:  So, you know, I would just like to know

 4  the context of what you're doing because it's fairly significant.

 5  If I transfer these cases to somewhere else, it would really

 6  mean, frankly, that 270 cases now filed in this court would go

 7  elsewhere.

 8          So I want everybody to think about it, because it's

 9  unlikely -- I'll tell you now -- I'm going to read your papers

10  but I'm not inclined to recuse.  I'll read it.  Just keep that in

11  mind.  Not that I love this, let me just tell you.  I am not a

12  masochist.

13          Yes.

14          MR. MAYEAUX:  Your Honor, Paul Mayeaux in the *Sullivan*

15  *v. State Farm* matter.  I'm not raising any recusal questions.

16  It's a tough spot to follow.  My case is, is frankly one of the

17  cases that don't fit well within any of the cases under the

18  umbrella.  I'm not involved in any levees.

19          JUDGE DUVAL:  I agree.  Your case is sort of suigeneris.

20          MR. MAYEAUX:  And I'm trying to figure out should I

21  calendar this May 12th, 10:00 meeting and show up again?  Is it

22  possible -- I know Mr. Lee has to be here for other reasons.

23          JUDGE DUVAL:  File a motion to say, Judge, I want to be

24  out of the umbrella and say here is why, an ex parte motion, and

25  I'll decide whether you should or shouldn't.  How about that.

| REC.# | DEPARTMENT OF HOMELAND SECURITY<br>FEDERAL EMERGENCY MANAGEMENT AGENCY<br>**APPLICATION/REGISTRATION FOR DISASTER ASSISTANCE** | O.M.B. No. 1660-0002<br>Exp. September 30, 2006<br>(see reverse side) | DR#<br>APP. DATE |
|---|---|---|---|

**1. Name of Applicant (last, first, MI)**
Mr.
Ms.

**1(a) Language**

**2. Applicant Social Security No.**

**3. Damaged Property Address** | No. | Street | Apt/Lot | City | State | Zip | County

**4. Date Damaged Occurred**

**5. Damaged Phone #:**
Phone#2:

**6. Current Phone #:**
Alternate/Cell Phone#:
Note:

**7. E-Mail:**

**8. Cause of Damage**
☐ Earthquake ☐ Fire ☐ Flood ☐ Ice/Snow ☐ Rain ☐ Wind Driven Rain ☐ Hail ☐ Sewer/Backup ☐ Wind ☐ Other_____

**9. Current Location**
☐ Primary Home ☐ Hotel/Motel ☐ Family/Friends ☐ Mass Shelter ☐ Other_____

**10. Mailing Address**

**11. Foreign Address** (Write full address)

**12. Essential Needs (Food, Clothing, Shelter, Medicine)** ☐ Yes ☐ No

**13. Home Damage:** ☐ Yes ☐ No ☐ Unknown  Unsafe: ☐ Yes ☐ No ☐ Unknown
a. Primary Residence ☐ Yes ☐ No    b. Do you: ☐ Own ☐ Rent
c. Residence Type: ☐ Travel Trailer ☐ Mobile Home ☐ House-Single/Duplex
☐ Apt. ☐ Condo/ Townhouse ☐ Boat ☐ Other_____

**14. Personal Property Damage** ☐ Yes ☐ No

**15. Utilities Out** ☐ Yes ☐ No

**16. Inaccessible Due to the Disaster** ☐ Yes ☐ No

**17. Inaccessible Due to Mandatory Evacuation** ☐ Yes ☐ No

**18. Lost Time at Work** ☐ Yes ☐ No

**19. Medical, Med. Personal Property, or Dental Expense** ☐ Yes ☐ No
Do you have Insurance Coverage? ☐ Yes ☐ No
Insurance Company_____  Amount_____

**20. Moving/Storage** ☐ Yes ☐ No
Insurance Coverage ☐ Yes ☐ No
Insurance Company_____  Amount_____

**21. Other Expense** ☐ Yes ☐ No
☐ Chainsaw ☐ Wet/Dry Vac ☐ Cord Wood ☐ Fuel ☐ Dehumidifier ☐ Air Purifier

**22. Funeral Expense** ☐ Yes ☐ No

**23. Business Affected:** ☐ Yes ☐ No  Business Name:_____
Business Related Essential Tool/Equipment ☐ Yes ☐ No
Does your business operate as a Private not-for-Profit Org.? ☐ Yes ☐ No

**24. Farm or Ranch Damage** ☐ Yes ☐ No

**25. Total number of vehicles for the household _____**
Vehicle(s) damaged Yes☐ No☐
Total number of vehicles for the household that are drivable _____

| Year | Make | Model | Comp. Ins | Liab. Ins | Vehicle Reg. |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

**26. Insurance** | Type | | Company

**27. Occupants living in primary residence at time of disaster**

| Last Name | First Name | MI | Relationship | Social Security No. | Age | Dep. |
|---|---|---|---|---|---|---|
| | | | | Applicant | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |

**28. Self-employed as a primary source of income:** ☐ Yes ☐ No
Primary Source of Income:_____
Number of claimed dependents _____
Combined family pre-disaster gross income $_____
☐ Weekly ☐ Bi-weekly ☐ Monthly ☐ Quarterly ☐ Yearly

**29. Electronic Funds Transfer:** ☐ Yes ☐ No
Institution Name:_____
Routing No._____ (9 digits)  Account type: ☐ Checking ☐ Savings
Account No._____

**30. Comments**

30.(a) FEMA Rep.

