FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 APR 18 ᴾ 4: 58

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO. 05-4182 |
| BOH BROTHERS CONSTRUCTION CO., LLC, ET AL. | * | SECTION "K" (2) |
| | * | |

**THIS DOCUMENT RELATES TO:  ALL ACTIONS**

### PLAINTIFFS', CLAIMANTS' AND THIRD-PARTY PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
1.  THE GOVERNMENT'S MOTION TO DISMISS IN CIVIL ACTION NO. 05-4237 AND
2.  THE GOVERNMENT'S SECOND MOTION TO DISMISS THIRD-PARTY COMPLAINT IN CIVIL ACTION NO. 05-4419

**MAY IT PLEASE THE COURT:**

Before the Court are two motions to dismiss filed by the United States of America alleging lack of subject matter jurisdiction.  Plaintiffs, etc. submit that both of the Government's motions are misplaced, contrary to law, and should be denied for the following reasons.

　　1.　　Third-Party Complaints are excepted from the administrative claims requirements of the Federal Tort Claims Act.

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No_____

-1-

2.    This case involves admiralty and maritime jurisdiction, and in such cases, under the Suits in Admiralty Act, there is no prerequisite for the filing of administrative claims.

3.    The functional equivalent of administrative claims were filed by plaintiffs, etc., on October 12, 2005, and even if the claims plaintiffs, etc. in this action were subject to technical dismissal, a new suit was filed on Thursday, April 13, 2006, one month and one day after the filing of the "functional equivalent" of administrative claims, bearing Civil Action No. 06-1885.

4.    The Government has, essentially, already denied plaintiffs' administrative claims by virtue of a letter dated March 22, 2006, from Randall C. Merchant, Assistant District Counsel, to the undersigned, so this suit is timely.

5.    Equity, justice and judicial economy dictate that the claims of plaintiffs, etc., should not be dismissed since the reasons for the administrative claims requirements in the Federal Tort Claims Act would not be furthered by dismissal in this particular instance.

6.    Plaintiffs have asserted claims against the United States of America falling outside of the four-corners of the Federal Tort Claims Act, including claims for pollution damage under the Oil Pollution Act of 1990, and claims alleging the taking of property without just compensation in violation of the Fifth Amendment to the U.S. Constitution.

7.    The Admiralty Extension Act is not applicable to the claims of plaintiffs, etc., against the United States of America.

Each of these contentions will now be briefed, in order.

## I.

### THIRD-PARTY COMPLAINTS ARE EXCEPTED FROM THE ADMINISTRATIVE CLAIMS REQUIREMENTS OF THE FEDERAL TORT CLAIMS ACT

Plaintiffs, Claimants and Third-Party Plaintiffs recall for the Court's attention the allegation made in a prior Court-filing that the Government's Motion for Judgment on the Pleadings was simply a subterfuge to avoid the consequences of the following language in the Federal Tort Claims Act, and more particularly in 28 U.S.C. §2675(a):

> "The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third-party complaint, cross-claim, or counterclaim." 28 U.S.C. §2675(a).

The Government's position with respect to the subject Motion(s) to Dismiss is not materially different from its position with respect to its Motion for Judgment on the Pleadings, which the Government lost at oral argument. Like the Government's position on that motion, the Government's position here is entirely misplaced and is a blatant attempt to avoid the legal effect of the above-quoted sentence, which would render it totally unnecessary for Claimants and Third-Party Plaintiffs to be required to exhaust administrative remedies prior to suing the Government.

In the next sub-part of this Memorandum in Opposition to the Government's Motion(s) to Dismiss for Lack of Subject Matter Jurisdiction, plaintiffs, etc. are arguing that this Court has subject matter jurisdiction by virtue of the Suits in Admiralty Act (46

U.S.C. §741, et seq.), and that the Suits in Admiralty Act does not require exhaustion of administrative remedies as a condition precedent to suing the Government. See: Drake Towing Company, Inc. v. United States, 765 F.2d. 1060 (11th Cir. 1985). Plaintiffs, etc. also incorporate herein by reference thereto the arguments advanced by Ingram Barge Company in its "Sur-Reply to United States' Reply to Oppositions to Motion for Judgment on the Pleadings", as respects the case of British Transport Commission v. United States, 354 U.S. 129, 77 S.Ct. 1103 (1957).

## II.

## THIS CASE INVOLVES ADMIRALTY AND MARITIME JURISDICTION, AND IN SUCH CASES, UNDER THE SUITS IN ADMIRALTY ACT, THERE IS NO PREREQUISITE FOR THE FILING OF ADMINISTRATIVE CLAIMS

The Suits in Admiralty Act permits suits to be filed in Federal Court against the United States of America pursuant to the Federal Court's admiralty and maritime jurisdiction. 46 U.S.C. §742 specifically provides, in pertinent part, as follows:

> "In cases where . . . if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate non-jury proceeding in personam may be brought against the United States . . . such suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States . . . In case the United States . . . shall file a libel in rem or in personam in any district, a cross libel in personam may be filed or a set-off claimed against the Untied States . . . with the same force and effect as if the libel had been filed by a private party." 46 U.S.C. §742.

Although the Suits in Admiralty Act was not pleaded initially, on March 22, 2006, Magistrate Wilkinson allowed the filing of the Seventh Amended Complaint (Record Document No. 108) and a Second Supplemental and Amended Claim and Third-Party

Complaint (Record Document No. 110) in order to plead the provisions of the Suits in

Admiralty Act.

It is axiomatic that the United States Constitution extends federal

judicial power "to all cases of admiralty and maritime jurisdiction." U.S.

Constitution, Article III, Section 2.  Congress has embodied that power in

28 USC §1333, which provides that federal courts have "original

jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime

jurisdiction".  The test for whether a party may invoke federal admiralty

jurisdiction pursuant to 28 USC §1331 over a tort claim was recently set

forth by Judge Mary Ann Vial Lemmon in <u>Porche vs. St. Tammany Parish</u>

<u>Sheriff's Office</u>, 67 F.Supp. 2d 631, 636 (E.D. La. 1999), as follows:

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28
> U.S.C. § § 1331 over a tort claim must satisfy conditions both of location
> and of connection with maritime activity.  A court applying the location
> test must determine whether the tort occurred on navigable water or
> whether injury suffered on land was caused by a vessel on navigable water.
> 46 U.S.C. App. § 740.  The connection test raised two issues.  A court,
> first must "assess the general features of the type of incident involved,"
> [*Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 2896, 111 L.Ed. 2d 292
> (1990)], to determine whether the incident has "a potentially disruptive
> impact on maritime commerce," 110 S.Ct. at 2896, n.2.  Second, a court
> must determine whether "the general character" of the "activity giving rise
> to the incident" shows a "substantial relationship to traditional maritime
> activity."  110 S. Ct. at 2897, 2896, and n.2.

It is respectfully submitted that the case at bar includes a plethora of factors which

mandate the conclusion that admiralty and maritime jurisdiction exists against the

Government:  vessel, navigable waters, failure to safeguard vessel, and failure to contain

waters.

