IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
FILED

MAR 31 1999

CHARLES R. FULBRUGE III
CLERK

---

No. 98-30508
Summary Calendar
(95-CV-2109-S)

---

KRISTIE TRAMONTE,

Plaintiff-Appellee,

versus

CHRYSLER CORP., ET AL.,

Defendant,

CHRYSLER CORP.,

Defendant-Appellant.

---

98-30510
Summary Calendar
(98-CV-737-S)

---

KRISTIE A TRAMONTE, ET AL.,

Plaintiffs-Appellees,

versus

CHRYSLER CORP., ET AL.,

Defendant,

CHRYSLER CORP.,

Defendant-Appellant.

---

Appeals from the United States District Court
For the Eastern District of Louisiana

---

Before GARWOOD, JOLLY, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

EXHIBIT
Q
PENGAD-Bayonne NJ

This is a second appeal of the same question raised in Tramonte I, whether Judge Lemmon should have recused herself.  See Tramonte v. Chrysler Corp., 36 F.3d 1025 (5th Cir. 1998).  In Tramonte I, we vacated Judge Lemmon's order remanding Tramonte's class action suit to state court and remanded the question of recusal to the district court "for proceedings consistent with this opinion."  Specifically, we directed Judge Lemmon to provide an adequate record justifying her decision not to recuse herself pursuant to 28 U.S.C. § 455.[1]  Chrysler argues that Judge Lemmon

[1]Section 455 provides, in pertinent part, the following:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

. . .

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(I) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

2

failed to follow this court's mandate in <u>Tramonte I</u> when she again denied their motion to recuse and remanded the case to state court.

I

On remand, Judge Lemmon provided the following:

> In compliance with the Fifth Circuit Court of Appeals' instructions, I have questioned each of my relatives within the third degree and determined that none has owned a Chrysler vehicle manufactured between 1984 and 1993 which has exhibited flaking paint.

Unfortunately, the disclosure does not cover the entire class period, which is between 1983 and 1994. Chrysler's records show that in December 1983, an M.A. Lemmon purchased a 1984 Dodge wagon. Judge Lemmon has neither confirmed nor denied that she is the same M.A. Lemmon. Therefore, Judge Lemmon's current answer fails to disclose whether she, or any of the relatives she questioned, owns or owned a Chrysler manufactured between 1983 and 1994 which exhibited flaking paint or any particular economic damage related to the vehicle's paint.

II

We VACATE the order remanding this case to state court and REMAND to enable Judge Lemmon to enlarge her previous disclosure with information about the following:

> Considering § 455(b)(4), whether she, her spouse, or minor child residing in her household owns or owned a Chrysler manufactured between 1983 and 1994 which has exhibited flaking paint or any particular economic damage related to the vehicle's paint.

> VACATED AND REMANDED WITH INSTRUCTIONS.

3

## U̇ 'ted States Court of Appea⁻

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
CLERK

March 31, 1999

TEL. 504-589-6514
600 CAMP STREET
NEW ORLEANS, LA 70130

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW
Regarding:   Fifth Circuit Statement on Petitions for Rehearing or
             Rehearing En Banc

        Nos. 98-30508 & 98-30510 Tramonte v. Chrysler Corporation
        USDC No.  95-CV-2109-S
        ------------------------------------------------

Enclosed is a copy of the court's decision, and judgment has been
entered under FED. R. APP. P. 36.  (However, the opinion may yet contain
typographical or printing errors which are subject to correction.)

FED. R. APP. P.'s 39 through 41, and 5TH CIR. RULES 35, 39, and 41 govern
costs, rehearings, and mandates.  New 5TH CIR. RULES 35.2.10 and 40
**require that a copy of the opinion or order sought to be reviewed
shall be bound with the petition for rehearing or suggestion for
rehearing en banc as an appendix but shall not be marked or
annotated.**  Please read carefully the Internal Operating Procedures
(IOP's) following FED. R. APP. P. 40 and 5TH CIR. R. 35 for a discussion of
when a rehearing may be appropriate, the legal standards applied and
sanctions which may be imposed if a nonmeritorious suggestion for
en banc is made.

Direct Criminal Appeals.  5TH CIR. R. 41 provides that a motion for a
stay of mandate under FED. R. APP. P. 41 shall not be granted simply
upon request.  The petition must set forth good cause for a stay or
clearly demonstrate a substantial question is to be presented to the
Supreme Court.  Otherwise, the motion may be denied and the mandate
issued immediately.

Pro Se Cases.  If you were unsuccessful in the district court and/or
on appeal, and will be considering filing a petition for certiorari
in the United States Supreme Court, you do not need to file a motion
for stay of mandate under FED. R. APP. P. 41.  The issuance of the
mandate does not affect the time, or your right, to file such a
petition.

