UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, ET AL., | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 05-4182 |
| | * | |
| BOH BROTHERS CONSTRUCTION CO., | * | SECTION "K" (2) |
| ET AL., | * | CONS. KATRINA CANAL |
| | * | |
| THIS DOCUMENT RELATES TO: | * | |
| NO. 06-225 | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs, Frederick Bradley, Lawrence Rabin, and Mark H. Samuels, individually, and on behalf of all persons similarly situated, desire to amend their original Complaint as follows:

1.

By adding the following defendants: Boh Bros. Construction Co., LLC, Washington Group International, Inc., Gulf Group, Inc. of Florida, Burk-Kleinpeter, Inc., B&K Construction Comapny, Inc., Sewerage and Water Board of New Orleans, and Eustis Engineering Co., Inc. for the class of persons similarly situated in the State of Louisiana for the reasons set forth in this Amended Complaint:

2.

## PARTIES

Plaintiffs are Frederick Bradley, Lawrence Rabin, and Mark H. Samuels, individually, and on behalf of all persons similarly situated, all persons of the age of majority and residents of the Parish of Orleans, State of Louisiana.

Defendants are:

1. **Boh Brothers Construction Co., LLC**, a Louisiana Limited Liability Company doing business within the Parish of Orleans, State of Louisiana;

2. **Washington Group International, Inc.**, a non-Louisiana corporation, f/k/a Morrison Knudsen Corporation, f/k/a MK-Ferguson Company, f/k/a The H. K. Ferguson Company, authorized to do and doing business in the State of Louisiana, and in the Parish of Orleans, with its domicile in the State of Ohio, its principal place of business in the State of Idaho, and its Louisiana principal place of business in Baton Rouge, Louisiana;

3. **Gulf Group, Inc. of Florida**, a non-Louisiana corporation authorized to do and doing business in the State of Louisiana, and the Parish of Orleans, with its domicile in the State of Florida, its principal place of business in the State of Florida, and its Louisiana principal place of business in New Orleans, Louisiana;

4. **Burk-Kleinpeter, Inc.**, a Louisiana corporation with its domicile in the Parish of Orleans, and doing business within the Parish of Orleans, State of Louisiana;

5. **B&K Construction Company, Inc.**, a Louisiana corporation, f/k/a B & K Construction Company, with its domicile in the Parish of St. Tammany, and doing

business within the Parish of Orleans, State of Louisiana;

6. **Sewerage and Water Board of New Orleans**, a political subdivision of the State of Louisiana created by La. R.S. 33:4071 *et. seq.*, domiciled in the Parish of Orleans, State of Louisiana, and which has the ability to sue and be sued; and

7. **Eustis Engineering Co., Inc.**, a Louisiana corporation, with its domicile in the Parish of Jefferson, and doing business within the Parish of Orleans, State of Louisiana.

3.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d)(2) because this is a class action in which there is at least minimal diversity and the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs.

4.

## VENUE

Venue is proper in this District pursuant to 28 U.S.C. §1391, because the negligent and wrongful actions of the defendants occurred in the Eastern District of Louisiana, the plaintiffs reside in the Eastern District of Louisiana, the damages to plaintiffs occurred within the Eastern District of Louisiana and the applicable facts which form the basis of this lawsuit occurred in the Eastern District of Louisiana.

5.

## FACTUAL ALLEGATIONS

A. On August 27, 2005, Hurricane Katrina, by now in the Gulf of Mexico, was

      upgraded to a Category 3 hurricane. New Orleans Mayor Ray Nagin called for a voluntary evacuation of the City and Louisiana Governor Kathleen Blanco requested that President Bush declare a major disaster for the State of Louisiana.

B.    At 12:40 a.m. on August 28, 2005, Katrina was upgraded to a Category 4 hurricane. Later that morning New Orleans Mayor Ray Nagin called for a mandatory evacuation of the City. At 1:00 p.m. Katrina was upgraded to a Category 5 hurricane with maximum sustained winds of 175 miles per hour and gusts up to 215 miles per hour.

