## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

COLLEEN BERTHELOT, ET AL.,                                    CIVIL ACTION

VERSUS                                                        NO.  05-4182

BOH BROTHERS CONSTRUCTION CO.,                        SECTION "K"(2)
L.L.C., ET AL.                                        CONS. KATRINA CANAL

## <u>ORDER AND REASONS</u>

Before the Court is a Motion to Disqualify Judge filed by the Board of Commissioners for

the Orleans Levee District ("OLD") (Doc. 61)[1] and a Motion for Recusal filed by the Washington

Group International, Inc. ("WGI") (Doc. 63)[2].   Generally, these defendants seek the recusal of the

---

[1]The Board of Commissioners for Orleans Levee District  is named in the following cases and as such this
motion pertains to these specific cases:
*O'Dwyer v. United States*, C.A. No. 05-4181,
*Berthelot v. Boh Bros.*, C.A. No. 05-4182
*Harvey v. The Board of Comm.*, C.A. No. 05-4568
*Vodanovich v. Boh Bros.*, C.A. No. 05-5237
*Kirsch v. Boh Bros.* C.A. 05-6073
*Ezell v. Boh Bros.,* C.A. No. 05-6314
*Vanderbrook v. State Farm*, C.A. 05-6323
*Brown v. Boh Bros.*, C.A. No. 05-6324
*Leblanc v. Boh Bros.*, C.A. No. 05-6327
*Milton Armstead v. Nagin*, C.A. No. 05-6438
*Tauzin v. The Board of Comm.*, C.A. No. 06-0020,
*Conlay v. Encompass*, 06-151
*Diane Rogers v. Encompass*, C.A. No. 06-152
*Baird v. Encompass*, C.A. No. 06-153
*Humphreys v. Encompass*, C. A. No. 06-169
*Bradley v. Pittman*, C. A. No. 06-225
*Finney, et al. v. Boh Brothers, et al.* C.A. No. 06-866.

[2]The Washington Group International, Inc. are named in the following cases and as such, this motion
pertains to these specific cases:
*Berthelot v. Boh Bros.,* C.A. No. 05-4182
*Vodanovich v. Boh Bros.*, C. A. 05-5237
*Kirsch v. Boh Bros.*, C.A. No. 05-6073
*Ezell v. Boh Bros.*, C. A. No. 05-6314
 *Brown v. Boh Bros.*, 05-6324
 *Leblanc v. Boh Bros.*, 05-6327

undersigned judge pursuant to 28 U.S.C. §§ 455(a)[3] and 455(b)(4)[4] with respect to litigation arising out of the canal levee and/or floodwall breaches and subsequent flooding which occurred after Hurricane Katrina struck New Orleans on August 29, 2005.[5] Having entertained oral argument on this matter on April 19, 2006, and having reviewed the pleadings, memoranda, and the relevant law, the Court finds these motions without merit.

**Background**

On August 29, 2005, Hurricane Katrina made landfall along the Gulf Coast of Louisiana and Mississippi. While at one point it reached Category 5 strength, by the time it reached New Orleans, it had reduced in speed to become reportedly a Category 3 hurricane. Regardless of its strength, it is uncontested that numerous levees and/or floodwalls breached–that is they failed–causing a catastrophic loss of lives and property which was the subject of national news coverage for weeks on end and still is the subject of national press.

---

*Tauzin v. Boh Bros.*, C.A. No. 06-020
*Finney v. Boh Bros.*, C.A. No. 06-886.

[3] 28 U.S.C. § 455(a) provides"Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

[4] § 455(b)(4)  provides, in relevant part, "He shall also disqualify himself . . . [where] he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."

[5] While initially WGI's motion urged only § 455(a) as grounds for recusal, in its Reply Memorandum at footnote 4, it now "argues for recusal pursuant to § 455(b)(4)."  As such, the Court will address the legal arguments which are equally applicable to both WGI and OLD's motions.

As a result of this phenomenon, approximately two-thirds of New Orleans was flooded; the city was ordered evacuated and hundreds of thousands of persons were displaced.   A number of class action lawsuits have been filed as a result, and in an attempt to manage discovery in this multi-headed Hydra, the Court has consolidated all litigation arising out of damages allegedly caused by the breaches and/or failure of the levees and/or floodwalls along the 17th Street Canal,  London Street Canal, or the Industrial Canal and flooding allegedly caused by the Mississippi Gulf River Outlet ("MRGO").

