UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **COLLEEN BERTHELOT, et al.** | * | CASE NO. |
| **VERSUS** | * | NO. 05-4182 |
| **BOH BROTHERS CONSTRUCTION CO., et al.** | * | SECTION " K " |
| | * | MAG. NO. "2" |
| **RELATES TO ALL CASES** | | |

* * * * * * * * * * * * * * * * *'

MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL PRODUCTION
OF EVIDENCE IN CONNECTION WITH THE
SEVENTEENTH STREET CANAL BREACH SITE

**MAY IT PLEASE THE COURT:**

The United States of America and its agency and instrumentality, the U.S. Army Corps of Engineers, and their counsel, continue to "thumb their noses" at the Court and counsel in this case. The morning after two Corps' employees testified under oath in Open Court on May 2, 2006, after representations on the record that all efforts would be made to give plaintiffs' counsel and their experts reasonable notice of access to evidence in danger of immediate destruction, undersigned counsel for plaintiffs received four (4) hours notice of imminent destruction of evidence at the Seventeenth Street Canal breach site, which required counsel to drop everything he was doing, mobilize his expert, have the expert drop everything he was doing, and hot-foot it to the site. Once at the site, the

-1-

undersigned, his experts and counsel for the other litigants were again treated with arrogance, distain, and lack of cooperation by counsel, by the Corps of Engineers and by their contractors. What happened at the site on Wednesday, May 3, 2006, was videotaped and photographed. What happened at the site also has been the subject of documentation between and among counsel for record purposes, and includes the following:

1. Memorandum to the file by the undersigned, summarizing the sworn testimony of Dr. Mlakar, attached and marked as Exhibit No. 1.

2. Freedom of Information Act request from the undersigned to the Corps of Engineers dated May 3, 2006, attached and marked Exhibit No. 2;

3. Memorandum to the file by the undersigned dated May 3, 2006, documenting observations at the 17th Street Canal breach site;

4. May 4, 2006 E-mail to the undersigned from one of plaintiffs' experts, Robert D. Bartlett of Bartlett Engineering, and attached photographs, attached and marked Exhibit No. 4;

5. Short May 4, 2006 E-mail from Mr. Bartlett to the undersigned with one attached photograph, attached and marked Exhibit No. 5; and

6. Facsimile from the undersigned to counsel for the Government and the Corps of Engineers dated May 4, 2006, demanding access to evidence at the 17th Street Canal breach site, attached and marked Exhibit No. 6.

Once again, the Government's contempt for counsel and the Court and concepts of rudimentary fairness and reasonable notice are being ignored by our own Government and their counsel. How much more abuse is the Court going to allow the Government to

heap on the litigants and their counsel in this case before the Court really does something about it – something that the Government and its lawyers will not forget.

So that the Court may acquaint itself with the "big" picture, the Court is respectfully referred to the following record documents in the above-styled and numbered cause:

157, 168, 169, 170, 171, 212, 213, 215, 218 219, 220, and 221.

Further deponent sayeth not.

Respectfully submitted,

LAW OFFICES OF
ASHTON R. O'DWYER, JR.

By: _____
Ashton R. O'Dwyer, Jr.
In Proper Person
Bar No. 10166

One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Telephone: (504) 561-6561
Facsimile: (504) 561-6560

### CERTICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via E-mail and a copy has been served upon Magistrate Joseph C. Wilkinson, Jr., via hand delivery, this ____ day of May, 2006.

_____

-3-

May 3, 2006

**MEMO TO FILE**

Re:   Colleen Berthelot, et al. vs.
      Boh Brothers Construction Co., LLC, et al.
      No. 05-4182 "K"(2)
      Relates to All Actions

The things learned at the recent evidentiary hearing, during which we were "treated" to testimony from two U.S. Army Corps of Engineers employees from the Engineering Research Development Center in Vicksburg, MS, included the following:

1) The Corps' efforts to capture "perishable" data commenced almost immediately after the storm, while the many breaches in the retaining walls which failed due to the Corps' incompetence were still being filled with "whatever".

