<u>AFFIDAVIT OF STEVAN SPENCER</u>

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

BEFORE ME, the undersigned authority, came and appeared STEVAN SPENCER, who based upon his own personal knowledge and after being duly sworn, did depose and say as follows:

1.

Affiant is the Director of Hurricane and Flood Protection, employed by the Board of the Commissioners of the Orleans Levee District ("Orleans Levee District"). Affiant has been employed by the Orleans Levee District since 1993, and has served as the Orleans Levee District's Chief Engineer. The information contained in this affidavit is based on the knowledge Affiant gained as a result of his involvement and experience with the Orleans Levee District.

2.

The Orleans Levee District has, from time to time, entered into various contractual agreements with the United States whereby the Orleans Levee District maintained and operated all features of the project in accordance with the regulations prescribed the Secretary of the Army.

3.

Specifically, under the terms of July 28, 1966 agreements between the Orleans Levee District and the United States of America, as supplemented by assurances and agreements executed in 1971, 1973, 1975, 1976, and 1985 (which assurances and agreements are attached hereto and which authenticity and accuracy Affiant hereby verifies), the Orleans Levee District agreed to, "maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, seawalls, and stoplog structures. . ."[1] Included among the flood

---

[1]   Ex. "A" - Act of Assurance, July 28, 1966 - Lake Pontchartrain and Vicinity Project, Barrier Plan
      Ex. "B" - Act of Assurance, July 28, 1966 - Lake Pontchartrain and Vicinity Project, Chalmette Area Plan
      Ex. "C" - Act of Assurance, September 16, 1971 - Lake Pontchartrain and Vicinity Project
      Ex. "D" – Act of Assurance, September 21, 1973 - Lake Pontchartrain and Vicinity Project
      Ex. "E" – Supplemental Assurance, May 29, 1975 - Lake Pontchartrain and Vicinity Project
      Ex. "F" – Agreement, January 1, 1976 - Lake Pontchartrain and Vicinity Project

1



control structures which the Orleans Levee District is contractually obligated to operate and maintain under the contracts are the flood control structures associated with the 17th Street and London Avenue canals.

4.

Annual inspections of all the flood control structures within the Orleans Levee District are conducted by the Corps of Engineers to determine whether the Orleans Levee District has complied with its contractual maintenance obligations.

5.

Inspection and maintenance of the flood control structures are among the duties the Orleans Levee District is obligated to perform under the agreements with the United States and federal flood control structure maintenance regulations.

_____
STEVAN SPENCER PE.

SWORN TO AND SUBSCRIBED, before me, the undersigned Notary Public, on this 5th day of

May , 2006.

_____
Notary Public

Name: Cornelia S. Ullmann

ID# #23339

Duly Commissioned for Life

Ex. "G" – Interim Agreement, February 20, 1985 - Lake Pontchartrain and Vicinity Project, High Level Plan

Ex. "H" – Supplemental Agreement, June 21, 1985 - Lake Pontchartrain and Vicinity Project, High Level Plan

ACT OF ASSURANCE

UNITED STATES OF AMERICA
STATE OF LOUISIANA
PARISH OF ORLEANS

BE IT KNOWN, That on this 28th

day of the month of __July__

of the Year of Our Lord, One

Thousand Nine Hundred and Sixty-

Six ,

BEFORE ME,     James E. Glancey, Jr.                    , a Notary Public, duly
commissioned and qualified, in and for the Parish of Orleans, State of Louisi-
ana, and in the presence of the witnesses hereinafter named and undersigned,

CAME AND APPEARED the Board of Commissioners of the Orleans Levee Dis-
trict, represented herein by _____Milton E. Dupuy_____, its President,
pursuant to and by virtue of the provisions of a resolution adopted by the
said Board of Commissioners of the Orleans Levee District on the 28th  day of
__July__           1966 , a duly certified copy of such resolution being
annexed hereto and made a part hereof, paraphed "Ne Varietur" of this date by
me, Notary, to identify same herewith, who declared that, in accordance with
the said resolution and pursuant thereto, he, the said President of the Board
of Commissioners of the Orleans Levee District, has assured and does hereby
assure the Secretary of the Army of the United States that the said Board of
Commissioners of the Orleans Levee District is authorized and empowered to
comply with all the required conditions of local cooperation for the said Lake
Pontchartrain and Vicinity, Louisiana, Project, Barrier Plan, and that it will
participate in said project to the extent that it will, without cost to the
United States:

> (a)  Provide all lands, easements, and rights-of-way, including
> borrow and spoil-disposal areas necessary for construction, opera-
> tion, and maintenance of the project;

> (b)  Accomplish all necessary alterations and relocations to
> roads, railroads, pipelines, cables, wharves, drainage structures,
> and other facilities required by the construction of the project;

> (c)  Hold and save the United States free from damages due to
> the construction works;

> (d)  Bear 30 percent of the first cost, to consist of the fair
> market value of the items listed in subparagraphs (a) and (b) above
> and a cash contribution as presently estimated below, to be paid
> either in a lump sum prior to initiation of construction or in
> installments at least annually in proportion to the Federal appro-
> priation prior to start of pertinent work items, in accordance with
> construction schedules as required by the Chief of Engineers, or;



as a substitute for any part of the cash contribution, accomplish
in accordance with approved construction schedules items of work
of equivalent value as determined by the Chief of Engineers, the
final apportionment of costs to be made after actual costs and
values have been determined:

| Project | Total contribution for construction | Lands and relocations | Cash contribution for construction |
|---------|-------------------------------------|----------------------|-----------------------------------|
| Lake Pontchartrain barrier plan | $28,940,400 | $6,241,100 | $22,699,300 |

(e) Provide an additional cash contribution equivalent to the
estimated capitalized value of maintenance and operation of the
Rigolets navigation lock and channel to be undertaken by the United
States, presently estimated at $3,816,000, the final determination
to be made after construction is complete, said amount to be paid
either in a lump sum prior to initiation of construction of the
barrier or in installments at least annually in proportion to the
Federal appropriation for construction of the barrier;

(f) Provide all interior drainage and pumping plants required
for reclamation and development of the protected areas;

(g) Maintain and operate all features of the project in accord-
ance with regulations prescribed by the Secretary of the Army, includ-
ing levees, floodgates and approach channels, drainage structures,
drainage ditches or canals, floodwalls, seawalls, and stoplog struc-
tures, but excluding the Rigolets navigation lock and its appurtenant
navigation channels and the modified dual purpose Seabrook lock; and

(h) Acquire adequate easements or other interest in land to
prevent encroachment on existing ponding areas unless substitute
storage capacity or equivalent pumping capacity is provided promptly.

THUS DONE AND PASSED in my office at  New Orleans

Louisiana, on the day and date hereinabove set forth in the presence of

Mary H. Brown  and  Barbara A. Faller ,

competent witnesses, who hereunto sign their names, together with appearer and

me, said Notary, after due reading of the whole.

WITNESSES:

BOARD OF COMMISSIONERS
ORLEANS LEVEE DISTRICT

BY: _____
PRESIDENT

NOTARY PUBLIC

My commission is issued for life.

(SEAL)

APPROVED

30 September 1966
Date

Chief, Real Estate Division

STATE OF LOUISIANA

PARISH OF ORLEANS

I, _____ James E. Glancey, Jr. _____, being the duly elected, qualified
and acting Secretary of the Board of Commissioners of the Orleans Levee Dis-
trict, aforesaid, do hereby certify that the above and foregoing is a true
and correct copy of a resolution adopted at a meeting of the Board of Commis-
sioners of the Orleans Levee District held on ___ July 28 _____ 1966,
in connection with the giving of the Secretary of the Army required assurances
of local cooperation for the construction, maintenance and operation of Lake
Pontchartrain and Vicinity, Louisiana, Project, and that the original minutes
appear of record in my office in Minute Book ___ 26 ___, from which the above has
been taken and compared.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of
said Board of Commissioners of the Orleans Levee District this 28th day of
___ July _____ 1966 .

