UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| COLLEEN BERTHELOT, et al. | * | CASE NO. |
| VERSUS | * | NO. 05-4182 |
| BOH BROTHERS CONSTRUCTION CO., et al. | * | SECTION " K " |
| | * | MAG. NO. "2" |

* * * * * * * * * * * * * * * * * *

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF EVIDENCE (A) IN CONNECTION WITH THE LONDON AVENUE NORTH BREACH SITE AND (B) IN CONNECTION WITH THE 17TH CANAL BREACH SITE

MAY IT PLEASE THE COURT:

Magistrate Wilkinson has granted oral argument on Wednesday, May 10, 2006, on Plaintiffs' Motion in No. 05-4181 to Compel Production of Evidence in Connection with the London Avenue Canal Breach Site. The Court should be aware of the fact that some of the issues with respect to the evidence at that site have been rendered MOOT by events which transpired at the site between Monday, April 24, 2006, and Friday, April 28, 2006. More particularly, all of the actual sheet piles at the site have now been pulled, and before the sheet piles were pulled, undersigned counsel and his expert were, finally, granted the opportunity to personally observe the tops of the sheet pile, which had not

-1-



separated, strongly suggesting that no mechanical failure, i.e., separation between sheet piles, occurred at the site. Rather, the fact that the sheet piles remained bonded together in a generally uniform angle at the bottom of the trench excavated at the site strongly suggests that the primary failure mechanism at the London Avenue Canal North breach site was the "hinge" effect between the concrete monolith panels and the sheet piles, previously described by one of plaintiffs' experts, Mr. Pazos.

However, the United States of America and the U.S. Army Corps of Engineers still have not responded to plaintiffs' requests to inspect the concrete monolith panels which were removed from the site sometime between Good Friday (during an inspection for which neither the undersigned nor his expert were available) and Monday, April 24, 2006, when the site was visited pursuant to Court Order. To date, neither the Government nor the Corps of Engineers has said what happened to the "missing" concrete monolith panels from the London Avenue North breach site.

Additionally, plaintiffs and their experts remain extremely interested in the opportunity to inspect the bottoms of the missing monoliths, where they originally made contact with the steel sheet piles, as well as the edges, on the left and right sides of the monolith panels, where monolith panels were joined together by means of a water stop system, consisting of a concrete lip and polyvinyl chloride water stop material. None of this evidence has yet been produced by the Government for inspection by the undersigned and his experts, with the exception of one polyvinyl chloride water stop.[1]

Since the plaintiffs' Motion to Compel Production of Evidence in connection with the London Avenue Canal North breach site was filed, the Government has filed a

---

[1] Another PVC water stop was found at the site, but the Corps of Engineers and the IPET representative who was present declined plaintiffs' request to mark it as evidence and preserve it. That water stop has now disappeared.

Memorandum in Opposition to the O'Dwyer plaintiffs' Motion to Compel. Additionally, the Court heard oral testimony from two Corps of Engineers' witnesses on May 2, 2006. In addition, the 17th Street Canal breach site was visited on May 3, 2006. Thereafter a separate Motion to Compel Production of Evidence in Connection with the 17th Street Canal breach site was filed by plaintiffs in 05-4181.

In addition to all of this, Magistrate Wilkinson issued an Order on May 4, 2006, which provides that any discovery motion by plaintiffs "must be supported by the affidavit of a qualified expert". Accordingly, plaintiffs now produce for the Court Exhibits Nos. 1, 2 and 3, namely Sworn Affidavits from two (2) of their forensic engineering experts, Hector V. Pazos and Robert D. Bartlett. It is respectfully submitted that these Affidavits are self-explanatory and, at the very least, raise an inference that the evidence which plaintiffs have been screaming for, both at the London Avenue North and the 17th Street Canal breach sites is potentially relevant and material to the factual issues in this litigation, and that if error is to be committed, then the Court should err on the side of granting plaintiffs' access to this vital evidence.

On a personal note, although the undersigned has noticed from Magistrate Wilkinson's recent Orders and statements on the record from the bench that the Magistrate now has a vastly more superior knowledge of the factual issues dealing with levee and floodwall design, construction and failure than he did soon after being assigned this case, all of us, including the undersigned, remain on different "KATRINA learning curves". Accordingly, the undersigned takes this opportunity to recall for Magistrate Wilkinson's attention an argument which has been used, with some modicum of success, in jury trials, namely the argument that goes: "Ladies and Gentlemen, you have heard a

lot of exquisite detail over issues of fact, and listened to some admittedly arcane points of law; however, don't let that deter you from your sworn duty to the litigants: Don't leave your common sense in the jury box when you retire to deliberate." This "common sense" argument is made, because the undersigned already has been the victim of a personal attack by his own Government, whose lawyers accused him of misconduct – thus far unsupported by any Motion from the Government. Similarly, Mr. Pazos has now come in for the same type of personal attack concerning his expertise "to testify about levee and floodwall design and construction". Magistrate Wilkinson should take judicial notice of the fact that man has lived near water since prehistoric times, because water has provided man with hygiene, sustenance and recreation. Some of man's earliest, and most primitive, engineering works have involved structures which were designed by man to separate his living area from the water. We're not dealing with the Taj Mahal in this case, Your Honor. The Court is not being asked to address the design and construction of the Pyramids of Giza, the Great Wall of China, or the World Trade Center, all engineering marvels. We are dealing with "ditch digging" or one engineering level above ditch digging, which is taught in "Engineering 101".

One last point of common sense – Would New Orleans have flooded if the Corps of Engineers had used the same construction method which was used to construct Breakwater Drive a/k/a "The Point", namely rock and rip rap, a structure which survived the Hurricane of 1947, BETSY, CAMILLE and yes, KATRINA? Please don't be fooled by the Government's hysterical claim that Mr. Pazos, and maybe even Mr. Bartlett too, is "incompetent" to testify about "levee and floodwall design and construction". It is

reiterated that if the people who claim to be self-professed experts in such design and construction truly knew what they were doing, then none of us would be here.

           Respectfully submitted,

           LAW OFFICES OF
           ASHTON R. O'DWYER, JR.

           By: _____
           Ashton R. O'Dwyer, Jr.
           In Proper Person
           Bar No. 10166
           One Canal Place
           365 Canal Street
           Suite 2670
           New Orleans, LA 70130
           Telephone: (504) 561-6561
           Facsimile: (504) 561-6560

## CERTICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via E-mail, this 9th day of May 2006.

_____