# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, ET AL., | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 05-4182 |
| | * | |
| BOH BROTHERS CONSTRUCTION CO., LLC, | * | SECTION "K" (2) |
| ET AL., | * | CONS. KATRINA CANAL |
| *    *    *    *    *    *    *    * | | |

THIS DOCUMENT RELATES TO: ALL ACTIONS

DEFENDANT UNITED STATES' MEMORANDUM IN OPPOSITION TO THE O'DWYER PLAINTIFFS' MOTION TO COMPEL PRODUCTON OF EVIDENCE IN CONNECTION WITH THE 17TH STREET CANAL BREACH SITE

The plaintiffs in Civil Action No. 05-4181 have moved for an order compelling the United States to produce the concrete monoliths currently at the site, the concrete monoliths which were excavated prior to May 2, 2006, water stops, and in-place sheet piles from the 17th Street Breach site. *See* Docket No. 295. The motion should be denied for three reasons.

First, the motion is moot. As was reported to the Court at the status conference on Friday, May 12, 2006, reasonable efforts will be made to accommodate plaintiffs' requests to view the concrete monoliths, water stops, and in-place sheet piles currently at the 17th Street site. Plaintiffs' request to view the concrete monoliths which were excavated and removed from the site prior to May 2, 2006, also is moot since those materials were demolished in the ordinary course of reconstituting the levee and flood wall.

Second, the motion lacks adequate support. To support their motion, plaintiffs have relied on affidavits by Hector V. Pazos and Robert D. Bartlett. As the United States noted in its response to plaintiffs' motion to compel evidence in connection with the London Avenue North

1

breach site, Mr. Pazos is not qualified to render opinions that warrant an order to preserve the

requested materials.  Mr. Bartlett's affidavit should be stricken since plaintiffs have failed to

provide a Curriculum Vitae setting out his qualifications and thus have failed to comply with the

Court's May 4, 2006 Order requiring that motions for additional relief must be supported by the

affidavit of a qualified expert, including a recitation of the expert's qualifications.  *See* Docket

No. 286 at 5.

Third, the plaintiffs again have failed to comply with the regulations that must be

followed to obtain documents and things from the United States.  Pending before the Court is the

United States' motion to dismiss for lack of subject-matter jurisdiction.  The Court has indicated

on numerous occasions that the plaintiffs' failure to exhaust their administrative remedies

prevents the Court from having jurisdiction under the Federal Tort Claims Act.  Inasmuch as the

plaintiffs have failed to carry their burden of establishing jurisdiction over the subject matter of

their claims against the United States, no discovery can properly be obtained from the United

States until that is established.

For all of these reasons, the O'Dwyer Plaintiffs' motion to compel should be denied.

## I.  THE O'DWYER PLAINTIFFS' MOTION TO COMPEL SHOULD BE DENIED AS MOOT.

The O'Dwyer Plaintiffs' Motion to Compel seeks to compel the United States to produce

1)      The concrete monolith panels currently at the site, and particularly the left
        and right edges of those concrete panels and the bottoms of the panels,
        where the concrete makes contact with the sheet piles;

2)      The concrete monolith panels which were excavated and removed from
        the site some time prior to Wednesday, May 2, 2006;

3)      The polyvinyl chloride water stops which were installed between concrete
        monolith panels at the 17th [Street] Canal breach site; and

2

    4)    The in-place sheet piles, many of which are currently buried by mud and rip rap at the 17th Street Canal breach site.

O'Dwyer Plaintiffs' Mot. at 1-2.

Plaintiffs' first request can be broken down into two parts:  (i) their request to view the left and right edges of the concrete monolith panels currently at the site, and (ii) their request to view the bottom of the monoliths where the monolith connects to the sheet piles.  With respect to their request to view the left and right edges of the concrete monolith panels currently at the site, counsel for Boh Brothers reported to the Court during the status conference on Friday, May 12, 2006, that it is feasible to allow representatives of the plaintiffs to see the monoliths currently at the site and the edges or sides of these monoliths without incurring substantial additional costs or substantially impeding or delaying the construction work at the site.  With this goal in mind, representatives for the plaintiffs and counsel for Boh Brothers are currently working on a protocol which will allow these inspections to take place.  The protocol is expected to be filed with the Court by the close of business today, Tuesday, May 16, 2006.

With respect to plaintiffs' request to view bottom of the monoliths where the monolith connects to the sheet piles, counsel for Boh Brothers represented to the Court at the status conference on Friday that reasonable efforts will be made in attempt to accommodate plaintiffs but that it is not possible to guarantee that plaintiffs will be able to view the connection between the bottoms of the monoliths and the sheet piles.  In the normal course of construction, the construction crews demolish the monoliths before removing the sheet piles, and, thus, the connection between the monolith and sheet piles is usually destroyed during the normal removal process.  *See, e.g.,* Declaration of Donny D. Davidson ¶ 2, attached to Docket No. 300.  In order

to guarantee that plaintiffs could see the connection between the bottoms of the monoliths and the sheet piles, the construction crew would have to leave the monoliths completely intact and then dig to the bottom of them to the point at which they are joined to the sheet piles.  This is not normally done and would require the construction of a very large coffer dam around the entire construction site.  The cost of building of such an extensive coffer dam would be prohibitive, and the time required to do so would severely delay the completion of the project.  *See, e.g.,* Declaration of Timothy Roth ¶ 4, attached to Docket No. 300.

