

**U.S. Department of Justice**

*Civil Division, Torts Branch*
*Federal Tort Claims Act Staff*

---

*Robin D. Smith*
*Trial Attorney*

*P.O. Box 888, Benjamin Franklin Station*   *Tel.: (202) 616-4289*
*Washington, DC 20044*   *Fax: (202) 616-5200*

PJP:PFF:RSmith
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

March 13, 2006

VIA FEDEX AND FAX (504-589-7633)

Honorable Joseph C. Wilkinson, Jr.
United States District Court
Eastern District of Louisiana
500 Poydras Street
New Orleans, LA 70130

RE: <u>*Berthelot v. Boh Bros. Constr.* (05-4182) (all cases)</u>

Dear Judge Wilkinson:

I was informed yesterday that some of the monoliths within the area of the breach of the London Avenue canal levee near the Robert E. Lee Bridge are now being uncovered, in preparation for construction of a T-wall at the site. There are about 16 monoliths. Each monolith comprises 16 sheet piles encased in a concrete slab that is about 30 feet long, 12 feet wide, and 2 feet thick. Not all of the monoliths have been uncovered, but some appear to be at a low point—possibly the point where the failure first occurred. The project engineer anticipates that these monoliths should be uncovered by late Thursday or Friday.

These monoliths must be removed in order for construction to proceed. Because of their size and weight, they cannot be removed intact. Photographs have been taken of the scene by the Corps Quality Control employees, and current plans are for IPET to map the uncovered site to note the relative positions of the monoliths (still and motion photographs are normally made). IPET also plans to recover two pairs of sheet piles and part of one of the concrete monoliths, and samples of the various types of the rebar for materials testing.



EXHIBIT

No. 2.

Letter to Judge Wilkinson
April 13, 2006
Page 2

A materials handling expert will be present to mark, identify, and prepare chain-of-custody paperwork for each item recovered for IPET's investigation. Larger samples will be removed from the site and taken to another location for storage by the New Orleans District of the Army Corps of Engineers in accordance with Army chain-of-custody protocols. The remaining material will be demolished and removed, so that reconstruction of the levee can proceed.

Because the materials now being excavated may have been involved in the initial breach at this site, I wanted to inform the Court that their removal and destruction are imminent. The removal of a 16-square-foot section of these monoliths is presently scheduled to begin tomorrow, April 14, at 8:00 a.m. The Corps has offered to allow representatives of the plaintiffs and the defendants to be present as this work occurs, provided that access does not appreciably impede the repair. Accordingly, the Corps proposes to provide access to the representatives by cordoning off an area for viewing and then allowing closer periodic inspection at various intervals. If the Court sees fit, it could order the plaintiffs and the defendants to designate a limited number of representatives for each group. As this is a construction zone, protective clothing must be worn by everyone on site. A limited number of hardhats and safety vests will be available; steel-toed shoes should also be worn.

Persons who wish to arrange for access to the site should contact Denise Frederick, District Counsel, at 862-2052. A copy of this letter is being provided to the "scribes" who facilitated the production of the joint report last week, with a request that they forward it electronically to counsel for all of the parties to these consolidated actions.

Respectfully submitted,

ROBIN D. SMITH
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice

cc:   Hon. Stanwood R. Duval, Jr. (via fax only)
      Joseph Guichet, Esq. (jguichet@lawla.com)
      Gerald E. Meunier, Esq. (gmeunier@gainsben.com)
      Denise Frederick, Esq. (via email)

## Victoria Broussard

**From:** Ashton O'Dwyer [arod@odwyerlaw.com]
**Sent:** Thursday, April 13, 2006 12:59 PM
**To:** vbroussard@odwyerlaw.com
**Subject:** FW: Recovery at London Ave. site



Mag. J. Wilkinson re
London Av...

-----Original Message-----
From: Denise Martin [mailto:dmartin@gainsben.com]
Sent: Thursday, April 13, 2006 10:36 AM
To: Ronnie G. Penton (E-mail); Hugh P. Lambert; csalas@salaslaw.com; FCDlaw@aol.com;
bob@manardlaw.com; bobharvey1128@msn.com; calvinfayard@fayardlaw.com; David Scalia;
dbecnel@becnellaw.com; dbhoneycutt@aol.com; dbrowne@brownelaw.com; dollyno@aol.com;
doug@duganbrowne.com; Joseph M Bruno (E-mail) (Joseph M Bruno (E-mail));
jwhaley@nbalawfirm.com; jdugan@duganbrowne.com; paul@manardlaw.com;
kreasonover@smithfawer.com; ostamant@bellsouth.net; phil@bohrerlaw.com;
pmurphy@murphylfirm.com; pawpendley@pendleylawfirm.com; rarsenault@nbalawfirm.com;
rasmith3@bellsouth.net; rburns@torres-law.com; rcreely@aol.com; rdaigre@duganbrowne.com;
sbaudin@pendleylawfirm.com; sme@emonet.com; smwiles@smithfawer.com; sskreller@gmail.com;
storres@torres-law.com; tdavis2@cableone.net; wimberly@nternet.com; arod@odwyerlaw.com;
Linda Nelson
Subject: FW: Recovery at London Ave. site


