FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2006 MAY 16  AM 10: 02

LORETTA G. WHYTE
CLERK

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| **COLLEEN BERTHELOT, et al.** | * | **CASE NO.** |
| **VERSUS** | * | **NO. 05-4182** |
| **BOH BROTHERS CONSTRUCTION CO., et al.** | * | **SECTION " K "** |
| | * | **MAG. NO. "2"** |

* * * * * * * * * * * * * * * * *"

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF DISCOVERY MOTION(S) AND
PLAINTIFFS' MOTION FOR EXPEDITED HEARING**

**MAY IT PLEASE THE COURT:**

The Federal Government's contempt for the plaintiffs in this litigation, and for the Court and counsel, has hit all time new high levels.  Last night, before retiring, after watching the 10:00 o'clock news, the undersigned checked his E-mails and discovered one from Robin Smith, Esq., a copy of which is appended hereto and marked for identification as Exhibit No. 1.  Perhaps emboldened by Your Honor's recent summary denial of Plaintiffs' Motion for Review of Magistrate Knowles' ill-founded Ruling on Plaintiffs' Motion for a Protective Order,[1] the Federal Government, for the second time in the span of only one week, has given plaintiffs less than 24-hours notice of the imminent

---

[1]  Or perhaps emboldened by Magistrate Wilkinson's Minute Entry of April 13, 2006, containing the statement "Counsel for the United States are commended for their responsible and professional action in bringing this matter to the attention of the Court and counsel for the parties", which the Government obviously has interpreted as "Short notice?  No problem;  the Government can get away with anything in the Eastern District of Louisiana."

Fee_____
Process_____
X Dktd_____
CtRmDep_____
Doc. No._____

-1-

destruction of vital evidence.  The Court will recall that the summary denial of Plaintiffs'

Motion for Review of Magistrate Knowles' Ruling contained the statement:

> ". . . a full-blown hearing on precisely what measures are being taken to
> preserve evidence in the context of now-consolidated levee breach cases is
> to be held before Magistrate Judge Wilkinson on April 26, 2006 at 2:00
> P.M.  Any `error' will be rendered moot thereby."

However, on Monday, April 17, 2006, the Government "thumbed its nose" at the

Court and attempted to thwart the Court's good intentions by filing an <u>Ex</u> <u>Parte</u> Motion

and Incorporated Memorandum to Continue the April 26, 2006 Evidentiary Hearing.

That came on the heels (after less than 4 days) of a different E-mail from Mr. Smith, one

dated April 13, 2006, which gave plaintiffs less than 24-hours notice of imminent

destruction of vital evidence at one of the London Avenue Canal breach sites,

notwithstanding a Freedom of Information Act request for the very same tangible

evidence which had been outstanding for more than six (6) months.  The "new" evidence

in danger of imminent destruction by the Government or its contractor(s) at the 17th

Street Canal breach site also is the subject of the outstanding FOIA request.

It is respectfully submitted that this new indignity leveled at counsel and the

Court by the Federal Government cannot be allowed to stand.

The Government is pulling the wool over the Court's eyes, just like they did to

Magistrate Knowles, with hysterical references to catchy phrases like:

"key personnel"

"hamper completion of repairs"

"the start of hurricane season on June 1"

"valuable time"

"critical balance"

"unimpeded progress of critical repair and reconstruction work"

"the necessary repairs and tests"

"the June 1, 2006, deadline"

"away from the necessary work"

"impact on the intensity and pace of the repair and reconstruction work"

"adversely affect the communities in the Greater New Orleans area which are depending on the levee repairs"[2]

"June 1, 2006, deadline for completion of repairs"

Plaintiffs submit that the Government's use of the above and foregoing catchy phrases was very careful.  For instance, the June 1st deadline could refer in places to the date on which the IPET is scheduled to release its final report.  The term "repairs" appears in many places with the words "investigations" and "tests", but no breakdown is given by the Government for how the four (4) identified individuals have spent and are spending their time, the clear import being that they are critical to on-going necessary repair work.

That is a false suggestion.

