```
From: Smith, Robin Doyle (CIV)
Sent: Tuesday, April 18, 2006 9:54 PM
To: 'dbecnel@becnellaw.com'; 'doug@duganbrowne.com';
'dbrowne@brownelaw.com'; 'jdugan@duganbrowne.com'; 'dollyno@aol.com';
'rgharvey@bellsouth.net'; 'hlambert@lambertandnelson.com';
'rgp@rgplaw.com'; 'wimberly@nternet.com'; 'storres@torres-law.com';
'jbruno@brunobrunolaw.com'; 'DAVID@brunobrunolaw.com';
'dmartin@gainsben.com'; 'rasmith3@bellsouth.net'; 'rcreely@aol.com';
'mlandry@landryswarr.com'; 'ROBBECNEL@aol.com';
'calvinfayard@fayardlaw.com'; 'arod@odwyerlaw.com'; 'hhoffmann@spsr-
law.com'; 'bettym@spsr-law.com'; 'mriess@kingsmillriess.com';
'tbrennan@dkslaw.com'; 'rtyler@joneswalker.com'; 'tdarling@grhg.net';
'tgaudry@grhg.net'; 'wtreeby@stonepigman.com'; 'tanzelmo@mcsalaw.com';
'jpate@ln-law.com'; 'rhubbard@lawla.com'; 'jguichet@lawla.com';
'vstilwell@dkslaw.com'; 'gsimno@swbno.org'; 'wlanglois@grhg.net';
'jlandis@stonepigman.com'; 'bmayeaux@ln-law.com';
'gardner@bayoulaw.com'; 'gvarga@rc.com'; 'wlee@stonepigman.com';
'abramson@phelps.com'; 'jvdirosa@cityofno.com';
'pmfields@cityofno.com'; 'jbarrasso@barrassousdin.com';
'lduplass@duplass.com'; 'kderham@duplass.com';
'kellerm@ag.state.la.us'; 'belhiamartin@bellsouth.net';
'jamesmullaly1@hotmail.com'; 'waaron@goinsaaron.com';
'ctankersley@burglass.com'; 'dphayer@burglass.com';
'jmcevoy@JonesDay.com'; 'gtmanning@jonesday.com';
'cseemann@dkslaw.com'; 'jemckernan@mckernanlawfirm.com';
'martin4@mdjwlaw.com'; 'sadler@mdjwlaw.com';
'dsimonton@sonnenschein.com'
Cc: 'Denise.D.Frederick@mvn02.usace.army.mil';
Randall.C.Merchant@mvn02.usace.army.mil
Subject: Levee Construction Site Access
```

Dear Counsel:

I am writing to inform you that the contractor at the site of the 17th Street breach is about to begin demolishing monoliths, perhaps as soon as tomorrow morning. The first monoliths to be demolished are shallow monoliths. The demolition of these monoliths will be ongoing for a few weeks. IPET does not need these monoliths. IPET intends to examine and sample only three deeper monoliths at this site. IPET's examination and sampling will occur after the shallower monoliths have been demolished and removed, which is expected to require at least two weeks.

I am informing you of the work that may begin tomorrow because I understand that some of you may be interested in viewing operations other than those that involve IPET. To accommodate your interests, the Corps is willing to allow access to the 17th Street construction site on the same basis as was afforded at the R.E. Lee site last Friday. It is our intent to allow limited access to all construction sites on an ongoing basis, so long as access does not appreciably impede the work of rebuilding the levees. Within the next few days, we will propose a protocol governing ongoing access and ask the Court to enter an order enforcing it. But since construction is proceeding apace in the interim, we are asking that the plaintiffs again designate no more than six representatives, as they did last Thursday, and provide a list of those representatives to Denise D. Frederick, District Counsel, at 862-

EXHIBIT NO. 1

2052, before attempting to gain access to the site. We ask that the defendants do the same. As before, a videographer may also be present, and the delegation will be asked to remain in a designated area while work is in progress. At appropriate intervals, within the discretion of the Project Manager, closer inspection and observation will be afforded.

