

**LAW OFFICES OF**
**ASHTON R. O'DWYER, JR.**
**ONE CANAL PLACE**
**365 CANAL STREET**
**SUITE 2670**
**NEW ORLEANS, LA 70130**
Telephone: (504) 561-6561
Facsimile: (504) 561-6560

May 5, 2006

**VIA E-MAIL**

Robin D. Smith, Esq.
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Benjamin Franklin Station
Washington, DC 20044

> Re:   Colleen Berthelot, et al. vs.
> Boh Brothers Construction Co., LLC, et al.
> No. 05-4182 "K" (2)
> Relates to All Actions

Dear Robin:

I have just had the opportunity to compare your May 5th letter/facsimile to Magistrate Wilkinson with the Magistrate's Order of May 4th. The United States of America and its agency and instrumentality, the United States Army Corps of Engineers, are already in violation of Magistrate Wilkinson's Order. While my expert and I were at the site on Wednesday, May 3rd, Mr. Merchant confirmed that concrete monolith panels at the South end of the breach had already been destroyed by the Corps' contractor. This was patently obvious. He also stated that the concrete monolith panels in the center of the breach area would be destroyed imminently. If further concrete panels are destroyed at the site without affording me and my experts the opportunity to observe the areas of interest previously identified to you, then your clients will be in violation of the Magistrate's Order that all tangible items must be collected, retained or stored.

Be guided accordingly.

You already know that it is my position that you and your client "thumbed their noses" at counsel and the Court by giving us only four (4) hours notice of imminent destruction of evidence on the 3rd. Accordingly, it would assists me and my experts immensely if you would share with me the Corps' and/or its contractor's flow chart,

May 5, 2006
Page 2

critical path diagram, or equivalent, for work contemplated at both the 17th Street Canal breach site and the London Avenue Canal South breach site as soon as possible.

Yours very truly,

Ashton R. O'Dwyer, Jr.

AROD/vtb
cc:     Ms. Tess Finnegan
        Peter Myer, Esq.
        Ms. Traci Colquette
        Randall C. Merchant, Esq.
        All Plaintiffs' Counsel

**LAW OFFICES OF
ASHTON R. O'DWYER, JR.
ONE CANAL PLACE
365 CANAL STREET
SUITE 2670
NEW ORLEANS, LA 70130**
Telephone: (504) 561-6561
Facsimile: (504) 561-6560

May 10, 2006

**VIA FACSIMILE**

Ms. Tess Finnegan
Robin D. Smith, Esq.
Peter Myer, Esq.
Ms. Traci Colquette
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Benjamin Franklin Station
Washington, DC 20044

The United States Army Corps of Engineers
c/o Its Assistant District Counsel
Randall C. Merchant, Esq.
Foot of Prytania Street at the
  Mississippi River
New Orleans, LA 70118

> Re:   Colleen Berthelot, et al. vs.
>       Boh Brothers Construction Co., LLC, et al.
>       No. 05-4182 "K" (2)
>       Relates to All Actions

Ladies and Gentlemen:

Yesterday was a busy day for the plaintiffs in No. 05-4181 and one of their experts. We visited the London Avenue South breach site at the Mirabeau Avenue Bridge. We also visited, quite by happenstance, the 17th Street Canal breach site.

What we saw at both sites appalled us.

The Government already has engaged in massive evidence destruction at the London Avenue Canal South breach site, without any notice to the litigants. More particularly, monolith panels have been removed from steel sheet pile and from the site.

May 10, 2006
Page 2

Where are the monolith panels which were removed from the site?  When were they removed, at whose orders, and why weren't the parties litigant and their experts afforded the opportunity observe the monolith panels prior to their removal from the site? Additionally, the still existing monolith panels which are in a ditch inside the cofferdam at the site have not been properly excavated to permit reasonable inspection by plaintiffs and their experts.  More particularly, we were unable to see the connection between the steel sheet piles and the single concrete monolith panel which has been partially excavated.  Additionally, we cannot see the edges or ends of that monolith panel, which house the water stop system, consisting of concrete lips and a polyvinyl chloride water stop.  Additionally, at least one (and perhaps others) entire monolith panel remains completely buried at the site, and therefore is invisible to the parties litigant.

When we drove by the 17th Street Canal breach site, much to our surprise, we discovered that the contractor for the Corps of Engineers had already commenced pulling of steel sheet pile from the site, without notice to the litigants or their experts, although reasonable notice had been specifically requested.  This removal is taking place at the South end of the breach site, where the concrete monolith panels have already been removed from the sheet piles and removed from the site.  At the North end of the site additional concrete monolith panels have been discovered to be missing.  When were these monolith panels removed from the site?  At whose order?  Where and when can they be inspected?

Additionally, it appears that different types of steel sheet piles were used at the London Avenue North breach site when contrasted with the steel at the 17th Street Canal breach site.  At least at the North end of the 17th Street Canal breach there appears to have been a clear mechanical failure of the steel sheet pile.  Indeed, our inspection has revealed at least one sheet pile, which should have been at the joint, union or connection with other sheet piles, is missing, namely sheet pile No. 23-1.  Where is this sheet pile and connected sheet piles?  Who ordered it (or them) removed and why, and when can it (they) be inspected by plaintiffs and their experts.

