# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**COLLEEN BERTHELOT, ET AL.,**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO.  05-4182**

**BOH BROTHERS CONSTRUCTION CO.,**                      **SECTION "K"(2)**
**L.L.C., ET AL.**                                 **CONS. KATRINA CANAL**

**PERTAINS TO:05-6323-Vanderbrook**


## ORDER AND REASONS

Before the Court is a Motion to Remand to State Court (Doc. 102) filed by Richard Vanderbrook, Mary Jane Silva, James Capella, Sophia Granier, Jack Capella as the Executor of the Succession of Lilian Capella, Gregory Jackson, Peter Ascani, III and Robert G. Harvey, Sr. ("Plaintiffs") and  a  Motion to Sever (Doc. 103) filed by State Farm Fire and Casualty Company, Unitrin Preferred Insurance Company, Hartford Insurance Company of the Midwest, The Standard Fire Insurance Company and  Hanover Insurance Company ("Insurer Defendants")  which motions were taken under advisement on the papers.   This matter was removed by the Board of Commissioners for the Orleans Levee District ("OLD") on December 2, 2005 based on federal officer jurisdiction under 28 U.S.C.  § 1442(a)(1) and on federal question jurisdiction under 28 U.S.C. § 1331.  The Insurer Defendants[1] joined in the removal relying on a number of legal theories including the omnibus jurisdiction provided under § 1442(a)(1) and diversity jurisdiction under 28 U.S.C. § 1332 contending that  the claims against the Defendant Insurers were fraudulently and improperly joined with the claims against OLD, the only non-diverse party.

---

[1] As noted, these parties are State Farm Fire and Casualty Company, Unitrin Preferred Insurance Company (improperly named as Kemper Insurance Company), Hartford Insurance Company of the Midwest (improperly named as Hartford Insurance Company), The Standard Fire Insurance Company (improperly named as Travelers Insurance Company and St. Paul Travelers Insurance Company) and  Hanover Insurance Company ("the Insurers").

Plaintiffs herein seek the remand of this case based on their contention that neither is OLD a "federal officer" either by statute or applicable jurisprudence and case law nor does this case concern a federal question. The Defendant Insurers seek severance of these claims and the adjudication of this matter in federal court.   Having reviewed the pleadings, memoranda and the relevant law, the Court finds that it has no subject matter jurisdiction over the claims against OLD and that the claims against OLD were fraudulently or improperly misjoined such that they shall be severed and shall be heard by this Court for the reasons that follow.

**Background**

This joint petition for damages[2] was filed on October 14, 2005 in Civil District Court for the Parish of Orleans by Plaintiffs  against OLD and the Insurer Defendants.  The claims arise out of damage caused by the failure of the 17th Street Canal floodwall in the aftermath of Hurricane Katrina.

As to OLD, plaintiffs contend that OLD is statutorily charged with the maintenance of the subject canal, which duties include inspection and monitoring of the levees during storms**.**  (Petition ¶ 5). Specifically, Plaintiffs contend that OLD breached its duties by failing to correct the break or warn others of the impending water intrusion after the concrete outfall canal levee wall broke on August 29, 2005.  (Petition, ¶6).   Plaintiffs contend that they suffered water damage caused by the sudden break in the concrete outfall levee.  (Petition,  ¶ 7).  Thus, as a result of the alleged breach of duty by OLD in "failing to discover, correct and notify others including Petitioners of the break in the levee wall," Plaintiffs seek damages. (Petition, ¶8).

---

[2]There is no request for class certification in this case.

2

As to the Insurers, Plaintiffs contend that they have refused to adjust or pay for a covered loss  as the water damage suffered by Plaintiffs was due to a sudden break in the concrete wall of the levee outfall canal; that that loss is not described in any policies as an excluded loss; and, thus, Insurers' denial of coverage is arbitrary and capricious entitling Plaintiffs to additional damages as provided by statute.  (Petition, ¶10).  In addition, Plaintiffs contend that the insurance policies are adhesion contracts such that the vague exclusion provisions contained in these policies are unreasonably favorable to the Insurers rendering the exclusions void. (Petition, ¶11).

