UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COLLEEN BERTHELOT, ET AL., | CIVIL ACTION |
| VERSUS | NO. 05-4182 |
| BOH BROTHERS CONSTRUCTION CO., L.L.C., ET AL. | SECTION "K"(2) CONS. KATRINA CANAL |

PERTAINS TO: 05-4568

## ORDER AND REASONS

Before the Court is a Motion and Incorporated Memorandum to Remand (Doc. 96) filed in *Robert Harvey, et al. v. The Board of Commissioners for the Orleans Levee District, Parish of Orleans*, C.A. No. 05-4568. The instant suit was filed on September 24, 2005 as a petition for damages arising out of collapse of the 17th Street Canal floodwalls in the aftermath of Hurricane Katrina and seeks class certification in the Civil District Court for the Parish of Orleans for damages. The matter was removed by the Board of Commissioners for the Orleans Levee District ("OLD") on October 5, 2005, based on federal officer jurisdiction under 28 U.S.C. § 1442(a)(1) and on federal question jurisdiction under 28 U.S.C. § 1331. Plaintiffs herein seek the remand of this case based on their contention that neither is OLD a "federal officer" either by statute or applicable jurisprudence and case law nor does this case concern a federal question. Having reviewed the pleadings, memoranda and the relevant law, the Court finds merit in the motion.

**Background**

**The Statutory Background of the Relationship between the Corps and OLD**

The London Avenue and 17th Street Outfall Canals are components of the National Flood Control Program authorized by Congress and implemented by the Army Corps of Engineers. In

October of 1965, Congress passed Public Law 89-298 authorizing "hurricane-flood protection on Lake Pontchartrain . . . in accordance with the recommendations of the Chief Engineers . . .." (OLD's Exhibit 1, at p.1077 (Public Law 89-298)). Public Law 102-104 was passed in 1991, instructing that:

> . . .with the funds appropriated herein and hereafter for the Lake Pontchartrain and Vicinity, Louisiana, Hurricane Protection project, **the Secretary of the Army**, is authorized and directed to provide parallel hurricane protection along the entire lengths of the Orleans Avenue and London Avenue Outfall Canals by raising levees and improving flood protection works along and parallel to the entire lengths of the outfall canals and other pertinent work necessary to complete an entire parallel protection system and award continuing contracts for construction of this parallel protection. . . ."

OLD's Exhibit 2, at p.514 (Public Law 102-104)(emphasis added).

Congress, in 1992, enacted Public Law 102-377, which states: "the **Secretary of the Army**, acting through the Chief of Engineers, is **directed** to incorporate parallel protection along the Orleans and London Avenue Outfall Canals into the authorized Lake Pontchartrain and Vicinity, Louisiana, Hurricane Protection project . . ..(OLD's Exhibit 3, at p.1320 (Public Law 102-377)(emphasis added)). Public Law 103-126 was promulgated in 1993, providing that "the **Secretary of the Army, acting through the Chief of Engineers**, is directed to use $24,119,000 of the funds appropriated herein to continue the Lake Pontchartrain and Vicinity, Louisiana, Hurricane Protection project, including continued construction of parallel protection along the Orleans and London Avenue Outfall Canals . . .." (Exhibit 4, at p.1316 (Public Law 103-126)(emphasis added)).

Section 701a-1 of Title 33 of United States Code which concerns flood control by the United States mandates that "improvements of rivers and other waterways for flood control and allied purposes **shall be under the direction of the Secretary of the Army and supervision of the Chief of Engineers . . .**."(emphasis added). 33 U.S.C. §701b specifies that "[f]ederal investigations and

2

improvements of rivers and other waterways for flood control and allied purposes **shall be under the jurisdiction of the Secretary of the Army and supervision of the Chief of Engineers.**" (Emphasis added).

