## IN UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| COLLEEN BERTHELOT ET AL., et al., | § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO<br><br>NO. 05-4182<br><br><br>SECTION "K"(2)<br>CONS. KATRINA CANAL |

COLLEEN BERTHELOT ET AL., et al.,

    Plaintiffs

VERSUS

BOH BROTHERS CONSTRUCTION CO.
L.L.C., et al.,

    Defendants.

PERTAINS TO:

INSURANCE GROUP

*Chehardy et al. v. State Farm, et al.: 06-1672*
*Chehardy et al. v. State Farm, et al.: 06-1673*
*Chehardy et al. v. State Farm, et al.: 06-1673*



U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIAN,

FILED JUN - 2 2006

LORETTA G. WHYTE
CLERK

## AMENDED AND RESTATED COMPLAINT

  Representative Policyholders Gladys Chehardy, Daniel and Jacquelyn Fontanez, Larry and Glendy Forster, Kenneth and Judy Maier, Randy and Lori Gervais, Andre and Marlin Mauberret, Debbie and Dave Strawn, Stephanie and Brad Boyd, New Orleans Flooring Supply, Inc., Shawn and Angelina Burst, Patricia Brown, Marie Fatheree, Katrina Daniels, Lionel and Edna Jones, Karen Lewis, Shane Sylvester, Austra Zapata, Sabrina Perkins, Eldridge Pollard, Michael Peterson, Wendell Glation and Mack Barham (collectively, "the Representative Policyholders"), by and through their undersigned counsel, aver as follows:

PHIDOCS-48249.1

## I. INTRODUCTION

1.    The Representative Policyholders have instituted this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of homeowners insurance policyholders as defined in Paragraph 25 ("Policyholders") who, on August 29, 2005, were Louisiana residents who owned immovable property with improvements, principally houses or related residential structures, as well as personal property located there, which was destroyed or damaged by winds generated by Hurricane Katrina.

2.    The Representative Policyholders bring this class action for declaratory judgment, breach of contract, breach of the implied duty of fair dealing and good faith, breach of fiduciary duty, and breach of Louisiana's bad faith statutes, arising out of the wrongful, negligent, reckless and/or intentional refusal of various Insurance Companies (collectively "Insurance Company Defendants") to provide insurance coverage to Policyholders for losses and damages to Policyholders' property caused by Hurricane Katrina, as required by the insurance policies that Policyholders purchased from one or more of the Insurance Company Defendants.

3.    Policyholders seek compensatory and punitive damages from the Insurance Company Defendants as a result of their wrongful conduct, in addition to declaratory relief by the Court that:

a.    The first efficient proximate cause of the losses suffered by the Policyholders on August 29, 2005 was "windstorm," a covered peril under all of the insurance policies purchased by the Policyholders, thereby rendering any subsequent impact from water released by the levee and/or levee wall failures

irrelevant to coverage afforded by the insurance policies;

b.    The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere were acts of negligence, standard covered perils in the Insurance Company Defendants' homeowners insurance policies;

c.    The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 was "storm surge", a known meteorological phenomenon that is not specifically excluded by any of the Insurance Company Defendants' insurance policies, in contrast to other insurance policies available in the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policies;

d.    The breaking or failure of levees or boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by any of the Insurance Company Defendants' insurance policies, in contrast to other insurance policies available in the market; and

e.    The damage caused by water entering the City of New Orleans and surrounding parishes from Hurricane Katrina beginning on August 29, 2005, due to the breaches in the levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere neither falls within the regular definition of "flood," nor within any of the subject insurance policies' exclusions of "flood".

## II. PARTIES

4.    Representative Policyholders Gladys Chehardy, Daniel and Jacquelyn Fontanez, Larry and Glendy Forster, Kenneth and Judy Maier, Randy and Lori Gervais, Andre and Marlin Mauberret, Debbie and Dave Strawn, Stephanie and Brad Boyd, New Orleans Flooring Supply, Inc., Shawn and Angelina Burst, Patricia Brown, Marie Fatheree, Katrina Daniels, Lionel and Edna Jones, Karen Lewis, Shane Sylvester, Austra Zapata, Sabrina Perkins, Eldridge Pollard, Michael Peterson, Wendell Glation and Mack Barham purchased homeowners insurance policies from one of the following insurance companies: State Farm Fire & Casualty Company, Allstate Insurance Company, Allstate Indemnity Company, Lafayette Insurance Company, Liberty Mutual Fire Insurance Company, Chubb Custom Insurance Company, The American Insurance Company, AAA Homeowners Auto Club Family Insurance Company, Louisiana Citizens Property Insurance Corporation, Traveler's Property Casualty Company of America, Lexington Insurance Company, Encompass Insurance Company of America,  AEGIS Security Insurance Company, Great Northern Insurance Company and Hanover Insurance Company.

