**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| COLLEEN BERTHELOT, ET AL., | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 05-4182 |
| | * | |
| BOH BROTHERS CONSTRUCTION CO., LLC, | * | SECTION "K" (2) |
| ET AL., | * | CONS. KATRINA CANAL |
| *   *   *   *   *   *   * | * | |

THIS DOCUMENT RELATES TO:  CASE NO. 06-1885

UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

MAY IT PLEASE THE COURT:  Defendant, the United States of America, has moved, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) to dismiss plaintiffs' action for lack of subject matter jurisdiction and respectfully submits this memorandum of law in support.

Plaintiffs' Complaint, styled as a class action against the United States, alleges common law tort claims for damages arising from the failure of certain levee systems in New Orleans, Louisiana, during Hurricane Katrina.  Plaintiffs assert subject matter jurisdiction on claims against the United States under the Federal Tort Claims Act (FTCA), the Fifth Amendment to the United States Constitution and various federal and state environmental statutes, and plaintiffs also seek to invoke the Court's admiralty and maritime jurisdiction.

The Federal Tort Claims Act (FTCA) is the exclusive remedy for claimants seeking monetary damages in tort from the United States and is a limited waiver of the United States' sovereign immunity.  See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).  The FTCA requires that plaintiffs properly present administrative claims to the appropriate federal agency prior to filing suit against the United States.  28 U.S.C. § 2675(a).  Plaintiffs failed to comply with this statutorily mandated jurisdictional prerequisite to suit, and this failure deprives the Court of jurisdiction to consider the plaintiffs' FTCA claims.  Moreover, the plaintiffs have no other viable basis through which to establish this Court's jurisdiction over their claims against the United States, whether the claims are alleged to have arisen under the U.S. Constitution, federal environmental statutes, or state statutes.

## ARGUMENT

It is axiomatic that the United States, as sovereign, is immune from suit except to the extent it consents to be sued.  United States v. Mitchell, 445 U.S. 535, 538 (1980).  Because the federal courts are courts of limited jurisdiction, if an action does not come within the limited grant of power derived from Article III of the U.S. Constitution and from Congress' legislative acts, a federal court does not have the power to hear or determine that action.  See Insurance Corporation of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982); Kokkonen v. Guardian Life Ins. Co of Am., 511 U.S. 375, 377 (1994); Mosley v. Cozby, 813 F.2d 659, 660 (5th Cir. 1987); Price v. United States, 69 F.3d 46, 49 (5th Cir. 1995) rehr'g denied 81 F.3d 520 (5th Cir. 1996), cert. denied 519 U.S. 927 (1996).  Further, the burden to establish jurisdiction rests on the party asserting it.  Kokkenen, 511 U.S. at 377 ("Federal courts . . .

possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") Here, plaintiffs cannot meet that burden.

**A.     There Is No Jurisdiction for this Court to Consider Plaintiffs' FTCA Claims Because Plaintiffs Have Not Properly Exhausted Their Administrative Remedies.[1]**

Absent a waiver of immunity, the United States is immune from suit in tort. Gregory v. Mitchell. 634 F.2d 199, 203 (5th Cir. 1981). Because the United States can be liable only to the extent that it has waived its sovereign immunity, due regard must be given to the terms of any waiver. Orleans v. United States, 425 U.S. 807, 814 (1976). Thus, FTCA suits against the United States must be filed in strict compliance with the FTCA's provisions. Reynolds v. United States, 748 F.2d 291, 292 (5th Cir. 1984).

The FTCA specifically provides that "[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property . . . unless the claimant shall have first presented the claim to the appropriate Federal agency . . . ." 28 U.S.C. § 2675(a). This requirement that an administrative claim be filed with the appropriate agency prior to filing suit is jurisdictional and "cannot be waived." Gregory, 634 F.2d at 203-04. The administrative claim requirement provides "a meaningful opportunity to resolve the matter

---

[1] Although the present motion is founded on 28 U.S.C. § 2675(a), the plaintiffs' action is also foreclosed by other limitations inherent in the FTCA, see id. § 2680 (setting forth numerous exceptions to the general provisions that waive immunity and confer jurisdiction), and by its failure to state a claim on which relief can be granted, absence of an actionable duty, force majeure, act of God, superseding cause, contributory negligence, assumption of the risk, perclusion, and other defenses. In addition, the Flood Control Act of 1928, 33 U.S.C. §§ 700 et seq., expressly retains immunity to actions that attempt to impose liability "for any damage from or by floods or flood waters." Id. § 702c.

3

without the necessity of judicial intervention." <u>Montoya v. United States</u>, 841 F.2d 102, 104 (5th Cir. 1988).

Minimal elements are required for presentment of a valid administrative claim: "a written notification of the injury-causing incident, a monetary claim in a sum certain for property damage and personal injury, and authorization by the claimant." <u>Id.</u> (citing 28 C.F.R. § 14.2(a) ("[A] claim shall be deemed to have been presented when a Federal agency receives . . . written notification of an incident, accompanied by a claim for money damages in a sum certain . . . and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent . . . or other representative.")). While "no particular form of notice is required," to be valid, the notice must include two key elements: it must "'(1) give[] the agency written notice of the claim sufficient to enable the agency to investigate and (2) place[] a value on the claim.'" <u>Graubarth v. United States</u>, 2005 WL 3543763 at *2 (E.D. La. 2005) (quoting <u>Wardsworth v. United States</u>, 721 F.2d 503, 505-06 (5th Cir. 1981)). "The notice and sum certain requirements 'ensure that federal agencies charged with making an initial attempt to settle tort claims against the United States are given full notice of the government's potential liability.'" <u>Id.</u> at *2 (quoting <u>Martinez v. United States</u>, 728 F.2d 694, 697 (5th Cir. 1984)).

Here, plaintiffs fail to satisfy these minimal requirements for presentment of a valid administrative claim, and thus the plaintiffs cannot establish that this Court has jurisdiction over their suit. Plaintiffs argue that the requirement of submitting an administrative claim to the appropriate federal agency prior to instituting suit under the FTCA is satisfied by virtue of the fact that they presented a copy of the original complaints filed in two civil actions, 05-4181 and

4

05-4237, to the Army Corps of Engineers as part of a request for information and documents made pursuant to the Freedom of Information Act (FOIA).  Plaintiffs' Complaint asserts the following:

> Plaintiffs aver that on October 12, 2005, they delivered to the United States Army Corps of Engineers, New Orleans District Office, copies of plaintiffs' Complaints in the following Civil Actions pending on this Court's docket:  [Case Nos. 04-4181 and 04-4237].  The Complaints which were delivered to the United States Army Corps of Engineers accompanied a Freedom of Information Act request for documents and other tangible things, and were specifically identified as 'pieces of litigation involving the United States of America, acting by and through its agency and instrumentality, the U.S. Army Corps of Engineers.'  Plaintiffs aver that by delivering copies of the referenced Complaints to the United States Army Corps of Engineers, and <u>by amending the original presentation to the agency by letter dated February 17, 2006</u> to the U.S. Army Corps of Engineers, each plaintiff has submitted the 'functional equivalent' of a valid administrative claim to the appropriate Federal agency, and that plaintiffs have, therefore, exhausted administrative remedies pursuant to the provisions of 28 U.S.C. § 2675, since more than six months has now elapsed since the claims were first presented, and each plaintiff opts to deem that passage of time as a final denial of his or her claim.

