# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, ET AL., | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 05-4182 |
| | * | |
| BOH BROTHERS CONSTRUCTION CO., | * | SECTION "K"(2) |
| L.L.C., ET AL. | * | CONS. KATRINA CANAL |
| | * | |
| THIS DOCUMENT RELATES TO: | * | |
| 05-6073 | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SECOND AMENDED CLASS ACTION COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come **DAVID J. KIRSCH** and **ALI HAGHIGHI**, both persons of the full age of majority, on behalf of themselves and all others similarly situated, and submit the following Second Amended Complaint to this Honorable Court:

1.

Plaintiffs file this Second Amended Class Action Complaint on their own behalf, and on behalf of a class of Plaintiffs similarly situated but as yet unidentified, as Plaintiffs herein represent that they have injuries common to all those similarly situated who incurred damages arising out of the breach and failure of the hurricane protection levees and floodwalls which occurred in the Parishes of Orleans and Jefferson, State of Louisiana in the wake of Hurricane Katrina.

2.

Named Plaintiffs/Class Representatives herein are David J. Kirsch, a person of the

full age of majority and domiciled in the Parish of Jefferson, State of Louisiana, and Ali Haghighi, a person of the full age of majority and domiciled in the Parish of Orleans, State of Louisiana.

3.

Made Defendants herein are:

a. **BOH BROS. CONSTRUCTION COMPANY, LLC.**, a Louisiana Limited Liability Company doing business within the Parishes of Orleans and Jefferson, State of Louisiana;

b. **WASHINGTON GROUP INTERNATIONAL, INC.**, a non-Louisiana corporation, f/k/a Morrison Knudsen Corporation, f/k/a/ MK–Ferguson Company, f/k/a The H. K. Fergusen Company, authorized to do and doing business in the State of Louisiana, and in the Parish of Orleans, with its domicile in the State of Ohio, its principal place of business in the State of Idaho, and its Louisiana principal place of business in Baton Rouge, Louisiana;

c. **VIRGINIA WRECKING COMPANY, INC.**, a non-Louisiana corporation authorized to do and doing business in the State of Louisiana, and in the Parish of Orleans, with its domicile in the State of Alabama, its principal place of business in the State of Alabama, and its Louisiana principal place of business in Jefferson, Louisiana;

d. **GULF GROUP, INC. OF FLORIDA**, a non-Louisiana corporation authorized to do and doing business in the State of Louisiana, and in the Parishes of Orleans and Jefferson, with its domicile in the State of Florida, its principal place of business in

the State of Florida, and its Louisiana principal place of business in New Orleans, Louisiana;

e.  **MODJESKI AND MASTERS, INC.**, a non-Louisiana corporation authorized to do and doing business in the State of Louisiana, and in the Parishes of Orleans and Jefferson, with its domicile in the State of Pennsylvania, its principal place of business in the State of Pennsylvania, and its Louisiana principal place of business in New Orleans, Louisiana;

f.  **C.R. PITTMAN CONSTRUCTION COMPANY, INC.**, a Louisiana corporation, f/k/a Green Wave Construction Company, Inc.,with its domicile in the Parish of Orleans, and doing business within the Parishes of Orleans and Jefferson, State of Louisiana;

g.  **BURK-KLEINPETER, INC.**, a Louisiana corporation with its domicile in the Parish of Orleans, and doing business within the Parish of Orleans, State of Louisiana;

h.  **BURK-KLEINPETER, LLC.**, a Louisiana Limited Liability Company with its domicile in the Parish of Orleans, and doing business within the Parish of Orleans, State of Louisiana;

i.  **B&K CONSTRUCTION CO., INC.**, a Louisiana corporation, f/k/a B & K Construction Company, with its domicile in the Parish of St. Tammany, and doing business within the Parish of Orleans, State of Louisiana;

j.  **MILLER EXCAVATING SERVICES, INC.**, a Louisiana corporation with its domicile in the Parish of St. Charles, and doing business within the Parish of

Orleans, State of Louisiana;

k. **JAMES CONSTRUCTION GROUP, LLC**, a non-Louisiana Limited Liability Company, f/k/a Iafrate Construction, LLC, with its domicile in the State of Florida, its principal place of business in the State of Louisiana, and its Louisiana principal place of business in Baton Rouge, Louisiana;

l. **BOARD OF COMMISSIONERS FOR THE ORLEANS LEVEE DISTRICT**, a political subdivision of the State of Louisiana organized for the purpose and charged with the duty of constructing and maintaining levees, and all other things incidental thereto within its territorial limit;

m. **ST. PAUL FIRE AND MARINE INSURANCE COMPANY**, a foreign insurance company, authorized to do and doing business within the State of Louisiana, who at all times relevant herein had in full force and effect a policy of liability insurance, under the terms, provisions, and conditions of which it assumed liability for the acts and/or negligence of of its insured, and against whom Plaintiffs assert their claim under the Louisiana Direct Action Statute, LA R.S. 22:655;

