## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, ET AL. | * | CIVIL ACTION NO.: 05-4182 |
| | * | |
| VERSUS | * | CONS. KATRINA CANAL |
| | * | |
| BOH BROTHERS | * | JUDGE: STANWOOD R. DUVAL, JR. |
| CONSTRUCTION CO., L.L.C., ET | * | |
| AL. | * | MAGISTRATE JUDGE: |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |
| | * | THIS PLEADING PERTAINS TO: |
| | * | Civil Action No. 05-6323 |
| | * | |

## CONSOLIDATED MEMORANDUM OF LAW OF DEFENDANTS THE STANDARD FIRE INSURANCE COMPANY, HARTFORD INSURANCE COMPANY OF THE MIDWEST, HANOVER INSURANCE COMPANY AND UNITRIN PREFERRED INSURANCE COMPANY IN SUPPORT OF RULE 12 MOTIONS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

SUMMARY OF ALLEGATIONS .................................................................................. 5

ARGUMENT ................................................................................................................... 6

I.   THE LOSSES ALLEGED ARE CLEARLY EXCLUDED BY THE WATER
     DAMAGE EXCLUSION IN DEFENDANTS' POLICIES ................................... 6

     A.  Relief Under Fed. R. Civ. P. 12 is Appropriate ............................................... 6

     B.  The Policies, in Clear and Unambiguous Language, Exclude Losses Caused
         Directly or Indirectly By Flood, Surface Water or Overflow of a Body of Water,
         Regardless of Any Other Contributing Cause .................................................. 7

     C.  Plaintiffs' Alleged Losses Clearly Fall Within the Water Damage Exclusion ............... 9

     D.  Under the Anti-Concurrent Causation Clause in the Water Damage Exclusion,
         Water Damage Losses are Excluded Regardless of Other Contributing Causes ........... 14

II.  THE WATER DAMAGE EXCLUSION IS NOT UNCONSCIONABLE .......................... 19

     A.  The Water Damage Exclusion Does Not Conflict With Any Statute or
         Regulation, and Has Been Upheld by the Courts ........................................... 19

     B.  Enforcing the Clear and Unambiguous Water Damage Exclusion is Consistent
         With Congressional Intent to Make Coverage Available Under the NFIP for
         These Types of Losses .................................................................................. 21

III. TO THE EXTENT THAT PLAINTIFFS ALLEGE THAT THEIR LOSSES WERE
     CAUSED BY THE LEVEE BOARD'S FAILURE TO ACT OR ITS FAILURE TO
     MAINTAIN THE LEVEES, THESE CAUSES OF LOSS ARE ALSO
     SEPARATELY EXCLUDED ................................................................................ 22

CONCLUSION............................................................................................................... 25

i

# TABLE OF AUTHORITIES

## CASES

American Mfg. Corp. v. Nat'l Union Fire Ins. Co., 14 So. 2d 430 (La. 1942) ..........3, 7, 18

Bartlett v. Cont'l Divide Ins. Co., 697 P.2d 412 (Colo. Ct. App. 1984) ........................9, 13

Blakely v. State Farm Mut. Auto. Ins. Co., 406 F.3d 747 (5th Cir. 2005) ........................19

Buente v. Allstate Prop. & Cas. Ins. Co., Civ. A. No. 1:05 CV 712 LTS JMR,
    2006 WL 980784 (S.D. Miss. Apr. 12, 2006)......................................................2, 10, 11

Casey v. Gen. Accident Ins. Co., 578 N.Y.S.2d 337 (N.Y. App. Div. 1991)....................17

Cooper Tire & Rubber Co. v. Farese, Farese & Farese Prof. Ass'n,
    423 F.3d 446 (5th Cir. 2005) ......................................................................................19

E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.,
    444 N.Y.S.2d 321 (N.Y. App. Div. 1981) ......................................................12, 13, 17

Edwards v. Daugherty, 883 So. 2d 932 (La. 2004)................................................................6

Florida E. Coast Ry. Co. v. United States, 519 F.2d 1184 (5th Cir. 1975)..........................9

Florida Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron,
    721 So. 2d 825 (Fla. Ct. App. 1998) ..........................................................................18

Front Row Theatre, Inc. v. American Mfr. Mut. Ins. Cos.,
    18 F.3d 1343 (6th Cir. 1994) ...............................................................................15, 16

Hardin Bag & Burlap Co. v. Fidelity & Guar. Fire Corp.,
    14 So. 2d 634 (La. 1943) ............................................................................................18

Holland v. Breaux, Civ. A. No. 04-3028,
    2005 U.S. Dist. LEXIS 36504 (E.D. La. Nov. 22, 2005) ...........................................24

Illinois Cent. Gulf R.R. v. Pargas, Inc., 526 F. Supp. 209 (M.D. La. 1981) ......................6

Jernigan v. Nationwide Mut. Ins. Co., Civ. A. No. C 04-5327 PJH,
    2006 U.S. Dist. LEXIS 9571 (N.D. Cal. Feb. 27, 2006) .............................................22

Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) ...............................................................6

Kane v. Royal Ins. Co., 768 P.2d 678 (Colo. 1989) ...........................................9, 13, 16, 17

Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.,
    Civ. A. No. 3:99-CV-1623-D, 2002 U.S. Dist. LEXIS 3594
    (N.D. Tex. Mar. 5, 2002) .............................................................................................7, 8

Livingston Parish School Bd. v. Fireman's Fund Am. Ins. Co.,
    282 So. 2d 478 (La. 1973) ...........................................................................................19

Morehead v. Allstate Ins. Co., 406 F.2d 122 (5th Cir. 1969) .............................................20

Pakmark Corp. v. Liberty Mut. Ins. Co., 943 S.W.2d 256 (Mo. Ct. App. 1997) ........12, 17

Prytania Park Hotel v. General Star Indem. Co.,
    896 F. Supp. 618 (E.D. La. 1995)..........................................................................3, 14, 15

Quesada v. FEMA, 577 F. Supp. 695 (S.D. Fla. 1983) ......................................................21

Scanlan v. Tex. A&M Univ., 343 F.3d 533 (5th Cir. 2003) .................................................6

Sunshine Motors, Inc. v. New Hampshire Ins. Co.,
    530 N.W.2d 120 (Mich. Ct. App. 1995) .......................................................................17

TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.,
    114 F.3d 731 (8th Cir. 1997) ....................................................................................12, 15

Travelers Indem. Co. v. Powell Ins. Co., Civ. A. No. 95-4188,
    1996 U.S. Dist. LEXIS 15041 (E.D. La. Oct. 4, 1996) .........................................3, 8, 20

Valley Forge Ins. Co. v. Hicks Thomas & Lilienstern, L.L.P.,
    174 S.W.3d 254 (Tex. App. 2004)................................................................................13

