UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO.  05-4182 |
| | * | |
| BOH BROTHERS CONSTRUCTION CO., | * | SECTION "K"(2) |
| L.L.C., ET AL. | * | CONS. KATRINA CANAL |
| | * | |
| | * | |
| THIS DOCUMENT RELATES TO: | * | |
| | * | |
| INSURANCE DEFENDANTS | * | |

05-6323 "K" (2) VANDERBROOK

**STATE FARM'S MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

## I.    INTRODUCTION

Plaintiffs bring this action against five insurance companies, each of which is alleged to have issued policies of homeowners insurance to one or more Plaintiffs covering property located in Orleans Parish.  As a threshold matter, only two of the Plaintiffs allege that they are State Farm policyholders.  Therefore, the other Plaintiffs have no standing to assert a claim against State Farm.

Moreover, the claims of the Plaintiffs who allege they are State Farm policyholders fail under settled principles of Louisiana law.  The Petition in effect asks this Court

- 1 -

to invalidate a clear and unambiguous exclusion in State Farm's homeowners policies. Specifically, Plaintiffs contend that because the water damage losses they suffered during Hurricane Katrina were caused by water that flowed through a break in the 17th Street Canal levee, State Farm's Water Damage exclusion and similar exclusions in the policies of the other insurer defendants do not apply. Plaintiffs also appear to contend that these exclusions are "vague" and "unconscionable" and therefore should not be enforced.

Plaintiffs' *post hoc* attempt to circumvent State Farm's policy language – in derogation of both the Louisiana courts and the Louisiana Department of Insurance, which approved the language – must be rejected.

As will be demonstrated, State Farm's policy clearly excludes coverage for the damage Plaintiffs allege they have incurred. The exclusionary language that Plaintiffs seek to invalidate has been held by Louisiana courts, as well as courts in other jurisdictions, to unambiguously exclude coverage for loss that would not have occurred in the absence of flood and surface water. The courts of this state also have recognized that the challenged exclusionary language applies regardless of the cause of the flood or surface water or the operation or effect of other causes of loss, such as a levee break. Furthermore, as the decision upholding and applying this exclusion indicate, there is clearly no basis for finding State Farm's exclusions vague or unconscionable. Accordingly, because the relief Plaintiffs seek is contrary to both the policy language and the governing case law, Plaintiffs' claims must be dismissed.

Plaintiffs' challenge to the validity of State Farm's water damage exclusion is also impermissible under the filed rate doctrine. The Louisiana Insurance Rating Commission and the Louisiana Commissioner of Insurance have exclusive authority to review and approve *insurance rates and insurance policy forms and have approved the rates and terms of State Farm's*

794604v.2

homeowners insurance policies.   Invalidation of the plain and unambiguous Water Damage exclusion would effectively constitute an impermissible alteration of the rates and terms approved by these regulatory bodies and accordingly is precluded by the filed rate doctrine.

Dismissal of Plaintiffs' Petition is also required by the Constitutions of the United States and the State of Louisiana.  Plaintiffs' attempt to impose massive retroactive liability for flood losses that State Farm never contracted to insure and for which policyholders did not pay premiums violates due process and is an impermissible taking without compensation and an impairment of State Farm's contracts.  If the relief sought by Plaintiffs were extended under homeowners policies to all insureds in Louisiana who suffered water damage losses due to flood water flowing through breaks in levees during Hurricane Katrina, interstate commerce would also be unconstitutionally burdened.   Finally, Plaintiffs' claims for declaratory relief and mandamus are contrary to public policy and are preempted because they would impermissibly obstruct the objectives and goals of the National Flood Insurance Act ("NIFA"), 42 U.S.C. § 4001 *et seq.*

For all these reasons and those set forth below, the Court should enter judgment as a matter of law for State Farm on all of Plaintiffs' claims against it.[1]

## II.     STATEMENT OF FACTS

### A.     The Complaint.

On August 29, 2005, Hurricane Katrina "passed over and near the City of New Orleans, causing damage to the homes and structures" there. (Petition for Damages ("Pet."), ¶ 2) Plaintiffs aver that before the full force of the storm arrived, "a small section of the concrete outfall canal wall known as the 17th Street Canal, suddenly broke, causing water to enter the

---

[1]     The other defendant insurers in this action are filing a joint motion for judgment on the pleadings urging grounds similar to those urged here by State Farm.  State Farm has filed a separate motion because its policy language, which is the basis for this motion, is different from that of the other defendant insurers.

streets of the City of New Orleans and homes of Petitioners. . . ."  (Pet., ¶ 3)  Plaintiffs further allege that their homes incurred "water damage" as a consequence of the levee breach.  (Pet., ¶¶ 3, 7)

The Petition lists each of the Plaintiffs and the defendant homeowners insurer by whom he or she is alleged to have been insured (Pet., ¶ 7), and avers that all the defendant insurers have "refused to pay for a covered loss and with full knowledge that the water damage suffered by Petitioners was due to a sudden break in the concrete wall of the levee outfall canal and is not described in any policies as an excluded loss. . . ."  (Pet. ¶ 10).  They further allege that the damage they suffered was not the result of "flood, surface water, waves, title [sic] water, tsunami, seiche, overflow of a body of water, seepage under or over the outfall canal or spray from any of the above but was water intrusion, caused simply from a broken levee wall."  (Pet. ¶ 4).  Somewhat paradoxically, the Petition also states that the homeowners policies issued to Plaintiffs "are adhesion contracts, unduly and unreasonably complex in their provisions and language and difficult to understand by the average consumer and policy holder, which resulted in a lack of knowledge in the provisions of the policies and lack of understanding on the part of the policy holders."  It is further alleged that "[t]he vague exclusion provisions contained in these policies . . . are unreasonably favorable to the Defendants and oppressive to the policy holders and bear no reasonable relationship to the risks and needs of the business of Defendants, thereby rendering such exclusion provisions substantially and procedurally unconscionable" and void.  (Pet., ¶¶ 10, 11).

