UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, ET AL. | * | CIVIL ACTION NO. 05-4182 |
| | * | |
| Plaintiffs | * | SECTION "K" |
| | * | |
| VERSUS | * | |
| | * | JUDGE DUVAL |
| BOH BROTHERS CONSTRUCTION CO., | * | |
| L.L.C., ET AL. | * | |
| | * | MAGISTRATE NO. 2 |
| Defendants | * | |
| | * | |
| THIS  DOCUMENT RELATES TO: | * | MAGISTRATE WILKINSON |
| 05-4181, 05-4182, 05-5237, 05-6073, 05-6314, | * | |
| 05-6324, 05-6327, 06-0020, 06-225, 06-886, | * | |
| 06-2278, 06-2287, 06-2545, 06-2346 | * | A JURY IS DEMANDED |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF GOVERNMENT DEFENDANTS', THE BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT AND THE SEWERAGE AND WATER BOARD OF NEW ORLEANS, FED. R. CIV. P. 12(B)(6) JOINT MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

The Orleans Levee District and the SWBNO respectfully submit this Fed. R. Civ. P.

12(b)(6) Motion, seeking dismissal, with prejudice, from these consolidated actions based upon

the statutorily mandated immunity provision of La. R.S. 29: 735.[1]

---

[1]At the Court's request, the Orleans Levee District and the S&WB, both "government defendants," are jointly filing the instant Motion to Dismiss, although different factual

## A. THE ORLEANS LEVEE DISTRICT'S MOTION TO DISMISS

### I.   FACTUAL BACKGROUND

Fourteen putative class action lawsuits seeking recovery from the Orleans Levee District for flooding and other property damage due to breaches in levees following Hurricane Katrina serve as the basis of this consolidated litigation. The allegations of liability plaintiffs advance against the Orleans Levee District can be categorized in the following fashion:

1.   Failing to test and/or inspect whether the design, construction, composition, and maintenance of the 17th Street, London Avenue and Industrial Canal Levees was adequate, proper and within standards, resulting in both negligence and "strict liability" in accordance with La. C.C. arts. 2317 and 2317.1;[2]

2.   Failing to ensure the adequacy of the design, construction, composition and maintenance of the 17th Street, London Avenue and Industrial Canals, resulting in both negligence and "strict liability" in accordance with La. C.C. arts. 2317 and

---

circumstances exist for the relief each party is requesting herein. In addition, although liaison counsel for plaintiffs has indicated discovery will be necessary in connection with this Motion, these government defendants have elected to file the Motion at this time.

[2]*Berthelot,* 05-4182, Second Supplemental and Amending Complaint, ¶36(D)(3); *Kirsch,* 05-6073, Class Action Complaint, ¶36(D)(3); *Ezell,* 05-6314, Class Action Complaint, ¶36(D)(3); *Brown,* 05-6324, Class Action Complaint, ¶36(D)(3); *Leblanc,* 05-6327, Complaint for Damages- Class Action, ¶ VI(A)(4)(c); *Tauzin,* 06-0020, Class Action Complaint, .¶¶ 44-55; *Bradley,* 06-225, Class Action Petition for Damages, ¶¶11-12; *Finney,* 06-886, Class Action Complaint, ¶36(D)(3); *Christenberry,* 06-2278, Petition for Damages- Class Action, ¶30; *Sanchez,* 06-2287, Class Action Complaint, ¶XXXIII(D)(3); and *Marcello* 06-2545, Class Action Petition, ¶¶12(F)(1)-(9); *Fitzmorris,* 06-2346, Complaint, ¶¶ 36-56.

2317.1;[3]

3.   Failing to repair Floodgate W-30 after settling a lawsuit the Orleans Levee District

filed against the New Orleans Public Belt Railroad after one of its railcars

damaged the floodgate.[4]

## II.   LAW AND ARGUMENT

### A.   Fed. R. Civ. P. 12(b)(6) Standard

To decide a Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6),

the court must accept all well-pleaded facts as true and view the facts in a light most favorable to

plaintiffs.[5] Dismissal is warranted if it appears certain that plaintiffs cannot prove any set of facts

