UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

COLLEEN BERTHELOT ET AL.                    CIVIL ACTION

VERSUS                                       NO. 05-4182 and
                                                  consol. cases

BOH BROS. CONSTRUCTION CO., L.L.C. ET AL.    SECTION "K" (2)


## ORDER AND REASONS ON MOTIONS

Five motions, all related to issues of evidence preservation and site inspections, are pending before me in these consolidated cases. They are:

(1) Plaintiffs' Motion to Compel Production of Evidence in Connection with (a) the London Avenue Canal South Breach Site and (b) the 17th Street Canal Breach Site, Record Doc. No. 368; (2) Motion of the United States to Clarify the Court's Previous Order Requiring Evidence Preservation, Record Doc. No. 370; (3) Plaintiffs' Motion that the United States Army Corps of Engineers ("the Corps") Provide Plaintiffs With Reasonable Notice Prior to the Destruction of Any Evidence and to Produce a

Schedule of Construction and Demolition Events Scheduled to Take Place at the Breach Sites, Record Doc. No. 350;  (4) Plaintiffs' Motion to Compel Production of Evidence in Connection With the 17th Street Canal Breach Site, Record Doc. No. 295; and (5) Plaintiffs' "Discovery Motion(s)," Record Doc. No. 361.   Timely opposition memoranda, together with various reply and supplemental briefs, have also been submitted.

Having considered the record as a whole, including the testimony received by the court at the evidentiary proceeding conducted on May 2, 2006, Record Doc. No. 286, the written, audio/video and photographic submissions of counsel, their oral representations at the various hearings and conferences that have been conducted concerning these issues and the applicable law, the motions are determined as follows:

I.    Factual and Procedural Background

These consolidated cases include about two dozen lawsuits, most of which are putative class actions.  Plaintiffs allege that they represent various proposed classes whose numbers can only be estimated in the tens of thousands.  They seek what can only be estimated at this time as hundreds of millions of dollars in damages on behalf of property owners and other residents of most of the City of New Orleans, adjacent parts of the East Bank of Jefferson Parish and St. Bernard Parish who suffered losses when portions of the levee/floodwall system designed and constructed by or under the auspices

2

of the Corps failed on August 29, 2005 in the wake of Hurricane Katrina.  The failures that are the subject of these lawsuits occurred at the 17th Street Canal along the Jefferson Parish/City of New Orleans border, the London Avenue Canal in the Gentilly section of New Orleans, the Industrial Canal in the New Orleans Ninth Ward area, and the Mississippi River Gulf Outlet ("MRGO") in St. Bernard Parish extending toward eastern New Orleans.

The litigation is complex in the number of parties and lawyers involved, some of the legal issues, the breadth of the class allegations, the scientific and technical aspects of the liability and causation issues, and the enormity of the dollar value of the claimed damages. Thus, the court has been managing these cases in ways suggested by such treatises as the Federal Judicial Center's Manual for Complex Litigation.  At this time, the case has passed through an initial organizational stage.  The pleading stage appears substantially complete.  Dispositive motions that may not require discovery are being briefed and ruled upon by Judge Duval, the presiding district judge.  Formal discovery has not yet begun, but the parties have been engaged in various investigative efforts, some of which have culminated in the instant motions.

This litigation activity has transpired against a much more important non-litigation background. Since these cases were filed, the Corps and its contractors have been engaged in a massive repair and reconstruction effort spread over the several large breach

sites located miles apart.  Their first efforts in the immediate aftermath of Hurricane Katrina were to plug the levee breaks to stop the water intrusion into the affected areas, then to drain the multiple square miles of flooded cityscape.  Thereafter, a large-scale repair and reconstruction of the broken flood protection system was quickly undertaken, with the stated goal of completing this substantial work before the commencement of a new hurricane season on June 1, 2006.  The paramount public safety interest in this important work cannot be understated.

In January 2006, after an exchange of e-mail and other correspondence requesting evidence preservation and access to the sites for inspection and related purposes and before these cases were consolidated, plaintiffs filed a "motion for protective order" in one of the cases.  Record Doc. No. 46 and 47 in C.A. No. 05-4181.  In that motion, plaintiffs sought an order (a) preserving two mounds of soil at the 17th Street Canal breach for survey and inspection, (b) requiring the Corps to disclose to plaintiffs and their experts any plans for rebuilding or modifying the levee/floodwalls that might destroy relevant evidence, (c) granting plaintiffs and their experts broad-ranging access to the levee reconstruction zones, (d) requiring the Corps and another defendant, the Orleans Parish Levee Board, to meet with plaintiffs and formulate a discovery, inspection, evidence preservation and marshaling plan, and (e) organizing an evidence depository. Several defendants, including the United States, the Orleans Parish Levee District and

4

a Corps contractor, Modjeski & Masters, opposed the motion, principally on grounds that granting plaintiffs the requested relief would materially impede and interfere with the critical and time sensitive repair work that was then in progress at the sites.

