UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

COLLEEN BERTHELOT, ET AL.,      CIVIL ACTION NO. 05-4182

VERSUS      SECTION "K" (2)

BOH BROTHERS CONSTRUCTION
CO., CONS. KATRINA CANAL L.L.C.,
ET AL.


THIS DOCUMENT RELATES TO:

JULIE E. TAUZIN, ET AL.      CIVIL ACTION NO. 06-0020

VERSUS      SECTION "K" (2)

BOARD OF COMMISSIONERS
FOR THE ORLEANS PARISH
LEVEE DISTRICT, ET AL.


## SECOND AMENDED CLASS ACTION COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs Julie E. Tauzin, John M. Holahan, Paulette H. Holahan, Riverbend Fine Wines Inc., and Michelle M. Zornes, individually and on behalf of other similarly situated plaintiffs, who respectfully present the following Second Supplemental and Amended Complaint.

___ Fee_____
___ Process_____
_X_ Dktd _____
_✓_ CtRmDep_____
___ Doc. No_____

1

Plaintiffs respectfully amend, supplement, and re-state their original and First Amended Complaints, as follows:

## INTRODUCTION

Plaintiffs file this Complaint, on their own behalf and on behalf of the class of all similarly affected persons, seeking damages sustained when their homes, apartments and businesses were flooded when the levees failed in the aftermath of Hurricane Katrina. This is a class action brought on behalf of residents of New Orleans and Metairie who have suffered damage as a result of defective design, construction, maintenance and inspection of the levees and floodwalls protecting the residents of New Orleans and Metairie and their property. The levees in question include levees and floodwalls along the 17th Street Canal and the London Avenue Canal.

The Defendants were repeatedly put on notice that the design specifications for the New Orleans levee system was defective and that levee protection for the City of New Orleans failed to provide the protections provided for in its designs. Construction of the levees resulted in massive subsidence of properties adjacent to the levees, including soil movement, detrimental changes in the water table, and damage to structures in the area. Defendants received complaints by neighbors and lawsuits alleging subsidence, leakage and seepage. Moreover, warning signs that should have been apparent upon reasonable inspection placed the defendants on notice or constructive notice of deterioration of the levees and the changing and unstable soil conditions in the area of the levees.

Common issues predominate as to the claims of all affected victims of the flood, because the flood resulted from a single, identifiable event: levee failures resulting from defective design and construction, in addition to inadequate maintenance and inspection.

Because many of the property owners lacked flood insurance, they will be unable to fund significant litigation on their own. The flood waters that poured through the levees had a devastating impact. Properties for miles around the breaches were flooded with contaminated salt water containing sewerage and other hazardous and toxic pollutants which escaped from flooded sewer lines and related pollutants from the canal beds. As a result of the damage, many properties are a total loss, and the diversion of resources to litigation of individual claims, as opposed to resolution of the common issues through this class action, would only further delay and limit recovery efforts. Accordingly, a class action is the appropriate procedure for addressing the claims asserted in this case.

## JURISDICTION

### 1.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. §§ 2671, et seq. (Federal Tort Claims Act), 28 U.S.C. § 1332 (Diversity) and 28 U.S.C. §§ 1983, et seq. (Federal Civil Rights Act).

### 2.

The defendants named herein each do substantial business in the State of Louisiana and within this Judicial District, and at all times hereto, they engaged in commerce both in this Judicial District and in the State of Louisiana.

3.

Plaintiffs allege that they have suffered damages in an amount in excess of $75,000.00 exclusive of interest and court costs, as to themselves and each proposed class member.

4.

There is complete diversity of citizenship and/or federal question jurisdiction herein because defendants were contractors of the Federal Government as to the matters complained of herein. Alternatively, there is jurisdiction due to ample diversity to meet the terms of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2).

5.

This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because this is a class action in which there is at least minimal diversity and the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. Alternatively, this court has jurisdiction because there is diversity of citizenship between the plaintiffs and the defendants due to the fact that defendants were contractors of the federal government. Alternatively, this court has federal question jurisdiction because the project at issue was a federal construction project undertaken by the Army Corps of Engineers.

