FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JUN 29 PM 3:11

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

| | | |
|---|---|---|
| **COLLEEN BERTHELOT, et al.** | * | **CASE NO.** |
| **VERSUS** | * | **NO. 05-4182** |
| **BOH BROTHERS CONSTRUCTION CO., et al.** | * | **SECTION " K "** |
| | * | **MAG. NO. "2"** |

**Pertains to 06-1885 and
MRGO and Levee cases**

* * * * * * * * * * * * * * * * *

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S <u>MOTION TO DISMISS</u>

**MAY IT PLEASE THE COURT:**

Plaintiffs respond to the Reply Memorandum filed by the Government with the following arguments:

1. The Admiralty Extension Act is "wishful thinking" by the Government, and is inapplicable to plaintiffs' claims against the United States;

2. Judge Berrigan's May 24, 2006 Order in Civil Action No. 05-4419 is not binding on this Court, was wrongly decided, and is on appeal; and

3. Plaintiffs' Memorandum in Opposition to the Government's Motion to Dismiss was filed and/or served 2 ½ hours late, so the Court should order that counsel be shot.

-1-

I.  **THE ADMIRALTY EXTENSION ACT IS "WISHFUL THINKING" BY THE GOVERNMENT, AND IS INAPPLICABLE TO PLAINTIFFS' CLAIMS AGAINST THE UNITED STATES**

Nowhere in plaintiffs' jurisdictional allegations do they anywhere invoke the provisions of the Admiralty Extension Act (46 U.S.C. §740). Rather, the basis for the plaintiffs' invocation of admiralty and maritime jurisdiction is 33 U.S.C. §1333(1). The Government's waiver of sovereign immunity is invoked pursuant to the Suits in Admiralty Act (46 U.S.C. §741, et seq.). Again, nowhere in plaintiffs' Complaint, as supplemented and amended, is the Admiralty Extension Act mentioned in any way, shape or form. See Complaint, Article V, pp. 4-6.

Nevertheless, the Government makes the statement in its Reply Memorandum, that "The only avenue through which the plaintiffs could conceivably invoke admiralty jurisdiction would be pursuant to the extension of Admiralty Jurisdiction Act (or, Admiralty Extension Act, "AEA"), because the damage suffered by the plaintiffs occurred on land as opposed to on a vessel or on navigable waters." Government Reply Memorandum, p. 5. This is incorrect statement by the Government, because the plaintiffs have already demonstrated that the torts in this case occurred, i.e., the place where the wrongs had their impact, "on, in and under" navigable waters. Because the torts occurred on navigable waters, then the only remaining questions for the Court to answer affirmatively in order to exercise admiralty and maritime jurisdiction are: (1) whether the incident(s) had a potentially disruptive impact on maritime commerce, and (2) whether the general character of the activities giving rise to the incident(s) showed a substantial relationship to traditional maritime activity. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 115 S.Ct. 1043 (1995) and cases cited therein.

Plaintiffs already have argued that the navigable waterway system which they claim was improvidently designed, constructed, operated and maintained, was built by the act of dredging from vessels in navigation. Thereafter, the operation and maintenance of the navigable waterway system was accomplished by means of dredging activities to the tune of over $15 million annually. Indeed, the very wetlands, whose loss plaintiffs maintain was contributed to because of dredging, and whose loss increased the damage suffered by plaintiffs in KATRINA, were "navigable waters of the United States". 33 CFR 329.12(a)(2) and (b) provide, in pertinent part, as follows:

> (2) *Shoreward limit of jurisdiction.* Regulatory jurisdiction in coastal areas extends to the line on the shore reached by the plane of the mean (average) high water. Where precise determination of the actual location of the line becomes necessary, it must be established by survey with reference to the available tidal datum, preferably averaged over a period of 18.6 years. Less precise methods, such as observation of the "apparent shoreline" which is determined by reference to physical markings, lines of vegetation, may be used only where an estimate is needed of the line reached by the mean high water.
>
> (b) *Bays and estuaries.* Regulatory jurisdiction extends to the entire surface and bed of all waterbodies subject to the edge (as determined by paragraph (a)(2) of this section) of all such waterbodies, even though portions of the waterbody may be extremely shallow, or obstructed by shoals, vegetation, or other barriers. Marshlands and

> similar areas are thus considered "navigable in law," but only so far as the area is subject to inundation by the mean high waters. The relevant test is therefore the presence of the mean high tidal waters, and not the general test described above, which generally applies to inland rivers and lakes.

Thus, plaintiffs respectfully submit that it cannot reasonably be argued that the torts in this case occurred anywhere but on navigable waters.

The Admiralty Extension Act provides that "[A]dmiralty jurisdiction in tort cases extends to all cases of damage or injury to person or property caused by a vessel on navigable water, even though such damage or injury is done or consummated on land." However, the Act, by its very terms, where applicable to the United States, applies only to situations in which an agency of the Federal Government owns or operates the vessel causing the injury or damage. The statute specifically provides

> *Provided.* That as to any suit against the Untied States for damage or injury done or consummated on land by a vessel on navigable waters, the Public Vessels Act or Suits in Admiralty Act, as appropriate, shall constitute the exclusive remedy for all causes of action arising after June 19, 1948, and for all causes of action where suit has not been hitherto filed under the Federal Tort Claims Act: *Provided further*, That no suit be filed against the United States until there shall have expired a period of six months after the claim has been presented in writing to the Federal agency owning or operating the vessel causing the injury or damage.

