UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, ET AL, | * | Civil Action |
| | * | No. 05-4182 |
|     Plaintiffs, | * | |
| | * | Section "K" |
|       v. | * | |
| | * | New Orleans, Louisiana |
| BOH BROTHERS CONSTRUCTION | * | June 28, 2006 |
| COMPANY, LLC, ET AL, | * | |
| | * | |
|     Defendants. | * | |

* * * * * * * * * * * * * * *

HEARING ON MOTION TO SEVER,
BEFORE THE HONORABLE STANWOOD R. DUVAL, JR.,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiffs:              Bruno & Bruno
                             By:  JOSEPH M. BRUNO, ESQ.
                             855 Baronne Street
                             New Orleans, Louisiana 70113

                             Fayard & Honeycutt
                             By:  CALVIN C. FAYARD, ESQ.
                             519 Florida Boulevard
                             Denham Springs, Louisiana
                             7072670113

For Allstate Indemnity:      Barrasso, Usdin, Kupperman
                              Freeman & Sarver
                             By:  JUDY Y. BARRASSO, ESQ.
                             909 Poydras St., Ste. 1800
                             New Orleans, Louisiana 70112

2

```
APPEARANCES: (Cont'd)


For State Farm Insurance:     Stone, Pigman, Walther, Wittmann
                              By:  WAYNE J. LEE, ESQ.
                              546 Carondelet Street
                              New Orleans, Louisiana 70130


Court Audio Operator:         Bonnie G. Hebert

Transcriptionist:             Dorothy Bourgeois
                              c/o U.S. District Court
                              500 Poydras Street, Room C151
                              New Orleans, Louisiana 70130
                              (504) 589-7721
```

Proceedings recorded by electronic sound recording,

transcript produced by transcription service.

1                    **P R O C E E D I N G S**

2                   (Wednesday, June 28, 2006)

3                  (Call to Order of the Court)

4                  (Matter is called by Clerk)

5          THE COURT:  You may proceed.

6          MS. BARRASSO:  Judy Barrasso for Allstate Indemnity,

7    and we're here on our long awaited Motion to Sever or to de-

8    consolidate these cases.

9              Judge, what we're asking the Court to do is to take

10   the Chehardy coverage case, which is a suit by policyholders

11   against homeowner insurers and just move it out from under the

12   levee breach umbrella.

13         THE COURT:  Let me tell you why it was under the

14   levee breach umbrella.  The way we designed the umbrella -- and

15   that doesn't mean the design was perfect -- is that we put

16   aside our related cases, because I wouldn't have a lot of these

17   cases.  And, the umbrella was supposed -- what comes under

18   anything relating to a levee breach and/or the MRGO, which is

19   the combination.

20             The reason these cases, these insurance cases come

21   under the umbrella, at least as we originally thought about it,

22   was because, in the event your coverage issue is --

23             I'm sure you file a motion, whether you sever or not

24   -- you probably already have; I haven't looked.

25         MS. BARRASSO:  We did back in Baton Rouge, Judge; a

1    Motion for Judgment --

2              THE COURT:  Right.  But, we haven't set a date for it

3    here?

4              MS. BARRASSO:  No.

5              THE COURT:  Okay.  Your coverage motion, well, I'll

6    do a 54(b), and that will be that.  You won't be under any --

7    under this court or in any umbrella.  In the event you don't,

8    then because of the allegations made, it seems like, at least

9    to some degree, you would be involved in some discovery

10   relating to what caused the myriad of problems we had in

11   New Orleans, and if those causes relate to any allegations, it

12   might trigger coverage under your policy.

13             This is if you do not succeed in your Rule 12 motion,

14   and we need to set a date for that.  I know we have a minute

15   entry on that.

16             MS. BARRASSO:  There's a schedule now.

17             THE COURT:  Right.  So, we wouldn't have separate

18   discovery going on with the levee breaches in this case, which

19   you, of course, hope and adamantly insist that we should never

20   get to, which I understand.  And, we may not.  I haven't ruled

21   on the motions.

22             So, if we do, there may be -- we're just trying to

23   manage the discovery.  I can tell you for trial purposes this

24   will not be tried -- what our ultimate plan is, is that once I

25   unravel everything and we have discovery going, then we're

1    going to have -- once we've vetted it for trial purposes,

2    disposed of the motions, assuming there is a trial, then we're

3    going to properly parcel those out.  I'll keep some, and to the

4    Judges who are not vulnerable to recusal, we will --

5            At least as the Fifth Circuit has spoken as of now; I

6    know there's a motion for a rehearing.

7            -- then we intend to try to have an intelligent

8    grouping at trial.  And, this would not be in the grouping of

9    trials with the others.  At least I don't see that.  It would

10   be unfair to your client.

11           MS. BARRASSO:  Judge, we realize that at first flush

12   that that's what happened when this case came to here from

13   Baton Rouge.  You know, there was an argument that had been

14   made that one of the causes of the flooding was the levee

15   breach and, therefore, it somehow as intertwined with the

16   coverage issue.

17           But, under that theory, Judge, then all the cases

18   that are out there -- I mean, there's cases in other divisions

19   here alleging the oil companies caused the storm surge, caused

20   the levee breach, because -- this is the one that's in

21   Judge Vance's court, I'm sure she'd be happy to send it over

22   here, but it's a case against the oil companies that claims

23   that their dredging and drilling in the wetland area caused the

24   storm -- you know, eroded the wetlands, caused the storm surge

25   to be greater, caused the flooding, damaged everybody.

