UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, et al. | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs | ) | NO. 05-4182 |
| | ) | |
| VS. | ) | SECTION "K" (2) |
| | ) | CONS. KATRINA CANAL |
| BOH BROTHERS CONSTRUCTION CO., | ) | |
| L.L.C., et al. | ) | |
| | ) | |
| Defendants | ) | |

| THIS DOCUMENT RELATES TO: | 05-4181 | 05-6314 | 06-0020 | 06-2346 |
|---|---|---|---|---|
| LEVEE AND MRGO GROUPS | 05-4182 | 05-6324 | 06-0886 | 06-2545 |
| | 05-5237 | 05-6327 | 06-2278 | |
| | 05-6073 | 05-6359 | 06-2287 | |

**JOINT REPLY ON BEHALF OF THE ENGINEERS
TO PLAINTIFFS' OPPOSITION TO THE ENGINEERS' JOINT MOTIONS
AND
JOINT OPPOSITION ON BEHALF OF THE ENGINEERS
TO PLAINTIFFS' RULE 56(F) REQUEST**

*joint_opp_&_reply_727409_Cons_071006_tfgasa#1F.wpd*

## 1. <u>TABLE OF CONTENTS</u>

**PAGE**

1.  <u>TABLE OF CONTENTS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

2.  <u>TABLE OF AUTHORITIES</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

3.  <u>INTRODUCTION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.    ENGINEERS ARE ENTITLED TO DISMISSAL OF ALL
        NON-OPPOSING PLAINTIFFS' CLAIMS . . . . . . . . . . . . . . . . . . . . . . . 1

    II.    THE REMAINING PLAINTIFFS FAIL TO PLACE FACTS IN DISPUTE,
        THEREFORE, THESE COMPLAINTS SHOULD BE DISMISSED . . . . . 1

    III.   PLAINTIFFS WAIVED ANY RIGHT TO AMEND, AND A MASTER
        COMPLAINT COULD NOT CONTROVERT A PEREMPTIVE FACT . . . 1

    IV.   PLAINTIFFS' CANNOT SHOW AN INABILITY TO TIMELY OPPOSE
        THE MOTION AND CANNOT DEMONSTRATE A REASONABLE BASIS
        TO SUGGEST THAT DISCOVERY WILL REVEAL A TRIABLE FACT . 2

    V.    FURTHER DISCOVERY IS UNNECESSARY . . . . . . . . . . . . . . . . . . . . 3

    VI.   FRAUD SPECULATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    VII.  PEREMPTION IS RETROACTIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    VIII. PLAINTIFFS FAILED TO FULFILL ANY RULE 56 BURDENS . . . . . . . . 5

4.  <u>APPLICABLE LAW AND ARGUMENT</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    SPECULATION ABOUT FRAUD AND SUBSEQUENT KNOWLEDGE
        SHOULD NOT DELAY OR DEFEAT THE ENGINEERS MOTIONS . . . . 7

    II.    PLAINTIFFS' UNLIMITED ACCESS TO "END DATE" DOCUMENTS
        FORECLOSES ANY COLORABLE CLAIM THAT WOULD WARRANT
        ADDITIONAL DISCOVERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.    <u>Plaintiffs' Access to Paper "End Date" Records in 2005</u> . . . . . . . . 8

        B.    <u>Plaintiffs' Roadmap to Internet "End Date" Documents</u> . . . . . . . . 9

        C.    <u>The Court's Scheduling Order and the Engineers' Early</u>
            <u>Disclosure of "No Services" and "End Date" Proof</u> . . . . . . . . . . . 11

III.   PLAINTIFFS' "THEORIES" AND SPECULATION ARE INSUFFICIENT
       TO CREATE A MATERIAL FACT IN DISPUTE OR TO DEMONSTRATE
       ENTITLEMENT TO DISCOVERY UNDER RULE 56(F) . . . . . . . . . . .  12

       A.   Rank Hearsay is Incompetent Evidence and Insufficient
            to Allow  Discovery Under Rule 56(f)  . . . . . . . . . . . . . . . . . . . . . .  13

       B.   Theoretical Discovery Requests are Improper  . . . . . . . . . . . . .  14

       C.   Plaintiffs' Request for Speculative Discovery is Unwarranted . . .  14

       D.   Discovery of Services Rendered After September 18, 2000, on
            Other Engagements at Remote Projects is Unwarranted . . . . . .  15

IV.    DISMISSAL OF PLAINTIFFS' CLAIMS AS PEREMPTED IS
       WARRANTED UNDER RULE 56  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

       A.   R.S. 9:5607 Represents a Reasonable Exercise of
            Legislative Discretion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

       B.   Plaintiffs' Claims are Barred Under LA. REV. STAT. ANN. § 9:5607
            for Reason That Peremption Statutes Have Retroactive Effect and
            can be Tolled Even Before Legislative Enactment . . . . . . . . . . .  18

       C.   Because Statutes of Peremption are Procedural in Nature, They
            are to be Given Retroactive Effect in the Absence of Language
            Showing a Contrary Legislative Intent  . . . . . . . . . . . . . . . . . . . .  20

       D.   Plaintiffs Were Without Vested Rights or a Cause of Action until
            the Levees Broke  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

       E.   Lott Is Inapplicable and Plaintiffs' Personal Injury Claims
            are Perempted  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

5.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

## 2. <u>**TABLE OF AUTHORITIES**</u>

**PAGE**

I.    FEDERAL DECISIONS

      A.    COURT OF APPEALS DECISIONS

<u>Baker v. Am. Airlines</u>,
    430 F.3d 750 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Bauer v. Albemarle</u>,
    169 F.3d 962 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

<u>Exxon Corp. v. Crosby-Mississippi Resources, Ltd.</u>,
    40 F.3d 1474 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

<u>Fisher v. Metropolitan Life Ins.</u>,
    895 F.2d 1073 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Harris v. Black Clawson Co.</u>,
    961 F.2d 547 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Kadair, Inc. v. Sony Corp.</u>,
    694 F.2d 1017 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

<u>Krim v. Banc Texas Group</u>,
    989 F.2d 1435 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Netto v. Amtrack</u>,
    863 F.2d 1210 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

<u>Roberts v. City of Shreveport</u>,
    397 F.3d 287 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Stults v. Conoco, Inc.</u>,
    76 F.3d 651 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>The Barnes Foundation v. Twp. of Lower Merion</u>,
    242 F.3d 151 (3rd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Washington v. Allstate</u>,
    901 F.2d 1281 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

B.    DISTRICT COURTS

Anchee v. Port Drum Co.,
   197 F.Supp. 2d 723 (E.D. Tex. Apr. 15, 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Bancoult v. McNamara,
   217 F.R.D. 280 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 7, 14

Dowdell v. Chapman,
   930 F.Supp. 533 (M.D. Ala. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Hicks v. Charles Pfizer & Co.,
   No. 1:04-CV-201, slip op., 2005 WL 2415965, (E.D. Tex. Sep. 29, 2005) . . . . . . . .  13

