UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, et al. | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs | ) | NO. 05-4182 |
| | ) | |
| VS. | ) | SECTION "K" (2) |
| | ) | CONS. KATRINA CANAL |
| BOH BROTHERS CONSTRUCTION CO., L.L.C., et al. | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

| THIS DOCUMENT RELATES TO: LEVEE AND MRGO GROUPS | 05-4181 | 05-6314 | 06-0020 | 06-2346 |
|---|---|---|---|---|
| | 05-4182 | 05-6324 | 06-0886 | 06-2545 |
| | 05-5237 | 05-6327 | 06-2278 | |
| | 05-6073 | 05-6359 | 06-2287 | |

**JOINT APPENDIX ON BEHALF OF ENGINEERS,
BURK-KLEINPETER, INC., EUSTIS ENGINEERING COMPANY, INC.,
AND MODJESKI AND MASTERS, INC. TO
JOINT REPLY TO PLAINTIFFS' OPPOSITION TO THE ENGINEERS' JOINT
MOTIONS AND JOINT OPPOSITION TO PLAINTIFFS' RULE 56(F) REQUEST**

1.  Index to Exhibits with Exhibits
2.  Supplemental Opposition by Burk-Kleinpeter, Inc. (BKI) to Plaintiffs' Opposition to Engineers' Motions for Summary Judgment
3.  Supplemental Brief, including Objections, on behalf of Eustis Engineering Company, Inc. to Plaintiffs' Rule 56(f) Request, Affidavit and LR 56.1 Statement
4.  Supplemental Brief, including Objections, on behalf of Modjeski and Masters, Inc. to Plaintiffs' Rule 56(f) Request and Affidavit

*appendix_727409_Cons_071006_tfgasa#1F.wpd*

**INDEX OF EXHIBITS**

| # | DATE | FROM | TO | TYPE |
|---|---|---|---|---|
| 1 | 10/12/05 | A. O'Dwyer | Corps | October FOIA Request. |
| 2 | 11/16/05 | A. O'Dwyer | Corps | November FOIA Request. |
| 3 | 12/30/05 | A. O'Dwyer | EDLA | Motion. |
| 4 | 11/01/05-05/22/06 | IPET | -- | London Avenue Design and construction "end date" records. |
| 5 | 01/25/06 | EDLA | -- | Transcript of Hearing. |
| 6 | 01/25/06 | Eustis | O'Dwyer | Letter regarding use of IPET's website to locate Reports, Contract Documents and As-Built information. |
| 7 | 05/23/06 | Engineers | Plaintiffs | Letter requesting a "No Discovery Required" designation. |
| 8 | 05/25/06 | Engineers | Plaintiffs | Letter forwarding a complete set of draft motion papers. |
| 9 | 05/26/06 | Engineers | Plaintiffs | Letter requesting a meeting to discuss a "No Discovery Required" designation. |
| 10 | 06/01/06 | Engineers | Plaintiffs | Letter confirming that plaintiffs would not designate. |
| 11 | 06/07/06 | Plaintiffs | Judge Duval | Letter confirming that plaintiffs would seek discovery on all motions. |
| 12 | 03/24/06 | EDLA | -- | Transcript of Status Conference (excerpts) |
| 13 | 04/06/06 | EDLA | -- | Transcript of Status Conference (excerpts) |
| 14 | 05/12/06 | EDLA | -- | Transcript of Status Conference (excerpts) |

**Engineers' Exhibit 1**
Berthelot
EDLA, CV No. 05-4182
Cons. Katrina Canal

OCTOBER 12, 2005

UNITED STATES ARMY CORPS OF ENGINEERS
C/O RANDY FLORENT, ESQ.
DEPUTY DISTRICT COUNSEL
U.S. ARMY CORPS OF ENGINEERS
7400 LEAKE AVENUE
ROOM 348
NEW ORLEANS, LA. 70118

RE: FREEDOM OF INFORMA
TION ACT REQUEST

Dear Sir:

I am a local attorney,
and a named plaintiff in
two pieces of letigation in-
volving The United States of
America, acting by and
through its agency and
instrumentality, The U.S.
Army Corps of C

EXHIBIT NO. 3

②

I attach copies of the Orjinal Complaints in each action, both filed in the United States District Court for the Eastern District of Louisiana, one bearing civil action No. 05-481, and the other bearing civil action No. 05-4237.

In connection with my litigation, I have retained Hector V. Payos, a naval architect, marine engineer, and registered

③

professional engineer as an expert witness to conduct a forensic examination of the level failure at the 17th street Canal, the London Avenue Canal, and the Industrial Canal in the aftermath of Hurricane KATRINA.

THIS IS A FREEDOM OF INFORMATION ACT REQUEST for the complete files of the United States Army Corps of Engineers pertain-

④

ing to the design, con-
struction, modification,
renewal and/or mainten-
ance of the levee structu
in the 17th Street Canal,
the London Avenue Canal,
and the Industrial Canal
to include, _enter alia_,
the following:

1) The pre-design specification

2) Results of soil borings
   taken at the above
   locations at all times.

3) The identity (ie. name
   address, telephone number
   and contact details) of the

(5)

contractor(s) taking
the soil boring.

4) Levee design calculation

5) Levee design drawings.

6) Construction specification

7) Construction progress
reports.

8) "AS BUILT" Drawings,
specifications and
reports.

9) Indications of whether
the levees in question
were designed "in house"
by the U.S. Army Corps
of Engineers or whether
the levees were
designed by an outsid
engineering firm.

10) The identities of each
engineering firm which
participated in the

(6)

designs of the levee structures at each site, ie. name, address, telephone number and contact details

11) Indications of whether the 17th Street Canal, the London Avenue Canal and the Industrial Canal levee systems were built to the same or dissimilar designs, and the reason(s) for the similarities or dissimilarities at each location.

12) The contract files of the U.S. Army Corps of Engineers pertaining to and identifying each engineering firm, building contractor, soil boring

(7)

contractor and other
contractor having any
input whatsoever
into the design, con-
struction, modification
renewal and/or main-
tenance of the levee
structures in the
17th Street Canal, the
London Avenue Canal
and the Industrial
Canal, and the reason
why the same or
different contractors
were used at each
location.

13) The identities of the
persons, firms, corpora-
tions or organizations,
including agencies and
instrumentalities of
the United States of
America, who prepared
the specifications dictated
for the design of the
levee structures at

⑧

each location.

14) Whether the U.S. army
Corps of Engineers
believes the levees
failed at each loca-
tion due to a design
failure, construction
defects or some
other cause(s), or
some combination
thereof, and why.

15) All written records,
files, correspondence,
pleadings, opinions,
analyses and writings
of any nature or kind
regarding litigation
involving the 17th
street canal, the
London avenue Canal
and/or the Industrial

(9)

canal at any time, including litigation with Pittman Construction Co, Inc., its parent, subsidiary, affiliated or related companies and/or their insurers, as well as local groups, such as the Sierra Club, the Save-Our-Lake Foundation, and the like.

16) Indications of whether the U.S. Army Corps of Engineers believed or had been told or warned by others prior to Hurricane Katrina, that the soil underlying the levee structures at the 17th Street, London Avenue and Industrial Canals was UNSTABLE

(10)

17) Whether, assuming argumentatively that the U.S. Army Corps of Engineers knew or had been told about unstable soil conditions what corrective action was undertaken to improve the levee structures to account for the unstable soil conditions, including soil or levee monitoring by the U.S. Army Corps of Engineers at all 3 locations.

