FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JUL 11  PM 1: 41

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
### NEW ORLEANS DIVISION

| | | |
|---|---|---|
| **COLLEEN BERTHELOT, et al.** | * | **CASE NO.** |
| **VERSUS** | * | **NO. 05-4182** |
| **BOH BROTHERS CONSTRUCTION CO., et al.** | * | **SECTION " K "** |
| | * | **MAG. NO. "2"** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' MEMORANDUM
## IN OPPOSITION TO THE
## MOTIONS FILED BY THE
## NEW ORLEANS LEVEE BOARD AND
## THE NEW ORLEANS SEWERAGE AND WATER BOARD

**MAY IT PLEASE THE COURT:**

Preliminarily, Plaintiffs in Civil Action No. 05-4181 bring to the Court's attention the fact that the Plaintiffs' Interim Liaison Committee already has filed an Omnibus Memorandum in Opposition to the Motion(s) to Dismiss filed by the New Orleans Levee Board and by the New Orleans Sewerage and Water Board. See Record Document No. 695.[1] Plaintiffs in No. 05-4181 wish to avail themselves of the arguments advanced by the Committee in the Omnibus Memorandum in Opposition. Nevertheless, because substantive rights of plaintiffs in No. 05-4181 could be adversely affected by the Court's

---

[1] See also Record Document Nos. 696 and 697.

Fee_____
Process_____
X  Dktd_____
✓  CtRmDep_____
___ Doc. No._____

ruling on the pending motions, plaintiffs in No. 05-4181 also wish to advance the following separate arguments in opposition to the pending Motions to Dismiss claims.

**WHO ARE PLAINTIFFS AND WHAT DID
PLAINTIFFS PLEAD AGAINST THE
NEW ORLEANS LEVEE BOARD AND THE
<u>NEW ORLEANS SEWERAGE AND WATER BOARD?</u>**

In the Original Complaint, plaintiffs averred that they were representatives of the following classes of people which are relevant to the claims asserted against the New Orleans Levee Board and the New Orleans Sewerage and Water Board:

A.  Survivors of human beings who died as a result of government's intentional and negligent malfeasance, misfeasance and non-feasance prior and after Hurricane KATRINA.

B.  Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered bodily injury, mental suffering and emotional distress as a result of government's intentional and negligent malfeasance, misfeasance and non-feasance prior to and after Hurricane KATRINA.

C.  Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered loss of or damage to property as a result of government's intentional and negligent malfeasance, misfeasance and non-feasance, whether by flood, fire or governmental sanctioning of urban terrorism. See *infra*.

*  *  *

F.  Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered environmental damages akin to contamination of natural resources under the federal and state legislation which make provision for

-2-

Natural Resource Damage Assessments and damages recoverable under the Oil Pollution Act of 1990, the Louisiana Oil Spill Prevention and Recovery Act and CERCLA, among others.  Original Complaint, Article II, pp. 6-12.[2]

In their Original Complaint, plaintiffs alleged that the New Orleans Levee Board and the New Orleans Sewerage and Water Board were liable to them for the damages sustained on a number of legal theories applicable to claims against State and/or local Governmental entities, and against public officials,[3] including:

Incompetence

Violation of duty and statute

Negligence

Gross negligence

Malfeasance

Misfeasance

Non-feasance

In addition to their allegations of incompetence, violation of duty and statute, malfeasance, misfeasance and non-feasance, negligence and gross negligence, against the New Orleans Levee Board and the New Orleans Sewerage and Water Board, among others, plaintiffs went to great lengths in their pleadings to allege very specific causes of action against the New Orleans Levee Board and the New Orleans Sewerage and Water Board, which plaintiffs described in the following Counts in their Complaint, as amended:

---

[2]  The Original Complaint has now been amended to include plaintiffs from New Orleans East, as well as from St. Bernard Parish.
[3]  James Huey also was sued individually and in his capacity as President of the New Orleans Levee Board.; C. Ray Nagin was sued individually, in his capacity as Mayor, and in his capacity as President of the New Orleans Sewerage and Water Board.

## VI.

Plaintiffs' specific causes of action asserted against defendants are itemized and described in the following "Counts".

