FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JUL 14  AM 7: 26

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, ET AL. | * | CIVIL ACTION NO. 05-4182 |
| | * | |
| Plaintiffs | * | SECTION "K" |
| | * | |
| VERSUS | * | |
| | * | JUDGE DUVAL |
| BOH BROTHERS CONSTRUCTION CO., | * | |
| L.L.C., ET AL. | * | |
| | * | MAGISTRATE NO. 2 |
| Defendants | * | |
| | * | |
| THIS DOCUMENT RELATES TO: | * | MAGISTRATE WILKINSON |
| 05-4181, 05-4182, 05-5237, 05-6073, 05-6314, | * | |
| 05-6324, 05-6327, 06-0020, 06-225, 06-886, | * | |
| 06-2278, 06-2287, 06-2545, 06-2346 | * | A JURY IS DEMANDED |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### JOINT REPLY MEMORANDUM IN SUPPORT OF THE BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT AND THE SEWERAGE AND WATER BOARD OF NEW ORLEANS', FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Defendants, The Board of Commissioners of the Orleans Levee District (hereinafter "Orleans Levee District") and the Sewerage and Water Board of New Orleans (hereinafter "S&WB"), respectfully submit this Reply Memorandum for the limited purpose of addressing several erroneous and misguided arguments plaintiffs advance in opposition to their Fed. R. Civ. P. 12(b)(6) Joint Motion to Dismiss on the basis of statutory immunity provided under La. R.S. 29:735 (hereinafter "the Act").

___ Fee
___ Process
_X_ Dktd
_✓_ CtRmDep
___ Doc. No

I. **Plaintiffs' Pleas For Discovery Are Insufficient to Defeat Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

Claiming the instant Motion to Dismiss is "premature," plaintiffs implore the Court to enter an Order denying the Motion, allowing additional time to conduct discovery into various topics related to the Orleans Levee District's and the S&WB's alleged involvement in the levee failures. Plaintiffs' argument is misguided for the following reasons.

First, the sole purpose of a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss is to test the legal sufficiency of the allegations raised in plaintiffs' complaints.[1] In the Fifth Circuit:

> Facts which might come to light during **discovery and development of evidence are irrelevant to consideration of a motion to dismiss pursuant to 12(b)(6)** of the Federal Rules of Civil Procedure, because the Court '**must limit its consideration to the facts alleged in the Complaint.**'(Emphasis added)[2]

Speculation and conjecture about what additional discovery might uncover is legally inadequate to defeat a well-founded Motion to Dismiss. When, as here, Louisiana law clearly bars plaintiffs from advancing the causes of actions contained within the four corners of their complaints, a Motion to Dismiss is the proper procedural vehicle to terminate the litigation as to those causes of action. No amount of discovery will cure this fatal defect.[3]

Any other conclusion would lead to absurd consequences. First, to accept plaintiffs' theory would be tantamount to denying any defendant the right to dismissal of baseless claims

---

[1] A&D Partnership v. The Equity Group, Inc., 1998 WL 141942 (E.D. La.).

[2] Id. at p. 10, citing Murray v. Amoco Oil Co., 539 F.2d 1385 (5th Cir. 1976). See also, Landry v. Airline Pilots' Ass'n Inter. AFL-CIO, 901 F.2d 404 (5th Cir. 1990).

[3] In the past, this Court has granted defendants' 12(b)(6) Motions to Dismiss on the basis of an immunity defense. See, Vanderall v. Peck, 2004 WL 944518 (E.D. La.)(per, J. Duval), affirmed, 129 Fed Appx. 89 (5th Cir. 2005).

until after discovery has been completed. Armed with a "heckler's veto," plaintiffs could block any well-founded Motion to Dismiss by simply praying for additional discovery to ferret out causes of action capable of surviving dismissal. Second, plaintiffs' view would subject both defendants and the judiciary to the expense and time of needless fishing expeditions while plaintiffs search for viable legal theories. As clearly enunciated in A & D Partnership, in ruling on the Orleans Levee District's and S&WB's Motion, this Court must limit its consideration to the facts alleged in plaintiffs' complaints. Plaintiffs' generalized plea for time to conduct additional discovery is legally insufficient to defeat the Orleans Levee District's and S&WB's Motion to Dismiss.

