## IN UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| COLLEEN BERTHELOT ET AL., et al., <br><br> Plaintiffs <br><br> vs. <br><br> BOH BROTHERS CONSTRUCTION CO. L.L.C., et al., <br><br> Defendants. | : CIVIL ACTION NO.: <br> : <br> : 05-4182 SECTION "K"(2) <br> : <br> : CONS. KATRINA CANAL <br> : <br> : JUDGE DUVAL <br> : <br> : JUDGE WILKINSON <br> : |

**THIS DOCUMENT RELATES TO:**

05-6323 "K"(2)      VANDERBROOK

### BRIEF OF AMICUS CURIAE UNITED POLICYHOLDERS AND THE CHEHARDY REPRESENTATIVE POLICHYOLDERS IN OPPOSITION TO DEFENDANTS' RULE 12  MOTIONS

**I.      STATEMENT OF INTEREST OF AMICUS CURIAE**

United Policyholders ("UP") is a not-for-profit corporation founded in 1991 as an educational resource for the public on insurance issues and insurance consumer rights.  The organization is tax-exempt under Internal Revenue Code § 501(c) (3).  UP is based in California but operates nationwide and is funded by donations and grants from individuals, businesses, and foundations and governed by an eight-member Board of Directors.  UP contributes on an ongoing basis to the formulation of insurance related public policy at both the national and state level.

UP exists because businesses and individuals rely on the insurance they buy to protect themselves; their property and their livelihoods against the risk of loss

and insurance companies are in business to earn profits by assuming that risk. Insurance is a regulated industry because of this dynamic and the fact that the financial security insurance policies provide is an integral part of the fabric of our society and economy.

UP monitors the insurance sector, works with public officials, has a nationwide network of volunteers and affiliate organizations, publishes written materials, files *amicus* briefs in cases involving coverage and claim disputes and is a general information clearinghouse on consumer issues related to commercial and personal lines insurance products.   UP provides disaster aid to property owners across the U.S. via educational activities designed to illuminate and demystify the claim process.  For more information about UP, please visit www.unitedpolicyholders.org.

Representative Policyholders Gladys Chehardy, Daniel and Jacquelyn Fontanez, Larry and Glendy Forster, Kenneth and Judy Maier, Randy and Lori Gervais, Andre and Marlin Mauberret, Debbie and Dave Strawn, Stephanie and Brad Boyd, New Orleans Flooring Supply, Inc., Patricia Brown, Marie Fatheree, Katrina Daniels, Lionel and Edna Jones, Karen Lewis, Shane Sylvester, Austra Zapata, Sabrina Perkins, Eldridge Pollard, Michael Peterson, Wendell Glation and Mack Barham (collectively, "the Chehardy Representative Policyholders"), filed a Class Action Complaint on May 25, 2006, on behalf of themselves and a class of homeowners insurance policyholders who, on August 29, 2005, were Louisiana residents who owned immovable property with improvements, principally houses or related residential structures which was destroyed or damaged by winds generated by Hurricane Katrina.   Insofar as the Motions for Judgment on the Pleadings of Defendants State Farm Fire and Casualty

Company ("State Farm"), The Standard Fire Insurance Company ("Standard Fire"), Hartford Insurance Company of the Midwest ("Hartford"), Hanover Insurance Company ("Hanover") and Unitrin Preferred Insurance Company ("Unitrin") (collectively, "Defendants") involve significant issues concerning the Louisiana insurance law and causation analysis, the Court's determination on Defendants' Motions could have a significant and substantial impact on the rights and claims of the Chehardy Representative Policyholders and the class of policyholders named in the Chehardy actions.[1]

In this brief, United Policyholders and the Chehardy Representative Policyholders seek to fulfill the "classic role of *amicus curiae* by assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration." Miller-Wohl Co. v. Commissioner of Labor & Indus., 694 F.2d 203, 204 (9th Cir. 1982). This is an appropriate role for *amicus curiae*. As commentators have often stressed, an *amicus* is often in a superior position to "focus the court's attention on the broad implications of various possible rulings." R. Stern, E. Greggman & S. Shapiro, Supreme Court Practice, 570-71 (1986) (quoting Ennis, Effective Amicus Briefs, 33 Cath. U.L. Rev. 603, 608 (1984)).

United Policyholders previously has appeared as *amicus curiae* in over one hundred forty state and federal cases throughout the United States, including a number in Louisiana. Ducote v. Koch Pipeline Co., L.P., 730 So.2d 432 (La. 1999);

---

[1] Defendants Standard Fire, Hartford, Hanover and Unitrin filed a Consolidated Memorandum of Law in support of their Motions while Defendant State Farm submitted a separate Memorandum in support of its Motion. This Amicus Brief addresses issues raised by all Defendants in their respective Motions and supporting Memoranda.

