FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 AUG -1  PM 3: 06

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| —————————————————— | * | NO. 05-4182 "K"(2) |
| | * | |
| PERTAINS TO: | * | JUDGE DUVAL |
| LEVEE CASE NO. 06-3529 | * | |
| | * | MAGISTRATE WILKINSON |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND AND REQUEST FOR SANCTIONS

NOW INTO COURT, through undersigned counsel, comes Defendant, the Board of Commissioners for the Orleans Levee District, Parish of Orleans (hereinafter "OLD"), which respectfully submits the following Memorandum in Opposition to Plaintiffs' Motion to Remand and Request for Sanctions.

## I.    INTRODUCTION:

### A.    PROCEDURAL HISTORY:

Prior pleadings have advised the Court of the factual background surrounding the instant litigation.[1]  However, a brief synopsis of how this matter is presently before the Court on plaintiffs'

---

[1] For the sake of brevity and judicial economy, OLD incorporates by reference herein the extensive factual narrative contained within its original Notice of Removal and remand Oppositions previously filed in the consolidated cases, wherein OLD discussed the historical and legal development of the subject flood control system.  For the same reason, OLD also incorporates by reference herein the statutes, regulations, affidavits, contracts, assurances, jurisprudence and arguments relied upon in its original Notice of Removal and remand Oppositions previously filed in the consolidated cases. *See:* Document #13 (*Harvey*, Docket No. 05-4568); Document #30 (*Vanderbrook* Docket No. 05-6323); Document #23 (*Conlay*, Docket

1

second Motion to Remand will be instructive in understanding the merits of OLD's removal.

On September 24, 2005, plaintiffs filed a "Claim for Damages, Class Action Certification Requested" individually and as representatives of a putative class, asserting damages allegedly caused by breaches in the London Avenue and 17th Street Outfall Canals.  In this original Claim for Damages, plaintiffs alleged that OLD was negligent solely in the following respects: "(a) designing and installing concrete flood walls . . .; (b) failing to test the flood walls . . .; and (c) failing to interlock the flood walls . . .."[2]  As the Court has correctly observed, this original Claim contained **"no allegations concerning a failure to maintain"** the subject levees and flood walls.[3]  The Court has distilled plaintiffs' original state court Claim in this fashion:

> Plaintiffs have not alleged any failure to maintain or the like in this case; they have focused on the failures in the design and construction of the levees which was undertaken by the Corps.[4]

On October 5, 2005, OLD removed the original claim on two bases: (1) federal officer jurisdiction under 28 U.S.C. §1442(a)(1); and (2) federal question jurisdiction under 28 U.S.C.§1331.  Plaintiffs subsequently filed a Motion to Remand.  On May 31, 2006, the Court issued an Order and Reasons remanding this matter and holding that OLD's participation in the design and construction of the subject levees and flood walls did not qualify it as a federal officer under 28

---

No. 06-151); Document#29 (*Rogers,* Docket No. 06-152); Document #14 (*Baird,* Docket No. 06-153); and Document #18 (*Humphreys,* Docket No. 06-169).  For the sake of identification, exhibits attached to OLD"s Opposition to the first *Harvey* remand will be the ones referenced herein.

[2]See, Plaintiffs' Claim for Damages.

[3]See, Document #476, p. 8 (Order & Reasons)(Emphasis added).

[4]Document #476, p. 11 (Order & Reasons).

U.S.C. §1442(a)(1).   The Court noted that: "The fallacy with removing this case based on §1441(a)(1) is that OLD did not 'act under the direction of a federal officer' to build or design any structure."  According to the Court, because plaintiffs had "not alleged  any failure to maintain or the like," OLD's removal of the original action as a federal officer was improper.  In addition, the Court found no merit in OLD's invocation of federal question jurisdiction.  The Court declined to exercise  federal question jurisdiction because plaintiffs' design and construction claims gave rise to state law issues, not issues of federal law or issues involving an "overarching federal concern."[5]

On June 7, 2006, one week following remand, plaintiffs filed a Motion for Leave and a First Supplemental and Amending Petition in the Civil District Court for the Parish of Orleans.[6]  The trial court granted plaintiffs' Motion for Leave on June 21, 2006, and entered same into the minutes on June 27, 2006.  OLD filed the instant Notice of Removal on July 7, 2006, re-urging this Court to exercise its statutory jurisdiction under 28 U.S.C. §1442(a)(1) ("federal officer") and 28 U.S.C. §1331 ("federal question").  Plaintiffs' **three new causes** of action against the OLD served as the basis for this second removal.  Despite plaintiffs' disingenuous claims to the contrary, the following **new causes of action** have been alleged against the OLD:

(i)      Paragraphs 6(d) and 8(b)(c)(d) of the First Supplemental and Amending Petition claim OLD was negligent in "Failing to **inspect and maintain** the levees after their completion";

(ii)     Paragraphs 6(e) and 8(b)(c)(b) of the First Supplemental and Amending

---

[5]Document #476, p. 14 (Order & Reasons).

[6]See, Plaintiffs First Supplemental and Amending Petition, Exhibit 1, OLD's Second Notice of Removal.

3

Petition claim the OLD was negligent in "Failing to insure that the proper soil was used in the construction of the levee";[7]

(iii)    Paragraph 8(b)(c)(f) of the First Supplemental and Amending Petition claims the OLD is strictly liable to those damaged by the floods;

Notably, a claim against the OLD for failing to inspect and maintain the levees is included within the First Supplemental and Amending Petition. This allegation was absent from the original Claim for Damages, as this Court noted several times in its Order and Reasons remanding the original action. Also absent from plaintiffs' original Petition was the claim that the OLD was negligent for failing to ensure proper soils were used in the construction of the levees, as well as the newly-added strict liability claim.

