

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 AUG -2 | P 3: 51

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO.: 05-4182 "K"(2) |
| | * | |
| | * | JUDGE DUVAL |
| PERTAINS TO:  INSURANCE | * | |
| *Vanderbrook*, No. 05-6323 | * | MAGISTRATE JUDGE WILKINSON |
| | * | |
| | * | |
| | * | |


**CONSOLIDATED REPLY MEMORANDUM OF DEFENDANTS
THE STANDARD FIRE INSURANCE COMPANY,
HARTFORD INSURANCE COMPANY OF THE MIDWEST,
HANOVER INSURANCE COMPANY AND
UNITRIN PREFERRED INSURANCE COMPANY
IN FURTHER SUPPORT OF THEIR RULE 12 MOTIONS**

___ Fee ___
___ Process ___
X Dktd ___
V CtRmDep ___
___ Doc. No. ___

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    1.   Water Released From A Canal, As a Result of a Break in a Levee Wall, Clearly
         Falls Within the Scope of the Water Damage Exclusion ................................................ 2

    2.   Arguments About "Efficient Proximate Cause" Are Irrelevant ...................................... 9

    3.   The Anti-Concurrent Causation Clause in the Water Damage Exclusion is
         Unambiguous and Enforceable ..................................................................................... 13

    4.   The Hurricane Deductible Endorsements Do Not Create Any Ambiguity In the
         ISO Insurers' Policies ................................................................................................. 15

    5.   No Discovery is Necessary or Permissible Because the Water Damage
         Exclusion is Unambiguous ........................................................................................... 17

CONCLUSION ....................................................................................................................... 18

## TABLE OF AUTHORITIES

American Mfg. Corp. v. Nat'l Union Fire Ins. Co., 14 So. 2d 430 (La. 1942) ..................12

Bartlett v. Cont'l Divide Ins. Co., 697 P.2d 412 (Colo. Ct. App. 1984) ..............................3

Bergeron v. Pan Am Assur. Co., 731 So. 2d 1037 (La. App. 4 Cir. 1999).......................16

Buente v. Allstate Ins. Co., 422 F. Supp. 2d 690 (S.D. Miss. 2006) ...............................3, 4

Buente v. Allstate Prop. & Cas. Ins. Co., Civ. A. No. 1:05 CV 712 LTS JMR,
    2006 WL 980784 (S.D. Miss. Apr. 12, 2006).................................................................4

Chase v. State Farm Fire & Cas. Co., 780 A.2d 1123 (D.C. 2001)....................................9

Crigler v. Crigler, 671 So. 2d 1199 (La. App. 2 Cir. 1996)...............................................16

Doerr v. Mobil Oil Corp., 774 So. 2d 119 (La. 2000) ......................................................17

Drewett v. Nat'l Flood Insurers Ass'n, Civ. A. No. 74-806,
    1976 U.S. Dist. LEXIS 17325 (W.D. La. Jan. 6, 1976)..................................................7

E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.,
    444 N.Y.S.2d 321 (N.Y. App. Div. 1981) ......................................................................3

Edwards v. Daugherty, 883 So. 2d 932 (La. 2004).........................................................16

Egle v. Allstate Ins. Co., 889 So. 2d 413 (La. App. 3 Cir. 2004) .......................................1

Evana Plantation, Inc. v. Yorkshire Ins. Co., 58 So. 2d 797 (Miss. 1952).......................11

General Star Indem. v. W. Fla. Vill. Inn, Inc.,
    874 So. 2d 26 (Fla. Dist. Ct. App. 2004) ....................................................................15

Glen Falls Ins. Co. v. Linwood Elevator, 130 So. 2d 262 (Miss. 1961)............................11

Grace v. Lititz Mut. Ins. Co., 257 So. 2d 217 (Miss. 1972) .............................................11

Hardin Bag & Burlap Co. v. Fidelity & Guar. Fire Corp.,
    14 So. 2d 634 (La. 1943) ............................................................................................12

Kane v. Royal Ins. Co., 768 P.2d 678 (Colo. 1989) .......................................................7, 8

Lemoine v. Ill. Nat'l Ins. Co., 868 So. 2d 304 (La. App. 2 Cir. 2004) .............................16

Lorio v. Aetna Ins. Co., 232 So. 2d 490 (La. 1970) ....................................................10, 11

Maine Drilling & Blasting, Inc. v. Insurance Co. of N. Am.,
    665 A.2d 671 (Me. 1995).........................................................................15

Pakmark Corp. v. Liberty Mut. Ins. Co., 943 S.W.2d 256 (Mo. Ct. App. 1997) ...............3

Principal Health Care of La., Inc. v. Lewer Agency, Inc.,
    38 F.3d 240 (5th Cir. 1994) ....................................................................1

Riche v. State Farm Fire & Cas. Co., 356 So. 2d 101 (La. App. 1 Cir. 1978) ...................2

Roach-Strayhan-Holland Post No. 20 v. Cont'l Ins. Co.,
    112 So. 2d 680 (La. 1959) .....................................................................10

Shoreline Towers Condo. Owners Ass'n. v. Zurich Am. Ins. Co.,
    196 F. Supp. 2d 1210 (S.D. Ala. 2002)........................................................15

South Cent. Bell Tel. Co. v. Ka-Jon Food Stores, 644 So. 2d 357 (La. 1994),
    vacated and remanded on other grounds after rehearing,
    644 So. 2d 368 (La. 1994) ......................................................................17

Sunshine Motors, Inc. v. New Hampshire Ins. Co.,
    530 N.W.2d 120 (Mich. Ct. App. 1995) .........................................................9

TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.,
    114 F.3d 731 (8th Cir. 1997) ..................................................................3, 9

Tuepker v. State Farm Fire & Cas. Co., Civ. A. No. 1:05CV559 LTS-JMR,
    2006 WL 1442489 (S.D. Miss. May 24, 2006) .............................................12, 13, 15

