

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO.  05-4182 "K"(2) |
| | * | JUDGE DUVAL |
| | * | MAG. WILKINSON |
| | * | |
| PERTAINS TO | * | |
| INSURANCE (2:05-cv-06323) Vanderbrook | * | |
| | * | |

### STATE FARM'S REPLY MEMORANDUM IN SUPPORT OF
### RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant State Farm Fire and Casualty Insurance Company ("State Farm") files

this Reply Memorandum in Support of its Rule 12(c) Motion, fully adopting the arguments set

forth in its original Memorandum in Support of Motion for Judgment on the Pleadings ("Original

Memorandum") and responding to the opposition memoranda filed by the *Vanderbrook* plaintiffs

and by the United Policy Holders and Chehardy Plaintiffs (hereinafter collectively referred to as

"amicus") in their Amicus Memo.  Neither memorandum presents any valid argument why

plaintiffs' case against State Farm should not be dismissed on the pleadings.  Plaintiffs and

amicus, not State Farm, urge this Court to adopt positions contrary to established case law, to

find ambiguity in the State Farm policy where none exists and to assign unprecedented and

unconventional meanings to clear policy provisions that exclude coverage for the losses plaintiffs allege they have incurred.

The State Farm policy plainly and unambiguously excludes coverage for damage caused by "flood" or "surface water." Taking plaintiffs' allegations as true for the purpose of this motion, the loss they seek to recover for is damage caused by water that "entered the streets of the City of New Orleans and homes of Petitioners" during Hurricane Katrina. (Pet., ¶ 3). Such damage falls squarely within the meaning of "flood," as defined in both common usage and by the courts. Moreover, State Farm's policy's anti-concurrent cause provision is enforceable and confirms the applicability of the Water Damage exclusion to preclude coverage for the damage alleged in plaintiffs' Complaint.

Further, plaintiffs and amicus entirely failed to address State Farm's arguments regarding the filed rate doctrine and the federal and state Constitutional issues implicated by plaintiffs' demand that this Court impose retroactive liability for flood losses that State Farm did not contract to insure and for which the plaintiffs did not pay premiums. Nor do the plaintiffs address the fact that the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001, et seq., preempts coverage of their claims. For all of these reasons and those set out below and in State Farm's Original Memorandum, the Court should enter judgment as a matter of law for State Farm on all claims against it.

**A.      Rule 12(c) Dismissal Is Appropriate In This Case Where Plaintiffs' Petition Sets Forth No Claim Entitling Them To Relief.**

The standards for dismissal under Rules 12(b)(6) and 12(c) for failure to state a claim upon which relief may be granted are substantively the same. *Great Plains Trust Co. v.*

820434v.3

*Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 n.8 (5th Cir. 2002) (quoting 5A

Wright & Miller, *Federal Practice and Procedure* § 1368 at 591 (1990)).  The "central issue is

whether, in the light most favorable to the plaintiff, the Complaint states a valid claim for relief."

*Brittan Comm. Int'l Corp. v. Southwestern Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002).  In

making this determination, a district court must accept the factual allegations in the complaint as

true.  *Russell v. Choicepoint Services, Inc.*, 302 F. Supp. 2d 654, 658 (E.D.La. 2004).  "However,

conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

to prevent a motion to dismiss." *Id.* (citing cases).

      The meaning of unambiguous terms of an insurance policy is determined by a

court as a matter of law, not as question of fact.  *See Harrison Associates Inc. v. Gulf States

United Co.*, 491 F.2d 578 (5th Cir. 1974).  Because the language of the State Farm policy is

unambiguous and the policy provides no coverage for the losses plaintiffs allege in their

Complaint, there are no factual issues to decide and State Farm is entitled to judgment as a

matter of law.

    **B.**    **On The Face Of The Pleadings, It Is Clear That Claims By Plaintiffs Other Than Silva And Harvey Should Be Dismissed As To State Farm.**

      As an initial matter, only plaintiffs Silva and Harvey allege that they are State

Farm insureds.  Plaintiffs' Opposition did not present any argument to rebut the argument that

plaintiffs who do not have a contract of insurance with State Farm have no standing to assert any

claims against State Farm.  Dismissal for lack of standing under Rule 12(b)(1) may be

determined on the face of the pleadings where (as here) "it is obvious on the face of the

complaint that plaintiff lacks standing to bring this claim." *Puissegur v. United State Postal*

*Serv.*, No. Civ.A. No. 95-0592, 1996 WL 185812 at *3 (E.D. La. Apr. 18, 1996). State Farm is entitled to a dismissal of all claims brought by plaintiffs other than Silva and Harvey.

