**From:**      "Ashton O'Dwyer" <arod@odwyerlaw.com>
**To:**        "'Michael Riess'" <mriess@kingsmillriess.com>, <jbruno@brunobrunolaw.com>, <tbrennan@dkslaw.com>, <hlambert@lambertandnelson.com>, <rhubbard@lawla.com>, <wtreeby@stonepigman.com>, <Robin.Doyle.Smith@usdoj.gov>, <Tess.finnegan@usdoj.gov>, <Traci.colquette@usdoj.gov>
**Date:**      Fri, Aug 4, 2006  9:56 AM
**Subject:**   RE: I-Wall Sheet Piles and Notification of Work Scheduled forAugust 2, 2006

Michael: Just out of curiosity, is the Corps of Engineers going to hold Boh Bros. and its liability underwriters harmless for this needless and wanton destruction of evidence?

Law Offices of
Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
AROD@O'Dwyerlaw.com

-----Original Message-----
From: Michael Riess [mailto:mriess@kingsmillriess.com]
Sent: Wednesday, August 02, 2006 9:10 AM
To: jbruno@brunobrunolaw.com; tbrennan@dkslaw.com; hlambert@lambertandnelson.com; rhubbard@lawla.com; arod@odwyerlaw.com; wtreeby@stonepigman.com; Robin.Doyle.Smith@usdoj.gov; Tess.finnegan@usdoj.gov; Traci.colquette@usdoj.gov
Cc: alexis@lambertandnelson.com
Subject: I-Wall Sheet Piles and Notification of Work Scheduled forAugust 2, 2006

Dear Counsel:

Further to my e-mail of yesterday, in addition to Boh Bros. demolishing concrete monolith H-24, as directed by the Corps, and as informed to all counsel yesterday, Boh Bros. will also pull the sheeting connected to monolith H-24 after the demolition work is completed today.  As per my e-mail of yesterday, all sheeting will be marked, measured and preserved for storage by the Corps of Engineers, and as directed by the Department of Justice.

All of this work will commence at 1:00 p.m. today, weather permitting. Please check in at the front gate if you desire to inspect and observe this work today with Tom Sherburne of Boh Bros.

Michael R. C. Riess
Kingsmill Riess, L.L.C.
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170-3300
Telephone:  (504) 581-3300



Facsimile:  (504) 581-3310

CONFIDENTIALITY NOTICE:

This e-mail may contain confidential information which is legally
privileged.  The information is intended only for the use of the intended
recipient. If you received this e-mail in error, please immediately notify
us by return e-mail or telephone.  You are hereby notified that any
disclosure, copying, distribution, or the taking of any action in reliance
on the contents of this email or any information contained therein is
strictly prohibited.

**CC:**          <alexis@lambertandnelson.com>

**From:**   "Ashton O'Dwyer" <arod@odwyerlaw.com>
**To:**   "'Michael Riess'" <mriess@kingsmillriess.com>
**Date:**   Tue, Aug 1, 2006  4:34 PM
**Subject:**   RE: I-WALL SHEET PILES and Notification of Work Scheduled for August 2, 2006

Michael:

　　　　Thank you for responding to my inquiries about precisely what was
done at the 17th Street Canal site this morning, and where the 19 pieces of
sheeting can be inspected, particularly the edge(s) of the end pile(s).

　　　　Judge Duval's Order and Reasons of July 19th are before the Fifth
Circuit.  My Mother taught me to read before I even started kindergarten.

　　　　Do what you think you need to do;  I will do likewise.

　　　　Glad to know that you condone 12-year old girls giving birth to
illegitimate children, and that you sanction killing, looting, drug use and
possession of illegal firearms, as well as disrespect towards women.


Ashton R. O'Dwyer, Jr.
Law Offices of Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
AROD@odwyerlaw.com

-----Original Message-----
From: Michael Riess [mailto:mriess@kingsmillriess.com]
Sent: Tuesday, August 01, 2006 3:12 PM
To: jbruno@brunobrunolaw.com; tbrennan@dkslaw.com;
hlambert@lambertandnelson.com; rhubbard@lawla.com; arod@odwyerlaw.com;
wtreeby@stonepigman.com; Robin.Doyle.Smith@usdoj.gov;
Tess.finnegan@usdoj.gov; Traci.colquette@usdoj.gov
Cc: nometal@bellsouth.net; alexis@lambertandnelson.com
Subject: RE: I-WALL SHEET PILES and Notification of Work Scheduled for August
2, 2006


Dear Mr. O'Dwyer:

I will let Judges Duval and Wilkinson determine what is and what is not
"acceptable" -- not you.  Perhaps, you failed to read the "Order and
Reasons", Document No. 788, which constitutes the 36 page Judgment rendered
by Judge Duval on July 19, 2006, in this case.  Specifically, it is quite
clear that you failed to read (much less adhere to) footnote 7 found on page
5 of Document No. 788, which is restated for your easy reference:

"It will be noted that the initial complaint contains an inordinate amount
of irrelevant rhetoric which has no place in any legal pleading.  Counsel
for plaintiffs [Ashton O'Dwyer] is on notice that any further diatribes such
as:  'plaintiffs long for the days in the City of New Orleans and in the

State of Louisiana when certain behavior was simply UNACCEPTABLE TO POLITE, RESPECTUFL, LAW-ABIDING CITIZENRY. Plaintiffs long for the days when the citizenry, black and white, would not tolerate idleness, drug use or crime-a land in which children knew their father's last name, because he lived in a house which he had acquired through his own industry'* will not be tolerated and may subject him [Ashton O'Dwyer] to sanctions."

See Document No. 788, page 5, footnote 7.

Apparently, no admonishment will cease and desist you from your constant badgering and self-serving "diatribes". Further, let me correct some gross misstatements that you have made in your e-mail below. No physical evidence was destroyed relating to any work performed by Boh Bros. on the failed I-Walls this morning. Rather, so that we are clear, you, representatives of IPET and other authorized representatives of the plaintiffs' liaison committee, along with a photographer and experts, were on the site for the removal of the water stop from monolith H-23 and were informed of the concrete removal two days later. Monolith H-23 was broken and hauled away on May 5, 2006. You and all other counsel were given this information and access to the site at that time.

So that we can be even clearer, Boh Bros., as directed by the Corps of Engineers this morning, pulled 19 pieces of sheeting from what was monolith H-23. As stated above, the monolith H-23 concrete was broken and hauled away on May 5, 2006, after you and other authorized representatives had had an opportunity to inspect same, including removal of the water stop from the H-23 monolith. The 19 pieces of sheeting that were removed this morning were measured, documented and preserved, as per the express directives of the Corps of Engineers and as further directed by the Department of Justice. These 19 pieces of sheeting will be transported by the Corps of Engineers storage area, as has been directed by the Department of Justice. Please contact the attorneys for the Department of Justice if you have any desire to inspect or photograph the 19 pieces of sheeting, all of which measured more than 23? 3' in length.

Given the Court's admonishment contained in its Order and Reasons of July 19, 2006, I am now to the point where I will start sending your self-serving diatribes directly to the Court and ask the Court to sanction you. I will then let the Court decide what is and what is not "acceptable". I certainly know, as a matter of professionalism, that your conduct and your self-serving diatribes are not acceptable to me; however, I will let the Court decide your fate on these issues.

On a final note, Tom Sherburne of Boh Bros. has just called me and informed me that the Corps has just instructed Boh Bros. to commence the demolition of monolith H-24 starting at 1:00 p.m. tomorrow, August 2, 2006. In accordance with the work protocol that has been agreed to by and between all counsel and submitted to the Court, we are notifying you of this work activity. Please contact the Corps' attorneys by no later than 5:00 p.m. this afternoon if you or any other counsel would like to be in attendance for this work that is scheduled tomorrow at 1:00 p.m.

Best regards.

Michael R. C. Riess
Kingsmill Riess, L.L.C.
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170-3300
Telephone: (504) 581-3300
Facsimile: (504) 581-3310

CONFIDENTIALITY NOTICE:

This e-mail may contain confidential information which is legally
privileged. The information is intended only for the use of the intended
recipient. If you received this e-mail in error, please immediately notify
us by return e-mail or telephone. You are hereby notified that any
disclosure, copying, distribution, or the taking of any action in reliance
on the contents of this email or any information contained therein is
strictly prohibited.

>>> "Ashton O'Dwyer" <arod@odwyerlaw.com> 08/01/06 10:55 AM >>>
Mr. Reiss: This is not acceptable. If your client, and their underwriters,
believe they can hide behind the COE, then think again. And you had better
put your E&O carrier on notice. If any physical evidence is destroyed
tomorrow, before my clients and I have the opportunity to have our experts
inspect it beforehand, then you and your client will do so at your/their
peril.

Law Offices of
Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
AROD@O'Dwyerlaw.com

-----Original Message-----
From: Lesley Barre [mailto:lbarre@kingsmillriess.com]
Sent: Monday, July 31, 2006 5:29 PM
To: jbruno@brunobrunolaw.com; tbrennan@dkslaw.com;
hlambert@lambertandnelson.com; rhubbard@lawla.com; arod@odwyerlaw.com;
wtreeby@stonepigman.com; Robin.Doyle.Smith@usdoj.gov;
Tess.finnegan@usdoj.gov; Traci.colquette@usdoj.gov
Cc: tsherburne@bohbros.com; Michael Riess
Subject: Fwd: I-WALL SHEET PILES

Please see attached.

**From:**     Michael Riess
**To:**        hlambert@lambertandnelson.com;  jbruno@brunobrunolaw.com;  O'Dwyer, Ashton;
rhubbard@lawla.com;  Robin.Doyle.Smith@usdoj.gov;  tbrennan@dkslaw.com;
Tess.finnegan@usdoj.gov;  Traci.colquette@usdoj.gov;  wtreeby@stonepigman.com
**Date:**     Tue, Aug 1, 2006  3:11 PM
**Subject:**   RE: I-WALL SHEET PILES and Notification of Work Scheduled for August 2, 2006

Dear Mr. O'Dwyer:

I will let Judges Duval and Wilkinson determine what is and what is not "acceptable" - - not you.  Perhaps, you failed to read the "Order and Reasons", Document No. 788, which constitutes the 36 page Judgment rendered by Judge Duval on July 19, 2006, in this case.  Specifically, it is quite clear that you failed to read (much less adhere to) footnote 7 found on page 5 of Document No. 788, which is restated for your easy reference:

"It will be noted that the initial complaint contains an inordinate amount of irrelevant rhetoric which has no place in any legal pleading.  Counsel for plaintiffs [Ashton O'Dwyer] is on notice that any further diatribes such as:  'plaintiffs long for the days in the City of New Orleans and in the State of Louisiana when certain behavior was simply UNACCEPTABLE TO POLITE, RESPECTUFL, LAW-ABIDING CITIZENRY.  Plaintiffs long for the days when the citizenry, black and white, would not tolerate idleness, drug use or crime-a land in which children knew their father's last name, because he lived in a house which he had acquired through his own industry'… will not be tolerated and may subject him [Ashton O'Dwyer] to sanctions."

See Document No. 788, page 5, footnote 7.

Apparently, no admonishment will cease and desist you from your constant badgering and self-serving "diatribes".  Further, let me correct some gross misstatements that you have made in your e-mail below.  No physical evidence was destroyed relating to any work performed by Boh Bros. on the failed I-Walls this morning.  Rather, so that we are clear, you, representatives of IPET and other authorized representatives of the plaintiffs' liaison committee, along with a photographer and experts, were on the site for the removal of the water stop from monolith H-23 and were informed of the concrete removal two days later.  Monolith H-23 was broken and hauled away on May 5, 2006.  You and all other counsel were given this information and access to the site at that time.

So that we can be even clearer, Boh Bros., as directed by the Corps of Engineers this morning, pulled 19 pieces of sheeting from what was monolith H-23.  As stated above, the monolith H-23 concrete was broken and hauled away on May 5, 2006, after you and other authorized representatives had had an opportunity to inspect same, including removal of the water stop from the H-23 monolith.  The 19 pieces of sheeting that were removed this morning were measured, documented and preserved, as per the express directives of the Corps of Engineers and as further directed by the Department of Justice.  These 19 pieces of sheeting will be transported by the Corps of Engineers storage area, as has been directed by the Department of Justice.  Please contact the attorneys for the Department of Justice if you have any desire to inspect or photograph the 19 pieces of sheeting, all of which measured more than 23? 3' in length.

Given the Court's admonishment contained in its Order and Reasons of July 19, 2006, I am now to the point where I will start sending your self-serving diatribes directly to the Court and ask the Court to sanction you.  I will then let the Court decide what is and what is not "acceptable".  I certainly know, as a matter of professionalism, that your conduct and your self-serving diatribes are not acceptable to me; however, I will let the Court decide your fate on these issues.

On a final note, Tom Sherburne of Boh Bros. has just called me and informed me that the Corps has just instructed Boh Bros. to commence the demolition of monolith H-24 starting at 1:00 p.m. tomorrow, August 2, 2006.  In accordance with the work protocol that has been agreed to by and between all counsel and submitted to the Court, we are notifying you of this work activity.  Please contact the Corps' attorneys by no later than 5:00 p.m. this afternoon if you or any other counsel would like to be in attendance for this

work that is scheduled tomorrow at 1:00 p.m.

Best regards.

Michael R. C. Riess
Kingsmill Riess, L.L.C.
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170-3300
Telephone: (504) 581-3300
Facsimile: (504) 581-3310

CONFIDENTIALITY NOTICE:

This e-mail may contain confidential information which is legally privileged. The information is intended only for the use of the intended recipient. If you received this e-mail in error, please immediately notify us by return e-mail or telephone. You are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email or any information contained therein is strictly prohibited.

>>> "Ashton O'Dwyer" <arod@odwyerlaw.com> 08/01/06 10:55 AM >>>
Mr. Reiss: This is not acceptable. If your client, and their underwriters, believe they can hide behind the COE, then think again. And you had better put your E&O carrier on notice. If any physical evidence is destroyed tomorrow, before my clients and I have the opportunity to have our experts inspect it beforehand, then you and your client will do so at your/their peril.

Law Offices of
Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
AROD@O'Dwyerlaw.com

-----Original Message-----
From: Lesley Barre [mailto:lbarre@kingsmillriess.com]
Sent: Monday, July 31, 2006 5:29 PM
To: jbruno@brunobrunolaw.com; tbrennan@dkslaw.com; hlambert@lambertandnelson.com; rhubbard@lawla.com; arod@odwyerlaw.com; wtreeby@stonepigman.com; Robin.Doyle.Smith@usdoj.gov; Tess.finnegan@usdoj.gov; Traci.colquette@usdoj.gov
Cc: tsherburne@bohbros.com; Michael Riess
Subject: Fwd: I-WALL SHEET PILES

Please see attached.

