UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION NO.: 05-4182 "K"(2) |
| | * | |
| | * | JUDGE DUVAL |
| | * | |
| PERTAINS TO:  INSURANCE *Chehardy*, Nos. 06-1672, 06-1673, and 06-1674 | * * * * | MAGISTRATE JUDGE WILKINSON |

**CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................ 1

II.  SUMMARY OF PLAINTIFFS' ALLEGATIONS AND PERTINENT
     INSURANCE POLICY PROVISIONS.......................................................... 5

     A.   Plaintiffs' Allegations. .......................................................................... 5

     B.   Relevant Policy Language. .................................................................... 7

III. ARGUMENT ................................................................................................... 9

     A.   Under Louisiana Law, Insurance Policies Must Be Enforced As Written. ................. 9

     B.   Plaintiffs' Declaratory Judgment And Breach Of Contract Claims Are
          Barred As A Matter Of Law By The Water Damage Exclusion. ............................. 10

          1.   Plaintiffs' Claims Seek Coverage For Water Damage That Is
               Expressly Excluded.......................................................................... 10

          2.   The Inundation Of Land As A Result Of Levee Breaches Is A
               Flood Within The Meaning Of The Water Damage Exclusion. .................... 12

          3.   The Inundation Of Land As A Result Of "Storm Surge" Is A Flood
               Within The Meaning Of The Water Damage Exclusion. ........................... 14

          4.   Applying The Water Damage Exclusion In This Case Is Consistent
               With The National Flood Insurance Program. ...................................... 16

     C.   The Water Damage Exclusion Applies Regardless Of What Caused The
          Flood. .................................................................................................... 18

          1.   The Water Damage Exclusion Applies Whatever The Alleged
               Proximate Cause Of The Loss. ......................................................... 18

               a)   The Water Damage Exclusion applies if the loss was
                    caused "directly or indirectly" by water damage. ......................... 18

               b)   The Water Damage Exclusion applies "regardless of any
                    other cause or event that contributes concurrently or in any
                    sequence to the loss." .................................................................. 19

          2.   Other Policy Provisions Reinforce That The Water Damage
               Exclusion Applies Regardless Of Whether The Loss Was
               Proximately Caused By Weather Conditions Or Negligence. ................... 22

a)    The policies specify that the Water Damage Exclusion bars coverage even when weather conditions "contribute in any way" to a loss caused by water damage. .............................................. 22

b)    The policies expressly bar coverage for loss caused by negligent design, construction or maintenance. .................................. 24

D.    The Reasonable Expectations Doctrine Does Not Salvage Plaintiffs' Claims. ............................................................................................................ 25

E.    Plaintiffs' Purported Extra-Contractual Claims Fail As A Matter of Law. ............... 26

IV.   CONCLUSION ............................................................................................................ 30

# TABLE OF AUTHORITIES

Page

## Cases

*American Gulf VII, Inc. v. Otto Candies, Inc.*,
  Nos. 94:3905, 95:1666, 1997 WL 566250 (E.D. La. April 28, 1997) .................................. 27

*American Mfg. Corp. v. National Union Fire Ins. Co. of Pittsburg, Pa.*,
  14 So. 2d 430 (La. 1942) ................................................................................ 17, 18, 19

*Bartlett v. Cont'l Divide Ins. Co.*,
  697 P.2d 412 (Colo. Ct. App. 1984) .............................................................................. 12

*Block v. St. Paul Fire & Marine Ins. Co.*,
  742 So. 2d 746 (La. Ct. App. 1999) ............................................................................... 28

*Brister v. Geico Ins.*,
  813 So. 2d 614 (La. Ct. App. 2002) ............................................................................... 26

*Buente v. Allstate Ins. Co.*,
   422 F. Supp. 2d 690 (S.D. Miss. 2006) ........................................................................ 15

*Buente v. Allstate Prop. & Cas. Ins. Co.*,
  No. 1:05CV712, 2006 WL 980784 (S.D. Miss. April 12, 2006) ......................................... 14

*Casey v. Gen. Accident Ins. Co.*,
  578 N.Y.S.2d 337 (N.Y. App. Div. 1991) ...................................................................... 21

*Chase v. State Farm Fire & Cas. Co.*,
  780 A.2d 1123 (D.C. 2001) ......................................................................................... 19

*Chauvin v. State Farm Fire & Cas. Co.*,
  2006 U.S. Dist. LEXIS 54017 (E.D. La. Aug. 2, 2006) ...................................................... 9

*Clausen v. Fidelity & Deposit Co. of Md.*,
  660 So. 2d 83 (La. Ct. App. 1995) ................................................................................ 27

*Coleman v. School Bd. of Richland Parish*,
  418 F.3d 511 (5th Cir. 2005) ....................................................................................... 25

*Dally Properties, LLC v. Truck Ins. Exch.*,
  No. C05-254L, 2006 U.S. Dist. LEXIS 30506 (W.D. Wash. Apr. 5, 2006) .......................... 22

*E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.*,
  444 N.Y.S.2d 321 (N.Y. App. Div. 1981) ...................................................................... 13

*Edwards v. Allstate Prop. & Cas. Ins. Co.*,
  No. 04-2434, 2005 WL 221558 (E.D. La. June 27, 2005) ................................................. 26

*Edwards v. Daugherty*,
  883 So. 2d 932 (La. 2004) ............................................................................................. 9

*Farm Mutual Automobile Ins. Co.*,
  737 So 2d 948 (La. Ct. App. 1999) ............................................................................... 26

*Florida E. Coast Ry. Co. v. United States*,
  519 F.2d 1184 (5th Cir. 1975) ................................................................................. 10, 14

*Florida Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron*,
  721 So. 2d 825 (Fla. Ct. App. 1998) ........................................................................ 21

*Front Row Theatre, Inc. v. American Mfr. Mut. Ins. Co.*,
  18 F.3d 1343 (6th Cir. 1994) .................................................................................. 20

*Hardin Bag & Burlap Co. v. Fidelity & Guar. Fire Corp. of Baltimore*,
  14 So.2d 634 (La. 1943) .......................................................................................... 18

*Hardy v. Hartford Ins. Co.*,
  236 F.3d 287 (5th Cir. 2001) .................................................................................. 27

*Holland v. Breaux*,
  No. 04-3028, 2005 U.S. Dist. LEXIS 36504 (E.D. La. Nov. 22, 2005) ................ 24

*Illinois Cent. Gulf R.R. v. Pargas, Inc.*,
  526 F. Supp. 209 (M.D. La. 1981) ............................................................................ 8

*Johnson v. Johnson*,
  385 F.3d 503 (5th Cir. 2004) .................................................................................... 8

*Kane v. Royal Ins. Co.*,
  768 P.2d 678 (Colo. 1989) ........................................................................... 11, 12, 20

*La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*,
  630 So. 2d 759 (La. 1994) ........................................................................................ 25

*Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.*,
  No. 3:99-CV-1623, 2002 U.S. Dist. LEXIS 3594 (N.D. Tex. Mar. 5, 2002) .......... 19

*Lower Chesapeake Assocs., L.P. v. Valley Forge Ins. Co.*,
  532 S.E.2d 325 (Va. 2000) ........................................................................................ 14

*Malmay v. Sherman*,
  No. 02-2294, 2003 U.S. Dist. LEXIS 15918 (E.D. La. Sept. 8, 2003) .................... 25

*Mayton v. Auto-Owners Ins. Co.*,
  No. 3:05CV667, 2006 WL 1214831 (E.D. Va. May 2, 2006) .................................. 14

*National Union Fire Ins. Co. v. Cagle*,
  68 F.3d 905 (5th Cir. 1995) ...................................................................................... 27

*Pakmark Corp. v. Liberty Mut. Ins. Co.*,
  943 S.W.2d 256 (Mo. Ct. App. 1997) ................................................................. 13, 21

*Phillips v. Patterson*,
  813 So. 2d 1191 (La. Ct. App. 2002) ........................................................................ 27

*Premiere, Inc. v. Commercial Underwriters Ins. Co.*,
  No. 02-3199, 2004 WL 169813 (E.D. La. June 26, 2004) ...................................... 27

*Prytania Park Hotel v. General Star Indem. Co.*,
  896 F. Supp. 618 (E.D. La. 1995) ............................................................................ 19

*Quesada v. FEMA*,
  577 F. Supp. 695 (S.D. Fla. 1983) ............................................................................ 16

*Robin v. Allstate Ins. Co.*,
  870 So. 2d 402 (La. Ct. App. 2004) .......................................................................... 26

*Scanlan v. Tex. A&M Univ.*,
   343 F.3d 533 (5th Cir. 2003) ................................................................................. 8

*St. Paul Fire & Marine Ins. Co. v. Valentine*,
   665 So. 2d 43 (La. Ct. App. 1995) ....................................................................... 25

