UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **COLLEEN BERTHELOT, ET AL** | * | CIVIL ACTION NO. |
| | * | |
| **VERSUS** | * | No.: 05-4182, Pertains to: |
| | * | *Insurance Case* |
| **BOH BROTHERS CONSTRUCTION CO., LLC, ET. AL.** | * | 06-1672, 06-1673, 06-1674 |
| | * | |
| | * | Section: "K" (2) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SUPPLEMENTAL MEMORANDUM OF LAW
## OF LAFAYETTE INSURANCE COMPANY
### In Support of Its
### MOTION FOR JUDGMENT ON THE PLEADINGS

### Preliminary Statement

The plaintiffs have sued the Lafayette Insurance Company (hereafter sometimes "Lafayette"), based upon alleged policy language which is not present in this defendant's ISO homeowners policies.

Lafayette herewith submits this Supplemental Memorandum to the Consolidated Memorandum of Law in Support of Rule 12(b)(6) Motion to Dismiss on the ISO forms, filed on behalf of Standard fire Insurance Company, Lexington Insurance Company, Liberty Mutual Fire Insurance Company, Auto club Family Insurance Company, AEGIS Security Insurance Company, The American Insurance Company, Lafayette Insurance Company, and The Hanover Insurance Company.

### The Interpretation of Contracts

The plaintiffs have made highly generalized, "cookie cutter" allegations against all the insurer defendants indiscriminately. The plaintiffs have not identified any of the particular policy language

in the ISO and Lafayette policies which it finds offensive, ambiguous, a violation of the Insurance Code, Louisiana's Legislative expression of public policy with respect to insurance policies.

<u>La. R.S. 22:620(A)(4)</u>

*Any insurer may insert in its policies any provisions or conditions required by its plan of insurance or method of operation which are not prohibited by the provisions of the Insurance Code.* (Emphasis supplied.)

It is fundamental that the insurance contract is the law between the parties. C.C. Art. 1983. The insurance policy is a contract which should be construed employing the general rules of interpretation of contracts set forth in the Civil Code. *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 04/11/94), 634 So.2d 1180, 1183. Parties are free to contract for any object that is lawful, possible, and determined or determinable. CC Art. 1971.

The sources of law are legislation and custom. CC Art. 1. Legislation is a solemn expression of legislative intent. CC Art. 2. Custom arises from practice repeated for a long period of time and generally accepted as having acquired the force of law. Custom may not abrogate legislation. CC Art. 3. No one may avail himself of ignorance of the law. CC Art. 5.

The rules for the interpretation of contracts are contained in the Louisiana Civil Code at Articles 2045 *et seq*, including:

The interpretation of a contract is the determination of the common intent of the parties. CC Art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. CC Art. 2046. The words of a contract must be given their generally prevailing meaning. CC Art. 2047(1). Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. CC Art. 2050.

A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. CC Art. 2053. Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another. Usage, as intended in the preceding articles, is a practice regularly observed in affairs of a nature identical or similar to that object of a contract subject to interpretation. CC Art. 2055.

Congress itself has recognized both the intention and right of homeowners' insurers to exclude flood coverage through the enactment of the National Flood Insurance Program. The plaintiffs have admitted this and also the insurers' intention to exclude flood coverage.

It is a matter of public record that the Department of Insurance and the Commissioner of Insurance both had made public declarations, well in advance and unrelated to Katrina, that standard homeowners' insurance policies do not cover flood damage.

An Insurer May Limit its Coverage:

It is well-settled in Louisiana that "insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy." Further, the rules of interpretation "do not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity, where none exists, nor does it authorize the court to make a new contract expressed with sufficient clearness to convey the plain meaning of the parties." *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 04/11/94), 634 So.2d 1180, 1183.

The plaintiffs have not alleged violations of the Insurance Code, which is the solemn expression of the Louisiana Legislature of its legislative intent and public policy on insurance contracts in addition to the Civil Code provisions for the interpretation of contracts. CC Art. 1 and La. R.S.22:1 seq.

