UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA



In Re: KATRINA CANAL BREACHES          *
CONSOLIDATED LITIGATION                *    CIVIL ACTION
                                       *    NO.: 05-4182 "K" (2)
                                       *
_____*
                                       *    JUDGE DUVAL
PERTAINS TO: INSURANCE                  *
*Chehardy*, Nos. 06-1672, 06-1673, and 06-1674   *    MAGISTRATE JUDGE WILKINSON
                                       *

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**ALLSTATE INSURANCE COMPANY AND**
**ALLSTATE INDEMNITY COMPANY'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**[1]

## INTRODUCTION

For over 80 years, courts inside and outside of Louisiana have enforced a

homeowner policy's coverage exclusion for all losses caused by water inundating otherwise dry

land. Courts, commentators, Congress and state insurance departments, including the Louisiana

---

[1]   On October 31, 2005, Allstate filed a Motion for Judgment on the Pleadings in response
to the plaintiffs' Original Petition and First Supplemental and Amending Petition. The
motion has not been heard. Allstate has filed the instant motion in response to the
plaintiffs' Amended and Restated Complaint, which was filed on May 24, 2006.

Department of Insurance, publicly have recognized that most homeowner policies do not cover flood damage.[2] Allstate and other insurers calculated their premiums accordingly.

Now, in the wake of Hurricane Katrina's devastating floods, plaintiffs seek to uproot this well-entrenched jurisprudence, ignore the clear and unambiguous policy language, and judicially rewrite the policies in midstream to impose upon Allstate catastrophic flood losses that are not covered under the terms of the policies and for which no premium was paid.

Louisiana law, however,  requires the Court to enforce the insurance policy as written.  That policy broadly excludes any loss caused by:

1.   Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2.   Water or any other substance that backs up through sewers or drains.

3.   Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4.   Water or any other substance on or below the surface of the ground, regardless of its source.  This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

> Exh. "A" at 6 (¶¶1-4), ALST 00230-31.

Plaintiffs' contention that coverage for their flood damage exists because it was caused by "windstorm," "storm surge," and/or the negligent maintenance, design, and construction of the levees, is without merit.  Allstate's flood exclusion does not depend upon the

---

[2]   Because of the nature of flood losses, Congress recognized that it was uneconomic for private insurers to provide flood coverage among its basic coverages, and in 1968, created the National Flood Insurance Program ("NFIP") to fill this void.  *See* 42 U.S.C. § 4001, *et seq.*  Under the NFIP, flood policies are underwritten by and premiums paid to the federal government.  44 C.F.R. Pt. 61, App. A.

cause of the flood. It specifically excludes damage caused by water, "whether or not driven by wind." Exh. "A" p. 6 ¶ 1, ALST 00230. Moreover, the Policy expressly excludes coverage for losses caused by faulty, inadequate or defective design, construction, maintenance, and/or inadequate materials or from "weather conditions". *Id.* at p. 8 ¶¶ 21-22, ALST 00232.

There is no authority that the flood exclusion violates any public policy. Despite the exclusion's eighty-year history, there is no statute, no rule or regulation of any department of insurance, and no case in any jurisdiction suggesting that the flood exclusion is anything other than a lawful, valid and fully enforceable contractual provision. Indeed, policy forms containing the flood exclusion have been approved for decades by the Louisiana Department of Insurance, as well as by other insurance regulators throughout the Country. As Judge Senter recently held in *Buente v. Allstate Ins. Co.,* 422 F. Supp. 2d 690 (S.D. Miss. 2006), Allstate's flood exclusion is valid and enforceable. Accordingly, Counts One and Two, seeking coverage for flood damage, must be dismissed.[3]

The Court also should dismiss plaintiffs' newly added bad faith claims in Counts Three and Four. Count Three fails because Louisiana does not recognize a stand-alone claim for breach of the implied covenant of good faith and fair dealing. Count Four fails because plaintiffs have no substantive claims under their policies for flood damage, and therefore Allstate as a matter of law did not violate La. R.S. 22:658 or 1220. More importantly, Allstate's position regarding the

---

[3]    From their pleadings, plaintiffs plainly are seeking coverage for flood damage under various theories. To the extent plaintiffs also seek coverage for losses caused exclusively by wind, such as loss of roof shingles, Allstate does not dispute that its Policy covers those wind losses, including losses caused by wind driven rain, occurring before the flooding.

flood exclusion is at a minimum a reasonable position that is fully consistent with established law and precedent, thereby precluding as a matter of law any suggestion that Allstate acted arbitrarily and capriciously. Finally, plaintiffs' breach of fiduciary duty claim in Count Five against Allstate should be dismissed. Under Louisiana law, an insured has a duty to know and understand his coverages and limits, and Allstate had no duty to warn the plaintiffs that they were allegedly underinsured or to advise them to purchase additional insurance.

## <u>BACKGROUND</u>

Plaintiffs' amended complaint alleges that in August 2005, Hurricane Katrina made landfall in Louisiana, and that "significant breaches in the New Orleans area levee systems occurred . . . caus[ing] releases of water into the City and adjoining parishes," which caused "80% of Orleans Parish [to be] under water" and "damage to [the plaintiffs'] property as a result of the catastrophic events." Am. Complaint, R. Doc. No. 445, ¶¶ 43-45. They contend that their water damage was caused by "windstorm," "storm surge," and/or the levees' negligent design, maintenance, and/or use of inadequate materials and therefore not excluded from coverage. *Id.* at pp. 17-18. Count I seeks a declaration that plaintiffs' alleged losses were covered under their respective homeowners' policies, and Count II seeks damages against the defendant insurers for breach of contract. Plaintiffs also assert claims for violation of Louisiana's bad faith statutes, (Count Three) breach of the implied covenant of good faith and fair dealing under La. R.S. 22:1220 (Count Four) and breach of fiduciary duty for allegedly failing to warn the plaintiffs of the availability of flood policies (Count Five).

