## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **COLLEEN BERTHELOT, ET AL.,** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 05-4182** |
| | * | |
| **BOH BROTHERS CONSTRUCTION CO.,** | * | **SECTION "K"(2)** |
| **L.L.C., ET AL.** | * | **CONS. KATRINA CANAL** |
| | * | |

**THIS DOCUMENT RELATES TO:**

| | | | |
|---|---|---|---|
| 05-4181 | 05-6314 | 06-0020 | 06-2346 |
| 05-4182 | 05-6324 | 06-0886 | 06-2545 |
| 05-5237 | 05-6327 | 06-2278 | |
| 05-6073 | 05-6359 | 06-2287 | |

**********************************************************

THE LEVEE BREACH LITIGATION GROUP'S SUR-REPLY TO THE ENGINEERS'
RESPONSES AND SUPPLEMENTAL MEMORANDA TO PLAINTIFFS' OMNIBUS
MEMORANDUM IN OPPOSITION TO THE RULE 12(B)(6) JOINT MOTION AND
RULE 56 JOINT MOTION FOR SUMMARY JUDGMENT ON THE AFFIRMATIVE
DEFENSE OF PEREMPTION TO DISMISS THE LEVEE AND MRGO GROUPS OF
PLAINTIFFS' COMPLAINTS ON BEHALF OF EUSTIS ENGINEERING COMPANY,
INC., BURK-KLEINPETER, INC., AND MODJESKI AND MASTERS, INC.

**NOW INTO COURT,** through undersigned counsel, comes the Levee Breach

Litigation Group (hereinafter, "Plaintiffs"), who respectfully offers the following sur-reply

to Eustis Engineering Company, Inc., Burk-Kleinpeter, Inc., Modjeski and Masters, Inc.,

and GOTECH, Inc.'s (hereinafter, "The Engineers") Responses and Supplemental

Memoranda to Plaintiffs' Omnibus Memorandum in Opposition to the Rule 12(b)(6) Joint

Motion and Rule 56 Joint Motion for Summary Judgment on the Affirmative Defense of

Peremption to Dismiss the Levee and MRGO Groups of Plaintiffs' Complaints and offers

the following:

## 1.  INTRODUCTION

Plaintiffs respectfully submit that the Engineers' Responses and Supplemental Memoranda to Plaintiffs' Omnibus Opposition only serve to bolster Plaintiffs' arguments that the Engineers' Rule 12(b)(6) Joint Motion and Rule 56 Joint Motion for Summary Judgment on the Affirmative Defense of Peremption to Dismiss the Levee and MRGO Groups of Plaintiffs' Complaints should be denied and formal discovery should be allowed.

## 2.  PLAINTIFFS SHOULD BE ALLOWED TO COMMENCE FORMAL DISCOVERY AND AMEND THEIR COMPLAINTS

Plaintiffs have already set forth the legal argument and standard for the proposition that this Honorable Court should allow Plaintiffs' Complaints to be amended in Plaintiffs' Omnibus Opposition.  However, Plaintiffs must respond to the Engineers' contention stated at Doc. 747-1, page 2:

> To allow plaintiffs' discovery to explore what projects each Engineer did, in the face of the Engineers' disclosures, Joint Motions and supporting affidavits, and (as more fully described herein) public documents that have been available to all parties for more than eight months, would further unnecessarily penalize the Engineers.

### A.    The Engineers' Supporting Affidavits

The Engineers' own supporting affidavits make it abundantly clear that Plaintiffs should be allowed to amend their Complaints.  For example, in Eustis Engineering's Supplemental Affidavit and Appendix (Doc. 911), Eustis attached correspondence implicating various, previously un-named, potential Defendants, i.e., Exhibit 3.3.2 implicates consulting engineers, Pepper and Associates, Inc., Exhibit 3.3.3 implicates Meyer Engineers, Ltd., Exhibit 3.3.8 implicates Linfield, Hunter & Junius, Inc., Exhibit

3.3.12 implicates Design Engineering, Inc., and Exhibit 3.3.14 implicates Angelo Iafrate Construction, LLC.  There is no magical place on the internet, as Defendants contend, for Plaintiffs to gather this information.  Formal discovery is necessary.  Moreover, the most disturbing revelation contained in Eustis' Appendix is a copy of correspondence to Modjeski & Masters, Inc. dated July 6, 2001 indicating that Modjeski performed work in connection with the Norfolk Southern Railroad Trestle at London Avenue Canal Pumping Station No. 3 when the Affidavit of William B. Conway, P.E., offered as evidence in support of the Engineers' Motion for Summary Judgment, clearly states:

> Modjeski **never performed any engineering services** for levees, flood walls, dredging, drainage or other flood protection work for the **London Avenue Canal**, or Orleans Avenue Canal.  Doc. 463-9 at page 4.

As illustrated in Plaintiffs' Omnibus Opposition with regard to BKI's blatant misrepresentation by Affidavit contradicted by its own website (Please see Affidavit of Cayce Peterson attached hereto as Exhibit "A" in this regard), here again, Plaintiffs are lead to question the veracity of Defendants' evidence supporting their Motion for Summary Judgment.  First, there was BKI, now Modjeski, both shown to be untruthful in sworn affidavits executed under penalty of perjury.  In second grade, a little nun by the name of Sister Claire taught Religion to certain counsel for Plaintiffs. Sister Claire stated that a lie of **omission** was the same as a lie of **commission**.  What else have the Engineers conveniently omitted?

The Engineers decry the fact that they will be "unnecessarily penalized" by discovery.  Discovery has not even commenced.  Plaintiffs will certainly be penalized without discovery and the ends of justice will not be served.  Plaintiffs should be allowed

-3-

discovery and be allowed to amend their Complaints.

