

RECEIVED
U.S. DISTRICT COURT
EAST DISTRICT OF LA
2006 AUG 17 PM 4: 46
LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

| | | | |
|---|---|---|---|
| MAUREEN O'DWYER, ET AL. | * | NO. | 06-4389 |
| VERSUS | * | SECTION | |
| DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, ET AL. | * | MAGISTRATE | SECT.S MAG 3 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR COMPENSATORY AND EXEMPLARY DAMAGES, AND FOR REASONABLE ATTORNEY'S FEES AND TAXABLE COSTS IN A CLASS ACTION LAWSUIT FILED PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE

### I.

Plaintiffs in the above-styled and numbered cause are the following:

Maureen O'Dwyer
Harold Joseph Gagnet
Sally Egerton Richards
Shane E. Porter
Stephanie Porter
 Interior Specialties, L.L.C.
Shelia Jones Jordan
Charles Edward Jordon
Wayne M. Jones
Gloria Agnes Griffin, individually and as Administratrix of the
 Succession of her brother Stephen Williams, and on behalf of any
  and all heirs, survivors, relatives and beneficiaries of the deceased
Leticia Brown

-1-

**Devin Baptiste**
**Ellen Penny**
**Antoinette Theriot**
**Mark Owens**
**Patricia S. Cross**

Plaintiffs reserve the right to amend the above and foregoing list as more persons, firms and corporations representative of the representative classes of plaintiffs, described herein, *infra*, join this litigation and wish to be represented by undersigned counsel.

## II.

Plaintiffs are representative of the following classes of people, *inter alia*:

A.    Citizens and/or residents of the Parishes of Orleans, Jefferson and St. Bernard, State of Louisiana, who are survivors of human beings who died as a result of the fault, neglect, strict liability and/or breach of the implied warranty of workmanlike performance pleaded herein.

B.    Citizens and/or residents of the Parishes of Orleans, Jefferson and St. Bernard, State of Louisiana, who suffered bodily injury, pain and suffering, mental anguish and/or emotional distress as a result of the fault, neglect, strict liability and/or breach of the implied warranty of workmanlike performance pleaded herein.

C.    Citizens and/or residents of the Parishes of Orleans, Jefferson and St. Bernard, State of Louisiana, who suffered loss of or damage to property, both real and personal, and/or diminution in the value of their property, as a result of the fault, neglect, strict liability and/or breach of the warranty of workmanlike performance pleaded herein.

D.      Citizens and/or residents of the Parishes of Orleans, Jefferson and St. Bernard, State of Louisiana, who suffered purely economic losses as a result of the fault, neglect, strict liability and/or breach of the implied warranty of workmanlike performance pleaded herein, including lost income, lost profits and relocation and/or increased living expenses.

E.      Citizens and/or residents of the Parishes of Orleans, Jefferson and St. Bernard, State of Louisiana, who suffered damage from pollution, including bodily injury, contamination of real or personal property, lost revenues, profits and earning capacity due to pollution, and damage for subsistence use, as well as damage for the cost of containment, clean-up, remediation and restoration, and for damage to the environment.

F.      Citizens and/or residents of the Parishes of Orleans, Jefferson and St. Bernard, State of Louisiana, who experienced the threat of loss or damage as a result of the fault, neglect, strict liability and/or breach of the implied warranty of workmanlike performance pleaded herein, including damages for anxiety, fear, fright, despair and hopelessness.

### III.

Made defendants herein are the following:

1)      The Department of Transportation and Development, State of Louisiana;[1]

2)      Johnny D. Bradberry, who is sued both individually and in his official capacity as Secretary of the Department of Transportation and Development, State of Louisiana;

---

[1] Plaintiffs aver that any immunity which this defendant may claim pursuant to the 11th Amendment to the U.S. Constitution has been waived.

