FloodSmart.gov: What Is A Flood?

 **FLOODSMART.GOV**

NFIP Home | Contact Us | Related Links | Press Room | Glossary | Site Map |
Help

 **FEMA**



Know the Facts    NFIP Resources    Insurance Center

In This Section

■ **Learn the Basics**
  ■ **What is a Flood?**
    **What Are My Options?**
    **What is Flood Insurance?**
    **Benefits of Flood Insurance**
  **What's Your Flood Risk?**
  **Floods Happen**
  **Facts & Statistics**
  **Frequently Asked Questions**
  **Article Library**



s > **What is a Flood?**

EXHIBIT

B

FloodSmart.gov: What Is A Flood?

# What is a Flood?



Here's how "flood" is defined by the National Flood Insurance
Program:

"A general and temporary condition of partial or complete inundation
of two or more acres of normally dry land area or of two or more
properties (at least one of which is the policyholder's property) from:

- Overflow of inland or tidal waters; or

- Unusual and rapid accumulation or runoff of surface waters from
  any source; or

- Mudflow; or

- Collapse or subsidence of land along the shore of a lake or
  similar body of water as a result of erosion or undermining
  caused by waves or currents of water exceeding anticipated
  cyclical levels that result in a flood as defined above."

So, in plain English, a flood is an excess of water (or mud) on land
that's normally dry.

Floods often happen when bodies of water overflow or tides rise due
to heavy rainfall or thawing snow. But you don't have to live near
water to be at risk of flooding. A flash flood, which can strike anywhere
without warning, occurs when a large volume of rain falls within a
short time.

More and more buildings, roads and parking lots are being built where
forests and meadows used to be, which decreases the land's natural
ability to absorb water. Coupled with changing weather patterns, this
construction has made recent floods more severe and increased
everyone's chance of being flooded.

Dangerous or damaging floods don't always mean dramatic, rushing
waters through the streets of your hometown. Just a single inch of
water can cause costly damage to your home! Keep this in mind when
you're considering flood insurance.



Home » Hazards » Hurricanes

**Search FEMA**



» Advanced Search

**Hazards**
- Dam Safety
- Earthquakes
- Extreme Heat
- Fires
- Floods
- Hazardous Materials
- Hurricanes
- Landslides
- Multi-Hazard
- Nuclear
- Terrorism
- Thunderstorms
- Tornadoes
- Tsunamis
- Volcanoes
- Wildfires
- Winter Storms

- **Mitigation Division**



# Hazards

Informing The Public About Hazards

## Hurricanes

### Storm Surge

Storm surge is simply water that is pushed toward the shore by the force of the winds swirling around the storm. This advancing surge combines with the normal tides to create the hurricane storm tide, which can increase the mean water level 15 feet or more. In addition, wind driven waves are superimposed on the storm tide. This rise in water level can cause severe flooding in coastal areas, particularly when the storm tide coincides with the normal high tides. Because much of the United States' densely populated Atlantic and Gulf Coast coastlines lie less than 10 feet above mean sea level, the danger from storm tides is tremendous.

- Storm Surge
- Slosh Model
- Wave and Current Action
- Tornadoes
- What Is A Hurricane?
- Hurricane Threats
- Inland Flooding



"The greatest potential for loss of life related to a hurricane is from the storm surge." - Brian Jarvinen, National Hurricane Center

The level of surge in a particular area is also determined by the slope of the continental shelf. A shallow slope off the coast (right, top picture) will allow a greater surge to inundate coastal communities. Communities with a steeper continental shelf (right, bottom picture) will not see as much surge inundation, although large breaking waves can still present major problems. Storm tides, waves, and currents in confined harbors severely damage ships, marinas, and pleasure boats.

One tool used to evaluate the threat from storm surge is the SLOSH model. Emergency managers use this data from SLOSH to determine which areas must be evacuated for storm surge. The links below provide some altered photos that show how the intensity of the storm (as given by the Saffir-Simpson Hurricane Scale) affects the possibility of flooding from storm surge at two locations. Storm surge also affects rivers and inland lakes, potentially increasing the area that must be evacuated.





SLOSH (Sea, Lake and Overland Surges from Hurricanes) is a computerized model run by the National Hurricane Center (NHC) to estimate storm surge heights and winds resulting from historical,

EXHIBIT

C

Blomberg No. 6119



hypothetical, or predicted hurricanes
by taking into account

- Pressure
- Size
- Forward speed
- Track
- Winds

Graphical output from the model displays color-coded storm surge heights for a particular
area in feet above the model's reference level, the National Geodetic Vertical Datum (NGVD),
which is the elevation reference for most maps.

The calculations are applied to a specific locale's shoreline, incorporating the unique bay and
river configurations, water depths, bridges, roads and other physical features. If the model is
being used to estimate storm surge from a predicted hurricane (as opposed to a hypothetical
one), forecast data must be put in the model every 6 hours over a 72-hour period and
updated as new forecasts become available.

