UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

COLLEEN BERTHELOT, et. al.,          )
                                      )
          Plaintiffs                  )
                                      )
     vs.                              )
                                      )          CIVIL ACTION NO.: 05-4182 – SRD-JCW
BOH BROTHERS CONSTRUCTION CO.         )
L.L.C, et al.,                        )          SECTION "K"(2)
                                      )          CONS. KATRINA CANAL
          Defendants                  )
                                      )
PERTAINS TO:                          )
                                      )
INSURANCE GROUP                       )
                                      )
*Chehardy et al. v. State Farm, et al.: 06-1672*  )
*Chehardy et al. v. State Farm, et al.: 06-1673*  )
*Chehardy et al. v. State Farm, et al.: 06-1674*  )
                                      )

**STATE FARM FIRE AND CASUALTY COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' AMENDED AND RESTATED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ............................................................................................... 1

II.     STATEMENT OF FACTS ..................................................................................... 3

III.    ARGUMENT........................................................................................................ 5

        A.      Applicable Legal Standard........................................................................ 5

        B.      Count One of the Complaint for Declaratory Relief and Count Two
                for Breach of Contract Fail as a Matter of Law Because Plaintiffs'
                Claim for Insurance Coverage Is Barred by the Plain Language of
                the Policy ............................................................................................... 6

                1.      State Farm's Water Damage Exclusion Unambiguously
                        Excludes Flood Damage Regardless of Whether Wind,
                        "Storm Surge," or Levee Breaks Caused the Flooding.............. 8

                2.      The State Farm Policy Unambiguously Excludes Coverage
                        For Plaintiffs' Loss Due to Excluded Water Damage Regardless
                        of Whether Such Losses Were Caused by "Acts of Negligence"
                        by Third Parties........................................................................ 15

                3.      The Lead-In Language of State Farm's Water Damage Exclusion
                        Unambiguously Excludes Losses that Would Not Have Occurred
                        "In the Absence" of Water Damage Regardless of the Operation,
                        Effect or Sequence of Other Potential Causes and Renders the
                        Efficient Proximate Cause Doctrine Inapplicable...................... 17

        C.      Count Three and Four of the Complaint Fail to State a Claim for Breach
                of the Implied Covenant of Good Faith and for Breach of Louisiana's
                Insurance Bad Faith Statute (La. Rev. Stat. Ann. § 22:1220)................. 22

        D.      Count Five of the Complaint Fails to State a Claim for Breach
                of Fiduciary Duty.................................................................................... 23

        E.      The Filed Rate Doctrine Precludes Plaintiffs' Claims ........................... 25

        F.      Retroactive Invalidation of State Farm's Flood Exclusion Is
                Impermissible Under the Constitutions of the United States and
                the State of Louisiana.............................................................................. 28

        G.      Plaintiffs' Claims Are Preempted Because They Would Impermissibly
                Obstruct the Objectives and Goals of the National Flood Insurance Act .......... 29

IV.     CONCLUSION................................................................................................... 31

824164v.1

# TABLE OF AUTHORITIES

## CASES

*AT&T Corp. v. Texas Public Utility Commission*, 373 F.3d 641 (5th Cir. 2004) ..................29

*AT&T Co. v. Central Office Telegraph, Inc.*, 524 U.S. 214 (1998) ........................................27

*Alf v. State Farm Fire & Casualty Co.*, 850 P.2d 1272 (Utah 1993) ......................................20

*Allen v. State Farm Fire & Casualty Co.*, 59 F. Supp. 2d 1217 (S.D. Ala. 1999) ............26, 28

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978)..................................................29

*Alton Oschner Medical Foundation v. Allendale Mutual Insurance Co.*,
219 F.3d 501 (5th Cir. 2000) ...................................................................................................16

*America Stone Diamond, Inc. v. Lloyds of London*, 934 F. Supp. 839 (S.D. Tex. 1996) .......27

*American Deposit Insurance Co. v. Myles*, 2000-2457 (La. 4/25/01) 783 So. 2d 1282 ..........6

*American Gulf VII v. Otto Candies Inc.*, No. 94-3905 c/w 95-1666 Section "K" (5),
1997 U.S. Dist. LEXIS 13414 (E.D. La. Aug. 28, 1997) ....................................................23

*BMW of North America Inc. v. Gore*, 517 U.S. 559 (1996) ..............................................28, 29

*Bartlett v. Continental Divide Insurance Co.*, 697 P.2d 412 (Colo. Ct. App. 1984),
*aff'd*, 73 P.3d 308 (Co. 1986)..........................................................................................9, 11, 17

*Bertler v. Employers Insurance of Wausau*, 271 N.W.2d 603 (Wis. 1978)...........................27

*Bolen v. Dengel*, 340 F.3d 300 (5th Cir. 2003) .........................................................................5

*Buente v. Allstate Property & Causalty Insurance Co.*, No. 1:05CV712,
2006 WL 980784 (S.D. Miss. Apr. 12, 2006)........................................................8, 10, 13

*Buente v. Allstate Insurance Co.*, 422 F. Supp. 2d 690 (S.D. Miss. 2006) ..............................8

*C.E.R. 1988, Inc. v. Aetna Casualty & Surety Co.*, 386 F.3d 263 (3d Cir. 2004)..................30

*Carrier v. Allstate Insurance Co.*, 96 2681 (La. App. 1st Cir. 11/7/97) 702 So. 2d 367 ........25

*Central Louisiana Electric Co. v. Westinghouse Electric Corp.*, 579 So. 2d 981 (La. 1991)6, 7

*Chase v. State Farm Fire & Casualty Co.*, 780 A.2d 1123 (D.C. 2001) ................................21

*Chicago, B. & Q. R. v. Chicago*, 166 U.S. 226 (1897) ..........................................................29

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir 1994) .........................................................................5

824164v.1

*Clark v. Amoco Products Co.*, 794 F.2d 967 (5th Cir. 1986)..................................................6

*Clausen v. Fidelity & Deposit Co. of Maryland*, 95 0504 (La. App. 1st Cir. 8/4/95)
    660 So. 2d 83 ...........................................................................................................22

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ...........................5

*Commercial Union Insurance Co. v. Advance Coating Co.*, 351 So. 2d 1183 (La. 1977) .......7

*Continental Casualty Co. v. Rogers*, 194 F.2d 582 (5th Cir. 1952)......................................26

*DeMizio v. GEICO General Insurance Co.*, No. Civ.A.05-409, 2005 WL 1693938
    (E.D. Pa. July 19, 2005).........................................................................................27

*Destec Energy, Inc. v. Southern California Gas Co.*, 5 F. Supp. 2d 433
    (S.D. Tex. 1997), *aff'd*, 172 F.3d 866 (5th Cir. 1999) ........................................26

*Drewett v. National Flood Insurers Association*, Civ. A. No. 74-806,
    1976 U.S. Dist. LEXIS 17325 (W.D. La. Jan. 6, 1976)....................................10

*E.B. Metal & Rubber Industrial, Inc. v. Federal Insurance Co.*, 444 N.Y.S.2d 321
    (N.Y. App. Div. 1981) .....................................................................................11, 17

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) ...............................................................29

*Ebert v. Pacific National Fire Insurance Co.*, 40 So. 2d 40 (La. Ct. App. 1949)..................11

*Elston v. Shell Oil Co.*, 376 F. Supp. 968 (E.D. La. 1973), *aff'd mem.*,
    495 F.2d 1371 (5th Cir. 1974) .............................................................................24

*Employers-Commercial Union Insurance Co. v. Bernard*, 303 So. 2d 728 (La. 1974)..........25

*Flick v. Liberty Mutual Fire Insurance Co.*, 205 F.3d 386 (9th Cir. 2000) ..........................29

*Florida East Coast Railway Co. v. United States*, 519 F.2d 1184 (5th Cir. 1975) ..................9

*Fontenot v. State Farm Mutual Insurance Co.*, 119 So. 2d 588 (La. App. 1st Cir. 1960)......26

*Frank C. Minvielle L.L.C. v. IMC Global Opers. Inc.*, 380 F. Supp. 2d 755
    (W.D. La. 2004) .....................................................................................................1

*Geier v. America Honda Motor Co.*, 529 U.S. 861 (2000) ....................................................29

*Gibson v. America Bankers Insurance Co.*, 289 F.3d 943 (6th Cir. 2002) ...........................30

*Gove v. Zoning Board of Appeals of Chatham*, 831 N.E.2d 865 (Mass. 2005) ....................13

824164v.1

*Graves v. State Farm Mutual Automobile Insurance Co.*, 2001-1243
    (La. App. 3d Cir. 6/26/02) 821 So. 2d 769 ..................................................................23, 24

*Guillory v. Louisiana Insurance Rating Commission*, 357 So. 2d 599
    (La. App. 1st Cir. 1978) .................................................................................................25

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 954 F.2d 485 (8th Cir. 1992).........................27

*Hardware Dealers Mutual Insurance Co. v. Berglund*, 393 S.W.2d 309 (Tex. 1965) ...........28

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ...............................................................................29

*Hughes v. Washington*, 389 U.S. 290 (1967) .........................................................................29

*Icklone v. Travelers Indemnity Co.*, 345 So. 2d 202 (La. App. 3d Cir. 1977) ........................23

*In re Industrial Life Insurance Litigation*, 148 F. Supp. 2d 719 (E.D. La. 2001)...................26

*Jones v. Webb*, 36,121 (La. App. 2d Cir. 6/12/02) 821 So. 2d 614.........................................24

*Jung Hotel, Inc. v. Insurance Commission of Louisiana*, 154 So. 2d 448 (La. 1934) ............26

*K-C Manufacturing Co. v. Shelby Mutual Insurance Co.*, 434 So. 2d 1004
    (Fla. Dist. Ct. App. 1983) .............................................................................................27

*Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371 (5th Cir. 2003) .............................5

*Kane v. Royal Insurance Co. of America*, 768 P.2d 678 (Colo. 1989) ....................................11

*Katz v. MCI Telecommunications Corp.*, 14 F. Supp. 2d 271 (E.D.N.Y. 1998).....................27

*Kemp v. American Universal Insurance Co.*, 391 F.2d 533 (5th Cir. 1968)...........................20

*Keogh v. Chicago & North West Railway Co.*, 260 U.S. 156 (1922) ......................................27

*Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453 (5th Cir. 2005)............................................5

*Kutner v. Sprint Communications Co.*, 971 F. Supp. 302 (W.D. Tenn. 1997).......................26

*Ledbetter v. Concord General Corp.*, 95-0809 (La. 1/6/96) 665 So. 2d 1166 ..........................6

*Lower Chesapeake Associates v. Valley Forge Insurance Co.*, 532 S.E.2d 325
    (Va. 2000) .....................................................................................................................13

