UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION<br>NO. 05-4182 "K"(2) |
| PERTAINS TO LEVEE: | * * | JUDGE DUVAL |
| O'DWYER, NO. 05-4181 | * * | MAG. WILKINSON |

**MEMORANDUM IN SUPPORT OF
CSX TRANSPORTATION, INC.'S MOTION FOR DISMISSAL
<u>UNDER RULE 12(b)(6) (FAILURE TO STATE A CLAIM)</u>**

Plaintiffs recently added to this Hurricane Katrina litigation a railroad entity, CSX Transportation, Inc. ("CSXT"). Plaintiffs do not claim, nor could they, that CSXT is in the business of delivering flood protection to plaintiffs, to New Orleans, or to anyone else. Rather, plaintiffs assert, in a single conclusory passage, that CSXT was somehow negligent in where it located and how it operated its railroad right-of-way, rail line, and roadbed – and thus seek to hold CSXT accountable for the consequences of the tragedy that was Hurricane Katrina.

The law recognizes no such claim. The complaint alleges no facts that would or could impose on CSXT a duty in tort to safeguard the citizens of New Orleans from natural disasters.

915849-1

Absent duty, there can be no negligence. Because the complaint says not a word about duty as to CSXT, it is legally deficient.

In asking this Court to instruct CSXT on how to build, locate, and operate its rail lines, the complaint also runs headlong into the preemptive effect of two separate railroad regulatory schemes – the Interstate Commerce Commission Termination Act of 1995 and the Federal Railroad Safety Act. The negligence claim against CSXT is preempted by federal rail law.

Finally, the complaint seeks class action status, but violates virtually every core pleading requirement of a class action.

For these reasons, CSXT respectfully requests that its motion to dismiss be granted.

## FACTS

The sole claim against CSXT consists of a single paragraph, found in plaintiffs' "Twelfth Supplemental and Amending Complaint in a Class Action Lawsuit" ("Twelfth Amended Complaint"). It reads:

> At all times pertinent CSX Corporation and/or CSX Transportation, Inc. owned, operated and controlled the right-of-way, roadbed and railroad track, which penetrated the New Orleans Flood Defense System on the East and West banks of the Inner Harbor Navigation Canal (a/k/a the Industrial Canal). During Hurricane KATRINA these penetrations of the New Orleans Flood Defense System, which CSX Corporation and/or CSX Transportation, Inc. had negligently built and maintained, and negligently failed to adequately close, served as conduits for storm surge within the Inner Harbor Navigation Canal (a/k/a the Industrial Canal) to enter the Greater New Orleans Metropolitan Area, and to cause damage to plaintiffs and to those similarly situated to plaintiffs. Accordingly, CSX Corporation and/or CSX Transportation, Inc. is/are liable unto plaintiffs and to those similarly situated to plaintiffs pursuant to applicable federal and/or state law, including, without limitation, those federal and/or state laws previously invoked.

Twelfth Amended Complaint, at 3 ¶ XIXXV [sic] (June 21, 2006) (Dkt. No. 641).

Thus, CSXT stands accused of negligence, apparently for where it located and how it operated its "right-of-way, roadbed and railroad track." There is no allegation as to what duty in

915849-1                                    2

tort CSXT may have owed in this regard. There is no allegation as to how a railroad track should be "built" and "maintained." There is no allegation as to how CSXT should, and should not, have "adequately close[d]" its rail tracks and right-of-way. There is no allegation as to whom such a duty could have been owed. Indeed, the word "duty" appears nowhere.

## ARGUMENT

I. **The Complaint Pleads No Duty Owed By CSXT – And CSXT Owes No Duty to Protect the "Greater New Orleans Metropolitan Area" From Natural Disasters**

"A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006). In Louisiana the existence of a duty and its scope are questions of law. *See Dupre v. Chevron, U.S.A., Inc.*, 20 F.3d 154, 159 (5th Cir. 1994). The failure to allege a duty renders a complaint legally deficient. *Johnson v. United States*, 547 F.2d 688, 695 (D.C. Cir. 1976) (citing 5 C. Wright & A. Miller, *Federal Practice* § 1249 at 227-28 (1969)); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial" (citations omitted)).

