## IN UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| COLLEEN BERTHELOT ET AL., et al., | : CIVIL ACTION NO.: |
|  | : 05-4182 SECTION "K"(2) |
| Plaintiffs | : CONS. KATRINA CANAL |
| vs. | : JUDGE DUVAL |
| BOH BROTHERS CONSTRUCTION CO. L.L.C., et al., | : JUDGE WILKINSON |
| Defendants. | : |

**THIS DOCUMENT RELATES TO:**

05-6323 "K"(2)   VANDERBROOK

## SUPPLEMENTAL BRIEF OF AMICUS CURIAE UNITED POLICYHOLDERS AND THE CHEHARDY REPRESENTATIVE POLICYHOLDERS IN OPPOSITION TO DEFENDANTS' RULE 12 MOTIONS

### I.   INTRODUCTION

Amicus Curiae United Policyholders and the Chehardy Representative Policyholders ("Amicus") submit this Supplemental Memorandum In Opposition To Defendants' Rule 12 Motions addressing those issues set forth in the Court's August 28, 2006 Order (the "Order"). For the reasons set forth more fully below, the Court should find the following:

> 1.   Defendants' water damage exclusions are ambiguous, fail to define the terms "flood" and do not clearly refer to floods caused by third-party negligence. [1]

---

[1] The Court's Order refers to a "flood exclusion" however Defendants' policies contain no separate express "flood exclusion." Defendants' policies do contain purported "water damage"

2.     In purchasing all-risk homeowners insurance, Louisiana policyholders would reasonably expect coverage for water damage or flooding caused by the negligent acts of third parties.

3.     Determining the reasonable expectations of Louisiana policyholders is part of the Court's interpretation of contract terms and, therefore, is a question for the Court.

4.     The so-called anti-concurrence causation clauses in Defendants' policies are ambiguous and cannot be enforced even if the water damage exclusions do not apply to third-party negligence.  These clauses are in direct contravention of the efficient proximate cause doctrine and would operate to deny coverage in toto for losses caused by covered perils so long as an excluded peril was present regardless of sequence, degree or proportionality.

6.     Because the water damage exclusion is inapplicable to third-party negligence, a flood occurring because of such third-party negligence is an "ensuing loss" and is covered under Defendants' policies.

7.     As Used In Section I, Exclusions No. 2 The Term "Property" Is Undefined, Ambiguous And Therefore Cannot Be Interpreted As A Matter Of Law To Include Property That Is Not Insured And Not On The Residence Premises

For all of the following reasons, as well as the reasons set forth in the initial

Memorandum submitted by Amicus, Defendants' Motions should be denied.

## II.     ARGUMENT

### A.     Louisiana's Rules Regarding Contract Interpretation Allow The Court To Avoid The Absurd Results That Would Occur If Defendants' Interpretations Applied

Under well-established Louisiana jurisprudence and the Civil Code, when

absurd results will result from a reading of a contract's terms, the contract is ambiguous

and "the courts must construe the provision in a manner consistent with the 'nature of

---

exclusions which contain references to the undefined term "flood."  For purposes of this Memorandum, such language is referred to as "water damage" exclusions.

the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.'" Doerr v. Mobil Oil Corp., 774 So.2d 119, 124 (La. 2000) (citing La. Civ. Code. Art. 2053)(emphasis added).  Moreover, Louisiana courts must construe insurance policies "to effect, not deny coverage, and any ambiguity should be interpreted in favor of the [policyholder.]"  Id.  (citing Yount v. Maisano, 627 So.2d 148, 151 (La. 1993); Garcia v. St. Bernard Parish Sch. Bd., 576 So.2d 975, 976 (La. 1991); Breland v. Schilling, 550 So.2d 609, 610 (La. 1989); Sherwood v. Stein, 259 So.2d 876, 878 (La. 1972)).  More specifically, "equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer" if a provision is susceptible to two or more reasonable interpretations.  Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003).

