UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Colleen Berthelot, et al                    No. 05-CV-4182

Versus                                       Section "K" (2)
                                             Cons. Katrina Canal
Boh Brothers Construction Co., L.LC., et al

THIS DOCUMENT RELATES TO:
    INSURER DEFENDANTS
    05-6323 "K" VANDERBROOK

Filed: _____                       Clerk: _____

### SUPPLEMENTAL BRIEF OF PLAINTIFFS
### IN RESPONSE TO AUGUST 28, 2006 ORDER

NOW INTO COURT, through undersigned counsel, come the *Vanderbrook* plaintiffs who submit this breif in response to the order of August 28, 2006. The Vanderbrook plaintiffs will address each point specified by the court in turn below.

1. **Is the flood exclusion ambiguous? Specifically, does the exclusion clearly refer to floods caused by third-party negligence?**

The Plaintiffs submit that the exclusion is ambiguous, as the word "flood" is therefore not defined and is susceptible to various interpretations. Additionally, the exclusion does not clearly refer to floods caused by third-party negligence.

When the language of a policy is clear and not ambiguous, the insurance contract must be enforced as written. When the wording is clear, the courts lack the authority to alter or change the terms of the policy under the guise of interpretation. *Louisiana Insurance Guaranty Association v. Interstate Fire Casualty Company*, 93-0911 (La.1/14/94), 630 So.2d 759. In interpreting insurance contracts the judicial responsibility is to determine the parties' common

intent. Such intent is to be determined according to the ordinary, plain and popular meaning of words used in a policy. La. C.C. arts. 2045 and 2047; *Breland v. Schilling*, 550 So.2d 609 (La.1989); *Michelet v. Scheuring Sec. Services Inc.*, 95-2196 (La.App. 4 Cir. 9/4/96), 680 So.2d 140, 147.

However, when the terms (and exclusions) of an insurance contract are vague or ambiguous, any ambiguities are construed to provide coverage to the insured under Louisiana law. *Carrier v. Reliance Ins. Co.*, 99-2573, p. 12 (La.4/11/00), 759 So.2d 37, 44; *Garcia v. St. Bernard Parish School Bd.*, 576 So.2d 975, 976 (La.1991). A policy provision is ambiguous if it has more than one reasonable interpretation. *Id.* However, an insurance contract should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms to achieve an absurd conclusion. *Edwards v. Daugherty*, 03-2103, p. 12 (La.10/1/04), 883 So.2d 932, 941, *citing*, *Cadwallader v. Allstate Ins. Co.*, 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580; *Carrier v. Reliance Ins. Co.*, 99-2573, p. 11 (La.4/11/00), 759 So.2d 37, 43; *Peterson v. Schimek*, 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1029.

The policies issued by Standard Fire, Hartford, Hanover, and Unitrin all contain the following language:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> c. Water Damage, meaning:
> (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

The State Farm policy uses "Water damage, meaning: (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, all whether driven by wind or not;"

As noted, neither exclusion defines the word "flood". Further, it is understood that a homeowner's policy and the NFIP policy dovetail to provide a homeowner complete coverage as to water damage, such that the loss will be covered by either the homeowner's policy or the NFIP policy.

The definition of "flood" in the National Flood Insurance Program does not include floods caused by third-party fault. A review of the language indicates that "flood" for purposes of the NFIP may well be limited to naturally occurring events:

> Flood or Flooding means:
> (a) A general and temporary condition of partial or complete inundation of normally dry land areas from:
>   (1) The overflow of inland or tidal waters.
>   (2) The unusual and rapid accumulation or runoff of surface waters from any source.
>   (3) Mudslides (i.e., mudflows) which are proximately caused by flooding as defined in paragraph (a)(2) of this definition and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water and deposited along the path of the current.
> (b) The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels or suddenly caused by an unusually high water level in a natural body of water, accompanied by a severe storm, or by an unanticipated force of nature, such as flash flood or an abnormal tidal surge, or by some similarly unusual and unforeseeable event which results in flooding as defined in paragraph (a)(1) of this definition.

