

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 SEP 11  PM 4: 04

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO.  05-4182 "K"(2) |
| | * | JUDGE DUVAL |
| | * | MAG. WILKINSON |
| | * | |
| PERTAINS TO | * | |
| INSURANCE (2:05-cv-06323) Vanderbrook | * | |
| | * | |

**STATE FARM FIRE AND CASUALTY COMPANY'S
POST-HEARING MEMORANDUM IN SUPPORT OF RULE 12 MOTION**

____ Fee_____
____ Process_____
_X_ Dktd _____
_✓_ CtRmDep_____
____ Doc. No_____

828097v.1

## TABLE OF CONTENTS

I. INTRODUCTORY STATEMENT ........................................................................1

II. RESPONSES TO COURT'S QUESTIONS ..........................................................3

    Question No. 1:  Is the flood exclusion ambiguous?  Specifically, does the exclusion clearly refer to floods caused by third-party negligence? ...............................3

    Question No. 2:  In the event that third-party negligence is excluded with respect to any event causing a flood–i.e. a plane crashing into a water tower causing flooding of a dwelling, is such a result a "reasonable expectation" of a policy holder? ................................................................................7

      A.  The State Farm Policy Unambiguously Excludes Coverage for Flood. ...........................7

      B.  A Reasonable Person Living in the New Orleans Area Would Not Expect Flood Coverage Under a Homeowners Policy. ..........................................................................9

      C.  Given the Existence of the National Flood Insurance Program, a Policyholder Would Have No Reasonable Expectation that Flood Damage Caused by Hurricane Katrina Would be Covered by the State Farm Homeowners Policy. ............10

    Question No. 3:  If the Court should find the flood exclusion to be ambiguous, would the question of whether a policy holder had a reasonable expectation of coverage go to a jury or does it remain a question of law?....12

    Question No. 4:  Is the anti-concurrent clause applicable if the flood exclusion does not apply to third-party negligence?  In other words, if the flood exclusion does not apply to flooding caused by third-party negligence, is the anti-concurrent cause provision irrelevant? ...................................................14

    Question No. 5:  Is the anti-concurrent clause ambiguous?  Specifically, because the definition of loss is not defined, could an insurer deny coverage in toto for a covered peril—i.e. wind—when a dwelling is also damaged by flood waters? ...........................................................................................16

    Question No. 6:  With respect to Section I Exclusions, No. 2, if the Court finds the flood exclusion not applicable to third-party negligence, would a flood occurring because of such third-party negligence be an "ensuing loss" and thereby covered? ....................................................................................19

    Question No. 7:  Since the policy includes coverage for property "not on the residence premises", is the "property" referred to in Section I Exclusions, No. 2, e.g. "of part or all of any property whether on or off the residence premises," limited to property which may be insured but is not located upon "residence premises." ....................................................................................................21

III. A POSTSCRIPT ON *MURRAY V. STATE FARM* ...............................................24

IV. CONCLUSION ...............................................................................................25

828097v.1

## I.    INTRODUCTORY STATEMENT

In Louisiana, the words of an insurance policy must control so long as they are "clear and explicit and lead to no absurd consequences." La. Civil Code art. 2046. "Unless a limitation of liability conflicts with public policy or statutory law, insurers have the same rights as individuals to limit their liability and obligations." *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 569 So. 2d 120, 122 (La. App. 1st Cir. 1990), *aff'd*, 579 So. 2d 981 (La. 1991). Accordingly, "[u]nambiguous provisions in an insurance policy limiting liability must be given effect." *Id.*

In light of these established principles, any answer to the Court's questions must begin with an analysis of the policy language itself. Thus, before responding specifically to the Court's questions, State Farm provides the Court with a brief overview of four key policy provisions found in the Section I – Losses Not Insured section of its homeowners policy:[1] (1) the "Water Damage" exclusion[2] (Section I – Losses Not Insured, ¶ 2.c); (2) the "anti-concurrent cause" preface to the "paragraph 2" exclusions (*id.*, ¶ 2); (3) the "acts or omissions" exclusion (*id.*, ¶¶ 3.a & 3.b); and (4) the "resulting loss" language of the "paragraph 3" exclusions (*id.*, ¶ 3, last paragraph). *See* Ex. A, pp. 10-11.

The Water Damage exclusion is found in paragraph 2 of the Section I – Losses Not Insured section of the policy and specifically applies to flood, among other perils. By virtue of the "anti-concurrent cause" preface, or "lead-in," to the paragraph 2 exclusions, the policy specifically excludes any loss that would not have occurred "in the absence of" flood. Thus, without going further, a loss to which flood is a contributing cause is excluded by the clear and

---

[1]    True copies of the State Farm homeowners policies issued to Plaintiffs Silva and Harvey are attached as Exhibits A and B, respectively, to State Farm's Memorandum in Support of Motion for Judgment on the Pleadings in this action ("SF Mem."). The relevant exclusionary language is found at pages 10-11. For the Court's convenience, a copy of the Harvey policy is attached to this memorandum as Exhibit A.

[2]    Although several of the Court's questions are framed in terms of the "flood exclusion," the State Farm policy does not contain a separate "flood" exclusion. Rather, the Water Damage exclusion applies to "flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not[.]" For convenience, State Farm uses the term "flood" throughout this brief.

explicit language of the policy because a loss caused *in part by* flood could not have occurred *in the absence of* flood.

This conclusion is bolstered by the second sentence of the lead-in language, which states that no coverage exists for a loss caused in part by flood "regardless of": "the cause of" the flood, "other causes of the loss," "whether other causes acted concurrently or in any sequence" with the flood "to produce the loss," or whether the flood "occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these." In other words, the Water Damage exclusion applies if flood is a contributing cause of the loss, despite the fact that some other peril (covered or not) may have caused the flood or may have operated in combination with the flood to cause the loss.[3]

In addition to the clear and explicit terms of the Water Damage exclusion itself, the policy specifically excludes "third-party negligence" when such negligence causes a flood or combines with flood to cause damage. The "acts or omissions" exclusion,[4] set out in paragraph 3 of the Section I – Losses Not Insured, states that the policy does not cover "loss described in paragraphs 1. and 2." (which includes flood), "regardless of whether one or more" of the enumerated items "(a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss." Thus, restated in terms relevant to the present dispute, the acts or omissions exclusion provides that a loss caused in part by flood (a "loss described in paragraph 2") is not covered, "regardless of whether" third-party negligence "directly or indirectly cause[s], contribute[s] to or aggravate[s]" the loss, or contributes to or causes the flood (i.e., "occur[s] before . . . the loss or any cause of loss").

---

[3]   As discussed in Response to Question No. 5, discrete damage caused by a covered peril, such as wind, would be covered, whether the damage occurred before, at the same time as, or after the excluded flood damage.

[4]   The exclusion includes, but is not limited to, negligent acts or omissions. Because the Court's questions focus on the effect of third-party negligence, State Farm will use that terminology in this brief.

