FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 SEP 11  PM 3: 46

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In Re: KATRINA CANAL BREACHES    *     CIVIL ACTION
CONSOLIDATED LITIGATION          *    NO.: 05-4182 "K"(2)
                                             *
_____    *    JUDGE DUVAL
PERTAINS TO:  INSURANCE        *
*Vanderbrook*, No. 05-6323           *    MAGISTRATE JUDGE WILKINSON
                                             *
                                             *
                                             *

**JOINT SUPPLEMENTAL MEMORANDUM OF DEFENDANTS
THE STANDARD FIRE INSURANCE COMPANY,
HARTFORD INSURANCE COMPANY OF THE MIDWEST,
HANOVER INSURANCE COMPANY AND
UNITRIN PREFERRED INSURANCE COMPANY
IN FURTHER SUPPORT OF THEIR RULE 12 MOTIONS**

_____ Fee_____
_____ Process_____
__X__ Dktd _____
_____ CtRmDep_____
_____ Doc. No_____

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

I.    ANSWERS TO QUESTIONS POSED BY THE COURT ...................................... 3

    Question No. 1:   Is the flood exclusion ambiguous?  Specifically, does the
    exclusion clearly refer to floods caused by third-party negligence? ............................ 3

    Question No. 2:   In the event that third party negligence is excluded with
    respect to any event causing a flood – i.e. a plane crashing into a water
    tower causing flooding of a dwelling, is such a result a "reasonable
    expectation" of a policy holder? ................................................................ 8

    Question No. 3:   If the Court should find the flood exclusion to be
    ambiguous, would the question of whether a policy holder had a
    reasonable expectation of coverage go to a jury or does it remain a
    question of law? ........................................................................................ 13

    Question No. 4:   Is the anti-concurrent clause applicable if the flood
    exclusion does not apply to third-party negligence?  In other words, if
    the flood exclusion does not apply to flooding caused by third-party
    negligence, is the anti-concurrent cause provision irrelevant? ...................... 15

    Question No. 5:   Is the anti-concurrent clause ambiguous?  Specifically,
    because the definition of loss is not defined, could an insurer deny
    coverage in toto for a covered peril i.e. wind-when a dwelling is also
    damaged by flood waters? .......................................................................... 19

    Question No. 6:   With respect to Section I Exclusions, No. 2, if the Court
    finds the flood exclusion not applicable to third party negligence, would
    a flood occurring because of such third party negligence be an "ensuing
    loss" and thereby covered? ........................................................................ 20

    Question No. 7:   Since the policy includes coverage for property "not on
    the residence premises", is the "property" referred to in Section I
    Exclusions, No. 2, e.g. "of part or all of any property whether on or off
    the residence premises," limited to property which may be insured but is
    not located upon "residence premises." ...................................................... 22

II.    *MURRAY* IS CONTRARY TO LOUISIANA LAW, INAPPOSITE AND
    WRONGLY DECIDED.................................................................................. 23

    A.  Murray Confused The Definition of "Landslide" With The Cause of The Event........ 23

B.  Murray Improperly Applied the Reasonable Expectations Doctrine ........................... 24

C.  Murray Erred in Refusing To Enforce Anti-Concurrent Causation Language ............. 25

D.  Murray Is Clearly Distinguishable From This Case ...................................................... 26

## TABLE OF AUTHORITIES

### CASES

Alexis v. Southwood Ltd. P'ship, 792 So. 2d 100 (La. App. 4th Cir. 2001) .....................12

Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.,
219 F.3d 501 (5th Cir. 2000) .............................................................................20

Bartlett v. Cont'l Divide Ins. Co., 697 P.2d 412 (Colo. Ct. App. 1984),
aff'd, 730 P.2d 308 (Colo. 1986) ..............................................................1, 3

Berriman v. Town of Huntington, 232 N.Y.S.2d 464 (N.Y. Sup. Ct. 1962) ......................8

Bethea v. St. Paul Guardian Ins. Co.,
2002 WL 31001844 (E.D. La. Sept. 4, 2002) ...............................................5

Bituminous Cas. Corp. v. Maxey, 110 S.W.3d 203 (Tex. App. 2003) ..............................14

Boudreaux v. Dep't of Transp. & Dev., 690 So. 2d 114 (La. App. 1 Cir. 1997)................4

Cacamo v. Liberty Mut. Fire Ins. Co., 885 So. 2d 1248 (La. App. 4th Cir. 2004)..............9

Cadwallader v. Allstate Ins. Co., 848 So. 2d 577 (La. 2003) ....................................5, 6, 22

Capelouto v. Valley Forge Ins. Co., 990 P.2d 414 (Wash. Ct. App. 1999).......................20

Casey v. Gen. Accident Ins. Co., 578 N.Y.S.2d 337 (N.Y. App. Div. 1991)................4, 17

Chauvin v. State Farm Fire & Cas. Co.,
2006 WL 2228946 (E.D. La. Aug. 2, 2006) ...........................................4, 10

Cloud v. Nat'l Auto. Ins. Co., 875 So. 2d 866 (La. App. 3 Cir. 2004) ...............................9

Coleman v. School Bd., 418 F.3d 511 (5th Cir. 2005) ......................................................8

Dobson v. Allstate Ins. Co., 2006 WL 2078423 (E.D. La. July 21, 2006)....................4, 24

Doerr v. Mobil Oil Corp., 774 So. 2d 119 (La. 2000) .....................................................12

E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.,
444 N.Y.S.2d 321 (N.Y. App. Div. 1981) ..............................................1, 3

El Rincon Supportive Servs. Org., Inc. v. First Nonprofit Mutual Ins. Co.,

803 N.E.2d 532 (Ill. App. Ct. 2004) ...................................................................21

Fiess v. State Farm Lloyds, 2006 WL 2505995 (Tex. Aug. 31, 2006)............................20

Findlay v. United Pac. Ins. Co., 895 P.2d 32 (Wash. Ct. App. 1995),
    aff'd, 917 P.2d 116 (Wash. 1996).......................................................................18

Flaherty v. Jackson, 152 La. 679 (La. 1922) ........................................................7

Florida E. Coast Ry. Co. v. United States, 519 F.2d 1184 (5th Cir. 1975).........................3

Florida Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron,
    721 So. 2d 825 (Fla. Ct. App. 1998)...................................................................17

Front Row Theatre, Inc. v. American Mfr. Mut. Ins. Cos.,
    18 F.3d 1343 (6th Cir. 1994) .........................................................................4, 17

Gedward v. Sonnier, 728 So. 2d 1265 (La. 1999) .................................................19

Gleason v. Nuco, Inc., 774 So. 2d 1240 (La. App. 1 Cir. 2000)....................................4

Gowland v. Aetna Cas. & Sur. Co., 143 F.3d 951 (5th Cir. 1998)...................................11

Harrison v. R.R. Morrison & Son, Inc., 862 So. 2d 1065 (La. App. 2 Cir. 2003)............13

J.M. Brown Constr. Co. v. D&M Mech. Contractors, Inc.,
    222 So. 2d 93 (La. App. 1969)..........................................................................24

Jack v. Adriatic Ins. Co., 420 So. 2d 1292 (La. App. 3 Cir. 1982)..............................9, 24

Jarvis Christian College v. National Union Fire Ins. Co.,
    197 F.3d 742 (5th Cir. 1999) ...........................................................................7

Johnson v. Farm Bureau Mut. Ins. Co., 533 N.W.2d 203 (Iowa 1995)............................14

Julian v. Hartford Underwriters Ins. Co., 110 P.3d 903 (Cal. 2005) ............................25

Kane v. Royal Ins. Co., 768 P.2d 678 (Colo. 1989) .........................................1, 3, 4, 17

Kish v. Ins. Co. of N. Am., 883 P.2d 308 (Wash. 1994) ....................................11, 17, 18

La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,
    630 So. 2d 759 (La. 1994) .................................................5, 8, 10, 12, 13, 14

Lakeside Non-Ferrous Metals, Inc. v. Hanover Ins. Co.,
    172 F.3d 702 (9th Cir. 1999) ............................................................................14

Leonard v. Nationwide Mut. Ins. Co.,
    2006 WL 2353961 (S.D. Miss. Aug. 16, 2006) ..................................................16, 18

Lewis v. Hamilton, 652 So. 2d 1327 (La. 1995).............................................................24

Melder v. Allstate Corp., 404 F.3d 328 (5th Cir. 2005) .....................................................10

Meyer v. Classified Ins. Co., 531 N.W.2d 416 (Wis. Ct. App. 1995)................................14

Morgan v. Auto Club Family Ins. Co., 899 So. 2d 135 (La. App. 3 Cir. 2005)................20

Murray v. State Farm Fire & Cas. Co., 509 S.E.2d 1 (W. Va. 1998) ................2, 11, 22-25

Pakmark Corp. v. Liberty Mut. Ins. Co., 943 S.W.2d 256 (Mo. Ct. App. 1997) ..........1, 17

Perkins v. Shelter Ins. Co., 540 So. 2d 488 (La. App. 1 Cir. 1989)...................................24

