

# U.S. Department of Justice

*Civil Division, Torts Branch*
*Federal Tort Claims Act Staff*

Traci L. Colquette
Trial Attorney

Post Office Box 888
Benjamin Franklin Station
Washington, D.C. 20044

Telephone: (202) 305-7536
Facsimile: (202) 616-5200

PJP:TColquette
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

September 12, 2006

<u>VIA FACSIMILE and U.S. MAIL</u>
Honorable Joseph C. Wilkinson, Jr.
B409 Hale Boggs Federal Bldg.
500 Poydras Street
New Orleans, LA 70130

Re:  <u>In Re: Katrina Canal Breaches Consolidated Litigation, No. 05-4182 (All Levee)</u>

Amendment to 17th Street Protocol

Dear Judge Wilkinson:

Pursuant to the requirements in the Court's August 25, 2006 Order (Doc. 1039) and by agreement of the parties, the undersigned provides the following amendment to the 17th Street Protocol.[1] This amendment has been formulated after receiving input from liaison counsel for both plaintiffs and defendants.

The 17th Street Protocol described a procedure for removing the failed floodwall materials at the 17th Street construction site according to which it could be possible for the parties to view the connections of the existing concrete monoliths where they meet the existing sheeting. *See* Doc. 503 at #2, pp. 2-3. For the reasons stated in the attached declaration, it is now believed that will not be possible for parties to view the connection between the monoliths and sheet piles in the area of the construction site containing monoliths H24 through H31 (the area in which a Type 1 TRS will be used) without modifying the existing construction contract. Such modification

---

[1] Counsel for Boh Brothers already has provided to Plaintiffs' liaison counsel the drawings of the site referenced in the Court's Order. Thus, this amendment does not address the drawings.

1

___ Fee _____
___ Process _____
_X_ Dktd _____
___ CtRmDep _____
___ Doc. No _____

09/12/06 TUE 14:57 [TX/RX NO 5397] ☒002

would require substantial and additional costs. Therefore, the parties have agreed to amend the 17th Street Protocol as follows:

1. The procedure for removing the failed floodwall materials at the 17th Street site as is described in the protocol (Doc. 503 at #2, pages 2-3) is suspended and no longer applies to the area of the site containing monoliths H24 through H31. This procedure remains applicable to the area of the site containing monoliths H32 through H37 (the area in which a Type 2 TRS will be used).

The procedure for removing the failed floodwall materials in the area of the site containing monoliths H24 through H31 is described in the attached Declaration of Fred Young, paragraph 9. It is as follows:

excavate to elevation -7.0 feet;
dewater (or drain the water down to) elevation -6.0 feet;
place a brace (or strut) at elevation -6.0 feet;
excavate to elevation -18.0 feet, but the water remains at -6.0 feet of elevation;
remove failed floodwall materials from underneath the water.

2. Once the sheet piles are pulled from underneath the water at the area of the site containing monoliths H24 through H31, reasonable efforts will be made to mark the sheets for identification. For example, a hyphenated number (e.g., "H24-1") will be stamped on the sheet once it is pulled from beneath the water and dried. The number on the left side of the hyphen indicates which monolith the sheet was believed to have been connected to. The number on the right side of the hyphen indicates where the sheet was believed to have been located sequentially on the monolith (e.g., the 1st of 16 sheets). The sheets will then be photographed and measured.

3. Survey data taken from materials excavated at the site after the enactment of this amendment will be forwarded by government counsel to liaison counsel by e-mail the day after such information is recorded. Any survey data collected on weekends or holidays will be forwarded to liaison counsel the next business day.

Other than the above-noted changes, the parties make no further changes to the 17th Street Protocol at this time. Observation of any activities at the site will be permitted as was previously outlined and approved in the 17th Street Protocol.

Sincerely,

Traci Colquette
Tess Finnegan
Robin Smith
Trial Attorneys
Civil Division, Torts Branch

Attachment/Enclosure:     Young Declaration

cc:   (Via email)
      Denise Frederick
      Hugh Lambert
      Alexis Bevis
      Ashton O'Dwyer
      Ralph Hubbard
      Michael Riess
      Charles Colvin

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLLEEN BERTHELOT, ET AL., | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 05-4182 |
| | * | |
| BOH BROTHERS CONSTRUCTION CO., LLC, | * | SECTION "K" (2) |
| ET AL, | * | |
| * * * * * * * * | * | CONS. KATRINA CANAL |

THIS DOCUMENT RELATES TO: ALL LEVEE

## DECLARATION OF FREDERICK S. YOUNG

I, Frederick S. Young, hereby declare the following:

1. I am a project manager employed by the U.S. Army Corps of Engineers, New Orleans District.

2. I am the project manager at the 17th Street construction site.

3. The contractor performing the construction work at the site is Boh Brothers Construction.

4. At the 17th Street construction site, there are 14 remaining concrete monoliths within the area of the canal wall breach. These 14 monoliths are numbered H24 through H37.

5. Monoliths H24 through H31 are in an area of the site in which the construction contract calls for construction of a Type 1 Temporary Retaining System ("Type 1 TRS"). Monoliths H32 through H37 are in an area of the site in which the construction contract calls for the construction of a Type 2 Temporary Retaining System ("Type 2 TRS").

6. The decision to construct a Type 2 TRS in the area containing monoliths H32 through H37 was made at the time the contract was drafted.

