# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 "K"(2) |
| | * | |
| | * | JUDGE DUVAL |
| | * | |
| | * | MAG. WILKINSON |
| | * | |
| ——————————————— | * | |
| | * | |
| PERTAINS TO: | * | |
| MRGO - C.A. 06-2152 (Reed) | * | |
| C. A. 06-4066 (Ackerson) | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF
## RULE 12(b)(6) MOTION TO DISMISS AND/OR
## RULE 56 MOTION FOR SUMMARY JUDGMENT BASED
## UPON THE AFFIRMATIVE DEFENSE OF PEREMPTION
## UNDER LA. R.S. 9:2772 FILED IN BEHALF OF
## BEAN DREDGING L.L.C., STUYVESANT DREDGING COMPANY,
## and BEAN STUYVESANT L.L.C.

**MAY IT PLEASE THE COURT:**

It is beyond peradventure that the defendant dredging companies are being sued in these

consolidated cases, involving the MRGO, for massive damages based upon the companies carrying

out the normal dredging contracts awarded to them and the directions given to them by the United States Army Corps of Engineers. Enormous litigation expense is being incurred by these defendants, including movant Bean.

Bean Dredging L.L.C., Bean Dredging Corporation, Bean Horizon Corporation, Stuyvesant Dredging Company, Bean Stuyvesant L.L.C. (hereinafter "Bean") have been named as defendants in the above-numbered cases, based upon tort allegations. Bean Dredging L.L.C. is the corporate successor in interest to Bean Dredging Corporation and Bean Horizon Corporation. Stuyvesant Dredging Company is a separate entity. Bean Stuyvesant L.L.C. is a separate entity. For ease of reference all three are referred to as "Bean." Generally, the plaintiffs allege negligence and fault in connection with dredging performed by Bean under contract to the U.S. Army Corps of Engineers ("Corps") in the MRGO,[1] which experienced the storm surge of Hurricane Katrina before, on or after August 29, 2005. Bean brings this Motion to Dismiss and/or for Summary Judgment, based upon La. R.S. 9:2772, in regard to all contracts completed by April 24, 2001, i.e. five years before the first filed suit (Reed) on April 24, 2006.

I.     **INTRODUCTION AND STATEMENT OF THE FACTS**

The claims asserted by the Plaintiffs in the *Reed* and *Ackerson* lawsuits against Bean are in regard to dredging contracts awarded to Bean by the Corps from 1993 to 2004 for the maintenance dredging of the MRGO. Plaintiffs have also asserted claims against the United States of America,

---

[1] The Mississippi River Gulf Outlet ("MRGO").

-2-

through the Corps, for the original design and construction of the MRGO from 1958 through 1965, and the Corps' maintenance dredging of the MRG from 1965 through 2005. Plaintiffs' claims against Bean are that Bean did what the Corps contracted Bean to do. There are other pending suits in the MRGO portion of the consolidated Katrina litigation in which only the Corps is a defendant. Those suits are C.A. Nos.06-2268 (Robinson) and 06-3552 (State of Louisiana).

Plaintiffs in Reed and Ackerson allege that the MRGO is a 76 mile navigational channel constructed by the U.S. Army Corps of Engineers from 1958 to 1965. (Paragraph 7 of Complaint.) Plaintiffs allege that the "Corps of Engineers, using its own fleet of dredges and through maritime dredging contracts with various dredging companies, including Bean, continuously dredge soil from the bottom of the channel." (Paragraph 13 of Complaint.) Plaintiffs allege that "Until approximately 1992, the Corps of Engineers performed all or most of the dredging of the MRGO." (Paragraph 15 of Complaint.) The Plaintiffs allege that "From 1999 to 2004, the New Orleans District of the Corps of Engineers awarded 154 contracts to dredge 352, 636, 430 cubic yards of dredge material. Many of those contracts were awarded to the Defendants." (Paragraph 16 of Complaint.) The Plaintiffs then allege by Defendant name and year the dredging work done in years 1993 through 2005. (Paragraph 17 of Complaint.) Bean is identified in regard to contracts in 1993, 1995, 1996, 1998, 1999, 2002, and 2004. Nowhere in the Complaints do the Plaintiffs allege that Bean did not follow the orders and direction of the Corps of Engineers in performing the dredging contracts. Bean has

-3-

filed herewith its Affidavits showing the "end date" or "acceptance" by the Corps of each Bean contract.

## II.    BEAN SEEKS DISMISSAL OF ALL CLAIMS PURSUANT TO LA. R.S. 9:2772

Bean's Rule 12(b)(6) Motion seeks to dismiss all claims made against Bean which fall within

the perempted period according to La. R.S. 9:2772. Section 2772 is a peremption statute which runs

from the time the contract is accepted.

La. R.S. 9:2772 is the Louisiana statute which controls claims made against contractors who

are engaged to work on immovables in the State of Louisiana. The statute provides as follows:

> **9:2772. Peremptive period for actions involving deficiencies in surveying, design, supervision, or construction of immovables or improvements thereon**
>
> A. No action, whether *ex contractu, ex delicto*, or otherwise, including but not limited to an action for failure to warn, to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property which may include, without limitation, consultation, planning, designs, drawings, specification, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought against any person performing or furnishing land surveying services, as such terms is defined in R.S. 37:682, including but not limited to those services preparatory to construction, or against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9):
>
> (1)(a) More than five years after the date of registry in the mortgage office of acceptance of the work by owner.

(b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than five years after the improvement has been thus occupied by the owner . . .

B. (1) The causes which are perempted within the time described above include any action:

(a) For any deficiency in the performing or furnishing of land surveying services, as such term is defined in R.S. 37:682, including but not limited to those preparatory to construction or in the design, planning, inspection, or observation of construction, or in the construction of any improvement to immovable property, including but not limited to any services provided by a residential building contractor as defined in R.S. 37:2150.1(9).

