## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re: KATRINA CANAL BREACHES**<br>**CONSOLIDATED LITIGATION** | § **CIVIL ACTION**<br>§ **No. 05-4182 "K"(2)**<br>§<br>§ **JUDGE DUVAL**<br>§ **MAG. WILKINSON**<br>§ |
| | § |
| **PERTAINS TO: MRGO,** *Reed***, No. 06-2152**<br>**MRGO,** *Ackerson***, No. 06-4066** | §<br>§<br>§<br>§ |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## DREDGING DEFENDANTS' MOTION TO DISMISS PURSUANT TO
## THE SUITS IN ADMIRALTY ACT AND FED. R. CIV. P. 12(c)

Defendants Bean Dredging, L.L.C.; C.F. Bean L.L.C.; Bean Stuyvesant, L.L.C.; Stuyvesant Dredging Company; Stuyvesant Dredging, Inc.; Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corporation; C.F. Bean Corporation; Bean Horizon Corporation; Bean Horizon L.L.C.; Gulf Coast Trailing Company; T.L. James & Company, Inc.; TLJIC, L.L.C., on its on behalf and as successor by merger to T.L. James Marine, Inc., and T.L. James Marine, L.L.C.; Great Lakes Dredge & Dock Company; Great Lakes Dredge & Dock Company, L.L.C. of Louisiana; Great Lakes Dredge & Dock Corporation of Delaware; Natco Dredging Limited Partnership; Great Lakes Trailing Company; Weeks Marine, Inc.; Mike Hooks, Inc.; Luhr Bros. Inc.; Pine Bluff Sand and Gravel Company; and

1

King Fisher Marine Service, L.P. (collectively the "Dredging Defendants") submit this memorandum of law in support of their Motion to Dismiss Pursuant to the Suits in Admiralty Act and Fed. R. Civ. P. 12(c).

The Dredging Defendants believe the Government is entitled to immunity, and that, as agents, the Dredging Defendants are equally immune.[1]   Nonetheless, if the Court were to disagree, Plaintiffs' claims against the Dredging Defendants in the *Reed* and *Ackerson* actions (which are identical in all respects relevant to this Motion) should be dismissed nonetheless pursuant to the exclusive remedy provision of the Suits in Admiralty Act, 46 U.S.C. app. §§ 741-752 ("SAA").

The SAA provides a general waiver of the Government's sovereign immunity for admiralty claims.[2]   As set forth in the Dredging Defendants' Immunity Motion, the Government retains its sovereign immunity—which is shared by the Dredging Defendants—for damages caused by the Government's execution of discretionary functions, and for damages caused by flood waters.[3]   In addition, and also discussed in the Dredging Defendants' Immunity Motion, regardless of whether the Government and the Dredging Defendants are amenable to suit given the Flood Control Act and discretionary function exception, the Dredging Defendants are immune in their own right for executing the Congress's will and as government contractors.

---

[1]     *See generally* Memorandum of Law in Support of the Dredging Defendants' Motion to Dismiss on Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c), Nos. 06-2152 (*Reed*), 06-4066 (*Ackerson*) (filed Sept. 15, 2006) ("Immunity Motion").

[2]     *See* 46 U.S.C. app. § 742 (discussed further below).

[3]     *See also Wiggins v. United States*, 799 F.3d 962, 964-66 (5th Cir. 1986) (holding that the discretionary function exception is implicit in the Suits in Admiralty Act); *Mocklin v. Orleans Levee District*, 877 F.2d 427, 428 (5th Cir. 1989) (where the broad and absolute immunity of the Flood Control Act applies there is no need to consider the discretionary function exception).

2

If the Court determines that Plaintiffs' claims are not barred by these immunities, Plaintiffs' claims against the Dredging Defendants must be dismissed pursuant to the SAA exclusivity provision: "where a remedy is provided by [the SAA] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States . . . whose act or omission gave rise to the claim."[4]    Application of this provision is a simple, two-step process in this case.  First, Plaintiffs claims against the United States are admiralty claims cognizable under the SAA.[5]    And second, because the United States Army Corps of Engineers ("COE") exercised overall control of all dredging projects in the MRGO, the Dredging Defendants operated as "agents" of the Government within the meaning of Section 745.  Plaintiffs' exclusive remedy is against the Government.  All claims against the Dredging Defendants are barred.

