## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § CIVIL ACTION<br>§ No. 05-4182 "K"(2)<br>§<br>§ JUDGE DUVAL<br>§ MAG. WILKINSON<br>§ |
| PERTAINS TO: MRGO, *Reed*, No. 06-2152<br>MRGO, *Ackerson*, No. 06-4066 | §<br>§<br>§<br>§ |

### MEMORANDUM OF LAW IN SUPPORT OF THE DREDGING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(c)

Defendants Bean Dredging, L.L.C.; C.F. Bean L.L.C.; Bean Stuyvesant, L.L.C.; Stuyvesant Dredging Company; Stuyvesant Dredging, Inc.; Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corporation; C.F. Bean Corporation; Bean Horizon Corporation; Bean Horizon L.L.C.; Gulf Coast Trailing Company; T.L. James & Company, Inc.; TLJIC, L.L.C., on its on behalf and as successor by merger to T.L. James Marine, Inc. and T.L. James Marine, L.L.C.; Great Lakes Dredge & Dock Company; Great Lakes Dredge & Dock Company, L.L.C. of Louisiana; Great Lakes Dredge & Dock Corporation of Delaware; Natco Dredging Limited Partnership; Great Lakes Trailing Company; Weeks Marine, Inc.; Mike Hooks, Inc.; Luhr Bros. Inc.; Pine Bluff Sand and Gravel Company; and


EXHIBIT
A

King Fisher Marine Service, L.P. (collectively the "Dredging Defendants") submit this memorandum of law in support of their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c).[1]

Plaintiffs' claims against the Dredging Defendants in the *Reed* (No. 06-2152) and *Ackerson* (No. 06-4066) actions[2] are barred by multiple forms of government contractor immunity.

First, Plaintiffs' claims must be dismissed pursuant to Rule 12(b)(1) because they challenge Congress's decision to construct and maintain the Mississippi River Gulf Outlet ("MRGO"), and the implementation of that decision by the United States Army Corps of Engineers ("COE") and its contractors. This Court lacks jurisdiction to entertain such claims. Congress ordered the COE to construct, operate, and maintain the MRGO. The COE and its contractors—including the Dredging Defendants—cannot be sued for their actions.

Second, the Flood Control Act and discretionary function exception both bar Plaintiffs' claims. The Flood Control Act provides absolute immunity for flood damages, and Plaintiffs expressly and repeatedly allege that their damages were caused by flood waters.[3] In addition, sovereign immunity precludes suit for damages caused by the Government's performance of discretionary functions, including the COE's undertaking of navigational improvements in the MRGO and hiring contractors like the Dredging Defendants. The Dredging Defendants share the Government's sovereign immunity because they dredged the MRGO under the authority and

---

[1]    The Dredging Defendants advise the Court that they are considering whether to file proceedings pursuant to the Limitation of Liability Act.

[2]    The *Reed* and *Ackerson* Complaints are identical in all respects relevant to this motion, including the numbering of all cited paragraphs. As such, this Memorandum includes a single citation ("Compl. ¶__") to refer to the relevant paragraphs in both Complaints.

[3]    *See* Compl. ¶¶ 1, 2, 21-23.

2

direction of the COE. Because the Court cannot review Congress's decision, Plaintiffs' claims should be dismissed for lack of jurisdiction.

Finally, even if Plaintiffs' claims were not jurisdictionally barred, the Dredging Defendants should be dismissed from this case under Rule 12(c) because government contractors are immune from suit for defects in plans or specifications provided by the Government. Plaintiffs' allegations establish that the Dredging Defendants performed their contracts as per requirements provided by the COE. As such, even if the Government is potentially liable in this suit, the Dredging Defendants are not. Plaintiffs' claims should be dismissed.

## **BACKGROUND**

Plaintiffs bring suit to recover "damages suffered by Plaintiffs and the class members after Hurricane Katrina made land fall on August 29, 2005, when three levee systems failed as a result of environmental damage to protective wetlands caused by the Defendants' maritime activities in the Mississippi River Gulf Outlet ("MRGO") from 1958 through August 29, 2005."[4] The Complaints allege that Plaintiffs and residents of the "four protected basins or 'Polders' that make up the flood protection system of the New Orleans region" sustained damage "by waters that flooded the New Orleans metropolitan area."[5] Plaintiffs complain that the MRGO "intensified the initial [storm] surge by 20%, raised the height of the wall of water about three feet, and increased the velocity of the surge from 3 feet per second to 8 feet per second" because it was designed in such a way that it created a funnel through which the storm surge approached the city of New Orleans.[6] Plaintiffs further allege "this contributed to the scouring that

---

[4]      *See* Compl. ¶¶ 1, 2, 8-22 (emphasis added).

[5]      *Id.* ¶¶ 2, 23.

[6]      *Id.* ¶ 22.

3

undermined the levees and floodwalls along the MRGO and the Industrial Canal" and "without MRGO" the "complete devastation of St. Bernard Parish and areas of Orleans Parish would not have occurred."[7]

Plaintiffs claim that the "negligence of the United States of America arises out of its maritime activities, connected to the construction, continuing dredging and maintenance of the MRGO as a navigable channel, and carried out by the United States of America's own fleet of dredging vessels and by fleets of dredging vessels owned by the other Defendants, pursuant to maritime dredging contracts between them."[8]  Plaintiffs allege that the construction, dredging and maintenance of MRGO by the COE and its contractors as specifically legislated by Congress in the Rivers and Harbors Act of 1956 and subsequent legislation, constituted negligence, breach of an implied warranty, concealment and a violation of the Federal Water Pollution Control Act.[9]

Plaintiffs do not claim, however, that the Dredging Defendants designed or constructed the MRGO.  Plaintiffs merely allege that they performed maintenance dredging on behalf of the COE between 1993 and 2005 pursuant to specific government contracts.[10]

## STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) should be granted when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[11]  When deciding a 12(b)(1) motion, a

---

[7]     *Id.*

[8]     *Id.* ¶ 4.

[9]     *Id.* ¶¶ 7, 31-45.

[10]    *Id.* ¶¶ 16-17.

[11]    *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

NO NMS 122409 v1
2902907-000001

court may rely upon the complaint, undisputed facts in the record, and disputed facts resolved by the court.[12] "[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."[13] As the proponent of jurisdiction, Plaintiffs bear the burden of proof.[14]

As with Rule 12(b)(1), a judgment of dismissal on the pleadings pursuant to Rule 12(c) should be granted when, construing the complaint in the light most favorable to plaintiff and taking the allegations therein as true, it appears certain that plaintiff cannot prove any set of facts that would entitle him to relief.[15] However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[16] "[A] plaintiff must plead specific facts, not mere conclusory allegations."[17]

---

[12]     *Id.*; *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).

[13]     *Williamson*, 645 F.2d at 412-13.

[14]     *Ramming*, 281 F.3d at 161.

[15]     *Oppenheimer v. Prudential Securities, Inc.*, 94 F.3d 189, 194 (5th Cir. 1996); *Bolen v. Dengel*, No. 00-783, 2004 WL 2984330 at *9 (E.D. La. Dec. 16, 2004); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 & n.8 (5th Cir. 2002) (Rule 12(b)(6) standards apply to Rule 12(c) motion seeking dismissal for failure to state a claim).

[16]     *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

[17]     *Bolen*, 2004 WL 2894330, at *9.

NO NMS 122409 v1
2902907-000001

## ARGUMENT

I.      **Plaintiffs Cannot Challenge the Will of Congress by Suing the Dredging Defendants.**

The Court lacks jurisdiction to entertain Plaintiffs' challenges to Congress's decision to order the construction, operation, and maintenance of the MRGO. Plaintiffs do not allege that any Dredging Defendant failed to perform its contractual obligations, or that the dredging contracts deviated in any way from congressional directive. Rather, Plaintiffs are suing the Government and its contractors because they executed orders dispatched from Congress. Because Congress acted pursuant to its constitutional authority to regulate interstate commerce and provide for the common defense, the challenge to congressional will posed by these suits is barred by *Yearsley v. W. A. Ross Constr. Co.*[18]

The COE and its contractors constructed, operated and maintained the MRGO pursuant to a series of express congressional directives. Congress authorized the channel in the Rivers and Harbors Act of 1956, as Plaintiffs' own Complaints recognize.[19] In that Act, Congress directed that the MRGO be constructed in accordance with the detailed specifications found in House Document Number 245, which was prepared for Congress by the Secretary of the Army.[20] This House Document, and therefore the Act itself, expressly provided the specifications for the MRGO's construction that Plaintiffs allege constitute negligence, including its location and

---

[18]      309 U.S. 18 (1940).

[19]      *See* Compl. ¶ 7.

[20]      *See Mississippi River Gulf Outlet-Construction*, Pub. L. No. 84-455, 1956 U.S.C.C.A.N. 83 (March 29, 1956) ("The existing project for Mississippi River, Baton Rouge to the Gulf of Mexico, is hereby modified to provide for the Mississippi River-Gulf Outlet to be prosecuted under the direction of the Secretary of the Army and supervision of the Chief of Engineers, substantially in accordance with the recommendation of the Chief of Engineers contained in House Document numbered 245 . . . ."); *see also Graci v. United States*, 435 F. Supp. 189, 192-93 (E.D. La. 1977) (examining history of the MRGO).

NO NMS 122409 v1
2902907-000001

depth.[21] Congress provided funding for the construction and maintenance of the project, which was nearly complete by 1965.[22]

Congress has regularly provided supplemental directions and appropriations to guide the COE in operating and maintaining the MRGO. For example, Congress funded the MRGO dredging for constructing the Lake Pontchartrain and Vicinity Hurricane Protection Project. "Between 1968 and 1983 an estimated 100 million cubic yards of dredged material . . . was removed from the MR-GO for use in levee construction" for flood control.[23] In 1991, Congress directed the Secretary of the Army to "construct and maintain bank stabilization measures" for the MRGO.[24] And, of particular salience here given Plaintiffs' claims against the Dredging Defendants, Congress has appropriated funds expressly earmarked for maintenance dredging of the MRGO.[25]

---

[21]     House Document Number 245 also provided for Congress's consideration a detailed assessment of the economic and national defense benefits flowing from a new outlet for the Mississippi River and dispersed facilities. *See* H.R. Doc. No. 245at 2, 82d Cong., 1st Sess. (1951)(analyzing savings per ship voyage versus project *cost*); *id.* at 12 ("The ratio of estimated benefits to annual carrying charges is 1-61 under the plan providing for the supplementary outlet eastward of the Mississippi River and under the alternate plan for the west-bank outlet, therefore, the division engineer finds that the improvements to provide the eastward outlet all economically justified. . . . He also notes that the improvements would greatly enhance the capacity of the port for emergency war service by provision of an additional outlet and wide dispersion of terminal facilities for embarkation of personnel, material, and supplies in the interest of national defense.").

[22]     See Compl. ¶ 7.

[23]     *See* United States Army Corps of Engineers Design Memorandum and Reconnaissance Report, 100th Cong., 2nd Sess. (1988). Congress authorized the Lake Pontchartrain, Louisiana and Vicinity Hurricane Protection Project in the Flood Control Act of 1965, Pub. L. No. 89-298, § 204, 79 Stat. 1073, 1077 (Oct. 27, 1965) (substantially in accordance with the letter from the Secretary of the Army dated 6 July, 1965 printed in H.R. Doc. No. 231, 89th Cong., 1st Sess.).

[24]     *See* Pub. L. 102-104, 105 Stat. 510 (Aug. 17, 1991) (appropriating $3.5 million for bank stabilization for miles 49.9 - 56.1 of MRGO); *see also* Pub. L. 104-46, 109 Stat. 402 (Nov. 13,1995); H.R. Rep. 104-149, to *accompany* H.R. 1905 (June 20, 1995); Pub. L. 107-66, 15 Stat. 486 (Nov. 12, 2001); H.R. Rep. 107-112 to accompany H.R. 2311.

[25]     *See, e.g.* Pub. L. 104-206, 110 Stat. 2984 (Sept. 30, 1996) (congressional appropriation of $12.828 million for MRGO maintenance dredging); Pub. L. 108-7, 117 Stat. 11 (February 20, 2003) (congressional appropriation of $13.061 million for MRGO maintenance dredging).

