## IN UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COLLEEN BERTHELOT ET AL., et al., | : CIVIL ACTION NO.: |
| | : |
| | : 05-4182 SECTION "K"(2) |
| | : |
| Plaintiffs | : CONS. KATRINA CANAL |
| | : |
| vs. | : JUDGE DUVAL |
| | : |
| BOH BROTHERS CONSTRUCTION CO. L.L.C., et al., | : JUDGE WILKINSON |
| | : |
| | : |
| Defendants. | : |

**THIS DOCUMENT RELATES TO:**

05-6323 "K"(2)    VANDERBROOK

### SUPPLEMENTAL REPLY BRIEF OF AMICUS CURIAE UNITED POLICYHOLDERS AND THE CHEHARDY REPRESENTATIVE POLICYHOLDERS IN OPPOSITION TO DEFENDANTS' RULE 12 MOTIONS

## I.    INTRODUCTION

Amicus Curiae United Policyholders and the Chehardy Representative Policyholders ("Amicus Parties") submit this Supplemental Reply Brief in Opposition To Defendants' Rule 12 Motions.

## II.    ARGUMENT

### A.    Defendants' Water Damage Exclusions Are Not Defined And Do Not  Include Make Reference To Flooding Caused By Third-Party Negligence.

Defendants' so-called Water Damage Exclusions fail to define the term "flood" in any manner, including any definition that includes or makes specific reference to inundation of water resulting from the negligent conduct of third parties.

PHIDOCS-50492.1

Consequently, Defendants' failure to define this pertinent term renders their water damage exclusions ambiguous.

Defendants completely failed to answer the following question posed by the Court in its August 28, 2006 Order: "Specifically, does the exclusion clearly refer to floods caused by third-party negligence." The answer to the Court's inquiry is an unequivocal "no," based upon a plain reading of Defendants' policies and further evidenced by Defendants' complete and utter failure to respond to that simple inquiry. In light of the lack of any definition of "flood" in Defendants' policies, Defendants instead ask the Court to piece together a proposed definition of the term "flood" that the Insurance Companies themselves failed to include when drafting their own all-risk policies. Consequently, because Defendants' Water Damage Exclusions make no reference to flooding caused by the negligence of third parties, they fail to clearly and unambiguously state what is excluded as required under well-established Louisiana law, thereby rendering these provisions ambiguous as a matter of law. Talley v. Blue Cross Blue Shield of Louisiana, 760 So.2d 1193, 1196 (La. App. 3d Cir. 2000)

The terms of any purported exclusionary provision of an insurance policy "must be such that it is clear who is insured and what is excluded" and it is the duty of the insurance company to specifically and clearly expressly define its terms and exclusions in drafting its policies. Talley, 760 So.2d at 1196. If, as here, an insurance company fails to define a pertinent term of the policy or exclusionary provision, the court must adopt the meaning of that term most favorable to the policyholders. Hendricks v. American Employers Ins. Co., 176 So. 2d 827 (La. Ct. App. Cir. 2 1965); Employers' Liability Assur. Corp. v. Enos Coal Corp., 457 F.2d 402 (7th Cir. 1972). Furthermore;

one policy provision is not to be construed separately at the expense of disregarding other policy provisions. Billiot v. Terrebonne Parish Sheriff's Office, 735 So.2d 17, 24 (La. App. 1 Cir. 1999).

Here, a plain reading of Defendants' policies and Water Damage Exclusions reveals that Defendants failed to define the term "flood" in any manner, including flooding or water damage caused by the negligence of third parties, and failed to expressly and specifically state what is excluded from coverage as required under Louisiana law. Talley, 760 So.2d at 1196. Because Defendants failed to do so, that undefined term must be construed against Defendants and in a manner most favorable to the policyholders. As such, the Court should hold that flooding caused as a result of third-party negligence is not excluded from Defendants' all-risk policies.

