


UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION NO.: 05-4182 "K"(2) |
| | * | JUDGE DUVAL |
| PERTAINS TO: INSURANCE *Vanderbrook*, No. 05-6323 | * * | MAGISTRATE JUDGE WILKINSON |
| | * * * | |

**JOINT REPLY MEMORANDUM OF DEFENDANTS THE STANDARD FIRE INSURANCE COMPANY, HARTFORD INSURANCE COMPANY OF THE MIDWEST, HANOVER INSURANCE COMPANY AND UNITRIN PREFERRED INSURANCE COMPANY IN RESPONSE TO SUPPLEMENTAL MEMORANDA OF PLAINTIFFS AND THEIR AMICUS CURIAE**

___ Fee ________
___/ Process ________
_X/ Dktd ________
_✓_ CtRmDep ________
___ Doc. No ________

# TABLE OF CONTENTS

Question 1: The Water Damage Exclusion Applies to Floods Caused by Negligence ............... 1

Question 2: An Objectively Reasonable Policyholder Would Not Expect Coverage ................. 3

Question 3: Reasonable Expectations is a Question of Law ..................................................... 6

Question 4: The Anti-Concurrent Causation Clause Makes Clear That There is No Coverage Even if Negligence Contributed to Plaintiffs' Losses ............................ 6

Question 5: The Anti-Concurrent Causation Clause is Unambiguous ....................................... 7

Question 6: If the Inundation Was Not a "Flood," It Would Be an "Ensuing Loss" Under the Faulty Work Exclusion, But the Court Should Not Reach That Question ........................................................................................................ 9

Question 7: The Phrase "Any Property Whether On or Off the Residence Premises" in the Faulty Work Exclusion is Not Limited to Insured Property .............................. 10

## TABLE OF AUTHORITIES

### CASES

Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co., 366 N.W.2d 271 (Minn. 1985) ........ 4

Bartlett v. Cont'l Divide Ins. Co., 697 P.2d 412 (Colo. Ct. App. 1984), aff'd, 730 P.2d 308 (Colo. 1986) ........ 1

Buente v. Allstate Ins. Co., 422 F. Supp. 2d 690 (S.D. Miss. 2006) ........ 8

Cadwallader v. Allstate Ins. Co., 848 So. 2d 577 (La. 2003) ........ 2

Capelouto v. Valley Forge Ins. Co., 990 P.2d 414 (Wash. Ct. App. 1999) ........ 10

Coleman v. School Bd., 418 F.3d 511 (5th Cir. 2005) ........ 4, 5, 6

Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co., 682 P.2d 388 (Ariz. 1984) ........ 5

Dixon v. First Premium Ins. Group, 934 So. 2d 134 (La. App. 1 Cir. 2006) ........ 6

Dobson v. Allstate Ins. Co., 2006 WL 2078423 (E.D. La. July 21, 2006) ........ 5

E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co., 444 N.Y.S.2d 321 (N.Y. App. Div. 1981) ........ 1

El Rincon Supportive Servs. Org., Inc. v. First Nonprofit Mutual Ins. Co., 803 N.E.2d 532 (Ill. App. Ct. 2004) ........ 10

Fiess v. State Farm Lloyds, 2006 WL 2505995 (Tex. Aug. 31, 2006) ........ 10

Flaherty v. Jackson, 152 La. 679 (La. 1922) ........ 3

Florida E. Coast Ry. Co. v. United States, 519 F.2d 1184 (5th Cir. 1975) ........ 1

Gibson v. Callaghan, 730 A.2d 1278 (N.J. 1999) ........ 5

Holden v. Connex-Metalna, 2000 WL 1876338 (E.D. La. Dec. 21, 2000) ........ 10

Holden v. Connex-Metalna, 2001 WL 96413 (E.D. La. Feb. 2, 2001) ........ 4

J.M. Brown Constr. Co. v. D&M Mech. Contractors, Inc., 222 So. 2d 93 (La. App. 1 Cir. 1969) ........ 5

Jack v. Adriatic Ins. Co., 420 So. 2d 1292 (La. App. 3 Cir. 1982) ....................................5

