

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 SEP 18  P 4: 49

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | *<br>*<br>*<br>*<br>* | CIVIL ACTION<br>NO. 05-4182 "K"(2)<br>JUDGE DUVAL<br>MAG. WILKINSON |
| PERTAINS TO<br>INSURANCE (2:05-cv-06323) Vanderbrook | *<br>*<br>* | |

### MEMORANDUM IN OPPOSITION TO SUPPLEMENTAL BRIEF OF PLAINTIFFS AND SUPPLEMENTAL BRIEF OF AMICI CURIAE

Fee_____
Process_____
X  Dktd_____
   CtRmDep_____
   Doc. No_____

829338v.1

## TABLE OF CONTENTS

Question No. 1:   State Farm's Water Damage Exclusion is Not Ambiguous. ...............................1

Question No. 2:   The Reasonable Expectations Doctrine is Inapplicable. ...................................4

Question No. 3:   The Determination of Reasonable Expectations is a Question of Law. ............6

Question No. 4:   The Anti-Concurrent Cause Provision Applies to Bar Coverage Even if the Water Damage Exclusion Does Not Include Negligently-Caused Floods. .6

Question No. 5:   The Anti-Concurrent Cause Provision Is Not Ambiguous. ...............................7

Question No. 6:   If Negligently-Caused Flooding Were Erroneously Held Not To Be Excluded, the Resulting Damage Would Be a Covered Ensuing Loss Only If Third-Party Negligence Were the Sole Cause of the Flooding..........................9

Question No. 7:   The "Property" Referred to in the Faulty Work Exclusion Need Not Be Insured..................................................................................................................10

829338v.1

**Question No. 1:** ***State Farm's Water Damage Exclusion is Not Ambiguous.***

Plaintiffs and Amici contend that State Farm's Water Damage exclusion is ambiguous because it does not define "flood" and fails to expressly state that "flood" includes negligently-caused floods. Plaintiffs' Supplemental Memorandum ("Pls. Supp.") at 1; Amici Curiae's Supplemental Memorandum ("AC Supp.") at 4. Thus, they argue, the exclusion must be read to exclude only loss caused by "naturally-occurring" floods. In making this argument, they fail to cite a single case holding any water damage exclusion ambiguous and make no attempt to distinguish the wealth of authority to the contrary. Their contentions must be rejected.

First, the fact that a policy term is undefined does not render it ambiguous. *See, e.g., American Deposit Ins. Co. v. Myles*, 783 So. 2d 1282, 1287 (La. 2001) (giving undefined policy term "its generally prevailing meaning"); *McKittrick v. La. Health Serv. & Indem. Co.*, 843 So. 2d 577, 580 (La. App. 2 Cir. 2003). Moreover, as discussed in State Farm's Post-Hearing Memorandum ("SF Supp."), courts have consistently held that the term "flood" as used in water damage exclusions is plain and unambiguous, and that its "generally prevailing meaning" includes all types of floods, whatever their cause.[1] SF Supp. at 4-5.

Plaintiffs' cited cases do not support their argument. As discussed at length in State Farm's initial memorandum, *Murray v. State Farm Fire & Casualty Co.*, 509 S.E.2d 1 (W. Va. 1998), is incorrectly decided, distinguishable, and contrary to Louisiana law. *See* SF Supp. at 6 n.7, 24-25. And *Riche v. State Farm Fire & Casualty Co.*, 356 So.2d 101, 103-04 (La. App. 1

---

[1] Courts in other contexts also recognize that the undefined term "flood" is all-encompassing and that its ordinary or generally understood meaning includes both naturally-occurring and negligently-caused floods. *See, e.g., Burlison v. United States*, 627 F.2d 119, 121-122 (8th Cir. 1980) (United States immune from suit under Flood Control Act barring liability for "any damage from or by floods or flood waters" in connection with flood control project; court rejected plaintiff's argument that statutory immunity did not apply to "man-made flood caused solely by the negligence of the government" rather than by natural disaster); *Fla. East Coast Ry. Co. v. United States*, 519 F.2d 1184, 1191-92 (5th Cir. 1975) (under Flood Control Act, federal government immune from liability for negligently-designed levee system that drew surface water under railway roadbed, damaging railway and train; court rejected plaintiff's argument that immunity applied "only with respect to natural, as opposed to artificially precipitated floods," as well as plaintiff's attempt to characterize damage as surface water rather than "floods or flood waters").

