

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 SEP 19  PM 5: 02

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
### NEW ORLEANS DIVISION

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES * | | CIVIL ACTION NO. 05-4182 |
| CONSOLIDATED LITIGATION * | | |
| * | | SECTION "K" |
| * | | |
| PERTAINS TO: * | | MAGISTRATE (2) |
| ALL LEVEE, MRGO * | | |
| RESPONDER CASES AND TO * | | JUDGE DUVAL |
| NO.   05-4181 * | | |
| * | | MAGISTRATE WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### CERTAIN PLAINTIFFS'
### MEMORANDUM IN OPPOSITION
### TO THE MOTIONS TO DISMISS
### FILED BY CSX CORPORATION AND
### CSX TRANSPORTATION, INC.
### PURSUANT TO RULES 12(b)(5) and 12(b)(6),
### AND IN OPPOSITION TO THEIR MOTION TO SEVER

**MAY IT PLEASE THE COURT:**

Two defendants, who were added to this litigation prior to the one (1) year anniversary of Hurricane KATRINA, namely CSX Corporation and CSX Transportation, Inc., have filed motions to dismiss on the pleadings, essentially arguing that both of them should be dismissed from this litigation, because (1) plaintiffs' Complaint fails to allege any breach of duty or negligence, (2) federal statutes regulating railroads preempt anything else, and that they are, therefore, entitled to do (or not do) as they please, regardless of damage to innocent bystanders, and (3) plaintiffs' Complaint fails to meet

the requirements for pleading a class action.   The CSX defendants also aver that defendant CSX Corporation is a holding company having no minimum contacts with Louisiana, and should be dismissed because CSX Corporation has not been properly served.   The CSX defendants also move to sever the claims asserted against them. Plaintiffs respectfully submit that the Motions to Dismiss are specious, that plaintiffs should be entitled to discover the true status and possible involvement of CSX Corporation with the evidentiary issues in this litigation, and that plaintiffs are in the process of curing any deficiency in service of process.   Plaintiffs further aver that it would not promote judicial economy or be in the interests of the orderly administration of justice to sever plaintiffs' claims against the CSX defendants.

### A.       THE MOTIONS TO DISMISS ON THE MERITS ARE SPECIOUS

The CSX defendants boldly assert, "[P]laintiffs' complaint alleges no duty owed by CSXT to plaintiffs"[1] and "Plaintiffs have failed to plead negligence against CSXT".[2] Both of those assertions are patently false, and are directly contradicted by the contents of plaintiffs' specific allegations against CSX Corporation and CSX Transportation, Inc.:

> At all times pertinent CSX Corporation and/or CSX Transportation, Inc. owned, operated and controlled the right-of-way, roadbed and railroad track, which penetrated the New Orleans Flood Defense System on the East and West banks of the Inner Harbor Navigation Canal (a/k/a the Industrial Canal).   During Hurricane KATRINA these penetrations of the New Orleans Flood Defense System, which CSX Corporation and/or CSX Transportation, Inc. had negligently

---

[1]   CSXT Motion to Dismiss, Article 2, p. 2.
[2]   CSXT Memorandum in Support, Conclusion, p. 17.

built and maintained, and negligently failed to adequately close, served as conduits for storm surge within the Inner Harbor Navigation Canal (a/k/a the Industrial Canal) to enter the Greater New Orleans Metropolitan Area, and to cause damage to plaintiffs and to those similarly situated to plaintiffs. Accordingly, CSX Corporation and/or CSX Transportation, Inc. is/are liable unto plaintiffs and to those similarly situated to plaintiffs pursuant to applicable federal and/or state law, including, without limitation, those federal and/or state laws previously invoked. Plaintiffs' Complaint, as supplemented and amended by Twelfth Supplemental and Amending Complaint, Article XIXXV, p.3.

