# Investigation of the Performance of the New Orleans Flood Protection Systems in Hurricane Katrina on August 29, 2005

## Volume I: Main Text and Executive Summary

by

R. B. Seed, R. I. Abdelmalak, A. G. Athanasopoulos, R. G. Bea, G. P. Boutin, C. Cheung, B. D. Collins, D. Cobos-Roa, J. Cohen-Waeber, L. Ehrensing, Harder, M. S. Inamine, K. S. Inkabi, A. M. Kammerer, D. Karadeniz, Nimala, J. M. Pestana, J. Porter, K. Rhee, M. F. Riemer, K. Roberts, A. V. Govindasamy, X. Vera-Grunauer, J. Wartman



EXHIBIT 1-A

Case 2:05-cv-04182-SRD-JCW   Document 1202-1   Filed 09/19/06   Page 2 of 9

Independent Levee
Investigation Team

New Orleans Levee Systems
Hurricane Katrina
May 22, 2006

That leaves only three candidate breach sites that might have caused the drop in water level rise shown at about 5:00 a.m. in Figure 8.3.

One of these is the breach on the east side of the IHNC at the CSX railroad crossing and roadway crossing over the levee, as described in Chapter 7.

A second candidate site is the pair of breaches that occurred closely adjacent to each other at the south end of the main Port of New Orleans, as described in Section 8.2.3. These were large breaches, and might well have had sufficient flow as to account for the drop in water level rise shown in Figure 8.3. In addition, these sections were constructed of highly erodeable lightweight shell-sand fill, and might well have eroded early due to through-passage of seepage flows through the "earthen" levee embankment as the storm surge rose (but prior to full overtopping of the levee embankment at this location.) This is discussed a bit further in Section 8.2.3.

A third candidate breach site is the west bank of the IHNC at the CSX railroad crossing, as described in Section 8.2.2. At this location, a steel "storm gate" on rollers had been damaged by a train accident several months prior to Hurricane Katrina, and was away for repair. In lieu of this missing gate, a sandbag levee crest section had been constructed in the opening left by the missing floodgate. The sandbags washed out at some point during Katrina, and this may have been the early breach reflected by the gage readings shown in Figure 8.3. At this same site, flow along the juncture between the railroad embankment and the adjacent embankment fill supporting an asphalt paved roadway passing over the earthen Federal levee resulted in erosion and scour that produced a second breach feature at essentially this same site, as is also described in Section 8.2.2.

In the end, based on the information currently available to this investigation team, any of these three candidate breach sites might have been responsible for the for the observed gage level drops shown in Figure 8.3.

8.2.2   The CSX Railroad Breach

As shown in Figure 8.2, the CSX railroad crosses the IHNC channel immediately to the south of the I-10 Highway bridge. On both the east and west banks of the IHNC, the railroad passes through the levee system by means of a gate through a structural concrete floodwall. Steel gates are used to close these openings during storms.

Figure 8.4 shows the concrete structural floodwall on the west side of the IHNC, at the east edge of the Orleans East Bank (Downtown) protected area. Note that there is no steel gate shown in this photograph. The steel gate at this location had been damaged by a train accident several months prior to Katrina's arrival, and it was away for repair at the time of the hurricane.

In lieu of this missing steel gate, a temporary sandbag "levee" was erected across the opening. At some point during the storm this sandbag "levee" section either was pushed over by the rising storm surge or was overtopped and washed away.


EXHIBIT 1-B

In addition, erosion occurred at the juncture between the railroad embankment fill and the fill supporting an adjacent roadway passing over the earthen federal levee at this location, as shown in Figure 8.5. This roadway passed over the levee crest to provide access to port facilities on the outboard (water) side of the Federal levee system. This is shown in Figure 8.5, which is a view from the inboard side of this breach showing the erosion of the roadway fill. The elevated I-10 highway bridge is at the left of this photo, and the CSX railroad is just to the left (north) of the roadway. The roadway fill at this location was comprised largely of highly erodeable lightweight "shell sand" fill; a material not suitable for levee fill (especially without sheetpile cutoff or similar features to prevent erosion.) The flow appears to have passed initially through the pervious gravel ballast supporting the train rails (which is the "low point" at this complicated location), and then undermined the less competent fill beneath the roadway. The resulting flow through the eroded breach then passed to the inboard (protected) side and made its way into the adjacent neighborhood.

The erosion and scour at this conjoined pair of breach locations did not erode the base (lips) of these breach features to a level below mean sea level. Accordingly, although flow passed through this pair of features for a number of hours, the flow eventually ceased as the storm surge (water level rise in the IHNC) eventually subsided.

