UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | § | CIVIL ACTION |
| | § | |
| In Re: KATRINA CANAL BREACHES | § | NO. 05-4182 "K"(2) |
| CONSOLIDATED LITIGATION | § | |
| | § | |
| | § | |
| | § | |
| PERTAINS TO:    INSURANCE | § | JUDGE DUVAL |
| *CHEHARDY*, 06-1672, 06-1673, 06-1674 | § | |
| | § | MAG. WILKINSON |

## THE CHEHARDY REPRESENTATIVE POLICYHOLDERS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' RULE 12(B)(6) MOTIONS TO DISMISS

Representative Policyholders Gladys Chehardy, Daniel and Jacquelyn Fontanez, Larry and Glendy Forster, Kenneth and Judy Maier, Randy and Lori Gervais, Andre and Marlin Mauberret, Debbie and Dave Strawn, Stephanie and Brad Body, new Orleans Flooring Supply, Inc., Patricia Brown, Marie Fatheree, Katrina Daniels, Lionel and Edna Jones, Karen Lewis, Shane Sylvester, Austra Zapata, Sabrina Perkins, Eldridge Pollard, Michael Peterson, Wendell Glation and Mack Barham (collectively, "the Representative Policyholders"), by and through their undersigned counsel, submit this Memorandum in Opposition to the Motions to Dismiss filed by the Insurance Company Defendants in these actions. For all of the following reasons, Defendants' Motions should be denied in their entirety.

I.   **INTRODUCTION**

Currently pending before the Court are Defendants' Motions to Dismiss which seek to deprive the class of policyholders represented by the Representative Policyholders of the insurance coverage which they purchased from the Defendants. This document responds to Documents Nos. 903, 923, 932, 936, 939. Furthermore, Defendants ask this Court to interpret their unclear and ambiguous policies without any extrinsic evidence and in a novel and completely unsupported manner that both provides an unwarranted broad interpretation to exclusions that is contrary to the express language contained in the policies, while simultaneously ignoring and eviscerating Louisiana's "efficient proximate cause" doctrine and the objectively reasonable expectations of Louisiana homeowners' insurance policyholders.

On a more fundamental level, Defendants ask the Court to make these sweeping rulings on unclear policy language and the fact-intensive issue of causation prior to any discovery taking place in this action. At a minimum, the class of policyholders is entitled to conduct discovery on the issue of what was the efficient proximate cause of their losses and, therefore, the Court cannot rule that, as a matter of law, the policyholders cannot prove any set of facts upon which they would be entitled to relief. Moreover, that this litigation involves the interpretation of an insurance contract does not obviate the policyholders' right to conduct discovery as Louisiana courts have routinely considered extrinsic evidence in interpreting insurance policies to determine or to resolve any ambiguities such as those contained in Defendants' standard homeowners' insurance policy. The ambiguities which exist in Defendants' policies not

only warrant, but require, discovery in this matter, and Defendants cannot short-cut that process by way of their Motions.

The practical implications if Defendants' Motions are granted would result in potentially hundreds of thousands of homeowners' insurance policyholders being deprived of the full coverage on which their insurance premiums were based and paid and reasonably expected to receive for losses caused by hurricanes, including Hurricane Katrina. Thus, in addition to seeking to shirk their collective contractual obligations to policyholders, Defendants are asking the Court to contravene and eviscerate the "efficient proximate cause doctrine" as interpreted and applied by the Louisiana courts. While such a result would be erroneous at any time, prematurely ruling on issues of this significance without the benefit of the mandatory full factual record would be unjust, unfair and contrary to existing law.

## II.  LEGAL STANDARD

### A.  The Standard For Determining A Motion To Dismiss Pursuant To Rule 12(b)(6).

In determining a motion to dismiss pursuant to Rule 12(b)(6), the Court must look only to the pleadings and accept all well-pleaded allegations as true. St. Paul Ins. of Bellaire v. Afia Worldwide Ins., 937 F.2d 274, 279 (5th Cir. 1991); McMillon v. Corridan, 1998 WL 560334 (E.D. La. 1998). A motion to dismiss must be denied unless it appears certain that the plaintiff cannot prove any set of facts whatsoever that would entitle the plaintiff to relief. Rodriguez v. United States, 66 F.3d 95, 96 (5th Cir. 1995). Moreover, the Court must view the pleadings in the light most favorable to the non-

movant and all reasonable inferences must similarly be drawn in favor of the non-moving party. Bellizan v. Easy Money of La., Inc., 2001 WL 121909 (E.D. La. 2001).

