UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

XAVIER UNIVERSITY OF LOUISIANA          CIVIL ACTION NO. 06-0516

VERSUS                                   SECTION "R" MAG "2"

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA
*********************************************************************

## PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANT'S OPPOSITION TO ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Plaintiff, Xavier University of Louisiana ("Xavier"), respectfully submits this Reply Memorandum to the Opposition Memorandum filed by Defendant Travelers Property Casualty Company of America ("Travelers") to Xavier's Motion for Partial Summary Judgment regarding the purported "flood exclusion" contained in the policy of insurance issued by Travelers to Xavier. For the following reasons, Travelers has failed to raise an issue of genuine material fact with respect to Xavier's motion, and, accordingly, this Court should grant Xavier's motion.

1.  **TRAVELERS DOES NOT DISPUTE THE SOURCE OF THE GROUND WATER INUNDATION ON THE FIRST FLOOR OF THE XAVIER CAMPUS BUILDINGS.**

Before discussing those issues raised by Travelers in its opposition memorandum, Xavier begins with noting those issues not in dispute. Travelers does not dispute that the ground water which inundated the first floors of Xavier's campus resulted from breaches – not overtopping – of the 17th Street and London Avenue Canals following Hurricane Katrina. Similarly, Travelers does not dispute Marion Bracy's declaration that, following the rains and winds associated with Hurricane

1

Katrina, there was no standing water on the grounds of the Xavier campus or in the first floor of any of the buildings. Thus, these facts are uncontroverted for purposes of this motion for summary judgment.

**2. TRAVELERS ASKS THIS COURT TO CONSIDER THE MEANING OF THE TERM "FLOOD" IN ISOLATION AND NOT WITHIN THE CONTEXT OF THE WORDING OF THE PURPORTED EXCLUSION AND, IN DOING SO, IGNORES FUNDAMENTAL PRINCIPLES OF POLICY INTERPRETATION.**

Travelers' opposition focuses solely on the term "flood" in the purported exclusion, without consideration of the other terms in the same sentence. Words in an insurance policy cannot be read in isolation. As the Louisiana Supreme held in *Crabtree v. State Farm Insurance Co.*, 632 So. 2d 736 (La. 1994), an insurance "policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another." *Id.* at 741. Yet, this is exactly the analysis undertaken by Travelers in its discussion of what constitutes a "flood" within the meaning of its policy. Despite Travelers' disregard of the entire exclusion, this Court cannot ignore the fact that the term "flood" is followed by the terms "waves," "tides," "tidal waves," and "**overflow** of any body of water."

As Xavier noted – and Travelers fails to mention – a second fundamental precept of insurance policy interpretation is the maxim that "the specific controls the general." *Smith v. Burton*, 928 So. 2d 74, 79 (La. App. 1st Cir. 2005). In other words, the meaning of general terms in the policy will be restricted by other specific or more descriptive terms on the same subject. *See Baton Rouge Oil and Chemical Workers Union v. Exxonmobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002); *Breaux v. Rimmer & Garrett, Inc.*, 320 So. 2d 214, 219 (La. App. 3d Cir. 1975). This idea is reflected in the principles of *ejusdem generis* and *noscitur a socciis*. As demonstrated by Xavier in

2

its Supporting Memorandum, all of the terms in the policy exclusion following the word "flood" are natural events. Thus, the term "flood" for purposes of this policy must be construed to mean a natural – not man-made – occurrence.

Moreover, Travelers relies on the following definition of flood: "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be." Opp. Memo at 7. This definition is essentially that provided by Black's Law Dictionary. However, this Court should not follow the legal definition, but, rather, look to the every-day definition of the term. Other dictionaries, however, do not contain this definition of the term "flood." Miriam-Webster's Online dictionary, for example, defines "flood" as "a rising and **overflowing** of a body of water especially onto normally dry land" and "an overwhelming quantity or volume." *See* www.m-w.com/cgi-bin/dictionary (emphasis added). Here, the levees were breached, not overwhelmed, and there was no overflow of water.

