UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| XAVIER UNIVERSITY OF LOUISIANA | CIVIL ACTION NO. 06-0516 |
| VERSUS | SECTION "K" MAG "2" |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF'S ADDITIONAL REPLY MEMORANDUM TO DEFENDANT'S OPPOSITION TO ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Plaintiff, Xavier University of Louisiana ("Xavier"), respectfully submits this Additional Reply Memorandum to the Opposition Memorandum filed by Defendant Travelers Property Casualty Company of America ("Travelers") to Xavier's Motion for Partial Summary Judgment regarding the purported "flood exclusion" contained in the policy of insurance issued by Travelers to Xavier. Xavier submits this additional memorandum to bring certain case law to the court's attention concerning the proper interpretation of the term "flood." As demonstrated herein, several courts have recognized that the term "flood" in analogous "flood exclusions" is limited only to natural occurrences, rather than man-made events. Additionally, Xavier submits that, the policy is ambiguous because it contains a separate windstorm endorsement affording coverage for losses caused indirectly or directly by a windstorm (i.e., a hurricane), regardless of any other cause of loss.

**1. Several courts have recognized that "flood" for purposes of a policy exclusion means only naturally occurring events, not man-made occurrences.**

Travelers' opposition memorandum cites a plethora of cases it claims as defining "flood" as both a naturally occurring event and a man-made event. As Xavier demonstrated in its Reply

1



Memorandum, those cases, upon consideration, do not specifically address that issue. Xavier submits that, contrary to Travelers' assertions, the term "flood" has been limited to only naturally occurring events.

In *Ebbing v. State Farm Fire & Casualty Co.*, 1 S.W. 3d 459 (Ark. Ct. App. 1999), the court considered whether a similarly worded "flood exclusion" negated coverage for the plaintiff's losses arising from the inundation of his house by water released from a burst water main on a neighboring property. The court held that the "common usage" of the term "flood" ***"applies to water occasioned from natural events rather than a burst water main."*** *Id.* at 462 (emphasis added).

A similar result was reached by the court in *Mellon v. Hingham Mutual Fire Insurance Co.*, 472 N.E.2d 674 (Mass. App. Ct. 1984). The *Mellon* court held that damages caused by a broken drainage pipe coming from the town's sewer system were not excluded from coverage by a purported "flood" exclusion because ***"the loss was caused by an accidental break rather than a natural occurrence."*** *Id.* at 675 (emphasis added). The *Mellon* court noted that, similar to the Travelers policy in this case, the coverage afforded the insured was an "all risk" policy of insurance providing coverage against a "'fortuitous' event." *Id.* Since the cause loss was accidental, not natural, the court determined that no specific exclusion applied, and coverage was afforded under the policy. *Id.*

Finally, the definition of the term "flood" was considered by the court in *Popkin v. Security Mutual Insurance Co. of New York*, 367 N.Y.S.2d 492 (N.Y. App. Div. 1975). In *Popkin*, the court performed the same task Travelers ask this Court to undertake in the search for the meaning of the term "flood"; it looked to the dictionary meaning of the term. The court found that the "ordinary meaning" of the term was confined to natural events and did not apply to water damage resulting

2

from a broken water main. *See id.* at 48. Further, even applying a more generic definition the term "flood" would still be limited to natural events because the other terms in the exclusion were naturally occurring events. *Id.* Applying the interpretive maxims *ejusdem generis* and *noscitur a sociis*, the court found that the exclusion was inapplicable to man-made causes. *See id. See also Ender v. Nat'l Fire Ins. Co. of Hartford*, 563 N.Y.S.2d 85 (N.Y. App. Div. 1991) (emphasis added) (applying *Popkin, supra*, for the proposition that a similarly worded exclusion is "no bar to plaintiffs' claim as they **preclude only recovery for damages arising from natural causes, not from artificial devices.**").

