party acts would be a covered loss under the all-risk homeowners" policies they purchased.

Furthermore, as set forth in <u>Murray v. State Farm Fire & Cas. Co.</u>, 509 S.E.2d 1 (W.Va. 1998), purchasers of all-risk policies have heightened expectations of coverage and, therefore, the Court must protect these expectations and hold policy provisions and exclusions that contradict the reasonable expectations of Louisiana homeowners' policyholders to be ambiguous and unenforceable. In <u>Murray</u>, the Court rejected State Farm's effort to enforce "earth movement" exclusions which, like the water damage exclusions were vague and failed to include language expressly excluding third-party negligence. The <u>Murray</u> court stated:

> [W]here third-party negligence is alleged to be the proximate cause of a loss, we believe a policyholder could reasonably expect to be covered under State Farm's policy. Only through a painstaking review of the lengthy "Losses Not Included" section would a policyholder discover the language suggesting that, because the negligence occurred in conjunction with an excluded event, the loss would not be covered. "[Policyholders' with all-risks insurance likely have heightened expectations because of the comprehensive nature of the coverage and the greater premium rates. These expectations would not often be given effect if recovery was denied whenever an exception or exclusion contributed to the loss." R. Fierce, Insurance Law-Concurrent Causation: Examination of Alternative Approaches, 1985 S.Ill.U.L.J. 527, 544 (1986).
>
> An example of the overbreadth of State Farm's position was suggested by the court in <u>Wyatt v. Northwestern Mut. Ins. Co. of Seattle</u>, 304 F. Supp. at 783, which stated:
>
>> "It seems hard to contend that the insurance policy meant to exclude all earth movements, for it is difficult to distinguish between a situation where a piece of heavy equipment breaks loose and hits a house causing serious

> damage and a situation where that equipment
> instead hits only an embankment next to a
> house but causes the earth to move and
> thereby damages the house. Certainly not all
> earth movements, or at least those where
> some human action causes such are included
> in the exclusion."

However, applying State Farm's interpretation of its policy to the fact pattern proffered by the court in <u>Wyatt</u>, there would be no coverage. We believe such an interpretation clearly goes against the reasonable expectations of the parties.

We agree with the court's statement in <u>Howell v. State Farm Fire & Cas. Co.</u>, 218 Cal.App.3d 1446, 267 Cal. Rptr. 708 (1st Dist.1990), that:

> "Indeed, if we were to give full effect to the
> State Farm policy language excluding
> coverage whenever an excluded peril is a
> contributing or aggravating factor in the loss,
> we would be giving insurance companies carte
> blanche to deny coverage in nearly all cases."

<u>Murray</u>, 509 S.E.2d at 14.

Here, as in <u>Murray</u>, Louisiana homeowners' have heightened expectations of coverage under their "all risk" policies and, therefore, would expect coverage for losses caused by third-party negligence causing water damage to their homes. Louisiana homeowners' would not expect nor appreciate that their coverage would vary or depend on whether the cause of the loss was a natural event or a man-made occurrence. Moreover, given the fact that Louisiana is home to forty percent of the coastal wetlands in the lower 48 states and nearly twenty percent, or 8,277 square miles, of the states' 43,566 square miles of land area is covered by water, Louisiana all-risk policyholders would not expect or anticipate any difference in coverage simply because a third-party or man-made event caused a body of water or waterway to fail or

be breached or result in flooding, thus resulting in a loss to their property, than for coverage caused by some other action where third-party negligence damages their homes directly (i.e., a plane flies directly into a house, not an adjoining water tower).[6] To the contrary, Louisiana all-risk policyholders have a heightened expectation of coverage with regard to damage from a man-made disruption or damage to the waterways, lakes, levees, dams and coastal areas which results in a loss to the policyholder's property. As such, any effort to enforce so-called third-party negligence exclusions into some means of transforming the levee breaches into a "flood" contradicts those reasonable expectations and should be rejected by the Court.

