the Insurance Company Defendants seek to narrow their obligations, it must be "strictly construed against the insurer." <u>Cadwallader</u>, 848 So.2d at 580.

Thus, because Defendants' water damage or "flood" exclusion does not apply to third-party negligence, then the flooding which occurred as a result of such third-party negligence would be covered under the express language of the policy providing coverage for ensuing losses.  The "Weather Conditions" provision cited above was held by the Court in <u>Leonard</u> to be ambiguous insofar as it "would make the windstorm protection illusory for those who live in areas where the risk of flooding is greatest." <u>Leonard</u>, 438 F. Supp. 2d 694.  Once again, the completely ambiguous and illusory nature of Defendants' policies is apparent, thus requiring the Court to hold the policies and this exclusion ambiguous as a matter of law in the context of hurricane-related losses.  Consequently, this entire policy provision must be determined ambiguous and unenforceable as a matter of law because it would make coverage for windstorm or other covered perils non-existent in this context.

Second, Louisiana Courts have held these purported "faulty, inadequate or defective" exclusions to be patently ambiguous insofar as the undefined term "ensuing loss" renders it is impossible to determine what is and is not covered. <u>Husband</u>, 735 So.2d at 312; <u>Lake Charles Harbor & Terminal District v. Imperial Cas. & Indem. Co.</u>, 857 F.2d 286 (5th Cir. 1988)(stating that exclusions containing "ensuing loss" exceptions are "self-contradictory gibberish" that leaves the term "ensuing" open to dispute and, therefore, ambiguous and construed against the insurance companies). As such, the exclusion is to be construed in favor of the policyholder and the exclusion is inapplicable. <u>Id.</u>

Third, because the water damage exclusion is inapplicable to water damage caused by third-party negligence, then any flooding caused by such third-party negligence is an "ensuing loss" which is covered and not excepted or excluded under the policy.  Similarly, the losses suffered by Representative Policyholders was caused by Hurricane Katrina and coverage for hurricane-related damage is expressly contemplated under the policies' Hurricane Deductibles and is not excluded by any policy language.  The policies cover all "ensuing losses" not otherwise excluded.  As set forth above, the term "flood" is not defined in Defendants water exclusions and, therefore, the release of water from the failed or ruptured levees is not specifically excluded by any provision in the Defendants' all-risk policies.  Consequently, because the rupturing of levees does not fall within the water damage exclusion and is not excluded under any other policy provision, the inundation of water from third-party negligence is not excluded."[11]

## E.    Defendants' Policies Are Facially Ambiguous And Interpretation Of The Policy Will Require Extrinsic Evidence Obtained Through The Discovery Process.

Contrary to Defendants' self-serving representations, their policies are facially ambiguous and the Representative Policyholders are entitled to conduct discovery and present extrinsic evidence to the Court in order for the Court to interpret

---

[11]  The "ensuing loss" clause in the ISO and State Farm policies are ambiguous and renders coverage wholly illusory.  The clauses purport to provide coverage for losses not excluded or excepted by the policy, however the policy subsequently excludes losses caused by weather conditions, acts or decisions and negligence of third parties which would allow the Insurance Company Defendants to broadly exclude any and all losses involving such excluded acts.  Thus, while the "ensuing loss" provision purports to "give back" coverage to the policyholder, the broad exclusions to which it is subject renders the actual coverage under the all-risk policy virtually non-existent, illusory and would lead to the very type of absurd results that render this provision ambiguous as a matter of law.

the terms of the policy to the extent they are ambiguous.  If the terms of an insurance

contract cannot be construed based on its language because of an ambiguity, the Court

must look to extrinsic evidence to determine the parties' intent.  Peterson v. Schimek,

729 So.2d 1024  (La. 1999).  Courts throughout Louisiana routinely look to materials

outside of insurance policies when interpreting the terms of  insurance policies.  For

example, in Doerr v. Mobil Oil Corp., the Supreme Court of Louisiana reviewed an

enormous volume of extrinsic evidence in holding that the so-called "pollution exclusion"

there construed should be restricted in scope by some limiting principles.  Doerr v. Mobil

Oil Corp., 774 So.2d 119, 124 (La. 2000).  The Court there referred to extrinsic

hypotheticals in finding that a strict reading of the so-called "pollution exclusion" would

lead to absurd results, id., and, in overruling a prior decision construing the same

exclusion, held that "in light of the origin of pollution exclusions, as well as the

ambiguous nature and absurd consequences that would attend a strict reading of these

provisions," id. at 135, the exclusion should be interpreted with some limiting principles.

