1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


COLLEEN BERTHELOT, WIFE OF,   *      Civil Action No. 05-4182,
and JACKIE BERTHELOT, ET AL,  *      c/w Nos. 05-4181, 05-4191,
                              *      05-4568, 05-5237, 05-6073,
        Plaintiffs,           *      05-6314, 05-6323, 05-6324,
                              *      05-6327, 05-6359, 06-0020,
           v.                 *      06-0151, 06-0152, 06-0153,
                              *      06-0169, 06-0225, 06-0886,
BOH BROTHERS CONSTRUCTION     *      06-1672, 06-1673, 06-1674
COMPANY, LLC, ET AL,          *
                              *      Section "K"
        Defendants.          *
                              *      New Orleans, Louisiana
* * * * * * * * * * * * * * *        September 6, 2006


HEARING
BEFORE THE HONORABLE STANWOOD R. DUVAL, JR.,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Consol Plaintiff           Ashton R. O'Dwyer, Jr., Attorney
Dawn Bundy, 05-4181:             at Law
                               By:  ASHTON R. O'DWYER, JR., ESQ.
                               One Canal Place, Suite 2670
                               New Orleans, Louisiana 70130


For Defendant Boh Bros.:       Kingsmill Riess, LLC
                               By:  MICHAEL R. C. RIESS, ESQ.
                               By:  CHARLES B. COLVIN, ESQ.
                               201 St. Charles Ave., Suite 3300
                               New Orleans, Louisiana 70170


Court Audio Operator:          Cindy Usner

Transcriptionist:              Dorothy Bourgeois
                               c/o U.S. District Court
                               500 Poydras Street, Room C151
                               New Orleans, Louisiana 70130
                               (504) 589-7721


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

I N D E X

| EXHIBITS: | | Marked | Received |
|---|---|---|---|
| O'Dwyer No. 1 | O'Dwyer 3/20/06 Letter | 26 | 27 |

3

```
 1                    P R O C E E D I N G S

 2                 (Wednesday, September 6, 2006)

 3                  (Call to Order of the Court)

 4           THE CLERK:  This is Civil Action 05-4182, this is

 5   regarding the Berthelot matter here on a Motion for Sanction.

 6           THE COURT:  Mr. O'Dwyer, just to let you know, I know

 7   I have your Motion to Continue your hearing and we'll talk

 8   about that as well.

 9           All right, Mr. Riess.

10           MR. RIESS:  Thank you, Your Honor.

11           THE COURT:  Just to let y'all know as a prelude, all

12   of us are busy, I'm sure, and the Court regards every matter

13   before it as important.  When it comes to lawyers having

14   problems with each other, sometimes it's necessary to come

15   before the Court.  But just to let you know, the Court has got

16   a lot on its plate and it expects after this hearing to have a

17   protocol to resolve this where it doesn't take too much of the

18   Court's time.  I understand why you're here and with that, go

19   ahead.

20           MR. RIESS:  Thank you, Your Honor.  And I understand

21   and it was not to burden the Court that I filed a motion;

22   rather it's to get this case and get the individual that's the

23   subject of the motion onboard with the rest of the attorneys in

24   this case and to act in a professional manner.

25           Your Honor, I'd like to go through very briefly the
```

1    chronology.  April 18, 2006, you issued an order on April 6,

2    and you said, "I want all the Defendants to disclose in writing

3    written disclosures by April the 18th of 2006, what each of you

4    Defendants did."  And Boh Brothers complied with that request

5    and issued a written disclosure filed with this Court where we

6    said we dredged and we drove sheet piling at the 17th Street

7    Canal, and we drove a test pile at the Industrial Canal

8    project.

9           On May 2, 2006, Judge Wilkinson had the evidentiary

10   hearing with the two engineers from IPET.  You probably

11   remember that, Your Honor, because it was the subject of

12   discussions that led to the work protocol being implemented in

13   this case.

14          There was a hearing on a Motion to Compel

15   Preservation of Evidence on May the 10th, 2006.  That was the

16   last step that resulted in us coming to Your Honor, a mandatory

17   status conference on May the 12th, where you and

18   Judge Wilkinson were here and it was decided at that point in

19   time, "Mr. Riess, I want you to get together with Mr. Lambert,

20   Mr. O'Dwyer, and the other Plaintiffs Liaison Committee members

21   and come up with a work protocol on the 17th Street Canal so

22   that the evidence is preserved and maintained to the

23   satisfaction of the Court and to the satisfaction of the

24   parties.  You all go work it out."  And we did so.

25          And on May 16th, we sent to Judge Wilkinson with a

1    copy to Your Honor of the work protocol regarding the work

2    activities on the 17th Street Canal that Boh Brothers in its

3    capacity as not a party litigant, but rather as the successful

4    bidder on that subsequent job was performing.  That is the work

5    at the failed -- the breach site to put a permanent fix,

6    there's a temporary patch there, to put a permanent fix and to

7    excavate the old failed I-wall system.

8            May 24, 2006, Your Honor, is a day that I came into

9    this Court, even though not a party litigant, but I was asked

10   to come to this Court.  That was the day that I quoted from the

11   e-mails that Mr. O'Dwyer sent to me and to Boh Brothers, and I

12   quoted from them and I said in open court on behalf of Boh

13   Brothers, "This is it.  If this doesn't stop, it is

14   sanctionable conduct.  I'm going to file a Motion for Sanctions

15   and for a protective order," at that point in time.  And

16   Mr. O'Dwyer's response was -- you asked him, "Mr. O'Dwyer, do

17   you have any response?"  "No, Your Honor, no response."

18           On May 31, 2006, pursuant to your Minute Entry of

19   May 12, 2006, Boh Brothers submitted written documentation,

20   specifically the contracts and the specifications showing what

21   work Boh Brothers did at the 17th Street Canal, that is drive

22   the sheet pile and dredge to specified depths as per the As-

23   Built drawings, which at all times during this discussion,

24   Your Honor, and for the -- I think since October or November of

25   '05 have been on the Corps' website.

