FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 OCT 16  PM 1:51

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION NO.: 05-4182 "K"(2) |
| PERTAINS TO: INSURANCE *Chehardy*, Nos. 06-1672, 06-1673, and 06-1674 | * * * * * * | JUDGE DUVAL MAGISTRATE JUDGE WILKINSON |

**CONSOLIDATED REPLY BRIEF**

<u>**IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS**</u>

___ Fee_____
___ Process____
_X_ Dktd_____
___ CtRmDep___
___ Doc. No____

## TABLE OF CONTENTS

Page

I. ARGUMENT ................................................................................................................. 1

    A. Plaintiffs' Declaratory Judgment And Breach Of Contract Claims Are Barred As A Matter Of Law By The Unambiguous Water Damage Exclusion. ................................................................................................................. 2

        1. The Policy Term "Flood" Applies To Plaintiffs' Allegations And Forecloses Their Claims. ................................................................................ 2

        2. The "Reasonable Expectations" Doctrine Cannot Salvage Plaintiffs' Claims. ............................................................................................. 5

        3. Plaintiffs' "Efficient Proximate Cause" And Anticoncurrent Clause Arguments Are Unavailing. .......................................................................... 6

        4. The Hurricane Deductible Cannot Salvage Plaintiffs' Claims. ........................ 8

        5. Reading The Policy As A Whole Reinforces That The Water Damage Exclusion Applies To Floods Caused By Negligence. ....................... 8

    B. Plaintiffs' Purported Extra-Contractual Claims Fail As A Matter of Law. .................. 9

    C. Discovery Is Not Necessary For The Court To Rule On The Pending Motions. .................................................................................................................. 10

II. CONCLUSION ........................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.*,
219 F.3d 501 (5th Cir. 2000) ........................................................................................ 9

*American Fam. Ins. Group v. Hemenway*,
575 N.W. 2d 143 (Neb. 1998) ...................................................................................... 3

*Atwater Creamery Co. v. Western Nat' Mut. Ins. Co.*,
366 N.W. 271 (Minn. 1985) ......................................................................................... 5

*Bartlett v. Cont'l Divide Ins. Co.*,
697 P.2d 412 (Colo. Ct. App. 1984) ............................................................................. 5

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*,
855 P.2d 1263, (Cal. 1993) ...................................................................................... 3, 4

*Cadwallader v. Allstate Ins. Co.*,
848 So. 2d 577 (La 2003) ...................................................................................... 5, 10

*Dobson v. Allstate Ins. Co.*,
2006 WL 2078423 (E.D. La. July 21, 2006) ............................................................... 6

*Doerr v. Mobile Oil Corp.*,
774 So. 2d. 119 (La. 2000) .......................................................................................... 8

*Edwards v. Daugherty*,
883 So. 2d 932 (La. 2004) ........................................................................................... 4

*Grace v. Lititz Mut. Ins. Co.*,
257 So. 2d 217 (Miss. 1972) ...................................................................................... 10

*Hendricks v. American Employers Ins. Co.*,
176 So 2d 827 (La. Ct. App. 1965) .............................................................................. 3

*Holden v. Connex-Metalina*,
No. 99-2062, 2001 WL 96413 (Feb. 2, 2001 E.D. La.) ............................................. 10

*Husband v. Lafayette Ins. Co.*,
635 So. 2d 309 (La. Ct. App. 1994) ............................................................................. 8

*Kane v. Royal Ins. Co.*,
768 P.2d 678 (Colo. 1989) ........................................................................................... 3

*Kish v. Ins. Co. of N. Amer.*,
883 P.2d 308 (Wash. 1994) .......................................................................................... 6

*Lake Charles Harbor & Terminal District v. Imperial Cas. & Indem. Co.*,
857 F.2d 286 (5th Cir. 1998) ....................................................................................... 8

*Leonard v. Nationwide Mut. Ins. Co.*,
438 F.Supp. 2d 685 (S.D. Miss. 2006) ........................................................................ 7

*Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*,
630 So. 2d 759 (La. 1994) ........................................................................................... 9

*Louisiana v. All Prop. and Cas. Ins. Carriers*,
__ So. 2d __, 2006 WL 2498196 (La. 2006) .............................................................. 2

