FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 OCT 16  PM 3: 33

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * * | CIVIL ACTION NO. 05-4182 "K"(2) |
|  | * | JUDGE DUVAL |
| PERTAINS TO | * | MAG. WILKINSON |
| INSURANCE | * |  |
| *Chehardy*, Nos. 06-1672, 06-1673, and 06-1674 | * * | |

## REPLY MEMORANDUM IN SUPPORT OF STATE FARM'S MOTION TO DISMISS PLAINTIFFS' AMENDED AND RESTATED COMPLAINT

_____ Fee_____
_____ Process_____
__X_/ Dktd _____
__√_ CtRmDep_____
_____ Doc. No_____

834874v.1

# TABLE OF CONTENTS

I.  INTRODUCTION ..........................................................................................................1

II.  ARGUMENT. ...............................................................................................................2

   A.  As a Matter of Law, Counts One and Two of the Complaint (for
        Declaratory Relief and Breach of Contract, Respectively) Fail to State A
        Claim Because the Plain Language of the Policy Bars Coverage for
        Plaintiffs' Losses .............................................................................................2

        1.  State Farm's Water Damage Exclusion Unambiguously Excludes
             Flood Damage Regardless of the Cause of the Flood.....................................2

        2.  Because the National Flood Insurance Program Clearly Covers
             Floods Caused by Negligently-Caused Levee Breaches, No
             Policyholder Would Reasonably Expect That the Flood Damage
             Alleged Here Would be Covered by State Farm's Homeowners
             Policy .........................................................................................................6

        3.  State Farm's "Acts or Omissions" Exclusion Expressly Excludes
             Coverage For Plaintiffs' Water Damage Losses Regardless of
             Whether Such Losses Were Caused or Contributed to By
             Negligent Acts of Third Parties ....................................................................8

        4.  The Lead-In Language of State Farm's Water Damage Exclusion
             Unambiguously Excludes Losses That Would Not Have Occurred
             "In the Absence" of Water Damage Regardless of the Operation,
             Effect or Sequence of Other Potential Causes and Makes the
             Efficient Proximate Cause Doctrine Inapplicable.........................................11

        5.  Because State Farm's Policy Unambiguously Precludes Coverage
             for Plaintiffs' Flood Loss, Discovery of Extrinsic Evidence of the
             Parties' Intent Is Irrelevant .........................................................................15

   B.  Counts Three and Four of the Complaint Fail to State a Claim for Breach
        of the Implied Covenant of Good Faith or for Breach of Louisiana's
        Insurance Bad Faith Statute (La. Rev. Stat. Ann. § 22:1220)....................................18

   C.  Count Five of the Complaint Fails to State a Claim for Breach of
        Fiduciary Duty ...............................................................................................19

III.  CONCLUSION............................................................................................................20

i

# TABLE OF AUTHORITIES

## CASES

*Aetna Casualty & Surety Co. v. Haas,*
 422 S.W.2d 316 (Mo. 1968) .............................................................................................17

*Alton Ochsner Medical Foundation v. Allendale Mutual Insurance Co.,*
 219 F.3d 501 (5th Cir. 2000) ........................................................................................10, 11

*Andover Newton Theological School, Inc. v. Continental Casualty Co.,*
 930 F.2d 89 (1st Cir. 1991).............................................................................................17

*Brinston v. Automotive Casualty Insurance Co.,*
 96-1982 (La. App. 4th Cir. 12/3/97) 703 So. 2d 813..................................................19

*Burlison v. United States,*
 627 F.2d 119 (8th Cir. 1980) ...........................................................................................3

*Calogero v. Safeway Insurance Co. of Louisiana,*
 99-1625 (La. 1/19/00) 753 So. 2d 170.........................................................................19

*Capelouto v. Valley Forge Ins. Co.,*
 990 P.2d 414 (Wash. App. 1999) ...................................................................................10

*Champion International Corp. v. Liberty Mutual Insurance Co.,*
 129 F.R.D. 63 (S.D.N.Y. 1989)......................................................................................17

*Cincinnati Insurance Co. v. Clark,*
 No. 91-0829, 1992 WL 34128 (E.D. Pa. Feb. 19, 1992)............................................17

*Clausen v. Fidelity & Deposit Co. of Maryland,*
 95-0504 (La. App. 1st Cir. 8/4/95) 660 So. 2d 83 ......................................................18

*Cloud v. National Automotive Insurance Co.,*
 2003-1438 (La. App. 3d Cir. 5/26/04), 875 So. 2d 866..............................................16

*Coleman v. School Board of Richland Parish,*
 418 F.3d 511 (5th Cir. 2005) ...........................................................................................5

*Cooper v. American Family Mutual Insurance Co.,*
 184 F. Supp. 2d 960 (D. Ariz. 2002) .............................................................................11

*Cuevas v. Allstate Insurance Co.,*
 872 F. Supp. 737 (S.D. Cal. 1994)................................................................................10

834874v.1

*Dallas Handbag Co. v. Royal Indemnity Co.*,
390 S.W.2d 863 (Tex. Civ. App. 1965) .................................................................................15

*Doerr v. Mobil Oil Corp.*,
2000-0947 (La. 12/19/00), 774 So. 2d 119..................................................................16, 17

*Employers Liability Assurance Corp. v. Enos Coal Corp.*,
457 F.2d 402 (7th Cir. 1972) ...............................................................................................3

*Florida East Coast Railway Co. v. United States*,
519 F.2d 1184 (5th Cir. 1975) .............................................................................................3

*Halter v. Allmerica Financial Life Insurance & Annuity Co.*,
No. 98-0718, 1998 U.S. Dist. LEXIS 13250 (E.D. La. Aug. 19, 1998)......................19-20

*Hendricks v. American Employers Insurance Co.*,
176 So. 2d 827 (La. App. 2d Cir. 1965) ...............................................................................3

*Husband v. Lafayette Insurance Co.*,
93-815 (La. App. 5th Cir. 3/16/94), 635 So. 2d 309...................................................9, 11

*In re Northeast Enterprises, Inc. v . Allstate Insurance Co.*,
1992 WL 78815 (E.D. Pa. April 8, 1992)...........................................................................17

*Kish v. Insurance Co. of North America*,
883 P.2d 308 (Wash. 1994) ..................................................................................................6

*Lake Charles Harbor & Terminal District v. Imperial Casualty & Indemnity Co.*,
857 F.2d 286 (5th Cir. 1988) ..............................................................................................11

*Leonard v. Nationwide Mutual Insurance Co.*,
438 F. Supp. 2d 684 (S.D. Miss. 2006) ..............................................................................14

*Louisiana v. All Property & Casualty Insurance Carriers*,
2006-2030 (La. 8/25/06) __ So. 2d__, 2006 WL 2498196 ..................................................3

*Marcel v. Allstate Insurance Co.*,
536 So. 2d 632 (La. App. 1st Cir. 1988), *writ denied*, 539 So. 2d 631 (La. 1989) ....................19

*McKee v. Home Buyers Warranty Corp. II*,
45 F.3d 981 (5th Cir. 1995) ................................................................................................15

*Morgan v. Auto Club Family Insurance Co.*,
2004-1562 (La. App. 3d Cir. 4/6/05), 899 So. 2d 135............................................10-11

iii

*Murray v. State Farm Fire & Casualty Co.,*
    509 S.E.2d 1 (W. Va. 1998)...................................................................................................3, 4

