FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 SEP 12  PM 4: 37

LORETTA G. WHYTE
CLERK



# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| XAVIER UNIVERSITY OF LOUISIANA | * | CIVIL ACTION NO.: 06-0516 |
| | * | |
| VERSUS | * | SECTION "R" |
| | * | |
| TRAVELERS PROPERTY CASUALTY | * | JUDGE VANCE |
| COMPANY OF AMERICA | * | |
| | * | MAGISTRATE NO. 2 |
| | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |

## DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

<u>Of Counsel</u>

Stephen E. Goldman
Wystan M. Ackerman
ROBINSON & COLE, LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone: (860) 275-8200
Facsimile: (860) 275-8299


Dated: September 12, 2006

Ralph S. Hubbard, III, T.A.
Simeon B. Reimonenq, Jr.
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone:    (504) 568-1990
Facsimile:    (504) 310-9195


Attorneys for Defendant
Travelers Property Casualty Company of America

____ Fee_____
____ Process_____
_X_ Dktd _____
____ CtRmDep_____
____ Doc. No_____

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

UNDISPUTED MATERIAL FACTS ....................................................................................... 3

ARGUMENT ........................................................................................................................... 4

I.    UNDER LOUISIANA LAW, INSURANCE POLICIES MUST BE ENFORCED
      AS WRITTEN, AND THE WORDS USED MUST BE GIVEN THEIR
      COMMON, ORDINARY MEANING ............................................................................. 4

II.   THE WATER EXCLUSION CLEARLY APPLIES TO THE INUNDATION OF
      XAVIER'S PROPERTY BY WATER RELEASED FROM BROKEN LEVEES.............. 5

      A.    The Policy, in Clear and Unambiguous Language, Excludes Losses Caused
            Directly or Indirectly By Flood or Overflow of a Body of Water, Regardless of
            Any Other Contributing Cause ............................................................................... 5

      B.    A Large-Scale Inundation of Normally Dry Land is a "Flood" Regardless of the
            Extent to Which "Natural" or "Man-Made" Causes Contribute to the Inundation ........ 7

            1.    The Ordinary Meaning of "Flood" is an Inundation of Normally Dry Land...........7

            2.    Courts Have Repeatedly Rejected the Argument That the Term "Flood" is
                  Limited to "Natural" Events .....................................................................9

            3.    Xavier's Proposed Interpretation of the Word "Flood" Would Be Wholly
                  Contrary to Louisiana Principles of Policy Interpretation .....................................11

            4.    The Cases Cited By Xavier Do Not Support Its Position ......................................15

            5.    In Any Event, the Flooding In New Orleans Indisputably Involved A
                  Powerful "Natural" Force -- Hurricane Katrina.....................................18

      C.    The Anti-Concurrent Causation Clause in the Water Exclusion Makes Clear
            That the Exclusion Applies Regardless of What Factors Caused or Contributed
            to the Flood ........................................................................................................ 20

III.  XAVIER IGNORES THE FACT THAT THE POLICY ALSO SEPARATELY
      EXCLUDES LOSS CAUSED BY INADEQUATE DESIGN, PLANNING AND
      CONSTRUCTION.......................................................................................................... 23

IV.   THE COURT SHOULD ENTER SUMMARY JUDGMENT FOR TRAVELERS .......... 24

CONCLUSION.............................................................................................................................. 25

## TABLE OF AUTHORITIES

Aetna Ins. Co. v. United States, 628 F.2d 1201 (9th Cir. 1980)..........................................19

Alexis v. Southwood Ltd. P'ship, 792 So. 2d 100 (La. App. 4th Cir. 2001) .....................18

Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272 (Utah 1993)........................................22

Assurance Co. of Am. v. Jay-Mar, Inc., 38 F. Supp. 2d 349 (D.N.J. 1999)......................22

Bartlett v. Cont'l Divide Ins. Co.,
    697 P.2d 412 (Colo. Ct. App. 1984), aff'd, 730 P.2d 308 (Colo. 1986) ..............2, 7, 10

Berthelot v. Boh Bros. Const. Co., L.L.C., 431 F. Supp. 2d 639 (E.D.La. 2006)...............1

Boudreaux v. Dep't of Transp. & Dev., 690 So. 2d 114 (La. App. 1 Cir. 1997)................8

Buente v. Allstate Prop. & Cas. Ins. Co.,
    2006 WL 980784 (S.D. Miss. Apr. 12, 2006).........................................................1, 8

Cadwallader v. Allstate Ins. Co., 848 So. 2d 577 (La. 2003) ........................4, 5, 11, 14, 16

Casey v. Gen. Accident Ins. Co., 578 N.Y.S.2d 337 (N.Y. App. Div. 1991)..............11, 23

Change, Inc. v. Westfield Ins. Co., 542 S.E.2d 475 (W. Va. 2000) ............................16, 17

Chase v. State Farm Fire & Cas. Co., 780 A.2d 1123 (D.C. 2001)....................................22

Chauvin v. State Farm Fire & Cas. Co.,
    2006 WL 2228946 (E.D. La. Aug. 2, 2006) ....................................................................6

Clade v. Stone Ins., Inc., 2006 WL 2366373 (E.D. La. Aug. 14, 2006)..............................1

Cloud v. Nat'l Auto. Ins. Co., 875 So. 2d 866 (La. App. 3 Cir. 2004),
    writ denied, 885 So. 2d 1131 (La. 2004) .....................................................................14

In re Continental Airlines, 981 F.2d 1450 (5th Cir. 1993) ................................................24

Dobson v. Allstate Ins. Co., 2006 WL 2078423 (E.D. La. July 21, 2006)................1, 6, 16

Doerr v. Mobil Oil Corp., 774 So. 2d 119 (La. 2000) ......................................................18

E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.,
    444 N.Y.S.2d 321 (N.Y. App. Div. 1981) ...............................................................2, 10

Edwards v. Daugherty, 883 So. 2d 932 (La. 2004).........................................................4, 5

El Rincon Supportive Servs. Org., Inc. v. First Nonprofit Mutual Ins. Co.,
    803 N.E.2d 532 (Ill. App. Ct. 2004) ...........................................................24

Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082 (Fla. 2005) ........................................17

Flaherty v. Jackson, 152 La. 679 (La. 1922) ......................................................................12

Florida E. Coast Ry. Co. v. United States, 519 F.2d 1184 (5th Cir. 1975)..........................7

Florida Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron,
    721 So. 2d 825 (Fla. Ct. App. 1998)............................................................................23

Front Row Theatre, Inc. v. American Mfr. Mut. Ins. Cos.,
    18 F.3d 1343 (6th Cir. 1994) ........................................................................11, 22, 23

Gleason v. Nuco, Inc., 774 So. 2d 1240 (La. App. 1 Cir. 2000).........................................8

Harrison v. R.R. Morrison & Son, Inc., 862 So. 2d 1065 (La. App. 2 Cir. 2003).............18

In re Ingram Barge Co., 435 F. Supp. 2d 524 (E.D. La. 2006)............................................1

Jack v. Adriatic Ins. Co., 420 So. 2d 1292 (La. App. 3 Cir. 1982)...............................14, 16

Jarvis Christian College v. National Union Fire Ins. Co.,
    197 F.3d 742 (5th Cir. 1999) .......................................................................12, 13

Jussim v. Massachusetts Bay Ins. Co., 610 N.E.2d 954 (Mass. 1993) ..............................22

Kane v. Royal Ins. Co., 768 P.2d 678 (Colo. 1989) ........................................2, 7, 9, 19, 22

Kelly v. Farmers Ins. Co., 281 F. Supp. 2d 1290 (W.D. Okla. 2003) ...............................22

Kula v. State Farm Fire & Cas. Co., 628 N.Y.S.2d 988 (N.Y. App. Div.1995)................22

Lewis v. Hamilton, 652 So. 2d 1327 (La. 1995)................................................................16

Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.,
    2002 U.S. Dist. LEXIS 3594 (N.D. Tex. Mar. 5, 2002) ................................................6

Mersch v. City of Dallas, 207 F.3d 732 (5th Cir. 2000)......................................................3

Millar v. State Farm Fire & Cas. Co., 804 P.2d 822 (Ariz. App. 1990)............................22

Murray v. State Farm Fire & Cas. Co., 509 S.E.2d 1 (W. Va. 1998)....................15, 16, 17

