UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| XAVIER UNIVERSITY OF LOUISIANA | * | CIVIL ACTION NO.: 06-0516 |
| | * | |
| VERSUS | * | SECTION "R" |
| | * | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA | * | JUDGE VANCE |
| | * | |
| | * | MAGISTRATE NO. 2 |
| | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |

**DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AND COUNTERSTATEMENT OF FACTS**

Pursuant to Local Civil Rule 56.2, Defendant Travelers Property Casualty Company of America ("Travelers") submits the following response to Plaintiff Xavier University of Louisiana's ("Xavier") Statement of Uncontested Material Facts in Support of its Motion for Partial Summary Judgment, and Counterstatement of Facts:

**RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Xavier procured from Travelers a policy bearing number Y-630-528d9763-TIL-04 ("the Policy"), a copy of which is attached hereto as Exhibit 1.

**RESPONSE**: Undisputed, except that the copy of the policy submitted by Xavier is not a certified copy of the policy. A certified copy of the policy is attached as Exhibit A to the Affidavit of Ralph S. Hubbard, III, Esq. ("Hubbard Affidavit"), submitted herewith.

2. The Policy contained a Deluxe Property Coverage Form that provided "all risks" coverage "for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss."

**RESPONSE**: Disputed. The Policy does not contain the words "all risks" and does not provide coverage for "all risks." The Policy speaks for itself. The language quoted is incomplete.

3. The Policy defined Covered Causes of Loss as:

Risks of **DIRECT PHYSICAL LOSS** unless the loss is: Excluded in Section B., Exclusions; Limited in Section C., Limitations; or Excluded or limited in the Declarations or by endorsements.

Emphasis added. A copy of the Policy is attached to Xavier's Memorandum in Support of its Motion for Summary Judgment as Exhibit 1.

**RESPONSE**: Undisputed that the language quoted is accurate, except for the emphasis added and an inconsistency in capitalization. The copy of the policy submitted by Xavier is not a certified copy of the policy. A certified copy of the Policy is attached as Exhibit A to the Hubbard Affidavit.

4. The Policy also contained the following exclusion for damages caused by "flood":

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that has contributed concurrently or in any sequence to the loss.
   . . .
   g. Water

   (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
   (2) Mudslide or mudflow;
   (3) Water under the ground surface pressing on, or flowing or seeping through:

        (a) Foundations, walls, floors or paved surfaces;
        (b) Basements, whether paved or not; or
        (c) Doors, windows or other openings.

**RESPONSE**: Disputed that the exclusion is only "for damages caused by 'flood.'" Undisputed that the language quoted is accurate, except that the words "has contributed" should be "contributes."

5. Hurricane Katrina struck the City of New Orleans on August 29, 2005, causing substantial damage to Xavier's campus.

**RESPONSE**: Undisputed that there was significant wind damage and substantial flood damage to Xavier's property occurring in connection with Hurricane Katrina.

6. Xavier made demand on Travelers to adjust its losses arising out of Hurricane Katrina.

**RESPONSE**: Undisputed that Xavier made a claim under the Policy for property damage occurring in connection with Hurricane Katrina.

7. Travelers failed to pay a single penny in coverage until after Xavier commenced the instant litigation in February 2006.

**RESPONSE**: Disputed, and immaterial to the present motion. Xavier filed this suit prematurely, before Travelers' evaluation of the insurance claim had been completed. Travelers evaluated the claim on a timely basis after it was submitted, particularly considering the complexity of the claim and the large number of buildings involved.

8. All ground water that entered the first floor of Xavier's buildings came from the levee breaches at the 17th Street Canal and the London Avenue Canal.

**RESPONSE**: Undisputed for purposes of this motion.

9. No ground water entered the Xavier buildings' first floors before the levee breaches at the 17th Street Canal and the London Avenue Canal.

**RESPONSE**: Undisputed for purposes of this motion.

  10.  The levee breaches at the 17th Street Canal and the London Avenue Canal were the result of man-made causes, not natural causes.

**RESPONSE:** Disputed. The only evidence Xavier introduces to support this assertion – a "draft" report of the Interagency Performance Evaluation Task Force of the U.S. Army Corps of Engineers (hereinafter, the "IPET Draft Report") -- is not admissible evidence. It is well-established that "a court may consider only admissible evidence in ruling on a summary judgment motion." Mersch v. City of Dallas, 207 F.3d 732, 735 (5th Cir. 2000). Every single page of the IPET Draft Report states that "[t]his is a preliminary report subject to revision; it does not contain final conclusions of the United States Army Corps of Engineers." Such a document is not admissible evidence. Toole v. McClintock, 999 F.2d 1430, 1434 (11th Cir. 1993) (holding that tentative FDA report was inadmissible under Fed. R. Evid. 803(8) where the report "contained only 'proposed' findings" and "invited public comment and forecasted the issuance of a 'final' document after more study").

