# Exhibit 16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

COLLEEN BERTHELOT, ET AL.,                          CIVIL ACTION

VERSUS                                              NO. 05-4182

BOH BROTHERS CONSTRUCTION CO.,                      SECTION "K"(2)
L.L.C., ET AL.                                      CONS. KATRINA CANAL

PERTAINS TO:05-6323-Vanderbrook

## ORDER AND REASONS

Before the Court is a Motion to Remand to State Court (Doc. 102) filed by Richard Vanderbrook, Mary Jane Silva, James Capella, Sophia Granier, Jack Capella as the Executor of the Succession of Lilian Capella, Gregory Jackson, Peter Ascani, III and Robert G. Harvey, Sr. ("Plaintiffs") and a Motion to Sever (Doc. 103) filed by State Farm Fire and Casualty Company, Unitrin Preferred Insurance Company, Hartford Insurance Company of the Midwest, The Standard Fire Insurance Company and Hanover Insurance Company ("Insurer Defendants") which motions were taken under advisement on the papers. This matter was removed by the Board of Commissioners for the Orleans Levee District ("OLD") on December 2, 2005 based on federal officer jurisdiction under 28 U.S.C. § 1442(a)(1) and on federal question jurisdiction under 28 U.S.C. § 1331. The Insurer Defendants[1] joined in the removal relying on a number of legal theories including the omnibus jurisdiction provided under § 1442(a)(1) and diversity jurisdiction under 28 U.S.C. § 1332 contending that the claims against the Defendant Insurers were fraudulently and improperly joined with the claims against OLD, the only non-diverse party.

---

[1] As noted, these parties are State Farm Fire and Casualty Company, Unitrin Preferred Insurance Company (improperly named as Kemper Insurance Company), Hartford Insurance Company of the Midwest (improperly named as Hartford Insurance Company), The Standard Fire Insurance Company (improperly named as Travelers Insurance Company and St. Paul Travelers Insurance Company) and Hanover Insurance Company ("the Insurers").

As to the Insurers, Plaintiffs contend that they have refused to adjust or pay for a covered loss as the water damage suffered by Plaintiffs was due to a sudden break in the concrete wall of the levee outfall canal; that that loss is not described in any policies as an excluded loss; and, thus, Insurers' denial of coverage is arbitrary and capricious entitling Plaintiffs to additional damages as provided by statute. (Petition, ¶10). In addition, Plaintiffs contend that the insurance policies are adhesion contracts such that the vague exclusion provisions contained in these policies are unreasonably favorable to the Insurers rendering the exclusions void. (Petition, ¶11).

In the Court's decision rendered yesterday with respect to *Robert Harvey, et al. v. The Board of Commissioners for the Orleans Levee District, Parish of Orleans*, C.A. No. 05-45468, the Court set out in great detail the relationship between OLD and the Corps of Engineers ("the Corps"). The Court will reiterate those findings herein:

### The Statutory Background of the Relationship between the Corps and OLD

The London Avenue and 17th Street Outfall Canals are components of the National Flood Control Program authorized by Congress and implemented by the Army Corps of Engineers. In October of 1965, Congress passed Public Law 89-298 authorizing "hurricane-flood protection on Lake Pontchartrain . . . in accordance with the recommendations of the Chief Engineers . . . ." (OLD's Exhibit 1, at p.1077 (Public Law 89-298)). Public Law 102-104 was passed in 1991, instructing that:

> . . .with the funds appropriated herein and hereafter for the Lake Pontchartrain and Vicinity, Louisiana, Hurricane Protection project, **the Secretary of the Army**, is authorized and directed to provide parallel hurricane protection along the entire lengths of the Orleans Avenue and London Avenue Outfall Canals by raising levees and improving flood protection works along and parallel to the entire lengths of the outfall canals and other pertinent work necessary to complete an entire parallel protection system and award continuing contracts for construction of this parallel protection. . . .."OLD's Exhibit 2, at p.514 (Public Law 102-104)(emphasis added).

Congress, in 1992, enacted Public Law 102-377, which states: "the **Secretary of the Army**, acting through the Chief of Engineers, is **directed** to incorporate

3

parallel protection along the Orleans and London Avenue Outfall Canals into the authorized Lake Pontchartrain and Vicinity, Louisiana, Hurricane Protection project . . ..(OLD's Exhibit 3, at p.1320 (Public Law 102-377)(emphasis added)). Public Law 103-126 was promulgated in 1993, providing that "the **Secretary of the Army, acting through the Chief of Engineers**, is directed to use $24,119,000 of the funds appropriated herein to continue the Lake Pontchartrain and Vicinity, Louisiana, Hurricane Protection project, including continued construction of parallel protection along the Orleans and London Avenue Outfall Canals . . .." (Exhibit 4, at p.1316 (Public Law 103-126)(emphasis added)).

