**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 06-4024 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: Responder, Levee and MRGO, | § | |
| O'Dwyer, No. 06-4024 | § | |
| _____ | § | |

**DEFENDANT UNITED STATES' MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

        Defendant, United States of America, has moved pursuant to Fed. R. Civ. P. 12(b)(1) and

12(h)(3) to dismiss plaintiff's action for lack of subject matter jurisdiction.  The Complaint,

styled as a class action against the United States, alleges, *inter alia*, common law tort claims for

damages arising from the failure of certain levee systems in New Orleans, Louisiana, during

Hurricane Katrina.  Plaintiff asserts subject matter jurisdiction over claims against the United

States under the Fifth Amendment to the United States Constitution, the Federal Tort Claims

Act, various federal and state environmental statutes, 28 U.S.C. § 1346, and certain admiralty

and maritime statutes.  Compl. ¶¶ V, VI and First Amend. Compl. ¶¶ I, III**.**  None of the grounds

1

cited by the plaintiff supply this Court with jurisdiction over her action.

Plaintiff's claims are barred by the Flood Control Act, 33 U.S.C. § 702(a), which provides immunity from damage from floods or flood waters. Plaintiff's suit is also barred by an express exception to the Federal Tort Claims Act: 28 U.S.C. § 2680(a). This exception precludes claims challenging the execution of a statute or regulation with due care or challenging the performance of a discretionary function. Nor can plaintiff's claim proceed as an unjust taking of her property because the property was not put to use for the public good and, in any event, jurisdiction would not lie in the district court. Plaintiff's reliance on other federal statutes is equally misplaced for numerous reasons, as shown below.

## BACKGROUND

In her Complaint, the plaintiff asks that the United States be held liable for the "severe water damages" to her residence suffered in the wake of Hurricane Katrina.[1] Compl. ¶ XIII. According to the plaintiff, these harms were not caused by Katrina itself but were instead caused by the negligent design, construction, inspection, maintenance, operation, and dredging of the "entire navigable waterway system," consisting of the Mississippi River Gulf Outlet (MRGO), the Gulf Intracoastal Waterway (GIWW), the Inner Harbor Navigation Canal (IHNC), the London Avenue Canal, the 17th Street Canal, and their environs and levees. Compl. ¶ XII. She avers that "[t]he very existence of the MRGO directly caused the destruction of the coastal marshes and wetlands which had previously served as a 'buffer' to hurricane winds and storm surge, the effect being that the MRGO became a 'hurricane highway,' aimed straight at the heart

_____

[1] Plaintiff's alleged damages occurred at 5939 Vicksburg Street, New Orleans, Louisiana. Compl. at ¶¶ II, XIII. The residence lies between the 17th Street and Orleans Avenue Canals. See map at Exhibit 1.

of the Greater New Orleans Metropolitan Area.  Additionally, dredging activity in the MRGO has contributed to the widening of the waterway and to the destruction of the 'buffer' marshes and wetlands."  Compl. ¶ VIII.  The "existence of and the eroded condition of the MRGO intensified KATRINA's initial storm surge, raised the height of the wall of water which accompanied it, and increased the velocity of the surge experienced by levee structures which were intended to resist hurricane effects, including the levee and floodwall structures which should have contained the navigable waters."  Compl. ¶ IX.  She further alleges that the "intersection of the wider and deeper Gulf Intracoastal Waterway with the Inner Harbor Navigation Canal . . . cause[d] a narrowing funnel shape into the Industrial Canal . . . theoretically heightening any storm surge from the north and east into the Industrial Canal."[2]  Compl. ¶ X.  Additionally, "the 'funnel effect' . . . permitted intensified storm surge to overtop levees and retaining wall structures, leading to scouring on the landward side of the levees, which in turn undermined the earthen levees along the MRGO, the Gulf Intracoastal Waterway and the Industrial Canal, and resulted in the inundation of water of parts of Orleans Parish that would not have occurred but for the existence of and deteriorated condition of the MRGO and the inadequacies of the levee and retaining wall structures along the MRGO, the Gulf Intracoastal Waterway and the Industrial Canal . . .."  Compl. ¶ XI.

## ARGUMENT

The flooding caused by Hurricane Katrina was indeed tragic.  The United States,

---

[2] The Inner Harbor Navigation Canal and the Industrial Canal are the same.

however, is not liable for the damages that the plaintiff, or the unnamed class members[3], seeks because sovereign immunity shields the United States from this suit.  The Flood Control Act (FCA) of 1928, 33 U.S.C. §§ 700 et seq., provides that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters . . . ."  *Id.* § 702c. Even absent the immunity afforded by the FCA, the limited waiver of sovereign immunity provided by the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, would not provide jurisdiction over this action because the FTCA bars claims for (1) the exercise of due care for conduct authorized by statute or regulation or (2) discretionary acts or omissions that are grounded in considerations of policy.  For these reasons, the United States' motion to dismiss for lack of jurisdiction should be granted.[4]  None of the other federal laws cited by the plaintiff cure the fundamental jurisdictional deficiency inherent in her Complaint.

