IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

In re: KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

THIS DOCUMENT RELATES TO:
PERTAINS TO:
06-1672   Chehardy
06-1673   Chehardy
06-1674   Chehardy

: CIVIL ACTION NO.:
: 05-4182 SECTION "K"(2)
:
: CONS. KATRINA CANAL
:
: JUDGE DUVAL
:
: JUDGE WILKINSON
:

## THE CHEHARDY REPRESENTATIVE POLICYHOLDERS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' RULE 12(B)(6) MOTIONS TO DISMISS

Representative Policyholders Gladys Chehardy, Daniel and Jacquelyn Fontanez, Larry and Glendy Forster, Kenneth and Judy Maier, Randy and Lori Gervais, Andre and Marlin Mauberret, Debbie and Dave Strawn, Stephanie and Brad Boyd, New Orleans Flooring Supply, Inc., Patricia Brown, Marie Fatheree, Katrina Daniels, Lionel and Edna Jones, Karen Lewis, Shane Sylvester, Austra Zapata, Sabrina Perkins, Eldridge Pollard, Michael Peterson, Wendell Glation and Mack Barham (collectively, "the Representative Policyholders"), by and through their undersigned counsel, submit this Supplemental Memorandum in Opposition to the Motions to Dismiss filed by the Insurance Company Defendants in these actions.

In addition to the authority cited in their Memorandum in Opposition to Defendants' Rule 12(b)(6) Motions, Representative Policyholders incorporate the additional cases cited herein, which establish that the undefined term "flood," as used in

Defendants' so-called "water damage" exclusion, has been held to solely encompass naturally-occurring events and not man-made occurrences such as the failure of the New Orleans Levee System. For example, in Ebbing v. State Farm Fire & Cas. Co., 1 S.W.3d 459 (Ark. Ct. App. 1999), the court held that State Farm's so-called "water damage" exclusion did not exclude damage from water released from a bust water main. Id. at 462. The policy language in Ebbing was similar to the language contained in State Farm's homeowners' policies in the instant case, seeking to exclude:

> (C) Water Damage, meaning:
>
> > (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, all whether wind driven or not . . .

Id. The court held that the "common usage" of the undefined term "flood" "applies to water occasioned from natural events" rather than man-made events such as a failed or burst water main. Id.

Similarly, in Mellon v. Hingham Mutual Fire Insurance Co., 472 N.E.2d 674 (Mass. App. Ct. 1984), the court held that a loss resulting from a burst drainage pipe was not excluded by a so-called "water damage" exclusion because the loss was caused by an "accidental break rather than an natural occurrence" and that such "accidental break" was the precise type of risk covered by the "all-risk" policy purchased by the homeowner. Id. at 675. As the Mellon court explained, an "all-risk" policy is intended to insure against a "fortuitous" event even if the "fortuitous" event is not specified in the policy. Id. Moreover, the court noted that if the insurance company had intended to exclude coverage for the "fortuitous" event of a burst pipe, "it should have so

stated with precision and clarity" by using "more appropriate language" in the exclusion clause." Id. at 476.

Likewise, the court in Popkin v. Security Mutual Ins. Co. of New York, 367 N.Y.S.2d 492 (N.Y. App. Div. 1975), held that losses resulting from a ruptured water main in the City of New York were not excluded under a similarly worded "water damage" exclusion because the "ordinary meaning" of the term "flood" "does not encompass water damage sustained as a result of a broken water main." Id. at 495. The relevant policy language sought to exclude damages caused by "'flood, surface water, waves, tidal waves, tidal water or tidal wave, overflow of streams or other bodies of water or spray from any of the foregoing, all whether wind driven or not.'" Id. at 494. The court in Popkin looked to the dictionary definition of the word "flood" which defined the term as "a body of moving water (as a river or stream) esp. when large . . . the flowing in of the tide . . . a rising and overflowing of a body of water that covers land not usually under water . . . an outpouring of considerable extent . . . a great downpour.'" Id. (quoting Webster's Third New International Dictionary (1962)). Moreover, the court held that:

> Even assuming that the word "flood" is to be given a more generic meaning as an overflowing abundance or a great quantity, it must be noted that the other terms utilized in the exclusionary clause containing such word relate to natural phenomena. "Where comprehensive words in a contract are followed by an enumeration of specific things, under the rule of Ejusdem generic the things coming within the comprehensive words will be limited to those of a like nature to those enumerated."

