FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 OCT 31   AM 7: 43

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION |
| | | NO. 05-4182 |
| ******************************************* | * | SECTION "I" |
| PERTAINS TO MRGO, *Robinson* (06-2268) | * * | MAGISTRATE (4) |
| ******************************************* | | |

### CIVIL DISTRICT COURT PLAINTIFFS'
### AMICUS CURIAE BRIEF IN OPPOSITION TO THE UNITED STATES' MOTION
### TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

MAY IT PLEASE THE COURT:

**I.      PARTIES APPEARING AMICUS CURIAE.**

Appearing *amicus curiae* are the proposed class representatives in the following lawsuits

which are presently before the Civil District Court for the Parish of Orleans, State of Louisiana:

(1)      *Claude W. Baudot, Dyane Lewis and Sun Fowler v. Sewerage and Water Board of New*

*Orleans, et al.,* No. 06-9718 Division "J-13";

(2)      *Audrey Robinson, David Bell and Jacinta Bell v. Sewerage and Water Board of New*

Page 1 of 10

Fee_____
Process_____
X Dktd_____
✓ CtRmDep_____
Doc. No._____

*Orleans , et al.*, No. 06-9726 Division "A-5";

(3)    *Ray Rieth, Nancy Rieth, Crescent City Property Redevelopment, L.L.C., and Side-By-Side Redevelopment, L.L.C. v. Sewerage and water Board of New Orleans, et al.*, No. 06-9744 Division "I-14";

(4)    *Gwendolyn Diggs, Peter Waring and Audrey Gates v. Sewerage and water Board of New Orleans, et al.*, No. 06-9753 Division "F-10"; and

(5)    *Lisa Rodriguez, Anthony Russo, Curtis Amann and Laura Amann v. Sewerage and water Board of New Orleans, et al.*, No. 06-9763 Division "D-16".[1]

## II.    ARGUMENT.

The parties plaintiff in the above-identified Civil District Court lawsuits – who have not raised claims against the U.S. Government or alleged that the MRGO caused their damages – respectfully submit this brief *amicus curiae* in opposition to the United States' July 26, 2006 Motion to Dismiss pursuant to Fed..Civ.P. 12(b)(6).[2]   In its motion, the Government claims it is immune from suit under 33 U.S.C. § 702c.

## 1.    What is a "levee"?

The threshold genuine issue of material fact is not whether the linear structure on the south-west side of the MRGO failed.[3]   That fact is beyond contest.  The issue is *what* failed.

---

[1] On October 17, 2006, the Clerk entered CSX Transportation, Inc.'s Notice of Removal in another Civil District Court suit filed by undersigned counsel, *Judy M. Paul and Willie Mackie, Sr. V. Sewerage and Water Board of New Orleans, et al.*, No. 06-9726 Division "A-5". This removed case was assigned civil action number 2:06-cv-7682.

[2]*See* Docket number 722.

[3] The MRGO approaches the Intracoastal Waterway from the southeast near the western shore of Lake Borgne.  This linear soil structure is on the left-hand side of vessels approaching

As the Court knows, "levee" was defined recently by Chief U.S. District Judge Helen G. Berrigan. She wrote:

> "A levee is a structure fixed to the land whose fundamental purpose is to protect the land-based community from flood waters."

See In the Matter of the Complaint of Ingram Barge Company, 435 F.Supp. 2d 524 (E.D. La. 2006), Lexis 44838 at page 14.

However, was what the Government now calls a "hurricane protection levee" actually a "levee"? This seems akin to a response made during a deposition by former U.S. President William J. Clinton,[4] where the meaning of a single word was debated. Here, the Government's motion to dismiss tort claims depends in large part upon the meaning of "levee." Because the Government says it is entitled to immunity under 33 U.S.C. § 702c, a factual determination must be made whether the failed MRGO structure was actually a "levee" within, *e.g.*, Judge Berrigan's definition.

If the linear structure along one side of the MRGO was not fixed to the land for the *fundamental purpose* of protecting the land-based community from flood waters, then it was not a "levee." If the Government contests this simple but important point, its resistance will show that a genuine issue of material fact exists. The immunity only conferred *on a case-by-case basis* by 33 U.S.C. § 702 c is not a free pass for dismissal under Fed.R.Civ.P. 12(b)(1).

**2.     Discovery must be afforded before dismissal can be considered.**

Discovery should be afforded to Plaintiffs before the Court decides whether the United

---

New Orleans from the Gulf of Mexico. On the right side is nothing but low marsh land.

[4] President Clinton said his answer *"depended upon what the meaning of the word is ........ is. "*

States and the U.S. Army Corps of Engineers are entitled to immunity under 33 U.S.C. § 702 c. Such discovery should inquire:

1.   Was the linear structure that failed during Hurricane Katrina's approach merely a *linear deposit* of dredged-out sand and earthen spoils created when the MRGO was excavated?[5]

2.   Was the MRGO linear structure capable of withstanding lateral hydraulic pressure (*i.e.*, like Mississippi River levees during seasonal high river stages)?   In other words, was it built and did it act like a "levee"?

