UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PONTCHARTRAIN BAPTIST CHURCH; ARTHUR C. SARGENT; LUCY T. SARGENT; PAMELA YOUNG SMALLPAGE; RICHARD MAITLAND SMALLPAGE, JR.; Mr. & Mrs. H. J. BOSWORTH; ROTHFOS CORPORATION AND INTERAMERICAN COFFEE, INC.; AND NOBLE AMERICAS CORPORATION | * * * * * * * * * | CIVIL ACTION NO. 06-6642<br><br>06-6642 |
| VERSUS | * * * | SECTION: "K"<br><br>MAG. 2 |
| THE SEWERAGE AND WATER BOARD OF NEW ORLEANS; THE CITY OF NEW ORLEANS; THE BOARD OF COMMISSIONERS FOR THE ORLEANS LEVEE DISTRICT; MODJESKI AND MASTERS, INC., BOH BROS CONSTRUCTION COMPANY, LLC; GULF GROUP, INC.;C.R. PITTMAN CONSTRUCTION COMPANY, INC.; AND JAMES CONSTRUCTION GROUP, L.L.C. | * * * * * * * * * | JUDGE<br>STANWOOD R. DUVAL, JR. |

****************************************

## MOTION TO REMAND WITH INCORPORATED MEMORANDUM

**NOW INTO COURT**, through undesigned counsel, and pursuant to Fed. R. Civ. P.7(b) and Local Rule LR 7.7W, comes plaintiffs (hereinafter referred to as "Plaintiffs") Pontchartrain Baptist Church, Arthur C. & Lucy T. Sargent, Pamela Young Smallpage and Richard Maitland Smallpage, Jr., Mr. & Mrs. H.J. Bosworth, Rothfos Corporation, InterAmerican Coffee, Inc., Noble Americas Corporation, and files this Motion to Remand and the incorporated Memorandum in Support of Motion to Remand.

We recognize that this Honorable Court has rendered opinions and rulings on Notices To Remove involving 28 U.S.C. 1442(a)(1) in other related cases, namely, on August 9, 2006 in

-1-

In re KATRINA BREACHES CONSOLIDATED LITIGATION (C.A. No. 05-4181), (Doc 820), which suit was initially remanded by order of this Court on June 2, 2006 (Doc 36) in *Harvey v. The Board of Commissioners*, (C.A. No. 05-4568) where this Court declined to exercise federal jurisdiction for the reason (1) that the Board of Commissioners of the Orleans Levee District, Parish of Orleans ("OLD") did not act under the direction of a federal officer to build or design structures; (2) declined to exercise *federal question jurisdiction* (emphasis ours) because the claims against "OLD" focused on whether "OLD" had the ability to act apart from the Corps or inconsistent therewith to fulfill its state law duties; and (3) that a federal defense did not give rise to jurisdiction.

This Court, subsequent to the above opinion and ruling, rendered a second opinion *Vanderbrook v. State Farm Fire & Cas. Co.*, (C.A. No. 05-6323 "K" (2)) applying the same analysis to claims that rested solely on Louisiana law and duties owed to plaintiffs under La. Rev. Stat. 38:281, and La. Rev. Stat. 38:301(A)(1) which allow the state of **Louisiana to construct and maintain levees and under La. Rev. Stat. 38:301(B)(1) regarding care and inspection of levees.**

Those Louisiana claims, the Court stated, were based on the concept of *garde* found at La. Civ. Code Ann. art. 2317 and negligence under La. Civ. Code Ann. Art. 2315.[1] This Court likewise found that "OLD" was not under sufficient supervision of the Corps of Engineers to create federal officer jurisdiction, and likewise that a federal defense to a state law claim did not create federal question jurisdiction. This Court refused to allow removal in another matter

---

[1] Prior to the Summer, 1996 legislative session, Articles 667 and 2317 of the Louisiana Civil Code, among other Articles, were amended.

*Berthelot v. Boh Brothers Construction Co., L. L. C.,* 2006 WL 1984661 (E.D. La. June 1, 2006) (*Vanderbrook* remand opinion).

