UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| JUDY M. PAUL and WILLIE MACKIE, SR. ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SEWERAGE AND WATER BOARD OF ) <br> NEW ORLEANS, BOARD OF ) <br> COMMISSIONERS FOR THE ORLEANS ) <br> LEVEE DISTRICT, BOARD OF ) <br> COMMISSIONERS OF THE PORT OF ) <br> NEW ORLEANS, THE CITY OF NEW ) <br> ORLEANS, NEW ORLEANS PUBLIC ) <br> BELT RAILROAD COMMISSION, CSX ) <br> TRANSPORTATION, INC., BNSF ) <br> RAILWAY COMPANY, f/k/a ) <br> BURLINGTON NORTHERN AND SANTE ) <br> FE RAILROAD COMPANY, and THE ) <br> LOUISIANA DEPARTMENT OF ) <br> TRANSPORTATION AND ) <br> DEVELOPMENT ) <br> Defendants ) <br> _____ ) | CIVIL ACTION NO. 06-7682 <br><br> SECTION "K" <br><br> MAGISTRATE 2 <br><br><br> Removed from the Civil District <br> Court for the Parish of Orleans, State <br> of Louisiana, Division "I-14" |

**MEMORANDUM IN SUPPORT OF THE MOTION FOR REMAND**

**NOW INTO COURT,** through undersigned counsel comes Judy M. Paul and Willie Mackie, Sr., Plaintiffs in a state court action removed by defendant CSX Transportation, Inc. (hereinafter "CSXT") to file this Memorandum in Support of the Motion for Remand.  In their petition Paul and Mackie asserting state law negligence claims of damage to property and for

personal injuries for themselves and others similarly situated, as a result of the damage to Flood Gate I-W30 and the consequent flooding of the City of New Orleans.

Gate I- W30 was a Gate in the Floodwall in place along the West Bank of the Inter harbor Navigation Canal. It is alleged that the tow pulled by locomotive owned by Burlington Northern Railway and being operated by employees of CSX Transportation, Inc. destroyed the gate on September 11, 2004. The damages had not been repaired when Katrina waters arrived, and the sand bags placed there, were no match for the rushing water, gave way. In the end the east bank was flooded, the proximate cause of the loss and damage to plaintiff class.

CSX Transportation, Inc. argues that the claims asserted are preempted by the Federal Railroad Safety Act. The cases it cites are, for the most part Motion to Dismiss or Motion for Summary Judgment cases, not removal cases at all.[1] What CSXT neglects to say, or refuses to recognize and acknowledge, it that neither FRSA nor ICTA are complete preemption statutes, and generally may only be raised as a defense against the claims asserted. Those claims do not arise under federal law, though federal law may be a defense to some or all of them. A federal defenses do not created federal question jurisdiction under 28 U.S.C. 1331. *Franchise Tax Board v. Const. Laborers Vacation Trust for Southern California,* 463 U.S. 1 , 103 S.Ct. 2841 (1983); ["(A) case may not be removed to federal court on the basis of a federal defense . . . .  even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." At 14.] Called "ordinary conflict

---

[1] The one removal case it cites *Peters v. Union Pacific R.R.* (8th Cir. 1996). is hardly a Railroad Safety Act case. That case involved the refusal to reissue a locomotive certification following a suspension.  The Federal Railway Administration has a engineer certification dispute procedure, and "Peters failed to exhaust available administrative remedies". "The adversely affected party would have had two levels of appeal within the administrative structure. 49 C.F.R. §§ 240.407, 240.411. Peters chose not to avail himself of this procedure and cannot now complain that he has no available remedy." P. 263

preemption", state laws that conflict with federal laws are preempted, and preemption is asserted as "a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

Stated otherwise, Movers state law claims are not preempted merely because the Federal Railroad Safety Act or the Interstate Commerce Termination Act may be implicated. "(F)ederal preemption is merely a defense to a plaintiff's state-law claim, and it does not alter the jurisdiction of the federal court." *Chapman v. Lab One,* 390 F.3d 620, 625 (C.A.8 ; Iowa), 2004.

The Fifth Circuit, acting en banc, rejected the argument that FRSA mandated federal question jurisdiction and ordered remand of a railroad crossing case against Illinois Central Railroad Company, the operator of the train in Smallwood v. Ill. Cent. R.R., Smallwood v. Ill. Cent. R.R.,385 F.3d at 571 (5th Cir. 2004) In Beers v. North American Van Lines, Inc., 836 F2d.910 (5th Cir ., 1988) the Fifth Circuit relied on the lack of clear Congressional intent that state-law claims be removable in holding that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, did not completely preempt state law claims for loss or damage to goods during interstate transportation by a common carrier.[2]

### Detailed Discussion

"Federal courts are courts of limited jurisdiction." *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir.2001). Congress has provided the federal courts with jurisdiction over "all civil actions arising under the Constitution, laws, and treaties of the United States." 28 U.S.C. § 1331.

