FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 NOV -8 PM 12: 32

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION<br>NO. 05-4182 "K" (2) |
| PERTAINS TO LEVEE: | * | JUDGE DUVAL |
| O'DWYER,      NO. 05-4181 | | |

POST HEARING MEMORANDUM
OF POINTS AND AUTHORITIES

**NOW INTO COURT,** through undersigned counsel comes Ferdinand, et al, to file this Post Hearing Memorandum of Points and Authorities following the argument on the Motion to Dismiss and to Sever filed by CSX Transportation, Inc. (CSXT) (Docs. 1044, 1045.

The Motion seeks to Dismiss or Sever Claims asserted in O'Dwyer, on grounds that the O'Dwyer Complaint (1) asserts claims against CSXT for Hurricane Damage ostensibly when no one else does; (2) pleads no duty to the plaintiffs; and (3) asserts claims preempted by the Interstate Transportation Termination Act and the Federal Railroad Safety Act. Movers also challenge O'Dwyer's Complaint under FRCP 23 Class Action.

1. *No One Else has Sued CSXT*

CSXT has been sued in *Ferdinand, et al,* along with the Public Belt Railroad and Burlington Northern and Sante Fe Railway Company. CA No. 06-5132 (FERDINAND). *Ferdinand, et al* allege that on September 11, 2004, a Train operated by employees of CSX Transportation, Inc. in a locomotive owned by Burlington Northern destroyed Flood Gate I-W30,

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No_____

a Gate in the flood wall in place along the West Bank of the Inter Harbor Navigation Canal. The track alleged to have been owned by CSXT and Public Belt. The damage to the Gate had not been repaired when Katrina waters arrived, and the sand bags placed there were no match for the rushing water. As a consequence, the entire western flood wall was undermined and much of it gave way. These were the first waters to enter the Bywater and Mid City areas, destroying the property and damaging the persons plaintiffs in *Ferdinand* and very nearly destroying the French Quarter.

In addition, Burlington was sued in *Bourgeois*, et al. CA No. 06-5131, and Norfolk & Southern was sued in *Williams*, et al. CA No. 06-5137. Finally, CSXT has been sued in *Judy M. Paul and* Willie *Mackie, Sr. v Sewerage & Water Board of New Orleans, Board of Commissioners for the Orleans Levee District, Board of Commissioners of the Port of New Orleans, the City of New Orleans, New Orleans Public Belt Railroad Commission, CSX Transportation, Inc., BNSF Railway Company, f/k/a Burlington Northern and Sante Fe Railroad Company and the Louisiana Department of Transportation and Development,* Civil District Court No. 06-9738, and CSXT has removed that case to this Court. CA No. 06-7682.

2.   *O'Dwyer Pleads No Duty.*

CSXT is wrong. O'Dwyer plead that CSXT owns the railroad bed, that the bed penetrated the flood wall and was washed out by the rising waters associated with Hurricane Katrina. La. Civil Code Article 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of *res ipsa loquitur* in an appropriate case.

O'Dwyer has plead a State Tort claim.

3.  *Federal Preemption*

The federal preemption is ordinary conflict preemption not complete preemption[1]. At best, it is a defense against the claims asserted against it. See *Metropolitan Life Co. v. Taylor*, 481 U.S. 58, 63 (1987).[2] Further, "[w]here federal law is said to bar state action in fields of traditional state regulation . . . . we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 813 n. 8, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997); *Rice*, 331 U.S. at 230, 67 S.Ct. 1146.

Our own Fifth Circuit has held FRSA it is not a complete defense, in an *en banc* decision, in *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568 (C.A.5 (Miss.), 2004.) Other circuits have similarly so held. *Chapman v. Lab One*, 390 F.3d 620, (C.A.8 th; Iowa), 2004. (drug testing claims were not preempted by Federal Railroad Safety Act (FRSA), as amended by Federal Omnibus Transportation Employee Testing Act ) *Adkins v. Illinois Cent. R. Co.* 326 F.3d 828 (C.A.7 ; 2003) (nothing in the Locomotive Inspection Act indicated that Congress clearly intended completely to replace state law with federal law and create a federal forum at the same time. 49 U.S.C.A. § 20701 et seq.) The Eleventh Circuit has applied the rule to ICTTA in *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1328-29 (11th Cir.2001) ( "Although the federal government through the ICTTA has legislated in an area where there has been a

---

[1] ". . . "(C)onflict" preemption, as we noted in *Vorhries*, "is merely a defense to the merits of a claim. . . . We see nothing in the Locomotive Inspection Act to indicate that Congress "clearly intended completely to replace state law with federal law and create a federal forum" at the same time. *Id*. That is what would be necessary to create "complete" or "field" preemption, as opposed to the more routine conflict preemption." *Adkins v. Illinois Cent. R. Co.* 326 F.3d 828, 835 (C.A.7 ; 2003)

[2] In short, "after *Metropolitan Life*, there is no complete preemption without a statement to that effect from Congress." *Marcus v. AT & T Corp.*, 138 F.3d 46, 55 (2d Cir.1998).

