

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 NOV -9  PM 3: 08

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182<br><br>SECTION "K" MAG "2" |

PERTAINS TO:
INSURANCE (XAIVER UNIVERSITY
OF LOUISIANA V. TRAVELERS
CASUALTY PROPERTY COMPANY
OF AMERICA NO. 06-516)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR MODIFICATION OF SCHEDULING ORDER AND CONTINUATION OF TRIAL DATE

NOW COMES, through undersigned counsel, Plaintiff Xavier University of Louisiana

("Xavier"), who submits this memorandum in opposition to the motion of Defendant Travelers

Property Casualty Company of America ("Travelers") for modification of scheduling order and

continuation of trial date. Travelers' motion is yet another instance of Travelers' delay in responding

to Xavier's insurance claims and will deprive Xavier of its right to a prompt trial on the merits and

to promptly receive insurance monies due to it. For the following reasons, Travelers' motion should

be denied.

_____ Fee_____
_____ Process_____
_X_/ Dktd _____
_✓_ CtRmDep_____
_____ Doc. No _____

**I.     JUDGE VANCE, WHO ISSUED THE SCHEDULING ORDER IN THIS CASE, SHOULD DETERMINE WHETHER THIS MATTER SHOULD BE CONTINUED.**

As an initial matter, Xavier respectfully submits that the captioned matter is before this Court solely for a decision regarding Xavier's motion for partial summary judgment as to the proper interpretation of purported "flood" or "water damage" exclusion contained in Travelers' insurance policy issued to Xavier. In her transfer order, Judge Vance stated that the transfer was being effected for "resolution of the common issue," that is, a ruling on the purported "water" exclusion in Travelers' insurance policy.  *See* September 20, 2006, Order, *Xavier Univ. of La. v. Travelers Property Cas. Co. of Am.*, Civ. Action No. 06-516(R)(2) [Record Doc. No. 18]. Xavier submits that, following a ruling from this Court, this matter should be transferred back to Judge Vance for further proceedings, including trial on the merits, consistent with the limited purpose noted in Judge Vance's transfer order.  Judge Vance issued the scheduling order in this case , and it is her trial calendar which will be affected by the decision on this motion.  Thus, Xavier requests that Judge Vance hear and determine the merits of Travelers' motion for a continuance.

**II.    ALTERNATIVELY, XAVIER SUBMITS TO A BENCH TRIAL BEFORE THIS COURT, SAID TRIAL TO COMMENCE EITHER ON JANUARY 16, 2007, OR SHORTLY THEREAFTER.**

As an alternative, Xavier will submit to proceeding to trial before this Court either on the originally scheduled date of January 16, 2007, or on a later date shortly thereafter.  In the event this Court were to schedule a new trial date, Xavier respectfully requests that any delay be minimal to avoid further prejudice to Xavier, as will be set forth below.

### III.   XAVIER HAS INCURRED AND CONTINUES TO INCUR CONTINUES TO INCUR SIGNIFICANT DAMAGES RESULTING FROM TRAVELERS' BAD FAITH AND ARBITRARY FAILURE TO ADJUST XAVIER'S CLAIM.

If this Court grants Travelers the relief sought and indefinitely postpones discovery and trial in this matter, Xavier will be irreparably prejudiced because it has incurred and will continue to incur significant financial hardship until this matter is resolved.

Travelers, despite having notice of Xavier's claims for damages arising out of Hurricane Katrina since September 2005, **failed to pay a single penny** to Xavier until after Xavier commenced these proceedings.  In its motion to continue, Travelers readily concedes that Xavier's total claim, at present, is "approximately $40 million."  In truth, the actual claim for building damages only is in excess of $42 million, and that number will increase as repairs continue to be performed at the university.  To date, Travelers has only paid Xavier $4 million toward its building damages, which payments only came after this suit was filed.  In fact, while Travelers had a reserve of $1,250,000 as early as October 17, 2005, it waited until March 8, 2006, to pay any amount to Xavier.  *See* St. Paul Travelers Employees Only Property Large Loss Report dated October 17, 2005, Bates label TRAV 000932, attached hereto as Exhibit 1.  This Court should note the $42 million amount is not an estimate of what it may cost Xavier to effect its repairs, but, rather, reflects actual amounts paid by Xavier for repairs to its university in order to continue affording a quality education to its student body.  Xavier has paid for repairs utilizing some of the University's Endowment Funds, some of the Unrestricted Current Fund's working capital, and some Restricted Current Funds gift income, which impairs the ability of the University to fulfill the mission of Sister Katherine Drexel.  Xavier cannot continue to withstand further significant delay in bringing this matter to trial.  For these reasons, Travelers' motion should be denied.

