## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | ) | CIVIL ACTION |
| CONSOLIDATED LITIGATION | ) | NO. 05-4182 "K" (2) |
| | ) | JUDGE DUVAL |
| | ) | MAG. WILKINSION |
| | ) | |
| _____ | ) | |
| | ) | |
| PERTAINS TO: *State of Louisiana (06-3552)* | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANTS UNITED STATES' MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**PRELIMINARY STATEMENT**

Defendants United States of America, United States Army Corps of Engineers and Francis J. Harvey, Secretary of the Army ("Defendants" or the "Corps"), respectfully submit this Memorandum in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"). The present action stems from the devastating flooding caused by Hurricane Katrina in August of 2005. FAC ¶ 1.[1/] Plaintiffs, the State of Louisiana, St. Bernard Parish, and several individual citizens, bring this action alleging violations of several environmental statutes and a common law nuisance claim in Defendants' design, construction, maintenance and operation of the Mississippi River Gulf Outlet (the "MR-GO"). Plaintiffs allege that because of these violations, the MR-GO exacerbated the flooding caused by Hurricane Katrina and continues to pose a threat. Plaintiffs seek an order from this Court appointing a special master to prepare a study and remedial plan for the MR-GO to be implemented by this Court. Because Plaintiffs fail to meet their burden of establishing subject matter jurisdiction, Plaintiffs' First Amended Complaint ("FAC") should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

Plaintiffs claims fail for several reasons. Plaintiffs First and Second Claims allege violations of the Fish and Wildlife Coordination Act ("FWCA") and the Rivers and Harbor Act of 1945 ("RHA"). Because these statutes do not create private rights of action for violations of their provisions, Plaintiffs' challenges must be brought under the Administrative Procedure Act, 5 U.S.C. § 701, et. seq. ("APA"). Plaintiffs do bring these claims under the APA and allege that Defendants violated the FWCA and RHA by failing to coordinate with the appropriate agencies when building the MR-GO. ¶¶ 171, 183. But because, as Plaintiffs' FAC acknowledges, these claims accrued over forty years ago, they are barred by the six-year statute of limitations period for APA claims. And because this long delay was unreasonable and prejudiced Defendants in the millions of dollars spent on the MR-GO in the intervening years (¶ 47), the FWCA and RHA claims are also barred by the doctrine of laches.

---

[1/]All paragraph references are to the FAC, e.g., ¶ 1.

Plaintiffs Third, Fourth and Fifth Claims allege violations of the National Environmental Policy Act ("NEPA) and the Water Resources Development Act of 1990 ("WRDA").  Plaintiffs allege that Defendants violated NEPA and WRDA by failing to consider the environmental effects and take other steps before "discontinuing" the dredging of the MR-GO.  ¶¶ 199, 209, 220.  NEPA and WRDA do not create private rights of action and Plaintiffs bring these claims under the APA as well.  ¶¶ 193, 205, 216.  The APA, however, only provides jurisdiction for "final agency action."  It is true that the Corps has not dredged the MR-GO since November of 2005.  But a final decision regarding whether to continue maintenance dredging will not be made until the Corps submits a final report to Congress in December of 2007.  120 Stat. 418, 453.  Accordingly, the "decision to forego dredging" was not a final agency action under the APA and the Court lacks jurisdiction over these claims.

Plaintiffs' Sixth Claim for relief asserts that the Corps, as the owner and operator of the MR-GO, created a nuisance under Louisiana and federal common law.  ¶¶ 225-28.  But a nuisance claim is a tort claim, and this action is not brought pursuant to the Federal Tort Claims Act ("FTCA").  Because the FTCA represents the sole waiver of sovereign immunity for common law torts claims against the United States, this claim must fail for lack of jurisdiction.

Importantly, Plaintiffs also lack standing to bring any of the claims alleged in the FAC.  Plaintiffs do not seek a specific remedy, but instead ask the Court to appoint a special master to study and develop a remedial plan.  FAC, Prayer for Relief at 90.  Accordingly, it is merely speculative that Plaintiffs' alleged injuries will be redressed by a favorable decision.  Indeed, it is not at all clear, precisely what a favorable decision - - the proposed remedial plan - - would entail.  Under well established Supreme Court precedent, standing requires a showing that it is "likely," not merely "speculative" that the alleged injury will be redressed by a favorable decision.  Plaintiffs therefore lack standing to assert any of their claims.

Plaintiffs claims are also barred by the Flood Control Act of 1928, whose broad language provides that "[n]o liability of any kind shall attach to or rest upon the United States

2

for any damage from or by floods or flood waters at any place." 33 U.S.C. § 702c. Plaintiffs' FAC asserts that it is based on the flooding from Katrina and that each of the Plaintiffs was damaged by the flooding. ¶¶ 1, 23. Defendants are therefore entitled to immunity from Plaintiffs' claims and the action should be dismissed.

Finally, even if the Court were to find that it has jurisdiction to hear Plaintiffs' claims, and even if the Court were to find that Plaintiffs properly alleged statutory violations under the APA, the relief Plaintiffs seek is beyond the jurisdiction provided by the APA. Under the APA, a court may not substitute its judgment for that of an agency or impose its own procedures on an agency. This limitation reflects fundamental principles governing judicial review of executive branch functions. Therefore, the appointment of a special master to develop a study and remedial plan for the court to implement is beyond the Court's jurisdiction.

