# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

BRUCE BALFOUR AND            )        CIVIL ACTION:  No. 06-3992
NANCY BALFOUR,               )
                             )        Judge: Hon. Sarah S. Vance
            Plaintiffs,      )
                             )        SECTION: "R"
VERSUS                       )
                             )
                             )
                             )
THE HANOVER INSURANCE CO.,   )
                             )
            Defendant.       )
                             )

## THE HANOVER INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS

### I.  Introduction[1]

Plaintiffs' Complaint for Declaratory Judgment and for Damages ("Complaint") asks this

Court to ignore the provisions of the homeowners' insurance policy ("Policy") issued by The

Hanover Insurance Company ("Hanover") to plaintiffs Bruce and Nancy Balfour.  Specifically,

plaintiffs seek to use Louisiana's Valued Policy Law ("VPL")[2] to expand coverage to excluded

perils.  They do so despite this Court's holding in *Chauvin v. State Farm Fire & Cas. Co.*[3]

Plaintiffs also ask this Court to take the unprecedented step of disregarding express policy

---

[1] This brief uses footnotes only for citations and other documentation of textual points, cross references, and nonsubstantive asides.  All substantive argument is in the text.

[2] La. Rev. Stat. § 22:695.

[3] 2006 WL 2228946 (E.D. La. Aug. 2, 2006)

language that excludes coverage for water damage.  They do so in the face of overwhelming precedent enforcing such exclusions.  In light of the applicable legal principles set forth in this memorandum, plaintiffs' requests must be rejected, and their claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

In support of their Complaint, plaintiffs allege that "Hurricane Katrina ... caused massive damage, including storm water damage and interior damage to component parts of [their] residence,"[4] during which time they were insured under the Hanover Policy.[5]  They further allege that Katrina's high velocity wind force was the "'efficient proximate cause' of the damage to" their home,[6] and "that if flood waters and winds destroyed petitioners' insured property[,] that coverage is extended ... by virtue of La. Rev. Stat. 22:695 [the VPL] and policy language contained within the Hanover contract of insurance, which entitles petitioners to the total face amount of the policy of insurance."[7]  Plaintiffs ask this Court to declare that: the Policy provides full coverage for all damages caused by Hurricane Katrina; "storm surge" is covered under the Policy; the Policy's "flood" exclusion is not applicable and is ambiguous; and plaintiff's residence is a total loss and that the Policy is subject to the VPL.[8]

Plaintiffs thus take the position that the VPL requires Hanover to pay its full coverage limits, in the event of a total loss, if *any* portion of the loss was caused by a covered cause of loss.  They further seek to circumvent the Policy's Water Damage exclusion, on the ground that Katrina's wind was the "efficient proximate cause" of the Water Damage and on the ground that the exclusion is ambiguous.  But as this Court has recently ruled, the VPL does not apply unless

---

[4] Complaint, ¶ 3.
[5] Complaint, ¶ 5.
[6] Complaint, ¶ 6.
[7] Complaint, ¶ 8.
[8] Complaint, Prayer, ¶¶ A-D.

a *covered* peril causes the "total loss" of a structure.[9]  And while this Court did not rule on the issue, the VPL also applies only to losses caused by fire.  Furthermore, the Policy expressly and unambiguously provides that "**[w]e do not insure for loss caused directly or indirectly by . . . Water Damage, meaning . . . Flood**, surface water, waves, tidal water, [or] overflow of a body of water," and specifies that "[s]uch loss is excluded **regardless of any other cause or event contributing concurrently or in any sequence to the loss . . . .**" [10]  Such language has been repeatedly enforced by the courts, and undermines plaintiffs' efficient proximate cause argument.  In short, neither of plaintiffs' attacks on the contractual language in the Policy can be sustained.  We elaborate herein.

## II. The Complaint and The Policy

### A.     The Policy.

Plaintiffs allege that they were insured by Hanover Policy HVO-7068482.[11]  Among other perils, that policy insured against fire.[12]  That policy contained the following Water Damage exclusion:

> We do not insure for loss caused directly or indirectly by any of
> the following.  Such loss is excluded regardless of any other cause
> or event contributing concurrently or in any sequence to the loss.
>
> **c. Water Damage,** meaning:
>
> **(1)** Flood, surface water, waves, tidal water, overflow of a body of
> water, or spray from any of these, whether or not driven by
> wind;[13]

---

[9] *Chauvin v. State Farm Fire & Cas. Co.*, 2006 WL 2228946 (E.D. La. Aug. 2, 2006).
[10] Exhibit A, HO-3 Form, at 8-9 (emphasis added).  A certified copy of the Policy is attached to this brief as Exhibit A.  This court can consider the certified policy as an undisputed document referred to in the complaint.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir.2002).
[11] Complaint, ¶ 5.  See Ex. A.
[12] Complaint, ¶ 16.  See Ex. A.
[13] Ex. A, HO-3 Form, at 8.

The Water Damage exclusion is supplemented by the following exclusions for Weather Conditions, Acts or Decisions, and Faulty Workmanship:

> We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.
>
> a.    Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;
>
> b.    Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;
>
> c.    Faulty, inadequate or defective;
>
> (1) Planning, zoning, development, surveying, sitting;
>
> (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>
> (3) materials used in repair, construction, renovation or remodeling; or
>
> (4) Maintenance;
>
> of part or all of any property whether on or off the "residence premises."

The Policy provided coverage for covered damage to the Balfour dwelling in the amount of $264,000, with an additional $26,400 in coverage for any additional structures.[14] Loss of use of the "residence premises" resulting from covered damage is compensable up to a limit of $52,800.[15] Plaintiffs allege that "Hanover placed a valuation upon the covered property and used such valuation for the purpose of determining the premium charge on such policy."[16]

---

[14] Ex. A, amended declarations page effective 7/21/2005.
[15] Ex. A, amended declarations page effective 7/21/2005.
[16] Complaint, ¶ 14.

- 4 -

Plaintiffs allege that they "agreed to a 'Hurricane Deductible' in consideration for the agreed upon hurricane coverage," and that this was one reason they expected coverage for hurricane-related Water Damage.[17]  But no such deductible is provided by the Policy.[18]

## B.   The Alleged Loss.

Plaintiffs allege that "Hurricane Katrina ... caused massive damage, including storm water damage and interior damage to component parts of [their] residence."[19]  The damage allegedly exceeded the policy limits for the dwelling and ancillary structures and rendered those buildings total losses.[20]  At least some of that damage allegedly resulted from hurricane winds.[21]  Plaintiffs allege that Katrina's high velocity wind force was the "'efficient proximate cause' of the damage to" their home, including any damage caused by water.[22]

## C.   Plaintiffs' Claims.

The Balfours allege that, pursuant to the VPL and (unspecified) language in their Policy, they are entitled "to the total face amount of the policy of insurance."[23]  They allege that Hanover's failure to pay that amount (or enough to repair or replace their insured property) and its failure to pay additional living expenses breached the contract.[24]  Hanover is also alleged to have failed to timely and properly adjust their claim.[25]

Plaintiffs seek a declaration "that [their] policy provides full insurance coverage for the damages caused by Hurricane Katrina to [their] insured residence as well as loss of use and

---

[17] Complaint, ¶ 20.
[18] Ex. A.
[19] Complaint, ¶ 3.
[20] Complaint, ¶ 3.
[21] Complaint, ¶ 12.
[22] Complaint, ¶ 6.
[23] Complaint, ¶¶ 8, 11.
[24] Complaint, ¶ 9.
[25] Complaint, ¶¶ 8-9

additional living expenses," even if the damage was caused by "storm surge."[26]  They seek a

declaration that the "'flood' exclusion is not applicable and (sic) ambiguous."[27]  They seek a

declaration that their policy is subject to the VPL and that their home is a total loss.[28]  They also

seek attorneys' fees and bad faith damages.[29]

### III.  Legal Standards

In a motion to dismiss for failure to state a claim under Federal Rule 12(b)(6), the court

must  accept as true the well-pleaded factual allegations in the complaint.  *Herrmann Holdings*

*Ltd. v. Lucent Technologies Inc.,* 302 F.3d 552, 557 (5th Cir.2002) (quotations and citations

omitted).  The complaint must be liberally construed, with all reasonable inferences drawn in the

light most favorable to the plaintiff.  *Sloan v. Sharp,* 157 F.3d 980, 982 (5th Cir.1998).  The

dismissal will be upheld only if "it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief."  *Lowrey v. Texas A & M Univ.*

*Sys.,* 117 F.3d 242, 247 (5th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct.

99, 101-02, 2 L.Ed.2d 80 (1957)).  Documents that a defendant attaches to a motion to dismiss

are considered part of the pleadings if they are referred to in the plaintiff's complaint and are

central to her claim.  *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th

Cir.2000) (quotations and citation omitted).

