ALLMERICA FINANCIAL
# HANOVER
INSURANCE

The undersigned, John  F. Shea , product professional, at the Hanover Ins Co. hereby certifies that the attached is a reproduction of Massachusetts Bay Insurance Company Policy # _Hho 706 8482_ from microfiche.

Effective date of policy requested _12-12-04/12-12-05_

_____
Product Professional

BALFOUR



RECEIVED
AUG 1 6 2006
By

EXHIBIT
A



# HOMEOWNERS 3
# SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:
   a. Your relatives; or
   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:
      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or
      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:
   a. The "residence premises";
   b. The part of other premises, other structures and grounds used by you as a residence and:
      (1) Which is shown in the Declarations; or
      (2) Which is acquired by you during the policy period for your use as a residence;
   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;

d. Any part of a premises:
   (1) Not owned by an "insured"; and
   (2) Where an "insured" is temporarily residing;
e. Vacant land, other than farm land, owned by or rented to an "insured";
f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";
g. Individual or family cemetery plots or burial vaults of an "insured"; or
h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
   a. "Bodily injury"; or
   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:
   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or
   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:
   a. The one family dwelling, other structures, and grounds; or
   b. That part of any other building;
   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

# SECTION I - PROPERTY COVERAGES

## COVERAGE A - Dwelling

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

## COVERAGE B - Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

## COVERAGE C - Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms.

7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, holloware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91



11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle, or other motorized land conveyance, if the electronic apparatus:

   a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

   b. Is away from the "residence premises"; and

   c. Is used at any time or in any manner for any "business" purpose.

   Electronic apparatus includes:

   a. Accessories and antennas; or

   b. Tapes, wires, records, discs or other media;

   for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances. This includes:

   a. Their equipment and accessories; or

   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

      (1) Accessories or antennas; or

      (2) Tapes, wires, records, discs or other media;

      for use with any electronic apparatus.

   The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. Used to service an "insured's" residence; or

   b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

   a. Books of account, drawings or other paper records; or

   b. Electronic data processing tapes, wires, records, discs or other software media;

   However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D - Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

   a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

   b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

   Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

   **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

   a. Your tree(s) felled by the peril of Windstorm or Hail;

   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   a. Does not increase the limit of liability that applies to the covered property; or

   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I – CONDITION 2.B.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns on the "residence premises", for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises", Vandalism or malicious mischief or Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.** We will pay up to $500 for:

   a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

Copyright, Insurance Services Office, Inc., 1990
HO 00 03 04 91



We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. Loss Assessment. We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

8. Collapse. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

b. Hidden decay;

c. Hidden insect or vermin damage;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

9. Glass or Safety Glazing Material.

We cover:

a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

a. **Fire or lightning.**

b. **Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

c. **Explosion.**

d. **Riot or civil commotion.**

e. **Aircraft,** including self-propelled missiles and spacecraft.

f. **Vehicles.**

g. **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

h. **Vandalism or malicious mischief.**

i. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

k. **Accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

---

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.

2. Caused by:

Copyright, Insurance Services Office, Inc., 1990
HO 00 03 04 91



a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water;

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) Fence, pavement, patio or swimming pool;

(2) Foundation, retaining wall, or bulkhead; or

(3) Pier, wharf or dock;

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. Any of the following:

(1) Wear and tear, marring, deterioration;

(2) Inherent vice, latent defect, mechanical breakdown;

(3) Smog, rust or other corrosion, mold, wet or dry rot;

(4) Smoke from agricultural smudging or industrial operations;

(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

(7) Birds, vermin, rodents, or insects; or

(8) Animals owned or kept by an "insured."

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. Excluded under Section I - Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. Fire or lightning.

2. Windstorm or hail.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. Explosion.

4. Riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke, meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. Vandalism or malicious mischief.

9. Theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

a. Committed by an "insured";

b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

This peril does not include loss caused by theft that occurs off the "residence premises" of:

a. Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

c. Trailers and campers.

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I - EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

b. **Earth Movement**, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

(1) Fire;

(2) Explosion; or

(3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

c. **Water Damage**, meaning:

(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) Water which backs up through sewers or drains or which overflows from a sump; or

Copyright, Insurance Services Office, Inc.,  1990
HO 00 03 04 91



(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

---

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500,

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

Copyright, Insurance Services Office, Inc., 1990   HO 00 03 04 91



(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of mortgage and all securities held as collateral to the mortgage debt.

    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

   c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### COVERAGE F - Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

   Copyright, Insurance Services Office, Inc., 1990   HO 00 03 04 91



c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

(1) On an occasional basis if used only as a residence;

(2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(3) In part, as an office, school, studio or private garage;

d. Arising out of the rendering of or failure to render professional services;

e. Arising out of a premises:

(1) Owned by an "insured";

(2) Rented to an "insured"; or

(3) Rented to others by an "insured";

that is not an "insured location";

f. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an "insured"; or

(b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:

(a) Used to service an "insured's" residence;

(b) Designed for assisting the handicapped; or

(c) In dead storage on an "insured location";

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

(a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

(c) One or more outboard engines or motors with 25 total horsepower or less;

(d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

(e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

(i) You acquire them prior to the policy period; and

(a) You declare them at policy inception; or

(b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

(ii) You acquire them during the policy period.

This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

(a) Less than 26 feet in overall length;

(b) 26 feet or more in overall length, not owned by or rented to an "insured."

(3) That are stored;

h. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an aircraft;

(2) The entrustment by an "insured" of an aircraft to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

2. Coverage E - Personal Liability, does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

b. To any person eligible to receive benefits:

(1) Voluntarily provided; or

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of an "insured location"; or

(b) Where the liability of others is assumed by the "insured" prior to an "occurrence"

unless excluded in (1) above or elsewhere in this policy;

b. "Property damage" to property owned by the "insured";

c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

by the "insured" under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

e. "Bodily injury" or "property damage" for which an "insured" under this policy:

(1) Is also an insured under a nuclear energy liability policy; or

(2) Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) American Nuclear Insurers;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. Coverage F - Medical Payments to Others, does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

(1) Occurs off the "insured location"; and

(2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

(2) Required to be provided;

under any:

Copyright, Insurance Services Office, Inc., 1990
HO 00 03 04 91



(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

c. From any:

(1) Nuclear reaction;

(2) Nuclear radiation; or

(3) Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) Any consequence of any of these; or

d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses. We pay:**

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

   We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I of this policy;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

   Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

   e. Arising out of:

   (1) A "business" engaged in by an "insured";

   (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

   (3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances. This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

   (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

   (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);

2. Condition 1: Policy Period, under SECTIONS I AND II - CONDITIONS.

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and "insured";

      (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

      (3) Names and addresses of any claimants and witnesses;

   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by a final judgment or agreement signed by us.

c. At our request, help us:

   (1) To make settlement;

   (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   (3) With the conduct of suits and attend hearings and trials; and

   (4) To secure and give evidence and obtain the attendance of witnesses;

d. Under the coverage - Damage to Property of Others, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**

   The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II - CONDITIONS

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91



1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (b) If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.



8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

   b. "insured" includes:

   (1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

   (2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91



## INFLATION GUARD ENDORSEMENT

At each anniversary date, the limits shown on the Declarations Page for Coverages A, B, C and D, if applicable, may be changed. The new limits will reflect current costs in the area where the RESIDENCE PREMISES is located.  These costs will be determined by an appraisal firm.

Increases will be applied quarterly during the policy term. Your limits will never be lowered without your permission. This endorsement does not change the requirements of the Coinsurance Clause if it applies.

All other provisions of this policy apply.

231-0600 (4-83)



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS - LOUISIANA

**SECTION I - PROPERTY COVERAGES**

**COVERAGE C - PERSONAL PROPERTY**

**SPECIAL LIMITS OF LIABILITY**

Items 10. and 11. are deleted and replaced by the following (these are Items 7. and 8. in Form HO 00 08):

10. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this Item 10.

11. $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

    b. Is away from the "residence premises"; and

    c. Is used at any time or in any manner for any "business" purpose.

    Electronic apparatus includes:

    a. Accessories and antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this Item 11.

**PROPERTY NOT COVERED**

Item 3.b. is deleted and replaced by the following:

3. Motor vehicles or all other motorized land conveyances. This includes:

    b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

       (1) Accessories or antennas; or

       (2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item 3.b.

The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

    a. Used to service an "insured's" residence; or

    b. Designed for assisting the handicapped;

**COVERAGE D - LOSS OF USE**

For all forms other than HO 00 04 and HO 00 06, Item 1. is deleted and replaced by the following:

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

    Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

For Forms HO 00 04 and HO 00 06, Item 1. is deleted and replaced by the following:

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

    Payment will be for the shortest time required to repair or replace the damage, or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**ADDITIONAL COVERAGES**

2. Reasonable Repairs is deleted and replaced by the following:

2. Reasonable Repairs

    We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage if a Peril Insured Against causes the loss. This coverage does not increase the limit of liability that applies to the property being repaired.

 Copyright, ISO Properties, Inc., 2004

6. **Credit Card, Fund Transfer Card, Forgery And Counterfeit Money** is deleted and replaced by the following:

6. **Credit Card, Fund Transfer Card, Forgery And Counterfeit Money**

We will pay up to $500 for:

a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured".

This coverage is additional insurance. No deductible applies to this coverage.

**Defense:**

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when our limit of liability for the loss has been exhausted by payment of a judgment or settlement.

b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

9. **Glass or Safety Glazing Material** is deleted and replaced by the following:

9. **Glass Or Safety Glazing Material**

a. We cover:

(1) For all forms other than HO 00 04 and HO 00 06, the breakage of Glass Or Safety Glazing Material which is part of a covered building, storm door or storm window; and for:

(a) Form HO 00 04, the breakage of Glass Or Safety Glazing Material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

(b) Form HO 00 06, the breakage of Glass Or Safety Glazing Material which is part of a building, storm door or storm window, and covered under Coverage A; and

(2) For all forms other than HO 00 04 and HO 00 06, the breakage, caused directly by Earth Movement, of Glass Or Safety Glazing Material which is part of a covered building, storm door or storm window, and for:

(a) Form HO 00 04, the breakage, caused directly by Earth Movement, of Glass Or Safety Glazing Material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

(b) Form HO 00 06, the breakage, caused directly by Earth Movement, of Glass Or Safety Glazing Material which is part of a building, storm door or storm window, and covered under Coverage A; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Copyright, ISO Properties, Inc., 2004



Loss to glass covered under this Additional Coverage 9. will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Forms HO 00 01 and HO 00 08, we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage 8. in Forms HO 00 01 and HO 00 08.)

