*Ex "A"*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BOBBY CARROLL, SR., ET AL.**                **CIVIL ACTION**

**VERSUS**                                    **06-3955**

**LAFAYETTE INSURANCE CO.**                   **SECTION B(1)**

### ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Remand (Rec. Doc. No. 5) and Defendant's Opposition To Motion To Remand (Rec. Doc. No. 17). After review of the pleadings, attachments, and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Plaintiffs' Motion is **GRANTED**.

### *BACKGROUND*

Plaintiffs filed a petition in state court claiming that their total losses sustained from Hurricane Katrina should be paid in accordance with the valuation provisions of La. R.S. 22:695(A), Louisiana's Valued Policy Law ("VPL"). Defendant filed a Notice of Removal on the basis of supplemental subject matter jurisdiction pursuant to 28 U.S.C. §§ 1369, 1441(e)(1)(B) and 1367. Plaintiffs challenge the existence of federal subject matter jurisdiction.

### *DISCUSSION*

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Insurance Co. Of America*, 114 S.Ct. 1673, 1675 (1994). As such, federal courts possess only the power authorized by the Constitution and Congress. *Id.* (citations omitted). "It

1

is to be presumed that a cause lies outside of this limited jurisdiction (citations omitted) and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Id.* (citations omitted).

Defendant contends that federal subject matter jurisdiction exists under 28 U.S.C. §§ 1369, 1441(e)(1)(B) and 1367. 28 U.S.C. § 1369(a) provides:

> The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location, if–
>
> (1)   a defendant resides in a State and a substantial part of the accident took place in another State or the other location, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;
>
> (2)   any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or
>
> (3)   substantial parts of the accident took place in different States.

Furthermore, § 1369 (b) provides:

> The district court shall abstain from hearing any civil action described in subsection (a) in which –
>
> (1)   the substantial majority of all plaintiffs are citizens if a single State of which the primary defendants are also citizens; and

2

> (2)   the claims asserted will be governed
>        primarily by the laws of that State.

28 U.S.C. § 1441 (e)(1)(B) provides:

> [A] defendant in a State court may remove the
> action to the district court of the United
> States for the district and division embracing
> the place where the action is pending if . . .
> the defendant is a party to an action which is
> or could have been brought, in whole or in
> part, under section 1369 in a United States
> district court and arises from the same
> accident as the action in State court, even if
> the action to be removed could not have been
> brought in a district court as an original
> matter.

28 U.S.C. § 1367 provides for supplemental jurisdiction over any claims that are so related to claims in which the district court has original jurisdiction.

Defendant contends that the Court has supplemental jurisdiction over this action under 28 U.S.C. § 1441(e)(1)(B) because Lafayette Insurance Company is a defendant in several proceedings which are or could have been brought under 28 U.S.C. § 1369 including *Chehardy, Caruso,* and *Randall.*

On March 16, 2006, Judge Polozola issued an order finding jurisdiction over *Chehardy* pursuant to 28 U.S.C. § 1332(a), 28 U.S.C. § 1332 (d) and 28 U.S.C. § 1369.  On April 11, 2006, an order was issued consolidating *Chehardy* with *In re: Katrina Canal Breaches* (05-4182).  On June 2, 2006, Lafayette Insurance Co. was added as a defendant to *In re: Katrina Canal Breaches* (05-4182). (Rec. Doc. No. 516).  The Amended And Restated Complaint naming

3

Lafayette Insurance Company as a defendant asserted federal subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(d). *In re: Katrina Canal Breaches* does **not** invoke 28 U.S.C. § 1369. Consequently, Lafayette Insurance Company's status as a named Defendant in *In re: Katrina Canal Breaches* does not satisfy 28 U.S.C. § 1441(e)(1)(B) because Defendant failed to demonstrate that *In re: Katrina Canal Breaches* is an action which is or could have been brought under section 1369 in a United States district court.

Furthermore, Defendant failed to demonstrate that *In re: Katrina Canal Breaches* and *Carroll v. Lafayette Insurance Co.* arise from the same "accident." 28 U.S.C. § 1441(e)(1)(B). Consequently, subject matter jurisdiction pursuant to 28 U.S.C. § 1441(e)(1)(B) is not supported by Lafayette Insurance Company's status as a defendant in *Chehardy*.

In *Randall*, no Motion To Remand was filed.

In *Caruso*, a Motion To Remand was filed. However, the Court has not ruled on this Motion.

Defendant did not demonstrate that it is "a party to an action which is or could have been brought, in whole or in part, under section 1369." 28 U.S.C. § 1441(e)(1)(B). Further, Defendant did not demonstrate that *Chehardy, Randall, Caruso*, and *Carroll v. Lafayette Insurance Co.* arose from the same "accident." As such, Defendant failed to meet his burden to establish that federal

4

jurisdiction exists pursuant to 28 U.S.C. § 1441(e)(1)(B).

Furthermore, 28 U.S.C. § 1367 is inapplicable. Defendant asserted that the federal court may exercise supplemental jurisdiction over this matter pursuant to U.S.C. § 1367 because the federal courts have original jurisdiction over the proceedings in which the Defendant has already been named. However, as discussed, the issue of whether the Court has proper subject matter jurisdiction over the named proceedings is unresolved. Therefore, 28 U.S.C. § 1367 does not apply.

