1653-62432-WMH/cam

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2006 OCT -6 PM 3: 03
LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RENE S. BOWERS, SR.** | * | |
| | * | **CIVIL ACTION NO. 06-4777** |
| | * | |
| **VERSUS** | * | |
| | * | **SECTION J** |
| | * | |
| **STATE FARM FIRE AND** | * | |
| **CASUALTY COMPANY** | * | **MAGISTRATE DIV. 3** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* .\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN OPPOSITION TO MOTION TO REMAND

MAY IT PLEASE THE COURT:

### I.

On July 19, 2006, Plaintiff filed a Petition for breach of contract and damages in the 25th Judicial District Court for the Parish of Plaquemines. Service was accomplished on Defendant, State Farm Fire and Casualty Company (State Farm) on July 26, 2006. On August 25, 2006, Defendant timely removed the matter to this Honorable Court on grounds of diversity of citizenship with an amount in controversy in excess of $75,000.00 (28 U.S.C. §§1331 and 1332) and, original jurisdiction pursuant to 28 U.S.C. §§1339 (a), and 1441 (a)(1)(b).



1

1653-62432-WMH/cam

On or about September 25, 2006, Plaintiffs moved to have the suit remanded to state court.

## II.

## DIVERSITY JURISDICTION AND JURISDICTIONAL AMOUNT

Diversity is not contested. Plaintiff is a citizen of the state of Louisiana. State Farm is incorporated in the state of Illinois with is principal place of business in Bloomington, Illinois. Thus, the Court need only determine whether or not the amount in controversy exceeds $75,000.00, exclusive of interest and costs. In making that determination, the federal courts consider the claims made in the state court Petition as they existed at the time of removal. *Manguno v. Prudential Property & Cas. Ins. Co.*, 276 F.3d 720 (5th Cir. 2002). In that regard, Plaintiffs' Petition contains the following relevant allegations:

"2,

At all times pertinent hereto, including but not limited to August 29, 2005, petitioner had in full force and effect a homeowner's policy of insurance issued by State Farm covering petitioner's property located at 32451 Highway 11, Empire, Plaquemines Parish, Louisiana 70050 (hereafter "Petitioner's home"), and providing the following coverages and limits:

| | | |
|---|---|---|
| A. Dwelling | $59,100.00 |
| B. Dwelling Extension | 5,910.00 |
| C. Personal Property | 32,505.00 |
| D. Loss of Use | Actual Loss Sustained |

(hereafter "Valuation") and with a deductible of $2,500.00 for "Other Losses" and $2,955.00 for "Hurricane," which policy is identified as State Farm Fire and Casualty Company Policy Number 18-68-0792-1 (hereafter "Homeowner's Policy"). The Homeowner's Policy also provides additional coverage for debris

1653-62432-WMH/cam

removal up to $500.00, and for loss of trees, shrubs, plants up to five (5%) percent of the amount for shown for Coverage A – Dwelling in the Homeowner's Policy.

6.

Petitioner's property, including Petitioner's Home, carport/garage, and personal property (hereafter "petitioner's property") were **completely destroyed** by Hurricane Katrina, and the adverse weather conditions caused by Hurricane Katrina ("Property Loss").

7.

The Homeowner's Policy provides coverage to petitioner for the Property Loss.

8.

Petitioner made a claim on the Homeowner's Policy with State Farm in September, 2005, for the total loss of petitioner's property (hereafter "Claim").

10.

Despite the Claim having been filed in September, 2005, State Farm **has failed to make any payment whatsoever** to petitioner for the Claim.

11.

State Farm's failure to pay or make written offer to settle the Claim within thirty (30) days of receipt of proof of loss was arbitrary, capricious, and without probable cause, in violation of Louisiana Revised Statute 22:658, and renders State Farm liable to petitioner for penalties in the amount of 25% of the difference between the amount paid or tendered, if any, and the amount found to be due from Defendant to petitioner.

12.

State Farm failed to adjust the Claim fairly and promptly and/or to pay or settle the Claim, and thereby breached its duty of good faith and fair dealing in violation of Louisiana Revised Statute 22:1220, rendering State Farm liable to

1653-62432-WMH/cam

petitioner for penalties in an amount not to exceed two times petitioner's damages of $5,000.00, whichever is greater.

13.

State Farm placed the Valuation on petitioner's property for purposes of the Homeowner's Policy and used such Valuation for determining the premium under the Homeowner's Policy, and the Homeowner's Policy did not set forth a different method of computation of loss, and therefore, **State Farm is liable to petitioner for the total loss of petitioner's property for the amount of the Valuation, without deduction or offset, under Louisiana Revised Statute 22:695.**

15.

Petitioner affirmatively renounces and waives petitioner's right to recover any damages, including statutory penalties and attorney's fees, but exclusive of judicial interest and costs, in these proceedings in excess of $75,000.00.

**WHEREFORE,** petitioner prays that after all due proceedings are had, there be Judgment rendered herein in favor of plaintiff, Rene S. Bowers, Sr., and against the defendant, State Farm Fire and Casualty Company, **for all amounts due plaintiff under the Homeowner's Policy, plus damages, statutory penalties, judicial interest, attorney's fees, and all costs of these proceedings, and for all legal and equitable relief.**" (emphasis supplied).

