

**CORPORATION SERVICE COMPANY**

## Notice of Service of Process

null / ALL
Transmittal Number: 4666841
Date Processed: 08/01/2006

| | |
|---|---|
| Primary Contact: | Kenneth V. Harkins Esq. |
| | American International Group, Inc. |
| | 175 Water Street |
| | Floor 18TH |
| | New York, NY 10038 |

| | |
|---|---|
| Entity: | Lexington Insurance Company |
| | Entity ID Number 1903911 |
| Entity Served: | Lexington Insurance Company |
| Title of Action: | Jamie G. Madere vs. Lexington Insurance Company |
| Document(s) Type: | Citation/Petition |
| Nature of Action: | Contract |
| Court: | Plaquemines Parish District Court, Louisiana |
| Case Number: | 53539B |
| Jurisdiction Served: | Louisiana |
| Date Served on CSC: | 08/01/2006 |
| Answer or Appearance Due: | 15 Days |
| Originally Served On: | Secretary of State on 7/31/2006 |
| How Served: | Certified Mail |
| Plaintiff's Attorney: | James F. Gasquet, III |
| | 504-394-5530 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not
constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882  |  sop@cscinfo.com







EXHIBIT
A

# STATE OF LOUISIANA
# SECRETARY OF STATE

HELEN CUMBO
ADMINISTRATOR
COMMERCIAL DIVISION

7/31/06

LEGAL SERVICES SECTION
P.O. BOX 54125, BATON ROUGE, LA 70804-9125
(225) 922-0415

LEXINGTON INSURANCE COMPANY
C/O CORPORATION SERVICE COMPANY
320 SOMERULOS STREET
BATON ROUGE, LA 70802-6129

SUIT NO: 53539
25TH JUDICIAL DISTRICT COURT
PARISH OF PLAQUEMINES

JAMIE G. MADERE, ETAL
vs
LEXINGTON INS. CO.

Dear Sir/Madam:

I am enclosing citation served in regard to the above entitled proceeding.
Please call the attorney that filed this document if you have any questions
regarding this proceeding.  If you received this document in error, please
return it to the above address with a letter of explanation.

Yours very truly,

AL ATER
Secretary of State

Served on: HELEN CUMBO
Served by: J. BROWN

Date:   7/28/06 at  3:00 PM
Title: DEPUTY SHERIFF

=====================================================================
Received      Number      Date      Paid By               Amount
CHECK/M.O.     6671       7/18/06    JAMES F. GASQUET III   25.00

RG
=====================================================================

## NO. 617396



FOR SERVICE

25TH JUDICIAL DISTRICT COURT FOR THE PARISH OF PLAQUEMINES

STATE OF LOUISIANA

NO. 53-639                    DIVISION B

JAMIE G. MADERE AND EUGENE MADERE

VERSUS

LEXINGTON INSURANCE COMPANY

FILED: ___JUL 2 0 2006___          ___s/ BECKY _____
                                        DEPUTY CLERK

## PETITION FOR BREACH OF CONTRACT AND DAMAGES

The petition of Jamie G. Madere and Eugene Madere (collectively "petitioner"), of the full age of majority and domiciled in the Parish of Plaquemines, State of Louisiana, respectfully represents that:

1.

Made defendant herein is Lexington Insurance Company, a foreign insurance corporation, authorized to do and doing business in the Parish of Plaquemines, State of Louisiana, who is the insurer for the damages sustained by petitioner and petitioner's property and for the allegations of this Petition (hereafter "Lexington").

2.

At all times pertinent hereto, including but not limited to August 29, 2005, petitioner had in full force and effect a homeowner's policy of insurance issued by Lexington covering petitioner's property located at 30672 Highway 23, Buras (Nairn), Plaquemines Parish, Louisiana 70041 (hereafter "Petitioner's Home"), and providing the following coverages and limits:

|   |   |   |
|---|---|---|
| A. | Coverage A – Dwelling | $350,000.00 |
| B. | Coverage B – Other Structures | 35,000.00 |
| C. | Coverage C – Personal Property | 175,000.00 |
| D. | Coverage D – Loss of Use | 70,000.00 |

(hereafter "Valuation") and with a deductible of $2,500.00 for "All Other Perils" and $2,500.00 for "Wind and Hail," which policy is identified as Lexington Insurance Company Policy Number LE 8124086 01 (hereafter "Homeowner's Policy").

3.

On or about August 29, 2005, Hurricane Katrina made landfall at or near Buras, Plaquemines Parish, Louisiana, as a dangerous Category 4 Hurricane on the Saffir-Simpson Scale, with sustained

winds near 145 miles per hour, and with higher gusts, and passed directly over the Empire-Nairn area, and Petitioner's Home (hereafter "Hurricane Katrina"). Hurricane Katrina had hurricane force winds extending 120 miles from its center and tropical storm force winds extending out 230 miles from its center, resulting in severe and hurricane force winds affecting the Empire-Nairn area, and specifically Petitioner's Home, for several hours prior to landfall.

