

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 OCT 24   PM 4:08

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KEITH SCOTT** | * | **CIVIL ACTION: 06-5886** |
| | * | |
| **VERSUS** | * | **JUDGE: SARAH S. VANCE** |
| | * | |
| **STATE FARM FIRE AND CASUALTY** | * | **SECTION: "R"** |
| **COMPANY** | * | |
| | * | **MAGISTRATE: "5"** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN OPPOSITION TO MOTION TO REMAND

**MAY IT PLEASE THE COURT:**

Defendant, STATE FARM FIRE AND CASUALTY COMPANY, who for the purpose of opposing Plaintiff's Motion to Remand, respectfully submits this Memorandum in Opposition to the Motion to Remand this matter from the docket of this Honorable Court to the Civil District Court for the Parish of Orleans, State of Louisiana.

## FACTUAL BACKGROUND

On July 19, 2006, Keith Scott filed this lawsuit against State Farm Fire and Casualty Company in the Civil District Court for the Parish of Orleans, State of Louisiana, bearing case No. 06-6292, Div."C", and entitled *"Keith Scott vs. State Farm Fire and Casualty Company"*

___ Fee_____
___ Process____
_X_ Dktd_____
___ CtRmDep___
___ Doc. No.___

Plaintiffs home is located in the "Gentilly" area of New Orleans, approximately 1.1 miles from the London Avenue Canal and approximately 2.6 miles from the Industrial Canal. This case specifically involves a loss with causation issues of flood water versus wind.

On September 20, 2006, Defendant State Farm Fire and Casualty Company timely removed this matter pursuant to 28 U.S.C. § 1369 and 28 U.S.C. § 1441(e).

On October 10, 2006, Plaintiff Keith Scott filed a Motion to Remand this matter to the Civil District Court. Defendant State Farm Fire and Casualty Company now files this Memorandum in Opposition to Plaintiffs' Motion to Remand, and respectfully submits that the Notice of Removal clearly and specifically shows that subject matter jurisdiction is well-founded upon the existence of jurisdiction under 28 U.S.C. § 1369, which grants federal courts original jurisdiction over any civil action involving minimal diversity between adverse parties that arises from a single accident where at least 75 natural persons have died in the accident at a discrete location; or in the alternative, under 28 U.S.C. § 1441 (e)(1)(b), which provides federal courts with jurisdiction over civil actions removable pursuant to 28 U.S.C. § 1369 where the defendant is a party in another action pending before a United States District Court which was or could have been brought under section 1369 and arises from the same accident.  Moreover, State Farm Fire and Casualty Company has satisfied all procedural requirements for removal.

For the reasons stated herein, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1369 and/or §1441(e).  Therefore, this Honorable Court should deny Plaintiff's Motion to Remand and continue to exercise jurisdiction over this matter.

Defendant respectfully submits this result is clearly dictated by the Multiparty, Multiforum Trial Jurisdiction Act of 2002 (hereinafter referred to as "MMTJA"), as well as the Fifth Circuit decision in *Wallace*, *infra*, construing the MMTJA.  If, however, the Court

concludes that the jurisdictional issues raised here present a close question, Defendants respectfully request that the Court deny Plaintiffs' Motion to Remand without prejudice and certify its ruling for review under 28 U.S.C. § 1292(b) in order to permit the Court of Appeals to clarify any uncertainty.

## LAW AND ARGUMENT

The MMTJA confers this Court with jurisdiction over this case in two different ways. First, the Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1369; making removal proper under both 28 U.S.C. §§ 1441(a) and 1441(e)(1)(A). Second, even if Section 1369 did not apply to this action, removal would still be proper under 28 U.S.C. § 1441(e)(1)(B) because State Farm is also a party to other actions which have been or could have been brought under Section 1369.

**I.     REMOVAL WAS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1369(a).**

Title 28, United States Code, Section 1441(e)(1)(A) specifically provides that a defendant may remove a civil action brought in state court "if … the action could have been brought in a United States district court under section 1369 of this title …." Section 1369 provides, in pertinent part, as follows:

> **Multiparty, multiforum jurisdiction**
> (a) In general.--The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location, if--
>> (1) a defendant resides in a State and a substantial part of the accident took place in another State or other location, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;
>> (2) any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or
>> (3) substantial parts of the accident took place in different States.

28 U.S.C. § 1369(a).

Thus, original federal jurisdiction will lie over an action if each of the following requirements is satisfied:

(1)     there is minimal diversity;

(2)     one of the jurisdictional requirements set out in Section 1369(a)(1)-(3) is met;

(3)     the action arises from a single "accident," as defined in Section 1369(c)(4);

(4)     at least 75 persons died as a result of the "accident"; and

(5)     those deaths occurred at a "discrete location."[1]

Minimal diversity exists in this case because Plaintiff is a citizen of Louisiana and State Farm is a citizen of Illinois.  *See* 28 U.S.C. § 1369(c)(1) ("minimal diversity exists between adverse parties if *any* party is a citizen of a state and *any* adverse party is a citizen of another State") (emphasis added). Plaintiff does not dispute that minimal diversity, or even complete diversity, exists between the parties as defined by 28 U.S.C. § 1369(c).  Nor does plaintiff dispute that this action satisfies one or more of the three jurisdictional criteria set out in Sections 1369(a)(1) through (3).  In fact,  Sections 1369(a)(1) and (3) are both satisfied in this case as State Farm is a resident of Illinois and substantial parts of the accident (*i.e.*, Hurricane Katrina) took place in both Louisiana and Mississippi.

