✓ Entered rule docket
__ Postcard mailed
✓ Service copies to sheriff
__ Insufficient copies

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2004-17143          DIVISION "F"          SECTION 10

BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT

VERSUS

CITY OF NEW ORLEANS, BY AND THROUGH THE NEW ORLEANS PUBLIC BELT RAILROAD COMMISSION, CSX TRANSPORTATION, INC., AND THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY

FILED:_____          _____
                                              DEPUTY CLERK

## MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes the Public Belt Railroad Commission for the City of New Orleans, (the "Public Belt"), defendant herein, who respectfully moves this Court for summary judgment on the demand of the plaintiff, The Board of Commissioners of the Orleans Levee District, on the grounds that, based upon the pleadings, the Statement of Uncontested Material Facts, the Affidavit of Jim Bridger, and Attachments A, B, C, D and E thereto, and the accompanying memorandum, all of which are adopted by reference and made a part hereof, there is no genuine issue of material fact herein, concerning whether the plaintiff and the defendant Public Belt have compromised and settled the plaintiff's demand.

WHEREFORE, defendant, the Public Belt Railroad Commission for the City of New Orleans, prays that summary judgment be entered herein in its favor, dismissing the Petition of the plaintiff, with prejudice, at plaintiff's costs.

Defendant prays for such other and further relief as may be equitable under the circumstances.

Respectfully submitted,

HAMILTON, BROWN & BABST, LLC

_____
GALEN S. BROWN, T.A. (#3556)
KAREN E. MILNER (#8499)
Pan American Life Center
601 Poydras Street, Suite 2750
New Orleans, Louisiana 70130
Telephone: (504) 566-1805
Facsimile: (504) 566-1569
Email: gbrown@hamiltonfirm.net
Attorneys for Defendant, Public Belt
Railroad Commission for the City of
New Orleans

EXHIBIT 4

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on all counsel of record by depositing a copy, properly addressed and postage prepaid, in the United States Mail, this 7th day of ~~August,~~ September 2006.

_____
GALEN S. BROWN

## ORDER

Considering the foregoing Motion for Summary Judgment,

**IT IS ORDERED** that the plaintiff, the Board of Commissioners of the Orleans Levee District, show cause on the 27th day of October, 2006, at 7:00 o'clock A.m. why the Motion for Summary Judgment of the Defendant, the Public Belt Railroad Commission for the City of New Orleans, should not be granted.

New Orleans, Louisiana, this 7th day of September 2006.

_____
JUDGE

Carla Scott-Robinson
Minute Clerk, Division "F"
By Order of the Court

SEP 1 3 2006
ENTERED ON MINUTES

**PLEASE SERVE:**

Plaintiff Board of Commissioners of the
Orleans Levee District
through its counsel of record:
Gerard G. Metzger
or
Catherine M. Lalla
or
Gwendolyn M. Hanhart
829 Baronne Street
New Orleans, Louisiana 70113

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2004-17143    DIVISION "F"    SECTION 10

BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT

VERSUS

CITY OF NEW ORLEANS, BY AND THROUGH THE NEW ORLEANS PUBLIC BELT RAILROAD COMMISSION, CSX TRANSPORTATION, INC., AND THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY

FILED:_____    _____
                                    DEPUTY CLERK

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT, THE PUBLIC BELT RAILROAD COMMISSION FOR THE CITY OF NEW ORLEANS

I.  STATEMENT OF THE CASE

The plaintiff herein, The Board of Commissioners of the Orleans Levee District (the "Levee Board"), filed this action on December 3, 2004, seeking to recover reasonable money damages in compensation for the damage allegedly caused to Floodgate W-30 and its support system (part of the flood wall system immediately west of the Industrial Canal in New Orleans) by the derailment of a train on September 11, 2004. See the Levee Board's Petition, paras. IV and V. Defendants herein are CSX Transportation, Burlington Northern and Santa Fe Railway Company, and the defendant-mover, the Public Belt Railroad Commission for the City of New Orleans, improperly referred to in the plaintiff's Petition as "the City of New Orleans, by and through the Public Belt Railroad Commission," and referred to hereafter as the "Public Belt."

