UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

\

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION NO. 05-4182 "K" (2) |
| PERTAINS TO LEVEE: | * * | JUDGE DUVAL |
| BOURGEOIS, NO. 06-5131 | * * * | MAG. WILKINSON |

**MEMORANDUM IN SUPPORT OF
CSX TRANSPORTATION, INC.'S MOTION FOR DISMISSAL UNDER
RULE 12(b)(6) OR, IN THE ALTERNATIVE, MOTION FOR
SUMMARY JUDGMENT UNDER RULE 56**

Plaintiffs' allegations against CSX Transportation, Inc. ("CSXT") stem from a derailment

that occurred on September 11, 2004, almost one year before Hurricane Katrina.  The Complaint

in *Bourgeois* maintains that the derailed railcar damaged Flood Gate W-30, and that the sandbags

the Orleans Levee District ("OLD") placed in the "opening" left when the gate was removed for

repair "were unable to arrest the rush of waters" following Hurricane Katrina.  But in fact:

- CSXT did not cause the derailment;

- The derailment did not occur on CSXT tracks; and Another entity – the New Orleans Public Belt Railroad Commission ("NOPB"), not CSXT – operated the train that derailed.

These facts cannot be disputed, since the involved party has come forward and paid for the cost of repairing the damaged gate.

Plaintiffs' entire theory against CSXT is premised on a misunderstanding. CSXT cannot be held culpable in tort for a derailment it did not cause.

Plaintiffs offer no allegations in their Complaint giving rise to a legally enforceable duty owed by CSXT to the plaintiffs – an essential element of their negligence claim – nor could they. CSXT owed no duty for the derailment of a train that it did not operate and that derailed on tracks CSXT did not own. Nor does the Complaint suggest facts that could impose any duty on CSXT's part to repair the resulting damage to Flood Gate W-30 – which is not surprising, since federal and state government actors are responsible for flood control measures in New Orleans, including the maintenance and repair of the Flood Gate in question.

Finally, the plaintiffs' sole factual allegation against CSXT is that CSXT was "operat[ing]" a train that derailed. Allegations about railroad operations like these are preempted by two separate railroad regulatory schemes – the Interstate Commerce Commission Termination Act of 1995 and the Federal Railroad Safety Act. Therefore, CSXT incorporates by reference herein its arguments that claims against it in this litigation are preempted by applicable federal railroad laws as made in its Motion to Dismiss in *Paul*-06-7682 (Dkt. No. 1522).

For these reasons, CSXT respectfully requests that its motion to dismiss, or, in the alternative, its motion for summary judgment, be granted, and that plaintiffs' claim against CSXT be dismissed.

930654-1                                                        2

## FACTS

The facts material to this motion are:

1.     The Complaint seeks damages on behalf of the plaintiffs who allegedly "suffered damages due to failure of the flood protection system for the New Orleans East Bank." Complaint for Declaratory Judgment and Damages and Request for Jury Trial (Aug. 28, 2006), at 2 ("Complaint") (06-5131, Dkt. No. 1).  These plaintiffs allegedly reside in or do business "in the Old Gentilly and Lake Terrace sections of the City of New Orleans." *Id.* at 1.

2.     The Complaint's factual allegations against the Railroad Defendants[1] all pertain to a train derailment that occurred on September 11, 2004.

3.     The Complaint's references to CSXT, and its alleged role in the derailment, are notably sparse.  In a section titled "Damage to Floodgate I -W 30,"[2] plaintiffs assert:

> 35.   On or about September 11, 2004 floodgate I-W 30 was damaged by railcars being *operated by the defendant CSX Transportation* on tracks owned by defendant Public Belt Rail Road Commission and Burlington Northern and Santa Fe Railway Company."

Complaint ¶ 35 (emphasis added).[3]  From this allegation that CSXT was "operat[ing]" these railcars, plaintiffs seek to impose "liab[ility] for the damages proximately caused by . . . negligence" on CSXT.  Complaint ¶ 98.

---

[1]     The three railroad entities named as defendants are CSXT, NOPB, and Burlington Northern and Santa Fe Railway Company ("Railroad Defendants").

[2]     In their Complaint, plaintiffs refer to the relevant floodgate as: "Floodgate I-W-30" (Complaint ¶ 14), "Floodgate IW-30" (*id.* ¶ 5), "Floodgate I -W 30" (*id.* at 9), and "floodgate I-W 30" (*id.* ¶ 35).  To avoid confusion, CSXT will refer to the relevant floodgate as "Flood Gate W-30" unless quoting plaintiffs' Complaint.