**EXHIBIT S**

## Application/Registration for Disaster Assistance Instructions

1.    Check Mr. or Ms. Enter the last name, first name, and middle initial of the applicant. Jr., Sr., etc. follow the last name.
1(a).  Enter the language that the applicant speaks. If the applicant speaks English, leave blank.
2.    Enter the applicant's social security number (SSN). If the applicant does not provide a SSN, processing of the applicant may be delayed.
3.    Enter the full physical street address at which the damage occurred. Do not enter a P.O. or general delivery address.
4.    Enter the date the damage occurred.
5.    Do NOT include a beeper/pager number in any of the phone number fields. Damaged Phone number: Enter the phone number used in the       applicant's home at the
      time of the disaster even if the number is currently working. Phone #2: Enter any second phone number that was in the home at the time of the disaster, e.g. child's
      phone or business phone. If none, leave blank.
6.    Current Phone No.: Enter the current phone number where the applicant can be reached. Alternate/Cell Phone No.: Enter a work phone number or the phone
      number of a friend, relative, or neighbor that FEMA can use to leave a message for the applicant. Note: Include extension number (if available).
7.    Enter e-mail address (if available).
8.    Check Cause of Damage to the home (more than one cause may be checked). Other causes of damage may include, explosion, drought, and riot.       If more that the
      home was damaged (e.g., auto was flooded), please describe in the Comments section in item no. 30.
9.    Check the Current Location where the applicant is living.
10.   Enter the applicant's mailing address. It may or may not be the same as the Damaged Property Address or where the applicant is now living. The    Mailing
      Address may be a post office or general delivery address.
11.   If the applicant's current mailing address is not located in the U.S. or one of its territorial possessions (e.g., Puerto Rico, Virgin Islands, Guam), please enter the full
      Foreign Address.
12.   If the applicant has Essential Needs (e.g., Food, clothing, shelter, medicine), check Yes. If the applicant has already made an appointment to see  the American
      Red Cross (ARC) or has already been assisted by the ARC, check No.
13.   If the applicant has damage to the home (e.g., electrical, heating, floors, walls, ceilings, and foundation), check Yes. If the applicant's home is unsafe, check Yes.
      Check Unknown if the applicant does not know if the home is damaged or unsafe.  a). If the damaged home is; where the applicant lives more than six months of
      the year; or the applicant lists it as the address of his/her Federal Tax Return; or the applicant files a homestead exemption; or the applicant uses it as a voter
      registration address, check Yes.  b). If the applicant is named on the deed, or the applicant maintains the home and pays the taxes, but pays no rent, or the applicant
      has lifetime occupancy rights while not holding legal title to the home, check Own.  Check Rent if the applicant does not meet any of the above ownership criteria,
      even if the applicant pays not rent.
      c). Check the type of residence that was damaged (e.g., Travel Trailer, Mobile Home, House-Single/Duplex, etc.). Other: may include, for example, homeless or
      RV.  Enter "inapplicable" if the home was not affected by the disaster or emergency.
14.   If the applicant had Personal Property Damage (e.g., appliances, clothing, and/or furniture), check Yes. If the applicant does not know if their  personal property
      was damaged, check Unknown.
15.   If the applicant's utilities are not working, check Yes. Utilities may include sewer, water, gas, electricity, and/or heating.
16.   If the home is Inaccessible Due to the Disaster, check Yes. Inaccessible may include disruption or destruction of transportation routes or other obstructions that
      prevent the applicant from gaining entry to the damaged home. If the applicant is able to enter the home, check No.
17.   If the applicant's home is inaccessible due to restrictions placed on movement by a responsible official due to continued health and safety    problems, check Yes.
      If the applicant can enter the home, check No.
18.   If the applicant or a member of the applicant's household lost work or became unemployed as a result of the disaster for which they will not be  compensated,
      check Yes. For example, if the family breadwinner was incapacitated or killed due to the disaster.
19.   If the applicant incurred a Medical, Medical Personal Property, and/or Dental Expense related to the disaster, check Yes. Then check the type of    expense(s):
      Medical, Med. Personal Property, and/or Dental Expense. Under Insurance Coverage, check Yes if the expense was insured. If the     expense was not insured,
      check No. Under Insurance Company, provide the name of applicant's insurance company. Under Amount, please enter the amount of expenses incurred even if
      the applicant does not have insurance.
20.   If the applicant incurred a Moving/Storage expense related to the disaster, check Yes. Under Insurance Coverage, check Yes if the expense was insured. If the
      expense was not insured, check No. Under Insurance Company, provide the name of the applicant's insurance company. Under Amount, please enter the amount
      of expenses incurred even if the applicant does not have insurance.
21.   If the applicant had Other Expenses, check Yes. Check the types of expenses that apply (e.g., fuel, chainsaw) or write in the expense on the blank line if not listed.
22.   If the applicant incurred a Funeral Expense related to the disaster, check Yes.
23.   If the applicant had business or rental property (not a farm) that was damaged by the disaster, check Yes. If Yes, enter the business name. If the applicant had
      business Related Essential Tools damaged by the disaster, check Yes. If the business operated as a Private not-for-Profit Organization, check Yes.
24.   If the applicant had a Farm or Ranch that was damaged due to the disaster, check Yes. (This includes farm/ranch property, livestock, equipment, etc., but not a
      farm home or garden.)
25.   Enter the total number of vehicles for the household (regardless of condition) and their year, make, and model. Check Yes if the listed vehicle(s) has
      Comprehensive and/or Liability Insurance, and if the vehicle(s) is registered. If more space is needed use the space in item # 30. If the applicant or one of the
      applicant's dependents owns a vehicle(s) that was damaged by the disaster, check Yes. Finally, enter the total number of vehicles for the household that are
      drivable.
26.   List the type of insurance that the applicant held at the time of the disaster, including but not limited to sewer backup, earthquake, real property, and/or personal
      property.  Include the name of the insurance company.
27.   List information for the applicant and all other persons/dependents who consider the home to be their primary residence at the time of the disaster,  whether or not
      they are related to the applicant. It is important that the applicant's SSN is included.
28.   If the applicant is self-employed and also works for someone else, check Yes. Enter the applicant's Primary Source of Income, (e.g., self-employed, unemployed
      benefits, pension, Social Security, AFDC, living off savings, annuities, stock dividends, assisted by family/friend, etc). Enter the number of claimed dependents as
      listed on the applicant's Federal Tax Return.   Enter the combined family pre-disaster gross Income. (This is the amount of income before any deductions, and
      may include money from employment, Social Security, retirement, welfare, child support, stocks, interest, annuities, and savings or assistance from family and
      friends.  It does not include food stamps or HUD Section 8 assistance.)  Check the appropriate frequency of pay (weekly, bi-weekly, monthly, quarterly, or yearly).
29.   If the applicant would like FEMA to automatically transfer assistance into their checking or savings account, check Yes next to Electronic Funds Transfer.  Enter
      the name of the applicant's financial institution.  Enter the applicant's 9 digit routing no. (The routing no. is the 9 digit number that appears in the lower left hand
      corner of the check.) Indicate the applicant's account type by marking the Checking or Savings box.  Enter the applicant's account no.  (The account number can
      be found at the center bottom of a check immediately after the routing number or can be found on a savings or checking account statement.)
30.   Enter any additional comments as necessary.