      **a)**      **The alleged wrongs by the government bear a significant relationship
to a traditional maritime activity**

The Supreme Court has uniformly held that a maritime action may be maintained against the United States only under the Suits in Admiralty Act. <u>Brady v. Roosevelt S.S. Co.</u>, 317 U.S. 575, 63 S.Ct. 425 (1943). Subsequent amendments to the act, as amended September 13, 1960, have not altered the rule. <u>T.J. Falgout Boats, Inc. v. The United States of America</u>, 508 F.2d 855 (9th Cir. 1974).

The Court in <u>T.J. Falgout Boats, Inc.</u>, <u>supra</u>, set forth the proper analysis for determining whether a wrong or series of wrongs bear a significant relationship to traditional maritime activity as follows:

> Prior to the Supreme Court's decision in *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 34 L.Ed. 2d 454, 93 S. Ct. 493 (1972), maritime jurisdiction was governed by the "locality rule" as recognized and defined in *THE PLYMOUTH*, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1865), [**4] a rule which applied admiralty jurisdiction whenever a maritime locality was involved. *Executive Jet*, upon which appellants rely, involved the crash of a commercial jetliner in Lake Erie while engaged in a flight wholly within the continental Untied States. There, the court annexed to the "locality rule" a requirement that the facts of the occurrence show "a significant relationship to traditional maritime activity." 409 U.S. at 268. it held that admiralty jurisdiction was lacking despite the fact that the accident occurred in navigable waters. In so holding, it concluded that [HN2] the mere fact the alleged wrong occurred or was located on or over navigable waters, was not in itself sufficient to turn a commonplace airplane negligence case into a "maritime tort." The Court observed that it was far more consistent with the history and purpose of admiralty to require, in addition [*857] to a maritime locality, that the occurrence bear a significant relationship to traditional maritime activity. The Court made it clear that it was not deciding whether an aviation tort could ever qualify for admiralty jurisdiction. *Id.* At 271.
>
> Our problem is to [**5] decide whether the circumstances under which appellants' damages occurred bear a significant relationship to traditional maritime activity.
>
> In analyzing *Executive Jet*, the Fifth circuit in *Kelly v. Smith*, 485 F.2d 520, 525 (CA5 1973), cert. denied 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed. 2d 558 (1974), suggested that [HN3] in determining whether the wrong bears a significant relationship to traditional maritime activity, the

court should look to the following factors: ". . . the functions and roles of the parties;  the types of vehicles and instrumentalities involved;  the causation and the type of injury;  and traditional concepts of the role of admiralty law." *Accord:  St. Hilaire Moye v. Henderson*, 496 F.2d 973, 978 (CA8 1974).  We adopt these factors as persuasive on our facts.

Applying those factors to the facts in the case at bar, when one examines the functions and roles of the parties, Plaintiffs are suing the United States of America through its agencies and instrumentalities, the U.S. Army Corps of Engineers and the United States Coast Guard, The Corps of Engineers not only built the Industrial Canal, and had jurisdiction over the retaining walls on the East side of the Canal, but may also have had knowledge that Ingram's barge was in the Canal prior to the storm.  The same may be said of the United States Coast Guard which had concurrent jurisdiction with the Corps of Engineers over the waters of the canal, and whatever was in the Canal before the storm.

When one moves to the next inquiry, "the types of vehicles and instrumentalities involved", what could be more "maritime" than a covered hopper barge, used in both interstate and intrastate commerce, in this case to discharge cement in interstate commerce at Lafarge's cement facility on the Industrial Canal.

While Ingram's barge is easy to identify as a purely maritime "vehicle", the next inquiry, "instrumentality" is more difficult.  However, here we are dealing both with steel sheet pile and concrete retaining walls, whose very purpose was the containment of navigable waters of the United States within the Industrial Canal, which clearly constitute "navigable waters of the United States".  33 C.F.R. 329, et seq. defines the term "navigable waters of the United States", as used to define the authority of the U.S. Army Corps of Engineers and the extent of the Corps' jurisdiction as follows:

"Navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce. A determination of navigability, once made, applies laterally over the entire surface of the water body, and is not extinguished by later actions or events which impede or destroy navigable capacity."

Clearly, "the instrumentalities involved", navigable waters and retaining walls, have a very definite "maritime" flavor.

The next factors, causation and the type of injury, while not necessarily clear cut, also have a decidedly maritime flavor. Plaintiffs allege that at least one breach in the Industrial Canal retaining wall was caused by Ingram's barge. Another breach apparently did not involve a barge, but should not have happened if the retaining wall which should have been designed to confine the navigable waters of the Industrial Canal had served its purpose. Some of the damages suffered by Plaintiffs undoubtedly were caused by Ingram's barge, at least in part.

And turning to the last factor, "traditional concepts of the role of admiralty law", what could be more maritime than a barge on navigable waters, engaged in commerce, breaking loose during a storm, breaking through a Crops of Engineers designed and constructed facility, and contributed to, at least in part, by surge entering the waterway through other Corps of Engineers designed navigation projects, the Mississippi River Gulf Outlet and the Gulf Intracoastal Waterway,[1] which became "hurricane highways" and "super-highways for surge" aimed straight at St. Bernard and New Orleans?

---

[1]   It is also to be noted that on Thursday, April 13, 2006, six-months and one day after plaintiffs maintain they filed the "functional equivalent" of administrative claims, plaintiffs, etc. filed a Verified, Protective

**b)      Plaintiffs' claims could not be any more "cognizable in admiralty"**

Not only does this case involve claims for damages which were allegedly proximately caused by a barge on navigable waters, but also the claims against the Government because the Government failed to properly design, construct and maintain retaining walls which were capable of holding those waters in check, and negligently designed, constructed, inspected and maintained an entire waterway system which was incapable of holding navigable waters in check.

As is reflected, <u>supra</u>, Plaintiffs' claims against the Government include the following:

1)      Claims that the Corps of Engineers and the Coast Guard negligently failed to sink Ingram's barge in the Industrial Canal prior to KATRINA;

2)      Claims that the Corps of Engineers negligently designed, constructed and maintained the retaining walls on the East Side of the Industrial Canal; and

3)      Claims that the U.S. Army Corps of Engineers negligently designed, constructed, inspected and maintained the Industrial Canal and its "feeder" waterways, namely the Mississippi River Gulf Outlet and the Gulf Intracoastal Waterway.

Plaintiffs also were recently granted leave to Supplement and Amend their pleadings[2] to allege as follows:

V.

---

Re-filed Complaint alleging admiralty and maritime jurisdiction against the Federal Government and alleging, <u>inter alia</u>, the defective design, construction, inspection, maintenance, operation and dredging of an entire navigable waterway project.

[2]   Record Document Nos. 108 and 110, filed on March 22, 2006.