The judgment entered provides that each party bear its own costs on
appeal.

                                    Sincerely,

                                    CHARLES R. FULBRUGE III, Clerk

                                    By:
                                       Rhonda Flowers, Deputy Clerk

Enclosure
Mr Wendell H Gauthier
Mr Daniel E Becnel Jr
Mr William F Bologna
Mr Charles A Newman
Mr Daniel Roy Young
Mr Roy Francis Amedee Jr
Mr J Robert Ates

APR 04 2006 2:38PM   HP LASERJET 3200                                    p.6

# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
**FILED**
MAR 3 1 1999

CHARLES R. FULBRUGE III
CLERK

No. 98-30510
Summary Calendar

D.C. Docket No. 98-CV-737-S

KRISTIE A TRAMONTE; ROSEMARY GRIMMLER; ERWIN SANSOME; ALLEN
MINER; JOAN MORETZ; WILLIAM G TREACY; STEVEN REED; KEVIN
TADDEUCCI; ARTHUR STANLEY; ROBERT PANNELLA; CAROL SNYDER;
GEORGE PODAS; ALAN KUNDZ; WESLEY MORRIS; WANDA WEDEMEYER;
KENNETH KUCKENBECKER; DAVID GUILBEAULT; BRENDA MCNENNY;
GEORGE THURLOW; MICHAEL TRECROCE; SUSAN KRAWCZYK; DEIRDRE
CHABERT

Plaintiffs - Appellees

v.

CHRYSLER CORPORATION; ET AL

Defendants

CHRYSLER CORPORATION

Defendant - Appellant

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans.

Before GARWOOD, JOLLY, and HIGGINBOTHAM, Circuit Judges.

J U D G M E N T

This cause came on to be heard on the record on appeal and
was taken under submission on the briefs on file.

ON CONSIDERATION WHEREOF, it is now here ordered and adjudged
by this Court that the judgment of the District Court in this cause
is vacated, and the cause is remanded to the District Court for
further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that each party bear its own costs
on appeal.

ISSUED AS MANDATE: APR 22 1999

OP-S-J-1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

COLLEEN BERTHELOT, ET AL.,                    CIVIL ACTION NO. 05-4182

VERSUS                                        SECTION "K" (2)

BOH BROTHERS CONSTRUCTION CO.,                 CONS. KATRINA CANAL
L.L.C., ET AL

THIS DOCUMENT RELATES TO:

JULIE E. TAUZIN, PAULETTE L. HELDNER,         CIVIL ACTION NO. 06-0020
WIFE OF AND JOHN MICHAEL HOLAHAN,
RIVERBEND FINE WINES, INC., and               SECTION "K" (2)
MICHELLE M. ZORNES

VERSUS

THE BOARD OF COMMISSIONERS
FOR THE ORLEANS PARISH
LEVEE DISTRICT, THE UNITED STATES
OF AMERICA
GULF GROUP, INC. OF FLORIDA,
PITTMAN CONSTRUCTION CO.
OF LOUISIANA, INC., PITTMAN
CONSTRUCTION COMPANY, INC.,
BURK-KLEINPETER, INC.,
BURK-KLEINPETER, L.L.C.,
B&K CONSTRUCTION COMPANY, INC.,
MILLER EXCAVATING SERVICES, INC.,
JAMES CONSTRUCTION GROUP, INC.,
EUSTIS ENGINEERING CO., INC.,
MODJESKI AND MASTERS, INC.,
WASHINGTON GROUP INTERNATIONAL, INC.,
VIRGINIA WRECKING COMPANY, INC.,



EXHIBIT

R

BOH BROS. CONSTRUCTION CO., L.L.C., AND
THE STATE OF LOUISIANA, DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT

### FIRST SUPPLEMENTAL AND AMENDED CLASS ACTION COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs Julie E. Tauzin,

John M. Holahan, Paulette H. Holahan, Riverbend Fine Wines, Inc., and Michelle M. Zornes,

individually and on behalf of other similarly situated plaintiffs respectfully, who respectfully

present the following First Supplemental and Amended Complaint.

Plaintiffs respectfully amend, supplement, and re-state their original Complaint, as

follows:

### INTRODUCTION

Plaintiffs file this Complaint, on their own behalf and on behalf of the class of all

similarly affected persons, seeking damages that they sustained when their homes, apartments

and businesses were flooded when the levees failed in the aftermath of Hurricane Katrina. This

is a class action brought on behalf of residents of New Orleans and Metairie who have suffered

damage as a result of defective design, construction, maintenance and inspection of the levees

and floodwalls protecting the residents of New Orleans and Metairie and their property. The

levees in question include levees and floodwalls along the 17th Street Canal, the London Avenue

Canal, and the Industrial Canal.