C.    At 6:10 a.m. on August 29, 2005, Katrina made landfall near Grand Isle, Louisiana, as a category 4 hurricane, and then made a second landfall a short time later near the Louisiana-Mississippi border.

D.    At 8:00 a.m. on August 29, there was water on both sides of the Industrial Canal and by 9:00 a.m. there was six to eight feet of water in the Lower Ninth Ward.

E.    Water began to inundate other parts of the City as well. At 2:00 p.m., City officials publicly confirmed the reason for the water was a breach in the 17th Street Canal flood wall reported to be two city blocks wide, and breaks in the London Avenue Canal as well as the Industrial Canal.

F.    News reports initially indicated seven different breaks in the levee surrounding the City, however it now appears that breaks occurred in the levees/flood walls in six places along three canals — the 17th Street Canal, the London Avenue Canal, and the Industrial Canal. A *Time* magazine report on September 2, 2005, as well as numerous other articles in the Times-Picayune published subsequently concluded

    that it is possible that the levees just did not work the way they were supposed to and that congressional investigators, experts, and some Army Corps of Engineers officers suggested that the failure might have been caused by leaks in the barriers which might mean the levees had been poorly constructed or maintained, and/or that the failure might have been caused by insufficient depth of the sheet-piling supporting the flood walls.  Thus, plaintiffs aver upon information and belief that their damages are a result of improper and/or negligent design, construction, and maintenance of the levees and/or flood walls by various contractors and engineers, and/or the weakening of the levees and/or flood walls caused by the negligence of various contractors while engaged in various other activities along the canals.

G.     The levee flood walls are constructed with an "I-wall" design. The U.S. Army Corps of Engineers Manual on Engineering, Design and Construction of Levees dated April 20, 2000 states that for stability reasons, flood walls utilizing the "I-wall" design rarely exceed seven feet above ground surface, and that an inverted "T-wall" design is used when walls higher than seven feet are required.

H.     The flood walls on the 17th Street Canal and the London Avenue Canal, both built with the "I-wall" design have concrete sections that rise eleven feet.

I.     The "I-wall" design consists of steel sheet pilings driven into the compacted dirt atop the levee and then reinforcing steel rods are threaded through the top of the piling. Concrete is then poured to encapsulate the top of the piling and form the wall. The wall is composed of individual concrete slab sections that are linked together by rubbery gaskets which allow the concrete to expand and contract.

J.     The evidence indicates that the storm surge did not top the flood walls and that none of the levee/flood walls experienced storm forces exceeding, or even equaling the Category 3 forces for which they were allegedly designed. Indeed, because the eye-wall of the storm passed dozens of miles east of the City, the maximum sustained winds that would have impacted Lake Pontchartrain were only 95 miles per hour, 16 miles per hour less than the 111 mile per hour minimum for winds in a Category 3 storm.

K.     Even though only Category 2 forces impacted the lake, and even though the evidence indicates that the flood walls were not overtopped, the levees/flood walls failed allowing water from Lake Pontchartrain through the 17th Street Canal, the London Avenue Canal, and the Industrial Canal into New Orleans and Metairie.

L.     In the aftermath of the storm it was estimated that approximately 80% of the City was under water, and that losses from the hurricane are estimated to be as high as $200 billion, with insured losses estimated at upwards of $50 million.

6.