OLD has been sued in the enumerated cases because of, *inter alia,* its alleged negligence in maintenance of the levees under its control.  WGI has been sued in the noted cases because it allegedly was contracted to level and clear abandoned industrial sites along the Industrial Canal between the floodwall and the canal.  Plaintiffs contend that the use of heavy vehicles and/or other heavy construction equipment along the Industrial Canal between the floodwalls and the canal damaged the levee and/or floodwalls and caused and/or contributed to the breach in the levees or floodwalls in that area.

The classes as defined in the numerous lawsuits filed have not been certified and in light of Fifth Circuit precedents, the likelihood of certification of the mammoth classes [6] defined in some of these lawsuits appears unlikely.  Nonetheless, in a number of these lawsuits, there are claims for damages that include not only destruction of property but, *inter alia,* mental anguish, emotional

---

[6]For example, in *Tauzin, et al. v. Board of Comm'rs of the Orleans Levee District, et al.,* C. A. No. 06-020 the amended complaint modifies the purported plaintiff class to include all residents and property owners in the Parishes of Orleans and Jefferson whose persons or properties were or may hereafter be damaged by flooding caused by the failure of the hurricane protection levees and floodwalls along the 17th Street Canal, the London Avenue Canal and the Industrial Canal, in New Orleans, Louisiana, on or shortly after August 29, 2005.

distress, inconvenience, loss of use of property and fear of future injury for persons residing in New Orleans and Jefferson Parish.

Because the basis for these motions concerns whether the undersigned's impartiality might reasonably be questioned under § 455(a) because of my experiences and those of my spouse,  and any interest my daughter might have in recovery pursuant to these class actions, or whether the undersigned,  individually, and/or my spouse  has a financial interest in the subject matter or any other interest that could be substantially affected by the outcome of the proceedings which would require recusal under § 455(b)(4), the undersigned specifically recounted the particulars of my evacuation and temporary relocation caused by the flooding, as well as that of my daughter, and the damages caused by flooding to my daughter's home at the hearing held on April 19, 2006.  By this reference, the undersigned incorporates herein those statements.

For purposes of these written reasons, the following points will suffice:

1.      The undersigned, my wife and my daughter did not incur any financial or economic harm as a result of the flooding in New Orleans.  My home was not flooded and in fact is located a substantial distance from any point where flooding occurred.

2.      My daughter is an attorney and did not lose one day's wages as a result of the storm.  She was fully compensated for all damage to her home and had no economic damage of any kind.

3.      My daughter has filed an affidavit with the Court attesting that she will not join any class action arising out of the minimal two inches of flood waters which impacted her home which flooding, to her knowledge, was not caused by the breach of the 17th Street Canal but rather was caused by the decision to stop pumping made by Jefferson Parish which incident is not part of these consolidated proceedings.

4.      Any inconvenience incurred by me and/or my spouse was minimal in light of the following facts:

     a.)      I was able to verify soon after the flooding that my house in New Orleans had sustained no flood damage;

4

b.)     I was able to retrieve from my home  sufficient clothing for me and my spouse within the first weeks of the evacuation as I came to New Orleans during that time to retrieve equipment from the courthouse for the Eastern District of Louisiana;

c.)     Because of my wife's foresight, I did not experience the sensory assault of losing my refrigerator/freezer; indeed, I enjoyed the fruits of my freezer throughout the exodus;

d.)     As a member of the judiciary, I was initially accommodated in pursuing my professional duties through the good graces of the United States District Court for the Western District of Louisiana in Lafayette, Louisiana, and lived with my wife's parents who reside three blocks from the courthouse;

e.)     I then was able to sit in the George Arceneaux Courthouse for the Eastern District of Louisiana in Houma, Louisiana, which is my hometown and which courthouse was named for my predecessor and former law partner; and

f.)     I lived in a furnished house outside of Houma and incurred no expenses caused by the move as I received a stipend from the Government to cover my living expenses while displaced.

With these facts in mind, the Court will now turn to the legal issues at hand.

## Recusal Based on Section 455(a)

### The Standard

As previously noted, 28 U.S.C. § 455(a) provides, "[a]ny justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."   Obviously, the purpose of this rule is to protect against even the appearance of impropriety.  The United States Supreme Court in discussing this provision stated:

If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible.

*Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 860, 108 S. Ct. 2194, 2203 (1988) (failure of judge to recuse where he was trustee of university which had interest in litigation violated statute).  In *Sao Paulo State of the Federative Republic of Brazil v. American Tobacco co., Inc.* 122 S. Ct. 1290 (2002) (statute did not require recusal of judge whose name was added mistakenly and without his knowledge to a pro forma motion to file an amicus brief in a similar suit against some of the same defendants prior to his appointment to the bench),  the Supreme Court amplified the meaning of this statement when it reversed the Fifth Circuit's decision concerning the mandatory recusal of Judge Barbier in the tobacco litigation further explicating the criteria for a section 455(a) analysis:

> The Fifth Circuit's decision is inconsistent with *Liljeberg v. Health Services Acquisition Corp.* 486 U.S. 847, 108 S. Ct. 2197, 100 L.Ed. 2d 855 (1988), which stated that § 455(a) **requires judicial recusal "if a reasonable person,** *knowing all the circumstances***, would expect that the judge would have actual knowledge"** of his interest or bias in the case. *Id.,*at 861, 108 S. Ct. 2197 (internal quotation marks omitted and emphasis added).

*Sao Paolo State*, 535 at 233-34 (emphasis added).

"Although section 455 speaks in mandatory language, in actual application we have recognized that the decision to recuse is committed to the sound discretion of the district court and typically is reviewed for an abuse thereof.  But,'[i]f the question is a close one, the balance tips in favor of recusal.'"  *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997) *citing Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995).

Nonetheless,  it has also been recognized that the statute "'must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of person bias or prejudice.'"  *Nichols*, 71 F.3d at 351 *citing United States v. Cooley* , 1 F.3d 985, 993 (10th Cir. 1993).  That court continued:

> Neither is the statute intended to bestow veto power over judges or to be used as a judge shopping device. *Greenspan*, 26 F.3d at 1006; *Cooley*, 1 F.3d at 993. Further, we are mindful that a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require. *Greenspan*, 26 F.3d at 1005; *In re American Ready Mix, Inc.*, 14 F.3d at 1501; *Hinnan*, 831 F.2d at 939.

*Id.*

As noted by the Fifth Circuit in the context of its review of a district court's decision:

> Courts have interpreted this statute to require recusal if a reasonable person, knowing all of the facts, would harbor doubts concerning the judge's impartiality. *Liljeberg v. Health Serv. Acquisition Corp.,* 486 U.S. 847, 860-61, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). In conducting this review, we must ask how these facts would appear to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *U.S. v. Jordan,* 49 F.3d 152, 156 (5th Cir.1995). Moreover, courts should be cautious and discriminating in reviewing recusal motions. As the Seventh Circuit has noted:
>> A thoughtful observer understands that putting disqualification in the hands of a party, whose real fear may be that the judge will apply rather than disregard the law, could introduce a bias into adjudication. Thus the search is for a risk substantially out of the ordinary.
> *In re Mason,* 916 F.2d 384, 385-86 (7th Cir.1990), cited with approval in *Jordan,* 49 F.3d at 156.

*Sensley v. Albritton,* 385 F.3d 591, 599 (5th Cir. 2004).


### Analysis of the Undersigned's Duty to Recuse Pursuant to Section 455(a)

OLD argues that because every judge, clerk and staff member of the Eastern District of Louisiana was displaced and would be putative class members in the levee breach litigation, a reasonable factual basis exists to question the Court's impartiality. OLD maintains that because of the presence of numerous "limited fund" defendants, combined with the amount of damages at issue, the circumstances present the substantial likelihood that one or more limited fund classes will be

certified pursuant to Fed. R. Civ. P. 23(b)(1)(B)[7].  As such, OLD contends that there exists a strong probability that "their wishes notwithstanding, neither Judge Duval, nor his staff, nor his family would be able to 'opt out' of the class(es) over which they  preside."  (Motion for Disqualification at 3).

WGI and OLD rely substantially on *Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995) and *In re Nettles*, 394 F.3d 1001 (7th Cir. 2005) to support the proposition that there is an appearance of impartiality.  *Nichols* concerned the recusal of Judge Alley of the Western District of Oklahoma on motion of both Terry Nichols and Timothy McVeigh who were charged with the bombing of the Alfred P. Murrah Federal Building in Oklahoma City.  That explosion destroyed the Murrah Building, killed 169 people, injured many others and caused extensive damage in the surrounding vicinity.  The Federal Courthouse where Judge Alley sat sustained massive damages as a result of the explosion.  After Judge Alley denied motions for recusal filed by both defendants, Nichols filed a petition for writ of mandamus with the Tenth Circuit seeking the disqualification of all judges of the Western District of Oklahoma.