2) Dr. Mlakar was part of the precursor to IPET's Data Collection Team, and/or IPET's Materials Management Group, which, at the time was called the Perishable Data Team.

3) Notwithstanding a FOIA request to the COE on October 12, 2005, and notwithstanding the fact that the Corps already has collected evidence from 4 sites,[1] the parties litigant have been invited to only 2 sites: 1) 17th Street in December and 2) London Avenue North during the week of April 24th.[2]

4) Evidence is still buried and is yet to be gathered from 2 sites: 1) 17th Street (breach area) and 2) London Avenue South. The recovery of

---

[1] The 4 sites are 17th Street (North and South of breach), IHNC East and West, and London Avenue North.
[2] The litigants' visits to both of these sites has resulted in the filing of discovery motions against the U.S.



EXHIBIT No. 1

evidence from these 2 sites has been planned by the COE and IPET since October.

5) While the Corps of Engineers has recovered structural material consisting of samples of the concrete, rebar and steel sheet piles, no water stops have been retained, nor has the Corps attempted to save the edges of the monolith panels which house the concrete lips which hold the water stops between panels in place, or the bottoms of the concrete panels where the concrete overlaps the sheet piles. It was not clear from Dr. Mlakar's testimony if the monoliths from the sites where evidence has been gathered thus far, namely 17th Street (North and South of breach) IHNC (East and West) or London Avenue North have been retained.

6) Dr. Mlakar testified that "The load is carried by the concrete and steel sheet piles" and that "We have not seen any evidence that the concrete panels or steel sheet piles were damaged in the event (KATRINA) itself"[3] These statements were, at best, deceptions and, at worst, LIES, because the available photographic evidence clearly shows that many joints between concrete panels separated, and that many concrete lips and the water stops themselves split or broke, and that the bottoms of the concrete panels, where they met the steel sheet piles, flipped downward from water pressure, like hinges, particularly at London Avenue North.

7) The concrete and steel "samples" collected by the Corps have been destroyed during testing, but other "evidence" is stored at the Corps'

---

[3] Dr. Mlakar also said, "We have not preserved any water stops because we do not believe they played any role in the critical failures, and our (IPET's) reviewers agree." He also said, "We have not done any original testing of the connection between the sheet piles and the concrete monoliths".

warehouse on Leake Avenue. We do not know what is in the warehouse. We do not know if the concrete monolith panels which were removed from the London Avenue North breach site between Good Friday and Monday, April 24, 2006, are in that warehouse.

8) This week IPET is meeting with the External Review Panel of the American Society of Civil Engineers; next week IPET is meeting with the National Academies of Engineering. Both meetings are ostensibly to obtain "review" of IPET's work prior to the release of the final IPET Draft Report on June 1, 2006. Neither meeting is open to the pubic.

9) Apparently, there exists some type of Presidential Directive, which addresses the preservation of evidence, which we should ask for.

AROD

May 3, 2006

**<u>VIA FACSIMILE</u>**

The United States Army Corps of Engineers
c/o Its Assistant District Counsel
Randall C. Merchant, Esq.
Foot of Prytania Street at the
  Mississippi River
New Orleans, LA 70118

The United States Army Corps of Engineers
c/o Its Attorney-in-Fact
Robin D. Smith, Esq.
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044

        Re:    Colleen Berthelot, <u>et al</u>. vs.
                 Boh Brothers Construction Co., LLC, <u>et al</u>.
                 No. 05-4182 "K"(2)
                 Relates to All Actions
                 Freedom of Information Act Requests

Gentlemen:

      In furtherance the disclosures made during the testimony of Dr. Mlakar yesterday, I renew my Freedom of Information Act requests for the production of the concrete monolith panels which were removed from the London Avenue North breach site sometime between Good Friday and Monday, April 24, 2006 and particularly the left and right hand "edges" of those concrete panels, the "bottoms", where the panels met the sheet piles, and the water stops between sheet piles in the breach area, only two (2) of which could be found at the site during the week of the 24th.