SECRETARY

(SEAL)

appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined:

| Project | Total contribution for construction | Lands and relocations | Cash contribution for construction |
|---------|-------------------------------------|-----------------------|-------------------------------------|
| Chalmette | $1,246,300 | $ 377,900 | $ 868,400 |

(e)  Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

(f)  Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, and stoplog structures.

(g)  Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly.

THUS DONE AND PASSED in my office at ___New Orleans___

Louisiana, on the day and date hereinabove set forth, in the presence of

___Mary H. Brown___ and ___Barbara A. Faller___

competent witnesses, who hereunto sign their names, together with appearer and me, said Notary, after due reading of the whole.

WITNESSES:

BOARD OF COMMISSIONERS
ORLEANS LEVEE DISTRICT

BY: _____
                    PRESIDENT

_____
NOTARY PUBLIC

My commission is issued for life.

(SEAL)

APPROVED

30 September 1966
DATE

_____
Chief, Real Estate Division

E

ACT OF ASSURANCE

UNITED STATES OF AMERICA
STATE OF LOUISIANA
PARISH OF ORLEANS

BE IT KNOWN, That on this __28th__
day of the month of __July__
of the Year of Our Lord, One
Thousand Nine Hundred and Sixty-
__Six__ ,

REFORE ME, _____James E. Glancey, Jr._____ , a Notary Public, duly
commissioned and qualified, in and for the Parish of Orleans, State of Louisi-
ana, and in the presence of the witnesses hereinafter named and undersigned,

CAME AND APPEARED the Board of Commissioners of the Orleans Levee Dis-
trict, represented herein by ____Milton E. Dupuy____ , its President,
pursuant to and by virtue of the provisions of a resolution adopted by the
said Board of Commissioners of the Orleans Levee District on the __28th__ day of
__July__ 19 66 , a duly certified copy of such resolution being
annexed hereto and made a part hereof, paraphed "Ne Varietur" of this date by
me, Notary, to identify same herewith, who declared that, in accordance with
the said resolution and pursuant thereto, he, the said President of the Board
of Commissioners of the Orleans Levee District, has assured and does hereby
assure the Secretary of the Army of the United States that the said Board of
Commissioners of the Orleans Levee District is authorized and empowered to
comply with all the required conditions of local cooperation for the said
hurricane protection, Chalmette Area Plan, and then only that portion of the
construction located in the Parish of Orleans, Lake Pontchartrain and Vicinity,
Louisiana, Project, and that it will participate in said project to the extent
that it will, without cost to the United States:

 (a)  Provide all lands, easements, and rights-of-way, including
borrow and spoil-disposal areas necessary for construction, opera-
tion and maintenance of the project;

 (b)  Accomplish all necessary alterations and relocations to
roads, railroads, pipelines, cables, wharves, drainage structures,
and other facilities required by the construction of the project;

 (c)  Hold and save the United States free from damages due to
the construction works;

 (d)  Bear 30 percent of the first cost, to consist of the fair
market value of the items listed in subparagraphs (a) and (b) above
and a cash contribution as presently estimated below, to be paid
either in a lump sum prior to initiation of construction or in
installments at least annually in proportion to the Federal



EXHIBIT B

7

ACT OF ASSURANCE

UNITED STATES OF AMERICA
STATE OF LOUISIANA
PARISH OF _____ Orleans

BE IT KNOWN, That on this ___ 16th

day of the month of ____ September

of the Year of Our Lord, One

Thousand Nine Hundred and Seventy-

_____ one

BEFORE ME, _ Daniel A. McGovern, III _____, a Notary Public, duly

commissioned and qualified, in and for the Parish of ____ Orleans _____, State

of Louisiana, and in the presence of the witnesses hereinafter named and

undersigned,

CAME AND APPEARED The Board of Levee Commissioners of the Orleans Levee

District, represented herein by _____ Edward N. Lennox _____, its

President, pursuant to and by virtue of the provisions of a resolution adopted

by the said Board of Levee Commissioners of the Orleans Levee District on the

15th day of ____ September ____ 197 1, a duly certified copy of such

resolution being annexed hereto and made a part hereof, paraphed "Ne Varietur"

of this date by me, Notary, to identify same herewith, who declared that, in

accordance with the said resolution and pursuant thereto, he, the said Presi-

dent of The Board of Levee Commissioners of the Orleans Levee District, has

assured and does hereby assure the Secretary of the Army of the United States

that the said Board of Levee Commissioners of the Orleans Levee District is

authorized and empowered to comply with all the required conditions of local

cooperation for the said Lake Pontchartrain and Vicinity, Louisiana Project,

in the Parish of Orleans, and additionally, pay its pro rata portion of the

cost of construction of the barrier unit which is to be constructed entirely

within the Parishes of Orleans and St. Tammany, and that it will participate

in said project to the extent that it will, without cost to the United States:

　　　(a)  Provide all lands, easements, and rights-of-way, including
borrow and spoil-disposal areas necessary for construction, operation,
and maintenance of the project;

　　　(b)  Accomplish all necessary alterations and relocations to
roads, railroads, pipelines, cables, wharves, drainage structures,
and other facilities required by the construction of the project;



EXHIBIT
C

(c) Hold and save the United States free from damages and to the construction works;

(d) Bear 30 percent of the first cost, to consist of the fair market value of the items listed in subparagraphs (a) and (b) above and a cash contribution as presently estimated below, to be paid either in a lump sum prior to initiation of construction or in installments at least annually in proportion to the Federal appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined:

LAKE PONTCHARTRAIN PROJECT
ESTIMATE OF FIRST COSTS

| UNIT DESCRIPTION | TOTAL FIRST COSTS | FEDERAL COSTS | NON-FEDERAL COSTS | | |
|---|---|---|---|---|---|
| | | | Total | Lands Damages Relocations | Cash Contribut |
| BARRIER UNIT | | | | | |
| Seabrook Complex | 20,920,000 | 17,782,000 | 3,138,000 | 13,000 | 3,125,000 |
| Chef Menteur Complex | 30,138,000 | 21,097,000 | 9,041,000 | 913,000 | 8,128,000 |
| Rigolets Complex | 41,045,000 | 28,731,000 | 12,314,000 | 400,000 | 11,914,000 |
| Capitalized operation and maintenance of Rigolets Lock | | | (See subparagraph (e) below) | | |
| TOTAL BARRIER UNIT | 92,103,000 | 67,610,000 | 24,493,000 | 1,326,000 | 23,167,000 |
| LEVEES, FLOOD-WALLS, AND APPURTENANT STRUCTURES, UNIT | | | | | |
| Improvements in Orleans Levee District (Orleans Par.) | 77,337,000 | 54,136,000 | 23,201,000 | 18,737,000 | 4,464,00 |
| Improvements in St. Charles Jefferson & St. Tammany Parishes | 23,220,000 | 16,426,000 | 6,794,000 | 1,340,000 | 5,454,0 |
| TOTAL LEVEES FLOODWALLS, AND APPURTEN-ANT STRUCTURES, UNIT | 100,557,000 | 70,562,000 | 29,995,000 | 20,077,000 | 9,918,0 |
| TOTAL BAR-RIER PLAN | 192,660,000 | 138,172,000 | 54,488,000 | 21,403,000 | 33,085,0 |

*Total Non-Federal cost includes only cost of Seabrook Complex applicable to hurricane protection purposes (30 percent of half the estimated first cost of construction).