As was represented to the Court on Friday, the construction crew will make reasonable attempts to try to avoid destroying all of the monoliths in attempt to accommodate plaintiffs' request to view the connection between the monoliths and sheet piles.  Normally, smaller coffer dams are constructed so that the sheet piles can be removed once the monoliths have been destroyed.  A brace or strut is placed every twenty feet inside the coffer dam to ensure that the dam is secure.  Because the monoliths are over thirty feet long, they must be broken in some places so that the braces or struts can be inserted.  If it is possible to break the monoliths and insert the braces/struts without completely destroying the monoliths, then plaintiffs will be given access to the site so that they can view the connection between the monoliths and sheet piles.[1] Plaintiffs' access to the site and more details concerning the accommodations that can be made should be addressed in the above-referenced protocol, which is expected to be filed with the Court today.

---

[1]  It should be noted, however, that breaking concrete is not a delicate task and that it is difficult for construction crews to be precise while working with a 6,000 pound vibration hammer.

Plaintiffs' second request to see concrete monolith panels which were excavated and removed from the site some time prior to Wednesday, May 2, 2006, is moot because these materials have already been demolished in the ordinary course of reconstituting the levee and the flood wall.  Declaration of David A. Wolfarth, attached hereto.

Plaintiffs' third and fourth requests to view the water stops and sheet piles which are currently at the site are moot since counsel for Boh Brothers represented to the Court at Friday's status conference that plaintiffs will be given access to the site to view these materials.  Again, plaintiffs' access to the site is being addressed in the above-referenced protocol, which is expected to be filed with the Court today.

The Court has indicated on numerous occasions that it does not wish to impede the repair and construction work on the levees and flood walls.  It, therefore, instructed the United States at last week's hearing on Mr. O'Dwyer's motion to compel the production of evidence at the London Avenue North breach site to determine whether it was feasible to allow plaintiffs to inspect the materials that Mr. O'Dwyer had requested in his current motion.  As the Court was informed during the status conference last Friday (and as is set out above), reasonable efforts are being made to accommodate plaintiffs' requests to the extent possible.  For these reasons alone, the motion to compel should be denied as moot.[2]

---

[2]  Counsel for the United States contacted Mr. O'Dwyer by e-mail on Monday, May 15, 2006, and requested that he join in a request to the Court that the hearing on his motion to compel be vacated since the motion was moot.  The United States received no response from O'Dwyer prior to filing this response.  Mr. O'Dwyer's refusal to consent to a request that the hearing be vacated is further evidence that he has no real interest in the viewing the materials at the construction sites but, rather, is intent on filing needless motions that waste the time and resources of counsel and the Court.

II.     THE O'DWYER PLAINTIFFS' MOTION SHOULD BE DENIED FOR LACK OF
        SUPPORT.

        On Tuesday, May 9, 2006, plaintiffs filed a Motion for Leave to File Supplemental

Memorandum In Support of Motions to Compel Production of Evidence [at] (A) The London

Avenue North Breach Site and (B) at the 17th Street Canal Breach Site.  They attached to their

motion two affidavits that purported to support their motions to compel.[3]  One was the affidavit

of Hector V. Pazos, who, as the United States has already argued, is not qualified to render

opinions that warrant an order to preserve the requested materials.  *See* Docket No. 300 at 5-12.

Plaintiffs also purport to rely on an affidavit by Robert D. Bartlett.  Mr. Bartlett's affidavit should

be stricken since plaintiffs have failed to provide a Curriculum Vitae setting out his qualifications

and thus have failed to comply with the Court's May 4, 2006 Order requiring that motions for

additional relief must be supported by the affidavit of a qualified expert, including a recitation of

the expert's qualifications.  *See* Docket No. 286 at 5.  Moreover, Mr. Bartlet's affidavit is not

really an affidavit.  It is a copy of an e-mail that he sent to Mr. O'Dwyer and contains very little

in the way of a discernable opinion.  For these reasons, plaintiffs' motion should be denied for

lack of support.

---

        [3]  Plaintiffs' motion to compel the production of evidence at the London Avenue North
site was summarily denied as moot by the Court during last Wednesday's hearing.

6

III.    THE O'DWYER PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THERE
        IS NO SUBJECT MATTER JURISDICTION OVER THE CLAIMS AGAINST THE
        UNITED STATES

        The plaintiffs' motion should also be denied because the Court lacks jurisdiction over the

United States, which has not waived its sovereign immunity to this action.  Pending before the

Court is the United States' motion to dismiss, based, *inter alia*, on the plaintiffs' failure to

exhaust administrative remedies as required by 28 U.S.C. § 2675(a).  This lack of jurisdiction is

important inasmuch as the standards and methods of compelling discovery are different for non-

parties.  Federal Rule of Civil Procedure 45 applies to discovery requested from persons who are

not before the court.  Here, not only has discovery not formally commenced, but none of the

protections have been applied to guard against unwarranted discovery from the United States in

actions to which it is not a party.  Even if some of the relief could be considered proper under

Rule 26 before the dismissal of the United States, imposing discovery on the United States before

the Court has determined the existence and extent of its jurisdiction would circumvent the federal

regulations (including the Army's *Touhy* regulations) that apply to discovery requests directed to

the United States in actions in which the government is not a party.  For this reason, the Court

should deny the plaintiffs' attempt to commence discovery now, before jurisdiction has been

established.


        ////

        ////

        ////

7

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

PAUL F. FIGLEY
Deputy Director, Torts Branch

/s/ Robin D. Smith

_____
ROBIN D. SMITH
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C.  20044
(202) 616-4916
(202) 616-5200 (fax)
Attorneys for the United States

Dated: May 16, 2006.

8

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing pleading has been served upon all counsel of record to this proceeding by fax, electronic mail, or U.S. Mail on this <u>16</u><sup>th</sup> day of <u>May</u> 2006.


/s/ Robin D. Smith

_____

Robin D. Smith