Dear Counsel:

Attached is correspondence received this morning from counsel for the US Corps of
Engineers, advising that destructive recovery work will be proceeding tomorrow morning
(starting at 8:00 a.m.) at the site of the London Avenue Canal levee breach.  In a
telephone conference this morning with Magistrate Wilkinson and others, it was agreed that
plaintiffs will be allowed six representative observers (presumptively, three attorneys
and three experts) at the site.  Joe Bruno will make contact with both LSU and the Prof.
Bea group as potential observers. The parties are encouraged to agree upon one
videographer/photographer, in addition to these representatives, and we are working with
defendants in that regard.  Stan Guidry has been recommended.

The Court has made it clear that it does not wish to delay or impede this work.

You should advise immediately if you or one of your experts wishes to be included.
Sincerely, Jerry Meunier



Denise M. Martin, Legal Assistant to Gerald E. Meunier Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC 2800 Energy Centre 1100 Poydras Street New Orleans, LA 70163
Telephone: 504-522-2304
Direct Line:  504-297-1767
Facsimile: 504-528-9973
Email: dmartin@gainsben.com

www.gainsburghbenjamin.com

CONFIDENTIALITY NOTICE: INFORMATION IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND
CONFIDENTIAL USE OF THE RECIPIENT(S) NAMED ABOVE This message is sent by or on behalf of a
lawyer at the law firm listed above, and is intended only for the use of the individual or
entity to whom it is addressed. This message contains information and/or at~~~~~~~~~~~~
are privileged, confidential and exempt from disclosure under applicable l~

**EXHIBIT**

NO. 3

April 13, 2006

**VIA FACSIMILE**

Magistrate Joseph C. Wilkinson, Jr.
United States District Court
Eastern District of Louisiana
Division "5"
500 Poydras Street
New Orleans, LA 70130

           Re:     Maureen O'Dwyer, et al. vs.
                    The United States of America, et al.
                    No. 05-4181 "K" (3)
                    U.S.D.C., Eastern District of Louisiana

Dear Magistrate Wilkinson:

Within the last hour or so I received E-mails from Ms. Finnegan, to which was attached a letter authored by Mr. Smith dated "March 13th", but obviously dated today, as well as a separate E-mail from Mr. Meunier. The E-mails reference work at the London Avenue South breach site scheduled for today, tomorrow, and perhaps going into next week.

This is totally inadequate notice, and I am reserving rights. My office is about to shut down because of the religious holiday, and I will be taking this matter up with Your Honor, on the record, next week.

This particular site, and the concrete monolith panels, are vital evidence, because until Mr. Smith's letter we did not know where the panels were, i.e., had they been removed, thrown onto a dump, were they buried, etc.? Also, IPET already has said in writing that vital evidence at this site had been "washed away" and that the "failure mechanism at the site may never be known", which quite frankly is "hogwash".



April 13, 2006
Page 2

        I object.

                                Respectfully,

                                Ashton R. O'Dwyer, Jr.

AROD/vtb
cc:     All counsel of record (via facsimile)

April 13, 2006
Page 3

bcc:   Hector C. Pazos (via E-mail W/Attachments)
       Bob Bartlett (via E-mail W/attachments)

LOUISIANA OFFICE

3501 HOLIDAY DRIVE, SUITE #203-A
NEW ORLEANS, LA 70114

CELL (24 HOURS): (504) 367-4072
FAX: (504) 367-3790

Email: Oceanoilpazos@cs.com
www.siterrific.com/pazos

# OCEAN-OIL
# EXPERT WITNESS, INC.

NAVAL ARCHITECTS and MARINE ENGINEERS
MARINE CONSULTANTS

FLORIDA OFFICE

P. O. BOX 47188
ST. PETERSBURG, FL 33743-7188

566 VILLA GRANDE AVE. S.
ST. PETERSBURG, FL 33707
PH: (727) 347-2556
FAX: (727) 343-9717
CELL (24 HRS): (727) 415-7192
Email: Hectorpazos75597@aol.com

April 14, 2006

VIA E-MAIL

Mr. Ashton R. O'Dwyer, Jr.
Law Offices of Ashton R. O'Dwyer, Jr.
One Canal Street, Suite 2670
New Orleans, LA 70130

Re: London Avenue Canal Levee

Dear Mr. O'Dwyer:

I have received your e-mail with a copy of a letter from Mr. Robin D. Smith to Judge Wilkinson dated March 13, 2006, and I would like to express my concern regarding the activities indicated in said letter, activities that were taking place at the time the letter was written (although it is my understanding that the correct date of the letter is April 13, 2006), as well as activities that are planned for "Thursday or Friday", presumably April 13th and April 14th.