Appended hereto and marked for identification as Exhibit No. 2 is a December 9, 2005 News Release from the U.S. Army Corps of Engineers, which clearly reflects that the "mission" of the IPET is forensic investigation, which the undersigned alleges is being influenced by the IPET to exonerate the Corps of Engineers from any and all liability to plaintiffs.  As the News Release, Exhibit No. 2, reveals, the actual repair work is the job of Task Force Guardian.  The "Data Collection Teams" which the News

---

[2]  Causing one to ask, rhetorically, "If you had logged 12-14 hour days prior to KATRINA, would the City still have been destroyed by your incompetence?"

Release identifies have not shared any data with plaintiffs, notwithstanding the plaintiffs' more than six (6) months old outstanding FOIA request. None of the "235 boxes of design and construction records on the New Orleans Hurricane Protection System" have been shared with plaintiffs in a user-friendly readable form. The Court will also note the statement "The IPET's final report will be completed June 1, 2006".

Plaintiffs charge that the four (4) individuals identified by the Government in their Ex Parte Motion to Continue the Evidentiary Hearing are either employees of the Corps of Engineers, or former employees of the Corps of Engineers whose salaries, wherever they may be working, are funded, at least in part, by grants from the Federal Government, including the Department of Defense. In short, the identified individuals march to the tune of the U.S. Army Corps of Engineers. They are professional "report writers" whose job it is to insulate from blameworthiness the institution which feeds them, their families and colleagues, and which has fed them for years, the Corps of Engineers.

The U.S. Army Corps of Engineers is one of the oldest Government institutions in the United States, having been founded in 1779. The Court may recall from Grammar School that George Washington, the nation's leader in the Revolutionary War and our first President, was a civil engineer.[3] The U.S. Army Corps of Engineers also is, perhaps, the biggest spender of money for construction projects on the face of the earth. This simply means that when the Corps says "Jump!", those who make their living working on Corps projects say "How high?" In short, the Corps of Engineers, and their employees and former employees, are used to getting their way, and if they don't get their way, they can always bring a United States Army Officer into the fray to order things their way. The entire culture of the Corps is "My way or the highway".

---

[3]  Indeed, he almost lost his life in the Braddock massacre during the French and Indian War.

What the Government and the Corps fail to take into account in this case, however, are the provisions of the Freedom of Information Act, and more particularly 5 U.S.C. §552. Appended hereto and marked for identification as Exhibit No. 3 is a copy of Complaint for Judicial Review of a Government Agency's Failure to Produce Documents and Other Tangible Things Pursuant to FOIA Requests, Civil Action No. 06-1850, which was filed in the United States District Court for the Eastern District of Louisiana on April 10, 2006. The Corps of Engineers is in default of plaintiffs' October 12, 2005, FOIA request, which has been provided to the Court in other, multiple Court filings. Plaintiffs are not going to write a treatise on the Freedom of Information Act, for that is available online through "WAIS Document Retrieval" [wais.access.gpo.gov] or 50 Am. Jur. Trials 407. However, in summary, nothing in the Government's recent Ex Parte Motion address the fact that the Corps is in default of Plaintiffs' FOIA request or the fact that the statute gives the involved agency little, if any, discretion not to produce documents and other tangible things [4] which have been requested by the citizenry.

## CONCLUSION

The purposes of the Freedom of Information Act have been said "to ensure an informed citizenry, a check on corruption, and to hold the Government accountable to the governed." (emphasis supplied). [5] Holding the Government "accountable to the governed" has not yet occurred in this case. It is respectfully submitted that it should start here, now.

---

[4]  i.e., trade secrets, medical file, secrets in the interest of national defense or foreign policy, none of which apply in this case.
[5]  NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242, 98 S.Ct. 2311 (1978).

Respectfully submitted,

LAW OFFICES OF
ASHTON R. O'DWYER, JR.

By: _____
**Ashton R. O'Dwyer, Jr.**
**In Proper Person**
**Bar No. 10166**
**One Canal Place**
**365 Canal Street**
**Suite 2670**
**New Orleans, LA 70130**
**Telephone: (504) 561-6561**
**Facsimile: (504) 561-6560**

## CERTICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion has been served upon all counsel of record via facsimile, this ____ day of April 2006.