I apologize for providing such short notice, but the nature of the work makes it uncertain when particular operations will occur. It may well be that no one is particularly interested in the work that occurs tomorrow. But since counsel for the United States were uncertain about this, we decided to make this offer now, rather than learn later that some of you would have liked to be present. Because we intend to afford regular access, and because we received so little notice concerning the work that may begin tomorrow, we are requesting that each person who is designated to visit the site bring appropriate personal protective
equipment: a hardhat, earplugs, safety shoes, and a safety vest. I cannot say whether the Corps will be able to provide any personal protective equipment tomorrow, and persons without it will not be admitted to the site. Finally, please be reminded not to discuss the work with employees of the United States or the contractors employed at the site, as Judge Wilkinson's order admonished with respect to the R.E. Lee site visit last week.

Thank you for your cooperation.

Yours very truly,
Robin D. Smith
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
202-616-4289 (voice)
202-616-5200 (fax)



# News Release

**US Army Corps of Engineers**

Release No. PA-05-16
For Release: Immediate

**Contact:**
Wayne Stroupe  601 634-2404
wayne.a.stroupe@usace.army.mil
**Task Force Guardian  504 862-2159**

---

**Interagency Performance Evaluation Task Force – Repair Improvements for the New Orleans Hurricane Protection System**

Washington (December 9, 2005) - Comprehensive analysis to determine exactly what happened in the New Orleans hurricane and flood protection system during Hurricane Katrina is the mission of the Interagency Performance Evaluation Task Force (IPET). Established by the Chief of the U.S. Army Corps of Engineers, the IPET is comprised of some of the nation's leading engineers and scientists from government (federal, state and local agencies), academia and private industry.

The IPET analysis teams are all co-lead by representatives from independent organizations and personnel from the Corps. These experts will use some of the most advanced research tools, including laboratory testing and numerical and physical models, in their comprehensive study.

While the IPET's primary focus is investigating the levees and floodwalls that overtopped or breached in order to provide answers for use in future New Orleans protection project designs, the task force is also providing preliminary observations from its own team members and from other engineering organizations for possible use in the rapid-paced repairs of Hurricane Katrina damage. These observations are being provided to the Corps' Task Force Guardian, which is managing the repair of damaged levees and floodwalls, for possible inclusion in repair designs.

As part of this process, the IPET has reviewed the "*Preliminary Report on the Performance of the New Orleans Levee Systems in Hurricane Katrina on August 29, 2005*" that was prepared by jointly by an American Society of Civil Engineers (ASCE) team and a National Science Foundation (NSF) team, which was primarily from the University of California at Berkeley. The ASCE/NSF report is publicly available at the ASCE web site, www.asce.org.

The IPET review provides Task Force Guardian with a simple statement of concurrence or non-concurrence and additional relevant discussion for each of the major findings in the ASCE/NSF report's chapter eight, "Summary of Observations and Findings." The additional discussion relates to the analysis being conducted by the IPET or others that would assist in applying the ASCE/NSF findings to the reconstruction of hurricane protection in New Orleans.

The IPET "*Summary of Field Observations Relevant to Flood Protection in New Orleans, LA*" was given to Task Force Guardian on Dec. 5. A copy of this IPET report will be posted on the IPET public Web site, https://ipet.wes.army.mil. Policy issues contained in the ASCE/NSF report will be considered in forums



EXHIBIT NO. 2

outside the IPET.

Based on its own preliminary observations in New Orleans and its engineering expertise, the IPET agreed with the majority of the ASCE/NSF report findings. The ASCE/NSF report findings include such actions as adding overtopping erosion protection on the land side of levees and floodwalls for scour protection, more robust designs for transitions between levee/floodwall sections (transitions from earthen levees, sheetpiles and/or concrete wall sections), inspection and repair as necessary of levee sections that may have been damaged but did not fail, using sheetpiles placed against the bridges at the north ends of the 17th Street and London Avenue canals to control storm and tidal surges, etc.

The IPET, ASCE and NSF data collection teams have previously shared their informal findings with Task Force Guardian for consideration in reconstruction operations. A number of these observations have already been implemented in the levee and floodwall repair efforts. The ASCE/NSF and/or IPET observations being included in Task Force Guardian projects include, but are not limited to, overtopping and scour protection being incorporated in all floodwall repair sections (Inner Harbor Navigation Canal, Gulf Intercoastal Waterway and Mississippi River Gulf Outlet), armoring and greater overlap in transition sections, and the previously completed (in October) installation of sheetpiles on the northern ends of the 17th Street and London Avenue Canals to control storm surge.