Parenthetically, although Mr. Bartlett, in his recent "short" E-mail, described the steel sheet pile and attached concrete monolith panels as being the equivalent of a two-story building which moved some 40 feet and then had "their feet slip out from under them", we also observed other failure mechanisms at the North and South ends of the 17th Street Canal breach, namely, the hinge effect described so aptly by Mr. Pazos.  Of course, the Corps of Engineers has already removed the concrete monolith panels from the sheet pile at those ends of the breach, and put them "only God knows where".

You have 24-hours to rectify this and answer my questions or I will see you in Court, again.

May 10, 2006
Page 3

                                Yours very truly,

                                  Ashton R. O'Dwyer, Jr.

AROD/vtb
Attachments
cc:     All counsel of record (via E-mail)

# KINGSMILL RIESS, L.L.C.

## COUNSELLORS AT LAW

MARGUERITE K. KINGSMILL*
MICHAEL R. C. RIESS
JOHN M. DUBREUIL
CHARLES B. COLVIN*
THOMAS P. HENICAN
CHRISTY R. BERGERON*
CYNTHIA BOLOGNA MCINTYRE
*ALSO ADMITTED IN TEXAS

201 ST. CHARLES AVENUE
SUITE 3300
NEW ORLEANS, LOUISIANA 70170-3300
TELEPHONE (504) 581-3300
TELECOPIER (504) 581-3310

JP MORGAN CHASE TOWER
SUITE 7070
600 TRAVIS STREET
HOUSTON, TEXAS 77002
TELEPHONE (713) 222-6950
TELECOPIER (713) 222-6955

WRITER'S E-MAIL:
MRIESS@KINGSMILLRIESS.COM

May 16, 2006

**_By Hand Delivery_**
Honorable Joseph C. Wilkinson, Jr.
B409 Hale Boggs Federal Bldg.
500 Poydras Street
New Orleans, LA 70130

Re:     *Colleen Berthelot, et al. v. Boh Bros. Construction Co., L.L.C., et al.*
        United States District Court, Eastern District of Louisiana
        Civil Action No. 05-4182, Section K, Magistrate (2), Cons. Katrina Canal

**Status Report and Work Protocol for
Preservation of Evidence at 17th Street Canal T-Wall Repair Project**

Dear Judge Wilkinson:

Pursuant to your request made on Wednesday, May 10, 2006, and again on May 12, 2006 (at the status conference with all counsel with Judge Duval in attendance), undersigned counsel, on behalf of Boh Bros., is responding to certain preservation of evidence and/or work protocol discovery issues pertaining solely to the ongoing work now being performed by Boh Bros. at the 17th Street Canal breach site.  This report has been formulated after receiving input from plaintiff's liaison counsel, Hugh Lambert and Ashton O'Dwyer, who are also being copied on this report, in addition to other liaison counsel for the plaintiffs and defendants in these matters.

1.      **Opportunity to Inspect the Edges and/or Sides of the Concrete Monoliths at the 17th Street Canal**

As I disclosed in open court on May 12, 2006, I am pleased to report to the Court that the edges or sides of the existing concrete monoliths in their current configuration can be made available for inspection to the representatives of the plaintiffs in this matter without either incurring additional costs or substantially impeding or delaying the construction of the T-Wall repair at the 17th Street Canal.  Boh Bros. will be required to excavate the existing debris, rip rap, sandbags, etc. that were placed in the breach site of the 17th Street Canal in order for access and inspection to be made to the edges of the concrete monoliths.  After this excavation of material, that was only put in the breach site as a temporary patch post-Katrina, the monoliths, including the corner sections or sides of the monoliths, will be exposed and can be inspected.  This inspection will include "water stops", if they remain intact.  Some of these water stops are plainly evident and visible, as certain of the monoliths have not been covered up by the "temporary patch".

Honorable Joseph C. Wilkinson, Jr.
May 16, 2006
Page 2

2.      **Can The Connections Of The Existing Concrete Monoliths Where They Meet The Existing Sheeting At The 17th Street Canal Be Made Available For Inspection And Photographing?**

As I explained in open court on May 12, 2006, the answer is "maybe", but "Boh Bros. is not sure". Let me explain the answer and the work procedure that Boh Bros. will follow in trying to expose the "connections".

It simply is impossible to just dig a trench down an additional six to seven feet (from the current trench level) to expose the concrete monoliths where they meet the sheeting. This would require the construction of a separate coffer dam that would have to surround the entirety of the project that would be both cost prohibitive and severely impact the completion of this repair project.