In the Court's decision rendered yesterday with respect to *Robert Harvey, et al. v. The Board of Commissioners for the Orleans Levee District, Parish of Orleans*, C.A. No. 05-45468, the Court set out in great detail the relationship between OLD and the Corps of Engineers ("the Corps").  The Court will reiterate those findings herein:

### The Statutory Background of the Relationship between the Corps and OLD

The London Avenue and 17th Street Outfall Canals are components of the National Flood Control Program authorized by Congress and implemented by the Army Corps of Engineers.  In October of 1965, Congress passed Public Law 89-298 authorizing "hurricane-flood protection on Lake Pontchartrain . . . in accordance with the recommendations of the Chief Engineers . . .."  (OLD's Exhibit 1, at p.1077 (Public Law 89-298)).  Public Law 102-104 was passed in 1991, instructing that:

> . . .with the funds appropriated herein and hereafter for the Lake Pontchartrain and Vicinity, Louisiana, Hurricane Protection project, **the Secretary of the Army**, is authorized and directed to provide parallel hurricane protection along the entire lengths of the Orleans Avenue and London Avenue Outfall Canals by raising levees and improving flood protection works along and parallel to the entire lengths of the outfall canals and other pertinent work necessary to complete an entire parallel protection system and award continuing contracts for construction of this parallel protection. . ..."OLD's Exhibit 2, at p.514 (Public Law 102-104)(emphasis added).

Congress, in 1992, enacted Public Law 102-377, which states: "the **Secretary of the Army**, acting through the Chief of Engineers, is **directed** to incorporate

parallel protection along the Orleans and London Avenue Outfall Canals into the authorized Lake Pontchartrain and Vicinity, Louisiana, Hurricane Protection project . . ..(OLD's Exhibit 3, at p.1320 (Public Law 102-377)(emphasis added)).   Public Law 103-126 was promulgated in 1993, providing that "the **Secretary of the Army, acting through the Chief of Engineers**, is directed to use $24,119,000 of the funds appropriated herein to continue the Lake Pontchartrain and Vicinity, Louisiana, Hurricane Protection project, including continued construction of parallel protection along the Orleans and London Avenue Outfall Canals . . .."  (Exhibit 4, at p.1316 (Public Law 103-126)(emphasis added)).

Section701a-1 of Title 33 of United States Code which concerns flood control by the United States mandates that "improvements of rivers and other waterways for flood control and allied purposes **shall** be **under the direction of the Secretary of the Army and supervision of the Chief of Engineers . . ..**"(emphasis added).  33 U.S.C. §701b specifies that "[f]ederal investigations and improvements of rivers and other waterways for flood control and allied purposes **shall** be under the **jurisdiction** of the **Secretary of the Army and supervision of the Chief of Engineers**." (Emphasis added).

In accordance with the above Congressional directives, the United States Army Corps of Engineers (hereinafter "Corps") designed and installed the flood walls for the London Avenue and 17th Street Outfall Canals. (OLD's Exhibit 5-B(Excerpts from Design Memorandum 19A for London Avenue Outfall Canal); OLD's Exhibit 5-C (Excerpts from Design Memorandum 20 for 17th Street Outfall Canal).   The Corps issued the specifications and bid packages for the construction of the London Avenue and 17th Street Outfall Canals. (OLD'S Exhibit 5-E (Excerpts from Corps' Specifications and Solicitations for Bid on London Avenue Outfall Canal); OLD's Exhibit 5-F (Excerpts from Corps' Specifications and Solicitations for Bid on 17th Street Outfall Canal)).   These levees were built to withstand a "Standard Project Hurricane" (hereinafter "SPH") formulated by the Corps. (OLD's Exhibit 5-D, at p. xi (Excerpts from Design Memorandum Vol. 13).    Any maintenance performed by OLD on the levees was done under the supervision and in accordance with regulations promulgated by the Corps. (OLD's Exhibit 5, at ¶¶6-7 (Spencer Affidavit); OLD's  Exhibit 6, at ¶3 (Hearn Affidavit);  33 U.S.C. §701c (providing that a state or political subdivision shall assure that it will "maintain and operate all works after completion in accordance with the regulations prescribed by the Secretary of the Army.").   The relevant regulations  for maintenance can be found at 33 C.F.R .208.10.