In accordance with the above Congressional directives, the United States Army Corps of Engineers (hereinafter "Corps") designed and installed the flood walls for the London Avenue and 17th Street Outfall Canals. (OLD's Exhibit 5-B(Excerpts from Design Memorandum 19A for London Avenue Outfall Canal); OLD's Exhibit 5-C (Excerpts from Design Memorandum 20 for 17th Street Outfall Canal). The Corps issued the specifications and bid packages for the construction of the London Avenue and 17th Street Outfall Canals. (OLD'S Exhibit 5-E (Excerpts from Corps' Specifications and Solicitations for Bid on London Avenue Outfall Canal); OLD's Exhibit 5-F (Excerpts from Corps' Specifications and Solicitations for Bid on 17th Street Outfall Canal)). These levees were built to withstand a "Standard Project Hurricane" (hereinafter "SPH") formulated by the Corps. (OLD's Exhibit 5-D, at p. xi (Excerpts from Design Memorandum Vol. 13). Any maintenance performed by OLD on the levees was done under the supervision and in accordance with regulations promulgated by the Corps. (OLD's Exhibit 5, at ¶¶6-7 (Spencer Affidavit); OLD's Exhibit 6, at ¶3 (Hearn Affidavit); 33 U.S.C. §701c (providing that a state or political subdivision shall assure that it will "maintain and operate all works after completion in accordance with the regulations prescribed by the Secretary of the Army."). The relevant regulations for maintenance can be found at 33 C.F.R .208.10.

33 U.S.C. §701c provides, in pertinent part, that a state or political subdivision shall assure that it will "maintain and operate all works after completion in accordance with the regulations prescribed by the Secretary of the Army." 33 C.F.R. 208.10 further provides instructions on how

OLD is to maintain the flood control structures under the Corps' jurisdiction. This provision instructs OLD to make sure there is:

> (I) No unusual settlement, sloughing or material loss . . .; (ii) No caving has occurred . . .; (iii) No seepage, saturated areas, or sand boils are occurring; (iv) Toe drainage systems and pressure relief wells are in good working condition . . .; (v) Drains through the levees and gates on said drains are in good working condition; (vi) No revetment work or riprap has been displaced, washed out, or removed; (vii) No action is being taken . . . which will retard or destroy the growth of sod; (viii) Access roads to and on the levee are being properly maintained; (ix) Cattle guards and gates are in good condition; (x) Crown of levee is . . . well shaped and maintained; (xi) There is no unauthorized grazing or vehicular traffic on the levees; (xii) Encroachments are not being made on the levee right-of-way which might endanger the structure or hinder it proper and efficient functioning during times of emergency.

33 C.F.R. 208.10(b)(1)(I)-(xii). This federal regulation mandates that the inspections "shall be made immediately prior to the beginning of flood season; immediately following each major high water period, and otherwise at intervals not exceeding 90 days . . . ." 33 C.F.R 208.10(b)(1). Further, it requires that the Corps "furnish local interests with an Operation and Maintenance Manual for each completed project . . . ." 33 C.F.R 208.10(a)(10). OLD also contends that "detailed guidance for state agencies relating to operating federal flood control structures including specific inspection, reporting and maintenance procedures is set forth in the Corps' "Operations and Maintenance Manual." No copy of these "detailed instructions" have been provided to the Court. 33 C.F.R 208.10.

Federal law mandates that "improvements of rivers and other waterways for flood control and allied purposes **shall be under the direction of the Secretary of the Army and supervision of the Chief of Engineers . . . .**"33 U.S.C. §701a-1 (emphasis added). Federal law further specifies that "[f]ederal investigations and improvements of rivers and other waterways for flood control and allied purposes **shall be under the jurisdiction of the Secretary of the Army and supervision of**

the Chief of Engineers."33 U.S.C. §701b (emphasis added). Federal law even prohibits OLD from initiating any flood control project without prior federal approval. 33 U.S.C. §701 b-13.