5.     Defendant State Farm Fire & Casualty Company (hereinafter referred to as "State Farm") is a foreign insurer organized and existing under the laws of the State of Illinois and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

6.     Defendant Allstate Insurance Company (hereinafter referred to as "Allstate") is a foreign insurer organized and existing under the laws of the State of Illinois and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

7.     Defendant Allstate Indemnity Company (hereinafter referred to as "Allstate Indemnity") is a foreign insurer organized and existing under the laws of the State of Illinois and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

8.     Defendant Lafayette Insurance Company (hereinafter referred to as "Lafayette") is a foreign insurer organized and existing under the laws of the State of Iowa and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

9.     Defendant Liberty Mutual Fire Insurance Company (hereinafter referred to as "Liberty Mutual") is a foreign insurer organized and existing under the laws of the State of Massachusetts and doing business in the State of Louisiana and

can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

10.   Defendant Chubb Custom Insurance Company (hereinafter referred to as "Chubb") is a foreign insurer organized and existing under the laws of the State of Delaware with its principal place of business in the State of New Jersey and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

11.   Defendant The American Insurance Company (hereinafter referred to as "American") is a foreign insurer organized and existing under the laws of the State of Nebraska, with its principal place of business in California and doing business in the State of Louisiana and which may be served with process by service on its registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

12.   Defendant AAA Homeowners Auto Club Family Insurance Company (hereinafter referred to as "AAA") is a foreign insurer organized and existing under the laws of the State of Missouri and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

13.   Defendant Louisiana Citizens Property Insurance Corporation (hereinafter referred to as "LA FAIR Plans") is an insurer domiciled in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809, or at

their place of business at 433 Metairie Road, Suite 400, Metairie, LA 7005, or at their official mailing address P.O. Box 60730, New Orleans, LA 70160.

14. Defendant Travelers Property Casualty Company of America (hereinafter referred to as "Travelers") is a foreign insurer organized and existing under the laws of the State of Connecticut and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

15. Defendant Lexington Insurance Company (hereinafter referred to as "Lexington") is a foreign insurer organized and existing under the laws of the State of Massachusetts and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

16. Defendant Encompass Insurance Company of America (hereinafter referred to as "Encompass") is a foreign insurer organized and existing under the laws of the State of Illinois and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

17. Defendant AEGIS Security Insurance Company (hereinafter referred to as "AEGIS") is a foreign insurer organized and existing under the laws of the State of Pennsylvania and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

18.   Defendant Great Northern Insurance Company (hereinafter referred to as "Great Northern") is a foreign insurer organized and existing under the laws of the State of New Jersey and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

19.   Defendant Hanover Insurance Company (hereinafter referred to as "Hanover") is a foreign insurer organized and existing under the laws of the State of Massachusetts and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809

20.   The foregoing Defendants will hereinafter be collectively referred to as the "Insurance Company Defendants."

### III. JURISDICTION AND VENUE

21.   This Court has subject matter jurisdiction based upon 28 U.S.C. § 1332(d) because the proposed class of Policyholders contains more than 100 members, the aggregate amount in controversy exceeds five million dollars and at least one member of the Policyholders' class is diverse from at least one of the Insurance Company Defendants.

22.   This Court has personal jurisdiction over the Insurance Company Defendants because the Insurance Company Defendants are or were transacting business in this District within the relevant time periods by way of selling insurance policies to the Policyholders, who are also located in this District.

23.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this

District and the Insurance Company Defendants regularly transact business in this District.