Compl. Part XIV at 10-11 (emphasis added).

Plaintiffs argument is without merit.  Plaintiffs do not attach to their Complaint copies of the October 12, 2005, FOIA request, the two civil complaints to which it refers, or the February 17, 2006, letter, which plaintiffs characterize as an amendment to the October 12 missive.  Mr. O'Dwyer's October 12, 2005, FOIA request is attached as Exhibit 1 to the United States' Motion to Dismiss.  His letter of February 17, 2006, is attached as Exhibit 2 to the Motion.  Mr. O'Dwyer's FOIA request is not the "functional equivalent" of a valid administrative tort claim.

Even though an administrative claim may be submitted in a form other than the standard form (SF-95), the claim must be one for money damages and contain certain specific elements of information.  See <u>Montoya</u>, 841 F.2d at 104; <u>Graubarth</u>, 2005 WL 3543763 at *2.  None of the

information submitted to the Army Corps of Engineers as part of a FOIA request made on October 12, 2005, satisfies the elements of a valid administrative claim. Mr. O'Dwyer's FOIA request is specifically labeled in multiple places as a "Freedom of Information Act Request." While it references the submission of two civil complaints as pending litigation against the United States, nothing in the document puts the agency on notice that a tort claim is being alleged against it through the document. Further, the request does not specify any personal injuries or property damage for which compensation might be sought, and it does not state a sum certain value for any claims that may be asserted against the United States. These elements are essential for a valid administrative claim. Graubarth, 2005 WL 3543763 at *2 (notice must be "sufficient to enable the agency to investigate," and it must "place[] a value on the claim"). Plaintiffs previously have argued that the October 12, 2005, FOIA request satisfied their obligation to file an administrative claim, which argument was flatly rejected by this Court in the plaintiffs' related case, In the Matter of the Complaint of Ingram Barge Company, Case No. 05-4372. See Order, Docket Number 161 (consolidated with Case No. 05-4419) at 5 n.3, attached at Tab 1 ("Claimants contend that a letter sent on October 12, 2005 to the Army Corps of Engineers constitutes the filing of an administrative claim. This letter is clearly a FOIA request which does not constitute a proper administrative claim.").

Plaintiffs cannot transform their counsel's FOIA request into a valid administrative claim by the attachment of copies of two previously filed civil complaints. A civil complaint does not qualify as an administrative claim; an administrative claim must be filed prior to institution of litigation. See Gregory, 634 F.2d at 203-04 (Section 2675(a) "requires that jurisdiction must exist at the time the complaint is filed."). Plaintiffs' argument that the civil complaints in two

6

lawsuits separate and distinct from the one here at issue can inform the agency of the claims that will be brought against it in a third suit defies logic and defeats the purpose of the FTCA's administrative claim requirement. Simply putting the agency on notice of "litigation" against it fails to satisfy the requirements that an administrative claim specific to the claim at issue must be filed with the agency. See Brady v. United States, 211 F.3d 499, 503 (9th Cir. 2000) (rejecting the same argument made by the plaintiffs here: "[A]lthough her first complaint may have given the agency 'notice' in one sense of the word, it did not give the agency the timely notice of a live controversy that would have allowed the agency to investigate administratively . . . . Plaintiff has not only failed to comply with the letter of 28 U.S.C. § 2675(a), she has, despite her argument to the contrary, failed to comply with the statute's spirit and purpose."). Moreover, the complaints in Case Nos. 05-4181 and 05-4237 themselves do not provide the information required for a valid administrative claim that satisfies 28 U.S.C. § 2675(a) and 28 C.F.R. § 14.2. Neither complaint includes a sum certain of damages claimed by each claimant. While the complaint in 05-4181 lists most of the same plaintiffs in the original complaint filed here, none of the plaintiffs' submissions include evidence that plaintiffs' counsel is authorized to represent each named plaintiff and each potential class member.[2] Additionally, the substance of the allegations

---

[2] Moreover, this Court lacks jurisdiction over an FTCA class action where, as here, the administrative prerequisites of suit have not been satisfied by or on behalf of each individual claimant. See In re Agent Orange Prod. Liab. Litig, 818 F.2d 194, 198 (2d Cir. 1987) aff'g in relevant part, In re Agent Orange Prod. Liab. Litig., 506 F.Supp. 757 (E.D. N.Y. 1980); Lunsford v. United States, 570 F.2d 221, 227 (8th Cir. 1977); Caidin v. United States, 564 F.2d 284 (9th Cir. 1977); Commonwealth of Pennsylvania v. Nat'l Ass'n of Flood Insurers, 520 F.2d 11, 20, 23-24 (3d Cir. 1975); cf. Keene Corp. v. United States, 700 F.2d 836, 841 (2d Cir. 1983).

of negligence in the two earlier complaints differ from the allegations in this action.[3]  Submission of the two previously filed complaints as part of a FOIA request to the agency did not put the agency on notice that the FOIA request was intended to be an administrative tort claim.

Were the initial October 12, 2005, FOIA request a valid FTCA administrative claim (which it plainly was not), then Mr. O'Dwyer's February 17, 2006, letter "amending the original presentation to the agency" (Compl. Part XIV at 11) reinitiated the six month period for the agency to consider the claim.[4]  See 28 C.F.R. § 14.2(c) ("Upon the timely filing of an amendment to a pending claim, the agency shall have six months in which to make a final disposition of the claim as amended and the claimant's option under 28 U.S.C. § 2675(a) shall not accrue until six months after the filing of an amendment.").  Six months have not passed since February 17.  Accordingly, because plaintiffs have failed to exhaust their administrative remedies even under their argument that a FOIA request is an administrative tort claim, the Court plainly lacks subject matter jurisdiction.  Montoya, 841 F.2d at 104; Martinez, 728 F.2d at 697; Gregory, 634 F.2d at 203-04.