n. **THE CITY OF NEW ORLEANS**, at all times material hereto, the owner of the levees and the 17th Street, London Avenue and Industrial Canals, and the party with care, custody, control and garde of the canals and levees;

o. **SEWERAGE AND WATER BOARD OF NEW ORLEANS**, a political subdivision of the State of Louisiana created by La. R.S. 33:4071 et seq., domiciled in the Parish of Orleans, State of Louisiana, which has the ability to sue and be sued;

p.   **EUSTIS ENGINEERING COMPANY, INC.,** a Louisiana corporation with its domicile in the Parish of Jefferson, and doing business within the Parish of Orleans, State of Louisiana;

q.   **LA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT,** a political subdivision of the State of Louisiana organized for the purpose and charged with the duty of managing resources, planning, improving safety, preserving and operating infrastructure in an efficient manner and advancing mobility and access.

r.   **PITTMAN CONSTRUCTION COMPANY, INC.,** a Louisiana corporation with its domicile in the Parish of Orleans, and doing business within the Parishes of Orleans and Jefferson, State of Louisiana;

s.   **GOTECH, INC.,** a Louisiana corporation with its domicile in the Parish of East Baton Rouge, and doing business within the Parish of Orleans, State of Louisiana.

## VENUE AND JURISDICTION

### 4.

The Defendants named herein each do substantial business in the State of Louisiana and within this federal District, and at all times relevant hereto, they engaged in commerce both in this federal judicial district and in the State of Louisiana.

### 5.

Plaintiffs allege that they have suffered damages in an amount in excess of $75,000.00, exclusive of interest and court costs, as to themselves and each proposed class member.

**6.**

There is complete diversity of citizenship and/or federal question jurisdiction herein because certain Defendants were contractors of the Federal Government as to the matters complained of herein. Alternatively, there is jurisdiction due to ample diversity to meet the terms of the Class Action Fairness Act (CAFA), 28 U.S.C. 1332(d)(2).

**7.**

This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d)(2) because this is a class action in which there is at least minimal diversity and the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. Alternatively, this Court has jurisdiction because there is diversity of citizenship between the Plaintiffs and the Defendants due to the fact that certain Defendants were contractors of the Federal Government. Alternatively, this Court has federal question jurisdiction because the project at issue was a federal construction project through the Army Corps of Engineers.

**8.**

Venue is proper in this District pursuant to 28 U. S. C. § 1391 because the negligent and wrongful actions of the Defendants occurred in the Eastern District of Louisiana, the Plaintiffs reside in the Eastern District of Louisiana, the damages to Plaintiffs occurred within the Eastern District of Louisiana, and the applicable facts which form the basis of this lawsuit occurred in the Eastern District of Louisiana.

## FACTUAL BACKGROUND

### 9.

On August 27, 2005, Hurricane Katrina, by now in the Gulf of Mexico, was upgraded to a Category 3 hurricane. New Orleans Mayor Ray Nagin called for a voluntary evacuation of the city and Louisiana Governor Kathleen Blanco requested that President Bush declare a major disaster for the State of Louisiana.

### 10.

At 12:40 a.m. on August 28, 2005, Katrina was upgraded to a Category 4 hurricane. Later that morning, New Orleans Mayor Ray Nagin called for a mandatory evacuation of the city. At 1:00 p.m., Katrina was upgraded to a Category 5 hurricane with maximum sustained winds of 175 miles per hour and gusts up to 215 miles per hour.

### 11.

At 6:10 a.m. on August 29, 2005, Katrina made landfall near Grand Isle, Louisiana as a Category 4 hurricane, and then made a second landfall a short time later near the Louisiana-Mississippi border.

### 12.

At 8:00 a.m on August 29, 2005, there was water on both sides of the Industrial Canal and by 9:00 a.m. there was six (6) to eight (8) feet of water in the Lower Ninth Ward.

### 13.

Water began to inundate other parts of the City in Orleans Parish and Jefferson Parish as well. At 2:00 p.m., city officials publicly confirmed the reason for the water was a breach in the 17th Street Canal floodwall reported to be two city blocks wide, and breaks in

the London Avenue Canal, as well as the Industrial Canal.

**14.**

News reports initially indicated seven different breaks in the levee surrounding the City. However, it now appears that breaks occurred in the levees/floodwalls in six (6) places along three canals - the 17th Street Canal, the London Avenue Canal, and the Industrial Canal. A *Time* magazine report on September 2, 2005 and other pertinent sources have concluded that it is possible that the levees did not work the way they were supposed to and that congressional investigators, experts, and/or some Army Corps of Engineers officers suggested that the failure might have been caused by leaks in the barriers because the levees had been poorly constructed or maintained. Thus, Plaintiffs aver, upon information and belief, that their damages are a result of improper and/or negligent design, construction, and maintenance of the levees and/or floodwalls by various contractors and engineers, and/or the weakening of the levees and/or floodwalls caused by the negligence of various contractors while engaged in various other activities along the canals.