Waldsmith v. State Farm Fire & Cas. Co.,
    283 Cal. Rptr. 607 (Cal. Ct. App. 1991)......................................................................23

Wallace v. McKinnis, 2005 Ohio 4058,
    2005 Ohio App. LEXIS 3073 (Ohio Ct. App. Aug. 8, 2005) .................................10, 11

Wallis v. Country Mut. Ins. Co., 723 N.E.2d 376 (Ill. App. Ct. 2000)..............................10

Whitt v. State Farm Fire & Cas. Co., 734 N.E.2d 911 (Ill. App. Ct. 2000).......................10

## STATUTES AND REGULATIONS

42 U.S.C. § 4001(b) ..................................................................................................................4, 20

44 C.F.R. § 61.4(b) ...........................................................................................................................21

44 C.F.R. § 61.13(d), (e) ..................................................................................................................21

44 C.F.R. § 62.23 ........................................................................................................................20, 21

44 C.F.R. § 62.24 .............................................................................................................................20

44 C.F.R. Pt. 61, App. A .................................................................................................................21

La. Rev. Stat. § 22:620(A) ...............................................................................................................20

## PRELIMINARY STATEMENT

The Standard Fire Insurance Company, Hartford Insurance Company of the Midwest,

Hanover Insurance Company and Unitrin Preferred Insurance Company (collectively,

"Defendants") respectfully submit this Consolidated Memorandum of Law in Support of their

Rule 12 motions to dismiss and/or for judgment on the pleadings in *Richard Vanderbrook et al. v.*

*State Farm Fire & Cas. Co. et al.*, Civil Action No. 05-6323.[1]  The *Vanderbrook* case is a suit

brought by eight plaintiffs against five homeowners' insurance companies.[2]  Plaintiffs' claims

seek coverage for water damage to their homes caused by the flooding that followed Hurricane

Katrina.

Plaintiffs' Petition squarely presents a straight-forward and simple question of insurance

policy interpretation:  Did the massive inundation of water which occurred in New Orleans at the

time of Hurricane Katrina constitute a "flood," "surface water" or "overflow of a body of water"?

Of course it did.  Newspapers across the nation called it a flood.[3]  This Court has described these

cases as "litigation arising out of the canal levee and/or floodwall breaches and subsequent

flooding which occurred after Hurricane Katrina struck New Orleans . . . ."  (Order & Reasons on

Motion to Disqualify, dated May 4, 2006, at p. 2 (emphasis added); see also id. at pp. 3, 4, 10, 12,

16, 17.)  As Magistrate Judge Wilkinson put it, "[t]hese are Hurricane Katrina flooding cases."

---

[1] Certain of the Defendants are improperly named.  The Standard Fire Insurance Company ("Standard Fire") is improperly named as Travelers Insurance Company and St. Paul Travelers Insurance Company.  Hartford Insurance Company of the Midwest ("Hartford") is improperly named as Hartford Insurance Company.  Unitrin Preferred Insurance Company ("Unitrin") is improperly named as Kemper Insurance Company.  Defendant State Farm Fire & Casualty Company ("State Farm") has not joined in this memorandum and is filing its own separate memorandum.

[2] Pursuant to the Court's Order and Reasons dated June 1, 2006, Plaintiffs' claims against the Board of Commissioners for the Orleans Levee District (the "Levee Board") have been severed from the claims against the insurer defendants, and the claims against the Levee Board have been remanded to state court.

[3] See footnote 7, infra.

(Order on Motions for Disqualifications, dated Apr. 19, 2006, at p. 2.)  A judge of the Southern District of Mississippi has also recently held that "the inundation which occurred at the time of Hurricane Katrina was a flood, as that term is ordinarily understood . . . ."  <u>Buente v. Allstate Prop. & Cas. Ins. Co.</u>, Civ. A. No. 1:05 CV 712 LTS JMR, 2006 WL 980784, at *1 (S.D. Miss. Apr. 12, 2006).

Plaintiffs are attempting to dispute the obvious by contending that the water inundation which accompanied Hurricane Katrina was not a "flood."  They admit in their allegations that the water damage to their homes was caused when, as a result of a break in a concrete wall on the 17th Street Canal, water flowed onto the streets of New Orleans and into their homes.  They contend, however, that this inundation did not constitute a "flood," "surface water" or "overflow of a body of water" as those terms are used in the insurance policies.  That is incorrect as a matter of law.

The water damage to Plaintiffs' homes, as described in the Petition, is clearly excluded by the water damage exclusion in the homeowners' insurance policies issued by Defendants to the Plaintiffs (the "Policies").  The Policies exclude "loss caused directly or indirectly by . . . Water Damage," which is defined to include "Flood, surface water, [or] overflow of a body of water . . . ."[4]  This exclusion clearly encompasses the release of water from a canal, as a result of a break in a canal wall.  The plain meaning of the word "flood" includes the inundation of normally dry land.  Appellate courts across the country have held that a release of water resulting from a

---

[4] Standard Fire Policies, Appendix ("App.") at INS 96 and INS 136; Hartford Policy, App. at INS 56; Hanover Policy, App. at INS 9; Unitrin Policy, App. at INS 171.  The Policies issued by Defendants to each of the Plaintiffs are contained in an Appendix being submitted herewith, which is Bates Numbered INS 1 through INS 203.

break in a levee or a similar event, such as the failure of a dam or failure of a dike, was excluded under similar or identical water damage exclusions.

Plaintiffs' claims against the Levee Board, which have been severed and remanded to state court, allege that the Levee Board was negligent in failing to correct a break in the 17th Street Canal or warn of the impending water intrusion. To the extent that these allegations remain part of this case, it makes no difference, in applying the Water Damage exclusion, whether the Levee Board's alleged negligence contributed to the water damage. The Policies exclude loss caused "directly or indirectly" by Water Damage, a phrase that the Louisiana Supreme Court has found to have broad import. See American Mfg. Corp. v. Nat'l Union Fire Ins. Co., 14 So. 2d 430, 435 (La. 1942). Plaintiffs' allegations also ignore the fact that the Water Damage exclusion contains anti-concurrent causation language specifying that "[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." At least two federal judges in Louisiana have concluded that an exclusion with such an anti-concurrent causation clause unambiguously excludes coverage for losses within its purview, even if a covered cause of loss arguably caused or contributed to the loss. See Prytania Park Hotel v. General Star Indem. Co., 896 F. Supp. 618, 624 (E.D. La. 1995); see also Travelers Indem. Co. v. Powell Ins. Co., Civ. A. No. 95-4188, 1996 U.S. Dist. LEXIS 15041 (E.D. La. Oct. 4, 1996). The Water Damage exclusion thus makes it clear that losses caused directly or indirectly by Water Damage are excluded, period. This is so regardless of what other factors may have caused or contributed to the Water Damage. Even assuming, as Plaintiffs allege, that the Water Damage was caused by negligence on the part of the Levee Board, the exclusion clearly

applies.  Under the plain language in the Policies and the well-established precedent applying that language, Plaintiffs' claims must be dismissed as a matter of law.