After alleging that the "water damage" included structural damage and destruction of their homes and contents, "personal irreplaceable keepsakes and mementos, furniture, appliances, landscaping and property values," (Pet. ¶ 7)  Plaintiffs pray for judgment against the

794604v.2

defendant insurers "for all amounts as reasonable under the premises," for penalties for arbitrary and capricious failure to "pay for all public water damage claims" and for interest and other costs.[2]

### B.   The State Farm Policies.

The Petition correctly alleges that State Farm issued homeowners policies to two of the plaintiffs, Mary Jane Silva ("Silva") and Robert G. Harvey, Sr. ("Harvey").  The policies issued to Silva and Harvey contain the following exclusion:[3]

> 2.   We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these.  *   *   *
>
> c.   **Water Damage**, meaning:
>
> (1)   flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not[.]  *   *   *[4]

---

[2]      The Petition also contains allegations regarding the Board of Commissioners for the Orleans Levee District ("the Levee Board"), from whom Plaintiffs also seek damages.  However, there is no connection between the alleged conduct of the Levee Board - breach of its duty to correct the breach in the 17th Street Canal levee or to warn plaintiffs of the impending water intrusion - and the defendant insurers' alleged improper refusal to pay Plaintiffs for water damage they incurred.  Moreover, plaintiffs' claims against the Levee Board have been severed and remanded.  Thus, the allegations against the Levee Board are irrelevant to this motion.

[3]      True copies of the State Farm's homeowners policies issued to Silva and Harvey are attached hereto as Exhibits A and B, respectively.  Silva also had a Flood Policy with State Farm and it is attached hereto as Exhibit E.  They are already a part of the record in this case as Exhibit 1 to the Joint Notice of Removal to Federal Court.

[4]      The next section of the policy further states:  3.  *   *   *.  Further, we do not insure for loss described in paragraph[] . . . 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

     a.   conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

     b.   defect, weakness, inadequacy, fault or unsoundness in:

        1.   planning, zoning, development, surveying, siting;

        2.   design, specifications, workmanship, construction, grading, compaction;

        3.   materials used in construction or repair;  or

794604v.2

(*See* Exhibits A and B at pp. 10-11 ).  As required by law, this policy language was filed with, and approved by, the Louisiana Commissioner of Insurance prior to its use.

## III.   ARGUMENT

### A.   Standard.

"A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice And Procedure* § 1367, at 509-10 (1990)).  The Court may consider as part of the pleadings any documents referred to in the plaintiff's complaint that are central to the plaintiff's claims.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Thus, it is appropriate for this Court to consider the homeowners policies issued by State Farm to Silva and Harvey, which are attached hereto as Exhibits A and B, respectively.  The Court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  The Court accepts all well-pleaded facts in the complaint as true, viewing them in the light most favorable to the plaintiff.  *Id.* at 312-13.  However, the Court will not "accept as true conclusory allegations or unwarranted deductions of fact."[5]  *Id.* at 313.

---

4.      maintenance of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c.      weather conditions

[5]      "Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same. " *Great Plains*, 313 F.3d at 313 n.8 (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1368, at 591 (Supp. 2002)).

794604v.2

**B.**   **The Plaintiffs Other Than Silva And Harvey Have No Standing To Bring A Claim Against State Farm.**

The Petition alleges that State Farm issued homeowners policies only to Silva and Harvey and that all of the other Plaintiffs were insured by other defendant insurers. Leaving aside for the moment the claims asserted by Silva and Harvey, it is clear that the claims of all the other Plaintiffs against State Farm must be dismissed.

In order to have standing to state a claim based on a contract, the plaintiff must be a party to or an assignee or third-party beneficiary of the contract. *Minvielle v. IMC Global Operations, Inc.*, 380 F. Supp. 2d 755 (E.D. La. 2004). When one of the legal requirements for recovery is the existence of a contract between the plaintiff and the defendant, the failure to allege the existence of such a contract will result in dismissal of the claim.[6]

"It is a fundamental principle of law that a plaintiff must demonstrate injury to himself by the parties whom he sues before the plaintiff can successfully state a cause of action." *Husbands v. Commonwealth of Pennsylvania*, 359 F. Supp. 925, 933 (E.D. Pa. 1973). Here, the plaintiffs other than Silva and Harvey do not allege that State Farm issued a policy of homeowners insurance to them or any other facts affording them a legal basis for recovery against State Farm. Therefore, they have no standing to assert a claim against State Farm and their claims against State Farm must be dismissed.[7]

---

[6]   *See, e.g., McCann v. Texas City Refining, Inc.*, 984 F.2d 667, 674 (5th Cir. 1993) (court dismissed complaint seeking recovery for tortious interference with contract when the existence of a contract was not alleged); *Warfield v. Fid. & Deposit Co.*, 904 F.2d, 322, 326 (5th Cir. 1990) (court dismissed for lack of standing claim against insurer for breach of duty of good faith and fair dealing because plaintiffs were neither insureds nor beneficiaries under the policy).

[7]   *Collum v. Hibernia National Bank*, 859 F.2d 1211 (5th Cir. 1988); *FDIC v. Langley*, 792 F.2d 547 (5th Cir. 1986); *Dardar v. Potter*, 2004 U.S. Dist. LEXIS 3512 (E.D. La., March 4, 2004), affd., 2004 U.S. App. LEXIS 19218 (5th Cir. La., September 13, 2004).

794604v.2

**C.    Plaintiffs Silva and Harvey Are Not Entitled To Recover From State Farm For Water Damage To Their Property Even If A Broken Levee Wall Caused The Damage.**

      **1.    State Farm's Water Damage Exclusion Unambiguously Excludes Loss That Would Not Have Occurred "In The Absence" Of Water Damage, Regardless Of The Cause Of The Damaging Flood Or Surface Water.**

It appears from their Petition that plaintiffs Silva and Harvey contend that the Water Damage exclusion in their insurance contracts with State Farm does not apply to the loss they claim they suffered because the water damage to their property was "water intrusion, caused simply from a broken levee wall." (Pet ¶ 4)  In addition, or perhaps in the alternative, Silva and Harvey appear to contend that their contract with State Farm was a "contract of adhesion" and that some unspecified portions of their policies were "unduly and unreasonably complex . . . and difficult to understand to the average consumer . . ."; and that "exclusion provisions" in the policies - apparently the Water Damage exclusion - are "unreasonably favorable" to State Farm, "oppressive to the policy holders" and "substantially and procedurally unconscionable" and "void" (Pet. ¶ 11). [8]  Plaintiffs' contentions have no merit.