---

[3]*Berthelot*, 05-4182, Second Supplemental and Amending Complaint, ¶36(D)(3); *Kirsch*, 05-6073, Class Action Complaint, ¶36(D)(5); *Ezell*, 05-6314, Class Action Complaint,¶36(D)(5); *Brown*, 05-6324, Class Action Complaint, ¶36(D)(5); *Leblanc*, 05-6327, Complaint for Damages- Class Action, ¶ VI(A)(4)(e); *Tauzin*, 06-0020, Class Action Complaint, .¶¶ 44-55; *Bradley*, 06-225, Class Action Petition for Damages, ¶¶11-12;  *Finney*, 06-886, Class Action Complaint, ¶36(D)(5);  *Christenberry*, 06-2278, Petition for Damages- Class Action, ¶30; *Sanchez*, 06-2287, Class Action Complaint,¶XXXIII(D)(5); *Marcello* 06-2545, Class Action Petition,  ¶¶12(F)(1)-(9); and *Fitzmorris*, 06-2346, Complaint, ¶¶ 36-56. Plaintiffs in *O'Dwyer* make a conclusory allegation of intentional conduct on the part of the Orleans Levee District, but fail to provide any rational factual support for this allegation.  These allegations are discussed in great detail in Section II(D), infra.

[4]*Berthelot*, 05-4182, Second Supplemental and Amending Complaint, ¶¶36(D)(6)-(11); *Kirsch*, 05-6073, Class Action Complaint, ¶36(D)(6)-(11); *Ezell*, 05-6314, Class Action Complaint, ¶36(D)(6)-(11); *Brown*, 05-6324, Class Action Complaint, ¶36(D)(6)-(11);  *Leblanc*, 05-6327, Complaint for Damages- Class Action, ¶ VI(A)(3)(c)-(g); *Tauzin*, 06-0020, Class Action Complaint, .¶¶ 39-40; *Finney*, 06-886, Class Action Complaint, ¶¶36(D)(6)-(11); *Sanchez*, 06-2287, Class Action Complaint,¶¶XXXIII(D)(6)-(11); *Fitzmorris*, 06-2346, Complaint, ¶¶ 52-56.

[5]Cousin v. Small, 2001 W.L. 617455 (E.D.LA. 6/4/2001), citing Baker v. Putnal, 75 F. 3rd 190, 196 (5th Cir. 1996).

in support of their claim that would entitle then to relief.[6]  In deciding whether dismissal is

warranted, however, "conclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to prevent a motion to dismiss."[7]  While the Court reviewing a Fed.

R. Civ. P. 12(b)(6) motion is generally constrained to the allegations within the pleadings, the

"court may take judicial notice of the contents of public records...."[8]

**B.**     **The *Erie* Doctrine**

The law on Erie is well settled.  When a state's highest court has not squarely addressed

an issue of state law, the federal court must make an "Erie guess."[9]  The Fifth Circuit has

instructed:  "[i]f the Louisiana Supreme Court has not ruled on this issue, then this Court must

make an 'Erie guess' and 'determine as best it can' what the Louisiana Supreme Court would

decide."[10]  "In making an Erie guess, this Court may look to the decisions of intermediate

appellate courts for guidance."[11]  Decisions of intermediate appellate courts in Louisiana "are a

datum for ascertaining state law which is not to be disregarded by a federal court unless it is

---

[6]*Id.*, citing Piotrowski v. City of Houston, 51 F. 3rd 512, 514 (5th Cir. 1995).

[7]Jefferson v. Lead Industries, Inc., 106 F.3d 1245 (5th Cir. 1997).

[8]Id. at 1250.

[9]Howe Ex Rel Howe v. Scottsdale Ins. Co., 204 F.3d 624, 627 (5th Cir. 2000); Powers v. Vista Chemical Co., 109 F.3d 1089, 1093 (5th Cir. 1997); Rogers v. Corrosion Products, Inc., 42 F.3d 292, 295 (5th Cir. 1995); Kirkland v. Franco, 92 F.Supp.2d 578, 581 (E.D. La. 2000); Bauer v. GEICO, 61 F.Supp.2d 514, 517 (E.D. La. 1999).

[10]Howe Ex Rel Howe, 204 F.3d at 627.