That motion was denied by Magistrate Judge Knowles, who was then assigned to the case, Record Doc. No. 68 in C.A. No. 05-4181, apparently because plaintiffs had failed to submit evidence sufficient to satisfy the burden placed upon a movant for a protective order under Fed. R. Civ. P. 26(c). <u>See</u> <u>In re Terra Int'l, Inc.</u>, 134 F.3d 302, 306 (5th Cir. 1998) ("[T]he burden is upon the movant to show the necessity of [a protective order's] issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."). Magistrate Judge Knowles's order was subsequently upheld upon review by the district judge, Record Doc. No. 79,[1] but Judge Duval noted that a full-blown evidentiary hearing concerning the evidence collection and/or destruction practices of the Corps had been scheduled to occur before me and any error in my predecessor's order would be "rendered moot thereby."

Since my initial assignment to these cases on March 14, 2006, Record Doc. No. 49, evidence preservation and inspection issues at the various levee/floodwall breach sites have been the subject of three telephone conferences on April 13 and 20 and June

---

[1]Unless otherwise noted, all references to documents in the record are to the consolidated docket sheet for these cases, "Berthelot v. Boh Bros.," C.A. No. 05-4182.

2, 2006, conducted on short notice upon requests for expedited attention by counsel, Record Doc. Nos. 74, 75, 157, 481; an evidentiary hearing at which two Corps officials testified concerning the evidence preservation and destruction practices of the Corps and its contractors, Record Doc. Nos. 57, 69, 265 and 286; a motion to vacate the evidentiary hearing, supported by evidentiary materials filed by the United States, Record Doc. Nos. 166 and 260; discussion of the issues at the April 6, May 12, and June 15, 2006, status and organizational hearings before Judge Duval and me, and oral arguments on other motions.  Record Doc. No. 317.

    In several of the pending motions and other materials and in statements made orally at some of the hearings, plaintiffs' counsel has intimated or alleged that the Corps has been engaged in spoliation of evidence.  "Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"  Zubalake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D. N.Y. 2003) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)).  The record establishes, principally through the testimony of Corps personnel at the May 2, 2006 evidentiary hearing and in affidavits submitted by the Corps in connection with various motions, that substantial amounts of evidence, including many samples or portions of the concrete, sheet metal, rebar and soil that are the principal components of the failed levee/floodwalls, together with photography,

6

observation notes, test results and other evidentiary materials, have been collected and preserved by the Corps. On the other hand, some evidence has been destroyed, damaged or discarded either in the emergency effort that was undertaken to plug the breaches and stop the flooding or as part of the repair, reconstruction and debris disposal process that has been undertaken since the hurricane. In addition, before April 2006, it appears that the Corps severely restricted access to the site by the other litigants to these proceedings and made its decisions on what evidence should be collected and preserved based primarily on the opinions of its own experts, with some input from non-governmental agencies that were conducting their own investigations of the failures, but with little input from the litigants as to their opinions concerning evidence relevant to their claims or defenses.

One purpose of the court's proceedings in this regard has been to develop an evidentiary basis upon which these issues may be intelligently addressed, recognizing that a reasonable balance must be accomplished between the substantial public interest in having levee/floodwall repairs completed by the start of the 2006 hurricane season, the parties' interest in evidence preservation, and the ongoing obligation of the United States to preserve relevant evidence, not just of interest to itself, but also that is relevant to the claims and defenses of all parties. At the court's prodding, most of the lawyers involved have attempted to find a reasonable balance between the need to inspect and preserve

necessary and relevant evidence and the necessity of avoiding interference with and delay of the time-sensitive levee/floodwall repair and reconstruction work taking place at the relevant sites. That effort has resulted in the entry by agreement among most of the parties of various protocols, Record Doc. Nos. 299 (water stops), 502 and 503 (17th Street Canal), 515 and 584 (London Avenue South, at Mirabeau), 521 (scrap materials at MRGO) and 659 (scrap materials from London Avenue North, at Robert E. Lee), by which the parties are now being provided by the Corps and its contractors with notice of ongoing work and access to the sites for inspection and related purposes.

For present and future purposes, including my rulings on the five motions currently before me, the court hereby adopts and approves these protocols, finds them reasonable and makes them the orders of the court. In my view, the protocols and the effort that led to their adoption are consistent with the following legal standards governing these issues.

II.     The Applicable Legal Standards

Of course, the familiar discovery standard contained in Fed. R. Civ. P. 26(b)(1) and (2) provides the broad backdrop against which these motions rest. The precise issues raised by the motions, however, require the court to examine at least two other sources of applicable law. The first is largely non-statutory case law in which the scope of a party's well-recognized duty to preserve evidence relevant to litigation and avoid

spoliation of evidence finds its best  explained expression.  The second is Fed. R. Civ.

P. 34, which governs requests like those made by plaintiffs in some of these motions to

inspect and engage in related activities concerning property that is in the possession,

custody or control of another party.