**VENUE**

6.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the negligent and wrongful actions of the defendants occurred in the Eastern District of Louisiana, the plaintiffs reside in the Eastern District of Louisiana, the damages to plaintiffs occurred within the Eastern

District of Louisiana and the applicable facts which form the basis of this lawsuit occurred in the Eastern District of Louisiana.

7.

This Court has supplemental jurisdiction over all claims that arise under state law and are not within this Court's original jurisdiction, as those claims are so related to the claims in the action within this Court's original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367.

## PLAINTIFFS

8.

The following plaintiffs bring this action individually and on behalf of the class of individuals similarly situated.

9.

Plaintiffs, John M. Holahan and Paulette L. H. Holahan, are husband and wife and persons of the full age of majority and residing in the Parish of Orleans, State of Louisiana, who sustained damage as a result of the failure of the 17th Street Canal Levee.

10.

Plaintiff, Riverbend Fine Wines Inc., is a Louisiana Corporation which sustained damages as a result of the failure of the 17th Street Canal Levee.

11.

5

Plaintiff, Julie E. Tauzin, is a person of the full age of majority residing in the Parish of Orleans, State of Louisiana, who sustained damage as a result of the failure of the London Avenue Canal Levees.

12.

Plaintiff, Michelle M. Zornes, is a person of the full age of majority residing in the Parish of Orleans, State of Louisiana, who sustained damage as a result of the failure of the aforementioned levees.

### PLAINTIFF CLASS

### Proposed Class Definitions

13.

This class action proceeding is brought on behalf of:

All residents, domiciliaries, and property owners of the Parishes of Orleans and Jefferson, in the State of Louisiana whose persons or properties were or may hereafter be damaged by flooding caused by the failure of the hurricane protections levees and floodwalls located along the 17th Street Canal and the London Avenue Canal, in New Orleans, Louisiana, on or shortly after 29 August 2005.

### Proposed Subclasses

14.

This class action proceeding involves subclasses, which can be defined as follows:

a.      Subclass 1:  Those individuals and entities who sustained damage

as a result of the failure of the 17th Street Canal Levee; and

b.      Subclass 2:  Those individuals and entities who sustained damage

as a result of the failure of the London Avenue Canal Levees.

6

**DEFENDANTS**

15.

Made Defendants herein are the following:

a.    The Board of Commissioners of the Orleans Levee District (the
      "Levee Board"), is a political subdivision of the State of Louisiana,
      domiciled in the Parish of Orleans, State of Louisiana, which, was
      responsible for the development and maintenance of, and directly
      in charge of and responsible for the efficient operation and
      maintenance of all of the levee structures and facilities during
      flood periods and for continuous inspection and maintenance of
      the levees and floodwalls during periods of low water.

b.    The Orleans Parish Sewerage and Water Board which was charged
      with responsibility for the canals and levees at issue,

c.    Pittman Construction Company, Inc. is a corporation organized
      and existing under the laws of the State of Louisiana with its
      principal place of business in New Orleans, Louisiana.

d.    Eustis Engineering Co., Inc. is a corporation organized and
      existing under the laws of the State of Louisiana with its principal
      place of business in Metairie, Louisiana.

e.    Modjeski and Masters, Inc. is a corporation organized and existing
      under the laws of the State of Pennsylvania with its principal place
      of business in Mechanicsburg, Pennsylvania.

7

f.   Burk-Kleinpeter, Inc., a Louisiana corporation with its domicile in
the Parish of Orleans, and doing business within the Parish of
Orleans, State of Louisiana;

g.   B&K Construction Co, Inc., a Louisiana corporation, f/k/a B&K
Construction Company, with its domicile in the Parish of St.
Tammany, and doing business within the Parish of Orleans, State
of Louisiana; and

h.   Boh Brothers Construction Co., L.L.C. is a corporation organized
and existing under the laws of the State of Louisiana with its
principal place of business in New Orleans, Louisiana.

i.   CSX Transportation, Inc. is a corporation organized and existing
under the laws of the State of Virginia with its principal place of
business in Jacksonville, Florida.