Although plaintiffs' Complaint alleges negligence in the Government's conducting of a traditional maritime activity, namely dredging, no specific dredge is identified, and no actual ownership or operation of a dredge by the United States of America is alleged in the Complaint, although the dredging complained of was ordered and directed by the U.S. Army Corps of Engineers. However, wishing the Admiralty Extension Act to be applicable to this case, and wishing its administrative claims requirement are also applicable, does not make it so.

Plaintiffs respectfully submit that the concession by the Government that, "The only avenue through which plaintiffs could conceivably invoke admiralty jurisdiction would be pursuant to the extension of Admiralty Jurisdiction Act . . . " should be treated as an admission that admiralty jurisdiction is applicable to the claims asserted in this case under the Suits in Admiralty Act.

## II. JUDGE BERRIGAN'S MAY 24, 2006 ORDER IN CIVIL ACTION NO. 05-4419 IS NOT BINDING ON THE COURT, WAS WRONGLY DECIDED, AND IS ONAPPEAL

The first portion of Judge Berrigan's May 24, 2006 Order which is assailed by plaintiffs in the context of the pending motion in this case appears at pages 4 and 5, and more particularly, is comprised of the following:

> It is undisputed that the damages alleged in this case occurred on land, satisfying the AEA requirement that the "damage or injury be done or consummated on land." However, the caselaw makes clear that the AEA only applies when the injury was caused "by a vessel" and "her appurtenances." Egorov, et al v. Terriberry, Carroll, et al., 183 F.3d 453, 456 (5th Cir. 1999). The AEA contains an explicit administrative

>           exhaustion requirement that mirrors that of the FTCA.   (emphasis
>   supplied).

It is respectfully submitted that Judge Berrigan misstated the law. In fact, the AEA provides as follows:

> *"Provided further,* That no suit shall be filed against the United States until there shall have expired a period of six months after the claim has been presented in writing to the Federal agency owning or operating the vessel causing the injury or damage." 46 U.S.C. §740.

Thus, rather than supporting Judge Berrigan's view that the AEA contains an explicit administrative exhaustion requirement that mirrors that of the FTCA, the AEA only requires the presentation of an administrative claim as a prerequisite to filing suit when an agency of the Government owns or operates the damage or injury causing vessel. The United States did not own or operate the vessel in Civil Action No. 05-4419 and, therefore, Judge Berrigan's decision is not binding on this Court in this case. And, once again, no specific allegations have been made against vessels owned or operated by the United States of America in this case.

Further, even if a Pubic Vessel was somehow shown to be involved in the dredging of the MRGO and tributaries, then the Government's waiver of sovereign immunity would be found not in the Admiralty Extension Act, but in the Public Vessel Act (46 U.S.C. §781, et seq.), which, like the Suits in Admiralty Act, does not have any administrative claims requirement as a prerequisite to filing suit.

Judge Berrigan's Order in Civil Action No. 05-4419 is wrong for other reasons, and should not be followed by this Court. Judge Berrigan concluded at page 12 of her Order:

> "Thus, the potentially maritime flavor of the structures involved in this accident is insufficient, by itself, to give this Court admiralty jurisdiction over non-barge related claims."

Preliminarily, it is to be noted that Judge Berrigan's Order has been appealed to the Fifth Circuit. Accordingly, we will soon know whether Judge Berrigan is correct, or whether plaintiffs are correct, in stating the law.

Judge Berrigan seems to have concluded that the first part of the Grubart test, i.e., the locality of the tort, was on navigable waters, because on page 8 of her Order she launches into the second part of the Grubart analysis, concluding ". . . the claimants have failed to show a "substantial relationship to traditional maritime activity". Judge Berrigan's Order, p. 8.

Judge Berrigan then performs into an analysis of "the general purpose for which admiralty jurisdiction exists", but concludes that the design, construction, operation and maintenance of an entire navigable waterway system does not qualify as part of the "business of shipping", which even Judge Berrigan concedes is "at the heart of maritime law and admiralty jurisdiction". Judge Berrigan's Order, pp. 8-9. Judge Berrigan then explores the purpose of the levees and retaining wall structures, but ignores why they are necessary, how they were built, and their relationship to the navigable waterway system which doomed their failure, which was created by and enlarged as a result of dredging activity conducted on navigable waters by vessels, namely dredges. Thus, Judge

Berrigan incorrectly, and unnecessarily, limited her focus to the "structures involved", without addressing what constant dredging had done to limit the effectiveness of those structure since the navigable waterway system was built.

In short, by focusing only on the structures, rather than on dredging and related maritime activity, Judge Berrigan limited her ability to fully understand plaintiffs' argument for admiralty and maritime jurisdiction, not only in her case, but in this case as well.