1        THE COURT:  Doesn't the discovery in this case,

2  Ms. Barrasso, -- and, again, if you win your motion, this is

3  all for naught, but isn't there a specific allegation?  Because

4  I do definitely have the breaches of the 17th, the London,

5  Industrial and the MRGO.  If we get past Rule 12 --

6        And, there's an argument that, well, this was a

7  covered peril.

8        -- then that discovery becomes -- at least to some

9  degree, you can decide what discovery you go through and what

10 you didn't, and we can figure all that out.  But, it seems like

11 the discovery would be somewhat overlapping.

12        MS. BARRASSO:  And, let me tell you, Judge, why we

13 don't think that's true.  I mean, this case is just like you

14 realized in the Vanderbrook case, the suit against the

15 homeowners and Levee Board, and you severed those and noted

16 that --

17        THE COURT:  That Levee Board suit was failure to

18 maintain.

19        MS. BARRASSO:  Okay.  And that's in here, too.  I

20 mean, that's what they allege that the cause of the levee

21 breach was, a defective design, construction or maintenance.

22 And, we have an exclusion for that, but I don't to get to that.

23        But, they're just different claims.  I mean, this is

24 a coverage case, a contract interpretation case.  If there's

25 discovery -- I mean, we feel if we don't get past the 12(b)s,

1    which we think we will, then the issue is going to be, really,

2    the contract interpretation, like it is in any coverage case,

3    and not really the cause of the flooding.

4            And, again, --

5            THE COURT:  As an example, if the flooding were

6    caused -- if we find that it was --

7            This is hypothetic.

8            MS. BARRASSO:  Sure.

9            THE COURT:  If we find that the flooding was

10   inexorable, that is, it wasn't a design flaw, it wasn't

11   maintenance, it simply was a force of nature, then, although

12   you might have coverage if it were --

13           I'm telling you what your opponents have alleged.

14           -- if it were an act of man, let's say, -- based on

15   their briefing -- then that might be a factual issue, which

16   would, perhaps, find coverage.  Whereas, if it really wasn't

17   negligence or an occurrence under the policy -- certainly a

18   force of nature, perhaps -- it might not be.  And, you know, I

19   may be all "wet" on that.  I hate to use the word "wet," but

20   I'm ruminating.

21           MS. BARRASSO:  I understand.  And, Judge, we have an

22   exclusion.  I mean this is something that was briefed long ago.

23   We have an exclusion for damage caused by --

24           THE COURT:  Again, if you win your exclusion, this is

25   moot.

1          MS. BARRASSO:  Well, I mean, we have an exclusion for

2    negligence, defective design and maintenance.  We have the

3    flood exclusion.  We have exclusion --

4          THE COURT:  Like I say, if you win your exclusion,

5    we'll let the Fifth Circuit deal with it.

6          MS. BARRASSO:  I understand.  And, again, the issues

7    are different and I know they've made those pleadings, but just

8    like, you know, again, the suit against the oil companies; I

9    mean, that's arguably negligence of third parties that caused

10   the flooding.  And, do we need to be running over there in that

11   case, too?

12         And the answer is:  No.  Again, because this case

13   ultimately turns on interpretation of the policies and what the

14   exclusions say, and not who caused the levee breach and what

15   caused it.

16         And, if you'll notice in this case it originally

17   started out asserting claims that the flood exclusion is not

18   enforceable and that the damage was caused by wind or the levee

19   breach; negligence by somebody.

20         It's been amended to even now add claims that further

21   take it away.

22         THE COURT:  Well, I know the <u>Sullivan</u> -- I call it

23   the <u>Sullivan</u>-type claim and the storm surge.

24         MS. BARRASSO:  Correct.  And claims handling

25   practices are now being alleged, you know, claims that we've

1   improperly adjusted the claims; all of which are insurance-type

2   adjustment, you know, issues that come up in coverage cases,

3   but, again, don't have anything to do with the Levee Board

4   cases.

5           And, you know, in our suit, <u>Chehardy</u>, the Defendants

6   are only homeowner insurers.  There's nobody that had anything

7   to do with the levees, and no insurer for any of those people.

8   So, they truly are separate suits.

9           Again, Judge, and the reason that it's kind of been

10  my mantra to just try to separate it is because it is

11  prejudicial.  I mean, first of all, we don't think there's

12  common questions of law and fact.  I mean, again, the legal

13  issues are how you interpret the policies, and we don't feel

14  that you get to the issue of causation and the levees; that

15  ultimately what you'll be involved in is interpreting the

16  policies.

17          And, there may be discovery on that, if we lose our

18  motions -- you know, what's the party's intent -- but not

19  what's involved in the levee breach cases.

20          And, the prejudice comes in several ways:  One,

21  incredible delay.  I mean through no fault of this Court, which

22  is doing a fabulous job of trying to handle this huge, towering

23  mass of litigation, but --

24          THE COURT:  I noticed the "towering mass" in your

25  brief.  I think that's an apt description, I've got to say.

1   But, go ahead.

2            MS. BARRASSO:  I do, too, Judge.

3            THE COURT:  Maybe a leaning towering mass.  But, go

4   ahead.

5            MS. BARRASSO:  It's probably towering better than the

6   levees themselves.  You know, that's the problem.  It hopefully

7   won't sink.