II.    LOUISIANA PRECEDENT

A.    SUPREME COURT DECISIONS

Reeder v. North,
   701 So. 2d 1291 (La. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 17, 18

Bazley v. Tortorich,
   397 So.2d 475 (La. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Burmaster v. Gravity Drainage District No. 2,
   366 So.2d 1381 (La. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Guillory v. Avoyelles Ry. Co.,
   28 So. 899 (La. 1900) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Lott v. Haley,
   370 So.2d 521 (La. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Morial v. Smith & Wesson Corp.,
   785 So.2d 1 (La. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Segura v. Frank,
   630 So.2d 714 (La. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

State v. Alden Mills,
   12 So.2d 204 (La. 1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

Walls v. American Optical Corp.,
   740 So.2d 1262 (La. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

B.    COURT OF APPEAL DECISIONS

639 Julia St. Partners v. City of N.O.,
    830 So.2d 1131 (La. App. 4 Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Barr v. Smith,
    598 So.2d 438 (La. App. 2 Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Bordlee v. Neyrey Park, Inc.,
    394 So. 2d 822 (La. App. 4 Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19

Dozier v. Ingram Barge Co.,
    706 So.2d 1064 (La. App. 4 Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Hazelwood Farm, Inc. v. Liberty Oil and Gas Corp.,
    844 So.2d 380 (La. App. 3 Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

James Pest Control v. Scottsdale Ins. Co.,
    765 So.2d 485 (La. App. 5 Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Korossy v. Sunrise Homes, Inc.,
    653 So.2d 1215 (La. App. 5 Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Louisiana DOTD v. Hellenic, Inc.,
    636 So.2d 1004 (La. App. 1 Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Orleans Parish Sch. Bd. v. Pittman Construction Co.,
    372 So. 2d 717 (La. App. 4 Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Stipe v. Joseph A. Neyrey Gen. Contractors,
    385 So. 2d 568 (La. App. 4 Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19

Street v. La. Pac. Corp.,
    829 So.2d 450 (La. App. 2 Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III.    CODES, STATUTES & RULES

A.    FEDERAL RULES

FED. R. CIV. P. 56(e) and (f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FED. R. CIV. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

B.        LOUISIANA STATUTES

1990 La. Acts 712 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

1999 La. Acts 1024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

LA. CIV. CODE ANN. art. 3461 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

LA. CIV. CODE ANN. art. 6. (2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

LA. REV. STAT. ANN. § 9:2772  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 17

LA. REV. STAT. ANN. § 9:5604  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

LA. REV. STAT. ANN. § 9:5605  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

LA. REV. STAT. ANN. § 9:5606  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

LA. REV. STAT. ANN. § 9:5607 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 17

LA. REV. STAT. ANN. § 9:5608  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

**MAY IT PLEASE THE COURT:**

3.   <u>**INTRODUCTION**</u>

   **I.   ENGINEERS ARE ENTITLED TO DISMISSAL OF ALL NON-OPPOSING PLAINTIFFS' CLAIMS**

The Engineers' Motions are unopposed by six (6) plaintiffs.[1]  All claims brought by these plaintiffs should be dismissed with prejudice.

   **II.   THE REMAINING PLAINTIFFS FAIL TO PLACE FACTS IN DISPUTE, THEREFORE, THESE COMPLAINTS SHOULD BE DISMISSED**

With respect to the oppositions, plaintiffs may not rest upon mere allegations or denials to delay or to defeat the Engineers' Joint Motions, but must set forth, by affidavit or otherwise, "specific facts" showing inability to oppose and that there is a genuine issue for trial.[2]  Plaintiffs' unsupported opposition and response collectively fail to make the requisite showings.

   **III.   PLAINTIFFS WAIVED ANY RIGHT TO AMEND, AND A MASTER COMPLAINT COULD NOT CONTROVERT A PEREMPTIVE FACT**

On March 24, 2006, the plaintiffs offered to file a master complaint.

---

[1]
   1.   <u>Ezell v. Boh Bros. Constr.</u>, No. 05-6314 (E.D.La. filed Dec. 1, 2005),
   2.   <u>Tauzin v. Bd. of Comm'rs.</u>, No. 06-0020 (E.D.La. filed Jan. 3, 2006),
   3.   <u>Finney v. Boh Bros. Constr.</u>, No. 06-0886 (E.D.La. filed Feb. 22, 2006),
   4.   <u>Christenberry v. Bd. of Comm'rs.</u>, No. 06-2278 (E.D.La. filed Apr. 25, 2006),
   5.   <u>Sanchez v. Boh Bros. Constr.</u>, No. 06-2287 (E.D.La. filed Apr. 26, 2006), and
   6.   <u>Marcello v. Boh Bros. Constr.</u>, No. 06-2545 (E.D.La. filed May 17, 2006).

[2]   Fed. R. Civ. P. 56(e) and (f).

> Judge . . . I would suggest that it would be a master complaint for the purposes of allowing you and the defendants to file all of the dispositive motions.

Ex. 12, p. 54, ll. 6-16.  Now, more than three months later,  the plaintiffs seek additional time to file a master complaint, <u>after</u> the Engineers have filed dispositive motions.  Contrary to plaintiffs' argument, a late-filed master complaint would "ameliorate" nothing and would unnecessarily delay a hearing on the Engineers' Motions.[3]

## IV.  PLAINTIFFS' CANNOT SHOW AN INABILITY TO TIMELY OPPOSE THE MOTION AND CANNOT DEMONSTRATE A REASONABLE BASIS TO SUGGEST THAT DISCOVERY WILL REVEAL A TRIABLE FACT

Plaintiffs also fail to show, by affidavit or other means, valid reasons why they lack the ability to oppose timely the Engineers' Joint Motions, as required by Rule 56(f).  Plaintiffs' failure is both a tacit acknowledgment that the historical dates memorialized in public records have been available to plaintiffs for months, and a practical conclusion that the dates in public records will not change during the course of formal discovery.

On October 12, 2005, plaintiffs sent a Freedom of Information Act ("FOIA") request for all levee files to the Corps.  On January 25, 2006, plaintiffs advised the court that, beginning in November 2005, 235 boxes of records were being made available to the public

---

[3]

> Plaintiffs' complaints, in many instances, are factually incorrect with respect to projects and canals for which the Engineers provided services.  The errors in plaintiffs' complaints are fully addressed in the Engineers' disclosures, Joint Motions and supporting affidavits.   To delay the hearing in the Engineers' Joint Motions while a master complaint is prepared, and thereby force the Movers to file responsive pleadings and additional motions would unnecessarily penalize the Engineers.  To allow plaintiffs' discovery to explore what projects each Engineer did, in the face of the Engineers' disclosures, Joint Motions and supporting affidavits, and (as more fully described herein) public documents that have been available to all parties for more than eight months, would further unnecessarily penalize the Engineers.

on the IPET internet database.  Ex. 3 (Plaintiffs' Ex. 12, p. 3).  On January 25, 2006, Eustis showed plaintiffs how to use IPET's internet database to locate end date documents.  Ex. 6.  On March 24, 2006, Mr. Bruno advised the court, "The discovery, Judge, you may not realize, a lot of **this discovery is on the internet already, it's there**."  Ex. 12, p. 52, ll. 19-20 (emphasis added).  Plaintiffs have had months to study these public and internet records.  Additional formal discovery will not change the dates endorsed on these documents.  Plaintiffs' undefined and late request for a continuance to engage in formal, additional discovery is insufficient to postpone the court's decision on the Engineers' Joint Motions.