18) The length of the sheet piles at each of the three canal locations, and particularly the length of the sheet piles in the areas where the 3 levee systems were breached in the aftermath of Hurricane KATRINA.

(11)

19) The specifications
or criteria for the
sheet piles used
at each location,
and the reasons
why a particular
specification or
criteria was used
at each location
rather than another.

20) Whether the area(s)
involved in the dispute
or litigation with
Pittman Construction
Co. Inc., or any of its
parent, subsidiary,
affiliated or related
companies or their
insurers, involved
the same or different
areas of the levee
structures in the
17th Street, London
Avenue or Industrial
canals breached
following Hurricane Katrina

(12)

21) The surge height to which the flood-walls of the levee structures in the 17th Street, London Avenue and Industrial Canals, were designed and constructed, particularly in the areas where the flood-walls were breached following Hurricane KATRINA, and the "safety factor" to which the flood-walls were designed and constructed.

22) All U.S. Government publications, manuals, reference sources and the like, including military handbooks, utilized by the U.S.

(13)

Army Corps of
Engineers in
connection with
the design, construction,
modification, renewal
and/or maintenance
of the floodwalls
in the 17th Street,
London Avenue and
Industrial Canals,
including Naval Facility Engineering
Command Manuals, and
particularly those pertain-
ing to, ~~XXXXXX~~
~~XXXXX~~ cantilever "T"-Type
~~sheet pile~~ floodwalls.

23) Files containing all
correspondence, memo-
randa, reports and
writing of any nature
or kind pertaining to
communications (both
oral ~~XXX~~ or written, or in
electronic form) between
and among the U.S.
Army Corps of Engineers

(14)

and the Parish of Orlea~
and the Parish of Jeffers~
and the State of
Louisia~, regarding the
levee systems in the
17th street, London
avenue and Industrial
Canals, and particularly
those with the New
Orleans or Jefferson
~~~~~~ Levee Boards.

Further, I am given to
understand that the ~~~~~~~ CANTILEVER "I"-TYPE
sheet piles, reinforcing bars WALLS,
and concrete panels at
each of the "BREACH" sites
may be covered with

backfill or other debris
These items are very im
portant to a forensic
investigation by the
causes of the breaches
in the levee systems
at each location, and
the undersigned and
his clients expect the
U.S. army corps of
engineers to ~~will~~ take
all reasonable and
prudent steps to pre-
serve evidence for

(16)

use in litigation, and
to avoid spoliation
of physical evidence.
Accordingly, please
advise the following
when the ~~CANTILEVER "I" TYPE~~
sheet piling, reinforcing
WALLS,
bars and concrete
panels, which were
breached at each of
the breach sites in
the ~~xxxxx~~ 17th Street,
London Avenue and
Industrial Canals will

(17)

be made available
for inspection:

ASHTON R. O'DWYER, JR.
6034 St. Charles Ave.
New Orleans, La. 70118
504-884-6727

HECTOR V. PAZOS
Ocean Oil International Corp
566 Villa Grande Ave. S
St. Petersburg, Fl. 33707
727-347-2556
727-415-7192

THIS IS A FREEDOM
OF INFORMATION ACT REQUEST

Respectfully,

ASHTON R. O'DWYER, JR.

**Engineers' Exhibit 2**
Berthelot
EDLA, CV No. 05-4182
Cons. Katrina Canal

**LAW OFFICES OF**
**ASHTON R. O'DWYER, JR.**
**ONE CANAL PLACE**
**365 CANAL STREET**
**SUITE 2670**
**NEW ORLEANS, LA 70130**
**Telephone: (504) 561-6561**
**Facsimile: (504) 561-5560**

November 16, 2005

<u>**VIA FACSIMILE**</u>
<u>**and U.S. MAIL**</u>
Fax: (225) 298-5549

The United States Army Corps
of Engineers,
through its Attorney-in-Fact:
Peter Mansfield, Esquire
3535 Sherwood Forest Blvd.
Room 257
Baton Rouge, LA 70816

Dear Sir:

This is an amendment to my Freedom of Information Act request, made to the United States Army Corps of Engineers on October 12, 2005, c/o the COE's Deputy District Counsel, Randy D. Florent, Esquire. A copy of the original FOIA request is attached. In addition to the items being the subject of the October 12, 2005 FOIA request, I also am requesting the files of the U.S. Army Corps of Engineers pertaining to the following:

24)    Flooding of portions of the Parish of Orleans, State of Louisiana and/or the Parish of Jefferson, State of Louisiana as a result of water from Lake Pontchartrain overtopping the levees or floodwall structures of the 17th Street or London Avenue Canals, or as a result of seepage through or under the levees or floodwall structures of the 17th Street or London Avenue Canals, or as a result of liquification in the sub-strata of the 17th Street or London Avenue Canals, or "heave" of the soil underlying the levees and floodwalls of the canals, at any time in recorded history other than during or after Hurricane KATRINA in August and September 2005.

25)    The precise sources of the funding for any work performed by contractors who were hired by the U.S. Army Corps of Engineers to alter, modify or reconstruct portions of the 17th and London Avenue Canals during the

November 17, 2005
Page 2

fifteen (15) year period which preceded Hurricane KATRINA, and how the appropriations for the funding of those projects were categorized, i.e., "water resources development project", "water and related land resources development project", "local drainage project", "hurricane protection project", "navigation project", "flood control project", "shore protection project", "estuary protection, conservation and restoration project", and "environmental quality project", etc., and who made the categorizations and the precise reasons therefor.  The parties on whose behalf these amended FOIA requests are made want specific references to specific statutes and regulations which authorized the appropriation of funds, and citations to the justification made by the U.S. Army Corps of Engineers to account to the Congressional Budget Office and/or the Office of Management and Budget for the actual expenditure of the appropriated funds for each alteration, modification or reconstruction project in the referenced canals.

26) Precisely when the U.S. Army Corps of Engineers, or any of its agents or employees, first learned of the breaches in the 17th Street Canal, in the London Avenue Canal, and in the Industrial Canal during or after Hurricane KATRINA, who first learned of each breach in each canal, to whom the breaches were reported, and what efforts were made by the U.S. Army Corps of Engineers, either acting alone or in coordination with other Federal, State or Local agencies, such as the Federal Emergency Management Agency, the U.S. Coast Guard, the New Orleans Levee Board, the New Orleans Sewerage and Water Board, or others, to plug each breach, when each effort to plug each breach was made, and when each breach was successfully plugged, and how.  Also, please identify each private contractor participating in the efforts to plug each breach and produce copies of the contracts with each contractor, identifying what work each contractor was hired to perform, when the work was performed, and what sums were charged for the work performed by each contractor. Lastly, identify each reserve supply of materials which was on hand and used to plug each breach, and whether each reserve supplies of materials was used successfully or not.

Yours very truly,

ASHTON R. O'DWYER, JR.

AROD/vtb
cc:   Mr. Randy D. Florent (via facsimile and U.S. Mail)
      Mr. Randall C. Merchant (via facsimile and U.S. Mail)

**Engineers' Exhibit 3**
Berthelot
EDLA, CV No. 05-4182
Cons. Katrina Canal