### ARTICLE VIII.
### COUNT 2

Plaintiffs reaver and reiterate all of their allegations as aforesaid, and in addition aver that certain of the defendants intentionally, negligently (including acts and omissions which constituted both gross and simple negligence), and with malfeasance, misfeasance and non-feasance, failed in their duty to ensure competent design, construction, maintenance and inspection of the levee systems for the Industrial Canal, the London Avenue Canal and the Seventeenth Street Canal, which were defectively designed, constructed, maintained and inspected, the result being that a large part of the habitable homes and businesses in the Parish of Orleans . . ., State of Louisiana, were destroyed or damaged - not by Hurricane KATRINA, but by incompetence on the part of men to whom the citizens of New Orleans and Metairie, Louisiana, entrusted the safety of their lives and property.[4]

### ARTICLE IX.
### COUNT 3

Plaintiffs reaver and reiterate their allegations as aforesaid, and in addition aver that certain defendants intentionally, negligently and with malfeasance, misfeasance and non-feasance failed to timely stop the

---

[4]   Article VIII, Count 2, was amended by Sixth Supplemental and Amending Complaint, filed of record herein, with leave of Court, on December 5, 2005.

flooding of 80% of "something", which had survived Hurricane KATRINA, but which could not survive the incompetence of government officials at the local, state and federal levels.

*   *   *

### ARTICLE IV.
### COUNT 9

Plaintiffs reaver and reiterate all of their allegations as aforesaid, and in addition aver that certain of the defendants negligently, intentionally, and with malfeasance, misfeasance and non-feasance caused pollution of the environment of the territory and atmosphere of the parish of Orleans, State of Louisiana, which not only caused damage to plaintiffs and other persons, firms and corporations similarly situated to plaintiffs, but which pollution must be contained, cleaned up, remediated and disposed of – a Herculean and expensive task.

The Court will note the repeated use of the following words in the Original Complaint when describing the complained of acts and omissions of state and local agencies and officials:

Incompetence

Intentionally

Negligently

Malfeasance

Misfeasance

Non-feasance

Plaintiffs concede that, generally, broad statutory immunity from liability is enjoyed by public entities and their officers or employees, based upon "the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties." LSA-R.S. 9:2798.1 (B).[5]   However, the same statute which grants immunity from liability to public entities, or their officers or employees, also makes abundantly clear that immunity from liability is not available when the complained of action or inaction would constitute "criminal . . . malicious, intentional, willful, outrageous, reckless, or flagrant misconduct".   LSA-R.S. 9:2798.1(C)(1) and (2), which has not been cited by the New Orleans Levee Board and the New Orleans Sewerage and Water Board in support of their Motions to Dismiss, provide as follows:

C. The provisions of Subsection B of the section are not applicable:

(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."

Thus, a clear reading of the referenced statute reveals that, rather than establishing that the New Orleans Levee Board and the New Orleans Sewerage and Water Board are immune from suit for any alleged negligence claims based upon the exercise or performance, or the failure to exercise or perform their policymaking or discretionary power, the statute specifically states that immunity is "not applicable" when (1) the acts

---

[5]   Plaintiffs in No. 05-4181 adopt by reference thereto and incorporate herein the argument that the Committee's Omnibus Memorandum in Opposition makes with reference to LSA-R.S. 29:721, et seq., namely that to argue that the statute is applicable to the claims herein asserted is "absurd".

or omissions complained of are not reasonably related to legitimate governmental objective, or (2) the complained of acts or omissions would constitute "malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."

Plaintiffs in this case not only allege that the Levee Board and the Sewerage and Water Board had no discretion to do anything other than to follow the law, but also that their breaking the law constituted "criminal . . ., intentional, willful, outrageous, reckless, or flagrant misconduct" so as to deprive them of any immunity under State law.

Although the Original Complaint charged incompetence, as well as negligent and intentional malfeasance, misfeasance and non-feasance, the word "misconduct" did not appear in the Original Complaint. However, plaintiffs cured that deficiency when they amended their Complaint for the 11th time, with leave of Court, in order to specifically allege conduct which would deprive State and local entities and officials of immunity otherwise enjoyed pursuant to State law, and more particularly LSA-R.S. 9:2798.1. The following allegation has now been perfected against New Orleans Levee Board, the New Orleans Sewerage and Water Board and their respective Presidents:

> "Plaintiffs aver that the acts and omissions by State and local elected and/or appointed officials, complained of herein, constituted criminal, malicious, intentional, willful, outrageous, reckless and/or flagrant misconduct, so as to deprive those officials of immunity from liability pursuant to the provisions of LSA-R.S. 9:2798.1, and, additionally, aver that those officials were in derogation of and violated specific rules and regulations promulgated pursuant to the

-7-

provisions of LSA-R.S. 29:735, so as to deprive those officials of immunity from liability under the provisions of that statute as well.[6]

Plaintiffs' allegations of misconduct include criminal misconduct, in addition to willful misconduct,[7] because malfeasance is a crime in Louisiana. More particularly, plaintiffs aver that the Levee Board, the Sewerage and Water Board, and their Presidents, are guilty of violation of LSA-R.S. 14:134, which deals specifically with the crime of malfeasance in office, and which provides as follows:

### Malfeasance in office

Malfeasance in office is committed when any public officer or public employee shall:

(1)     Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee, or

(2)     Intentionally perform any such duty in an unlawful manner, or

(3)     Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner ;

(4)     Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such lawful duty shall

---

[6]   Eleventh Supplemental and Amending Complaint, Article IV, pp. 5-6.
[7]   Incidentally, plaintiffs disagree with the Third Circuit's <u>Castille</u> opinion, which is not binding on This Honorable Court, to the effect that the "willful misconduct" exception to immunity under the State "emergency" statute applies only to "employees or agents of a political subdivision" and not to the agency or entity itself.

not relieve the public officer or employee of his
lawful duty.

(5)       Whoever commits the crime of malfeasance
in office shall be imprisoned for not more than five
years with or without hard labor or shall be fined
not more than five thousand dollars or both.

Plaintiffs will now expand on each of the "Counts" specifically pleaded against

the Levee Board and against the Sewerage and Water Board, in order.

## COUNT 2
## THE DEFECTIVE DESIGN, CONSTRUCTION, MAINTENANCE AND
## <u>INSPECTION OF THE LEVEES COUNT</u>

This is the most important allegation against the Levee Board and against the

Sewerage and Water Board, because if the levees and retaining walls had not failed, then

the death and destruction visited on plaintiffs and those similarly situated would not have

occurred.  Plaintiffs' Complaint, Article VIII, Count 2, as amended,[8] alleged, in pertinent

part, that those defendants, among others, "intentionally, negligently (including acts and

omissions which constituted both gross and simple negligence), and with malfeasance,

misfeasance and non-feasance, failed in their duty to ensure the competent design,

construction, maintenance and inspection of the levee systems for the Industrial Canal,

the London Avenue Canal, and the Seventeen Street Canal, which were defectively

designed, constructed, maintained and inspected, the result being that a large part of the

habitable homes and businesses in the Parish of Orleans . . ., State of Louisiana, were

destroyed or damaged – not by Hurricane KATRINA, but by incompetence on the part of

men to whom the citizens of New Orleans and Metairie, Louisiana, entrusted the safety of

their lives and property."  Upon information and belief, either The City of New Orleans

---

[8]  Article VIII, Count 2 was amended by Sixth Supplemental and Amended Complaint, filed with leave of
Court, on December 5, 2005.

or the Sewerage and Water Board, the successor-in-interest to the Drainage Commission of the City of New Orleans, or both, own(s) the Canal bottom of the 17th Street Canal. Appended hereto and marked for identification as Exhibit No. 1, are pleadings filed some time ago in connection with efforts to remove obstructions from the 17th Street Canal and to dredge the canal. The Court will note the following allegation made on behalf of the then attorney for the plaintiffs in that action, the Sewerage & Water Board of New Orleans and The City of New Orleans, namely Salvadore Anzelmo, Esq., City Attorney:

"IV.

Petitioner, Sewerage and Water Board of New Orleans, hereinafter S&WBd., constructs, controls, maintains and operates and is charged with the responsibility of providing adequate drainage facilities to the citizens of New Orleans and those citizens of Jefferson Parish served by the 17th Street Canal in accordance with certain agreements entered into by the S&WBd. and Jefferson Parish, pursuant to LSA-R.S. 33:4071, et seq., and in connection therewith, for many years, have acquired servitudes and/or full ownership of land, in the name of the City of New Orleans for the use and benefit of the Sewerage and Water Board of New Orleans, and in such capacity acquired title to the canal located in Jefferson Parish known as the 17th Street Canal. . ."