Alternatively, even if the Court were to find merit in plaintiffs' request for time to develop new legal theories through discovery (which the Orleans Levee District and S&WB specifically reject, as detailed above), a brief review of the nature of the discovery plaintiffs propose reveals the futility of their request as it relates to the Orleans Levee District's and S&WB's entitlement to immunity under La. R.S. 29:735. The sole issue here is whether design, construction, maintenance, and inspection of the levees are activities in furtherance of emergency preparedness. These are purely legal issues. It is irrelevant whether dredging took place. It is irrelevant whether permits were issued. It is irrelevant whether water ponded in residents' yards. The narrow concern here is to determine if the plain language of La. R.S. 29:735 bars plaintiffs from asserting the allegations in their complaints. And, as a matter of law, it does. No discovery is necessary to evaluate this uniquely legal question.

Even if the Court were to be sympathetic to plaintiffs' entreaty for time to conduct discovery, it is worth pointing out that, although very little formal discovery has taken place

within the context of this litigation, the events surrounding levee failures following Hurricane Katrina are perhaps the most studied, researched, investigated and written about events since the attacks of September 11, 2001. Tens of thousands of pages of documents are available to plaintiffs in the public domain, all pertaining to the "issues" on which they seek to conduct discovery. The United States Senate, state and federal governmental agencies, private organizations, university scholars and news organizations have written innumerable works discussing the levee failures.

Since the disaster, there have been public hearings where officials at the highest levels have testified under oath about the levee failures. There have been dozens of excavations and inspections of the levees and floodwalls where plaintiffs and their experts have been in attendance. And there have been countless public fora where experts involved in the investigation have discussed, and then subsequently published, their opinions regarding the levee failures. Not since the investigation of the September 11, 2001 attacks has there been a more open and public discussion of the events surrounding what occurred before, during and after August 29, 2005. It is entirely disingenuous for plaintiffs now to suggest, almost one year after Hurricane Katrina struck southeast Louisiana, that inadequate information is available with which to file a complaint.

Finally, the Court's deadline for plaintiffs to file amended pleadings has passed, and the Court has ordered all defendants to file their 12(b)(6) Motions to Dismiss. The Orleans Levee District's and S&WB's Motion is not "premature." Plaintiffs have failed to plead facts capable of defeating the Orleans Levee District's and the S&WB's defense of immunity under La. R.S. 29:735.

## II. Plaintiffs' Baseless and Painfully Strained Reading of La. R.S. 29:735 Falls Short of Defeating The Orleans Levee District's And S&WB's Immunity Defense

Calling the Orleans Levee District and S&WB "absurd" for even suggesting La. R.S. 29:735 affords it immunity for its emergency preparedness activities, plaintiffs state: "Clearly, the Act contemplates that there actually be an impending emergency or an emergency in progress,"[4] and "the immunity applies to acts taken in the face of an impending emergency, not for things done, or not done, years before."[5] The only authority cited for this statement is the definition of emergency preparedness activities as those activities performed in the "mitigation of, preparation for, response to, and recovery from emergencies or disasters."[6] Plaintiffs also chastise the Orleans Levee District and S&WB for citing only one case in support of their Motion.[7] As discussed in greater detail below, the Orleans Levee District and S&WB respectfully submit that the Court should reject plaintiffs' baseless and tortured reading of the Act.

Plaintiffs do not deny that Hurricane Katrina was a "disaster" as defined in the Act. Plaintiffs do not deny that flooding can create emergencies. Plaintiffs do not deny that levees prevent flooding. Plaintiffs do not deny that the Act's willful misconduct exception only applies

---

[4]Plaintiffs' Omnibus Opposition Memorandum, p. 5.

[5]Plaintiffs' Omnibus Opposition Memorandum, p. 7.

[6]La. R.S. 29: 723(3).