Norfolk Southern et al v. California Union Insurance Co., No. 2002-CA-371 (La. Ct. App. 1st Cir. 2002). United Policyholders has appeared as *amicus curiae* in cases before the United States Supreme Court. *See Humana, Inc. v. Forsyth*, No. 97-303 (U.S. Sept. 18, 1998); *FL Aerospace v. Aetna Casualty and Surety Co.*, No. 90-289 (U.S. Sept. 13, 1990), and the United States Supreme Court cited United Policyholders' brief in *Humana, Inc. v. Forsyth* (1999) 525 U.S. 299. UP was the only national consumer organization to submit an *amicus* brief in the landmark case of State Farm Mutual. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003). Arguments from our *amicus curiae* brief were cited with approval by the California Supreme Court in Vandenberg v. Superior Court, 982 P.2d 229 (Cal. 1999), and discussed in Julian v. Hartford Underwriters Ins. Co., 110 P.3d 903 (Cal. 2005). UP's *amicus* brief factored into the decision in Watts Industries, Inc. v. Zurich American Insurance Co., 121 Cal. App. 4th 1029 (Cal. App. 2d Dist. 2004). Moreover, UP has been actively involved in assisting Louisiana and Gulf Coast residents in dealing with the aftermath of Hurricanes Katrina and Rita, including sponsorship of public insurance forums in Louisiana, as well as providing claim tips and information and maintaining a Hurricane Damage Insurance Claim Help Library on its website.

## II.   STATEMENT OF THE CASE

Currently pending before the Court are Defendants' Motions for Judgment on the Pleadings which seeks to deprive the class of policyholder plaintiffs in the Vanderbrook ("Vanderbrook Policyholders") cases of the insurance coverage which they purchased from the Defendants. Moreover, Defendants ask this Court to interpret their unclear and ambiguous policies without any extrinsic evidence and in a novel and

completely unsupported manner that both provides an unwarranted broad interpretation to exclusions that is contrary to the express language contained in the policies, while simultaneously ignoring and eviscerating Louisiana's "efficient proximate cause" doctrine.

On a more fundamental level, Defendants ask the Court to make these sweeping rulings on unclear policy language and the fact-intensive issue of causation prior to any discovery taking place in this action.  At a minimum, the class of policyholders is entitled to conduct discovery on the issue of what was the efficient proximate cause of their losses and, therefore, the Court cannot rule that, as a matter of law, the policyholders cannot prove any set of facts upon which they would be entitled to relief.  Moreover, that this litigation involves the interpretation of an insurance contract does not obviate the policyholders' right to conduct discovery as Louisiana courts have routinely considered extrinsic evidence in interpreting insurance policies and to determine or to resolve any ambiguities such as those contained in Defendants' standard homeowners insurance policy.  The ambiguity which exists in Defendants' policies not only warrants, but requires, discovery in this matter, and Defendants cannot short-cut that process by way of their Motions which are rife with unsupported legal theories, factual assertions and inaccurate conclusions.

The practical implications if Defendants' Motions are granted would result in potentially hundreds of thousands of homeowners insurance policyholders being deprived of the full coverage on which their insurance premiums were based and paid and reasonably expected to receive for losses caused by hurricanes, including Hurricane Katrina.  Thus, in addition to seeking to shirk their collective contractual

obligations to policyholders, Defendants are asking the Court to contravene and eviscerate the "efficient proximate cause doctrine" as interpreted and applied by the Louisiana courts.  While such a result would be erroneous at any time, prematurely ruling on issues of this significance without the benefit of the mandatory full factual record would be unjust, unfair and reversible error.

## III.   ARGUMENT

### A.   Judgment On The Pleadings Is Not Proper Because the Vanderbrook Policyholders Have Pleaded Claims Upon Which Relief May Be Granted

Defendants are not entitled to judgment on the pleadings because  the Vanderbrook Policyholders have sufficiently alleged claims upon which relief may be granted insofar as they have alleged that they incurred losses to their property that were caused by a covered peril under their homeowners' policies.  A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a motion to dismiss pursuant to Rule 12(b)(6), that is, the Court must look only to the pleadings and accept all well-pleaded allegations as true.  St. Paul Ins. of Bellaire v. Afia Worldwide Ins., 937 F.2d 274, 279 (5th Cir. 1991); McMillon v. Corridan, 1998 WL 560334 (E.D. La. 1998).  A motion for judgment on the pleadings must be denied unless it appears certain that the plaintiff cannot prove any set of facts whatsoever that would entitle the plaintiff to relief.  Rodriguez v. United States, 66 F.3d 95, 96 (5th Cir. 1995).  Moreover, in considering a motion for judgment on the pleadings, the Court must view the pleadings in the light most favorable to the non-movant and all reasonable inferences must similarly be drawn in favor of the non-moving party. Bellizan v. Easy Money of La., Inc., 2001 WL 121909 (E.D. La. 2001).