How plaintiffs can now assert, in good faith, that OLD is "erroneously representing to the court that the plaintiffs' amendments have made new allegations that were not made in the original petition" is somewhat perplexing. Plaintiffs' request for sanctions is equally perplexing. A fair reading of the Court's Order and Reasons (in which the Court repeatedly emphasized how it did not enjoy federal officer jurisdiction, in part, because plaintiffs' original Claim had not alleged improper maintenance on behalf of the OLD), and plaintiffs' First Supplemental and Amending Complaint (adding claims of improper maintenance) could leave an objective observer with the distinct impression that plaintiffs are attempting to "game the system" in order to circumvent the jurisdiction of this Court.

Simple coincidence fails to explain the inclusion of an "improper maintenance" claim in the

---

[7]*See* Exhibit 2 (Eustis Engineering's disclosures, indicating that **its contract for the soil borings were with OLD, not the Corps**) ; See also, Exhibit 3(Excerpts from GDM 20, Vol. II wherein Corps incorporated these soil borings into its document.).

second lawsuit following this Court's exhaustive opinion detailing why, in part, the absence of such a claim in the original lawsuit was fatal to OLD's removal. Simply put, the Court's Order and Reasons provided plaintiffs with a roadmap to circumvent federal jurisdiction.[8] Armed with this roadmap, and believing *res judicata* would bar any subsequent removals by the OLD (discussed in detail below), plaintiffs filed a Supplemental and Amended state court Petition, alleging the identical federal causes of action referenced in the Court's Order and Reasons. Plaintiffs are engaged in a transparent effort to manipulate this Court's jurisdiction. OLD's conduct is not sanctionable.

Whatever their motivation for withholding the (federal) maintenance and (federal) faulty soil allegations until after remand, plaintiffs' allegations alone determine whether the court enjoys subject matter jurisdiction. In Kidd v. Southwest Airlines, Co., the Fifth Circuit pointed out: "In cases that have been removed to federal court, the plaintiff's complaint rather than the removal petition must establish federal jurisdiction."[9] As this Court has previously noted: "A determination as to whether a cause of action presents a federal question, and therefore subject to removal in this context, depends upon the allegations made on the face of the plaintiff's well-pleaded complaint."[10] Stated another way, "[f]or purposes of Plaintiff's Motion to Remand, the Court accepts as true all relevant allegations contained in the Complaint."[11]

Therefore, piercing the allegations in plaintiffs' Complaint to determine their merit is beyond

---

[8] *Harvey* is the only known "levee" class action currently pending in state court.

[9] Kidd v. Southwest Airlines, Co., 891 F.2d 540, 542 (5th Cir. 1990).

[10] Lightfoot v. Bellsouth Telecommunications, Inc., 2004 WL 2381533 (E.D. La. 2004).

[11] Kidd v. Southwest Airlines, Co., 855 F.2d 1160 (5th Cir. 1988); See also, Kimmel v. Bekins Moving & Storage Co., 210 F.Supp2d 850, 852 (S.D. Tex. 2002); Amoco Chemical Co. v. Tex Tin Corp., 902 F.Supp. 730, 732 (S.D. Tex. 1995).

the scope of this Court's duty.  On a Motion to Remand, the Court's charge is to accept plaintiffs'

allegations as true.  If plaintiffs' allegations are sufficient to invoke federal jurisdiction, subject

matter jurisdiction attaches, regardless of the factual circumstances surrounding defendants' Notice

of Removal and supporting evidence.

**B.**    **OLD's REMOVAL IS PROCEDURALLY PROPER**

Citing neither statutes nor jurisprudence in support of their position, plaintiffs argue that the

principle of *res judicata* bars OLD from removing this action following the filing of their First

Supplemental and Amending Petition.  As plaintiffs see it, the Court's May 31, 2006 Order

remanding this action forever precludes OLD from filing a second Notice of Removal.[12]  However,

controlling jurisprudence within this Circuit lays to rest any argument that OLD's removal is

procedurally improper.  In SWS Erectors v. Infax, the Fifth Circuit set forth the following principle

as it relates to a defendant's right to seek subsequent removals, stating:

> "[t]he Fifth Circuit recognizes a defendant's right to seek subsequent
> removals after remand. . . .  As a general rule, once a case is remanded
> to state court, a defendant is precluded only from seeking a second
> removal *on the same ground.*  The prohibition against removal 'on
> the same ground' **does not concern the theory on which federal
> jurisdiction exists (i.e., federal question or diversity jurisdiction),
> but rather the pleading or event that made the case removable....**
> A defendant who fails in an attempt to remove on initial pleadings
> can file a second removal *when **subsequent pleadings** or events
> reveal a new and different ground for removal.*[13]

---

[12]Though lacking any legal authority, as discussed in greater detail below, this argument
may provide some insight into plaintiffs' apparent sense of immunity from federal jurisdiction in
advancing the "maintenance" and "faulty soil" claims in their First Supplemental and Amending
Petition.  Under the mistaken impression the Court's remand inoculated them from subsequent
removals, plaintiffs unleashed their federal causes of action, after remand, in their First
Supplemental and Amending Petition for Damages.

[13]72 F.3d 489, 492-493 (5th Cir. 1996)(bold supplied, italics in original).

The following cases within this district are a representative sample of those affirming a defendant's right to a second removal when, as is the case here, subsequent pleadings reveal a different ground for jurisdiction: <u>Lifecare Hosp. of New Orleans, LLC v. New Orleans Electrical Health & Welfare Fund</u>,[14] (providing "[i]f the defendants receive any amended pleading, motion, order or other paper which justifies removal, they are entitled to file a subsequent removal. . ..");[15] <u>Hamilton v. United Healthcare of Louisiana, Inc.</u> ("The Fifth Circuit recognizes a defendant's right to seek subsequent removal after remand.");[16] <u>In Re Complaint of Clearsky Shippers Corp.</u>, (same);[17] and <u>Cousin v. Flores</u> (same).[18]

In the instant matter, a subsequent pleading, namely plaintiffs' First Supplemental and Amending Petition, does reveal new and different grounds for removal.  First, as discussed in great detail above, the claim against OLD for improperly maintaining the levees and flood walls is a new allegation which gives  rise to valid arguments for both federal officer and federal question jurisdiction.  Second, the First Supplemental and Amending Petition also faults OLD for "failing to insure that the proper soil was used in the construction of the levee." Evidence introduced in support of OLD's Notice of Removal reveals that OLD contracted directly with Eustis Engineering to perform soil borings, and that the Corps incorporated these borings into its GDM.[19]  These new

---

[14]2002 WL 1461886, at p. 1, n.1.