Western Assur. Co. v. Hann, 78 So. 232 (Ala. 1917).........................................................11

## STATUTES AND REGULATIONS

44 C.F.R. § 59.1 ...............................................................................................6, 7, 8

44 C.F.R. 61.4 (1987) ...........................................................................................8

44 C.F.R. Part 61 App. A.......................................................................................7, 8

58 Fed. Reg. 62420, 62424 (Nov. 26, 1993).....................................................................8

La. Civ. Code art. 1848 ..................................................................................................17

## PRELIMINARY STATEMENT

The only question this Court needs to decide in order to resolve these Rule 12 motions is

whether the alleged damages fall within the following exclusion in the Policies issued by the ISO

Insurers[1]:

| **Allegations** | **Policy Language** |
|---|---|
| "Sometime between 10:00 and 11:00 a.m. on August 29, 2005, before the full force of the storm reached the City of New Orleans, a small section of the concrete outfall canal wall known as the 17th Street Canal, suddenly broke, causing water to enter the streets of the City of New Orleans and homes of Petitioners, causing damage as hereinafter alleged." (Petition, ¶ 3.) | "We do not insure for loss caused <u>directly or indirectly</u> by any of the following.  <u>Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.</u><br><br>c.    **Water Damage**, meaning:<br><br>(1)  <u>Flood</u>, <u>surface water</u>, waves, tidal water, <u>overflow of a body of water</u>, or spray from any of these, <u>whether or not driven by wind</u>;<br><br>(Appendix ("App.") at INS 9, 56, 96, 136, 171 (emphasis added).) |

The Water Damage exclusion clearly and unambiguously applies to the facts alleged in this

case.[2]  In support of their Rule 12 motions, Defendants cited numerous cases from across the

country holding that this exact exclusionary language or substantially equivalent language was

---

[1] The "ISO Insurers" filing this consolidated reply memorandum are: The Standard Fire Insurance Company ("Standard Fire"), improperly named as Travelers Insurance Company and St. Paul Travelers Insurance Company; Hartford Insurance Company of the Midwest ("Hartford"), improperly named as Hartford Insurance Company; Hanover Insurance Company ("Hanover"); and Unitrin Preferred Insurance Company ("Unitrin"), improperly named as Kemper Insurance Company.

[2] This is clearly a question of law which this Court can and should decide on this motion.  <u>Principal Health Care of La., Inc. v. Lewer Agency, Inc.</u>, 38 F.3d 240, 242 (5th Cir. 1994) ("Interpretation of an insurance policy is a question of law.") (applying Louisiana law); <u>Egle v. Allstate Ins. Co.</u>, 889 So. 2d 413, 415 (La. App. 3 Cir. 2004) (noting that "interpretation of an insurance policy is a question of law, and we have authority to construe provisions of the policy in order to resolve questions of coverage").

applicable to similar facts.  (See Def. Consol. Memo., at 9-13.)  Tellingly, Plaintiffs have failed

to address any of these cases and the amicus brief has cited only one of them.  Instead, Plaintiffs

and the amicus brief have relied exclusively on cases involving facts far different from what is

alleged in this case, and have attempted to manufacture ambiguities in the Policies that simply do

not exist.

## ARGUMENT

### 1.    Water Released From A Canal, As a Result of a Break in a Levee Wall, Clearly Falls Within the Scope of the Water Damage Exclusion

Plaintiffs' Petition clearly alleges that the damage to their homes was caused by water

released from a broken levee.  (Petition, ¶ 3.)  Such an event plainly constitutes "flood," "surface

water" or "overflow of a body of water."  (See Def. Consol. Memo., at 9-13.)  In attempting to

argue that the release of water from a broken levee does not fall within the Water Damage

exclusion, Plaintiffs rely heavily on Riche v. State Farm Fire & Cas. Co., 356 So. 2d 101 (La.

App. 1 Cir. 1978), a case which actually supports Defendants' position.  In Riche, the insured

sought coverage under a homeowners policy for the loss of fishing gear that was on a boat when

it sank in a reservoir during a windstorm.  The court held that the water damage exclusion was

inapplicable to "damage caused by windstorm (or resulting waves) over a body of water"

because the exclusion contemplated "only such damage caused by water which has risen over

and covered areas not ordinarily covered by water."  Id. at 103-04 (emphasis added).  The court

simply held that the water damage exclusion in that policy was intended to apply to property that

is in a location not ordinarily covered by water, as opposed to property that is on a boat in the

water.  In contrast, in this case there is no dispute that Plaintiffs' homes were in a location not

ordinarily covered by water when they were flooded by the massive water inundation that accompanied Hurricane Katrina.

To the extent that Plaintiffs argue that <u>Riche</u> held that the exclusion at issue applied only to water that had "risen over" its banks, any such comment was dictum. The court in <u>Riche</u> was not presented with the question of whether water must rise over the banks of a canal as opposed to simply breaking through a lateral barrier such as a floodwall in order for the exclusion to apply. There is nothing in the plain language of the exclusion or the ordinary definition of the term "flood" that would suggest that the exclusion is limited in this manner. Courts have repeatedly rejected such a narrow interpretation of the broad Water Damage exclusion. <u>See, e.g.,</u> <u>TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.,</u> 114 F.3d 731, 733 (8th Cir. 1997) (break of levee); <u>Pakmark Corp. v. Liberty Mut. Ins. Co.,</u> 943 S.W.2d 256, 261-62 (Mo. Ct. App. 1997) (break of levee); <u>E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.,</u> 444 N.Y.S.2d 321, 322 (N.Y. App. Div. 1981) (failure of dike); <u>Bartlett v. Cont'l Divide Ins. Co.,</u> 697 P.2d 412, 413 (Colo. Ct. App. 1984) (failure of dam).