**C.    The State Farm Insurance Policy Plainly Excludes The Type Of Property Damage Plaintiffs Allege They Have Sustained, Regardless Of Its Cause.**

Both plaintiffs and amicus argue that the Court should not enter judgment on the pleadings because the defendants have not established, as a matter of law, that there is no set of facts within the parameters of the pleadings under which plaintiffs might recover and that plaintiffs should be allowed an opportunity to conduct discovery. Both contend that the Water Damage exclusion in State Farm's policy is at least ambiguous and, therefore, that plaintiffs *should be allowed to conduct discovery regarding the exclusion's meaning or the exclusion* should be construed against State Farm and interpreted narrowly. They also argue that State Farm's Water Damage exclusion does not apply to the losses plaintiffs' property incurred. However, as established in State Farm's Original Memorandum, the meaning of its Water Damage exclusion is clear and unambiguous and omits coverage for all the damages alleged in the Complaint -- "water damage" caused by water entering "the streets of the City of New Orleans and the homes of Petitioners" caused when "a small section of the concrete outfall canal wall known as the 17th Street Canal, suddenly broke" during Hurricane Katrina. (Pet. ¶¶ 3, 7)

As discussed in State Farm's Original Memorandum, the terms of an insurance policy are to be given their ordinary meaning unless some special usage must be implied from the policy itself. Where the terms of the policy are clear and unambiguous, the provisions are enforced as written. Courts are not free to change or invalidate the unambiguous terms of an insurance policy. *See, e.g., Travelers Indemnity Co. v. Powell Ins. Co.*, 1996 WL 578030, *3

- 4 -

(E.D.La. Oct. 4, 1996).  Although courts apply a rule of strict construction to insurance contracts, that rule "does not authorize a perversion of language."  *Commercial Union Ins. Co. v. Advance Coating Co.*, 351 So. 2d 1183, 1185 (La. 1977).  In this case, the exclusionary language contains terms that, given their plain meaning, preclude the damage plaintiffs allege they have suffered.  The policy's lead-in anti-concurrent cause language further supports this conclusion.  Thus, State Farm is entitled to Judgment on the Pleadings.

1.     **The Plain And Unambiguous Language Of The Water Damage Exclusion Precludes Coverage For "Flood" And "Surface Water" Damage.**

As discussed in State Farm's Original Memorandum, Louisiana courts and courts in other jurisdictions have upheld the language of the Water Damage exclusion and precluded coverage for loss that would not have occurred in the absence of flood and surface water -- *regardless of the cause of the flood or surface water.*  *See* authorities cited in Exhibit C to State Farm's Motion for Judgment on the Pleadings, Cases Enforcing Water Damage Exclusion.[1]  In particular, every court considering the issue has held that where flooding or surface water results from a breach in a dam or dike and causes damage to property, such damage constitutes a "flood" within the ambit of similar exclusionary clauses.  *See, e.g., Kane v. Royal Ins. Co.*, 768 P.2d 678, 679-81 (Colo. 1989); *E.B. Metal & Rubber Industries, Inc. v. Federal Ins. Co.*, 444 N.Y.S.2d 321 (App. Div. 1981).  Neither plaintiffs nor amicus cite a single case holding otherwise.

Amicus argue that *Kane* does not apply because the *Kane* court relied on language in 44 C.F.R. § 61.4(b), which they assert no longer includes a definition of flood.  First of all,

---

[1]     *See also Dobson, et al. v. Allstate Insurance Co., et al.*, No. 06-252, U.S.D.C., E.D. La. (Vance) (July 21, 2006) (characterizing Water Damage exclusion in Allstate policy as "clearly worded").

merely deleting the definition of a term in a regulation certainly does not mean that the definition is inaccurate.[2]  Moreover, a reading of *Kane* reveals that amicus' contention regarding the court's reliance on the definition is in error.  To the contrary, the *Kane* court did not rely on 44 C.F.R. § 61.4(b) (1978), as its basis for concluding that inundation from a broken dam constituted a "flood" under an insurance policy exclusion.  Rather, the court cited that regulation to contradict the insureds' argument that the federal government, through the National Flood Insurance Program, recognized a natural/artificial distinction for the term "flood."  In fact, referring to a federal statute, also relied upon by plaintiffs, establishing immunity of the federal government from liability for "flood," which a minority of two courts had held to apply only to natural events, the *Kane* decision held that statutory language and interpretation have <u>no</u> <u>bearing</u> on the proper interpretation of exclusionary language in an insurance policy.  The *Kane* court noted:

> In *Valley Castle* and *Atkinson*, the courts relied on congressional intent in concluding that "flood" refers only to naturally caused floods.  In this case, however, we are not concerned with the meaning of the term 'flood' in a federal statute *where congressional intent is relevant.*  Here, we are concerned with the meaning of the term 'flood' in an insurance policy.  Therefore, even if Congress had intended to restrict 'flood' to natural events, that does not dictate the meaning of the term in the insurance policies at issue.

*Kane,* 768 P.2d at 682.

In this case, amicus also argue that the NFIP definition of "flood" does not include water released due to the rupture or failure of levee walls or the negligent acts of third parties.  Amicus Memo at p. 12.  However, both circumstances are included within the following elements of 44 CFR § 59.1, as cited by amicus:

---

[2]     The definition apparently stated that the term "flood" includes events that are not natural, and offered the breaking of a dam as an illustrative example of such a phenomenon.