CC:          alexis@lambertandnelson.com;  nometal@bellsouth.net

| | |
|---|---|
| **From:** | "Ashton O'Dwyer" <arod@odwyerlaw.com> |
| **To:** | <mriess@kingsmillriess.com> |
| **Date:** | Tue, Aug 1, 2006  2:12 PM |

Michael:

I was "preoccupied" this morning and unable to visit the 17th Street Canal site on less than 24-hours notice which you gave the litigants late yesterday.  You and I both know that your client and the COE have known for some time what they planned to do this morning.  The only excuse for the short notice is arrogance.

It rained today, and I don't know if the work is finished.  My experts and I want to see the "end pile(s)", and particularly the edges of those end pile(s).  When can we see them, either in the ground, as they are being pulled, or on the ground, clearly marked.

P.S.  to Messrs. Bruno and Lambert:

Stan Guidry says he was not asked to video whatever Boh Bros. may have done this morning.  Was any other videographer instructed to do so?

Ashton R. O'Dwyer, Jr.
Law Offices of Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
 <mailto:AROD@odwyerlaw.com> AROD@odwyerlaw.com


**CC:**         <jbruno@brunobrunolaw.com>, <hlambert@lambertandnelson.com>,
<tess.finnegan@usdoj.gov>, <traci.colquette@usdoj.gov>, <rasmith3@bellsouth.net>,
<robin.doyle.smith@usdoj.gov>, <Randall.C.Merchant@mvn02.usace.army.mil>

From:       "Ashton O'Dwyer" <arod@odwyerlaw.com>
To:         <mriess@kingsmillriess.com>
Date:       6/29/06 11:52AM
Subject:    Berthelot, et al. vs. Boh Bros., et al.

I read with interest Mr. Sherburne's E-mail to you of earlier today,
addressing the possibility of "partial demo of some, not all, concrete from
the top of failed I-Wall monoliths". You and your client are warned again:
Do not destroy evidence at the 17th Street Canal breach site. Boh Bros. had
all the time in the world since May 20th to have the monolith panels
excavated, so that they can be inspected, and the evidence documented, prior
to any destruction. You know that your client did no work whatsoever at the
site between May 20th and June 19th. Whatever actual work your client may
have engaged in at the site since June 19th has not involved the monoliths;
yet, no one is excavating them. You advised the Court about some as yet
unidentified "underground obstructions", but you have provided no
documentation concerning the alleged obstructions. Now your client gives us
a "heads-up" concerning possible destruction of evidence. Tread carefully,
because you and your client are being watched.

P.S. to Government lawyers:

    The Government has the power to put an end to all of this, and
simply tell Boh Bros. to excavate the monoliths prior to demolishing any
concrete. Are you going to do so?

Ashton R. O'Dwyer, Jr.
Law Offices of Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
<mailto:AROD@odwyerlaw.com> AROD@odwyerlaw.com


CC:         <tess.finnegan@usdoj.gov>, <traci.colquette@usdoj.gov>, <dollyno@aol.com>,
<rgharvey@bellsouth.net>, <hlambert@lambertandnelson.com>, <rgp@rgplaw.com>,
<wimberly@nternet.com>, <jbruno@brunobrunolaw.com>, <DAVID@brunobrunolaw.com>,
<dmartin@gainsben.com>, <khadican@gainsben.com>, <rasmith3@bellsouth.net>,
<kreasonover@smithfawer.com>, <tdavis2@cableone.net>, <ostamant@bellsouth.net>,
<smwiles@smithfawer.com>, <fswarr@landryswarr.com>, <mlandry@landryswarr.com>,
<calvinfayard@fayardlaw.com>, <gmckernan@mckernanlawfirm.com>, <robin.doyle.smith@usdoj.gov>,
<peter.myer@usdoj.gov>

| | |
|---|---|
| **From:** | "Ashton O'Dwyer" <arod@odwyerlaw.com> |
| **To:** | <mriess@kingsmillriess.com> |
| **Date:** | Fri, Jun 2, 2006 10:35 AM |
| **Subject:** | Riess E-mail 3 |

LAW OFFICES OF
ASHTON R. O'DWYER, JR.
ONE CANAL PLACE
365 CANAL STREET
SUITE 2670
NEW ORLEANS, LA 70130
Telephone: (504) 561-6561
Facsimile: (504) 561-6560

June 2, 2006

VIA E-MAIL

Michael R. C. Riess, Esq.
Kingsmill, Riess, L.L.C.
201 St. Charles Avenue
Suite 3300
New Orleans, LA 70170-3300

          Re:    Colleen Berthelot, et al. vs.
                Boh Brothers Construction Co., LLC, et al.

                No. 05-4182 "K" (2)
                Relates to All Actions

Dear Mike:

      There was no one at the 17th Street Canal breach site again yesterday. Is your client still charging the taxpayers six (6) hours per day for "the invisible man" who is allegedly performing "monitoring" services? Also, you have not responded to my questions of May 26th. Lastly, so that my experts and I can make plans, when does your client expect to begin excavating the monoliths in accordance with the 17th Street protocol?

Yours very truly,

Ashton R. O'Dwyer, Jr.

AROD/vtb
cc:    All Plaintiffs' Counsel (via E-mail)

**CC:**          <dbecnel@becnellaw.com>, <dollyno@aol.com>, <rgharvey@bellsouth.net>,

<hlambert@lambertandnelson.com>, <rgp@rgplaw.com>, <wimberly@nternet.com>,
<jbruno@brunobrunolaw.com>, <DAVID@brunobrunolaw.com>, <dmartin@gainsben.com>,
<khadican@gainsben.com>, <rasmith3@bellsouth.net>, <kreasonover@smithfawer.com>,
<tdavis2@cableone.net>, <ostamant@bellsouth.net>, <smwiles@smithfawer.com>,
<fswarr@landryswarr.com>, <mlandry@landryswarr.com>, <calvinfayard@fayardlaw.com>,
<gmckernan@mckernanlawfirm.com>

# KINGSMILL RIESS, L.L.C.

### COUNSELLORS AT LAW

MARGUERITE K. KINGSMILL*
MICHAEL R. C. RIESS
JOHN M. DUBREUIL
CHARLES B. COLVIN*
THOMAS P. HENICAN
CHRISTY R. BERGERON*
CYNTHIA BOLOGNA MCINTYRE
*ALSO ADMITTED IN TEXAS

201 ST. CHARLES AVENUE
SUITE 3300
NEW ORLEANS, LOUISIANA 70170-3300
TELEPHONE (504) 581-3300
TELECOPIER (504) 581-3310

JP MORGAN CHASE TOWER
SUITE 7070
600 TRAVIS STREET
HOUSTON, TEXAS 77002
TELEPHONE (713) 222-6950
TELECOPIER (713) 222-6955

WRITER'S E-MAIL:
MRIESS@KINGSMILLRIESS.COM

May 16, 2006

***Via E-mail Only***
Ashton R. O'Dwyer, Jr., Esq.
One Canal Place
365 Canal Street, Suite 2670
New Orleans, Louisiana 70130

Re:     *Colleen Berthelot, et al. v. Boh Bros. Construction Co., L.L.C., et al.*
        United States District Court, Eastern District of Louisiana
        Civil Action No. 05-4182, Section K, Magistrate (2), Cons. Katrina Canal

Dear Ashton:

I have your self-serving diatribe e-mail below. As you know from past e-mail communications, I have resisted the temptation to engage in any type of letter writing campaign, as you are so prone to do. Unfortunately, you now have chosen to copy a good twenty-five people or so with your extremely inaccurate and defamatory e-mail. You have put me in a position that I must respond on behalf of both myself and my client, Boh Bros.

Aside from the defamatory and derogatory nature of your comments, I categorically deny that I have "pulled the wool over Duval's and Wilkinson's eyes". Boh Bros. has and shall continue to comply with all applicable laws and orders from Judges Wilkinson and Duval in these cases. Nobody is trying to "trick" anyone. I have explained, both verbally in open court to Judges Duval, Wilkinson and all counsel in this case, and in writing in a status report and joint site inspection agreement that will be submitted to Judge Wilkinson in the next day, that your simple notion of digging "a trench" down to the "connections" where the sheeting and monoliths are connected is simply not feasible. I will not restate the reasons that have been both explained in open court verbally and in writing, a draft of which has already been forwarded to you for review and comment.

If you thought that I was "pulling the wool over Duval's and Wilkinson's eyes", then why didn't you stand up and say so at the hearing? Simply stated, my client and I have reached the end of our rope regarding your letter bashing techniques. If you feel like your clients have been harmed in any way by the actions of Boh Bros., then go ahead and file whatever pleading you deem necessary. Given that you have put Boh Bros. on notice of your alleged spoliation of

Ashton R. O'Dwyer, Jr., Esq.
May 16, 2006
Page 2

the evidence claims, we likewise put you and your clients on notice that we will pursue any and all applicable sanctions and attorneys' fees if any pleading that you choose to file with the Court violates Rule 11 of the Federal Rules of Civil Procedure.

Boh Bros. has and shall continue to comply with all applicable orders from Judges Duval and Wilkinson in this case, in additional to all applicable laws, all in line with the joint agreement that I have submitted to you and other counsel in this case for the site inspections to be performed in the referenced T-Wall construction project that is ongoing at the 17th Street Canal breach site.

While I recognize that it is difficult to do, please refrain from sending any further self-serving diatribes. Just go ahead and file whatever motion or pleading you believe you need to file. I, along with Boh Bros., will be most happy to deal with any allegations of fact and/or applicable law before this Court that you may want to raise.

Best regards.

Yours very truly,

*Michael R. C. Riess*

Michael R. C. Riess

MRCR/lmb

From:        "Ashton O'Dwyer" <arod@odwyerlaw.com>
To:          <mriess@kingsmillriess.com>, <tbrennan@dkslaw.com>,
<ccolvin@kingsmillriess.com>
Date:        Mon, May 15, 2006 10:43 AM
Subject:     Berthelot, et al. vs. Boh Brothers, et al.

Dear Mike:

        I wish I could say I enjoyed your "bobbing and weaving" in
Open Court on Friday, May 12th, and your failure to directly address a
very simple issue. Are we going to see the evidence before it is
destroyed, or will Boh Brothers be complicit with the Corps of Engineers
in denying us the opportunity to see evidence before it is destroyed?
The proof of the pudding will be in the eating. I am serving you and
Boh Brothers notice: You had better not damage any concrete where the
monolith panels make contact with the sheet pile before we have the
opportunity to inspect. You may have pulled the wool over Duval's and
Wilkinson's eyes, and confused what is really a simple issue, but you
can't trick me. All that needs to be done is for Boh Brothers to put a
few working men in the trench, equipped with shovels, and to gently dig
out the areas of interest. This is minimum wage manual labor, and
doesn't require a Civil Engineer to supervise. Also, I expect
reasonable notice of when the additional evidence will be available for
viewing at 17th Street.

Yours very truly,

Ashton R. O'Dwyer, Jr.
Law Offices of Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
 <mailto:AROD@odwyerlaw.com> AROD@odwyerlaw.com

CC:          <dbecnel@becnellaw.com>, <doug@duganbrowne.com>,
<dbrowne@brownelaw.com>, <rdaigre@duganbrowne.com>, <dollyno@aol.com>,
<rgharvey@bellsouth.net>, <hlambert@lambertandnelson.com>, <rgp@rgplaw.com>,
<wimberly@nternet.com>, <jbruno@brunobrunolaw.com>, <DAVID@brunobrunolaw.com>,
<dmartin@gainsben.com>, <khadican@gainsben.com>, <rasmith3@bellsouth.net>,
<kreasonover@smithfawer.com>, <tdavis2@cableone.net>, <ostamant@bellsouth.net>,
<smwiles@smithfawer.com>, <rcreely@aol.com>, <fswarr@landryswarr.com>,
<mlandry@landryswarr.com>, <calvinfayard@fayardlaw.com>, <gmckernan@mckernanlawfirm.com>

**From:**        "Ashton O'Dwyer" <arod@odwyerlaw.com>
**To:**            <mriess@kingsmillriess.com>
**Date:**         Tue, May 16, 2006  2:20 PM

LAW OFFICES OF
ASHTON R. O'DWYER, JR.
ONE CANAL PLACE
365 CANAL STREET
SUITE 2670
NEW ORLEANS, LA 70130
Telephone: (504) 561-6561
Facsimile: (504) 561-6560

May 16, 2006

VIA E-MAIL

Michael R. C. Riess, Esq.
Kingsmill, Riess, L.L.C.
201 St. Charles Avenue
Suite 3300
New Orleans, LA 70170-3300

               Re:     Colleen Berthelot, et  al. vs.
                      Boh Brothers Construction Co., LLC, et
al.

                      No. 05-4182 "K" (2)
                      Relates to All Actions

Dear Mike:

       To further my E-mails to you of yesterday and earlier today, I am not going to renege on my "consent", on the record in Open Court, on Friday, May 12th, to your proposal to attempt to work with you and your client in order to get the opportunity to see evidence before it is destroyed.  However, I reiterate that "the proof of the pudding will be in the eating".  More particularly, I totally disagree with numbered paragraph 2, and subparts, of your proposed draft to Magistrate Wilkinson.  You and your client, the latter of whom is being directed by its good customer, the U.S. Army Corps of Engineers, have turned a very simple project, i.e., digging a ditch, into something extremely complicated.  I totally disagree with your client's prompting you to say ". . . the answer is "maybe", but "Boh Bros. is not sure", as well as the statement that

"It simply is impossible to just dig a trench down an additional six to seven feet (from the current trench level) to expose the concrete monoliths where they meet the sheeting.  This would require the construction of a separate coffer dam that would have to surround the entirety of the project that would be both cost prohibitive and severely impact the completion of this repair project."

Where did that unsupported, conclusory statement come from?  It is not only contrary to fact, but contrary to common sense.  The project is currently surrounded by a coffer dam consisting of sheet piles over 65 feet in length.

The original sheet piles were only 21 to 22 feet in length.  Where does the notion that a new separate coffer dam may be needed come from?  Just tell a few guys equipped with shovels to dig down a few more feet so they can uncover buried evidence and allow us to see it before it is destroyed and lost forever.

This issue illustrates why Hugh Lambert said we need to see your client's written instructions from the Corps of Engineers, including exchanges of E-mails, rather than what is being "filtered" through you.