*Sunshine Motors, Inc. v. New Hampshire Ins. Co.*,
   530 N.W.2d 120 (Mich. Ct. App. 1995) .......................................................... 19, 20

*Theriot v. Midland Risk Ins. Co.*,
   694 So. 2d 184 (La. 1997) ................................................................................... 26

*TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.*,
   114 F.3d 731 (8th Cir. 1997) ......................................................................... 12, 20

*Travelers Indem. Co. v. Powell Ins. Co.*,
   NO. 95-4188, 1996 U.S. Dist. LEXIS 15041 (E.D. La. Oct. 4,1996) .......... 9, 10, 20

*Tuepker v. State Farm Fire & Cas. Co.*,
   No. 1:05CV559, 2006 WL 1442489 (S.D. Miss. May 24, 2006) .......................... 15

*Waldsmith v. State Farm Fire & Cas. Co.*,
   283 Cal. Rptr. 607 (Cal. Ct. App. 1991) ............................................................. 24

*Wallace v. McKinnis*,
   2005 Ohio 4058, 2005 Ohio App. LEXIS 3073 (Ohio Ct. App. Aug. 8, 2005) .......... 11, 12

*Wallis v. Country Mut. Ins. Co.*,
   723 N.E.2d 376 (Ill. App. Ct. 2000) .................................................................... 11

*Whitt v. State Farm Fire & Cas. Co.*,
   734 N.E.2d 911 (Ill. App. Ct. 2000) .................................................................... 11

*Wootton Hotel Corp. v. Northern Assur. Co.*,
   57 F. Supp. 112 (E.D. Pa. 1944) ......................................................................... 13

**Statutes**

42 U.S.C. § 4001 ................................................................................................ 15

42 U.S.C. § 4001(b) ........................................................................................... 16

44 C.F.R. § 61.13(d) ........................................................................................... 16

44 C.F.R. § 61.13(e) ........................................................................................... 16

44 C.F.R. § 62.23 ............................................................................................... 16

44 C.F.R. § 62.24 ............................................................................................... 16

44 C.F.R. §61.4(b) ............................................................................................. 16

44 C.F.R. §62.23(c) ............................................................................................ 16

La. R.S. 22:1220 ................................................................................................ 26

La. R.S. 22:658.2 .......................................................................................... 28, 29

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 8

Fed. R. Civ. P. 8 ................................................................................................. 26

The Standard Fire Insurance Company (improperly named as Travelers Property Casualty Company of America), Lexington Insurance Company, Liberty Mutual Fire Insurance Company, Auto Club Family Insurance Company, AEGIS Security Insurance Company, The American Insurance Company, Lafayette Insurance Company, and The Hanover Insurance Company (collectively the "Moving Defendants") hereby submit this Consolidated Memorandum in Support of their Rule 12(b)(6) Motion To Dismiss in *Chehardy et al. v. State Farm Fire & Cas. Co., et al.*, Civ. A Nos. 06-1672, 06-1673 and 06-1674.  For the Court's convenience, the Moving Defendants are submitting a consolidated memorandum because the policy provisions that form the basis for their Rule 12 motion are identical in all of the Moving Defendants' policies (although the Moving Defendants' policies are not identical in their entirety).[1]

## I.

## INTRODUCTION

Plaintiffs seek to recover for property damage caused by the massive water inundation of New Orleans that accompanied Hurricane Katrina.  These claims are expressly barred by the following language in the Moving Defendants' policies:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

---

[1] The Auto Club Family Insurance Company policy issued to Randy and Lori Gervais (INS 000088 through INS 000121) does not contain the "weather conditions" and "faulty, inadequate or defective" design and maintenance exclusions discussed in § (C) (2) of this brief.  Therefore, with respect to these two plaintiffs, Auto Club Family Insurance Company does not join in § (C) (2) of the brief.

**Water Damage**, meaning:

Flood, surface water, waves, tidal water, overflow of a body of water, or spray
from any of these, whether or not driven by wind;

(hereafter the "Water Damage Exclusion").[2]

As they must, Plaintiffs acknowledge that their homeowners policies contain express

exclusions that preclude coverage for loss caused by "flood." Nevertheless, Plaintiffs' Amended

and Restated Complaint (hereinafter the "Complaint") purports to plead claims for breach of

contract based on the Moving Defendants' refusal to pay for water damage resulting from

Hurricane Katrina-related flooding, for a Declaratory Judgment that Plaintiffs are entitled to

coverage for flood-related damage, and for bad faith claims handling for the Moving Defendants'

alleged refusal to pay for losses due to water damage from Hurricane Katrina-related flooding.

Plaintiffs attempt to dispute the obvious by contending that the water inundation that

accompanied Hurricane Katrina was not a "flood." Plaintiffs also attempt to sidestep the express

exclusions in their homeowners policies by drawing theoretical distinctions that have no basis in

the policies at issue, and by advancing "efficient proximate cause" theories based on allegations

that the excluded water damage was caused by wind and/or negligently designed, constructed

and maintained levees. Plaintiffs' causation theories, however, are foreclosed by the express

terms of Plaintiffs' policies and have been routinely rejected by courts. Finally, left without any

policy language upon which to base a claim for relief, Plaintiffs broadly assert that the

---

[2] Appendix of Moving Defendants at (INS 000011, INS 000071, INS 000110, INS 000155,
INS 000199, INS 000357, INS 000406 and INS 000458) (emphasis added). The policies
issued by the Moving Defendants to each of the Plaintiffs insured by them are contained in
an Appendix being submitted herewith, which is Bates numbered, INS 000001 through INS
000467.

"reasonable expectations doctrine" should create coverage for flood-related damage despite the express exclusion of these losses by the terms of each policy.

Plaintiffs' claims are barred as a matter of law, for the following reasons:

*First*, the water damage alleged by Plaintiffs is expressly excluded from coverage under the terms of the Water Damage Exclusion. This exclusion unambiguously states that the Moving Defendants do not cover losses caused "directly or indirectly" by, "[f]lood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind." Numerous courts have held what common sense dictates – that the term "flood" as used in this exclusion refers broadly to the inundation of land that is normally dry. Neither the language of the exclusion nor the courts applying it distinguish between floods arising from the failure of man-made structures and the overflow of natural waterways, nor do they carve out an exception for floods resulting from "storm surge." Enforcing the plain language of the Water Damage Exclusion also furthers the purpose and intent of the National Flood Insurance Program, which makes federally-funded insurance available to cover flood damage that is expressly excluded by the Water Damage Exclusion. In short, Plaintiffs' attempts to avoid the direct application of this policy exclusion by ignoring its plain terms are ineffective as a matter of law, and Plaintiffs' claims must be dismissed on this basis alone.

*Second,* Plaintiffs' "efficient proximate cause" allegations do not alter the dispositive impact of the Water Damage Exclusion. The plain language of the policies anticipates and forecloses these nebulous causation arguments by expressly excluding losses caused "directly or indirectly" by Water Damage, ***"regardless of any other cause or event contributing concurrently or in any sequence to the loss."*** Courts have applied this plain language to reject

the same sort of attenuated causation theories proffered by Plaintiffs.   Moreover, the policies specify that excluded losses – such as water damage – remain excluded, even if weather conditions or faulty design, construction or maintenance contribute to the loss.

*Third*, Plaintiffs' reliance on the "reasonable expectations doctrine" does not salvage their claims.  Under Louisiana law, the doctrine of reasonable expectations provides only that where policy language is found to be ambiguous and the ambiguity cannot be resolved by the court, the policy will be construed against the insurer if the insured had a reasonable expectation of coverage.  In this case, the policy language at issue is clear and unambiguous, and therefore must be enforced as written, as Louisiana law requires.

*Fourth*, Plaintiffs' extra-contractual claims must also fail as a matter of law.  Where there is no valid claim for coverage, there can be no valid claim for bad faith.  Moreover, even if Plaintiffs were able to plead a claim for breach of contract, which they are not, Louisiana's insurance bad faith statutes cannot be invoked when the insurers had a reasonable basis for denying coverage.  Finally, there is no common law claim for bad faith claim handling under Louisiana law.

Plaintiffs ask this Court to draw distinctions that do not exist in the policy provisions and to ignore the plain, ordinary, and unambiguous meaning of the policies' terms.  A straightforward application of the express terms of the contracts at issue, however, requires dismissal of Plaintiffs' claims with prejudice.