Insureds who had not paid premiums for flood coverage would be unjustly enriched by recovering for the same under the homeowners policy. The statutory provisions and rules for the interpretation of contracts, when viewed by the codal standard of Equity, i.e., the principle of CC Art. 2055.1 that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another, requires that a Court should not supplant its opinion for that of the Louisiana Legislature and the administrative process which it has established.

The plaintiffs' requested interpretation would indeed require the Court to author a perversion of policy language, through the exercise of inventive powers, for the purpose of creating an ambiguity, where none exists. The plaintiffs' requested interpretation of this defendant's policies would require the Court to make a new contract, viz. a policy providing coverage for flood damage. This would change the very nature and object of the contract and violate codal concepts of fairness, contrary to Custom and Usage, requiring the Court to rule against all previous interpretations of the same or similar policies.

### The Flood and Water Damage Exclusion

This exclusion is consistent with the NFIP's definition of "Flood" set forth by 44 CFR § 59.1, which inter alia provides, "Flood" is defined as (a) A general and temporary condition of partial or complete inundation of normally dry land areas from ... (2) The unusual and rapid accumulation of runoff of surface waters from any source.

The ISO and Lafayette policies exclude loss caused by water damage "regardless of any other cause or event contributing concurrently or in any sequence to the loss," a clause that at least two federal courts in Louisiana have concluded unambiguously excludes coverage for losses within its purview, even if a covered cause of loss arguably caused or contributed to the loss. *Prytania Park Hotel v. General Star Indem. Co.*, 896 F. Supp. 618, 624 (E.D. La. 1995).

In *Travelers Indem. Co. v. Powell Ins. Co.*, Civ. A. No. 95-4188, 1996 U.S. Dist. LEXIS 15041 (E.D. La. Oct. 4, 1996) Powell Insurance Company, an insurance broker, sued Travelers to recover for water damage to golf carts.[1] Id. at *1. New Orleans had been affected by "torrential rains that caused severe flooding and considerable property damage . . . ." Id. at *3. The golf carts were insured under a commercial insurance policy issued by The Travelers Indemnity Company ("Travelers"). Travelers was granted summary judgment on the grounds that the loss was not covered under a water damage exclusion. Id. at *2-3. The Travelers' policy's water damage exclusion was virtually identical to that of Lafayette's policies. Judge Vance concluded the exclusion "unambiguously excludes coverage for flood damage to the golf carts," and stressing that "[t]his Court cannot strain to find an ambiguity in the policy where none exists . . . ." Id. at *8.

## CONCLUSION

The plaintiffs' allegations do not apply to the ISO and Lafayette Insurance Company policies. The Mover is entitled to dismissal on the pleadings with prejudice at plaintiffs' costs.

---

[1] Powell sued after settling a professional liability suit brought against it by its client, the Metairie Country Club, which was Travelers' insured. As part of the settlement, Powell took an assignment of the country club's rights against Travelers.

Respectfully Submitted,

*[signature]*

**WILLIAM J. WEGMANN, JR. (#13317)**
**ORR ADAMS, JR. (17901)**
110 Veterans Memorial Blvd., Suite 440
Metairie Louisiana 70005
Telephone: (504) 833-3800

**HOWARD B. KAPLAN (#14414)**
1615 Metairie Rd., P.O. Box 55490
Metairie, Louisiana 70055-5490
Telephone: (504) 834-2612

## CERTIFICATE OF SERVICE

I, William J. Wegmann, Jr., an attorney of record for Lafayette Insurance Company, certify that on August 15, 2006, a copy of the foregoing **Supplemental Memorandum of Law of Lafayette Insurance Company in Support of its Motion for Judgment on the Pleadings** has been served on all parties by electronic service or by First Class, United States Mail, properly addressed and postage prepaid.

*[signature]*
William J. Wegmann, Jr.