## ARGUMENT AND AUTHORITIES

### I.   Standard for Motion to Dismiss.

For purposes of a Rule 12(b)(6) motion to dismiss, the court will accept the well-pleaded allegations as true and the motion will be granted if the plaintiffs cannot recover, as a matter of law, on the facts alleged. *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004). While well pleaded facts are accepted as true, the Court will not "accept as true conclusory allegations or unwarranted deductions of fact". *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 (5th Cir. 2002). The Court may also consider "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A&M Univ.,* 343 F.3d 533, 536 (5th Cir. 2003). Allstate's homeowner policy and its exclusions, which are referenced in plaintiffs' Complaint, are central to the plaintiffs' claim and the terms thereof may be considered in this motion Rule 12(b) motion.

### II.   Counts One and Two Must Be Dismissed Because The Allstate Policy Does Not Cover Flood Damage Regardless Of The Cause.

Count One, seeks a declaration that the Allstate Policy provides coverage for plaintiffs' flood losses because the levee breaches supposedly resulted from wind, acts of negligence and storm surge. Plaintiffs also seek a declaration that the Policy's flood exclusion and other exclusions do not apply to the "breaking or failure of boundaries of lakes, reservoirs, rivers, streams or other bodies of water" or to "the damage caused by water entering the City of New Orleans". Am. Complaint, R. Doc. No. 445, pp. 17-18. Count Two seeks monetary recovery for plaintiffs' flood losses under their respective homeowners' policies. Allstate is

entitled to judgment on the pleadings on both Counts because its homeowner policy excludes

flood damage, regardless of the cause.

A.     **Allstate's Homeowner Policy Excludes Coverage for the Plaintiffs' Proposed
       Declaration Regarding Flood Damage.**

Plaintiffs' alleged damage caused by "water entering the City of New Orleans and

adjoining parishes" is expressly excluded from coverage by Allstate's homeowner policy. *Id.* at

pp. 17-19. The policy expressly excludes any loss caused by:

1.     Flood, including, but not limited to surface water, waves, tidal water or
       overflow of any body of water, or spray from any of these, whether or not
       driven by wind.

2.     Water or any other substance that backs up through sewers or drains.

3.     Water or any other substance that overflows from a sump pump, sump
       pump well or other system designed for the removal of subsurface water
       which is drained from a foundation area of a structure.

4.     Water or any other substance on or below the surface of the ground,
       regardless of its source. This includes water or any other substance which
       exerts pressure on, or flows, seeps or leaks through any part of the
       residence premises.

                             Exh. "A" at p. 6 (¶¶ 1-4),[4] ALST
                             00230-31.

Where the term "flood" is not specifically defined in a policy, as here, the term

must be given its plain, ordinary, and generally prevailing meaning. La. Civ. Code art. 2047;

*Reynolds v. Select Props.*, 634 So. 2d 1180, 1183; *see also Riverwood Int'l Corp. v. Employers*

*Ins. of Wausau*, 420 F.3d 378, 383 (undefined term in insurance policy must be given its plain

meaning). The ordinary meaning of "flood" is water flowing over onto normally dry land. The

---

[4]     The Policy also expressly warns plaintiffs that most homeowners' policies "do not
        provide coverage for damage caused by floods. In fact, protection against floods is
        generally available only through a separate policy". Exh. "A" at ALST 00217; Exh. "B"
        at ALST 00269; Exh. 'C" at ALST 00013

Oxford English Dictionary, for example, defines a "flood" as "an overflow of a large amount of water over dry land."   Oxford English Dictionary (2005); *see also* Webster's Encyclopedic Unabridged Dictionary of the English Language (1989) (defining "flood" as a "great flowing or overflowing of water, esp. over land not usually submerged"); American Heritage Dictionary of the English Language (2000) ("overflowing of water onto land that is normally dry"); Oxford American Dictionary of Current English (1999) ("an overflowing or influx of water beyond its normal confines, esp. over land; an inundation").

Courts nationwide similarly have held time and again that "flood" means "a body of water (including moving water) . . . overflowing or inundating land not usually covered, and no distinction is made between natural and artificial causes." *Bartlett v. Continental Divide Ins. Co.*, 697 P.2d 412, 413 (Colo. Ct. App. 1984), *aff'd*, 730 P.2d 308 (Col. 1986) (citing 36A C.J.S. Flood); *Aetna Ins. Co. v. United States*, 628 F.2d 1201 (9th Cir. 1980) (partially completed dam collapsed causing "flood"), *cert. denied*, 450 U.S. 1025 (1981); *see Wallis v. Country Mut. Ins. Co.*, 723 N.E. 2d 376, 378 (Ill. App. Ct. 2000) ("flood" is water that "escapes from a watercourse in large volumes and flows over adjoining property in no regular channel ending up in an area where it would not normally be expected"; loss occurring when waters overflowed bank and rose into insured's home resulted from "flood" within exclusion of policy), *appeal denied*, 731 N.E. 2d 772 (Ill. 2000); *W. Nat'l Mut. Ins. Co. v. Univ. of N.D.*, 643 N.W. 2d 4, 9 (N.D. 2002) (plain meaning of flood in dictionaries is "overflowing of water on an area normally dry").

Just three months ago, Judge Senter in the Southern District of Mississippi held Allstate's flood exclusion valid and enforceable and applicable to Hurricane Katrina's storm

surge, observing that the "inundation that occurred during Hurricane Katrina was a flood, as that term is ordinarily understood." *Buente v. Allstate Ins. Co.*, No. 05-712, 2006 WL 980784, at *1 (S.D. Miss. Apr. 12, 2006).[5]

Plaintiffs' damage here was caused by more than ten feet of water inundating dry land. There is no question that this was a "flood" within the meaning of Allstate's flood exclusion. And there is no "ambiguity" whatsoever. Just last month, Judge Vance held that Allstate's flood exclusion is "clearly worded" and that the "clear policy language" indicates that flooding caused by hurricanes is excluded. In fact, the court held that the policy language was so clear that an insured could not justifiably rely on an agent's alleged representations that the policy covered flood. *Dobson v. Allstate Ins. Co.*, No. 06-0252, *Slip Op.* 2006 WL 2078423 (E.D. La. Jul. 21, 2006).