## B.  PLAINTIFFS' "REMOTENESS" ARGUMENT IS VALID AND DISCOVERY WOULD YIELD "REASONABLE TRIABLE FACTS" IN CONNECTION WITH WORK PERFORMED ON THE CANALS MADE THE BASIS OF THIS LITIGATION

Defendants attempt to dismiss Plaintiffs' argument that discovery is necessary to determine whether or not Defendants' work performed on areas of a canal that did not breach contributed to the breaches and failures of the levee systems.  Defendants take counsel for Plaintiffs, Joe Bruno's, statement in open Court, made in an attempt to narrow initial discovery and manage initial issues in this case, and utilize his statement as some sort of admission that discovery should be limited only to the breach sites.  The allegations made in these consolidated cases are not limited to the breach sites.  For example, at paragraph 14 of the Kirsch Second Amended Complaint, Case No. 05-6073 (Doc. 485), Plaintiffs state:

> Plaintiffs aver, upon information and belief, that their **damages are a result of improper and/or negligent design**, construction, and maintenance of the levees and/or flood walls by various contractors and engineers, and/or the weakening of the levees and/or flood walls caused by the negligence of various contractors **while engaged in various other activities along the canals**. (Emphasis added).

To illustrate this point, work performed on the 17th Street Canal in connection with soil testing yielded certain information.  Defendants cannot argue at this premature stage, to a reasonable degree of scientific certainty, that information gleaned from work on another part of the 17th Street Canal did not contribute to the levee failure, thus negating their peremption argument.  The levee system is a complex, ever-evolving system.  Discovery is necessary and experts are needed to evaluate Defendants'

submissions and determine at what point work on one part of a complex and intertwined levee system has impact on another part of that same system.  It is simply arrogant to posit that the levee failures each occurred in their own separate vacuum.

If an Engineer gleaned information from one part of a project and kept silent about that information, that silence would have a substantial, material effect on the design of another part of the levee system.  The failures were part of a system and the Engineers performed work on all areas in that system at different times.  Please see Affidavit of David Rosenberg attached hereto as Exhibit "B" in this regard.

## C.  LOUISIANA COURTS ALLOW THE AMENDMENT OF PLEADINGS TO INCLUDE FRAUD ALLEGATIONS

Since 1829, Louisiana courts have allowed the amendment of pleadings to include fraud allegations.  *Thomas v. Mead*, 1829 WL 1634 (La.).  Plaintiffs have already cited the applicable case law regarding amendments to pleadings.  However, Plaintiffs submit that this Honorable Court should also consider the case, *Vazquez v. City of New Orleans*, 562 So.2d 1122, wherein the Plaintiff, when confronted with the peremptive and no cause of action exceptions, filed a fourth supplemental petition to include fraud allegations where L R.S. 9 §2772 was at issue.  Plaintiffs herein should be afforded the same opportunity to amend their Complaints to include fraud allegations after appropriate discovery has been commenced.

## D.  THE FACT THAT "IT'S ON THE INTERNET" IS NOT A SUBSTITUTE FOR FORMAL DISCOVERY

Defendants contend that "Plaintiffs have had months to study these public and internet records."  (Doc. 747-1 at pg. 3).  Counsel for Plaintiffs is unaware of any rule of Federal Procedure that substitutes unauthenticated information available on the internet

in the place of formal discovery, either verified or under oath.  Defendants are

attempting to argue that Plaintiffs should not be allowed to amend their Complaints

simply because there is a wealth of information already in the public domain.

Defendants' own supplementation of this Honorable Court's record with over one

hundred (100) pages of supplemental affidavits and memoranda contravenes their own

argument.  Defendants stated that Plaintiffs had "unlimited access" that forecloses any

colorable claim that would warrant additional discovery.  If all of the information was on

the IPET website, it is unclear to Plaintiffs as to why Eustis needed an additional

seventy-nine page (79) affidavit.

Plaintiffs submit that, for example, the IPET website for which the Engineers

have provided to Plaintiffs a "roadmap" does not and should not take the place of formal

discovery.  Further, the IPET website is without a search engine, not unlike the limited

search engine Eustis refers to in its Affidavit:

> Out of more than 19,467 files searched with 'File Tracker,' Eustis' initial
> searches, which formed the basis for my May 31, 2006 affidavit, did not
> locate all of the files for the Canal Systems and all of the remote projects
> that might arguably be associated with canal levees, such as files relating
> to bridges, trestles, materials testing, pavements and expert witness
> services, because, in part, Eustis' **digital search engine is limited**.  Doc.
> 911 at page 3.

Defendants argued that they should be allowed to supplement their affidavits because

Defendants' own search engine was limited, yet Defendants argue that Plaintiffs should

have been able to locate unverified, unauthenticated documents on a website **without a**

**search engine** in order to confirm that the geotechnical engineers in a case involving

multiple geotechnical failures should be dismissed from litigation based on questionable

dates in the public domain.

The Defendants' need to supplement their own affidavits substantiates Plaintiffs' argument that discovery is crucial in connection with the above-captioned matter. Defendants lambast Plaintiffs for utilizing a newspaper article for illustrative purposes as rank double hearsay, yet Defendants point Plaintiffs to unverified, unauthenticated information from the internet stating that Plaintiffs have all of the information at their fingertips.  Plaintiffs have **not abandoned** discovery in this regard as Defendants contend.  On one hand, Defendants argue that Plaintiffs have abandoned discovery, while, on the other hand, they argue that Plaintiffs, because they pursued a FOIA request, have conducted all of the discovery necessary.  Defendants cannot have it both ways (though their contradictory affidavits and supplemental documentation evidences their desire otherwise).

Plaintiffs are requesting **proper discovery**.  Defendants' Motions for Summary Judgment are premature and Plaintiffs should be allowed to commence formal discovery.  While Defendants characterize Plaintiffs' request for discovery as a "fishing expedition," Plaintiffs are simply requesting that which is authorized by the Federal Rules of Civil Procedure.

At the very minimum, Plaintiffs should be allowed to depose the Defendants' Affiants regarding the veracity of their statements, the authenticity of the supporting documentation, and the inconsistencies associated therewith.