3)   The Board of Commissioners for the Orleans Levee District;

4)   James P. Huey, who is sued both individually and in his official capacity as President of the Board of Commissioners for the Orleans Levee District;

5)   St. Paul Fire and Marine Insurance Company, which is sued pursuant to the provisions of the Louisiana Direct Action Statute (LSA-R.S. 22:655) as the liability insurer of the Board of Commissioners for the Orleans Levee District;

6)   The Sewerage and Water Board of New Orleans;

7)   C. Ray Nagin, who is sued both individually and in his official capacity as President of the Sewerage and Water Board of New Orleans;

8)   The Board of Commissioners for the Lake Borgne Basin Levee District;

9)   George E. Lopez, who is sued both individually and in his official capacity as President of the Board of Commissioners of the Lake Borgne Basin Levee District;

10)   The Board of Commissioners of the Port of New Orleans;

11)   Eustis Engineering, Inc., a foreign corporation which, at all times pertinent, did business within the territorial jurisdiction of this Honorable Court;

12)   Modjeski and Masters, Inc., a foreign corporation which, at all times pertinent, did business within the territorial jurisdiction of this Honorable Court;

13)   B&K Construction Company, Inc., a foreign corporation which, at all times pertinent, did business within the territorial jurisdiction of this Honorable Court;

14)   Burk Kleinpeter, Inc., a foreign corporation which, at all times pertinent, did business within the territorial jurisdiction of this Honorable Court;

15)   CSX Corporation, a foreign corporation which, at all times pertinent, did business within the territorial jurisdiction of this Honorable Court;

16)   CSX Transportation, Inc., a foreign corporation which, at all times pertinent, did business within the territorial jurisdiction of this Honorable Court;

17)   Gotech, Inc., a foreign corporation which, at all times pertinent, did business within the territorial jurisdiction of this Honorable Court;

18)   Washington Group International, Inc., a foreign corporation which, at all times pertinent, did business within the territorial jurisdiction of this Honorable Court;

19)   ABC, DEF and XYZ Insurance Companies, who are sued pursuant to the provisions of the Louisiana Direct Action Statute (LSA-R.S. 22:655) as the liability insurers of the defendants identified in Article III (subparts 1, 6, 8 and 10 through 18), supra.

## IV.

This Court has jurisdiction of the claims herein asserted pursuant to 28 U.S.C. §1333(1) by virtue of the following maritime torts committed by defendants:

1)   Defective and negligent design, construction, operation, inspection and maintenance of an entire navigable waterway system, including levees and retaining wall structures, consisting of the Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway, the Inner Harbor Navigation Canal (a/k/a

"The Industrial Canal"), the London Avenue Canal, the Orleans Avenue

Canal and the 17th Street Canal, their environs and tributaries;

2)      Negligent failure to contain the navigable waters of the United States

identified, <u>supra</u>;

3)      Negligent dredging of the navigable waters of the Untied States identified,

<u>supra</u>;

## V.

This Court also has jurisdiction of the claims herein asserted by virtue of

defendants' violation of the following pollution statutes:

The Oil Pollution Act of 1990 and precursor legislation

The Comprehensive Environmental Response Compensation and Liability
Act and precursor litigation

The Federal Water Pollution Control Act

The Clean Water Act

The Clean Air Act

## VI.

Additionally, this Court has jurisdiction of the claims herein asserted pursuant to

28 U.S.C. §1331, and pursuant to the Fifth Amendment of the United States Constitution,

since plaintiffs in this case also aver defendants' taking of plaintiffs' property without

just compensation.

## VII.

Alternatively, this Court has jurisdiction of the claims herein asserted by virtue of

supplemental jurisdiction and/or by virtue of the diversity of citizenship existing between

plaintiffs and certain defendants, coupled with the fact that each of the claims herein asserted exceeds the sum of $75,000 exclusive of interest and costs.

## VIII.

By alleging the existence of admiralty and maritime jurisdiction, plaintiffs invoke application of the general maritime law as the yardstick by which defendants liability to plaintiffs will be measured.  However, plaintiffs also invoke application of the following Louisiana State laws which, it is submitted, are not in conflict with the general maritime law, and the violation of which may be viewed as indicia of the violation of the general maritime law by defendants:

LSA-R.S. 14:39

LSA-R.S. 14:55

LSA-R.S. 14:56

LSA-R.S. 14:134

Article 667 of the Louisiana Civil Code

Article 2315 of the Louisiana Civil Code

Article 2315.1 of the Louisiana Civil Code

Article 2315.2 of the Louisiana Civil Code

Article 2315.6 of the Louisiana Civil Code

Article 2316 of the Louisiana Civil Code

Article 2317 of the Louisiana Civil Code

Article 2317.1 of the Louisiana Civil Code

Article 2322 of the Louisiana Civil Code

The Louisiana Environmental Quality Act

The Louisiana Air Control Law

The Louisiana Water Control Law

The Louisiana Oil Spill Prevention and Response Act

## IX.

Plaintiffs also aver that defendants breached the warranty of workmanlike performance owed them and their property by defendants under the general maritime law.