The SLOSH model is generally accurate within plus or minus 20 percent. For example, if the
model calculates a peak 10 foot storm surge for the event, you can expect the observed peak
to range from 8 to 12 feet. The model accounts for astronomical tides (which can add
significantly to the water height) by specifying an initial tide level, but does not include rainfall
amounts, riverflow, or wind-driven waves. However, this information is combined with the
model results in the final analysis of at-risk-areas.

## More Information

- Additional Information on mitigation (risk management) activities & programs can be
  located at the Federal Insurance and Mitigation Administration's home page.

- The Flood Hazard pages have additional information

- The National Flood Insurance Program (NFIP) is a Federal program enabling property
  owners in participating communities to purchase insurance protection against losses from
  flooding.

- You may visit FEMA's Library to find Bulletins, Fact Sheets, Reports, Publications and
  other resources covering hurricane & flood information.

*Last Updated: Saturday, 23-Oct-2004 00:00:00
EDT*

DHS.gov | Español | Important Notices | Site Help | Site Index | Contact Us | FEMA Home

FEMA 500 C Street, SW Washington, D.C. 20472 Phone: (202) 566-1600

# "HURRICANE!"

## A Familiarization Booklet



EXHIBIT

D

# "HURRICANE!"

# A Familiarization Booklet

**Revised**
**April 1993**

**U.S. DEPARTMENT OF COMMERCE**
**National Oceanic and Atmospheric Administration**
**National Weather Service**

**NOAA PA 91001**



# Storm Surge

The hurricanes' worst killer comes from the sea, in the form of storm surge, which claims nine of ten victims in a hurricane.

As the storm crosses the continental shelf and moves close to the coast, mean water level may increase 15 feet or more. The advancing storm surge combines with the normal astronomical tide to create the hurricane storm tide. In addition, wind waves 5 to 10 feet high are superimposed on the storm tide. This buildup of water level can cause severe flooding in coastal areas, particularly when the storm surge coincides with normal high tides. Because much of the United States' densely populated coastline along the Atlantic and gulf coasts lies less than 10 feet above mean sea level, the danger from storm surge is great.

Wave and current action associated with the surge also causes extensive damage.

Water weighs some 1,700 pounds per cubic yard; extended pounding by frequent waves can demolish any structures not specifically designed to withstand such forces.

Currents set up along the coast by the gradient in storm surge heights and wind combine with waves to severely erode beaches and coastal highways. Many buildings withstand hurricane winds until their foundations, undermined by erosion, are weakened and fail. Storm tides, waves, and currents in confined harbors severely damage ships, marinas, and pleasure boats. In estuarine and bayou areas, intrusions of salt water endanger the public health and create bizarre effects, like salt-crazed snakes fleeing Louisiana's flooded bayous.



Skip to content.

# Department of Geological & Atmospheric Sciences

- Small Text
- Normal Text
- Large Text

**Sections**

- Academics
- Courses
- Events/Info
- People
- Research
- Field Camp

**Personal tools**

- You are not logged in
- Log in
- Join

# Illustrated Glossary of Geologic Terms

. 

# Illustrated Glossary of Geologic Terms



*We continuously upgrade this glossary*
*by adding links to illustrations and descriptive text.*
*Browse to see what has changed since your last visit.*

EXHIBIT

E

Blumberg No. 5119

Department of Geological & Atmospheric Sciences - Illustrated Glossary of Geologic Terms

**specific gravity** The ratio of the density of a material to the density of water.

**specific retention (field capacity)** The amount of **capillary water** retained in a soil after the drainage of **gravitational moisture**.

**sphericity** A descriptive term to describe how close a particle's shape is to a sphere.

**spit** A sandy bar built out from the land into a body of water.

**spoil** Overburden or non-ore removed in mining or quarrying.

**spreading axis (spreading center)** A region of divergence on the Earth's surface, as at a <u>rift</u> .

**spreading pole** A rotational pole around which a plate appears to rotate on the Earth's surface.

**spring** Occurs at the intersection of the water table with the ground surface.

**stack** An isolated, steep-sided, rocky mass or island just offshore from a rocky headland, usually on a shore platform.

**stalactite**  An icicle-shaped accumulation of <u>dripstone</u> hanging from cave roof.

**stalagmite**  A post of <u>dripstone</u> growing up from a cave floor.

**star dune** A sand dune built by winds alternating through several directions. Builds vertically rather than migrating and growing laterally.

**stick-slip** A jerky, sliding motion associated with fault movement.

**stock** A small **batholith**.

**stoping** A process of magmatic intrusion that involves detaching and engulfing pieces of the surrounding rock, so that the magma moves slowly upward.

**storm surge** A ridge of high water associated with a hurricane and which floods over the shore .

**strain** Change in the shape or volume of a body as a result of stress.

**strain rate** The rate at which a body changes shape or volume as a result of stress.

**strain seismograph** A <u>seismograph</u> that is designed to detect deformation of the ground by measuring relative displacement of two points.