*Loyola University v. Sun Underwriters Insurance Co.*, 93 F. Supp. 186
    (E.D. La. 1950), *aff'd*, 196 F.2d 169 (5th Cir. 1952).....................................................11

*Mayton v. Auto-Owners Insurance Co.*, No. Civ.A. 3:05CV667, 2006 U.S. Dist.
    LEXIS 28952 (E.D. Va. May 2, 2006) ........................................................................13

824164v.1

*McCartney v. State Farm Insurance Co.*, 567 So. 2d 1168 (La. Ct. App. 3d Cir. 1990)........24

*Morales v. Attorneys' Title Insurance Fund, Inc.*, 983 F. Supp. 1418 (S.D. Fla. 1997)..........27

*Morehead v. Allstate Insurance Co.*, 406 F.2d 122 (5th Cir. 1969)....................................7, 11

*Morgan v. Auto Club Family Insurance Co.*, 2004-1562 (La. App. 3d Cir. 4/6/05)
    899 So. 2d 135 ..................................................................................................................16

*NLRB v. Guy F. Atkinson Co.*, 195 F.2d 141 (9th Cir. 1952)....................................................29

*Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953 (1986)........................................26

*Neil v. Allstate Insurance Co.*, 549 A.2d 1304 (Pa. Super. Ct. 1988)....................................28

*Novotny v. Phoenix Assurance Co.*, 248 So. 2d 339 (La. App. 4th Cir. 1971) ......................12

*Opar v. Allstate Insurance Co.*, 751 So. 2d 758 (Fla. Dist. Ct. App. 2000)...........................13

*Pakmark Corp. v. Liberty Mutual Insurance Co.*, 943 S.W.2d 256 (Mo. Ct. App. 1997)......11

*Peal v. North Carolina Farm Bureau Mutual Insurance Co.*, 212 F. Supp. 2d 508
    (E.D.N.C. 2002) ................................................................................................................30

*Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717 (1984)...........................28

*Phillips v. Patterson Insurance Co.*, 01 1545 (La. App. 3d Cir. 4/3/02) 813 So. 2d 1191 .....22

*Preferred Mutual Insurance Co. v. Meggison*, 53 F. Supp. 2d 139 (D. Mass. 1999) .............21

*Prytania Park Hotel v. General Star Indemnity Co.*, 896 F. Supp. 618 (E.D. La. 1995) .......19

*Rhoden v. State Farm Fire & Casualty Co.*, 32 F. Supp. 2d 907 (S.D. Miss. 1998),
    *aff'd*, 200 F.3d 815 (5th Cir. 1999) ...........................................................................16, 17

*Richardson v. Standard Guaranty Insurance Co.*, 853 A.2d 955 (N.J. Super. Ct.
    App. Div. 2004) ................................................................................................................27

*Riche v. State Farm Fire & Casualty Co.*, 356 So. 2d 101 (La. Ct. App.
    1st Cir. 1978) .........................................................................................................9, 20, 23

*Roach-Strayhan-Holland Post v. Continental Insurance Co.*, 112 So. 2d 680 (La. 1959).....20

*Smith v. Millers Mutual Insurance Co.*, 419 So. 2d 59 (La. App. 2d Cir. 1982) ....................24

*Southern Hotels Ltd. Partnership v. Lloyd's Underwriters at London Cos.*,
    No. 95-2739 Section: E/3, 1997 U.S. Dist. LEXIS 8384 (E.D. La. June 9, 1997)...........12

v

*Stidham v. Texas Commission on Private Securities*, 418 F.3d 486 (5th Cir. 2005) ..............28

*Stover v. United States*, 204 F. Supp. 477 (N.D. Cal. 1962) ......................................................9

*Sunshine Motors, Inc. v. New Hampshire Insurance Co.*, 530 N.W.2d 120
    (Mich. Ct. App. 1995).........................................................................................................20

*Sweeney v. City of Shreveport*, 584 So. 2d 1248 (La. App. 2 Cir. 1991) ..........................18, 19

*TNT Speed & Sport Ctr., Inc. v. American States Insurance Co.*, 114 F.3d 731
    (8th Cir. 1997).............................................................................................................10, 20

*Terrebonne v. Blackburn*, 646 F.2d 997 (5th Cir. 1981)..............................................................5

*Travelers Indemnity Co. v. Powell Insurance Co.*, 1996 WL 578030
    (E.D. La. Oct. 4, 1996)..........................................................................................................7

*Tuepker v. State Farm Fire & Casualty Co.*, Civ. A. No. 1:05CV559,
    2006 WL 1442489 (S.D. Miss. May 24, 2006) .....................................................7, 13, 20

*United States Fidelity & Guaranty Co. v. Knight*, 882 So. 2d 85 (Miss. 2004)......................28

*United States v. Parish of St. Bernard*, 756 F.2d 1116 (5th Cir. 1985) ...................................30

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980) ....................................29

*Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17 (2d Cir. 1994) ....................................................26

*West v. Harris*, 573 F.2d 873 (5th Cir. 1978)..........................................................................30

*Whitt v. State Farm Fire & Casualty Co.*, 734 N.E.2d 911 (Ill. App. Ct. 2000)........................9

*Wright v. Allstate Insurance Co.*, 415 F.3d 384 (5th Cir. 2005) ..............................................30

## STATUTES and RULES

Fed. R. Civ. Pro. 12(b)(6)............................................................................................................5

42 U.S.C. § 4001 *et seq* .........................................................................................................3, 29

42 U.S.C. § 4001(a)(3) ...............................................................................................................30

42 U.S.C. § 4001(b)....................................................................................................................29

42 U.S.C. § 4001(c)(2) ...............................................................................................................30

42 U.S.C. § 4001(d)(2) ...............................................................................................................31

42 U.S.C. § 4012a(b).................................................................................................................31

824164v.1

42 U.S.C. § 4022 ..................................................................................................30

42 U.S.C. § 4023 ..................................................................................................30

42 U.S.C. § 4071(a)(1) ..........................................................................................30

42 U.S.C. § 4071(d)(1) ..........................................................................................30

44 C.F.R. Part 61 App. A(1) ..................................................................................10

44 C.F.R. § 61.4(b), 61.13(d)-(e), 62.23(c) (2006) ...............................................30

44 C.F.R. § 62.23(g) (2006) ..................................................................................30

44 C.F.R. § 62.24 (2006) .......................................................................................31

44 C.F.R. Part 61 App. A(1), Art. IX ....................................................................30

La. Civ. Code Ann. art. 2046 ..................................................................................6

La. Civ. Code Ann. art. 2047 ..................................................................................9

La. Civ. Code Ann. art. 2050 ..................................................................................7

La. Rev. Stat. Ann. § 22:2A(1).............................................................................26

La. Rev .Stat. Ann. § 22:620(a)(1).....................................................................5, 25

La. Rev. Stat. Ann. § 22:621(3) ...........................................................................25

La. Rev. Stat. Ann. § 22.658.2(A)(1)....................................................................22

La. Rev. Stat. Ann. § 22:658.2(D).........................................................................22

La. Rev. Stat. Ann. § 22:1220 ..........................................................................22, 23

La. Rev. Stat. Ann. § 22:1401 ...............................................................................25

La. Rev. Stat. Ann. § 22:1402 ...............................................................................25

La. Rev. Stat. Ann. § 22:1404(2) ..........................................................................25

## MISCELLANEOUS

5B Charles A. Wright et al., *Federal Practice & Procedure* § 1357 (2004) ............................5

Russell G. Donaldson, *"What is 'flood' within exclusionary clause of property
    damage policy,"* 78 A.L.R.4th 817 ..................................................................................10

824164v.1

*American Heritage Dictionary of the English Language* 1807 (3d ed. 1992) ........................12

*American Heritage Dictionary of the English Language* (4th ed. 2000) .................................9

*Black's Law Dictionary* 640 (6th ed. 1990)...............................................................................9

*Compact Oxford English Dictionary of Current English* (3d ed. 2005) .................................9

*Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) ......................................................9

*Oxford American Dictionary of Current English* (1999) ..........................................................9

*Webster's Ninth New Collegiate Dictionary* 1188 (1993).......................................................12

824164v.1

## I.      INTRODUCTION

Plaintiffs, who purport to represent a class consisting of all homeowners insurance poli-

cyholders in the parishes of Orleans, St. Bernard and Jefferson, ask this Court to declare that they

are entitled to insurance coverage for damage caused by the flooding that occurred in the after-

math of Hurricane Katrina.[1]   Plaintiffs ask this Court to declare, *inter alia*, that a release of wa-

ter due to levee breaks does not constitute a "flood" within the meaning of their homeowners

policies.  Plaintiffs also seek a declaration that the "efficient proximate" causes of their losses

were windstorm, storm surge and "acts of negligence" in the design, construction, and mainte-

nance of the levees and other flood-control barriers that failed in the wake of the hurricane and

that those risks are covered under their insurance policies.  Plaintiffs' claims for declaratory relief

and their other claims for breach of contract, breach of the duty of good faith and fair dealing,

and statutory bad faith all fail in light of the clear and unambiguous exclusionary language of

their policies.

Plaintiffs' attempt to circumvent State Farm's policy language – in derogation of both the

Louisiana courts and the Louisiana Commissioner of Insurance, who approved the language –

must be rejected.  State Farm's homeowners policy clearly excludes coverage for the damage

Plaintiffs allege they have incurred.  The exclusionary language in the policy has been held by

Louisiana courts, as well as courts in other jurisdictions, to exclude unambiguously coverage for

loss that would not have occurred in the absence of water damage, defined by the policy as dam-

age from "flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water,

or spray from any of these, all whether driven by wind or not."  The courts of this State also have

recognized that, under the terms of the policy, the water damage exclusion applies regardless of

---

[1] Plaintiffs bring suit against several insurance companies, including State Farm, but do not identify which Plaintiff
or Plaintiffs had State Farm policies.  Plaintiffs who did not have State Farm policies do not have standing to sue
State Farm.  *See, e.g., Frank C. Minvielle, L.L.C. v. IMC Global Operations, Inc.*, 380 F. Supp. 2d 755 (W.D. La.
2004).

1

the cause of the flood or surface water or the operation or effect of other causes of loss, such as a levee break or alleged negligence in the maintenance of levees. Because the relief Plaintiffs seek is contrary to both the policy language and the governing case law, Plaintiffs' claims for declaratory relief and breach of contract should be dismissed.

Plaintiffs' statutory and common law bad faith claims fail because Plaintiffs do not have a valid substantive claim under the terms of their homeowners policy. Plaintiffs claim that State Farm denied coverage for their purported losses in bad faith. Yet, the plain and unambiguous terms of the water damage exclusion preclude recovery for Plaintiffs' loss and therefore State Farm reasonably and justifiably denied Plaintiffs' insurance claims. Accordingly, Plaintiffs cannot state a claim for bad faith under Louisiana law.