The *O'Dwyer* complaint is a paradigm of how *not* to plead duty. The complaint offers only the conclusions that CSXT "is liable" and that CSXT "caused" harm. Everything else is left to guesswork. The complaint says nothing about a legal duty owed by a railroad to "penetrate" or not to "penetrate" a flood protection system. The complaint offers no source for any such a duty, and no basis in negligence for recognizing or creating such a duty. Tort duties, moreover, must be owed to someone. That someone is nowhere identified in the complaint.

Read charitably, the complaint might be construed to suggest that CSXT owed a duty to safeguard "the Greater New Orleans Metropolitan Area" against natural disasters such as floods

915849-1                                    3

resulting from Hurricane Katrina. If this is the intention, plaintiffs are asserting a novel tort theory indeed. For starters, Congress has for several decades fixed upon a single entity – the Army Corps of Engineers, and not CSXT – the responsibility to protect United States populations from floods. *See* 33 U.S.C. §§ 701, *et seq.* (Congress mandated that Army Corps of Engineers is to provide hurricane and flood protection for the City of New Orleans). The Louisiana legislature in turn has imposed some level of responsibility upon the Board of Commissioners of the Orleans Levee District – again, not on CSXT. *See Bd. of Comm'rs of the Orleans Levee Dist. v. Dep't of Natural Res.*, 496 So. 2d 281, 289 (La. 1986) (Louisiana legislature has given this Board authority and duty to protect New Orleans citizens from damage by flood); *Volkswagen of America, Inc. v. Robertson*, 713 F.2d 1151, 1154 (5th Cir. 1983) (Orleans Levee District maintains the hurricane protection levees in the New Orleans area, in compliance with the designs, plans, specifications and requirements of the Corps of Engineers).[1] Congress presumably could have imposed nationwide flood protection responsibility upon private actors like CSXT had it so chosen; it did not so choose. Indeed, the Orleans Levee District has already admitted in this consolidated litigation that *it* – and not CSXT -- "maintains and operates flood control structures in accordance with specific contractual instructions from the United States Government, as well as state and federal regulations and statutes." 05-6073-*Kirsch*, Answer to Second Amended Class Action Complaint (July 25, 2006) at 7, 18 (Dkt. No. 813).

---

[1] This Court is intimately familiar with the statutory basis and history of the Corps of Engineers and the Orleans Levee Districts' roles in designing, building, maintaining and operating the levees, flood walls and gates surrounding New Orleans. *See* 05-6323-*Vanderbrook*, Order and Reasons (June 1, 2006) (Dkt. No. 469); 05-4568-*Harvey*, Order and Reasons (June 2, 2006) (Dkt. No. 476); 06-3529-*Laurendine*, Order and Reasons (Aug. 9, 2006) (Dkt. No. 888).

915849-1                                           4

As fundamentally, tort law does not impose duties owed to a "Greater Metropolitan Area." Duties in negligence are not owed to an "area" and are not owed to an entire city or city population. They are owed to specific people with whom one has a relationship or legally sufficient nexus. "[N]egligence does not exist in the abstract, it contemplates a legal duty owing from one party to another . . . ." *Tappen v. Ager*, 599 F.2d 376, 379 (10th Cir. 1979). Accordingly, "duty to the world" concepts like that (perhaps) being advanced in *O'Dwyer* are regularly rejected. *See, e.g., Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001) (a tort plaintiff "must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for 'without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.'" (citation omitted)); *In re New York State Silicone Breast Implant Litig.*, 632 N.Y.S.2d 953, 955-56 (Sup. Ct. 1995), *aff'd*, 642 N.Y.S.2d 681 (App. Div. 1996) (Courts will not impose a duty of care "enforceable by any member of an indeterminate class of persons, present and prospective, known and unknown, directly or indirectly injured by any negligence." (citation omitted)); *Bathelt v. Asbestos Defs.*, No. 010906321 AS, 2003 WL 21994732, at *3 (Utah Dist. Ct., 3d Dist. Feb. 21, 2003) ("There is no duty to the general public and plaintiffs have failed to demonstrate any special relationship between themselves and this defendant.").