Furthermore, if a policy or its provisions are ambiguous, Louisiana courts apply the "reasonable expectations" doctrine.  Holden v. Connex – Metalna, 2001 WL 96413 (E.D. La); Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 764 (La. 1994);  Breland, 550 So.2d at 610-11.  Under the "reasonable expectations" doctrine, "'courts will protect the [policyholders] reasonable expectations ··· regarding the coverage afforded by insurance contracts even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer.'"  Louisiana Ins. Guar. Ass'n, 630 So.2d at 764, n.9 (quoting R. Keeton and A. Widiss, Insurance Law § 6.13 (1988)).  Courts applying the reasonable expectations doctrine have further explained its underlying rationale as follows:

> "The doctrine of protecting the reasonable expectations of
> the insured is closely related to the doctrine of contracts of
> adhesion. Where there is unequal bargaining power between
> the parties so that one party controls all of the terms and
> offers the contract on a take-it-or-leave-it basis, the contract
> will be strictly construed against the party who drafted it.
> Most courts recognize the great disparity in bargaining
> power between insurance companies and those who seek
> insurance. Further, they recognize that, in the majority of
> cases, a lay person lacks the necessary skills to read and
> understand insurance policies, which are typically long, set
> out in very small type and written from a legalistic or
> insurance expert's perspective. Finally, courts recognize that
> people purchase insurance relying on others, the agent or
> company, to provide a policy that meets their needs. The
> result of the lack of insurance expertise on the part of
> [policyholders] and the recognized marketing techniques of
> insurance companies is that 'the objectively reasonable
> expectations of applicants and intended beneficiaries
> regarding the terms of insurance contracts will be honored
> even though painstaking study of the policy provisions would
> have negated those expectations."

Atwater Creamery Co. v. Western Nat. Mut. Ins. Co., 366 N.W.2d 271, (Minn. 1985)

(quoting Keeton, Insurance Law Rights at Variance with Policy Provisions, 83 Harv. L.

Rev. 961 (1970)).  It is against this analytical framework that the Court must interpret

and analyze the policies at issue here.

### B.   Defendants' Water Damage Exclusions Are Ambiguous And Do Not Define Flood In Any Manner And Make No Reference To Flooding Caused By Third-Party Negligence.

The express language of the Insurance Company Defendants' so-called

water damage exclusions contain no specific reference to flooding caused by third-party

negligence, nor is the term "flood" defined in any manner to include, refer, incorporate or

suggest flooding  or water damage caused by third-party negligence. The Insurance

Company Defendants have drafted vague policies containing generalized and

undefined exclusionary language in order to do precisely what they attempt to do here:

suggest after-the-fact interpretations of terms in order to exclude coverage otherwise

provided for under their all-risk policies.  As such, any ambiguities or failure to include

terms or definitions within those policies must be construed against Defendants, who

cannot simply rely upon their own after-the-fact  interpretations in order to avoid the

coverage which was purchased and reasonably expected by policyholders.

Cadwallader, 848 So.2d at 580.

The express language contained in the so-called "water damage"

exclusions in the all-risk policies sold by Defendants Hartford, Standard Fire, Hanover

and Unitrin ("ISO Defendants") states:

> We do not insure for loss caused directly or indirectly by any
> of the following.  Such loss is excluded regardless of any
> other cause or event contributing concurrently or in any
> sequence to the loss.
>
> **c.    Water Damage**, meaning:
>
> (1) Flood, surface water, waves, tidal water, overflow
> of a body of water, or spray from any of these, whether or
> not driven by wind.

(Standard Fire Policies, App. at INS 96 and INS 136; Hartford Policy, App. at INS 56;

Hanover Policy, App. at INS 9; Unitrin Policy App. at INS 171).  Similarly, State Farm's

all-risk policy provides:

> 2.    We do not insure under any coverage for loss which
> would not have occurred in the absence of one or more of
> the following excluded events.  We do not insure for loss
> regardless of: (a) the cause of the excluded event; or (b)
> other causes of the loss; or (c) whether other causes acted
> concurrently or in any sequence with the excluded event to
> produce the loss; or (d) whether the event occurs suddenly
> or gradually; involves isolated or widespread damage, arises

from natural or external forces, or occurs as a result of any combination of these.

* * *

c.    Water Damage, meaning:

(1)    flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these all whether driven by wind or not[.]

(Exhibits A and B to State Farm's Motion at pp. 10-11).