44 CFR 59.1. the NFIP, by definition, would not apply during third party fault situations.

3

In *Riche v. State Farm Fire and Casualty Company*, 356 So.2d 101 (La.App. 1st Cir. 1978), *writ denied*, 358 So.2d 639 (La. 1978), the court of appeal reversed the trial court and found that a loss suffered during a storm on a lake was not excluded by the water or flood provisions of the insurance policy. The exclusion in the policy in *Riche* was similar to the exclusions raised by the defendants here, and read in pertinent part:

This policy does not insure against loss:

3. Caused by, resulting from, contributed to or aggravated by any of the following:

(a) Flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not . . .

*Riche*, 356 So.2d at 103. The *Riche* court specifically held that "[t]his exclusion, when read as a whole, contemplates only such damage caused by water <u>which has risen over and covered areas not ordinarily covered by water</u>. We find that damage caused by windstorm (or resulting waves) over a body of water, such as a lake or reservoir, does not come within the scope of this exclusion. This interpretation is in line with the rule of construction that exclusionary clauses are strictly construed. See *Bezue v. Hartford Accident and Indemnity Company, Hartford, Connecticut*, 224 So.2d 76 (La.App. 1 Cir. 1969)." (emphasis added). The Louisiana Supreme Court denied writs in *Riche*. 358 So.2d 639 (La. 1978). Thus, the case still provides valid guidance to this Court. The interpretation in *Riche* of the exclusion does not include third party fault.

In *Lee v. Unum Life Insurance Company Of America*, 900 So.2d 1021, 2004-1483 (La.App. 4 Cir. 3/30/05), the Court found that an insured was entitled to benefits under a disability policy, as the exclusionary clause in the policy concerning losses "caused by or aggravated by any employment" was ambiguous and vague and thus could not be applied where

4

the insured was injured while in course of her employment (driving a bus) in accident caused by third party negligence. The same result would follow here.

2.  **In the event that third party negligence is excluded with respect to any event causing a flood-i.e., a plane crashing into a water tower causing flooding of a dwelling, is such a result a "reasonable expectation" of a policy holder?**

Absolutely not. The law is clear that the rule of strict construction requires that ambiguous policy provisions be construed against the insurer who issued the policy and in favor of coverage to the insured. *Smith v. Matthews*, 611 So.2d 1377, 1379 (La.1993) (citing *Breland v. Schilling*, 550 So.2d 609, 610-11 (La.1989)). Under this rule, "[e]quivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured had no voice in the preparation." *Garcia v. St. Bernard Parish School Board*, 576 So.2d 975, 976 (La.1991). LSA-C.C. Art.2056 codifies this rule of strict construction, providing that "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." LSA-C.C. Art.2056; *Civil Law Treatise, supra* § 4; *see also* W. Freedman, 2 *Richards on the Law of Insurance* § 11:2[f] (6th Ed.1990) ("*Richards* ") (noting that the rule of strict construction is also labeled the doctrine of contra proferentum).

"Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Breland v. Schilling*, 550 So.2d 609, 610-11 (La.1989). The court should construe the policy "to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry." *Trinity Industries*, 916 F.2d at 269 (5th Cir.1990) (citing *Benton*, 379 So.2d at 231 and LSA-C.C.

Arts.2045, 2050, 2053 and 2054). In insurance parlance, this is labeled the reasonable expectations doctrine. *Richards, supra* at § 11:2[g].

The reasonable expectations doctrine can be capsulized as follows: "courts will protect the [insured's] reasonable expectations ... regarding the coverage afforded by insurance contracts even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." *R. Keeton and A. Widiss, Insurance Law* § 6.13 (1988).

The reasonable expectations of the parties are important in considering the scope of coverage provided in insurance contracts because such contracts, largely adhesive in nature, often contain boilerplate terms that are not bargained for, not read, and not understood by the insureds. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 395 (Ariz. 1984); see R. Keeton & A. Widiss, *Insurance Law: A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices* § 5.5, at 559, 563 (1988) (courts are increasingly resolving issues of causation involving insurance policy terms by considering scope of coverage in terms of protecting insured's reasonable expectations); Appleman, supra § 4500, at 179-80 (concurrent coverage exists where coverage of risk that exists independently of use of motor vehicle is reasonably contemplated by parties). Therefore, in determining the reasonable expectations of the parties to an insurance contract, a court must consider the policy in its entirety with an eye toward its general purpose. *See Darner Motors Sales*, 682 P.2d at 398 (under reasonable-expectation rule, no effect is given to boilerplate terms that are contrary to purpose of transaction as known to contracting parties); *Salem Group v. Oliver*, 590 A.2d 1194, 1197 (N.J. Super. Ct. App. Div. 1991) (when construing insurance policies, courts must search for reasonable expectations of parties in keeping with express general purposes of policy).