828097v.1

By its terms, the acts or omissions exclusion in paragraph 3 applies only when one of the items listed in the exclusion combines with one of the specifically excluded perils (such as flood) to cause a loss. The exclusion thus ensures that the policy exclusions cannot be circumvented by an allegation that a loss was caused in part by third-party negligence.[5] The effect of the exclusion is thus to exclude losses caused by "third-party negligence" in those situations – but only in those situations – in which the loss is *otherwise specifically excluded.* To ensure that the exclusion is appropriately confined, it is subject to a "resulting loss" (or "ensuing loss") exception, which provides that any loss caused by third-party negligence is covered ("we do insure for any resulting loss from items a. [and] b.") *unless* that resulting loss is itself specifically excluded (i.e., "a Loss Not Insured"). Thus, for example, if third-party negligence causes a fire that damages the insured's home, the resulting loss is *covered* because fire is not excluded by the Losses Not Insured section of the policy. By contrast, if third-party negligence causes a flood that damages the insured's home, the resulting loss is *excluded* because flood is specifically excluded in paragraph 2.c.

## II.     RESPONSES TO COURT'S QUESTIONS

In light of the basic framework set out above, State Farm responds as follows to the Court's specific questions:

**Question No. 1:** **Is the flood exclusion ambiguous?  Specifically, does the exclusion clearly refer to floods caused by third-party negligence?**

**Response:** **The Water Damage exclusion is not ambiguous.  Because the exclusion specifically applies to all losses caused by flood, regardless of the cause of the flood, it necessarily refers to floods caused by third-party negligence.**

---

[5]  The acts or omissions exclusion was added to the policy to affirmatively state that third-party negligence *is not* a covered peril when it operates with an otherwise excluded peril.  One reason for this was to address situations in which parties and courts sought to circumvent the exclusions by recharacterizing a loss as one caused by some form of third-party fault.  *See, e.g., Chadwick v. Fire Ins. Exch.*, 21 Cal. Rptr. 2d 871, 874 (Ct. App. 1993) (seeking to avoid application of "latent defect" exclusion to loss caused by defective framing by characterizing loss as result of "builder negligence": "To say builder negligence 'caused' the defective framing is, in this context, to indulge in misleading wordplay, akin perhaps to saying a murderer's malice aforethought 'caused' the killing.").  Thus, even if negligence caused the flood, the damage is excluded because flood is excluded.

> **Moreover, third-party negligence that causes or combines with flood is expressly excluded by the "acts or omissions" exclusion.**

State Farm's Water Damage exclusion has consistently been held to be unambiguous. *See, e.g., Eaker v. State Farm Fire & Cas. Ins. Co.,* 216 F. Supp. 2d 606, 608-10, 622 (S.D. Miss. 2001) (Water Damage exclusion "clearly exclude[d]" insureds' claim for settlement and foundation damage caused by flood waters accompanying Hurricane Georges). *See also* SF Mem., Ex. C (compiling cases enforcing water damage exclusions).

The policy's listing of excluded water perils, examined in isolation, does not define the term "flood" or expressly state whether that term includes only floods caused by natural causes or also includes floods caused by third-party negligence. However, the term "flood" must be read in accordance with generally prevailing usage, which encompasses flooding caused by third-party negligence. Moreover, as discussed below, other policy language, which specifically addresses causation in the context of excluded perils, places it beyond dispute that the excluded peril "flood" means flood whatever the cause and includes both natural flooding and flooding caused in whole or in part by third-party negligence.

Under Louisiana law, an undefined term in an insurance policy (such as "flood") must be given its "generally prevailing meaning." *See* La. Civil. Code art. 2047. Courts have consistently found the term "flood" to mean "[w]ater which inundates [an] area of surface of earth where it ordinarily would not be expected to be."[6] As courts, commentators and dictionaries make clear, the term includes all types of floods, whether from naturally occurring or man-made forces, specifically including flooding caused by failures of man-made structures such as levees and dikes. *See, e.g., Kane,* 768 P.2d at 680-81, 683-84 (flood damage resulting from dam failure allegedly caused by third-party negligence held excluded; the term "flood" is

---

[6] *Whitt v. State Farm Fire & Cas. Co.,* 734 N.E.2d 911, 914 (Ill. App. Ct. 2000) (quoting *Black's Law Dictionary* 640 (6th ed. 1990)); *Kane v. Royal Ins. Co. of Am.,* 768 P.2d 678, 679-81 (Colo. 1989) (en banc).

828097v.1

unambiguous and includes "both naturally and artificially caused floods"); *Bartlett v. Continental Divide Ins. Co.*, 697 P.2d 412, 413-14 (Colo. App. 1984) (loss resulting from dam failure held excluded; "ordinary" meaning of term "flood" was not ambiguous and makes "no distinction . . . between natural and artificial causes"), *aff'd*, 730 P.2d 308 (Colo. 1986); *E.B. Metal & Rubber Indus., Inc. v. Fed. Ins. Co.*, 444 N.Y.S.2d 321, 321-22 (App. Div. 1981) (flood exclusion applied to loss caused by inundation resulting from failure of negligently constructed and maintained dike; "[a]ll the policy requires is that there be rising waters which break through boundaries and flow upon the insured's land to constitute a flood. It is irrelevant that a defect in the dike may also have contributed to the break.").

Moreover, even if the word "flood" as used in the Water Damage exclusion did not itself clearly and unambiguously include all floods, whether naturally occurring or caused in whole or in part by third-party negligence, the exclusion must be construed as part of the policy as a whole and in light of the policy's other provisions. La. Civil Code art. 2050; *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 985 (La. 1991). In State Farm's policy, the Water Damage exclusion is introduced by anti-concurrent cause language. The Water Damage exclusion is also referenced in the policy's "acts or omissions" provision, which specifically addresses third-party negligence. The most cursory analysis of the policy language and these two provisions makes plain that the Water Damage exclusion necessarily encompasses floods caused by third-party negligence.

First, the anti-concurrent cause language expressly excludes coverage for "any loss" that would not have occurred in the absence of flood, "regardless of the cause of" the flood. Given this language, it does not matter whether the flood was caused by natural causes, third-party

- 5 -

negligence, or some combination of the two – *all* loss caused in whole or in part by flood is excluded, whatever the cause or origin of the flood.[7]

Courts honor this and similar exclusionary language, thus precluding coverage for loss resulting from "water damage" allegedly caused by negligence or misconduct of a third party. *See, e.g., TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 732-33 (8th Cir. 1997) (vandals removed sandbags and dirt from levee, causing levee to break and flood insured's property; although vandalism was covered peril under policy, loss excluded by exclusion for flood damage "regardless of any other cause or event that contributes" to loss); *Kane*, 768 P.2d at 684-86 (rejecting insured's argument that flood damage resulting from dam failure allegedly caused by third-party negligence was covered loss based on policy language excluding coverage for "loss . . . caused by, resulting from, contributed to, or aggravated by . . . flood").[8]