Pracht v. City of Shreveport, 830 So. 2d 546 (La. App. 2 Cir. 2002) ..................................4

Prytania Park Hotel v. General Star Indem. Co., 896 F. Supp. 618 (E.D. La. 1995) ........17

Roberts v. Murphy Oil Corp., 577 So. 2d 308 (La. App. 4 Cir. 1991)................................4

Saden v. Kirby, 660 So. 2d 423 (La. 1995) ........................................................................4

Safeco Insurance Co. v. Hirschmann, 773 P.2d 413 (Wash. 1989)...................................18

Sicoli v. State Farm Mut. Auto. Ins. Co., 464 N.W.2d 300 (Minn. Ct. App. 1990)..........14

Smith Kandal Real Estate v. Continental Cas. Co.,
    79 Cal. Rptr. 2d 52 (Cal. Ct. App. 1998)....................................................................14

State v. All Property & Cas. Ins. Carriers, 2006 WL 2498196 (La. Aug. 25, 2006)...........4

Stephens v. Audubon Ins. Co., 665 So. 2d 683 (La. App. 2 Cir. 1995).............................24

Summerville v. Missouri Pac. R.R. Co., 509 So. 2d 639 (La. App. 3 Cir. 1987)................4

Sunshine Motors, Inc. v. New Hampshire Ins. Co.,
    530 N.W.2d 120 (Mich. Ct. App. 1995)..................................................................4, 17

Sweeney v. City of Shreveport, 584 So. 2d 1248 (La. App. 2 Cir. 1991) ............16, 17, 24

Team Envtl. Servs., Inc. v. Addison, 2 F.3d 124 (5th Cir. 1993) ......................................17

T.H.E. Ins. Co. v. Larsen Intermodal Serv., Inc., 242 F.3d 667 (5th Cir. 2001) ...............24

TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.,
    114 F.3d 731 (8th Cir. 1997) ..................................................................................1, 3, 17

Travelers Indem. Co. v. Powell Ins. Co.,
    1996 WL 578030 (E.D. La. Oct. 4, 1996) ...................................................................17

Tuepker v. State Farm Fire & Cas. Co.,
    2006 WL 1442489 (S.D. Miss. May 24, 2006) ...........................................................16

Turk v. La. Citizens Prop. Ins. Corp., 2006 WL 1635677 (W.D. La. June 7, 2006).....4, 10

Waldsmith v. State Farm Fire & Cas. Co.,
    283 Cal. Rptr. 607 (Cal. Ct. App. 1991)......................................................................21

Walker v. McKinnis,
    2005 Ohio 4058, 2005 WL 1864144 (Ohio Ct. App. Aug. 8, 2005) .......................3, 7

Wallis v. Country Mut. Ins. Co., 723 N.E.2d 376 (Ill. App. Ct. 2000)................................3

## STATUTES AND REGULATIONS

42 U.S.C. § 4001(b) ...........................................................................................................11

44 C.F.R. Part 61 App. A(1) ................................................................................................8

La. Civ. Code art. 2046................................................................................................5, 22

La. Civ. Code art. 2047................................................................................................5, 22

La. Civ. Code art. 2048..................................................................................................14

La. Civ. Code art. 2049................................................................................................7, 14

La. Civ. Code art. 2053..................................................................................................14

La. Civ. Code art. 2055..................................................................................................15

La. Civ. Code art. 2056..................................................................................................15

La. Rev. Stat. § 38:421...........................................................................................5

La. Rev. Stat. § 22:620...........................................................................................6

La. Rev. Stat. § 22:1401.........................................................................................10

La. Rev. Stat. § 22:1402.........................................................................................10

## PRELIMINARY STATEMENT

Neither Plaintiffs, their amicus, nor the Defendants have found a single case in which a court concluded that a large-scale inundation of water did not fall within a water damage exclusion in a property insurance policy. The Eighth Circuit and three state appellate courts have considered levee breaks and similar events like dam failures, and have unanimously found the exclusion applicable even if human negligence caused or contributed to the event.[1]

Louisiana law does not provide any basis for this Court to predict that Louisiana would take the unprecedented step of refusing to apply the water damage exclusion here. There is no ambiguity in the exclusion's language, either in the abstract or as applied to these facts. "Flood" has a plain and ordinary meaning: a substantial inundation of land that is normally dry, regardless of the cause. New Orleans flooded. People simply do not characterize what happened to New Orleans on and after August 29, 2005 as "negligently induced water inundation." They use the word "flood."

Plaintiffs and their amicus have argued that an inundation might not be a "flood" if it is caused by a human act or omission. Almost any large-scale inundation, however, will involve some human act or omission or "negligence." Numerous levees failed in the Great Flood of 1993 that devastated the Midwest. The Great Flood of 1927 involved the breach of a levee in Cairo, Illinois and the dynamiting of a levee in Louisiana. The Great Johnstown Flood in Pennsylvania involved the failure of a man-made dam. In all these catastrophes, the forces of nature, together with engineering, design and construction failures, resulted in flooding. Indeed,

---

[1] TNT Speed & Sport Ctr., Inc. v. American States Ins. Co., 114 F.3d 731, 733 (8th Cir. 1997); Pakmark Corp. v. Liberty Mut. Ins. Co., 943 S.W.2d 256, 261-62 (Mo. Ct. App. 1997); E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co., 444 N.Y.S.2d 321, 321-22 (N.Y. App. Div. 1981); Kane v. Royal Ins. Co., 768 P.2d 678, 681 (Colo. 1989); Bartlett v. Cont'l Divide Ins. Co., 697 P.2d 412, 413 (Colo. Ct. App. 1984), aff'd, 730 P.2d 308 (Colo. 1986).

1

there are few floods that could not have been prevented if manmade structures controlling the waters or damaged by the waters had been perfectly engineered, constructed and positioned. In this case, the inundation clearly was caused by a powerful natural force -- Hurricane Katrina -- regardless of whether it also involved negligence.

The ISO Insurers' Policies contain a clear and unambiguous exclusion for loss caused by "Water Damage," including "flood." This exclusion has an anti-concurrent cause provision specifying that losses caused by flood are excluded even if other covered causes of loss contribute to causing the flood. In addition, the Policies contain separate exclusions for loss caused by faulty, inadequate or defective design, construction or maintenance of any property on or off the premises, and for loss caused by "weather conditions" if these conditions contribute with "Water Damage" to cause a loss. When read together, these provisions make it clear that the flood damage to Plaintiffs' homes is not covered even if the anti-concurrent cause provision were not in the Policies. Plaintiffs could only prevail if this Court ruled that all of the clear and unambiguous policy provisions were inapplicable or unenforceable. Such a ruling would be an aberration, and contrary to both Louisiana law and appellate authority throughout the United States. As explained in Part II herein, the poorly reasoned and anomalous decision of the West Virginia Supreme Court in Murray v. State Farm Fire & Cas. Co., 509 S.E.2d 1 (W. Va. 1998) does not change this conclusion.

Flood insurance coverage was readily available to Plaintiffs through the National Flood Insurance Program at subsidized rates. The gravity of the losses from Hurricane Katrina does not justify what Plaintiffs seek: shifting the risk of billions of dollars in flood losses from the federal government to private property insurers that did not collect any premium for that risk.

## I.   ANSWERS TO QUESTIONS POSED BY THE COURT

**Question No. 1:**    **Is the flood exclusion ambiguous?  Specifically, does the exclusion clearly refer to floods caused by third-party negligence?**

**Brief Answer:**    The Water Damage Exclusion is not ambiguous.  It applies to all floods regardless of their cause, including floods caused by third-party negligence.

The Water Damage Exclusion provides as follows:

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

**c. Water Damage,** meaning:

(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(App. at INS 9, 56, 96, 136, 171.)

The word "flood" has a common, ordinary meaning: "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be . . . ." Florida E. Coast Ry. Co. v. United States, 519 F.2d 1184, 1192 (5th Cir. 1975).[2]  The ordinary meaning of "flood" does not focus on or depend on the cause of the event.  The "generally accepted meaning of the term 'flood' does not include a distinction between artificial and natural floods." Kane, 768 P.2d at 680.[3]  Many courts have held that an inundation caused by a human act or omission is an excluded "flood." E.g., TNT Speed & Sport Ctr., 114 F.3d at 733 (vandals removed sandbags and dirt from a levee); E.B. Metal, 444 N.Y.S.2d at 321-22 (dike failed allegedly due to

---

[2] Accord Kane, 768 P.2d at 681; Bartlett, 697 P.2d at 413; Walker v. McKinnis, 2005 Ohio 4058, 2005 WL 1864144, at *2 (Ohio Ct. App. Aug. 8, 2005); Wallis v. Country Mut. Ins. Co., 723 N.E.2d 376, 381 (Ill. App. Ct. 2000).

[3] See also Bartlett, 697 P.2d at 413 (concluding that "to make such a distinction [between naturally- and artificially-caused floods] would be to rewrite the terms of the policy, and that is beyond our power").