1

7. The reason for installing a Type 2 TRS in the area containing monoliths H32 through H37 is that it is believed to be the location of the initial breach, and IPET has requested to see and collect samples from the materials in this area. At the time the contract was drafted with Boh Bros for excavation of sheet piles at the 17th Street site, it did not appear that a Type 1 TRS would be sufficient to meet the needs of the IPET investigation within the area containing monoliths 32 through 37. The IPET investigation did not require physical inspection of and samples from the materials within the area containing monoliths H24 through H31. At the time the contract was drafted, it appeared that a Type 1 TRS would be sufficient to meet the needs of the IPET investigation within the area containing monoliths 24 through 31. The contract was drawn up to allow for a less expensive method of removing the failed floodwall materials from the area that did not require a Type 2 TRS.

8. At this time, the work crew is ready to begin removing the remaining failed floodwall materials from within the Type 1 TRS.

9. For removing the materials within the Type 1 TRS, the contract calls for the following:

excavate to elevation -7.0 feet;
dewater (or drain the water down to) elevation -6.0 feet;
place a brace (or strut) at elevation -6.0 feet;
excavate to elevation -18.0, but the water remains at -6.0 feet of elevation;
remove failed floodwall materials from underneath the water.

10. Dewatering below -6.0 feet would require a modification of the current contract.

11. In most cases, the tops of the sheet piles will be below -6.0 feet. In some cases, the tops of the sheet piles may be below -10.0 feet. In all cases, the connection between the sheet piles and the monoliths is approximately 3-4 feet below the top of the monolith. Consequently, it is believed that the connections between the monoliths and sheet piles are below elevation -10.0

feet and, in some cases, may be below elevation -13.0 feet.

12. If the contract is not modified, then it will probably be necessary to remove monoliths and sheet piles from underneath the water. Additionally, it most likely will not be possible to view the connection between the monoliths and the sheets without dewatering beyond what is called for in the contract.

13. Removing the materials from underneath the water means that the connection between the monolith and sheet piles most likely will be destroyed before it is possible to view the connection.

14. Recognizing that the top of at least one of the sheet piles is estimated to be at an elevation of approximately -10.0 feet, I ordered an engineering analysis from an independent contractor to assess the feasibility to dewater down to -10.0 feet utilizing a Type 1 TRS. This engineering analysis took two weeks and concluded that it is structurally feasible to dewater to an elevation of -10.0. However, structural modifications to the Type 1 TRS would be required. Based on preliminary cost estimates, it would probably cost at least tens of thousands of dollars to implement these structural modifications. This is based on the cost of materials and the cost of delays. Depending on negotiations with Boh Brothers, this estimated cost could increase significantly.

15. I would need to order another engineering analysis in order to determine the feasibility and cost of dewatering a depth between -10.0 and -13.0 feet utilizing a Type 1 TRS. This analysis would probably take weeks to perform and cost the government tens of thousands of dollars.

16. Provided it is feasible to dewater to a depth between -10.0 and -13.0 feet utilizing a

3

modified TRS Type 1, then, based on preliminary cost estimates, it would probably cost at least tens of thousands of dollars to do so. This is based on the cost of materials and the cost of delays. Depending on the outcome of the engineering analysis and negotiations with Boh Brothers, this estimated cost could increase significantly.

17. If we are required to dewater at depths -13.0 feet and below, then we will switch to a Type 2 TRS for safety purposes.

18. If we are required to switch to a Type 2 TRS for any of the area currently containing a Type 1 TRS, I estimate that the excavation will be delayed between 30 and 60 days.

19. According to our cost engineers, the cost of modifying the construction contract in order to switch to a Type 2 TRS for any of the area currently containing a Type 1 TRS would be substantial. The cost for doing so probably would be as much as several hundred thousand dollars, including the costs for new materials, equipment, labor, dewatering, overhead, and the cost of delays for redesigning the TRS, renegotiating the contract with Boh Brothers, and waiting for new materials. This estimate is based on what we know at this time about the locations of the remaining floodwall materials.

20. The Corps' initial estimate that the cost of additional work beyond what is called for in the contract would be between $500,000 and $2,000,000 dollars was based on Boh Brothers' bid sheet estimating the cost of various components of the original contract. When the Court requested additional information, our staff performed an independent analysis to obtain updated figures. These figures, however, represent the government estimate of what it would cost to do the work. The government's cost estimate is kept confidential because the government must then renegotiate the contract with the contractor in order to have the additional work done. Disclosing

a more precise government estimate would substantially disadvantage the government if it becomes necessary to renegotiate the contract.

21. The Type 2 TRS for the area containing monoliths H32 through H37 has not yet been constructed. It will be constructed as follows:

    excavate to elevation -7.0;
    dewater (or drain the water down to) elevation -6.0;
    place a brace at elevation -6.0;
    excavate and dewater to elevation -14.0;
    place a second brace (or strut) at elevation -14.0;
    excavate and dewater to elevation -18.0.

22. Under the current contract, it may be possible to view the connection between the monolith and sheet piles in the area containing monoliths H32 through H37 without modifying the contract due to the use of a Type 2 TRS in this area.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 08 day of September, 2006.

*[signature]* P.E.
FREDERICK YOUNG



**IMPORTANT:** This facsimile is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or it's contents is strictly prohibited. If you have received this transmission in error, please notify us by telephoning and return the original transmission to us at the address given below.

**Date:** September 12, 2006

**Re:** In Re Katrina Canal Breaches Litigation Civil Action No. 05-4182 (All Levee)

**From:** Traci Colquette, Trial Attorney
Fax: (202) 616-5200    Phone: (202) 305-7536

**TO:** Hon. Judge Joseph C. Wilkinson, Jr.
U.S. District Court - EDLA
504-589-7633 (fax)

**NO. PAGES SENT (INCLUDING COVER PAGE):** 9