(b) For damage to property, movable or immovable, arising out of any such deficiency.

( c) For injury to the person or for wrongful death arising out of any such deficiency . . .

(2) Deficiency, as used in this Section, includes failure to warn the owner of any dangerous or hazardous condition, regardless of when knowledge of the danger or hazard is obtained or should have been obtained. . .

C.  If such an injury to the property or to the person or if such a wrongful death occurs during the fifth year after the date set forth in Subsection A, an action to recover the damages thereby suffered may be brought within one year after the date of the injury, but in no event more than six years after the date set forth in Subsection A, even if the wrongful death results thereafter.

D.  Actions for the causes enumerated in Subsection B of this Section, against the persons enumerated in Subsection A of this Section, shall

-5-

prescribe by the applicable prescriptive periods established by law for such actions.

E. · The peremptive period provided by this Section shall not be asserted by way of defense by a person in possession or control, as owner, lessor, tenant, or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury, damage, or death sued upon with regard to any cause of action arising out of the alleged delict, quasi delict, or obligation of any such person arising out his possession or control of the property.

I. Nothing in this Section shall be construed as limiting or modifying the non-liability of contractors for destruction or deterioration of, or defects in, any work, as provided in R.S. 9:2771.

## A.    Louisiana Law Compels Dismissal of all Extinguished Claims

Bean's motion is based on three undisputed facts:

(1)    Bean performed construction or improvements to immovable property, i.e., the MRGO, which was constructed in the period 1958 through 1965 (Complaint, Paragraph 7);

(2)    Bean's dredging contracts for the Corps are set forth in the Complaints (Paragraph 17); and

(3)    The plaintiffs' first-filed Complaint was on April 24, 2006, more than five years after the Bean completed its dredging contracts for the Corps in years 1993 through 1999.

**TABLE NO. 1:**     **MRGO   DREDGING   BY   DEFENDANTS BEAN AND STUYVESANT AS ALLEGED IN THE *REED* COMPLAINT, PARAGRAPH 17, AND "END DATES" CONFIRMED BY CORPS RECORDS**

| YEAR | DEFENDANT | QUANTITY CUBIC YARDS | END DATES |
|------|-----------|---------------------|-----------|
| 1993 | Bean Dredging Corp.<br>Bean Dredging Corp. | 5,700,000<br>11,900,000 | 8/15/93<br>8/15/93 |
| 1996 | Stuyvesant Dredging Co. L.L.C.<br>Bean Horizon Corporation<br>Bean Horizon Corporation | 2,000,000<br>3,300,000<br>1,800,000 | 9/25/96<br>3/17/96<br>6/17/96 |
| 1998 | Bean Horizon Corporation | 1,300,000 | 3/6/99 |
| 1999 | Bean Horizon & Stuyvesant (Joint Venture)<br>Bean Horizon Corporation<br>Bean Horizon Corporation | 2,000,000<br>1,600,000<br>1,400,000 | 3/16/99 |
| 2002 | Bean Stuyvesant, L.L.C.<br>Bean Stuyvesant, L.L.C. | 400,000<br>2,000,000 | 12/23/01<br>6/1/02 |
| 2004 | Bean Stuyvesant, L.L.C. | 2,000,000 | 5/4/05 |

III.   **PEREMPTION UNDER LA. R.S. 9:2272 BARS PLAINTIFFS' CLAIMS AGAINST DEFENDANT BEAN FOR DREDGING COMPLETED PRIOR TO APRIL 24, 2001.**

A.     **Peremption Precedent Directly Supporting Dismissal of MRGO Claims Against the Dredging Company Defendants**

There can be no doubt that the dredging done by Bean in the MRGO related to construction and/or improvement of an "immovable" under Louisiana law. La. Civil Code Article 462 provides that "Tracts of land, with their component parts, are immovables."

In *Lambert v. State*, 912 So.2d 426 (La. App. 2d Cir. 2005) the Court viewed a boat ramp constructed adjacent to Bayou D'Arbonne Spillway/Dam as an immovable under La. R.S. 9:2772, even though the Court did not grant the peremption motion because a question of fact existed as to which defendants owned the boat ramp.

In *Canty v. Terrebonne Parish Police Jury*, 397 So.2d 1371 (La. App. 1st Cir. 1981) the claims asserted by the landowner were for property damage resulting from the underlined dredging of a drainage canal by defendants.  The court held that the canal was an immovable under Civil Code Articles 448, 450 and 462.  Likewise in *Bailey v. Kruithoff*, 280 So.2d 262 (La. App. 2d Cir. 1973) the Court explained that the criteria for determining whether or not a construction work is "immovable" or "movable" is left for judicial determination according to prevailing notions in society.  Two criteria are: (1) some degree of integration or attachment to the soil and (2) some degree of permanency.

-8-

Levees and drainage systems were held to be immovable constructions within the ambit of La. R.S. 9:2772 in *Akins v. Parish of Jefferson*, 591 So.2d 800 (La. App. 5th Cir. 1991).

Dredging and maintenance of a drainage canal were held to be covered by La. R.S. 9:2772 in *Ewing v. State*, 757 So.2d 843 (La. App. 3d Cir. 2000).

Obviously, dredging of a navigable waterway is construction work relating to an immovable.

In *Exxon Corp. v. Foster Wheeler Corp.*, 805 So.2d 432 (La. App. 1st Cir. 2001), the Court reiterated that the applicability of La. R.S. 9:2772 depends upon whether or not the construction work qualifies as an "immovable" under the Codal definition articles, *i.e.*, La. Civil Code Arts. 462, 463, 465 or 466. A contract for construction of a component part of an immovable (Art. 466) falls within the peremption statute if it satisfies the requirement of the "societal expectations test" (whether the item is, according to contemporary objective standards, a component of the immovable) and constitutes an "other installation" that is permanently attached to an immovable.