## ARGUMENT

### I.    The SAA Applies to Plaintiffs' Claims.

If the Court were to disagree with the Dredging Defendants' Immunity Motion and hold that the Government is not immune from suit, the SAA would provide Plaintiffs with a remedy against the Government for the Dredging Defendants' activities in the MRGO.  In fact, Plaintiffs allege in their Complaints that jurisdiction lies under "the Suits in Admiralty Act, 46 U.S.C. §§ 741-52 (in personam) because the negligence of the United States of America arises out of its maritime activities, connected to the construction, continuous dredging and maintenance of the MRGO as a navigable channel, and carried out by the United States of America's own fleet of

---

[4]      46 U.S.C. app. § 745; *see also Stiward v. United States*, No. 05-1926, 2005 WL 3543736, *3 n.2 (E.D. La. Oct. 13, 2005) (Duval, J.) ("Remedies provided by the [Public Vessels Act] are also subject to the SAA's exclusivity clause.") (citing 46 U.S.C. app. § 782).

[5]      *See* 46 U.S.C. app. § 742.

dredging vessels and by fleets of dredging vessels owned by the other Defendants, pursuant to maritime dredging contracts between them."[6]

If Plaintiffs have a remedy on the facts they have alleged, then they have a remedy against the Government under the SAA.  The Public Vessels Act, 46 U.S.C. app. §§ 781-790 ("PVA"), applies to "public vessels," like the COE's own dredges.[7]  But the SAA is broader.  A remedy also lies under the SAA where, "if [a vessel operated by or for the United States] were privately owned or operated . . . or if a private person or property were involved, a proceeding in admiralty could be maintained."[8]  This provision operates simply as a "jurisdictional hook on which to hang a traditional admiralty claim."[9]  It is "intended to bring all admiralty claims against the United States within the ambit of the [Suits in Admiralty Act], whether or not involving government cargoes or vessels."[10]  Plaintiffs' claims against the United States for the Dredging Defendants' operations are cognizable in admiralty, and thus fit comfortably within the SAA.

### A.    Maritime Torts.

Plaintiffs' tort claims are admiralty claims.  To come within the jurisdiction of admiralty, a tort claim must arise from an incident with a maritime location and a maritime nexus.  As set

---

[6]     Compl. ¶ 4.  Plaintiffs also plead jurisdiction based on "the Public Vessels Act, 46 U.S.C. §§ 781-90, because this matter involves damage caused by one or more public vessels of the United States of America (including the Dredge Wheeler) which have conducted maritime dredging operations for the construction and maintenance of the MRGO during the past sixty years."  *Id.*  (The Dredge Wheeler is a large hopper dredge, operated by the New Orleans District of the Corps of Engineers to dredge the MRGO. *Id.* ¶ 15.)

[7]     *See* 46 U.S.C. app. § 781.

[8]     46 U.S.C. app. § 742; *see also* 46 U.S.C. app. § 741.

[9]     *Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 444 (5th Cir. 1982).

[10]    *Id.* at 445 (citing cases); *Weatherford v. United States*, 957 F. Supp. 830, 833 & n.23 (M.D. La. 1997) (same).

4

forth in *Grubart v. Great Lakes Dredge & Dock Co.,*[11] this requires a showing that (1) "the tort occurred on navigable water" or, under the Admiralty Extension Act, 46 U.S.C. app. § 740, the case involves an injury suffered on land "caused by a vessel on navigable water"; (2) "the incident has a potentially disruptive impact on maritime commerce"; and (3) "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."[12]   All three of these elements are met here.