7

The Dredging Defendants cannot be held liable for executing Congress's will as Plaintiffs allege because, for more than a century, the federal courts have held that they have no authority to interfere with valid exercises of congressional power like these. In *Wisconsin v. Duluth*,[26] the Supreme Court first rejected a challenge to federal navigational projects by local interests near Duluth, Minnesota. The projects involved constructing piers and levees to constrict water flow and thereby deepen the channel through scouring by the accelerated currents. Just as it did with the MRGO, Congress had specifically "adopted, recognized, and taken charge of this work" by providing for the project through the Act's appropriations legislation and by delegating the specific development of the project to the War Department.[27] As such, the Supreme Court held that it had no authority to interfere:

> If, then, Congress, in the exercise of a lawful authority, has adopted and is carrying out a system of harbor improvements at Duluth, this court can have no lawful authority to forbid the work. If that body sees fit to provide a way by which the great commerce of the lakes and the countries west of them, even to Asia, shall be securely accommodated at the harbor of Duluth by this short canal of three or four hundred feet, can this court decree that it must for ever pursue the old channel, by the natural outlet, over water too shallow for large vessels, unsafe for small ones, and by a longer and much more tedious route? When Congress appropriates $10,000 to improve, protect, and secure this canal, this court can have no power to require it to be filled up and obstructed. While the engineering officers of the government are, under the authority of Congress, doing all they can to make the canal useful to commerce, and to keep it in good condition, this court can owe no duty to a State which requires it to order the city of Duluth to destroy it.[28]

A plaintiff may not circumvent this rule by seeking damages from the Government contractors who undertake to execute congressional projects like the MRGO. This is precisely

---

[26]     96 U.S. 379 (1877).

[27]     *Id.* at 386.

[28]     *Id.* at 387-88.

NO NMS 122409 v1
2902907-000001

the holding of *Yearsley v. W. A. Ross Constr. Co.*[29]  In *Yearsley*, a property owner brought suit against a contractor for damage caused by dredging to improve Missouri River navigation.  The Court ruled that the contractor's actions had been "directed by the government of the United States" and held that "it is clear that if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will."[30]

*Yearsley* governs this case.  It has been applied consistently to public works performance contracts, like the dredging contracts at issue in this case, "where a contractor acts under the authority and direction of the United States."[31]  There is no question that Congress has ample constitutional authority to undertake navigational projects,[32] and, as discussed above, Congress exercised that power in authorizing and appropriating money for the construction, operation, and maintenance of the MRGO.  Plaintiffs' claims against the Dredging Defendants must be dismissed under Rule 12(b)(1) for lack of jurisdiction.

## II.    The Dredging Defendants Share the Government's Sovereign Immunity.

Even if these suits were not a direct challenge to the duly-enacted policies of the United States Congress, they would have to be dismissed nonetheless because the Dredging Defendants

---

[29]    309 U.S. 18 (1940).

[30]    *Id.* at 20-21 (citing *Murray's Lessee v. Hoboken Land & Impr. Co.*, 59 U.S. (18 How.) 272, 283 (1856); Lamar *v. Browne*, 92 U.S. 187, 199 (1856)); *see also Mocklin v. Orleans Levee Dist.*, 690 F. Supp. 527, 534 n. 8 (E.D. La. 1988) (noting that where the authority for a navigational or dredging project comes directly from an Act of Congress, the project constitutes a protected discretionary function of Government).

[31]    *Hardwel v. General Dynamics Corp.*, 878 F.2d 1311, 1316 (11th Cir. 1989); *see also Boyle v. United Tech. Corp.*, 487 U.S. 500, 506 (1988) (reaffirming the vitality of *Yearsley* as the foundation of the modern "military contractor defense").

[32]    *See, e.g., Scranton v. Wheeler*, 179 U.S. 141, 159 (1900); *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 196, 197 (1824).

9

share the Government's immunity under the Flood Control Act and the discretionary function exception. Plaintiffs repeatedly and expressly allege that their damages were caused by flood waters,[33] and the Flood Control Act provides absolute immunity for flood damages.[34]    In addition, the Government retains sovereign immunity for claims arising from its performance, or failure to perform, discretionary functions. The Government—and by extension, the Dredging Defendants—cannot be held liable for Plaintiffs' damages because, even if not directly attributable to Congress as discussed above, Plaintiffs' damages arise from discretionary functions undertaken by the COE in the MRGO.

### A.    The Dredging Defendants share the Government's immunity.

The doctrine of "shared immunity" provides public works contractors like the Dredging Defendants the protection of the Government's sovereign immunity. Also referred to as a "defense," shared immunity "derives from the principle that where a contractor acts under the authority and direction of the United States, it shares the sovereign immunity that is enjoyed by the government."[35]

The shared immunity doctrine is essential to prevent erosion of the Government's own immunity. "Without the defense, the government's own tort immunity for its discretionary

---

[33]    *See* Compl. ¶¶ 1, 2, 21-23.

[34]    *See* 33 U.S.C. § 702c.

[35]    *Harduvel v. General Dynamics Corp.*, 878 F.2d 1311, 1316 (11th Cir. 1989) (citing *Yearsley*); *see also, e.g., Bynum v. FMC Corp.*, 770 F.2d 556, 564 (5th Cir. 1985) (a public works contractor can share sovereign immunity if it is an agent of the government); *Ward v. Humble Oil & Refining, Co.*, 321 F.2d 775, 780 (5th Cir. 1963) (holding that if suit against the Government is barred, so is suit against the Government's contractors); *Portis v. Folk Constr., Co.*, 694 F.2d 520, 524 (8th Cir. 1982) (recognizing the shared immunity doctrine and applying Arkansas law); *Right of Contractor with Federal, State, or Local Public Body to Latter's Immunity from Tort Liability*, 9 A.L.R.3d 382, 386. (In this lawsuit, Plaintiffs do not allege that the Dredging Defendants exercised control over the design, construction, or decisions regarding maintenance dredging of the MRGO, therefore the agency relationship discussed in *Bynum* in the context of a manufacturer in a product liability action is irrelevant.)

10

functions would be undermined. Contractors held liable for design defects that were the subject of discretionary approval by the government would predictably pass on the costs of the liability, ultimately imposing costs on the government that its immunity was intended to preclude."[36] Shared immunity also is a matter of fairness to the contractor.[37] Because the Government is immune from suit in this case, Plaintiffs' claims against the Dredging Defendants also are barred.

**B.      Plaintiffs' claims are barred by the Flood Control Act.**

The Flood Control Act provides immunity from Plaintiffs' claims. Section 3 of the Act, codified at 33 U.S.C. § 702c, provides in relevant part, "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." Plaintiffs allege that the Suits in Admiralty Act waives the sovereign immunity of the Government and its contractors under the Flood Control Act.[38] Plaintiffs are mistaken.[39] Section 702c bars Plaintiffs' claims for flood damage caused by the flood waters that inundated the city after several flood control projects failed.

Plaintiffs are also mistaken in their reliance on *Graci v. United States*,[40] which arose out of flooding during Hurricane Betsy in 1965, for the proposition that "[t]he United States Court of Appeals for the Fifth Circuit has already held that the Flood Control Act . . . does not immunize the United States of America for its maritime activities (including dredging activities) conducted

---

[36]      *Harduvel*, 878 F.2d at 1315 (citing *Boyle*, 487 U.S. at 511).

[37]      *See, Bynum*, 770 F.2d at 566 ("principles of fairness dictate that an innocent contractor should not be ultimately liable for a dangerous design when the responsibility properly lies elsewhere").

[38]      Compl. ¶ 6.

[39]      *See Mocklin v. Orleans Levee District*, 877 F.2d 427, 428 (5th Cir. 1989) (where the broad and absolute immunity of the Flood Control Act applies there is no need to consider the discretionary function exception).

[40]      456 F.2d 20 (5th Cir. 1971).

11

in the MRGO."[41]  *Graci* does not hold that when Hurricane Katrina struck in August 2005—40 years after Hurricane Betsy—the MRGO remained solely an isolated navigational project.  In *Graci*, the United States conceded that, at that time, the MRGO was a "navigational aid project" that was "unconnected with flood control projects."[42]  The court held, therefore, that the Government's sovereign immunity under the Flood Control Act did not extend to the construction of the MRGO.[43]

Plaintiffs' reliance on *Graci* in this case fails for two independent reasons.  First, the Supreme Court in *Central Green v. United States*,[44] superseded the *Graci* court's analysis.  In *Central Green*, the Supreme Court rejected the argument that the nature of the project was decisive, holding that "in determining whether Flood Control Act immunity attaches, courts should consider *the character of the waters* that cause the relevant damage rather than the relation between that damage and a flood control project."[45]  Here, the Complaints allege that the character of the waters causing damage were "waters that flooded the New Orleans metropolitan area" as a result of Hurricane Katrina's "storm surge."[46]  Because the Complaints expressly allege that storm-driven *flood waters* caused the damage, as a matter of law, these suits

---

[41]     Compl. ¶ 6.

[42]     456 F.2d at 22.

[43]     *Id.* at 27.

[44]     531 U.S. 425 (2001).

[45]     *Id.* at 437 (emphasis added).

[46]     *See* Compl. ¶¶ 2, 21 & 22 (alleging that Plaintiffs' homes and property were damaged by the waters that flooded New Orleans, and that the levee failures were caused by overtopping as the "storm surge" rose over tops of levees and produced erosion that subsequently led to failures and breaches of the levees).

against the Government and its contractors arising from these flood waters and the failure of the New Orleans "flood protection system"[47] are barred by the Flood Control Act.

Second, the Flood Control Act bars Plaintiffs' claims even under the obsolete *Graci* analysis. Plaintiffs allege damages due to flood waters from multiple levee failures of "three levee systems," all of which were built for flood control purposes.[48] Congress expressly authorized the levees protecting the New Orleans area in the Flood Control Act of 1965 to prevent hurricane-induced flood damage of the type experienced during Hurricane Betsy in 1965.[49] In *Mocklin v. Orleans Levee District*,[50] the Fifth Circuit distinguished *Graci*. *Mocklin* involved the reinforcement of Lake Pontchartrain's levees to address "damages due to hurricanes and past flooding."[51] The Fifth Circuit explained that to escape the absolute immunity provision of the Flood Control Act, the project or operation at issue must be "wholly unrelated" to flood control.[52] Here, the Complaints allege flooding because of failures of "three levee systems," and flooding of "Polder No. 1" when the Lake Pontchartrain levee system failed along the 17th Street Canal, Orleans Avenue Canal, and the London Avenue Canal.[53] Not only do Plaintiffs concede that they were injured by flood waters, they concede that those waters flowed from failed levees. Their claims are barred by Section 702c and should be dismissed for lack of jurisdiction.

---

[47]     *Id.* ¶¶ 1, 22, 23.

[48]     *Id.* ¶¶ 1, 22, 23 (alleging twenty breaches of MRGO levees, three breaches of Industrial Canal levees, and flooding of Polder 1 by the 17th Street and London Avenue canals).

[49]     *See* Pub. L. No. 89-298, § 204, 79 Stat. 1073, 1077 (October 27, 1965).

[50]     877 F.2d 427 (5th Cir. 1989).

[51]     *Id.* at 428.

[52]     *Id.* at 430.

[53]     Compl. ¶ 23.

13

### C.    Plaintiffs' claims are barred by the discretionary function exception.

A second sovereign immunity rule, the "discretionary function exception," also bars Plaintiffs' claims against the Government—and by extension, the Dredging Defendants.  As put in the Federal Tort Claims Act, federal law forbids suit for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."[54]  The Government's decisions to undertake navigational improvements performed by contractors—including decisions to dredge a channel, to dredge a certain depth or width, to place dredge spoils in a specific place, or not to take precautions—are discretionary functions.

For example, in *Payne v. United States*,[55] the Eleventh Circuit held that the redesign and dredging of the Tombigbee River, which allegedly damaged a land owner, was a discretionary function.  In *Mocklin v. Orleans Levee District*,[56] the court held that the COE's decision to use flotation channels to construct dikes was a discretionary function.   Likewise, in *Dolphen Gardens v. United States*,[57] the court rejected a suit against the Government and its dredging contractor for depositing dredge spoils ashore, where the plaintiff alleged that the spoils emitted damaging fumes. The court explained the plaintiff's attempt to avoid the discretionary function bar:

---

[54]    28 U.S.C. § 2680(a); *see also Wiggins v. United States*, 799 F.3d 962, 964-66 (5th Cir. 1986) (holding that the discretionary function exception is implicit in the Suits in Admiralty Act).

[55]    730 F.2d 1434 (11th Cir. 1984).

[56]    690 F. Supp. 527 (E.D. La. 1988).

[57]    243 F. Supp. 824 (D. Conn. 1965).