**B.   The Reasonable Expectations Of Louisiana All-Risk Policyholders Would Be That Damage Caused By The Negligent Acts Of Third Parties Would Be Covered Losses Under The All-Risk Policies They Purchased.**

A Louisiana homeowner purchasing an all-risk homeowners policy would reasonably expect coverage under the all-risk policies they purchased for losses caused by water damage resulting from third-party negligence. Defendants' arguments to the contrary are inaccurate and completely unpersuasive. First, Defendants have completely misinterpreted the reasonable expectations doctrine in stating that "[r]elying on policy language to determine policyholder expectations is appropriate." Defendants could not have possibly misstated the doctrine any more egregiously. To the contrary, under the reasonable expectations doctrine, "courts will protect the [policyholders'] reasonable expectations regarding the coverage afforded by insurance contracts even

though a careful examination of the policy provisions indicates that such expectations

are contrary to the expressed intention of the insurer." Louisiana Ins. Guar. Ass'n v.

Interstate Fire & Cas. Co., 630 So. 2d 759, 764 n.9 (La. 1994) (quoting R. Keeton and

A. Widiss, Insurance Law § 6.13 (1988)).  Thus, the reasonable expectations doctrine

seeks to determine the objectively reasonable expectations of the policyholder and is

applied to resolve ambiguities even when an express reading of the policy language

would contradict those expectations.  As a result, it is axiomatic that the policyholders'

reasonable expectations cannot, by definition, be solely formed or shaped by the

express language of the policy.  Defendants are, in essence, asking the Court to apply

the "unreasonable expectations" of the insurance companies by suggesting that the

undefined, ambiguous policy language somehow defines policyholder expectations.

Simply stated, the Court must determine the policyholders' reasonable expectations of

coverage even if express policy language would contradict such expectations.  Id.[1]

        Moreover, Defendants' assertion that the availability of flood insurance

through the National Flood Insurance Program ("NFIP") would defeat or moot any

reasonable expectation of coverage is fatally flawed and ignores the fact that the NFIP

is predicated upon the levee system in New Orleans withstanding a hurricane and not

failing due to faulty design, maintenance or construction .  In making available and

pricing insurance under the NFIP, the New Orleans levee system must be certified by

the United States Army Corps of Engineers as sufficiently meeting the standard for a

---

[1] Even if the language of the Policy were relevant to the "reasonable expectations" analysis, the Court must reject Defendants' incredible suggestion that their policies "prominently proclaim" that such losses are excluded when, in reality and apparent from even the most basic reading, their policies proclaim absolutely nothing with regard to water damage caused by third-party negligence.

"100-year flood."[2]  Moreover, in determining applicable rates and zones pertaining to flood insurance, FEMA and the NFIP presume that the flood protection system in New Orleans will be maintained.[3]  Taken together, the certification requirement and the FEMA maps indicate that the NFIP does not contemplate flood insurance coverage for a situation such as this where third-party negligence causes the levees to fail and inundate the City of New Orleans with water.  Thus, the reasonable expectation of the Louisiana policyholder would not have been, as Defendants suggest, that coverage for this type of water damage would be covered under the NFIP.  Consequently, the Louisiana homeowner's reasonable expectation of coverage is not at all diminished by the existence of the NFIP because the NFIP presumes that the levee system would protect the City of New Orleans, which it failed to do here as a result of third-party negligence.[4]

Finally, contrary to Defendants' assertions, the analysis and tenets of Doerr v. Mobil Oil Corp., 774 So. 2d 119 (La. 2000), have not been held to be limited to the pollution exclusion .  First, Defendants' rely upon Harrison v. R.R. Morrison & Son, Inc., 862 So. 2d 1065 (La. App. 2d Cir. 2003), but wholly failed to mention that Harrison was decided under Mississippi law, which was precisely why the concurring opinion noted that Doerr did not apply in that instance.  Harrison, 862 So. 2d at 1073 (stating

---

[2] United States Army Corps of Engineers April 12, 2006 News Release, a copy of which can be viewed at http://www.hq.usace.army.mil/cepa/releases/neworleanslevees.htm.