Jarvis Christian College v. National Union Fire Ins. Co.,
197 F.3d 742 (5th Cir. 1999) ..........................................................................3

Kane v. Royal Ins. Co., 768 P.2d 678 (Colo. 1989) .........................................................1

Kish v. Ins. Co. of N. Am., 883 P.2d 308 (Wash. 1994) .....................................................5

La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759 (La. 1994)........3, 4, 5, 6

Lee v. Unum Life Ins. Co., 900 So. 2d 1021 (La. App. 4 Cir. 2005) .................................1

Leonard v. Nationwide Mut. Ins. Co., 438 F. Supp. 2d 684 (S.D. Miss. 2006) .............8, 9

Lewis v. Hamilton, 652 So. 2d 1327 (La. 1995)..............................................................5

Murray v. State Farm Fire & Cas. Co., 509 S.E.2d 1 (W. Va. 1998) .................................5

Pakmark Corp. v. Liberty Mut. Ins. Co., 943 S.W.2d 256 (Mo. Ct. App. 1997) ................1

Riche v. State Farm Fire & Cas. Co., 356 So. 2d 101 (La. App. 1 Cir. 1978) ....................1

St. Paul Fire & Marine Ins. Co. v. Valentine,
665 So. 2d 43 (La. App. 1 Cir. 1995) ...............................................................4

Stephens v. Audubon Ins. Co., 665 So. 2d 683 (La. App. 2 Cir. 1995)...............................5

Sweeney v. City of Shreveport, 584 So. 2d 1248 (La. App. 2 Cir. 1991),
writ denied, 589 So. 2d 1057 (La. 1991) ..........................................................7

T.H.E. Ins. Co. v. Larsen Intermodal Serv., Inc., 242 F.3d 667 (5th Cir. 2001) .................5

TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.,
114 F.3d 731 (8th Cir. 1997) ..........................................................................1

Tuepker v. State Farm Fire & Cas. Co.,
2006 WL 1442489 (S.D. Miss. May 24, 2006) ..................................................8, 9

Waldsmith v. State Farm Fire & Cas. Co.,
283 Cal. Rptr. 607 (Cal. Ct. App. 1991)...........................................................10

## STATUTES AND REGULATIONS

National Flood Insurance Program Further Enhanced Borrowing Authority Act of 2005, Pub. L. No. 109-106, 119 Stat. 2288 ........................................................2

44 C.F.R. § 59.1 ........................................................................................................2

44 C.F.R. 61.4(b) (1987)...........................................................................................2

## SECONDARY SOURCES

Robert E. Keeton & Alan I. Widiss, Insurance Law (West 1988).......................................3

Stephen J. Ware, "A Critique of the Reasonable Expectations Doctrine," 56 U. Chi. L. Rev. 1461 (1989) ........................................................................5

**Question 1: The Water Damage Exclusion Applies to Floods Caused by Negligence**

Plaintiffs concede that the Court must interpret the Policies "according to the ordinary, plain and popular meaning of words used in a policy." (Pfs.' Supp. Br., at 2.) The ordinary, plain and popular meaning of the word "flood" is "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be . . . ." Florida E. Coast Ry. Co. v. United States, 519 F.2d 1184, 1192 (5th Cir. 1975). Neither Plaintiffs nor their amicus explain how the ordinary meaning of the word "flood" purportedly does not encompass what occurred in New Orleans. Neither Plaintiffs nor their amicus have even attempted to address any of the cases holding that the water damage exclusion applies to a large-scale inundation regardless of its cause.[1] Neither Plaintiffs nor their amicus have cited a single case holding that a flood caused by negligence is not a "flood" within the meaning of the Policies.[2]

Plaintiffs assert that "it is understood that a homeowner's policy and the NFIP policy dovetail to provide a homeowner complete coverage as to water damage, such that the loss will be covered by either the homeowner's policy or the NFIP policy." (Pfs.' Supp. Br., at 3.) Plaintiffs claim that negligence contributed to the flooding in New Orleans and then suggest that the NFIP does not cover floods resulting in part from negligence. (Id.) To the contrary,

---

[1] TNT Speed & Sport Ctr., Inc. v. American States Ins. Co., 114 F.3d 731, 733 (8th Cir. 1997); Pakmark Corp. v. Liberty Mut. Ins. Co., 943 S.W.2d 256, 261-62 (Mo. Ct. App. 1997); E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co., 444 N.Y.S.2d 321, 321-22 (N.Y. App. Div. 1981); Kane v. Royal Ins. Co., 768 P.2d 678, 681 (Colo. 1989); Bartlett v. Cont'l Divide Ins. Co., 697 P.2d 412, 413 (Colo. Ct. App. 1984), aff'd, 730 P.2d 308 (Colo. 1986).