Cir. 1978), has no bearing on the issues here. First, *Riche* analyzed an earlier version of State Farm's Water Damage exclusion, which did not include the anti-concurrent cause lead-in language, and is distinguishable on that ground alone.[2] Moreover, the court said nothing about whether the exclusion was ambiguous or whether it included negligently-induced floods; rather, it simply held that the loss in question (damage to a boat swamped by storm-driven waves while on a lake) was not excluded because there was no "flood," *i.e.*, no water had "covered areas not ordinarily covered by water." *Id.* at 104.

Even if the term "flood" in the Water Damage exclusion did not by itself unambiguously exclude loss from negligently-caused floods, two other policy provisions do. First, the anti-concurrent cause provision, which excludes coverage for "any loss" that would not have occurred in the absence of flood, "regardless of the cause of" the flood, precludes coverage for *all* flood loss, whether or not negligence was a causal factor. SF Supp. at 5-6. Second, the "acts or omissions" exclusion provides that State Farm does not cover specified losses, including those described in the Water Damage exclusion, "regardless of whether" various acts of third-party negligence "(a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss." As courts in Louisiana and elsewhere have recognized, similarly worded provisions on their face unambiguously exclude all specified loss, including loss resulting from flood, whether or not third-party negligence played any part in causing the loss. SF Supp. at 6-7. Plaintiffs and Amici do not even attempt to address the numerous cases addressing these critical policy provisions.

---

[2] "[I]n interpreting an insurance policy based on prior jurisprudence, the court must carefully compare the language in the policy under scrutiny with that of the policies construed in the prior cases because a difference in verbiage may dictate a difference in outcome." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994) ("*LIGA*").

Plaintiffs make a further argument based on the premise that "a homeowner's policy and the NFIP policy dovetail to provide a homeowner complete coverage as to water damage, such that the loss will be covered by either the homeowner's policy or the NFIP policy." Pls. Supp. at 3. According to them, the Standard Flood Insurance Policy ("SFIP") issued under the NFIP "does not include floods caused by third-party fault" and, thus, demonstrates that the homeowners policies do. Putting aside the fact that non-coverage under the SFIP does not equate to coverage under the homeowners policy, the SFIP definition of "flood" is not limited by the possible role of human conduct.[3] Moreover, although certain SFIP exclusions focus on human conduct, none has the effect of eliminating all coverage for negligently-caused flood damage. *See, e.g.*, 44 C.F.R. Pt. 61, App. A(1), art. V.D.4.b, V.D.9-10 (excluding coverage in certain cases where *insured's* conduct caused or exacerbated loss).

The NFIP has in fact paid benefits where third-party fault may have caused the flooding. For example, in the late 1970s and early 1980s, the NFIP paid almost $100 million for flood losses in St. Bernard and Jefferson Parishes, even though the federal government had concluded that third-party "nonfeasance or malfeasance had caused the flooding." *See United States v. Parish of St. Bernard*, 1984 U.S. App. LEXIS 25870 (5th Cir. 1984); *United States v. Parish of St. Bernard*, 756 F.2d 1116, 1118-19 (5th Cir. 1985) (same). *See also United States v. Vicon Constr. Co., Inc.*, 575 F. Supp. 1578, 1579 (S.D.N.Y. 1983) (NFIP benefits paid where third-party negligence allegedly caused flooding).