Thus for the CSX defendants to aver that plaintiffs alleged no breach of duty, and failed to plead that the CSX defendants were negligent is simply not correct.[3]

Without arguing about whether the positions advanced by the CSX defendants raise issues of fact, which should preclude what amounts to summary judgment on the claims asserted against them, it is undisputed that CSX owned the roadbed, ballast and track which penetrated the New Orleans Flood Protection System in at least one location on the West side of the Industrial Canal, immediately to the South of the I-10 Highway bridge. Prior to joining CSX Corporation and CSX Transportation, Inc. as defendants, undersigned counsel for plaintiffs performed due diligence which included, in part, reviewing a comprehensive report, entitled: "Investigation of the Performance of the New Orleans Flood Protection Systems in Hurricane KATRINA on August 29, 2005", which was funded, in part, by the National Science Foundation, and which was authored by a

---

[3] Do the CSX defendants really believe that alleging that penetrating the New Orleans Flood Protection System, failing to close the penetration, and filling the penetration with permeable material fails to suggest some breach of duty to the public, who then suffers damages therefrom?

group which calls itself the "Independent Levee Investigation Team".  Chapter 8 of that report, critical portions of which are attached as Exhibit No. 1 (A-E),  described in some detail the CSX railroad crossing on the West side of the Industrial Canal, immediately to the South of the I-10 highway bridge, which is the focus of the Motions to Dismiss by the CSX defendants.[4]  A steel floodgate, which should have been part of the flood protection system at this location, had been damaged by a train several months prior to Hurricane KATRINA, and the gate was away for repairs at the time of the hurricane.  The report reflects that in lieu of "this missing steel gate, a temporary sandbag "levee" was erected across the opening".  However, at some point during the storm, "this sandbag "levee" section either was pushed over by the rising storm surge or was overtopped and simply washed away."

The report also revealed that "erosion occurred at the junction between the railroad embankment fill and the fill supporting an adjacent roadway passing over the earth and Federal levee at this location."  The flow of water which caused erosion of the roadway "appears to have passed initially through the pervious gravel ballast supporting the train rails (which is the "low point" at this complicated location), and then undermined the less competent fill beneath the roadway.", according to the report.  The report also reflects that "The resulting flow through the eroded breach then passed to the end board (protected) side and made its way into the adjacent neighborhood."

Although "[T]he erosion and scour at this location did not erode the base (lips) of these breach features to a level below mean sea level", flow was able to pass through

---

[4]   Arguably, the same CSX railroad penetrations which occurred on the West side of the Industrial Canal also occurred on the East side, with the same results.

"this pair of features for a number of hours" when the flow eventually ceased because the storm surge in the Industrial Canal subsided.

The most critical conclusion of the Independent Levee Team Investigators, who authored the foregoing report, was that:

> The failure at this site is an excellent example of a failure produced by multiple adjoining jurisdictions, and a lack of overall coordination of the various system elements constructed and operated by each. The Federal levee system was "penetrated" here by both the railway and the Port roadway, and the interactions of the pervious railway ballast and the highly erodable roadway fill combined to fail the overall flood protection system at this location. Lack of coordination, and lack of authoritative oversight, of these disparate organizations and their disparate system components was a critical problem here.

Additionally, plaintiffs' Complaint, as amended, made general allegations about the design, construction, operation, inspection and maintenance of components of the New Orleans Levee Flood Protection System, including those portions along the Industrial Canal, such as the CSX penetration at issue. That the "penetration" which plaintiffs complain of herein contributed to the system failure at this location, and to flooding of portions of the City, is apparent from a reading of plaintiffs' Complaint from a reading of Exhibit No. 1, and from a reading of the Affidavit of one of plaintiffs' experts, David Rosenberg, P.E., appended hereto and marked Exhibit No. 2.

Plaintiffs respectfully submit that plaintiffs' allegations against CSX are more than sufficient to comply with the provisions of Rule 8, and to place CSX on notice of the claims asserted against them in order to allow CSX to defend accordingly.

**B.    THE FEDERAL LEGISLATION CITED BY THE CSX DEFENDANTS TELL US NOTHING.**

While invoking Federal legislation that the CSX defendants claim preempt plaintiffs' claims against them, the CSX defendants do not tell us how the cited

legislation might apply to provide redress of plaintiffs' grievances against the CSX defendants, or even how the cited Federal legislation allowed, authored or permitted CSX to penetrate the New Orleans Flood Protection System with its railroad tracks, to fail to close an opening in the system in a competent manner, and to construct a roadbed out of material which was water permeable, and which served as a conduit for the flow of water through the track roadbed, eventually eroding a vehicular roadway adjacent to the CSX penetration into the system. In short, it would appear that the CSX defendants, and their lawyers, have simply "lifted" portions of briefs from crossing accident cases against their clients, in other venues, and thrown those arguments at plaintiffs, hoping that some of the arguments will stick.