The failure at this site is an excellent example of a failure produced by multiple adjoining jurisdictions, and a lack of overall coordination of the various system elements constructed and operated by each. The Federal levee system was "penetrated" here by both the railway and the Port roadway, and the interactions of the pervious railway ballast and the highly erodeable roadway fill combined to fail the overall flood protection system at this location. Lack of coordination, and lack of authoritative oversight, of these disparate organizations and their disparate system components was a critical problem here.

### 8.2.3 Breaches and Distressed Sections at the Port of New Orleans

Three breaches occurred to the south of the CSX railroad breach on the west side of the IHNC at the main Port of New Orleans. Several additional levee and floodwall sections were "distressed" or damaged, but did not fully breach along this same section. These breach and distress sites along this reach are indicated as the suite of "Industrial Canal Overwash Sites" in Figure 8.2.

As the storm surge raised the water levels in Lake Borgne, and then pushed the elevated waters (and flow) westward through the "funnel" at the east end of the east/west trending GIWW/MRGO channel between new Orleans East and St. Bernard Parish, large flows and a major rise in water elevations pushed westward along the GIWW/MRGO channel to this channel's "T" intersection with the IHNC channel, and raised the water levels within the IHNC channel.

This resulted in rising waters rushing directly at the west bank of the IHNC, coupled with overall raising of the water levels throughout the IHNC region, and this produced distress, and several breaches, on the west side of the IHNC in the general vicinity of the main Port of New Orleans. The sub-sections that follow will describe each of these in turn.

EXHIBIT 1-C

★ : Levee Breach   ★ : Distressed Levee Section

Figure 8.2: Plan View of the Orleans East Bank (Metro) protected area showing approximate depth of flooding on September 2, 2005.

[Modified after Mashriqui, 2006]

EXHIBIT 1-D



by Rune Storesund

..5: View from the inboard side of the CSX Railroad breach site from Figure 8.4 showing scour of the roadway fill adjacent to the railway embankment fill.





EXHIBIT 1-E

## AFFIDAVIT

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

    **BEFORE ME,** the undersigned authority, personally came and appeared:

### DAVID ROSENBERG, PE

who, being first duly sworn, did depose and say as follows:

1. That he is a professional engineer in the field of Civil Engineering;

2. That he received a BS in Civil Engineering from the University of California of Berkeley in 1996;

3. He has personally reviewed various governmental and other documents and reports, including the May 22, 2006 report entitled: "Investigation of the Performance of the New Orleans Flood Protection Systems in Hurricane KATRINA on August 29, 2005", including particularly Chapter 8 of that report, and Subpart 8.2.2, entitled: "The CSX Railroad Breach".

4. That he has personally inspected what has been identified as "The CSX Railroad Breach" on the West side of the Industrial Canal, immediately to the South of the I-10 Highway bridge, and he agrees with the observations and conclusions contained in subpart 8.2.2 of the above-referenced report; and

5. It is his opinion that the missing steel floodgate at the time of KATRINA, subsequent failed sandbag closure, and pervious base materials all


EXHIBIT 2

contributed to the failure of the New Orleans Flood Protection System at this location, and to flooding of portions of the City of New Orleans.

_____
DAVID ROSENBERG

Sworn to and subscribed before me,

this 19th day of September 2006.

_____
NOTARY PUBLIC

**LAW OFFICES OF
ASHTON R. O'DWYER, JR.
ONE CANAL PLACE
365 CANAL STREET
SUITE 2670
NEW ORLEANS, LA 70130
Telephone: (504) 561-6561
Facsimile: (504) 561-6560
E-Mail: AROD@odwyerlaw.com**

September 8, 2006

**VIA FACSIMILE**

Jonathan C. McCall, Esq.
Brent A. Talbot, Esq.
Chaffe McCall, L.L.P.
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300

      Re:    In Re: KATRINA Canal Breaches
               Consolidated Litigation
               C.A. No. 05-4182 "K" (2)

Gentlemen:

      I have reviewed the pleadings which you recently filed, and am requesting that you agree to continue the hearing date on your motions from the present date of September 20th. I am endeavoring to cure any deficiencies in service. I do not believe you will prevail on your other motions because of the conclusions of the Independent Levee Investigation Team, memorialized in the report which we reviewed in my office on Monday, August 28th, and more particularly Chapter 8. As to the dismissal of CSX Corporation, I have noted that the corporation owns 100% of the stock of CSX Transportation Company, Inc. If you can provide me the documentary evidence that CSX Transportation Company, Inc. has liability insurance coverage in a form and in an amount necessary to satisfy my client's claims, and that the underwriters have not asserted any coverage defenses, then I will consider voluntary dismissal of CSX Corporation.



EXHIBIT 3

September 8, 2006
Page 2

I look forward to hearing from you.

Yours very truly,


Ashton R. O'Dwyer, Jr.

AROD/vtb
cc:   Dwight LeBlanc, Jr., Esq.