### B. Louisiana's Rules Regarding Contract Interpretation Allow The Court To Avoid The Absurd Results That Would Occur If Defendants' Interpretations Applied.

Under well-established Louisiana jurisprudence and the Civil Code, when absurd results will result from a reading of a contract's terms, the contract is ambiguous and "the courts <u>must</u> construe the provision in a manner consistent with the 'nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.'" Doerr v. Mobil Oil Corp., 774 So.2d 119, 124 (La. 2000) (citing La. Civ. Code. Art. 2053)(emphasis added). Moreover, Louisiana courts must construe insurance policies "to effect, not deny coverage, and any ambiguity should be interpreted in favor of the [policyholder.]" Id. (citing Yount v. Maisano, 627 So.2d 148, 151 (La. 1993); Garcia v. St. Bernard Parish Sch. Bd., 576 So.2d 975, 976 (La. 1991); Breland v. Schilling, 550 So.2d 609, 610 (La. 1989); Sherwood v. Stein, 259 So.2d 876, 878 (La. 1972)). More specifically, "equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer" if a provision is susceptible to two or more reasonable interpretations. Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003).

Furthermore, if a policy or its provisions are ambiguous, Louisiana courts apply the "reasonable expectations" doctrine. Holden v. Connex – Metalna, 2001 WL 96413 (E.D. La); Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 764 (La. 1994); Breland, 550 So.2d at 610-11. Under the "reasonable expectations" doctrine, "'courts will protect the [policyholders] reasonable expectations .

. . regarding the coverage afforded by insurance contracts even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer.'" Louisiana Ins. Guar. Ass'n, 630 So.2d at 764, n.9 (quoting R. Keeton and A. Widiss, Insurance Law § 6.13 (1988)).[1]  Courts applying the reasonable expectations doctrine have further explained its underlying rationale as follows:

> "The doctrine of protecting the reasonable expectations of the insured is closely related to the doctrine of contracts of adhesion. Where there is unequal bargaining power between the parties so that one party controls all of the terms and offers the contract on a take-it-or-leave-it basis, the contract will be strictly construed against the party who drafted it. Most courts recognize the great disparity in bargaining power between insurance companies and those who seek insurance. Further, they recognize that, in the majority of cases, a lay person lacks the necessary skills to read and understand insurance policies, which are typically long, set out in very small type and written from a legalistic or insurance expert's perspective. Finally, courts recognize that people purchase insurance relying on others, the agent or company, to provide a policy that meets their needs. The result of the lack of insurance expertise on the part of [policyholders] and the recognized marketing techniques of insurance companies is that 'the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."

Atwater Creamery Co. v. Western Nat. Mut. Ins. Co., 366 N.W.2d 271, (Minn. 1985) (quoting Keeton, Insurance Law Rights at Variance with Policy Provisions, 83 Harv. L. Rev. 961 (1970)).  It is against this analytical framework that the Court must interpret

---

[1] This standard is the same as that applied by the West Virginia Supreme Court in Murray v. State Farm Fire & Cas. Co., 509 S.E.2d 1 (W. Va. 1998). Just as there, this Court should also apply the doctrine where the insurance companies, like these here, are applying the policies' exclusionary provisions in an overreaching and unreasonable manner.

and analyze the policies at issue here, as well as evaluate the merits of the insurance industry's efforts to transform standard homeowner's coverage so narrowly and in a way so as to eliminate all types of coverage that every Louisiana homeowner reasonably expects their homeowners' coverage provides.

### III. ARGUMENT

#### A. Defendants' Water Damage Exclusions Are Ambiguous And Unenforceable.

##### 1. Defendants Water Damage Exclusions Do Not Define Flood In Any Manner And Make No Reference To Flooding Caused By Third-Party Negligence.