Furthermore, Xavier's proffered limiting of "flood" to only natural events does not render the use of the other terms in the purported flood exclusion superfluous as Travelers suggests. Rather, the terms compliment each other. Each term defines a naturally occurring event. A "flood" within the meaning of the purported exclusion can result from an accumulation of "an overwhelming quantity or volume" of rain water in the street following heavy thunderstorms. This Court must afford a narrow interpretation to the flood exclusion in Travelers "all risks" insurance policy. It does not strain credibility to limit the meaning of "flood" to a naturally occurring event. Rather, that meaning is consistent with the contractual interpretation maxim that the specific terms – "waves," "tides," "tidal waves," and **overflow** of any body of water" – control the general term, "flood." For these reasons, Xavier requests that this Honorable Court grant its motion for partial summary

3

judgment holding that the purported flood exclusion is ambiguous as a matter of law and that it should be limited solely to naturally occurring events.

### 3. THE CASES CITED BY TRAVELERS FOR THE PROPOSITION THAT "FLOOD" APPLIES TO BOTH NATURAL AND MAN-MADE EVENTS ARE INAPPOSITE AND ARE NOT WORTHY OF CONSIDERATION BY THIS COURT.

Travelers cites numerous cases in its opposition memorandum for the proposition that the term "flood" has been held to apply to both natural occurrences and man-made events. However, a close reading of these cases does not support Travelers' contentions.

Consider, for example, the United States Eight Circuit Court of Appeals' decision in *TNT Speed & Sport Center, Inc. v. American States Insurance Co.*, 114 F.3d 731 (8th Cir. 1997). The plaintiff-insured in this case sought coverage from its insurer for damages caused by the overflowing of the Mississippi River in West Quincy, Missouri. The insured sought coverage on the basis that the flood resulted from an unknown third party's removal of sandbags and dirt from the levee surrounding the city from the rising river. Plaintiff argued that the efficient proximate cause of his loss was the third party's removal of the sand bags around the levee, and the defendant-insurer countered that the "anti-concurrent" cause clause precluded that argument. The district court held in favor of the insurer, and the insured appealed. In its decision affirming the district court, the Eighth Circuit gave sole consideration to that issue and held that the "anti-concurrent" cause clause defeated the efficient proximate cause doctrine and that the plaintiff's damages were excluded under the policy. *Id.* at 733. The Eighth Circuit never considered – nor was it asked to consider – whether the term "flood" referred to only naturally occurring events or man-made causes.

Similarly, whether "flood" means naturally occurring events not man-made events was never

brought to the court's attention in *Pakmark Corp. v. Liberty Mutual Insurance Co.*, 943 S.W.2d 256 (Mo. Ct. App. 1997), another case cited by Travelers. In *Pakmark*, the plaintiff-insured sought coverage for sewerage back-up into his building that occurred at the same time as water overflowing the Missouri River entered the insured's property. As in *TNT Speed & Sport Center*, the *Pakmark* court's sole concern was the relationship between the efficient proximate cause doctrine and the "anti-concurrent cause" clause. The court never addressed whether the term "flood" in the policy exclusion should be limited solely to naturally occurring events.

Travelers also cites this Court to *E.B. Metal & Rubber Industries, Inc. v. Federal Insurance Co.*, 444 N.Y.S.2d 321 (N.Y. App. Div. 1981), a third case that is wholly inapposite to the issues presented to this Court in Xavier's Motion for Partial Summary Judgment. At first glance, the facts of the present case and the facts before the *E.B. Metal & Rubber Industries* court are similar. There, a dike on a canal gave way, and water inundated the insured's property. Upon consideration of the policy's exclusionary language, the court held in favor of the insurer. The policy at issue excluded damages caused by "'flood meaning waves, tidal water or tidal wave, rising (including overflowing *or breaking of boundaries*) of lakes, reservoirs, rivers, streams or other bodies of water, whether driven by wind or not.'" The court simply found that the plaintiff's damages were excluded as long as there were "rising waters which break through boundaries and flow upon the insured's land to constitute a flood." *Id.* at 663. Such a result was consistent with the terms of the policy. There is no similar exclusion in the Travelers policy for the breaking of boundaries. Thus, this case is inapplicable, as it considered a much different exclusion.

None of the cases discussed above are applicable to the issues before the court. Xavier is not asking this Court to interpret the anti-concurrent cause clause. That clause is applicable only if this

5

Court were to determine, first, that there was an excluded cause of loss. Here, Xavier contends that there was not an excluded cause of loss because the damages resulting from ground water inundation on its first floors was not a "flood" as that term is defined in the policy because that term should only apply to naturally occurring events, not those resulting from man-made actions.