As these cases indicate, the term "flood" has been afforded a limited construction. Contrary to Travelers' position, "flood," as demonstrated by the above-cited case law, is not understood ordinarily to apply to both natural and man-made events. Moreover, the 17th Street and London Avenue Canals are both man-made both drainage canals, and the failure of the man-made floodwalls containing those man-made drainage canals resulted in the inundation of Xavier's campus. The canals, then, can be analogized to a broken water main causing damages to Xavier's campus. Just as the broken water mains are accidental discharges of water resulting from a man-made cause, so, too, is the break of man-made drainage canals resulting in water inundating the Xavier campus.

It should also be noted the very definition relied on by Travelers in its opposition refers users of the dictionary to the definition of "Act of God" as a term synonymous with "flood." *See* BLACK'S LAW DICTIONARY, 6th ed., 1990, at 640. "Act of God" is defined as "[a]n act occasioned **exclusively by forces of nature without the interference of human agency."** *Id.* at 33. Thus, flood is defined in terms of **exclusive** relation to naturally occurring events. Nothing in the definition relied on by Travelers suggests otherwise. This Court must afford the exclusionary language in this case a

3

narrow construction and should hold as a matter of law that "flood" for purposes of the exclusion is limited only to naturally occurring events.

2. **The policy contains an endorsement providing coverage for losses caused "directly or indirectly" by a windstorm, thus, making ambiguous the anti-concurrent cause clause relied on by Travelers.**

Travelers spends much of its opposition referring to the "lead in" clause or "anti-concurrent cause" clause in the policy. As Xavier has conclusively demonstrated, this clause is not applicable because there has been no excluded cause of loss (i.e., there has been no "flood" as that term is ordinarily understood). In the event this Court holds otherwise, however, Xavier respectfully submits that this provision is ambiguous as a result of the windstorm or hail endorsement also included in the policy. That endorsement (emphasis added) provides:

> The Windstorm or Hail Deductible, as shown in the Declarations, applies to loss or damage to Covered Property or Business Income caused directly or indirectly by Windstorm or Hail, *regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.* If loss or damage from a covered weather condition other than Windstorm or Hail occurs, and that loss or damage would not have occurred but for the Windstorm or Hail, such loss or damage shall be considered to be caused by a Windstorm or Hail occurrence.

(Emphasis added).

This provision suggests that the Travelers Policy was intended to afford coverage in the event of a windstorm, or hurricane. Further, the language of this provision indicates that, regardless of the cause of any losses, any damages associated with the windstorm or hail, whether caused indirectly or directly, are covered. This language creates an inherent ambiguity with the "anti-concurrent cause" clause relied on by Travelers in its opposition memorandum. Under the plain meaning of the above-referenced provision, any loss associated with a windstorm (i.e., hurricane) is covered no matter whether an excluded cause of loss also occurs. To the extent Travelers relies on the "anti-

4

concurrent cause" clause, then, it is ambiguous as a matter of law, and Travelers is not entitled to summary judgment relief on the basis of that provision.

### 3. Conclusion

For the foregoing reasons, Xavier respectfully submits that, as a matter of law, the term "flood" is limited only to naturally occurring events and that the windstorm endorsement to the policy creates an ambiguity in the policy with the "anti-concurrent cause" clause. Therefore, Xavier respectfully requests that this Court grant its Motion for Partial Summary Judgment.

Respectfully Submitted:

_____
JAMES M. GARNER, #19589 T.A.
DARNELL BLUDWORTH, #18801
TIMOTHY B. FRANCIS, #14973
KEVIN M. MCGLONE, #28145
**SHER GARNER CAHILL RICHTER
 KLEIN & HILBERT, L.L.C.**
909 Poydras St., 28th Floor
New Orleans, LA   70112
Telephone: 504-299-2100
Facsimile: 504-299-2300
COUNSEL FOR XAVIER UNIVERSITY
OF LOUISIANA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon:

>Ralph S. Hubbard, III
>Simeon B. Reimonenq, Jr.
>601 Poydras St., Suite 2775
>New Orleans, LA   70130
>Attorneys for Travelers Property Casualty Company of America

by placing same in the United States Mail, postage prepaid, this 19 day of September, 2006.

_____
JAMES M. GARNER