### C. Defendants' So-Called Anti-Concurrent Causation Clauses Are Unenforceable.

The so-called anti-concurrent causation language upon which Defendants rely does not provide for the broad water damage exclusion now sought by Defendant nor does it exclude from coverage the negligent acts of third parties. Because the Insurance Company Defendants seek to broadly deny coverage, in toto, for losses where water or a covered peril is present from non-covered sources, such clauses must be deemed ambiguous and unenforceable to the extent they conflict with the Hurricane Deductibles in the policies and are in direct conflict with the efficient proximate cause doctrine which is applicable in Louisiana. Defendants' position evinces both an effort to avoid the contractual obligations it owes and sold to this class of policyholders, but it also represents an attempt to have the Court effectively abrogate or eviscerate Louisiana's "efficient proximate cause" test. Adoption of Defendants' position would

---

[6] Data taken from the Southern Regional Water Program website, located at http://srwqis.tamu.edu/states/louisiana/watershed.aspx.

result in significant consequences not only with regard to the current and future hurricane-related insurance litigation, but with regard to insurance coverage issues in general.

1. **Defendants' Suggested Overbroad Interpretation Of Their Water Damage Exclusions And The So-Called Anti-Concurrent Causation Clauses Are Untenable And Would Contravene Louisiana's "Efficient Proximate Cause" Doctrine.**

Defendants forward the argument that their own policy language supercedes Louisiana's "efficient proximate cause" test. Defendants argue that their anti-concurrent causation clauses, which Defendants try to soft-pedal as prefatory or "lead-in" language, somehow renders its water damage exclusion broad enough to exclude losses where there is "some" damage from water, regardless of whether a covered peril was the efficient proximate cause of the loss. Defendants' position is flatly contrary to the "efficient proximate cause" test that the Louisiana Supreme Court has adopted in determining whether coverage exists. Roach-Strayhan-Holland Post No. 20, Am. Legion Club, Inc. v. Continental Ins. Co., 112 So.2d 680, 683 (La. 1959). "Efficient proximate cause" has been technically defined as "the efficient or predominant cause which sets into motion the chain of events producing the loss . . . not necessarily the last act in a chain of events." Graham v. Public Employees Mut. Ins. Co., 656 P.2d 1077, 1081 (Wash. 1983). The "efficient proximate cause" analysis focuses on whether all of the losses or claims can be traced to one original causative factor, regardless of the number of injuries or claims made. If the originating or dominant cause of the loss is a covered peril, there is coverage. Lorio v. Aetna Ins. Co., 232 So.2d 490 (La. 1970)

(holding that policyholders may have coverage when covered peril causes an excluded peril). The Louisiana Supreme Court, as well as other courts in the Gulf region, have interpreted the "efficient proximate cause" doctrine to permit coverage for hurricane-related losses where the evidence has shown that wind was the "proximate cause" of the damage, notwithstanding that flooding contributed to the loss. See, e.g., Roach-Strayhan-Holland Post No. 20, Am. Legion Club, Inc. v. Continental Ins. Co., 112 So.2d 680, 683 (La. 1959); Western Assurance Co. v. Hann, 78 So. 232, 236 (Ala. 1917); Glens Falls Ins. Co. of Glens Falls, N.Y. v. Linwood Elevator, 130 So.2d 262, 270 (Miss. 1961); Evana Plantation, Inc. v. Yorkshire Ins. Co., 58 So.2d 797, 798 (Miss. 1952).

Under these cases and the underlying rationale behind the "efficient proximate cause" test, if coverage exists where a covered peril is ultimately shown to be the proximate cause of damage despite contribution from a non-covered peril, then the presence of a non-covered peril such as water damage would not invoke the water damage exclusion and operate to deny coverage. Under Defendants' theory, a determination that a covered peril was the "efficient proximate cause" of a loss would be meaningless if a Court found "some damage" from an excluded peril. Defendants' contention that its policy exclusion abrogates the "efficient proximate cause" doctrine, cannot and should not be adopted by the Court as it is unsupported and would result in a sweeping change in the causation analysis and standard as it applies to policyholders in Louisiana.

The ISO Defendants' policies contain so-called anti-concurrent causation clauses which provided:

- 20 -

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

(Appendix of ISO Defendants' at Exhibits 1-9). State Farm's so-called anti-concurrent causation language states:

> 2. We do not insure under any coverage for loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether in the event occurs suddenly or gradually; involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these.