Id.  Thus, the Court first based its holding on "the origins of pollution exclusions," which

was, per se, determined by consulting extrinsic evidence.  See Id. at 126-128, 133-34

(discussing extrinsic evidence regarding origins of pollution exclusions).

Likewise, the Doerr Court cited countless other Louisiana decisions

previously following its rationale.  See id. at 129-32 (summarizing Louisiana

jurisprudence on pollution exclusions).  For instance, in South Central Bell Telephone

Co. v. Ka-Jon Food Stores, Inc., 644 So.2d 357, vacated on other grounds, 644 So.2d

368 (La. 1994), the Supreme Court of Louisiana considered vast amounts of "extrinsic

evidence" prior to analyzing the actual words contained in the so-called "pollution

exclusion." 644 So.2d at 362-64. The Court then held that the so-called "pollution exclusion" should be interpreted consistently with the extrinsic evidence of its purpose and intent, and not its literal words. Id. at 365.

Similarly, when interpreting an insurance policy, in addition to the words of the insurance policy, courts always look to usage of trade evidence to form their interpretation. Nerness v. Christian Fidelity Life Ins. Co., 733 So.2d 146, 152, (La. App. Ct. 1999). Many courts have relied on internal claims and underwriting manuals in their decisions concerning coverage. Andover Newton Theological Sch., Inc. v. Continental Cas. Co., 930 F.2d 89, 94 (1st Cir. 1991) (relying on claims manual in finding ambiguity in the insurance policy); In re: Northeast Enterprises, Inc. v. Allstate Ins. Co., No. 91-15394, 1992 U.S. Dist. LEXIS 4800, *13, n. 4 (E.D. Bankr. Pa. Apr. 9, 1992) (utilizing claims manual to interpret key insurance policy term); Cincinnati Ins. Co. v. Clark, No. 91-0820, 1992 U.S. Dist. LEXIS 2054 (E.D. Pa. Feb. 18, 1992) (ordering insurance company to produce claims manuals pertinent to interpretation and application of key policy term); Champion Int'l Corp. v. Liberty Mut. Ins. Co., 129 F.R.D. 63 (S.D.N.Y. 1989).

Moreover, an insurance company's inconsistent interpretations and applications of policy language may evidence an ambiguity inherent in those terms, which must be construed against the insurance company:

> [T]his court finds that [other policyholder] information is relevant for the purposes of discovery since it may show that identical language has been afforded various interpretations by the insurer. It may also tend to show that the interpretations suggested by the defendants today are not the same as those of the original drafters.

<u>Nestle Foods Corp. v. Aetna Cas. & Sur. Co.</u>, 135 F.R.D. 101, 106-07 (D.N.J. 1990).
<u>See</u> <u>also</u> <u>Aetna Cas. & Sur. Co. v. Haas</u>, 422 S.W.2d 316, 319-320 (Mo. 1968) (holding
that where insurance company's treatment of language at issue shows uncertainty
concerning its application, that would be "entirely inconsistent with its contention that the
phrase was unambiguous").

　　　　Here, Defendants' policies are facially ambiguous with regard to coverage
for damage caused by hurricanes and the wind and wind-driven rain that is part and
parcel of any hurricane.  It is clear beyond any reasonable argument to the contrary that
this provision contemplates coverage for loss caused by hurricanes.  Moreover, based
upon the language contained in these Hurricane Deductibles, policyholders had a
reasonable expectation and belief that any and all losses and damages caused by a
hurricane would be covered under the policy, subject to the deductible for which the
policyholders paid.

　　　　Despite this clear and express language providing coverage for losses
caused by hurricanes, Defendants seek to invalidate or exclude this coverage by
selectively seeking to enforce another provision of their Policies that excludes water
damage and would effectively exclude the very coverage suggested by the "Hurricane
Deductible Endorsement" vis-à-vis an overbroad interpretation and application of the
"water damage" exclusions.  Under these "water damage" provisions, Defendants
purport to exclude coverage for any and all water damage, despite the fact that water
damage is recognized as a covered loss under their policies' "Hurricane Deductible
Endorsements."  Defendants ask the Court to adopt the erroneous theory that because
an excluded loss in the form of water damage occurred, this excluded cause of loss

completely invalidates the hurricane coverage paid for and reasonably expected by the policyholders in purchasing their policies. The Court cannot, as a matter of law, adopt Defendants' position and enforce the water damage exclusion as a result of the ambiguity that exists as a result of these two conflicting provisions within the policy.