1           Now, one of Mr. O'Dwyer's main defenses to his

2   actions or justifications is, "Oh, for the first time in late

3   August 2006, I found out that you, Boh Brothers, dredged the

4   17th Street Canal."  Corps' website had that information.  The

5   written disclosure that we filed with the Court had that

6   information.  The contracts that we sent to Plaintiffs' Liaison

7   Committee members had that information.  The Motion for Summary

8   Judgment that has been filed since June the 8th or 1st, I can't

9   remember, Your Honor, I believe June 8th, has that information.

10  It's been argued.  It's been argued last Friday, August 25th.

11  To say that that just came to light as in justification for

12  Mr. O'Dwyer's actions borders on the absurd.

13          Mr. O'Dwyer between May 15th and August 4th, 2006 has

14  barraged me with e-mails on a sporadic basis, but when I get

15  them, I get them.  And he is glad to know that I condone that

16  12 year olds were giving birth to illegitimate children and

17  that I sanction -- which is a good choice of words -- killing.

18          Now, Your Honor, that struck a nerve, I don't mind

19  telling you.  Stephen Hall left my office in 1994 and was

20  carjacked and murdered out of the Energy Centre.  My niece, who

21  was a New Orleans police officer, was killed.

22          Your Honor, he has filed pleadings; he has sent e-

23  mails that says, "I have pulled the wool over your eyes and

24  pulled the wool over Judge Wilkinson's eyes."  He's accused me

25  of filtering information and documentation regarding the 17th

1    Street Canal project.  He has told me in no uncertain terms,

2    "You'd better put your malpractice carrier on notice and you

3    have a conflict with Boh Brothers and its liability

4    underwriter."  And he asked me a question point blank,

5    "Michael, just out of curiosity, is the Corps of Engineers

6    going to hold Boh Brothers and its liability underwriters

7    harmless from the willful and wanton destruction of evidence

8    that you all are doing at the 17th Street Canal?"  All this at

9    the time, Judge, these are being send, e-mails are being sent

10   when he's never sued my client.  He never made a claim, a

11   complaint with this Court of spoliation of the evidence.  He

12   never sued Boh Brothers.  He didn't do that until the last two

13   weeks in August.

14        I filed my Motion for Sanctions on August 4th.  What

15   was his response?  Best defense is a good offense; you're

16   guilty of misconduct and you're a fraud, Mr. Riess.

17        Your Honor, I don't need to belabor the point, but

18   he's called other parties names in this case.  You're aware of

19   it; you've read the pleadings, from body bags to whatever

20   pejorative comment and derogatory comment that is just out of

21   bounds.

22        This case, hopefully without my involvement, but

23   maybe with my involvement, is going to go on for quite some

24   time.  This gentleman has not shown an ability to get along

25   with anybody, much less undersigned Counsel, much less me.  If

1    he's not stopped now it's just going to get worse.  And,

2    unfortunately, and I apologize to the Court that I have to

3    burden the Court with coming forth with a motion to intervene

4    among conduct -- to ask for intervention by and between conduct

5    between attorneys.  I've never done it in 23 years.  That's the

6    only way that this gentleman is going to be stopped.

7             And, Your Honor, we ask for sanctions appropriate

8    with this conduct of a $50,000 payment to Boh Brothers, $50,000

9    payment to a Katrina Relief Fund that you so designate, and

10   that Mr. O'Dwyer be permanently barred from attending any

11   activities at the 17th Street Canal.  Mr. O'Dwyer's experts can

12   be there.  Mr. O'Dwyer's Liaison Committee members and Liaison

13   Plaintiffs' Co-Counsel can be there, obviously to protect his

14   client's interest.  Your Honor, without that if it's not going

15   to be me, somebody else is going to be back here in two months.

16            THE COURT:  Let me ask you this, sir.  On the request

17   that he be barred from going to the 17th Street Canal site, is

18   there any -- I've looked at the e-mails that seemed to be the

19   genesis of this, has there been any occurrence at the 17th

20   Street Canal that you allege where the Court barring him would

21   be an appropriate sanction?  In other words, has something

22   happened there untoward?

23            MR. RIESS:  Something happened in the very early part

24   of May which promoted me to go to an evidentiary hearing before

25   Judge Wilkinson with Mr. Lambert and Mr. O'Dwyer that the

1   situation has been rectified, because the work protocol came

2   into fruition.  At that point in time there were problems and

3   there were issues.  Since that time I can candidly say,

4   Your Honor, there have not been, because quite honestly the

5   project is shut down.  There have been no site inspections for

6   quite some time.  I cannot recall, Your Honor, the last time

7   they've been out there.  It's been a couple of months, I

8   believe, Your Honor, at least.  There may have been one about a

9   month or six weeks ago where the top part of a monolith was

10  taken down, but the Corps has completely redesigned that

11  project and it was the subject I think of the Corps'

12  representative coming before Your Honor on Friday to say, "We

13  don't know how -- right now our engineers are incapable of

14  telling us how to excavate this failed I-wall, because of the

15  dewatering issues out there and we want to make sure there's

16  not another failure."  So, to be fair, really there hasn't been

17  a chance to be a problem in the last two or three months.

18          If you have no other questions, I thank you for your

19  time.

20          THE COURT:  None.

21          Mr. O'Dwyer.

22          MR. O'DWYER:  May it please the Court, Your Honor;

23  Ashton O'Dwyer for Plaintiffs.

24          Your Honor, is he going to blame me for Katrina?  I

25  am the source of all of his and his client's problems?  I'm not

1  justified in being a zealous advocate on behalf of my wholly

2  innocent clients?  I respectfully submit that I am, and I have

3  been, and I will continue to be within the bounds --

4           THE COURT:  Let me ask you this, sir, you've

5  accused --

6           MR. O'DWYER:  -- of the ethics --

7           THE COURT:  -- you've accused --

8           MR. O'DWYER:  -- of our profession.

9           THE COURT:  Just a minute.  You've accused him of

10 being a criminal, sir, you know, covering up.  Have you accused

11 him?