## Table of Authorities
## (Continued)

Page

*Murray v. State Farm Fire & Cas. Co.*,
   509 S.E.2d 1 (W.Va. 1998)......................................................................................................2

*Osoki v. St. Paul Surplus Lines Ins. Co.*,
   162 F. Supp. 2d 714 (E.D. Mich. 2001)....................................................................................3

*Roach-Strayhan Post No. 20 v. Cont'l Ins. Co.*,
   112 So. 2d 680 (La. 1959) ........................................................................................................6

*Saltzman v. Broussard*,
   736 So. 2d 243 (La. Ct. App. 1999).........................................................................................6

*Travelers Indem. Co. v. Powell Ins. Co.*,
   NO. 95-4188, 1996 U.S. Dist. LEXIS 15041 (E.D. La. Oct. 4, 1996) ....................................4

### Statutes

La. C.C. art. 2047............................................................................................................................4

La. C.C. art. 2050............................................................................................................................9

La. C.C. art. 2056............................................................................................................................3

The Moving Defendants[1] hereby submit this Consolidated Reply in response to The Chehardy Representative Policyholders' Memorandum In Opposition To Defendants' Rule 12(B)(6) Motions To Dismiss (hereafter "Opposition" or "Opp.").

## I.   ARGUMENT

Plaintiffs' Opposition, which largely repeats their briefing in *Vanderbrook*, confirms that this entire case turns on whether there is any basis to interpret the Moving Defendants' policies to provide coverage for some floods but not for other floods.[2] Plaintiffs concede that the vast inundation of water into the City of New Orleans following Hurricane Katrina was a "flood," but they argue that the alleged cause of the flood – levee breaches due to third party negligence – can render the defendants' policies' Water Damage Exclusion inapplicable. Plaintiffs' claims – which all turn on Plaintiffs' theory that the defendants' policies provide coverage for floods caused by third party negligence – should be dismissed with prejudice because there is no basis in Louisiana law or in the policies to interpret the term flood differently depending on the flood's alleged cause.

---

[1] The Moving Defendants are The Standard Fire Insurance Company (improperly named as Travelers Property Casualty Company of America), Lexington Insurance Company, Liberty Mutual Fire Insurance Company, Auto Club Family Insurance Company, AEGIS Security Insurance Company, The American Insurance Company, Lafayette Insurance Company, and The Hanover Insurance Company. In addition, Great Northern Insurance Company (for itself and as erroneously sued as Chubb Group, a non-entity incapable of being sued) which filed its own Rule 12 Motion To Dismiss, also joins in and adopts this Reply Brief.

[2] Plaintiffs' Opposition is principally a "cut and paste" from sections of the *amicus* briefing they filed in *Vanderbrook* (2:05-cv-06323) (Doc. Nos. 772, 1108, and 1182). Attached hereto is an addendum identifying the pages in Plaintiffs' Opposition that repeat the arguments Plaintiffs made in *Vanderbrook* and the pages in defendants' *Vanderbrook* briefing that address those arguments. To ease the paper burden on the Court, the Moving Defendants incorporate by reference the Consolidated Reply Brief (Doc. No. 862) ("Reply"), the Joint Supplemental Memorandum (Doc. No. 1129) ("Supp. Memo."), and Joint Reply Memorandum (Doc. No. 1186) ("Supp. Reply") filed in *Vanderbrook*.

1

### A. Plaintiffs' Declaratory Judgment And Breach Of Contract Claims Are Barred As A Matter Of Law By The Unambiguous Water Damage Exclusion.

#### 1. The Policy Term "Flood" Applies To Plaintiffs' Allegations And Forecloses Their Claims.

Plaintiffs recognize (as they must) that the levee failures that are the subject of their lawsuit resulted in flooding. *See., e.g.,* Opp., 9 ("flooding . . . caused by third party negligence"); *id.* at 10 (same); *id.* at 11 ("third-party negligent acts that result in flood"); *id.* at 14 ("flooding . . . that resulted from the acts or negligent conduct of third parties"); *id.* at 31 ("flooding which occurred as a result of such third-party negligence).[3] Plaintiffs' claims should thus be dismissed for the fundamental reason that they are seeking to recover for loss due to flood under policies that unambiguously exclude coverage for loss from a "flood."