*Nerness v. Christian Fidelity Life Insurance Co.,*
    1998-1827 (La. App. 3d Cir. 4/21/99), 733 So. 2d 146...........................................................16

*Nestle Foods Corp. v. Aetna Casualty & Surety Co.,*
    135 F.R.D. 101 (D.N.J. 1990)..........................................................................................17-18

*Nida v. State Farm Fire & Casualty Co.,*
    454 So. 2d 328 (La. App. 3d Cir. 1984) ...............................................................................4, 5

*Paulucci v. Liberty Mutual Insurance Co.,*
    190 F. Supp. 2d 1312 (M.D. Fla. 2002) .................................................................................15

*Peterson v. Schimek,*
    1998-1712 (La. 3/2/99), 729 So. 2d 1024...............................................................................16

*Phillips v. Patterson Insurance Co.,*
    2001-1545 (La. App. 3d Cir. 4/3/02) 813 So. 2d 1191..........................................................18-19

*Prytania Park Hotel v. General Star Indemnity Co.,*
    896 F. Supp. 618 (E.D. La. 1995)............................................................................................12

*Riche v. State Farm Fire & Casualty Co.,*
    356 So. 2d 101 (La. App. 1st Cir. 1978)...................................................................................13

*Roach-Strayhan-Holland Post v. Continental Insurance Co.,*
    112 So. 2d 680 (La. 1959) .......................................................................................................13

*Smith v. State Farm Fire & Casualty Co.,*
    381 So. 2d 913 (La. App. 3d Cir. 1980) ..................................................................................5

*South Central Bell Telephone v. Ka-Jon Food Stores, Inc.,*
    93-2926 (La. 5/24/94), 644 So. 2d 357, *vacated on other grounds* (La. 9/15/94), 644
    So. 2d 368 ...............................................................................................................................16

*Stamper v. Liberty Mutual Insurance Co.,*
    2003-2764 (La. App. 1st Cir. 10/29/04), 897 So. 2d 142 ........................................................6

*Standard Insurance Co. v. Cecola,*
    2006 WL 83457 (W.D. La. Jan. 11, 2006) .............................................................................15

*State Farm Fire & Casualty Co. v. Bongen,*
    925 P.2d 1042 (Alaska 1996) ...................................................................................................4

834874v.1

*State Farm Fire & Casualty Co. v. Castillo,*
    829 So. 2d 242 (Fla. Dist. Ct. App. 2002) ................................................................4

*State Farm Fire & Casualty Co. v. Slade,*
    747 So.2d 293 (Ala. 1999) ....................................................................................13

*Sterling v. U.S. Agencies Casualty Co.,*
    2001-2360 (La. App. 4th Cir. 5/15/02) 818 So. 2d 1053 ............................................19

*Sunshine Motors, Inc. v. New Hampshire Insurance Co.,*
    530 N.W.2d 120 (Mich. App.1995) ........................................................................10

*Sweeney v. City of Shreveport,*
    584 So. 2d 1248 (La. App. 2d Cir. 1991) ................................................................12

*Tuepker v. State Farm Fire & Casualty Co.,*
    2006 WL 1442489 (S.D. Miss. 5/24/06) ..................................................................14

*Tuepker v. State Farm Fire & Casualty Co.,*
    2006 WL 2794773 (S.D. Miss. 9/27/06) ..................................................................14

*United States v. Parish of St. Bernard,*
    1984 U.S. App. LEXIS 25870 (5th Cir. 1984) ..........................................................7

*United States v. Parish of St. Bernard,*
    756 F.2d 1116 (5th Cir. 1985) ................................................................................7

*United States v. Vicon Construction Co., Inc.,*
    575 F. Supp. 1578 (S.D.N.Y. 1983) ........................................................................7

*Waldsmith v. State Farm Fire & Casualty Co.,*
    283 Cal. Rptr. 607 (Cal. App. 1991) ......................................................................10

*Yarborough v. Phoenix Mutual Life Insurance Co.,*
    225 S.E.2d 344 (S.C. 1976) ..................................................................................15

## STATUTES AND RULES

44 C.F.R. § 59.1 ..............................................................................................................6

44 C.F.R. § 61.4(b) ......................................................................................................7, 8

44 C.F.R. § 64.3 ..............................................................................................................8

44 C.F.R. § 65.10 ............................................................................................................8

44 C.F.R. Pt. 61 App. A(1), art. II.A .................................................................................6

44 C.F.R. Pt. 61, App. A(1), art. V.D.4.b. ........................................................................7

44 C.F.R. Pt. 61, App. A(1), V.D.9-10 .............................................................................7

La. Civ. Code Ann. art. 2045 .......................................................................................5, 16

La. Rev. Stat. Ann. § 22:120..........................................................................................2, 18

## MISCELLANEOUS

FEMA Bulletin W-05054, dated September 21, 2005, at Attachment–A, *available at* http://bsa.nfipstat.com/wyobull/w-05054.pdf...............................................................7

Program Description: Flood Insurance Program, published by Federal Emergency Management Agency (Aug. 1, 2002), *available at* http://www.fema.gov.plan/prevent/ floodplain/How_the_NFIP_works.shtm .............................................................................6

## I.    INTRODUCTION

Plaintiffs seek to avoid the effect of the Water Damage exclusion and related provisions in State Farm's policy by arguing that they are ambiguous.  Specifically, Plaintiffs contend that (1) the undefined term "flood" in the Water Damage exclusion should be construed to apply only to "naturally-occurring" floods, not an inundation caused by a levee breach; and (2) the term "flood" does not include flooding caused by third-party negligence, as is alleged here.[1]  In support, Plaintiffs have not cited a single case holding that State Farm's Water Damage exclusion is ambiguous, either in the abstract or as applied to "man-made" floods, and they do not even attempt to address the numerous cases holding that such an exclusion encompasses all types of floods, whatever their cause. Nor do they address the cases upholding the policy's "acts or omissions" exclusion, which belies their contention that the policy does not specifically refer to flooding caused by third-party negligence.  On these grounds alone, State Farm's motion should be granted.

Equally without merit are Plaintiffs' arguments that the anti-concurrent cause "lead-in" paragraph to the Water Damage exclusion is unenforceable because it is ambiguous when read in conjunction with the Hurricane Deductible and because it is "flatly contrary" to the "efficient proximate cause" analysis. (Pls. Opp. at 18)  In fact, Louisiana courts have specifically enforced virtually identical anti-concurrent cause language; and over two dozen other courts around the country have held that such language unambiguously excludes losses that would not have occurred but for the operation of an excluded peril, even though other, covered causes might have contributed to the loss.

---

[1]  Perhaps in light of the wealth of contrary authority (*see* State Farm's opening memorandum ("SF Mem.") at 7-8, 11-15), Plaintiffs appear to have abandoned their additional argument that the term "flood" does not include "storm surge."

834874v.1

As the authorities addressed in State Farm's opening memorandum and below establish, State Farm's policy exclusions are clear and unambiguous.   Consequently, the purported "reasonable expectations" of the insureds and extrinsic evidence of State Farm's intent are entirely irrelevant – and Plaintiffs' assertion that they should be allowed to conduct extensive and open-ended discovery on such matters necessarily fails.