Nautilus Ins. Co. v. Vuk Builders, Inc., 406 F. Supp. 2d 899 (N.D. Ill. 2005) .................18

Pakmark Corp. v. Liberty Mut. Ins. Co.,
    943 S.W.2d 256 (Mo. Ct. App. 1997).......................................................2, 10, 11, 22, 23

Paulucci v. Liberty Mut. Fire Ins. Co., 190 F. Supp. 2d 1312 (M.D. Fla. 2002)...............22

Peach State Uniform Serv., Inc. v. American Ins. Co.,
    507 F.2d 996 (5th Cir. 1975) ........................................................................................15

Pracht v. City of Shreveport, 830 So. 2d 546 (La. App. 2 Cir. 2002) .................................8

Preferred Mut. Ins. Co. v. Travelers Cos., 955 F. Supp. 9 (D. Mass. 1997)......................22

Prytania Park Hotel v. General Star Indem. Co., 896 F. Supp. 618 (E.D. La. 1995) ....2, 21

Ramirez v. American Family Mut. Ins. Co., 652 N.E.2d 511 (Ind. App. 1995) ...............22

Roberts v. Murphy Oil Corp., 577 So. 2d 308 (La. App. 4 Cir. 1991)................................8

Robinson v. Aetna Life Ins. Co., 443 F.3d 389 (5th Cir. 2006) ........................................24

Saden v. Kirby, 660 So. 2d 423 (La. 1995) ........................................................................8

Schroeder v. State Farm Fire & Cas. Co., 770 F. Supp. 558 (D. Nev. 1991)....................22

Smith Lupo Williams Partners v. Carter,
    2006 WL 2548255 (E.D. La. Aug. 31, 2006) ...............................................................1

State Farm Fire & Cas. Co. v. Bongen, 925 P.2d 1042 (Alaska 1996) ..............................22

State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293 (Ala. 1999) ....................................22

State v. All Property & Cas. Ins. Carriers, 2006 WL 2498196 (La. Aug. 25, 2006)...........8

Stephens v. Audubon Ins. Co., 665 So. 2d 683 (La. App. 2 Cir. 1995)............................16

Summerville v. Missouri Pac. R.R. Co., 509 So. 2d 639 (La. App. 3 Cir. 1987)...............8

Sunshine Motors, Inc. v. New Hampshire Ins. Co.,
    530 N.W.2d 120 (Mich. Ct. App. 1995) ........................................................11, 22, 23

Sweeney v. City of Shreveport, 584 So. 2d 1248 (La. App. 2 Cir. 1991),
    writ denied, 589 So. 2d 1057 (La. 1991) ................................................................2, 21

TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.,
   114 F.3d 731 (8th Cir. 1997) ...............................................................2, 10, 17, 20, 22

Team Envtl. Servs., Inc. v. Addison, 2 F.3d 124 (5th Cir. 1993) ......................................21

Toole v. McClintock, 999 F.2d 1430 (11th Cir.  1993) ........................................................3

Toumayan v. State Farm General Ins. Co., 970 S.W.2d 822 (Mo. Ct. App. 1998)...........22

Travelers Indem. Co. v. Powell Ins. Co.,
   1996 WL 578030 (E.D. La. Oct. 4, 1996) ....................................................................6

Waldsmith v. State Farm Fire & Cas. Co.,
   283 Cal. Rptr. 607 (Cal. Ct. App. 1991) .....................................................................24

Walker v. McKinnis,
   2005 Ohio 4058, 2005 WL 1864144 (Ohio Ct. App. Aug. 8, 2005) ......................7, 12

Wallis v. Country Mut. Ins. Co., 723 N.E.2d 376 (Ill. App. Ct. 2000)................................7

Whitt v. State Farm Fire & Cas. Co., 734 N.E.2d 911 (Ill. App. Ct. 2000)........................8

Wyatt v. Northwestern Mut. Ins. Co., 304 F. Supp. 781 (D. Minn. 1969) ........................16

## STATUTES

La. Civ. Code art. 2046 ..................................................................................................4, 16

La. Civ. Code art. 2047 ...........................................................................................4, 7, 12, 16

La. Civ. Code art. 2049 ......................................................................................................12

La. Rev. Stat. § 22:620(A)(4) ...............................................................................................5

La. Rev. Stat. § 38:421...........................................................................................................8

## PRELIMINARY STATEMENT

Plaintiff's motion is based entirely on its argument that the massive inundation of water that occurred in New Orleans at the time of Hurricane Katrina was not a "flood." Of course it was. The word "flood" has a plain and simple meaning: a substantial inundation of land that is normally dry, regardless of the cause.[1] Judges of this Court have repeatedly described the inundation of New Orleans at the time of Hurricane Katrina as a "flood."[2]

Plaintiff Xavier University of Louisiana ("Xavier") suffered property damage that was, in its own words, "caused by ground water which came from the 17th Street Canal and the London Avenue Canal breaches" as part of a large-scale "spread of ground water that eventually covered approximately 80% of the city" (Xavier Memo., at 1, 4.) The non-flood, commercial property policy (the "Policy") issued by Travelers contains a water exclusion (hereinafter, "Water Exclusion") that expressly excludes "loss caused directly or indirectly by . . . Water," which is defined to include "Flood [or] overflow of any body of water . . . ."[3] The Water Exclusion clearly encompasses the overflow of water from canals, as a result of broken levees.

The Court should both deny Plaintiffs' motion for partial summary judgment and enter

---

[1] Defendant Travelers Property Casualty Company of America ("Travelers") writes commercial property insurance. The Standard Fire Insurance Company, an affiliate of Travelers that writes homeowners insurance coverage, recently briefed the application of a water damage exclusion in a homeowners' insurance policy in Vanderbrook et al. v. State Farm Fire & Cas. Co. et al., Civ. A. No. 05-6323 (E.D. La.) (Duval, J.).

[2] Dobson v. Allstate Ins. Co., 2006 WL 2078423, at *11 (E.D. La. July 21, 2006) (Vance, J.); Smith Lupo Williams Partners v. Carter, 2006 WL 2548255, at *1 (E.D. La. Aug. 31, 2006) (Africk, J.) (noting that property was "damaged by the floodwaters that inundated New Orleans following Hurricane Katrina"); Clade v. Stone Ins., Inc., 2006 WL 2366373, at *1 (E.D. La. Aug. 14, 2006) (Feldman, J.) ("Plaintiff's home flooded during Hurricane Katrina."); In re Ingram Barge Co., 435 F. Supp. 2d 524, 525 (E.D. La. 2006) (Berrigan, J.) ("The allegations in this case arise out of the damage caused by the flooding that ravaged New Orleans after Hurricane Katrina."); Berthelot v. Boh Bros. Const. Co., L.L.C., 431 F. Supp. 2d 639, 642 (E.D.La. 2006) (Duval, J.) (noting that litigation arose out of "the canal levee and/or floodwall breaches and subsequent flooding which occurred after Hurricane Katrina struck New Orleans"). See also Buente v. Allstate Prop. & Cas. Ins. Co., 2006 WL 980784, at *1 (S.D. Miss. Apr. 12, 2006) (holding that "the inundation which occurred at the time of Hurricane Katrina was a flood, as that term is ordinarily understood").

[3] Policy, Deluxe Property Coverage Form, at p. 10. A certified copy of the Policy is attached as Exhibit A to the Affidavit of Ralph S. Hubbard III, Esq. ("Hubbard Aff."), submitted herewith.

partial summary judgment in favor of Travelers.  Xavier's argument that the Policy covers flood

losses where the cause is "man-made" fails for several reasons:

1) The Eighth Circuit and three state appellate courts have considered levee breaks and
   similar events like dam failures, and have unanimously found water damage exclusions
   applicable even if human acts or omissions caused or contributed to the event.[4]

2) Xavier's proposed distinction between "natural" and "man-made" floods defies common
   sense.  Almost any large-scale inundation will involve some human act or omission.
   There are few floods that could not have been prevented if manmade structures
   controlling the waters or damaged by the waters had been perfectly engineered,
   constructed and positioned.  In any event, in this case, the inundation clearly was caused
   by a powerful natural force -- Hurricane Katrina -- regardless of whether it also involved
   human acts or omissions.