Moreover, the IPET Draft Report reflects that the hurricane winds and waves generated thereby were a substantial factor in the levee breaches. The report opines that "overtopping and extensive flooding from Katrina were inevitable . . . ." (IPET Draft Report, at I-3 (Xavier Memo., Ex. 1).) The report explains that "[s]urge water elevated the level of Lake Ponchartrain, and shifting storm winds forced the lake water against the levees and floodwalls along its southern shores and New Orleans outfall canals . . . ." (Id., at V-5.)

With respect to the breaches on the London Avenue Canal, which Xavier contends had an impact on its property, the report states that "[f]ield evidence, analyses, and physical model tests show that <u>the breaches were due to the effects of high water pressures</u> within the sand layer beneath the levee and I-wall, and <u>high water loads</u> on the walls." (Id., at V-52 (emphasis added).) The report further states that "[t]here was no evidence of government or contractor

-4-

negligence or malfeasance," and that "the system was generally built as designed, and design approaches were consistent with local practice." (Id., at I-5.) Finally, the report concludes that "[n]o levee breaches occurred without overtopping" and "[t]he degree of erosion and breaching of overtopped levees was directly related to the character of the in-place levee materials <u>and the severity of the surge and wave action</u>." (Id., at V-81 (emphasis added).)

Additional portions of the IPET Draft Report not submitted by Xavier are attached as Exhibit B to Travelers' Memorandum of Law, for the Court's consideration, in the event that the Court were to deem this document admissible evidence. These portions explain, <u>inter alia</u>, that:

- "Hurricane Katrina produced unparalleled wave and storm surge conditions for the New Orleans vicinity," resulting in "the highest significant wave height ever measured in the Gulf of Mexico" and "the largest storm surges that have ever been observed within the Gulf of Mexico . . . ." (IPET Draft Report, at IV-1.)

- "As storm effects propagated onto the large flood protection levees and into the outfall and navigation canals, local wave and water level conditions exerted very large forces on the flood protection system." (Id., at IV-3.)

- At the 17th Street Canal and London Avenue Canal breaches, "contributions due to waves could be significant in causing gap formation in these locations." (Id., at IV-4.)

## COUNTERSTATEMENT OF FACTS

### Undisputed Material Facts

The following facts are the only facts material to application of the Water Exclusion in the Policy, and are undisputed:

1.   The land on which Xavier's buildings are located is normally dry.

2.   On or about August 29, 2005, and thereafter, the land on which Xavier's buildings are located was inundated with several feet of water.

3.   The property damage for which Xavier seeks to recover on this motion was caused by the water that inundated Xavier's property as described in Paragraph 2 above.

**Disputed, But Immaterial Facts**

4.      If, as Xavier contends, application of the Water Exclusion depended upon the extent to which the inundation of Xavier's property was caused by "natural" as opposed to "man-made" forces, there would be material disputes of fact on that issue.  See Response to Paragraph 10 of Xavier's Statement of Facts, supra.

Dated this 12th day of September, 2006.

|  |  |
|---|---|
| OF COUNSEL:<br>Stephen E. Goldman<br>Wystan M. Ackerman<br>ROBINSON & COLE LLP<br>280 Trumbull Street<br>Hartford, Connecticut 06103-3597<br>Telephone:    (860) 275-8255<br>Facsimile:     (860) 275-8299 | Respectfully submitted,<br><br>/s/ B Reimonenq/h<br>Ralph S. Hubbard III, T.A., La. Bar. #7040<br>Simeon B. Reimonenq, Jr., La. Bar. #19755<br>LUGENBUHL, WHEATON, PECK,<br>       RANKIN & HUBBARD<br>601 Poydras Street, Suite 2775<br>New Orleans, LA 70130<br>Telephone:    (504) 568-1990<br>Facsimile:     (504) 310-9195<br><br>Attorneys for Travelers Property Casualty<br>Company of America |

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Defendant Travelers Property Casualty Company of America's Response to Plaintiff's Statement of Uncontested Material Facts in Support of its Motion for Partial Summary Judgment and Counterstatement of Facts has been served upon all known counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this 12th day of September, 2006.

/s/ B Reimonenq/h

-6-