Section 701a-1 of Title 33 of United States Code which concerns flood control by the United States mandates that "improvements of rivers and other waterways for flood control and allied purposes **shall** be **under the direction of the Secretary of the Army and supervision of the Chief of Engineers . . .**"(emphasis added). 33 U.S.C. §701b specifies that "[f]ederal investigations and improvements of rivers and other waterways for flood control and allied purposes **shall** be under the **jurisdiction of the Secretary of the Army and supervision of the Chief of Engineers.**" (Emphasis added).

In accordance with the above Congressional directives, the United States Army Corps of Engineers (hereinafter "Corps") designed and installed the flood walls for the London Avenue and 17th Street Outfall Canals. (OLD's Exhibit 5-B(Excerpts from Design Memorandum 19A for London Avenue Outfall Canal); OLD's Exhibit 5-C (Excerpts from Design Memorandum 20 for 17th Street Outfall Canal). The Corps issued the specifications and bid packages for the construction of the London Avenue and 17th Street Outfall Canals. (OLD'S Exhibit 5-E (Excerpts from Corps' Specifications and Solicitations for Bid on London Avenue Outfall Canal); OLD's Exhibit 5-F (Excerpts from Corps' Specifications and Solicitations for Bid on 17th Street Outfall Canal)). These levees were built to withstand a "Standard Project Hurricane" (hereinafter "SPH") formulated by the Corps. (OLD's Exhibit 5-D, at p. xi (Excerpts from Design Memorandum Vol. 13). Any maintenance performed by OLD on the levees was done under the supervision and in accordance with regulations promulgated by the Corps. (OLD's Exhibit 5, at ¶¶6-7 (Spencer Affidavit); OLD's Exhibit 6, at ¶3 (Hearn Affidavit); 33 U.S.C. §701c (providing that a state or political subdivision shall assure that it will "maintain and operate all works after completion in accordance with the regulations prescribed by the Secretary of the Army."). The relevant regulations for maintenance can be found at 33 C.F.R .208.10.

33 U.S.C. §701c provides, in pertinent part, that a state or political subdivision shall assure that it will "maintain and operate all works after completion in accordance with the regulations prescribed by the Secretary of the Army." 33 C.F.R. 208.10 further provides instructions on how OLD is to maintain the flood control structures under the Corps' jurisdiction. This provision instructs OLD to make sure there is:

> (I) No unusual settlement, sloughing or material loss . . .; (ii) No caving has occurred . . .; (iii) No seepage, saturated areas, or sand

4

boils are occurring; (iv) Toe drainage systems and pressure relief wells are in good working condition . . .; (v) Drains through the levees and gates on said drains are in good working condition; (vi) No revetment work or riprap has been displaced, washed out, or removed; (vii) No action is being taken . . . which will retard or destroy the growth of sod; (viii) Access roads to and on the levee are being properly maintained; (ix) Cattle guards and gates are in good condition; (x) Crown of levee is . . . well shaped and maintained; (xi) There is no unauthorized grazing or vehicular traffic on the levees; (xii) Encroachments are not being made on the levee right-of-way which might endanger the structure or hinder it proper and efficient functioning during times of emergency.

33 C.F.R. 208.10(b)(1)(I)-(xii). This federal regulation mandates that the inspections "shall be made immediately prior to the beginning of flood season; immediately following each major high water period, and otherwise at intervals not exceeding 90 days . . . ." 33 C.F.R 208.10(b)(1). Further, it requires that the Corps "furnish local interests with an Operation and Maintenance Manual for each completed project . . . ." 33 C.F.R 208.10(a)(10). OLD also contends that "detailed guidance for state agencies relating to operating federal flood control structures including specific inspection, reporting and maintenance procedures is set forth in the Corps' "Operations and Maintenance Manual." No copy of these "detailed instructions" have been provided to the Court. 33 C.F.R 208.10.

Federal law mandates that "improvements of rivers and other waterways for flood control and allied purposes **shall be under the direction of the Secretary of the Army and supervision of the Chief of Engineers . . . ."** 33 U.S.C. §701a-1 (emphasis added). Federal law further specifies that "[f]ederal investigations and improvements of rivers and other waterways for flood control and allied purposes **shall be under the jurisdiction of the Secretary of the Army and supervision of the Chief of Engineers."** 33 U.S.C. §701b (emphasis added). Federal law even prohibits OLD from initiating any flood control project without prior federal approval. 33 U.S.C. §701 b-13.

**Contracts Between the Corps of Engineers and OLD and Hearn Affidavit**

Given that background, as detailed by OLD in its own filings, the Court has also reviewed the relevant contracts upon which OLD bases its removal and the affidavits of Max L. Hearn, the Executive Director of the Board of the Commissioners of OLD (OLD's Exhibit 6) accompanying those documents and of