## I. THIS ACTION IS BARRED BY THE FLOOD CONTROL ACT OF 1928.

Congress has determined that the United States cannot be held liable for any damages

---

[3] This Court lacks jurisdiction over an FTCA class action where, as here, the administrative prerequisites of suit have not been satisfied by or on behalf of each individual claimant comprising the class action.  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 194, 198 (2d Cir. 1987) *aff'g in relevant part*, *In re Agent Orange Prod. Liab. Litig.*, 506 F. Supp. 757 (E.D. N.Y. 1980); *Lunsford v. United States*, 570 F.2d 221, 227 (8th Cir. 1977); *Caidin v. United States*, 564 F.2d 284 (9th Cir. 1977); *Commonwealth of Pennsylvania v. Nat'l Ass'n of Flood Insurers*, 520 F.2d 11, 20, 23-24 (3d Cir. 1975); *cf. Keene Corp. V. United States*, 700 F.2d 836, 841 (2d Cir. 1983).  Accordingly, the plaintiff's request for recognition and certification of the class status should be denied.

[4] The issue of the United States' immunity pursuant to the Flood Control Act and jurisdictional defenses under the Federal Tort Claims Act is the subject of extensive briefing on a Motion to Dismiss the United States in *Robinson v. United States*, CA 06-2268, Doc. Rec. 822, and Reply to Motion to Dismiss the United States, Doc. Rec. 1183, pending before this Court and consolidated with *In Re: Katrina Canal Breaches Consolidated Litigation*, CA 05-4182.  The factual and legal contexts in the present case parallel those described in *Robinson*.  Oral argument for the *Robinson* case is set for October 27, 2006.

resulting from floods or flood waters.  In the Flood Control Act of 1928, Congress provided that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place."  33 U.S.C. § 702c.  As the Supreme Court has observed, this provision "outlines immunity in sweeping terms . . . .  It is difficult to imagine broader language." *United States v. James*, 478 U.S. 597, 604 (1986) (footnote omitted).  The relevant damages in this case indisputably resulted from "floods or flood waters."  This action must therefore be dismissed.

In her Complaint, the plaintiff implies that § 702c does not mean what it says.  Rather, she claims the "structures, projects, works and navigable waterway systems in question are not flood control projects, but navigation projects, hurricane protection projects, water resources development projects, or projects other than flood control projects, so that The Flood Control Act of 1928 is inapplicable to the claims herein asserted."  Compl. ¶ XIXf.  Not only is this argument foreclosed by the "sweeping terms" of § 702c, but it is contrary to the Supreme Court's own reading of them.  "The scope of the immunity [is determined] not by the character of the federal project or the purposes it serves, but by the character of the waters that cause the relevant damage . . .." *Central Green Co. v. United States*, 531 U.S. 425, 434 (2001).  Whenever damages result "from or by floods or flood waters," the United States is absolutely immune.  *Id.*

Furthermore, the Lake Pontchartrain and Vicinity Hurricane Protection Project (LPVHPP) is a federal flood control project that includes levees along the 17th Street and London Avenue Canals, the MRGO, the IHNC and the GIWW.  Even though the Complaint focuses on dangers allegedly created by MRGO, the IHNC and the GIWW, the Katrina flood is certainly a flood that the LPVHPP was devised to prevent, and the floodwaters that caused the

relevant damages were waters that the flood control project failed to contain.  Indeed, the Complaint itself advances allegations that, if taken as true, reveal the centrality of the federal flood control works in the events from which the plaintiff's claims arose.  The flood occurred when "levees along the MRGO failed in numerous places along its length, directly flooding most of St. Bernard Parish."  Compl. ¶ IX.   The "funnel effect" during Hurricane Katrina "intensified storm surge to overtop levees and retaining wall structures leading to scouring on the landward side of the levees, which in turn undermined the earthen levees along the MRGO, the Gulf Intracoastal Waterway and the Industrial Canal, and resulted in the inundation by water of parts of Orleans Parish."  Compl. ¶ XI.

The MRGO, GIWW and IHNC are inherently and inextricably intertwined with the LPVHPP.  The MRGO, GIWW and IHNC waterway forms a constituent element of the hydrologic system that the flood control project was designed to contain.  It is no mere happenstance that LPVHPP levees were built on the banks of MRGO, GIWW and IHNC. Moreover, these levees and flood walls, to include the 17th Street and Orleans Avenue Canals, that surrounded plaintiff's property were federal flood control structures, and the flood waters that allegedly harmed the plaintiff were waters that these federal works failed to contain.

The plaintiff's attempt to avoid the sweeping immunity provided by the FCA by founding her action on MRGO's, GIWW's and IHNC's supposed involvement in the Katrina flood is futile: The waterway's involvement in the Katrina flood cannot be analyzed apart from its impact on the LPVHPP works that failed.  Moreover, the 17th Street Canal and Orleans Avenue Canal levees were clearly components of the LPVHPP.  Inasmuch as the plaintiff's alleged damages resulted from floodwaters that the LPVHPP failed to control, the immunity afforded by § 702c applies

notwithstanding the purported involvement of MRGO, GIWW and IHNC in causing the flood.

## II.   THIS ACTION MUST BE DISMISSED BECAUSE IT CHALLENGES TWO CATEGORIES OF CONDUCT TO WHICH THE FEDERAL TORT CLAIMS ACT DOES NOT APPLY TO:  (1) EXECUTION OF A STATUTE OR REGULATION WITH DUE CARE AND (2) DISCRETIONARY ACTS OR OMISSIONS THAT ARE GROUNDED IN CONSIDERATIONS OF POLICY.