Id. (quoting 10 N.Y. Jur. Contracts § 217). Based upon both the dictionary definition of "flood" and the nature of those naturally-occurring phenomena enumerated in the

language of the policy, the court held that losses from man-made occurrences were not "flood" and, thus, not excluded.

Finally, in Ferndale Development Co., Inc. v. Great American Ins. Co., 527 P.2d 939 (Colo. App. 1974), the court held that the policy terms "flood" and "surface water" did not include water escaping from burst water mains. Id. at 940. The court stated that if the insurance company "had wished to exclude such losses from the coverage of its policy, it could have done so by adequately defining the two terms to apply to such cases" and held that in light of failing to do so, the undefined terms "flood" and "surface water" were ambiguous and to be construed against the insurer. Id. at 941.

Here, the Insurance Company Defendants seek to exclude coverage under the "all-risk" policies they sold to Representative Policyholders for the fortuitous event of the rupture, breaking or failure of the New Orleans levees. In so doing, the Insurance Company Defendants seek to provide an after-the-fact definition of the undefined policy term "flood" to include man-made occurrences. As the above-cited authority demonstrates, the term flood, in its common usage, refers to naturally-occurring events and not man-made events such as the failure of man-made levees. Moreover, similar to the policy in Popkin, the term "water damage" is defined in Defendants' all-risk policies with enumerated examples of naturally-occurring events or phenomena and, as such, the included term flood included in such enumeration is to be similarly construed as limited to naturally-occurring events. Popkin, 367 N.Y.S.2d at 495.As such, any losses caused by the failure of the New Orleans levee system is not flood under any common usage of that term or within the context of the definition of

"water damage" in Defendants' all-risk policies. For these reasons, and all of the reasons set forth in the Representative Policyholders' Memorandum in Opposition, Defendant's policies do not exclude coverage for losses caused by the failure of the New Orleans levees or, in the alternative, are ambiguous and require the introduction of extrinsic evidence to determine the intent of the parties. As such, Defendants' Motions to Dismiss should be denied.

    Respectfully submitted,

    ANDERSON, KILL, & OLICK. P.C.


    /s/ John N. Ellison
    John N. Ellison *(Pro Hac Vice)*
    Darin J. McMullen *(Pro Hac Vice)*
    1600 Market Street
    Suite 2500
    Philadelphia, PA 19103
    Telephone: (215) 568-4202
    Facsimile: (215) 568-4375

    and-

    Calvin C. Fayard, Jr. (La. Bar Roll No. 5486)
    FAYARD & HONEYCUTT, APC
    519 Florida Avenue, SW
    Denham Springs, LA 70726
    Telephone: (225) 664-4193
    Facsimile: (225) 664-6925

    and-

    Drew Ranier (La. Bar Roll No. 8320)
    N. Frank Elliot III (La. Bar Roll No. 23054)
    Larry D. Dyess (La. Bar Roll No. 19555)
    RANIER, GAYLE & ELLIOT, L.L.C.
    1419 Ryan Street
    Lake Charles, LA 70601
    Telephone: (337) 494-7171

Facsimile: (337) 494-7218

and-

Joseph J. McKernan (La. Bar Roll No. 10027)
MCKERNAN LAW FIRM
8710 Jefferson Highway
Baton Rouge, LA 70809
Telephone: (225) 926-1234
Facsimile: (225) 926-1202

and-

Joseph Bruno (La. Bar Roll No. 3604)
David S. Scalia (La. Bar Roll No. 21369)
BRUNO & BRUNO L.L.P.
855 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775

and-

Matt Schultz *(Pro Hac Vice)*
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Telephone: (850) 435-7140
Facsimile: (850) 436-6123

**ATTORNEYS FOR REPRESENTATIVE POLICYHOLDERS**