3.   Was the MRGO structure originally created as an aid to navigation or as an aid to flood control?

4.   Was the MRGO structure *physically connected in any way* to any flood control project?

5.   If the linear structure wasn't a levee (*i.e.*, a flood control project) and the MRGO isn't physically connected to anything that is part of a flood control project, what is the Government's *factual* basis for its motion?

6.   Has the MRGO *ever* been used historically for purposes of flood control?

7 .   Indeed, *can* the MRGO be used for flood control?

In <u>Central Green v. United States,</u> 177 F.3d 834 (9th Cir.1999), *reversed* 531 U.S. 425, 121 S.Ct. 1005, 1012 (2001), a § 702c flooding immunity case, the Supreme Court reversed the Ninth Circuit and remanded the case because the question of immunity *was decided on the pleadings*, using an incorrect test and *without benefit of an evidentiary hearing or further factual*

---

[5] For example, the Audubon Park Zoo's famous (for being the highest land point in New Orleans) "Monkey Hill" is merely a pile of dirt remaining from excavation of Audubon Park's rear lagoon.  The Civil District Court plaintiffs suggest that discovery will prove that the MRGO "levee" was simple a linear pile of dirt unsuited utterly to resisting lateral hydraulic forces.

*development*. That's exactly what's happening here: there's been no factual development and the Government seeks dismissal on the face of the pleadings under Fed.R.Civ.P. 12 (b)(1).

3.      **The U.S. Fifth Circuit has already identified the purpose of the MRGO.**

The Fifth Circuit explained the purpose of the MRGO thirty-five years ago (1971) in the wake of a Hurricane Betsy, MRGO-related disaster in St. Bernard Parish (in September 1965). It stated:

> "The outlet enables ships from ports east of the Mississippi River to head north for New Orleans at Breton Sound, many miles east of the river mouth, at a savings of sixty miles. Ships thus pass from Breton Sound through the outlet, into the Industrial Canal and then into the Mississippi River."

*See* Graci v. United States, 456 F.2d 20, 22 (5th Cir. 1971).

This says it all. MRGO exists to spare west-bound vessels the need to sail to Southwest Pass and take the longer upriver path to New Orleans. Not a word was said about flood control. This explanation does not fit – in whole or part – within the confines of Judge Berrigan's definition that "a levee is a structure fixed to the land whose fundamental purpose is to protect the land-based community from flood waters."

4.      **The MRGO is not "physically connected" to any federal flood control project.**

Even a cursory examination of local maps reveals that the MRGO is simply a *de facto* arm of the sea and subject to the ebb and flow of the tides. It is not physically connected to any flood control project. It is not a conduit for flood control outflow of any water. It doesn't flow downhill. The MRGO is only a possible *destination* for flood waters which have to drain somewhere else first. No one contends that the Gulf of Mexico is a flood control project, so why would the MRGO be different?

5.     **The storm surge which flowed up the MRGO during Hurricane Katrina did not flow "through a federal facility that was designed and operated, at least in part, for flood control purposes."**

As this Court knows, and as recited in so many briefs already filed, the Flood Control Act of 1928 was passed in response to the terrible Mississippi River flood of 1927.[6] Incident to the Act, Congress enacted an immunity provision which stated that:

"no liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place."

*See* 427 Stat. 535, as amended, 33 U.S.C. §§ 702c.

In Central Green v. United States, 177 F.3d 834, 839 (9th Cir.1999), *reversed* 531 U.S. 425, 121 S.Ct. 1005 (2001), the narrow question presented was whether those words encompassed *all* the water that flowed through a federal facility that was designed and operated, at least in part, for flood control purposes. The Supreme Court held that the United States was not necessarily entitled to immunity, even though the canal at issue was part of government project that had flood control as *one* of its congressionally authorized purposes. 112 S.Ct. at 1012.

Although the Civil District Court plaintiffs believe that the Fifth Circuit resolved this issue in Graci, for purposes of this brief they suggest that a genuine issue of material fact exists as to whether the storm surge which obliterated the MRGO linear structure and drowned St. Bernard Parish (and other nearby areas) was water "contained in or carried through a federal flood control project for purposes of or related to flood control."[7] Because Graci says the MRGO

---

[6] The Act's original language limited its scope to the Mississippi River.

[7] The Government's concept of its own immunity is so broad that it would escape liability for rainwater trapped within federally-funded levees.

is a maritime short-cut, there is no governmental immunity under § 702c.

**6.      The Government isn't immune under the "takings doctrine."**

The "takings" argument applies to property damage claims and not personal injury claims. Nowhere does the language of § 702c bar a "takings" claim, because that would violate the Fifth Amendment's constitutional mandate that government pay just compensation for private property that it takes. In <u>United States v. Cress</u>, 243 U.S. 316 (1917), the Supreme Court held that a taking occurs when flooding is a permanent condition that will frequently reoccur.[8] <u>Id</u>. at 327-28.