In *Berthelot* this Court found that "OLD" was the beneficiary of a project over which it had no construction duties of any sort (p. 6) and that it partnered with the United States government to pay for a portion of the construction and to hold the government "free from damages due to the construction works." [2]

## PLAINTIFFS STATE LAW CLAIMS

In this matter it is important, at the outset, to state who plaintiffs **have not sued in the state court action.** They are: (1) The United States, (2) any agency thereof, (3) any officer of the United States. None has been sued in any official or individual capacity for any acts under color of such office. Accordingly, under 28 U.S.C. 1442(a)(1), the sole issue on remand before this Court is whether the State "saving to suitors maritime claims" and others asserted can be removed by defendant contractor, James Construction Group, L.L.C., whose alleged contract is with a non-party and, whether such contractor qualifies as a "person acting under that officer" language in 28 U.S.C. 1442(a)(1).

## THE STATE COURT PETITION

The State court Petition asserts maritime and non-maritime tort and contract actions for (a) inverse condemnation, (b) absolute and general liability, (c) and general maritime law tort claims, all of which plaintiffs suggest are "admiralty and maritime claims" under the "savings to suitors clause" 28 U.S.C. 1332(1). See *Scarborough v. Clemco Industries,* 391 F.3d 660 (5th Cir.

---

[2] Angelo Iafrate Construction Corporation, L.L.C. in this matter is the contract party which Movant alleges (unsupported) is an a.k.a.

2004)

It is well established that general maritime law claims saved to suitors are, of themselves, not removable. See, e.g., *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 377-379, (1959); *Morris v. T. E. Marine Corps,* 344 Fed. 3rd 439, 444 (5th Cir. 2003). Plaintiffs recognize that the savings to suitors clause does not guarantee plaintiffs a non-federal forum, or limit the right of a defendant(s) to remove such actions to federal court when some basis for federal jurisdiction exist other than Admiralty. In *Tennessee Gas Pipeline v. Houston Cas. Ins.,* 87 Fed 3rd 150,153(5th Cir. 1996), the Fifth Circuit dealt with provisions in the Outer Continental Shelf Lands Act (OCSLA), which provides in the Act itself, an independant basis of federal jurisdiction which is separate from admiralty jurisdiction, *permitting removal of both general maritime law claims and OCSLA claims*. In that case which involved a vessel allision with a fixed platform (clearly a general maritime law claim) the Court pointed out that OCSLA in 43 U.S.C. 1332(1) declares in the Act that the subsoil and seabed...are subject to the jurisdiction of the United States. But the statute was not intended to displace maritime law. Thus, the case is distinguishable from 28 U.S.C. 1442(a)(1) because that statute, we suggest in this context, does not contains an express jurisdictional grant. See also, *Texaco Exploration and Production, Inc., et. al. v. Amclyde* 2006 AMC 1297 (5th Cir. 2006).

Moreover, the Judicial Improvement Act of 1990 (Public Law no. 101-650, 104 Stat. 5089) amended the provisions of 28 U.S.C. 1441(c) so that a separate and independant claim or cause of action now must fall within the federal question jurisdiction conferred in 28 U.S.C. 1331. Under *Romero,* supra p. 3 and In re Dutile, 935 F.2d 61, 63 (5th Cir. 1991), the premise that federal courts do not have "federal question jurisdiction" over general maritime law claims is

established. Saving to suitors claims cannot be removed under 28 U.S.C. 1441(b) on the sole basis that the maritime claims presents a federal question. Movant's asserted removal on the basis or a federal question in the Notice or Removal therefore fails.

The Admiralty claims asserted in the State "savings to suitors petition" <u>Pontchartrain Baptist Church v. The Sewerage and Water Board of New Orleans et. al.</u> are similar to those alleged in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 213 U.S. 527(1995) itself. There jurisdiction was asserted in Admiralty under 28 U.S.C. 1333(1) and under the Extension of Admiralty Jurisdiction Act, 41 U.S.C. App. Sec. 740("AEA") in that case and the same basis for jurisdiction is asserted in Plaintiffs state court action here.