---

[2] Although not raise here, the Eleventh Circuit applied the rule to ICTTA in *Fla. E. Coast Ry. Co. v. City of W. Palm Beach,* 266 F.3d 1324, 1328-29 (11th Cir.2001) ( "Although the federal government through the ICCTA has legislated in an area where there has been a history of significant federal presence . . . West Palm Beach is acting under the traditionally local police power of zoning and health and safety regulation.")

3

To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 264 (5th Cir.1995) The party seeking removal bears the burden of proving that the Court has subject matter jurisdiction. *See, e.g., Manguno v. Prudential Property & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir.2002) Federal courts must presume that all suits lie outside their limited jurisdiction, *id.,* and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root,* 200 F.3d 335, 339 (5th Cir.2000). Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. Id 339

The doctrine of preemption arises from the Supremacy Clause of the Constitution. When invoked, the doctrine requires that state law give way when it is in conflicts with or frustrates federal law. U.S. Const. art. VI, cl. 2. State law is preempted when Congress expressly prohibits state regulation, when Congress implicitly leaves no room for state involvement by pervasively occupying a field of regulation, and when state law directly conflicts with federal law. Federal regulations also may preempt state law, if the agency intends its regulations to have preemptive effect, and the agency is acting within the scope of its delegated authority.

In the ordinary case, federal preemption is merely a defense to a plaintiff's state-law claim, and it does not alter the jurisdiction of the federal court.[3] In some extremely rare instances, the doctrine of "complete preemption" establishes more than a defense to a state-law claim. On occasion, the Supreme Court has concluded that "the pre-emptive force of a statute is

---

[3] ". . . "(C)onflict" preemption, as we noted in *Vorhries,* "is merely a defense to the merits of a claim. . . . We see nothing in the Locomotive Inspection Act to indicate that Congress "clearly intended completely to replace state law with federal law and create a federal forum" at the same time. *Id.* That is what would be necessary to create "complete" or "field" preemption, as opposed to the more routine conflict preemption." *Adkins v. Illinois Cent. R. Co.* 326 F.3d 828, 835 (7th Cir. 2003)

4

so 'extraordinary' that it 'converts' an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." (quoting Metropolitan Life, 481 at 65, 107 S.Ct. 1542 (1987)). In short, "after *Metropolitan Life,* there is no complete preemption without a statement to that effect from Congress." *Marcus v. AT & T Corp.,* 138 F.3d 46, 55 (2nd Cir.1998)

When an entire area of state law has been "completely preempted," then any claim "purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* As such, "complete preemption" of a state-law cause of action provides a basis for removal of an action to federal court. Labor Relations Act of 1947 (LMRA)[4] and the Employee Retirement Security Act of 1974 (ERISA) which was modeled after the LMRA[5], are illustrations of the doctrine of complete preemption.. Indian Gaming Act[6] and Usury claims against national banks under the National Bank Act[7] are othere examples of complete preemption. In those areas, Congress expressly intended for the federal courts to fashion a body of "federal common law" that would govern disputes arising under the federal statutes.

1.     *FRSA and ICTTA are not complete preemption statutes;*

In *Smallwood II,* the plaintiff, a Mississippi resident, was injured in a railroad crossing accident by a train operated by the Illinois Central Railroad Company (Illinois Central), an Illinois corporation. 385 F.3d at 571-72. The railroad crossing was maintained by the Mississippi Department of Transportation (MDOT) with equipment purchased with federal funds.

---

[4] *Avco Corp v. Machinists,* 390 U.S. 557 (1968).

[5] *Metropolitan Life ,* 481 U.S. at 64, 65 (1987)

[6] Gaming Corp of America v. Dorsey & Whitney, 88 F3d 536, 545 (8th Cir. 1996)

[7] *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003)

Smallwood sued both Illinois Central and the MDOT in Mississippi state court solely on state law causes of action. Illinois Central removed the case to federal court where it argued that Smallwood's negligence claims against the MDOT were preempted by the Federal Railroad Safety Act, 49 U.S.C. § 20101 *et seq.,* and, as such, that the MDOT had been improperly joined. The district court agreed and denied remand because there was no realistic reason to believe that Smallwood could recover against the non-diverse MDOT. the district court granted summary judgment to Illinois Central on precisely the same preemption ground. *Smallwood v. Ill. Cent. R.R.,* 2002 U.S. Dist. LEXIS 27674, *13-17 (S.D.Miss. Aug. 13, 2002).

The *en banc* court reversed the district court's judgment and directed remand to state court. Only "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant *necessarily compels* the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit").