3

history of significant federal presence, . . . West Palm Beach is acting under the traditionally local police power of zoning and health and safety regulation.")

Ordinary conflict preemption, the defense, must be presented as a defense. Under Federal Rule of Civil Procedure 12(b)(6), "[such a] motion ⋯ should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief.'" *Gottesman v. J.H. Batten, Inc.*, 286 F.Supp.2d 604, 610 (M.D.N.C.2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 94, 102 (1957)). Moreover, the court must construe the facts in the light most favorable to Plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). The defendant must establish that state tort law supporting plaintiff's claim is entirely preempted. To do so the Mover must show that a particular federal law or regulation entirely preempts each and every theory of liability supporting plaintiffs' claims, citing the particular statues or regulation and showing that the federal rule "completely subsumed" the state negligence law or standard or theory supporting plaintiffs' claims. Compliance with the federal "subsuming" law or standard must be satisfactorily proved or this breach must not itself give rise to a state or federal claim.

It may be conceptually possible to preset the defense in a 12(b)6 Motion, but to do so requires more than the mere assertion. The Mover must satisfy his burden "beyond doubt", construed in light most favorable to Plaintiffs". CSXT has not even attempted to do meet its burden. It certainly has not rebutted the Civil Code Article 2317.1 Claim, much loess attempted to parse out every theory of liability and show how federal law or regulation entirely "so subsumes" state law, so that both the federal law or regulation has been satisfied or the breach of it does not itself give rise to a cause of action.

4

The Motion to Dismiss is premature, the defense is not ripe, and not suitable for 12(b)(6) relief. In avoiding a particularized discussion of the federal law or rules which preempt, CSXT avoids a key requirement of conflict preemption, the need to show availability of the defense factually. The moving papers are not sufficient to support the relief, if considered as a FRCP 56 Motion. The following are some examples of cases supporting prematurity.

*St. Louis Sw. Ry. Co. v. Malone Freight Lines, Inc,* 39 . 3d 864, 867 (8th Cir. 1994), the Eighth Circuit ruled a failure to warn claim was not preempted by the FRSA because the devise prescribed in the federally-approved crossing upgrade plan were not installed or operational at the time of the accident.

*Kiemele v. Soo Line R.R. Co.,* 93 F. 3d 472 (8th Cir. 1996), the Eighth Circuit ruled that a negligence claim regarding the reflectivity of crossing warning signs or "crossbucks" was not preempted by the FRSA because a factual question existed as to whether the crossbucks were "operating". The Eight Circuit relied upon language from *Elrod v. Burlington No. *1110 R.R. Co.,* 68 F. 3d 241, 244 (8th Cir. 19950, wherein the Eighth Circuit held "a railroad's common-law duty of care continues until the federally prescribed devised are actually installed and operating."

*Bock v. St. Louis Sw. Ry. Co.,* 181 F.3d 920, 923 (8th Cir. 1999), the Eighth Circuit re-affirmed its holding in previous cases that once federal funds are expended towards grade crossing safety devices, and those devices are installed and operating, state law negligence claims are preempted by federal regulations.

### Conclusion

For CSXT to prevail, it must show that the FRSA and/or the ICTTA completely preempt state negligence law supporting O'Dwyer's claim. Absent complete preemption, the federal law, regulation or order which preempts is merely a defense against the claim, and CSXT must cite

each law, regulation or order which ostensibly support the standard of conduct it believes so supplants every theory of state law liability and preset proof of facts supporting the assertion that it complied with the federal standard which ostensibly so preempts (or the breach does not give rise to a claim). Such an effort is not one appropriate in a 12(b) Motion; not here, not now.

November ___, 2006.

OF COUNSEL:

MILLING BENSON WOODWARD L.L.P.

Respectfully submitted,

_____
William C. Gambel (LA Bar No. 5900)
909 Poydras Street, Suite 2300
New Orleans, LA 70112-1010
Telephone: (504) 569-7000
Telecopy: (504) 569-7001
wgambel@millinglaw.com

John J. Cummings, III (LA Bar No. 4652
Cummings, Cummings & Dudenhefer
416 Gravier Street
New Orleans, LA 70130
Telephone: (504) 569-0000
Telecopy: (504) 586-8423
ccdlawfirm@aol.com

W354680

## CERTIFICATE OF SERVICE

    I hereby certify that on this 3rd day of November, 2006, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana, and all counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

W354680