3

IV.   **NO LEGAL IMPEDIMENT EXIST TO PRECLUDE TRIAL BECAUSE ANY INTERLOCUTORY APPEAL WILL NOT DIVEST THIS COURT OF ITS JURISDICTION OVER OTHER ASPECTS OF THIS CASE.**

Xavier also notes that many of the issues to be tried will not concern interpretation of the purported "flood" exclusion.  One issue will be the nature and extent of damages "above the water line" of Xavier's campus buildings.  Travelers continues to understate Xavier's claims regarding these damages, and these issues may be best resolved through a trial on the merits.  Second, Xavier's claims for bad faith statutory penalties and attorney's fees arises out of Travelers' failure to properly adjust this claim  and pay any portion of the undisputed claim to Xavier.  These issues can be resolved at a trial starting January 16, 2007.

An interlocutory appeal does not divest this Court of jurisdiction over matters not covered in the appeal.  *See Taylor v. Sterrett*, 640 F.2d 663, 667-68 (5th Cir. 1981) ("However, where an appeal is allowed from an interlocutory order, the district court may still proced with matters not involved in the appeal.").  Thus, there is no legal impediment to this Court's proceeding to a trial on the issues of Xavier's damages and Travelers' bad faith adjustment of Xavier's losses following Hurricane Katrina.

Moreover, any concerns regarding the trial of this matter during the pendency of an appeal before the Fifth Circuit can be alleviated by the crafting of detailed findings of fact and conclusions of law concerning the nature of Xavier's damages.  The Fifth Circuit has recommended that District Courts employ special interrogatories in an effort to avoid confusion and delay on appellate review.  *See Nowell v. Universal Electric Co.*, 792 F.2d 1310,1317 & n.5 (5th Cir. 1986) (quoting *Petes v. Hayes*, 664 F.2d 523, 525 n.2 (5th Cir. 1981)) ("'We have on may occasions requested, begged, pleaded with, urged, and ordained the district courts to employ this handy and workable device.").

That this matter will proceed as a bench trial, rather than a jury trial, is of no moment.  This Court can just as easily fashion detailed findings of fact and conclusions of law which delineate "above the water line" and "below the water line" damages to avoid any confusion with respect to Xavier's claimed losses.  *See Meagher v. Lamb-Weston, Inc.*, 839 F. Supp. 1403, 1414 (D. Or. 1993) (declining to issue a stay of proceedings pending an interlocutory appeal on the basis that a special line item on the jury verdict form could be deleted depending on the outcome of the appeal).  Indeed, such a detailed break down of damages is exactly what Travelers repeatedly requested of Xavier while adjusting this claim.

Almost one year ago, on December 8, 2005, Xavier, through its counsel, provided Travelers' adjuster, George Claypool, with a spreadsheet providing a detailed break down of damages that were segregated between the first floor and upper floors.[1]  After Mr. Claypool requested a clarification, additional information was provided to him on December 8, 2005, as follows:

> A separation of first floor vs. other floors is exactly what you said you needed when we met last week.  The basis of the division is that Jim Landis, the contractor actually performing the work, went through each line item and divided it as you requested, based upon his knowledge of the scope of the work. Many of the items are self evident, such as roof work. If you have questions about particular items and Mr. Landis' rationale, let us know. We are happy to set up a meeting with Mr. Landis as early as tomorrow.[2]

Thereafter, following an exchange of e-mails on January 30, 2006, the adjuster wrote:

> No you are wrong. I have made every effort to complete the review of all the documentation you provided us in a timely fashion which

---

[1]*See* December 8, 2005, e-mail (with attachments) from Darnell Bludworth to George Claypool, Bates label Xavier00201-00227, a copy of which is attached hereto as Exhibit 2.

[2]December 8, 2005, e-mails between George Claypool and Darnell Bludworth, Bates label Xavier 000230-000231, a copy of which is attached hereto as Exhibit 3 *in globo.*

5

you were aware of per our emails. This was necessary for you would not comply with our requests regarding separation of the three separate causes of loss, and scope of damages which was never received as yet for each of the causes of losses.

We only have invoices put together, lumping all types of damages with out regard for the policy which you have a copy of.