As set forth below, each of Plaintiffs' claims fails for lack of jurisdiction. The Court should therefore dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1).

## BACKGROUND

On March 29, 1956, President Eisenhower signed into law a bill authorizing construction of the MR-GO. Pub. L. 84-455, 70 Stat. 65 (1956). The MR-GO is a navigable waterway, built to provide a direct shipping route between the Gulf of Mexico and the port facilities of greater New Orleans. ¶ 47. It is a deep-draft navigation channel, 76 miles long with an authorized depth of 36 to 38 feet. ¶ 47. The MR-GO was constructed with a bottom width of 500 feet and a surface width of 650 feet. ¶ 48. It extends from a turning basin in New Orleans, eastward along the Gulf Intercoastal Waterway ("GIWW") approximately six miles to a point in Micheaud, Orleans Parish, Louisiana, then southeastward to a point in the Gulf of Mexico seaward of Breton Island, St. Bernard Parish, Louisiana. ¶ 47. The construction was substantially in accordance with the recommendations of the Corps' Chief of Engineers contained in House Document 245 (84th Congress). ¶ 46, 52; Pub. L. No. 84-455, 70 Stat. 65 (1956). As part of its maintenance of the MR-GO, the Corps performs maintenance dredging of the bottom of the waterway when the Corps determines that such

3

dredging is needed for navigation purposes.  The Corps has not dredged the MR-GO since August of 2005.  ¶¶ 61-63.

In August 2005, Hurricane Katrina created a storm surge that pushed a great volume of water towards New Orleans from the southeast.  ¶ 153.  Levees along the MR-GO were overtopped, contributing to the flooding of Orleans and St. Bernard Parishes.  Id.  The President declared an emergency in Louisiana on August 27, 2005 and a major disaster in Louisiana on August 29, 2005.  70 Fed. Reg. 53238, 70 Fed. Reg. 53803.

The "Emergency Supplemental Appropriations Act for Defense, the Global War on Terror and Hurricane Recovery" became effective June 15, 2006.  Pub. L. No. 109-234, 120 Stat. 418 (2006).  Chapter 3 of this Act appropriated $3,300,000 to the Corps to develop a comprehensive plan to deauthorize deep draft navigation on the MR-GO between the Gulf of Mexico and the Gulf Intracoastal Waterway ("MR-GO deauthorization plan").  120 Stat. 418, 453.  The Act provides that an interim report to Congress on the MR-GO deauthorization plan is due to Congress on December 15, 2006.  Id.  The final MR-GO deauthorization plan must be reported to Congress in December 2007 as part of the Louisiana Coastal Protection and Restoration Plan.  Id.

House Report 109-494, the conference report supporting Pub. L. No. 109-234, discusses the plan to deauthorize MR-GO deep draft navigation in further detail.  The report directs that the plan shall include recommended modifications to the existing authorized current use of the MR-GO, including what navigation functions, if any, should be maintained and any measures for hurricane and storm protection. The Corps must develop the MR-GO deauthorization plan in consultation with St. Bernard Parish, the State of Louisiana, and affected Federal Agencies.  Id

As part of its maintenance of the MR-GO, the Corps performs maintenance dredging of the bottom of the waterway when the Corps determines that such dredging is needed for navigation purposes.  The Corps has not dredged the MR-GO since August of 2005.  ¶¶ 61-63.

**STANDARD OF REVIEW**

It is well settled that federal district courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  They may exercise only as much jurisdiction as is granted to them under the Constitution and by Congress.  Id. Fed. R. Civ. P. 12(b)(1) provides that a defendant may move for dismissal based upon "lack of jurisdiction over the subject matter" when the district court lacks the statutory or constitutional authority to adjudicate a case.  In resolving these motions, a court is not confined to allegations in the complaint.  "On a motion under [Rule] 12(b)(1) challenging the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits."  Antares Aircraft v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991) (citations omitted) vacated on other grounds, 505 U.S. 1215 (1992).  "In deciding a motion to dismiss a case for lack of subject matter jurisdiction, the Court may consider evidentiary matters outside the pleadings."  Bonterra America, Inc. v. Bestmann, 907 F. Supp. 4, 5 n.1 (D.D.C. 1995).  The Plaintiff bears the burden of establishing the federal jurisdiction upon which his suit relies. Kokkonen, 511 U.S. at 377.   The plaintiff, therefore, also has the burden of pleading the requisite jurisdictional facts.  See Gibbs v. Buck, 307 U.S. 66, 72 (1939).  A court must dismiss a complaint for lack of subject matter jurisdiction if the action: (1) does not arise under the federal Constitution, law, or treaties, or fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of that section; or (3) the cause is not one described by any jurisdictional statute. See Baker v. Carr, 369 U.S. 186, 198 (1962).

**ARGUMENT**

**I.      Plaintiffs' FWCA and RHA Claims Are Time Barred.**

Plaintiffs' First and Second Claims for Relief allege that Defendants violated the FWCA and RHA by "investigating, planning, designing, constructing, and/or maintaining" the MR-GO without coordinating with the appropriate agencies.  ¶¶ 172, 184.  Because, as Plaintiffs' FAC acknowledges, the investigation, planning, design and construction of the

MR-GO occurred over forty years ago, Plaintiffs' FWCA and RHA claims are barred by the statute of limitations and laches and must be dismissed.