### IV.  Plaintiffs' Claims Under the VPL Must Be Dismissed

**A.**       **Even If the VPL Applies To Losses Caused By Perils Other Than Fire, It Does Not
             Apply Unless a Covered Peril Caused a Total Loss.**

Interpretation of the VPL is a straight-forward matter of statutory interpretation, which is

---

[26] Complaint, Prayer, ¶¶ A-C.
[27] Complaint, Prayer, ¶ C.
[28] Complaint, Prayer, ¶ D.
[29] Complaint, Prayer, ¶ F.

a pure question of law, and is clearly appropriate for resolution on a motion to dismiss.[30]  In

interpreting a Louisiana statute, a federal court sitting in diversity jurisdiction is "bound to

dispatch [its] duty of legal interpretation as would a court of Louisiana . . . ."[31]  When

interpreting a statute, Louisiana courts follow the Louisiana Civil Code.[32]  Interpretation "starts

with the language of the statute itself."[33]  If the statute is not clear on its face, the court should

examine the legislative intent.[34]  "The meaning of a statute is to be interpreted by looking to all

the sections taken together so that no section, clause, sentence or word becomes superfluous or

meaningless."[35]  In the same spirit, an interpreting court must look to statutes "on the same

subject matter."[36]

> The VPL provides, in pertinent part, as follows:

>> Under any fire insurance policy insuring inanimate,
>> immovable property in this state, if the insurer places a valuation
>> upon the covered property and uses such valuation for purposes of
>> determining the premium charge to be made under the policy, *in
>> the case of total loss the insurer shall compute and indemnify or
>> compensate any covered loss of, or damage to, such property
>> which occurs during the term of the policy at such valuation
>> without deduction or offset*, unless a different method is to be used
>> in the computation of loss, in which latter case, the policy, and any
>> application therefor, shall set forth in type of equal size, the actual
>> method of such loss computation by the insurer. [37]

---

[30] *In re England*, 153 F.3d 232, 234 (5th Cir. 1998) (statutory interpretation is a question of law); *U.S. v. Bear Marine Serv.*, 509 F. Supp. 710, 714 (E.D. La. 1980) (where court is "dealing solely with the interpretation and applicability of [a] statute," such a question is appropriate for resolution on a motion to dismiss).
[31] *General Elec. Capital Corp. v. Southeastern Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).
[32] *Louisiana Associated Gen. Contractors, Inc. v. Louisiana Dep't of Agriculture & Forestry*, -- So. 2d --, 2006 WL 408363 (La. 2006).
[33] *Denham Springs Econ. Dev. Dist. v. All Taxpayers, Property Owners*, 894 So. 2d 325, 330 (La. 2005).
[34] *In re Louisiana Health Serv. & Indem. Co.*, 749 So. 2d 610, 615-16 (La. 1999) (stating that "the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole"); *see also* La. Civ. Code Ann. arts. 10, 12.
[35] *Cleco Evangeline, LLC v. Louisiana Tax Com'n*, 808 So.2d 740, 744 (La. App. 1 Cir. 2001) (citation omitted); *accord ABL Mgmt., Inc. v. Board of Sup'rs of Southern Univ.*, 773 So. 2d 131, 135 (La. 2000).
[36] *See* La. Civ. Code art. 13.
[37] La. Rev. Stat. § 22:695 (emphasis added).  The limitation to fire insurance policies is discussed at IV. B, *infra*. For purposes of this section, that limitation is disregarded, to show that the VPL does not support the plaintiffs' claim, even if it is applicable to a hurricane loss.

Plaintiffs' Policy does have a monetary limit and that limit was used in computing the premium. It is alleged that no alternate valuation method was set forth as required by the statute,[38] and that allegation is taken as true for purposes of this motion.

Also taken as true is plaintiffs' allegation that their house was a total loss.[39] Plaintiffs do not allege that the total loss was caused by a covered cause of loss. Instead, they allege that "if flood waters and winds" caused the loss, then the VPL requires payment of the full policy limit for damage to the structures.[40] Although water damage is excluded under the Policy,[41] plaintiffs' theory is that any such water damage does not matter, so long as their house is a total loss and suffered some covered damage.

This Court has recently rejected this reading of the VPL,[42] concluding that the construction urged by plaintiffs must be rejected because it leads to absurd consequences:

> If the VPL has the meaning plaintiffs ascribe to it, an insured holding a valued homeowner's policy that covered wind damage but specifically excluded flood losses could recover the full value of his policy if he lost 20 shingles in a windstorm and was simultaneously flooded under 10 feet of water. The insurer would thus have to compensate the covered loss of a few shingles at the value of the entire house. In effect, the insurer would be required to pay for damage not covered by the policy and for which it did not charge a premium. Such a result would be well outside the boundaries of any party's reasonable expectation of the operation of an insurance contract. The Court seriously doubts that the Louisiana legislature intended such a commercially unreasonable result when it adopted the VPL. Regardless of how the Court might choose to interpret the statutory language in a vacuum, it is much less likely to reach the same interpretation when the result would run contrary to common sense. Such an interpretation would offend the cardinal rule of statutory construction in

---

[38] Complaint, ¶¶ 14-15.
[39] Complaint, ¶ 3.
[40] Complaint, ¶ 8.
[41] Although plaintiffs challenge application of the water damage exclusion, we assume such exclusion to be enforceable for purposes of this VPL analysis.
[42] *Chauvin.*, 2006 WL 2228946.

Louisiana, that courts not apply the terms of a statute in a way that leads to absurd consequences.[43]

Moreover, interpreting the statute to apply only when a "total loss" is also a "covered loss" best conforms to the purpose of the law, "to discourage insurers from writing insurance and collecting premiums for more than the property was worth and to deter the risk of intentional destruction that can result when property is over-insured."[44] Interpreting the statute as the plaintiffs contend "does nothing to further the foregoing statutory purposes. If anything, were insurers required to pay the policy limits for partially covered losses, the likely result would not be deterrence of excessive premiums, but dramatically higher premiums."[45]

Accordingly, this Court recognized that "the VPL was designed to fix valuations of losses and was not intended to expand coverage to excluded perils.... Louisiana's VPL does not apply when a total loss is not caused by a covered peril."[46] Plaintiffs therefore cannot use the VPL here to expand coverage that is not otherwise provided in the Policy.

**B.      The VPL Does Not Apply To Losses Caused By Perils Other Than Fire.**

**1.      By Its Terms, the VPL Applies Only To Fire Policies, Which Includes Multi-Peril Policies Only To the Extent They Apply To the Peril Of Fire.**

As previously noted, the VPL's command applies only "[u]nder any fire insurance policy." The VPL is part of the statutory scheme governing the Louisiana "Standard Fire Policy," Part 15 of Chapter 1 ("General Provisions") of the Louisiana Insurance Code. The VPL must be read together with the other statutes concerning the Standard Fire Policy.[47]

---

[43] *Id.* at *5 (citations omitted).

[44] *Id.*

[45] *Id.* at *6.

[46] *Id.* at *8.

[47] *See Anthony Crane Rental, L.P. v. Fruge*, 859 So. 2d 631, 634 (La. 2003) ("[I]t is a well-recognized and long-established rule of statutory construction that . . . all statutes on the same subject matter should be read together and interpreted as a whole       . . . ."); *see also* La. Civ. Code art. 13 ("Laws on the same subject matter must be interpreted in reference to each other.").

When read in the context of the other statutes concerning the Standard Fire Policy, it is clear that, in the case of a multi-peril policy such as plaintiffs' Policy, the term "fire insurance policy" refers to the coverage for fire which is provided by a multi-peril policy, and not to the coverage provided for other perils.[48]   Section 22:691, which sets forth the terms of the Standard Fire Policy, provides that "No policy or contract of fire insurance shall be made, issued or delivered by any insurer, or by any agent or representative thereof, on any property in this state, unless it shall conform as to all provisions, stipulations, agreements and conditions, with such [standard] form of policy."[49]   However, pursuant to the plain terms of the statute, a multi-peril policy need not comply with the terms of the Standard Fire Policy with respect to perils other than fire:

> Any policy or contract otherwise subject to the provisions of Subsections A and B hereof [requiring the use of the standard fire policy form], which includes either on an unspecified basis as to the coverage or for a single premium, coverage against the peril of fire and substantial coverage against other perils *need not comply with the provisions of Subsections A and B hereof, provided (1) such policy or contract shall afford coverage, with respect to the peril of fire, not less than the coverage afforded by said standard fire policy*, (2) the provisions in relation to mortgagee interests and obligations in said standard fire policy may be incorporated therein without change, (3) such policy or contract is complete as to all of its terms without reference to the standard form of fire insurance policy or any other policy, and (4) the commissioner is satisfied that such policy or contract complies with the provisions hereof.[50]

It is further provided that policies covering perils other than fire "may contain provisions and stipulations inconsistent with the standard policy if applicable only to such other perils."[51]

---

[48] There is no question that provisions governing fire insurance policies apply fully to the fire coverage contained within a multi-peril policy. *Rodriguez v. Northwestern Nat'l Ins. co.*, 358 So. 2d 1237, 1241 (La. 1978).  The issue of whether statutes governing fire insurance apply to other coverages in multi-peril policies was presented in *Benton Casing Service v. Avemvo Insurance Co.*, 379 So. 2d 225, 226 (La. 1979), but not decided, because the statute was inapplicable on other grounds.

[49] LA. REV. STAT. § 22:691(A).

[50] *Id.* § 22:691(E)(2) (emphasis added).

[51] *Id.*, § 22:691(E)(1).

The use of the Standard Fire Policy form "shall not be required in the event the policy forms covering the peril of fire are equivalent to or exceed the provisions of the standard fire policy."[52] To the extent there is any inconsistency between a policy form and the Standard Fire Policy with respect to the peril of fire, the Standard Fire Policy terms prevail.[53] Thus, the other statutes governing the Standard Fire Policy make clear that, in the case of a multi-peril policy, such as the Policy issued to plaintiffs, an insurer need not comply with the Standard Fire Policy terms with respect to perils other than fire. The VPL is *in pari materia* with those statutes.

Judge McNamara of this Court analyzed the statutes that govern the Standard Fire Policy in *In re Consolidated Cos.*,[54] and held that the VPL was not applicable to losses caused by perils other than fire. *Consolidated Cos.* involved coverage for vandalism and theft losses under an "all risk" commercial property insurance policy.[55] The insurer, in adjusting the loss, deducted for depreciation. The insured claimed that such deductions were not permitted under the VPL.[56]

Judge McNamara recognized that the VPL is part of the Standard Fire Policy statutory scheme. He concluded that, because the policy at issue provided multi-peril coverage for a single premium, terms governing the Standard Fire Policy were inapplicable to the coverage for perils other than fire.[57] The court held that "Sections A and B of R.S. 22:691, which mandate a particular form with standard provisions, conditions, etc., and would also trigger the application of R.S. 22:695 [the VPL] for valuation purposes, *need not be complied with, with respect to the non-fire perils covered by the policy*."[58] The court further  held that "the valuation provisions of R.S. 22:695 should not be read into the . . . policy coverage for theft and vandalism, which are

---

[52] *Id.*, § 22:691.2(A).
[53] *Id.*, § 22:691.2(B), (C).
[54] *In re Consolidated Cos.*, 185 B.R. 223 (E.D. La. 1995), *aff'd mem*, 106 F.3d 396 (5th Cir. 1996)
[55] *Id.* at 224.
[56] *Id.*
[57] *Id.* at 225, relying on LA. REV. STAT. § 22:691(E).
[58] *Id.* at 226 (emphasis added).

triggered by the loss suffered in this case."[59]  The Fifth Circuit affirmed in an unreported

memorandum.