The following Additional Coverage is added to all forms except HO 00 08. With respect to Form HO 00 04, the words "covered building" used below, refer to property covered under Additional Coverage 10. Building Additions And Alterations.

**11. Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage A (or for Form HO 00 04, you may use up to 10% of the limit of liability that applies to Building Additions And Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is Additional Coverage 10. in Forms HO 00 01 and HO 00 06.)

**SECTION I - EXCLUSIONS**

1. Ordinance or Law is deleted and replaced by the following:

1. Ordinance Or Law, meaning any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion 1.a. in all forms other than HO 00 03, 1.a.(1) in Form HO 00 03, does not apply to the amount of coverage that may be provided for under Additional Coverages, Glass Or Safety Glazing Material or Ordinance Or Law;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is Exclusion 1.a. in Form HO 00 03.)

2. Earth Movement is deleted and replaced by the following:

2. Earth Movement, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

a. Fire; or

b. Explosion;

ensues and then we will pay only for the ensu-
ing loss.

This exclusion does not apply to loss by theft.

(This is Exclusion 1.b. in Form HO 00 03.)

4. **Power Failure** is deleted and replaced by the following:

4. Power Failure, meaning the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss or damage caused by that Peril Insured Against.

(This is Exclusion 1.d. in Form HO 00 03.)

8. **Intentional Loss** is deleted and replaced by the following:

8. Intentional Loss, meaning any loss arising out of any act committed:

   a. With respect to loss caused by fire;

      (1) By or at the direction of the "insured"; and

      (2) With the intent to cause a loss.

   b. With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy:

      (1) By you or at your direction; and

      (2) With the intent to cause a loss.

(This is Item 1.h. in Form HO 00 03.)

## SECTION I - CONDITIONS

3. **Loss Settlement**

   Under Forms HO 00 02 and HO 00 03, Item b.(1)(b) is deleted and replaced by the following:

      (b) The replacement cost of that part of the building damaged with material of like kind and quality; or

   Under Form HO 00 06, Item b.(2) is deleted and replaced by the following:

      (2) If the damage is not repaired or replaced within a reasonable time, at actual cash value but not more than the amount required to repair or replace.

9. **Our Option** is deleted and replaced by the following:

9. **Our Option**

   If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

10. **Loss Payment** is deleted and replaced by the following:

10. **Loss Payment**

   We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. The undisputed portion of the loss will be payable within 30 days after we receive your proof of loss.

12. **Mortgage Clause**

   The following sentence is deleted:

   If the policy is cancelled or not renewed by us, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

   The following sentences are added to replace the above:

   If this policy is cancelled by us, the mortgagee will be notified:

   a. At least 10 days before the date cancellation takes effect if we cancel for nonpayment of premium; or

   b. At least 30 days before the date cancellation takes effect if we cancel for any other reason.

   If the policy is not renewed by us, the mortgagee will be notified at least 30 days before the date nonrenewal takes effect.

## SECTION II - LIABILITY COVERAGES

Under Coverage E - Personal Liability, Items 1. and 2. are deleted and replaced by the following:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

## SECTION II - EXCLUSIONS

Under 1. Coverage E - Personal Liability and Coverage F - Medical Payments To Others, Item a. is deleted and replaced by the following in all forms and Endorsement HO 24 78;

   a. With respect to loss caused by fire;

      (1) Which is expected or intended by the "insured", even if the "bodily injury" or "property damage":

         (i) Is of a different kind, quality, or degree than initially expected or intended; or

         (ii) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

Copyright, ISO Properties, Inc., 2004
HO 01 17 01 04



However, this Exclusion 1.a.(1) does not apply to "bodily injury" resulting from the use of reasonable force by the "insured" to protect persons or property.

b. With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy;

(1) Which is expected or intended by one or more "insureds" even if the "bodily injury" or "property damage":

(i) Is of a different kind, quality, or degree than initially expected or intended; or

(ii) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion 1.b.(1) does not apply to "bodily injury" resulting from the use of reasonable force by one or more "insureds" to protect persons or property.

**SECTION II - CONDITIONS**

6. Suit Against Us does not apply.

**SECTIONS I AND II - CONDITIONS**

2. Concealment or Fraud is deleted and replaced by the following:

2. Concealment Or Fraud

a. Under Section I - Property Coverages:

(1) With respect to loss caused by fire, we do not provide coverage to the "insured" who, whether before or after a loss, has:

(a) Intentionally concealed or misrepresented any material fact or circumstance;

(b) Engaged in fraudulent conduct; or

(c) Made false statements;

relating to this insurance.

(2) With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy, we provide no coverage for loss under Section I - Property Coverages if, whether before or after a loss, one or more "insureds" have:

(a) Intentionally concealed or misrepresented any material fact or circumstance;

(b) Engaged in fraudulent conduct; or

(c) Made false statements;

relating to this insurance.

b. Under Section II - Liability Coverages, we do not provide coverage to one or more "insured" who, whether before or after a loss, have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

c. However, if the conduct specified under a. or b. above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the policy, coverage will only be denied if the conduct was committed with the intent to deceive.

5. Cancellation

Paragraphs b., c. and d. are deleted and replaced by the following:

b. The following applies with respect to premium payments due on new and renewal policies, including installment payments:

(1) If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs (2) and (3) below.

(2) We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

(3) The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

c. The following applies if b. above does not apply.

We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

Copyright, ISO Properties, Inc., 2004



(1) When you have not paid the premium, regardless of the period of time this policy has been in effect, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us except as provided in Item c.(5) below, we may cancel:

(a) If there has been a material misrepresentation of fact with the intent to deceive:

  (1) In the procurement of the contract; or

  (2) At any other time since the policy was issued;

which if known to us would have caused us not to issue the policy; or

(b) If the risk has changed substantially since the policy was issued.

This can be done by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period of:

(a) More than one year; or

(b) Three years or less;

we may cancel for any reason at anniversary by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

(5) When this policy has been in effect and renewed for more than three years, we may cancel for any one of the following:

(a) If you have committed fraud with the intent to deceive:

  (1) In the procurement of the contract; or

  (2) At any other time since the policy was issued;

(b) If the insured risk has undergone a material change;

(c) If you have filed two or more claims within three years; or

(d) If the continuation of this policy endangers our solvency.

This can be done by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

We will not, however, cancel this policy, regardless of the period of time this policy has been in effect, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

d. If this policy is cancelled, we will return any premium refund due, subject to Paragraphs (1), (2) and (3) below. The cancellation will be effective even if we have not made or offered a refund.

(1) If you cancel this policy, we will refund the return premium, if any, within 30 days after the date cancellation takes effect. The return premium shall be computed on a pro rata basis, subject to the minimum premium requirements.

(2) If we cancel this policy, and the return premium is not refunded with the notice of cancellation, we will refund it within a reasonable time after the date cancellation takes effect. We will send the refund to you, unless (3) below applies.

(3) If we cancel based on Paragraph b. above, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in b.(3). If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

6. Nonrenewal is deleted and replaced by the following:

Copyright, ISO Properties, Inc., 2004

HO 01 17 01 04



6. **Nonrenewal**

   a. We may elect not to renew this policy, subject to the provisions of Paragraphs b. and c. below. We may do so by delivering to you and any other known person shown by the policy to have an interest in any loss which may occur thereunder or mailing to you at your mailing address shown in the Declaration and to any other known person shown by the policy to have an interest in any loss which may occur thereunder, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

   b. If this policy has been in effect and renewed with us for more than three years, we will not exercise our right of nonrenewal except:

     (1) When you have not paid the premium;

     (2) If you have committed fraud;

     (3) If the insured risk has undergone a substantial change;

     (4) If you have filed two or more claims within three years; or

     (5) If the continuation of this policy endangers our solvency.

   c. We will not, however, exercise our right of nonrenewal, regardless of the period of time this policy has been in effect with us, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

8. **Subrogation**

The following paragraph is added:

If we pay an "insured" for a loss caused by another "insured" who intentionally commits, or directs another to commit, any act that results in loss by fire, the rights of the "insured" to recover damages from the "insured" who intentionally committed, or directed another to commit, such an act are transferred to us to the extent of our payment. The "insured" may not waive such rights.

All other provisions of this policy apply.

 Copyright, ISO Properties, Inc., 2004



## LEAD POISONING EXCLUSION

Under Section II - Exclusions, Item 2. Coverage E - Personal Liability, Exclusion g. is added:

g.   Bodily injury or property damage caused by an occurrence of lead poisoning arising out of any of the following:
   (1)  Arising from any portion of an insured location;
   (2)  Arising from the appliances, furnishings and fixtures, including plumbing fixtures, owned by an insured and contained in or on a residential dwelling, apartment unit or other structure described in (1) above.

This Exclusion applies separately to each insured location and includes all areas within the boundaries of the location or property including soil.   This Exclusion applies to the lead poisoning of any resident, guest, tenant or other person regardless of the age of the resident, guest, tenant or other person and regardless of the age of the building or buildings at the insured location.

231-1340 (12-91)



## NO SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
## LIMITED SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1.  Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II - Exclusions;

2.  Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";

3.  Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - item 8. imposes that limit on "business" property on the "residence premises." (Item 8. corresponds to item 5. in Form HO 00 08.);

4.  Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - Item 9. imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item 9. does not apply to adaptable electronic apparatus as described in Special Limit of Liability - items 10. and 11. (Items 9., 10. and 11. correspond to items 6., 7. and 8. respectively in Form HO 00 08.)

THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.