Defendant asserts that subject matter jurisdiction exists under 28 U.S.C. § 1369 or U.S.C. § 1441(e)(1)(B). The Defendant has the burden of proving that the action arises from "a single accident, where at least 75 natural persons have died in the accident at a discrete location." 28 U.S.C. § 1369(a).

An "accident" must be a "sudden accident, or natural event culminating in an accident, that results in death at a discrete location by at least 75 natural persons." 28 U.S.C. § 1369(c)4. Plaintiffs contend that the action arose out of Hurricane Katrina, an Act of God. Whereas, Defendant asserts that the action arose out of the breach of the levee which constituted a "natural event culminating in an accident." Defendant cited Judge Duvall's *Flint* in support of his argument. In *Flint*, Judge Duvall noted that no court has held Hurricane Katrina to be an accident. However, Judge Duvall reasoned that a levee breach may be an "accident" under §

1369.

Although a levee breach may constitute an "accident" consistent with § 1369, Defendant would be hard pressed to convince the Court that Plaintiffs' action arises out of ONE levee breach. The Court takes judicial notice of published reports by the United States Corps of Engineers and public media sources that the Corps admits to certain design, construction and/or maintenance flaws throughout the levee system.   Multiple levee breaches contributed to the flooding in New Orleans.   According to the pleadings, Plaintiffs are citizens throughout Orleans Parish and, therefore, various Plaintiffs may have sustained losses resulting from differing levee breaches.  Even in the light most favorable to the Defendant, the Defendant cannot satisfy the requirements of § 1369 because Plaintiffs' action arises out of a series of events culminating in multiple accidents not out of an "accident" as required under § 1369.

Furthermore, Plaintiffs contend that the "accident" did not occur in a "discrete location."  Plaintiffs argue that a discrete location would be similar to the site of a train wreck or a fire in a nightclub.   Whereas, Defendant argues that the "discrete location" requirement was included to ensure efficient judicial economy.  The statute does not provide a definition for a "discrete location."  There were multiple breaches at several locations- not discrete.

Furthermore, the minimal diversity requirement in 28 U.S.C. § 1369(a) is not satisfied.  28 U.S.C. § 1369(c) provides "minimal diversity exists between adverse parties if any party is a citizen of a State and any adverse party is a citizen of another State, a citizen or subject of a foreign state, or a foreign state as defined in section 1603(a) of this title." According to the Notice of Removal By Lafayette Insurance Company (Rec. Doc. No. 1), Plaintiffs and Defendant are citizens of Louisiana.  Therefore, the minimal diversity requirement is not satisfied and 28 U.S.C. § 1369(a) is not applicable.

Thus, Defendant is unable to satisfy its burden to establish federal subject matter jurisdiction.  Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion To Remand (Rec. Doc. No. 5) is **GRANTED.**

New Orleans, Louisiana, this 5th day of September, 2006.

_____

UNITED STATES DISTRICT JUDGE

*Ex. "B"*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WOOD, ET AL                             CIVIL ACTION


VERSUS                                  NO.  06-2570

STATE FARM FIRE AND CASUALTY            SECTION "R"(1)
COMPANY, ET AL

This Document applies to the following civil actions in the
Eastern District of Louisiana: 06-2570, 06-2994, 06-2997.

## ORDER AND REASONS

Before the Court are motions to remand the above-listed
cases, which were transferred to this section because plaintiffs
claim damages pursuant to Louisiana's Valued Policy Law, La. Rev.
Stat. § 22:695.  Because these motions concern similar questions
of law, the Court has consolidated its ruling in these matters
for the sake of efficiency.  For the following reasons, the Court
GRANTS the motions.


## I.   BACKGROUND

Plaintiffs in these cases are Louisiana property owners who
suffered substantial damage to their property during Hurricane
Katrina.  Defendants are insurance companies that lack

citizenship or a principal place of business in Louisiana and, in
one case, an insurance agency with its domicile and principal
place of business in Louisiana.  Plaintiffs filed their actions
in Louisiana state court, and defendants removed them to this
Court.  Plaintiffs now seek to remand these matters to state
court.  All defendants oppose the motions to remand and assert
that federal jurisdiction is proper under 28 U.S.C. §§ 1369(a)
and 1441(e)(1)(b), otherwise known as the Multiparty, Multiforum
Trial and Jurisdiction Act of 2002.  One defendant contends that
the Court has diversity jurisdiction over the matter under 28
U.S.C. § 1332 because of improper joinder of one of the parties.
Finally, some plaintiffs move under 28 U.S.C. § 1447(c) for an
award of attorney's fees and costs.  The Court addresses each
case separately.


## II.   LEGAL STANDARD – REMOVAL

A defendant may generally remove a civil action filed in
state court if the federal court has original jurisdiction over
the action.  *See* 28 U.S.C. § 1441(a).  The removing party bears
the burden of showing that federal jurisdiction exists.  *See*
*Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).
In assessing whether removal was appropriate, the Court is guided
by the principle, grounded in notions of comity and the

2

recognition that federal courts are courts of limited
jurisdiction, that removal statutes should be strictly construed.
*See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d
720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 WL
419901, at *2 (E.D. La. 1995).  The Court must remand the case to
state court "[i]f at any time before final judgment it appears
that the district court lacks subject matter jurisdiction."  28
U.S.C. § 1447(c).