Plaintiff argues that the language in Paragraph 15 of this Petition constitutes a binding stipulation, limiting his client's recovery to an amount less than $75,000.00. Defendant, however, suggests that that language, is at best, ambiguous, if not conflicting, when read in context with the remainder of this Petition. For example, Paragraph 2, correctly sets forth the coverages and limits of the policy of Homeowner's Insurance issued by State Farm to Mr. Bowers and Paragraph 10 indicates that State Farm made no payment, whatsoever to Mr. Bowers for his claim, and in Paragraphs 11 and 12, that State Farm's failure to pay triggered the

1653-62432-WMH/cam

provisions of La. R.S. 22:658 and 22:1220.  To that point, the amount in controversy is a

minimum of $97,515.00, **exclusive** of any possible award of penalties and attorneys' fees.[1]

While Paragraph 15 of the Petition is suggestive of language that has been deemed

acceptable by some courts for purposes of renunciation and waiver[2] the prayer contradicts any

such intention asking for "all amounts due under the homeowner's policy, plus damages,

statutory penalties, judicial interest, attorneys' fees...".  As correctly articulated by counsel for

Plaintiff, the *Engstrom* court granted remand because the Petition contained paragraph whereby

each Plaintiff **"affirmatively and knowingly waive[d]** entitlement to any damages ...."  No

such language is found in this Petition, and the Petition was not accompanied by an Affidavit or

other documents signed by Mr. Bowers to that effect.  At best, the Petition is ambiguous.

Generally, a Defendant may remove a civil action filed in a state court if a federal court

would have had original jurisdiction (*See* 28 U.S.C. §1441(a)).  The removing party bears the

burden of establishing that federal jurisdiction exists at the time of the removal.  The *Aguilar v.

Boeing Co.,* 47 F.3d 1404, 1408 (5th Cir. 1995); *Manguno v. Prudential Property & Casualty Ins.

Co.,* 276 F.3d (5th Cir. 2002); *Allen v. R&H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir. 1995).

In making the determination, the federal courts consider the claims in the state court Petition as

they existed at the time of removal. *Marcel v. Pool Co.,* 5  F.3d 81, 85 (5th Cir. 1993); *Calvallini*

---

[1] The total of the limits of the policy as set forth by Plaintiff in Paragraph 2 of the Petition.
[2] *Engstrom v. L-3 Communication Government Services, Inc.,* No. 04-2971, 2004 W.L. 2984329 (Ed.La. 2004).

1653-62432-WMH/cam

*v. State Farm Mutual Auto Ins. Co.,* 44 F.3d 256, 264 (5th Cir. 1995); *Allen,* 63 F.3d at 136,

*Manguno,* 276 F3d at 723.

Louisiana law prohibits a Plaintiff from pleading a specific amount of money damages.

(La. CCP Art. 893(a)).  Where, as here, the Petition does not include a specific monetary

demand, the Fifth Circuit provides that the removing party must prove by a preponderance of the

evidence that the amount in controversy exceeds $75,000.00.  *Manguno,* 276 F.3d at 723,

*Aguilar,* 47 F.3d 1404, 1409, 1412.

In *Grant v. Chevron Phillips Chemical Co.,* 1309 F.3d 864 (5th Cir. 2002), the Court

stated:

> "Louisiana prohibits a Plaintiff from alleging or demanding a specific
> dollar amount of damages, limiting the prayer for relief such damages *as are
> reasonable in the premises.*"  To accommodate the situation when the Removal is
> sought from a Louisiana Court and subject matter jurisdiction is grounded in
> diversity of citizenship, we have modified the usual rule for determining whether
> the amount in controversy is present.  In such Louisiana situations, we permit the
> parties seeking to maintain federal jurisdiction to establish by a preponderance of
> the evidence that the amount in controversy exceeds Seventy Five Thousand
> Dollars. (citations omitted).  When *the case is one that has been removed* from
> State  Court, such party may satisfy this burden in either one of two ways: (1) by
> demonstrating that it is "facially apparent" from the Petition that the claim
> exceeds $75,000.00 or (2) by setting forth the facts in controversy – preferably in
> the Removal Petition, but sometimes by affidavit – that support a finding of the
> requisite amount." Id., at 868.

State Farm submits that it is inarguably "facially apparent" from the Petition that the

claim exceeds $75,000.00".  The "stipulation" in Paragraph 15 of the Petition *is legally deficient*

and does not even meet the requisites set forth in *Engstrom, supra.*  Mr. Bowers failed to execute

an acceptable document demonstrating that he was aware of, or was knowledgeable of the fact,

1653~62432-WMH/cam

or effect of the stipulation.  In Louisiana, Plaintiffs are not limited to recovery of the damages requested in their pleadings.  Consequently, because there is no such statutory limitation, a Plaintiff must affirmatively renounce **the right to accept a judgment in excess of $75,000.00** for his pre-removal state court pleadings or stipulations to bind him.  (La. CCPR Art. 862; *Crosby v. Lessen Canyon Nursery, Inc.*, 2003 W.L. 22533617 *3, Ed. La. 2003).  If a Defendant meets its burden of showing the requisite amount in controversy, a Plaintiff can defeat removal **only by establishing with legal certainty** that the claims are for less than $75,000.00.  *Aguilar,* 47 F.3d at 1411-1412:  *"[L]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, St. Paul makes later filing irrelevant."*  47 F.3d at 1412 (quoting In Re: *Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992).  "The general principal is that Plaintiffs will have to show that they are irrevocably bound by their state court pleadings in these situations".  Id. at 1412, N. 10.  "Thus, in the typical diversity case, the Plaintiff remains the master of his complaint."  *Allen v. R&H Oil & Gas Co.*, 63 F.2d at 1335.