5.

Petitioner's property, including Petitioner's Home, carport/garage, and personal property (hereafter "petitioner's property") were severely damaged by Hurricane Katrina, and the adverse weather conditions caused by Hurricane Katrina ("Property Loss").

6.

The Homeowner's Policy provides coverage to petitioner for the Property Loss.

7.

On September 4, 2005, petitioner made a claim on the Homeowner's Policy with Lexington for damages caused by Hurricane Katrina (hereafter "Claim").

8.

On September 8, 2005, Lexington paid petitioners a $1,000.00 and on September 21, 2005, Lexington paid petitioners an additional $3,000.00 under the Homeowner's Policy.

9.

Upon information and belief Lexington assigned an adjuster named Robert Johnson ("Mr. Johnson") to inspect Petitioners' Home. Mr. Johnson made arrangements to inspect Petitioners' Home on October 15, 2005, but prior to inspecting Petitioner's Home, Mr. Johnson informed petitioner that he would not need any information regarding contents of Petitioner's Home because he "was only paying for the roof."

10.

Upon information and belief, Mr. Johnson inspected Petitioner's Home on October 15, 2005.

11.

Despite the Claim having been filed on September 4, 2005, and Lexinton having completed its site inspection of Petitioner's Home on October 15, 2005, Lexington failed to make any additional payment on the Claim until April 22, 2006, after Lexington's receipt of a certified demand letter from petitioner's undersigned counsel.

12.

Lexington's failure to pay or make written offer to settle the Claim within thirty (30) days of receipt of proof of loss, and Lexington's adjustment, determination of loss, and payment tendered regarding the Claim, was arbitrary, capricious, and without probable cause, in violation of Louisiana Revised Statute 22:658, and renders Lexington liable to petitioner for penalties in the amount of 25% of the difference between the amount paid or tendered, if any, and the amount found to be due from Defendant to petitioner.

13.

Lexington failed to adjust the Claim fairly and promptly and/or to pay or settle the Claim, and thereby breached its duty of good faith and fair dealing in violation of Louisiana Revised Statute 22:1220, rendering Lexington liable to petitioner for penalties in an amount not to exceed two times petitioner's damages or $5,000.00, whichever is greater.

14.

Lexington placed the Valuation on petitioner's property for purposes of the Homeowner's Policy and used such Valuation for determining the premium under the Homeowner's Policy, and the Homeowner's Policy did not set forth a different method of computation of loss, and therefore, Lexington is liable to petitioner for the total loss of petitioner's property for the amount of the Valuation, without deduction or offset, under Louisiana Revised Statute 22:695.

15.

Lexington has failed to pay petitioner the amount of the Valuation despite amicable demand, and is liable to petitioner for breach of contract, damages, statutory penalties, judicial interest, attorney's fees, and all costs of these proceedings.

16.

Petitioner affirmatively renounces and waives petitioner's right to recover any damages, including statutory penalties and attorney's fees, but exclusive of judicial interest and costs, in these proceedings in excess of $75,000.00.

**WHEREFORE**, petitioner prays that after all due proceedings are had, there be Judgment rendered herein in favor of plaintiff, Jamie G. Madere and Eugene Madere, and against the defendant, Lexington Insurance Company, for all amounts due plaintiff under the Homeowner's Policy, plus damages, statutory penalties, judicial interest, attorney's fees, and all costs of these

proceedings, and for all legal and equitable relief.

Respectfully submitted:

LAW OFFICE OF JAMES F. GASQUET, III
A LIMITED LIABILITY COMPANY

BY: _____
James F. Gasquet, III, Bar No.26294
129 Chancellor Drive, P.O. Box 279
Belle Chasse, Louisiana 70037
Tel. (504) 394-5530; Fax (504) 394-4742
Attorney for Jamie G. Madere and
Eugene Madere

**PLEASE SERVE:**

Lexington Insurance Company,
through its registered agent for service of process,
Louisiana Secretary of State
8549 United Plaza Blvd.
Baton Rouge, LA 70809

A TRUE COPY
Becky Naquin
Dy. Clerk of Court
Parish of Plaquemines, La



United States Postage
$ 03.270
02 1A
0004337158   JUL 31 2006
MAILED FROM ZIP CODE 70802

CERTIFIED MAIL

7004 2890 0000 9369 7235

7/31/06

AL ATER
SECRETARY OF STATE
P.O. BOX 94125
BATON ROUGE, LA 70804-9125

COMMERCIAL DIVISION

LEXINGTON INSURANCE COMPANY
C/O CORPORATION SERVICE COMPANY
320 SOMERULOS STREET
BATON ROUGE, LA  70802-6129

SS104 (R10/05)