**A. This Action Arises From an "Accident" As Defined By 28 U.S.C. § 1369(c)(4)**

The MMTJA defines "accident" as either (1) "a sudden accident" or (2) "a natural event culminating in an accident."  28 U.S.C. § 1369(c)(4).  Initially, it should be noted that in defining the statutory term "accident," Section 1369(c)(4) uses the term "accident" within the body of the

---

[1] In addition, Section 1369(b) imposes a mandatory abstention requirement, which does not apply here, as discussed *infra*.

definition. To avoid circularity, it must be assumed that Congress intended for the term "accident" as used within the definition to have the ordinary meaning of that term which, when combined with the other parts of the definition, provides a definition of the statutory term "accident" for purpose of the MMTJA. "Accident" is generally defined as "an unintended or unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." Black's Law Dictionary 15 (7th ed. 1999). When the statutory definition is so construed, it is clear that Plaintiffs' lawsuit arises from an "accident" as that term is statutorily defined in at least two different ways.

First, Hurricane Katrina was a statutory "accident" under the second prong of the statutory definition (*i.e.*, "a natural event culminating in an accident"). There can be no dispute that Hurricane Katrina was a "natural event." Neither can there be any dispute that Hurricane Katrina culminated in an untold number of smaller "accidents" within the ordinary meaning of that word (*i.e.*, unintended or unforeseen injurious occurrences) across Louisiana and Mississippi, including the damage to Plaintiffs' residence, flooding throughout St. Bernard Parish, and the failure of the New Orleans flood control system. Certainly the levee breach which caused damage to Plaintiff's residence thus qualifies as an accident under the statute, as it clearly provides the jurisdictional nexus of "a natural event culminating in an accident."

Additionally, the first prong of Section 1369(c)(4)'s definition of the statutory term "accident" (*i.e.*, a "sudden accident") provides a second way to find that this lawsuit arises out of an accident within the meaning of the MMTJA. Under the ordinary meaning of "accident" (*i.e.*, "an unintended or unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated"), there can be little question about the fact that a hurricane qualifies as an "accident." While the meteorological events that gave

rise to Hurricane Katrina may have developed over a brief period of time, there is no doubt that Katrina struck suddenly or that its physical impact upon the Gulf Coast was sudden.

Accordingly, the MMTJA provides a specific definition for the term "accident" as used within 28 U.S.C. §§ 1369 and 1441(e) and Hurricane Katrina falls within that definition.

Furthermore, whether hurricanes are "accidents" as a matter of "blackletter law" is beside the point since Congress has provided a specific definition of the term "accident" for purposes of the MMTJA. Pursuant to the definition of "accident" in Section 1369(c)(4), the jurisdictional provisions of the MMTJA are implicated where an action arises either from (1) a sudden unintended or unforeseen injurious occurrence or (2) a natural event culminating in an unintended or unforeseen injurious occurrence. Hurricane Katrina meets both alternatives of the specific, specialized definition of "accident" provided by the MMTJA. Congress expressly defined "accident" to include a "natural event," and plaintiffs allege their property was destroyed as the result of a natural event, *i.e.*, Hurricane Katrina.[2] Moreover, the terms of the insurance policy upon which plaintiffs base this action specifically provide coverage only for an "accidental direct physical loss." (*See* Exhibit A, Homeowner's Insurance Policy, p. 7). Accordingly, any apparent contention that hurricanes cannot be understood as "accidents" under Section 1369 is potentially self-defeating to plaintiffs' claim.

---

[2] A number of states have expressly recognized that natural disasters are merely one type of "accident." *See Allen v. Simon*, 888 So.2d 1140, 1143-44 (La. Ct. App. 2004) ("An Act of God is an unusual, extraordinary, sudden, and unexpected manifestation of the forces of nature which man cannot resist. The fact that no human agency can resist an Act of God renders misfortune occasioned solely thereby a loss by inevitable *accident* which must be borne by the one upon whom it falls ....") (emphasis added); *see also Brown v. Sandals Resorts Int'l*, 284 F.3d 949, 954 (8th Cir. 2002) ("Under South Dakota law, an act of God is defined as 'any *accident*, due directly and exclusively to natural causes ....'") (emphasis added); *Uniroyal, Inc. v. Hood*, 588 F.2d 454, (5th Cir. 1979) ("Under Georgia substantive law ... an act of God ... is an *accident* caused by physical causes which are irresistible or inevitable ....") (emphasis added); *see also Travelers Ins. Co. v. Randall*, 264 F.2d 1, 2 (5th Cir. 1959) ("An act of God may be defined in a comprehensive definition as any *accident*, due directly and exclusively to natural causes without human intervention ....") (emphasis added). Plaintiffs have provided no basis for their apparent proposition that natural disasters and accidents are mutually exclusive events.