The Levee Board has the statutory responsibility to develop, construct and maintain flood control systems and structures within the City of New Orleans, including but not limited to, levees, flood walls and floodgates. Levee Board's Petition, para. III; Statement of Undisputed Material Facts, §3. Floodgate W-30 and its support structure are part of the flood control system under the authority, control and administration of the Levee Board. Petition, para. IV; Statement of Undisputed Material Facts, §4.

On December 14, 2004, Jim Bridger, the General Manager of defendant-mover, the Public Belt, transmitted a Public Belt check in the amount of $427,387.96 by hand-delivery to Max Hearn, Executive Director of the Levee Board, in full payment of the Levee Board's estimated costs to reconstruct Floodgate W-30 and its support structure. Bridger Affidavit, § 6. The check is Attachment "A" to Mr. Bridger's Affidavit, and Mr. Bridger's December 14, 2004 letter of transmittal to Mr. Hearn is Attachment "B" to Mr. Bridger's Affidavit.

The amount of the Public Belt's payment is in accordance with the Levee Board's own "Estimated Cost to Reconstruct Floodgate W-30." Bridger Affidavit, § 7; Statement of Uncontested Material Facts, §7. That estimate was faxed by the Levee Board to the Public Belt on December 10, 2004, and it is Attachment "C" to Mr. Bridger's Affidavit. Affidavit, § 7; Statement of Uncontested Material Facts, § 7.

Prior to transmitting the $427,387.96 check to the Levee Board, Mr. Bridger, the General Manager (Chief Executive Officer) of the Public Belt, and Mr. Hearn, Executive Director of the Levee Board, had a telephone conversation wherein they agreed that, in full satisfaction of the Levee Board's claim in the principal demand herein, the Public Belt would pay the $427,387.96 estimated by the Levee Board to be the cost to reconstruct Floodgate W-30 and its support system. Bridger, Affidavit, § 10; Statement of Uncontested Material Facts, §9. The two agency heads further agreed that if the actual costs were greater than that, the Public Belt would pay the difference between the actual costs of the repairs and the estimated costs; on the other hand, if the actual costs were less than the estimated costs, the Levee Board would refund the difference. Bridger Affidavit, § 10; Statement of Uncontested Facts, § 9.

In accordance with the verbal agreement between the two agency Chief Executive Officers on behalf of their respective agencies, Mr. Bridger's December 14, 2004 letter, by which the check was transmitted in full payment of the estimated costs of reconstructing Floodgate W-30 and its support structure, states in part:

> Realizing that this is indeed an "estimate", the New Orleans Public Belt Railroad will process an additional check, if need be, for the difference if the repairs to the floodgate exceed this amount. Likewise, the Public Belt Railroad would appreciate a refund should any monies remain after the repairs are made.

*Id.*, Attachment "B" to Mr. Bridger's Affidavit.

On December 15, 2004, the day after the check in full payment of the estimated cost of reconstructing Floodgate W-30 and its support system was transmitted to the Levee Board by the Public Belt, Gerard A. Metzger, attorney of record for the Levee Board herein, wrote a letter to Mr. Bridger. Bridger Affidavit, § 11. Mr. Metzger's letter is Attachment "E" to Mr. Bridger's Affidavit. Mr. Metzger's letter states, in pertinent part:

> . . . the Levee District is amenable to maintaining the referenced litigation [the instant action] in suspense pending final competition of repairs to the flood wall and floodgate structure.

Id., Attachment "E" to Bridger Affidavit; Statement of Uncontested Material Facts, § 11.

The repairs to the floodwall, to Floodgate W-30, and to the floodgate structure have been completed, and the Levee Board has made no request to the Public Belt for payment of the costs of repairs in addition to the $427,387.96 already paid. Bridger Affidavit, § 13; Statement of Uncontested Facts, §12.