[3]     The Complaint makes this exact same allegation – namely, that CSXT was "operating" the railcars that derailed – in two additional paragraphs:

(continued...)

930654-1                                              3

4.     Thus, the negligence claim against CSXT pivots entirely on the notion that CSXT was operating a train that derailed.

5.     This factual premise is wrong.  CSXT was not operating the train that derailed, a point made crystal-clear in publicly available sources and confirmed in the attached declarations of Jim Bridger, General Manager at NOPB, and Tom T. May, Terminal Manager – New Orleans for CSXT.  Affidavit of Jim Bridger in Support of NOPB's Motion for Summary Judgment (Sept. 6, 2006) ¶ 3 ("Bridger Affidavit"), attached hereto as Exhibit 1; Declaration of Tom T. May in Support of CSXT's Motion for Dismissal, or, in the alternative, Motion for Summary Judgment (Nov. 6, 2006) ¶ 3 ("May Declaration"), attached hereto as Exhibit 2.

6.     While the derailment caused part of the derailed train to be dragged onto CSXT track, the derailment itself occurred on NOPB track.  May Decl. ¶ 3 (Ex. 2).

7.     The 2004 derailment in question caused damage to a New Orleans flood gate, Flood Gate W-30.  Bridger Aff. ¶ 4 (Ex. 1).

8.     NOPB, as the entity operating the train, promptly paid the Orleans Levee Board in full for the estimated cost to repair the damage to Flood Gate W-30.  Bridger Aff. ¶¶ 8-9 (Ex. 1).

---

(continued)

5. Made defendant herein is *CSX Transportation, Inc., which was operating rail cars through Floodgate IW-30* on September 11, 2004, when the errant cars damaged the Floodgate.

\* \* \*

14. Plaintiffs' Claims derive particularly from the damage to Floodgate I-W-30 which occurred on or about September 11, 2004, when struck by *rail cars being operated by the defendant CSX Transportation, Inc.* on track owned by defendants Public Belt and Burlington Northern.

Complaint ¶¶ 5, 14.

9.      The New Orleans Levee Board "has the statutory responsibility to develop, construct and maintain flood control systems and structures within the City of New Orleans, including, . . . floodgates . . . ." *See* Complaint for Damages, *Board of Commissioners of the Orleans Levee District v. City of New Orleans,* No. 2004-17143 (La. Dist. Ct. filed Dec. 3, 2004) ("OLD Complaint") § III, attached hereto as Exhibit 3; *see also* Order and Reasons (Sept. 13, 2006) (Dkt. No. 1133) (as this Court has noted, "the Board of Commissioners of the Orleans Levee District has the full and exclusive right and jurisdiction over the levees" and the levee districts have "the right to maintain the levees") (citing La. Rev. Stat. 38:307 and 38:301 and granting 12(b)(6) motion filed by City of New Orleans).

## LEGAL STANDARDS

A 12(b)(6) motion to dismiss is granted when the pleadings fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court dismisses pursuant to Rule 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995). As part of a Rule 12(b)(6) analysis, the court accepts well-pled facts in the complaint as true and construes factual allegations in plaintiffs' favor. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999). However, in this Circuit, as elsewhere, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving

930654-1                                         5

party may show that there is no genuine issue of material fact by pointing out the lack of evidence supporting the non-moving party's case. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992). Summary judgment is entered against "'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"In order to defeat a properly supported motion for summary judgment, the non-moving party must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a 'fair-minded jury' that it is entitled to a verdict in its favor." *ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995). Allegations in a complaint do not and cannot defeat summary judgment: the non-movant must identify specific evidence in the record and articulate the "precise manner" in which that evidence supports his or her claim. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

## ARGUMENT

**I.      The Complaint Pleads No Duty Owed By CSXT – And CSXT Owes No Duty
To Protect Plaintiffs From Natural Disasters.**

"A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006). In Louisiana the existence of a duty and its scope are questions of law. *See Dupre v. Chevron, U.S.A., Inc.*, 20 F.3d 154, 159 (5th Cir. 1994). The failure to allege a duty renders a complaint legally deficient. *Johnson v. United States*, 547 F.2d 688, 695 (D.C. Cir. 1976) (citing 5 C. Wright & A. Miller, *Federal Practice* § 1249 at 227-28 (1969)); *Campbell*, 43 F.3d at 975 ("[T]he complaint must

930654-1                                              6

contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial" (citations omitted)).