### PRIVACY ACT STATEMENT

The Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5206, Executive Order 12148, as amended, and Title IV of The Personal
Responsibility and Work Opportunity Reconciliation Act of 1996, 8 U.S.C.§§ 1601 et seq., authorizing the collection of this information.  The primary use of this
information is to determine your eligibility to receive FEMA disaster assistance. Disclosures of this information may be made: Upon written request, to federal and state
agencies providing disaster assistance, as well as to local governments or voluntary agencies from which you are seeking assistance, so that assistance efforts or benefits are
not duplicated; to agencies, organizations and institutions as necessary for FEMA to obtain information from them in making eligibility determinations; to federal, state and
local government agencies to promote hazard mitigation planning and enforcement; to law enforcement agencies or professional organization where there may be violation
or potential violation of law; to a federal, state, or local agency we request information relevant to an Agency decision concerning issuance of a grant or other benefit, or in
certain circumstances when a Federal agency requests such information for a similar purpose from us; to a Congressional office in response to an inquiry made at the request
of the individual; to the Office of Management and Budget (OMB) in relation to private relief legislation under OMB circular A-19; and to the National Archives and
Records Administration in records management inspection conducted under the authority of 44 U.S.C.§§ 2904 and 2906.  Your Social Security number is solicited during
registration pursuant to the Debt Collection Improvement Act of 1996, 31 U.S.C.§§ 3325(d) and 7701(c)(1). Furnishing the social security number, as well as other
information, is voluntary, but failure to do so may delay or prevent provisions of disaster assistance.

### PAPERWORK BURDEN DISCLOSURE NOTICE

Public reporting burden for this form is estimated to average 19 minutes per response.  The burden estimate includes the time for reviewing instructions, searching existing
data sources, gathering and maintaining the data needed, and completing and submitting the form.  you are not required to respond to this collection of information unless a
valid OMB control number is displayed in the upper right corner of this form.  Send comments regarding the accuracy of the burden estimate and any suggestions for
reducing the burden to: Information Collections Management, Department of Homeland Security, Federal Emergency Management Agency, 500 C Street, SW, Washington,
DC 20472, Paperwork Reduction Project (1660-0002).  NOTE: Do not send your completed form to this address.

**The Tele-Registration recording, informs the respondent at the beginning of the registration intake, of the Privacy Act and Paperwork Reduction Act (PRA)
burden disclosure information.**