## VI.

The Mississippi River Gulf Outlet ("MRGO") is a navigation channel designed, constructed, inspected and maintained by the United States of America, through its agency and instrumentality, the U.S. Army Corps of Engineers ("ACOE").   The MRGO is a 76-mile navigation channel oriented in a northwest-southeast direction, bisecting the marshes of Lower St. Bernard Parish and the shallow waters of Chandeleur Sound. It was originally authorized to a depth of 36 feet, a surface width of 650 feet, and bottom width of 500 feet.  Since the construction of the MRGO was completed in 1965, the MRGO's banks have eroded so that the surface width now averages 1,500 feet.  When or shortly after Hurricane KATRINA made landfall in Louisiana, levees along the MRGO failed in approximately twenty places along its length, directly flooding most of St. Bernard Parish.  The existence of and the eroded condition of the MRGO intensified KATRINA's initial storm surge, raised the height of the wall of water, and increased the velocity of the surge experienced by the levee structures designed to resist hurricane effects, including the levee and floodwall structures designed to contain the waterways described, infra. The Gulf Intracoastal Waterway from the junction with the MRGO and eastward to its outlet into Lake Borgne and Mississippi Sound, is a dredged small craft and barge channel approximately 400 feet in width, with a project depth of 12 feet.  West of the MRGO junction, however it becomes a ship channel and widens to 800 feet and 32-35 feet in depth to

accept MRGO ship traffic.  The intersection of the wider and deeper GICW with the IHNC causes a narrowing funnel shape into the Industrial Canal, which has a depth of approximately 30 feet but a width of approximately 400 feet, and is blocked at its south end by the IHNC locks, a waterway system which becomes progressively narrower and shallower as it proceeds toward New Orleans' Ninth Ward, heightening any storm surge from the north and east into the IHNC.  As a result of the intensification described in the preceding paragraphs, the storm surge overtopped the levees and floodwalls, which permitted scouring on the landward side of the levees, which in turn undermined the levees and floodwalls along the MRGO, GICW and Inner Harbor Navigation Canal ("IHNC" or "Industrial Canal"), all of which resulted in inundation by water of Orleans and St. Bernard Parishes that would not have occurred but for the existence of and deteriorated condition of the MRGO and the inadequacies of the levee and floodwall systems along the MRGO, GICW, and IHNC, all of which were negligently and defectively designed, constructed, inspected and maintained by the ACOE, in violation of acts of Congress and in violation of the ACOE's own regulations and procedures.

The United States Court of Appeals for the Fifth Circuit has characterized the Mississippi River Gulf Outlet as "a navigation aid project".  Graci vs. United States, 456 F.2d 20 (5th Cir. 1971).  Plaintiffs respectfully submit that this navigation aid project played a pivotal role in what ultimately happened on the East side of the Industrial Canal

on the late evening and early morning of August 28-29, 2005, thus clothing this entire

case with admiralty and maritime jurisdiction.

     **c)**     **The suits in admiralty act applies in all cases where, if a private person or property were involved, a proceeding in admiralty could be maintained**

The United States Supreme Court specifically addressed the 1960 amendments to

the Suits in Admiralty Act, which included the insertion of the words "if a private person

or property were involved" in <u>United States vs. United Continental Tuna Corp.</u>, 425 U.S.

164, 96 S.Ct. 1319 (1976). In <u>United Continental Tuna Corp.</u>, supra, the Court

specifically addressed the effect of adding that language to the Suits in Admiralty Act as

follows:

> Two amendments were designed to clarify the jurisdictional language of the Suits in Admiralty Act. First, the committee added language authorizing suits against the United States where a suit would be maintainable "if a private person or property were involved." The prior version of the Act had authorized suits against the United States only when suits would be maintainable if the "vessel" or "cargo" were privately owned, operated, or possessed, and that language had generated considerable confusion. N14.

> N14 Senate Report 5, citing *Ryan Stevedoring Co. v. United States*, 175 F.2d 490 (CA2), cert. denied, 338 U.S. 899 (1949). Compare *Lykes Bros. S.S. Co. v. Untied States, supra*, with States Marine Corp. v. United States.

> This amendment, which has no bearing on this case, has generally been held to require that those maritime tort claims that were previously cognizable only on the law side of the district courts under the Federal Tort Claims Act now be brought on the admiralty side of the district courts under the Suits in Admiralty Act. (citations omitted).[3]

---

[3]   The second change to the Suits in Admiralty Act made in 1960, deleting prior language requiring that a vessel be "employed as a merchant vessel" does not concern the issues in the case at bar.

This view of the effect of the addition of the words "if a private person or property were involved" to the suits in Admiralty Act also is the view of the Fifth Circuit. In <u>McCormick vs. United States</u>, 680 F.2d 345 (5th Cir. 1982) the Fifth Circuit stated:

> In 1960, however, Congress amended section 2 of the SAA, which now provides that the SAA applies not only in cases where government vessels and cargo are involved, but also "(i)n cases where . . . if a private person or property were involved, a proceeding in admiralty could be maintained. . . " [JN7] 46 U.S.C. s 742. Every circuit to address the effect of this amendment, including our own, has held that the language "if a private person or property were involved" extended the coverage of the SAA to include all maritime tort claims against the United States where the plaintiff would have an action in admiralty were the defendant a private person rather than the government. (citations omitted).

> <u>FN7.</u> The amended s 742 provides in pertinent part as follows:

> In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States . . . .

**d)   The suits in admiralty act contains no requirement for exhaustion of administrative remedies**

Plaintiffs do not argue with the Government's assertion that the Federal Tort Claims Act (28 U.S.C. §2671, <u>et seq.</u>), requires exhaustion of administrative remedies as a prerequisite to filing suit against the Government.  Indeed, 28 U.S.C. §2675(a) specifically provides that "An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  However, under the unique circumstances presented by Hurricane KATRINA litigation, Plaintiffs respectfully

submit that adhering to mechanical technical requirements would be a waste of judicial efficiency and would deprive Plaintiffs of substantial justice.

Plaintiffs find themselves in the unenviable position of having to argue a <u>sine-qua-non</u>, because the provisions of the Suits in Admiralty Act include no similar specific prerequisite for exhaustion of administrative remedies. The legal authorities for the proposition that the Suits in Admiralty Act does not require exhaustion of administrative remedies as a prerequisite to filing suit against the Government are scarce. However, they do exist. See <u>Drake Towing Co., Inc. v. Misner Marine Construction Company</u>, 765 F.2d 1060 (11th Cir. 1985) and cases cited therein. In any event, Plaintiffs challenge the Government to argue persuasively otherwise.

### III.

### THE FUNCTIONAL EQUIVALENT OF ADMINISTRATIVE CLAIMS WERE FILED BY PLAINTIFFS, ETC., ON OCTOBER 12, 2005, AND EVEN IF THE CLAIMS OF PLAINTIFFS, ETC. IN THIS ACTION WERE SUBJECT TO TECHNICAL DISMISSAL, A NEW SUIT WAS FILED ON THURSDAY, APRIL 13, 2006, ONE MONTH AND ONE DAY FROM THE FILING OF THE FUNCTIONAL EQUIVALENT OF THE ADMINISTRATIVE CLAIMS, BEARING CIVIL ACTION NO. 06-1885

Sometimes one finds himself (or herself) "too deep in the forest to see the trees", and that has occurred in this case. Appended to this Memorandum in Opposition, and marked for identification Exhibit No. 1, is a copy of a handwritten missive which was hand-delivered by the undersigned to the United States Army Corps of Engineers on Wednesday, October 12, 2005, c/o the COE's Deputy District Counsel, Randy D. Florent, Esq., at the COE's offices at the Foot of Prytania Street and the Mississippi River here in New Orleans.