The Defendants were repeatedly put on notice that the design specifications for the New

Orleans levee system was defective and that levee protection for the City of New Orleans failed

to provide the protections provided for in its designs. Construction of the levees resulted in

massive subsidence of properties adjacent to the levees, including soil movement, detrimental

2

changes in the water table, and damage to structures in the area.  Defendants received complaints

by neighbors and lawsuits alleging subsidence.  Moreover, warning signs that should have been

apparent upon reasonable inspection placed the defendants on notice or constructive of

deterioration of the levees and changing and unstable soil conditions in the area of the levees.

Common issues predominate as to the claims of all affected victims of the flood, because

the flood resulted from a single, identifiable event: levee failures resulting from design defects,

defective construction, and inadequate maintenance and inspection.

Because many of the property owners lacked flood insurance, they will be unable to fund

significant litigation on their own.  The flood waters that poured through the levees had a

devastating impact.  Properties for miles around the breaches were flooded, with salt water that

was contaminated with sewerage that escaped from flooded sewer lines.  As a result of the

damage, many properties are a total loss, and the diversion of resources to litigation of individual

claims, as opposed to resolution of the common issues through this class action, would only

further delay and limit recovery efforts and deserve the public interest.

Accordingly, a class action is the appropriate procedure for addressing the claims

asserted in this case.

**JURISDICTION**

1.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 (Federal Question), 28

U.S.C. § 2671, et seq.  (Federal Tort Claims Act), and 28 U.S.C. § 1983, et seq. (Federal Civil

Rights Act).

2.

3

The defendants named herein each do substantial business in the State of Louisiana and within this federal district, and at all times hereto, they engaged in commerce both in this federal judicial district and in the State of Louisiana.

3.

Plaintiffs allege that they have suffered damages in an amount in excess of $75,000.00 exclusive of interest and court costs, as to themselves and each proposed class member.

4.

There is complete diversity of citizenship and/or federal question jurisdiction herein because defendants were contractors of the Federal Government as to the matters complained of herein.  Alternatively, there is jurisdiction due to ample diversity to meet the terms of the Class Action Fairness Act (CAFA), 28 U.S.C. 1332(d)(2).

5.

This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d)(2) because this is a class action in which there is at least minimal diversity and the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. Alternatively, this court has jurisdiction because there is diversity of citizenship between the plaintiffs and the defendants due to the fact that defendants were contractors of the federal government.  Alternatively, this court has federal question jurisdiction because the project at issue was a federal construction project through the Army Corps of Engineers.

The defendants named herein each do substantial business in the State of Louisiana and within this federal district, and at all times hereto, they engaged in commerce both in this federal judicial district and in the State of Louisiana.

3.

Plaintiffs allege that they have suffered damages in an amount in excess of $75,000.00 exclusive of interest and court costs, as to themselves and each proposed class member.

4.

There is complete diversity of citizenship and/or federal question jurisdiction herein because defendants were contractors of the Federal Government as to the matters complained of herein.  Alternatively, there is jurisdiction due to ample diversity to meet the terms of the Class Action Fairness Act (CAFA), 28 U.S.C. 1332(d)(2).

5.

This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d)(2) because this is a class action in which there is at least minimal diversity and the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. Alternatively, this court has jurisdiction because there is diversity of citizenship between the plaintiffs and the defendants due to the fact that defendants were contractors of the federal government.  Alternatively, this court has federal question jurisdiction because the project at issue was a federal construction project through the Army Corps of Engineers.

## VENUE

6.

Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the negligent and wrongful actions of the defendants occurred in the Eastern District of Louisiana, the plaintiffs reside in the Eastern District of Louisiana, the damages to plaintiffs occurred within the Eastern District of Louisiana and the applicable facts which form the basis of this lawsuit occurred in the Eastern District of Louisiana.

7.

This Court has supplemental jurisdiction over all claims that arise under state law and are not within this Court's original jurisdiction, as those claims are so related to the claims in the action within this Court's original jurisdiction that they form part of the same case or controversy.

## PLAINTIFFS

8.

The following plaintiffs bring this action individually and on behalf of the class of individuals similarly situated

9.

Plaintiffs, John M. Holahan and Paulette L. H. Holahan, are husband and wife and persons of the full age of majority and residing in the Parish of Orleans, State of Louisiana, who sustained damage as a result of the failure of the 17th Street Canal Levee.

10.

Plaintiff, Riverbend Fine Wines, Inc., is a business entity domiciled in the Parish of Orleans, State of Louisiana, that sustained damage as a result of the failure of the 17th Street Canal Levee.

11.

Plaintiff, Julie E. Tauzin, is a person of the full age of majority residing in the Parish of Orleans, State of Louisiana, who sustained damage as a result of the failure of the London Avenue Canal Levees.

12.