## ALLEGATIONS OF FAULT AND/OR LIABILITY

A.     Plaintiffs aver, upon information and belief, and that the breaches and failure of the hurricane protection levees and walls were a result of negligence in their design, construction, and maintenance in the following non-exclusive particulars:

**1.     17th Street Canal**

    a.     Upon information and belief, defendant Gulf Group, Inc. of Florida contracted to repair a bridge which spans the 17th Street Canal from Old

    Hammond Highway to Robert E. Lee Boulevard.  Upon information and belief, the defendant Gulf Group, Inc. of Florida, while constructing the bridge placed construction vehicles and other heavy equipment on the levee, which eventually failed.  It is believed that the placement of these heavy vehicles and/or other heavy construction equipment on the 17th Street Canal levee damaged the levee and/or flood wall and caused and/or contributed the above-mentioned breach in the levee and/or flood wall.

 b. Upon information and belief, defendant Boh Brothers Construction Company, L.L.C. was the contractor that constructed portions of the 17th Street levee/flood wall, said construction including but not limited to the placement of sheet piling for the purpose of supporting the concrete flood walls.  Upon information and belief the sheet pilings should have been driven to a depth of between 40 and 50 feet, but were only driven to a depth of 10 feet.  It is believed that the negligent design and/or construction of the levee/flood wall including the improper and inadequate placement of the sheet piling for the purpose of supporting the concrete flood wall and caused and/or contributed the above-mentioned breach in the levee and/or flood wall, and it is further believed that the use of heavy vehicles and/or other heavy construction equipment in the placement of the sheet piling damaged the levee and caused and/or contributed to the above-mentioned breach in the levee and/or flood wall.

 c. Upon information and belief, defendant Eustis Engineering Co., Inc. were

engineers contracted for the 17th Street canal levee/flood wall. Plaintiffs aver that the levees/flood walls were negligently designed and that the fault design caused and/or contributed to the above-mentioned breach in the levee and/or flood wall.

**2.    LONDON AVENUE CANAL**

   a.   Upon information and belief, defendant Burk-Kleinpeter, Inc. was the engineers contracted for the London Avenue Canal levee/flood wall. Plaintiffs aver that the levees/flood walls were negligently designed and that the faulty design caused and/or contributed the above-mentioned breach in the levee and/or flood wall.

   b.   Upon information and belief, defendant B&K Construction Company, Inc. was the contractor that constructed the 17th Street levee/flood wall, said construction including but not limited to the construction and placement of the sheet pilings and the construction and placement of the concrete flood walls slabs atop the sheet piling. It is believed that the negligent design and/or construction of the levee/flood wall including the sheet pilings and the concrete slab sections caused and/or contributed the above-mentioned breach in the levee and/or flood wall, and it is further believed that the use of heavy vehicles and/or other heavy construction equipment in construction and placement sheet piling and of the concrete slabs damaged the levee and caused and/or contributed the above-mentioned breach in the levee and/or flood wall.

3. **INDUSTRIAL CANAL**

   a. Upon information and belief, defendant Washington Group International, Inc. contracted to level and clear abandoned industrial sites along the Industrial Canal between the flood wall and the canal. It is believed that the use of heavy vehicles and/or other heavy construction equipment along the Industrial Canal between the flood wall and the canal damaged the levee and./or flood wall and caused and/or contributed the above-mentioned breach in the levee and/or flood wall.

   b. Upon information and belief, defendant Boh Bros. Construction Co., LLC contracted to install casings, test piles, and reaction piles along the Industrial Canal between December of 1999 and May of 2000. It is believed that the use of heavy vehicles and/or other heavy construction equipment along the Industrial Canal damaged the levee and/or flood wall.

   c. Upon information and belief, on or about September 11, 2004, a New Orleans Public Belt Railroad train derailment caused a thirty-two and a half food wide (32.5' wide) gap in Floodgate W-30, which is part of the flood wall system situated immediately west of, and running in a north-south direction parallel to, the Industrial Canal just north of the Interstate 10 High-Rise.