Using the analysis noted above in light of the facts of that case, the Tenth Circuit found that a writ of mandamus seeking disqualification had to be granted.  Noting the damage to the Oklahoma courthouse, including damage to Judge Alley's courtroom and chambers, and injury to a member of his staff, as well as other personnel and their families, the Tenth Circuit concluded that a reasonable person could not help but harbor doubts about Judge Alley's impartiality and thus he had to be recused.  He was replaced with an available judge outside of the State of Oklahoma.

---

[7]The Court would note that the defendants' categorization of these classes as being necessarily certified as "limited fund" classes pursuant to Rule 23(b)(1)(B) is not well founded.  *See Ortiz v. Fibreboard Corp.* 199 S. Ct. 2295 (1999).

In *In re Nettles*, a defendant was charged with attempting to damage and destroy the Dirksen Courthouse in downtown Chicago, the site of the federal courts in Chicago, including the United States District Court for the Northern District of Illinois.  Judge Bucklo of the Northern District of Illinois was assigned the case.  A motion to recuse followed, based on the argument that since the trial concerned a threat to the judges' safety, a trial presided over by any one of the members of the Northern District of Illinois would create an appearance of bias.  Judge Bucklo denied the motion, reasoning that "there had never been 'any real danger' of damage to the building and she had no 'actual fear of harm' that might influence her rulings in the case."  *Nettles* at 1002.

The defendant petitioned for a writ of mandamus as to all judges of the Northern District. of Illinois.  The Tenth Circuit found that where recusal was sought based on a genuine threat to a judge, and not motivated by a desire to recuse the judge, recusal was required.  *Id. citing United States v. Yousef,* 327 F.3d 56, 170 (2d Cir.2003); *Nichols v. Alley,* 71 F.3d 347 (10th Cir.1995); *United States v. Greenspan,* 26 F.3d 1001, 1006-07 (10th Cir.1994); *United States v. Cooley,* 1 F.3d 985, 993-94 (10th Cir.1993). The court explained the factual underpinnings as follows:

> According to the indictment, Nettles, while serving a two-year prison sentence imposed by a judge of the Northern District, told a fellow prisoner that he wanted to destroy the Dirksen Courthouse, killing or injuring its occupants, by means of a truck bomb. The prisoner reported the threat, and the FBI gave him a phone number, to give Nettles, of a purported supplier of ammonium nitrate. Upon his release from prison Nettles  called the number and made arrangements for the purchase-from an undercover  FBI agent, of course-for resale to a purported terrorist (another undercover agent) who seemed willing and able to use it to destroy the building. *Te-Ta-Ma Truth Found.-Family of URI, Inc. v. World Church of the Creator,* 246 F.Supp.2d 980 (N.D.Ill.2003). Since no proceedings against Nettles were pending in the Northern District, his actions could not have been taken with recusal, or some other tactic that might delay or derail a case against him, in mind.

*Id.* at 1002-03.  It was on this factual basis that the Seventh Circuit, which also sat in the same

building targeted by the defendant, granted the writ of mandamus disqualifying Judge Bucklo. The circuit court then recused itself to be "replaced by judges from other circuits who will be designated to hear any further proceedings instituted by Nettles in this court." *Id.*

Neither of these cases is factually analogous to the situation at bar.  To begin, the two moving defendants in this case are not accused of criminal activity aimed at physically harming the Eastern District of Louisiana.  There is no bias arising out of a threat to the undersigned's safety as found in *Nettles*.  Likewise, while the damage to the Oklahoma City courthouse was actual and extensive, it was the result of an intentional criminal act.  There are no allegations of such purposeful, focused action against this courthouse in the cases at bar.

In addition, unlike those two cases, recusal based on § 455(a) would create a precedent that could be abused.  In essence, defendants argue that if a judge has **general knowledge** of facts or has been generally impacted by the facts at issue that would give him "an interest in the litigation," then an appearance of impartiality is created. Indeed,  it would appear that defendants contend that where a judge is generally affected by the consequences of living in the location of the courthouse in which he sits, he has an interest in the litigation that requires recusal under § 455(a).  This analysis belies the general realities of being a judge–that is a judge cannot and does not live in a vacuum– and the normal requirement is that a judge must judge only the facts presented in Court.