EXHIBIT No. 2

May 3, 2006
Page 2

  I also want to see any and all videotapes, photographs or digital recordings of observations made by Dr. Mlakar and each and every other member of the U.S. Army Corps of Engineers' Perishable Data Team, or ephemeral data identification or recovery team, and/or IPET's Data Collection Team and/or Materials Management Group, since Hurricane KATRINA at any breach site in the Greater New Orleans Metropolitan Area, as well as any and all log books, note books, diaries, notes, personal notes, sketches and writings of any nature or kind which were maintained by any of the above-identified individuals to record observations at every breach site since Hurricane KATRINA, to include whatever written inventory any IPET Team may have of the data and other tangible things actually collected by any Corps of Engineers' employee, contractor or IPET Team Member, and whether or not the data and other tangible things have been destroyed or not.

  In addition, please be advised that I expect reasonable notice of the excavation of evidence at the 17th Street Canal breach site and the London Avenue South breach site, to include the same areas of the concrete monolith panels identified, <u>supra</u>, as well as the steel sheet piles and water stops. Also, please provide the Corps' written instructions to its contractor(s) and the contemplated schedule for the excavation work, so my expert(s) and I do not waste valuable time waiting at the site(s) for evidence to be uncovered.

  Lastly, Dr. Mlakar referred to some sort of "Presidential Directive" yesterday, which addressed the preservation of evidence. Please provide that document to me.

  Since this matter is in litigation, I propose to ask Magistrate Judge Wilkinson to tax the expenses of reproducing the items being the subject of my FOIA request(s) as costs.

  This is a Freedom of Information Act request.

Yours very truly,

Ashton R. O'Dwyer, Jr., on his own behalf
and as Agent for, Attorney-in-Fact and
Legal Representative of the previously
identified Individual Claimants

AROD/vtb
Enclosure
cc: Ms. Tess Finnegan (via facsimile)
   Peter Myer, Esq. (via facsimile)
   Ms. Traci Colquette (via facsimile)
   All Plaintiffs' Counsel of Record

May 3, 2006

MEMO TO FILE:

    Re:    Colleen Berthelot, et al. vs.
             Boh Brothers Construction Co., LLC, et al.
             No. 05-4182 "K"(2)
             Relates to All Actions

## OBSERVATIONS AT 17TH STREET CANAL BREACH SITE

One large group of concrete monolith panels have already been destroyed and removed from the site from sheet piles at the South end of the breach. Moving North, the next group of laid-over monolith panels were still connected to sheet piles, but the excavation was not sufficient to allow visual observation of the connection between the monolith panels and the sheet piles. This can only be intentional by the COE to deny us the opportunity to see potentially vital evidence. According to Randy Merchant, this group of monolith panels are slated for destruction and removal before the sheet piles are exposed, following which the underlying sheet piles will be removed, measured and marked, as was done at the London Avenue North site last week. I registered my strong objection.

The one water stop which was harvested while I was present at the site occurred at the joint of two monolith panels at the North end of the breach. The fact that the overlap of the concrete on the canal side of the sheet pile was longer on the canal side than on the land side was obvious, although we were not permitted to get close enough to take accurate measurements. We were not able to visually observe any intact water stops.



EXHIBIT NO. 3

Each water stop observed appeared either to have split or to have been pulled out of one or the other adjoining monolith panels.

To my untrained eye, there was no evidence of the "hinge" effect described by Mr. Pazos at the London Avenue North breach site. It appears that although the failure of the concrete lips or of the water stops themselves may have occurred at 17th Street, the catastrophic failure mechanism here clearly seems to have been a soils problem, which is different from the catastrophic failure mechanism at the London Avenue North breach site.

The two mounds of earth which figured prominently in my original Motion for a Protective order have been completely obliterated.