(c)  Provide an additional cash contribution equivalent to the estimated capitalized value of maintenance and operation of the Rigolets navigation lock and channel to be undertaken by the United States, presently estimated at $3,016,000, the final determination to be made after construction is complete, said amount to be paid either in a lump sum prior to initiation of construction of the barrier or in installments at least annually in proportion to the Federal appropriation for construction of the barrier;

(f)  Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

(g)  Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, seawalls, and stoplog structures, but excluding the Rigolets Navigation Lock and its appurtenant navigation channels and the modified dual purpose Seabrook lock; and

(h)  Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly.

The President of the Board of Levee Commissioners of the Orleans Levee District does hereby further assure the Secretary of the Army of the United States that the said Board of Levee Commissioners of the Orleans Levee District does assume the responsibility to pay $ 20,250,803.00 _____,

or _67.1_ percent, its pro rata share of the cost of construction of the barrier unit which is to be constructed entirely within Orleans and St. Tammany Parishes, Louisiana, including its pro rata portion of the estimated capitalized value of maintenance and operation of the Rigolets Navigation Lock.

THUS DONE AND PASSED in my office at _New Orleans,_ _____,

Louisiana, on the day and date hereinabove set forth in the presence of

_Lawrence G. Bodet_ and _Mary J. Adams_ _____,

competent witnesses, who hereunto sign their names, together with appearer said

and me, Notary, after due reading of the whole.

WITNESSES:                                          THE BOARD OF LEVEE COMMISSIONERS
                                                    ORLEANS LEVEE DISTRICT

                                                    BY: _____
                                                                    PRESIDENT

                                    _____
                                    NOTARY PUBLIC
                                    My commission is issued for life

(SEAL)

3

S U P P L E M E N T A L    A S S U R A N C E

UNITED STATES OF AMERICA
STATE OF LOUISIANA
PARISH OF

BE IT KNOWN, That on this __21st__ day of the month __September__, in the year
One Thousand Nine Hundred and ___seventy-three.___

BEFORE ME, __Richard J. McGinity__, a Notary Public, duly commissioned
and qualified in and for the Parish of ____Orleans____, State of Louisiana,
aforesaid, therein residing, and in the presence of the witnesses hereinafter
named and undersigned,

PERSONALLY CAME AND APPEARED, _____Guy F. LeMieux_____, President
of the Board of Commissioners of the Orleans Levee District, hereinafter
called the "Board" pursuant to and by virtue of a resolution adopted by
the Board on the __19th__ day of __September__, 19 __73__, a duly certified
copy of which resolution being attached hereto and made part hereof, the
preamble of which resolution reads as follows:

"WHEREAS, The Flood Control Act approved 27 October 1965 (Public Law 298,
89th Congress), authorized the Lake Pontchartrain and Vicinity, Louisiana pro-
ject, hereinafter called the "PROJECT"; and

"WHEREAS, on 16 September 1971, The Board granted to the United States
of America the required assurances of local cooperation covering the Project;
and

"WHEREAS, on 2 January 1971, the "Uniform Relocation Assistance and
Real Property Acquisition Policies Act of 1970" (Public Law 91-646), hereinafter
referred to as the Act was enacted; and

"WHEREAS, since said Project comes within the purview of the Act,
it is necessary that The Board grant satisfactory supplemental assurances
to the United States of America in connection with the Project covering
the required assurances provided for in the Act," and he, the said President
of the Board, acting for and in the name and on behalf of the said Board
has assured and does hereby grant assurances to the United States of America
that the Board of Commissioners of the Orleans Levee District is authorized
and empowered to and shall comply with the provisions of the "Uniform Relocation
Assistance and Real Property Acquisition Policies Act of 1970" (Public
Law 91-646), particularly, but not limited to:

a.    Inform the affected persons of the benefits available under Public
Law 91-646 and the policies and procedures in carrying out the Act and
provide payments and services required by Sections 210 and 305 of the Act;
and

b.    Within a reasonable time prior to displacement, make available
to displaced persons decent, safe and sanitary dwellings; and

c.    In acquiring real property, be guided, to the greatest extent
practicable under State law, by the land acquisition policies in Sections
301 and 302 of the Act, and will pay or reimburse property owners for necessary
expenses as specified in Sections 303 and 304 of the Act; and

EXHIBIT
D

d.   Maintain records in accordance with the regulations of the Department of the Army, in connection with the requirements of the Act, for a period of three (3) years after payment of the last voucher for the Project.

THUS DONE AND PASSED in my office at _____ New Orleans, Louisiana _____ on the day, month and year hereinabove written, in the presence of _____ _____ Mary Adams and Eleanor Hyman _____ competent witnesses, who hereunto sign their names with the said appearer and me, Notary, after due reading of the whole.

ORLEANS LEVEE DISTRICT

WITNESSES:

_____

_____

_____
President

_____
Notary Public
D. McGINITY
Notary Public, Parish of Orleans, State of La.
My commission _____ My Commission is issued for life

(SEAL)

APPROVED
2 April 1974
Date
_____
Chief, Real Estate Division

S U P P L E M E N T A L   A S S U R A N C E

UNITED STATES OF AMERICA
STATE OF LOUISIANA
PARISH OF ORLEANS

BE IT KNOWN, That on this 29th day of the month May____, in the year
One Thousand Nine Hundred and Seventy-five.

BEFORE ME, Richard J. McGinity, a Notary Public, duly commissioned
and qualified in and for the Parish of Orleans____, State of Louisiana,
aforesaid, therein residing, and in the presence of the witnesses hereinafter
named and undersigned,

PERSONALLY CAME AND APPEARED, ___Guy F. LeMieux____, President
of the Board of Commissioners of the Orleans Levee District, hereinafter
called the "Board" pursuant to and by virtue of a resolution adopted by
the Board on the 16th day of April__, 1975, a duly certified copy of
which resolution being attached hereto and made part hereof, the preamble
of which resolution reads as follows:

"WHEREAS, The Flood Control Act approved 27 October 1965 (Public Law 298,
89th Congress), authorized the Lake Pontchartrain and Vicinity, Louisiana
project, hereinafter called the "Project"; and

"WHEREAS, on 28 July 1966, the Board granted to the United States of
America the required assurances of local cooperation covering Chalmette Area
Plan portion of the Project; and

"WHEREAS, on 2 January 1971, the "Uniform Relocation Assistance and
Real Property Acquisition Policies Act of 1970" (Public Law 91-646), hereinafter
referred to as the "Act" was enacted; and

"WHEREAS, since the Project comes within the purview of the Act, it is
necessary that the Board grant satisfactory supplemental assurances to the
United States of America in connection with the Project covering the required
assurances provided for in the Act," and he, the said President of the Board,
acting for and in the name and on behalf of the said Board has assured and
does hereby grant assurances to the United States of America that the Board
of Commissioners of the Orleans Levee District is authorized and empowered
to and shall comply with the provisions of the "Uniform Relocation Assistance
and Real Property Acquisition Policies Act of 1970" (Public Law 91-646),
particularly, but not limited to:

a.   Inform the affected persons of the benefits available under Public
Law 91-646 and the policies and procedures in carrying out the Act and
provide payments and services required by Sections 210 and 305 of the Act;
and

b.   Within a reasonable time prior to displacement, make available to
displaced persons decent, safe and sanitary dwellings; and

c.   In acquiring real property, be guided, to the greatest extent
practicable under State law, by the land acquisition policies in Sections
301 and 302 of the Act, and will pay or reimburse property owners for necessary
expenses as specified in Sections 303 and 304 of the Act; and



EXHIBIT
E

④

d.  Maintain records in accordance with the regulations of the Department of the Army, in connection with the requirements of the Act, for a period of three (3) years after payment of the last voucher for the Project.