1.    Since the written notice to arrange for access to the site was received after the activities indicated in the letter were underway, it is obvious that such activities were planned several weeks ago, since equipment and personnel have to be scheduled and mobilized. The failure to provide reasonable advance notice of these activities creates the impression that the USACE is attempting to avoid witnessing, by non-USACE investigators, some of the actions being taken.

2.    It is not possible for any professional person investigating the failure of the levees to attend a non-emergency event that may extend for a period of days without receiving a reasonable advance notice.

3.    The letter from Mr. Smith expresses his opinion regarding the "point where the failure first occurred". We do not believe that it is appropriate for Mr. Smith to express an opinion without allowing other parties the benefit of observing all facts leading to his opinion. Actually, it is public knowledge that some opinions previously expressed by members of the USACE or IPET were found erroneous and retractions were issued by the USACE or IPET.

EXHIBIT
5

April 14, 2006
Page 2

4.      The letter indicates that some monoliths have been uncovered already.  It would have been of great importance to find out the location of the monoliths, the condition of the connection between the monoliths and the sheet piles, the condition of the water-stop joints, the length of the sheet piles and other details, which appear to have been already disturbed or destroyed.

5.      The letter further indicates that the monoliths "cannot be removed intact".  In other words, they will be destroyed without allowing non-USACE investigators the chance to observe whether the connection to the sheet piles failed during Katrina or was destroyed during the removal underway.

6.      Since each monolith comprises 16 sheet piles, and there are 16 monoliths, that were presumably connected to a total of approximately 256 sheet piles, it is not clear why IPET plans to recover only two pairs of sheet piles (4 sheet piles out of 256) and only "part of one of the concrete monoliths".  The specific location of the part to be removed from a monolith is very important because the portions of the monoliths encasing the sheet piles are high stress areas, while the portions of the monoliths closer to the top are low stress areas.  It is my understanding that during the removal of monoliths and sheet piles at the 17th Street Canal just a few weeks ago, the USACE recovered a part of a concrete monolith closer to the top of the monolith (low stress), while nothing was saved from the high stress areas, which were apparently destroyed.

7.      Furthermore, the letter indicates that samples of the various types of the rebar materials will be recovered.  This action is insufficient for any investigator to find if the rebars were appropriate, without indicating the distribution and location of these rebars.

8.      The floodwall system is a "chain type" structure in which the failure of a weak link can destroy the entire the chain.  Hence, "selected samples" of rebars, selected parts of monoliths and sheet piles will not be adequate to gain an understanding of the reason for the failure of the floodwall.

April 14, 2006
Page 3

9.     IPET, representing the USACE has demonstrated to be extremely partial in the past and it is to be expected that the items recovered, as selected by IPET, will not be useful for an independent investigation, since there are indications that they will be carefully selected for the benefit of a party, rather than to select items to be of interest to independent investigators.

10.    The letter from Mr. Smith indicates that the "remaining materials" (98% of the entire breached area) will be demolished and removed. This appears to be an INCREDIBLE DESTRUCTION of evidence without allowing independent investigators reasonable opportunity to observe this evidence before destruction.

11.    Mr. Smith is informing the court of the destruction of evidence on the same day that the destruction is taking place, that is, after the fact.

12.    The letter received on Thursday afternoon indicates that a "selected" 16 square foot (4' x 4') section of one of the 16 monoliths will take place at 8:00 a.m. Friday. It is obvious that the "invitation" to be present during this removal was purposely designed to avoid any independent investigator to attend this work, since there can be no reason to schedule non-emergency work by this Friday at 8:00 a.m. (Good Friday), while the activities in this area are expected to extend to weeks and/or months.

13.    Finally, in view of the above, any still and motion photographs, as well as chain-of-custody paperwork will be totally suspect of being very selective and partial to the USACE. Therefore, it will be of very little use for independent investigators, creating an extreme cloud of suspicion regarding the reasons for IEPT to make such unusual efforts to avoid reasonable participation of any investigator interested in determining the cause of the failure of the floodwalls of the London Street Canal.

Please call me if you have any questions.

Regards,
Hector V. Pazos