To ensure continued timely interaction between the IPET, Task Force Guardian and other Corps organizations, there are various official channels of communication, including weekly conference calls and liaison personnel between Task Force Guardian and IPET to facilitate interaction. Task Force Guardian has 20 people imbedded in the IPET process to assist with the development and application of lessons learned. There are also informal discussions that occur between the engineering and construction professionals involved with Task Force Guardian, IPET, and the other organizations.

To date, more than 235 boxes of design and construction records on the New Orleans hurricane protection system have been collected. These hard copy records are being scanned and digitized as rapidly as possible. All releasable documents from this effort are posted on the public Web site, https://ipet.wes.army.mil.

The IPET's final report will be completed June 1, 2006. The IPET report and its facts will be validated by an ASCE External Review Panel. The National Academies is assembling a multidisciplinary, independent panel of acknowledged experts to review and synthesize the IPET and ASCE efforts. The National Academies panel will report its findings and recommendations directly to the Assistant Secretary Army for Civil Works in the summer of 2006. All of these reports will be released to the public.

-30-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| ASHTON R. O'DWYER, JR. | * | NO. 06-1850 |
| | * | |
| VERSUS | * | SECTION "M" |
| | * | |
| THE UNITED STATES | * | MAGISTRATE "4" |
| ARMY CORPS OF ENGINEERS | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

**COMPLAINT FOR JUDICIAL REVIEW
OF A GOVERNMENT AGENCY'S FAILURE TO PRODUCE
DOCUMENTS AND OTHER TANGIBLE THINGS
PURSUANT TO FOIA REQUESTS**

1.

This is an action by an individual, on his own behalf and in various representative capacities, against an agency of the United States of America, viz., The United States Army Corps of Engineers (sometimes hereinafter referred to as the "COE"), for the Court to order the COE to produce documents and other tangible things which were the subject of Freedom of Information Act requests by plaintiff, both individually and in his representative capacities, to the COE on October 12, 2005 and November 16, 2005.

2.

This Court has jurisdiction of this action pursuant to the provisions of 5 U.S.C. §552(a)(4)(B); venue in the United States District Court for the Eastern District of Louisiana is proper since the District Office of the United States Army Corps of

-1-


EXHIBIT No 3

Engineers, to whom plaintiff's Freedom of Information Act requests were directed, is located within this District in New Orleans, Louisiana.

**3.**

Plaintiff, Ashton R. O'Dwyer, Jr., is a named plaintiff and/or claimant and/or third-party plaintiff in litigation pending within this District arising out of Hurricane KATRINA, and more particularly in Civil Action Nos. 05-4181, 05-4237 and 05-4419 on the docket of this Court. Plaintiff also is the duly authorized agent for and attorney-in-fact for other individual plaintiffs who are identified by name in the referenced litigation.

**4.**

On October 12, 2005, plaintiff hand-delivered a detailed Freedom of Information Act request to the United States Army Corps of Engineers, a copy of which is appended hereto and marked for identification as Exhibit No. 1, seeking documentation and other tangible things relevant to the design, construction, inspection, maintenance and failure of the levees, sheetpiles and retaining wall structures at the 17th Street Canal, the London Avenue Canal and the Industrial Canal, all located within this District.

**5.**

On November 3, 2005, the United States Army Corps of Engineers responded to Exhibit No. 1 by letter dated November 3, 2005, which reflected:

> The Corps of Engineers is presently constructing a website where we will post much of the information requested regarding Hurricane Katrina. An update will be sent to you when the website becomes available. In the interim, you may wish to consult the Corps of Engineer's website for general Hurricane Katrina information, available at www.mvd.usace.army.mil/hurrican/ehr.php.

A copy of the November 3, 2005 reply by the United States Army Corps of Engineers to Exhibit No. 1 is appended hereto and marked for identification as Exhibit No. 2.

**6.**

On November 16, 2005, plaintiff amended Exhibit No. 1 by requesting production of additional documents and other tangible things pursuant to the Freedom of Information Act by facsimile and letter served on the United States Army Corps of Engineers through its then counsel of record, an Assistant U.S. Attorney for the Eastern District of Louisiana. A copy of the FOIA amendment to Exhibit No. 1, dated November 16, 2005, is appended hereto and marked for identification as Exhibit No. 3.