However, as part of its contract with the Corps of Engineers, Boh Bros. is required to remove the existing concrete monoliths and existing sheeting that were put in place many years ago. Thus, Boh Bros. must necessarily dig down to the connection in order to remove the concrete monolith and existing sheeting, *i.e.*, to grab a hold of the sheeting and pull it out of the ground. In "layman's terms" this is how Boh Bros. plans to perform this scope of work with the desire to expose the "connections", as per its contract with the Corps:

A.      Boh Bros. will remove all of the debris and rubble (put in during the temporary breach repair) sitting on top of these concrete monoliths and sheeting;

B.      Boh Bros. will then expose the concrete monoliths and IPET/Plaintiffs' attorneys will be able to inspect same in accordance with the inspection protocol disclosed below;

C.      After the inspection of the concrete monoliths have been performed, Boh Bros. is then required by contract to demolish these monoliths with a vibration hammer, *i.e.*, bust up the concrete and rebar, while at the same time digging down to the level where Boh Bros. can tie into the sheeting in order to pull it out of the ground;

D.      Boh Bros. will utilize its best efforts to demolish the concrete monoliths before the struts are put in place, so as to possibly not break the connections where the sheeting is attached to these concrete monoliths when demolishing the monoliths themselves;

E.      If Boh Bros. is successful in demolishing the concrete monoliths at a level that does not "break" the connections between the existing sheeting and the concrete monoliths, then these "connections" can be inspected and reviewed; and

Honorable Joseph C. Wilkinson, Jr.
May 16, 2006
Page 3

     F.     After the "connections" are inspected and photographed, then Boh Bros. will remove the existing sheeting, at which time the sheeting will be measured, marked for identification and photographed, as has been done in the past, *i.e.*, on December 12 and 13, 2005.

Please understand that Boh Bros. cannot guarantee that these connections where the existing concrete monoliths attach to the sheeting will remain intact during this demolition process, as it is very difficult to control the demolition process using a 6,000 pound vibration hammer.

Boh Bros., through undersigned counsel, represents to this Honorable Court, that plaintiffs nor their counsel, stipulate to or agree with the "report" made by undersigned counsel contained in Item Nos. 1 and 2 above. Rather, Item Nos. 1 and 2 above merely represent the report by Boh Bros. back to the Court in response to the Court's prior directives.

**3.**     **Joint Agreement For Inspection / Preservation Of Evidence Relating To The Excavation, Demolition And Removal Process At The 17th Street Canal**

After conferring with Hugh Lambert and Ashton O'Dwyer, representatives of the plaintiffs' liaison committee, we have agreed to the following work/inspection protocol, balancing the interest of the plaintiffs' counsel to inspect and preserve evidence that they believe to be relevant and critical, on the one hand, and the interests of Boh Bros. and the Corps of Engineers in not creating additional costs and/or delay in timely completing the emergency repair work at the breach site on the 17th Street Canal:

     A.     Boh Bros., through Tom Sherburne, Quality Control Manager of Boh Bros., will send the "Daily Reports" to undersigned counsel for Boh Bros., Michael Riess, at which time counsel for Boh Bros. will forward same via e-mail to Hugh Lambert, Ashton O'Dwyer, Joe Bruno, on behalf of the plaintiffs' liaison committee, and Ralph Hubbard and William Treeby and Robin Smith/Traci Colquette, on behalf of the defendants in the "levee litigation" matters. Boh Bros., through Tom Sherburne, prepares these "Daily Reports" by no later than noon of the next day describing the work activities that Boh Bros. performed during the previous work day. Undersigned counsel of Boh Bros. will receive these daily reports by no later than 1:00 p.m. on the succeeding day describing the previous days work activities, and will promptly forward same to the counsel disclosed above with any particular comments that are appropriate relating to the excavation, demolition or removal of the levee system that was in place at the time Katrina struck on August 29, 2005. This "Daily Report" will also contain a section that will, on a best efforts basis only, identify what excavation, demolition or removal work relating to the monoliths/sheeting that plaintiffs are interested in seeing on an "look ahead" schedule of three – five days;

Honorable Joseph C. Wilkinson, Jr.
May 16, 2006
Page 4

B.    Plaintiffs' counsel shall notify by e-mail, Robin Smith, Traci Colquette and Tess
      Finnegan, counsel for the United States Government, regarding the identity of
      those individuals that would like to visit the 17th Street Canal breach site by no
      later than 5:00 p.m. CDT on the day before any planned site inspection or visit.
      This notification will permit the Corps of Engineers to have an on-site
      representative at the inspection to coordinate the site inspection activities on the
      project;

C.    All parties expressly understand and acknowledge that this "look ahead" schedule
      is on a best efforts basis only and is not a guarantee that the work described in the
      "look ahead" schedule will, in fact, occur on that particular date.  Undersigned
      counsel for Boh Bros. will be in constant communication with Tom Sherburne of
      Boh Bros. to communicate any alterations or changes to any scheduled work
      activities that involve the excavation, removal or demolition of any of the
      materials that formed the levee system as of August 29, 2005, and shall promptly
      notify all counsel by e-mail or telephone relating to changes in work schedules;

D.    All parties expressly understand and acknowledge that Boh Bros.' personnel, in
      liaison with the Corps of Engineers' representatives are in sole control of safety
      on this 17th Street Canal refurbishment project.  Accordingly, while plaintiffs'
      counsel and their representatives/experts shall be permitted to inspect, view,
      photograph, videotape, etc. the material that they would like to see, as disclosed
      above, all parties and their representatives expressly acknowledge and agree that
      representatives of Boh Bros. and the Corps of Engineers shall be in sole control of
      directing safety and safe areas;