33 U.S.C. §701c provides, in pertinent part, that a state or political subdivision shall assure that it will "maintain and operate all works after completion in accordance with the regulations prescribed by the Secretary of the Army."  33 C.F.R. 208.10 further provides  instructions on how OLD is to maintain the flood control structures under the Corps' jurisdiction.  This provision instructs OLD to make sure there is:

(I) No unusual settlement, sloughing or material loss . . .; (ii) No caving has occurred . . .; (iii) No seepage, saturated areas, or sand

4

boils are occurring; (iv) Toe drainage systems and pressure relief wells are in good working condition . . .; (v) Drains through the levees and gates on said drains are in good working condition; (vi) No revetment work or riprap has been displaced, washed out, or removed; (vii) No action is being taken . . . which will retard or destroy the growth of sod; (viii) Access roads to and on the levee are being properly maintained; (ix) Cattle guards and gates are in good condition; (x) Crown of levee is . . . well shaped and maintained; (xi) There is no unauthorized grazing or vehicular traffic on the levees; (xii) Encroachments are not being made on the levee right-of-way which might endanger the structure or hinder it proper and efficient functioning during times of emergency.

33 C.F.R. 208.10(b)(1)(I)-(xii).   This federal regulation mandates that the inspections "shall be made immediately prior to the beginning of flood season; immediately following each major high water period, and otherwise at intervals not exceeding 90 days . . .." 33 C.F.R 208.10(b)(1).  Further, it requires that the Corps "furnish local interests with an Operation and Maintenance Manual for each completed project . . .." 33 C.F.R 208.10(a)(10). OLD also contends that "detailed guidance for state agencies relating to operating federal flood control structures including specific inspection, reporting and maintenance procedures is set forth in the Corps' "Operations and Maintenance Manual."   No copy of these "detailed instructions" have been provided to the Court.  33 C.F.R 208.10.

Federal law mandates that "improvements of rivers and other waterways for flood control and allied purposes **shall** be **under the direction of the Secretary of the Army and supervision of the Chief of Engineers . . .."** 33 U.S.C. §701a-1 (emphasis added).  Federal law further specifies that "[f]ederal investigations and improvements of rivers and other waterways for flood control and allied purposes **shall be under the jurisdiction of the Secretary of the Army and supervision of the Chief of Engineers.**" 33 U.S.C. §701b (emphasis added).   Federal law even prohibits OLD from initiating any flood control project without prior federal approval. 33 U.S.C. §701 b-13.

**Contracts Between the Corps of Engineers and OLD and Hearn Affidavit**

Given that background, as detailed by OLD in its own filings, the Court has also reviewed the relevant contracts upon which OLD bases its removal and the affidavits of Max L. Hearn, the Executive Director of the Board of the Commissioners of OLD (OLD's Exhibit 6)  accompanying those documents and of

5

Stevan G. Spencer, P.E., the Chief Engineer of OLD.  In essence these contracts which have been entered into over the course of about 40 years entail OLD assuring the Army Corps of Engineers that it has the authority and capability to furnish the non-federal cooperation required by the federal legislation authorizing the various projects which have been undertaken for flood protection for this area and OLD undertaking to pay for a percentage of the work and to maintain the work after its completion.   In particular, in the last provided contract of June 21, 1985, it states, in relevant part:

> NOW, THEREFORE, the Board of Commissioners of the Orleans Levee District, **in consideration of the construction to be done by the United States of America** on the High Level Plan, agrees that it will, without cost to the United States:
>
> > a.      Provide all lands, easements, and rights- of-way, including borrow and spoil disposal areas necessary for construction, operation, and maintenance of the project;
> >
> > b.      Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project; and
> >
> > c.      Hold and save harmless the United States free from damages due to the construction works;
> >
> > d.      Bear 30 percent of the first costs. . . .
> >
> > f.      Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;
> >
> > g.      Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls and stoplog structures. . .;
> >
> > h.      Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly;

6

I.      Comply with the applicable provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646; and

j.      Assume the responsibility to pay its share of the non-Federal project costs. . . ;

k.      As a minimum adhere to the payment schedule of deferred payment plan, . . .

l.      Recognizes that subsection (b),(c) and (e) of Section 221 of the Flood Control Act of 1970, Public Law 910611 shall apply to paragraph (k) above.

m.      Comply with Section 601 of Title VI of the Civil Rights Act of 1964, Public Law 880352 that no person shall be excluded from participation in, denied the benefits of, or subjected to discrimination in connection with the Project on grounds of race, creed, or national origin. . . .

(OLD's Exhibit 6H, pp. 10-11).