**Contracts Between the Corps of Engineers and OLD and Hearn Affidavit**

Given that background, as detailed by OLD in its own filings, the Court has also reviewed the relevant contracts upon which OLD bases its removal and the affidavits of Max L. Hearn, the Executive Director of the Board of the Commissioners of OLD (OLD's Exhibit 6) accompanying those documents and of Stevan G. Spencer, P.E., the Chief Engineer of OLD. In essence these contracts which have been entered into over the course of about 40 years entail OLD assuring the Army Corps of Engineers that it has the authority and capability to furnish the non-federal cooperation required by the federal legislation authorizing the various projects which have been undertaken for flood protection for this area and OLD undertaking to pay for a percentage of the work and to maintain the work after its completion. In particular, in the last provided contract of June 21, 1985, it states, in relevant part:

> NOW, THEREFORE, the Board of Commissioners of the Orleans Levee District, **in consideration of the construction to be done by the United States of America** on the High Level Plan, agrees that it will, without cost to the United States:
>
> a. Provide all lands, easements, and rights- of-way, including borrow and spoil disposal areas necessary for construction, operation, and maintenance of the project;
>
> b. Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project; and
>
> c. Hold and save harmless the United States free from damages due to the construction works;

5

   d. Bear 30 percent of the first costs. . . .

   f. Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

   g. Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls and stoplog structures. . .;

   h. Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly;

   I. Comply with the applicable provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646; and

   j. Assume the responsibility to pay its share of the non-Federal project costs. . . ;

   k. As a minimum adhere to the payment schedule of deferred payment plan, . . .

   l. Recognizes that subsection (b),(c) and (e) of Section 221 of the Flood Control Act of 1970, Public Law 910611 shall apply to paragraph (k) above.

   m. Comply with Section 601 of Title VI of the Civil Rights Act of 1964, Public Law 880352 that no person shall be excluded from participation in, denied the benefits of, or subjected to discrimination in connection with the Project on grounds of race, creed, or national origin. . . .

(OLD's Exhibit 6H, pp. 10-11).

It is clear then from this document that OLD was the beneficiary of a project over which it had no construction duties of any sort. It partnered with the United States government as provided for by federal law to pay for a portion of the construction and to hold the government "free from damages due to the construction works." In addition, it agreed to maintain these sites in compliance with regulations of the government after their completion.

Mr. Hearn's affidavit simply verifies the number of such agreements that have been entered into between the United States and OLD and reiterates that it did agree to maintain the projects. Mr. Spencer avers that:

1. The Corps conducts inspection and construction management during the construction of flood control structures to ensure that the flood control structures are built in accordance with the Corps' designs and specifications.

2. The Corps, at the completion of construction work on a flood control project, accepts the work as being in compliance with the Corps' designs and specifications.

3. The Corps requires OLD to maintain the levees in accordance with the assurance agreements.

4. The Corp has given OLD a rating of "Outstanding" for the years 2000-2004 after it has conducted its annual inspection of the levees and flood control structure in Orleans Parish to determine if the levees are maintained in accordance with the Corps' regulations.

5. "The Corps would review all submissions and, as it found necessary, revise, reject, modify or make suggestions to any proposed designs, specifications or plans for levees/flood control structures that were submitted by independent consultants to the Corps."[1]

6. "The Corps would not use any designs, specifications or plans for levees/flood control structures from any independent consultants on a flood control project without the Corps carefully reviewing, analyzing, approving and signing off on said designs, specifications or plans."

With this as the statutory and factual background as attested to by OLD, the Court will turn to the plaintiffs' contentions.

---

[1] Note, this specific averment makes no mention of the OLD seeking a design change or the like.

**Plaintiffs' Allegations**

As noted, this case is one of a plethora of class actions suits brought as a result of the failure of the floodwalls at the 17th Street Canal in New Orleans. Plaintiffs have sued OLD seeking compensation for the damages arising from the flooding caused by the collapse of the subject floodwall. Specifically, these plaintiffs allege negligence on the part of OLD only in the following respects:

1. Designing and installing concrete flood walls which were below standard and potentially unstable in a flood;

2. Failing to test the flood walls for their ability to withstand cascades of lake water that may pour over levees during a hurricane; and

3. Failing fo interlock the flood walls and/or place a top railing or similar system to bind the walls together.

Petition, ¶ 6. Based on these allegations, OLD removed the case and plaintiffs seek its remand. There are no allegations concerning a failure to maintain.