## IV. FACTUAL BACKGROUND

### Appropriateness of Class Action

24.   Representative Policyholders meet the prerequisites to bring this action on behalf of the class because:

(a)   As a result of this unprecedented catastrophic event up to 160,000 homes are estimated to be unusable and the exact number and identities of the class of Policyholders are unknown at this time, and can only be ascertained through appropriate investigation.   Representative Policyholders are of information and belief that the class of Policyholders clearly consists of tens or perhaps hundreds of thousands of persons presenting a level of numerosity better handled through the class action procedure.   The class is so numerous that joinder of all members as individual plaintiffs is impracticable;

(b)   There are common questions of law and fact common not only to all class members but will be applicable to all Insurance Company Defendants and all homeowners insurance companies in the New Orleans area including the issues of law and fact that form the basis for the declaratory and other relief sought by Representative Policyholders;

(c)   Representative Policyholders' claims are typical of the claims of the class insofar as they are all seeking declaratory and other relief and damages from the Insurance Company Defendants for their bad faith conduct and wrongful refusal to pay Policyholders' insurance claims; and

(d)   Representative Policyholders will fairly and adequately represent the interests of the class. The class representatives herein are represented by skilled attorneys who are experienced in the handling of class action and large-scale insurance litigation and who may be expected to handle this action in an expeditious and economical manner to the best interest of all members of the class.

25. The Policyholders' Class, for purposes of relief sought by this action, is defined as all owners in the Parishes of Orleans, St. Bernard, and Jefferson, State of Louisiana, who own immovable property with improvements, principally houses or related residential structures, as well as personal property located there, which was destroyed or damaged by winds generated by Hurricane Katrina in excess of their respective policy deductibles and not reimbursed by their insurance companies, but excluding members of the judiciary, their administrative staff and any other personnel who may cause a member of the Louisiana bench to be unable to preside over this action.

### Policyholders' Purchase Of The Policies

26. Policyholders are owners of immovable property with improvements, principally houses or related residential structures, as well as personal property located there, with such property being located in the Parishes of Orleans, St. Bernard, and Jefferson, State of Louisiana.

27. Each Policyholder purchased a homeowner's insurance policy (the "All Risk Policy" or "All Risk Policies") from one of the Insurance Company Defendants.

28. Plaintiffs purchased their policy with the reasonable expectation that they would be able to recover for any and all losses to their residence and personal property caused by hurricanes, including any and all damage proximately and efficiently caused by hurricane wind, and "storm surge" proximately caused by hurricane wind.

29.  For the purpose of obtaining such hurricane coverage, some policyholders had to agree to pay a "hurricane deductible".

30.  However, notwithstanding the specific topographic townsite of the Greater New Orleans Metropolitan Area specifically known to the Insurance Company Defendants, notwithstanding their advanced knowledge about the fragility of the New Orleans area levee systems, and in contrast to other insurance policies available in the market, at no time did they specifically exclude from coverage the breaking or failure of boundaries and levees of lakes, rivers, streams, or other bodies of water.

31.  Policyholders purchased their respective All Risk Policies either directly from State Farm, Allstate Insurance, Allstate Indemnity, Liberty Mutual or other similarly situated Insurance Company Defendants, each of whom sells its policies directly to policyholders, or from agents authorized by the Insurance Company Defendants to sell insurance as agents on their behalf.

32.  Plaintiffs trusted and relied upon State Farm, Allstate Insurance, Allstate Indemnity, Liberty Mutual or other similarly situated Insurance Company Defendants representations that the subject policy would cover any damage caused by a hurricane and, thus, reasonably believed that their respective Insurance Policy would cover any and all hurricane damage.

33.  The amount of insurance varied for each Policyholder based on the estimated cost of replacing the home, an amount estimated by the Insurance Company Defendants or an agent authorized by them to determine the replacement cost of each individual home.

34.   At all times relevant hereto, Policyholders made timely payment of the premiums due on their respective All Risk Policies.

### Insurance Company Defendants Fail To Advise Policyholders Regarding The Availability Of Flood Insurance

35.   In 1956 Congress enacted the Federal Flood Insurance Act. The National Flood Insurance Act, as amended in 1968, is now the seminal authority for the current National Flood Insurance Program ("NFIP"). Congress created the NFIP to provide insurance coverage for property located in floodplain areas where the risk of certain natural or seasonal flooding is increased.

36.   The NFIP provides a minimum level of insurance for the peril of natural or seasonal flooding with a cap of $250,000 per property.   42 U.S.C. § 4121(a)(1).

37.   Since the inception of the NFIP, the insurance industry has been willing to sell insurance in excess to the minimal level of coverage provided by the NFIP. Thus, the availability of additional flood insurance was known to and sold by the Insurance Company Defendants at the time they sold their respective All Risk Policies to Policyholders.