---

[3] While there is some overlap between later amendments to the complaint in Case No. 05-4181 and the present action, the allegations in the original complaint do not match those in the present action, and the allegations of negligence in Case No. 05-4237 consist entirely of activity related to a barge rather than to Army Corps of Engineers activity related to design, construction, inspection, maintenance, and operation of a waterway system, as is the focus of plaintiffs' allegations in the present complaint.

[4] Neither the October 12, 2005, FOIA request, nor Mr. O'Dwyer's February 17, 2006, letter meet the requirements of a valid administrative claim.  The Army Corps of Engineers has written Mr. O'Dwyer in response to the February 17 letter, requesting that he provide adequate information to allow the agency to investigate the claims he asserts.  Specifically, the agency informed Mr. O'Dwyer that his letter does not satisfy the FTCA's administrative claim requirements.  This issue need not be addressed in the context of this Motion to Dismiss.

B.    **Plaintiffs Have No Other Viable Basis upon Which to Assert That this Court Has Subject Matter Jurisdiction over Claims Against the United States.**

None of the jurisdictional grounds cited in plaintiffs' Complaint, Part V, provide the Court with subject matter jurisdiction.  In addition to the Federal Tort Claims Act, plaintiffs allege jurisdiction pursuant to the Fifth Amendment of the United States Constitution, the general federal question jurisdictional statute, 28 U.S.C. § 1331, and several federal statutes, including the following: the Oil Pollution Act of 1990 (OPA); the Comprehensive Environmental Response Compensation and Liability Act (CERCLA); the Federal Water Pollution Control Act (WPCA); the Clean Water Act (CWA); the Clean Air Act (CAA); the National Environmental Policy Act (NEPA); the Toxic Substances Control Act (TSCA); the Resource Conservation and Recovery Act (RCRA); 28 U.S.C. § 1333(1); and the Suits in Admiralty Act, 46 U.S.C. § 741, et seq.  Plaintiffs also cite fourteen "Louisiana State laws, which would render a private person liable to plaintiffs under like circumstances to those presented in the case at bar." (Compl. Part VI at 6.)  None of the grounds cited by the plaintiffs supply this Court with jurisdiction over their action.

1.    **The United States Constitution**

The United States Constitution does not grant this Court subject matter jurisdiction over the plaintiffs' claims.  The United States has not waived sovereign immunity for constitutional tort claims against federal agencies, see Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 473-479 (1994), and the Constitution does not itself waive the government's sovereign immunity. See United States v. Testan, 424 U.S. 392, 399-402 (1976); Lynch v. United States, 292 U.S. 571, 582 (1934); cf. Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narc., 403 U.S. 388, 410 (1971) (Harlan, J. concurring) ("[h]owever desirable a direct remedy against the

9

government might be as a substitute for individual liability, the sovereign still remains immune

from suit"). Moreover, constitutional taking claims are not within the purview of this Court's

jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2) because plaintiffs seek more than

$10,000 in damages. See Wilkerson v. United States, 67 F.3d 112, 118 (5th Cir. 1995) (holding

that Fifth Amendment claims were within the exclusive jurisdiction of the Court of Federal

Claims). Plaintiffs' constitutional claims must be dismissed as this Court has no subject matter

jurisdiction over them.

        2.    28 U.S.C. § 1331

Plaintiffs cite 28 U.S.C. § 1331 as a basis for jurisdiction, but broad jurisdictional statutes

such as 28 U.S.C. §§ 1331 and 1332 do not operate as a general waiver of sovereign immunity.

See Koehler v. United States, 153 F.3d 263, 266, n.2 (5th Cir. 1998) (citing Voluntary

Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380 (5th Cir.1989), and describing the law as

"well-settled"). See also Beale v. Blount, 461 F.2d 1133, 1138 (5th Cir. 1972). Thus, citation to

28 U.S.C. § 1331 does not confer jurisdiction over the United States in this matter.

        3.    **Federal Environmental Statutes**

Plaintiffs's Complaint lists several federal environmental statutes as a basis for

jurisdiction: the Oil Pollution Act of 1990 (OPA); the Comprehensive Environmental Response

Compensation and Liability Act (CERCLA); the Federal Water Pollution Control Act (WPCA);

the Clean Water Act (CWA); the Clean Air Act (CAA); the National Environmental Policy Act

(NEPA); the Toxic Substances Control Act (TSCA); and the Resource Conservation and

Recovery Act (RCRA). None of these statutes apply to establish subject matter jurisdiction here.

First, the Court lacks subject matter jurisdiction to hear claims pursuant to RCRA, the CWA / WPCA, the CAA, the OPA, or TSCA because plaintiffs have either failed to file either the requisite notices of intent to sue or the requisite claims for damages prior to instigating this lawsuit for money damages. See 42 U.S.C. § 6972(b)(1)(A), (b)(2)(A) [RCRA]; 33 U.S.C. §1365(b)(1)(A) [CWA/WPCA]; 42 U.S.C.A. § 7604 [CAA]; 33 U.S.C. §§ 2701(3), 2713(a) [OPA]; 15 U.S.C. § 2619(b) [TSCA]; see also Hallstrom v. Tillamook County, 493 U.S. 20, 31(1989) (holding RCRA's citizen suit notice provision Act, 2 U.S.C. § 6972(b)(1), is a 'mandatory condition precedent' to filing a citizen suit); Boca Cigea Hotel, Inc. v. Bouchard Transportation Co., Inc., 51 F.3d 235, 237-38 (11th Cir 1995)(OPA's requirement that all claims for removal costs or damages be presented first to parties allegedly responsible for oil spill is mandatory condition precedent to filing suit).

Second, with respect to their claims under the citizen suit provisions of the CWA, CAA, RCRA and TSCA, plaintiffs are additionally barred from relief because they seek monetary damages for alleged past violations of the statutes, an impermissible remedy. See, e.g., Gwaltney of Smithfield v. Chesapeake Bay Foundation, 484 U.S. 49, 52 (1987) (holding that the CWA does not allow for damages for "wholly past violations"); Sierra Club v. Tennessee Valley Authority, 430 F.3d 1337, 1353-1357 (11th Cir. 2005) (holding citizen suit provision of CAA does not waive federal government's sovereign immunity with respect to punitive fines for past violations); Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co., 989 F.2d 1305, 1315 (2d Cir.1993) (dismissing claim under section 6972(a)(1)(A) because the "claim alleges a 'wholly past' RCRA violation"); Brewer v. Raven, 680 F.Supp. 1176, 1184 (M.D. Tenn.1988) (relief available only for "ongoing" violations of TSCA).