**15.**

The levee floodwalls are constructed with an "I-wall" design. The U. S. Army Corps of Engineers Manual on Engineering, Design and Construction of Levees dated April 30, 2000 states that for stability reasons, floodwalls utilizing the "I–wall" design rarely exceed seven (7) feet above ground surface, and that an inverted "T–wall" design is used when walls higher than seven feet are required.

**16**.

The floodwalls on the 17th Street Canal and the London Avenue Canal, both built with the "I–wall" design, have concrete sections that rise eleven (11) feet.

**17**.

The "I–wall" design consists of steel sheet pilings driven into the compacted dirt atop the levee and then reinforcing steel rods are threaded through the top of the piling. Concrete is then poured to encapsulate the top of the piling and form the wall. The wall is composed of individual concrete slab sections that are linked together by rubbery gaskets which allow the concrete to expand and contract.

**18**.

The evidence indicates that the storm surge did not top the floodwalls and that none of the levee/floodwalls experienced storm forces exceeding, or even equaling, the Category 3 forces for which they were allegedly designed. Indeed, because the eye-wall of the storm passed dozens of miles east of the city, the maximum sustained winds that would have impacted Lake Pontchartrain were only 95 miles per hour, 16 miles per hour less than the 111 mile per hour minimum for winds in a Category 3 storm.

**19**.

Even though only Category 2 forces impacted the lake, and even though the evidence indicates that the floodwalls were not overtopped, the levees/floodwalls failed allowing water from Lake Pontchartrain through the 17th Street Canal, the London Avenue Canal, and the Industrial Canal into New Orleans and Metairie.

**20**.

In the aftermath of the storm, it was estimated that approximately eighty percent

(80%) of the City was under water, and that losses from the hurricane are estimated to be as high as $200 billion with insured losses estimated at upwards of $50 million.

## CLASS ACTION ALLEGATIONS

### 21.

Plaintiffs bring this action on their own behalf, and on behalf of all others similarly situated, in the respects herein below stated:

### 22.

The claims of the proposed Class Representatives are typical of the claims of the proposed class.

### 23.

Plaintiffs will fairly and adequately represent and protect the interests of all members of the described class. Plaintiffs have retained attorneys highly experienced in the prosecution of class actions, including complex litigation, and mass tort class actions, to represent class members herein.

### 24.

The common questions of law and fact as shown in this Second Amended Complaint predominate over individual questions of causation or individual damages.

### 25.

Concentrating this litigation in one forum will aid with judicial economy and efficiency and promote parity among the claims of individual class members, as well as judicial consistency.

A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all members of each class is impracticable. Even if any class members could afford individual litigation, it would be unduly burdensome to the Courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' acts and/or omissions. By contrast, the class action device presents far and fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Thousands of individual actions will create unnecessary burdens on and delay to injured victims in addition to straining the judicial system. Such individual actions will also magnify the expense for retaining expert witnesses and prolong all parties' abilities to receive a speedy and efficient adjudication of this matter.

**27.**

Furthermore, class certification is appropriate because the prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications and substantially impair their ability to protect their interests.

**28.**

Accordingly, class certification is appropriate under the Federal Rules of Civil Procedure, Rule 23(b)(3) and/or (b)(1)(B), and the class action vehicle is the superior

method for handling this litigation.

**29.**

This is a class action pursuant to F.R.C.P. 23 on behalf of a class of Plaintiffs similarly situated but as yet unidentified, as Plaintiffs herein represent that they have injuries common to all those similarly situated who incurred damages arising out of the breach and failure of the hurricane protection levees and floodwalls along the 17th Street Canal, the London Avenue Canal, and the Industrial Canal which occurred in the Parishes of Orleans and Jefferson, State of Louisiana in the wake of hurricane Katrina.

**30.**

Plaintiffs allege and propose that the class be defined as:

All residents, domiciliaries, and property owners of the Parishes of Orleans and Jefferson in the State of Louisiana who sustained damages as a result of water intrusion caused by the failure of the hurricane protection levees and floodwalls in New Orleans, Louisiana on or about August 29, 2005 and thereafter, such damages including, but are not limited to, damage to real property, damage to personal property, and personal injury. Plaintiffs further propose that the class be divided into the following five (5) subclass zones:

a.    **Zone 1**: Those individuals who sustained damage in the geographic area bounded on the North by Lake Pontchartrain, on the East by Bayou St. John, on the South by City Park Avenue, and on the West by the 17th Street Canal, said damage having been caused or contributed to by the breach on the 17th Street Canal.

b.    **Zone 2**: Those individuals who sustained damage in the geographic area

bounded on the North by Lake Pontchartrain, on the East by the Industrial Canal, on the South by Gentilly Boulevard, and on the West by Bayou St. John, said damage having been caused or contributed to by the breaches on the London Avenue Canal.