There is also no merit to Plaintiffs' allegation that the Water Damage exclusion is unconscionable.  Like all homeowners' insurance policy forms, the forms containing the Water Damage exclusion were filed with the Louisiana Department of Insurance.  These exclusions have been upheld by courts in Louisiana and across the country.  A policy provision which is in compliance with the governing statutes, regulations and court decisions cannot be unconscionable.

Enforcing the Water Damage exclusion is also consistent with the purpose and intent of the National Flood Insurance Program ("NFIP").  The NFIP was designed to make federally funded flood insurance available because "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions."[5]  Since 1968, the NFIP has made federally-funded insurance against loss caused by flood available to all owners of property in areas endangered by flood, including the Parish of Orleans, where Plaintiffs' properties are located.  Claims under such policies are paid from the U.S. treasury.  Various insurers acting as agents of the federal government, including State Farm and Standard Fire, issue Standard Flood Insurance Policies under the NFIP specifically insuring property for loss caused by flood.  In fact, State Farm issued a flood insurance policy to Mary Jane Silva, one of the Plaintiffs in this case.  Loss caused by flood and other types of water damage is, however, specifically excluded from homeowners insurance policies, including the Policies at issue in this case.  Any construction of the

---

[5] 42 U.S.C. § 4001(b).

homeowners insurance policies to provide coverage for the losses alleged would render the NFIP superfluous or, at a minimimum, significantly interfere with the purpose and purview of that program.  While the Hurricane Katrina catastrophe has rightfully generated a tremendous outpouring of support for its victims, the gravity of the losses suffered in New Orleans and its environs does not justify what Plaintiffs seek to accomplish here:  shifting the risk of their flood losses from the federal government to Defendants, which did not collect any premium for that risk.

### SUMMARY OF ALLEGATIONS

Plaintiffs each own a home in New Orleans which is insured by one of the defendants, and which suffered substantial water damage at the time of Hurricane Katrina.  (Petition, ¶ 7.) They allege that "[s]ometime between 10:00 and 11:00 a.m. on August 29, 2005, before the full force of [Hurricane Katrina] reached the City of New Orleans, a small section of the concrete outfall canal wall known as the 17th Street Canal, suddenly broke, causing water to enter the streets of the City of New Orleans and homes of Petitioners," which damaged Plaintiffs' homes. (Id., ¶ 3.)  Plaintiffs contend that "said water damage inflicted on the Petitioners' homes and property was [purportedly] not the result of flood, surface water, waves, title [sic] water, tsunami, seiche, overflow of a body of water, seepage under or over the outfall canal wall or spray from any of the above but was water intrusion, caused simply from a broken levee wall." (Id., ¶ 4 (emphasis added).)  Plaintiffs claim that Defendants improperly failed to pay for the water damage to their homes because it is not an excluded loss.  (Id., ¶ 10.)  Plaintiffs also contend that the water damage exclusions in the Policies are unconscionable and void.  (Id., ¶ 11.)

5

Plaintiffs further allege, separately, that the Levee Board "breached their duty to Petitioners by failing to correct the break [in the canal wall] or warn others including Petitioners of the impending water intrusion . . . ." (Id., ¶ 6.)  These allegations have been severed and remanded to state court.

## ARGUMENT

I.    **THE LOSSES ALLEGED ARE CLEARLY EXCLUDED BY THE WATER DAMAGE EXCLUSION IN DEFENDANTS' POLICIES**

A.    **Relief Under Fed. R. Civ. P. 12 is Appropriate**

Defendants are each filing, contemporaneously herewith, a motion to dismiss under Rule 12(b)(6) and/or for judgment on the pleadings under Rule 12(c).  The standard for granting a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for granting a motion to dismiss under Rule 12(b)(6).  The well-pleaded allegations in the complaint are assumed to be true, and the motion will be granted if the plaintiffs cannot recover, as a matter of law, on the facts alleged.  Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004).  A document which is central to the plaintiffs' claims, such as an insurance policy, may be considered on a Rule 12 motion.  See Scanlan v. Tex. A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003) (holding that, on a Rule 12(b)(6) motion to dismiss, a court may consider "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim"); Illinois Cent. Gulf R.R. v. Pargas, Inc., 526 F. Supp. 209, 211 (M.D. La. 1981) (holding that contract could be considered on motion for judgment on the pleadings where it was attached to the answer).

Under Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning."  Edwards v. Daugherty, 883 So. 2d 932, 940-41 (La. 2004).  "If

the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance

contract must be enforced as written," and "[c]ourts lack the authority to alter the terms of

insurance contracts under the guise of contractual interpretation when the policy's provisions are

couched in unambiguous terms." <u>Id.</u> at 941.  In other words, "[t]he rules of construction do not

authorize a perversion of the words or the exercise of inventive powers . . . ." <u>Id.</u>  In this case,

when the plain language of the Water Damage exclusion in the Policies is applied to the facts

alleged, it is clear that Defendants are entitled to judgment as a matter of law.

**B.      The Policies, in Clear and Unambiguous Language, Exclude Losses Caused Directly or Indirectly By Flood, Surface Water or Overflow of a Body of Water, Regardless of Any Other Contributing Cause**

The Policies issued by Standard Fire, Hartford, Hanover and Unitrin all contain the

following language:

> We do not insure for loss caused <u>directly or indirectly</u> by any of the following.  <u>Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss</u>.

**c.      Water Damage**, meaning:

> **(1)** <u>Flood</u>, <u>surface water</u>, waves, tidal water, <u>overflow of a body of water</u>, or spray from any of these, <u>whether or not driven by wind</u>;

(Standard Fire Policies, App. at INS 96 and INS 136; Hartford Policy, App. at INS 56; Hanover

Policy, App. at INS 9; Unitrin Policy, App. at INS 171 (emphasis added).)

The Water Damage exclusion could not be any clearer or more comprehensive.  The

Louisiana Supreme Court has held that the words "directly or indirectly," when used in an

insurance policy exclusion, should be construed broadly.  <u>American Mfg. Corp.</u>, 14 So. 2d at 435

(emphasizing the use of the words "directly or indirectly" in an exclusion, holding that, where

excluded cause of loss was indirect but within the chain of causation, the exclusion applied).