Louisiana courts interpret insurance policies according to the general rules of contract interpretation set forth in the Civil Code. *See Ledbetter v. Concord Gen. Corp.*, 95-0809 (La. 1/6/96) 665 So. 2d 1166, 1169. Courts look to the intent of the parties as reflected by the words of the policy. *Id.*  When the words are clear and unambiguous and lead to no absurd consequences, courts must enforce the policy language as written.[9]   Interpretation of

---

[8]    Although Plaintiffs do not expressly plead their contentions in the alternative, it would be appropriate if they did so.  Plaintiffs' allegation that State Farm's Water Damage exclusion does not apply because it does not encompass losses caused by a levee breach is inconsistent with the contention that the Water Damage exclusion is "vague" and "unconscionable" and should not be enforced.

[9]    La. Civ. Code art. 2046; *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 985 (La. 1991).

unambiguous policy provisions is a question of law for the court to decide.[10]  Insurance policies are construed as a whole, and each provision must be interpreted in light of the other provisions so that each has meaning.[11]  In the absence of conflict with statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract.[12]  Although exclusions are strictly construed, as stated by the Court in *Commercial Union Ins. Co. v. Advance Coating Co.*, 351 So. 2d 1183, 1185 (La. 1977):

> The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties. . . .

Plaintiffs are charged with knowledge of the terms of their policies, and are therefore bound by them.[13]  So-called "adhesion contracts" are enforceable so long as the weaker of the two parties has consented to any provisions in "fine print" and the contractual provisions, as here, are not unduly burdensome or extremely harsh.[14]

       a.      **The Alleged Losses Of Silva And Harvey Are Excluded Under The Plain Language Of State Farm's Policies.**

Plaintiffs allege that the losses for which they now seek coverage were caused by water damage resulting from a break in a canal levee that allowed water to enter into the streets of New Orleans and their homes.  As noted above, State Farm's Water Damage exclusion specifically excludes coverage for losses from both flooding and surface water.  Although

---

[10]    *American Deposit Ins. Co. v. Myles*, 2000-2457 (La. 4/25/01) 783 So. 2d 1282, 1286.

[11]    La. Civ. Code art. 2050; *Central La. Elec. Co.*, 579 So. 2d at 985.

[12]    *Livingston Parish School Board v. Fireman's Fund American Insurance Co.*, 282 So. 2d 478 (La. 1973).

[13]    *Elston v. Shell Oil Co.*, 376 F. Supp. 968, 971 (La. 1973) ("[The insured] had a duty to read the entire contract before he signed it and his failure to do so was negligence on his part.  One who signs a written instrument is presumed to know its contents and cannot avoid its obligation merely by contending that he had not read it.").  See also *Dugas v. Modular Quarters, Inc.* 561 So. 2d 192 (La. App. 3rd Cir. 1990).

[14]    *Andry v. The New Orleans Saints*, 2001-924 (La. App. 5th Cir. 05/30/02) 820 So. 2d 602.

Plaintiffs appear to contend that water flowing through a broken levee wall does not constitute "flood" or "surface water," their position has no merit. Plaintiffs' claimed losses are clearly and unambiguously excluded by the plain terms of State Farm's Water Damage exclusion which are not in "fine print." There is nothing "unconscionable" in an insurer limiting its liability in this way.

Because the terms "flood" and "surface water" are not defined in the policy, they "must be given their generally prevailing meaning." La. Civ. Code art. 2047. "Ordinarily, 'flood' means 'a body of water...overflowing or inundating land not usually covered,' 36A C.J.S. Flood, and no distinction is made between natural and artificial causes." *Bartlett v. Continental Divide Ins. Co.*, 697 P.2d 412, 413 (Colo. Ct. App. 1984), *aff'd*, 73 P.3d 308 (Co. 1986); see also *Whitt v. State Farm Fire & Cas. Co.*, 734 N.E.2d 911, 914 (Ill. App. Ct. 2000) ("A flood is 'an inundation of water over land not usually covered by it. Water which inundates [an] area of surface of earth where it ordinarily would not be expected to be.'" (quoting *Black's Law Dictionary* 640 (6th ed. 1990)); *Kane v. Royal Ins. Co. of Am.,* 768 P.2d 678, 679-81 (Colo. 1989) (inundation of insureds' dry land when dam broke and water rushed down river constituted "flood" for purposes of flood exclusion). There is no basis for arguing from the plain meaning of the policy terms that a flood caused by a breach in a levee is any less an excluded flood than one caused by some other mechanism.

In *Travelers Indemnity Co. v. Powell Ins. Co.*, 1996 WL 578030 (E.D. La. Oct. 4, 1996), this Court was called upon to construe a similar exclusion when torrential rains in New Orleans caused severe flooding that damaged electric golf carts owned by the Metairie Country Club ("MCC"). MCC submitted a claim for the damage to its insurer, Travelers, which denied coverage based on its "water" exclusion. In the subsequent suit, the court granted summary

- 10 -

judgment to Travelers, ruling that "the language of the policy on its face unequivocally excludes coverage for flood damage to the golf carts." *Id.* at *3. The court noted that it could not – and would not – "strain to find an ambiguity in the policy where none exists." *Id.*[15]

Courts outside Louisiana have also consistently held State Farm's water damage exclusion valid and enforceable. For example, in *Eaker v. State Farm Fire & Casualty Co.*, 216 F. Supp. 2d 606 (S.D. Miss. 2001), the insureds sought to recover under their homeowners policy for settlement and foundation problems caused by flood water from Hurricane Georges. The Southern District of Mississippi granted summary judgment for State Farm, holding that the same water damage exclusion at issue here "clearly exclude[d]" the insureds' claim. *Id.* at 622. Likewise, in *Quesada v. Director, Federal Emergency Management Agency*, 577 F. Supp. 695, 697 (S.D. Fla. 1983), the court rejected plaintiff's claim for property damage caused by heavy flooding and rains attributable to Tropical Storm Dennis:

> [State Farm's] homeowners' policy was not intended to cover, and does not protect Plaintiffs against, losses of the type sustained by Plaintiffs' home in this case. The clear language of the policy specifically *excludes* damage caused by flood and related events. . . . [T]he plain meaning of the State Farm contract gives rise to the undeniable inference that flood or flood-related damage was not within the ambit of the coverage contemplated by the parties.