[11]Kirkland,92 F.Supp.2d at 581, *citing*, Matheny v. Glen Falls Ins. Co., 152 F.3d 348, 354 (5th Cir. 1998).

convinced by other persuasive data that the highest court of the state would decide otherwise."[12]

The Fifth Circuit has also noted: "[a]lthough the refusal to grant a writ has no precedential effect,

such a refusal does provide 'persuasive' evidence that the Louisiana Supreme Court approves of

the legal conclusions reached by the appellate court."[13]

C.     **Immunity Pursuant to The Louisiana Homeland Security and Emergency
       Assistance and Disaster Act**

In 1993, by Acts 1993 No. 800 § 1, the Louisiana Legislature enacted the "Louisiana

Homeland Security and Emergency Assistance and Disaster Act" (hereinafter, "the Act").[14]  The

Legislature found the Act necessary:

> Because of the existing possibility of the occurrence of emergencies and **disasters
> of unprecedented size and destructiveness** resulting from terrorist events,
> enemy attack, sabotage, or other hostile action, or from fire, **flood, earthquake,
> or other natural or man-made causes** * * * (and) to reduce vulnerability of
> people and communities of this state to damage, injury and loss of life and
> property resulting from natural and man-made catastrophes [15]

In addition to empowering the Governor, Parish Presidents and others within the Executive

branch of government to enact procedures to prepare for such natural and man-made disasters,

the Legislature also granted immunity to the State's political subdivisions and their employees,

---

[12]Howe Ex Rel Howe, 204 F.3d at 627.

[13]Blair v. Sealift, Inc., 91 F.3d 755, 762 (5th Cir. 1996), *citing*, Colonial Pipeline Co. v. Agerton, 289 So.2d 93, 96 (La. 1974), *aff'd*, 421 U.S. 100, 95 S.Ct. 1538 (1975).

[14]La. R.S. 29:721 to 29:736.

[15]La. R.S. 29:722(A) and (A)(4)(Emphasis added).

providing as follows:

> Neither the state nor any political subdivision thereof, nor other agencies, nor, except in the case of willful misconduct, the agents' employees, or representatives of any of them, engaged in any homeland security and emergency preparedness activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter **shall** be liable for the death of or any injury to persons, or **damage to property**, as a result of such activity.[16]

Critical to an understanding of this mandatory, non-discretionary immunity provision is the definition of "emergency preparedness." La. R.S. 29:723(3) defines emergency preparedness as: "the mitigation of, preparation for, response to, and the recovery from emergencies or disasters."[17] As defined in the Act, disaster means:

> (T)he result of a natural or man-made event which causes loss of life, injury, and property damage, including but not limited to natural disasters such as hurricane, tornado, storm, flood, high winds, and other weather related events...and man-made disasters....[18]

---

[16]La. R.S. 29:735(A)(Emphasis added).

[17]Although the Act does not require State or Federal officials to declare a disaster area or state of emergency in order for its provisions to take effect, both President George W. Bush and Governor Kathleen B. Blanco declared states of emergency within the State of Louisiana immediately preceding landfall of Hurricane Katrina. See, Exhibit "A," Proclamation No. 48 KBB 2005, "State of Emergency - Hurricane Katrina," dated August 26, 2005, and Exhibit "B," "Statement of Federal Emergency Assistance for Louisiana," dated August 27, 2005. The Court may take judicial notice of undisputed public records, such as these, on a Rule 12(b)(6) Motion. See, Jefferson v. Lead Industries Assoc. Inc., 106 F.3d 1245 (5th Cir. 1997), and Fed. R. Evidence 201.

[18]La. R.S. 29:723(1).

The Orleans Levee District is a political subdivision of the State of Louisiana.[19]  La. R.S. 38:325

empowers each levee board within the state to engage in any activities related to flood protection

and the construction and maintenance of levees.

Building and maintaining levees and other flood control structures are acts of emergency

preparedness entitling a levee district to immunity under La. R.S. 29:735.[20]  Immunity provisions

of the Act apply to both man-made and natural disasters, pretermitting any argument over the

cause(s) of the levee failures in the matter at hand.  Finally, only evidence of <u>willful misconduct</u>

on the part of a political subdivision's employees would preclude the political subdivision from

enjoying statutory immunity for engaging in emergency preparedness activities.[21]

C.   **<u>Argument Regarding Non-*O'Dwyer* Levee Cases (Docket Nos. 05-4182, 05-5237, 05-6073, 05-6314, 05-6324, 05-6327, 06-0020, 06-225, 06-886, 06-2278, 06-2287, 06-2545, 06-2346): Mandatory Language of La. R.S. 29:735 Entitles the Orleans Levee District to Statutory Immunity</u>**

As a matter of law, La. R.S. 29:735 bars plaintiffs' actions against the Orleans Levee

District for personal injury and property damage arising out of levee breaches in the wake of

Hurricane Katrina.  The circumstances of these consolidated cases falls squarely within the

---

[19]La. R.S. 38:291(K), 307, *et seq.*

[20]<u>Hontex Enterprises, Inc. v. City of Westwego</u>, 02-506 (La. App. 5 Cir. 12/11/2002); 833 So.2d 1234, <u>writ denied</u>, 2003-0505 (La. 9/5/2003); 852 So.2d 1041.