  As to the general duty of litigants to preserve evidence, the parties have cited little

law of any usefulness in their various written submissions. Fifth Circuit case law

outlining the scope of the duty of parties to litigation, like the United States and its

contractors, is scant and tends to focus more on the sometimes sanctionable spoliation

of evidence than upon the precise parameters of the duty to preserve evidence and permit

inspection by others. Other courts, however, have described the scope of the duty in

useful and persuasive terms that flesh out the Fifth Circuit's more general guidance on

the subject, and I have relied upon that precedent, set out below, both in this order and

in my previous orders addressing these issues.

  When evidence preservation issues arise, "'federal courts . . . apply federal

evidentiary rules rather than state spoliation laws,'" even in diversity suits. White v. Wal-

Mart Stores East, L.P., 169 Fed. Appx. 850, 2006 WL 519398, at *1 (5th Cir. 2006)

(quoting Condrey v. SunTrust Bank, 431 F.3d 191, 203 (5th Cir. 2005)).  In some

instances, however, federal courts, including the Fifth Circuit, have referred to state law

or adopted it as federal law in determining the scope of a party's duty to preserve

evidence. <u>See</u> <u>Thibodeaux v. Ford Motor Co.</u>, 51 Fed. Appx. 591, 2002 WL 31730181,

at *3 (5th Cir. 2002) (adopting and relying upon Louisiana law in a diversity case to

define the scope of a litigant's duty to preserve evidence within the litigant's control);

<u>Baliotis v. McNeil</u>, 870 F. Supp. 1285, 1290-91 (M.D. Pa. 1994) (adopting and relying

upon decisions of state courts of New Jersey, <u>Hirsch v. General Motors Corp.</u>, 628 A.2d

1108, 1114 (1993), and Nevada, <u>Fire Ins. Exch. v. Zenith Radio Corp.</u>, 747 P.2d 911, 914

(1987),  in defining the scope of a litigant's duty to preserve evidence).

      Generally, a "'party which reasonably anticipates litigation has an affirmative duty

to preserve relevant evidence.'" <u>Howell v. Maytag</u>, 168 F.R.D. 502, 505 (M.D. Pa. 1996)

(quoting <u>Baliotis</u>, 870 F. Supp at 1290.  "The obligation to preserve evidence arises

when the party has notice that the evidence is relevant to litigation or when a party

should have known that the evidence may be relevant to future litigation.' Identifying the

boundaries of the duty to preserve involves two related inquiries:  <u>when</u> does the duty to

preserve attach, and <u>what</u> evidence must be preserved?" <u>Zubalake</u>, 220 F.R.D. at 216

(quoting <u>Fujitsu Ltd. v. Federal Express Corp.</u>, 247 F.3d 423, 436 (2d Cir. 2001))

(emphasis in original).

      As to <u>when</u> the obligation attaches, "[t]he duty to preserve material evidence arises

not only during litigation but also extends to that period before the litigation when a party

<u>reasonably</u> should know that the evidence may be relevant to anticipated litigation."

10

Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001).  A court order to preserve evidence is not necessarily required for the duty to arise; it exists whenever there is foreseeabilty of harm to a potential party to litigation if relevant evidence should be destroyed.  Hirsch, 628 A.2d at 1116.

As to the scope of the duty in terms of what evidence must be preserved, "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." Zubalake, 220 F.R.D at 217 (emphasis added). While there is no obligation to preserve every shred of paper or every tangible item in the party's possession, a party "'is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.'" Id. (quoting Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991)) (internal quotation omitted).

The duty to preserve evidence applies to all litigants and parties who reasonably anticipate that they will be parties or who are parties to litigation, including the United States and its agencies. See Kronisch v. United States, 150 F.3d 112, 126-30 (2d Cir. 1998) (vacating in part and remanding district court's grant of summary judgment in favor of the United States where jury would be permitted, though not required, to draw adverse inference against official of the Central Intelligence Agency based on the CIA's

11

destruction of documents and files relevant to drug testing program on which plaintiff based his <u>Bivens</u> civil rights claim).   The United States sometimes argues in its oppositions to these motions, <u>see</u> Record Doc. No. 357 at p. 7, that the motions should be denied because this court lacks jurisdiction over the United States, which has not waived its sovereign immunity to this action.   This argument has no effect on the duty of the United States to preserve evidence.   The United States is a party to these consolidated cases and remains a party until it is dismissed, if ever.   Even if the motions to dismiss filed by the United States are granted, it remains subject to the obligation to preserve evidence since it has notice and should reasonably anticipate being named as a defendant in hundreds or perhaps thousands of lawsuits, after parties who have already submitted administrative claims under the Federal Tort Claims Act exhaust those procedures.