**FACTS**

16.

On 29 August 2005, Hurricane Katrina made landfall in southeastern Louisiana causing
widespread destruction in the cities of New Orleans and Metairie.

17.

After the Hurricane passed through the New Orleans area, levees and levee and
floodwaters protecting the City failed.  Upon information and belief, although the floodwaters
did not exceed the height of the floodwaters at the 17th Street Canal and London Avenue Canal,

the levees failed to hold back the water, and floodwaters poured into the City, resulting in substantial property damage and loss of life.

18.

The levees at the 17th Street Canal and London Avenue Canal were constructed pursuant to the design specifications of the United States of America, Department of the Army, Corps of Engineers, as earthen levees and floodwalls, built with steel sheet pilings driven into the ground. The steel sheet pilings were topped with a concrete cap.

19.

Upon information and belief, before the levees and floodwaters were constructed, soil borings were taken to assess the strength of the soil and its ability to withstand the force of flood waters pushing against it and still remain in place.

20.

Upon information and belief, before construction of the levees, studies were conducted to ensure that the levees would provide protection sufficient to withstand the effects of a category 3 hurricane.

## FACTS REGARDING THE 17TH STREET CANAL

21.

Upon information and belief, a soil study was performed in 1981 by Defendant, Eustis Engineering, which took soil borings along the location of the 17th Street Canal Levee.

22.

The soil borings revealed alternating layers of soft clay and soft, black humus or peat, a soft, spongy soil comprised of decaying trees and other organic material, from fifteen to twenty-one feet below sea level.

23.

The layer of humus or peat substantially reduced the strength of the soil, particularly its strength in resisting lateral pressure and its ability to support the 17th Street Canal Levee when it was under pressure from floodwater.

24.

Despite the presence of a layer of soft, spongy material at a depth of fifteen (15) to twenty one (21) feet below sea level, the flood walls of the 17th Street Canal Levee were constructed with steel sheet piling driven to a depth that was seventeen (17) feet below sea level. At such depths, the protective sheet pilings ended above or right in the middle of layers of weak soil.

25.

Additionally, the soil adjacent to the 17th Street Canal Levee subsided significantly after construction of the levee and floodwall, thereby significantly reducing the amount of support that the land behind the levee provided against the pressure of floodwaters.

26.

Upon information and belief, the soil studies performed in connection with construction of the 17th Street Canal Levee were not conducted with a reasonable degree of care and diligence and failed to account for the possible weakening of the soil in connection with the effect of subsidence of land on the protected side of the levee, soft soils at the base of the levee, and the

soil that was weakened as flood waters pushed through subterranean levels under the levee and floodwall.  Alternatively, the soil studies failed to warn against the dangers that should, in the exercise of reasonable care, have been anticipated in connection when the pressure of flood water was applied to soil beneath the 17th Street Canal Levee.

27.

New Orleans design firm, Modjeski and Masters was hired to design the 17th Street Canal Levee.

28.

Upon information and belief, Modjeski and Masters failed to exercise that degree of professional care and diligence that should reasonably have been expected of a firm designing a levee for the protection of human life and billions of dollars in property, and the design work performed by Modjeski and Masters for the 17th Street Canal Levee failed to account for the possible weakening of the soil in connection with the effect of subsidence of land on the protected side of the levee, soft soils at the base of the levee, and the soil weakened as flood waters pushed through subterranean levels under the levee and floodwall.

29.

Upon information and belief, Pittman Construction Company, Inc., and other defendants constructed and otherwise conducted extensive work on the 17th Street Canal Levee, including construction of the levee, dredging, pile driving, demolition and other work.

30.