Lastly, Judge Berrigan's conclusions about whether plaintiffs presented the Corps of Engineers with the functional equivalents of administration claims seem to have been result-oriented, and were not well-reasoned.

### III. PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS WAS FILED AND/OR SERVED 2 ½ HOURS LATE, SO SHOOT PLAINTIFFS' COUNSEL

Yes, undersigned counsel for plaintiffs was approximately 2 ½ hours late filing and serving Plaintiffs' Memorandum in Opposition to the Government's Motion to Dismiss. Both Your Honor and his Law Clerk were out of town all week, and the undersigned simply has no excuse for being late other than the fact that he and his Staff did the best they could, but were late. However, they do maintain that they properly served the United States electronically at 2:29 p.m. on June 22, 2006, see the attached Exhibit 1. Rather than the Court not consider Plaintiffs' Memorandum in Opposition to the Government's Motion to Dismiss, it is respectfully submitted that a much more appropriate remedy would be summary execution of counsel by firing squad, which the Court should order forthwith.

For the foregoing reasons and for the reasons expressed in plaintiffs' original Memorandum in Opposition to the Government's Motion to Dismiss, it is respectfully submitted that the Government's Motion to Dismiss should be denied.

Respectfully submitted,

**LAW OFFICES OF**
**ASHTON R. O'DWYER, JR.**
Counsel for Plaintiffs

By: _____
Ashton R. O'Dwyer, Jr.
**In Proper Person**
**Bar No. 10166**
**One Canal Place**
**365 Canal Street**
**Suite 2670**
**New Orleans, LA 70130**
**Telephone: (504) 561-6561**
**Facsimile: (504) 561-6560**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via E-mail this 27th day of June 2006.

## Ashton O'Dwyer

**From:** Ashton O'Dwyer [arod@odwyerlaw.com]
**Sent:** Thursday, June 22, 2006 2:29 PM
**To:** 'tess.finnegan@usdoj.gov'; 'traci.colquette@usdoj.gov'; 'robin.doyle.smith@usdoj.gov'
**Cc:** 'storres@torres-law.com'; 'rcreely@aol.com'; 'ROBBECNEL@aol.com'; 'hhoffmann@spsr-law.com'; 'mriess@kingsmillriess.com'; 'tbrennan@dkslaw.com'; 'rtyler@joneswalker.com'; 'tdarling@grhg.net'; 'tgaudry@grhg.net'; 'wtreeby@stonepigman.com'; 'tanzelmo@mcsalaw.com'; 'jpate@ln-law.com'; 'rhubbard@lawla.com'; 'jguichet@lawla.com'; 'gsimno@swbno.org'; 'wlanglois@grhg.net'; 'jlandis@stonepigman.com'; 'bmayeaux@ln-law.com'; 'jpate@ln-law.com'; 'gardner@bayoulaw.com'; 'dearie@bayoulaw.com'; 'gvarga@rc.com'; 'wlee@stonepigman.com'; 'Abramson@phelps.com'; 'jvdirosa@cityofno.com'; 'pmfields@cityofno.com'; 'jbarrasso@barrassousdin.com'; 'lduplass@duplass.com'; 'kellerm@ag.state.la.us'; 'belhiamartin@bellsouth.net'; 'jamesmullaly1@hotmail.com'; 'waaron@goinsaaron.com'; 'ctankersley@burglass.com'; 'dphayer@burglass.com'; 'jmcevoy@jonesday.com'; 'martin4@mdjwlaw.com'; 'cseemann@dkslaw.com'; 'gtmanning@jonesday.com'; 'agreene@sonnenschein.com'; 'dbecnel@becnellaw.com'; 'dollyno@aol.com'; 'rgharvey@bellsouth.net'; 'hlambert@lambertandnelson.com'; 'rgp@rgplaw.com'; 'wimberly@nternet.com'; 'jbruno@brunobrunolaw.com'; 'DAVID@brunobrunolaw.com'; 'dmartin@gainsben.com'; 'khadican@gainsben.com'; 'rasmith3@bellsouth.net'; 'kreasonover@smithfawer.com'; 'tdavis2@cableone.net'; 'ostamant@bellsouth.net'; 'smwiles@smithfawer.com'; 'fswarr@landryswarr.com'; 'mlandry@landryswarr.com'; 'calvinfayard@fayardlaw.com'; 'gmckernan@mckernanlawfirm.com'
**Subject:** Berthelot, et al. vs. Boh Bros., et al.
**Attachments:** Finnegan Ltr. 28.doc; PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS.pdf; REQUEST FOR ORAL ARGUMENT (GOV.).pdf; AFFIDAVIT OF AROD.doc; text2 007.jpg; text2 008.jpg; text2 009.jpg; text2 010.jpg; text2 011.jpg; text2 015.jpg; text2 016.jpg; text2 017.jpg; text2 019.jpg; text2 020.jpg; text2 021.jpg

**Ashton R. O'Dwyer, Jr.**
Law Offices of Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
AROD@odwyerlaw.com

6/27/2006