8            And, there's so much to do in those cases, which

9   we're not involved in at all.  And so, for us, I mean, you

10  know, we've been asked as Defendants to share, for example, in

11  preservation of evidence, which, you know, we're Defendants in

12  this consolidated cases, but our clients don't feel we have

13  anything to do with that.

14           We're trying to do our job.  We're trying to read all

15  those e-mails that come out every day, and there's many of

16  them.  And, I know we've talked about pushing some aside.  But,

17  you have to read them.  I mean, truthfully, Judge, I missed the

18  fact that oral argument was set here, because I didn't read

19  each and every thing.  And, again, it just would simplify our

20  cases, which we think are more simple and just not bogged down

21  in this.

22           And, if you put the cases side-by-side, they're just

23  different.  In this case, Chehardy is no more like the levee

24  breach cases than it is like the case in Judge Vance's court.

25           And, Judge, I want to point out there was an attempt

1   in Mississippi, in <u>Culmer</u> case that Judge Senter had.  In that

2   suit, plaintiff sued oil companies, insurance companies,

3   mortgage lenders, asserting some of the same theories.  The oil

4   companies there caused global warming, which causes storm

5   surge, and here are the insurance companies.

6           And, Judge Senter there, on his own motion, separated

7   them.

8           THE COURT:  Well, you do have embedded in a footnote,

9   which I'm not directing myself to today, whether the insurance

10  companies are properly joined.  That's not the basis of

11  anything I do today.  You may urge that in the event you don't

12  prevail on your Rule 12.  I don't know, --

13          MS. BARRASSO:  No, --

14          THE COURT:  -- you're probably going to urge a lot of

15  things.

16          MS. BARRASSO:  And, we agree, Judge.  I mean, that

17  argument is because we each have separate policies, and you'll

18  see, as you have to read them all, they're different.  And,

19  that's why, Judge, --

20          THE COURT:  That may be for another day, regardless

21  of whether I sever or not.  As I understand your motion, that

22  is not squarely put before me today.

23          MS. BARRASSO:  We're taking baby steps.

24          THE COURT:  All right.  Which I appreciate.  I

25  appreciate it.

1        MS. BARRASSO:  And so, you know, our objective here

2   today was to just move us over here --

3        THE COURT:  Right.  I understand.

4        MS. BARRASSO:  -- and we would be our own cases going

5   forward, and we don't believe that we need to be -- there's no

6   overlapping evidence, Judge, and we don't believe that there's

7   ever -- even if we lose, I mean, there's just no reason for us

8   to be involved in figuring out what caused the levees, which

9   could go on for years.

10        And, truthfully, Judge, I mean, it's kind of ironic,

11   particularly for this suit, because Chehardy was filed

12   September 15th, and if you go back and look at the petition,

13   one of things they pray for is expedited treatment:  We need to

14   get this case resolved to help the property owners of

15   Louisiana.

16        And, we didn't disagree.  I mean, we immediately

17   filed our motion:  Let's get it resolved.  Let's get it to the

18   Fifth Circuit.

19         And now there's been a complete 360:  Let's don't

20   get it resolved.  Let's drag it out for years.

21        And meanwhile, Judge, these issues are marching

22   forward in plenty of other cases -- in this court, in state

23   courts around Louisiana -- that are not tied to this case.  So,

24   it doesn't make any sense, truthfully, to keep this one case

25   here, because some of the Plaintiffs' lawyers may overlap, when

1    the issue is going to be resolved --

2              THE COURT:  Well, what may happen --

3              And this is, again, for another day, and it doesn't

4    have a lot to do with this motion.

5              -- if I were, say, to rule in your favor, I would

6    54(b).  If I were to rule against you, I might 1292.  So, you

7    won't be lagging behind, because I know there's a lot of other

8    things going up.  I'm not sure of all of them, but there are

9    other things going up to the Fifth Circuit that could impact

10   your client's rights.

11             MS. BARRASSO:  Correct, and there's also the issue --

12             THE COURT:  And everybody's rights.  So, my intent is

13   -- so there's going to be a little delay there, and it's a

14   question of whether we stay anything else.  We'll have to

15   figure those out as they go along.

16             MS. BARRASSO:  And, when we were back in Baton Rouge,

17   that was one of the things we said to Judge Polozola right off

18   the bat, we would like that.  We agree that we should be trying

19   to resolve this expeditiously.  Let's get it resolved and take

20   it to the Fifth Circuit.  And we're now almost a year later.

21             And again, meanwhile, it is being resolved in other

22   courts.  I mean, the Levee Board, of course, has now gone back

23   to state court, so some issues are going to be resolved there.

24             So, there's just no need to try to keep this all

25   corralled here, and we could be resolving this case more

14

1   expeditiously, efficiently and properly, because it's just not

2   involving common issues.

3             THE COURT:  Thank you, ma'am.

4             MS. BARRASSO:  Thank you, Judge.

5             MR. FAYARD:  Good morning, Your Honor.

6             THE COURT:  Good morning, sir.

7             MR. FAYARD:  At the outset, I'd like to apologize on

8   behalf of Mr. John Hillison, who was designated to argue this

9   today, but had an unavoidable conflict arise, and therefore,

10  instead of seeking a continuance, he sent in the second, third

11  and fourth string.