In Bancoult v. McNamara, the court was confronted with precisely the same request for discovery in order to oppose a statute of limitations defense.  The court denied plaintiffs' requests for discovery and for a continuance of the motion hearing date.

> The non-moving party bears the burden of identifying the facts to be discovered that would create a triable issue and the reasons why the party cannot produce the facts in opposition to the motion.[4]

Plaintiffs seek discovery on "ifs," "may have knowledge" and "theories of miscalculations." Rule 56(f) is not to be used  "where the result of a continuance to obtain further information would be wholly speculative."[5]

## V.   FURTHER DISCOVERY IS UNNECESSARY

Plaintiffs use the Engineers' "remoteness" proof as to some separate projects as an

---

[4]    Bancoult v. McNamara, 217 F.R.D. 280, 283 (D.D.C. 2003).

[5]    Id. at 283 (citing Exxon Corp. v. Crosby-Mississippi Resources, Ltd., 40 F.3d 1474, 1488 (5th Cir. 1995)); *See also* Kadair, Inc. v. Sony Corp., 694 F.2d 1017, 1030 (5th Cir. 1983).

argument for further discovery.  Plaintiffs misunderstand that the "breached" projects identified by the Engineers are subject to the peremption defense.  As ordered, the Engineers listed all projects that the Engineers undertook and stated whether those projects were in the areas which breached.  Plaintiffs' claims on "breached" projects are perempted, therefore, there is no need for discovery to determine theoretical impacts of subsequent projects on extinguished claims.[6]  Additionally, to allow discovery for the purpose of confirming that the Engineers provided no services on a given canal or the MRGO (as laid out clearly in affidavits in support of the Engineers' Joint Motions, and uncontradicted by the extensive publicly available records on the IPET website) would be an utter waste of time and resources.

## VI.   FRAUD SPECULATION

Plaintiffs concede that they did not allege fraud for reason of Rule 11 constraints,[7] yet they urge entitlement to discovery on this very issue.  Fraud must be pled with particularity and plaintiffs intentionally omitted fraud counts.  Therefore, fraud has no application in this case.[8]  Speculation about fraud cannot support the use of Rule 56(f) to seek evidence in support of a cause of action not alleged in the complaints.

## VII.   PEREMPTION IS RETROACTIVE

Plaintiffs argue that peremption should not apply to their claims because they had

---

[6]   Claims on all of BKI's, Eustis' and Modjeski and Masters' "breached" projects are perempted.

[7]   "Plaintiffs did not previously allege fraud due to Rule 11 constraints." Opposition, p. 10; *See also* pp. 12 & 14.  Opposition, Bruno Affidavits, ¶5.

[8]   FED. R. CIV. P. 9(b).

no opportunity to assert their "non-accrued" causes of actions until after peremption had

tolled.  Plaintiffs' argument is flawed in at least four critical respects.  First, the legislature

enacted Section 9:5607 as a remedial statute that superseded Section 9:2772, and under

our Civil Code, Section 9:5607 applies retroactively.[9]  Second, the Supreme Court

addressed an identical  argument assailing peremption and found that peremption was a

valid exercise of legislative prerogative and was absolute.[10]  Third, Louisiana Courts have

consistently held that, irrespective of the manifestation date, when a cause of action does

not accrue until after peremption tolls, the claim is absolutely barred.

> Under the statute, it matters not that the vice or defect did not
> manifest itself prior to that date.  The legislature has fixed the
> absolute ten year peremptive period as the ***termination date
> for claims, regardless of whether or not the claims have
> manifested themselves***.[11]

Fourth, plaintiffs' damages and causes of action did not occur or accrue, even after the

levees broke because of peremption.

### VIII.    PLAINTIFFS FAILED TO FULFILL ANY RULE 56 BURDENS

Plaintiffs' argument for amended complaints and unnecessary discovery should not

eclipse their underlying Rule 56 (e) and (f) burdens of establishing issues of material fact

or, presenting by affidavit, specific factual reasons why they cannot oppose and defeat the

Engineers' motions without discovery.  Plaintiffs' opposition fails to meet these burdens.

---

[9]     LA. CIV. CODE ANN. art. 3461 (2006).

[10]    Reeder v. North, 701 So. 2d 1291, 1295 (La. 1997).

[11]    Bordlee v. Neyrey Park, Inc., 394 So. 2d 822, 824 (La. App. 4 Cir. 1981)
        (emphasis added).  See also Stipe v. Joseph A. Neyrey Gen. Contractors,
        385 So. 2d 568 (La. App. 4 Cir. 1980).

**4.**   **APPLICABLE LAW AND ARGUMENT**

Fifth Circuit authority compels the denial of plaintiffs' request to conduct discovery; and the Engineers' motion for summary judgment should be deemed submitted at this time.

Rule 56 does not require discovery, and a motion for summary judgment can be decided without discovery.[12]   Discovery can be cut off when the record shows that the request is not likely to produce facts needed by the plaintiff to withstand a motion for summary judgment.[13]

In order to warrant a Rule 56(f) continuance, the nonmovant must present specific facts explaining his inability to place a triable fact in dispute.[14]   The non-movant must also demonstrate how undertaking discovery will enable him to rebut movant's showing of the absence of material factual issues.[15]   To carry these burdens, the non-movant cannot merely restate conclusory allegations in the complaint, make vague assertions or speculate about what discovery may yield.[16]   The ultimate burden for the nonmovant under Rule 56(f)

---

[12]   Bauer v. Albemarle, 169 F.3d 962, 968 (5th Cir. 1999); Washington v. Allstate, 901 F.2d 1281, 1285 (5th Cir. 1990); Fisher v. Metropolitan Life Ins., 895 F.2d 1073, 1078 (5th Cir. 1990); Baker v. Am. Airlines, 430 F.3d 750, 756 (5th Cir. 2005).

[13]   Washington, 901 F.2d at 1285; Fisher v. Metropolitan Life Ins., 895 F.2d 1073, 1078 (5th Cir. 1990); Netto v. Amtrack, 863 F.2d 1210, 1216 (5th Cir. 1989); Kadair, Inc. v. Sony Corp of Am., 694 F.2d 1017, 1029-1030 (5th Cir. 1983); See also Baker, 430 F.3d at 756.

[14]   Washington, 901 F.2d at 1285; Stults v. Conoco, Inc., 76 F.3d 651, 657-658 (5th Cir. 1996) (quoting Krim v. Banc Texas Group, 989 F.2d 1435, 1442 (5th Cir. 1993)); Bauer, 169 F.3d at 968.

[15]   Krim, 989 F.2d at 1442.