```
                FILED
       U.S. DISTRICT COURT
      EASTERN DISTRICT OF L

       2005 DEC 30  P 2: 41
      LORETTA G. WHYTE
              CLERK
```

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

| | | |
|---|---|---|
| **MAUREEN O'DWYER, ET AL.** | * | **NO. 05-4181** |
| **VERSUS** | * | **SECTION "K"** |
| **THE UNITED STATES OF AMERICA, ET AL.** | * | **MAGISTRATE ~~2~~ 5** |

### MOTION FOR EXPEDITED HEARING

**COME NOW**, Plaintiffs, appearing through undersigned counsel, and move This Honorable Court for expedited hearing of their Motion for a Protective Order. This Motion for Expedited Hearing is filed upon the grounds that it recently became apparent to undersigned counsel for Plaintiffs that the United States of America and its agency and instrumentality, the United States Army Corps of Engineers, cannot be trusted to preserve relevant and material evidence, and that they have denied Plaintiffs and their experts access to such evidence. Accordingly, intervention by the Court is necessary on an expedited basis in order to ensure that vital evidence is not lost or destroyed before Plaintiffs and their experts gain proper access to said evidence.

```
___ Fee_____
___ Process_____
_X_ Dktd_____
_/_ CtRmDep_____
___ Doc. No._____
```

-1-

Respectfully submitted,


**LAW OFFICES OF
ASHTON R. O'DWYER, JR.**
Counsel for Plaintiffs

By

**Ashton R. O'Dwyer, Jr.
In Proper Person
Bar No. 10166
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Telephone: (504) 561-6561
Facsimile: (504) 561-5560**


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via facsimile and U.S. Mail, postage prepaid, this ____ day of December, 2005.


-2-

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

| MAUREEN O'DWYER, ET AL. | * | NO. 05-4181 |
| VERSUS | * | SECTION "K" |
| THE UNITED STATES OF AMERICA, ET AL. | * | MAGISTRATE "2" 5 |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR EXPEDITED HEARING

**MAY IT PLEASE THE COURT:**

It is respectfully submitted that in order for the Court to have a full understanding of the need for expedited hearing of Plaintiffs' Motion for a Protective Order, the Court should become familiar with the facts of the case, which are enumerated in the Memorandum in Support of Plaintiffs' Motion for a Protective Order, and the attached Exhibits. Essentially, with respect to "evidence" at the 17th Street Canal levee breach site, much of the physical evidence already has been, literally, "washed away". However, of immediate concern are two (2) earthen mounds, which contain inclined sheet piles, and which are subject to deterioration by the elements of wind, rain, etc., and which are now surrounded by dirt roads, which are traversed on a daily basis by large trucks and heavy equipment. These earthen mounds are believed to contain vital physical evidence necessary to evaluate the multiple failure mechanisms which are believed to have

occurred at the 17th Street Canal levee breach site.  Plaintiffs respectfully submit that

expedited hearing of their Motion for a Protective Order is needed before the earthen

mounds and the evidence they contain is lost forever.


Respectfully submitted,


LAW OFFICES OF
ASHTON R. O'DWYER, JR.
Counsel for Plaintiffs

By _____
Ashton R. O'Dwyer, Jr.
In Proper Person
Bar No. 10166
6034 St. Charles Avenue
New Orleans, LA  70118
Tel. (504) 884-6727


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of

record via facsimile and U.S. Mail, postage prepaid, this 30th day of December, 2005.


-2-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

MAUREEN O'DWYER, ET AL.          *          NO. 05-4181

VERSUS                           *          SECTION "K"

THE UNITED STATES OF             *          MAGISTRATE "2" 5
AMERICA, ET AL.

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER

MAY IT PLEASE THE COURT:

"My question is whether America can overcome the fatal

arrogance of power." J. William Fulbright, United States

Senator, On the Arrogance of Power (1966).

Plaintiffs begin their arguments in support of their Motion for Protective Order

with the above quotation, because the "arrogance of power" of the United States of

America, and of its agency and instrumentality, the United States Army Corps of

Engineers, and of their counsel, the United States Attorney for the Eastern District of

Louisiana, was recently experienced firsthand by plaintiffs and the undersigned. The

United States of America apparently believes that, because it is "a big gorilla" (and

maybe the biggest gorilla of all time), and accustomed to getting its way, it can ride

-1-

roughshod over plaintiffs while evidence vital to plaintiffs' case is ignored or destroyed. In plain, simple English, plaintiffs are charging that the United States Army Corps of Engineers is engaged, quite literally, in a "cover-up" of vital evidence pertaining to the failures of the levees which formed a part of the drainage system of the City of New Orleans (i.e., the London Avenue and 17<sup>th</sup> Street Canals) and the navigation channel of the Inner Harbor Navigation Canal (a/k/a The Industrial Canal) pre-KATRINA.  More particularly, plaintiffs charge that the Corps of Engineers and the so-called "independent" investigative bodies who are currently engaged in investigating the causes of the levee failures in New Orleans simply cannot be "fair and impartial" watchdogs of the evidence and arbiters of the levee failure theories.  Plaintiffs further charge that quite recent events indicate that on-going investigations may be being steered in directions which are calculated to shift blame and fault from where it truly belongs.

Plaintiffs appear before This Honorable Court with some trepidation, because they are mindful of cases holding that Courts may lack subject matter jurisdiction over claims against the Sovereign prior to the exhaustion of administrative remedies. Nevertheless, the issues which plaintiffs now put before the Court for review are of such import and significance that plaintiffs are willing to risk dismissal of their claims against the United States of America, without prejudice, on a plea of prematurity, so that evidence vital to plaintiffs' case is preserved as opposed to being lost forever.  The undersigned also serves the following notice to the United States of America:  "You can run, but you can't hide".  Whatever the Federal Tort Claims Act (28 USC§2671, et seq.) may require in order to perfect tort claims against the United States of America will be complied with in a timely and proper manner in the name of each plaintiff, unless

Congress decides that the victims of KATRINA warrant "special" consideration under the circumstances.

In order for the Court to have a complete picture for rendering a just decision, the Court should know about who is investigating what in the aftermath of KATRINA. First and foremost, the U.S. Army Corps of Engineers itself has established the Interagency Performance Evaluation Task Force (IPET) to perform "comprehensive analysis to determine exactly what happened in the New Orleans hurricane and flood protection system during Hurricane KATRINA." No matter what this particular investigative team is called, and no matter who is on the team, IPET is a United States Government and Corps of Engineers appointed investigative body. Plaintiffs are unwilling to place their evidentiary destiny in the hands of IPET.

In addition to IPET, in October 2005, Secretary of Defense Rumsfield authorized the American Society of Civil Engineers (ASCE) to convene an external review panel to conduct continuing expert review of the work performed by the federal government's IPET, admittedly "organized" by the U.S. Army Corps of Engineers. The press release which announced Secretary Rumsfield's directive is to be found at http://www.ASCE.org/pressroom/news/display. Accordingly, the very group appointed to ostensibly "review" the work done by IPET was assigned that task by the Department of Defense, to which the U.S. Army Corps of Engineers belongs. Plaintiffs are unwilling to place their evidentiary destiny in the hands of the ASCE, who received their authorization for external review of IPET's report from the Department of Defense.