It is respectfully submitted that, as landowners and/or parties having garde over the levees and retaining wall structures, the Levee Board and/or the Sewerage and Water Board had very definite responsibilities to the citizenry pursuant to the following provisions of the Louisiana Civil Code:

**Art. 667. Limitations on use of property**

Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.  However, if the work he makes on his estate deprives his neighbor of enjoyment or cause damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.  Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa liquitur in an appropriate case.  Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity.   An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives."

**Art. 2315.  Liability for acts causing damages**

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

**Art. 2316.  Negligence, imprudence or want of skill.**

Every person is responsible for the damage he occasions not merely by his Act, but by his negligence, imprudence, or his want of skill.

**Art. 2317.  Acts of others and of things in custody**

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of things which we have in our custody.  This however, is to be understood with the following modification.

**Art. 2317.1 Damage caused by ruin, vice, or defect in things**

The owner or custodian of a thing is answerable for the damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise

such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa liquitur in an appropriate case.

### Art. 2322. Damage caused by ruin of building

The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have bee prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court form the application of the doctrine of res ipsa loquitur in an appropriate case."

Plaintiffs invoked the doctrine of <u>res ipsa loquitur</u> by pleading as follows:

### XVII.

Plaintiffs specifically invoke the doctrine of <u>res ipsa loquitur</u> in connection with the factual and legal circumstances which resulted in the bringing of this action. Complaint, Article XVII, p. 50.

Both the New Orleans Levee Board and the New Orleans Sewerage & Water Board had the continuing obligations of competently discharging the statutory duties for which they were created, and of protecting the citizenry from the types of harm specifically addressed in the above and foregoing Articles of the Louisiana Civil Code.

It is no secret that flooding of New Orleans occurred, at least in part, as a result of the separation of the concrete retaining walls (<u>i.e.</u>, concrete monolith panels) from the sheet piles at the 17th Street and London Avenue breach sites. The concrete retaining walls, or concrete monolith panels, had been placed on top of the sheet piles in 1993 and 1994. People died as a proximate cause of what transpired at 17th Street and London

Avenue.[9]  Untold property was destroyed or damaged.  The Louisiana Civil Code Articles, cited supra, spell out clearly the obligations of a landowner to his neighbors, regardless of obligations separately imposed by virtue of being a State or Local Governmental entity.  On November 18, 2005, the Times Picayune reported that approximately a year before, a resident of Bellaire Drive had reported water in her back yard and in her neighbors' back yards to the Sewerage and Water Board.  Reportedly, the Sewerage and Water Board sent someone to the site "to check the water", which did not abate.  The back yards continued to fill with water, coincidentally in the same area where the 17th Street retaining wall collapsed following KATRINA.  It is now clear that the Sewerage and Water Board took no action, even action no more significant than reporting the conditions to the U.S. Army Corps of Engineers, after this condition had been reported to the Sewerage and Water Board.

In his recent book entitled:  "The Great Deluge", historian and noted author Douglas Brinkley wrote as follows concerning what post-KATRINA locals now call the "Nightmare on Bellaire Drive":

> Without question, the Sewerage and Water Board was lackadaisical in its response to the Bellaire Drive complaints.  Twice – on December 7, 2004, and February 8, 2005 – it sent work crews to Bellaire Drive but couldn't diagnose the problem.  The crews just gave up, writing in one report, "Need environmental to find source of problem." "Environmental" referred to the geological experiments used to determine the root source of the mystery water, but they were never performed. Protocol instructed that the crew should have immediately reported the Bellaire Drive leak – what *Times-Picayune* reporter Bob Marshall called the "wading pond" – to the U.S. Army Corps of Engineers.  The Lakeview residents were terribly ill-served.  Obviously, the heavy seepage pointed to

---

[9]  "The bodies of at least 588 people were recovered in neighborhoods that engineers say would have remained largely dry had the walls of the 17th Street and London Avenue Canals not given way – probably because of poor design, shoddy construction or improper maintenance."  Arizona Daily Star, December 30, 2005, Article by John Simerman, Dwight Ott and Ted Mulnik.

an engineering flaw in the 17th Street Canal, one that had to be fixed immediately. "If someone had told us there was lake water on the outside of that levee – or any levee," Jerry Coletti, a New Orleans operations manager of the Corps, told Bob Marshall, "it would have been a red flag to us, and we would have been out there, without question."