[7]Perhaps preoccupied by their Legislative task of rewriting La. R.S. 29:735, adding language requiring an "impending" emergency and excluding emergency preparedness activities "done, or not done, years ago," plaintiffs overlook defendants' citation to and discussion of Castille v. Lafayette City-Parish Consolidated Government, 04-1569(La. App. 3 Cir. 3/2/2005); 896 So.2d 1261, writ denied, 2005-0860(La. 5/13/2005); 902 So.2d 1029. These are the only two cases addressing the current version of La. R.S. 29:735.

to employees or agents of a political subdivision, and not the political subdivision itself. Nor do plaintiffs deny that designing, building, inspecting and maintaining levees to protect residents from flooding are acts in furtherance of emergency preparedness.[8] What plaintiffs contest is the classification of building levees and floodwalls as "emergency preparedness activities" when the levees are built many years before the disaster. Plaintiffs focus on the timing of the activity, arguing that emergency preparations undertaken years before a disaster are excluded from the Act. As plaintiffs see it, the Act's definition of emergency preparedness contains a hidden timetable, encompassing only those activities undertaken while the disaster is "impending."

However, nowhere in the Act does it require an impending emergency "bearing down" on a City in order to trigger application of its immunity provision. Nowhere in the Act is there language excluding from its immunity provision emergency preparedness activities conducted many years before a disaster. The Legislature has not distinguished between those emergency preparedness activities undertaken in advance of a disaster or those undertaken immediately before a disaster. Plaintiffs' reading of the Act, though remarkably creative, is baseless, strained and replete with *ipse dixit* conclusions irreconcilably divorced from the plain language of the statute.

The stated purpose of the Act is described as follows:

> Because of the existing **possibility** of the occurrence of emergencies and disasters of unprecedented size and destructiveness resulting from terrorist events, enemy attack, sabotage, or other hostile action, or from fire, flood, earthquake, or other

---

[8] On this issue, plaintiffs cite Hontex Enterprises, Inc. v. City of Westwego, 02-506 (La. App. 5 Cir. 12/11/2002); 833 So.2d 1234, writ denied, 2003-0505 (La. 9/5/2003); 852 So.2d 1041. Plaintiffs argue the levee built in Hontex, which the Court found was an emergency preparedness activity, is distinguishable from the instant levees because the levee in Hontex was built during a pending disaster, and not many years before the disaster.

>  natural or man-made causes * * * (and) to reduce vulnerability of people and communities of this state to damage, injury and loss of life and property resulting from natural and man-made catastrophes [9]

Preparations for emergencies of unprecedented size and destructiveness do not take place while the emergency is impending or "bearing down" on a city. Preventing terrorist attacks, for example, requires years of preparation. Fortifying the State's defenses against attack, sabotage or other hostile actions takes time. According to plaintiffs, however, the Act's definition of emergency preparedness contemplates only those activities undertaken after the terrorist lights his fuse, after the North Korea's missiles enter our airspace, or after Hurricane Katrina "bears down" on the State. The Act's plain language belies plaintiffs' tortured interpretation.

La. R.S. 29:723(3) defines emergency preparedness as: "the mitigation of, preparation for, response to, and the recovery from emergencies or disasters." Conspicuously absent from the definition is language placing a temporal qualification on the terms "preparation for." Had the Legislature intended to include such a limitation, it would have done so. Moreover, in order to accept plaintiffs' temporal limitation to emergency preparedness, one must overlook the terms "response" and "recovery." These terms *do* imply activities undertaken while a disaster is taking place or immediately after the disaster has occurred. The Legislature would not have included the term "preparation" had it intended it to carry the same meaning as "response" and "recovery."

In addition, the statutes and case law plaintiffs cite delineating the Orleans Levee Board's and S&WB's duties undermine their own baseless interpretation of emergency preparedness activities. For example, La. R.S. 38: 181 permits cities to "build and maintain levees" "for the

---

[9] La. R.S. 29:722(A) and (A)(4)(Emphasis added).

protection of overflow or from the high waters of streams affecting them."[10] Plaintiffs also cite Louisiana Supreme Court jurisprudence for the proposition that:

> **A Levee Board, in the discharge of its duty and responsibility in protecting the public against the danger of floods need not wait until the danger is imminent.** Its duty is rather to maintain the levees at all times in such condition of repair as to avoid all possibility of danger.[11] (Emphasis added).

The Louisiana Supreme Court's holding in <u>Kelly</u> that levee districts have a duty to build levees before the danger of flooding is imminent lands a fatal blow to plaintiffs' argument that building levees "many years" before disaster do not constitute acts of emergency preparedness. Flooding leads to disasters. Disasters create emergencies. Levees prevent flooding. Levees must be built and maintained before the "danger is imminent." Clearly, plaintiffs' argument fails.