The Vanderbrook Policyholders allege that they suffered damage to their property that was caused by the breaking of levee walls, which caused vast amounts of water to enter the City of New Orleans, ultimately causing damage to their homes. (Vanderbrook Complaint at ¶¶ 3-4.)   The Vanderbrook Policyholders further allege that the Board of Commissioners for the Orleans District for the Parish of Orleans ("the Board") breached its statutory duty to maintain the levee system as well as for failing to warn the Vanderbrook Policyholders and others of the impending water intrusion as a result of the failed levee system.  (Vanderbrook Complaint at  ¶¶ 5-6).  In Paragraph 7 of the Complaint, the Vanderbrook Policyholders allege that they suffered damage to their property as a result of the water that entered the City of New Orleans following the sudden break in the levee walls, which was caused by the Board's negligence. (Vanderbrook Complaint at ¶ 7.)  Moreover, it is alleged that the break in the concrete levee wall is not a specifically excluded loss in any of the applicable policies and, thus, the Vanderbrook Policyholders' losses are covered losses for which Defendants must provide coverage.  (Vanderbrook Complaint at ¶ 10).  Taken together, and accepting these allegations as true as the Court must do in considering this motion, the Vanderbrook Policyholders have clearly alleged that they have suffered losses to their property as a result of a covered peril which if proven, would entitle them to relief.  Thus, the Vanderbrook Policyholders have sufficiently met the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and have stated a claim which entitles them to relief.  Whether policyholders' losses were in fact caused by a covered peril such as including the negligence of third parties is a question of fact and, thus,

Defendants are not entitled to judgment on the pleadings as a matter of law.  <u>Rodriguez</u>, 66 F.3d at 96.

**B.**     **Defendants' Suggested Overbroad Interpretation Of Their Water Damage Exclusions Is Untenable And Would Contravene Louisiana's "Efficient Proximate Cause" Test**

The Court must reject Defendants' untenable and unsupported argument that the Vanderbrook Policyholders' losses are excluded under the respective insurance policies because the water which entered the City of New Orleans as a result of the negligence of the Board simply does not constitute "flood" for purposes of Defendants' water damage exclusions.  The policies sold by State Farm, Standard Fire, Hanover and Unitrin do not define the term "flood" to include the breaking of levees or dams or to include water released due to the negligent maintenance, design or construction of such structures.  Moreover, in none of the policies is the inundation of water resulting from the negligent acts of third parties specifically excluded, nor do third-party acts that result in the breaking or failure of levee walls come within the definition of "flood" pursuant to the Federal Regulations promulgated in connection with the National Flood Insurance Program ("NFIP").  Consequently, the efficient proximate cause of the water entering the City of new Orleans is not a "flood" as the loss stems from the covered peril of third-party negligence.  As such, Vanderbrook Policyholders' losses are covered losses under the insurance policies sold by Defendants.

**1.**     **The Water Released Due To The Failure Of The Levee Walls Does Not Fall Within Any Water Damage Exclusion Nor Is Such Water Within Any Relevant Or Applicable Definition Of "Flood"**

Contrary to Defendants' assertions, the water which inundated New Orleans as a result of the failure of the levee walls does not fall within any exclusion for

water damage or definition of flood, either under the express terms of the relevant policies drafted by Defendants, or under any applicable definition of "flood," including the relevant Federal Regulations which define "flood" for insurance purposes.

Defendants Hartford, Standard Fire, Hanover and Unitrin policies include "water damage" exclusions that state:

> We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> **c.**    **Water Damage**, meaning:
>
>    (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind.

(Standard Fire Policies, App. at INS 96 and INS 136; Hartford Policy, App. at INS 56; Hanover Policy, App. at INS 9; Unitrin Policy App. at INS 171).  Similarly, State Farm's policy provides:

> 2.     We do not insure under any coverage for loss which would not have occurred in the absence of one or more of the following excluded events.  We do not insure for loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether in the event occurs suddenly or gradually; involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these.
>
> . * * *
>
> c.    Water Damage, meaning:
>
> (1)    flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these all whether driven by wind or not[.]