[15]2002 WL 1461886, at p. 1, n.1 (per J. Lemelle).

[16]2003 WL 22779081 (E.D. La.  2003)(per J. Barbier).

[17]2003 WL 193515 (E.D. La. 2003)(per J. Barbier).

[18]2003 WL 21634426(E.D. La. 2003)(per J. Vance).

[19]See, Exhibit 3, attached to original Notice of Removal.

allegation provide OLD with new and different grounds for removal, making this subsequent removal procedurally proper as a matter of law. Plaintiffs' *res judicata* argument is meritless.

## II.   LAW GOVERNING REMOVAL UNDER FEDERAL OFFICER STATUTE:

### A.   LEGAL STANDARD:

28 U.S.C. § 1442(a)(1) provides, in pertinent part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office....

"The federal officer removal statute is not 'narrow' or 'limited[,]'"[20] as plaintiffs suggest.[21] "Rather, the 'right to removal is absolute for conduct performed under color of federal office, and [the Supreme Court] has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of §1442(a)(1).'"[22] Stating the point more directly, removal pursuant to this provision "is an absolute right and is not dependent on the discretion of the court."[23] All that is required under §1442(a)(1) is for the defendant to assert a *colorable* claim to the defense; the

---

[20]Willingham v. Morgan, 395 U.S. 402, 406 (1969).

[21]Plaintiff's Memo, at p.2.

[22]In Re Welding Products Liability Litigation, 2004 WL 1179454, at p.7 (N.D. Ohio 2004), *quoting*, Willingham, 395 U.S. at 407.

[23]Malone v. Longo, 463 F.Supp. 139 (U.S.D.C. E.D. N.Y. 1979).

Court need not delve into the actual merits of the defense.[24]  It has also been observed:

> The defense advanced need only be plausible; 'its ultimate validity is not to be determined at the time of removal.' *Id.* Any determination as to the merits is 'collateral to the jurisdictional question.' *Akin v. Big Three Industries, Inc.,* 851 F.Supp. 819 (E.D.Tex.1994).  As one district court has explained it, if the connection to the United States is sufficient for purposes of removal and the plaintiff then alleges that the defendants were engaged in a 'frolic of their own' as part of the claim, the defendants 'should have the opportunity to present their version of the facts to a federal, not a state, court.' *Group Health Inc. v. Blue Cross Assoc.,* 587 F.Supp. 887, 890-91 (S.D.N.Y.1984).[25]

One federal court has explained that "a sufficient showing of acting 'under the color' of the United States has been made where the party puts in issue the questions of official justification and immunity."[26]  Another federal circuit has determined that "a statement in the removal petition that the plaintiff's allegations were based on acts done by the defendant under color of his office as an employee of the United States while he was acting in the scope of his employment was sufficient to give rise to a colorable defense."[27]  In this case, there are two *colorable* defenses available to OLD (federal contractor and immunity under 33 U.S.C. §702c[28]), because OLD acted under the Corps'

---

[24]Furiegh v. Sewerage & Water Board of New Orleans, 2004 WL 1794524, at p.2 (E.D. La. 2004)(Duval, J.);  Miles v. Sewerage & Water Board of New Orleans, 2004 WL 1794527, at p.2 (E.D. La.2004)(Duval, J.).

[25]Holton v. Blue Cross & Blue Shield, 56 F.Supp.2d 1347, 1351 (M.D. Ala. 1999).

[26]Holton, 56 F.Supp.2d at 1351, *citing,* Group Health Inc., 587 F.Supp. at 890.

[27]Holton, 56 F.Supp.2d at 1351-1352, *citing,* Jamison v. Wiley, 14 F.3d 222 (4th Cir.1994).

[28]Portis v. Folk Constr., Inc., 694 F.2d 520, 524-525 (8th Cir. 1982)(holding that the contractor was entitled to the Corps' immunity under 33 U.S.C. 702c);  See also, Anderson v. Red River Waterway Commission, 231 F.3d 211 (5th Cir. 2000)(holding that municipality was not liable for damages caused by a flood control project because Corps had sole authority over said project.); Fortner v. Tennessee Valley Authority, 2005 WL 29221090, at pp.3-4 (E.D. Tenn. 2005(holding the defendant was entitled to Flood Control Act Immunity because "there is no

supervision and pursuant to its regulations.[29]

The Middle District of Louisiana, in <u>Lalonde v. Delta Field Erection</u>,[30] succinctly set forth

the three-part test for determining whether removal is proper pursuant to 28 U.S.C. § 1442(a)(1):

> (1)     that the removing defendant was acting under an officer of the United States
>         or an Agency thereof;
> (2)     that there was a causal connection between the charged conduct and the
>         asserted official authority; and
> (3)     that the removing defendant has a *colorable* defense under federal law.[31]

As demonstrated below, OLD meets each of these requirements, whether plaintiffs' claims are based

on maintenance, construction, or soil testing.

### B.      OLD WAS "ACTING UNDER" AN OFFICER OF THE UNITED STATES, NAMELY THE CORPS:

The "acting under" requirement is satisfied "if the federal government *did* demand or

heedfully approve reasonably precise specifications for"[32] the maintenance, construction and soil

testing of the levees by OLD. Moreover, if OLD "*did* conform to those specifications, then it is fair,

---

dispute that defendant's purpose in engaging in the complained of activity was flood control, defendant cannot be held liable for damages resulting from the management of that activity, which includes the adequacy of warnings associated with the operation of the spillway gates.").

[29]*See* <u>Winters v. Diamond Shamrock Chemical Co.</u>, 901 F.Supp. 1195, 1200, *aff'd*, 149 F.3d 387 (5th Cir. 1998), *cert. denied*, 526 U.S. 1034, 119 S.Ct. 1286 (1999)(holding "this court finds the explicit specifications provided by the government contract orders create a reasonable probability that the government contractor defense would apply in this case").