Plaintiffs also cite the first opinion in <u>Buente v. Allstate Ins. Co.,</u> 422 F. Supp. 2d 690 (S.D. Miss. 2006), which, to the extent it is relevant to the allegations in this case, strongly supports Defendants' position. <u>Buente</u> involved numerous issues that are not implicated by the Petition in this case. The complaint in <u>Buente</u> alleged that the damage to the plaintiffs' property "was attributable in part to wind, in part to rain, and in part to storm surge." <u>Id.</u> at 695. With respect to the "storm surge" damage, the court held that the water damage exclusion was applicable, valid and enforceable, recognizing that "<u>similar policy terms have been enforced with respect to damage caused by high water associated with hurricanes in many reported decisions.</u>"

Id. at 696 (emphasis added).  That is the only part of the <u>Buente</u> opinion that has any relevance here because Plaintiffs in this case have not alleged any type of damage other than loss caused by Water Damage from the floodwaters that entered their homes.  In <u>Buente</u>, there was also substantial damage to the roof of the plaintiffs' home that was caused exclusively by wind, and the plaintiffs contended that Allstate had not made adequate payments for that wind damage.  Id. at 695-96.  The court simply concluded that, to the extent there was a dispute about what part of the damage was "attributable to wind and rain" and what part of the damage was "attributable to flooding," it was Allstate's burden to prove that it had properly allocated the loss between that part of the damage caused by covered perils and that part of the damage caused by excluded perils, an issue that could not, in that case, be resolved on the pleadings.  Id.[3]  The court found certain language in Allstate's policy (which is not present in the ISO Insurers' Policies) ambiguous only to the extent that Allstate was arguing that "the hurricane itself, i.e., the hurricane winds and rain, would constitute a weather condition that would relieve them of [any] liability for damage to insured property," and to the extent that "[t]hese provisions purport to exclude coverage for wind and rain damage . . . ."  Id. at 696-97.[4]  The court made clear that the policy provided coverage for the part of the damage to the plaintiffs' home that was directly

---

[3] The court also noted that, to the extent that wind caused damage before the floodwaters reached the property, that wind damage would be covered.  Id.  No such allegation is before the Court in this case.

[4] The Allstate policy language that the court found ambiguous is as follows:  "We do not cover loss to the [insured] property consisting of or caused by: . . .21.  Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss. . . .23.  We do not cover loss to covered property . . . when: a) there are two or more causes of loss to the covered property; and b) the predominant cause(s) of loss is (are) excluded under Losses We Do Not Cover, items 1 through 22 above [including the water damage exclusion]."  Id. at 693 (underscore added).  Unlike Allstate's policy, Defendants' Policies do not contain any exclusion requiring the determination of the "predominant cause(s)" of a loss when there are two or more causes of a loss.  Defendants' Policies simply exclude the portion of any loss that is caused by Water Damage, and contain anti-concurrent causation language (not found in Allstate's policy) specifying that loss caused directly or indirectly by Water Damage is excluded "regardless of any other cause or event contributing" to such loss caused by Water Damage.  (See Def. Consol. Memo., at 7.)

attributable to wind and wind-driven rain, but did not provide coverage for the part of the damage attributable to flooding. Id. at 696-97.

In a second opinion in Buente denying the insured's motion for summary judgment, the same judge ruled that "storm surge" was not covered because ""[t]he inundation that occurred during Hurricane Katrina was a flood, as that term is ordinarily understood . . . ." Buente v. Allstate Prop. & Cas. Ins. Co., Civ. A. No. 1:05 CV 712 LTS JMR, 2006 WL 980784, at *1-2 (S.D. Miss. Apr. 12, 2006) (emphasis added). It is thus clear that the judge in Buente agreed with the ISO Insurers' position on the only question that is at issue in this case -- whether the large-scale inundation caused by Hurricane Katrina constitutes "flood," "surface water" or "overflow of a body of water."

This is a very different case from Buente. This case involves only the question of whether there is coverage for water damage caused by a broken levee wall. (Petition, ¶¶ 3, 4, 7, 10.) Unlike in Buente, there is no allegation in the Petition that Defendants failed to make sufficient payment for any portion of the damage to Plaintiffs' homes that was caused exclusively by wind, such as roof damage to a home that was flooded on the first floor. There is also no allegation that Defendants improperly allocated the damage between the portion of the loss caused by covered perils (i.e., wind and rain entering through an opening caused by wind) and the portion of the loss caused by an uncovered peril (i.e., Water Damage). While not at issue in this case, the ISO Insurers do not contend that their policies exclude damage caused exclusively by wind or by rain entering through an opening caused by wind.

Both Plaintiffs and the amicus suggest that Defendants had an obligation to define the term "flood" in the Policies specifically "to include the inundation of water caused by the

breaking of levees, dams or other structures as a result of the negligent construction, design or maintenance of such levees or dams . . . ." (Opp. at 5; see also Amicus Br., at 10.) There is no need for such a definition.[5] The word "flood" has a common meaning found in dictionaries and in numerous cases: the inundation by water of normally dry land. (See Def. Consol. Memo., at 9-10.) Defendants are not required to attempt to dream up every conceivable type of event that might result in a flood and draft an exclusion that includes all of those events. Such a task would likely be impossible given that nature and mankind can always find a new way to create a flood.