820434v.3

> "(a) A general and temporary condition of partial or complete inundation of
> normally dry areas from: . . . (2) The unusual and rapid accumulation . . . of
> surface waters <u>from</u> <u>any</u> <u>source</u>."

(emphasis added)   Moreover, any suggestion that the NFIP definition of "flood" does not

encompass flooding resulting from levee breaches is belied by the fact that the FEMA-mandated

Standard Flood Insurance Policy uses essentially the same definition, see 44 CFR Pt. 61 App.

A(1), art. II.A, and plainly covers such flooding.   See, e.g., FEMA Bulletin W-05054, dated

September 21, 2005, at Attachment - A p. 1 (giving instructions, inter alia, for expedited

handling of flood insurance claims "for the area of flooding caused by the failure of levees in the

New Orleans area, resulting in flooding from Lake Pontchartrain") (available at

http://bsa.nfipstat.com/wyobull/w-05054.pdf).   (emphasis added)   There is no reason or

precedent supporting the premise underlying amicus' argument -- that every element in the chain

of causation must be specified in order for a particular inundation to be included within a broad

definition of flood.

      Although plaintiffs rely heavily on the case of Riche v. State Farm Fire and

Casualty Company, 356 So. 2d 101 (La. App. 1st Cir. 1978) to argue that State Farm's Water

Damage exclusion does not unambiguously exclude coverage here, that case in no way supports

plaintiffs' position.  The facts of Riche bear no similarity to those in this case.  In Riche, a fishing

boat on Toledo Bend Reservoir overturned during a windstorm causing the plaintiffs' fishing

equipment to sink.  The court held that coverage for the loss of the fishing equipment was not

excluded by the "flood" and "surface water" exclusion of the insurance policy covering the boat,

finding that "damage caused by a windstorm (or resulting waves) over a body of water, such as a

lake or a reservoir, does not come within the scope of this exclusion." (emphasis added).  The

820434v.3

*Riche* court noted that the language of the exclusion contemplated "water which has *risen over and covered areas not ordinarily covered by water." Id.* at 103-104 (emphasis added). That definition of flood is entirely consistent with the case law cited in State Farm's Original Memorandum. *See* State Farm's Original Memoranda at pp. 9-10. Thus, the flood exclusion did not preclude damage to the sunken fishing equipment because the loss was not caused by water that rose over and covered areas not ordinarily covered by water.

        The holding that damage caused by "a windstorm over a body of water" is not excluded by the flood exclusion has no application to plaintiffs' allegations in this case. Plaintiffs allege that the flooding that caused their losses occurred because water flowed through a break in the levee and inundated their homes; they do not allege that damage was suffered "over a body of water." Moreover, their allegations clearly establish that the damage occurred because water "rose over and covered areas not ordinarily covered by water". The type of "flood" and "surface water" damage alleged in plaintiffs' Complaint has been held to be excluded by the State Farm policy, regardless of its cause. This Court should "not strain to find ambiguity in the policy where none exists." *See, e.g., Travelers Indemnity Co. v. Powell Ins. Co.*, 1996 WL 578030, *3 (E.D.La. Oct. 4, 1996). Accordingly, State Farm is entitled to judgment on the pleadings.

        Plaintiffs and amicus also argue that loss from inundation resulting from water flowing through a broken levee wall is not excluded by the Water Damage exclusion because broken levees are not specifically mentioned in the exclusion. Amicus further contend that State Farm should have defined "flood" in the policy to specifically include "the breaking of levees or

- 8 -

to include water released due to negligent maintenance and design or construction of such structures." Amicus Memo at p. 8. However, the failure to define a term in an insurance policy does not render the term ambiguous. *Bay Cities Paving & Grading, Inc. v. Lawyers Mut. Ins. Co.*, 855 P.2d 1263 (Cal. 1993). As noted recently by Judge Senter in *Buente v. Allstate*, 2006 WL 980784, *1, the Water Damage policy exclusions "are drawn quite broadly, and they have the clear purpose of excluding damage caused by inundation from coverage." By its own terms, the applicability of the exclusion is based solely on the presence of the circumstance that causes the loss -- flood (water covering areas not ordinarily covered by water) or *surface water* -- regardless of what might have caused that circumstance. There is no reason why a flood caused by an accumulation of rain -- a situation amicus admit is excluded -- should be within the exclusion while one resulting from water flowing through a breach in a levee wall should not. Nor is there a basis for arguing that insurance companies must imagine every potential scenario that could result in a flood or accumulation of surface water and itemize them in their policies. Such prognostication is not only unreasonable but, in fact, impossible.