Let me remind you that notwithstanding numerous requests, both on and off the record, and both orally and in writing, my clients and my experts and I have been given the opportunity to see NO connections between sheet piles and concrete monolith panels at any of the breach locations before destruction.  17th Street and London Avenue South are the only remaining locations where this evidence still exists, to my knowledge, and what you have proposed to submit in writing to the Magistrate is part of the Corps of Engineers "cover-up" of evidence, even though you may be being used, unwittingly, as a "tool" or "foil" for the Corps of Engineers.

Let me raise another issue for you to think about:  I don't know whether you represent Boh Brothers or Boh Brothers' underwriters.  It may be that Boh Brothers' corporate interests in following Corps of Engineers' orders, and telling you what to write, are in conflict with the interests of Boh Brothers' liability underwriters.  Think about that, Mike.

Accordingly, you can advise the Magistrate that I agree, in principle, with your proposed protocol, but with the strong exceptions noted, supra, and that I am reserving all rights that my clients may have or hereafter acquire as a result of the destruction of evidence before my experts and I get to see it.


Yours very truly,



Ashton R. O'Dwyer, Jr.

AROD/vtb
cc:      All Plaintiffs' Counsel (via E-mail)


CC:              <dbecnel@becnellaw.com>, <doug@duganbrowne.com>, <dollyno@aol.com>, <rgharvey@bellsouth.net>, <hlambert@lambertandnelson.com>, <rgp@rgplaw.com>, <wimberly@nternet.com>, <jbruno@brunobrunolaw.com>, <DAVID@brunobrunolaw.com>, <dmartin@gainsben.com>, <khadican@gainsben.com>, <rasmith3@bellsouth.net>, <kreasonover@smithfawer.com>, <tdavis2@cableone.net>, <ostamant@bellsouth.net>, <smwiles@smithfawer.com>, <rcreely@aol.com>, <fswarr@landryswarr.com>, <mlandry@landryswarr.com>, <calvinfayard@fayardlaw.com>, <gmckernan@mckernanlawfirm.com>

**From:** Michael Riess
**To:** O'Dwyer, Ashton
**Date:** 5/25/06 2:01PM
**Subject:** Re: Berthelot, et al. vs. Boh Brothers, et al.

Ashton:

I am in receipt of your e-mail that is copied below. For some reason, you continue to write e-mails to me questioning both my honesty and integrity and that of my client, Boh Bros., relating to the work being performed by Boh Bros. at the 17th Street Canal. I both resent and categorically deny your slanderous comments about me and my client, as they are totally unprofessional. I will again state that Boh Bros. and I have complied with all applicable laws and all directives and orders we have received from Judges Wilkinson and Duval in these cases.

As I have said before, I refuse to engage in a letter writing campaign with you. Instead, I am advising you (yet again) to file whatever pleading or motion you feel the need to file in order to represent your clients as against Boh Bros. Otherwise, please cease and desist from sending out your self-serving diatribes that serve absolutely no purpose whatsoever. In fact, given the comments made by Judge Duval yesterday relating to your "colorful" conduct, if you chose to ignore this cease and desist request, I am going to start forwarding your e-mails directly to Judges Wilkinson and Duval, at which time you can take these matters directly up with them.


Michael R. C. Riess
Kingsmill Riess, L.L.C.
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170-3300
Telephone: (504) 581-3300
Facsimile: (504) 581-3310

CONFIDENTIALITY NOTICE:

This e-mail may contain confidential information which is legally privileged. The information is intended only for the use of the intended recipient. If you received this e-mail in error, please immediately notify us by return e-mail or telephone. You are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email or any information contained therein is strictly prohibited.


>>> "Ashton O'Dwyer" <arod@odwyerlaw.com> 05/25/06 12:22PM >>>
Mike:

Following your "cheap shot" on the record yesterday, I reviewed the Rules of Professional Conduct. Near the top is the lawyer's obligation of "candor to the tribunal". Think about that before you make any more representations of fact to the Court, unsupported by affidavits from competent witnesses.

Also, the ABA is sponsoring a new book by Daniel Gourash and Margaret Koepel, entitled: "Spoliation of Evidence". If you are a Member of the Torts and Insurance Section of the ABA, you can get the book at a discount. Boh Brothers really ought to buy you a copy.

Ashton R. O'Dwyer, Jr.
Law Offices of Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
 <mailto:AROD@odwyerlaw.com> AROD@odwyerlaw.com


**CC:**            calvinfayard@fayardlaw.com;  DAVID@brunobrunolaw.com;  dbecnel@becnellaw.com;
dmartin@gainsben.com;  dollyno@aol.com;  fswarr@landryswarr.com;
gmckernan@mckernanlawfirm.com;  hlambert@lambertandnelson.com;  jbruno@brunobrunolaw.com;
khadican@gainsben.com;  kreasonover@smithfawer.com;  mlandry@landryswarr.com;
ostamant@bellsouth.net;  rasmith3@bellsouth.net;  rgharvey@bellsouth.net;  rgp@rgplaw.com;
smwiles@smithfawer.com;  tdavis2@cableone.net;  wimberly@nternet.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COLLEEN BERTHELOT, ET AL.,** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-4182** |
| **BOH BROTHERS CONSTRUCTION CO., L.L.C., ET AL.** | **SECTION "K"(2) CONS. KATRINA CANAL** |

**PERTAINS TO: O'Dwyer 05-4181**

### ORDER AND REASONS

Before the Court are the following motions that were filed in *O'Dwyer, et al. v. The United States of America, et al.*, C.A. 05-4181:

Doc. 104     Motion to Dismiss for Want of Standing or, Alternatively Pursuant to FRCP 12(b)(1), FRCP 12(b)(6) and FRCP 11(b)(2) with Incorporated Memorandum in Support Thereof filed by the City of New Orleans, the Honorable C. Ray Nagin, Mayor, and Former Superintendent of Police Edwin Compass, III[1]

Doc. 105     Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) filed by Kimberly Williamson Butler, in her individual capacity.

Doc. 110     Amended Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) filed by Kimberly Williamson Butler, in her individual and official capacity

Doc. 106     Motion to Dismiss Defendant Governor Kathleen Blanco

Doc. 107     Motion to Dismiss Defendant State of Louisiana

Doc. 108     United States' Motion to Dismiss

Doc. 109     Motion to Dismiss on Behalf of Eddie Jordan, Individually and in his Elected Capacity as the District Attorney for the Parish of Orleans, State of Louisiana.

---

[1]The City of New Orleans also filed a subsequent Motion to Dismiss for Failure to State a Claim (Doc. 200) with respect to the following cases: C.A. No. 05-6327, 05-6073, 05-5237, and 05-6314. The Court will address this other motion in a subsequent order; this ruling is intended as an adjudication as to the issues contained in the *O'Dwyer* matter.



The Court has reviewed the pleadings, memoranda and the relevant law, and is prepared to address each motion herein seriatim.

## BACKGROUND

The instant suit was filed on September 19, 2006, in the immediate aftermath of Hurricane Katrina. While it was initially filed "in proper person" by counsel[2], since its filing, counsel has amended the complaint eleven times, adding a multitude of individuals and alleging causes of action that include, *inter alia*, allegations of defalcations with respect to the adequacy and construction of the canals and flood walls that failed in the wake of Hurricane Katrina, the adequacy of the evacuation measures taken prior to Hurricane Katrina, and the adequacy and propriety of the response to the aftermath of Hurricane Katrina. In this one suit, plaintiffs have named as defendants the United States of America (including the Army Corps of Engineers ("the Corps") and the Federal Emergency Management Agency ("FEMA"), Kathleen Blanco, both individually and in her official capacity as Governor of the State of Louisiana, the State of Louisiana, the City of New Orleans, Ray Nagin both individually and in his official capacity, Eddie Compass, both individually and in his official capacity as Chief of Police, Eddie Jordan, both individually and in his official capacity as District Attorney for the City of New Orleans, Jim Huey, individually and in his official capacity as President of the Orleans Parish, Orleans Parish Sewerage and Water Board, Kimberly Williamson Butler, individually and in her official capacity as Clerk of Court for the Orleans Parish Criminal District Court, Eustis Engineering Company, Inc., Modjeski and Master, Inc., the Board of

---

[2]Indeed, the initial complaint consists of a 56 page hand-written document which is practically illegible by virtue of its meanderings and notations which literally fill the pages without margins with writings that are perpendicular to the lines of the paper on which the pleading is written.

Commissioners of the Orleans Levee District.[3]  Pretermitting the propriety of the joinder of this number of plaintiffs, defendants and causes of actions, the Court will address the above-listed motions to dismiss.

## THE COMPLAINT AND AMENDING COMPLAINTS

The Class Action Complaint begins with a listing of individual plaintiffs who are not specifically identified by address or any specific information, and provides for a number of "groupings" of which this amorphous listing of individuals claims to be representative. As for the jurisdictional basis, in Paragraph IV, plaintiffs initially allege, "This Court is the exclusive court of jurisdiction over the United States of America. This court has ancillary or pendant jurisdiction over the remaining defendants."[4]  (Doc. 1, Complaint, p. 17).   The Complaint then proceeds with a general diatribe concerning the alleged defalcations of the defendants in this matter.  (Doc. 1, Complaint, pp. 18-32). Plaintiffs continue by alleging a number of "legal theories" against public officials including  incompetence, violation of duty and statute, negligence, gross negligence, malfeasance, misfeasance, non-feasance, and intentional infliction of emotional distress.  Plaintiffs in later amendments also contend that the "torts errors and omissions committed by [these] defendants satisfy the requirements for excepting from immunity from liability because of malicious, intentional, willful, outrageous, reckless or flagrant misconduct. La. Rev. Stat.

---

[3]By order of this Court, the claims against Aaron Broussard, individually and in his official capacity as President for the Parish of Jefferson and Jefferson Parish were severed from this suit and assigned a separate case number, that is *Abel v. Broussard*, C.A. No. 06-1640.  A Motion to Dismiss these parties (Doc. 13) had been filed prior to the severance; however, another Motion to Dismiss (Doc. 15)was filed in *Abel* and granted (Doc. 20).  Thus, the Motion to Dismiss in *O'Dwyer* (Doc. 13) is **MOOT**.

[4]Supplemental jurisdiction pursuant to 28 U.S.C. § 1367 is proper term to use; the Court will discuss this basis for jurisdiction at the conclusion of this opinion.

3

9:2798.1(C)(2)."  In addition, plaintiffs contend that the defendants violated a criminal statute, La.

Rev. Stat. 14:134 concerning malfeasance in office.[5]

The initial complaint contains "counts" which plaintiffs maintain contain the gravamen of

the specific actions which are the basis for their complaint.  In relevant part, these "counts" are as

follows:[6]

| Count 1 | Plaintiffs reaver  (sic) and reiterate all of their allegations as aforesaid, and in addition aver that certain of the defendants negligently, intentionally, and with malfeasance, misfeasance and non-feasance, **failed to order the timely evacuation of critical care patients** in hospitals, nursing homes, etc. . . . |
|---|---|
| Count 2 | that certain defendant intentionally, negligently [both gross and simple in nature], and with malfeasance, misfeasance and non-feasance **failed in their duty to ensure competent design, construction, maintenance and inspection of the levee systems for the Industrial Canal, the London Avenue Canal and the Seventeenth Street Canal** |
| Count 3 | that certain defendants intentionally, negligently and with malfeasance, misfeasance, and non-feasance **failed to timely stop the flooding** |

---

[5]These allegations were added in the Eleventh Supplemental Amending Complaint. (Doc. 78).  Neither can plaintiffs bring a criminal action, nor can a private right of action be derived therefrom. *Evans v. Dept. of Housing and Urban Dev.* 2004 WL 179193, *5 (E.D.La. Jan. 28, 2004).  Thus, this jurisdictional allegation is devoid of merit and will not be addressed again.

[6]The First Supplemental and Amending Complaint contains additional plaintiffs and added the Sewerage and Water Board. (Doc. 3).  The Second Supplemental and Amending Complaint added FEMA as defendant and another group of plaintiffs. (Doc. 5). The Third Supplemental and Amending Complaint added the Jefferson Parish allegations which as previously noted were severed and dismissed. (Doc. 7) The Fourth Supplemental and Amending Complaint added plaintiffs, a Jefferson Parish classification, an additional jurisdictional basis discussed *infra*, and more vituperative allegations of misfeasance on the part of Mayor Nagin.  (Doc. 12).  The Fifth Supplemental and Amending Complaint added additional plaintiffs and the classification of those injured by the Mississippi Gulf River Outlet ("MRGO"). (Doc. 16).  The Sixth Supplemental and Amending Complaint broadens the allegations to include plaintiffs in New Orleans East and classification for those harmed by the Industrial Canal in conjunction with MRGO. Williamson and the Louisiana Department of Transportation and Development were added by this document. (Doc. 20).  The Seventh Supplemental and Amending Complaint added more plaintiffs and Eustis Engineering Company, Inc. and Modjeski and Masters, Inc. as defendants. (Doc. 23).  The Eight Supplemental and Amending Complaint (Doc. 50), the Ninth Supplemental and Amending Complaint (Doc.123) and the Tenth Supplemental and Amending Complaint (Doc. 124) all simply add new individually named plaintiffs.  The Eleventh Supplemental and Amending Complaint added plaintiffs, an insurance company in lieu of "ABC Insurance Company" for the New Orleans Levee Board, and more bases for jurisdiction which will be discussed *infra*, as well as various other bases for "compensation" from state defendants. (Doc. 128).

4

Count 4        that certain defendants intentionally, negligently and with malfeasance, misfeasance, and non-feasance **failed to secure the water supply to Orleans Parish causing increased fires.**

Count 5        that certain defendants intentionally, negligently and with malfeasance, misfeasance, and non-feasance **failed to protect the public from marauding bands of convicted felons and persons who were "already in the criminal justice system", illegally armed and terrorizing law-abiding citizens, including killing them and destroying property**

Count 6        that certain defendants intentionally, negligently and with malfeasance, misfeasance, and non-feasance **failed to safeguard the identification records and criminal records of convicted sex offenders, including rapists and pedophiles, and "injected" these individual into the refugees at the Louisiana Superdome and convention Center**

Count 7        that certain defendants intentionally, negligently and with malfeasance, misfeasance, and non-feasance **failed to safeguard the contents of the evidence room at Criminal District Court for to Parish of Orleans ...with the result that evidence was lost and/or compromised and successful prosecution thwarted.**

Count 8        that certain defendants failed to **safeguard the names of identifying prisoners** who were in Orleans Parish prison.