## II.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS AND PERTINENT

## INSURANCE POLICY PROVISIONS

**A.      Plaintiffs' Allegations.**

Plaintiffs, as putative class representatives, allege that they are residents of the Parishes

of Orleans, St. Bernard and Jefferson who sustained damage to their property following

Hurricane Katrina.  Plaintiffs allege that they purchased homeowners insurance from the insurers

named as defendants in this case.  (Am. Cmpl., ¶¶ 26, 27, 44)

Plaintiffs claim that they suffered water damage resulting from the "catastrophic events"

of Hurricane Katrina (*Id.* ¶¶ 41-44) which left "approximately 80% of Orleans Parish . . . under

water . . . ." (*Id.* ¶ 45)  Plaintiffs allege that, on August 29, 2005, "there was water on both sides

of the Industrial Canal in New Orleans" and that "there was six to eight feet of water in the

City's Lower Ninth Ward," as a result of a breach in the Industrial Canal levee wall.  (*Id.* ¶¶ 41,

42)  Plaintiffs further state that "the levees around the City and adjoining parishes failed in at

least eight (8) distinct locations, including the 17th Street, London Avenue and Industrial

Canals," and that Plaintiffs suffered damage to their property as a result of these events.  (*Id.* ¶¶

43-45)  Plaintiffs allege that the cause of the levee failures was "negligent design, negligent

maintenance and/or inadequate materials," and that "any damages attributable to the levee

failures are the result of improper and/or negligent design, construction, maintenance of the

levees by various third parties and or third party negligence." (*Id.* ¶¶ 46-50)  Plaintiffs also

assert that high winds and storm surge contributed to levee failures and the resulting water

damage to each individual plaintiff's property.  (*Id.* at 17-18)

Plaintiffs acknowledge that their policies contain water damage exclusions that preclude coverage for "floods" and allege that "the reasonable expectations of Louisiana policyholders is that 'flood' encompasses overflowing of the Mississippi River, accumulation of surface water due to heavy rainfalls, or similar phenomena . . . ." (*Id.* ¶ 61)  Plaintiffs allege, however, that despite the presence of these valid exclusions and Plaintiffs' recognition that they exclude coverage for a wide variety of floods, Plaintiffs' "reasonable expectation" was that their homeowners policies would provide coverage for the type of flooding that occurred after Hurricane Katrina.  (*Id.*)

The Complaint alleges five counts.  Count I seeks a five-part declaratory judgment from this Court.  (*Id.* ¶ 58)  Specifically, Plaintiffs seek a declaratory judgment that:

(1)     "The first efficient proximate cause of the losses . . . was 'windstorm,' a covered peril . . . thereby rendering any subsequent *impact from water* released by the levee and/or levee wall failures irrelevant to coverage";

(2)     "The second efficient proximate cause of the losses *resulting from water entering the City of New Orleans* and adjoining parishes . . . were acts of negligence";

(3)     "The third efficient proximate cause of the losses *resulting from water entering the City of New Orleans* and adjoining parishes . . . was storm surge, a known meteorological phenomenon that is not specifically excluded" by the Policies;

(4)     "The *breaking or failure of boundaries of* lakes, reservoirs, rivers, streams, or other *bodies of water* was a peril not specifically excluded" by the Policies;

(5)     "The *damage caused by water* entering the City of New Orleans and adjoining parishes . . . due to the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere neither falls within the regular definition of 'flood,' nor within any of the subject insurance policies' exclusions of 'flood.'"

(*Id.* at 17-18 (emphasis added)).

6

In short, Plaintiffs seek a declaration that the water damage caused to their property is covered by their homeowners policies, despite the undisputed presence of the Water Damage Exclusion in each of those policies.  In this same vein, Count II alleges a breach of contract claim based on the Moving Defendants' failure to pay for water damage caused by flooding allegedly resulting from the "efficient proximate cause of windstorms, storm surge and/or negligence." (*Id.* ¶ 68)

Finally, Plaintiffs also assert extra-contractual claims based on the Moving Defendants' alleged improper denial of Plaintiffs' water damage claims.  These claims are based on allegations that the Moving Defendants:  (1) wrongfully denied coverage by "equating" losses caused by wind, negligence and storm surge "with flood"; (2) "misrepresented" that the policies' Water Damage Exclusion applied to Plaintiffs' claims "without a legitimate basis" for doing so; and (3) directed their adjusters to "consider only nearby waterlines and to ignore all other evidence in determining whether Policyholders' losses are covered . . ." in violation of La. R.S. 22:658.2(A)(1).  (*Id.* ¶ ¶ 85, 87-88, and 90; *Id.* ¶ ¶ 73-74 and 76-77)  La. R.S. 22:658.2(A)(1), which became effective on February 23, 2006, provides that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."

**B.     Relevant Policy Language.**

Paragraph 1 of the exclusion section of each policy issued by the Moving Defendants to a named Plaintiff provides:

> **1.     We do not insure for loss caused *directly or indirectly* by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.**

. . . . .

c.     **Water Damage**, meaning:

(1)     ***Flood, surface water,*** waves, tidal water, **overflow of a body of water**, or spray from any of these, ***whether or not driven by wind***; . . . .

(INS 000011, INS 000071, INS 000110, INS 000155, INS 000199, INS 000357, INS 000406 and INS 000458 (emphasis added))

Thus, each policy issued by a Moving Defendant to a named insured contains a broad Water Damage Exclusion, as well as prefatory language that emphasizes that such loss is excluded whether it is caused directly or indirectly by "water damage," or by "water damage" in concurrence with any other cause.

The unambiguous exclusion of coverage for any and all loss caused by "water damage" is reinforced by Paragraph 2(a) of the exclusions section, which expressly excludes "loss to property" under Coverages A and B caused by "weather conditions" to the extent those weather conditions "contribute in any way with a cause or event excluded in paragraph 1" – *e.g.*, "Water Damage." (Exclusion Paragraph 2(a) is hereinafter referred to as the "Weather Conditions Exclusion.")

Finally, Paragraph 2(c) of the exclusions section also expressly excludes "loss to property" caused by:

**Faulty, inadequate or defective:**

(1)     Planning, zoning, development, surveying, siting;

(2)     Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3)     Materials used in repair, construction, renovation or remodeling; or

(4)     Maintenance;

of part or all of any property whether on or off the "residence premises."

(INS 000011, INS 000071, INS 000110, INS 000155, INS 000197, INS 000318, INS 000358,

INS 000406 and INS 000458  (emphasis in original))

### III.

### ARGUMENT

For purposes of a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the truth

of a plaintiff's allegations is assumed.  If, however, those allegations fail as a matter of law to

state a claim upon which relief can be granted, the motion must be granted and the claims must

be dismissed. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).  While motions brought

under Rule 12 address the legal sufficiency of a plaintiff's allegations, courts may properly

consider documents "that are referred to in the plaintiff's complaint and are central to the

plaintiff's claim." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *see also*

*Illinois Cent. Gulf R.R. v. Pargas, Inc.*, 526 F. Supp. 209, 211 (M.D. La. 1981).  This, of course,

includes the insurance policies that are at the heart of Plaintiffs' claims. *Chauvin v. State Farm*

*Fire & Cas. Co.*, 2006 U.S. Dist. LEXIS 54017 (E.D. La. Aug. 2, 2006) (Vance, J.).  In the

instant case, Plaintiffs' Complaint contains extensive descriptions and characterizations of the

insurance policies allegedly issued to each individual plaintiff.  Therefore, it is both appropriate

and necessary for this Court to consider the policies themselves in evaluating the legal

sufficiency of Plaintiffs' Complaint.

**A.      Under Louisiana Law, Insurance Policies Must Be Enforced As Written.**

"Words and phrases used in an insurance policy are to be construed using their plain,

ordinary and generally prevailing meaning, unless the words have acquired a technical meaning."

9

*Edwards v. Daugherty*, 883 So. 2d 932, 940-41 (La. 2004).  "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written."  Simply put, "[c]ourts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms."  *Id.* at 941.  "The rules of construction do not authorize a perversion of the words or the exercise of inventive powers . . . ."  *Id.*  Here, the Water Damage Exclusion "unambiguously excludes coverage for flood damage," like that alleged by Plaintiffs.  *Travelers Indem. Co. v. Powell Ins. Co.*, NO. 95-4188, 1996 U.S. Dist. LEXIS 15041, *8 (E.D. La. Oct. 4, 1996) (Vance, J.) ("This Court cannot strain to find an ambiguity in the policy where none exists . . . .").  As set out below, this exclusion must be enforced as written and Plaintiffs' claims must be dismissed.

**B.     Plaintiffs' Declaratory Judgment And Breach Of Contract Claims Are Barred As A Matter Of Law By The Water Damage Exclusion.**

As described above, the gravamen of Plaintiffs' Complaint is that the policies issued by the Moving Defendants should provide coverage for water damage caused by the inundation of New Orleans in the aftermath of Hurricane Katrina.  As described below, however, the damage caused by the flooding of New Orleans, whether or not wind was a part of the chain of events that caused it, is expressly and unambiguously excluded from coverage.