Other Louisiana state and federal courts have consistently enforced similar water damage or flood exclusions, and none have held them to be ambiguous. For example, when Metairie Country Club sought coverage for golf carts damaged by severe flooding in May 1995, Judge Vance denied the claim, holding that the policy's flood exclusion "on its face unequivocally excludes coverage for flood damage to the golf carts". *Travelers Indem. Co. v. Powell Ins. Co.*, No. 95-4188, 1996 WL 578030, at *3 (E.D. La. Oct. 4, 1996); *see Cochran v. Travelers Ins. Co.*, 606 So. 2d 22, 24 (La. App. 5th Cir. 1992) ("surface water" includes, *inter alia*, a "body of water that collects and lays on the surface of the ground"); *Sherwood Real Estate*

---

[5]    The court in *Buente* denied Allstate's motion for judgment on the pleadings because the plaintiffs there also sought recovery for loss caused by wind, which is covered. Unlike *Buente*, plaintiffs here only seek coverage for flood damage, which plainly is excluded.

*& Inv. Co. v. Old Colony Ins. Co.*, 234 So. 2d 445, 446-47 (La. App. 1st Cir. 1970) (where water collected on roof following heavy rainstorm and caused leak, damage was excluded by flood exclusion expressly excluding "damage by surface water, whether wind driven or not").

Nor have courts outside of Louisiana hesitated to enforce flood exclusions.  In *Buente*, Judge Senter held that Allstate's flood exclusion is valid and enforceable, and precluded coverage for water damage caused by Hurricane Katrina's storm surge.  *Buente,* 2006 WL 980784, at *1; *see also Quesada v. Director, Fed. Emergency Mgmt. Agency*, 577 F. Supp. 695 (S.D. Fla. 1983) (where homeowner policy specifically excluded damage caused by flood and related events, property damage caused by heavy flooding and rains attributable to tropical storm was not covered), *aff'd*, 753 F.2d 1011 (11th Cir. 1985); *Eaker v. State Farm Fire & Cas. Ins. Co.*, 216 F. Supp. 2d 606, 622 (S.D. Miss. 2001) (where plaintiff brought suit under homeowner policy for property damage following Hurricane Georges, court held "water damage" exclusion excluded damages claimed by plaintiff); *Hardware Dealers Mut. Ins. Co. v. Berglund*, 393 S.W.2d 309, 313-14 (Tex. 1965) (excluding coverage for damage caused by rising water accompanying hurricane).

Against this overwhelming and universal authority, plaintiffs argue that the flood exclusion is nonetheless inapplicable or unenforceable because water "from the breaches in the levees," or man-made failures, caused property damage in Orleans, St. Bernard, and Jefferson Parishes. Am. Complaint, R. Doc. No. pp. 17-19.[6]

---

[6]     Plaintiffs erroneously claim that the flood exclusion only applies to overflow.  Am. Complaint, R. Doc. No. 445 at ¶¶ 60-61.

But Allstate's broad flood exclusion does not depend on the cause of the flooding, nor does it contain an exception for flooding caused by man-made failures. It excludes loss caused by a flood, whether from "surface water, waves, tidal water or overflow of any body of water." Exh. "A" at p. 6 (¶ 1). It also excludes damage caused by "[w]ater . . . on . . . the surface of the ground, *regardless* of its source," including water which flows, seeps or leaks through any part of a "residence premises." *Id.* at ¶ 4 (emphasis added). By its terms, the exclusion casts a broad net and is not limited in the manner the plaintiffs seek. And the policy specifically states that the exclusion applies "whether or not" the flood water was "driven by wind." *Id.* at ¶ 1.

A similar argument was made and rejected in *E.B. Metal & Rubber Industries, Inc. v. Federal Insurance Company*, 444 N.Y.S.2d 321 (N.Y. App. Div. 1981), where the plaintiff argued that a flood exclusion similar to Allstate's did not apply because the flood was caused by a failed dike that broke due to a pre-existing weakness. The court rejected the plaintiff's argument, holding that "[a]ll the policy requires is that there be rising waters which break through boundaries and flow upon the insured's land to constitute a flood. It is irrelevant that a defect in the dike may have also contributed to the break." *Id.* at 322; *see Industrial Enclosure Corp. v. N. Ins. Co.*, No. 97-6850, 2000 WL 1029192 (N.D. Ill. Jul. 26, 2000) (excluding water damage caused by overflow of tributary even though overflow may have been caused by collapse of nearby building). Likewise, in *Bartlett v. Continental Divide Insurance Company*, 697 P.2d 412, *supra*, the Court was unpersuaded by plaintiffs' argument that the flood exclusion did not apply where the damage resulted from water released when a dam failed. Despite the insureds' effort to contort the word "flood," the court gave the term "its ordinary and

customary meaning" and determined that the "cause of the loss was the flood caused by the failure of the dam; and loss by flood was specifically excluded from coverage." *Id.* at 413-14. *See also, Valley Forge Ins. Co. v. Hicks Thomas Lilienstern, L.L.P.*, 174 S.W. 3d 254 (Tex. App.-Hous. (1 Dist.) 2004) (excluding loss resulting from water flowing through man-made underground structures).

 As in *E.B. Metal, Bartlett*, and other above-cited cases, the alleged damage to the plaintiffs' normally-dry property caused by the alleged levee breaches is "flood" damage under the exclusion, regardless of the cause. Allstate's homeowner policy therefore does not cover the flood damage to the plaintiffs' property caused by the "water that entered the City of New Orleans," whether through levee breaches or otherwise. Am. Complaint, p. 14 ¶ 46. Such damage is clearly excluded.

**B.**  **Allstate's Homeowner Policy Excludes Coverage for the Plaintiffs' Proposed Declaration Regarding Third-Party Negligence.**

 The plaintiffs' next attempt to avoid the flood exclusion by alleging that their flood damage was "the result of levee failures caused by negligent design, negligent maintenance and/or inadequate materials." Am. Complaint pp. 14-15, ¶¶ 46, 50. That damage, however, is also expressly excluded by Allstate's policy. The policy specifically provides that it does not cover damage caused by:

Planning, Construction or Maintenance, meaning faulty, inadequate or defective:

a)  planning, zoning, development, surveying, siting;

b)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c)  materials used in repair, construction, renovation or remodeling; or

d)  maintenance;

of property **whether on or off the residence premises by any person or organization.**

Exh. "A" at p. 8 (¶ 22) (emphasis added).