### 3.  PLAINTIFFS' OPPOSITION TO GOTECH, INC.'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs in the matters captioned "Kirsch v. Boh Bros.", United States District

Court, Eastern District of Louisiana, Civil Action No. 05-6073, Section "K"(2) and "O'

Dwyer v. Boh Bros.", United States District Court, Eastern District of Louisiana, Civil

Action No. 05-4181, Section "K"(2) adopt all arguments set forth in Plaintiffs' Omnibus

Opposition to the Engineers' Motions for Summary Judgment (Doc. 694) and all exhibits

and affidavits attached thereto, as well as all arguments set forth herein in Opposition to

Defendant, GOTECH, INC.'S, Motion for Summary Judgment.


### 4.  DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT FAIL ON THE FACE OF THEIR PLEADINGS

Defendants' Motions for Summary Judgment must be denied because they have

failed to meet the burden of establishing that there is no genuine issue of material fact.

The Engineers' own submissions constitute genuine issues of material fact in that they

are contradictory on their face.  The moving party must establish that there is an

absence of any genuine issue as to any material fact when **viewed in the light most

favorable to the non-moving party**.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

(1970). (Emphasis added). Further, the burden of proof falls upon the party seeking the

summary judgment, and all reasonable doubts as to **the existence of a genuine issue

of material fact "must be resolved against the moving party."**  *Kennett-Murray

Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980); *Keiser v. Coliseum Properties, Inc.*,

614 F.2d 406, 410 (5th Cir. 1980).  Also see *Alabama Farm Bureau Mut. Cas. Co. v.

American Fidelity Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979). (Emphasis added).  "**If

the moving party fails to meet this initial burden, the motion must be denied,

regardless of the nonmovant's response.**"  *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994).  (Emphasis added).

## A.  BURK-KLEINPETER, INC.

In its Rule 56 Statement of Material Facts as Basis for Motion to Dismiss on Peremption, BKI states unequivocally that: "BKI did no engineering, nor any other work on, or in connection with, the flood protection structures on the 17th Street or Industrial Canal which failed during or after Hurricane Katrina." (Doc. 463-6, page 2).  BKI performed work on the 17th Street Canal as divulged in its Court-Ordered Disclosures (Doc. 152).  BKI stated that it performed services on parts of the 17th Street Canal in 2000 and 2004 which would put its work well within the peremptive period thereby disallowing BKI's defense of peremption.

Additionally, BKI asserts that: "(5) BKI did not contract to, and did not, perform any inspection of the construction of the levees/flood walls along the London Avenue Canal."  (Doc. 463-6, page 2).  In support of this statement, BKI refers to the Affidavit of Michael G. Jackson at paragraph 33 which states: "In other words, BKI was **specifically excluded from rendering any services on construction administration or inspection; and BKI performed no construction inspection on this project**."  (Doc. 463-4, page 14).  Plaintiffs submit that a genuine issue of material fact also exists  with regard to this statement.  On its own website at www.bkiusa.com/londoncanal.htm, (a copy of which is attached to Plaintiffs' Omnibus Opposition as Exhibit "A"), BKI states the following in connection with its activities regarding the London Avenue Canal Floodwall and Levee Improvements: "BKI prepared a general design memorandum, construction plans and specifications, **and provided construction administration**

**including resident inspection for the levee**." In light of BKI's blatant

misrepresentation of fact, Plaintiffs submit that a genuine issue of material fact exists

and that BKI's Motion for Summary Judgment be denied.

## B. MODJESKI AND MASTERS, INC.

Modjeski's arguments also fail in that their own documents create a genuine

issue of material fact. In Eustis' Appendix to their Supplemental Memorandum in

Support of its Motion for Summary Judgment, Eustis attached a copy of

correspondence to Modjeski & Masters, Inc. dated July 6, 2001 indicating that Modjeski

performed work in connection with the Norfolk Southern Railroad Trestle at London

Avenue Canal Pumping Station No. 3 when the Affidavit of William B. Conway, P.E.,

offered as evidence in support of the Engineers' Motion for Summary Judgment, clearly

states:

> Modjeski **never performed any engineering services** for levees, flood
> walls, dredging, drainage or other flood protection work for the **London
> Avenue Canal**, or Orleans Avenue Canal.  Doc. 463-9 at page 4.

In light of Modjeski and Masters, Inc.'s blatant misrepresentation of fact, Plaintiffs

submit that a genuine issue of material fact exists and that Modjeski and Master, Inc.'s

Motion for Summary Judgment be denied.

## C. EUSTIS ENGINEERING, INC.

In its appendices attached to its Affidavit, Eustis states that it performed work at

Pump Station No. 4 on the London Avenue Canal in 2002.  Further, Eustis performed

work on the Industrial Canal in 2000 and 2002, well within the period of peremptive

limitations sought in the Engineers' Motion.  According to the Affidavit of David

Rosenberg, to a reasonable degree of scientific certainty, work performed on certain parts of each levee system, that was not in the area of the breach sites, had a material affect on both the design and/or construction of the integrity of the system as a whole. Eustis admits to work which puts it well within the peremptive period thereby disallowing Eustis' defense of peremption.

The Engineers' own submissions contradict themselves placing at issue genuine issues of material fact.   Their submissions also place their worked performed within the peremptive periods argued thereby disallowing their defense of peremption. Defendants' Motion for Summary Judgment should be denied.

## 5.  THE ENGINEERS' ARGUMENT THAT THE FIVE YEAR PEREMPTION PERIOD MANDATES THAT ALL CLAIMS AGAINST THE ENGINEERS ARE PEREMPTED IS INVALID

The Engineering Defendants' argument that the five-year peremption period in La. Rev. Stat. Ann. § 9:5607 (2005) mandates that all claims against the Engineers are perempted for "services completed," or on work accepted and recorded or occupied before September 18, 2000 is invalid.  The Engineers' claim is without merit because R.S. § 9:5607 cannot be applied retroactively without disturbing Plaintiffs' constitutional due process rights.  According to legislative history, statutory intent and statutory purpose, as well as the facts of the case *sub judice*, the five-year peremption period provided for in  R.S. § 9:5607, which was enacted on August 15, 2003, is not retroactive beyond this date.  Thus, any of the Plaintiffs' claims for deficiencies in surveying, design, supervision or construction of immovables must be permissible under the ten-year and seven-year peremptive dates afforded by La. Rev. Stat. Ann. § 9:2772 (2005) and its predecessors.