## X.

Plaintiffs also aver causes of action against defendants for trespass and nuisance.

## XI.

Sometime at or about the time Hurricane KATRINA made landfall in Louisiana on the early morning of August 29, 2006, and thereafter, numerous breaches in the levees and retaining wall structures occurred along the Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway, the Inner Harbor Navigation Canal (a/k/a the Industrial Canal), the London Avenue Canal and the 17th Street Canal. As a result of those breaches, flooding of the Greater Metropolitan Area, including parts of the Parishes of Orleans, Jefferson and St. Bernard, occurred. Additional flooding was caused by storm surge flowing over "low spots" or unprotected areas along the banks of the London Avenue and Orleans Avenue Canals.

## XII.

Plaintiffs aver that the above-described breaches in the levees and retaining wall structures of the navigable waterways identified, supra, and the resulting flooding of the Greater New Orleans Metropolitan Area, were caused or occasioned by defendants' fault, neglect, strict liability and/or breach of the implied warranty of workmanlike

-28-

performance which was owed plaintiffs and their property by defendants. Plaintiffs also aver that defendants failed in their duty to ensure the competent design, construction operation, inspection and maintenance of an entire navigable waterway system, consisting of the Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway, the Inner Harbor Navigation Canal (a/k/a the Industrial Canal), the London Avenue Canal, the Orleans Avenue Canal and the 17th Street Canal, and their environs and tributaries, which were defectively and negligently designed, constructed, operated, inspected and maintained, and that defendants failed in their duty to properly contain navigable waters of the United States in that navigable waterway system.

## XIII

As to defendants, the Department of Transportation and Development, State of Louisiana, Secretary Bradberry, the Board of Commissioners for the Orleans Levee District, James P. Huey, the Sewerage and Water Board of New Orleans, C. Ray Nagin, the Board of Commissioners of the Lake Borgne Basin Levee District, George E. Lopez and the Board of Commissioners of the Port of New Orleans, plaintiffs aver the following facts in support of their allegations of liability for fault, neglect, strict liability and/or breach of the warranty of workmanlike performance by said defendants:

1) Failing to discharge their statutory obligations as outlined in Titles 33, 36 and 38 of the Louisiana Revised Statutes.

2) Failing to have or implement competent management structures, rules procedures, standards and training programs.

3) Lobbying for and approving, in 1985, construction of "The High Level Plan" rather than "The Barrier Plan".

4) Failing to coordinate with the U.S. Army Corps of Engineers and with other State and local agencies so that responsibility for cooperation concerning levees, drainage and flood control, and for inspection and

maintenance of completed portions of the Lake Pontchartrain Project, were clearly spelled out.

5) Ignoring "turnover" letters from the U.S. Army Corps of Engineers.

6) Failing to properly train employees and to coordinate with each other and with the U.S. Army Corps of Engineers in order to better discharge the statutory duties of inspecting and maintaining the levee systems.

7) Failing to competently inspect and maintain the levee systems or maintain proper records addressing inspection and maintenance.

8) Failing to remedy obviously deficient conditions in the levee systems, which proper inspection should have disclosed.

9) Failing to notify the U.S. Army Corps of Engineers after several residents of Bellaire Drive reported water in their yards several months prior to KATRINA, and failing to do anything about the water which was reported, independently of the Corps of Engineers.

10) Institutionalizing a complete lack of cooperation and coordination and between the New Orleans Levee Board and the Sewerage and Water Board of New Orleans.

11) Negligently dredging the navigable waterways identified herein which eliminated any factor of safety in the original designs for the levee and retaining wall structures.

12) Misdirecting funds which should have been earmarked for flood control projects and/or flood-related projects to other projects, in violation of law.

13) Focusing money and resources on non-flood-protection activities.

14) Failing to remedy "low spots" in the retaining wall structures on the London Avenue and Orleans Avenue Canals, with the result that storm surge from Lake Pontchartrain poured into the City of New Orleans and surrounding area during Hurricane KATRINA.

15) Failing to remedy levees which were known to be below design height.

16) Failing to repair the W-30 floodgate on the West side of the Industrial Canal prior to KATRINA, and failing to adequately close the gap left in the hurricane protection system by that damaged floodgate.