**stratification** The accumulation of material in layers or beds.

NOAA - National Weather Service -



weather.gov

## National Oceanic and Atmospheric Administration's

# National Weather Service

Site Map        News        Organization        Search

Local forecast by
"City, St"

City, St

Warnings
Current
By State/County...
Observations
Radar
Satellite
Snow Cover
Surface Weather...
Forecasts
Local
Graphical
Aviation
Marine
Hurricanes
Severe Weather
Fire Weather
Text Messages
By State
By Message Type
National
Forecast Models
Numerical Models
Statistical Models...
Weather Safety
Weather Radio
Hazard Assmt...
StormReady /
TsunamiReady
Education/Outreach
Information Center
Tsunamis
Publications...
Contact Us
FAQ
Comments...



Home > Glossary

**Backwater Flooding**
    Hydrologic terms, upstream flooding caused by downstream conditions such as channel restriction and/or high flow in a downstream confluence stream.
**Closed Basin Lake Flooding**
    Flooding that occurs on lakes with either no outlet or a relatively small one. Seasonal increases in rainfall cause the lake level to rise faster than it can drain. The water may stay at flood stage for weeks, months, or years.
**Coastal Flooding**
    The inundation of land areas along the coast caused by sea water above normal tidal actions.
**Lowland Flooding**
    In hydrologic terms, inundation of low areas near the river, often rural, but may also occur in urban areas.
**Major Flooding**
    A general term including extensive inundation and property damage. (Usually characterized by the evacuation of people and livestock and the closure of both primary and secondary roads.)
**Minor Flooding**
    A general term indicating minimal or no property damage but possibly some public inconvenience.
**Moderate Flooding**
    The inundation of secondary roads; transfer to higher elevation necessary to save property — some evacuation may be required.
**River Flooding**
    The rise of a river to an elevation such that the river overflows its natural banks causing or threatening damage.
**Small Stream Flooding**
    In hydrologic terms, flooding of small creeks, streams, or runs.
**Snowmelt Flooding**
    In hydrologic terms, flooding caused primarily by the melting of snow.
**Urban and Small Stream Flooding**
    Flooding of small streams, streets, and low-lying areas, such as railroad underpasses and urban storm drains. This type of flooding is mainly an inconvenience and is generally not life threatening nor is it significantly damaging to property.
**Urban Flooding**
    Flooding of streets, underpasses, low lying areas, or storm drains. This type of flooding is mainly an inconvenience and is generally not life threatening.

---

You can either type in the word you are looking for in the box below or browse by letter

Search

[                    ]  Search

Browse by letter
# A B C D E F G H I J K L M N O P Q R S T U V W X Y Z

EXHIBIT

F

NOAA - National Weather Service -

US Dept of Commerce
National Oceanic and Atmospheric Administration
National Weather Service
1325 East West Highway
Silver Spring, MD 20910
Page Author: NWS Internet Services Team

Page last Modified: 21 April, 2005 9:10 AM

Disclaimer
Information Quality
Credits
Glossary

Privacy Policy
Freedom of Information Act (FOIA)
About Us
Career Opportunities

NOAA Magazine || NOAA Home Page                                               Commerce Dept.

## STORM SURGE: A "RISING" CONCERN AMONG COASTAL RESIDENTS



September 30, 2005 — As rescue teams searched the devastation along the Gulf Coast, it was evident that Hurricane Katrina claimed many victims with its storm surge — something that hasn't happened with a mainland U.S. hurricane in nearly half a century.

The last hurricane to cause similar storm surge damage in this area was Hurricane Camille when it came ashore at Pass Christian, Miss., in August 1969. Although much smaller in size than Katrina, Camille's 190 mile per hour winds generated a record storm surge measuring as much as 24.3 feet along a large portion of the Mississippi coastline. In its wake, Camille destroyed or seriously damaged more than 18,000 homes and 700 businesses — killing 172 people, with surge accounting for most of those deaths.



As of September 30, 2005, official storm surge data for both Hurricanes Katrina and Rita were still pending, but it's likely that Katrina's storm surge values will surpass that of Camille's record 24.3 foot storm surge. "Unfortunately, many of the local area tide gauges were destroyed during Katrina, making it difficult to get accurate storm surge estimates," said Stephen Baig, NOAA hurricane and storm surge expert at the NOAA National Hurricane Center in Miami, Fla. "Before Katrina made landfall, however, NOAA's storm surge model predicted that Katrina's storm surge could reach 18 to 22 feet above normal tide levels, locally as high as 28 feet."

Low lying coastal areas in and around the Gulf Coast have always been susceptible to storm surge from hurricanes, but the situation has worsened over time as protective coastal wetlands have disappeared due to land subsidence and human intervention.

### Storm Surge over the Years

When one thinks of hurricanes and similar tropical storms howling winds and torrential rain typically first come to mind, but the surge accompanying these storms is potentially the greatest killer. Prior to the mid to late 1960s storm surge flooding was the major cause of hurricane-related deaths, but has accounted for only about six percent of all hurricane deaths from 1970 through 2002 — thanks to the evolution of NOAA's storm surge models, better hurricane forecasts and coastal evacuations. These "post-Camille" developments have assisted in planning coastal development and hurricane evacuation routes and can be credited for having greatly increased storm surge awareness among coastal residents. In fact, over the last few decades, inland flooding, winds and tornadoes now account for a majority of hurricane-related deaths. However, storm surge is still a potential killer and is a primary reason coastal areas are evacuated when they are threatened by hurricanes.