Plaintiffs' claim for breach of fiduciary duty also fails as a matter of law. Plaintiffs claim that State Farm failed to inform Plaintiffs of the desirability or availability of flood insurance. Louisiana law does not impose a duty upon an insurance agent, agency or insurance company to inform an insured or potential insured of other forms of coverage that they have not requested or to inquire into the exact nature of the potential insured's financial or liability needs. Indeed, an insurance agent has only a duty to use reasonable efforts to obtain the insurance an insured actually requests. Accordingly, Plaintiffs' claim for breach of fiduciary duty fails as a matter of law.

Plaintiffs' challenge to State Farm's water damage exclusion is also impermissible under the filed rate doctrine. The Louisiana Insurance Rating Commission and the Louisiana Commissioner of Insurance have exclusive authority to review and approve insurance rates and insurance policy forms and have approved the rates and terms of State Farm's homeowners insurance policies. The filed rate doctrine precludes Plaintiffs' claims because their claims, if maintained, would effectively constitute an impermissible alteration of the rates and terms approved by these regulatory bodies.

Dismissal of Plaintiffs' Complaint is also required by the Constitutions of the United States and the State of Louisiana. Plaintiffs' attempt to impose massive retroactive liability for flood losses that State Farm never contracted to insure and for which policyholders did not pay premiums violates due process and is an impermissible taking without compensation and an impairment of State Farm's contracts. If the relief sought by Plaintiffs were extended under homeowners policies to all insureds in Louisiana who suffered water damage losses due to flood water flowing through breaks in levees during Hurricane Katrina, interstate commerce would also be unconstitutionally burdened. Finally, Plaintiffs' claims for declaratory relief are contrary to public policy and are preempted because they would impermissibly obstruct the objectives and goals of the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001 *et seq.*

For all these reasons and those set forth below, the Court should dismiss as a matter of law all of Plaintiffs' claims against State Farm.

## II.   STATEMENT OF FACTS

On August 29, 2005, Hurricane Katrina made landfall near Grand Isle, Louisiana and, a short time later, near the Louisiana-Mississippi border. (Complt., ¶ 40.) Plaintiffs aver in their Amended and Restated Complaint that the "levees around the city and adjoining parishes failed in at least eight (8) distinct locations . . . causing distinct and unique harm to different sections of the City and the surrounding parishes." (Complt., ¶ 43.) Plaintiffs further aver that the majority of the flooding in the city was caused by the failure of the levees due to "negligent design, negligent maintenance and/or inadequate materials" and that in one case a levee breach was "'caused by an inadequately moored barge that crashed into the levee wall.'" (Complt., ¶¶ 46, 49, 50.)

The Complaint further alleges that Plaintiffs purchased insurance from a variety of insurance companies, including State Farm, but does not specify which Plaintiffs purchased State Farm homeowners policies. State Farm's policies exclude water damage with the following lan-

3

guage:

> 2. We do not insure under any coverage for any loss which would not have oc-
> curred in the absence of one or more of the following excluded events. We do
> not insure for such loss regardless of: (a) the cause of the excluded event; or (b)
> other causes of the loss; or (c) whether other causes acted concurrently or in
> any sequence with the excluded event to produce the loss; or (d) whether the
> event occurs suddenly or gradually, involves isolated or widespread damage,
> arises from natural or external forces, or occurs as a result of any combination
> of these:

> *    *    *

> c.   **Water Damage**, meaning:

> (1)   flood, surface water, waves, tidal water, tsunami, seiche,
> overflow of a body of water, or spray from any of these, all
> whether driven by wind or not[.]

(*See* Exhibit A to State Farm's Motion to Dismiss, Tab 1, at 10; Tab 2 at 10.)[2]

The policies also specify that the water damage exclusion applies even if the water dam-

age is caused by, aggravated or contributed to by negligent acts or failures to act by government

officials and others or by defects or inadequacies in the construction and maintenance of other

structures:

*    *    *

> 3. Further, we do not insure for loss described in paragraph 1. and 2. immediately
> above regardless of whether one or more of the following: (a) directly or indi-
> rectly cause, contribute to or aggravate the loss; or (b) occur before, at the
> same time, or after the loss or any other cause of the loss:

> a.   conduct, act, failure to act, or decision of any person, group, or-
> ganization, or governmental body whether intentional, wrongful,
> negligent, or without fault;

> b.   defect, weakness, inadequacy, fault or unsoundness in:

> (1)   planning, zoning, development, surveying, siting;

---

[2] All exhibits cited herein are attached to State Farm's Motion.

4

     (2)     design, specifications, workmanship, construction, grading, compaction;

     (3)     materials used in construction or repair; or

     (4)     maintenance;

     of any property (including land structures, or improvements of any kind) whether on or off the residence premises; or

    c.     weather conditions.

*Id.* As required by law, both State Farm's policy language and the rates charged for insurance coverage under the policy were filed with, and approved by, the Louisiana Commissioner of Insurance. *See* La. R.S. § 22:620(a)(1).

## III.    ARGUMENT

### A.    Applicable Legal Standard

Under Fed. R. Civ. P. 12(b)(6), the Court must accept as true the well-pleaded factual allegations of the Complaint, viewing them in the light most favorable to the plaintiff. *See, e.g., Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). However, where, as here, Plaintiffs "'can prove no set of facts that would entitle [them] to relief,'" State Farm is entitled to dismissal of the Complaint. *Bolen v. Dengel*, 340 F.3d 300, 312 (5th Cir. 2003) (citation omitted). A "plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim." *Kane Enters.*, 322 F.3d at 374. In addition to the facts alleged in the Complaint, the Court may also consider facts that are properly the subject of judicial notice, without converting the motion into one for summary judgment.[3]  Furthermore, the Court may consider documents that are specifically mentioned in or attached to the Complaint. *Collins*

---

[3] *See Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (judicial notice taken of information on government agency's website); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981) (courts "have not hesitated to take judicial notice of agency records and reports"); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (on 12(b)(6) motion, court may consider matters of public record without converting motion into one for summary judgment); 5B Charles A. Wright et al., *Federal Practice & Procedure* § 1357 (2004) (on motion to dismiss, court may consider items subject to judicial notice without converting the motion to summary judgment).

824164v.1

*v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  On a Rule 12(b)(6) motion, "a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

**B.      Count One of the Complaint for Declaratory Relief and Count Two for Breach of Contract Fail as a Matter of Law Because Plaintiffs' Claim for Insurance Coverage Is Barred by the Plain Language of the Policy**

Plaintiffs seek a declaration that the damage to their homes caused by "water entering" the City of New Orleans and the Parishes of St. Bernard and Jefferson during and after Hurricane Katrina is covered under the terms of their homeowners insurance policies.  Plaintiffs base their claims for coverage on assertions that (i) the storm surge that occurred during Hurricane Katrina was not an excluded risk under their policies, (ii) wind was an "efficient proximate cause" of their losses, (iii) the water entering New Orleans "due to breaches in the levees and levee walls" does not fall within the ordinary definition of flood or within the terms of the water damage exclusions in their policies, and (iv) the acts of negligence that caused the breaches in the levees are covered under their policies.  (*See* Complt., pp. 17-18.)  Plaintiffs also assert that the limitations on coverage in the policies issued by the numerous defendant insurance companies in this case are "vague, ambiguous and unclear." (Complt., ¶ 62.)

The interpretation of Plaintiffs' insurance policy is a question of law for the court to decide. *American Deposit Ins. Co. v. Myles*, 2000-2457 (La. 4/25/01) 783 So. 2d 1282, 1286.  Louisiana courts interpret insurance policies according to the general rules of contract interpretation set forth in the Civil Code.  *See Ledbetter v. Concord Gen. Corp.*, 95-0809 (La. 1/6/96) 665 So. 2d 1166, 1169.  Courts look to the intent of the parties as reflected by the words of the policy. *Id.* When the words are clear and unambiguous and lead to no absurd consequences, courts must enforce the policy language as written.  La. Civ. Code art. 2046; *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 985 (La. 1991).  Insurance policies are construed as a whole

824164v.1

and each provision must be interpreted in light of the other provisions so that each has meaning. La. Civ. Code art. 2050; *Central La. Elec. Co.*, 579 So. 2d at 985.  Moreover, although exclusions are strictly construed, the courts will not "strain to find an ambiguity in the policy where none exists." *Travelers Indem. Co. v. Powell Ins. Co.*, 1996 WL 578030, at *3 (E.D. La. Oct. 4, 1996).  As the Louisiana Supreme Court has stated,

> [t]he rule of strict construction does not authorize a perversion of language, or the exercise of inventive power for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties . . . .

*Commercial Union Ins. Co. v. Advance Coating Co.*, 351 So. 2d 1183, 1185 (La. 1977).

Contrary to Plaintiffs' assertions, State Farm's homeowners policies unambiguously exclude flood damage such as Plaintiffs claim in this case.  The policies provide that such damage is excluded regardless of whether other causes contributed to the loss and even if the water in question is "driven by wind."  (Ex. A, Tab. 1 at 10; Tab 2 at 10.)  Moreover, State Farm's water damage exclusion and similarly worded exclusions in other insurers' policies have been repeatedly held to apply to flood damage sustained during hurricanes.  *See, e.g., Morehead v. Allstate Ins. Co.*, 406 F.2d 122, 122 (5th Cir. 1969) (per curiam) (affirming dismissal of plaintiff's claim for water damage to his house caused by Hurricane Betsy because the policy excluded "loss caused by, resulting from, contributed to or aggravated by . . . flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water" and "the evidence showed that the loss occurred because of water damage rather than directly as the result of wind damage").

Indeed, as has been recently held by the federal district court for the Southern District of Mississippi, State Farm's flood damage exclusion clearly comprises storm surge flooding from Hurricane Katrina.  *See Tuepker v. State Farm Fire & Cas. Co.*, Civ. A. No. 1:05CV559, 2006 WL 1442489, at *3 (S.D. Miss. May 24, 2006) (holding that "[l]osses directly attributable to wa-

7

ter in the form of a 'storm surge' are excluded from coverage because this damage was caused by the inundation of plaintiffs' home by tidal water . . . ."); *see also Buente v. Allstate Prop. & Cas. Ins. Co.*, No. 1:05CV712, 2006 WL 980784, at *1 (S.D. Miss. Apr. 12, 2006) (in Hurricane Katrina case, rejecting plaintiff's claim that "storm surge" was not covered by flood exclusion in homeowners policy; holding that exclusions for water damage and "for damages attributable to flooding are valid and enforceable policy provisions" and that "similar policy terms have been enforced with respect to damage caused by high water associated with hurricanes in many re-ported decisions"); *Buente v. Allstate Ins. Co.*, 422 F. Supp. 2d 690, 696 (S.D. Miss. 2006) (same). In addition, contrary to Plaintiffs' contentions regarding the content of their insurance policies, State Farm's homeowners policies specifically provide that the flood exclusion applies even when conduct or failures to act by governmental bodies or other organizations or persons contributed to the flood loss – regardless of whether the conduct or failure to act is negligent, in-tentional, wrongful, non-negligent or without fault. Nor is there any factual or legal merit in Plaintiffs' argument that flooding caused by levee breaks is not flooding within the plain mean-ing of State Farm's water damage exclusion.