Duty, in short, is a limiting principle. The scope of any tort duty CSXT owes to anyone in connection with construction, maintenance and operation of its own rail property is confined by the risk, harm, and plaintiff at issue. *See Dupre v. Chevron, U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994). "The essence of a scope of duty inquiry is whether the risk and harm encountered by the plaintiff fall within the scope and protection of the [law]. . . . Since the law never gives absolute protection to any interest, recovery will only be allowed if a rule of law on

which the plaintiff relied includes within its limits protection against the particular risk that plaintiff's interests encountered." *Lazard v. Foti*, 859 So. 2d 656, 660-61 (La. 2003) (sheriff's duty to not hold a minor in an adult detention center did not encompass risk that released juvenile would be killed by a third party after his release). While the *O'Dwyer* complaint recounts the tragedy that Hurricane Katrina created, it never articulates facts suggesting how that tragedy is tied to any risk that should have been foreseen by a railroad in building and operating a "right-of-way, roadbed or rail track."

In any event, this Court and the parties are not required to speculate about plaintiffs' theory of duty. In this Circuit, as elsewhere, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss,'" *Campbell*, 43 F.3d at 975 (citation omitted), and a court "need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation," *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990). Plaintiffs having failed to plead *any* facts that suggest CSXT owed them a duty, and having had a dozen opportunities to plead, dismissal is now in order.

## II.  The Claim Against CSXT Is Preempted By Federal Railroad Law

Insofar as the *O'Dwyer* complaint is intelligible, it faults CSXT for how it built, where it located, and how it operated its rail tracks and right-of-way. Such a claim is preempted by two separate federal regulatory railroad schemes.

### A.  Federal railroad law broadly and expressly preempts state regulation.

The doctrine of federal preemption is rooted in the Supremacy Clause of the Constitution: "[T]he laws of the United States ... shall be the Supreme Law of the Land." U.S. Const. art. VI, cl. 2. The Supremacy Clause authorizes Congress to preempt state law in the legitimate exercise

of its legislative authority: "Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law. . . ." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 368-69 (1986). "Because federal law is the supreme law of the land, it preempts state laws that 'interfere with, or are contrary to, federal law.'" *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002) (quoting *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985)).

Railroads have always been subject to the regulatory authority of Congress under the Commerce Clause. *See, e.g., Pittsburgh & Lake Erie R.R. v. Railway Labor Executives Ass'n*, 491 U.S. 490, 510 (1989); *Houston, E & W Tex. Ry. v. United States*, 234 U.S. 342, 350-52 (1914). The United States Supreme Court "repeatedly has recognized the preclusive effect of federal legislation" in the area of railroad regulation. *City of Auburn v. United States,* 154 F.3d 1025, 1029 (9th Cir. 1998).

Congress initially asserted federal authority over the railroad industry by enacting the Interstate Commerce Act, ch. 104, 24 Stat. 379 (1887), which has been acknowledged as "'among the most pervasive and comprehensive of federal regulatory schemes.'" *City of Auburn*, 154 F.3d at 1029 (citation omitted). Federal regulation of the railroad industry, already sweeping, expanded further in 1995 when Congress enacted the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. §§ 10101 *et seq.* ("ICCTA"), including within ICCTA an express preemption of state "regulation of rail transportation."

In addition, Congress enacted the Federal Railroad Safety Act, 49 U.S.C. §§ 20101 *et seq.*, ("FRSA"), to promote safety in all areas of railroad operations. The Act broadly regulates rail safety, and like ICCTA contains a sweeping express preemption clause. If the "subject

matter" of a lawsuit "covers" railroad safety, with limited exception FRSA and its supporting regulations preempt the action.