Nowhere in Defendants' all-risk policies are the terms "water damage" or "flood" defined to include flooding or water damage caused by third-party negligence. In fact, the term "flood" is not defined at all. The "water damage" exclusion is simply devoid of any definition of the word flood, including a complete lack of any reference to any acts of third-party negligence. Of course, Defendants did attempt to include a reference to causation by way of the express inclusion of the language "whether wind driven or not," yet they chose not to include any language pertaining to, referring to or contemplating third-party negligence as an excluded cause of water damage. Only now do the Defendants seek to have the term "flood" defined to include third party negligence in an effort to avoid their contractual obligations to Louisiana policyholders who suffered losses as a result of Hurricane Katrina and the ruptured levees.

Defendants had every opportunity to define the term "flood" or make express reference to third-party negligence in the water damage exclusion but failed to do so in drafting their all-risk policies. Consequently, under Louisiana's rules of construction, to the extent the Defendants seek to have the equivocal term "flood" narrow their contractual obligations for coverage by including flooding caused by the

acts of third-parties, the term must be construed against Defendants. <u>Cadwallader</u>, 848

So.2d at 580; <u>Carrier v. Reliance Ins. Co.</u>, 759 o.2d 37, 43 (La. 2000).  The Court is not

required to engage in a "perversion of the words or the exercise of inventive powers"

under the guise of contractual interpretation to enlarge or restrict the policy's provisions.

<u>Carrier</u>, 759 So.2d at 43.  That is precisely what the Defendants are asking the Court to

do insofar as they suggest to have the equivocal term "flood" defined in a manner to

include flooding caused by third-party negligence.

Furthermore, as is the case here, where a purported exclusion is unclear

as to whether it applies solely to naturally-occurring events or also to man-made events,

the exclusion is susceptible to more than one reasonable interpretation and, therefore,

ambiguous.  <u>Murray v. State Farm Fire & Cas. Co.</u>, 509 S.E.2d 1 (W.Va. 1998).  Thus,

even if the Court determines that the water damage or "flood" exclusion is subject to an

interpretation that includes third-party negligent acts that result in flood, an equally

reasonable interpretation exists and, therefore, the water damage or "flood" exclusion is

ambiguous and unenforceable as a matter of law.

**C.    Louisiana Policyholders Would Not Reasonably Expect That
        Third-Party Acts Causing Water Damage To Their Property
        Would Not Be Covered Under The All-Risk Homeowners
        Policies Which They Purchased.**

In purchasing all-risk homeowners insurance coverage, Louisiana

policyholders have a heightened expectation of coverage by way of the nature of all-risk

insurance.  As such, they would not reasonably expect losses caused by water damage

resulting from third-party negligence to be excluded from coverage under such all-risk

policies.  As set forth above, nowhere in Defendants' all-risk policies are the terms

"water damage" or "flood" defined to include the inundation of water which is caused by the negligent acts of third parties. Consequently, under a plain reading of the all-risk policy language drafted by Defendants and sold to policyholders, there is simply no objective or reasonable basis to say that a Louisiana homeowners' policyholder would have reason to believe that any flooding or water damage that resulted from the acts or negligent conduct of third parties would not be covered.

Under the reasonable expectations doctrine, "courts will protect the [policyholders] reasonable expectations regarding the coverage afforded by insurance contracts even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." Louisiana Ins. Guar. Ass'n, 630 So.2d at 764. Here, even the most detailed, careful and thorough reading of Defendants' policies would not indicate to a policyholder that third-party negligence leading to flood or water damage would be expressly excluded under the policy. No such language exists. Consequently, absent such language, the reasonable expectations of a policyholder would be that flooding which occurs as a result of third-party acts would be a covered loss under the all-risk homeowners' policies they purchased.

Furthermore, as set forth in Murray v. State Farm Fire & Cas. Co., 509 S.E.2d 1 (W.Va. 1998), purchasers of all-risk policies have heightened expectations of coverage and, therefore, the Court must protect these expectations and hold policy provisions and exclusions that contradict the reasonable expectations of Louisiana homeowners policyholders to be ambiguous and unenforceable. In Murray, the Court rejected State Farm's effort to enforce "earth movement" exclusions which, like the

water damage exclusions at issue here, were vague and failed to include language

expressly excluding third-party negligence.  The Murray court stated:

> [W]here third-party negligence is alleged to be the proximate
> cause of a loss, we believe a policyholder could reasonably
> expect to be covered under State Farm's policy. Only
> through a painstaking review of the lengthy "Losses Not
> Included" section would a policyholder discover the language
> suggesting that, because the negligence occurred in
> conjunction with an excluded event, the loss would not be
> covered. "[Policyholders' with all-risks insurance likely have
> heightened expectations because of the comprehensive
> nature of the coverage and the greater premium rates.
> These expectations would not often be given effect if
> recovery was denied whenever an exception or exclusion
> contributed to the loss." R. Fierce, Insurance Law-
> Concurrent Causation: Examination of Alternative
> Approaches, 1985 S.Ill.U.L.J. 527, 544 (1986).
>
> An example of the overbreadth of State Farm's position was
> suggested by the court in Wyatt v. Northwestern Mut. Ins.
> Co. of Seattle, 304 F. Supp. at 783, which stated:
>
> > "It seems hard to contend that the insurance
> > policy meant to exclude all earth movements,
> > for it is difficult to distinguish between a
> > situation where a piece of heavy equipment
> > breaks loose and hits a house causing serious
> > damage and a situation where that equipment
> > instead hits only an embankment next to a
> > house but causes the earth to move and
> > thereby damages the house. Certainly not all
> > earth movements, or at least those where
> > some human action causes such are included
> > in the exclusion."
>
> However, applying State Farm's interpretation of its policy to
> the fact pattern proffered by the court in Wyatt, there would
> be no coverage.  We believe such an interpretation clearly
> goes against the reasonable expectations of the parties.
>
> We agree with the court's statement in Howell v. State Farm
> Fire & Cas. Co., 218 Cal.App.3d 1446, 267 Cal. Rptr. 708
> (1st Dist.1990), that:

> "Indeed, if we were to give full effect to the
> State Farm policy language excluding
> coverage whenever an excluded peril is a
> contributing or aggravating factor in the loss,
> we would be giving insurance companies carte
> blanche to deny coverage in nearly all cases."

Murray, 509 S.E.2d at 14.

Here, as in Murray, Louisiana homeowners have heightened expectations of coverage under their "all risk" policies and, therefore, would expect coverage for losses caused by third-party negligence causing water damage to their property. Louisiana homeowners would not expect nor appreciate that their coverage would vary or depend on whether or not the cause of the loss was a natural event or a man-made occurrence. Moreover, given the fact that Louisiana is home to forty percent of the coastal wetlands in the lower 48 states and nearly twenty percent or 8,277 square miles of the states' 43,566 square miles of land area is covered by water, Louisiana all-risk policyholders would not expect or anticipate any difference in coverage simply because a third-party or man-made event caused a body of water or waterway to fail or be breached or result in flooding, thus resulting in a loss to their property.[2]  To the contrary, Louisiana all-risk policyholders have a heightened expectation of coverage with regard to damage from a man-made disruption or damage to the waterways, lakes, levees, dams and coastal areas which results in a loss to the policyholder's property.  As such, any effort to enforce third-party negligence exclusions contradicts those reasonable expectations and should be rejected by the Court.

---

[2] Data taken from the Southern Regional Water Program website, located at http://srwqis.tamu.edu/states/louisiana/watershed.aspx.

**D.    The Reasonable Expectations Of A Policyholder Is A Question
        For the Court To Determine.**

The determination of whether a contract is clear or ambiguous is a

question of law.  Louisiana Insurance Guaranty Association v. Champion Insurance

Company, 93-0911 (La. 1/14/94); 630 So.2d 759, 764, citing Watts v. Aetna Casualty

and Surety Co., 574 So.2d 364, 369 (La. App. 1st Cir.), writ denied, 568 So.2d 1089

(La. 1990).

The United States Fifth Circuit Court of Appeals in Coleman v. School Bd.

of Richland Parish, 418 F.3d 511, 517-518 (5th Cir.. 2005) addressed exclusionary

clauses and the reasonable expectations doctrine under Louisiana law as follows:

> "Exclusionary provisions must be read together with the
> entire policy, and are construed strictly against the insurer
> and in favor of coverage.  Any ambiguities within an
> exclusionary provision or the policy as a whole must be
> construed against the insurer and in favor of coverage.  To
> this end, ambiguities within an insurance policy will "be
> resolved by ascertaining how a reasonable insurance policy
> purchaser would construe the clause at the time the
> insurance contract was entered."  This rule, known as the
> "reasonable expectations doctrine," requires that a court
> construe an ambiguous insurance policy "to fulfill the
> reasonable expectations of the parties in the light of the
> customs and usages of the industry."  Courts employing this
> rule may extend coverage to meet the reasonable
> expectations of the insured, even though a close
> examination of the policy reveals that such expectations are
> in conflict with the expressed intent of the insurer."  If a
> contract term is deemed ambiguous, the interpretation or
> determination of the parties' intent must be ascertained by
> the Court.  R.J. Messenger, Inc. v. Rosenblum, 904 So.2d
> 760 (La. App. 4 Cir., 2005).  Moreover, to the extent the
> Court is required to consider extrinsic evidence in
> ascertaining the intent of the parties, such extrinsic evidence
> may relate to the reasonable expectations of the
> policyholders.  See South Central Bell Telephone Co. v. Ka-

Jon Food Stores, Inc., 644 So.2d 357, vacated on other
grounds, 644 So.2d 368 (La. 1994).

Because the "reasonable expectations" doctrine is central to the Court's interpretation of

the contract and whether the insurance policy, as written, frustrates the reasonable

expectations of the policyholder, the question of reasonable expectations is one which

must be determined by the Court.  Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas.

Co., 630 So.2d 759, 764 (La. 1994);  Breland, 550 So.2d at 610-11.

### E.    Defendants' So-Called Anti-Concurrent Causation Language Is Ambiguous And Must Be Held To Be Unenforceable Even If The Court Determines That The Water Damage Exclusion Does Not Apply To Third-Party Negligence.

If the water damage or "flood" exclusion does not apply to flooding caused

by acts of third-party negligence, then the so-called anti-concurrent causation clause

has no relevance or application to losses caused by water damage that resulted from

negligent acts of third parties.  However, because Defendants' so-called anti-concurrent

causation clauses can be used to broadly deny coverage, in toto, for losses where

water is present from other sources, such as wind-driven rain or storm surge, such

clauses must be deemed ambiguous and unenforceable to the extent they conflict with

the Hurricane Deductibles in the policies and are in direct conflict with the efficient

proximate cause doctrine which is applicable in Louisiana.

As set forth more fully in Amicus' first Brief, Defendants' so-called anti-

concurrent causation language  is flatly contrary to the "efficient proximate cause" test

that the Louisiana Supreme Court has adopted in determining whether coverage exists.

Roach-Strayhan-Holland Post No. 20, Am. Legion Club, Inc. v. Continental Ins. Co., 112

So.2d 680, 683 (La. 1959).  Succinctly stated here, if the so-called anti-concurrent

clauses are enforced, the sequence of loss or the issue of which factor was the

effective, predominant or originating is rendered, irrelevant, contrary to the "efficient

proximate cause" doctrine. Lorio v. Aetna Ins. Co., 232 So.2d 490 (La. 1970).

The ISO Defendants' policies contain so-called anti-concurrent causation

clauses which provided:

> We do not insure for loss caused directly or indirectly by any
> of the following. Such loss is excluded regardless of any
> other cause or event contributing concurrently or in any
> sequence to the loss.

(Standard Fire Policies, App. at INS 96 and INS 136; Hartford Policy, App. at INS 56;

Hanover Policy, App. at INS 9; Unitrin Policy App. at INS 171). State Farm's so-called

anti-concurrent causation language states:

> 2.    We do not insure under any coverage for loss which
> would not have occurred in the absence of one or more of
> the following excluded events. We do not insure for loss
> regardless of: (a) the cause of the excluded event; or (b)
> other causes of the loss; or (c) whether other causes acted
> concurrently or in any sequence with the excluded event to
> produce the loss; or (d) whether in the event occurs
> suddenly or gradually; involves isolated or widespread
> damage, arises from natural or external forces, or occurs as
> a result of any combination of these.

(Exhibits A and B to State Farm's Motion at pp. 10-11). A plain reading of these two

provisions makes it abundantly clear that the "coverage" Defendants seek to provide is

wholly illusory to the extent they can deny all coverage for a loss caused by a covered

peril so long as a non-covered peril was involved in any manner.