Should a driver of a car negligently strike a tree, and the tree fall onto and damage insured property, that loss would clearly be covered by the homeowner's policy. It would not be a reasonable expectation for the policy holder that he would not have coverage under his policy if the driver missed the tree and instead struck a water tank, which ruptured and flooded the insured's house. That distinction does not comply with the general purposes of the policy, and would not be within the reasonable expectations of a policy holder.

3.  **If the Court should find the flood exclusion to be ambiguous, would the question of whether a policy holder had a reasonable expectation of coverage go to a jury or does it remain a question of law?**

The issue of the reasonable expectation of the policy holder would be an issue of fact that should be determined by a jury. The case law is clear that, even in the context of a contract dispute such as this, "intent is an issue of fact which is to be inferred from all the surrounding circumstances." *Taylor v. Brandner*, 928 so.2d 751, (La.App. 5 Cir. 4/25/06); *Brennan v Brennan*, 924 So.2d 1067 (La.App. 5 Cir. 2/27/06).

In *Dixon v. First Premium Insurance Group*, 934 So.2d 134, 2005-0988 (La.App. 1 Cir. 3/29/06), the Court noted that it considered the expectations of the insured as an issue of fact: "In an unpublished opinion ("Dixon 1") rendered on December 31, 2003, this court concluded there were material issues of fact remaining as to Charter's liability and whether the Copenhagen policy provided coverage. Accordingly, we reversed the summary judgment and remanded for further proceedings."

As the reasonable expectation of the insured is tantamount to his intentions when purchasing the policy, the issue is one that must be determined by a jury.

4.  Is the anti-concurrent clause applicable if the flood exclusion does not apply to third-party negligence? In other words, if the flood exclusion does not apply to flooding caused by third-party negligence, is the anti-concurrent cause provision irrelevant?

By its own terms, the anti-concurrent clause becomes of no moment if the flood exclusion does not apply to third-party negligence. The policy provides in pertinent part:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> c. Water Damage, meaning:
>
> (1)  Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

On its face, the clause applies when an insured risk combines with an excluded risk to produce the ultimate injury. If third-party fault does not trigger the flood exclusion, then there would be no excluded risk combined with an insured risk.

5.  **Is the anti-concurrent clause ambiguous? Specifically, because the definition of loss is not defined, could an insurer deny coverage *in toto* for a covered peril-i.e., wind- when a dwelling is also damaged by flood waters. Each side should incisively analyze the language of the exclusion in briefing this issue.**

Yes, the anti-concurrent clause is ambiguous, in that the clause purports to take away coverage provided elsewhere in the policy. The language reads:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> c. Water Damage, meaning:
>
> (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

The State Farm version is similar, in that it reads "We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these: . . ."

It must be noted that the clause is *cause* driven, not *effect* driven. The fact that the word "loss" is not defined obviously inures against the carrier. The carriers can not now expand "loss" to include any and all damage to a home, instead of just that damage caused directly by a covered event versus an excluded event. Thus, they can not deny coverage for extensive wind damage to a house only because 2 inches of flood water made it into the house as well.

This clause has already been found by two United States District Judges in parallel litigation in Mississippi:

> The provisions of the Nationwide policy that purport to exclude coverage entirely for damages caused by a combination of the effects of water (an excluded loss) and damage caused by the effects of wind (a covered loss) are ambiguous;

\* \* \*

> Read literally, this provision would exclude any otherwise covered loss, e.g. windstorm damage, in any circumstance where "weather conditions," i.e. the windstorm, combined with an excluded cause of loss, e.g. flooding, to damage the insured property. This reading of the policy would mean that an insured whose dwelling lost its roof in high winds and at the same time suffered an incursion of even an inch of water could recover nothing under his Nationwide policy. Read literally, this provision would exclude all coverage when a windstorm did damage to both an insured dwelling (a covered loss) and adjacent "screens, including their supports, around a pool, patio, or other areas." (an excluded loss). I do not believe this is a reasonable interpretation of the policy.