The policy's "acts or omissions" exclusion also requires that the term "flood" in the Water Damage exclusion be interpreted to comprise flood caused in whole or in part by third-party negligence. The acts or omissions exclusion expressly states that State Farm does not insure for loss described in paragraph 2 (which includes the Water Damage exclusion) "regardless of whether" various types of conduct or negligence by third parties "(a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any

---

[7] To reinforce the comprehensive nature of the exclusion, the policy specifically states that the exclusion applies regardless of "other causes of the loss"; whether "other causes acted concurrently or in any sequence with" the flood to produce the loss; or whether the flood "arises from natural or external forces." The term "external," as juxtaposed to the term "natural," has been held to mean "man-made." *See, e.g., State Farm Fire & Cas. Co. v. Castillo*, 829 So. 2d 242, 245-47 (Fla. Dist. Ct. App. 2002). In so holding, *Castillo* declined to follow *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1 (W. Va. 1998), noting that *Murray* represents the minority view. *Castillo*, 829 So. 2d at 245-46. *Castillo* also criticized *Murray* for construing the word "external" out of context and for "ignor[ing] the unambiguous language" of the remainder of the lead-in provision, which excludes coverage regardless of the cause of the excluded event. *Id.* at 246. *See also State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1047 (Alaska 1996) (noting that the policy language excluding coverage "regardless of . . . the cause of the excluded event" necessarily "encompasses earth movement caused by either nature or humans" and that, when read in context, the term "external" "means 'external from natural forces,' which could only mean man-made forces").

[8] *See Sweeney v. City of Shreveport*, 584 So.2d 1248, 1250-52 (La. App. 2 Cir. 1991) (exclusion for loss caused by "enforcement of any ordinance or law . . . regardless of any other cause or event contributing concurrently or in any sequence" to loss barred coverage despite fact that third-party negligence allegedly contributed to loss).

- 6 -

other cause of the loss." The only logical way to interpret these two provisions, when read together, is that the policy excludes floods caused by third-party negligence.

Courts in Louisiana and elsewhere have held that similar "acts or omissions" exclusions are plain and unambiguous and enforceable as written. *See, e.g., Morgan v. Auto Club Family Ins. Co.*, 899 So. 2d 135, 136-137 (La. App. 3 Cir. 2005) (mold damage allegedly resulting from negligent installation of roof was excluded from coverage by "acts or omissions" exclusion); *see also Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 506-08 (5th Cir. 2000) (upholding faulty workmanship exclusion under Louisiana law); *Cuevas v. Allstate Ins. Co.*, 872 F. Supp. 737, 738-39 (S.D. Cal. 1994) (water damage caused when berms constructed by insured's neighbor caused river to flow onto insured's property was excluded by both flood exclusion and by "acts or omissions" exclusion). Thus, all losses caused in part by flood, including floods caused by third-party negligence, are excluded.

**Question No. 2:**   **In the event that third-party negligence is excluded with respect to any event causing a flood–i.e. a plane crashing into a water tower causing flooding of a dwelling, is such a result a "reasonable expectation" of a policy holder?**

**Response:**   **Given the unambiguous exclusionary language of the policy, a policyholder has no reasonable expectation of coverage for *any* loss caused in part by "flood." Moreover, the availability of flood insurance through the National Flood Insurance Program and the knowledge that New Orleans is vulnerable to flooding preclude a reasonable expectation of coverage for flood damage in the instant case.**

**A.    The State Farm Policy Unambiguously Excludes Coverage for Flood.**

For the reasons previously stated, the State Farm policy clearly excludes coverage for all loss caused in part by flood, *regardless* of the cause of the flood or of other causes of the loss. Consistent with controlling principles of contract construction, the Court should give the word "flood" its generally prevailing meaning to determine the intent of the parties in excluding flood damage from coverage. As discussed above, courts have consistently held the term "flood" to

828097v.1

mean "[w]ater which inundates [an] area of surface of earth where it ordinarily would not be expected to be" (*see supra* n. 6), and cases throughout the country have held that the water damage exclusion is enforceable even when the flood is caused by negligence and/or man-made events. This is so even when the policy does not specifically exclude negligent conduct, as does State Farm's. *See, e.g., Kane*, 768 P.2d at 684-86.[9] As noted recently by Judge Senter in *Buente v. Allstate Property & Casualty Insurance Co.*, 2006 WL 980784, *1 (S.D. Miss. Apr. 12, 2006), the water damage exclusions "are drawn quite broadly, and they have the clear purpose of excluding damage caused by inundation from coverage." In all these cases, the application of the water damage exclusion was based solely on the inundation of normally dry land (i.e., flood) – regardless of what might have caused that inundation.

In light of these authorities, the fact that third-party negligence may have caused or contributed to the flooding is irrelevant given the unambiguous policy language that excludes flooding regardless of its cause. While other physical damage to the dwelling would be covered – e.g., damage to the roof caused by falling fragments of the water tower -- any damage attributable to the non-covered peril of "flood" is excluded from coverage by the clear terms of the policy and should be (and is) separated out in the adjustment process.

Moreover, as discussed below, under Louisiana law, the reasonable expectations of the insured are considered only if a court first finds the language of the insurance policy ambiguous, and then only after exhausting all other steps in contract interpretation. *Breland v. Schilling*, 550 So. 2d 609, 610-11 (La. 1989). Applying rules of policy construction to the Court's hypothetical, the Court would not need to reach the issue of the insured's reasonable expectations because the flooding is unambiguously excluded from coverage regardless of its cause.

---

[9] *See also* SF Mem., Ex. C.

**B.    A Reasonable Person Living in the New Orleans Area Would Not Expect Flood Coverage Under a Homeowners Policy.**

The result is even clearer when applying these principles to *Vanderbrook*. Plaintiffs here allege that their homes were destroyed by "water damage" caused by water entering "the streets of the City of New Orleans and the homes of Petitioners" after "a small section of the concrete outfall canal wall known as the 17th Street Canal suddenly broke" during Hurricane Katrina. (Pet. ¶¶ 3, 7)  Not only is such flood damage unambiguously excluded from the policy, but a reasonable person would have no expectation of coverage for such damage, especially when he or she has not paid a premium for coverage for the excluded peril of flood.

Even the *Murray* court would have to agree with this analysis.  Although refusing to apply the policy as written to the isolated instance of non-natural earth movement before it, the *Murray* court specifically distinguished isolated destructive events from "earthquakes or floods which cause a major catastrophe and wreak damage to everyone in a large area rather than one individual policyholder." *Murray*, 509 S.E.2d at 11.  In those cases, the court observed, insurers should be allowed to enforce their policy exclusions.[10]  *Id.*  In this case, the flooding after Hurricane Katrina was a large-scale event that caused widespread damage.  Thus, applying the reasoning in *Murray* to this case, the Court should find that the flood exclusion was made for

---

[10]  Relying on an earlier federal district court case, *Wyatt v. Northwestern Mutual Insurance Co.*, 304 F. Supp. 781, 783 (D. Minn. 1969), the *Murray* court stated:

> The [*Wyatt*] court reasoned that the earth movement exclusion was created by insurance companies ". . . to relieve the insurer from occasional major disasters which are almost impossible to predict and thus to insure against.  There are earthquakes or floods which cause a major catastrophe and wreak damage to everyone in a large area rather than one individual policyholder. When such happens the very basis upon which insurance companies operate is said to be destroyed.  *When damage is so widespread no longer can insurance companies spread the risk and offset a few or the average percentage of losses by many premiums.*  Looking at the special exclusionary clause in the policy here in question, *it seems to cover situations where one single event could adversely affect a large number of policyholders. . . .*  All of these are phenomena likely to affect great numbers of people when they occur. [¶] This gives some force to the view that the various exclusions were not intended to cover the situation as here where "earth movement" occurred under a single dwelling, allegedly due to human action of third persons in the immediate vicinity of the damage."