3

improper construction and maintenance).[4]  Recently, in <u>Dobson v. Allstate Ins. Co.</u>, 2006 WL
2078423 (E.D. La. July 21, 2006), Judge Vance of this Court held that the plaintiffs had no
possibility of recovering against their insurance agents on claims relating to Hurricane Katrina
because "to the extent that plaintiffs allege that the agents' representations about coverage for
hurricane damage misled them as to whether flooding caused by hurricanes would be covered
under the policy, they were in possession of clear policy language indicating that such damage
was excluded." <u>Id.</u> at *11 (holding that claims against insurance agents were fraudulently joined
with claims against insurers).[5]

   Louisiana cases have repeatedly described an inundation resulting in whole or in part
from human acts or omissions as a "flood."  The Louisiana Supreme Court recently noted that, at
the time of Hurricane Katrina, "[i]n the City of New Orleans, where the levees failed, *flood
waters* swamped large portions of the City."  <u>State v. All Property & Cas. Ins. Carriers</u>, 2006 WL
2498196, at *1 (La. Aug. 25, 2006) (emphasis added).[6]  A Louisiana statute similarly uses the

---

[4] <u>See also</u> <u>Kane</u>, 768 P.2d at 679 (dam failed allegedly due to third party negligence); <u>Front Row Theatre, Inc. v.
American Mfr. Mut. Ins. Cos.</u>, 18 F.3d 1343, 1347 (6th Cir. 1994) (flooding caused in part by blocked drainage
system); <u>Sunshine Motors, Inc. v. New Hampshire Ins. Co.</u>, 530 N.W.2d 120, 121 (Mich. Ct. App. 1995) (blocked
drainage system); <u>Casey v. Gen. Accident Ins. Co.</u>, 578 N.Y.S.2d 337, 338 (N.Y. App. Div. 1991) (blocked drainage
system).

[5] <u>See also</u> <u>Chauvin v. State Farm Fire & Cas. Co.</u>, 2006 WL 2228946, at *1 (E.D. La. Aug. 2, 2006) (Vance, J.)
(ruling that Valued Policy Law does not apply to Hurricane Katrina claims where total loss was not due to a covered
peril, noting that "Plaintiffs' homeowner's policies cover damage caused by wind and rain, but all contain a clause
excluding coverage for damage caused by flood"); <u>Turk v. La. Citizens Prop. Ins. Corp.</u>, 2006 WL 1635677, at *1
(W.D. La. June 7, 2006) (Haik, C.J.) (reaching same result, noting that "the homeowner policies at issue exclude
coverage for damage caused by flood water").

[6] <u>See also</u> <u>Saden v. Kirby</u>, 660 So. 2d 423, 424 (La. 1995) ("flood" exacerbated by alleged negligence of
defendants); <u>Pracht v. City of Shreveport</u>, 830 So. 2d 546, 548 (La. App. 2 Cir. 2002) ("flood" allegedly resulting
from "failure to properly design, construct and maintain the drainage canal"); <u>Gleason v. Nuco, Inc.</u>, 774 So. 2d
1240, 1241 (La. App. 1 Cir. 2000) ("flood" allegedly resulted from negligence in constructing and maintaining
drainage facilities); <u>Boudreaux v. Dep't of Transp. & Dev.</u>, 690 So. 2d 114, 120 (La. App. 1 Cir. 1997) ("flood"
allegedly resulted from negligence in design and construction of bridge such that bridge improperly functioned as a
dam); <u>Roberts v. Murphy Oil Corp.</u>, 577 So. 2d 308, 311 (La. App. 4 Cir. 1991) ("flood" allegedly resulted from

4

word "flood" to describe an inundation that would be caused by failure to repair a levee. See La. Rev. Stat. § 38:421 ("[i]f the board deems the funds provided for in this Part are inadequate to locate, construct, and *repair levees to prevent disastrous floods*, the board may levy a special assessment or forced contribution ....") (emphasis added). There is no word, other than "flood," to describe a large-scale water inundation caused by negligence.

There is no basis to conclude that the Water Damage Exclusion generally, or the word "flood" specifically, is ambiguous. The Water Damage Exclusion is subject to the Louisiana Civil Code's rules of construction. Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003). "The words of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047; Bethea v. St. Paul Guardian Ins. Co., 2002 WL 31001844, at *2 (E.D. La. Sept. 4, 2002) (Duval, J.). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code, art. 2046. An insurance policy "should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated" because "[t]he rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity . . . ." Cadwallader, 848 So. 2d at 580.

An ambiguity exists only if the "policy provision is susceptible to two or more *reasonable* interpretations . . . ." Id. (emphasis in original). The mere fact that a policy could have been worded more clearly does not create an ambiguity. La. Ins. Guar. Ass'n v. Interstate

---

negligent construction of road which disrupted drainage system); Summerville v. Missouri Pac. R.R. Co., 509 So. 2d 639, 640 (La. App. 3 Cir. 1987) ("flood" allegedly caused or exacerbated by negligent obstruction of natural drainage).

Fire & Cas. Co., 630 So. 2d 759, 766 (La. 1994).  Moreover, "merely because an insurance

policy is a complex instrument requiring analysis to understand it does not render it ambiguous."

Id.  "[I]n the absence of a conflict with statutes or with public policy, insurers have the same

rights as do individuals to limit their liability and to enforce whatever conditions they impose

upon their obligations."  Cadwallader, 848 So. 2d at 583.  See also La. Rev. Stat. § 22:620(A)(4).

The Louisiana Supreme Court has strongly cautioned courts applying Louisiana law not

to construe simple words in insurance policies in an inventive manner to create an ambiguity.  In

Cadwallader, a lower court found the term "relative," used in an uninsured motorist policy,

ambiguous because it might or might not include a foster child.  The Louisiana Supreme Court

reversed, stressing that "relative" is "a rather simple word with a well-established common sense

meaning which is referenced in the insurance policy in a clearly worded context."  848 So. 2d at

584.  The lower court had erred when it "ignored the fundamental precept that it was required to

interpret the term using its plain, ordinary and generally prevailing meaning" and had "enlarged

the insurance coverage beyond that which was reasonably contemplated by the unambiguous

term."  Id. at 583-84.  Similarly here, the word "flood" is a simple word with a plain meaning.

Moreover, a restrictive construction of "flood" would be unworkable in application.

Virtually any flood would have some contact or involvement with streets, drainage systems,

levees, pumping systems or other man-made systems that are intended to prevent or minimize

flood damage.  It is doubtful whether a purely "natural" flood could ever occur in New Orleans

given that human intervention put most of the city below sea level.

To limit the word "flood" to natural events would also be inconsistent with the context in

which the word appears in the Policies.  The Water Damage Exclusion applies not only to loss

6

caused by "flood," but also to loss caused by "surface water," "tidal water" and "overflow of a body of water."  The word "flood" would be superfluous if it meant the same thing as "surface water," "tidal water" and "overflow of a body of water."  It is difficult to imagine a natural event resulting in a large scale inundation of water that would not consist of surface water, tidal water, or overflow of a body of water, or some combination of those three.  To limit the meaning of "flood" to events that would fall into those categories would be to read the word "flood" out of the Policies altogether.  Such a result is not permitted by Louisiana law.  See La. Civ. Code art. 2049 ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.").[7]

If "flood" were construed to be limited to purely natural events, the anti-concurrent causation clause in the water damage exclusion would also be rendered meaningless.  The anti-concurrent causation clause provides that "Such loss [i.e., loss caused directly or indirectly by Water Damage] is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss."  (App. at INS 9, 56, 96, 136, 171.)  The kinds of natural events that would typically cause or contribute to a flood, such as weather conditions or earth movement, are separately excluded by the Policies.[8]  If "flood" were limited to events caused exclusively by

---

[7] See also Flaherty v. Jackson, 152 La. 679, 690 (La. 1922) (holding that "where the particular words embrace all the persons or objects of the class mentioned, and thereby exhaust the class or genus, there can be nothing ejusdem generis left for the rule to operate on, and a meaning must be given to the general words different from that indicated by the specific words, or there can be ascribed to them no meaning at all"); Jarvis Christian College v. National Union Fire Ins. Co., 197 F.3d 742, 748 (5th Cir. 1999) (rejecting insured's argument for narrow construction of policy terms that would render language superfluous); see also Walker, 2005 WL 1864144, at *2 (holding that "flood" must mean something different than "overflow of a body of water" because overflow is separately excluded).

[8] The Policies exclude "Weather conditions" only "if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above [including flood] to produce the loss."  (Id. at INS 10, 56, 97, 137, 172.)

"natural" forces, any potentially concurring cause would be separately excluded under another exclusion, and the anti-concurrent causation clause would be rendered meaningless.

Finally, as noted above, the Water Damage Exclusion applies not only to loss caused by "flood" but also to loss caused by "surface water," "tidal water" and "overflow of a body of water." The water damage to Plaintiffs' property, even if not caused by "flood," was clearly caused by the overflow of the bodies of water in and around New Orleans.