The constitutionality and legislative purpose of La. R.S. 9:2772 was explained at length in *Burmaster v. Gravity Drainage District No. 2*, 366 So.2d 1381 (La. 1978), in which the Court stated:

> "Plaintiff next contends that La. R.S. 9:2772 offends the equal protection guarantees of both the state and federal constitutions.
>
> "Both the state and federal constitutions mandate equal protection of the laws. U.S. Const. amend. XIV; La. Const. art. 1, §3. The equal protection guarantee of our constitution, however, was intended only as a restatement of the federal equal protection clause. . .
>
> "Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated. . . Where, as

here, there is no involvement of a 'suspect classification' or 'fundamental right', traditional equal protection analysis sustains a classification if it is not arbitrary and bears a rational relationship to a legitimate state interest . . . The legislature has a wide scope of discretion in enacting laws which affect some groups of citizens differently from others.   The constitutional safeguard of equal protection is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective . . .

"The classification established by La. R.S. 9:2772 affects alike all persons and interests similarly situated. Clearly, the classification is not arbitrary; rather, it is founded on reasonable grounds of distinction. We are satisfied that this classification bears a rational relationship to a legitimate state interest. Absent the statute now before us, architects and contractors would remain potentially liable for past-construction projects indefinitely.   It is particularly within the scope of the legislature to adjust time periods affecting the imposition of liability for past acts.

"In sum, La. R.S. 9:2772 does not offend the equal protection guarantee of either the state or federal constitutions.

"Plaintiff contends that the effect of La. R.S. 9:2772 is to pre-empt her cause of action against Fromherz before such cause of action has arisen and thus violates the due process guarantees of both the federal and state constitutions. U.S. Const. amend. XIV; La. Const. art. 1, §2. She argues that the statute deprives her of an adequate remedy by due process of law for injuries suffered in violation of La. Const. art. 1, §22. Plaintiff further argues that the statute is *contra bonos mores* in that it denies her a cause of action before its accrual.

"Where an injury has occurred for which the injured party has a cause of action, such cause of action is a vested property right which is protected by the guarantee of due process . . .   However, where the injury has not yet occurred and the cause of action has not yet vested, the guarantee of due process does not forbid the creation of new causes of action or the abolition of old ones to attain permissible legislative objectives . . .

-10-

"In the instant case, plaintiff's cause of action would not have arisen until the death of her husband, which occurred more than fifteen years after the date of registry in the mortgage office of acceptance of the work by the owner. Hence, assuming the applicability of La. R.S. 9:2772 to the facts and parties before us . . . its effect is to abolish any cause of action plaintiff might have had against Fromherz for wrongful death arising out of any deficiency in the design, planning, inspection, supervision, or observations of construction or the construction of an improvement to immovable property allegedly attributable to Fromherz when such action is brought more than ten years after the date of registry in the mortgage office of acceptance of the work by the owner. **The application of La. R.S. 9:2772 herein does not bar plaintiff's cause of action; rather, it prevents what might otherwise be a cause of action from ever arising. Thus, injury or death occurring after the preemptive period established by the statute forms no basis for recovery against those whom the statute protects and a cause of action never vests.** The harm that has been done (allegedly attributable to Fromherz) is *damnum absque injuria* - a loss which does not give rise to an action for damages against the person causing it.

"Accordingly, La. R.S. 9:2772 does not violate the due process guarantees of either the state or federal constitutions, or a person's right of access to the courts protected by La. Const. art. 1, §22." (366 So.2d at 1386-1388).

The peremption statute is <u>not</u> a prescription statute and applies whenever a contractor does work which is an improvement to an immovable, *Poree v. Elite Elevator*, 665 So. 2d 133, 135 (La. App. 4th Cir. 1995). The determination of whether the work is an immovable is on a case-by-case basis, *Tenneco Oil Co. v. Chicago Bridge & Iron Company*, 495 So.2d 1317, 1321 (La. App. 4th Cir. 1986) (on rehearing), writ granted and remanded on other grounds, 497 So.2d 1006 (La. 1986), writ

denied 497 So.2d 1015 (La. 1986); *Harris v. Black Clawson Co.,* 961 F. 2d 547, 552-554 (5th Cir. 1992).

**B.      Purpose and Scope of Peremption Statutes**

La. Civil Code art. 3458 clearly provides that "Peremption is a period of time fixed by law for

the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the

peremptive period." Furthermore, peremption cannot be renounced, interrupted or suspended (La.

Civil Code art. 3461) nor is peremption subject to exception such as *contra non valentem, Reeder v.*

*North,* 701 So.2d 1291, 1298 (La. 1997).

As stated by the commentator in Comment, Prescription and Peremption - The 1982 Revision

of the Louisiana Civil Code, 58 Tul. L. Rev. 593, 605 (1983) and by Professor Dainow, Prescription,

The Work of the Louisiana Appellate Courts for the 1967-1968 Term, 29 La. L. Rev. 171, 230-233

(1969):

> "Prescription is an inchoate right that may be renounced, interrupted,
> or suspended; peremption requires as a matter of public policy that
> certain rights be absolutely extinguished after the passage of a
> specified period of time and thus nothing can interfere with the
> running of this period." (Emphasis added).

It is also clearly the purpose of peremption statutes not to be swallowed up by loopholes.