### 1.     Location.

First, this case involves injuries allegedly caused by vessels on navigable water,[13]  which satisfies the location test under the Admiralty Extension Act.   The MRGO is a navigable waterway.[14]   Dredges are "vessels."[15]    And if the Government truly caused the New Orleans flooding, it did so by dredging the MRGO.[16]

### 2.     Disruptive impact.

Second, the type of incident at issue here has a potentially disruptive impact on maritime commerce.   To evaluate disruptive potential, a court must "assess the general features of the type

---

[11]     513 U.S. 527 (1995).

[12]     *Id*. at 534  (internal quotation marks omitted).

[13]     *See* Compl. ¶¶ 18-22.

[14]     *Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1031 (5th Cir. 1985) (en banc).

[15]     1 U.S.C. § 3; *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 490-92 (2005) (explaining that dredges long have been considered "vessels" under the general maritime law).

[16]     *Cf. Grubart*, 513 U.S. at 534 ("If Great Lakes caused the flood, it must have done so by weakening the structure of the tunnel while it drove in new pilings or removed old ones around the bridge piers."). This conclusion applies equally to Plaintiffs' "concealment" claim; failure-to-disclose is merely a theory of liability, not the instrumentality of harm. *Cf. Eubanks v. Bayou D'Arbonne Lake Watershed Dist.*, 742 So.2d 113, 117 (La. App. Ct. 1999) ("Although the plaintiffs base their claim for damages on the failure to warn theory, the damages allegedly sustained by the plaintiffs resulted from flooding.") (evaluating statute of limitations defense); *In re Complaint of Ingram Barge Co.*, No. 05-4419, 2006 WL 1539787, *2-3 (E.D. La. May 25, 2006) (where claimants complained of failure to order a barge sunk, analyzing jurisdiction based on the barge's collision with a levee).

5

of incident involved."[17]   In *Sisson*, the Court explained that proper characterization for purposes of this jurisdictional inquiry requires the court to focus on the potential effects of the incident.[18] In this case, flooding to coastal areas allegedly resulting from damage caused by vessels in navigable waters to man-made and natural flood protection systems has the potential to—and actually did—disrupt maritime commerce severely.[19]

### 3.   Traditional maritime activity.

Third, dredging in the MRGO, a navigable channel used for maritime commerce, is substantially related to traditional maritime activity.  This part of the nexus test requires the court to focus on the "general character of the activity giving rise to the incident," and "ask whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand."[20]  "[A]s long as one of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will 'involve' such traditional maritime activity."[21]

There is no question that this requirement is met in this case.  "Certainly, the operation of a dredge has a significant relationship to traditional maritime activity.  It is only in maritime

---

[17]   *Grubart*, 513 U.S. at 534 (quoting *Sisson v. Ruby*, 497 U.S. 358, 363 (1990)).

[18]   497 U.S. at 363-65 (fire related to a defective washer/dryer on a houseboat moored at a marina characterized as "a fire on a vessel docked at a marina on navigable waters"); *Grubart*, 513 U.S. 535 (flooding of tunnels caused by pile-driving in Chicago River characterized as "damage by a vessel in navigable water to an underwater structure").

[19]   *Ingram Barge.*, 2006 WL 1539787, at *4 ("When a vessel causes navigable waters to spill onto the land and damage land-based structures and individuals, the maritime nexus is obvious, and explicitly contemplated by statutes like the [Admiralty Extension Act].").

[20]   *Grubart*, 513 U.S. at 539-40.

[21]   *Id.* at 541.

activity that a dredge is used."[22]   In fact, the activities of the Government and the Dredging

Defendants in this case should be characterized the same way as in *Grubart*: "repair or

maintenance work on a navigable waterway performed from a vessel."[23]   "Described in this way,

there is no question that the activity is substantially related to traditional maritime activity, for

barges and similar vessels have traditionally been engaged in repair work similar to what Great

Lakes contracted to perform here."[24]

The SAA applies where a proceeding in admiralty could be maintained "if a private

person or property were involved."[25]   Here, a negligence action would lie against the United

States under traditional admiralty principles.[26]

In determining the scope of liability for parties to maritime contracts under traditional

admiralty principles, Courts have considered the parties responsibilities within their respective

spheres of control.  For example, in *Hodgen v. Forest Oil Corp.*,[27] the Fifth Circuit examined the

jurisprudence to consider whether a time charterer could be held responsible for injuries arising

---

[22]    *Ramos v. Universal Dredging Corp.*, 653 F.2d 1353, 1358 (9th Cir. 1981); *see also In re The V-14813*, 65 F.2d 789, 790 (5th Cir. 1933) ("There are many cases holding that a dredge, or a barge with a pile driver, employed on navigable waters, is subject to maritime jurisdiction.").