14

> The Plaintiff does not suggest that responsibility for the damage rests in the decision to dredge the channel, for it is established that such determinations are "discretionary functions" within the meaning of § 2680(a). Rather, it is argued that the "negligence for which the Government is liable lies in the decision to dump the spoil onto the particular shore-side vacant lots instead of carrying it out to sea, and in the failure to take precautions to prevent the escape of fumes."[58]

Nonetheless, the court held that the decision to dredge a channel is *inseparable* from decisions about how to dredge it and what precautions to take.[59]   Moreover, embracing the shared immunity principle on which the Dredging Defendants rely in this case, the court in *Dolphen Gardens* also dismissed the claims against the contractor:

> To impose liability on the contractor under such circumstances would render the Government's immunity for the consequences of its acts in the performance of a "discretionary function" meaningless, for if the contractor was held liable, contract prices to the Government would be increased to cover the contractor's risk of loss from possible harmful effects of complying with decisions of the executive officers authorized to make policy judgments.[60]

Likewise, the Dredging Defendants cannot be sued for their role in the Government's exercise of its discretionary functions in the MRGO.  As a result, Plaintiffs' claims should be dismissed for lack of jurisdiction under Rule 12(b)(1).

## III.     The Dredging Defendants Are Immune as Government Contractors.

Finally, even if this Court has jurisdiction—and even if sovereign immunity does not bar Plaintiffs' claims against the Government—the Dredging Defendants are immune in their own right. They should be dismissed from this case under Rule 12(c) because Plaintiffs' allegations establish that the Dredging Defendants did no more than perform their contracts as per

---

[58]     *Id.* at 826 (internal citations omitted).

[59]     *Id.* (citing *United States v. Gregory*, 300 F.2d 11 (10th Cir. 1962), and *F&M Schaefer Brewing Co. v. United States*, 121 F. Supp. 322 (E.D.N.Y. 1954) (decision to dredge and to do so to a certain depth held discretionary acts)).

[60]     *Id.* at 827.

requirements provided by the COE, and government contractors are not liable for defects in plans or specifications provided by the Government.

Where "the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications."[61]   That is, contractors cannot be held liable for performing contracts in conformity with the Government's specifications, provided the contract is carried out with due care and absent negligence.[62]   The "primary purpose behind the formulation of the government contractor defense [is] to 'prevent the contractor from being held liable when the government is actually at fault . . . .'"[63]

In *Jemison v. The Dredge Duplex,*[64] for example, the court held that the Government had negligently designed the dredging project because its plans called for dredging below the level of wharf pilings.  But, the court also held that the dredging contractors were not liable because they followed the Government plans and specifications and used due care.[65]

Government contractor status is a complete defense to liability where: (1) the

---

[61]     *United States v. Spearin,* 248 U.S. 132, 136 (1918) (government contractor recovers fees for dry dock construction where defects were attributable to plans supplied by the United States).

[62]     *Hercules Inc. v. United States,* 516 U.S. 417, 421-22 (1996); *Boyle v. United Tech. Corp.,* 487 U.S. 500, 511-12 (1988).

[63]     *Mitchell v. Lone Star Ammunition, Inc.,* 913 F.2d 242, 245 (5th Cir. 1990 ) (quoting *Trevino v. General Dynamics Corp.,* 865 F.2d 1474, 1478 (5th Cir. 1989)).

[64]     163 F. Supp. 947 (S.D. Ala. 1958).

[65]     *Id.* at 950; *see also Ernst v. Gen'l Refractories Co.,* 202 F.2d 485 (6th Cir. 1953) (contractors are not liable for damage to plaintiff's property resulting from relocation and construction of state highway where such work was conducted pursuant to contract specifications and without negligence); *Roland v. Jumper Creek Drainage Dist.,* 4 F.2d 719 (S.D. Fla. 1925) (dismissing complaint against dredging contractor for damages from overflow of drainage canals and ditches because the contractor performed pursuant to the plans and specifications under the supervision of the Government drainage district engineer).

16

Government approved reasonably precise specifications; (2) the contractor conformed to those specifications; and (3) the Government knew about the dangers of contract performance.[66] Plaintiffs' Complaints establish all three of these elements.  Plaintiffs allege that the Dredging Defendants dredged the MRGO pursuant to specific Government contracts.[67]  Plaintiffs allege that the Government approved reasonably precise specifications with which the Dredging Defendants conformed.[68]  And Plaintiffs allege that the Government knew of the potential harmful effects of the MRGO.[69]

Conclusory assertions of law aside, there is no indication whatsoever in any of Plaintiffs' allegations that the Dredging Defendants did anything but fulfill their contractual obligations to the COE; Plaintiffs' allegations cannot support an inference that any of the Dredging Defendants failed to exercise due care.[70]  The gravamen of Plaintiffs' Complaints is that the Government's decisions to construct, operate, and maintain the MRGO—foremost, the congressional authorization to build the channel in the first place—were unwise.  Plaintiffs' complaint is with the Government, not the Dredging Defendants.  All claims against the Dredging Defendants must be dismissed.

## CONCLUSION

For the foregoing reasons, the Dredging Defendants respectfully request that the Court dismiss all claims against the Dredging Defendants for lack of jurisdiction, or in the alternative,

---

[66]    *Boyle*, 487 U.S. at 512; *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 419 (5th Cir. 2001).

[67]    Compl. ¶¶ 13-17.

[68]    *See id.* ¶¶ 7, 14, 16-17.

[69]    *Id.* ¶ 9.

17

for failure to state a claim on which relief may be granted, and award the Dredging Defendants

any further relief that the Court deems just and proper.

Respectfully submitted,

James H. Roussel (Bar Roll No. 11496)
Nyka M. Scott (Bar Roll No. 28757)
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
201 St. Charles Ave., Ste. 3600
New Orleans, LA 70170
Telephone: (504) 566-5278
Facsimile: (504) 636-3978
jroussel@bakerdonelson.com
nscott@bakerdonelson.com

Attorneys for Great Lakes Dredge &
Dock Company

/s/William E. Wright, Jr.                      /s/ Samuel B. Gabb
William E. Wright, Jr. (Bar Roll No.8564)       Samuel B. Gabb (Bar Roll No. 22378)
Terrence L. Brennan (Bar Roll No. 3434)         Thomas P. LeBlanc (Bar Roll No. 22832)
Kelly E. Theard (Bar Roll No. 29445)            Lundy & Davis
of                                              501 Broad St.
Deutsch, Kerrigan & Stiles, L.L.P.              P. O. Box 3010
755 Magazine Street                             Lake, Charles, LA  70602-3010
New Orleans, Louisiana  70130                   Telephone: (337) 439-0707
Telephone:  (504) 581-5141                      Facsimile: (337) 439-1029
Facsimile:  (504) 566-1201                      sgabb@lundydavis.com
wwright@dkslaw.com
tbrennan@dkslaw.com                             Attorneys for Mike Hooks, Inc.
kthread@dkslaw.com

Attorneys for Bean

---

[70]     *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (conclusory allegations and
allegations of law will not avert dismissal for failure to state a claim); *Bolen v. Dengel*, No. 00-783, 2004 WL
2984330 at *9 (E.D. La. Dec. 16, 2004).

18

/s/ James A. Cobb, Jr.
James A. Cobb, Jr. (Bar Roll No. 4213)
Emmett, Cobb, Waits & Henning
1515 Poydras St., Suite 1950
New Orleans, LA  70112
Telephone:(504) 581-1301
Facsimile: (5040 581-6020)
jac@ecwko.com

Attorneys for Weeks Marine, Inc.


/s/ A. Gordon Grant, Jr.
A. Gordon Grant, Jr. (Bar Roll No. 6221)
Philip S. Brooks, Jr. (Bar Roll No. 21501)
Montgomery, Barnett, Brown, Read,
 Hammond & Mintz, L.L.P.
Energy Centre - 1100 Poydras St.
Suite 3200
New Orleans, LA  70163-3200
Telephone: (504) 585-7681
Facsimile: (504) 200-8981
ggrant@monbar.com

Attorneys for Gulf Coast Trailing Company;
T.L. James & Company, Inc.; TLJIC,
L.L.C., on its on behalf and as successor by
merger to T.L. James Marine, Inc. and T.L.
James Marine, L.L.C.


/s/ Richard A. Cozad
Richard A. Cozad (Bar Roll No. 4537)
Michael L. McAlpine (Bar Roll. No. 9195)
Emma A. Mekinda (Bar Roll No. 28151)
McAlpine & Cozad
365 Canal Street, Suite 3180
New Orleans, LA 70130
Telephone:(504) 561-0323
Facsimile: (504) 528-9442
emmamekinda@yahoo.com

Attorneys for King Fisher Marine Service,
L.P.


/s/ Andre J. Mouledoux
Andre J. Mouledoux (Bar Roll No. 9788)
C. William Emory (La Bar #20179)
Daniel J. Hoerner (La Bar #21706)
Jacques P. DeGruy (La Bar #29144)
Mouledoux, Bland, Legrand & Brackett
701 Poydras St. - Suite 4250
New Orleans, LA  70139
Telephone: (504) 595-3000
Facsimile: (504) 522-2121
amouledoux@mblb.com

Attorneys for Pine Bluff Sand & Gravel Co.

19

/s/ William Larzelere
William J. Larzelere, Jr. (Bar Roll No. 8057)
T. Justin Simpson (Bar Roll No. 18437)
Angie L. Arceneaux (Bar Roll No. 26786)
Larzelere, Picou, Wells, Simpson & Lonero
3850 N. Causeway Blvd. - Ste. 1100
Two Lakeway Center
Metairie, LA 70002
Telephone:(504) 834-6500
Facsimile: (504) 834-6565
blarzelere@lpw-law.com
jsimpson@lpw-law.com
aakers@lpw-law.com

Attorneys for Luhr Bros., Inc.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of September, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

      1)     jfnevares-law@microjuris.com

      2)     dbecnel@becnellaw.com

      3)     csalas@salaslaw.com

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

      1)     A.J. Rebaneck

20

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | § CIVIL ACTION<br>§ No. 05-4182 "K"(2)<br>§<br>§ JUDGE DUVAL<br>§ MAG. WILKINSON<br>§ |
| | § |
| PERTAINS TO: MRGO, *Reed*, No. 06-2152<br>MRGO, *Ackerson*, No. 06-4066 | §<br>§<br>§<br>§ |

## MEMORANDUM OF LAW IN SUPPORT OF THE DREDGING DEFENDANTS' MOTION TO DISMISS PURSUANT TO THE SUITS IN ADMIRALTY ACT AND FED. R. CIV. P. 12(c)

Defendants Bean Dredging, L.L.C.; C.F. Bean L.L.C.; Bean Stuyvesant, L.L.C.; Stuyvesant Dredging Company; Stuyvesant Dredging, Inc.; Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corporation; C.F. Bean Corporation; Bean Horizon Corporation; Bean Horizon L.L.C.; Gulf Coast Trailing Company; T.L. James & Company, Inc.; TLJIC, L.L.C., on its on behalf and as successor by merger to T.L. James Marine, Inc., and T.L. James Marine, L.L.C.; Great Lakes Dredge & Dock Company; Great Lakes Dredge & Dock Company, L.L.C. of Louisiana; Great Lakes Dredge & Dock Corporation of Delaware; Natco Dredging Limited Partnership; Great Lakes Trailing Company; Weeks Marine, Inc.; Mike Hooks, Inc.; Luhr Bros. Inc.; Pine Bluff Sand and Gravel Company; and



EXHIBIT

β

King Fisher Marine Service, L.P. (collectively the "Dredging Defendants") submit this memorandum of law in support of their Motion to Dismiss Pursuant to the Suits in Admiralty Act and Fed. R. Civ. P. 12(c).

The Dredging Defendants believe the Government is entitled to immunity, and that, as agents, the Dredging Defendants are equally immune.[1]   Nonetheless, if the Court were to disagree, Plaintiffs' claims against the Dredging Defendants in the *Reed* and *Ackerson* actions (which are identical in all respects relevant to this Motion) should be dismissed nonetheless pursuant to the exclusive remedy provision of the Suits in Admiralty Act, 46 U.S.C. app. §§ 741- 752 ("SAA").

The SAA provides a general waiver of the Government's sovereign immunity for admiralty claims.[2]   As set forth in the Dredging Defendants' Immunity Motion, the Government retains its sovereign immunity—which is shared by the Dredging Defendants—for damages caused by the Government's execution of discretionary functions, and for damages caused by flood waters.[3]  In addition, and also discussed in the Dredging Defendants' Immunity Motion, regardless of whether the Government and the Dredging Defendants are amenable to suit given the Flood Control Act and discretionary function exception, the Dredging Defendants are immune in their own right for executing the Congress's will and as government contractors.