[3] The flood map for Orleans Parish can be viewed at the following url, located on FEMA's website: http://map1.msc.fema.gov/idms/IntraView.cgi?KEY=23283733&IFIT=1.

[4] Moreover, the Louisiana all-risk policyholder cannot be held to have appreciated and understood the extensive and sophisticated interplay of the NFIP, the levee system certification and the availability of NFIP flood insurance as suggested by the Defendants.

that "the issues of Doerr v. Mobil Oil Corp., concerning the application of a general

pollution exclusion provision, which are apparently treated differently under Mississippi

law, are avoided"). Second, the court in Alexis v. Southwood Ltd. Partnership, 792 So.

2d 100 (La. App. 4th Cir., 2001), failed to conduct any analysis of Doerr and in no way

stated, suggested or hinted that Doerr was in any way limited in its holding or

application. Consequently, the holding in Doerr, including the basic tenets of Louisiana

law regarding the interpretation of insurance contracts stated therein and the Civil Code

provisions on which it is based, remains good law and is controlling here. For all of

these reasons, Defendants' arguments are unpersuasive and the reasonable

expectation of Louisiana policyholders purchasing all-risk homeowners insurance would

be that losses caused by the failure of the New Orleans levees system would be

covered under such all-risk policies.

### C.   Defendants' So-Called Anti-Concurrent Causation Clauses Are Ambiguous And Unenforceable.

Defendants' so-called anti-concurrent causation clauses are ambiguous to

the extent they purport to circumvent the efficient proximate cause doctrine applied by

Louisiana courts and run contrary to the express inclusion of some hurricane coverage

by virtue of the policies; "Hurricane Deductibles." As such, these clauses are

enforceable as a matter of law. Defendants' reliance upon Sweeney v. City of

Shreveport, 584 So. 2d 1248 (La. App. Cir. 2 1991), is misplaced. In Sweeney, the

plaintiff's home was demolished after being mistakenly identified as subject to notices of

condemnation and demolition. Id. at 1249. The court held that the "ordinance or law

exclusion" contained in her homeowners policy excluded coverage, but the court did not

analyze, interpret or apply the so-called anti-concurrent causation clause. In holding

that the exclusion applied, the court stated only as follows:

> A plain reading of the exclusion gives no indication that the
> procedure used to enforce the ordinance must be flawless in
> every respect. It simply states that the policy does not cover
> loss caused directly or indirectly by enforcement of any
> ordinance regulating the demolition of property. The record
> is completely clear that Mrs. Sweeney's house was
> condemned and demolished pursuant to the enforcement of
> an ordinance. By its plain terms, the exclusion applies.

Id. at 1251. The court engaged in no analysis of the anti-concurrent causation language

and found the loss was caused directly by the enforcement of an ordinance and, thus,

the exclusion's plain language applied. Moreover, to the extent the Sweeney court

recited the language of the so-called anti-concurrent causation clause in determining

that the exclusion applied, such language was mere dicta and made in the context of

the plaintiff's second argument that the exclusion was contrary to public policy, which

the court later rejected because plaintiff did not enunciate any such public policy upon

which her argument was based. Id.[5]

Defendants' position here is not remotely on point with Sweeney and,

therefore, even if Sweeney is determined to have "upheld" an anti-concurrent causation

clause, it has no application here. In Sweeney, the plaintiff simply argued that the

exclusion did not apply because the ordinance was not lawfully applied or, stated

differently, should not have been applied to her residence.

---

[5] Moreover, the Sweeney decision upheld the granting of summary judgment following
full discovery as to the cause of the demolition of the plaintiff's house, thus underscoring the
need for discovery in this matter so the Vanderbrook policyholders may address and prove the
factual question of causation.