[2] In Riche v. State Farm Fire & Cas. Co., 356 So. 2d 101 (La. App. 1 Cir. 1978), cited by Plaintiffs, the court simply held that the water damage exclusion in that policy was intended to apply to property that is in a location not ordinarily covered by water. The damaged property in that case was on a boat in the water. Id. at 103-04. Lee v. Unum Life Ins. Co., 900 So. 2d 1021 (La. App. 4 Cir. 2005) is also inapposite. Lee held that an exclusion in a disability insurance policy for "a sickness or injury that was caused by or aggravated by any employment" was ambiguous as applied to injuries sustained by a school bus driver as a result of an automobile accident. The court reasoned that the exclusion could reasonably be read to apply to "injuries caused by the performance of [the] job, such as carpal tunnel syndrome" rather than "injuries sustained while in the course of one's job, but brought on by independent, outside forces, such as a motor vehicle accident caused by a third party." Id. at 1029. This case, in contrast, involves much different policy language in a different kind of insurance policy. There is no dispute that the damage to Plaintiffs' property was caused by a large-scale inundation of normally dry land.

Congress has recognized that the NFIP provides coverage for the flooding in New Orleans, and the NFIP has paid billions of dollars in Hurricane Katrina-related flood insurance claims.[3] Under the terms of the Standard Flood Insurance Policy ("SFIP"), what occurred in New Orleans was plainly "[a] general and temporary condition of partial or complete inundation of normally dry land from: (1) The overflow of inland or tidal waters [or] (2) The unusual and rapid accumulation or runoff of surface waters *from any source*." 44 C.F.R. § 59.1 (emphasis added). An explanatory regulation that was deleted in 1993 to streamline the regulations, but is fully applicable to the policy language at issue (which has not changed), states that the SFIP "covers damage from a general condition of flooding in the area which results from other than natural causes, such as the breaking of a dam . . . ." 44 C.F.R. 61.4(b) (1987).[4]

The amicus argues that Defendants are relying on "after-the-fact interpretations in order to avoid coverage" (Amicus Supp. Br., at 6), citing Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003). In fact, Cadwallader supports Defendants' position, holding that "a rather simple word" used in a policy that has "a well-established common sense meaning" must be applied as written. Id. at 584. The amicus also argues that "[n]owhere in Defendants' all-risk policies are the terms 'water damage' or 'flood' defined to include flooding or water damage caused by third-party negligence." (Amicus Supp. Br., at 6.) There is no merit to the argument that the Policies must define "flood" to "include flooding" or list every conceivable cause of a flood. Moreover, as argued in the ISO Insurers' Supplemental Brief (at 6-7), to limit the word "flood" to natural events would be inconsistent with the context and would render the anti-

[3] On November 21, 2005, legislation was enacted increasing the NFIP's borrowing authority from $3.5 billion to $18.5 billion. See National Flood Insurance Program Further Enhanced Borrowing Authority Act of 2005, Pub. L. No. 109-106, 119 Stat. 2288. The House Report on that legislation states that "claims liabilities arising from Hurricanes Katrina and Rita have been estimated at between $20 and $30 billion, far surpassing the total claims paid in the entire history of the NFIP." H. Rep. No. 109-274, 2005 U.S.C.C.A.N. 1132 at 1133.

[4] See footnote 8 of the ISO Insurers Consolidated Reply Memorandum dated July 28, 2006 for an explanation of the history of this regulation.

concurrent causation clause meaningless. See Flaherty v. Jackson, 152 La. 679, 690 (La. 1922); Jarvis Christian College v. National Union Fire Ins. Co., 197 F.3d 742, 748 (5th Cir. 1999).