Similarly, FEMA did not hesitate to make clear after Katrina that SFIPs would cover flood losses resulting from levee failures. Indeed, within weeks of the hurricane, it announced

---

[3] "Flood, as used in this flood insurance policy, means: 1. A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from: a. Overflow of inland or tidal waters; b. Unusual and rapid accumulation or runoff of surface waters from any source; c. Mudflow. . . ." 44 C.F.R. Pt. 61, App. A(1), art. II.A.1.

expedited procedures for handling flood claims "for the area of flooding caused by the failure of levees in the New Orleans area, resulting in flooding from Lake Pontchartrain."[4] Nowhere did FEMA indicate that payment could not be made unless and until there were a determination of no third-party fault.[5] In short, Plaintiffs have it backwards: the flood losses here are clearly and explicitly *covered* under the SFIP, and clearly and explicitly *excluded* under State Farm's policy.

**Question No. 2:** *The Reasonable Expectations Doctrine is Inapplicable.*

In arguing that the Court's hypothetical would not comport with an insured's reasonable expectations, both Plaintiffs and Amici fail to acknowledge, as this Court has recognized, that Louisiana courts may consider an insured's "reasonable expectations" *only* if the policy provision at issue is first found to be ambiguous.[6] *Holden v. Connex-Metalna*, 2001 WL 963413, at *5 (E.D. La. Feb. 2, 2001); *LIGA*, 630 So. 2d at 764 n.9; *see* La. Civil Code art. 2045. As discussed in State Farm's initial brief, State Farm's policy unambiguously excludes coverage for flood, "regardless of the cause of" the flood, so the prerequisite to invocation of the reasonable expectations doctrine simply does not exist here.

---

[4] *See* Exhibit A, FEMA Bulletin W-05054, dated September 21, 2005, at Attachment -A p. 1, *available at* http://bsa.nfipstat.com/wyobull/w-05054.pdf.

[5] It is also significant that FEMA rates areas more favorably for NFIP purposes if they are protected by levees designed, constructed and maintained to certain standards. *See* 44 C.F.R. § 64.3 (flood insurance rate maps), § 65.10 (role of levees in flood insurance maps). It is readily apparent that FEMA views the flood program to be more exposed in areas where levees are poorly designed, constructed, or maintained – i.e., susceptible to losses through third-party negligence – precisely because flood losses that result from such conditions are covered.

[6] *See* Pls. Supp. at 6; AC Supp. at 8. Louisiana does not follow the original version of the reasonable expectations principle as articulated by Professor (now Judge) Keeton, which allows *unambiguous* policy language to be "trumped" by the insured's reasonable expectations of coverage, even though "a painstaking study of the policy provisions would have negated those expectations." *See Allen v. Prudential Prop. & Cas. Ins. Co.*, 839 P.2d 798, 801 (Utah 1992). Because Arizona is one of only a handful of states that follows this form of the doctrine (*see Philadelphia Ins. Co. v. Barerra*, 21 P.3d 395, 402-03 (Ariz. 2001)), Plaintiffs' citation to *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 395 (Ariz. 1984), and their argument based on that case, is misplaced. And although the Supreme Court of Louisiana has quoted Professor Keeton's language in describing the reasonable expectations doctrine, the context of the court's discussion makes plain that the court was applying the doctrine **after** having determined that the contract language at issue was ambiguous. *See LIGA*, 630 So. 2d at 763-64.

- 4 -

Although not part of their reasonable expectations analysis, Plaintiffs simply assume, without benefit of analysis or explanation, that the Water Damage exclusion is ambiguous. But beyond stating abstract principles of law, they make no effort to explain why, even if that were so, the insureds' reasonable expectations would be defeated by enforcing the Water Damage exclusion. In fact, their only substantive point is provided by way of an example of a driver who negligently strikes a tree, causing the tree to fall onto and damage insured property. Since that loss would be covered, Plaintiffs state, it would be unreasonable to have a different coverage outcome if the driver instead struck a water tank, which then flooded the insured's house. The distinction, of course, lies in the plain language of the policy: assuming the loss-producing event is indeed a "flood," as both the Plaintiffs' proposed scenario and the Court's question posit, then the loss would be excluded because flood, unlike falling trees, is specifically excluded from coverage. *See Travelers Indem. Co. v. Powell Ins. Co.*, 1996 WL 578030, at *3 (E.D. La. Oct. 4, 1996) (enforcing water damage exclusion and noting that court cannot engage in "the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor . . . make a new contract for the parties . . . ."). By the same token, damage caused by falling fragments of the water tower itself – a scenario much more closely analogous to the falling tree scenario – would be covered.