Railroad law is railroad law. Admiralty and maritime law may be impacted in this case, as well as construction law, flood control law, and rivers and harbors law. It is too early in this litigation to tell precisely which body of federal law will apply in this case.

### C.   PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23

The CSX defendants aver that plaintiffs "fail to plead the most elementary requirements of Rule 23". Plaintiffs respectfully disagree, because they have specifically identified themselves as representative of the following classes of people:

A.   Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered bodily injury, physical pain and suffering, anguish, anxiety, mental suffering, fear, fright, despair, hopelessness and emotional distress as a result of defendant's intentional and negligent malfeasance, misfeasance and nonfeasance prior to and after Hurricane KATRINA.

B.      Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered loss of or damage to property, both real and personal, and/or diminution in the value of their property as a result of defendant's intentional and negligent malfeasance, misfeasance and nonfeasance prior to and after Hurricane KATRINA.

C.      Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered purely economic losses as a result of defendant's intentional and negligent malfeasance, misfeasance and nonfeasance prior to and after Hurricane KATRINA, including lost income, lost profits and increased living expenses.

D.      Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered pollution damage, including bodily injury, contamination of real or personal property, lost revenues, profits and earning capacity due to pollution, and damages for subsistence use, as well as damages for the cost of containment, clean-up and remediation and restoration, and for damage to the environment.

It is respectfully submitted that the CSX defendants simply failed to read plaintiffs' pleading; otherwise they would not have asserted this frivolous motion.

**D.     CSX CORPORATION SHOULD NOT BE DISMISSED**

Attached to this Memorandum and marked Exhibit No. 3 is Correspondence to Counsel for the CSX defendants addressing the status of CSX Corporation, which is alleged to be a holding company which owns 100% of the stock of CSX Transportation, Inc. At this juncture we still do not know which corporate entity procures insurance for

subsidiaries of CSX Corporation, who formulates their Safety or Environmental and Response Plans, or who plans their construction and inspection and maintenance activities.

If the above-referenced report marked Exhibit No. 1 (A-E) is correct, then someone within the CSX "family" failed to do his or her duty, allowing the CSX track roadbed to serve as a conduit for the flow of water from the Industrial Canal, which eventually eroded the Port of New Orleans roadbed adjacent to the CSX track location. This, in turn, contributed directly to flooding of the City, according to the Independent Levee Investigation Team and plaintiffs' expert, Mr. Rosenberg.

Plaintiffs respectfully submit that they should be allowed to discover what, if any, role CSX Corporation played in the above-described decision-making process.

**E.    PLAINTIFFS' CLAIMS AGAINST THE CSX DEFENDANTS SHOULD NOT BE SEVERED**

Citing no law, the CSX defendants have urged the Court, in the alternative, to sever plaintiffs' claims against them from other claims in this litigation.  It is respectfully submitted that the Court should not order plaintiffs' claims against the CSX defendants severed, because to do so would not be in the best interests of judicial economy and the administration of justice.  The CSX railroad penetration of the New Orleans Flood Protection System on the West side of the Industrial Canal is a "textbook" example of a location where multiple jurisdictions met and overlapped.  Immediately adjacent to the CSX railroad track and roadbed was a vehicular roadway, believed to have been constructed by the Board of Commissioners for the Port of New Orleans.  The Board of Commissioners for the Orleans Levee District presumably had some responsibility with respect to the retaining wall structure adjacent to the CSX track, and with respect to the

"missing" steel floodgate, which also may have involved CSX and others. Who owned the canal bottom of the Industrial Canal is unknown, but the United States Army Corps of Engineers regulated and permitted dredging activity in the Canal. The Port of Commissioners for the Port of New Orleans also played some role in the operation of the Canal and its locks. All of the above-identified parties are co-defendants of the CSX defendants, and it is respectfully submitted that plaintiffs' claims against the CSX defendants should not be severed, because CSX is as important in determining "jurisdiction" over components of the flood control system in the Industrial Canal as any other defendant.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully submit that the Motions filed by the CSX defendants should be denied.

Respectfully submitted,


**LAW OFFICES OF
ASHTON R. O'DWYER, JR.
Counsel for Plaintiffs**

By:_____
**Ashton R. O'Dwyer, Jr.
In Proper Person
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. 504-561-6561
Fax. 504-561-6560**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via E-mail, this _____ day of September 2006.