The Court must reject Defendants' untenable and unsupported argument that the Representative Policyholders' losses are excluded under the respective insurance policies because the water which entered the City of New Orleans as a result of third-party negligence simply does not constitute "flood" for purposes of Defendants' water damage exclusions. The policies sold by the Defendants do not define the term "flood" to include the breaking of levees or dams or to include water released due to the negligent maintenance, design or construction of such structures. Moreover, in none of the policies is the inundation of water resulting from the negligent acts of third parties specifically excluded. Consequently, the efficient proximate cause of the water entering the City of New Orleans is not a "flood" as the loss stems from the covered peril of third-party negligence. As such, Representative Policyholders' losses are covered losses under the insurance policies sold by Defendants.

The express language of the Insurance Company Defendants' water damage exclusions contain no specific reference to flooding caused by third-party

negligence, nor is the term "flood" defined in any manner to include, refer, incorporate or suggest flooding or water damage caused by third-party negligence. The Insurance Company Defendants have drafted vague policies containing generalized and undefined exclusionary language in order to do precisely what they attempt to do here: suggest after-the-fact interpretations of terms in order to exclude coverage otherwise provided for under their all-risk policies and to frustrate the reasonable expectations of Louisiana homeowner policyholders. As such, any ambiguities or failure to include terms or definitions within those policies must be construed against Defendants, who cannot simply rely upon their overreaching and unreasonable interpretations in order to avoid the coverage which was purchased and reasonably expected by policyholders. Cadwallader, 848 So.2d at 580.

The express language contained in the so-called "water damage" exclusions in the all-risk policies sold by Defendants The Standard Fire Insurance Company, Lexington Insurance Company, Liberty Mutual Fire Insurance Company, The American Insurance Company, Aegis Security Insurance Company, Auto Club Family Insurance Company and The Hanover Insurance Company ("ISO Defendants") states:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> **c.   Water Damage**, meaning:
>
> (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind.

(Appendix of ISO Defendants at INS 000011, INS 000071, INS 000110, INS 000155, INS 000199, INS 000357, INS 000406 and INS 000458). Similarly, State Farm's all-risk policy provides:

> 2. We do not insure under any coverage for loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually; involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these.
>
> * * *
>
> c. Water Damage, meaning:
>
> (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these all whether driven by wind or not[.]

(Exhibit A to State Farm's Motion at p. 10). Finally, Defendant Allstate's policy provides that it does not cover:

> 1. Flood, including but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.
>
> 2. Water or any other substance that backs up through sewers or drains.
>
> 3. Water or any other substance that overflows from a sump pump, sump pump well or any other system designed for the removal of subsurface water which is drained from a foundation area of a structure.
>
> 4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

(Exhibit A to Allstate's Motion at pp. ALST 00230-31).

Nowhere in Defendants' all-risk policies are the terms "water damage" or "flood" defined to include flooding or water damage caused by third-party negligence. The terms of any purported exclusionary provision of an insurance policy "must be such that it is clear who is insured and what is excluded" and it is the duty of the insurance company to specifically and clearly expressly define its terms and exclusions in drafting its policies. Talley, 760 So.2d at 1196. If, as here, an insurance company fails to define a pertinent term of the policy or exclusionary provision, the court must adopt the meaning of that term most favorable to the policyholders. Hendricks v. American Employers Ins. Co., 176 So. 2d 827 (La. Ct. App. Cir. 2 1965); Employers' Liability Assur. Corp. v. Enos Coal Corp., 457 F.2d 402 (7th Cir. 1972). Furthermore, one policy provision is not to be construed separately at the expense of disregarding other policy provisions. Billiot v. Terrebonne Parish Sheriff's Office, 735 So.2d 17, 24 (La. App. 1 Cir. 1999).

The Defendants' "water damage" exclusions are simply devoid of any definition of the word flood to include acts of third-party negligence. Of course, the ISO Defendants and State Farm attempted to include a reference to causation by way of the express inclusion of the language "whether wind driven or not," yet they chose not to include any language pertaining to, referring to or contemplating third-party negligence as an excluded cause of water damage. Moreover, Allstate's policy contains specific provisions excluding water which backs up from sewers or drains, overflows from sump pumps or similar devices and below surface water, but is silent as to water damage caused by the negligent acts of third-parties or which is released due to the failure of

levees or dams. Neither Allstate, nor the other Defendants, ever intended to exclude the type of losses suffered by the Representative Policyholders when they drafted and sold their policies to Louisiana homeowners'. Only now, faced with devastating losses caused by Hurricane Katrina, do the Defendants seek to have the term "flood" defined to include third party negligence in an effort to avoid their contractual obligations to Louisiana policyholders who suffered losses as a result of Hurricane Katrina and the ruptured levees.