Travelers also refers this Court to the Colorado Supreme Court's decision in *Kane v. Royal Insurance Co. of North America*, 768 P.2d 678 (Col. 1989). That case, too, is distinguishable from the facts before this Court. In *Kane*, the Lawn Lake Dam failed, and the resulting flow of water damaged the plaintiff's properties. Plaintiffs sought coverage from their insurers, who denied coverage on the basis of a purported exclusion for damages caused by "flood." The insured argued to the court that there was a distinction between naturally and artificially caused floods, and that their loss was caused by an artificial "flood" that was covered under the policy. The insured relied on the fact that the dam was a man-made object, rather than a naturally occurring object. The supreme court refused to recognize the distinction and also noted that the body of water that caused the damage in this case had overflowed "'above the highest line of [its] ordinary flow.'" *Id.* at 682.

In the present case, however, the ground water inundating the first floor of Xavier's campus did not result from an "overflow" of a body of water. The levees at the 17th Street Canal and the London Avenue Canal were not overtopped. Those levees, as conclusively demonstrated by Xavier in its Motion for Partial Summary Judgment, failed. Xavier is not arguing that its losses resulted from a man-made cause simply because the levee protection system was man-made; rather, it is arguing that the levees failed because of man-made failures to ensure their the integrity of the levees. *Kane* is distinguishable from this case and should be disregarded.

Finally, Travelers cites numerous post-Hurricane Katrina decisions from this Court using the

term "flood." The terminology adopted by those cases should not affect the Court's consideration of these issues raised by Xavier in the present motion. Those cases did not discuss either the meaning of the term "flood" in the context of a policy exclusion or whether man-made occurrences resulting in the inundation of water can constitute such a "flood." Thus, Travelers cannot cite this Court to any cases holding that an inundation of water resulting from man-made causes constitute a "flood" within the meaning of an insurance policy exclusion.

**4.    XAVIER'S RELIANCE ON THE IPET REPORT WAS PROPER BECAUSE THAT REPORT SHOULD BE DEEMED TRUSTWORTHY AND A GOVERNMENT RECORD IN ACCORDANCE WITH THE EXCEPTION TO THE HEARSAY RULE PROVIDED BY RULE 803(8) OF THE FEDERAL RULES OF EVIDENCE.**

Travelers objects to Xavier's reliance on the IPET Draft Final Report prepared by the United States Army Corps of Engineers (the "Corps") because it is only a draft report subject to revision. The pertinent exception to the hearsay rule, Rule 803(8) of the Federal Rules of Evidence contains no requirement that the government report be in its final form to be admissible. Admissibility is based on the assumption that a public official conducting the investigation can be deemed reliable and the premise that the public official will inform the public fairly and adequately. *Ellis v. International Playtex, Inc.*, 745 F.2d 292, 300 (4th Cir. 1984), citing *Kehm v. Proctor & Gamble*, 724 F.2d 618, 619 (8th Cir. 1983). The guarantee of trustworthiness of governmental reports resides in the source of the report (the government official), rather than the contents of the records. *Ellis*, 724 F.2d at 300. Most government sponsored investigations employ well-accepted means of gathering information and analyzing data. *Id.* at 301. The burden is on the party opposing admission of the report to prove that the report is not reliable. *Id.*

The IPET Draft Final Report was prepared by numerous engineers who performed the

7

investigations described in the report.  Further, these engineers have extensive experience in their

chosen profession.  Its findings have been open to the public and subject to peer review.  Travelers

fails to demonstrate the lack of trustworthiness of the report.

Further, Travelers' reliance on *Toole v. McClintock*, 999 F.2d 1430 (11th Cir. 1993), is

misplaced.  The FDA report in that case suffered from numerous flaws indicating that it was not

reliable.  For example, the Eleventh Circuit noted that the FDA's conclusions rested primarily on

second-hand inference drawn from medical journals.  It simply was not a reliable document.  As

noted above, however, the IPET Draft Final Report was prepared by a number of highly-credentialed

engineers.