(Exhibits A and B to State Farm's Motion at pp. 10-11).

A plain reading of these two provisions makes it abundantly clear that the "coverage" Defendants seek to provide is wholly illusory to the extent they can deny all coverage for a loss caused by a covered peril so long as a non-covered peril was involved in any manner.[7]

The ISO Defendants' language states that the enumerated losses, which includes water damage, are excluded "<u>regardless</u> of <u>any</u> other cause or event contributing concurrently or in any sequence to the loss." In other words, if water damage is at all present, any loss involving water damage is excluded "regardless" of

---

[7] These provisions can be read consistently so as not to violate the longstanding efficient proximate cause doctrine in Louisiana. If these exclusions are interpreted to preclude coverage where the efficient proximate cause is a non-covered peril, and a covered peril later causes further damage, then the provisions can be applied in a manner consistent with prevailing Louisiana coverage law and the reasonable expectations of Louisiana policyholders buying homeowners' policies that have Hurricane deductibles.

whether a covered peril was the predominant or overwhelming cause of the loss. Taking this language one step further, to the extent this clause states "regardless of . . . any sequence to the loss," if a covered peril such as wind initially caused the loss four to five hours before one drop of rain or water became involved, the ISO Defendants could exclude the loss because of the presence of water damage at any time subsequent thereto. Under this interpretation, in order to ensure coverage a policyholder would be required to submit his claim and have it investigated and resolved in the four or five hour window following that portion of the loss caused by the covered peril but prior to the subsequent arrival of the allegedly excluded water damage. Similar absurd hypotheticals are numerous, however, the underlying point remains that under the so-called anti-concurrent causation language, the ISO Defendants would have carte blanche to deny coverage so long as the smallest and most insignificant presence of an excluded peril was present "regardless" of "any" other cause, event or sequence to the loss, including a covered peril.

State Farm's so-called anti-concurrent causation language renders coverage for hurricane events equally illusory. State Farm's clause initially states that it does not insure "under any coverage for loss which would not have occurred in the absence of one or more of the following excluded events." At first blush, and taken separate from the remaining terms of the clause, this language appears to have a proximate causation component to it insofar as it includes language stating the loss "would not have occurred in the absence...." However, State Farm then removes any semblance of reasonableness in declaring that it does not insure "regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes

acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether in the event occurs suddenly or gradually; involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these." It is impossible to determine exactly what State Farm will cover after all of the "regardless" clauses are read and applied. Similar to the ISO Defendants, this clause allows State Farm to fully deny coverage regardless of when, how severe or in what proportion an excluded peril was involved in the loss.[8] As such, any coverage for covered perils is wholly illusory to the extent it may be denied in toto if a non-covered peril is at all present.

The absurdities that would flow from Defendants' interpretation of their so-called anti-concurrent causation exclusions are readily apparent when applied to hypothetical situations involving the presence of water damage. These absurd results become clear in the example of a plane crashing into a water tower, releasing water and causing the flooding of a dwelling. Under Defendants' theory, the water entering the dwelling would constitute a "flood" or water damage and, therefore be excluded, yielding an absurd result and no coverage even if a covered peril such as the debris or wreckage caused 99% of the damage or loss to the property. If Defendants' position regarding anti-concurrent causation is accepted and coverage may be excluded if the purportedly excluded peril of water is present or caused some portion of a loss regardless of sequence, proportionality, or causation, Louisiana homeowners' might only have coverage if:

---

[8] It also would enable State Farm to ignore the well-established efficient proximate cause doctrine without clearly expressing its intent to do so.

> 1. Their property was damaged by lightning, but the lightning was not accompanied by rain.
>
> 2. A hurricane damaged a policyholder's home but the hurricane was not accompanied by any rain.
>
> 3. The plane used in the Court's example crashed into the water tower and damaged the policyholders' property but <u>only if</u> the water tower next to the home was struck in the crash and did not rupture.
>
> 4. The weight of ice and snow on a homeowner's roof caused damage to the roof, so long as the temperature remained below 32 degrees so that no melting occurred and water would not enter the premises.