F.    **Representative Policyholders' Have Alleged Valid Bad Faith Claims.**

Contrary to Defendants' assertions, the Representative Policyholders have alleged valid claims for statutory and common-law bad faith and, therefore, Defendants' Motions should be denied as to Counts Three and Four of the Amended and Restated Complaint. Representative Policyholders have alleged that Defendants have: failed to pay claims in an arbitrary and capricious manner; wrongfully and without legitimate basis applied their exclusions in an overbroad manner to deny coverage; and directed their adjusters to ignore relevant evidence and rely upon only such evidence which would exclude coverage. (Amended and Restated Complaint at ¶¶ 72-76, 85-91.) As such, it defies all bounds of credibility for Defendants to contend that Representative Policyholders have failed to allege claims under La. R.S. 22:1220(1), (5) and (6) which prohibit the misrepresentation of pertinent facts or policy provisions as well as the denial or failure to pay claims in an arbitrary and capricious manner lacking in probable cause. As such, Representative Policyholders allege valid claims for statutory bad faith pursuant to La. R.S. 22:1220 and Defendants' Motions to Dismiss should be denied as pertaining in Count IV of the Amended and Restated Complaint.

Contrary to Defendants' mischaracterization of the Amended and Restated Complaint, the Representative Policyholders claims pursuant to La. R. S.

22:1220B(6) is not limited solely to the misapplication of waterlines. Representative Policyholders allege that the Insurance Company Defendants have "adopted an industry-wide approach to denying valid clams for inappropriate reasons without probable cause" and have "breached known duties through a motive of self-interest and/or ill will without having a reasonable basis to deny these claims.: (Amended and Restated Complaint at ¶ 86, 89).  Consequently, Representative Policyholders have alleged valid claims for relief pursuant to La. R. S. 12:1220B separate and apart from the waterline issue and La. R. S. 22:658.2.

Nevertheless, the provisions of La. R. S. 22:658.2.A. provide that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence when determining whether a loss is covered or not covered under a homeowners" insurance policy."  This provision applies to the determination of coverage and, therefore, regulates conduct which, by definition, did not take place on the date of loss, but at some time subsequent thereto.  As such, Defendants' assertions that the change in statute in February 2006 had no application to Representative Policyholders because their losses occurred in August 2005 is wide of the mark.  The critical inquiry is when Defendants' conduct in wrongfully ignoring other evidence and determining coverage took place and that is a question of fact that cannot be determined as a matter of law in the context of a motion to dismiss.

Similarly, any question as to whether Defendants' denials of coverage were reasonable is a question of fact that cannot be resolved as a matter of law no matter how many times and in how many forms Defendants' maintain that their vague, ambiguous and undefined policy provisions provided a basis for exclusion.  The

question of whether an insurer's handling of a claim is arbitrary and capricious is a

factual finding.  Calogero v. Safeway Ins. Co. of Louisiana, 753 So.2d 170, 173 (La.

2000); Brinston v. Automotive Cas. Ins. Co., 703 So.2d 813, 816 (La. App. 4 Cir. 1997);

Sterling v. U.S. Agencies Cas. Co., Inc., 818 So.2d 1053, 1056 (La. App. 4 Cir. 2002);

Marcel v. Allstate Insurance Co., 536 So.2d 632 (La. App. 1st Cir. 1988), writ denied,

539 So.2d 631 (La. 1989).  An Insurer's statutory duty of good faith and fair dealing

continues after litigation over a claim has begun.  McDill v. Utica Mutual Insurance Co.,

475 So.2d 1085, 1092 (La. 1985); Harris v. Fontenot, 606 So.2d 72, 74 (La. App. 3d Cir.

1992); Defazio v. City of Baton Rouge, 625 So.2d 733, 734 (La. App. 1st Cir. 1993, writ

denied, 93-2822 (La. 1/13/94), 631 So.2d 1164; and Theriot v. Midland Risk Ins. Co.,

95-277 (La. App. 3 Cir. 11/2/95), 664 So.2d 547, 550 reversed on other grounds 95-

2895 (La. 5/20/97), 694 So.2d 184.  There is no question that Act 12 of the Louisiana

Legislature First Extraordinary Session of 2006, which enacted La. R.S. 22:658.2, at

least applies to any bad faith claims from February 23, 2006.  Act No. 12 legislates the

burden of proof of the insurer.  To the extent it changes the law, changes in burden of

proof are procedural in nature and are applied retroactively.  Sudwischer v. Estate of

Hoffpauir, 97-0785 (La. 12/12/97); 705 So.2d 724, 729.  Furthermore, to the extent Act

No. 12 is substantive or disturbs vested rights, Act No. 12 is a pronouncement of the

public policy of the State of Louisiana enacted for the protection of the public interest

which should be applied retroactively to reform any contract in derogation therewith.