12          MR. O'DWYER:  I haven't used the word "criminal," I

13 don't believe --

14          THE COURT:  Well, no, not the word.  I mean a word by

15 -- you know, "A rose by any other name still smells as sweet."

16 So, when you say he's covering up, did he not disclose -- was

17 he not candid with the Court?

18          MR. O'DWYER:  Your Honor, there were 570-some odd

19 deaths attributable to the breach --

20          THE COURT:  I'm talking about Mr. Riess right now.

21          MR. O'DWYER:  -- at the 17th Street Canal.

22          THE COURT:  I'm talking about Mr. Riess right now and

23 this motion.  Whether the entire City was wiped out but you and

24 Mr. Riess, I'm interested in your conduct vis-à-vis Mr. Riess.

25 I don't care if you're the only two people left in the world

1   and I'm the only Judge, okay?  Everybody is dead but you and

2   Mr. Riess.  We still have Rules of Professional Conduct.

3           Now, did or did you not, do you think you have

4   observed the Rules of Professional Conduct and Professionalism?

5           MR. O'DWYER:  Yes.

6           THE COURT:  Okay.

7           MR. O'DWYER:  Tell me -- the point one I was going to

8   make in my argument is you said a moment ago when he stood up,

9   "We all know why we're here."  Well, guess what?  Ashton

10  O'Dwyer does not know why he's here.

11          THE COURT:  Well, you're here --

12          MR. O'DWYER:  By what authority am I here today?

13          THE COURT:  Okay --

14          MR. O'DWYER:  And precisely what am I accused of

15  doing and what rule or disciplinary rule am I accused of

16  violating?

17          THE COURT:  Well --

18          MR. O'DWYER:  I haven't heard it.

19          THE COURT:  Okay.

20          MR. O'DWYER:  All I've heard is inherent power of the

21  Court to conduct its affairs.

22          THE COURT:  Which does exist, sir.

23          MR. O'DWYER:  Yes, sir, it does exist, that's why I

24  didn't brief that.

25          THE COURT:  And you --

1          MR. O'DWYER:  But tell me what rule I violated, sir?

2          THE COURT:  Well, there's the Code of

3    Professionalism, I think --

4          MR. O'DWYER:  Tell him to tell me what rule I

5    violated.

6          THE COURT:  I'll tell him, but you don't tell him.

7    If anybody is going to get excited, Mr. O'Dwyer, in this Court,

8    I'm going to get more excited than you.  Keep that in mind.

9    That's one of your problems, sir.  You have been unduly

10   vituperative.  You can be a very good lawyer, a very clever

11   lawyer; you're a very bright man, highly intelligent.  But the

12   vitriol and rhetoric is highly self-indulgent, highly self-

13   indulgent, and it has been directed to the Court as well.

14         It is not persuasive.  If you're going to represent

15   your poor clients, then don't do it with vitriolic verbiage

16   that is not persuasive.  I'm telling you that right now, since

17   I'm the guy that right now has to decide, and the Court of

18   Appeal can do whatever it's going to do.

19         MR. O'DWYER:  We're getting there, Your Honor.

20         THE COURT:  I understand.  But what I'm telling you

21   is your vitriol is not persuasive and it won't be persuasive to

22   anyone.  It's not.  Your infused rhetoric, although you may

23   have legitimate anger, is sometimes out of place in a

24   courtroom.  You know, I mean we can all call each other names,

25   but I mean let's get in a sandbox and fight, but it doesn't do

1    any good.  You can sit there and shake your head, but I'm the

2    one who's looking at it and I have no ax to grind here with

3    either of you.  I'm looking at and I think Mr. Riess should say

4    this is why we feel that the inherent powers of the Court --

5    but let's just look at it just for a second and then I'll ask

6    you something and then give you plenty of time.

7              "Tread carefully because you and your client are

8    being watched."  Let's see -- okay, what about the fact that

9    they hid the dredging?  Did you make that allegation?  You

10   either did or you didn't.  Did you tell them that he had kept

11   that -- "Pulled the wool over the Court's eyes"?

12             MR. O'DWYER:  Your Honor, are we talking about his

13   complaints about me or my complaints about him --

14             THE COURT:  Right now --

15             MR. O'DWYER:  -- which we haven't gotten to yet.

16             THE COURT:  No, we'll get to yours.

17             MR. O'DWYER:  Well, what do you want me to address

18   right now?

19             THE COURT:  All right, are you accusing -- do you

20   think your e-mails imply that he has hidden evidence from the

21   Court?

22             MR. O'DWYER:  The gravamen of my complaint against

23   Mr. Riess personally is that on July the 7th, after he

24   represented to Your Honor and to Magistrate Wilkinson in open

25   court in transcripts which have not been prepared yet, he

1  implied that Boh Brothers was going to do all that was

2  reasonably necessary to accommodate the Plaintiffs' interest in

3  preserving evidence.  That was a misrepresentation, because on

4  July the 7th, without any pretense of preserving anything the

5  top four feet of the concrete monoliths were hammered into

6  cement dust.

7          THE COURT:  Then why, if you have a protocol, why

8  don't you file a motion before Judge Wilkinson to say they have

9  violated the protocol and this is the proof and I want whatever

10  relief I'm entitled to?

11          MR. O'DWYER:  That is coming, but --

12          THE COURT:  Well --

13          MR. O'DWYER:  -- in the meantime --

14          THE COURT:  Well, file the brief, don't send him e-

15  mails.  You don't have to -- what's the use of both of you

16  communicating?