There is exact symmetry between the Water Damage Exclusion (flood excluded) and Plaintiffs' allegations (flood occurred). It is undisputed that the Moving Defendants do not insure for losses caused by Water Damage, which is defined to include a "flood." It is also undisputed that the levee failures in the City of New Orleans resulted in "flooding," as that term is ordinarily used.

Plaintiffs hinge their entire case on the proposition that the Water Damage Exclusions in the policies are ambiguous because they do not list each and every conceivable cause of flooding, specifically flooding caused by third party negligence. Plaintiffs, however, do not cite a single case holding that a water damage exclusion is ambiguous because it does not list the various events that can cause a flood, let alone a case holding that flooding caused by third party

---

[3] The Supreme Court of Louisiana has similarly described the effect of levee failures in the City of New Orleans as "flood waters" and "flooding." *See Louisiana v. All Prop. and Cas. Ins. Carriers*, __ So. 2d __, 2006 WL 2498196, *1 (La. 2006).

2

negligence is not within the policy exclusion.[4] In contrast, the Moving Defendants cited numerous cases from around the country holding that the term "flood" in water damage exclusions applies regardless of whether flooding is caused by natural or man-made events, such as negligence. *See* Consolidated Memorandum of Law In Support of Rule 12(b)(6) Motion to Dismiss (Doc. No. 932-3) ("Brf."), 12-14. Plaintiffs wholly failed to distinguish these cases.[5]

Instead, Plaintiffs misstate the law in Louisiana by claiming that if "an insurance company fails to define a pertinent term of the policy or exclusionary provision, the court must adopt the meaning of that term most favorable to the policyholders." Opp., 9. Plaintiffs support that mistaken proposition by citing to *Hendricks v. American Employers Ins. Co.*, 176 So 2d 827 (La. Ct. App. 1965), but the *Hendricks* court itself made clear that, "[w]here however, a particular word or phrase is not defined, the courts will endeavor by means of generally accepted legal techniques to ascertain the common and popular meaning of such word or phrase." *Hendricks*, 176 So 2d at 830. By statute, in Louisiana, it is only "in a case of doubt that cannot be otherwise resolved, [that] a provision in a contract must be interpreted against the party who furnished its text." La. C.C. art. 2056; *see also* Brf., 9-10.[6]

Moreover, Plaintiffs' assertion that an insurance company must define every pertinent term of the policy and its exclusions has been widely rejected because doing so would be

---

[4] The only case that Plaintiffs rely on to draw the false distinction between natural and man-made floods is *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1 (W.Va. 1998), a case that has nothing to do with a water damage exclusion, that is distinguishable on several grounds, and that was wrongly decided in any event. *See also* Supp. Memo., 23-26 (explaining errors in reasoning and distinguishing *Murray* on several additional grounds).

[5] The only case that Plaintiffs even tried to distinguish was *Kane v. Royal Ins. Co.*, 768 P.2d 678 (Colo. 1989). Plaintiffs assert that *Kane* is distinguishable because the definition of "flood" under the NFIP allegedly changed after the Supreme Court of Colorado's decision in *Kane*. *See* Opp., 12, n.2. The Supreme Court of Colorado's reasoning was not, however, based on the NFIP. In any event, Plaintiffs are mistaken – there has been no substantive change to the NFIP's definition of flood. *See* Reply, 8-9.

[6] Plaintiffs' out-of-state authority (*see* Opp., 9) employing an approach to contract interpretation different than that prescribed in the Civil Code must be rejected as in conflict with Louisiana law.