Plaintiffs' remaining arguments – that State Farm is liable for breach of the implied covenant of good faith or of Louisiana's insurance bad faith statute (La. Rev. Stat. Ann. § 22:1220) or that it is liable for breach of fiduciary duty – fail as well.  As to the former, because Plaintiffs cannot establish that State Farm has breached an underlying contractual obligation, they cannot state a cognizable claim for breach of the implied covenant of good faith or for breach of its statutory duties.  As to the latter, they have not alleged, and cannot allege, facts that would bring them within any exception to the rule that there is no fiduciary relationship between an insurer and its insured.

For all these reasons, and others discussed below, this Court should dismiss Plaintiffs' complaint in its entirety.

## II.   ARGUMENT

### A.   As a Matter of Law, Counts One and Two of the Complaint (for Declaratory Relief and Breach of Contract, Respectively) Fail to State A Claim Because the Plain Language of the Policy Bars Coverage for Plaintiffs' Losses.

#### 1.  State Farm's Water Damage Exclusion Unambiguously Excludes Flood Damage Regardless of the Cause of the Flood.

Plaintiffs assert that the Water Damage exclusion is ambiguous because it does not define "flood" and because it does not expressly provide that "flood" includes negligently-caused floods.  Thus, they argue, the exclusion must be read to exclude only loss resulting from "naturally-occurring" floods.  (Pls. Opp at 6-11)  Plaintiffs' contention must be rejected, as they

2

fail to cite a single case holding any water damage exclusion ambiguous and simply ignore the abundant authority to the contrary cited in State Farm's opening memorandum.[2]

As State Farm previously noted, the fact that a policy term is undefined does not make it ambiguous. (SF Mem. at 8-11)  Indeed, courts in Louisiana and throughout the country have held that, as used in a water damage exclusion, the undefined term "flood" is plain and unambiguous and that its "generally prevailing meaning" includes all types of floods, whether caused by levee break, storm surge, wind or third-party negligence.[3]  (*Id.* at 10-15, 17)  Thus, Plaintiffs are wrong when they state that if an insurer "fails to define a pertinent term of the policy or exclusionary provision, the court must adopt the meaning of that term most favorable to the policyholders."[4]  (Pls. Opp. at 9)

Plaintiffs' reliance on *Murray v. State Farm Fire & Casualty Co.*, 509 S.E.2d 1 (W. Va. 1998), which they cite for the proposition that the Water Damage exclusion should be read as referring only to natural floods (Pls. Opp. at 10), is likewise misplaced.  In *Murray*, the court

---

[2]  The Louisiana Supreme Court has itself specifically stated that "where the levees failed, *flood waters* swamped large portions of the City." *Louisiana v. All Prop. & Cas. Ins. Carriers*, 2006-2030 (La. 8/25/06) __ So. 2d__, 2006 WL 2498196, *2; *see id.* (referring to "subsequent flooding" following storm).

[3]  In other contexts, courts have likewise recognized that the undefined term "flood" is all-encompassing and that its ordinary or generally prevailing meaning includes both naturally occurring and negligently caused floods. *See, e.g.*, *Burlison v. United States*, 627 F.2d 119, 121-22 (8th Cir. 1980) (rejecting argument that statutory immunity under Flood Control Act, which barred governmental liability for "any damage from or by floods or flood waters" in connection with flood control project, did not apply to "man-made flood caused solely by the negligence of the government" rather than by natural disaster); *Fla. East Coast Ry. Co. v. United States*, 519 F.2d 1184, 1191-92 (5th Cir. 1975) (holding federal government immune from liability under Flood Control Act for negligently-designed levee system that drew surface water under railway roadbed, damaging railway and train, thus rejecting argument that immunity applied "only with respect to natural, as opposed to artificially precipitated floods").

[4]  Moreover, Plaintiffs' cited cases do not support this assertion. In *Hendricks v. American Employers Ins. Co.*, 176 So. 2d 827, 830 (La. App. 2d Cir. 1965), the court merely stated and applied the general rule that if an undefined policy term is "subject to *more than one* accepted meaning, then such words or terms must be construed in the sense which is most favorable to the insured . . . ." (Emphasis added.) Thus, after finding that the undefined term "'commercial' . . . has many meanings," the court adopted the meaning that favored the insured. *Id.* at 832. Likewise, in *Employers Liab. Assur. Corp. v. Enos Coal Corp.*, 457 F.2d 402, 405-06 (7th Cir. 1972), a liability policy excluded from coverage accidents occurring away from premises owned, rented or controlled by the named insured, but did not define or describe the term "premises." After noting that "the meaning of the term 'premises' has been given a *wide variety of treatment* depending largely upon the context in which it was used," the court adopted the meaning most favorable to the insured. *Id.* at 406 (emphasis added). Here, by contrast, courts have consistently held that the term "flood" has only one "generally prevailing meaning," which comprises all kinds of floods,

3

held that State Farm's earth movement exclusion was ambiguous because it could be interpreted to bar coverage for only natural events or for both natural and man-made events. The court therefore construed the exclusion to apply only to naturally occurring earth movement and held that it did not exclude damage resulting from the failure of a negligently constructed rock wall.[5] *Id.* at 8-9. In Louisiana, by contrast, courts have *enforced* State Farm's earth movement exclusion when third-party negligence caused or contributed to the earth movement. *See, e.g.,* *Nida v. State Farm Fire & Cas. Co.*, 454 So. 2d 328 (La. App. 3d Cir. 1984) (holding earth movement exclusion precluded coverage for damage caused by differential settlement when "improperly designed foundation" could not withstand expansion and contraction of soil). Moreover, subsequent courts have criticized the *Murray* court's reasoning and its failure to consider other policy provisions,[6] and the majority of courts, both pre-and post-*Murray*, have held that the earth movement exclusion encompasses both natural and man-made earth movement.

Plaintiffs also rely on *Murray* to argue that purchasers of all-risk policies have a "heightened expectation" of coverage and that the Court must therefore hold "exclusions that contradict the reasonable expectations of Louisiana homeowners' policyholders to be ambiguous and unenforceable." (Pls. Opp. at 15) That is not the law. In Louisiana, every contract,

---

regardless of their precipitating cause.

[5] The court in *Murray* specifically noted that the earth movement loss before it was a discrete event, and expressly contrasted large-scale catastrophic events, such as earthquakes or floods, which the court made plain would be subject to the exclusion. 509 S.E.2d at 10. The latter, of course, is exactly the kind of loss at issue here.

[6] Both the earth movement and Water Damage exclusions expressly state that they apply whether the excluded peril "arises from natural or external forces." In declining to follow *Murray*, which it described as the minority view, the court in *State Farm Fire & Cas. Co. v. Castillo*, 829 So. 2d 242, 245-47 (Fla. Dist. Ct. App. 2002), noted that the term "external," when juxtaposed against the term "natural," means "man-made." *Id.* at 245-46. The *Castillo* court also criticized *Murray* for "ignor[ing] the unambiguous language" of the remainder of the lead-in provision, which excludes coverage regardless of "other causes of the loss" or whether "other causes acted concurrently or in any sequence with" the excluded peril to produce the loss. *See also State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1047 (Alaska 1996) (rejecting reasoning identical to that adopted in *Murray* and holding earth movement exclusion "encompasses earth movement caused by either nature or humans").