3) The Water Exclusion contains anti-concurrent causation language specifying that "[s]uch
   loss is excluded regardless of any other cause or event contributing concurrently or in any
   sequence to the loss."  The Water Exclusion thus makes it clear that losses caused directly
   or indirectly by "flood" or "overflow of any body of water" are excluded regardless of
   what other factors, such as human acts or omissions, may have caused or contributed to
   the loss.  The Louisiana Court of Appeal, Second Circuit has held that an exclusion with
   the exact same language unambiguously excludes coverage for losses within its purview,
   even if a "man-made" cause arguably contributed to the loss.[5]

4) While Xavier suggests that the loss was caused not by "flood" but by "the levees'
   inadequate design, planning, and construction" (Motion, at 2), Xavier completely ignores
   the fact that the Policy contains a separate exclusion for loss caused by faulty, inadequate
   or defective design, planning or construction of any property on or off the insured
   premises.  This provision makes clear that the flood damage to Xavier's property is not
   covered even if the anti-concurrent cause provision were not in the Policy.

Xavier is a large, sophisticated entity that was well aware that the Policy did not cover

flood.  In fact, Xavier purchased flood insurance for 25 separate buildings.  (See Hubbard Aff.,

Exs. B, C.)  There would have been no need for Xavier to purchase this coverage if it truly

believed that the Travelers Policy covered flood.  To the extent that Xavier failed to purchase

---

[4] TNT Speed & Sport Ctr., Inc. v. American States Ins. Co., 114 F.3d 731, 733 (8th Cir. 1997); Pakmark Corp. v.
Liberty Mut. Ins. Co., 943 S.W.2d 256, 261-62 (Mo. Ct. App. 1997); E.B. Metal & Rubber Indus., Inc. v. Federal
Ins. Co., 444 N.Y.S.2d 321, 321-22 (N.Y. App. Div. 1981); Kane v. Royal Ins. Co., 768 P.2d 678, 681 (Colo. 1989);
Bartlett v. Cont'l Divide Ins. Co., 697 P.2d 412, 413 (Colo. Ct. App. 1984), aff'd, 730 P.2d 308 (Colo. 1986).

[5] Sweeney v. City of Shreveport, 584 So. 2d 1248, 1251 (La. App. 2 Cir. 1991), writ denied, 589 So. 2d 1057 (La.
1991); Prytania Park Hotel v. General Star Indem. Co., 896 F. Supp. 618, 624 (E.D. La. 1995).

adequate flood insurance, there is no basis in Louisiana law to require Travelers, which issued a policy expressly excluding flood losses, to provide coverage for which Xavier paid no premium.

## UNDISPUTED MATERIAL FACTS

The only fact that is material to applying the Water Exclusion is that the property damage at issue was caused directly or indirectly by a "flood," i.e., a large-scale inundation of normally dry land by water. Xavier does not dispute that its buildings were damaged by a large-scale inundation of the land on which its buildings sit. Xavier admits that its buildings were "inundated with several feet of ground water" as a result of a large-scale "spread of ground water that eventually covered approximately 80% of the city, including Xavier's campus." (Xavier Memo., at 2, 4.) Xavier's motion for partial summary judgment only pertains to "damages to Xavier's campus following Hurricane Katrina [that] were caused by ground water which came from the collapses of the 17th Street Canal and the London Avenue canal levees . . . ." (Xavier Motion, at 1.)

While Xavier seeks to introduce facts concerning what caused the levee breaches at the 17th Street Canal and London Avenue Canal, these facts are immaterial to application of the Policy. See Section II, infra. In any event, the only evidence Xavier introduces on this point – a "draft" report of the Interagency Performance Evaluation Task Force of the U.S. Army Corps of Engineers (hereinafter, the "IPET Draft Report") -- is not admissible evidence. It is well-established that "a court may consider only admissible evidence in ruling on a summary judgment motion." Mersch v. City of Dallas, 207 F.3d 732, 735 (5th Cir. 2000). Every single page of the IPET Draft Report states that "[t]his is a preliminary report subject to revision; it does not contain final conclusions of the United States Army Corps of Engineers." Such a document is not admissible evidence. Toole v. McClintock, 999 F.2d 1430, 1434 (11th Cir.

1993) (holding that tentative FDA report was inadmissible under Fed. R. Evid. 803(8) where the report "contained only 'proposed' findings" and "invited public comment and forecasted the issuance of a 'final' document after more study").

If, as Xavier contends, application of the Water Exclusion depended upon the extent to which the inundation of Xavier's property was caused by "natural" as opposed to "man-made" forces, there would be material disputes of fact on that issue. Even if the IPET Draft Report were an admissible document, it does not, by any means, suggest that the sole cause of the levee failures was human acts or omissions. To the contrary, it concludes that a very powerful force of nature -- the winds and storm surge waves of Hurricane Katrina -- played a substantial role in the levee failures. See Part II.B.5, infra.

## ARGUMENT

### I.   UNDER LOUISIANA LAW, INSURANCE POLICIES MUST BE ENFORCED AS WRITTEN, AND THE WORDS USED MUST BE GIVEN THEIR COMMON, ORDINARY MEANING

Insurance policies, like all contracts, must be interpreted based on the rules of construction set forth in the Louisiana Civil Code. Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003). "The words of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047; Edwards v. Daugherty, 883 So. 2d 932, 940-41 (La. 2004). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code, art. 2046. An insurance policy "should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated" because "[t]he rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity . . . ." Cadwallader, 848 So.

2d at 580; Edwards, 883 So. 2d at 941. "[I]n the absence of a conflict with statutes or with public policy, insurers have the same rights as do individuals to limit their liability and to enforce whatever conditions they impose upon their obligations." Cadwallader, 848 So. 2d at 583. See also La. Rev. Stat. § 22:620(A)(4) ("Any insurer may insert in its policies any provisions or conditions required by its plan of insurance or method of operation which are not prohibited by the provisions of this Code.").

In this case, when the plain language of the water damage exclusion is applied to the undisputed facts, it is clear that Xavier's motion for partial summary judgment must be denied, and that Travelers is entitled to judgment as a matter of law.

## II.   THE WATER EXCLUSION CLEARLY APPLIES TO THE INUNDATION OF XAVIER'S PROPERTY BY WATER RELEASED FROM BROKEN LEVEES

### A.   The Policy, in Clear and Unambiguous Language, Excludes Losses Caused Directly or Indirectly By Flood or Overflow of a Body of Water, Regardless of Any Other Contributing Cause

The Water Exclusion provides, in pertinent part, as follows:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**g.**   **Water**

> **(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

> (Policy, Deluxe Property Coverage Form, at p. 10 (Hubbard Aff., Ex. A) (emphasis added).)

This exclusion provides not only that a loss is excluded if it is caused "directly or indirectly" by "Water," but also that "[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." This lead-in clause, which is commonly referred to as an anti-concurrent causation clause, makes clear that the excluded cause of loss, i.e., Water, is

5

not covered regardless of what factors might have caused or contributed to the Water.  Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd., Civ. A. No. 3:99-CV-1623-D, 2002 U.S. Dist. LEXIS 3594, at *11 (N.D. Tex. Mar. 5, 2002) (explaining the term anti-concurrent causation); see also Section II.C, below.

This Court has repeatedly held that water damage exclusions are unambiguous.  Recently, in Dobson v. Allstate Ins. Co., 2006 WL 2078423 (E.D. La. July 21, 2006) (Vance, J.), this Court ruled that claims against insurance agents arising from Hurricane Katrina were improperly joined with claims against insurers because the insureds had no possibility of recovering against their insurance agents.  The Court stressed that the water damage exclusion was "clearly worded" and held that "to the extent that plaintiffs allege that the agents' representations about coverage for hurricane damage misled them as to whether flooding caused by hurricanes would be covered under the policy, they were in possession of clear policy language indicating that such damage was excluded."  Id. at *11.  See also Chauvin v. State Farm Fire & Cas. Co., 2006 WL 2228946, at *1 (E.D. La. Aug. 2, 2006) (Vance, J.) (ruling that Valued Policy Law does not apply to Hurricane Katrina claims where total loss was not due to a covered peril, noting that "Plaintiffs' homeowner's policies cover damage caused by wind and rain, but all contain a clause excluding coverage for damage caused by flood").