The plaintiff has cited the Federal Tort Claims Act as establishing the Court's jurisdiction over this case.  Complaint ¶ V.  It is axiomatic that the United States, as sovereign, is immune from suit except to the extent it consents to be sued.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  Because the federal courts are courts of limited jurisdiction, if an action does not come within the limited grant of power derived from Article III of the United States Constitution and from Congress' legislative acts, a federal court does not have the power to hear or determine that action.  *See Insurance Corporation of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982); *Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S. 375, 377 (1994); *Price v. United States*, 69 F.3d 46, 49 (5th Cir. 1995) *rehr'g denied* 81 F.3d 520 (5th Cir. 1996), *cert. denied* 519 U.S. 927 (1996).  Further, the burden to establish jurisdiction rests on the party asserting it.  *Kokkenen*, 511 U.S. at 377 ("Federal courts . . . possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.  It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.").  Here, the plaintiff cannot meet that burden.

### A.  FTCA Bars Claims for Execution of a Statute or Regulation with Due Care

The Complaint must be dismissed for a second, independent reason: this action is beyond the purview of the FTCA.  To the extent this action is founded on the Corps' alleged failure to

execute congressional acts or mandates regarding the design and construction of the MRGO[5],

GIWW[6] and the LPVHPP[7], which includes the 17th Street Canal and Orleans Avenue Canal

levees[8], the action must be dismissed because this alleged failure cannot form a basis of liability

_____

[5] Pub. L. No. 84-455 resulted in the authorization of the MRGO project by the River and Harbor Act of 1956, Pub. L. No. 84-455, 70 Stat. 65 (1956).  Exhibit 2.  *See also*, H.R. Doc. 245 (1951), Exhibit 3, and H.R. Doc. No. 71-46 (1931), Exhibit 4, at 1-2.

[6] Pub. L. No. 77-675, 56 Stat. 703 (1942).  Exhibit 5.  H.R. Doc. No. 79-96.  Exhibit 6, at 1-2.

[7] Pub. L. No. 89-298 (as amended), § 204, 79 Stat. 1073, 1077, and the Water Development Acts of 1974, 1986, 1990 and 1992.  Congress first authorized construction of the Lake Pontchartrain and Vicinity, Louisiana Hurricane Protection Project in the Flood Control Act of 1965 to provide flooding protection to areas around the lake caused by a storm surge or rainfall associated with a standard project hurricane, which is roughly the same as what is now classified as a fast moving Category 3 hurricane.  Although federally authorized, it was a joint federal, state, and local effort with the federal government paying 70 percent of the costs and the state and local interests paying 30 percent.  The Corps was responsible for project design and construction and local entities were responsible for maintenance of levees and flood controls.  As of 2005, the LPVHPP, as constructed or being constructed, included about 125 miles of levees with the following major features: (1) New levee north of Highway U.S. 61 from the Bonnet Carre Spillway East Guide Levee to the Jefferson-St. Charles Parish boundary; (2) Floodwall along the Jefferson-St. Charles Parish boundary; (3) Floodwall along the Jefferson-St. Charles Parish boundary; (4) Enlarged levee along the Jefferson Parish lakefront; (5) Enlarged levee along the Orleans Parish lakefront: (6) Levees, floodwalls, and flood proofed bridges along the 17th Street, Orleans Avenue and London Avenue drainage canals; (7) Levees from the New Orleans lakefront to the Gulf Intracoastal Waterway; (8) Enlarged levees along the Gulf Intracoastal Waterway and the Mississippi River-Gulf Outlet; (9) New levee around the Chalmette area; and (10) a mitigation dike on the west shore of Lake Pontchartrain.  *See United States Government Accountability Office, Testimony Before the Committee on Environment and Public Works, U.S. Senate: Army Corps of Engineers - History of the Lake Pontchartrain and Vicinity Hurricane Protection Project*, November 9, 2005, located on the GAO website *available at*: http://www.gao.gov/new.items/d06244t.pdf.  Exhibit 8, at 1, 6.   Additional statutory background authorizing the LPVHPP has been discussed in *Colleen Berthelot, et al. v. Boh Brothers Construction Co., L.L.C., et al*, (consolidated with CA 05-4182).  Order and Reasons, Rec. Doc. No. 469, at 3-5, attached as Exhibit 16.

[8] The 17th Street and London Avenue Canals are drainage canals in New Orleans used for pumping water into Lake Pontchartrain.  The Corps was responsible for the construction of the levees and floodwalls along the Canals per the LPVHPP.  However, contrary to plaintiff's

under the FTCA.[9]  In drafting the FTCA, Congress included a provision to prevent the FTCA

from functioning as a vehicle by which federal statutes and regulations might be challenged.

Codified at 28 U.S.C. § 2680(a), the "due care" exception excludes from the FTCA's purview

suits that attempt to impose liability for the acts or omissions that occur during the execution of a

statute or regulation with due care.  28 U.S.C. § 2680(a).  The "due care" exception protects acts

and omissions that occur while carrying out the dictates of a statute or regulation, if the "carrying

out" has been accomplished with the requisite care.  *Dalehite v. United States,* 346 U.S. 15, 33;

*Buchanan v. United States,* 915 F.2d 969, 970-71.  "It bars tests by tort action of the legality of

statutes and regulations."  *Dalehite,* 346 U.S. at 33.  Accordingly, unless some deviation from the

mandatory directive is alleged, general allegations of "negligence" are insufficient to prevent

application of the "due care" exception.  *See Welch v. United States,* 409 F.3d 646, 652 (4th Cir.

2005), *cert. denied,* 126 S.Ct. 1431 (2006).  Moreover, in the absence of any specific deviation

from the statutory mandate, generalized claims of negligence are nothing less than an indirect

---

allegations, it is not responsible for the design, construction, maintenance, inspection or dredging
of the Canals.  Compl. ¶ ¶ V, XII.  That is the responsibility of the City of New Orleans.  Exhibit
9 (documents are located on the Sewerage and Water Board of New Orleans web site *available at*
http://www.swbno.org/new_orleans.htm and http://www.swbno.org/drainagefacts.html).