The big question is, how many years of property damage must *tens of thousands* of property owners endure before they can prove that flooding from MRGO will be "inevitably recurring." Here, of course, its already reoccurred.[9]

**7.      The Government can't be immune from both personal injury liability and property damage liability.**

The Government argues that the failed MRGO "levee" was actually part of a comprehensive "hurricane protection" system funded by Congress and that § 702c immunizes it from tort liability. Unfortunately, the Government can't have things both ways. If it is immune

---

[8] What is "frequent"? The MRGO "levee" collapsed during Hurricane Betsy in 1965 and did so again during Hurricane Katrina in 2005. Is forty years *unfrequent* when the devastation takes a decade or more to repair? And is this forty-year period between catastrophes merely luck? Hurricane Rita, like Hurricane Katrina two weeks before, was a Category Four-Five storm. It flooded the Lower Ninth Ward a second time. What does its passage so soon after Hurricane Katrina say about frequency?

[9] There are a plethora of statistical tables calculating the frequency with which the New Orleans area can expect to be struck by hurricanes. These statistics would not exist if future hurricane strikes were not inevitable.

from *personal injury* claims, it is nevertheless liable for *property damage* claims because the catastrophic failure of the MRGO "levee" has occurred twice.  Must we wait until this disaster happens a third time in 2007, or 2009, or 2019?

**8.    What about <u>Denham</u>?**

Lastly, there is <u>Denham v. United States</u>, 834 F.2d 518 (5th Cir. 1987), where the Fifth Circuit could have applied the § 702 immunity but, instead, ignored it.  In <u>Denham</u>, the plaintiff recovered under the Federal Tort Claims Act after he was paralyzed after diving into a shallow area of a flood control reservoir.  <u>Id</u>. at 519.  Despite the fact that the plaintiff's injuries occurred in waters that were part of a flood control project, the Fifth Circuit upheld an award of damages against the Government under the Federal Tort Claims Act.  <u>Id</u>. at 523.

**IV.    CONCLUSION.**

The Government's motion to dismiss should be denied on any or all of the many grounds discussed in this brief:

1.    <u>Graci</u> makes it clear the MRGO's sole purpose is a maritime short-cut, not a flood control project.

2.    Controlling Supreme Court law in <u>Central Green</u> forbids dismissal on the face of the pleadings without benefit of an evidentiary hearing or further factual development.

3.    A genuine issue of material fact  exists whether the linear spoils pile along the southwest bank of the MRGO was a "levee."

4.    The MRGO is not physically connected to any flood control project.  It would have failed the "not wholly unrelated" test even before the Supreme Court reversal in <u>Central</u>

Green.[10]

5.    The Hurricane Katrina storm surge did not flow "through a federal facility that was

       designed and operated, at least in part, for flood control purposes."

6.    The 2005 Hurricane Katrina MRGO flooding disaster is a "carbon copy" of the 1965

       Hurricane Betsy MRGO flooding disaster.  This frequency is enough to support property

       damage claims based upon a "taking."

7.    The Government is still liable for property damage claims because they are not excluded

       by § 702c.  It can't be dismissed.

8.    Denham shows that § 702c doesn't bar personal injury awards in this Circuit.

                                              Respectfully submitted,



                                              RICHARD M. MARTIN, Bar # 8998
                                              416 Gravier Street
                                              New Orleans, LA 70130
                                              Phone: (504) 586-0000
                                              Fax:    (504) 522-8423


                                              JOHN J. CUMMINGS, III, Bar # 4652
                                              **CUMMINGS & CUMMINGS**
                                              416 Gravier Street
                                              New Orleans, LA 70130
                                              Phone: (504) 586-0000
                                              Fax:    (504) 522-8423

---

[10]The Fifth Circuit applied the "not wholly unrelated" test in Boudreau v. United States, 53 F.3d 81, 86 (5th Cir. 1995).  The Supreme Court's decision in Central Green eliminated it.

SUZETTE BAGNERIS, Bar # 2224
3520 General DeGaulle Drive, Suite 4070
New Orleans, LA 70114
Phone: (504) 368-1911

ARTHUR MORRELL, Bar # 1494
J.P. MORRELL, Bar # 29635
1660 Treasure Street
New Orleans, LA 70119
Phone:   (504) 261-0535

RICHARD A.WEIGAND, Bar # 13324
WEIGAND & LEVENSON
427 Gravier Street
New Orleans, LA 70130
Phone:   (504) 568-1256
Fax:      (504) 525-3368

DEBORAH SULZER, Bar # 19806
650 Poydras Street, Suite 2635
New Orleans, LA 70130
Phone: (504) 299-3380
Fax:      (504) 299-3385

Of Counsel:

WILLIAM C. GAMBEL, Bar # 5900
**MILLING BENSON WOODWARD, LLP**
909 Poydras Street, Suite 2300
New Orleans, LA 70112
Phone: (504) 569-7210
Fax:      (504) 569-7001