*Grubart* was a case where in 1991 Great Lakes Dredge & Dock, Co., (<u>like T. L. James Construction Co., L.L.C. , assuming arguendo that is the contracting party with the Corps.</u> (See Exhibit "A")) was a contractor. Great Lakes undertook performance of a contract with the City of Chicago to replace pilings around the piers of several Chicago River bridges. Great Lakes deployed a tug and two barges to carry out the work, which involved the use of a barge-mounted crane (a vessel) to pull up the old pilings and drive new ones. See, <u>Stewart v. Dutra</u>, 125 S.Ct. 1118 (2005). Seven months after completion of their work, the walls or ceiling of a freight tunnel running *under the river* (emphasis ours) collapsed allowing water to flow to downtown Chicago basements. Many of the Chicago citizens sued Great Lakes and the City in state court. In the state court, it was alleged that the pile driving activities had negligently weakened the tunnel and the City had negligently maintained it. Great Lakes invoked Admiralty jurisdiction in federal court by filing a Limitation of Liability Proceeding under the Limitation of Vessel Owner's Liability Act 46 U.S.C. app. 183 et. seq. (See also Fed. R. Civ. P. Supp. Rule F.) The case went to the

United States Supreme Court on the issue of whether or not a federal admiralty court had jurisdiction over claims that Great Lakes' faulty work caused the damages. The *Grubart* Supreme Court provided an affirmative answer to the question posed and held the claims against Great Lakes satisfied the requisite for Admiralty jurisdiction.[3] Importantly the court stated:

> "Likewise, in *Foremost*, we said that "[b]ecause the 'wrong' here involves the negligent operation of a vessel on navigable waters, we believe that it has a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction...." 457 U.S., at 674, 102 S.Ct. at 2658. By using the word "involves," we made it clear that we need to look only to whether one of the arguably proximate causes of the incident originated in the maritime activity of a tortfeasor the allegedly wrongful activity will "involve" such traditional maritime activity and will meet the second nexus prong. Thus, even if we were to identify the "activity giving rise to the incident" as including the acts of the City as well as Great Lakes, admiralty jurisdiction would nevertheless attach. That result would be true to *Sisson's* requirement of a "substantial relationship" between the "activity giving rise to the incident" and traditional maritime activity. *Sisson* did not require , as the city in effect asserts, that there be complete identity between the two. *The substantial relationship test is satisfied when at lest one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident.* (Emphasis ours)

## **PLAINTIFFS STATE COURT PETITION**

In the instant case, the Notice of Removal states [(1) unnumbered (p2)] that plaintiffs seek to recover damages allegedly resulting from "levee breaches/ failures" during Hurricane Katrina at the 17th Street Canal, the London Avenue Canal and the Orleans Avenue Canal. Plaintiffs challenges the legal accuracy and sufficiency of that mixed statement of law and fact. The legal basis set forth in the petition is that these three outfall canals and bridges and the acts and works and use of vessels and appurtenances to remove, repair and replace the same in connection with work **on them from 1980 to present** i.e. the bridge activities and the dredging

---

[3] The court found the activity giving rise to the incident should be characterized as repair and maintenance work on a navigable waterway performed from a vessel.

of the outfall canals were proximate causes of damages.

In the *Romero* case, supra, the Supreme Court made clear that "federal question jurisdiction" raised in the Notice of Removal does not give rise to federal jurisdiction. In *Romero*, supra, the Supreme Court held that general maritime claims do not fall within the federal question jurisdiction of the federal courts (p. 387).

It is plaintiffs legal position that there are defects in the Notice of Removal and Declaration. The removal of "maritime savings to suitors claims" legally and procedurally falls under 28 U.S.C. 1441(a). Additionally, it is plaintiff's position that the Notice and the Declaration do not state with specificity what, in detail, Movant was doing for a federal officer "to justify removal, if appropriate, under 28 U.S.C. 1442(a)(1)".

Additionally to allow a contractor (a private person) to remove the State suit and assert under 28 U.S.C. 1442(a)(1) the implied defense of immunity when neither the United States, an agency thereof nor a federal officer are sued and use Supplemental Jurisdiction 28 U.S.C. 1367 to bring all defendants into federal court (some whom this Court has ruled cannot remove) is, to use the sports term, "an end around." Does a statutory procedural remedy trump a United States Constitutional basis for concurrent and original jurisdiction deriving from Article III section 2 and present law on saving to suitors removal? In *Northern Insurance Company of New York v. Chatham County, Georgia*, 126 S.Ct. 1689 (2006), the Supreme Court held that the County, a bridge operator, was not an arm of the State of Georgia and was not entitled to immunity or residual immunity under state or Admiralty law.

As can be seen from Exhibit "B", until discovery is conducted to determine the identity of vessels and appurtenances used in the canals and bridges, it is unclear who designed the bridges,

the scope of work, and parties involved.