*Chapman v. Lab One*, 390 F.3d 620, (8th Cir. 2004) also rejected the argument that the Federal Railroad Safety Act commands complete preemption is of state negligence law. There plaintiff Michael Chapman and his wife filed an action in Iowa state court against LabOne only. LabOne removed the action to the United States District Court for the Southern District of Iowa based on diversity and federal question jurisdiction. The district court then granted LabOne's motion to dismiss. The court reasoned that the Chapmans' claims were predicated on the manner in which LabOne tested the urine specimen and reported the results to Union Pacific, and that the FRSA and its corresponding regulations " 'substantially subsumed the subject matter' of state tort law regarding the standards for drug testing railroad employees." Accordingly, the district court found that the Chapmans' state common-law claims were preempted.

On appeal, the Chapmans and Howell contend that the district courts erred in holding that their state law claims were preempted by the FRSA, the FOTETA, and their implementing regulations. In addition, Howell asserts that because his claims are not preempted by federal law, his case was improperly removed to federal court and his motion to remand the case to state court should have been granted. " (N)either the FRSA nor the FOTETA provides a private right of action for a person aggrieved by negligence in the analysis of a drug test, and the absence of an alternative cause of action militates against a finding of complete preemption. *See Franchise Tax Board v. Const Laborers Vacation Trust 463 U.S. 1, 26 (1983)*. Id. At 629

Similarly *Adkins v. Illinois Cent. R. Co.* 326 F.3d 828 (7th Cir 2003) held the Locomotive Inspection Act (LIA) did not provide a basis for federal jurisdiction under the complete preemption doctrine in action brought by injured train passengers and survivors of those killed in train collision against locomotive manufacturer; nothing in the LIA indicated that Congress clearly intended completely to replace state law with federal law and create a federal forum at the same time. 49 U.S.C.A. § 20701 et seq.)  *Atkins*, *supra*, offers this discussion of complete preemption and remand:

> "The discussions in our recent decisions in *Tyson Foods, supra,* and *Vorhees v. Naper Aero Club, Inc.,* 272 F.3d 398 (7th Cir.2001), and the Supreme Court's latest word on the question in  (analyzing Federal Boat Safety Act's preemptive effect), underscore how narrow the ill-named "complete preemption" doctrine is. As we stressed in *Tyson Foods* and *Vorhees* and as we stress again here, this does not mean that the federal statute in question-here the Locomotive Inspection Act-does not have preemptive force. To the contrary, ordinary conflict preemption may well exist with respect to some or all of the claims. But "conflict" preemption, as we noted in *Vorhees,* "is merely a defense to the merits of a claim. As such, according to the well-pleaded complaint rule, it does not provide a basis for federal question jurisdiction." 272 F.3d at 403. We see nothing in the Locomotive Inspection Act to indicate that Congress "clearly intended completely to replace state law with federal law and create a federal forum" at the same time. *Id.* That is what would be necessary to create

7

"complete" or "field" preemption, as opposed to the more routine conflict preemption. At 835

The same is true of ICTTA. There is no " showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant" under Smallwood, supra. ICTTA does not provides a private right of action for a person aggrieved by negligence . . . , and the absence of an alternative cause of action militates against a finding of complete preemption" under *Lab One*, *supra*. There is noting in ICTTA "to indicate that Congress 'clearly intended completely to replace state law with federal law and create a federal forum' at the same time" ' under Atkins v. Illinois Central.

Finally, as noted *infra*, the Fifth Circuit in *Beers v. North American Van Lines, Inc*., 836 F2d.910 (5th Cir ., 1988) relied on the lack of clear Congressional intent that state-law claims be removable in holding that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, did not completely preempt state law claims for loss or damage to goods during interstate transportation by a common carrier. The Eleventh Circuit has similarly said so in *Fla. E. Coast Ry. Co. v. City of W. Palm Beach,* 266 F.3d 1324, 1328-29 (11th Cir. 2001)

2. ***Remand is appropriate when the ordinary conflict preemption is raised;***

In *Southeast Texas Environmental, L.L.C. v. BP Amoco Chem. Co.*, 329 F.Supp.2d 853 (S.D.Tex. 2004), Judge Kent said this: .

Defendants do not explain how this alleged statutory defense provides the Court with subject matter jurisdiction. The Court can only suppose that Defendants seek to establish federal question jurisdiction by virtue of . . . certain provisions of CERCLA. Even assuming that (CERCLA) furnishes a defense against Plaintiffs' claims, this argument goes to the merits of the case, not to the Court's jurisdiction. The well-pleaded complaint rule dictates that subject matter jurisdiction cannot rest on a federal defense. *See Rivet v. Regions Bank of Louisiana,* 522 U.S. at

8

478, 118 S.Ct. at 925 (1998). ("A defense is not part of a plaintiff's properly pleaded statement of his or her claim."). Accordingly, "a case may not be removed to federal court on the basis of a federal defense, ⋯ even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Id.* (citing *Franchise Tax Bd.,* 463 U.S. at 14, 103 S.Ct. at 2848. While the AOC's "Contribution Protection" provision may bode ill for Plaintiffs' claims, it does not support removal jurisdiction.