Please call so we can discuss.[3]

Counsel responded as follows:

George - we provided Landis' breakout of the damages by floor one and above months ago.  We repeatedly offered to meet again if you had additional questions. You have had the documents since the beginning of December and have repeatedly promised that Traveler's position is forthcoming, which promises have been empty. You have done nothing to have a consultant look at the damaged buildings until now, when most damage has been repaired. **We have requested advances for Xavier over and over again, and not a dime has been advanced, despite the fact that you have orally acknowledged to us that the covered damage by your estimate is near to $3 million** (we believe it to be greater). Travelers has wholly failed in its obligations to its insured under Louisiana law. We need to have your position on an advance now.[4]

Following yet additional disagreement from the adjuster, counsel for Xavier completed the

dialogue with the following e-mail:

Darnell has shared with me your recent communications.  We have discussed that we would not break out damages using the "wind" and "flood" terminology the first day we met, back in October. These are terms with legal meanings and it is inappropriate to ask either a contractor or the insured to use such terms. **You agreed to a segregation of the damages by floor.** We have given you that. You have not asked for "back up." We have presented you actual invoices - not just estimates. **Certainly, you cannot be alleging that the**

---

[3]January 30, 2006 e-mails between George Claypool to Darnell Bludworth, Bates label Xavier 000475-483, a copy of which is attached hereto as Exhibit 4 *in globo*.

[4]*Id.* (emphasis added).

6

**damages above the first floor are "flood" damages.** Travelers had an absolute duty under Louisiana law to tender uncontested amounts and has failed in that obligation. As a result of this failure, Travelers is liable for penalties under the Louisiana Insurance Code of double the damages. Please notify Travelers that Xavier intends to seek such damages due to Travelers arbitrary and capricious failure to pay at least uncontested amounts.[5]

As the foregoing discussion illustrates, Travelers has been requesting a detailed breakdown of damages from Xavier for nearly a year. Thus, it should come as no surprise to Travelers if the Court provides such a breakdown in its judgment at the conclusion of trial in this matter.

V.   **TRAVELERS' ARGUMENT THAT IT NEEDS MORE TIME TO SECURE EXPERT TESTIMONY REGARDING XAVIER'S DAMAGES IS WHOLLY WITHOUT MERIT, AS TRAVELERS HAS HAD MORE THAN A YEAR SINCE THE DATE OF LOSS AND MORE THAN EIGHT MONTHS SINCE SUIT WAS FILED TO RETAIN THE APPROPRIATE EXPERTS.**

Incredibly, Travelers tells this Court that a continuance is necessary so that it can secure expert testimony segregating Xavier's damages between wind damage and damages resulting from ground water intrusion on the first floor of the campus buildings. The deadline for Travelers to provide its expert reports was November 6, 2006. Travelers simply ignored this deadline. That Travelers has not secured such an expert to date is its own fault. Travelers has long been aware of Xavier's position that the first floor ground water intrusion in its buildings did not constitute a "flood" as that term is defined in the purported "flood" exclusion. Indeed, as noted in Section III, *supra*, Travelers, through its adjuster, repeatedly requested that Xavier in presenting its claim to Travelers segregate its damages to those on the first floor versus the upper floors of the buildings, and Xavier complied with that request. *See* Exhibits 2 through 5.

--------------------------------

[5]January 31, 2006, e-mails between James M. Garner to George Claypool, Bates label Xavier 000495-000496, a copy of which is attached hereto as Exhibit 5, *in globo* (emphasis added).

7

Moreover, Travelers has been afforded multiple opportunities to have its experts inspect the Xavier campus to prepare its own reports concerning Xavier's property damages. If it has not done so, that is through no fault of Xavier or any other external impediment. Travelers simply cannot complain at the eleventh hour that it needs additional time to retain an expert on this issue, when, in fact, it has been well aware that this has been a contested issue going back to the adjustment of this claim. Travelers is not entitled to a continuance and indefinite stay of discovery to reward its own lack of diligence in retaining the appropriate experts.

### VI. TRAVELERS' MOTION TO CONTINUE IS NOTHING MORE THAN THE LATEST IN A SERIES OF MOVES DESIGNED TO DELAY THE RESOLUTION OF THIS CASE, AND THIS COURT SHOULD NOT COUNTENANCE FURTHER ROADBLOCKS TOWARD RESOLUTION OF THIS CASE.