**A.     Plaintiffs' FWCA and RHA Claims are barred by the statute of limitations.**

Plaintiffs assert that their FWCA and RHA claims are brought pursuant to the APA. ¶¶ 168-71, 180-83.  As the Fifth Circuit explained, an

> APA challenge is governed by the general statute of limitations provision of 28 U.S.C. § 2401(a), which provides that every civil action against the United States is barred unless brought within six years of accrual.  Under established principles of sovereign immunity, the United States is immune from suit unless it consents, and the terms of its consent circumscribe our jurisdiction. The applicable statute of limitations is one such term of consent, and failure to sue the United States within the limitations period is not merely a waivable defense.  It operates to deprive federal courts of jurisdiction.

Dunn-McCampbell Royalty Interest, Inc. v. National Park Service., 112 F.3d 1283, 86-87 (5th Cir. 1997) (footnote and internal citations omitted) (affirming dismissal of APA claim under statute of limitations).  Accordingly, APA claims against the United States that are not filed within six years of when they accrue must be dismissed for lack of jurisdiction.  See Wind River Mining Corp. v. United States, 946 F. 2d 710, 712 (9th Cir. 1991) (six year statute of limitations of Section 2401(a) applies to APA claims).  Under the APA, a right of action accrues at the time of  "final agency action." 5 U.S.C. §  704.  Sierra Club v. Slater, 120 F.3d 623, 631 (6th Cir. 1997) (affirming dismissal based on statute of limitations; finding the plaintiffs' argument that claim did not accrue at time complained of actions occurred "defies logic").

Here, Plaintiffs' FAC acknowledges that the basis of their FWCA and RHA claims are actions that allegedly took place in 1958.  See FAC ¶ 17 ("[t]he Army Corps violated the FWCA and the River and Harbor Act of 1945 when it failed in 1958 to take action with respect to the recommendations of the Department of Interior for further testing and studies before the construction of the MR-GO").  And the FAC also alleges that Defendants' failure to comply with the FWCA and RHA were final agency actions.  ¶¶ 171, 183.  Accordingly, Plaintiffs' FWCA and RHA claims accrued by 1958 and are well beyond the six-year limitations period.  Accordingly, Plaintiffs' FWCA and RHA claims are barred by the statute

of limitations and should be dismissed for lack of jurisdiction.

**B.     Plaintiffs' FWCA and RHA claims are barred by the doctrine of laches.**

"The doctrine of laches is an equitable defense to be applied when one party is 'guilty of unreasonable and inexcusable delay that has resulted in prejudice' to the other party." Bostwick Irrigation Dist. v. United States, 900 F.2d 1285, (8th Cir. 1990) (quoting Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 804 (8th Cir. 1979)); see also Citizens and Landowners Against the Miles City/New Underwood Powerline v. Secretary, U.S. Dep't of Energy, 683 F.2d 1171, 1175 (8th Cir. 1982) (hereinafter "CLAMP"). Because laches is an equitable defense, no fixed time period controls its applicability. See CLAMP, 683 F.2d at 1174. "In determining whether the doctrine of laches should bar a lawsuit, all the particular circumstances of each case must be considered, including the length of delay, the reasons for it, its effect on the defendant, and the overall fairness of permitting the plaintiff to assert his or her action." Id. While not favored, the doctrine of laches does apply in the context of environmental litigation. See id. at 1175; Environmental Def. Fund, Inc. v. Alexander, 614 F.2d 474, 478, (5th Cir. 1980); Save Our Wetlands, Inc. v. United States Army Corps of Eng'rs, 549 F.2d 1021, 1028 (5th Cir. 1977); Watershed Assocs. Rescue v. Alexander, 586 F. Supp. 978, 984 (D. Neb. 1982). Laches requires proof of (1) lack of diligence by Plaintiffs and (2) prejudice to Defendants. See New Jersey v. New York, 118 S. Ct. 1726, 1748 (1998).

In Environmental Defense Fund, the plaintiffs sought an injunction against the Corps, seeking to prevent the construction of a navigation channel. 614 F.2d at 477. The plaintiffs alleged that the proposed navigation channel differed substantially from what Congress authorized and would have a negative impact on the surrounding environment and economy. Id. The district court dismissed the action under the doctrine of laches and the Fifth Circuit affirmed. The court found that the plaintiffs' nine-year delay in bringing the action was unreasonable and that the Corps had suffered prejudice, including millions of dollars in expenditures on the project. Id. at 477.

As set forth above, Plaintiffs' FAC makes clear that their claims accrued, if at all, by 1958. ¶ 17. Because Plaintiffs provide no reason for their forty year delay in bringing this

action, this delay is unreasonable.  It has also prejudiced Defendants.  As in Environmental Defense Fund, the Corps has spent millions of dollars on the MR-GO in the intervening years.  ¶ 47.  It would be unfair to allow the Plaintiffs to bring these claims now, more than four decades after they accrued.  The doctrine of laches is therefore applicable and mandates dismissal for the same reasons articulated by the Fifth Circuit in Environmental Defense Fund, 614 F. 2d at 477.