Judge McNamara relied in part on *Graham v. Milky Way Barge, Inc.*,[60] in which the Fifth

Circuit had construed LA. REV. STAT. § 22:692, another statute concerning the Standard Fire

Policy.  Section 22:692 provides as follows:

> No *policy of fire insurance* issued by any insurer on property in
> this state shall hereafter be declared void by the insurer for the
> breach of any representation, warranty or condition contained in
> the said policy or in the application therefor.  Such breach shall not
> avail the insurer to avoid liability unless such breach (1) shall exist
> at the time of the loss, and be either such a breach as would
> increase either the moral or physical hazard under the policy, or (2)
> shall be such a breach as would be a violation of a warranty or
> condition requiring the insurer to take and keep inventories and
> books showing a record of his business.[61]

In *Graham,* the Fifth Circuit concluded that "[b]ased upon the language of the statute

itself, the provision would appear to apply to fire policies only," and held that the statute was

inapplicable to a non-fire loss involving the capsizing of a vessel.[62]  The Fifth Circuit would

undoubtedly reach the same result in interpreting the VPL because the words "policy of fire

insurance" in § 22:692 cannot reasonably be construed to mean something different than the

words "fire insurance policy" in § 22:695.[63]

Graham provides substantial support for *Consolidated Cos.*, which is directly on point

here.  The Policy issued to plaintiffs, like the policy in *Consolidated Cos.*, provides multi-peril

coverage for a single premium.  With respect to the coverage for dwellings, which is at issue in

[59] *Id.*
[60] *Graham v. Milky Way Barge, Inc.*, 824 F.2d 376 (5th Cir. 1987)
[61] LA. REV. STAT. § 22:692 (emphasis added) (*quoted in Graham*, 824 F.2d at 381).
[62] *Graham,* 824 F.2d at 381-82.
[63] *See also Kenmore Constr. Co. v. Maryland Cas. Co.*, 348 N.E.2d 374, 377-78 (Ohio Ct. App. 1973) (holding that Ohio valued policy statute applied only to losses caused by fire or lightning); *Nalley v. Home Ins. Co.*, 157 S.W. 769, 774-75 (Mo. 1913) (holding that Missouri valued policy statute applied only to losses caused by fire or lightning).

this action, the Policy provides that Hanover "insure[s] against *risk of direct loss* to property described in Coverage[] A . . . only if that loss is a physical loss to property," subject to certain limitations and exclusions.[64]  The Policy was written for a single premium, not separate premiums for particular perils.[65]  Accordingly, the VPL "need not be complied with, with respect to the non-fire perils covered by the policy."[66]

At the argument in *Chauvin,* this Court recognized that multi-peril policies could contain terms inconsistent with the Standard Fire Policy, but suggested that this required inclusion of some policy language differentiating between fire losses and other losses.  That would be true under § 22:691(E)(2), were Hanover seeking to vary the language of the Standard Fire Policy itself.  But the provisions of the Standard Fire Policy are contained in § 22:691.  The VPL is contained in a different section, § 22:695.  The VPL dictates what payment is due under a fire policy, but does not require that any language to that effect be included in the policy.  Because the Policy here does not describe the effect of the VPL on fire losses, it need not explain that nonfire losses are treated differently.  Because the limitation to fire losses is inherent in the VPL, other losses are automatically beyond its effect.

2.      **Other Similar Statutes, In Contrast, Expressly Apply to Multiple Perils.**

A comparison of the VPL with other similar statutes demonstrates that the legislature did not intend to apply the VPL to perils other than fire:

| La. Rev. Stat. § 22:667(A) (Valued Policy Law for Personal Property) | La. Rev. Stat. § 22:695(A) (Valued Policy Law for Immovable Property) | La. Rev. Stat. § 22:694 (Co-insurance Clauses) |
| --- | --- | --- |
| "In any case in which a policy includes coverage for loss of or damage to | "Under any fire insurance policy insuring inanimate, immovable property in this | "No policy of fire, lightning or windstorm insurance covering property or risks in |

---

[64] Exhibit A, HO-3 Form, at 6.

[65] *Id.,* Declarations.

[66] *Consolidated Cos.,* 185 B.R. at 226.

- 13 -

**personal property of the insured, from whatever cause,** *if the insurer places a valuation upon* the specific item of *covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, the insurer shall compute any covered loss of or damage to such property which occurs during the term of the policy at such valuation . . . .*"

state, *if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy,* in the case of total loss *the insurer shall compute* and indemnify or compensate *any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation . . . .*"

this state shall contain any clause or provisions requiring the insured to take out or maintain a larger amount of insurance than that covered by such policy or providing in any way that the insured shall be liable as a co-insurer with the insured unless such clause has been approved by the fire insurance division and there has been a consideration allowed in the rate of premium charged for such policy."

"[L]aws on the same subject matter must be interpreted in reference to each other."[67] Section 22:667, quoted in the left column, is the Louisiana valued policy law for personal property. It was enacted in 1974, and amended in 1985.[68] Section 22:695, the VPL for immovable property, had previously been enacted in 1900, but was repealed in 1988 and later re-enacted in 1991.[69] When the legislature re-enacted the VPL in 1991, it did not adopt the language that had been used up until 1988, but instead drew very heavily from the valued policy statute for movables, § 22:667(A). The present versions of the two valued policy statutes are, in large part, identical, as is evident from a comparison of the left-hand column and the center column above. However, there is a very important difference in the lead-in language. Section 22:695 applies "[u]nder any fire insurance policy," whereas § 22:667 applies "[i]n any case in which a policy includes coverage for loss of or damage to personal property of the insured, *from whatever cause . . . .*" (Emphasis added.)

If the legislature had intended the VPL to apply to perils other than fire, it could easily have adopted the text of § 22:667(A) and written the VPL to apply "in any case in which a policy

---

[67] *Fontenot v. Reddell Vidrine Water Dist.*, 836 So. 2d 14, 20 (La. 2003).
[68] *See* 1974 La. Acts, No. 578, § 1; 1985 La. Acts, No. 985, § 1.
[69] *See* 1964 La. Acts, No. 464, §§ 1, 2; 1988 La. Acts, No. 951, § 1; 1991 La. Acts, No. 850, § 1.

includes coverage for loss of or damage to immovable property of the insured, from whatever cause . . . ." The fact that the legislature did not adopt the introductory clause of § 22:667(A) in drafting the VPL, but adopted the rest of § 22:667(A) essentially verbatim, is a powerful indication that the legislature did *not* intend the VPL to apply to any perils other than fire.[70]

The legislative intent is further confirmed by comparing the VPL with § 22:694, which is set forth in the right hand column above. Section 22:694 is, of course, the statute immediately preceding the VPL, § 22:695, and is also in the Standard Fire Policy part of the Louisiana Insurance Code. Section 22:694, unlike the VPL, expressly applies to any "policy of fire, lightning or *windstorm* insurance . . . ." (Emphasis added.) If the legislature had intended the VPL to apply to "windstorm" or to other perils, it would have said so, as it did in § 22:694, a sister statute.

### 3. The Legislative History of the VPL Further Demonstrates That it Applies Only to Fire Losses

The legislative history demonstrates that, when the VPL was reenacted in 1991, two proposed versions of the bill contained language which would have applied the VPL, more broadly, to any policy that includes fire coverage:

| Proposed Version of Bill (not enacted) | Final Version of Bill (La. Rev. Stat. § 22:695 (emphasis added).) |
|---|---|
| *In any case in which a policy includes coverage for loss of, or damage to, property of the insured from the peril of fire* . . .*the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the* | *Under any fire insurance policy* insuring inanimate, immovable property in this state . . . in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at |

---

[70] *See State v. Brady*, 310 So. 2d 593, 596 (La. 1975) (concluding that, where two statutes were nearly identical except for a small, but significant difference in wording, the difference in wording demonstrated the legislature's intent); *Fontenot*, 836 So. 2d at 25 (reasoning that, if the legislature had intended a particular result, it could easily have adopted language used in another statute, and that its failure to do so was "telling").

| | |
|---|---|
| policy at such valuation without deduction or offset . . . .[71] | such valuation without deduction or offset . . . . |

A comparison of the proposed versions of the bill with the final version demonstrates that the Louisiana Legislature made a conscious decision to amend the proposed bill such that it would apply only "under any fire insurance policy" rather than "[i]n any case in which a policy includes coverage for loss of, or damage to, property of the insured from the peril of fire . . . ."[72]

The "Digest" of the 1991 bill, as originally introduced, further demonstrates that the VPL applies only to fire losses.[73] The original version of the bill contained an introductory clause which would have applied the statute to "Any insurer of a policy of fire insurance . . . ." This language is very similar to the final, enacted version of the statute. The "Digest" for the original version of the bill states as follows:

> Proposed law would provide for a "valued policy clause" which would prohibit a fire insurance policy from insuring property *against fire loss* in an amount less than the total amount for which the property is insured. Would provide for circumstances in which the insurer would pay the full amount of the coverage, either in case of total destruction or in case of partial damage when the property could be restored to its original condition.[74]

The Digest further evidences the legislative intent to apply the VPL only to fire losses.[75]

According to minutes of a meeting of the Louisiana House Commerce Committee, the sponsor of the bill which reenacted VPL described its purpose as follows:

---

[71] Reengrossed Version of La. House Bill No. 776 (1991), at p. 1 (attached at Ex. B hereto) (emphasis added); *see also* Engrossed Version of La. House Bill No. 776 (1991), at p. 1 (attached at Ex. B hereto).)

[72] *See Department of Transp. & Dev. v. Walker*, 658 So. 2d 190, 196 (La. 1995) (comparing original and final versions of bill to ascertain legislative intent).

[73] Original version of La. House Bill No. 776 (1991), at p. 1 (attached as Ex. C hereto).

[74] *Id.*, Digest, at p. 3 (italics added).

[75] *See Conerly v. State*, 714 So. 2d 709, 714 (La. 1998) (recognizing that "[a]lthough the Digest does not form part of the law, it was presented together with the proposed legislation and serves to elucidate the understanding and intent of the legislators").

> Representative Dimos presented House Bill No. 776, which would provide for valued policy clauses in fire insurance policies.  He explained that policies were written for certain amounts, such as a policy on a city lot of $100,000.  The agent writes the policy for that amount, *a fire loss is sustained*, and the insurer determines the extent of the loss, whether partial or total.  The policyholder thinks that he should recover $100,000 for his loss since that was the amount of his policy.  However, the insurer's expert determines that the value of the property was only $75,000, so that is what the policyholder gets.  Representative Dimos said that this was what he was trying to correct.[76]

Representative Dimos' summary of the statute as applicable to fire losses further demonstrates that the statute was intended to apply to fire losses, not losses caused by other perils.