Copyright, Insurance Services Office, Inc., 1990

HO 04 96 04 91



# SPECIAL PACKAGE ENDORSEMENT
## 231-1442 (5-93)

For the premium charged, we cover the following:

## SECTION I - PROPERTY COVERAGES

### COVERAGE C - PERSONAL PROPERTY
Special Limits of Liability, Item 5. is replaced by:
5.   $2,500 for loss by theft of jewelry, watches, furs, precious and semi-precious stones. We will not pay more than $1,000 for any one article.
Special Limits of Liability, Item 7. is replaced by:
7.   $5,000 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewter ware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.
Special Limits of Liability, Item 9. is replaced by:
9.   $1,000 on property away from the residence premises used at any time or in any manner for any business purpose.

### COVERAGE D - LOSS OF USE
Section 3 is deleted and replaced by:
3.   If a civil authority prohibits you from use of the residence premises or if a power outage caused by a peril insured against renders the residence premises uninhabitable, we will cover the additional living expenses or fair rental value loss as provided under 1 and 2 under Coverage D - Loss of Use. Coverage shall begin 48 hours after loss of access or use and shall not exceed two weeks.

### ADDITIONAL COVERAGES
4.   Fire Department Service Charge.
     The amount we will pay is increased to $1,000.
6.   Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.
     The amount we will pay is increased to $5,000.

The following additional coverages are added:

### Lock Replacement
We will pay up to $500 for locks or cylinders which are replaced as a direct result of stolen keys. We and the police must be promptly notified of the theft. The locks must be replaced within 72 hours after the keys are stolen. Keys are those to buildings and structures at the residence premises. We do not cover locks used with any vehicle, watercraft or aircraft. Keys given to a custodian are not considered stolen. We will pay the amount spent to repair or replace the locks or cylinders with ones of like kind and quality.
This coverage is extra insurance. No deductible applies.

### Loss of Food in a Refrigerator or Freezer
We insure, up to $500, covered property stored in freezers or refrigerators on the residence premises for direct loss caused by:
1.   Interruption of electrical service to the refrigeration unit. The interruption must be caused by damage to the generating or transmitting equipment; or
2.   Mechanical failure of the unit storing the property.
Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.
The endorsement does not increase the limit of liability for Coverage C - Personal Property.
The Section I - Power Failure exclusion does not apply to this coverage.
#### Special Deductible
The following deductible applies to covered loss to refrigerated property:
We will pay only that part of the loss that exceeds $100. No other deductible applies to this coverage.

SECTION II - LIABILITY COVERAGES

SECTION II - EXCLUSIONS

Exclusion 1.f. under "this exclusion does not apply to", item 3 is replaced by:

3.    A motorized golf cart:
   a.    While used to play golf on a golf course.
   b.    While being driven to or from a golf course by an insured off public roads.

Exclusion 2.c. is deleted and replaced by:

   c.    Property Damage to property occupied or used by or in the care of the in-
         sured.   This exclusion does not apply to property damage caused by fire,
         smoke, explosion or accidental discharge or overflow of water or steam from
         within a plumbing, heating or air conditioning system, or from within a
         household appliance or from rain or snow.  If the property is in the residence
         premises and such damage is a result of the direct force of wind or hail to
         the building which causes an opening in a roof or wall and the rain or snow
         enters through this opening, then coverage does apply.

SECTION II - ADDITIONAL COVERAGES

   **Claim Expenses**
   Under C, the amount of expenses we will pay is increased to $100 per day.

   **Part-Time Business Pursuits of an Insured Under 18 Years of Age**
   Section II also applies to part-time business pursuits of an insured who is under
   the age of 18.
   This insurance does not apply in three instances.
   a.    It does not apply to liability as a result of a business owned by or controlled
         by an insured or by a partnership or joint venture of which an insured is a
         partner or member.
   b.    It does not apply to liability as a result of rendering or failure to render
         professional services of any nature (other than teaching).
   c.    It does not apply to **bodily injury** to a fellow employee of the insured injured
         in the course of work.

All other provisions of this policy apply.



## EXTENDED DWELLING REPLACEMENT COST COVERAGE
## TO 125% OF STATED COVERAGE A LIMIT
### 231-1524 (2-94)

We will provide you with Replacement Cost Insurance for your Dwelling insured under COV-ERAGE A - DWELLING. You may elect to make a claim under the terms of this endorsement if (1) The amount of the loss on the Dwelling exceeds the limit shown on the Declarations Page for COVERAGE A - DWELLING. (2) If you have complied with all the provisions of this endorsement.

1.  For this coverage, you agree to:

    a.  Insure your Dwelling at 100% of its replacement cost value.
    b.  Report any improvements to your Dwelling to us within 60 days of completion. If you do not report these improvements to us in writing and the cost of such improvements exceeds $10,000, the provisions of this endorsement will not apply. Instead the Coverage A Limit of Liability shown on the Declarations Page will be the maximum coverage available.
    c.  Pay the premiums recomputed, at renewal, to reflect the current replacement cost of your Dwelling. This amount will increase based on reports from a recognized appraisal service which reflects changes in your local construction costs. Payment of premium will constitute acceptance of the revised limit.

The following provision will apply to this coverage.

2.  Section I Conditions, 3.b. Loss Settlement shall not apply to **COVERAGE A - DWELLING**. It is replaced by the following:

    a.  The limit of liability for **COVERAGE A - DWELLING** will be no more than the amount necessarily and actually spent to repair or replace all or part of the Dwelling insured under **COVERAGE A - DWELLING**, subject to a maximum cap not to exceed 125% of the **COVERAGE A - LIMIT OF LIABILITY**, with similar construction based on contemporary methods and materials of like kind and quality.
    b.  We will not pay more than the actual cash value of the loss or damage until the repair or replacement is completed.
    c.  You may file a claim on an actual cash value basis, and then, within 180 days after the loss, provide written notice to us of your intent to file for any added amount due from this endorsement.

3.  This coverage does not apply to land, including land on which the Dwelling is located.

4.  This endorsement does not cover nor increase the coverage available for the additional costs incurred due to the enforcement of ordinances, laws, changes or revisions in building codes regulating the demolition, repair, construction, reconstruction or use of the Dwelling. This applies whether the need for such increase or additional cost is preceded by, or concurrent with, a covered loss or not.

**THIS ENDORSEMENT APPLIES ONLY TO COVERAGE A - DWELLING AND DOES NOT INCREASE OR OTHERWISE AFFECT COVERAGE PROVIDED UNDER COVERAGES B, C, OR D, EXTENSION OF COVERAGE, ENDORSEMENT OR OTHER CHANGE.**

All other provisions of this policy apply.

231-1524 (2-94)



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL PROPERTY REPLACEMENT COST

**SECTION I**

For an additional premium, covered losses to the following property are settled at replacement cost at the time of loss:

    a.    Coverage C - Personal Property;
    b.    if covered in this policy, awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

Personal Property Replacement Cost coverage will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy:

    a.    Jewelry;
    b.    Furs and garments trimmed with fur or consisting principally of fur;
    c.    Cameras, projection machines, films and related articles of equipment;
    d.    Musical equipment and related articles of equipment;
    e.    Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry; and
    f.    Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost coverage will not apply to other classes of property separately described and specifically insured.

**1.    PROPERTY NOT ELIGIBLE**

Property listed below is not eligible for replacement cost settlement.  Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

    a.    Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.
    b.    Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.
    c.    Articles not maintained in good or workable condition.
    d.    Articles that are outdated or obsolete and are stored or not being used.

**2.    REPLACEMENT COST**

The following loss settlement procedure applies to all property insured under this endorsement:

    a.    We will pay no more than the least of the following amounts:
        (1)    Replacement cost at the time of loss without deduction for depreciation;
        (2)    The full cost of repair at the time of loss;
        (3)    The limit of liability that applies to Coverage C, if applicable;
        (4)    Any applicable special limits of liability stated in this policy; or
        (5)    For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.
    b.    When the replacement cost for the entire loss under this endorsement is more than $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is complete.
    c.    You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1990

HO 04 90 04 91



## PREMISES ALARM OR FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler alarm system approved by us on the RESIDENCE PREMISES. You agree to maintain this system in working order and to notify us promptly of any changes made to the system or if it is removed.

We further agree that if credit is given for a local burglar alarm or a burglar alarm reporting to either a central station or a police department, we will waive the deductible shown on the declarations page for any theft loss from the RESIDENCE PREMISES, if it is determined that the alarm system functioned as designed.

391-0565 (1-83)



# NEW HOME DISCOUNT

Your policy has received a premium credit if your home is less than nine years old. The appropriate credit shown below was applied to the Basic Premium.

## CREDIT DETERMINATION:

1. Determine the credit classification by subtracting the year in which construction was completed from the year in which the policy becomes effective or renews.
2. The credit indicated below has been applied to the **Basic Premium**.

| Credit Classification | Credit Percentage |
|---|---|
| 0 (New) | 23% |
| 1 | 23 |
| 2 | 21 |
| 3 | 18 |
| 4 | 15 |
| 5 | 12 |
| 6 | 9 |
| 7 | 6 |
| 8 | 3 |
| 9+ | 0 |



ALLMERICA FINANCIAL®
HANOVER INSURANCE®

09

RENEWAL DECLARATION

# AC LF
RENEWAL OF POLICY  HVO 7068482

H O M E O W N E R S   P O L I C Y

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---------------|------|----|-----------------------------|-------------|
| | FROM | TO | | |
| HVO 7068482 | 12/12/04 | 12/12/05 | MASSACHUSETTS BAY INSURANCE CO | 040412700 |

NAMED INSURED AND ADDRESS                          AGENT

NANCY  BALFOUR                    TELEPHONE: 504-883-2500
BRUCE BALFOUR                     INSURANCE UNDERWRITERS LTD
7016 DERBES                       2610 EDENBORN AVENUE
NEW ORLEANS, LA  70124            P.O. BOX 6738
                                  METAIRIE, LA  70009