**B.    Applying Louisiana Law**

When jurisdiction is based on diversity, Louisiana law
applies to the substantive issues before the Court.  *Erie R.R.
Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In Louisiana, the
sources of law are legislation and custom.  *Shaw Constructors v.
ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004).
These authoritative or primary sources of law are to be
"contrasted with persuasive or secondary sources of law, such as
[Louisiana and other civil law] jurisprudence, doctrine,
conventional usages, and equity, that may guide the court in
reaching a decision in the absence of legislation and custom."
*Id.* (quoting La. Civ. Code art. 1).  In Louisiana, "courts must
begin every legal analysis by examining primary sources of law:
the State's Constitution, codes, and statutes."  *Id.* (quoting
*Prytania Park Hotel, Ltd. v. General Star Indem. Co.*, 179 F.3d

3

169, 174 (5th Cir. 1999)).  To make an 'Erie guess' on an issue
of Louisiana law, the Court must "employ the appropriate
Louisiana methodology" to decide the issue the way that it
believes the Supreme Court of Louisiana would decide it.  *Id.*
(quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d
192, 197 (5th Cir. 2003)).


## III. THE CASES

### A.   06-2570: Wood v. State Farm
###      06-2997: Hodges v. State Farm

Plaintiffs Jess and Margaret Wood and George and Tess Hodges
sued their insurer State Farm for damages they allegedly
sustained to their property during Hurricane Katrina.  The Woods
allege that they were tendered only $58,832.80 under their
policy's dwelling coverage when instead they were owed the full
value of their dwelling coverage, $99,200.  The Woods now seek
the remainder of their dwellings coverage, $40,387.20.  The
Hodges allege that they were tendered only $21,433.98 under
policy's dwelling coverage when instead they were owed the full
value of their dwelling coverage, $56,700.  The Hodges now seek
the remainder of their dwellings coverage, $35,265.02.  Both sets
of plaintiffs base their claims on Louisiana's Valued Policy Law,

La. Rev. Stat. § 22:695.[1]

Plaintiffs originally filed suit in state court.  State Farm removed these case to this Court, asserting that removal is proper under the Multiparty, Multiforum Trial and Jurisdiction Act of 2002 because there exists minimal diversity and because Hurricane Katrina constitutes an accident as contemplated by 28 U.S.C. § 1369(a), therefore conferring original subject matter jurisdiction over these actions.  Alternatively, State Farm contends that removal is proper under 28 U.S.C. § 1441(e)(1)(b) because State Farm is a party to several cases that were brought or could have been brought directly into federal court under § 1369(a).  As an initial matter, minimal diversity does exist in these cases for purposes of § 1369.  The plaintiffs are citizens of Louisiana and State Farm is a citizen of Illinois.  However,

---

[1] As an initial matter, the Hodges assert that State Farm's removal was procedurally defective because State Farm filed its notice of removal nearly six months after being served with process on plaintiffs' state court pleadings.  Under 28 U.S.C. § 1446(b), a notice of removal must be filed within 30 days of the defendant's receipt of a copy of the initial pleadings.  Here, State Farm was served with process on December 16, 2005, but did not file its notice of removal until June 9, 2006.  However, 28 U.S.C. § 1441(e)(1) permits removal at a later date with leave of the district court when the defendant is a party to an action under § 1369 in a federal district court that arises from the same accident as the action in state court.  Because State Farm asserts that it is party to an action under § 1369 in this district that arises from the same accident, the Court will grant leave to consider State Farm's notice of removal under the MMTJA.

5

because this Court finds that Hurricane Katrina is not an

"accident" as defined by the MMTJA, removal of these cases is not

proper under § 1369(a).

Section 1369(a) states:

> The district courts shall have original jurisdiction
> of any civil action involving minimal diversity
> between adverse parties that arises from a single
> accident, where at least 75 natural persons have died
> in the accident at a discrete location, if-
> (1) a defendant resides in a State and a substantial
> part of the accident took place in another State or
> other location, regardless of whether that defendant
> is also a resident of the State where a substantial
> part of the accident took place;
> (2) any two defendants reside in different States,
> regardless of whether such defendants are also
> residents of the same State or States; or
> (3) substantial parts of the accident took place in
> different States.

28 U.S.C. § 1369(a).  The MMTJA defines the term "accident" as "a

sudden accident, or a natural event culminating in an accident,

that results in death at a discrete location by at least 75

natural persons."  28 U.S.C. § 1369(c)(4).  Section 1441(e)(1)

permits a state court defendant to remove an action to federal

court if:

> (A) the action could have been brought in a United
> States district court under section 1369 of this
> title; or
> (B) the defendant is a party to an action which is or
> could have been brought, in whole or in part, under
> section 1369 in a United States district court and
> arises from the same accident as the action in State
> court, even if the action to be removed could not
> have been brought in a district court as an original

6

matter.