Given the consistently repetitive allegations in Plaintiff's Petition that his house was totally destroyed, that State Farm refused any payment whatsoever, notwithstanding applicable policy limits exceeding $97,500.00, the prayer in his Petition which directly conflicts with the "waiver" language in Paragraph 15, and a lack of any personal affirmation by Mr. Bowers that the "waiver" was voluntary and knowledgeable, Defendant submits that the amount in controversy easily exceeds the sum of $75,000.00.  Moreover, Plaintiff's allegations of

1653-62432-WMH/cam

entitlement to penalties and attorneys' fees consequent to State Farm's arbitrary and capricious denial of their claims are also to be considered by the Court when assessing the amount in controversy. (See e.g. *Poynot v. Hicks,* 2002 W.L. 31040174 *3 Ed. La. 2002). In this instance, if awarded, penalties of 25% under 22:658, alone could increase the amount to be awarded to $121,894.00.

### III.

### ALTERNATIVELY, THE COURT HAS JURISDICTION UNDER THE PROVISIONS OF THE MULTIPARTY, MULTIFORUM TRIAL JURISDICTION ACT

The MMTJA confers this Court with jurisdiction over this case in two different ways. First, the Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1369, therefore, *removal was proper under both 28 U.S.C. §§ 1441(a) and 1441(e)(1)(A).* Second, even if Section 1369 did not apply to this action, removal would *still be proper under 28 U.S.C. §* 1441(e)(1)(B) because State Farm is also a party to other actions which have been or could have been brought under Section 1369.

### A.    This Court Has Original Jurisdiction Under 28 U.S.C. § 1369

Title 28, United States Code, Section 1441(e)(1)(A) specifically provides that a defendant *may remove a civil action brought in state court* "if ... the action could have been brought in a United States district court under section 1369 of this title ...." Section 1369 provides, *in* pertinent part, as follows:

**Multiparty, multiforum jurisdiction**

1653-62432-WMH/cam

(a) In general.--The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a *single accident, where at least 75 natural persons have died in the* accident at a discrete location, if--

> (1) a defendant resides in a State and a substantial part of the accident took place in another State or other location, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;

> (2) any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or

> (3) substantial parts of the accident took place in different States.

28 U.S.C. § 1369(a). Thus, original federal jurisdiction will lie over an action if each of the following requirements is satisfied:

(1)     there is minimal diversity;

(2)     one of the jurisdictional requirements set out in Section 1369(a)(1)-(3) is met;

(3)     the action arises from a single "accident," as defined in Section 1369(c)(4);

(4)     at least 75 persons died as a result of the "accident"; and

1653-62432-WMH/cam

(5)     those deaths occurred at a "discrete location."[3]

Minimal diversity exists in this case because Plaintiffs are citizens of Louisiana and State Farm is a citizen of Illinois.  *See* 28 U.S.C. § 1369(c)(1) ("minimal diversity exists between adverse parties if *any* party is a citizen of a state and *any* adverse party is a citizen of another State") (emphasis added).  Additionally, it is beyond dispute that, of the three jurisdictional requirements, at least Section 1369(a)(2) applies to this case since State Farm is a resident of Illinois and Malone is a resident of Louisiana.[4]  Accordingly, *the first two elements of Section 1369 jurisdiction are undisputedly satisfied.*

### 1.     This Action Arises From an "Accident" As Defined By 28 U.S.C. § 1369(c)(4)

The MMTJA defines "accident" as either (1) "a sudden accident" or (2) "a natural event culminating in an accident."  28 U.S.C. § 1369(c)(4).  Initially, it should be noted that in defining the statutory term "accident," Section 1369(c)(4) uses the term "accident" within the body of the definition.  To avoid circularity, it must be assumed that Congress intended for the term "accident" as used within the definition to have the ordinary meaning of that term which, when combined with the other parts of the definition, provides a definition of the statutory term "accident" for purpose of the MMTJA.  "Accident" is generally defined as "an unintended or unforeseen injurious occurrence; something that does not occur in the usual course of events or

---

[3] In addition, Section 1369(b) imposes a mandatory abstention requirement, which is discussed in detail *infra* at Section II.B.

[4] As stated, State Farm contends that Sections 1369(a)(1) and (3) are also satisfied in this case.  *Since both provisions employ the term "accident," whether or not those provisions apply will depend upon how the Court*

1653-62432-WMH/cam

that could not be reasonably anticipated." Black's Law Dictionary 15 (7th ed. 1999). When the statutory definition is so construed, it is clear that Plaintiffs' lawsuit arises from an "accident" as that term is statutorily defined in at least two different ways.