## CITATION

**FOR SERVICE**

*JAMIE G MADERE ET AL*

*Versus*

*LEXINGTON INSURANCE CO*

*Case:* 00053539
*Division: B*
*25ᵗʰ Judicial District Court*
*Parish of Plaquemines*
*State of Louisiana*

SERVED ON
HELEN CUMBO

JUL 2 8 2006

ADMINISTRATOR
COMMERCIAL DIVISION

To: *LEXINGTON INSURANCE CO*
    *THROUGH ITS REGISTERED AGENT FOR SERVICE*
    *LA SEC OF STATE 8549 UNITED PLAZA BLVD*
    *BATON ROUGE, LA 70809*

*YOU ARE HEREBY SUMMONED to comply with the demand contained in the Petition of which a true and correct copy (exclusive of exhibits) accompanies this Citation, or make an appearance either by filing a pleading, or otherwise, in the 25ᵗʰ Judicial District Court in and for the Parish of Plaquemines, State of Louisiana, within fifteen (15) days after the service hereof, under the penalty of default.*

*WITNESS MY OFFICIAL HAND AND SEAL OF OFFICE, at Belle Chasse, Louisiana, on this Thursday, July 20, 2006.*

*Req. By:*
*JAMES GASQUET III*
*504 394 5530*

*Deputy Clerk of Court for*
*Dorothy M. Lundin, Clerk of Court*
*P.O. Box 40*
*Belle Chasse, LA 70037*

---

### Service Information

*Received on the _____ day of _____, 20____ and on the _____ day of _____, 20____ served the above named party as follows:*

*Personal Service on the party herein named _____*
*Domiciliary Service on the party herein named by leaving the same at his/her domicile in the parish in the hands of _____, a person apparently over the age of seventeen years, living and residing in said domicile and whose name and other facts connected with this service, I learned by interrogating the said person, said party herein being absent from his/her residence at the time of said service.*

*Returned:*
*Parish of _____ this _____ day of _____, 20____.*

*Service*    $_____.

*Mileage*    $_____.        *By:* _____
                                    *Deputy Sheriff*

*Total*      $_____.

[ RETURN COPY ]

03/21/2005 09:51 AM FA551_3545

# LEX*Elite*

## LEXINGTON INSURANCE COMPANY
## HO3 HOMEOWNER DECLARATIONS PAGE

-- Broker Copy --

| Policy Number:  LE 8124086 01 | Renewal of Policy Number: |
|---|---|
| **Name of Insured and Mailing Address:**<br>Eugene & Jamie G. Madere<br>30672 Hwy 23<br>Buras, LA  70041 | **Broker Name and Address:**<br>Hull & Company (Louisiana), Inc.<br>111 Veterans Memorial Blvd<br>Ste 1030<br>Metairie, LA  70005 |
| **Policy Term:** 12 Month(s)   **Effective:** 02/22/2005 | **Expiration:** 02/22/2006    12:01 AM Standard Time at the Insured's residence premises. |

The residence premises covered by this policy is located at the above address, unless otherwise stated.

Insurance is provided only with respect to those special limits of liability applicable thereto:

| Coverage Part 1 - Homeowners | | Coverage Part 2 – Personal Umbrella | | |
|---|---|---|---|---|
| - Coverage A: | $  350,000 | - Umbrella Limit | $ | 0 |
| - Coverage B: | $  35,000 | - Self Insured Retention | $ | 0 |
| - Coverage C: | $  175,000 | **Coverage Part 3 – Excess Flood** | | |
| - Coverage D: | $  70,000 | - Building | $ 0  Excess of  $ | 250,000 |
| - Loss Assessment: | $  1,000 | - Contents | $ 0  Excess of  $ | 100,000 |
| - Ordinance or Law: | 10% | **Coverage Part 4 – Scheduled Property** | | |
| - Coverage E: | $  300,000 | - Total Scheduled Property | $ | 0 |
| - Coverage F: | $  1,000 | | | |

| **Homeowners Deductibles** | | | | Annual Premium: | $ | 2,995.00 |
|---|---|---|---|---|---|---|
| All Other Perils: | | $ | 2500 | Lexington Policy Premium: | $ | 2,995.00 |
| Wind and Hail: | | $ | 2500 | Inspection Fee: | $ | 50.00 |
| Earthquake: | | | Excluded | Policy Fee: | $ | 100.00 |
| Special: | Water Damage | $ | 2500 | Surplus Lines Tax: | $ | 157.25 |
| Special: | None | $ | N/A | | | |
| Minimum Earned Premium: | 25% | | | **Total Due:** $ | | 3,302.25 |

| **Mortgagee 1**   Loan # | **Sub Broker Information** |
|---|---|
| AMSOUTH BANK ISAOA ATIMA<br>PO BOX 57046<br>IRVINE, CA 92619-7046 | **Name:**  ALPHA INSURANCE LLC<br>**Addr 1:**  23 5TH STREET<br>**Addr 2:**<br>**City, St, Zip:**  GRETNA , LA 70053 |

| **Mortgagee 2**   Loan # | **Homeowners Rating Information** | | | |
|---|---|---|---|---|
| | **Territory:** | 38 | **Year Built:** | 2005 |
| This insurance policy is delivered as a surplus line coverage under the insurance code of the State of Louisiana. In the event of insolvency of the company issuing this contract, the policyholder | **County:** | Plaquemines(e) - LA | **Construction:** | Frame |
| | **PC:** | 6 | **EQ zone:** | N/A |