In a recent case, the court declined to treat Hurricane Katrina as an accident within the meaning of Section 1369(c)(4) despite the provision's plain language. *Flint v. La. Farm Bureau Mut. Ins. Co.*, No. 06-2546, 2006 WL 2375593 (E.D. La. Aug. 15, 2006) (Duval, J.). In *Flint*, the only basis for MMTJA jurisdiction asserted by the defendant was the piggy-back removal provision discussed *infra*, 28 U.S.C. § 1441(e)(1)(B). This required the court to determine whether *Flint* arose out of the same statutory accident as the two actions upon which piggy-back jurisdiction was predicated (one of which was *Chehardy*, upon which Defendants here also rely). *See* 2006 WL 2375593, at *2-3. The court reasoned that while Hurricane Katrina was a natural event, the accident that caused the deaths in *Chehardy* was the New Orleans levee breaks in which Hurricane Katrina culminated. *Id.* at *2. Because the *Flint* action did not arise from the levee breaks, the court concluded that it did not arise from the same accident as *Chehardy*.[3] *Id.*

In so holding, the *Flint* court misapplied the plain language of Section 1369(c)(4). The statute clearly defines "accident" as "a natural event culminating in an accident." Thus, the operative occurrence for purposes of the statutory definition is the natural event while the ordinary accident in which it culminates is merely a qualifying characteristic. The statute plainly defines "accident" as "*a natural event culminating in an accident,*" not "an accident resulting *from* a natural event." Accordingly, the ruling in *Flint* ignores the clear implication of the grammatical construction of the definition of the term "accident" as used throughout the MMTJA. A natural disaster such as a hurricane or earthquake is *itself* the occurrence defined as an "accident" for purposes of the statute. If a natural event happens to culminate in a series of separate injurious incidents, then those instances of injury and damage, albeit analytically

---

[3] Similarly, because *Flint* and the other action relied upon by the defendant arose out of the falling of trees at the respective plaintiffs' residences, the court concluded that those actions did not arise out of the same accident. *Flint*, 2006 WL 2375593, at *3.

separate, would nonetheless all arise from the same single "accident" for Section 1369 purposes. Therefore, in the case *sub judice,* the levee breach and subsequent flood damage to plaintiff's residence clearly arise out of an "accident" as contemplated by the MMTJA.

In addition to *Flint*, plaintiff cites *So. Athletic Club, LLC v. Hanover Ins. Co.*, 2006 WL 2583406 (E.D.La.), *Berry v. Allstate Insurance Co.,* 2006 WL 27105888 (E.D.La.) and *Wallace v. Louisiana Citizens Property Insurance Company*, 444 F.3d 697 (5th Cir. 2006), for a blanket conclusion that no court has thus far concluded that Hurricane Katrina is an accident. However, the Courts in *So. Athletic Club, LLC* and *Berry* ignore the plain language of Section 1369(c)(4). Further, in *Wallace*, the Court did not even address the specific issue of whether Hurricane Katrina was an accident.

Further, While Plaintiff continually attempts to limit the application of the MMTJA to "plain crashes, train crashes and night club fires", the jurisdictional inquiry under the plain language of Section 1369 is not so limited.

Moreover, the plain and unambiguous text of Section 1369 imposes no requirement that a given case involve any particular number of plaintiffs or defendants or that it have any legal or factual issues in common with any other pending action. As noted by one commentator, Section 1369 applies, by its own terms, to "any civil action" and its jurisdictional reach is not limited in any way by the type or nature of claim at issue; thus, "section 1369 potentially applies in cases arising out of a qualifying accident but involving neither a risk of duplicate litigation nor good opportunities for consolidated adjudication." Angela J. Rafoth, *Congress and the Multiparty, Multiforum Trial Jurisdiction Act of 2002: Meaningful Reform or a Comedy of Errors?*, 54 Duke L.J. 255, 263-64 (2004) (specifically noting that "a contract suit against or between insurers regarding coverage related to a qualifying accident could come into federal court under section

1369 even absent the kinds of common issues that arise when multiple victims bring separate suits"); *see also* H. Alston Johnson, "Current Topics in Federal Subject Matter Jurisdiction Based on Diversity of Citizenship: 'Minimal Diversity', the Current Meaning of *Erie Railroad v. Tompkins* and Related Issues," pp. 6-7 (June 7, 2006) (specifically contemplating application of MMTJA's jurisdictional provisions to insurance claims arising out of Hurricane Katrina) (attached as Exhibit B).