-2-

The Levee Board's claim in the main demand herein has been fully compromised and paid, and the defendant-mover, Public Belt, is entitled to summary judgment, dismissing the Levee Board's action with prejudice.[1]

## II. STATEMENT OF UNCONTESTED MATERIAL FACTS

1. On September 11, 2004, rail cars in a train operated by Public Belt employees derailed near the Industrial Canal in New Orleans, Louisiana. Affidavit of Jim Bridger, General Manager of the Public Belt (hereafter, "Bridger Affidavit"), § 3.

2. At least one of the derailed cars struck and damaged Flood Gate W-30 and the flood gate support system, causing damage to the structure. Bridger Affidavit, § 4; Plaintiff's Petition, para. V.

3. The Board of Commissioners of the Orleans Levee District (the "Levee Board"), the plaintiff herein, has the statutory responsibility to develop, construct and maintain flood control systems within the City of New Orleans, including but not necessarily limited to, levees, flood walls and flood gates. Plaintiff's Petition, para. III.

4. Included within the flood control system under the authority, control and administration of the Levee Board is Flood Gate W-30, part of the flood wall system immediately west of, and running in a north-south direction parallel to, the Industrial Canal just north of the Interstate 10 Highrise. Plaintiff's Petition, para. IV.

5. The Levee Board filed the Petition in the instant suit on December 3, 2004, but the Citation and Petition were not served on the Public Belt until January 31, 2005. See, Petition herein, and return on service of citation and petition on the Public Belt.

6. On December 14, 2004, before the Levee Board's Petition was served upon the Public Belt, the Public Belt hand-delivered a check in the amount of $427,387.96 to Max Hearn, the Executive Director of the Levee Board, at the Levee Board office. The Public Belt's check is Attachment "A" to Mr. Bridger's Affidavit.[2] The Public Belt check was thereafter deposited into the Levee Board's account at the Whitney National Bank, as indicated on the back of the check. A copy of Mr. Bridger's December 14, 2004, letter of transmittal to Mr. Hearn is Attachment "B" to Mr. Bridger's Affidavit. Bridger Affidavits, §s 5 and 6.

---

[1] Quite recently, on July 31, 2006, a number of persons filed a Petition For Intervention herein, seeking to recover from the plaintiff, Levee Board, and from all three defendants herein, "any and all damages which resulted from the flooding through the damaged and/or missing floodgate near the Industrial Canal in Gentilly during Hurricane Katrina, . . ." Petition For Intervention, para. III (2). The intervenors have filed their intervention on behalf of a purported class of similarly situated persons, businesses and individuals. *Id.*, para. III (1).

The intervenors have no right of action to intervene in the instant action. Among other deficiencies, the intervenors' claims lack the connexity to the main demand that is required for an intervention. See, *e.g.*, *Leger v. Kent*, 2001-2241 (La. App. 4 Cir. 4/24/02), 817 So.2d 305, 307-308. This is particularly true where, as here, an intervention seeks to convert an ordinary action into a class action. *Leger v. Kent*, at 308-309 ("Intervention was never intended to permit an intervenor to hijack an unrelated plaintiff's claim that is similar in nature and convert the claim to a class action.")

Thus, contemporaneous with the filing of this Motion for Summary Judgment on the Levee Board's main demand, the defendant Public Belt has filed a Peremptory Exception of No Right of Action, and No Right of Action to the Use of a Class Action, to the Petition For Intervention, seeking its dismissal.

[2] A copy of the front and back of the check is attached hereto. The check itself will be introduced in evidence at the hearing on the summary judgment motion.

7. The Levee Board prepared an "Estimated Cost to Reconstruct Floodgate W-30," showing the estimated costs of such repairs to be $427,387.96. That estimate is Attachment "C" to Mr. Bridger's affidavit. Bridger Affidavit, § 7.