In Louisiana, allegations suggesting a legal duty must be explicitly set forth by a pleading, and must derive from some legally recognized relationship between these plaintiffs and CSXT. *See Lemann*, 923 So. 2d at 633. Plaintiffs cannot rest on the mere hope that a duty may attach: "The inquiry is whether *the plaintiff has any law* (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id.* (emphasis added). Because Plaintiffs have failed to plead *any* facts that suggest CSXT owed them a duty, dismissal is now in order.[4]

Indeed, the *Bourgeois* Complaint is a paradigm of how *not* to plead duty. The Complaint offers only the conclusions that CSXT is "liable" and that CSXT "caused" plaintiffs' damages. Everything else is left to guesswork. The Complaint says nothing about a legal duty owed by a railroad with respect to the derailment of a railcar or the resulting repair, particularly when the derailment itself is not alleged to have harmed plaintiffs. The Complaint offers no source for any such a duty, and no basis in negligence for recognizing or creating such a duty. Tort duties, moreover, must be owed to someone. That someone is nowhere identified in the Complaint.

---

[4]     Allegations about railroad operations like these are preempted by two separate railroad regulatory schemes – the Interstate Commerce Commission Termination Act of 1995 and the Federal Railroad Safety Act. Yet the Complaint here is so sparse -- alleging merely that CSXT was "operat[ing]" a railcar that derailed -- as to preclude the normal preemption analysis. For the Court's convenience, CSXT incorporates by reference the preemption discussion contained in its Motion to Dismiss in *Paul et al. v. Sewage and Water Board of New Orleans, et al.,* Civil Action No. 06-7682-K-2 (Dkt. No. 1522).

Read charitably, the Complaint might be construed to suggest that CSXT owed a duty to "the Greater New Orleans Metropolitan Area" when "operat[ing]" a railcar and to protect "the Greater New Orleans Metropolitan Area" against natural disasters such as floods resulting from Hurricane Katrina. If this is the intention, plaintiffs are asserting a novel tort theory indeed. For starters, Congress has for several decades fixed upon a single entity – the Army Corps of Engineers, and not CSXT – the responsibility to protect United States populations from floods. *See* 33 U.S.C. §§ 701, *et seq.* (Congress mandated that Army Corps of Engineers is to provide hurricane and flood protection for the City of New Orleans). The Louisiana legislature in turn has imposed some level of responsibility upon the Board of Commissioners of the Orleans Levee District – again, not on CSXT. *See Bd. of Comm'rs of the Orleans Levee Dist. v. Dep't of Natural Res.*, 496 So. 2d 281, 289 (La. 1986) (Louisiana legislature has given this Board authority and duty to protect New Orleans citizens from damage by flood); *Volkswagen of America, Inc. v. Robertson*, 713 F.2d 1151, 1154 (5th Cir. 1983) (Orleans Levee District maintains the hurricane protection levees in the New Orleans area, in compliance with the designs, plans, specifications and requirements of the Corps of Engineers).[5]

Congress presumably could have imposed nationwide flood protection responsibility upon private actors like CSXT had it so chosen; it did not so choose. In fact, OLD has already admitted in this consolidated litigation that *it* – and not CSXT -- "maintains and operates flood control structures in accordance with specific contractual instructions from the United States

---

[5]     This Court is intimately familiar with the statutory basis and history of the Corps of Engineers and the Orleans Levee District's role in designing, building, maintaining and operating the levees, flood walls and gates surrounding New Orleans. *See* 05-6323-*Vanderbrook*, Order and Reasons (June 1, 2006) (Dkt. No. 469); 05-4568-*Harvey*, Order and Reasons (June 2, 2006) (Dkt. No. 476); 06-3529-*Laurendine*, Order and Reasons (Aug. 9, 2006) (Dkt. No. 888).

Government, as well as state and federal regulations and statutes." 05-6073- *Kirsch*, Answer to Second Amended Class Action Complaint (July 25, 2006) at 7, 18 (Dkt. No. 813). Indeed, this Court has already noted that "the Board of Commissioners of the Orleans Levee District," and not CSXT, "has *the full and exclusive right and jurisdiction* over the levees." *See* Order and Reasons (Sept. 13, 2006), Dkt. No. 1133 (emphasis added).