The Court will note that, although the missive references a "Freedom of Information Act Request", it also clearly states:

> I am a local attorney, and a named plaintiff in two pieces of litigation involving The United States of America, acting by and through its agency and instrumentality, the U.S. Army Crops of Engineers.  <u>I attach copies of the Original Complaints in each action, both filed in the United States District Court for the Eastern District of Louisiana, one bearing Civil Action No. 05-4181, and the other bearing Civil Action No. 05-4237.</u>  (emphasis supplied).

It is respectfully submitted that the attached handwritten missive, which was hand-delivered to the United States Army Corps of Engineers on October 12, 2005, with copies of plaintiffs' Complaints in the Parfait case (C.A. No. 05-4237) and in Civil Action No. 05-4181, constitutes the "functional equivalent" of valid administrative claims against the COE on behalf of the plaintiffs who, at that time, were specifically named in the two (2) Complaints hand-delivered to the COE through to Mr. Florent.

Plaintiffs renew their assertion that the Government's Motions to Dismiss in these cases are mean-spirited and constitute "harassment" of the already-knocked-down citizenry.  Plaintiffs also renew their argument that equity dictates that their claims against the Government should not be dismissed under the unique circumstances which Hurricane KATRINA litigation presents to the Court.

Additionally, a new suit naming the original plaintiffs in Civil Action No. 05-4237, was filed on Thursday, April 13, 2006, (bearing Civil Action No. 06-1885), exactly 6 months and 1 day from the presentation of the functional equivalent of administrative claims to the U.S. Army Corps of Engineers on October 12, 2005.  Accordingly, the

Verified, Protective Re-filed Complaint, all or a portion of which may ultimately be consolidated with the cases at bar, should cure any technical procedural defect in plaintiffs' pleadings which heretofore may have existed.

IV.

**THE GOVERNMENT HAS, ESSENTIALLY, ALREADY DENIED PLAINTIFFS' ADMINISTRATIVE CLAIMS BY VIRTUE OF A LETTER DATED MARCH 22, 2006, FROM RANDALL C. MERCHANT, ASSISTANT DISTRICT COUNSEL, TO THE UNDERSIGNED, SO THIS SUIT IS TIMELY**

Assuming the undersigned is correct in asserting that his October 12, 2005 handwritten and hand-delivered Freedom of Information Act request, with attachments, to the United States Army Corps of Engineers was sufficiently specific enough to put the COE on notice of the plaintiffs' claims against them, then the date so "magical" to the U.S. Department of Justice, i.e., 6 months following the submission of administrative claims without disposition by the agency in writing has already passed, and more particularly on Thursday, April 13, 2006, when plaintiffs, etc. filed a "sanitized" new suit against the United States of America, bearing Civil Action No. 06-1885.

However, even if the undersigned counsel is wrong in asserting that his FOIA request, with attachments, was the "functional equivalent" of properly perfected administrative claims, the Government's Motion to Dismiss should still be denied by This Honorable Court because the U.S. Army Corps of Engineers has, in essence, already denied plaintiffs' claims in writing by certified mail. 28 U.S.C. §2675.

Even before receipt of the Government's Motions to Dismiss plaintiffs' claims for lack of subject matter jurisdiction, the undersigned attempted to perfect administrative claims, first on his own behalf, on January 10, 2006, and later on his sister's behalf, on

-16-

January 20, 2006. On January 20th the undersigned also amended his own administrative claim in addition to submitting his sister's claim. At the time, the undersigned was proceeding in an abundance of caution, because he was mindful of criminal sanctions which can be imposed for the submission of claims which are proven to be "false".

By mid-February, however, after being "bombarded" with more and more paper from the Government and other parties, in this and in other KATRINA litigation pending in the United States District Court for the Eastern District of Louisiana, the undersigned came to the conclusion that he could "throw caution to the wind" and not break the law or subject himself to criminal prosecution.[4] Accordingly, on February 17, 2006, the attached letter marked for identification as Exhibit No. 2, was sent to the U.S. Army Corps of Engineers.[5] That letter attempted to do what a certain body of law arguably requires in order to perfect administrative claims against the Government as a prerequisite to filing suit under the FTCA.

Nothing was heard from the COE, at least until March 28, 2006.

On March 28, 2006, the attached letter, marked for identification as Exhibit No. 3, namely a certified return-receipt-requested letter dated March 22, 2006 from Randall C. Merchant, Esq., Assistant District Counsel of the COE's New Orleans District, and addressed to the undersigned was received. Incredibly, notwithstanding this and other litigation which has been instituted against the United States of America, acting by and through its agency and instrumentality, the U.S. Army Corps of Engineers, in This

---

[4]   Although one supposes that in the criminal milieu, the U.S. Government can prosecute anybody they want to prosecute, for anything, much like civil litigants can sue "anybody for anything".

[5]   Pages 2 through 15, listing the names of individuals on whose behalf claims were being submitted, have been omitted for the sake of brevity.

Honorable Court, and notwithstanding the submission of written claims in several different formats, Mr. Merchant's letter advised:

> "None of the individuals named in your letters has submitted valid FTCA tort claims. . ."

Mr. Merchant's letter goes on to state, "Your clients have not filed a valid FTCA administrative claim until they each provide the above requested information within two years from the date of the incident giving rise to their alleged claims." The "requested information" included the following:

> "Proof that you legally represent each individual listed as a claimant".
>
> "Appropriate testamentary letters".
>
> "Adequate information that would allow us to thoroughly investigate their alleged claims".

Although no disrespect is intended towards Mr. Merchant, he must have been "living on the moon" since August 29, 2006 if he or his principals require further explanation for why residents and former residents of the Greater New Orleans Metropolitan Area have the U.S. Army Corps of Engineers in their sights. In short, it should be painfully obvious to the Court that the Government and its agency not only read the FTC as requiring that administrative claims should be filed, but they also reserve the right to critique each claim-presentation and dictate what they want included in each claim before they will acknowledge that the claim has any legal effect on the ticking-of-the-clock!

This is balderdash.

On the same date Mr. Merchant's letter was received, March 28, 2006, the

undersigned transmitted the following facsimile to Mr. Merchant, with a copy to the DOJ

Attorney representing the Government, Ms. Finnegan:

> Dear Randy:
>
> This acknowledges receipt of your certified letter of March 22nd, which was received today, 6 days after posting.   So much for the efficiency of the U.S. Postal Service.  Please don't take it personally, but my clients and I view your letter as insulting.  Does the U.S. Army Corps of Engineers really believe that I would risk criminal prosecution by representing to you that I have authority to speak on behalf of people who have not authorized me to do so, either directly or through a duly-authorized family representative?  Ask me anything you or the COE might want to know about any claimant, and I will respond to your request(s) for additional information in due course.  In the meantime, my clients and I are treating your letter as constituting formal denial of our claims by the Corps of Engineers, and we intend to so inform Judge Duval.
>
> > Yours very truly,
>
>
> > Ashton R. O'Dwyer, Jr., on
> > his own behalf
> > and as Agent for, Attorney-
> > in-Fact and Legal
> > Representative of the
> > previously identified I
> > Individual Claimants
>
> AROD/vtb
> cc:     Ms. Tess Finnegan (via facsimile)

A copy of that facsimile is appended hereto and marked as Exhibit No. 4.