Plaintiff, Michelle M. Zornes, is a person of the full age of majority residing in the Parish of Orleans, State of Louisiana, who sustained damage as a result of the failure of the Industrial Canal Levees.

## PLAINTIFF CLASS

### Proposed Class Definitions

13.

This class action proceeding is brought on behalf of:

> All residents, domiciliaries, and property owners of the Parishes of Orleans and Jefferson, in the State of Louisiana whose persons or properties were or may hereafter be damaged by flooding caused by the failure of the hurricane protections levees and floodwalls located along the 17th Street Canal, the London Avenue Canal, and the Industrial Canal, in New Orleans, Louisiana, on or shortly after August 29, 2005.

Proposed Subclasses

14.

This class action proceeding involves subclasses, which can be defined as follows:

    a.    Subclass 1: Those individuals and entities who sustained damage as a result of the failure of the 17th Street Canal Levee;

    b.    Subclass 2: Those individuals and entities who sustained damage as a result of the failure of the London Avenue Canal Levees; and

    c.    Subclass 3: Those individuals and entities who sustained damage as a result of the failure of the Industrial Canal Levees.

DEFENDANTS

15.

Made Defendants herein are the following:

    a.    The Board of Commissioners of the Orleans Levee District (the "Levee Board"), is a political subdivision of the State of Louisiana, domiciled in the Parish of Orleans, State of Louisiana, which, was responsible for the development and maintenance of, and directly in charge of and responsible for the efficient operation and maintenance of all of the levee structures and facilities during flood periods and for continuous inspection and maintenance of the levees and floodwalls during periods of low water.

b.   The United States of America, a sovereign government that may be sued for civil liability in accordance with the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. and the Federal Civil Rights Act 28 U.S.C. § 1983.  The U.S. Army Corps of Engineers is a division of the United States government under the direct jurisdiction of the Department of the Army.

c.   Pittman Construction Company of Louisiana, Inc. ("Pittman") is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana.

d.   Pittman Construction Company, Inc. is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana.

e.   Eustis Engineering Co., Inc. is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in Metairie, Louisiana.

f.   Modjeski and Masters, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Mechanicsburg, Pennsylvania.

g.   Gulf Group, Inc. of Florida is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in the State of Florida.

8

h.   Washington Group International, Inc., a non-Louisiana corporation, f/k/a Morrison Knudsen Corporation, f/k/a/ MK-Ferguson Company, f/k/a The H.K Ferguson Company, authorized to do and doing business in the State of Louisiana, and in the Parish of Orleans, with its domicile in the State of Ohio, its principal place of business in the State of Idaho, and its Louisiana principal place of business in Baton Rouge, Louisiana.

i.   Virginia Wrecking Company, Inc., a non-Louisiana corporation authorized to do and doing business in the State of Louisiana, and in the Parish of Orleans, with its domicile in the State of Alabama, its principal place of business in the State of Alabama, and its Louisiana principal place of business in Jefferson, Louisiana.

j.   Burk-Kleinpeter, Inc., a Louisiana corporation with its domicile in the Parish of Orleans, and doing business within the Parish of Orleans, State of Louisiana;

k.   Burk-Kleinpeter, LLC, a Louisiana Limited Liability Company with its domicile in the Parish of Orleans, and doing business within the Parish of Orleans, State of Louisiana;

l.   B&K Construction Co, Inc., a Louisiana corporation, f/k/a B&K Construction Company, with its domicile in the Parish of St. Tammany, and doing business within the Parish of Orleans, State of Louisiana;

9

m.   Miller Excavating Services, Inc., a Louisiana corporation with its

domicile in the Parish of St. Charles, and doing business within the

Parish of Orleans, State of Louisiana;

n.   James Construction Group, LLC, a non-Louisiana Limited

Liability Company, f/k/a Infrate Construction, LLC, with its

domicile in the State of Florida, its principal place of business in

the State of Louisiana, and its Louisiana principal place of business

in Baton Rouge, Louisiana;

o.   Defendant, Boh Brothers Construction Co., L.L.C. is a corporation

organized and existing under the laws of the State of Louisiana

with its principal place of business in New Orleans, Louisiana.

p.   The State of Louisiana, Department of Transportation and

Development ("DOTD") is a political subdivision of the State of

Louisiana, domiciled in the Parish of East Baton Rouge, State of

Louisiana, which has maintenance and surveillance obligations in

respect of the levees at issue in this litigation.

## FACTS

16.

On August 29, 2005, Hurricane Katrina made landfall in southeastern Louisiana causing

widespread destruction in the City of New Orleans and surrounding Parishes.

17.