4. **THE SEWERAGE AND WATER BOARD OF NEW ORLEANS**

   a. The Sewerage and Water Board had at all times relevant hereto the care, custody, control and the *garde* of the land along, over, and on the shores,

        bottom, and bed of Lake Pontchartrain in the Parish of Orleans. . .and along on the shores adjacent to the lake and along the canals connected therewith.

b.     The 17th Street Canal, the London Avenue canal, and the Industrial Canal are canals connected to Lake Pontchartrain in Orleans Parish and are part of the land in the care, custody, control and *garde* of the Sewerage and Water Board.

c.     Upon information and belief the levees and flood walls in the *garde* of the Sewerage and Water Board as described above, contained vices and defects which were known or should have been known to the Sewerage and Water Board, thus rendering the Sewerage and Water Board strictly liable in accordance with LSA-C.C. Articles 2317 and 2317.1.

d.     In addition, upon information and belief during work done by the Sewerage and Water Board in 1988, the Sewerage and Water Board removed existing sheet pilings supporting flood walls and replaced said pilings with new pilings. After completion of the work, the levees and floodwalls contained vices and defects in addition to those existing prior to the work, all said vices and defects being known or should have been known to the Sewerage and Water Board, thus rendering the Sewerage and Water Board strictly liable in accordance with LSA-C.C. Articles 2317 and 2317.1.

B.  **NUMEROSITY**

The proposed class action arises out of the catastrophic failures of the hurricane protection levees and flood walls along the 17th Street Canal, the London Avenue Canal, and the Industrial Canal in the Parish of Orleans on or about August 29, 2005 and the following days which failures resulted in the inundation or upwards of eighty percent of the City of New Orleans with water, destroying and/or rendering completely uninhabitable approximately 160,000 or more homes and buildings, thus causing damage to the plaintiffs and the proposed class.  The exact number and identities of the class plaintiffs are unknown at this time, and can only be ascertained through appropriate discovery, plaintiffs are of information and belief that the class of plaintiffs clearly consists of hundreds of thousands of persons presenting a level of numerosity better handled through the class action procedure.

C.  **COMMON QUESTIONS OF LAW AND FACT**

There are common questions of law and fact applicable to all class members and which predominate over individual questions and which include but are not limited to the cause of the breaches and/or failures of the levee system and/or flood wall following the landfall of Hurricane Katrina on August 29, 2005.

D.  **ADEQUATE REPRESENTATION**

Plaintiffs will fairly and adequately represent the interests of the class, and the class representatives herein are represented by skilled attorneys who are experienced in the handling of mass tort class action litigation and who may be expected to handle this action in an expeditious and economical manner to the best interest of all members of the class.

E.   **TYPICALITY**

The claims of the class representative as named herein are typical of the claims of the class members they seek to represent in that they are all claims seeking damages arising from the breach and/or failure of the hurricane protection levees and/or flood walls along the 17th Street Canal, the London Avenue Canal, and the Industrial Canal following the landfall of Hurricane Katrina on August 29, 2005.

F.   **SUPERIORITY**

The Louisiana Class Action Procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the class members is impracticable. Individual litigation by each of the class members, besides being unduly burdensome to the plaintiffs would also be unduly burdensome and expensive to the court system as well as the defendants.

Accordingly, class certification is appropriate under the Federal Rules of Civil Procedure, Rule 23(b)(3) and/or (b)(1)(B), and the class action vehicle is the superior method for handling this litigation.

7.

Plaintiffs reiterate, reallege, and reaver each and every other allegation of their original Complaint as if fully set forth at length herein.

          Respectfully submitted,

          **GAINSBURGH, BENJAMIN, DAVID,**
          **MEUNIER & WARSHAUER, L.L.C.**

          BY:  s/ Todd R. Slack
                GERALD E. MEUNIER, #9471
                TODD R. SLACK, #24647
                KARA M. HADICAN, #29234
                2800 Energy Centre
                1100 Poydras Street
                New Orleans, Louisiana 70163-2800
                Telephone:   504/522-2304
                Facsimile:    504/528-9973

CERTIFICATE OF SERVICE

      I hereby certify that I have served a copy of the above and foregoing First Amended Complaint upon all parties by Electronic Service of First Class Mail.

          s/ Todd R. Slack