If fear of harm caused by flooding and living in a city that has been harmed by flooding is a sufficient reason to mandate recusal, one could argue that living in a city that is inundated by crime, as was and is New Orleans, and is harmed by crime, as is New Orleans, would require the recusal of judges who live here from hearing criminal matters because they would have a heightened interest in incarcerating all alleged criminals regardless of the facts.  Such a position is based on the

erroneous presumption that a judge would elevate his or her allegiance to a place of residence over one' sworn constitutional oath to adjudicate fairly and equitably based solely on the facts and the law. As such, this rationale could be used to justify the recusal of a sitting judge from hearing a class action arising from the crash of an airplane at the airport in the city in which the judge resides. Certainly, a judge could be inconvenienced by an airport's subsequent closure; he or she could have fear of mismanagement of the air traffic controllers of that airport; and persons affected by that crash certainly might have ties to the Court, but that kind of general impact is not and should not be enough to mandate recusal.

As noted at the hearing and in this opinion, the undersigned and his spouse where only minimally impacted by this storm. Clearly, a reasonable person, knowing all the circumstances, would recognize that the undersigned would be impartial. It is the duty of judges to judge fairly and justly, putting overarching realities and hardships out of that equation. As noted in *U.S. v. Jordan,* 49 F.3d 152 (5th Cir. 1995), "[E]ach § 455(a) case is extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances more than by comparison to situations considered in prior jurisprudence." *Id.* at 157.

Furthermore, practically speaking, if § 455(a) recusal is mandated in this situation, then would not all of the cases arising out of Katrina likewise require recusal? Such a result would wreak havoc on the docket of the entire Eastern District of Louisiana , but more importantly would deprive those most in need of recourse the very judiciary that was established to deal with such litigation. Simply put, to find these circumstances such that they *de facto* create an appearance of impartiality is an overbroad approach to a § 455(a) inquiry.

Given the facts as delineated by the undersigned, the Court finds that to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *U.S. v. Jordan,* 49 F.3d 152, 156 (5th Cir.1995), impartiality is clear. Indeed, to grant this motion might arouse the suspicion of that "thoughtful observer who understands that putting disqualification in the hands of a party, whose real fear may be that the judge will apply rather than disregard the law, could introduce a bias into adjudication." *Id.* Based on the facts outlined above, there is simply no question in the undersigned's mind that disqualification or recusal should not be granted based on § 455(a).

Finally, as to the applicability of § 455(a)[8] with respect to my daughter's interest in this litigation, she did not lose one day of pay, and she did not incur any economic loss as a result of the flooding, the cause of which is unclear and may not involve any of the breaches in this consolidated proceeding. Moreover, as a result of the hurricane and prudent management of her living arrangements and contractual arrangements, her net worth was greater than it was before the hurricane. It would seem inconceivable that she would be an appropriate member of any certifiable class, and furthermore, she has declared under oath and as an officer of the Court that she will not participate in any action seeking such recovery.

**Recusal Based on Section 455(b)(4)**

**The Standard**

---

[8]As the undersigned's daughter is not a "minor residing in my household," the Court will follow the dictates found in *Tramonte v. Chrylser Corp.*, 136 F.3d 1025 (5th Cir. 1998). As she would at best be a member of a putative class, and members of a putative class are not "parties" to a class action for these purposes of 28 U.S.C. § 455(b)(5), *Id.* at 1030, the undersigned has examined the recusal issue based on his daughter's "claims" under § 455(a).

Recusal or disqualification is also sought based on 28 U.S.C. § 455(b)(4).  This statute, as previously noted,  provides in relevant part:

> [A judge] shall also disqualify himself . . . [where] he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