AROD

**Victoria Broussard**

**From:** Ashton O'Dwyer [arod@odwyerlaw.com]
**Sent:** Thursday, May 04, 2006 11:38 AM
**To:** 'Victoria Broussard'
**Subject:** FW: Monoliths have been removed from 17th St. already

-----Original Message-----
**From:** Bob Bartlett [mailto:nometal@bellsouth.net]
**Sent:** Thursday, May 04, 2006 11:03 AM
**To:** Pazos, Hector; O'Dwyer, Ashton
**Subject:** Monoliths have been removed from 17th St. already

Ashton and Hector,

On Wednesday, May 3, 2006, I was on the 17th Street Canal Orleans Levee Repair construction site. I was there to observe the removal of one of the elastomer water seals between two monoliths. Coincidentally, the monolith adjacent to the one from which the seal was to be removed appeared to have failed in the way that Hector has been postulating. Specifically, there appeared to be inadequate means to effect a bond between the sheet piling and the concrete apron on the canal side. (Photo file 913D256). Hector's position, I believe, is that without this bond the concrete cap will be likely to bend off of the top of the sheet pile due to the pressure of the water.

I am writting to you both relative to this concept as it applies to the other monoliths of the wall. While I was at the site I fortuitously discovered that the Corps has started to unearth the remaining monoliths. I have attached a photo of some of these monoliths (Photo file 913D263).

The unearthing of these monoliths was the event for which we had repeatedly and very specifically asked for notification. While I was there on Wednesday, I spoke to the Corps attorney, Mr. Merchant, and he informed me that the plan was to just demolish the monoliths in place without completely unearthing them, and then pulling out the sheet piles so that they could proceed with the levee repair. When he was asked about what the Corps does to document this evidence as it is destroyed, he said that they take pictures of general construction progress, but those photos are not specifically intended to document any particular acts. As described by Mr. Merchant, the Corps is not taking any measures to document the condition of these floodwall pieces as they are destroyed.

Some of the monoliths have already been demolished as Mr. Merchant described. The tops of the sheet piles which these monoliths used to be attached to are shown in photograph file 913D274. The hand in that photo is that of Mr. Kuykendall, the Corps employee that felt it was his duty to prevent me from seeing or photographing this.

Considering that we have evidence that indicates that at least one floodwall failed as Hector postulated (separation of the water side skirt from the sheet pile due to inadequate concrete anchors welded to the sheet piles -- photo file 913D256), the importance of observing the condition of these remaining monoliths becomes even more important.

Ashton, I don't understand why it would be an impediment to job progress for one representative of all of the plaintiffs be allowed to access the site to observe the condition of these monoliths

**EXHIBIT NO. 4**

5/4/2006

unearthed. We would even offer that the person that would be sent would be familiar with working on heavy equipment job sites, provide proof of workmen's comp. insurance, and sign an agreement waiving liability from injury by the Corps or its contractors. I am on similar sites frequently, and my presence does not impede or in any way interfere with job progress. It is my professional opinion that my presence, or the presence of any other person with construction site experience, would not impede job progress at all.

Mr. Merchant indicated that the monoliths had been unearthed for a couple of weeks, and that they were not going to start demolition on them for several days. The presence of one observer would not impede their progress. Several people could rotate so that no more than one person is on site at any one time.

Based on their previous performance, I would expect that the Corps will attempt to begin to immediately demolish these monoliths now that we have expressed an interest in them. Ashton, if we are going to get a look at the "bond area" of these monoliths, we will have to act swiftly, and get authorization to access the job site.

In closing, as I was given the bum's rush off of the job site Wednesday, Corps employee Mr. Kuykendall screamed at us, "Haven't these people suffered enough?" He was referring to the people in the neighborhood that lost their houses - as if you or I were responsible for their houses being flooded. I couldn't speak. I just stared at the logo on his hard hat and I thought, "Indeed they have, Mr. Kuykendall. Indeed they have."