THUS DONE AND PASSED in my office at New Orleans, Louisiana on the day month and year hereinabove written, in the presence of _____ Henrietta B. Deters and Richard G. Lightfoot competent witnesses, who hereunto sign their names with the said appearer and me, Notary, after due reading of the whole.

ORLEANS LEVEE DISTRICT

President Guy F. LeMieux

WITNESSES:

Notary Public J. McGINITY
Notary Public, Parish of Orleans, State of La.
My Commission is issued for life.

My commission _____

(SEAL)

APPROVED
Date
Chief, Real Estate Division

F

AGREEMENT BETWEEN

THE UNITED STATES OF AMERICA

AND

THE BOARD OF LEVEE COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT

FOR THE LAKE PONTCHARTRAIN AND VICINITY, LOUISIANA PROJECT


THIS AGREEMENT entered into by and between the UNITED STATES OF AMERICA represented by the Contracting Officer executing this agreement and the Board of Levee Commissioners of the Orleans Levee District (hereinafter called the Board).

WITNESSETH THAT:

WHEREAS, the "Flood Control Act of 1965" approved 27 October 1965 (Public Law 298, 89th Congress) authorized, inter alia, the Lake Pontchartrain and Vicinity, Louisiana project (hereinafter called the Project); and

WHEREAS, on 2 January 1971, the "Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970", Public Law 91-646 was enacted; and

WHEREAS, Section 92 of the "Water Resources Development Act of 1974" (Public Law 251, 93rd Congress) authorized, inter alia, a plan under which the non-Federal interest may pay its cash obligations for the project on a deferred basis; and

WHEREAS, the Board of Levee Commissioners of the Orleans Levee District, represented herein by _____ Guy F. LeMieux _____, its President, pursuant to and by virtue of the provisions of a resolution adopted by said Board of Levee Commissioners of the Orleans Levee District on the ____ day of (see foot note page 197___, a duly certified copy of such resolution being annexed hereto and made a part hereof, paraphed "Ne Variatur" of this date by me, Notary, to identify same herewith, who declared that, in accordance with the said resolution and pursuant thereto, he, the said President of the Board of Levee Commissioners of the Orleans Levee District, has assured and does hereby assure the Secretary of the Army of the United States that the said Board of Levee Commissioners of the Orleans Levee District is authorized and empowered to comply with all the required conditions of local cooperation for the said Lake Pontchartrain and Vicinity, Louisiana Project, Chalmette Area Plan and Barrier Plan, in the Parish of Orleans, and additionally pay its pro rata portion of the cost of construction of the barrier unit which is to be constructed entirely within the Parishes of Orleans and St. ____ and

WHEREAS, the Board hereby represents that it desires to _____ agreement for a payment plan and it has the authority and cap _____ into an agreement for a payment plan.

NOW THEREFORE, the Board of Levee Commissioners of the Orleans Levee District, in consideration of the United States of America beginning construction of the project, and in consideration of the United States of America providing the Orleans Levee District with a deferred payment plan for meeting its monetary obligations for the project, agrees that it will, without cost to the United States:

(a) Provide all lands, easements, and rights-of-way, including borrow and spoil-disposal areas necessary for construction, operation, and maintenance of the project;

(b) Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project;

(c) Hold and save the United States free from damages due to the construction works;

(d) Bear 30 percent of the first cost, to consist of the fair market value of the items listed in subparagraphs (a) and (b) above and a cash contribution as presently estimated below, to be paid either in a lump sum prior to initiation of construction or in installments at least annually in proportion to the Federal appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules, items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined;

## LAKE PONTCHARTRAIN PROJECT
### ESTIMATE OF FIRST COSTS
#### 1 January 1976

| UNIT DESCRIPTION | TOTAL FIRST COSTS | FEDERAL COSTS | NON-FEDERAL COSTS | | |
|---|---|---|---|---|---|
| | | | Total | Lands, Damages Relocations | Cash Contribution |
| | $ | $ | $ | $ | $ |
| BARRIER UNIT | | | | | |
| Seabrook Complex* | 30,150,000 | 25,630,000 | 4,520,000 | 20,000 | 4,500,000 |
| Chef Menteur Complex | 41,920,000 | 29,270,000 | 12,550,000 | 1,130,000 | 11,420,000 |
| Rigolets Complex | 63,780,000 | 44,810,000 | 18,970,000 | 875,000 | 18,095,000 |
| SUB-TOTAL BARRIER UNIT | 135,750,000 | 99,710,000 | 36,040,000 | 2,025,000 | 34,015,000 |

2

LAKE PONTCHARTRAIN PROJECT
ESTIMATE OF FIRST COSTS
1 January 1976

| UNIT DESCRIPTION | TOTAL FIRST COSTS $ | FEDERAL COSTS $ | NON-FEDERAL COSTS | | |
|---|---|---|---|---|---|
| | | | Total $ | Lands, Damages, Relocations $ | Cash Contribution $ |
| Capitalized operation and maintenance of Rigolets Lock | | -9,230,000 | 9,230,000 | | 9,230,000 |
| TOTAL BARRIER UNIT | 135,750,000 | 90,480,000 | 45,270,000 | 2,023,000 | 43,247,000 |
| LEVEES, FLOOD-WALLS, AND APPURTENANT STRUCTURES UNIT | | | | | |
| Improvements in Orleans Levee District (Orleans Par. Barrier Plan) | 103,300,00 | 72,150,000 | 31,150,000 | 14,100,000 | 17,050,000 |
| Improvements in St. Charles Jefferson & St. Tammany Parishes | 33,320,000 | 23,570,000 | 9,750,000 | 1,883,000 | 7,863,000 |
| TOTAL LEVEES FLOODWALLS, AND APPURTENANT STRUCTURES UNIT | 136,620,000 | 95,720,000 | 40,900,000 | 15,983,000 | 24,918,000 |
| TOTAL BARRIER PLAN | 272,370,000 | 186,200,000 | 86,170,000 | 18,010,000 | 68,160,000 |
| CHALMETTE PLAN | | | | | |
| Improvements in Orleans Levee Dist. (Orleans Par.) | 18,610,000 | 13,050,000 | 5,560,000 | 4,540,000 | 1,020,000 |
| Improvements in (St. Bernard Parish) | 61,020,000 | 42,750,000 | 18,270,000 | 5,590,000 | 12,680,000 |
| TOTAL CHALMETTE PLAN | 79,630,000 | 55,800,000 | 23,830,000 | 10,130,000 | 13,700,000 |
| TOTAL PROJECT | 352,000,000 | 242,000,000 | 110,000,000 | 28,140,000 | 81,860,000 |

* Total non-Federal cost includes only cost of Seabrook Complex applicable to hurricane protection purposes (30 percent of half the estimated first cost of construction).

3

(e)  Provide an additional cash contribution equivalent to 67.1% of the estimated capitalized value of maintenance and operation of the Rigolets navigation lock and channel to be undertaken by the United States, the cash contribution is presently estimated at $6,193,300, the final determination to be made after construction is complete, said amount to be paid either in a lump sum prior to initiation of construction of the barrier or in installments at least annually in proportion to the Federal appropriation for construction of the barrier;

(f)  Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

(g)  Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, sidewalls, and stoplog structures, but excluding the Rigolets Navigation Lock and its appurtenant navigation channels and the modified dual purpose Seabrook lock; and

(h)  Acquire adequate easements or other interest in land to prevent encroachment in existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly; and

(i)  Comply with the applicable provisions of the "Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970," Public Law 91-646; and

(j)  Assume the responsibility to pay it's share of the non-Federal project costs, presently estimated to be $67,086,140.  This amount consists of $24,182,840, which is Orleans Levee District's pro rata share (67.1 percent) of the non-Federal cost of construction of the barrier unit; $36,710,000, which is the non-Federal cost of construction in Orleans Parish exclusive of the barrier unit; and $6,193,300, which is 67.1% of the capitalized value of maintenance and operation of the Rigolets navigation lock and channel.