**7.**

On December 6, 2005, the United States Army Corps of Engineers, through its District Counsel, directed a letter to plaintiff reflecting as follows:

> This is in response to your Freedom of Information Act requests dated October 12, 2005 and November 16, 2005 for records relating to New Orleans District and Hurricane Katrina. The U.S. Army Corps of Engineers recently released a website with information related to Hurricane Katrina. This website is now available online at https://ipet.wes.army.mil/ and may contain information responsive to your request.
>
> The Corps will update this site periodically as new information becomes available for release. It is anticipated that much of the information requested related to Hurricane Katrina will be publicly released via this website. Our offices will make every effort to include the information that you have requested on this website. If you have any questions, please contact Ms. Diane Bilbo at (504) 862-1165 or Ms. Angela Drinkwitz at (504) 862-2826.

A copy of the December 6, 2005 letter from the United States Army Corps of Engineers to plaintiff is appended hereto and marked for identification as Exhibit No. 4.

**8.**

The above-referenced websites are not "user-friendly", but cumbersome, user-unfriendly and appear to have been constructed so that persons visiting the sites will give up in frustration before locating and downloading relevant information from the sites.

**9.**

On December 19, 2005, the United States Army Corps of Engineers, through its attorney-in-fact, the United States Attorney for the Eastern District of Louisiana, directed a letter to plaintiff reflecting as follows:

> We have forwarded your FOIA request to district counsel for the Army Corps. As you are aware, the Army Corps is in the midst of emergency repairs at the damaged sites and any requests for discovery, therefore, must accommodate the need to timely complete these repairs. The Corps' office of counsel has assured us that your office is on the Army Corps' list of interested parties that will be afforded fair notice of any future excavation or removal activities at the respective sites. They further assured us that you will be allowed the same access rights afforded to the numerous other similarly-situated litigants. Any request for inspection of sites or materials should be directed to the Army Corps' district office of counsel pursuant to its regulations at 32 C.F.R. part 516.

A copy of the December 19, 2005 letter from the United States Army Corps of Engineers to plaintiff is appended hereto and marked for identification as Exhibit No. 5.

**10.**

To date, plaintiff and the expert witnesses retained by plaintiff to conduct forensic examination of the levee failures in the Greater New Orleans Metropolitan Area during and after Hurricane KATRINA have been invited to inspect work at only one site, namely the 17th Street Canal in early December, 2005, which was wholly inadequate in terms of the opportunity for plaintiff and his experts to view relevant evidence. This site inspection is the subject of Plaintiffs' Motion for a Protective Order in C.A. No. 05-4181,

referenced, supra. Since plaintiff's Freedom of Information Act requests to the United States Army Corps of Engineers, Exhibits Nos. 1 and 3, no documents whatsoever have been produced to plaintiff by the COE. Accordingly plaintiff is entitled to treat the COE's failure to produce documents and other tangible things, other than as described supra, as a constructive denial of plaintiff's legitimate FOIA requests.

**11.**

A reasonable time has passed since submission of plaintiff's Freedom of Information Act requests to the United States Army Corps of Engineers without adequate response from the COE, and plaintiff is entitled to an Order of the Court requiring the United States Army Corps of Engineers to produce the requested documents and other tangible things, posthaste.

**12.**

Plaintiff hereby tenders to the United States Army Corps of Engineers the payment of reasonable search fees and copying costs. Alternatively, plaintiff avers that fees and costs should be waived in this particular instance, given the monumental breach of duty owed the citizenry, including plaintiff and his clients, by the United States Army Corps of Engineers under the unique circumstances presented by this case and related litigation.

**13.**

Plaintiff also is entitled to an award of reasonable attorney's fees and costs from the United States Corps of Engineers pursuant to the provisions of 5 U.S.C. §522(a)(4)(E).

**WHEREFORE** plaintiff, Ashton R. O'Dwyer, Jr., both individually and in his representative capacities, prays that the Court order that the United States Army Corps of

Engineers be required to fully and completely respond in writing to plaintiff's Freedom of Information Act requests of October 12, 2005 and November 16, 2005, posthaste, and that the Court award plaintiff reasonable attorney's fees and costs from the United States Army Corps of Engineers, and for all other proper relief.

Respectfully submitted,

**LAW OFFICES OF
ASHTON R. O'DWYER, JR.**

By:_____

**Ashton R. O'Dwyer, Jr.
In Proper Person
Bar No. 10166
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Telephone: (504) 561-6561
Facsimile: (504) 561-6560**