E.    In the event that plaintiffs' counsel feel that they have been denied access and/or
      have problems complying with the directives made by the representatives of Boh
      Bros. and the Corps of Engineers on the project, then they shall be directed to
      contact undersigned counsel for Boh Bros. in a prompt fashion in order to try and
      work out the logistics of the particular request/dispute.  Undersigned counsel for
      Boh Bros. can be contacted at the following numbers:

                    Michael R. C. Riess, Esq.
                    Kingsmill Riess, L.L.C.
                    201 St. Charles Avenue, Suite 3300
                    New Orleans, Louisiana 70170
                    Telephone:  504-581-3300
                    Cell:  504-722-2747
                    mriess@kingsmillriess.com

Honorable Joseph C. Wilkinson, Jr.
May 16, 2006
Page 5

Charles B. Colvin, Esq.
Kingsmill Riess, L.L.C.
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170
Telephone: 504-619-6148
Cell: 504-858-1875
ccolvin@kingsmillriess.com

Lesley M. Barre'
(Legal Assistant to Michael Riess and Charles Colvin)
Kingsmill Riess, L.L.C.
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170
Telephone: 504-619-6142

F.     In the further event that counsel for Boh Bros. and the Corps, on the one hand, and counsel for the plaintiffs cannot work out the dispute, then plaintiffs reserve the right to file an appropriate motion with the court relating to the particular dispute surrounding the preservation of evidence/inspection and photographing of same, etc. Correspondingly, counsel for Boh Bros. reserves the right to file a Motion for Protective Order that pertains to the same issues. Hopefully, these differences, if any, will be worked out in the field.

## 4.     How Many People Can Attend These Site Visits and Check In Procedure

Plaintiffs, through their attorneys and representatives, shall be permitted to have no more than four attorneys and no more than four other representatives/experts in attendance at any inspection/preservation of evidence site visit to the 17th Street Canal. Correspondingly, defendants shall be likewise limited to four attorneys and four representatives/experts.

Additionally, all counsel and their representatives shall be required to report to the project superintendent and/or quality control manager (Tom Sherburne) prior to the visitors entering the site and only during the prescribed time agreed for site inspections at the 17th Street Canal T-wall repair project. No unauthorized and/or unannounced visitations to the site will be permitted. Additionally, all authorized visitors must have the necessary personal protective equipment, *i.e.*, standard issue hardhat, steel toed shoes, safety vests, eye protection, which personal protection equipment is required by Boh Bros.' contract with the Corps of Engineers for all personnel on site.

## CONCLUSION

All counsel recognize that this inspection/work protocol is not "etched in stone", as it may be tweaked and revised, depending on exactly how the process will be implemented and actually works. The parties will continue to balance the interests of the plaintiffs' desire to

Honorable Joseph C. Wilkinson, Jr.
May 16, 2006
Page 6

preserve evidence and/or inspect those materials in the existing levee system with the interests of not increasing the cost of performing this refurbishment job and/or not impeding or delaying the orderly completion of this emergency repair work. If and when their needs to be a revision to the inspection/work protocol disclosed above, we will report back to Judge Wilkinson.

        Best regards.

                           Yours very truly,

                           *Michael R. C. Riess*

                           Michael R. C. Riess

MRCR/lmb


cc:      ***(Via E-mail Only)***
          Hugh P. Lambert, Esq.
          Ashton R. O'Dwyer, Jr.
          Joseph M. Bruno, Esq.
          Ralph S. Hubbard, III, Esq.
          William D. Treeby, Esq.
          Robin D. Smith, Esq.
          Traci L. Colquette, Esq.
          Catherine J. Finnegan, Esq.

## Ashton O'Dwyer

*Lee: Heston + Bob*

**From:** Ashton O'Dwyer [arod@odwyerlaw.com]
**Sent:** Tuesday, May 16, 2006 2:17 PM
**To:** 'mriess@kingsmillriess.com'
**Cc:** 'dbecnel@becnellaw.com'; 'doug@duganbrowne.com'; 'dollyno@aol.com'; 'rgharvey@bellsouth.net';
'hlambert@lambertandnelson.com'; 'rgp@rgplaw.com'; 'wimberly@nternet.com';
'jbruno@brunobrunolaw.com'; 'DAVID@brunobrunolaw.com'; 'dmartin@gainsben.com';
'khadican@gainsben.com'; 'rasmith3@bellsouth.net'; 'kreasonover@smithfawer.com';
'tdavis2@cableone.net'; 'ostamant@bellsouth.net'; 'smwiles@smithfawer.com'; 'rcreely@aol.com';
'fswarr@landryswarr.com'; 'mlandry@landryswarr.com'; 'calvinfayard@fayardlaw.com';
'gmckernan@mckernanlawfirm.com'

**LAW OFFICES OF
ASHTON R. O'DWYER, JR.
ONE CANAL PLACE
365 CANAL STREET
SUITE 2670
NEW ORLEANS, LA 70130
Telephone: (504) 561-6561
Facsimile: (504) 561-6560**

May 16, 2006

**VIA E-MAIL**

Michael R. C. Riess, Esq.
Kingsmill, Riess, L.L.C.
201 St. Charles Avenue
Suite 3300
New Orleans, LA 70170-3300

      Re:    Colleen Berthelot, et al. vs.
              Boh Brothers Construction Co., LLC, et al.
              No. 05-4182 "K" (2)
              Relates to All Actions