It is clear then from this document that OLD was the beneficiary of a project over which it had no construction duties of any sort.  It partnered with the United States government as provided for by federal law to pay for a portion of the construction and to hold the government "free from damages due to the construction works." In addition, it agreed to maintain these sites in compliance with regulations of the government after their completion.

Mr. Hearn's affidavit simply verifies the number of such agreements that have been entered into between the United States and OLD and reiterates that it did agree to maintain the projects.  Mr. Spencer avers that:

1.      The Corps conducts inspection and construction management during the construction of flood control structures to ensure that the flood control structures are built in accordance with the Corps' designs and specifications.

2.      The Corps, at the completion of construction work on a flood control project, accepts the work as being in compliance with the Corps' designs and specifications.

3.      The Corps requires OLD to maintain the levees in accordance with the assurance agreements.

7

4.    The Corp has given OLD a rating of "Outstanding" for the years 2000-2004 after it has conducted its annual inspection of the levees and flood control structure in Orleans Parish to determine if the levees are maintained in accordance with the Corps' regulations.

5.    "The Corps would review all submissions and, as it found necessary, revise, reject, modify or make suggestions to any proposed designs, specifications or plans for levees/flood control structures that were submitted by independent consultants to the Corps."[3]

6.    "The Corps would not use any designs, specifications or plans for levees/flood control structures from any independent consultants on a flood control project without the Corps carefully reviewing, analyzing, approving and signing off on said designs, specifications or plans."

(Order and Reasons entered May 31, 2006 with respect to a Motion and Incorporated Memorandum to Remand (Doc. 96) filed in *Robert Harvey, et al. v. The Board of Commissioners for the Orleans Levee District, Parish of Orleans*, C.A. No. 05-45468, pp. 1-7.)

With this as the statutory and factual background as attested to by OLD, the Court will turn to the Motion to Remand filed by Plaintiffs.

---

[3]Note, this specific averment makes no mention of the OLD seeking a design change or the like.

**ANALYSIS**

**Motion to Remand**

Plaintiffs maintain that the bases for removal relied upon by OLD are not valid and seek the remand of this matter to the Civil District Court for the Parish of Orleans.  In particular, they argue that their claims rest solely on Louisiana law and the duties owed to them under Louisiana law by virtue of the obligations set forth under La. Rev. Stat. 38:281, La. Rev. Stat. 38:301(A)(1)  which allows  the levee boards of the State of Louisiana, *inter alia,* to construct and maintain levees and La. Rev. Stat. 38:301(B)(1) which provides that care and inspection of levees devolve on the commissioners, assisted by such inspectors and watchmen as may be appointed pursuant to regulations which the boards are hereby authorized to adopt.  *Id.*   In addition, Plaintiffs rely on the Louisiana concept of *garde* found at La. Civ. Code art. 2317 as OLD had control over a thing which defect created an unreasonable risk of injury to others, and negligence under La. Civ. Code art. 2315.

Plaintiffs in essence contend that  OLD's failing to repair an inherently faulty levee system, of which it had actual knowledge, making the breach foreseeable and leaving the city during a storm:

> would expose lives and property to water intrusion since the ***only*** entity with men and equipment responsible for repairing levee breaches, "***the levee board''***, had abandoned its post.  In this instance if the levee breach, when it first occurred, was only 20 feet in width as reported, then it is more probable than not that the well trained and experience 200 plus levee workers with massive amounts of equipment could have plugged or minimized the breach saving hundreds of lives and billions of dollars in property damage.

(Motion and Incorporated Memorandum to Remand, Doc. 102 at 13-14.)

As this case was removed essentially based on the  same legal arguments raised in *Robert Harvey, et al. v. The Board of Commissioners for the Orleans Levee District, Parish of Orleans*, C.A. No. 05-45468, the Court adopts the legal reasoning and analysis set forth in its opinion of May

31, 2006, and restates it herein to the degree it is applicable.  The salient difference in this analysis is that in the instant case, Plaintiffs have alleged a different basis for the state law claim.  The Court will address this difference; however, it is a "difference" that does not change the outcome.