**ANALYSIS**

The burden of proof for establishing federal jurisdiction is placed upon the party seeking removal. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1998) ( *citing Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921))."If the right to remove is doubtful, the case should be remanded." *Ryan v. Dow Chemical.*, 781 F.Supp. 934, 939 (E.D.N.Y.1992) (citations omitted); *see Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir.1979). As this Court has previously noted in *Lightfoot v. Bellsouth Telecommunications, Inc.*, 2004 WL 2381533 (E.D.La.,2004):

8

> A determination as to whether a cause of action presents a federal question, and therefore subject to removal in this context, depends upon the allegations made on the face of the plaintiff's well-pleaded complaint. *Carpenter v. Wichita Falls Indep. School Dist.*, 44 F.3d 362, 366 (5th Cir.1995). A federal defense to a state law claim does not create removal jurisdiction. *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157, 1161 (5th Cir.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). A defendant may not remove a case on the basis of an anticipated or even inevitable federal defense, but instead must show that a federal right is an essential element of the plaintiff's cause of action. *Gully v. First Nat'l Bank*, 299 U.S. 109, 111, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936); *Carpenter*, 44 F.3d at 366; *see Sears v. Chrysler Corp.*, 884 F.Supp. 1125 (E.D.Mich.1995).

*Id.* at *2. There are exceptions to this rule; one example is in the context of ERISA, where federal law so completely preempts a field of state law, a plaintiff's complaint must be recharacterized as stating a federal cause of action. *Aaron*, 876 F.2d at 1161, citing *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). This doctrine does not convert legitimate state claims into federal ones, but rather reveals the suit's necessary federal character. *Carpenter*, 44 F.3d at 367 (5th Cir.1995).

> As stated in *Aquafaith Shipping, Ltd. v. Jarillas,* 963 F.2d 806 (5th Cir.1992):
>
> When a court performs its duty to verify that it has jurisdiction, it may be required to survey the entire record, including the defendant's pleadings, and base its ruling on the complaint, on undisputed facts, and on its resolution of disputed facts. *See Williamson v. Tucker,* 645 F.2d 404, 412-13 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Calvert v. Sharp,* 748 F.2d 861, 862-63 (4th Cir.1984), *cert. denied,* 471 U.S. 1132, 105 S.Ct. 2667, 86 L.Ed.2d 283 (1985), *overruled on other grounds by West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). *See generally* Fed.R.Civ.P. 12(b)(1). The purpose of this careful survey, however, is to shed light on the plaintiff's pleadings. The court's focus is on the plaintiff's pleadings, not the defendant's.

*Id.* at 808. For the reasons that follow, the Court finds that OLD's attempts to circumvent the "well-pleaded complaint" doctrine are without merit; a federal defense to a state law claim does not create removal jurisdiction, and a state law claim is in essence all that is present in this petition.

As noted, OLD has chosen to remove these cases based on federal officer jurisdiction under 28 U.S.C. § 1442(a)(1) and federal question jurisdiction under 28 U.S.C. § 1331. The Court will first examine the applicability of federal officer jurisdiction.

**Federal Officer Jurisdiction**

Section 1442(a)(1) of Title 28 of the United States Code provides, in pertinent part:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office...

*Id.* Thus, by virtue of this federal statute, when a "person" "acting under" federal officers can present a colorable "government contractor defense", the case is removable by such "person." The power to remove is absolute, provided the proper procedures are followed. *Ryan v. Dow Chemical*, 781 F.Supp. 932, 939 (E.D.N.Y. 1992) ( citing *Willingham v. Morgan*, 395 U.S. 402, 406, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)).

In order to remove a state law claim under this statute, as a federal officer, or "person" acting under him, the removing party must "(1) demonstrate that it acted under the direction of a federal officer, (2) raise a federal defense to the plaintiffs' claims and (3) demonstrate a causal nexus between plaintiffs' claims and acts it performed under color of federal office." *Mesa v. California*, 489 U.S. 121, 131-132, 109 S.Ct. 959, 966, 103 L.Ed.2d 99 (1989); *Crocker v. Borden, Inc.*, 852 F.Supp. 1322, 1325 (E.D.La.1994); *Pack v. AC and S, Inc.*, 838 F.Supp. 1099, 1101 (D.Md.1993).