38.   Despite this knowledge, at no time prior to August 29, 2005 did any of the Insurance Company Defendants, particularly State Farm, Allstate Indemnity, Allstate Insurance or Liberty Mutual, advise Policyholders that - contrary to their representations - their true intent was not to cover damage or loss caused by hurricanes that may involve damage, in part, from water beyond the NFIP limit, and that their homes may accordingly be grossly underinsured, or that additional coverage could be purchased excess of the NFIP limit.

39.   In addition, many Policyholders have not at all been advised on the availability of flood insurance under the NFIP by the Insurance Company Defendants.

### Hurricane Katrina Damages Policyholders' Property

40.   At 6:10 a.m. on August 29, 2005, Hurricane Katrina made landfall near Grande Isle, Louisiana as a Category 4 hurricane, and then made a second landfall a short time later near the Louisiana-Mississippi border, the eye of the storm passing just east of the City of New Orleans at approximately 9:00 a.m.

41.   At 8:00 a.m. on August 29, there was water on both sides of the Industrial Canal in New Orleans, and by 9 a.m. there was six to eight feet of water in the City's Lower Ninth Ward.

42.   At 2:00 p.m. on August 29, New Orleans officials publicly confirmed the reason for the water accumulating in the Lower Ninth Ward was a breach in the Industrial Canal levee wall, a breach which was reported to be two city blocks wide.

43.   Other significant breaches in the New Orleans area levee systems occurred on or after August 29, 2005 which similarly caused releases of water into the City and adjoining parishes.  In all, the levees around the City and adjoining parishes failed in at least eight (8) distinct locations, including the 17th Street, London Avenue and Industrial Canals, causing distinct and unique harm to different sections of the City and the surrounding parishes.

44.   Policyholders' sustained damage to their property as a result of the catastrophic events of August 29, 2005 and the following days, said catastrophic events being precipitated by Hurricane Katrina, a category 4 storm with sustained winds of 145 miles per hour.

45.   In the aftermath of the storm, it was estimated that approximately 80% of Orleans Parish was under water, and that losses from the hurricane are estimated to be as high as $200 billion.

46.   Recent engineering reports have stated that vast amounts of the water that entered the City of New Orleans and the surrounding parishes came about as the result of levee failures caused by negligent design, negligent maintenance and/or inadequate materials and not by topping of the levees.

47.   Moreover, in its April 6, 2006, edition, The Times Picayune reported that Lt. Gen. Carl Strock, the Chief of the Army Corps of Engineers, told a Senate committee that the Corps neglected to consider the possibility that the levee walls atop the 17th Street Canal levee would lurch away from their footings under significant water pressure and eat away at the earthen barriers below. The levees simply failed to work the way they were supposed to work.

48.   Congressional investigators, experts, and some Army Corps of Engineers officers have also suggested that the failure of the levees might have been caused by leaks in the barriers based upon poor construction and/or maintenance of the levee.

49.   In addition, it was learned that the levee breach of the Industrial Canal to the Lower Ninth Ward side was caused by an inadequately moored barge that crashed into the levee wall, rupturing the levee and compromising its ability to hold water back.

50.   As a result, Policyholders aver, upon information and belief, that any damages attributable to the levee failures are the result of improper and/or

negligent design, construction, maintenance of the levees by various third parties and or third party negligence.

## COUNT I – DECLARATORY JUDGMENT
### v. All Insurance Company Defendants

51.  Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

52.  An actual controversy exists between Policyholders and the Insurance Company Defendants concerning the Insurance Company Defendants' duty to indemnify Policyholders for their losses.

53.  Consequently, under the circumstances, it is necessary and appropriate for the Court to declare Policyholders' and Insurance Company Defendants' rights and duties under the Policies pursuant to 28 U.S.C. § 2201.

54.  The losses suffered by Policyholders as a result of Hurricane Katrina are covered losses under their respective All Risk Policies.

55.  Policyholders have given timely notification to the Insurance Company Defendants and made timely demands in writing that the Insurance Company Defendants cover Policyholders' losses.

56.  The Insurance Company Defendants are obligated by the terms and conditions of their All Risk Policies to indemnify Policyholders for their losses.

57.  The Insurance Company Defendants have refused to indemnify Policyholders for their losses and have denied coverage for the losses.

58.  Thus, Policyholders are entitled to a declaratory judgment that the damages they suffered are covered losses under the All Risk Policies.