11

Third, neither RCRA, CERCLA, the OPA, or TSCA contain a broad waiver of sovereign immunity for claims for money damages. See, e.g., Marina Bay Realty Trust, LLC v. United States, 407 F.3d 418, 423 (1st Cir. 2005) ("In our review of the statutory language [of RCRA], we first note the obvious: there is no express waiver of immunity for private suits seeking monetary damages."); Holloway v. Gaylord Chemical, 922 F.Supp. 1154, 1156-1157 (E. D. La. 1996) (holding that CERCLA confers a private right of action only upon "any . . . person" who has incurred "necessary costs of response . . . consistent with the national contingency plan" and noting that "in fifteen years of CERCLA litigation, only one court has even entertained a mass tort lawsuit under CERCLA, and even that court found the plaintiffs' federal claims legally ungrounded."); 5 U.S.C. § 702 (OPA provision failing to waive sovereign immunity for monetary damage claims against the United States); 15 U.S.C. § 2688 (TSCA provision failing to waive sovereign immunity for monetary damage claims against the United States). While parties may seek "response" or "removal" costs under CERCLA and OPA, this limited form of monetary relief is only appropriate to compensate a private party's performance of a clean-up pursuant to the national contingency plan. See 33 U.S.C. § 2702(b)(1)(B) [OPA], 42 U.S.C. § 9607(a)(4)(B) [CERCLA]. Here, plaintiffs did not perform such a clean-up, nor did they incur response costs. Indeed, the very basis for their allegations is the Government's purported failure to act in response to Hurricane Katrina.

Finally, Plaintiffs' claims premised on NEPA, 42 U.S.C. § 4321 et seq., are flawed. A separate statute, the Robert T. Stafford Disaster Relief and Emergency Assistance Act, also known as the Disaster Relief Act of 1974, was enacted to provide federal assistance and relief to states during disasters. 42 U.S.C. §§ 5121 et seq. Congress declared that "because disasters

12

cause loss of life, human suffering, loss of income, and property loss and damage," and "disrupt

the normal functioning of governments and communities," and "adversely affect individuals and

families with great severity," "special measures" including "the reconstruction and rehabilitation

of devastated areas, are necessary." 42 U.S.C. § 5121(a)(1). The United States is statutorily

excluded from the requirements of NEPA pursuant to 42 U.S.C. § 5159, which provides:

> An action which is taken or assistance which is provided pursuant to section 5170a,
> 5170b, 5172, 5173, or 5192 of this title, including such assistance provided pursuant to
> the procedures provided for in section 5189 of this title, which has the effect of restoring
> a facility substantially to its condition prior to the disaster or emergency, shall not be
> deemed a major Federal action significantly affecting the quality of the human
> environment within the meaning of the National Environmental Policy Act of 1969 (83
> Stat. 852) [42 U.S.C.A. § 4321 et seq.]. Nothing in this section shall alter or affect the
> applicability of the National Environmental Policy Act of 1969 to other Federal actions
> taken under this chapter or under any other provisions of law.

42 U.S.C. § 5159. Thus, the Stafford Act exempts certain actions taken in response to a natural

disaster, such as Hurricane Katrina, from NEPA's reach. See 42 U.S.C. § 5159. Moreover,

NEPA provides no monetary remedy, but instead, is a process-oriented statute that mandates no

particular result. See Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 371 (1989)

("NEPA does not work by mandating that agencies achieve particular substantive environmental

results. Rather, [it] promotes its sweeping commitment to prevent or eliminate damage to the

environment and biosphere by focusing Government and public attention on the environmental

effects of proposed agency action."). Thus, plaintiffs' NEPA claims against the United States

premised fail.

### 4.      State Environmental Statutes

The United States has not consented to be sued under the state statutes cited by the

plaintiffs, except possibly in tort, which is precluded for the reasons discussed in § A of the

United States Memorandum of law.  It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983) (citations omitted).  Waivers of sovereign immunity "cannot be implied but must be unequivocally expressed." <u>Irwin v. Department of Vets. Affairs</u>, 498 U.S. 89, 95 (1991) (citations omitted); <u>Department of the Army v. Blue Fox, Inc.</u>, 525 U.S. 255, 260-61 (1999).  Absent a waiver of sovereign immunity, a district court lacks jurisdiction over claims against the United States.  <u>See, e.g.</u>, <u>Mitchell</u>, 463 U.S. at 212; <u>Testan</u>, 424 U.S. at 399. The burden of demonstrating that jurisdiction exists rest squarely with the plaintiff.  <u>See generally</u> <u>Whitmire v. Victus Ltd.</u>, 212 F.3d 885, 887 (5th Cir.2000).  Moreover, none of the state environmental statutes provide an express private right of action against the United States that is applicable in this case.  Nor is such a right implied.  <u>See, e.g.</u>, <u>Cort v. Ash</u>, 422 U.S. 66, 78 (1975) (setting forth factors for determining when a private right of action is implicit in a statute).

In addition, because plaintiffs' claims under federal environmental statutes fail, this Court should decline to exercise supplemental jurisdiction over the claims under state environmental statutes.  A district court should decline jurisdiction over state law claims when all federal claims are dismissed.  <u>Smith v. Amedisys Inc.</u>, 298 F.3d 434, 447 (5th Cir. 2002).  As the Supreme Court has stated, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law . . . . Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966).  Because plaintiffs' federal

14

environmental claims are all subject to dismissal, the Court should decline to exercise

supplemental jurisdiction over plaintiffs' remaining state law claims, and dismiss them pursuant

to 28 U.S.C. § 1367(c)(3).

5.     28 U.S.C. § 1333(1) and the Suits in Admiralty Act

The plaintiffs also cite as a basis for jurisdiction the Court's admiralty and maritime

jurisdiction pursuant to 28 U.S.C. § 1333(1) and the Suits in Admiralty Act, 46 U.S.C. App.

§ 741, et seq. This Court's recent opinion and order in the plaintiffs' related case, In the Matter

of the Complaint of Ingram Barge Company, Case No. 05-4372, Docket Number 161

(consolidated with Case No. 05-4419), attached at Tab 1, makes clear that the Suits in Admiralty

Act does not provide this Court with jurisdiction over the plaintiffs' claims. Judge Berrigan's

opinion analyzes the plaintiffs' claims premised on defective design of the levees and waterway

system, stating that "[a]fter a careful review of the history and development of admiralty

jurisprudence, it does not appear that the scope of admiralty jurisdiction was intended to

encompass the allegations made in this case. . . . [T]he claimants have failed to show a

'substantial relationship to traditional maritime activity.'" Id. at 8 (citing Grubart, Inc. v. Great

Lakes Dredge & Dock, 513 U.S. 527, 534 (1995)). The opinion concludes that "the potentially

maritime flavor of the structures involved in this accident is insufficient, by itself, to give this

Court admiralty jurisdiction." Id. at 12.