c. **Zone 3**: Those individuals who sustained damage in the geographic area bounded on the North by Gentilly Boulevard, on the East by the Industrial Canal, on the South by the Mississippi River, and on the West by Esplanade Avenue, said damage having been caused or contributed to by the breaches on the Industrial Canal.

d. **Zone 4**: Those individuals who sustained damage in the geographic area described as the Lower Ninth Ward and defined as the area bounded on the North by wetlands, on the East by St. Bernard Parish, on the South by the Mississippi River, and on the West by the Industrial Canal, said damage having been caused or contributed to by the breaches on the Industrial Canal.

e. **Zone 5**: Those individuals who sustained damage in the geographic area bounded on the North by Metairie Road and City Park Avenue, on the East by Esplanade Avenue, on the South by the Mississippi River, and on the West by Causeway Boulevard, said damage having been caused or contributed to by the breach on the 17th Street Canal.

**31.**

The proposed class action arises out of the catastrophic failures of the hurricane

protection levees and floodwalls along the 17th Street Canal, the London Avenue Canal, and the Industrial Canal in the Parishes of Orleans and Jefferson on or about August 29, 2005 and the following days, which failures resulted in the innundation of upwards of eighty percent (80%) of the City of New Orleans with water, destroying and/or rendering completely uninhabitable approximately 160,000 or more homes and buildings, thus causing damage to the Plaintiffs and the proposed class. The exact number and identities of the class Plaintiffs are unknown at this time, and can only be ascertained through appropriate discovery. Plaintiffs are of the belief that the class of Plaintiffs consists of hundreds of thousands of persons presenting a level of numerosity better handled through the class action procedure.

32.

This action is appropriate for determination through the Federal Class Action Rule (F.R.C.P. art. 23, *et seq.*) for the following reasons:

## A.    NUMEROSITY

Failures resulted in the innundation of upwards of eighty percent (80%) of the City of New Orleans with water, destroying and/or rendering completely uninhabitable approximately 160,000 or more homes and buildings, thus causing damage to the Plaintiffs and the proposed class. The exact number and identities of the class Plaintiffs are unknown at this time, and can only be ascertained through appropriate discovery. Plaintiffs are of the belief that the class of Plaintiffs consists of hundreds of thousands of persons presenting a level of numerosity better handled through the class action procedure.

## B.  COMMON QUESTIONS OF LAW AND FACT

There are common questions of law and fact applicable to all class members and which predominate over individual questions and which include, but are not limited to, the cause of the breaches and/or failures of the levee system and/or floodwalls following the landfall of Hurricane Katrina on August 29, 2005.

## C.  ADEQUATE REPRESENTATION

Plaintiffs will fairly and adequately represent the interests of the class and the class representatives herein are represented by skilled attorneys who are experienced in the handling of mass tort class action litigation and who may be expected to handle this action in an expeditious and economical manner to the best interest of all members of the class.

## D.  TYPICALITY

The claims of the Class Representative as named herein are typical of the claims of the class members they seek to represent in that they are all claims seeking damages arising from the breach and/or failure of the hurricane protection levees and/or floodwalls along the 17th Street

Canal, the London Avenue Canal, and the Industrial Canal following the landfall of Hurricane Katrina on August 29, 2005.

## E.  SUPERIORITY

The Class Action procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the class members is impracticable.  Individual litigation by each of the class members, besides being unduly burdensome to the Plaintiffs, would also be unduly burdensome and

expensive to the court system, as well as to the Defendants.

## ALLEGATIONS OF FAULT AND/OR LIABILITY

### 33.

Hurricane Katrina made landfall in Louisiana on August 29, 2005 near Grand Isle, Louisiana. It subsequently made a second landfall a short time later near the Louisiana-Mississippi border.

### 34.

The hurricane protection levees and floodwalls located on the 17th Street Canal, the London Avenue Canal, and the Industrial Canal which were constructed to protect New Orleans and Jefferson Parish, failed and were breached during the day of August 29, 2005.

### 35.

Plaintiffs aver, upon information and belief, that the breaches and failure of the hurricane protection levees and floodwalls were caused by the negligence and fault of the Defendants, **BOH BROS. CONSTRUCTION CO., LLC, WASHINGTON GROUP INTERNATIONAL, INC., VIRGINIA WRECKING COMPANY, INC., GULF GROUP, INC. OF FLORIDA, MODJESKI AND MASTERS, INC., C.R. PITTMAN CONSTRUCTION COMPANY, INC., BURK-KLEINPETER, INC., BURK-KLEINPETER, L.L.C., B&K CONSTRUCTION COMPANY, INC., MILLER EXCAVATING SERVICES, INC., JAMES CONSTRUCTION GROUP LLC, BOARD OF COMMISSIONERS FOR THE ORLEANS LEVEE DISTRICT, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, THE**

CITY OF NEW ORLEANS, SEWERAGE AND WATER BOARD OF NEW ORLEANS ("SWB"), EUSTIS ENGINEERING COMPANY, INC., LA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT ("DOTD"), PITTMAN CONSTRUCTION COMPANY, INC., AND GOTECH, INC.