The Policies provide not only that a loss is excluded if it is caused "directly or indirectly" by Water Damage, but also that "[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." This lead-in clause, which is commonly referred to as an anti-concurrent causation clause, makes clear that the excluded cause of loss, i.e., Water Damage, is not covered regardless of what factors might have caused or contributed to the Water Damage. Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd., Civ. A. No. 3:99-CV-1623-D, 2002 U.S. Dist. LEXIS 3594, at *11 (N.D. Tex. Mar. 5, 2002) (explaining the term anti-concurrent causation); see also Section I.D, below.

In a case involving flooding that occurred in New Orleans ten years ago, Judge Vance of this Court concluded that a water damage exclusion with language essentially identical to the language in the Policies was unambiguous and plainly applicable. In Travelers Indem. Co. v. Powell Ins. Co., Powell Insurance Company, an insurance broker, sued The Travelers Indemnity Company ("Travelers") to recover for water damage to golf carts.[6] 1996 U.S. Dist. LEXIS 15041, at *1. New Orleans had been affected by "torrential rains that caused severe flooding and considerable property damage . . . ." Id. at *3. The golf carts were insured under a commercial insurance policy containing a water damage exclusion and issued by Travelers. Travelers moved for summary judgment on the grounds that the loss was not covered under the water damage exclusion, which provided as follows:

> We [Travelers] will not pay for a "loss" caused directly or indirectly by
> any of the following. Such "loss" is excluded regardless of any other cause
> or event that contributes concurrently or in any sequence to the "loss."
> * * *

---

[6] Powell sued after settling a professional liability suit brought against it by its client, the Metarie Country Club, which was Travelers' insured. As part of the settlement, Powell took an assignment of the country club's rights against Travelers.

e. Water
(1) Flood, surface water, waves, tides, tidal waves, overflow of any body
of water, or their spray, all whether driven by wind or not;  . . .

Id.  Judge Vance granted summary judgment to Travelers, concluding that the exclusion

"unambiguously excludes coverage for flood damage to the golf carts," and stressing that "[t]his

Court cannot strain to find an ambiguity in the policy where none exists . . . ." Id. at *8.

## C.    Plaintiffs' Alleged Losses Clearly Fall Within the Water Damage Exclusion

Plaintiffs allege that "a small section of the concrete outfall canal wall known as the 17th

Street Canal, suddenly broke, causing water to enter the streets of the City of New Orleans and

homes of Petitioners, causing damage as hereinafter alleged." (Petition, ¶ 3.)  Water entering the

streets of the City from a canal, as a result of a break in a canal wall, clearly constitutes a loss

caused by "flood," "surface water" or "overflow of a body of water."

The water damage that occurred at the time of Hurricane Katrina was clearly a "flood."

Newspapers across the country called it a "flood."[7]  The term "flood" has been repeatedly

defined in dictionaries and caselaw as the inundation of ordinarily dry land.  In Florida E. Coast

Ry. Co. v. United States, 519 F.2d 1184 (5th Cir. 1975), for example, the Fifth Circuit,

interpreting a federal statute, adopted a definition of "flood" as including "water which inundates

an area of the surface of the earth where it ordinarily would not be expected to be . . . ." Id. at

---

[7] See, e.g., Joseph B. Treaster & Kate Zernike, "Hurricane Slams Into Gulf Coast," N.Y. Times, Aug. 30, 2005, at
A1 (reporting that in New Orleans "[f]loodwaters rose to rooftops in one neighborhood" and that "[s]ome of the
worst damage reports came from east of New Orleans with an estimated 40,000 homes reported flooded in St.
Bernard Parish"); Peter Whoriskey & Guy Gugliotta, "Storm Thrashes Gulf Coast," Washington Post, Aug. 30,
2005, at A1 (quoting Gov. Kathleen Babineaux Blanco as stating that "eastern New Orleans and St. Bernard Parish
east of the city had been 'devastated by floodwaters and high winds'" and also reporting that "St. Bernard Parish
reportedly had 40,000 flooded homes"); Kevin Sack, "Katrina's Rising Toll," Los Angeles Times, Aug. 31, 2005, at
A1 (reporting that, in New Orleans, "[i]n broad swaths, the flooding submerged low-lying neighborhoods up to the
rooftops . . . ."); Howard Witt & Dahleen Glanton, "Katrina Wallops Coast," Chicago Tribune, Aug. 30, 2005, at 1
(reporting "massive flooding" and that "New Orleans itself was cut off from all land access by surging floodwaters
that submerged every street and expressway leading into the Big Easy").

1192 (quoting Stover v. United States, 204 F. Supp. 477, 485 (N.D. Cal. 1962), aff'd, 332 F.2d

204 (9th Cir.)).  Numerous other courts have defined the term "flood," as used in water damage

exclusions, as the inundation of normally dry land.  See, e.g., Kane v. Royal Ins. Co., 768 P.2d

678, 681 (Colo. 1989) (concluding that "[t]he inundation of insureds' normally dry land falls

squarely within the[] generally accepted definitions of the term 'flood'"); Bartlett v. Cont'l

Divide Ins. Co., 697 P.2d 412, 413 (Colo. Ct. App. 1984) (defining flood as "a body of water

(including moving water) . . . overflowing or inundating land not usually covered," and noting

that "no distinction is made between natural and artificial causes"); Wallace v. McKinnis, 2005

Ohio 4058, 2005 Ohio App. LEXIS 3073, at *5 (Ohio Ct. App. Aug. 8, 2005) (adopting

definition of "flood" as including "a great stream of something that flows in a steady course" and

"a large quantity widely diffused; superabundance"); Wallis v. Country Mut. Ins. Co., 723

N.E.2d 376, 381 (Ill. App. Ct. 2000) (recognizing that flood waters include "water that escapes

from a watercourse in large volumes and flows over adjoining property in no regular channel")

(quoting Black's Law Dictionary 1585 (7th ed. 1999)); Whitt v. State Farm Fire & Cas. Co., 734

N.E.2d 911, 914 (Ill. App. Ct. 2000) (defining "flood" as "an inundation of water over land not

usually covered by it") (quoting Black's Law Dictionary 640 (6th ed. 1990)).  Overall, courts

have agreed "that a bursting dam or dike releasing an artificially impounded body of water

constitutes a flood within the ambit of a flood exclusionary clause . . . ." Russell G. Donaldson,

"What is 'Flood' Within Exclusionary Clause of Property Damage Policy," 78 A.L.R.4th 817, §

2(a) (1990 & Supp. 2005).