*Id.* (emphasis in original). And as the Wyoming Supreme Court succinctly stated:

> The language of the [Water Damage exclusion] is not ambiguous. It is plain and clear. It does not have a double meaning, nor is it indefinite or obscure in its meaning. It is definite in expression and can be understood in only one way. It has but a single meaning, and that meaning is not uncertain. It provides that there *is no coverage for loss due to "water damage" as "water damage" is defined in the* contract, i.e., that resulting from "flood, surface water, waves, tidal water, * * * or spray from any of these, whether or not driven by the wind."

*State Farm Fire & Cas. Co. v. Paulson*, 756 P.2d 764, 766 (Wyo. 1988) (footnote omitted).

---

[15]    *See also Whitt v. State Farm Fire & Cas. Co.*, 734 N.E.2d 911, 916 (Ill. App. Ct. 2000). These and other cases upholding the "flood" and "surface water" portions of State Farm's water damage exclusion are compiled in Exhibit C, attached.

Courts in at least twelve other jurisdictions have held that similar water damage exclusions in the policies of other insurance companies are clear and unambiguous, as shown on Exhibit C attached hereto.[16] In particular, on April 11, 2006, a Mississippi federal court upheld a similar water damage exclusion in a homeowners policy and found that damage caused by Hurricane Katrina's storm surge was not covered. *Buente v. Allstate Property & Cas. Ins. Co.*, No. 1:05 CV 712 LTS JMR (S.D. Miss, Apr. 11, 2006).[17]

Moreover, courts have specifically held that water damage/flood exclusions similar to State Farm's unambiguously exclude loss caused by flood, even though the flooding was caused by a break in a man-made structure like a levee, dike or dam. For instance, in *E.B. Metal & Rubber Industries, Inc. v. Federal Insurance Co.*, 444 N.Y.S.2d 321 (App. Div. 1981), the insureds brought suit to recover damages sustained when a dike gave way, inundating their property with water. The insurers contended that the loss was unambiguously excluded by the policy's flood exclusion, which applied to "waves, tidal water or tidal wave, rising (including overflowing or breaking of boundaries) of lakes, reservoirs, rivers, streams or other bodies of water, whether driven by wind or not." *Id.* at 322. The court held that the carriers had properly denied coverage; in light of the clear and unambiguous terms of the flood exclusion, it was irrelevant that a break in the dike caused the flood and that a defect in the dike may have contributed to the break. *Id. See also, Bartlett v. Continental Divide Ins. Co.*, 697 P.2d 412, 413

---

[16]    Of particular note is the Texas Supreme Court's opinion in *Hardware Dealers Mutual Insurance Co. v. Berglund*, 393 S.W.2d 309, 313-14 (Tex. 1965), in which the court specifically rejected an insured's contention that that "an interpretation of the water exclusion clause so as to exclude water damage caused by a hurricane would create an ambiguity."

[17]    The policy excluded loss "consisting of or caused by . . . flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind . . ." and "water or any other substance on . . . the surface of the ground regardless of its source." The court rejected plaintiffs' contentions that these exclusions were ambiguous and therefore unenforceable in the context of property damage sustained in Hurricane Katrina and that their loss was covered because "storm surge" was not specifically listed as an excluded peril in the policy.

(Colo. Ct. App. 1984) (affirming partial summary judgment for insurer that denied coverage for damage caused by water and debris released as result of dam failure).

**b.      The "Lead-In" Language To The Water Damage Exclusion Confirms That The Source Of The Flooding Is Irrelevant.**

As demonstrated above, the plain language of State Farm's Water Damage exclusion is sufficient, by itself, to dispose of State Farm's insureds' claims.  Furthermore, other policy provisions reaffirm that this exclusion precludes recovery here.  The Water Damage exclusion, like several other exclusions in the policy, is prefaced by a "lead-in" paragraph that specifically states there is no coverage for a loss that would not have occurred "in the absence of" water damage, regardless of the operation, effect, or sequence of other potential causes of loss.[18] In light of this language, it simply does not matter whether a levee breach played a part in causing Plaintiffs' losses; so long as those losses would not have occurred in the absence of water damage as defined, they are excluded from coverage.

At least two courts applying Louisiana law have construed and upheld language similar to State Farm's "lead-in."  In *Sweeney v. City of Shreveport*, 584 So. 2d 1248 (La. App. 2 Cir. 1991), Sweeney's house was demolished following her apparent refusal to respond to the City's repeated notices of code violations and a notice of impending demolition.  Due to an error on the part of the city inspector, the required notices had been sent to the wrong person.  *Id.* at 1249.  When Sweeney discovered the demolition, she sued the City and her insurer, Vanguard.  Vanguard denied Sweeney's claim on the basis of its policy's "ordinance or law" exclusion, which specifically excluded loss "caused directly or indirectly by . . . enforcement of any ordinance or law regulating the . . . demolition of property. . . ."  *Id.* at 1250.  The lead-in

---

[18]      The lead-in provision applies to six separate "excluded events" (i.e., perils): "a. Ordinance or Law, . . . b. Earth Movement, . . . c. Water Damage, . . . d. Neglect, . . . e. War, . . . [and] f. Nuclear Hazard . . . ."  *See* Exh. A and. B, at p. 10.