[21]*O'Dwyer* is the only action wherein plaintiffs make vague and perfunctory allegations of willful misconduct on the part of the Orleans Levee District.  As discussed elsewhere, in reviewing a 12(b)(6) Motion to Dismiss, the Court must disregard conclusory allegations or legal conclusions masquerading as factual conclusions.  <u>Jefferson v. Lead Industries, Inc.</u>, 106 F.3d 1245 (5th Cir. 1997).

framework of the Act.  Moreover, recognizing the Orleans Levee District's immunity would advance the Act's purpose as articulated in La. R.S. 29:722(A).  Any other conclusion would result in legal error.

First, and at the risk of stating the obvious, Hurricane Katrina and the consequences of the subsequent levee failures meet the Act's definition of an unprecedented "disaster."  Each of the consolidated complaints alleges facts sufficient to satisfy any fair reading of the term "disaster."[22] Both President Bush and Governor Blanco issued formal Proclamations identifying Katrina and its aftermath as both a disaster and an emergency.[23]  This element of the Act is clearly satisfied.

Second, constructing, maintaining and inspecting levees are acts of "emergency preparedness" as defined in the Act.  It is the statutory mission of the Orleans Levee District (in compliance with specific federal guidelines and assurances, and at the direction of the U.S. Army Corps of Engineers) to "locate, relocate, construct, maintain, extend and improve levees...."[24] Levees have but one purpose; namely, to protect residents from flooding.[25]  The complaints filed herein discuss in great detail how the purpose of the levees was to protect residents in southern

---

[22]*E.g., Berthelot*, 05-4182, Supplemental and Amending Complaint, ¶20, *O'Dwyer*, 05-4181, Original  Complaint, Counts V and XV, and *Leblanc*, 05-6327, Complaint for Damages, ¶VI(L).

[23]See the Proclamations, attached hereto as exhibits "A" and "B."

[24]La. R.S. 38:307(A)(1).

[25]See, 33 U.S.C. 701, *et seq.*, The Flood Control Act, and Board of Com'rs of the Orleans Levee District v. Kelly, 73 So.2d 299 (La. 1954).

Louisiana from flooding.[26]  Louisiana courts have also recognized the role of levees in "emergency preparedness."[27]

Plaintiffs in these consolidated cases allege that the Orleans Levee District was negligent and/or strictly liable in failing to: (1) test whether the design, construction and maintenance of the levees were adequate, proper and within standards; (2) ensure the adequacy of the construction, design and maintenance of the levees; and (3) expend funds received in a settlement to repair a levee/floodgate damaged in a railcar accident.  Each of these allegations goes to the issue of whether the Orleans Levee District discharged its duty to prepare for an emergency such as Hurricane Katrina.  In essence, plaintiffs allege their damages resulted from the Orleans Levee District's being un-prepared for this emergency.  According to plaintiffs, the Orleans Levee District was negligent in discharging its duties to design, construct, and maintain the levees in preparation for the emergency Katrina presented.[28]  Plaintiffs also claim the Orleans Levee District was negligent in preparing for this emergency by failing to fix floodgate W-30 with proceeds of a settlement it had confected with the New Orleans Public Belt Railroad.

Each of these allegations goes to acts of alleged negligence in preparing for any

---

[26]E.g., *Berthelot*, 05-4182, Class Action Complaint, ¶XIII, *Tauzin*, 06-0020, Class Action Complain, Introduction and ¶¶44-50 and 59-60, and *Sanchez*, 06-2287, Class Action Complain, ¶12.

[27]Hontex Enterprises, Inc. *supra.*

[28]By alleging that the Orleans Levee District is "strictly liable" under La. C.C. arts. 2317 and 2317.1, plaintiffs are essentially advancing what is tantamount to negligence claim, suggesting it either "knew or should have known" of problems with the levees, and failed to exercise reasonable care in correcting the problems.

emergency or disaster potentially caused by a hurricane such as Hurricane Katrina.  It is for this reason that La. R.S. 29:735 acts as an absolute bar to plaintiffs' claims against the Orleans Levee District for flooding as a result of the levee failures.