While the duty to preserve evidence is broad, it is by no means absolute. "'The scope of the duty to preserve evidence is not boundless.'" <u>Matter of Wechsler</u>, 121 F. Supp. 2d 404, 420 (D. Del. 2000) (quoting <u>Baliotis</u>, 870 F. Supp. at 1291 (internal quotation omitted)).   A party upon whom the duty to preserve evidence is imposed need only "act reasonably under the circumstances." <u>Id.</u> (citing <u>Kolanovich v. Gida</u>, 77 F. Supp. 2d 595, 602 (D.N.J. 1999); <u>Hirsch</u>, 628 A.2d at 1122).   Thus, the question of

whether a party has fulfilled its obligation to preserve evidence will be judged in part by whether its actions were reasonable given all the relevant facts.

This "reasonableness" limitation on the duty to preserve evidence is consistent with the Fifth Circuit's conclusions in its decisions, both precedential and non-binding, addressing spoliation of evidence claims. For example, the Fifth Circuit has consistently held that a failure to preserve evidence sufficient to establish spoliation, such that a negative evidentiary presumption or other sanction might be imposed, requires a showing of bad faith. "The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'" Condrey, 431 F.3d at 203. "[S]poliation is a specific doctrine that requires the party invoking it to show, inter alia, that his adversary destroyed or misplaced the evidence in bad faith." Baker v. Randstad N. Am., L.P., 151 Fed. Appx. 314, 318, 2005 WL 2600178, at *3 (5th Cir. 2005) (citing Caparotta v. Entergy Corp., 168 F.3d 754, 756 (5th Cir. 1999)) (emphasis added). To impose the adverse evidentiary inference for spoliation, "'the circumstances of the act must manifest bad faith. Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case.'" White, 2006 WL 519398, at *1 (quoting Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975)). Obviously, then, an action that results in the destruction or other loss of evidence that is also reasonable under the circumstances cannot constitute bad faith. See Thibodeaux, 2002

13

WL 31730181, at *3 (applying Louisiana evidence preservation law, Fifth Circuit finds no adverse presumption may be imposed when the party failing to produce or preserve evidence that has been destroyed before another party could examine it "provides a reasonable explanation for that non-production") (emphasis added).

The decisions of two other federal courts illustrate how the concept of reasonableness applies to the general duty to preserve evidence, particularly where the public interest and safety are implicated. In Baliotis, plaintiffs were renters whose residence caught fire, and their three-year-old son died in the fire. Baliotis, 870 F. Supp. at 1286. The insurer of the owner of the home retained an expert, who concluded that the source of the fire was a microwave oven, and he removed the oven from the premises for preservation. Id. at 1287. The local fire marshal contrarily opined that the source of the fire was an electrical short inside a wall of the home, and another expert retained by plaintiffs similarly concluded that the source of the fire was an electrical short inside a wall, caused most likely by an overload from the microwave oven, but that this overload would not have proven deadly had the electrical circuit breaker not been negligently taped in the "on" position by the homeowner, such that electricity continued to flow despite the overload trip. Id. at 1288. Shortly after plaintiffs' expert published his findings, however, the insurer paid the homeowner for his property loss and authorized destruction of the scene. Id. Shortly after demolition of the fire scene, the insurer

14

notified the oven manufacturer of its intent to hold the manufacturer accountable for any losses, at a time when the manufacturer had been deprived of any ability to inspect the fire scene for itself.  Id.

Nonetheless, the court declined to sanction the other parties for the destruction of the fire scene, finding that the fire-damaged home was a public safety hazard, and in the absence of any proof of bad faith, the fire scene should have been destroyed as soon as reasonably possible.  Id. at 1291.  The court concluded that, while destruction of the scene may have rendered it more difficult for the microwave oven manufacturer to defend itself, its defense was not unduly prejudiced since some evidence had been preserved off-site, including the microwave oven itself, video and photographic documentation and the reports of several experts.  Id.  Moreover, the court noted that requiring a property owner to maintain a potentially hazardous scene any longer than is reasonably necessary would be, at a minimum, inefficient and wasteful.  Id. at 1292.

A similar result was reached in a case involving a hotel swimming pool when the hotel modified the pool before plaintiff had an opportunity to inspect it.  In Townes ex rel. Estate of Townes v. Cove Haven, Inc., No. 00-CV-5603 (RCC), 2003 WL 22861921 (S.D.N.Y. Dec. 2, 2003), plaintiff was the wife of a man who drowned in defendant's hotel swimming pool while they were on vacation.  The widow sued, alleging that her husband drowned as a direct result of the defendant hotel owner's negligence, including

15

dangerous conditions of the pool.  Id. at *1.  More than two years after the drowning but before plaintiff had an opportunity to inspect the pool, the pool was substantially modified by defendant.  Id. at *3.  The court weighed the ample time during which plaintiff could have conducted an inspection against defendant's decision to modify the potentially hazardous pool, and found that defendant had acted reasonably in preserving the pool for as long as it did.  Id. at 4.  The court further held that the duty to preserve evidence does not extend so far as to require a party to retain indefinitely on its property an allegedly unsafe condition.  Id.