Upon information and belief, Pittman Construction Company, Inc., and other defendants were negligent in the manner in which they constructed the 17th Street Canal Levee, in that they

11

failed to exercise reasonable care in accounting for the dangers associated with soil conditions in the area of the levee and ensuring that the construction was adequate to withstand the lateral pressure applied by floodwaters such as those associated with storms such as Hurricane Katrina.

31.

Upon information and belief, soil data was necessary for planning and executing a construction job of this nature. Although its contract with the Corps of Engineers advised prospective bidders that physical data was available upon request, Pittman Construction Company, Inc., and other defendants never asked for that data prior to bid, and were thus unable to have considered it in formulating its construction approach or bid. Pittman Construction Company, Inc., and other defendants were negligent in proceeding with the work without such information.

32.

Upon information and belief, defendant, Boh Bros. installed sheet piling and later dredged the 17th Street Canal and thereby exposed layers of unstable peat and soft clays to increased pressures from flood waters, without conducting adequate investigation into the consequences of such dredging and in a manner that was otherwise negligent.

**London Avenue Canal Claims**

33.

Upon information and belief, Defendant Miller Excavating Services, Inc., constructed the Leon C. Simon Boulevard bridge over the London Avenue Canal, and it is believed that negligence in the construction of the bridge and the use of heavy vehicles and equipment in

construction of the bridge caused or contributed the above mentioned breach in the levee and/or floodwall.

34.

Upon information and belief, Defendants, Burk-Kleinpeter, Inc. and other defendants performed engineering work used in construction of the London Avenue Canal levee/floodwall. Plaintiffs aver that the levees and floodwalls were negligently designed and that the faulty design caused or contributed the above-described failure of the levee and floodwall.

35.

Upon information and belief, Defendant B&K Construction Company, Inc. was the contractor that constructed the London Avenue levee and floodwall, said construction including but not limited to the construction and placement of the sheet pilings and the construction and placement of the concrete floodwall slab atop the sheet pilings and the concrete slab sections caused or contributed the above-described failure of the levee and floodwall.  It is further believed that the use of heavy vehicles and construction equipment in construction and placement sheet piling and of the concrete slabs damaged the levee and caused or contributed to the above-mentioned beach in the levee and floodwall.

### Industrial Canal Claims

38.

In addition to the levee failures described above, a significant portion of the flooding that caused Plaintiffs' damages occurred as a result of a breach at the Inner Harbor Navigation Canal (or "Industrial Canal" as it is commonly known).

39.

The breach at the Industrial Canal occurred as a result of CSX Transportation, Inc.'s negligent design and construction of a railroad crossing. Specifically, CSX Transportation, Inc. used highly erodible, lightweight, and/or porous materials such as "shell sand" and gravel in their flood protection structures, which caused them to be significantly weaker than the surrounding flood protection structures. CSX also failed to install a "sheetpile cutoff" or similar device to prevent or limit erosion of its structures.

40.

In addition, at least one Levee Investigation team has found that CSX Transportation, Inc. could have prevented the failure of their structures at minimal additional cost by installing concrete "splash pads" or other erosion protection devices at the base of the "I-walls." Thus, for negligently failing to take reasonable and inexpensive steps to prevent their flood protection structures' failure, CSX Transportation, Inc. is responsible for the damage caused by flooding emanating from the Industrial Canal.

**The Negligence of the Levee Board**

41.

The negligence of the Levee Board caused or contributed to the levee failures, in that the levee board failed to fulfill its obligations to inspect, maintain, monitor, protect and repair the levees and floodwalls along the 17th Street Canal, and London Avenue Canal, all of which were within the jurisdiction and control of the Levee Board.

## Statutory and Legal Obligations of the Levee Board (Floodwalls)

42.