12            THE COURT:  I'll duly note that, Mr. Fayard.

13            MR. FAYARD:  I promised I would send a message to the

14  Court that we do consider this to be a very important motion.

15            As a matter of fact, it goes to the heart of what

16  this Court has tried to do, up to this point, and that is to

17  organize or corral this litigation.  It's going to be corralled

18  somewhere.  Right now, there are a renegades running around in

19  various courts.

20            However, I'd like to call the Court's attention to

21  the stage and point out the stage as it is set today, the stage

22  of these proceedings.

23            Number one, this suit was originally filed in state

24  court.  The Defendants removed it to federal court -- not the

25  Eastern District, but the Middle District.  That court

1    transferred it to the Eastern District.

2              When it landed in the Eastern District, it found its

3    way to Your Honor's court.  This was at the instance of the

4    Defendants, so no prejudice, to that point.  From the time that

5    they removed the case from state court, until the time it wound

6    up here, there is absolutely no prejudice to the Defendants.

7              Now, when it was allotted to this Court -- and,

8    again, those actions were by choice of the Defendants -- this

9    Court focused on organization first.  In your initial

10   conference, you came out and said, "We've got to organize this

11   litigation," and there were a number of cases that had fallen

12   to you at that time; Chehardy was on its way.

13             And, this is what you did:  You issued an Order on

14   April the 6th -- I believe it was the 6th; it may have been 16th

15   -- consolidating that actions, and you listed them, for pre-

16   trial purposes only.  No prejudice, Judge.  As of April of this

17   year, absolutely no prejudice to these Defendants.

18             You appointed scribes.  You then considered

19   submissions.  You considered the same submissions made by the

20   Defendants then as you are doing now.

21             You then appointed liaison counsel and committees.

22   You have an insurance liaison counsel.

23             Now, no prejudice, Judge, as of May the 10th when

24   they filed what they consider to be a Motion to Sever.

25             So, they have shown no prejudice and can not.

1          Now, let's talk about the fact that we were given and

2    the Plaintiffs have filed amendments and supplemental

3    pleadings.  And, thereafter, this Court did one other thing.

4    On June the 15th, this Court issued an Order establishing four

5    sub-groups.  One of the sub-groups is insurance.  That's not

6    for trial purposes, that's for pre-trial administration.

7          You then ordered, on that date, and suggested CMOs

8    for the purposes of pleadings and notification to move forward.

9    Liaison counsel Joe Bruno gave you a report, and I think

10   Mr. Hubbard gave you a report on that date.

11         So, what is the complaint here?  The Defendants say:

12   Delay.

13         It probably could have been handled expeditiously in

14   state court in Baton Rouge, but their choice, they chose to

15   remove it to federal court and this is where we are.  We've

16   accepted that.

17         They say they've been asked to share in costs.

18         Just say no.  We didn't ask them.

19         They say, well, e-mails, I've got to read the

20   e-mails.

21         Don't read them.

22         The Court is moving to set up an administrative

23   procedure for handling this litigation that designates

24   insurance matters over here.  Look at the courtroom today.  The

25   only parties of interest here are the parties that have

1   interest in <u>Chehardy</u>.  The other Defendants and the other

2   Plaintiffs' lawyers are not here.

3          That's the way we envision this litigation will move

4   forward.  You will have hearings on levee, you will have

5   hearings on MRGO, you will have hearings on the first responder

6   cases and you will have hearings on insurance -- hopefully

7   scheduled on the same day in order to convenience the attorneys

8   on both Plaintiff and Defense side.  But give times, and if no

9   one wants to sit at those hearings and listen to the arguments

10  that don't pertain to their particular interest, then fine.

11         Now, simplification.  Is it simpler to have suits

12  scattered throughout a district or throughout a series of

13  districts and throughout different jurisdictions, than to have

14  them under one umbrella?  And, when you read our pleadings --

15  and it's uncontested -- our pleadings do allege a common issue

16  of fact and we allege common issues of law that may overlap

17  these other matters that are before the Court at this time.

18         So, what are the Defendants trying to do?

19  Essentially, they've already got a severance under your

20  umbrella.  They have a severance and the Court has stated that

21  it's going to look at it, for purposes of trial.  This is pre-

22  trial.  They're before this Court, the same Judge, and they

23  have been removed by the groupings from all the other things

24  that they're complaining about.

25         So, what are they trying to do?  What's the purpose

1    of this?

2          We feel that the Defendants are attempting to employ

3    a Motion in Limine, or to use this as a vehicle for a Motion

4    for Summary Judgment, which is inappropriate, Judge.  That's

5    going to come -- that lies ahead.

6          And, what else lies ahead?

7          You will "tweak" and define the sub-groups.  You will

8    enter into or order a Case Management Order.  You will set up a

9    discovery schedule or a scheduling order.  You will allow

10   additional pleadings and motions to be filed.  And, you will

11   have hearings on things like summary judgment, motion to

12   dismiss on the pleadings, and other matters that you, Judge,

13   pointed out earlier in your opening remarks.

14         So, what's going on here?

15         The Defendants are trying to change and re-set the

16   stage that's already been set for administering this case.

17   And, this is a motion to deconsolidate, which is frowned upon.

18   The courts across the board, appellate courts, they favor

19   consolidation of cases when the court, the district court, the

20   sitting judge, in its discretion, decides that it's convenient,

21   it's expeditious and it favors judicial economy.