[16]   Washington, 901 F.2d at 1285; Netto, 863 F.2d at 1216.

is to demonstrate, by specific facts, that discovery will reveal triable issues of material fact sufficient to defeat a motion for summary judgment.[17]  The plaintiffs have made no showing:

> (1)     Why the plaintiffs' FOIA requests, the IPET documents and the court ordered disclosures did not provide adequate "no services rendered" and "end date" discovery, and

> (2)     How, if further discovery is allowed, plaintiffs would be able to controvert the "no services rendered," sworn statements and the historical "end dates" listed in either certified public or admissible business records.

For reason that plaintiffs have not met these burdens, the court should disallow needless discovery and "fishing expeditions."[18]

## I.     SPECULATION ABOUT FRAUD AND SUBSEQUENT KNOWLEDGE SHOULD NOT DELAY OR DEFEAT THE ENGINEERS MOTIONS

Rule 9(b) requires that, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[19]  Plaintiffs concede that they did not allege fraud for reason of Rule 11 constraints,[20] yet they urge entitlement to discovery.  Plaintiffs speculate about silence or failures to act and possible after acquired

---

[17]     Bauer, 169 F.3d at 968; Bancoult, 217 F.R.D. at 283.

[18]     Netto, 863 F.2d at 1216; Bancoult, 217 F.R.D. at 284, 285.

[19]     A similar argument about fraud arising out of an alleged "failure to warn" as a loophole device to avoid the peremptive effect of LA. REV. STAT. ANN. § 9:2772 was immediately overruled by the legislature in amending the same statute.  1990 La. Acts 712; Harris v. Black Clawson Co., 961 F.2d 547, 554 n. 21 (5th Cir. 1992).

[20]     "Plaintiffs did not previously allege fraud due to Rule 11 constraints." Opposition, p. 10; See also pp. 12 & 14.  Opposition, Bruno Affidavits, ¶5.

knowledge which may constitute fraud on the part of the Engineers.  Stated differently, plaintiffs seek a license to conduct a prohibited fishing expedition.  Fraud, which must be pled with particularity, but was intentionally omitted, has no application in this case.[21] Speculation about fraud cannot support the use of Rule 56(f).  Likewise, speculation about what discovery may uncover is insufficient to support the use of Rule 56(f).

## II.   PLAINTIFFS' UNLIMITED ACCESS TO "END DATE" DOCUMENTS FORECLOSES ANY COLORABLE CLAIM THAT WOULD WARRANT ADDITIONAL DISCOVERY

On September 19, 2005, several plaintiffs filed complaints.  More than eight months later, plaintiffs claim that summary judgment should be postponed because the non-movers have had insufficient formal discovery.

### A.   Plaintiffs' Access to Paper "End Date" Records in 2005

On October 12, 2005, the plaintiffs served a comprehensive FOIA request ("October FOIA")[22] upon the Corps of Engineers ("Corps").

> **[T]he complete files** of the United States Army Corps of Engineers pertaining to the **design, construction, modification, renewal and/or maintenance** of the levee structures in the 17th Street Canal, the London Avenue Canal and the Industrial Canal . . . .
>
> . . . .
> pertaining to and identifying each **engineering firm** . . . the **design, construction, modification, renewal and/or maintenance** of the levee structures . . . .

---

[21]   FED. R. CIV. P. 9(b).

[22]
On November 16, 2005, plaintiffs directed a second FOIA ("November FOIA") to the Corps.  Ex. 2.  Plaintiffs' November FOIA focused on funding for contractors hired, "to alter, modify or reconstruct . . . during the fifteen (15) year period which preceded Hurricane Katrina . . . ."  Ex. 2, pp. 1-2.

Ex. 1, pp. 3-4, 6-7 (emphasis added).  The plaintiffs hired Mr. Pazos, a purported expert, to review 235 boxes, the "complete files."  Ex. 1, p. 17.  Experts know how to find end dates for services rendered and for construction projects.

### B.   Plaintiffs' Roadmap to Internet "End Date" Documents

Plaintiffs admittedly have no need for the usual, formal discovery not only due to FOIA access but because, "this discovery is on the internet already, it's there."  Ex. 12. Plaintiffs have had continuous internet access to all of the records needed to confirm or to contest an "end date" fact.  For instance, on December 1, 2005, IPET's London Avenue Canal folders contained Eustis' July 23, 1993 Geotechnical Report, and BKI's February 9, 1994 engineering drawings (including all as-built notes).  Ex. 4.  Before plaintiffs named either Eustis or BKI as a defendant, any person with internet access could have determined that these claims were perempted before the first complaint was filed.[23]

Plaintiffs refused to take advantage of IPET.  In open court, on January 25, 2006, plaintiffs' counsel announced:

> **I mean does he really expect me to download** 15 separate files entitled **plans and specs** to hope that I find one group of documents out of thousands that may **refer to the floodwall and sheet pile** connection at 17th Street? . . .  So it's not as easy as counsel suggests.

Ex. 5, p.25 (emphasis added).  Plaintiffs' refusal to review available  digital "end date" records is both  inexplicable and an abandonment of discovery.  It is inconsistent for plaintiffs to elect not to review 235 boxes of readily available information, and then insist

---

[23]

Subsequently, the IPET website was supplemented to include the May 7, 1997 "Contract Completion Statement" for the work that B&K Construction performed on the London Avenue Canal project.  Ex. 4.

that they need to review **even more** information.  And waiting for an "easy" path is an insufficient ground to delay dismissal of perempted claims.

On January 25, 2006, plaintiffs requested and Eustis issued written step-by-step IPET search instructions.  Eustis' instructions expressly located for plaintiffs:

1. **Geotechnical Reports**, which would identify the services rendered and the associated "end dates" for Eustis' geotechnical engineering services,

2. **Contract Documents**, which would identify the services rendered and the associated "end dates" for Modjeski's and BKI's civil engineering design services, and

3. **As Built Records**, which would identify the "acceptance dates" for various construction projects.

Ex. 6.



Ex. 6.  IPET's indices were reproduced by Eustis to show plaintiffs how to locate key documents such as Eustis' geotechnical study on the London Avenue Canal and Modjeski's title page for the 17th Street Canal.[24]  Ex. 6.  On January 25, 2006, the plaintiffs had in their possession the tools to easily determine all "services rendered" and "end dates," along with clear instructions on how to use those tools.  Additionally, the Court ordered the defendants to disclose all levee projects; and the Engineers complied with that order, thereby further narrowing plaintiffs' review burden.

The Engineers' motion is supported by records obtained from the Corps' files.  The Corps' records are squarely within the scope of the plaintiffs' FOIAs, and within the 235 boxes of levee documents that were posted on IPET's website.  There is no need for further discovery, because plaintiffs and plaintiffs' experts had the opportunity and the means to discover facts for eight months.