A third group, "Team Louisiana", which includes 6 LSU professors and 3 engineers, is working for the Louisiana Department of Transportation and Development,

which is a co-defendant in this action.  Plaintiffs are unwilling to place their evidentiary destiny in the hands of Team Louisiana.

Thus far, two (2) interim reports have been issued, one by IPET and the other by ASCE:

1)   Preliminary Report on the Performance of the New Orleans Levee Systems in Hurricane KATRINA dated November 2, 2005, and issued by the ASCE in response to a deadline for testimony before the U.S. Senate Committee on Homeland Security and Government Oversight, available at http://www.ASCE.org.

2)   Summary of Field Observations Relevant to Flood Protection in New Orleans, Louisiana, by IPET, dated December 5, 2005.  This particular report is IPET's critique of the ASCE's Preliminary Report, supra, and is available at http://ipet.wes.army.mil.

The New York Times reported on December 1, 2005 that Team Louisiana had prepared a "draft report", which was described generally in the Times Picayune and The Advocate on November 30, 2005.  However, Team Louisiana's draft has not been made public.

The Times Picayune reported on December 23, 2005 that the Defense Department also had appointed the National Academy's National Research Council and National Academy of Engineers to review the IPET and ASCE interim reports.  However, the members of the National Academies will not meet formally until January 18, 2006.  Since

-4-

the National Academies work was authorized by the Department of Defense, plaintiffs are unwilling to place their evidentiary destiny in the hands of the National Academies.

The deficiencies in the quality of these investigations only recently came to light as a result of the first truly "public" exercise to take place since the storm, namely the removal of certain sheet piles at the 17th Street Canal, near the North and South ends of the breach at that location.  This work commenced on Monday, December 12, 2005, and four (4) sheet piles were removed on the following day.  The exercise was reported in the local Times Picayune on Tuesday, December 13, 2005, in an article which is appended hereto and marked for identification as Exhibit No. 1.  That article also reported the results of sonar readings of certain as of yet unidentified sheet piles, which had been taken previously, which indicated the sheet piles for the 17th Street Canal floodwall reached only 10 feet below sea level.

It is to be noted that the sheet piling which were actually removed from the ground on December 13, 2005 did not fail, and were not involved in the actual breaching of the floodwall of the 17th Street Canal during or after Hurricane KATRINA.  No sheet piles which were actually in the area of the breach have as of yet been excavated or pulled out of the ground.  Accordingly, at this point in time we are still left to speculate on the actual length of the sheet piles in the area of the breach at 17th Street and elsewhere.

Notice of the removal of the sheet piles had been given to the undersigned by the Corps of Engineers via counsel for the Orleans Parish Levee Board.  On Thursday, December 8, 2005, the attached E-mail message, marked for identification as Exhibit No. 2, was received, notifying the undersigned that the Corps of Engineers would "begin

removal of existing flood wall sections" at the 17[th] Street Canal site commencing on the following Monday.  Notwithstanding the fact that this litigation has been pending since September 19, 2005, and notwithstanding the fact that a detailed Freedom of Information Act request for documents and physical evidence had been hand-delivered to the Corps of Engineers on October 12, 2005,[1] the Corps' E-mail message of December 8, 2005 was the first time that the Corps of Engineers, either directly or indirectly, had notified the undersigned about any inspection or work in the areas of breached levees since KATRINA.  The E-mail further advised that "only one (1) person will be allowed to attend the removal per interested group or party", thus restricting access.  Thereafter, a mechanical engineer and metallurgist, Mr. Robert Bartlett of Bartlett Engineering of

---

[1]  The FOIA request to the Corps of Engineers of October 12, 2005, which is appended hereto and marked for identification as Exhibit No.3, specifically addressed sheet piles, reinforcing bars and concrete panels at each "BREACH" site:

> "Further, I am given to understand that the Cantilever "I" – Type sheet pile walls, reinforcing bars and concrete panels at each of the "BREACH" sites may be covered with backfill or other debris.  These items are very important to a forensic investigation of the causes of the breaches in the levee systems at each location, and the undersigned and his clients expect the U.S. Army Corps of Engineers to take all reasonable and prudent steps to preserve evidence for use in litigation, and to avoid spoilation of physical evidence.  Accordingly, please advise the following when the Cantilever "I"- Type sheet pile walls, reinforcing bars and concrete panels, which were breached at each of the breach sites in the 17[th] Street, London Avenue and Industrial Canals will be made available for inspection:

> Ashton R. O'Dwyer, Jr.
> 6034 St. Charles Avenue
> New Orleans, LA 70118
> 504-884-6727

> Hector C. Pazos
> Ocean Oil International Corp.
> 566 Villa Grande Ave. S
> St. Petersburg, FL 33707
> 727-347-2556
> 727-415-7192

The original FOIA request to the Corps was amended on November 16, 2005.  A copy of the FOIA amendment is appended hereto and marked for identification as Exhibit No. 4.

Metairie, Louisiana, was identified and designated by the undersigned to attend the removal on behalf of plaintiffs.

What Mr. Bartlett observed, and how he was treated during the 2 day "inspection" on December 12 and 13, 2005 is memorialized in the attached facsimile to the undersigned from Mr. Bartlett dated December 15, 2005, a copy of which is appended hereto and marked for identification as Exhibit No. 5. The Court will note that Mr. Bartlett was relegated by the Corps of Engineers to "Siberia", in an area far removed from the evidence which the Corps itself designated "the exclusion zone", and that he was denied access to "the construction zone", which was occupied by lawyers for the Corps of Engineers and their experts. In short, the Corps of Engineers' relegating Mr. Bartlett (and representatives of other litigants similarly situated to plaintiffs) to "the exclusion zone" totally frustrated any meaningful inspection of physical evidence by Mr. Bartlett.

While Mr. Bartlett was at the 17th Street Canal site he was able to see, and to recognize the importance of, two (2) mounds of earth, which had shifted laterally some 45 feet, and upwards, during or after KATRINA. These two (2) earthen mounds, which still contain inclined sheet piles which were also moved laterally and upwards during or after KATRINA, contributing to the breach at the 17th Street Canal site, are now surrounded by dirt roads which were constructed in the area by the Corps of Engineers or its contractor in KATRINA's aftermath. In addition to being "in harm's way" by virtue of their proximity to the dirt roads, which are traversed on a daily basis by large trucks and heavy equipment, the earthen mounds and the vital sheet pile evidence which they

-7-

contain are further subjected to deterioration and erosion by the natural elements of wind, rain, etc.