Not calling the Corps was just one bungle in what post-KATRINA locals call the "Nightmare on Bellaire Drive." University of California – Berkeley engineering professor Bob Bea, who later spearheaded an investigation into the 17th Street and London Avenue breaches, said that more than a dozen people had reported other leaks, or water-soaked yards or sand boils – all signs of underground leakage. Residents had given Sewerage and Water and the levee boards kicks to the solar plexus, but they were just ignored. "Some of them said they contacted the Sewerage and Water Board, most contacted the levee board, but in all cases, no one even came out to investigate," a disgusted Bea recalled. "These are all signs that something is wrong. . . . It means your system is stressed."

Plaintiffs ask rhetorically, "Who is responsible for this ineptitude, and could anyone be so *@%!^# stupid, or was this blundering the result of willful misconduct"?

## COUNT 3
## THE FAILURE TO PLUG THE BREACHES AND DEWATER
## *THE CITY COUNT*

Not only did the flooding of the City cause loss of life, personal injury and loss of or damage to thousands of homes and their contents, as well as pain, suffering, mental anguish and emotional distress to thousands of people, but the fact that the flooding was not halted sooner, and the City not dewatered sooner, also caused untold destruction and misery for which plaintiffs are seeking damages.

Precisely what the New Orleans Levee Board and/or the New Orleans Sewerage and Water Board did and/or failed to do in connection with closing the breaches in the retaining walls is still being debated. However, it was alleged in plaintiffs' Complaint, as of the date of filing, September 19, 2005, that: "Upon information and belief, today, approximately three weeks after Hurricane KATRINA only 39 pumps out of a total 179

pumps available to pump water out of the City of New Orleans are working.  Why?"[10]
Plaintiffs also alleged "Upon information and belief, at the time that the levee structures
of the London Avenue and 17th Street Canals broke, many hours after the departure of
Hurricane KATRINA from the New Orleans Metropolitan Area, there were NO, or only
a minimal number of the 179 pumps available to the New Orleans Sewerage & Water
Board working.  Why?"[11]  Plaintiffs respectfully submit that these are colorable claims to
which they deserve answers from the New Orleans Levee Board and from the New
Orleans Sewerage & Water Board, which controlled the operation of the pumps.

## COUNT 4
## THE FAILURE TO SECURE THE WATER SUPPLY COUNT

Although it has not been widely publicized, many properties in the City, indeed
entire city blocks, burned to the ground after Hurricane KATRINA, because for a period
of 10 days commencing on Wednesday, August 31, 2005, there was no water with which
to fight the fires, which were set by looters, or which ignited due to downed electrical
wiring or escaping natural gas.  The City had running water in the aftermath of
KATRINA until approximately 0730-0800 on Wednesday, the 31st, when the water
simply stopped.  Rumors were rampant:  It was even alleged that the Mayor had
intentionally cut off the water in order to force people to evacuate the City.

The truth is much more simplistic and not so Machiavellian, although the truth
does boggle the reasonable mind in demonstrating the gross incompetency of our State
and local "leadership".

The simple truth is that the City lost its water supply early on Wednesday
morning, August 31, 2005, because no one bothered to sand-bag, or otherwise protect, a

---

[10] Complaint, Article V(8), p. 25.
[11] Complaint, Article V(9) pp. 26-27.

particular building at the Sewerage and Water Board water purification plant at Claiborne Avenue and Leonidas Street, which was the last place in the City to flood, and then with the water rising only to the magnanimous depth of one (1) foot, which allowed the generating equipment, which powered the pumps, which were located in the basement of the building, to flood. The result was that the City lost water, and most of the ability to fight fires, for the next 10 days.[12]

Someone bears responsibility for the fiasco at the water purification plant, which is owned and operated by the New Orleans Sewerage and Water Board. "Someone" had almost three (3) days after the hurricane to do what was necessary to protect the continuity of the City's water supply, but someone failed to act. Plaintiffs aver that this failure, if not criminal, intentional or willful, was at least outrageous, reckless or flagrant, so as to constitute misconduct. Accordingly, plaintiffs respectfully submit that this claim should not be dismissed on a summary basis.