The Legislative history of La. R.S. 29:735 is also instructive. In 1993, by Act 800, the Legislature enacted La. R.S. 29:735. The Resume to Act 800 states that this new law includes immunity language previously contained in La. R.S. 29:613. The Legislature originally enacted La. R.S. 29:613 in 1950 by Act 38. The text of La. R.S. 29:613, reproduced below, is virtually identical to the text of La. R.S. 29:735:

> Neither the State nor any political subdivision thereof, nor other agencies, nor, except in the case of willful misconduct, the agents employees, or representatives of any of them, engaged in any civil defense activities, while complying with or attempting to comply with this act or any rule or regulation promulgated pursuant to the provisions of this act shall be liable for the death of or any injury to persons or damage to property, as the result of such activity.

---

[10] Cited in Plaintiffs Omnibus Opposition, p. 7.

[11] Board of Commissioners of the Orleans Levee District v. Kelly, 73 So.2d 299 (La. 1954), cited in plaintiffs' Omnibus Memorandum at p. 9.

La. R.S. 29:613 contained no language implying a temporal element to "civil defense activities." There is no support in the Legislative history of La. R.S. 29:735 for the idea that the Orleans Levee District and S&WB are only immune from activities undertaken while the disaster is imminent.

The one case interpreting La. R.S. 29:613 adds additional credence to this view. In Mercadal v. City of New Orleans, plaintiffs filed a class action lawsuit against the city and the Sewerage and Water Board for flooding in the aftermath of Hurricane Betsy. Plaintiffs claimed the S&WB disregarded the advice of the Orleans Levee District to close certain culverts to stop the flow of water into plaintiffs' neighborhood. The Louisiana Fourth Circuit affirmed the trial court's dismissal of plaintiffs' class action on the basis of the immunity provision of La. R.S. 29:613. Significantly, the Court did not read a temporal element into the Act.

Finally, accepting plaintiffs' argument would lead to absurd, unintended consequences. If political subdivisions only enjoyed immunity for emergency preparedness activities done while a disaster is pending, as plaintiffs suggest, there would be a compelling incentive to unnecessarily delay preparations until a disaster is imminent. For example, under plaintiffs' reading of the Act, the Orleans Levee District would be immune from liability if they had first begun building and maintaining levees and floodwalls while the Hurricane Katrina was bearing down on the city; however, they would not enjoy immunity for building levees, or taking other steps to protect the city, years in advance of the hurricane. Plaintiffs' strained view would encourage political subdivisions to delay hurricane preparations until the last minute. This is an absurd consequence which the Legislature clearly did not intend in enacting La. R.S. 29:735.

## III. Conclusion

For the above reasons, the Orleans Levee District and S&WB pray for an Order granting their Fed. R. Civ. P. 12(b)(6) Motion to Dismiss.

Respectfully submitted,

_____
THOMAS P. ANZELMO, T.A. (#2533)
MARK E. HANNA (#19336)
KYLE P. KIRSCH (#26363)
ANDRE J. LAGARDE (#28649)
MCCRANIE, SISTRUNK, ANZELMO,
HARDY, MAXWELL & MCDANIEL
3445 N. Causeway Boulevard, Ste. 800
Metairie, LA  70002
Telephone:  (504) 831-0946
Facsimile:  (504) 831-2492

-and-

JAMES L. PATE (#10333)
BEN L. MAYEAUX (#19042)
Laborde & Neuner
One Petroleum Center, Suite 200
1001 West Pinhook Road, Suite 200
Post Office Drawer 52828
Lafayette, LA 70505-2828
Telephone: (337) 237-7000
ATTORNEYS FOR DEFENDANT, THE BOARD
OF COMMISSIONERS FOR THE ORLEANS
LEVEE DISTRICT

AND

_____
GEORGE R. SIMNO, III T.A. (12271)
GERARD M. VICTOR (9815)
625 ST. JOSEPH STREET, Room 201
New Orleans, Louisiana 70165
Telephone: (504) 585 2242
Facsimile: (504) 585-2426
Email: Gsimno@swbno.org
**ATTORNEYS FOR THE DEFENDANT,
SEWERAGE AND WATER BOARD
OF NEW ORLEANS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by placing same in the U.S. Mail, postage prepaid and properly addressed this 10th day of July, 2006.

_____