(Exhibits A and B to State Farm's Motion at pp. 10-11). Nowhere in any of the Defendants' policies is the term "water damage" defined to include the inundation of water caused by the breaking of levees, dams or other structures as a result of the negligent construction, design or maintenance of such levees or dams nor are the terms "flood," "surface water," "waves," "tidal water," or the phrase "overflow of a body of water," defined to include an inundation of water resulting from the breaking or failure of levees, dams or similar structures.

Perhaps the most damning evidence that Defendants themselves never intended to exclude the type of losses suffered by the Vanderbrook Policyholders is provided by Defendant Hartford. In its "Supplemental Memorandum In Support of Rule 12 Motions," Hartford asserts that its "H-380 Endorsement" purports to exclude damage caused by the negligent "design, specifications, workmanship, repair, construction" or "maintenance" of "levees, dams or other facilities" in the policy issued to the Capella Estate, a <u>Vanderbrook</u> plaintiff. Hartford's "H-380 Endorsement" also defines flood to include "release of water held by a dam, levy or dike or by a water or flood control device." (Hartford Policy, App. To Supplemental Memorandum at INS75). None of the other Defendants have similar definitions of flood or policy language which purports to exclude from coverage damage from water released from a dam or levee. Defendants State Farm, Standard Fire, Hanover and Unitrin all drafted their policies and could have simply included similar endorsements or language in their policies but failed to do so. Clearly, these Defendants did not intend to exclude the type of losses suffered by the Vanderbrook Policyholders when they drafted and sold their policies to their policyholders. Only now, faced with the devastating losses caused by Hurricane

Katrina, do Defendants attempt to "back door" their way into such a broad exclusion in an effort to escape their contractual obligations.[2]

Despite failing to include a definition of "flood" in the policies they drafted, Defendants now ask the Court to do so for them and to define "flood" in a manner that includes the water which inundated New Orleans after the levee walls failed or ruptured. There is no support for Defendants' position and the seminal definition of "flood," as defined by the Federal Government in connection with the NFIP, definitively refutes Defendants' position. As set forth in 44 C.F.R. § 59.1:

**Flood or Flooding means**:

(a) A general and temporary condition of partial or complete inundation of normally dry land areas from:

(1) The overflow of inland or tidal waters.

(2) The unusual and rapid accumulation or runoff of surface waters from any source.

(3) Mudslides (i.e., mudflows) which are proximately caused by flooding as defined in paragraph (a)(2) of this definition and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water and deposited along the path of the current.

(b) The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels or suddenly caused by

---

[2] Amicus do not suggest that the H-380 Endorsement is a valid exclusion. Reference is made to the language of that endorsement to conclusively demonstrate that Defendants could have easily and expressly excluded from coverage losses caused by water from a ruptured levee or dam but failed to do so in the policies which they drafted. Defendants cannot now seek to rewrite their policy by advocating a broad and unsupported definition of "flood" to include the types of losses they failed to exclude in the express provisions of the water damage exclusions.

> an unusually high water level in a natural body of water,
> accompanied by a severe storm, or by an unanticipated
> force of nature, such as flash flood or an abnormal tidal
> surge, or by some similarly unusual and unforeseeable event
> which results in flooding as defined in paragraph (a)(1) of
> this definition.

44 C.F.R. § 59.1. Section (a)(1) provides the definition of "inundation" and lists three

occasions whereby inundation is deemed a "flood," none of which include the negligent

acts of third parties or water released due to the rupturing or failure of levee walls or

dams. The NFIP regulations dictate what is a "flood" for purposes of obtaining flood

insurance and the definition used in connection therewith cannot be ignored or rendered

secondary to the novel theory proposed by Defendants. The NFIP regulations do not

define "flood" to include water that is released from ruptured levee or dam walls or water

that inundates an area due to the negligent acts of third parties and the Court should not

redefine the definition of "flood" in contradiction thereto by adopting Defendants'

position.

       In fact, a closer look at one of the cases relied upon by Defendants further

demonstrates that, for purposes of insurance coverage and the interpretation of

insurance policies, "flood" does not include water damage caused by the rupturing or

failure of levees, dams or other structures or the negligent acts of third parties and that

Defendants' argument regarding what constitutes a "flood" is erroneous. Defendants

cite to Kane v. Royal Ins. Co. of America, 768 P.2d 678 (Colo. 1984), in support of their

position. At the time Kane was decided 44 C.F.R. § 61.4(b) defined flood to include

"damage from a general condition of flooding in the area which results from other than

natural causes, such as the breaking of a dam." That regulation no longer provides a

definition of "flood" and the sole definition of "flood" for purposes of the NFIP is provided

in 44 C.F.R. § 59.1, as set forth above.  That section does not define "flood" to include damage resulting from the breaking of a dam or other structure or any language similar to that upon which the <u>Kane</u> court relied.  It is plainly evident that water escaping ruptured levees or dams was once considered "flooding" for purposes of the NFIP but such circumstances are no longer considered to be "flooding" as the express language once present is no longer present. Quite simply, the release or inundation of water as a result of the rupturing of dams, levees or other structures is not included in any definition of "flood" in the Defendants' policies or by the Federal Government.   The Vanderbrook Policyholders' losses were not the result of "flood" and, consequently, their losses do not fall within any exclusion in Defendants' policies and Defendants' Motions should be denied.