[30]<u>Lalonde v. Delta Field Erection</u>, 1998 WL 34301466 (M.D. La. 1998).

[31]<u>Lalonde</u>, 1998 WL 34301466 at p. 2, *citing*, <u>Willingham v. Morgan</u>, 395 U.S. 402 (1969); <u>See also</u>, <u>Miles</u>, 2004 WL 1794527, at pp.1-2; <u>Furiegh</u>, 2004 WL 1794524, at pp.1-2; <u>Crocker v. Borden</u>, 852 F.Supp. 1322, 1325 (E.D. La. 1994).

[32]<u>In Re Welding Rod Products Liability Litigation</u>, 2004 WL 1179454, at p.11 (N.D. Ohio 2004).

for jurisdictional purposes only, to conclude that the defendants were acting under federal office."[33]

OLD satisfies the "acting under" test because:

(a)     it had contracts with the Corps requiring it to **maintain the levees** in accordance with

the Corps' specifications contained in 33 CFR 208.10;[34]

(b)     federal law required OLD to **maintain the levees** in accordance with the Corps'

regulations;[35]

(c)     OLD maintained the levees in accordance with the Corps's extensive regulations set

forth in 33 CFR 208.10;

(e)     the levees were built in accordance with the Corps' designs and specifications;[36]

(f)     any designs submitted by OLD through one of its contractor had to be reviewed and

---

[33]In Re Welding Rod Products Liability Litigation, 2004 WL 1179454, at p.11;  See also, Winters, 901 F.Supp. at 1200 (holding "this court finds the explicit specifications provided by the government contract orders create a reasonable probability that the government contractor defense would apply in this case.");  Akin v. Gump, 851 F.Supp. 819, 824 (E.D. Tex. 1994)(providing "when a government contractor builds a product pursuant to Air Force specifications and is later sued because of compliance with those specifications allegedly causes injuries, the nexus requirement is satisfied.  GE, therefore, acted under a federal officer and has satisfied each of the requirements necessary to assert federal officer removal jurisdiction under 28 U.S.C. §1442(a)(1)").

[34]See Exhibit 5, at ¶¶2-3 (Spencer Affidavit); Exhibits 6A-6H (Assurances) attached to Document #13 in Harvey lawsuit, Docket No. 05-4568.  As noted earlier, plaintiffs did not bring a maintenance claim against OLD in its Original Petition.

[35]33 U.S.C. §701c (providing that a state or political subdivision shall assure that it will "maintain and operate all works after completion in accordance with the regulations prescribed by the Secretary of the Army.")  See also, Exhibit 5, at ¶¶2-3 (Spencer Affidavit); Exhibits 6A-6H (Assurances) attached to Document #13 in Harvey lawsuit, Docket No. 05-4568.

[36]See Exhibit 5-B (Excerpts from Design Memorandum 19A for London Avenue Outfall Canal); Exhibit 5-C (Excerpts from Design Memorandum 20 for 17th Street Outfall Canal); Exhibit 5-D (Excerpts from Design Memorandum 13) Exhibit 5, at ¶¶2-3 (Spencer Affidavit); Exhibits 6A-6H (Assurances) attached to Document #13 in Harvey lawsuit, Docket No. 05-4568.

11

approved by the Corps;[37]

(g)    the Corps bid out the contracts to build the levees at issue;[38] and

(h)    federal law requires that any "improvements . . . for flood control . . . purposes **shall** be under the direction of the Secretary of the Army and supervision of the Chief of Engineer."[39]

Because OLD **maintained** the levees in accordance with "reasonably precise" federal specifications, it is "fair, for jurisdictional purposes only, to conclude that the defendants were acting under federal office."[40] Plaintiffs' addition of the maintenance claim satisfies the "acting under"

---

[37]*See* Document #114, at pp.5-6 (Modjeski's Disclosures); See also, Document #152, at p.3 (Burke Klienpeter's Disclosures providing that "the Corps had to review and approve desgin and plans for any flood protection project intended by OLD."); Document #130 (Boh Bros. Disclosures providing "Boh. Bros. signed a contract with . . . OLD who in turn had been authorized to contract out the job by the U.S. Army Corps of Engineers. This contract . . . was signed by Boh Bros. and OLD . . .. Boh Bros. performed its work in accordance with the drawings and specifications prepared on behalf of the OLD and as directed and inspected by the OLD's consulting engineer, Modjeski and Masters, Inc. . . . as evidenced by the 'as built' drawings that were prepared after Boh Bros. completed its work, in conformity with the Army Corps of Engineers' design drawings on the 17[th] Street Canal project."); Document #152 (BKI's Disclosures providing "the Corps authorized OLD to use BKI for design only . . . the letter made plain that BKI would be completely under the control of the Corps and that the Corps would do all construction management and administration, including inspection."); Exhibit 5 (Spencer Affidavit) attached to Document #13 in *Harvey* lawsuit (Docket No. 0-4568).

[38]Exhibit 5-E(Excerpts from Corps Specifications and Solicitations for Bid on London Avenue Outfall Canal); Exhibit 5-F(Excerpts from Corps Specifications and Solicitations for Bid on 17th Street Outfall Canal) attached to Document #13 in *Harvey* lawsuit (Docket No. 05-4568).

[39]33 U.S.C. §701a-1 (emphasis added); See also, 33 U.S.C. §701b (providing "[f]ederal investigations and improvements of rivers and other waterways for flood control and allied purposes **shall** be under the **jurisdiction** of the Secretary of the Army and **supervision** of the Chief of Engineers.")(emphasis added).

[40]In Re Welding Rod Products Liability Litigation, 2004 WL 1179454 (N.D. Ohio 2004).

requirement of 28 U.S.C. § 1442(a)(1).  OLD respectfully submits that this Court enjoys subject

matter jurisdiction over this action.