There is likewise no merit to the amicus brief's contention that the water inundation alleged in the Petition does not fall within the definition of "flood" for purposes of the National Flood Insurance Program ("NFIP"). While courts have not applied that definition in interpreting Water Damage exclusions in homeowners' policies, what occurred in New Orleans was clearly a "flood" for purposes of the NFIP. Plaintiffs allege that "before the full force of the storm reached the City of New Orleans, a small section of the concrete outfall canal wall known as the 17th Street Canal, suddenly broke, causing water to enter the streets of the City of New Orleans

---

[5] The amicus brief contends that the fact that Hartford's policy contains an endorsement (Form H-380-1, App. at INS 75) that includes a definition of "flood" in an exclusion for "COLLAPSE, CRACKING or SHIFTING of buildings" purportedly creates an ambiguity in the Water Damage exclusion. This endorsement is immaterial to the Water Damage exclusion. Notably, Hartford did not alter the Water Damage exclusion in its main policy form because there was no need to do so -- the term "flood" has a common, generally accepted definition which has been applied by numerous courts. (See Def. Consol. Memo., at 9-10.) While Hartford's endorsement provides, for example, that "Flood means . . . a. Flood" and that "Flood means . . . Release of water held by a . . . flood control device," common sense dictates that "flood means flood," and that release of water from a <u>flood</u> control device, such as a levee, would be a "flood." Simply because one of the Defendants has an endorsement that lists in an exclusion specific types of flood events does not in any way render a Water Damage exclusion that applies to <u>all</u> losses caused by flood ambiguous. By way of illustration, all of the ISO policies contain an exclusion for vandalism (not defined) done to the dwelling when it has been unoccupied for more than 30 days. Suppose that one of the carriers added a limited endorsement to exclude all losses caused by glass breakage resulting from vandalism where the building is unoccupied, and defined vandalism as willful or malicious destruction of all or part of the residence premises. The presence of this definition in the more specific exclusion in one insurer's policy would not make the vandalism exclusion in the other insurers' policy ambiguous or inapplicable to a loss caused by glass breakage resulting from vandalism to an unoccupied building. Moreover, Hartford's policy makes clear that the "Collapse, Cracking, or Shifting" exclusion does not supplant the Water Damage exclusion in Hartford's policy. Hartford's endorsement provides that "All other provisions of this policy apply." (App. at INS 75.)

and homes of Petitioners, causing damage . . . ." (Petition, ¶ 3.) This clearly constitutes "[a]

general and temporary condition of partial or complete inundation of normally dry land from:

[both] (1) The overflow of inland or tidal waters [and] (2) The unusual and rapid accumulation or

runoff of surface waters *from any source*." 44 C.F.R. § 59.1 (emphasis added). There is no

dispute that the release of water from the 17th Street Canal was a "general and temporary

condition of partial or complete inundation of normally dry land . . . ." The 17th Street Canal is

also clearly an "inland water" that overflowed beyond its normal confines as a result of the break

in the canal wall. A common definition of the word "overflow" is "to flow over: cover with or as

if with water: inundate" or "a flowing over (as of water or other fluid): inundation." Webster's

Third New Int'l Dictionary (1993). The release of water from the canal also constitutes "[t]he

unusual and rapid accumulation or runoff of surface waters," i.e., water on the surface of the

ground, "from any source . . . ."

   The definition of "flood" in 44 C.F.R. § 59.1 is very similar to the definition of "flood" in

the Standard Flood Insurance Policy, which is the only policy form that may be issued under the

NFIP, which provides federally-funded flood coverage.[6] A Louisiana federal court interpreting

the definition of "flood" in the Standard Flood Insurance Policy has held that events such as the

release of water as a result of a broken levee constitute a "flood." See Drewett v. Nat'l Flood

Insurers Ass'n, Civ. A. No. 74-806, 1976 U.S. Dist. LEXIS 17325, at *3 (W.D. La. Jan. 6, 1976)

(broken levee). If the amicus brief were correct that what occurred in New Orleans was not a

---

[6] The Standard Flood Insurance Policy provides that "Flood, as used in this flood insurance policy, means:
1. A general and temporary condition of partial or complete inundation of two or more acres of normally dry land
area or of two or more properties (one of which is your property) from: a. Overflow of inland or tidal waters,
b. Unusual and rapid accumulation or runoff of surface waters from any source, c. Mudflow." 44 C.F.R. Part 61
App. A(1).

"flood" under the NFIP, that would mean that the federal government has paid millions of dollars to homeowners in New Orleans on flood insurance policies that it should not have paid.  Such an absurd result cannot be countenanced.[7]

Of the numerous cases Defendants cited defining the term "flood" as used in a water damage exclusion (see Def. Consol. Memo., at 9-13), Plaintiffs address none of them.  The amicus brief addresses only one of them, Kane v. Royal Ins. Co., 768 P.2d 678 (Colo. 1989).  The amicus brief attempts to distinguish Kane on the ground that the court relied, in part, on 44 C.F.R. 61.4 (1987), as then in effect, which has been eliminated by subsequent revisions to the NFIP regulations.  (Amicus Br., at 12-13.)  As an initial matter, this statute was collateral to the court's ruling in Kane, particularly given the court's conclusion that "[t]he inundation of insureds' normally dry land falls squarely within the[] generally accepted definitions of the term 'flood.'"  Kane, 768 P.2d at 681.  The amicus brief quotes selectively, and misleadingly, from 44 C.F.R. 61.4 (1987), which provided, in full, as follows:

> Insurance under the [National Flood Insurance] Program is available only for loss due to flood, as defined in § 59.1 of this subchapter.  The policy covers damage from a general condition of flooding in the area which results from other than natural causes, such as the breaking of a dam, but does not cover damage which results from causes on the insured's own property or within his control or from any condition which causes damage, which condition is substantially confined to the insured's premises or properties immediately adjacent thereto.

---

[7] Moreover, the same statute cited by the amicus brief defines the term "levee" as "a man-made structure, usually an earthen embankment, designed and constructed in accordance with sound engineering practices to contain, control, or divert the flow of water so as to provide protection from temporary flooding," and also defines the term "levee system" as "a flood protection system which consists of a levee, or levees, and associated structures, such as closure and drainage devices, which are constructed and operated in accordance with sound engineering practices."  44 C.F.R. § 59.1 (emphasis added).  For the amicus brief to suggest that the release of water from a levee is not a "flood" within the meaning of the NFIP makes no sense given that a levee is defined by the NFIP as a device designed to protect against "flooding" as part of a "flood protection system."