Plaintiffs further assert that the Court in *Buente v. Allstate Property and Casualty Ins. Co.*, 422 F. Supp. 690 (S.D. Miss. 2006) "denied an analogous Rule 12 motion and found the exclusionary language ambiguous." In fact, however, Judge Senter did not hold flood exclusions ambiguous, but found that they "are valid and enforceable policy provisions." 422 F. Supp. at 696. "Indeed," he further stated, "similar policy terms have been enforced with respect to damage caused by high water associated with hurricanes in many reported decisions." *Id.* As with inundation caused by water flowing through a levee wall breach, inundation from "storm

820434v.3

surge" was not explicitly excluded from coverage under Allstate's Water Damage exclusion. Still, *Buente* held such inundation to constitute an excluded flood. *Id.*

Likewise, contrary to plaintiffs' assertion, the Rule 12 Motion denied in *Buente* is not analogous to the one pending here.  Unlike the *Vanderbrook* complaint here which seeks recovery <u>only</u> for losses allegedly suffered from inundation caused by water flowing through levee wall breaches, the complaint in *Buente* alleged that the damage to their property was caused by "hurricane wind, rain and/or storm surge from Hurricane Katrina."  422 F. Supp. at 695.  Thus, there was a factual dispute between the parties regarding the allocation of the damages caused by covered perils -- wind and rain -- and those caused by an excluded peril -- flood.  In addition the *Buente* plaintiffs had alleged that Allstate and its agent misrepresented to them that storm surge was covered under their policy, which Allstate denied.  This posed additional contested issues of fact.  No similar allegations are made here which would prevent rendition of judgment on the pleadings.[3]

Amicus further advance the position that State Farm's "Hurricane Deductible Endorsement" included in some of its policies is inconsistent with those policies' Water Damage exclusion, and thereby renders the exclusion ambiguous and unenforceable.  *See* Amicus Memo at pp. 18-23.  Amicus' argument is illogical and has no merit.  The reasoning upon which amicus premise their claim of ambiguity is that because the policy has a "Hurricane Deductible,"

---

[3]     The *Buente* decision found ambiguous Allstate's "Weather Condition" exclusion and its 'predominant cause" provision, but only to the extent they were sought to be applied to eliminate all liability for the separate damage caused by the <u>covered</u> perils of wind and rain that accompanied the excluded storm surge during a hurricane when the same policy contained a Hurricane Deductible Endorsement. 422 F. Supp. at 696-697.  Again, this ruling is irrelevant to the issues here.

820434v.3

"policyholders had a reasonable expectation and belief that <u>any</u> <u>and</u> <u>all</u> losses and damages caused by a hurricane would be covered under the policy. . . ." Amicus Memo at p. 21 (emphasis added). This argument improperly attempts to transform a deductible into a provision that establishes coverage and simply makes no sense. One looks to the coverages and exclusion provisions to determine whether a loss is covered by an insurance policy. If the loss is not covered, the deductible is immaterial. If the loss is covered, however, then one looks to the deductible to determine what portion of the covered loss must first be borne by the insured before insurance payments begin. The deductible does not create or convey coverage.

Moreover, there is no reason why insureds should assume that because their policies call for application of a special deductible to hurricane losses, <u>all</u> hurricane losses therefore must be covered under the policy. To the contrary, because the policies expressly exclude coverage for losses caused by "flood" and "surface water," the "reasonable expectation" is that the deductible applies to recovery of losses caused by a hurricane that <u>are</u> covered under the policy. *See Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316, 318-19 (Tex. 1965) (rejecting plaintiff's argument that because of "the use of the word 'hurricane'" policy should be construed to cover all losses caused by Hurricane Carla, including losses caused in whole or in part by water; holding that only damage caused by wind alone was covered). Moreover, this expectation is confirmed by the terms of the Hurricane Deductible Endorsement itself, quoted in the Amicus Memo at p. 21, which specify the perils to which *the deductible applies* – all of which are covered perils:

> The Hurricane Deductible percentage (%) shown in the Declarations applies only for physical loss or damage to covered property caused by wind, wind gusts, hail,

- 11 -

rain, tornadoes, or cyclones caused by or *resulting from a hurricane as defined above*.

Nowhere in the endorsement is there any suggestion that otherwise excluded perils that happen to be caused by a hurricane are covered by the policy.

Finally, the suggestion in the Amicus Memo that the Court in *Tuepker v. State Farm Fire & Cas. Co.*, 2006 WL 144289 (S.D. Miss. May 24, 2006) held that the Hurricane Deductible Endorsement renders the Water Damage exclusion ambiguous and unenforceable is incorrect. To the contrary, Judge Senter, who decided *Tuepker* as well as *Buente*, specifically held that the State Farm Water Damage exclusion is unambiguous and enforceable, and precludes coverage for inundation that occurs during a hurricane, just as he held with respect to the Allstate exclusion in *Buente*.