Count 9        that certain defendants intentionally, negligently and with malfeasance, misfeasance, and non-feasance **caused the pollution of the environment of the territory and atmosphere of the parish of Orleans.**[7]

(Doc. I, Complaint, pp. 33-45.

        In the Fourth Supplemental and Amending Complaint (Doc. 12), plaintiffs amended the

allegations against the non-United States defendants from simply supplemental jurisdiction to state

original federal subject matter jurisdiction "since plaintiffs were deprived of rights to life, property

---

[7]It will be noted that the initial complaint contains an inordinate amount of irrelevant rhetoric which has no place in any legal pleading.  Counsel for plaintiffs is on notice that any further diatribes such as:
>    Plaintiffs long for the days in the City of New Orleans and in the State of Louisiana when certain behavior was simply UNACCEPTABLE TO POLITE, RESPECTFUL, LAW-ABIDING CITIZENRY.  Plaintiffs long for the days when the citizenry, black and white, would not tolerate idleness, drug use or crime–a land in which children knew their father's last name, because he lived in a house which he had acquired through his own industry....
will not be tolerated and may subject him to sanctions.  (Doc. 1,Complaint at p. 47.)

and the pursuit of happiness, guaranteed by the U.S. Constitution, and the law, statutes and treaties amendatory thereto, by state and/or governmental action, giving rise to purely federal causes of action."

In the Eleventh Supplemental and Amending Complaint in a Class Action Lawsuit (Doc. 78) plaintiffs amended Article IV (the jurisdictional allegations) of the Complaint as follows:

More particularly, this Court has jurisdiction of the claims herein asserted by virtue of the following, inter alia:

Original jurisdiction pursuant to the Second[8], Fifth[9] and Fourteen[10] (sic) Amendments to the United States Constitution

Original jurisdiction pursuant to 28 USC § 1331[11]

Original jurisdiction pursuant to 28 USC § 1346[12]
Original jurisdiction pursuant to 28 USC § 2571, et seq.[13]

---

[8]This amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

[9]This amendment provides:
No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use without just compensation. U.S. Const. amend. V.

[10]This amendment states in relevant part that: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV.

[11]This statute provides," The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the Untied States." 28 U.S.C. § 1331.

[12]This statute provides for the instances where the district courts of the United States have jurisdiction over the United States. 28 U.S.C. § 1346 including the Federal Tort Claims Act and Tucker Act provisions which will be discussed *infra*.

[13]These statutes also provide the procedures to proceed against the United States under the Federal Tort Claims Act. 28 USC § 2571.

6

Original jurisdiction pursuant to Title XI of the Civil Rights Act[14]

Original jurisdiction pursuant to 42 USC § 1983[15]

Original jurisdiction pursuant to 42 USC § 1985[16]

Original jurisdiction pursuant to 42 USC § 1986[17]

Original jurisdiction pursuant to 42 USC § 1988[18]

Original jurisdiction pursuant to the Class Action Fairness Act, 28 USC § 1332, by virtue of the fact that the matter in controversy in this civil action exceeds the sum of $5 million, exclusive of interest and costs.

This Court also has jurisdiction of the claims herein asserted by virtue of the following environmental statutes, inter alia, which defendants violated, thus entitled Plaintiffs to damages from defendants:

The Oil Pollution Act of 1990 and precursor legislation

The Comprehensive Environmental Response Compensation and Liability Act and precursor legislation

The Federal Water Pollution Control Act

The Clean Water Act

The Clean Air Act

The National Environmental Policy Act

The Toxic Substances Control Act

---

[14]This "citation" is overly broad and incomprehensible. While the Court assumes that this refers to the Civil Rights Act contained in Title 42 of the United States Code, such an amorphous citation without more specificity renders this jurisdictional basis a nullity in the Court's eyes.

[15]This statute provides a civil action for deprivation of rights and will be discussed *infra*.

[16]This statute provides a cause of action for a conspiracy to interfere with civil rights.

[17]This statute provides a cause of action for neglecting to prevent the interference with civil rights.

[18]This statute provides for federal jurisdiction, attorneys' fees and expert fees for civil right violations.

The Resource Conservation and Recovery Act

The Louisiana Environmental Quality Act

The Louisiana Air Control Law

The Louisiana Water Control Law

The Louisiana Oil Spill Prevention and Response Act

Eleventh Supplemental and Amending Complaint (Doc. 128 at 4-5).

With this litany of alleged bases for jurisdiction, the Court will first address the propriety of this wholesale approach to jurisdiction and the actual basis upon which this Court recognizes that it entertains jurisdiction at this point in time under Fed. R. Civ. P 12(b)(1). The Court will then address each individual motion in the context of Fed. R. Civ. P. 12(b)(6) to the extent there is a jurisdictional basis for any claims against a specific defendant. The Court will now outline the legal parameters of that investigation.

## STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the subject matter jurisdiction of the district court to hear a case. The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001). As the Fifth Circuit has stated:

> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curium). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.* The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursing a claim in a court that does have jurisdiction. *Id.*

8

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id. citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Fifth Circuit explained:

> Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989). Further, "the plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities, Inc.* 94 F.3d 189, 194 (5th Cir. 1996). This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim. *Hitt*, 561 F.2d at 608. In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992). Finally, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

*Id.* at 161-62.[19]

With these standards in mind, the Court will first address the complaint and its 11 amendments pursuant to Fed. R. Civ. P 12(b)(1) to determine whether the Court has subject matter jurisdiction based on the allegations of the complaints.

## JURISDICTION

---

[19]The Court recognizes that the City Defendants have also moved for dismissal pursuant to Rule 11 of the Federal Rules of Civil Procedure. However, as will be discerned from the Court's analysis, this basis need not be addressed as Rule 12(b)(1) and (6) provide sufficient grounds for dismissal.

Employing the Rule 12(b)(1) standards, the Court finds the following jurisdictional allegations have no merit.

### CAFA Jurisdiction

Plaintiffs' invocation of the Class Action Fairness Act, ("CAFA") 28 U.S.C. § 1332(d)(2), based on the fact that the matter in controversy in *O'Dwyer* exceeds the sum of $5 million, exclusive of interest and costs, ignores salient exceptions thereto—where a defendant is sued in its home state by a class comprised primarily of plaintiffs from that state, where the case involves a purely local controversy, and where the primary defendants are state actors. 28 U.S.C. § 1332(d) (3), (4) and (5).

Subsection 4 mandates a district court decline jurisdiction:

(A)   (I) over a class action in which—

(I)   greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II)   at least 1 defendant is a defendant—

(aa)   from whom significant relief is sought by members of the plaintiff class;

(bb)   whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc)   who is a citizen of the State in which the action was originally filed; and

(III)   principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii)   during the 3-year period preceding the filing of that class action , no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B)     two-thirds or more of the members of all proposed plaintiff classes in the aggregate and the primary defendants, are citizens of the State in which the action was originally filed.

Clearly here, more than two-thirds of the proposed plaintiff classes in the aggregate and primary defendants are citizens of Louisiana, the state in which this action was filed.

Subsection (3) also provides for discretionary abstention the contours of which support this Court's belief that in the interests of justice and looking at the totality of the circumstances it would decline jurisdiction (if it were not so mandated under subsection (4)) since the claims implicate Louisiana intrastate interests, Louisiana law would apply, Louisiana has a distinct nexus with class members, the damages caused and/or sustained were within Louisiana and the primary defendants are all Louisiana citizens save for the United States. Subsection (5) further provides that CAFA jurisdiction shall not apply to any class action in which the primary defendants are States, State officials or other governmental entities against whom the district court may be foreclosed from ordering relief.  Thus, there is no CAFA jurisdictional basis for this suit.

**Various Federal Statutes**

Plaintiffs' wholesale list of federal jurisdictional grounds borders on the absurd, and the Court will address these at this time. Federal courts are duty-bound to examine the basis of subject matter jurisdiction. *Union Planters Bank National Assoc. v. Salih*, 369 F.3d 457 (5th Cir. 2004) *citing Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94-95 (1998). As this Court has previously noted, as stated in Wright & Miller, *Federal Practice and Procedure*, § 1210:

> As is true in the case of pleading a federal question under Section 1331, the entirety of the complaint must support the jurisdictional allegation in a case based on a claim arising under a special federal question statute. Enough should be alleged in the statement of the claim to show that the action does arise under the statute on which it purports to be based. Indeed, it is these statements in the body of the pleading that give the district court subject matter jurisdiction and not the mere conclusory reference to or recitation of a federal statute in the jurisdictional allegations.

*Id.* at 146.

With this context in mind, the Court will now address the above-noted jurisdictional listing contained in this matter and dispose of the blatantly unsupported allegations. This litany of statutes for which no factual underpinning is provided will not be allowed to stand; as such, the Court finds counsel's action herein verging on sanctionable under Fed. R. Civ. P. 11.

### a. The Oil Pollution Act of 1990("OPA"), 33 U.S.C. § 2701

This statute pertains only to the discharge, or threatened discharge of oil upon navigable waters of the United States or adjoining shorelines. OPA imposes liability for the recovery cost and damages that result from an oil spill on:

> . . . each responsible party **for a vessel or a facility** from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable water or adjoining shore line or the exclusive economic zone.

33 U.S.C. § 2701. The statute further requires the all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source. 33 U.S.C. § 2713(a). A claim under OPA is a "request, made in writing for a sum certain, for compensation for damages or removal causes or resulting from an incident." 33 U.S.C. § 2701(3). The presentation of a claim is a mandatory condition precedent to filing a private lawsuit under OPA. *Boca Cigea Hotel, Inc. v. Bouchard Trans. Co. Inc.* , 51 F.3d 235 (11th Cir. 1995). As such, this jurisdictional claim has no merit as this prerequisite has not been fulfilled. Furthermore, the statute does not contemplate the harm alleged herein–damages resulting from a natural disaster and catastrophic occurrence.

### b.    The Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*

CERCLA's primary purpose is to facilitate the prompt clean up of hazardous waste sites by placing the ultimate financial burden on those responsible for creating the harmful condition at a waste site. *Cooper v. Armstrong Rubber Company*, 1989 WL 60338 (S. D. Miss. 1989). This statute clearly has no bearing on the factual underpinnings of this suit with respect to any of the named defendants and shall be dismissed.

### c.    The Federal Water Pollution Control Act ("FWPCA")33 U.S.C. § 1365 and the Clean Water Act ("CWA"), 33 U.S.C. § 1251

These statutes prohibit the discharge of pollutants. To that end, the CWA establishes a permit system and prohibits any discharge without authorization by permit. 33 U.S.C. §§1311(a); 1342. *Cooper*, at * 11, n. 2. A private right of action for citizens is provided for under the CWA at 33 U.S.C. § 1365(a) to sue for the violation of an effluent standard or limitation under the statute.

13

The CWA requires a 60 day notice of the alleged violation under the CWA to the Administrator of the EPA, the state in which the alleged violation occurred, and to any alleged violator. 33 U.S.C. § 1365(b)(1)(A). To begin, it appears to this Court that this law is not designed to address the facts of the case at hand. This statute addresses on-going pollution concerns, not the alleged results of catastrophic flooding. Furthermore, there are no allegations that the required notice has been provided as has been found to be a condition precedent to jurisdiction. *Cooper*, at 4. As such, this jurisdictional allegation shall be dismissed.

### d.   The Clean Air Act

Like the WPA, this statue addresses violations of federal emission standards. It may not be utilized to address wholly past violations of the Act, and it contains a sixty-day notice provision like that found in the WPA. As such, for the same reasons noted above, this jurisdictional invocation shall be dismissed.

### e.   National Environmental Policy Act of 1969, 42 U.S.C. § 4321, *et seq.*

"The fundamental purpose of NEPA 'is to compel federal decision makers to consider the environmental consequences of their actions.'" *Atlanta Coalition on the Transportation Crisis, Inc. v. Atlanta Regional Commission*, 599 F.2d 1333 (5th Cir. 1979) *citing* McGarity, *The Courts, the Agencies, and NEPA Threshold Issues*, 55 Tex. L.Rev. 801, 804 (1977). Congress did not intend NEPA to apply to state, local, or private actions hence, the statute speaks only to "federal agencies" and requires impact statements only as to "major federal actions. *Id.* In other words, this

14

provision concerns the requirement of a federal agency to issue an environmental impact statement. The Court is at a loss as to how this statute would provide jurisdiction over any defendant save a United States agency and furthermore, has not been enlightened by plaintiffs' pleadings how this statute was violated. There are no allegations that an Environmental Impact Statement was not rendered. Accordingly, this allegation shall be dismissed.

### f.    The Toxic Substances Control Act ("TOSCA"), 15 U.S.C. § 2601, *et seq.*

This statute is designed to regulate the manufacture, distribution, sale, use and disposal of chemical substances which present an unreasonable risk of injury to health or environment. *Cooper*, at *6 *citing* 15 U.S.C. § 2605. Again, the 60-day notice is applicable to this statute. As stated in *Cooper*:

> Additionally, the citizen-suit provision of TOSCA only permits suits against any person "who is alleged to be in violation" of the Act. Consistent with the Supreme Court's interpretation of that phrase in *Gwaltney*, 108 S. Ct. 376, this action-one for "wholly past" violations–may not be maintained. *See Brewer v. Raven*, 680 F. Supp. 1176, 1184 (M.D.Tenn. 1988) (relief available only for "ongoing violations of TOSCA).

*Id.* Accordingly, the allegations based on TOSCA shall be dismissed.

### g.    The Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq.*

This statute governs "the disposal of solid waste" and does allow actions for past violations. The statute authorizes suit against "any past or present generator, past or present transporter, past or present owner or operator of a treatment, storage or disposal facility who has contributed or is contributing to the past or present handling, storage, treatment, transportation or disposal or any

solid or hazardous waste which may present an imminent and substantial endangerment to health or environment." 42 U.S.C. § 6972(a)(1)(B). The case at bar concerns the damages caused by the preparation for and the aftermath of Hurricane Katrina. This statute simply does not address the kinds of harm alleged in this suit and shall be dismissed.

### h.   Louisiana Environmental Laws

Plaintiffs invoke as a basis for jurisdiction "The Louisiana Environmental Quality Act, the Louisiana Air Control Act, The Louisiana Water Control Law and the Louisiana Oil Spill Prevention and Response Act" without further explication or citation. The Court has been provided no specific factual allegations or arguments as to how these laws were violated. Louisiana statutes would not provide federal jurisdiction unless the Court would exercise its supplemental jurisdiction under 28 U.S.C. § 1367. The Court will address supplemental jurisdiction at the conclusion of this opinion.