**1.     Plaintiffs' Claims Seek Coverage For Water Damage That Is Expressly Excluded.**

Plaintiffs' allegations do not dispute (and in fact acknowledge) that each insurance policy at issue includes a provision that expressly excludes coverage for damage caused by "flood." (Am. Cmpl., ¶ ¶ 60-61)  Instead, Plaintiffs assert that "damage caused by water entering the City of New Orleans . . . due to breaches in the levees and levee walls . . . neither falls within the

regular definition of 'flood,' nor within any of the subject insurance policies' exclusions of 'flood.'" (*see* Am. Cmpl., at 18)  In short, Plaintiffs' theory requires this Court to find that the inundation of Orleans, St. Bernard, and Jefferson Parishes with tens of millions of gallons of water was not a "flood" as that term is used in the Water Damage Exclusion.  To reach this result, this Court would have to abandon the plain meaning of the word "flood," ignore the findings of numerous courts which have previously applied the Water Damage Exclusion in analogous circumstances, and improperly "strain to find an ambiguity in the policy where none exists." *Powell Ins. Co.*, 1996 U.S. Dist. LEXIS 15041, at *8.  Indeed, there can be no doubt that the submersion of large portions of Orleans, St. Bernard, and Jefferson Parishes during and after Hurricane Katrina was a "flood."

Consistent with the findings of many other courts, this Court should find as a matter of law that Plaintiffs' allegations refer to a "flood," within the meaning of the Water Damage Exclusion.  Courts, including the Fifth Circuit, define a "flood" as "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be." *Florida E. Coast Ry. Co. v. United States*, 519 F.2d 1184, 1192 (5th Cir. 1975).  Courts have applied similar definitions when evaluating whether or not there was a "flood" for purposes of applying the Water Damage Exclusion. *See, e.g., Whitt v. State Farm Fire & Cas. Co.*, 734 N.E.2d 911, 914 (Ill. App. Ct. 2000) (finding a "flood" to be "an inundation of water over land not usually covered by it" and applying the exclusion to bar coverage); *Wallis v. Country Mut. Ins. Co.*, 723 N.E.2d 376, 381 (Ill. App. Ct. 2000) (recognizing flood waters include "water that escapes from a watercourse in large volumes and flows over adjoining property in no regular channel"); *Wallace v. McKinnis*, 2005 Ohio 4058, 2005 Ohio App. LEXIS 3073, at *5 (Ohio Ct. App. Aug.

8, 2005) (adopting definition of "flood" as including "a great stream of something that flows in a steady course" and "a large quantity widely diffused; superabundance"); *Kane v. Royal Ins. Co.,* 768 P.2d 678, 680-81 (Colo. 1989) (concluding that "[t]he inundation of insureds' normally dry land falls squarely within the[] generally accepted definitions of the term 'flood'"). In short, Plaintiffs' argument that the inundation following Hurricane Katrina was something other than a flood must be rejected, and coverage for the resulting losses is unambiguously excluded.

**2.   The Inundation Of Land As A Result Of Levee Breaches Is A Flood Within The Meaning Of The Water Damage Exclusion.**

In a futile attempt to avoid the obvious application of the Water Damage Exclusion, Plaintiffs point to various alleged events preceding the flooding (*e.g.,* levee failures allegedly resulting from poor design, construction and/or maintenance) and suggest that "floods" which arise from these alleged causes are not "floods" as contemplated by the Water Damage Exclusion. There is no basis in the policy language for an argument that the Water Damage Exclusion precludes coverage for only a subset of "floods," and, not surprisingly, courts have consistently refused to draw the arbitrary distinction Plaintiffs' theory requires. For example, in *Kane,* the plaintiff sought to avoid application of a water damage exclusion when a dam burst and many properties were heavily damaged in the subsequent flooding. The plaintiff argued that the term "flood" as used in the exclusion did not apply to "artificial" disasters, such as a dam failure, and should instead be limited to "natural" floods. *Kane,* 768 P.2d at 680. The Colorado Supreme Court rejected this argument, finding the term "flood" unambiguously applied to flooding caused by a dam failure and that the "generally accepted meaning of the term flood does not include a distinction between artificial and natural floods." *Id.* ("The inundation of insureds' normally dry land falls squarely within the[] generally accepted definitions of the term 'flood'.");

*see also Bartlett v. Cont'l Divide Ins. Co.*, 697 P.2d 412, 413 (Colo. Ct. App. 1984) (defining flood as "a body of water. . . overflowing or inundating land not usually covered," noting that "no distinction is made between natural and artificial causes," and denying coverage for loss due to failure of dam caused by negligence because it was a flood).

In *Wallace*, the Ohio Court of Appeals recently stressed that because the policy's definition of "water damage" included both "flood" and "overflow of a body of water," the term "flood" was not intended to mean "strictly an overflow of a body of water . . . ." Rather, the term "flood was intended to have a broader meaning such as a 'great stream of something flowing in a steady course,' or 'a large quantity widely diffused.'" *Wallace*, 2005 Ohio App. LEXIS 3073, at *5 (holding that there was no coverage for loss caused by water overflowing from gutters onto ground and into basement of insureds' home through window).

Numerous other courts have applied the Water Damage Exclusion to facts identical to those at issue here, holding that water released from a broken levee, dike or dam was a flood.  In *TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.*, 114 F.3d 731, 733 (8th Cir. 1997), the court held that where vandals removed sandbags and dirt from a levee, resulting in a release of water, recovery was barred by the water damage exclusion. *Id.* at 733. *See also Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256, 261-62 (Mo. Ct. App. 1997) (recovery for property damage caused by levee break barred by unambiguous water damage exclusion); *E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.*, 444 N.Y.S.2d 321 (N.Y. App. Div. 1981) (holding that damage caused by water released from a broken dike was excluded by water damage exclusion, rejecting plaintiffs' argument that there was coverage because loss was caused by improper

13

construction and maintenance of dike). This Court, too, must refuse to rewrite the policies at

issue, apply the Water Damage Exclusion as written, and dismiss Plaintiffs' claims.

### 3. The Inundation Of Land As A Result Of "Storm Surge" Is A Flood Within The Meaning Of The Water Damage Exclusion.

Plaintiffs also try to avoid the Water Damage Exclusion by drawing a false distinction

between floods and "storm surge." (Am. Cmpl., ¶ 18) Courts have consistently rejected such

attempts. Storm surge is described by the Federal Emergency Management Agency in the

following terms:

> ***Storm surge is simply water*** that is ***pushed*** toward the shore ***by the force of the winds*** swirling around the storm. This advancing surge combines with the normal tides to create the hurricane storm tide, which can increase the mean water level to heights impacting roads, homes and other critical infrastructure. In addition, wind driven waves are superimposed on the storm tide. ***This rise in water level can cause severe flooding*** in coastal areas, particularly when the storm tide coincides with the normal high tides.

Federal Emergency Management Agency, "Hurricane Hazards: Storm Surge" (available at

http://www.fema.gov/hazard/hurricane/hu_surge.shtm) (emphasis added). Simply put, "storm

surge" is wind-pushed water that causes a rise in water levels that can cause severe flooding.[3]

Here, Plaintiffs allege that "storm surge" caused the "losses resulting from water entering

the City of New Orleans and adjoining parishes." (Am. Cmpl., ¶ 18) Regardless of whether it

was caused by "storm surge," however, water in the City of New Orleans and the surrounding

---

[3]  Additionally, the policies issued by the Moving Defendants exclude loss caused by "Flood, surface water, waves, tidal water, [or] overflow of a body of water, or spray from any of these, ***whether or not driven by wind . . .***" (emphasis added). This provision provides yet another reason why allegations of "windstorm" or "storm surge" as an "efficient proximate cause" of an insured's loss due to water damage has no impact on the application of the Water Damage Exclusion. The Water Damage Exclusion expressly addresses and precludes coverage for the effects of wind-driven floodwaters. *See Wootton Hotel Corp. v. Northern Assur. Co.*, 57 F. Supp. 112, 113 (E.D. Pa. 1944) (relying on similar language in holding that where plaintiff asserted its "damage was caused by high water driven by wind . . . plaintiff has placed its case directly within the exceptive provision, and may not recover").

area was "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be," *i.e.*, a flood *Florida E. Coast Ry. Co.*, 519 F.2d at 1192. *See also Mayton v. Auto-Owners Ins. Co.*, No. 3:05CV667, 2006 WL 1214831 (E.D. Va. May 2, 2006) (holding that storm surge fell within water damage exclusion); *Lower Chesapeake Assocs., L.P. v. Valley Forge Ins. Co.*, 532 S.E.2d 325, 328, 331 (Va. 2000) (holding that damage to docks was excluded by water damage exclusion where it was caused, at least in part, by storm surge from hurricane).