Like the flood exclusion, the defective construction and maintenance exclusion has been enforced time and again by courts. *See, e.g., Julian v. Hartford Underwriters Ins. Co.*, 123 Cal. Rptr. 2d 767, 777-78 (Cal. Ct. App. 2d Dist. 2002) (negligence of developer excluded from coverage under insured's claim for damage to home caused by landslide), *aff'd and superseded on other grounds*, 110 P. 3d 903 (Cal. 2005); *Waldsmith v. State Farm Fire & Cas. Co.*, 232 Cal. App. 3d 693 (Cal. App. 4th Dist. 1991) (alleged negligent maintenance by city of water main that contributed to landslide was excluded under homeowner policy); *Bergeron v. State Farm Fire & Cas. Co.*, 766 A.2d 256 (N.H. 2000) (homeowner policy did not cover water damage from dam failure, even if damage was caused by faulty design and construction).

For example, in *Murray v. State Farm Fire & Casualty Company*, 219 Cal. App. 3d 58 (Cal. App. 4 Dist. 1990), the plaintiff claimed a loss from leakage of a water pipe where the leakage was caused by corrosion. The Court held that there was no liability because the damage resulted from deterioration, observing that "one might similarly argue that the predominating cause of the loss was the negligence of the individual or company who installed the copper pipe with insufficient protection against electrolysis. The [plaintiff's] policy, however, specifically excludes coverage for any 'defect, weakness, inadequacy, fault or unsoundness in . . . design, specifications, workmanship, construction [or] materials used in construction . . . of any property." *Id.* at 64 n.2.

Such reasoning is equally applicable here where the plaintiffs allege that their flood damage was caused by the alleged negligence of third parties in designing, constructing,

and maintaining the levees and/or using inadequate materials. That claim falls squarely within the faulty design, construction, maintenance, or inadequate materials exclusion of Allstate's homeowner policy. A "homeowners' insurance policy with an exclusion of the kind before us should not be interpreted as extending a warranty of fitness to materials used in construction or repair or as an extending coverage to property loss arising from the negligence of third parties." *McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1005-06 (Wash. 1992). Like the flood exclusion, the construction and maintenance exclusion bars plaintiffs' claims for declaratory relief and damages under the policies, and Allstate is entitled to judgment on the pleadings.

**C.    Allstate's Homeowner Policy Excludes Coverage for the Plaintiffs' Proposed Declaration Regarding "Windstorm" and "Storm Surge."**

The plaintiffs also hope to overcome the flood exclusion by arguing that their flood damage resulted from "windstorm" or "storm surge," and thus is covered under a homeowner policy. Complaint pp. 17-18. The plaintiffs presumably contend that water from the Industrial Canal, London Avenue Canal, and/or 17th Street Canal was thrust over and/or through certain barriers by Hurricane Katrina's extreme winds (*id.*), and therefore the wind actually caused the water to damage the plaintiffs' property.[7]

---

[7]    Contrary to the policy's terms, the plaintiffs allege they had a "reasonable expectation that they would be able to recover for any and all losses to their residence and personal property caused by hurricanes, including any and all damage proximately and efficiently caused by hurricane wind, and 'storm surge' proximately caused by hurricane wind." Am. Complaint, p. 10 ¶ 28. In the face of Allstate's clear and unambiguous contractual terms, the plaintiffs' alleged "expectation" must be ignored. *Musmeci v. Schwegmann Giant Super Mkts., Inc.*, 332 F.3d 339, 352 (5th Cir. 2003) (policy forms law between parties and must be enforced as written), *cert. denied*, 540 U.S. 1110 (2004). Judge Vance recently rejected a similar argument in denying a Motion to Remand, finding that "plaintiffs cannot prove justifiable reliance on the alleged misrepresentations made by their insurance agents in light of their possession of clearly worded contract terms to the
*Footnote Continued*

Again, no matter the cause, the plaintiffs' flood damage claims are excluded under Allstate's homeowner policy.  The flood exclusion provides, in part, that there is no coverage for "[f]lood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, ***whether or not driven by wind.***"  Exh. "A" at p. 6 (¶ 1), ALST 00230 (emphasis added).  Accordingly, it is immaterial whether Hurricane Katrina's winds or "storm surge" caused water to overflow and/or penetrate the barriers, which ultimately caused damage to the plaintiffs' property.  The flood damage simply is not covered by Allstate's homeowner policy.

This very issue recently was decided in *Tuepker v. State Farm Fire & Casualty Company*, No. 05-559, 2006 WL 1442489 (S.D. Miss. May 24, 2006), where the court determined that property loss caused by "storm surge" from Hurricane Katrina was excluded from coverage under the flood exclusion:

> Losses directly attributable to water in the form of a "storm surge" are excluded from coverage because this damage was caused by the inundation of plaintiffs' home by tidal water from the Mississippi Sound driven ashore during Hurricane Katrina.  This is water damage within the meaning of that policy exclusion.  The exclusion found in the policy for water damage is a valid and enforceable policy prevision.  Indeed, similar policy terms have been enforced with respect to damage caused by high water associated with hurricanes in many reported decisions.[8]

*Id*. at *3.

---

contrary".  *Dobson v. Allstate Ins. Co.*, No. 06-242, 2006 WL 2078423, at *12 (E.D. La. Jul. 21, 2006).

[8]    The *Tuepker* court relied on *Fireman's Ins. Co. v. Schulte*, 200 So. 2d 240 (Miss. 1967); *Lunday v. Lititz Mut. Ins. Co.*, 276 So. 2d 696 (Miss. 1973); *Lititz Mut. Ins. Co. v. Buckley*, 261 So. 2d 492 (Miss.1972); *Home Ins. Co. v. Sherrill*, 174 F.2d 945 (5th Cir. 1949); *Grace v. Lititz Mut. Ins. Co.*, 257 So. 2d 217 (Miss. 1972); *Commercial Union Ins. Co. v. Byrne*, 248 So. 2d 777 (Miss. 1971); *Litiz Mut. Ins. Co. v. Boatner*, 254 So. 2d 765 (Miss. 1971).