The issue is whether R.S. § 9:5607, and its five-year peremption period, which was recently enacted on August 15, 2003, controls the Plaintiffs' claims, which arose out of the Engineers' negligent conduct that occurred in the 1990's while R.S. § 9:2772, and its ten-year (before August 15, 1999) and seven-year (August 15, 1999, through August 14, 2003) peremptive periods, specifically controlled this area of Louisiana law with regard to claims against engineers.

## A.  THE LEGISLATIVE HISTORY OF R.S. 9:2772 AND R.S. 9:5607 IS ONE IN THE SAME:

The text of La. Rev. Stat. Ann. § 9:2772 (1964), the birthplace of both R.S. 9:2772 and R.S. 9:5607, provided a ten-year peremptive period for actions involving deficiencies in surveying, design, supervision, or construction of immovables or improvements thereon.  In addition, both legislative history and case law have established that R.S. § 9:2772, enacted on August 15, 1964, covered all claims arising out of construction projects, including claims against engineers.  It should also be noted that this statute was conspicuously silent as to any mention of retroactive application.

On July 9, 1985, the Louisiana Legislature enacted Subsection (H)(1) to La. Rev. Stat. Ann. § 9:2772 (1985), an exception to the general rule that R.S. § 9:2772 was completely prospective in nature.  This Subsection read as follows:

> H.    (1) The peremptive period provided by this Section shall not apply to an action to recover on a contract or to recover damages against any person enumerated in Subsection A of this Section, whose fraud has caused the breach of contract or damages sued upon. The provisions of ***this Subsection*** shall be ***retroactive.***[1]

---

[1]La. Rev. Stat. Ann. § 9:2772 (1985) (emphasis added); *see* 1985 La. Acts 303, § 1.

Because R.S. § 9:2772 continued to control claims against engineers at this time, both the general rule that R.S. 9:2772 was to be applied prospectively and the retroactive fraud exception found in Subsection (H)(1) applied to engineers. The fact that the Legislature specifically and intentionally limited the retroactive effect of R.S. § 9:2772 to Subsection (H)(1) alone makes it abundantly clear that the intent of the Legislature was to make the remaining subsections of the statute apply only prospectively from the date of enactment on July 9, 1985.[2] It is also worth noting that, after the 1985 reenactment, the peremptive period of R.S. § 9:2772 remained at ten years.

In the 1999 regular session, the Louisiana Legislature amended and reenacted La. Rev. Stat. Ann. § 9:2772 (1990), and evidenced its 1985 prospective application intent by expressly stating in § 2 of the amendment that "The provisions of this Act shall have **prospective application only** and shall **apply only to contracts entered into on or after the effective date of this Act** [, August 15, 1999]."[3] Although the Louisiana Legislature expressly amended Subsections (A) and (C) in this regular session, which reduced the peremptive period from ten years to seven years, the Louisiana Legislature did not amend the Subsection (H)(1) retroactive fraud exception. The Legislature expressly limited R.S. § 9:2772 to its prospective application with a retroactive fraud exception found in Subsection (H)(1).[4] Hence, unless there was a claim of fraud under Subsection (H)(1), R.S. § 9:2772 was considered prospective only, with a seven-year

---

[2]*See* La. C.C. Art. 9 (2006); *see* La. C.C. Art. 6 (2006).

[3]La. Rev. Stat. Ann. § 9:2772 (1999) (emphasis added); *see* 1999 La. Acts 1024, § 2.

[4]*See* La. C.C. Art. 9.

-13-

peremptive period, which became effective on August 15, 1999.  Therefore, any cause

of action arising before August 15, 1999, is controlled under the 1985 version of  R.S. §

9:2772 and its ten-year prospective peremption period, effective July 9, 1985.

On August 15, 2001, the Louisiana Legislature once again amended and

reenacted La. Rev. Stat. Ann. § 9:2772 (2001).[5]  Although the Legislature amended

parts of Subsections (A) and (B), the Legislature chose to retain the language, and also

affirmatively reenact the language, in the Subsection (H)(1) retroactive fraud exception.

In addition, there was no amendment or removal of the previous  R.S. § 2772 (1999) §

2 enactment that "The provisions of this Act shall have prospective application only and

shall apply only to contracts entered into on or after the effective date of this Act."[6]

Therefore, the seven-year prospective applications of R.S. § 9:2772 (1999) and R.S. §

9:2772 (2001) continue to control claims against engineers with a cause of action

arising on or after August 15, 1999, with the sole exception being the Subsection (H)(1)

retroactive fraud exception.[7]  Alternately, any cause of action arising before August 15,

1999, continues to be controlled under the 1985 version of  R.S. § 9:2772 and its ten-

year prospective peremption period, effective July 9, 1985.

On August 15, 2003, La. Rev. Stat. Ann. § 9:2772 (2003) was once again

amended and reenacted.[8]  Although the Louisiana Legislature amended parts of

Subsections (A), (B), and (G), the Legislature once more chose to retain the language,

---

[5]La. Rev. Stat. Ann. § 9:2772 (2001); *see* 2001 La. Acts 179, § 1.

[6]La. R.S. § 9:2772 (1999).

[7]*See* La. C.C. Art. 9.