17) Failing to have and/or to follow a competent emergency operations plan, including the failure to stockpile materials for use in an emergency.

18) Failing to learn any lessons from the difficulties which Pittman Construction Co., Inc. encountered with the sheet piles and the concrete monolith panels at the 17th Street Canal in 1993 and 1994.

19) Failing to learn any lessons from prior hurricane exercises, including particularly the Hurricane PAM exercise, among others.

20) Establishing an Emergency Operations Center in a flood plain.

21) Failing to have a clear understanding with the Federal Government (the U.S. Army Corps of Engineers) and with each other about who was responsible for what, when there was a problem.

22) Interfering with and actually obstructing the closing of the levee breaches and the dewatering of the City of New Orleans after Hurricane KATRINA.

23) Failing to safeguard the water supply of the East Bank of Orleans Parish in the aftermath of Hurricane KATRINA, with the result that entire city blocks burned to the ground, because there was no water to douse the fires.

24) Failing to property monitor water pressures adjacent to the water bodies involved in this litigation.

25) Failing to adequately protect pumps and electrical generating equipment, including emergency generating equipment, from flooding.

26) Failing to ensure operational redundancy in the water pumping and drainage systems.

27) Failing to establish and have competent Engineering Staff(s), and in a sufficient number, to do what the law required them to do.

28) Constructing earthen levees with unsuitable materials.

Plaintiffs reserve the right to amend the foregoing Article when the facts become more fully known.

## XIV.

Defendant, St. Paul Fire and Marine Insurance Company, as the insurer of the Board of Commissioners of the Orleans Levee District, is liable directly unto plaintiffs for the fault, neglect, strict liability and/or breach of the warranty of workmanlike

performance owed plaintiffs by its insured. Plaintiffs further aver multiple occurrences to the above-described levees and retaining wall structures on August 29, 2005, entitling plaintiffs to the full limits of the policy issued by St. Paul Fire and Marine Insurance Company to the Board of Commissioners of the Orleans Levee District for each occurrence.

## XV.

Plaintiffs aver that as a result of the aforesaid fault, neglect, strict liability and/or breach of the implied warranty of workmanlike performance by defendants, plaintiffs have sustained damages, including damages for the wrongful deaths of loved ones, bodily injuries, property damage, both real and personal, pain, suffering, mental anguish and emotional distress, inconvenience, relocation expenses and increased living expenses, diminution in the pre-KATRINA value of their property, as well as other quantifiable losses for which money damages are being sought by plaintiffs from defendants in this action, including damages incurred by virtue of pollution.

## XVI.

Plaintiffs aver that the conduct of certain defendants, described, supra, was criminal, willful, wanton and reckless, so as to constitute legal misconduct, entitling plaintiffs to an award of punitive or exemplary damages from those defendants under the general maritime law.

## XVII.

Plaintiffs specifically invoke the doctrine of *res ipsa loquitor* in connection with the factual and legal circumstances which resulted in the bringing of this action.

## XVIII.

Plaintiffs aver entitlement to an award of reasonable attorney's fees and costs to be fixed at the maximum percentage of the total award allowed by law, whether pursuant to Rule 23(h), Federal Rules of Civil Procedure, or pursuant to any other Rule or statute, or allowed by law.

## XIX.

This is an admiralty and maritime claim within the meaning of Rule 9(h), Federal Rules of Civil Procedure.

## XX.

Should it be determined that plaintiffs are entitled to trial by jury, then plaintiffs desire trial by jury.  If trial by jury is not available, then plaintiffs request an advisory jury pursuant to the provisions of Rule 39(c), Federal Rules of Civil Procedure, or any other applicable rule.

**WHEREFORE**, plaintiffs pray that their class status be recognized and certified as such, and that after trial on the merits, and all due proceedings had, that there be judgment entered in favor of plaintiffs and against defendants, jointly, severally and *in solido*, for the full amount of plaintiffs' damages, plus reasonable attorney's fees, pre-judgment interest, and costs.

Ashton R. O'Dwyer, Jr.
Law Offices of Ashton R. O'Dwyer, Jr.
Bar No. 10166
One Canal Place
365 Canal Street, Suite 2670
New Orleans, LA 70130
Tel.: (504) 561-6561
Fax. (504) 561-6560