"Although hurricane-related deaths have decreased in recent decades, NOAA has always stressed the deadly history of storm surge," said Edward Rappaport, deputy director of the National Hurricane Center in Miami.

### NOAA's Storm Surge Model

NOAA's storm surge model, known as SLOSH for "Sea, Lake and Overland Surges from Hurricanes," is used by the NOAA National Hurricane Center and local National Weather Service offices to forecast storm surge heights resulting from historical, hypothetical or predicted hurricanes by taking into account a hurricane's central pressure, size and track. The model also incorporates bathymetry (water depth) and topography (land elevations), including bay and river configurations, roads, levees and other physical features that can modify the storm surge flow pattern. Thirty-nine computational domains, or SLOSH basins, cover the U.S. East and Gulf coasts, Puerto Rico, the Virgin Islands, Guam and the Hawaiian Islands of Oahu and Kauai. The graphical output from the model displays color coded



EXHIBIT

G



storm surge heights for a particular area in feet above the model's reference level, the National Geodetic Vertical Datum, which is still the elevation reference used for most topographic maps. With the SLOSH model, the NOAA National Weather Service can now generate accurate estimates of the extent of storm surge inundation. The NOAA National Hurricane Center uses this information when issuing its hurricane advisories. Emergency managers and other officials use the results of thousands of precomputed hypothetical storms to determine which coastal areas should be evacuated due to potential storm surge threats.

## Mechanics of Storm Surge

Storm surge is water that is pushed toward the shore by the force of the winds swirling around a hurricane or other coastal storm. Howling winds around a hurricane's eye create storm surge by piling water up in the form of a dome. In the deep ocean, this dome of water sinks and harmlessly flows away. But as a storm nears land, the rising sea floor blocks the water's escape and it comes ashore as deadly storm surge. An intense hurricane can send a dome of water many miles wide and more than 25 feet deep barreling toward the shore as the storm hits land.

## The Height of the Storm Surge

Storm surge is usually estimated by subtracting the regular/astrological tide level from the observed storm tide.

Typical storm surge heights range from several feet to more than 25 feet. The exact height of the storm surge and which coastal areas will be flooded depends upon many factors, including the strength, intensity and speed of the hurricane; the direction it is moving relative to the shoreline; how rapidly the sea floor is sloping along the shore; the shape of the shoreline and the astronomical tide. In general, storm surge is most damaging when it occurs along a shallow sloping shore,



*Storm surge along a shallow and steep sloping shoreline.*

during high tide, in a highly populated area with little or no natural buffers, such as barrier islands, coral reefs and coastal vegetation. Storm surge is also most damaging in the storm's right front quadrant because the storm, its winds and ocean waves are all moving in an onshore direction due to the counter-clockwise rotation of hurricanes in the Northern Hemisphere. In contrast, to the left of the eye, ocean waves and sea-level rise are moving toward the shore, but the winds are blowing in an offshore direction, thus counteracting or moderating some of the effects of the storm surge.

## Impacts of Storm Surge

Storm surge causes severe flooding in coastal areas. Because much of the densely populated Atlantic and Gulf Coast shorelines lie less than 10 feet above mean sea level, the potential danger from storm surge is significant. Even if storm surge does not destroy lives and property, the flooding it produces can cut off escape routes, rush into underground structures such as basements and subways, and flood subterranean utilities.

Storm surge causes local sea levels to rise for a relatively short period of time (four to eight hours, though some areas may take days or weeks to recede to their pre-storm levels) — often resulting in extensive coastal flooding that can weaken or destroy coastal structures. By itself, storm surge rarely causes structural failure. However, by temporarily raising sea level, storm surge permits "dangerous and battering waves" and floating debris to access coastal areas and structures never conceived of nor built to withstand the punishing effects of open ocean waves. It is these battering waves that cause most beach erosion and extensive damage to coastal structures (such as buildings, roadways, bridges, marinas, piers, boardwalks and sea walls).



## Storm Surge Mitigation

Although advanced hurricane forecasts and timely coastal evacuations can save lives, the potential threat of hurricanes to property poses a much greater challenge. Ironically, natural buffers like offshore barrier islands, coral reef, mangrove forests and other coastal vegetation that are often damaged or destroyed to make way for coastal development are also the best defense against storm surge. NOAA is involved in a number of coastal restoration activities, including rebuilding and preserving coastal wetlands.



*Section of coastline before and after Hurricane Hugo's storm surge hit Folly Beach, SC.*

## Public Awareness — a Problem

Despite the tremendous success of the NOAA's storm surge activities, as the nation's coastal regions become more populated with both visitors and permanent residents, storm surge remains a serious threat. NOAA hurricane forecasts have improved over the years — allowing more time for coastal areas to evacuate, however the population growth in these areas will make evacuation more difficult, time consuming and costly. Thus, a much greater percentage of the U.S. population is vulnerable to storm surge than ever before. NOAA research indicates that the nation has entered into a much more <u>active hurricane period</u>, one that is likely to continue into 2020 or perhaps beyond, so there is no better time than now to take hurricane warnings seriously.