> ### 1.   State Farm's Water Damage Exclusion Unambiguously Excludes Flood Damage Regardless of Whether Wind, "Storm Surge," or Levee Breaks Caused the Flooding

State Farm's policies exclude losses that would not have occurred "in the absence of" wa-ter damage, defined as "flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these." Such losses are excluded, regardless of "the cause of the [the flooding or surface water]," "other causes of the loss," or whether other causes "acted concurrently or in any sequence with [flooding or surface water] to produce the loss." (Ex. A., Tab. 1 at 10; Tab 2 at 10.) Because "flood" and the other policy terms describing excluded water damages are not defined in the policy, they "must be given their generally prevailing meaning,"

La. Civ. Code Ann. art. 2047.

The ordinary meaning of "flood" is water covering normally dry land. *See, e.g., Riche v. State Farm Fire & Cas. Co.*, 356 So. 2d 101, 103-04 (La. App. 1st Cir. 1978) (holding that State Farm's Water Damage exclusion applies to "damage caused by water which has risen over and covered areas not ordinarily covered by water"); *Florida E. Coast Ry. Co. v. United States*, 519 F.2d 1184, 1192 (5th Cir. 1975) (adopting a definition of "flood" as including "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be") (quoting *Stover v. United States*, 204 F. Supp. 477, 485 (N.D. Cal. 1962), *aff'd*, 332 F.2d 204 (9th Cir. 1964)); *Bartlett v. Cont'l Divide Ins. Co.*, 697 P.2d 412, 413 (Colo. Ct. App. 1984) ("Ordinarily, 'flood' means 'a body of water . . . overflowing or inundating land not usually covered,' 36A C.J.S. Flood, and no distinction is made between natural and artificial causes."), *aff'd*, 73 P.3d 308 (Co. 1986); *see also Whitt v. State Farm Fire & Cas. Co.*, 734 N.E.2d 911, 914 (Ill. App. Ct. 2000) ("A flood is '[a]n inundation of water over land not usually covered by it. Water which inundates [an] area of surface of earth where it ordinarily would not be expected to be.") (quoting *Black's Law Dictionary* 640 (6th ed. 1990)). The definitions provided by these courts are consistent with ordinary dictionary definitions of the word "flood" -- *i.e.*, "an overflow of a large amount of water over dry land," *Compact Oxford English Dictionary of Current English* (3d ed. 2005), or "a rising and overflowing of a body of water especially onto normally dry land." *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003). *See also American Heritage Dictionary of the English Language* (4th ed. 2000) ("An overflowing of water onto land that is normally dry"); *Oxford American Dictionary of Current English* (1999) ("an overflowing or influx of water beyond its normal confines, esp. over land; an inundation").[4]

---

[4] Similarly, according to the National Flood Insurance Program ("NFIP"), a flood is a "general and temporary condition of partial or complete inundation of two or more acres of normally dry land area" from "overflow of inland or tidal waters"; or "in plain English, a flood is an excess of water (or mud) on land that's normally dry." (Ex. B.)

Thus, the ordinary dictionary definition of "flood" comprises the flooding that occurred in New Orleans. *Cf. Buente*, 2006 WL 980784, at *1 ("The inundation that occurred during Hurricane Katrina was a flood, as that term is ordinarily understood . . . ."). Moreover, since the definition of "flood" does not hinge on causation, a flood that results from storm surge, wind, or a broken levee is still a flood. Thus, courts have universally recognized that flood damage is excluded from coverage under home insurance policies regardless of the cause of the flooding. For example, a Louisiana federal court interpreting the definition of "flood" under a federal flood insurance policy held that events such as the release of water as a result of a broken levee constitute a "flood." *See Drewett v. Nat'l Flood Insurers Ass'n*, Civ. A. No. 74-806, 1976 U.S. Dist. LEXIS 17325, at *3 (W.D. La. Jan. 6, 1976) (inundation caused by broken levee was a flood).[5] If the Plaintiffs were correct that what occurred in New Orleans was not a "flood," that would mean that the federal government has paid millions of dollars to homeowners in New Orleans on flood insurance policies that it should not have paid. Clearly, the inundation that occurred in New Orleans and surrounding areas after Hurricane Katrina was a flood within the ordinary meaning of the word and within the meaning of State Farm's policies.

Indeed, there is no legal or factual basis for Plaintiffs' argument that under State Farm's policy language a flood caused by a breach in a levee is not an excluded flood. Courts "have uniformly declared that inundation from [a burst dam or dike] was indeed a 'flood' within the meaning of [a water damage exclusion] and would not give rise to coverage of the resulting losses." Russell G. Donaldson, *"What is 'flood' within exclusionary clause of property damage policy,"* 78 A.L.R. 4th 817, at II.B.4. For example, in *TNT Speed & Sport Center, Inc. v. Ameri-*

---

[5] The Standard Flood Insurance Policy, which was at issue in *Drewett*, provides that "Flood, as used in this flood insurance policy, means: 1. A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (one of which is your property) from: a. Overflow of inland or tidal waters, b. Unusual and rapid accumulation or runoff of surface waters from any source, c. Mudflow." 44 C.F.R. Part 61.1 App. A(1).

*can States Insurance Co.*, 114 F.3d 731, 733 (8th Cir. 1997), the court held that damage that occurred when the plaintiff's property was inundated after a levee break was excluded flood damage under the water damage exclusion in the plaintiff's insurance policy. Numerous other cases reach a similar result. *See, e.g., Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256, 261-62 (Mo. Ct. App. 1997) (break of levee); *E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.*, 444 N.Y.S.2d 321, 322 (N.Y. App. Div. 1981) (failure of dike); *Bartlett v. Cont'l Divide Ins. Co.*, 697 P.2d at 413 (failure of dam); *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 679-81 (Colo. 1989) (inundation of insureds' dry land when dam broke and water rushed down river constituted "flood" for purposes of flood exclusion).

Similarly, contrary to Plaintiffs' contentions, the fact that a flood was caused by wind or storm surge does not mean that the flood was not a flood and does not remove the damage caused from the operation of the water damage exclusion. Courts in Louisiana have repeatedly held that State Farm's water damage exclusion and similar water damage exclusions exclude coverage for damage to property caused by the wind-driven water of a hurricane overflowing an area that is not usually covered by water. *See, e.g., Ebert v. Pac. Nat'l Fire Ins. Co.*, 40 So. 2d 40, 41-42 (La. Ct. App. 1949) (under policy that excluded loss "caused directly or indirectly by . . . storm, tidal wave, high water or overflow, whether driven by wind or not," the only pertinent question was "whether plaintiff's house was blown or floated off of its foundation"); *Morehead*, 406 F.2d at 122 (affirming dismissal of plaintiff's claim for water damage to his house caused by Hurricane Betsy where "the evidence showed that the loss occurred because of water damage rather than directly as the result of wind damage"); *Loyola Univ. v. Sun Underwriters Ins. Co.*, 93 F. Supp. 186, 190 (E.D. La. 1950) (under insurance policy with water-damage exclusion similar to State Farm's, "[i]f the cause of the damage or destruction [is] not the direct result of the [hurricane] wind alone, but the damage or destruction [is] caused by a combination of wind and

11

water, and the damage by either cannot be separated, then, there can be no recovery"), *aff'd*, 196

F.2d 169 (5th Cir. 1952); *Southern Hotels Ltd. Pshp. v. Lloyd's Underwriters at London Cos.*, No.

95-2739 Section: E/3, 1997 U.S. Dist. LEXIS 8384, at *20 (E.D. La. June 9, 1997) (plaintiff,

owner of a hotel located in a suburb of New Orleans located on the west bank of the Mississippi

River near the Harvey Canal, could not recover for replacement of furniture damaged during

Hurricane Andrew because "[t]he evidence adduced at trial showed that the furniture was dam-

aged as a result of flood, not wind-driven rain"); *Novotny v. Phoenix Assurance Co.*, 248 So. 2d

339, 340 (La. App. 4th Cir. 1971) (affirming dismissal of plaintiff's claim that water from Hurri-

cane Betsy damaged her furniture because insurance contract covered "damages to contents from

water only when it enters through a storm-caused opening in roof or walls" and plaintiff "did not

prove that the damage to [her] furnishings was caused by water entering through either roof or

broken windows"). *See also* Point III.B.3 *infra*.

   Plaintiffs incorrectly assert, however, that damage caused by storm surge should be cov-

ered under their policies because "storm surge" is "a known meteorological phenomenon that is

not specifically excluded by any of the Insurance Company Defendants' insurance policies."