### B. The Claim Against CSXT Is Preempted by ICCTA.

With its enactment of ICCTA, Congress intended to federalize many aspects of railroad regulation that had previously been reserved to the states. With ICCTA Congress established the Surface Transportation Board as an agency within the United States Department of Transportation with authority to regulate all aspects of railroad operations. *See* 49 U.S.C. §§ 701(a), 702 (2000).

Congress intended to grant to the Surface Transportation Board *exclusive* jurisdiction over a broad range of railroad action:

> In enacting the ICCTA, Congress sought to deregulate the railroad industry. Recognizing that the over regulation of the surface transportation industries had led to financial problems for the rail industry, Congress intended for the ICCTA to significantly reduce state and local regulation of railroads . . . . In furtherance of this intended purpose, the jurisdictional section of the ICCTA grants the Surface Transportation Board ("STB") exclusive jurisdiction over nearly all matters of rail regulation.

*Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 839 (E.D. Ky. 2004). Specifically, Section 10501 of the ICCTA reserves for the STB, and only the STB, jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, . . . .

49 U.S.C. § 10501(b). Removing any doubts, Section 10501 concludes that STB's jurisdiction over this broad sweep of rail operations is *"exclusive"* and *"preempt[s] the remedies provided under Federal or State law."* *Id.* (emphasis added).

Courts have long recognized the exceedingly broad reach of ICCTA preemption. "It is clear that the ICCTA has preempted all state efforts to regulate railroad transportation." *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013 (W.D. Wisc. 2000) (emphasis added); *see also CSX Transp., Inc. v. Georgia Publ. Serv. Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996) ("[i]t is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operation."); *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001) ( "the plain language of the statute itself, and in particular its preemption provision, is so certain and unambiguous as to preclude any need to look beyond that language for congressional intent"). Courts have applied ICCTA to preempt state regulation of rail transportation in a wide variety of settings, covering the broadest array of attempts at state regulation. *See, e.g., id.* at 439 (ICCTA held to preempt common law negligence claim); *City of Auburn*, 154 F.3d at 1031 (ICCTA held to preempt state and local environmental laws); *South Dakota R.R. Auth. V. Burlington N. & Santa Fe Ry. Co.*, 280 F. Supp. 2d 919 (D.S.D. 2003) (ICCTA held to preempt state law claims for punitive damages and tortious interference); *Burlington N. Santa Fe Co. v. Anderson,* 959 F. Supp. 1288 (D. Mont. 1997) (ICCTA held to preempt state closure authority).

As noted in the Fact Section above, the complaint in this action finds fault with the location of a CSXT right-of-way (alleging that it "penetrated" New Orleans' flood defense system) and how CSXT constructed and maintained its "right-of-way, roadbed and railroad track." Twelfth Amended Complaint, at 3 ¶ XIXXV [sic] (Dkt. No. 641). Plaintiffs complain, in other words, about the "remedies provided . . . with respect to . . . [CSXT's] routes" and the "construction, acquisition, [and] operation" of "spur, industrial, team, switching, or side tracks, or facilities . . . ." 49 U.S.C. § 10501. Through a state law tort action, plaintiffs are asking a

915849-1

court to dictate where CSXT places its rail track and roadbed and how it operates its right-of-way. According to the clearly expressed will of Congress, only the Surface Transportation Board has jurisdiction over such an action.

The sole claim against CSXT is thus preempted by ICCTA.

### C.     The Claim Against CSXT Is Preempted By The FRSA.

Congress enacted the FRSA "to promote safety in all areas of railroad operations and to reduce railroad-related accidents, and incidents" 49 U.S.C. § 20101. The FRSA vests in the Secretary of Transportation broad powers to prescribe regulations for *"every area* of railroad safety." 49 U.S.C. § 20103(a) (emphasis added). With the FRSA Congress sought nationwide uniformity in the area of rail safety: "Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106. Nevertheless, Section 20106 further provides:

> A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order --
>
>> (1) is necessary to eliminate or reduce an essentially local safety or security hazard;
>> (2) is not incompatible with a law, regulation, or order of the United States Government; and
>> (3) does not unreasonably burden interstate commerce.