The ISO Defendants' language states that the enumerated losses, which

includes water damage, are excluded "regardless of any other cause or event

contributing concurrently or in any sequence to the loss." In other words, if water damage is at all present, any loss involving water damage is excluded "regardless" of whether a covered peril was the predominant or overwhelming cause of the loss. Taking this language one step further, to the extent this clause states "regardless of . . . any sequence to the loss," if a covered peril such as wind initially caused the loss four to five hours before one drop of rain or water became involved, the ISO Defendants could exclude the loss because of the presence of water damage at any time subsequent thereto. Under this interpretation, in order to ensure coverage a policyholder would be required to submit his claim and have it investigated and resolved in the four or five hour window following that portion of the loss caused by the covered peril but prior to the subsequent arrival of the allegedly excluded water damage. Similar absurd hypotheticals are numerous, however, the underlying point remains that under the so-called anti-concurrent causation language, the ISO Defendants would have carte blanche to deny coverage so long as the smallest and most insignificant presence of an excluded peril was present "regardless" of "any" other cause, event or sequence to the loss, including a covered peril.

State Farm's so-called anti-concurrent causation language is equally illusory. State Farm's clause initially states that it does not insure "under any coverage for loss which would not have occurred in the absence of one or more of the following excluded events." At first blush, and taken separate from the remaining terms of the clause, this language appears to have a proximate causation component to it insofar as it includes language stating the loss "would not have occurred in the absence." However, State Farm then removes any semblance of reasonableness in declaring that

it does not insure "regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether in the event occurs suddenly or gradually; involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these." It is impossible to determine exactly what State Farm will cover after all of the "regardless" clauses are read and applied. Similar to the ISO Defendants, this clause allows State Farm to fully deny coverage regardless of when, how sever or in what proportion an excluded peril was involved in the loss. As such, any coverage for covered perils is wholly illusory to the extent it may be denied in toto if a non-covered peril is at all present.

        The absurdities that would flow from Defendants' interpretation of their so-called anti-concurrent causation exclusions are readily apparent when applied to hypothetical situations involving the presence of water damage. During the August 25, 2006 hearing on Defendants' Motions, the Court identified these absurd results in the example of a plane crashing into a water tower, releasing water and causing the flooding of a dwelling. Under Defendants' theory, the water entering the dwelling would constitute a "flood" or water damage and, therefore be excluded, yielding an absurd result and no coverage even if a covered peril such as the debris or wreckage caused 99% of the damage or loss to the property. If Defendants' position regarding anti-concurrent causation is accepted and coverage may be excluded if the purportedly excluded peril of water is present or caused some portion of a loss regardless of sequence, proportionality, or causation, Louisiana homeowners might only have coverage if:

Their property was damaged by lightning, but the lightning
was not accompanied by rain;

A hurricane damaged a policyholder's home but the
hurricane was not accompanied by any rain;

The plane used in the Court's example crashed into the
water tower and damaged the policyholders' property but
only if the water tower next to the home was struck in the
crash and did not rupture; and

The weight of ice and snow on a homeowner's roof caused
damage to the roof, so long as the temperature remained
below 32 degrees so that no melting occurred and water
would not enter the premises.

The examples are never-ending, however, those cited above make it imminently clear

that the position being forwarded by Defendants in suggesting their anti-concurrent

causation clauses apply would yield absurd results in coverage and, therefore, should

not be accepted and render their policies ambiguous as a matter of law. Doerr., 774

So.2d at 124; La. Civ. Code. Art. 2053.

The very "water damage" and "anti-concurrent causation" language relied

upon by Defendants here has already been held to be ambiguous as a matter of law in

Tuepker v. State Farm Fire and Cas. Co., 2006 WL 1442489 (S. D. Miss.).  Recently,

Judge Senter affirmed his determination of such ambiguity in Leonard v. Nationwide

Mutual Ins. Co., 438 F.Supp.2d 684 (S.D. Miss. 2006), stating that enforcement of such

anti-concurrent causation language:

> would mean that an insured whose dwelling lost its roof in
> high winds and at the same time suffered an incursion of
> even an inch of water could recover nothing under his
> Nationwide policy. Read literally, this provision would
> exclude all coverage when a windstorm did damage to both
> an insured dwelling (a covered loss) and adjacent "screens,
> including their supports, around a pool, patio, or other

> areas." (an excluded loss). I do not believe this is a
> reasonable interpretation of the policy.