9

*Leonard v. Nationwide Mutual Insurance Company*, 05-cv-475, (S.D. Miss. August 16, 2006) (Judge Senter); *see also Tuepker v. State Farm Fire & Casualty Co.*, 05-cv-559, 2006 WL 1442489 (S.D. Miss. May 24, 2006).

However, even if the clause did apply, an insurer could not deny coverage *in toto*, but the court must apportion the cause of the loss. In *United States Rubber Company v. Cox*, 207 So.2d 814 (La.App. 4 Cir. 1968) the Court found that coverage was owed for wind damage to a business during Hurricane Betsy, even though flood water eventually entered the building and caused damage. In *Urrate v. Argonaut Great Central Insurance Company*, 881 So.2d 787 (La.App. 5 Cir. 8/31/04), the Court found that the carrier was liable for the 25% of the loss which was attributable to wind rather than the flooding to Brunings Seafood Restaurant, which was built over Lake Pontchartrain and damaged by Hurricane Georges and part of building swept away.

It must be noted, though, that the insurer defendants do not appear to be arguing that they may deny coverage *in toto* by way of the clause. State Farm states that it "does not contend here that there is no coverage for discrete damages caused by wind to its insureds' property because that property also suffered flood damage, but simply that flood damage is excluded even if a levee breach was in the chain of causation leading up to the flood." *Original Memorandum In Support of Motion to Dismiss*, n.21, p. 15. The other insurers appear to take the same position, as they limit the effect of the water exclusion to water damage only, not all damage: "By virtue of the exclusion's anti-concurrent causation clause, damage caused by flood, surface water or overflow of a body of water is not covered regardless of other factors that may be within the chain of causation." *Memorandum*, p.15. They never posit that the exclusion extends to all damages.

6.     With respect to Section I Exclusions, No. 2, if the Court finds the flood exclusion not applicable to third party negligence, would a flood occurring because of such third party negligence be an "ensuing loss" and thereby covered?

Yes. The clear language of the policy obligates the carriers to pay for **all** losses that are not otherwise excluded or excepted:

> 2. We do not insure for loss to property described in Coverages A and B caused by any of the following. **However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.**
>
>     a. weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1, above to produce the loss;
>     b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;
>     c. faulty, inadequate or defective:
>         (1) Planning, zoning, development, surveying, siting;
>         (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>         (3) Materials used in repair, construction, renovation, or remodeling; or
>         (4) Maintenance;
>
> of part or all of any property whether on or off the "residence premises."

This is simply a matter of contract interpretation, albeit driven in part by a finding by the Court that third-party negligence is not excluded by the policy.

7.     Since the policy includes coverage for property "not on the residence premises", is the "property" referred to in Section I Exclusions, No. 2, e.g. "of part or all of any property whether on or off the residence premises," limited to property which may be insured but is not located upon "residence premises."

Yes, this would be limited to insured property. It must be noted that the phrase "of part or all of any property whether on or off the residence premises" is included only in subsection "c" of Exclusion No. 2, and is limited to those 4 "Faulty, inadequate, or defective" items

11

described in the subsection. Again, though, the policy fails to define a key word – "property". The policy also specifies elsewhere that an insurable interest is necessary required to be had in the property covered by the policy (Section I Conditions, No. 1).

Reading these together in light of the rule that "[e]quivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured had no voice in the preparation." *Garcia v. St. Bernard Parish School Board*, 576 So.2d 975, 976 (La.1991), the "property" referred to in the Exclusion No. 2 must be an insured (or at least insurable by the insured) property under the policy. Allowing any other reading would so greatly expand the exclusion that virtually all third-party negligence would be excluded.

Respectfully submitted,

Robert Harvey, #18615
2609 Canal Street
New Orleans, Louisiana 70119
504-822-2136
504-822-2179 *fax*
Attorney for *Vanderbrook* Plaintiffs

### Certificate of Service

I hereby certify that a copy of this document has been forwarded to all counsel of record and unrepresented parties by proper electronic means or by depositing same postage prepaid in the United States mail, this 11 day of _____, 2006.