*Murray*, 509 S.E.2d at 11 (quoting *Wyatt*, 304 F. Supp. at 783 (emphasis added)).

- 9 -

exactly the type of damage sustained during Hurricane Katrina and is valid and enforceable as written.

**C.    Given the Existence of the National Flood Insurance Program, a Policyholder Would Have No Reasonable Expectation that Flood Damage Caused by Hurricane Katrina Would be Covered by the State Farm Homeowners Policy.**

The conclusion that no reasonable person would expect his or her homeowners policy to provide coverage for flood damage caused by levee failures is buttressed by the availability of federally-subsidized flood coverage through the National Flood Insurance Program ("NFIP"), 42 U.S.C. § 4001 *et. seq.* and the history of its enactment. As a matter of law, Plaintiffs could have no objectively reasonable expectation of coverage for damage that traditionally has been excluded from homeowners policies for decades and for which homeowners have been able, for decades, to obtain coverage through the NFIP.[11] *See Kish v. Ins. Co. of N. Am.*, 883 P.2d 308, 312-13 (Wash. 1994) (insureds "knew that flood would be excluded by any insurance policy they purchased, as exemplified by the existence of the National Flood Insurance Program").

The official description of the NFIP by the Federal Emergency Management Agency ("FEMA") explained that: "As early as the 1950s when the possibility of providing [federal] flood insurance was first proposed, it became clear that private insurance companies could not profitably provide such coverage at an affordable price, primarily because of the catastrophic nature of flooding and the inability to develop an actuarial rate structure which could adequately reflect the risk to which flood-prone properties were exposed."[12] In September 1965, Hurricane

---

[11]  Moreover, the potential for this very type of flooding was well-known to the local residents. The metropolitan New Orleans area has had several occurrences of city-wide flooding after heavy rains. Mass evacuations of New Orleans and the surrounding parishes were ordered in 1998 and 2004 based on threats from Hurricanes Georges and Ivan. Those evacuations were conducted because of the common concern about the potential for flooding. And whenever flooding has occurred, homeowners and their mortgage-holders have looked to the Standard Flood Insurance Policies issued under the NFIP, not to their homeowners policies, for repair and replacement of their flood-damaged homes.

[12]  Program Description: Flood Insurance Program, published by Federal Emergency Management Agency, p. 1 (Aug. 1, 2002), *available at* http://www.fema.gov/plan/prevent/floodplain/How_the_NFIP_works.shtm (the "NFIP Program Description") (excerpt attached as Ex. B ).

- 10 -

Betsy struck the City of New Orleans, breaching levees and flooding the Lower Ninth Ward, leaving thousands homeless. By this time, homeowner policies already had flood exclusions, and these exclusions were enforced by Louisiana courts. *See, e.g., Morehead v. Allstate Ins. Co.*, 406 F 2d 122 (5th Cir. 1969) (affirming trial court finding that house was destroyed by Hurricane Betsy flood water rather than wind and enforcing flood exclusion).

In 1965, the Southeast Hurricane Disaster Relief Act was enacted "as a result of the extensive damage caused by Hurricane Betsy in the Gulf States." NFIP Program Description, at pp.1-2. The Act provided for funding for flood victims and also for a feasibility study for a national flood insurance program that led to the enactment of the NFIP in 1968. *Id.* One purpose of the NFIP was to make flood insurance available in order to fill a significant gap in private insurance coverage. *See United States v. Parish of St. Bernard*, 756 F.2d 1116, 1122 (5th Cir. 1985). Indeed, an NFIP website informs the public that homeowners insurance "doesn't cover costly flood damage."[13]  In contrast, as discussed at page 7 of State Farm's Reply Memorandum in Support of Rule 12(c) Motion for Judgment on the Pleadings, the flood damage caused by levee breaches following Hurricane Katrina *is* covered by the NFIP's Standard Flood Insurance Policy. It is well known that NFIP coverage is available to persons living in New Orleans. In fact, *Vanderbrook* plaintiff Mary Jane Silva purchased NFIP flood insurance. (*See* SF Mem., Ex. E (Silva flood policy))[14]

Given the clear exclusionary language in State Farm's homeowners policies, the availability of flood coverage under the NFIP, and the common knowledge of the flood-prone

---

[13]  *See* http://www.floodsmart.gov/floodsmart/pages/inscenter.jsp; *see also* http://www.floodsmart.gov/floodsmart/ pages/inswhatwhy.jsp ("Flood insurance covers losses to your property caused by flooding. From structural and mechanical damage to flood debris cleanup and floor surfaces (like tile and carpeting), your investment is protected by a flood insurance policy, *something that your homeowners policy does not offer*." (Emphasis added.)).

[14]  *See, e.g., Cacamo v. Liberty Mut. Fire Ins. Co.*, 885 So. 2d 1248, 1255 (La. App. 4 Cir. 2004) (recognizing that an insurance premium is "consideration paid an insurer for undertaking to indemnify the insured against a specific peril. . . . The amount of the premium varies in proportion to the risk assumed.") (quoting 1 Couch on Insurance § 69:1 (3d ed. 1995), *writ denied*, 891 So. 2d 689 (La. 2005)).

828097v.1

condition of the New Orleans area, Plaintiffs could have had no objectively reasonable expectation that their homeowners insurance policy would provide coverage for the flood damage caused by Hurricane Katrina.[15] Thus, even if the Court were to find that the language of the policy is ambiguous and decided to apply the reasonable expectations doctrine, that doctrine would not, as a matter of law, support a finding of coverage for the flood damage at issue here.

**Question No. 3:**    **If the Court should find the flood exclusion to be ambiguous, would the question of whether a policy holder had a reasonable expectation of coverage go to a jury or does it remain a question of law?**

**Response:**    **Whether a policyholder has a reasonable expectation of coverage is a question of law for the Court. The question does not arise, however, unless and until the Court finds the insurance policy to be ambiguous.**

In the majority of Louisiana cases dealing with insurance policy interpretation, the courts simply do not reach the question of whether the insured had a reasonable expectation of coverage. Instead, by reviewing the specific policy language within the four corners of the policy and applying the Louisiana Civil Code articles pertaining to contract interpretation, the courts have determined whether the policy covers a particular loss or claim without any need to consider the issue of the insured's reasonable expectations of coverage.