**Question No. 2:** **In the event that third party negligence is excluded with respect to any event causing a flood – i.e. a plane crashing into a water tower causing flooding of a dwelling, is such a result a "reasonable expectation" of a policy holder?**

**Brief Answer:** A reasonable policyholder would refer to such an event as a "flood" and, based on the plain language of the Policies, could not have a reasonable expectation of coverage. Under Louisiana law, however, what a policyholder might expect in such a hypothetical situation is irrelevant to resolution of this case. Moreover, in light of the National Flood Insurance Program and the impracticability of writing private flood insurance, policyholders could not reasonably expect coverage for flood in homeowners' policies.

Even in the highly unusual hypothetical situation posed by the Court's question, an objectively reasonable insured, reading the Policy's Water Damage Exclusion, would describe the inundation of water from the water tower as a "flood," as long as the volume of water released was substantial enough to cause an inundation.[9] See Berriman v. Town of Huntington, 232 N.Y.S.2d 464, 465 (N.Y. Sup. Ct. 1962) (describing premises as "flooded *by water overflowing from a water tower*") (emphasis added). It is difficult to find a word other than "flood" to describe such an event.

---

[9] If the quantity of water released from the water tower were not sufficiently large, the exclusion might not apply because a small quantity of water released in a small area is not an "inundation." Cf. 44 C.F.R. Part 61 App. A(1) (Standard Flood Insurance Policy defining flood as, in pertinent part, "[a] general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties").

Analysis of this hypothetical is, however, unnecessary and unwarranted. Under Louisiana law, a "reasonable expectations" analysis is undertaken only to construe "ambiguous language." Coleman v. School Bd., 418 F.3d 511, 517-18 (5th Cir. 2005). "[W]hen the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation." Id.; La. Ins. Guar. Ass'n, 630 So. 2d at 764 ("[i]f after applying the other general rules of construction an ambiguity remains," "[a]mbiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered"; but "if the policy language at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written").

In determining whether an ambiguity exists, the "reasonable expectations" of a hypothetical insured in a hypothetical situation cannot be considered. See Cloud v. Nat'l Auto. Ins. Co., 875 So. 2d 866, 870 (La. App. 3 Cir. 2004), writ denied, 885 So. 2d 1131 (La. 2004) (holding that trial court erred in finding ambiguity based on hypothetical facts, stressing that policy was not "legally ambiguous under the facts before us, which is all we can consider"); Jack v. Adriatic Ins. Co., 420 So. 2d 1292, 1293 (La. App. 3 Cir. 1982) (holding that it would be inappropriate to consider a hypothetical scenario in interpreting an exclusion).

Even if a reasonable expectations analysis were appropriate, a policyholder could not reasonably expect coverage in this case. A policyholder should reasonably expect only what the language of the Policies here prominently proclaims: coverage for flood is excluded, as are negligent design and maintenance which causes "Water Damage." Relying on policy language to determine policyholder expectations is appropriate because policyholders could otherwise

receive benefits for which they have paid no premiums. As the Louisiana Fourth Circuit Court of Appeal has recognized, an insurance premium is "consideration paid an insurer for undertaking to indemnify the insured against a specific peril" or perils (or all perils other than those which are excluded). "The amount of the premium varies in proportion to the risk assumed." Cacamo v. Liberty Mut. Fire Ins. Co., 885 So. 2d 1248, 1255 (La. App. 4th Cir. 2004) (quoting 1 Couch on Insurance § 69:1). It is thus clear from the Policies that Plaintiffs paid no premium for the excluded peril of flood.

Both policy forms and premium rates are subject to approval by the Commissioner of Insurance, who is charged with assuring that the rates are not "excessive" or "inadequate" for the coverage provided.[10] This regulatory structure supports the rule requiring courts to apply unambiguous language, because that will best assure that policyholders get the coverage they have paid for, not more or less.

If the ISO Insurers were required to pay for flood losses, such a result would require them to pay for a risk that they never assumed under the Policies. Such a result would be contrary to the fundamental principle of insurance that an insurer assumes only those risks for which a premium is paid. See Chauvin, 2006 WL 2228946, at *5 (granting Rule 12 motion, refusing to apply Louisiana Valued Policy Law to Hurricane Katrina losses caused partially by wind and partially by flood because "[i]n effect, the insurer would be required to pay for damage not covered by the policy and for which it did not charge a premium"); Turk, 2006 WL 1635677, at *1 (reaching same result, reasoning that "the policyholders did not pay a premium for flood

---

[10] La. Rev. Stat. § 22:1402; id. § 22:1401 et. seq. (ratemaking procedures). See also Melder v. Allstate Corp., 404 F.3d 328 (5th Cir. 2005) (recognizing Commissioner's authority).

coverage"); La. Ins. Guar. Ass'n, 630 So. 2d at 769 (stressing that "the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations").

Furthermore, policyholders could not have had a reasonable expectation that their homeowners policies would cover flood given that flood insurance was readily available through the National Flood Insurance Program ("NFIP"), which provides federally-subsidized flood coverage. The NFIP was instituted based on a Congressional finding that private insurers could not economically offer flood coverage.[11]  Many policyholders had flood insurance and those who did not either knew or should have known that it was available.  As the Washington Supreme Court recognized in Kish, a finding of flood coverage under homeowners policies would be contrary to the parties' intentions and expectations:

> *Plaintiffs lived on a nationally recognized floodplain. The fact that their particular houses are located on parcels usually not flooded does not detract from this fact. They knew that flood would be excluded by any insurance policy they purchased, as exemplified by the existence of the National Flood Insurance Program (of which the Plaintiffs' county was a part).* The insurance companies anticipated that they would not have to pay for flood damage under their all-risk policies, particularly where the risk of flood is high and the National Flood Insurance Program applies." [883 P.2d at 312-13 (emphasis added, citation omitted).]

---

[11] See Gowland v. Aetna Cas. & Sur. Co., 143 F.3d 951, 955 (5th Cir. 1998) ("the National Flood Insurance Program is federally subsidized and enables consumers to obtain flood insurance which virtually would be impossible to purchase in the marketplace").  Congress found that "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions." 42 U.S.C. § 4001(b); see also Kish v. Ins. Co. of N. Am., 883 P.2d 308, 313 n.3 (Wash. 1994) ("The NFIP was established because insurers had stopped providing flood coverage as they could not spread the risk suitably due to adverse selection problems, that is, only people with high risk were buying the insurance.")

Even the West Virginia Supreme Court in <u>Murray v. State Farm Fire & Cas. Co.</u>, 509

S.E.2d 1 (W. Va. 1998) recognized that exclusions for events such as earthquakes and floods are

appropriate and necessary because insurers cannot adequately spread the risk for such events:

> [T]he earth movement exclusion was created by insurance companies . . .
> "to relieve the insurer from occasional major disasters which are almost
> impossible to predict and thus to insure against. *There are earthquakes or floods*
> *which cause a major catastrophe and wreak damage to everyone in a large area*
> *rather than one individual policyholder. When such happens, the very basis upon*
> *which insurance companies operate is said to be destroyed.* When damage is so
> widespread no longer can insurance companies spread the risk and offset a few or
> the average percentage of losses by many premiums. Looking at the special
> exclusionary clause in the policy here in question, it seems to cover situations
> where one single event could adversely affect a large number of policyholders. . .
> All of these are phenomena likely to affect great numbers of people when they
> occur. [<u>Id.</u> at 10 (<u>quoting</u> <u>Wyatt v. Northwestern Mut. Ins. Co.</u>, 304 F. Supp. 781,
> 783 (D. Minn. 1969)) (emphasis added).]

These basic principles of insurance are the types of factors that Louisiana courts

can and should consider in applying the "reasonable expectations" doctrine if and when

appropriate. <u>La. Ins. Guar. Ass'n</u>, 630 So. 2d at 768 (noting that courts applying the

"reasonable expectations" doctrine have "looked beyond the policy language to other

external factors, such as the premiums paid and the purpose and nature of [the]

insurance"). Applying those principles here, it is clear that homeowners' policyholders

could not have had a reasonable expectation of flood coverage.

At oral argument, this Court asked about <u>Doerr v. Mobil Oil Corp.</u>, 774 So. 2d 119 (La.

2000). In <u>Doerr</u>, the insured, St. Bernard Parish, was seeking coverage under a commercial

general liability policy in a personal injury lawsuit. The plaintiffs alleged that they were injured

by hydrocarbons discharged by Mobil Oil into the Mississippi River, which then traveled

through the St. Bernard Parish water supply system to the plaintiffs' homes. <u>Id.</u> at 122. The

court concluded that a pollution exclusion was ambiguous because "pollution" was defined so broadly that the terms of the exclusion literally would apply to commonly-occurring events that one would not consider "pollution," such as "a slip and fall on spilled gasoline at a corner service station." Id. at 124. The court held that the pollution exclusion "was neither designed nor intended to be read strictly to exclude coverage for all interactions with irritants or contaminants of any kind." Id. at 135.