Although for a short period of time, a claim of "failure to warn" was held to be outside the peremptive

purview of La. R.S. 9:2772, due to the holding in *Bunge Corporation v. GATX Corp.,* 557 So. 2d

1376 (La. 1990), the Louisiana Legislature quickly amended the statute to effectively overrule *Bunge*

and provided specifically that any type of claim, including failure to warn, is included in the

peremption, *Harris v. Black Clawson Co.,* 961 F. 2d 547, 554 n.21 (5th Cir. 1992), also see: F.

Maraist & T. Galligan, Louisiana Tort Law, §10-8 (1991). This inclusion of "failure to warn" type claims within the perempted actions also means that any attempt to plead "failure to warn" (*i.e.*, suppression of the truth or silence) as within the "fraud" exception, subsection H of the statute, is doomed because that was precisely the device used in *Bunge*, which has now been legislatively reversed.

Moreover, the definition of "fraud" under La. C.C. article 1953 requires that "to find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information," *Greene v. Gulf Coast Bank*, 593 So. 2d 630, 632 (La. 1992), *America's Favorite Chicken Co. v. Cajun Enterprises, Inc.*, 130 F. 3d 180, 186 (5th Cir. 1997). There was no duty by the dredging company defendants under their contracts to disclose information to the general public; and there has been no allegation of fraud by the Corps of Engineers against Bean.

In addition, even a claim of "negligent misrepresentation" is held not to be within the jurisdictional definition of fraud. As explained by the Second Circuit in *Kent v. Cobb*, 811 So. 2d 1206, 1212 (La. App. 2d Cir. 2002):

> "Negligent misrepresentation includes representations made in the course of rendering services pursuant to a contract, when made with an honest belief in its truth, but because of lack of reasonable care or an absence of skill or competence in ascertaining the facts or making the opinion, and/or the manner of communicating the facts or opinion, the representation causes economic loss to be suffered by a third party who is an intended user of the information and who relies on the information to his detriment. It is distinguished from actions for intentional fraud, deceit, and warranty actions where the plaintiff has suffered physical harm."

-13-

Finally, Rule 9(b), FRCP requires that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Plaintiffs in *Reed* and *Ackerson* have made no allegations of fraud.

### C.      The Legislative History of La. R.S. 9:2772 and Retroactive Effect

Movants submit that arguments[2] as to the "retroactive effect" *vel non* of the peremption statute is a red herring, because it is clear that the causes of action alleged by plaintiffs in these lawsuits could not accrue until August 29, 2005. Therefore, La. R.S. 9:2772, in its current form was already in effect long before Plaintiffs' damages were incurred and had extinguished the right to any cause of action because of the expiration of the peremptive period following the completion of the dredging work.

Nevertheless, Movants provide the following explanation of the legal effects of the amendments to the statute in 1999 and 2003.

As enacted in 1964, La. R.S. 9:2772 provided for a peremptive period of ten years. Subsequent decisions addressed issues of retroactivity, as well as constitutional considerations of the disturbance of pre-existing rights, and held that the Statute was subject to retroactive application. *Stipe v. Joseph A. Nerey General Contractors, Inc.*, 385 So.2d 568 (La. App. 4 Cir. 1980); *Orleans Parish School Board v. Pittman Construction Co., Inc.*, 372 So.2d 717 (La. App. 4 Cir. 1979).

---

[2]  Bean is aware of the "retroactivity" argument advanced by plaintiffs in the Levee Breach cases in regard to the peremption motions filed by the Engineers and the Contractors who were sued in the Levee Breach cases in these consolidated proceedings.

In 1999, La. R.S. 9:2772 was amended, shortening the peremptive period to seven years. In this amendment, the Legislature expressly provided that "[t]he provisions of this Act shall have prospective application only and shall apply only to contracts entered into on or after the effective date of this Act." Louisiana courts subsequently addressing the issue of retroactivity of the seven-year period were compelled, by La. Civil Code art. 6, and the legislature's expression, to contradict the general rule by applying only prospectively this otherwise retroactive/remedial legislation.

The language chosen by the Legislature in 1999 provides only for non-retroactivity of "this Act." The Legislature obviously understood that, barring this language, the statute would be applied retroactively.

In 2003, La. R.S. 9:2772 was amended, shortening the peremptive period to five years. As was obviously true with the 1999 Legislature, the 2003 Legislature enacted the Statute in light of preceding statutes involving the same subject matter and court decisions construing those statutes. The 2003 legislature knew that (1) absent legislative expression to the contrary, remedial laws apply both prospectively and retroactively; (2) the ten-year period had been applied retroactively; (3) the 1999 Legislature chose to apply its Act, instituting the seven-year period, only prospectively, and (4) absent similar language, the 2003 Act would, once again, be subject to the general rule of retroactivity of remedial statutes.

In 2003, Louisiana's Legislature made a decision. The language of the 1999 Act was reviewed, its implications were understood, and the portion regarding prospective application of the

-15-

Act was avoided. The 2003 legislature could easily have provided for only prospective application

of the new five-year peremptive period. It chose not to. Differences between the 1999 and 2003 acts

necessarily lead to the conclusion that the 2003 Legislature intended to change the law, *Richard v.*

*Hall*, 874 So.2d 131, 150-151 (La. 2004). By avoiding any "legislative intent to the contrary," the

2003 legislature effectively declared that the general rule of retroactivity of statutes imposing periods

of limitation would, once again, be applicable to LSA-R.S. 9:2772.[3]


IV.    **PRESENCE OF ADMIRALTY JURISDICTION AND APPLICATION OF MARITIME LAW DOES NOT PREEMPT APPLICATION OF STATE LAW AND APPLICATION OF STATE PEREMPTION STATUTE FOR BEAN.**


Defendant Bean is aware that plaintiffs have argued that federal maritime law might preempt the application of state peremption law in regard to the Levee Breach and MRGO claims.