[23]    513 U.S. at 540; *see Lakes of Gum Cove Hunting & Fishing, L.L.C. v. Weeks Marine, Inc.*, 182 F. Supp. 2d 537, 544-45 (W.D. La. 2001) (holding that the *Grubart* characterization was proper in suit against dredging company for damage caused to land by dumping of spoil dredged from a river bottom).

[24]    *Grubart*, 513 U.S. at 540.

[25]    46 U.S.C. app. § 742.

[26]    *Alexander v. United States*, 63 F.3d 820, 823 (9th Cir. 1995).

[27]    87 F.3d 1512 (5th Cir. 1996).

out of its decisions as to where and when a chartered vessel would conduct operations.[28]  The Fifth Circuit determined, *inter alia*, that:

> a time charterer owes a *Graham*[29] duty, a hybrid duty arising from contract and tort, to persons with whom it has no contractual relationship, including vessel passengers, to avoid negligent actions within the sphere of activity over which it exercises at least partial control.  *Graham, Kerr-McGee,*[30] *P & E,*[31] and *Randall* [32] establish that the traditional spheres of activity in which a time charterer exercises control and thus owes a duty include choosing the vessel's cargo, route, and **general mission**, as well as the specific time in which the vessel will perform its assignment.[33]

According to Plaintiffs' own allegations, the United States asserted its operational control within its recognized sphere of activity when it defined the terms of the contracts with the Dredging Defendants and directed their operations.  Therefore, a claim in admiralty could lie against the United states under traditional admiralty principles if it was a private person, such that jurisdiction over the claims against the Dredging Defendants is founded under the Suits in Admiralty Act.

## B.   Maritime Contracts.

Plaintiffs' breach of warranty claim is also within the admiralty jurisdiction.  It is based on contracts between the COE and the Dredging Defendants for dredging in the MRGO, a navigable channel utilized for maritime commerce.  These are maritime contracts.[34]

---

[28]   *Id.* at 1520.

[29]   *Graham v. Milky Way Barge, Inc.,* 824 F.2d 376 (5th Cir.1987).

[30]   *Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc.,* 830 F.2d 1332 (5th Cir.1987).

[31]   *In re P & E Boat Rentals, Inc.,* 872 F.2d 642 (5th Cir.1989).

[32]   *Randall v. Chevron, U.S.A., Inc.,* 13 F.3d 888 (5th Cir.1994.

[33]   *Hodgen,* 87 F.3d at 1520 (emphasis added).

[34]   *See Michigan Wisconsin Pipeline Co. v. Williams-McWilliams Co.*, 551 F.2d 945 (5th Cir. 1977) (resolving in admiralty a third-party suit for damages based on private company's alleged negligence in dredging under a

8

Plaintiffs' claims meet all of the requirements for admiralty jurisdiction.   As such, Plaintiffs have a remedy under the SAA, which means that Section 745 precludes any suit based on "the same subject matter" against Government "agents," like the Dredging Defendants.

## II.   The Dredging Defendants Are "Agents" of the Government Under Section 745.

Plaintiffs' claims against the Dredging Defendants are barred because the Dredging Defendants' MRGO operations were undertaken as "agents" of the COE within the meaning of 46 U.S.C. app. § 745.   Again, that section provides, "where a remedy is provided by [the SAA] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States . . . whose act or omission gave rise to the claim."