---

[1]      *See generally* Memorandum of Law in Support of the Dredging Defendants' Motion to Dismiss on Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c), Nos. 06-2152 (*Reed*), 06-4066 (*Ackerson*) (filed Sept. 15, 2006) ("Immunity Motion").

[2]      *See* 46 U.S.C. app. § 742 (discussed further below).

[3]      *See also Wiggins v. United States*, 799 F.3d 962, 964-66 (5th Cir. 1986) (holding that the discretionary function exception is implicit in the Suits in Admiralty Act); *Mocklin v. Orleans Levee District*, 877 F.2d 427, 428 (5th Cir. 1989) (where the broad and absolute immunity of the Flood Control Act applies there is no need to consider the discretionary function exception).

2

If the Court determines that Plaintiffs' claims are not barred by these immunities, Plaintiffs' claims against the Dredging Defendants must be dismissed pursuant to the SAA exclusivity provision: "where a remedy is provided by [the SAA] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States . . . whose act or omission gave rise to the claim."[4]   Application of this provision is a simple, two-step process in this case.  First, Plaintiffs claims against the United States are admiralty claims cognizable under the SAA.[5]   And second, because the United States Army Corps of Engineers ("COE") exercised overall control of all dredging projects in the MRGO, the Dredging Defendants operated as "agents" of the Government within the meaning of Section 745.  Plaintiffs' exclusive remedy is against the Government.  All claims against the Dredging Defendants are barred.

## ARGUMENT

### I.     The SAA Applies to Plaintiffs' Claims.

If the Court were to disagree with the Dredging Defendants' Immunity Motion and hold that the Government is not immune from suit, the SAA would provide Plaintiffs with a remedy against the Government for the Dredging Defendants' activities in the MRGO.  In fact, Plaintiffs allege in their Complaints that jurisdiction lies under "the Suits in Admiralty Act, 46 U.S.C. §§ 741-52 (in personam) because the negligence of the United States of America arises out of its maritime activities, connected to the construction, continuous dredging and maintenance of the MRGO as a navigable channel, and carried out by the United States of America's own fleet of

---

[4]      46 U.S.C. app. § 745; *see also Stiward v. United States*, No. 05-1926, 2005 WL 3543736, *3 n.2 (E.D. La. Oct. 13, 2005) (Duval, J.) ("Remedies provided by the [Public Vessels Act] are also subject to the SAA's exclusivity clause.") (citing 46 U.S.C. app. § 782).

[5]      *See* 46 U.S.C. app. § 742.

dredging vessels and by fleets of dredging vessels owned by the other Defendants, pursuant to maritime dredging contracts between them."[6]

If Plaintiffs have a remedy on the facts they have alleged, then they have a remedy against the Government under the SAA. The Public Vessels Act, 46 U.S.C. app. §§ 781-790 ("PVA"), applies to "public vessels," like the COE's own dredges.[7]  But the SAA is broader. A remedy also lies under the SAA where, "if [a vessel operated by or for the United States] were privately owned or operated . . . or if a private person or property were involved, a proceeding in admiralty could be maintained."[8]  This provision operates simply as a "jurisdictional hook on which to hang a traditional admiralty claim."[9]  It is "intended to bring all admiralty claims against the United States within the ambit of the [Suits in Admiralty Act], whether or not involving government cargoes or vessels."[10]  Plaintiffs' claims against the United States for the Dredging Defendants' operations are cognizable in admiralty, and thus fit comfortably within the SAA.

### A.    Maritime Torts.

Plaintiffs' tort claims are admiralty claims. To come within the jurisdiction of admiralty, a tort claim must arise from an incident with a maritime location and a maritime nexus. As set

---

[6]     Compl. ¶ 4. Plaintiffs also plead jurisdiction based on "the Public Vessels Act, 46 U.S.C. §§ 781-90, because this matter involves damage caused by one or more public vessels of the United States of America (including the Dredge Wheeler) which have conducted maritime dredging operations for the construction and maintenance of the MRGO during the past sixty years." *Id.* (The Dredge Wheeler is a large hopper dredge, operated by the New Orleans District of the Corps of Engineers to dredge the MRGO. *Id.* ¶ 15.)

[7]     *See* 46 U.S.C. app. § 781.

[8]     46 U.S.C. app. § 742; *see also* 46 U.S.C. app. § 741.

[9]     *Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 444 (5th Cir. 1982).

[10]     *Id.* at 445 (citing cases); *Weatherford v. United States*, 957 F. Supp. 830, 833 & n.23 (M.D. La. 1997) (same).

4

forth in *Grubart v. Great Lakes Dredge & Dock Co.*,[11] this requires a showing that (1) "the tort occurred on navigable water" or, under the Admiralty Extension Act, 46 U.S.C. app. § 740, the case involves an injury suffered on land "caused by a vessel on navigable water"; (2) "the incident has a potentially disruptive impact on maritime commerce"; and (3) "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."[12]    All three of these elements are met here.

### 1.    <u>Location.</u>

First, this case involves injuries allegedly caused by vessels on navigable water,[13] which satisfies the location test under the Admiralty Extension Act.    The MRGO is a navigable waterway.[14]    Dredges are "vessels."[15]    And if the Government truly caused the New Orleans flooding, it did so by dredging the MRGO.[16]

### 2.    <u>Disruptive impact.</u>

Second, the type of incident at issue here has a potentially disruptive impact on maritime commerce.    To evaluate disruptive potential, a court must "assess the general features of the type

---

[11]    513 U.S. 527 (1995).

[12]    *Id.* at 534  (internal quotation marks omitted).

[13]    *See* Compl. ¶¶ 18-22.

[14]    *Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1031 (5th Cir. 1985) (en banc).

[15]    1 U.S.C. § 3; *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 490-92 (2005) (explaining that dredges long have been considered "vessels" under the general maritime law).

[16]    *Cf. Grubart*, 513 U.S. at 534 ("If Great Lakes caused the flood, it must have done so by weakening the structure of the tunnel while it drove in new pilings or removed old ones around the bridge piers."). This conclusion applies equally to Plaintiffs' "concealment" claim; failure-to-disclose is merely a theory of liability, not the instrumentality of harm. *Cf. Eubanks v. Bayou D'Arbonne Lake Watershed Dist.*, 742 So.2d 113, 117 (La. App. Ct. 1999) ("Although the plaintiffs base their claim for damages on the failure to warn theory, the damages allegedly sustained by the plaintiffs resulted from flooding.") (evaluating statute of limitations defense); *In re Complaint of Ingram Barge Co.*, No. 05-4419, 2006 WL 1539787, *2-3 (E.D. La. May 25, 2006) (where claimants complained of failure to order a barge sunk, analyzing jurisdiction based on the barge's collision with a levee).

5

of incident involved."[17]    In *Sisson*, the Court explained that proper characterization for purposes of this jurisdictional inquiry requires the court to focus on the potential effects of the incident.[18] In this case, flooding to coastal areas allegedly resulting from damage caused by vessels in navigable waters to man-made and natural flood protection systems has the potential to—and actually did—disrupt maritime commerce severely.[19]

### 3.    Traditional maritime activity.

Third, dredging in the MRGO, a navigable channel used for maritime commerce, is substantially related to traditional maritime activity.  This part of the nexus test requires the court to focus on the "general character of the activity giving rise to the incident," and "ask whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in  the suit at hand."[20]  "[A]s long as one of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will 'involve' such traditional maritime activity."[21]

There is no question that this requirement is met in this case.  "Certainly, the operation of a dredge has a significant relationship to traditional maritime activity.  It is only in maritime

---

[17]    *Grubart*, 513 U.S. at 534 (quoting *Sisson v. Ruby*, 497 U.S. 358, 363 (1990)).

[18]    497 U.S. at 363-65 (fire related to a defective washer/dryer on a houseboat moored at a marina characterized as "a fire on a vessel docked at a marina on navigable waters"); *Grubart*, 513 U.S. at 535 (flooding of tunnels caused by pile-driving in Chicago River characterized as "damage by a vessel in navigable water to an underwater structure").

[19]    *Ingram Barge.*, 2006 WL 1539787, at *4 ("When a vessel causes navigable waters to spill onto the land and damage land-based structures and individuals, the maritime nexus is obvious, and explicitly contemplated by statutes like the [Admiralty Extension Act].").

[20]    *Grubart*, 513 U.S. at 539-40.

[21]    *Id.* at 541.

6

activity that a dredge is used."[22]   In fact, the activities of the Government and the Dredging Defendants in this case should be characterized the same way as in *Grubart*: "repair or maintenance work on a navigable waterway performed from a vessel."[23]   "Described in this way, there is no question that the activity is substantially related to traditional maritime activity, for barges and similar vessels have traditionally been engaged in repair work similar to what Great Lakes contracted to perform here."[24]

The SAA applies where a proceeding in admiralty could be maintained "if a private person or property were involved."[25]   Here, a negligence action would lie against the United States under traditional admiralty principles.[26]

In determining the scope of liability for parties to maritime contracts under traditional admiralty principles, Courts have considered the parties responsibilities within their respective spheres of control.   For example, in *Hodgen v. Forest Oil Corp.*,[27] the Fifth Circuit examined the jurisprudence to consider whether a time charterer could be held responsible for injuries arising

---

[22]      *Ramos v. Universal Dredging Corp.*, 653 F.2d 1353, 1358 (9th Cir. 1981); *see also In re The V-14813*, 65 F.2d 789, 790 (5th Cir. 1933) ("There are many cases holding that a dredge, or a barge with a pile driver, employed on navigable waters, is subject to maritime jurisdiction.").

[23]      513 U.S. at 540; *see Lakes of Gum Cove Hunting & Fishing, L.L.C. v. Weeks Marine, Inc.*, 182 F. Supp. 2d 537, 544-45 (W.D. La. 2001) (holding that the *Grubart* characterization was proper in suit against dredging company for damage caused to land by dumping of spoil dredged from a river bottom).

[24]      *Grubart*, 513 U.S. at 540.

[25]      46 U.S.C. app. § 742.

[26]      *Alexander v. United States*, 63 F.3d 820, 823 (9th Cir. 1995).

[27]      87 F.3d 1512 (5th Cir. 1996).

NO NMS 122684 v1
2902907-000001

out of its decisions as to where and when a chartered vessel would conduct operations.[28]  The

Fifth Circuit determined, *inter alia*, that:

> a time charterer owes a *Graham*[29]  duty, a hybrid duty arising from contract and
> tort, to persons with whom it has no contractual relationship, including vessel
> passengers, to avoid negligent actions within the sphere of activity over which it
> exercises at least partial control. *Graham, Kerr-McGee,*[30] *P & E,*[31] and *Randall*
> [32]  establish that the traditional spheres of activity in which a time charterer
> exercises control and thus owes a duty include choosing the vessel's cargo, route,
> and ***general mission***, as well as the specific time in which the vessel will perform
> its assignment.[33]

According to Plaintiffs' own allegations, the United States asserted its operational control

within its recognized sphere of activity when it defined the terms of the contracts with the

Dredging Defendants and directed their operations.  Therefore, a claim in admiralty could lie

against the United states under traditional admiralty principles if it was a private person, such

that jurisdiction over the claims against the Dredging Defendants is founded under the Suits in

Admiralty Act.

## B.    Maritime Contracts.

Plaintiffs' breach of warranty claim is also within the admiralty jurisdiction.  It is based

on contracts between the COE and the Dredging Defendants for dredging in the MRGO, a

navigable channel utilized for maritime commerce.  These are maritime contracts.[34]

---

[28]     *Id.* at 1520.

[29]     *Graham v. Milky Way Barge, Inc.,* 824 F.2d 376 (5th  Cir.1987).

[30]     *Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc.,* 830 F.2d 1332 (5th Cir.1987).

[31]     *In re P & E Boat Rentals, Inc.,* 872 F.2d 642 (5th Cir.1989).

[32]     *Randall v. Chevron, U.S.A., Inc.,* 13 F.3d 888 (5th Cir.1994.

[33]     *Hodgen,* 87 F.3d at 1520 (emphasis added).

[34]     *See Michigan Wisconsin Pipeline Co. v. Williams-McWilliams Co.,* 551 F.2d 945 (5th Cir. 1977) (resolving
in admiralty a third-party suit for damages based on private company's alleged negligence in dredging under a

8

Plaintiffs' claims meet all of the requirements for admiralty jurisdiction. As such, Plaintiffs have a remedy under the SAA, which means that Section 745 precludes any suit based on "the same subject matter" against Government "agents," like the Dredging Defendants.