Here, Defendants seek to exclude coverage for hurricane-related losses wherever they "find" an excluded loss present in any percentage, proportion or sequence.  As set forth in Amicus' prior submissions, Defendants' efforts to exclude coverage, in toto, for losses caused by a covered peril where a non-covered peril is at all present, is contrary to the long-standing efficient proximate cause doctrine.  Roach-Strayhan-Holland Post No. 20, Am. Legion Club, Inc. v. Continental Ins. Co., 112 So. 2d 680, 683 (La. 1959); Lorio v. Aetna Ins. Co., 232 So. 2d 490 (La. 1970) (holding that policyholders may have coverage when covered peril causes an excluded peril).  Unlike Sweeney, the application of the so-called anti-concurrent causation clauses sought by Defendants here does not simply seek to determine whether an excluded loss caused the policyholders' losses, which of course, is a factual inquiry, but rather, seeks to wholly invalidate coverage for covered losses (i.e. windstorm) if the clause is enforced. This is a markedly different situation than Sweeney and, thus, Sweeney is inapplicable.

Finally, the precise arguments Defendants ask this Court to accept with regard to the so-called anti-concurrent causation language have been twice rejected by United States District Courts in Tuepker v. State Farm Fire and Cas. Co., 2006 WL 1442489 (S. D. Miss.) and Leonard v. Nationwide Mutual Ins. Co., 438 F. Supp. 2d 684 (S.D. Miss. 2006).  Moreover, Defendants sold policyholders all-risk policies containing Hurricane Deductibles, which makes Defendants' assertions even more pernicious. Each of the Defendants' policies contain Hurricane Deductibles which contemplate coverage for losses caused by hurricanes and appear in the form of amendments or

endorsements to the respective policies[6]  These Hurricane Deductibles contemplate coverage for damages caused by hurricanes and, in the case of Hanover's policy, specifically defines hurricane as a storm which has winds of at least 74 miles per hour "or a storm surge of at least 4 feet above normal."  Now, Defendants seek to invalidate or exclude this coverage by selectively seeking to enforce another provision of their Policies that excludes water damage and would effectively exclude the very coverage suggested by the "Hurricane Deductible Endorsement" vis-à-vis an overbroad interpretation and application of the "water damage" exclusions.

Insofar as Louisiana law provides that where "an attachment to the policy conflicts with the terms of the policy, the attachment will control," then the Hurricane Deductibles control and, in the context of hurricane-related losses, preempt the language of the policy including the so-called anti-concurrent causation language. Sea Trek v. Sunderland Marine Mut. Ins. Co., Ltd., 757 So.2d 805 (La. App. Cir. 5 2000). As such, the Vanderbrook policyholders' losses caused by damage from Hurricane Katrina are covered. Talley v. Blue Cross Blue Shield of Louisiana, 760 So.2d 1193, 1196 (La. App. Cir. 3 2000).  At a minimum, the conflict between the so-called anti-concurrent causation clause and the Hurricane Deductibles renders the Defendants' policies ambiguous as to what coverage is provided for losses caused by hurricanes.  As such, the Court cannot interpret Defendants' policies or make a determination as to the scope of coverage for losses caused by hurricanes from the four corners of the respective policies.

---

[6] See State Farm's Motion for Judgment on the Pleadings at Exhibit "B;" Hanover Policy at INS 32; Standard Fire Policy at INS 124; and Unitrin (Unitrin Policy at INS 191).

## III.    CONCLUSION

For the aforementioned reasons, this Court should deny Defendants' Motions for

Judgment on the Pleadings.

Respectfully Submitted,

Anderson Kill & Olick, P.C.

/s/ John N. Ellison
John N. Ellison, Esq.
Darin J. McMullen, Esq.
1600 Market Street
Suite 2500
Philadelphia, PA  19103
Telephone: 215-568-4202
Facsimile:  215-568-4375

Attorneys for Amicus Curiae


Ranier, Gayle & Elliot, L.L.C.


Drew Ranier, Esq.
Frank N. Elliot, Esq.
1419 Ryan Street
P.O. Box 1890
Lake Charles, Louisiana 70602-1890
Attorneys for Amicus Curiae