**Question 2: An Objectively Reasonable Policyholder Would Not Expect Coverage**

The amicus admits that "Louisiana homeowners would not expect or appreciate that their coverage would vary or depend on whether or not the cause of the loss was a natural event or a man-made occurrence." (Amicus Supp. Br., at 10.) That is true. It is only under the unreasonable construction of the Policies proffered by Plaintiffs that coverage would hinge on whether the cause of the inundation was "natural" versus "man-made." Indeed, in Plaintiffs' view, some New Orleanians whose property sustained flood damage would have coverage while others would not, an anomalous result.[5]

Plaintiffs and their amicus distort the reasonable expectations doctrine as applied in Louisiana. Louisiana courts have suggested in dicta in footnotes that a court might apply the reasonable expectations doctrine where "a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759, 764 n.9 (La. 1994).[6] No court in Louisiana, however, has ever applied the doctrine in that manner. To the contrary, the Louisiana Supreme Court has made clear that "[w]hen the language of an insurance policy is clear, courts lack the

[5] In Plaintiffs' view, damage caused by "natural" inundations associated with Hurricane Katrina, such as damage from overtopped levees and storm surge, would be excluded. Under Plaintiffs' interpretation, some policyholders would have coverage for their Katrina-related flood damage, while others that purchased policies containing the exact same language would not have coverage, all because of the mechanics of how the water happened to reach their premises. Such a result is not only contrary to the plain language of the Policies, it defies common sense.

[6] Professor Keeton, who drafted the language quoted in La. Ins. Guar. Ass'n about "careful examination of the policy provisions," explained that this language "is too general to give precise guidance, and it is subject to being construed either too broadly or too narrowly unless it is read with an awareness of the way it has been applied by a particular court of last resort in the relevant jurisdiction." Robert E. Keeton & Alan I. Widiss, Insurance Law § 6.3, at 633 n.17 (West 1988).

authority to change or alter its terms under the guise of interpretation," and cannot apply the doctrine of reasonable expectations. Id. at 765-66.[7]

In La. Ins. Guar. Ass'n, the court concluded that based on the nature of the excess coverage provided and the premiums charged, an objectively reasonable insured would not have a reasonable expectation of "drop down" coverage. Id. at 768. See also Coleman, 418 F.3d at 522 (refusing to apply reasonable expectations doctrine because policy language was unambiguous).In Holden v. Connex-Metalna, 2001 WL 96413 (E.D. La. Feb. 2, 2001) (Duval, J.), cited in the amicus brief, this Court precluded evidence on "reasonable expectations" because the policy language was unambiguous. Id. at *5.

The out-of-state authority on reasonable expectations cited by Plaintiffs and their amicus is contrary to Louisiana law. In Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co., 366 N.W.2d 271 (Minn. 1985) (cited by amicus), the Minnesota Supreme Court recognized that "[t]he traditional approach to construction of insurance contracts is to require some kind of ambiguity in the policy before applying the doctrine of reasonable expectations," but decided to adopt a minority view that the "reasonable expectations doctrine" may be used to rewrite or disregard policy language. Id. at 277. The Minnesota court reasoned that the reasonable expectations doctrine, where it is applied in the absence of an ambiguity, is "closely related to the doctrine of contracts of adhesion" and is based on an assumption that "a lay person lacks the necessary skills to read and understand insurance policies . . . ." Id.

Unlike Minnesota, Louisiana has maintained the traditional view that the reasonable expectations doctrine is inapplicable where the policy language is not ambiguous. La. Ins. Guar.

---

[7] See also Coleman v. School Bd., 418 F.3d 511, 522 (5th Cir. 2005) (Louisiana law "precludes use of the reasonable expectations doctrine to recast policy language when such language is clear and unambiguous."); St. Paul Fire & Marine Ins. Co. v. Valentine, 665 So. 2d 43, 47 (La. App. 1 Cir. 1995) (reasonable expectations doctrine inapplicable where policy unambiguous).