On this point, Amici make a telling statement: "Louisiana homeowners would not expect nor appreciate that their coverage would vary or depend on whether or not the cause of the loss was a natural event or a man-made occurrence."[7] AC Supp. at 10. That is precisely State Farm's

---

[7] Amici's brief also contains a lengthy argument, based on *Murray*, concerning the "heightened expectations" of those who purchase all-risk policies. *See* AC Supp. at 7, 8-10. This is not the law in Louisiana, where contracts are interpreted according to their "clear and explicit" terms. La. Civil Code art. 2045; *see Maloney v. Oak Builders, Inc.*, 235 So. 2d 386, 390 (1970) ("Where a clause of a contract is clear and unambiguous, the letter of it should not be disregarded, under the pretext of pursuing the spirit.").

point. If the cause of the insured's loss is *flood*, the coverage outcome cannot – and does not – depend on whether that flood was "a natural event or a man-made occurrence."

**Question No. 3:** *The Determination of Reasonable Expectations is a Question of Law.*

Plaintiffs assert that the resolution of an insureds' reasonable expectations is a question of fact, while Amici contend it is a question of law. Amici are right. Curiously, Plaintiffs do not even purport to analyze or cite cases addressing the reasonable expectations doctrine. Rather, their authorities deal with the issue of *intent* – a fact-based, but fundamentally different, exercise from determining whether a policy is ambiguous and, if so, "ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *LIGA*, 630 So. 2d at 764. The latter inquiry is a question of law, based solely on the objectively reasonable expectations of a hypothetical insured.

Quite apart from the issue of *who* determines the insured's reasonable expectations is the question of *when* it is appropriate to do so. As discussed above, the insured's reasonable expectations become relevant only when the challenged policy provision is ambiguous. Because that is not the case here, there is no basis for the Court to inquire into the insureds' reasonable expectations in this case.

**Question No. 4:** *The Anti-Concurrent Cause Provision Applies to Bar Coverage Even if the Water Damage Exclusion Does Not Include Negligently-Caused Floods.*

Plaintiffs contend that the anti-concurrent cause provision is "of no moment if the flood exclusion does not apply to third-party negligence" because in that circumstance "there would be no excluded risk combined with an insured risk." Pls. Supp. at 8. What Plaintiffs' response does not acknowledge, however, is that this statement is true only if third-party negligence is the *only* cause of the flooding – an assumption that is belied here by both Plaintiffs' Petition and by the indisputable facts of the Hurricane Katrina losses. To the extent the flooding was caused even in

- 6 -

part by natural causes, as is clearly the case here, "then there *would* be [an] excluded risk [naturally-occurring flood] combined with an insured risk," and the anti-concurrent cause language would operate to preclude coverage. *See Sweeney v. City of Shreveport*, 684 So. 2d 1248, 1251 (La. App. 2 Cir. 1991) (citing anti-concurrent cause language in applying ordinance or law exclusion to bar coverage for negligent demolition of insured's house).

**Question No. 5:** *The Anti-Concurrent Cause Provision Is Not Ambiguous.*

The centerpiece of Plaintiffs' and Amici's arguments that the anti-concurrent cause provision is ambiguous is that, if enforced, the provision has the effect of overriding the efficient proximate cause rule. However, the Louisiana Second Circuit Court of Appeal has already considered the issue and found language functionally identical to State Farm's to be unambiguous and enforceable. *See Sweeney*, 684 So. 2d at 1251 ("It may be true that . . . negligence contributed to the demolition of the house; however, the exclusion by its own terms still applies."). This Court has reached the same conclusion. *Prytania Park Hotel v. General Star Indem. Co.*, 896 F. Supp. 618, 623-24 (E.D. La. 1995) (Jones, J.) (noting that "the policy language specifically states that losses arising from enforcement of an ordinance or regulation . . . are excluded 'regardless of any other cause or event that contributes concurrently or in any sequence to the loss" and thus finding it "inconsequential" whether application of ordinance was caused by fire). Literally dozens of other courts around the country have done the same. *See also* SF Mem. at p. 16 & n.18.