Defendants had every opportunity to define the term "flood" or make express reference to third-party negligence in the water damage exclusion but failed to do so in drafting their all-risk policies. Consequently, under Louisiana's rules of construction, to the extent the Defendants seek to have the undefined term "flood" narrow their contractual obligations for coverage by including flooding caused by the acts of third-parties, the term must be construed against Defendants. Cadwallader, 848 So.2d at 580; Carrier v. Reliance Ins. Co., 759 o.2d 37, 43 (La. 2000). The Court is not required to engage in a "perversion of the words or the exercise of inventive powers" under the guise of contractual interpretation to enlarge or restrict the policy's provisions. Carrier, 759 So.2d at 43. That is precisely what the Defendants are asking the Court to do insofar as they suggest to have the equivocal term "flood" defined in a manner to include flooding caused by third-party negligence.

Finally, as is the case here, where a purported exclusion is unclear as to whether it applies solely to naturally-occurring events or also to man-made events, the exclusion is susceptible to more than one reasonable interpretation and, therefore, ambiguous. Murray v. State Farm Fire & Cas. Co., 509 S.E.2d 1 (W.Va. 1998). Thus,

PHIDOCS-50577.1                            - 10 -

even if the Court determines that the water damage or "flood" exclusion is subject to an interpretation that includes third-party negligent acts that result in flood, an equally reasonable interpretation exists and, therefore, the water damage or "flood" exclusion is ambiguous and unenforceable as a matter of law. <u>Talley v. Blue Cross Blue Shield of Louisiana</u>, 760 So.2d 1193, 1196 (La. App. 3d Cir. 2000).

      2.      **The NFIP Does Not Define "Flood" To Include Water Released As A Result Of Third-Party Negligence Nor Was The Failure Of The New Orleans Levee System Intended To Be Covered By The NFIP.**

There is no support for Defendants' position that the NFIP establishes that the undefined policy term "flood" includes water released from the New Orleans Levee System as a result of third-party negligence. The seminal definition of "flood," as defined by the Federal Government in connection with the NFIP, definitively refutes Defendants' position. As set forth in 44 C.F.R. § 59.1:

> **Flood or Flooding means:**
>
> (a) A general and temporary condition of partial or complete inundation of normally dry land areas from:
>
> (1) The overflow of inland or tidal waters.
>
> (2) The unusual and rapid accumulation or runoff of surface waters from any source.
>
> (3) Mudslides (i.e., mudflows) which are proximately caused by flooding as defined in paragraph (a)(2) of this definition and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water and deposited along the path of the current.
>
> (b) The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels or suddenly caused by

> an unusually high water level in a natural body of water, accompanied by a severe storm, or by an unanticipated force of nature, such as flash flood or an abnormal tidal surge, or by some similarly unusual and unforeseeable event which results in flooding as defined in paragraph (a)(1) of this definition.

44 C.F.R. § 59.1. Section (a)(1) provides the definition of "inundation" and lists three occasions whereby inundation is deemed a "flood," none of which include the negligent acts of third parties or water released due to the rupturing or failure of levee walls or dams. The NFIP regulations dictate what is a "flood" for purposes of obtaining flood insurance and the definition used in connection therewith cannot be ignored or rendered secondary to the novel theory proposed by Defendants. The NFIP regulations do not define "flood" to include water that is released from ruptured levee or dam walls or water that inundates an area due to the negligent acts of third parties, thus the Court should not redefine "flood" in a manner contrary to the NFIP itself by adopting Defendants' position.[2]