> **5.    TRAVELERS' SELECTIVE QUOTATIONS FROM THE IPET REPORT
> IGNORE THE OVERALL CONCLUSION REACHED BY THE CORPS OF
> ENGINEERS THAT IMPROPER CONSTRUCTION OF THE LEVEES
> RESULTED IN THEIR FAILURES AT THE 17TH STREET AND LONDON
> AVENUE CANALS.**

Travelers takes several quotes from the IPET Draft Final Report out of context in its quest

to establish issues of material fact.  First, Travelers quotes the report as noting that "'overtopping

and extensive flooding from Katrina were inevitable.'"  Travelers wholly ignores the IPET Draft

Final Report's conclusion, however, that no overtopping of the levees occurred at the 17th Street and

London Avenue Canals; the report noted: "***Four breaches***, all in the outfall canals and IHNC [Inner

Harbor Navigational Canal, known as the Industrial Canal] and all involving I-walls, ***occurred***

***before water levels reached the top of the floodwalls.***"  *See* IPET Draft Final Report, Vol. I, at I-7,

attached as Exhibit "2" to Xavier's Memorandum in Support (emphasis added).

Utterly failing to consider the context of the statement, Travelers quotes the IPET Draft Final

Report as noting that "'[n]o levee breaches occurred without overtopping'" and "'the degree of

8

erosion and breeching of overtopped levees was directly related to the character of the in-place levee materials and the severity of the surge and wave action .'" Opp. Memo. at 19, quoting IPET Draft Final Report, Vol. V at V-81, attached as Exhibit 5 to Xavier's Memorandum in Support. The quoted sentence is accurate, but Travelers fails to mention that it is taken from a section of the report entitled *"Assessment of Inner Harbor Navigation Canal Breaches."* *See* IPET Draft Final Report, Vol. V at V-80-81. Thus, the sections quoted by Travelers refer to the Industrial Canal, a body of water that had no involvement in the ground waters inundating Xavier's campus. Xavier's Motion for Partial Summary Judgment addressed *solely* the failures of the 17th Street and London Avenue Canals. Travelers' arguments disregard this truth and seek to create issues of material fact where none are to be found. Such blatant disregard for the facts should not be sanctioned by this Court.

Travelers next discusses portions of the IPET Draft Final Report regarding wave and storm surge activity in the *Gulf of Mexico*. Not only is Travelers misrepresenting the nature of the breaches of the canals at issue in this litigation, but now it is confusing the geography of Louisiana. There is absolutely no evidence suggesting that surge activity from the Gulf of Mexico caused water inundation on Xavier's campus, many miles inland.

Further, Travelers' discussion of wave activity in the 17th Street and London Avenue Canals misses the mark. As noted above, those waves never overtopped the levees at these locations, Travelers' misrepresentations to this Court notwithstanding. Rather, those levees failed because the Corps failed to take proper steps to ensure the safety and construction of the levees. The Corps can absolve itself with self-serving statements of no "negligence" or "malfeasance," but the principal un-rebutted fact remains that the 17th Street and London Avenue canals failed because the Corps did not take certain issues into account when building those structures. Xavier refers this Court to pages 6

9

through 9 of its Memorandum in Support of its Motion for Summary Judgment for a more complete discussion of these issues. For these reasons, Xavier submits that Travelers is unable to raise an issue of material fact with respect to the cause of the ground water inundation on Xavier's campus and respectfully requests that this Court grant its Motion for Partial Summary Judgment.

6. **TRAVELERS' ARGUMENTS CONCERNING THE ANTI-CONCURRENT CAUSE CLAUSE AND THE EXCLUSION FOR NEGLIGENT DESIGN EXCLUSION MISS THE MARK BECAUSE THERE IS A COVERED CAUSE OF LOSS BECAUSE THERE WAS NO "FLOOD."**

Travelers accuses Xavier of ignoring the anti-concurrent cause clause and negligent design exclusion, but these arguments are also off the mark. As noted above the anti-concurrent cause clause comes into effect only where there is an excluded cause of loss. In this motion, Travelers has put two exclusions at issue: the water exclusion and the negligent design exclusion. For the reasons stated above and in Xavier's Motion for Partial Summary Judgment, the water exclusion is inapplicable because none of the events listed in that exclusion occurred. The negligent design exclusion is also inapplicable in this case.