The examples are never-ending. Those cited above, however, make it imminently clear that the position being forwarded by Defendants in suggesting their anti-concurrent causation clauses apply would yield absurd results in coverage and, therefore, should not be accepted and render their policies ambiguous as a matter of law. <u>Doerr.</u>, 774 So.2d at 124; La. Civ. Code. Art. 2053.

The precise arguments Defendants ask this Court to accept with regard to the so-called anti-concurrent causation language have been twice rejected by United States District Courts in <u>Tuepker v. State Farm Fire and Cas. Co.</u>, 2006 WL 1442489 (S. D. Miss.) and <u>Leonard v. Nationwide Mutual Ins. Co.</u>, 438 F. Supp. 2d 684 (S.D. Miss. 2006). Recently, Judge Senter affirmed his determination of such ambiguity in <u>Leonard v. Nationwide Mutual Ins. Co.</u>, 438 F.Supp.2d 684 (S.D. Miss. 2006), stating that enforcement of such anti-concurrent causation language:

> would mean that an insured whose dwelling lost its roof in high winds and at the same time suffered an incursion of even an inch of water could recover nothing under his Nationwide policy. Read literally, this provision would exclude all coverage when a windstorm did damage to both an insured dwelling (a covered loss) and adjacent "screens, including their supports, around a pool, patio, or other areas." (an excluded loss). I do not believe this is a reasonable interpretation of the policy.

Leonard, 2006 WL 2353961 at *7. Thus it is clear that the inconsistencies and illusory coverage that would result from the application of these so-called anti-concurrent causation clauses renders them ambiguous as a matter of law and unenforceable.[9]

### 2. The Hurricane Deductibles In Defendants' All-Risk Policies Further Support A Finding Of Ambiguity.

Furthermore, Defendants sold policyholders all-risk policies containing Hurricane Deductibles, which makes Defendants' assertions regarding the so-called anti-concurrent causation clauses even more pernicious. Each of the Defendants' policies contain Hurricane Deductibles which contemplate coverage for losses caused by hurricanes and appear in the form of amendments or endorsements to the respective policies. These Hurricane Deductibles contemplate coverage for damages caused by hurricanes and, in the case of Hanover's policy, specifically defines hurricane as a storm which has winds of at least 74 miles per hour **"or a storm surge of at least 4**

---

[9] Furthermore, if the Defendants' so-called anti-concurrent causation clauses are given effect, the enforcement and application of these clauses would not only contravene the efficient proximate cause doctrine, but would also effectively contravene La. R. S. 22:658.2, which provides, in relevant part, that:

> B. If damage to immovable property is covered, in whole or in part, under the terms of the policy of insurance, the burden is on the insurer to establish an exclusion under the terms of the policy.
>
> C. Any clause, condition, term, or other provision contained in any policy of insurance which alters or attempts to alter the burden on an insurer as provided in Subsection B of this Section shall be null and void and of no effect.

If the so-called anti-concurrent causation clauses are given effect, Defendants will not be required to meet the statutorily imposed burden of establishing a specific exclusion under the terms of the policy even where damage is covered "in whole or in part" under the policy. Instead, the so-called anti-concurrent causation clause would simply allow Defendants to point to any part of a loss that involves a non-covered peril and deem coverage for the entire loss to be excluded.

**feet above normal."** Now, Defendants seek to invalidate or exclude this coverage by selectively seeking to enforce another provision of their Policies that excludes water damage and would effectively exclude the very coverage suggested by the "Hurricane Deductible Endorsement" vis-à-vis an overbroad interpretation and application of the "water damage" exclusions.

Insofar as Louisiana law provides that where "an attachment to the policy conflicts with the terms of the policy, the attachment will control," then the intent of the terms of the Hurricane Deductibles control and, in the context of hurricane-related losses, override the language of the policy including the so-called anti-concurrent causation language. Sea Trek v. Sunderland Marine Mut. Ins. Co., Ltd., 757 So.2d 805 (La. App. Cir. 5 2000). As such, the Representative Policyholders' losses caused by damage from Hurricane Katrina are covered. Talley v. Blue Cross Blue Shield of Louisiana, 760 So.2d 1193, 1196 (La. App. Cir. 3 2000). At a minimum, the conflict between the so-called anti-concurrent causation clause and the Hurricane Deductibles renders the Defendants' policies ambiguous as to what coverage is provided for losses caused by hurricanes. As such, the Court cannot interpret Defendants' policies or make a determination as to the scope of coverage for losses caused by hurricanes from the four corners of the respective policies.