Louisiana Civil Code Articles 7, 2030, and 2034. As such, Defendants' argument on this

point is unpersuasive and does not warrant dismissal of Representative Policyholders'

claims.

## G.     Louisiana Law Imposes a Common-Law Duty of Good Faith That Cannot Be Renounced.

Louisiana law requires good faith performance in all contracts.  La. Civ. Code arts. 1983, 1759.  This is a mandatory obligation of Louisiana's Civil Law system that may not be abrogated.  This compulsory requirement of Louisiana law is equally applicable to all contracts, including insurance policies.  The Insurance Company Defendants' refusal to fully compensate policyholders for the losses caused to them by Hurricane Katrina constitutes a breach of the inherent obligation of good faith in callous disregard of their policyholders' interests and constitutes a blatant breach of the duties of loyalty and cooperation that are essential components of the overriding obligation of good faith, as explained hereafter. See Id.; Litvinoff, <u>Good Faith</u>, 71 Tulane Law Rev. 1645 (1997); 5 Litvinoff, <u>The Law of Obligations</u> 17-19 (1992); 2 Litvinoff, <u>Obligations</u> 6-9 (1975).

One of the foundations on which the entire edifice of the civil law is built is the rule imposing an obligation of good faith on all parties. At civil law, good faith is a general principle of law, a standard of conduct, a principle of interpretation and construction of both contracts and statutes, and a "gap filler" par excellence. <u>See</u> Litvinoff, <u>Good Faith</u>, 71 Tulane Law Rev. 1645 (1997); Litvinoff, <u>The Law of Obligations</u> 17-18 (1992); and 2 Litvinoff, Obligations 6-9 (1975).  As stated by the U.S. Fifth Circuit Court of Appeals in a leading case involving Louisiana law: "Good faith in the performance of obligations is an integral part of the fabric of Louisiana's law of obligations." <u>Makofsky v. Cunningham</u>, 576 F. 2d 1223, 1226 (5th Cir. 1978).  The overriding duty of good faith permeates the entirety of the Louisiana law of obligations which contains the Louisiana law of contract. Thus, under well-settled principles of

Louisiana statutory law, as interpreted by the courts and commentators, contracts must be entered into, performed, and interpreted in good faith.  See Id.; The Land Offshore Company v. Martin, 469 So. 2d 1177 (La. App. 3rd. Cir. 1985); and 2 Litvinoff, Obligations 60-9 (1975).

      The Louisiana Civil Code, as well as Louisiana's commercial laws, establish a legal obligation of good faith that contracting parties may not renounce. See La. Civ. Code arts. 1759, 1983; and La. R.S.10:1-201(19), 1-203. Article 1759 of the Louisiana Civil Code provides: "Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation." Id.  Additionally, Civil Code article 1983 states: "Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith." Id. (emphasis added). La. R.S. § 5. 10:1-201(19), derived from the U.C.C., provides: "Good faith means honesty in fact in the conduct or transaction concerned, except as provided in R.S. 10:1-203." Id.  La. R.S. § 10:1-203 then provides: "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement. Id.  The standard of good faith performance required under this title shall be based upon Article 1983, 1996, and 1997 [of the Louisiana Civil Code]." The insurer's obligation to perform in good faith is also a fundamental tenet of the Louisiana Insurance Code. See e.g., La. R.S. § 22:1220 and 22:658.2.

      Because this obligation is one of public order character, that is, one that concerns the public interest, it can never be renounced or waived in any way, shape or

form whatsoever.[12]  Clearly, if a party could waive this obligation, then the other party's obligation to perform would be illusory. See Litvinoff, Stipulation as to Liability and as to Damages, 52 Tulane Law Rev. 258 (1978). It is significant that the public order nature of the obligation of good faith performance, particularly in regard to the obligations of an insurer under an insurance policy, was expressly noted by the redactors of the Louisiana Insurance Code. See e.g., La. R.S. § 20:1220.  Here, the Insurance Company Defendants' refusal to compensate the plaintiff policyholders for the damages caused to them by Hurricane Katrina is a blatant breach of good faith for which these Defendants are liable in damages. La. Civ. Code Arts. 1759, 1983; 5 Litvinoff, The Law of Obligations 1779 (1992); and 2 Litvinoff, Obligations 6-9 (1975).