17          MR. O'DWYER:  Your Honor, before I do that I'm going

18  to sue his client for spoliation of evidence, something I

19  haven't done in 35 years --

20          THE COURT:  That's --

21          MR. O'DWYER:  -- other than recently against the

22  United States of America.

23          THE COURT:  Right.  Well, you're certainly entitled

24  to do that, but I'm saying what about all these e-mails between

25  you; are they really accomplishing anything?

1              MR. O'DWYER:  What about them?

2              THE COURT:  Are they accomplishing --

3              MR. O'DWYER:  Tell me --

4              THE COURT:  -- anything?

5              MR. O'DWYER:  -- what rule did they violate?

6              THE COURT:  Well they're --

7              MR. O'DWYER:  They are making a paper record.

8              THE COURT:  You know the Professionalism Rule?  Do

9    you think it's professional to say "Glad to know you condone

10   killing 12-year old girls"?  Is that professional, Mr. O'Dwyer?

11   Even in your most -- is that professional?

12             MR. O'DWYER:  That was from him to me.

13             THE COURT:  "Glad to know that you condone 12-year

14   old girls giving birth to illegitimate children"?

15             MR. RIESS:  "And sanction killing," Your Honor, is

16   the next phrase in that e-mail.

17             MR. O'DWYER:  Your Honor, put it in context.

18             THE COURT:  Whatever it is, do you think it's

19   professional?  Do you think that's really a professional way

20   for you to handle yourself?  I'm not talking about --

21             MR. O'DWYER:  No.

22             THE COURT:  Okay, that's all I'm saying and that's

23   all I'm trying to do.

24             MR. O'DWYER:  I wish I hadn't done it, but it was

25   from him to me and I didn't publish it to anyone else.  He did

16

1    that, not me, and he was digging the needle in me by reminding

2    me what you said about me in your Order and Reasons, so I gave

3    him tit for tat, okay?

4            THE COURT:  Okay, let me ask you this:  Do you think

5    it might be better if you two wouldn't e-mail each other

6    anymore unless it's an official pleading?

7            MR. O'DWYER:  Your Honor --

8            THE COURT:  I mean wouldn't that maybe just -- I'm

9    saying it's not accomplishing anything.  It's better than me --

10   you know, let me say it, I would rather not use my so-called --

11   my inherent -- I have used it, and I would rather not have to

12   use it.  I would rather people attempt to -- if you can't get

13   along, file pleadings with the Court.  "This is what this guy

14   is doing."  File a pleading, and then I'll -- that's why I'm

15   here because there are pleadings that have filed, both of you

16   are requesting sanctions.

17           MR. O'DWYER:  All right.

18           THE COURT:  So, I'm saying at the very least I can

19   tell you, I'm going to order you not to e-mail each other

20   unless there is -- at the very least, I'm just telling you

21   right now, unless there is a pleading; there's no need

22   otherwise, a pleading, we have pleadings, interrogatories,

23   request for admissions.  There's no need for you two to be

24   jabbing each other with e-mails because you're not

25   accomplishing anything by them other than sniping at each

1   other.

2          MR. O'DWYER:  Well, I wish I weren't here, but I've

3   never been ordered in 35 years of practicing law not to

4   communicate with a party --

5          THE COURT:  Well --

6          MR. O'DWYER:  -- opponent's lawyer.

7          THE COURT:  -- this is going to be a first.  You're

8   not going to have any personal e-mails.

9          MR. O'DWYER:  Well --

10         THE COURT:  Well, you have this option, sir.

11         MR. O'DWYER:  All right, I'm listening.

12         THE COURT:  This -- or getting in real trouble

13  because of the tenor of these e-mails.  All I'm saying is it's

14  not accomplishing anything and it's a light, it's very light,

15  it's a very light way of approaching this because the e-mails,

16  and there's a professionalism --

17         MR. O'DWYER:  Code --

18         THE COURT:  -- rubric and code in this that's been

19  adopted by this Court.

20         MR. O'DWYER:  But professionalism is not --

21         THE COURT:  And in order -- listen --

22         MR. O'DWYER:  -- disciplinary --

23         THE COURT:  -- just a minute --

24         MR. O'DWYER:  -- rule.

25         THE COURT:  -- in order to enforce it I'm going to

1    tell you not to e-mail it unless you file a pleading, otherwise

2    it means nothing.  It's just it's ridiculous.  It's childish.

3    It's self-indulgent and I'm not going to allow it period.  You

4    can do whatever you want with that, take a writ, whatever you

5    like, but that's the very least what I'm going to do.

6              I've looked at these pleadings.  I am tired of seeing

7    -- I've looked at all of your pleadings.  They are self-

8    indulgent, sir.  I'm telling you that; it has nothing to do

9    with Mr. Riess.  They are not professional in some instances,

10   and I'm not going to take offense, but others might take

11   offense more.  The things with the Court, I'm simply doing what

12   I can right or wrong and you have a right to appeal it.  That's

13   what I did as a lawyer, that's what you should do and that's

14   fine.  It's just the way we approach it.  Persuade me with law,

15   logic, not vitriol, not saying -- and something is really --

16   somebody's doing something wrong, file a pleading.  Say, "Here

17   it is," and then we will, hopefully, address it.  If we don't,

18   it should be appealed.

19             That's all I'm trying to say.  I think there is way

20   too much sniping, and name calling, and innuendo, and inference

21   of pusillanimous things that are being done, maybe by both of

22   you.  I'm just saying, I'm looking at these e-mails and, look,

23   it's not that you're threatening him or anything, it's just

24   that it's not professional.

25             But go ahead, I'm just telling you my feelings, but

1    go ahead.  Go ahead.

2            MR. O'DWYER:  All right, Your Honor.  It's

3    unfortunate that you and I don't have much of a history.