3

"illogical and unworkable." *See, e.g., Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 855 P.2d 1263, 1270 (Cal. 1993). "It is not reasonable to expect that every word in an insurance contract will be internally defined." *Osoki v. St. Paul Surplus Lines Ins. Co.*, 162 F. Supp. 2d 714, 717 (E.D. Mich. 2001); *accord American Fam. Ins. Group v. Hemenway*, 575 N.W. 2d 143, 149 (Neb. 1998) ("There is no legal requirement that each word used in an insurance policy must be specifically defined in order to be unambiguous."). This Court should likewise reject the notion that every term in an insurance policy should be defined because, if adopted, "an insurer would have to define every word in its policy, the defining words would themselves have to be defined, their defining words would themselves have to be defined, and the process would continue to replicate itself until the result became so cumbersome as to create impenetrable ambiguity." *Bay Cities,* 855 P.2d at 1270. This is all the more true where, as here, the term at issue (flood) has been repeatedly recognized to have a plain, ordinary meaning.

As described in detail in the Moving Defendants' opening brief, numerous cases have held that the word "flood" is unambiguous. Plaintiffs fail to address any of the authorities cited by the Moving Defendants, including Fifth Circuit precedent, establishing that the ordinary meaning of "flood" is an inundation of water over normally dry land. Brf., 11-12. Louisiana law is clear that "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning . . ." *Edwards v. Daugherty*, 883 So. 2d 932, 940-41 (La. 2004). This requirement is statutory: "[t]he words of a contract must be given their generally prevailing meaning." La. C.C. art. 2047.

The Water Damage Exclusion "unambiguously excludes coverage for flood damage." *Travelers Indem. Co. v. Powell Ins. Co.*, NO. 95-4188, 1996 U.S. Dist. LEXIS 15041, *8 (E.D. La. Oct. 4, 1996) (Vance, J.) (finding identical exclusion unambiguous). Plaintiffs' argument

4

that the flood in New Orleans was not covered because it was purely "man-made" (Opp., 10) is flatly contradicted by their assertion that Hurricane Katrina, a powerful natural force, contributed to the flooding. Opp., 32. Moreover, to read into the term "flood" a distinction between floods caused by natural events and floods caused by man-made events, such as third party negligence, would be improper because "there is no such distinction in the contract, and the event in question falls well within the ordinary use of the term; therefore, to make such a distinction would be to rewrite terms of the policy." *Bartlett v. Cont'l Divide Ins. Co.*, 697 P.2d 412, 413 (Colo. Ct. App. 1984), *aff'd*, 730 P.2d 308 (Colo. 1986); *see also* Brf., 12-14. Plaintiffs' effort to engage in a "perversion of the words or the exercise of inventive powers to create an ambiguity" must be rejected. *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003) (finding policy term "relative" unambiguous). Plaintiffs' claims, which are all based on flood losses, should be dismissed with prejudice because loss from "flood" as that term is ordinarily used is excluded under the policies.

### 2. The "Reasonable Expectations" Doctrine Cannot Salvage Plaintiffs' Claims.

Plaintiffs concede that only "if a policy or its provisions are ambiguous, [do] Louisiana courts apply the 'reasonable expectations' doctrine."[7] Opp., 4; *see also* Brf., 25-26. Because the relevant language of Plaintiffs' policies is clear and unambiguous, the "reasonable expectations" doctrine does not apply.

Nonetheless, even if the "reasonable expectations" doctrine were applicable (and it is not), it would be objectively unreasonable to expect coverage under the Moving Defendants' policies for a flood caused by levee failures attributable to third party negligence, but not for floods caused by natural events. Indeed, Plaintiffs themselves candidly admit that **"Louisiana**

---

[7] This fact alone distinguishes *Atwater Creamery Co. v. Western Nat' Mut. Ins. Co.*, 366 N.W. 271 (Minn. 1985), on which Plaintiffs rely. *See also* Supp. Reply, 4-5 (describing different standard under Minnesota law).

5

***homeowners' [sic] would not expect nor appreciate that their coverage would vary or depend on whether the cause of the loss was a natural event or a man-made occurrence.*** " *See* Opp., 16 (emphasis added). This expectation is consistent with the authorities cited by the Moving Defendants that the ordinary meaning of "flood" as that term is used in the policies does not distinguish between man-made and natural floods. *See* Brf., 12-14.[8]

The existence of the National Flood Insurance Program reinforces the conclusion that no reasonable insured could have thought that his homeowners policy provided flood coverage. *See e.g., Kish v. Ins. Co. of N. Amer.*, 883 P.2d 308, 312-313 (Wash. 1994) (plaintiffs "knew that flood would be excluded by any insurance policy they purchased, as exemplified by the existence of the National Flood Insurance Program (of which Plaintiffs' county was a part)"). Plaintiffs' argument that the NFIP does not apply to the flooding in New Orleans is an exercise in fiction. The NFIP draws no distinction between natural and man-made floods, as evidenced by the massive federal funding to pay Katrina NFIP claims. *See* Reply, 6-9; Supp. Reply, 1-2.