4

including an insurance policy, is construed and enforced according to its "clear and explicit" terms, La. Civil Code Ann. art. 2045, and the court will not consider an insured's "reasonable expectations" unless and until it first determines that the challenged language is ambiguous. *See, e.g., Nida*, 454 So. 2d at 333 (rejecting insured's argument that "earth movement" exclusion in homeowners was ambiguous); *Smith v. State Farm Fire & Cas. Co.*, 381 So. 2d 913, 914-15 (La. App. 3d Cir. 1980) (rejecting insured homeowner's argument that policy's exclusion for loss caused by "domestic animals" was ambiguous and enforcing exclusion as written to preclude coverage for property damage caused by insured's cow). As one court recently described Louisiana law on this point:

> The [insured] also argues that regardless of whether the policy is ambiguous, it must be interpreted in a manner consistent with the reasonable expectations [of the insured] . . . . In essence, the [insured] asks that we re-write the terms of the insurance policy to conform with the reasonable expectations of a typical purchaser of insurance. *This step is foreclosed by Louisiana law, which precludes use of the reasonable expectations doctrine to recast policy language when such language is clear and unambiguous.* Because the language here is clear and unambiguous, we cannot impose an alternative meaning by way of interpretation.

*Coleman v. School Board of Richland Parish*, 418 F.3d 511, 522 (5th Cir. 2005) (emphasis added).

In any event, as Plaintiffs themselves note, "Louisiana homeowners would not expect nor appreciate that their coverage would vary or depend on whether the cause of the loss was a natural event or a man-made occurrence." (Pls. Opp. at 16) Since even Plaintiffs must concede that the Water Damage exclusion unambiguously precludes coverage for *natural* floods, little more need be said. If the cause of the insured's loss is *flood*, the coverage outcome cannot – and does not – depend on whether the flood was "a natural event or a man-made occurrence." The clear policy language excluding coverage for *all* flood damage, regardless of its genesis, disposes

5

of any allegedly reasonable expectations to the contrary.[7]

> 2. **Because the National Flood Insurance Program Clearly Covers Floods Caused by Negligently-Caused Levee Breaches, No Policyholder Would Reasonably Expect That the Flood Damage Alleged Here Would be Covered by State Farm's Homeowners Policy.**

The conclusion that no reasonable insured would expect his or her homeowners policy to provide coverage for flood damage caused by levee breaches or third-party negligence is reinforced by the fact that such coverage has long been available through the NFIP. Indeed, the NFIP was enacted in large part in recognition of the inability of the private insurance market to provide such coverage: "[P]rivate insurance companies could not profitably provide [flood coverage] at an affordable price, primarily because of the catastrophic nature of flooding and the inability to develop an actuarial rate structure which could adequately reflect the risk to which flood-prone properties were exposed."[8] *See also Kish v. Ins. Co. of N. Am.*, 883 P.2d 308, 312-13 (Wash. 1994) (insureds "knew that flood would be excluded by any insurance policy they purchased, as exemplified by the existence of the National Flood Insurance Program").

Notwithstanding these authorities, Plaintiffs contend that the NFIP definition of "flood" in 44 C.F.R. § 59.1 does not include water released from the New Orleans levee system as a result of third-party negligence. The most cursory review of that section belies Plaintiffs' assertion, however, since "flood" is specifically defined as "(a) A general and temporary condition of partial or complete inundation of normally dry areas from: . . . (2) the unusual and rapid accumulation . . . of surface waters *from any source*." (Emphasis added.) Plaintiffs' argument is further undermined by the fact that the FEMA-mandated Standard Flood Insurance

---

[7] Plaintiffs' suggestion that the presence of large areas of coastal wetlands and other bodies of water in Louisiana somehow prevents insurers from excluding coverage for man-made floods (Pls. Opp. at 16-17) is contrary to both logic and law. An insurer is free to exclude whatever risks it wishes to exclude, so long as it does so clearly and unambiguously. *Stamper v. Liberty Mut. Ins. Co.*, 2003-2764 (La. App. 1st Cir. 10/29/04), 897 So. 2d 142, 143.

[8] Program Description: Flood Insurance Program, published by Federal Emergency Management Agency, p.1 (Aug.

834874v.1

Policy uses essentially the same definition, *see* 44 C.F.R. Pt. 61, App. A(1), art. II.A.1, and plainly covers flooding resulting from levee breaches.[9]   *See, e.g.*, FEMA Bulletin W-05054, dated September 21, 2005, at Attachment – A, p.1 (giving instructions, *inter alia*, for expedited handling of flood insurance claims "for the area of *flooding caused by the failure of levees* in the New Orleans area, resulting in flooding from Lake Pontchartrain"), *available at* http://bsa.nfipstat.com/wyobull/w-05054.pdf (emphasis added).   At no time did FEMA indicate that no payment would be made if third-party fault contributed to the failure of the levees.

        In other contexts, the NFIP has likewise paid benefits where third-party fault may have caused the flooding.   For example, in the late 1970s and early 1980s, the NFIP paid almost $100 million for flood losses in St. Bernard and Jefferson Parishes, even though the federal government had concluded that third-party "nonfeasance or malfeasance had caused the flooding." *United States v. Parish of St. Bernard*, 1984 U.S. App. LEXIS 25870 (5th Cir. 1984); *accord United States v. Parish of St. Bernard*, 756 F.2d 1116, 1118-19 (5th Cir. 1985) (noting government's contention that defendants "caused massive flood damage by violating their contractual and regulatory obligations to adopt and enforce flood control measures"); *see United States v. Vicon Constr. Co., Inc.*, 575 F. Supp. 1578, 1579 (S.D.N.Y. 1983) (NFIP benefits paid where third-party negligence allegedly caused flooding).

        Plaintiffs next suggest that the amendment of 44 C.F.R. § 61.4(b), which omitted the phrase "damage from a general condition of flooding in the area which results from other than natural causes, such as the breaking of a dam" from its interpretation, means that the release of water from a levee or other man-made structure is no longer considered a flood under the NFIP.

---

1, 2002), *available at* http://www.fema.gov.plan/prevent/floodplain/How_the_NFIP_works.shtm.

[9]   Although certain SFIP exclusions focus on human conduct, none has the effect of eliminating all coverage for negligently-caused flood damage.   *See, e.g.*, 44 C.F.R. Pt. 61, App. A(1), art. V.D.4.b., V.D.9-10 (excluding coverage in some cases where *insured's* conduct caused or exacerbated loss).

(Pls. Opp. at 12 n.2)   In fact, the prior version of the regulation specifically provided that coverage was available *"only for loss due to flood, as defined in § 59.1* of this subchapter" (emphasis added).  Because section 59.1's definition of "flood" – was the same then as it is today, the amendment of the regulation effected no change in the scope of coverage afforded under the NFIP.

Plaintiffs also argue that the certification requirement and the FEMA rate maps indicate that the NFIP does not intend to provide coverage for levee failure due to faulty design, maintenance or construction.  (Pls. Opp. at 13)  To the contrary, the fact that FEMA rates areas more favorably for NFIP purposes if they are protected by levees designed, constructed and maintained to certain standards (*see* 44 C.F.R. §§ 64.3 (flood insurance rate maps), 65.10 (role of levees in flood insurance maps)) demonstrates that FEMA views the flood program to be more exposed in areas where the levees are below mandated standards and thus more susceptible to losses through third-party negligence – precisely because losses resulting from such conditions are in fact covered.