In a case involving flooding that occurred in New Orleans ten years ago, this Court similarly held that a water damage exclusion identical to the one in Xavier's Policy was unambiguous and plainly applicable.  Travelers Indem. Co. v. Powell Ins. Co., 1996 WL 578030, at *3 (E.D. La. Oct. 4, 1996) (Vance, J.) (holding that water damage exclusion "unambiguously excludes coverage for flood damage to the golf carts," and stressing that "[t]his Court cannot strain to find an ambiguity in the policy where none exists").

6

This Court's decisions in <u>Dobson</u> and <u>Powell Ins. Co.</u> are strongly supported by Louisiana appellate caselaw and decisions throughout the United States, as explained below. Xavier's arguments provide no basis for the Court to depart from its own precedents.

**B.      A Large-Scale Inundation of Normally Dry Land is a "Flood" Regardless of the Extent to Which "Natural" or "Man-Made" Causes Contribute to the Inundation**

Water flowing into Xavier's buildings from canals, as a result of levee breaches, clearly constitutes a loss caused by "flood" and/or "overflow of a body of water." There is no merit to Xavier's contention that "flood" means only an inundation caused by "natural" forces. Xavier's argument is contrary to the plain meaning of "flood" and the caselaw enforcing the water damage exclusion, which has repeatedly rejected similar arguments.

**1.      The Ordinary Meaning of "Flood" is an Inundation of Normally Dry Land**

Under Louisiana law, the word "flood" must be given its common, ordinary meaning. <u>See</u> La. Civ. Code art. 2047. The plain meaning of the word "flood" is "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be . . . ." <u>Florida E. Coast Ry. Co. v. United States</u>, 519 F.2d 1184, 1192 (5th Cir. 1975). Numerous courts have defined the term "flood," as used in water damage exclusions, as the inundation of normally dry land. <u>See, e.g.,</u> <u>Kane</u>, 768 P.2d at 681 (concluding that "[t]he inundation of insureds' normally dry land falls squarely within the[] generally accepted definitions of the term 'flood'"); <u>Wallis v. Country Mut. Ins. Co.</u>, 723 N.E.2d 376, 381 (Ill. App. Ct. 2000) (recognizing that flood waters include "water that escapes from a watercourse in large volumes and flows over adjoining property in no regular channel") (<u>quoting</u> <u>Black's Law Dictionary</u> 1585 (7th ed. 1999)).[6]

---

[6] <u>See also</u> <u>Bartlett</u>, 697 P.2d at 413 (defining flood as "a body of water (including moving water) . . . overflowing or inundating land not usually covered," and noting that "no distinction is made between natural and artificial causes"); <u>Walker v. McKinnis</u>, 2005 Ohio 4058, 2005 WL 1864144, at *2 (Ohio Ct. App. Aug. 8, 2005) (adopting definition

In <u>Buente v. Allstate Prop. & Cas. Ins. Co.</u>, 2006 WL 980784 (S.D. Miss. Apr. 12, 2006),
Judge Senter of the Southern District of Mississippi recently held that that "[t]he inundation that
occurred during Hurricane Katrina was a flood, as that term is ordinarily understood," and that
"the Court is not free to change or invalidate the unambiguous terms of an insurance contract . . .
." <u>Id.</u> at *1-2 (emphasis added).  The court emphasized that "[t]he exclusions [for water damage]
are drawn quite broadly, and they have the clear purpose of excluding damage caused by
inundation from coverage." <u>Id.</u>

Louisiana appellate courts have repeatedly used the term "flood," in accordance with its
plain meaning, to describe a large-scale inundation of water resulting in some degree from a
human act or omission.  The Louisiana Supreme Court recently noted that, at the time of
Hurricane Katrina, "[i]n the City of New Orleans, where the levees failed, <u>flood waters</u> swamped
large portions of the City." <u>State v. All Property & Cas. Ins. Carriers</u>, 2006 WL 2498196, at *1
(La. Aug. 25, 2006) (emphasis added). <u>See also Saden v. Kirby</u>, 660 So. 2d 423, 424 (La. 1995)
("flood" exacerbated by alleged negligence of defendants); <u>Pracht v. City of Shreveport</u>, 830 So.
2d 546, 548 (La. App. 2 Cir. 2002) ("flood" allegedly resulting from "failure to properly design,
construct and maintain the drainage canal").[7]

A Louisiana statute similarly uses the word "flood" to describe an inundation that would
be caused by failure to repair a levee. <u>See</u> La. Rev. Stat. § 38:421 ("[i]f the board deems the

---

of "flood" as including "a great stream of something that flows in a steady course" and "a large quantity widely
diffused; superabundance"); <u>Whitt v. State Farm Fire & Cas. Co.</u>, 734 N.E.2d 911, 914 (Ill. App. Ct. 2000) (defining
"flood" as "an inundation of water over land not usually covered by it") (<u>quoting</u> Black's Law Dictionary 640 (6th
ed. 1990)).

[7] <u>See also</u> <u>Gleason v. Nuco, Inc.</u>, 774 So. 2d 1240, 1241 (La. App. 1 Cir. 2000) ("flood" allegedly resulted from
negligence in constructing and maintaining drainage facilities); <u>Boudreaux v. Dep't of Transp. & Dev.</u>, 690 So. 2d
114, 120 (La. App. 1 Cir. 1997) ("flood" allegedly resulted from negligence in design and construction of bridge
such that bridge improperly functioned as a dam); <u>Roberts v. Murphy Oil Corp.</u>, 577 So. 2d 308, 311 (La. App. 4
Cir. 1991) ("flood" allegedly resulted from negligent construction of road which disrupted drainage system);
<u>Summerville v. Missouri Pac. R.R. Co.</u>, 509 So. 2d 639, 640 (La. App. 3 Cir. 1987) ("flood" allegedly caused or
exacerbated by negligent obstruction of natural drainage).

funds provided for in this Part are inadequate to locate, construct, and *repair levees to prevent disastrous floods*, the board may levy a special assessment or forced contribution ....") (emphasis added).

The word "flood" has been commonly used for many years to describe inundations that involved human acts or omissions. The Great Flood of 1927 involved the breach of a levee in Cairo, Illinois and the dynamiting of a levee in Louisiana. The Great Johnstown Flood in Pennsylvania involved the failure of a man-made dam. Numerous levees failed in the Great Flood of 1993 that devastated the Midwest. In all these catastrophes, the forces of nature, together with engineering, design and construction failures, resulted in flooding.

### 2.   Courts Have Repeatedly Rejected the Argument That the Term "Flood" is Limited to "Natural" Events

Courts have rejected the argument made by Xavier, recognizing that "[t]he generally accepted meaning of the term 'flood' does not include a distinction between artificial and natural floods." Kane, 768 P.2d at 680-81. In Kane, the water damage to the plaintiffs' homes resulted from the failure of a man-made dam allegedly due to negligence. Id. at 679. The plaintiffs made the same argument that Xavier makes here -- that since "no distinction is made [in the policy] between naturally and artificially caused floods, it is reasonable for property owners to associate the term with natural events, not artificial disasters." Id. at 680. The Colorado Supreme Court rejected this argument, holding that "[t]he inundation of insureds' normally dry land falls squarely within the[] generally accepted definitions of the term 'flood,'" regardless of whether natural or man-made forces caused the inundation. Id. at 681. The court concluded that when the water damage exclusion "is construed in harmony with the generally accepted meaning of the term 'flood' and in the context of the facts of this case, there is no doubt that this large-scale inundation of water was a 'flood.'" Id.

Similarly, in <u>Bartlett</u>, the insureds' property suffered water damage as a result of the failure of a dam. <u>Bartlett</u>, 697 P.2d at 413. The court rejected the insureds' argument that the term "flood" was somehow limited to "natural" events, concluding that "to make such a distinction [between naturally- and artificially-caused floods] would be to rewrite the terms of the policy, and that is beyond our power." <u>Id.</u> at 413.

The New York Appellate Division reached the same result. In <u>E.B. Metal & Rubber</u>, the facts were that "a dike constructed to restrain the waters of the Champlain Barge Canal and Wood Creek gave way and water inundated the [insured's] property." <u>E.B. Metal & Rubber</u>, 444 N.Y.S.2d at 321. The plaintiffs asserted that the dike failed because of improper construction and maintenance, and that "for the flood exclusion to apply, the breaking of the dike must have been directly caused by the rising water." <u>Id.</u> at 322. The New York Appellate Division affirmed summary judgment for the insurer, holding that the loss was clearly a "flood," and that "[i]t is irrelevant that a defect in the dike may have also contributed to the break." <u>Id.</u>

Courts have repeatedly held that an inundation of water allegedly resulting from a human act or omission, such as a levee break, is a "flood." For example, in <u>TNT Speed & Sport Ctr.</u>, a vandal removed sandbags and dirt from a levee, causing the levee to break, resulting in a release of river water which damaged the insured's property. <u>TNT Speed & Sport Ctr.</u>, 114 F.3d at 732. The Eighth Circuit held that a water damage exclusion essentially identical to the exclusion in Xavier's Policy clearly applied to this loss. <u>Id.</u> at 733.