[9] The plaintiff also alleges the Corps negligently designed, constructed, inspected,
maintained, operated and dredged the IHNC.  Compl. ¶¶ V, XII.  The IHNC was built by the Port
of New Orleans, not the United States, to provide navigation between the Mississippi River and
Lake Pontchartrain.  The project was completed in 1923.  The River and Harbor Act of 1942
authorized the acquisition from the Board of Commissioners for the Port of New Orleans of
control of that part of the IHNC prism south of a point 3,000 feet north of Florida Avenue,
together with the lock, the lock forebay, and the St. Claude Avenue and Florida Avenue bridges
for an annual rent.  *See* H.R. Doc. No. 79-96, Exhibit 6, at 1.  In 1986, the United States
purchased the lock and appurtenances with operation and maintenance responsibility for the St.
Claude and Florida Avenue Bridges transferring to the Board of Commissioners of the Port of
New Orleans.  Exhibit 7, at 1, 2.  (This document is located on a Corps website *available at*
http://crunch.tec.army.mil/neworleans/webpages/dpndetail.cfm?ID=879).

challenge to the statute whose dictates were being carried out.

The plaintiff's general claim that the waterway and the LPVHPP were negligently designed and constructed is repeated in paragraph after paragraph - - with no specific allegation of deviation from the waterway or LPVHPP plans that were approved by Congress.[10]  Compl. ¶¶ V, VII, XI, XII, XIXd.  Thus, it is an indirect challenge to the law that authorized the LPVHPP and waterway and, as such, is foreclosed by § 2680(a) which precludes claims based upon the execution of a statute or regulation in the exercise of due care.  The applicability of this exception can be most plainly seen in the plaintiff's claim that the entire navigable waterway's design, construction, inspection, maintenance, dredging and operation were "mandated" acts of Congress which appears cheek-by-jowl with her claim that these functions were negligent because they created a "hurricane highway" with a "funnel effect" that heightened and intensified a storm surge that overtopped levees and retaining wall structures that resulted in the "inundation by water" of parts of Orleans Parish.  Compl. ¶¶ VII, VIII, IX, X, XI, XII.  Even if these allegations were true, the United States could not be held liable.  The Corps may have developed the plans for the waterway and LPVHPP, but Congress approved them and told the Corps to prosecute them.  Thus the "hurricane highway" and the infamous "funnel" are but inflammatory descriptions of a "flaw" attributable to the legislation that directed the building of the waterway where and as they were built.  Therefore, the plaintiff's claims are barred under the "due care"

---

[10] The plaintiff states that the Congressionally "mandated" dimensions of MRGO was for a surface width of 650 feet, but the banks have now eroded to an average of 1,500 feet.  Compl. ¶ VII.  While the original design may have been approved for a width of 650 feet, Congress did not preclude the Corps from exercising its judgment when it later permitted a surface width in excess of 650 feet after the initial construction.  Moreover, the plaintiff has not alleged that MRGO was not initially designed and constructed as authorized by Congress.

exception under the FTCA.

**B.  FTCA Bars Claims for Discretionary Acts or Omissions that are Grounded in Considerations of Policy**

To the extent that this action is founded on decisions and choices that were properly the Corps to make within the framework of the law that mandated the LPVHPP and the waterway, it is barred by the FTCA's discretionary function exception, which does not apply to claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  This exception reflects a congressional intent to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984); *accord Baldassaro v. United States,* 64 F.3d 206, 211 (5th Cir. 1995), *cert. denied,* 517 U.S. 1207 (1996).  Construing this provision in a quartet of cases, *United States v. Gaubert,* 499 U.S. 315 (1991); *Berkovitz v. United States,* 486 U.S. 531 (1988); *Varig Airlines*; and *Dalehite v. United States,* 346 U.S. 15 (1953), the Supreme Court has construed "discretionary conduct" as consisting of conduct which, by its very nature, involves choice or judgment.  *United States v. Gaubert,* 499 U.S. 315, 325; *see also id.* at 322; *accord Baldassaro,* 64 F.3d at 208.  "The requirement of choice or judgment is not satisfied if a 'federal statute, regulation, or policy *specifically prescribes a course of action* for an employee to follow . . . .'" *Gaubert,* 499 U.S. at 322 (quoting *Berkovitz,* 486 U.S. at 536) (emphasis added).  If there is no prescribed course of conduct or action, then an employee acting pursuant to a federal statute, regulation, or policy must exercise judgment and choice.  *See Rich*

*v. United States,* 119 F.3d 447, 450 (6th Cir. 1997), *cert. denied,* 523 U.S. 1047 (1998).

"[A]lleg[ing] only some generalized failures to follow mandatory rules" without "point[ing] to

even one relevant mandatory limitation on . . . statutory discretion . . . [is] insufficient to defeat

the first part of the *Gaubert* test." *ALX El Dorado, Inc., v. Southwest Sav. & Loan Ass'n,* 36 F.3d

409, 411-12 (5th Cir. 1994). Unless a statute, regulation, or policy gives "specific direction," it

does not eliminate discretion. *Guile v. United States,* 422 F.3d 221, 231 (5th Cir. 2005).

In order to be shielded by the discretionary function exception, conduct must also satisfy

a second criterion: it must be conduct of a sort that can plausibly be grounded in public policy.