While this is not the time for arguments on the merits, we bring to the Court's attention (Exhibit "C"). We submit that the allegations in Articles IV, V and VI of Exhibit "C" which itself has exhibits attached ("B", "C", and "D") infer that the City of New Orleans is the nominal owner of the 17th Street Canal for the use and benefit of the Sewerage and Water Board. On information and belief we submit that this is true as well for the Orleans and London Avenue Canals. As such, the Louisiana causes of action arising from the general maritime law torts and contracts are well founded.

## CONCLUSION

We believe discovery will show that the City and/or Sewerage and Water Board were the "owners" and proprietors of the canals and collectively with other contractor defendants did not exercise reasonable or professional care in their canal and bridge activities; did not comply with a duty to investigate and warn neighbors; abused their rights as property owners themselves and through their agents and contractors, collectively caused takings and/or damages under the Louisiana Constitution Article 1 § 4(B) and that under Louisiana law defendants are strictly liable under Articles 667 and 2315 and 2317 of the Louisiana Civil Code. That a Louisiana Court can deal with such issues and apply substantive maritime law as required goes without saying. As the Court stated in *Owen v. City of Independence*, 445 U.S. 622 (1980) in FN 28:

> "Although it has never been understood how the doctrine of sovereign immunity came to be adopted in the American democracy, it apparently stems from the personal immunity of the English Monarch as expressed in the maxim, 'The King can do no wrong.' It has been suggested, however, that the meaning traditionally ascribed to this phrase is an ironic perversion of its original intent: 'The maxim merely meant that the King was not privileged to do wrong. If his acts were against the law, they were *injuriae* (wrongs). Bracton, while ambiguous in his several statements as to the relation between the King

and the law, did not intend to convey the idea that he was incapable of committing a legal wrong.' Borchard, Government Liability in Tort, 34 Yale L.J. 1, 2, n. 2 (1924). See also Kates & Kouba, Liability of Public Entities Under Section 1983 of the Civil Rights Act, 45 S.Cal.L.Rev. 131, 142 (1972)

In this country, '[t]he sovereign or governmental immunity doctrine, holding that the state, its subdivisions and municipal entities, may not be held liable for tortious acts was never completely accepted by the courts, its underlying principle being deemed contrary to the basic concept of the law of torts that liability follows negligence, as well as foreign to the spirit of the constitutional guarantee that every person is entitled to a legal remedy for injuries he may receive in his person or property. As a result, the trend of judicial decisions was always to restrict, rather than to expand, the doctrine of municipal immunity.' 18 McQuillin §53.02, at 104 (footnotes omitted). See also Prosser § 131, at 984 ("For well over a century the immunity of both the state and the local governments for their torts has been subjected to vigorous criticism, which at length has begun to have its effect:). The seminal opinion of the Florida Supreme Court in *Hargrove v. Town of Cocoa Beach,* 96 So.2d 130 (1957), has spawned 'a minor avalanche of decisions repudiating municipal immunity,' Prosser § 131, at 985, which, in conjunction with legislative abrogation of sovereign immunity, has resulted in the consequence that only a handful of States still cling to the old common-law rule of immunity for governmental functions. See K. Davis, Administrative Law of the Seventies § 25.00 (1976 and Supp.1977) (only two States adhere to the traditional common-law immunity from torts in the exercise of governmental functions); Harley & Wasinger, Government Immunity: Despotic Mantle or Creature of Necessity, 16 Washburn L.J. 12, 34-53 (1976)."

Movant should not be allowed to remove under 28 U.S.C. 1442(a)(1) and assert, if constitutional, an implied immunity defense. This case should be remanded.

Respectfully Submitted,

*[signature: William E. O'Neil]*

WILLIAM E. O'NEIL (BAR #10213)
THE O'NEIL & VANCE GROUP, LLC
701 North Causeway Boulevard
Metairie, Louisiana 70001
Phone: (504) 834-9882
Fax: (504) 831-5360

-and-

*[Signature: Don M. Richard]*

DON M. RICHARD, (BAR #11223)
ATTORNEY AT LAW
701 North Causeway Boulevard
Metairie, Louisiana 70001
Phone: (504) 834-9882
Fax: (504) 831-5360

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to all counsel of record, this **26** day of October, 2006.

*[Signature: William E. O'Neil]*

WILLIAM E. O'NEIL