> Defendants maintain that Plaintiffs' state-law claims are preempted by CERCLA and therefore arise under federal law. Ordinary conflict preemption, however, does not support subject matter jurisdiction. *See Rivet,* 522 U.S. at 478, 118 S.Ct. at 925. Even assuming that state-law contribution claims are preempted by CERCLA, this argument fails to establish that Plaintiffs' claims arise under federal law.

In *America First Communications*, *Inc. v. Shadowlands*, 2004 WL 32936 (E.D.La. 2004), Judge Vance, held :

> In short, Shadowlands confuses complete preemption and ordinary preemption. The doctrine of complete preemption is inapplicable here, and although ordinary conflict preemption may apply, Shadowlands may assert this doctrine only as a defense. As a defense, conflict preemption does not support removal because there is no federal claim on the face of plaintiff's complaint. This Court therefore lacks jurisdiction to entertain this action.

Remanding the case to state court, Judge Vance added:

> The Court is therefore confident that the state court, pursuant to the overwhelming weight of federal and state precedent, will be able to recognize the validity of the preemption defense and dismiss the action.

Judge Goodwin in *Arlia ex rel. **Massey Energy Co**. v. Blankenship* 234 F.Supp.2d 606 (S.D.W.Va. 2002.) said it this way:

> "Under ordinary conflict preemption, state laws that conflict with federal laws are preempted, and preemption is asserted as 'a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.' " *Id.* at 186-87 (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). In contrast, "[i]n the case of complete preemption ⋯ Congress 'so completely pre-empt[s] a particular area

that any civil complaint raising this select group of claims is necessarily federal in character.' " *Id.* at 187.  In determining that this case is not removable, the court is only deciding the latter question-complete preemption. A claim may be preempted by federal law but not be completely preempted so as to give rise to federal question jurisdiction. Accordingly, this court's ruling that the plaintiff's claim is not completely preempted is not determinative of whether the claim is nonetheless preempted under ordinary principles of conflict preemption. On remand, if the West Virginia court is inclined to recognize the *Diamond* rule and permit this derivative action, the defendants may attempt to raise ordinary conflict preemption as a federal defense to that claim

3.   *The Cases CSXT cites do not support the removal it sought*;

To support removal serves up 'ordinary conflict preemption" cases for the most part. None purport to support removal. *Mehl v. v. Candian Pacific Railway*, 417 F.Supp 2d 1104 (D.N.D. 2006) is a 12(b)(6) case, ("state law is preempted when it conflicts") and "CP Rail direct(ed) the court attention to numerous regulations which it asserts cover(ed) each of the Plaintiffs negligence claims."

The same can be said of In re: Derailment Cases 416 F3d 787 (8th Cir. 2005)  *Federal Ins. Co. v. Burlington Northern and Santa,*  270 F.Supp.2d 1183. (C.D. Cal. 2003) both were Summary Judgment cases. There is no mention of federal question jurisdiction or whether federal preemption involved converted plaintiffs case into one arising under federal law in either opinion.

> . . . There is no indication that Burlington it was responsible for the derailment or negligent in maintaining the tracks. . . . FIC's Opposition states that the "rail was very old, of a gage too small for the mainline track, and had defects that had been detected on [Burlington] runs." (Opp'n 2.) Yet FIC fails to proffer admissible evidence in support of these conclusory allegations. In fact, FIC does not present any contradictory evidence. Since there is no genuine issue of material fact regarding Burlington's negligence, summary judgment is warranted.

## Conclusion

Plaintiffs' Motion to Remand should be granted.

November ____, 2006.

Respectfully submitted,

OF COUNSEL:
MILLING BENSON WOODWARD, LLP

/s/ William C. Gambel
WILLIAM C. GAMBEL (#5900)
909 Poydras Street, Suite 2300
New Orleans, LA  70112-1010
Telephone:  (504) 569-7000
Telecopy:   (504) 569-7001
wgambel@millinglaw.com

Attorneys for Plaintiffs

John J. Cummings, III (#4652)
Cummings & Cummings
416 Gravier Street
New Orleans, LA  70130
Phone:  (504) 586-0000
Fax:     (504) 522-8423

W354776

CERTIFICATE OF SERVICE

      I certify that on this 8th day of November, 2006, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana, and all counsel of record are being served this filing by either the Court's electronic filing system, email, or by telefaxing and/or placing a copy of same in the United States mail, properly addressed with adequate postage affixed thereon.

                                        /s/William C. Gambel

W354776