Throughout its handling of Xavier's claim, Travelers has engaged in a continued pattern of delay to avoid having to pay Xavier the amounts to which it is properly entitled. This Court need only review Xavier's Complaint for Damages in this case, along with the attached Exhibits A through Z, to understand the history of delay and avoidance that Travelers was engaged in before suit was filed. As noted, **Travelers paid nothing to Xavier until after suit was filed** and, to date, has paid Xavier only $4 million for building damages, while Xavier has been forced to spend more than $42 million to date to repair its buildings and provide a quality education to its students.[6]

Even after suit was filed, Travelers' history of delay continued. Since June 27, 2006, undersigned counsel has written to Travelers' counsel on *eleven* separate occasions requesting

---

[6]Likewise, Travelers has only very recently paid Xavier $1 million toward a contents claim of over $4.1 million. Although Travelers paid Xavier the amount claimed thus far for lost business income, that payment came many months after Travelers was provided proof of this loss and months after suit was filed.

available dates for a corporate deposition of Travelers and the adjuster it retained to evaluate Xavier's claim. Copies of this correspondence are attached hereto as Exhibit 6 *in globo*. Travelers repeatedly failed to respond to these e-mails and did not provide any dates for the requested depositions to take place. Finally, on October 23, 2006, having no alternative, Xavier unilaterally noticed these depositions for December 2006. *See* Exhibit 6.

In a further effort to obstruct Xavier from obtaining the insurance proceeds for which Xavier paid a premium, Travelers now moves for a continuance and indefinite stay of discovery in this matter. Travelers articulates no reason why it cannot try the issue of Xavier's property damages in January 2007, including the issuance of separate findings for damages to the first floor and damages above the first floor, as well as trial on whether Xavier is entitled to statutory penalties and fees for Travelers' bad faith claims handling and adjustment. In the event a judgment against Travelers is entered, Travelers can take advantage of the appropriate legal recourse of posting a supersedeas bond to cover the verdict and proceed with its appeal. Fed. R. Civ. P. 62(d). Travelers should not be allowed to avoid payment of amounts owed under its policy while Xavier continues under the burden of expending its own funds to repair its damaged campus.

## VII.   TRAVELERS' MOTION FOR A CONTINUANCE IS UNTIMELY AS IT HAS LONG BEEN AWARE OF XAVIER'S INTENT TO KEEP THE PRESENT TRIAL DATE, AND XAVIER HAS CONTINUED TO COMPLY WITH THE PRE-TRIAL ORDERS OF THIS COURT.

Travelers has long been aware of Xavier's intent keep the current trial setting in this matter, even after Xavier's motion for partial summary judgment was filed and this case was re-allotted to this Court for disposition of that motion. In fact, on October 6, 2006, Xavier complied with the Court's pre-trial orders submitting its expert reports to counsel for Travelers, and, on November 6,

9

2006, Xavier filed its witness and exhibit lists into the record. Travelers has completely ignored these deadlines, and has further delayed compliance with this Court's scheduling order by seeking a continuance of the trial date and pre-trial deadlines at the eleventh hour.

As noted above, Travelers has had sufficient time to retain the appropriate expert witnesses in this case and prepare for trial in this matter. While its counsel's schedule may, admittedly, be busy, that is not a sufficient excuse to delay Xavier's day in court and cause further prejudice to Xavier. Counsel for Travelers agreed to the January 16, 2007, trial date and has sat idly by while Xavier complied with this Court's orders and repeatedly requested discovery from Travelers. Now, instead of meeting the agreed deadlines, Travelers comes to this Court seeking, at the least, additional time to prepare and, at the most, an indefinite suspension of deadlines. This Court should not countenance Travelers' mot recent effort to avoid its obligations to Xavier under the insurance policy for which Xavier paid good money.

## VIII.  CONCLUSION

For the foregoing reasons, Xavier respectfully requests that this Honorable Court deny Travelers' Motion for Modification of Scheduling Order and Continuance of Trial Date.

Respectfully Submitted:

_____

JAMES M. GARNER, #19589
DARNELL BLUDWORTH, #18801
TIMOTHY B. FRANCIS, #14973
**SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.**
909 Poydras St., 28th Floor
New Orleans, LA  70112
Telephone:  504-299-2100
Facsimile: 504-299-2300
COUNSEL FOR XAVIER UNIVERSITY
OF LOUISIANA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon:

Ralph S. Hubbard, III
Simeon B. Reimonenq, Jr.
601 Poydras St., Suite 2775
New Orleans, LA  70130
Attorneys for Travelers Property Casualty Company of America

via electronic mail and by placing same in the United States Mail, postage prepaid, this 9 day of

November, 2006.

_____

JAMES M. GARNER

11