## II.   Plaintiffs' Claims Based on the "Decision to Forego Dredging the MR-GO" Fail for Lack of Jurisdiction.

Plaintiffs' Third, Fourth and Fifth Claims for Relief are based on Defendants' alleged "decision to cease dredging operations in the MR-GO." ¶¶ 195, 191-224.  Plaintiffs assert that Defendants violated NEPA by failing to prepare an EIS before "discontinu[ing]" the dredging of the MR-GO.  ¶ 196.  Plaintiffs also allege that Defendants violated the WRDA by failing to "consider[] . . . environmental effects" (¶ 209) and failing to "utilize all appropriate authorities" and "develop a wetlands action plan" (¶ 220) before "discontinu[ing]" the dredging of the MR-GO.  Id.  Because the alleged "decision to forego dredging" was not a final agency action under the APA, the Court lacks jurisdiction over these claims.  To the extent Plaintiffs are complaining about future decisions to dredge the MR-GO, or any remedial plans, these claims are not ripe.

## A.   There Has Been No Final Agency Action Regarding the Maintenance Dredging of the MR-GO.

Neither NEPA nor WRDA provides a private right of action for violations of its provisions.  Instead, parties alleging violations of these statutes must pursue their claims pursuant to the APA, 5 U.S.C. §§ 701 - 706.  See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 882 (1990); ONRC Action  v. Bureau of Land Mgmt., 150 F.3d. 1132, 1135 (9th Cir. 1998).  Plaintiffs claim a right to judicial review of their NEPA and WRDA claims under the APA.  ¶¶ 193, 205, 216.  For review under the APA, a plaintiff must show that there is reviewable agency action and that the party has suffered a legal wrong or is adversely affected or aggrieved.  Lujan, 497 U.S. at 882-83 (NEPA challenge brought pursuant to the APA must be based on final agency action); 5 U.S.C. § 702.

8

Under Section 704 of the APA, federal courts have jurisdiction to review "final agency action for which there is no other adequate remedy."  Courts may only review "preliminary, procedural, or intermediate" agency decisions when reviewing the final agency action.  5 U.S.C. § 704.  The finality requirement ensures that the courts do not "[interfere] with the proper functioning of the agency" or "[deny] the agency an opportunity to correct its own mistakes and to apply its expertise."  F.T.C. v. Standard Oil Co., 449 U.S. 232, 242 (1980).  The finality requirement also safeguards judicial resources by preventing inefficient "piecemeal review" that "upon completion of the agency process might prove to have been unnecessary."  Standard Oil Co., 449 U.S. at 242.

The Supreme Court has identified two requirements for an agency action to be final: (1) the action must mark the "consummation" of the agency's decision-making process (it must not be of a "merely tentative" nature); and (2) the action must be one by which "rights or obligations have been determined" or from which "legal consequences will flow."  Bennett v. Spear, 520 U.S. 154, 177-78 (1997); American Airlines, Inc. v. Herman, 176 F.3d 283, 287 (5th Cir. 1999).

Here, the Court lacks jurisdiction over Plaintiffs' NEPA claim because the Corps has taken no final action regarding the dredging of the MR-GO.  Public Law 109-234 instructs the Corps to develop the MR-GO deauthorization plan.  120 Stat. 418, 453.  The Corps is instructed to submit an interim report to Congress, comprising the plan by December 15, 2006.  Id.  And the final report is to be issued in December 2007.  Id.  Thus, Plaintiffs' attacks on the Corps' alleged decision to forgo dredging of the MR-GO do not challenge a final agency action.  It is not the "consummation" of the Corps decision making process.  Bennett 520 U.S. at 178.  Rather, the Corps has deferred making that decision until it completes the Congressionally-authorized plan to deauthorize deep-draft navigation on the MR-GO.  120 Stat. 418, 453.  The MR-GO deauthorization plan will be the definitive decision by the Corps on whether to resume or forgo dredging operations.  Id.  Because the MR-GO deauthorization plan has not yet been completed, Plaintiffs' challenges are premature.

9

Indeed, courts have found that an agency's initiation of a Congressionally-mandated investigational process intended to inform a final decision is not final agency action.  See Schmidt v. Ivey, 1999 U.S. Dist. LEXIS 15013 at *5 (E.D.La. Sept. 24, 1999) (declining to hear plaintiff's claim under the National Historic Preservation Act where agency had initiated but not completed the statutorily-mandated review process); Committee Against Railroad Relocation v. Adams, 471 F.Supp. 142, 144 (E.D.Ark. 1979) (declining to review sufficiency of a Draft Environmental Impact Statement because it constituted a pre-decisional document). Hearing Plaintiffs' claims at this juncture would interfere with a Congressionally-mandated investigation and would deny the Corps its right to apply its own expertise in resolving the complex scientific and technological issues involved in operation of the MR-GO.  Because Plaintiffs' NEPA and WRDA claims do not challenge a final agency action, they must be dismissed for lack of jurisdiction.

**B.      Plaintiffs' NEPA and WRDA Claims Are Not Ripe.**

To the extent Plaintiffs complain about the Corps' inaction regarding the dredging of the MR-GO, these claims must fail.  To the extent Plaintiffs address future decisions to embark on dredging, or any remedial plans, the matter is simply not ripe.