**4.     The Complaint Fails to State a Claim Under the VPL Because It Does Not Allege That Any Part of Plaintiff's Loss Was Caused By Fire.**

Given that the VPL applies only to fire losses, for the reasons stated above, it is clear that the Complaint fails to state a claim under the VPL.

## V.  Plaintiffs' Attacks On the Water Exclusion Must Be Rejected

**C.     Plaintiffs' Water Damage Is Expressly Excluded Under the Policy.**

Plaintiffs allege that "Hurricane Katrina … caused massive damage, including storm water damage … to component parts of [their] residence."[77]  Hanover does not dispute that plaintiffs are entitled to payment for damage caused solely by wind and/or by rain entering through openings created by wind damage.  But plaintiffs go further, seeking to find that all damages from Hurricane Katrina are covered (including water damage), that "storm surge" is covered, and that the Policy's Water Damage exclusion is not applicable or ambiguous.[78]

In seeking to avoid the effects of the Policy's Water Damage exclusion, plaintiffs' Complaint squarely presents a straightforward and simple question of insurance policy

---

[76] Louisiana House Commerce Committee, Minutes of June 6, 1991 Meeting, at p. 7 (attached as Ex. D hereto) (emphasis added).
[77] Complaint, ¶ 3.
[78] Complaint, Prayer ¶¶ A-C.

- 17 -

interpretation:  Did the massive water inundation of New Orleans at the time of Hurricane

Katrina constitute a "flood," "surface water" or "overflow of a body of water"?  Of course it did.

Newspapers across the nation called it a flood.[79]  Judge Duval has described these cases as

"litigation arising out of the canal levee and/or floodwall breaches and subsequent *flooding* which

occurred after Hurricane Katrina struck New Orleans . . . ."[80]  As Magistrate Judge Wilkinson put

it, "[t]hese are Hurricane Katrina *flooding* cases."[81]  Judge Senter of the Southern District of

Mississippi has also recently held that "the inundation which occurred at the time of Hurricane

Katrina was a flood, as that term is ordinarily understood. . . ."[82]

The Policy expressly and unambiguously provides that "**[w]e do not insure for loss**

**caused directly or indirectly by . . . Water Damage, meaning . . . Flood**, surface water, waves,

tidal water, [or] overflow of a body of water."[83]  Moreover, the Policy specifies that "[s]uch loss

is **excluded regardless of any other cause or event contributing concurrently or in any**

**sequence to the loss . . . .**"[84]  (This is the "Anti-Concurrent-Cause" language.)

Plaintiffs attempt to escape the foregoing language by alleging that Katrina's high

velocity wind force was the "'efficient proximate cause' of the damage to" their home.[85]  The

Anti-Concurrent-Cause provision makes efficient proximate cause analysis irrelevant.  Both this

Court and another federal judge in Louisiana have concluded that an exclusion with such an anti-

---

[79] *See* footnote 111, *infra.*
[80] (Order & Reasons on Motion to Disqualify, dated May 4, 2006, at p. 2 (emphasis added); *see also id.* at pp. 3, 4, 10, 12, 16, 17.)
[81] (Order on Motions for Disqualifications, dated Apr. 19, 2006, at p. 2.)
[82] *Buente v. Allstate Prop. & Cas. Ins. Co.*, 2006 WL 980784, at *1 (S.D. Miss. Apr. 12, 2006).
[83] Exhibit A, HO-3 Form, at 8-9 (emphasis added).
[84] *Id.*
[85] Complaint, ¶ 6.  Essentially the same "efficient proximate cause" argument underlies complaints that the exclusion denies coverage for "damages arising from an occurrence or covered peril as defined in the policy" and fails to provide for "repair of any covered damages resulting from a covered accident and direct physical loss which resulted from high velocity hurricane winds."  Complaint, ¶ 11.

concurrent-causation clause unambiguously excludes coverage for losses within its purview, even if a covered cause of loss arguably caused or contributed to the loss.[86]

Louisiana law simply does not provide any basis for this Court to predict that Louisiana would take the unprecedented step of refusing to apply the Water Damage exclusion here.  There is no ambiguity in the exclusion's language, either in the abstract or as applied to these facts. "Flood" has a plain and ordinary meaning:  a substantial inundation of land that is normally dry, regardless of the cause.  It does not matter that the flooding may have resulted from a breach of the levees.  The Water Damage exclusion clearly encompasses the release of water from a canal, as a result of a break in a canal wall.  The Eighth Circuit and three state appellate courts have considered levee breaks and similar events like dam failures, and have unanimously found the exclusion applicable even if human negligence caused or contributed to the event.[87]

The Hurricane Katrina catastrophe has rightfully generated a tremendous outpouring of support for its victims.  But the gravity of the losses suffered in New Orleans and its environs does not justify what the plaintiffs seek to accomplish here:  force Hanover to provide coverage for risks for which it did not collect any premium, and which are not part of the Policy agreed upon by plaintiffs.

### 1.    Under Louisiana Law, Insurance Policies Must Be Enforced As Written.

"Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical

---

[86] *See Travelers Indem. Co. v. Powell Ins. Co.*, 1996 U.S. Dist. LEXIS 15041 (E.D. La. Oct. 4, 1996); *Prytania Park Hotel v. General Star Indem. Co.*, 896 F. Supp. 618, 624 (E.D. La. 1995).
[87] *TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.*, 114 F.3d 731, 733 (8th Cir. 1997); *Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256, 261-62 (Mo. Ct. App. 1997); *E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.*, 444 N.Y.S.2d 321, 321-22 (N.Y. App. Div. 1981); *Kane v. Royal Ins. Co.*, 768 P.2d 678, 681 (Colo. 1989); *Bartlett v. Cont'l Divide Ins. Co.*, 697 P.2d 412, 413 (Colo. Ct. App. 1984).

meaning."[88] "If the policy wording at issue is clear and unambiguously expresses the parties'

intent, the insurance contract must be enforced as written."[89]  Simply put, "[c]ourts lack the

authority to alter the terms of insurance contracts under the guise of contractual interpretation

when the policy's provisions are couched in unambiguous terms."[90]  "The rules of construction

do not authorize a perversion of the words or the exercise of inventive powers . . . ."[91]

There is no basis to conclude that the Water Damage Exclusion generally, or the word

"flood" specifically, is ambiguous.  The Water Damage Exclusion is subject to the Louisiana

Civil Code's rules of construction.[92]  "The words of a contract must be given their generally

prevailing meaning."[93]  "When the words of a contract are clear and explicit and lead to no

absurd consequences, no further interpretation may be made in search of the parties' intent."[94]

An insurance policy "should not be interpreted in an unreasonable or strained manner under the

guise of contractual interpretation to enlarge or to restrict its provisions beyond what is

reasonably contemplated" because "[t]he rules of construction do not authorize a perversion of

the words or the exercise of inventive powers to create an ambiguity . . . ."[95]  An ambiguity

exists only if the "policy provision is susceptible to two or more *reasonable*

interpretations . . . ."[96]  The mere fact that a policy could have been worded more clearly does

not create an ambiguity.[97]  Moreover, "merely because an insurance policy is a complex

---

[88] *Edwards v. Daugherty*, 883 So. 2d 932, 940-41 (La. 2004){ TA \l "*Edwards v. Daugherty*, 883 So. 2d 932 (La. 2004)" \s "Edwards v. Daugherty, 883 So. 2d 932 (La. 2004)" \c 1 }.
[89] *Id.* at 941.
[90] *Id.* { TA \s "Edwards v. Daugherty, 883 So. 2d 932 (La. 2004)" }
[91] *Id.*
[92] *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003).
[93] LA. CIV. CODE art. 2047; *Bethea v. St. Paul Guardian Ins. Co.*, 2002 WL 31001844, at *2 (E.D. La. Sept. 4, 2002) (Duval, J.).
[94] LA. CIV. CODE, art. 2046.
[95] *Cadwallader*, 848 So. 2d at 580.
[96] *Id.* (emphasis in original).
[97] *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 766 (La. 1994).

instrument requiring analysis to understand it does not render it ambiguous."[98]  "[I]n the absence

of a conflict with statutes or with public policy, insurers have the same rights as do individuals to

limit their liability and to enforce whatever conditions they impose upon their obligations."[99]

The Louisiana Supreme Court has strongly cautioned courts applying Louisiana law not

to construe simple words in insurance policies in an inventive manner to create an ambiguity.  In

*Cadwallader*, a lower court found the term "relative," used in an uninsured motorist policy,

ambiguous because it might or might not include a foster child.  The Louisiana Supreme Court

reversed, stressing that "relative" is "a rather simple word with a well-established common sense

meaning which is referenced in the insurance policy in a clearly worded context."[100]  The lower

court had erred when it "ignored the fundamental precept that it was required to interpret the

term using its plain, ordinary and generally prevailing meaning" and had "enlarged the insurance

coverage beyond that which was reasonably contemplated by the unambiguous term."[101]

Similarly here, the word "flood" is a simple word with a plain meaning.

> **2.  The Policy, in Clear and Unambiguous Language, Excludes Losses Caused
> Directly or Indirectly by Flood, Surface Water or Overflow of a Body of
> Water, Regardless of Any Other Contributing Cause.**

The Policy contains the following language:

> We do not insure for loss caused directly or indirectly by any of
> the following.  Such loss is excluded regardless of any other cause
> or event contributing concurrently or in any sequence to the loss.

> **c.  Water Damage**, meaning:

>> (1) Flood, surface water, waves, tidal water, overflow of a body of
>> water, or spray from any of these, whether or not driven by
>> wind;[102]

---

[98] *Id.*
[99] *Cadwallader*, 848 So. 2d at 583.  *See also* La. R.S. 22:620(A)(4).
[100] *Id.* at 584.
[101] *Id.* at 583-84.
[102] Ex. A, Form HO-3, at 8.

The Water Damage exclusion could not be any clearer or more comprehensive.  In

*American Manufacturing Corp. v. National Union Fire Insurance Co.*, 14 So. 2d 430, 435 (La.