POLICY PERIOD- 12:01 A.M. STANDARD TIME AT THE RESIDENCE PREMISES

THE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS.

```
CONSTRUCTION   PREM.   NO. OF   TERR.   PROT.   YR.     SECTION I LOSS      SEAS/SEC
               GROUP    FAM.            CODE   CONST.     DEDUCTIBLE
   FRAME        118      1        36     02      03    $1000 PER OCCURRENCE    NO
COVERAGE IS PROVIDED WHERE A PREMIUM OR A LIMIT OF LIABILITY IS SHOWN
SECTION I COVERAGE                     LIMIT OF LIABILITY            PREMIUMS
  A. DWELLING                              $233,000                 $3,096.00
  B. OTHER STRUCTURES                       $23,300
  C. PERSONAL PROPERTY                     $163,100
  D. LOSS OF USE                            $46,600
SECTION II COVERAGE
  E. PERSONAL LIABILITY                 $300,000 EACH OCCURRENCE
  F. MEDICAL PAY. TO OTHERS -              $2,000 EACH PERSON          $20.00
                      TOTAL BASIC PREMIUM - - - - - - - - - - - -   $3,116.00

ADDITIONAL PREMIUMS
  ADDITIONAL COVERAGE ENDORSEMENT                                      $14.00
  EXTENDED DWELLING REPLACEMENT COST                                   $12.00
  REPLACEMENT COST ON COVERAGE C - UNSCHEDULED PERSONAL PROPERTY      $232.00
                      TOTAL ADDITIONAL PREMIUMS - - - - - - - - - -   $258.00
RATING CREDITS
  OPTIONAL DEDUCTIBLE                                                 $400.00CR
                      TOTAL RATING CREDITS                            $400.00CR

VALUED CUSTOMER CREDITS
  CREDIT FOR PROTECTIVE DEVICES
  NEW HOME DISCOUNT
  NON-SMOKER DISCOUNT 7% CREDIT
  10% CREDIT FOR INSURING BOTH YOUR AUTO AND HOME WITH US
  LOSS FREE CREDIT
      MAXIMUM CREDIT ALLOWED                                        $1,548.00CR
                      TOTAL CREDITS - - - - - - - - - - - - - - - $1,948.00CR

                      TOTAL PREMIUM ADJUSTMENTS - - - - - - - - - - $1,690.00CR
                         TOTAL ANNUAL PREMIUM - - - - - - - - - - - $1,426.00
```

MORTGAGEE
  CENDANT
  ISAOA ATIMA
  P O BOX 5954
  SPRINGFIELD, OH  45501

CONTINUED ON NEXT PAGE
1011256644
PERSONAL LINES

ESCROW BILLED
PAGE 01 OF 02

10/08/04

1

09                     RENEWAL DECLARATION                   # AC LF
                                      RENEWAL OF POLICY   HVO 7068482
               H O M E O W N E R S   P O L I C Y

| POLICY NUMBER | POLICY PERIOD FROM | TO | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| HVO 7068482 | 12/12/04 | 12/12/05 | MASSACHUSETTS BAY INSURANCE CO | 040412700 |

NAMED INSURED AND ADDRESS                           AGENT

NANCY  BALFOUR                      TELEPHONE: 504-883-2500
BRUCE BALFOUR                      INSURANCE UNDERWRITERS LTD
7016 DERBES                        2610 EDENBORN AVENUE
NEW ORLEANS, LA  70124             P.O. BOX 6738
                                   METAIRIE, LA  70009

    FORMS AND ENDORSEMENTS - HO0003 04/91, 231-0600 04/83, HO0117 01/04*,
       231-1340 12/91, HO0496 04/91, 231-1442 05/93, 231-1524 02/94, HO0490 04/91,
       391-0565 01/83, 231-1949 12/02.

    DESCRIPTION OF ADDITIONAL COVERAGES

    POLICY CONTAINS ADDITIONAL COVERAGE ENDORSEMENT

    EXTENDED DWELLING REPLACEMENT COST APPLIES

    LOSS FREE CREDIT
      PERCENTAGE IS 02.

    POLICY CONTAINS REPLACEMENT COST ON COVERAGE C

    CREDIT FOR PROTECTIVE DEVICES                  PERCENTAGE IS 15

                              AUTHORIZED COMPANY REPRESENTATIVE
                              INSURANCE UNDERWRITERS LTD

    IF THE BILL FOR YOUR POLICY IS NOT ENCLOSED, IT WILL BE SENT TO YOU SEPARATELY.

                                                   ESCROW BILLED
                                                     PAGE 02 OF 02
10/08/04                    1011256644
                          PERSONAL LINES

    2



ALLMERICA FINANCIAL®
HANOVER INSURANCE®

09            AMENDED DECLARATION         #

EFFECTIVE 12/12/04

H O M E O W N E R S   P O L I C Y

### REASON FOR AMENDMENT: CHANGE REQUESTED BY LENDER

| POLICY NUMBER | POLICY PERIOD FROM | TO | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| HVO 7068482 | 12/12/04 | 12/12/05 | MASSACHUSETTS BAY INSURANCE CO | 040412700 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| NANCY BALFOUR<br>BRUCE BALFOUR<br>7016 DERBES<br>NEW ORLEANS, LA  70124 | TELEPHONE: 504-883-2500<br>INSURANCE UNDERWRITERS LTD<br>2610 EDENBORN AVENUE<br>P.O. BOX 6738<br>METAIRIE, LA  70009 |

POLICY PERIOD- 12:01 A.M. STANDARD TIME AT THE RESIDENCE PREMISES

THE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS.

| CONSTRUCTION | PREM. GROUP | NO. OF FAM. | TERR. CODE | PROT. CONST. | YR. | SECTION I LOSS DEDUCTIBLE | SEAS/SEC |
|---|---|---|---|---|---|---|---|
| FRAME | 118 | 1 | 36 | 02 | 03 | $1000 PER OCCURRENCE | NO |

COVERAGE IS PROVIDED WHERE A PREMIUM OR A LIMIT OF LIABILITY IS SHOWN

| SECTION I COVERAGE | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|
| A. DWELLING | $233,000 | $3,096.00 |
| B. OTHER STRUCTURES | $23,300 | |
| C. PERSONAL PROPERTY | $163,100 | |
| D. LOSS OF USE | $46,600 | |
| SECTION II COVERAGE | | |
| E. PERSONAL LIABILITY | $300,000 EACH OCCURRENCE | |
| F. MEDICAL PAY. TO OTHERS - | $2,000 EACH PERSON | $20.00 |
| TOTAL BASIC PREMIUM - - - - - - - - - - - - - | | $3,116.00 |

ADDITIONAL PREMIUMS
  ADDITIONAL COVERAGE ENDORSEMENT                       $14.00
  EXTENDED DWELLING REPLACEMENT COST                $12.00
  REPLACEMENT COST ON COVERAGE C - UNSCHEDULED PERSONAL PROPERTY    $232.00
          TOTAL ADDITIONAL PREMIUMS - - - - - - - - - - -    $258.00

RATING CREDITS
  OPTIONAL DEDUCTIBLE                                  $400.00CR
      TOTAL RATING CREDITS                            $400.00CR

VALUED CUSTOMER CREDITS
  CREDIT FOR PROTECTIVE DEVICES
  NEW HOME DISCOUNT
  NON-SMOKER DISCOUNT 7% CREDIT
  10% CREDIT FOR INSURING BOTH YOUR AUTO AND HOME WITH US
  LOSS FREE CREDIT
     MAXIMUM CREDIT ALLOWED                         $1,548.00CR
               TOTAL CREDITS - - - - - - - - - - - - - - - - - $1,948.00CR

             TOTAL PREMIUM ADJUSTMENTS - - - - - - - - - - -   $1,690.00CR
                TOTAL ANNUAL PREMIUM - - - - - - - - - - - - - - $1,426.00
PREV PREMIUM  $1,426.00  CHANGE      $.00      CHANGE IN PREMIUM    $.00

MORTGAGEE
  CENDANT/MERRILL LYNCH
  ISAOA/ATIMA LN# 7077094980
  PO BOX 5954
  SPRINGFIELD OH  45501

11/10/04

CONTINUED ON NEXT PAGE
1011256644
PERSONAL LINES

ESCROW BILLED
PAGE 01 OF 02

1

09                     AMENDED DECLARATION                    #
                              EFFECTIVE 12/12/04
                  H O M E O W N E R S   P O L I C Y

   REASON FOR AMENDMENT: CHANGE REQUESTED BY LENDER

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
| | FROM | TO | | |
| HVO 7068482 | 12/12/04 | 12/12/05 | MASSACHUSETTS BAY INSURANCE CO | 040412700 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| NANCY  BALFOUR<br>BRUCE BALFOUR<br>7016 DERBES<br>NEW ORLEANS, LA  70124 | TELEPHONE: 504-883-2500<br>INSURANCE UNDERWRITERS LTD<br>2610 EDENBORN AVENUE<br>P.O. BOX 6738<br>METAIRIE, LA  70009 |

     FORMS AND ENDORSEMENTS - H00003 04/91, 231-0600 04/83, H00117 01/04,
        231-1340 12/91, H00496 04/91, 231-1442 05/93, 231-1524 02/94, H00490 04/91,
        391-0565 01/83, 231-1949 12/02.

     DESCRIPTION OF ADDITIONAL COVERAGES

     POLICY CONTAINS ADDITIONAL COVERAGE ENDORSEMENT

     EXTENDED DWELLING REPLACEMENT COST APPLIES

     LOSS FREE CREDIT
       PERCENTAGE IS 02.

     POLICY CONTAINS REPLACEMENT COST ON COVERAGE C

     CREDIT FOR PROTECTIVE DEVICES                    PERCENTAGE IS 15


                              AUTHORIZED COMPANY REPRESENTATIVE
                              INSURANCE UNDERWRITERS LTD


                                                    ESCROW BILLED
                                                      PAGE 02 OF 02
11/10/04                    1011256644
                         PERSONAL LINES

   2


ALLMERICA FINANCIAL®
HANOVER INSURANCE®

09                          AMENDED DECLARATION                    #
                                        EFFECTIVE 05/20/05
                    H O M E O W N E R S   P O L I C Y

REASON FOR AMENDMENT: CHANGE MORTGAGEE

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| | FROM | TO | | |
| HVO 7068482 | 12/12/04 | 12/12/05 | MASSACHUSETTS BAY INSURANCE CO | 040412700 |

NAMED INSURED AND ADDRESS                          AGENT

NANCY BALFOUR                      TELEPHONE: 504-883-2500
BRUCE BALFOUR                      INSURANCE UNDERWRITERS LTD
7016 DERBES                        2610 EDENBORN AVENUE
NEW ORLEANS, LA  70124             P.O. BOX 6738
                                   METAIRIE, LA  70009

POLICY PERIOD- 12:01 A.M. STANDARD TIME AT THE RESIDENCE PREMISES

THE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS.