28 U.S.C. § 1441(e)(1)(A),(B).  Thus, § 1441(e)(1)(B) provides

for removal in situations in which original federal subject

matter jurisdiction does not exist.  *Wallace*, 444 F.3d at 702.

"When the requirements of § 1441(e)(1)(B) are met, defendants

need not establish the existence of independent subject matter

jurisdiction under any other provision, including under §

1369(a), because supplemental jurisdiction has been established."

*Id.*  Because the ultimate goal of the MMTJA was consolidation,

the MMTJA is designed to ameliorate the restrictions on the

exercise of federal jurisdiction that ultimately forced parties

in multiple suits arising from the same disaster to litigate in

several fora.  *Id.*

    Neither prong is satisfied here.  First, Hurricane Katrina

was not a "sudden accident" under the MMTJA.  "Accident" is

generally defined as "an unintended and unforeseen injurious

occurrence; something that does not occur in the usual course of

events or that could not be reasonably anticipated."  BLACK'S LAW

DICTIONARY 15 (8th ed. 2004).  As the plaintiffs point out, Katrina

formed on August 23, 2005 and did not dissipate until August 31,

2005.[2]  The multi-day development of the storm and ubiquitous

_____

    [2] *See 2005 Louisiana Hurricane Impact Atlas*, updated May
2006 by Joshua D. Kent, Data Manager, Louisiana Geographic

warnings of its approach in the days before its landfall contrast sharply with the types of mass accidents contemplated by Congress when it enacted the MMTJA, namely plane crashes, train wrecks, hotel fires, and environmental spills.  *See* 147 Cong. Rec. H893-01 (2001); 137 Cong. Rec. E1923-02 (1991).  The only reported case interpreting the MMTJA arose from a 2003 fire at a Rhode Island nightclub in which more than 100 patrons died, an incident that the district court, after an in-depth analysis of the MMTJA's legislative history, found qualified as a "sudden accident." *Passa v. Derderian*, 308 F.Supp.2d 43, 52-55 (D.R.I. 2004). Furthermore, a natural event cannot constitute a "sudden accident" because the MMTJA's definition goes on to define "accident" as also "a natural event culminating in an accident." 28 U.S.C. § 1369(c)(4).  Clearly a hurricane is a natural event.

Second, what damaged the plaintiffs' residences in these cases was not "a natural event culminating in an accident" under the MMTJA.  Although Katrina was certainly a natural event, it did not lead to any accident that caused the damage alleged by the plaintiffs here.  In their state court petitions, the plaintiffs specifically aver: "Plaintiffs' immovable property sustained loss or damage from hurricane-related *winds* which is a

---

Information Center, available at http://lagic.lsu.edu (last visited 10/4/06).

covered peril under the policy issued by Defendant." (No. 06-
2570, R. Doc. 1-2, p. 2; No. 06-2997, R. Doc. 1-2, p.2) (emphasis
added). Plaintiffs do not allege that any of their damages
resulted from flooding caused by breached levees, which State
Farm argues was the accident that arose from Hurricane Katrina
and damaged plaintiffs' residence. Although State Farm urges the
Court to take judicial notice of a website purportedly showing a
*Times-Picayune* article reflecting ZIP codes subject to flooding
from Hurricane Katrina, that material, even if subject to
judicial notice, does not establish that plaintiffs' property was
flooded at all, much less by water from breached levees. As
nothing in the record ties plaintiffs' claims to levee breaches,
whether those levee breaches were an "accident" as defined by the
MMTJA is beside the point. The only cause of damage plaintiffs
complain of is wind, which occurred as part of a natural event
that affected many locations across Louisiana and the entire Gulf
Coast.

Other courts in this district have unanimously rejected the
argument that Hurricane Katrina was an accident under the MMTJA.
*See, e.g., Berry v. Allstate Ins. Co.*, 2006 WL 2710588, *3 (E.D.
La. Sept. 19, 2006) (Zainey, J.) ("Because Hurricane Katrina was
not 'an accident' as that term is defined in the MMTJA, this
Court does not have original jurisdiction under that Act.");

damage as a result of Hurricane Katrina that rendered its

facility a total loss.  Plaintiff avers in its state court

petition that the majority of the damage was "flood damage."  (R.

Doc. 1-4, p. 2).  Before Katrina, plaintiff had procured a

commercial property insurance policy from Mt. Hawley Insurance

Company, a foreign insurer with neither citizenship nor a

principal place of business in Louisiana.  The policy provided

for structural coverage up to a maximum amount of $3,441,123.

(Id. at 3).  Plaintiff also purchased a flood insurance policy

through its broker, D.H. Reeves, a corporation with its domicile

and principal place of business in Louisiana.  That policy

provided up to $500,000 in coverage for flood damage.  (Id. at

2).  Plaintiff states that with only $500,000 in flood coverage,

it would be unable to recover for the remaining value of the

damage to its structure, which is almost $3,000,000.  Plaintiff

makes two separate claims in its state court petition.  First,

plaintiff asserts that D.H. Reeves had a duty to advise it of the

availability of excess flood insurance, and to recommend that it

insure the structure against flood damage up to its full

appraised value.  (Id.).  Second, plaintiff separately alleges

that it is owed the full value of its commercial property under

La. Rev. Stat. § 22:695 from Mt. Hawley.  Defendants removed this

action to this Court, asserting diversity jurisdiction under 28

U.S.C. § 1332 because D.H. Reeves was improperly joined or, in the alternative, jurisdiction under 28 U.S.C. § 1369, otherwise known as the MMTJA, discussed *supra*, which requires only minimal diversity.