First, Hurricane Katrina was a statutory "accident" under the second prong of the statutory definition (*i.e.*, "a natural event culminating in an accident"). There can be no dispute that Hurricane Katrina was a "natural event." Neither can there be any dispute that Hurricane Katrina culminated in an untold number of smaller "accidents" within the ordinary meaning of that word (*i.e.*, unintended or unforeseen injurious occurrence) across Louisiana and Mississippi, including the damage to Plaintiffs' residence, flooding throughout St. Bernard's Parish, and the failure of the New Orleans flood control system.

Additionally, the first prong of Section 1369(c)(4)'s definition of the statutory term "accident" (*i.e.*, a "sudden accident") provides a second way to find that this lawsuit arises out of an accident within the meaning of the MMTJA. Under the ordinary meaning of the term "accident" discussed above (*i.e.*, "an unintended or unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated"), there can be little question about the fact that a hurricane qualifies as an "accident." While the meteorological events that gave rise to Hurricane Katrina may have developed over a brief period

---

defines that term. As detailed in the remainder of this brief, "accident" is defined by the plain and unambiguous terms of the statute. However, Section 1369(a)(2) would apply irrespective of how "accident" is defined.

1653-62432-WMH/cam

of time, there is no doubt that Katrina struck suddenly or that its physical impact upon the Gulf Coast was sudden.

Accordingly, the MMTJA provides a specific definition for the term "accident" as used within 28 U.S.C. §§ 1369 and 1441(e). To the extent Plaintiffs suggest that because hurricanes are considered "Acts of God" they are not accidents, an argument that hurricanes are not accidents is potentially self-defeating since the terms of the insurance policy upon which Plaintiffs base this action specifically provide coverage only for "accidental direct physical loss."[5] (See Exhibit A, Homeowner's Insurance Policy, Exemplar, p. 7). Moreover, whether hurricanes are "accidents" as a matter of "blackletter law" is beside the point since Congress has provided a specific definition of the term "accident" for purposes of the MMTJA. Pursuant to the definition of "accident" in Section 1369(c)(4), the jurisdictional provisions of the MMTJA are implicated where an action arises either from (1) a sudden unintended or unforeseen injurious occurrence or (2) a natural event culminating in an unintended or unforeseen injurious

---

[5] Plaintiffs' notion that natural disasters and accidents are mutually exclusive events is also simply wrong as case law from a number of states expressly recognizes that natural disasters are merely one type of "accident." See Allen v. Simon, 888 So.2d 1140, 1143-44 (La. Ct. App. 2004) ("An Act of God is an unusual, extraordinary, sudden, and unexpected manifestation of the forces of nature which man cannot resist. The fact that no human agency can resist an Act of God renders misfortune occasioned solely thereby a loss by inevitable accident which must be borne by the one upon whom it falls ....") (emphasis added); see also Brown v. Sandals Resorts Int'l, 284 F.3d 949, 954 (8th Cir. 2002) ("Under South Dakota law, an act of God is defined as 'any accident, due directly and exclusively to natural causes ....'") (emphasis added); Uniroyal, Inc. v. Hood, 588 F.2d 454, (5th Cir. 1979) ("Under Georgia substantive law ... an act of God ... is an accident caused by physical causes which are irresistible or inevitable ....") (emphasis added); see also Travelers Ins. Co. v. Randall, 264 F.2d 1, 2 (5th Cir. 1959) ("An act of God may be defined in a comprehensive definition as any accident, due directly and exclusively to natural causes without human intervention ....") (emphasis added).

1653-62432-WMH/cam

occurrence. Hurricane Katrina meets both alternatives of the specific, specialized definition of "accident" provided by the MMTJA.

In a recent case, the court declined to treat Hurricane Katrina as an accident within the meaning of Section 1369(c)(4) despite the plain language of that provision. *Flint v. La. Farm Bureau Mut. Ins. Co.*, No. 06-2546, 2006 WL 2375593 (E.D. La. Aug. 15, 2006) (unpublished opinion) (Duval, J.). In *Flint*, the only basis for MMTJA jurisdiction asserted by the defendant was the piggy-back removal provision discussed *infra*, 28 U.S.C. § 1441(e)(1)(B). This required the court to determine whether the action before it arose out of the same statutory accident as the two actions upon which piggy-back jurisdiction was predicated (one of which was *Chehardy*, the same action upon which Defendants now rely). *See* 2006 WL 2375593, at *2-3. The court reasoned that while Hurricane Katrina was a natural event, the accident that caused the deaths in *Chehardy* was the New Orleans levee breaks in which Hurricane Katrina culminated. *Id.* at *2. Because the *Flint* action did not arise from the levee breaks, the court concluded that it did not arise from the same accident as *Chehardy*.[6] *Id.*

However, in so holding, the *Flint* court misapplied the plain language of Section 1369(c)(4). The statute clearly defines "accident" as "a natural event culminating in an accident." Thus, the operative occurrence for purposes of the statutory definition is the natural event while the ordinary accident in which it culminates is merely a qualifying characteristic.