Forms and Endorsements made part of this policy at time of issuance:
Please See Schedule of Forms and Endorsements

This declaration page with policy provisions and endorsements, if any, issued to form a part, thereof, completes the above numbered Homeowners Policy.

This insurance is issued pursuant to the LA surplus lines law.  Persons insured by surplus lines carriers do not have the protection of the LA Insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent, unlicensed insurer.

Countersignature Date: 02/23/2005      _Madelyn M. Cohen, CPCU_

Countersigned At: Metairie, LA

Date Issued: 02/23/2005      **Representative**      Countersignature:  _John T. Nixon_

**LexElite 11/00**      **Authorized**

EXHIBIT

B

000001

POLICY NUMBER:  LE 8124086 01
Effective Date:        02/22/2005

Date Issued:   02/23/2005

## SCHEDULE OF FORMS AND ENDORSEMENTS

|  | Homeowners General Change 1 |
| --- | --- |
| LEX 00 33 11 04 | Settling, Cracking, Bulging, Shrinkage, or Expansion Exclusion |
| LEX 04 33 04 02 | Limited Mold Related Coverage |
| HO 00 03 04 91 | Homeowners 3 Special Form |
| HO 01 17 09 00 | Special Provisions - Louisiana |
| HO 04 90 04 91 | Personal Property Replacement Cost |
| HO 04 96 04 91 | Home Day Care Exclusion |
| HO 05 80 05 97 | Remediation, Limited Lead & Escaped Liquid Fuel Liability Coverages |
| LEX 00 01 02 02 | Animal Exclusion |
| LEX 00 04 01 01 | Lexington Standard Policy Conditions |
| LEX 00 14 03 01 | Important Flood Insurance Notice |
| LEX 00 30 05 03 | Exterior Insulation and Finish System Exclusion |
| LEX 00 31 04 04 | Trampoline Exclusion |
| LEX 01 09 03 03 | Special Provisions |
| LEX 05 80 01 01 | Advisory Notice to Policyholders - Explanatory Memo |

# General Change Endorsement

### Homeowners General Change 1

This endorsement forms a part of the policy to which attached effective from its date of issue unless otherwise stated herein.

**Policy #:**     LE 8124086 01

**Named Insured:**   Eugene & Jamie G. Madere

**Effective Date:**     02/22/2005

**Expiration Date:**   02/22/2006

**Endorsement Effective:**  02/22/2005

**Premium Adjustment:**     $0.00

**Description of Change:**

This endorsement modifies insurance provided by the policy:

The Settling, Cracking, Bulging, Shrinkage, Or Expansion Exclusion, LEX 00 33 11 04, is deleted from this policy and shall have no effect on coverage provided under this policy.

**All other terms and conditions remain the same.**

Date Issued: 02/23/2005

**Authorized Representative**
**Lexington Insurance Company**

-- Insured Copy --

000003

**This endorsement, effective 12:01 A.M.,** 02/22/2005
**Forms a part of Policy No.:** LE 8124086 01
**Issued to:** Eugene & Jamie G. Madere
**By:** LEXINGTON INSURANCE COMPANY

# SETTLING, CRACKING, BULGING, SHRINKAGE, OR EXPANSION EXCLUSION

This endorsement modifies insurance provided by the policy.

The following new subparagraph is added to Paragraph **1.** of **SECTION I – EXCLUSIONS**:

**Settling, Cracking, Bulging, Shrinkage, or Expansion** meaning any loss arising out of, caused by, or resulting from the settling, cracking, bulging, shrinkage, or expansion of cement foundations including slab foundations, walls, floors, ceilings, roof structures, walkways, driveways, curbs, fences, retaining walls, or swimming pools. In addition, we do not cover loss, including loss of use, arising out of, caused by, or resulting from broken or leaking pipes (including the pipes themselves) partially or fully within slab foundations, or below slab foundations whether or not such loss arises out of, is caused by, or results from settling, cracking, bulging, shrinkage, or expansion.