### B.  Hurricane Katrina Resulted in More Than 75 Deaths at a Discrete Location

Whether Hurricane Katrina is determined to be a "sudden unintended or unforeseen injurious occurrence," "a natural event culminating in an unintended or unforeseen injurious occurrence," or both, it must be found to have resulted in "death incurred at a discrete location by at least 75 natural persons" in order to qualify as an "accident" for purposes of the MMTJA. 28 U.S.C. § 1369(c)(4).[4]  Although an exact number has yet to be determined, according to widely published reports and official statistics, more than 1,300 deaths resulted from Hurricane Katrina.  As early as October 23, 2005, the Louisiana Department of Health and Hospitals had already determined that more than 1,000 Louisiana residents died as a result of Hurricane Katrina.  Coleman Warner & Robert Travis Scott, *Where They Died*, New Orleans *Times-Picayune*, Oct. 23, 2005, at A1, A-14, A-15 (attached as Exhibits C and D).

---

[4] Defendants believe that a proper construction of Section 1369(c)(4) – one which assumes Congress intended to use parallel construction – is that the 75 deaths must result from the statutory accident (*i.e.*, the "sudden accident" or the "natural event").  However, even if the second prong of Section 1369(c)(4)'s definition of "accident" were interpreted to require that the 75 deaths must result from the ordinary accident that is the definitional component of the statutory accident, the requirement would still be met with respect to Hurricane Katrina as the substantial majority of the more than 1,000 deaths caused by Hurricane Katrina were the result of flooding and most of the hundreds of deaths in New Orleans were the result of the breaches of the various levees and canals comprising the city's flood control system.

While it is beyond dispute that Hurricane Katrina resulted in more than 75 deaths, the statute also requires that the requisite number of deaths have occurred "at a discrete location." 28 U.S.C. § 1369(c)(4). "Discrete" is an inherently relative term and only denotes something "individual; separate; distinct." Black's Law Dictionary 479 (7th ed. 1999). As such, the specificity of the term "discrete" is a function of the context and circumstances in which it is used. A natural reading of the term "discrete location" as used in the MMTJA would vary the applicable boundaries of the location based upon the nature and characteristics of the statutory accident at issue. Here, where Hurricane Katrina is the statutory accident, the term "discrete location" should be understood as encompassing the geographic area devastated by the landfall of that storm (*i.e.*, the American Gulf Coast). This location is specific and identifiable to the exclusion of all other geographic areas and its scope is framed by reference to the causative event that necessitates the inquiry (*i.e.*, Hurricane Katrina). Well more than 75 persons died in New Orleans and the coastal areas of Louisiana and Mississippi as a result of Hurricane Katrina.

Nonetheless, even if the Court were inclined to interpret the term "discrete" to require that the requisite number of deaths have occurred in a defined area less than the entire area impacted by the statutory accident, there are various locations that would qualify, including the State of Louisiana, the Eastern District of Louisiana, St. Bernard Parish, Orleans Parish, the City of New Orleans, and/or the Lakeview area of New Orleans between the 17th Street and London Avenue Canals. *See Chehardy v. La. Ins. Comm., et al.*, No. 3:05-CV-1140, Court File No. 188 (M.D. La. March 16, 2006) (holding requirements of § 1369 had been met in case arising from Hurricane Katrina without specifying which discrete location was relied upon) (attached as Exhibit E). The State of Louisiana Department of Health and Hospitals reported that as of February 23, 2006, the St. Gabriel Morgue had processed 887 storm-related deaths. In addition

to summary statistics, this report lists the names and residences of the deceased, with the substantial majority coming from Orleans Parish alone and more than 100 coming from St. Bernard Parish. La. Dept. of Health & Hosps., "Deceased Katrina Victims Released to Families 2-23-2006," *available at* http://www.dhh.louisiana.gov/offices/publications/pubs-192/Deceased%20Victims_2-23-2006_information.pdf (attached as Exhibit F); *see also* La. Dept. of Health & Hosps., "News Release: DHH Reports Katrina-Related Milestones" (Feb. 8, 2006), *available at* http://www.dhh.louisiana.gov/news.asp?ID=1&Detail=796 (attached as Exhibit G) (reporting the total number of deaths by Parish).[5] Focusing on an even more specific geographic area, the graphic attached as Exhibit D indicates that there may have been over 75 deaths just in the Lakeview area located between the 17th Street and London Avenue Canals.

Any of these various discrete locations would suffice to satisfy the MMTJA's gravity threshold. Significantly, neither Section 1369(a) nor Section 1369(c)(4) require that the statutory accident occur at a discrete location, but only that the 75 or more *deaths* occur at a discrete location. Thus, once it is established that the requisite number of deaths occurred at a given discrete location and that those deaths resulted from the statutory accident, the Court would have jurisdiction over any and all civil actions arising out of the same accident irrespective of where the injuries on which those actions were based might have been suffered. Any assertion that the

---

[5] In addition to facts alleged in the Petition, the Court may consider facts that are properly the subject of judicial notice, such as information available on official governmental websites and other information that is generally known and not subject to reasonable dispute. *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of information on government agency's website); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981) ("courts have not hesitated to take judicial notice of agency records and reports"); *J. M. Blythe Motor Lines Corp. v. Blalock*, 310 F.2d 77, 78 (5th Cir. 1962) (state laws and Constitutions); *see also Hall v. Virginia*, 385 F.3d 421, 424, n.3 (4th Cir. 2004) (taking judicial notice of information on Virginia Division of Legislative Services' website); *Wallace v. Federal Emergency Management Agency*, 2001 WL 125316, at *2 (N.D. Cal. Jan. 26, 2001) (taking judicial notice of various publications on the FEMA website).