8. On December 10, 2004, the claims manager of the Public Belt, John Morrow, wrote an interoffice memorandum to the Public Belt Accounting Department, requesting the issuance of a check in the amount of $427,387.96, payable to the Orleans Levee Board, "to reimburse the Board for damage to the Floodgate W-30 by the NOPB derailment on September 11, 2004." Bridger Affidavit, § 8. That December 10, 2004 interoffice memorandum is Attachment "D" to Mr. Bridger's Affidavit.

9. In a telephone conversation prior to Mr. Bridger's December 14, 2004 letter to Mr. Hearn, Mr. Bridger and Mr. Hearn, acting on behalf of their respective organizations, agreed that in full satisfaction of the Levee Board's claim for damage to Floodgate W-30, the floodwall and the floodgate support system, the Public Belt would pay the $427,387.96 estimated by the Levee Board as the cost to reconstruct Floodgate W-30 and the floodgate support system. Mr. Bridger and Mr. Hearn further agreed, on behalf of their respective organizations, that if the actual costs were greater than that, the Public Belt would pay the difference between the actual amount and the estimated costs; and on the other hand, if the actual costs were less than the estimated costs, the Levee Board would refund the amount of the difference to the Public Belt. Bridger Affidavit, § 10.

10. Mr. Bridger's December 14, 2004, letter to Mr. Hearn (Attachment "B" to Mr. Bridger's Affidavit) transmitting the $427,387.96 check stated, in part: "Realizing that this is indeed an 'estimate', the New Orleans Public Belt Railroad will process an additional check, if need be, for the difference if the repairs to the floodgate exceed this amount. Likewise, the Public Belt Railroad would appreciate a refund should any monies remain after the repairs are made." Id., Attachment "B" to Mr. Bridger's Affidavit, p.1.

11. The next day, December 15, 2004, Gerard A. Metzger, counsel for the plaintiff, Levee Board, herein, wrote a letter to Mr. Bridger. Mr. Metzger's December 15, 2004 letter to Mr. Bridger is Attachment "E" to Mr. Bridger's Affidavit. Bridger Affidavit, § 11. Mr. Metzger's letter states, in part: ". . . the Levee District is amenable to maintaining the referenced litigation in suspense pending final completion of repairs to the flood wall and floodgate structure."

12. The repairs to the floodwall, to Flood Gate W-30, and to the floodgate structure have been completed, and the Levee Board has made no request to the Public Belt for payment of the cost of repairs in addition to the $427,387.96 already paid by the Public Belt to the Levee Board for that purpose. Bridger Affidavit, § 13.

III. STANDARD FOR DETERMINATION OF MOTIONS FOR SUMMARY JUDGMENT

Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Louisiana Code of Civil Procedure Article 969. LSA-C.C.P. Art. 966(A)(2). Summary judgment procedure is favored in Louisiana. *Spicer v. Louisiana Power & Light Co.*, 97-2406 (La. App. 4 Cir. 4/8/98); 712 So.2d 226. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966(B); *Taylor v. Rowell*, 98-2865 (La. 5/18/99), 736 So.2d 812, 814.

La. C.C.P. Art. 966(C)(2), enacted in 1997, places the burden of producing evidence at the hearing on the motion for summary judgment on the moving party (normally, as here, a defendant) who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (typically, as here, the plaintiff) must come forth with evidence which demonstrates his or her ability to meet the burden at trial. *Babin v. Winn-Dixie, Inc.*, 00-0078 (La. 6/30/00), 764 So.2d 37, 39-40, citing Maraist and Lemmon, *Louisiana Civil Law Treatise: Civil Procedure*, § 6.8 (1999). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute <u>mandates</u> the granting of the motion. *Babin, supra; Hardy v. Bowie*, 98-2821 (La. 09/08/99), 744 So.2d 606; *Hayes v. Autin*, 96-287 (La. App. 3d Cir. 12/26/96), 685 So.2d 691, *writ denied*, 97-0281 (La. 03/14/97), 690 So.2d 41.

Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be viewed only in light of the substantive law applicable to the case. *Davis v. AMC Tube Corporation*, 00-1311 (La. App. 1st Cir. 6/22/01), 801 So.2d 466, 468; *Strain v. Williams*, 01-2157 (La. App. 1st Cir. 9/27/02), 835 So.2d 618, 621.