As fundamentally, tort law does not impose duties owed to a "Greater Metropolitan Area." Duties in negligence are not owed to an "area" and are not owed to everyone living or working in large sections of a city. They are owed to specific people with whom one has a relationship or legally sufficient nexus. "[N]egligence does not exist in the abstract, it contemplates a legal duty owing from one party to another. . . ." *Tappen v. Ager*, 599 F.2d 376, 379 (10th Cir. 1979). Accordingly, "duty to the world" concepts like that (perhaps) being advanced in *Bourgeois* are regularly rejected. *See, e.g., Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001) (a tort plaintiff "must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for 'without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.'" (citation omitted)); *In re New York State Silicone Breast Implant Litig.*, 632 N.Y.S.2d 953, 955-56 (Sup. Ct. 1995), *aff'd*, 642 N.Y.S.2d 681 (App. Div. 1996) (Courts will not impose a duty of care "enforceable by any member of an indeterminate class of persons, present and prospective, known and unknown, directly or indirectly injured by any negligence." (citation omitted)); *Bathelt v. Asbestos Defs.*, No. 010906321 AS, 2003 WL 21994732, at *3 (Utah Dist. Ct., 3d Dist. Feb. 21, 2003) ("There is no duty to the general public and plaintiffs have failed to demonstrate any special relationship between themselves and this defendant.").

Duty, in short, is a limiting principle. "The essence of a scope of duty inquiry is whether the risk and harm encountered by the plaintiff fall within the scope and protection of the [law]. . . . Since the law never gives absolute protection to any interest, recovery will only be allowed if a rule of law on which the plaintiff relied includes within its limits protection against the particular risk that plaintiff's interests encountered." *Lazard v. Foti*, 859 So. 2d 656, 660-61 (La. 2003) (sheriff's duty to not hold a minor in an adult detention center did not encompass risk that released juvenile would be killed by a third party after his release).

The Honorable Judge Sarah S. Vance recently determined that with respect to damages caused by Hurricane Katrina, "[t]he Louisiana Supreme Court has never imposed a duty of this scope in any case that the Court could find." *Barasich v. Columbia Gulf Transmission Co.*, Civ. A. No. 05-4161, Order at 35-36 (E.D. La. Sept. 28, 2006) (dismissing plaintiffs' claims that oil and natural gas exploration, production and energy companies negligently dredged, used and maintained canals in Louisiana's coastal wetlands, causing coastal erosion and loss of wetlands, that enhanced the effects of Hurricane Katrina). Upon reviewing Louisiana statutes and jurisprudence, Judge Vance concluded that Louisiana courts had not and would not impose a duty to protect the hundreds of thousands of plaintiffs from flooding, even accepting as true the plaintiffs' allegations regarding massive damage to wetlands and coastal areas. *See id.* at 41.

Plaintiffs in *Bourgeois* do not allege that they were damaged by the September 2004 derailment itself, and they do not allege that they have some ownership interest in the floodgate that was damaged. Instead, they allege that failure to repair the damage to the floodgate prior to Hurricane Katrina caused them harm. Yet plaintiffs themselves acknowledge that the parties responsible for inspecting, maintaining, and repairing the levees and floodgates are specific government entities – and not CSXT. *See, e.g.,* Complaint ¶ 2 ("[T]he Board of Commissioner

of the Orleans Levee District, a political subdivision of the State of Louisiana created by La. R.S. 38:307, et seq., for the purposes of exercising *full and exclusive right,* jurisdiction, power, and authority to locate, relocate, *construct, maintain,* extend, and improve levees, embankments, seawalls, jetties, breakwaters, water-basins, and other works within its district") (emphasis added); *id.* ¶ 44 ("[T]he Orleans Levee District assured . . . the Secretary of the Army that it will: '(a) maintain all flood control structure [sic] . . .'"); *id.* ¶ 46 ("Under the October 1, 1969, Act of Assurance the Orleans Levee District assured . . . the Secretary of the Army that it will: '(c) maintain and operate, in a manner satisfactory to the Chief of Engineers, all the repair or restoration work after completion'".); *id.* ¶ 49 ("In the Interim Agreement of February 20, 1985 and the Supplemental Agreement of June 21, 1985, the Orleans Levee District repeated the assurance that it will '(g) Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, *flood gates*. . .'") (emphasis added); *id.* ¶ 75 ("The Levee District is liable under Civil Code Article 2322 for the deterioration of the levees and levee improvements and structures known to it before the events causing loss and damage and the failure to repair same"). Therefore, even accepting plaintiffs' allegations as true, CSXT owed no duty to anyone, let alone plaintiffs, to repair Flood Gate W-30, and any damages resulting from the flooding cannot be imposed upon CSXT.