Plaintiffs respectfully submit that the Court should also look upon Mr. Merchant's

letter as insulting to innocent plaintiffs and their counsel, and to call the letter what it

really is:   "A DENIAL IN WRITING BY CERTIFIED MAIL OF PLAINTIFFS'

CLAIMS AGAINST THE USA THROUGH ITS AGENCY THE COE."   28 U.S.C.

§2675.  Plaintiffs respectfully ask the Court to agree, and to deny the Government's

Motion(s) to Dismiss.

## V.

### EQUITY, JUSTICE, JUDICIAL ECONOMY AND COMMON SENSE DICTATE THAT THE CLAIMS OF PLAINTIFFS, ETC., SHOULD NOT BE DISMISSED SINCE THE REASONS FOR THE ADMINISTRATIVE CLAIMS REQUIREMENTS IN THE FEDERAL TORT CLAIMS ACT WOULD NOT BE FURTHERED BY DISMISSAL IN THIS INSTANCE

The reasons for the administrative claims procedure in the Federal Tort Claims

Act are succinctly set forth in the "lead" case cited by the Government in support of

dismissal for lack of subject-matter jurisdiction, namely McNeil v. United States, 508

U.S. 106, 113 S.Ct. 1980 (1993):[6]

> "Prior to 1966, FTCA claimants had the option of filing suit in federal court without first presenting their claims to the appropriate federal agency.  Moreover, federal agencies had only limited authority to settle claims. (Citations omitted).  Because of the vast majority of claims ultimately were settled before trial, the Department of Justice proposed that Congress amend the FTCA to require all claims to be presented to the appropriate agency for consideration and possible settlement before a Court action could be instituted.  This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage.  The agency would have the best information concerning the activity which gave rise to the claim.  Since it is the one directly concerned, it can be expected that the claims which are found to be meritorious can be settled  more quickly without the need for filing suit and possible expensive in time-consuming  litigation.   (Citations omitted).    The Senate Judicial  Committee  further  noted  that  "the  improvements contemplated by [the 1966 amendments] would not only benefit private litigants, but would also be beneficial to the Courts, the agencies, and the Department of Justice itself." (Citations omitted). McNeil, supra, Fn. 7.

---

[6]  Incidentally, the plaintiff in McNeil was a federal prisoner, who was an inmate at a federal penitentiary. Does the Government really equate plaintiffs in this action with a convicted felon?

The McNeil Court went on to explain that the administrative claims procedure would "reduce congestion in the Courts", because "every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions". 113 S.Ct. at p. 1984. It is respectfully submitted that if any parties have been "burdened" in KATRINA litigation, it is the plaintiffs (and their counsel) who have been burdened by multiple motions, memoranda, supplemental memoranda, reply memoranda, and the like, filed by the Government, not only in these consolidated actions, but in Civil Action No. 05-4181 as well. In other words, if the Department of Justice has felt any increased "burden" because of this case, then the DOJ's "burden" has been entirely self-inflicted.

The Fifth Circuit also has weighed in, emphasizing that the administrative claims procedure makes it possible for the Government to expedite the fair settlement of tort claims asserted against the United States. Gregory v. Mitchell, 634 F.2d 499 (5th Cir. 1981). If "the fair settlement of tort claims" is really of interest to the Government in this case, then why hasn't the Government "reached out" to plaintiffs with firm proposals to pay them just compensation for the damages which they have sustained as a result of Government ineptitude and malfeasance?

Plaintiffs respectfully submit that requiring dismissal and re-filing under the circumstances of this case would further no real legal purpose whatsoever.

To the knowledge of the undersigned, there is still authority in the Third and Eighth Circuits to the effect that lawsuits filed against the Government should not be subject to any "dismiss and refile" logic at a point in time before substantial progress has been made in a suit. See: Kubrick v. United States, 581 F.2d 1092 (3d Cir. 1978),

-21-

reversed on other grounds;  and <u>Celestine v. Veterans Adm. Hosp.</u>, 746 F.2d 1360.  (8th

Cir. _____).  Plaintiffs respectfully submit that this is such a case.

Plaintiffs etc. also take this opportunity to remind the Court that on March 22,

2006, Magistrate Wilkinson granted plaintiffs, etc. leave to supplement and amend their

pleadings in order to (among other things) invoke the Court's admiralty and maritime

jurisdiction and Suits in Admiralty Act (46 U.S.C. §741, <u>et</u> <u>seq.</u>) jurisdiction against the

Government (Record Document Nos. 108 and 110).  Equity is available as a remedy in

admiralty, and a balancing act of the equities has been allowed in an admiralty action

against the Government under the Suits in Admiralty Act.  See:  <u>Hedges v. United States</u>

<u>of America</u>, 404 F.3d 744 (3d Cir. 2005), in which Court stated that, in an action in tort

under the Suits in Admiralty Act, the Court was required to examine individual equities

and balance case specific facts:

> Tort claims, by contrast, can be brought against private parties;  in
> addition an action in tort requires the Court to balance individual equities
> and  case-specific-facts.     (Citations  omitted).     ("Tort  law  is
> overwhelmingly common law, developed in case-by-case decision-making
> by Courts.").  Because actions in admiralty are based in principles of tort,
> we see no reason why the limitations period in the SSA should not be
> subject to equitable tolling in an appropriate case."  404 F.3d at p. 749.

The fairly recent Supreme court case of <u>Grubart, Inc. v. Great Lakes Dredging &</u>

<u>Dock Co., Inc.</u>, 315 S.Ct. 1043 (1995), and particularly the following footnote, is

instructive in the context of an argument by counsel for the City of Chicago that the term

"remoteness" applied to both time and place:

> "At oral argument, counsel for the city undercut this argument by
> conceding that admiralty jurisdiction would govern claims arising from an

incident in which a ship on navigable water slipped its moorings, drifted

into a dam, and caused a breach in the dam that resulted in flooding of

surrounding territory." Grubart, supra, 315 S.Ct. at p. 1049.

It is respectfully submitted that what was conceded by counsel for the City of

Chicago at oral argument in Grubart, supra, and what was quoted by the Supreme Court

approvingly, without critique, and what happened in at least one place on the east side of

the Industrial Canal on August 29, 2006, are virtually identical.

It is respectfully submitted that this Court should draw upon equitable principles

in admiralty, and deny the Government's Motion to Dismiss, because no legal interest

will be served by "dismissal and re-filing" with the six (6)-month plus one (1) day

anniversary of plaintiffs' presentation of their first administrative claims having passed

last Thursday, April 13, 2006.

Plaintiffs do not seek leave to file this Memorandum in Opposition to the

Government's Motion to Dismiss in order to tell the Court what the Court already knows.

This memorandum is being filed to inform the Court that the "agency" which under-

designed, under-built, failed to properly inspect and negligently maintained the levees

and concrete retaining wall structures in the Greater New Orleans Metropolitan Area,

including the Industrial Canal, namely the United States Army Corps of Engineers,

continues (almost unbelievably) to "trifle" with plaintiffs and their sensibilities.