After the Hurricane passed through the New Orleans area, levees and levee and floodwaters protecting the City failed. Upon information and belief, although the floodwaters did not exceed the height of the floodwaters at the 17th Street Canal, Industrial Canal and London Avenue Canal, the levees failed to hold back the water, and floodwaters poured into the City, resulting in substantial property damage and loss of life.

18.

The levees at the 17th Street Canal, Industrial Canal and London Avenue Canal were constructed pursuant to the design specifications of the United States of America, Department of the Army, Corps of Engineers, as earthen levees and floodwalls, built with steel sheet pilings driven into the ground. The steel sheet pilings were topped with a concrete cap.

19.

Upon information and belief, before the levees and floodwaters were constructed, soil borings were taken to assess the strength of the soil and its ability to withstand the force of flood waters pushing against it and still remain in place.

20.

Upon information and belief, before construction of the levees, studies were conducted to ensure that the levees would provide protection sufficient to withstand the effects of a category 3 hurricane.

## FACTS REGARDING THE 17TH STREET CANAL

### 21.

Upon information and belief, a soil stud was performed in 1981 by Defendant, Eustis Engineering, which took soil borings along the location of the 17th Street Canal Levee.

### 22.

The soil borings revealed alternating layers of soft clay and soft, black humus or peat, a soft, spongy soil comprised of decaying trees and other organic material, from fifteen to twenty-one feet below sea level.

### 23.

The layer of humus or peat substantially reduced the strength of the soil, particularly its strength in resisting lateral pressure and its ability to support the 17th Street Canal Levee when it was under pressure from floodwater.

### 24.

Despite the presence of a layer of soft, spongy material at a depth of fifteen (15) to twenty one (21) feet below sea level, the flood walls of the 17th Street Canal Levee were constructed with steel sheet piling driven to a depth that was seventeen (17) feet below sea level. At such depths, the protective sheet pilings ended above or right in the middle of layers of weak soil.

### 25.

Additionally, the soil adjacent to the 17th Street Canal Levee subsided significantly after construction of the levee and floodwall, thereby significantly reducing the amount of support that the land behind the levee provided against the pressure of floodwaters.

26.

Upon information and belief, the soil studies performed in connection with construction of the 17th Street Canal Levee were not conducted with a reasonable degree of care and diligence and failed to account for the possible weakening of the soil in connection with the effect of subsidence of land on the protected side of the levee, soft soils at the base of the levee, and the soil that was weakened as flood waters pushed through subterranean levels under the levee and floodwall. Alternatively, the soil studies failed to warn against the dangers that should, in the exercise of reasonable care, have been anticipated in connection when the pressure of flood water was applied to soil beneath the 17th Street Canal Levee.

27.

New Orleans design firm, Modjeski and Masters was hired to design the 17th Street Canal Levee.

28.

Upon information and belief, Modjeski and Masters failed to exercise that degree of professional care and diligence that should reasonably have been expected of a firm designing a levee for the protection of human life and billions of dollars in property, and the design work performed by Modjeski and Masters for the 17th Street Canal Levee failed to account for the possible weakening of the soil in connection with the effect of subsidence of land on the protected side of the levee, soft soils at the base of the levee, and the soil weakened as flood waters pushed through subterranean levels under the levee and floodwall.

29.

Upon information and belief, Pittman and James Construction, acting individually and through Gulf Group, constructed and otherwise conducted extensive work on the 17th Street Canal Levee, including construction of the levee, dredging, pile driving, demolition and other work.

30.

Upon information and belief, Pittman, James Construction and Gulf Group were negligent in the manner in which they constructed the 17th Street Canal Levee, in that they failed to exercise reasonable care in accounting for the dangers associated with soil conditions in the area of the levee and ensuring that the construction was adequate to withstand the lateral pressure applied by floodwaters such as those associated with storms such as Hurricane Katrina.

31.

Upon information and belief, soil data was necessary for planning and executing a construction job of this nature.  Although its contract with the Corps of Engineers advised prospective bidders that physical data was available upon request, Pittman never asked for that data prior to bid, and was thus unable to have considered it in formulating its construction approach or bid.  Pittman was negligent in proceeding with the work without such information.

32.

Upon information and belief, defendant, Boh Bros. installed sheet piling and later dredged the 17th Street Canal and thereby exposed layers of unstable peat and soft clays to increased pressures from flood waters, without conducting adequate investigation into the consequences of such dredging and in a manner that was otherwise negligent.

14

**London Avenue Canal Claims**

33.

Upon information and belief, Defendant Miller Excavating Services, Inc., constructed the Leon C. Simon Boulevard bridge over the London Avenue Canal, and it is believed that negligence in the construction of the bridge and the use of heavy vehicles and equipment in construction of the bridge caused or contributed the above mentioned breach in the levee and/or floodwall.

34.