28 U.S.C. § 455(b)(4). In discussing the analysis required under this statute, the Fifth Circuit stated:

> Although few federal courts have ever reached the issue squarely, it seems fairly obvious that where a judge or an immediate family member is a member of a class seeking monetary relief, § 455(b)(4) requires recusal because of the judge's financial interest in the case. *Cf. In re City of Houston,* 745 F.2d at 928 n. 6 (strongly implying that judges must recuse themselves if they are class members with a pecuniary interest in the outcome of the litigation); *Christiansen v. National Sav. & Trust Co.,* 683 F.2d 520, 526 (D.C.Cir.1982) (implying that judges should recuse themselves if they are members of a class for which individual recovery is sought); *In re Cement Antitrust Litig.,* 673 F.2d 1020, 1024 (9th Cir.1981) (implying that judge's ownership of stock in a putative class member requires recusal). **A remote, contingent, or speculative interest is not a disqualifying financial interest under the statute.** ***See In re Placid Oil Co.,* 802 F.2d 783, 786-87 (5th Cir.1986)** (holding that judge's investment in a non-party bank did not require his recusal from a case with a different bank as a party, even though that case might have affected the banking industry). For example, owning stock in a publicly held company that may own a Chrysler vehicle offers no more than a remote or speculative interest. **On the other hand, of course, where a judge is a class member in an action seeking monetary relief, her direct financial interest runs afoul of § 455(b)(4).**

*Tramonte v. Chrysler Corp.,* 136 F.3d 1025, 1029 (5th Cir. 1998) (emphasis added).

*Tramonte* arose in the context where plaintiff brought a state court action against an automobile manufacturer and dealership alleging paint defects caused by a  manufacturing process that affected cars manufactured between 1983 and 1994.  The case was removed to federal court; however, the district judge denied a motion for recusal and remanded the matter to state court.  The manufacturer filed a notice of appeal concerning, *inter alia,* the refusal to recuse and the remand.

13

In the initial opinion denying the recusal, the district judge disclosed that "members of her family had owned Chryslers, and she acknowledged that one member presently owns one." *Id.* at 1029. She noted that the present owner had no interest in joining the putative class. She found that she had no "direct or immediate" interest in the case which required her recusal. *Id.* at 1027. The Fifth Circuit found that these disclosures were insufficient for it to review the order denying the recusal, because the decision did not disclose whether those family members purchased Chryslers manufactured between 1983 and 1994, and whether those owners experienced flaking paint. In addition, the appellate court noted that the degree of relationship between the district judge and the family member who might be a member of the putative class was not disclosed, which prevented the appellate court from using the appropriate standard under 28 U.S.C. § 455(b)(4) or § 455(b)(5). The *Tramonte* court then set forth a framework for the analysis for the district judge to use upon remand to the district court, a portion of which is cited above.

The judge denied the recusal a second time based on her finding that no relative has owned a Chrsyler that has exhibited flaking paint between **1984 and 1993.** Chrysler again appealed contending that its records showed that in December of 1983, an person with the initials and last name of the judge had purchased a 1984 Dodge wagon. Because the recusal neither confirmed nor denied that she [was] the same person and because not enough information was given, the Fifth Circuit remanded the matter to enable that judge to enlarge her previous disclosure to include specific information as to whether § 455(b)(4) criteria were met. (Doc. 146-2 at p.3)

The district judge on the second remand recused based on the disclosure that an out-of-state nephew informed her that he had purchased a second-hand Chrysler with flaking paint, which he

used as a temporary replacement automobile following the loss of his own automobile, and that he

used it for a brief period and then sold it.  She stated:

> Although the remote connection of a relative's brief encounter with a used
> Chrysler with flaking paint in my opinion would not require my recusal, the 5th
> Circuit's ruling seems to, and I hereby recuse myself, and order that the case be
> reallotted.

( Doc. 63, Motion to Recuse, Exh. "P").


**Analysis of the Undersigned's Duty to Recuse Pursuant to Section 455(b)(4)**

Relying on *Tramonte*, defendants contend that because the damages sought in some of the

class actions include  mental anguish, emotional distress, inconvenience, loss of use of property and

fear of future injury for persons residing in New Orleans and Jefferson Parish, the undersigned must

recuse. In *Tramonte*, the Fifth Circuit concurred with the dissent in *Union Carbide Corp. v. United*

*States Cutting Serv.*, 782 F.2d 701 (7th Cir. 1986) which provided that disqualification becomes

automatic from the moment a judge discovers his or her financial interest in the litigation;

relinquishment of that interest at any point after discovery is no remedy unless the provision of §

455(f) apply.  *Id.* at 1031.[9]  Considering that the district judge apparently had no financial interest

that would have triggered the requirements of § 455(b)(4), these statements might be considered

dicta.