Robert D. (Bob) Bartlett, P.E.
BARTLETT ENGINEERING
ph. (504) 888-2122
fx. (504) 888-9890
cell (504) 837-6776

5/4/2006



# Victoria Broussard

**From:** Ashton O'Dwyer [arod@odwyerlaw.com]
**Sent:** Thursday, May 04, 2006 11:40 AM
**To:** 'Victoria Broussard'
**Subject:** FW: 17th St. floodwall had their feet swept out from underneath them

-----Original Message-----
**From:** Bob Bartlett [mailto:nometal@bellsouth.net]
**Sent:** Thursday, May 04, 2006 11:07 AM
**To:** O'Dwyer, Ashton; Pazos, Hector
**Subject:** 17th St. floodwall had their feet swept out from underneath them

Ashton and Hector,

The attached photograph shows the monoliths at the 17th St. breach that were just unearthed. Notice that they are sloping the wrong direction -- i.e. toward the canal. This demonstrates that "their feet got swept out from underneath them." Realize that nearly 20 feet of sheet piling is probably still attached to the bottom of these monoliths. That is like a two story building beneath the surface of the earth that moved sideways 45 ft.

Bob


EXHIBIT No. 5

5/4/2006

[letterhead illegible]

May 4, 2006

**<u>VIA FACSIMILE</u>**

The United States Army Corps of Engineers
c/o Its Assistant District Counsel
Randall C. Merchant, Esq.
Foot of Prytania Street at the
  Mississippi River
New Orleans, LA 70118

The United States Army Corps of Engineers
c/o Its Attorney-in-Fact
Robin D. Smith, Esq.
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044

    Re: Colleen Berthelot, <u>et al</u>. vs.
      Boh Brothers Construction Co., LLC, <u>et al</u>.
      No. 05-4182 "K"(2)
      Relates to All Actions
      Freedom of Information Act Requests

Gentlemen:

  This is to confirm my comments and requests, and the requests of one of my experts, Mr. Bartlett, to Mr. Merchant and the other Corps of Engineer's representatives, who where present at the 17th Street Canal breach site, yesterday afternoon.

  The Corps of Engineers is orchestrating a massive destruction of evidence at the site, to the prejudice of my clients and the other litigants. I reiterate my requests for the following:

  1)  Access to the site to observe evidence and its excavation. After Mr. Merchant left the site yesterday, at the end of approximately an hour to an


EXHIBIT NO. 6

May 4, 2006
Page 2

        hour and a half of observation, Mr. Bartlett and I were evicted from the site by the Corps' Mr. Kuykendall and denied further access to evidence.

2) Excavation of the site in order to permit inspection of the bottoms of the concrete monolith panels, where they make contact with the steel sheet piles. My experts and I also want the same access to the trench enjoyed by the Corps' representatives and contractors.

3) Excavation of and access to the joints between concrete monolith panels, so that we can inspect the concrete lips which house the water stops, and the water stops themselves. This also includes access to the trench.

4) That the Corps immediately cease and desist any further destruction of concrete monolith panels at the site, which is totally unnecessary and is destroying vital evidence necessary to the plaintiffs' case.

5) Reasonable notice about when steel sheet piles will be pulled at the sites and access to and the opportunity to observe this work.

    I also reiterate my request that the Government send someone to the site with a vocabulary that includes words other than "NO".

    This is also notice to the United States of America and the U.S. Army Corps of Engineers that further destruction of evidence without granting me and my clients, and their experts, proper access will be accomplished at your peril, to include the invocation of adverse presumptions and sanctions for spoliation of evidence, including the striking of defenses.

    This is a Freedom of Information Act request.

    Yours very truly,

    *[signature]*

    Ashton R. O'Dwyer, Jr., on his own behalf
    and as Agent for, Attorney-in-Fact and
    Legal Representative of the previously
    identified Individual Claimants

cc: Ms. Tess Finnegan (via facsimile)
     Peter Myer, Esq. (via facsimile)
     Ms. Traci Colquette (via facsimile)
     All Plaintiffs' Counsel of Record