(k)  As a minimum, adhere to the payment schedule of the deferred payment plan attached hereto as exhibit 1, the apportionment of costs to be made as actual costs, values and schedules are determined.  The first payment under the deferred payment plan is due on 1 October 1976, with subsequent payments being due on 1 October of each succeeding year up to and including 1 October 1990.  Interest is charged on the unpaid balance during this period at the rate of 3.225 percent per annum.  Cash contributions required subsequent to 30 September 1991 shall be computed in accordance with the basic 30 percent requirement stipulated in Section 204 of the Flood Control Act of 1965, Public Law 89-298 and House Document 231, 89th Congress; and

4

LAKE PONTCHARTRAIN, LOUISIANA AND VICINITY
HURRICANE PROTECTION PROJECT

MINIMUM REQUIRED CASH CONTRIBUTIONS
IN ACCORDANCE WITH SECTION 92 OF PUBLIC LAW 93-251
ORLEANS LEVEE DISTRICT

| Fiscal Year | Total Cost (Fed. & Non-Fed.) | Principal | Interest | Minimum Cash Contribution Required | Due Date |
|---|---|---|---|---|---|
| | (000) | (000) | (000) | (000) | |
| 75 | $ 53,200 | 0 | 0 | 0 | |
| 76 | 65,570 | 0 | 0 | 0 | |
| 77 | 79,170 | $ 300 | $ 140 | $ 440 | 1 Oct 76 |
| 78 | 93,300 | 390 | 230 | 620 | 1 Oct 77 |
| 79 | 114,530 | 435 | 300 | 735 | 1 Oct 78 |
| 80 | 145,825 | 815 | 335 | 1150 | 1 Oct 79 |
| 81 | 167,210 | 1080 | 630 | 1710 | 1 Oct 80 |
| 82 | 173,520 | 955 | 835 | 1790 | 1 Oct 81 |
| 83 | 179,825 | 810 | 740 | 1550 | 1 Oct 82 |
| 84 | 186,135 | 855 | 625 | 1480 | 1 Oct 83 |
| 85 | 192,440 | 895 | 660 | 1555 | 1 Oct 84 |
| 86 | 198,750 | 935 | 695 | 1630 | 1 Oct 85 |
| 87 | 201,600 | 930 | 725 | 1655 | 1 Oct 86 |
| 88 | 204,450 | 930 | 720 | 1650 | 1 Oct 87 |
| 89 | 207,295 | 925 | 720 | 1645 | 1 Oct 88 |
| 90 | 210,145 | 920 | 715 | 1635 | 1 Oct 89 |
| 91 | 213,000 | 22,785 | 715 | 23,500 | 1 Oct 90 |
| | | 33,960 | 8,790 | 42,750 | |

BIT 1

(1)  Recognized that subsections (b) (c) and (e) of Section 221 of the "Flood
Control Act of 1970", Public Law 91-611 shall apply to paragraph (k) above.
This agreement is subject to and shall become effective upon the approval of the
Secretary of the Army.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the
dates shown below.

THE UNITED STATES OF AMERICA

By: _____
Lt Colonel, CE
ing District Engineer
   Contracting Officer

Date: 15 Feb 77

APPROVED
_____
G. E. MUSSELL
Acting Director of Real Estate

ASECRETARY OF THE ARMY

DATE: 7 Dec 77

BOARD OF LEVEE COMMISSIONERS
ORLEANS LEVEE DISTRICT

By _____
         President

Date: March 30, 1976

Note:  By virtue of a written poll vote dated March 24, 1976, responded
       to by a majority of the Commissioners of the Orleans Levee
       District, the President or President Pro Tempore has been
       authorized to execute this agreement on behalf of the Board.  The
       poll vote will be ratified by the Board as a whole at their
       regular meeting to be held on April 21, 1976.

_____
Secretary

5

INTERIM AGREEMENT BETWEEN

THE UNITED STATES OF AMERICA

AND

THE ORLEANS LEVEE DISTRICT

FOR LOCAL COOPERATION AT

LAKE PONTCHARTRAIN AND VICINITY HIGH LEVEL PLAN

THIS INTERIM AGREEMENT entered into this _20 ᵈ_ day of _February_ 1985 by and between the UNITED STATES OF AMERICA (hereinafter called the "Government"), represented by the Contracting Officer executing this Agreement, and the Board of Commissioners of the Orleans Levee District, WITNESSETH THAT:

WHEREAS, construction of the Lake Pontchartrain and Vicinity (hereinafter called the "Project") was authorized by the Flood Control Act, approved October 27, 1965, Section 204 of Public Law 298, 89th Congress, 1st Session, substantially in accordance with the Report of the Chief of Engineers, dated 4 March 1964, contained in House Document No. 231, 89th Congress, 1st Session; and

WHEREAS, on January 2, 1971, the "Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970," Public Law 91-646 was enacted; and

WHEREAS, Section 92 of the "Water Resources Development Act of 1974" (Public Law 251, 93d Congress) authorized, inter alia, a plan under which the non-Federal interest may pay its cash obligations for the project on a deferred basis; and

WHEREAS, Lake Pontchartrain, Louisiana, and Vicinity Hurricane Protection Project Reevaluation Study, dated July 1984, approved February 7, 1985, has authorized construction of the High Level Plan, rather than the Barrier Plan; and



EXHIBIT
G

WHEREAS, on July 28, 1966, the Board of Commissioners of the Orleans Levee District granted Assurances for the Lake Pontchartrain and Vicinity Project (the Barrier Plan) to the United States of America, said Assurances were accepted by the United States of America on September 30, 1966;

WHEREAS, on September 16, 1971, said Assurances were amended to obligate the Orleans Levee District for only that portion of the Project within Orleans Parish and to reflect an increase in cost participation, said Act of Assurance was accepted by the United States of America on March 29, 1974;

WHEREAS, on September 21, 1973, said Assurances were amended again, this time to include Public Law 91-646, the "Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970" which was enacted into law on January 2, 1971, said Supplemental Assurances were accepted by the United States of America on April 2, 1974;

WHEREAS, on March 30, 1976, the President of the Board of Commissioners of the Orleans Levee District agreed to a plan whereby said Levee Board would pay its cash obligations for the Project on a deferred basis pursuant to Section 92 of the "Water Resources Development Act of 1974" (Public Law 251, 93d Congress), said agreement was accepted by the United States of America on December 7, 1977;

WHEREAS, the Orleans Levee District hereby represents that it has the authority and capability to furnish the non-Federal cooperation required by the Federal legislation authorizing the Project and by other applicable law.