Dear Mike:

      To further my E-mails to you of yesterday and earlier today, I am not going to renege on my "consent", on the record in Open Court, on Friday, May 12th, to your proposal to attempt to work with you and your client in order to get the opportunity to see evidence before it is destroyed. However, I reiterate that "the proof of the pudding will be in the eating". More particularly, I totally disagree with numbered paragraph 2, and subparts, of your proposed draft to Magistrate Wilkinson. You and your client, the latter of whom is being directed by its good customer, the U.S. Army Corps of Engineers, have turned a very simple project, i.e., digging a ditch, into something extremely complicated. I totally disagree with your client's prompting you to say ". . . the answer is "maybe", but "Boh Bros. is not sure", as well as the statement that

"It simply is impossible to just dig a trench down an additional six to seven feet (from the current trench level) to expose the concrete monoliths where they meet the sheeting. This would require the construction of a separate coffer dam that would have to surround the entirety of the project that would be both cost prohibitive and severely impact the completion of this repair project."

Where did that unsupported, conclusory statement come from? It is not only contrary to fact, but contrary to common sense. The project is currently surrounded by a coffer dam consisting of sheet piles over 65 feet in length. The original sheet piles were only 21 to 22 feet in length. Where does the notion that a new separate coffer dam may be needed come from? Just tell a few guys equipped with shovels to dig down a few more feet so they can uncover buried evidence and allow us to see it before it is destroyed and lost forever.

This issue illustrates why Hugh Lambert said we need to see your client's written instructions from the Corps of Engineers, including exchanges of E-mails, rather than what is being "filtered" through you.

Let me remind you that notwithstanding numerous requests, both on and off the record, and both orally and in writing, my clients and my experts and I have been given the opportunity to see NO connections between sheet piles and concrete monolith panels at any of the breach locations before destruction. 17th Street and London Avenue South are the only remaining locations where this evidence still exists, to my knowledge, and what you have proposed to submit in writing to the Magistrate is part of the Corps of Engineers "cover-up" of evidence, even though you may be being used, unwittingly, as a "tool" or "foil" for the Corps of Engineers.

Let me raise another issue for you to think about: I don't know whether you represent Boh Brothers or Boh Brothers' underwriters. It may be that Boh Brothers' corporate interests in following Corps of Engineers' orders, and telling you what to write, are in conflict with the interests of Boh Brothers' liability underwriters. Think about that, Mike.

Accordingly, you can advise the Magistrate that I agree, in principle, with your proposed protocol, but with the strong exceptions noted, supra, and that I am reserving all rights that my clients may have or hereafter acquire as a result of the destruction of evidence before my experts and I get to see it.

Yours very truly,


Ashton R. O'Dwyer, Jr.

AROD/vtb
cc:      All Plaintiffs' Counsel (via E-mail)

5/16/2006

# KINGSMILL RIESS, L.L.C.

## COUNSELLORS AT LAW

MARGUERITE K. KINGSMILL*
MICHAEL R. C. RIESS
JOHN M. DUBREUIL
CHARLES B. COLVIN*
THOMAS P. HENICAN
CHRISTY R. BERGERON*
CYNTHIA BOLOGNA MCINTYRE
*ALSO ADMITTED IN TEXAS

201 ST. CHARLES AVENUE
SUITE 3300
NEW ORLEANS, LOUISIANA 70170-3300
TELEPHONE (504) 581-3300
TELECOPIER (504) 581-3310

JP MORGAN CHASE TOWER
SUITE 7070
600 TRAVIS STREET
HOUSTON, TEXAS 77002
TELEPHONE (713) 222-6950
TELECOPIER (713) 222-6955

WRITER'S E-MAIL:
MRIESS@KINGSMILLRIESS.COM

May 16, 2006

**By Hand Delivery**
Honorable Joseph C. Wilkinson, Jr.
B409 Hale Boggs Federal Bldg.
500 Poydras Street
New Orleans, Louisiana  70130

Re:   *Colleen Berthelot, et al. v. Boh Bros. Construction Co., L.L.C., et al.*
United States District Court, Eastern District of Louisiana
Civil Action No. 05-4182, Section K, Magistrate (2), Cons. Katrina Canal

Dear Judge Wilkinson:

Enclosed please find the Status Report and Work Protocol for Preservation of Evidence at 17Th Street Canal T-Wall Repair Project.  As per the e-mail I received from Ashton O'Dwyer on May 16, 2006, Ashton O'Dwyer has requested that the parties insert the following language:

> "Mr. O'Dwyer has addressed correspondence to counsel for Boh Bros. objecting to what Boh Bros. plans to do, or not do, in connection with attempting to make the concrete connection between monolith panels and sheet piles available for inspection prior to destruction. Mr. O'Dwyer is reserving all rights against Boh Bros. and its' liability insurance carriers in this respect."

See attached e-mail from Mr. O'Dwyer.

Counsel for Boh Bros. has objected to putting this language into the attached Status Report/Work Protocol, as Item Nos. 1 and 2 are merely reports from undersigned counsel of Boh Bros. back to the Court on the two subject matter inquiries posed by Your Honor, with which responses plaintiffs, nor their counsel, consent to or agree.