The burden of proof for establishing federal jurisdiction is placed upon the party seeking removal.  *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1998) ( *citing Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921))."If the right to remove is doubtful, the case should be remanded." *Ryan v. Dow Chemical.,* 781 F.Supp. 934, 939 (E.D.N.Y.1992) (citations omitted); *see Butler v. Polk,* 592 F.2d 1293, 1296 (5th Cir.1979).  As this Court has previously noted in *Lightfoot v. Bellsouth Telecommunications, Inc*., 2004 WL 2381533 (E.D.La.,2004):

> A determination as to whether a cause of action presents a federal question, and therefore subject to removal in this context, depends upon the allegations made on the face of the plaintiff's well-pleaded complaint. *Carpenter v. Wichita Falls Indep. School Dist.,* 44 F.3d 362, 366 (5th Cir.1995). A federal defense to a state law claim does not create removal jurisdiction. *Aaron v. National Union Fire Ins. Co.,* 876 F.2d 1157, 1161 (5th Cir.1989), *cert. denied,*493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). A defendant may not remove a case on the basis of an anticipated or even inevitable federal defense, but instead must show that a federal right is an essential element of the plaintiff's cause of action. *Gully v. First Nat'l Bank,* 299 U.S. 109, 111, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936); *Carpenter,* 44 F.3d at 366; *see Sears v. Chrysler Corp.,* 884 F.Supp. 1125 (E.D.Mich.1995).

*Id.* at *2. There are exceptions to this rule; one example is in the context of ERISA, where federal law so completely preempts a field of state law, a plaintiff's complaint must be recharacterized as stating a federal cause of action. *Aaron,* 876 F.2d at 1161, citing *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).  This doctrine does not convert legitimate state claims into federal ones, but rather reveals the suit's necessary federal character. *Carpenter,* 44 F.3d at 367 (5th Cir.1995).

As stated in *Aquafaith Shipping, Ltd. v. Jarillas,* 963 F.2d 806  (5th Cir.1992):

> When a court performs its duty to verify that it has jurisdiction, it may be required to survey the entire record, including the defendant's pleadings, and base its ruling on the complaint, on undisputed facts, and on its resolution of disputed facts. *See Williamson v. Tucker,* 645 F.2d 404, 412-13 (5th Cir.), *cert. denied,*454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Calvert v. Sharp,* 748 F.2d 861, 862-63 (4th Cir.1984), *cert. denied,*471 U.S. 1132, 105 S.Ct. 2667, 86 L.Ed.2d 283 (1985), *overruled on other grounds by West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). *See generally*Fed.R.Civ.P. 12(b)(1). The purpose of this careful survey, however, is to shed light on the plaintiff's pleadings. The court's focus is on the plaintiff's pleadings, not the defendant's.

*Id.* at 808.   For the reasons that follow, the Court finds that OLD's attempts to circumvent the "well-pleaded complaint" doctrine are without merit; a federal defense to a state law claim does not create removal jurisdiction, and a state law claim is in essence all that is present in this petition.

As noted, OLD has chosen to remove these cases based on federal officer jurisdiction under 28 U.S.C.  § 1442(a)(1) and federal question jurisdiction under 28 U.S.C. § 1331.  The Court will first examine the applicability of federal officer jurisdiction.

### Federal Officer Jurisdiction

Section 1442(a)(1) of Title 28 of the United States Code provides, in pertinent part:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office...

*Id.*   Thus, by virtue of this federal statute, when a "person" "acting under" federal officers can present a colorable "government contractor defense", the case is removable by such "person." The power to remove is absolute, provided the proper procedures are followed.  *Ryan v. Dow Chemical*,

781 F.Supp. 932, 939 (E.D.N.Y. 1992) ( *citing Willingham v. Morgan,* 395 U.S. 402, 406, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)).

In order to remove a state law claim under this statute, as a federal officer, or "person" acting under him, the removing party must "(1) demonstrate that it acted under the direction of a federal officer, (2) raise a federal defense to the plaintiffs' claims and (3) demonstrate a causal nexus between plaintiffs' claims and acts it performed under color of federal office." *Mesa v. California,* 489 U.S. 121, 131-132, 109 S.Ct. 959, 966, 103 L.Ed.2d 99 (1989); *Crocker v. Borden, Inc.,* 852 F.Supp. 1322, 1325 (E.D.La.1994)*; Pack v. AC and S, Inc.,* 838 F.Supp. 1099, 1101 (D.Md.1993).

As neither party has argued that OLD is not a "person" as contemplated, for purposes of this analysis the Court shall assume that it is.[4]  It should be noted however that  a "levee district" is defined as "political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, and all other things incidental thereto within its territorial limits." La Rev. Stat. 38:281(6).  It is this state law duty that is at the crux of the instant suit.