As neither party has argued that OLD is not a "person" as contemplated, for purposes of this analysis the Court shall assume that it is.[2] It should be noted however that a "levee district" is defined as "political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, and all other things incidental thereto within its territorial limits." La Rev. Stat. 38:281(6). It is this state law duty that is at the crux of the instant suit.

The fallacy with removing this case based on § 1441(a)(1) is that OLD did not "act under the direction of a federal officer" to build or design any structure. Plaintiffs have not alleged any failure to maintain or the like in this case; they have focused on the failures in the design and the construction of the levees which was undertaken by the Corps.[3] In *Dalrymple v. Grand River Dam Authority*, 932 F. Supp. 1311 (N.D. Okla. 1996), the Grand River Dam Authority ("GRDA") which was a conservation and reclamation district within the State of Oklahoma created by 82 OKLA. Stat. Ann. § 861, operated the Pensacola Dam pursuant to a license issued by the Federal Energy Regulatory Commission ("FERC"). It was sued by plaintiffs alleging claims of inverse condemnation, consequential damage to private property for public use, strict liability, trespass, nuisance and injunction against GRDA for damage sustained to their property as a result of the release of water from the Pensacola Dam by GRDA. GRDA removed the suit to federal court

---

[2] A corporation had been recognized as a "person," as that term is contemplated by 28 U.S.C. § 1442(a)(1) by the Fifth Circuit. *Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55 (5th Cir.1975). *Peterson* involved a malicious prosecution case brought by a physician against corporate defendants for his alleged wrongful suspension under the Medicare program. *Id.* at 57. Defendants removed the case under § 1442(a)(1), alleging federal officer removal jurisdiction. The Court stated that "[i]t is indisputable that each of the defendants was either an 'officer of the United States or an agency thereof, or *person* acting under him.' " *Id.* (emphasis added).

[3] The mere fact that OLD has the duty to maintain, however, does not *a fortiori* mandate a finding of federal jurisdiction.

11

invoking § 1442(a)(1) claiming that it was acting pursuant to the direction of a federal officer when it released the water. However, that district court rejected this claim. It stated:

> GRDA has offered no evidence that it is either producing goods or performing labor pursuant to a government contract. Rather GRDA owns and operates its own facility. The mere fact that it is licensed by FERC does not transform it into a government contractor for purposes of securing federal immunity.

*Id.* at 1313.

OLD's own categorization of what it did with respect to these levees and floodwalls is **not** that they performed any work or designed any structure at the Corps' instruction or direction. They contend that the Corps did it. Moreover, the clear language of the contracts themselves state that "in consideration of the construction to be done by the United States of America," OLD undertook the enumerated duties noted above, none of which included the design or installation of concrete flood walls; a duty to test the flood walls; or a duty to interlock the floodwalls. Thus, there are no acts which OLD performed that would provide the needed causal nexus under § 1442(a)(1).[4]

Obviously, OLD may have a defense based on the federal laws noted above; however, a federal defense to a state law claim does not create removal jurisdiction.

**Federal Question Jurisdiction: 28 U.S.C. § 1331**

OLD also contends that federal question jurisdiction can be invoke where a state law claim implicates significant federal issues relying on *Grable & Sons Metal Products, Inc. v. Darue*

---

[4]OLD cited *Teague v. Grand River Dam Authority*, 279 F. Supp. 703 (N.D. Okl. 1968) for the proposition that the operation of flood control structures under direction and contract with the Army Corps of Engineers provides a basis for removal under 28 U.S.C. § 1442(a)(1). This case can be distinguished in that OLD is not "operating" these levees under a license from the federal government as was the case in *Teague*. Indeed, it was sued in *Teague* for opening the dam flood gates under orders from the Corps. OLD is the beneficiary of a flood protection project which is controlled by the Corps at the direction of Congress; it has not presented any evidence that it acted in any way in the construction or design of the subject levee/floodwalls.