59. Specifically, the Policyholders' losses were caused by covered perils, the efficient causes of their losses were covered perils and the efficient and proximate causes of loss were covered perils.

60. Further, to give the "flood" exclusions a broad reading and thus disallow the coverage for the damages arising from this catastrophic disaster, which occurred despite the vast and expansive levees existing in the greater New Orleans area, would contravene the very purpose of homeowner's policies.

61. The reasonable expectations of Louisiana policyholders is that "flood" encompasses overflowing of the Mississippi River, accumulation of surface water due to heavy rainfalls, or similar phenomena, but not the failing of virtually all man-made structures containing Navigable Waters of the United States surrounding the New Orleans Metropolitan Area due to negligent conduct beyond the policyholders' control.

62. Finally, Policyholders should not be deprived of the coverage of the All Risk Policies where the Insurance Company Defendants have drafted vague, ambiguous and unclear limitations on coverage, thereby violating the rule that exclusions must be clearly and explicitly drafted. If so intended, and in contrast to other insurance policies available in the market, Insurance Company Defendants should have specifically excluded hurricane damage and/or the failure of levees as the most probable perils for the New Orleans Metropolitan Area.   Instead, Insurance Company Defendants decided to sell the same comprehensive All-Risk Homeowners Insurance Policies that they sell in the "high and dry" plains throughout the United States.

63.  While the Insurance Company Defendants may continue to make investment income during the course of any protracted legal proceedings, Policyholders, on the other hand, have little recourse but to sit idly by awaiting a decision, all the while being unable to begin reconstruction or renovation of their homes until they have the money to pay contractors.

64.  As a result, without resolution of this issue by declaratory judgment, Policyholders, in most instances, will be unable to remedy the damages they fully expected were covered by their All Risk Policies.

WHEREFORE, Policyholders respectfully request that this Court enter a declaratory judgment in their favor and against the Insurance Company Defendants as to Count I, ordering and decreeing that:

(1)    The first efficient proximate cause of the losses suffered by the Policyholders on August 29, 2005 was "windstorm," a covered peril under all of the insurance policies purchased by the Policyholders, thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policies;

(2)    The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere were acts of negligence, standard covered perils in the Insurance Company Defendants' homeowners

insurance policies;

(3)     The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 was "storm surge", a known meteorological phenomenon that is not specifically excluded by any of the Insurance Company Defendants' insurance policies, in contrast to other insurance policies available in the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policies;

(4)     The breaking or failure of boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by any of the Insurance Company Defendants' insurance policies, in contrast to other insurance policies available in the market; and

(5)     The damage caused by water entering the City of New Orleans and adjoining parishes from Hurricane Katrina beginning on August 29, 2005, due to the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere neither falls within the regular definition of "flood," nor within any of the subject insurance policies' exclusions of "flood".

## COUNT II — BREACH OF CONTRACT
## v. All Insurance Company Defendants

65.   Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

66.   Valid contracts exist between Policyholders and the Insurance Company Defendants in the form of the individual All Risk Policies, which, inter alia, obligate the Insurance Company Defendants to cover the loss of or damage to a dwelling and personal property therein which is caused by wind or windstorms, storm surge, or acts of negligence.

67.   Policyholders paid all premiums due under their All Risk Policies and materially performed their obligations under those Policies.

68.   Upon proper and repeated demands by Policyholders, the Insurance Company Defendants have refused to meet their obligations under the All Risk Policies and refused to pay the full damages for Policyholders' homes being destroyed or damaged by the efficient proximate cause of windstorms, storm surge and/or negligence.

69.   As a direct and proximate result of the breaches by the Insurance Company Defendants, Policyholders were deprived of the benefit of insurance coverage for which the Insurance Company Defendants were paid substantial premiums and, accordingly, Policyholders have suffered substantial damages.

WHEREFORE, Policyholders demand judgment against the Insurance Company Defendants for all amounts due under the All Risk Policies, other compensatory damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

## COUNT III — BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING v. All Insurance Company Defendants

70.  Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

71.  By selling their All Risk Policies to Policyholders, the Insurance Company Defendants assumed a duty of good faith and fair dealing to the Policyholders, including an obligation to promptly indemnify Policyholders for their losses.

72.  The Insurance Company Defendants have failed to follow Louisiana's long-standing efficient proximate cause doctrine and have instead adopted an industry-wide approach to denying valid claims for inappropriate reasons.