As explained by Judge Berrigan, the Suits in Admiralty Act fails to supply subject matter

jurisdiction over the plaintiffs' claims. Nor have the plaintiffs established subject matter

jurisdiction pursuant to the Admiralty Extension Act, 46 U.S.C. App. § 740, which extends the

admiralty and maritime jurisdiction of the United States to include torts that occur on navigable

waters but cause injury or damage on land.  See Grubart, 513 U.S. at 532.  The Admiralty

Extension Act includes an administrative exhaustion requirement similar to that of the FTCA,

specifically providing that "no suit shall be filed against the United States until there shall have

expired a period of six months after the claim has been presented in writing to the Federal

agency owning or operating the vessel causing the injury or damage."  46 U.S.C. App. § 740.

The Court has no admiralty jurisdiction pursuant to the Admiralty Extension Act because, inter

alia, the plaintiffs have not met the exhaustion requirements of the Act.

    Because the Court lacks subject matter jurisdiction pursuant to the Suits in Admiralty Act

or the Admiralty Extension Act, the plaintiffs' only avenue for relief is pursuant to the FTCA,

which requires exhaustion of administrative remedies prior to filing suit.  28 U.S.C. § 2675(a).[5]

---

[5] If the plaintiffs could sue in admiralty, the Court would lack FTCA subject matter
jurisdiction over any tort claims because they would be excluded from the FTCA waiver of
sovereign immunity.  28 U.S.C. § 2680(d).

## CONCLUSION

For the foregoing reasons, this Court lacks subject matter jurisdiction over the Plaintiffs'

action, and the United States respectfully requests that the Court grant its Motion to Dismiss.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

PAUL F. FIGLEY
Deputy Director, Torts Branch

   /s/ Traci L. Colquette
Traci L. Colquette
Kara K. Miller
Trial Attorneys, Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 888
Washington, D.C. 20044
(202)-305-7536 / (202) 616-5200 (Fax)
Attorneys for the United States

Dated: June 12, 2006

17

# TAB 1

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF THE                    CIVIL ACTION
COMPLAINT OF INGRAM BARGE
COMPANY, AS OWNER OF THE                No. 05-4419
ING4727, PETITIONING FOR
EXONERATION FROM OR                     SECTION "C"
LIMITATION OF LIABILITY

## ORDER

Before the Court is the United States' Motion to Dismiss for lack of subject matter

jurisdiction (Rec. Doc. 88).  The government contends that claimants have failed to exhaust their

administrative remedies as required for this Court to assert jurisdiction under various federal

statutes including the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680 ("FTCA").

For the following reasons, the motion is **GRANTED**.

Background:

The allegations in this case arise out of the damage caused by the flooding that ravaged

New Orleans after Hurricane Katrina.  In particular, this action concerns the injuries to people

and property resulting from the flooding of the Industrial Canal, the Mississippi River Gulf

Outlet ("MRGO"), and the Gulf Intracoastal Waterway ("GICW") which was allegedly caused

by breaches in the levees and floodwalls that contain those waterways.  The precise cause of the

levee and floodwall breaches and the resultant flooding is a matter of substantial debate and

impacts the outcome of the jurisdictional question.

Claimants' various filings amount to the following three specific claims against the

United States:

1.) Defective design and construction of the Industrial Canal floodwall by the USACE

(Rec. Doc. 12).

2.) Failure by the USACE and the United States Coast Guard ("USCG") to order the

intentional sinking of the Ingram barge in the face of an approaching Category 5 hurricane (Rec.

Doc. 12).[1]

3.) Negligent design, construction, and maintenance of the MRGO and the levee and

floodwall systems along the MRGO, GICW, and Industrial Canal. (Rec. Doc. 108).


The Law:


Whether or not the Court has jurisdiction to hear the various claims raised against the

United States depends on the source of that jurisdiction.  There are three principal statutes which

could plausibly confer jurisdiction.[2]  They are the FTCA, the Suits in Admiralty Act, 46 U.S.C. §

---

[1]Claimants have yet to articulate precisely how the United States incurred a duty to look after a barge which was owned and managed by private companies.  For purposes of this motion, however, the Court will assume the claimants can show that the United States had such a responsibility.

[2]In an effort to circumvent the FTCA and AEA exhaustion requirements, claimants have named a myriad of other asserted sources of jurisdiction.  The government is correct for the reasons it stated in its reply memoranda that the claims raised under those other statutes and provisions are fraught with jurisdictional defects and do not save claimants from having to exhaust their FTCA and AEA claims.

2

742 ("SAA"), and the Admiralty Extension Act, 46 U.S.C. § 740 ("AEA"). While each of the

three statutes contain an explicit waiver of sovereign immunity, the statutes differ as to the

procedural requirements that must be met before the Court has jurisdiction to entertain the suit.

The next section describes the purpose, jurisdictional scope and procedural requirements of each

of the three statutes before applying them to the claims raised in this case.

The FTCA:

The FTCA makes the United States liable for the negligent acts of its employees.  The

government is correct to argue that § 2675 requires that administrative remedies be exhausted

before a suit may be filed against the government under this statute.  Failure to do so leaves "the

district court . . . without subject matter jurisdiction." Price v. United States, 81 F.3d 520, 521

(5th Cir. 1996).  Further, courts "must strictly construe the statute, any ambiguities will be

resolved in favor of the sovereign." McLaurin v. United States, 392 F.3d 774, 780 (5th Cir.

2004).  As noted by the Fifth Circuit,"[S]uits filed [under the FTCA] must be filed in exact

compliance with the terms of consent . . ." Gregory v. Mitchell, 634 F.2d 199 (1981).  Suits that

claim some sort of tortious conduct by the United States generally arise under the FTCA and

such claims therefore generally require exhaustion.  The SAA, however, provides an exception

to the exhaustion requirement for admiralty and maritime claims against the United States,

including maritime torts.

The SAA:

3

The SAA waives sovereign immunity for admiralty proceedings against the United States. Unlike the FTCA, the SAA contains no statutory requirement that claims be administratively exhausted before being filed in court. By the express terms of the FTCA, the FTCA "shall not apply to . . . [a]ny claim for which a remedy is provided by the Suits in Admiralty Act." 28 U.S.C. § 2680(d). Courts interpreting this language have concluded that claims which could be maintained in admiralty under the SAA are not actionable under the FTCA. See McCormick v. United States, 680 F.2d 345 (5th Cir. 1982). Determining whether a claim arises under the SAA or FTCA involves the application of a standard admiralty jurisdictional analysis, such as that set forth in Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527 (1995).