36.

## A.    17TH STREET CANAL

**1.**    Upon information and belief, Defendant, **GULF GROUP, INC. OF FLORIDA**, contracted to repair a bridge which spans the 17th Street Canal from Old Hammond Highway to Robert E. Lee Blvd.  Upon information and belief, the Defendant, **GULF GROUP, INC. OF FLORIDA**, while constructing the bridge, placed construction vehicles and other heavy equipment on the levee, which eventually failed.  It is believed that the placement of these heavy vehicles and/or other heavy construction equipment on the 17th Street Canal levee damaged the levee and/or floodwall and caused and/or contributed to the above-mentioned breach in the levee and/or floodwall.

**2.**    Upon information and belief, Defendant, **BOH BROTHERS CONSTRUCTION COMPANY, L.L.C.**, was the contractor that constructed portions of the 17th Street Levee/Floodwall, said construction included, but was not limited to, the placement of sheet piling for the purpose of supporting the concrete floodwalls.  It is believed that the negligent design and/or construction of the levee/floodwall, including the placement of the sheet piling for the purpose of supporting the concrete floodwall, caused and/or contributed to the above-mentioned breach in the levee and/or floodwall. It is further believed that the use of

heavy vehicles and/or other heavy construction equipment in the placement of the sheet piling damaged the levee and caused and/or contributed to the above-mentioned breach in the levee and/or floodwall.

3. Upon information and belief, Defendants, **C.R. PITTMAN CONSTRUCTION COMPANY, INC. and PITTMAN CONSTRUCTION COMPANY, INC** were the contractors that constructed portions of the 17th Street Levee/Floodwall, said construction included, but was not limited to, the construction and placement of the concrete floodwall slabs atop the sheet piling. It is believed that the negligent design and/or construction of the levee/floodwall including the concrete slab sections caused and/or contributed the above-mentioned breach in the levee and/or floodwall. It is further believed that the use of heavy vehicles and/or other heavy construction equipment in construction and placement of the concrete slabs damaged the levee and caused and/or contributed to the above-mentioned breach in the levee and/or floodwall.

4. Upon information and belief, Defendant, **MODJESKI & MASTERS, INC.,** was the engineering company contracted for the 17th Street Canal Levee/Floodwall. Plaintiffs aver that the levees/floodwalls were negligently designed and that the faulty design caused and/or contributed to the above-mentioned breach in the levee and/or floodwall.

5. Upon information and belief, Defendant, **EUSTIS ENGINEERING COMPANY, INC.,** provided the detailed analysis of the ability of the soils along the path of the levee to withstand water pressure once the wall was built on top, which calculation underestimated the weak soil layers ten to twenty-five feet below levee, which caused and/or contributed

the above-mentioned breach in the levee and/or floodwall.

## B.    LONDON AVENUE CANAL

**1.**    Upon information and belief, Defendants, **BURK-KLEINPETER, INC**. and **BURK-KLEINPETER, LLC.,** were the engineers contracted for the London Avenue Canal Levee/Floodwall. Plaintiffs aver that the levees/floodwalls were negligently designed and that the faulty design caused and/or contributed to the above-mentioned breach in the levee and/or floodwall.

**2.**    Upon information and belief, Defendant, **B&K CONSTRUCTION COMPANY, INC**., was the contractor that constructed the London Avenue Levee/Floodwall. Said construction included, but was not limited to, the construction and placement of the sheet pilings and the construction and placement of the concrete floodwall slabs atop the sheet pilings. It is believed that the negligent design and/or construction of the levee/floodwall including the sheet pilings and the concrete slab sections caused and/or contributed to the above-mentioned breach in the levee and/or floodwall. It is further believed that the use of heavy vehicles and/or other heavy construction equipment in construction and placement of the sheet piling and of the concrete slabs damaged the levee and caused and/or contributed to the above-mentioned breach in the levee and/or floodwall.

**3.**    Upon information and belief, Defendant, **C.R. PITTMAN CONSTRUCTION COMPANY, INC**., was contracted to construct the Gentilly Boulevard bridge over the London Avenue Canal. It is believed that negligence in the construction of the bridge and the use of heavy vehicles and/or other heavy construction equipment in construction of the

bridge caused and/or contributed to the above-mentioned breach in the levee and/or floodwall

4. Upon information and belief, Defendant, **MILLER EXCAVATING SERVICES, INC.**, was contracted to construct the Leon C. Simon Boulevard bridge over the London Avenue Canal. It is believed that negligence in the construction of the bridge and the use of heavy vehicles and/or other heavy construction equipment in construction of the bridge caused and/or contributed to the above-mentioned breach in the levee and/or floodwall.