     In Buente, Judge L.T. Senter, Jr. of the Southern District of Mississippi recently held that

a water damage exclusion was clear and unambiguous, and applied to water damage caused by

Hurricane Katrina.  The plaintiffs' home sustained substantial damage from Hurricane Katrina, including damage caused by wind, by wind-driven rain, and by what the plaintiffs described as "storm surge" from the Mississippi Sound.  2006 WL 980784, at *1.  The Allstate policy provided that "We do not cover loss to the [insured] property consisting of or caused by:  1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water . . . ."  Id.  The plaintiffs sought summary judgment that the damage caused by "storm surge" was covered, contending that the Allstate water damage exclusion was ambiguous and unenforceable.  Id.  The court rejected that argument and denied the plaintiffs' motion, concluding that "[t]he exclusions are drawn quite broadly, and they have the clear purpose of excluding damage caused by inundation from coverage."  Id.  The court held that "[t]he inundation that occurred during Hurricane Katrina was a flood, as that term is ordinarily understood," and that "the Court is not free to change or invalidate the unambiguous terms of an insurance contract (or any other contract) . . . ."  Id. at *1-2 (emphasis added).

In Wallace, the Ohio Court of Appeals recently stressed that "flood" must mean something different than "overflow of a body of water" because overflow is separately excluded. The loss occurred when, during heavy rains, water overflowed from gutters onto the ground, and then into the basement of the insureds' home through a window.  Wallace, 2005 Ohio App. LEXIS 3073, at *3.  The policy excluded damage to personal property "directly or indirectly caused by 'water damage,'" which was defined as "flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind."  Id. at *4.  The court cited a dictionary definition of "flood" as including "(1) 'a rising and overflowing of a body of water that covers land not usually underwater; deluge; freshet;' (2) 'a great

downpour;' (3) 'a great stream of something that flows in a steady course;' (4) 'a large quantity widely diffused; superabundance.'" Id. at *5. The Ohio Court of Appeals affirmed summary judgment for the insurer. The court concluded that, given that the policy's definition of "water damage" included both "flood" and "overflow of a body of water," the term "flood" was not intended to mean "strictly an overflow of a body of water . . . ." Rather, the term "flood was intended to have a broader meaning such as a 'great stream of something flowing in a steady course,' or 'a large quantity widely diffused.'" Id. Given that a stream of water flowing into a basement can constitute a "flood," certainly the widespread inundation of the streets and homes of New Orleans was a "flood."

A number of courts have held that water damage exclusions essentially identical to the exclusion at issue in this case applied to facts that are essentially identical to Plaintiffs' allegations in this case. For example, in TNT Speed & Sport Ctr., Inc. v. American States Ins. Co., 114 F.3d 731 (8th Cir. 1997), a vandal removed sandbags and dirt from a levee, causing the levee to break, resulting in a release of river water which damaged the insured's property. Id. at 732. Like the Defendants' Policies, the insurance policy at issue excluded losses caused by "flood," "surface water" or "overflow of any body of water," and further provided that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Id. The Eighth Circuit affirmed the district court's holding that the exclusion clearly applied to this loss. Id. at 733.

Similarly, in Pakmark Corp. v. Liberty Mut. Ins. Co., 943 S.W.2d 256 (Mo. Ct. App. 1997), a levee broke, resulting in a release of water and backup of sewage which damaged the insured's property. Id. at 257-58. The policy excluded "loss or damage caused directly or

12

indirectly by . . . Flood, surface water . . . [or] overflow of any body of water . . . ." Id. The Missouri Court of Appeals affirmed the trial court's decision granting summary judgment for the insurer, concluding that the water damage exclusion was unambiguous and plainly applicable. Id. at 261-62.

Appellate courts in New York and Colorado have reached similar results. In E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co., 444 N.Y.S.2d 321 (N.Y. App. Div. 1981), the facts were that "a dike constructed to restrain the waters of the Champlain Barge Canal and Wood Creek gave way and water inundated the [insured's] property." Id. at 321. The plaintiffs asserted that the dike failed because of improper construction and maintenance, and that "for the flood exclusion to apply, the breaking of the dike must have been directly caused by the rising water." Id. at 322. The New York Appellate Division affirmed the trial court's decision granting summary judgment for the insurer, holding that the loss was clearly a "flood," and that "[i]t is irrelevant that a defect in the dike may have also contributed to the break." Id.

Similarly, in Bartlett, the insureds' property suffered water damage as a result of the failure of a dam. 697 P.2d at 413. The policy excluded loss "caused by, resulting from, contributed to, or aggravated by . . . flood, surface water, [or] . . . overflow of streams or other bodies of water . . . ." Id. The Colorado Court of Appeals affirmed the trial court's decision granting summary judgment to the insurer, concluding that "'flood' means a body of water (including moving water) . . . overflowing or inundating land not usually covered," and that the failure of the dam clearly fell within the exclusion. Id. In Kane, another case arising out of the same dam failure which gave rise to the loss in Bartlett, the Colorado Supreme Court affirmed a decision granting summary judgment to the insurers. The court adopted a dictionary definition

13

of "flood" as "[a]n overflowing of water on an area normally dry; inundation; deluge" and

concluded that "there is no doubt that this large-scale inundation of water was a 'flood.'" Kane,

768 P.2d at 681 (emphasis added). See also Valley Forge Ins. Co. v. Hicks Thomas &

Lilienstern, L.L.P., 174 S.W.3d 254, 259 (Tex. App. 2004) (holding that there was no coverage

for business income claim arising from water damage caused by floodwaters from bayou).

These cases are directly on point.  To accept Plaintiffs' contention that the massive

inundation of water in New Orleans at the time of Hurricane Katrina does not constitute a

"flood" or "overflow of a body of water" would eviscerate unambiguous policy language which

has been in homeowners policies for many years, and would turn well-established insurance law

on its head.

**D.      Under the Anti-Concurrent Causation Clause in the Water Damage
          Exclusion, Water Damage Losses are Excluded Regardless of Other
          Contributing Causes**

In the claims which have been severed and remanded, Plaintiffs allege that the Levee

Board "breached [its] duty to Petitioners by failing to correct the break or warn others including

Petitioners of the impending water intrusion . . . ." (Petition, ¶ 6.)  Assuming that allegation to

be true, it makes no difference in applying the language of the Water Damage exclusion.  Under

the Water Damage exclusion, losses caused by Water Damage are excluded regardless of

whether the Levee Board's negligence, or any other factors, contributed to the Water Damage.

The opinion in Prytania Park explains how an anti-concurrent causation clause bars

coverage for an excluded cause of loss regardless of any other causal factors that may have

contributed to the loss.  In that case, the insured hotel suffered a fire.  When the fire damage was

repaired, the New Orleans building code required the insured to add a sprinkler system, which

was not present before the fire, to a laundry room.  <u>Prytania Park</u>, 896 F. Supp. at 623.  The

policy contained an exclusion providing as follows:

> [General Star] will not pay for loss or damage caused directly or indirectly by the
> following.  <u>Such loss or damage is excluded regardless of any other cause or</u>
> <u>event that contributes concurrently or in any sequence to the loss</u>.
> a.  Ordinance or Law
> The enforcement of any ordinance or law:
> (1)  Regulating the construction, use or repair of any property . . . .