- 13 -

language to the exclusion stated that the loss was excluded "regardless of any other cause or event contributing concurrently or in any sequence to the loss." *Id.* The Louisiana Second Circuit Court of Appeal affirmed summary judgment for Vanguard, rejecting Sweeney's argument that the exclusion was ambiguous. Based on the effect of this lead-in language, the court also rejected Sweeny's claim that the exclusion did not apply because her loss was caused in party by the City's negligence.[19]

Another case approving and applying lead-in language similar to State Farm's is *Prytania Park Hotel v. General Star Indemnity Co.*, 896 F. Supp. 618 (E.D. La. 1995). That case involved a challenge to an insurer's refusal to pay the cost of installing a sprinkler system required by the City building code as part of the repair of the insured's building after it was damaged by fire. The insurer relied upon an "ordinance or law" exclusion in its policy that had lead-in language similar to that used to preface State Farm's Water Damage exclusion. Just as Plaintiffs here claim that the Water Damage exclusion does not apply because their losses were precipitated by a break in the 17th Street Canal levee, the *Prytania Park* plaintiffs argued that the ordinance or law exclusion did not apply because the installation of a sprinkler system would not have been required but for the fire. The court made short shrift of that argument:

> Although it is true that the fire caused the damage to the property which necessitated the repair, the policy language specifically states that losses arising from enforcement of an ordinance or regulation, such as the building code requirement for a sprinkler system, are excluded "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." In other

---

[19] The court stated:

> Admittedly, Mrs. Sweeney did not receive notice that her property was to be demolished; thus her claim against the city may have merit. However, the exclusion provides that *any loss* directly or indirectly resulting from enforcement of an ordinance is excluded *regardless of any contributing causes*. It may be true that the negligence of city employees resulted in Mrs. Sweeney not getting notice and that this negligence contributed to the demolition of the house; however, *the exclusion by its own terms still applies.*

584 So.2d at 1250 (emphasis added).

- 14 -

words, the Court finds that *it is inconsequential under the language of the policy whether the fire which caused the loss occurred before the repair that required installation of a sprinkler system.* Plaintiffs' costs arising from enforcement of the City of New Orleans' building code, even though they arose from the repair of the hotel after the fire, are *simply excluded according to the policy's plain, unambiguous language.*

*Id.* at 623-24 (emphasis added). Here, too, it is "inconsequential" whether the flood arose from a levee breach or any other cause; any resulting damage is "simply excluded according to the policy's plain, unambiguous language." [20]

Courts in at least fourteen jurisdictions outside Louisiana have upheld State Farm's lead-in language, generally in the context of either water damage or earth movement exclusions.[21] At least nineteen courts have also upheld similar language used by other insurers. These cases are compiled in Exhibit D, attached.[22] Recently, in *Mayton v. Auto-Owners Insurance Co.*, 2006 U.S. Dist. LEXIS 28952 (E.D. Va. May 2, 2006), a Virginia federal court granted the defendant insurer's motion for partial summary judgment in a case arising out of

---

[20] *Accord Whitt v. State Farm Fire & Cas. Co.*, 734 N.E. 2d 911, 915 (Ill. App. Ct. 2000); *Rodin v. State Farm Fire & Cas. Co.*, 844 S.W. 2d 537, 539 (Mo. Ct. App. 1993); *State Farm Fire & Cas. Co. v. Paulson*, 756 P.2d 764, 768 (Wyo. 1988). Plaintiffs also have alleged that the Levee Board's negligence contributed to the losses they claim to have suffered from water damage. Reinforcing the lack of coverage here is the provision in paragraph 3 of SECTION 1- LOSSES NOT INSURED of State Farm's policy, quoted at note 3, *supra*. That provision specifically states that there is no coverage for Water Damage regardless of whether it is caused, contributed to or aggravated by the negligence or other conduct of a person, group, organization or governmental entity or any defect or fault in design, construction or maintenance of any property on or off the insured premises.

[21] A few cases exist that did not enforce State Farm's lead-in language or found it ambiguous in a particular context, but these cases are inapposite here. An example is the recent ruling in the Katrina-spawned case of *Tuepker v. State Farm Fire & Casualty Co.*, No. 1:05CV559 LTS-RHW, 2006 WL 1442489 (S.D. Miss. May, 24 2006). The *Tuepker* Court held that State Farm's Water Damage exclusion is valid and enforceable and excludes coverage for damages caused by high water or inundation, including storm surge, accompanying a hurricane. However, the Court also found State Farm's lead-in language ambiguous to the extent State Farm might contend that this language would completely relieve State Farm of liability for the covered peril of wind because the property also suffered some damage from flood, when the policy included a "Hurricane Deductible." This finding of potential ambiguity is inapposite here because it was made in a context different from that in which the lead-in language is being applied in this case. State Farm does not contend here that there is no coverage for discrete damages caused by wind to its insureds' property because that property also suffered flood damage, but simply that flood damage is excluded even if a levee breach was in the chain of causation leading up to the flood.

[22] It bears noting that the "lead in" used in State Farm's policy includes a clause not found in the policies of any of the other defendant insurers which makes the applicability of State Farm's water damage exclusion under Plaintiffs' theory even more certain. The portion of State Farm's lead-in stating that there is no coverage "regardless of: (a) the cause of the excluded event" directly and precisely addresses the situation Plaintiffs allege.

- 15 -

Hurricane Isabel.   Like State Farm's, the defendant's homeowners policy included non-concurrent cause language applicable to the water damage exclusion and the court held that there was no liability for loss caused by storm surge.

### D.   The Filed Rate Doctrine Preludes Plaintiffs' Claims.

Given the clear and unambiguous nature of the relevant exclusion in State Farm's policy, the relief Plaintiffs seek would, in effect, constitute a judicial nullification of that exclusion.   Plaintiffs' alternative contention that State Farm's policy exclusion is "unconscionable" and "void" is an admission that nullification is what they are seeking. However, not only is State Farm's exclusion unambiguous and enforceable, but retroactively eliminating it from Silva and Harvey's homeowners policies would violate the filed rate doctrine and State Farm's constitutional rights.