The Act's immunity provision does not end at affording protection to a political subdivision's actions in designing, constructing and maintaining levees.  Rather, in very clear terms, La. R.S. 29:723(A)(3) extends the scope of immunity to a political subdivision's "**response to**, and the recovery from emergencies or disasters."  To the extent any complaint suggests, as did plaintiffs in the now-remanded *Vanderbrook* matter, the fault of the Orleans Levee District for breaching: "their duty to Petitioners by failing to correct the break (in the 17[th] Street Canal Levee) or warn others...of the impending water intrusion, apparently absent from their post," these allegations would also be barred.  Such an allegation would rest squarely on the Orleans Levee District's "response to" the "disaster" and emergency caused by Hurricane Katrina.  Because the Act grants immunity to a political subdivision for any such action, plaintiffs' claims are barred.

The Louisiana Fifth Circuit recognized the right of a levee district to invoke the Act's immunity provisions in Hontex Enterprises, Inc. v. City of Westwego.[29]  Plaintiffs in Hontex operated a shrimp processing facility whose central plant was outside of West Jefferson Levee District's hurricane protection levee.  Hontex operated its own pump station to remove water from the facility. Water leaking from one of Hontex's pumps spilled onto the property of an

---

[29]02-506(La. App. 5 Cir. 12/11/2002); 833 So.2d 1234, writ denied, 2003-0505 (La. 9/5/2003); 852 So.2d 1041.

adjacent landowner.  In response, the levee district built a ring levee around the leaking pipe.

Plaintiffs claimed that, by building this levee, Hontex's pump station became inoperable, causing

the compressors to fail and the facility to flood.

The trial court granted defendants' Motion for Summary Judgment on the issue of

immunity, and the Louisiana Fifth Circuit affirmed.  In so doing, the court noted that:

"defendants have immunity for negligent acts taken to prepare for an emergency under La. R.S.

29: 735."  Likewise, the Orleans Levee District is entitled to immunity for any actions taken in

preparation for or response to disasters and emergencies, such as flooding caused by levee

failures.  The *Erie* doctrine, discussed above, calls upon this Court to rely upon the decision of

this intermediary court for guidance on an issue of state law.  The Louisiana Supreme Court's

denial of writs in Hontex is "persuasive" evidence that the Court approves of the legal

conclusions reached by the appellate court.[30]

The only other reported decision discussing La. R.S. 29:735 originates out of the

Louisiana Third Circuit.  In Castille v. Lafayette City-Parish Consolidated Government,[31] the Act

afforded immunity to the City of Lafayette in a negligence action brought by vehicle occupants

allegedly injured as the result of debris City employees left on the roadway during clean up

efforts after Hurricane Lili.   Affirming the trial court's order granting the City's summary

---

[30]Blair v. Sealift, Inc., 91 F.3d 755, 762 (5th Cir. 1996), *citing*, Colonial Pipeline Co. v. Agerton, 289 So.2d 93, 96 (La. 1974), *aff'd*, 421 U.S. 100, 95 S.Ct. 1538 (1975).

[31]04-1569(La. App. 3 Cir. 3/2/2005); 896 So.2d 1261, *writ denied*, 2005-0860(La. 5/13/2005); 902 So.2d 1029.

judgment, the Third Circuit held that "clearing roadways of debris deposited by the hurricane to allow emergency vehicles to pass" constituted emergency preparedness activities, entitling the City and its employees to immunity.[32]  The Orleans Levee District respectfully submits that this Court is bound to follow the Louisiana Fifth Circuit's ruling in Hontex and the Louisiana Third Circuit's ruling in Castille, recognizing its right to statutory immunity under La. R.S. 29:735.

In sum, the Orleans Levee District is immune from any and all negligence claims seeking damages arising out of the flooding in the aftermath of Hurricane Katrina.  The Louisiana Legislature framed the Act in mandatory terms, noting that no political subdivision "shall" be held liable for emergency preparedness activities. Any ruling not recognizing the Orleans Levee District's right to immunity from these consolidated actions would result in legal error.

### D.   Argument Regarding *O'Dwyer* (Docket No. 05-4181): Conclusory Allegations of Willful Misconduct Are Insufficient to Defeat This Motion

While the allegations in the above cases focus solely on the negligent acts of commission and/or omission of the Orleans Levee District, plaintiffs in *O'Dwyer*, in addition to alleging negligence, claim in a conclusory and perfunctory fashion that the Orleans Levee District intentionally and willfully failed in their duty to ensure an adequate levee system. Plaintiffs in *O'Dwyer* make the following allegations of intentional and willful misconduct on the part of the Orleans Levee District:

---

[32]See also, La. Atty. Gen. Op. No. 05-0381, 2005 WL 3635643 (12/6/2005), wherein the Attorney General advised the President of Plaquemine Parish that La. R.S. 29:735 would provide a legal basis for immunity to Parish employees against lawsuits arising out of the removal of Hurricane damaged vehicles.