Some courts have held that a component of the determination of whether a party has acted reasonably before destroying evidence that might have been preserved is whether the party/custodian of the evidence "[a]t a minimum," has provided a reasonably adequate or meaningful opportunity to inspect evidence before it is destroyed.  Baliotis, 870 F. Supp. at 1290-91;  Wechsler, 121 F. Supp. 2d at 420-21(both citing Hirsch, 628 A.2d at 1122-23).  In the pending motions, plaintiffs have consistently requested that they be provided with access to the levee/floodwall breach and reconstruction sites to conduct inspections and related activities.  Just as the obligation to preserve evidence is subject to limitations based on reasonableness, however, requests such as plaintiffs' for inspection of evidence must also be reasonable.

16

Requests to inspect premises and other tangible items in the possession, custody or control of another party are governed by Fed. R. Civ. P. 34, which provides in pertinent part that "[t]he request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts." (Emphasis added).  In determining the reasonableness of a  Rule 34 request, the court must take into account the particular need for the requested inspection and determine the proportionality of the need for the inspection to the burden and risk presented by it.  8A C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure, § 2214 at 435 (2d ed. 1994).  District courts inherently possess substantial discretion as to whether and within what limits to allow inspection of things and entry onto land.  Id. at 444.  This is not an absolute discretion, but rather one governed by policy, necessity, propriety and expediency – in short, a reasonableness standard that must be evaluated on a case-by-case basis.  Id. at 444-45.  While the court may prohibit a particular Rule 34 request, it may also allow an inspection or entry onto property under specified terms and conditions or within a limited scope.  Id. at 440.

Rule 34 requests deemed unreasonable under these standards will not be permitted or will be modified by time, place, manner of inspection or assessment of costs to make them reasonable.  For example, in Belcher v. Bassett Furniture Indus., 588 F.2d 904 (4th Cir. 1978), plaintiff was a former employee of defendant who filed an employment

discrimination claim.  Plaintiff requested and was granted by the trial court unfettered entry to five of defendant's operational plants over a five-day period.  Id. at 906.  On appeal, the Fourth Circuit reversed, stating that the request and subsequent order were overly broad and finding access to defendant's property at all times for even a five-day period unreasonable under the circumstances.  Id. at 907-08.

In Schwab v. Wyndham Int'l, Inc., 225 F.R.D. 538 (N.D. Tex. 2005), an employment discrimination plaintiff moved to compel entry to inspect his former work area in defendant's corporate headquarters.  The court found the proposed manner of inspection overly broad and unreasonable because plaintiff sought entry for inspection of more than 152,000 square feet of office space housing 22 departments that maintained confidential information.  Id. at 538.

In another case, plaintiff sought to compel production of an entire computer program, which defendant would not produce, citing sensitive information and irrelevancy of large portions of the information contained in the program.  Rates Tech. v. Elcotel, Inc., 118 F.R.D. 133, 135 (M.D. Fla. 1987).  Defendant proposed that plaintiff inspect the entire program on-site and indicate which sections needed further inspection with defendant then producing only the chosen portions or making appropriate objections.  Plaintiff again refused and sought production of the entire program.  Id.  The court found defendant's proposal "extremely reasonable" under the circumstances, noting

18

that such an agreement served the better interests of all parties involved without unduly prejudicing any one party.  Id.

Applying the foregoing legal principles to the five motions currently pending before me, I find that the motions should be granted in part, denied in part and dismissed as moot in part as follows.

III.    Plaintiffs' Motion for "Reasonable Notice," Record Doc. No. 350

This motion is now largely moot.  Unlike in the early stages of their investigation, repair and reconstruction work at the various breach sites, the Corps and its contractors have now entered by agreement, with the encouragement and under the direction of the court, into the various protocols mentioned above concerning notice and access for inspection and related activities.  The court reiterates that it finds the notice and access provisions of these protocols reasonable under the evidence preservation and Rule 34 standards outlined above.  Accordingly, this motion is granted only in that the notice and access provisions of the protocols agreed upon by the parties are hereby formally approved by the court and made the order of the court for present and future purposes.

IV.   <u>Plaintiffs' "Discovery Motions," Record Doc. No. 361</u>

The odd procedural history of this motion must be reviewed before it can be decided.  On April 17, 2006, at 5:07 p.m., counsel for some but not all plaintiffs filed a motion for expedited hearing on something he styled "Discovery Motion(s)," which he supplemented on April 19, 2006.  Record Doc. Nos. 359, 361-65.  While motions concerning discovery are typically referred to magistrate judges in this district, this motion was <u>not</u> a typical motion related to discovery and by its terms was clearly directed to the presiding district judge.