With respect to floodwalls, Defendant Levee Board was specifically required to conduct periodic inspections and ensure the following:

(i) No seepage, saturated areas, or sand boils were occurring;

(ii) No undue settlement had occurred which affects the stability of the wall or its water tightness;

(iii) No trees existed, the roots of which might extend under the wall and offer accelerated seepage paths;

(iv) The concrete had not undergone cracking, chipping, or breaking to an extent which might affect the stability of the wall or its water tightness;

(v) There were no encroachments upon the right-of-way which might endanger the structure or hinder its functioning in time of flood;

(vi) No bank caving conditions existed riverward of the wall which might endanger its stability;

(vii) Toe drainage systems and pressure relief wells were in good working condition, and that such facilities were not becoming clogged.

43.

The periodic inspections by Defendant Levee Board were specifically required to be made immediately prior to the beginning of the flood season, immediately following each major high water period, and otherwise at intervals not exceeding 90 days.

44.

In furtherance of the periodic inspections, Defendant Levee Board was required to undertake immediately measures to eliminate encroachments and effect repairs found necessary by such inspections, and all repairs were required to be accomplished by methods acceptable in

15

standard engineering practice. Moreover, immediate steps were to be undertaken to correct any condition which endangered the stability of the wall.

45.

Defendant Levee Board was required to maintain continuous patrol of the wall during flood periods to locate possible leakage at monolith joints or seepage underneath the wall.

46.

The periodic inspections by Defendant Levee Board were specifically required to prohibit boats from lying against or tying up to the wall.

**Statutory and Legal Obligations of the Levee Board (Levees)**

47.

With respect to levees, Defendant Levee Board was specifically required to provide at all times such maintenance as may be required to maintain serviceability of the structures in time of flood.

48.

With respect to levees, Defendant Levee Board also was specifically required to conduct periodic inspections and to be certain that:

(viii)   No unusual settlement, sloughing, or material loss of grade or levee cross section had taken place;

(ix)   No caving had occurred on either the land side or the river side of the levee which might affect the stability of the levee section;

(x)   No seepage, saturated areas, or sand boils were occurring;

(xi)   Toe drainage systems and pressure relief wells were in good working condition, and that such facilities were not becoming clogged;

(xii)   Drains through the levees and gates on said drains were in good working condition;

16

(xiii)  No revetment work or riprap had been displaced, washed out, or removed;

(xiv)   No action was being taken, such as burning grass and weeds during inappropriate seasons, which were retarded or destroyed the growth of sod; and

(xv)    Encroachments were not being made on the levee right-of-way which might endanger the structure.

Immediate steps were to be taken to control any condition which endangers the levee, and the Levee Board was specifically required to repair any damage.

49.

The Levee Board was required to take measures to promote the growth of sod on the levees, to exterminate burrowing animals, and to provide for routine mowing of the grass and weeds, removal of wild growth and drift deposits, and to repair all damage caused by erosion or other forces.

50.

During flood periods, the Levee Board was required to patrol the levee continuously to locate possible sand boils or unusual wetness of the landward slope and to be certain that:

(xvi)   There were no indications of slides or sloughs developing;

(xvii)  Wave wash or scouring action was not occurring;

(xviii) No low reaches of leave existed which may be overtopped;

(xix)   No other conditions existed which might endanger the structure.

51.

The Levee Board also was required to take appropriate advance measures to ensure the availability of adequate labor and materials to meet all contingencies.

52.

The Levee Board failed to fulfill almost every one of the forgoing obligations, and the other defendants failed to exercise reasonable care in inspecting the levees and floodwalls and is warning about the hazards complained of herein.

**Damages**

53.

Defendants' negligent conduct was a substantial cause of one of the worst disasters in United States history. Homes, cars, and other property inundated with flood waters and many were destroyed. The lives of many New Orleans residents were changed forever.

54.

Shortly after Hurricane Katrina passed through the New Orleans area, several hundred feet of the 17th Street Canal Levee breached just south of the point at which the Old Hammond Highway bridge crosses the 17th Street Canal. Breaches and flooding also occurred along stretches of the London Avenue Canal. It is believed that the levee failures were the direct and proximate result of negligence in the design, construction, inspection, maintenance and monitoring of the levees and floodwaters. Resulting floodwaters inundated the City of New Orleans, overtaking capacity of pumps and drains and causing a large portion of the City to remain flooded for weeks.