22         So, what we think is:

23         Number one, this is totally pre-mature.  Perhaps they

24   already have it in the groupings, so what's the argument?  Are

25   they trying to set it aside and then transfer it to another

1   court?  I don't know.

2           If they want to transfer it to Judge Vance, just file

3   that motion.  If they want it heard somewhere else, file that

4   motion.  They've already done it before.  So, come forward and

5   be straightforward about what is trying to be accomplished

6   here.

7           This is a very extreme remedy at this junction of the

8   litigation.  We're finally getting organized, and we're moving

9   forward.  And, if we want to talk about inconsistent rulings

10  and inconsistent discovery schedules, this is a true way of

11  doing it.

12          So, Judge, we ask that we really don't need to get

13  into the merits of what the policies say.  We don't need to get

14  into the merits of what the pleadings say, because on their

15  face we have alleged sufficiently to put it before this Court

16  under your umbrella.

17          And, what you're dealing with here is an

18  administrative procedure, and we just implore this Court to

19  stay the course, do it in baby steps so we're doing it right,

20  and maybe the Fifth Circuit will see it done right and we won't

21  stay there very long at all, just as we haven't stayed there

22  very long on the Motion to Recuse.

23          THE COURT:  Thank you, sir.

24          Ms. Barrasso, would you like to follow up?

25          MS. BARRASSO:  Just a couple of comments, Judge.

1          In terms of the history, Judge, this suit was

2    originally filed in Baton Rouge state court and removed to the

3    Middle District, and remand was denied.  And, then

4    Judge Polozola transferred it here on his own motion and,

5    Judge, we did not agree to the consolidation.  It happened.

6          THE COURT:  No, it was a vortex that was created by

7    the courts.

8          MS. BARRASSO:  Sure.

9          THE COURT:  I understand that.

10          MS. BARRASSO:  And, we don't have any ulterior motive

11    to move this case to another judge.  We are just simply asking

12    that it be treated like a lot of the other cases you have, like

13    the Sullivan case, which I think you're treating out here as a

14    regular case, not tethered to this case.

15          And, as I listened to Mr. Fayard talk about it, I

16    still didn't hear --

17          THE COURT:  Just let me tell you right now -- and, of

18    course, the "baby step" point you made is very important, and I

19    intend to move in baby steps.  I wish I could take some giant

20    leaps and I will when it comes to certification.

21          But, it doesn't hinge on -- it does not appear to

22    implicate as much the levee breach.  I've had so many -- I had

23    one where the duty of the agent to divulge.  But, I regard that

24    as a little different than --

25          MS. BARRASSO:  No, I understand and I'm not

1    suggesting that Chehardy --

2              THE COURT:  Right.

3              MS. BARRASSO:  I'm just suggesting that's what we're

4    asking for, though.

5              THE COURT:  You want to be a separate category

6    outside -- you want to get out of the tent.

7              MS. BARRASSO:  Correct.

8              THE COURT:  You want your own tent.  I understand.

9              MS. BARRASSO:  Exactly.  And, you know, in all

10   deference to Mr. Fayard, we can't just ignore the e-notices

11   from the Court and not be committing malpractice.

12             And, you know, this case -- and that's not the only

13   reason, Judge.

14             THE COURT:  Speaking of that, I'm supposed to meet

15   with the systems people today --

16             This is kind of an aside from the motion.

17             But, where it's designated insurance cases, so you

18   only have to -- you can read whatever you want, but where at

19   least you know it relates to the insurance cases.

20             We have not got an order on that, yet, so that has

21   not been remedied.  We intend, at least, to attempt to do that.

22   Now, I don't know if that helps you or not.  I hope it does; --

23             MS. BARRASSO:  It certainly would help, Judge.

24             THE COURT:  -- in the event you're not severed.

25             MS. BARRASSO:  And we know that was trying to be

1   done, and I know that that was something Mr. Bruno did to try

2   to accommodate.

3           But, that's not the only reason.  I mean, and

4   Judge, --

5           THE COURT:  Of course.

6           MS. BARRASSO:  -- there is already suits scattered,

7   as I mentioned --

8           THE COURT:  You don't want to be swept up into

9   something where your client pays a lot more money and a lot

10  more time than it has to, when it's attenuated from your --

11          MS. BARRASSO:  That's right, Judge, and we didn't

12  hear one reason from Mr. Fayard as to really how they really,

13  really overlap.  Because they don't, not any more than any of

14  the other suits that are out there, including the oil suits.

15          And Judge, again, I would point to the Culmer case,

16  where Judge Senter in Mississippi had this kind of similar

17  situation and he split them all.  He not only split, in that

18  suit, again, the oil companies' insurance companies; then he

19  split each insurance company, because they're just different.

20          THE COURT:  Well, I anticipate looking at that

21  motion, as well, regardless of severance or not.