**C.**     **The Court's Scheduling Order and the Engineers' Early Disclosure of "No Services" and "End Date" Proof**

On April 6, 2006, the Court mandated defendant disclosures and that all motions that did not require discovery be filed on June 15, 2006.  On May 12, 2006, the Court ordered additional defendant document production, and that liaison counsel designate all motions that qualified for hearings without discovery.  On May 23, 2006,  "The Engineers request[ed] that the plaintiffs designate that no discovery is required in connection with the Preliminary Motions to Dismiss."  Ex. 7.  On May 25, 2006, the Engineers sent to the

---

[24]     IPET's index for As-Built information lists the 17th Street Canal improvements as posted on December 2, 2005.  Ex. 6.

plaintiffs a complete set of "draft" motion papers.  Ex. 8, p. 2.[25]  On May 26, 2006, the Engineers renewed the request to the plaintiffs:

> Under our duty to assist the Court in narrowing the issues in this massive litigation, I hope that I will hear from you soon about either setting up a meeting or confirming the "no discovery required" designation and the evidentiary stipulations.

Ex. 9.  On May 31, 2006, the plaintiffs declined to stipulate.  Ex. 10.  On June 1, 2006, the Engineers filed the Joint Motions.  On June 7, 2006, plaintiffs' liaison counsel advised, "It is the position of the plaintiffs that each of the motions will require discovery in varying degrees."  Ex. 11.  The plaintiffs' position is flat wrong.  The plaintiffs have had access to the levee files for eight months.  The plaintiffs cannot show inability to develop facts, therefore, plaintiffs are not entitled to conduct additional discovery on irrefutable engineering services contracts and dates endorsed on documents.  For these access reasons, the Engineers' hearing date should not be continued to allow further discovery.

### III.   PLAINTIFFS' "THEORIES" AND SPECULATION ARE INSUFFICIENT TO CREATE A MATERIAL FACT IN DISPUTE OR TO DEMONSTRATE ENTITLEMENT TO DISCOVERY UNDER RULE 56(F)

Plaintiffs have not offered one scintilla of admissible evidence in opposition to sworn statements, certified public records and proven business records.[26]  Plaintiffs' hearsay, theories and speculative statements are facially inadequate; therefore, discovery should be denied and the Engineers' Joint Motions granted.

---

[25]   The Engineers transmittal included: The Memorandum in Support of Rule 12(b)(6) Joint Motion and Rule 56 Joint Motion, Rule 56.1 Statements, Affidavits, and all supporting exhibits.

[26]   *See generally* Opposition, pp. 9-15; Bruno's affidavits.

## A.   Rank Hearsay is Incompetent Evidence and Insufficient to Allow Discovery Under Rule 56(f)

The plaintiffs have the benefit of their own experts as well as the identities and opinions of as many as 34 purported experts[27] who have prepared more than 6,000 pages of published reports on Hurricane Katrina and the levee systems.  Nevertheless, plaintiffs ground their plea for technical discovery solely on an unsupported, double hearsay, newspaper article.[28]  Generally, newspaper articles are "classic, inadmissible hearsay" and are "unusable to defeat summary judgment."[29]  The plaintiffs' reliance on double hearsay demonstrates that plaintiffs can neither refute the Engineers' Joint Motions[30] with admissible evidence nor place in dispute a triable issue of fact.  If, starting in 2005, the plaintiffs had read either the FOIA documents or the images on the IPET website, they would have discovered "services rendered" and "end date" documents that support the Engineers' defenses.  Ex. Nos. 4 & 6.  The plaintiffs showed neither "inability to discover

---

[27]   April 4, 2006 Joint Report, Ex. A.

[28]   "Other studies showed . . . miscalculation . . . . Marshal, Bob, 17th Street Canal Was Doomed, Times Picayune 12-05-05." Opposition, pp. 14-15.

[29]
Hicks v. Charles Pfizer & Co., No. 1:04-CV-201, slip op., 2005 WL 2415965, at *4 (E.D. Tex. Sept. 29, 2005) (citing Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir. 2005)).  Newspaper articles are hearsay when offered to prove the truth of the matter asserted. Hicks at *4 (citing The Barnes Foundation v. Twp. of Lower Merion, 242 F.3d 151, 164 n.8 (3rd Cir. 2001) and Anchee v. Port Drum Co., 197 F.Supp. 2d 723, 730 n.5 (E.D. Tex. Apr. 15, 2002)).  Newspaper articles are not sworn statements, nor certified, and the authors are not subject to cross-examination; accordingly, the articles are incompetent summary judgment evidence.  See Dowdell v. Chapman, 930 F.Supp. 533, 541 (M.D. Ala. 1996).

[30]   Plaintiffs admittedly relied on rank hearsay as the sole basis for naming defendants.  Ex. 13.

adverse facts" (because plaintiffs repeatedly admitted they knew where to obtain document discovery), nor the existence of a triable fact.

### B.      Theoretical Discovery Requests are Improper

The plaintiffs' request for "theory" discovery is facially improper speculation.[31] Plaintiffs' theories are grounded in possibilities, not facts.  Plaintiffs' theories fail to satisfy the  "reasonable triable fact" prong of Rule 56(f).  Rule 56(f) requires demonstration of a reasonable (not a possible) basis to conclude that discovery will produce triable facts needed to withstand a motion for summary judgment, and does not afford a license to conduct a fishing expedition.[32]  .

### C.      Plaintiffs' Request for Speculative Discovery is Unwarranted

Plaintiffs contend that discovery is "necessary to determine the distance, **if any,** at which one part of a complex and intertwined levee system has any impact on another part of that same system . . . . [and] **if** BKI obtained any knowledge before, during or after its work on different parts of the levee system . . . that **may have** contributed to the breaches." Opposition, pp. 9-10, 12.  (emphasis added).  Here, plaintiffs offer only "if" and "may have" suspicion and speculation, but no facts.  The non-moving party has a Rule 56(f) obligation to demonstrate the triable facts that additional discovery will yield.  Therefore, even if plaintiffs could show inability, plaintiffs have further failed to satisfy the reasonable triable fact prong of Rule 56(f).

---

[31]     "Plaintiffs are specifically interested in **discovery regarding the theory** that Eustis and Modjeski and Masters **miscalculated** the depths of the sheet pilings . . . ."  Opposition, p. 14 (emphasis added).

[32]     *See* Bancoult v. McNamara, 217 F.R.D. 280, 283 (D.D.C. 2003) (quoting Exxon Corp. v. Crosby-Miss. Res., Ltd., 40 F.3d at 1487-78).

### D.   Discovery of Services Rendered After September 18, 2000, on Other Engagements at Remote Projects is Unwarranted

The Engineers' five-year peremption defense focuses on the "end date" of projects that breached.[33]   The Engineers provided disclosures, sworn statements, contract information, aerial photographs, maps and drawings to distinguish projects with breaches from other remote projects that were separate engagements.[34]   The plaintiffs contend that the Engineers' peremption defense, that focuses on projects that suffered breaches, is "a nonsensical approach."  Opposition, p. 13.

The plaintiffs' mischaracterization of the Engineers' peremption defense is both improper and patently inconsistent with the plaintiffs' breach statement in open court.  "The first fundamental was: Did you do any **work anywhere near the break site**?  **That was easily resolved with a disclosure.  Wonderful."**  Ex. 14, p. 49, ll. 18-20 (emphasis added).  Projects containing breaches, as explained by Mr. Bruno in open court, were the engagements within the scope of the complaints.[35]   Accordingly, the Engineers' five-year

---

[33]   *See* LA. REV. STAT. ANN. § 9:5607 (2006).