Recognizing the importance of the earthen mounds and the sheet piles which they contain, on December 15, 2005, the undersigned directed a facsimile to the United States Attorney who is representing the United States of America in the KATRINA litigation, namely Peter Mansfield, Esq., requesting that he issue instructions to the Corps of Engineers and its contractors that the mounds not be further disturbed until they could be jointly surveyed and inspected and proper soils analysis and other testing accomplished pursuant to a protocol mutually agreed upon in advance. A copy of the undersigned's December 15, 2005 facsimile to Mr. Mansfield is appended hereto and marked as Exhibit No. 6. The referenced facsimile was not immediately responded to by Mr. Mansfield, and when it was responded to on December 19, 2005 (see _infra_), Mr. Mansfield's "response" was wholly unsatisfactory.

In the meantime, another of plaintiffs' experts, Hector V. Pazos, a naval architect, marine engineer and registered professional engineer, directed the attached facsimile of December 16, 2005 to the undersigned. Mr. Pazos' facsimile, a copy of which is appended hereto and marked for identification as Exhibit No. 7, highlights the importance of the sheet piles which are contained in the earthen mounds, the mounds themselves, and other sheet piles in the breach site, which are now buried under gravel, rock and backfill, because much of the other physical evidence in the area has already been "washed away".

When no immediate response from Mr. Mansfield to the facsimile of December 15, 2005 (Exhibit No. 6) was forthcoming, the undersigned correctly anticipated that it would be necessary to solicit the intervention of This Honorable Court in order to ensure

the preservation of evidence and to obtain discovery necessary to plaintiffs' case.
Accordingly, on December 16, 2005, he directed another facsimile to Mr. Mansfield and
to Thomas P. Anzelmo, Esq. representing a co-defendant, the Orleans Parish Levee
Board, scheduling a conference pursuant to Rules 26(c) and 26(f), and pursuant to the
Local Rules of Court, in order to discuss, inter alia, a proper discovery plan for this case.
A copy of that facsimile is appended hereto and marked for identification as Exhibit No.
8. This facsimile was responded to by Mr. Mansfield via facsimile dated December 19,
2005, which is appended hereto and marked for identification as Exhibit No. 9, and by
Mr. Anzelmo via facsimile of the same date, which is appended hereto and marked for
identification as Exhibit No. 10. Essentially, counsel told the undersigned that he could
"Go to hell", and that they would not participate in any discovery conference. The Court
will note that Mr. Mansfield's facsimile, (Exhibit No. 9), is significant for a number of
other reasons:

1)   It fails to address proper investigation of the very fragile earthen mounds
     at all, notwithstanding the fact that the undersigned's facsimile to Mr.
     Mansfield of December 15, 2005 (Exhibit No. 6) specifically requested a
     joint survey and sampling of this crucial, and perishable, evidence.[2]

2)   It "hides" behind the Corps of Engineers' need to perform "emergency
     repairs" at the damage sites, saying that "requests for discovery" must
     "accommodate" the need to timely complete repairs, without responding at
     all to the legitimate discovery requests.

---

[2] It is to be noted that, earlier on December 19, 2005, the undersigned directed a facsimile to Messrs.
Mansfield and Anzelmo, to which was attached Mr. Pazos' detailed proposed Protocol for proper discovery
of the earthen mounds and sheet piles at the 17th Street Canal. These documents are appended hereto and
marked for identification as Exhibit No. 11. Accordingly, the discovery which plaintiffs want from the 17th
Street Canal site is no "mystery".

3)   It gives notice that the undersigned and his experts will be treated no differently from counsel for other litigants, which "translated" into English probably means that they will be permanently relegated to "the exclusion zone" designated by the Corps, and denied all access to vital evidence in the future.

4)   It contains the admonition that any requests for inspection of sites or physical evidence should be directed to the Corps pursuant to the provisions of the Code of Federal Regulations.

All of these matters were discussed by the undersigned with his experts, and on December 27, 2005, in a letter to the undersigned of the same date, Mr. Pazos addressed some glaring "omissions" in the IPET and ASCE reports issued to date. The fact that these reports could be issued over the signatures of respected professionals working for the federal government, the Department of Defense, the U.S. Army, and the State of Louisiana, and still contain such glaring omissions smacks of "cover-up" of evidence which could prove to be extremely embarrassing to the Corps of Engineers, and expensive to its principal, the United States of America. More particularly, in his "Comments Regarding the IPET Report", which is appended hereto and marked for identification as Exhibit No. 12, and in his December 27, 2005 cover letter of transmittal of the same, appended hereto and marked for identification as Exhibit No. 13, Mr. Pazos addresses the fact that neither of the federal government sponsored reports to date, IPET and ASCE, addresses obvious design, mechanical and supervision deficiencies which are believed to have contributed to the collapse of the floodwalls in the New Orleans Metropolitan Area. More particularly, Mr. Pazos, who already has personally observed

-10-

several of the breach sites, and documented his observations with photographs, is incredulous that the IPET and ASCE reports to date fail to address the following:

1)      Lack of structural continuity between sheet piles and concrete floodwall panels;

2)      Lack of reinforcing bars and welding sufficient to hold the concrete floodwall panels to the sheet piles; and

3)      Under design of the concrete "lips" which were intended to restrain the polyvinyl chloride water stops in the concrete panels, with the result that many of the concrete lips failed during or after KATRINA, resulting in failure of the concrete panels themselves.

In addition, the IPET and ASCE reports, and the national and local Press, continue to emphasize soil instability, when multiple failure mechanisms are to be observed at levee breach sites, which the reports fail to even mention. In short, while the underlying soils undoubtedly played a part in the breach of the levees in New Orleans, the levee failures are believed to have occurred as a result of multiple failure mechanisms, which plaintiffs and their experts should be allowed to properly investigate, as in any litigation. At the moment, this opportunity is being denied to plaintiffs and their experts, causing one to ask, rhetorically, "Why?"

## CONCLUSION

What happened to the City of New Orleans and to its citizens and their property in the aftermath of Hurricane KATRINA has been called ". . . the largest engineering disaster in the history of the United States" by Professor Robert Bea, a professor of civil engineering at the University of California at Berkley, who has been widely quoted in the

national and local media since the storm. Plaintiffs' need for more structured "discovery" than what has been experienced thus far is absolutely necessary to protect plaintiffs' rights in this very significant case. Plaintiffs sincerely hope that the Court will agree, and that the Court will properly "educate" the United States of America how it should conduct itself in response to legitimate requests for discovery and access to evidence, which must be preserved in order to protect plaintiffs' rights.

Respectfully submitted,

LAW OFFICES OF
ASHTON R. O'DWYER, JR.
Counsel for Plaintiffs

By: _____
Ashton R. O'Dwyer, Jr.
In Proper Person
Bar No. 10166
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Telephone: (504) 561-6561
Facsimile: (504) 561-6560

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via facsimile and U.S. Mail, postage prepaid, this 20th day of December, 2005.

_____

-12-

December 15, 2005