### COUNT 9
### THE POLLUTION COUNT

What happened to the City of New Orleans and Greater Metropolitan Area, in terms of damage to the environment, rivals the M/T EXXON VALDEZ casualty. In many ways, the environmental disaster visited on Louisiana is much more serious, because a much greater land area was affected than in Prince William Sound. Also, the M/T EXXON VALEZ case did not result in death or personal injury to human beings. Nor did it result in the destruction and damage to homes and businesses of thousands of people.

---

[12] The undersigned visited the water purification plant, which is near where he grew up, following the storm and personally spoke with witnesses at the plant site about what had happened and why.

Count 9 of plaintiffs' Complaint alleges that the New Orleans Levee Board and the New Orleans Sewerage and Water Board "negligently, intentionally, and with malfeasance, misfeasance and non-feasance caused pollution of the environment of the territory and atmosphere of the Parish of Orleans, State of Louisiana, which not only caused damage to plaintiffs and other persons, firms and corporations similarly situated to plaintiffs, but which pollution must be contained, cleaned up, remediated and disposed of – a Herculean and expensive task."  Complaint, Article XV(9), pp. 43-44.  This Count is linked to Count 2, supra, and it is respectfully submitted should not be dismissed on a summary basis.

## ADDITIONAL COUNTS
## MATERIAL FACTS TO WHICH THERE IS NO DISPUTE

Plaintiffs are mindful of the fact that the New Orleans Levee Board and the New Orleans Sewerage and Water Board have argued that "conclusory and unsupported allegations of intentional conduct are legally inadequate to defeat" a Rule 12(b)(6) Motion to Dismiss,[13] and that "The O'Dwyer plaintiffs' conclusory allegations of willful misconduct . . . are legally insufficient to avoid the application of the Act's clear and unambiguous immunity provisions".[14]  Accordingly, plaintiffs will now enumerate a series of additional specific allegations of fault and/or liability, applicable to the New Orleans Levee Board or to the New Orleans Sewerage and Water Board, or to both. Plaintiffs prefer to label these allegations as "Additional Counts and Material Facts to Which There is No Dispute".  The sources for these additional allegations of fault and/or liability for which the moving Boards do NOT enjoy immunity are, inter alia, the following:

---

[13] Defendants' Brief, p. 15.
[14] Defendants' Brief, p. 16.

1)   U.S. Senate Committee on Homeland Security and Governmental Affairs Report, entitled: "Hurricane KATRINA, A Nation Still Unprepared", Chapter 10.

2)   U.S. House Committee on Homeland Security and Governmental Affairs Report, entitled: "Hurricane KATRINA, a Failure of Initiative".

3)   National Science Foundation Independent Levee Investigation Team Report, entitled: "Investigation of the Performance of the New Orleans Flood Protection Systems in Hurricane KATRINA", Chapters 4 and 12.

4)   Brinkley, The Great Deluge, Harper Collins Publishers (2006), pp. 194-196.

5)   Van Heerden, The Storm, Published by the Penguin Group (2006) pp. 103, 117, 118, 121, 206, 208.

Plaintiffs in Civil Action No. 05-4181 now charge the Levee Board and/or the

Sewerage and Water Board with the following fault and/or liability:

1)   Failing to discharge their statutory obligations as outlined in Titles 33 and 38 of the Louisiana Revised Statutes.

2)   Failing to have or implement competent management structures, rules procedures, standards and training programs.

3)   Lobbying for and approving, in 1985, construction of "The High Level Plan" rather than "The Barrier Plan".

4)   Failing to coordinate with the U.S. Army Corps of Engineers and with State and local agencies so that responsibility for cooperation concerning levees, drainage and flood control, and for inspection and maintenance of completed portions of the Lake Pontchartrain Project, were clearly spelled out.

5)   Ignoring "turnover" letters from the U.S. Army Corps of Engineers.

6)   Failing to properly train employees and to coordinate with the Louisiana Department of Transportation and Development and/or the Association of Levee Boards of Louisiana in order to better discharge the statutory duties of inspecting and maintaining the levee systems.

7)   Failing to competently inspect and maintain the levee systems or maintain proper records addressing inspection and maintenance.

8)   Failing to remedy obviously deficient conditions in the levee systems, which proper inspection should have disclosed.

9)   Failing to notify the U.S. Army Corps of Engineers after several residents of Bellaire Drive reported water in their yards several months prior to KATRINA, and failing to do anything about the water which was reported, independently of the Corps of Engineers.

10)  Institutionalizing a complete lack of cooperation and coordination and between the New Orleans Levee Board and the New Orleans Sewerage and Water Board.