2.      **Defendants' Anti-Concurrent Causation Language Does Not Exclude Losses Caused By The Failure Of Levee Walls And Such Language Is In Direct Contravention to Louisiana's "Efficient Proximate Cause" Doctrine**

The anti-concurrent causation language upon which Defendants rely does not provide for the broad water damage exclusion now sought by Defendant nor does it exclude from coverage the negligent acts of third parties such as the Board.  The anti-concurrent causation language upon which Defendants rely has already been deemed ambiguous as a matter of law by another Federal Court addressing similar arguments raised by Defendants.  <u>Tuepker v. State Farm Fire and Cas. Co.</u>, 2006 WL 1442489 (S. D. Miss.).  Furthermore, Defendants' position with regard to this language is in complete derogation of the "efficient proximate cause" doctrine, which has been adopted by the Louisiana Supreme Court and provides that a policyholder is entitled to coverage if a covered peril was the proximate or efficient cause of the loss or damage,

notwithstanding that other excluded or non-covered perils contributed to the damage. Defendants' position evinces both an effort to avoid the contractual obligations it owes and sold to this class of policyholders, but it also represents an attempt to have the Court effectively abrogate or eviscerate the "efficient proximate cause" test. Adoption of Defendants' position would result in significant consequences not only with regard to the current and future hurricane-related insurance litigation, but with regard to insurance coverage issues in general.

Defendants forward the argument that their own policy language supercedes Louisiana's "efficient proximate cause" test. Defendants argue that their anti-concurrent causation clause, which Defendant try to soft-pedal as prefatory or "lead-in" language, somehow renders its water damage exclusion broad enough to exclude losses where there is "some" damage from water, regardless of whether a covered peril was the efficient proximate cause of the loss. The very "water damage" and "anti-concurrent causation" language relied upon by Defendants here has already been held to be ambiguous as a matter of law. In <u>Tuepker</u>, Judge Senter held that these provisions "purport to exclude from coverage losses that would otherwise be covered, such as wind damage, when that covered loss happens to accompany water damage" and, that this language "creates ambiguities in the context of damages sustained by the insured during a hurricane." <u>Tuepker</u>, 2006 WL 1442489 at * 4-5. This ambiguous language is exactly what Defendants rely upon in their arguments here, asking the Court to make radical changes to Louisiana insurance causation law.

The position advocated by Defendants is flatly contrary to the "efficient proximate cause" test that the Louisiana Supreme Court has adopted in determining

whether coverage exists. Roach-Strayhan-Holland Post No. 20, Am. Legion Club, Inc. v. Continental Ins. Co., 112 So.2d 680, 683 (La. 1959). "Efficient proximate cause" has been technically defined as "the efficient or predominant cause which sets into motion the chain of events producing the loss . . . not necessarily the last act in a chain of events." Graham v. Public Employees Mut. Ins. Co., 656 P.2d 1077, 1081 (Wash. 1983). The "efficient proximate cause" analysis focuses on whether all of the losses or claims can be traced to one original causative factor, regardless of the number of injuries or claims made. If the originating or dominant cause of the loss is a covered peril, there is coverage. Lorio v. Aetna Ins. Co., 232 So.2d 490 (La. 1970) (holding that policyholders may have coverage when covered peril causes an excluded peril). The Louisiana Supreme Court, as well as other courts in the Gulf region, have interpreted the "efficient proximate cause" doctrine to permit coverage for hurricane-related losses where the evidence has shown that wind was the "proximate cause" of the damage, notwithstanding that flooding contributed to the loss. See, e.g., Roach-Strayhan-Holland Post No. 20, Am. Legion Club, Inc. v. Continental Ins. Co., 112 So.2d 680, 683 (La. 1959); Western Assurance Co. v. Hann, 78 So. 232, 236 (Ala. 1917); Glens Falls Ins. Co. of Glens Falls, N.Y. v. Linwood Elevator, 130 So.2d 262, 270 (Miss. 1961); Evana Plantation, Inc. v. Yorkshire Ins. Co., 58 So.2d 797, 798 (Miss. 1952).