**C.   OLD SATISFIES THE CAUSAL NEXUS ELEMENT BECAUSE IT IS NOW BEING SUED FOR ITS ACTIONS IN MAINTAINING, CONSTRUCTING AND SELECTING/TESTING THE SOIL OF THE LEVEES IN ACCORDANCE WITH THE CORPS' SPECIFICATIONS:**

"[W]hen a government contractor builds a product pursuant to"[41] the federal officer's

"specifications and is later sued because of compliance with those specifications allegedly causes

injuries, the nexus requirement is satisfied."[42]  The causal nexus between the charged conduct

(OLD's alleged negligent maintenance, and soil selection and testing) and the asserted official

authority exists because:

(a)   the "Outstanding" rating OLD received from the Corps is tantamount to the Corps

stating that said **maintenance** was performed "in accordance with the regulations

prescribed by the Secretary of the Army, as required by law."[43]

(b)   any designs submitted by OLD through one of its contractor had to be reviewed and

approved by the Corps;[44] and

---

[41]Akin, 851 F.Supp. at 823-824.

[42]Akin, 851 F.Supp. at 823-824; See also,  Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 398 (5th Cir. 1998), cert. denied, 526 U.S. 1034, 119 S.Ct. 1286 (1999)(providing "The question we must determine is whether the government specified the composition of Agent Orange so as to supply a causal nexus between the federal officer's direction and the plaintiff's claims.").

[43]33 CFR 208.10(a)(2). These explicit "specifications provided by the government contract orders create a reasonable probability that the government contractor defense would apply in this case." See Winters, 901 F.Supp. at 1200.

[44]See, Eustis Engineering's Disclosures; Document #130 (Boh Bros.' Disclosures); Document #114, at pp.5-6 (Modjeski's Disclosures); See also, Document #152, at p.3 (Burke

(c)     the Corps supervised the construction and installation of the levees.[45]

Thus, plaintiffs' new claims of improper maintenance and soil selection and testing furnish the necessary allegations to satisfy 28 U.S.C. § 1442(a)(1)'s nexus requirement.  These allegations go to the heart of the OLD's duties to comply with federal regulations and statutes detailing the procedures for levee maintenance. As noted above, Disclosures several contractor have submitted underscore the nexus between plaintiffs' allegations of negligence and the OLD's participation in these levee and flood wall projects.

As this court has noted: "A determination as to whether a cause of action presents a federal question, and therefore subject to removal in this context, depends upon the allegations made on the face of the plaintiff's well-pleaded complaint."[46]   The well-pleaded allegations of plaintiffs' Complaint control. These allegations establish the necessary causal nexus between the federal specifications and the allegedly wrongful conduct.  Issues of state law do not serve as the "nexus" of the negligent  maintenance and soil testing claims.  Accordingly, subject matter jurisdiction lies with this Court.

**D.     OLD HAS *COLORABLE* DEFENSES TO PLAINTIFFS' CLAIMS:**

OLD satisfies the *colorable* defense element by means of its status as a federal contractor.

---

Klienpeter's Disclosures providing that "the Corps had to review and approve desgin and plans for any flood protection project intended by OLD."); Exhibit 5 (Spencer Affidavit) attached to Document #13 in *Harvey* lawsuit (Docket No. 05-4568).

[45]*See* Exhibit 5-B (Excerpts from Design Memorandum 19A for London Avenue Outfall Canal); Exhibit 5-C (Excerpts from Design Memorandum 20 for 17th Street Outfall Canal); Exhibit 5-D (Excerpts from Design Memorandum 13) attached to Document #13 in *Harvey* lawsuit (Docket No. 05-4568).

[46]Lightfoot v. Bellsouth Telecommunications, Inc., 2004 WL 2381533 (E.D. La. 2004).

14

OLD received "Outstanding" ratings from the Corps, which demonstrate that its maintenance was performed in accordance with government specification.[47]   Moreover, the Corps reviewed and approved of the designs and plans submitted by OLD's contractors.[48] For instance, OLD contracted with Eustis Engineering to perform soil borings, and the Corps subsequently incorporated those results into its GDMs.[49] Moreover, OLD has a second *colorable* defense under 33 U.S.C. §702(c), since it is being sued for its participation in a flood control project which is under the direction and supervision of the Corps.[50] Therefore, this Court should find that OLD's removal was proper under 28 U.S.C. §1442(a)(1).

Significantly, OLD is <u>not</u> claiming subject matter jurisdiction exists simply because of its federal defenses.  Having federal affirmative defenses, with nothing more, is admittedly insufficient to create jurisdiction.  The significance of OLD's *colorable* federal defenses is that, by having same,

---

[47]*See* <u>Winters v. Diamond Shamrock Chemical Co.</u>, 901 F.Supp. 1195, 1200 (E.D. Tex. 1995), *aff'd*, 149 F.3d 387 (5th Cir. 1998)(holding "this court finds the explicit specifications provided by the government contract orders create a reasonable probability that the government contractor defense would apply in this case.").

[48]*See* <u>Miles</u>, 2004 WL 1794527, at p.3;  <u>Furiegh</u>, 2004 WL 1794524, at p.3(holding that removal was proper under §1442(a)(1) because the Corps accepted the defendant's work on levees "as in compliance with the Project plans and specifications.").

[49]*See*, Disclosures of Eustis Engineering, supra.

[50]*See* <u>Portis v. Folk Constr., Inc.</u>, 694 F.2d 520, 524-525 (8th Cir. 1982)(holding that the contractor was entitled to the Corps' immunity under 33 U.S.C. 702c);  <u>See also</u>, <u>Anderson v. Red River Waterway Commission</u>, 231 F.3d 211 (5th Cir. 2000)(holding that municipality was not liable for damages caused by a flood control project because Corps had sole authority over said project.); <u>Fortner v. Tennessee Valley Authority</u>, 2005 WL 29221090, at pp.3-4 (E.D. Tenn. 2005(holding the defendant was entitled to Flood Control Act Immunity because "there is no dispute that defendant's purpose in engaging in the complained of activity was flood control, defendant cannot be held liable for damages resulting from the management of that activity, which includes the adequacy of warnings associated with the operation of the spillway gates.").

OLD satisfies the third element required by 28 U.S.C. §1442(a)(1) as articulated in <u>Lalonde</u>.