44 C.F.R. 61.4(b) (1987) (emphasis added).  The definition of "flood" in both § 59.1 and the

Standard Flood Insurance Policy, as in effect at that time, was <u>identical</u> to the definition of

"flood" in § 59.1 today.  <u>Compare</u> 44 C.F.R. § 59.1 (1987) and 44 C.F.R. Part 61 App. A(1)

(1987) <u>with</u> 44 C.F.R. § 59.1 (2006).  Contrary to the position taken by the amicus brief, Section

61.4(b) clearly did not alter the definition of "flood" in § 59.1.  It simply provided a brief

overview of the nature of the flood coverage provided through the NFIP, and referred back to the

definition of "flood" in § 59.1.  Section 61.4(b) simply indicated that an event such as "breaking

of a dam" would clearly fall within the definition of "flood" that was in use at that time and is

also in use today.[8]

### 2.      Arguments About "Efficient Proximate Cause" Are Irrelevant

The amicus brief argues at length that Louisiana has adopted an "efficient proximate

cause" test under which "[i]f the originating or dominant cause of the loss is a covered peril,

there is coverage."  (Amicus Br., at 15.)  It appears that the amicus brief is suggesting that if an

"efficient proximate cause" test were applied there would be coverage, even for damage that is

clearly attributable to flooding, if the flooding resulted from negligence.  No Louisiana appellate

court has ever applied causation principles in the manner that the amicus brief suggests.

---

[8] Section 61.4(b) was removed from the Code of Federal Regulations in 1993.  <u>See</u> 58 Fed. Reg. 62420, 62424 (Nov. 26, 1993).  FEMA explained that "[i]n keeping with the decision to remove key provisions of the flood insurance policy from the text of the regulations . . . paragraphs (b) through (e) of § 61.4 are being removed in this final rule."  <u>Id.</u> at 62421.  FEMA further explained that: "Before the Standard Flood Insurance Policies were included in the regulations as Appendices A(1) and A(2), key insurance terms and key provisions of the flood insurance policy were included respectively in part 59-Definitions and in the text of part 61-Insurance Coverage and Rates.  When Appendices A(1) and A(2) were added in October 1979, these key insurance terms and provisions were retained and, over the years, as revisions were made to the policies in the Appendices, the definitions in part 59 and the text in part 61 were revised as well to conform with the Appendices.  This has proved to be a cumbersome process and a needless duplication that, as the regulations have increased in volume over the years, is both time-consuming and costly.  FEMA is, therefore, removing these key insurance terms and provisions from the text of parts 59 and 61."  <u>Id.</u> at 62420.  These changes were plainly not intended to have any substantive effect on the definition of "flood" in the NFIP.

Arguments about "efficient proximate cause" are irrelevant in this case because the Water Damage exclusion contains anti-concurrent causation language making clear that loss caused by Water Damage is excluded "regardless of any other cause or event contributing concurrently or in any sequence to the loss." (App. at INS 9, 56, 96, 136, 171.)  Courts across the country have held that the "efficient proximate cause" doctrine is inapplicable where, as here, the exclusion in the insurance policy contains anti-concurrent causation language.  See, e.g., TNT Speed & Sport Ctr., Inc. v. American States Ins. Co., 114 F.3d 731, 733 (8th Cir. 1997) (affirming district court's ruling that "the plain meaning of the exclusionary language was to directly address, and contract out of, the efficient proximate cause doctrine and exclude coverage for losses caused by water, regardless of the existence of any other contributing causes in any sequence"); Sunshine Motors, Inc. v. New Hampshire Ins. Co., 530 N.W.2d 120, 121 (Mich. Ct. App. 1995) (holding that "proximate cause" of loss was irrelevant where water damage exclusion contained anti-concurrent causation language); Chase v. State Farm Fire & Cas. Co., 780 A.2d 1123, 1130 (D.C. 2001) (holding that efficient proximate cause rule was inapplicable where policy contained anti-concurrent causation language).

The cases relied upon in the amicus brief are inapposite.  The only Louisiana cases cited are Roach-Strayhan-Holland Post No. 20 v. Cont'l Ins. Co., 112 So. 2d 680 (La. 1959) and Lorio v. Aetna Ins. Co., 232 So. 2d 490 (La. 1970).  In Roach-Strayhan-Holland, the roof of an American Legion hall collapsed.  The insurer contended that the collapse was caused by improper construction, while the insured contended that the collapse was due to a severe windstorm.  Id. at 681.  The trial court ruled in favor of the insured after a bench trial, concluding that, although the building was improperly constructed, "a building can be insured when it's

improperly constructed" and that there was unusually heavy wind. <u>Id.</u> at 682. The Louisiana Supreme Court affirmed, stating that "it is sufficient, in order to recover upon a windstorm insurance policy <u>not otherwise limited or defined,</u> that the wind was the proximate or efficient cause of the loss or damage, notwithstanding other factors contributing thereto." <u>Id.</u> at 683. Here, in contrast, the Policies are "otherwise limited" -- they specifically exclude Water Damage regardless of whether wind or negligence or some other factor contributes to the Water Damage. Moreover, a circumstance in which negligence is alleged to have caused flooding, as in this case, is far different from a situation in which the collapse of a building is arguably caused in part by wind and in part by improper construction. The improper construction of the building in <u>Roach-Strayhan-Holland</u> did not cause the wind or visa versa. It was simply a question of whether the collapse of the building was caused by the windstorm.