Amicus' contention that the Gulf States have adopted the "principle" that flooding caused by hurricane damage is a covered peril is simply incorrect. *See* discussion and cases cited in *Buente*, 422 F. Supp. at 696.[4] Moreover, the suggestion that defendants are asking the court to interpret their policies in a "novel and completely unsupported manner" (Amicus Memo at p. 4) is clearly wrong. It is plaintiffs' and amicus' proposed interpretations that have no precedent.

---

[4]   Citing *Fireman's Fund Insurance Co. v. Schulte*, 200 So. 2d 240 (Miss. 1967); *Lunday v. Lititz Mutual Insurance Co.*, 276 So.2d 696 (Miss. 1973); *Lititz Mutual Insurance Co. v. Buckley*, 261 So. 2d 492 (Miss. 1972); *Home Insurance Co. v. Sherrill*, 174 F.2d 945 (5th Cir. 1949); *Grace v. Lititz Mutual Insurance Co.*, 257 So. 2d 217(Miss 1972); *Commercial Union Ins. Co. v. Byrne*, 248 So. 2d 777 (Miss. 1971); *Lititz Mutual Insurance Co. v. Boatner*, 254 So. 2d 765 (Miss. 1971).

820434v.3

2.    **Amicus' Extraneous Argument That The "Flood" And "Surface Water" Exclusion Does Not Apply Because Loss Was Caused By Third Party Negligence Has No Merit.**

Amicus departs radically from plaintiffs' position by arguing as an additional basis why State Farm's Water Damage exclusion does not apply here is that the 17th Street Canal breach was caused by the negligent acts of third parties. *See* Amicus Memo at pp. 8-12. As with their argument for coverage for an inundation caused by a levee breach, amicus reasons that because the Water Damage exclusion does not specifically mention loss from flooding or surface water caused by third-party negligence, such loss is not omitted from coverage.

First, as with levee breach generally, the failure of the Water Damage exclusion to specifically mention negligence as a precipitating cause does not alter the effectiveness of the exclusion in omitting coverage for loss due to flood or surface water, whatever the origin or cause of the flood or surface water. Moreover, if there were any doubt regarding the issue, it is eliminated by State Farm's policy's explicit "acts and omission" exclusion which provides that losses due to flood or surface water are excluded from coverage even if third-party negligence plays a role in causing the loss. State Farm's policy states:

3.    *  *  *. Further, we do not insure for loss described in paragraph[] . . . 2. immediately above [including loss from "flood" and "surface water"] regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a.    conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b.    defect, weakness, inadequacy, fault or unsoundness in:

(1)    planning, zoning, development, surveying, siting;

(2)    design, specifications, workmanship, construction, grading, compaction;

- 13 -

(3)     materials used in construction or repair;  or

(4)     maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises;** * * *[5]

In *Morgan v. Auto Club Family Insurance Co.*, 899 So. 2d 135 (La. App. 3 Cir. 2005), the Louisiana Third Circuit Court of Appeal addressed the enforceability of an "acts or omissions" exclusion in another insurer's policy in the context of an insured's attempt to recover for mold damage in her attic, allegedly resulting from inadequate ventilation following improper installation of a metal roof.  Plaintiff's homeowners policy specifically excluded loss resulting from "mold" and from "[f]aulty, inadequate or defective: . . . (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; . . . Of part or all of any property whether on or off the residence premises." *Id.* at 136-37. The latter exclusion was subject to the proviso that "any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered."  *Id.* at 137.  The court affirmed summary judgment for the insurer, stating:

> In the present case, loss of property caused by mold is specifically excluded from coverage under the policy even though the mold damage may have resulted from lack of ventilation in the attic.

*Id.* at 137.  *See also Alton Ochsner Medical Fdn. v. Allendale Mut. Ins. Co.*, 219 F.3d 501 (5th Cir. 2000) (applying Louisiana law) (faulty workmanship exclusion).  *The same analysis applies* here: Because the damage to Plaintiffs' property caused by flooding is specifically excluded from

---

[5]     *See* note 4 at p. 5 of State Farm's Original Memo.

- 14 -

coverage, there is no coverage for the damage even if the flooding may have resulted from defects in the design, construction, or maintenance of the levees.[6]

Even where policies do not have language that specifically excludes negligent conduct, courts routinely have held that water damage/flood exclusions similar to State Farm's unambiguously exclude loss caused in part by flood, regardless of the alleged effect of negligence on the insured's loss. In *E.B. Metal & Rubber Industries, Inc., supra,* for example, the insureds brought suit to recover damages sustained when a dike gave way, inundating their property with water. The insureds argued that the damage was caused by improper construction and maintenance of the dike and was therefore covered. The insurers contended that the loss was unambiguously excluded by the policy's flood exclusion, which applied to "waves, tidal water or tidal wave, rising (including overflowing or breaking of boundaries) of lakes, reservoirs, rivers, streams or other bodies of water, whether driven by wind or not." *Id.* at 322. The court held that the carriers had properly denied coverage; in light of the clear and unambiguous terms of the flood exclusion, it was "irrelevant that a defect in the dike may have also contributed to the break." *Id.*[7]

---

[6]   Other courts have specifically upheld the application of State Farm's acts or omissions exclusion in a variety of factual settings. *See, e.g., Rhoden v. State Farm Fire & Cas. Co.,* 32 F. Supp. 2d 907, 914 (S.D. Miss. 1998) (granting summary judgment for State Farm with respect to claim for damage caused by earth movement underneath insureds' home as a result, in part, of design and construction defects: "The [acts or omissions] exclusion specifically states that the policy does insure for loss resulting from defective construction unless the resulting loss is a loss not insured by that section. . . . [T]he loss resulting from the allegedly defective construction work is not covered under the policy.")