The Court must remind counsel that as a practicing attorney, this kind of buckshot pleading will not be permitted. Counsel is hereby put on notice that any further barrage of meaningless and vituperative rantings and attachment of newspaper clippings to pleadings as "proof" is a waste of this Court's resources. This Court takes its duty to adjudicate the claims of plaintiffs against defendants arising out of Hurricane Katrina as a solemn and weighty duty; pleadings filed in the nature of those by counsel in *O'Dwyer* belie the seriousness of this matter and frankly make a mockery of the Court's duties to justice and application of the law.

Thus, what remains as a viable basis for federal question jurisdiction with respect to the parties under consideration in this opinion are the allegations of constitutional violations brought against the state actors pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, 1985, 1986

and 1988. Thus, the Court will now discuss in the context of Fed. R. Civ. P. 12(b)(6), the various motions brought by the City of New Orleans, Ray Nagin both individually and in his official capacity, Eddie Compass, both individually and in his official capacity as Chief of Police, Kimberly Williamson Butler, individually and in her official capacity as Clerk of Court for the Orleans Parish Criminal District Court, Kathleen Blanco, both individually and in her official capacity as Governor of the State of Louisiana, Eddie Jordan, both individually and in his official capacity as District Attorney for the City of New Orleans based on plaintiffs' allegations concerning constitutional violations under the constitutional amendments noted above and the civil rights statutes noted. The sufficiency of those allegations are suspect and will be addressed in the context of the specific motions filed.

Issues concerning jurisdiction and the sufficiency of the allegations against United States of America, (including the Army Corps of Engineers ("the Corps") and the Federal Emergency Management Agency ("FEMA"), requires a separate analysis and will be addressed hereafter.

The Court will now address the City defendants' Motion to Dismiss.

17

**MOTION TO DISMISS FOR WANT OF STANDING OR, ALTERNATIVELY PURSUANT TO FRCP 12(B)(1), FRCP 12(B)(6) AND FRCP 11(B)(2) WITH INCORPORATED MEMORANDUM IN SUPPORT THEREOF FILED BY THE CITY OF NEW ORLEANS, THE HONORABLE C. RAY NAGIN, MAYOR, AND FORMER SUPERINTENDENT OF POLICE EDWIN COMPASS, III**

City Defendants, the City of New Orleans ("the City"), the Honorable C. Ray Nagin ("Mayor Nagin"), and former Superintendent of Police Edwin Compass, III contend that plaintiffs have failed to properly establish standing before the Court. Second, movers maintain that the complaints fail to aver the basis for the Court's jurisdiction or allege a non-frivolous case or controversy that arises out of federal law, and therefore ought to be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). In the alternative, the movers maintain that plaintiffs have failed to state a cause of action as they have failed to allege that they were deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States making dismissal pursuant to Fed. R. Civ. P. 12(b)(6) proper. Finally, and in the alternative, they maintain that the plaintiffs' claims are legally frivolous and therefore may be dismissed for failure to comply with Fed. R. Civ. P. 11(b)(2) in that plaintiffs do not supply the Court with a basis for subject matter jurisdiction and the allegations are otherwise without legal merit.

Plaintiffs contend that these defendants are liable to them based on "a number of legal theories against public officials" including incompetence, violation of duty and statute, negligence, gross negligence, malfeasance, misfeasance, non-feasance, and intentional infliction of emotional distress. Plaintiffs further contend that the "torts errors and omissions committed by [these] defendants satisfy the requirements for excepting from immunity from liability because of malicious, intentional, willful, outrageous, reckless or flagrant misconduct. La. Rev. Stat.

9:2798.1(C)(2).  In addition, plaintiffs contend that the defendants violated a criminal statute, La.

Rev. Stat. 14:134 concerning malfeasance in office.[20]


**Section 1983**

As the Court has dispensed with the Rule 12(b)(1) analysis, it will now squarely address the

issue of whether plaintiffs have failed to state a claim under federal civil rights law against the City

of New Orleans, Ray Nagin both individually and in his official capacity, Eddie Compass, both

individually and in his official capacity as Chief of Police, arise under 42 U.S.C. § 1983 which

provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or any person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  This statute is considered the primary vehicle for brining constitutional claims

against local governments and officials.

As this Court stated in *Vanderbrook v. Peck*, 2004 WL 944518 (E.D.La. April 28, 2004):

> There are two essential elements to a § 1983 claim: (1) that the conduct complained
> of was committed by a person acting under color of state law; and (2) that the
> conduct deprived a person of rights, privileges or immunities secured by the
> Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 1010
> S. Ct. 1908, 68 L.Ed. 2d 420 (1981). Furthermore, there must be " direct causal link
> between the alleged constitutional deprivations and the official conduct by

---

[20]Counsel for plaintiffs filed a pleading on March 15, 2006 in response to a Supplemental Memorandum
filed by the City Defendants.  In this memorandum, counsel describes the details of Michael Cormick's forced
evacuation and the alleged arrest of counsel himself.  He then contends that because "boilerplate" arguments were
used in that Supplemental Memorandum that came from another civil action, that he can do no better than to
incorporate by reference the constitutional arguments made by counsel in that other action and "respectfully directs"
the Court to those pleadings.  Such arguments and incorporation by reference to pleadings filed in another case is
meaningless, unacceptable and contrary to the rules and workings of this Court.

defendants causing the deprivations." *Bieros v. Nicola et al*, 839 F. Supp. 332 (E.D.Pa. 1993). A § 1983 plaintiff must allege the particular facts of the defendant's conduct in its complaint. *Jacquez*, 801 F.2d at 793; *Rodriguez v. Avita*, 871 F.2d 552, 554 (5ᵗʰ Cir. 1989); *Mills v. Criminal District Court*, 837 F.2d 677, 678 (5ᵗʰ Cir. 1988). Conclusory allegations are insufficient for civil rights cases. *Shultea v. Wood*, 47 F.3d 1427, 1433 (5ᵗʰ Cir. 1995).

*Id.* at *3. Indeed, a plaintiff's complaint is insufficient if it merely contains a litany of conclusory allegations; the causes of action must be pleaded with a certain level of specificity. *Causey v. Parish of Tangipahoa*, 167 F.Supp.2d 898, 903-04 (E.D.La. 2001).

In *Evans v. Department of Housing and Urban Development*, 2004 WL 179193(E.D.La. Jan. 28, 2004), this Court explained that in order to establish a prima facie case under § 1983, plaintiffs must allege either a constitutional violation or a violation of a federal statutory right. *See* 1 Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983*, at 56 (3d ed. 1991).

> If the plaintiff alleges a violation of a constitutional right, the plaintiff must prove that the defendant's conduct was the cause of the constitutional deprivation. The plaintiff may allege violation of the Fourteenth Amendment, procedural due process or equal protection, as well as other violations of provisions in the Bill of Rights that apply to the states. *Id.* at 56-57. If the plaintiff alleges a violation of a federal statutory right, he or she must also prove that the defendant's conduct was the cause of this statutory deprivation. *Id* at 57. Regardless of whether a plaintiff alleges a constitutional or statutory deprivation, or both, he or she must demonstrate that the challenged conduct was undertaken "under color of state law;" meaning that the individuals acted in an official capacity and in a manner authorized by state law. *Price v. Housing Authority of New Orleans*, 2002 WL 31308421 at *4 (E.D.La. Oct.11, 2002).

As to the suit against Mayor Nagin in his official capacity and Police Chief Compass in his official capacity, a suit against a government official in his official capacity is treated as a suit against the entity-here the City of New Orleans. *See Lee v. Morial*, 2000 WL 726882 at *2 (E.D.La. June 2, 2000). Thus, the analysis is the same for the City, the Mayor and Police Chief Compass. Furthermore, no liability exists for governmental entities based on a vicarious liability or a

respondeat superior theory. *Price v. Housing Authority of New Orleans*, 2002 WL 179193 (E.D.La.

Oct. 11, 2002) Instead the municipality will be liable only when an official policy or custom inflicts

the injury of which the plaintiff complains. *Evans* at *6.

Using plaintiffs' "counts" as set out above, the following allegations have been made as the

basis for plaintiffs claims:

> (1)     failure to order timely evacuation of critical care patients in hospitals;
>
> (2)     failure to ensure competent design, construction, maintenance and inspection of the levee systems for the Industrial Canal, the London Avenue Canal and the Seventeenth Street Canal;
>
> (3)     failure to timely stop the flooding in New Orleans;
>
> (4)     failure to secure the water supply to Orleans Parish causing increased fires;
>
> (5)     failure to protect the public from "urban terrorists";
>
> (6)     failure to safeguard the identification records and criminal records of convicted sex offenders, including rapists and pedophiles, and "injected" these individuals into the refugee population at the Louisiana Superdome and convention Center;
>
> (7)     failure to safeguard the contents of the evidence room at Criminal District Court;
>
> (8)     failure to safeguard the names of identifying prisoners who were in Orleans Parish prison; and
>
> (9)     failure to prevent the pollution of the environment of the territory.

Simply put, none of these allegations of "wrong-doing" constitute a violation of the United States

Constitution, its Amendments or any federal statute.[21]  Plaintiffs have not  identified or articulated

---

[21]In one of the innumerable supplemental memoranda filed by counsel, he opines that one Michael Cormick:

> . . .was forcibly removed from his home in Uptown New Orleans, at gunpoint, by members of the Louisiana National Guard, on Tuesday or Wednesday, August 30 or 31, 2005. Mr. Cormick had survived the storm with his person and his home intact, had plenty of food and water, and had no need for anyone's assistance, nor did he request any assistance. Nevertheless, he was forcibly removed from his home and transported out of the City, entirely against his will.
>
> At 0005 hours on Tuesday September 20, 2005, within 12-hours of having filed this

with specificity the particular plaintiffs allegedly harmed or the constitutional rights impeded by the actions outlined in the various "counts" of the suit. Furthermore, they have not alleged with any specificity that the defendants had an official policy or custom which inflicted injury on any specific plaintiff. Thus, plaintiffs have failed to state a cause of action against the City of New Orleans, Mayor Nagin in his official capacity and Police Chief Compass in his official capacity, and the Motion to Dismiss will be granted in this regard.

### Mayor Nagin and Police Chief Compass in their Individual Capacities

Plaintiffs also alleged those same defalcations against Mayor Nagin and Police Chief Compass in their individual capacity. "Personal capacity suits which seek to impose individual liability upon a government officer for actions taken under color of state law are recognized under § 1983." *Toga Society, Inc. v. Lee*, 2004 WL 2357733 (E.D.La. Oct. 20, 2004); *Hafer v. Meloi*, 502 U.S. 21, 25 (1991).

As noted by this Court in *Toga*:

> A state official can be sued in his individual capacity and be held personally liable under § 1983 if it can be shown that the official, acting under color of state law, caused the deprivation of a federal right. *Hafer*, 502 at 25-31. However, such persons are entitled to assert personal immunity defenses such as objectively reasonable reliance on existing law or qualified immunity.

---

lawsuit, the undersigned was a victim of criminal trespass on his property by members of the Louisiana State Police, who handcuffed the undersigned with his hands behind his back, and threw him on the ground, causing injuries. During this "encounter", repeated requests for information, such as "Am I under arrest"; "What are the nature of the charges against me, if any?" and "What is going on here", were met by silence or instructions to "Shut the ____ up". Thereafter the Louisiana State Police kidnaped the undersigned and turned custody over to employees of the Louisiana Department of Corrections,. . . .

Doc. 157 in *O'Dwyer v. United States*, C.A. No. 05-4181. These allegations obviously do not implicate any of the City defendants considered in this section of this opinion; rather, it would appear to be against the Louisiana National Guard and the Louisiana State Police, neither of which have been named as defendants.

*Id.* at *1.

To determine liability, a court must "determine whether plaintiff has alleged the violation of a constitutional right.        Second, if the plaintiff has alleged a constitutional violation, the court must decide if the conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred." *Glen v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). While the issue of whether a constitutional violation has been alleged is considered to be preliminary, a court may pretermit that issue and determine whether the alleged violations were ones clearly established at the time of the occurrence. *Ebanks v. Stalder*, 1995 WL 769726 (E.D.La. Dec. 27, 1995) *citing Siegert v. Gilley*, 500 U.S. 226 (1991). "A right is 'clearly established' where "the contours of a right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Ebanks*, at *6 *citing White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992) (citations omitted).

In the case as bar, the Court has already noted its belief that no constitutional violation has been alleged. Furthermore, taking the *Seigert* approach, plaintiffs fail to demonstrate how any of the conduct alleged was not objectively reasonable in light of clearly established law at the time the challenged conduct occurred. The City Defendants were faced with a natural disaster of catastrophic proportions. The nine enumerated "defalcations" do not constitute conduct that reasonable public officials would reasonable conceive violated a clearly establish constitutional right. Only if these

action cross this threshold would this suit survive qualified immunity against the Mayor and the Police Chief.[22]

One other dimension of the original complaint bears discussion. At page 9, Article II(E), plaintiffs contend that they sustained mental suffering and emotional distress as a result of the "government's *ultra vires* acts such as claimed 'mandatory evacuation due to exigent circumstances' . . . and deprivation of food and water to hungry and thirsty so-called "hold-outs" who remained in the City because the U.S. Constitution give them the right to bear arms and protect their property at their own risk...." Also as plaintiffs have cited to the Fifth Amendment, the Court must consider whether these allegations would state a claim for a violation for a person's right to life, liberty or property.

To begin, the allegations as to which of the plaintiffs herein were forced to evacuate and who were not are absent in the actual complaints and amending complaints.[23] As to the issue of whether plaintiffs' rights "to bear arms and protect their property" were violated, La. Rev. Stat. 29:277(D) provides that a local disaster or emergency may be declared by the parish president or in this instance, the Mayor. Once that power is utilized, he is empowered under this Louisiana statute to "direct and compel the evacuation of all or part of the population from any stricken or threatened area withing the boundaries of the parish if he deems this action necessary for mitigation, response

---

[22]Furthermore, the Court notes that in order to survive a qualified immunity defense, a plaintiff must articulate specific conduct and action giving rise to a constitutional violation. *Mahrous v. O'Brien*, 1998 WL 166189, *1-2 (E.D.La. April 8, 1998), *citing Shultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir.1995). While *Shultea* normally requires a court to allow plaintiffs to respond to the allegations of qualified immunity pursuant to Fed.R.Civ.P. 7(a), the Court finds that considering the eleven supplemental and amending complaints and the numerous oppositions and supplemental oppositions filed in response to this and the other motions, the Court will not order nor allow a *Shultea* response to be filed with respect to any of the motions filed herein.