Judge L.T. Senter, Jr. of the Southern District of Mississippi recently rejected the same "storm surge" argument that Plaintiffs make in this case. *See Buente v. Allstate Prop. & Cas. Ins. Co.*, No. 1:05CV712, 2006 WL 980784 (S.D. Miss. April 12, 2006) (Senter, J.). In *Buente*, like here, "Plaintiffs acknowledge[d] that the insured property sustained damage as a result of water that entered their home during Hurricane Katrina," but "contend[ed] that this damage should be covered because it [was] a result of 'storm surge.'" *Id.* at * 1. The "critical issue" was "whether the entry of water into the plaintiffs' home [was] within the terms of the 'flood exclusions.'" *Id.* Judge Senter enforced the defendant's water damage exclusion and held that "[t]he inundation which occurred at the time of Hurricane Katrina was a flood, as that term is ordinarily understood, whether that term appears in a flood insurance policy or in a home owners insurance policy." *Id.*

Judge L.T. Senter, Jr. reached the same conclusion in a separate case. *See Tuepker v. State Farm Fire & Cas. Co.*, No. 1:05CV559, 2006 WL 1442489 (S.D. Miss. May 24, 2006) (Senter, J.). There, the court held:

> Losses directly attributable to water in the form of a "storm surge" are excluded from coverage because this damage was caused by the inundation of plaintiffs'

home by tidal water from the Mississippi Sound driven ashore during Hurricane Katrina. This is water damage within the meaning of that policy exclusion. The exclusion found in the policy for water damage is a valid and enforceable policy provision. Indeed, similar policy terms have been enforced with respect to damage caused by high water associated with hurricanes in many reported decisions.

*Id.*, at * 3.[4]

Plaintiffs' theory that the great flood that followed Hurricane Katrina does not fall within the Water Damage Exclusion is an attempt to manufacture ambiguities where none exist and rewrite the policies at issue. Common sense and the consistent holdings of courts addressing the same type of loss scenarios all dictate that the Moving Defendants' motion be granted and Plaintiffs' claims be dismissed with prejudice.

### 4.   Applying The Water Damage Exclusion In This Case Is Consistent With The National Flood Insurance Program.

In 1968, Congress enacted the National Flood Insurance Act, 42 U.S.C. § 4001 et seq., which created the National Flood Insurance Program ("NFIP"). The NFIP was created, in part, because the private insurance industry could not provide flood insurance to homeowners on an economically feasible basis. *See* 42 U.S.C. § 4001(b) ("[M]any factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of

---

[4] Judge Senter denied the defendants' motion for judgment on the pleadings in *Buente* and motion to dismiss in *Tuepker* because those plaintiffs alleged that the damage to their property "was attributable in part to wind, in part to rain, and in part to storm surge," and contended that their insurers failed to make sufficient payment for the portion of the damage caused by wind, for which flooding was not a contributing cause. *Buente v. Allstate Ins. Co.*, 422 F. Supp. 2d 690, 695-96 (S.D. Miss. 2006); *see also Tuepker*, 2006 WL 1442489, at *3. Since the policies provided coverage for the portion of the damage caused exclusively by wind, Judge Senter found that factual issues existed for each individual property regarding the ascertainment of the amount of damage caused exclusively by wind. *Buente*, 422 F. Supp. 2d at 696; *Tuepker,* 2006 WL 1442489, at *5. Unlike the cases before Judge Senter, the core allegations in this action raise coverage issues for flood damage, which Plaintiffs contend was proximately caused by wind, negligence and storm surge.

such protection on reasonable terms and conditions."). Under the NFIP, property owners can purchase flood insurance either directly from the Federal Emergency Management Agency ("FEMA") or from private insurers, like many of the Moving Defendants, authorized to write federally-funded flood insurance under their own names. 44 C.F.R. § 62.23. Such private insurers are known as "Write Your Own" companies and act as agents of the federal government. Claims under "Write Your Own" policies are ultimately paid from the United States Treasury. 44 C.F.R. §§ 62.23, 62.24. All policies issued under the NFIP must use the terms and conditions of the Standard Flood Insurance Policy found in 44 C.F.R. Pt. 61, App. A. *See* 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c). The Standard Flood Insurance Policy provides coverage for "direct physical loss by or from flood" to the insured property (as defined therein). 44 C.F.R. Pt. 61, App. A.

Enforcing the Water Damage Exclusion maintains the long-standing distinction between the coverage that is provided by homeowners insurance policies, which exclude water damage, and the coverage provided by Standard Flood Insurance Policies issued under the federally funded NFIP. *See Quesada v. FEMA*, 577 F. Supp. 695, 697 (S.D. Fla. 1983) (holding that damage caused by water from tropical storm was not covered under homeowner's insurance policy, and was covered under flood insurance policy). The relief sought by Plaintiffs would both re-write the Moving Defendants' policies to cover risks that are expressly excluded and frustrate the federal regulatory scheme behind the NFIP and the intent of the United States Congress.

**C.** **The Water Damage Exclusion Applies Regardless Of What Caused The Flood.**

Plaintiffs' claims fall squarely within the Water Damage Exclusion and therefore must

fail as a matter of law.  In an attempt to avoid this inevitable outcome, Plaintiffs broadly allege

that the "efficient proximate causes" of the flooding were wind and negligence in the design,

construction and maintenance of failed levees.  (Am. Cmpl., ¶¶ 46-50),  Plaintiffs allege that

wind and negligence are covered perils and therefore the Water Damage Exclusion should not be

applied to any flooding that was caused, even in part, by wind, or negligent design, construction

or maintenance of levees.  As discussed above, the Water Damage Exclusion is unambiguous

and its application to Plaintiffs' claims is apparent on its face.  Plaintiffs' attenuated causation

theories do not change this result.

**1.** **The Water Damage Exclusion Applies Irrespective of The Alleged Proximate Cause Of The Loss.**

**a)** **The Water Damage Exclusion applies if the loss was caused "directly or indirectly" by water damage.**

The preface to the Water Damage Exclusion states that "[W]e do not insure for loss

caused *directly or indirectly* by . . . Water Damage . . . ."  *See* § II (B), *infra.*  The Louisiana

Supreme Court has expressly analyzed the use of the words "directly or indirectly" in the context

of an insurance policy exclusion, and held that those words should be construed broadly so as to

bar coverage where, as here, the excluded peril was within the chain of events that caused the

damage at issue. *American Mfg. Corp. v. National Union Fire Ins. Co. of Pittsburg, Pa.*, 14 So.

2d 430, 435 (La. 1942) (emphasizing the use of the words "directly or indirectly" in an

exclusion, and holding that, where excluded cause of loss was indirect but within the chain of

causation, the exclusion applied); *Hardin Bag & Burlap Co. v. Fidelity & Guar. Fire Corp. of Baltimore*, 14 So.2d 634 (La. 1943) (same).

In *American Manufacturing Corp.*, the roof of an insured building was blown off by a tornado or windstorm, causing a sprinkler feed pipe to break, flooding the premises. 14 So.2d at 432. The policy at issue provided coverage only for "direct loss and damage by 'sprinkler leakage,'" and excluded "loss or damage caused directly or indirectly by . . . tornado, [or] windstorm . . . ." *Id.* at 431-32. The Court, emphasizing the words "directly or indirectly" in the exclusion, held that "[a] windstorm, one of the excepted hazards, was the indirect cause of the damage, and, since the company is not liable under the policy for loss and damage 'caused directly or indirectly' by that hazard, plaintiff cannot recover." *Id.* at 435.

The reasoning of the Louisiana Supreme Court in *American Manufacturing Corp.* is even more persuasive when applied to Plaintiffs' allegations. Here, Plaintiffs seek to recover for losses that are the direct result of water entering their homes. The peril excluded by the policies (*i.e.*, flood) was the *direct*, as opposed to indirect, cause of Plaintiffs' alleged losses. To the extent, however, that Plaintiffs are attempting to suggest that other perils were the "direct" cause of their losses because those causes were the "efficient proximate cause," it remains indisputable that flooding was *at least* a contributing (i.e., direct or indirect) cause. Thus, under the plain language of the policies, as confirmed by the Louisiana Supreme Court, there can be no coverage for the water damage at issue.