*See Arjen Motor Hotel Corp. v. General Acc. Fire & Life Assur. Corp.*, 379 F.2d 265, 267-68 (5th Cir. 1967) (holding that partial collapse of building was not covered where wave action contributed to damage under policy that excluded damage from flood or tidal water, whether driven by wind or not); *Steve's Pier One, Inc. v. Ins. Co. of N. Am.*, 517 N.Y.S.2d 194, 195 (App. Div. 1987) (excluding damage caused by objects propelled into a building by wind driven water); *Wheelock v. Am. Fire & Cas. Co.*, 414 S.W.2d 61, 63 (Tex. Civ. App. 1967) (finding that destruction of pier is excluded because caused by water, regardless of fact that water was wind driven).  Likewise, water damage suffered by the plaintiffs here as a result of alleged "proximate causes" such as "windstorm" and "storm surge," is not covered under the Allstate homeowner policy.

In addition, Allstate's homeowner policy excludes coverage for damage caused by "weather conditions that contribute *in any way* with a cause of loss excluded" that produces such damage.  Exh. "A" at p. 8 (¶ 21), ALST 00232 (emphasis added).  Wind and "storm surge" clearly are "weather conditions,"[9] and under the allegations of the plaintiffs' own Amended Complaint, these conditions contributed to the flooding and/or levee breaches.  Am. Complaint at pp. 17-18; *id.* at ¶ 28.  As previously discussed, the flooding and levee breaches (allegedly caused by negligent maintenance/construction) are specifically excluded under Allstate's homeowner policy.  Exh. "A" at p. 6 (¶¶ 1-4) ALST 00230; *id.* at 8 (¶ 22) ALST 00232.  Accordingly, the "weather conditions" -- including wind and "storm surge" -- of Hurricane

---

[9]    The plaintiffs assert that "storm surge" is a "known meteorological phenomenon."  Am. Complaint p. 18 (3).

Katrina that allegedly led to the flooding and/or the breach of the levees are excluded from coverage. *See e.g., Findlay v. United Pac. Ins. Co.*, 917 P.2d 116, 120 (Wash. 1996) ("[w]eather conditions are specifically excluded whenever they combine with earth movement [*i.e.*, an excluded peril] to cause a loss. The policy is unambiguous as to what was covered and what was excluded from coverage." *Julian*, 27 Cal. Rptr. 3d 648, (enforcing "weather conditions" exclusion to exclude coverage for damage to a house from a landslide as a result of heavy rain); *Goldsteins Rosenbergs-Raphel Sacks, Inc. v. Erie Ins. Exch.*, No. 1203, 2005 WL 1323444 (Pa. Com. Pl. May 27, 2005) (enforcing weather conditions exclusion where weather and excluded peril of defective design contributed to Plaintiff's loss); *see also Prytania Park Hotel v. Gen. Star Indem. Co.*, 896 F. Supp. 618, 623 (E.D. La. 1995) (upholding policy language excluding losses "regardless of any other cause or event that contributes concurrently or in any sequence to the loss"); *Mayton v. Auto-Owners Ins. Co.*, No. 3:05-667, 2006 WL 1214831 (E.D. Va. May 2, 2006) (summary judgment granted in favor of insurer where case arose out of Hurricane Isabel, and policy included anti-concurrent cause language applicable to water damage exclusion; no liability for loss caused by storm surge); *Sunshine Motors, Inc. v. N.H. Ins. Co.*, 530 N.W. 2d 120, 121 (Mich. Ct. App. 1995) ("weather conditions" exclusion applied to "heavy rainfall creating surface water that failed to drain away because of debris blocking the drainage system").

In step with these authorities[10], the weather condition exclusion applies here. Wind and "storm surge" undoubtedly are "weather conditions" caused by Hurricane Katrina and according to the plaintiffs, contributing to their flood damage by "proximately causing" a flood and alleged levee breaches.  Am. Complaint pp. 17-18; *id.* at ¶ 28.  In light of the "weather conditions" exclusion, there is no coverage under Allstate's homeowner policy for such flood damage, and the plaintiffs' reliance on the "proximate cause" doctrine to find coverage based on "weather conditions" such as "windstorm" and "storm surge" are unavailing.  The plaintiffs accordingly are not entitled to a declaration of coverage for their flood damage as a "windstorm" or "storm surge" loss.  Counts One and Two of the Amended Complaint should be dismissed.

---

[10]   *See, e.g., TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 733 (8th Cir. 1997) (affirming the Missouri district court's finding that the policy's anti-concurrent cause language precluded application of efficient proximate cause doctrine); *Front Row Theatre, Inc. v. Am. Mfr.'s Mut. Ins. Co.*, 18 F.3d 1343, 1347 (6th Cir.1994) ("When damage to an insured's property is caused by both a covered and an excluded event, coverage may be expressly precluded by language in the policy."); *Preferred Mut. Ins. Co. v. Travelers Cos.*, 955 F. Supp. 9, 12 (D. Mass. 1997) *aff'd* 127 F.3d 136 (1st Cir. 1997) (finding policy legally excludes damage caused by covered peril "that occurs at the same time as, or ensues from," an uncovered peril); *Schroeder v. State Farm Fire & Cas. Co.*, 770 F. Supp. 558, 560 (D. Nev. 1991) (excluding damage caused by earth movement even though such movement was caused by a covered peril); *State Farm & Cas. Co. v. Bongen*, 925 P.2d 1042, 1044 (Alaska 1996) (excluding coverage for earth movement regardless of "whether a non-excluded risk acted 'concurrently or in any sequence with' earth movement"); *Millar v. State Farm Fire & Cas. Co.*, 804 P.2d 1081, 826 (Ariz. Ct. App. 1990) (finding that anti-concurrent cause exclusions do not violate public policy); *Sunshine Motors, Inc. v. N.H. Ins. Co.*, 530 N.W.2d 120, 121 (Mich. App. 1995) (excluding coverage for damage caused by flood regardless whether blocked drainage system was direct or indirect cause); *Kula v. State Farm Fire & Cas. Co.*, 628 N.Y.S.2d 988, 991 (App. Div. 1995) (excluding coverage due to earth movement, even though covered peril caused movement); *Village Inn Apts. v. State Farm Fire & Cas. Co.*, 790 P.2d 581, 583 (Utah Ct. App. 1990) (excluding damage caused by earth movement regardless of whether it was caused by natural or human processes).