[8]La. Rev. Stat. Ann. § 9:2772 (2003); *see* 2003 La. Acts 279, § 1.

and also affirmatively reenact the language, in the Subsection (H)(1) retroactive fraud exception.  In addition, there was no amendment or removal of the previous  R.S. § 9:2772 (1999) § 2 enactment that "The provisions of this Act shall have prospective application only and shall apply only to contracts entered into on or after the effective date of this Act."[9]  Therefore, the seven-year prospective application of Revised Statute § 9:2772 (1999) continues to control claims against engineers with a cause of action arising on or after August 15, 1999, with the sole exception being the Subsection (H)(1) retroactive fraud exception.[10]  Alternately, any cause of action arising before August 15, 1999, continues to be controlled under the 1985 version of  R.S. § 9:2772 and its ten-year prospective peremption period, effective July 9, 1985.

Later, on the exact same day, August 15, 2003, La. Rev. Stat. Ann. § 9:2772 (2003) was once again amended and reenacted, for the final time.[11]  The Louisiana Legislature once more chose to retain the language, and also affirmatively reenact the language, in the Subsection (H)(1) retroactive fraud exception.  In addition, there was no amendment or removal of the previous  R.S. § 9:2772 (1999) § 2 enactment that "The provisions of this Act shall have prospective application only and shall apply only to contracts entered into on or after the effective date of this Act."[12]  The second August 15, 2003 amendments only affected Subsections (A) and (C), which included decreasing the seven-year peremptive period to only five-years.  Therefore, effective August 15,

---

[9]La. R.S. § 9:2772 (1999).

[10]*See* La. C.C. Art. 9.

[11]La. Rev. Stat. Ann. § 9:2772 (2003); *see* 2003 La. Acts 919, § 1.

[12]La. R.S. § 9:2772 (1999).

2003, a new five-year prospective application of R.S. § 9:2772[13] controlled claims against engineers with a cause of action arising on or after August 15, 2003, with the sole exception being the Subsection (H)(1) retroactive fraud exception.[14]   Further, any cause of action arising before August 15, 2003, continues to be controlled under the earlier 1999 version of R.S. § 9:2772 and its seven-year prospective peremption period, effective August 15, 1999.  In addition, any cause of action arising before August 15, 1999, continues to be controlled under the 1985 version of R.S. § 9:2772 and its ten-year prospective peremption period, effective July 9, 1985.

**It is critical to note that** the enactment of R.S. § 9:2772 (2003) included a suspensive condition. In  § 2 of its House Bill, the Louisiana Legislature stated that, "The provisions of [ R.S. § 9:2772][15] shall become effective ***only upon the enactment of*** the provisions of [ R.S. § 9:5607][16]."[17]   This mutually inclusive suspensive condition was used by the Legislature to simply shift claims against engineers, among others, to a separate statute.  Therefore, the legislative history of R.S. § 9:5607 shows that it is not a wholly new and unrelated statute from R.S. § 9:2772.  Therefore, its legislative history, intent, and purpose is not wholly new and unrelated.  R.S. § 9:5607 is merely a continuation of the legislative history, intent and purpose of its predecessor, R.S. §

---

[13]La. R.S. § 9:2772 (2003).

[14]*See* La. C.C. Art. 9.

[15]La. R.S. § 9:2772 (2003).

[16]La. R.S. § 9:5607 (2003); see 2003 La. Acts 854, § 1.

[17]2003 La. HB 551, § 2 (emphasis added).

9:2772.[18]   Thus,  R.S. § 9:5607 is nothing more than a branch of the  R.S. § 9:2772 tree, which has its roots in the original 1964 enactment of  R.S. § 9:2772.

For example, it is clear that in  R.S. § 9:5607, which allows for a five-year peremptive period for claims against engineers, the drafters transferred over to  R.S. § 9:5607(E)  the  R.S. § 2772(H)(1) retroactive fraud exception.   R.S. § 9:5607(E) reads as follows:

> E.   The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud....

Therefore, it is obvious that the long legislative history, which has been attached to the  R.S. § 9:2772(H)(1) retroactive fraud exception since 1985, was transferred over to, and included in, the drafting of Subsection (E) of  R.S. § 9:5607.

In addition, some subsections of  R.S. § 9:5607 were taken, almost *verbatim ac litteratim* from  R.S. § 9:2772, including:  R.S. 9:2772(A)(1)(a) and  R.S. 9:5607(A)(1); R.S. 9:2772(A)(1)(b) and  R.S. 9:5607(A)(2);  R.S. 9:2772(A)(2) and  R.S. 9:5607(A)(3); as well as R.S. 9:2772(H)(1) & (3) and  R.S. 9:5607(E).

## B.  THE LEGISLATIVE HISTORY OF R.S. 9:5607 DEMANDS PROSPECTIVE APPLICATION:

It is abundantly clear from the mutually inclusive suspensive condition in the R.S. § 9:2772 (2003) House Bill, and the consistency of wording between the two statutes, that the intent of the Louisiana Legislature, when enacting  R.S. § 9:5607, was to continue the legislative history of  R.S. § 9:2772; and this legislative history

---

[18]*See* La. C.C. Art. 13 (2006).

consistently, for forty-two years, reenacted the prospective application of the statute.

## C. THE STATUTORY PURPOSE OF R.S. 9:5607 IS THE SAME AS THAT OF R.S. 9:2772:

Just like in portions of  R.S. § 9:2772, the statutory purpose of  R.S. § 9:5607 was to set a peremptive period with regard to causes of actions against engineers and certain other professionals, nothing more.

## D.  THE LEGISLATIVE INTENT OF R.S. 9:5607 DEMANDS PROSPECTIVE APPLICATION:

It is clear that  R.S. § 9:5607 is simply an extraction from  R.S. § 9:2772, via a mutually inclusive suspensive condition, in an effort to isolate engineers and certain other professionals under the Revised Statutes.  Since many of the same subsections are used in both statutes, including the retroactive fraud exception, it is clear that the legislative intent of  R.S. § 9:5607 was to allow for a prospective application only, effective August 15, 2003, with a single retroactive exception for fraud in Subsection (E).