**Relevant Web Sites**
<u>NOAA Hurricane Preparedness</u>

<u>NHC Hurricane Awareness Web site: Storm Surge Information</u>

<u>Hurricane KATRINA Advisory Archive</u>

<u>NOAA Hurricane Katrina Overview</u>

<u>NOAA Hurricane Research Division: Hurricane Katrina</u>

<u>NOAA MOBILIZES RESOURCES TO AID IN RECOVERY FROM HURRICANE KATRINA</u>

<u>NOAA CONDUCTS AERIAL SURVEY OF REGIONS RAVAGED BY HURRICANE KATRINA</u>

<u>NOAA HURRICANE HUNTER PILOT CAPTURES KATRINA AT HER MEANEST</u>

<u>NOAA HURRICANE KATRINA SUPPORT ACTIVITIES: Aerial Photography Flights Yield Thousands of Images</u>

<u>NOAA AERIAL MAPPING ASSISTING U.S. COAST GUARD, FEMA SHOWS FLOOD WATERS RECEDING IN REGIONS AFFECTED BY HURRICANE KATRINA</u>

<u>NOAA Support for the Gulf of Mexico Regional Partnership</u>

**Media Contacts:**
<u>NOAA Weather Service Public Affairs</u>, (301) 713-0622 or <u>Frank Lepore</u>, <u>NOAA National Hurricane Center</u>, (305) 229-4404

## CASES UPHOLDING "LEAD-IN" LANGUAGE

### I. CASES UPHOLDING STATE FARM'S "LEAD-IN" LANGUAGE

**Alabama:** *Slade v. State Farm Fire & Cas. Co.*, 747 So. 2d 293, 313-14 (Ala. 1999) (State Farm's earth movement exclusion was unambiguous and provided narrower coverage than would result from application of the efficient proximate cause rule)

**Alaska:** *State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1045-46 (Alaska 1996) (State Farm's lead-in provision expressly excludes coverage when damage to an insured's property is caused by a combination of covered and excluded risks)

**Arizona:** *Millar v. State Farm Fire & Cas. Co.*, 804 P.2d 822, 826 (Ariz. Ct. App. 1990) (rejecting insureds' contention that lead-in language was inapplicable because the efficient cause of the loss was a covered event and noting that an insurer "is permitted to limit its liability unless to do so would be inconsistent with public policy")

**District of Columbia:** *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1130 (D.C. 2001) ("The State Farm policy unambiguously dictates that proximate causation rules are not to be followed in connection with the earth movement exclusion. The lead-in paragraph to that exclusion addresses the issue explicitly. . . . *[I]f earth movement was a contributing cause of the loss* of Chase's property, the policy does not cover that loss – even if earth movement was not the (efficient) proximate cause and there were more dominant causes involving covered risks.") (Emphasis added)

**Florida:** *State Farm Fire & Cas. Co. v. Castillo*, 829 So. 2d 242, 245 (Fla. Dist. Ct. App. 2002) ("When construing [the] lead-in provision with the earth movement exclusion, as we must, it becomes clear that State Farm's policy excludes from coverage any loss resulting from earth movement, *regardless of the cause of the earth movement.* We thus cannot conclude that these provisions are ambiguous or reasonably susceptible to more than one interpretation.") (Emphasis in original)

*See also Quesada v. Director, Federal Emergency Mgmt. Agency*, 577 F. Supp. 695, 697 (S.D. Fla. 1983) ("[T]he plain meaning of the State Farm contract gives rise to the undeniable inference that flood or flood-related damage was not within the ambit of the coverage contemplated by the parties."), *aff'd*, 753 F.2d 1011 (11th Cir. 1985); *State Farm Fire & Cas. Co. v. Metropolitan Dade County*, 639 So. 2d 63, 65 (Fla. Dist. Ct. App. 1994) ("The [lead-in] provision declares that the existence of an excluded event will, *regardless of any other forces involved*, remove the loss from the purview of coverage. No ambiguities are present in this provision. ") (Emphasis added)

**Illinois:** *Whitt v. State Farm Fire & Cas. Co.*, 734 N.E.2d 911, 915 (Ill. App. Ct. 2000) (reversing summary judgment for insureds and finding no coverage under water damage exclusion for water that entered insureds' home during a storm and filled entire basement of home and first floor to a depth of over four feet: "The facts of the policy, the damage,

EXHIBIT

H

Blumberg No. 5119

and the cause of the damage were undisputed, and the clear, unambiguous language of the policy showed the intent of the parties.")

**Mississippi:** *Eaker v. State Farm Fire & Cas. Co.*, 216 F. Supp. 2d 606, 622 (S.D. Miss. 2001) (granting summary judgment for State Farm in action to recover for hurricane-related flood damage to insureds' property: "[T]he language in the policy clearly excludes the damages claimed by the Plaintiffs.")