(Complt. at 18.) That assertion is contrary to the generally accepted, common sense meaning not

only of the term "storm surge," but also of the terms used in Plaintiffs' policy to define water

damage, such as "flood," "waves," "tidal water," and "overflow of a body of water." (*See* Ex. A,

Tab. 1 at 10; Tab 2 at 10.) Like the policy term "flood," those terms clearly encompass storm

surge flooding, such as occurred during Hurricane Katrina.[6]

   Just recently, the federal district court for the Southern District of Mississippi rejected

---

[6] Ordinary dictionary definitions of "surge" make it evident that "storm surge" is encompassed by other terms of the water damage exclusion such as "wave," or "overflow of a body of water." *Webster's Ninth New Collegiate Dictionary* 1188 (1993) defines "surge" when used as a noun as "2.a: A large wave or billow: swell. b (1) a series of such swells or billows (2) the resulting elevation of water level." *See also American Heritage Dictionary of the English Language* 1807 (3d ed. 1992) (defining surge as "1. A heavy billowing or swelling motion like that of great *waves*") (emphasis added).

contentions (similar to Plaintiffs' contentions here) that damage caused by Hurricane Katrina's storm surge was covered under State Farm's policy because the policy's water damage exclusion did not specifically list "storm surge" as an excluded risk. *See Tuepker*, 2006 WL 1442489, at *3. The court stated that "[l]osses directly attributable to water in the form of a 'storm surge' are excluded from coverage because this damage was caused by the inundation of plaintiffs' home by tidal water from the Mississippi Sound driven ashore during Hurricane Katrina. This is water damage within the meaning of that policy exclusion." *Id.*; *see also Buente*, 2006 WL 980784, at *1 (rejecting plaintiffs' contention that storm surge was covered under their homeowners insurance policy because it was not "specifically listed" as an excluded peril). Similarly, the Eastern District of Virginia rejected an insureds' argument that because the winds of Hurricane Isabel may have preceded the "eight to ten foot storm surge" their loss should be covered, finding that a water damage exclusion nearly identical to State Farm's was "clear, and that there was only one interpretation of the provision defining coverage and exclusion," namely, that the policy precluded recovery for loss due to storm surge flooding. *Mayton v. Auto-Owners Ins. Co.*, No. Civ. A. 3:05CV667, 2006 U.S. Dist. LEXIS 28952, at *17-19 (E.D. Va. May 2, 2006).[7]

Definitions of "storm surge" on government and scientific websites also make clear that storm surge is a meteorological phenomenon occurring in hurricanes and other intense storms that results in abnormally high tides, waves, and flooding, all excluded perils under Plaintiffs' policy. For example, the Federal Emergency Management Agency ("FEMA") defines storm surge as follows:

---

[7] *See also Opar v. Allstate Ins. Co.*, 751 So. 2d 758, 759-60 (Fla. Dist. Ct. App. 2000) (storm surge was an "uncovered peril" under policy that excluded coverage for "flood, surface water, waves, tidal water, or overflow of any body of water, or spray from any of these, whether or not driven by wind"); *Lower Chesapeake Assocs. v. Valley Forge Ins. Co.*, 532 S.E.2d 325, 327-31 (Va. 2000) (affirming trial court's ruling that a marina owner was not entitled to coverage under a property insurance policy for dock damage caused when "Hurricane Fran . . . affected the Norfolk area with wind, rain, and a storm surge"). In addition, courts discussing the effects of hurricanes in other contexts have interchangeably used the terms "storm surge" and "flood." *See Gove v. Zoning Bd. of Appeals of Chatham*, 831 N.E.2d 865, 868 (Mass. 2005) (using the terms "storm surge flooding," "coastal flooding" and "flooding", all to refer to hurricane storm surge in the context of a land use regulations case).

824164v.1

> Storm surge is simply *water* that is pushed toward the shore by the force of the winds swirling around the storm. This advancing surge combines with the normal tides to create the *hurricane storm tide*, which can increase the mean water level 15 feet or more. In addition, *wind driven* waves are superimposed on the storm tide. This rise in water level can cause severe *flooding* in coastal areas . . . .

(Ex. C (emphasis added).) Similarly, the National Weather Service ("NWS") explains that storm surge flooding occurs when a hurricane moves close to the coast:

> The advancing storm surge combines with the normal astronomical tide to create the *hurricane storm tide*. In addition, wind waves 5 to 10 feet high are superimposed on the storm *tide*. This buildup of water level can cause severe *flooding* in coastal areas, particularly when the storm surge coincides with normal high tides. . . . *Wave* and current action associated with the surge also causes extensive damage.

(Ex. D (emphasis added); *see also* Ex. E (*Illustrated Glossary of Geologic Terms*, Iowa State University Geological and Atmospheric Sciences) ("storm surge" is a "ridge of high water associated with a hurricane and which *floods* over the shore") (emphasis added).) In other words, "storm surge" is a storm tide that results in a flood of tidal water, waves and overflow of a body of water -- all of which fall within the National Weather Service's definition of "coastal flooding" as "the inundation of land areas along the coast caused by sea water above normal tidal actions." (Ex. F.) Thus, contrary to Plaintiffs' assertion, "storm surge" falls within the meaning of the policy terms flood, tidal water, waves and overflow of a body of water.

Moreover, even assuming *arguendo* that "storm surge" itself is not an excluded event, under the policy language, the flood, waves and overflow caused by "storm surge" are excluded "regardless . . . of [their] cause." (*See* Ex. A, Tab 1 at 10; Tab 2 at 10.) The National Oceanic and Atmospheric Administration (NWS's parent agency) states that "[s]torm surge causes severe flooding in coastal areas"; "storm surge . . . often result[s] in extensive coastal flooding," and "by temporarily raising sea level, storm surge permits 'dangerous and battering waves' and floating debris to access coastal areas and structures never conceived of nor built to withstand the punish-

14

ing effects of open ocean waves." (Ex. G at p. 2.) That same policy language would also apply to bar Plaintiffs' claims for coverage from flooding caused by wind or levee breaks.

In short, Plaintiffs' attempts to avoid application of the water damage exclusion by characterizing their losses as resulting from "storm surge," wind or levee breaks, rather than from flood, waves, tidal water, or overflow from the Gulf of Mexico, are entirely lacking in merit. Plaintiffs' losses are excluded under the plain language of State Farm's water damage exclusion.

>           2.      **The State Farm Policy Unambiguously Excludes Coverage For Plain-**
>                   **tiffs' Loss Due to Excluded Water Damage Regardless of Whether**
>                   **Such Losses Were Caused by "Acts of Negligence" by Third Parties**

Plaintiffs also attempt to avoid the clear exclusionary language of their State Farm policies by alleging that the water damage exclusion does not apply because "acts of negligence" were the cause of "water entering the City of New Orleans and adjoining parishes. (Complt., ¶ 3(b); *see also id.* ¶¶ 46-48 (alleging that "the vast amounts of the water that entered the City of New Orleans and the surrounding parishes came about as the result of levee failures caused by negligent design, negligent maintenance and/or inadequate materials and not by topping of the levees;" the "levees simply failed to work the way they were supposed to work;" failure of levees caused by "poor construction and/or maintenance of the levee").)

Contrary to Plaintiffs' assertion, such alleged acts of negligence are not "standard covered perils" (Complt., ¶ 3(b)) and do not prevent application of the water damage exclusion. Rather, State Farm's policy explicitly provides that losses due to water damage are not insured even if the loss is directly or indirectly caused, contributed to or aggravated by the negligent or intentional "conduct, act, failure to act, or decision of any person, group, organization, or governmental body" or by "defect, weakness, inadequacy, fault or unsoundness in: (1) planning, zoning, development, surveying, siting; (2) design, specifications, workmanship, construction, grading, compaction; (3) materials used in construction or repair; or (4) maintenance; of any property (in-

15

cluding land structures, or improvements of any kind) whether on or off the residence premises."
(Ex. A, Tab. 1 at 10; Tab 2 at 10.)  Under that policy provision, even assuming *arguendo* that
Plaintiffs are correct in alleging that negligence in the design, construction and maintenance of
the levees caused the flooding of their residences, Plaintiffs are not entitled to coverage for the
water damage to their properties.

In *Morgan v. Auto Club Family Insurance Co.*, 2004-1562 (La. App. 3 Cir. 4/6/05) 899
So. 2d 135, the Louisiana Third Circuit Court of Appeal addressed the enforceability of a similar
provision in another insurer's policy in the context of an insured's attempt to recover mold dam-
age in her attic, allegedly caused by inadequate ventilation due to improper installation of a metal
roof.  Plaintiff's homeowners policy specifically excluded loss resulting from "mold" and from
"[f]aulty, inadequate or defective . . . (2) Design, specifications, workmanship, repair, construc-
tion, renovation, remodeling, grading, compaction; . . . Of part or all of any property whether on
or off the residence premises."  *Id.* at 136.  The court affirmed summary judgment for the insurer,
stating:

> In the present case, loss of property caused by mold is specifically excluded
> from coverage under the policy even though the mold damage may have re-
> sulted from lack of ventilation in the attic.

*Id.* at 137.  *See also Alton Oschner Medical Found. v. Allendale Mut. Ins. Co.*, 219 F.3d 501 (5th
Cir. 2000) (Louisiana law) (faulty workmanship exclusion).  The same analysis applies here:
Because the damage to Plaintiffs' property caused by flooding is specifically excluded from cov-
erage, there is no coverage for the damage even if the flooding may have resulted from defects in
the design, construction, or maintenance of the levees.  The State Farm negligence provision has
also been specifically upheld by courts in a variety of factual scenarios.  *See, e.g., Rhoden v.
State Farm Fire & Cas. Co.*, 32 F. Supp. 2d 907, 914 (S.D. Miss. 1998) (granting summary
judgment for State Farm on claim for damage caused by earth movement underneath insureds'

16

home as a result, in part, of design and construction defects: "The [negligence] exclusion specifically states that the policy does insure for loss resulting from defective construction unless the resulting loss is a loss not insured by that section. . . . [T]he loss resulting from the allegedly defective construction work is not covered under the policy."), *aff'd*, 200 F.3d 815 (5th Cir. 1999).

Moreover, even where policies do not have language that specifically excludes negligent conduct, courts routinely have held that water damage/flood exclusions similar to State Farm's unambiguously exclude loss caused by flood, regardless of the alleged effect of negligence on the insured's loss. In *E.B. Metal & Rubber Industries, Inc. v. Federal Insurance Co.*, 444 N.Y.S.2d 321 (N.Y. App. Div. 1981), for example, the insureds brought suit to recover damages sustained when a dike gave way, inundating their property with water. The insurers contended that the loss was unambiguously excluded by the policy's flood exclusion, which applied to "waves, tidal water or tidal wave, rising (including overflowing or breaking of boundaries) of lakes, reservoirs, rivers, streams or other bodies of water, whether driven wind or not." *Id.* at 322. The court held that the carriers had properly denied coverage; in light of the clear and unambiguous terms of the flood exclusion, it was "irrelevant that a defect in the dike may have also contributed to the break." *Id. See also Bartlett*, 697 P.2d at 413 (insurance policy did not provide coverage for damage caused by water and debris released as a result of dam failure; stating: "The insurance policy excludes coverage for 'all direct loss by flood or overflow,' and contains no provision for coverage of flood losses that result from the negligence of a third party.").