(Emphasis added). With limited exceptions pertaining to purely local rail safety or security hazards, therefore, a state law or lawsuit is preempted by the FRSA whenever the Act's implementing regulations "cover" or "substantially subsume" the subject matter of the state law or action. *See, e.g., CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 661, 675 (1993) (maximum

railroad-speed regulations "cover" the subject-matter of train speed and therefore preempt a jury verdict that a train was traveling at an excessive speed).

Pursuant to its authority under the FRSA, the Secretary has long regulated the construction and maintenance of railroad track and roadbeds – specifically, in 49 C.F.R. Part 213, subparts B and D. Subpart B ("Roadbed," §§ 213.31 *et seq.*) prescribes minimum requirements for "roadbed and areas immediately adjacent to a roadbed." Subpart D ("Track Structure," § 213.101 *et seq.*) prescribes minimum requirements for "ballast, crossties, track assembly fitting, and the physical condition of rails." The roadbed regulations include 49 C.F.R. § 213.103, which provides:

> Unless it is otherwise structurally supported, all track shall be supported by material which will --
>
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
> (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
> (c) <u>Provide adequate drainage for the track</u>; and
> (d) Maintain proper track crosslevel, surface, and alignment.

(Emphasis added). Because FRSA regulations "cover" the manner in which railroads construct and maintain their track and roadbeds, a state action purporting to affect how a railroad's roadbed or track is "built and maintained" is preempted.

The *O'Dwyer* complaint attempts precisely this. By alleging that CSXT was negligent in the way it built and maintained its right-of-way, roadbed and track, the complaint seeks to impose obligations upon CSXT irrespective of, and in conflict with, its compliance with the minimum requirements established by the FRSA and its regulations. Such a claim impedes Congressional intent to create a nationally uniform set of standards applicable to railroads.

FRSA preemption applies, therefore, unless plaintiffs' negligence claim falls within the narrow "local" safety or security hazard savings clause. The FRSA's savings clause permits a state to adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order meets three conditions: (1) it is necessary to eliminate or reduce an essentially local safety hazard, (2) it is not incompatible with a federal law, regulation, or order, and (3) it does not unreasonably burden interstate commerce.

Plaintiffs' claim meets none of these conditions. First, the only conceivable "safety hazard" plaintiffs attempt to address through their action is flooding. Flooding is anything but "essentially local". To state the obvious, New Orleans is not the only jurisdiction where local, state and federal governments must determine how flood protection systems and railroad operations may be integrated. A hazard is a "discrete and truly local hazard" if it "relates to the avoidance of a specific collision." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 640 (5th Cir. 2005) (citation omitted). A condition that could occur anywhere at any time – such as a flood -- is not a discrete, truly local hazard. *Id.*

Second, the plaintiffs' claim is directly "incompatible" with FRSA law and regulation. FRSA imposes safety standards governing how CSXT is to construct and maintain its right-of-way, roadbed and track. The present lawsuit likewise attempts to create (other than through law or regulation) some other standard through the guise of a negligence action. This attempt is incompatible with regulations promulgated under the FRSA that already "cover" these very aspects of CSXT rail operations.

Finally, plaintiffs' claim would "unreasonably burden interstate commerce." In evaluating this burden, courts consider "the practical and cumulative impact were other States" to take similar actions. *CSX Transp., Inc. v. Williams*, 406 F.3d 667, 673 (D.C. Cir. 2005). The

915849-1

12

court in *Williams* thus weighed the burden of a proposed local ban on a railroad's shipment of certain types of freight, considering the effect not only of that one jurisdiction's ban but also the possibility of multiple, varying bans throughout the country. As the D.C. Circuit observed in *Williams*, "[i]t would not take many similar bans to wreak havoc with the national system of hazardous materials shipment." *Id.* (citation omitted). So here, the prosecution of civil actions nationwide seeking monetary awards to discipline where a railroad locates, and how it "maintains and builds" rail tracks and roadbeds would create anything but nationwide uniformity, and would "wreak havoc" on our nation's system of rail transportation.