Leonard, 2006 WL 2353961 at *7. Thus it is clear that the inconsistencies and illusory

coverage that would result from the application of these so-called anti-concurrent

causation clauses renders them ambiguous as a matter of law and unenforceable. For

all of these reasons, the Court should find these so-called anti-concurrent causation

clauses to be ambiguous as a matter of law regardless of whether the Court also finds

that the water damage exclusion does not apply to third-party negligence.

### F.   Any Flood Caused By Third-Party Negligence Would Be An "Ensuing Loss" And Covered Under the ISO Defendants' Policies.[3]

If the Court finds that the water damage or "flood" exclusion does not

apply to third-party negligence, then any flooding which occurred as a result of such

third-party negligence would be covered under the express language of the policy

providing coverage for ensuing losses. The ISO Defendants policy provides:

> 2.   We do not insure for loss to property descried in
> Coverages A and B caused by any of the following.
> However, any ensuing loss to property described in
> Coverages A and B not excluded or excepted in this policy is
> covered;
>
> a.   Weather Conditions. However, this exclusion only
> applies if weather conditions contribute in any way with a
> cause or event excluded in paragraph 1. above to produce
> the loss;
>
> b.   Acts or decisions, including the failure to act or
> decide, or any person, group, organization or governmental
> body;

---

[3] Insofar as Items Nos. 6 and 7 in the Court's Order requested briefing regarding "Section I Exclusions, No.2," that section is contained in the ISO Defendants' policies and is materially different from the language contained in State Farm's policy.

    c.    Faulty inadequate or defective:

        (1) Planning, zoning, development, surveying, siting;

        (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        (3) Materials used in repair, construction, renovation or remodeling; or

        (4) Maintenance;

        of part or all of any property whether on or off the residence premises.

(Standard Fire Policies, App. at INS 96 and INS 136; Hartford Policy, App. at INS 56; Hanover Policy, App. at INS 9; Unitrin Policy App. at INS 171).

        First, the "Weather Conditions" provision cited above was held by the Court in Leonard to be ambiguous insofar as it "would make the windstorm protection illusory for those who live in areas where the risk of flooding is greatest." Leonard, 438 F. Supp. 2d 694. Once again the completely ambiguous and illusory nature of Defendants' policies is apparent, thus requiring the Court to hold the policies and this exclusion ambiguous as a matter of law in the context of hurricane-related losses. Consequently, this entire policy provision must be determined ambiguous and unenforceable as a matter of law because it would make coverage for windstorm or other covered perils wholly illusory.

        Second. if the water damage exclusion is found to be inapplicable to third-party negligence, then any flooding caused by such third-party negligence is an "ensuing loss" which is covered under the policy. The policies covers all "ensuing losses" not otherwise excluded. As set forth in Amicus' initial Brief, the term "flood" is

not defined in Defendants water exclusions and, therefore, the release of water from the failed or ruptured levees is not specifically excluded by any provision in the Defendants' all-risk policies.  Consequently, because the rupturing of levees does not fall within the water damage exclusion and is not excluded under any other policy provision, the inundation of water from third-party negligence is not excluded."[4]

**G.**     **As Used In Section I, Exclusions No. 2 The Term "Property" Is Undefined, Ambiguous And Therefore Cannot Be Interpreted As A Matter Of Law To Include Property That Is Not Insured And Not On The Residence Premises**

Finally, the word "property," as used in that part of Section I, Exclusions No. 2 which states "of any part of all of any property whether on or off the residence premises," is limited to property that is insured but is simply not located upon the "residence premises."  The only reasonable interpretation of that language that would not render coverage wholly and illusory is that the undefined term "property" refers only to property that is insured and not to any and all other property existing in the world.

The relevant language of the ISO Defendants' policies states:

> 2.     We do not insure for loss to property descried in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered;

---

[4] The "ensuing loss" clause in the ISO policies is ambiguous and renders coverage wholly illusory.  The clause purports to provide coverage for losses not excluded or excepted by the policy, however the policy subsequently excludes losses caused by weather conditions, acts or decisions and negligence of third parties which would allow the Insurance Company Defendants to broadly exclude any and all losses involving such excluded acts.  Thus, while the "ensuing loss" provision purports to "give back" coverage to the policyholder, the broad exclusions to which it is subject renders the actual coverage under the all-risk policy virtually non-existent, illusory and would lead to the very type of absurd results that render this provisio ambiguous as a matter of law.

a. Weather Conditions.  However, this exclusion only applies
if weather conditions contribute in any way with a cause or
event excluded in paragraph 1. above to produce the loss;

b.      Acts or decisions, including the failure to act or
decide, or any person, group, organization or governmental
body;

c.      Faulty inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair,
construction, renovation, remodeling, grading,
compaction;

(3) Materials used in repair, construction, renovation
or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the
residence premises.