The few Louisiana courts that have discussed the reasonable expectations doctrine have made clear that, even when applicable, the insured's reasonable expectations are only one factor in a multiple-step analysis. These courts treat the issue as one of law, and do not refer the issue to a jury as an issue of fact. For instance, in *Breland v. Schilling*, 550 So. 2d 609 (La. 1989), one of the first cases to discuss the reasonable expectations doctrine, the court considered whether an

---

[15] *See La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 768 (La. 1994) ("*LIGA*") (noting that, in considering insured's reasonable expectations, courts can "look beyond the policy language to other external factors, such as premiums paid and the purpose and nature of [the] insurance"); *see also Clayton Williams Energy, Inc. v. Nat'l Union Fire Ins. Co.*, Civ. A. No. 03-2980, 2004 WL 2452780, at *16 n.35 (E.D. La. Nov. 1, 2004) ("[T]he reasonableness of an insured's expectation of coverage is a function of the purposes underlying the kind of policy in question and whether the expected coverage constitutes a reasonably bargained-for risk), *aff'd*, 161 F. App'x 378 (5th Cir. 2006).

insured could recover for his intentional act under a homeowners policy. The court noted that only after a court finds a policy to be ambiguous may the *court* "ascertain[ ] how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.* at 610-11 (citations omitted). The *Breland* court engaged in its interpretation of the insurance policy provisions, including its reasonable expectations analysis, without regard to the insured's actual subjective expectations of coverage when the policy was purchased.

Similarly, in *LIGA*, the Louisiana Supreme Court indicated that it was up to the *court* to ascertain the objectively reasonable expectations of the policyholder:

> "Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." The *court* should also construe the policy to "fulfill the reasonable expectations of the parties in light of the customs and usages of the industry."

630 So. 2d at 764 (citations omitted; emphasis added).

As in *Breland*, the *LIGA* court did not examine evidence of the insureds' dealings with the insurance company when they purchased the policy. Nor did the court consider testimony of the insureds regarding their actual, subjective expectations at the time the policy was purchased. Instead, analyzing the issue as a matter of law, the court made an objective inquiry into the parties' reasonable expectations of coverage in light of the usage and customs of the industry. The Fifth Circuit has also noted that it is the *court's* province to determine whether a reasonable expectation of coverage exists. *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269-70 (5th Cir. 1990) (applying Louisiana law) (noting that "[t]he *court* should consider the policy as a whole and interpret the policy to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry") (emphasis added)). As one court has stated: "[S]ince most insureds develop a 'reasonable expectation' that every loss will be covered by their policy[,] . . . the reasonable expectation concept must be limited by something more than the fervent hope

- 13 -

828097v.1

usually engendered by loss. Thus, a plaintiff's expectation of coverage must be *objectively* reasonable." *Millar v. State Farm Fire & Cas. Co.*, 804 P.2d 822, 827 (Ariz. 1991) (citation omitted; emphasis added).

In this case, the Court does not need to consider the insureds' reasonable expectations because, as discussed in response to Question No. 1, the Water Damage exclusion unambiguously excludes the damages Plaintiffs sustained to their homes as a result of the inundation of water following the levee breach.[16] Even if the Court were somehow to find that the policy is ambiguous, it must first adhere to the rules of contract interpretation as mandated in the Louisiana Civil Code articles. Thus, the Court needs to look first at the policy as a whole and construe the language in the policy in light of the customs and usage in the industry. *See LIGA*, 630 So. 2d at 764; *Trinity Indus.*, 916 F.2d at 269. As one of the last steps in the analysis, if the Court continues to find the policy ambiguous, it can then assess the objective expectations of a reasonable insured to determine the scope of the contract, as a matter of law.[17] Only if the clause remains ambiguous after looking at those objectively reasonable expectations should it then be construed against the insurer. *LIGA*, 630 So. 2d at 764; *Trinity Indus.*, 916 F.2d at 269.

| | |
|---|---|
| **Question No. 4:** | **Is the anti-concurrent clause applicable if the flood exclusion does not apply to third-party negligence?  In other words, if the flood exclusion does not apply to flooding caused by third-party negligence, is the anti-concurrent cause provision irrelevant?** |
| **Response:** | **The anti-concurrent cause provision is not irrelevant, even if the Court determines that the Water Damage exclusion does not apply to negligently-caused flood.  The provision would still apply to exclude all causes of loss other than the act(s) of negligence that caused the flood. The provision would be "irrelevant" only if the Water Damage exclusion does not apply to negligently-caused flood, <u>and</u> the only two causes of the loss were third-party negligence and (negligently caused) flood.  However,** |

---

[16] *See LIGA*, 630 So. 2d at 764 (noting that "if the policy is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written").

[17] *Livingston Parish Sch. Bd. v. Fireman's Fund Am. Ins. Co.*, 282 So. 2d 478, 482 (La. 1973) (finding no reasonable expectation of coverage without delving into any specific dealings of the parties regarding the insurance policy's coverage and term and looking only to the policy); *Taylor v. Rowell*, 736 So. 2d 812, 818 (La. 1999) (same).

828097v.1

**the flooding in this case was caused at least in part by "natural" forces, so there is no coverage for any water damage in this case.**

As discussed in detail in response to Question No. 5 below, State Farm's anti-concurrent cause provision has been held to be unambiguous and enforceable. The effect of this lead-in paragraph as it relates to the Water Damage exclusion is to make plain that there is no coverage for a loss caused by one of the enumerated water perils, including flood, regardless of the operation, effect, or sequence of other potential causes of loss. In light of this language, it simply does not matter whether "third-party negligence" caused the flood; so long as the damage would not have occurred in the absence of flood, the loss is excluded from coverage.

Even if the Court were to determine that the term "flood" does not include flooding caused by third-party negligence (which State Farm respectfully submits would be improper, for the reasons discussed above), the lead-in provision would still apply to the extent the flood was not caused solely by third-party negligence. In this case, for example, Plaintiffs specifically allege that their losses were caused in part by the hurricane itself. There is thus no dispute that the losses here were caused in part by "natural" forces. Accordingly, even assuming that negligently-caused flood is not itself excluded, the anti-concurrent cause provision would nonetheless operate to preclude coverage because Plaintiffs' losses would not have occurred in the absence of the indisputably excluded peril of naturally-occurring flood.

In the hypothetical posed by the Court, the only circumstance in which the anti-concurrent cause provision would be rendered "irrelevant" would be if there were only two causes of loss: the third-party negligence that caused the flood and the (man-made) flood itself. The lead-in language is predicated on the existence of an *excluded* peril ("We do not insure for such loss . . . ," meaning "any loss which would not have occurred in the absence of one or more of the [enumerated] excluded events"). Since the effect of the hypothetical ruling would be to

- 15 -

828097v.1

eliminate "man-made flood" from the list of "excluded events," the prerequisite to operation of the anti-concurrent cause would not be met. In the situation at bar, however, where the levee breaches were inextricably related to the natural phenomenon of Hurricane Katrina, the resulting flooding could never be characterized solely as man-made or negligently caused flooding. The flooding was caused at least in part by "natural" forces, so there is no coverage for any water damage in this case by virtue of the anti-concurrent cause provision.