Here, in contrast, neither the Water Damage Exclusion nor the word "flood" is so broad that it would encompass frequently-occurring events that would not fall within the generally-accepted definition of "flood." Additionally, Louisiana appellate courts have recognized, at least implicitly, that the analysis in Doerr is generally not applicable to exclusions other than the pollution exclusion. See Alexis v. Southwood Ltd. P'ship, 792 So. 2d 100, 102 (La. App. 4th Cir. 2001) (applying Doerr analysis to pollution exclusion but not to communicable disease exclusion); Harrison v. R.R. Morrison & Son, Inc., 862 So. 2d 1065, 1073 (La. App. 2 Cir. 2003) (Caraway, J., concurring) (recognizing that Doerr is limited to the "general pollution exclusion").

To the extent that Doerr reflected a concern that insurance for pollution risks was not available in the marketplace, that concern is clearly not applicable with regard to coverage for the risk of flood given the availability of federally-subsidized flood coverage.

**Question No. 3:**    **If the Court should find the flood exclusion to be ambiguous, would the question of whether a policy holder had a reasonable expectation of coverage go to a jury or does it remain a question of law?**

**Brief Answer:**    The application of the reasonable expectations doctrine, where appropriate, is a question of law for the Court.

While few Louisiana cases address the reasonable expectations doctrine, and none have directly addressed this question, Louisiana courts likely would hold that the application of the

reasonable expectations doctrine is a question of law.  In <u>La. Ins. Guar. Ass'n</u>, the Louisiana

Supreme Court concluded that the policy language in the excess insurance policy at issue

unambiguously provided that the excess coverage would not "drop down" upon insolvency of the

primary insurer.  <u>La. Ins. Guar. Ass'n</u>, 630 So. 2d at 766.  Despite finding no ambiguity and

recognizing that it was unnecessary to address the reasonable expectations doctrine, the court

touched on how the doctrine might be applied in that case if an ambiguity had existed and, in so

doing, applied the doctrine as a matter of law.  The Court looked to the "purpose of excess

insurance," the "nature of excess insurance coverage" and the fact that "[t]he reduced premium

reflects the parties' intent that excess coverage attaches only after a predetermined amount of

primary coverage has been exhausted."  <u>Id.</u> at 767-68.  Based on these factors, it agreed with

other courts holding that, as a matter of law, an insured does not have a reasonable expectation of

"drop down" coverage from an excess insurer.  <u>Id.</u> at 768.  This analysis demonstrates that the

application of the reasonable expectations doctrine is a question of law for the court, not a

question of fact for a jury.  Courts in a number of other jurisdictions have squarely held that the

application of the reasonable expectations doctrine, where applicable, is a question of law for the

court to resolve.[12]

       This Court, however, need not reach this question.  The flood exclusion is unambiguous.

<u>See</u> Answer to Question No. 1, <u>supra</u>.  Even if the Court were to find an ambiguity, before

applying the reasonable expectations doctrine, a court must determine whether the ambiguity can

be resolved through the Civil Code's principles of contract interpretation.  The "reasonable

---

[12] <u>See, e.g.</u>, <u>Lakeside Non-Ferrous Metals, Inc. v. Hanover Ins. Co.</u>, 172 F.3d 702, 704 (9th Cir. 1999); <u>Smith Kandal Real Estate v. Continental Cas. Co.</u>, 79 Cal. Rptr. 2d 52, 56 (Cal. Ct. App. 1998); <u>Bituminous Cas. Corp. v. Maxey</u>, 110 S.W.3d 203, 213 (Tex. App. 2003); <u>Johnson v. Farm Bureau Mut. Ins. Co.</u>, 533 N.W.2d 203, 206 (Iowa 1995); <u>Meyer v. Classified Ins. Co.</u>, 531 N.W.2d 416, 418 (Wis. Ct. App. 1995); <u>Sicoli v. State Farm Mut. Auto. Ins. Co.</u>, 464 N.W.2d 300, 303 (Minn. Ct. App. 1990).

expectations" doctrine is applied at the last step of the analysis, as an alternative to the rule that irreconcilable ambiguities in insurance policies are construed against insurers. See La. Ins. Guar. Ass'n, 630 So. 2d at 764 ("[i]f after applying the other general rules of construction an ambiguity remains," "[a]mbiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered").

The Civil Code supports application of the exclusions here. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." Id., art. 2049. "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages" and other evidence where appropriate. Id., art. 2053. In this regard, "[e]quity . . . is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another" and "[u]sage . . . is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation." Id., art. 2055. Only "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." Id., art. 2056.

Here, even if the Court were to find an ambiguity in the Water Damage Exclusion, the Court should hold, based on these principles, that the exclusion applies to a large-scale inundation regardless of the cause. Such an interpretation "best conforms to the object of the contract" in light of the nature of the contract and allows neither party to unjustly enrich itself. See Answer to Question No. 2, supra. There should be no need to reach the "reasonable expectations" doctrine.

**Question No. 4:**      **Is the anti-concurrent clause applicable if the flood exclusion does not apply to third-party negligence?  In other words, if the flood exclusion**

15

does not apply to flooding caused by third-party negligence, is the anti-concurrent cause provision irrelevant?

**Brief Answer**:  If the flood exclusion were limited in scope to flooding resulting from "natural" causes, the anti-concurrent causation clause would remain applicable because a powerful "natural" force -- Hurricane Katrina -- contributed to the water damage to Plaintiffs' property.

The ISO Insurers vigorously dispute the assumption of this question -- that the Water Damage Exclusion (if read separately, without the anti-concurrent causation clause) does not preclude coverage where flooding is the result of third party negligence. The anti-concurrent causation clause preceding the Water Damage Exclusion provides that "We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." (App. at INS 9, 56, 96, 136, 171 (emphasis added).) Nothing in the exclusion or its context supports importing an extraneous concept of causation into the word "flood." Matters of causation are addressed in the anti-concurrent causation clause, not in the meaning of the word "flood."

Accepting arguendo the Court's assumption that the word "flood" does not include an inundation caused by third-party negligence, the anti-concurrent causation clause in the exclusion would still apply because it is undisputed that the flooding was, at least partially, the result of natural causes, <u>i.e.</u>, Hurricane Katrina. At oral argument, counsel for the amicus, who was the designated spokesperson for Plaintiffs, emphasized that "what we're talking about is damages that flowed from a hurricane." (Transcript, at 83.) <u>See also</u> Amended & Restated Complaint in <u>Chehardy</u>, ¶ 58 (alleging that "[t]he first efficient proximate cause of the losses . . . was 'windstorm'"). The anti-concurrent causation clause provides that the exclusion applies "regardless of any other cause or event contributing concurrently or in any sequence to the loss."

Thus, given that there was a powerful natural force involved in causing the flood, the exclusion would still apply, even if the flood partially resulted from negligence.[13]

A Louisiana court of appeal has applied an anti-concurrent causation clause to bar coverage even though negligence contributed to the loss.  In Sweeney v. City of Shreveport, 584 So. 2d 1248 (La. App. 2 Cir. 1991), writ denied, 589 So. 2d 1057 (La. 1991), the insured's home was demolished by the City because it was in a dilapidated condition.  The City had mistakenly identified the house's street number and sent the notices of condemnation and demolition to the wrong person.  Id. at 1249-50.  The policy contained an ordinance or law exclusion with anti-concurrent causation language identical to the ISO Insurers' Policies.  Id. at 1250.  The court emphasized that "the exclusion provides that any loss directly or indirectly resulting from enforcement of an ordinance is excluded regardless of any contributing causes."  Id. at 1251. The court held that "[i]t may be true that the negligence of the city employees resulted in Mrs. Sweeney not getting notice and that this negligence contributed to the demolition of the house; however, the exclusion by its own terms still applies."  Id.  See also Prytania Park Hotel v. General Star Indem. Co., 896 F. Supp. 618, 624 (E.D. La. 1995) (Jones, J.) (enforcing anti-concurrent causation language); Travelers Indem. Co. v. Powell Ins. Co., 1996 WL 578030, at *3

---

[13] In this respect, the losses alleged here are fundamentally different from the losses alleged in Leonard v. Nationwide Mut. Ins. Co., 438 F. Supp. 2d 684 (S.D. Miss. 2006) and Tuepker v. State Farm Fire & Cas. Co., 2006 WL 1442489 (S.D. Miss. May 24, 2006), where the insureds were seeking to recover for discrete damage caused exclusively by wind in addition to flood damage.  As explained in the Answer to Question No. 5 below, the Policies would provide coverage for discrete wind damage.  In this case, however, Plaintiffs seek to recover only for water damage caused by a broken levee wall. (Petition, 3, 4, 7, 10.)

(E.D. La. Oct. 4, 1996) (Vance, J.) (holding that water damage exclusion containing anti-concurrent causation language was unambiguous).[14]

This Court is required to follow <u>Sweeney</u> "unless convinced by persuasive data that the [Louisiana Supreme Court] would decide differently." <u>Team Envtl. Servs., Inc. v. Addison</u>, 2 F.3d 124, 127 (5th Cir. 1993). Here, there is no "persuasive data" suggesting that the Louisiana Supreme Court, which denied a writ of certiorari in <u>Sweeney</u>, would not follow <u>Sweeney</u>.