As stated in 1 T. Schoenbaum, Admiralty and Maritime Law §4-2, at pgs. 161, 164 (4th Ed. 2004):

> "The issue of federalism in admiralty and the scope of application of
> state law in maritime cases is one of the most perplexing issues in the
> law."

---

[3] A contrary opinion was set forth in the unreported decision of *Broussard v. Aviara Energy Corp.*, 2005 WL 1473998 (W.D. La. 2005). In *Broussard*, the court applied the language of the 1999 Act to the 2003 Act, thereby failing to recognize the importance of the 2003 Legislature's careful choice of language. In support of its decision, the *Broussard* court cited the 2002 decision of *August v. Grand Lake Const.*, 837 So.2d 78 (La. App. 5 Cir. 2002) which was handed down prior to the 2003 enactment eliminating the "prospective only" language. The only logical explanation is that the *Broussard* court's reliance on a decision that predated the Act in question simply led to an incorrect outcome.

\*   \*   \*   \*   \*

"Thus, the actual scope of possible application of state law in admiralty is quite broad; there are several theories under which state decisional law or legislation may be applied in maritime cases:

(1)    Borrowing,
(2)    Default,
(3)    Maritime, but not local,
(4)    Supplementation."

Professor Schoenbaum explains "borrowing" as admiralty judges adopting the general common law of the states into admiralty because there is no complete system of admiralty law on all subjects.  The basic constraint on the practice of "borrowing" is that the state law must neither contravene a clearly established rule of general maritime law nor impair the principle of national uniformity that underlies the federal maritime law.  "Borrowing" a general common law rule is said to be more appropriate than the application of a specific state law when there is great diversity among the laws of the states, *Wells v. Liddy*, 186 F.3d 505, 524-525 (4th Cir. 1999).  The "default" rule applies state law if there is no well-established federal admiralty rule and there is no need to create one.  For example in marine insurance law, there are certain "well entrenched" maritime law principles, but differing state insurance statutes are routinely applied, e.g. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955); *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir. 1991).

The "maritime but local" rule for application of state law was based on the scenario where (1) there is no applicable admiralty rule, (2) "local and state interests" predominate, and (3) the national

-17-

uniformity issue is not crucial. The Supreme Court's analysis in *Kossick v. United Fruit Co.*, 365

U.S. 731 (1961) has turned this into a "choice of law, interest analysis" calculation whereby the court

decides, on a case-by-case basis, which sovereign (state or federal) has the predominant interest on

a particular issue. In *Kossick*, 365 U.S. at 739, the U.S. Supreme Court stated:

> "[T]he fact that maritime law is - in a special sense at least, ... federal
> law, and therefore supreme by virtue of Article VI of the Constitution,
> carries with it the implication that wherever a maritime interest is
> involved no matter how slight or marginal it must displace a local
> interest, no matter how pressing and significant. But the process is
> surely rather one of accommodation, entirely familiar in many areas of
> overlapping state and federal concern or a process somewhat
> analogous to the normal conflict of laws situation where two
> sovereignties assert divergent interests in a transaction as to which
> both have some concern." (Emphasis added.)

In *Karim v. Finch Shipping Co.*, 374 F.3d 302, 308-309 (5th Cir. 2004) the Fifth Circuit stated

"[C]ourts applying admiralty law may adopt state law by express or implied reference or by virtue of

the interstitial nature of federal law."

In 1 T. Schoenbaum, Admiralty and Maritime Law §4-3 (4th Ed. 2004), Professor Schoenbaum

describes four categories of admiralty preemption of state law: (1) specific and express federal

statutory preemption, (2) "implied" preemption when state law "stands as an obstacle" to execution

of a maritime statute, (3) "conflict preemption" when there is a conflict between state law and

maritime law on the same issue, even though Congress is silent on preemption; where compliance

with both federal and state regulations is a physical impossibility, and (4) "field preemption" when

Congress "intended to remove an entire subject from state regulation."

-18-

*American Dredging Co. v. Miller*, 510 U.S. 443 (1994), is an example of state law <u>not</u> being preempted in a maritime claim. In *Miller* a tug crewman serving on defendant's tug in the Delaware River was injured, received medical treatment in Pennsylvania and New York, but wound up returning to Mississippi and then filing a Jones Act suit in Civil District Court, Orleans Parish. CDC <u>granted</u> defendant's motion to dismiss, on *forum non conveniens* grounds, which is recognized in admiralty law. However, the <u>Louisiana</u> Supreme Court reversed, upholding La. C.C.P. Art. 123 ( c) (since amended), which at that time <u>excepted</u> maritime claims filed in state court from the regular *forum non conveniens* rule. The U.S. Supreme Court granted certiorari on the issue of whether or not Louisiana law on *forum non conveniens* was preempted by maritime law. In the majority opinion, Justice Scalia held "In sum, the doctrine of *forum non conveniens* neither originated in admiralty nor has exclusive application there. To the contrary, it is and has long been a doctrine of general application. Louisiana's refusal to apply *forum non conveniens* does not, therefore, work 'material prejudice to a characteristic feature of the general maritime law.'"

Likewise, insurance codes in these various states are not preempted by maritime law. As stated by the Fifth Circuit in *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 888 (5th Cir. 1991):

> "In the absence of preexisting entrenched federal maritime law, this Court will refuse to impose unfamiliar federal common law maritime requirements on the parties to a marine insurance contract . . . In case after case we have applied state law in interpreting marine insurance policies, because there is no contrary federal admiralty rule."

-19-

The Fifth Circuit in *Exxon Corp. v. Chick Kam Choo*, 817 F.2d 307, 317 (5th Cir. 1987) reiterated the Supreme Court's concern in *Wilburn Boat*, 348 U.S. at 317, 75 S.Ct. at 373, that "more uncertainty would result from the case-by-base creation from whole cloth of a federal maritime insurance law than from the application of a variety of already well-developed state laws."