"Agent" is broadly defined.   A vessel operator who "exercised operational control" but whose actions are subject "to the government's overall control and direction" is an "agent" of the Government entitled to dismissal under the SAA.[35]   The "significant control" required by Section 745 can be "either day-to-day control *or overall control and direction of the mission.*"[36]   In fact, an "agent" under Section 745 can include entities that might be classified as "independent contractors" in other contexts.[37]

---

contract with the COE); *see also Norfolk Southern Ry. v. Kirby*, 543 U.S. 14, 25 (2004) (the maritime contract inquiry is a "conceptual" one that focuses on "whether the principal objective of a contract is maritime commerce"); *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961) ("Without doubt a contract for hire either of a ship or of the sailors and officers to man her is within the admiralty jurisdiction.").

[35]    *Favorite v. Marine Personnel & Provisioning, Inc.*, 955 F.2d 382, 388 (5th Cir. 1992).

[36]    *Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995, 997-998 (9th Cir. 1997) (emphasis added); *see also Petition of United States*, 367 F.2d 505, 509 (3d Cir. 1966) (the operator "owed the United States obedience and loyalty and was in significant ways subject to the government's direction and control").

[37]    *See Dearborn*, 113 F.3d at 997 n.3 ("Agent may apply more broadly in this context than it does elsewhere and may include in some cases entities properly defined as 'independent contractors.'"); *Petition of United States*, 367 F.2d at 509 (even if the operator of Government vessel was an "independent contractor" because its day-to-day working of the ship arguably was not subject to government control, "an independent contractor, no less than a servant may be an agent in that he is employed as a fiduciary, acting for a principal with the principal's consent and subject to the principal's overall control and direction in accomplishing some matter undertaken on the principal's behalf"); *Smith v. United States*, 346 F.2d 449, 453 (4th Cir.1965) ("An independent contractor too may be an agent;

9

Here, Plaintiffs' claims do not involve any unseaworthiness or other mishap involving activities onboard a particular vessel;[38] they involve the Dredging Defendants' execution of Government contracts, dredging the MRGO at times and places specified by the COE, as it acted within its sphere of activity.  The Dredging Defendants undertook these missions on behalf of, and as directed by, the COE.  They are, therefore, immune from suit under Section 745. Plaintiffs do not complain of any other activities except those within the scope of the Dredging Defendants' Section 745 agency,[39] which means that Plaintiffs' exclusive remedy is against the Government.  Plaintiffs cannot validly argue otherwise. "The plain language of the statute and its interpretation by the courts leave no room for such an argument: where there is a remedy against the United States pursuant to the PVA, an injured party simply may not bring an action against agents of the United States."[40]  Plaintiffs' claims against the Dredging Defendants must be dismissed under Section 745.

## CONCLUSION

For the foregoing reasons, the Dredging Defendants respectfully request that the Court dismiss all claims against the Dredging Defendants as barred by 46 U.S.C. app. § 745, and award the Dredging Defendants any further relief that the Court deems just and proper.

---

the terms are not mutually exclusive. . . . [T]he question here is not whether the . . . crew were employees of [the operator], nor whether [the operator] is to be characterized as a bare-boat or time charterer, an owner pro hac vice, or an independent contractor. Indeed, the contract may have established a relation sui generis, not fitting into any of these terminologies, but that, again, is not the issue. The question now determinative is whether [the operator] was an 'agent.'").

[38]     *Cf. Williams v. Central Gulf Lines*, 874 F.2d 1058, 1061-63 (5th Cir. 1989) (vessel operator liable for negligent care for sick seaman in course of voyage); *Alexander v. United States*, 63 F.3d 820, 822-23 (9th Cir. 1995) (vessel operator liable for personal injury claim arising from the handle of a winch flying off during the repair of a lifeboat).

[39]     *See generally* Compl. ¶¶ 13-17.