## II.     The Dredging Defendants Are "Agents" of the Government Under Section 745.

Plaintiffs' claims against the Dredging Defendants are barred because the Dredging Defendants' MRGO operations were undertaken as "agents" of the COE within the meaning of 46 U.S.C. app. § 745. Again, that section provides, "where a remedy is provided by [the SAA] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States . . . whose act or omission gave rise to the claim."

"Agent" is broadly defined. A vessel operator who "exercised operational control" but whose actions are subject "to the government's overall control and direction" is an "agent" of the Government entitled to dismissal under the SAA.[35] The "significant control" required by Section 745 can be "either day-to-day control *or overall control and direction of the mission*."[36] In fact, an "agent" under Section 745 can include entities that might be classified as "independent contractors" in other contexts.[37]

---

contract with the COE); *see also Norfolk Southern Ry. v. Kirby*, 543 U.S. 14, 25 (2004) (the maritime contract inquiry is a "conceptual" one that focuses on "whether the principal objective of a contract is maritime commerce"); *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961) ("Without doubt a contract for hire either of a ship or of the sailors and officers to man her is within the admiralty jurisdiction.").

[35]      *Favorite v. Marine Personnel & Provisioning, Inc.*, 955 F.2d 382, 388 (5th Cir. 1992).

[36]      *Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995, 997-998 (9th Cir. 1997) (emphasis added); *see also Petition of United States*, 367 F.2d 505, 509 (3d Cir. 1966) (the operator "owed the United States obedience and loyalty and was in significant ways subject to the government's direction and control").

[37]      *See Dearborn*, 113 F.3d at 997 n.3 ("Agent may apply more broadly in this context than it does elsewhere and may include in some cases entities properly defined as 'independent contractors.'"); *Petition of United States*, 367 F.2d at 509 (even if the operator of Government vessel was an "independent contractor" because its day-to-day working of the ship arguably was not subject to government control, "an independent contractor, no less than a servant may be an agent in that he is employed as a fiduciary, acting for a principal with the principal's consent and subject to the principal's overall control and direction in accomplishing some matter undertaken on the principal's behalf"); *Smith v. United States*, 346 U.S. 449, 453 (4th Cir.1965) ("An independent contractor too may be an agent;

9

Here, Plaintiffs' claims do not involve any unseaworthiness or other mishap involving activities onboard a particular vessel;[38] they involve the Dredging Defendants' execution of Government contracts, dredging the MRGO at times and places specified by the COE, as it acted within its sphere of activity. The Dredging Defendants undertook these missions on behalf of, and as directed by, the COE. They are, therefore, immune from suit under Section 745. Plaintiffs do not complain of any other activities except those within the scope of the Dredging Defendants' Section 745 agency,[39] which means that Plaintiffs' exclusive remedy is against the Government. Plaintiffs cannot validly argue otherwise. "The plain language of the statute and its interpretation by the courts leave no room for such an argument: where there is a remedy against the United States pursuant to the PVA, an injured party simply may not bring an action against agents of the United States."[40] Plaintiffs' claims against the Dredging Defendants must be dismissed under Section 745.

## CONCLUSION

For the foregoing reasons, the Dredging Defendants respectfully request that the Court dismiss all claims against the Dredging Defendants as barred by 46 U.S.C. app. § 745, and award the Dredging Defendants any further relief that the Court deems just and proper.

---

the terms are not mutually exclusive. . . . [T]he question here is not whether the . . . crew were employees of [the operator], nor whether [the operator] is to be characterized as a bare-boat or time charterer, an owner pro hac vice, or an independent contractor. Indeed, the contract may have established a relation sui generis, not fitting into any of these terminologies, but that, again, is not the issue. The question now determinative is whether [the operator] was an 'agent.'").

[38]     *Cf. Williams v. Central Gulf Lines*, 874 F.2d 1058, 1061-63 (5th Cir. 1989) (vessel operator liable for negligent care for sick seaman in course of voyage); *Alexander v. United States*, 63 F.3d 820, 822-23 (9th Cir. 1995) (vessel operator liable for personal injury claim arising from the handle of a winch flying off during the repair of a lifeboat).

[39]     *See generally* Compl. ¶¶ 13-17.

[40]     *Farnsworth v. Sea-Land Serv., Inc.*, No. 87-5954, 1989 WL 20544 (E.D. La. Mar. 7, 1989), *aff'd* 896 F.2d 552 (5th Cir. 1990) (table) (citing, inter alia, *Doyle v. Bethlehem Steel Corp.*, 504 F.2d 911, 912 (5th Cir.1974) (the

NO NMS 122684 v1
2902907-000001

Respectfully submitted,

James H. Roussel (Bar Roll No. 11496)
Nyka M. Scott (Bar Roll No. 28757)
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
201 St. Charles Ave., Ste. 3600
New Orleans, LA 70170
Telephone: (504) 566-5278
Facsimile: (504) 636-3978
jroussel@bakerdonelson.com
nscott@bakerdonelson.com

Attorneys for Great Lakes Dredge &
Dock Company

/s/William E. Wright, Jr.
William E. Wright, Jr. (Bar Roll No.8564)
Terrence L. Brennan (Bar Roll No. 3434)
Kelly E. Theard (Bar Roll No. 29445)
of
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-5141
Facsimile:  (504) 566-1201
wwright@dkslaw.com
tbrennan@dkslaw.com
kthread@dkslaw.com

Attorneys for Bean

/s/ Samuel B. Gabb
Samuel B. Gabb (Bar Roll No. 22378)
Thomas P. LeBlanc (Bar Roll No. 22832)
Lundy & Davis
501 Broad St.
P. O. Box 3010
Lake, Charles, LA  70602-3010
Telephone: (337) 439-0707
Facsimile: (337) 439-1029
sgabb@lundydavis.com

Attorneys for Mike Hooks, Inc.

---

SAA remedy for an aggrieved party "is exclusive of any action against the agent or employee of the United States whose act or omission gave rise to the claims")).

11

/s/ James A. Cobb, Jr.
James A. Cobb, Jr. (Bar Roll No. 4213)
Emmett, Cobb, Waits & Henning
1515 Poydras St., Suite 1950
New Orleans, LA 70112
Telephone:(504) 581-1301
Facsimile: (5040 581-6020
jac@ecwko.com

Attorneys for Weeks Marine, Inc.

/s/ Richard A. Cozad
Richard A. Cozad (Bar Roll No. 4537)
Michael L. McAlpine (Bar Roll. No. 9195)
Emma A. Mekinda (Bar Roll No. 28151)
McAlpine & Cozad
365 Canal Street, Suite 3180
New Orleans, LA 70130
Telephone:(504) 561-0323
Facsimile: (504) 528-9442
emmamekinda@yahoo.com

Attorneys for King Fisher Marine Service,
L.P.

/s/ William Larzelere
William J. Larzelere, Jr. (Bar Roll No. 8057)
T. Justin Simpson (Bar Roll No. 18437)
Angie L. Arceneaux (Bar Roll No. 26786)
Larzelere, Picou, Wells, Simpson  & Lonero
3850 N. Causeway Blvd. - Ste. 1100
Two Lakeway Center
Metairie, LA  70002
Telephone:(504) 834-6500
Facsimile: (504) 834-6565
jsimpson@lpw-law.com

Attorneys for Luhr Bros., Inc.

/s/ A. Gordon Grant, Jr.
A. Gordon Grant, Jr. (Bar Roll No. 6221)
Philip S. Brooks, Jr. (Bar Roll No. 21501)
Montgomery, Barnett, Brown, Read,
 Hammond & Mintz, L.L.P.
Energy Centre - 1100 Poydras St.
Suite 3200
New Orleans, LA  70163-3200
Telephone: (504) 585-7681
Facsimile: (504) 200-8981
ggrant@monbar.com

Attorneys Gulf Coast Trailing Company;
T.L. James & Company, Inc.; TLJIC,
L.L.C., on its on behalf and as successor by
merger to T.L. James Marine, Inc., and T.L.
James Marine, L.L.C.

/s/ Andre J. Mouledoux
Andre J. Mouledoux (Bar Roll No. 9778)
C. William Emory (La Bar #20179)
Daniel J. Hoerner (La Bar #21706)
Jacques P. DeGruy (La Bar #29144)
Mouledoux, Bland, Legrand & Brackett
701 Poydras St. - Suite 4250
New Orleans, LA  70139
Telephone: (504) 595-3000
Facsimile: (504) 522-2121
amouledoux@mblb.com

Attorneys for Pine Bluff Sand & Gravel Co.

NO NMS 122684 v1
2902907-000001

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of September, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    1)    jfnevares-law@microjuris.com

    2)    dbecnel@becnellaw.com

    3)    csalas@salaslaw.com

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

    1)    A.J. Rebaneck

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § § § § § § § § § | CIVIL ACTION No. 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO:  MRGO, *Reed*, No. 06-2152 MRGO, *Ackerson*, No. 06-4066 | | |

### MEMORANDUM OF LAW IN SUPPORT OF DREDGING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONCEALMENT AND IMPLIED WARRANTY CLAIMS PURSUANT TO FED. R. CIV. P. 12(c) AND 9(b)

Defendants Bean Dredging, L.L.C.; C.F. Bean L.L.C.; Bean Stuyvesant, L.L.C.; Stuyvesant Dredging Company; Stuyvesant Dredging, Inc.; Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corporation; C.F. Bean Corporation; Bean Horizon Corporation; Bean Horizon L.L.C.; Gulf Coast Trailing Company; T.L. James & Company, Inc.; TLJIC, L.L.C., on its on behalf and as successor by merger to T.L. James Marine, Inc., and T.L. James Marine, L.L.C.; Great Lakes Dredge & Dock Company; Great Lakes Dredge & Dock Company, L.L.C. of Louisiana; Great Lakes Dredge & Dock Corporation of Delaware; Natco Dredging Limited Partnership; Great Lakes Trailing Company; Weeks Marine, Inc.; Mike Hooks, Inc.; Luhr Bros. Inc.; Pine Bluff Sand and Gravel Company; and

2902907-000001

1



King Fisher Marine Service, L.P. (collectively the "Dredging Defendants") submit this memorandum of law in support of their Motion to Dismiss Plaintiffs' Concealment and Implied Warranty Claims Pursuant to Fed. R. Civ. P. 12(c) and 9(b).

The "concealment" and breach of implied warranty claims brought by Plaintiffs in the *Reed* (No. 06-2152) and *Ackerson* (No. 06-4066) actions[1] fail to state a claim upon which relief may be granted. In addition, Plaintiffs have failed to plead their concealment claim with the particularity required by Fed. R. Civ. P. 9(b). Both claims, in both actions, should be dismissed. Plaintiffs' Complaints demonstrate that their claims cannot be salvaged; dismissal, therefore, should be with prejudice.

## ARGUMENT

### I.     Plaintiffs' Concealment Claim Should Be Dismissed.

Plaintiffs' concealment claim is deficient as a matter of law. Plaintiffs' own allegations demonstrate that nothing was concealed—the MRGO's potential to increase the risk of flooding and environmental damage was known even before excavation commenced in 1958 and, Plaintiffs allege, much discussed in the years since.[2] In addition, Plaintiffs have not pleaded the circumstances of Defendants' "concealment" with the particularity required by Fed. R. Civ. P. 9(b) for claims sounding in fraud. They have failed to allege, as they must under Rule 9(h), the who, what, when, and where of the alleged concealment. This claim should be dismissed.

---

[1]     The *Reed* and *Ackerson* Complaints are identical in all respects relevant to this motion, including the numbering of almost all cited paragraphs. As such, whenever possible, this Memorandum includes a single citation ("Compl. ___") to refer to the relevant paragraphs in both Complaints.

[2]     *See* Compl. ¶¶ 7, 9 (noting pre-excavation concerns with the MRGO's environmental effects, a "growing perception that the project had dramatically increased the region's vulnerability to hurricanes and tropical storms," and that by the 1990s the MRGO was "widely characterized as an environmental disaster"), ¶ 19 (discussing Hurricanes Betsy and George), ¶ 22 (noting the pre-Katrina assessment of a "storm surge expert" that the MRGO was a "critical and fundamental flaw" in New Orleans flood protection).