Ass'n, 630 So. 2d at 765-66; Coleman, 418 F.3d at 522. Louisiana courts have also held that an adhesion contract analysis is inappropriate absent an ambiguity and other unusual circumstances,[8] and that "[a]n insured is presumed to know the provisions of his policy." Stephens v. Audubon Ins. Co., 665 So. 2d 683, 686 (La. App. 2 Cir. 1995).[9] Louisiana law thus differs sharply from Minnesota and certain other jurisdictions.[10] The words "reasonable expectations" can have a very different meaning in different jurisdictions.[11] See Stephen J. Ware, "A Critique of the Reasonable Expectations Doctrine," 56 U. Chi. L. Rev. 1461, 1467-74 (1989) (explaining three different approaches to the reasonable expectations doctrine).

Even if there were an ambiguity that could not be otherwise resolved, Plaintiffs and their amicus fail to explain how an objectively reasonable insured could expect a homeowners' policy to provide flood coverage. Based on "the premiums paid and the purpose and nature of [the] insurance" (see La. Ins. Guar. Ass'n, 630 So. 2d at 768), an objectively reasonable insured familiar with homeowners' coverage would know "that flood would be excluded by any insurance policy they purchased, as exemplified by the existence of the National Flood Insurance Program . . . ." Kish v. Ins. Co. of N. Am., 883 P.2d 308, 312-13 (Wash. 1994). See also Murray, 509 S.E.2d at 10 ("There are earthquakes or floods which cause a major catastrophe and

---

[8] Lewis v. Hamilton, 652 So. 2d 1327, 1330 (La. 1995); J.M. Brown Constr. Co. v. D&M Mech. Contractors, Inc., 222 So. 2d 93, 99 (La. App. 1 Cir. 1969); Jack v. Adriatic Ins. Co., 420 So. 2d 1292, 1293 (La. App. 3 Cir. 1982).

[9] See also T.H.E. Ins. Co. v. Larsen Intermodal Serv., Inc., 242 F.3d 667, 674 (5th Cir. 2001); Dobson v. Allstate Ins. Co., 2006 WL 2078423, at *9 (E.D. La. July 21, 2006) (Vance, J.).

[10] As explained in prior briefing, in Murray v. State Farm Fire & Cas. Co., 509 S.E.2d 1 (W. Va. 1998), West Virginia appears to have followed an "adhesion contract version" of the reasonable expectations doctrine in its treatment of the anti-concurrent causation clause, similar to that of Minnesota. (ISO Insurers' Supp. Br., at 25.)

[11] Plaintiffs cite Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co., 682 P.2d 388 (Ariz. 1984), where the court adopted a unique approach to the reasonable expectations doctrine under which an insured "does not assent to a term if the [insurer] has reason to believe that the [insured] would not have accepted the agreement if he had known that the agreement contained the particular term," such as if the term is "bizarre or oppressive" or "eliminates the dominant purpose of the transaction." Id. at 396-97. Plaintiffs also rely on the law of New Jersey, under which "[i]n exceptional circumstances, 'even an unambiguous contract has been interpreted contrary to its plain meaning so as to fulfill the reasonable expectations of the insured.'" Gibson v. Callaghan, 730 A.2d 1278, 1283 (N.J. 1999).

wreak damage to everyone in a large area rather than one individual policyholder. When such happens, the very basis upon which insurance companies operate is said to be destroyed.").

**Question 3: Reasonable Expectations is a Question of Law**

The amicus brief agrees with Defendants that the reasonable expectations doctrine, where applicable, is a question of law. (Amicus Supp. Br., at 11-12.) Plaintiffs disagree, suggesting that reasonable expectations "is tantamount to his [i.e., the insured's] intentions when purchasing the policy," which is an issue of fact. (Pfs.' Supp. Br., at 7.) This is incorrect -- the reasonable expectations doctrine looks to the expectations of an objectively reasonable policyholder; it is not based on the subjective intentions of the plaintiffs. La Ins. Guar. Ass'n, 630 So. 2d at 764 (perspective of "a reasonable insurance policy purchaser"); Coleman, 418 F.3d at 517 (same).[12]

**Question 4: The Anti-Concurrent Causation Clause Makes Clear That There is No Coverage Even if Negligence Contributed to Plaintiffs' Losses**