As Louisiana courts and courts around the country recognize, the efficient proximate cause rule is simply a rule of interpretation to be used in the absence of policy language to the contrary. *See Roach-Strayhan-Holland Post v. Continental Ins. Co.*, 112 So. 2d 680, 683 (La. 1959) (noting that efficient proximate cause rule applies where policy is "not otherwise limited or defined"). Where, as here, the exclusionary language "unambiguously excludes coverage for

- 7 -

any loss caused in any way by" an excluded peril such as flood, "that exclusion is enforceable," and the rule does not apply.[8] *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 314 (Ala. 1999); *accord Duensing v. State Farm Fire & Cas. Co.*, 131 P.3d 127, 134 (Okla. App. 2005) (holding that "the reasonable expectations doctrine is not applicable to the lead-in clause" of State Farm's policy and that it "clearly and unambiguously avoids application of the efficient proximate cause doctrine"). Neither Plaintiffs nor Amici even acknowledge these cases, much less attempt to address them.

Plaintiffs do, however, acknowledge that State Farm does not interpret its policy to "deny coverage *in toto* by way of the clause." Pls. Supp. at 10. As discussed in its initial memorandum, State Farm *pays* for demonstrable, discrete damage caused by non-excluded perils like wind.[9] This reality disposes of Amici's contention that the anti-concurrent cause provision renders the policy illusory (AC Supp. at 14-15), as well as the Court's concern that the anti-concurrent cause language might allow insurers "to deny coverage *in toto* for a covered peril."[10]

---

[8] Plaintiffs contend that "the clause purports to take away coverage provided elsewhere in the policy." Pls. Supp. at 8. Of course, that is true of every exclusion in an "open perils" policy such as Coverage A [or the dwelling coverage] of the State Farm Policy at issue, which by its terms "provides coverage for all losses not expressly excluded by the policy." *Julian v. Hartford Underwriters Ins. Co.*, 110 P.3d 903, 905 n.2 (Cal. 2005). Nor is there anything wrong with that. An insurer is free to exclude whatever risks it wishes to exclude, so long as it does so clearly and unambiguously. *Stamper v. Liberty Mut. Ins. Co.*, 897 So. 2d 142, 143 (La. App. 1 Cir. 2004).

[9] It is on this point that Judge Senter went awry in *Leonard v. Nationwide* and *Tuepker v. State Farm* (*see* Pls. Supp. at 10), erroneously concluding that "an insured whose dwelling lost its roof in high winds and at the same time suffered an incursion of even an inch of water could recover nothing under his Nationwide policy." Because the roof damage in Judge Senter's hypothetical was not caused in any way by flood, that damage would be covered.

[10] Amici also posit a variety of "absurdities that would flow" from application of the anti-concurrent cause language. AC Supp. at 15-16. First, as discussed immediately above, Amici have misinterpreted the policy. Moreover, and equally important, the question here is not whether the insureds' homes were damaged by lightning unaccompanied by rain, hurricane unaccompanied by rain, or planes crashing into water towers. The only question is whether damage caused by flooding attributable in part to natural forces and in part to alleged third-party negligence is excluded from coverage. Thus, even if "a set of facts could be imagined wherein the policy language would lead to an absurd result," that does not matter unless it "lead[s] to an absurd result in *this* case." *Cloud v. Nat'l Automotive Ins. Co.*, 875 So. 2d 866, 870 (La. App. 3 Cir. 2004) (emphasis added). Because it does not, "the parties are bound by the policy," *id.*, and Plaintiffs' losses are excluded.