---

[2] In fact, a closer look at one of the cases relied upon by Defendants further demonstrates that, for purposes of insurance coverage and the interpretation of insurance policies, "flood" does not include water damage caused by the rupturing or failure of levees, dams or other structures or the negligent acts of third parties and that Defendants' argument regarding what constitutes a "flood" is erroneous. Defendants cite to Kane v. Royal Ins. Co. of America, 768 P.2d 678 (Colo. 1984), in support of their position. At the time Kane was decided 44 C.F.R. § 61.4(b) defined flood to include "damage from a general condition of flooding in the area which results from other than natural causes, such as the breaking of a dam." That regulation no longer provides a definition of "flood" and the sole definition of "flood" for purposes of the NFIP is provided in 44 C.F.R. § 59.1, as set forth above. That section does not define "flood" to include damage resulting from the breaking of a dam or other structure or any language similar to that upon which the Kane court relied. It is plainly evident that water escaping ruptured levees or dams was once considered "flooding" for purposes of the NFIP but such circumstances are no longer considered to be "flooding" as the express language once present is no longer present. 44 C.F.R. § 59.1 (2006). Quite simply, the release or inundation of water as a result of the rupturing of dams, levees or other structures is not included in any definition of "flood" in the Defendants' policies or by the Federal Government.

Moreover, Defendants' assertion that the availability of flood insurance through the NFIP would defeat or moot any reasonable expectation of coverage is fatally flawed and ignores the fact that the NFIP is predicated upon the levee system in New Orleans withstanding a hurricane and not failing due to faulty design, maintenance or construction. In making available and pricing insurance under the NFIP, the New Orleans levee system must be certified by the United States Army Corps of Engineers as sufficiently meeting the standard for a "100-year flood."[3] Moreover, in determining applicable rates and zones pertaining to flood insurance, FEMA and the NFIP presume that the flood protection system in New Orleans will be maintained.[4] Taken together, the certification requirement and the FEMA maps indicate that the NFIP does not contemplate flood insurance coverage for a situation such as this where third-party negligence causes the levees to fail and inundate the City of New Orleans with water. Thus, the reasonable expectation of the Louisiana policyholder would not have been, as Defendants suggest, that coverage for this type of water damage would be covered under the NFIP. Consequently, the Louisiana homeowner's reasonable expectation of coverage is not at all diminished by the existence of the NFIP because the NFIP presumes that the levee system would protect the City of New Orleans, which it failed to do here as a result of third-party negligence.[5]

---

[3] United States Army Corps of Engineers April 12, 2006 News Release, a copy of which can be viewed at http://www.hq.usace.army.mil/cepa/releases/neworleanslevees.htm.

[4] The flood map for Orleans Parish can be viewed at the following url, located on FEMA's website: http://map1.msc.fema.gov/idms/IntraView.cgi?KEY=23283733&IFIT=1.

[5] Moreover, the Louisiana all-risk policyholder cannot be held to have appreciated and understood the extensive and sophisticated interplay of the NFIP, the levee system certification and the availability of NFIP flood insurance as suggested by the Defendants.

### B. Louisiana Policyholders Would Reasonably Expect Coverage For Third-Party Acts Causing Water Damage To Their Property Under The All-Risk Homeowners' Policies They Purchased.

In purchasing all-risk homeowners' insurance coverage, Louisiana policyholders have a heightened expectation of coverage to their dwellings by way of the nature of all-risk insurance. As such, they would not reasonably expect losses caused by water damage resulting from third-party negligence to be excluded from coverage under such all-risk policies. As set forth above, nowhere in Defendants' all-risk policies are the terms "water damage" or "flood" defined to include the inundation of water caused by the negligent acts of third parties. Consequently, under a plain reading of the all-risk policy language drafted by Defendants and sold to policyholders, there is simply no objective or reasonable basis to say that a Louisiana homeowners' policyholder would have reason to believe that any flooding or water damage that resulted from the acts or negligent conduct of third parties would not be covered.

Under the reasonable expectations doctrine, "courts will protect the [policyholders'] reasonable expectations regarding the coverage afforded by insurance contracts even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." Louisiana Ins. Guar. Ass'n, 630 So.2d at 764. Here, even the most detailed, careful and thorough reading of Defendants' policies would not indicate to a policyholder that third-party negligence leading to flood or water damage would be expressly excluded under the policy. No such language exists. Consequently, absent such language, a Louisiana homeowner would reasonably expect that flooding which occurs as a result of third-