Travelers concedes, albeit in a footnote, that the exclusion contains an "ensuing loss" provision that states that "if an excluded cause of loss that is listed in 3.a through 3.c below results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." *See* Policy, B.3, attached as Exhibit 1 to Xavier's Memorandum in Support. Neither of the cases cited by Travelers in its discussion of the negligent design exclusion discusses the effects of such an "ensuing loss" provision. Travelers cavalierly disposes of the "ensuing loss" provision with the assertion that there is no covered cause of loss because Xavier's damages were supposedly caused by a "flood." As set forth above, however, Xavier's damages were not caused by a "flood"

10

as that term is defined in the policy, and, as a result, the "ensuing loss" provision is triggered.

Courts in the Fifth Circuit have held that the "ensuing loss" provision applies in circumstances where there is a catastrophic loss despite existence of a design or mechanical defect. For example, in *Lake Charles Harbor & Terminal Dist. v. Imperial Cas. & Indemnity Co.*, 857 F.2d 286, 287 (5th Cir. 1988), the insurance policy excluded losses caused by "mechanical breakdown," but it also contained an ensuing loss provision allowing coverage if "an insured peril ensues, and then only for the actual loss or damage caused by such ensuing peril." *Id.* at 287. When a cable broke on plaintiff's ship loader, the shuttle of the loader crashed into the interior of the loader and caused extensive damage. *Id.* The court found that the subsequent crash and resultant damage was an "ensuing peril" that was covered under the policy. *Id.* at 289. The court noted that the mechanical breakdown exclusion was "not designed to insulate an insurance company from liability for major or 'catastrophic' losses." *Id.* at 287.

In *Holden v. Connex-Metalna*, 2000 WL 1876338 (E.D. La.), the court considered an insurance policy that excluded damage from "faulty workmanship, material, construction or design from any cause, unless loss not otherwise excluded hereunder ensues and then only for loss or damage caused by the ensuing loss." *Id.* at *3. In *Holden*, a gantry unloader crane was destroyed when it cartwheeled into the Mississippi River. *Id.* at *1. The trolley and boom of the crane were heavier than provided for in the specifications, and the defects were a result of faulty workmanship. *Id.* at *8. The court found that the relevant exclusions in the policy would not insure the cost of balancing the defective parts. *Id.* However, the damages resulting from the crane's collapse into the river were a covered ensuing loss. *Id.* The court found that the toppling of the crane and the faulty workmanship were not synonymous and that the exclusions would not bar all damages that ensued

11

from the unbalanced crane, including the loss of the crane itself. *Id.*

Xavier submits that the damages ensuing from the levee collapse (i.e., the inundation of the first floor of Xavier's campus with several feet of ground water) is a Covered Cause of Loss as that term is defined in the Policy as a cause of loss not otherwise excluded. The collapse of the levees at the 17th Street and London Avenue Canals resulted in catastrophic losses to Xavier. Thus, the negligent design exclusion is not applicable. Travelers, which bears the burden of proving an exclusion in this case, can point to no other exclusion limiting Xavier's right to recover in this case. For these reasons, Xavier submits that its damages sustained as a result of the failure of the levee system were an ensuing loss and, therefore, are covered under Travelers' policy.[1]

### 7.    THE CASES RELIED ON BY XAVIER SUPPORT ITS POSITION, AND TRAVELERS INTERPRETS THOSE CASES OUT OF CONTEXT.

Travelers attempts, but to no avail, to distinguish the line of cases cited by Xavier concerning the analogous and ambiguous earth movement exclusion. The Fifth Circuit's decision in *Peach State Uniform Service, Inc. v. American Insurance Co.*, 507 F.2d 996 (5th Cir. 1975), provides guidance for this Court to consider when determining the meaning of a general term in the midst of more specific terms. The Fifth Circuit did not need to look to a dictionary definition of the term "earth movement" because it was evident from the other terms in the same policy exclusion that "earth movement" applied only to naturally occurring events.