As set forth above, an ambiguity exists in these types of policies as a result of the inconsistency between the "Hurricane Deductible Endorsement" and the water damage exclusions. In Tuepker, the Court analyzed the conflict between these provisions in State Farm's policy and held:

PHIDOCS-50577.1                          - 25 -

> I find that this language in the State Farm policy creates ambiguities in the context of damages sustained by the insured during a hurricane. These provisions purport to exclude coverage for wind and rain damage, both of which are covered losses under this policy, where an excluded cause of loss, e.g. water damage, also occurs. I find that these two exclusions are ambiguous in light of the other policy provisions granting coverage for wind and rain damage and in light of the inclusion of a "hurricane deductible" as part of the policy.

Tuepker, 2006 WL 144289 at *5. The "language" to which the Court was referring was the very "lead-in" or anti-concurrent cause language relied upon by Defendants here in support of their argument that so long as a loss involves water damage, it does not matter whether wind or any other covered peril played a part in Plaintiffs' losses, including damages caused by hurricanes or as a result of the negligent acts of third-parties. This Court should reject this argument just as the court did in Tuepker.

Because the terms of the Defendants' policies are ambiguous as to what coverage is provided for losses caused by hurricanes, the Court cannot interpret Defendants' policies or make a determination as to the scope of coverage for losses caused by hurricanes from the four corners of the respective policies. As such, the Court should not grant Defendants' Motions, which seek to have the Court interpret the ambiguous policies on their face and absent the consideration of extrinsic evidence. To do so would short-cut the policyholders' right to conduct discovery and obtain extrinsic evidence required to interpret these facially ambiguous policies. Included among the evidence that will be relevant or helpful to the Court is evidence regarding Defendants' prior application of these provisions, its underwriting and claims practices and procedures, manuals, guidelines, policies, and directives to provide guidance to their employees in underwriting, processing, handling, and resolving insurance claims.

These documents generally contain insurance company official positions on coverage, claims, and loss control matters, as well as interpretations of relevant policy language. Thus, because Defendants' policies are ambiguous, policyholders are entitled to discovery which relates to the interpretation, prior application and claims handling of claims made under the same provisions in order to prove that the water damage exclusion is not enforceable and, therefore, Defendants are not entitled to judgment as a matter of law and their Motions to Dismiss should be denied.

### 3. Representative Policyholders Are Entitled To Conduct Discovery In Order To Prove The Fact-Intensive Determination Regarding Efficient Proximate Cause.

Finally, the principle that property damage caused by hurricanes is covered for loss even if flooding resulted has been accepted by courts in the Gulf region and is, by nature, a fact-intensive determination that is not proper for disposition on a motion to dismiss. In Grace v. Lititz Mutual Insurance Co., 257 So.2d 217 (Miss. 1972), the Supreme Court of Mississippi affirmed a jury verdict finding coverage for the policyholder for windstorm damages in the aftermath of Hurricane Camille. The insurance policy in Grace covered windstorm damages but excluded coverage for loss caused or aggravated by tidal water. The insurance company in Grace, like Defendants here, argued that there was no coverage because the property was destroyed by water, not by wind. There was very little physical evidence in Grace to substantiate the alleged causes of loss because the building was destroyed. In the absence of such physical evidence, the parties relied on a combination of scientific and circumstantial evidence to substantiate causation. The jury returned a verdict in favor of the policyholder, finding that the building had been destroyed by wind, not by flood, despite the lack of physical

evidence to substantiate the cause of loss. The insurance company appealed, but the court affirmed the verdict on appeal, rejecting the insurance company's position that the presence of tidal waters rendered the loss excluded. The court held that "the material facts in the record were disputed therefore the jury was entitled to accept the policyholder's assertion that his office building was destroyed by wind before the tidal waters reach his property. Id. at 225.