Civilian authorities have noted that the overriding duty of good faith unfolds itself, fundamentally, in two separate obligations: (a) an obligation of loyalty and (b) an obligation of cooperation. Weill et Terré, Droit Civil:Les Obligations 397 (3d ed. 1980).  The obligation of loyalty imposes on the debtor, first of all, an obligation to faithfully perform his contractual engagements, regardless of the difficulties that may be encountered and compels an obligor to perform all acts necessary to attain the contractual object. VI Planiol et Ripert, Traité Pratique de Droit Civil Français 510 (2nd

---

[12] See Louisiana Civ. Code art. 7, which provides: "Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.  Moreover, French doctrine and jurisprudence strongly assert that the overriding obligation of good faith required of all parties to a contract imports affirmative duties regarding contractual performance, and not merely an absence of malice or ill will towards the co-contractant. VI Démogue, Traité des Obligations en Général 8-38 (1931); Weill et Terré, Droit Civil: Les Obligations 397-401 (3d ed. 1980); VI Planiol et Ripert, Traité Pratique de Droit Civil Français, 508-509 (2nd ed. 1952). It is noteworthy that the same rule prevails in other civilian jurisdictions, such as Quebec. See generally, Rolland, La Bonne Foi Dans le Code Civil de Quebec: Du Général au Particulier, 26 Revue de Droit de L'Université de Sherbrooke 377, 391 (1996).

ed. 1952). The obligation of loyalty also includes a negative duty that is particularly important in this case: the duty of not doing any acts that may deprive the other contracting party of the normal benefit of the contract (e.g., failure to make indemnity payments on a claim under the insurance policy). Weill et Terré, <u>supra</u>, at 398.

The second of the two fundamental components of the overriding duty of good faith is the obligation of cooperation. See Démogue, supra, at 17; Weill et Terré, supra, at 399-401. It is well-established in the civil law that contracting parties, as part of their obligation to perform in good faith, have an unwaivable duty to collaborate with each other for the accomplishment of the goals of the contract. Thus, contracting parties must assist each other and refrain from a course of conduct that tends to defeat the accomplishment of the contractual goals of the other party. Démogue, supra at 17-18; 2 Starck, Droit Civil: Les Obligations 468 (3d. ed. 1989). Collaboration in this case compels the defendants—at the very least—to compensate plaintiff policyholders in damages.

Louisiana courts and the federal courts in their construction of Louisiana law, have recognized that the overriding duty of good faith permeates the entire law of obligations and binds contracting parties to rules of ethical conduct, including the affirmative duties of loyalty and cooperation, in their relations INTER SESE throughout the life of an agreement. <u>See</u> <u>e.g.</u>, <u>Shell Offshore, Inc. v. Marr</u>, 916 F. 2d 1040 (5th Cir. 1990), wherein the court indicates that a party that takes an unfair advantage of another party to the contract violates the overriding duty of good faith. <u>See</u>, <u>City of New Orleans v. United Gas Pipeline Company</u>, 517 So. 2d 145, 181 (La. App. 4th Cir. 1987); <u>Gibbs Construction Company, Inc. v. Thomas</u>, 500 So. 2d 764 (La. 1987); <u>National Life</u>

Corporation v. Benedict and Myrrick, 371 So. 2d 792 (La. 1979); Makofsky v.
Cunningham, 568 F. 2d 1223 (5th Cir. 1978).  Clearly, to leave plaintiff policyholders'
property in a dilapidated and degraded state after reaping benefits of premiums
therefrom for such a long time amounts to taking a most unfair advantage of plaintiff
policyholders which is reprobated by good faith.  For these reasons, and as explained
elsewhere in this memorandum, the Insurance Company Defendants' egregious
conduct and utter failure to perform pursuant to the standards of loyalty and cooperation
required by law constitutes a violation of the common-law overriding obligation of good
faith and a bad faith breach of the insurance policies.  Consequently, Representative
Policyholders have alleged a valid common-law claim for Defendants' breach of the
overriding duty of good faith and fair dealing as mandated by Louisiana's Civil law
system.

## H.     Representative Policyholders' Claims For Breach Of Fiduciary Duty Are Valid And Should Not Be Dismissed

Finally, Representative Policyholders have alleged valid actionable claims
for breach of fiduciary duty against Defendants Allstate Indemnity, Allstate, State Farm
and Liberty Mutual.  As alleged in the Amended and Restated Complaint, these
Insurance Company Defendants "sell their homeowners' insurance policies directly to
their customers, including Policyholders and, in that respect, function in the capacity of
insurance brokers or agents."  (Amended and Restated Complaint at ¶ 94).  As such,
these Insurance Company Defendants owe these policyholders a fiduciary duty of
undivided loyalty, due care and fidelity.  Halter v. Allmerica Fin. Life Ins. & Annuity Co.,
1998 WL 516109, at *4 (E.D. La. Aug. 19, 1998):  The Court must accept these
allegations as true in determining the pending Motions to Dismiss and, as such,