4    You've been on the bench 11 years, but you and Judge Lemmon are

5    about the only two judges that I haven't tried a case to.  I

6    feel like if you knew me a little better, you would not be

7    raising your voice to me over what I --

8            THE COURT:  Well, sir, you've been raising your

9    voice.  But, anyway, right now it's my courtroom, so, you know,

10   whatever it is, it is.  Okay, but you understand you've been

11   screaming into the microphone; do you understand that?  I know

12   I've been raising my --

13           MR. O'DWYER:  Well, I'm under attack.

14           THE COURT:  Okay.  Well, you know --

15           MR. O'DWYER:  This is a motion against me.

16           THE COURT:  Well, you know, you filed a motion.  But,

17   perhaps, you know, maybe soften a little bit, be a little

18   persuasive.

19           MR. O'DWYER:  All right, let me just make my points.

20           The first point was by what authority am I here

21   today?  What precisely am I accused of doing other than being

22   "unprofessional" in the one e-mail that I sent Mr. Riess

23   without copying anyone else on in which I've conceded was

24   unprofessional and which I wish I could withdraw.  But in

25   context, I was quoting from my own --

1          THE COURT:  Right.

2          MR. O'DWYER:  -- "diatribe" --

3          THE COURT:  I understand.

4          MR. O'DWYER:  -- in the original pleading.  And I

5    know Kel Riess.  I didn't realize they were related.  I know

6    Kel's daughter was tragically killed and, you know, I'm very

7    sorry for that if that opened wounds or anything like that.  I

8    didn't know about his law partner, okay, but knew about the

9    incident.

10          THE COURT:  What about "Pulling the wool over the

11   Court's eyes"?  To me that implies --

12          MR. O'DWYER:  I don't take that back.  I don't take

13   that back.

14          THE COURT:  Okay, I understand that and you don't

15   have to take anything back, but if you "Pull the wool," that

16   implies disingenuous behavior.

17          MR. O'DWYER:  Your Honor, I have been trying to get

18   you and Judge Wilkinson out to the 17th Street Canal breach

19   site from the time we started the discovery wars.  But in your

20   infinite wisdom you sit there in your black robes on the

21   bench --

22          THE COURT:  Yeah, that's all --

23          MR. O'DWYER:  -- you'd understand the situation a lot

24   more had you gone out there.

25          THE COURT:  I saw your videos, Mr. O'Dwyer, and let

1    me tell you, there are some things you don't understand.  I've

2    read your briefs.  You need to understand the law a little

3    better.  So, if we're going to understanding, I find your

4    briefs have been woefully deficient and unprofessional and

5    close to being sanctioned.  So, let me just tell you, you're

6    about to get a lightning bolt, because let me really tell you

7    what, your briefs have not cited law, they have not cited --

8    they have rambled, they have been tirades, and I'm tired of it.

9    Forget this, I'm tired of it, and I'll not only raise my voice,

10   I will restrict you mightily, sir, if you continue it.

11            MR. O'DWYER:  All right, I'm going to make a few

12   more comments --

13            THE COURT:  Did you just understand that?  And you

14   don't know me very well either, sir.

15            MR. O'DWYER:  I'm going to make a --

16            THE COURT:  So, I don't just sit here in my black

17   robe, I've been a little busy looking at a lot of pleadings,

18   like 13 amended complaints, sir.  Looking at civil rights

19   complaints that didn't know civil rights law from squat, and

20   you didn't get sanctioned.  Some of it was grossly

21   unprofessional, let me tell you, sir, and I can write it so

22   clearly that maybe you will see it, because you seem to be a

23   man that when you think you're wrong you admit it, which is a

24   noble quality and I see that.  But I'm just telling you, I'm at

25   my wit's end.

1          MR. O'DWYER:  Okay.

2          THE COURT:  So, you need to understand that and

3   realize that I have been indulgent with you.  You may not

4   understand it, but I have and I'm letting you know it right

5   straight up looking you right in the eye.

6          MR. O'DWYER:  All right, Your Honor, that's very

7   nice.

8          THE COURT:  It's not nice, sir.

9          MR. O'DWYER:  I'm going to go to the last point --

10          THE COURT:  Let's use words -- you know it's not

11   nice.  Don't be sarcastic.  I'm not being sarcastic.

12          MR. O'DWYER:  I'm going to go to the last point first

13   and I'm going to make about four points --

14          THE COURT:  All right.

15          MR. O'DWYER:  -- and I'll sit down, because your

16   message is coming across to me loud and clear.

17          THE COURT:  I hope it is.

18          MR. O'DWYER:  I hear you, Your Honor, okay.

19          General Custer, they said, had knitting needles stuck

20   through his ears after he was killed at the Battle of the

21   Little Big Horn and the Indian women who did that to his body

22   wanted to make sure that he heard the voices in the next life.

23   Anyway, I hear you.

24          I'm here with some trepidation.  I almost hired

25   counsel for this hearing.  I thought the better of it.  I've

1    heard everything you've said.  I am taking the matter very

2    seriously.  I will let you know that Mr. Riess, or someone

3    associated with him, has even involved the Office of

4    Disciplinary Counsel, and for that I am going to retain

5    counsel.

6          This hearing is presumably to grant me due process

7    and it's a little -- a disconnect for me to hear you ask him,

8    "Well, what has O'Dwyer done at the breach site?  Has he caused

9    any problem?"  My actions at the breach site are the subject of

10   videotapes.  I apologize for nothing I've done at the 17th

11   Street Canal breach site.

12          THE COURT:  Well, he didn't say anything.  He's

13   asking to bar you.  The only reason I asked him is he wanted to

14   bar you.  I'm wondering on what basis does he want to bar you.