### 3. Plaintiffs' "Efficient Proximate Cause" And Anticoncurrent Clause Arguments Are Unavailing.

Plaintiffs argue that Louisiana's "efficient proximate cause" doctrine requires that they receive coverage for their flood damage in this case. *See* Opp., 18-24. The "efficient proximate cause" doctrine, however, is irrelevant because the parties to this case contracted out of it. Indeed, the very case that Plaintiffs cite to argue that the "efficient proximate cause" doctrine applies itself expressly recognized that contracting parties can opt out of it. *See Roach-Strayhan Post No. 20 v. Cont'l Ins. Co.*, 112 So. 2d 680, 682 (La. 1959) (emphasizing that the "efficient proximate cause doctrine" applied only because the insurance policy was "not otherwise limited

---

[8] "An insured is responsible for reading his policy and is presumed to know its terms." *Dobson v. Allstate Ins. Co.*, 2006 WL 2078423, *11 (E.D. La. July 21, 2006) (Vance, J.) (holding that water damage exclusion put plaintiff on notice that he would not be insured for Hurricane Katrina flooding).

6

or defined"). Here, the Moving Defendants' policies are "otherwise limited or defined."[9] They each contain the Water Damage Exclusion, which, by its terms, applies to losses caused "directly or indirectly" by flood and "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *See* Brf., 18-22. Plaintiffs fail to address the numerous and consistent authorities, including Louisiana authority, that have enforced the "directly or indirectly" phrase, which contracts out of the efficient proximate cause test. *See* Brf., 18-19.

Plaintiffs similarly ignore the substantial and settled authority cited in the Moving Defendants' opening brief rejecting Plaintiffs' arguments and upholding the policies' anticoncurrent clauses. *See* Brf., 19-22. Instead, Plaintiffs offer a series of hypotheticals based on the incorrect and disingenuous assertion that the anticoncurrent clauses in their policies mean that "any coverage for covered perils is wholly illusory to the extent it may be denied *in toto* if a non covered peril is at all present." Opp., 22. Plaintiffs do not allege (nor could they) that any Moving Defendant has denied coverage for wind damage (or any other covered loss) on the basis that excluded water damage was also present. To the extent an insured's property was damaged directly by wind, the loss is covered. Plaintiffs' complaint, however, is exclusively about water damage, and the Moving Defendants' policies exclude water damage, even if caused by negligence. As Judge Senter put it, "[t]he wind damage is covered; the water damage is not." *Leonard v. Nationwide Mut. Ins. Co.*, 438 F. Supp. 2d 685, 693 (S.D. Miss. 2006).

Plaintiffs argue that the anticoncurrent clauses in the policies produce absurd results, but it is Plaintiffs' interpretation of the policies, not the Moving Defendants', that would lead to an absurd result. Under Plaintiffs' theory, coverage for post-Hurricane Katrina flooding would turn

---

[9] "It is well settled that insureds and insurers are free to contract and limit their liability through exclusions as long as the exclusions do not violate statutory mandates or public policy." *Saltzman v. Broussard*, 736 So. 2d 243, 245 (La. Ct. App. 1999).

7

on the arbitrary fact of whether a particular street was flooded due to "natural causes," such as the overflow of a body of water – where there would be no coverage – or due to a levee breach found to be caused by negligence, in which case there would be coverage. That would be an arbitrary distinction with no basis in the policies or in governing law.[10]

### 4. The Hurricane Deductible Cannot Salvage Plaintiffs' Claims.

The Court has agreed with the defendants that the Hurricane Deductibles in certain defendants' endorsements do not suggest that the policies provide coverage for water damage. *See Vanderbrook* Hrg.Tr. (Aug. 25, 2006), at 116; *see also* Reply, 15-17. Plaintiffs quote misleadingly from a National Weather Service definition of flood that was allegedly contained in a Hanover policy endorsement.[11] Opp., 24-25. There is no such language in the Hanover policy at issue in this case. Nonetheless, a Hurricane Deductible simply provides for a higher deductible for certain covered damage occurring during a hurricane; it does not modify any exclusions in the policy.