      **3.**     **State Farm's "Acts or Omissions" Exclusion Expressly Excludes Coverage For Plaintiffs' Water Damage Losses Regardless of Whether Such Losses Were Caused or Contributed to By Negligent Acts of Third Parties.**

As State Farm pointed out in its opening memorandum, even if the term "flood" in the Water Damage exclusion did not by itself unambiguously exclude coverage for loss from negligently-caused floods, it unquestionably does so when considered together with the policy's "acts or omissions" exclusion.  (*See* SF Mem. at 15-17)  That provision was added to the policy to explicitly state that third-party negligence is not a covered peril when it operates with an otherwise excluded peril.  As relevant here, the "acts or omissions" exclusion provides that the Water Damage exclusion applies even if the excluded water damage is caused, aggravated or

contributed to by negligent acts or omissions by governmental bodies or others or by defects or inadequacies in the construction or maintenance of any property.[10]  Thus, assuming the truth of Plaintiffs' allegation that negligence in the design, construction and maintenance of the levees was the primary cause of the flooding of their property, the acts or omissions exclusion precludes coverage for such damage, even if Plaintiffs could convince the Court that the Water Damage exclusion by itself does not.

Tellingly, Plaintiffs completely ignore the cases cited by State Farm, from Louisiana and elsewhere, holding that similarly worded provisions are plain, unambiguous and enforceable as written. (SF Mem. at 16-17)  Instead, Plaintiffs cite *Husband v. Lafayette Insurance Co.*, 93-815 (La. App. 5th Cir. 3/16/94), 635 So. 2d 309, 311, which construes an ISO form "acts or omissions" exclusion and opines that it was meant to apply to situations in which the insured is dissatisfied with work performed on its own property.  Based on *Husband*, Plaintiffs argue that the "acts or omissions" exclusion does not apply to their losses because the allegedly defective levees were not on Plaintiffs' property.  (*See* Pls. Opp. at 30)

Although many of the cases construing similar exclusions arise in the context of an insured seeking to recover policy benefits for "renovations performed by or authorized by the insured under the terms of the policy," *Husband*, 635 So. 2d at 312, the exclusion is by no means so limited.  First, the exclusion itself contains no such limitation and, by its terms, applies to a broader set of events than described in *Husband* (e.g., "defect, weakness," etc. in "grading" and "compaction" or activities "off the residence premises").  Moreover, courts have applied such

---

[10]  Specifically, the "acts or omissions" exclusion provides that State Farm does not cover specified losses, including those described in the Water Damage exclusion, "regardless of whether" such loss is "directly or indirectly cause[d], contribute[d] to or aggravate[d] by" the negligent or intentional "conduct, act, failure to act, or decision of any person, group, organization, or governmental body" or by "defect, weakness, inadequacy, fault or unsoundness" in "planning, . . . design, . . . construction, . . . materials, . . . or maintenance . . . of any property (including land structures, or improvements of any kind) whether on or off the residence premises[.]" (Emphasis in original omitted.)

9

exclusions to preclude coverage for damage to the insured's property resulting from acts, omissions or defects in a variety of factual contexts having nothing to do with repair of the insured's property. *See, e.g., Cuevas v. Allstate Ins. Co.*, 872 F. Supp. 737, 738-39 (S.D. Cal. 1994) (applying exclusion to water damage caused when berms constructed on neighbor's property diverted river flow onto insured's property and noting that exclusion "unambiguously excludes '[c]onduct, act, failure to act . . . of any person . . .' whenever the act/omission is combined with another cause of loss excluded under the policy -- in this case, water damage"); *Sunshine Motors, Inc. v. New Hampshire Ins. Co.*, 530 N.W.2d 120, 121 (Mich. App.1995) (applying exclusion to flood damage caused by blocked drain at insured's building); *Capelouto v. Valley Forge Ins. Co.*, 990 P.2d 414, 418 (Wash. App. 1999) (finding no coverage because "the plain meaning of the exclusion indicates that the claimed loss, damage caused by the contractor's use of an inadequate pump on a sewer replacement project off of the insured's premises, is not covered"); *cf. Waldsmith v. State Farm Fire & Cas. Co.*, 283 Cal. Rptr. 607 (1991) (no coverage for loss caused when negligently maintained city water main located outside insured's property released water onto insured's property).

Finally, Plaintiffs argue that their flood losses should be covered as an "ensuing loss." (Pls. Opp. at 31)  As this argument relates to State Farm, Plaintiffs are apparently referring to the final paragraph of the "acts or omissions" exclusion, which contains an exception for "resulting loss."[11]  In Louisiana, courts generally characterize "resulting" or "ensuing" loss as damage that is "distinct and separable" and "different in kind" from the excluded damage from which it results.  *Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 505-06 (5th Cir. 2000).  As the policy itself provides, such a loss will be covered if, but only if, the resulting loss

---

[11]  The final paragraph of State Farm's "acts or omissions" exclusion reads: "However, we do insure for any resulting loss from items a. ["conduct, act, failure to act . . ."], b. ["defect, weakness, inadequacy . . .", and c. ["weather

834874v.1

is itself not excluded.  *See, e.g., Morgan v. Auto Club Family Ins. Co.*, 2004-1562 (La. App. 3d Cir. 4/6/05), 899 So. 2d 135, 136-37 (loss caused when improper installation of metal roof caused mold to develop in attic not covered as ensuing loss because mold specifically excluded from coverage).  In other words, "the resulting loss provision does not resuscitate coverage for excluded loss, but reaffirms coverage for secondary losses ultimately caused by excluded perils."[12]  *Cooper v. Am. Family Mut. Ins. Co.*, 184 F. Supp. 2d 960, 964 (D. Ariz. 2002).

For all the reasons discussed above, flood damage is excluded, regardless of what may have caused the flood.  Thus, even assuming that the damage to Plaintiffs' property constituted "resulting loss" from "conduct, act, [or] failure to act . . ." or from a "defect, weakness, inadequacy . . ." in the levee system, such damage "is itself a Loss Not Insured" by virtue of the clear and unambiguous Water Damage exclusion.[13]  In short, two excluded perils cannot combine to create a covered loss, and there is thus no coverage for Plaintiffs' flood losses, no matter how characterized.

> 4.  **The Lead-In Language of State Farm's Water Damage Exclusion Unambiguously Excludes Losses That Would Not Have Occurred "In the Absence" of Water Damage Regardless of the Operation, Effect or Sequence of Other Potential Causes and Makes the Efficient Proximate Cause Doctrine Inapplicable.**

The policy's water damage exclusion is prefaced by "anti-concurrent cause" language that provides that water damage (and other "excluded events" to which the anti-concurrent cause

---

conditions"] unless the resulting loss is itself a Loss Not Insured by this Section."

[12] Thus, for example, if defectively installed wiring in a house causes a fire, the insurer has no obligation to repair or replace the defective wiring, but will be liable for the ensuing fire damage. *Alton Ochsner*, 219 F.3d at 505.