Similarly, in <u>Pakmark</u>, a levee broke, resulting in a release of water and backup of sewage which damaged the insured's property. <u>Pakmark</u>, 943 S.W.2d at 257-58. The Missouri

10

Court of Appeals held that a water damage exclusion essentially identical to the one in Xavier's Policy was unambiguous and plainly applicable.  Id. at 261-62.[8]

These cases are directly on point.  To accept Xavier's contention that the massive inundation of water in New Orleans at the time of Hurricane Katrina does not constitute a "flood" or "overflow of a body of water" would eviscerate unambiguous policy language that has been in property insurance policies for many years, and would turn well-established insurance law on its head.

### 3. Xavier's Proposed Interpretation of the Word "Flood" Would Be Wholly Contrary to Louisiana Principles of Policy Interpretation

Xavier's reading of the word "flood" as limited to "natural" causes is not permitted by Louisiana principles of policy interpretation.  The Louisiana Supreme Court has strongly cautioned lower courts against construing simple words in insurance policies in an inventive manner to create an ambiguity.  In Cadwallader, a lower court found that the term "relative," as used in an uninsured motorist policy, was ambiguous because it might or might not include a foster child.  The Louisiana Supreme Court reversed, stressing that "relative" is "a rather simple word with a well-established common sense meaning which is referenced in the insurance policy in a clearly worded context."  Id. at 584.  The lower court had erred when it "ignored the fundamental precept that it was required to interpret the term using its plain, ordinary and generally prevailing meaning" and had "enlarged the insurance coverage beyond that which was reasonably contemplated by the unambiguous term."  Id. at 583-84.  Similarly here, the word "flood" is a simple word with a plain meaning.  Xavier cannot use creative lawyering to try to find an ambiguity in a simple, ordinary word.

---

[8] See also Front Row Theatre, Inc. v. American Mfr. Mut. Ins. Cos., 18 F.3d 1343, 1347 (6th Cir. 1994) (flooding caused in part by blocked drainage system); Sunshine Motors, Inc. v. New Hampshire Ins. Co., 530 N.W.2d 120, 121 (Mich. Ct. App. 1995) (blocked drainage system); Casey v. Gen. Accident Ins. Co., 578 N.Y.S.2d 337, 338 (N.Y. App. Div. 1991) (blocked drainage system).

To limit the word "flood" to natural events would also be inconsistent with the context in which the word appears in the Policy.  The Water Exclusion applies not only to loss caused by "flood," but also to loss caused by "surface water," "tidal water" and "overflow of a body of water."  The word "flood" would be superfluous if it meant the same thing as "surface water," "tidal water" and "overflow of a body of water."  It is difficult to imagine a natural event resulting in a large-scale inundation of water that would not consist of surface water, tidal water, or overflow of a body of water, or some combination of those three.  To limit the meaning of "flood" to events that would fall into those categories would be to read the word "flood" out of the Policy altogether.  Such a result is not permitted by Louisiana law.  See La. Civ. Code art. 2049 ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."); Flaherty v. Jackson, 152 La. 679, 690 (La. 1922) (holding that "where the particular words embrace all the persons or objects of the class mentioned, and thereby exhaust the class or genus, there can be nothing ejusdem generis left for the rule to operate on, and a meaning must be given to the general words different from that indicated by the specific words, or there can be ascribed to them no meaning at all").[9]

In Walker, the Ohio Court of Appeals recently stressed that "flood" must mean something different than "overflow of a body of water" because overflow is separately excluded. Walker, 2005 WL 1864144, at *2.   The court held that the term "flood was intended to have a broader meaning such as a 'great stream of something flowing in a steady course,' or 'a large quantity widely diffused.'"  Id.

If "flood" were construed to be limited to purely natural events, the anti-concurrent causation clause in the Water Exclusion would also be rendered meaningless.  The anti-

---

[9] See also Jarvis Christian College v. National Union Fire Ins. Co., 197 F.3d 742, 748 (5th Cir. 1999) (rejecting insured's argument for narrow construction of policy terms that would render language superfluous).

concurrent causation clause provides that "Such loss or damage [i.e., loss or damage caused directly or indirectly by "Water"] is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (Policy, Deluxe Property Coverage Form, at p. 10 (Hubbard Aff., Ex. A).) The kinds of natural events that would typically cause or contribute to a flood, such as weather conditions or earth movement, are separately excluded by the Policy.[10] If "flood" were limited to events caused exclusively by "natural" forces, any potentially concurring cause would be separately excluded under another exclusion, and the anti-concurrent causation clause would be rendered meaningless. Such a reading of the Policy would be impermissible. Jarvis Christian College, 197 F.3d 742 at 748.

Xavier's proposed interpretation of the Water Exclusion would also lead to anomalous results. In Xavier's view, damage caused by water released from the 17th Street Canal and London Avenue Canal levee breaches is covered, but damage caused by water that overtopped other levees -- a "natural" cause -- would be excluded. See IPET Report, at I-7 ("Of the 50 major breaches experienced by the hurricane protection system during Katrina, all but four were due to overtopping and erosion."). Thus, under Xavier's interpretation, some New Orleans policyholders would have coverage for their Katrina-related flood damage, while other policyholders that purchased policies containing the exact same language would not have coverage, all because of the mechanics of how the water happened to reach their premises. Such a result is not only contrary to the plain language of the Policy, it defies common sense.

There is no merit to Xavier's contention that, because the earth movement exclusion in the Policy contains the phrase "whether natural or man-made," Travelers was somehow

---

[10] The Policy excludes "Weather conditions" only "if weather conditions contribute in any way with a cause or event excluded in B.1. above [including the Water Exclusion] to produce the loss or damage." (Policy, Deluxe Property Coverage Form, at p. 12 of 20 (Ex. A hereto).)

obligated to insert the same phrase into the Water Exclusion. (Xavier Memo., at 20-21.)  The term "flood" has an ordinary meaning -- an inundation of normally dry land -- that does not depend in any way on the cause of the inundation.  See Section II.B.1, supra.  Courts have repeatedly held that water damage exclusions apply to such losses.  See Section II.B.2, supra. Simply because policy language could theoretically have been drafted so as to preclude an inventive argument by a policyholder does not make the language ambiguous.  See Cadwallader, 848 So. 2d at 583 (holding that lower court erred in concluding that because some insurance policies used different language this created an ambiguity in the policy at issue, stressing that policy language must be given "its plain, ordinary and generally prevailing meaning").

Xavier also suggests that "if a fire fighting helicopter had erroneously dropped hundreds of gallons of water on Xavier's buildings or a tanker truck carrying water had driven into one of these buildings spilling thousands of gallons of water, coverage would be provided for these damages." (Xavier Memo., at 2.)  In these bizarre hypothetical scenarios, there might be a dispute of fact as to whether the volume of water released would be sufficient to constitute a "flood."  In this case, however, it is undisputed that there was "a spread of ground water that eventually covered approximately 80% of the city, including Xavier's campus." (Xavier Memo., at 4.)  The Policy must be interpreted based on the facts of this case, not outlandish hypothetical facts.  See Cloud v. Nat'l Auto. Ins. Co., 875 So. 2d 866, 870 (La. App. 3 Cir. 2004), writ denied, 885 So. 2d 1131 (La. 2004) (holding that trial court erred in finding ambiguity based on hypothetical facts, stressing that policy was not "legally ambiguous under the facts before us, which is all we can consider"); Jack v. Adriatic Ins. Co., 420 So. 2d 1292, 1293 (La. App. 3 Cir. 1982) (holding that it would be inappropriate to consider a hypothetical scenario in interpreting an exclusion).