*See Gaubert,* 499 U.S. at 322-25. This criterion is qualified by the word *plausibly* because it is

the nature of the conduct, not the individual Government employee's motivation, that governs

whether the exception applies. *Id.* at 325. The focus of the inquiry is not on the employee's

subjective intent in exercising discretion, but on "the nature of the actions taken and on whether

they are susceptible to policy analysis." *Id.* (footnote omitted); *see also LeSoeur v. United States,*

21 F.3d 965, 968 (9th Cir. 1994); *cf. id.* at 969 (inasmuch as focus is on nature of actions, court

need not examine decision-making process behind actions).[11]

_____

[11]There need not even be an actual decision to review. If the nature of such a decision
reveals that had one been made it would have involved considerations of public policy, then the
exception applies. *See Andrade v. Chojnacki,* 338 F.3d 448, 457 (5th Cir. 2003), *cert. denied,*
541 U.S. 935 (2004); *Smith v. Johns-Manville Corp.,* 795 F.2d 301, 308-09 (3d Cir. 1986) ("The
test is not whether the government actually considered each possible alternative in the universe of
options, but whether the conduct was of the type associated with the exercise of discretion."); *cf.
Macharia v. United States,* 334 F.3d 61, 67 (D.C. Cir. 2003) (application of exception does not
require "evidence that decision makers actually considered social, economic, or policy
considerations"), *cert. denied,* 540 U.S. 1149 (2004). "[T]o survive a motion to dismiss based on
the discretionary function exception, a complaint 'must allege facts which would support a
finding that the challenged actions are not the kind of conduct that could be said to have been
grounded in considerations of policy.'" *Baldassaro,* 64 F.3d at 209 (quoting *Gaubert,* 499 U.S.
at 324-25).

Actions taken in executing a statutory or regulatory program can usually be analyzed in terms of the social, economic, or political policies that gave rise to the program: "Where Congress has delegated the authority to an independent agency or to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception." *Gaubert,* 499 U.S. at 323. The protection extends beyond "the initiation of programs and activities" to "include[] determinations made by executives or administrators in *establishing plans, specifications or schedules of operations." Dalehite,* 346 U.S. at 35-36 (emphasis added; footnote omitted). It also extends to "the actions of subordinates in carrying out the operations of government in accordance with official directions." *Id.* at 36. The Court emphasized that the protection must cover the conduct of subordinates, for "[i]f it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion." *Id.* The nature of the conduct, not the status of the actor, governs whether the exception applies. *Gaubert,* 499 U.S. at 322.

Three broad allegations assert that the Army Corps of Engineers negligently maintained and dredged the waterway. The first allegation, mentioned only in passing, alludes to the Corps's failure to maintain MRGO's banks which have eroded from a Congressionally "mandated" surface width of 650 feet to an average of 1,500 feet. Compl. ¶ VII. The final two allegations relate to the destruction of the coastal marshes and wetlands due to the existence and dredging of MRGO: (1) "the dredging activity in the MRGO has contributed to the widening of the

waterway and to the destruction of the 'buffer' marshes and wetlands," Compl. ¶ VIII; and (2) the "very existence of the MRGO directly caused the destruction of the coastal marshes and wetlands . . .." Compl. ¶ VIII.

The reports submitted to Congress were silent as to the building of barriers or levees or the taking of other bank stabilization or surge-mitigation measures regarding MRGO. To the extent that such structures and measures would have been compatible with the project as authorized, whether to build or employ them was within the Corps's discretion. The problem of erosion was recognized by the Corps long before Katrina and the Corps examined various remedial measures. And while it is true that the studies did not lead to measures that eliminated erosion entirely, that is because whether and how to remedy the situation involved the weighing of alternatives, including their costs and benefits, against other objectives and priorities that were competing for available funds. The discretionary function exception therefore bars this suit.

## III.   PLAINTIFF HAS NO OTHER VIABLE BASIS UPON WHICH TO ASSERT SUBJECT MATTER JURISDICTION

In addition to the Federal Tort Claims Act, plaintiff alleges jurisdiction pursuant to the Fifth Amendment of the United States Constitution, several federal and state environmental statutes, 28 U.S.C. § 1346, 28 U.S.C. § 1331(1), and the Suits in Admiralty Act, 46 U.S.C. § 741, et seq. Compl. ¶ V and First Amend. Compl. ¶¶ I, III. None of the grounds cited by the plaintiff supply this Court with jurisdiction over her action.[12]

---

[12] In an attempt to overcome these jurisdictional defects, plaintiff asserts a separate cause of action against the United States pursuant to general maritime law and Louisiana law alleging the "wholesale destruction and spoliation of evidence" by the Corps at various locations throughout New Orleans, particularly at the London Avenue Canal, the 17th Street Canal and the IHNC. First Amend. Compl. ¶ II. Plaintiff's proposed remedy for the alleged spoliation of evidence is for the Court to impose sanctions against the United States and strike its affirmative

**A.  The United States Constitution Does Not Grant This Court Jurisdiction Over the United States**

The plaintiff asserts this Court has jurisdiction over her claim pursuant to the Fifth Amendment to the United States Constitution because it involves claims for the taking of property without just compensation.  Compl. ¶ V, First Amend. Compl.  ¶ III.  The Fifth Amendment provides, in pertinent part, as follows: ". . . nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V, cl. 4 (emphasis added).  A Fifth Amendment taking occurs, "when the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." *Lucas v. South Carolina Coast Council*, 505 U.S. 1003, 1019 (1992) (emphasis added).  There is no public use to which the claimant's property is to be put and no common good in the loss of the economic benefit of her property.  Moreover, constitutional taking claims are not within the purview of this Court's jurisdiction pursuant to the