The Supreme Court in Abbott Laboratories v. Gardner, 387 U.S. 136, 148 (1967)[2] explained that the "basic rationale" of the ripeness doctrine as applied to review of administrative action:

> is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

Id. at 148-49 (emphasis added).  Plaintiffs here, however, seek to involve the Court in speculation and ask for judicial intervention prior to any final agency action being taken regarding remedial measures and future dredging.  The development of the Comprehensive

---

[2] Abbott Laboratories v. Gardner was overruled on other grounds by the U.S. Supreme Court in Califano v. Saunders, 430 U.S. 99 (1976).

MR-GO Plan is underway.  But as stated above, it has not yet been completed.  The Corps has not yet issued the Interim Report or the Final Report.  In short, no final agency action has occurred.

The Supreme Court, in <u>Abbott Laboratories</u> established a two-part test to determine ripeness, requiring the court to consider both the fitness of the issue for judicial determination and the hardship to the parties of withholding consideration.  <u>Abbott Laboratories</u> 387 U.S. at 149.  Plaintiff's FAC fails this test because the challenge to the "decision to forego dredging" is not fit for review.

Because no final agency action has been taken here the actions of Defendants are not ripe for judicial review.  There must first be a final agency action.  "[R]eview is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be '<u>final agency action</u>.'"  <u>Lujan</u>, 497 U.S. at 779 (emphasis added), (citing 5 U.S.C. § 704)

The lack of a "final agency action" here goes to the heart of the case or controversy requirement of the ripeness doctrine.  Where there is no final agency action, district courts lack subject matter jurisdiction to entertain the action.  <u>See</u>, <u>e.g.</u>, <u>Champion Int'l Corp. v. EPA</u>, 850 F.2d 182 (4th Cir. 1988).  Because this Court lacks subject matter jurisdiction at this juncture to review Plaintiffs' attacks on Defendants' "decision to forego dredging," Plaintiffs' FAC is not "fit" for judicial review.  Accordingly, Plaintiffs' NEPA and WRDA claims fail the first prong of the ripeness test and should be dismissed.

**III.    Because There is No Waiver of Sovereign Immunity, the Court Should Dismiss Plaintiffs' Nuisance Claim for Lack of Jurisdiction.**

Plaintiffs' Sixth Claim for Relief alleges that by "creating the MR-GO's hazardous conditions" Defendants created a nuisance under Louisiana and federal common law.  FAC ¶¶ 225-28.  The United States has not waived its sovereign immunity for this claim and it must fail for lack of jurisdiction.

Actions against the Federal government may be maintained only when, and in the manner in which, Congress chooses to waive sovereign immunity.  It is fundamental that the

United States "is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941); United States v. Mitchell, 445 U.S. 535, 538, reh'g denied, 446 U.S. 992 (1980).  "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" Mitchell, 445 U.S. at 538 (citing United States v. King, 395 U.S. 1, 4 (1969)); accord Drake v. Panama Canal Comm'n, 907 F. 2d 532, 534 (5th Cir. 1990).

A nuisance action is brought to the court as a tort.  See Restatement (Second) of Torts § 821B (1977) ("A public nuisance is an unreasonable interference with a right common to the general public.").  And the Federal Tort Claims Act ("FTCA") constitutes the sole waiver of sovereign immunity the United States has provided for common law torts, including nuisance.  See United States v. Smith, 499 U.S. 160, 166 (1991) (stating that an FTCA action against the Government is "the exclusive remedy for torts committed by Government employees in the scope of their employment"); see generally, Bartleson v. United States, 96 F.3d 1270, 1274 (9th Cir. 1996).

The FTCA requires a claimant "first [to] present[] the claim to the appropriate Federal agency."  28 U.S.C. § 2675(a).  Failure to comply with § 2675(a) leaves "the district court . . . without subject matter jurisdiction."  Price v. United States, 81 F.3d 520, 521 (5th Cir. 1996); accord Price v. United States, 69 F.3d 46, 54 (5th Cir. 1995).  Here, Plaintiffs did not file such a tort claim and therefore have not satisfied the statutory prerequisite for bringing any tort claim against the United States, "the only proper party defendant in an FTCA action." Kennedy v. United States Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998); 28 U.S.C. § 2675.  As "[t]he claim requirement of [28 U.S.C.] section 2675 is jurisdictional in nature and may not be waived," Plaintiffs' nuisance claim must be dismissed on this ground alone. Burns v. United States, 764 F.2d 722, 724 (9th Cir. 1985); see also McNeil v. United States, 508 U.S. 106, 111-13 (1993).

**IV.    Plaintiffs' Lack Standing to Bring Any of the Claims Asserted in the FAC.**

The doctrine of standing is derived from Article III of the United States Constitution,

which limits a court's jurisdiction to resolving actual "cases" and "controversies."  This doctrine requires a plaintiff to "'allege[] such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  Warth v. Seldin, 422 U.S. 490, 498-99 (1975), quoting, Baker v. Carr, 369 U.S. 186, 204 (1962).