1942), the Louisiana Supreme Court has held that the words "directly or indirectly," when used

in an insurance policy exclusion, should be construed broadly.  The court emphasized the use of

the words "directly or indirectly" in an exclusion, as a basis for holding that, where an excluded

cause of loss was indirect but within the chain of causation, the exclusion applied.[103]  The Policy

here not only provides that a loss is excluded if it is caused "directly or indirectly" by Water

Damage, but also that "[s]uch loss is excluded regardless of any other cause or event contributing

concurrently or in any sequence to the loss."  This Anti-Concurrent Cause language makes clear

that the excluded cause of loss, *i.e.*, flood, etc., is not covered regardless of what factors might

have caused or contributed to the Water Damage.[104]

In *Dobson v. Allstate Insurance Co.*,[105] this Court held that the plaintiffs had no

possibility of recovering against their insurance agents on claims relating to Hurricane Katrina

because "to the extent that the plaintiffs allege that the agent's representations about coverage for

hurricane damage misled them as to whether flooding caused by hurricanes would be covered

under the policy, they were in possession of clear policy language indicating that such coverage

was excluded.[106]

In another case involving flooding in New Orleans, this Court concluded that a water

damage exclusion with language essentially identical to the language in the Policies was

unambiguous and plainly applicable.  In *Travelers Indemnity Co. v. Powell Insurance Co.*,[107]

---

[103] This case is discussed more fully at p. 31, *infra*.
[104] *Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.*, 2002 U.S. Dist. LEXIS 3594, at *11 (N.D. Tex. Mar. 5, 2002) (explaining the term anti-concurrent causation); *see also* Section ___, *infra*.
[105] *Dobson v. Allstate Insurance Co.*, 2006 WL 2078423 (E.D. La. July, 21, 2006).
[106] *Id.* at *11 (holding that claims against insurance agents were fraudulently joined with claims against insurers).
[107] *Travelers Indem. Co. v. Powell Ins. Co.*, 1996 U.S. Dist. LEXIS 15041 (E.D. La. Oct. 4, 1996)

Travelers was sued to recover for water damage to golf carts. New Orleans had been affected by "torrential rains that caused severe flooding and considerable property damage . . . ."[108] The golf carts were insured by Travelers under a commercial insurance policy containing a water damage exclusion. This Court granted Travelers summary judgment based on a water damage exclusion, almost identical to that here.[109] This Court held that the exclusion "unambiguously excludes coverage for flood damage to the golf carts," and stressed that "[t]his Court cannot strain to find an ambiguity in the policy where none exists . . . ."[110]

3.     **The Water Damage Exclusion Is Clearly Applicable.**

a)     **The Word "Flood" Embraces All Inundations Of Normally Dry Land.**

The water damage that occurred at the time of Hurricane Katrina was clearly a "flood." Newspapers across the country called it a "flood."[111] The term "flood" has been repeatedly defined in dictionaries and case law as the inundation of ordinarily dry land. In *Florida East Coast Railway. Co. v. United States*,[112] for example, the Fifth Circuit, interpreting a federal statute, adopted a definition of "flood" as including "water which inundates an area of the

---

[108] *Id.* at *3.
[109] It provided:

> We [Travelers] will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."
> * * *
> e. Water
>> (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; . . . [*Id.*]

[110] *Id.* at *8.
[111] *See, e.g.*, Joseph B. Treaster & Kate Zernike, "Hurricane Slams Into Gulf Coast," N.Y. Times, Aug. 30, 2005, at A1 (reporting that in New Orleans "[f]loodwaters rose to rooftops in one neighborhood" and that "[s]ome of the worst damage reports came from east of New Orleans with an estimated 40,000 homes reported flooded in St. Bernard Parish"); Peter Whoriskey & Guy Gugliotta, "Storm Thrashes Gulf Coast," Washington Post, Aug. 30, 2005, at A1 (quoting Gov. Blanco as stating that "eastern New Orleans and St. Bernard Parish east of the city had been 'devastated by floodwaters and high winds'" and also reporting that "St. Bernard Parish reportedly had 40,000 flooded homes"); Kevin Sack, "Katrina's Rising Toll," Los Angeles Times, Aug. 31, 2005, at A1 (reporting that, in New Orleans, "[i]n broad swaths, the flooding submerged low-lying neighborhoods up to the rooftops . . . ."); Howard Witt & Dahleen Glanton, "Katrina Wallops Coast," Chicago Tribune, Aug. 30, 2005, at 1 (reporting "massive flooding" and that "New Orleans itself was cut off from all land access by surging floodwaters that submerged every street and expressway leading into the Big Easy").
[112] *Florida E. Coast Ry. Co. v. United States*, 519 F.2d 1184 (5th Cir. 1975)

surface of the earth where it ordinarily would not be expected to be . . . ."[113] Numerous other

courts have defined the term "flood," as used in water damage exclusions, as the inundation of

normally dry land.[114] Overall, courts have agreed "that a bursting dam or dike releasing an

artificially impounded body of water constitutes a flood within the ambit of a flood exclusionary

clause . . . ."[115]

Louisiana cases have repeatedly described an inundation resulting in whole or in part

from human acts or omissions as a "flood." Perhaps most telling, the Louisiana Supreme Court

recently noted that, at the time of Hurricane Katrina, "[i]n the City of New Orleans, where the

levees failed, *flood waters* swamped large portions of the City."[116] A Louisiana statute similarly

uses "flood" to describe an inundation that would be caused by failure to repair a levee.[117]

---

[113] *Id.* at 1192 (*quoting Stover v. United States*, 204 F. Supp. 477, 485 (N.D. Cal. 1962), *aff'd*, 332 F.2d 204 (9th Cir.)).

[114] *See, e.g., Kane v. Royal Ins. Co.*, 768 P.2d 678, 681 (Colo. 1989) (concluding that "[t]he inundation of insureds' normally dry land falls squarely within the[] generally accepted definitions of the term 'flood'"); *Bartlett v. Cont'l Divide Ins. Co.*, 697 P.2d 412, 413 (Colo. Ct. App. 1984) (defining flood as "a body of water (including moving water) . . . overflowing or inundating land not usually covered," and noting that "no distinction is made between natural and artificial causes"); *Wallace v. McKinnis*, 2005 Ohio 4058, 2005 Ohio App. LEXIS 3073, at *5 (Ohio Ct. App. Aug. 8, 2005) (adopting definition of "flood" as including "a great stream of something that flows in a steady course" and "a large quantity widely diffused; superabundance"); *Wallis v. Country Mut. Ins. Co.*, 723 N.E.2d 376, 381 (Ill. App. Ct. 2000) (recognizing that flood waters include "water that escapes from a watercourse in large volumes and flows over adjoining property in no regular channel") (*quoting* BLACK'S LAW DICTIONARY 1585 (7th ed. 1999)); *Whitt v. State Farm Fire & Cas. Co.*, 734 N.E.2d 911, 914 (Ill. App. Ct. 2000) (defining "flood" as "an inundation of water over land not usually covered by it") (*quoting* BLACK'S LAW DICTIONARY 640 (6th ed. 1990)).

[115] Russell G. Donaldson, "*What is 'Flood' Within Exclusionary Clause of Property Damage Policy*," 78 A.L.R.4th 817, § 2(a) (1990 & Supp. 2005).

[116] *State v. All Property and Cas. Ins. Carriers Authorized and Licensed To Do Business In State*, 2006 WL 2498196, at *1 (La. Aug. 25, 2006)(emphasis added). *See also Saden v. Kirby*, 660 So. 2d 423, 424 (La. 1995) ("flood" exacerbated by alleged negligence of defendants); *Pracht v. City of Shreveport*, 830 So. 2d 546, 548 (La. App. 2 Cir. 2002) ("flood" allegedly resulting from "failure to properly design, construct and maintain the drainage canal"); *Gleason v. Nuco, Inc.*, 774 So. 2d 1240, 1241 (La. App. 1 Cir. 2000) ("flood" allegedly resulted from negligence in constructing and maintaining drainage facilities); *Boudreaux v. Department of Transp. & Dev.*, 690 So. 2d 114, 120 (La. App. 1 Cir. 1997) ("flood" allegedly resulted from negligence in design and construction of bridge such that bridge improperly functioned as a dam); *Roberts v. Murphy Oil Corp.*, 577 So. 2d 308, 311 (La. App. 4 Cir. 1991) ("flood" allegedly resulted from negligent construction of road which disrupted drainage system); *Summerville v. Missouri Pac. R.R. Co.*, 509 So. 2d 639, 640 (La. App. 3 Cir. 1987) ("flood" allegedly caused or exacerbated by negligent obstruction of natural drainage).

[117] *See* LA. R.S. 38:421 ("[i]f the board deems the funds provided for in this Part are inadequate to locate, construct, and *repair levees to prevent disastrous floods*, the board may levy a special assessment or forced contribution ....") (emphasis added).

Indeed, there is no word, other than "flood," that could be used to describe a large-scale water inundation caused by negligence.

> **b)   This Broad Definition Is Regularly Applied Under Insurance Policy Exclusions.**

In *Buente v. Allstate Property & Casualty Insurance Co.,*[118] Judge Senter recently held that a water damage exclusion was clear and unambiguous, and applied to water damage caused by Hurricane Katrina.  The Buentes' home sustained substantial damage from Hurricane Katrina, including damage caused by wind, by wind-driven rain, and by what the plaintiffs described as "storm surge" from the Mississippi Sound.[119]  The Allstate policy had an exclusion similar to that here.[120]  The Buentes sought summary judgment that the damage caused by "storm surge" was covered, contending that the Allstate water damage exclusion was ambiguous and unenforceable.[121]  The court rejected that argument, concluding that "[t]he exclusions are drawn quite broadly, and they have the clear purpose of excluding damage caused by inundation from coverage."[122]  The court held that "*[t]he inundation that occurred during Hurricane Katrina was a flood, as that term is ordinarily understood,*" and that "the Court is not free to change or invalidate the unambiguous terms of an insurance contract (or any other contract) . . . ."[123]

The Ohio Court of Appeals recently stressed that "flood" must mean something different than "overflow of a body of water" because overflow is separately excluded.  The loss occurred when, during heavy rains, water overflowed from gutters onto the ground, and then into the basement of the insureds' home through a window.[124]  The policy excluded damage to personal

---

[118] *Buente v. Allstate Prop. & Cas. Ins. Co.,* 2006 WL 980784, at *1 (S.D. Miss. Apr. 12, 2006).
[119] 2006 WL 980784, at *1.
[120] "We do not cover loss to the [insured] property consisting of or caused by:  1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water . . . ." *Id.*
[121] *Id.*
[122] *Id.*
[123] *Id.* at *1-2 (emphasis added).
[124] *Wallace v. McKinnis,* 2005 Ohio 4058, 2005 Ohio App. LEXIS 3073, at *3 (Ohio Ct. App. Aug. 8, 2005)

property "directly or indirectly caused by 'water damage,'" which was defined as "flood, surface

water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or

not driven by wind."[125]  The court affirmed summary judgment for the insurer.