CONSTRUCTION   PREM.    NO. OF   TERR.   PROT.   YR.     SECTION I LOSS      SEAS/SEC
               GROUP    FAM.     CODE    CONST.          DEDUCTIBLE
  FRAME         118       1       36      02      03    $1000 PER OCCURRENCE    NO
COVERAGE IS PROVIDED WHERE A PREMIUM OR A LIMIT OF LIABILITY IS SHOWN
SECTION I COVERAGE                        LIMIT OF LIABILITY          PREMIUMS
  A. DWELLING                                  $264,000              $3,519.00
  B. OTHER STRUCTURES                           $26,400
  C. PERSONAL PROPERTY                         $163,100                 $22.00CR
  D. LOSS OF USE                                $52,800
SECTION II COVERAGE
  E. PERSONAL LIABILITY                   $300,000 EACH OCCURRENCE
  F. MEDICAL PAY. TO OTHERS -                 $2,000 EACH PERSON         $20.00
                TOTAL BASIC PREMIUM - - - - - - - - - - - -         $3,517.00

ADDITIONAL PREMIUMS
  ADDITIONAL COVERAGE ENDORSEMENT                                       $14.00
  EXTENDED DWELLING REPLACEMENT COST                                    $12.00
  REPLACEMENT COST ON COVERAGE C - UNSCHEDULED PERSONAL PROPERTY       $264.00
                TOTAL ADDITIONAL PREMIUMS - - - - - - - - -            $290.00

RATING CREDITS
  OPTIONAL DEDUCTIBLE                                                  $400.00CR
                TOTAL RATING CREDITS                                   $400.00CR

VALUED CUSTOMER CREDITS
  CREDIT FOR PROTECTIVE DEVICES
  NEW HOME DISCOUNT
  NON-SMOKER DISCOUNT 7% CREDIT
  10% CREDIT FOR INSURING BOTH YOUR AUTO AND HOME WITH US
  LOSS FREE CREDIT
      MAXIMUM CREDIT ALLOWED                                         $1,760.00CR
                TOTAL CREDITS - - - - - - - - - - - - - - -         $2,160.00CR

                TOTAL PREMIUM ADJUSTMENTS - - - - - - - - - -        $1,870.00CR
                TOTAL ANNUAL PREMIUM - - - - - - - - - -            $1,647.00
  PREV PREMIUM  $1,426.00  CHANGE    $221.00      CHANGE IN PREMIUM   $124.73

MORTGAGEE                          SECOND MORTGAGEE
  FIRST MORTGAGE GROUP LLC           NATIONAL CITY BANK
  ISAOA ATIMA LN#4042234             ISAOA ATIMA
  PO BOX 1024                        PO BOX 5570
  DAYTON, OH  45401                  CLEVELAND, OH  44401

CONTINUED ON NEXT PAGE
                                    1011256644                   ESCROW BILLED
05/20/05                         PERSONAL LINES                  PAGE 01 OF 02

1

09                     AMENDED DECLARATION          #
                                EFFECTIVE 05/20/05
               H O M E O W N E R S   P O L I C Y

REASON FOR AMENDMENT: CHANGE MORTGAGEE

| POLICY NUMBER | POLICY PERIOD FROM | TO | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| HVO 7068482 | 12/12/04 | 12/12/05 | MASSACHUSETTS BAY INSURANCE CO | 040412700 |

NAMED INSURED AND ADDRESS                              AGENT

NANCY  BALFOUR                        TELEPHONE: 504-883-2500
BRUCE BALFOUR                         INSURANCE UNDERWRITERS LTD
7016 DERBES                           2610 EDENBORN AVENUE
NEW ORLEANS, LA  70124                P.O. BOX 6738
                                      METAIRIE, LA  70009

    FORMS AND ENDORSEMENTS - H00003 04/91, 231-0600 04/83, H00117 01/04,
      231-1340 12/91, H00496 04/91, 231-1442 05/93, 231-1524 02/94, H00490 04/91,
      391-0565 01/83, 231-1949 12/02.

    DESCRIPTION OF ADDITIONAL COVERAGES

    POLICY CONTAINS ADDITIONAL COVERAGE ENDORSEMENT

    EXTENDED DWELLING REPLACEMENT COST APPLIES

    LOSS FREE CREDIT
      PERCENTAGE IS 02.

    POLICY CONTAINS REPLACEMENT COST ON COVERAGE C

    CREDIT FOR PROTECTIVE DEVICES              PERCENTAGE IS 15

                                 AUTHORIZED COMPANY REPRESENTATIVE
                                 INSURANCE UNDERWRITERS LTD

    IF THE BILL FOR YOUR POLICY IS NOT ENCLOSED, IT WILL BE SENT TO YOU SEPARATELY.

                                               ESCROW BILLED
                                               PAGE 02 OF 02
05/20/05                  1011256644
                      PERSONAL LINES

    2



ALLMERICA FINANCIAL®
HANOVER INSURANCE®

09                     AMENDED DECLARATION
                              EFFECTIVE 05/20/05
            H O M E O W N E R S   P O L I C Y

     REASON FOR AMENDMENT: CHANGE MORTGAGEE

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| | FROM | TO | | |
| HVO 7068482 | 12/12/04 | 12/12/05 | MASSACHUSETTS BAY INSURANCE CO | 040412700 |

NAMED INSURED AND ADDRESS                              AGENT

NANCY  BALFOUR                        TELEPHONE: 504-883-2500
BRUCE BALFOUR                         INSURANCE UNDERWRITERS LTD
7016 DERBES                           2610 EDENBORN AVENUE
NEW ORLEANS, LA  70124                P.O. BOX 6738
                                      METAIRIE, LA  70009

   POLICY PERIOD- 12:01 A.M. STANDARD TIME AT THE RESIDENCE PREMISES

   THE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS.

   CONSTRUCTION   PREM.   NO. OF   TERR.   PROT.   YR.    SECTION I LOSS      SEAS/SEC
                  GROUP   FAM.             CODE    CONST.    DEDUCTIBLE
     FRAME         118     1        36      02      03   $1000 PER OCCURRENCE    NO
   COVERAGE IS PROVIDED WHERE A PREMIUM OR A LIMIT OF LIABILITY IS SHOWN
   SECTION I COVERAGE                    LIMIT OF LIABILITY        PREMIUMS
     A. DWELLING                            $264,000              $3,519.00
     B. OTHER STRUCTURES                     $26,400
     C. PERSONAL PROPERTY                   $163,100                $22.00CR
     D. LOSS OF USE                          $52,800
   SECTION II COVERAGE
     E. PERSONAL LIABILITY                 $300,000 EACH OCCURRENCE
     F. MEDICAL PAY. TO OTHERS -            $2,000 EACH PERSON       $20.00
               TOTAL BASIC PREMIUM - - - - - - - - - - - -      $3,517.00

   ADDITIONAL PREMIUMS
     ADDITIONAL COVERAGE ENDORSEMENT                              $14.00
     EXTENDED DWELLING REPLACEMENT COST                          $12.00
     REPLACEMENT COST ON COVERAGE C - UNSCHEDULED PERSONAL PROPERTY  $264.00
               TOTAL ADDITIONAL PREMIUMS - - - - - - - - - - -   $290.00

   RATING CREDITS
     OPTIONAL DEDUCTIBLE                                         $400.00CR
               TOTAL RATING CREDITS                              $400.00CR

   VALUED CUSTOMER CREDITS
     CREDIT FOR PROTECTIVE DEVICES
     NEW HOME DISCOUNT
     NON-SMOKER DISCOUNT 7% CREDIT
     10% CREDIT FOR INSURING BOTH YOUR AUTO AND HOME WITH US
     LOSS FREE CREDIT
         MAXIMUM CREDIT ALLOWED                                $1,760.00CR
               TOTAL CREDITS - - - - - - - - - - - - - - - -  $2,160.00CR

               TOTAL PREMIUM ADJUSTMENTS - - - - - - - - - - -  $1,870.00CR
               TOTAL ANNUAL PREMIUM - - - - - - - - - - - - -   $1,647.00
   PREV PREMIUM  $1,647.00  CHANGE      $.00    CHANGE IN PREMIUM    $.00

   MORTGAGEE
    FIRST MORTGAGE GROUP LLC
    ISAOA ATIMA LN#4042234
    PO BOX 1024
    DAYTON, OH  45401

09                        AMENDED DECLARATION
                                    EFFECTIVE 05/20/05
                    H O M E O W N E R S   P O L I C Y

    REASON FOR AMENDMENT: CHANGE MORTGAGEE

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| | FROM | TO | | |
| HVO 7068482 | 12/12/04 | 12/12/05 | MASSACHUSETTS BAY INSURANCE CO | 040412700 |

NAMED INSURED AND ADDRESS                         AGENT

NANCY  BALFOUR                      TELEPHONE: 504-883-2500
BRUCE BALFOUR                       INSURANCE UNDERWRITERS LTD
7016 DERBES                         2610 EDENBORN AVENUE
NEW ORLEANS, LA  70124              P.O. BOX 6738
                                    METAIRIE, LA  70009

    FORMS AND ENDORSEMENTS - H00003 04/91, 231-0600 04/83, H00117 01/04,
      231-1340 12/91, H00496 04/91, 231-1442 05/93, 231-1524 02/94, H00490 04/91,
      591-0565 01/83, 231-1949 12/02.

    DESCRIPTION OF ADDITIONAL COVERAGES

    POLICY CONTAINS ADDITIONAL COVERAGE ENDORSEMENT

    EXTENDED DWELLING REPLACEMENT COST APPLIES

    LOSS FREE CREDIT
     PERCENTAGE IS 02.