The Court first examines whether jurisdiction is proper under § 1332.[3]  If so, it will be unnecessary to determine whether jurisdiction under the MMTJA exists.  Defendants assert that D.H. Reeves was improperly joined as a defendant.  When a nondiverse party is properly joined as a defendant, a defendant may not remove under section 1332.  However, a defendant may remove by showing that the nondiverse party was improperly joined.  *Smallwood v. Il. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003).  Because the doctrine is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one.  *Id.*  Improper joinder may be established by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant.[4]  *Ross v. Citifinancial, Inc.*,

---

[3] All parties agree that the amount in controversy is greater than $75,000.  Thus, if complete diversity exists, this Court would have jurisdiction over the action under § 1332.

[4] The Fifth Circuit now officially refers to "fraudulent joinder" as "improper joinder."  *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005).  However, the term "fraudulent joinder" is still used in many Fifth Circuit cases, causing no shortage of confusion.

344 F.3d 458, 461 (5th Cir. 2003).  In *Ross*, the Fifth Circuit clarified the standard for finding improper joinder when a defendant alleges that plaintiff is unable to state a claim against the nondiverse defendant.  *Id.* at 462-63.

The Court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability on the nondiverse defendant.  *Id. (citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).  This means that there must be a reasonable possibility of recovery, not merely a theoretical one.  *Id.*  The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Id.*  The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6), because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for his or her claim.  *Id. (citing Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003); *see also Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004).  In conducting this inquiry, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff."  *Travis*, 326 F.3d at 649.  In addition, the Court

14

344 F.3d 458, 461 (5th Cir. 2003).   In *Ross*, the Fifth Circuit
clarified the standard for finding improper joinder when a
defendant alleges that plaintiff is unable to state a claim
against the nondiverse defendant.   *Id.* at 462-63.

The Court must determine whether there is arguably a
reasonable basis for predicting that state law might impose
liability on the nondiverse defendant.   *Id. (citing Great Plains
Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312
(5th Cir. 2002)).   This means that there must be a reasonable
possibility of recovery, not merely a theoretical one.   *Id.*   The
standard for evaluating a claim of improper joinder is similar to
that used in evaluating a motion to dismiss under Federal Rule of
Civil Procedure 12(b)(6).   *Id.*   The scope of the inquiry for
improper joinder, however, is broader than that for Rule
12(b)(6), because the Court may "pierce the pleadings" and
consider summary judgment-type evidence to determine whether the
plaintiff has a basis in fact for his or her claim.   *Id.* (*citing
Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003); *see also
Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir.
2004).   In conducting this inquiry, the Court "must also take
into account all unchallenged factual allegations, including
those alleged in the complaint, in the light most favorable to
the plaintiff."   *Travis*, 326 F.3d at 649.   In addition, the Court

14

must resolve all ambiguities of state law in favor of the nonremoving party. *Id.*

Defendants assert that D.H. Reeves was improperly joined as a defendant in this lawsuit for two reasons: (1) St. Ann's claims against D.H. Reeves are perempted under La. Rev. Stat. § 9:5606 and (2) those claims are completely unrelated to the claims against Mt. Hawley.  Joinder of D.H. Reeves was improper if the Court finds in the defendants' favor on either of these grounds. The Court now addresses each of the defendants' arguments in turn.

Defendants contend that any claim against D.H. Reeves is perempted under La. Rev. Stat. § 9:5606, which states in part:

> No action for damages action any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.[5]

---

[5] Under Louisiana law, "Peremption is a period of time fixed by law for the existence of a right.  Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."  La. Civ. Code art. 3458.

15

La. Rev. Stat. § 9:5606(A). Defendants allege that any relevant acts in this case took place no later than July 2002, when D.H. Reeves became St. Ann's agent of record on the flood policy. (R. Doc. 1-4, at 7). They assert that any actions thereafter were merely renewals of the policy without significant changes or substantive communications between D.H. Reeves and St. Ann's. (Id.). They therefore contend that this case is governed by the principle that subsequent renewals of insurance policies do not restart the peremptive period for acts or omissions committed at the time of initial purchase. *See Biggers v. Allstate Ins. Co.*, 886 So.2d 1179, 1182-83 (La. Ct. App. 2004); *Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So.2d 377, 382-83 (La. Ct. App. 2003; *see also Bordelon v. The Indep. Order of Foresters*, 2005 WL 3543815, at *3 (E.D. La. Oct. 4, 2005). As St. Ann's did not commence this action in state court until April 27, 2006, defendants assert that the three-year limitation bars plaintiff's claims against D.H. Reeves.