1653-62432-WMH/cam

The statute plainly defines "accident" as "*a* natural event culminating in an accident," not "an accident resulting *from* a natural event."   Accordingly, the ruling in *Flint* ignores the clear implication of the grammatical construction of the definition of the term "accident" as used throughout the MMTJA.  Thereunder, a natural disaster such as a hurricane or earthquake is *itself* the occurrence defined as an "accident" for purposes of the statute.  If it so happens that this natural event culminated in a series of separate injurious incidents, then those instances of injury and damage, albeit analytically separate, would nonetheless all arise from the same single "accident" for Section 1369 purposes.

Significantly, the plain and unambiguous text of Section 1369 imposes no requirement that a given case involve any particular number of plaintiffs or defendants or that it have any legal or factual issues in common with any other pending action.  As noted by one commentator, Section 1369 applies, by *its own terms*, to "any civil action" and its jurisdictional reach is not limited in any way by the type or nature of claim at issue; thus, "section 1369 potentially applies in cases arising out of a qualifying accident but involving neither a risk of duplicate litigation nor good opportunities for consolidated adjudication."   Angela J. Rafoth, *Congress and the Multiparty, Multiforum Trial Jurisdiction Act of 2002: Meaningful Reform or a Comedy of Errors?*, 54 Duke L.J. 255, 263-64 (2004) (specifically noting that "a contract suit against or between insurers regarding coverage related to a qualifying accident could come into federal

---

[6]  Similarly, because *Flint* and the other action relied upon by the defendant arose out of the falling of trees at the respective plaintiffs' residences, the court concluded that those actions did not arise out of the same accident. *Flint,*

1653-62432-WMH/cam

court under section 1369 even absent the kinds of common issues that arise when multiple victims bring separate suits"); *see also* H. Alston Johnson, "Current Topics in Federal Subject Matter Jurisdiction Based on Diversity of Citizenship: 'Minimal Diversity', the Current Meaning of *Erie Railroad v. Tompkins* and Related Issues," pp. 6-7 (June 7, 2006) (specifically contemplating application of MMTJA's jurisdictional provisions to insurance claims arising out of Hurricane Katrina) (Attached as Exhibit B).

## 2.    Hurricane Katrina Resulted in More Than 75 Deaths at a Discrete Location

Whether Hurricane Katrina is determined to be a "sudden unintended or unforeseen injurious occurrence," "a natural event culminating in an unintended or unforeseen injurious occurrence," or both, it must be found to have resulted in "death incurred at a discrete location by at least 75 natural persons" in order to qualify as an "accident" for purposes of the MMTJA. 28 U.S.C. § 1369(c)(4).[7] Although an exact number has yet to be determined, according to widely published reports and official statistics, more than 1,300 deaths resulted from Hurricane Katrina. *See, e.g.,* Fed. Emergency Mgmt. Agency, "Summary Report on Building Performance –

---

2006 WL 2375593, at *3.

[7]  Defendant believes that a proper construction of Section 1369(c)(4) – one which assumes Congress intended to use parallel construction – is that the 75 deaths must result from the statutory accident (*i.e.*, the "sudden accident" or the "natural event").  However, even if the second prong of Section 1369(c)(4)'s definition of "accident" were interpreted to require that the 75 deaths must result from the ordinary accident that is the definitional component of the statutory accident, the requirement would still be met with respect to Hurricane Katrina as the substantial majority of the more than 1,000 deaths caused by Hurricane Katrina were the result of flooding and most of the hundreds of deaths in New Orleans were the result of the breaches of the various levees and canals comprising the city's flood control system.

1653-62432-WMH/cam

Hurricane Katrina 2005," at 1-4, 1-5 (April 2006), *available at* http://www.fema.gov/pdf/rebuild/mat/fema548/548_SumRprt0329fnl.pdf.[8]

While it is beyond dispute that Hurricane Katrina resulted in more than 75 deaths, the statute additionally requires that the requisite number of deaths have occurred "at a discrete location." 28 U.S.C. § 1369(c)(4). "Discrete" is an inherently relative term and only denotes something "individual; separate; distinct." Black's Law Dictionary 479 (7th ed. 1999). As such, the specificity of the term "discrete" is a function of the context and circumstances in which it is used. A natural reading of the term "discrete location" as used in the MMTJA would vary the applicable boundaries of the location based upon the nature and characteristics of the statutory accident at issue. Here, where Hurricane Katrina is the statutory accident, the term "discrete location" should be understood as encompassing the geographic area devastated by the landfall of that storm (*i.e.*, the American Gulf Coast). This location is specific and identifiable to the exclusion of all other geographic areas and its scope is framed by reference to the causative event that necessitates the inquiry (*i.e.*, Hurricane Katrina). As stated previously, well more than 75

---

[8] In addition to facts alleged in the Petition, the Court may consider facts that are properly the subject of judicial notice, such as information available on official governmental websites and other information that is generally known and not subject to reasonable dispute. *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of information on government agency's website); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981) ("courts have not hesitated to take judicial notice of agency records and reports"); *J. M. Blythe Motor Lines Corp. v. Blalock*, 310 F.2d 77, 78 (5th Cir. 1962) (state laws and Constitutions); *see also Hall v. Virginia*, 385 F.3d 421, 424, n.3 (4th Cir. 2004) (taking judicial notice of information on Virginia Division of Legislative Services' website); *Wallace v. Federal Emergency Management Agency*, 2001 WL 125316, at *2 (N.D. Cal. Jan. 26, 2001) (taking judicial notice of various publications on the FEMA website).