_____
Authorized Representative

LEX 00 33 11 04

000004

POLICY NUMBER: LE 8124086 01

**HOMEOWNERS**
**LEX 04 33 04 02**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITED MOLD RELATED COVERAGE
### (Coverage Part 1- Homeowners Only)

### SCHEDULE*

| | | |
|---|---|---|
| These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule. | | |
| **1.** | Section **I** – Property Coverage Limit Of Liability for the Additional Coverage "Mold Related Items" | $ 5,000 |
| **2.** | Section **II** – Coverage **E** Aggregate Sublimit Of Liability for "Mold Related Items" | $ 5,000 |
| *Entries may be left blank if shown elsewhere in this policy for this coverage. | | |

**DEFINITIONS**

The following definitions are added:

1. "Mold Related Items" include the following definitions for "Fungus(i)", "Mold(s)", "Spore(s)", but also includes, Wet or Dry Rot, Bacteria, Mildew or Yeast.

   a. "Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts, mushrooms, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

   b. "Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

   c. "Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

**SECTION I – PROPERTY COVERAGES**
**ADDITIONAL COVERAGES**

The following Additional Coverage is added:

   **12. "Mold Related Items"**

   a. The amount shown in the Schedule above is the most we will pay for:

   (1) The total of all loss payable under Section I – Property Coverages caused by "mold related items";

   (2) The cost to remove "mold related items" from property covered under Section I – Property Coverages;

   (3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "mold related items"; and

   (4) The cost of testing of air or property to confirm the absence, presence or level of "mold related items" whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "mold related items".

   b. The coverage described in **12.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

   c. The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

   (1) Number of locations insured under this endorsement; or

   (2) Number of claims made.

**d.** If there is covered loss or damage to covered property, not caused, in whole or in part, by "mold related items", loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "mold related items" causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Endorsement.

This coverage does not increase the limit of liability applying to the damaged covered property.

(This is Additional Coverage **11.** in Form **HO 00 06.**)

## SECTION I – PERILS INSURED AGAINST

In Form **HO 00 03** or **HO 00 03, HO 00 04** and **HO 00 06** with **LEX 15 31:**

Paragraph **2.e.(3)** or **1.b.(5)(c)** (if LEX 15 31 is attached) is deleted and replaced by the following:

**(3) or (c)** Smog, rust or other corrosion;

Paragraph **2.e.(9)** or **1.b.(4)(c)** (if LEX 15 31 is attached) is added:

**(9)** or **(i)** Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form **HO 00 06** with **HO 17 31:**

Paragraph **3.d.(3)** is deleted and replaced by the following:

**(3)** Smog, rust or other corrosion;

Paragraph **3.d.(9)** is added:

**(9)** In Form **HO 00 06** with **HO 17 32:**

Paragraph **2.e.(3)** is deleted and replaced by the following:

**(3)** Smog, rust or other corrosion;

Paragraph **2.e.(9)** is added:

**(9)** Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

## SECTION I – EXCLUSIONS

Exclusion **1.i.** is added.

**i. "Mold Related Items"**

"Mold Related Items" including the presence, growth, proliferation, spread or any activity of "mold related items".

This Exclusion does not apply:

**(1)** When "Mold Related Items" results from fire or lightning; or

**(2)** To the extent coverage is provided for in the "Mold Related Items" Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "Mold Related Items" is covered.

(This is Exclusion **9.** in Form **HO 00 04** and **HO 00 06.**)

## SECTION II – CONDITIONS

Condition **1.** Limit Of Liability is deleted and replaced by the following:

**1. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "Mold Related Items" will not be more than the Section **II** – Coverage **E** Aggregate Sublimit Of Liability for "Mold Related Items". That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

**a.** Number of locations insured under the policy to which this endorsement is attached;

**b.** Number of persons injured;

**c.** Number of persons whose property is damaged;

000006

**d.** Number of "insureds"; or

**e.** Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "Mold Related Items" described in **1.** Limit Of Liability of this endorsement, Condition **2. Severability Of Insurance** is deleted and replaced by the following:

**2. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section **II** – Conditions **1.,** Limit Of Liability. This condition will not increase the limit of liability for this coverage.

**SECTION I AND II CONDITIONS**

Condition **1.** Policy Period is deleted and replaced by the following:

**1. Policy Period**

This policy applies only to loss or costs in Section **I** or "bodily injury" or "property damage" in Section **II,** which occurs during the policy period.

All other provisions of the policy apply.  This limited coverage applies to **Coverage Part I Homeowners only**.  No other coverage parts provide this type of coverage.