"discrete location" requirement should be so limited as to the plaintiffs' residence or a particular Parish would be in contradiction with the very purposes of the MMTJA. Consider, for example, a nuclear power plant accident spreading radiation over an urban area or a chemical plant explosion spreading toxic gasses over an urban area. If at least 75 deaths resulted, there would be little question but that these accidents would be of the type that Congress intended to include within the MMTJA. However, an overly narrow construction of the term "discrete location" would preclude the exercise of federal jurisdiction over such cases under the MMTJA.

In light of the general purposes of the MMTJA, the "discrete location" language should be read as requiring only that the accident must occur at an identifiable location. The term "discrete location" means simply that when there is a single incident that causes at least 75 deaths in an identifiable geographic area in a short interval of time. This interpretation ties the temporal and geographic proximities required by the statute to the death threshold, rather than the accident as a whole—§ 1369(a) does not require that the accident occur at a discrete location, but only that 75 or more *deaths* occur at a discrete location, and that plaintiffs individual claims arise out of that same accident.

MMTJA jurisdiction does not depend upon whether the Plaintiffs' claim is related in some way to any of the deaths caused by Hurricane Katrina, nor does it depend upon whether Plaintiffs' claim even arises in the same discrete location as the deaths.[6] Katrina was both a sudden unintended or unforeseen injurious occurrence and a natural event culminating in many unintended or unforeseen injurious occurrences across the Gulf Coast region. Katrina resulted in more than 75 deaths both overall and in specific locales as small as the Lakeview district of New

---

[6] The MMTJA specifically contemplates that a qualifying accident could span multiple judicial districts or states. *See* 28 U.S.C. §§ 1369(a)(3) (providing for jurisdiction where "substantial parts of the accident took place in different States"); 1391(g) (providing for venue "in any district in which … a substantial part of the accident giving rise to the action took place").

Orleans.   There is no dispute that this lawsuit also arises out of Hurricane Katrina, as plaintiffs'

petition admittedly alleges.  Once it is established that the requisite number of deaths occurred at

a given discrete location, the court has jurisdiction over any and all civil actions arising out of the

same accident irrespective of where the damages on which those actions were based might have

been suffered.

Accordingly, federal jurisdiction depends on whether plaintiffs' claims arise from

Hurricane Katrina, not whether the claims arise from the accident in which Hurricane Katrina

culminated, not whether plaintiffs' individual claims are related in some way to the deaths

caused by Hurricane Katrina, and not whether plaintiffs' claims arise in the same discrete

location as the deaths.[7]  Moreover, nowhere is the application of the MMTJA limited to plain

crashes, train crashes or nightclub fires.  There is no basis in the statutory language nor

jurisprudence for imposing such additional requirements upon the jurisdiction granted to federal

courts under 28 U.S.C. § 1369.

One Louisiana district court has exercised MMTJA jurisdiction over insurance litigation

arising out of Hurricane Katrina.  *Chehardy*, No. 3:05-CV-1140, Court File No. 188 (M.D. La.

March 16, 2006) (attached as Exhibit E).  In addition, the Fifth Circuit has impliedly approved of

the exercise of federal jurisdiction under Section 1369 over the *Chehardy* action with the

statutory accident being Hurricane Katrina.  *See Wallace v. La. Citizens Prop. Ins. Corp.*, 444

F.3d 697, 699, 702 (5th Cir. 2006) ("Petitioners contend that they meet the requirements of §

1441(e)(1)(B) because they are parties to a separate class action based on 28 U.S.C. § 1369 ('the

*Chehardy* action') which arises from the same accident (Hurricane Katrina) as the instant case

---

[7] Indeed, the MMTJA specifically contemplates that a qualifying accident could span multiple judicial districts and even states.  *See* 28 U.S.C. §§ 1369(a)(3) (providing for jurisdiction where "substantial parts of the accident took place in different States"); 1391(g) (providing for venue "in any district in which … a substantial part of the accident giving rise to the action took place").

.... § 1441(e)(1)(B) establishes supplemental jurisdiction over the *Wallace* action, piggy-backing jurisdiction on the district court's original jurisdiction under § 1369(a) over the pending *Chehardy* action."). Even though the specific focus of the Fifth Circuit's ruling in *Wallace* related to the application of Section 1369(b)'s mandatory abstention provision, the *ratio decidendi* of the court's decision was that the district court's invocation of the abstention provisions presupposed the existence of subject matter jurisdiction, the absence of which would also have deprived the court of appellate jurisdiction. As such, a finding of Section 1369 subject matter jurisdiction in *Chehardy* was essential to the Fifth Circuit's holding in *Wallace*.