IV. ARGUMENT

The documents and evidence submitted in support of this Motion for Summary Judgment, including the pleadings (particularly, the Levee Board's Petition), Mr. Bridger's Affidavit, and the documents attached to Mr. Bridger's Affidavit, demonstrate that the Public Belt and the Levee Board entered into an agreement whereby, in full satisfaction of the Levee Board's claim, the Public Belt agreed to, and did, pay the full amount of the Levee Board's estimated costs of reconstructing Floodgate W-30 and its support structure. The Public Belt and the Levee Board further agreed that if the actual costs of such reconstruction exceeded the estimated costs, the Public Belt would pay the difference, and if, on the other hand, the actual costs were less than the estimate, the Levee Board would refund the difference to the Public Belt. The reconstruction work has

been completed, and the Levee Board has made no request to the Public Belt for payment of costs in addition to the $427,387.96 the Public Belt has already paid. Thus, the Agreement of the parties has been performed, and the defendant is entitled to summary judgment, dismissing the Levee Board's claim, with prejudice.

The agreement between the Public Belt and the Levee Board is a "transaction or compromise," as defined by Civil Code Article ("C.C. Art.") 3071. C.C. Art. 3071 provides:

> Art. 3071. Transaction or compromise, definition
>
> A *transaction* or *compromise* is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
>
> This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.

The article itself requires that a settlement agreement must be in writing (unless it is recited in open court). However, it is well settled that the requirement that the compromise agreement must be in writing does not mean that the agreement must be contained in one document. See, e.g., *Felder v. Georgia Pacific Corp.*, 405 So.2d 521, 524 (La. 1981) ("[W]here two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement has been perfected.").

It is also well established that the creditor payee's execution and negotiation of a check constitutes acceptance of the offeror's terms of settlement of the claim which were transmitted together with the check. *F&S Enterprises, Inc. v. Cure*, 96-729 (La. App. 4 Cir. 3/12/97), 690 So.2d 263, 265 ("Upon his negotiating that check, plaintiff accepted those terms. . . . the act of cashing the check itself comprises acceptance of defendant's offer"). See also *Anesthesia East, Inc. v. Bares*, 594 So.2d 1085, 1087 (La. App. 4 Cir. 1992) and *Jerome v. Duggan*, 609 So.2d, 1119, 1124-25 (La. App. 2 Cir. 1992).

In his Affidavit, Jim Bridger, General Manager of the Public Belt, states that he and Max Hearn, Executive Director of the Levee Board, verbally agreed to the terms of a settlement of the Levee Board's claim for damage to Floodgate W-30, the floodgate support system, and the floodwall. The terms of the settlement were that the Public Belt would pay $427,387.96, the full amount of the Levee Board's estimated cost of repairs, to the Levee Board. Further, if the actual costs were greater than the estimate, the Public Belt would pay the difference between the actual amount and the estimated costs; on the other hand, if the actual costs were less than the estimated costs, the Levee Board would refund the amount of the difference to the Public Belt. Bridger Affidavit, § 10.

Mr. Bridger subsequently restated the terms of the settlement agreement in writing in his December 14, 2004 letter to Mr. Hearn transmitting the Public Belt's check

for payment of the full amount of the estimated costs. Bridger Affidavit, § 9, and the December 14, 2004 letter, Attachment "B" to the Bridger Affidavit. The Levee Board deposited the check in its account in the Whitney National Bank. See, reverse side of the check, Attachment A to Mr. Bridger's Affidavit.