Plaintiffs' failure to allege a specific duty CSXT owed these plaintiffs dooms their negligence claim. Under no set of facts could plaintiffs allege that CSXT breached a duty it does not have. Accordingly, plaintiffs' claim against CSXT should be dismissed.

## II.     Plaintiffs' Derailment Theory Against CSXT Is Factually Erroneous.

The premise of the claim against CSXT is straightforward: CSXT "operated" a train that derailed on September 11, 2004. If that premise is in error, the Complaint asserts no viable claim against CSXT, for absent this allegation the Complaint is silent as to CSXT.

As shown in the Facts Section, *supra*, the premise is in error indeed. As a result, Plaintiffs' allegations of negligence as to CSXT fail.

As explained in the attached affidavit of Jim Bridger,[6] the General Manager (Chief Executive Officer) of the Public Belt Railroad Commission for the City of New Orleans, it was NOPB -- and not CSXT -- which was operating the train that derailed on September 11, 2004. Bridger Aff. ¶ 3 (Ex. 1). Specifically, Mr. Bridger declares that "[o]n September 11, 2004, some of the railcars in a train *operated by Public Belt employees derailed* near the Industrial Canal in New Orleans, Louisiana." *Id.* ¶ 3 (Ex. 1) (emphasis added). Thus, the derailment occurred to a train operated by NOPB employees on NOPB track, not CSXT. *Id.* ¶ 3 (Ex. 1); May Decl. ¶ 3 (Ex. 2). CSXT cannot be negligent in any way for the operation of railcars that it was, in fact, not operating.

Additionally, although plaintiffs allege that the 2004 derailment – for which they hold CSXT liable – caused damage to Flood Gate W-30, the Complaint does not seem to allege that CSXT was responsible for repairing the damage to Flood Gate W-30. Indeed, state and federal entities – not CSXT – are responsible for maintaining and repairing the structures forming the New Orleans flood protection system. CSXT cannot be held liable for the repairs to a damaged floodgate which it did not own or control.[7]

---

[6] This Affidavit, and accompanying exhibits, were attached to NOPB's Memorandum in Support of Summary Judgment and filed September 7, 2006. For the Court's convenience, NOPB's Summary Judgment Memorandum is attached hereto as Exhibit 4.

[7] In fact, as a matter of law, Flood Gate W-30 could be repaired only by the Orleans Levee District ("OLD") and/or its agent. *See* OLD Complaint § III (Ex. 3). Indeed, plaintiffs acknowledge in their Complaint that the responsibility to maintain and repair the structures forming the New Orleans flood protection system falls squarely on state and federal entities. *See, e.g.,* Complaint ¶¶ 2, 36, 42, 44, 46-49, 75. This is why OLD brought a lawsuit after the derailment – to obtain monetary relief so that OLD could proceed to fix the damaged floodgate.

(continued...)

CSXT cannot be held liable in tort for a derailment it did not cause. The factual premise of the sole claim against CSXT is false. There is no genuine dispute of material fact on this score. Accordingly, summary judgment should be entered in CSXT's favor.

## CONCLUSION

CSXT's Motion to Dismiss or, in the alternative, Motion for Summary Judgment should be granted.

Respectfully submitted,


_____s/ Jonathan C. McCall_____
BRENT A. TALBOT (#19174)
JONATHAN C. MCCALL (#9227)
MICHAEL D. SPENCER (#27649)
                    -of-
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone: (504) 585-7000
Facsimile:  (504) 585-7075

_____

(continued)

NOPB received an estimate of the damage caused by the derailment from OLD, and remitted a check to OLD for the full amount. Bridger Aff. ¶¶ 8-9 (Ex. 1). A private entity such as CSXT could not have independently repaired the damaged floodgate even if it were somehow responsible for the damage. CSXT incorporates by reference herein its arguments that CSXT could not have independently repaired Flood Gate W-30 as made in its Motion to Dismiss in *Paul et al. v. Sewage and Water Board of New Orleans, et al.,* Civil Action No. 06-7682-K-2, (Dkt. No. 1522).

and

ROY J. RODNEY, JR. (#02079)
JOHN K. ETTER (#25042)
            -of-
RODNEY & ETTER, L.L.C.
1232 Camellia Boulevard, Suite "C"
Lafayette, Louisiana  70508
Telephone:  (337) 981-5293
Telefax:  (337) 988-6918

**ATTORNEYS FOR CSX TRANSPORTATION, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of November, 2006, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management. All counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

                    s/ Jonathan C. McCall