Appended to this memorandum and marked for identification as Exhibit No. 5 is

the April 5, 2006[7] missive to the undersigned from Randall C. Merchant, Esq., Assistant

District Counsel to the Department of the Army, New Orleans District, Corps of

---

[7]   The United States Postal Service is improving.  This letter was delivered within two (2) days of posting, traveling the magnanimous distance of about 7 miles.

Engineers.  The Court will recall that the Supreme Court, in <u>McNeil v. United States</u>, 508

U.S. 106, 113 S.Ct. 1980 (1993), a case so heavily relied on by the Government,

explained that the administrative claim procedure enacted by Congress in 1966 as an

amendment of the Federal Tort Claims Act, represented an "improvement" which would

"not only benefit private litigants, but would also be beneficial to the Courts, the agencies,

and the Department of Justice itself":

> This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage. The agency would have the best information concerning the activity which gave rise to the claim.  Since it is the one directly concerned, it can be expected that the claims which are found to be meritorious can be settled more quickly without the need for filing suit and possible expensive in time-consuming litigation. (Citations omitted).

However, Mr. Merchant's most recent letter makes abundantly clear that the

agency whose employees' activities allegedly caused Plaintiffs' damages, the United

States Army Corps of Engineers, could give a "hoot" about Plaintiffs' claims, and have

actually "kicked" their claims to the U.S. Army Claims Service:

> This letter responds to your March 28, 2006, letter wherein you state that you are treating the Army Corps of Engineers' March 22, 2006, letter as a denial of your clients' claims.  Please be advised that the Army's letter is a request for additional information regarding your clients' potential claims. Your clients' potential claims have not been denied because they have not been validly presented to the Army.  <u>Further, this office does not have the authority to deny your clients' potential claims.  That authority resides with the United State Army Claims Service, Fort George G. Meade, Maryland.</u> (emphasis supplied).

Thus, it should be crystal clear, that nothing which was considered by Congress,

as interpreted by the Supreme Court, in connection with the 1966 amendments to the

Federal Tort Claims Act, is being advanced by anything which the Government is

causing to "happen" here in New Orleans, either at the administrative or judicial levels.

-24-

In short, we have a situation where the "system", i.e., the peoples' own democratic government, has been turned "on its head" by Bureaucrats.

### VI.

### PLAINTIFFS HAVE ASSERTED CLAIMS AGAINST THE UNITED STATES OF AMERICA FALLING OUTSIDE OF THE FOUR-CORNERS OF THE FEDERAL TORT CLAIMS ACT, INCLUDING CLAIMS FOR POLLUTION DAMAGE UNDER THE OIL POLLUTION ACT OF 1990 AND CLAIMS ALLEGING THE TAKING OF PROPERTY WITHOUT JUST COMPENSATION IN VIOLATION OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

Even if This Honorable Court fails to be persuaded that the Suits in Admiralty Act applies to this case, to the exclusion of the Federal Tort Claims Act, Plaintiffs' claims against the Government still should not be dismissed.  Regardless of whether the Court is persuaded that Plaintiffs' arguments have merit, Plaintiffs have asserted claims falling outside the four-corners of the Federal Tort Claims Act.   These claims, which were pleaded in Plaintiffs' most recent amendments to their pleadings include:

1.     A claim under the Fifth Amendment for the "taking" of their property without just compensation;  and

2.     A variety of claims under Federal and State Pollution Statutes.  See attached Article from the Atlanta Journal Constitution, dated February 23, 2006, entitled:  "New Orleans Surge Unsafe, Report Says".

Plaintiffs also have pleaded "compensation", the right of recoupment", "offset" and "set off" from the Government.

Accordingly, even if This Honorable Court were to reject Plaintiffs' arguments, and to accept the arguments of the Government, judicial economy and substantial justice

would dictate that the Plaintiffs' claims against the Government, both inside and outside of the Federal Tort Claims Act, not be dismissed, but merely "shelved" until six (6) months from the date of the filing of administrative claims on behalf of each named plaintiff has elapsed.

**VII.**

### THE ADMIRALTY EXTENSION ACT IS NOT APPLICABLE TO THE CLAIMS OF PLAINTIFFS, ETC., AGAINST THE UNITED STATES OF AMERICA

The Government wishfully thinks that the Admiralty Extension Act is somehow applicable to the claims against the Government in this case.  It is not, and the Government is mistaken.  While, arguably, the Admiralty Extension Act might apply to plaintiffs' jurisdictional allegations against the barge owner, Ingram Barge Company, the plaintiffs' allegations against the Government include allegations which do not specifically relate to Ingram's barge:

1)  The Government negligently and defectively designed, constructed, inspected, maintained, operated and dredged an entire navigable waterway system;

2)  The Government negligently failed to contain navigable waters of the United States in violation of Acts of Congress, and in violation of U.S. Army Corps of Engineers' own regulations, manuals and procedures;  and

3)  The Government breached the implied warranty of workmanlike performance owed each inhabitant of the New Orleans Metropolitan Area by the U.S. Army Corps of Engineers.

None of those claims against the Government remotely involve the Admiralty Extension Act notwithstanding the Government's "wishful thinking" otherwise.

## CONCLUSION

In other Court filings, in other cases, the undersigned has advocated to the Court that perhaps "the biggest lie" told in this case to date has been the claim by the Government that it wants the litigation against it in the Eastern District of Louisiana to "move forward, in orderly fashion". [8]   Even Magistrate Wilkinson has been "hoodwinked" by the Government into believing that "prejudice to resolution of . . . pending motions" is somehow impeding this and other cases from "moving forward".[9] Listen well:   "moving forward" means only "dismissal with prejudice" to the Government.   It is respectfully submitted that this case can only move forward if the Government's Motion(s) to Dismiss are denied.

Respectfully submitted,

LAW OFFICES OF
ASHTON R. O'DWYER, JR.

ASHTON R. O'DWYER, JR. (#19166)
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
Attorney for Claimants

---

[8]   Or words to that effect.
[9]   See Magistrate Wilkinson's April 12, 2006 Minute Entry in C.A. No. 05-4181.

## **CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing has been served upon all counsel of

record via facsimile, this 18th day of April 2006.

October 12, 2005

UNITED STATES ARMY CORPS OF ENGINEERS
C/O RANDY FLORENT, ESQ.
DEPUTY DISTRICT COUNSEL
U.S. ARMY CORPS OF ENGINEERS
7400 LEAKE AVENUE
ROOM 348
NEW ORLEANS, LA. 70118

RE: FREEDOM OF INFORMATION ACT REQUEST

Dear sir:

I am a local attorney, and a named plaintiff in two pieces of litigation involving The United States of America, acting by and through its agency and instrumentality, the U.S. Army Corps of engineers

EXHIBIT
NO. 1

②

I attach copies of the original complaints in each action, both filed in the United States District Court for the Eastern District of Louisiana, one bearing civil action No. 05-481, and the other bearing civil Action No. 05-4237.