Upon information and belief, Defendants, Burk-Kleinpeter, Inc. and Burk-Kleinpeter, L.L.C. performed engineering work used in construction of the London Avenue Canal levee/floodwall. Plaintiffs aver that the levees and floodwalls were negligently designed and that the faulty design caused or contributed the above-described failure of the levee and floodwall.

35.

Upon information and belief, Defendant B&K Construction Company, Inc. was the contractor that constructed the London Avenue levee and floodwall, said construction including but not limited to the construction and placement of the sheet pilings and the construction and placement of the concrete floodwall slab atop the sheet pilings and the concrete slab sections caused or contributed the above-described failure of the levee and floodwall.  It is further believed that the use of heavy vehicles and construction equipment in construction and placement sheet piling and of the concrete slabs damaged the levee and caused or contributed to the above-mentioned beach in the levee and floodwall.

15

36.

Upon information and belief, defendant C.R. Pittman Construction Company, Inc. constructed the Gentilly Boulevard Bridge over the London Avenue Canal. It is believed that negligence in the construction of the bridge and the use of heavy vehicles and construction equipment in construction of the bridge caused or contributed to the above-mentioned failure of the levee and floodwall.

37.

Upon information and belief, defendant Miller Excavating Services, Inc. contracted to construct the Leon C. Simon Boulevard bridge over the London Avenue Canal. It is believed that negligence in the construction of the bridge and the use of heavy vehicles and/or other heavy construction equipment in construction of the bridge caused and/or contributed the above mentioned failure of the levee and floodwall.

38.

Upon information and belief, defendant James Construction Group, L.L.C. contracted to flood-proof the Filmore Avenue bridge and the Mirabeau bridge over the London Avenue Canal. Flood-proofing of the bridges required that the original bridges be demolished and replaced with new bridges that have steep concrete sides which continue the flood wall from one side of the canal to the other. It is believed that negligence in the demolition of the old bridges and construction of the new bridge and the use of heavy vehicles and/or other heavy construction equipment in the demolition of the old bridges and construction of the new bridges caused and/or contributed the above-mentioned failure of the levee and/or floodwall.

16

**Industrial Canal Claims**

39.

On or about September 11, 2004 a New Orleans Public Belt Railroad train derailment caused a thirty-two and a half foot wide (32.5' wide) gap in Floodgate W-30 which is part of the floodwall system situated immediately west of, and running in a north-south direction parallel to, the Industrial Canal just north of the Interstate 10 high-rise.

40.

As a direct and proximate result of the Orleans Levee District's negligence, plaintiffs sustained damages that include but are not limited to destruction and contamination of property, mental anguish, emotional distress, inconvenience, loss of use of property, loss of property value, loss of income, loss of profits, loss of business opportunity, and fear of future injury.

41.

Upon information and belief, Defendant Washington Group International, Inc. contracted to level and clear abandoned industrial sites along the Industrial Canal between the flood wall and the canal. It is believed that the use of heavy vehicles and/or other heavy construction equipment along the Industrial Canal between the flood wall and the canal damages the levee and floodwall and caused or contributed the above mentioned failure of the levee and floodwall.

42.

Upon information and belief, Defendant Virginia Wrecking Company, Inc. contracted for the demolition, removal and disposal of the Galvez Street Wharf, a warehouse and an adjacent storeroom and for the removal of the debris by barge along the Industrial Canal. It is believed

17

that the use of heavy vehicles and/or flood wall and caused and/or contributed the above-mentioned breach in the levee and/or floodwall.

43.

Upon information and belief, Defendant Boh Bros. Construction Co., L.L.C. contracted to install casings, test piles, and reaction piles along the Industrial Canal between December of 1999 and May of 2000.   It is believed that the use of heavy vehicles and/or other heavy construction equipment along the Industrial Canal damaged the levee and/or flood wall and caused and/or contributed the above-mentioned breach in the levee and/or flood wall.

### The Negligence of the Levee Board

44.

The negligence of the Levee Board caused or contributed to the levee failures, in that the levee board failed to fulfill its obligations to inspect, maintain, monitor, protect and repair the levees and floodwalls along the 17th Street Canal, Industrial Canal and London Avenue Canal, all of which were within the jurisdiction and control of the Levee Board.

### Floodwall Obligations of the Levee Board

45.

With respect to floodwalls, Defendant Levee Board was specifically required to conduct periodic inspections and ensure the following:

(i)     No seepage, saturated areas, or sand boils were occurring;

(ii)    No undue settlement had occurred which affects the stability of the wall or its water tightness;

(iii)   No trees existed, the roots of which might extend under the wall and offer accelerated seepage paths;

18

(iv)   The concrete had not undergone cracking, chipping, or breaking to an extent which might affect the stability of the wall or its water tightness;

(v)    There were no encroachments upon the right-of-way which might endanger the structure or hinder its functioning in time of flood;

(vi)   No bank caving conditions existed riverward of the wall which might endanger its stability;

(vii)  Toe drainage systems and pressure relief wells were in good working condition, and that such facilities were not becoming clogged.