Nonetheless, as noted above, the *Tramonte* court stated that a remote, contingent or

speculative interest is not a disqualifying financial interest under this statute.  The Court has

---

[9]A compelling argument concerning whether the conclusions reached in this regard in *Tramonte* are correct
can be found in *In re Initial Public Offering Securities Litigation*, 174 F. Supp. 2d 70, 88-90 (5th Cir. 2001).

attempted to meticulously outline the circumstances of the undersigned relating to Katrina in both this opinion and in the incorporated record of the recusal hearing.  It is the Court's firm opinion that it does not have a financial interest in this litigation.  At best, such "interest" would be ephemeral, inchoate, and bordering on the metaphysical.  This case is about people whose lives were disrupted as a result of flood waters, who lost their homes and businesses.  This case is not about people who were not flooded and suffered no economic loss. *Tramonte* is distinguishable not only in law, but in fact.

*Tramonte* involved the direct, tangible ownership of a specific type of vehicle that was the subject of the class action.  It did not involve, as does this case,  a claim of inconvenience which two defendants' attorneys' "feel" that this judge and his spouse may have experienced despite the fact that the undersigned has averred that any such inconvenience certainly  would not have been compensable and/or certifiable in a class action context.   There is **nothing even remotely tangible** as found in *Tramonte* as to any "interest" that would serve as a basis for disqualification.  As such, the Court finds no reason to recuse under § 455(b)(4).

**Conclusion**

The Court has read all of the memoranda, listened to oral argument, and ruminated concerning this very essential issue.  These cases  affect a multitude of people and businesses in this district, which is itself a paramount reason this case should be presided over by a judge of this district, if appropriate.  A substantial majo*r*ity of the litigants, both plaintiffs and defendants, are located here.  Knowledge of the area and its topographical and hydrological anomalies, *inter alia*,

16

is an important factor in rendering fair, informed and impartial decisions.  The litigants are entitled to have this case adjudicated in this district unless recusal is mandated.

This Court takes its duty to sit very seriously.  This Court also takes its obligation to recuse when necessary very seriously.  Obviously, if I cannot hear this case, no judge in this district can. As a matter of extreme serendipity my family and I had no economic loss as a result of the flooding in Orleans and Jefferson Parishes.  Any inconvenience was ephemeral and remote.  This Article III judge, appointed for life, with absolutely no economic interest in this litigation can and will decide each and every issue in this case fairly and impartially.

The Eastern District of Louisiana has a myriad of cases relating to Hurricane Katrina and its aftermath including various categories of insurance cases, civil rights cases, cases involving FEMA[10] and numerous others.  It would appear if recusal is warranted here under § 455(a), it might be warranted in all of these cases.  Furthermore, as a practical matter, these motions do not relate to all the cases consolidated for pre-trial purposes.  Would this Court be required to recuse from all of these cases at this time?  This action would in this Court's opinion be unwise.  At the present time, the Court is engaged in overseeing the protection of evidence concerning the breaches at those sights. To disrupt this very necessary oversight might jeopardize the fair litigation of these cases.

In addition, the Court would note that the entire Fifth Circuit was affected to some degree by the flooding at issue.  Indeed, the Fifth Circuit itself remained off-site longer than the Eastern District  of Louisiana.  Moreover, phone service and e-mail was disrupted circuit wide during the aftermath of a natural disaster.

---

[10]Indeed, there are two actions before the Court in which FEMA has been named and upon full disclosure of the Court's position, it chose not to seek recusal.

The key distinguishing factor from the *Nicholls* case and the *In re Nettles* case, is that the "disaster" was limited to a single criminal act aimed at the judiciary.  As such, the litigation that ensued was limited to the individual criminal trials of the alleged perpetrators.  In contrast, the events that resulted from Hurricane Katrina have spawned hundreds of cases, all of which properly lie in this district.  Plaintiffs are entitled to their day in court in the court of their choosing before a judge who is familiar with the locale and topography of this city.  The practical dimension of disqualification militates that the duty to sit must prevail in this matter given the totality of the facts and circumstances of the minimal, if not ephemeral, impact of the flooding to the undersigned.

**IT IS ORDERED** that the Motion to Disqualify Judge filed by the Board of Commissioners for the Orleans Levee District (Doc. 61) and a Motion for Recusal filed by the Washington Group International, Inc. (Doc. 63) are **DENIED**.

New Orleans, Louisiana, this __4th__ day of May, 2006.

_____

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**