NOW, THEREFORE, the Orleans Levee District agrees to comply with all the required conditions and provisions of local cooperation listed in the previous Assurances granted by said Levee District, dated September 30, 1966; March 29, 1974; April 2, 1974; July 8, 1975; and December 7, 1977. Said conditions and provisions are incorporated by reference into this Agreement, as is fully set forth herein, which the Orleans Levee District agrees as follows:

a. Provide all lands, easements, and rights-of-way, including borrow and spoil-disposal areas necessary for construction, operation, and maintenance of the project;

b. Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project;

c. Hold and save the United States free from damages due to the construction works;

d. Bear 30 percent of the first cost, to consist of the fair market value of the items listed in subparagraphs a and b above and a cash contribution as presently estimated below, to be paid either in a lump sum prior to initiation of construction or in installments at least annually in proportion to the Federal appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined for the following items scheduled to be constructed during FY 85:

3

PROJECT ESTIMATE OF FIRST COSTS

PROJECT

APPROXIMATE
COST

1.  Citrus Lakefront Fore
Shore Protection, IHNC
to Paris Road

$16,300,000

2.  New Orleans Lakefront
Levee, London Avenue to
West End

$2,000,000

3.  New Orleans Lakefront
Levee Floodwall at
American Standard

$1,250,000

4.  New Orleans Lakefront
Levee Floodwall and Street
Gates

$1,000,000

5.  New Orleans East
Lakefront Levee and
Fore Shore Protection,
Paris Road to South Point

$13,000,000

e.  Maintain and operate all features of the project in accordance with
regulations prescribed by the Secretary of the Army, including levees,
floodgates and approach channels, drainage structures, drainage ditches or
canals, floodwalls, and stoplog structures; and

f.  Provide all interior drainage and pumping plants required for
reclamation and development of the protected areas;

4

g.  Acquire adequate easements or other interest in land to prevent
encroachment on existing ponding areas unless substitute storage capacity or
equivalent pumping capacity is provided promptly;

h.  Comply with the applicable provisions of the "Uniform Relocation
Assistance and Real Property Acquisition Policies Act of 1970," Public
Law 91-646;

i.  Assume the responsibility to pay its share of the non-Federal project
costs;

j.  Comply with Section 601 of Title VI of the Civil Rights Act of 1964,
Public Law 88-352 that no person shall be excluded from participation in,
denied the benefits of, or subjected to discrimination in connection with the
Project on the grounds of race, creed, or national origin.

FURTHER, the parties agree that the unaltered provisions in the previous
Assurances, dated September 30, 1966; March 29, 1974; April 2, 1974; July 8,
1975; and December 7, 1977 except the payment schedule of the deferred
payment plan attached to and made a part of the December 7, 1977 agreement
shall be adjusted to reflect the maximum cash contributions under the High
Level Plan, and apportionment of the costs thereunder to be made as actual
costs and schedules are determined, remain in full force and effect; and that

This is an interim agreement which is in effect until the final
supplemental agreement between the Orleans Levee District and the United
States of America becomes effective, or until the final project of the fiscal
year, listed as item (d)(5) herein, is completed, whichever shall first
occur.

5

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

THE UNITED STATES OF AMERICA

By: _____
Colonel, CE
District Engineer
Contracting Officer

APPROVED:

By: _____
THOMAS A. SANDS
Brigadier General, USA
Division Engineer

BOARD OF COMMISSIONERS
ORLEANS LEVEE DISTRICT

By: _____
President

DATE: 7 May 85

6

MOTION:   #4-22085

RESOLUTION: #4-22085

BY:   Commissioner Hammond,
      Engineering Committee
      Commissioner Talbot

February 20, 1985

R E S O L U T I O N

WHEREAS, the Orleans Levee Board is the local assuring agency for the current Barrier Plan for the Lake Pontchartrain and Vicinity Hurricane Protection Project, and

WHEREAS, the U. S. Army Corps of Engineers will require the Board to sign new assurances for the High Level Plan for the Lake Pontchartrain and Vicinity Hurricane Protection Project when the High Level Plan is approved by the Chief of Engineers, and

WHEREAS, in order to construct five projects as soon as possible and as soon as the High Level Plan is approved, the U. S. Army Corps of Engineers has requested that the Orleans Levee Board enter into Interim Assurances.

BE IT HEREBY RESOLVED, That the Board authorize the President, Mr. Emile W. Schneider, to execute the above Interim Assurances on behalf of the Board of Levee Commissioners of the Orleans Levee District.

AYES: Commissioners Hammond, Ross, Talbot and Uddo
NAYS: none
ABSENT: Commissioners Barthelemy and Ducote
RESOLUTION ADOPTED: yes

THE FOREGOING IS CERTIFIED TO BE
A TRUE AND CORRECT COPY.

H. B. LANSDEN, SECRETARY
BOARD OF LEVEE COMMISSIONERS OF
THE ORLEANS LEVEE DISTRICT

SUPPLEMENTAL AGREEMENT BETWEEN

THE UNITED STATES OF AMERICA

AND

THE ORLEANS LEVEE DISTRICT

FOR LOCAL COOPERATION AT

LAKE PONTCHARTRAIN AND VICINITY HIGH LEVEL PLAN

THIS AGREEMENT entered into this ___21___ day of ___June___ 1985 by and between the UNITED STATES OF AMERICA (hereinafter called the "Government"), represented by the Contracting Officer executing this Agreement, and the Board of Commissioners of the Orleans Levee District. WITNESSETH THAT:

WHEREAS, construction of the Lake Pontchartrain and Vicinity (hereinafter called the "Project") was authorized by the Flood Control Act, approved October 27, 1965, Section 204 of Public Law 298, 89th Congress, 1st Session, substantially in accordance with the Report of the Chief of Engineers, dated 4 March 1964, contained in House Document No. 231, 89th Congress, 1st Session; and

WHEREAS, on January 2, 1971, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646 was enacted; and

WHEREAS, Section 92 of the Water Resources Development Act of 1974, (Public Law 251, 93d Congress) authorized, inter alia, a plan under which the non-Federal interest may pay its cash obligations for the project on a deferred basis; and

WHEREAS, Lake Pontchartrain, Louisiana, and Vicinity Hurricane Protection Project Reevaluation Study, dated December 1983, approved February 7, 1985, has authorized construction of the High Level Plan, rather than the Barrier Plan; and



WHEREAS, on July 28, 1966, the Board of Commissioners of the Orleans Levee District granted two Assurances for the Lake Pontchartrain and Vicinity Project to the United States of America, one Assurance was for the Chalmette Area Plan and one was for the Barrier Plan, accepted by the Chief, Real Estate Division for and in behalf of the United States of America on September 30, 1966, containing the following items of local cooperation for the Chalmette Area Plan and the Barrier Plan, respectively:

## CHALMETTE AREA PLAN

a. Provide all lands, easements, and rights-of-way, including borrow and spoil disposal areas necessary for construction, operation, and maintenance of the project;

b. Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project;

c. Hold and save the United States free from damages due to the construction works;

d. Bear 30 percent of the first cost, to consist of the fair market value of the items listed in subparagraphs (a) and (b) above and a cash contribution as presently estimated below, to be paid either in a lump sum prior to initiation of construction or in installments at least annually in proportion to the Federal appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined:

| Project | Total Contribution for Construction | Lands and Relocations | Cash Contribution for Construction |
|---------|-------------------------------------|-----------------------|------------------------------------|
| Chalmette | $1,246,300 | $ 377,900 | $868,400 |

e. Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

f. Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, and stoplog structures;

g. Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly; and

## BARRIER PLAN

a. Provide all lands, easements, and rights-of-way, including borrow and spoil disposal areas necessary for construction, operation, and maintenance of the project;

2

b. Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project;

c. Hold and save the United States free from damages due to the construction works;.