If Your Honor has any questions, please call me.

Best regards.

Yours very truly,

*Michael R. C. Riess*

Michael R. C. Riess

S:\Boh Bros - 106\106-219 Berthelot\Correspondence\060516 Judge w Odwyer comments re work protocol.doc

Honorable Joseph C. Wilkinson, Jr.
May 16, 2006
Page 2


cc:     *(Via E-mail Only)*
        Hugh P. Lambert, Esq.
        Ashton R. O'Dwyer, Jr.
        Joseph M. Bruno, Esq.
        Ralph S. Hubbard, III, Esq.
        William D. Treeby, Esq.
        Robin D. Smith, Esq.
        Traci L. Colquette, Esq.
        Catherine J. Finnegan, Esq.

Case 2:05-cv-04182-SRD-JCW Document 454-1 Filed 05/24/06 Page 17 of 24

| | |
|---|---|
| **From:** | "Ashton O'Dwyer" <arod@odwyerlaw.com> |
| **To:** | "'Michael Riess'" <mriess@kingsmillriess.com> |
| **Date:** | Tue, May 16, 2006 3:27 PM |
| **Subject:** | RE: Status Report and Work Protocol for Preservation of Evidenceat 17th Street Canal |

T-Wall Repair Project

Mike: You've got to include a paragraph, which states: "Mr. O'Dwyer has addressed correspondence to counsel for Boh Bros. objecting to what Boh Bros. plans to do, or not do, in connection with attempting to make the concrete connection between monolith panels and sheet piles available for inspection prior to destruction. Mr. O'Dwyer is reserving all rights against Boh Bros. and its'liability insurance carriers in this respect."

-----Original Message-----
From: Michael Riess [mailto:mriess@kingsmillriess.com]
Sent: Tuesday, May 16, 2006 3:14 PM
To: jbruno@brunobrunolaw.com; tbrennan@dkslaw.com;
hlambert@lambertandnelson.com; rhubbard@lawla.com; arod@odwyerlaw.com;
wtreeby@stonepigman.com; Robin.Doyle.Smith@usdoj.gov;
Tess.finnegan@usdoj.gov; Traci.colquette@usdoj.gov
Subject: Status Report and Work Protocol for Preservation of Evidenceat
17th Street Canal T-Wall Repair Project

Dear Counsel:

Enclosed please find the revised "Status Report and Work Protocol for Preservation of Evidence at 17th Street Canal T-Wall Repair Project". Since I sent out the original draft, I have made a total of four changes, which I will summarize as follows:

1.      I have added a concluding paragraph at the end of Section 2 to confirm that plaintiffs, nor their counsel, stipulate or consent to the reporting by Boh Bros. back to the Court relating to these two items, i.e., opportunity to inspect the edges and sides of the concrete monoliths and whether the connections of the existing concrete monoliths where they meet the existing sheeting can be made available for inspection and photographing. I have made it perfectly clear to the Court and to all counsel that plaintiffs are not stipulating to this report by Boh Bros. back to Judge Wilkinson, as per his prior directive;

2.      I have added a new Section 3(B) relating to the notice requirement that shall be given by plaintiffs by 5:00 p.m. on the day before any planned site visitation. You have already received this language in a prior e-mail;

3.      As per Traci Colquette's request, I have deleted the "or" in new Section 3(B), which will mean that plaintiffs must notify via e-mail Robin Smith, Traci Colquette and Tess Finnegan of their intention to make a site visitation, so that Corps can make a representative available; and

4.      I have made the requested change to old Section 3(C), now Section 3(D), i.e., deleted the words "where people can stand and how long before moving back to a safer place", with the words "safety and safe areas".

## Ashton O'Dwyer

**From:** Bob Bartlett [nometal@bellsouth.net]
**Sent:** Wednesday, May 17, 2006 9:25 AM
**To:** O'Dwyer, Ashton
**Subject:** Response to Reiss observation protocol letter of May 16, 2006

Dear Mr. O'Dwyer;

I have several comments regarding the letter by Mr. Michael Reiss regarding preservation of evidence at the 17th Street Canal.

## Item 2: Exposing connections between monoliths and sheet piles

Extent of excavation:

Mr. Reiss explains that the monolith-to-sheet pile connection cannot be exposed because it would require a six or seven foot deep trench. I am concerned that Mr. Reiss is overstating the excavation requirement when he says that what we are asking that the trench be dug "down an additional six to seven feet (from the current trench level)." If there is already an existing 3 or 4 foot deep trench, then the trench Mr. Reiss is proposing would be 9 to 11 ft. deep. Based on our understanding of the geometry of the monolith, the trench Mr. Reiss is proposing would almost be deep enough for a person to get totally under the bottom edge of the water side of the monolith bottom.

In response I suggest that you envision the earth that must be cleared from the area in the viscinity of the sheet pile tops in order to make room for the sheet pile hammer which will extract these sheet piles. Firstly, realize that the sheet pile tops are below grade, and the sheet pile hammer is large, so the earth that must be removed is sizeable. From Mr. Reiss's description a coffer dam will not be used in conjunction with that excavation.