Unlike *Harvey*, where the focus was on design and construction,  a fair reading of Plaintiffs' petition is that OLD failed to inspect and monitor of the levees during storms**.**  (Petition ¶ 5).  As a result, after the breach, OLD  failed to correct the break or warn others of the impending water intrusion because of its being absent from its posts.   Nonetheless, these state law "duties" are not sufficient to trigger OLD being entitled to the government contractor defense.

---

[4]        A corporation had been recognized as a "person," as that term is contemplated by 28 U.S.C. § 1442(a)(1) by the Fifth Circuit. *Peterson v. Blue Cross/Blue Shield of Texas,* 508 F.2d 55 (5th Cir.1975). *Peterson* involved a malicious prosecution case brought by a physician against corporate defendants for his alleged wrongful suspension under the Medicare program. *Id.* at 57. Defendants removed the case under § 1442(a)(1), alleging federal officer removal jurisdiction. The Court stated that "[i]t is indisputable that each of the defendants was either an 'officer of the United States or an agency thereof, or *person* acting under him." ' *Id.* (emphasis added).

In *Dalrymple v. Grand River Dam Authority*, 932 F. Supp. 1311 (N.D. Okla. 1996), the Grand River Dam Authority ("GRDA") which was a conservation and reclamation district within the State of Oklahoma created by 82 OKLA. Stat. Ann. § 861, operated the Pensacola Dam pursuant to a license issued by the Federal Energy Regulatory Commission ("FERC"). It was sued by plaintiffs alleging claims of inverse condemnation, consequential damage to private property for public use, strict liability, trespass, nuisance and injunction against GRDA for damage sustained to their property as a result of the release of water from the Pensacola Dam by GRDA. GRDA removed the suit to federal court invoking § 1442(a)(1) claiming that it was acting pursuant to the direction of a federal officer when it released the water. However, that district court rejected this claim. It stated:

> GRDA has offered no evidence that it is either producing goods or performing labor pursuant to a government contract. Rather GRDA owns and operates its own facility. The mere fact that it is licensed by FERC does not transform it into a government contractor for purposes of securing federal immunity.

*Id.* at 1313. Likewise, there is no proof that it produced goods or performed labor pursuant to a government contract as contemplated by this statute.

More particularly, however, OLD failed to satisfy the first prong under *Mesa*–that is the need to act under the direct and detailed control of an officer of the United States. *See Edwards v. Blue Cross/Blue Shield of Texas*, 2005 WL 1240577 at *4 and cases cited therein. With respect to a claim that OLD acted under the direction of a federal officer with respect to the maintenance of the subject floodwall, it is clear that the Corps did not exercise the day-to-day involvement or oversight over the floodwalls and levees maintenance that would trigger the applicability of § 1441(a)(1) as required under the first prong of *Mesa*.

13

This case is not at all analogous to *Miles v. Sewerage and Water Board of New Orleans*, 2004 WL 1974527 (E.D.La. Aug. 10, 2004) where an actual government contractor, James Construction Group, performing construction of a water system to government specifications, proved that the Corps had direct and detailed control over its work and performed daily inspections to insure that it was being performed in compliance with specifications.  OLD is **not** a contractor, it is a participant in a flood control program in which it had delineated duties to maintain the levees. Moreover, the affidavit presented of Mr. Spencer's concerning the Corps' involvement in the oversight of the maintenance is glaringly silent as to any participation the Corps had other than the yearly inspections for which OLD received "Outstanding" ratings for the years 2000 through2004. No manual with any specifics as to how OLD was to perform its enumerated duties under 33 C.F.R. 208.10(b)(1)(I)-(xii) has been presented.  Thus, OLD did not act under the direction of a federal officer and it is not entitled to remove this case under § 1441(a)(1).  OLD may have a defense based on the federal laws noted above; however, a federal defense to a state law claim does not create removal jurisdiction.