12

*Engineering & Manufacturing*, 125 S. Ct. 2362 (2005). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude and hope of uniformity that a federal forum offers on federal issues." *Id* at 2367. *Grable* concerned a former landowner who brought quiet title action in state court against a tax sale purchaser, alleging that the Internal Revenue Service ("IRS") had given him inadequate notice of the sale. The Supreme Court cautioned:

> But even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. Thus, *Franchise Tax Bd. [of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 103 S. Ct. 2841 (1983)] explained that the appropriateness of a federal forum to hear an embedded issue could be evaluated only after considering the "welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Id.* at 8, 103 S. t. 2841. Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising jurisdiction. . . .

*Id.* at 2367-68. The Supreme Court then noted that for that reason, a single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims. The Court framed the issue as "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id* at 2368.

Thus, the Supreme Court has created a two-part test. The first requirement is that the plaintiff's state-law claim necessarily raises a federal issue, actually disputed and substantial; the

second requirement is whether a federal court may entertain the lawsuit without "disturbing any congressionally approved balance of federal and state judicial responsibilities." This determination rests on (1) the importance of having a federal forum decide the issue and (2) the effect of exercising jurisdiction on the balance of federal-state division of responsibilities. *Evans v. Courtesy Chevrolet II, LP*, 423 F. Supp.2d 669, 670-71 (S.D. Tex. 2006)

In *Grable* the adequacy of notice given by the IRS under federal law was pivotal in the determination of the case–thus there was a disputed and substantial federal issue implicated. Here, the issue presented is whether OLD, a state administrative agency, performed the duties incumbent upon it **under state law**. OLD's defense appears to be that under Congressional dictates concerning flood protection, it did all that it could do. However, the meaning or interpretation of the Flood Control Program and its provisions do not appear to be disputed. The claims against OLD will not pivot upon whether the Corps performed its federal duties correctly; the issue will be whether OLD had the ability to act apart from the Corps or in concert therewith to fulfill its state law duties. The provisions of the federal National Flood Control Program very well may serve as OLD's defense, but that fact does not create a basis for this Court to exercise jurisdiction over OLD.

In addition, the Court finds that to exercise jurisdiction over this case would disturb the balance of federal and state judicial responsibilities. The claims raised arise in the context of state law; if that law is pre-empted as OLD contends, a state court shall so find. That alleged pre-emption does not create jurisdiction. This conflict is between citizens of the State of Louisiana and a state political subdivision. There is no overarching federal concern as this case is brought making the need for a federal forum to decide the matter of little importance and would upset the balance of federal-state division of responsibilities.

In *Evans v. Courtesy Chevrolet II, LP*, 423 F. Supp.2d 669 (S.D. Tex. 2006), Evans alleged omissions and misrepresentations in a retail installment sales contract relying exclusively and explicitly **only** on state law. Courtesy Chevrolet relied on *Grable* for the proposition that Evans' claims arose under federal law under the federal Truth in Lending Act ("TILA") and accompanying regulations and removed the matter claiming federal jurisdiction under 28 U.S.C. § 1331. The district court granted Evans' motion to remand finding that allowing federal jurisdiction in cases arising out of disputes over disclosures in installment contracts for purchasing cars would disturb the congressionally approved balance of federal and state judicial responsibilities, therefore, Evans was not entitled to remove the matter. *See Samuel Trading LLC v. The Diversified Group, Inc.*, 2006 WL 560311 (N.D.Ill. 2006).

**Conclusion**

This suit against OLD centers and focuses solely on its responsibilities under Louisiana law. A federal defense to a state law claim does not create removal jurisdiction. OLD may not remove a case on the basis of an anticipated or even inevitable federal defense but instead must show that a federal right is an essential element of the its cause of action. It has failed to do so. There is no basis for federal jurisdiction demonstrated by OLD. Accordingly,

**IT IS ORDERED** finding that this Court lacks subject matter jurisdiction, this matter is **REMANDED** to the Civil District Court for the Parish of Orleans pursuant to 28 U.S.C. §1447(c).

New Orleans, Louisiana, this 31st day of May, 2006.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**