73.  The Insurance Company Defendants have also failed to provide coverage for Policyholders' losses and instead have attempted to equate the efficient proximate cause of windstorm and the negligent design, construction and maintenance of the levees in the New Orleans area and/or third party negligence which caused Policyholders' losses with flooding in an effort to exclude coverage.

74.  The Insurance Company Defendants have also wrongfully denied coverage for claims by equating "storm surge" with flood, thereby improperly expanding the flood exclusion and defeating the reasonable expectation of Louisiana policy holders.

75.  Moreover, the Insurance Company Defendants directed their adjusters to follow specific "guidelines" whereby the adjusters would arbitrarily, capriciously and without probable cause, find a nearby waterline and apply it to Policyholders' property in order to deny full payment of Policyholders' claims.

76.  The Insurance Company Defendants further directed their adjusters to ignore all other information and evidence and, instead, to use only the procedure and guidelines mandated by them, specifically, the arbitrary application of any nearby waterline to Policyholders' property.

77.  In directing their adjusters to ignore any information or evidence other than the arbitrary and capricious application of any nearby waterline, the Insurance Company Defendants violated La. Rev. Stat. Ann. § 658.2(A)(1) which provides that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."

78.  By engaging in all of the conduct above, the Insurance Company Defendants lack an arguable or legitimate basis for refusing to pay the Policyholders' claims.

79.  By engaging in the conduct described above, the Insurance Company Defendants have violated the duties of good faith and fair dealing owed to Policyholders.

80.  As a direct and proximate result of the Insurance Company Defendants' bad faith actions, Policyholders have suffered, and will continue to suffer, substantial damages.

81.  Moreover, by engaging in the conduct above, the Insurance Company Defendants' persistent and systematic actions and failures to act were done with malice and gross negligence and with a disregard for Policyholders' rights so as to warrant the imposition of punitive damages against the Insurance Company Defendants.

WHEREFORE, Policyholders demand judgment against the Insurance Company Defendants for all amounts due under the Policies, other compensatory damages, punitive damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

## COUNT IV — BREACH OF LA. REV. STAT. ANN. § 22:1220 (Insurance Bad Faith) v. All Insurance Company Defendants

82.   Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

83.   Pursuant to La. Rev. Stat. Ann. § 22:1220A, the Insurance Company Defendants owe Policyholders a "duty of good faith and fair dealing" as well as a duty to "adjust claims fairly and promptly and to make a reasonable effort to settle claims" with Policyholders.

84.   La. Rev. Stat. Ann. § 22:1220B prohibits the Insurance Company Defendants from, inter alia, "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue" and "[f]ailing to pay the amount of any claim . . . when such failure is arbitrary, capricious or without probable cause."

85.   The Insurance Company Defendants have misrepresented the coverage afforded by the All Risk Policy provisions by wrongfully and without a legitimate basis seeking to have the "flood" exclusions given a broad reading in an effort to disallow coverage for the damages arising from Hurricane Katrina.

86.   The Insurance Company Defendants have failed to follow Louisiana's long-standing efficient proximate cause doctrine and have instead adopted an industry-wide approach to denying valid claims for inappropriate reasons without probable cause.

87. Specifically, the Insurance Company Defendants have failed to provide coverage for Policyholders' losses and, instead, have attempted to equate the efficient cause of windstorm and the negligent design, construction and maintenance of the levees in New Orleans which caused Policyholders' losses with *flooding* in an effort to exclude coverage and/or third party negligence.

88. The Insurance Company Defendants have also wrongfully denied coverage for claims by equating "storm surge" with *flood*, thereby improperly expanding the flood exclusion and defeating the reasonable expectation of Louisiana policy holders.

89. As such, the Insurance Company Defendants have breached known duties through a motive of self interest and/or ill will without having a reasonable basis to deny these claims, instead denying claims in an arbitrary and capricious manner and without probable cause.

90. Moreover, pursuant to a recent enactment of the Legislature of Louisiana, an insurance company acts in bad faith when it fails "to pay claims pursuant to R.S. 22:658.2 [and] such failure is arbitrary, capricious, or without probable cause." La. Rev. Stat. Ann. § 22:1220A.

91. In directing their adjusters to consider only nearby waterlines and to ignore all other evidence in determining whether Policyholders' losses are covered under the All Risk Policies, the Insurance Company Defendants violated La. Rev. Stat. Ann. § 658.2.A.(1), which provides that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."