The AEA:

The AEA provides: "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, *caused by a vessel on navigable water*, notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C. § 740 (emphasis added). The AEA's purpose was nearly exclusively to overrule "cases holding that there is no admiralty jurisdiction when a negligently operated ship on navigable waters collides with a bridge or pier causing substantial property damage." Adams v. Harris County, Tex., 316 F.Supp. 938 (D.C. Tex. 1970). It is undisputed that the damages alleged in this case occurred on land, satisfying the AEA requirement that the "damage or injury be done or consummated on land." However, the caselaw makes clear that the AEA only applies

4

when the injury was caused "by a vessel" and "her appurtenances." Egorov, et. al., v. Terriberry, Carroll, et. al., 183 F.3d 453, 456 (5th Cir. 1999). The AEA contains an explicit administrative exhaustion requirement that mirrors that of the FTCA.

In sum, negligence claims against the United States that do not arise under this Court's admiralty jurisdiction are filed pursuant to the FTCA and require administrative exhaustion. Negligence claims against the United States that *do* arise under this Court's admiralty jurisdiction will require exhaustion only if the allegation involves damages on land *caused by a vessel*. If the claim alleges damage on land caused by a vessel, the claim arises under the AEA and requires administrative exhaustion. If the claim does not involve damage caused by a vessel, but nonetheless still arises under the Court's admiralty jurisdiction, as claimants contend, the claim is made pursuant to the SAA and does not require administrative exhaustion.[3]

Jurisdictional Analysis of barge-related claims:

Throughout history, Congress and the Supreme Court have continuously reshaped the

---

[3] As a factual matter, the Court finds that claimants have not in fact fulfilled the procedural administrative requirements set forth in the various statutes under which they seek jurisdiction. Claimants contend that a letter sent on October 12, 2005 to the Army Corps of Engineers constitutes the filing of an administrative claim. This letter is clearly a FOIA request which does not constitute a proper administrative claim. The filing of a deficient administrative claim is tantamount to no filing at all. Industrial Indemnity Co. v. United States, 504 F.Supp. 394 (E.D.Cal. 1980). Claimants additionally argue that they subsequently filed a proper administrative claim (as early as January 10, 2006) which they claim was "denied" by the agency via a letter to claimants' counsel Mr. O'Dwyer which stated, "Your clients have not filed a valid FTCA administrative claim" citing procedural deficiencies. Whether or not claimants' January 10th submissions constitute a valid administrative claim, they certainly have not been finally denied by the agency, nor has six months passed since a valid claim was filed. The statutory requirements to establish jurisdiction in this case have not been met.

scope of the federal judiciary's authority to hear admiralty cases. See, e.g. Grubart, Inc. v. Great

Lakes Dredge & Dock, 513 U.S. 527, 532 (1995) (describing history of admiralty jurisdiction);

Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249 (1972); Foremost Insurance Co. v

Richardson, 457 U.S. 668 (1982); Sisson v. Ruby, 497 U.S. 358 (1990).  Presently, in order to

invoke federal admiralty jurisdiction under 28 U.S.C. 1333(1), a party must satisfy each of the

so-called "location" and "connection"[4] tests.  Grubart, 513 U.S. at 534; see also In re Madison

Coal & Supply Co., Inc., 321 F.Supp.2d 809, 812 (S.D.W.Va. 2003)("Failure to establish either

the location or the connection test is fatal to an assertion of admiralty jurisdiction.").

        The location test, which emerges in part from the AEA, asks "whether the tort occurred

on navigable waters or whether injury suffered on land was caused by a vessel on navigable

water."  Grubart, 513 U.S. at 534; see also 46 U.S.C. § 740.  Courts read the "caused by"

language of the statute to require the traditional tort law concept of "proximate cause."  Margin

v. Sea-Land Services, Inc., 812 F.2d 973, 976 (5th Cir. 1987)("The vessel or its defective

appurtenances must be the proximate cause of the accident.  This court has refused to extend the

reach of the Act absent proximate cause"); See also Grubart, 513 U.S. at 536 ("The Act uses the

phrase 'caused by,' which more than one Court of Appeals has read as requiring what tort law

has traditionally called 'proximate causation.'").

        The connection test flows from the Supreme Court admiralty jurisprudence culminating

in its opinion in Sisson.  The test has two parts.  First, a court must "assess the general features

of the type of incident involved to determine whether the incident has a potentially disruptive

impact on maritime commerce."  Grubart, 513 U.S. at 534 (quoting Sisson, 497 U.S. at 363-

------

[4] The "connection" test is often referred to as the "nexus" test.  See, e.g., Complaint of Nolty
Theriot, Inc., 841 F.Supp. 209 (S.D.Tex. 1994).

64)(internal citations and quotations omitted).  Second, "a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."  Id. (quoting Sisson, 497 U.S. at 364-65)(internal citations and quotations omitted).See Sisson, 497 U.S. at 362-67.  In applying the two-part Sisson inquiry, courts must bear in mind that "protecting commercial shipping is at the heart of admiralty jurisdiction." Id. at 362.

The barge-related claims are similar to those of Grubart itself where jurisdiction was found arising under the AEA.  Grubart involved flooding from the Chicago River which caused damage in the basements of buildings in downtown Chicago, among other places.  The flood was allegedly caused by a "crane, sitting on a barge in the river next to a bridge" which was used to drive piles into the riverbed above a freight tunnel which later collapsed, causing water to flow through the tunnel into certain buildings.  Id. at 529-30.  The Court characterized the incident as "*damage by a vessel in navigable water to an underwater structure*."  Id. at 539 (emphasis added).  Indeed, claimants have alleged the classic situation to which the AEA was intended to apply: a vessel that collides with a land-based structure causing damage on land.  See, e.g., Loeber v. Bay Tankers, Inc., 924 F.2d 1340 (5th Cir. 1991); Turner Terminals Inc. v. United States, 177 F.2d 844 (5th Cir. 1949).  Claimants' allegation that the United States failed to intentionally sink the barge, which then ran into the levee, falls squarely under the AEA, which has an administrative exhaustion requirement.  Failure to comply with the requirement leaves this Court without jurisdiction, and that claim is therefore **DISMISSED**.