5. Upon information and belief, Defendant, **JAMES CONSTRUCTION GROUP, LLC.**, was contracted to "flood-proof" the Filmore Avenue bridge and the Mirabeau Avenue bridge over the London Avenue Canal. Flood-proofing of the bridges required that the original bridges be demolished and replaced with new bridges that have steep concrete sides which continue the floodwall from one side of the canal to the other. It is believed that negligence in the demolition of the old bridges and construction of the new bridges and the improper use of heavy vehicles and/or other heavy construction equipment in the demolition of the old bridges and construction of the new bridges caused and/or contributed to the above-mentioned breach in the levee and/or floodwall.

6. Upon information and belief, Defendant, **GOTECH, INC.**, was the engineering company contracted to do work on the west side of the London Avenue canal, which caused and/or contributed the above-mentioned breach in the levee and/or floodwall.

## C. INDUSTRIAL CANAL

1. Upon information and belief, Defendant, **WASHINGTON GROUP**

**INTERNATIONAL, INC.**, was contracted to level and clear abandoned industrial sites along the Industrial Canal between the floodwall and the canal. It is believed that the improper use of heavy vehicles and/or other heavy construction equipment along the Industrial Canal between the floodwall and the canal damaged the levee and/or floodwall and caused and/or contributed to the above-mentioned breach in the levee and/or floodwall.

2.     Upon information and belief, Defendant, **VIRGINIA WRECKING COMPANY, INC.**, was contracted for the demolition, removal, and disposal of the Galvez Street Wharf, a warehouse, and an adjacent storeroom and for the removal of the debris by barge along the Industrial Canal. It is believed that the improper use of heavy vehicles and/or other heavy construction equipment and barges along the Industrial Canal damaged the levee and/or floodwall and caused and/or contributed to the above-mentioned breach in the levee and/or floodwall.

3.     Upon information and belief, Defendant, **BOH BROS. CONSTRUCTION CO., LLC,** was contracted to install casings, test piles, and reaction piles along the Industrial Canal between December of 1999 and May of 2000. It is believed that the improper use of heavy vehicles and/or other heavy construction equipment along the Industrial Canal damaged the levee and/or floodwall and caused and/or contributed to the above-mentioned breach in the levee and/or floodwall.

## D. BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT

1.     The Orleans Levee District has the full and exclusive right, jurisdiction, power, and

authority to locate, relocate, construct, maintain, extend, and improve levees, embankments, sea walls, jetties, breakwaters, water basins, and other works in relation to such projects, and to conduct all dredging operations necessary in connection therewith or incidental thereto along, over, and on the shores, bottom, and bed of Lake Pontchartrain in the Parish of Orleans, and along and on the shore adjacent to the lake and along the canals connected therewith.

2. The 17th Street Canal, the London Avenue Canal, and the Industrial Canal are canals connected to Lake Pontchartrain in Orleans Parish and are within the jurisdiction and control of the Orleans Levee District.

3. Upon information and belief, the Orleans Levee District did not properly test whether the design, construction, or maintenance of the 17th Street, London Avenue, or Industrial Canal levee systems were adequate, proper, and within appropriate standards.

4. The Orleans Levee District was legally charged with the obligation, jurisdiction, power, and authority to ensure the proper construction, maintenance, and design of the levees and floodwalls along the 17th Street Canal, the London Avenue Canal, and the Industrial Canal to protect Orleans Parish from flooding.

5. The Orleans Levee District's failure to ensure the adequacy of the 17th Street Canal, the London Avenue Canal, and the Industrial Canal's levees' and floodwalls' design, composition, construction, and maintenance constituted negligence subjecting it to liability for all resulting damages. Further, the levees and floodwalls were within the exclusive care, custody, control, and garde of the Orleans Levee District and said levees and floodwalls

contained vices and defects which were known or should have been known to the Orleans Levee District, thus rendering the Orleans Levee District strictly liable in accordance with LA. C.C. arts. 2317 and 2317.1.

6. On or about September 11, 2004, a New Orleans Public Belt Railroad Train derailment caused a thirty-two and a half foot wide gap in Floodgate W-30 which is part of the floodwall system situated immediately west of, and running in a north-south direction parallel to, the Industrial Canal, just north of the Interstate 10 high rise.

7. Floodgate W-30 is a floodgate within the flood control system under the authority, control, and administration of the Orleans Levee District.

8. Defendant herein, the Board of Commissioners of the Orleans Levee District, filed suit against the City of New Orleans, by and through the New Orleans Public Belt Railroad Commission, CSX Transportation, Inc., and the Burlington Northern and Santa Fe Railroad Company on December 3, 2004 in the Civil District Court for the Parish of Orleans, NO. 2004-17143, Division: "F", for damages to the floodgates arising from the train derailment.

9. On December 14, 2004, the New Orleans Public Belt Railroad paid the Orleans Levee District Four Hundred Twenty Seven Thousand Three Hundred Eighty Seven Dollars and Ninety Six Cents ($427,387.96), the full estimated cost of reconstruction of Floodgate W-30.