<u>Id.</u> at 623 (emphasis added).  The insured argued that the need for the sprinkler system was

proximately caused by the fire, not by the enforcement of the building code, and therefore should

be covered.  <u>Id.</u>  The court rejected this argument, holding that costs of complying with a

building code "are simply excluded according to the policy's plain, unambiguous language." <u>Id.</u>

at 624.  The court stressed that, under the anti-concurrent causation language, "it is

inconsequential . . . whether the fire which caused the loss occurred before the repair that

required installation of a sprinkler system." <u>Id.</u>

Similarly here, it does not change the result under the Water Damage exclusion, if one

assumes that, as Plaintiffs allege, the damage to Plaintiffs' homes was caused in part by the

Levee Board's negligence, or that the Levee Board's negligence contributed to the losses.  By

virtue of the exclusion's anti-concurrent causation clause, damage caused by flood, surface water

or overflow of a body of water is not covered regardless of other factors that may be within the

chain of causation.

Appellate decisions across the country have enforced similar anti-concurrent causation

language in Water Damage exclusions when applying those provisions to similar facts.  For

example, in <u>TNT Speed & Sport Ctr.</u>, a vandal removed sandbags and dirt from a levee on the

Mississippi River, causing the levee to break, resulting in a flood which damaged the insured's

property. 114 F.3d at 732. The Eighth Circuit affirmed the district court's holding that the exclusion clearly applied, regardless of the fact that vandalism, a covered cause of loss, contributed to the flood. Id. at 733. The court concluded that the anti-concurrent causation language made clear that the policy "exclude[s] coverage for losses caused by water, regardless of the existence of any other contributing causes in any sequence." Id.

The Sixth Circuit reached a similar result in Front Row Theatre, Inc. v. American Mfr. Mut. Ins. Cos., 18 F.3d 1343 (6th Cir. 1994). In that case, the insured theater building was surrounded by a parking lot which was on a higher elevation. This caused rainwater to naturally flow toward the building. Id. at 1345. The drainage system became 50% blocked, causing runoff from a rainstorm to enter the theater and damage the carpet. The parties agreed that the damage was caused both by water that had flowed through a portion of the drainage system and backed up, and by surface water that had never been able to enter the drainage system. Id. The policy contained a flood exclusion, with anti-concurrent causation language similar to the language in Defendants' Policies. There was, however, an exception to the exclusion for resulting loss from "water that backs up from a sewer or drain . . . ."[8] Id. The court held that

---

[8] The policy's flood exclusion provided:

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

> g. **Flood**

> 1) Including surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether driven by wind or not;

> 2) Mudslides or Mudflow.

> But if loss or damage by fire, theft, explosion, water that backs up from a
> sewer or drain or sprinkler leakage results, we will pay for that resulting loss or damage.

16

there was no coverage because, under the anti-concurrent causation clause, "where a flood is a partial cause of property damage, [the insurer] is not required to pay." Id. at 1347.

Several appellate court decisions have also relied on anti-concurrent causation language in enforcing water damage exclusions as applied to similar facts:

- Kane: This case involved the failure of a dam, which released water that caused damage to the insureds' property. 768 P.2d at 679. The insureds contended, inter alia, that there was coverage notwithstanding the water damage exclusion because third party negligence caused the failure of the dam. Id. at 684. The policy at issue excluded "loss . . . caused by, resulting from, contributed to, or aggravated by . . . flood . . . ." Id. at 684-85. The Colorado Supreme Court held that "[t]here is no doubt that the flood 'contributed to' or 'aggravated' the insureds' loss," and, therefore, the exclusion applied. Id. at 685-86.

- Pakmark: A levee on the Missouri River failed, resulting in a flood. 943 S.W.2d 256 at 257. The parties agreed that the damage to the insured's property was caused by both flood water, which was excluded, and sewer backup, which was a covered cause of loss. Id. at 259. The policy contained a water damage exclusion with anti-concurrent causation language. Id. at 258. The Missouri Court of Appeals affirmed summary judgment for the insurer, stressing that the policy expressly provided "that an exclusion is an exclusion regardless of any other cause that contributes to the loss, either concurrently or in any sequence to the loss." Id. at 261.

---

Id. at 1345 n.1.

- Sunshine Motors, Inc. v. New Hampshire Ins. Co., 530 N.W.2d 120 (Mich. Ct. App. 1995):  Rainwater flooded the insured car dealership because a drainage system was partially blocked with a piece of wood.  Id. at 121.  The Michigan Court of Appeals affirmed a decision granting summary judgment for the insurer, based on a water damage exclusion with anti-concurrent causation language.  The court held that "[w]hether the blocked drainage system was a direct or indirect cause of plaintiff's water damage, or whether it was *the* principal factor or merely *a* contributing factor, the policy expressly excluded coverage."  Id.

See also E.B. Metal & Rubber Indus., 444 N.Y.S.2d at 322 (holding that, where dike failed, flood exclusion clearly applied, even without anti-concurrent causation language; it was irrelevant whether dike was defectively constructed); Casey v. Gen. Accident Ins. Co., 578 N.Y.S.2d 337, 338 (N.Y. App. Div. 1991) (holding that, under water damage exclusion with anti-concurrent causation clause, there was no coverage where rainwater collected and entered basement due to clogged drainage system); Florida Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron, 721 So. 2d 825, 826 (Fla. Ct. App. 1998) (holding that, under water damage exclusion with anti-concurrent causation clause, there was no coverage for damage to insured's home caused by surface water which entered through cracks in walls caused by tree roots).

The anti-concurrent causation clause makes it clear that the Water Damage exclusion excludes coverage for the types of losses that are the subject of the Petition.  Under Louisiana law, however, the exclusion would apply even in the absence of that clause.  In American Mfg. Corp., the Louisiana Supreme Court broadly interpreted an exclusion containing the words "directly or indirectly," holding that an exclusion containing those words would apply where the

excluded peril was within the chain of causation. <u>American Mfg. Corp.</u>, 14 So. 2d at 435.  In

that case, the roof of the insured building was blown off by a tornado or windstorm, causing a

sprinkler feed pipe to break, flooding the premises. <u>Id.</u> at 432.  The policy at issue provided

coverage only for "direct loss and damage by 'sprinkler leakage,'" and excluded "loss or damage

caused directly or indirectly by . . . tornado, [or] windstorm . . . ." <u>Id.</u> at 431-32.  The court,

emphasizing the words "directly or indirectly" in the exclusion, held that "[a] windstorm, one of

the excepted hazards, was the indirect cause of the damage, and, since the company is not liable

under the policy for loss and damage 'caused directly or indirectly' by that hazard, plaintiff

cannot recover." <u>Id.</u> at 435.  <u>See also</u> <u>Hardin Bag & Burlap Co. v. Fidelity & Guar. Fire Corp.</u>,

14 So. 2d 634, 635-36 (La. 1943) (similar result).  The Supreme Court's reasoning is even

stronger in the case now before this Court because the peril excluded by the Policies (i.e., Water

Damage) was the direct, as opposed to indirect, cause of the loss at issue.