The Louisiana Legislature has given the Commissioner of Insurance exclusive authority to review and approve policy forms for certain lines of insurance, including property insurance policies, offered and sold in Louisiana.[23]   The Commissioner was required by law to disapprove and reject State Farm's policy forms if he concluded that a proposed endorsement or exclusion violated state law or was ambiguous or misleading. La. R.S. 22:621. By the same token, "approval by the insurance commissioner constitutes an administrative ruling that the policy and its endorsements conform to the requirements of the law. . . ." *Carrier v. Allstate Ins. Co.*, 96 2681 (La. App. 1 Cir. 11/7/97) 702 So. 2d 367, 371.

Authority to approve rates is vested in the Louisiana Insurance Rating Commission ("LIRC"). La. R.S. 22:1401, 22:1402. The Louisiana Legislature has declared that the purpose of rate regulation policy is "to promote the public welfare by regulating insurance

---

[23]      "[N]o basic insurance policy form . . . shall be issued, delivered, or used unless it has been filed with and approved by the commissioner of insurance." La. R.S. 22:620(A)(1).

- 16 -

rates to the end that they shall not be excessive, inadequate, or unfairly discriminatory . . . ." La. R.S. 22:1402; *see also* 22:1404(2); *Employers-Commercial Union Ins. Co. v. Bernard*, 303 So. 2d 728, 731 (La. 1974). Rate regulation is "intended . . . to promote fairness of such rates to both the public and insurance companies, and in general promote and protect the public interest insofar as insurance rates are concerned." *Guillory v. Louisiana Ins. Rating Comm'n*, 357 So. 2d 599, 602 (La. App. 1 Cir. 1978).

A filed rate, once approved by the regulatory authority with jurisdiction over the subject matter, "is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994).[24] In addition, "the filed rate doctrine is not limited to 'rates' *per se*" but also protects contracts and insurance policy provisions that the regulatory authority has approved before they become effective. *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966 (1986).[25]

The Commissioner's and LIRC's approval of State Farm's homeowners policy forms and rates, pursuant to their statutory authority, establishes the binding legality of these forms and rates. *See generally* La. R.S. 22:2(A) ("Insurance is an industry affected with the public interest and it is the purpose of this Code to regulate that industry in all its phases."); *Fontenot v. State Farm Mut. Ins. Co.*, 119 So. 2d 588, 592 (La. App. 1 Cir. 1960). Having

---

[24]     *See also American Bankers' Ins. Co. of Florida v. Wells*, 819 So. 2d 1196, 1203-04 (Miss. 2001); *In re Industrial Life Ins. Litig.*, 148 F. Supp. 2d 719, 721 n.1 (E.D. La. 2001); *Entergy La., Inc. v. Louisiana Pub. Serv. Comm'n*, 2001-1725 (La. 4/3/02) 815 So. 2d 27, 35, *rev'd on other grounds*, 539 U.S. 39 (2003). The filed rate doctrine has been applied to common carriers, public utilities, telecommunications companies, and insurance companies whose rates and, in the insurance context, policy forms, have been filed with and approved by state or federal regulatory agencies. Indeed, "the filed-rate doctrine has been held to apply equally to rates filed with state agencies by every court to have considered the question." *Destec Energy, Inc. v. Southern Cal. Gas Co.*, 5 F. Supp. 2d 433, 458 (S.D. Tex. 1997) (collecting cases), *aff'd*, 172 F.3d 866 (5th Cir. 1999).

[25]     *See also Allen v. State Farm Fire & Cas. Co.*, 59 F. Supp. 2d 1217, 1229 (S.D. Ala. 1999) (upholding hurricane deductible under filed rate doctrine).

794604v.2

received approval of its policy forms and rates, State Farm was precluded from issuing policies containing anything other than those forms and approved rates.

Although not using the term "filed rate doctrine," Louisiana courts have applied the principles of this doctrine to bar claims against insurers that, if granted, would directly *or* indirectly impact the approved rates or that would have the effect of changing the filed rates.[26] Courts in other jurisdictions have likewise held that the filed rate doctrine bars claims against insurers that would have the "effect" of changing the filed rates.[27]  If the judiciary were to retroactively invalidate the Water Damage exclusion in State Farm's policies as Plaintiffs request, the effect would be to expand the scope of coverage available under those policies far beyond that originally contemplated by the LIRC when it approved the applicable rates.  Thus, those rates would be grossly "inadequate," in contravention of sections 1402 and 1404, and the Court's action would interfere with the authority of the LIRC.[28]

Had the Plaintiffs' policies not contained the Water Damage exclusion, the rates they were charged for coverage would have been very different.[29]  The plaintiffs' requested *post hoc* elimination of the contested exclusionary language would afford the insureds greater insurance coverage than that on which the rates filed with and approved by the LIRC were based.

---

[26]    *See Continental Cas. Co. v. Rogers*, 194 F.2d 582, 584 (5th Cir. 1952); *Jung Hotel v. Ins. Comm'n of La.*, 154 So. 448, 556-57 (La. 1934).

[27]    *See American Bankers Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196 (Miss. 2001); *Kutner v. Sprint Communications Co.*, 971 F. Supp. 302, 306 (W.D. Tenn. 1997) (filed rate doctrine "precludes not only the award of remedies that actually change the filed rate, but also of remedies that would have that effect"); *Katz v. MCI Telecommunications Corp.*, 14 F. Supp. 2d 271, 274 (E.D.N.Y. 1998) (filed rate doctrine precludes "any judicial action which undermines agency rate-making authority").  *See also Jader v. Principal Mut. Life Ins. Co.*, 975 F.2d 525, 528 (8th Cir. 1992) (dismissing plaintiffs' claim that insurer had failed to coordinate appropriate premium under filed rate doctrine because "to allow a suit in this case would necessarily involve the court in the business of rate-making").

[28]    *See Allen*, 59 F. Supp. 2d at 1229 (judicial invalidation of approved form that "increas[es] coverage under the policies . . . necessarily affects a decrease in the defendants' effective rates and disturbs the commissioner's rate making authority").

[29]    As the Texas Supreme Court has explained: "[f]rom an underwriting standpoint, there is a vast difference between insuring against loss by hurricane winds only and insuring against loss by a combination of hurricane winds and waters."  *Hardware Dealers Mut. Ins. Co. v. Berglund*, 393 S.W.2d 309, 313 (Tex. 1965).