(C)ertain of the defendants intentionally, negligently and with malfeasance, misfeasance and non-feasance failed in their duty to ensure competent design of the levee system for the London Avenue Canal and the Seventeenth Street Canal, which were defectively designed, the result being that 80% of "something was destroyed- not by Hurricane Katrina, but by incompetence on the part of men to whom the citizens of New Orleans entrusted the safety of their lives and property.[33]

(C)ertain defendants intentionally, negligently and with malfeasance, misfeasance and non-feasance failed to timely stop the flooding of 80% of "something," which had survived Hurricane KATRINA, but which could not survive the incompetence of government officials at the local, state and federal levels.[34]

(C)ertain of the defendants intentionally, negligently (including acts which constituted both gross and simple negligence), and with malfeasance, misfeasance and non-feasance, failed in their duty to ensure the competent design, construction, maintenance and inspection of the levee systems of the Industrial Canal, and the Seventeenth Street Canal, which were defectively designed, constructed, maintained and inspected, the result being that a large part of the habitable homes and businesses in the Parish of Orleans and the Parish of Jefferson, State of Louisiana, were destroyed or damaged- not by Hurricane KATRINA, but by incompetence on the part of men to whom the citizens of New Orleans and Metairie, Louisiana enstrusted the safety of their lives and property.[35]

Plaintiffs aver that the acts and omissions by State and local elected and/or appointed officials, complained of herein, constituted willful, outrageous, reckless, and/or flagrant misconduct, so as to deprive those officials of immunity from liability pursuant to the provisions of LSA R.S. 9:2798.1, and, additionally, aver that those officials were in derogation of and violated specific rules and regulations promulgated pursuant to the provisions of LSA R.S. 29:735, so as to deprive those officials of immunity from liability under the provisions of that

---

[33]Original Complaint, ¶VIII, Count 2.

[34]Original Complaint, ¶VIII, Count 3.

[35]Plaintiffs' Sixth Supplemental and Amending Complaint in a Class Action Lawsuit, ¶VIII, Count 2.

statute as well.[36]

The above allegations are the product of one-dozen bites at the apple plaintiffs in *O'Dwyer* have taken to re-frame, recast and restate their "factual" allegations of intentional, reckless and willful actions on behalf of the Orleans Levee District.  A cursory reading of these allegations, however, reveal that they are patently conclusory, making them insufficient, as a matter of law, to defeat Defendants' Motion to Dismiss.

As noted above, "Conclusory allegations and unwarranted deductions of fact are not admitted as true" for the purposes of considering a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss.[37] This Court has observed: "Courts do not have to accept 'legal conclusions,' 'unsupported conclusions,' 'unwarranted references,' 'or sweeping legal conclusions cast in the form of factual allegations.'"[38] In sum, federal courts do not permit plaintiffs to defeat a 12(b)(6) Motion simply by asserting conclusions of law, which if accepted as true, would create a claim upon which relief could be granted.

Plaintiffs here have done just that here by making the "sweeping legal conclusion cast in the form of factual allegations" that the Orleans Levee District: "violated specific rules and regulations promulgated pursuant to the provisions of LSA R.S. 29:735, so as to deprive those

---

[36]Plaintiffs' Eleventh Supplemental and Amending Complaint in A Class Action Lawsuit, ¶XIXXI.

[37]Assoc. Builders, Inc. v. Alabama Power Co., 505 F.2d 97 (5th Cir. 1974).

[38]Global Marine Shipping (No. 10) v. Finning Intern., Inc., 2002 WL 31246546 (E.D. La. 2002)(Per., J. Duval).

officials of immunity from liability under the provisions of that statute as well." Nowhere in the

twelve Complaints do plaintiffs set forth the specific factual bases for these alleged acts of

*intentional conduct. Simply put, these allegations are nothing more than legal conclusions*

masquerading as factual conclusions. *Ipse dixit*, conclusory and unsupported allegations of

intentional conduct are legally inadequate to defeat the Orleans Levee District's Fed. R. Civ. P.

12(b)(6) Motion to Dismiss.

The Louisiana Fifth Circuit's opinion in <u>Hontex</u> adds strong support for the Orleans

Levee District's position. Attempting to defeat defendants' claim of immunity under La. R.S.