Specifically, numbered paragraph 1 of the "Discovery Motion(s)" sought expedited hearing of plaintiffs' objections and motion to review the previous order described above issued by Magistrate Judge Knowles before I was assigned to these cases.  That motion to review Magistrate Judge Knowles's order was noticed for hearing before Judge Duval, Record Doc. No. 74 in C.A. No. 05-4181, pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 74.1E.  In numbered paragraph 2 of the "Discovery Motion(s)," plaintiffs also sought review of an order I had issued on April 13, 2006, concerning observation by counsel and their experts of a materials recovery operation set to be conducted by the Corps at the London Avenue Canal North site near Robert E. Lee Blvd. on the following day.  Again, this request was directed to Judge Duval, the presiding district judge, who is the judicial officer empowered to review my orders in just

20

the same fashion as plaintiffs had requested him to review Magistrate Judge Knowles's previous order.

It appears, especially from the supplemental memorandum in support of the "Discovery Motion(s)" that even its numbered paragraph 3, which requests an order compelling the Corps "to allow plaintiffs, their attorney and his expert(s) access to the London Avenue site for reasonable inspection of available evidence," is directed to Judge Duval, since it expresses dissatisfaction with my April 13, 2006 order granting counsel for both sides and their experts the access sought in the motion, subject to certain limitations.

Thus, because the motion, with its accompanying request for expedited hearing, in fact was not a "Discovery Motion(s)," but instead was a request that the presiding district judge review on an expedited basis one order issued by Magistrate Judge Knowles and another order issued by me, it was routed to Judge Duval.

Nevertheless, on the record in open court during the status hearing conducted by Judge Duval with my assistance on May 12, 2006, plaintiffs' counsel stated that he wished to "waive" decision on his "Discovery Motion(s)" by Judge Duval and asked that I issue a decision.  Thus, although I consider this to be an odd request and have no desire to act beyond my statutory authority under 28 U.S.C. § 636, I issue the following ruling. The "Discovery Motion(s)" is DENIED in all respects for the following reasons.

21

The motion is denied insofar as it seeks further review of plaintiffs' Objections to and Motion to Review Magistrate Judge Knowles's Order, Record Doc. No. 74 in C.A. No. 05-4181, for two reasons.  First, one magistrate judge has no authority to review the order of another magistrate judge.  This is a district judge function.  Second, Judge Duval had already ruled on plaintiffs' Objections and Motion to Review Magistrate Judge Knowles's order <u>before</u> Mr. O'Dwyer filed his "Discovery Motion(s)."  Record Doc. No. 79.

The motion is also denied insofar as it seeks review of my order of April 13, 2006, Record Doc. No. 74 in C.A. No. 05-4182.  Since I have no authority to review my own orders under 28 U.S.C. § 636, I will consider this a motion addressed to some inherent authority I may have to reconsider my own orders.  I see no reason to reconsider.

Finally, the motion is denied as to the request "to allow plaintiffs, their attorney and his expert(s) access to the London Avenue site for reasonable inspection of available evidence" because my April 13, 2006 order did just that.  It appears that plaintiffs' counsel's complaint in this regard is that one particular plaintiffs' lawyer (movants' counsel Ashton R. O'Dwyer, Jr.) and his selected expert (a naval architect and marine engineer) were not included on the plaintiffs' team that was in fact granted access to the London Avenue North site under my April 13, 2006 order.

Because these consolidated proceedings involve numerous lawyers for both sides and numerous experts, and because the planned materials recovery operation was not known to the court or counsel until that very morning, it was necessary for logistical purposes to limit the number of lawyers involved in the April 13th conference and the number of lawyers and experts given access to the site, which was at the time an active construction site, just as the court has found it necessary for overall management purposes of this complex litigation to appoint a liaison committee consisting of only five lawyers per side. The liaison committees had not been appointed at the time I addressed the time-sensitive issues that were the subject of my April 13, 2006 order, so I randomly selected three attorneys for each side to participate in the conference.  Mr. O'Dwyer was not among the three plaintiffs' attorneys selected to participate in the conference, just as he was not among the five plaintiffs' attorneys later selected by Judge Duval to serve on the plaintiffs' liaison committee.  My April 13, 2006 order did not designate which particular three attorneys and three experts per side would attend the specific inspection and observation of the London Avenue North (Robert E. Lee Blvd.) site that were the subject of that order.  Instead, selection of the participants was left by me to counsel, who were then in a better position to make those designations, and neither Mr. O'Dwyer nor his naval architect were selected by his colleagues to participate.  Nevertheless, plaintiffs were fully represented by the committee that was selected, and there was no reason to

23

include this particular lawyer or his naval architect on the inspection team that was the subject of my April 13, 2006 order.[2]

V.    Plaintiffs' Motion to Compel Production of Evidence in Connection With the 17th Street Canal Breach Site, Record Doc. No. 295

In this motion, plaintiffs seek (1) the concrete monolith panels currently at the site, and particularly the left and right edges of those concrete panels and the bottoms of the panels, where the concrete makes contact with the sheet piles; (2) the concrete monolith panels which were excavated and removed from the site some time before Wednesday, May 2, 2006; (3) the polyvinyl chloride water stops which were installed between concrete monolith panels at the 17th Street Canal breach site; and (4) the in-place sheet piles, many of which are currently buried by mud and rip rap at the 17th Street Canal breach site.