55.

Upon information and belief, the Defendants knew or should have known that their conduct would necessarily cause severe and irreparable damage to the plaintiffs and their property.

18

**Proceeding as a Class Action**

56.

The claims of the proposed class representatives are typical of the claims of the proposed class members.

57.

Plaintiffs will fairly and adequately represent and protect the interests of all members of the described class. Plaintiffs have retained attorneys highly experienced in the prosecution of class actions, including complex litigation, and mass tort class actions, to represent the class members herein.

58.

The common questions of law and fact as shown above predominate over individual questions of causation or individual damages.

59.

Concentrating this litigation in one forum will promote judicial economy, efficiency and parity in the treatment of the claims of individual members of the class.

60.

A class action is superior to other available procedures for the fair and efficient adjudication of this litigation, since individual joinder of all members of each class is impracticable. Even if any class members could afford individual claims (and most could not) it would be unduly burdensome on the Courts in which such litigation would proceed.

61.

The class action procedure will decrease the delay, expense and burdens of managing the process of resolving controversies associated with the losses at issue, because the final adjudication of the issues will occur in a single court, thereby achieving economies of scale and efficiency in the supervision of the litigation process. Among other things, the process of individual litigation would only serve to magnify the expenses, such as the expense of retaining expert witnesses and analysis, well beyond the ability of most claimants.

62.

Class certification is appropriate, because separate actions by individual class members will create a risk that individual claims will, as a practical matter, be dispositive of unrepresented interests of other, as yet unadjudicated claims. Such a procedure would impair the ability of parties to protect their interests.

63.

The plaintiffs are entitled to and pray for trial by jury on all issues.

**WHEREFORE,** Plaintiffs, individually and on behalf of all those similarly situated members of the proposed class, pray:

1. That defendants be served with a copy of this Complaint and be cited to appear and answer the same;

2. For an order certifying the Class and appropriate subclasses thereof pursuant to the Federal Rules of Civil Procedure, and appointing claimants and their counsel to represent the Class;

3.     After due proceedings are had, including trial by jury, that judgment be rendered in favor of plaintiffs and the proposed Class against defendants The Board Of Commissioners For The Orleans Parish Levee District, Pittman Construction Company, Inc., Burk-Kleinpeter, Inc., B&K Construction Company, Inc., Eustis Engineering Co., Inc., Modjeski And Masters, Inc., Boh Bros. Construction Co., L.L.C., the Orleans Parish Sewerage and Water Board, and CSX Transportation, Inc. in an amount sufficient to compensate plaintiffs and each member of the class for all damages to which they are entitled;

4.     Declaring that the defendants are liable, to the plaintiffs and all members of the class for all damages resulting from the failure and/or breaches of the levees and/or floodwalls of the 17th Street Canal and the London Avenue Canal following the landfall of Hurricane Katrina on 29 August 2005 and thereafter; that the rights of the plaintiffs and all members of the class to establish their entitlement to compensatory damages, and the amount thereof, be reserved for determination in their individual actions when appropriate;

5.     For legal interest on all damages awarded from the date of judicial demand until paid;

6.     For all costs of this litigation; and

7.     Granting such other and further relief as is just or equitable.

Respectfully submitted,


RANDALL A. SMITH, T.A. (#2117)
STEPHEN M. WILES (#17865)
KIRK REASONOVER (#21039)
OWEN B. ST. AMANT (#25509)
OF
SMITH & FAWER, L.L.C.

201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Telecopy: (504) 525-2205
Email: rasmith@smithfawer.com

**Counsel for Plaintiffs**
Julie E. Tauzin, John M. Holahan, Paulette H.
Holahan, Riverbend Fine Wines Inc., and Michelle
M. Zornes.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing pleading has been served upon all counsel of record, via electronic mail, on this ___ day of June, 2006.

STEPHEN M. WILES