22          MS. BARRASSO:  I understand.  Thank you, Judge.

23          MR. BRUNO:  Judge, may I be heard for just a moment?

24          THE COURT:  Yes, sir.  Go ahead.  Is it on the motion

25  or is it something else?

```
 1              MR. BRUNO:  On the motion, and a quick report on

 2   the --

 3              THE COURT:  I'm going to give Ms. Barrasso the last

 4   word --

 5              MR. BRUNO:  Oh, sure; of course.

 6              THE COURT:  -- since she filed it, okay.

 7              MR. BRUNO:  Ms. Barrasso always has the last word.

 8              THE COURT:  I'm not sure about that, but certainly

 9   she will --

10              MR. BRUNO:  Trust me; I know.

11              THE COURT:  -- today.

12              MR. BRUNO:  I know Judy.

13              THE COURT:  She will today.

14              Go ahead.

15              MR. BRUNO:  Thank you, Judge.  Thank you for giving

16   us an opportunity to orally argue today.  We appreciate it.

17              Judge, first of all, --

18              And, I'm saying things that you already know.

19              -- this is a procedural issue.  There are no

20   substantive issues of law here.  This is a management issue,

21   and it is a management issue that is critical to my role as

22   liaison counsel.

23              Let me give you a small example.  The Vanderbrook

24   case is presently pending under the umbrella.  It's within the

25   insurance umbrella.  Oppositions to Rule 12 motions are due
```

1    tomorrow.  In my capacity, I phoned counsel in that case and I

2    thought I'd just simply discussion his opposition, whether it

3    was prepared, so on and so forth.  In the course of the

4    conversation, I learned and he learned about a whole bunch of

5    arguments that he hadn't contemplated making.  And, as a

6    result, the Chehardy group will be filing *amicus* briefs to

7    support him.  He's now on the same page with us with regard, at

8    least, to the argument.

9            Now, why is that significant?

10           It's extraordinarily significant because what the

11   Defendants are really trying to do is they would love to have

12   individual cases all over the universe, because that multiplies

13   the potential for inconsistent rulings on these issues.  And,

14   that is a very, very critical issue, obviously, for the

15   Plaintiffs' bar.

16           It should be an important issue for this Court, and

17   that is because, Judge, in two months the one year is up.  And

18   I don't want to frighten you or your staff, but here is the

19   reality:

20           The reality is that these guys are going to remove

21   every case to this court.  There are going to be hundreds,

22   thousands perhaps, lawsuits filed against their insurance

23   companies.

24           THE COURT:  Certainly the flood insurers.

25           MR. BRUNO:  Certainly the flood.  And, here's the

1    more important issue for the Court to consider:  A lawyer is

2    bound to include all of the causes of action that may be

3    exigent in one cause of action.  Any lawyer worth his salt is

4    going to have to suggest that this exclusion doesn't apply.

5            And, by the way, of the 30 or 40 policies that I've

6    read, only one has specific language which excludes levee

7    breaks.  Only one.  Now, whatever that means, I don't know.

8            Every one of these cases is going to have to include

9    claims with regard to valued policy.  Every one of them is

10   going to have to include claims for mishandling of adjusters,

11   et cetera, et cetera.

12           Now, what does that mean?  It does not mean that they

13   should be tried at one time.  It doesn't mean that they should

14   be consolidated for trial.  Of course not.

15           It means, though, that this Court, doing the best job

16   that it can, should employ some management to this whole

17   process.  And, what you have done is employ a management device

18   which takes into consideration these numbers.  And, your words

19   just a few moments ago takes into consideration that fact that

20   ultimately there may need to be individual trials at some

21   future date -- and that's fine.  We respect that.

22           But, in the meantime, for your mental stability, for

23   our mental stability, and most importantly to make absolutely

24   certain, one, that in this monumentally difficult issue that

25   affects everybody in this community;

1          That there would be a resolution of these issues in

2    the most intelligent, in the most fair manner;

3          That they be brought in such a fashion that the

4    arguments are fleshed out appropriately and fairly to both

5    sides, and;

6          That if they need to go up, they go up in a fashion

7    where the court above can review the case in its entirety.

8          That's what's really at issue here.  I was before

9    Judge Vance the other day just watching the arguments in the

10   valued policy cases, and I have to tell you that arguments made

11   by one group of lawyers were different from arguments made --

12   plaintiff lawyers in the same case.  And that, Judge, is

13   extraordinarily significant to us.

14         So, I ask you to continue in this role that you've so

15   valiantly volunteered to undertake, because I think what you're

16   doing is extraordinarily important to the management of these

17   cases and, candidly, to the numbers of cases that will be

18   coming forward.  It's my pledge to you to make your job as easy

19   as I possibly can; to coordinate these things, to bring these

20   issues before you in a way that they are fully briefed; that

21   you can resolve them in a fashion that puts them in a posture

22   to be reviewed as appropriate on appeal.

23         The Vanderbrook example is the best example.  Briefs

24   due tomorrow.  The Chehardy brief is not due for 30 days.  But,

25   there should be one argument on both.

1          THE COURT:  Mr. Bruno, I think Ms. Barrasso, if I'm

2   guessing, one of her major issues is getting swept up into the

3   discovery of the others.  And, I understand that and I'm

4   sensitive to that argument.

5          She's saying:  Wait a minute.

6          She's arguing:  Why should I be thrown into all of

7   this discovery?

8          Assuming she doesn't prevail on the motion.  So, the

9   motions I'm going to decide --

10         MR. BRUNO:  Sure.

11         THE COURT:  -- and rule on.  And, if I rule in her

12  favor, I'm going to let you appeal immediately.  And, if I

13  don't rule in her favor, I'm going to consider a 1292.  But, I

14  may not stay discovery.

15         All of that is down the road.

16         MR. BRUNO:  Right.  And, all I'm saying --

17         THE COURT:  But, I think that's her main concern.

18         MR. BRUNO:  And, Judge, the last hearing I announced

19  to the group that we were going to put in place a Case

20  Management Order.  Most of the lawyers already are indicating

21  on their pleadings:  Levee, insurance or MRGO.