[34]   Ex. E 2.10, E 3.3; Gwyn Affidavit ¶ Nos. 19 & 20. The Engineers provided the plaintiffs with exact project number and contract description information for each engagement, thereby allowing the plaintiffs to focus IPET-based document discovery on each project that breached.  The Engineers' Preliminary Disclosures and the Joint Motions created a road map of peremption facts.  All that the plaintiffs had to do was to follow the Engineers' roadmap and search IPET's website for each discrete project number (provided by the Engineers) to determine if any facts or records existed that would preclude peremption on each project to that suffered a breach.

[35]   For example, in the complaints, plaintiffs alleged "the reason for the water was a breach in the 17th Street Canal flood wall . . . and breaks in the London Avenue Canal as well as the Industrial Canal."  Original Complaint, p. 6., LeBlanc v. Boh Bros. Constr., No. 05-6327 (E.D.La. filed

peremption defense, which is based on projects that suffered a breach, bars plaintiffs' claims and obviates discovery on remote projects. Remote projects could never yield a triable fact on perempted projects where all claims were extinguished.[36]

For these reasons, plaintiffs have satisfied neither the inability prong nor the reasonable triable fact prong of Rule 56(f). Therefore, discovery should not be permitted, and the Engineers' Joint Motions should be deemed submitted. Plaintiffs' double hearsay statement, theoretical contentions, speculation and improper revival of peremption suggestion are all insufficient to place a Rule 56(e) material fact in dispute, therefore, summary judgment should be granted.

### IV.   DISMISSAL OF PLAINTIFFS' CLAIMS AS PEREMPTED IS WARRANTED UNDER RULE 56

Plaintiffs' argument about the "permissibility" of claims under the previous ten-and

---

Dec. 12, 2005).

Plaintiffs avers that the levees/flood walls were negligently designed and that the faulty design caused and/or contributed to the above-mentioned breach in the levee and/or flood wall." Original Complaint, p. 10, LeBlanc v. Boh Bros. Constr., No. 05-6327 (E.D.La. filed Dec. 12, 2005).

[36]

That other separate and remote engagements or projects exist is of no moment. Plainly visible in IPET's 17th Street Canal aerial image is the 18 story Heritage Plaza Office Tower, located nearly one mile south of the breach. Eustis Ex. 2.10. Under plaintiffs' newly articulated approach, the builders, the designers and the owners of Heritage Plaza will be defendants, even though Heritage Plaza was a separate engagement and the breach was on the opposite side of the canal and was nearly one mile north of Heritage Plaza. Pump Station No. 6 and the Veterans Highway Bridges are similarly separate engagements, and are even further removed from the site of the breach.

seven-year statute[37] is misplaced, as are their arguments about a retroactive and unconstitutional application of the five-year[38] peremption statute.[39]

Section 9:5607, which was passed in 2003 before plaintiffs' cause of action accrued, is a remedial statute which "shall take precedence over and supersede the provisions of R.S. 9:2772 . . . ."[40]

### A.    R.S. 9:5607 Represents a Reasonable Exercise of Legislative Discretion

Plaintiffs' argument against peremption ignores the holding in Reeder v. North,[41] which involved an attorneys' peremption statute.  Acknowledging "the perceived inequities" of the statute, and quoting Bazley v. Tortorich, the Reeder court held:

> Statutes of limitation are exclusively a legislative prerogative.  In setting a statute of limitation, a legislature does not eliminate the remedy for a civil wrong; it makes a legislative determination that after a certain period of time no cause of action can arise.  Until the time that a cause of action vests, a legislature has the power to create new rights and abolish old ones.  [Citation omitted.]  In finding that the right to recover in tort is not a fundamental right,

---

[37]    1999 La. Acts 1024 (current version at LA. REV. STAT. ANN. § 9:2772 (2006)).

[38]    LA. REV. STAT. ANN. § 9:5607 (2006).

[39]    Plaintiffs' claims against Modjeski and Masters are also perempted under LA. REV. STAT. § 9:2772.  Even if the ten-year statute applied, all claims against Eustis would also be perempted.  Eustis attested, "The closest project on which Eustis rendered geotechnical engineering services after September 18, 1995, was at least 1,000 feet from the site of the nearest Breach . . . ."  Gwyn Affidavit, ¶19.  Plaintiffs' claims against Burk-Kleinpeter, Inc. would also perempted under LA. REV. STAT. ANN. § 9:2772, as explained in its Supplemental Memorandum in Support of Motion for Summary Judgment (Doc. 705).

[40]    LA. REV. STAT. § 9:5607(D) (2006).

[41]    Reeder v. North, 701 So.2d 1291 (La. 1997).

our court has noted that "[w]here access to the judicial process is not essential to the exercise of a fundamental constitutional right, the legislature is free to allocate access to the judicial machinery on any system or classification which is not totally arbitrary.[42]

The court particularly noted that the Legislature considered the objection that the peremption statute was unfair because it "could extinguish a cause of action before it arises; but it nonetheless passed the statue."[43]

In <u>Reeder</u>, the peremption statute covered attorney-negligence, and was triggered by the date of the attorney's negligence; in the instant cases the statute relates to design professionals, and is keyed to the date of last services and/or acceptance of construction. But the distinctions are without legal significance, for in each case the trigger dates are clearly defined, and are reasonable exercises of the Legislature's discretion.[44]

### B.   Plaintiffs' Claims are Barred Under LA. REV. STAT. ANN. § 9:5607 for Reason That Peremption Statutes Have Retroactive Effect and can be Tolled Even Before Legislative Enactment

The case law pertaining to Section 9:2772 shows the permissible  application of

---

[42]   <u>Reeder</u>, 701 So.2d at 1296 (emphasis added) (quoting <u>Bazley v. Tortorich</u>, 397 So.2d 475, at 485 (La. 1981)).  <u>Bazley</u> involved an attack on the Workmens Compensation system, and dealt at length with constitutional arguments against statutes which deprived or limited the tort rights of some claimants and not others, particularly the legislative prerogatives in defining who has actions.

[43]   <u>Reeder</u>, 701 So.2d at 1297.

[44]   It is no accident, and worthy of note, that Section 9:5607 took the peremption of claims against design professionals out of Section 9:2772, where it was among a group of statutes dealing with construction, and placed it among a group of peremption statutes related to other professions).  *See* LA. REV. STAT. ANN. § 9:5604 (Accountants); LA. REV. STAT. ANN. § 9:5605 (Lawyers); LA. REV. STAT. ANN. § 9:5606 (Insurance Agents); LA. REV. STAT. ANN. § 9:5608 (Home Inspectors).

peremption statutes to causes of action alleged to vest before enactment of the statute.