**Bartlett**
ENGINEERING

Mr. Ashton O'Dwyer
Law Offices of Ashton R. O'Dwyer
One Canal Place
365 Canal Street
Suite 2670
New Orleans, Louisiana 70130

Subject:   **Experience with Corps During Flood Wall Destructive Testing
            BARTLETT Project No. 911**

Dear Mr. O'Dwyer;

I was at the destructive testing of the flood walls and sheet piles at the 17th Street Canal New Orleans
Flood Wall December 12 and 13, 2005. During this testing, the contractor for the U.S. Army Corps
of Engineers (USACE) collected samples of concrete and rebar, and took elevation and dimensional
(including length) measurements of the sheet piles. The USACE did not appear to have an expert
present who was qualified to observe the sheet pile for damage, deformation or fractures for the
purpose of evaluating their significance with regards to the mode of failure. Unfortunately, I was
forced to remain in the so called "Exclusion Zone" which was approximately 75 feet from the
southern flood wall end and 150 feet from the northern flood wall end. Also, because of the ground
contours and elevations, I was not able to see the area of the sheet pile which was within six feet of
the ground on the south side, and 10 feet from the ground on the north side. It was important for me
to see this operation first hand because the removal of the sheet pile caused damage to the sheet pile
other than the damage which occurred during the failure of the flood wall.

I brought this to the attention of Col. Setliff who then directed me to their in-house counsel, Mr. Alan
Schulz. Mr. Schulz advised me that there was no need for me to be closer because everything was
being recorded on videotape. I pointed out to Mr. Schulz that the trained eye of an expert
metallurgist could not be replaced by a video-camera at a distance and operated by a cameraman
whose skill is camera operation as compared to forensic science. I also pointed out to Mr. Schulz
that by his granting himself access to the site, and excluding representatives of the other interested
parties that he would have an unfair advantage if, for example, he were to depose me regarding the
events or facts obtained during this destructive testing. When I made this point to Mr. Schulz he just
smirked as an acknowledgment of his awareness of his unfair advantage, and did not answer.
I similarly made this point with Col Setliff. I also made that point that this was destructive testing,
and as such it was usual and customary for a technical representative from each party to have equal
access. Mr. Schulz responded that there was no such thing as usual and customary for such
inspections.

Ironically, in reviewing my photographs of the destructive testing, the previous day I had
coincidentally taken several photographs of Mr. Schulz inside of the excavation withing inches of
the sheet piles that were still in the ground, and closely inspecting the features of the sheet piles. At
the time I did not know Mr. Schulz or his role in my exclusion to the destructive testing observation

EXHIBIT NO. 5

Dec. 28. 2005  3:06PM    Bartlett En&n's  (504) 888-9890              No.6908  P. 3

December 15, 2005
**Law Offices of Ashton R. O'Dwyer**
Page 2



area.  Mr. Schulz's action of performing a close up examination of the flood wall demonstrates that Mr. Schulz recognized the benefit of such an examination (see photos 913-015 to 018).

Because I was not able to see first hand which sheet piles came from what location, I asked Dr. Paul Mlaker who is a USACE engineer who works in the Corps' Engineering Research and Development Center in Vicksburg, and who seemed to be the lead technical person at the site. Dr. Mlaker had not recorded which sheet pile came from what location. After asking several other Corps people for assistance in determining where each pile came from, I found Dr. Paul Lowe. Dr. Lowe and I were in the process of piecing together from his memory the original locations of each sheet pile, and had been speaking for less than 3 to 5 minutes when Ms. Mary Kinsey interrupted and said that Dr. Lowe would have to go back to work. She then began talk to me about why my name was not on the site access list prior to my ever introducing myself to her. In other words, when she moved in to cut off my information gathering with Dr. Lowe, she knew very well who I was.

I have memorialized my experience that day to illustrate to you the behavior pattern of exclusion and favoritism that the Corps  people were displaying.  I certainly hope that before any other testing is performed, that the Corps will be more willing to allow equal access to the technical experts representing all parties in this matter. In my professional opinion, in order to prevent one party from being disadvantaged in this matter, before any additional destructive testing is performed, a testing protocol for the particular test must be universally agreed upon, and every party must have the right to have at least one technical expert present at the testing. The presence of the technical expert is not only to look out for the best interest of the represented party, but also to have the equal opportunity to observe important facts that may require that the testing be temporarily stopped or the protocol altered.

Sincerely,
**BARTLETT ENGINEERING**

Robert D. Bartlett, P.E.
Principal Engineer

od913_ltr2a-cor.wpd

LOUISIANA OFFICE

3501 HOLIDAY DRIVE, SUITE #203-A
NEW ORLEANS, LA 70114

CELL (24 HOURS): (504) 367-4072
FAX: (504) 367-3790

Email: Oceanoilpazos@cs.com
www.siterrific.com/pazos

# OCEAN-OIL

## EXPERT WITNESS, INC.

NAVAL ARCHITECTS and MARINE ENGINEERS
MARINE CONSULTANTS

FLORIDA OFFICE

P. O. BOX 47188
ST. PETERSBURG, FL  33743-

566 VILLA GRANDE AVE.  S.
ST. PETERSBURG, FL  33707
PH: (727) 347-2556
FAX: (727) 343-9717
CELL (24 HRS): (727) 415-7192
Email: Hectorpazos75597@aol.cc

COMMENTS REGARDING THE IPET REPORT DATED DECEMBER 5, 2005 ENTITLED:
"SUMMARY OF FIELD OBSERVATIONS RELEVANT TO FLOOD PROTECTION IN
NEW ORLEANS, LA"


NOTES:

- The Interagency Performance Evaluation Task Force (IPET) was established by the USACE, and charged with studying the response of the hurricane protection systems during Katrina.

- The Task Force Guardian (TFG) was activated by the USACE and is responsible to repair the damages to the hurricane protection system.

- The American Society of Civil Engineers (ASCE) was authorized by the Secretary of Defense to conduct a review of the work performed by IPET.

- ASCE teamed up with the National Science Foundation (NSF), releasing a report dated November 2, 2005, titled: "Preliminary Report on the Performance of the New Orleans Levee System in Hurricane Katrina on August 29, 2005".

- The IPET report of December 5, 2005 provides Comments on Chapter Eight of the ASCE/NSF report of November 2, 2005: Summary and Findings.


COMMENTS:

1.  The wording of the observations or findings in chapter eight of the ASCE/NSF report is very general, and some of the comments are no longer considered correct, such as: "Most of the levee and floodwall failures were caused by overtopping". Despite the fact the "overtopping" was not the cause of the failures in most locations of the Metropolitan areas of New Orleans, the IPET team "generally agrees with this statement".

Furthermore, neither the IEPT report nor the chapter eight of the ASCE/NSF report contained any observations or comments regarding design and/or construction deficiencies of the floodwalls, such as:

a).     Lack of structural continuity between the sheet pilings and the concrete floodwall panels noted on the west side breach of the London Canal, which resulted in separation and lateral translation of several concrete panels away from the sheet piling, which remained apparently undisturbed.

This lack of structural continuity could be attributed to the combination of two possible construction deficiencies:

1).     The lack of re-bars that should have been welded to the sheet piling, and:
2).     Insufficient overlapping between the concreted panels and the sheet pilings.

The separation of the concrete panels and the sheet piling appears to indicate that the landside embankment supporting the sheet piling laterally did not fail, at least in the section of the London Canal Levee where the sheet piling remained almost intact.

The above is in contradiction to the conclusion of the ASCE/NSF report, presented on page 4 of the IPET report, which, in reference to the 17th Street and London Ave. Canals, indicates: "There three levee failures were likely caused by failures in the foundation soils underlying the levees, ...". The IPET concurs with these general observations, without making any comments regarding the lack of structural continuity.

b).     The elasticity of the polyvinyl chloride (PVC) water stops was inadequate to allow deformation or deflection of the concrete panels equivalent to the deflection of the sheet piling, or, the reinforced concrete lips designed to restrain the water stops were not strong enough and failed in many locations. No comments regarding the failure of the concrete panels at the water stop connections are mentioned in any of the reports.

2.     Starting at the bottom on page 5 of the IPET report, an extraction from the ASCE/NSF report, which contains a discussion of the application of T-type walls, is included. Because we have not been able to review any documentation or drawings regarding the type of floodwalls existing in various locations, and because all the floodwalls exposed as a result of Hurricane Katrina/Rita are I-type walls, we have been assuming that all the floodwalls in the levees of New Orleans are I-type. Nevertheless, comment d. on page 6 of the IPET report indicates that there are T-walls associated with flooding of New Orleans.

3.     On page 8 of the IPET report, the south breach of the London Canal is discussed, without any mention of the sheet piling that remained undisturbed. Both reports emphasize placing the blame for the levee failure on the instability of the inboard side of the earthen levee embankments, without mention of the deficiencies of the connection of the sheet pilings and the concrete panels.

The avoidance of this important information gives the appearance that the reports attempt to disregard fabrication and supervision deficiencies.

4.     On page 9 of the IPET report, it is indicated that the following items will be shared with the public:

    •   Complete boring records / Test results and other data.

- The content of 235 boxes of design and construction records of the New Orleans Hurricane Protection System, which are being scanned and digitized and are being partially (releasable documents only) posted for public information as of November 22, 2005. Although this portion of the report indicates that documentation has been posted on the public website: https://ipet.wes.army.mil, downloading of any of this documentation has been found impractical and unsuitable or overwhelming for the intended use.

The documentation that is advertised as being available to the public is presented in a computerized format is difficult to use since it takes many hours to download a single file. As an example, an attempt to download the file "Lake Pontchartrain, LA and Vicinity" resulted in downloading continuously in excess of 3 hours until it was decided to abandon this task without completing the download of this file. Therefore, a better procedure to review documentation of interest must be found.

5.    Summary:

The IPET report is very ambiguous and in most of the IPET comments regarding the ASCE/NSF report, IPET uses the words "The IPET team generally agrees with" …. the ASCE/NSF statements and/or observations.

This can be interpreted that IPET is not in full agreement with the ASCE/NSF in various ASCE/NSF's comments, statements and/or observations.

Furthermore, the IPET and the ASCE/NSF reports do not mention at all the obvious design and construction deficiencies, such as the apparent lack of re-bars in the sheet piling or insufficient overlapping between the concrete panels and the sheet piling, resulting in lack of structural continuity of the floodwalls of the west breach of the London Canal.

Please let me know if I can be of further assistance.

Sincerely,

Hector V. Pazos, P.E.

LOUISIANA OFFICE

3501 HOLIDAY DRIVE, SUITE #203-A
NEW ORLEANS, LA 70114

CELL (24 HOURS): (504) 367-4072
FAX: (504) 367-3790

Email: Oceanoilpazos@cs.com
www.siterrific.com/pazos

# OCEAN-OIL

## EXPERT WITNESS, INC.

NAVAL ARCHITECTS and MARINE ENGINEERS
MARINE CONSULTANTS

FLORIDA OFFICE

P. O. BOX 47188
ST. PETERSBURG, FL 33743-

566 VILLA GRANDE AVE. S.
ST. PETERSBURG, FL 33707
PH: (727) 347-2556
FAX: (727) 343-9717
CELL (24 HRS): (727) 415-71 92
Email: Hectorpazos75597@aol.co.

December 27, 2005

Mr. Ashton R. O'Dwyer, Jr.

Re: Investigation of the flood protection of New Orleans

Dear Mr. O'Dwyer:

Attached are my comments regarding the Interagency Performance Evaluation Task Force (IPET) report dated December 5, 2005, entitled: "Summary of Field Observations Relevant to Flood Protection in New Orleans, LA".

It is surprising that the report does not mention the deficiencies, noted in some locations, of the connection between the row of sheet pile that was driven into the levee embankment, and the concrete panels capping the sheet piling.

In view of the above, the IPET report cannot be considered to be reliable or impartial, to be used as one of the basis to formulate opinions regarding the causes of the failure of the levees intended to protect New Orleans.

For this reason, I would like to recommend the submittal of a request to the court to instruct the USACE to allow a review of documents of interest that are necessary to develop the basis for opinions that may be submitted to the court in the future.

To arrive to credible opinions, it is paramount to rely on factual documentation available from the U. S. Army Corps of Engineers (USACE) and/or organizations sponsored by the USACE.

Up to this date, the information made public by the USACE and/or related organizations is very general and ambiguous, lacking details of importance that should have been obvious to the technical personnel that performed the inspections and recorded observations presented in the reports made public recently.

Furthermore, finding the cause of the failure of the levees is of benefit to the entire population of New Orleans and should be treated as a joint effort by all parties involved. I would be pleased to share my comments with any party of interest upon reviewing documentation indicating that my comments are correct and not a misinterpretation of visual observations.

EXHIBIT NO. 13

**Engineers' Exhibit 4**
Berthelot
EDLA, CV No. 05-4182
Cons. Katrina Canal









A0006996

# CONTRACT COMPLETION STATEMENT

| 1. FROM: *(Contract Administration Office)* | | 2a. PIIN NUMBER |
|---|---|---|
| U. S. ARMY ENGINEERING DISTRICT, NEW ORLEANS<br>CORPS OF ENGINEERS<br>POST OFFICE BOX 60267<br>NEW ORLEANS, LA 70160-0267 | | DACW29-**94-C-0079**<br>**2b. LAST MODIFICATION NUMBER**<br>**P10016**<br>2c. CALL / ORDER NUMBER |

| 3. TO: *(Name and Address of Purchasing Office and Office Symbol of the PCO, if known)* | 4. CONTRACT IDENTITY CODE AND ADDRESS |
|---|---|
| ● U.S. Army Engineer District, New Orleans<br>CORPS of ENGINEERS<br>Post Office Box 60267<br>New Orleans, La. 70160-0267<br><br>● ● | |
| | 5. EXCESS FUNDS ☐ YES ☒ NO<br>$ _____ |

| 6a. IF FINAL PAYMENT HAS BEEN MADE, COMPLETE ITEMS 6b., AND 6c. | 6b. VOUCHER NUMBER<br>**5-499** | 6c. DATE<br>**2/4/94** |
|---|---|---|
| 7a. IF FINAL APPROVED INVOICE FORWARDED TO D.O. OF ANOTHER ACTIVITY AND STATUS OF PAYMENT IS UNKNOWN, COMPLETE ITEMS 7b, AND 7c. | 7b. INVOICE NUMBER | 7c. DATE FORWARDED |

| 8. REMARKS |
|---|
| <br><br><br><br><br><br> |

| 9a. ALL ADMINISTRATION OFFICE ACTIONS REQUIRED HAVE BEEN FULLY AND SATISFACTORILY ACCOMPLISHED. THIS INCLUDES FINAL SETTLEMENT IN THE CASE OF A PRICE REVISION CONTRACT. | | |