11)  Negligently dredging the outfall canals and other water bodies which eliminated any factor of safety in the levee and retaining wall structures original designs.

12)  Misdirecting funds which should have been earmarked for flood projects and/or flood-related projects to other projects, in violation of law.

13)  Focusing money and resources on non-flood-protection activities, such as the leasing of dock space to a casino, operation of an airport and marinas, and leasing of space to a karate school, beautician schools and restaurants.

14)  Failing to remedy a "low spot" in the retaining wall system on the East side of the London Avenue Canal, at the London Avenue Pumping Station, with the result that storm surge from Lake Pontchartrain poured into the City of New Orleans during Hurricane KATRINA.

15)  Failing to remedy a levee in New Orleans East which it knew to be three (3) feet below its design height.

16)  Failing to repair the W-30 floodgate on the West side of the Industrial Canal prior to KATRINA, and failing to adequately close the gap left in the hurricane protection system by that damaged floodgate.

17)  Failing to have and/or to follow a competent emergency operations plan, including the failure to stockpile materials for use in an emergency.

18)  Failing to learn any lessons from the difficulties which Pittman encountered with the sheet piles and the concrete monolith panels at the 17th Street Canal in 1993 and 1994.

19)  Failing to learn any lessons from prior hurricane exercises, including particularly the Hurricane PAM exercise, among others.

20)  Establishing an Emergency Operations Center in a flood plain.

21)   Failing to have a clear understanding with the Federal Government (COE) and/or with the State (LDTD) about who was responsible for what when there was a problem.

22)   Interfering with and actually obstructing the closing of the levee breaches and the dewatering of the City after Hurricane KATRINA.

23)   Failing to safeguard the water supply of the East Bank of Orleans Parish in the aftermath of Hurricane KATRINA, with the result that entire city blocks burned to the ground, because there was no water to douse the fires.

It is respectfully submitted that the above and foregoing "list of horribles" should be expected in a Third-World Country, where corruption and incompetence are the norm, but not in the richest, most powerful nation on the earth, where good people pay taxes, and entrust their well-being and the safety of their very lives and property to supposedly good-intentioned elected and appointed governmental officials. Yes, plaintiffs accuse the Levee Board and the Sewerage and Water Board of criminal and willful misconduct. And please, don't aver that the errors and omissions identified, supra, were committed "while complying with or attempting to comply with this Chapter".

## SUPREME COURT AND FIFTH CIRCUIT PRECEDENT DICTATE THAT PLAINTIFFS' CLAIMS SHOULD NOT BE SUMMARILY DISMISSED

The leading case on motions to dismiss is Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992 (2002). There, the Supreme court held that a Complaint generally need only contain "a short and plain statement of the claim" as required by Rule 8(a)(2). Swierkiewicz, 122 S.Ct. at 995. The Court went on to note that "this simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." 122 S.Ct. at 998 (citations omitted).

See <u>Furstenfeld v. Rogers</u>, 2002 U.S. Dist. LEXIS 11823, *4-78 (N.D. Tex. 2002),

where the Court, in considering a motion to dismiss, stated:

> A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." <u>Lowrey v. Texas A&M University System</u>, 117 F.3d 242, 247 (5th Cir. 1997), quoting <u>Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards</u>, 677 F.2d 1045, 1050 (5th Cir. 1982), cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L. Ed. 2d 953 (1983). A district court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984). The complaint must be liberally construed in favor of the plaintiff and the allegations contained therein must be taken as true. <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L. Ed. 2d 517 (1993); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996).
>
> The exacting standards governing Rule 12(b)(6) motions must be considered in light of the liberal pleading requirements of Rule 8(a). In what has been characterized as a "seminal pleading case," the Supreme Court recently reminded lower courts that, in order to survive a motion to dismiss, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L. Ed. 2d 1 (2002), quoting FED.R.CIV.P. 8(a)(2). This simplified pleading standard applies to all civil actions. <u>Id.</u>, 122 S.Ct. at 998. Except in a limited set of cases, a plaintiff is not required to plead facts supporting each and every element of his claim or legal theory. <u>Id.</u> Rather, a complaint is sufficient if it "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Id.</u>, quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L. Ed. 2d 80 (1957). See also <u>Higgs v. Carver</u>, 286 F.3d 437, 439 (7th Cir. 2002) (interpreting <u>Swierkiewicz</u> to mean that "[a] complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts"); <u>Greenier v. Pace, Local No. 1188</u>, 2002 U.S. Dist. LEXIS 7384, 201 F.Supp. 2d 172, 2002 WL 731714 at *1 (D. Me. Apr. 23, 2002) ("<u>Swierkiewicz</u> clearly indicates that it is not fatal to plaintiff's case that some of his allegations at this stage may be legal conclusions rather than facts.") Liberal discovery rules and summary judgment motions, not motions to dismiss, should be used to define disputed facts and issues and to dispose of unmeritorious claims. See <u>Swierkiewicz</u>, 122 S.Ct. at 998.