Under these cases and the underlying rationale behind the "efficient proximate cause" test, if coverage exists where a covered peril is ultimately shown to be the proximate cause of damage despite contribution from a non-covered peril, then the presence of a non-covered peril such as water damage would not invoke the water damage exclusion and operate to deny coverage. Under Defendants' theory, a

determination that a covered peril was the "efficient proximate cause" of a loss would be meaningless if a Court found "some damage" from an excluded peril. Defendants' contention that its policy exclusion abrogates the "efficient proximate cause" doctrine, cannot and should not be adopted by the Court as it is unsupported and would result in a sweeping change in the causation analysis and standard as it applies to policyholders in Louisiana.

Moreover, the principle that property damage caused by hurricanes is covered for loss even if flooding resulted has been accepted by courts in the Gulf region and is, by nature, a fact-intensive determination that is not proper for disposition on a motion for judgment on the pleadings. In Grace v. Lititz Mutual Insurance Co., 257 So.2d 217 (Miss. 1972), the Supreme Court of Mississippi affirmed a jury verdict finding coverage for the policyholder for windstorm damages in the aftermath of Hurricane Camille. The insurance policy in Grace covered windstorm damages but excluded coverage for loss caused or aggravated by tidal water. The insurance company in Grace, like Defendants here, argued that there was no coverage because the property was destroyed by water, not by wind. There was very little physical evidence in Grace to substantiate the alleged causes of loss because the building was destroyed. In the absence of such physical evidence, the parties relied on a combination of scientific and circumstantial evidence to substantiate causation. The jury returned a verdict in favor of the policyholder, finding that the building had been destroyed by wind, not by flood, despite the lack of physical evidence to substantiate the cause of loss. The insurance company appealed, but the court affirmed the verdict on appeal, rejecting the insurance company's position that the presence of tidal waters rendered the loss excluded. The

court held that "the material facts in the record were disputed therefore the jury was entitled to accept the policyholder's assertion that his office building was destroyed by wind before the tidal waters reach his property. Id. at 225.

As Grace shows, the issue of causation is a fact-intensive question which cannot be resolved as a matter of law in the context of Defendants' Motion for Judgment on the Pleadings. The issue of causation is likely to be one, if not the, central focal points of discovery in these cases in light of the massive destruction and damage caused by Hurricane Katrina. Much like the situation in Grace, there are likely to be situations where little physical evidence or eyewitness testimony exists to establish causation and the policyholders are entitled to conduct discovery to establish causation. Many Louisiana residents were left with mere slabs or foundations and will require discovery, expert testimony and investigation in order to prove causation. As such, and at a bare minimum, Defendants' Motions must be denied to the extent they seek to put the rabbit in the hat and obtain a ruling that prohibits policyholders from establishing and proving causation by way of a completely unsupported broad application of water damage and flood exclusions which contravenes the well-established efficient proximate cause doctrine.[3]

---

[3]   Insofar as the claims and losses alleged by the Vanderbrook policyholders are not excluded under Defendants' "Water Damage" exclusions, Defendants may not exclude coverage under the "acts or decisions" exclusion or any "faulty, inadequate or defective" design maintenance exclusions. As Defendants admit, under their policies there is coverage for ensuing losses from the "acts and decisions" or "faulty, inadequate or defective" acts so long as such losses are "not excluded or excepted" under another provision of their policies. (Standard Fire Policies at INS 97, INS 137; Hartford Policy at INS 56; Hanover Policy at INS 10; and Unitrin Policy at 172). Thus, because the losses resulting from the inundation of water are not excluded under the "water damage" exclusion, it is a covered "ensuing loss" and Defendants may not exclude coverage under the "acts or decisions" or faulty, inadequate or defective" exclusions.

**C.    Defendants' Policies Are Facially Ambiguous And
Interpretation Of The Policy Will Require Extrinsic Evidence
Obtained Through The Discovery Process**

Contrary to Defendants' self-serving representations, their policies are facially ambiguous and unclear to the extent the "Hurricane Deductible Endorsement" to the policies suggests coverage for loss and damage caused by hurricanes and is in conflict with an overbroad water damage exclusion which seeks to exclude the very wind and rain coverage recognized by the "Hurricane Deductible Endorsement." As a result of this facial ambiguity, Defendants cannot, as a matter of law, enforce their water damage exclusions and, by implication, avoid the obligation to provide hurricane coverage recognized by the "Hurricane Deductible Endorsement." Moreover, policyholders are entitled to conduct discovery and present extrinsic evidence to the Court in order for the Court to interpret the terms of the policy to the extent they are ambiguous.