**E.   NUMEROUS FEDERAL COURTS HAVE FOUND COMPLIANCE WITH COMPREHENSIVE AND DETAILED FEDERAL REGULATIONS SUFFICIENT TO SUPPORT REMOVAL UNDER 28 U.S.C. §1442(a)(1):**

In <u>Clio Convalescent Center v. Michigan Dept. of Consumer and Industry Services</u>, plaintiff argued, as plaintiffs do here,[51] that §1442(a)(1) was inapplicable because "it is suing a state agency for violation of state law and the Michigan Constitution."[52]  The Court rejected this argument and found removal proper because: (1) there was "no indication the MDCIS applied anything but federal protocol, which it is required to apply, in determining what remedies to recommend[;]"[53] (2) plaintiff could not point to any "specific policy the state implemented that was not provided for in a federal regulation[;]"[54] and (3) while the grid and policy used by MDCIS was not located in any of the federal materials, the grid simply set forth the federal requirements and restated the remedies imposed by federal law.[55]  Thus, the Court concluded that because "MDCIS was implementing federal regulations pursuant to its obligation under statutes, regulations, and/or contract, it was acting as HFCA's agent; and removal was proper under §1442(a)(1)."[56]

The instant case is similar to <u>Clio</u>.  First, there is no indication OLD did anything but

---

[51]<i>See</i> Document 820, at p.6, ¶20 (Motion to Remand).

[52]<u>Clio Convalescent Center v. Michigan Dept. of Consumer and Industry Services</u>, 66 F.Supp.2d 875, 876 (E.D. Mich. 1999).

[53]<u>Clio</u>, 66 F.Supp.2d at 877.

[54]<u>Clio</u>, 66 F.Supp.2d at 877.

[55]<u>Clio</u>, 66 F.Supp.2d at 877.

[56]<u>Clio</u>, 66 F.Supp.2d at 877.

maintain the levees in accordance with federal regulations.  Second, there is no specific policy to which  plaintiffs can point that OLD implemented that was not provided for in federal law or the federal regulations.  Therefore, this Court should conclude, as the Clio court did, that because OLD "was implementing federal regulations pursuant to its obligation under statutes regulations, and/or contract, it was acting as the" Corps' "agent and removal was proper under §1442(a)(1)."[57]

The Eighth Circuit Court of Appeals, in Watson v. Philip Morris Companies, Inc., upheld removal under 28 U.S.C. §1442(a)(1), because the tobacco companies' **testing** procedures had to be in compliance with federal regulations.[58]  The court did so despite the fact that it noted "[m]ere participation in a regulated industry is insufficient to support removal unless the challenged conduct is closely linked to detailed and specific regulations."[59]  While "tobacco companies' efforts at federal removal have not been successful in other courts, companies contracting with the government have had more success."[60]

The Watson court relied on the Fifth Circuit's decision in Winters v. Diamond Shamrock to uphold removal, noting that courts "have found **private actors working under government contracts, to be acting under the direction of a federal officer where the government maintained control over the manner in which the contractor performed the contracted work**

---

[57]Clio, 66 F.Supp.2d at 877.

[58]Watson v. Philip Morris Companies, Inc., 420 F.3d 852, 858 (8th Cir.2005), *quoting*, 32 Fed. Reg. 11,178 (08/01/67).

[59]Watson, 420 F.3d at 857.

[60]Watson, 420 F.3d at 857.

17

**or monitored the performance of the work.**"[61]   The Court analogized the federal regulations with

which tobacco companies had to comply to the contractual specifications with which the government

contractor had to comply in Winters.[62]  Therefore, the Watson court found removal appropriate under

28 U.S.C. §1442(a)(1).

The Eleventh Circuit, in Magnin v. Teledyne Continental Motors,[63] and a California district

court, in AIG Europe, Ltd. v. McDonnell Douglas Corp., used similar reasoning to uphold removals

by private individuals under §1442(a)(1) because: (1) the removingdefendants were serving as

"representatives of the FAA by certifying planes according to specifications.  *See* 14 C.F.R. §§

183.29, 183.31;"[64] and (2) they were acting under the "general supervision of the FAA

administrator."[65]   The court rejected plaintiff's contention that there was no direct and detailed

control by a federal officer because "the control requirement can be satisfied by strong government

intervention and the threat that a defendant will be sued in state court 'based upon actions taken

pursuant to federal direction.'"[66]   Thus, the court reasoned that:

> If monitoring performance and dictating specifications is sufficient, then *a fortiori*
> **direct statutory and regulatory delegation of government authority to**

---

[61]Watson, 420 F.3d at 857 (emphasis added).

[62]*See* Watson, 420 F.3d at 857-858 (providing ". . .. The FTC's specificity in testing procedures is comparable to the specificity of the government's formula for Agent Orange").

[63]Magnin v. Teledyne Continental Motors, 91 F.3d 1424 (11th Cir. 1996).

[64]AIG Europe, Ltd. v. McDonnell Douglas Corp., 2003 WL 257702, at p.2 (C.D. Cal. 2003); See also, Magnin, at 91 F.3d at 1429, n.1, *citing*, 14 C.F.R. 183.31.

[65]AIG Europe, Ltd., 2003 WL 257702, at p.2.

[66]AIG Europe, Ltd., 2003 WL 257702, at p.3, *citing*, Fung v. Abex Corp., 816 F.Sypp. 569 (N.D. Cal. 1992).

**accomplish the same ends must suffice.**[67]

Because plaintiffs have added the allegations of negligent maintenance, soil selection and soil testing, the instant case satisfies the reasoning of <u>Watson, Magnin,</u> and <u>AIG Europe, Ltd.</u>[68] since: (1) the OLD contracts with the federal government to maintain the levees; (2) said contracts require that said levees be maintained "in accordance with the regulations prescribed by the Secretary of the Army[;]"[69] (3) the regulations governing maintenance on said levees and flood walls are comprehensive and detailed;[70] (4) the Corps inspects the levees to ensure they are maintained in accordance with its detailed regulations;[71] and (5) if OLD fails or refuses to follow the Corps' instructions, the Corps may withhold federal funding or sue for specific performance.[72]   Thus, removal, pursuant to §1442(a)(1), was proper.