<u>Lorio</u> is likewise of no relevance here. In that case, the insured sought to recover for the death of a horse that kicked through a stall in order to eat wheat in an adjacent stall, and later died as a result of overeating. The policy at issue covered loss "'directly resulting from or made necessary by windstorm.'" <u>Lorio</u>, 232 So. 2d at 491-92. The insured argued that the horse would not have been quartered in the building where he died if Hurricane Betsy had not caused severe damage to the horse's regular quarters. <u>Id.</u> at 492. The Louisiana Supreme Court held that the policy did not provide coverage because "the windstorm was at most an indirect or remote cause of the animal's death" and "it was the propensity of the horse to eat the wheat which ultimately caused his death . . . ." <u>Id.</u> at 494-95. <u>Lorio</u> did not involve interpretation of a policy exclusion, let alone an exclusion with anti-concurrent causation language.

The out-of-state cases cited in the amicus brief are similarly inapposite.  The amicus brief relies heavily on <u>Grace v. Lititz Mut. Ins. Co.</u>, 257 So. 2d 217 (Miss. 1972), in which the court held that "the jury had ample testimony to sustain the [insureds'] contention that their office building was destroyed by wind <u>before</u> the tidal waters reached the property."  <u>Id.</u> at 224 (emphasis added).[9]  Plaintiffs in this case do not allege that their homes were destroyed by wind before the floodwaters reached their property.  To the contrary, Plaintiffs allege that the floodwaters arrived "<u>before the full force of the storm reached the City of New Orleans</u> . . . ." (Petition, ¶ 3 (emphasis added).)  Plaintiffs in this case seek to recover exclusively for water damage.[10]  (See <u>id.</u>, ¶¶ 3, 4, 7, 10.)

Both Plaintiffs and the amicus ignore the controlling authority of <u>American Mfg. Corp. v. Nat'l Union Fire Ins. Co.</u>, 14 So. 2d 430, 435 (La. 1942), which makes clear that the Water Damage exclusion would apply in this case even absent the unambiguous anti-concurrent causation language.  In <u>American Mfg. Corp.</u>, the Louisiana Supreme Court held that an exclusion that, like the Water Damage exclusion in the ISO Insurers' Policies, contained the words "directly or indirectly" would apply where the excluded peril was within the chain of

---

[9] The other cases relied upon in the amicus brief are similarly inapposite.  <u>See</u> <u>Western Assur. Co. v. Hann</u>, 78 So. 232, 236 (Ala. 1917) (insured's goods were damaged when wall of adjacent building, which had been damaged by fire several months before, fell; court held that jury could have reasonably concluded that wall fell as a delayed consequence of the fire, and therefore that there was coverage under a policy covering only fire losses); <u>Glen Falls Ins. Co. v. Linwood Elevator</u>, 130 So. 2d 262, 269-71 (Miss. 1961) (court held that loss of soybeans in grain elevator was covered because jury could have reasonably concluded that loss was caused by fire rather than "bin burn," a form of overheating not rising to the level of a fire); <u>Evans Plantation, Inc. v. Yorkshire Ins. Co.</u>, 58 So. 2d 797, 798 (Miss. 1952) (holding that, where policy covered loss caused by hail, there was coverage for damage substantially caused by sleet).

[10] While the amicus brief suggests that some Louisiana residents "were left with mere slabs or foundations" (Amicus Br., at 17), Plaintiffs make no such allegations here.  This case is not a proposed class action, contrary to the incorrect assertion in the amicus brief.  (Amicus Br., at 4.)  This is simply a case brought by eight individual plaintiffs against their homeowners' insurers.

causation. American Mfg. Corp., 14 So. 2d at 435 (holding that "[a] windstorm, one of the excepted hazards, was the indirect cause of the damage, and, since the company is not liable under the policy for loss and damage 'caused directly or indirectly' by that hazard, plaintiff cannot recover"). See also Hardin Bag & Burlap Co. v. Fidelity & Guar. Fire Corp., 14 So. 2d 634, 635-36 (La. 1943) (similar result). The Louisiana Supreme Court's reasoning is even stronger in the case now before this Court because the peril excluded by the Policies (i.e., Water Damage) was the direct, as opposed to indirect, cause of the loss at issue.[11]

### 3. The Anti-Concurrent Causation Clause in the Water Damage Exclusion is Unambiguous and Enforceable

The amicus brief contends that the anti-concurrent causation clause has been deemed ambiguous, relying heavily on Tuepker v. State Farm Fire & Cas. Co., Civ. A. No. 1:05CV559 LTS-JMR, 2006 WL 1442489 (S.D. Miss. May 24, 2006). Tuepker was decided by the same judge who decided both the first and second Buente decisions, and reaches similar conclusions, addressing allegations far different from what is alleged in the Petition in this case. Unlike in this case, in which Plaintiffs seek to recover only for water damage caused by a broken levee wall (Petition, ¶¶ 3, 4, 7, 10), the plaintiffs in Tuepker also alleged that State Farm had not made sufficient payments for covered damage caused exclusively by wind and rain. Id. at *3.[12] As in

---

[11] In addition, the ISO Insurers' Policies contain separate exclusions for "Acts or decisions" and for faulty, inadequate or defective maintenance, etc. Both Plaintiffs and the amicus brief essentially ignore these exclusions, which are clearly applicable to Plaintiffs' allegations that the Levee Board "failed to correct the break [in the levee wall] or warn others including Petitioners of the impending water intrusion . . . ." (See Def. Consol. Memo. at 22-24; Petition, ¶ 6.) The amicus brief argues only that if the water inundation is not excluded under the Water Damage exclusion, the "acts or decisions" and faulty, inadequate or defective maintenance exclusions would not apply because the water damage would be an "ensuing loss" covered by the Policies. (Amicus Br., at 17 n.3.) This amounts to a concession that if the water inundation does fall within the Water Damage exclusion -- which it clearly does -- these other exclusions would apply to the alleged negligence.