[7]   *See also, Bartlett v. Continental Divide Ins. Co.,* 697 P.2d 412, 413 (Colo. Ct. App. 1984) (affirming partial summary judgment for insurer that denied coverage for damage caused by water and debris released as result of dam failure: "The insurance policy excludes coverage for 'all direct loss by flood or overflow,' and

820434v.3

Amicus argue that the question of whether the levee breaches were caused by negligence is a disputed issue of fact. *Regardless of whether that issue might be relevant in a lawsuit against the persons who built or maintained the levee*, it is not a <u>material</u> issue of fact in the context of this insurance coverage dispute. Because there is no coverage for negligent acts, there is no need to litigate the issue against State Farm.

Interestingly, the *Vanderbrook* plaintiffs expressly disavow amicus' theory regarding third-party negligence. Indeed, plaintiffs deny that they contend that negligence caused the breach in the canal wall or that loss from such negligence is covered under the State Farm policy, and implicitly admit that coverage for negligent acts is excluded:

> Plaintiffs have not pleaded any specific design or construction flaws caused the failure. In fact, the specific cause of failure of the wall is not alleged in the petition. This is one of several reasons why *the plaintiffs have pleaded that the insurers were arbitrary and capricious in denying their claims*, because at the time of the denial of their claims, <u>the insurers had no evidence or facts to show that the cause of the wall failure was excluded under the policy</u>.

Plaintiffs' Memo at p. 4 (emphasis added)  *Amicus should not be permitted to restructure plaintiffs' case by urging theories plaintiffs have neither pleaded nor agree with.*[8]

### 3. The Policy's Anti-Concurrent Cause Provision Is Not Ambiguous And Reinforces Non-Coverage Here.

Amicus argue that State Farm's non-concurrent cause language leading into its Water Damage exclusion is ambiguous. However, both Louisiana courts and courts in other

---

contains no provision for coverage of flood losses that result from the negligence of a third party."), *aff'd*, 730 P.2d 308 (Colo. 1986).

[8]  It is difficult to tell whether amicus are unaware of what this case is about or whether they choose to pursue their own agenda regardless of plaintiffs' interests or wishes. However, *they do appear to be under the mistaken impression that this is a putative class action*. *See* Amicus Memo at pp. 5, 14.

820434v.3

jurisdictions have rejected this argument. *See, e.g., Sweeney v. City of Shreveport*, 584 So. 2d 1248 (La. App. 2d Cir. 1991) (on summary judgment, dismissing plaintiffs' claims that lead in language was ambiguous); *Prytania Park Hotel v. General Star Indemnity Co.*, 896 F. Supp. 618 (E.D.La. 1995); *see also* authorities cited in Exhibit D to State Farm's Motion for Judgment on the Pleadings. Thus, regardless of the cause of the "flood" or "surface water," the resulting damage to the Plaintiffs' homes caused by such damage is excluded by the plain, unambiguous language of the policy. *See Prytania Park* Hotel, 896 F. Supp. at 623-24.

Amicus attempt to confuse the issue by arguing that *Tuepker v. State Farm Fire & Casualty Co., supra*, held that State Farm's anti-concurrent cause language is ambiguous. However, the context in which *Tuepker* held a portion of the anti-concurrent cause provision ambiguous is very different from the one presented here. As discussed above, in *Tuepker*, Judge Senter first held that State Farm's Water Damage exclusion is valid and enforceable and does not provide coverage for damages caused by high water or inundation accompanying a hurricane, exactly as he held with respect to the Allstate Water Damage exclusion in *Buente*. Moreover, the *Tuepker* court's holding with respect to the anti-concurrent cause provision of State Farm's policy only addressed a portion of the clause that the Judge thought could arguably be read to exclude any liability whatsoever on State Farm's part for any loss when an excluded peril occurs at the time of or subsequent to an otherwise covered loss.[9] *Tuepker* held that a policy that included a

---

[9]     The relevant portion of the anti-concurrent cause clause considered in *Tuepker* is:

> We do not insure for loss which would not have occurred in the absence of [flood]. We do not insure for such loss regardless of: . . . (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss. . . .