[23]Mr. Cormick's and Mr. O'Dwyer's allegations are not contained in the pleadings and again do not implicate the defendants under consideration herein as both were "harmed" by state police and/or the National Guard.

or recovery measure." La. Rev. Stat. 29:277(F)(5). This act does not require a predeprivation hearing and the law in general does not require one when the state or here, the municipality, acts to avert an imminent catastrophe. Obviously, the Mayor could have believed he had police powers to protect the public safety by ordering the evacuation. Thus, a reasonable official in his position would not understand that what he was doing violated a right. Assuming he did violate a constitutional right, which the Court is unprepared to find, the City defendants would be entitled to qualified immunity. *Miller v. Campbell County Wyoming*, 722 F.Supp. 687, 696 (D. Wyoming 1989); *Ebanks,* at *6 *citing White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992) (citations omitted).

As to this second issue–the Fifth Amendment–the court in *Massachusetts Coalition of Citizens with Disabilities v. Civil Defense Agency and Office of Emergency Preparedness of the Commonwealth of Mass.,* 649 F.2d 71 (1st Cir. 1981) found that the Due Process Clause does not provide the right that an evacuation plan should guarantee the safety of all residents. "That clause provides that the states may not deprive their citizens of life, liberty, or property without due process of law." In enacting an evacuation plan and in implementing that plan, Mayor Nagin and Police Chief Compass did not deprive any person of life liberty or property, rather they attempted to do the opposite–provide some degree of protection against a threat to life the source of which threat was not the state. *Id.* at 78. As such, the claims under the Fifth Amendment fail as well.

Accordingly, pursuant to the City Defendants' motion, all constitutional claims brought pursuant to § 1983 and its progeny will be dismissed. Thus, the only claims remaining against these defendants are the multitudinous state law claims over which the Court might have jurisdiction under its supplemental jurisdiction which will be addressed after the other substantive motions are considered.

25

**MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6) FILED BY
KIMBERLY WILLIAMSON BUTLER, IN HER INDIVIDUAL CAPACITY
AND AMENDED MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)
FILED BY KIMBERLY WILLIAMSON BUTLER, IN HER INDIVIDUAL
AND OFFICIAL CAPACITY**

Kimberly Williamson Butler ("Butler") moves the Court for dismissal of those claims

pertaining to her individually and in her official capacity as Clerk of Criminal District Court, Parish

of Orleans, State of Louisiana.  Plaintiffs have noted that Counts VI, VII and VIII contain the

allegations made against her. Thus, the Court must examine if a claim has been stated under federal

law for:

> (6)     failure to safeguard the identification records and criminal records of convicted sex
> offenders, including rapists and pedophiles, and injecting these individual into the
> refugees at the Louisiana Superdome and Convention Center;
>
> (7)     failure to safeguard the contents of the evidence room at Criminal District Court; and
>
> (8)     failure to safeguard the names of (sic) identifying prisoners who were in Orleans
> Parish.

Plaintiffs[24] contend that these actions constitute criminal malfeasance, over which this Court

neither has jurisdiction, nor about which plaintiffs have any right to prosecute.  In addition plaintiffs

seek civil damages for Butler's "willful failure to fulfill the duties of her office by failing to

safeguard the contents of the evidence room at Criminal District Court, and criminal records, as

---

[24]Again, plaintiffs' memorandum in opposition to this motion contains statements like "It is truly
remarkable that elected and appointed public officials and the government bodies which they have responsibility for
operating competently seem to think that they bear absolutely no legal responsibility to anyone for their criminal
malfeasance and willful misconduct in discharging the duties of their offices."  Such editorializing is pointless and
unprofessional, considering that in a 12 page brief, the Court is graced with precious little law citation other than a
page of citation from Black's law dictionary, citation to a criminal statute, and the self-same litany of jurisdictional
bases including the Clean Water Act and the Clean Air Act with respect to the Clerk of Criminal Court.  At page 11
of this filing, counsel cites Judge Porteous' denial of a Motion to Dismiss in *Berthelot v. Boh Brothers,* C.A. No. 05-
4182 rendered with respect to James Construction Group, L.L.C. Counsel fails to comprehend that with respect to
federal claims brought pursuant to civil rights laws, constitutional violations must be stated in non-conclusory form.

26

Hurricane KATRINA approached the New Orleans metropolitan area." Plaintiffs' Memorandum in Opposition to Motion to Dismiss Filed on Behalf of the Clerk of Criminal Court at 5.

Using the same analysis the Court employed with respect to the City Defendants, the Court finds that plaintiffs' have failed to state a cause of action against Butler. As to a cause of action against her in her official capacity, these allegations do not constitute constitutional wrongs. As to a cause of action against her in her individual capacity, even if there were a constitutional violation, her conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred. No one had ever experienced the flooding that occurred as a result of Katrina and Butler's conduct, while unfortunate, cannot be found to be actionable. As with any politician, in the event that the populace believes that an official did not execute his or her duties properly, the populace votes that individual out of office. That outcome is that which occurred here and no liability will lie in this regard. Thus, the Motion to Dismiss will be granted in this regard and the issue of supplemental jurisdiction over these claims will be addressed at the end of this opinion.

### MOTION TO DISMISS DEFENDANT GOVERNOR KATHLEEN BLANCO AND THE STATE OF LOUISIANA[25]

Governor Kathleen Blanco, individually and in her official capacity as the Governor of the State of Louisiana and the State of Louisiana have moved for the dismissal of this matter with respect to the alleged violations of 42 U.S.C. § 1983. In plaintiffs' opposition to these motions, they

---

[25]While the Department of Transportation for the State of Louisiana ("DOTD") was added in the Sixth Amending and Supplemental Complaint, the State of Louisiana did not include them in this particular motion, except in a reply memorandum. There is a separately filed and noticed motion concerning the DOTD (Doc. 321). As a result, the Court will forego an analysis with respect to that entity until it addresses that particular motion.

cite to Counts 1, 2, 3, 5, and 9 as being applicable to the Governor and the State. The Court finds that the motions to dismiss have merit.

### Sovereign Immunity

The Court cannot entertain jurisdiction over the Governor of the State of Louisiana in her official capacity and the State of Louisiana as they are protected from suit by the doctrine of sovereign immunity as found in the Eleventh Amendment of the Constitution.[26] By statute, the State of Louisiana has not waived its sovereign immunity for suits brought in federal court based on violations of "constitutional, civil and human rights." *Richardson v. Southern University*, 118 F.3d 450, 453 (5th Cir. 1997); La. Rev. Stat. 13:5106(A).[27] Thus, the Eleventh Amendment bars suit against a state entity such as the Governor in her official capacity and the State of Louisiana itself. As such, the claims against them shall be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### Qualified Immunity

Likewise, for the same reasons noted with respect to the City defendants, the Court finds that Governor Blanco in her individual capacity is entitled to qualified immunity as concerns any cause of action brought pursuant to 28 U.S.C. § 1983. Clearly, Governor Blanco's actions were objectively reasonable in light of clearly established law at the time these alleged violations occurred. She had to confront a catastrophic occurrence unlike anything experienced by any state official before,

---

[26]"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

[27]"No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court." La. Rev. Stat. 13:5106(A).

except perhaps the Great Flood of 1927. Thus, the Motion to Dismiss all causes of action brought

pursuant to § 1983 shall be granted. Again, as to the remaining state law claims, these allegations

will be addressed *infra.*


### MOTION TO DISMISS ON BEHALF OF EDDIE JORDAN, INDIVIDUALLY AND IN HIS ELECTED CAPACITY AS THE DISTRICT ATTORNEY FOR THE PARISH OF ORLEANS, STATE OF LOUISIANA

Eddie Jordan, individually and in his elected capacity as the District Attorney for the Parish

of Orleans, State of Louisiana seeks dismissal for lack of jurisdiction, lack of standing and failure

to state a cause of action for which relief can be granted. For the same reasons as set forth with

respect to the City Defendants, the Motion to Dismiss shall be granted in so far as the Court lacks

subject matter jurisdiction as set forth above and as to the § 1983 claims, plaintiffs have failed to

state a claim as required under Fed. R. Civ. P. 12(b)(6). It appears that no memorandum in

opposition was filed in this matter, and that no supplemental briefing dealing with the Eleventh

Amended Complaint was filed. Nonetheless, the Court will dispose of the federal causes of action

in this manner and will discuss supplemental jurisdiction over the state law claims *infra.*


### UNITED STATES' MOTION TO DISMISS

The United States has moved pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) to dismiss

plaintiffs' action for lack of subject matter jurisdiction. The Court has reviewed the pleadings and

exhibits and finds the motion to have merit.

In these proceedings, as previously noted, plaintiffs have amended their complaint eleven

times. Leave to file the twelfth amendment was denied. Plaintiffs have conclusorily alleged a

panoply of federal statutes most of which have been dismissed by this Court in this opinion. In their initial memorandum, plaintiffs' primary basis for jurisdiction was the Suits in Admiralty Act, ("SAA"), 46 U.S..C. § 742 based on the anticipated filing of a Twelfth Supplemental and Amending Complaint. Since the Twelfth Supplemental and Amending Complaint was not allowed to be filed, this jurisdictional allegation is not before the Court. The SAA, if it were applicable here, does not require the exhaustion of administrative remedies before filing suit; however, since it is not before the Court, the Court will not address it. The Court will address this alleged basis for jurisdiction in the Motion to Dismiss filed in *Maureen O'Dwyer v. The United States of America*, C.A. No. 06-1885 (Doc. 662 in these consolidated proceedings).[28] Thus, the remaining claims are fundamentally tort claims which require a determination whether plaintiffs have exhausted their administrative remedies under the Federal Tort Claim, 28 U.S.C. § 1346(b), 2671 *et seq.* ("FTCA").

It must be noted that although the allegations of the primary complaint are not discrete as to the United States, clearly plaintiffs are alleging that various offenses and quasi-offenses have been committed by the United States Government through the acts or defalcations of the Corps and/or FEMA. It should be further noted that this action is not a *Bivens*[29] claim, as no individual federal agents or employees have been named. *Lawrence v. St. Bernard Police Dept.*, 2000 WL 1182615 (E.D.La. Aug. 18, 2000).

Under the FTCA, 28 U.S.C. § 2675(a), an action may not be instituted against the United States unless the claimant first presents the claim to the appropriate federal agency and the agency

---

[28] The Court would note nonetheless that it appears that the SAA is not applicable to these proceedings for the well-stated reasons set forth by Judge Berrigan in *In re Matter of the Complaint of Ingram Barge Co.*, 2006 WL 1539787 (E.D.La. May 25, 2006).

[29] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971).

30

has denied the claim in writing. If the claim is not finally disposed of within six months, the claimant may treat the claim as denied and file suit in federal court. The United States claims that plaintiffs have not complied with these jurisdictional prerequisites.

Plaintiffs have made the following submissions to the United States:

1.   On October 12, 2005, plaintiffs submitted a handwritten letter to the United States Army Corps of Engineers with copies of plaintiffs' complaints in C. A. Nos. 05-4181 and 05-4237.

2.   On January 10, 2006, plaintiffs sent a Form SF-95 to the United States Army Corps of Engineers, New Orleans District, Office of Counsel. This was apparently received by the agency on January 24, 2006. (Motion to Dismiss, Doc. 108, Aff. of Angela Gene Drinkwitz, ¶3) (hereinafter "Aff. of Drinkwitz"). The Court has examined this form, and it appears to be Mr. O'Dwyer's personal claim and an attempt to make a claim on behalf of the other putative class members.

3.   January 24, 2006, the Corps also received a supplemental claim submitted on a Form SF-95, with a cover letter signed by Mr. O'Dwyer dated January 16, 2006. (Aff. of Drinkwitz, ¶ 4).

4.   January 31, 2006, the Corps received another SF-95 purporting to be an administrative claim for Mrs. Maureen O'Dwyer.  The claim was signed by Mr. O'Dwyer as her legal representative.  No power of attorney, contract or other document was forwarded to signify Mr. O'Dwyer's legal representation of Mrs. O'Dwyer (Aff. of Drinkwitz, ¶ 5).

This suit was filed on September 19, 2005, the United States Army Corps of Engineers being made defendant therein. On October 7, 2005, in the Second Supplemental and Amending Complaint, FEMA was added. It does not appear that any administrative claim has been lodged against FEMA to date.

Only two of the named plaintiffs' claims as outlined above could be regarded as possibly sufficient to place the Corps on notice as detailed in the statute and the Code of Federal Regulations. Specifically that would be the claims by Mr. O'Dwyer, individually, and that of his sister (without any contract, power of attorney, etc.). Any purported attempt to make a claim by any other plaintiff named in this action under the FTCA is woefully deficient. Thus, the Court pretermits any discussion as to whether the administrative prerequisites of suit can be satisfied by the proper claims of the named class representative, as oppose to each individual that might comprise the putative class.[30]

In *McNeil v. United States*, 508 U.S. 106, 133 S. Ct. 1980 (1993), the Supreme Court held that a suit filed before the six-month interval must be dismissed even after the six-month period had run. The Court stated:

> Every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions. Although the burden may be slight in an individual case, the statute governs the processing of a vast multitude of claims. The interest in orderly administration of a body of litigation is best served by adherence to the straight - forward statutory command.

*Id.* at 112, 1984.

This case has involved a plethora of pleadings and incidental motions, but it has not made substantial progress. Therefore the Court must grant the United States' motion and dismiss plaintiffs'

---

[30] *In re Agent Orange Prod. Liab. Litig.*, 8181 F.2d 194, 198 (2nd Cir. 1984).

suit without prejudice as against the United States as premature both as regards the Corps and FEMA. This procedural dictate is perhaps not the most practical and efficient method of administering this behemoth before the Court, but it is what the law requires. Plaintiff(s) must re-file this suit as against the United State, assuming that each has given appropriate notice to the United States under the FTCA as set for in the statute and the regulations. Plaintiffs must bear in mind, that at most, only two notices as noted above, might meet those prerequisites.[31]

## SUPPLEMENTAL JURISDICTION

At this juncture, there remains before the Court in this matter all of the state law claims alleged against all the moving parties herein. As noted above, the Court finds that there is no subject matter jurisdiction for the majority of the claims alleged, and furthermore, as to the only extent federal jurisdictional claims–that is the civil rights claims alleged, plaintiffs have failed to state a claim against any of the moving defendants. Thus, as to the remaining state law claims, the court has jurisdiction under 28 U.S.C. § 1367(a), which allows a federal court to exercise supplemental jurisdiction over all other claims that are so related to claims in the action having original jurisdiction that they form the same case or controversy." 28 U.S.C. 1367(a). Because the Court has dismissed plaintiffs' federal based claims, the remaining state law claims have no independent jurisdictional basis. Thus, as provided by 28 U.S.C. § 1367(c), a court, in its discretion, may decline to exercise supplemental jurisdiction over a claim when it has "dismissed all claims over which it has original jurisdiction. This Court hereby exercises its discretion and declines to exercise

---

[31]Clearly the provisions of the Tucker Act, 28 U.S.C. § 1346(a)(2) do not apply because Mr. O'Dwyer seeks $2 million and his sister seeks $2,950,000.00.