**b)**      **The Water Damage Exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."**

As set out in Section II (B), *supra*, the preface to the Water Damage Exclusion also explicitly states that water damage is excluded "***regardless of any other cause or event that***

***contributes concurrently or in any sequence to the loss.***" This provision is generally referred to

as an "anticoncurrent causation clause." *Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.*,

No. 3:99-CV-1623, 2002 U.S. Dist. LEXIS 3594, at *11 (N.D. Tex. Mar. 5, 2002). Courts have

held that the "plain meaning" of the anticoncurrent causation clause is "to directly address, and

contract out of, the efficient proximate cause doctrine and exclude coverage for losses caused by

water, regardless of the existence of any other contributing causes in any sequence." *TNT Speed*

*& Sport Ctr.*, 114 F.3d at 733; *Sunshine Motors, Inc. v. New Hampshire Ins. Co.*, 530 N.W.2d

120, 121 (Mich. Ct. App. 1995) (holding that "proximate cause" of loss was irrelevant where

water damage exclusion contained anticoncurrent causation language); *Chase v. State Farm Fire*

*& Cas. Co.*, 780 A.2d 1123, 1130 (D.C. 2001) (holding that efficient proximate cause rule was

inapplicable where policy contained anticoncurrent causation language).

  This Court has previously relied on the anticoncurrent causation clause and rejected

arguments like those proffered by Plaintiffs. In *Prytania Park Hotel v. General Star Indem. Co.*,

896 F. Supp. 618 (E.D. La. 1995) (Jones, J.), the insured hotel suffered a fire. When the fire

damage was repaired, a New Orleans building ordinance required the insured to add a new

sprinkler system. *Id.* at 623. The policy provided that it excluded losses caused by "ordinance

enforcement," and this exclusion was prefaced by an anticoncurrent clause. *Id.* The insured

argued that the need for the sprinkler system was proximately caused by the fire, not by the

enforcement of the ordinance, and therefore should be covered. *Id.* The court rejected this

argument, holding that under the anticoncurrent clause, "it is inconsequential . . . whether the fire

which caused the loss occurred before the repair that required installation of a sprinkler system."

*Id.* Similarly here, it is inconsequential that the flooding was allegedly preceded by wind and

negligence.  *See Powell Ins. Co.*, 1996 U.S. Dist. LEXIS 15041, at *8 (Vance, J.) (enforcing

water damage exclusion with anticoncurrent causation language).

Additionally, federal appellate decisions have enforced similar anticoncurrent causation

language in water damage exclusions under similar facts.  For example, in *TNT Speed & Sport*

*Ctr.*, an act of vandalism caused a levee on the Mississippi River to break, resulting in a flood

which damaged the insured's property.  114 F.3d at 732.  The Eighth Circuit affirmed the district

court's holding that the water damage exclusion applied, regardless of the fact that vandalism, a

covered cause, contributed to the flood.  *Id.* at 733.  The court concluded that pursuant to the

anticoncurrent clause, the policy "exclude[s] coverage for losses caused by water, regardless of

the existence of any other contributing causes in any sequence." *Id.; see also Front Row*

*Theatre, Inc. v. American Mfr. Mut. Ins. Co.*, 18 F.3d 1343, 1347 (6th Cir. 1994) (relying on

anticoncurrent clause and holding that "where a flood is a partial cause of property damage, [the

insurer] is not required to pay").

Several state appellate decisions have also relied on anticoncurrent causation language

and enforced water damage exclusions under similar facts.  In *Kane, supra*, the insured

contended that it was entitled to coverage for water damage caused by a dam failure because

third party negligence caused the dam to burst.  *Id.* at 684.  The Colorado Supreme Court, *en*

*banc*, relied on policy language that excluded, "loss . . . caused by, resulting from, contributed to,

or aggravated by . . . flood" and rejected plaintiff's argument.  *Id.* at 684-85; *see also Sunshine*

*Motors, Inc. v. New Hampshire Ins. Co.*, 530 N.W.2d 120 (Mich. Ct. App. 1995) (relying on

water damage exclusion with anticoncurrent causation language and holding that "[w]hether the

blocked drainage system was a direct or indirect cause of plaintiff's water damage, or whether it

was *the* principal factor or merely *a* contributing factor, the policy expressly excluded

coverage"); *Casey v. Gen. Accident Ins. Co.*, 578 N.Y.S.2d 337, 338 (N.Y. App. Div. 1991)

(holding that, under water damage exclusion with anticoncurrent causation clause, there was no

coverage where rainwater collected and entered basement due to clogged drainage system);

*Florida Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron*, 721 So. 2d 825, 826 (Fla.

Ct. App. 1998) (holding that, under water damage exclusion with anticoncurrent causation

clause, there was no coverage for damage to insured's home caused by surface water which

entered through cracks in walls caused by tree roots).

      In each of the cases described above, courts rejected the theory that Plaintiffs now ask
this Court to accept.  The policies at issue contain specific language to circumvent the need for
any court to engage in nebulous debates about proximate cause.  The anticoncurrent causation
clause ensures that the policies' Water Damage Exclusion "is an exclusion regardless of any
other cause that contributes to the loss, either concurrently or in any sequence to the loss."  *See
Pakmark*, 943 S.W.2d at 261 (relying on anticoncurrent causation and enforcing water damage
exclusion as applied to loss caused by failure of levee).  The Water Damage Exclusion applies
"regardless of" allegations that wind or negligence "contribute[d] to the loss, either concurrently
or in any sequence to the loss," and therefore Plaintiffs' claims for declaratory relief and breach
of contract must fail.

    **2.**     **Other Policy Provisions Reinforce That The Water Damage Exclusion
Applies Regardless Of Whether The Loss Was Proximately Caused By
Weather Conditions Or Negligence.**

    **a)**     **The policies specify that the Water Damage Exclusion bars coverage
even when weather conditions "contribute in any way" to a loss
caused by water damage.**

The policies' Weather Conditions Exclusion reinforces the legal inadequacy of Plaintiffs'

theory, providing:

> We do not insure for loss to property described in Coverages A and B caused by
> any of the following. . . .

**a. Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above [which includes the Water Damage Exclusion] to produce the loss;

(INS 000011, INS 000071, INS 000110, INS000155, INS 000199, INS 318, INS 358, INS 000406 and INS 000458)

As described previously, while the policies at issue provide coverage for wind damage (*e.g.*, damage to a building's roof from gale-force winds), they do not provide coverage for excluded water damage simply because wind was also involved. Indeed, the very purpose of the Weather Conditions Exclusion is "to prevent an insured from attempting to bootstrap coverage" by arguing that covered weather conditions contributed to an excluded cause of loss. *Dally Properties, LLC v. Truck Ins. Exch.*, No. C05-254L, 2006 U.S. Dist. LEXIS 30506 (W.D. Wash. Apr. 5, 2006). As the District Court in *Dally Properties* stated:

> The paradigmatic example of the purpose of the . . . weather conditions exclusion is when the insured argues that an all-risk policy covers the weather condition of heavy rain, and the damage therefrom, and so loss that is caused by flood-like conditions should be covered, despite an explicit exclusion for flood.

*Id.* at *9-10 (holding that weather conditions exclusion applied where rain caused decay of wood, allegedly leading to building collapse). In short, these policy provisions directly address and preclude Plaintiffs' attempts to circumvent the Water Damage Exclusion by reference to wind-driven floodwaters as the proximate cause of their losses.[5]

---

[5] While the Weather Conditions Exclusion has an exception that provides "any ensuing loss to property . . . *not excluded* or excepted in this policy is covered" (*Id.* (emphasis added)), Plaintiffs' claims do not fall within this exception because, as discussed throughout, flood loss is expressly excluded under the policies' Water Damage Exclusion.

**b)** **The policies expressly bar coverage for loss caused by negligent design, construction or maintenance.**

The policies also contain an exclusion for loss caused by negligent design, construction or maintenance, an exclusion that eviscerates Plaintiffs' theory that they are entitled to coverage because negligence in the design, construction and maintenance of the levees allegedly contributed to the flooding. This exclusion provides that:

> We do not insure for loss to property described in Coverages A and B caused by any of the following . . .
>
> **Faulty, inadequate or defective:**
>
> **(1)** Planning, zoning, development, surveying, siting;
>
> **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>
> **(3)** Materials used in repair, construction, renovation or remodeling; or
>
> **(4)** Maintenance;

of part or all of any property whether on or off the "residence premises" ((INS 000011, INS 000071, INS 000110, INS 000155, INS 000197, INS 000318, INS 000358, INS 000406 and INS 000458  (emphasis in original))

Plaintiffs allege that the "negligent ***design, construction, [or] maintenance*** of the levees" caused the water damage to their property. (Am. Cmpl., ¶ 50) (emphasis added)  These specific causes of loss are enumerated and excluded in the provision quoted above. Allegations of negligence in the design, construction or maintenance of the levees cannot be used to create coverage for excluded water damage. To the extent that Plaintiffs assert that negligence in the design, construction or maintenance of the levees was the direct cause of their loss, this exclusion bars their claim.