**D.     The Hurricane Deductible Endorsement Simply Increases The Amount Of The Applicable Deductible And Does Not Create Or Expand Coverage.**

**a.     By Its Terms The Hurricane Deductible Endorsement Does Not Create Or Expand Coverage.**

Plaintiffs also have argued that their homeowner policy covers flood damage because of a Hurricane Deductible Endorsement.[11]  Plaintiffs say this endorsement expands the Policy's coverage to cover any damage occurring during a hurricane, regardless of the Policy's other provisions.

Plaintiffs' argument requires the Court to ignore the Endorsement's express terms and to disregard settled law that requires an endorsement be read together with the policy as a whole.  *See, Transcontinental Ins. Co. v. Southern Holdings, Inc.,* No. 92-2772, 1993 WL 149167, at *3 (E.D. La. May 4, 1993) ("An endorsement becomes part of the contract of insurance if attached to the insurance policy, and the endorsement and policy are parts of the same contract and must be construed together."), *aff'd,* 21 F.3d 1107 (5th Cir. 1994); *Smith v. Western Preferred Cas. Co.,* 424 So. 2d 375 (La. App. 2d Cir. 1982) (same); *see also, Bingham v. St. Paul Ins. Co.,* 503 So. 2d 1043 (La. App. 2d Cir. 1987) (citations omitted).

As one court has explained:

'Endorsements or riders on a policy become a part of the policy, and must be construed with it.  Such provisions in the body of the policy are not to be abrogated, waived, limited, or modified by the provisions of an endorsement or rider unless expressly stated therein that such provisions are substituted for those in the body of the policy, or unless the provisions in the policy proper and in the rider or endorsement are conflicting.'

---

[11]     Not all Allstate policies include the Hurricane Deductible Endorsement.  Compare Exh. "B" to Exh. "A".

*Peter Lien & Sons, Inc. v. First Am. Title Ins. Co.,* 478 N.W. 2d 824, 827 (S.D. 1991) (quoting 13A J. Appleman, *Insurance Law & Practice* § 7538 (1976)); *accord EMCASCO Ins. Co. v. Diedrich,* 394 F.3d 1091, 1096 (8th Cir. 2005) (finding that exclusions listed in endorsement that stated "[a]ll other provisions of this policy apply" were "in addition to and supplement the exclusions listed in the basic Homeowner's Policy".) Applying these basic rules of contract law, plaintiffs' invocation of the Hurricane Deductible Endorsement to create or expand coverage must fail.

The Hurricane Deductible Endorsement does not change the coverages available under the policy. It simply limits the amount to be paid to "when a *covered* loss caused by windstorm exceeds the deductible amount." (Emphasis added.) A deductible is by definition, '[t]he portion of an insured loss to be borne by the insured before he is entitled to recovery from the insurer." *Dorsey v. Federal Ins. Co.,* 798 N.E.2d 47, 52 (Ohio Ct. App. 2003) (quoting *Black's Law Dictionary* 413 (6th Ed. 1990)). Thus, a deductible does not create new coverage or restore excluded coverage. *Dallas Handbag Co. v. Royal Indem. Co.,* 390 S.W. 2d 863, 865 (Tex. Civ. App. 1965) (deductible "does not create any new coverage or restore and coverage which has been excluded by [the policy]").

Courts considering this very issue have agreed. In *Leonard v. Nationwide Ins. Co.,* No. 1:05-475, 2006 WL 1674288 (S.D. Miss. Jun. 13, 2006), plaintiffs contended that a hurricane deductible endorsement to their homeowner policy altered the coverage provided under the policy. Rejecting that argument, Judge Senter held that the hurricane deductible

endorsement did not expand the basic coverage under the homeowner policy, despite the plaintiffs' contention that they paid an additional premium for hurricane coverage:

> My reading of the "Hurricane Coverage and Deductible Provision Endorsement" and my reading of the "Increased Wind/Hail Deductible" endorsement issued by Nationwide in 1999 indicate that **neither provision expands the basic coverage of the Nationwide policy**. The Leonards opted to pay an additional premium and retain a flat $500 deductible. Thus, **neither of these endorsements affected the scope of their insurance coverage in any way.** While it is true that the Leonards paid a higher premium to retain the flat $500 deductible, they did not thereby alter the scope of their coverage of their insurance policy.

*Id.* at *2 (emphasis added).

Likewise, in *General Star Indemnity Company v. West Florida Village Inn, Inc.,* 874 So. 2d 26 (Fla. Ct. App. 2004), the Court held that a hurricane deductible did not expand coverage, explaining:

> The notion that a deductible could be applied to a loss that is not covered by the policy is fundamentally unreasonable. . . . A "deductible" is a "clause in an insurance policy that relieves the insurer of responsibility for an initial specified loss of the kind insured against." *Merriam-Webster's Collegiate Dictionary* 471 (deluxe ed. 1998). A deductible loses its meaning entirely if it is to apply to loss that is not covered by the policy.

*Id.* at 33.

Plaintiffs can point to no language in the Hurricane Deductible Endorsement that alters the well-understood function of a deductible provision. The Endorsement does not add coverage for all loss occurring during hurricanes or alter other policy provisions such as the flood exclusion. Rather, the Endorsement merely provides for a different deductible when **otherwise covered** losses result from a Hurricane. And the Endorsement expressly provides that

"all other provisions of the Policy apply."  Those provisions include the flood exclusion, which unquestionably bars plaintiffs' claims.