## E.  REPLY TO THE ENGINEERS' ARGUMENTS FOR PEREMPTION

### (1)    R.S. 9:5607 is not a retroactive statute

The Engineers contend that "the legislature enacted Section 9:5607 as a remedial statute that superseded Section 9:2772, and under Louisiana's Civil Code, Section 9:5607 applies retroactively."[19]  As is proven by the legislative history of both R.S. 9:2772 and R.S. 9:5607, and their mutually inclusive 2003 enactments, the Engineers' argument is inaccurate.

---

[19]Doc. 747-1 at pg. 5.

-18-

The term "remedial" is a term of art in Louisiana law, and nowhere in R.S. 9:5607, R.S. 9:2772, any of their predecessors, or House Bills does the Legislature refer to R.S. 9:5607 as a "remedial statute;" nor has counsel for the Engineers cited its source for its assumption that "the legislature enacted Section 9:5607 as a remedial statute ...."[20]  Thus, the Engineers' underlying premise that R.S. 9:5607 was meant to remedy some deficiency in R.S. 9:2772 is fatally flawed and inaccurate.  If the Legislature intended to enact R.S. 9:5607 as a remedial statute, it would have done so expressly - - as it has done throughout the Revised Statutes, including La. Rev.  Stat. Ann. § 9:5604(B) (2006), La. Rev. Stat. Ann. § 9:5605(B) (2006), and La. Rev. Stat. Ann. § 9:5628.1(B) (2006), which all expressly read, "The provisions of this Section are remedial ...."

It is clear that the legislative intent of R.S. 9:5607 is simply to extract engineers, and certain other professionals, from R.S. 9:2772 for more focused coverage, not to correct a defective or faulty statute.  This certainty is made clear by the fact that, before the mutually inclusive and conditional R.S. 9:2772 (2003)[21] and R.S. 9:5607 (2003)[22] were introduced, the Legislature enacted the earlier R.S. 9:2772 (2003)[23] statute, with a seven-year peremptory period, just in case 9:5607 was not enacted.  Therefore, the Legislature had a backup course of action: in case R.S. 9:5607 was not enacted, engineers would continue to be covered under the exact same law as the previous 2001

---

[20]Doc. 747-1 at pg. 5; *see* pg. 17.

[21]2003 La. Acts 919, § 1.

[22]2003 La. Acts 854, § 1.

[23]2003 La. Acts 279, § 1.

statute, except for the new seven-year peremptory period.  Thus, the Legislature was not remediating any deficiency in the applicable law at that time.

Also, the Engineers' statement that R.S. 9:5607 supercedes R.S. 9:2772 is incomplete.  Although R.S. 9:5607(D) states that "The provisions of this Section shall take precedence over and supersede the provisions of R.S. 9:2772...," the Engineers failed to mention the fact that R.S. 9:5607 (2003) was a mutually inclusive suspensive condition to the enactment of R.S. 9:2772 (2003),[24] and, therefore, R.S. 9:5607 only supercedes its 2003 companion enactment, R.S. 9:2772 (2003),[25] which is shown from the legislative history of both statutes.  Therefore, all of the preceding R.S. 9:2772 enactments and reenactments retain their prospective coverage of claims against engineers up until the date that they were legislatively superceded by another prospective statute.

Hence, R.S. 9:2772 (1985), with its ten-year prospective peremption period, continues to control any cause of action against an engineer arising between July 9, 1985, and August 14, 1999.  R.S. 9:2772 (1999), with its seven-year prospective peremption period, continues to control any cause of action against an engineer arising between August 15, 1999, and August 14, 2003.  Finally, R.S. 9:5607, with its five-year prospective peremption period, controls any cause of action against an engineer arising on or after August 15, 2003.  Thus, it is clear that the intention of the Legislature, when it enacted R.S. 9:5607, was to simply extract coverage of engineers from R.S. 9:2772

---

[24]2003 La. Acts 919, § 1.

[25]*Id.*

and give the new statute prospective application only, not retroactive application as the Engineers suggest.

    **(2)**    <u>R.S. 9:5607 is not a remedial statute</u>

      The Engineers also argue that "the Louisiana Supreme Court addressed an ***identical argument*** assailing peremption and found that peremption was a valid exercise of legislative prerogative and was absolute."[26]  However, the case that the Engineers cited[27] is clearly distinguishable from the case *sub judice*; and the cited case was one which was controlled by a true and expressed remedial statute, unlike R.S. 9:5607.  The case cited by the Engineers, *Reeder v. North*,[28] dealt with a legal malpractice cause of action, which is controlled entirely by R.S. 9:5605, not R.S. 9:5607 or R.S. 9:2772.

      The Supreme Court of Louisiana's holding in *Reeder* was founded on "the strict wording of La. R.S. 9:5605."[29] Subsection (B) of R.S. 9:5605 controlled the *Reeder* holding.  The subsection reads, "***The provisions of this Section are remedial*** and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred."[30]  *Reeder* and R.S. 9:5605 are distinguished from the case *sub judice* and R.S. 9:5607 in that the court stated, "The Legislature was particularly clear in

---

[26]Doc. 747-1 at pg. 5 (emphasis added).

[27]*Reeder v. North*, 701 So.2d 1291 (La. 1997).

[28]*Id.*

[29]*Id.* at 1293.

[30]*Id.* at 1294; *see* La. Rev. Stat. Ann. § 9:5605(B) (2006).

wording La. R.S. 9:5605 so as to leave **no doubt** as to its intent."[31]  "[T]here is **no doubt** that the three-year peremptive period retroactively applies to *Reeder* **because** the Legislature provided that '[t]he provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred.'"[32] The wording of the court's holding demonstrates that it upheld the peremptive period written into the statute because the Legislature expressly provided that the statute be considered remedial.  If R.S. 9:5605 would have failed to include the sentence, "The provisions of this Section are remedial...," the court would have obviously held that the Plaintiff's cause of action was not perempted under the Statute.