*See also Rhoden v. State Farm Fire & Cas. Co.*, 32 F. Supp. 2d 907, 910 (S.D. Miss. 1998) (earth movement exclusion barred coverage for damage to insureds' house caused in part by earth movement: "The preface to the 'earth movement' exclusion specifically states that the policy does not insure under any coverage for loss which would not have occurred in the absence of . . . earth movement, regardless of the cause of the event, whether the event occurs suddenly or gradually, or whether the event involves isolated or widespread damage. . . . It is undisputed that, whether caused by the negligence of Plaintiffs' contractor in its placement of fill soil in the construction of Plaintiffs' home or by some other condition, Plaintiffs' damages are a result of earth movement underneath the residence. As such, they fall within the 'earth movement' exclusion of the policy and are not covered damages.") (Footnote omitted)

*Boteler v. State Farm Cas. Ins. Co.*, 876 So. 2d 1067, 1069 (Miss. Ct. App. 2004) (holding that earth movement exclusion barred claim for foundation damage to insured's residence resulting from earth movement because "[t]he State Farm policy purchased by [the insured] excluded all damages as a result of earth movement" and noting that "'earth movement' exclusion . . . *makes the cause of the movement irrelevant*[.]") (Emphasis added)

**Missouri:** *Toumayan v. State Farm Gen. Ins. Co.*, 970 S.W.2d 822, 825-26 (Mo. Ct. App. 1998) (earth movement exclusion barred coverage for loss caused in part by earth movement: "State Farm's policy contains exclusionary language in the lead-in clause . . . which excludes any loss which would not have occurred in the absence of earth movement *regardless of the cause of the loss or whether other causes acted concurrently or in sequence with* the earth movement to produce the loss. This exclusionary language is unambiguous and prevents application of the proximate cause doctrine. ") (Emphasis in original)

*See also Rodin v. State Farm Fire & Cas. Co.*, 844 S.W.2d 537, 539 (Mo. Ct. App. 1993) (lead-in provision precluded coverage for loss caused at least in part by water; "whether the loss was caused by pure water or by the pollutants contained in the sewage acting concurrently with water, it is excluded from coverage by clear, unambiguous policy language.")

**Nevada:** *Schroeder v. State Farm Fire & Cas. Co.*, 770 F. Supp. 558, 561 (D. Nev. 1991) ("[T]he [lead-in provision] indicates that *so long as earth movement was involved, coverage is denied* . . . . [T]he collapse of the soil was at least a cause acting 'concurrently

or in any sequence' with the 'water damage.'  Thus, coverage would not lie.")  (Emphasis added)

**New Hampshire:** *Bergeron v. State Farm Fire & Cas. Co.*, 766 A.2d 256, 259-260 (N.H. 2000) (granting summary judgment for State Farm; no coverage for loss caused when water escaped from dam because all possible causes were excluded by water damage, earth movement, or "acts or omissions" exclusions)

**New York:** *Sheehan v. State Farm Fire & Cas. Co.*, 658 N.Y.S.2d 61, 62 (App. Div. 1997) ("*[E]ven though the cause of the earth movement . . . may have been a 'covered peril'* . . . there is no ambiguity that the policy excludes coverage for earth movement . . . . Accordingly, the plaintiffs' loss is excluded from coverage . . . .") (Emphasis added)

    *See also Kula v. State Farm Fire & Cas. Co.*, 628 N.Y. S.2d 988, 991 (App. Div. 1995) ("[T]here is no ambiguity in the language of this policy and . . . it specifically excludes coverage for damages resulting from earth movement *even though the cause of the earth movement is a covered peril*.") (Emphasis added)

**Pennsylvania:** *Silow v. State Farm Ins. Co.*, 1994 WL 709362, at *2 (E.D. Pa. Dec. 28, 1994) (granting summary judgment for State Farm based on water damage exclusion: "What is excluded from coverage is the 'loss which would not have occurred in the absence of' the event of 'water damage, . . . regardless of other causes acting 'concurrently . . . with the excluded event to produce the loss.")

**Utah:** *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1277 (Utah 1993) (lead-in language to earth movement exclusion precluded coverage for a loss caused in part by earth movement, whether or not the loss would have been covered under an efficient proximate cause analysis: "[T]he proper path to follow is to recognize the efficient proximate cause rule only when the parties have not chosen freely to contract out of it"); *see id.* at 1275 (lead-in provision "specifically excludes coverage for damage resulting from earth movement, *despite the fact that the cause of the earth movement is a covered peril*") (Emphasis added)

    *See also Village Inn Apts. v. State Farm Fire & Cas. Co.*, 790 P.2d 581, 583 (Utah Ct. App. 1990) (lead-in language to earth movement exclusion "clearly excludes from coverage any loss from earth movement, combined with water, *regardless of cause*") (Emphasis in original)

**Wyoming:** *State Farm Fire & Cas. Co. v. Paulson*, 756 P.2d 764, 767 (Wyo. 1988) (reversing judgment for insured; in light of unambiguous water damage exclusion, "the important determination to be made in this case is whether or not the damage was caused in whole *or in part* by 'surface water'") (Emphasis in original); *see id.* at 769 n.2 (noting that outcome might be different "[i]f a policy did not contain a sequential exclusion, as did this one . . . .")