        **3.**      **The Lead-In Language of State Farm's Water Damage Exclusion Unambiguously Excludes Losses That Would Not Have Occurred "In the Absence" of Water Damage Regardless of the Operation, Effect or Sequence of Other Potential Causes and Renders the Efficient Proximate Cause Doctrine Inapplicable**

Plaintiffs' Complaint asserts that Plaintiffs are entitled to coverage because the "efficient and proximate causes of loss" were covered perils. (Complt. ¶ 59.) The purported "efficient

17

proximate causes" of loss identified by Plaintiffs are windstorm, negligence, storm surge and the "breaking or failure of levees or boundaries of lakes."  Even assuming *arguendo* that Plaintiffs were correct in asserting that such perils contributed to their losses or were somehow "efficient proximate" causes of the flooding and assuming that such perils were all otherwise covered perils under the policy (which they are not, *see supra* Point III.B.1 and 2), Plaintiffs cannot avoid their policies' water damage exclusion by invoking the doctrine of "efficient proximate cause." The plain language of State Farm's water damage exclusion not only makes clear that it applies even if the water or flood is "driven by wind," but, like several other exclusions in State Farm's policies, the water damage exclusion is prefaced by an anti-concurrent cause "lead-in" paragraph. That lead-in language specifically states there is no coverage for a loss that would not have occurred "in the absence of" an excluded risk such as water damage, "regardless of" the operation, effect, or sequence of other potential causes of loss.  The effect of the lead-in provision is to ensure that the policy's water damage exclusion will be applied regardless of the presence of other events in the causal chain.  As a matter of Louisiana law, the lead-in provision negates Plaintiffs' attempt to invoke the "efficient proximate cause" doctrine.

At least two courts applying Louisiana law have construed and upheld anti-concurrent cause policy language similar to State Farm's "lead-in" language.  In *Sweeney v. City of Shreveport*, 584 So. 2d 1248 (La. App. 2 Cir. 1991), the insured's house was demolished following her apparent refusal to respond to the City's repeated notice of code violations and notice of impending demolition, which, due to an error on the part of the city inspector, had been sent to the wrong person. *Id.* at 1249.  The insurer denied plaintiff's claim on the basis of the homeowner's policy's "ordinance or law" exclusion which is prefaced by lead-in language very similar to State Farm's lead in language.  *Id.* at 1250.  The Louisiana Second Circuit Court of Appeal affirmed summary judgment for the insurer, rejecting plaintiff's argument that the exclusion did not apply

18

because her loss was, as here, caused in part by the City's negligence:

> Admittedly, Mrs. Sweeney did not receive notice that her property was to be demolished; thus her claim against the city may have merit. However, the exclusion provides that *any loss* directly or indirectly resulting from enforcement of an ordinance is excluded *regardless of any contributing causes.* It may be true that the negligence of city employees resulted in Mrs. Sweeney not getting notice and that this negligence contributed to the demolition of the house; however, *the exclusion by its own terms still applies.*

*Id.* (emphasis added).

Lead-in language similar to State Farm's was also upheld in *Prytania Park Hotel v. General Star Indemnity Co.*, 896 F. Supp. 618 (E.D. La. 1995). In *Prytania Park*, the insured hotel suffered a fire. When the fire damage was repaired, the New Orleans building code required the insured to add a sprinkler system, which was not present before the fire, and the insured sought to recover the costs of installing the sprinkler system from the insurer under the fire insurance policy. *Id.* at 623. Just as Plaintiffs' here claim that the water damage exclusion does not apply because their losses were precipitated by the allegedly covered perils of third-party negligence and wind, the *Prytania Park* plaintiffs argued that the need for the sprinkler system was proximately caused by the fire, not by the enforcement of the building code, and therefore should be covered. *Id.* The court rejected this argument, holding that costs of complying with a building code "are simply excluded according to the policy's plain, unambiguous language." *Id.* at 624. The court stressed that, under the anti-concurrent causation language, "it is inconsequential . . . whether the fire which caused the loss occurred before the repair that required installation of a sprinkler system." *Id.* at 623. Courts in numerous jurisdictions around the country have also upheld State Farm's lead-in language as clear, unambiguous and enforceable as written.[8]

---

[8] Courts in at least 14 jurisdictions have explicitly upheld the validity of State Farm's exclusionary lead-in language at issue here, generally in the context of either water damage or earth movement. At least 19 other jurisdictions have upheld the enforceability of analogous language used by other insurers, which typically excludes coverage for loss "caused directly or indirectly" by the enumerated perils (including water damage and earth movement), "regardless of any other cause or event contributing concurrently or in any sequence to the loss." (*See* Ex. H.) The court in

*(cont'd)*

Louisiana law is clear that the efficient proximate cause doctrine can only apply to claims such as Plaintiffs' where (unlike here) the insurance policy is silent on the subject at issue. *See Roach-Strayhan-Holland Post v. Cont'l Ins. Co.*, 112 So. 2d 680, 682-83 (La. 1959) ("it is sufficient, in order to recover upon a windstorm insurance policy *not otherwise limited or defined*, that the wind was the proximate or efficient cause of the loss or damage, notwithstanding other factors contributing thereto") (emphasis added); *Riche*, 356 So. 2d at 103 (same); *Kemp v. Am. Universal Ins. Co.*, 391 F.2d 533, 534-35 (5th Cir. 1968) (same). Courts in jurisdictions which have adopted the concept have repeatedly held that it is simply a method of interpretation that is to be used only in the absence of controlling policy language. *See, e.g., Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1277 (Utah 1993) ("the proper path to follow is to recognize the efficient proximate cause rule only when the parties have not chosen freely to contract out of it").

Where a policy's exclusionary language "unambiguously excludes coverage for any loss caused in any way by" an excluded peril such as flood, the "efficient proximate cause" analysis simply does not apply. *TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 733 (8th Cir. 1997). Here, State Farm's policy language specifically provides that State Farm "do[es] not insure for [flood] loss regardless of the cause of the excluded event." (Ex. A, Tab 1 at 10; Tab 2 at 10.) Thus, like the policy language relied upon by the court in *TNT*, State Farm's anti-concurrent cause policy language "directly address[es], and contract[s] out of, the efficient proximate cause doctrine and exclude[s] coverage for losses caused by water, regardless of the existence of any other contributing causes in any sequence." *Id.*; *see also Sunshine Motors, Inc. v. N. H. Ins. Co.*, 530 N.W.2d 120, 121 (Mich. Ct. App. 1995) ("proximate cause" of loss was

*(cont'd from previous page)*
*Tuepker* found ambiguity in State Farm's lead-in language, but upheld State Farm's water damage exclusion. State Farm has asked the court in *Tuepker* to reconsider its ruling as to State Farm's lead-in language. That motion is presently pending before that court. In any event, the factual circumstances presented by this case -- flooding following levee breaks -- do not implicate the ambiguity found by the court in *Tuepker*. *See Tuepker*, 2006 WL 1442489, at *5.

824164v.1

irrelevant where water damage exclusion contained anti-concurrent causation language); *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1130 (D.C. 2001) (efficient proximate cause rule was inapplicable where policy contained anti-concurrent causation language).

The anti-concurrent cause lead-in provision of State Farm's policy negates the efficient proximate cause doctrine and confirms that the policy exclusions apply regardless of the presence of other events in the causal chain. It does this by specifically stating that if one of the perils prefaced by the lead-in language (here, flood, tidal water or overflow of a body of water) is a cause of loss, there is no coverage, regardless of the operation of other perils – covered or not – in the causal chain. *See Preferred Mut. Ins. Co. v. Meggison*, 53 F. Supp. 2d 139, 142 (D. Mass. 1999) (similar lead-in provision precluded application of efficient proximate cause analysis "by expressly stating that a loss is excluded from coverage if it results from a combination of covered and excluded perils"). In particular, State Farm's lead-in language renders meritless Plaintiffs' assertion that they are entitled to coverage because the "efficient proximate cause of the losses . . . was windstorm . . . rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant." (Complt., ¶ 3, p. 17.) Plaintiffs' assertion not only ignores the water damage exclusion's lead-in language but also ignores the plain language of State Farm policy's water damage exclusion itself which states that the policy does not insure for loss due to "flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, *all whether driven by wind or not*." (Ex. A, Tab 1 at 10; Tab 2 at 10 (emphasis added).)

Accordingly, because State Farm's policy is clear that water and flood damage is excluded from coverage even if caused by or contributed to by other perils, covered or uncovered, the proximate and efficient cause doctrine does not apply and there is no coverage for damage from water entering the City of New Orleans and surrounding parishes regardless of whether the

21

flooding and water damage were the result of a windstorm or any other peril.

**C.    Count Three and Four of the Complaint Fail to State a Claim for Breach of the Implied Covenant of Good Faith and for Breach of Louisiana's Insurance Bad Faith Statute (La. Rev. Stat. Ann. § 22:1220)**

Plaintiffs also allege that the purported actions of State Farm "violated the [implied] duties of good faith and fair dealing" and constituted "bad faith conduct in violation of La. Rev. Stat. Ann. § 22:1220." (Complt., ¶¶ 79, 92.)  Both Plaintiffs' claim for breach of the implied duty of good faith and fair dealing and their Section 1220 bad faith claim fail as a matter of law because, as shown above, the water damage exclusion in the State Farm homeowners policy is clear, unambiguous, valid and enforceable and clearly excludes recovery for Plaintiffs' purported loss. (*See* Point III.B.1-3 *supra*.)  Louisiana's bad faith statute, La. Rev. Stat. Ann. § 22:1220, "do[es] not provide a cause of action against an insurer absent a valid, underlying insurance claim." *Clausen v. Fid. and Deposit Co. of Md.*, 95 0504 (La. App. 1st Cir. 8/4/95) 660 So. 2d 83, 86; *see also Phillips v. Patterson Ins. Co.*, 01 1545 (La. App. 3d Cir. 4/3/02) 813 So. 2d 1191, 1195 ("The penalties authorized by [La. Rev. Stat. Ann. § 22:1220] do not stand alone; [this statute] do[es] not provide a cause of action against an insurer absent a valid, underlying, insurance claim.").  Plaintiffs also invoke La. R.S. § 22:658.2(A)(1), which prohibits insurers from "us[ing] the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."  That statutory provision is actionable only pursuant to Section 1220, *see* La. Rev. Stat. § 22.658.2(D), and, as shown above, Plaintiffs' claims under Section 1220 fail as a matter of law for lack of a valid underlying insurance claim.  Because State Farm's invocation of the water damage exclusion is not a breach of contract and does not deprive policyholders of any benefit justifiably expected under the terms of the contract, there is no basis for a claim of breach of the duty of good faith

22

and fair dealing.[9]

**D.      Count Five of the Complaint Fails to State a Claim for Breach of Fiduciary Duty**

Plaintiffs' Complaint also fails to state a claim for breach of fiduciary duty.  Plaintiffs

base that claim upon their assertion that State Farm and its agents were "obligated to provide ad-

vice and assistance to policyholders so that risks to which they are exposed are adequately in-

sured" (Complt. ¶ 97) and to "advise Policyholders of the availability of flood insurance."

(Complt. ¶ 99.)  There is no such obligation under Louisiana law.  Rather, under Louisiana law,

an insurance agent has a duty to use reasonable diligence to attempt to procure the insurance that

he has undertaken to procure.  In order to recover for a loss arising out of the purported failure of

an insurance agent to obtain the coverage desired by the customer, an insured must show:

> (1) an undertaking or agreement by the insurance agent to procure insurance;
> (2) failure of the agent to use reasonable diligence in attempting to place the
> insurance and failure to notify the client promptly if he has failed to obtain the
> insurance; and (3) the actions of the agent warranted an assumption by the cli-
> ent that he was properly insured.