If anything is unambiguous about plaintiffs' claim against CSXT, it is that it questions a rail entity's construction and maintenance of track and roadbed. Because that subject matter is "covered" by the FRSA, the claim is preempted.

### III. Plaintiffs' Complaint Fails To Meet The Most Basic Pleadings Requirements Of A Putative Class Action

For the foregoing reasons, plaintiffs' claim against CSXT fails as a matter of law and dismissal is warranted. In addition, plaintiffs' complaint is defective because it fails to meet class action pleading requirements – which this Court only needs to decide if it does not hold that plaintiffs' complaint fails to state an actionable negligence claim.

Plaintiffs purport to prosecute this litigation on behalf of themselves and a class of "similarly situated" persons. But the Rules of this Court require that a party seeking class action status plead "allegations thought to justify the maintenance of the claim as a class action." Local Rule 23.1. This includes basic information such as facts identifying the named class representatives and how they relate to and can adequately represent the class proposed. It is not sufficient to recite the elements of Rule 23: "In a prospective class action ***the complaint should allege the existence of necessary facts*** showing that the prerequisites of Rule 23(a) have been

915849-1                                    13

satisfied." *Batsakis v. FDIC*, 670 F. Supp. 749, 757 (W.D. Mich. 1987) (emphasis added) (citing *Peak v. Topeka Hous. Auth.*, 78 F.R.D. 78 (D. Kan. 1978)). In particular, facts must be pled which, if proven, would satisfy each of the individual elements of Rule 23, and would establish that the action at hand can be certified for class treatment. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)).

Just as they fail to plead a cognizable duty owed in tort, plaintiffs fail to plead the most elementary requirements of Rule 23. For instance:

1.  Plaintiffs allege no facts supporting their assertion that they are representative -- or even members -- of the class they propose. Rule 23 requires that named plaintiffs set forth why they should be permitted to prosecute an action on behalf of others, those others being absent from the litigation. A named plaintiff who is not a class member does not have standing to sue on a proposed class's behalf, and cannot meet the commonality, typicality and adequacy of representation requirements of Rule 23(a). *See, e.g. Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974); *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 518 (6th Cir. 1976). At a minimum, then, the named plaintiffs must allege claims that mirror the claims of proposed class -- representation of a class "is not appropriate where the named plaintiffs have different claims and/or circumstances than other members, thereby creating the possibility of a less than vigorous advancement of the case for all plaintiffs involved." *Reilly v. Gould, Inc.*, 965 F. Supp. 588, 600 (M.D. Penn. 1997) (dismissing class action allegations). Thus, a plaintiff "cannot rely on the potential claims of unnamed parties to preserve causes of action that she cannot maintain herself." *Hilton v. Atlas Roofing Corp. of Miss.*, Civ. A. No. 05-4204, 2006 WL 1581239, at *2 (E.D. La. May 18, 2006).

The *O'Dwyer* complaint pleads plaintiffs' names. That is the totality of plaintiffs' pleading of identifying information about any plaintiff. The complaint offers no addresses, no information about property ownership, no information about the harms these plaintiffs suffered, no information about how CSXT's alleged conduct affected them, and no other information that would permit even conjecture about whether plaintiffs are within their own class definition or are suitable representatives.