(Standard Fire Policies, App. at INS 96 and INS 136; Hartford Policy, App. at INS 56;

Hanover Policy, App. at INS 9; Unitrin Policy App. at INS 171).  Nowhere in the relevant

portion of the ISO Defendants' policies is the term "property" defined in any manner

and, once again, Defendants are attempting an after-the-fact definition of the term in an

effort to seek broad exclusions of coverage, an interpretation which must be rejected

under Louisiana rules of construction.  Cadwallader, 848 So.2d at 580.


Defendants' proposed interpretation, whereby any and all property

whatsoever would be subject to this exclusion, must also be rejected because of the

absurd and inequitable results which would follow.  As the Court itself noted in the

August 25, 2006 argument in this matter, if the term "property" as used in Section I,

Exclusions No. 2 is interpreted to include any and all property belonging to any third-

party, the Insurance Companies would have unfettered discretion to deny coverage

under this exclusion whenever a loss was caused by or involved "faulty, inadequate or defective" property belonging to a third-party. The results of such an overbroad interpretations would be absurd: If a car crashed into the policyholders' house as a result of faulty brakes, coverage would be denied. If a plane crashed into a home as a result of a defect in the plane, coverage would be denied. If the chimney of the home next door collapsed because it was inadequately constructed and landed on the policyholders' home, coverage would be denied. The Insurance Companies could simply point to a defect, flaw or faulty design of wholly unrelated property in order to deny coverage.

Additionally, the "third-party negligence" provisions relied upon by Defendants were originally intended, and have been applied, to exclude from coverage damage or losses to the residence premises caused by third-parties performing work, construction or other repairs to the premises where such losses occurred during the performance of such work. See Ellworthy v. Hawkeye-Security Ins. Co., 2006 WL 246481 (applying the "faulty workmanship" exclusion to a loss resulting from damage to floors caused by a remodeling contractor's use of faulty materials). This type of exclusion was not designed or intended to exclude first-party coverage like the type sought by the Vanderbrook plaintiffs, but rather only sought to exclude coverage for losses for which the policyholder had a third-party claim. Consequently, because the interpretation suggested by Defendants would yield such absurd results, the provision is ambiguous and the Court must interpret this provision in favor of the policyholder and in a manner that will effect coverage. Doerr, 774 So.2d at 124. Moreover, because this provision is an equivocal term under which the Insurance Company Defendants seek to

narrow their obligations, it must be "strictly construed against the insurer." Cadwallader, 848 So.2d at 580.

Finally, many of the issues raised by the Court in its August 25, 2006 Order and addressed by this Supplemental Memorandum raise issues of fact that require extrinsic evidence including, but not limited to, custom and usage, claims and underwriting manuals, and prior interpretations and applications of these policy provision by the Defendants. Because such extrinsic evidence is required to resolve and interpret these ambiguous policy provisions, Defendants are simply not entitled to judgment as a matter of law at this time and the Vanderbrook Plaintiffs are entitled to conduct discovery regarding these and other issues. Doerr, 774 So.2d at 129-32; South Central Bell Telephone Co., 644 So.2d 357. Accordingly, Defendants' Motions should be denied.

## III.   CONCLUSION

For the aforementioned reasons, this Court should deny Defendants' Motions for Judgment on the Pleadings.

Respectfully Submitted,

Anderson Kill & Olick, P.C.

__/s/ John N. Ellison_____
John N. Ellison, Esq.
Darin J. McMullen, Esq.
1600 Market Street
Suite 2500
Philadelphia, PA  19103
Telephone: 215-568-4202
Facsimile:  215-568-4375

Attorneys for Amicus Curiae

Ranier, Gayle & Elliot, L.L.C.

_____

Drew Ranier, Esq.
1419 Ryan Street
P.O. Box 1890
Lake Charles, Louisiana 70602-1890
Attorneys for Amicus Curiae