**Question No. 5:**  **Is the anti-concurrent clause ambiguous?  Specifically, because the definition of loss is not defined, could an insurer deny coverage *in toto* for a covered peril—i.e. wind—when a dwelling is also damaged by flood waters?**

**Response:**  **The anti-concurrent cause provision is not ambiguous. Although "loss" is not defined in the anti-concurrent cause provision, the term refers only to that portion of the damage caused by an excluded peril, such as flood, alone or in combination with other causes. Discrete damage caused by a covered peril such as wind remains covered, even though the dwelling also sustains other excluded flood damage.**

To date, some 21 courts around the country have had occasion to consider the enforceability of State Farm's anti-concurrent cause provision, and at least 27 have addressed ISO or similar language in other carriers' policies.[18] The overwhelming majority of these courts has held that the anti-concurrent cause language means what it says and unambiguously excludes loss that would not have occurred but for the operation of the excluded peril, even though other, covered causes might have contributed to the loss. The few courts that have refused to enforce

---

[18] *See* SF Mem., Ex. D (compiling cases upholding anti-concurrent cause language). Since that compilation was prepared, the Oklahoma Court of Appeals has joined the growing list of courts holding that the anti-concurrent cause language is unambiguous and enforceable, stating that "the only fair construction of [the lead-in] paragraph is that when more than one cause is involved in a loss which includes one of the excluded events named under the lead-in clause, . . . there is no coverage regardless of whether the causes acted concurrently or in any sequence with the excluded event." *Duensing v. State Farm Fire & Cas. Co.*, 131 P.3d 127, 134 (Okla. App. 2005).

828097v.1

the anti-concurrent cause language have each applied an analysis that has no basis in Louisiana law or that is inapplicable to the facts of this case.[19]

No Louisiana court has addressed the enforceability of State Farm's anti-concurrent cause language. However, both state and federal courts in Louisiana have reviewed similar language used by other carriers and have held that the language excludes coverage for a loss caused in part by an excluded peril, regardless of the causal effect of another, covered peril. *See Sweeney v. City of Shreveport*, 684 So. 2d 1248, 1251 (La. App. 2 Cir. 1991) ("[T]he exclusion provides that any loss directly or indirectly resulting from enforcement of an ordinance is excluded regardless of any contributing causes. It may be true that the negligence of city employees resulted in Mrs. Sweeney not getting notice and that this negligence contributed to the demolition of the house; however, the exclusion by its own terms still applies."); *Prytania Park Hotel v. General Star Indem. Co.*, 896 F. Supp. 618,  623-24 (E.D. La. 1995) ("[T]he policy language specifically states that losses arising from enforcement of an ordinance or regulation, such as the building

---

[19]  In *Murray*, 509 S.E.2d at 14, the West Virginia Supreme Court of Appeals held, without finding the policy language to be ambiguous, that construing the anti-concurrent cause provision to defeat the efficient proximate cause doctrine would be contrary to the policyholders' reasonable expectations of coverage. As discussed below, in Louisiana, the reasonable expectations doctrine is inapplicable without a predicate finding of ambiguity.

In *Howell v. State Farm Fire & Cas. Co.*, 267 Cal. Rptr. 708, 715-16 (Ct. App. 1990), a California court of appeal declined to give effect to State Farm's lead-in language based on a unique statutory scheme, with no Louisiana counterpart, mandating the use of the efficient proximate cause analysis. Analyzing somewhat different policy language, the Washington Supreme Court relied on its own prior precedents adopting the efficient proximate cause rule to hold that the rule cannot be "circumvented" by policy language. *Safeco Ins. Co. of Am. v. Hirschmann*, 773 P.2d 413, 416-17 (Wash. 1989). As discussed immediately below, anti-concurrent cause language is enforceable in Louisiana. *See Prytania Park Hotel v. Gen. Star Indem. Co.*, 896 F. Supp. 618, 623-24 (E.D. La. 1995); *Sweeney*, 684 So. 2d at 1251. More to the point, neither *Hirschmann* nor *Howell* suggests that any aspect the lead-in language is ambiguous; to the contrary, both implicitly recognize that the lead-in clause, if given effect, would exclude coverage for all losses caused in part by the excluded peril. *See Howell*, 267 Cal. Rptr. at 716; *Hirschmann*, 773 P.2d at 416.

More recently, Judge Senter of the Southern District of Mississippi found anti-concurrent cause language to be ambiguous to the extent an insurer attempted to rely on it to exclude *separate* damage caused by the covered perils of wind and rain that accompanied Hurricane Katrina's flooding. *See Tuepker v. State Farm Fire & Cas. Co.*, No. 1:05CV559, 2006 WL 1442489, at * 7 (S.D. Miss. May 24, 2006); *see also Buente v. Allstate Prop. & Cas. Ins. Co.*, 422 F. Supp. 690 (S.D. Miss. 2006). This potential problem is not presented by this case, since Plaintiffs here do not seek to recover, and State Farm does not seek to exclude, separate wind damage to Plaintiffs' property.  Notably, Judge Senter found that the Water Damage exclusion itself was "valid and enforceable." *Tuepker*, 2006 WL 144289, at * 6 (excluding losses caused by the inundation of plaintiffs' home by tidal water and storm surge).

828097v.1

code requirement for a sprinkler system, are excluded 'regardless of any other cause or event that contributes concurrently or in any sequence to the loss.' . . . Plaintiffs' costs arising from enforcement of the City of New Orleans' building code, even though they arose from the repair of the hotel after the fire, are simply excluded according to the policy's plain, unambiguous language.").[20]   Since State Farm's anti-concurrent cause provision is substantially similar to the provisions at issue in *Sweeney* and *Prytania Park*, there is no reason to believe the Louisiana courts would not apply the same analysis here.

As these authorities establish, the anti-concurrent cause provision itself is not ambiguous. Nonetheless, the Court has questioned whether the provision could be used to "deny coverage *in toto* for a covered peril—i.e., wind—when a dwelling is also damaged by flood waters" because the term "loss" is not defined.[21]   Again referring to the clear and explicit language of the State Farm policy, the answer to this question is no.

The threshold requirement for application of the Water Damage exclusion is a "loss which would not have occurred in the absence of" one of the excluded water perils, such as flood.   It is only to "such loss" (i.e. damage) that the exclusion and the anti-concurrent cause language apply  ("We do not insure for such loss regardless of: . . . .").   Thus, unless flood is one cause of the loss in question (i.e., the loss would not have occurred "in the absence of" flood), neither the Water Damage exclusion nor the anti-concurrent cause language has any application.