There is very little authority nationwide to support Plaintiffs' position that the anti-concurrent causation clause is unenforceable. Washington and West Virginia are the only two jurisdictions that have refused (albeit in very different contexts) to enforce anti-concurrent causation clauses absent a controlling statute. The West Virginia opinion is addressed in Part II herein. Washington has retreated from its position in the context of the flood exclusion, and has recognized that, in applying a water damage exclusion, it is inappropriate to inquire into what caused the "flood." <u>See</u> <u>Kish</u>, 883 P.2d at 312-13 (holding that water damage exclusion applied to loss caused by failure of dikes, stressing that "[a]n insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss"). Thus, even in Washington, the courts would not allow an insured to avoid a water damage exclusion by attempting to characterize an inundation that everyone would call a flood as "negligence."[15]

---

[14] <u>See also</u> <u>TNT Speed & Sport Ctr.</u>, 114 F.3d at 733; <u>Front Row Theatre</u>, 18 F.3d at 1347; <u>Kane</u>, 768 P.2d at 685-86; <u>Pakmark</u>, 943 S.W.2d at 261; <u>Sunshine Motors</u>, 530 N.W.2d at 121; <u>Casey</u>, 578 N.Y.S.2d at 338; <u>Florida Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron</u>, 721 So. 2d 825, 826 (Fla. Ct. App. 1998).

[15] Washington courts have read <u>Kish</u> as limiting <u>Safeco Insurance Co. v. Hirschmann</u>, 773 P.2d 413 (Wash. 1989), insofar as <u>Hirschmann</u> relied on reasonable expectations to refuse to enforce anti-concurrent-cause language. So long as both the immediate cause and the efficient proximate cause (when acting with the immediate cause) are excluded, coverage will be denied. <u>Findlay v. United Pac. Ins. Co.</u>, 895 P.2d 32, 35 (Wash. Ct. App. 1995), <u>aff'd</u>, 917 P.2d 116 (Wash. 1996) (no coverage for landslide caused by wind and rain, given exclusions for earth

**Question No. 5:**   **Is the anti-concurrent clause ambiguous?  Specifically, because the definition of loss is not defined, could an insurer deny coverage in toto for a covered peril i.e. wind-when a dwelling is also damaged by flood waters?**

**Brief Answer:**   No.  The anti-concurrent causation clause is unambiguous.  It applies only to the "loss" caused by Water Damage.  Regardless, there is no reasonable interpretation of the anti-concurrent causation clause that would result in coverage for Plaintiffs' claims.

The anti-concurrent causation clause is unambiguous.  It provides as follows:

We do not insure for loss caused directly or indirectly by any of the following [e.g.., Water Damage].  *Such loss* is excluded regardless of any other cause or event contributing concurrently or in any sequence to *the loss.*

(App. at INS 9, 56, 96, 136, 171 (emphasis added).)  The first sentence defines a particular "loss": one "caused directly or indirectly by [Water Damage]."  Subsequent use of the adjective "such" and the definite article "the" in the second sentence directs the reader to the defined "loss" from the prior sentence, and thereby assigns the same definite meaning to each subsequent use of the word "loss."  The terms "such loss" and "the loss" plainly refer to the same "loss" described in the immediately preceding sentence -- that is, the  "loss caused directly or indirectly by" Water Damage.  See Leonard, 438 F. Supp. 2d at 693 (holding that, under an essentially identical provision, "[t]he 'loss,' 'such a loss,' and 'the loss' referred to in this paragraph is, in this instance, damage caused by rising water during Hurricane Katrina").  Thus, even if excluded Water Damage happens at the same time, any damage resulting directly from wind, such as wind damage to the roof of a home that is flooded on the first floor, is covered.

In an attempt to manufacture an ambiguity, Plaintiffs have argued that it is possible to construe the words "the loss" in the second sentence as referring to all of the damage that might

---

movement and weather conditions acting together with earth movement).  Here, both flood and faulty design, construction or maintenance acting together with flood are excluded.

be caused to the property at (about) the same time. Plaintiffs, however, are not asking the Court

to actually apply the exclusion in this fashion and exclude all of the damage to their homes.

Furthermore, as explained during oral argument, Defendants disagree with this interpretation,

which, in any event, would be an unreasonable reading of the language because the word "loss"

would mean two different things in the same sentence.

Even if the Court were to conclude that the anti-concurrent causation clause could also be

read to deny coverage for all damage happening at (about) the same time, the Court would have

to select one of those two interpretations. Gedward v. Sonnier, 728 So. 2d 1265, 1269 (La.

1999). A finding of ambiguity does not provide a court with license to disregard the language

altogether or rewrite the policy. Here, under either of the two interpretations described above,

the damage for which Plaintiffs seek to recover, all resulting from floodwaters, would be

excluded. (See Petition, ¶¶ 3, 7, 10.)

| **Question No. 6:** | **With respect to Section I Exclusions, No. 2, if the Court finds the flood exclusion not applicable to third party negligence, would a flood occurring because of such third party negligence be an "ensuing loss" and thereby covered?** |
|---|---|
| **Brief Answer**: | Yes, but only if the Court were to conclude as a matter of law that the flood was caused *exclusively* by negligence. Otherwise, the anti-concurrent causation clause would bar coverage. See Ans. to Question No. 4. In any event, the Court need not reach this question because the Water Damage Exclusion is unambiguous. See Ans. to Question No. 1. |

If the Court were to conclude that the water damage to Plaintiffs' homes was caused

exclusively by negligence and that the Water Damage Exclusion is not applicable to loss caused

by flood resulting exclusively from negligence, then the exclusion for faulty or inadequate

design, construction, maintenance or repair (hereinafter, the "Faulty Work Exclusion") would be

inapplicable. Under those circumstances, the inundation of Plaintiffs' homes would be an

"ensuing loss" within the meaning of the lead-in clause to the Faulty Work Exclusion, which provides as follows: "We do not insure for loss to property described in Coverages A and B caused by any of the following.  However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered."  (App. at INS 10, 56, 97, 137, 172.)

As the Fifth Circuit articulates Louisiana law, an "ensuing loss" is one involving damage that is distinct and separable from the excluded damage.  <u>Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.</u>, 219 F.3d 501, 505 (5th Cir. 2000).  For example, "defective workmanship in installing the wiring of a building would be excluded as 'faulty workmanship' but . . . if the defective wiring resulted in a fire, the fire damage to other parts of the building would be covered."  <u>Id.</u>

Here, if the sole cause of the loss were faulty design or construction of the levees, the release of water would be a subsequent, distinct and separable event that would be an "ensuing loss."  In this case, however, the ensuing loss clause does not apply because the ensuing loss -- the flood -- is excluded by the policy.  Courts have repeatedly held that an ensuing loss clause cannot "make an excluded loss reappear as a covered loss . . . ."  <u>Fiess v. State Farm Lloyds</u>, 2006 WL 2505995, at *6 (Tex. Aug. 31, 2006).  <u>See also</u> <u>Morgan v. Auto Club Family Ins. Co.</u>, 899 So. 2d 135, 137 (La. App. 3 Cir. 2005) (holding that mold could not be an "ensuing loss" where policy excluded mold); <u>Capelouto v. Valley Forge Ins. Co.</u>, 990 P.2d 414, 419 (Wash. Ct. App. 1999) ("Ensuing loss provisions are exceptions to policy exclusions and thus should not be interpreted to create coverage.").

21

**Question No. 7:**      Since the policy includes coverage for property "not on the residence premises", is the "property" referred to in Section I Exclusions, No. 2, e.g. "of part or all of any property whether on or off the residence premises," limited to property which may be insured but is not located upon "residence premises."

**Brief Answer:**      No.  The coverage for off-premises property applies only to personal property.  The Faulty Work Exclusion applies only to the coverage for dwellings and other structures, and only on the "residence premises."  The two do not interact.

The lead-in clause to the Faulty Work Exclusion makes clear that the exclusion applies only to "loss to property described in Coverages A and B . . . ." (App. at INS 10, 56, 97, 137, 172.)  Coverage A provides coverage for "[t]he dwelling on the 'residence premises'" and for "[m]aterials and supplies located on or next to the 'residence premises' used to construct, alter or repair the dwelling or other structures on the 'residence premises.'" (Id. at INS 3, 49, 90, 130, 163.)  Coverage B provides coverage for "other structures on the 'residence premises' set apart from the dwelling by clear space." (Id.)  Coverage C, in contrast, provides coverage for "personal property owned or used by an 'insured' while it is anywhere in the world," with certain limitations. (Id.)  Given that the Faulty Work Exclusion applies only to Coverages A and B, which do <u>not</u> cover property that is away from the "residence premises," the reference to property "off the 'residence premises'" necessarily refers to property not insured by the policy.  If the phrase "part or all of any property whether on or off the 'residence premises'" were interpreted to mean only insured property that is off the residence premises, the entire phrase would be essentially meaningless.