Local interests plainly dominate this case. As this Court has previously held in *O'Dwyer*, "the claims implicate Louisiana intrastate interests, Louisiana law would apply, Louisiana has a distinct nexus with class members, the damages caused and/or situated were within Louisiana, and the primary defendants are all Louisiana citizens save for the United States." *Berthelot v. Boh Bros. Constr. Co.,* No. 05-4182, 2006 WL 2256995, *5 (E.D. La. July 19, 2006) (explaining why, even if abstention were not mandatory, the permissive abstention under CAFA 2005 provision would apply). *See also: Green v. Industrial Helicopters, Inc.*, 593 So.2d 634, 638 (La. 1992) (applying Louisiana's liability statute in a savings clause case arising from a helicopter crash on the high seas, recognizing "Louisiana has a strong interest in applying its own law in this case", where all of the parties were Louisiana citizens, a Louisiana company owned and operated the helicopter, and the flight took off from, and was return to, Louisiana).  Plaintiffs allegedly represent a class made up entirely of Louisiana residents; their claims are for damages suffered in Louisiana; those damages allegedly arose from the construction, maintenance and operation of a local waterway, the MRGO; the Dredging Defendants are predominantly Louisiana-based; and all of the Defendants are involved in this suit

-20-

solely because of operations based on contracts that were executed and performed in Louisiana. *See* Complaint, Paragraphs 1, 3, 5, 14-17, 23.

Therefore, just as the state of Louisiana has an interest in regulating insurance, which will not be preempted by federal maritime law unless it contradicts an entrenched maritime insurance principle, Louisiana has the same interest in regulating the liability of contractors working on immovables in the state of Louisiana. There is no federal maritime statute or judicially created maritime law rule which conflicts with the specific peremption statute passed by the Louisiana legislature and interpreted by the Louisiana courts in regards to contractors performing work on immovables.

## VI.   CONCLUSION

Bean submits that peremption is clearly triggered for all of its dredging contracts completed by April 24, 2001. The dredging contracts awarded by the Corps are described in Plaintiffs' allegations in the Complaints and the acceptance dates or completed work end dates are not contested facts; triggering of the Louisiana peremption statute is a question of law. Bean's motion is ripe and should be granted.

Respectfully Submitted By:

**/s/William E. Wright, Jr.**
William E. Wright, Jr. (Bar Roll No.8564)
Terrence L. Brennan (Bar Roll No. 3434)
Kelly E. Theard (Bar Roll No. 29445)
of
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-5141
Facsimile:  (504) 566-1201
tbrennan@dkslaw.com
wwright@dkslaw.com
ktheard@dkslaw.com
Attorneys for Bean Dredging, L.L.C.,
Bean Horizon Corp.,
Stuyvesant Dredging Company,
Bean Stuyvesant LLC

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the 15th day of September, 2006, I electronically

filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice

of electronic filing to the following:

1) abramson@phelps.com
2) wackerman@rc.com
3) jandry@andrylawfirm.com
4) tanzelmo@mcsalaw.com
5) aakers@lpw-law.com
6) BabinS@ag.state.la.us
7) sbarcellona@stonepigman.com
8) jbarrasso@barrassousdin.com
9) dbecnel@becnellaw.com
10) darrylbecnel@becnellaw.com
11) ROBBECNEL@AOL.COM
12) kbergeron@dkslaw.com
13) bilbron@phelps.com
14) kbogart@duplass.com
15) nbowen@duplass.com
16) tbrennan@dkslaw.com

17) pbrooks@monbar.com
18) dbrowne@brownelaw.com
19) jbruno@brunobrunolaw.com
20) sbullock@stonepigman.com
21) jcambre@duplass.com
22) adc@longlaw.com
23) jac@ecwko.com
24) Traci.ColQuette@usdoj.gov
25) ccolvin@kingsmillriess.com
26) rcozad@mpc-law.com

27) rcreely@aol.com
28) daiglec@phelps.com
29) rdaigre@duganbrowne.com
30) tdarling@grhg.net
31) tdavis2@cableone.net
32) jdegruy@mblb.com

33) dearie@bayoulaw.com
34) kderham@duplass.com
35) jvdirosa@cityofno.com
36) wdumas@dumaslaw.com
37) lduplass@duplass.com
38) eeagan@joneswalker.com
39) jfe@ecwko.com
40) bemory@mblb.com
41) jke@rodneylaw.com
42) calvinfayard@fayardlaw.com
43) tess.finnegan@usdoj.gov
44) sgabb@lundydavis.com
45) gardner@bayoulaw.com
46) sgaspard@burglass.com
47) tgaudry@grhg.net
48) gillyg@phelps.com
49) glazerp@ag.state.la.us
50) sgoldman@rc.com
51) ggrant@monbar.com
52) jguichet@lawla.com