[40]     *Farnsworth v. Sea-Land Serv., Inc.*, No. 87-5954, 1989 WL 20544 (E.D. La. Mar. 7, 1989), *aff'd* 896 F.2d 552 (5th Cir. 1990) (table) (citing, inter alia, *Doyle v. Bethlehem Steel Corp.*, 504 F.2d 911, 912 (5th Cir.1974) (the

10

Respectfully submitted,

James H. Roussel (Bar Roll No. 11496)
Nyka M. Scott (Bar Roll No. 28757)
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
201 St. Charles Ave., Ste. 3600
New Orleans, LA 70170
Telephone: (504) 566-5278
Facsimile: (504) 636-3978
jroussel@bakerdonelson.com
nscott@bakerdonelson.com

Attorneys for Great Lakes Dredge &
Dock Company

/s/William E. Wright, Jr.
William E. Wright, Jr. (Bar Roll No.8564)
Terrence L. Brennan (Bar Roll No. 3434)
Kelly E. Theard (Bar Roll No. 29445)
of
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
wwright@dkslaw.com
tbrennan@dkslaw.com
kthread@dkslaw.com

Attorneys for Bean

/s/ Samuel B. Gabb
Samuel B. Gabb (Bar Roll No. 22378)
Thomas P. LeBlanc (Bar Roll No. 22832)
Lundy & Davis
501 Broad St.
P. O. Box 3010
Lake, Charles, LA 70602-3010
Telephone: (337) 439-0707
Facsimile: (337) 439-1029
sgabb@lundydavis.com

Attorneys for Mike Hooks, Inc.

SAA remedy for an aggrieved party "is exclusive of any action against the agent or employee of the United States whose act or omission gave rise to the claims")).

11

/s/ James A. Cobb, Jr.
James A. Cobb, Jr. (Bar Roll No. 4213)
Emmett, Cobb, Waits & Henning
1515 Poydras St., Suite 1950
New Orleans, LA  70112
Telephone:(504) 581-1301
Facsimile: (5040 581-6020
jac@ecwko.com

Attorneys for Weeks Marine, Inc.


/s/ William Larzelere
William J. Larzelere, Jr. (Bar Roll No. 8057)
T. Justin Simpson (Bar Roll No. 18437)
Angie L. Arceneaux (Bar Roll No. 26786)
Larzelere, Picou, Wells, Simpson  & Lonero
3850 N. Causeway Blvd. - Ste. 1100
Two Lakeway Center
Metairie, LA  70002
Telephone:(504) 834-6500
Facsimile: (504) 834-6565
jsimpson@lpw-law.com

Attorneys for Luhr Bros., Inc.



/s/ Andre J. Mouledoux
Andre J. Mouledoux (Bar Roll No. 9778)
C. William Emory (La Bar #20179)
Daniel J. Hoerner (La Bar #21706)
Jacques P. DeGruy (La Bar #29144)
Mouledoux, Bland, Legrand & Brackett
701 Poydras St. - Suite 4250
New Orleans, LA  70139
Telephone: (504) 595-3000
Facsimile: (504) 522-2121
amouledoux@mblb.com

Attorneys for Pine Bluff Sand & Gravel Co.

/s/ Richard A. Cozad
Richard A. Cozad (Bar Roll No. 4537)
Michael L. McAlpine (Bar Roll. No. 9195)
Emma A. Mekinda (Bar Roll No. 28151)
McAlpine & Cozad
365 Canal Street, Suite 3180
New Orleans, LA 70130
Telephone:(504) 561-0323
Facsimile: (504) 528-9442
emmamekinda@yahoo.com

Attorneys for King Fisher Marine Service,
L.P.


/s/ A. Gordon Grant, Jr.
A. Gordon Grant, Jr. (Bar Roll No. 6221)
Philip S. Brooks, Jr. (Bar Roll No. 21501)
Montgomery, Barnett, Brown, Read,
 Hammond & Mintz, L.L.P.
Energy Centre - 1100 Poydras St.
Suite 3200
New Orleans, LA  70163-3200
Telephone: (504) 585-7681
Facsimile: (504) 200-8981
ggrant@monbar.com

Attorneys Gulf Coast Trailing Company;
T.L. James & Company, Inc.; TLJIC,
L.L.C., on its on behalf and as successor by
merger to T.L. James Marine, Inc., and T.L.
James Marine, L.L.C.

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of September, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

1)    jfnevares-law@microjuris.com

2)    dbecnel@becnellaw.com

3)    csalas@salaslaw.com

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

1)    A.J. Rebaneck

13