2902907-000001

Under the Restatement, concealing or failing to disclose material information is tortious only if the defendant is under a duty to the plaintiff to exercise reasonable care to disclose the matter in question.[3]  Louisiana law is the same.[4]  The rule prohibiting fraudulent concealment is applied in two situations: "The first occurs when the defendant actively conceals a defect or other disadvantage in something that he is offering for sale to another."[5]  "The second situation occurs when the defendant successfully prevents the plaintiff from making an investigation that he would otherwise have made, and which, if made, would have disclosed the facts; or when the defendant frustrates an investigation."[6]  Neither situation applies to this case.  The Dredging Defendants did not offer to sell anything to Plaintiffs or the class, and there is no indication—much less allegations sufficient to satisfy Rule 9(b)—that Plaintiffs are complaining of any *affirmative* misconduct taken by Dredging Defendants to frustrate any investigation undertaken by Plaintiffs or the class.  Plaintiffs' attempts to state a claim are not remotely viable.

Rule 9(b) requires Plaintiffs to plead with particularity the circumstances of each Defendant's alleged concealment.[7]  "In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made

---

[3]    *See* Restatement (Second) of Torts §§ 550, 551.

[4]    *See Greene v. Gulf Coast Bank*, 593 So.2d 630 (La. 1992) ("there must exist a duty to speak or disclose information," which does not arise absent special circumstances such as a fiduciary or confidential relationship between the parties); *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, No. 04-0997, 2005 WL 1309153, *7 (E.D. La. May 19, 2005) (where the parties do not have a fiduciary relationship, failure to disclose is actionable only if misinformation is directly communicated by the tortfeasor to the plaintiff).

[5]    Restatement (Second) of Torts § 551, cmt. a.

[6]    *Id.*, cmt. b.

[7]    *Safford v. St. Tammany Parish Fire Protection Dist. No. 1*, No. 02-0055, 2004 WL 32921, *6 (E.D. La. Jan. 5, 2004) (allegation "in the nature of an allegation of fraudulent concealment" "must be specifically pleaded").

2902907-000001

the representations misleading."[8]   In addition, Plaintiffs' allegations must support an inference of

fraudulent intent, which means that the facts alleged must show either a motive to commit fraud,

or identify circumstances indicating that Defendants behaved consciously.[9]   Plaintiffs'

Complaints fail to provide any of this detail.

> ### A.   Plaintiffs' Complaints establish that nothing was concealed.

Plaintiffs have pleaded themselves out of court.   Regardless of whether any lack of

information about environmental damage and MRGO-related flooding risks could be the legal

cause of the harm suffered from Hurricane Katrina, Plaintiffs allege that the information

purportedly concealed by Defendants has, in fact, long been known:

> Before excavation of the MRGO, state and federal resource agencies expressed
> concern about the project's apparent lack of ecological consideration.   Hydrologic
> models predicted drastic salinity increases and an associated loss of interior marsh
> habitat.   Local concerns mounted as the project's 'ecological footprint' expanded
> and economic benefits failed to emerge.   Concerns expanded with a growing
> perception that the project had dramatically increased the region's vulnerability to
> hurricanes and tropical storms.   By the 1990's, the project was widely
> characterized as an environmental disaster, although adverse environmental
> impacts from the MRGO were evident as early as the late 1960's.   In March 2000,
> the Environmental Subcommittee of the MRGO Policy Committee prepared a
> restoration/mitigation plan to address environmental impacts related to the
> construction, operation and maintenance of the MRGO.[10]

Plaintiffs cannot maintain a claim for concealment after conceding that the environmental

and storm-related risks were well-known before MRGO's excavation, that adverse impacts

---

[8]   *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004) (quoting 2 Moore's Federal Practice § 9.03[1]{b], at 9-18 through 9-19 (3d ed. 2003)); *see also Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("In this court, the Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent.").

[9]   *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).

[10]   Compl. ¶ 9; *see also id.* ¶ 19 (discussing Hurricanes Betsy and George), ¶ 22 (alleging that a "storm surge expert" called MRGO a "critical and fundamental flaw" in New Orleans flood protection three months before Katrina).

2902907-000001

became "evident" almost immediately, that "[l]ocal concerns mounted" over the decades, and that by the 1990s the MRGO was "widely characterized as an environmental disaster."[11] Causation is a requirement for tort liability,[12] but Plaintiffs' admissions preclude any argument that Defendants' "concealment" caused the damages that they and the class suffered.[13] Because the Plaintiffs' Complaints establish that the Dredging Defendants cannot be held liable for concealment, this claim should be dismissed with prejudice.

### B.    Plaintiffs have failed to identify the particulars of their concealment claim.

Even if it were possible for Plaintiffs to proceed despite these admissions (and it is not), the sketchy allegations in their Complaints are not sufficient to state a claim because the circumstances of the alleged concealment are not stated with the particularity required by Rule 9(b). "Directly put, the who, what, when, and where must be laid out *before* access to the discovery process is granted."[14]   Plaintiffs, however, plead conclusions and conclusions only. They summarily allege that "Defendants were under a duty to disclose to Plaintiff and the Class members the effects and potential effects of their maritime activities in and around the MRGO"[15] and that Defendants breached this duty by knowingly failing to disclose that their activities

---

[11]     *Id.* ¶ 9.

[12]     *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837-39 (1996).

[13]     *See Morales v. Dept. of the Army*, 947 F.2d 766, 769 (5th Cir. 1991) ("Factual assertions in pleadings are judicial admissions conclusively binding on the party that made them. [The defendant] may not now argue contrary to the factual allegations of his complaint.") (internal citations and quotation marks omitted); *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995) ("Allegations in a complaint are binding admissions, . . . and admissions can of course admit the admitter to the exit from the federal courthouse.") (citing *Morales*); *see also Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) ("Litigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail.").

[14]     *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

[15]     *Reed* Compl. ¶ 41; *Ackerson* Compl. ¶ 35.

2902907-000001

"caused damage to the protective wetlands and increased the risk of flooding to Orleans and St. Bernard Parishes."[16]

As a threshold matter, Plaintiffs provide no basis for the conclusory assertion that Defendants owed class members a duty to disclose. This shortcoming alone is grounds for dismissal.[17] Even where Rule 9(b) does *not* apply, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[18] And particularly here, where a heightened pleading standard is in force, Plaintiffs' failure to allege the basis for the Dredging Defendants' duty to disclose requires dismissal.

Moreover, even if Plaintiffs had alleged a duty, they failed to plead adequately the circumstances of its alleged breach. With no allegation regarding what, specifically, any Dredging Defendant should have disclosed, when, or in what form, nor any basis for inferring that any omission by any given Dredging Defendant was made knowingly, Plaintiffs fall far short of satisfying Rule 9(b).[19]

---

[16]     *Reed* Compl. ¶ 40; *Ackerson* Compl. ¶ 34.

[17]     *See, e.g., Wilson v. Mobil Oil Corp.*, 940 F. Supp. 944, 955 (E.D. La. 1996) (dismissing failure-to-disclose claim because plaintiffs failed to allege "any facts that would give rise to a fiduciary or other confidential relationship between [defendant] and themselves"); *Dorsey v. Northern Life Ins. Co.*, No. 04-0342, 2005 WL 2036738, *18 (E.D. La. Aug. 15, 2005) ("If a misrepresentation claim is based on a failure to disclose, even fraudulent intent is insufficient to confer liability in the absence of a duty to disclose.") (internal quotation marks and ellipses omitted); *TXI Operations, LP v. Pittsburg & Midway Coal Mining Co.*, No. 04-1146, 2004 WL 2088911, *1 (N.D. Tex. Sept. 8, 2004) (fraudulent concealment requires pleading with particularity that defendant owed plaintiff a duty to disclose).

[18]     *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

[19]     *See, e.g., Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061, 1068-69 (5th Cir. 1994) (dismissing claim for failure to plead *specific facts* that support an inference of fraudulent intent); *Wilson*, 940 F. Supp. at 955 (dismissing claim where "allegations of time, place, and contents of the statements, as well as of the identity of the person making the representations or omissions" were deficient); *Dorsey*, 2005 WL 2036738, at *18-20 (dismissing claim that failed to provide "any factual specificity" regarding the alleged representations and omissions).

2902907-000001

6

In fact, the Complaints muddy the waters by grouping all 33 Dredging Defendants together, an improper method of pleading claims to which Rule 9(b) applies:   "[G]eneral allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another cannot meet the requirements of Rule 9(b)."[20]   And Plaintiffs exacerbate this lumping problem by failing to specify any "when" beyond the Complaints' initial reference to "Defendants' maritime activities in the [MRGO] from 1958 through August 29, 2005."[21]   Plaintiffs have brought suit against 32 private corporations and the United States. Allegations that "Defendants" knew, did, or failed to do anything during a 47-year period are not sufficient to satisfy Rule 9(b).  Plaintiffs' concealment claim should be dismissed.

## III.    Plaintiffs' Implied Warranty Claim Should Be Dismissed.

Plaintiffs cannot bring suit for breach of implied warranty because they are not intended beneficiaries of the dredging contracts between the Dredging Defendants and the COE supposedly breached.   Plaintiffs assert that, as part of the MRGO dredging contracts, the Dredging Defendants impliedly warranted not to damage the wetlands or flood the parishes.[22]

---

[20]     *In re Urcarco Sec. Litig.*, 148 F.R.D. 561, 569 (N.D. Tex. 1993), *aff'd sub nom. Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994); *see also In re MasterCard Int'l Inc. Internet Gambling Litig.*, 132 F. Supp. 2d 468, 482 (E.D. La. 2001) (Duval, J.) (Rule 9(b) is not satisfied where the "allegations lump together the defendants and do not specifically allege what action was taken by each entity"); *Southland Sec. Corp. v. Inspire Ins. Solutions Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (under Rule 9(b) and the PSLRA, "we do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded"); *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) (Rule 9(b) is not satisfied by "general allegations, which do not state with particularity what representations each defendant made"); *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (where Rule 9(b) applies, multiple defendants may not be "lumped together"); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

[21]     Compl. ¶ 1; *see Tigue Investment Co., v. Chase Bank of Texas, N.A.*, No. 03-2490, 2004 WL 3170789, *1 (N.D. Tex. Nov. 15, 2004) (dismissing complaint where plaintiff "not only 'lumps together' the individuals accused of making fraudulent statements, it also lumps together several months of time and multiple locations").

[22]     *Reed Compl.* ¶ 36; *Ackerson Compl.* ¶ 31.

2902907-000001

Even if the Dredging Defendants had made such a warranty - which they did not - Plaintiffs'

claim must be dismissed because Plaintiffs do not have standing to bring a suit for breach of

contract. "Under well settled contract principles, a promise must be made directly for the benefit

of a third party to support a claim by that third party under the contract."[23]  "An incidental

beneficiary acquires by virtue of the promise no right against the promisor or the promisee."[24]

·        Although their performance might benefit Plaintiffs *incidentally*, Plaintiffs do not purport

to be *intended* beneficiaries of the MRGO dredging contracts.  Without such an allegation, their

breach of contract claim must fail.  "Dismissal is proper if the complaint lacks an allegation

regarding a required element necessary to obtain relief. *The court is not required to conjure up*

*unpled allegations* or construe [*sic*: contrive] elaborately arcane scripts to save a complaint."[25]  In

fact, it would be incredible if Plaintiffs did claim to be intended beneficiaries; whatever promises

Dredging Defendants made, they were not for Plaintiffs' "primary benefit," and as "stranger[s] to

the relationship" between Dredging Defendants and the COE, Plaintiffs cannot maintain a suit in

contract.[26]

        Plaintiffs' warranty claim is particularly far-fetched because this case involves

government contracts: "when members of the public bring suit against promisors who contract

---

[23]     *Atlantic & Gulf Stevedores, Inc. v. Revelle Shipping Agency, Inc.*, 750 F.2d 457, 459 n.3 (5th Cir. 1985)
(citing Restatement (Second) of Contracts §§ 302, 304, 315).

[24]     Restatement (Second) of Contracts § 315.

[25]     *Rios v. Del. Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (emphasis added) (internal citation and quotation marks
omitted) (the Fifth Circuit, in quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988), used the term
"construe" when in reality, the *Gooley* court used the term "contrive."); *Sys. Contractors Corp. v. Orleans Parish
Sch. Bd.*, No. 94-2276, 1996 WL 547414, *1 (E.D. La. Sept. 24, 1996) (same) (citing *Gooley*).