Plaintiffs contend that the anti-concurrent causation clause would have no effect if the word "flood" did not encompass a large-scale inundation caused by negligence. This assertion would only be true if and only if: (1) a large-scale inundation caused by negligence is not a "flood"; and (2) the losses were caused exclusively by negligence, i.e., if the levees spontaneously failed of their own accord, with no contribution from "natural" causes. Plaintiffs, however, ignore their concession of the obvious fact that "what we're talking about is damages that flowed from a hurricane." (Transcript, at 83.) The winds and waves generated by Hurricane Katrina indisputably contributed to the flooding and levee breaches.[13] Plaintiffs do not and

---

[12] Dixon v. First Premium Ins. Group, 934 So. 2d 134 (La. App. 1 Cir. 2006), cited by Plaintiffs, did not even mention the reasonable expectations doctrine. It appears to involve a dispute as to the facts of the loss.

[13] The amicus has conceded that wind was a cause of Plaintiffs' losses (Transcript, at 83), and has also recognized that the words "whether wind driven or not" in the Water Damage Exclusion exclude any damage from a wind-driven flood. (Amicus Br., at 6.) The language "whether driven by wind or not" simply reaffirms what is already clear from the anti-concurrent causation provision specifying that "[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss," and the weather conditions exclusion

cannot suggest that the city would have flooded if there had been no hurricane. The anti-concurrent cause clause, therefore, remains applicable even if negligence contributed to the loss. Sweeney v. City of Shreveport, 584 So. 2d 1248, 1251 (La. App. 2 Cir. 1991), writ denied, 589 So. 2d 1057 (La. 1991).

**Question 5: The Anti-Concurrent Causation Clause is Unambiguous**

The amicus continues to argue that the anti-concurrent causation clause is unenforceable because it is contrary to the "efficient proximate cause" doctrine. (Amicus Supp. Br., at 12-13.) Neither Plaintiffs nor the amicus, however, address Sweeney, which upheld the use of anti-concurrent causation language in Louisiana (584 So. 2d at 1251), or any of the caselaw in the 17 other jurisdictions that have upheld the use of anti-concurrent causation language to contract out of the efficient proximate cause doctrine. (See ISO Insurers' Supp. Br., Ex. A.)

The amicus incorrectly suggests that, under the anti-concurrent causation clause, Defendants could refuse to pay for damage caused exclusively by wind simply because floodwaters also impacted the same home. (Amicus Br., at 14-15). As Plaintiffs recognize (Pfs.' Supp. Br., at 10), the ISO Insurers are not taking that position. The anti-concurrent causation clause applies only to the "loss caused directly or indirectly by . . . Water Damage." Damage directly attributable to wind is covered, but Plaintiffs do not allege that Defendants failed to pay for any such damage.[14] (Petition, ¶¶ 3, 4, 7, 10.)

Plaintiffs and their amicus again rely heavily on Tuepker v. State Farm Fire & Cas. Co., 2006 WL 1442489 (S.D. Miss. May 24, 2006) and Leonard v. Nationwide Mut. Ins. Co., 438 F.

---

specifying that there is no coverage "if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above [including flood] to produce the loss." (App. at INS 10, 56, 97, 137, 172.)

[14] In several hypotheticals, the amicus brief suggests that the Policies would exclude: (1) damage caused by lightning if it were accompanied by rain; (2) damage caused by rain during a hurricane; and (3) damage caused by water from melting snow infiltrating through an opening created by the weight of ice and snow. (Amicus Supp. Br., at 16.) In all of these cases, the damage would be covered by the ISO Insurers' Policies at issue in this case. Rain water is not excluded by those policies unless it is of sufficient quantity to become a "flood" or "surface water."