**Question No. 6:** *If Negligently-Caused Flooding Were Erroneously Held Not To Be Excluded, the Resulting Damage Would Be a Covered Ensuing Loss Only If Third-Party Negligence Were the Sole Cause of the Flooding.*

As discussed in State Farm's Post-Hearing Memorandum, if the Court finds that the Water Damage exclusion does not apply to negligently-caused flood, a flood caused solely by third-party negligence would constitute a covered "ensuing loss." However, this result applies only if the flood is caused *solely* by third-party negligence – and the flooding of New Orleans during Hurricane Katrina certainly does not answer to that description. Accordingly, even assuming that "flood" means only naturally-occurring flood, the result here would be that third-party negligence "directly or indirectly cause[d], contribute[d] to or aggravate[d]" the naturally-occurring flood. Thus, Hurricane Katrina flood losses would be excluded by virtue of the anti-concurrent cause language. The excluded peril of flood is not transformed into a covered peril simply because levees or dikes intended to hold back floodwaters resulting from a hurricane fail to do so as a result of improper construction or maintenance.

In any case, however, the effect of third-party negligence is specifically addressed in the acts or omission exclusion, which expressly applies to losses "described in paragraphs 1. and 2.," including "flood." Thus, the policy clearly and explicitly addresses what happens when a flood is directly or indirectly caused by, contributed to, or aggravated by third-party negligence. It is thus impossible to reconcile the acts or omissions exclusion with an interpretation of "flood" restricted to "naturally-occurring" flood. Because the provisions must be read together (La. Civil Code art. 2050), the term "flood" cannot be artificially limited by reading into it a restriction eliminating floods caused by third-party negligence. *See* SF Supp. at 4-7, 19-21.

**Question No. 7:** *The "Property" Referred to in the Faulty Work Exclusion Need Not Be Insured.*

Plaintiffs' brief fails to address the fact that State Farm's policy language is different from the ISO policy language quoted by the Court in Question No. 7. As shown in State Farm's initial brief, State Farm's policy language makes clear that "property" for purposes of the faulty works provision is not limited to insured property, because (1) the relevant language ("any property (including land, structures or improvements of any kind) whether on or off the residence premises") expressly includes land, which is not insured under the policy; and (2) when the policy intends to refer to insured property, it does so explicitly. SF Supp. at 21-22.

Moreover, the word "any" indicates that the policy means *any and all* property without restriction. *See, e.g., Archer-Daniels-Midland Co. v. Phoenix Assur. Co.*, 936 F. Supp. 534, 541 (S.D. Ill.) ("any suppliers" in insurance policy denotes "unrestricted group"); *Kroll Constr. Co. v. Great Am. Ins. Co.*, 594 F. Supp. 304, 306 (N.D. Ga. 1984) (in exclusion for the "cost of making good any faulty or defective workmanship," "'any' means 'all'").[11] Plaintiffs make the irrelevant argument that "an insurable interest is necessary required [sic] to be had in the property covered by the policy." Pls. Supp. at 12. However, the issue addressed by the policy language in question is not what property is insured under the policy, but whether faulty workmanship on property not insured under the policy is excluded, when that faulty workmanship causes or contributes to an otherwise excluded loss to the insured's property. The breadth of the language used – "any property (including land, structures, or improvements of any kind) whether on or off the residence premises" – does not allow an interpretation restricting "any property" to "property insured under the policy."

---

[11] *Cf. Zabrucky v. McAdams*, 28 Cal. Rptr. 3d 592, 599-600 (Cal. App. 2005) (rejecting interpretation of "any structure" that would limit meaning to structures "of a special type" rather than "of whatever kind"; stating "'any' is defined to mean 'of whatever kind' or 'without restriction'") (citing *Merriam-Webster's College Dict.* (10th ed. 1993)).

*[signature]*

Wayne J. Lee, 7916
Stephen G. Bullock, 3648
Lesli D. Harris, 28070
Sarah H. Barcellona, 28080
Of
STONE PIGMAN WALTHER
  WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

Attorneys for State Farm Fire and Casualty Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Opposition to Supplemental Brief of Plaintiffs and Supplemental Brief of Amici Curiae has been served upon each counsel of record, via electronic mail and by United States mail, postage pre-paid and properly addressed, on September 18th, 2006.

*[signature]*

- 11 -

829338v.1