Next, Travelers' efforts to distinguish *Murray v. State Farm Fire & Casualty Co.*, 509 S.E. 2d 1 (W. Va. 1998), are wholly in error. In *Murray*, the policy excluded damages for "landslides" and "erosion" as part of the "earth movement" exclusion. The lower court, in an effort to find

---

[1] *See also* Section 8, *infra.* Travelers is well aware that the ensuing loss provision provides coverage in this instance despite the negligent design exclusion.

coverage, classified the plaintiff's losses as "rockfall" and "weathering." The *Murray* court reversed this finding, holding that these definitions were erroneously applied because there was no distinction between the four words, all of which concerned a natural occurrence. *See id.* at 8.  Since those terms applied only to natural events, and the plaintiffs' losses had not been caused by a natural event, the court still had to determine the scope of the meaning of the term "earth movement."  In the same manner, Xavier is asking this Court to hold that the term "flood" is ambiguous because it could refer to either naturally occurring or man-made losses.

Finally, Travelers attempts to distinguish Xavier's reliance on *Fayad v. Clarendon National Insurance Co.*, 899 So. 2d 1082 (Fla. 2005) and *Nautilus Insurance Co. v. Vuk Builders, Inc.*, 406 F. Supp. 2d 899 (N.D. Ill. 2005) with more discussion of the anti-concurrent cause clause.  Again, Travelers misses the point.  That clause was not triggered because there was no excluded cause of loss in that case, and there is no excluded cause of loss in this case.  Consideration of the anti-concurrent cause clause is wholly irrelevant to the present motion.  The issue in this case is simple: the levees failed causing Xavier's damage.  As Travelers cannot point to a specific exclusion, these damages are presumed covered under the "all risks" policy issued by Travelers to Xavier. Consideration of the anti-concurrent cause clause is wholly irrelevant to the present motion.

## 8.     **TRAVELERS' REMEDY IN THIS CASE IS AS SUBROGATED INSURER.**

Travelers is not wholly without remedy in this matter.  It can simply make Xavier whole for the losses it has incurred and pursue an action against the Corps for its responsibility in the levee breaches.  Travelers is well aware of the availability of such a remedy, having exercised it in at least one post-Hurricane Katrina lawsuit.  In *Travelers Property Casualty Company of America, et al. v. Brazos Urethane, Inc., et al.*, Civ. Act. No. 06-5111, E.D. La., Sec. B., Mag. 1.  A copy of the

13

Complaint is attached hereto as Exhibit 1.

Travelers filed suit as the subrogated insurer of co-plaintiff Imperial Trading Co., Inc. The defendants in this matter were alleged to have installed and constructed a roof system on the insured's property. During Hurricane Katrina, the roof failed, resulting in severe damage to the insured's property. Travelers paid Imperial Trading for the loss, and became subrogated to Imperial Trading's rights against the roofing companies. In a similar manner, Travelers can make Xavier whole for its losses and pursue an action against the Corps as Xavier's subrogated insurer.[2]

9.     **CONCLUSION**

For the foregoing reasons, Xavier respectfully requests that this Honorable Court grant its motion for partial summary judgment and hold, as a matter of law, Honorable Court enter partial summary judgment in its favor and against Travelers and hold, as a matter of law, that the Travelers' Policy's "flood" exclusion is inapplicable to Xavier's damages arising from Hurricane Katrina.

---

[2]Travelers' subrogation lawsuit in this matter only underscores the fact that the negligent design exclusion is inapplicable in this case due to the ensuing loss provision in the policy. *See*, *infra*, Section 6.

14

Respectfully Submitted:

JAMES M. GARNER, #19589 T.A.
DARNELL BLUDWORTH, #18801
TIMOTHY B. FRANCIS, #14973
KEVIN M. MCGLONE, #28145
**SHER GARNER CAHILL RICHTER**
**KLEIN & HILBERT, L.L.C.**
909 Poydras St., 28th Floor
New Orleans, LA   70112
Telephone: 504-299-2100
Facsimile: 504-299-2300
COUNSEL FOR XAVIER UNIVERSITY
OF LOUISIANA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing Memorandum in Support of

Motion for Partial Summary Judgment has been served upon:

> Ralph S. Hubbard, III
> Simeon B. Reimonenq, Jr.
> 601 Poydras St., Suite 2775
> New Orleans, LA   70130
> Attorneys for Travelers Property Casualty Company of America

by placing same in the United States Mail, postage prepaid, this _____ day of September, 2006.

JAMES M. GARNER