As Grace shows, the issue of causation is a fact-intensive inquiry which cannot be resolved as a matter of law in the context of Defendants' Motions to Dismiss. Representative Policyholders have alleged that "[t]he first efficient proximate cause of the losses suffered by the Policyholders on August 29, 2005 was "windstorm," a covered peril under all of the insurance policies purchased by the Policyholders" and, therefore, the issue of causation is a factual determination which cannot be determined in the context of a motion to dismiss. As such, and at a bare minimum, Defendants' Motions must be denied to the extent they seek to put the rabbit in the hat and obtain a ruling that prohibits policyholders from establishing and proving causation by a covered peril by way of a completely unsupported broad application of water damage and flood exclusions which contravenes the well-established efficient proximate cause doctrine.[10] For all of these reasons, the Court should deny Defendants' Motions in their entirety.

---

[10] Insofar as the claims and losses alleged by the Representative policyholders are not excluded under Defendants' "Water Damage" exclusions, Defendants may not exclude coverage under the "acts or decisions" exclusion or any "faulty, inadequate or defective" design maintenance exclusions. As Defendants admit, under their policies there is coverage for ensuing losses from the "acts and decisions" or "faulty, inadequate or defective" acts so long as such losses are "not excluded or excepted" under another provision of their policies. (Standard Fire Policies at INS 97, INS 137; Hartford Policy at INS 56; Hanover Policy at INS 10; and Unitrin Policy at 172). Thus, because the losses resulting from the inundation of water are not

- 29 -

**D.  Any Flood Caused By Third-Party Negligence Would Be Covered Under the ISO Defendants' Policies.**

The "third-party negligence" provisions relied upon by Defendants were originally intended, and have been applied, to exclude from coverage damage or losses to the residence premises caused by third-parties performing work, construction or other repairs to the premises where such losses occurred during the performance of such work. The ISO Defendants policy provides:

> 2.   We do not insure for loss to property descried in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered;
>
> a.   Weather Conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;
>
> b.   Acts or decisions, including the failure to act or decide, or any person, group, organization or governmental body;
>
> c.   Faulty inadequate or defective:
>
>> (1) Planning, zoning, development, surveying, siting;
>>
>> (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>>
>> (3) Materials used in repair, construction, renovation or remodeling; or
>>
>> (4) Maintenance;

---

excluded under the "water damage" exclusion, it is a covered "ensuing loss" and Defendants may not exclude coverage under the "acts or decisions" or "faulty, inadequate or defective" exclusions.

- 30 -

of part or all of any property whether on or off the residence premises.

(Appendix to ISO Defendants' Memorandum at INS 000011, INS 000071, INS 000110, INS 000155, INS 000199, INS 000318, INS 000358, INS 000406 and INS 000458). The all-risk policies sold by State Farm and Allstate contain similar provisions including the "ensuing loss" language. (Exhibit A to Allstate Memorandum at p. 8; Exhibit A to State Farm's Memorandum at 10.

The "faulty workmanship" exclusion relied upon by Defendants has been held to be limited to "situations where the insured or someone authorized by the insured contracts for alterations to the property and is dissatisfied with the quality of the performance under that contract." Husband v. Lafayette Insurance Co., 635 So.2d 309 311 (La. App. Cir. 5 1994). Consequently, the exclusion has no application here to the negligent acts of third-parties with regard to the New Orleans levee system. As the court in Husband stated, "[t]he insurer by this exclusion intended to prevent the expansion of coverage under the policy to insuring the quality of a contractual undertaking by the insured of someone authorized by him." Id. Thus, this type of exclusion was not designed or intended to exclude first-party coverage like the type sought by the Representative Policyholder, but rather only sought to exclude coverage for losses for which the policyholder had a claim against a party it had hired to perform work on the property. Consequently, the interpretation suggested by Defendants would yield such absurd results, the provision is ambiguous and the Court must interpret this provision in favor of the policyholder and in a manner that will effect coverage. Doerr, 774 So.2d at 124. Moreover, because this provision is an equivocal term under which