15          MR. O'DWYER:  I'd like to know that, too.

16          THE COURT:  He's given me none, so go ahead.

17          MR. O'DWYER:  He did say that there was an incident

18   early on --

19          THE COURT:  Right.

20          MR. O'DWYER:  -- and I am telling you that that

21   incident did not involve moi, but rather a member of the

22   Plaintiffs' Liaison Committee, and that was the incident at

23   which I was not even present for that got Mr. Riess and I off

24   on the wrong foot.  I told him not to take any more cheap shots

25   at me like he did in open court that day implying that I had

1    used profanity toward a Boh Brothers employee, which I

2    vehemently deny, and which indeed involved another individual,

3    and Mr. Riess knew that.

4              THE COURT:  All right, sir, go ahead.

5              MR. O'DWYER:  Your Honor, the next point.  You have

6    addressed me in some very strident language.  I respectfully

7    submit that your subjective attitude towards me, which I

8    disagree with on the record, okay, demonstrates that you do not

9    like me period.  And I believe that your fairness and

10   impartiality for this particular matter involving me

11   personally, that you are not a good, fair, and impartial

12   arbiter of the facts.  I would respectfully request that you

13   refer this matter to another Judge chosen at random.

14             THE COURT:  Denied.

15             MR. O'DWYER:  All right, I've got it on the record.

16   Note my objection.

17             THE COURT:  You can get whatever you want on the

18   record, Mr. O'Dwyer.

19             MR. O'DWYER:  That's fine.

20             THE COURT:  That's not a problem.  But I don't know

21   you well enough to form an opinion and, frankly, I in my

22   rulings throughout my judicial life, I may have not liked

23   anybody, but it doesn't have any effect on the intellectual

24   process.  I don't know if I like you or not.  I don't like some

25   of your pleadings.  That doesn't mean I don't like you, sir.  I

1    said I don't like some of your conduct as set forth in your

2    pleadings.  That doesn't mean I don't like you; I don't really

3    know you, sir.  But I can say in a fair and impartial manner

4    some of your pleadings are over the top.  That's what I'm

5    telling you.  You need to listen to it, maybe listen a little

6    bit as well as -- as well as spew like Vesuvius like I'm doing

7    now.  You may need to go into recession a little bit; let the

8    magma calm down, and engage in a little introspection yourself.

9              MR. O'DWYER:  You're right, Your Honor.  And I don't

10   want to get struck by lightning.

11             THE COURT:  No, I'm not going to do that, but I'm

12   saying you need to understand that perhaps -- I'm not talking

13   about this motion -- perhaps you brought a few things on

14   yourself.

15             MR. O'DWYER:  Yes, sir, I understand that.

16             THE COURT:  All right.

17             MR. O'DWYER:  And I concede that.

18             THE COURT:  We generally all do.  Go ahead.

19             MR. O'DWYER:  I've conceded it in open court in front

20   of Judge Berrigan and Judge Wilkinson in a related case.

21             THE COURT:  All right, go ahead, sir.

22             MR. O'DWYER:  A couple of more points and then I'm

23   going to shut up; I promise you.

24             To put things in context, I raised in my memo a few

25   points where people on the facts one could reasonably conclude

1   did things.  Nobody got sanctioned.

2           I'm going to bring one more thing to your attention.

3   Do you remember that I addressed a letter to you on March 20th,

4   actually it was a facsimile, where I reported to you that I had

5   been threatened personally by the lawyer representing the State

6   of Louisiana --

7           THE COURT:  Yes.

8           MR. O'DWYER:  -- Mr. Michael Keller.  I'm going to

9   mark it for identification as O'Dwyer Number 1.  Nobody got

10  sanctioned there.

11          THE COURT:  Well, you can file something.  If you

12  file something to me for sanctions, I would certainly hear it.

13          MR. O'DWYER:  Well, the point --

14          THE COURT:  I have to have pleadings.

15          MR. O'DWYER:  The point is --

16          THE COURT:  Or it has to happen in front of me.

17          MR. O'DWYER:  -- the threat that I reported to the

18  Court in this document, O'Dwyer Number 1, --

19          THE COURT:  Right.

20          MR. O'DWYER:  -- was not denied by Mr. Keller, and

21  nobody got sanctioned.  And I don't think you get any more

22  serious than this and I'll read my last sentence to you.  "I am

23  advising the Court of this matter so that if any physical harm

24  should befall me because I am the victim of an unfortunate

25  accident, or of an armed robbery gone bad, or should I be

1    struck by lightning," -- was I prescient, Your Honor? -- "the

2    Court can order investigation by the FBI and/or the Department

3    of Justice."  You don't get anymore serious than that.  And

4    here I am before you today being berated for interpersonal

5    communications between me and another lawyer that really has

6    nothing to do with the Court and is not before the Court except

7    for him bringing it before the Court.  It's absurd.  I don't

8    know what I'm doing here!

9              THE COURT:  Okay.

10             MR. O'DWYER:  But I'm going to take your words to

11   heart.  I don't want to get struck by lightning.  I know I'm

12   not lightning proof, and I've listened to every word you've

13   said.  Thank you for your attention, Your Honor.  I'll submit.

14             THE COURT:  You want to file that into the record?

15             MR. O'DWYER:  Yes, I do.

16             THE COURT:  Okay, Mr. Riess, Mr. O'Dwyer is saying is

17   this a tag team on him; why is he here?  I think he's here, as

18   I understand it, because of the e-mails that I've read, and

19   you're contending that he's violating the Rules of

20   Professionalism.  That's my understanding.  Tell me if I am

21   incorrect.

22             MR. RIESS:  Your Honor, you are incorrect in this

23   regard.  I'll answer your question directly --

24             THE COURT:  Right.

25             MR. RIESS:  -- which I didn't hear from my opponent

1    when you asked the question.  He has violated Rule 4.4 and 8.4

2    of the Rules of Professional Conduct.  We have cited cases to

3    Your Honor where you have the inherent power which you have

4    acknowledged, Your Honor, to sanction an attorney.  He has

5    acted unprofessionally to this Court.  He has acted

6    unprofessionally to Judge Wilkinson.  He has acted

7    unprofessionally --

8            THE COURT:  I've got to determine that though, not

9    you.  I'm wondering about your --

10           MR. RIESS:  I believe I was quoting you and if I

11   misquoted, Your Honor, --

12           THE COURT:  No, no, no, I said I'm here as to your

13   complaints against him, not the Court's.