### 5. Reading The Policy As A Whole Reinforces That The Water Damage Exclusion Applies To Floods Caused By Negligence.

The Moving Defendants' policies exclude losses caused by, *inter alia*, defective design and maintenance "whether on or off the 'residence premises,'" except that "any ensuing loss to property . . . not excluded or excepted in this policy is covered." This exclusion is an additional

---

[10] The lack of an absurd result under the pled facts of this case distinguishes *Doerr v. Mobile Oil Corp.*, 774 So. 2d. 119 (La. 2000). *See also* Supp. Memo., 12-13 (further distinguishing *Doerr*). Additionally, the Mississippi cases decided by Judge Senter do not support the invalidation of the Moving Defendants' policies' anticoncurrent clause. The inapplicability of those cases to this issue has been briefed extensively. *See* Brf., 16, n.4; Reply 13-14, 16-17; Supp. Memo., 17, n.13; Supp. Reply, 7-9.

[11] Plaintiffs are mistaken when they assert that "[e]ach of the Defendants' policies contain Hurricane Deductibles." Opp., 24. Lexington Insurance Company, Hanover Insurance Company, and Liberty Mutual did not issue policies with Hurricane Deductibles (*see* Brf., Ex. 7 (INS 345-392); *id.* at Ex. 5 (INS 167–306); *id.* at Ex. 8 (INS 393-434). Accordingly, Plaintiffs' arguments regarding the Hurricane Deductible do not apply to these defendants.

8

bar to Plaintiffs' claims. *See* Brf., 24-25; Supp. Memo., 22-23; Supp. Reply, 9-10.[12] In addition to directly barring Plaintiffs' claims, this exclusion also reinforces the conclusion that the Moving Defendants' policies make no distinction between negligently caused floods and other floods. This exclusion expressly contemplates that if water damage (an excluded peril) ensues from negligence, the water damage remains excluded. Accordingly, it makes no sense, as Plaintiffs argue, that water damage caused by a negligent act – whether on or off the residence premises – is not water damage within the meaning of the policy. *See, e.g., Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994) ("one policy provision is not to be construed at the expense of disregarding other policy provisions"); La. C.C. art. 2050 (provisions of contract are to be interpreted in light of each other).

### B. Plaintiffs' Purported Extra-Contractual Claims Fail As A Matter of Law.

Plaintiffs do not contest that, with respect to their purported bad faith claims: (1) where there is no coverage, there can be no bad faith; and (2) there can be no bad faith where an insurer had a reasonable basis to deny coverage. Plaintiffs' only response to these points is that, assuming that they are entitled to coverage, it is a question of fact as to whether the defendants' conduct was reasonable. Whatever the abstract validity, if any, of Plaintiffs' argument, it is inapposite in this case. The only issue presented by Plaintiffs' complaint is whether the Moving Defendants properly denied claims for water damage based on the Water Damage Exclusion.

---

[12] The case cited by Plaintiffs to argue that the exclusion is limited to faulty work on the insured's premises is not persuasive. There is no basis to extrapolate *Husband v. Lafayette Ins. Co.*, 635 So. 2d 309 (La. Ct. App. 1994), beyond its narrow context involving work performed by a tenant to the insured property. Further, even if *Husband* were relevant, it does not change the fact that the policies expressly contemplate negligence causing an excluded peril (*i.e.*, water damage, defined to include flood). *Lake Charles Harbor & Terminal District v. Imperial Cas. & Indem. Co.*, 857 F.2d 286 (5th Cir. 1998) was interpreting different policy language in a different context. A more recent 5th Circuit case has enforced a faulty workmanship exclusion with an ensuing loss clause. *See Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 506 (5th Cir. 2000). To the extent that Plaintiffs argue that the flooding would be an "ensuing loss" if it were not excluded, they are correct. *See* Brf., 24-25; Supp. Memo., 22-23; Supp. Reply, 9-10.