[13] Plaintiffs further assert that State Farm's "resulting loss" provision is inherently ambiguous and therefore must be construed in favor of coverage, citing *Husband*, 635 So. 2d at 312, and *Lake Charles Harbor & Terminal Dist. v. Imperial Cas. & Indem. Co.*, 857 F.2d 286 (5th Cir. 1988). (Pls. Opp. at 31).  Neither case is relevant to the dispute here.  In *Husband*, the court never reached the ensuing loss issue, since it determined that the exclusion itself did not apply. *Husband*, 635 So. 2d at 312.  In *Lake Charles*, the court sought to interpret a markedly different, and thus distinguishable, policy provision, which excluded coverage for "Mechanical or machinery breakdown; unless an *insured peril ensues*, and then only for the actual loss or damage caused by such ensuing peril." *Lake Charles*, 857 F.2d at 287 (emphasis added).

11

language is applicable) are not covered even where covered risks are concurrent causes of the loss. The anti-concurrent cause "lead-in" language states:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these : . . . .

(*See, e.g.*, SF Motion to Dismiss, Ex. A, Tab 1 at 10)  Water Damage and other excluded events such as earth movement are then listed and defined following this lead-in language.  (*See id.*)  Thus, under the plain terms of the policy, water damage is not covered if the damage would not have occurred "in the absence of" flood, waves, tidal water or the overflow of a body of water, even if there are other contributing causes that are not excluded under the policy.

As discussed in State Farm's opening memorandum, anti-concurrent cause language equivalent to State Farm's has been held by Louisiana state and federal courts to be unambiguous and enforceable.  (*See* SF Mem. at 18-19)  Thus, in *Sweeney v. City of Shreveport*, 584 So. 2d 1248 (La. App. 2d Cir. 1991), and *Prytania Park Hotel v. General Star Indemnity Co.*, 896 F. Supp. 618 (E.D. La. 1995), the courts specifically determined that the effect of the lead-in language was to require that the exclusion at issue be enforced "regardless of any contributing causes," *Sweeney*, 584 So. 2d at 1250, and even though a covered peril might have been the precipitating cause of the loss. *Prytania Park*, 896 F. Supp. at 623.  Dozens of courts around the country have reached the same conclusion, construing State Farm's policy language or substantially similar language in other policies.  (*See* SF Mem. at 19 n.8; Motion to Dismiss, Ex. D)

Plaintiffs do not even mention these cases in their Opposition, arguing instead that the

834874v.1

anti-concurrent cause language is unenforceable because it conflicts with the efficient proximate cause doctrine and with the Hurricane Deductibles issued to certain policyholders. Plaintiffs are wrong on both counts.

As to the efficient proximate cause doctrine, it is established in Louisiana that the rule applies only when the policy itself does not contain contrary language. *See Roach-Strayhan-Holland Post v. Continental Ins. Co.*, 112 So. 2d 680, 682-83 (La. 1959) ("it is sufficient, in order to recover upon a windstorm policy *not otherwise limited or defined*, that the wind was the proximate or efficient cause of the loss or damage . . ."); *accord Riche v. State Farm Fire & Cas. Co.*, 356 So. 2d 101, 103 (La. App. 1st Cir. 1978). These cases are consistent with the widely recognized rule that the efficient proximate cause analysis is simply a method of interpretation that must give way to controlling policy language. *See, e.g., State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 314 (Ala. 1999) (holding that "the rule of efficient proximate causation . . . does not require us to invalidate the earth-movement exclusion, which indicates State Farm's efforts to contract for narrower coverage"). (*See also* cases cited in SF Mem. at 20-21) Where, as here, the policy unambiguously provides that an exclusion applies "regardless of" the operation or effect of other causes of loss, that language must be given effect without regard to the efficient proximate cause rule.[14]

Although Plaintiffs argue that State Farm's anti-concurrent cause language "allows State Farm to fully deny coverage regardless of when, how severe or in what proportion an excluded peril was involved in the loss" (Pls. Opp. at 22), that is not true. State Farm has never taken the position that its anti-concurrent cause language excludes separate, identifiable wind damage merely because the insured structure also sustains flood damage. Thus, for example, if hurricane

---

[14] In any event, the allegedly covered cause on which Plaintiffs' hang their coverage hat – third-party negligence – is in fact excluded. (*See* Point II.A.3 above)

13

winds damage or destroy the roof of the insured's home, State Farm pays for that damage, even if flood waters later destroy part or all of the home.[15]   What the policy excludes, and what State Farm does not pay for, is *inseparable* damage caused by a combination of, e.g., wind and water (or third-party negligence and flood), in whatever proportion, provided that the damage would not have occurred in the absence of water.

Plaintiffs' argument based on the Hurricane Deductible fares no better than their efficient proximate cause argument.   According to Plaintiffs, enforcement of the Water Damage exclusion "would effectively exclude the very coverage suggested by the 'Hurricane Deductible Endorsement.'"   (Pls. Opp. at 25)   The vice in this argument is that the deductible contains no language that could be interpreted as altering, providing or expanding the coverage otherwise provided under the policy.   Rather, it merely increases the amount that Plaintiffs must pay out of their own pocket for covered damages that occur during a hurricane.   Indeed, application of the deductible is expressly limited to "direct physical loss or damage to covered property caused by wind, wind gusts, hail, [etc.] caused by or resulting from a hurricane," and it explicitly states that "[a]ll other policy provisions" – necessarily including the policy exclusions – apply.   Courts that have addressed the function and meaning of such deductibles have consistently held that they

---

[15]   It is on this basis that the United States District Court for the Southern District of Mississippi erred in ruling in *Tuepker v. State Farm Fire & Cas. Co.*, 2006 WL 1442489 (S.D. Miss. 5/24/06), that the anti-concurrent cause language is ambiguous "in the context of damages sustained by the insured during a hurricane."   According to the court, "[t]hese provisions purport to exclude coverage for wind and rain damage, both of which are covered losses under this policy, where an excluded cause of loss, e.g. water damage, also occurs."   The court amplified on its reasoning in *Leonard v. Nationwide Mut. Ins. Co.*, 438 F. Supp. 2d 684 (S.D. Miss. 2006), stating that the equivalent language in Nationwide's policy "would mean that an insured whose dwelling lost its roof in high winds and at the same time suffered an incursion of even an inch of water could recover nothing under his Nationwide policy."   As this passage makes plain, the court simply misunderstood the effect of the anti-concurrent cause provision.   Because the roof damage cited in the example *would have* occurred "in the absence of" water damage, it would not meet the threshold requirement of the lead-in language and thus would not fall within the Water Damage exclusion.

In any event, the district court has granted State Farm's motion to certify the case for interlocutory appeal, thus implicitly recognizing that its interpretation may be incorrect.   *See Tuepker v. State Farm Fire & Cas. Co.*, 2006 WL 2794773 (S.D. Miss. 9/27/06).   State Farm's Petition for Permission to Appeal Under 28 U.S.C. § 1292(b) is currently pending before the Fifth Circuit.