### 4.    The Cases Cited By Xavier Do Not Support Its Position

Xavier relies only on inapposite authority from other jurisdictions.  In Peach State

Uniform Serv., Inc. v. American Ins. Co., 507 F.2d 996 (5th Cir. 1975) (applying Georgia law),

the court construed an earth movement exclusion providing that "[t]his policy does not insure

against loss or damage resulting from: . . . Earthquake, volcanic eruption, landslide or other

earth movement."  Id. at 999 (emphasis added).  The court concluded that the phrase "other earth

movement" must be limited to "events of the same nature as earthquakes, volcanoes, and

landslides."  Id. at 1000.  A phrase such as "other earth movement" does not have an ordinary

dictionary definition.  Here, the word "flood" has an ordinary, plain meaning.  Moreover,

Xavier's Policy, unlike the policy in Peach State, contains anti-concurrent causation language

specifying that loss caused directly or indirectly by flood is not covered regardless of any other

cause or event contributing concurrently or in any sequence to the loss.  See Section II.C, below.

Xavier also relies on a West Virginia decision interpreting an earth movement exclusion.

In Murray v. State Farm Fire & Cas. Co., 509 S.E.2d 1 (W. Va. 1998), the plaintiffs' homes were

damaged by rocks falling from a 50-foot highwall next to their homes.  Id. at 4.  The plaintiffs

contended that the cause of their losses was negligent construction of the highwall, not an

excluded "landslide" or "erosion."  Id. 5-6.  The trial court entered summary judgment for the

insureds, finding that the loss was caused by "rockfall" and "weathering," not by "landslide" or

"erosion."  Id. at 7.  The West Virginia Supreme Court reversed, holding that "the plain, ordinary

meaning of the word 'landslide' . . . contemplates a sliding down of a mass of soil or rock on or

from a steep slope."  Id. at 8.  If the court had been applying Louisiana law, the court's analysis

would have ended at that point.  In Louisiana, when a term used in an insurance policy has a

"generally prevailing meaning," a court cannot engage in further interpretation but must apply

the language as written. See La. Civ. Code art. 2046, 2047; Cadwallader, 848 So. 2d at 580.

Despite finding the terms "landslide" and "erosion" unambiguous, the court found an

ambiguity because the exclusion could be construed to apply only to landslides caused by

"natural events," by human acts or omissions, or both. Murray, 509 S.E.2d at 9. The court erred

in confusing the definition of landslide with the cause of the event. Matters of causation are

properly addressed in the anti-concurrent causation clause (addressed below), not in the

definition of a term such as "landslide."

Moreover, the Murray court distinguished the earth movement exclusion at issue from

other exclusions for events such as earthquakes and floods, recognizing that flood exclusions are

appropriate and necessary because insurers cannot adequately spread the risk for such events.

See id. at 10 ("There are earthquakes or floods which cause a major catastrophe and wreak

damage to everyone in a large area rather than one individual policyholder. When such happens,

the very basis upon which insurance companies operate is said to be destroyed.") (quoting Wyatt

v. Northwestern Mut. Ins. Co., 304 F. Supp. 781, 783 (D. Minn. 1969)).[11]

Xavier also cites Change, Inc. v. Westfield Ins. Co., 542 S.E.2d 475 (W. Va. 2000), in

which a water main ruptured, causing water under the ground to flow into the plaintiff's

---

[11] The court in Murray also decided to disagree with the 18 different jurisdictions, including Louisiana, in which courts have upheld the use of anti-concurrent causation language. See Section II.C, infra. The Murray court reasoned that "the insured is not presumed to know the contents of an adhesion-type insurance policy delivered to him." 509 S.E.2d at 14 & n.14. This reasoning is clearly contrary to Louisiana law. See Lewis v. Hamilton, 652 So. 2d 1327, 1330 (La. 1995) (stating that, while "an insurance policy is an adhesionary contract," the contract may be construed in favor of the insured "only . . . when there are two equally reasonable interpretations of the contractual provision in question"); Jack v. Adriatic Ins. Co., 420 So. 2d 1292, 1293 (La. App. 3 Cir. 1982) ("Although the contract appears to be one of adhesion, we find no grounds to spare plaintiff of the terms to which he has bound himself. Policies of insurance are contracts between the parties, and as such they are the law between them, unless contrary to statutory law or public policy."); Stephens v. Audubon Ins. Co., 665 So. 2d 683, 686 (La. App. 2 Cir. 1995) ("An insured is presumed to know the provisions of his policy."); Dobson, 2006 WL 2078423, at *9 ("An insured party is generally responsible for reading his policy, and he is presumed to know its provisions.").

basement.  Id. at 478.  The part of the water exclusion directly at issue was not the "flood" exclusion but rather the exclusion for "[w]ater under the ground surface pressing on, or flowing or seeping through . . . openings . . . ."  Id. at 477.  The court found an ambiguity based on the fact that the policy provided coverage for accidental discharge or leakage of water resulting from the breakage or cracking of any part of a system containing water.  Id. at 478.  There is no such provision at issue here, and the massive inundation of New Orleans was a far different event from a water main break.[12]

Xavier also relies on Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082 (Fla. 2005), in which the court held that an earth movement exclusion did not apply to a loss caused by blasting activities near the insureds' property.  In doing so, the court concluded that the plain meaning of "earth movement" was "differential movement of the earth's crust:  elevation or subsidence of the land," which would be limited to "natural phenomena."  Id. at 1088 (quoting dictionary definition).  Fayad is clearly distinguishable on the grounds that:  (1) the ordinary definition of "flood" does not depend on the cause of the inundation, unlike the definition of "earth movement" adopted in Fayad; and (2) the anti-concurrent causation clause in Xavier's Policy clearly bars coverage regardless of what causes may have contributed to the flood.  Fayad failed to explain why the anti-concurrent causation clause in the policy at issue was not applicable.[13]

---

[12] While the court in Change, Inc. also briefly suggested that the words "flood, surface water," etc. should be construed to "refer to water arising from natural causes or from natural disasters" (id. at 479), the court cited no support for this assertion, which is contrary to the plain meaning and common usage of the word "flood." Moreover, the opinion's use of the phrase "from natural causes or from natural disasters," especially when read together with the discussion in Murray about how insurers cannot effectively spread the risk of a large-scale disaster such as a flood or earthquake, suggests that a "natural disaster" must be something different from "natural causes." Hurricane Katrina was indisputably a natural disaster.

[13] See TNT Speed & Sport Ctr., 114 F.3d at 733 (holding that anti-concurrent causation clause in water damage exclusion barred coverage "regardless of the existence of any other contributing causes in any sequence"). Moreover, the blasting in Fayad was a deliberate act by human beings not resulting from any natural force, while the flooding of Xavier's property resulted, at least in substantial part, from the hurricane.

Finally, Xavier cites <u>Nautilus Ins. Co. v. Vuk Builders, Inc.</u>, 406 F. Supp. 2d 899 (N.D. Ill. 2005), which construed an earth movement exclusion in a commercial general liability policy. The court reasoned that the exclusion "define[d] the *type* of earth movement, not the *cause*" and that "[t]he cause is ambiguous." <u>Id.</u> at 904. This type of analysis of an earth movement exclusion is wholly inapplicable to the Water Exclusion because: (1) the word "flood" plainly means an inundation regardless of its cause; and (2) the exclusion in <u>Vuk Builders</u> did not have anti-concurrent causation language like that in Travelers' Water Exclusion, which makes clear that it does not matter what causes may have contributed to or occurred in any sequence with the "flood." <u>See</u> Sections II.B.1 and II.C, *infra*. Moreover, the excavation work in <u>Vuk Builders</u> involved a purely "man-made" activity (*see* <u>Vuk Builders</u>, 406 F. Supp. 2d at 905), while Hurricane Katrina was indisputably a natural disaster, regardless of whether human acts or omissions may have contributed to the flooding. <u>See</u> Section II.B.5, below.[14]

**5.      In Any Event, the Flooding In New Orleans Indisputably Involved A Powerful "Natural" Force -- Hurricane Katrina**

It is doubtful whether a purely "natural" flood could ever occur in New Orleans given that human intervention put most of the city below sea level. It would make no sense to adopt a construction of the Policy under which the word "flood" would only mean a purely natural event.