_____

defenses to this action.  *Id.*  First, the plaintiff has not filed a claim against the United States regarding this cause of action.  Therefore, she has not exhausted her administrative remedy and her claim is barred.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (the FTCA "bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); *Reynolds v. United States*, 748 F.2d 291, 292 (5th Cir. 1984) (Suits against the United States must be filed in strict compliance with the FTCA's provisions.).  Even if she had exhausted her administrative remedy, the issue of spoliation of evidence that is the subject of this action has already been addressed by the Court in the matter of *Colleen Berthelot et al., v. Boh Bros. Construction Co., L.L.C., et al.*, CA 05-4182 (and consolidated cases), through Magistrate Judge Wilkinson's Order and Reasons on Motion, Rec. Doc. No. 673.  Exhibit 15.  Judge Wilkinson's Order provides an exhaustive procedural history concerning the many motions, hearings, and protocols regarding Hurricane Katrina evidence preservation.  Indeed, the Court has adopted and approved these evidentiary protocols which address the same facts that underlie this Complaint, found them reasonable and made them the orders of the Court.  Order at 8.  The plaintiff provides a laundry list of evidence that was allegedly destroyed by the Corps at various sites, but neither states how the Corps's activities were unreasonable nor how they were not in conformance with the Court approved evidentiary protocols.  As such, the plaintiff should not be entitled to sanctions or a striking of the United States's affirmative defenses to this Complaint.

Tucker Act, 28 U.S.C. § 1346(a)(2), because plaintiff seeks more than $10,000 in damages.  *See*, *e.g.*, *Wilkerson v. United States*, 67 F.3d 112, 118 (5th Cir. 1995) (holding that Fifth Amendment claims in excess of $10 thousand were within exclusive jurisdiction of Court of Federal Claims). Finally, the Fifth Amendment does not confer jurisdiction because the United States has not waived sovereign immunity for constitutional claims.  *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 473-479 (1994); *United States v. Testan*, 424 U.S. 392, 399-402 (1976); *Lynch v. United States*, 292 U.S. 571, 582 (1934); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 410 (1971) (Harlan, J. Concurring).  For these reasons, the Fifth Amendment does not confer jurisdiction over this action.

## B.  Title 28 U.S.C. § 1331 Does Not Waive Sovereign Immunity

Plaintiff asserts that this Court has jurisdiction over this subject matter pursuant to 28 U.S.C. § 1331.  Compl. ¶ V.  Broad jurisdictional statutes, such as 28 U.S.C. § 1331, do not, in and of themselves, operate as a general waiver of sovereign immunity.  *See Beale v. Blount*, 461 F.2d 1133, 1138 (5th Cir. 1972); *Koehler v. United States*, 153 F.3d 263, 266, n.2 (5th Cir. 1998) (citing *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380 (5th Cir. 1989) and describing the law as "well-settled").  Thus, plaintiff cannot merely rely on such statutes as grounds for jurisdiction over the United States in this matter.

## C.  Plaintiff's Claims Under Federal and State Environmental Statutes Fail to Secure Subject Matter Jurisdiction Over the United States

Plaintiff also attempts to obtain jurisdiction over the United States by alleging jurisdiction under several federal and state environmental statutes.  The Complaint, at  ¶¶ IIID, V and VI, states the plaintiff is representative of a class of people "who suffered pollution damage,

16

including bodily injury, [and] contamination of real or personal property" recoverable under the Oil Pollution Act of 1990, the Comprehensive Environmental Response Compensation and Liability Act, the Federal Water Pollution Control Act, the Clean Water Act, the Clean Air Act, the National Environmental Policy Act, the Toxic Substances Control Act, the Resource Conservation and Recovery Act, and state environmental statutes, including the Environmental Quality Act, the Air Control Law, the Water Control Law and the Oil Spill Prevention and Response Act.  Plaintiff's claims under each of these federal and state statutes fail for jurisdictional and substantive reasons.

These allegations and arguments in support of jurisdiction under the federal environmental statutes made by plaintiff here were analyzed and rejected by this Court in *Colleen Berthelot, et al. v. Boh Brothers Construction Co., L.L.C., et al*, (consolidated with CA 05-4182). Order and Reasons, Rec. Doc. No. 788, at 12-16, attached as Exhibit 10.   Moreover, the putative Louisiana environmental statutes listed by plaintiff are inapposite.  Inasmuch as the federal enactments cited by the plaintiff do not provide subject-matter jurisdiction over the action against the United States, the Court should decline to exercise supplemental jurisdiction over the claims, if any, that would be cognizable under state environmental statutes.  *See Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002).  Further, the United States Supreme Court has advised that "[n]eedless decisions of state law [by the federal courts] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law . . . .  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Accordingly, because none of plaintiff's

17

claims are cognizable under any of the federal laws listed in her Complaint, the Court should decline to exercise supplemental jurisdiction over the putative state-law claims and dismiss them pursuant to 28 U.S.C. § 1367(c)(3).[13]

### D. Plaintiff's Admiralty and Maritime Claims are Jurisdictionally Barred

Plaintiff asserts that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1333(1), and the Suits in Admiralty Act (SAA) (46 U.S.C. § 741, et seq.), "by virtue of the defendant's negligent dredging of navigable waterways, failure to contain navigable waters of the United States in the Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway, the Inner Harbor Navigation Canal (a/k/a "The Industrial Canal"), the London Avenue Canal and the Seventeenth Street Canal, and by virtue of defendant's defective and negligent design, construction, inspection, maintenance and operation of an entire navigable waterway system, including the bodies identified, supra . . .."  Compl. at ¶ V.  She further avers that the SAA is applicable because "defendant's having issued a permit or permits for the pre-Hurricane KATRINA dredging of the 17th Street Canal, which dredging or excavating activity was conducted on navigable waters of the United States with equipment utilized to actually perform the work being mounted on a vessel in navigation, namely a barge or barges."  First Amend. Compl. ¶ I.