To establish Article III standing, a plaintiff must satisfy three elements:  (1) that she suffered an "injury in fact;" (2) that there is "a causal connection" between the injury and the conduct complained of; and (3) that it is "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (complaint must be dismissed where the plaintiffs fail to show injury in fact and likelihood of redressability by favorable decision).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  Id. at 561.

Here, Plaintiffs fail to satisfy the requirements of the Lujan test.  The essence of the FAC is that Plaintiffs are victims of flooding; that the MR-GO was poorly designed and constructed and exacerbated the flooding; and that a special master should be appointed to "study" and  develop "remedial measures" for the MR-GO.  ¶¶ 1, 2, 23, 51; Prayer for Relief at 90.

First, Plaintiffs fail to show a "causal connection" between their injury and the conduct complained of Lujan, 504 U.S. at 559.  A causal connection between the 1958 construction of a channel and their loss has not been shown.  Even if Plaintiffs were correct and MR-GO was poorly constructed, the natural creation of a storm surge and breaches in levees unrelated to the MR-GO project serve as intervening events between Defendants' construction and Plaintiffs' harm.  ¶ 153.  Thus, Plaintiffs fail to meet their burden of showing that their injuries are "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  Id. (citations omitted).

Most significantly, Plaintiffs fail to meet the redressability requirement because the remedy they seek is not redress of their injuries or even removal of the cause of their distress,

but merely a demand that the court think about the causes of their injury in a different way. FAC, Prayer for Relief at 90 (seeking panel to "prepare study" and recommend "remedial measures" for the MR-GO). Despite a lengthy recounting of the alleged problems with the MR-GO (¶¶56-60), Plaintiffs do not identify the precise remedy they are seeking. FAC, Prayer for Relief at 90. Indeed, it is not at all clear what a favorable decision would even look like. At this juncture, it is pure "speculation" what the proposed study would show, or what the proposed special master would recommend. As the remedy itself is uncertain, the ability of this unknown remedy to redress Plaintiffs' injuries is necessarily uncertain as well. Accordingly, Plaintiffs fail to show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan 504 U.S. at 561. Plaintiffs therefore lack standing to bring the claims they assert.

**V.     This Action is Barred by the Flood Control Act of 1928**

In the Flood Control Act of 1928, Congress provided that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." 33 U.S.C. § 702c. As the Supreme Court observed, this provision "outlines immunity in sweeping terms: 'No liability of any kind . . . for any damage from or by floods or flood waters at any place.' (Emphasis added [by Court].) It is difficult to imagine broader language." United States v. James, 478 U.S. 597, 604 (1986) (footnote omitted).

The legislative history of Section 702c "confirm[ed] that it was intended to reaffirm sovereign immunity" in order to "limit[] the Federal Government's financial liability to expenditures directly necessary for the construction and operation of various projects." Id. at 607. Numerous "statements [by legislators] show that the sweeping language of § 702c was no drafting inadvertence. Congress clearly sought to ensure beyond doubt that sovereign immunity would protect the Government from 'any' liability associated with flood control." Id. at 608 (internal citation omitted). To this end, Congress employed "'the broadest and most emphatic language'" to describe the Government's immunity. Id. (quoting National Mfg. Co. v. United States, 210 F.2d 263, 270 (8th Cir. 1954)). Based on this analysis, the

14

Supreme Court rejected the lower court's attempt to restrict the immunity to "acts strictly for the purpose of controlling floods or floodwaters."  760 F.2d 603.

"The scope of the immunity [is determined] not by the character of the federal project or the purposes it serves, but by the character of the waters that cause the relevant damage . . . " Central Green Co. v. United States, 531 U.S. 425, 434 (2001).  Accordingly, whenever damages result "from or by floods or flood waters," the United States is absolutely immune. Id.  While this statute has traditionally been applied to tort claims for damages, the statute's broad language applies to "liability of any kind."  33 U.S.C. 702c.  This would apply to injunctive relief as well.  As the Supreme Court stated, "it is difficult to imagine broader language." James III, 478 U.S. at 604.

Here, it is undisputed that Plaintiffs' claims are based on damages from flooding and flood waters.  ¶¶ 1 (action based on "devastating flooding caused by . . . the MR-GO"); 23 a-j (alleging that each Plaintiff was damaged by flooding or flood waters from Hurricane Katrina).  Accordingly, Plaintiffs' FAC falls within the plain language of the Flood Control Act of 1928.  The United States is therefore entitled to immunity and the FAC must therefore be dismissed for lack of jurisdiction.

## VI.   The Relief Plaintiffs Seek is Beyond the Court's Jurisdiction to Review Executive Branch Action.

Plaintiffs ask this Court to appoint a special master and a panel of scientific experts to prepare a study and remediation plan recommending remedial measures for the MR-GO and to monitor these remedial measures for the Court.  FAC, Prayer for Relief at 90.  This request asks the Court to depart from fundamental principles governing judicial review of executive branch action.  It is therefore beyond the Court's jurisdiction under the APA.

As set forth above, with the exception of Claim Six, all of Plaintiffs' claims assert jurisdiction under the APA.  ¶¶ 167-224.  The APA provides limited jurisdiction to "(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions."  5 U.S.C. § 706.  The Court thus has a limited role in reviewing agency action under the APA.  It is not authorized to substitute its

15

judgment for that of agency or provide the mandatory injunctive relief Plaintiffs seek here. This limitation reflects the respective allocation of powers to the executive and judicial branches.