The Ohio court cited a dictionary definition of "flood" as including "(1) 'a rising and

overflowing of a body of water that covers land not usually underwater; deluge; freshet;' (2) 'a

great downpour;' (3) 'a great stream of something that flows in a steady course;' (4) 'a large

quantity widely diffused; superabundance.'"[126]  The court concluded that, given that the policy's

definition of "water damage" included both "flood" and "overflow of a body of water," the term

"flood" was not intended to mean "strictly an overflow of a body of water . . . ."  Rather, the term

"flood was intended to have a broader meaning such as a 'great stream of something flowing in a

steady course,' or 'a large quantity widely diffused.'"[127]  Given that a stream of water flowing

into a basement can constitute a "flood," certainly the widespread inundation of the streets and

homes of New Orleans was a "flood."

> ### c)   Inundations Resulting From Dam Or Levee Breaks Are Excluded.

In *TNT Speed & Sport Center., Inc. v. American States Insurance Co.*,[128] a vandal

removed sandbags and dirt from a levee, causing the levee to break, resulting in a release of river

water which damaged the insured's property.[129]  Like the Policy, the insurance policy there

excluded losses caused by "flood," "surface water" or "overflow of any body of water," and

further provided that "[s]uch loss or damage is excluded regardless of any other cause or event

---

[125] *Id.* at *4.
[126] *Id.* at *5.
[127] *Id.*
[128] *TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.*, 114 F.3d 731 (8th Cir. 1997),
[129] *Id.* at 732.

that contributes concurrently or in any sequence to the loss."[130]  The Eighth Circuit held that the exclusion clearly applied to this loss.[131]

Similarly, in *Pakmark Corp. v. Liberty Mutual Insurance Co.*,[132] a levee broke, resulting in a release of water and backup of sewage which damaged the insured's property.[133]  The policy excluded "loss or damage caused directly or indirectly by . . . Flood, surface water . . . [or] overflow of any body of water . . . ."[134]  The Missouri Court of Appeals affirmed the trial court's decision granting summary judgment for the insurer, concluding that the water damage exclusion was unambiguous and plainly applicable.[135]

These cases are directly on point.  To construe the massive inundation of water in New Orleans at the time of Hurricane Katrina as anything other than a "flood" or "overflow of a body of water" would eviscerate unambiguous policy language which has been in homeowners' policies for many years, and would turn well-established insurance law on its head.  Moreover, a restrictive construction of "flood" would be unworkable in application.  There are few floods, for example, that do not involve some degree of human "negligence" -- many floods could have been prevented if all buildings were situated properly and engineered to today's standards.

Importantly, the Water Damage Exclusion applies not only to loss caused by "flood," but also to loss caused by "surface water," "tidal water" and "overflow of a body of water."  The word "flood" would be superfluous if it meant the same thing as "surface water," "tidal water"

---

[130] *Id.*
[131] *Id.* at 733.
[132] *Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256 (Mo. Ct. App. 1997)
[133] *Id.* at 257-58.
[134] *Id.*
[135] *Id.* at 261-62.  *Accord E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.*, 444 N.Y.S.2d 321 (N.Y. App. Div. 1981) (inundation of insured's property due to break in dike, allegedly caused by negligent maintenance, was excluded flood); *Kane v. Royal Ins. Co.*, 768 P.2d 678, 681 (Colo. 1989) (inundation of insured's property due to failure of a dam was excluded flood); *Bartlett v. Cont'l Divide Ins. Co.*, 697 P.2d 412 (Colo. Ct. App. 1984) (same); *See also Valley Forge Ins. Co. v. Hicks Thomas & Lilienstern, L.L.P.*, 174 S.W.3d 254, 259 (Tex. Ct. App. 2004) (holding that there was no coverage for business income claim arising from water damage caused by floodwaters from bayou).

and "overflow of a body of water." It is difficult to imagine a natural event resulting in a large

scale inundation of water that would not consist of surface water, tidal water, or overflow of a

body of water, or some combination of those three. To limit the meaning of "flood" to events

that would fall into those categories would be to read the word "flood" out of the Policies

altogether. Such a result is not permitted by Louisiana law.[136]

### 4. Inundation of Land As a Result of "Storm Surge" Is a Flood Within the Meaning of the Water Damage Exclusion.

Plaintiffs seek a declaration that damage resulting from "storm surge" is not excluded.[137]

Courts have consistently rejected such attempts. Storm surge is described by the Federal

Emergency Management Agency in the following terms:

> *Storm surge is simply water* that is *pushed* toward the shore *by the force of the winds* swirling around the storm. This advancing surge combines with the normal tides to create the hurricane storm tide, which can increase the mean water level to heights impacting roads, homes and other critical infrastructure. In addition, wind driven waves are superimposed on the storm tide. *This rise in water level can cause severe flooding* in coastal areas, particularly when the storm tide coincides with the normal high tides.[138]

Simply put, "storm surge" is wind-pushed water that causes a rise in water levels that can cause

severe flooding.[139]

---

[136] *See* LA. CIV. CODE art. 2049 ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."). *See also Flaherty v. Jackson*, 152 La. 679, 690 (La. 1922) (holding that "where the particular words embrace all the persons or objects of the class mentioned, and thereby exhaust the class or genus, there can be nothing ejusdem generis left for the rule to operate on, and a meaning must be given to the general words different from that indicated by the specific words, or there can be ascribed to them no meaning at all"); *Jarvis Christian College v. National Union Fire Ins. Co.*, 197 F.3d 742, 748 (5th Cir. 1999) (rejecting insured's argument for narrow construction of policy terms that would render language superfluous); *see also Wallace v. McKinnis*, 2005 Ohio 4058, 2005 Ohio App. LEXIS 3073, at *3 (Ohio Ct. App. Aug. 8, 2005) (holding that "flood" must mean something different than "overflow of a body of water" because overflow is separately excluded).

[137] Complaint, Prayer, ¶ B.

[138] Federal Emergency Management Agency, "Hurricane Hazards: Storm Surge" (available at http://www.fema.gov/hazard/hurricane/hu_surge.shtml) (emphasis added).

[139] Additionally, the Policy excludes loss caused by "Flood, surface water, waves, tidal water, [or] overflow of a body of water, or spray from any of these, *whether or not driven by wind* . . ." (emphasis added). This provision provides yet another reason why allegations of "windstorm" or "storm surge" as an "efficient proximate cause" of an insured's loss due to water damage has no impact on the application of the Water Damage Exclusion. The Water

Judge Senter of the Southern District of Mississippi recently rejected the same "storm surge" argument in *Buente v. Allstate Property & Casualty Insurance Co.*[140] In *Buente*, as here, "[p]laintiffs acknowledge[d] that the insured property sustained damage as a result of water that entered their home during Hurricane Katrina," but "contend[ed] that this damage should be covered because it [was] a result of 'storm surge.'"[141] {TA \s "Buente v. Allstate Property & Casualty Ins. Co., No. 1:05CV712, 2006 WL 980784 (S.D. Miss. April 12, 2006)" }The "critical issue" was "whether the entry of water into the plaintiffs' home [was] within the terms of the 'flood exclusions.'"[142] Judge Senter enforced the defendant's water damage exclusion and held that "[t]he inundation which occurred at the time of Hurricane Katrina was a flood, as that term is ordinarily understood, whether that term appears in a flood insurance policy or in a home owners insurance policy."[143]

Finally, regardless of whether it was caused by "storm surge," water in the City of New Orleans and the surrounding area was "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be," *i.e.*, a flood.[144] Plaintiffs' theory that the great

---

Damage Exclusion expressly addresses and precludes coverage for the effects of wind-driven floodwaters. *See Wootton Hotel Corp. v. Northern Assur. Co.*, 57 F. Supp. 112, 113 (E.D. Pa. 1944){ TA \l "*Wootton Hotel Corp. v. Northern Assur. Co.*, 57 F. Supp. 112 (E.D. Pa. 1944)" \s "Wootton Hotel Corp. v. Northern Assur. Co., 57 F. Supp. 112 (E.D. Pa. 1944)" \c 1 } (relying on similar language in holding that where plaintiff asserted its "damage was caused by high water driven by wind . . . plaintiff has placed its case directly within the exceptive provision, and may not recover").

[140] *Buente v. Allstate Prop. & Cas. Ins. Co.*, 2006 WL 980784 (S.D. Miss. April 12, 2006){ TA \l "*Buente v. Allstate Property & Casualty Ins. Co.*, No. 1:05CV712, 2006 WL 980784 (S.D. Miss. April 12, 2006)" \s "Buente v. Allstate Property & Casualty Ins. Co., No. 1:05CV712, 2006 WL 980784 (S.D. Miss. April 12, 2006)" \c 1 }.

[141] *Id.* at * 1.

[142] *Id.*

[143] *Id.  Accord Tuepker v. State Farm Fire & Cas. Co.*, 2006 WL 1442489, *3 (S.D. Miss. May 24, 2006) ("Losses directly attributable to water in the form of a "storm surge" are excluded from coverage because this damage was caused by the inundation of plaintiffs' home by tidal water from the Mississippi Sound driven ashore during Hurricane Katrina.  This is water damage within the meaning of that policy exclusion.  The exclusion found in the policy for water damage is a valid and enforceable policy provision.  Indeed, similar policy terms have been enforced with respect to damage caused by high water associated with hurricanes in many reported decisions.").