    POLICY CONTAINS REPLACEMENT COST ON COVERAGE C

    CREDIT FOR PROTECTIVE DEVICES               PERCENTAGE IS 15


                        AUTHORIZED COMPANY REPRESENTATIVE
                        INSURANCE UNDERWRITERS LTD


                                              ESCROW BILLED
                                              PAGE 02 OF 02
07/15/05              1011256644
                    PERSONAL LINES

2


ALLMERICA FINANCIAL®
HANOVER INSURANCE®

09                         AMENDED DECLARATION                         #
                                           EFFECTIVE 07/21/05
                     H O M E O W N E R S   P O L I C Y

REASON FOR AMENDMENT: CHANGE REQUESTED BY LENDER

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
| | FROM | TO | | |
| HVO 7068482 | 12/12/04 | 12/12/05 | MASSACHUSETTS BAY INSURANCE CO | 040412700 |

| NAMED INSURED AND ADDRESS | AGENT |
| | |

NANCY  BALFOUR                          TELEPHONE: 504-883-2500
BRUCE BALFOUR                           INSURANCE UNDERWRITERS LTD
7016 DERBES                             2610 EDENBORN AVENUE
NEW ORLEANS, LA  70124                  P.O. BOX 6738
                                        METAIRIE, LA  70009

POLICY PERIOD- 12:01 A.M. STANDARD TIME AT THE RESIDENCE PREMISES

THE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS.

CONSTRUCTION   PREM.   NO. OF   TERR.   PROT.   YR.   SECTION I LOSS   SEAS/SEC
               GROUP   FAM.     CODE    CONST.   DEDUCTIBLE
    FRAME      118     1        36      02      03   $1000 PER OCCURRENCE   NO
COVERAGE IS PROVIDED WHERE A PREMIUM OR A LIMIT OF LIABILITY IS SHOWN
SECTION I COVERAGE                      LIMIT OF LIABILITY       PREMIUMS
 A. DWELLING                              $264,000              $3,519.00
 B. OTHER STRUCTURES                       $26,400
 C. PERSONAL PROPERTY                     $163,100                 $22.00CR
 D. LOSS OF USE                            $52,800
SECTION II COVERAGE
 E. PERSONAL LIABILITY                    $300,000 EACH OCCURRENCE
 F. MEDICAL PAY. TO OTHERS -                $2,000 EACH PERSON      $20.00
             TOTAL BASIC PREMIUM - - - - - - - - - - - - - -    $3,517.00
ADDITIONAL PREMIUMS
 ADDITIONAL COVERAGE ENDORSEMENT                                   $14.00
 EXTENDED DWELLING REPLACEMENT COST                                $12.00
 REPLACEMENT COST ON COVERAGE C - UNSCHEDULED PERSONAL PROPERTY   $264.00
             TOTAL ADDITIONAL PREMIUMS - - - - - - - - - - -      $290.00
RATING CREDITS
 OPTIONAL DEDUCTIBLE                                              $400.00CR
       TOTAL RATING CREDITS                                      $400.00CR

VALUED CUSTOMER CREDITS
 CREDIT FOR PROTECTIVE DEVICES
 NEW HOME DISCOUNT
 NON-SMOKER DISCOUNT 7% CREDIT
 10% CREDIT FOR INSURING BOTH YOUR AUTO AND HOME WITH US
 LOSS FREE CREDIT
       MAXIMUM CREDIT ALLOWED                                  $1,760.00CR
                 TOTAL CREDITS - - - - - - - - - - - - - -    $2,160.00CR

             TOTAL PREMIUM ADJUSTMENTS - - - - - - - - - - -   $1,870.00CR
                 TOTAL ANNUAL PREMIUM - - - - - - - - - - - -  $1,647.00
  PREV PREMIUM  $1,647.00  CHANGE      $.00      CHANGE IN PREMIUM    $.00

MORTGAGEE
 NATIONAL CITY MORTGAGE CO
 ISAOA ATIMA LN#4042234
 PO BOX 1024
 DAYTON, OH  45401

CONTINUED ON NEXT PAGE
                              1011256644                    ESCROW BILLED
08/01/05                    PERSONAL LINES                  PAGE 01 OF 02

1

09       AMENDED DECLARATION    #
              EFFECTIVE 07/21/05
      H O M E O W N E R S   P O L I C Y

REASON FOR AMENDMENT: CHANGE REQUESTED BY LENDER

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| | FROM | TO | | |
| HVO 7068482 | 12/12/04 | 12/12/05 | MASSACHUSETTS BAY INSURANCE CO | 040412700 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| NANCY  BALFOUR<br>BRUCE BALFOUR<br>7016 DERBES<br>NEW ORLEANS, LA   70124 | TELEPHONE: 504-883-2500<br>INSURANCE UNDERWRITERS LTD<br>2610 EDENBORN AVENUE<br>P.O. BOX 6738<br>METAIRIE, LA   70009 |

  FORMS AND ENDORSEMENTS - HO0003 04/91, 231-0600 04/83, HO0117 01/04,
   231-1340 12/91, HO0496 04/91, 231-1442 05/93, 231-1524 02/94, HO0490 04/91,
   391-0565 01/83, 231-1949 12/02.

 DESCRIPTION OF ADDITIONAL COVERAGES

 POLICY CONTAINS ADDITIONAL COVERAGE ENDORSEMENT

 EXTENDED DWELLING REPLACEMENT COST APPLIES

 LOSS FREE CREDIT
  PERCENTAGE IS 02.

 POLICY CONTAINS REPLACEMENT COST ON COVERAGE C

 CREDIT FOR PROTECTIVE DEVICES      PERCENTAGE IS 15

                AUTHORIZED COMPANY REPRESENTATIVE
                INSURANCE UNDERWRITERS LTD

                   ESCROW BILLED
                   PAGE 02 OF 02
08/01/05         1011256644
         PERSONAL LINES

2

HLS 91-1326

Regular Session, 1991

HOUSE BILL NO. 776

BY REPRESENTATIVE DIMOS

# ENGROSSED

INSURANCE/FIRE & CASUALTY:   Provides for valued policy clauses in
fire insurance policies

AN ACT

1  To enact R.S. 22:695, relative to fire insurance policies; to provide
2  for valued policy clauses in fire insurance policies; to require
3  the payment of the total amount for which the property is
4  insured in case of total destruction; to provide for the
5  reduction of insurance and liability of the insurer under
6  certain conditions in case of partial destruction; and to
7  provide for related matters.
8
9  Be it enacted by the Legislature of Louisiana:
10     Section 1.  R.S. 22:695 is hereby enacted to read as follows:
11     §695. Valued policy clause; exceptions
12        A.  In any case in which a policy includes coverage for
13  loss of or damage for property of the insured from the period of
14  fire, if the insurer places a valuation upon the covered
15  property and uses such valuation for purposes of determining the
16  premium charge to be made under the policy, the insurer shall
17  compute and indemnify or compensate any covered loss of or
18  damage to such property which occurs during the term of the
19  policy at such valuation without deduction or offset, unless a
20  different method is to be used in the computation of loss, in
21  which latter case, the policy, and any application therefor,
22  shall set forth in type of prominent size, the actual method of

Page 1 of 3

ENGROSSED

CODING:  Words in ~~struck through~~ type are deletions from existing
law; words underlined are additions.

EXHIBIT
B

HLS 91-1326
H.B. NO. 776

1   such loss computation by the insurer.  Coverage may be voided
2   under said contract in the event of criminal fault on the part
3   of the insured or the assigns of the insured.
4        B. Nothing provided for in this Section shall be construed
5   to prevent the insurer of a fire insurance policy, at the
6   expense of the insurer and without contribution on the part of
7   the insured, from replacing the property partially damaged or
8   totally destroyed.
9        C. Any clause, condition, or provision of a policy of fire
10  insurance contrary to the provisions of this Section shall be
11  null and void, and have no legal effect. Nothing contained
12  herein shall be construed to prevent any insurer from cancelling
13  or reducing, as provided by law, the insurance on any property
14  prior to damage or destruction.
15       D. The liability of the insurer of a policy of fire
16  insurance, in the event of total or partial loss, shall not
17  exceed the insurable interest of the insured in the property
18  unless otherwise provided for by law. Nothing in this Section
19  shall be construed as to preclude the insurer from questioning
20  or contesting the insurable interest of the insured.
21       Section 2. This Act shall affect the obligation of insurers
22  under policies issued prior to the effective date of this Act. Any
23  policy forms approved prior to the effective date of this Act shall
24  be altered for the benefit of the insured.

DIGEST

The digest printed below was prepared by House Legislative Services.
It constitutes no part of the bill.

Dimos                    Act                    HB No. 776

Proposed law would provide that, if an insurer places a valuation
upon property which it is insuring against loss from fire and uses

Page 2 of 3

ENGROSSED

CODING:  Words in ~~struck through~~ type are deletions from existing
law; words underlined are additions.

HLS 91-1326
DIGEST

such valuation to determine the premium charged for the policy, then
the insurer shall compute, indemnify, and compensate the insured for
any covered loss or damage at such valuation without deduction or
offset unless a different method is to be used for computation of
loss.

Proposed law would provide that, if a different method for
computation of loss is used, it shall be set forth in prominent type
in the policy or application therefor.

Proposed law would permit the insurer to replace the property if it
is partially damaged or totally destroyed and provides that the
insurer's liability shall not exceed the insurable interest of the
insured.

(Adds R.S. 22:695)

Summary of Amendments Adopted by House

   Committee Amendments Proposed by House Committee on Commerce to
   the original bill

   1.   Provides that if an insurer who insures property against
        loss by fire places a valuation upon the property and uses
        that valuation to determine the premium charged for the
        policy, then the insurer shall indemnify the insured for
        loss or damage at such valuation without  deduction or
        offset unless a different method is used for computation of
        loss.

   2.   Provides that, if a different method for computation of
        loss is used, it shall be set forth in prominent type on
        the policy or application therefor.

HLS 91-1326

**REENGROSSED**

Regular Session, 1991

HOUSE BILL NO. 776

BY REPRESENTATIVES DIMOS AND THOMPSON

INSURANCE/FIRE & CASUALTY:   Provides for valued policy clauses in
    fire insurance policies

1                           AN ACT

2   To enact R.S. 22:695, relative to fire insurance policies; to provide

3        for valued policy clauses in fire insurance policies; to require

4        the payment of the total amount for which the property is

5        insured in case of total destruction; to provide for the

6        reduction of insurance and liability of the insurer under

7        certain conditions in case of partial destruction; and to

8        provide for related matters.