As discussed above, this Court must determine "whether there is arguably a reasonable basis for predicting that state law might impose liability." *Ross*, 344 F.3d at 462. The Court begins with a Rule 12(b)(6) type-analysis, "looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state

defendant." *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). St. Ann's alleges in its complaint that D.H. Reeves failed to recommend excess flood insurance to cover the full appraised value of its structure even though such insurance was available in the marketplace. (R. Doc. 1-4, at 2). However, St. Ann's does not identify the precise dates on which this alleged conduct took place. The Court therefore cannot determine from the face of the pleadings that peremption forecloses plaintiff from having an arguably reasonable basis for recovery. In this event, the Court may "pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573.

The parties submit conflicting affidavits on the issue of the nature of the dealings between them at the relevant times. Anthony Mendoza, president of St. Ann's, states in his affidavit that St. Ann's purchased a new flood insurance policy from D.H. Reeves in July 2003, and renewed that policy in July of 2004 and 2005. (R. Doc. 7-3, at 2). He alleges that at the purchase and at each renewal he received advice on coverage from Reeves that was the basis for his decision to agree to only $500,000 in coverage under the NFIP program. He avers: "On each occasion I as Huntington's President selected and agreed to the maximum $500,000 in commercial structure coverage under the National Flood Insurance Program on [defendants'] advice." (Id.).

17

Mendoza alleges that Reeves represented to him that $500,000 NFIP coverage was the maximum available, which was not true in light of the availability of excess flood insurance coverage.  Mendoza asserts that had he known or been advised that excess flood insurance coverage was available on any occasion, St. Ann's would have purchased such insurance to cover the full $3,441,123 value of its structure.  On the plaintiff's allegations then, this is not a situation in which the policy was simply renewed without any substantive undertaking and communications between the parties.  Defendants, on the other hand, contend that agent Deborah Dilliard first procured $500,000 in commercial structure coverage under the National Flood Insurance Program for St. Ann's in 1999, when she worked for another broker.  In her affidavit, Dilliard avers, "Each year thereafter, including July 2002 when Reeves became agent of record, the flood policy was renewed with the same limits, without discussion of the structural limit amount."  (R. Doc. 1-4, at 7).  She further states that "since setting the $500,000 structural limit on the flood policy, no representative of Reeves has discussed the amount of the structural limit with any representative of plaintiff."  (Id.).

The purpose of the Court's summary inquiry, in which it pierces the pleadings, is "only to identify the presence of discrete and undisputed facts that would preclude [plaintiffs']

recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74.  As the Fifth Circuit re-emphasized in *Burden*, on motions such as this one, the Court must resolve all disputed questions of fact in the plaintiffs' favor:

> Lest there remain even a shadow of a doubt as to this circuit's position, we reiterate – in hopes that further pronouncement will not be necessary – that in testing for fraudulent joinder the district court in its discretion may 'pierce the pleadings,' albeit in so doing the court should not conduct an evidentiary hearing but, based on appropriate documentation in addition to the pleadings, *should instead resolve all disputed questions of fact in favor of the plaintiff.*

60 F.3d at 217 (emphasis added). As the competing affidavits show the existence of a factual dispute regarding whether D.H. Reeves' act, omission, or neglect took place within the one-year/three-year peremptive period, the Court must resolve the issue in plaintiff's favor.  The Court thus concludes that there is an arguably reasonable basis to find that state law might hold that plaintiff's claims are not perempted.  Joinder of D.H. Reeves was not improper on this ground.

In the alternative, defendants assert that D.H. Reeves is improperly joined because St. Ann's claims against D.H. Reeves are unrelated to their claims against Mt. Hawley.  Defendants rely on the Eleventh Circuit's decision in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), which found that when a diverse defendant is joined with a nondiverse

19

defendant as to whom there is no joint, several or alternative liability and when the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant, this can serve as a third situation of fraudulent joinder in addition to the two identified in *Smallwood*.  *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (summarizing the holding in *Tapscott*).  The Fifth Circuit appears to have adopted *Tapscott*'s fraudulent joinder principle in *In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002).  Even so, the plaintiff's claims against its insurance provider and agent are not improperly joined.  St. Ann's claims each arise from what it alleges was a lack of coverage for the damages its structure sustained in the aftermath of Katrina, satisfying the requirement for joinder under Fed. R. Civ. P. 20.  (Rule 20(a) states in pertinent part: "All persons . . . may be joined in one action as defendants if there is asserted against jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.")  In similar factual contexts, courts in this district have found a "palpable connection" between claims against an insurance company and an insurance agent, such that the claims were not fraudulently

joined.  *See Radlauer v. Great N. Ins. Co.*, No. 06-1737, 2006 WL
1560791, at \*5-6 (E.D. La. May 16, 2006) (Zainey, J.); *see also
Richmond v. Chubb Group of Ins. Cos.*, No. 06-3973, 2006 WL
2710566, at \*6 (E.D. La. Sept. 20, 2006) (Africk, J.); *Schwartz
v. Chubb & Sons, Inc.*, No. 05-6885, 2006 WL 980673, at \*5 (E.D.
La. Apr. 11, 2006) (Fitzwater, J.[6]).  The Court thus concludes
that there is no improper joinder on this ground.  Complete
diversity is therefore lacking.