1653-62432-WMH/cam

persons died in New Orleans and the coastal areas of Louisiana and Mississippi as a result of Hurricane Katrina.

Nonetheless, even if the Court were inclined to interpret the term "discrete" to require that the requisite number of deaths have occurred in a defined area less than coextensive with the area impacted by the statutory accident, there are various locations that would qualify, including the State of Louisiana, the Eastern District of Louisiana, St. Bernard's Parish, Orleans Parish, the City of New Orleans, and/or the Lakeview area of New Orleans between the 17th Street and London Avenue Canals. *See Chehardy v. La. Ins. Comm., et al.*, No. 3:05-CV-1140, Court File No. 188 (M.D. La. March 16, 2006) (holding requirements of § 1369 had been met in case arising from Hurricane Katrina without specifying which discrete location was relied upon). (Attached as Exhibit C). As early as October 23, 2005, the Louisiana Department of Health and Hospitals had determined that more than 1,000 Louisiana residents died as a result of Hurricane Katrina with more than 700 of those deaths occurring in Orleans Parish.  Coleman Warner & Robert Travis Scott, *Where They Died*, New Orleans *Times-Picayune*, Oct. 23, 2005, at A1, A-14, A-15 (attached as Exhibits D and E).  The State of Louisiana Department of Health and Hospitals reported that as of February 23, 2006, the St. Gabriel Morgue had processed 887 storm-related deaths.  In addition to summary statistics, this report lists the names and residences of the deceased, with the substantial majority coming from Orleans Parish alone and more than 100 coming from St. Bernard's Parish. Louisiana Dept. of Health & Hosps., "Deceased Katrina Victims        Released        to        Families        2-23-2006,"        *available        at*

1653-62432-WMH/cam

http://www.dhh.louisiana.gov/offices/publications/pubs-192/Deceased%20Victims_2-23-2006_information.pdf.

Any of these various discrete locations would suffice to satisfy the MMTJA's gravity threshold. Plaintiffs insist that "[t]he only 'discrete location' at issue in this matter is Plaintiffs' home." While this may be true with respect to the substantive merits of Plaintiffs' claims, the jurisdictional inquiry under the plain language of Section 1369 is not so limited. Significantly, neither Section 1369(a) nor Section 1369(c)(4) require that the statutory accident occur at a discrete location, but only that the 75 or more *deaths* occur at a discrete location.[9] Thus, once it is established that the requisite number of deaths occurred at a given discrete location and that those deaths resulted from the statutory accident, the court would have jurisdiction over any and all civil actions arising out of the same accident irrespective of where the injuries on which those actions were based might have been suffered. MMTJA jurisdiction does not depend upon whether the Plaintiffs' claim is related in some way to any of the deaths caused by Hurricane Katrina, nor does it depend upon whether Plaintiffs' claim even arises in the same discrete location as the deaths.[10] Hurricane Katrina was both a sudden unintended or unforeseen injurious occurrence and a natural event culminating in many unintended or unforeseen injurious occurrences across the Gulf Coast region. Hurricane Katrina resulted in more than 75 deaths

---

[9] To the extent that Plaintiffs are suggesting that the MMTJA requires that all 75 deaths must have occurred on a single piece of property, nothing in the statutory language supports such a construction.

[10] Indeed, the MMTJA specifically contemplates that a qualifying accident could span multiple judicial districts and even states. *See* 28 U.S.C. §§ 1369(a)(3) (providing for jurisdiction where "substantial parts of the accident took

1653-62432-WMH/cam

both overall and in specific locales as small as the Lakeview district of New Orleans. There is no dispute about the fact that this lawsuit arises out of Hurricane Katrina; indeed, Plaintiffs' have expressly so alleged. (Petition ¶ III). This is all that the plain language of Section 1369 requires; there is no basis in the statutory language for imposing any additional requirements for jurisdiction.

One Louisiana district court has exercised MMTJA jurisdiction over insurance litigation arising out of Hurricane Katrina. *Chehardy*, No. 3:05-CV-1140, Court File No. 188 (M.D. La. March 16, 2006). (Exhibit C). In addition, the Fifth Circuit has impliedly approved of the exercise of federal jurisdiction under Section 1369 over the *Chehardy* action with the statutory accident being Hurricane Katrina. *See Wallace v. La. Citizens Prop. Ins. Corp.*, 444 F.3d 697, 699, 702 (5th Cir. 2006) ("Petitioners contend that they meet the requirements of § 1441(e)(1)(B) because they are parties to a separate class action based on 28 U.S.C. § 1369 ('the *Chehardy* action') which arises from the same accident (Hurricane Katrina) as the instant case …. § 1441(e)(1)(B) establishes supplemental jurisdiction over the *Wallace* action, piggy-backing jurisdiction on the district court's original jurisdiction under § 1369(a) over the pending *Chehardy* action."). Even though the specific focus of the Fifth Circuit's ruling in *Wallace* related to the application of Section 1369(b)'s mandatory abstention provision, the *ratio decidendi* of the court's decision was that the district court's invocation of the abstention

---

place in different States"); 1391(g) (providing for venue "in any district in which … a substantial part of the accident giving rise to the action took place").