# HOMEOWNERS 3
# SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

**1.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**2.** "Business" includes trade, profession or occupation.

**3.** "Insured" means you and residents of your household who are:

   **a.** Your relatives; or

   **b.** Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   **c.** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **3.a.** or **3.b.** above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   **d.** With respect to any vehicle to which this policy applies:

      **(1)** Persons while engaged in your employ or that of any person included in **3.a.** or **3.b.** above; or

      **(2)** Other persons using the vehicle on an "insured location" with your consent.

**4.** "Insured location" means:

   **a.** The "residence premises";

   **b.** The part of other premises, other structures and grounds used by you as a residence and:

      **(1)** Which is shown in the Declarations; or

      **(2)** Which is acquired by you during the policy period for your use as a residence;

   **c.** Any premises used by you in connection with a premises in **4.a.** and **4.b.** above;

   **d.** Any part of a premises:

      **(1)** Not owned by an "insured"; and

      **(2)** Where an "insured" is temporarily residing;

   **e.** Vacant land, other than farm land, owned by or rented to an "insured";

   **f.** Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   **g.** Individual or family cemetery plots or burial vaults of an "insured"; or

   **h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**5.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   **a.** "Bodily injury"; or

   **b.** "Property damage."

**6.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**7.** "Residence employee" means:

   **a.** An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   **b.** One who performs similar duties elsewhere not related to the "business" of an "insured."

**8.** "Residence premises" means:

   **a.** The one family dwelling, other structures, and grounds; or

   **b.** That part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

# SECTION I – PROPERTY COVERAGES

## COVERAGE A – Dwelling

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

## COVERAGE B – Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

## COVERAGE C – Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms.

7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, holloware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits **10.** and **11.** below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

   **a.** Accessories or antennas; or

   **b.** Tapes, wires, records, discs or other media;

   for use with any electronic apparatus.

■000009

**Copyright, Insurance Services Office, Inc., 1990**       HO 00 03 04 91

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

   **a.** Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

   **b.** Is away from the "residence premises"; and

   **c.** Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

   **a.** Accessories and antennas; or

   **b.** Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

**1.** Articles separately described and specifically insured in this or other insurance;

**2.** Animals, birds or fish;

**3.** Motor vehicles or all other motorized land conveyances. This includes:

   **a.** Their equipment and accessories; or

   **b.** Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

      **(1)** Accessories or antennas; or

      **(2)** Tapes, wires, records, discs or other media;

   for use with any electronic apparatus.

   The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   **a.** Used to service an "insured's" residence; or

   **b.** Designed for assisting the handicapped;

**4.** Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

**5.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

**6.** Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages **10.**;

**7.** Property rented or held for rental to others off the "residence premises";

**8.** "Business" data, including such data stored in:

   **a.** Books of account, drawings or other paper records; or

   **b.** Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

**9.** Credit cards or fund transfer cards except as provided in Additional Coverages **6.**

**COVERAGE D – Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

**1.** If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph **b.** below.

   **a.** **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

   **b.** **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

   Payment under **a.** or **b.** will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**2.** If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

   **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

**3.** If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under **1.** and **2.** above for no more than two weeks.

**⯀000010**

The periods of time under **1.**, **2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

**1. Debris Removal.** We will pay your reasonable expense for the removal of:

    **a.** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

    **b.** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

    **a.** Your tree(s) felled by the peril of Windstorm or Hail;

    **b.** Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

    **c.** A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

**2. Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

    **a.** Does not increase the limit of liability that applies to the covered property;

    **b.** Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I – CONDITION **2.d.**

**3. Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

    **a.** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

    **b.** Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

    **c.** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

    **d.** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

000011

We do not cover use of a credit card or fund transfer card:

**a.** By a resident of your household;

**b.** By a person who has been entrusted with either type of card; or

**c.** If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

**a.** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**b.** If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

**c.** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

**7. Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A – DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition **1.** Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

**8. Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

**a.** Perils Insured Against in COVERAGE C – PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

**b.** Hidden decay;

**c.** Hidden insect or vermin damage;

**d.** Weight of contents, equipment, animals or people;

**e.** Weight of rain which collects on a roof; or

**f.** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **b., c., d., e.,** and **f.** unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

**9. Glass or Safety Glazing Material.**

We cover:

**a.** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

**b.** Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

▉000012

 Copyright, Insurance Services Office, Inc., 1990

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

   a. **Fire or lightning.**

   b. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

   c. **Explosion.**

   d. **Riot or civil commotion.**

   e. **Aircraft,** including self-propelled missiles and spacecraft.

   f. **Vehicles.**

   g. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

   h. **Vandalism or malicious mischief.**

   i. **Falling objects.**

   This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

   j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

   k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

   (1) To the system or appliance from which the water or steam escaped;

   (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

   (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

   In this peril, a plumbing system does not include a sump, sump pump or related equipment.

   l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   We do not cover loss caused by or resulting from freezing under this peril.

   m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

   This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

   (1) Maintain heat in the building; or

   (2) Shut off the water supply and drain the system and appliances of water.

   n. **Sudden and accidental damage from artificially generated electrical current.**

   This peril does not include loss to a tube, transistor or similar electronic component.

   o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

   The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

---

## SECTION I – PERILS INSURED AGAINST

**COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage **8.**;

2. Caused by:

█000013

**Copyright, Insurance Services Office, Inc., 1990**      HO 00 03 04 91

a. Freezing of a plumbing, heating, air condition-ing or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoc-cupied or being constructed, unless you have used reasonable care to:

   (1) Maintain heat in the building; or

   (2) Shut off the water supply and drain the system and appliances of water;

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

   (1) Fence, pavement, patio or swimming pool;

   (2) Foundation, retaining wall, or bulkhead; or

   (3) Pier, wharf or dock;

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the con-struction until the dwelling is finished and occu-pied;

d. Vandalism and malicious mischief if the dwell-ing has been vacant for more than 30 consecu-tive days immediately before the loss. A dwell-ing being constructed is not considered vacant;

e. Any of the following:

   (1) Wear and tear, marring, deterioration;

   (2) Inherent vice, latent defect, mechanical breakdown;

   (3) Smog, rust or other corrosion, mold, wet or dry rot;

   (4) Smoke from agricultural smudging or in-dustrial operations;

   (5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes mate-rials to be recycled, reconditioned or re-claimed;

   (6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

   (7) Birds, vermin, rodents, or insects; or

   (8) Animals owned or kept by an "insured."

If any of these cause water damage not other-wise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprin-kler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appli-ance from which this water escaped.

3. Excluded under Section I – Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

## COVERAGE C – PERSONAL PROPERTY

We insure for direct physical loss to the property de-scribed in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust en-ters through this opening.

   This peril includes loss to watercraft and their trail-ers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed build-ing.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of prop-erty from a known place when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. Committed by an "insured";

   b. In or to a dwelling under construction, or of materials and supplies for use in the construc-tion until the dwelling is finished and occupied; or

c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

This peril does not include loss caused by theft that occurs off the "residence premises" of:

a. Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

c. Trailers and campers.

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

## SECTION I – EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

   b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

   (1) Fire;

   (2) Explosion; or

   (3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

   ensues and then we will pay only for the ensuing loss.

   This exclusion does not apply to loss by theft.

   c. **Water Damage,** meaning:

   (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

   (2) Water which backs up through sewers or drains or which overflows from a sump; or

§000015

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I – CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

---

## SECTION I – CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

000016

**g.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

**(1)** The time and cause of loss;

**(2)** The interest of the "insured" and all others in the property involved and all liens on the property;

**(3)** Other insurance which may cover the loss;

**(4)** Changes in title or occupancy of the property during the term of the policy;

**(5)** Specifications of damaged buildings and detailed repair estimates;

**(6)** The inventory of damaged personal property described in **2.e.** above;

**(7)** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

**(8)** Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

**3. Loss Settlement.** Covered property losses are settled as follows:

**a.** Property of the following types:

**(1)** Personal property;

**(2)** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

**(3)** Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**b.** Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

**(1)** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(a)** The limit of liability under this policy that applies to the building;

**(b)** The replacement cost of that part of the building damaged for like construction and use on the same premises; or

**(c)** The necessary amount actually spent to repair or replace the damaged building.

**(2)** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(a)** The actual cash value of that part of the building damaged; or

**(b)** That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**(3)** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(a)** Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

**(b)** Those supports in **(a)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(c)** Underground flues, pipes, wiring and drains.

**(4)** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of **b.(1)** and **b.(2)** above.

However, if the cost to repair or replace the damage is both:

**(a)** Less than 5% of the amount of insurance in this policy on the building; and

**(b)** Less than $2500;

we will settle the loss according to the provisions of **b.(1)** and **b.(2)** above whether or not actual repair or replacement is complete.

■000017

   Copyright, Insurance Services Office, Inc., 1990   HO 00 03 04 91

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

000018

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Nuclear Hazard Clause.**

   **a.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   **b.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

   **c.** This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**15. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**16. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

---

## SECTION II – LIABILITY COVERAGES

**COVERAGE E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

**COVERAGE F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

**1.** To a person on the "insured location" with the permission of an "insured"; or

**2.** To a person off the "insured location," if the "bodily injury":

   **a.** Arises out of a condition on the "insured location" or the ways immediately adjoining;

   **b.** Is caused by the activities of an "insured";

   **c.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   **d.** Is caused by an animal owned by or in the care of an "insured."

---

## SECTION II – EXCLUSIONS

**1. Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   **a.** Which is expected or intended by the "insured";

   **b.** Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

**❚000019**

**Copyright, Insurance Services Office, Inc., 1990**     **HO 00 03 04 91**

c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

  (1) On an occasional basis if used only as a residence;

  (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

  (3) In part, as an office, school, studio or private garage;

d. Arising out of the rendering of or failure to render professional services;

e. Arising out of a premises:

  (1) Owned by an "insured";

  (2) Rented to an "insured"; or

  (3) Rented to others by an "insured";

  that is not an "insured location";

f. Arising out of:

  (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

  (2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

  (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

  This exclusion does not apply to:

  (1) A trailer not towed by or carried on a motorized land conveyance.