Although plaintiff is correct that upon remand the District Court found that it had no subject matter jurisdiction pursuant to 28 U.S.C. §1369, the Court based its opinion upon the fact that there was no minimal diversity between the parties in *Wallace* as required by §1369(a). (attached as Exhibit H). However, in the present case, minimal diversity exists as is expressly stated in defendant's Notice of Removal - plaintiff is a citizen of and domiciled in the State of Louisiana and defendant is incorporated and has its principal place of business in Illinois and is thus domiciled in the State of Illinois. Accordingly, following the Fifth Circuit's logic in *Wallace*, this Court should find that it has subject matter jurisdiction pursuant to 28 U.S.C. §1369.

### C.   Cases Declining to Find Jurisdiction Under the MMTJA Fail to Consider the Plain Language of the Statute

The best evidence of what Congress intended in enacting a particular statute is the words that it chose to use in the statute itself; courts should not consult legislative history unless the statutory language itself is ambiguous. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 125 S. Ct. 2611, 2625-27 (2005). "[The Supreme Court has] stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what

it says there.  When the words of a statute are unambiguous then, this first canon is also the last: judicial inquiry is complete." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations and internal quotation marks omitted).  That a statute's wording is complex, awkward, or even ungrammatical does not make it ambiguous. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).  "[W]hen the language of the statute is plain, legislative history is irrelevant." *Zedner v. United States*, 545 U.S. 546, 126 S. Ct. 1976, 1990-91 (2006) (Scalia, J., concurring).

Despite the plain language of Section 1369 and without acknowledging any of the aforementioned Supreme Court precedent, some decisions have recently refused to apply it to claims arising out of Hurricane Katrina based on the legislative history of the MMTJA. *See Southall v. St. Paul Travelers Ins. Co.*, No. 06-3848, 2006 WL 2385365, at *5-6 (E.D. La. Aug. 16, 2006) (Barbier, J.) (concluding from legislative history that MMTJA was intended to allow consolidation of cases related to common disaster and holding that MMTJA did not confer jurisdiction over case before court because it was not a large class action and defendants had made no suggestion that case should be consolidated with any other pending litigation); *Hillery v. State Farm Fire & Cas. Co.*, Case No. 2:06-CV-2909, Docket No. 7, pp. 5-8 (E.D. La. July 26, 2006) (Barbier, J.) (attached as Exhibit I); *Willhoft v. Kert Leblanc Ins. Agency, Inc.*, Case No. 2:06-CV-1235, Docket No. 27, pp. 4-5 (E.D. La. July 5, 2006) (Lemmon, J.) (concluding from legislative history and commentary that MMTJA jurisdiction "is not intended to apply to a case where there are not many plaintiffs and many defendants") (attached as Exhibit J); *see also Wallace v. La. Citizens Prop. Ins. Corp.*, Case No. 2:06-CV-114, Docket No. 58, p. 4 (E.D. La. June 7, 2006) (Livaudais, J.) (rejecting MMTJA argument out of hand based solely on general "presumption against federal subject matter jurisdiction") (attached as Exhibit K).  However, as noted previously, the plain and unambiguous text of Section 1369 imposes no requirement that a

given case involve any particular number of plaintiffs or defendants or that it have any legal or factual issues in common with any other pending action. As one commentator has noted:

> "The MMTJA could include a class action, but it is not limited to class actions. In theory, at least, it could apply to an action by a single plaintiff against two defendants, one of diverse citizenship from the plaintiff and one not—so long as the other requisites of the statute are satisfied."

Johnson, "Current Topics in Federal Subject Matter Jurisdiction", page 9.

While jurisdictional statutes are to be strictly construed, they must still be applied in accordance with their plain language. The unambiguous jurisdictional requirements of Section 1369 are all satisfied in this case; whether or not Congress contemplated the application of the MMTJA to this sort of action is entirely beside the point. Indeed, in holding that the plain language of 28 U.S.C. § 1367 overruled prior Supreme Court pendent party jurisdiction case law, the Supreme Court refused to consider and/or give weight to legislative history specifically disclaiming any intent to accomplish such a result. *Exxon*, 125 S. Ct. at 2625-27.

In summary, the Court has original jurisdiction over this case because (1) there is minimal diversity; (2) the differing residences of the two defendants satisfies Section 1369(a)(2); (3) the case arises from Hurricane Katrina; (4) Hurricane Katrina is an "accident" within the meaning of the MMTJA; and (5) Katrina resulted in at least 75 deaths at a discrete location whether that discrete location is deemed to be the American Gulf Coast states, Louisiana, the Eastern District of Louisiana, St. Bernard Parish, New Orleans, Orleans Parish, or Lakeview. Accordingly, removal was proper under both 28 U.S.C. § 1441(a) and § 1441(e)(1)(A).

### D.      The MMTJA's Mandatory Abstention Provision Does Not Apply

Plaintiffs contend that even if jurisdiction exists over this case under Section 1369(a), the mandatory abstention provision in Section 1369(b) requires the Court to abstain from exercising that jurisdiction. (Court File No. 7, p. 9). Section 1369(b) provides as follows:

> **Limitation of jurisdiction of district courts.**—The district court shall abstain
> from hearing any civil action described in subsection (a) in which—
> (1) the substantial majority of all plaintiffs are citizens of a single State of which
> the primary defendants are also citizens; and
> (2) the claims asserted will be governed primarily by the laws of that State.