Pursuant to the decisions cited above, Mr. Bridger's December 14, 2004 letter transmitting the check constituted a written offer to settle the Levee Board's claim upon the terms set forth in the letter (and stated above). The Levee Board's endorsement and negotiation of the Public Belt's check constituted acceptance by the Levee Board of the terms of Mr. Bridger's letter for settlement in full of the Levee Boards' claims in the action. *F & S Enterprises v. Cure, supra, Anesthesia East, Inc. v. Bores, supra, Jerome v. Duggan, supra.*

The December 15, 2004 letter from Gerard A. Metzger, counsel of record for the Levee Board in this action, constitutes a further written acceptance on behalf of the Levee Board of the terms of Mr. Bridger's letter. Mr. Metzger's letter is Exhibit "E" to Mr. Bridger's Affidavit. Therein, Mr. Metzger acknowledged receipt of the Public Belt's payment in full of the Levee Board's estimated cost of repair of the floodgate and the floodgate support system, and further stated that "the Levee District is amenable to maintaining the referenced litigation in suspense pending final completion of repairs to the floodwall and floodgate structure." *Id.*

Letters or other writings signed by an attorney on behalf of a party are sometimes deemed to be inadequate to constitute the written agreement required by C.C. art. 3071. See, e.g., *Lizama v. Williams*, 99-1040 (La. App. 5 Cir. 2000), 759 So. 2d 865. However, in *Parich v. State Farm Mutual Automobile Insurance Co.*, 919 F.2d 906 (5th Cir. 1990) (applying Louisiana law), the Court found an exchange of letters between the attorneys for the parties to constitute the terms of a "transaction and compromise" agreement pursuant to C.C. art. 3071, even in the absence of the signature of the claimants. *Id.*, at 913-914. The Court noted, among other things, that the claimants had accepted a $15,000 payment from the defendants pursuant to the terms of the letters exchanged between the parties' respective attorneys. *Id.* at 915.

The facts of the instant case are analogous to those of the *Parich* case, in that here, the claimant, the Levee Board, accepted and negotiated the Public Belt's payment in accordance with the terms of the letters exchanged between Mr. Bridger and Mr. Metzger. There is an enforceable written agreement between the Public Belt and the Levee Board. The Levee Board's action in endorsing and negotiating the check, by itself, is sufficient to constitute acceptance of the term of compromise set forth in Mr. Bridger's letter. Those actions by the Levee Board, coupled with Mr. Metzger's letter, make it crystal clear that the parties entered a written, enforceable compromise agreement pursuant to C.C. Art. 3071.

The Public Belt paid the estimated costs of repairs in full, and the parties agreed to maintain this litigation in suspense pending final completion of repairs. Metzger letter, Attachment "E" to the Bridger Affidavit.

The repairs to the floodwall, to Floodgate W-30, and to the floodgate structure have now been completed, and the Levee Board has made no request to the Public Belt for payment of the costs of repairs n addition to the $427,837.95 the Public Belt already paid. Bridger Affidavit, § 13. Thus, the terms of the transaction and compromise agreement have been fulfilled, and the defendant Public Belt is entitled to summary judgment, dismissing the Levee Board's claim.

## V. CONCLUSION

The Levee Board's claim in the main demand has been settled, compromised and paid in full pursuant to C.C. art. 3071. Therefore, the summary judgment motion of the defendant Public Belt must be granted, dismissing the Levee Board's claim, with prejudice.

Respectfully submitted,

HAMILTON, BROWN & BABST, LLC

*[signature]*

GALEN S. BROWN, T.A. (#3556)
KAREN E. MILNER (#8499)
Pan American Life Center
601 Poydras Street, Suite 2750
New Orleans, Louisiana 70130
Telephone: (504) 566-1805
Facsimile: (504) 566-1569
Email: gbrown@hamiltonfirm.net
Attorneys for Defendant, Public Belt
Railroad Commission for the City of
New Orleans

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on all counsel of record by depositing a copy, properly addressed and postage prepaid, in the United States Mail, this 7th day of September, 2006.

GALEN S. BROWN

PLEASE SERVE:

Plaintiff Board of Commissioners of the
Orleans Levee District
through its counsel of record:
Gerard G. Metzger
or
Catherine M. Lalla
or
Gwendolyn M. Hanhart
829 Baronne Street
New Orleans, Louisiana 70113