In connection with my litigation, I have retained Hector V. Payos, a naval architect, marine engineer, and registered

③

professional engineer as
an expert witness to
conduct a forensic examin-
ation of the level failures
at the 17th Street Canal,
the London Avenue Canal,
and the Industrial Canal
in the aftermath of
Hurricane KATRINA.

THIS IS A FREEDOM OF
INFORMATION ACT REQUEST
for the complete files of
the United States Army
Corps of Engineers pertain-

(14)

ing to the design, con-
struction, modification,
renewal and/or mainten
ance of the levee structure
in the 17th Street Canal,
the London Avenue Canal,
and the Industrial Canal,
to include, inter alia,
the following:

1) The pre-design specification

2) Results of soil borings
   taken at the above
   locations at all times.

3) The identity (i.e. name
   address, telephone number
   and contact details) of the

(5)

contractor(s) taking
the soil boring.

4) Levee design calculation

5) Levee design drawings.

6) Construction specification

7) Construction progress
reports.

8) "AS BUILT" Drawings,
specifications and
reports.

9) Indications of whether
the levees in question
were designed "in house"
by the U.S. Army Corps
of Engineers or whether
the levees were
designed by an outside
engineering firm.

10) The identities of each
engineering firm which
participated in the

⑥

designs of the levee
structures at each
site, ie. name, address, tele-
phone number and contact details)

11) Indications of whether
the 17th Street Canal,
the Lendon Avenue Canal,
and the Industrial
Canal levee systems
were built to the
same or dissimilar
designs, and the
reason(s) for the
similarities or
dissimilarities at
each location.

12) The contract files of
the U.S. Army Corps
of Engineers pertaining to
and identifying each
engineering firm, build-
ing contractor, soil boring

⑦

contractor and other
contractor having any
input whatsoever
into the design, con-
struction, modification
renewal and/or main-
tenance of the levee
structures in the
17th Street Canal, the
London Avenue Canal
and the Industrial
Canal, and the reasons
why the same or
different contractors
were used at each
location.

13) The identities of the
persons, firms, corpora-
tions or organizations,
including agencies and
instrumentalities of
the United States of
America, who prepared
the specifications dictated
for the design of the
levee structures at



each location.

14) Whether the U.S. army corps of Engineers believes the levees failed at each loca-tion due to a design failure, construction defects or some other cause(s), or some combination thereof, and why.

15) All written records, files, correspondence, pleadings, opinions, analyses and writings of any nature or kind regarding litigation involving the 17th street canal, the London Avenue Canal and/or the Industrial

(9)

Canal at any
time, including
litigation with
Pittman Construction
Co. Inc., its parent,
subsidiary, affiliated
or related companies
and/or their insurers,
as well as local
groups, such as the
Sierra Club, the
Save-our-Lake Founda-
tion, and the like.

16) Indications of whether
the U.S. Army Corps
of Engineers believed,
or had been told or
warned by others
prior to Hurricane
KATRINA, that the
soil underlying the
levee structures at
the 17th Street, London
Avenue and Industrial
Canals was UNSTABLE,

(10)

17) Whether, assuming argumentatively that the U.S. Army Corps of Engineers knew or had been told about unstable soil conditions what corrective action was undertaken to improve the levee structures to account for the unstable soil conditions, including soil or levee monitoring by the U.S. Army Corps of Engineers at all 3 locations

18) The length of the sheet piles at each of the three canal locations, and particularly the length of the sheet piles in the areas where the 3 levee systems were breached in the aftermath of Hurricane KATRINA.

(11)

19) The specifications or criteria for the sheet piles used at each location, and the reasons why a particular specification or criteria was used at each location rather than another.

20) Whether the area(s) involved in the dispute or litigation with Pittman Construction Co, Inc., or any of its parent, subsidiary affiliated or related companies or their insurers, involved the same or different areas of the levee structures in the 17th Street, London Avenue or Industrial canals breached following Hurricane KATRINA

(12)

21) The surge height
to which the flood-
walls of the levee
structures in the
17th Street, London
Avenue and Indus-
trial canals, were
designed and con-
structed, particular-
ly in the areas
where the flood-
walls were breached
following Hurricane
(KATRINA) and the
"safety factor" to
which the flood-
walls were designed
and constructed.

22) All U.S. Government
publications, manuals,
reference sources and
the like, including
military handbooks,
utilized by the U.S.

Army Corps of
Engineers in
connection with
the design, construction,
modification, renewal
and/or maintenance
of the floodwalls
in the 17th Street,
London Avenue and
Industrial Canals,
including Naval Facility Engineering
command Manuals, and
particularly those pertain-
ing to ~~the~~ ~~cantilever~~
~~walls,~~ cantilever "I"-Type
sheet pill floodwalls.

23) Files containing all
correspondence, memo-
randa, reports and
writing of any nature
or kind pertaining to
communications (both
oral ~~and~~ or written, or in
electronic form) between
and among the U.S.
Army Corps of Engineers

(14)