46.

The periodic inspections by Defendant Levee Board were specifically required to be made immediately prior to the beginning of the flood season, immediately following each major high water period, and otherwise at intervals not exceeding 90 days.

47.

In furtherance of the periodic inspections, Defendant Levee Board was required to undertake immediately measures to eliminate encroachments and effect repairs found necessary by such inspections, and all repairs were required to be accomplished by methods acceptable in standard engineering practice.  Moreover, immediate steps were to be undertaken to correct any condition which endangered the stability of the wall.

48.

Defendant Levee Board was required to maintain continuous patrol of the wall during flood periods to locate possible leakage at monolith joints or seepage underneath the wall.

49.

The periodic inspections by Defendant Levee Board were specifically required to prohibit boats from lying against or tying up to the wall.

19

## Obligations of the Levee Board

### 50.

With respect to levees, Defendant Levee Board was specifically required to provide at all times such maintenance as may be required to maintain serviceability of the structures in time of flood.

### 51.

With respect to levees, Defendant Levee Board also was specifically required to conduct periodic inspections and to be certain that:

(viii)   No unusual settlement, sloughing, or material loss of grade or levee cross section had taken place;

(ix)   No caving had occurred on either the land side or the river side of the levee which might affect the stability of the levee section;

(x)   No seepage, saturated areas, or sand boils were occurring;

(xi)   Toe drainage systems and pressure relief wells were in good working condition, and that such facilities were not becoming clogged;

(xii)   Drains through the levees and gates on said drains were in good working condition;

(xiii)   No revetment work or riprap had been displaced, washed out, or removed;

(xiv)   No action was being taken, such as burning grass and weeds during inappropriate seasons, which were retarded or destroyed the growth of sod; and

(xv)   Encroachments were not being made on the levee right-of-way which might endanger the structure.

Immediate steps were to be taken to control any condition which endangers the levee, and the Levee Board was specifically required to repair any damage.

### 52.

The Levee Board was required to take measures to promote the growth of sod on the levees, to exterminate burrowing animals, and to provide for routine mowing of the grass and

20

weeds, removal of wild growth and drift deposits, and to repair all damage caused by erosion or other forces.

53.

During flood periods, the Levee Board was required to patrol the levee continuously to locate possible sand boils or unusual wetness of the landward slope and to be certain that:

(xvi)   There were no indications of slides or sloughs developing;

(xvii)  Wave wash or scouring action was not occurring;

(xviii) No low reaches of leave existed which may be overtopped;

(xix)   No other conditions existed which might endanger the structure.

54.

The Levee Board also was required to take appropriate advance measures to ensure the availability of adequate labor and materials to meet all contingencies.

55.

The Levee Board failed to fulfill almost every one of the forgoing obligations, and the other defendants failed to exercise reasonable care in inspecting the levees and floodwalls and is warning about the hazards complained of herein.

**Obligations of the State of Louisiana, Department of Transportation and Development**

56.

The State of Louisiana, Department of Transportation and Development has maintenance and surveillance obligations in respect of the levees at issue in this litigation, which obligations were negligently and intentionally breached by this Defendant through its misfeasance and

21

malfeasance in respect of the discharge of those duties.   The breach of those duties was a proximate cause of the levee failures and resultant damages at issue in this litigation.

### Damages

57.

Defendants' negligent conduct was a substantial cause of one of the worst disasters in United States history.  Homes, cars, and other property inundated with flood waters and many were destroyed.  The lives of many New Orleans residents were changed forever.

58.

Shortly after Hurricane Katrina passed through the New Orleans area, several hundred feet of the 17th Street Canal Levee breached just south of the point at which the Old Hammond Highway bridge crosses the 17th Street Canal.  Breaches and flooding also occurred along stretches of the Industrial Canal and the London Avenue Canal.  It is believed that the levee failures were the direct and proximate result of negligence in the design, construction, inspection, maintenance and monitoring of the levees and floodwaters. Resulting floodwaters inundated the City of New Orleans, overtaking capacity of pumps and drains and causing a large portion of the City to remain flooded for weeks.

59.

Upon information and belief, the Defendants knew or should have known that their conduct would necessarily cause severe and irreparable damage to the plaintiffs and their property.

22

**Liability of the United States of America**

60.