d. Bear 30 percent of the first cost, to consist of the fair market value of the items listed in subparagraphs (a) and (b) above and a cash contribution as presently estimated below, to be paid either in a lump sum prior to initiation of construction or in installments at least annually in proportion to the Federal appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined:

| Project | Total Contribution for Construction | Lands and Relocations | Cash Contribution for Construction |
|---|---|---|---|
| Lake Pontchartrain Barrier Plan | $28,940,400 | $6,241,100 | $22,699,300 |

e. Provide an additional cash contribution equivalent to the estimated capitalized value of maintenance and operation of the Rigolets navigation lock and channel to be undertaken by the United States, presently estimated at $3,816,000, the final determination to be made after construction is complete, said amount to be paid either in a lump sum prior to initiation of construction of the barrier or in installments at least annually in proportion to the Federal appropriation for construction of the barrier;

f. Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

g. Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, seawalls, and stoplog structures, but excluding the Rigolets navigation lock and its appurtenant navigation channels and the modified dual purpose Seabrook Lock;

h. Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly; and

WHEREAS, on September 16, 1971, said Assurances were amended to obligate the Orleans Levee District for only that portion of the Project within Orleans Parish and to reflect an increase in cost participation, accepted by the Chief, Real Estate Division for and in behalf of the United States of America on March 29, 1974, containing the following items of local cooperation, to wit:

3

a. Provide all lands, easements, and rights-of-way, including borrow and spoil disposal areas necessary for construction, operation, and maintenance of the project;

b. Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project;

c. Hold and save the United States free from damages due to the construction works;

d. Bear 30 percent of the first cost, to consist of the fair market value of the items listed in subparagraphs (a) and (b) above and a cash contribution as presently estimated below, to be paid either in a lump sum prior to initiation of construction or in installments at least annually in proportion to the Federal appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined:

LAKE PONTCHARTRAIN PROJECT
ESTIMATE OF FIRST COSTS

| UNIT DESCRIPTION | TOTAL FIRST COSTS | FEDERAL COSTS | NON-FEDERAL COSTS | | |
|---|---|---|---|---|---|
| | | | Total | Lands Damages Relocations | Cash Contribution |
| BARRIER UNIT | | | | | |
| Seabrook Complex* | 20,920,000 | 17,782,000 | 3,138,000 | 13,000 | 3,125,000 |
| Chef Menteur Complex | 30,138,000 | 21,097,000 | 9,041,000 | 913,000 | 8,128,000 |
| Rigolets Complex | 41,045,000 | 28,731,000 | 12,314,000 | 400,000 | 11,914,000 |
| Capitalized operation and maintenance of Rigolets Lock | | | (See subparagraph (e) below) | | |
| TOTAL BARRIER UNIT | 92,103,000 | 67,610,000 | 24,493,000 | 1,326,000 | 23,167,000 |

4

LAKE PONTCHARTRAIN PROJECT
ESTIMATE OF FIRST COSTS

| UNIT DESCRIPTION | TOTAL FIRST COSTS | FEDERAL COSTS | NON-FEDERAL COSTS | | |
|---|---|---|---|---|---|
| | | | Total | Lands Damages Relocations | Cash Contribution |
| LEVEES, FLOOD-WALLS, AND APPURTENANT STRUCTURES UNIT | | | | | |
| Improvements in Orleans Levee District (Orleans Par.) | 77,337,000 | 54,136,000 | 23,201,000 | 18,737,000 | 4,464,000 |
| Improvements in St. Charles, Jefferson and St. Tammany Parishes | 23,220,000 | 16,426,000 | 6,794,000 | 1,340,000 | 5,454,000 |
| TOTAL LEVEES, FLOODWALLS, AND APPURTEN- ANT STRUCTURES UNIT | 100,557,000 | 70,562,000 | 29,995,000 | 20,077,000 | 9,918,000 |
| TOTAL BARRIER PLAN | 192,660,000 | 138,172,000 | 54,488,000 | 21,403,000 | 33,085,000 |

*Total Non-Federal cost includes only cost of Seabrook Complex applicable to hurricane protection purposes (30 percent of half the estimated first cost of construction);

    e.  Provide an additional cash contribution equivalent to the estimated capitalized value of maintenance and operation of the Rigolets Lock Navigation Lock and Channel to be undertaken by the United States, presently estimated at $3,816,000, the final determination to be made after construction is complete, said amount to be paid either in a lump sum prior to initiation of construction of the barrier or in installments at least annually in proportion to the Federal appropriation for construction of the barrier;

    f.  Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

    g.  Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, seawalls, and stoplog structures, but excluding the Rigolets Navigation Lock and its appurtenant navigation channels and the modified dual purpose Seabrook Lock;

    h.  Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly; and

WHEREAS, on September 21, 1973, said Assurances were amended again, as to the Barrier Plan, to include Public Law 91-646, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 which was enacted into law on January 2, 1971, said Supplemental Assurance accepted by the Chief, Real Estate Division for and in behalf of the United States of America, on April 2, 1974; and

WHEREAS, on May 29, 1975, said Assurances were amended again, as to the Chalmette Area Plan to include Public Law 91-646, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, which was enacted into law on January 2, 1971, said Supplemental Assurance approved by the Chief, Real Estate Division for and in behalf of the United States of America, on July 8, 1975; and

WHEREAS, on March 30, 1976, the President of the Board of Commissioners of the Orleans Levee District agreed to a plan whereby said Levee Board would pay its cash obligations for the Project on a deferred basis pursuant to Section 92 of the Water Resources Development Act of 1974 (Public Law 251, 93d Congress), executed by the Acting District Engineer Contracting Officer on February 15, 1977, and approved on December 7, 1977 by the Acting Director of Real Estate for the Secretary of the Army, containing the following items of local cooperation, to wit:

a. Provide all lands, easements, and rights-of-way, including borrow and spoil disposal areas necessary for construction, operation, and maintenance of the project;

   b.  Accomplish all necessary alterations and relocations to roads,
railroads, pipelines, cables, wharves, drainage structures, and other
facilities required by the construction of the project;

   c.  Hold and save the United States free from damages due to the
construction works;

   d.  Bear 30 percent of the first cost, to consist of the fair market
value of the items listed in subparagraphs (a) and (b) above and a cash
contribution as presently estimated below, to be paid either in a lump sum
prior to initiation of construction or in installments at least annually in
proportion to the Federal appropriation prior to start of pertinent work
items, in accordance with construction schedules as required by the Chief of
Engineers, or, as a substitute for any part of the cash contribution,
accomplish in accordance with approved construction schedules, items of work
of equivalent value as determined by the Chief of Engineers, the final
apportionment of costs to be made after actual costs and values have been
determined:

### LAKE PONTCHARTRAIN PROJECT
### ESTIMATE OF FIRST COSTS
#### 1 January 1976

| UNIT DESCRIPTION | TOTAL FIRST COSTS | FEDERAL COSTS | NON-FEDERAL COSTS | | |
| --- | --- | --- | --- | --- | --- |
| | | | Total | Lands, Damages Relocations | Cash Contribution |
| | $ | $ | $ | $ | $ |
| BARRIER UNIT Seabrook Complex* | 30,150,000 | 25,630,000 | 4,520,000 | 20,000 | 4,500,000 |
| Chef Menteur Complex | 41,820,000 | 29,270,000 | 12,550,000 | 1,130,000 | 11,420,000 |
| Rigolets Complex | 63,780,000 | 44,810,000 | 18,970,000 | 875,000 | 18,095,000 |
| SUB-TOTAL BARRIER UNIT | 135,750,000 | 99,710,000 | 36,040,000 | 2,025,000 | 34,015,000 |
| Capitalized operation and maintenance of Rigolets Lock | | -9,230,000 | 9,230,000 | | 9,230,000 |
| TOTAL BARRIER UNIT | 135,750,000 | 90,480,000 | 45,270,000 | 2,025,000 | 43,245,000 |