If this same amount of soil is removed prior to the destruction of the monoliths that would be satisfactory access, even if it would not be ideal. It would certainly be better than the no access that Mr. Reiss is suggesting. If our interpretation is correct, then this is an excavation that is expected to be part of this procedure, so I would not expect this to be "cost prohibitive and severely impact the completion of this repair project."

Demolition sequence:

As a variation of the demolition sequence that Mr. Reiss is proposing, I suggest that the monolith skirt that overlaps the tops of the sheet piles on the land side be busted up first. The upper section of the monolith and the water side skirt would ostensibly still be intact at that point, and the upper monolith would be hanging on to the sheet piles by the bond between the sheet piles and the water side skirt. This has the potential of allowing the evaluation of the bond between the water side skirt and the tops of the sheet piles.

We request that we be allowed to stand in a position that would be safe and non-interfering, but which would allow us to observe and videotape this process.

### Item 4: How many people can attend

I suggest that this item be clarified to make clear that all parties be allowed equal access.  In the past I noticed the appearance that council and experts for the USACE and others had given themselves preferential access.  Whether this was just the appearance or in reality an actual disparity in access, such an appearance should be avoided in the future.  As an example, if counsel for a party is allowed access to a particular vantage point, then that vantage point should be considered "safe and non-interfering."  I would agree that it may only be "safe and non-interfering" for one or a limited number of people, but the interested parties should be allowed equal access to rotate through the preferential observation from that "safe and non-interfering" position.

The elimination of this appearance of disparity of access should be followed not just for this particular visit or this particular site, but for all aspects of this investigation.


If you have any questions, please contact me at your convenience.

Robert D. (Bob) Bartlett, P.E.
**BARTLETT ENGINEERING**
ph. (504) 888-2122
fx. (504) 888-9890
cell (504) 837-6776

5/17/2006

## Ashton O'Dwyer

**From:**   Ashton O'Dwyer [arod@odwyerlaw.com]
**Sent:**   Thursday, May 18, 2006 11:22 AM
**To:**   'mriess@kingsmillriess.com'
**Cc:**   'dbecnel@becnellaw.com'; 'dollyno@aol.com'; 'rgharvey@bellsouth.net';
'hlambert@lambertandnelson.com'; 'rgp@rgplaw.com'; 'wimberly@nternet.com';
'jbruno@brunobrunolaw.com'; 'DAVID@brunobrunolaw.com'; 'dmartin@gainsben.com';
'khadican@gainsben.com'; 'rasmith3@bellsouth.net'; 'kreasonover@smithfawer.com';
'tdavis2@cableone.net'; 'ostamant@bellsouth.net'; 'smwiles@smithfawer.com';
'fswarr@landryswarr.com'; 'mlandry@landryswarr.com'; 'calvinfayard@fayardlaw.com';
'gmckernan@mckernanlawfirm.com'; 'tess.finnegan@usdoj.gov'; 'traci.colquette@usdoj.gov';
'robin.doyle.smith@usdoj.gov'; 'peter.myer@usdoj.gov';
'Randall.C.Merchant@mvn02.usace.army.mil'
**Subject:** Berthelot, et al. vs. Boh Brothers

Michael:

You will find attached Mr. Pazos' most recent affidavit, which addresses the "Work Protocol for Preservation of Evidence at 17th Street". I find it to be a cruel irony that Magistrate Wilkinson is requiring me to support my position(s) concerning on-going destruction of evidence in civil litigation with affidavit (s), while Boh Bros. (and/or the Corps) is allowed to "filter" their position(s) through you, unsupported by any affidavits.

By the way, where did you get your Engineering Degree, Mike?

Bottom line:

Your client will eventually have to dig down to the very same depth I want them to dig to expose the connections between the sheet pils and the monoliths in order to expose the tops of the sheet piles to remove them with the vibrator. Accordingly, why is it so "risky" or "unclear" or "uncertain" that this can be done <u>before</u> Boh Bros. begins to destroy evidence with vibrating hammers, <u>i.e.</u>, the monolith panels and the connceetions between the sheet piles and the monoliths? Someone is deceiving Magistrate Wilkinson, and it ain't me.

This is simple ditch digging. Boh Bros. isn't being asked to construct the Aswan Dam.

Yours very truly,


Ashton R. O'Dwyer, Jr.
Law Offices of Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
AROD@odwyerlaw.com

## AFFIDAVIT

**STATE OF FLORIDA**

**COUNTY OF PINELLAS**

    **BEFORE ME**, the undersigned authority, personally came and appeared:

## HECTOR V. PAZOS

who, being first duly sworn according to law, did depose and say as follows:

    I am a Registered Professional Engineer in the State of Louisiana, and a Naval Architect and Marine Engineer who has been retained by counsel for plaintiff as an expert witness in Hurricane KATRINA litigation against the United States of America. I have sufficient knowledge and experience to provide the Court with the statements made herein, which include factual background, analysis, comments, conclusions and opinions.

I.    <u>Regarding Status Report and Work Protocol for Preservation of Evidence at 17th Street Canal T-Wall Repair Project, submitted by Attorney, Michael C. Riess to Honorable Judge Wilkinson</u>

    The heading for Item 2 of the "Protocol for Preservation of Evidence" contains the following wording: "Can The Connections of the Existing Concrete Monoliths Where They Meet the Existing Sheeting at the 17th Street Canal Be Made Available For Inspection And Photographing?"