**Federal Question Jurisdiction: 28 U.S.C. § 1331**

OLD also contends that federal question jurisdiction can be invoke where a state law claim implicates significant federal issues relying on *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 125 S. Ct. 2362 (2005).  "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude and hope of uniformity that a federal forum offers on federal issues." *Id* at 2367.  *Grable*

concerned a former landowner who brought quiet title action in state court against a tax sale

purchaser, alleging that the Internal Revenue Service ("IRS") had given him inadequate notice of

the sale.  The Supreme Court cautioned:

> But even when the state action discloses a contested and substantial federal question,
> the exercise of federal jurisdiction is subject to a possible veto.  For the federal issue
> will ultimately qualify for a federal forum only if federal jurisdiction is consistent
> with congressional judgment about the sound division of labor between state and
> federal courts governing the application of § 1331.  Thus, *Franchise Tax Bd. [of Cal.
> v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1,  103 S. Ct.
> 2841 (1983)]  explained that the appropriateness of a federal forum to hear an
> embedded issue could be evaluated only after considering the "welter of issues
> regarding the interrelation of federal and state authority and the proper management
> of the federal judicial system."  *Id*. at 8, 103 S. t. 2841.  Because arising-under
> jurisdiction to hear a state-law claim always raises the possibility of upsetting the
> state-federal line drawn (or at least assumed) by Congress, the presence of a disputed
> federal issue and the ostensible importance of a federal forum are never necessarily
> dispositive; there must always be an assessment of any disruptive portent in
> exercising jurisdiction. . . .

*Id.* at 2367-68.  The Supreme Court then noted that for that reason, a single, precise, all-embracing

test for jurisdiction over federal issues embedded in state-law claims.  The Court framed the issue

as "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial,

which a federal forum may entertain without disturbing any congressionally approved balance of

federal and state judicial responsibilities."  *Id* at 2368.

Thus, the Supreme Court has created a two-part test.  The first requirement is that the

plaintiff's state-law claim necessarily raises a federal issue, actually disputed and substantial; the

second requirement is whether a federal court may entertain the lawsuit without "disturbing any

congressionally approved balance of federal and state judicial responsibilities."  This determination

rests on (1) the importance of having a federal forum decide the issue and (2) the effect of exercising

jurisdiction on the balance of federal-state division of responsibilities. *Evans v. Courtesy Chevrolet II, LP*, 423 F. Supp.2d 669, 670-71 (S.D. Tex. 2006)

In *Grable* the adequacy of notice given by the IRS under federal law was pivotal in the determination of the case–thus there was a disputed and substantial federal issue implicated. Here, the issue presented is whether OLD, a state administrative agency, performed the duties incumbent upon it **under state law**. OLD's defense appears to be that under Congressional dictates concerning flood protection, it did all that it could do. However, the meaning or interpretation of the Flood Control Program and its provisions do not appear to be disputed. The claims against OLD will not pivot upon whether the Corps performed its federal duties correctly; the issue will be whether OLD had the ability to act apart from the Corps or in concert therewith to fulfill its state law duties. The provisions of the federal National Flood Control Program very well may serve as OLD's defense, but that fact does not create a basis for this Court to exercise jurisdiction over OLD.

In addition, the Court finds that to exercise jurisdiction over this case would disturb the balance of federal and state judicial responsibilities. The claims raised arise in the context of state law; if that law is pre-empted as OLD contends, a state court shall so find. That alleged pre-emption does not create jurisdiction. This conflict is between citizens of the State of Louisiana and a state political subdivision. There is no overarching federal concern as this case is brought making the need for a federal forum to decide the matter of little importance and would upset the balance of federal-state division of responsibilities.

In *Evans v. Courtesy Chevrolet II, LP*, 423 F. Supp.2d 669 (S.D. Tex. 2006), Evans alleged omissions and misrepresentations in a retail installment sales contract relying exclusively and explicitly **only** on state law. Courtesy Chevrolet relied on *Grable* for the proposition that Evans'

claims arose under federal law under the federal Truth in Lending Act ("TILA") and accompanying regulations and removed the matter claiming federal jurisdiction under 28 U.S.C. § 1331. The district court granted Evans' motion to remand finding that allowing federal jurisdiction in cases arising out of disputes over disclosures in installment contracts for purchasing cars would disturb the congressionally approved balance of federal and state judicial responsibilities, therefore, Evans was not entitled to remove the matter. *See Samuel Trading LLC v. The Diversified Group, Inc.*, 2006 WL 560311 (N.D.Ill. 2006). Based on the foregoing, the Court finds that it does not have subject matter jurisdiction over OLD; therefore, the next question is whether the claims against OLD should be severed and whether there is an independent basis of jurisdiction over the Insurer Defendants.