92.   By engaging in all of the above conduct, Insurance Company Defendants have engaged in bad faith conduct in violation of La. Rev. Stat. Ann. § 22:1220.

WHEREFORE, Policyholders demand judgment against the Insurance Company Defendants for all compensatory damages including all amounts due under the Policies, other compensatory damages, plus interest on that amount, costs of suit, attorneys' fees incurred in pursuing payment of the loss, consequential damages, punitive damages, and such other relief deemed just and proper by the Court.

## COUNT V — BREACH OF FIDUCIARY DUTY
### v. State Farm, Allstate Indemnity, Allstate Insurance and Liberty Mutual and Other Similarly Situated Insurance Company Defendants

93.   Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

94.   Defendants State Farm, Allstate Indemnity, Allstate and Liberty Mutual and other similarly situated Insurance Company Defendants sell their homeowners insurance policies directly to their customers, including Policyholders and, in that respect, function in the capacity of insurance brokers or agents.

95.   By directly marketing and selling their Policies to Policyholders', Defendants State Farm, Allstate Indemnity, Allstate, Liberty Mutual and other similarly situated Insurance Company Defendants owe those Policyholders who purchased All Risk Policies from them a fiduciary duty of undivided loyalty, due care, and fidelity.

96.   State Farm, Allstate Indemnity, Allstate, Liberty Mutual and other similarly situated Insurance Company Defendants owed Policyholders a fiduciary duty to perform their responsibilities as insurance brokers and/or agents with good faith and

appropriate skill in Policyholders' best interests and with heightened care, fidelity, diligence and full disclosure required of a fiduciary.

97. Among other things, insurance brokers and/or agents are obligated to provide advice and assistance to policyholders so that risks to which they are exposed are adequately insured, or at a minimum, provide them with adequate opportunity and advice to make a decision as to what coverage to purchase.

98. At no time relevant hereto did any of the Insurance Company Defendants, particularly State Farm, Allstate Indemnity, Allstate or Liberty Mutual, advise or suggest to Policyholders that - contrary to their representations - their true intent was not to cover damage or loss caused by hurricanes that may involve damage, in part, from water beyond the NFIP limit, and that their homes may accordingly be grossly underinsured, or that additional coverage could be purchased excess of the NFIP limit.

99. By failing to advise Policyholders of the availability of flood insurance, Defendants State Farm, Allstate Indemnity, Allstate, Liberty Mutual and other similarly situated Insurance Company Defendants breached their fiduciary duty to act in Policyholders' best interest and with the care and full disclosure required of a fiduciary.

100. The breaches of fiduciary duty by State Farm, Allstate Indemnity, Allstate, Liberty Mutual and other similarly situated Insurance Company Defendants have caused Policyholders substantial damages.

WHEREFORE, Policyholders demand judgment against State Farm, Allstate Indemnity, Allstate, Liberty Mutual and other similarly situated Insurance Company Defendants for all amounts due under the Policies, other compensatory damages, punitive damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

Respectfully Submitted,

Bruno & Bruno

Joseph M. Bruno
LA Bar Roll No. 3604
David S. Scalia
LA Bar Roll No. 21369
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: 504-525-1335
Fax: 504-581-1493

McKernan Law Firm

Joseph J. McKernan
LA Bar Roll. No. 10027
Gordon J. McKernan
LA Bar Roll No. 21768
Chet Boudreaux
LA Bar Roll No. 28504
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: 225-926-1234
Fax: 225-926-1202

**Fayard & Honeycutt**


Calvin C. Fayard, Jr.
519 Florida Avenue, SW
Denham Springs, LA 70726
Telephone: 225-664-4193


**Anderson Kill & Olick, P.C.**


John N. Ellison, Esq.
Darin McMullen, Esq.
1600 Market Street
Suite 2500
Philadelphia, PA  19103
Telephone: 215-568-4202
Facsimile:  215-568-4375


**Ranier, Gayle & Elliot, L.L.C.**


Drew Ranier, Esq.
N. Frank Elliot III
1419 Ryan Street
P.O. Box 1890
Lake Charles, Louisiana 70602-1890
Telephone: 337-494-7171
Facsimile: 337-494-7218


Attorneys for Policyholders

## CERTIFICATE OF SERVICE

I, David S. Scalia, an attorney of record in this case, hereby certify that this _24_ day of May, 2006, a copy of the foregoing Amended Complaint was served.



Joseph M. Bruno