Jurisdictional Analysis of non-barge related claims:

7

The non-barge related claims -- defective design of the various levees and waterway systems discussed above -- as alleged raise an atypical set of circumstances in admiralty jurisprudence that call for a reexamination of the history and purpose of admiralty jurisdiction. When a vessel causes navigable waters to spill onto the land and damage land-based structures and individuals, the maritime nexus is obvious, and explicitly contemplated by statutes like the AEA. Here, the proximate cause of the damage is unrelated to any vessel and yet the central importance of navigable waterways in the events of this case injects an undeniable maritime flavor. The Court is thus faced with the relatively novel question of whether admiralty jurisdiction could somehow extend to include claims involving land-based damage without any involvement of a vessel. After a careful review of the history and development of admiralty jurisprudence, it does not appear that the scope of admiralty jurisdiction was intended to encompass the allegations made in this case. Doctrinally speaking, this case fails under the second part of the Grubart inquiries – that is, the claimants have failed to show a "substantial relationship to traditional maritime activity." Grubart, 513 U.S. at 534.[5]

To assert admiralty jurisdiction over these claims would not further the general purpose for which admiralty jurisdiction exists. Fundamentally, admiralty jurisdiction exists to allow federal courts to oversee and protect maritime commerce. Commentators and courts agree that

---

[5]The claimants assert that this case should be analyzed according to the four-part test laid out in Kelly v. Smith, 485 F.2d 520 (5th Cir. 1973). There are two fundamental flaws with the claimants' argument. First, Kelly and its test were explicitly abrogated by Grubart. Grubart, 513 U.S. at 544-545. Second, the claimants' application of the outdated test conflates their various claims against the United States by relying heavily on the vessel's involvement in the damage. This jurisdictional analysis separates the various claims made by the claimants, as one must, and this particular portion assumes no vessel involvement in the injuries sustained.

the "business of shipping" is at the heart of maritime law and admiralty jurisdiction. See Black, Admiralty Jurisdiction: Critique and Suggestion, 50 COLUM.L.REV. 259 (1950)(suggesting that the proper allocation of admiralty jurisdiction in tort should be "all those cases seeking relief for tortious conduct with respect to the subject matter of . . . injuries to vessels or other maritime subjects, or injuries to persons taking place in connection with the conduct of the business of shipping."); Atlantic Transport Co. v. Imbrovek, 234 U.S. 52 (1914)(finding "the relation of the wrong to maritime service, navigation, and to commerce on navigable waters" sufficient to assert admiralty jurisdiction); McGuire v. City of New York, 192 F.Supp. 866 (D.C.N.Y. 1961) "(Admiralty law is, in fact, the law of commerce. It was engendered as a result of the needs of commerce and flourished because of those same needs. Where it was feared that local ordinances or decisions might unduly impinge on international or interstate commerce, local statutes were held inapplicable in the face of the need for uniformity in maritime law. The touchstone has been whether the action, tort for example, was not merely one of local concern but was in fact a thing having an intimate relation with navigation and interstate and foreign commerce. . . . *But the guide to admiralty jurisdiction must be the needs of the sea or the needs of seagoing commerce*.")(emphasis added). Additionally, admiralty jurisprudence places special emphasis on the involvement of vessels in the assertion of admiralty jurisdiction. See Robinson, Admiralty, § 8 (1939) ("Merely because events occur upon navigable waters does not put them within the admiralty and maritime jurisdiction. Transactions are 'maritime' only when in some way connected with a 'vessel.'"); Benedict, Admiralty § 61 (6th ed. 1940) ("Maritime causes naturally center around the ship, the great agent of maritime enterprise and affairs.").; McGuire, 192 F.Supp. at 871 (collecting cases and noting, "The cases, with varying degrees of specificity,

9

have adopted the necessity of a vessel as part of their permanent background.")

It is for those reasons that land-based structures such as piers and docks have been

"consistently deemed extensions of land," Victory Carriers, Inc. v. Law, 404 U.S. 202, 206-207

(1971) and therefore outside the scope of admiralty jurisdiction.  In affirming a dismissal for

want of admiralty jurisdiction where an action *in rem* was filed against a vessel which had

crashed into a drawbridge, the Supreme Court asserted in The Troy:

> That it appears from the averments of the libel that the bridge alleged to have
> been injured was a structure on land, for purposes of land travel and convenience
> exclusively, not erected, maintained, or operated in any sense or in any degree in
> aid of navigation, but, on the contrary, an obstruction and impediment to the
> navigation of a public navigable water channel and highway, a part of the public
> waters of the United States, then and there navigable to ships engaged in
> commerce and navigation.

208 U.S. 321 (1908).


This remains true in the situation more analogous to this case where the claim is that the land-

based structure itself was defective.  In In re Silver Bridge Disaster Litigation, the Southern

District of West Virginia considered whether maritime law could apply to certain claims against

the United States filed under the FTCA when a federally owned bridge collapsed causing

numerous deaths in the navigable waters of the Ohio River.  Applying a standard jurisdictional

analysis, the court ruled that the case lacked the requisite maritime nexus.  In particular, it held,

"[T]he persons injured were not performing maritime functions or roles; the automobiles and

trucks *and the bridge* were not maritime instrumentalities; nor were the causes of the injuries

maritime, although death or injury may well have been ultimately caused by the impact of hitting

the Ohio River or drowning in it."  In re Silver Bridge Disaster Litigation, 381 F.Supp. 381, 943

(S.D.W.Va. 1974) (emphasis added).

A levee is a structure fixed to the land whose fundamental purpose is to protect the land-based community from flood waters.  See, e.g., http://en.wikipedia.org/wiki/Levee ("The main purpose of an artificial levee is to prevent flooding of the adjoining countryside. . .").  Although its existence may have some impact on the nature of the water it confines, it is a stretch to claim that levees are built for reasons substantially related to maritime commerce.  This type of structure is therefore distinguishable from other fixed land-based structures like beacons and lighthouses whose purpose has been found by courts to be closely related to the business of the sea.  See United States v.Evans, 195 U.S. 361 (1904)(Reversing a dismissal for want of jurisdiction where a vessel ran into and destroyed a beacon, noting "It is enough to say that we now are dealing with an injury to *a government aid to navigation* from ancient times subject to the admiralty,-a beacon emerging from the water,-injured by the motion of the vessel. . .") (emphasis added).  A levee is more akin to those structures like bridges, whose fixed land-based nature and non-maritime purpose have been found not to need the protection of a uniform body of federal law that is accorded vessels which roam the sea for business purposes.

Even were the Court to find that levees serve a dual purpose -- one of which being related to maritime commerce -- there is no support in the caselaw for asserting admiralty jurisdiction in this case.  Indeed, the arguments raised by claimants in this case resemble those already considered, and rejected, by the Fifth Circuit.  Adams v. Harris County, Tex. involved damages sustained by a motorcyclist who crashed into part of a drawbridge which crossed Cedar Bayou, a navigable stream.  452 F.2d 994 (5th Cir. 1971).  The bridge itself was permanently connected to the roadway and suspended over the water by permanent pilings driven into the channel below.