10. Despite having been paid $427,387.96 on December 14, 2004, the full estimated costs of reconstruction of Floodgate W-30, the Orleans Levee District, by its negligence, failed for eight and a half months to repair the floodgate, leaving only sandbags to fill the

gap of the missing gate as Hurricane Katrina approached on August 29, 2005.

**11.** As a direct and proximate result of the Orleans Levee District's negligence, Plaintiffs sustained damages that include, but are not limited to, destruction and contamination of property, mental anguish, emotional distress, inconvenience, loss of use of property, loss of personal property and property value, loss of income, loss of profits, loss of business opportunity, and fear of future injury, as well as other damages.

### E. CITY OF NEW ORLEANS

**1.** The City of New Orleans is the owner of the land along, over and on the shores, bottom, and bed of Lake Pontchartrain, in the Parish of Orleans and along and on the shores adjacent to the lake and along the canals connected therewith, and, therefore, has the care, custody, control, and garde of said land including the levees, embankments, sea walls, jetties, breakwaters, water basins, and other works.

**2.** The 17th Street Canal, the London Avenue Canal, and the Industrial Canal are canals connected to Lake Pontchartrain in Orleans Parish and are part of the land owned and in the care, custody, control, and garde of the City of New Orleans.

**3.** Upon information and belief, the levees and floodwalls located on the land owned by the City of New Orleans as described above contained vices and defects which were known or should have been known to the City of New Orleans, thus rendering the City of New Orleans strictly liable in accordance with La. C.C. arts. 2317 and 2317.1.

### F. THE SEWERAGE AND WATER BOARD OF NEW ORLEANS

**1.** The Sewerage and Water Board had at all times relevant hereto the care, custody,

control, and garde of the land along, over and on the shores, bottom, and bed of Lake Pontchartrain in the Parish of Orleans, and along and on the shores adjacent to the lake and along the canals connected therewith.

**2.** The 17th Street Canal, the London Avenue Canal, and the Industrial Canal are canals connected to Lake Pontchartrain in Orleans Parish and are part of the land in the care, custody, control, and garde of the Sewerage and Water Board.

**3.** Upon information and belief, the levees and floodwalls in the garde of the Sewerage and Water Board as described above contained vices and defects which were known or should have been known to the Sewerage and Water Board, thus rendering the Sewerage and Water Board strictly liable in accordance with La. C.C. arts. 2317 and 2317.1.

**4.** In addition, upon information and belief during the work done by the Sewerage and Water Board in 1988, the Sewerage and Water Board removed existing sheet pilings supporting floodwalls and replaced said sheet pilings with new pilings. After completion of the work, the levees and floodwalls contained vices and defects in addition to those existing prior to the work, all said vices and defects being known or should have been known to the Sewerage and Water Board, thus rendering the Sewerage and Water Board strictly liable in accordance with La. C.C. arts. 2317 and 2317.1.

## G. LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT

**1.** The Louisiana Department of Transportation and Development had at all times relevant hereto the purpose and was charged with the duty of managing resources, planning, improving safety, preserving and operating infrastructure in an efficient manner, and

advancing mobility and access. Further, the "DOTD" is obligated by state law to approve of the soundness of the engineering practice and the feasibility of the plans and specifications submitted by Orleans Levee District, conduct training of the District's commissioners, and review the District's emergency plans. In addition, the "DOTD" is tasked with the public works emergency function under Louisiana's Emergency Operations plan.

**2.** Upon information and belief, the Louisiana Department of Transportation and Development did not properly test whether the design, construction, or maintenance of the 17th Street, London Avenue, or Industrial Canal levee systems were adequate, proper, and within appropriate standards.

**3.** The Louisiana Department of Transportation and Development was legally charged with the obligation, jurisdiction, power, and authority to ensure the proper construction, maintenance, and design of the levees and floodwalls along the 17th Street Canal, the London Avenue Canal, and the Industrial Canal to protect Orleans Parish from flooding.

**4.** The Louisiana Department of Transportation and Development's failure to ensure the adequacy of the 17th Street Canal, the London Avenue Canal, and the Industrial Canal's levees' and floodwalls' design, composition, construction, and maintenance constituted negligence subjecting it to liability for all resulting damages. Further, the levees and floodwalls were within the exclusive care, custody, control, and garde of the Louisiana Department of Transportation and Development and said levees and floodwalls contained vices and defects which were known or should have been known to the Louisiana Department of Transportation and Development, thus rendering the Louisiana Department

of Transportation and Development strictly liable in accordance with LA. C.C. arts. 2317 and 2317.1.

**37.**

In addition to the above stated negligence, and in the alternative thereto, the injuries and damages suffered by Plaintiffs and others was caused by acts or omissions of the Defendants, which acts or omissions may be beyond proof by the Plaintiffs herein, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the failure of the levees and/or floodwalls resulted from the negligence of the Defendants, and that furthermore, failures and subsequent innundation of the Parishes of Orleans and Jefferson with water could not have occurred had the Defendants exercised the high degree of care necessary and proper to the design, construction, and maintenance of levees and/or floodwalls, and/or the high degree of care necessary when working with heavy equipment in the vicinity of levees and/or floodwalls, and Plaintiffs, therefore, plead the doctrine of *res ipsa loquitur*.