## II.     THE WATER DAMAGE EXCLUSION IS NOT UNCONSCIONABLE

### A.     The Water Damage Exclusion Does Not Conflict With Any Statute or Regulation, and Has Been Upheld by the Courts

Plaintiffs also allege that the Policies are "adhesion contracts," and that the Water

Damage exclusions are "unreasonably favorable to the Defendants and oppressive to the policy

holders and bear no reasonable relationship to the risk and needs of the business of the

Defendants, thereby rendering such exclusion provisions substantially and procedurally

unconscionable [and] void . . . ." (Petition, ¶ 11.)  This contention is without merit.  It is well-

established that "in the absence of conflict with statute or public policy, insurers may by

unambiguous and clearly noticeable provisions limit their liability and impose such reasonable

conditions as they wish upon the obligations they assume by their contract." <u>Livingston Parish School Board v. Fireman's Fund American Ins. Co.</u>, 282 So. 2d 478, 481 (La. 1973).[9]

In <u>Blakely v. State Farm Mut. Auto. Ins. Co.</u>, 406 F.3d 747 (5th Cir. 2005), the plaintiffs asserted that a provision in automobile insurance policies under which the insurer would pay for the cost of repairs, but not for the diminution in value of the repaired vehicle, was unconscionable. The Fifth Circuit, applying Mississippi law, held that this argument lacked merit because "[w]e find no pronouncement by Mississippi, either legislative or judicial, requiring that diminished value be a part of all automobile insurance policies." <u>Id.</u> at 754. The court agreed with the insurer's argument that "the policies cannot be unconscionable simply because they are standardized and cover certain risks but not others," and noted that "each policy must be submitted to the Mississippi Department of Insurance before public issuance." <u>Id.</u>

Similarly here, Louisiana law does not require property or homeowners' insurers to provide coverage for Water Damage. Indeed, such a requirement would directly conflict with the purpose of the National Flood Insurance Program ("NFIP"), which was enacted to provide federally-funded flood insurance. The NFIP was created based upon a Congressional finding that "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions." 42 U.S.C. § 4001(b). Moreover, Defendants' policy language was required to be filed with the Louisiana Department of Insurance, and was never disapproved. <u>See</u> La. Rev. Stat. § 22:620(A). Louisiana courts have enforced water damage exclusions for many years. <u>See, e.g.</u>, <u>Morehead v. Allstate Ins. Co.</u>, 406 F.2d 122, 122 (5th Cir. 1969) (affirming decision

---

[9] The question of whether a contractual provision is unconscionable is a question of law for the court. <u>Cooper Tire & Rubber Co. v. Farese, Farese & Farese Prof. Ass'n</u>, 423 F.3d 446, 458 (5th Cir. 2005).

enforcing water damage exclusion, under Louisiana law, as applied to hurricane loss); Powell

Ins. Co., 1996 U.S. Dist. LEXIS 15041, at *8.  As noted in Sections C and D, supra, numerous

courts across the country have enforced water damage exclusions as applied to facts which are

identical or closely analogous to the facts alleged in the Petition in this case.  Water damage

exclusions are plainly not unconscionable.

 **B.**  **Enforcing the Clear and Unambiguous Water Damage Exclusion is
Consistent With Congressional Intent to Make Coverage Available Under
the NFIP for These Types of Losses**

  In 1968, Congress enacted the National Flood Insurance Act, 42 U.S.C. § 4001 et seq.,

which created the NFIP.  The NFIP was created, in part, because the private insurance industry

could not provide flood insurance to homeowners on an economically feasible basis.  See 42

U.S.C. § 4001(b).  Under the NFIP, property owners can purchase flood insurance either directly

from the Federal Emergency Management Agency ("FEMA") or from private insurers

authorized to write federally funded flood insurance under their own names.  44 C.F.R. § 62.23.

Such private insurers are known as "Write Your Own" companies and act as agents of the federal

government -- claims are ultimately paid from the U.S. treasury.  44 C.F.R. §§ 62.23, 62.24.

State Farm and Standard Fire are among the insurers that issue flood insurance as a "Write Your

Own" company on a federally-mandated form.  In fact, State Farm issued a flood insurance

policy to Mary Jane Silva, one of the Plaintiffs in this case.  All policies issued under the NFIP

by any "Write Your Own" company must be issued using the terms and conditions of the

Standard Flood Insurance Policy ("SFIP") found in 44 C.F.R. Pt. 61, App. A.  See 44 C.F.R. §§

61.4(b), 61.13(d), (e), 62.23(c).  These flood insurance policies are separate and distinct from all

of Defendants' other property insurance policies, and contain entirely different terms, conditions and exclusions.

The SFIP provides coverage for "direct physical loss by or from flood" to the insured property (as defined therein).  44 C.F.R. Pt. 61, App. A.  The Water Damage losses alleged by the Plaintiffs fall within the SFIP's grant of coverage, subject to its other terms, conditions, limitations and exclusions.  The Water Damage exclusion in Defendants' Policies excludes the same types of losses which are generally covered by flood insurance policies.  Enforcing the Water Damage exclusion maintains the long standing distinction between the coverage that is provided by homeowners insurance policies, which exclude Water Damage, and the coverage provided by SFIPs issued under the federally funded NFIP.  See Quesada v. FEMA, 577 F. Supp. 695, 697 (S.D. Fla. 1983) (holding that damage caused by water from tropical storm was not covered under homeowner's insurance policy, and was covered under flood insurance policy).

For the past 37 years, the type of coverage that Plaintiffs are seeking in this case has been provided through the NFIP.  During this same time period, standard homeowners insurance policies have specifically excluded this type of risk.  The relief sought by Plaintiffs would both re-write Defendants' Policies to cover risks for which premiums were not paid, and render the NFIP superfluous.