- 18 -

Plaintiffs' attempt to rewrite State Farm's homeowners insurance policies is therefore barred by the filed rate doctrine. *See Chandler v. Anthem Ins. Co.*, 8 S.W.3d 48, 50-53 (Ky Ct. App. 1999) (filed rate doctrine bars rate-payers from challenging filings approved by the Commissioner of Insurance).

### E. Retroactive Invalidation Of State Farm's Water Damage Exclusion Is Impermissible Under The Constitutions of the United States and Louisiana.

Plaintiffs Silva and Harvey seek to invalidate the clear terms of homeowners policies issued by State Farm and to effectively alter the coverage and rates of these policies filed with and approved by state authorities and accepted by the Plaintiffs when they entered the insurance contract. The resulting imposition of retroactive liability under State Farm's insurance contracts would violate the fundamental protections of the United States and Louisiana Constitutions and unduly burden interstate commerce.

State Farm's contract rights, as well as the funds that Plaintiffs contend should be paid by State Farm for uninsured flood damages caused by Hurricane Katrina, are protected property interests for purposes of due process. *See Stidham v. Texas Comm'n on Private Sec.*, 418 F.3d 486, 492 n.9 (5th Cir. 2005). As such, these interests are protected from arbitrary and irrational state interference by the Fifth and Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Louisiana Constitution. *See, e.g., Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976); *Eastern Enters. v. Apfel*, 524 U.S. 498, 535 (1998). A "retroactive assessment of liability" of the magnitude that would result from voiding State Farm's Water Damage exclusion would constitute arbitrary interference that is unfair and violates

794604v.2

due process.[30] The fact that Plaintiffs seek a retroactive imposition of liability through the courts rather than through the legislature does not render their claims constitutionally permissible.[31]

The judicial imposition of liability for uninsured flood damages, as sought by Plaintiffs, would also violate the Takings Clauses of the United States and Louisiana Constitutions. The Takings Clause "stands as a shield against the arbitrary use of governmental power," whether exercised through the courts or by the legislature. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980).[32] Moreover, as a plurality of the United States Supreme Court has held, the constitutional prohibition against takings extends beyond the taking of physical property to such matters as the imposition of retroactive liability for health benefits on an employer. *See Eastern Enters.*, 524 U.S. at 522-23 (a "taking" is not limited to a "'classic' taking," but extends to "interference [that] arises from some public program adjusting the benefits and burdens of economic life to promote the common good," including economic regulation that "takes *property* from A, and gives it to B" or to government action that "'forc[es] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole'") (emphasis in original; citation omitted).

The factors relating to whether a particular action by the government rises to the level of an unconstitutional taking, which include "the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the

---

[30] *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984) (retrospective imposition of obligation to pay benefits "may offend due process if it is particularly harsh and oppressive"); *BMW of N. Am. Inc. v. Gore*, 517 U.S. 559, 575 & n.22 (1996) ("[I]n the civil context, due process retroactivity concerns are implicated by the 'basic protection against "judgments without notice" afforded by the Due Process Clause.'").

[31] *See Gore*, 517 U.S. at 573 n.17 ("State power may be exercised as much by a jury's application of a state rule of law in a civil lawsuit as by a statute.").

[32] *Accord Hughes v. Washington*, 389 U.S. 290, 298 (1967) (Stewart, J., concurring) (Constitution "forbids . . . confiscation by a State, no less through its courts than through its legislature"); *Chicago, B & Q. R. v. Chicago*, 166 U.S. 226, 235 (1897) ("final judgment of a state court, under the authority of which the property is in fact taken, is to be deemed the act of the state"); *cf. Gore*, 517 U.S. at 573 n.17.

- 20 -

governmental action" (*id.* at 523-24), are all present here.  Plaintiffs seek to impose on State Farm and the other insurer defendants the staggering economic burden of uninsured damages caused by a public catastrophe, in contravention of the terms and rates of the insurance policies that have been approved by the Commissioner and the LIRC and are protected under Louisiana law by the filed rate doctrine.  Shifting this financial burden to State Farm would substantially interfere with its reasonable expectations and would unfairly "attach[] new legal consequences" to insurance contracts after they were entered into and after the damage for which Plaintiffs seek to hold State Farm liable has already occurred.  *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994).  In these circumstances, redefining the terms of State Farm's contracts to allow the imposition of a "disproportionate and severely retroactive burden" of liability would contravene the "fundamental principles of fairness underlying the Takings Clause." *See Eastern Enters.*, 524 U.S. at 536-37.

In addition, the retroactive invalidation of contractual provisions and the enlargement of coverage and liability sought by Silva and Harvey would impermissibly impair State Farm's insurance contracts in contravention of the Contract Clauses of Article I, Section 10 of the United States Constitution and Article I, Section 23 of the Louisiana Constitution.[33] *Cf. Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 249-50 (1978) (state law requiring additional funding of pension plan violated Contract Clause by "superimposing retroactive obligations upon the company substantially beyond the terms of its employment contracts").

---

[33]     Once again, the Contract Clause is implicated here even though Plaintiffs seek to use the courts rather than the legislature to accomplish their purpose.  The fact that Plaintiffs have chosen to attempt to accomplish legislative goals through a lawsuit does not alter the substance of what Plaintiffs seek to have the Court do. Accordingly, this lawsuit falls under the well-settled rule that a State may not evade constitutional prohibitions simply through the form of action adopted.  *Cf., e.g., NLRB v. Guy F. Atkinson Co.*, 195 F.2d 141, 149 (9th Cir. 1952) (treating purported "adjudication" as in reality an "administrative declaration" or rulemaking); *Hughes v. Washington*, 389 U.S. at 298 (Constitution looks not to "what a State says" or "what it intends," but "what it does").