29:735, plaintiffs attached affidavits from two Hontex managers indicating that both employees

had warned the West Jefferson Levee District about the flooding which the ring levee would

cause. Nevertheless, in spite of these warnings, the Levee District constructed the levee,

allegedly causing plaintiffs' damages. In rejecting this argument, the Fifth Circuit noted: "there

is no indication of willful misconduct on the part of the defendants."[39] <u>Hontex</u> stands for the

proposition that, for the purposes of La. R.S. 29:735, being aware of potential damages from a

particular act of emergency preparation does not impute one with willful misconduct. Here, the

*O'Dwyer* plaintiffs have alleged **no facts** suggesting Orleans Levee District employees

intentionally or wilfully caused the levees to fail.

Perhaps the most significant flaw in plaintiffs' effort to avoid immunity by pleading the

willful misconduct of the **Orleans Levee District** is that the "willful misconduct" exception

---

[39]<u>Hontex</u>, 833 So.2d at 1240.

contained in La. R.S. 29:735 applies only to **employees or agents** of the political subdivision, and not the political subdivision itself. The Louisiana Third Circuit adopted this interpretation in Castille.[40] Citing the "marked paucity of case law" interpreting the Act, the Court found merit in the City of Lafayette's argument that:

> (T)he immunity provided to a political subdivision such as the Lafayette City-Parish Consolidated Government is not subject to the willful misconduct exception. **The limiting phrase 'except in case of willful misconduct refers only to employees or agents, not to a political subdivision.** If the legislature had intended that phrase to apply to political subdivisions, as well as to individual employees, it would have inserted that phrase at the beginning or end of the sentence, rather than in the middle.[41]

Accordingly, the Court in Castille rejected plaintiffs' invitation to apply the willful misconduct exception to a political subdivision. Here, applying the *Erie* doctrine, this Court is bound to accept the Castille court's reading of La. R.S. 29:735. The *O'Dwyer* plaintiffs' conclusory allegations of willful misconduct against the Orleans Levee District are legally insufficient to avoid the application of the Act's clear and unambiguous immunity provisions.

## III.    **CONCLUSION**

For the foregoing reasons, defendant, the Board of Commissioners for the Orleans Levee District, prays for an Order granting its Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, recognizing its statutory entitlement to immunity pursuant to La. R.S. 29:735.

---

[40]*Castille*, 896 So.2d at 1264.

[41]Id. at 1264 (Emphasis added).

**B. <u>SEWERAGE & WATER BOARD OF NEW ORLEANS' MOTION TO DISMISS</u>**

**I.      <u>INTRODUCTION</u>**

The Sewerage and Water Board of New Orleans (hereafter referred to as "SWBNO")

avers that it is entitled to dismissal from the consolidated cases that are named above (except for

the *Tauzin* case 06-0020 which does not name the "SWBNO" as a defendant) pursuant to La.

R.S. 29:735, based on its statutory immunity.

The "SWBNO" adopts by reference the legal arguments that are presented by the Board

of Commissioners for the Orleans Levee District as if presented here *in extensio*.

**II.    <u>FACTUAL BACKGROUND</u>**

The Sewerage and Water Board of New Orleans states the following facts before this

Honorable Court:

(1.)    The "SWBNO" is charged with drainage of the City of New Orleans to prevent

flooding.  (See Article 14, Section 23 of the Louisiana Constitution of 1921,

continued in the Louisiana Constitution of 1974 under Article, Section 16, as a

statute, La. R.S. 33:4082.1 through 4093.)

(2.)    The purpose of drainage of the City of New Orleans is to prevent flooding from

rainfall, storms, and/or hurricanes.

(3.)    The consolidated cases, which are named above, each pertain to the flooding of

the City of New Orleans after Hurricane Katrina.  If no flooding had occurred,

then the cases would not have been filed.

(4.)    In general, the alleged negligence and/or strict liability claims of the plaintiffs in

the consolidated cases vicariously refer to:

(a)     The garde, care, custody and control that the "SWBNO" allegedly has/had over

        the shores of the canals;

(b)     vices and/or defects that the levees and/or flood walls contained which the

        "SWBNO" knew or should have known about;

(c)     leaks emanating from the ground adjacent to the levees;

(d)     and the removal of sheet piling that created and/or caused alleged vices and/or

        defects along the levees and/or floodwalls.[42]

(5.)    In general, the allegations in the consolidated cases refer to actions that the

        "SWBNO" took to mitigate, prepare for, respond to, and/or recover from storms,

        flooding, and/or hurricanes.[43]

(6.)    There are no allegations against the "SWBNO" for willful misconduct.