During my recent illness, Judge Duval conducted a hearing on a related motion, found that "it would appear that the protocol submitted as to the 17th Street Canal site will satisfy the needs of the parties," and rescheduled hearing on this motion to compel before me on July 19, 2006.  Record Doc. No. 447.  However, I find that the current

_____

[2]In an effort to foster cooperation among plaintiffs' counsel, I later required that both Mr. O'Dwyer and his naval architect be included on plaintiffs' team assembled for a discrete subsequent site inspection. Record Doc. No. 157.

record is sufficient to permit ruling on the motion and that no further oral argument is necessary.

The motion is granted as to inspection of the edges and bottoms of concrete monolith panels still at the site, but only to the extent provided in the protocol for inspection of these materials previously submitted to the court, Record Doc. Nos. 502 and 503, which the court has found reasonable and adopts as its order.  As pointed out in Judge Duval's previous order, if any parties find the protocol unworkable in its actual implementation, they are free to raise the issue, preferably through liaison counsel, in a new motion or at one of the court's regularly scheduled status hearings.

The motion is dismissed as moot insofar as it seeks access to the concrete monolith panels excavated and removed from the site before May 2, 2006.  According to the affidavit of David Woolfarth attached to the opposition memorandum of the United States, these materials have been demolished.

The motion is denied insofar as it seeks "in-place sheet piles . . . currently buried by mud and rip rap." These are some of the materials that plaintiffs' motion states at footnote 1 should be produced "after 'gentle excavation'" at the site, which has been the scene of a substantial emergency plugging operation at the floodwall break and a subsequent repair and reconstruction project.  The time, expense, interference with the repair project and doubtful benefit of this effort, considering the sampling that has

25

already been done and the access for inspection that has already been and will be permitted under the protocols, render this request by plaintiffs unreasonable. If at some point in the ordinary course of the repair, reconstruction or materials recovery work being conducted at the site, the sheet piles will be uncovered or removed, notice of this work must be provided to the other litigants, as provided in the protocols, so that an opportunity for inspection and possible preservation of the sheet piles may be provided, along the lines previously accomplished by the parties in a similar situation at Jourdan Avenue near Galvez Street at one of the breaches along the Industrial Canal. Record Doc. Nos. 481, 524, 525. The requested special order requiring this kind of excavation at this time, however, would be unreasonable and will not be granted.

In light of the foregoing ruling, the July 19th hearing before me is hereby CANCELLED.

VI.   Plaintiffs' Motion to Compel Production of Evidence (a) in Connection With the London Avenue Canal South Breach Site and (b) in Connection With the 17th Street Canal Breach Site, Record Doc. No. 368

In this motion, plaintiffs seek (1) any and all flow charts, critical path diagrams, or equivalent(s), which are in the possession of the Corps or its contractor(s) for work contemplated during the next three (3) months at the London Avenue Canal South and 17th Street Canal breach sites; (2) any and all concrete monolith panels, some of which are currently buried and/or only partially excavated, at the London Avenue Canal South

breach site, and particularly the left and right edges of those concrete panels housing the concrete lips for the water stops, and the bottoms of the panels, where the concrete makes contact with the sheet piles; (3) the polyvinyl chloride water stops which were installed between concrete monolith panels at the London Avenue Canal South breach site; (4) the in-place steel sheet piles, most of which are currently buried by mud and rip rap at the London Avenue Canal South breach site; (5) the steel sheet piles which are either buried or which have been removed from the 17th Street Canal breach site at the connection between still-standing sheet pile and distressed sheet pile, at both the north and south ends of the breach area; and (6) access by plaintiffs' counsel and their experts to the breach sites "at all times."

The motion is denied insofar as it seeks "any and all flow charts, critical path diagrams" etc. for contemplated work at the sites. While these materials may be the subject of a discovery request later in these proceedings, requiring their production at this time would be unreasonable when the protocols for these sites, which have now been approved and adopted as the court's orders, provide adequate notice of contemplated work and materials recovery in which the other parties may be interested.