22         THE COURT:  And a lot of --

23         MR. BRUNO:  And that's there.  And, candidly, it's a

24  little bit remarkable, because if this case were separate,

25  Ms. Barrasso would be reading e-mails that relate only to that

1  case.

2          So, with the designation of insurance, I frankly

3  don't understand the distinction, because there's going to be,

4  in black and white, something that says:  This is an insurance

5  related motion.

6          THE COURT:  Well, the e-mails I understand, but

7  that's not going to be my driving force.  It's expense, money

8  and fairness.  And, I'm going to let her talk.  That may be a

9  little pre-mature for me to --

10         MR. BRUNO:  Right.  And, as you see in the courtroom,

11  you can show up or you can choose not to show up.  And, I think

12  that we're going to have in place a device that allows that.

13         THE COURT:  And, I'm hoping there will ultimately be

14  a different discovery protocol for the insurance.

15         MR. BRUNO:  And, it will be.

16         THE COURT:  But, however we work it out.

17         MR. BRUNO:  And, it will be.

18         Thank you, Your Honor.

19         THE COURT:  Ms. Barrasso, I told you I'd give you the

20  last word.  Mr. Lee may be getting your last word, though.

21  We're always happy to hear from Mr. Lee.

22         MR. LEE:  Thank you, Your Honor.  Wayne Lee on behalf

23  of Defendant State Farm.  And, State Farm has filed a

24  memorandum in support of this motion, and also particularly

25  because I am one of the Defendants in the Vanderbrook case,

1   which has now been brought up as one of the reasons as opposing

2   this motion.

3            THE COURT:  Just one second, Mr. Lee.  It may be an

4   error on our part, but we don't have the State Farm memorandum

5   in support of the Motion to Sever.  Did we fix it for today --

6            MR. LEE:  No, Your Honor.  It was filed last week, I

7   believe on Friday.  And, it was -- the timing was such that --

8            THE COURT:  It didn't percolate its way up to me,

9   yet.

10           MR. LEE:  Up to the Court.  Well, I apologize,

11  Your Honor, that it hasn't gotten here.

12           THE COURT:  Well, who knows?  It may be -- if you

13  filed it, the Clerk's Office just --

14           MR. LEE:  Well, Your Honor, it's among the many

15  notices of filings that we've gotten confirmation that it was

16  filed.

17           THE COURT:  It just didn't get up to us, yet,

18  somehow.

19           MR. LEE:  But, I do listen with interest at

20  Mr. Bruno's comments and, you know, quite frankly they

21  highlight why this motion has been brought.  What he describes

22  is a situation where there are lots of lawsuits being filed

23  and, quite frankly, Your Honor, I found it particularly

24  humorous that he's saying that what the Defendants want is to

25  have all these lawsuits filed everywhere and every place, with

1    the potential for conflicting decisions.

2         Your Honor, we don't file any of them.  The

3    Defendants didn't file a single lawsuit on these issues.  We

4    can only respond.  And, we have not opposed the attempt to keep

5    this case in a fashion that will proceed.

6         We do feel that the case does not have any

7    relationship to the issues that are pending in the other cases.

8    And, the things that he described highlight why the insurance

9    claims and the insurance disputes are so separate.  They are

10   based upon the insurance contract.  They're based upon the

11   insurance code.  They're based upon the law as to what the

12   duties and obligations are between the insurance companies and

13   their insureds.

14        The allegation that these Defendants somehow -- that

15   the levee breaches were the result of negligence is really

16   tangential to the question of what do the policies provide and

17   how do you interpret the policies.  And, in not one of the

18   cases that has been filed against the insurance companies is

19   there any governmental agency named as a defendant, is there

20   any contractor named as a defendant, is there any engineer

21   named as a defendant, is the Army Corps of Engineers named as a

22   defendant.  There's no request for a determination of liability

23   as to anyone at all.

24        The question is:  What does your policy cover?

25        And, that's all that's there.

1          You know, interestingly enough, counsel has talked

2    about in every case you're going to have to have an allegation

3    of the value policy law claims.  Well, frankly, Your Honor, I

4    haven't seen it in this Complaint.

5          The fact that different lawyers may choose to make

6    different allegations and present different arguments in a

7    different fashion in the insurance claims don't make them any

8    different -- don't give these Plaintiffs the right to control.

9          But, we're only asking -- we understand the Court's

10   need to administer, and we're not trying to argue it.  We're

11   just simply saying, we'd like to make a baby step.  That baby

12   step is to move us over into another umbrella.  There are,

13   indeed, Your Honor -- if we look at just the Notices that come

14   about, 95, 98 percent of the filings that are being made are

15   being made by the contractors, the Plaintiffs who are not

16   Plaintiffs against any of the insurance companies, and we get

17   every Notice and we get every filing.

18          THE COURT:  Well, I'm noticing your motion was set

19   for July 12th.

20          MR. LEE:  That's in the Vanderbrook case, Your Honor,

21   I believe.

22          THE COURT:  Okay, --

23          MR. LEE:  What we filed was a memorandum in support

24   of the Allstate motion.

25          THE COURT:  Okay.

1          MR. LEE:  We didn't try to separately Notice it.

2          THE COURT:  I understand.

3          MR. LEE:  This hearing was already set.

4          THE COURT:  Okay.

5          MR. LEE:  So, Your Honor, all we're attempting to do

6    is to take that baby step and put us under a different

7    umbrella, at this juncture.