The Fourth Circuit addressed retroactivity in a redhibition suit against a defendant builder to rescind the sale of a house due to alleged defects in its construction.[45]  Plaintiffs purchased the home in 1963, discovered the alleged construction defects in 1978, and filed suit in 1979.  The defendant argued that plaintiffs' claims had perempted during the 16-year period between the sale and the filing of plaintiff's suit.

The court rejected plaintiffs' argument that the claims arose prior to enactment of the statute and were, therefore, not barred by peremption:

> Under the statute, it matters not that the vice or defect did not manifest itself prior to that date.  The legislature has fixed the absolute ten year peremptive period as the ***termination date for claims, regardless of whether or not the claims have manifested themselves***.[46]

In its opinion, the court reemphasized the distinction between statutes of prescription and statutes of peremption:

> Statues of prescription simply bar the remedy.  Statutes of peremption destroy the cause of action itself.  That is to say, after the limit of time expires, the cause of action no longer exists; it is lost.[47]

Section 9:5607 was enacted in August 2003.  In the instant suits, the peremptive period for claims against the Engineers had tolled by September 18, 2000, five years before plaintiffs' filed the first complaint.  Peremption destroyed all causes of action before any of the above-

---

[45] Bordlee v. Neyrey Park, Inc., 394 So.2d 822 (La. App. 4 Cir. 1981).  *See also* Stipe v. Joseph A. Neyrey Gen. Contractors, 385 So.2d 568 (La. App. 4 Cir. 1980).

[46] Bordlee v. Neyrey Park, Inc., 394 So.2d 822, 824 (La. App. 4 Cir. 1981) (emphasis added).

[47] Id. (citing Guillory v. Avoyelles Ry. Co., 28 So. 899 (La. 1900)).

captioned suits were filed.  The holdings in both <u>Bordlee</u> and <u>Stipe</u>,[48] directly recognize that the commencement of a peremptive period is not controlled by the date of statutory enactment, but rather when the ***triggering of the peremptive period is established by*** the statute.

> ### C.   Because Statutes of Peremption are Procedural in Nature, They are to be Given Retroactive Effect in the Absence of Language Showing a Contrary Legislative Intent

Concurrent support for the retroactive application of Section 9:5607 is found in our Civil Code and in the Louisiana Supreme Court's historical distinction between substantive laws and procedural laws.

### Art. 6 Retroactivity of laws

In the absence of contrary legislative expression, substantive laws apply prospectively only.   ***Procedural*** and interpretive ***laws apply both prospectively and retroactively***, unless there is a legislative expression to the contrary.[49]

Procedural, remedial or curative laws may be accorded retroactive effect.[50]  To determine whether a law applies retroactively, courts must first ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application.[51]  If the legislature did so, the court's inquiry is at an end, but if the legislature did not, the court must classify the enactment as substantive, procedural, or interpretive.[52]

---

[48]    *See* footnote 45.

[49]    LA. CIV. CODE ANN. art. 6. (2006) (emphasis added.)

[50]    <u>Segura v. Frank</u>, 630 So.2d 714, 721 (La. 1994).

[51]    <u>Morial v. Smith & Wesson Corp.</u>, 785 So.2d 1 (La. 2001).

[52]    <u>Id.</u> at 10.

Statutes of limitation are remedial in nature and as such are generally accorded retroactive application.[53]  Peremption is a procedural law that bars untimely claims.[54]

The Louisiana Fourth Circuit specifically addressed the retroactivity of peremption under Section 9:2772 in a construction claim that arose prior to the statute's 1964 enactment.  The court affirmed the remedial nature of the statute and the propriety of retroactive application to effectively bar the third-party claim:

> Further, we find that this statute is remedial in nature.  The clear intent of the statute is to limit the time within which actions may be brought to a certain period after completion of the improvement.  See Title of Act, Acts 1954, No. 189 § 1 ("§ 2772.  Pre-emptive period for actions involving deficiencies in design, supervision or construction of improvements to immovables") . . . *R.S. 9:2772*, however, preempts such causes of action and *cures* what the legislature found to be *an overexposure to liability of contractors under the jurisprudence*.
>
> Since the statute is **remedial in nature**, it can be applied **retroactively** even in the absence of language to that effect.[55]

This expression of legislative intent is wholly consistent with the court's prevailing view that peremption statutes are procedural and remedial in nature and may be applied retroactively as the courts in <u>Bordlee</u>, <u>Stipe</u> and <u>Pittman</u> found.[56]

---

[53]   <u>State v. Alden Mills</u>, 12 So.2d 204 (La. 1943).

[54]   <u>Dozier v. Ingram Barge Co.</u>, 706 So.2d 1064 (La. App. 4 Cir. 1998); *See also* <u>Street v. La. Pac. Corp.</u>, 829 So.2d 450 (La. App. 2 Cir. 2002), *and* <u>Louisiana DOTD v. Hellenic, Inc.</u>, 636 So.2d 1004 (La. App. 1 Cir. 1994).

[55]   <u>Orleans Parish Sch. Bd. v. Pittman Construction Co.</u>, 372 So. 2d 717, 720-721 (La. App. 4 Cir. 1979) (emphasis added).

[56]   *See* footnotes 45, 55.

**D.** **Plaintiffs Were Without Vested Rights or a Cause of Action until the Levees Broke**

Plaintiffs' cause of action did not arise, as plaintiffs suggest,  when the levees were designed.

Louisiana jurisprudence has consistently held that a cause of action arising out of property damages accrues when the plaintiff acquires knowledge as to the cause of actual and appreciable damage.  Once the cause of action accrues, the plaintiff then has a vested right.

The Louisiana Fourth Circuit held that the plaintiff's cause of action for a property damage claim against the City of New Orleans **did not accrue until the plaintiffs acquired knowledge as to the cause of the damage**.[57]   Factually, the defendant had planted trees near the plaintiff's building in 1983, the plaintiff first noticed cracks in its building in 1987, and plaintiff discovered in 1998 that the growth of the tree roots was the genesis of the cracks.  The court opined:

> In this case the original damage to the property commenced in 1987, but the cause was undetermined.  **It was not until 1998, that it was discovered that the growth of the tree roots was the genesis of the cracks**.  The plaintiffs admit that they did not acquire or could not have acquired the knowledge of what was the cause of their property damage until 1998.  **Thus, the plaintiff's cause of action did not arise against CNO until 1998**.[58]

The court clearly delineated that, even though the plaintiff had discovered property damage as far back as 1987, the plaintiff's cause of action did not accrue until eleven (11) years later when it **discovered the cause** of the property damage leading to its claim against the

---

[57]   639 Julia St. Partners v. City of N.O., 830 So.2d 1131, 1134 (La. App. 4 Cir. 2002).

[58]   Id.  (emphasis added).

defendant City.