|---|---|---|
| 9b. TYPED NAME OF RESPONSIBLE OFFICIAL<br><br>MICHAEL L. JOHNSON | 9c. SIGNATURE | 9d. DATE<br>**3/10/97** |

## FOR PURCHASING OFFICE USE ONLY

ALL PURCHASING OFFICE ACTIONS REQUIRED HAVE BEEN FULLY AND SATISFACTORILY ACCOMPLISHED. CONTRACT FILE OF THIS OFFICE IS HEREBY CLOSED AS OF:

☐ DATE SHOWN IN ITEM 9d. ABOVE.

☐ DATE SHOWN IN ITEM 10e. BELOW. *(Check this box only if final completion of any significant purchasing office action extends more than three months beyond close-out date shown in item 9d. above. In such cases, submit a copy of the completed form upon final accomplishment of all purchasing office actions to the contract administration office. (Upon receipt, the contract administration office shall extend its contract file close-out date accordingly.))*

| 10b. REMARKS |
|---|
| <br><br><br>- <br> |

| 10c. TYPED NAME OF RESPONSIBLE OFFICIAL | 10d. SIGNATURE | 10e. DATE |
|---|---|---|
| | | |

**DD Form 1594, FEB 70**     REPLACES EDITION OF 1 JUN 68 WHICH IS OBSOLETE     222/261

CELMN-RM-FE (37)                          Date: 10 March 1997

MEMORANDUM FOR: See Distribution

SUBJECT:  Final payment made on Contract

            ___ Supply   _x_ Construction   __ Architect Engineer

**Reference:  AR 37-107**

     a.  **Name of contractor:** _B&K Construction_

     b.  **Final payment made on contract no:** _DACW29-94-C-0079_

     c.  **Date of final payment:** _2/4/97_

     d.  **D. O. Voucher no:** _5499_
                                          *totl* *4,600,828.78*
     e.  **Total payments made under contract:** _$4,592,777.20_


                         **/S/**
                         **CHRISTEL McDonald**
                         **C/Examination**


**Distribution:**

**CELMN-OC**
**CELMN-RE**
**CELMN-ED**
**CELMN-NO**
**CELMN-CT**    - **Kenny Enclade (Construction Contract)**
**CELMN-PM-M**  - **(BEC21, & FWL21)**
**CELMN-CD-LA** - **Marilyn Sirkis**
**CELMN-RM-FE** - **Christel McDonald**
**CELMN-RM-FT**  -**Carol Joseph (BEC2111000N0LML & FWL2111000N0LML)**


**\* NOTE**
**Distribution of all final payments are sent to each office,**
**if copy(s) is not needed, please disregard.**

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE<br>090 | PAGE OF PAGES<br>1    3 |
|---|---|---|---|
| 2. AMENDMENT/MODIFICATION NO.<br>P10016 | 3. EFFECTIVE DATE<br>05/07/97 | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |

| 6. ISSUED BY            CODE   ISSUE1 | 7. ADMINISTERED BY (If other than Item 6)     CODE   ADMIN1 |
|---|---|
| US ARMY ENGR DIST  NEW ORLEANS<br>PO BOX 60267<br>NEW ORLEANS LA 70160-0267<br><br>Mike Johnson        SC5(504) 862-2879 | US ARMY ENGR DIST, NEW ORLEANS<br>ATTN CELMN-CT<br>PO BOX 60267<br>NEW ORLEANS LA  70160-0267    MAY 8 1997 |

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)    Vendor ID: 00001344 | (X) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|
| B & K CONSTRUCTION<br><br>1905 HIGHWAY 59<br>MANDEVILLE LA 70448 |   | 9B. DATED (SEE ITEM 11) |
| | X | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>DACW29-94-C-0079 |
| | | 10B. DATED (SEE ITEM 13)<br>07/11/94 |
| CODE    0GTN3       FACILITY CODE | | |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment;  (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDG- MENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required)<br>No additional funds are required. | Mod Obligated Amount US      $0.00 |
|---|---|

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| (X) | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority)  THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103 (b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT:     Contractor ☒ is not,    ☐ is required to sign this document and return _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

    The above numbered contract for Lake Pontchartrain, LA. & Vicinity, High Level Plan, London Avenue Outfall Canal, Parallel Protection, Mirabeau Avenue to Leon C. Simon Boulevard Floodwall, Orleans Parish, LA., is modified to closeout this contract.

    Total contract price is $4,592,777.20. All items in this contract has been closed.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)<br>Diane K. Pecoul      002 |
|---|---|
| 15B. CONTRACTOR/OFFEROR           15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA           16C. DATE SIGNED |
| _____<br>(Signature of person authorized to sign) | BY  _____<br>(Signature of Contracting Officer)    7 May 97 |

**Engineers' Exhibit 5**
Berthelot
EDLA, CV No. 05-4182
Cons. Katrina Canal

1

<div style="text-align:center">

1         IN THE UNITED STATES DISTRICT COURT

2       FOR THE EASTERN DISTRICT OF LOUISIANA

3               NEW ORLEANS, LOUISIANA

</div>

4

5  MAUREEN O'DWYER, ET AL.          CIVIL ACTION 05-4181-"K"

6  VERSUS                          NEW ORLEANS, LOUISIANA

7  UNITED STATES OF AMERICA, ET AL.   WEDNESDAY, JANUARY 25, 2006

8  ****************************************************************

9         HEARING ON PLAINTIFFS' MOTION FOR PROTECTIVE ORDER
        BEFORE THE HONORABLE DANIEL E. KNOWLES, III
10              UNITED STATES MAGISTRATE JUDGE
   ****************************************************************
11  APPEARANCES:

12

   For the Plaintiffs:          BY;  ASHTON O'DWYER
13                               One Canal Place, Suite 2670
                                 New Orleans, Louisiana   70130
14                               (504)561-6593

15  For the United States:       BY:  CATHERINE J. FINNEGAN
                                 Dept. of Justice, Torts Branch
16                               P.O. Box 888
                                 Benjamin Franklin Station
17                               Washington, D. C. 20044
                                 (202)616-4916
18
   For La. Dept.of Justice:      BY:  MICHAEL COURTNEY KELLER
19                               Litigation Department
                                 601 Poydras Street, Suite 1725
20                               New Orleans, Louisiana   70130
                                 (504)599-1200
21
   For Eustis Engineering:       Gardner & Kewley
22                               BY:  THOMAS FRANCIS GARDNER
                                 1615 Metairie Road, Suite 200
23                               Metairie, Louisiana   70005
                                 (504)832-7222
24

25

1  Stilwell and I had a long conversation about photos and other
2  things.  He never called me back to say he didn't get them.  I
3  assumed Mr. Bartlett had done what I am paying him to do, which
4  is to follow my instructions.

5      With respect to computers and photos and e-mailing people
6  things, I have a letter that Mr. ~~Dess~~ Panos (phonetically) sent me.
7  It is dated January 22nd, which details his walking through the
8  ~~IPBC~~ IPET web site among a couple of other things.  My 35-year
9  relationship with Lemle & Kelleher did not survive Katrina.
10  Since then I have had to set up my own office, set up my own
11  computer.  And I will tell you that photos, in particular ~~in~~ and
12  printing documents in the right size, has been one of the most
13  perplexing things that I have ever experienced with the web.

14      The ~~IPBC~~ IPET site that Mr. Gardner refers to has so much stuff
15  on it.  I mean does he really expect me to download 15 separate
16  files entitled plans and specs to hope that I find one group of
17  documents out of thousands that may refer to the floodwall and
18  sheet pile connection at 17th Street?  It is undoable, and Mr.
19  ~~Pose~~ Panos explains why it is undoable.

20      And even the plans that we have been able to see are so tiny
21  you need a magnifying glass to read them, and even then you can't
22  read them.  So it's not as easy as counsel suggests.  That's my
23  rebuttal, Your Honor, and I respectfully submit I am entitled to
24  the relief I request.

25      THE COURT:  Thank you, sir.  The Court is, of course,