Plaintiffs respectfully submit that applying the facts of this case, and the plaintiffs' specific allegations against the New Orleans Levee Board and the New Orleans Sewerage and Water Board to the above-cited law, dictates that plaintiffs should have their day in Court, preferably before a jury.

## THE CLAIMS FOR PUNITIVE DAMAGES AND FOR ATTORNEY'S FEES

Notwithstanding the fact that the one-year anniversary of Hurricane KATRINA is but a little more than a month away, this case remains in its infancy. Who knows what substantive law will be applied to the facts in determining whether the defendants now seeking dismissal are liable to plaintiffs? Plaintiffs have not abandoned the hope that they may yet persuade the Court that the general maritime law applies to the retaining wall failures which occurred on navigable waters of the United States. There is a split of authority as to whether punitive damages are recoverable under the general maritime law in claims for death, injury or property damage suffered by non-seamen. Davis, Maritime Law Deskbook, Compass Publishing Company (2005), p. 431. The United States Supreme Court has specifically addressed awards of punitive damages in civil cases in BMW of North America v. Gore, 517 U.S. 559 (1996), and made clear that an award of punitive damages is legally justified when the defendant's conduct meets the requisite yardstick of "reprehensibility". Under the general maritime law, "willful or wanton misconduct" has justified recovering punitive damages. In re Merry Shipping, Inc., 650 F.2d 622 (5th Cir. 1981). The general maritime law has been held to permit awards of punitive damages in cases of property damage resulting from reckless or willful destruction of property. CEH, Inc. v. F/V SEAFARER, 70 F.3d 694 (1st Cir. 1995). Plaintiffs already have tried, unsuccessful thus far, to amend their Complaint to invoke

admiralty and maritime jurisdiction in this case.  Hope springs eternal, however, and plaintiffs may yet successfully invoke the provisions of 28 U.S.C. §1653 in order to plead admiralty and maritime law jurisdiction and the application of the general maritime law, including punitive damages, to plaintiffs' claims.

The Interim Plaintiffs' Liaison Committee already has cited the Court to Article 595 of the Louisiana Code of Civil Procedure, which specifically allows "the representative parties their reasonable expenses of litigation, including attorney's fees", in class actions.  Rule 23(h), Federal Rules of Civil Procedure, allows the Court to award reasonable attorney's fees and non-taxable costs under certain circumstances, which Commentators have opined includes those extant in the case at bar.  "[T]he class action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of federal courts".  Wright, Miller & Kane, Federal Practice & Procedure, §1803.  According to the Commentators, ". . . the [class] representatives, by bringing or defending the action, have conferred a benefit on all the members of the class and fairness requires that they be relieved of some of the financial burdens incurred in doing so." Ibid.  Thus, plaintiffs respectfully submit that what would amount to summary dismissal of their "colorable" claims for punitive damages and attorney's fees should not be countenanced at this early stage of this litigation.

## CONCLUSION

For the foregoing reasons, plaintiffs in Civil Action No. 05-4181 respectfully submit that the Motions filed by the New Orleans Levee Board and by the New Orleans Sewerage and Water Board (1) to dismiss the claims asserted against them pursuant to

Rule 12(b)(6), (2) to dismiss plaintiffs' claims for punitive damages, and (3) to dismiss plaintiffs' claims for attorney's fees, should be denied.

Respectfully submitted,

LAW OFFICES OF
ASHTON R. O'DWYER, JR.
Counsel for Plaintiffs

By:

Ashton R. O'Dwyer, Jr.
In Proper Person
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. 504-561-6561
Fax. 504-561-6560

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via E-mail, this 11th day of July 2006.

-24-