If the terms of an insurance contract cannot be construed based on its language because of an ambiguity, the Court must look to extrinsic evidence to determine the parties' intent. Peterson v. Schimek, 729 So.2d 1024 (La. 1999). Courts throughout Louisiana routinely look to materials outside of insurance policies when interpreting the terms of insurance policies. For example, in Doerr v. Mobil Oil Corp., the Supreme Court of Louisiana reviewed an enormous volume of extrinsic evidence in holding that the so-called "pollution exclusion" there construed should be restricted in scope by some limiting principles. Doerr v. Mobil Oil Corp., 774 So.2d 119, 124 (La. 2000). The Court there referred to extrinsic hypotheticals in finding that a strict reading of the so-called "pollution exclusion" would lead to absurd results, id., and, in overruling

a prior decision construing the same exclusion, held that "in light of the origin of pollution exclusions, as well as the ambiguous nature and absurd consequences that would attend a strict reading of these provisions," id. at 135, the exclusion should be interpreted with some limiting principles. Id. Thus, the Court first based its holding on "the origins of pollution exclusions," which was, per se, determined by consulting extrinsic evidence. See id. at 126-128, 133-34 (discussing extrinsic evidence regarding origins of pollution exclusions).

Likewise, the Doerr Court cited countless other Louisiana decisions previously following its rationale.   See id. at 129-32 (summarizing Louisiana jurisprudence on pollution exclusions).  For instance, in South Central Bell Telephone Co. v. Ka-Jon Food Stores, Inc., 644 So.2d 357, vacated on other grounds, 644 So.2d 368 (La. 1994), the Supreme Court of Louisiana considered vast amounts of "extrinsic evidence" prior to analyzing the actual words contained in the so-called "pollution exclusion." 644 So.2d at 362-64. The Court then held that the so-called "pollution exclusion" should be interpreted consistently with the extrinsic evidence of its purpose and intent, and not its literal words. Id. at 365.

Similarly, when interpreting an insurance policy, in addition to the words of the insurance policy, courts always look to usage of trade evidence to form their interpretation. Nerness v. Christian Fidelity Life Ins. Co., 733 So.2d 146, 152, (La. App. Ct. 1999). Many courts have relied on internal claims and underwriting manuals in their decisions concerning coverage. Andover Newton Theological Sch., Inc. v. Continental Cas. Co., 930 F.2d 89, 94 (1st Cir. 1991) (relying on claims manual in finding ambiguity in the insurance policy); In re: Northeast Enterprises, Inc. v. Allstate Ins. Co., No. 91-

15394, 1992 U.S. Dist. LEXIS 4800, *13, n. 4 (E.D. Bankr. Pa. Apr. 9, 1992) (utilizing claims manual to interpret key insurance policy term); Cincinnati Ins. Co. v. Clark, No. 91-0820, 1992 U.S. Dist. LEXIS 2054 (E.D. Pa. Feb. 18, 1992) (ordering insurance company to produce claims manuals pertinent to interpretation and application of key policy term); Champion Int'l Corp. v. Liberty Mut. Ins. Co., 129 F.R.D. 63 (S.D.N.Y. 1989).

Moreover, an insurance company's inconsistent interpretations and applications of policy language may evidence an ambiguity inherent in those terms, which must be construed against the insurance company:

> [T]his court finds that [other policyholder] information is relevant for the purposes of discovery since it may show that identical language has been afforded various interpretations by the insurer.   It may also tend to show that the interpretations suggested by the defendants today are not the same as those of the original drafters.

Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 106-07 (D.N.J. 1990). See also Aetna Cas. & Sur. Co. v. Haas, 422 S.W.2d 316, 319-320 (Mo. 1968) (holding that where insurance company's treatment of language at issue shows uncertainty concerning its application, that would be "entirely inconsistent with its contention that the phrase was unambiguous").

Here, Defendants' policies are facially ambiguous with regard to coverage for damage caused by hurricanes and the wind and wind-driven rain that is part and parcel of any hurricane.   State Farm's policy contains a "Hurricane Deductible Endorsement" which provides, in relevant part:

> The Hurricane deductible percentage (%) shown in the Declarations applies only for direct physical loss or damage to covered property caused by wind, wind gusts, hail, rain, tornadoes, or cyclones caused by or resulting from a hurricane as defined above. The deductible for loss caused by each hurricane occurrence is the amount determined by applying the deductible percentage (%) shown in the Declarations to the COVERAGE A – DWELLING limit shown in the Declarations.

> In the event of a hurricane loss, this deductible will apply in place of any other deductible stated in the policy. In no event will this deductible be less than the Section I deductible amount shown in the Declarations.