The instant case does not present a scenario like the one faced in <u>Jamison v. Purdue Pharma Co.</u> or <u>Little v. Purdue Pharma Co.</u>  The remand decisions therein were predicated on the fact that defendants "**were <u>not</u> 'operating under the terms of a federal contract,** and thus the operative

---

[67]<u>AIG Europe, Ltd.</u>, 2003 WL 257702, at p.3 (emphasis added).

[68]Plaintiffs contend they did not change the claims being made in their Amended Petition. The Court need look no further then its ruling on the original petition wherein it stated: "[t]here are no allegations concerning the failure to maintain" to see that plaintiffs' contention is false. *See* Document #476, at p.8 (Order & Reasons).

[69]*See* Exhibit 6-A, at p.2, ¶(g);  Exhibit 6-B, at p.2, ¶(f); Exhibit 6-C, at p.3, ¶(g);  Exhibit 6-F, at p.4, ¶(g) attached to Document #13 in *Harvey* lawsuit (Docket No. 05-4568).

[70]33 CFR 208.10(b)(1)(i)-(xii) and 33 CFR 208.10(c).

[71]*See* Exhibit 5-A (2000-2004 Corps of Engineers Outstanding Rating) attached to Document #13 in *Harvey* lawsuit (Docket No. 05-4568).

[72]<u>United States v. City of Irving, Texas</u>, 482 F.Supp. 393, 395 (N.D. Tex. 1979)(33 U.S.C. §701c includes an implied cause of action to sue to enforce assurances.)

contractual commands of federal officials.  Rather, the defendants were operating at their own initiative."[73]  Contrary to plaintiffs' unsupported assertion that OLD was "NOT involved in a direct contract with the federal government,"[74] this case presents a situation where OLD operates pursuant to federal contracts.  The contracts with the Corps require OLD to maintain the levees in accordance with regulations prescribed by the Corps.  Said regulations are comprehensive and detailed.  The Corps inspects the levees to ensure compliance with its detailed regulations.  And, if OLD fails or refuses to comply, the Corps may withhold federal funding or sue for specific performance. Therefore, the reasoning of Jamison and its progeny are inapplicable and do not suggest that the instant matter should be remanded.

F.     **THIS CASE INVOLVES AN EVEN STRONGER FEDERAL INTEREST THAN WAS PRESENT IN LALONDE:**

In Lalonde, the removing defendant presented evidence that it had entered into a contract with the federal government to operate a government-owned rubber plant.[75]  The United States controlled the type of rubber produced and maintained authority to enforce compliance with its standards.[76] Lalonde argued the defendant was not a federal officer because the government merely

---

[73]Jamison v. Purdue Pharma Co., 251 F.Supp.2d 1315, 1327 (S.D. Miss.2003), *quoting*, Little v. Purdue Pharma Co., 227 F.Supp.2d 838, 861 (S.D. Ohio 2002).

[74]*See* Document 820, at p.8, ¶24 (Motion to Remand); Similarly, Mouton v. Flexitallic, Inc., is also inapplicable as there are express contractual government specifications with which OLD must comply.  *See* Exhibit 6-A, at p.2, ¶(g);  Exhibit 6-B, at p.2, ¶(f); Exhibit 6-C, at p.3, ¶(g);  Exhibit 6-F, at p.4, ¶(g) attached to Document #13 in *Harvey* lawsuit (Docket No. 05-4568), and 33 CFR 208.10(b)(1)(i)-(xii) and 33 CFR 208.10(c).

[75]Lalonde, 1998 WL 34301466 at p.3.

[76]Lalonde, 1998 WL 34301466 at p.3.

provided general policy directives, and did not provide specific orders.[77] The <u>Lalonde</u> court rejected this argument, stating:

> DSM was no less acting under federal authority when it followed the general directives of federal authority in running the government owned plant than it was when it was following a specific order from a federal officer regarding a particular aspect of plant operations . . .. DSM did not cease to be running the plant for and under federal authority when it made operational decisions within the ambit of its duties without a specific express federal directive as to the particulars.[78]

The <u>Lalonde</u> court concluded:

> What matters here is the continuing ability of the federal government to be able to respond in times of national need, and to be able to bring the resources or private industry to bear in such times.[79]

The instant case is similar to <u>Lalonde</u>, because OLD: (1) maintained the levees in accordance with the Corps' regulations;[80] (2) the levees were built in accordance with the Corps' designs and specifications;[81] (3) the Corps supervised the installation of the levees;[82] (4) the Corps bid out the

---

[77]<u>Lalonde</u>, 1998 WL 34301466 at p.3.

[78]<u>Lalonde</u>, 1998 WL 34301466 at p.4.

[79]<u>Lalonde</u>, 1998 WL 34301466 at p.4.

[80]33 U.S.C. §701c (providing that a state or political subdivision shall assure that it will "maintain and operate all works after completion in accordance with the regulations prescribed by the Secretary of the Army.")  <u>See also</u>, Exhibit 5, at ¶¶6-7 (Spencer Affidavit); Exhibit 6, at ¶¶2-3 (Hearn Affidavit); Exhibits 6A-6H (Assurances) attached to Document #13 in *Harvey* lawsuit (Docket No. 05-4568).  As noted earlier plaintiff's did not bring a maintenance claim against OLD in its Original Petition which was the basis for the remand.

[81]*See* Exhibit 5-B (Excerpts from Design Memorandum 19A for London Avenue Outfall Canal); Exhibit 5-C (Excerpts from Design Memorandum 20 for 17th Street Outfall Canal); Exhibit 5-D (Excerpts from Design Memorandum 13) attached to Document #13 in *Harvey* lawsuit (Docket No. 05-4568).