[12] The court held that there was coverage for the "part of the plaintiffs' losses . . . attributable to wind and rain," and for wind damage that preceded the flood damage. Id. at *4.

<u>Buente</u>, the court in <u>Tuepker</u> held that "[l]osses directly attributable to water in the form of a 'storm surge' are excluded from coverage because this damage was caused by the inundation of plaintiffs' home by tidal water . . . ." <u>Id.</u> (emphasis added). That is the only part of the <u>Tuepker</u> opinion relevant to the sole question that is at issue in this case -- whether losses that are directly attributable to water released from the 17th Street Canal are excluded by the Water Damage exclusion.

The court in <u>Tuepker</u> found an ambiguity in the lead-in language to State Farm's water damage exclusion only to the extent that the court believed that State Farm was asserting that the lead-in language had the effect of excluding coverage even for parts of the damage that were caused exclusively by a covered peril (i.e., wind and rain entering through an opening created by wind). <u>Id.</u> at *5. This part of the <u>Tuepker</u> opinion is irrelevant here because Plaintiffs in this case are only seeking coverage for <u>water damage</u> caused by a broken levee wall. (Petition, ¶¶ 3, 4, 7, 10.) Regardless of what position State Farm may have taken in <u>Tuepker</u>,[13] the ISO Insurers do **not** contend that the Policies at issue here exclude damage caused exclusively by wind (or rain entering through an opening caused by wind damage), such as wind damage to the roof of a building that was flooded up to the roofline. Those issues are simply not implicated by the Petition in this case. The anti-concurrent causation language in the ISO Insurers' Policies also differs significantly from the lead-in language in State Farm's policy.[14]

---

[13] State Farm has filed a motion to alter or amend the court's opinion in <u>Tuepker</u> which is currently pending before that court and asserts that the court misinterpreted State Farm's position. <u>See</u> Tuepker, Docket Entry No. 36, at p. 8 (S.D. Miss.) ("Nor does State Farm dispute that separate and discrete wind damage is covered even if storm surge concurrently caused other damage to a residence.").

[14] State Farm's lead-in language is substantially different from the anti-concurrent causation language in the ISO Insurers' Policies. <u>See id.</u> at *4. It appears that the court thought that State Farm's exclusion could be read as possibly suggesting that there was no coverage for the part of the damage attributable to wind and rain where water

### 4.     The Hurricane Deductible Endorsements Do Not Create Any Ambiguity In the ISO Insurers' Policies

There is no merit to the amicus brief's contention that the "Hurricane Deductible Endorsement" in some of the ISO Insurers' Policies purportedly conflicts with the Water Damage exclusion and creates an ambiguity.  (Amicus Br., at 18-22.)  These endorsements simply explain how a percentage deductible will be applied to damage caused by the peril of windstorm during a hurricane.  The endorsements are not coverage provisions and clearly do not override or modify any of the exclusions contained in the main policy form.  They address only the amount of the loss for which the insured will be responsible, i.e., the deductible, not what perils are covered by the policy.  If anything, these provisions reinforce the fact that the ISO Insurers are responsible only for any part of the damage that is caused by a covered peril (wind).  For example, the "Special Hurricane Deductible" endorsement to Standard Fire's policy provides as follows:

> For a premium credit, we will pay only that part of each loss which exceeds the hurricane deductible shown below in the event of direct physical loss to property covered under SECTION I - PROPERTY COVERAGES *caused by the peril of windstorm or hail* during the period of a hurricane as defined below.  This deductible provision applies regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> The applicable hurricane deductible shall be 2% of the Coverage A limit of liability shown on the Declarations and shall apply to loss occurring during the entire period:
> 1.   Beginning at the time the National Hurricane Center of the National Weather Service issues a hurricane warning for any part of the state in which your residence premises is located; and

---

damage also occurs.  In contrast, the ISO Insurers' Policies provide simply that loss caused directly or indirectly by Water Damage is excluded "regardless of any other cause or event contributing concurrently or in any sequence to the loss," i.e., the loss caused by Water Damage.  (See Def. Consol. Memo. at 7.)  This provision does not exclude coverage for any part of the damage to an insured's property that is caused exclusively by wind.  It simply provides that any part of the damage that is caused by Water Damage is not covered regardless of what other factors may have caused or contributed to the loss caused by Water Damage.

     2. Ending twenty-four (24) hours following the termination of the last hurricane warning issued for any part of the state in which your residence premises is located.

     . . .

     <u>All other provisions of the policy apply</u>.

(App. at INS 124 (emphasis added).) This provision plainly does not grant coverage for loss caused by Water Damage. It only addresses the amount of the deductible, not what perils are covered by the policy, as set forth in the main policy form. The endorsement makes clear that the deductible only applies to a loss "caused by the peril of windstorm or hail," and that "[a]ll other provisions of the policy apply," which include the Water Damage exclusion. There is nothing in this endorsement that suggests that the policy provides coverage for loss caused by Water Damage during a hurricane. The same is true with respect to the hurricane deductible endorsements issued by Hanover (<u>see</u> App. at INS 32) and Unitrin (<u>see</u> App. at INS 191).[15]

     The amicus brief's assertion that <u>Tuepker</u> found an ambiguity in State Farm's policy because of a hurricane deductible endorsement (Amicus Br., at 22) misstates what the court held in <u>Tuepker</u>. The court stated only that the hurricane deductible endorsement indicated an intention to cover the portion of the damage that was caused by wind, rain and objects carried by wind. <u>Tuepker</u>, 2006 WL 1442489, at *4. The court held only that "to the extent State Farm contends that the hurricane itself, i.e., the hurricane, winds and rain, would constitute a weather condition that would <u>completely</u> relieve State Farm of liability for damage to insured property," State Farm's policy would be ambiguous. <u>Id.</u> (emphasis added). As addressed above, the

---

[15] <u>See</u> <u>Maine Drilling & Blasting, Inc. v. Insurance Co. of N. Am.</u>, 665 A.2d 671, 675 (Me. 1995) (holding that endorsement addressing a deductible "by its plain language does not extend coverage where coverage did not exist, but provides for a deductible where coverage does exist"); <u>cf. Shoreline Towers Condo. Owners Ass'n. v. Zurich Am. Ins. Co.</u>, 196 F. Supp. 2d 1210, 1216 (S.D. Ala. 2002) (holding that insured's "contention that the [windstorm] deductible should be applied to the loss caused by both covered and excluded causes of loss is contrary to plain language of the insurance contract and results in a tortured interpretation of the Policy"); <u>General Star Indem. v. W. Fla. Vill. Inn, Inc.</u>, 874 So. 2d 26, 33 (Fla. Dist. Ct. App. 2004) (similar).