820434v.3

Hurricane Deductible Endorsement obviously contemplated coverage of <u>some</u> loss during a hurricane, *i.e. wind damage; thus, to the extent that the anti-concurrent cause provision might be read to exclude liability for <u>any</u> loss from the covered peril of wind when it was accompanied by the excluded peril of flood during a hurricane, the provision was ambiguous.*[10]  *This is not an issue presented by this case.*[11]  Plaintiffs here do not seek to recover, and State Farm *does not* seek to exclude liability, for damage caused by a hurricane's wind to a covered property but only for damage caused by flood, regardless of what caused the flood.  Indeed, plaintiffs' pleadings here do not seek to recover for any damage except that caused by flood.[12]

The Amicus Memo also cites the case of *Grace v. Lititz Mutual Ins. Co.*, 257 So. 2d 217 (Miss. 1972) for the proposition that hurricane damage causation is "a fact-intensive determination that is not proper for disposition on a motion for judgment on the pleadings."  Amicus Memo at p. 16.  However, again, the facts and issues involved in *Grace* are totally inapposite to those in this case.  *Grace* involved allegedly concurrent wind and storm surge damage to a building that was completely destroyed.  The insurer in *Grace* failed to offer proof of whether and to what extent the damage was caused by wind, a covered peril, or flooding, an excluded peril.  The jury simply found, as a matter of fact, that wind rather than flood was the cause of the loss.  Here, however, taking plaintiffs' allegations as true, the loss for which they

---

[10]  State Farm has filed a Motion to Alter or Amend the Court's *Memorandum Opinion and Order* which is currently pending.  In the Memorandum in support of the Motion, State Farm makes clear that it does not contend that the anti-concurrent cause provision excludes coverage for separate, independent, discrete wind damage that is incurred before or concurrently with other damage caused by flood.

[11]  The most pertinent portion of the anti-concurrent cause provision applicable to the facts alleged here excludes coverage for loss caused by flood regardless of "(a) the cause of the excluded event [the flood]."

[12]  State Farm has already paid both plaintiffs for wind damage to their homes.

- 18 -

seek to recover was caused when "a small section of the concrete outfall canal wall known as the 17th Street Canal, suddenly broke, causing water to enter into the streets of the City of New Orleans and the homes of Petitioners. . . ."  (Pet., ¶ 3).  There is no need to determine whether or to what degree the damage suffered was caused by inundation as opposed to wind: all loss for which these plaintiffs seek to recover is alleged to have been caused by inundation.  Thus, in this case, the Court's decision rests upon whether, as a matter of law, the alleged damage is excluded by the State Farm homeowner policy.  As established herein and in State Farm's Original Memorandum, the courts have already answered that question in the affirmative.

**4.     The "Efficient Proximate Cause" Doctrine Does Not Affect The Operation Of State Farm's Water Damage Exclusion.**

Amicus again strike out on their own by invoking the "efficient proximate cause" doctrine unmentioned by plaintiffs, which they argue prevents State Farm's flood exclusion and its anti-concurrent cause "lead-in" provision from being enforceable.  Amicus appear to contend that the breach in the levee wall and (despite plaintiffs' disavowal of the theory) third-party negligence are the "efficient proximate causes" of the plaintiffs' alleged losses, rather than "flood" or "surface water" and therefore that those losses are covered by State Farm's policy.

First, even if the "efficient proximate cause" analysis were applicable here, it would not call for finding that any covered peril, rather than "flood" or "surface" water, is the "efficient proximate cause" of plaintiffs' alleged losses.  As discussed above, third-party negligence is an excluded, not a covered, peril when it results in Water Damage.  As to the breach in the levee wall, the "efficient proximate cause" cases cited by amicus do not support the notion that such breach, rather than the direct cause of the loss – flood and surface water –

should be considered the "efficient proximate cause" of the loss.  *See, e.g., Roach-Strayhan-Holland Post No. 20, Amer. Leg. Club, Inc. v. Continental Ins. Co.*, 112 So. 680 (La. 1959) (windstorm rather than improper construction was "efficient proximate cause" of collapse of building); *Lorio v. Aetna Ins. Co.*, 232 So. 2d 490 (La. 1970) (windstorm was not "efficient proximate cause" of death of a horse where wind damaged barn, permitting horse to reach the feed stall and to die from overeating).

More basically, however, to the extent the "efficient proximate cause" theory is still viable as it applies to Louisiana insurance law,[13] it is not applicable here because the State Farm policy provisions negate its operation.  The Court will note the vintage of the cases applying this doctrine cited by amicus – 1917, 1952, 1959, 1961, 1970.  In none of those cases did the insurance policy at issue contain a provision like the "anti-concurrent cause" lead-in found in State Farm's policy expressly excluding coverage for a loss that would not have occurred in the absence of an excluded peril, regardless of other contributing causes <u>and regardless of what caused the excluded peril</u>.  *See* Amicus Memo at p. 15.  Contemporary cases generally do not apply the efficient proximate cause doctrine because insurance policies now usually contain anti-concurrent cause clauses.