33

supplemental jurisdiction over any of the state law claims brought against the moving defendants. Accordingly,

**IT IS ORDERED** that the Motion to Dismiss for Want of Standing or, Alternatively Pursuant to FRCP 12(b)(1), FRCP 12(b)(6) and FRCP 11(b)(2) with Incorporated Memorandum in Support Thereof filed by the City of New Orleans, the Honorable C. Ray Nagin, Mayor, and former Superintendent of Police Edwin Compass, III (Doc. 104) is **GRANTED** dismissing for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) all federal claims alleged except with respect to the constitutional or civil rights claims, dismissing with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) all claims brought pursuant to 42 U.S.C. § 1983, *et seq.*, and dismissing without prejudice all state law claims as this Court has declined to exercise its supplemental jurisdiction thereto.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) filed by Kimberly Williamson Butler, in her individual capacity (Doc. 105) and the Amended Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) filed by Kimberly Williamson Butler, in her individual and official capacity (Doc. 110) is **GRANTED** dismissing for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) all federal claims alleged except with respect to the constitutional or civil rights claims, dismissing with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) all claims brought pursuant to 42 U.S.C. § 1983, *et seq.*, and dismissing without prejudice all state law claims as this Court has declined to exercise its supplemental jurisdiction thereto.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Defendant Governor Kathleen Blanco (Doc. 106) and the Motion to Dismiss Defendant State of Louisiana (Doc. 107) is

34

**GRANTED** dismissing for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) all federal claims alleged except with respect to the constitutional or civil rights claims, dismissing with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) all claims brought pursuant to 42 U.S.C. § 1983, *et seq.*, and dismissing without prejudice all state law claims as this Court has declined to exercise its supplemental jurisdiction thereto.

**IT IS FURTHER ORDERED** that the Motion to Dismiss on Behalf of Eddie Jordan, Individually and in his Elected Capacity as the District Attorney for the Parish of Orleans, State of Louisiana (Doc.109) is **GRANTED** dismissing for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) all federal claims alleged except with respect to the constitutional or civil rights claims, dismissing with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) all claims brought pursuant to 42 U.S.C. § 1983, *et seq.*, and dismissing without prejudice all state law claims as this Court has declined to exercise its supplemental jurisdiction thereto.

**IT IS FURTHER ORDERED** that the United States' Motion to Dismiss (Doc. 108) is **GRANTED** dismissing these claims without prejudice as prematurely brought.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Aaron Broussard, individually and in his official capacity as President for the Parish of Jefferson and Jefferson Parish is **MOOT** as these defendants are no longer defendants in this suit.

**IT IS FURTHER ORDERED** finding no just cause for delay, pursuant to Fed. R. Civ. P. 54(b), judgment shall be entered in favor of the City of New Orleans, Ray Nagin both individually and in his official capacity, Eddie Compass, both individually and in his official capacity as Chief of Police, Kimberly Williamson Butler, individually and in her official capacity as Clerk of Court for the Orleans Parish Criminal District Court,  Kathleen Blanco, both individually and in her

official capacity as Governor of the State of Louisiana, Eddie Jordan, both individually and in his

official capacity as District Attorney for the City of New Orleans and the United States and against

plaintiffs dismissing their claims as set forth herein.

New Orleans, Louisiana, this _19th_ day of July, 2006.

 

 

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE

--- So.2d ----, 2006 WL 1669359 (La.), 2006-0426 (La. 6/16/06)

Supreme Court of Louisiana.
In re Richard B. COOK.
No. 2006-B-0426.
June 16, 2006.

**Background:** Office of **Disciplinary Counsel** initiated attorney **disciplinary** proceeding.

**Holdings:** The Supreme Court held that:
(1) attorney violated rules of professional conduct, and
(2) suspension for three years, with all but 18 months deferred, was appropriate sanction.

Suspension ordered.

[1] KeyCite Notes 

←→45 Attorney and Client
  ←→45I The Office of Attorney
    ←→45I(C) Discipline
      ←→45k37 Grounds for Discipline
        ←→45k42 k. Deception of Court or Obstruction of Administration of Justice. Most Cited Cases

Attorney who filed repetitive and unwarranted pleadings in ongoing civil rights litigation and made frivolous and harassing claims for discovery against third persons not involved in the litigation violated rules of professional conduct regarding meritorious claims and contentions, and respect for rights of third persons, and prohibiting attorney from engaging in conduct prejudicial to the administration of justice. State Bar Articles of Incorporation, Art. 16, Rules of Prof.Conduct, Rules 3.1, 4.4, 8.4(d), LSA'R.S. foll. 37:222.

[2] KeyCite Notes 

←→45 Attorney and Client
  ←→45I The Office of Attorney
    ←→45I(C) Discipline
      ←→45k47 Proceedings
        ←→45k57 k. Review. Most Cited Cases

In attorney **disciplinary** proceedings, Supreme Court acts as trier of fact and conducts an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.

[3] KeyCite Notes 

←→45 Attorney and Client
  ←→45I The Office of Attorney
    ←→45I(C) Discipline
      ←→45k59.1 Punishment; Disposition
        ←→45k59.13 Suspension
          ←→45k59.13(2) Definite Suspension
            ←→45k59.13(3) k. In General. Most Cited Cases





⇐45 Attorney and Client KeyCite Notes
  ⇐45I The Office of Attorney
    ⇐45I(C) Discipline
      ⇐45k59.1 Punishment; Disposition
        ⇐45k59.17 Probation; Conditional Disposition; Stay
          ⇐45k59.17(1) k. In General. Most Cited Cases

Suspension for three years, with all but 18 months deferred, was appropriate sanction for attorney's misconduct in filing repetitive and unwarranted pleadings in ongoing civil rights litigation and making frivolous and harassing claims for discovery against third persons not involved in the litigation, where aggravating factors included pattern of misconduct and refusal to acknowledge the wrongful nature of conduct, and mitigating factors included the absence of a prior **disciplinary** record, personal or emotional problems, cooperative attitude toward **disciplinary** proceedings, and delay in the **disciplinary** proceedings. State Bar Articles of Incorporation, Art. 16, Rules of Prof.Conduct, Rules 3.1, 4.4, 8.4(d), LSA'R.S. foll. 37:222.


[4] KeyCite Notes

⇐45 Attorney and Client
  ⇐45I The Office of Attorney
    ⇐45I(C) Discipline
      ⇐45k47 Proceedings
        ⇐45k49 k. Nature and Form in General. Most Cited Cases

Attorney **disciplinary** proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.


[5] KeyCite Notes

⇐45 Attorney and Client
  ⇐45I The Office of Attorney
    ⇐45I(C) Discipline
      ⇐45k59.1 Punishment; Disposition
        ⇐45k59.5 Factors Considered
          ⇐45k59.5(1) k. In General. Most Cited Cases

Discipline to be imposed on attorney for misconduct depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.


[6] KeyCite Notes

⇐45 Attorney and Client
  ⇐45I The Office of Attorney
    ⇐45I(C) Discipline
      ⇐45k59.1 Punishment; Disposition
        ⇐45k59.6 k. Presumptive, Baseline, or Preliminary Potential Sanction. Most Cited Cases

Baseline sanction for attorney's misconduct in knowingly violating a duty owed to the legal system, causing significant harm to the federal courts as well as others is suspension.

ATTORNEY **DISCIPLINARY** PROCEEDINGS

PER CURIAM.
**\*1 \*\*1** This **disciplinary** matter arises from formal charges filed by the Office of **Disciplinary Counsel** ("ODC") against respondent, Richard B. Cook, an attorney licensed to practice law in Louisiana.

### UNDERLYING FACTS

In November 1996, respondent began representing the plaintiffs in a civil matter captioned *Evelyn Faye Allen, et al. v. Richard Stalder, et al.*, No. 95-1118 on the docket of the United States District Court for the Western District of Louisiana, Alexandria Division, Judge F.A. Little, Jr. presiding (hereinafter referred to as " *Allen* "). The plaintiffs in *Allen* were a group of female prison inmates who alleged their civil rights were violated as a result of physical and sexual abuse at the hands of their prison guards.

On June 26, 1998, respondent filed a motion in *Allen* in which he implied that the court had improperly never "permitted representative civil rights plaintiffs to proceed as class representatives." He also implied that Judge Little had improperly met with and dissuaded a local attorney from enrolling as co-**counsel** for the plaintiffs.

On December 31, 1998, respondent filed a motion entitled "Plaintiff's Response to the State Defendants' Motion to Dismiss Certain Plaintiffs." In this **\*\*2** motion, respondent stated that if Judge Little granted the defendants' motion, then "the courts in the Western District of Louisiana can be reserved almost entirely for wealthy (predominantly white) litigants, and courts and **counsel** need not be concerned with poor (predominantly black) plaintiffs." He also claimed that Judge Little compounded the "lack of balance" between the plaintiffs' resources and the defendants' resources through his "unwritten orders, his failure to respond to plaintiff motions, [and] his refusal to even place this case on the docket for many months at the outset." Finally, respondent suggested that this case would not end until "either the plaintiffs prevail or the Court concludes that the rape and abuse of inmates by their guards is perfectly OK."

On January 11, 1999, respondent filed a motion in which he requested that the following subjects be discussed at a status conference: 1) the delay in placing the *Allen* case on the docket; 2) reconsideration of the denial of the plaintiffs' class representation; 3) the failure of the court to place one of the plaintiffs' motions on the docket; 4) whether the court has ever authorized class representation in civil rights claims; 5) whether there is a consensus in the court to never allow these types of cases to go forward with class representatives; 6) why Judge Little's unwritten orders have never been put in writing; 7) whether Judge Little met with a local attorney and dissuaded him from enrolling as co-**counsel** for the plaintiffs; 8) whether Judge Little has ever appointed **counsel** to represent an incarcerated person who has complained about conditions of confinement; and 9) whether the court as a whole has ever allowed such a plaintiff to get beyond a defendant's summary judgment or other motion dismissing the complaint.

**\*2** On January 14, 1999, respondent filed a motion to recuse Judge Little. The basis for his motion was his belief that his clients' opportunity for a fair trial was "slipping away" due to Judge Little's conduct in the *Allen* case as well as in the case **\*\*3** of *Vergie Lee Valley v. Rapides Parish School Board*, No. 96-30441 on the docket of the United States District Court for the Western District of Louisiana, Alexandria Division (hereinafter referred to as " *Valley* "). Respondent alleged that one of the attorneys in the *Valley* case was Judge Little's former law partner and the president of an organization that paid for the judge's overseas trip to speak at its conference while the *Valley* case was pending before him. Thereafter, the case was settled in favor of this attorney's client. As such, respondent alleged that "the judge permitted this **counsel's** client to benefit from his judicial function." Furthermore, because of the judge's alleged conduct in *Valley*, respondent argued that the judge "has not maintained the necessary firewall between his personal and his judicial relations and ought not hear Constitutional matters." Regarding the judge's conduct in *Allen*, respondent argued that he acted improperly in denying the plaintiffs' motion for class representation without conducting a hearing, failed to notice one of the plaintiffs' motions for a hearing, and twice issued oral orders without later putting them in writing. Respondent also accused Judge Little of engaging in "lax case management" and having an "indifference to propriety." He also argued that Judge Little "has not met

the judicial requirement of an avoidance of impropriety and the appearance of bias and partiality." Based on these reasons, respondent argued Judge Little should be recused. Judge Little denied the motion to recuse on January 20, 1999, stating that respondent included only vague allegations that did not identify a conflict the judge has with the *Allen* case.

Respondent also filed a complaint against Judge Little with the United States Court of Appeals for the Fifth Circuit based on the *Valley* allegations in his motion to recuse. The Fifth Circuit dismissed the complaint on February 2, 1999, stating "[b]ecause Judge Little was not acting improperly either in presiding over a suit in **4** which his former partner appeared as **counsel**, or in attending the conference, Judge Little is not subject to discipline for the combination of the two."

On February 10, 1999, Judge Little provided detailed reasons for his denial of respondent's motion to recuse. Essentially, Judge Little ruled that the motion to recuse was frivolous and cited the Fifth Circuit's dismissal of respondent's judicial complaint in support of the denial of the motion.

On February 22, 1999, respondent filed a second complaint against Judge Little with the Fifth Circuit based on Judge Little's reference to the Fifth Circuit's dismissal of respondent's first judicial complaint, thereby publishing the fact that respondent was a judicial complainant. The complaint was also based on an allegation that Judge Little had a financial interest in the building housing his former law firm, one of whose partners was representing a party in a case before Judge Little. The Fifth Circuit dismissed this complaint on May 12, 1999.

**\*3** In April 1999, respondent filed a second motion to recuse Judge Little in the *Allen* case. The motion was based on Judge Little making public the fact that respondent had filed a judicial complaint against him with the Fifth Circuit. Judge Little denied the motion on May 6, 1999.

Thereafter, in an attempt to further investigate his allegations regarding Judge Little's improprieties in other cases, including the *Valley* case, respondent sought to take the deposition of Jan Holloway, the former office manager of Judge Little's former law firm, Gold, Weems, Bruser, Sues & Rundell ("Gold"), and its real estate partner, 2001 Odyssey Partnership ("Odyssey"). However, neither Gold nor Odyssey were parties to the *Allen* case; thus, Judge Little quashed the deposition. Respondent also sought to subpoena documents from Gold and Odyssey. Both filed objections to the subpoenas, and United States Magistrate Judge James Kirk, the presiding magistrate in the *Allen* case, quashed the subpoenas in a ruling dated July 28, 1999. **\*5** Moreover, Magistrate Judge Kirk indicated that respondent "persists in what can only be described now as a pattern of harassment in an attempt to influence the district judge."