Nor can Plaintiffs attempt to escape the scope of this exclusion by asserting that their loss was more attenuated. While this exclusion has an exception that provides "any ensuing loss to property . . . *not excluded* or excepted in this policy is covered" (emphasis added), Plaintiffs' claims do not fall within this exception because, as discussed throughout, flood loss is expressly excluded under the policies' Water Damage Exclusion.

Courts have applied similar exclusionary language in similar circumstances to bar coverage. In *Waldsmith v. State Farm Fire & Cas. Co.*, 283 Cal. Rptr. 607 (Cal. Ct. App. 1991), for example, the plaintiffs' home was destroyed by a landslide that resulted from a break in a water main, which had been negligently maintained by the city. *Id.* at 607-08. The California Court of Appeal affirmed summary judgment for the insurer, holding that the negligent maintenance of the water main "squarely" fell within an exclusion for "inadequacy in workmanship, materials used in repair, or 'maintenance of any property . . . of any kind whether on or off the premises.'" *Id.* at 608; *see also Holland v. Breaux*, No. 04-3028, 2005 U.S. Dist. LEXIS 36504, at *9-10 (E.D. La. Nov. 22, 2005) (holding that, to the extent that damage to home was caused by improper venting of dryer, it was excluded under policy's exclusion for faulty planning, construction or maintenance).[6]

**D.     The Reasonable Expectations Doctrine Does Not Salvage Plaintiffs' Claims.**

Left without any policy provisions to offer in support of their coverage claims, Plaintiffs allege that they are entitled to coverage based on the reasonable expectations doctrine. Under

---

[6]     Furthermore, to the extent Plaintiffs contend that levee breaches were caused by acts or omissions of governmental bodies, or any other entity or individual, the policies exclude coverage for damage to real property caused by: "Acts or decisions, including the failure to act or decide, of any person, group organization or governmental body." (INS 000011, INS 000071, INS 000110, INS 000155, INS 000197, INS 000318, INS 000358, INS 000406 and INS 000458)

this doctrine as applied in Louisiana, if a court finds that an insurance policy is ambiguous, and the ambiguity cannot be resolved, the court will "ascertain[] how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered," in order to "fulfill the reasonable expectations of the parties in light of the customs and usages of the industry." *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 764 (La. 1994) (internal quotations and citations omitted).  Louisiana law, however, "precludes use of the reasonable expectations doctrine to recast policy language when such language is clear and unambiguous." *Coleman v. School Bd. of Richland Parish*, 418 F.3d 511, 522 (5th Cir. 2005). *See also La. Ins. Guar. Ass'n*, 630 So. 2d at 764 ("[I]f the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written."); *Boudreaux v. Siarc, Inc.*, 714 So. 2d 49, 54 (La. Ct. App. 1998) (holding that insured's purported lack of knowledge of policy exclusion for liquor liability and reliance on agent was not a basis for application of reasonable expectations doctrine); *St. Paul Fire & Marine Ins. Co. v. Valentine*, 665 So. 2d 43, 47 (La. Ct. App. 1995) (holding that reasonable expectations doctrine was inapplicable where policy was unambiguous); *Malmay v. Sherman*, No. 02-2294, 2003 U.S. Dist. LEXIS 15918, at *25 (E.D. La. Sept. 8, 2003) (Africk, J.).  Given that Plaintiffs' claims are excluded by the clear and unambiguous language in the Moving Defendants' policies, the reasonable expectations doctrine cannot be used to create coverage. The Complaint therefore must be dismissed.

**E.      Plaintiffs' Extra-Contractual Claims Fail As A Matter of Law.**

In addition to the claims discussed above, Plaintiffs also allege that the Moving Defendants "violated the duties of good faith and fair dealing owed to Policyholders" (Am.

Cmpl., ¶¶ 70-81) (Count III) and "have engaged in bad faith conduct in violation of La. Rev.

Stat. Ann. § 22:1220." (Am. Cmpl., ¶¶ 82-92) (Count IV). Each of these claims is based on the

theory that the Moving Defendants acted in bad faith when they allegedly adjusted Plaintiffs'

claims and denied coverage for flood damage. These claims must also be dismissed as a matter

of law.[7]

First, Count III, which purports to assert a breach of the "implied covenant of good faith

and fair dealing," must be dismissed because bad faith claims handling is governed exclusively

by statute in Louisiana. "La. R.S. 22:1220 (B) provides an exclusive list of the 'extra-contractual

or tort-like' claims actionable against an insurer for an alleged breach of the insurer's duty of

good faith and fair dealing." *Robin v. Allstate Ins. Co.*, 870 So. 2d 402, 408 (La. Ct. App. 2004)

(*relying on Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184 (La. 1997)) (characterizing insurer's

argument and holding that trial court did not err in granting insurer's exceptions of no cause of

action with respect to insured's tort claims); *see also Anslave v. State Farm Mutual Automobile

Insurance Co.*, 737 So 2d 948, 950-951 (La. Ct. App. 1999); *Endsley v. Pennington*, 718 So. 2d

650, 654 (La. Ct. App. 1998); *Brister v. Geico Insurance*, 813 So. 2d 614, 619 (La. Ct. App.

2002). In short, there is no common law cause of action for insurance bad faith claims handling

---

[7] The Complaint also includes a claim for Breach of Fiduciary Duty against State Farm, Allstate, Liberty Mutual and "other similarly situated insurance company defendants" who "sell their homeowners insurance policies directly to their customers . . . ." (Am. Cmpl., ¶¶ 93-100) (Count V)) This cause of action is not addressed here because it is not pled against any of the Moving Defendants, except Liberty Mutual Insurance Company. Liberty Mutual Insurance Company joins in § IV of Allstate Insurance Company's Memorandum of Law, which addresses this claim, as does any Moving Defendant, if any, against whom Plaintiffs purport to plead a breach of fiduciary claim. Moreover, to the extent Plaintiffs assert that this claim is directed against any other Moving Defendant, it should be dismissed for the additional reason that it does not put the Moving Defendants on adequate notice. *See* Fed. R. Civ. P. 8; *Edwards v. Allstate Prop. & Cas. Ins. Co.*, No. 04-2434, 2005 WL 221558, *2-3 (E.D. La. June 27, 2005) (Duval, J.) (a complaint will be deemed inadequate if it fails to give notice of the circumstances which give rise to the claim and set forth sufficient facts).

under Louisiana law, so Plaintiffs' attempt to plead such a cause of action for extra-contractual damages must fail as a matter of law.

Plaintiffs' statutory bad faith allegations also fail as a matter of law. This Court has previously recognized that bad faith claims "do not stand alone, but depend upon a valid underlying claim." *Edwards*, 2005 WL 221558, at * 3 (dismissing plaintiff's bad faith claim because she "has no underlying breach of contract on her insurance policy"); *see also Clausen v. Fidelity & Deposit Co. of Md.*, 660 So. 2d 83, 85-86 (La. Ct. App. 1995) (no cause of action for bad faith "absent a valid, underlying, insurance claim"); *Phillips v. Patterson*, 813 So. 2d 1191, 1195 (La. Ct. App. 2002) (same); *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 293 (5th Cir. 2001) (holding that where insurer had no duty to provide coverage, it did not violate La. R.S. 22:1220). As described at length in the previous sections of this memorandum, Plaintiffs do not have a valid breach of contract claim arising from the Moving Defendants' denial of coverage for losses caused by flooding. Therefore, as a matter of law, they cannot plead a claim for insurance bad faith.

Moreover, even if Plaintiffs' breach of contract claim were to somehow survive, which it cannot, their claims for insurance bad faith would still fail. Numerous state and federal courts in Louisiana recognize that "bad faith" statutes "should not be invoked when the insurer has a reasonable basis for denying coverage." *American Gulf VII, Inc. v. Otto Candies, Inc.*, Nos. 94:3905, 95:1666, 1997 WL 566250, *11 (E.D. La. April 28, 1997) (Duval, J.); *see also Premiere, Inc. v. Commercial Underwriters Ins. Co.*, No. 02-3199, 2004 WL 169813, *3 (E.D. La. June 26, 2004) (Barbier, J.) (no bad faith where insurer relied on reasonable interpretation of its policy); *National Union Fire Ins. Co. v. Cagle*, 68 F.3d 905, 914 (5th Cir. 1995) (holding that,

where insurer had "plausible arguments of no coverage," there was no basis to conclude that the insurer "acted arbitrarily, capriciously, or without probable cause in refusing payment"). The "statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and was acting in good-faith reliance on that defense." *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So. 2d 746, 752 (La. Ct. App. 1999). Louisiana courts further recognize that "[t]his is especially true where there is a reasonable and legitimate question as to the extent and causation of a claim." *Id.*

Once again, the Moving Defendants' positions regarding the absence of coverage for post-Katrina water damage is based on an absolute and unambiguous exclusion set out within each of their policies. As previously described, that exclusion is amplified and reinforced by various other provisions and exclusions within each relevant policy. At a minimum, Plaintiffs' claim that the Moving Defendants acted in bad faith by interpreting their policy provisions to deny Plaintiffs' post-Katrina water damage claims must be rejected as a matter of law. Therefore, for this separate and independent reason, Plaintiffs' claims for insurance bad faith must be dismissed.