## III.    The Plaintiffs' Purported Bad Faith Claims in Counts Three and Four Should Be Dismissed.

Count Three is a claim for breach of the implied covenant of good faith and fair dealing.  But no cause of action exists under Louisiana law against an insurance company for breach of an *implied* covenant of good faith and fair dealing.  Rather, an insurer's extra contractual liability is limited to claims for violation of one of the specific duties listed in Louisiana Revised Statute 22:1220(B).  *Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184 (La. 1997); *Brister v. GEICO Ins.*, 813 So. 2d 614 (La. App. 1st Cir. 2002); *Wiley v. McDay*, 799 So. 2d 624 (La. App. 2d Cir. 2001); *Endsley v. Pennington*, 718 So. 2d 650 (La. App. 2d Cir. 1998); *Smith v. Midland Risk Ins. Co.*, 699 So. 2d 1192 (La. App. 2d Cir. 1997).  Since plaintiffs do not allege a violation of any of the specific duties listed in the statute,  Count Three must be dismissed.

In Count Four, plaintiffs do allege that Allstate and other insurers are liable in bad faith pursuant to La. R.S. 22:1220.  Section 1220, however, only supports a claim for:

    (1)    Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

    (2)    Failing to pay a settlement within thirty days after an agreement is reduced to writing.

    (3)    Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.

    (4)    Misleading a claimant as to the applicable prescriptive period.

    (5)    Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

(6)     Failing to pay claims pursuant to R.S. 22:658.2 when such failure is arbitrary, capricious, or without probable cause.

La. R.S. 22:1220(B).

The allegations set forth in Count Four appear to rely on subsections (B)(1), (B)(5) and (B)(6).[12] Plaintiffs, however, do not state a claim under any of these provisions.

As a preliminary matter, to state a claim under Section 1220, the plaintiff must have a valid underlying insurance claim. *Clausen v. Fidelity & Deposit Co.*, 660 So. 2d 83, 86 (La. 1996). Given that the plaintiffs have failed to assert an actionable claim for flood damage against Allstate, they cannot state a claim under section 1220(6) and plaintiffs have not alleged that Allstate misrepresented its policy or any facts; the coverage sought for flood damage simply is excluded under the policy itself. Allstate also has not improperly failed to pay the plaintiffs any amount for flood damage, given that such loss is not covered under the homeowner policies issued by Allstate.

Likewise, without an actionable claim, plaintiffs cannot establish that a failure to pay was "arbitrary, capricious or without probable cause, and is required under Sections 1220(3), (5) or (6). Moreover, plaintiffs cannot establish that Allstate acted arbitrarily or capriciously. Because the courts have universally enforced similar flood exclusions, Allstate, at the very minimum, had reasonable grounds to believe the flood exclusion applies. Accordingly, as a matter of law, Allstate cannot be found to have acted arbitrarily and capriciously. *Duncan v. Allstate Ins. Co.*, 803 So. 2d 420 (La. App. 5th Cir. 2001) (where reasonable dispute regarding

---

[12]     Plaintiffs' Amended Complaint clearly does not allege violations of the other subsections. No settlement has been reached so subsection (B)(2) is inapplicable. Allstate has not denied coverage on the basis of altered applications; that is not even an issue in the case. Nor is the applicable prescriptive period an issue.

causation, no arbitrary or capricious conduct), *writ denied,* 814 So. 2d 562 (La. 2002); *Molony v. USAA Prop. and Cas. Ins. Co.*, 708 So. 2d 1220 (La. App. 4th Cir. 1998) (where reasonable dispute between insurer and insured regarding amount of loss, refusal to pay is not arbitrary, capricious, or without probable cause); *Holt v. Aetna Cas. & Sur. Co.*, 680 So. 2d 117 (La. App. 2d Cir. ) (insurers have right to litigate questionable claims without being subject to damages and penalties for bad faith), *writs denied,* 684 So. 2d 938, 684 So. 2d 937 (La. 1996).

   In any case, subsection (B)(6) is inapplicable to any of the claims at issue in this litigation.  That provision renders an insurer liable for bad faith for arbitrarily, capriciously, or without probable cause denying a claim pursuant to La. R.S. 22:658.2 (prohibiting an insurer from denying a claim based solely on evidence of floodwater marks or displacement of property from its foundation).  This subsection and La. R.S. 22:658.2 were enacted after the inception of the plaintiffs' policies and after the losses at issue were incurred.  As such, they constitute a substantive change in the law and can be applied only prospectively to policies issued after their effective date, February 23, 2006.  La. R.S. 22:658.2(D).  Louisiana law is clear that Louisiana Revised Statute 22:1220 – which incorporates Louisiana Revised Statute 22:658.2 – applies *only* prospectively, and not retroactively.  *Premium Finance Co. v. Employers Reins. Corp.*, 761 F. Supp. 450 (W.D. La. 1991) (no retroactive effect because substantive change in law, and statutory duty previously did not exist); *Manuel v. Louisiana Sherrif's Risk Mgt. Fund*, 664 So. 2d 81 (La. 1995) (statute applied prospectively only).  Given that the plaintiffs' alleged property loss took place in August 2005 when Hurricane Katrina struck, and long before the statute was enacted, the duty imposed regarding "floodwater marks" has no applicability here.  Moreover,

La. R.S. 22:658.2 is inapposite because the flood damage alleged by the plaintiffs is excluded under the unambiguous terms of the Allstate homeowner policies. Issues regarding "floodwater marks" have no relevance to this matter. The sole relevant evidence is the Allstate homeowner policy, and it clearly excludes the recovery sought by the plaintiffs.

The plaintiffs also appear to allege a violation of subsection (B)(1), which prohibits an insurer from misrepresenting pertinent facts regarding coverage. In support of that argument, they point to no actual misrepresentation by Allstate, but instead assert that Allstate's reliance on the water damage exclusion in its policy to deny coverage constitutes a misrepresentation within the meaning of the statute. That argument was soundly rejected by Louisiana's Supreme Court in *Calogero v. Safeway Insurance Company*, 753 So. 2d 170, 174-75, (La. 2000), in which the Court held that an insurer's citation of a particular policy exclusion to deny coverage does not constitute a misrepresentation of a pertinent fact regarding coverage under section 1220(B), *even where the insurer's interpretation is later found to be erroneous and its denial of the claim arbitrary.*

Here, Allstate's interpretation of its policy exclusions is not erroneous, and its denial of plaintiffs' water damages claims is completely justified where the policy unambiguously excludes such damages. The plaintiffs cannot establish a claim under any provision of section 22:1220.