It is critical to note that R.S. 9:5605 was enacted thirteen years prior to the enactment of R.S. 9:5607.  *Reeder* was decided six years prior to the enactment of R.S. 9:5607.   Additionally, R.S. 9:5607 was placed almost immediately beside R.S. 9:5605 in the Revised Statutes, which the Engineers admit "is no accident, and worthy of note,"[33] but the Legislature still refused to add one single phrase or word to ensure that R.S. 9:5607 was expressly remedial.  The Legislature was particularly clear in wording R.S. 9:5607 so as to leave no doubt as to its intent, and "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."[34]  Thus, the Plaintiffs' causes of action, which arose before the

---

[31] *Id.* at 1295 (emphasis added).

[32] *Id.* (emphasis added).

[33] Doc. 747-1 at pg. 18, footnote 44.

[34] La. Civ. Code Ann. art. 9.

enactment of R.S. 9:5607 must not be controlled by R.S. 9:5607 since the statute is not remedial in nature.

> ### (3)   The retroactive application of R.S. 9:5607 is unconstitutional

The Engineers also argue that "Louisiana Courts have consistently held that, irrespective to the manifestation date, when a cause of action does not accrue until after peremption tolls, the claim is **absolutely** barred."[35]  Therefore, "[i]n the instant suits[, under Section 9:5607,] the peremptive period for claims against the Engineers had tolled by September 18, 2000, five years before the plaintiffs' filed the first complaint."[36] The Engineers cite *Bordlee v. Neyrey Park, Inc.*[37] and *Stipe v. Joseph A. Neyrey Gen. Contractors*[38] in support of this argument.[39]  This argument is without merit.

The correct rule of law in both *Bordlee* and *Stipe* is as follows: In the absence of language showing a contrary intention, a procedural statute should be given retroactive effect, unless such an application would divest the plaintiff of a vested property right or violate the due process clauses of the federal and state constitutions.[40]  "Nonetheless, a newly-created statute of limitations or one which shortens existing periods of limitation will not violate the constitutional prohibition against divesting a vested right, provided it

---

[35]Doc. 747-1 at pg. 5 (emphasis added).

[36]Doc. 747-1 at pg. 19.

[37]*Bordlee v. Neyrey Park, Inc.*, 394 So.2d 822 (La.App. 4 Cir. 1981).

[38]*Stipe v. Joseph A Neyrey Gen. Contractors*, 385 So.2d 568 (La.App. 4 Cir. 1980).

[39]Doc. 747-1 at pg. 5.

[40]*Stipe*, 385 So.2d at 569-570.

allows a reasonable time for those affected by the act to assert their rights."[41] Therefore, a Plaintiff must have a reasonable time under the newly enacted peremption period to assert his right to recover damages from the Defendant, otherwise, there is a violation of the Plaintiff's constitutional rights when a peremption period is applied retroactively to preempt the Plaintiff's cause of action.[42]

By applying the proper rule of law to the aforementioned cases, it is abundantly clear from the case holdings and analysis that the reason the plaintiffs in *Stipe* and *Bordlee* failed to circumvent the peremption period in R.S. 9:2772 (1964) is that they were indeed given a "reasonable time" to assert their right to recover damages under Subsection (G) of the 1964 version of the statute.  In the 1964 enactment, Subsection (G) read as follows:

> G.    Causes of action which exist prior to July 29, 1964 shall be pre-empted one year from said date or by the applicable pre-emptive period established by this Section, whichever is later.[43]

In *Stipe*, the Plaintiffs entered into a building contract with the Defendant on June 30, 1961; the Plaintiffs discovered the Defendant's negligence in January, 1977; and the Plaintiffs filed suit against the Defendant on January 19, 1978.  In *Bordlee*, the Plaintiff entered into a contract with the Defendant to purchase a home in November, 1963; the Plaintiff discovered the Defendant's negligence in June, 1978; and the Plaintiff filed suit on June 8, 1979.  In both of these cases, R.S. 9:2772 (1964), with its ten-year

---

[41]*Id.* at 570-71.

[42]*Id.* at 571.

[43]La. R.S. § 9:2772(G) (1964).

peremption period, was enacted between the time of contract and discovery of the

Defendants' negligence.  Also, in both of these cases, R.S. 9:2772(G) allowed for a

"reasonable time" to assert their right to recover damages.  Finally, in both of these

cases, the Plaintiffs failed to file suit within the "reasonable time" enumerated by

Subsection (G), which then perempted their causes of action under R.S. 9:2772.

　　　According to the Louisiana Fourth Circuit Court of Appeal in *Stipe*, which was

referred to in *Bordlee*:[44]

> [W]e ... agree with the trial judge, who explained in reasons
> for judgment: 'Section G of [R.S. 9:2772 (1964)] is expressly
> designed to correct this constitutional problem.  Under that
> section, causes of action which existed prior to the effective
> date of the statute would not be preempted until one year
> from the effective date or until the applicable statutory
> period, whichever is later.'[45]

　　　Therefore, the Engineers' third argument misuses the holdings of the cases they

cite since R.S. 9:5607 is missing the main element that controlled the holdings in the

aforementioned cases, namely, a "reasonable time for those affected by the act to

assert their rights."[46]  Without a reasonable time expressed in the statute for those

affected by R.S. 9:5607 to assert their rights, this procedural law is not accorded

retroactive effect because such retroactivity would operate unconstitutionally to disturb

the vested rights of the Plaintiffs.[47]  Thus, because the Engineers' negligent acts

occurred during the 1990's and R.S. 9:5607 does not enumerate a reasonable time to

---

[44]*Bordlee*, 394 So.2d at 824.

[45]*Stipe*, 385 So.2d at 571.

[46]*Id.*

[47]*Id.* at 570; *Lott v. Haley*, 370 So.2d 521, 523-524 (La. 1979).

allow for due process, the Plaintiffs' causes of action are still controlled by the ten-year peremptive period enumerated in R.S. 9:2772 (1985) for all causes of action arising before August 15, 1999, and by the seven-year peremptive period enumerated in R.S. 9:2772 (1999) for all causes of action arising on or after August 15, 1999.