## II. CASES UPHOLDING SIMILAR "LEAD-IN" LANGUAGE USED BY OTHER CARRIERS

**Arizona:** *Cooper v. American Family Mut. Ins. Co.*, 184 F. Supp. 2d 960, 962 (D. Ariz. 2002) ("an insurer is permitted to limit its liability with a concurrent causation lead-in clause"; policy language excluding specified losses "regardless of any other cause or event contributing concurrently or in any sequence to the loss" thus precluded coverage for loss caused by excluded event, even though covered event "may have also contributed to the loss.").

**California:** *Cuevas v. Allstate Ins. Co.*, 872 F. Supp. 737, 739 (S.D. Cal. 1994) (no coverage for damage caused when neighbor's berm diverted flow of river onto insured's land because both causes of loss (water damage and third-party acts/omissions) were excluded risks)

**Colorado:** *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 685 (Colo. 1989) (under policy language excluding loss "caused by, resulting from, contributed to or aggravated by . . . flood," damage resulting when dam broke and water was sent down river onto insureds' land was excluded, whether or not the event was a natural event and whether or not there may have been third-party negligence involved, since exclusion applied "regardless of the existence of any other contributing cause"); *id.* at 685 (noting that "the 'efficient moving cause' rule must yield to qualifying or enlarging words agreed to by the parties and included in the insurance policy")

*See also Bartlett v. Continental Divide Ins. Co.*, 697 P.2d 412, 413 (Colo. Ct. App. 1984) (flood exclusion without lead-in provision precluded coverage for damage resulting from dam failure regardless of whether flood was result of natural or artificial causes), *aff'd*, 730 P.2d 308 (Colo. 1986)

**District of Columbia:** *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 971 (D.C. 1999) (rejecting insured's contention that water damage exclusion did not apply because loss would not have occurred but for allegedly covered cause; "[t]he fact that other factors . . . may have contributed to the loss is of no consequence under the language of the policy")

**Florida:** *Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp. 2d 1312, 1318 (M.D. Fla. 2002) (finding question of fact as to cause of loss but acknowledging loss would be excluded if caused by both windstorm (covered) and rot (excluded); under Florida law, "parties can contract around [concurrent cause] doctrine through anti-concurrent cause language" and, if the policy contains such a provision, "when a peril is concurrently caused by a covered and an excluded cause, coverage does not exist . . . .")

*See also Florida Residential Prop. & Cas. Joint Underwriting Ass'n v Kron*, 721 So. 2d 825, 826 (Fla. Dist. Ct. App. 1998) (reversing judgment for insured; "the plain language of the lead-in clause . . . clearly states that this type of water damage is excluded, 'regardless of any other cause or event contributing concurrently or in any sequence to the

4

loss.'"); *cf. Arjen Motor Hotel Corp. v. General Acc. Fire & Life Assur. Co.*, 379 F.2d 265, 267-268 (5th Cir. 1967) (construing policy language excluding loss "caused by, resulting from, contributed to or aggravated by . . . flood": "Looking to the formal structure of the policy, it is apparent that the Perils-Insured-Against provision and the Exclusions provision are accorded equal precedence. When the two provisions are read in conjunction no ambiguity results despite the fact that the comprehensive Exclusions provision does serve to restrict, in some instances rather severely, the coverage of the Perils-Insured-Against provision. . . . Viewing the policy in its entirety, we are left with the firm conviction that the plain wording of the Exclusions provision effectively excludes liability for loss occasioned by collapse if it is in fact established that such loss was contributed to or aggravated by waves or tidal water.")

**Indiana:** *Ramirez v. American Family Mut. Ins. Co.*, 652 N.E.2d 511, 516 (Ind. Ct. App. 1995) (water damage exclusion applied notwithstanding insured's contention that covered peril was proximate cause of loss; contention "necessarily fails in light of the clear and unambiguous" lead-in provision)

**Illinois:** *Wallis v. Country Mut. Ins. Co.*, 723 N.E.2d 376, 381 (Ill. App. Ct. 2000) (water damage exclusion not ambiguous and precluded coverage for loss caused by overflow from man-made watercourse)

**Massachusetts:** *Alton v. Mfrs. & Merchants Mut. Ins. Co.*, 624 N.E.2d 545, 547 (Mass. 1993) (affirming judgment for insurer; policy with lead-in clause provided no coverage for loss caused in part by excluded risk, even though insured risk was proximate cause of property damage)

*See also Preferred Mut. Ins. Co. v. Travelers Cos.*, 127 F.3d 136, 138 (1st Cir. 1997) ("The initial paragraph [i.e., lead-in language] unambiguously means what it says."); *Jussim v. Massachusetts Bay Ins. Co.*, 610 N.E.2d 954, 958 (Mass. 1993) (noting that if the pollution exclusion at issue "had been listed in the general exclusion section, following this preamble [i.e., the lead-in language], an insured plainly would be foreclosed from invoking the train of events rule . . . ."); *Citrano v. Hingham Mut. Fire Ins. Co.*, 788 N.E.2d 975, 976 (Mass. App. Ct. 2003) (water damage exclusion and lead-in provision excluding coverage "regardless of other causes or events that contribute to or aggravate the loss" barred coverage for loss caused by covered peril, which in turn was caused by flood)