*Graves v. State Farm Mut. Auto. Ins. Co.*, 2001-1243, p. 4 (La. App. 3d Cir. 6/26/02) 821 So. 2d

769, 772.

In situations analogous to the situation here, Louisiana courts have ruled that insurance

companies and agents have no duty to advise actual or prospective insureds of the need for addi-

tional or different insurance.  For instance, in *Graves*, the court held that the insurance agent and

---

[9] Furthermore, even if State Farm's denial of coverage based upon the water damage exclusion was somehow deter-
mined to be a breach of contract, Plaintiffs' claims for bad faith would still fail because Plaintiffs have not alleged
any facts that would show that State Farm's denial of coverage was arbitrary or capricious. *See American Gulf VII v.
Otto Candies, Inc.*, No. 94-3905 c/w 95-1666 Section "K" (5), 1997 U.S. Dist. LEXIS 13414, at *30-31 (E.D. La.
Aug. 28, 1997) (holding that La. Rev. Stat. § 22:1220 "must be strictly construed and should not be invoked when
the insurer has a reasonable basis for denying coverage"); *Icklone v. Travelers Indem. Co.*, 345 So. 2d 202, 203-04
(La. App. 3d Cir. 1977) (award of penalties and attorneys fees for bad faith was improper because it was "apparent
that there was a serious question of fact as to whether the roof was damaged by a windstorm: and therefore "the de-
fendant was not arbitrary, capricious or without probable cause in denying the claim"); *Riche v. State Farm Fire &
Cas. Co.*, 356 So. 2d 101, 104 (La. App. 1st Cir. 1978) (State Farm's denial of a claim based on the water damage
exclusion, even though erroneous, was not arbitrary, capricious, unreasonable or in bad faith).

824164v.1

agency had no duty, either in contract or tort, to inquire into the insured's financial condition and advise them to carry higher liability limits or purchase an umbrella policy. 2001-1243, p. 6-7, 821 So. 2d at 773-74. Likewise, in *Jones v. Webb*, 36,121 (La. App. 2d Cir. 6/12/02) 821 So. 2d 614, another Louisiana court held that an insurance agent had no fiduciary duty to procure an umbrella policy unless specifically asked to do so. *Id.* at 36.121, p.5; 821 So. 2d at 617. In *Jones*, the plaintiffs' allegation that they had never specifically rejected umbrella coverage and that they had reasonably believed they had procured umbrella coverage did not support a cause of action for breach of fiduciary duty. *Id.*; *see also Smith v. Millers Mut. Ins. Co.*, 419 So. 2d 59, 65 (La. App. 2d Cir. 1982) (refusing to impose duty "to advise what limits should be carried by an insured;" stating "no case has been cited that places [such] a duty on an insurance agent").[10]

Similarly, in *McCartney v. State Farm Insurance Co.*, 567 So. 2d 1168 (La. Ct. App. 3d Cir. 1990), the court upheld an insurer's enforcement of a business liability exclusion relating to the sale of alcoholic beverages even though the plaintiff insureds' business purportedly consisted of 75-80% alcoholic beverage sales. *Id.* at 1170-71. The court found that there was no evidence that the insureds specifically requested the agent to procure insurance for them other than the coverage that was in effect at the time of the incident at issue, and in fact the evidence demonstrated that the insured had taken the policy because it provided greater coverage than a competitor insurance company's policy at a lower price, even considering the exclusion relating to the sale of alcoholic beverages. *Id.* at 1170.

Thus, the Louisiana courts have refused to impose upon insurance agents and insurers the duty Plaintiffs assert that State Farm breached in this case, namely to advise Plaintiffs of the

---

[10] Moreover, under Louisiana law, Plaintiffs are charged with knowledge of the terms of their policies and the coverage provided by them. *See, e.g., Elston v. Shell Oil Co.*, 376 F. Supp. 968, 971 (E.D. La. 1973) ("[The insured] had a duty to read the entire contract before he signed it and his failure to do so was negligence on his part. One who signs a written instrument is presumed to know its contents and cannot avoid its obligations merely by contending that he had not read it."), *aff'd mem.*, 495 F.2d 1371 (5th Cir. 1974).

need for more and different insurance. Accordingly, because Plaintiffs in this case make no allegation that State Farm or its agents failed to provide the homeowners insurance that Plaintiffs requested and because neither State Farm nor the licensed independent agents who sell its policies had any duty to advise Plaintiffs to purchase additional insurance, neither State Farm nor its agents breached any fiduciary duty.

### E.     The Filed Rate Doctrine Precludes Plaintiffs' Claims

The Louisiana Legislature has given the Commissioner of Insurance exclusive authority to review and approve policy forms for certain lines of insurance, including property insurance policies, offered and sold in Louisiana. *See* La. R.S. § 22:620(a)(1). The Commissioner was *required by law* to disapprove and reject State Farm's policy forms if he concluded that a proposed endorsement or exclusion violated state law or was ambiguous or misleading. *See* La. R.S. § 22:621(3). "[A]pproval by the insurance commissioner constitutes an administrative ruling that the policy and its endorsements conform to the requirements of the law . . . ." *Carrier v. Allstate Ins. Co.*, 96 2681 (La. App. 1st Cir. 11/7/97) 702 So. 2d 367, 371.

Authority to approve rates is vested in the Louisiana Insurance Rating Commission ("LIRC"). La. R.S. § 22:1401; La. R.S. § 22:1402. The Louisiana Legislature has declared that the purpose of rate regulation policy is "to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate, or unfairly discriminatory . . . ." La. R.S. 22:1402; *see also* La. R.S. § 22:1404(2); *Employers-Commercial Union Ins. Co. v. Bernard*, 303 So. 2d 728, 731 (La. 1974). Rate regulation is "intended . . . to promote fairness of such rates to both the public and insurance companies, and in general promote and protect the public interest insofar as insurance rates are concerned." *Guillory v. La. Ins. Rating Comm'n*, 357 So. 2d 599, 602 (La. App. 1st Cir. 1978).

The filed rate, once approved by the regulatory authority with jurisdiction over the sub-

25

ject matter, "is per se reasonable and unassailable in judicial proceedings brought by ratepayers."
*Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994); *see also In re Industrial Life Ins.
Litig.*, 148 F. Supp. 2d 719, 721 n.1 (E.D. La. 2001).[11] "[T]he filed rate doctrine is not limited to
'rates' per se" but also protects contracts and insurance policy provisions that the regulatory au-
thority has approved before they become effective. *Nantahala Power & Light Co. v. Thornburg*,
476 U.S. 953, 966 (1986); *see Allen v. State Farm Fire & Cas. Co.*, 59 F. Supp. 2d 1217, 1227-
28 (S.D. Ala. 1999) (upholding hurricane deductible under filed rate doctrine).

The Commissioner's and LIRC's approval of State Farm's homeowners policy forms and
rates, pursuant to their statutory authority, establishes the binding legality of these forms and
rates. *See generally* La. R.S. § 22:2A(1) ("Insurance is an industry affected with the public in-
terest and it is the purpose of this code to regulate that industry in all its phases."); *Fontenot v.
State Farm Mut. Ins. Co.*, 119 So. 2d 588, 592 (La. App. 1st Cir. 1960). Having received ap-
proval of its policy forms and rates, State Farm was precluded from issuing policies containing
anything other than those forms and approved rates.

Louisiana courts have barred claims against insurers that, if granted, would directly *or
indirectly* impact the approved rates or that would have the effect of changing the filed rates. *See
Cont'l Cas. Co. v. Rogers*, 194 F.2d 582, 584 (5th Cir. 1952); *Jung Hotel, Inc. v. Ins. Comm'n of
La.*, 154 So. 448, 450-51 (La. 1934). Courts in other jurisdictions have likewise held that the
filed rate doctrine bars claims against insurers and other companies that would have the "effect"
of changing the filed rates. *See Kutner v. Sprint Commc'ns Co.*, 971 F. Supp. 302, 306 (W.D.
Tenn. 1997) (filed rate doctrine "precludes not only the award of remedies that actually change

---

[11] The filed rate doctrine has been applied to common carriers, public utilities, telecommunications companies, and
insurance companies whose rates and, in the insurance context, policy forms, have been filed with and approved by
state or federal regulatory agencies. Indeed, "the filed-rate doctrine has been held to apply equally to rates filed with
state agencies by every court to have considered the question." *Destec Energy, Inc. v. Southern Cal. Gas Co.*, 5 F.
Supp. 2d 433, 458 (S.D. Tex. 1997) (collecting cases), *aff'd*, 172 F.3d 866 (5th Cir. 1999).

824164v.1

the filed rate, but also of remedies that would have that effect"); *Katz v. MCI Telecommc'ns Corp.*, 14 F. Supp. 2d 271, 274 (E.D.N.Y. 1998) (filed rate doctrine "precludes any judicial action which undermines agency rate-making authority"). The rationale underpinning this principle is simple: "Rates . . . do not exist in isolation. They have meaning only when one knows the services to which they are attached." *AT&T Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 223, 226 (1998) (filed rate doctrine barred even state common law contract and tort claims involving the provisioning of services and billing).[12]  The rates Plaintiffs paid for their homeowners policy are linked not only to their coverage but to the exclusions in their policy as well. *See Am. Stone Diamond, Inc. v. Lloyds of London*, 934 F. Supp. 839, 846 (S.D. Tex. 1996) ("Exclusions in insurance policies generally benefit both parties by lowering premiums for the insured and by protecting the insurer from liability out of proportion to the consideration charged.").[13]

What Plaintiffs seek to accomplish through this lawsuit is precisely what the filed rate doctrine forbids: a collateral attack on a policy and rate approved by the LIRC. *See Keogh v. Chicago & N.W. Ry. Co.*, 260 U.S. 156, 163-64 (1922). If this Court were to grant Plaintiffs' requested relief, it would drastically expand the scope of coverage under the policy far beyond that contemplated by the LIRC when it set the rates for Plaintiffs' policies. It would also provide

---

[12] *See also Richardson v. Standard Guar. Ins. Co.*, 853 A.2d 955, 965 (N.J. Super. Ct. App. Div. 2004) (filed rate doctrine barred Consumer Fraud Act claim where relief sought would "collaterally alter the rates contained in the insurer's filings with" the Department of Insurance); *Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1428 (S.D. Fla. 1997) (filed rate doctrine barred RESPA claims even though the court "did not have to devise a reasonable rate" to supplant Florida's promulgated rate" because relief sought would result in discrimination against other purchasers of title insurance); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 489 (8th Cir. 1992) (filed rate doctrine barred RICO claim: "[T]he focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on . . . rate determinations.").