2.  Plaintiffs fail to define a class of persons who have claims against CSXT with clarity and certainty. 5 *Moore's Federal Practice* § 23.21[1] (3d ed.). "It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (finding that "residents of this State active in the 'peace movement'" did not satisfy Rule 23's requirement of an adequately defined class). Plaintiffs seemingly bring this action on behalf of anyone who suffered any injury during or after Hurricane Katrina as the result of ***government*** action (*e.g.*, persons who allegedly suffered bodily injury, mental suffering and emotional distress or property damage or loss as the result of the "government's" vaguely described "intentional and negligent malfeasance, misfeasance and non-feasance prior to and after Hurricane KATRINA"), or who suffered such injuries as the result of actions undertaken by "defendants" in connection with the construction, maintenance and inspection of the Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway, the Inner Harbor Navigation Canal, and their "environs and levees." *See* Complaint (Sept. 19, 2005) ¶¶ II.A-F (Dkt. No. 1); *see also* Sixth Supplemental And Amending Complaint (Dec. 5, 2005) at 4 ¶ II.G (Dkt. No. 20).

Putting aside plaintiffs' failure to allege any facts in support of their contention that they are representative of their proposed class, their class definition is so broad that it could include

anyone with a property interest in Orleans Parish, including the "government" and CSXT itself, whose rail property was damaged by floodwaters during and after the storm. Even more, plaintiffs' class definition lacks sufficient clarity to determine whether it includes anyone supposedly damaged by the alleged actions of CSXT that plaintiffs place at issue in this lawsuit. Plaintiffs' class definition falls far short of meeting Rule 23's requirements of "clarity and certainty."

3.   Plaintiffs identify no questions of fact or law – literally none – common to all putative class members. Fed. R. Civ. P. 23(a)(2). In order to meet this requirement, there must be at least one issue common to all members of the proposed class. *Reilly*, 965 F. Supp. at 597. Plaintiffs' complaint tells the Court virtually nothing about plaintiffs' own interests in this lawsuit, and why or how these interests are co-extensive with everyone in New Orleans harmed by Hurricane Katrina.

4.   Plaintiffs plead no facts suggesting adequacy of representation. Fed. R. Civ. P. 23(a)(4). The "adequacy" requirement of Rule 23(a)(4) is one of the most important elements because it is intended to protect the interests of the absent class members. Courts do not accept bald assertions of commonality, typicality or adequacy of representation – all of which, in any event, are missing here – but rather look for alleged *facts* that, if proven, would support these critical prerequisites to class certification. *Batsakis*, 670 F. Supp. at 757-58. When a court determines that the proposed class representatives will not adequately protect class interests, it may dismiss the action. *Roman v. ESB, Inc.* 550 F. 2d 1343, 1356 (4th Cir. 1979). Plaintiffs' complaint alleges no facts indicating why or how their representation of the sweeping proposed class would be adequate or effective.

Class litigation is a departure from the norm in our judicial system of individual litigation. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). Plaintiffs seeking class treatment must from the outset plead facts which, if proven, would justify such a departure. Absent such pleading, dismissal of class allegations is appropriate. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (court did not abuse its discretion in refusing to allow class discovery where plaintiff could not plead prima facie case of class action); *Baum v. Great W. Cities, Inc.*, 703 F.2d 1197, 1210 (10th Cir. 1983) (district court order granting motion to dismiss class action allegations affirmed); *Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003) (granting motion to dismiss where pleading requirements of Rule 23(b)(3) not met). Plaintiffs having amended their class action twelve times, still without offering the most basic pleading of class issues, dismissal is warranted here.

## CONCLUSION

Plaintiffs have failed to plead negligence against CSXT; have failed to plead the requirements of a class action; and have asserted a claim preempted by federal railroad laws. Respectfully, their claim against CSXT should be dismissed.

                                  s/ Jonathan C. McCall
BRENT A. TALBOT (#19174)
JONATHAN C. MCCALL (#9227)
MICHAEL D. SPENCER (#27649)
               -of-
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075

and

ROY J. RODNEY, JR. (#02079)
JOHN K. ETTER (#25042)
-of-
**RODNEY & ETTER, L.L.C.**
1232 Camellia Boulevard, Suite "C"
Lafayette, Louisiana 70508
Telephone: (337) 981-5293
Telefax: (337) 988-6918

**ATTORNEYS FOR CSX TRANSPORTATION, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August, 2006, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management. All counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

s/ Jonathan C. McCall