---

[20]   *See also Front Row Theatre, Inc. v. Am. Mfrs. Mut. Ins. Cos.*, 18 F.3d 1343, 1347 (6th Cir. 1994) (Ohio law); *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 971 & n.7 (D.C. Dist. Ct. App. 1999); *Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256, 261 (Mo. Ct. App. 1997); *Casey v. Gen. Acc. Ins. Co.*, 578 N.Y.S.2d 337, 338 (App. Div. 1991); *Valley Forge Ins. Co. v. Hicks Thomas & Lilienstern*, 174 S.W.3d 254, 257-58 (Tex. App. 2004).

[21]   Although "loss" is not defined in the policy, the first-party property section of the policy provides coverage only for "accidental direct physical loss" to insured property.  The Fifth Circuit has held that the analogous term "physical loss or damage" "strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state" – i.e., what we·commonly think of as "damage."  *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir.1990) (applying Louisiana law).  *See also North Coast Enters. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 851707, *3 (W.D. Wash. March 28, 2006) (noting that "loss" and "damage" are "fairly understood to mean the same thing").

- 18 -

State Farm assumes that the Court's question posits the situation in which wind (covered) causes damage that is separate and discrete from the damage caused by flood (excluded).[22]  In that case, the damage caused by wind *would have* occurred "in the absence of" flood. Accordingly, the Water Damage exclusion would be inapplicable, and the anti-concurrent cause language would not be implicated.  The policy language itself thus obviates any possibility that the anti-concurrent cause language could be used as a means to avoid paying for covered damage, simply because it might precede or occur simultaneously with excluded damage.

Suppose, for example, that hurricane winds damage or destroy the roof of the insured's two-story dwelling.  Some time later, storm surge, either alone or in combination with other causes, destroys the entire first floor of the dwelling.  Because the damage to the first floor would not have occurred "in the absence" of flood, it is excluded from coverage.  But the same analysis does not apply to the damage to the roof.  That loss surely *would* have occurred "in the absence" of flood, so neither the Water Damage exclusion nor the anti-concurrent cause provision comes into play in analyzing coverage.  The same is true if the wind damage and flood damage occur simultaneously: so long as it is possible to separate the damage caused by wind from the damage caused by flood, the insurer must pay for the wind damage.  Indeed, the analysis applies even if the insured dwelling sustains discrete damage from wind and is later completely destroyed by flood waters.  Once again, the insurer owes for the demonstrable wind damage because *that particular damage* was not occasioned in any manner by the flood.

**Question No. 6:**   **With respect to Section I Exclusions, No. 2, if the Court finds the flood exclusion not applicable to third-party negligence, would a flood occurring because of such third-party negligence be an "ensuing loss" and thereby covered?**

---

[22]   If the Court is instead referring to a loss caused by the *combined and indivisible* effect of wind and water, then the loss would be excluded from coverage for the reasons discussed above.

**Response:**   **If the Court were to find that the Water Damage exclusion does not apply to negligently-caused floods, a flood caused solely by third-party negligence would be covered as an "ensuing loss."  In light of the clear and explicit language of the policy, however, the Court should not reach this issue.**

The final paragraph of the "acts or omissions" exclusion contains an exception for "resulting loss."[23]  In Louisiana, courts have generally described "resulting loss" or "ensuing loss" as damage that is "distinct and separable" and "different in kind" from the excluded damage from which it ensues.  *Alton Ochsner Med. Found.*, 219 F.3d at 505-06.  Such a loss will be covered if, but only if, it is itself not excluded.[24]  In other words, "the resulting loss provision does not resuscitate coverage for excluded losses, but reaffirms coverage for secondary losses ultimately caused by excluded perils."  *Cooper v. Am. Family Mut. Ins. Co.*, 184 F. Supp. 2d 960, 964 (D. Ariz. 2002).  Thus, for example, if defectively installed wiring in a house causes a fire, the insurer has no obligation to repair or replace the defective wiring, but will be liable for the ensuing fire damage.  *Alton Ochsner Med. Found.*, 219 F.3d at 505-06.

The State Farm acts or omissions exclusion states that the policy covers "any resulting loss from" the items listed in a. and b. of the exclusion "unless the resulting loss is itself a Loss Not Insured by this Section."  Ex. A, p. 11.  Because the acts of negligence allegedly causing the flood would be among the items listed, the "flood" would be a "resulting loss" from those items.  Thus, because the Court's question assumes that negligently-caused floods do not fall within the Water Damage exclusion, the "resulting loss" would be covered.[25]

That said, the Court should never reach this issue.  For all the reasons discussed above, the language of the Water Damage exclusion establishes that flood damage is excluded from

---

[23] *See* note 5 *supra.*

[24] *See, e.g., Morgan*, 899 So. 2d at 136-37 (loss caused when improper installation of a metal roof caused mold to develop in attic not covered as ensuing loss because mold specifically excluded from coverage).

[25] This analysis assumes that the only cause of the "flood" was third-party negligence and that this negligence and the "flood" were the only causes of loss.

828097v.1

coverage regardless of what caused the flood.   This is confirmed by the acts or omissions

provision, which specifically excludes third-party negligence that causes a flood.   In short, two

excluded perils cannot combine to create a covered loss, and there is thus no coverage for

Plaintiffs' losses caused by the flood.   And as noted above, the levee breach cannot be

characterized solely as man-made or negligently caused flooding.   Instead, it must be

characterized as flooding caused, at least in part, by the natural forces of Hurricane Katrina.

**Question No. 7:**   **Since the policy includes coverage for property "not on the residence premises", is the "property" referred to in Section I Exclusions, No. 2, e.g. "of part or all of any property whether on or off the residence premises," limited to property which may be insured but is not located upon "residence premises."**

**Response:**   **The "property" referred to in Section I – Losses Not Insured, ¶ 3.b, is not limited to insured property that is off the "residence premises."   Where the policy refers to *insured* property (whether on or off the "residence premises") it does so clearly and specifically.   The reference to "any property" in this section means any property in which there is defect, weakness, inadequacy, fault or unsoundness as described in that paragraph, regardless of whether the property is insured or where the property is located.**

Paragraph 3.b of the State Farm "acts or omissions" exclusion ("Subparagraph b")

contains the reference to "any property" referred to by the Court in Question 7.[26]   Specifically,

the policy states that it does not cover loss caused by enumerated types of faulty workmanship,

design, etc., "of any property (including land, structures, or improvements of any kind) whether

on or off the residence premises." Ex. A, p. 11. This provision, read in context, clearly excludes

coverage when faulty work (or the other items described in Subparagraph b) occurs on *any*

property -- whether that property is insured or not, and whether it is located on the premises or

across town.  The plain language of Subparagraph b clearly and categorically excludes – "under

---

[26]  Apparently the Court's question refers to the language in the ISO Policy Form.

any coverage" – loss caused by faulty works no matter where they may occur, as long as they combine with an otherwise excluded peril to cause damage.

The "any property" language in subparagraph b cannot be read as restricted to property insured under the policy because not all of the items referenced in subparagraph b correspond to property that is insured under the policy. In particular, land is not insured under the policy, which specifically states that the coverage provided for the dwelling (Coverage A) does not extend to land, "including the land necessary to support any Coverage A property." *Id.*, p. 3.