Courts have applied this exclusion in circumstances where the faulty design, construction or maintenance, etc. occurs on non-insured property away from the residence premises.  <u>Waldsmith v. State Farm Fire & Cas. Co.</u>, 283 Cal. Rptr. 607, 608 (Cal. Ct. App. 1991) (loss

caused by negligently maintained water main, off the insured's property); El Rincon Supportive Servs. Org., Inc. v. First Nonprofit Mutual Ins. Co., 803 N.E.2d 532, 538 (Ill. App. Ct. 2004) (loss resulted from faulty construction work on property adjacent to insured's property).

## II.   *MURRAY* IS CONTRARY TO LOUISIANA LAW, INAPPOSITE AND WRONGLY DECIDED

### A.   *Murray* Confused The Definition of "Landslide" With The Cause of The Event

In Murray, the plaintiffs' homes were damaged by rocks falling from a 50-foot highwall next to their homes. 509 S.E.2d at 4. The insurance policies excluded coverage for loss caused by "earth movement," which was defined to include "landslide" and "erosion." Id. at 8. The plaintiffs contended that the cause of their losses was negligent construction of the highwall, not a "landslide" or "erosion." Id. 5-6. The trial court entered summary judgment in favor of the insureds, finding that the loss was caused by "rockfall" and "weathering," not by "landslide" or "erosion." Id. at 7.

The West Virginia Supreme Court reversed, holding that "the plain, ordinary meaning of the word 'landslide' . . . contemplates a sliding down of a mass of soil or rock on or from a steep slope." Id. at 8. If the court had been applying Louisiana law, the court's analysis would have ended at that point. In Louisiana, when a term used in an insurance policy has a "generally prevailing meaning," a court cannot engage in further interpretation but must apply the language as written. See La. Civ. Code art. 2046, 2047; Cadwallader, 848 So. 2d at 580.

Despite finding the term "landslide" unambiguous, the court found an ambiguity because the exclusion could be construed to apply only to landslides caused by "natural events," by human acts or omissions, or both. Murray, 509 S.E.2d at 9. The court erred in confusing the

definition of landslide with the cause of the event.  Matters of causation are properly addressed

in the anti-concurrent causation clause, or (in the absence of such a clause) in the application of

an efficient proximate cause test, not in the definition of a term such as "landslide."

### B.      *Murray* Improperly Applied the Reasonable Expectations Doctrine

Murray went on to adopt an efficient proximate cause rule that "when the loss is caused

by a combination of covered and specifically excluded risks, the loss is covered if the covered

risk was the efficient proximate cause of the loss," that is, the "dominant, efficient [cause] that

sets the other causes in operation . . . ."  Id. at 11.  The court did not change the meaning of

"landslide" (which it found unambiguous), but rather concluded that the exclusion would not

apply if the efficient proximate cause of the landslide was a covered cause of loss (negligence).

The Murray court recognized that State Farm's anti-concurrent causation clause was

intended to contract out of the efficient proximate cause doctrine, but decided to disregard that

clause on "reasonable expectations" grounds.  In doing so, Murray recognized that "[b]efore the

doctrine of reasonable expectations is applicable to an insurance contract, there must be an

ambiguity regarding the terms of that contract."  Id. at 14 n.12.  The court, however, did not find

the key language in the anti-concurrent causation clause ambiguous. The court found that subpart

(d) of the State Farm lead-in clause was ambiguous, but did not find any ambiguity in the first

sentence of the clause or subparts (a), (b) or (c).[16]  Id. at 13.  In the absence of an ambiguity, the

---

[16] The State Farm "Lead-In Clause" provided as follows: "We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events.  We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these."  Id. at 13.

court should have enforced that language, in accordance with the many jurisdictions (including Louisiana) that have done so.  See Ans. to Question No. 5, supra.

## C.   *Murray* Erred in Refusing To Enforce Anti-Concurrent Causation Language

Murray decided to disagree with the 18 different jurisdictions, including Louisiana, in which courts have recognized that an insurer may use anti-concurrent causation language to avoid application of the efficient proximate cause doctrine.[17]  The Murray court reasoned that "the insured is not presumed to know the contents of an adhesion-type insurance policy delivered to him." 509 S.E.2d at 14 & n.14.  This reasoning, which was critical in Murray, is clearly contrary to Louisiana law.  See Lewis v. Hamilton, 652 So. 2d 1327, 1330 (La. 1995) (stating that, while "an insurance policy is an adhesionary contract," the contract may be construed in favor of the insured "only . . . when there are two equally reasonable interpretations of the contractual provision in question"); Dobson, 2006 WL 2078423, at *9 ("An insured party is generally responsible for reading his policy, and he is presumed to know its provisions.").[18]

Murray also reasoned that enforcing anti-concurrent cause language would render coverage illusory because "in most instances, an insurer can point to some arguably excluded

---

[17] While Murray only acknowledged five decisions reaching a contrary result, in fact courts in 17 different jurisdictions have squarely held that anti-concurrent causation language may be used to contract out of the efficient proximate cause doctrine.  See Exhibit A hereto.  In addition, the Louisiana Court of Appeal decision in Sweeney recognizes that an exclusion with anti-concurrent causation language applies regardless of whether negligence contributes to the loss.  Sweeney, 584 So. 2d at 1251.

[18] See also J.M. Brown Constr. Co. v. D&M Mech. Contractors, Inc., 222 So. 2d 93, 99 (La. App. 1969) (refusing to apply adhesion contract principles or consider whether insured "possessed [a] 'reasonable expectation' of coverage" where there was no ambiguity); Jack v. Adriatic Ins. Co., 420 So. 2d 1292, 1293 (La. App. 3 Cir. 1982) ("Although the contract appears to be one of adhesion, we find no grounds to spare plaintiff of the terms to which he has bound himself.  Policies of insurance are contracts between the parties, and as such they are the law between them, unless contrary to statutory law or public policy."); T.H.E. Ins. Co. v. Larsen Intermodal Serv., Inc., 242 F.3d 667, 674 (5th Cir. 2001) (stating rule that "an insured is presumed to know the provisions of his policy"); Stephens v. Audubon Ins. Co., 665 So. 2d 683, 686 (La. App. 2 Cir. 1995) (stating same rule); Perkins v. Shelter Ins. Co., 540 So. 2d 488, 490 (La. App. 1 Cir. 1989) (stating same rule).

contributing factor . . . ." 509 S.E.2d at 14-15. This conclusion was clearly erroneous. Insurers

pay for covered losses under homeowners' policies every day.

Ultimately, the court in Murray remanded the case for a trial as to whether the efficient

proximate cause of the damage to the plaintiffs' property was human negligence (a covered peril)

or the "natural events of a landslide or erosion" (excluded perils). Id. at 17. Contrary to what

has been suggested by the amicus in the current case, Murray did not find that the exclusion was

inapplicable as a matter of law if any part of the cause of the loss was negligence.

### D.      Murray Is Clearly Distinguishable From This Case

Even if it were correctly decided, Murray would not support Plaintiffs' position in this

case. Here, the term "flood" is unambiguous. See Answer to Question No. 1, supra. The anti-

concurrent cause provision in the ISO Insurers' Policies has been held to be clear, unambiguous

and enforceable by a Louisiana appellate court, as well as courts in 17 other jurisdictions. See

Answer to Question No. 4, supra. With Washington's retrenchment from the position, West

Virginia stands alone in refusing to give the anti-concurrent cause provision full force and effect

in the absence of a controlling statute. Moreover, Louisiana law, contrary to Murray, prohibits

courts from disregarding clear policy language based on adhesion contract principles. See

footnote 18, supra. In addition, the ISO Insurers' Policies contain separate exclusions for the

only conceivable causes, other than flood, of Plaintiffs' losses -- the Faulty Work Exclusion and

the "Weather Conditions" exclusion.[19] (See App. at INS 10, 56, 97, 137, 172.) Thus, even if this

Court disregarded Louisiana appellate authority and refused to enforce the anti-concurrent cause

---

[19] The "Weather Conditions" exclusion has been held to be enforceable by the California Supreme Court, despite the fact that a California statute prohibits the enforcement of the anti-concurrent cause provision. Julian v. Hartford Underwriters Ins. Co., 110 P.3d 903, 911 (Cal. 2005).

provision, the losses alleged would still be excluded because the two "concurrent" causes being

proposed -- wind and negligent construction or maintenance -- are separately excluded.

    Dated this 11th day of September, 2006.