-23-

| | | | | |
|---|---|---|---|---|
| 53) | khadican@gainsben.com | | 91) | jmelchiode@gjtbs.com |
| 54) | jodi@jimshall.com | | 92) | dmartin@gainsben.com |
| 55) | mhanna@mcsalaw.com | | 93) | kara.k.miller@usdoj.gov |
| 56) | lharris@stonepigman.com | | 94) | pmfields@cityofno.com |
| 57) | rgharvey@bellsouth.net | | 95) | bmullin@spsr-law.com |
| 58) | pdhatch@dumaslaw.com | | 96) | jwmumphrey@mumphreylaw.com |
| 59) | dhoerner@mblb.com | | 97) | wbmumphrey@mumphreylaw.com |
| 60) | hhoffmann@spsr-law.com | | 98) | emurov@dkslaw.com |
| 61) | fholthaus@dphf-law.com | | 99) | musser@bellsouth.net |
| 62) | mindy@fayardlaw.com | | 100) | agn@longlaw.com |
| 63) | rhubbard@lawla.com | | 101) | nelson@lambertandnelson.com |
| 64) | dollyno@aol.com | | 102) | jfnevares-law@microjuris.com |
| 65) | tkjacobson@aol.com | | 103) | jnicoletti@nicolettihornig.com |
| 66) | kellerm@ag.state.la.us | | 104) | mnoble@monbar.com |
| 67) | kewley@bayoulaw.com | | 105) | mpalmintier@dphf-law.com |
| 68) | kpk@mcsalaw.com | | 106) | vlpapai@cityofno.com |
| 69) | federal@geraldmaples.com | | 107) | jpate@ln-law.com |
| 70) | rkitto@monbar.com | | 108) | mpelleteri@kfplaw.com |
| 71) | sskreller@gmail.com | | 109) | rgp@rgplaw.com |
| 72) | alex.kriegsman@usdoj.gov | | 110) | mpfister@duplass.com |
| 73) | ajl@mcsalaw.com | | 111) | dphayer@burglass.com |
| 74) | hlambert@lambertandnelson.com | | 112) | fap@pkrlaw.com |
| 75) | jlandis@stonepigman.com | | 113) | doug@duganbrowne.com |
| 76) | wlanglois@grhg.net | | 114) | mfp@ecwko.com |
| 77) | blarzelere@lpw-law.com | | 115) | dranier@rgelaw.com |
| 78) | tleblanc@lundydavis.com | | 116) | kreasonover@smithfawer.com |
| 79) | jel@pkrlaw.com | | 117) | ajrebennack@cox.net |
| 80) | wlee@stonepigman.com | | 118) | mriess@kingsmillriess.com |
| 81) | hlonian@stonepigman.com | | 119) | riviereb@phelps.com |
| 82) | ederal@geraldmaples.com | | 120) | RJR@rodneylaw.com |
| 83) | jwmartin@spt.com | | 121) | jroussel@bakerdonelson.com |
| 84) | bmayeaux@ln-law.com | | 122) | jimr@wrightroy.com |
| 85) | mmcalpine@mpc-law.com | | 123) | csalas@salaslaw.com |
| 86) | mccall@chaffe.com | | 124) | DAVID@brunobrunolaw.com |
| 87) | gmcdonald@bfrob.com | | 125) | sschmeeckle@lawla.com |
| 88) | gmckernan@mckernanlawfirm.com | | 126) | mschultz@levinlaw.com |
| 89) | mcleodm@phelps.com | | 127) | nscott@bakerdonelson.com |
| 90) | em@mpc-law.com | | 128) | aseltzer@kfplaw.com |

-24-

129) gsimno@swbno.org
130) jsimpson@lpw-law.com

131) tslack@gainsben.com
132) rasmith3@bellsouth.net
133) robin.doyle.smith@usdoj.gov
134) Spencer@chaffe.com
135) ostamant@smithfawer.com
136) fswarr@landryswarr.com
137) talbot@chaffe.com
138) ctankersley@burglass.com
139) ktheard@dkslaw.com
140) storres@torres-law.com
141) wtreeby@stonepigman.com
142) tyler@joneswalker.com
143) jtynan@monbar.com
144) jtynan@monbar.com
145) gvarga@rc.com
146) jean.michel.voltaire@usdoj.gov
147) rjw@ecwko.com
149) ewicker@barrassousdin.com
150) smwiles@bellsouth.net
151) wimberly@nternet.com
152) bobw@wrightroy.com
153) wwright@dkslaw.com

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

1) NaTashia Carter Benoit
   Dumas & Associates Law Corporation
   1261 Government St.
   P. O. Box 1366
   Baton Rouge, LA 70821

2) Evelyn Alexis Bevis
   Lambert & Nelson
   701 Magazine St.
   New Orleans, LA 70130

3) Meghan Becnel Burns
   Law Offices of Robert M. Becnel
   425 West Airline Highway
   Suite B
   Laplace, LA 70068

4) Clayton Morris Connors
   Mumphrey Law Firm, LLC
   625 Baronne Street
   New Orleans, LA 70113

5)  Thomas J. Corrington
    The Corrington Law Firm
    3431 Prytania St.
    New Orleans, LA 70115

6)  Joseph W. Cotchett
    Cotchett Pitre Simon & McCarthy
    San Francisco Airport Office Center
    840 Malcolm Road
    Suite 200
    Burlingame, CA 94010

7)  Jack J. Crowe
    Winston & Strawn, LLP
    35 W. Wacker Dr.
    Chicago, IL 60601

8)  Frank Jacob D'Amico, Jr.
    Frank J. D'Amico, Jr., APLC
    622 Baronne St.
    2nd Fl.
    New Orleans, LA 70113

9)  N. Frank Elliot, III
    Ranier, Gayle & Elliot, LLC
    1419 Ryan St.
    P. O. Box 1890
    Lake Charles, LA 70602-1890

10) John N. Ellison
    Anderson Kill & Olick, PC
    1600 Market St.
    Suite 2500
    Philadelphia, PA 19103

11) Christopher R. Farrell
    Jones Day (Washington)
    51 Louisiana Avenue, NW
    Washington, DC 20001

12) John Marston Fowler
    Galloway, Johnson, Tompkins, Burr
    & Smith
    One Shell Square
    701 Poydras St.
    Suite 4040
    New Orleans, LA 70130

13) Nina D. Froeschle
    O'Donnell & Mortimer, LLP
    550 South Hope Street
    Suite 2000
    Los Angeles, CA 90071-2627

14) Scott Hubert Fruge
    deGravelles, Palmintier, Holthaus &
    Fruge'
    618 Main Street
    Baton Rouge, LA 70801-1910