[26]     *Atlantic & Gulf Stevedores*, 750 F.2d at 459 (agent's breach of duty to disburse funds as ship-owner
directed did not give short-changed stevedore a right of action against the agent); *see also Fitzgerald v. Compania
Naviera La Molinera*, 394 F. Supp. 402, 410 (E.D. La. 1975) (where officers employed by a board of trade allegedly
violated implied duties of workmanlike performance, rejecting vessel owner's claim to indemnity and noting, "[n]or
can it be postulated that [plaintiff] is some sort of third party beneficiary of the officers' duties to their employer").

with the government to render a public service . . . members of the public are considered to be incidental beneficiaries *unless they can show a direct right to compensation.*"[27]  Plaintiffs have not claimed any right to compensation under the MRGO dredging contracts, and nothing in the Complaints challenges the presumption that, when a government contract is involved, members of the general public like Plaintiffs are merely incidental beneficiaries.  Even if Dredging Defendants dredged the MRGO specifically as a flood control project out of concern for the residents of the Orleans and St. Bernard Parishes, Plaintiffs and the class *still* would not have standing to bring suit on the contract.[28]  In short, Plaintiffs cannot bring suit for breach of an alleged promise in contracts that were not made for their benefit.  Their implied warranty claim should be dismissed.

**CONCLUSION**

For the foregoing reasons, the Dredging Defendants respectfully request that the Court dismiss Plaintiffs' concealment and implied warranty claims and award the Dredging Defendants any further relief that the Court deems just and proper.

---

[27]     *Montana v. United States*, 124 F.3d 1269, 1273 n.6 (Fed. Cir. 1997) (emphasis added); *see also Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003) ("Parties that benefit [from a government contract] are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary.  The contract must establish not only an intent to confer a benefit, but also an intention to grant the third party enforceable rights.") (internal citations and quotation and alteration marks omitted).

[28]     *Smith v. Central Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1038 (9th Cir. 2005) ("That a government contract was written with a particular group in mind is not sufficient to demonstrate the contracting parties' intent to benefit that group").

2902907-000001

Respectfully submitted,

James H. Roussel (Bar Roll No. 11496)
Nyka M. Scott (Bar Roll No. 28757)
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
201 St. Charles Ave., Ste. 3600
New Orleans, LA 70170
Telephone: (504) 566-5278
Facsimile: (504) 636-3978
jroussel@bakerdonelson.com
nscott@bakerdonelson.com

Attorneys for Great Lakes Dredge &
Dock Company

/s/William E. Wright, Jr.
William E. Wright, Jr. (Bar Roll No.8564)
Terrence L. Brennan (Bar Roll No. 3434)
Kelly E. Theard (Bar Roll No. 29445)
of
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
wwright@dkslaw.com
tbrennan@dkslaw.com
kthread@dkslaw.com

Attorneys for Bean

/s/ Samuel B. Gabb
Samuel B. Gabb (Bar Roll No. 22378)
Thomas P. LeBlanc (Bar Roll No. 22832)
Lundy & Davis
501 Broad St.
P. O. Box 3010
Lake, Charles, LA 70602-3010
Telephone: (337) 439-0707
Facsimile: (337) 439-1029
sgabb@lundydavis.com

Attorneys for Mike Hooks, Inc.

2902907-000001

10

/s/ James A. Cobb, Jr.
James A. Cobb, Jr. (Bar Roll No. 4213)
Emmett, Cobb, Waits & Henning
1515 Poydras St., Suite 1950
New Orleans, LA  70112
Telephone:(504) 581-1301
Facsimile: (5040 581-6020
jac@ecwko.com

Attorneys for Weeks Marine, Inc.


/s/ Richard A. Cozad
Richard A. Cozad (Bar Roll No. 4537)
Michael L. McAlpine (Bar Roll. No. 9195)
Emma A. Mekinda (Bar Roll No. 28151)
McAlpine & Cozad
365 Canal Street, Suite 3180
New Orleans, LA 70130
Telephone:(504) 561-0323
Facsimile: (504) 528-9442
emmamekinda@yahoo.com

Attorneys for King Fisher Marine Service,
L.P.


/s/ A. Gordon Grant, Jr.
A. Gordon Grant, Jr. (Bar Roll No. 6221)
Philip S. Brooks, Jr. (Bar Roll No. 21501)
Montgomery, Barnett, Brown, Read,
 Hammond & Mintz, L.L.P.
Energy Centre - 1100 Poydras St.
Suite 3200
New Orleans, LA  70163-3200
Telephone: (504) 585-7681
Facsimile: (504) 200-8981
ggrant@monbar.com

Attorneys for Gulf Coast Trailing Company;
T.L. James & Company, Inc.; TLJIC,
L.L.C., on its on behalf and as successor by
merger to T.L. James Marine, Inc., and T.L.
James Marine, L.L.C.;


/s/ Andre J. Mouledoux
Andre J. Mouledoux (Bar Roll No.9778)
C. William Emory (La Bar #20179)
Daniel J. Hoerner (La Bar #21706)
Jacques P. DeGruy (La Bar #29144
Mouledoux, Bland, Legrand & Brackett
701 Poydras St. - Suite 4250
New Orleans, LA  70139
Telephone: (504) 595-3000
Facsimile: (504) 522-2121
amouledoux@mblb.com

Attorneys for Pine Bluff Sand & Gravel Co.


2902907-000001

11

/s/ William Larzelere
William J. Larzelere, Jr. (Bar Roll No. 8057)
T. Justin Simpson (Bar Roll No. 18437)
Angie L. Arceneaux (Bar Roll No. 26786)
Larzelere, Picou, Wells, Simpson  & Lonero
3850 N. Causeway Blvd. - Ste. 1100
Two Lakeway Center
Metairie, LA  70002
Telephone:(504) 834-6500
Facsimile: (504) 834-6565
blarzelere@lpw-law.com
jsimpson@lpw-law.com
aakers@lpw-law.com

Attorneys for Luhr Bros., Inc.

2902907-000001

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of September, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

1)    jfnevares-law@microjuris.com

2)    dbecnel@becnellaw.com

3)    csalas@salaslaw.com

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

1)    A.J. Rebaneck

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | § CIVIL ACTION<br>§ No. 05-4182 "K"(2)<br>§<br>§ JUDGE DUVAL<br>§ MAG. WILKINSON<br>§ |
| | § |
| PERTAINS TO: MRGO, *Reed*, No. 06-2152<br>MRGO, *Ackerson*, No. 06-4066 | §<br>§<br>§<br>§ |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## DREDGING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
## FOURTH CAUSE OF ACTION PURSUANT TO F.R.C.P. 12(c)

The allegations of the Fourth Cause of Action in the *Reed* (No. 06-2152) and *Ackerson*

(No. 06-4066) actions do not state a claim upon which relief may be granted under the Federal

Water Pollution Control Act, 33 U.S.C. §1251 *et seq.* ("Clean Water Act"). Defendants Bean

Dredging, L.L.C.; C.F. Bean L.L.C.; Bean Stuyvesant, L.L.C.; Stuyvesant Dredging Company;

Stuyvesant Dredging, Inc.; Royal Boskalis Westminster N.V., in their own right and as

successors to Bean Dredging Corporation; C.F. Bean Corporation; Bean Horizon Corporation;

Bean Horizon L.L.C.; Gulf Coast Trailing Company; T.L. James & Company, Inc.; TLJIC,

L.L.C., on its on behalf and as successor by merger to T.L. James Marine, Inc., and T.L. James

1

NO NMS 122836 v1
2902907-000001



Marine, L.L.C.; Great Lakes Dredge & Dock Company; Great Lakes Dredge & Dock Company,

L.L.C. of Louisiana; Great Lakes Dredge & Dock Corporation of Delaware; Natco Dredging

Limited Partnership; Great Lakes Trailing Company; Weeks Marine, Inc.; Mike Hooks, Inc.;

Luhr Bros. Inc.; Pine Bluff Sand and Gravel Company; and King Fisher Marine Service, L.P.

(collectively the "Dredging Defendants") therefore move for dismissal pursuant to Federal Rule

of Civil Procedure 12(c) of Plaintiffs' Fourth Cause of Action for alleged violation of

environmental protection laws.

Plaintiffs' Fourth Cause of Action stating claims under the Clean Water Act should be

dismissed because of four separate and independent reasons. First, the Clean Water Act does not

provide for a private right to recover for monetary damages. Second, Plaintiffs' have not alleged

that the Dredging Defendants have violated any effluent limitation imposed by a governmental

agency. Third, Plaintiffs' have not alleged an ongoing effluent limitation violation. Fourth,

Plaintiffs' have not complied with the 60 day notice provision required by the Act. Each one of

these grounds alone is fatal to Plaintiffs' Fourth Cause of Action and, therefore, it should be

dismissed.

## BACKGROUND

Plaintiffs' Complaints allege that the Mississippi River Gulf Outlet ("MRGO") is a 76

mile man-made navigational channel connecting the Gulf of Mexico to the City of New Orleans.[1]

The United States Army Corps of Engineers ("COE"), an agency and instrumentality of the

United States of America, began construction of the MRGO in 1958 and completed construction

---

[1] Compl. ¶ 7.

2

in 1965.[2]  The COE performed a substantial amount of the dredging of the MRGO itself.[3]

However, it also contracted with various third parties, including the Dredging Defendants for

maintenance dredging of the MRGO from 1993 to 2005.[4]

The Complaint further alleges that the Dredging Defendants' dredging activities in the

MRGO caused the flooding of Plaintiffs' homes and property during Hurricane Katrina.

Plaintiffs do not allege that the Dredging Defendants failed to comply with their dredging

contracts and/or any permits associated with their dredging of the MRGO.  Nor do Plaintiffs

allege that the Dredging Defendants unlawfully discharged any pollutants into the MRGO.

Plaintiffs allege in the Fourth Cause of Action that the Dredging Defendants' dredging

activities in the MRGO violated the Clean Water Act, and they therefore claim that they are

entitled to recover monetary damages under the Act.[5]  However, Plaintiffs' Fourth Cause of

Action should be dismissed because the Clean Water Act does not provide for a private right of

recovery for monetary damages and does not provide a right or cause of action where there is no

alleged ongoing violation of an effluent limitation imposed by the Act.

---

[2]    *Id.*

[3]    *Id.* ¶¶ 13, 15.

[4]    *Id.* ¶¶13, 16, 17.

[5]    *Id.* ¶¶ 43 – 45.

3

## STANDARD OF REVIEW

A claim may be dismissed for failure to state a claim either because it asserts a legal theory that is not cognizable as a matter of law or because it fails to allege sufficient facts to support a cognizable legal claim.[6]   When a claim is challenged under this rule, the court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the pleader's favor and views the pleading in the light most favorable to the non-moving party.[7] While Plaintiffs' pleading obligations are minimal, they must still allege facts, either directly or inferentially, that satisfy each element required for recovery under some actionable legal theory.[8] The court will not accept as true the pleader's bald assertions and legal conclusions, nor will the court draw unwarranted inferences to aid the pleader.[9]   The court may consider allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and other materials subject to judicial notice, all without converting the motion to one for summary judgment.[10]

---

[6]      Fed. R.Civ.P. 12(b)(6); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 & n.8 (5th Cir. 2002) (Rule 12(b)(6) standards apply to Rule 12(c) motion seeking dismissal for failure to state a claim).

[7]      *See Carey v. Louisiana*, 2001 WL 1548962, *3 (E.D.La. Dec. 5, 2001).

[8]      *See Albright v. Oliver*, 510 U.S. 266, 267, 114 S.Ct. 807, 810 (1994).

[9]      *See* 5A Charles A.Wright & Arthur R. Miller, *Federal Practice & Procedure*, §1357 (1990); *Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

[10]      *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.* 62 F.3d 69, 72 (2d Cir. 1995); *see also  Blackburn*, 42 F.3d at 931, (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993)).

4

## ARGUMENT

The purpose of the Clean Water Act is to abate and control water pollution.[11] The Clean Water Act achieves this purpose by imposing maximum effluent limitations on point sources.[12] A "point source" means "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."[13] An "effluent limitation" in turn is "any restriction established by a State or the [EPA] on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters."[14] Thus, the Clean Water Act makes it "unlawful for any person to discharge a pollutant without obtaining a permit and complying with its terms."[15]

I.   **The Plaintiffs' Fourth Cause of Action should be dismissed because the Clean Water Act does not provide a private right of recovery for monetary damages.**

In determining whether or not a statute provides a private right of action it is necessary to look at the statutory language.[16] Section 1365 of the Clean Water Act is clear regarding the remedies it affords. Section 1365(a) provides for citizen suits, allowing any citizen to commence an action on his own behalf against any person or any government agency who has violated "an

---

[11]      33 U.S.C. § 1251; *EPA v. California ex rel. State Water Resources Control Bd.*, 426 U.S. 200, 206 (1976).

[12]      *Id.*

[13]      § 1362(14).