Supp. 2d 684 (S.D. Miss. 2006). As the Court is well aware, Judge Senter concluded that the damage alleged in both of those cases was "attributable in part to wind, in part to rain, and in part to storm surge." Tuepker, at *3; see also Leonard, 438 F. Supp. 2d at 689. Judge Senter simply held that there was no coverage for damage "directly attributable to water in the form of a 'storm surge,'" but that non-flood damage attributable directly to wind and wind-driven rain was covered. Tuepker, at *4; see also Leonard, 438 F. Supp. 2d at 693.[15]

Plaintiffs and their amicus have argued that Judge Senter found the anti-concurrent causation clause ambiguous in Leonard. (Pfs.' Supp. Br., at 9; Amicus Supp. Br., at 16-17.) That is not true, and is a misreading of Leonard. Judge Senter held that an anti-concurrent causation clause identical to that in the ISO Policies was unambiguous, explaining that the words "loss," "such a loss" and "the loss" in that clause refer only to the "damage caused by rising water during Hurricane Katrina," not any separate damage caused exclusively by wind. Id. at 693. In other words, "[t]he wind damage is covered; the water damage is not." Id. (emphasis added). It is true that Judge Senter did find an ambiguity in the "Weather Conditions" exclusion, but only to the extent that the exclusion could theoretically be read to exclude damage caused exclusively by wind. Id. at 694; see also Tuepker, at *5 (finding an ambiguity in the weather conditions exclusion only "to the extent State Farm contends that the hurricane itself . . . would constitute a weather condition that would completely relieve State Farm of liability").[16]

---

[15] Buente v. Allstate Ins. Co., 422 F. Supp. 2d 690 (S.D. Miss. 2006) (Senter, J.) reached the same conclusion, holding that the policy provided coverage for damage that was directly attributable to wind and wind-driven rain, but did not provide coverage for damage attributable to flooding. Id. at 696-97.

[16] In Tuepker, Judge Senter concluded that the State Farm anti-concurrent causation clause (different from that in the ISO Insurers' Policies) was ambiguous only to the extent that it "purport[s] to exclude coverage for wind and rain damage, both of which are covered losses under this policy, where an excluded cause of loss, e.g., water damage, also occurs." Tuepker, at *5. This analysis is inapplicable to the ISO Insurers' policy language, which is identical to the language that Judge Senter found unambiguous in Leonard. In any event, the ISO Insurers do not contend that their Policies exclude non-flood damage caused directly by wind (or rain entering through an opening caused by wind damage). Those issues are simply not implicated by the Petition in this case.

Plaintiffs and their amicus have confused Leonard's discussion of the anti-concurrent causation clause with its discussion of the Weather Conditions exclusion.

In this case, Plaintiffs are seeking coverage only for water damage (see Petition, ¶¶ 3, 4, 7, 10), and the ISO Insurers do not contend that the Policies exclude discrete damage caused exclusively by wind. Moreover, as Judge Senter recognized, a finding of ambiguity does not permit a court to simply disregard the policy language altogether -- the court must apply the most reasonable of the two reasonable interpretations. See Leonard, 438 F. Supp. 2d at 694 (concluding that the "most reasonable interpretation" of the policy was that "this policy provides coverage for windstorm damage" which is "not negated merely because an excluded peril (in this case storm surge flooding) occurs at or near the same time").

**Question 6: If the Inundation Was Not a "Flood," It Would Be an "Ensuing Loss" Under the Faulty Work Exclusion, But The Court Should Not Reach That Question**

Plaintiffs, their amicus, and Defendants all agree that, if the inundation of Plaintiffs' property were deemed not to be a "flood" because it was caused exclusively by third-party negligence, the inundation would then be an "ensuing loss" under the Faulty Work Exclusion. The Court should not reach this question, however, because there clearly was a "flood." The ensuing loss clause is expressly inapplicable where the ensuing loss, i.e., the flood, is excluded.