14           MR. RIESS:  And where I'm going with this,

15   Your Honor, is when are you going to have "enough" and when are

16   you going to send a message to this gentleman that your conduct

17   toward the Counsel in this case, the Court in this case,

18   Magistrate Judge, and the District Court Judge who is presiding

19   over this case is sanctionable and I'm going to put a muzzle on

20   you and I'm going to stop you because your conduct in

21   interfering with the orderly prosecution of this case.  That's

22   what we're here all about.

23           My client right now, quite honestly, is furious with

24   me.  Let me tell you why.  I got an e-mail about a month ago,

25   "Why am I being charged all this time dealing with these e-

1  mails with O'Dwyer?  What are you dealing with O'Dwyer about?"

2  "Well, because I've got to respond to these e-mails."  And you

3  know what, Your Honor, he said it's tit for tat, and this,

4  that, and the other.  What e-mails does he have, what

5  correspondence does he have, what pleadings does he have, what

6  anything does he have that show that I have acted in an

7  unprofessional manner?  That's his whole MO.  The best defense

8  is a good offense.  "Well, Riess, you're guilty of what I'm

9  guilty of, so let's just throw the baby out with the bath

10  water."  No.  He has cited nothing.  Those are all his e-mails,

11  Your Honor.  They say what they say; they are what they are.

12           Your Footnote 7 in your brief of July 19th, says what

13  it says.  The Court is not going to let you engage in further

14  self-serving diatribes and you may be subject to sanctions.  He

15  wrote those after that.  If you don't stop him now, he is going

16  to continue to upset the orderly prosecution of this case.  And

17  if it's not going to be me, somebody else is going to be back

18  here with this gentleman.

19           And for those reasons, Your Honor, I think just to

20  suggest as you possibly have, well, I'm not going to let you

21  and Riess -- you -- O'Dwyer and Riess, you two, y'all can't

22  communicate with each other.  That's not going to be close to

23  sufficient.

24           For those reasons, Your Honor, I don't know what a

25  gentleman has to do.  I've cited a case at the Supreme Court,

30

1    and I know this is a Federal Court, but the Supreme Court

2    sanctioned a lawyer for conduct that is exceedingly similar.

3    And I copied the case it's a Westlaw case, a 2006 case, where

4    the Supreme Court upheld a finding of a sanction against an

5    individual violating the cannons of professional misconduct and

6    the inherent discretion of a court to sanction an attorney.

7    And that is really on all fours with the conduct that we're

8    seeing and, quite honestly, not as bad as this gentleman has

9    committed.

10           So, Your Honor, I would ask for all of the litigants

11   -- I want to make one final comment.  I was accused, or it was

12   suggested I think by Mr. O'Dwyer that I filed a complaint with

13   the Office of the Disciplinary Committee.  Neither myself, nor

14   anyone from my office has done so.  I'm glad to hear that it

15   has been done, and I'd be happy to cooperate with any

16   investigation that they may have, but I have not done so.  I

17   just wanted to inform the Court of that.

18           Your Honor, I think you've got to send a message to

19   this gentleman, otherwise if it's not going to be me, somebody

20   else is going to be back in here and we're going to be dealing

21   with more discovery issues, more battles, either you or

22   Judge Wilkinson.

23           THE COURT:  Well, let me say, if I get involved in

24   this too much more, everybody better have -- everybody better

25   come here loaded for bear with witnesses, with a very

```
 1    meticulous case, and it better be something really serious,

 2    because I'm going to do something today.  But if my time is

 3    taken up with this rather than doing the public's work as I see

 4    it and trying to resolve all these motions, it better be

 5    serious, be loaded for bear, no frill stuff, be lawyers, have

 6    evidence, witnesses, documents, and be ready, because if my

 7    time is taken up -- if this continues -- it better not.  If

 8    anybody knows me, it better not.

 9              I understand what you're saying and what I have

10    before me are the -- what I have before is not -- if

11    Mr. O'Dwyer does something to the Court, it's up to me to do

12    something about that, if he goes overboard with the Court.

13    I've warned him.  He's got a better warning today.  And I can

14    tell you --

15              MR. RIESS:  Well, Your Honor, with all due --

16              THE COURT:  Just a minute --

17              MR. RIESS:  I'm sorry, Your Honor.

18              THE COURT:  -- I have not finished.

19              MR. RIESS:  I'm sorry, Your Honor.

20              THE COURT:  And with all due respect, wait until I

21    finish.

22              MR. RIESS:  Yes, Your Honor.

23              THE COURT:  You know, I've got a few e-mails here;

24    you want $50,000.  I understand that.  But with all due

25    respect, I'm going to decide what happens with the Court, not
```

32

1    you.  You can decide what happens to you.  If something is

2    filed with the Court, if a pleading affects you, you have every

3    right.  I'm going to decide; with all due respect, it's none of

4    your business.  Keep that in mind.  Unless it affects your

5    client, if it does, file a pleading.  File a pleading.  I don't

6    want much more whining.  I want a pleading.

7            You did file a pleading for sanctions.  Mr. O'Dwyer

8    filed a pleading.  But, frankly, you know, if he calls you a

9    name, so what?  I mean it's not professional.  So what?  So

10   what?  So what that he said that?  Until he files a pleading,

11   an e-mail means nothing; it means nothing.  He can say, "You

12   stole a million dollars," in an e-mail to you.  Okay, well,

13   until he files a pleading with this Court it doesn't mean much.

14   I have already told him that the e-mails are over the top,

15   they're not professional, and I'm going to preclude any e-

16   mails.  That's one thing I'm going to do.