The Court can and should reject Plaintiffs' contention that they have stated a claim for bad faith.

Plaintiffs fail to rebut any of the cases cited by Moving Defendants that make clear that there is no common law cause of action for insurance bad faith. *See* Brf., 27-28. Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing must be dismissed.[13]

### C.   Discovery Is Not Necessary For The Court To Rule On The Pending Motions.

In a last ditch effort to stave off dismissal, Plaintiffs contend that they should be entitled to discovery related to the meaning of their policies' terms. Discovery is unnecessary and unwarranted to decide the issues presented. There is overwhelming authority supporting the conclusion that the Water Damage Exclusion is unambiguous. In Louisiana, where a policy term is unambiguous, extrinsic evidence, even if it were to contradict the express terms of the contract, is irrelevant. *Cadwallader*, 848 So. 2d at 579 ("If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written."); *Holden v. Connex-Metalina*, No. 99-2062, 2001 WL 96413, *1 (Feb. 2, 2001 E.D. La.) (Duval, J.) ("When there is no ambiguity in the written contract, parol evidence is inadmissible."). Thus, discovery would serve no purpose. *See also* Reply, 17-18.

Plaintiffs' claim for discovery "to prove the fact-intensive determination regarding efficient proximate cause" fares no better. *See* Opp. 27-28. As made clear in the Opposition, this lawsuit seeks insurance coverage for water damage – it does not seek coverage for wind (or other covered) damage. Thus the issue in *Grace v. Lititz Mut. Ins. Co.*, 257 So. 2d 217 (Miss. 1972), on which Plaintiffs rely to establish their "need" for discovery, is not present in this case because this case does not present the question of whether Plaintiffs' losses were caused solely by wind or solely by water, or the proportion of damage that is separately attributable to each.

---

[13] The only Moving Defendant against whom Plaintiffs have purported to plead a breach of fiduciary duty claim is Liberty Mutual, *see* Opp., 43, which adopts § F of Allstate's reply brief.

10

## II. CONCLUSION

For the foregoing reasons and the reasons stated in Moving Defendants' opening brief, Plaintiffs' Complaint should be dismissed with prejudice as to the Moving Defendants.

*/s/ Ralph S. Hubbard III*

Ralph S. Hubbard III, T.A. (#7040)
Joseph P. Guichet (#24441)
Seth A. Schmeeckle (#27076)
LUGENBUHL, WHEATON, PECK,
    RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:    (504) 568-1990
Facsimile:    (504) 310-9195

-and-

Stephen E. Goldman
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597
Telephone:    (860) 275-8255
Facsimile:    (860) 275-8299

Attorneys for The Standard Fire Insurance Company


Ralph S. Hubbard III, T.A. (#7040)
Joseph P. Guichet (#24441)
Seth A. Schmeeckle (#27076)
LUGENBUHL, WHEATON, PECK,
    RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:    (504) 568-1990
Facsimile:    (504) 310-9195

-and-

Kevin Kamraczewski
Andrew R. Greene
SONNENSCHEIN NATH & ROSENTHAL LLP
Sears Tower, Suite 7800, 233 South Wacker Drive
Chicago, Illinois 60606-6404
Telephone:    (312) 876-8000
Facsimile:    (312) 876-7934

Attorneys for The Hanover Insurance Company

Maura Z. Pelleteri (#8463)
Andrea Mittleider (#427578)
Amy M. Seltzer (#28992)
KREBS, FARLEY, & PELLETERI, P.L.L.C.
400 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone:    (504) 299-3570
Facsimile:     (504) 299-3582

Attorneys for Aegis Security Insurance Company

Lawrence J. Duplass (#5199)
C. Michael Pfister (#14317)
Kelly Cambre Bogart (#22985)
Kevin R. Derham (#27163)
Nicole N. Bowen (#29099)
Jaime M. Cambre (#29116)
DUPLASS, ZWAIN, BOURGEOIS, MORTON
       PFISTER & WEINSTOCK
3838 North Causeway Boulevard
Three Lakeway Center, Suite 2940
Metairie, LA 74042
Telephone:    (504) 832-3700
Facsimile:     (504) 837-3119