14

834874v.1

"modif[y] application of the deductible only," and do not create or alter coverage or affect the meaning of other policy provisions.[16]  *Paulucci v. Liberty Mut. Ins. Co.*, 190 F. Supp. 2d 1312, 1322 (M.D. Fla. 2002); *see Dallas Handbag Co. v. Royal Indem. Co.*, 390 S.W.2d 863, 865 (Tex. Civ. App. 1965).[17]

> **5.    Because State Farm's Policy Unambiguously Precludes Coverage for Plaintiffs' Flood Loss, Discovery of Extrinsic Evidence of the Parties' Intent Is Irrelevant.**

Plaintiffs contend they should be permitted to conduct extensive and open-ended discovery regarding extrinsic evidence of State Farm's intent and understanding of the disputed provisions, including its "underwriting and claims practices and procedures, manuals, guidelines, policies, and directives to [its] employees in underwriting, processing, handling, and resolving insurance claims." (Pls. Opp. at 26-27, 32-35)

Louisiana courts, however, uniformly hold that no resort to evidence of the parties' intent may be had unless and until the court first determines that the challenged policy provisions are ambiguous. *See, e.g., Standard Ins. Co. v. Cecola*, 2006 WL 83457, at *2 (W.D. La. Jan. 11, 2006) (where policy language is unambiguous, "the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence"). *See also McKee v. Home Buyers Warranty Corp.*

---

[16]   During the August 25, 2006 hearing on, *inter alia*, State Farm's motion for judgment on the pleadings in *Vanderbrook* (2:05-cv-06323), the Court agreed that the deductible is not something that "would necessarily suggest to someone that they've got coverage for hurricanes . . . ." Transcript at 116 (8/25/06).  Accordingly, State Farm responds only briefly to Plaintiffs' argument.  A more detailed discussion of State Farm's position may be found in State Farm's Reply Memorandum in support of its motion for judgment on the pleadings in *Vanderbrook* (Doc. No. 867), at 10-12, which is incorporated herein by reference.

[17]   *See also Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 349 (S.C. 1976) (rejecting insured's contention that deductible provision, considered in isolation, resulted in ambiguity: "The words, 'deductible amount $100,' upon which the plaintiff would rely for the creation of an ambiguity, conveys no meaning until the coverage provided by the whole  policy is ascertained.  In other words, there is nothing to deduct the $100 amount from until the coverage provided is determined. . . . To attach meaning to 'deductible amount $100,' without considering the coverage provided, is somewhat like asking the question, 'What is the answer if one subtracts 10?'  There is, of course, no answer until one learns what 10 is to be subtracted from.").

834874v.1

*II*, 45 F.3d 981, 986 (5th Cir. 1995) (rejecting plaintiff's argument that district court erred in granting summary judgment prior to plaintiff's receipt of pending discovery requests on issue of defendant's understanding of contract provision: "When the words of the contract are clear and unambiguous and lead to no absurd consequences, no further inquiry may be made into the parties' intent."). For the most part, Plaintiffs appear to concede the point, and the cases they cite allow consideration of extrinsic evidence only after the court has determined that an ambiguity exists.[18] *See, e.g., Peterson v. Schimek*, 1998-1712 (La. 3/2/99), 729 So. 2d 1024, 1031 (refusing to consider extrinsic evidence of insurer's intent: "[W]henever the words of the contract are clear, explicit and lead to no absurd consequences . . . a court is prohibited from taking parol evidence to explain or contradict the clear meaning of the contract.").

Despite this, Plaintiffs claim they are entitled to discovery of extrinsic evidence because, "when interpreting an insurance policy, in addition to the words of the insurance policy, courts always look to usage of trade evidence to form their interpretation," citing *Nerness v. Christian Fidelity Life Insurance Co.*, 1998-1827 (La. App. 3d Cir. 4/21/99), 733 So. 2d 146. (Pls. Opp. at 34) In *Nerness*, however, the court did not "look to evidence of trade usage" in interpreting the insurance policy before it, finding the policy language at issue to be "clear and unambiguous" without resort to extrinsic evidence. As the court correctly noted, "[w]hen interpreting contracts, we must determine the parties' common intent. La. Civil Code Ann. art. 2045. Such a determination is not necessary when the words of the contract are clear and explicit and lead to

---

[18] Plaintiffs further argue that extrinsic evidence may be considered when the policy language would lead to "absurd consequences," citing *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 124, and *South Central Bell Tel. v. Ka-Jon Food Stores, Inc.*, 93-2926 (La. 5/24/94), 644 So. 2d 357, *vacated on other grounds* (La. 9/15/94), 644 So. 2d 368. (Pls. Opp. at 33) Plaintiffs hypothesize that it would be absurd to find that the policy covered loss to an insured's house if a plane crashed directly into it, but not if it crashed into a water tower, inundating the house. The only question here, however, is whether damage caused by flooding attributable in part to third-party negligence is excluded from coverage. Thus, even if "a set of facts could be imagined wherein the policy language would lead to an absurd result," that does not matter unless it "lead[s] to an absurd result in *this* case." *Cloud v. Nat'l Automotive Ins. Co.*, 2003-1438 (La. App. 3d Cir. 5/26/04), 875 So. 2d 866, 870 (emphasis added).

no absurd consequences."

In seeking to establish their entitlement to discovery of extrinsic evidence, Plaintiffs cite several cases in which the courts allowed discovery of internal company manuals. For the most part, however, these courts considered such evidence only after first determining that the disputed language was ambiguous. *See, e.g., Andover Newton Theological School, Inc. v. Continental Cas. Co.*, 930 F.2d 89, 94 n.5 (1st Cir. 1991) ("We are aware that where language is clear and unambiguous, extrinsic evidence is inadmissible to prove the parties' intent. [Citations.] Here, however, we already have concluded that the language is unclear."); *In re Northeast Enters., Inc. v . Allstate Ins. Co.*, 1992 WL 78815, at *3 (E.D. Pa. April 8, 1992) ("Only after the court finds that the policy language is ambiguous may the court examine extrinsic evidence such as the purpose of the insurance, its subject matter, the situation of the parties and the circumstances surrounding the making of the contract."). These cases are thus completely consistent with Louisiana law on this point and do not advance Plaintiffs' argument.[19]

Plaintiffs' citations to *Aetna Casualty & Surety Co. v. Haas*, 422 S.W.2d 316, 319-20 (Mo. 1968), and *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 106-07 (D.N.J. 1990), purportedly for the proposition that evidence of an insurer's "inconsistent interpretations and applications of policy language" may show an inherent ambiguity (Pls. Opp. at 34-35), are similarly unhelpful. In *Haas*, the trial court properly considered extrinsic evidence

---

Because it does not, Plaintiffs are bound by the four corners of the policy, *id.*, and their losses are excluded.

[19] Although the courts in *Cincinnati Ins. Co. v. Clark*, No. 91-0829, 1992 WL 34128 (E.D. Pa. Feb. 19, 1992), and *Champion Int'l Corp. v. Liberty Mut. Ins. Co.*, 129 F.R.D. 63 (S.D.N.Y. 1989), appear to have allowed discovery of limited extrinsic evidence prior to a finding of ambiguity, they did so on the basis that extrinsic evidence could be used to establish an ambiguity in the first instance. *See Clark*, 1992 WL 34128, at *1 ("Clearly, what the parties understood to be a 'covered person' is in controversy. Defendant is entitled to discover documents which may show that plaintiff has interpreted this term differently in resolving similar claims."); *Champion Int'l*, 129 F.R.D. at 70 ("the mere denial of coverage in this action entitles Champion to conduct discovery to attempt to demonstrate inconsistencies between Continental's present position and interpretive positions it has taken in the past"). As noted, this is not the rule in Louisiana. *See Doerr*, 774 So. 2d at 123-24.