---

[14] Xavier's citation to <u>Doerr v. Mobil Oil Corp.</u>, 774 So. 2d 119 (La. 2000) also does not support its position. In <u>Doerr</u>, the insured, St. Bernard Parish, was seeking coverage under a commercial general liability policy in a personal injury lawsuit. The plaintiffs alleged that they were injured by hydrocarbons discharged by Mobil Oil into the Mississippi River, which then traveled through the St. Bernard Parish water supply system to the plaintiffs' homes. <u>Id.</u> at 122. The court concluded that a pollution exclusion was ambiguous because "pollution" was defined so broadly that the terms of the exclusion literally would apply to commonly-occurring events that one would not consider "pollution," such as "a slip and fall on spilled gasoline at a corner service station." <u>Id.</u> at 124. The court held that the pollution exclusion "was neither designed nor intended to be read strictly to exclude coverage for all interactions with irritants or contaminants of any kind." <u>Id.</u> at 135.

Here, in contrast, neither the Water Exclusion nor the word "flood" is so broad that it would encompass frequently-occurring events that would not fall within the generally-accepted definition of "flood." Additionally, Louisiana appellate courts have recognized, at least implicitly, that the analysis in <u>Doerr</u> is generally not applicable to exclusions other than the pollution exclusion. <u>See</u> <u>Alexis v. Southwood Ltd. P'ship</u>, 792 So. 2d 100, 102 (La. App. 4th Cir. 2001) (applying <u>Doerr</u> analysis to pollution exclusion but not to communicable disease exclusion); <u>Harrison v. R.R. Morrison & Son, Inc.</u>, 862 So. 2d 1065, 1073 (La. App. 2 Cir. 2003) (Caraway, J., concurring) (recognizing that <u>Doerr</u> is limited to the "general pollution exclusion").

See Kane, 768 P.2d at 682 (noting that "[a]ny flood caused by government negligence is also caused in part by the natural conditions extant at the time of the negligence") (quoting Aetna Ins. Co. v. United States, 628 F.2d 1201, 1204 (9th Cir. 1980)).

Even if some degree of "natural" force were required in order for an event to be a "flood," there can be no question that a powerful force of nature -- Hurricane Katrina -- contributed to the flooding of New Orleans. Xavier does not contend that the levees would have spontaneously collapsed if there were no hurricane. The IPET Draft Report submitted by Xavier (which is inadmissible for the reasons stated above) reflects that the hurricane winds and waves generated thereby were a substantial factor in the levee breaches. The report opines that "overtopping and extensive flooding from Katrina were inevitable   . . . ." (IPET Draft Report, at I-3 (Xavier Memo., Ex. 1).) The report explains that "[s]urge water elevated the level of Lake Ponchartrain, and shifting storm winds forced the lake water against the levees and floodwalls along its southern shores and New Orleans outfall canals . . . ." (Id., at V-5.)

With respect to the breaches on the London Avenue Canal, which Xavier contends had an impact on its property, the report states that "[f]ield evidence, analyses, and physical model tests show that <u>the breaches were due to the effects of high water pressures</u> within the sand layer beneath the levee and I-wall, and <u>high water loads</u> on the walls." (Id., at V-52 (emphasis added).) The report further states that "[t]here was no evidence of government or contractor negligence or malfeasance," and that "the system was generally built as designed, and design approaches were consistent with local practice." (Id., at I-5.) Finally, the report concludes that "[n]o levee breaches occurred without overtopping" and "[t]he degree of erosion and breaching of overtopped levees was directly related to the character of the in-place levee materials <u>and the severity of the surge and wave action</u>." (Id., at V-81 (emphasis added).)

Additional portions of the IPET Draft Report not submitted by Xavier are submitted herewith for the Court's consideration, in the event that the Court were to deem this document admissible evidence.  (See Hubbard Aff., Ex. D.)  These portions explain, inter alia, that:

- "Hurricane Katrina produced unparalleled wave and storm surge conditions for the New Orleans vicinity," resulting in "the highest significant wave height ever measured in the Gulf of Mexico" and "the largest storm surges that have ever been observed within the Gulf of Mexico . . . ." (IPET Draft Report, at IV-1 (Hubbard Aff., Ex. D).)

- "As storm effects propagated onto the large flood protection levees and into the outfall and navigation canals, local wave and water level conditions exerted very large forces on the flood protection system." (Id., at IV-3.)

- At the 17th Street Canal and London Avenue Canal breaches, "contributions due to waves could be significant in causing gap formation in these locations."  (Id., at IV-4.)

Hurricane Katrina was a "natural" event.  This was not a situation in which human acts or omissions created an inundation on a calm day.  Even in such circumstances, however, the Water Exclusion would still apply.  See, e.g., TNT Speed & Sport Ctr., Inc., 114 F.3d at 732.

**C.     The Anti-Concurrent Causation Clause in the Water Exclusion Makes Clear That the Exclusion Applies Regardless of What Factors Caused or Contributed to the Flood**

Xavier largely ignores the anti-concurrent causation clause in the Water Exclusion, which makes clear that losses caused by "Water" are excluded regardless of whether faulty design or construction of the levees, or any other factors, caused or contributed to the losses.  The anti-concurrent causation clause provides as follows:

> We will not pay for loss or damage caused directly or indirectly by any of the following [i.e., "Water"].  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

(Policy, Deluxe Property Coverage Form, at p. 10 (Hubbard Aff., Ex. A) (emphasis added).)  This language makes clear that damage caused by flood or overflow of a body of water is not covered regardless of other factors that may be within the chain of causation.

20

A Louisiana court of appeal has applied an anti-concurrent causation clause identical to the clause in Xavier's Policy to bar coverage where negligence allegedly contributed to the loss. In Sweeney v. City of Shreveport, 584 So. 2d 1248 (La. App. 2 Cir. 1991), writ denied, 589 So. 2d 1057 (La. 1991), the insured's home was condemned and demolished by the City. The City had mistakenly identified the house's street number and sent the notices of condemnation and demolition to the wrong person. Id. at 1249-50. The policy contained an ordinance or law exclusion with anti-concurrent causation language virtually identical to that in Xavier's Policy. Id. at 1250. The court emphasized that "the exclusion provides that any loss directly or indirectly resulting from enforcement of an ordinance is excluded regardless of any contributing causes." Id. at 1251. The court held that "[i]t may be true that the negligence of the city employees resulted in Mrs. Sweeney not getting notice and that this negligence contributed to the demolition of the house; however, the exclusion by its own terms still applies." Id.

This Court is required to follow Sweeney unless it is "convinced by persuasive data that the [Louisiana Supreme Court] would decide differently." Team Envtl. Servs., Inc. v. Addison, 2 F.3d 124, 127 (5th Cir. 1993). Here, there is no "persuasive data" suggesting that the Louisiana Supreme Court, which denied a writ of certiorari in Sweeney, would not follow Sweeney. See also Prytania Park Hotel v. General Star Indem. Co., 896 F. Supp. 618, 624 (E.D. La. 1995) (Jones, J.) (holding that ordinance or law exclusion barred coverage for cost of sprinkler system required by building code after fire loss, concluding that, under anti-concurrent causation language, it was "inconsequential . . . whether the fire which caused the loss occurred before the repair that required installation of a sprinkler system").

The holdings in Sweeney and Prytania Park are strongly supported by appellate decisions across the country that have enforced anti-concurrent causation language in water damage

21

exclusions.[15]  For example, in TNT Speed & Sport Ctr., a vandal removed sandbags and dirt

from a levee on the Mississippi River, causing the levee to break, resulting in a flood which

damaged the insured's property.  114 F.3d at 732.  The Eighth Circuit affirmed the district

court's holding that the exclusion clearly applied, regardless of the fact that vandalism, a covered

cause of loss, contributed to the flood.  Id. at 733.  The court concluded that the anti-concurrent

causation language made clear that the policy "exclude[s] coverage for losses caused by water,

regardless of the existence of any other contributing causes in any sequence."  Id.

Similarly, in Pakmark, a levee on the Missouri River failed, resulting in a flood.

Pakmark, 943 S.W.2d at 257.  The parties agreed that the damage to the insured's property was

caused by both flood water, which was excluded, and sewer backup, which was a covered cause

of loss.  Id. at 259.  The Missouri Court of Appeals relied on anti-concurrent causation language

in affirming summary judgment for the insurer.  The court stressed that the policy expressly

provided "that an exclusion is an exclusion regardless of any other cause that contributes to the

loss, either concurrently or in any sequence to the loss."  Id. at 261.