---

[13]It should also be noted that none of the state environmental statutes provides an express private right of action against the United States that is applicable in this case.  Nor is such a right implied.  *See Cort v. Ash,* 422 U.S. 66, 78 (1975) (setting forth factors for determining when a private right of action is implicit in a statute).  Moreover, the United States has not consented to be sued under these statutes, which is perhaps the most fundamental reason why they are unavailing.  *See, e.g.,  Dep't of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 260-61 (1999); *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95 (1991); *United States v. Mitchell,* 463 U.S. 206, 212 (1983).

Federal admiralty jurisdiction for tort claims for damages will not lie under 28 U.S.C. § 1333(1) because the injury alleged by the plaintiff was not "'wholly' sustained on navigable waters." *See Grubart v. Great Lakes Dredge and Dock Co.*, 513 U.S. 527 (1995). Under the "traditional test for admiralty tort jurisdiction" not only was it necessary that the tort occurred in navigable waters but it was also necessary "that the injury . . . be 'wholly' sustained on navigable waters." *Grubart*, 513 U.S. at 531-32. The traditional rule was modified by the Extension of Admiralty Jurisdiction Act (AEA), which provides that "the admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury . . . caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." *Id.* at 532 (quoting 46 U.S.C. app. § 740). The injury alleged by the plaintiff, and the class she represents, was not "'wholly' sustained on navigable waters." *Id.*; cf. Compl. ¶ II (plaintiff's residence is located in a residential area of New Orleans known as "Lakeview"), ¶ III (describing proposed class as comprising "[c]itizens and/or residents" of the Parish of Orleans who suffered real property losses or damages). Thus, as *Grubart* makes clear, if admiralty jurisdiction exists here, if at all, it must exist pursuant to the AEA.

The plaintiff's allegation that the United States negligently failed to contain navigable waters of an entire navigable waterway system is nothing more than an attack on the design, construction and maintenance of the LPVHPP. This issue has already been analyzed and rejected by Judge Berrigan in the related case of *In the Matter of the Complaint of Ingram Barge*, 435 F. Supp. 2d 524 (E.D. La. 2006). Judge Berrigan's opinion analyzed in detail whether plaintiffs' allegations of defective design, construction, and maintenance of the levees and floodwall systems, including the plaintiffs' focus on the MRGO, meet the requirements for admiralty

jurisdiction pursuant to the SAA.  Judge Berrigan noted that the facts raised a "relatively novel question of whether admiralty jurisdiction could somehow extend to include claims involving land-based damage without any involvement of a vessel."  *Id.* at 528.  Judge Berrigan found that, "[a] levee is more akin to those structures like bridges, whose fixed land-based nature and non-maritime purpose have been found not to need the protection of a uniform body of federal law that is accorded vessels which roam the sea for business purposes."  *Id.* at 530.  Accordingly, Judge Berrigan concluded that the claims are not within the scope of admiralty jurisdiction because the structures whose failure is alleged to have proximately caused the plaintiffs' damages do not have a "substantial relationship to traditional maritime activity."  *Id.* at 528 (quoting *Grubart*, 513 U.S. at 534).  Further, the case law makes clear that the AEA would not be applicable because the plaintiff's injuries were caused by the alleged failure of the LPVHPP, not "by a vessel" and "her appurtences."  *Egorov, et. al., v. Terriberry, Carroll, et. al.*, 183 F.3d 453, 456 (5th Cir. 1999).  The substance of the plaintiff's allegation makes clear that her claims would arise under the FTCA and should be barred pursuant to the FCA, as well as the "due care" and discretionary function exceptions under the FTCA.

The plaintiff's assertion that this Court has jurisdiction over the subject matter of this action pursuant to the SAA "by virtue of the defendant's negligent dredging of navigable waterways" and because the defendant issued a permit for the dredging of the 17th Street Canal which was conducted on navigable waters of the United States while the equipment was mounted on a barge in navigation is also without merit.  Judge Berrigan implicitly found the essence of plaintiff's non-barge related cause of action was the negligent design, construction and maintenance of the waterways in question, and to characterize it as "negligent dredging" in an

effort to fit it into the AEA case law is disingenuous.  However, even as mischaracterized, it is

likely barred because Courts have found in a wide variety of circumstances that the Corps's

decisions on when and where to dredge are discretionary functions for which there is no subject

matter jurisdiction under the SAA.  *See Boston Edison Co. v. Great Lakes Dock and Dredge,* 423

F.2d 891, 896-97 (1st Cir. 1970); *Dunaway v. United States,* 136 F.Supp. 2d 576, 580 (E.D. La.

1999); *Bean Horizon Corp. v. Tennessee Gas Pipeline Co.,* 1998 WL 113935 (E.D. La. 1998);

*Manns v. United States,* 945 F.Supp. 1349, 1352-53 (D. Or. 1996); *In re Lloyd's Leasing Ltd.,*

764 F.Supp. 1114, 1137 (S.D. Tex. 1990); *Eazor Exp., Inc. v. United States,* 611 F.Supp. 197,

202 (E.D. N.Y. 1985); *Kommanvittselkapet Harwi v. United States,* 305 F.Supp. 882 (E.D. Pa.