Judicial authority to hold unlawful and set aside agency action does not grant power to exercise essentially administrative functions. Federal Power Comm'n v. Transcontinental Gas Pipe Line Corp., 423 U.S. 326, 333 (1976) (a reviewing court may not "proceed by dictating to the agency, the methods, procedures, and time dimension of the needed inquiry . . . Such a procedure clearly runs the risk of propelling the court into the domain which Congress has set aside exclusively for the administrative agency.") (citations omitted).

A court may not substitute its judgment for that of an administrative agency on matters of policy or matters within the agency's expertise, even when it finds legal errors with agency decisions. See Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 66-67 (2004) (otherwise, "it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management"). The Supreme Court has also repeatedly emphasized that reviewing courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA or governing statute. See, e.g., Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 544 (1978). As the Supreme Court stated in Vermont Yankee, a court may not "impose upon the agency its own notion of which procedures are 'best' or most likely to further some vague, undefined public good." Id. at 521. In short, a court may neither direct the substance of an agency determination on remand nor supervise the step-by-step actions taken by an agency on remand.

But that is precisely what the Plaintiffs are asking the Court to do here. Plaintiffs ask the Court to "[a]ppoint a Special Master and a panel of distinguished scientific experts . . . to examine the dangers of the MR-GO and to prepare a study for the Court containing a MR-GO Remediation Plan that recommends a comprehensive set of remedial measures." FAC, Prayer for Relief at 90. Plaintiffs ask the Court to then order such remedial measures. Id.

As the Supreme Court explained in <u>Norton</u> and <u>Vermont Yankee</u>, such relief is beyond a court's jurisdiction under the APA.  <u>See</u> <u>Sierra Club v. U.S. Army Corps of Engineers</u>, 701 F. 2d 1011, 1042-49 (2d Cir. 1983) (reversing appointment of special master to oversee agencies' reconsideration on remand, "appointment of special master was not permissible" under the APA).

Plaintiffs' request that the Court issue an order "compelling Defendants to resume dredging operations within the MR-GO, or, in the alternative, to take immediate action to restore . . . the condition which existed [in 1958]" is similarly misguided.  ¶ 224.  The Court may not "proceed by dictating to the agency, the methods, procedures, and time dimension of the needed inquiry . . . Such a procedure clearly runs the risk of propelling the court into the domain which Congress has set aside exclusively for the administrative agency."  <u>Federal Power Comm'n</u>, 423 U.S. at 333.

Accordingly, even if this Court were to find that it has jurisdiction over Plaintiffs' APA claims, and even if the Court were to find statutory violations, the relief Plaintiffs seek is beyond the Court's jurisdiction under the APA.

## CONCLUSION

For the reasons set forth above, the Court lacks jurisdiction over Plaintiffs' claims and should dismiss the FAC with prejudice.

November 13, 2006                              Respectfully submitted,


SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

_____*/s/Alex Kriegsman*_____
ALEX KRIEGSMAN
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044
Tel.:   (202) 305-3022
Fax:   (202) 305-0506

17

OF COUNSEL:

OF COUNSEL:
Robert D. Northey
Mayely Boyce
Assistant District Counsel
U.S. Army Corps of Engineers
P.O. Box 60267
New Orleans, LA 70160-0267
Telephone:  (504) 862-2831
Facsimile:  (504) 862-2827

                         Attorneys For Defendants

## CERTIFICATE OF SERVICE

I, Alex Kriegsman, hereby certify that on November 13, 2006, I served a true copy of Defendants' Notice of Motion, Motion to Dismiss, and Memorandum in Support upon the following parties by ECF, electronic mail, facsimile, or first class mail:

William Aaron
waaron@goinsaaron.com
Neil Abramson
abramson@phelps.com
Jonathon Beauregard Andry
jandry@andrylawfirm.com
Thomas P. Anzelmo
tanzelmo@mcsalaw.com
Judy Barrasso
jbarrasso@barrassousdin.com
Daniel E. Becnel, Jr.
dbecnel@becnellaw.com
Robert Becnel
ROBBECNEL@aol.com
Kelly Cambre Bogart
kbogart@duplass.com
Terrence L. Brennan
tbrennan@dkslaw.com
Joseph Bruno
jbruno@brunobrunolaw.com
Thomas Darling
tdarling@grhg.net
Kevin Derham
kderham@duplass.com
Walter Dumas
wdumas@dumaslaw.com
Lawrence Duplass
lduplass@duplass.com
Calvin Fayard
calvinfayard@fayardlaw.com
Thomas Francis Gardner
gardner@bayoulaw.com
Thomas Gaudry
tgaudry@grhg.net
Joseph Guichet
jguichet@lawla.com
Jim S. Hall
jodi@jimshall.com
Robert Harvey
rgharvey@bellsouth.net
Herman C. Hoffmann, Jr.
hhoffmann@spsr-law.com
David Blayne Honeycutt
DBHoneycutt@aol.com
Ralph Hubbard