[144] *Florida E. Coast Ry. Co.*, 519 F.2d at 1192. *See also Mayton v. Auto-Owners Ins. Co.*, No. 3:05CV667, 2006 WL 1214831 (E.D. Va. May 2, 2006){ TA \l "*Mayton v. Auto-Owners Ins. Co.*, No. 3:05CV667, 2006 WL 1214831 (E.D. Va. May 2, 2006)" \s "Mayton v. Auto-Owners Ins. Co., No. 3:05CV667, 2006 WL 1214831 (E.D. Va. May 2, 2006)" \c 1 } (holding that storm surge fell within water damage exclusion); *Lower Chesapeake Assocs., L.P. v.*

- 29 -

flood that accompanied Hurricane Katrina does not fall within the Water Damage Exclusion is an

attempt to manufacture ambiguities where none exist and rewrite the policies at issue.{ TA \s

"Florida E. Coast Ry. Co. v. United States, 519 F.2d 1184 (5th Cir. 1975)" }

> ### 5.   Under the Anti-Concurrent Causation Clause in the Water Damage
> ### Exclusion, Water Damage Losses are Excluded Regardless of Other
> ### Contributing Causes.

Plaintiffs allege that Katrina's high velocity wind force was the "'efficient proximate

cause' of the damage to" their home.[145]  Assuming that allegation to be true, it makes no

difference in applying the language of the Water Damage exclusion.  Under the Water Damage

exclusion, losses caused by flood, etc., are excluded regardless of any other factors contributing

to the Water Damage.

*Prytania Park Hotel v. General Star Indemnity Co.*[146] explains how an anti-concurrent

causation clause bars coverage for an excluded cause of loss regardless of any other causal

factors that may have contributed to the loss.  In that case, the insured hotel suffered a fire.

When the fire damage was repaired, the New Orleans building code required the insured to add a

sprinkler system, which was not present before the fire, to a laundry room.[147]  The policy

contained an "Ordinance or Law" exclusion with anti-concurrent-causation language.[148]  The

insured argued that the need for the sprinkler system was proximately caused by the fire, not by

---

*Valley Forge Ins. Co.*, 532 S.E.2d 325, 328, 331 (Va. 2000){ TA \l "*Lower Chesapeake Assocs., L.P. v. Valley Forge Ins. Co.*, 532 S.E.2d 325 (Va. 2000)" \s "Lower Chesapeake Assocs., L.P. v. Valley Forge Ins. Co., 532 S.E.2d 325 (Va. 2000)" \c 1 } (holding that damage to docks was excluded by water damage exclusion where it was caused, at least in part, by storm surge from hurricane).

[145] Complaint, ¶ 6.

[146] *Prytania Park Hotel v. General Star Indem. Co.*, 896 F. Supp. 618 (E.D. La. 1995).

[147] *Id.* at 623.

[148] The exclusion read:

> [General Star] will not pay for loss or damage caused directly or indirectly by
> the following.  Such loss or damage is excluded regardless of any other cause or
> event that contributes concurrently or in any sequence to the loss.
> a. Ordinance or Law
> The enforcement of any ordinance or law:
> (1) Regulating the construction, use or repair of any property . . . . [*Id.* at 623.]

the enforcement of the building code, and therefore should be covered.[149]  The court rejected this

argument, holding that costs of complying with a building code "are simply excluded according

to the policy's plain, unambiguous language."[150]  The court stressed that, under the anti-

concurrent-causation language, the role of the fire in requiring "the repair that required

installation of a sprinkler system." "is inconsequential."[151]

Appellate decisions across the country have enforced similar anti-concurrent causation

language in Water Damage exclusions when applying those provisions to similar facts.  For

example, in *TNT Speed & Sport Ctr.*, a vandal removed sandbags and dirt from a levee on the

Mississippi River, causing the levee to break, resulting in a flood which damaged the insured's

property.[152]  The Eighth Circuit held that the exclusion clearly applied, regardless of the fact that

vandalism, a covered cause of loss, contributed to the flood.[153]  The court concluded that the

anti-concurrent causation language made clear that the policy "exclude[s] coverage for losses

caused by water, regardless of the existence of any other contributing causes in any sequence."[154]

The Sixth Circuit reached a similar result in *Front Row Theatre, Inc. v. American*

*Manufacturer Mutual Insurance Cos.*[155]  The insured theater building was surrounded by a

parking lot which was on a higher elevation.  This caused rainwater to naturally flow toward the

building.[156]  The drainage system became 50% blocked, causing runoff from a rainstorm to enter

the theater and damage the carpet.  The parties agreed that the damage was caused both by water

that had flowed through a portion of the drainage system and backed up, and by surface water

---

[149] *Id.*

[150] *Id.* at 624.

[151] *Id.*

[152] *TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.*, 114 F.3d 731, 732 (8th Cir. 1997),

[153] *Id.* at 733.

[154] *Id.*

[155] *Front Row Theatre, Inc. v. American Mfr. Mut. Ins. Cos.*, 18 F.3d 1343 (6th Cir. 1994).

[156] *Id.* at 1345.

that had never been able to enter the drainage system.[157]   The policy contained a flood exclusion,

with anti-concurrent causation language similar to the language here.[158]   There was, however, an

exception to the exclusion for resulting loss from "water that backs up from a sewer or

drain . . . ."[159]   The court held that there was no coverage because, under the anti-concurrent

causation clause, "where a flood is a partial cause of property damage, [the insurer] is not

required to pay."[160]

The anti-concurrent causation clause makes it clear that the Water Damage exclusion

excludes coverage for the types of losses that are the subject of the Complaint.  We note,

however, the exclusion would apply even in the absence of that clause, because it applies where

flood, etc., "directly or indirectly" cause the loss.  In *American Manufacturing Corp. v. National*

---

[157] *Id.*

[158] The policy's flood exclusion provided:

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

> g. **Flood**

> 1) Including surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether driven by wind or not;  …

> But if loss or damage by fire, theft, explosion, water that backs up from a
> sewer or drain or sprinkler leakage results, we will pay for that resulting loss or damage.  [*Id.* at 1345 n.1.]

[159] *Id.*

[160] *Id.* at 1347.  *Accord Kane v. Royal Ins. Co.*, 768 P.2d 678, 685-86 (Colo. 1989) (given anti-concurrent-causation language, exclusion applied even if failure of dam was caused by negligence, because "flood 'contributed to' or 'aggravated' the insureds' loss"); *Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256, 261 (Mo. Ct. App. 1997) (where damage caused by combination of excluded flood water and covered sewer backup, anti-concurrent causation language barred coverage: "an exclusion is an exclusion regardless of any other cause that contributes to the loss, either concurrently or in any sequence to the loss"); *Sunshine Motors, Inc. v. New Hampshire Ins. Co.*, 530 N.W.2d 120, 121 (Mich. Ct. App. 1995) (where flooding caused or aggravated by blocked drain, anti-concurrent-cause language barred coverage: "[w]hether the blocked drainage system was a direct or indirect cause of plaintiff's water damage, or whether it was *the* principal factor or merely *a* contributing factor, the policy expressly excluded coverage").  *See also E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.*, 444 N.Y.S.2d at 322 (holding that, where dike failed, flood exclusion clearly applied, even without anti-concurrent causation language; it was irrelevant whether dike was defectively constructed); *Casey v. Gen. Accident Ins. Co.*, 578 N.Y.S.2d 337, 338 (N.Y. App. Div. 1991) (under water damage exclusion with anti-concurrent-causation clause, there was no coverage where rainwater collected and entered basement due to clogged drainage system); *Florida Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron*, 721 So. 2d 825, 826 (Fla. Ct. App. 1998) (under water damage exclusion with anti-concurrent causation clause, there was no coverage for damage to insured's home caused by surface water which entered through cracks in walls caused by tree roots).

- 32 -

*Union Fire Insurance Co.*,[161] the roof of the insured building had been blown off by a

windstorm, causing a sprinkler feed pipe to break, flooding the premises.[162] The policy at issue

provided coverage only for "direct loss and damage by 'sprinkler leakage,'" and excluded "loss

or damage caused directly or indirectly by . . . tornado, [or] windstorm . . . ."[163] Emphasizing the

words "directly or indirectly" in the exclusion, the court held that "[a] windstorm, one of the

excepted hazards, was the indirect cause of the damage, and, since the company is not liable

under the policy for loss and damage 'caused directly or indirectly' by that hazard, plaintiff

cannot recover."[164] The Supreme Court's reasoning is even stronger in this case, because the

peril excluded by the Policies (i.e., Water Damage) was the direct, as opposed to indirect, cause

of the loss at issue.

**D.      The Water Damage Exclusion Is Valid and Enforceable.**

Plaintiffs challenge the enforceability of the Water Damage exclusion, asserting that

Hanover breached its duty of good faith and fair dealing by failing to issue a contract whose

exclusions were "narrowly drafted," defined their terms, and provided coverage for any direct

physical loss that resulted from high velocity hurricane winds. This is wrong as a matter of law.

**1.      The Duty Of Good Faith and Fair Dealing Arises Out Of a Contract and
Governs Its Performance, But Cannot Govern or Override the Terms Of the
Contract.**

The only causes of action for insurance bad faith in Louisiana are statutory,[165] and

plaintiffs do not even try to allege that failure to issue a policy with the terms they desire violated

any of the relevant statutes. To the extent they try to rely on an implied contractual duty of good

---

[161] *American Mfg. Corp. v. Nat'l Union Fire Ins. Co.*, 14 So. 2d 430, 435 (La. 1942)
[162] *Id.* at 432.
[163] *Id.* at 431-32.
[164] *Id.* at 435. *See also Hardin Bag & Burlap Co. v. Fidelity & Guar. Fire Corp.*, 14 So. 2d 634, 635-36 (La. 1943)
(similar result).
[165] *See* discussion at p. 35-36, *infra.*

faith and fair dealing, that could not assist them even if Louisiana would recognize a claim based on that duty.

Any implied covenant of good faith and fair dealing arises out of the contract between the insurer and the insured.[166]  By definition, the covenant cannot exist before there is a contract, so it cannot govern the terms on which the contract will be made.[167]

### 2.     The Water Damage Exclusion Does Not Conflict With Any Statute or Regulation, and Has Been Upheld by the Courts.