9   Be it enacted by the Legislature of Louisiana:

10       Section 1.  R.S. 22:695 is hereby enacted to read as follows:

11       §695.  Valued policy clause; exceptions

12            A.   In any case in which a policy includes coverage for

13       loss of, or damage to, property of the insured from the peril of

14       fire, if the insurer places a valuation upon the covered

15       property and uses such valuation for purposes of determining the

16       premium charge to be made under the policy, the insurer shall

17       compute and indemnify or compensate any covered loss of, or

18       damage to, such property which occurs during the term of the

19       policy at such valuation without deduction or offset, unless a

20       different method is to be used in the computation of loss, in

21       which latter case, the policy, and any application therefor,

22       shall set forth in type of prominent size, the actual method of

Page 1 of 3

REENGROSSED

CODING:   Words in ~~struck through~~ type are deletions from existing
law; words underlined are additions.

HLS 91-1326
H.B. NO. 776

1   such loss computation by the insurer.  Coverage may be voided

2   under said contract in the event of criminal fault on the part

3   of the insured or the assigns of the insured.

4       B.  Any clause, condition, or provision of a policy of fire

5   insurance contrary to the provisions of this Section shall be

6   null and void, and have no legal effect. Nothing contained

7   herein shall be construed to prevent any insurer from cancelling

8   or reducing, as provided by law, the insurance on any property

9   prior to damage or destruction.

10      C. The liability of the insurer of a policy of fire

11   insurance, in the event of total or partial loss, shall not

12   exceed the insurable interest of the insured in the property

13   unless otherwise provided for by law. Nothing in this Section

14   shall be construed as to preclude the insurer from questioning

15   or contesting the insurable interest of the insured.

16      Section 2.  This Act shall affect the obligation of insurers

17   under policies issued prior to the effective date of this Act. Any

18   policy forms approved prior to the effective date of this Act shall

19   be altered for the benefit of the insured.

---

## DIGEST

The digest printed below was prepared by House Legislative Services.
It constitutes no part of the bill.

---

Dimos, Thompson        Act          HB No. 776

Proposed law would provide that, if an insurer places a valuation upon property which it is insuring against loss from fire and uses such valuation to determine the premium charged for the policy, then the insurer shall compute, indemnify, and compensate the insured for any covered loss or damage at such valuation without deduction or offset unless a different method is to be used for computation of loss.

Proposed law would provide that, if a different method for computation of loss is used, it shall be set forth in prominent type in the policy or application therefor.

Page 2 of 3

REENGROSSED

CODING: Words in struck through type are deletions from existing law; words underlined are additions.

HLS 91-1326
DIGEST

<u>Proposed law</u> would provide that the insurer's liability not exceed
the insurable interest of the insured.

(Adds R.S. 22:695)

<u>Summary of Amendments Adopted by House</u>

> Committee Amendments Proposed by <u>House Committee on Commerce</u> to
> the original bill

1.  Provides that if an insurer who insures property against
    loss by fire places a valuation upon the property and uses
    that valuation to determine the premium charged for the
    policy, then the insurer shall indemnify the insured for
    loss or damage at such valuation without deduction or
    offset unless a different method is used for computation of
    loss.

2.  Provides that, if a different method for computation of
    loss is used, it shall be set forth in prominent type on
    the policy or application therefor.

<u>House Floor Amendments to the engrossed bill</u>

1.  Deletes provision that permits the insurer to replace the
    property if it is partially damaged or totally destroyed.

Page 3 of 3

REENGROSSED

HLS 91-1326

Regular Session, 1991

HOUSE BILL NO. 776

BY REPRESENTATIVE DIMOS

# ORIGINAL

INSURANCE/FIRE & CASUALTY:   Provides for valued policy clauses in
fire insurance policies

| | |
|---|---|
| 1 | AN ACT |
| 2 | To enact R.S. 22:695, relative to fire insurance policies; to provide |
| 3 | for valued policy clauses in fire insurance policies; to require |
| 4 | the payment of the total amount for which the property is |
| 5 | insured in case of total destruction; to provide for the |
| 6 | reduction of insurance and liability of the insurer under |
| 7 | certain conditions in case of partial destruction; and to |
| 8 | provide for related matters. |
| 9 | Be it enacted by the Legislature of Louisiana: |
| 10 | Section 1.  R.S. 22:695 is hereby enacted to read as follows: |
| 11 | §695. Valued policy clause; exceptions |
| 12 | A. Any insurer of a policy of fire insurance issued by an |
| 13 | insurer on property in this state shall pay to the insured, in |
| 14 | case of total destruction, without criminal fault on the part of |
| 15 | the insured or assigns of the insured, the total amount for |
| 16 | which the property is insured, at the time of the total |
| 17 | destruction, in the policy of the insurer. |
| 18 | B. Any insurer of a policy of fire insurance issued by an |
| 19 | insurer on property in this state shall pay to the insured, in |
| 20 | case of partial damage, without criminal fault on part of the |
| 21 | insured or assigns of the insured, an amount, not to exceed an |
| 22 | amount for which the property is insured at the time of the |

Page 1 of 3

ORIGINAL

CODING:  Words in ~~struck through~~ type are deletions from existing
law; words underlined are additions.



HLS 91-1326

1    partial damage, in the policy of the insurer, that shall permit

2    the insured to restore the damaged property to its original

3    condition. However, any loss which would constitute total loss

4    under Subsection A of this Section but which loss is covered by

5    a blanket-form policy insurance, Subsection B of this Section

6    shall apply and the insurer shall pay to the insured an amount

7    equal to the actual cash value at the time of the loss of each

8    insured object destroyed, not to exceed the total amount of the

9    insurance.

10       C. Nothing provided for in this Section shall be construed

11    to prevent the insurer of a fire insurance policy, at the

12    expense of the insurer and without contribution on the part of

13    the insured, from replacing the property partially damaged or

14    totally destroyed.

15       D. Any clause, condition, or provision of a policy of fire

16    insurance contrary to the provisions of this Section shall be

17    null and void, and have no legal effect. Nothing contained

18    herein shall be construed to prevent any insurer from cancelling

19    or reducing, as provided by law, the insurance on any property

20    prior to damage or destruction.

21       E. The liability of the insurer of a policy of fire

22    insurance, in the event of total or partial loss, shall not

23    exceed the insurable interest of the insured in the property

24    unless otherwise provided for by law. Nothing in this Section

25    shall be construed as to preclude the insurer from questioning

26    or contesting the insurable interest of the insured.

27    Section 2. This Act shall affect the obligation of insurers

28    under policies issued prior to the effective date of this Act. Any

29    policy forms approved prior to the effective date of this Act shall

30    be altered for the benefit of the insured.

Page 2 of 3

ORIGINAL

CODING: Words in struck through type are deletions from existing
law; words underlined are additions.

HLS 91-1326

---

DIGEST

The digest printed below was prepared by House Legislative Services.
It constitutes no part of the bill.

---

Dimos                              Act                         HB No.

Proposed law would provide for a "valued policy clause" which would
prohibit a fire insurance policy from insuring property against fire
loss in an amount less than the total amount for which the property
is insured. Would provide for circumstances in which the insurer
would pay the full amount of the coverage, either in case of total
destruction or in case of partial damage when the property could be
restored to its original condition.

(Adds R.S. 22:695)

Page 3 of 3

ORIGINAL

CODING:  Words in struck through type are deletions from existing
law; words underlined are additions.

House Commerce Committee

Minutes of Meeting
1991 Regular Session
June 6, 1991

## I.  CALL TO ORDER

Representative C. Dale Sittig, Chairman of the House Commerce Committee, called the meeting to order at 9:26 a.m. in Committee Room 1 of the State Capitol in Baton Rouge, Louisiana.   The secretary called the roll and a quorum was established as shown below.

## II.  ROLL CALL

### MEMBERS PRESENT:                               MEMBERS ABSENT:

Representative Dale Sittig,
  Chairman
Representative James Donelon,
  Vice Chairman
Representative John Alario
Representative Wilford Carter
Representative N. J. Damico
Representative Eddie Deano, Jr.
Representative John "Juba" Diez
Representative Hunt Downer
Representative Clark Gaudin
Representative Terry Gee
Representative Kernan "Skip" Hand
Representative Francis C. Heitmeier
Representative Charles D. Jones
Representative Michael McCleary
Representative Charles Melancon
Representative Sean Reilly
Representative A. Jess Smith
Representative Tim Stine
Representative John D. Travis

## III.  STAFF MEMBERS PRESENT:

Theresa Ray, Senior Analyst
T. Michael White, Attorney
Dan Boudreaux, Attorney

- 1 -



EXHIBIT

D

Minutes, Commerce                                          June 6, 1991

_____

Charlesetta Lavergne, Secretary
John Hernandez, Clerk
Melanie Carter, Sergeant at Arms

## IV.  DISCUSSION OF LEGISLATION

### House Bill No. 575 by Representative Jackson

Representative Jackson presented House Bill No. 575, which would provide additional grounds for refusing, suspending, or revoking certificates of registration and provide for additional fees.

There was no further discussion in support of or in opposition to House Bill No. 575.

Representative Diez moved to report House Bill No. 575 favorably.  There were no objections, and House Bill No. 575 was reported favorably by a vote of 10 yeas and 0 nays.  The members voting were Sittig, Donelon, Damico, Deano, Diez, Gaudin, McCleary, Melancon, A. Jess Smith, and Travis.

### House Bill No. 1900 by Representative Armstrong

Representative Armstrong presented House Bill No. 1900, and indicated that he had amendments which would make the bill a substitute.  The bill would provide for insurance brokers of automobile insurance and penalties for failure to maintain automobile coverage.  (Testimony on the bill was previously given at the June 5, 1991, meeting of the House Commerce Committee.)  Representative Armstrong indicated that the bill was relative to liability insurance policies, policy binders, and the status of the binder when an agent or broker had been issued a nonsufficient fund check.