However, defendants' removal still may be proper under the
MMTJA, which requires only the presence of minimal diversity to
confer federal jurisdiction over applicable claims.  Minimal
diversity is satisfied here under § 1369(a) because Mt. Hawley is
a resident of Illinois and plaintiff is a resident of Louisiana.
Defendants assert that this action arises from Hurricane Katrina,
which constitutes an "accident" under § 1369.  As discussed
earlier, courts in this district, including now this one, have
consistently held that Hurricane Katrina is not an "accident" as
that term is defined by the MMTJA.  *See, e.g., Berry v. Allstate
Ins. Co.*, 2006 WL 2710588, \*3 (E.D. La. Sept. 19, 2006) (Zainey,
J.) ("Because Hurricane Katrina was not 'an accident' as that
term is defined in the MMTJA, this Court does not have original

---

[6] Judge Fitzwater sat by designation due to the recusal of
Judge Schwartz's colleagues in the Eastern District.  2006 WL
980673, at \*1.

jurisdiction under that Act."); *Southall v. St. Paul Travelers Ins.* Co., 2006 WL 2385365, *5 (E.D. La. Aug. 16, 2006) (Barbier, J.) ("Contrary to Defendant's assertion, this Court determines that it is anything but *clear* that Hurricane Katrina was an 'accident' within the meaning of the statute. If anything, it is more *clear* that it was *not* an accident within the meaning of the statute.") (emphasis in original); *Flint v. Louisiana Farm Bureau Mut. Ins. Co.*, 2006 WL 2375593, *3 (E.D. La. Aug. 15, 2006) (Duval, J.) ("This Court has determined that Hurricane Katrina has not been classified as a § 1369 'accident' by any court and therefore, this Court declines to interpret the statutory definition of 'accident' so broadly."). The facts in this case provide no reason to stray from this district's reasoned analysis. St. Ann's is located in St. Bernard Parish. Defendants have offered no evidence that any single accident in that parish resulted in the death of at least 75 persons in a discrete location. Absent such an occurrence, the Court does not find that the wind and flood damage incurred by St. Ann's as a result of Katrina was caused by the type of accident contemplated by the MMTJA. Thus, this Court does not have subject matter jurisdiction over this case under § 1369.

Finally, St. Ann's also moves under 28 U.S.C. § 1447(c) for an award of attorney's fees and costs for defendants' improper

removal. The decision whether to award attorney's fees and/or costs is discretionary. *See Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, --- U.S. ----, 126 S.Ct. 704, 711, 163 L.Ed.2d 547 (2005) (citing *Hornbuckle*, 385 F.3d at 541; *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)). Because the Court does not find the removal in this case objectively unreasonable, the Court exercises its discretion not to grant plaintiff's request for attorney's fees and costs.


**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiffs' motions to remand in the above-listed cases.


New Orleans, Louisiana, this **24th** day of October, 2006.


_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT COURT

23

*Ex.* "C"

ZAINEY, J.
MARCH 8, 2006

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

CHARLES DUPREE                                  CIVIL ACTION

VERSUS                                          NO. 06-42

LAFAYETTE INSURANCE COMPANY                     SECTION "A"(1)

### ORDER AND REASONS

Before the Court is a **Motion to Remand and for Costs, Expenses and Attorney's Fees (Rec. Doc. 7)** filed by plaintiff Charles Dupree.  Defendant, Lafayette Insurance Co., opposes the motion.  The motion, set for hearing on February 22, 2006, is before the Court on the briefs without oral argument.  For the reasons that follow, the motion is GRANTED in its entirety.

I.    **BACKGROUND**

Plaintiff, Charles Dupree ("Plaintiff"), filed this suit in St. Bernard Parish where he resides.  Plaintiff seeks to represent a class defined as:

> All persons whose property, located in Louisiana and covered by an insurance policy issued by defendant, sustained wind damage in connection with Hurricane Katrina on or about 29 August 2005 and whose claim for

wind damage to their property has been denied, *in toto* or partially, or misadjusted by Lafayette Insurance Co. and/or its adjusters and/or other representatives.

(Class Action Petition, ¶ 1).  Plaintiff alleges that homes in the area sustained substantial wind damage due to Katrina and that the property policies issued by defendant Lafayette Insurance Co. ("Defendant") provide coverage for "wind damage." (Id. ¶¶ IV - VI).  Plaintiff claims that Defendant has denied coverage for the wind damage by contending that the property damage was flood-related.  (Id. at VII).  Defendant removed the suit to this Court and Plaintiff moves to remand with an award of fees and expenses.

## II.  **DISCUSSION**

Plaintiff argues that the case was improperly removed because this Court lacks subject matter jurisdiction over the case.  Plaintiff argues that his claims for damages arise under his homeowner's policy and are therefore based on state law. Accordingly, because Plaintiff and Defendant are both citizens of Louisiana there is no diversity jurisdiction.[1]

In opposition, Defendant points out that St. Bernard parish was inundated with flood water which makes it patently obvious that the home of every member of the plaintiff class sustained at

---

[1] Because all parties are Louisiana citizens the Class Action Fairness Act, which amended 28 U.S.C. § 1332 to allow removal with minimal diversity, does not apply.

least some flood-related damage.  Defendant argues that
Plaintiff's petition raises the issue of whether his property
damage was covered under his homeowner's policy or flood policy.
Defendant points out that its policy contains a flood exclusion
which results in its policy being intertwined with the Standard
Flood Insurance Policy (SFIP) underwritten by the federal
government.  Defendant contends that the issue of whether
Plaintiff's damages are covered by his homeowner's policy or his
flood policy appears on the face of Plaintiff's well-pleaded
complaint.  According to Defendant, Plaintiff's claim will
require interpretation of the SFIP and therefore federal question
jurisdiction exists.