1653-62432-WMH/cam

provisions presupposed the existence of subject matter jurisdiction, the absence of which would also have deprived the court of appellate jurisdiction.  As such, a finding of Section 1369 subject matter jurisdiction in *Chehardy* was essential to the Fifth Circuit's holding in *Wallace*.

### 3.   Cases Declining to Find Jurisdiction Under the MMTJA Fail to Consider the Plain Language of the Statute

The best evidence of what Congress intended in enacting a particular statute will always be the words that it chose to use in the statute itself.  As a result, courts should not consult legislative history unless the statutory language itself is ambiguous.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, --- U.S. ----, 125 S. Ct. 2611, 2625-27 (2005).  "[The Supreme Court has] stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous then, this first canon is also the last:  the judicial inquiry is complete." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations and internal quotation marks omitted).  That the wording of a statute might be complex, awkward, or even ungrammatical does not make it ambiguous.  *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).  "[W]hen the language of the statute is plain, legislative history is irrelevant." *Zedner v. United States*, --- U.S. ----, 126 S. Ct. 1976, 1990-91 (2006) (Scalia, J., concurring).

Despite the plain language of Section 1369 and without acknowledging any of the aforementioned Supreme Court precedent, some Louisiana district courts have recently refused to apply it to claims arising out of Hurricane Katrina based on the legislative history of the

1653-62432-WMH/cam

MMTJA. *See Southall v. St. Paul Travelers Ins. Co.*, No. 06-3848, 2006 WL 2385365, at *5-6
(E.D. La. Aug. 16, 2006) (Barbier, J.) (concluding from legislative history that MMTJA was
intended to allow consolidation of cases related to common disaster and holding that MMTJA
did not confer jurisdiction over case before court because it was not a large class action and
defendants had made no suggestion that case should be consolidated with any other pending
litigation); *Hillery v. State Farm Fire & Cas. Co.*, Case No. 2:06-CV-2909, Docket No. 7, pp. 5-
8 (E.D. La. July 26, 2006) (Barbier, J.) (same); *Willhoft v. Kert Leblanc Ins. Agency, Inc.*, Case
No. 2:06-CV-1235, Docket No. 27, pp. 4-5 (E.D. La. July 5, 2006) (Lemmon, J.) (concluding
from legislative history and commentary that MMTJA jurisdiction "is not intended to apply to a
case where there are not many plaintiffs and many defendants"); *see also Wallace v. La. Citizens
Prop. Ins. Corp.*, Case No. 2:06-CV-114, Docket No. 58, p. 4 (E.D. La. June 7, 2006) (Livaudais,
J.) (rejecting MMTJA argument out of hand based solely on general "presumption against federal
subject matter jurisdiction").  However, as noted previously, the plain and unambiguous text of
Section 1369 imposes no requirement that a given case involve any particular number of
plaintiffs or defendants or that it have any legal or factual issues in common with any other
pending action.[11]  As one commentator has noted:

> The MMTJA could include a class action, but it is not limited to class actions. In theory,
> at least, it could apply to an action by a single plaintiff against two defendants, one of

---

[11] "The MMTJA could include a class action, but it is not limited to class actions. In theory, at least, it could apply
to an action by a single plaintiff against two defendants, one of diverse citizenship from the plaintiff and one not—so
long as the other requisites of the statute are satisfied." H. Alston Johnson, "Current Topics in Federal Subject
Matter Jurisdiction Based on Diversity of Citizenship: 'Minimal Diversity', the Current Meaning of *Erie Railroad v.
Tompkins* and Related Issues," p. 9 (June 7, 2006).

1653-62432-WMH/cam

diverse citizenship from the plaintiff and one not—so long as the other requisites of the statute are satisfied.

H. Alston Johnson, "Current Topics in Federal Subject Matter Jurisdiction Based on Diversity of Citizenship: 'Minimal Diversity', the Current Meaning of *Erie Railroad v. Tompkins* and Related Issues," p. 9 (June 7, 2006).

While jurisdictional statutes are to be strictly construed, they must still be applied in accordance with their plain language. The unambiguous jurisdictional requirements of Section 1369 are all satisfied in this case; whether or not Congress contemplated the application of the MMTJA to this sort of action is entirely beside the point. Indeed, in holding that the plain language of 28 U.S.C. § 1367 overruled prior Supreme Court pendant party jurisdiction case law, the Supreme Court refused to consider and/or give weight to legislative history specifically disclaiming any intent to accomplish such a result. *Exxon*, 125 S. Ct. at 2625-27.

In summary, the Court has original jurisdiction over this case because (1) there is minimal diversity between the parties; (2) Section 1369(a)(2) is satisfied based on the differing residences of the two defendants; (3) the case arises from Hurricane Katrina; (4) Hurricane Katrina is an "accident" within the meaning of the MMTJA; and (5) Hurricane Katrina resulted in at least 75 deaths at a discrete location whether that discrete location is deemed to be the American Gulf Coast states, Louisiana, the Eastern District of Louisiana, St. Bernard's Parish, New Orleans, Orleans Parish, or Lakeview. Accordingly, removal was proper under both 28 U.S.C. § 1441(a) and § 1441(e)(1)(A).