  (2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

    (a) Not owned by an "insured"; or

    (b) Owned by an "insured" and on an "insured location";

  (3) A motorized golf cart when used to play golf on a golf course;

  (4) A vehicle or conveyance not subject to motor vehicle registration which is:

    (a) Used to service an "insured's" residence;

    (b) Designed for assisting the handicapped; or

    (c) In dead storage on an "insured location";

g. Arising out of:

  (1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

  (2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

  (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

  Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

  (1) That are not sailing vessels and are powered by:

    (a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

    (b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

    (c) One or more outboard engines or motors with 25 total horsepower or less;

    (d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

    (e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

      (i) You acquire them prior to the policy period; and

        (a) You declare them at policy inception; or

        (b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

      (ii) You acquire them during the policy period.

      This coverage applies for the policy period.

  (2) That are sailing vessels, with or without auxiliary power:

    (a) Less than 26 feet in overall length;

    (b) 26 feet or more in overall length, not owned by or rented to an "insured."

Copyright, Insurance Services Office, Inc., 1990

000020

(3) That are stored;

h. Arising out of:

   (1) The ownership, maintenance, use, loading or unloading of an aircraft;

   (2) The entrustment by an "insured" of an aircraft to any person; or

   (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

   (1) Undeclared war, civil war, insurrection, rebellion or revolution;

   (2) Warlike act by a military force or military personnel; or

   (3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **e.**, **f.**, **g.**, and **h.** do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

**2. Coverage E – Personal Liability,** does not apply to:

a. Liability:

   (1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

   (2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

   (a) That directly relate to the ownership, maintenance or use of an "insured location"; or

   (b) Where the liability of others is assumed by the "insured" prior to an "occurrence";

unless excluded in **(1)** above or elsewhere in this policy;

b. "Property damage" to property owned by the "insured";

c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits:

   (1) Voluntarily provided; or

   (2) Required to be provided;

by the "insured" under any:

   (1) Workers' compensation law;

   (2) Non-occupational disability law; or

   (3) Occupational disease law;

e. "Bodily injury" or "property damage" for which an "insured" under this policy:

   (1) Is also an insured under a nuclear energy liability policy; or

   (2) Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

   (1) American Nuclear Insurers;

   (2) Mutual Atomic Energy Liability Underwriters;

   (3) Nuclear Insurance Association of Canada;

or any of their successors; or

f. "Bodily injury" to you or an "insured" within the meaning of part **a.** or **b.** of "insured" as defined.

**3. Coverage F – Medical Payments to Others,** does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

   (1) Occurs off the "insured location"; and

   (2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**⬛000021**

**b.** To any person eligible to receive benefits:

   **(1)** Voluntarily provided; or

   **(2)** Required to be provided;

  under any:

   **(1)** Workers' compensation law;

   **(2)** Non-occupational disability law; or

   **(3)** Occupational disease law;

**c.** From any:

   **(1)** Nuclear reaction;

   **(2)** Nuclear radiation; or

   **(3)** Radioactive contamination;

  all whether controlled or uncontrolled or however caused; or

   **(4)** Any consequence of any of these; or

**d.** To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

---

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

**1. Claim Expenses.** We pay:

**a.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**b.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

**c.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

**d.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**2. First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

**3. Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

We will not pay for "property damage":

**a.** To the extent of any amount recoverable under Section I of this policy;

**b.** Caused intentionally by an "insured" who is 13 years of age or older;

**c.** To property owned by an "insured";

**d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

**e.** Arising out of:

   **(1)** A "business" engaged in by an "insured";

   **(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

   **(3)** The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

   This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

**4. Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

**a.** "Bodily injury" or "property damage" not excluded under Section II of this policy; or

**b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

   **(1)** The director, officer or trustee is elected by the members of a corporation or association of property owners; and

   **(2)** The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

000022

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

**a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

**b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

**1.** Section II – Coverage E – Personal Liability Exclusion **2.a.(1)**;

**2.** Condition 1. Policy Period, under SECTIONS I AND II – CONDITIONS.

---

## SECTION II – CONDITIONS

**1. Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

**2. Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

**3. Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

**a.** Give written notice to us or our agent as soon as is practical, which sets forth:

  **(1)** The identity of the policy and "insured";

  **(2)** Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

  **(3)** Names and addresses of any claimants and witnesses;

**b.** Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

**c.** At our request, help us:

  **(1)** To make settlement;

  **(2)** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

  **(3)** With the conduct of suits and attend hearings and trials; and

  **(4)** To secure and give evidence and obtain the attendance of witnesses;

**d.** Under the coverage – Damage to Property of Others – submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

**e.** The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

**4. Duties of an Injured Person – Coverage F – Medical Payments to Others.**

The injured person or someone acting for the injured person will:

**a.** Give us written proof of claim, under oath if required, as soon as is practical; and

**b.** Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**5. Payment of Claim – Coverage F – Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

■000023

   **Copyright, Insurance Services Office, Inc., 1990**   HO 00 03 04 91