28 U.S.C. § 1369(b).   Section 1369(b) has been unanimously interpreted as a mandatory

abstention provision which operates as a limitation on the exercise of the original jurisdiction

conferred by Section 1369(a) rather than a limitation on Section 1369(a)'s jurisdictional grant

itself. *See Wallace*, 444 F.3d at 701; *Passa v. Derderian*, 308 F. Supp. 2d 43, 56-57 (D.R.I.

2004).   This distinction is significant in that it places the burden of proof on the party advocating

abstention, here, Plaintiffs. *See Passa*, 308 F. Supp. 2d at 55; *see also Northern Natural Gas Co.*

*v. Sheerin*, No. SA-03-CA-304-RF, 2003 WL 22594457, at *6 (W.D. Tex. Oct. 20, 2003) ("The

party seeking abstention bears the burden of establishing that abstention is proper.  Abstention

should be narrowly construed and exercised cautiously." (footnotes omitted)).

Section 1369(b) does not require the Court to abstain from exercising jurisdiction over

this case for at least two reasons.  First, Section 1369(b)(1), the first requirement for abstention,

is not satisfied.  Although the plaintiff is a citizen of Louisiana, State Farm, the primary

defendant, is not a citizen of that State.  Section 1369(b)(1) requires that *all* of the primary

defendants reside in the same state as the substantial majority of the plaintiffs. *See Passa*, 308 F.

Supp. 2d at 61 ("§ 1369 does not require this court to abstain if any *one* of the so-called 'primary

defendants' is from a state other than Rhode Island") (emphasis in original). Since State Farm is

the only defendant in this case, Section 1369(b)(1) is not satisfied and abstention is not required.

## II.   REMOVAL WAS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1441(e)(1).

Section 1369(a) is not the only avenue to federal jurisdiction for a case arising out of a

disaster like Hurricane Katrina.  Another provision of the MMTJA explicitly permits litigants to

remove cases over which the federal courts would not otherwise have jurisdiction based upon their mere presence as a party in another case satisfying the requirements of Section 1369(a) and arising from the same statutory accident. Specifically, 28 U.S.C. § 1441(e) provides, in part:

> (1) Notwithstanding the provisions of subsection (b) of this section, a defendant in a civil action in a State court may remove the action to the district court of the United States for the district and division embracing the place where the action is pending if:--
>
> > (A) the action could have been brought in a United States district court under section 1369 of this title; or
> > (B) the defendant is a party to an action which is or could have been brought, in whole or in part, under section 1369 in a United States district court and arises from the same accident as the action in State court, even if the action to be removed could not have been brought in a district court as an original matter.

Of note, Section 1441(e)(1)(B) does not require that the case upon which removal is premised have been brought or removed on the basis of Section 1369(a), only that it "could have been" so brought. Therefore, so long as a defendant is a party to an action which falls within the jurisdictional scope of Section 1369(a), that defendant may remove any other action arising from the same statutory accident to which it is also a party irrespective of otherwise applicable restrictions on federal jurisdiction. *See Wallace*, 444 F.3d at 702.

Although numerous actions exist upon which State Farm could premise removal of this action under Section 1441(e)(1)(B),[8] State Farm's Notice of Removal relies on *Chehardy v. Wooley, et al.*, Nos. 05-1140, 05-1163 (M.D. La.) (subsequently transferred to E.D. La.). The *Chehardy* action was specifically removed from state court on the basis of the original federal jurisdiction provided by Section 1369 and the *Chehardy* court held that the jurisdictional requirements of Section 1369 had been met in that case. *Chehardy*, No. 3:05-CV-1140, Court

---

[8] *See, e.g., Chauvin v. State Farm Fire & Cas. Co.*, No. 2:05-CV-6454 (E.D. La.); *Williams v. State Farm Fire & Cas. Co.*, No. 2:06-CV-0177 (E.D. La.).

File No. 188 (M.D. La. March 16, 2006) (attached as Exhibit E). While nothing in the MMTJA binds this Court to that decision, principles of judicial comity dictate that the Court defer to the *Chehardy* court's ruling as to its own jurisdiction. Even if the Court were to conclude that Section 1369(a) does not apply to the instant action, the Court still has jurisdiction so long as the *Chehardy* action is subject to Section 1369(a).

In order for Section 1441(e)(1)(B) to apply, the Court need only find that *Chehardy* is subject to Section 1369 and that both cases arise from the same "accident" as that term is defined in Section 1369(c)(4). The same specific injurious occurrence need not have caused the harm complained of in both cases. So long as both cases arise from the same natural event or other statutory accident, and the other case meets the other requirements of Section 1369(a), this Court has removal jurisdiction. *See Wallace*, 444 F.3d at 702 (in allowing removal in situations where original federal jurisdiction does not exist, "§ 1441(e)(1)(B) establishes supplemental jurisdiction over the *Wallace* action, piggy-backing jurisdiction on the district court's original jurisdiction under § 1369(a) over the pending *Chehardy* action").