and The Parish of Orleans
and the Parish of Jefferson
and the State of
Louisiana regarding the
levee systems in the
17th Street, London
Avenue and Industrial
Canals, and particularly
those with the New
Orleans or Jefferson
~~~~~~ Levee Boards.

Further, I am given to
understand that the CANTILEVER "I"-TYPE ~~~~~~
sheet pilem, WALLS, reinforcing bars
and concrete panels at
each of the "BREACH" sites
may be covered with

backfill or other debris.
These items are very im-
portant to a forensic
investigation of the
causes of the breaches
in the levee systems
at each location, and
the undersigned and
his clients expect the
U.S. army Corps of
Engineers to take
all reasonable and
prudent steps to pre-
serve evidence for

(16)

use in litigation, and
to avoid spoliation
of physical evidence.
Accordingly, please
advise the following
when the ~~CANTI LEVERS "I" TYPE~~
                    WALLS,
sheet piles, reinforcing
bars and concrete
panels, which were
breached at each of
the breach sites in
the ~~xxxx~~ 17th Street,
London Avenue and
Industrial Canals will

(17)

be made available

for inspection:

ASHTON R. O'DWYER, JR.
6034 St. Charles Ave.
New Orleans, La. 70118
504-884-6727

HECTOR V. PAZOS
Ocean Oil International Corp
566 Villa Grande Ave. S
St. Petersburg, Fl. 33707
727-347-2556
727-415-7192

THIS IS A FREEDOM
OF INFORMATION ACT REQUEST

Respecfully,

ASHTON R. O'DWYER, JR.

LAW OFFICES OF
ASHTON R. O'DWYER, JR.
ONE CANAL PLACE
365 CANAL STREET
SUITE 2670
NEW ORLEANS, LA 70130
TELEPHONE: (504) 561-6561
FACSIMILE: (504) 561-6560

February 17, 2006

<u>VIA CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

The United States Army Corps of Engineers
c/o Its Assistant District Counsel
Randall C, Merchant, Esq.
Foot of Prytania Street at the
  Mississippi River
New Orleans, LA 70118

Federal Emergency Management Agency
c/o Edward A. Broyles, Esq.
Acting Associate General Counsel for General Law
Office of General Counsel
Federal Center Plaza
500 C Southwest
Washington, D.C. 20472

Re:    Maureen O'Dwyer, <u>et al.</u>
       vs. The United States of America, <u>et al.</u>
       No. 05-4181 "K"(5)

Dear Randy and Mr. Broyles::

    This will constitute formal written submission of the following individual claims, made both individually and in representative capacities, which are made against your agencies on behalf of the following clients, who I represent in the capacity of agent, attorney-in-fact and legal representative:

Shirley D. O'Dwyer
Lisa Marie O'Dwyer
Maureen O'Dwyer
Harold Joseph Gagnet


EXHIBIT
No. 2

February 17, 2006
Page 16

> **Paul Mosley, Sr.**
> **Paul Mosley, Jr.**
> **Brandon Mosley**
> **Hope Mosely**
> **Shaqual Mosley**
> **Shannel Mosely**
> **Ivan Mosley**
> **Betty Mosley**
> **Margarite Rochon**
> **Raymond Hunter**
> **Naomi Hunter**
> **Wilson M. Simmons**
> **Procula D. Simmons**
> **Tammy Amos**
> **Michael Green**

The statutory bases for each individual claim against your agencies may include the following, *inter alia:*

Malfeasance, misfeasance and nonfeasance

Violation of LSA-R.S. 14:134

Unconstitutional taking of property without just compensation in violation of the Fifth Amendment to the Constitution of the United States

Articles 667, 2315, 2315.1, 2315.2, 2315.6, 2316, 2317, 2317.1 and 2322 of the Louisiana Civil Code

The Oil Pollution Act of 1990 and precursor legislation

The Comprehensive Environmental Response Compensation and Liability Act and precursor legislation

The Federal Water Pollution Control Act

The Clean Water Act

The Clean Air Act

The National Environmental Policy Act

The Toxic Substances Control Act

February 17, 2006
Page 17

The Resource Conservation and Recovery Act

The Louisiana Environmental Quality Act

The Louisiana Air Control Law

The Louisiana Water Control Law

The Louisiana Oil Spill Prevention and Response Act

The above-identified individual claims against your agencies include claims arising out of the deficient preparations for and deficient response to Hurricane KATRINA and its aftermath by your agencies, which caused damages to my clients.

Each individual claim is in the certain sum of $2.5 million, plus attorney's fees to be fixed at the maximum percentage of the total award allowed by law, and may include wrongful death and survival actions, claims for bodily injury, loss of and damage to real and/or personal property, damages for fear, fright, hopelessness, emotional distress and mental anguish, and damage caused by pollution, including damage to natural resources, as well as any other damages recoverable under the above-identified statutes.

Yours very truly,

Ashton R. O'Dwyer, Jr.
As Agent for, Attorney-in-Fact and Legal
Representative of the Individual Claimants
identified herein

AROD/vtb
cc:    Ms. Tess Finnegan (via facsimile)



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

REPLY TO
ATTENTION OF

March 22, 2006

<u>CERTIFIED MAIL -- RETURN RECEIPT REQUESTED</u>

CEMVN-OC

Mr. Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, Louisiana 70130-1193

Dear Mr. O'Dwyer:

   This letter responds to your January 10, January 20 and February 17, 2006, letters wherein you attempt to file claims under the Federal Tort Claims Act (FTCA) for several hundred individuals for various alleged damages resulting from Hurricane Katrina. None of the individuals named in your letters has submitted valid FTCA administrative tort claims for the following reasons:

   1.  Proof that you legally represent each individual listed as a claimant was not provided with your letters. 28 C.F.R. § 14.2(a). Further, for any individual asserting a claim for wrongful death or survival actions, appropriate testamentary letters granting that individual the authority to file a claim on behalf of the decedent or their heirs must be submitted with their claim. 28 C.F.R. § 14.3(c).

   2.  Listed individuals have failed to submit to this Agency adequate information that would allow us to thoroughly investigate their alleged claims. Specifically, your letters state that individuals are claiming for loss or damage to their real and/or personal property. However, no evidence was provided that: (a) identifies the address of the real property or location of the personal property that was damaged or destroyed; (b) demonstrates the lawful owner of the real or personal property; (c) identifies exactly what was damaged or destroyed; and (d) specifically explains how the Army caused the individuals' real and/or personal property losses or damages. Further, for the alleged death of an individual, you must state the circumstances of the death and how the Army was responsible for that individual's death. 28 C.F.R. § 14.4.

   Your clients have not filed a valid FTCA administrative claim until they each provide the above requested information within two years from the date of the incident giving rise to their alleged claims. 28 U.S.C. § 2401(b).

                                                 Sincerely,

                                                 Randall C. Merchant
                                                 Assistant District Counsel

**EXHIBIT**
No. 3

LAW OFFICES OF
ASHTON R. O'DWYER, JR.
ONE CANAL PLACE
365 CANAL STREET
SUITE 2670
NEW ORLEANS, LA 70130
TELEPHONE (504) 561-6561
FACSIMILE (504) 561-6560

March 28, 2006

**VIA FACSIMILE**
The United States Army Corps of Engineers
c/o Its Assistant District Counsel
Randall C, Merchant, Esq.
Foot of Prytania Street at the
 Mississippi River
New Orleans, LA 70118

          Re:    Maureen O'Dwyer, et al.
                vs. The United States of America, et al.
                No. 05-4181 "K"(5)

Dear Randy:

      This acknowledges receipt of your certified letter of March 22$^{nd}$, which was received today, 6 days after posting.  So much for the efficiency of the U.S. Postal Service.  Please don't take it personally, but my clients and I view your letter as insulting.  Does the U.S. Army Corps of Engineers really believe that I would risk criminal prosecution by representing to you that I have authority to speak on behalf of people who have not authorized me to do so, either directly or through a duly-authorized family representative?   Ask me anything you or the COE might want to know about any claimant, and I will respond to your request(s) for additional information in due course.  In the meantime, my clients and I are treating your letter as constituting formal denial of our claims by the Corps of Engineers, and we intend to so inform Judge Duval.

                Yours very truly,

                Ashton R. O'Dwyer, Jr., on his own behalf
                and as Agent for, Attorney-in-Fact and
                Legal Representative of the previously
                identified Individual Claimants

AROD/vtb
cc:   Ms. Tess Finnegan (via facsimile)

EXHIBIT
No 4



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

REPLY TO
ATTENTION OF

April 5, 2006

<u>CERTIFIED MAIL -- RETURN RECEIPT REQUESTED</u>

CEMVN-OC

Mr. Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, Louisiana 70130-1193

Dear Mr. O'Dwyer:

   This letter responds to your March 28, 2006, letter wherein you state that you are treating the Army Corps of Engineers' March 22, 2006, letter as a denial of your clients' claims. Please be advised that the Army's letter is a request for additional information regarding your clients' potential claims. Your clients' potential claims have not been denied because they have not been validly presented to the Army. Further, this office does not have the authority to deny your clients' potential claims. That authority resides with the United States Army Claims Service, Fort George G. Meade, Maryland.

                              Sincerely

                              Randall C. Merchant
                              Assistant District Counsel

Certified Mail Receipt No. 7004 1350 0005 5696 3167

EXHIBIT
No 5