Congress authorized hurricane protection for the areas along Lake Pontchartrain, including Orleans and Jefferson Parishes as part of the Flood Control Act of 1965. The project authorized and directed the Corps of Engineers to design and construct hurricane protection sufficient to protect those parishes from flooding resulting from a fast-moving category 3 hurricane. Upon information and belief, soil studies and reports from independent consultants, and analysis by engineers employed by the Corps of Engineers showed that sheet piles more than thirty feet deep were required to support the concrete flood walls and withstand pressure resulting from such flooding. However, the Corps of engineers disregarded those studies and reports and approved and implemented designs for floodwalls having the depth of only 17 feet, which was inadequate to protect the area from flooding associated with a fast-moving category 3 hurricane.

61.

The Corps informed plaintiffs and other residents of Orleans and Jefferson Parishes that the levies were sufficient to protect against such flooding, with reckless disregard for the truth and/or with the knowledge that, as constructed, the levees and floodwalls were inadequate. In doing so, the Corps deprived the plaintiffs of the protections authorized to which plaintiffs were entitled by law and willfully disregarded an obvious threat of substantial harm to plaintiffs and their property. The Corps of Engineers thereby created a danger that plaintiffs would expose themselves and their property to harm, including the lack of adequate insurance.

23

62.

The United States of America is liable for all damages sustained by plaintiffs as a result
of the foregoing.

### Proceeding as a Class Action

63.

The claims of the proposed class representatives are typical of the claims of the proposed
class members.

64.

Plaintiffs will fairly and adequately represent and protect the interests of all members of
the described class.   Plaintiffs have retained attorneys highly experienced in the prosecution of
class actions, including complex litigation, and mass tort class actions, to represent the class
members herein.

65.

The common questions of law and fact as shown above predominate over individual
questions of causation or individual damages.

66.

Concentrating this litigation in one forum will promote judicial economy, efficiency and
parity in the treatment of the claims of individual members of the class.

67.

A class action is superior to other available procedures for the fair and efficient
adjudication of this litigation, since individual joinder of all members of each class is

24

impracticable. Even if any class members could afford individual claims (and most could not) it would be unduly burdensome on the Courts in which such litigation would proceed.

68.

The class action procedure will decrease the delay, expense and burdens of managing the process of resolving controversies associated with the losses at issue, because the final adjudication of the issues will occur in a single court, thereby achieving economies of scale and efficiency in the supervision of the litigation process.  Among other things, the process of individual litigation would only serve to magnify the expenses, such as the expense of retaining expert witnesses and analysis, well beyond the ability of most claimants.

69.

Class certification is appropriate, because separate actions by individual class members will create a risk that individual claims will, as a practical matter, be dispositive of unrepresented interests of other, as yet unadjudicated claims.  Such a procedure would impair the ability of parties to protect their interests.

70.

The plaintiffs are entitled to and pray for trial by jury on all issues.

WHEREFORE, Plaintiffs, individually and on behalf of all those similarly situated members of the proposed class, pray:

1.     That defendants be served with a copy of this Complaint and be cited to appear and answer the same;

25

2.      For an order certifying the Class and appropriate subclasses thereof pursuant to the Federal Rules of Civil Procedure, and appointing claimants and their counsel to represent the Class;

3.      After due proceedings are had, including trial by jury, that judgment be rendered in favor of plaintiffs and the proposed Class against defendants The Board Of Commissioners For The Orleans Parish Levee District, The United States of America, Gulf Group, Inc. of Florida, Pittman Construction Co. Of Louisiana, Inc., Pittman Construction Company, Inc., Burk-Kleinpeter, Inc., Burk-Kleinpeter, L.L.C., B&K Construction Company, Inc., Miller Excavating Services, Inc., James Construction Group, Inc., Eustis Engineering Co., Inc., Modjeski And Masters, Inc., Washington Group International, Inc., Virginia Wrecking Company, Inc., Boh Bros. Construction Co., L.L.C., and the State of Louisiana, Department of Transportation and Development in an amount sufficient to compensate plaintiffs and each member of the class for all damages to which they are entitled;

4.      Declaring that the defendants are liable, to the plaintiffs and all members of the class for all damages resulting from the failure and/or breaches of the levees and/or floodwall of the 17th Street Canal, the London Avenue Canal, and the Industrial Canal following the landfall of Hurricane Katrina on August 29, 2005 and thereafter; that the rights of the plaintiffs and all members of the class to establish their entitlement to compensatory damages, and the amount thereof, be reserved for determination in their individual actions when appropriate;

5.      For legal interest on all damages awarded from the date of judicial demand until paid;

6.      For all costs of this litigation; and

7.      Granting such other and further relief as is just or equitable.

Respectfully submitted,

RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. WILES (#17865)
KIRK REASONOVER (#21039)
OWEN B. ST. AMANT (#25509)
          OF
SMITH & FAWER, L.L.C.
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Telecopy: (504) 525-2205

**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing pleading has been served upon all counsel of record, via electronic mail, on this 13th day of April, 2006.

STEPHEN M. WILES