LAKE PONTCHARTRAIN PROJECT
ESTIMATE OF FIRST COSTS
1 January 1976

| UNIT DESCRIPTION | TOTAL FIRST COSTS | FEDERAL COSTS | NON-FEDERAL COSTS | | |
|---|---|---|---|---|---|
| | | | Total | Lands, Damages Relocations | Cash Contribution |
| | $ | $ | $ | $ | $ |
| LEVEES, FLOOD-WALLS, AND APPURTENANT STRUCTURES UNIT | | | | | |
| Improvements in Orleans Levee District (Orleans Par. Barrier Plan) | 103,300,000 | 72,150,000 | 31,150,000 | 14,100,000 | 17,050,000 |
| Improvements in St. Charles, Jefferson and St. Tammany Parishes | 33,320,000 | 23,570,000 | 9,750,000 | 1,885,000 | 7,865,000 |
| TOTAL LEVEES, FLOODWALLS, AND APPURTENANT STRUCTURES UNIT | 136,620,000 | 95,720,000 | 40,900,000 | 15,985,000 | 24,915,000 |
| TOTAL BARRIER PLAN | 272,370,000 | 186,200,000 | 86,170,000 | 18,010,000 | 68,160,000 |
| CHALMETTE PLAN | | | | | |
| Improvements in Orleans Levee District (Orleans Par.) | 18,610,000 | 13,050,000 | 5,560,000 | 4,540,000 | 1,020,000 |
| Improvements in (St. Bernard Parish) | 61,020,000 | 42,750,000 | 18,270,000 | 5,590,000 | 12,680,000 |
| TOTAL CHALMETTE PLAN | 79,630,000 | 55,800,000 | 23,830,000 | 10,130,000 | 13,700,000 |
| TOTAL PROJECT | 352,000,000 | 242,000,000 | 110,000,000 | 28,140,000 | 81,860,000 |

*Total non-Federal cost includes only cost of Seabrook Complex applicable to hurricane protection purposes (30 percent of half the estimated first cost of construction);

    e.  Provide an additional cash contribution equivalent to 67.1% of the estimated capitalized value of maintenance and operation of the Rigolets Navigation Lock and Channel to be undertaken by the United States, the cash contribution is presently estimated at $6,193,300, the final determination to be made after construction is complete, said amount to be paid either in a lump sum prior to initiation of construction of the barrier or in installments at least annually in proportion to the Federal appropriation for construction of the barrier;

8

f.  Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

g.  Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, seawalls, and stoplog structures, but excluding the Rigolets Navigation Lock and its appurtenant navigation channels and the modified dual purpose Seabrook Lock;

h.  Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly;

i.  Comply with the applicable provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646;

j.  Assume the responsibility to pay its share of the non-Federal project costs, presently estimated to be $67,086,140. This amount consists of $24,182,840, which is Orleans Levee District's pro rata share (67.1 percent) of the non-Federal cost of construction of the barrier unit; $36,710,000, which is the non-Federal cost of construction in Orleans Parish exclusive of the barrier unit; and $6,193,300, which is 67.1% of the capitalized value of maintenance and operation of the Rigolets navigation lock and channel.

k.  As a minimum, adhere to the payment schedule of the deferred payment plan attached hereto as exhibit 1, the apportionment of costs to be made as actual costs, values and schedules are determined. The first payment under the deferred payment plan is due on 1 October 1976, with subsequent payments being due on 1 October of each succeeding year up to and including 1 October 1990. Interest is charged on the unpaid balance during this period at the rate of 3.225 percent per annum. Cash contributions required subsequent to 30 September 1991 shall be computed in accordance with the basic 30 percent requirement stipulated in Section 204 of the Flood Control Act of 1965, Public Law 89-298 and House Document 231, 89th Congress; and

l.  Recognized that subsections (b), (c) and (e) of Section 221 of the "Flood Control Act of 1970", Public Law 91-611 shall apply to paragraph (k) above; and

WHEREAS, the Board of Commissioners of the Orleans Levee District, represented by Emile W. Schneider its    President    , pursuant to and by virtue of the provisions of its resolution, adopted May 22, 1985, a duly certified copy of such resolution being annexed hereto and made a part hereof, who declared that, in accordance with said resolution and pursuant thereto, he, the said    President    of the Board of Commissioners of the Orleans Levee District, has assured and does hereby assure the Secretary of the Army of the United States that said Board of Commissioners of the Orleans Levee District has the authority and capability to furnish the non-Federal cooperation required by the Federal legislation authorizing the project and by other applicable law; and

9

WHEREAS, the Orleans Levee District agrees to comply with all the required conditions and provisions of local cooperation listed in the previous Assurances granted by said Levee District, dated September 30, 1966; March 29, 1974; April 2, 1974; July 8, 1975; and December 7, 1977, applicable to the High Level Plan.

NOW, THEREFORE, the Board of Commissioners of the Orleans Levee District, in consideration of the construction to be done by the United States of America on the High Level Plan, agrees that it will, without cost to the United States:

a.  Provide all lands, easements, and rights-of-way, including borrow and spoil disposal areas necessary for construction, operation, and maintenance of the project;

b.  Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project; and

c.  Hold and save the United States free from damages due to the construction works;

d.  Bear 30 percent of the first cost, to consist of the fair market value of the items listed in subparagraphs (a) and (b) above and a cash contribution as presently estimated below, to be paid either in a lump sum prior to initiation of construction or in installments at least annually in proportion to the Federal appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined:

COST TO ORLEANS LEVEE DISTRICT

($1,000,000's)

| ORLEANS LEVEE DISTRICT | FIRST COST 1/ | LOCAL SHARE |
|---|---|---|
| Citrus New Orleans East | 112.5 | 33.8 |
| New Orleans | 249.1 | 74.7 |
| TOTAL | 361.6 | 108.5 |

1/Cost to complete after October 1979; October 1981 price levels.

e.  This item has been deleted in full because it pertains only to the barrier plan:

Provide an additional cash contribution equivalent to the estimated capitalized value of maintenance and operation of the Rigolets Navigation Lock and Channel to be undertaken by the United States, presently estimated at $3,816,000, the final determination to be made after construction is complete, said amount to be paid either in a lump sum prior to initiation of construction of the barrier or in installments at least annually in proportion to the Federal appropriation for construction of the barrier;

f.  Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

10

g.  Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, and stoplog structures [the remainder of this item is deleted];

h.  Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly;

i.  Comply with the applicable provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646; and

j.  Assume the responsibility to pay its share of the non-Federal project costs [the remainder of this item is deleted];

k.  As a minimum adhere to the payment schedule of the deferred payment plan, the apportionment of costs to be made as actual costs values and schedules are determined.  The first payment under the deferred payment plan was due on 1 October 1976, with subsequent payments being due on 1 October of each succeeding year, up to and including 1 October 1990.  Interest is charged on the unpaid balance during this period at the rate of 3.225 percent per annum.  Cash contributions required subsequent to 30 September 1991 shall be computed in accordance with the basic 30 percent requirement stipulated in Section 204 of the Flood Control Act of 1965, Public Law 89-298 and House Document 231, 89th Congress;

l.  Recognizes that subsections (b), (c) and (e) of Section 221 of the Flood Control Act of 1970, Public Law 91-611 shall apply to paragraph (k) above.

m.  Comply with Section 601 of Title VI of the Civil Rights Act of 1964, Public Law 88-352 that no person shall be excluded from participation in, denied the benefits of, or subjected to discrimination in connection with the Project on grounds of race, creed, or national origin.


FURTHER, the parties agree that the unaltered provisions in the previous

Assurances, dated September 30, 1966; March 29, 1974; April 2, 1974;

July 8, 1975; and December 7, 1977, remain in full force and effect.


IN WITNESS WHEREOF, the parties hereto have executed this contract as of

the day and year first above written.

THE UNITED STATES OF AMERICA          BOARD OF COMMISSIONERS
                                      ORLEANS LEVEE DISTRICT


By: _____    _____
    Colonel, CE                           President
    District Engineer
    Contracting Officer

DATE:  21 June 85          .    DATE:  5/24/85