    It is surprising that this type of question would be posed in a "Work Protocol for <u>Preservation</u> of Evidence" (emphasis supplied). The earth, dirt or rip-rap which now covers the points where the sheet piles are connected in the concrete monoliths must be excavated, and the connection area exposed, in order to remove the sheet piles.

    At the present time a cofferdam installed since Katrina under the control of the USACE protects the area of the 17th Street Canal breach site. Therefore, the presumption should be that it is safe to excavate materials that were placed in the breach site as a temporary "patch" post Katrina.

1

Unless the USACE has issued some sort of warning regarding possible unsuitability of the existing cofferdam, which they ordered constructed, there should be no need to construct a separate "new" cofferdam as the Work Protocol is suggesting.

Furthermore, Boh Bros must dig down to the connections in order to remove the sheet piles. Hence, why does the Work Protocol indicate concern ("maybe") regarding the availability of the connections for simple inspection and photographing?

The Work Protocol contains contradictory statements such as: "It simply is impossible to just dig a trench down an additional six or seven feet (from current trench level) to expose the concrete monoliths where they meet the sheeting", which directly contradicts other statements, such as: "... Boh Bros must dig down to the connection in order to remove the concrete monolith and existing sheeting".

In other words, it is clear and obvious that the areas where the sheet piles and monoliths are connected need to be exposed in order to remove the sheet piles. Hence, why does the Work Protocol use the words "simply is impossible" and "maybe"?

The portions of the Work Protocol for Preservation of Evidence which give the impression that inspecting the connections of sheet piles and concrete monoliths prior to destruction of the monoliths is difficult, or impractical, should not be blindly accepted by anyone.

In order to gain an understanding of the reason(s) for the failure of the floodwalls, it would be highly beneficial to observe and record the following characteristics of the floodwall before any additional demolishing of monoliths take place:

1.      Continuity of the sheet piling.  Any discontinuity of sheet piles should be carefully recorded and investigated to analyze the cause of failure of the sheet pile interlocking system.

2.      In sections of floodwall in which the sheet piling is continuous, the angle of tilt from a vertical plane of each monolith should be measured or carefully estimated.  Any substantial variation in

2

angle of tilt of two adjacent monoliths would be an indication that a "hinge" was developed in the connection between sheet piles and monoliths.

The "hinge" condition in a particular monolith would have occurred if the connection between the sheet piles and the monolith was weaker than the same connections in adjacent monoliths. If the strength of the connections in adjacent monoliths was almost the same, then all adjoining monoliths should have tilted about the same angle.

3.   Whenever a "hinge" condition of a monolith is noticed, failure of the water stop system also probably occurred. Detailed observation of the failed water stop system (i.e., concrete housing, or lips, and water stop) should be recorded to determine if the failure was the result of any construction deficiency.

4.   Whenever a "hinge" condition of a monolith is noticed, a detailed observation of the connection and the length of the embedment of the sheet piles into the concrete should be recorded, as well as details of the reinforcing bars in the connection between the sheet pile and the monolith.

The documentation of the above important characteristics of the failed floodwalls was emphasized in several USACE publications, such as: Floodwall Material Recovery Operation, Material Recovery Plan from the 17th Street Breach, New Orleans, LA, December 12 and 13, 2005 and Sample Custody Plan, Support to the Material Sampling Programs and Mirabeau Floodwall breach, dated April 3, 2006, page 3 and 4.

Regretfully, plaintiff's representatives were not allowed to record the above information during similar activities at the Northern Breach of the London Avenue Canal during the week of April 24th, because the monoliths at that site were destroyed sometime after Good Friday, but before they could be inspected on the 24th, and because plaintiffs' representatives were not permitted to enter the trench and/or to take measurements of the tops of the sheet piles before the piles were removed. Furthermore, it appears that neither the Corps of Engineers nor the IPET representatives took no measurement of the sheet pile embedment depth in the concrete monoliths before the monoliths were destroyed.

II.   **SUMMARY**

1.      There is no valid reason for not being able to expose the connection between the concrete monoliths and the sheet piles before further destruction of monolith components.

2.      The plaintiff's representatives should be allowed to enter the trench to inspect at close range, measure and photograph the connection between sheet piles and monoliths. "Inspecting" from a 30-foot distance, as was required at the North Breach of the London Avenue Canal, is not acceptable.

3.      The Work Protocol for Preservation of Evidence does not contain any statement regarding actual "preservation of evidence", except for any videotapes or photographs that each individual may be allowed or able to take.  It is recommended that, if any demolition of monolith components takes place, selected sections of the sides of the monoliths representing samples of the water stop system (concrete lips and rubberized or PVC water stops) should be marked, preserved and stored.


_____
**HECTOR V. PAZOS, P.E.**


Sworn to and subscribed before me

this day __May 18__, 2006


_____
**NOTARY PUBLIC**

GINNY D FRAZIER
MY COMMISSION # DD469883
EXPIRES: Dec. 10, 2009
(407) 398-0153   Florida Notary Service.com

_____
**NOTARIAL SEAL:**

4