**Motion to Sever**

The Insurers of plaintiffs, as previously noted, State Farm Fire and Casualty Company, Unitrin Preferred Insurance Company, Hartford Insurance Company of the Midwest, The Standard Fire Insurance Company and Hanover Insurance Company ("Insurer Defendants") filed the subject Motion to Sever. In the Notice of Removal, they alleged an independent ground for removal–that is diversity of jurisdiction as Plaintiffs' claims against the Insurer Defendants satisfy the requirements for diversity jurisdiction, 28 U.S.C. § 1332(a), and are fraudulently and improperly joined with the claims against the Orleans Levee District. There is no dispute that these Insurer Defendants are indeed diverse. On that basis, they seek severance of the claims and ask the Court to exercise jurisdiction over this matter.

The gravamen of this motion is that the allegedly tortious conduct of OLD is entirely separate and distinct from the alleged breaches of contract by the Insurer Defendants. There are no allegations that OLD and the Insurer Defendants acted in concert. Nor are the Insurer Defendants the insurer of the alleged tortfeasor; they are not responsible for OLD's conduct. These claims are based on entirely different legal theories. Plaintiffs contend that their policies of insurance should provide coverage and the occurrence of the breaking of the floodwall and subsequent water damage does not trigger the exclusions upon which the Insurer Defendants have denied coverage. Fault is irrelevant with respect to the coverage afforded under the homeowners' policies involved herein; the only issue with respect to the claims against the Insurer Defendants is whether the contracts provide coverage for the losses sustained.

Thus, the question becomes whether these claims were fraudulently misjoined. In *Tapscott v. MS Dealer Serv. Corp.* 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000), the Eleventh Circuit found that where plaintiffs claims against different defendants have no real connection, the claims should be severed from one another. In that case, one group of plaintiffs sued a group of non-diverse defendants for fraud arising from the sale of automobile service contracts. In the same suit, another group of plaintiffs sued an entirely separate group of diverse defendants for fraud arising from the sale of service contracts covering retail products. Noting that joinder of defendant under Fed. R. Civ. Pro. 20 requires both (1) a claim for relief asserting joint, several, or alternative liability and arising from the same transaction, occurrence or series of transactions or occurrences and (2) a common question of law or fact, the court affirmed the district court's finding that as there was no allegation of joint liability or any

18

allegations of conspiracy, the two groups had been improperly joined.  Furthermore it noted that the transaction involved in the automobile class were wholly distinct from those in the retail class.

In *Smith v. Nationwide Mutual Insur. Co.*, 286 F. Supp. 777 (S.D. Miss. 2003), the court applied *Tapscott* to find that plaintiffs' negligence claims against tortfeasors were fraudulently misjoined with contract claims against plaintiff's insurers. In discussing *In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002), it noted that "[t]he Fifth Circuit concluded that misjoinder should not be allowed to defeat diversity jurisdiction, particularly when misjoinder may be as fraudulent as the joinder of a resident against whom a plaintiff has not possibility of a cause of action.  This matter goes to the court's jurisdiction and to [a defendant's] right to establish federal jurisdiction following removal." *Id.* at 781.

This Court finds that the claims against OLD sound in negligence under Louisiana tort law whereas the claims against the Insurer Defendants rest on contract interpretation and have virtually no relation to the claims against OLD.  As such, the Court finds that the Motion to Sever should be granted, and the Court shall exercise its diversity jurisdiction over Plaintiffs' claims against the Insurer Defendants.  Accordingly,

**IT IS ORDERED** that the Motion to Sever (Doc. 103) is **GRANTED** such that the claims against the Board of Commissioners for the Orleans Levee District are **SEVERED** from the claims against  State Farm Fire and Casualty Company, Unitrin Preferred Insurance Company, Hartford Insurance Company of the Midwest, The Standard Fire Insurance Company and  Hanover Insurance Company.

**IT IS FURTHER ORDERED** pursuant to 28 U.S.C. 1447(c), there being no basis for subject matter jurisdiction, that the Motion to Remand is **GRANTED**, in part, as to  the Board of

Commissioners for the Orleans Levee District and is **REMANDED** to the Civil District Court for the Parish of Orleans and is **DENIED,** in part, as to State Farm Fire and Casualty Company, Unitrin Preferred Insurance Company, Hartford Insurance Company of the Midwest, The Standard Fire Insurance Company and Hanover Insurance Company.

New Orleans, Louisiana, this  1st  day of June, 2006.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**

20