11

Adams, 452 F.2d at 995.  At the time of the accident, the bridge was raised to allow a small

pleasure boat to pass underneath.  Id.  The Fifth Circuit in Adams noted the fact that "the sole

and exclusive function of a drawbridge . . . is to allow maritime traffic to pass along navigable

waters."  Id. at 997.  Further, the court in that case considered the relevance of the fact that a

vessel was traveling underneath the bridge at the time of the accident, thus strengthening the

relation to maritime commerce..  Nonetheless, the Adams court rejected what it considered a

novel argument that "the relationship of [the] injuries was so substantially related to maritime

commerce as to be embraced by admiralty jurisdiction."  Id. at 997.  The court found it

dispositive of the jurisdictional question that "the injuries in question occurred on a permanently

fixed extension of land and in the absence of any maritime causation other than the approach of a

vessel, without more."  Id.  Thus, the potentially maritime flavor of the structures involved in

this accident is insufficient, by itself, to give this Court admiralty jurisdiction over the non-barge

related claims.  The Court thus finds that those claims arise under the FTCA, not the SAA, and

they are accordingly **DISMISSED** for failure to exhaust administrative remedies.

New Orleans, Louisiana, this 24th day of May, 2006.

HELEN G. BERRIGAN

UNITED STATES DISTRICT JUDGE

12

## CERTIFICATE OF SERVICE

I, Traci L. Colquette, hereby certify that on June 12, 2006, I served a true copy of the United States' Motion to Dismiss, Proposed Order, Notice of Hearing, and Memorandum in Support upon the following parties by ECF, electronic mail, facsimile, or first class mail:

William Aaron
waaron@goinsaaron.com

Neil Abramson
abramson@phelps.com

Jonathon Beauregard Andry
jandry@andrylawfirm.com

Thomas P. Anzelmo
tanzelmo@mcsalaw.com

Judy Barrasso
jbarrasso@barrassousdin.com

Daniel E. Becnel, Jr.
dbecnel@becnellaw.com

Robert Becnel
ROBBECNEL@aol.com

Kelly Cambre Bogart
kbogart@duplass.com

Terrence L. Brennan
tbrennan@dkslaw.com

Joseph Bruno
jbruno@brunobrunolaw.com

Thomas Darling
tdarling@grhg.net

Kevin Derham
kderham@duplass.com

Joseph Vincent DiRosa Jr.
jvdirosa@cityofno.com

Walter Dumas
wdumas@dumaslaw.com

Lawrence Duplass
lduplass@duplass.com

Calvin Fayard
calvinfayard@fayardlaw.com

Thomas Francis Gardner
gardner@bayoulaw.com

Thomas Gaudry
tgaudry@grhg.net

Joseph Guichet
jguichet@lawla.com

Jim S. Hall
jodi@jimshall.com

Robert Harvey
rgharvey@bellsouth.net

Herman C. Hoffmann, Jr.
hhoffmann@spsr-law.com

David Blayne Honeycutt
DBHoneycutt@aol.com

Ralph Hubbard
rhubbard@lawla.com

Tamara Kluger Jacobson
tkjacobson@aol.com

Michael Courtney Keller
kellerm@ag.state.la.us

18

Stephen Kreller
sskreller@gmail.com

Hugh Lambert
hlambert@lambertandnelson.com

John M. Landis
jlandis@stonepigman.com

Mickey Landry
mlandry@landryswarr.com

Wade Langlois
wlanglois@grhg.net

Wayne J. Lee
wlee@stonepigman.com

F. Gerald Maples
federal@geraldmaples.com

Ben Louis Mayeaux
bmayeaux@ln-law.com

Gordon McKernan
gemckernan@mckernanlawfirm.com

Gerald A. Melchiode
jmelchiode@gjtbs.com

Gerald Edward Meunier
dmartin@gainsben.com

Penya Moses-Fields
pmfields@cityofno.com

James Bryan Mullaly
jamesmullaly1@hotmail.com

Betty Finley Mullin
bettym@spsr-law.com

J. Wayne Mumphrey

jwmumphrey@mumphreylaw.com

John Francis Nevares
jfnevares-law@microjuris.com

James L. Pate
jpate@ln-law.com

Ronnie Penton
rgp@rgplaw.com

Drew A. Ranier
dranier@rgelaw.com

Michael R.C. Riess
mriess@kingsmillriess.com

Camilo Kossy Salas
csalas@salaslaw.com

David Scott Scalia
DAVID@brunobrunolaw.com

George Simno
gsimno@swbno.org

Randall A. Smith
rasmith3@bellsouth.net

Christopher Kent Tankersley
ctankersley@burglass.com

Sidney Torres
storres@torres-law.com

William Treeby
wtreeby@stonepigman.com

Richard John Tyler
rtyler@joneswalker.com
Gregory Varga
gvarga@rc.com

Jesse L. Wimberly

19

wimberly@nternet.com

Bob Wright
bobw@wrightroy.com

Ashton R. O'Dwyer, Jr.
arod@odwyerlaw.com

Victor Elbert Stilwell, Jr.
vstilwell@dkslaw.com

Charles F. Seemann, Jr.
cseemann@dkslaw.com

Christopher W. Martin
martin4@mdjwlaw.com

Martin R. Sadler
sadler@mdjwlaw.com

David R. Simonton
dsimonton@sonnenschein.com

John Herr Musser
jmusser@bellsouth.net

Dennis Phayer
dphayer@burglass.com

Julia E. McEvoy
jmcevoy@JonesDay.com

George T. Manning
gtmanning@jonesday.com

Wystan M. Ackerman
wackerman@rc.com

Adrian Wagerzito
adrianwagerzito@jonesday.com

Andy Greene
agreene@sonnenschein.com

Jerry McKernan

jemckernan@mckernanlawfirm.com

Belhia Martin
belhiamartin@bellsouth.net

James Rather
jrather@mcsalaw.com

Seth Schmeeckle
sschmeeckle@lawla.com

Matthew D. Schultz
mschultz@levinlaw.com

Clay Mitchell
cmitchell@levinlaw.com
ksmith@levinlaw.com

Nina D. Froeschle
nfroeschle@osmlaw.com

Thomas V. Girardi
tgirardi@girardikeese.com

John W. deGravelles
deidson@dphf-law.com

Craig Frank Holthaus
fholthaus@dphf-law.com

Samuel Gabb
sgabb@lundydavis.com

James Roussel
jroussel@bakerdonelson.com

Arthur Gordon Grant, Jr.
ggrant@monbar.com

Lawrence D. Wiedemann
FAX: 504-581-4336

Clayton Morris Connors
625 Baronne Street
New Orleans, LA 70113

Deborah Louise Wilson
317 Magazine Street
New Orleans, LA 70130

Joseph W. Hecker
619 Europe Street , 2nd Floor
Baton Rouge, LA 70806

Vernon Palmer Thomas
1524 N. Claiborne Ave.
New Orleans, LA 70116

William A. Percy, III
Louisiana Supreme Court Bldg.
400 Royal St.
Room 1112
New Orleans, LA 70130

/s/ Traci L. Colquette
_____
Traci L. Colquette

21