**38.**

Plaintiffs rely upon the laws of the State of Louisiana, including, but not limited to, Louisiana Civil Code Articles 2315, 2315.6, 2316, 2320, 2324 and others.

**REQUEST FOR JURY TRIAL**

**39.**

Plaintiffs are entitled to and demand a trial by jury.

**W H E R E F O R E**, Plaintiffs pray:

1.     That a summons be issued to the Defendants so that they can be served the summons along with a copy of this Second Amended Complaint and be cited to appear and answer same;

2.     That after due proceedings had, that this action be certified as a class action pursuant to the provisions of F.R.C.P. 23 and the applicable local rules, in the respects alleged herein above, for the purposes of determining the common issues of liability for compensatory damages;

3.     That upon certification of the class action, the Court call for the formulation of a suitable management plan pursuant to the Federal Rules of Civil Procedure;

4.     That after due proceedings had, and a trial by jury, there be a judgment in this matter in favor of the Plaintiffs and against the Defendants, declaring that the Defendants are liable to the Plaintiffs and all members of the class for all damages resulting from the failure and/or breaches of the levees and/or floodwalls of the 17th Street Canal, the London Avenue Canal, and the Industrial Canal following the landfall of Hurricane Katrina on August 29, 2005 and thereafter;

5.     That the rights of the Plaintiffs and all members of the class to establish their entitlement to compensatory damages, and the amount thereof, be reserved for determination in their individual actions when appropriate; and

6.     That Plaintiffs recover their costs for the prosecution of this class action, and for interest on all damages from the date of judicial demand until paid.

Respectfully submitted,

HUGH P. LAMBERT (LSBA # 7933)
LINDA J. NELSON (LSBA # 9938)
E. ALEXIS BEVIS (LSBA # 29091)
Lambert & Nelson, PLC
701 Magazine Street
New Orleans, Louisiana 70130
Telephone:    (504) 581-1750
Facsimile:     (504) 529-2931

**PLEASE SERVE:**
Boh Brothers construction Company, LLC
through its agent for service of process:
Michael G. Cullen
12203 Airline Highway
Baton Rouge, LA 70817

Washington Group International, Inc.
through its agent for service of process:
Corporation Services Company
320 Somerulos Street
Baton Rouge, LA 70802-6129

Virginia Wrecking Company, Inc.
through its agent for service of process:
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA 70809

Gulf Group, Inc. of Florida
through its agent for service of process:
Matt Hobbs
20 West Nouveau Lane
New Orleans, LA 70003

Modjeski and Masters, Inc.
through its agent for service of process:
William B. Conway
1055 St. Charles Avenue
New Orleans, LA 70130

C.R. Pittman Construction Company, Inc.
through its agent for service of process:
Lolita A. Pittman
1747 Oriole Street
New Orleans, LA 70122

Burk-Kleinperter, Inc.
through its agent for service of process:
Charles F. Seemann, Jr.
755 Magazine Street
New Orleans, LA 70130

Burk-Kleinpeter, LLC
through its agent for service of process:
William R. Burk, III
755 Magazine Street
New Orleans, LA 70130

B&K Construction Co., Inc.
through its agent for service of process:
Robert L. Bailey, III
520 N. Causeway Blvd.
Mandeville, LA 70448

Miller Excavating Services, Inc.
through its agent for service of process:
Annie Mae Miller
910 Ormond Boulevard
Destrehan, LA 70047

James Construction Group, LLC
through its agent for service of process:
Jill Warren
11200 Industriplex Blvd., Ste. 150
Baton Rouge, LA 70809

Board of Commissioners for the Orleans Levee District
through its President, James P. Huey
7300 Lakeshore Drive
New Orleans, LA 70124

St. Paul Fire and Marine Insurance Company
through the Secretary of State:
8549 United Plaza
Baton Rouge, LA 70809

The City of New Orleans
through the City Attorneys' Office
1300 Perdido Street, Room 5E03
New Orleans, LA 70112

Sewerage and Water Board of New Orleans
through its Director:
625 St. Joseph Street
New Orleans, LA 70130

Eustis Engineering Co., Inc.
through its agent for Service of Process:
William W. Gwyn
3011 28th Street
Metairie, LA 70002

LA Department of Transportation and Development
through its Secretary
Johnny B. Bradberry
PO Box 94245
Baton Rouge, LA 70804

Pittman Construction Company, Inc.
through its agent for service of process:
Gloria B. Pittman
6251 Paris Avenue
New Orleans, LA 70122

Gotech, Inc.
through its agent for service of process:
Rhaoul A. Guillaume
8383 Bluebonnet Boulevard
Baton Rouge, LA 70810