**III.    TO THE EXTENT THAT PLAINTIFFS ALLEGE THAT THEIR LOSSES WERE CAUSED BY THE LEVEE BOARD'S FAILURE TO ACT OR ITS FAILURE TO MAINTAIN THE LEVEES, THESE CAUSES OF LOSS ARE ALSO SEPARATELY EXCLUDED**

Plaintiffs' claims against the Levee Board, which have been severed and remanded to state court, allege that the losses were caused, at least in part, by the Levee Board's negligence in "failing to correct the break or warn others including Petitioners of the impending water intrusion

. . . ." (Petition, ¶ 6.)  These allegations are no longer part of this case and are, in any event, irrelevant to determining coverage under the Policies.  As this Court has previously noted, "[f]ault is irrelevant with respect to the coverage afforded under the homeowners' policies . . . ." (Order & Reasons on Motion to Remand and Motion to Sever, dated June 1, 2006, at p. 18.)

The question of whether the Levee Board's negligence may have contributed to or exacerbated the flooding is irrelevant because the Water Damage exclusion contains anti-concurrent causation language which makes clear that the exclusion applies regardless of whether any other causes might have contributed to the Water Damage.  See Section I.D, supra. Loss caused by the Levee Board's alleged negligence is also independently excluded by other provisions in the Policies.  First, the Policies provide that "We do not insure for loss to property described in Coverages A and B [i.e., the dwelling and other structures coverage] caused by . . . **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body . . . ." (Standard Fire Policies, App. at INS 97 and INS 137; Hartford Policy, App. at INS 56; Hanover Policy, App. at INS 10; Unitrin Policy, App. at INS 172.)  Plaintiffs allege, essentially, that the Levee Board failed to act to correct the break in the levees or warn Plaintiffs of the water intrusion.  (Petition, ¶ 6.)  This cause of loss is clearly excluded by the "Acts or decisions" exclusion.  See Jernigan v. Nationwide Mut. Ins. Co., Civ. A. No. C 04-5327 PJH, 2006 U.S. Dist. LEXIS 9571, at *29 (N.D. Cal. Feb. 27, 2006) (holding that, to the extent that decisions by town council and town government officials were claimed to be part of the cause of the loss of a building which was intentionally demolished, these causes were excluded by the policy's "acts or decisions" exclusion).

23

Second, the Policies also provide that "We do not insure for loss to property described in Coverages A and B caused by . . . **Faulty, inadequate or defective** . . . **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; **(3)** Materials used in repair, construction, renovation or remodeling; or **(4)** Maintenance; of part or all of any property whether on or off the 'residence premises.'" (Standard Fire Policies, App. at INS 97 and INS 137; Hartford Policy, App. at INS 56; Hanover Policy, App. at INS 10; Unitrin Policy, App. at INS 172.) These exclusions are clearly applicable in this case to the extent that Plaintiffs allege that negligent maintenance of the levees caused the water damage to their homes.

In Waldsmith v. State Farm Fire & Cas. Co., 283 Cal. Rptr. 607 (Cal. Ct. App. 1991), for example, the parties stipulated, for purposes of a motion for judgment on the pleadings, that the plaintiffs' home was destroyed by a landslide which resulted from a break in a water main. It was also stipulated that the water main had been negligently maintained by the city. Id. at 607-08. The California Court of Appeal affirmed summary judgment for the insurer, holding that the negligent maintenance of the water main fell "squarely" within both an "acts or decisions" exclusion and an exclusion for "inadequacy in workmanship, materials used in repair, or 'maintenance of any property . . . of any kind whether on or off the premises.'" Id. at 608.

Similarly here, to the extent that Paragraph 6 of the Petition could be construed as alleging that the Levee Board failed to properly maintain the levees at the time of Hurricane Katrina, that cause of loss would be excluded by the exclusion for faulty, inadequate or defective maintenance. See also Holland v. Breaux, Civ. A. No. 04-3028, 2005 U.S. Dist. LEXIS 36504, at *9-10 (E.D. La. Nov. 22, 2005) (granting summary judgment in favor of insurer, holding that,

to the extent that damage to home was caused by improper venting of dryer, this was excluded under policy's exclusion for faulty planning, construction or maintenance).[10]

## CONCLUSION

For all of the foregoing reasons, Defendants' Rule 12 motions should be granted, and Plaintiffs' Petition should be dismissed with prejudice.

Dated this 15th day of June, 2006.

Respectfully submitted,

_(signature)_

Christopher W. Martin (pro hac vice)
Texas Bar 13057620
Federal ID 13515
Martin R. Sadler (pro hac vice)
Texas Bar 00788842
Federal ID 18230
MARTIN, DISIERE, JEFFERSON &
WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas 77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101

Attorneys for Hartford Insurance Company of
the Midwest (incorrectly named as Hartford
Insurance Company)

Ralph S. Hubbard III, T.A., La. Bar. # 7040
Joseph P. Guichet, La. Bar # 24441
Seth A. Schmeeckle, La. Bar # 27076
LUGENBUHL, WHEATON, PECK,
        RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:    (504) 568-1990
Facsimile:    (504) 310-9195

Attorneys for The Standard Fire Insurance
Company (incorrectly named as Travelers
Insurance Company and St. Paul Travelers
Insurance Company), Hartford Insurance
Company of the Midwest (incorrectly named
as Hartford Insurance Company) and Hanover
Insurance Company

Paul E. B. Glad (pro hac vice)

Stephen E. Goldman (pro hac vice)

---

[10] The lead-in clause to both the "act or decisions" exclusion and the faulty, inadequate or defective maintenance exclusion also contains an "ensuing loss" clause, which provides that "any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered." (Standard Fire Policies, App. at INS 97 and INS 137; Hartford Policy, App. at INS 56; Hanover Policy, App. at INS 10; Unitrin Policy, App. at INS 172 (emphasis added).) The water damage to Plaintiffs' homes clearly does not qualify as a covered "ensuing loss" because water damage is separately excluded by the Policies. Water damage does not constitute a loss which is "not excluded or excepted in this policy" and, therefore, the "ensuing loss" clause does not apply.

Kevin P. Kamraczewski (pro hac vice)
Andrew R. Greene
SONNENSCHEIN NATH & ROSENTHAL
LLP
7800 Sears Tower
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Attorneys for Hanover Insurance Company

Wystan M. Ackerman (pro hac vice)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone:    (860) 275-8255
Facsimile:    (860) 275-8299

Attorneys for The Standard Fire Insurance
Company (incorrectly named as Travelers
Insurance Company and St. Paul Travelers
Insurance Company)

Neil C. Abramson (21436)
Nora B. Bilbro (22955)
Curt L. Rome (29406)
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130

Attorneys for Unitrin Preferred Insurance
Company, erroneously identified as Kemper
Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Consolidated Memorandum of Law of Defendants The Standard Fire Insurance Company, Hartford Insurance Company of the Midwest, Hanover Insurance Company and Unitrin Preferred Insurance Company has been served upon all known counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this 15th day of June, 2006.

26