Finally, the enormous burden that Plaintiffs seek to impose upon Defendants clearly implicates the overriding federal interest in interstate commerce. Plaintiffs' lawsuit, if successful and replicated by other insureds, would have a significant adverse effect on the insurance industry nationwide and the national system of flood insurance, thus contravening the federal constitutional prohibition on individual states imposing undue burdens on interstate commerce. *See Gore*, 517 U.S. at 585 (defendant's "status as an active participant in the national economy implicates the federal interest in preventing individual States from imposing undue burdens on interstate commerce").

**F.      The National Flood Insurance Act Precludes Plaintiffs' Claims.**

The National Flood Insurance Program ("NFIP") was established in 1968 when Congress adopted the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001 *et. seq.* Plaintiffs' claims are preempted by the NFIA, because they "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the law. *See Hines v. Davidowitz*, 312 U.S. 52 (1941).[34]

Congress found that "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions." 42 U.S.C. § 4001(b). *See also Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 387-88 (9th Cir. 2000) (same). Through the NFIA, Congress sought not only to make flood insurance available at a reasonable premium, but also to reduce future flood relief burdens on the federal government. *See United States v. Parish of St. Bernard*, 756 F.2d 1116, 1122 (5th Cir. 1985). Congress sought to establish "as a matter of national policy" a program of

---

[34] *See also Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000) (preemption of common law tort standards conflicting with federal standards and objectives under the Federal Motor Vehicle Safety Act); *AT&T Corp. v. Public Utility Comm'n*, 373 F.3d 641, 645-47 (5th Cir. 2004) (Texas regulation preempted because it would "frustrate the purposes of Congress").

flood insurance that would "complement and encourage preventive and protective measures" (42 U.S.C. § 4001(a)(3)) and would be "integrally related to a unified national program for flood plain management." *Id.* § 4001(c)(2). Accordingly, Congress made federal flood insurance available only in communities that adopted flood plain management regulations designed to reduce or avoid future flood damages. *See id.* §§ 4022, 4023. This system has been described as a "carrot and stick" approach. *See Parish of St. Bernard*, 756 F.2d at 1120-21.

Homeowners purchase NFIP flood insurance directly from the Federal Emergency Management Agency ("FEMA") or, more commonly, through private insurers like State Farm, known as "Write-Your-Own" ("WYO") carriers.[35] *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 265, 267 (3d Cir. 2004) (more than 90% written by WYOs in their own names). All policies sold by FEMA and by WYO carriers are in the form of the Standard Flood Insurance Policy ("SFIP"), the terms of which are prescribed by FEMA regulation. 44 C.F.R. Part 61 App. A; *see also* 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c). Federal funds pay claims under all SFIPs. The federal government bears the risk of loss, and WYO carriers are its fiscal agents. *See* 42 U.S.C. § 4071(a)(1); 44 C.F.R. § 62.23(g)); *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 387-88 (5th Cir. 2005).

Disputes related to SFIP claims are governed exclusively by federal law, in order to ensure the uniformity and consistency that courts have recognized to be essential to the NFIP.[36] 44 C.F.R. Part 61 App. A(1), Art. IX; *see Wright*, 415 F.3d at 390. Thus, in *Peal v.*

---

[35]   *See* http://www.fema.gov/nfipInsurance/companies.jsp (listing participating insurance companies).
[36]   *West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978) ("Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law."); *see also Gibson v. American Bankers Ins. Co.*, 289 F.3d 943, 949 (6th Cir. 2002) ("Congress and FEMA have regulated the claims adjustment process and judicial review of coverage claims under flood insurance policies. Uniformity of decision requires the application of federal law and precludes the enforcement of state laws on the same subject.").

794604v.2

*North Carolina Farm Bureau Mutual Insurance Co.*, 212 F. Supp. 2d 508 (E.D.N.C. 2002), the court refused to allow state tort law bad faith claims against a WYO company, because exposing WYO companies to liability under the varying laws of the 50 states would decrease their willingness to participate in the NFIP, and increase the cost of providing flood insurance, making it unaffordable to property owners. *Id.* at 516.

   Here, Plaintiffs' attempt to mandate flood coverage through homeowners policies, if successful, would in effect create a court-mandated Louisiana flood insurance program that would disrupt the NFIP and obstruct the national policy objectives of Congress. First, court-mandated coverage through private insurers would discourage and decrease participation in the NFIP by communities and property owners. The result would be to eliminate one of the incentives communities have to adopt flood plain management regulations designed to prevent and/or mitigate future flood damage, a requirement for participation in the NFIP. The absence of such prevention and mitigation steps would increase the burden on the federal government in responding to flood disasters, thereby impeding a significant purpose of the NFIA and the NFIP. *See Parish of St. Bernard*, 756 F.2d at 1122. Second, the requested relief would require insurers to provide flood insurance when Congress clearly intended insurer participation to be voluntary. *See* 44 C.F.R. § 62.24. Third, forcing insurers to provide flood coverage under existing policies, when current policyholders did not pay for such coverage, is directly contrary to Congressional intent that flood insurance burdens be distributed "equitably among those who will be protected by flood insurance and the general public." 42 U.S.C. § 4001(d). Fourth, granting such relief, would, in the future, force homeowners in special flood hazard areas who are already required to purchase SFIPs as a condition of their mortgages (*id.* § 4012a(b)) to pay additional amounts for

794604v.2

overlapping court-mandated coverage once insurers increase their premiums to pay for such coverage. As a result of these conflicts, the NFIA preempts Plaintiffs' claims.

## IV.   <u>CONCLUSION</u>

For all the reasons discussed above, State Farm submits that each purported claim stated against State Farm in Plaintiffs' Petition, fails as a matter of law and must be dismissed pursuant to Fed. R. Civ. P. 12(c).

Respectfully submitted,

Wayne J. Lee, 7916
Stephen G. Bullock, 3648
Lesli D. Harris, 28070
Of
STONE PIGMAN WALTHER
   WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana   70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

Attorneys for State Farm Fire &
Casualty Company

794604v.2

## **C E R T I F I C A T E**

I hereby certify that a copy of the foregoing State Farm Fire and Casualty Company's Memorandum in Support of Judgment on the Pleadings has been served upon each counsel of record via e-mail on June ___, 2006.