---

[42]The SWBNO denies the basis of the allegations pertaining to its alleged legal garde of the
canals, which is the subject another Rule 12(B) motion to dismiss.

[43]The allegations contained consolidated petitions are set forth with particularity as follows:
*Berthelot*, 05-4182, Second Supplemental and Amending Complaint, ¶36 (F)(1-4); Vadonovitch,
05-5237, Second Supplemental and Amending Petition for Damages: Class Action, III, E. 1-4;
*Kirsch*, 05-6073, Class Action Complaint, ¶35, 36(F)(1-4); *Ezell*, 05-6314, Class Action
Complaint, ¶35, 36(F)(1-4); *Brown*, 05-6324, Class Action Complaint, ¶35, 36(F)(1-4); *Leblanc*,
05-6327, Complaint for Damages-Class Action, ¶VII(4)(a-d); *Bradley*, 06-225, First Amended
Class Action Petition for Damages, ¶6, (4)(a-d); *Finney*, 06-886, Class Action Complaint, ¶35,
36(F)(1-4); *Christenberry*, 06-2278, Petition for Damages-Class Action, ¶29, 31; *Sanchez*, 06-
2287, Class Action Complaint, ¶XXXIII(F)(1-4); and *Marcello* 06-2545, Class Action Petition,
¶¶12(G)(1-5); *Fitzmorris*, 06-2346, Complaint, ¶¶57-61.

### III.   LEGAL ARGUMENT

As stated above, the "SWBNO" adopts the legal arguments presented by the Orleans Levee District which pertain to the statutory immunity to which the "SWBNO" is entitled as a political subdivision of the State of Louisiana. The "SWBNO" will not repeat these cogent arguments here, as to do so would be duplicative and unnecessary.

The applicability of the immunity statute is clear on its face, as the plain language of the statute precludes liability for a political subdivision for acts in the prevention of the harms from a natural disaster, including hurricanes, flooding, high winds and other weather related events.

The "SWBNO" also notes that the sum total of its mandate concerning drainage relates directly to preventing flooding from rainfall, storms and hurricanes. This fact is obvious to anyone who has lived in New Orleans and is aware of the geography of the city, sitting below sea level, and the imperative need for drainage.

Moreover, Louisiana's immunity statute (Louisiana Homeland Security and Emergency Assistance Disaster Act) "casts a broad net," including events related to harms from "flooding" and other natural and man-made causes. This statute clearly includes the acts of the "SWBNO" that are related to its mission to drain the City of New Orleans.

### IV.   CONCLUSION

The Sewerage and Water Board of New Orleans seeks dismissal based on its statutory immunity. The applicability of Louisiana's emergency preparedness statutes prevents legal liability from being imposed on this Defendant. Therefore, the Sewerage and Water Board of New Orleans should be dismissed from the above referenced consolidated cases.

Respectfully submitted,

_____
THOMAS P. ANZELMO, T.A. (#2533)
MARK E. HANNA (#19336)
KYLE P. KIRSCH (#26363)
ANDRE J. LAGARDE (#28649)
MCCRANIE, SISTRUNK, ANZELMO,
HARDY, MAXWELL & MCDANIEL
3445 N. Causeway Boulevard, Ste. 800
Metairie, LA  70002
Telephone:  (504) 831-0946
Facsimile:  (504) 831-2492

-and-


JAMES L. PATE (#10333)
BEN L. MAYEAUX (#19042)
Laborde & Neuner
One Petroleum Center, Suite 200
1001 West Pinhook Road, Suite 200
Post Office Drawer 52828
Lafayette, LA 70505-2828
Telephone: (337) 237-7000
ATTORNEYS FOR DEFENDANT, THE BOARD
OF COMMISSIONERS OF THE ORLEANS
LEVEE DISTRICT

-and-

_____
GEORGE SIMNO, III, T.A.(#12271)
GERARD M. VICTOR(#9815)
625 St. Joseph St.,  Room 201
New Orleans, LA 70165
Tel:     (504) 529-2837
Fax:     (504) 585-2455
ATTORNEYS FOR THE SEWERAGE AND
WATER BOARD OF NEW ORLEANS

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by email and/or placing same in the U.S. Mail, postage prepaid and properly addressed this /5th day of June, 2006.

_____