As with plaintiffs' similar request in the other motion addressed above, this motion is denied insofar as it seeks concrete monolith panels and sheet piles which are "currently buried and/or only partially excavated" and/or "currently buried by mud and rip rap." To

27

require special excavation of these materials at this time would be unreasonable. Pursuant to the protocols, especially Record Doc. No. 515, and in light of the court's previous directions, some excavation of these materials could reasonably be accomplished, and the parties and their experts have been given access to some of the concrete monoliths and their partially imbedded sheet piles at the site.  The time, expense, interference with the repair project and doubtful benefit of any extraordinary excavation effort, however, considering the sampling that has already been done and the access for inspection that has already been and will be permitted, render this request by plaintiffs for further excavation unreasonable.  As at the other breach sites, if at some point in the ordinary course of the repair, reconstruction or materials recovery work being conducted at the site, buried sheet piles will be uncovered or removed (or as to sheet piles that have already been removed but not yet destroyed), notice of this work or of the existence of this evidence at a particular location must be provided to the other litigants, as set out in the protocols, so that an opportunity for inspection and possible preservation of the sheet piles may be provided, along the lines previously accomplished by the parties in the similar situation at Jourdan Avenue near Galvez Street at one of the breaches along the Industrial Canal.  Record Doc. Nos. 481, 524, 525.  The requested special order requiring extraordinary recovery work at this time, however, will not be granted.

The motion is granted as to water stops, but only in that some representative samples of water stops at the breach sites be preserved.  The water stops provide an example of evidentiary materials that are of no interest to the Corps and which the Corps was not routinely sampling or preserving prior to the court's orders, but which are of interest to some of the plaintiffs and which could be preserved without substantial cost or impediment to the repair and reconstruction work.  Plaintiffs' most recent submissions establish that some sample water stops have been preserved and/or photographed. The provisions in the various protocols for preservation of water stops are sufficient to satisfy this request.

The motion is denied insofar as it seeks access to the site by plaintiffs' counsel and their experts "at all times" because this request is unreasonable.  Permitting unrestricted access to the active construction sites that are the subject of this litigation would be both unnecessary to the needs of the litigation and unduly disruptive of the work that has been occurring at the sites, such that this request violates the strictures of Rule 34 and exceeds what is necessary to satisfy any party's evidence preservation obligation.

VII.    <u>Motion of the United States to Clarify the Court's Previous Order, Record Doc. No. 286</u>

In this motion, the United States seeks clarification of my previous order, Record Doc. No. 286, entered after the May 2, 2006, evidentiary hearing requiring the

preservation of certain evidence collected by the Corps and its contractors or identified as evidentiary materials of interest by other parties pursuant to the notice and inspection protocols and prior orders of the court.  The motion is granted in that the entire body of this order is meant to clarify my previous order.

The previous order was not intended to require the Corps and its contractors to preserve every shard of concrete, every piece of rebar, every sheet piling and monolith in its entirety, every particle of peat or other dirt, every single strip of water stop and every other bit or piece of the wreckage of the failed levee/floodwall system.  After all, the applicable law (outlined above) requires the Corps to do only what is reasonable.  In addition, the compelling public interest in the emergency measures taken by the Corps to stem the flooding immediately after the hurricane and to drain away the water thereafter and in the speedy completion of the massive necessary repairs before commencement of the current hurricane season, coupled with the nature of that repair work, necessarily means that some evidence would be lost or destroyed.

On the other hand, the attitude of the United States, which is palpable in some of its written submissions, most notably the materials submitted in support of its previously denied motion to vacate the evidentiary hearing, Record Doc. No. 166, and in some of the testimony of its employees at the hearing, that the Corps is the sole arbiter of what is relevant and what must be preserved and that all that must be preserved was that which

was of interest to the Corps, was erroneous and required alteration.  The purpose of the court's prior orders permitting inspections and related activities and its encouragement of the parties to reach agreements concerning inspection and evidence recovery protocols was to give the parties an opportunity through those protocols to identify that evidence which might be of interest to them, even if it was of no interest to the Corps, so that a further opportunity to preserve evidence that the Corps intended for disposal might be provided, if reasonable. Litigation-related activities that would have substantially impeded the necessary repair work or required the expenditure of huge sums of public funds for questionable benefits to the litigation process would not be reasonable.  Thus, my previous order was intended to make it clear to the Corps and its contractors that they must preserve not only all evidentiary materials which they have accumulated because it was of interest to the Corps, but also other evidence that might be identified by the other parties through the protocols and as a result of their inspections, as long as it was reasonable to do so.

As mentioned above, the court's desires in this regard were successfully realized recently in the resolution of a disagreement between the United States and other parties, including plaintiffs and at least one defendant, concerning certain sheet pilings that had been removed from a breach site along the Industrial Canal and deposited near Jourdan Avenue and Galvez Street. The Corps planned to destroy them after some sampling.

Other parties sought to preserve them intact.  After discussion among themselves and with me, the parties agreed to an evidence preservation protocol for those particular sheet pilings, which the court approved by order.  Record Doc. Nos. 481, 524, 525.  To the extent that the United States and the other parties require further clarification concerning how they should balance the competing interests involved in these matters in an effort to achieve the "reasonableness" standard that governs these issues, they should be guided not only by all that appears in this order but also by the manner in which their disagreement over the sheet pilings at Jourdan Avenue and Galvez Street along the Industrial Canal was brought to the court's attention and subsequently resolved.

New Orleans, Louisiana, this 27th day of June, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

cc:  Hon. Stanwood R. Duval, Jr.