8          Thank you, Your Honor.

9          THE COURT:  Thank you, sir.

10         Okay.  First, let me say I understand the arguments

11   of both parties, and let me make it really clear that what

12   we're doing here is a moveable feat, in that I'm willing to re-

13   examine anything that I do at any time.  So, I won't be

14   offended on re-urging motions of this type in this case, as

15   time goes on.

16         Right now, I feel like the Motion to Sever is pre-

17   mature for the following reasons:

18         We set this up very broadly; not so broadly that we

19   have every case in this docket that's filed in Katrina, but

20   broadly enough to cover the primary of the levee breach cases.

21         Unquestionably, there are allegations made in the

22   Chehardy litigation that reference levee breach.  What the

23   overlap of discovery is, if any, I am not prepared to say now,

24   but it appears that there could be.  And, it may actually avail

25   itself to the interest of both parties if there is a defined,

1   incisive protocol.

2         But, the reason I say it's pre-mature is:  One, I may

3   rule in favor of the Defendants here and find that there is no

4   coverage, as pled.  That ends the matter.

5         If I make a ruling that dismisses in part and grants

6   in part some of the -- under Rule 12, then there's going to be

7   some discovery, and I intuitively feel like that discovery may

8   relate to some of the ongoing discovery with the levee

9   breaches, and we're going to have to tailor that in the future.

10  It's impossible for me to be -- I'm not pressing it.  I know

11  our mission, so I can't determine that now.

12        So I'm ruling against the Motion to Sever now for

13  those reasons, and the fact that this is simply for pre-trial

14  purposes, to try to manage this thing.

15        If I find it is not an effective management tool and

16  it's overly costly and unfair to the Defendants, I'm going to

17  sever it.  I think that call needs to be made after I rule on

18  the Motion to Dismiss and I hear articulation, clear

19  articulation from the Plaintiffs:  This is the discovery we

20  need.  This is why it relates to ongoing discovery in the levee

21  breach cases.

22        And hear the Defendants say:  It's not needed, Judge,

23  despite your erroneous ruling on the insurance policies.

24        And, then I can make a more informed decision.  Right

25  now, I do feel like it's pre-mature and I'm going to deny the

34

1   Motion to Sever and tell you that you can re-urge it at an

2   appropriate time, and I think an appropriate time might be

3   after the rulings on the Rule 12 motions.

4            And then we're going to have, of course, -- we may

5   have an improper joinder motion coming up, and we may have a --

6   I'm sure we'll have, if you get past the Rule 12, then a

7   Rule 56 motion.

8            So, I'm going to try to be very fair to you,

9   understand that, and right now I just feel like it's pre-

10  mature, so I'm going to deny the Motion to Sever.

11           MR. BRUNO:  As a practical matter, once again, Judge,

12  we've got pending the same motion in Vanderbrook.  May I

13  respectfully suggest that perhaps that motion should just be

14  deferred until --

15           THE COURT:  I don't defer anything.  Either it will

16  be withdrawn or ruled on.  And, I haven't read it.  It may be

17  different.

18           MR. BRUNO:  It's identical.

19           MR. LEE:  Your Honor, that motion is also being heard

20  on the same day as the Rule 12 motions in the Vanderbrook case,

21  I believe.

22           THE COURT:  We have not set the date for oral

23  argument.  It's going to be in the proximity, but it's not

24  going to be on the 12th.

25           MR. BRUNO:  Right.  I understand that.  You see the

1   point I'm making, and I just --

2          THE COURT:  I understand.  That's totally up to

3   counsel.  I'm not going to -- I haven't read the motion, so I'm

4   in an impossible position to rule on it now.  It's up to

5   whoever filed it.

6          Mr. Lee.

7          MR. LEE:  Your Honor, it's certainly a similar motion

8   and, as I said, we Noticed it for the same date, because that

9   was the date that was on the calendar.  So, our expectation is

10  that it would be heard at the same time, --

11         THE COURT:  Hopefully, we won't have the same oral

12  argument again, because I don't want to hear the same thing.  I

13  mean, if you want oral argument and if it's the same thing,

14  that might be a waste of time.

15         I'm interested in the Rule 12 motions a lot.

16         MR. LEE:  Well, I would expect so, Your Honor.  But,

17  I do think that there is some slight differences --

18         THE COURT:  Okay.  Well, that's your call, sir.

19  That's your call --

20         MR. LEE:  I understand you, sir, and we'll look at it

21  and --

22         THE COURT:  And, you can argue that, maybe, at the

23  same time.  We'll determine if we argue that separately on the

24  12th, but the Rule 12 we're going to set a different date for

25  oral argument; not the 12th.  As we had stated a long time ago,

1   we have to pick that date -- we're going to try to do it this

2   week -- when we hear the Rule 12 oral arguments.

3           MR. LEE:  Thank you, Your Honor.

4           MS. BARRASSO:  Thank you, Judge

5           MR. BRUNO:  Thank you, Judge.

6           MR. FAYARD:  Thank you very much.

7           THE COURT:  Okay.

8                      *   *   *   *   *

9                  (Hearing is Concluded)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **C E R T I F I C A T E**

        I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

<u>/s/Dorothy M. Bourgeois</u>             <u>7/5/06</u>
**Dorothy M. Bourgeois**               **Date**