The Louisiana Second Circuit held that where the defendant's excavation activity was performed in April 1988 but where erosion damage to the plaintiff's immovable property was not noticed until July 1989, the plaintiff's cause of action for prescription purposes did not vest until the July 1989 date of the discovered damage.[59]   Notably, the plaintiff had documented his concerns to the defendant in August 1988 about the potential for excavation damage to his adjacent property, but the court found that such concerns were not tantamount to a claim for property damages that was sufficient to begin the tolling of the prescriptive period.   Because the plaintiff's cause of action did not vest until July 1989, the court held that the October 1989 filing of suit was timely and not prescribed, notwithstanding the April 1988 date of the defendant's alleged misconduct.[60]

The Louisiana Fifth Circuit also recognizes the discovery of property damage as an essential element of the accrual of a tort cause of action:

> It is true that what constituted "damage" depended to an extent on the perceptions of the individual homeowner, in that one may have perceived damage where another perceived only normal wear-and-tear, up to a point where any reasonable person would perceive "damage." **Nevertheless, we conclude the better rule is to deem the occurrence took place <u>when the damage was discovered</u>**.[61]

The Louisiana Fifth Circuit also applied the "manifestation theory" for the occurrence

---

[59]   <u>Barr v. Smith</u>, 598 So.2d 438, 440 (La. App. 2 Cir. 1992); *See also* <u>Hazelwood Farm, Inc. v. Liberty Oil and Gas Corp.</u>, 844 So.2d 380 (La. App. 3 Cir. 2003).

[60]   <u>Barr</u>, 598 So.2d at 441.

[61]   <u>Korossy v. Sunrise Homes, Inc.</u>, 653 So.2d 1215, 1226 (La. App. 5 Cir. 1995) (emphasis added).

of property damage in the context of a **termite-damage** case,[62] and made a clear distinction between the accrual of a cause of action under long-latency bodily injury claims and for tort-based **hidden property damage** claims:

> Although <u>Korossy</u>, *supra*, did not distinguish <u>Cole</u>, *supra*, it is apparent that the application of the manifestation theory eliminates the difficult factual issue of determining **when a hidden property damage actually occurs**, a proof problem that is not as difficult in asbestos cases when the dates of injurious exposure to a substance can usually be determined.
>
> **Accordingly, we find that the manifestation theory is applicable in this case and that the effect of termite infestation in the condominiums did not become "damage"** *until it was discovered by the homeowners [plaintiffs]*.[63]

The cumulative Louisiana jurisprudence clearly establishes that a plaintiff's cause of action arising out of property damage does not accrue until the plaintiff discovers the damage or acquires knowledge either as to the cause of the damage incurred or that a defendant's conduct is a likely cause of the claimed damage.

In the instant cases, plaintiffs were never vested with an alleged cause of action against the Engineers, even after the levees broke, because of peremption.  Therefore, plaintiffs are without a basis to assert a violation of constitutional due process rights.[64]

---

[62]     <u>James Pest Control v. Scottsdale Ins. Co.</u>, 765 So.2d 485 (La. App. 5 Cir. 2000).

[63]     <u>Id.</u> at 491 (emphasis added).

[64]     *See also* <u>Burmaster v. Gravity Drainage District No. 2</u>, 366 So.2d 1381, 1387 (La. 1981).

###### E.   Lott Is Inapplicable and Plaintiffs' Personal Injury Claims are Perempted

Plaintiffs attempt to support their constitutional argument with Lott v. Haley.[65] Therein, the court held that the 1975 enactment of a three-year medical peremption statute could not be retroactively applied to divest the plaintiff of a personal injury cause of action which had vested on January 21, 1972, several years before the 1975 legislative enactment of the statute.

Lott is inapplicable to property damage claims.  Furthermore, Lott, as cited by plaintiffs, is inapplicable to any bodily injury or wrongful death claims in the instant cases.[66] Lott was a personal injury claim (arising from alleged medical malpractice) which involved the accrual of a cause of action **before the enactment of the applicable peremption statute**.  The instant cases arise out of the levee breaches and flooding, and involve claims for resulting property damages and bodily injuries.  These causes of action never accrued, even after the levees broke, because of peremption.  Accordingly, the dates of the Engineers' alleged design negligence cannot restrict the application of Section 9:5607 as

---

[65]   Lott v. Haley, 370 So.2d 521, 524 (La. 1979).

[66]   A negligence cause of action will arise only upon the happening of a wrongful act and the existence of an injury resulting in legally cognizable damages. However, where the injury has not yet occurred and the cause of action has not yet vested, the guarantee of due process does not forbid the creation of new causes of action or the abolition of old ones to attain permissible legislative objectives.
. . .

The plaintiffs' injury in a wrongful death action occurs when the victim dies.  This court has twice recognized that the wrongful death action could not arise until the date of the victim's death.
Walls v. American Optical Corp., 740 So.2d 1262, 1269-70 (La. 1999).

a complete bar to all of plaintiffs' claims.

**5.    CONCLUSION**

The Engineers have proven that certain plaintiffs' claims were improperly pled and others, as designated in the Engineers' Joint Motions, are perempted by operation of Section 9:5607.  The Engineers' proof of "no services rendered" and of "end dates" to support their peremption defense is by sworn affidavits, certified public records, and business records, which discovery cannot change.

Accordingly, plaintiffs' unsupported Rule 56(f) request to permit discovery and unsupported Rule 56 opposition should both be denied,[67] and the Engineers' Joint Rule 12(b)(6) and Rule 56 motions should be granted.

Respectfully submitted,


GARDNER & KEWLEY                        DEUTSCH, KERRIGAN & STILES, L.L.P.
A Professional Law Corporation


s/Thomas F. Gardner                       s/Charles F. Seemann, Jr.
THOMAS F. GARDNER, T.A. (#1371)          CHARLES F. SEEMANN, JR. (11912)
DOUGLAS A. KEWLEY (#7355)                755 Magazine Street
ERIN E. DEARIE (#29052)                  New Orleans, Louisiana 70130
1615 Metairie Road, Suite 200            Telephone: (504) 581-5141
Metairie, Louisiana 70005                Facsimile: (504) 566-1201
Telephone:  (504) 832-7222
Facsimile:  (504) 832-7223

**ATTORNEYS FOR:**                       **ATTORNEYS FOR:**
**EUSTIS ENGINEERING COMPANY,**          **BURK-KLEINPETER, INC. AND**
**INC., DEFENDANT AND MOVER**            **DEFENDANT AND MOVER**

---

[67]    Eustis and Modjeski object to plaintiffs' affidavit as hearsay with respect to substantive facts, and submit supplemental briefs, including separate objections, and adopt each other's objections.

DEUTSCH, KERRIGAN & STILES, L.L.P.


s/Victor E. Stilwell, Jr.
VICTOR E. STILWELL, JR., T.A. (#12484)
FRANCIS J. BARRY, JR. (#02830)
KEITH J. BERGERON (#25574)
755 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201

**ATTORNEYS FOR:**
**MODJESKI AND MASTERS, INC.**
**DEFENDANT AND MOVER**


## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 10th day of July, 2006 served a copy of the Joint Reply and Opposition on Behalf of the Engineers to Plaintiffs' Opposition to the Engineers' Joint Motions and to Plaintiffs' Rule 56(f) Request on counsel for all parties to this proceeding, by e-mail and/or United States Mail, postage prepaid.


s/Thomas F. Gardner
THOMAS F. GARDNER