It is clear beyond any reasonable argument to the contrary that this provision contemplates coverage for loss caused by hurricanes. Similarly, the polices sold by Hanover (Hanover Policy at INS 32), Standard Fire (Standard Fire Policy at INS 124), and Unitrin (Unitrin Policy at INS 191) contain similar Hurricane Deductible Endorsements which, just as State Farm's policy language above, contemplate coverage for loss caused by hurricanes. Moreover, based upon this type of language, policyholders had a reasonable expectation and belief that any and all losses and damages caused by a hurricane would be covered under the policy, subject to the deductible for which the policyholders paid.

Despite this clear and express language providing coverage for losses caused by hurricanes, Defendants seek to invalidate or exclude this coverage by selectively seeking to enforce another provision of their Policies that excludes water damage and would effectively exclude the very coverage suggested by the "Hurricane Deductible Endorsement" vis-à-vis an overbroad interpretation and application of the "water damage" exclusions. Under these "water damage" provisions, Defendants purport to exclude coverage for any and all water damage, despite the fact that water

damage is recognized as a covered losses under their policies' "Hurricane Deductible Endorsements." Defendants ask the Court to adopt the erroneous theory that because an excluded loss in the form of water damage occurred, this excluded cause of loss completely invalidates the hurricane coverage paid for and reasonably expected by the policyholders in purchasing their policies. The Court cannot, as a matter of law, adopt Defendants' position and enforce the water damage exclusion as a result of the ambiguity that exists as a result of these two conflicting provisions within the policy.

At least one curt has held that an ambiguity exists in these types of policies as a result of the inconsistency between the "Hurricane Deductible Endorsement" and the water damage exclusions. In Tuepker v. State Farm Fire & Cas. Co., 2006 WL 1442489, (S.D. Miss., May 24, 2006), the Court analyzed the conflict between these provisions in State Farm's policy and held:

> I find that this language in the State Farm policy creates ambiguities in the context of damages sustained by the insured during a hurricane. These provisions purport to exclude coverage for wind and rain damage, both of which are covered losses under this policy, where an excluded cause of loss, e.g. water damage, also occurs. I find that these two exclusions are ambiguous in light of the other policy provisions granting coverage for wind and rain damage and in light of the inclusion of a "hurricane deductible" as part of the policy.

Tuepker, 2006 WL 144289 at *5. The "language" to which the Court was referring was the very "lead-in" or anti-concurrent cause language relied upon by Defendants here in support of their argument that so long as a loss involves water damage, it does not matter whether wind or any other covered peril played a part in Plaintiffs' losses,

including damages caused by hurricanes or as a result of the negligent acts of third-parties.

Because the terms of the Defendants' policies are ambiguous as to what coverage is provided for losses caused by hurricanes, the Court cannot interpret Defendants' policies or make a determination as to the scope of coverage for losses caused by hurricanes from the four corners of the respective policies.  As such, the Court should not grant Defendants' Motions, which seek to have the Court interpret the ambiguous policies on their face and absent the consideration of extrinsic evidence.  To do so would short-cut the policyholders' right to conduct discovery and obtain extrinsic evidence required to interpret these facially ambiguous policies.  Included among the evidence that will be relevant or helpful to the Court is evidence regarding Defendants' prior application of these provisions, its underwriting and claims practices and procedures, manuals, guidelines, policies, and directives to provide guidance to their employees in underwriting, processing, handling, and resolving insurance claims. These documents generally contain insurance company official positions on coverage, claims, and loss control matters, as well as interpretations of relevant policy language. Thus, because Defendants' policies are ambiguous, policyholders are entitled to discovery which relates to the interpretation, prior application and claims handling of claims made under the same provisions in order to prove that the water damage exclusion is not enforceable.

## IV.    CONCLUSION

For the aforementioned reasons, this Court should deny Defendants' Motions for Judgment on the Pleadings.

Respectfully Submitted,


Anderson Kill & Olick, P.C.

_____

John N. Ellison, Esq.
Darin J. McMullen, Esq.
1600 Market Street
Suite 2500
Philadelphia, PA 19103
Telephone: 215-568-4202
Facsimile:  215-568-4375

Attorneys for Amicus Curiae


Ranier, Gayle & Elliot, L.L.C.

_____

Drew Ranier, Esq.
1419 Ryan Street
P.O. Box 1890
Lake Charles, Louisiana 70602-1890
Attorneys for Amicus Curiae

Fayard & Honeycutt, APC

_____

Calvin C. Fayard, Jr. (La. Bar Roll #5486)
519 Florida Avenue, SW
Denham Springs, LA 70726
Attorneys for Amicus Curiae