[82]*See* Exhibit 5-B (Excerpts from Design Memorandum 19A for London Avenue Outfall Canal); Exhibit 5-C (Excerpts from Design Memorandum 20 for 17th Street Outfall Canal);

contracts to build the levees at issue;[83] and (5) "improvements . . . for flood control . . . purposes **shall** be under the direction of the Secretary of the Army and supervision of the Chief of Engineer."[84]

Incredibly, plaintiffs argue that the rubber plant in <u>Lalonde</u> presented an "overwhelming federal interest,"[85] while the flood control structures protecting New Orleans do not.  OLD respectfully submits that this case actually presents a stronger federal interest than was present in <u>Lalonde</u>, because Congress specifically found it necessary to pass legislation funding said flood control projects and placing the Corps in charge of same.  Therefore, this Court should conclude, as did the <u>Lalonde</u> court, that removal in this matter was proper pursuant to §1442(a)(1).

## III.    FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331:

Plaintiffs' Motion to Remand also takes issue with OLD's invocation of federal question jurisdiction under 28 U.S.C. §1331.  Plaintiffs contend OLD is a creature of state law, and state law defines its obligations and duties as they relate to the subject levees and flood walls.  Plaintiffs also argue that exercising federal jurisdiction in this case would upset the delicate balance between state and federal interests.  However, as discussed below, by now alleging that OLD failed to inspect and

---

Exhibit 5-D (Excerpts from Design Memorandum 13) attached to Document #13 in *Harvey* lawsuit (Docket No. 05-4568).

[83]Exhibit 5-E(Excerpts from Corps Specifications and Solicitations for Bid on London Avenue Outfall Canal);  Exhibit 5-F(Excerpts from Corps Specifications and Solicitations for Bid on 17th Street Outfall Canal) attached to Document #13 in *Harvey* lawsuit (Docket No. 05-4568).

[84]33 U.S.C. §701a-1 (emphasis added); <u>See also</u>, 33 U.S.C. §701b (providing "[f]ederal investigations and improvements of rivers and other waterways for flood control and allied purposes **shall** be under the **jurisdiction** of the Secretary of the Army and **supervision** of the Chief of Engineers.")(emphasis added).

[85]Plaintiff's Memo., at p.11.

maintain the levees and flood walls, plaintiffs have alleged facts sufficient to vest this court with subject matter jurisdiction.

In Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, the United States Supreme Court set forth a two part test for determining whether federal jurisdiction lies in a state law claim involving significant federal issues.[86]  First, plaintiffs' state law claim must raise a disputed and substantial federal issue.  Second, the federal court must entertain the lawsuit without disturbing the balance between federal and state responsibilities.

In the instant case, the allegations raised in plaintiffs' First Supplemental and Amending Petition give rise to  disputed and substantial claims of federal law relating to the congressionally created National Flood Control Program.[87]  Federal statutes governing flood control mandate that flood protection projects must be under "federal direction."[88]  33 U.S.C. §701c provides, in pertinent part, that a state or political subdivision shall assure that it will "**maintain and operate** all works after completion in accordance with the regulations prescribed by the Secretary of the Army."[89]  In addition, as this Court's Order and Reasons correctly points out, 33 C.F.R. 208.10, *et seq* offers detailed instructions to OLD on how to **maintain** flood control structures.  This Court has observed

---

[86]Grable, 125 S.Ct at 2367.

[87]*See* 33 U.S.C. 701a providing "It is recognized that destructive floods upon the rivers of the United States, upsetting orderly processes and causing loss of life and property, including erosion of lands, and impairing and obstructing navigation, highways, railroads, and other channels of commerce between States, constitute a menace to national welfare: that is the sense of Congress that flood control on navigable waters or their tributaries is a proper activity of the Federal Government in cooperation with States . . .."

[88]Id.

[89]33 U.S.C. §701c (emphasis added).

that the OLD has "agreed to maintain these sites in compliance with regulations of the government after their completion."[90]   Accordingly, whether OLD properly maintained the subject flood control structures is a disputed and substantial issue of federal law.  Simply because OLD is a creature of state law does not mean "disputed and substantial" federal issues cannot, as a matter of law, be involved in the exercise of the OLD's federally mandated duties.

Moreover, failing to exercise subject matter jurisdiction in this case would potentially disturb the balance between federal and state judicial responsibilities.  It is the province of this federal forum, and not state courts, to determine whether OLD satisfied its federally-mandated obligations to **maintain** the subject levees and flood walls.[91]  By enacting specific legislation and regulations directing the OLD on how to maintain the subject flood control structures, Congress clearly contemplated having a National Flood Control Program maintained in a uniform fashion.  There is a clear federal interest in having flood control structures maintained to a nationwide standard. Allowing each state to exercise its jurisdiction over this substantial federal issue risks the creation federal flood control project **maintained** in a patchwork fashion, depending upon which state the project happens to rest at any given point. This result would upset the power of both Congress and the federal judiciary over the uniform maintenance of flood control projects throughout the country.

---

[90]Document #476, p. 6 (Order and Reasons).

[91]See, 33 U.S.C.§701c and 33 C.F.R. 208.10 *et seq* (Emphasis added).

## IV.   CONCLUSION:

WHEREFORE, for the reasons stated above, Defendant, the Board of Commissioners for the

Orleans Levee District, Parish of Orleans, prays that this Court DENY plaintiffs' Motion to Remand

and Request for Sanctions.

Respectfully submitted,

THOMAS P. ANZELMO, T.A. (#2533)
MARK E. HANNA (19336)
JAMES C. RATHER, JR. (25839)
KYLE P. KIRSCH (26363)
ANDRE' J. LAGARDE (28649)
McCRANIE, SISTRUNK, ANZELMO,
HARDY, MAXWELL & McDANIEL
3445 N. Causeway Blvd., Suite 800
Metairie, Louisiana 70002
Telephone: (504) 831-0946

-and-

JAMES L. PATE (#10333)
BEN L. MAYEAUX (#19042)
LABORDE & NEUNER
1001 West Pinhook Road, Suite 200
Post Office Drawer 52828
Lafayette, LA 70505-2828
Telephone: (337) 237-7000
COUNSEL FOR DEFENDANT, OLD

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of
record by placing same in the United States mail, postage prepaid, and properly addressed, this 1st
day of August, 2006.

25