Vanderbrook case involves only water damage from a broken levee.  Plaintiffs are not

contending that Defendants failed to pay for any portion of the damage to their homes

attributable exclusively to wind or wind-driven rain, and the ISO Insurers do not dispute that

their Policies provide coverage for such damage.  The holding of Tuepker in this respect is

entirely irrelevant to this case.

### 5. No Discovery is Necessary or Permissible Because the Water Damage Exclusion is Unambiguous

Both Plaintiffs and the amicus[16] remonstrate that they need to take discovery.  Discovery,

however, could not enable the plaintiffs to produce facts or documents which could be material

to the disposition of the instant motions, which involve a question of law concerning insurance

policy interpretation.  The Water Damage exclusion clearly and unambiguously applies to the

only loss that is alleged in the Petition -- water damage caused by the release of water from a

canal as a result of a broken levee wall.  (Petition, ¶ 3.)  Under Louisiana law, "[i]f the policy

wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract

must be enforced as written . . . ."  Edwards v. Daugherty, 883 So. 2d 932, 941 (La. 2004).

Where policy language is unambiguous, extrinsic evidence cannot be considered.  Bergeron v.

Pan Am Assur. Co., 731 So. 2d 1037, 1045 (La. App. 4 Cir. 1999) (stating that parol evidence

"may not be used to vary the unambiguous terms of the written insurance policy"); Lemoine v.

Ill. Nat'l Ins. Co., 868 So. 2d 304, 310 (La. App. 2 Cir. 2004) ("There being no ambiguity, it was

error for the trial court to admit parol evidence to vary the terms of the policy."); Crigler v.

Crigler, 671 So. 2d 1199, 1203-04 (La. App. 2 Cir. 1996) ("[W]here the words of a contract are

clear, explicit, and lead to no absurd consequences, the meaning and intent of the parties must be

---

[16] The sponsors of the amicus brief would not be entitled to take discovery in this case in any event.

sought within the four corners of the document and cannot be explained or contradicted by parol

or extrinsic evidence."); see also La. Civ. Code art. 1848.[17]

## CONCLUSION

For all of the foregoing reasons, in addition to those stated in Defendants' prior briefing

on this motion, Defendants' Rule 12 motions should be granted, and Plaintiffs' Petition should

be dismissed with prejudice.

Dated this 28th day of July, 2006.

Respectfully submitted,

Christopher W. Martin (pro hac vice)
Texas Bar 13057620
Federal ID 13515
Martin R. Sadler (pro hac vice)
Texas Bar 00788842
Federal ID 18230
MARTIN, DISIERE, JEFFERSON &
WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas 77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101

Attorneys for Hartford Insurance Company of
the Midwest (incorrectly named as Hartford
Insurance Company)

Ralph S. Hubbard III, T.A., La. Bar. # 7040
Joseph P. Guichet, La. Bar # 24441
Seth A. Schmeeckle, La. Bar # 27076
LUGENBUHL, WHEATON, PECK,
        RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:     (504) 568-1990
Facsimile:     (504) 310-9195

Attorneys for The Standard Fire Insurance
Company (incorrectly named as Travelers
Insurance Company and St. Paul Travelers
Insurance Company), Hartford Insurance
Company of the Midwest (incorrectly named
as Hartford Insurance Company) and Hanover
Insurance Company

---

[17] The Louisiana cases relied upon in the amicus brief in which extrinsic evidence was considered are cases in which a court found the policy language to be ambiguous.  See Doerr v. Mobil Oil Corp., 774 So. 2d 119, 125 (La. 2000) (concluding that policy language at issue was ambiguous); South Cent. Bell Tel. Co. v. Ka-Jon Food Stores, 644 So. 2d 357, 364 (La. 1994) (same result), vacated and remanded on other grounds after rehearing, 644 So. 2d 368 (La. 1994).

Paul E. B. Glad (pro hac vice)
Kevin P. Kamraczewski (pro hac vice)
Andrew R. Greene
SONNENSCHEIN NATH & ROSENTHAL
LLP
7800 Sears Tower
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Attorneys for Hanover Insurance Company

Stephen E. Goldman (pro hac vice)
Wystan M. Ackerman (pro hac vice)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone:    (860) 275-8255
Facsimile:    (860) 275-8299

Attorneys for The Standard Fire Insurance
Company (incorrectly named as Travelers
Insurance Company and St. Paul Travelers
Insurance Company)

Neil C. Abramson (21436)
Nora B. Bilbro (22955)
Curt L. Rome (29406)
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

Attorneys for Unitrin Preferred Insurance
Company, erroneously identified as Kemper
Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Consolidated Reply Memorandum

of Defendants The Standard Fire Insurance Company, Hartford Insurance Company of the

Midwest, Hanover Insurance Company and Unitrin Preferred Insurance Company in Further

Support of Their Rule 12 Motions has been served upon all known counsel of record by placing

same in the United States mail, postage prepaid and properly addressed, this 28th day of July,

2006.

19