---

[13]   Because Louisiana courts have abandoned the concept of "efficient proximate cause" as the means for analyzing legal cause in tort cases, it seems unlikely that they would continue to apply that concept to determine whether there is coverage in the absence of controlling policy language when a loss has been caused by both covered and non-covered perils.  *See Roberts v. Benoit*, 605 So. 2d 1032 (1991), for a discussion of the development of legal cause in Louisiana following the decision in *Dixie Drive It Yourself System v. American Beverage Co.*, 137 So. 2d 298 (1962).

820434v.3

The Court in *Roach-Strayhan-Holland* specifically recognized that the "efficient proximate cause" concept only applies when a policy undertaking to pay for loss caused by a covered peril is "not otherwise limited or defined. . . ." 112 So. 2d at 683. *Courts in jurisdictions which have adopted the concept have repeatedly held that it is simply a method of interpretation that is to be used only in the absence of controlling policy language. See, e.g., Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1277 (Utah 1993) (noting that "the proper path to follow is to recognize the efficient proximate cause rule only when the parties have not chosen freely to contract out of it"). Where, as here, the exclusionary language "unambiguously excludes coverage for any loss caused in any way by" an excluded peril, such as flood or surface water, the analysis simply does not apply. *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 314 (Ala. 1999) ("[T]he rule of efficient proximate causation . . . does not require us to invalidate the earth-movement exclusion, which indicates State Farm's efforts *to contract for narrower coverage*."); *see also Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1130 (D.C. 2001) ("'The efficient proximate cause doctrine is a default rule which gives way to the language of the contract.' [Citation omitted.] The State Farm policy unambiguously dictates that proximate causation rules are not to be followed. . . ."); *accord Toumayan v. State Farm Gen. Ins. Co.*, 970 S.W.2d 822 (Mo. App. 1998).

The anti-concurrent cause lead-in provision of State Farm's policy negates the efficient proximate cause doctrine and confirms that the policy exclusions apply regardless of the presence of other events in the causal chain. It does this by specifically stating that if one of the perils prefaced by the lead-in language (here, flood and surface water) *is a cause of loss, there is*

820434v.3

no coverage, regardless of the operation of other perils – covered or not – in the causal chain. *See Preferred Mut. Ins. Co. v. Meggison*, 53 F. Supp. 2d 139, 142 (D. Mass. 1999) (noting that similar lead-in provision precludes application of the efficient proximate cause analysis "by expressly stating that a loss is excluded from coverage if it results from a combination of covered and excluded perils").[14]

Amicus argues that the anti-concurrent cause provision "is in complete derogation of the 'efficient proximate cause' doctrine." Amicus Memo at p. 13. This is precisely the point. By agreeing to the lead-in language, the parties to the insurance contract have opted out of what is arguably the default rule. There is nothing in the "doctrine" that prohibits such an opt-out. Thus, the "efficient proximate cause" doctrine is no impediment to granting State Farm's Rule 12(c) Motion.

D. **Plaintiffs' Presented No Argument To Rebut State Farm's Arguments Regarding The Filed Rate Doctrine, Constitutional Issues And The NFIA.**

State Farm adopts and reasserts all of the arguments presented to this Court in pages 16-25 of its Original Memorandum. Plaintiffs have utterly failed to address the vital state and national implications of reading the State Farm Water Damage exclusion out of the policy and imposing liability on State Farm for damages that the company did not contract to insure and for which plaintiffs' did not pay premiums. The plaintiffs have not addressed State Farm's argument that their claims for declaratory relief and mandamus contravene public policy and are

---

[14]      Such provisions were first added to property insurance policies by State Farm and other carriers in the mid-1980's in response to a few judicial decisions that found coverage for damages caused by a combination of covered and excluded perils. *Id.*; *see generally* M. Bragg, *Concurrent Causation and the Art of Policy Drafting: New Perils for Property Insurers*, 20 Forum 385, 392-94 (1985).

820434v.3

preempted by the NFIA.  For these additional reasons, the State Farm's Motion for Judgment on the Pleadings should be granted and the plaintiffs' claims dismissed.

**E.     Conclusion.**

For all of the reasons discussed above as well as in its original Motion for Judgment on the Pleadings and Memorandum in Support, State Farm submits that each claim stated against State Farm in plaintiffs' Complaint, fails as a matter of law and must be dismissed under Fed. R. Civ. P. 12(c).

Dated this **2 $\ell$** day of July, 2006.

Wayne J. Lee, 7916
Stephen G. Bullock, 3648
Lesli D. Harris, 28070
Sarah H. Barcellona, 28080
     Of
STONE PIGMAN WALTHER
   WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

Attorneys for State Farm Fire and
Casualty Company

820434v.3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing State Farm's Reply Memorandum in Support of Rule 12(c) Motion for Judgment on the Pleadings has been served upon each counsel of record, via electronic mail and by United States mail, postage pre-paid and properly addressed, on July 28, 2006.

- 24 -

820434v.3