On February 3, 2000, Judge Little assigned the *Allen* case to Magistrate Judge Kirk for pretrial preparation. In response, respondent filed a motion to reconsider the assignment to Magistrate Judge Kirk, raising the same arguments as raised in the two motions to recuse and the two judicial complaints against Judge Little. Specifically, respondent stated,

the plaintiffs are unwilling to litigate their legal interests before a Court who has received a valuable gratuity from litigators with matters pending in his court. The plaintiffs are also concerned about the Court's fairness, because the Court has improperly published a Judicial Complaint and has identified their **counsel** as Complainant, thus manifesting an inclination to seek to humiliate and coerce their **counsel**.

Respondent then indicated he may "seek extra-judicial supervision to enforce the appropriate canons of behavior" because the Fifth Circuit was "unable or unwilling to supervise the district judges as to ethical matters." Judge Little denied the motion to reconsider on February 28, 2000.

On April 4, 2000, after Judge Little and Magistrate Judge Kirk suggested that respondent's conduct may warrant **sanctions**, respondent filed a motion seeking a hearing on **sanctions**. In the motion, respondent reurged his request that Judge Little be recused. He also claimed that Judge Little improperly quashed Ms. Holloway's deposition and reurged his request to depose her. The motion was referred to Magistrate Judge Kirk, who found the following:

In this case, it appears that plaintiff's attorney's continued attacks are calculated to provoke the district judge in an effort toward forum shopping. Cook's attacks appear to be an attempt to influence the result of this case by threats, intimidation and harassment of the district judge. **\*6** Warnings by the district judge and by the undersigned have not corrected Cook's behavior.

**\*4** Accordingly, Magistrate Judge Kirk ordered that respondent be referred to Judge Little for consideration of contempt proceedings, **sanctions**, and/or referral to the Louisiana Attorney **Disciplinary** Board. He also ordered that the clerk of court stop accepting from respondent any pleadings concerning matters raised in the motions to recuse or concerning Ms. Holloway's deposition. Finally, he ordered respondent to learn the Louisiana Rules of Professional Conduct, the Code of Professionalism, and the Code of Professionalism in the Courts adopted by the Louisiana Supreme

Court and comply with same in his activities in and pleadings submitted to the United States District Court, Western District of Louisiana, Alexandria Division.

On May 31, 2000, Judge Little issued an order adopting Magistrate Judge Kirk's ruling and ordered respondent to show cause why he should not be sanctioned. Judge Little sanctioned respondent on June 30, 2000, ordering him to pay $7,500 to the clerk of court and suspending him from practice before the court until he paid the fine. Respondent paid the fine in August 2000.

Between October 25, 2000 and March 6, 2001, respondent was ordered three times to show cause why he should not be sanctioned for subsequent failures to comply with deadlines and court orders, including orders to cease raising the same issues for which he was previously sanctioned. Pursuant to those show cause orders, respondent was ordered to pay $1,243.75 and $1,621.75 in attorney's fees to the defendants on February 22, 2001, fined $2,000 on February 22, 2001, and fined $4,000 on February 26, 2001.

Also on February 26, 2001, respondent filed a motion to recuse Magistrate Judge Kirk, citing his April 25, 2000 order that respondent not interview an inmate incarcerated in Avoyelles Parish, which order respondent claimed was punishment **7 for having filed a judicial complaint against Judge Little. Magistrate Judge Kirk denied the motion.

Respondent paid the attorney's fees, the $2,000 fine, and the $4,000 fine in March 2001. On March 26, 2001, he filed a pleading in which he apologized to the court, explaining that he recognizes his conduct went "beyond the permissible limits of advocacy." Respondent also filed, under seal, a motion to withdraw as **counsel** of record for the *Allen* plaintiffs. Respondent was dismissed as **counsel** on May 10, 2001.

## DISCIPLINARY PROCEEDINGS

### Formal Charges

On April 28, 2004, the ODC filed one count of formal charges against respondent, alleging that his conduct violated <u>Rules 3.1</u> (meritorious claims and contentions), 4.4 (respect for the rights of third persons), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct. Respondent answered the formal charges, essentially denying the allegations of misconduct.<u>FN1</u>

### Formal Hearing

This matter proceeded to a formal hearing on the merits. Respondent participated in the hearing via telephone.

***5 **8** Both respondent and the ODC introduced documentary evidence at the hearing. The ODC called Patricia Bowers (defense **counsel** in the *Allen* case), <u>FN2</u> Magistrate Judge Kirk, and Rodney Rabalais (defense **counsel** in the *Allen* case) <u>FN3</u> to testify before the committee. Respondent did not testify on his own behalf, nor did the ODC call him to testify.

### Hearing Committee Recommendation

After considering this matter, the hearing committee made factual findings as follows:

The first sign of trouble in the *Allen* case appeared on June 26, 1998 when respondent filed a pleading in which he moved the court to "investigate its own docket and determine whether this Court has ever permitted representative civil rights plaintiffs to proceed as class representatives." In the same pleading, respondent implied that Judge Little had engaged in efforts to dissuade an attorney from enrolling as co-**counsel** for the plaintiffs. Respondent made similar insinuations in his response to a court order dated December 30, 1998.

Respondent then filed a motion to recuse Judge Little, accusing him of partiality in favor of a litigant's attorney who was a member of Judge Little's former law firm and, as president of a legal association, arranged for Judge Little to travel **9 to Italy to address the association's meeting. The motion was denied, and in reasons for denying the motion, Judge Little referred to the fact that respondent filed a judicial complaint against him. Respondent then filed another motion to recuse, alleging that Judge Little violated Rule 15 of the Fifth Circuit's Rules Governing Complaints of Judicial Misconduct or

Disability, which mandates that judicial complaints remain confidential.

Judge Little's relationship with the aforementioned attorney became a topic of intense scrutiny for respondent. On June 29, 1999, Gold objected to respondent's subpoena for the following records: checks made payable to Judge Little from 1984 to the present; checks made payable to Judge Little's wife from 1984 to present; and checks made payable to any party, which might benefit Judge Little, his wife, or any of his relatives. Odyssey objected to an identical subpoena. On July 28, 1999, Magistrate Judge Kirk ruled that the requested records in the subpoenas were irrelevant and the subpoenas themselves were harassing.

On July 13, 1999, respondent filed a request that the above objections be transferred to another court for consideration. On July 16, 1999, respondent deposed Ms. Holloway, questioning her about the same matters that were the subjects of the above subpoenas. However, Ms. Holloway's attorney objected to the taking of the deposition and instructed her not to answer. Thus, during the deposition, the parties called Judge Little to resolve the issue, and Judge Little disallowed any questioning of Ms. Holloway.

In response to Judge Little's February 3, 2000 order assigning the *Allen* case to Magistrate Judge Kirk for pretrial preparation, respondent filed a request to refer the case to another district court because the plaintiffs did not want to litigate their issues before a judge who "received a valuable gratuity from litigators with matters pending in his court" and who "improperly published a Judicial Complaint and has **10** identified their **counsel** as a Complainant, thus manifesting an inclination to seek to humiliate and coerce their **counsel**."

***6** In response to respondent's motions to recuse Judge Little, Magistrate Judge Kirk suggested that their frivolous nature might lead to **sanctions**. The court did not order **sanctions** or order respondent to show cause why he should not be sanctioned. However, on his own motion, respondent sought a hearing on **sanctions**, taking this opportunity to also reiterate his allegations of misconduct against Judge Little and his request to depose Ms. Holloway. In response, Magistrate Judge Kirk listed twenty-eight incidents of respondent's behavior he felt warranted **sanctions**. Respondent reacted to this ruling by reiterating his previous allegations against Judge Little.

Respondent never appealed the denial of his clients' motions to recuse. Instead, he continued to reiterate his allegations against Judge Little and later added allegations against Magistrate Judge Kirk. He also continued to raise the issue of deposing Ms. Holloway. His allegations of misconduct against Judge Little continued up to and including the formal hearing in this matter.

Based on these findings, the hearing committee determined that respondent violated <u>Rules 3.1</u>, <u>4.4</u>, and <u>8.4(d) of the Rules of Professional Conduct</u>. Respondent did not pursue the proper review of Judge Little's rulings through interlocutory appeal. Instead, he continued to pursue the same issues to the point of obsession and in a vexatious manner. Furthermore, despite having notice that Gold and Odyssey, who were not parties to the *Allen* suit, objected to his subpoenas, respondent attempted to obtain the information through Ms. Holloway's deposition. Respondent's conduct as a whole amounted to conduct prejudicial to the administration of justice.

The committee determined that respondent knowingly engaged in disruptive conduct in the *Allen* case. However, his behavior was not intended to personally **11** benefit himself or his clients. The committee agreed with Ms. Bowers, who felt that respondent believed what he was doing was right but allowed his cause to become a crusade. In mitigation, the committee also placed significant weight on a report of respondent's psychotherapist, who indicated that respondent's response to perceived injustices resulted in obsessive behavior, which opinion is consistent with the evidence in the record.

Under these circumstances, the committee recommended that respondent be suspended for three years.

Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

### *Disciplinary* Board Recommendation

After reviewing this matter, the **disciplinary** board determined that the hearing committee's findings of fact are not manifestly erroneous. The board also determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges. Specifically, the board found that instead of proceeding with interlocutory appeal of the denial of the motion to recuse, respondent continued to "tirelessly" pursue the issue at the district court level without a good faith legal basis to do so. Furthermore, respondent's pursuit of discovery from third persons not involved in the *Allen* case was burdensome to these parties. Respondent's conduct caused undue expense and effort in the federal

court proceedings and also caused the defendants to accrue extra expenses.

**\*7** Based on these findings, the board determined that respondent knowingly, if not intentionally, violated a duty owed to the legal system, causing significant harm to the federal courts as well as Gold, Odyssey, and the defendants in the *Allen* case. **\*\*12** Relying on the ABA's *Standards for Imposing Lawyer **Sanctions**,* the board determined that the baseline sanction is a period of suspension.

As aggravating factors, the board identified a pattern of misconduct and refusal to acknowledge the wrongful nature of the conduct. As mitigating factors, it found the absence of a prior **disciplinary** record, personal or emotional problems, full and free disclosure to the **disciplinary** board and a cooperative attitude toward the proceedings, inexperience in the practice of law (admitted 1992), and imposition of other penalties or **sanctions**.

Turning to the issue of an appropriate sanction, the board looked to this court's prior jurisprudence and determined that the three-year suspension recommended by the hearing committee is too harsh. Like the attorneys in *In re: Zohdy,* 04-2361 (La.1/19/05), 892 So.2d 1277; *In re: Stratton,* 03-3198 (La.4/2/04), 869 So.2d 794; and *In re: Boydell,* 00-0086 (La.5/26/00), 760 So.2d 326, respondent filed repetitive and unwarranted pleadings in ongoing litigation. Also, like *Stratton,* respondent's frivolous and harassing claims and requests for discovery burdened third persons. However, the board found that respondent's conduct and the resulting harm were not as egregious as that found in the three cited cases. Furthermore, respondent's conduct spanned approximately three years, which was considerably less than the ten-year spans in *Boydell* and *Stratton.* Respondent also did not cause direct harm to his clients as did *Zohdy* and *Boydell.* Taking these circumstances into account, as well as the numerous mitigating factors present, the board determined that it is appropriate to defer eighteen months of a three-year suspension.

Accordingly, the board recommended that respondent be suspended from the practice of law for three years, with all but eighteen months deferred.

Neither respondent nor the ODC filed an objection to the **disciplinary** board's recommendation.

## **\*\*13 DISCUSSION**

[1] [2] Bar **disciplinary** matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Quaid,* 94-1316 (La.11/30/94), 646 So.2d 343; *Louisiana State Bar Ass'n v. Boutall,* 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and **disciplinary** board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield,* 96-1401 (La.11/25/96), 683 So.2d 714; *In re: Pardue,* 93-2865 (La.3/11/94), 633 So.2d 150.

**\*8** We find the record supports the hearing committee's factual findings, and that respondent violated the Rules of Professional Conduct as alleged in the formal charges. Respondent filed repetitive and unwarranted pleadings in ongoing litigation. He also made frivolous and harassing claims for discovery against third persons not involved in the litigation.

[3] [4] [5] Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In considering that issue, we are mindful that **disciplinary** proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis,* 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington,* 459 So.2d 520 (La.1984).

[6] **\*\*14** Respondent knowingly violated a duty owed to the legal system, causing significant harm to the federal courts as well as others. The baseline sanction for this misconduct is suspension. The aggravating and mitigating factors found by the board are supported by the record. The record also supports the mitigating factor of delay in the **disciplinary** proceedings.[FN4] Under all the circumstances, we find the sanction proposed by the **disciplinary** board is responsive to the

misconduct and is consistent with our prior jurisprudence.

Accordingly, we will suspend respondent from the practice of law for a period of three years, with all but eighteen months deferred, subject to the condition that any future misconduct may be grounds for making the deferred portion of the suspension executory or imposing additional discipline, as appropriate.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and **disciplinary** board, and considering the record, it is ordered that Richard B. Cook, Louisiana Bar Roll number 21248, be suspended from the practice of law for three years. It is further ordered that all but eighteen months of the suspension shall be deferred, subject to the condition that any future misconduct may be grounds for making the deferred portion of the suspension executory or for imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

> **FN1.** In his answer, respondent continued to insist that Judge Little engaged in misconduct. Therefore, because his allegations of misconduct against Judge Little were truthful, respondent argued that he himself did not engage in any misconduct.

> **FN2.** Ms. Bowers testified that respondent engaged in "almost constant warfare with the judge" during the case. Respondent also filed redundant pleadings, raising the same issues over and over again, which had to be responded to and ruled on each time, making the case go on longer than normal. Since she billed by the hour, respondent's redundant pleadings caused her to bill her clients two to three times more in attorney's fees than normal. While she felt that respondent had the "best of intentions," she also felt he "stepped over the line," was "misguided," and "got carried away about the judge."

> **FN3.** Mr. Rabalais testified that respondent filed redundant pleadings and began to focus more on Judge Little, making "outlandish" accusations against the judge, which diverted time and attention away from the merits of the case. Mr. Rabalais also testified that he had to bill his clients for the time he spent on the redundant issues. Finally, he testified that the case was concluded approximately six months after respondent was dismissed.

> **FN4.** Respondent self-reported his June 30, 2000 suspension from the federal court on August 10, 2000; nevertheless, the ODC delayed filing formal charges for almost four years.

Copr. (C) West 2006 No Claim to Orig. U.S. Govt. Works La.,2006.
In re Cook
--- So.2d ----, 2006 WL 1669359 (La.), 2006-0426 (La. 6/16/06)

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.