Plaintiffs' references to La. R.S. 22:658.2(A)(1), which did not become effective until February 23, 2006, do not alter this result.[8] Plaintiffs' claims for coverage for flood damage attempt to hold the Moving Defendants liable under La. R.S. 22:658.2(A)(1) on the theory that water lines have no significance whatsoever because all water damage is covered under the Moving Defendants' policies. This, of course, stretches the new statute far beyond its plain

---

[8] Plaintiffs do not allege that any of the Defendants engaged in any specific conduct which violated this statute in connection with any of their individual claims after the effective date of this statute, which was six months after Hurricane Katrina.

meaning.[9]  Plaintiffs in this matter are not alleging that their insurers made an improper

determination about how much damage was caused by wind and how much damage was caused

by floodwaters; rather, they are claiming only that all flood damage should be covered and for

that reason the water line should be disregarded as irrelevant.  This, of course, was not the

purpose of La. R.S. 22:658.2, nor is it consistent with the plain meaning of that statute.  Once

again, Plaintiffs' claims must be dismissed as a matter of law.

## IV.

## CONCLUSION

Plaintiffs' Complaint should be dismissed with prejudice in its entirety, as it relates to the

Moving Defendants.  Plaintiffs allege that their homes were flooded.  The Moving Defendants do

not insure against losses caused by floods, regardless of the cause of the flood.

Respectfully submitted:

Ralph S. Hubbard III, T.A., La. Bar. # 7040
Joseph P. Guichet, La. Bar #  24441
Seth A. Schmeeckle, La. Bar # 27076
LUGENBUHL, WHEATON, PECK,
          RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:    (504) 568-1990
Facsimile:    (504) 310-9195

-and-

---

[9]  Indeed, the passage into law of La. R.S. 22:658.2(A) highlights again the fundamental distinction between flood damage and wind damage and the propriety of denying coverage for losses caused by flood damage based upon proper evidence of the cause.

30

Stephen E. Goldman
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Telephone: (860)275-8255
Facsimile: (860)275-8299

Attorneys for The Standard Fire Insurance
Company

And

Ralph S. Hubbard III, T.A., La. Bar. # 7040
Joseph P. Guichet, La. Bar # 24441
Seth A. Schmeeckle, La. Bar # 27076
LUGENBUHL, WHEATON, PECK,
         RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:     (504) 568-1990
Facsimile:     (504) 310-9195

-and-

Kevin Kamraczewski
Andrew R. Greene
Sonnenschein Nath & Rosenthal LLP
Sears Tower, Suite 7800, 233 South Wacker Drive
Chicago, Illinois 60606-6404
Telephone: (312)876-8000
Facsimile: (312)876-7934

Attorneys for The Hanover Insurance Company

And

MAURA Z. PELLETERI (#8463)
ANDREA MITTLEIDER (#27578)
AMY M. SELTZER (#29882)
KREBS, FARLEY, & PELLETERI, P.L.L.C.
400 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: (504) 299-3570
Facsimile: (504) 299-3582
ATTORNEYS FOR AEGIS SECURITY
INSURANCE COMPANY

And

LAWRENCE J. DUPLASS (#5199)
C. MICHAEL PFISTER (#14317)
KELLY CAMBRE BOGART (#22985)
KEVIN R. DERHAM (#27163)
NICOLE N. BOWEN (#29099)
JAIME M. CAMBRE (#29116)
Duplass, Zwain, Bourgeois, Morton
Pfister & Weinstock
3838 North Causeway Boulevard
Three Lakeway Center, Suite 2900
Metairie, LA 70002
Telephone:  (504) 832-3700
Facsimile:  (504) 837-3119
Attorneys for American Insurance Company

And

H. Minor Pipes, III, La. Bar No.  24603
Barrasso Usdin Kupperman Freeman & Sarver,
L.L.C.
909 Poydras St., Suite 1800
New Orleans, LA 70112
Direct:  (504) 589-9726
Fax:    (504) 589-9701
Attorney  for  Liberty  Mutual  Fire  Insurance
Company

And

32

ROBERT I. SIEGEL, ESQUIRE (#12063)
Gieger, Laborde & Laperouse, LLC
Suite 4800 - One Shell Square
701 Poydras Street
New Orleans, LA 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011

-and-

RICHARD J. DOREN, ESQUIRE
Gibson, Dunn & Crutcher, LLP
Los Angeles Office
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7038
Facsimile: (213) 229-6038
Counsel for Lexington Insurance Company

And

Neal J. Favret, La. Bar No.:  24412
Alan J. Yacoubian, La. Bar No.:  17213
Johnson Johnson Barrios & Yacoubian
701 Poydras Street, Suite 4700
New Orleans, Louisiana 70139-7708
Tel: 504.528.3001   Fax: 504.528.3030
Direct:504.589.9675  Cell:504.723.9101
Attorneys for Auto Club Family
Insurance Company

And

William J. Wegmann, Jr. T.A. (Bar No. 13317)
110 Beterans Memorial Boulevard, Suite 440
Metairie, Louisiana 70005
Telephone: (504)833-3800
Facsimile:  (504)838-8440

Attorney for Lafayette Insurance Company

33

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Consolidated Memorandum of Law in Support of Rule 12(b)(6) Motion to Dismiss the Complaint has been served upon all known counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this 14th day of August, 2006.

100056722_2.DOC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: KATRINA CANAL BREACHES      *      CIVIL ACTION
CONSOLIDATED LITIGATION            *      NO.: 05-4182 "K"(2)
                                   *
_____    *      JUDGE DUVAL
PERTAINS TO:  INSURANCE            *
*Chehardy*, Nos. 06-1672, 06-1673, and   *      MAGISTRATE JUDGE WILKINSON
06-1674                            *
                                   *
                                   *

**APPENDIX TO CONSOLIDATED MEMORANDUM OF LAW
IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS**

**TABLE OF CONTENTS**

| **Document** | **Tab** | **Bates Numbers** |
|---|---|---|
| Aegis Security Insurance Company<br>Homeowners Policy No. HO036424 issued to Michael & Karen Peterson | 1 | INS 000001<br>Through<br>INS 000036 |
| Water Damage, Weather Conditions and Faulty Workmanship Exclusions | A | INS 000011 |
| The American Insurance Company<br>Homeowners Policy No. NZC 209 14 67 issued to Gladys Chehardy | 2 | INS 000037<br>Through<br>INS 000087 |
| Water Damage, Weather Conditions and Faulty Workmanship Exclusions | A | INS 000071 |
| Auto Club Family Insurance Company<br>Homeowners Policy No. P1-336829-1 issued to Randy and Lori Gervais | 3 | INS 000088<br>Through<br>INS 000121 |
| Water Damage, Weather Conditions and Faulty Workmanship Exclusions | A | INS 000110 |
| | | |

| Document | Tab | Bates Numbers |
|---|---|---|
| The Hanover Insurance Company<br>Policy No. ZHO 4263053 12 issued to New Orleans Flooring &<br>Supply Company | 5 | INS 000167<br>Through<br>INS 000306 |
| Faulty Workmanship Exclusion | A | INS 000197 |
| Water Damage and Weather Conditions Exclusions | B | INS 000199 |
| Lafayette Insurance Company<br>Homeowners Policy No. 80690797 issued to Karen Lewis | 6 | INS 000307<br>Through<br>INS 000344 |
| Water Damage Exclusion | A | INS 000317 |
| Weather Conditions and Faulty Workmanship Exclusions | B | INS 000318 |
| Lexington Insurance Company<br>Homeowners Policy No.: LE 0616590 01 issued to Austra and<br>Antonio Zapata | 7 | INS 000345<br>Through<br>INS 000392 |
| Water Damage Exclusion | A | INS 000357 |
| Weather Conditions and Faulty Workmanship Exclusions | B | INS 000358 |
| Liberty Mutual Fire Insurance Company<br>Homeowners Policy No.: H32-298-026188-405 9 issued to Shame<br>Sylvester | 8 | INS 000393<br>Through<br>INS 000434 |
| Water Damage, Weather Conditions and Faulty Workmanship<br>Exclusions | A | INS 000406 |
| The Standard Fire Insurance Company | 9 | INS 000435<br>Through<br>INS 000467 |
| Water Damage, Weather Conditions and Faulty Workmanship<br>Exclusions | A | INS 000458 |