## IV.   The Plaintiffs' Breach of Fiduciary Duty Claim in Count Five Should Be Dismissed.

Count Five alleges that Allstate and other insurers failed to warn the plaintiffs that "their homes may . . . be grossly underinsured" and failed to advise the plaintiffs that their

homeowner policies do "not cover [all] damage or loss caused by hurricanes" and "additional

coverage could be purchased [in] excess of the NFIP [flood] limit." Am. Complaint at p. 25 ¶

98; *see also id.* at p. 13 ¶ 39 ("many Policyholders have not at all been advised on the availability

of flood insurance"). The plaintiffs allege that Allstate and other insurers thereby breached their

supposed fiduciary duty to the plaintiffs. *Id.* The plaintiffs' allegations fail to state a claim under

Louisiana law.

      First, the general rule in Louisiana is that the relationship between an insurer and an

insured is not fiduciary, but is instead merely contractual, that of buyer and seller. *See, e.g., Miller*

*v. Lumbermens Mut. Cas. Co.,* 488 So. 2d 273, 277-78 (La. App. 3rd Cir. 1986), *writ denied,* 493

So. 2d 637 (1986) ("[T]he contract of insurance created no fiduciary relationship between these

parties nor did the facts of this case indicate such a relationship. There was a bilateral contractual

relationship between them, but no fiduciary relationship."); *Legendre v. Rodrigue,* 358 So. 2d 665,

668 (La. App. 1st Cir.) (holding that insurer had no fiduciary or other duty to advise insureds of

change in law allowing them to increase amount of coverage), *writ denied,* 359 So. 2d 1293 (La.

1978); *Halter v. Allmerica Fin. Life Ins. & Annuity Co.,* 98-0718, 1998 WL 516109 at *4 (E.D. La.

8/19/98) ("[U]nder Louisiana law, an insurer-insured relationship is contractual and does not give

rise to a fiduciary duty."); *see also National Union Fire Ins. Co. v. Cagle,* 68 F.3d 905 (5th Cir.

1995); *Ray Gibbins Certified Welders, Inc. v. Griggs,* 543 So. 2d 68, 75 (La. App. 1st Cir.), *writ*

*denied,* 548 So. 2d 1253 (La. 1989).

      Further, Allstate and the other insurers had no duty to advise plaintiffs of the

existence of or to procure additional insurance. This Court recently granted a motion to dismiss

claims asserting that an insurer had a duty to advise of and procure additional insurance. *Sullivan v. State Farm,* No. 06-0004 (Apr. 6, 2004) (J. Duval), R. Doc. No. 42, attached hereto as Exh. "D" (Duval, J.).  In *Sullivan,* the Court relied on a long line of cases establishing that an insured has a duty to know and understand his coverages and limits, and that an insurer (and insurance agent) only is responsible for placing the insurance specifically requested by the insured.  *Karam v. St. Paul Fire & Marine Ins. Co.,* 281 So. 2d 728, 730 (La. 1973) (stating obligation is "to use reasonable diligence in attempting to place the insurance *requested*" and client may recover for loss sustained by "failure to procure *desired* coverage") (emphasis added); *see also Taylor v. Sider,* 765 So. 2d 416, 418 (La. App. 4th Cir.) (noting that to the extent duty is owed, it is, *inter alia,* to "place the insurance requested"), *writs denied,* 771 So. 2d 86 (La. 2000), 808 So. 2d 344 (La. 2002); *Jones v. Webb,* 821 So. 2d 614, 617 (La. App. 2d Cir.) (holding no fiduciary duty to procure particular coverage unless specifically requested to do so), *writ denied,* 827 So. 2s 425 (La. 2002); *see also Motors Ins. Co. v. Bud's Boat Rental, Inc.,* 917 F.2d 199, 205 (5th Cir. 1990) ("client himself is considered responsible for adequately advising the agent of the coverage needed and for reading the clear provisions of the insurance policy"); *Graves v. State Farm Mut. Auto. Ins. Co.,* 821 So. 2d 769 (La. App. 3rd Cir.) (holding no duty either in contract or tort to inquire into insured's financial condition and advise him to carry higher liability limits or purchase umbrella policy), *writ denied,* 829 So. 2d 435 (La. 2002); *Smith v. Millers Mut. Ins. Co.,* 419 So. 2d 59, 65 (La. App. 2d Cir. 1982) ("insured should be held to have read and know the liability limits . . . plainly disclosed on the face of the policy").

In light of this jurisprudence, and as this Court determined in *Sullivan*, the plaintiffs here cannot and have not stated a claim against Allstate. The plaintiffs have not alleged that Allstate failed to procure insurance that they specifically requested. In fact, the plaintiffs do not allege that they even requested any specific advice or insurance from Allstate that Allstate failed to provide. Moreover, the plaintiffs themselves are obligated under Louisiana law to know and understand their policy coverages and limits, so the claim that they were "under-insured" is not viable under Louisiana law. Count Five of the Complaint should be dismissed in its entirety.

## CONCLUSION

Allstate's Motion To Dismiss should be granted in all respects. The plaintiffs' claim for flood damage is excluded under Allstate's homeowner policy (Counts One and Two); no claim lies for breach of implied duty of good faith and fair dealing and plaintiffs do not state a claim under La. R.S. 22:1220 (Counts Three and Four) and no cause of action exists for breach of fiduciary duty as a matter of law Count Five).

Respectfully Submitted,

_____
Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
    Of
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 589-9700

Attorneys for Allstate Insurance Company
    and Allstate Indemnity Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum in Support of Motion to Dismiss has been served upon all counsel of record via electronic mail this 14th day of August, 2006.

_____