Moreover, "the legislature is the judge of the reasonableness of the time and the courts will not interfere *except where the time is so short as to amount to a denial of justice*."[48]  Since there is absolutely no time enumerated in R.S. 9:5607 for those affected by the act to assert their rights, the lack of time is axiomatically unreasonable to the Plaintiffs in the case *sub judice*.  Finally, "where an injury has occurred for which the injured party has a cause of action, such cause of action is a vested property right which is protected by the guarantee of due process."[49]  Therefore, it is clear that the lack of a reasonable time in R.S. 9:5607 would violates the Plaintiffs' due process rights if it were applied retroactively beyond August 15, 2003.

The Engineers also make a short argument in their Joint Reply that "[b]ecause statutes of peremption are procedural in nature, they are to be given retroactive effect *in the absence of language showing a contrary legislative intent*."[50]  In an attempt to prove their argument, the Engineers cite a 1979 case, *Orleans Parish Sch. Bd. v. Pittman Constr. Co.*,[51] and argue that, "The court affirmed the remedial nature of [R.S. 9:2772] and the propriety of retroactive application to effectively bar the third-party

---

[48]*Id.* at 571 (emphasis added).

[49]*Id.*

[50]Doc. 747-1 at pg. 21.

[51]372 So.2d 717 (La.App. 4 Cir. 1979).

claim....  This expression of legislative intent is wholly consistent with the court's prevailing view that peremption statutes are procedural and remedial in nature and may be applied retroactively...."[52]

At the time that this 1979 case was decided, R.S. 9:2772 (1964), which was the controlling law, did not contain either Subsection (H)(1), which was enacted in 1985 and expressly stated in part that, "The provisions of **this subsection** shall be **retroactive**,"[53] which impliedly stated that the rest of the Statute was prospective only; nor did it contain § 2, which was enacted in 1999, which expressly stated that, "The provisions of this Act shall have **prospective application only** and shall **apply only to contracts entered into on or after the effective date of this Act**."[54]  Thus, the precedential power of this case has been considerably limited.

Also, the *Pittman* Court,[55] just like the *Stipe*[56] and *Bordlee*[57] Courts, only allowed the Statute's peremption period to apply "in this case without depriving Pittman of any vested rights, because the statute by its own terms [in Subsection G] allows 'a reasonable time for those affected by the act to assert their rights'... [and] [u]nder the terms of the statute (Section G), Pittman had until September 14, 1970 to file its third-

---

[52]Doc. 747-1 at pg. 21.

[53]La. R.S. § 9:2772 (1985) (emphasis added); *see* 1985 La. Acts 303, § 1.

[54]La. R.S. § 9:2772 (1999) (emphasis added); *see* 1999 La. Acts 1024, § 2.

[55]372 So.2d 717.

[56]385 So.2d 568.

[57]394 So.2d 822.

party demands [but failed to do so]."[58]  Once again, the Engineers completely misread the law.  The Engineers claim that R.S. 9:5607 does not violate due process rights because its predecessor, R.S. 9:2772 , did not violate due process rights.  However, R.S. 9:5607 lacks the same type of subsection that exists in R.S. 9:2772 which allows for proper due process, more specifically, a due process clause with a time period within which Plaintiffs can bring claims after the statute is enacted.  Therefore, retroactive application of R.S. 9:5607 is unconstitutional.

## 6. CONCLUSION

Defendants' Motions for Summary Judgment must be denied.  Plaintiffs should be allowed to commence formal discovery and amend their Complaints.  Plaintiffs' "remoteness argument is valid and discovery would yield "reasonable triable facts" in connection with work performed on the canals made the basis of this litigation, both at the breach sites and along the canals where no breaches occurred.  Historically, Louisiana courts have allowed amendments to pleadings to include fraud allegations.  Defendants' Motions for Summary Judgment contain genuine issues of material facts on their face.   Finally, the Engineers' argument that the five year peremption period mandates that all claims against the Engineers are perempted is invalid.  For all of the foregoing reasons, Plaintiffs respectfully submit that the Engineers' Motions for Summary Judgment be denied.

Respectfully submitted,

BRUNO & BRUNO, LLP

---

[58] *Pittman*, 372 So.2d at 720.

BY: _____/s/ Joseph M. Bruno_____
         JOSEPH M. BRUNO, ESQ. (La. Bar No. 3604)
         DAVID S. SCALIA, ESQ. (La. Bar No. 21369)
         L. SCOTT JOANEN, ESQ. (La. Bar No. 21431)
         855 Baronne Street
         New Orleans, Louisiana 70113
         Telephone: (504) 525-1335
         **LIAISON COUNSEL**
         **ON BEHALF OF THE LEVEE**
         **BREACH LITIGATION GROUP**

         AND

         Daniel E. Becnel, Jr., Esq. La Bar No. 2926
         Calvin Fayard, Esq. La Bar No. 5486
         Hugh P. Lambert, Esq., La Bar No. 7933
         Gerald E. Meunier, Esq. La Bar No. 9471
         **EXECUTIVE COMMITTEE OF THE LEVEE BREACH**
         **LITIGATION GROUP**

         AND

         Walter C. Dumas, Esq. La Bar No. 5163
         F. Gerald Maples, Esq. La Bar No. 25960
         Ashton R. O'Dwyer, Jr., Esq. La Bar No. 10166
         Darleen Jacobs, Esq. La Bar No. 7208
         Dennis C. Reich, Esq. TX Bar No. 16739600
         Peyton Murphy, Esq.
         Jerry Parker, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the above and foregoing pleading upon all counsel of record by placing same in the United States mail, properly addressed and with first class postage prepaid, or by hand delivery, or by facsimile, e-mail, or other electronic means, this 17th day of August, 2006.


          /s/ Joseph M. Bruno
          JOSEPH M. BRUNO, ESQ.