**Michigan:** *Sunshine Motors, Inc. v. New Hampshire Ins. Co.*, 530 N.W.2d 120, 121 (Mich. Ct. App. 1995) (insured's argument that water damage exclusion did not apply because covered event was proximate cause of loss "misses the point: Whether the [covered event] was a direct or indirect cause of [the insured's] water damage, or whether it was *the* principal factor or merely *a* contributing factor, the [lead-in provision] expressly excluded coverage.") (Emphasis in original)

**Missouri:** *TNT Speed & Sport Center, Inc. v. American States Ins. Co.*, 114 F.3d 731, 733 (8th Cir. 1997) (affirming summary judgment in favor of insurer on basis of unambiguous

flood exclusion and noting that "[t]he language in American States' policy reflects an intent to contract out of application of the efficient proximate cause doctrine")

*See also Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256, 261 (Mo. Ct. App. 1997) (water damage exclusion precluded coverage for loss caused by combination of flooding and sewer backup; lead-in language "provides that an exclusion is an exclusion regardless of any other cause that contributes to the loss, either concurrently or in any sequence to the loss")

**Nebraska:** *Thorell v. Union Ins. Co.*, 492 N.W.2d 879, 883 (Neb. 1992) (stating that water damage exclusion is "not ambiguous"; policy's "terms are clear, and they must be accorded their plain and ordinary meaning")

**New Jersey:** *Assurance Co. of America, Inc. v. Jay-Mar, Inc.*, 38 F. Supp. 2d 349, 354 (D.N.J. 1999) (noting that "most courts which have addressed this issue have found that exclusionary language designed to avoid the 'efficient proximate cause' doctrine is enforceable" and that, in light of lead-in provision to water damage exclusion, "if [insured's] loss was caused in any part by flood or surface water, it may not recover from [insurer]")

**New York:** *Casey v. General Acc. Ins. Co.*, 578 N.Y.S.2d 337, 338 (App. Div. 1991) (no coverage under policy with lead-in provision and water damage exclusion; fact that "other factors . . . may have contributed to the loss is of no consequence under the language of the policy.")

*See also E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.*, 444 N.Y.S.2d 321, 322 (App. Div. 1981) (flood exclusion without lead-in provision precluded coverage for loss caused when dike broke; it was "irrelevant that a defect in the dike may have also contributed to" the break)

**Ohio:** *Front Row Theatre, Inc. v. American Mfrs. Mut. Ins. Cos.*, 18 F.3d 1343, 1347 (6th Cir. 1994) ("When damage to an insured's property is caused by both a covered and an excluded event, coverage may be expressly precluded by language in the policy. . . . The parties in the within case adopted just such language.")

**Oklahoma:** *Kelly v. Farmers Ins. Co.*, 281 F. Supp. 2d 1290, 1298, 1300 (W.D. Okla. 2003) (noting that most jurisdictions "that have adopted the efficient proximate cause doctrine . . . permit parties to 'contract around' it" so long as exclusion "explicitly and specifically disclaim[s] coverage for losses that arise from a combination of excluded and covered causes, regardless of the sequence in which the various causes occurred")

**Texas:** *Valley Forge Ins. Co. v. Hicks Thomas & Lilienstern*, 174 S.W.3d 254, 258, 2004 WL 2903521 (Tex. App. Dec. 16, 2004) (water damage exclusion in insured's business interruption policy precluded coverage for damage caused when rains from Tropical Storm Allison caused bayou to overflow, flooding downtown Houston and interrupting power to insureds' business)

*See also Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.*, 2002 WL 356756, at * 4 (N.D. Tex. March 5, 2002) (noting that, "pursuant to the Anti-Concurrent Cause Clause" there was no coverage where insurer established that loss was "caused in part by" excluded risk (defective construction/maintenance); "legal effect" of lead-in provision is "to exempt [the insurer] from liability for all damages caused directly or indirectly by the excluded cause . . . , regardless of any other cause or event contributing concurrently or in any sequence to the loss")

**Virginia:** *Lower Chesapeake Assoc. v. Valley Forge Ins. Co.*, 532 S.E.2d 325, 331 (Va. 2000) (affirming trial court's ruling that damage to docks caused by wind-driven water and gradual deterioration was excluded: "Under the plain terms of [the exclusion], coverage is excluded under the policy if a loss is caused 'directly or indirectly' by one of the enumerated causes or events, 'regardless of any other cause or event that contributes concurrently or in any sequence' to the loss. The evidence amply supports the trial court's finding that the damage to [the insured docks] resulted, at least in part, from the excluded causes of '[f]lood, . . . waves, tides, tidal waves, . . . all whether driven by wind or not,' or from the excluded cause of 'gradual deterioration,' or from any combination of these excluded causes.")

**Wisconsin:** *Atlantic Mut. Ins. Cos. v. Lotz*, 384 F. Supp. 2d 1292, 1304 (E.D. Wis. 2005) ("[U]nder the contributing cause provision, which provides the exclusions in the policy 'apply regardless of any other cause or event contributing concurrently or in any sequence to the loss,' . . . coverage . . . is excluded . . . regardless of the other causes which contributed to their development.")