[13] *See also DeMizio v. GEICO Gen. Ins. Co.*, No. Civ.A.05-409, 2005 WL 1693938, at *3 (E.D. Pa. July 19, 2005) (refusing to invalidate household exclusion because doing so would require insurance companies to underwrite risks for which they neither contracted nor were paid); *K-C Mfg. Co. v. Shelby Mut. Ins. Co.*, 434 So. 2d 1004, 1007 (Fla. Dist. Ct. App. 1983) ("To extend coverage in this case would therefore simply emasculate the exclusion provision and provide benefits for which the premium was not calculated."); *Bertler v. Employers Ins. of Wausau*, 271 N.W.2d 603, 608 (Wis. 1978) (refusing to invalidate exclusion because it "would require this court to rewrite the insurance contract making the insurer liable for risks not included in the original rate-making calculations and not paid for by insured"). The filed rate doctrine has been expressly applied to the rates and deductibles of insurance contracts and to any form of judicial remedy that would impact the state regulatory officer's approved rate. (*See* Ex. I.)

Plaintiffs coverage they did not pay for, at a discriminatory rate,[14] and would necessarily reduce the approved rates by requiring State Farm to provide coverage that was neither contracted for nor contemplated in the approved premium. *See Neil v. Allstate Ins. Co.*, 549 A.2d 1304, 1310 (Pa. Super. Ct. 1988) ("[T]o take the radical measure of rewriting the policy by invalidating the exclusion clause . . . would place insurance companies in the impracticable situation of insuring losses which they have specifically not contemplated and for which they have not funded reserves."). Accordingly, because the relief sought by Plaintiffs – which would effectively eliminate the water damage exclusion – necessarily impacts the accuracy of the rates charged, Plaintiffs' claims are barred by the filed rate doctrine.

### F.   Retroactive Invalidation of State Farm's Flood Exclusion Is Impermissible Under the Constitutions of the United States and the State of Louisiana

State Farm's contract rights, as well as the funds that Plaintiffs claim should be paid by State Farm for uninsured flood damages caused by Hurricane Katrina, are protected property interests for purposes of due process under the United States and Louisiana Constitutions. *See Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 492 n.9 (5th Cir. 2005). Retroactive imposition of liability for such uninsured damages, as sought by Plaintiffs, would constitute arbitrary interference with those property interests in violation of due process. *See PBGC v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 & n.22 (1996).[15] Such retroactive rewriting of State Farm's policy to allow the imposition of a "disproportionate and severely retroactive burden" of liability would also contravene the "fun-

---

[14] *See, e.g., U.S. Fid. & Guar. Co. v. Knight*, 882 So. 2d 85, 92 (Miss. 2004) ("A rate calculated in reliance on an exclusion will, in most instances, be incorrect where courts invalidate the exclusion"); *Allen*, 59 F. Supp. 2d at 1229 (judicial invalidation of approved form that "increase[es] coverage under the policies . . . necessarily effects a decrease in the defendants' effective rates and disturbs the commissioner's rate-making authority"). As the Texas Supreme Court has explained, "[f]rom an underwriting standpoint, there is a vast difference between insuring against loss by hurricane winds only and insuring against loss by a combination of hurricane winds and waters." *Hardware Dealers Mut. Ins. Co. v. Berglund*, 393 S.W.2d 309, 313 (Tex. 1965).

[15] The fact that Plaintiffs seek a retroactive imposition of liability through the courts rather than through the legislature does not render their claims constitutionally permissible. *See Gore*, 517 U.S. at 572 n.17 ("State power may be exercised as much by a jury's application of a state rule of law in a civil lawsuit as by a statute").

824164v.1

damental principles of fairness underlying the Takings Clause[s]" of the United States and Louisiana Constitutions, *see Eastern Enters. v. Apfel*, 524 U.S. 498, 536-37 (1998),[16] as well as impermissibly impair State Farm's contracts in contravention of the Contract Clauses of both Constitutions.[17] *Cf. Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245-50 (1978).   In addition, lawsuits such as Plaintiffs', if successful, would significantly impair the national insurance industry and national system of flood insurance and would thus impose an undue burden on interstate commerce in violation of the United States Constitution. *See Gore*, 517 U.S. at 585.

### G.   Plaintiffs' Claims Are Preempted Because They Would Impermissibly Obstruct the Objectives and Goals of the National Flood Insurance Act

Plaintiffs' attempted invalidation of flood exclusions would interfere with important objectives of the NFIA, 42 U.S.C. §§ 4001 *et seq.*, and the National Flood Insurance Program ("NFIP") it established.   Because Plaintiffs' claims "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," those claims are preempted.[18]

Through the NFIA, Congress sought not only to provide reasonably priced flood insurance that private insurers could not offer, but also to reduce future federal flood relief burdens.[19]

---

[16] The Takings Clause "stands as a shield against the arbitrary use of governmental power," whether exercised through the courts or by the legislature. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980); *accord Hughes v. Washington*, 389 U.S. 290, 298 (1967) (Stewart, J., concurring) (Constitution "forbids . . . confiscation by a State, no less through its courts than through its legislature"); *Chicago, B. & Q. R. v. Chicago*, 166 U.S. 226, 235 (1897) ("final judgment of a state court, under the authority of which the property is in fact taken, is to be deemed the act of the state").

[17] The Contract Clause is implicated here because of the fundamentally legislative nature of the broad injunctive and declaratory relief Plaintiff seeks.   The fact that Plaintiffs have chosen to attempt to accomplish legislative goals through a lawsuit does not alter the substance of what Plaintiffs seek to have the Court do.   Accordingly, this lawsuit falls under the well-settled rule that a State may not evade constitutional prohibitions simply through the form of action adopted. *See, e.g., NLRB v. Guy F. Atkinson Co.*, 195 F.2d 141, 148-49 (9th Cir. 1952) (treating purported "adjudication" as in reality an "administrative declaration" or rulemaking); *Hughes v. Washington*, 389 U.S. 290, 298 (1967) (Stewart, J., concurring) (Constitution looks not to "what a State says" or "what it intends," but "what it does").

[18] *See Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000) (preempting tort standards conflicting with objectives of federal statute); *AT&T Corp. v. Tex. Public Utility Comm'n*, 373 F.3d 641, 645-47 (5th Cir. 2004) (preempting regulation that "frustrates the purposes of Congress").

[19] *See* 42 U.S.C. § 4001(b) (finding that "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions,"); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 387-88 (9th Cir. 2000) (NFIA enacted in part because private in-
*(cont'd)*

29

824164v.1

Congress intended the NFIP to "complement and encourage preventive and protective measures," 42 U.S.C. § 4001(a)(3), and to be "integrally related to a unified national program for flood plain management," *id.* § 4001(c)(2), and authorized insurance only in communities adopting flood plain management regulations to reduce future flood damages. *Id.* §§ 4022, 4023.[20]

Homeowners buy NFIP insurance from FEMA or from private insurers like State Farm, known as "Write-Your-Own" carriers ("WYOs").[21]  WYOs must use the same Standard Flood Insurance Policy ("SFIP") form as FEMA, 44 C.F.R. Part 61 App. A; *see also* 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c), and federal funds pay claims under WYO-issued policies, with the government bearing all risk of loss.[22]  Uniformity and consistency are essential to NFIP goals.[23]  Thus, disputes related to SFIP claims are governed solely by federal law.  44 C.F.R. Part 61 App. A(1), Art. IX.; *Wright*, 415 F.3d at 390.  *Peal v. North Carolina Farm Bureau Mut. Ins. Co.*, 212 F. Supp. 2d 508, 516 (E.D.N.C. 2002), held state bad faith claims against WYOs to be preempted, because exposing WYOs to 50 states' varying laws would decrease their willingness to participate in the NFIP and increase the cost of flood insurance.

Plaintiffs' attempt to require flood coverage through homeowners policies, if successful, would create a competing court-mandated state flood insurance program that would obstruct NFIP objectives by (i) eliminating an incentive for communities to participate in the NFIP and to

---

(*cont'd from previous page*)

surers were unable to offer flood insurance and homeowners needed subsidized rates); *United States v. Parish of St. Bernard*, 756 F.2d 1116, 1122 (5th Cir. 1985) (principal purpose of NFIP is to reduce federal disaster relief burden).

[20] This system has been described as a "carrot" and "stick" approach. *Parish of St. Bernard*, 756 F.2d at 1120-21.

[21] *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 267 (3d Cir. 2004) (WYOs write over 90% of policies).

[22] WYO carriers are fiscal agents of the United States, 42 U.S.C. § 4071(a)(1); 44 C.F.R. § 62.23(g), and payments on SFIP claims are a direct charge on the United States Treasury. *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 387-88 (5th Cir. 2005); 42 U.S.C. § 4071(d)(1).

[23] *See West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978) ("Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law"); *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 949 (6th Cir. 2002) ("Congress and FEMA have regulated the claims adjustment process and judicial review of coverage claims under flood insurance policies.  Uniformity of decision requires the application of federal law and precludes the enforcement of state laws on the same subject").

adopt the required flood plain management regulations, thereby increasing the federal disaster relief burden; (ii) requiring insurers to provide flood insurance when Congress intended their participation to be voluntary, see 44 C.F.R. § 62.24; (iii) giving current policyholders flood coverage for which they did not pay, contrary to the intent to spread burdens "equitably among those who will be protected by flood insurance and the general public," 42 U.S.C. § 4001(d)(2); and (iv) forcing those in special flood hazard areas who are required to purchase SFIPs as a mortgage condition, id. § 4012a(b), to pay additional amounts insurers would start charging for the overlapping state-mandated coverage.  Because of these conflicts, Plaintiffs' claims are preempted.

## IV.    CONCLUSION

For all the foregoing reasons, the claims asserted against State Farm in Plaintiffs' Amended and Restated Complaint fail as a matter of law and should be dismissed with prejudice.

Respectfully submitted,

*Sarah H. Barcellona*

Wayne J. Lee, 7916
Stephen G. Bullock, 3648
Sarah H. Barcellona, 28080
Of
STONE PIGMAN WALTHER
 WITTMAN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone: (504) 581-3200
Facsimile:  (504) 581-3361

Attorneys for State Farm Fire &
Casualty Company

31

## **C E R T I F I C A T E**

I hereby certify that a copy of the foregoing State Farm Fire and Casualty Company's Memorandum in Support of Rule 12(b)(6) Motion To Dismiss Plaintiffs' Amended and Restated Complaint has been served upon each counsel of record by electronic mail or by United States mail, postage pre-paid and properly addressed, this 15th day of August, 2006.

*[signature]*

32