Moreover, nothing in Subparagraph b purports to limit application of "any property" to insured property. In contrast, elsewhere in the policy, when the policy refers to insured property, it does so explicitly and specifically. For example, Section I – Losses Insured provides:

> We insure for accidental direct physical loss to the *property described in Coverage A*, except as provided in **SECTION I-LOSSES NOT INSURED.**
>
> **COVERAGE B – PERSONAL PROPERTY**
>
> We insure for accidental direct physical loss to *property described in Coverage B* caused by the following perils, except as provided in **SECTION I – LOSSES NOT INSURED.**

*Id.*, p. 7 (emphasis added.) The same reference is made at pages 9 and 10 to those losses to property described in Coverages A and B that are not insured. *See id.*, p. 9 ("property described in Coverage A"), p. 10 ("any coverage").

Thus, reading Subparagraph b in the context of the whole policy, and considering Subparagraph b's reference to "land" as well as the policy's specific references to property insured under Coverage A or B or "any coverage," the phrase "any property" means just that – *any* property. It does not mean "any property that may be covered under this policy." If it did, the policy would contain language limiting the property to "covered property" or "property described in Coverage A or Coverage B."

- 22 -

State Farm has found no Louisiana case that has expressly addressed this issue. However, there are Louisiana cases that have applied an earth movement exclusion despite the fact that faulty works located off the insured premises contributed to the earth movement. In *Andreasen v. City of Houma*, 537 So. 2d 318, 321 (La. App. 1st Cir. 1988), for example, the Louisiana First Circuit Court of Appeal held that the earth movement exclusion in a State Farm homeowners policy excluded coverage for structural damage to an insured's home resulting from settlement of the land caused by the City's negligent installation of a well-point system located off the insured's property.

Other jurisdictions have applied Subparagraph b to exclude coverage where the faulty work occurred off the premises and involved property, land, or structures not owned by the insured. For example in *Waldsmith v. State Farm Fire & Casualty Co.*, 283 Cal. Rptr. 607, 610 (Ct. App. 1991), the Court found that negligent maintenance of a city water main off the insured's property fell within Subparagraph b and held that the resulting damage to the insured's property was excluded from coverage. Similarly, where a defect occurring in the manufacturing process and prior to installation on the insured's premises caused damage to the insured property, the court held that recovery for costs incurred to repair the faulty work was excluded under the policy at issue. *City of Burlington v. Hartford Steam Boiler Inspection & Ins. Co.*, 190 F. Supp. 2d 663, 671 (D. Vt. 2002); *see also Vermont Elec. Power Co., Inc. v. Hartford Steam Boiler & Inspection Co.*, 72 F. Supp. 2d 441, 444-45 (D. Vt. 1999) (defective design of transformers was excluded loss under policy where policy contained faulty work exclusion for "part or all of any property, on or off the described premises.").

The reference to "any property" in Subparagraph b confirms that regardless of when or where faulty work occurs, if it results in loss otherwise excluded by the policy, the loss is not

- 23 -

covered. It thus ensures that alleged acts of negligence cannot be used to transform an excluded peril into a covered loss.

## III.    A POSTSCRIPT ON *MURRAY V. STATE FARM*

At oral argument on the Defendants' Rule 12 Motions, the Court expressed certain concerns based on the Court's reading of *Murray v. State Farm Fire & Casualty Co.*, 509 S.E.2d 1 (W. Va. 1998), in which the court held that State Farm's earth movement exclusion applies only to naturally occurring earth movement and declined to enforce the policy's anti-concurrent cause provision. Although acknowledging that *Murray* represents the minority view, the Court nonetheless posed questions that correlated the *Murray* decision to the case at hand. For the reasons that follow, *Murray* carries no weight when evaluating this diversity case, in which the court is required to render a decision consistent with the law as applied by the Louisiana courts.

1.    The *Murray* court held that because the earth movement exclusion did not include a definition that expressly included both natural and man-made causes, the exclusion "must be read to refer only to phenomena resulting from natural, rather than man-made, forces." *See id.* at 8-9. However, Louisiana courts have enforced the earth movement exclusion when third-party fault caused the subsidence or earth movement. *See e.g.*, *Andreasen v. City of Houma*, 537 So. 2d 318 (La. App. 1 Cir. 1988) (city's negligent installation of sewage system caused subsidence); *Nida v. State Farm Fire & Cas. Co.*, 454 So. 2d 328 (La. App. 3 Cir. 1984).

2.    The *Murray* court relied heavily on the discussion in *Wyatt v. Northwestern Mutual Insurance Co.*, 304 F. Supp. 781 (D. Minn. 1969), to decide that the perceived purpose of the earth movement exclusion was to "relieve the insurer from occasional major disasters which are almost impossible to predict and thus insure against . . . earthquake or floods which cause a major catastrophe to everyone in a large area . . . ." 304 F. Supp. 783. This is exactly the type of

828097v.1

situation presented by the case at hand, which indisputably involves the type of loss that was not reasonably expected to be covered. *See* further discussion in response to Question No. 2.

3.    No party has cited any case in which any court has held that the flood exclusion is ambiguous and does not apply to floods in which man-made structures or negligent acts and omissions are involved.   Louisiana and other courts in fact have applied the water damage exclusion to both natural and man-made events.   At oral argument, Judge Duval acknowledged that the inundation from the failures of the man-made levees in the wake of Hurricane Katrina is indeed a flood.

4.    Many other courts have expressly declined to follow the illogic of the *Murray* court's analysis, which read only one clause of the anti-concurrent cause provision in isolation and out of context, and led to the court's finding of ambiguity. *See* discussion in notes 7 and 19.

5.    Contrary to *Murray*, courts in Louisiana have not found the anti-concurrent cause provision ambiguous and have enforced the provision to exclude coverage when an excluded event causes damage, even if an otherwise covered peril contributes to the loss. *See Prytania Park Hotel v. General Star Indem. Co.*, 896 F. Supp. 618 (E.D. La. 1995); *Sweeney v. City of Shreveport*, 584 So. 2d 1248 (La. App. 2d 1991).

6.    This Court has already recognized that the *Murray* decision represents an extreme minority view that has not been adopted by most states.

## IV.    **CONCLUSION**

For all of the foregoing reasons and the reasons set forth in State Farm's memoranda of law in support of its motion for judgment on the pleadings, Plaintiffs' Petition should be dismissed pursuant to Fed. R. Civ. P. 12(c).

828097v.1

Wayne J. Lee, 7916
Stephen G. Bullock, 3648
Lesli D. Harris, 28070
Sarah H. Barcellona, 28080
　　　Of
STONE PIGMAN WALTHER
　　WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana   70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

Attorneys for State Farm Fire and
Casualty Company


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing State Farm Fire and Casualty

Company's Post-Hearing Memorandum In Support of Rule 12 Motion has been served upon each

counsel of record, via electronic mail and by United States mail, postage pre-paid and properly

addressed, on September 11th, 2006.

- 26 -

828097v.1