                                  Respectfully submitted,

Christopher W. Martin (pro hac vice)
Texas Bar 13057620
Federal ID 13515
Martin R. Sadler (pro hac vice)
Texas Bar 00788842
Federal ID 18230
MARTIN, DISIERE, JEFFERSON &
WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

Attorneys for Hartford Insurance Company of
the Midwest (incorrectly named as Hartford
Insurance Company)

Ralph S. Hubbard III, T.A., La. Bar. # 7040
Joseph P. Guichet, La. Bar # 24441
Seth A. Schmeeckle, La. Bar # 27076
LUGENBUHL, WHEATON, PECK,
           RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:   (504) 568-1990
Facsimile:   (504) 310-9195

Attorneys for The Standard Fire Insurance
Company (incorrectly named as Travelers
Insurance Company and St. Paul Travelers
Insurance Company), Hartford Insurance
Company of the Midwest (incorrectly named
as Hartford Insurance Company) and Hanover
Insurance Company

Paul E. B. Glad (pro hac vice)
Kevin P. Kamraczewski (pro hac vice)
Andrew R. Greene
SONNENSCHEIN NATH & ROSENTHAL
LLP
7800 Sears Tower
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Attorneys for Hanover Insurance Company

Stephen E. Goldman (pro hac vice)
Wystan M. Ackerman (pro hac vice)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone:   (860) 275-8255
Facsimile:   (860) 275-8299

Attorneys for The Standard Fire Insurance
Company (incorrectly named as Travelers
Insurance Company and St. Paul Travelers
Insurance Company)

Neil C. Abramson (21436)
Nora B. Bilbro (22955)
Curt L. Rome (29406)

PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

Attorneys for Unitrin Preferred Insurance
Company, erroneously identified as Kemper
Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Joint Supplemental Memorandum

of Defendants The Standard Fire Insurance Company, Hartford Insurance Company of the

Midwest, Hanover Insurance Company and Unitrin Preferred Insurance Company in Further

Support of Their Rule 12 Motions has been served upon all known counsel of record by placing

same in the United States mail, postage prepaid and properly addressed, this 11th day of

September, 2006.

28

## EXHIBIT A:  CASES ENFORCING ANTI-CONCURRENT CAUSATION LANGUAGE

### Louisiana Appellate Authority

Sweeney v. City of Shreveport, 584 So. 2d 1248, 1251 (La. App. 2 Cir. 1991), writ denied, 589
So. 2d 1057 (La. 1991) (applying anti-concurrent causation language, holding that "the exclusion
provides that any loss directly or indirectly resulting from enforcement of an ordinance is
excluded regardless of any contributing causes," and that "[i]t may be true that the negligence of
the city employees resulted in Mrs. Sweeney not getting notice and that this negligence
contributed to the demolition of the house; however, the exclusion by its own terms still
applies").

### Louisiana Federal Court Authority

Prytania Park Hotel v. General Star Indem. Co., 896 F. Supp. 618, 624 (E.D. La. 1995) (Jones,
J.) (holding that ordinance or law exclusion barred coverage for cost of sprinkler system required
by building code after fire loss, concluding that, under anti-concurrent causation language, it was
"inconsequential . . . whether the fire which caused the loss occurred before the repair that
required installation of a sprinkler system")

Travelers Indem. Co. v. Powell Ins. Co., Civ. A. No. 95-4188, 1996 U.S. Dist. LEXIS 15041
(E.D. La. Oct. 4, 1996) (Vance, J.) (enforcing water damage exclusion with anti-concurrent
causation language)

### Cases In Other Jurisdictions Holding That Anti-Concurrent Causation Clauses May Be Used to Preclude Application of the Efficient Proximate Cause Doctrine

### Federal Courts of Appeals

TNT Speed & Sport Ctr., Inc. v. American States Ins. Co., 114 F.3d 731, 733 (8th Cir. 1997)
(affirming district court's ruling that "the plain meaning of the exclusionary language was to
directly address, and contract out of, the efficient proximate cause doctrine and exclude coverage
for losses caused by water, regardless of the existence of any other contributing causes in any
sequence") (case involved levee that broke as result of vandalism)

Front Row Theatre, Inc. v. American Mfrs. Mut. Ins. Co., 18 F.3d 1343, 1347 (6th Cir. 1994)
("When damage to an insured's property is caused by both a covered and an excluded event,
coverage may be expressly precluded by language in the policy.")

### State Appellate Courts Outside Louisiana

State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 314 (Ala. 1999) ("To elevate the efficient-
proximate-causation rule to a principle of public policy today would invade the province of the
Legislature, because it has delegated to the Commissioner of the Department of Insurance the
responsibility of supervising insurance policies.  . . . [T]he rule of efficient proximate causation

. . . does not require us to invalidate the earth-movement exclusion, which indicates State Farm's efforts to contract for narrower coverage.").

Pakmark Corp. v. Liberty Mut. Ins. Co., 943 S.W.2d 256, 261 (Mo. Ct. App. 1997) (damage caused by flood water from failure of levee as well as sewer backup; court affirmed summary judgment for the insurer, stressing that the policy expressly provided "that an exclusion is an exclusion regardless of any other cause that contributes to the loss, either concurrently or in any sequence to the loss)

Toumayan v. State Farm Gen. Ins. Co., 970 S.W.2d 822, 826 (Mo. Ct. App. 1998) ("The parties to an insurance contract can contract out of the efficient proximate cause doctrine by exclusionary language.")

Sunshine Motors, Inc. v. New Hampshire Ins. Co., 530 N.W.2d 120, 121 (Mich. Ct. App. 1995) (holding that "proximate cause" of loss was irrelevant where water damage exclusion contained anti-concurrent causation language)

Chase v. State Farm Fire & Cas. Co., 780 A.2d 1123, 1130 (D.C. 2001) (holding that efficient proximate cause rule was inapplicable where policy contained anti-concurrent causation language)

State Farm Fire & Cas. Co. v. Bongen, 925 P.2d 1042, 1044-45 (Alaska 1996) ("We favor the majority rule. . . . We can discern no sound policy reason for preventing the enforcement of the earth movement exclusion to which the parties in this case agreed.  We therefore align ourselves with those courts holding that an insurer may expressly preclude coverage when damage to an insured's property is caused by both a covered and an excluded risk. ")

Kane v. Royal Ins. Co., 768 P.2d 678, 684 (Colo.1989) ("[T]he 'efficient moving cause' rule must yield to the language of the insurance policy in question.")

Millar v. State Farm Fire & Cas. Co., 804 P.2d 822, 826 (Ariz. App. 1990) ("We have never adopted the "efficient proximate cause" rule. In Arizona an insurer is permitted to limit its liability unless to do so would be inconsistent with public policy.")

Ramirez v. American Family Mut. Ins. Co., 652 N.E.2d 511, 516 (Ind. App. 1995) ("The exclusion unequivocally states that loss resulting from sump pump failure is not covered 'regardless of any other cause or event contributing concurrently or in any sequence to the loss.' Thus, the fact that the sump pump failure was preceded by a power outage resulting from the accumulation of ice on the power lines does not remove the Ramirezes' claim from this exclusion.")

Kula v. State Farm Fire & Cas. Co., 628 N.Y.S.2d 988, 991 (N.Y. App. Div. 1995) ("New York has no such legislation that would circumvent the 'lead-in' clause of the State Farm policy. Only the most direct and obvious cause should be looked to for purposes of the exclusionary clause. Furthermore, the principles of causation should not be strictly applied to circumvent the intent of the parties.  Therefore, we conclude that there is no ambiguity in the language of this policy and

that it specifically excludes coverage for damages resulting from earth movement even though the cause of the earth movement is a covered peril.")  (citations omitted)

Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272, 1277 (Utah 1993) ("We believe that the proper path to follow is to recognize the efficient proximate cause rule only when the parties have not chosen freely to contract out of it.")

Jussim v. Mass. Bay Ins. Co., 610 N.E.2d 954, 957-58 (Mass. 1993) ("The plaintiffs' policy's exclusion section has a preamble providing: 'We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.' If the pollution exclusion had been listed in the general exclusion section, following this preamble, an insured plainly would be foreclosed from invoking the train of events rule [a/k/a efficient proximate cause rule] . . .")

**Federal District Courts Outside Louisiana**

Schroeder v. State Farm Fire & Cas. Co., 770 F. Supp. 558, 561 (D. Nev. 1991) ("[T]he parties could, as they did, contract out of the efficient proximate cause doctrine without violating public policy.")

Preferred Mut. Ins. Co. v. Travelers Cos., 955 F. Supp. 9, 12 (D. Mass. 1997) ("The effect of this [anti-concurrent causation] language is that the 'chain of events' rule is avoided and liability for the fire loss in this case is effectively excluded without regard to the efficient proximate cause of the fire.").

Assurance Co. of Am. v. Jay-Mar, Inc., 38 F. Supp. 2d 349, 354 (D.N.J. 1999) (recognizing that "most courts which have addressed this issue have found that exclusionary language designed to avoid the 'efficient proximate cause' doctrine is enforceable" and ruling that "[b]ecause the New Jersey Supreme Court has not given this Court reason to believe otherwise, this Court finds that New Jersey would follow the majority rule").

Paulucci v. Liberty Mut. Fire Ins. Co., 190 F. Supp. 2d 1312, 1320 (M.D. Fla. 2002) ("holding that "under Florida law, parties can contract around the concurrent cause doctrine through an express anti-concurrent cause provision")

Kelly v. Farmers Ins. Co., 281 F. Supp. 2d 1290, 1298 (W.D. Okla. 2003) (recognizing that "[a]mong the jurisdictions that have adopted the efficient proximate cause doctrine, most permit parties to 'contract around' it," and following majority rule).