15) Thomas V. Girardi
    Girardi & Keese
    1126 Wilshire Blvd.
    Los Angeles, CA 90017-1904

16) Paul E.B. Glad
    Sonnenschein, Nath & Rosenthal
    7800 Sears Tower
    Chicago, IL 60606

17) Andrew R. Greene
Sonnenschein, Nath & Rosenthal 7800
Sears Tower
Chicago, IL 60606

18) Joseph W. Hecker
619 Europe Street
2nd Floor
Baton Rouge, LA 70806

19) Kevin P. Kamraczewski
Sonnenschein, Nath & Rosenthal
7800 Sears Tower
Chicago, IL 60606

20) Duane M. Kelley
Winston & Strawn, LLP
35 W. Wacker Dr.
Chicago, IL 60601

21) Barbara L. Lyons
Cotchett Pitre Simon & McCarthy
840 Malcolm Road
Suite 200
Burlingame, CA 94010

22) George T. Manning
Jones Day
1420 Peachtree Street, NE
Suite 800
Atlanta, GA 30309-3053

23) Christopher W. Martin
Martin, Disiere, Jefferson & Wisdom,
LLP
808 Travis Street
Suite 1800
Houston, TX 77002

24) Meredith Anne Mayberry
Law Offices of F. Gerald Maples,
P.A.
902 Julia St.
New Orleans, LA 70113

25) James F. McConnon, Jr.
U.S. Department of Justice (Box
888)
Torts Branch, Civil Division
Benjamin Franklin Station
P. O. Box 888
Washington, DC 20044

26) Julia E. McEvoy
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001

27) J. J. (Jerry) McKernan
McKernan Law Firm
8710 Jefferson Hwy.
Baton Rouge, LA 70809

28) Darin J. McMullen
Anderson Kill & Olick, PC
1600 Market St.
Suite 2500
Philadelphia, PA 19103

29) Clay Mitchell
Levin, Papantonio, Thomas,
Mitchell, Echsner & Proctor, PA
316 S. Baylen St.
P. O. Box 12308
Suite 600
Pensacola, FL 32581

30)   Andre J. Mouledoux
      Mouledoux, Bland, Legrand & Brackett,
      LLC
      One Shell Square
      701 Poydras St.
      Suite 4250
      New Orleans, LA 70139

31)   Pierce O'Donnell
      O'Donnell & Mortimer, LLP
      550 South Hope Street
      Suite 2000
      Los Angeles, CA 90071-2627

32)   Ashton Robert O'Dwyer, Jr.
      Ashton R. O'Dwyer, Jr., Attorney at Law
      One Canal Place
      Suite 2670
      New Orleans, LA 70130

33)   William A. Percy, III
      Law Offices of Daniel E. Becnel, Jr.
      106 W. Seventh St.
      P. O. Drawer H
      Reserve, LA 70084

34)   James C. Rather, Jr.
      McCranie, Sistrunk, Anzelmo, Hardy,
      Maxwell & McDaniel
      3445 N. Causeway Blvd.
      Suite 800
      Metairie, LA 70002

35)   Martin R. Sadler
      Martin, Disiere, Jefferson &
      Wisdom, LLP
      808 Travis Street
      Suite 1800
      Houston, TX 77002

36)   Alfred Ambrose Sarrat, Jr.
      Jacobs & Sarrat
      823 St. Louis St.
      New Orleans, LA 70112

37)   Charles F. Seemann, Jr.
      Deutsch, Kerrigan & Stiles LLP
      755 Magazine St.
      New Orleans, LA 70130

38)   David R. Simonton
      Sonnenschein, Nath & Rosenthal
      7800 Sears Tower
      Chicago, IL 60606

39)   John H Smith
      McKernan Law Firm
      8710 Jefferson Hwy.
      Baton Rouge, LA 70809

40)   Elwood C. Stevens, Jr.
      Law Office of Elwood C. Stevens,
      Jr., APLC
      1205 Victor II Blvd.
      P. O. Box 2626
      Morgan City, LA 70381

41)   Victor Elbert Stilwell, Jr.
      Deutsch, Kerrigan & Stiles LLP
      755 Magazine St.
      New Orleans, LA 70130

-28-

42) Vernon Palmer Thomas
Vernon P. Thomas, Attorney at Law
1524 N. Claiborne Ave.
New Orleans, LA 70116

43) Travis J. Turner
Dumas & Associates Law Corporation
1263 Government St.
P. O. Box 1366
Baton Rouge, LA 70821

44) Gerard Michael Victor
Sewerage & Water Board Legal
Department
625 St. Joseph St.
Room 201
New Orleans, LA 70165

45) Lawrence D. Wiedemann
Wiedemann & Wiedemann
821 Baronne St.
New Orleans, LA 70113

46) John W. deGravelles
deGravelles, Palmintier, Holthaus &
Fruge'
618 Main Street
Baton Rouge, LA 70801-1910

s/William E. Wright, Jr.
**WILLIAM E. WRIGHT, JR.**
**of**
**DEUTSCH, KERRIGAN & STILES, L.L.P.**
**755 Magazine Street**
**New Orleans, Louisiana  70130**
**Telephone:  (504) 581-5141**
**Facsimile:  (504) 566-1201**
**wwright@dkslaw.com**
**Attorneys for Bean Dredging, L.L.C., Defendant**
**C.F. Bean L.L.C., Bean Stuyvesant, L.L.C.,**
**Stuyvesant Dredging Company, Stuyvesant**
**Dredging, Inc. and Royal Boskalis Westminster**
**N.V., in their own right and as successors to Bean**
**Dredging Corporation, C. F. Bean Corporation,**
**Bean Horizon Corporation and Bean Horizon**
**L.L.C.**