[14]      § 1362(11).

[15]      *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n.*, 453 U.S. 1, 11 (1981) (quoting *State Water Resources.*, 426 U.S. at 203-04).

[16]      *Id.* at 8.

5

effluent standard or limitation under [the Act] or an order issued . . . with respect to such a standard or limitation."

In *Sea Clammers,* the Supreme Court studied this statutory language and held that the Clean Water Act does not provide a right of action for citizens to recover for damages to their property.[17]  It only permits citizens to seek injunctive relief to stop an ongoing violation of an effluent limitation under the Act and the award of civil penalties payable to the government, but not for compensatory or punitive damages.[18]  Where, as here, the statute provides a particular remedy or remedies, "a court must be chary of reading others into it."[19]

Additionally, legislative history is relevant when examining whether or not an Act provides for private remedies.[20]  A review of the legislative history behind the Clean Water Act makes clear that Congress expressly did not grant a right to recover for damages to individual property. In *Sea Clammers,* the Court examined the legislative history and found that the citizen

---

[17]      *Sea Clammers,* 453 U.S. at 14.

[18]      *Id.*

[19]      *Id.* (quoting *Transamerica Mortgage Advisors, Inc., v. Lewis,* 444 U.S. 11, 19 (1979).

[20]      The citizen suit provisions of Clean Water Act and Clean Air Act are virtually identical.  The Clean Air Act states in pertinent part: "Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf - (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."  42 U.S.C.A. § 7604.

          The Clean Water Act states in pertinent part: "Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf - instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."  33 U.S.C.A. § 1365; *see also Sea Clammers,* 453 U.S. at 17.

6

suit provision of the Clean Water Act was expressly modeled on the parallel provision of the Clean Air Act, 42 U.S.C. § 7604.1.[21]  The legislative history of the Clean Air Act clearly indicated that private suits were limited to injunctive relief only.[22]  Senator Hart, for example stated:

> It has been argued, however, that conferring additional rights on the citizen may burden the courts unduly.  I would argue that the citizen suit provision of § 4358 has been carefully drafted to prevent this consequence from arising.  First of all, it should be noted that the bill makes no provision for damages to the individual.  It therefore provides no incentives to suit other than to protect the health and welfare of those suing and others similarly situated.  It will be the rare, rather than the ordinary, person, I suspect, who, with no hope of financial gain and the very real prospect of financial loss, will initiate court action under this bill.[23]

The language of the Act and the legislative history make clear that the purpose of the Clean Water Act is to prevent and to abate ongoing pollution and, to that end, Congress granted individuals the right to seek injunctive relief to stop a party which is committing an ongoing violation of an effluent limitation.  It is equally clear that the Clean Water Act does not provide a right of action for damage to individual property.

Therefore, the recovery sought by the Plaintiffs under the Clean Water Act  for property damage, cost of restoration, loss of use of property, increased living expenses, extended displacement costs, diminution of property value, ecological damages, loss of income, lost profits, lost business opportunity, inconvenience, mental anguish, emotional distress, bodily

---

[21]     *Sea Clammers*, 453 U.S. at 18 n.27.

[22]     *Id.*

[23]     *Id.*

7

NO NMS 122836 v1
2902907-000001

harm, death and post and future medical expenses are clearly not recoverable under the Clean Water Act, and these claims should be dismissed.

**II.    The Plaintiffs' Fourth Cause of Action should be dismissed as it does not allege a violation of an effluent limitation under the CWA.**

Plaintiffs' Fourth Cause of Action alleges that the Dredging Defendants caused environmental damage in violation of Clean Water Act.[24] However, the Act does not prescribe environmental damage as a basis of a citizen suit.[25] "The Act does not impose a negligence standard; rather, it gives the Administrator and the states the right to promulgate standards for the implementation of the Act's objectives within limits set by the Act. Unless a violation of a standard or limitation set forth in the Act or a violation of an administrative order or rule promulgated under the authority of the Act is alleged, no suit under Section 1365 may be brought."[26]

The Clean Water Act provides for citizen suits to enforce effluent limitations and to prevent the discharge of pollutants into navigable waterways.[27] The Plaintiffs do not allege a violation of an effluent standard, limitation, or order as required under the Act. Nor do Plaintiffs allege that the Dredging Defendants are discharging pollutants from a point source into navigable waters. Therefore, on the face of the complaints the Plaintiffs fail to state allegations to support a claim under the Clean Water Act.[28]

---

[24]    Compl. ¶ 44.

[25]    *See Hamker v. Diamond Shamrock Chemical Co.*, 756 F.2d 392, 397 (5th Cir. 1985).

[26]    *Id.*

[27]    33 U.S.C. § 1251, *et seq.*

[28]    *Hamker*, 756 F.2d at 394.

8

III.    **The Plaintiffs' Fourth Cause of Action should be dismissed as it does not allege an
ongoing violation under  the Clean Water Act.**

This Court has already held that "the Clean Water Act addresses on-going pollution
concerns, not the alleged results of catastrophic flooding."[29] Because there is no allegation of an
ongoing violation, there is no cause of action under the Clean Water Act.

It is not enough to allege a violation of an effluent limitation under the Clean Water Act
when filing a suit under Section 1365 of the Act. "By its ordinary meaning the language of
section 1365 requires an allegation of an ongoing violation: 'any citizen may commence a civil
action . . . against any person . . . *who is alleged to be in violation of* . . .' the relevant standards,
limitations or orders."[30]    Therefore the complaint must also allege that the violation is ongoing
and is occurring at the time the complaint is filed.[31] While Section 1365 of the Clean Water Act
provides for citizen suits, the remedies authorized are prospective only.[32] That is, when a
violation under the statute is alleged, the violation must be ongoing in order to bring suit under
Section 1365.[33] The dredging activities performed by Dredging Defendants, which allegedly
caused Plaintiffs' damages, had terminated on or before August 29, 2005, prior to Plaintiff filing
suit. "Section 1365 does not provide for suits against parties alleged to have violated an effluent

---

[29]     *O'Dwyer, et al. v. United States of America,*  No. 05-4181 (E.D. La. filed July 19, 2006).

[30]     *Hamker v. Diamond Shamrock Chem.,*  756 F.2d 392, 395 (5th Cir. 1985) (citing 33 U.S.C. § 1365)
(emphasis added).

[31]     *Id.*

[32]     *Sea Clammers,* 453 U.S. at 6.

[33]     Hamker, 756 F.2d. at 395.

9

standard or limitation in the past."[34]  The purpose of the citizen suit provision of the Clean Water

Act is to allow a citizen to bring suit against the EPA or State to force those parties to take action

against a polluter or to bring suit directly against a polluter to force the polluter to stop

discharging.   Here all dredging activities complained of ceased prior to Plaintiffs bringing suit.

**IV.    The Fourth Cause of Action should be dismissed because Plaintiffs failed to comply with the mandatory 60 day notice provision in the Clean Water Act.**

Plaintiffs have no standing to bring an action under the Clean Water Act because they

have not complied with the 60 day notice provisions under the Act.  A citizen filing suit under

the Clean Water Act must comply with specified procedures set forth in the Act prior to filing

suit.[35]  A citizen must give 60 days notice to the EPA, the State in which the alleged violation

occurs and to the alleged violator prior to bringing an action against all or any of these parties.[36]

Failure to comply with this provision requires dismissal.[37]  Plaintiffs have not given such notice

to the Dredging Defendants prior to filing suit in this case.  Furthermore, because the purpose of

the 60 day notice provision is to allow the polluter time to cease its polluting activity prior to suit

being filed, and because the complained of activity here had already stopped prior to suit being

filed in this matter, it is impossible for Plaintiffs to comply with the Clean Water Act's notice

provision. Dismissal, therefore, should be with prejudice.

---

[34]    *Id.* (quoting *Evansville v. Kentucky Liquid Recycling*, 604 F.2d 1008, 1014 (7th Cir. 1979) (cited with approval in *Sea Clammers*).

[35]    § 1365(b); *Sea Clammers*, 453 U.S. at 14.

[36]    § 1365(b)(1)(A).

[37]    *See Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989) (rejecting argument that a 60-day stay was sufficient and holding that failure to comply with identical notice-and-delay provision in citizen-suit provision of the Resource Conservation and Recovery Act requires dismissal).

10

## CONCLUSION

For the foregoing reasons, the Dredging Defendants respectfully move that this Court dismiss Plaintiffs' Fourth Cause of Action with prejudice, and award the Dredging Defendants any further relief that the Court deems just and proper.

Respectfully submitted,

James H. Roussel ( Bar Roll No. 11496)
Nyka M. Scott (Bar Roll No. 28757)
Baker, Donelson, Bearman,
   Caldwell & Berkowitz, PC
201 St. Charles Ave., Ste. 3600
New Orleans, LA 70170
Telephone: (504) 566-5278
Facsimile: (504) 636-3978
jroussel@bakerdonelson.com
nscott@bakerdonelson.com

Attorneys for Great Lakes Dredge &
Dock Company

/s/William E. Wright, Jr.
William E. Wright, Jr. (Bar Roll No.8564)
Terrence L. Brennan (Bar Roll No. 3434)
Kelly E. Theard (Bar Roll No. 29445)
of
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
wwright@dkslaw.com
tbrennan@dkslaw.com
kthread@dkslaw.com

Attorneys for Bean

/s/ A. Gordon Grant, Jr.
A. Gordon Grant, Jr. (Bar Roll No. 6221)
Philip S. Brooks, Jr. (Bar Roll No. 21501)
Montgomery, Barnett, Brown, Read,
 Hammond & Mintz, L.L.P.
1100 Poydras St., Suite 3200
New Orleans, LA 70163-3200
Telephone: (504) 585-7681
Facsimile: (504) 200-8981
ggrant@monbar.com

Attorneys for Gulf Coast Trailing Company;
T.L. James & Company, Inc.; TLJIC, L.L.C.,
on its on behalf and as successor by merger to
T.L. James Marine, Inc., and T.L. James
Marine, L.L.C

11

NO NMS 122836 v1
2902907-000001

/s/ James a Cobb, Jr.
James A. Cobb, Jr. (Bar Roll No. 4213)
Emmet, Cobb, Waits & Henning
1515 Poydras St., Ste. 1950
New Orleans, LA 70112
Telephone: (504) 581-1301
Facsimile: (504) 581-6020
jac@ecwko.com

Attorney for Weeks Marine, Inc.


/s/ Richard A. Cozad
Richard A. Cozad (Bar Roll No. 4537)
Michael L. McAlpine (Bar Roll. No. 9195)
Emma A. Mekinda (Bar Roll No. 28151)
McAlpine & Cozad
365 Canal Street, Suite 3180
New Orleans, LA 70130
Telephone:(504) 561-0323
Facsimile: (504) 528-9442
emmamekinda@yahoo.com

Attorneys for King Fisher Marine Service,
L.P.


/s/ Andre J. Mouledoux
Andre J. Mouledoux (Bar Roll No.)
C. William Emory (La Bar #20179)
Daniel J. Hoerner (La Bar #21706)
Jacques P. DeGruy (La Bar #29144)
Mouledoux, Bland, Legrand & Brackett
701 Poydras St., Ste. 4250
New Orleans, LA 70139
Telephone: (504) 595-3000
Facsimile: (504) 522-2121
amouledoux@mblb.com

Attorneys for Pine Bluff Sand & Gravel Co.

/s/ Samuel B. Gabb
Samuel B. Gabb (Bar Roll No.22378)
Thomas P. LeBlanc (Bar Roll No. 22832)
Lundy & Davis
501 Broad St.
P.O. Box 3010
Lake Charles, LA 70602-3010
Telephone: (337) 439-0707
Facsimile: (337) 439-1029
sgabb@lundydavis.com

Attorneys for Mike Hooks, Inc.

/s/ William Larzelere
William J. Larzelere, Jr. (Bar Roll No. 8057)
T. Justin Simpson (Bar Roll No. 18437)
Angie L. Arceneaux (Bar Roll No. 26786)
Larzelere, Picou, Wells, Simpson & Lonero
3850 N. Causeway Blvd. - Ste. 1100
Two Lakeway Center
Metairie, LA 70002
Telephone:(504) 834-6500
Facsimile: (504) 834-6565
blarzelere@lpw-law.com
jsimpson@lpw-law.com
aakers@lpw-law.com

Attorneys for Luhr Bros., Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of September, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

1)      jfnevares-law@microjuris.com

2)      dbecnel@becnellaw.com

3)      csalas@salaslaw.com

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

1)      A.J. Rebaneck