The amicus suggests that the "ensuing loss" clause renders coverage "illusory" because it does not actually "give back" any coverage. (Amicus Br., at 19 n.4.) That is not true and makes no sense at all. There are many circumstances in which an ensuing loss would be covered, such as where faulty workmanship causes a fire, explosion, or accidental discharge of water from a

plumbing system. Louisiana courts and courts throughout the United States have applied ensuing loss clauses in accordance with their plain terms.[17]

**Question 7: The Phrase "Any Property Whether On or Off the Residence Premises" in the Faulty Work Exclusion is Not Limited to Insured Property**

Plaintiffs and their amicus contend that the word "property" in the phrase "any property whether on or off the residence premises" in the Faulty Work Exclusion means only insured property. They fail to recognize, however, that the only coverage provided for property away from the residence premises is for personal property (Coverage C), and that the Faulty Work Exclusion applies only to Coverages A and B. If the phrase "property . . . off the residence premises" meant only insured property off the residence premises, it would be meaningless because Coverages A and B do not provide coverage for property away from the residence premises. Moreover, where the Policies refer to the property insured thereunder, they use the term "covered property," or the context makes clear that covered property is being referred to.[18]

As explained at oral argument (Transcript, at 25-27), there is no merit to the amicus' contention that the Faulty Work Exclusion is overly broad and "absurd" because it would apply if "a car crashed into the policyholders' house as a result of faulty brakes" or a similar event occurred. (Amicus Supp. Br., at 21.) The hypotheticals suggested by the amicus are examples of ensuing losses resulting from faulty work, which would be covered by the Policies.[19]

---

[17] See Holden v. Connex-Metalna, 2000 WL 1876338, at *6 (E.D. La. Dec. 21, 2000) (Duval, J.) (discussing caselaw on ensuing loss clauses, concluding that loss at issue was covered as an ensuing loss); see also Capelouto v. Valley Forge Ins. Co., 990 P.2d 414, 419 (Wash. Ct. App. 1999) (explaining operation of ensuing loss clause); Fiess v. State Farm Lloyds, 2006 WL 2505995, at *6 (Tex. Aug. 31, 2006) (same).

[18] See, e.g., App. at INS 92-93 (term "covered property" used in coverage for debris removal, reasonable repairs, fire department service charge, property removed, collapse, and glass or safety glazing material), INS 97-98 (term "covered property" used in duties after loss and loss settlement provision).

[19] Courts have held that the exclusion applies where the faulty work occurs away from the insured premises. Waldsmith v. State Farm Fire & Cas. Co., 283 Cal. Rptr. 607, 608 (Cal. Ct. App. 1991); El Rincon Supportive Servs. Org., Inc. v. First Nonprofit Mutual Ins. Co., 803 N.E.2d 532, 538 (Ill. App. Ct. 2004). Neither Plaintiffs nor their amicus have cited any caselaw to the contrary.

Dated this 18th day of September, 2006.

Respectfully submitted,

Ralph S. Hubbard III, T.A., La. Bar. # 7040
Joseph P. Guichet, La. Bar # 24441
Seth A. Schmeeckle, La. Bar # 27076
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

Attorneys for The Standard Fire Insurance Company (incorrectly named as Travelers Insurance Company and St. Paul Travelers Insurance Company), Hartford Insurance Company of the Midwest (incorrectly named as Hartford Insurance Company) and Hanover Insurance Company

Christopher W. Martin (pro hac vice)
Texas Bar 13057620
Federal ID 13515
Martin R. Sadler (pro hac vice)
Texas Bar 00788842
Federal ID 18230
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

Attorneys for Hartford Insurance Company of the Midwest (incorrectly named as Hartford Insurance Company)

Stephen E. Goldman (pro hac vice)
Wystan M. Ackerman (pro hac vice)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone: (860) 275-8255
Facsimile: (860) 275-8299

Attorneys for The Standard Fire Insurance Company (incorrectly named as Travelers Insurance Company and St. Paul Travelers Insurance Company)

Paul E. B. Glad (pro hac vice)
Kevin P. Kamraczewski (pro hac vice)
Andrew R. Greene
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Attorneys for Hanover Insurance Company

Neil C. Abramson (21436)
Nora B. Bilbro (22955)
Curt L. Rome (29406)
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534

Telephone: (504) 566-1311
Facsimile: (504) 568-9130

Attorneys for Unitrin Preferred Insurance Company, erroneously identified as Kemper Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Joint Reply Memorandum of Defendants The Standard Fire Insurance Company, Hartford Insurance Company of the Midwest, Hanover Insurance Company and Unitrin Preferred Insurance Company in Response to Supplemental Memoranda of Plaintiffs and Amicus Curiae has been served upon all known counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this 18th day of September, 2006.