17           I have to give everybody due process.  If Mr. O'Dwyer

18   continues to go what I consider to be over the top, we're going

19   to have a full hearing invoked by the Court with evidence,

20   witnesses, a disciplinary hearing which will be something

21   separate.  Right now what's before me is his conduct towards

22   you.  And you have attached the e-mails which are evidence of

23   that conduct.

24           MR. RIESS:  Yes, Your Honor.

25           THE COURT:  And that is what is before me now.  So,

1    understand he might be -- look, his style and his rhetoric, as

2    I have told, to the Court is -- hopefully, he'll get this

3    message.

4           But, anyway, as to you, there will be no more

5    messages, because he's not going to be corresponding to you.

6    If he does, then the inherent powers of the Court will be

7    invoked.

8           But, go ahead, you wanted to say something and I

9    interrupted you.  Go ahead.

10          MR. RIESS:  No, Your Honor, I actually was finished,

11   Your Honor.  Just to summarize one last sentence, if not now,

12   when?  What does he have to do to deserve sanctions?  And I

13   think he's crossed that line, Your Honor.

14          THE COURT:  All right, I understand.

15          MR. RIESS:  Thank you, Your Honor.

16          THE COURT:  Mr. O'Dwyer, do you care to say anything?

17          MR. O'DWYER:  Just I don't think that this provided

18   me due process and I don't -- I can't read your mind.  If you

19   are going to sanction me, I think this matter should be

20   referred to another Judge for random allotment, because I don't

21   think you can be fair and impartial towards me.

22          THE COURT:  All right.  Well, as I told you I think

23   that I can.  You may disagree, but I'm the one who makes that

24   decision.

25          Thus far I hope you understand how fair and impartial

1   at least in my -- that I have been in not bringing you before

2   me.  I'm just telling you that right now.  And I'm giving you a

3   warning that I'm conducting this case.  It had better be

4   conducted in a civil manner or I will use every inherent power

5   I have if it's not.  I've told you as much as I can.  If we're

6   going to accuse anybody of anything, do it in a pleading before

7   the Court, and make sure it's documented, because if you're

8   wrong, it's going to be pretty painful.

9           I'm going to insofar as the O'Dwyer -- first, let me

10  take the motion brought by Boh Brothers.  I'm going to grant it

11  in part and deny it in part.  The only part I'm granting is

12  that you are both precluded from e-mailing each other unless

13  you e-mail him a pleading, as a courtesy copy of a pleading.

14  No e-mailing, none.

15          After looking at it, it apparently cannot be done in

16  a professional manner.  It is gratuitous.  It doesn't mean

17  anything.  It doesn't seem to be in any way helping the suit

18  advance or helping any of your clients.  So, if you have an

19  issue, then no e-mails.  If you have a complaint, file it with

20  the Court in the form of a pleading, which is the way things

21  get done.  So, e-mails are precluded.

22          If a letter is overly vitriolic, or gratuitous, or

23  accuses somebody of something that's not professional, I will

24  issue severe sanctions on the next go round and you can have as

25  much due process as you want, either of you.  We'll have plenty

1   due process.  And I'm going to be fair, but fair does not

2   enable people to act badly.  Fair does not enable lawyers to

3   snipe, scream, yell, call each other names, make innuendo.  The

4   law is a noble profession and the lawyers should act nobly.

5   You can be zealous and noble.  It's far more effective, trust

6   me.

7          So, I understand Mr. Riess taking umbrage at what he

8   did and that's why I think I'm precluding -- the only sanction

9   that I'm really issuing really applies to both of you.  I'm

10  precluding you from e-mailing each other, unless you want to do

11  it at your house -- I'm really precluding it period.

12          MR. O'DWYER:  I won't e-mail him, Your Honor, --

13          THE COURT:  Good.

14          MR. O'DWYER:  -- I promise.

15          THE COURT:  Good.

16          MR. RIESS:  I don't e-mail him, Your Honor.

17          THE COURT:  All right, that is one tiny little thing

18  that's been accomplished.  And I realize that Counsel for Boh

19  Brothers, Mr. Riess, is concerned about this being a constant

20  irritant with the Court.  That's going to be the Court's

21  problem.  If it doesn't relate to you, then you can go about

22  your business without being disrupted, that's fine.  If you're

23  disrupted again, come in with witnesses loaded for bear, and

24  we'll have a due process hearing.  Since it's in my Court, it's

25  my case, unless it involves a disciplinary situation, I may

1  refer it to the Court en banc.  But if it's a matter directly

2  involving this case, I'm going to be in control of it.

3            I'm going to deny Mr. O'Dwyer's motion at the present

4  time and I just don't find it has any substance.  It's denied.

5            Therefore, I will issue a Minute Entry accordingly.

6  I'm not going to issue any monetary fine now.  I think I needed

7  to clear the air here.  This motion did accomplish something,

8  because whether Mr. O'Dwyer thinks I like him or not, I don't

9  like some -- that is irrelevant.  The devil can come in this

10  Court and win, sir.  I don't care if you're a demon with -- and

11  you're not -- with a forked tail and hooves and red eyes.  You

12  can win in this Court if you've got the right facts and the

13  right law and you persuade me.  You cannot win this Court with

14  vitriol, with what I call the diatribe.  You cannot win.  You

15  will likely lose your persuasive impact by self-indulgent,

16  vitriolic rhetoric.

17            So, I hope this at least has accomplished something.

18  If it hasn't, the next time I will have no choice.

19            Court is adjourned.

20            MR. RIESS:  Thank you, Your Honor.

21                    *   *   *   *   *

22                 (Hearing is Concluded)

23

24

25

# C E R T I F I C A T E

 

 

 

       I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

 

 

 

**/S/Dorothy M. Bourgeois**                                    **10/9/06**
 **DOROTHY M. BOURGEOIS**                                      **DATE**