Attorneys for American Insurance Company


H. Minor Pipes, III (#24603)
BARRASSO USDIN KUPPERMAN FREEMAN
       & SARVER, L.L.C.
909 Poydras St., Suite 1800
New Orleans, LA 70112
Telephone     (544) 589-9726
Facsimile:     (504) 589-9701

Attorney for Liberty Mutual Fire Insurance
Company


Robert I. Siegel (#12063)
GIEGER, LABORDE & LAPEROUSE, LLC
Suite 4800 - One Shell Square 701
Poydras Street
New Orleans, LA 70139-4800
Telephone:    (504) 561-0400
Facsimile:     (504) 561-1011

-and-

12

Richard J. Doren
GIBSON, DUNN & CRUTCHER, LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone:     (213) 229-7038
Facsimile:      (213) 229-6038

Attorneys for Lexington Insurance Company


Neal J. Favret (#24412)
Alan J. Yacoubian (#17213)
JOHNSON JOHNSON BARRIOS &
          YACOUBIAN
701 Poydras Street, Suite 4700
New Orleans, Louisiana 70139-7708
Telephone:     (504) 528-3001
Facsimile:      (504) 528-3030

Attorneys for Auto Club Family Insurance
Company


William J. Wegmann, Jr. T.A. (#13317)
LAW FIRM OF WILLIAM J. WEGMANN, LLC
110 Beterans Memorial Boulevard, Suite 440
Metairie, Louisiana 70005
Telephone:     (504) 833-3800
Facsimile:      (504) 838-8440

Attorney for Lafayette Insurance Company

13

In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION
PERTAINS TO: INSURANCE: *Chehardy*, Nos. 06-1672, 06-1673, and 06-1674

ADDENDUM TO CONSOLIDATED REPLY BRIEF
IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS

| Plaintiffs' Opposition in *Chehardy* | Virtually Identical Text Previously Submitted by the *Chehardy* Plaintiffs in *Vanderbrook* | Prior Briefing in *Vanderbrook* Addressing *Chehardy* Plaintiffs' Arguments |
|---|---|---|
| pp. 2-3. | *Chehardy* Plaintiffs' Amicus Brief (Doc. No. 772) (hereinafter, "Amicus Brief"), 4-6. | Reply (Doc. No. 862), 9-13, 17-18. |
| pp. 4-6. | *Chehardy* Plaintiffs' Supplemental Brief (Doc. No. 1108) (hereinafter, "Amicus Supp."), 2-4. | Supp. Reply (Doc. No. 1186), 3-6; Supp. Memo. (Doc. No. 1129), 8-13. |
| pp. 6-11. | Amicus Brief, 8; Amicus Supp., 4-7; *Chehardy* Plaintiffs' Supplemental Reply Brief (Doc. No. 1182) (hereinafter, "Amicus Supp. Reply"), 2-3. | Supp. Memo., 3-8, 23-27; Supp. Reply, 1-3. |
| pp. 11-13. | Amicus Brief, at 11-13; Amicus Supp. Reply, 4-5. | Reply, 6-9; Supp. Reply, 1-2. |
| pp. 14-17. | Amicus Supp., 7-10. | Supp. Memo, 8-10, 23-27; Supp. Reply, 3-6. |
| pp. 17-24. | Amicus Brief, 14-16; Amicus Supp., 12-17. | Reply, 9-14; Supp. Memo., 19-20; Supp. Reply, 7-9. |
| pp. 24-27. | Amicus Supp. Reply, 8-9; Amicus Brief, 22-23. | Reply, 15-17. |
| pp. 27-28. | Amicus Brief, 16-17. | Reply, 17-18. |
| pp. 29-32. | Amicus Supp., 17-22 (similar). | Supp. Memo., 22-23; Supp. Reply, 9-10. |
| pp. 32-36. | Amicus Brief, 18-22. | Reply, 17-18; Supp. Memo., 12-13. |

100094268_1.DOC