17

834874v.1

after finding "latent ambiguity."  422 S.W.2d at 319-20.  In *Nestle Foods*, the court allowed discovery into the policy's drafting history, but only because such evidence might be admissible if the policy were later determined to be ambiguous.  135 F.R.D. at 106-07.  Here, by contrast, State Farm's intent to exclude flood losses, whatever their cause, is clearly expressed within the four corners of its homeowners policy.  Accordingly, Plaintiffs are bound by the clear and unambiguous policy exclusions, and their attempt to create an ambiguity by delving into claims manuals and other extrinsic evidence should not be countenanced.

**B.     Counts Three and Four of the Complaint Fail to State a Claim for Breach of the Implied Covenant of Good Faith or for Breach of Louisiana's Insurance Bad Faith Statute (La. Rev. Stat. Ann. § 22:1220).**

As shown above and in State Farm's opening memorandum, Plaintiffs have failed to allege a valid, underlying claim for insurance coverage.  In their opposition, Plaintiffs do not dispute, or even address the cases cited by State Farm holding, that a valid, underlying claim for insurance coverage is an essential prerequisite to stating a cognizable claim for breach of the implied covenant of good faith and for breach of Louisiana's insurance bad faith statute, La. Rev. Stat. Ann. § 22:1220.  S*ee Clausen v. Fid. & Deposit Co. of Md.*, 95-0504 (La. App. 1st Cir. 8/4/95) 660 So. 2d 83, 86; *Phillips v. Patterson Ins. Co.*, 2001-1545 (La. App. 3d Cir. 4/3/02) 813 So. 2d 1191, 1195. (*See also* SF Mem. at 22)

Plaintiffs contend that their bad faith claims should not be dismissed because the issue of whether an insurer's conduct constitutes bad faith is a fact question for the jury. (*See* Pls. Opp. at 37-38)  Plaintiffs' contention misses the point because the issue of whether their bad faith claims may proceed requires in the first instance a determination by the Court that Plaintiffs have stated a legally viable, underlying claim for insurance coverage.  *See Clausen*, 660 So. 2d at 85-86 (holding that with "regard[] to recovery under La. R.S. 22:658 and 22:1220," "we must *first*

18

determine if there is an underlying claim, and if so, its validity") (emphasis added); *Phillips*, 813 So. 2d at 1195 ("a plaintiff attempting to base her theory of recovery against an insurer on these statutes must *first* have a valid, underlying, substantive claim upon which insurance coverage is based") (emphasis added).[20]   Because, as shown above, State Farm's invocation of the Water Damage exclusion is not a breach of contract and does not deprive policyholders of any benefit justifiably expected under the terms of the contract, there is no basis for a claim of breach of the implied duty of good faith or for breach of Louisiana's bad faith statute.

**C.      Count Five of the Complaint Fails to State a Claim for Breach of Fiduciary Duty.**

In their opposition, Plaintiffs do not contend that State Farm or its agents failed to provide the homeowners insurance that Plaintiffs requested.   Moreover, Plaintiffs entirely fail to address the cases cited by State Farm in which Louisiana courts have repeatedly refused to impose upon insurers and insurance agents precisely the type of duty that Plaintiffs claim State Farm breached in this case – namely, to advise insureds of the purported need for more and different insurance.   (*See* SF Mem. at 23-24 (citing cases))

Plaintiffs conclusorily assert that State Farm "owe[d] . . . a fiduciary duty of undivided loyalty, due care and fidelity" based on the unsupported claim that State Farm and other Defendants "acted as brokers to the policyholder[s]" by "directly selling" their insurance policies. (*See* Pls. Opp. at 43-44)   In support, Plaintiffs cite only this Court's opinion in *Halter v. Allmerica Financial Life Insurance & Annuity Co.*, No. 98-0718, 1998 U.S. Dist. LEXIS 13250 (E.D. La. Aug. 19, 1998).   In *Halter*, however, this Court was not confronted with and did not

---

[20]   The cases cited by Plaintiffs merely stand for the unremarkable proposition that where (unlike here) a valid, underlying claim for insurance coverage is asserted, a jury's factual findings regarding whether an insurer's conduct constitutes bad faith will generally not be disturbed on appeal. *See Calogero v. Safeway Ins. Co. of La.*, 99-1625 (La. 1/19/00) 753 So. 2d 170, 173; *Brinston v. Automotive Cas. Ins. Co.*, 96-1982 (La. App. 4th Cir. 12/3/97) 703 So. 2d 813, 816; *Sterling v. U.S. Agencies Cas. Co.*, 2001-2360 (La. App. 4th Cir. 5/15/02) 818 So. 2d 1053, 1056; *Marcel v. Allstate Ins. Co.*, 536 So. 2d 632, 637 (La. App. 1st Cir. 1988), *writ denied*, 539 So. 2d 631 (La. 1989).

834874v.1

consider whether an insurer becomes an insured's broker by "directly selling" its insurance policies.  Rather, the Court merely found that under the "particular circumstances" of that case the agent might be deemed to have "acted as the insureds' broker and thus owed them fiduciary obligations."  *Id.* at *12.[21]   In so holding, however, the Court acknowledged that, "under Louisiana law, an insurer-insured relationship is contractual and does not give rise to a fiduciary duty," *id.* at *15-16 (citing cases)), and stated that, "[g]enerally, an insurance agent is deemed the representative of the insurer, and he therefore does not have a fiduciary relationship with the insured." *Id.* at *10.  Nothing in *Halter* suggests that Louisiana would impose a duty on insurers or agents – as Plaintiffs seek here – to advise insureds about the purported need for more and different insurance.  Indeed, as discussed above, the cases cited by State Farm make clear that no such duty exists under Louisiana law.  (*See* SF Mem. at 23-24)

In sum, because Plaintiffs in this case make no allegation that State Farm or its agents failed to provide the homeowners insurance that Plaintiffs requested, and because neither State Farm nor the licensed independent agents who sell its policies had any duty to advise Plaintiffs to purchase additional insurance, neither State Farm nor its agents breached any fiduciary duty as a matter of law.

## III.    CONCLUSION

For the reasons discussed above and in State Farm's opening memorandum, its motion to dismiss should be granted, and Plaintiffs' Amended and Restated Complaint should be dismissed in its entirety.

---

[21]  The insureds' claims in *Halter* were that the agent owed a duty to advise them that premiums would continue to rise under the policy they had purchased and that they could make a withdrawal rather than take a loan against the policy.  1998 U.S. Dist. LEXIS 13250, at *10.

20

_Sarah H Barcellona_

Wayne J. Lee, 7916
Stephen G. Bullock, 3648
Lesli D. Harris, 28070
Sarah H. Barcellona, 28080
Of
STONE PIGMAN WALTHER
    WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

Attorneys for State Farm Fire and
Casualty Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply Memorandum in Support of State

Farm's Motion to Dismiss Plaintiffs' Amended and Restated Complaint has been served upon

each counsel of record, via electronic mail or by United States mail, postage pre-paid and

properly addressed, on this 16th day of October, 2006.

_Sarah H Barcellona_

834874v.1