In Kane, the insureds contended, inter alia, that there was coverage because third party

negligence caused the failure of the dam.  Id. at 684.  The policy at issue excluded "loss . . .

caused by, resulting from, contributed to, or aggravated by . . . flood . . . ."  Id. at 684-85.  The

---

[15] In addition to Louisiana, numerous other jurisdictions have upheld anti-concurrent causation language.  See, e.g., TNT Speed & Sport Ctr., 114 F.3d at 733; Front Row Theatre, 18 F.3d at 1347; State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 314 (Ala. 1999); Pakmark, 943 S.W.2d at 261; Toumayan v. State Farm General Ins. Co., 970 S.W.2d 822, 826 (Mo. Ct. App. 1998); Sunshine Motors, Inc. v. New Hampshire Ins. Co., 530 N.W.2d 120, 121 (Mich. Ct. App. 1995); Chase v. State Farm Fire & Cas. Co., 780 A.2d 1123, 1130 (D.C. 2001); State Farm Fire & Cas. Co. v. Bongen, 925 P.2d 1042, 1044-45 (Alaska 1996); Kane, 768 P.2d at 684; Millar v. State Farm Fire & Cas. Co., 804 P.2d 822, 826 (Ariz. App. 1990); Ramirez v. American Family Mut. Ins. Co., 652 N.E.2d 511, 516 (Ind. App. 1995); Kula v. State Farm Fire & Cas. Co., 628 N.Y.S.2d 988, 991 (N.Y. App. Div.1995); Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272, 1277 (Utah 1993); Jussim v. Massachusetts Bay Ins. Co., 610 N.E.2d 954, 957-58 (Mass. 1993); Schroeder v. State Farm Fire & Cas. Co., 770 F. Supp. 558, 561 (D. Nev. 1991); Preferred Mut. Ins. Co. v. Travelers Cos., 955 F. Supp. 9, 12 (D. Mass. 1997); Assurance Co. of Am. v. Jay-Mar, Inc., 38 F. Supp. 2d 349, 354 (D.N.J. 1999); Paulucci v. Liberty Mut. Fire Ins. Co., 190 F. Supp. 2d 1312, 1320 (M.D. Fla. 2002); Kelly v. Farmers Ins. Co., 281 F. Supp. 2d 1290, 1298 (W.D. Okla. 2003).

Colorado Supreme Court held that "[t]here is no doubt that the flood 'contributed to' or

'aggravated' the insureds' loss," and, therefore, the exclusion applied.  Id. at 685-86.[16]

Here, the anti-concurrent causation clause makes it clear that the Water Exclusion applies

regardless of whether faulty design or construction of the levees contributed to the flooding.

## III.   XAVIER IGNORES THE FACT THAT THE POLICY ALSO SEPARATELY EXCLUDES LOSS CAUSED BY INADEQUATE DESIGN, PLANNING AND CONSTRUCTION

Xavier contends that the water damage to its property "was caused by the levees'

inadequate design, planning and construction." (Xavier Memo., at 3.) Xavier fails to recognize

however, that this cause of loss is clearly excluded by the following provision in the Policy

(hereinafter, the "Faulty Work Exclusion"):

> **3.** We will not pay for loss or damage caused by or resulting from any of the following, but if an excluded cause of loss that is listed in 3.a through 3.c below results in a Covered Cause of Loss, we will pay for the loss or damage caused by the Covered Cause of Loss.
>    . . .
> **c.**  Faulty, inadequate or defective:
>    **(1)** Planning, zoning, development, surveying, siting;
>    **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>    **(3)** Materials used in repair, construction, renovation or remodeling; or
>    **(4)** Maintenance;
>    of part or all of any property whether on or off the described premises.

(Policy, Deluxe Property Coverage Form, at pp. 12-13 (Hubbard Aff., Ex. A) (emphasis added).)

---

[16] See also Front Row Theatre, 18 F.3d at 1347 (enforcing water damage exclusion where loss resulted in part from blockage of drainage system, holding that, under the anti-concurrent causation clause, "where a flood is a partial cause of property damage, [the insurer] is not required to pay"); Sunshine Motors, 530 N.W.2d at 121 (holding that, under anti-concurrent causation clause, "[w]hether the blocked drainage system was a direct or indirect cause of plaintiff's water damage, or whether it was *the* principal factor or merely *a* contributing factor, the policy expressly excluded coverage"); Casey, 578 N.Y.S.2d at 338 (holding that, under water damage exclusion with anti-concurrent causation clause, there was no coverage where rainwater collected and entered basement due to clogged drainage system); Florida Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron, 721 So. 2d 825, 826 (Fla. Ct. App. 1998) (holding that, under water damage exclusion with anti-concurrent causation clause, there was no coverage for damage to insured's home caused by surface water which entered through cracks in walls caused by tree roots).

Assuming, arguendo, that the water damage to Xavier's property was caused by the levees' inadequate "design," "planning" and "construction" (Xavier Memo., at 3, 6), those causes of loss are unambiguously excluded by the Faulty Work Exclusion. This exclusion applies where the faulty work occurs to "any property whether on or off the described premises."[17]

Courts have enforced the Faulty Work Exclusion as applied to similar losses. In Waldsmith v. State Farm Fire & Cas. Co., 283 Cal. Rptr. 607 (Cal. Ct. App. 1991), for example, the parties stipulated that the plaintiffs' home was destroyed by a landslide that resulted from a break in a water main, and that the water main had been negligently maintained by the city. Id. at 607-08. The California Court of Appeal affirmed summary judgment for the insurer, holding that the negligent maintenance of the water main fell "squarely" within an exclusion for "inadequacy in workmanship, materials used in repair, or 'maintenance of any property . . . of any kind whether on or off the premises.'" Id. at 608. See also El Rincon Supportive Servs. Org., Inc. v. First Nonprofit Mutual Ins. Co., 803 N.E.2d 532, 538 (Ill. App. Ct. 2004) (damage caused by excavation activities on adjacent property was excluded by faulty work exclusion).

## IV.   THE COURT SHOULD ENTER SUMMARY JUDGMENT FOR TRAVELERS

It is well-established that a court may enter summary judgment for the non-moving party if "no factual dispute exists and the nonmoving party is entitled to summary judgment as a matter of law." In re Continental Airlines, 981 F.2d 1450, 1458 (5th Cir. 1993); see also Robinson v. Aetna Life Ins. Co., 443 F.3d 389, 396 (5th Cir. 2006). In this case, the Court should enter

---

[17] The term "described premises" refers to the property insured by the Policy as described in the Declarations. (See Policy, Declarations (Hubbard Aff., Ex. A).) The lead-in clause to the Faulty Work Exclusion provides that "if an excluded cause of loss that is listed in 3.a through 3.c below results in a Covered Cause of Loss, we will pay for the loss or damage caused by the Covered Cause of Loss." This clause is clearly inapplicable in this case because the flooding of Xavier's property does not constitute a covered cause of loss. The flood damage is excluded by the water damage exclusion, for the reasons stated above.

partial summary judgment for Travelers with respect to Xavier's claim for damage caused by water released from the 17th Street Canal and London Avenue Canal.  There is no dispute based on Xavier's own version of the facts that the water damage claimed falls within the Water Exclusion in the Policy.  Accordingly, Travelers is entitled to judgment as a matter of law.

## CONCLUSION

For all of the foregoing reasons, Xavier's motion for partial summary judgment should be denied.  The Court should enter partial summary judgment for Travelers on the grounds that the Water Exclusion bars coverage for Xavier's claim for damage caused by water released from the 17th Street Canal and London Avenue Canal.

Dated this 12th day of September, 2006.

OF COUNSEL:
Stephen E. Goldman
Wystan M. Ackerman
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone:   (860) 275-8255
Facsimile:    (860) 275-8299

Respectfully submitted,

Ralph S. Hubbard III, T.A., La. Bar. # 7040
Simeon B. Reimonenq, Jr., La. Bar. #19755
LUGENBUHL, WHEATON, PECK,
           RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:   (504) 568-1990
Facsimile:    (504) 310-9195

Attorneys for Travelers Property Casualty
Company of America

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Defendant Travelers Property

Casualty Company of America's Memorandum of Law in Opposition to Plaintiff's Motion for

Partial Summary Judgment has been served upon all known counsel of record by placing same in

the United States mail, postage prepaid and properly addressed, this 12th day of September,

2006.