1969), *aff'd,* 467 F.2d 456 (3rd Cir. 1970), *cert. denied*, 411 U.S. 931 (1973); *F&M Schaefer*

*Brewing Co. v. United States,* 121 F.Supp. 322 (E.D. N.Y. 1954); *cf. Canadian Pacific*

*(Bermuda) Ltd. v. United States,* 534 F.2d 1165, 1169-71 (5th Cir. 1976) (authorization to

maintain a waterway does not constitute general undertaking to conduct dredging activities at any

particular time or location).

  Whether and when to dredge any particular location of the waterway can be analyzed in

terms of the broad policies that led Congress to authorize the projects and that informed the

projects' design and construction.  Whether decisions about dredging were based on the

navigational ends of the waterway or on the alleged collateral impact of MRGO on adjacent

wetlands is immaterial.  Indeed, to the extent there is the potential for such impact, that "fact"

confirms the decisions on dredging implicate substantial policy concerns.  Inasmuch as dredging

decisions were "capable of being influenced by policy considerations," it must be presumed that

they are grounded in the same policy considerations that underlie Public Law No. 84-455 and

Public Law No. 77-675 which authorized MRGO's and GIWW's construction, respectively. *See Baldassaro v. United States,* 64 F.3d 206, 210-11 (5th Cir. 1995). Since the challenged dredging decisions were not cabined by statute or regulation, they are susceptible to policy analysis and are thus, discretionary functions barred under the SAA.

### E. The Stafford Act Precludes Jurisdiction

Plaintiff alleges that the United States "negligently, and with malfeasance, misfeasance and nonfeasance, failed to properly prepare for and respond to the needs of the People, both prior to and in the aftermath of Hurricane Katrina" in violation of the National Response Plan and Area Contingency Plan. Compl. ¶ XIV. The purpose of the National Response Plan [14] ("NRP") is to establish a comprehensive, national, all-hazards approach to domestic incident management across a spectrum of activities including prevention, preparedness, response, and recovery. (Exhibit 11, at 2). In implementing this plan, the NRP uses the foundation provided by the Homeland Security Act of 2002[15], Homeland Security Presidential Directive-5[16] (Exhibit 12), and the Robert T. Stafford Disaster Relief and Emergency Assistance Act (Stafford Act), 42 U.S.C. §§ 5121, et seq. Under the provisions of the Stafford Act, a governor may request the president to declare a major disaster or emergency if the governor finds that effective response to the event is beyond the combined response capabilities of the state and affected local governments. Once

---

[14] The National Response Base Plan and Appendices, attached hereto as Exhibit 11, appears on the Department of Homeland Security website *available at* http://www.dhs.gov/xprepresp/committees/editorial_0566.shtm.

[15] Pub. Law 107-296 (2002) (codified predominantly at 6 U.S.C. §§ 101-557).

[16] This Exhibit appears on the White House website *available at* http://www.whitehouse.gov/news/releases/2003/02/20030228-9.html.

the president declares a disaster or emergency of national significance, federal support to states is

delivered in accordance with relevant provisions of the Stafford Act.  On August 27, 2005,

Louisiana Governor Babineaux Blanco requested that President George Bush declare an

emergency for Louisiana due to Hurricane Katrina and requested federal assistance under the

Stafford Act.  Exhibit 13[17].   In response, President Bush acquiesced to her request.  Exhibit 14,

at 1[18].

  The Stafford Act provides that "[t]he Federal Government shall not be liable for any

claim based upon the exercise or performance of or the failure to exercise or perform a

discretionary function or duty on the part of a Federal agency or an employee of the Federal

Government in carrying out the provisions of this Act."  42 U.S.C. § 5148.  Indeed, Congress

considered the type of claims presented herein by the plaintiff when it immunized the United

States from liability when its employees were performing disaster relief.  *See Rosas v. Brock*, 826

F.2d 1004, 1008 (11th Cir. Fla. 1987)) (the legislative history of the Act reveals that Congress

was concerned not only about the possible costs of paying damages, but also the certain costs of

defending suits arising from government relief).

It is clear from the statute and the legislative intent that no liability attached to the

discretionary acts of federal employees who prepared for or performed disaster relief prior to,

during, or after Hurricane Katrina.  Moreover, the plaintiff has not provided a single instance of a

non-discretionary act performed by a federal employee in furtherance of Hurricane Katrina

---

[17] This Exhibit appears on the State of Louisiana web site *available at* http://www.gov.state.la.us/index.cfm?md=newsroom&tmp=detail&articleID=778.

[18] 70 Fed. Reg. 53238 (Sep. 7, 2005).

disaster relief that caused her damages.  Accordingly, the plaintiff has no cause of action under

the Stafford Act and her claims should be dismissed.

## CONCLUSION

For these reasons, the United States' motion to dismiss should be granted.

Respectfully submitted,

 PETER D. KEISLER
Assistant Attorney General

C. FREDERICK BECKNER III
Deputy Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch


s/ James F. McConnon, Jr.
JAMES F. MCCONNON, JR.
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C.  20044
(202) 353-2604
(202) 616-5200 (fax)
jim.mcconnon@usdoj.gov
Attorneys for Defendant United States

October 23, 2006

24

## CERTIFICATE OF SERVICE

I, James F. McConnon, Jr., hereby certify that on October 23, 2006, I served a true copy of  "United States' Memorandum in Support of its Motion to Dismiss" upon all counsel of record by ECF, electronic mail, or first class mail.


/s/ James F. McConnon, Jr.
James F. McConnon, Jr.