rhubbard@lawla.com
Tamara Kluger Jacobson
tkjacobson@aol.com
Michael Courtney Keller
kellerm@ag.state.la.us
Stephen Kreller
sskreller@gmail.com
Hugh Lambert
hlambert@lambertandnelson.com
John M. Landis
jlandis@stonepigman.com
Mickey Landry
mlandry@landryswarr.com
Wade Langlois
wlanglois@grhg.net
Wayne J. Lee
wlee@stonepigman.com
F. Gerald Maples
federal@geraldmaples.com
Ben Louis Mayeaux
bmayeaux@ln-law.com
Gordon McKernan
gemckernan@mckernanlawfirm.com
Gerald A. Melchiode
jmelchiode@gjtbs.com
Gerald Edward Meunier
dmartin@gainsben.com
James Bryan Mullaly
jamesmullaly1@hotmail.com
Betty Finley Mullin
bettym@spsr-law.com
J. Wayne Mumphrey
jwmumphrey@mumphreylaw.com
John Francis Nevares
jfnevares-law@microjuris.com
James L. Pate
jpate@ln-law.com
Ronnie Penton
rgp@rgplaw.com
Drew A. Ranier
dranier@rgelaw.com
Michael R.C. Riess
mriess@kingsmillriess.com
Camilo Kossy Salas
csalas@salaslaw.com

David Scott Scalia
DAVID@brunobrunolaw.com
George Simno
gsimno@swbno.org
Randall A. Smith
rasmith3@bellsouth.net
Christopher Kent Tankersley
ctankersley@burglass.com
Sidney Torres
storres@torres-law.com
William Treeby
wtreeby@stonepigman.com
Richard John Tyler
rtyler@joneswalker.com
Gregory Varga
gvarga@rc.com
Jesse L. Wimberly
wimberly@nternet.com
Bob Wright
bobw@wrightroy.com
Ashton R. O'Dwyer, Jr.
arod@odwyerlaw.com
Victor Elbert Stilwell, Jr.
vstilwell@dkslaw.com
Charles F. Seemann, Jr.
cseemann@dkslaw.com
Christopher W. Martin
martin4@mdjwlaw.com
Martin R. Sadler
sadler@mdjwlaw.com

David R. Simonton
dsimonton@sonnenschein.com
John Herr Musser
jmusser@bellsouth.net
Dennis Phayer
dphayer@burglass.com
Julia E. McEvoy
jmcevoy@JonesDay.com
George T. Manning
gtmanning@jonesday.com
Wystan M. Ackerman
wackerman@rc.com
Adrian Wagerzito
adrianwagerzito@jonesday.com
Andy Greene
agreene@sonnenschein.com
Jerry McKernan
jemckernan@mckernanlawfirm.com
Belhia Martin
belhiamartin@bellsouth.net
James Rather
jrather@mcsalaw.com
Seth Schmeeckle
sschmeeckle@lawla.com

Matthew D. Schultz
mschultz@levinlaw.com
Clay Mitchell
cmitchell@levinlaw.com
ksmith@levinlaw.com
Nina D. Froeschle
nfroeschle@osmlaw.com
Thomas V. Girardi
tgirardi@girardikeese.com
John W. deGravelles
deidson@dphf-law.com
Craig Frank Holthaus
fholthaus@dphf-law.com
Samuel Gabb
sgabb@lundydavis.com
James Roussel
jroussel@bakerdonelson.com
Arthur Gordon Grant, Jr.
ggrant@monbar.com
Clayton Morris Connors
cconnors@mumphreylaw.com
William Larzelere
blarzelere@lpw-law.com
Andre J. Mouledoux
amouledoux@mblb.com
James A. Cobb, Jr.
jac@ecwko.com
William Everard Wright, Jr.
wwright@dkslaw.com
George Moore Gilly
gillyg@phelps.com
Evans Martin McLeod
mcleodm@phelps.com
Maura Zivalich Pelleteri
mpelleteri@kfplaw.com
Nyka Scott
nscott@bakerdonelson.com
Jack Crowe
jcrowe@winston.com
Duane Kelley
dkelley@winston.com
Philip S. Brooks
pbrooks@monbar.com
Ronald Kitto
rkitto@monbar.com
Mark Hanna
mhanna@mcsalaw.com
mfarrell@mcsalaw.com
Kyle Kirsch
kpk@mcsalaw.com
John Ellison
jellison@andersonkill.com
Christopher Farrell
crfarrell@jonesday.com
Pierce O'Donnell

pod@osmlaw.com
John Smith
jsmith@mckernanlawfirm.com


Joseph Cotchett
plee@cpsmlaw.com
Barbara Lyons
blyons@cpsmlaw.com

Lawrence D. Wiedemann
FAX: 504-581-4336

Joseph W. Hecker
619 Europe Street , 2nd Floor
Baton Rouge, LA 70806

Elwood Stevens
attyecf@aol.com


Vernon Palmer Thomas
1524 N. Claiborne Ave.
New Orleans, LA 70116

Frank D'Amico
622 Baronne St.
2nd Fl.
New Orleans, LA 70113

Charles C. Foti, Jr.
Attorney General of the State of Louisiana
P.O. Box 94005
Baton Rouge, Louisiana 70804-9005


___/s/ *Alex Kriegsman*_____
                    Alex Kriegsman

c