"[I]n the absence of conflict with statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract."[168]  In *Blakely v. State Farm Mutual Automobile Insurance Co.*,[169] the plaintiffs asserted that a provision in automobile insurance policies under which the insurer would pay for the cost of repairs, but not for the diminution in value of the repaired vehicle, was unconscionable.  The Fifth Circuit, applying Mississippi law, held that this argument lacked merit because "[w]e find no pronouncement by Mississippi, either legislative or judicial, requiring that diminished value be a part of all automobile insurance policies."[170]  The court agreed with the insurer's argument that "the policies cannot be unconscionable simply because they are standardized and cover certain risks

---

[166] *Phillips v. Patterson Ins. Co.*, 813 So.2d 1191, 1194-95 (La. Ct. App. 2002).

[167] *Holland v. Stanley Scrubbing Well Service*, 666 F. Supp. 898, 900 (W.D. La. 1987) ("[I]nsurers have the right to limit their liability and to impose whatever conditions they please upon their obligations under the policy in the absence of conflicts with [Louisiana's] laws or public policy."); *McDermott International, Inc. v. Industrial Risk Insurers*, 2002 WL 1204924, at *6 (E.D. La. June 3, 2002) (same); *see also Scarborough v. Travelers Insurance Co., et al.*, 718 F.2d 702, 709 (5th Cir. 1983) ("[D]etermination of whether an insurance policy is contrary to public policy is governed by the applicable state law . . . [c]onstruing an insurance contract accurately, and giving it the effect which its language clearly commands, is not , by that fact alone, a violation of public policy merely because it does not accord with the insured's expectations or desires.") ;  *Gibson v. Gov't Employees Ins. Co.*, 208 Cal. Rptr. 511, 516 (Cal. Ct. App. 1984) ("an insured person's initial decision to obtain insurance and the corresponding decision of an insurer to offer coverage remain, at the inception of the contract at least, an arms length transaction to be governed by traditional standards of freedom of contract").

[168] *Livingston Parish School Board v. Fireman's Fund American Ins. Co.*, 282 So. 2d 478, 481 (La. 1973).

[169] *Blakely v. State Farm Mut. Auto. Ins. Co.*, 406 F.3d 747 (5th Cir. 2005)

[170] *Id.* at 754.

but not others," and noted that "each policy must be submitted to the Mississippi Department of Insurance before public issuance."[171]

Similarly here, Louisiana law does not require property or homeowners' insurers to provide coverage for Water Damage. Indeed, Congress created the National Flood Insurance Program ("NFIP"), precisely because "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions."[172]

Moreover, as in *Blakey*, Hanover's policy language was required to be filed with the Louisiana Department of Insurance, and was never disapproved.[173] Louisiana courts have enforced water damage exclusions for many years.[174] As noted at section V.D.(3)(b-c), *supra*, courts across the country have enforced water damage exclusions as applied to facts which are identical or closely analogous to the facts alleged in this case.

### 3. Enforcing the Clear and Unambiguous Water Damage Exclusion is Consistent With Congressional Intent to Make Coverage Available Under the NFIP for These Types of Losses.

In 1968, Congress enacted the National Flood Insurance Act,[175] which created the NFIP. As already noted, the NFIP was created because the private insurance industry could not provide flood insurance to homeowners on an economically feasible basis. Under the NFIP, property owners can purchase flood insurance either directly from the Federal Emergency Management Agency ("FEMA") or from private insurers authorized to write federally funded flood insurance

---

[171] *Id.*
[172] 42 U.S.C. § 4001(b).
[173] *See* LA. REV. STAT. § 22:620(A).
[174] *See, e.g., Morehead v. Allstate Ins. Co.*, 406 F.2d 122, 122 (5th Cir. 1969) (affirming decision enforcing water damage exclusion, under Louisiana law, as applied to hurricane loss); *Travelers Indem. Co. v. Powell Ins. Co.*, 1996 U.S. Dist. LEXIS 15041, at *8 (E.D. La. Oct. 4, 1996).
[175] 42 U.S.C. § 4001 et seq.,

under their own names.[176]  Such private insurers are known as "Write Your Own" companies and act as agents of the federal government -- claims are ultimately paid from the U.S. treasury.[177] These flood insurance policies are separate and distinct from private property insurance policies, and contain entirely different terms, conditions and exclusions.

The Standard Flood Insurance Policy ("SFIP") provides coverage for "direct physical loss by or from flood" to the insured property (as defined therein).[178]  The Water Damage losses alleged by plaintiffs fall within the SFIP's grant of coverage, subject to its other terms, conditions, limitations and exclusions.  The Water Damage exclusion in the Policy excludes the types of losses which are generally covered by flood insurance policies.  Enforcing the Water Damage exclusion maintains the longstanding distinction between the coverage that is provided by homeowners' insurance policies, which exclude Water Damage, and the coverage provided by SFIPs issued under the federally funded NFIP.[179]

For the past 37 years, the type of coverage that plaintiffs are seeking in this case has been provided through the NFIP.  During this same time period, standard homeowners' insurance policies have specifically excluded this type of risk.  The relief sought by plaintiffs would both re-write Defendants' Policies to cover risks for which premiums were not paid, and render the NFIP superfluous.

---

[176] 44 C.F.R. § 62.23.
[177] 44 C.F.R. §§ 62.23, 62.24.
[178] 44 C.F.R. Pt. 61, App. A.
[179] See *Quesada v. FEMA*, 577 F. Supp. 695, 697 (S.D. Fla. 1983) (damage caused by water from tropical storm not covered under homeowner's insurance policy but covered under flood insurance policy).

- 36 -

**E.      Plaintiffs' Extra-Contractual Claims Fail As a Matter of Law.**

Because Hanover relied upon the Policy's Water Damage exclusion, plaintiffs allege that

Hanover failed to timely and properly adjust their claim,[180] and seek attorneys' fees and bad

faith damages.[181]   These claims must also be dismissed as a matter of law.

Bad faith claims handling is governed exclusively by statute in Louisiana.  "La. R.S.

22:1220 (B){ TA \l "La. R.S. 22:1220" \s "La. R.S. 22:1220 " \c 2 } provides an exclusive list of

the 'extra-contractual or tort-like' claims actionable against an insurer for an alleged breach of

the insurer's duty of good faith and fair dealing."[182]   There is no common law cause of action for

insurance bad faith claims handling under Louisiana law, and any attempt to plead such a cause

of action for extra-contractual damages must fail as a matter of law.

Statutory bad faith allegations also fail as a matter of law.  Bad faith claims "do not stand

alone, but depend upon a valid underlying claim."[183]   As described at length in the previous

sections of this memorandum, plaintiffs do not have a valid breach of contract claim arising from

---

[180] Complaint, ¶¶ 8-9.

[181] Complaint, Prayer, ¶ F.

[182] *Robin v. Allstate Ins. Co.*, 870 So. 2d 402, 408 (La. Ct. App. 2004){ TA \l "*Robin v. Allstate Ins. Co.*, 870 So. 2d 402 (La. Ct. App. 2004)" \s "Robin v. Allstate Ins. Co., 870 So. 2d 402 (La. Ct. App. 2004)" \c 1 } (*relying on Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184 (La. 1997){ TA \l "*Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184 (La. 1997)" \s "Theriot v. Midland Risk Ins. Co., 694 So. 2d 184 (La. 1997)" \c 1 }) (characterizing insurer's argument and holding that trial court did not err in granting insurer's exceptions of no cause of action with respect to insured's tort claims); *see also Anslave v. State Farm Mutual Automobile Insurance Co.*, 737 So 2d 948, 950-951 (La. Ct. App. 1999){ TA \l "*Farm Mutual Automobile Insurance Co.*, 737 So 2d 948 (La. Ct. App. 1999)" \s "Farm Mutual Automobile Insurance Co., 737 So 2d 948 (La. Ct. App. 1999)" \c 1 }; *Endsley v. Pennington*, 718 So. 2d 650, 654 (La. Ct. App. 1998); *Brister v. Geico Insurance*, 813 So. 2d 614, 619 (La. Ct. App. 2002){ TA \l "*Brister v. Geico Insurance*, 813 So. 2d 614 (La. Ct. App. 2002)" \s "Brister v. Geico Insurance, 813 So. 2d 614 (La. Ct. App. 2002)" \c 1 }.

[183] *Edwards*, 2005 WL 221558, at * 3{ TA \s "Edwards v. Daugherty, 883 So. 2d 932 (La. June 27, 2004)" } (dismissing plaintiff's bad faith claim because she "has no underlying breach of contract on her insurance policy"); *see also Clausen v. Fidelity & Deposit Co. of Md.*, 660 So. 2d 83, 85-86 (La. Ct. App. 1995){ TA \l "*Clausen v. Fidelity & Deposit Co. of Md.*, 660 So. 2d 83 (La. Ct. App. 1995)" \s "Clausen v. Fidelity & Deposit Co. of Md., 660 So. 2d 83 (La. Ct. App. 1995)" \c 1 } (no cause of action for bad faith "absent a valid, underlying, insurance claim"); *Phillips v. Patterson*, 813 So. 2d 1191, 1195 (La. Ct. App. 2002){ TA \l "*Phillips v. Patterson*, 813 So. 2d 1191 (La. Ct. App. 2002)" \s "Phillips v. Patterson, 813 So. 2d 1191 (La. Ct. App. 2002)" \c 1 } (same); *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 293 (5th Cir. 2001){ TA \l "*Hardy v. Hartford Ins. Co.*, 236 F.3d 287 (5th Cir. 2001)" \s "Hardy v. Hartford Ins. Co., 236 F.3d 287 (5th Cir. 2001)" \c 1 } (holding that where insurer had no duty to provide coverage, it did not violate La. R.S. 22:1220).

Hanover's denial of coverage for losses caused by flooding. Therefore, as a matter of law, they cannot plead a claim for insurance bad faith.

### IV. Conclusion

For all of the reasons stated above, Hanover respectfully requests that plaintiffs' Complaint be dismissed with prejudice, and that the Court order such further relief as it deems proper.

Respectfully submitted,

SETH A. SCHMEECKLE, T.A., La. Bar #27076
RALPH S. HUBBARD, III, La. Bar # 7040
W. LEE KOHLER    La. Bar #17658
LUGENBUHL, WHEATON, PECK, RANKIN &
        HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

And

OF COUNSEL:
KEVIN P. KAMRACZEWSKI
PAUL E.B. GLAD
WILLIAM T. BARKER
ANDREW R. GREENE
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Attorneys for The Hanover Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October, 2006, a copy of this pleading has been

served upon all counsel of record in this action by depositing same in the United States Mail,

properly addressed, first class postage prepaid.