Representative Diez offered amendments which would add "in case of nonpayment or nonreceipt for an application for a binder" on page 2, line 23, of the substitute bill.  (The committee had adopted other amendments to House Bill No. 1900 on June 5, 1991).  Mr. Groh stated that it would clarify the reason that a binder could be cancelled.

Representative Travis asked if the amendment discussed by the committee on June 5, 1991, had been dealt with.  Mr. Groh indicated that it had.  He added that the other part of the amendment would be that if an agent gives a bad check to the insurer, the insurer would not cancel the insured's policy.  It would also provide relative to installment payments of premiums.  There were no objections, and the amendments were adopted by a vote of 10 yeas and 0 nays.  The members voting were Sittig, Donelon, Damico, Deano, Diez, Gaudin, McCleary, A. Jess Smith, and Travis.

- 2 -

Minutes, Commerce                                                           June 6, 1991

Representative Donelon moved to report House Bill No. 544 favorably.  There were
no objections, and House Bill No. 544 was reported favorably by a vote of 14 yeas
and 0 nays.  The members voting were Donelon, Alario, Damico, Deano, Diez,
Downer, Gaudin, Gee, McCleary, Melancon, A. Jess Smith, and Travis.

### House Bill No. 776 by Representative Dimos

Representative Dimos presented House Bill No. 776, which would provide for
valued policy clauses in fire insurance policies.  He explained that policies were
written for certain amounts, such as a policy on a city lot of $100,000.  The agent
writes the policy for that amount, a fire loss is sustained, and the insurer determines
the extent of the loss, whether partial or total.  The policyholder thinks that he
should recover $100,000 for his loss since that was the amount of his policy.
However, the insurer's expert determines that the value of the property was only
$75,000, so that is what the policyholder gets  Representative Dimos said that this
was what he was trying to correct.

Representative Dimos explained that when the law on valued property clauses was
repealed several years ago that section of the law was repealed through oversight.
He also stated that insurers were concerned that they could not cover existing
homes fifteen or thirty years old if those types of policies existed.  He said he was
willing to work on an amendment to compromise to address the situation.

Mr. E. L. Henry, representing State Farm Insurance, Premier Towers, Baton
Rouge, Louisiana, appeared before the committee on House Bill No. 776.  He
stated he had an amendment to be proposed which would address the problem
Representative Dimos was trying to resolve.  He acknowledged that there was
concern because there were some bad insurance companies as well as bad agents.
The bill would go further than Representative Dimos was seeking, he said, because
a person could buy a 100 acre tract of land that has a $10,000 dwelling on the
property.  The land was valued at $1,000 an acre and a bank might inform the
land buyer that in order for them to lend him money, he has to insure the land at
$100,000.  When the dwelling on the property burns down in a fire, the insurance
company has to pay $110,000.  He continued that contracts like this should not be
allowed to exist.  The amendment would provide that when a policy includes
coverage for loss to a dwelling of the insured and if the company places a valuation
on the property and used the valuation for purposes of determining what to charge
for the premium, the company would compute a loss on the same basis unless a
different method of computating loss was utilized.  In that case, the method would
be set forth in prominent type on the policy or application.

Mr. Henry hypothesized that a home had burned down and there was a total loss.
If the cost to replace the home was equal to or less than the policy limit, the insurer
must replace the home.  The policyholder could even ask for cash; however, in
those instances, it will be actual cash value of the home.  However, the insurer must
replace the home under the terms of the policy.  He said that most people buy fire

- 7 -

insurance so that in case their house is burned or partially destroyed, it would be replaced. The amendment would also provide that if there was a loss, the insurer must replace the partial loss. If the bill passes in its original form, older homes would not be insurable. He explained that if there was a fifty-year old home which is partially destroyed and the insurer must replace it to its original and pay face value on a total loss, then a person was not going to find insurers willing to take that kind of risk. The amendment would address the problems .

Mr. Joel Ory, Audubon Insurance Company, appeared before the committee for informational purposes. He stated that he would speak from an underwriting perspective on the bill. There were many older dwellings in the state and there was a problem insuring them. If a policy comes in for a certain amount, an insurer would have to pay it for a loss. The problem with this, he said, was that the insurance companies were not receiving enough premiums. If insurers do not provide the coverage in the admitted market at the best rates, it was going to force the owners of the older homes into the nonadmitted market. The amendment discussed by Mr. Henry would enable insurers to continue to provide coverage in the admitted market.

Representative Alario said that the insurers did not seem to have a quarrel with Representative Dimos' concern when an agent sells a person too much coverage where the policyholder would at least recover up to that amount. Mr. Ory replied that insurers did have a problem with that. Representative Alario asked if insurers who sell those kinds of policies send someone out to check the property to see if it is actually worth the coverage being sought. Mr. Ory replied that they try to get the information from the agent to determine the value. He said that if a house was worth only $75,000, but was insured for $100,000, it has created a moral risk. Representative Alario said that if there was no claim on the policy for over twenty years, the insurer had overcharged the policyholder for that coverage. He asked if the insurers did not charge for the amount of the coverage written. Mr. Henry responded that a person should not insure a home for more than it was worth. Mr. Henry added that it should be the responsibility of the property owner and the insurer to agree on the value of the property being insured.

Representative Alario asked what happens to the premiums the policyholder has paid over a twenty-year period without ever filing a claim. There was no response.

Representative Sittig asked if the insurance industry examined the property to determine its worth before issuing a policy. Mr. Henry replied that State Farm's agents did, by taking pictures and also by checking the vicinity of the fire hydrant from the property. He added that he would be the last to say that there were no unscrupulous agents in the market, but the bill without the amendment would encourage people to commit fraud.

Representative Donelon asked if Representative Dimos was in agreement to the amendment referred to by Mr. Henry. Representative Dimos replied that he was.

Minutes, Commerce

June 6, 1991

Representative Donelon offered the amendment which would provide that if an insurer who insured property against loss by fire places a valuation upon the property and uses that valuation to determine the premium charged for the policy, then the insurer shall indemnify the insured for loss or damage at such valuation without deduction or offset unless a different method was used for computation of loss.    The amendments also provide that if a different method was used for computation of loss, it shall be set forth in prominent type on the policy or application.   There were no objections, and the amendments were adopted by a vote of 12 yeas and 0 nays.  The members voting were Donelon, Alario, Damico, Deano, Diez, Downer, Gaudin, Gee, McCleary, Melancon, A. Jess Smith, and Travis.

Representative McCleary stated that he had an insurance policy with an automatic premium increase for escalation in value of the property.  He said that his property was now worth less than five years ago but the automatic increase in premiums continues.   Mr. Henry replied that it might take the amount of the policy to continue insuring the property in order to replace it if there was a total loss.

Representative Travis said that an insurance policy was a contract, with a mutual agreement between two parties.  If an insurer wrote a policy for a certain amount and there was a loss, the insurer should pay up to the maximum amount in the policy.    It is the responsibility of the insurer as much as the insured. Representative Dimos said that he was correct, but that during the 1988 Regular Session, a bill made it through that took away the valued policy clause in fire insurance policies.  Representative Travis asked if the amendments would give the insurer the right to say it would rebuild a property rather than give the total amount of the policy.  He also asked if he had a right to collect his $100,000 rather than having the property rebuilt or does the insurer make the determination. Representative Dimos replied that the insurer would replace the house up to the value it determines.

Representative Travis stated that the law should read that if an insurer sold a policy for a certain amount, and in the case of a loss, should be made to pay the amount of the policy.

Representative Travis also suggested that an amendment be placed on the bill requiring that insurance agents go out and examine and evaluate properties before issuing a policy.  Whatever the property is appraised for would be the amount the agent could write the policy for; that would be all he could charge for premiums.  If the losses were so great to insurance company, why do they not appraise the properties, he asked.    Mr. Henry responded that he would find that, in most instances, the reputable companies do this.

Representative Melancon moved to report House Bill No. 776 with amendments. There were no objections, and House Bill No. 776 was reported with amendments

- 9 -

by a vote of 12 yeas and 0 nays.  The members voting were Donelon, Alario, Damico, Deano, Diez, Downer, Gaudin, Gee, McCleary, Melancon, A. Jess Smith, and Travis.

## House Bill No. 1574 by Representative Adley

On behalf of Representative Adley, Mr. Keil McInnis, Department of Wildlife and Fisheries, Post Ofice 98000, Baton Rouge, Louisiana 70898, presented House Bill No. 1574, which would provide for a class one penalty for certain boating violations.  He explained that there was a backlog in the court system on misdemeanor cases referred to as "class one" violations by the department.  In order to solve the problem, the department decriminalized the class one violation.  This violation was for hunting or fishing without a license.  This removed over 12,000 cases from the court system.  Boating violations also fall into the same monetary category.  There was a S25 fine plus court costs.  In drafting the bill last year, the department did not specifically include Title 34 violations, which are boating violations.  The bill would clarify that the Title 34 minor violations were also class one violations.

There was no further discussion in support of or in opposition to House Bill No. 1574.

Representative Donelon moved to report House Bill No. 1574 favorably.  There were no objections, and House Bill No. 1574 was reported favorably by a vote of 12 yeas and 0 nays.  The members voting were Donelon, Alario, Damico, Deano, Diez, Downer, Gaudin, Gee, McCleary, Melancon, A. Jess Smith, and Travis.

## House Bill No. 1932 by Representative Holden

Representative Holden requested that the bill be deferred.

Representative Downer moved to defer action on House Bill No. 1932, which would require that consumers be given the opportunity to review and dispute credit reports prior to dissemination.  There were no objections, and action on House Bill No. 1932 was deferred by a vote of 12 yeas and 0 nays.  The members voting were Donelon, Deano, Diez, Downer, Gaudin, Gee, Hand, Melancon, Reilly, A. Jess Smith, Stine, and Travis.

## House Bill No. 1737 by Representative Bradley

Representative Bradley presented House Bill No. 1737, which would regulate private review agents who conduct utilization reviews.  He requested that the committee consider amendments to make the bill a substitute.

Representative A. Jess Smith moved to adopt the amendments to House Bill No. 1737.  There were no objections, and the motion passed by a vote of 12 yeas and 0