In reply, Plaintiff contends that Defendant is attempting to
concoct a non-existent flood claim and to interject the SFIP into
this dispute solely as a means to create federal jurisdiction.
Plaintiff contends that the face of the petition references only
wind damage which implicates only Defendant's policy to the
exclusion of any national flood policy.

In PCI Transportation, Inc. v. Fort Worth & Western Railroad
Co., the Fifth Circuit recently reiterated the well-settled law
regarding removals and the well-pleaded complaint rule.  418 F.3d
535 (5th Cir. 2005).  For the district court to have removal
jurisdiction, 28 U.S.C. § 1441 requires that "the case be one
over 'which the district courts of the United States have

3

original jurisdiction.'" <u>Id.</u> at 543 (quoting <u>Johnson v. Baylor
Univ.</u>, 214 F.3d 630, 632 (5th Cir. 2000)).  Whether a claim
arises under federal law is a question determined by reference to
the plaintiff's "well-pleaded complaint."  <u>Id.</u> (quoting <u>Hoskins
v. Bekins Van Lines</u>, 343 F.3d 769, 772 (5th Cir. 2003)).  As a
defendant may remove a case only if the claims could have been
brought in federal court, "the question for removal jurisdiction
must also be determined by reference to the 'well-pleaded
complaint.'"  <u>Id.</u> (quoting <u>Merrell Dow Pharm., Inc. v. Thompson</u>,
478 U.S. 804, 808 (1986)).  "Under the well-pleaded complaint
rule, 'federal jurisdiction exists only when a federal question
is presented on the face of plaintiff's properly pleaded
complaint.' " <u>Id.</u> (quoting <u>Hoskins</u>, 343 F.3d at 772).  "As a
general rule , absent diversity jurisdiction, a case will not be
removable if the complaint does not affirmatively allege a
federal claim."  <u>Id.</u> (quoting <u>Beneficial Nat'l Bank v. Anderson</u>,
539 U.S. 1, 6 (2003)).  Potential defenses, including a federal
statute's preemptive effect, do not provide a basis for removal.
<u>Id.</u>

     Considering the allegations of Plaintiff's well-pleaded
complaint in light of the foregoing principles of law, it is
patently obvious that Plaintiff's complaint does not implicate
federal law in any way.  Plaintiff's seeks recovery solely under

his homeowner's policy.  An insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties.  Pareti v. Sentry Indem. Co., 536 So. 2d 417, 420 (La. 1988) (citing Carney v. Am. Fire & Indem. Co., 371 So. 2d 815 (La. 1979)).  Plaintiff's recovery under his policy will be based on his contract with Defendant and a determination as to whether his claims fall within the coverage of that contract will not require reference to the SFIP.  Any contention to the contrary is utterly unconvincing.

Furthermore, Defendant's contentions regarding the SFIP are without merit to such an extent that the Court agrees with Plaintiff's contention that Defendant is attempting to interject the SFIP into this dispute solely as a means to create federal jurisdiction.  28 U.S.C. § 1447(c) provides that an order remanding a case may require payment of just costs and any actual expenses, included attorney's fees, incurred as a result of the removal.  28 U.S.C. § 1447(c).  The decision to award attorney's fees and expenses lies within the discretion of the district court.  Valdes v. Wal-mart Stores, Inc., 199 F.3d 290, 292 (5th Cir. 2000) (citing Avitts v. Amoco Prod. Co., 111 F.3d 30, 32 (5th Cir. 1997)).  The question the Court considers in applying § 1447(c) is whether the defendant had objectively reasonable grounds to believe the removal was legally proper.  Id. at 293.  An award of fees and expenses does not require a finding of bad

5

faith and the Court does not consider the motive for removing. Id. at 292.

Based on the allegations of Plaintiff's complaint Defendant had no objectively reasonable ground to remove the case to federal court.  As such Plaintiff should not have to bear the expenses associated with having this case remanded back to state court.  Consequently, the Court grants Plaintiff's request for a reasonable award of attorney's fees, costs, and expenses incurred in conjunction with filing this motion.

Accordingly;

IT IS ORDERED that the **Motion to Remand and for Costs, Expense and Attorney's Fees (Rec. Doc. 7)** filed by plaintiff Charles Dupree should be and is hereby **GRANTED**.  This matter is **REMANDED** to the 34th JDC, Parish of St. Bernard pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction;

IT IS **FURTHER ORDERED** that Plaintiff shall make demand upon Defendant for a reasonable payment of attorney's fees, costs, and expenses incurred in conjunction with the remand within **seven (7) days** from entry of this Order.  If Court intervention becomes necessary, a motion seeking payment in accordance with this Order shall be filed no later than **fifteen (15) days** from entry of this Order.

\* \* \* \* \* \* \* \*

6