**B.      This Case is Properly Removable Under 28 U.S.C. § 1441(e)(1)(B)**

1653-62432-WMH/cam

Meeting the requirements of Section 1369(a) is not the only avenue to federal jurisdiction for a case arising out of a disaster like Hurricane Katrina. Another provision of the MMTJA explicitly permits litigants to remove cases over which the federal courts would not otherwise have jurisdiction based upon their mere presence as a party in another case satisfying the requirements of Section 1369(a) and arising from the same statutory accident. Specifically, 28 U.S.C. § 1441(e) provides, in part, as follows:

(1) Notwithstanding the provisions of subsection (b) of this section, a defendant in a civil action in a State court may remove the action to the district court of the United States for the district and division embracing the place where the action is pending if--

(A) the action could have been brought in a United States district court under section 1369 of this title; or

(B) the defendant is a party to an action which is or could have been brought, in whole or in part, under section 1369 in a United States district court and arises from the same accident as the action in State court, even if the action to be removed could not have been brought in a district court as an original matter.

Of note, Section 1441(e)(1)(B) does not require that the case upon which removal is premised

1653-62432-WMH/cam

have been brought or removed on the basis of Section 1369(a), only that it "could have been" so brought.  Therefore, so long as a defendant is a party to an action which falls within the jurisdictional scope of Section 1369(a), that defendant may remove any other action arising from the same statutory accident to which it is also a party irrespective of otherwise applicable restrictions on federal jurisdiction. *See Wallace*, 444 F.3d at 702.

Although numerous actions exist upon which State Farm could premise removal of this action under Section 1441(e)(1)(B),[12] Defendant relies on *Chehardy v. Wooley, et al.*, Nos. 05-1140, 05-1163 (M.D. La.).  (Exhibit C).  The *Chehardy* action was specifically removed from state court on the basis of the original federal jurisdiction provided by Section 1369 and the *Chehardy* court ultimately held that the jurisdictional requirements of Section 1369 had been met in that case.  *Chehardy*, No. 3:05-CV-1140, Court File No. 188 (M.D. La. March 16, 2006). While nothing in the MMTJA operates to make the Court bound by this decision, principles of judicial comity dictate that the Court defer to the *Chehardy* court's ruling as to its own jurisdiction.  Even if the Court concludes that Section 1369(a) does not apply to the instant action, the Court still has jurisdiction so long as it agrees that the *Chehardy* action is subject to Section 1369(a).

In order for Section 1441(e)(1)(B) to apply, the Court need only find that *Chehardy* is subject to Section 1369 and that both cases arise from the same "accident" as that term is defined

---

[12] *See, e.g., Chauvin v. State Farm Fire & Cas. Co.*, No. 2:05-CV-6454 (E.D. La.); *Williams v. State Farm Fire & Cas. Co.*, No. 2:06-CV-0177 (E.D. La.).

1653-62432-WMH/cam

in Section 1369(c)(4).  The same specific injurious occurrence need not have caused the harm complained of in both cases and jurisdiction need not necessarily be based on the same 75 deaths at the same discrete location.  So long as both cases arise from the same natural event or other statutory accident, and that natural event or other statutory accident culminated in the death of 75 persons in at least one discrete location, this Court has removal jurisdiction.  *See Wallace*, 444 F.3d at 702 (in allowing removal in situations where original federal jurisdiction does not exist, "§ 1441(e)(1)(B) establishes supplemental jurisdiction over the *Wallace* action, piggy-backing jurisdiction on the district court's original jurisdiction under § 1369(a) over the pending *Chehardy* action").

It should be noted, however, that the piggyback jurisdiction afforded by Section 1441(e)(1)(B) does not require any common legal or factual issues beyond the simple fact that both cases arise from the same accident as defined by Section 1369(c)(4) and involve a common defendant.  *See Wallace*, 444 F.3d at 699, 702.  Therefore, the courts are prohibited from engrafting any further commonality requirement on MMTJA removal jurisdiction not countenanced by the plain language of the statute.  *See Exxon*, 125 S. Ct. at 2625-27.

In conclusion, State Farm submits that the foregoing is sound in fact and in law, and that plaintiffs' Motion to Remand should be denied.

1653-62432-WMH/cam

Respectfully submitted:

**HAILEY, McNAMARA, HALL,
LARMANN & PAPALE, L.L.P.**

BY: _____

    **W. MARVIN HALL, #6446
    JOHN E. UNSWORTH, JR., #9477
    DAVID K. PERSONS, #2046
    CAROLINE D. IBOS, #21307
    DARREN A. PATIN, #23244
    BRAD D. FERRAND, #29860**
One Galleria Boulevard, Suite 1400
Metairie, Louisiana 70001
Telephone: (504) 836-6500
Facsimile: (504) 836-6565
Counsel Defendant,
**State Farm Fire & Casualty Company**

## CERTIFICATE OF SERVICE

I do hereby certify that I have mailed a copy of the foregoing pleading to the following:
James F. Gasquet, III, Bar #26294
**Law Offices of James F. Gasquet, III,
A Limited Liability Company**
129 Chancellor Drive, P.O. Box 279
Belle Chasse, Louisiana 70037

on this 6th day of October, 2006.

_____