This case specifically involves a loss with causation issues of flood water versus wind that is consistent with the issues to be decided in *Chehardy* under Louisiana's Value Policy Law (VPL), LSA RS 22:695. This claim, like the *Chehardy* action, involves one common disaster with identical issues regarding insurance coverage.

Significantly, Section 1441(e)(1)(B) does not require any common legal or factual issues beyond the simple fact that both cases arise from the same accident as defined by Section 1369(c)(4) and involve a common defendant, *see Wallace*, 444 F.3d at 699, 702, and courts may

ALB 8950061                                    19

not engraft any further commonality requirement on MMTJA removal jurisdiction not found in the plain language of the statute. *See Exxon*, 125 S. Ct. at 2625-27.[9]

III.   **IF THE COURT DETERMINES THAT THE JURISDICTIONAL ISSUES PRESENT A CLOSE QUESTION, IT WOULD BE APPROPRIATE TO DENY THE MOTION TO REMAND AND CERTIFY SUCH ORDER FOR INTERLOCUTORY APPEAL**

For the reasons discussed above, Defendants believe that it is clear that there is jurisdiction under the MMTJA, particularly in light of the Fifth Circuit's decision in *Wallace*. Should the Court consider the jurisdictional issues to present a close question, however, Defendants respectfully suggest that this Court should deny the motion to remand without prejudice to renewal at a later time and certify the order for immediate appeal under 28 U.S.C. § 1292(b). This would permit the Fifth Circuit to clarify any aspect of these issues as to which the Court believes there is any uncertainty. There can be no question that the jurisdictional issue is a "controlling question of law" whose resolution may materially advance the ultimate termination of the litigation. *Id.* Accordingly, if the Court finds there to be "a substantial ground for difference of opinion," certification for appeal would be appropriate.

The Fifth Circuit has recognized that jurisdictional issues raised in remand motions may warrant review under Section 1292(b). In *Rainwater v. Lamar Life Ins. Co.*, 246 F. Supp. 2d 546 (S.D. Miss. 2003), the district court initially granted the plaintiffs' motion to remand, and the defendants moved to reconsider pursuant to Rule 59(e). *Id.* at 548. Upon further consideration, the district court granted the defendants' motion to reconsider and denied the plaintiffs' motion to remand. The district court also certified the order to the Fifth Circuit pursuant to Section 1292(b) finding the jurisdictional issue to be a controlling question of law as to which there was

---

[9] Similarly, although in many circumstances cases subject to MMTJA jurisdiction may be appropriate for consolidation, nothing in the statute makes susceptibility to consolidation a requirement for jurisdiction.

a substantial ground for difference of opinion. *Id.* at 553. The Court of Appeals accepted the interlocutory appeal, thereby recognizing the importance of resolving the jurisdictional issue. *See Rainwater v. Lamar Life Ins. Co.*, 391 F.3d 636, 638-39 (5th Cir. 2004).[10]

## CONCLUSION

Defendant, State Farm Fire and Casualty Company has conclusively established that federal subject matter jurisdiction exists over this matter under the provisions of 28 U.S.C. § 1332, 28 U.S.C. § 1369(a) and 28 U.S.C. § 1441(e)(1). Therefore, removal of this matter from the docket of the 22nd Judicial District Court for the Parish of St. Bernard, State of Louisiana, to the docket of the United States District Court for the Eastern District of Louisiana, was proper pursuant to the provisions of 28 U.S.C. 1441 et seq. and 28 U.S.C. 1446 et seq.

Alternatively, if the Court considers the jurisdictional issues to present close questions, Defendants request that the Court deny Plaintiffs' motion to remand without prejudice and certify this case for interlocutory appeal to the Fifth Circuit pursuant to 28 U.S.C. § 1292(b). Should the Court deny Defendants' motion for leave to amend their notice of removal and/or grant Plaintiffs' remand motion, Defendants request that the Court stay the effect of that Order so that Defendants may consider and/or pursue appellate review.

---

[10] After an intervening en banc decision of the Fifth Circuit decided the principal jurisdictional issue in dispute, the Court of Appeals dismissed the interlocutory appeal and remanded the case to the district court with instructions as to issues that would need to be resolved in light of the new authority. *Rainwater*, 391 F.3d at 638-39.

Respectfully submitted:

JAMES R. NIESET, JR. (#24856)
HOY R. HUGHES (#26932)
PORTEOUS, HAINKEL & JOHNSON, LLP
704 Carondelet Street
New Orleans, LA 70130
Telephone: (504) 581-3838
**ADRIANNE L. BAUMGARTNER (#2861)**
**NORMAN F. HODGINS III (#29909)**
PORTEOUS, HAINKEL & JOHNSON, LLP
408 N. Columbia Street
P. O. Box 2086
Covington, LA  70434-2086
Telephone:  (985) 893-4790
*Attorneys for State Farm Fire & Casualty Co.*

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 24 day of October, 2006, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing same by United States mail, properly addressed, and first class postage prepaid.

JAMES R. NIESET, JR.
HOY R. HUGHES