UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:   KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | *<br>*<br>*<br>* | CIVIL ACTION<br><br>NO. 05-4182 "K" (2) |
| PERTAINS TO LEVEE: | *<br>* | JUDGE DUVAL |
| PAUL, NO. 06-7682 | *<br>* | MAG. WILKINSON |

**MEMORANDUM OF CSX TRANSPORTATION, INC.
IN OPPOSITION TO MOTION TO REMAND**

The plaintiffs filed this civil class action in Civil District Court for the Parish of Orleans, State of Louisiana, on August 28, 2006.  The complaint includes a claim that defendant CSX Transportation, Inc. ("CSXT"), along with the New Orleans Public Belt Railroad Commission and Burlington Northern and Santa Fe Railroad Company (together "the Railroad Defendants"), was negligent in failing to properly maintain and repair railroad tracks from which a train derailed on September 11, 2004.  Complaint ¶¶ 21-25.  Because the thrust of the claims focuses on railroad track inspection and maintenance, the claims are preempted by the Federal Railroad Safety Act ("FRSA") – indeed, are "completely preempted."  On this basis, CSXT removed this action to this Court pursuant to this Court's federal question jurisdiction on October 10, 2005.

930912-1

In seeking remand, the plaintiffs do nothing to upset federal court jurisdiction. The legal authorities cited in the plaintiffs' Motion do not support remand, and the Motion does not address controlling Supreme Court and Fifth Circuit authority. The law – of the Supreme Court, the Fifth Circuit, as well as from courts elsewhere analyzing complete preemption by FRSA – supports removal in this factual setting.

Accordingly, this Court has subject matter jurisdiction over this action, and the Motion to Remand should be denied.

## ARGUMENT

### A. Governing Principles Of Complete Preemption

State court actions that could originally have been filed in federal court may be removed to federal court. 28 U .S.C. § 1441. Where federal question jurisdiction is the basis for removal, the cause of action must "arise under" the Constitution, laws or treaties of the United States. 28 U.S.C. § 1331. A core premise underlying "arising under" jurisdiction is the "well-pleaded complaint" rule, whereby federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987); *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475 (1998). Anticipated defenses, including the defense of preemption, do not normally provide a basis for removal. *Caterpillar,* 482 U.S. at 393.

A corollary to the well-pleaded complaint rule is the doctrine of complete preemption. As the Supreme Court stated in *Metropolitan Life Ins. Co. v. Taylor,* "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." 481 U.S. 58, 63-64 (1986). "Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is

considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

The Fifth Circuit has articulated a framework for considering complete preemption within this Circuit, a framework which has evolved over time.  In response to the Supreme Court's findings of complete preemption of state claims by the Labor Management Relations Act, *see Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968), and the Employee Retirement Income Security Act, *see Metro. Life*, 481 U.S. 58, the Fifth Circuit set forth a three-part analysis for complete preemption. *Aaron v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 876 F.2d 1157 (5th Cir. 1989); *see also Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000).  Under this framework, complete preemption turns on whether: (1) the preemptive statute in question contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable. *Johnson*, 214 F.3d at 632.  This strictly stated test had the practical effect of rigidly confining complete preemption, perhaps to the two statutes that the Supreme Court had addressed. *See Heimman v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 500 (5th Cir. 1999), *overruled on other grounds by Arana v. Ochsner Heath Plan*, 338 F.3d 433 (5th Cir. 2003) ("[F]ew federal statutes can meet such an exacting standard.").

Since 2003, in light of more recent Supreme Court pronouncements on complete preemption, the Fifth Circuit has refined its analysis.  The third prong of the *Aaron* test has been replaced, no longer requiring Congressional intent that the claims be "removable," but instead reflecting the Supreme Court's directive that the focus be on "Congress's intent that the federal

action be exclusive." *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 775-76 (5th Cir. 2003); *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003).[1]

In addition, and of importance to this case, the Fifth Circuit as recently as last year appears to have expanded the first and second prongs of this analysis – the "cause of action" and "federal court" prongs – to make room in complete preemption analysis for a statute whose remedy is not a civil action, but administrative. *See PCI Transp., Inc. v. Forth Worth & W.R.R. Co.*, 418 F.3d 535, 544-45 (5th Cir. 2005). In *PCI Transportation*, the Fifth Circuit held that non-contractual claims for injunctive relief were completely preempted by the Interstate Commerce Clause Termination Act ("ICCTA"), thereby justifying removal. ICCTA, which like FRSA regulates railroad operations, establishes an exclusive federal regulatory and administrative scheme for claims that otherwise would be the subject of state tort-law claims. *Id.* In particular, with regard to the *PCI* action, ICCTA provides that exclusive jurisdiction over actions regarding railroad "rates, classifications, rules . . . practices, routes, services, and facilities" rests with the Surface and Transportation Board of the Department of Transportation. 49 U.S.C. § 10501(b)(1). Noting that recent Supreme Court precedent "makes finding complete preemption easier," *PCI Transp.*, 418 F.3d at 544, n.32, the Fifth Circuit found ICCTA's

---

[1] The Fifth Circuit's earlier suggestion that the federal statute must create a federal cause of action is not mandated by Supreme Court precedent. Further, in its discussion of the Ninth Circuit decision overturned in *Caterpillar*, one finds a suggestion that the Supreme Court might reject such an approach:

> The Court of Appeals also appears to have held that a case may not be removed to federal court on the ground that it is completely pre-empted unless the federal cause of action relied upon provides the plaintiff with a remedy…. This analysis is squarely contradicted by our decision in *Avco Corp.*… We there held that a [LMRA] claim was properly removed to federal court although at the time, the relief sought by the plaintiff could be obtained only in state court.

482 U.S. at 391 n.4.

regulatory scheme sufficient to meet the requirements for complete preemption on the facts before it.  *Id.*

### B.   The FRSA Provides For Complete Preemption, Justifying Removal

The Fifth Circuit has not to CSXT's knowledge addressed whether FRSA is a completely preemptive statute.  However, FRSA's parallels to ICCTA – which, as noted above, the Fifth Circuit did recently address – are instructive.  Like ICCTA, FRSA establishes a federal regulatory scheme designed to mandate uniform railroad regulations.  Like ICCTA, FRSA contains a clearly expressed intent on the part of Congress that this regulatory regime be exclusive, and that it preempt state law.  FRSA, 49 U.S.C. § 20106 ("Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.").  The Supreme Court itself has held that FRSA preempts state law claims where "the federal regulations substantially subsume the subject matter of the relevant state law."  *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993); *see also Peters v. Union Pac. R.R. Co.*, 80 F.3d 257, 262 (8th Cir. 1996) ("Congress has expressly preempted state laws affecting railroad safety where the Secretary of Transportation has promulgated regulations.").

Congress has, therefore, created the exclusive federal remedy required by the Fifth Circuit in those spheres of railroad safety for which (a) it has authorized the Department of Transportation to issue regulations mandating specific standards directed at railroad safety, and (b) the agency in fact has issued such controlling regulations.  In such areas "covered" by DOT regulation*,* there remains no common law claim that a railroad did not properly maintain its tracks; DOT has exclusive jurisdiction to regulate and determine such issues.  *See Lundeen v. Canadian Pac. Ry. Co.*, 447 F.3d 606, 614 (8th Cir. 2006) ("It is clear the [Federal Railroad

Administration] regulations are intended to prevent negligent track inspection and there is no indication the FRA meant to leave open a state law cause of action."). To be clear, CSXT does not suggest that any and all common law tort claims involving railroads, or even railroad safety, would be completely preempted by FRSA. Rather, each railroad safety claim must be assessed individually to determine whether the Secretary of Transportation has, under its express FRSA authority, directly regulated in that area to ensure uniform safety policies and standards.

The Federal Railroad Administration ("FRA"), a division of the Department of Transportation, is tasked with enforcing the FRSA. As explained in CSXT's Notice of Removal, the claims that give rise to federal jurisdiction in this case are "substantially subsumed" by directly applicable FRA regulations that establish a nationally uniform system for track inspection, repair, and maintenance. *See, e.g.,* 49 C.F.R. § 213.2 (FRSA expressly preempts state law); § 213.63 (governing maintenance of track surfaces); § 213.233 (track inspections); 215.13 (pre-departure freight car inspections); § 215.15 (periodic freight car inspections); *see also* CSXT's Notice of Removal at 6 (discussing preemption of the specific claims raised in the Complaint). In enacting the FRSA, Congress assigned the Secretary of Transportation "exclusive authority to impose . . . a civil penalty for violation of a railroad safety regulation . . . and to recommend [civil district court] action be taken." 49 U.S.C. § 20111(a). The complaint's contention that CSXT was negligent in "failing to keep the tracks under proper repair" and "failing to perform appropriate maintenance" is a contention directly and substantially subsumed by Congress's intent to create a nationally uniform standard in these spheres of railroad safety, enforceable by the Department of Transportation. This aspect of the claim against the Railroad Defendants is therefore completely preempted, justifying removal.

**C.   The Plaintiffs' Remand Motion Does Not Support Remand**

In seeking remand, the plaintiffs do not grapple with Supreme Court or Fifth Circuit doctrine on complete preemption. Nor do they address the exclusive regulatory scheme set forth under the FRSA. Instead, the plaintiffs suggest (Remand Motion at 5-6) that the Fifth Circuit, *en banc*, in *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004), held that FRSA is not completely preemptive. *Smallwood* held no such thing. In *Smallwood*, the Fifth Circuit addressed a "narrow but not unimportant question regarding diversity jurisdiction . . . and the doctrine of improper joinder." *Id.* at 571. To the limited extent it mentioned FRSA preemption, the Court merely noted the district court's finding that ***there was FRSA preemption***.[2]

The plaintiffs next contend (Remand Motion at 8) that, for complete preemption to exist, clear Congressional intent that state claims be removable must be shown, relying on *Beers v. North American Van Lines, Inc.*, 836 F.2d 910 (5th Cir. 1988) (addressing complete preemption removal under the Carmack Amendment to the Interstate Commerce Act). What the plaintiffs fail to mention is that *Beers* has been expressly overruled by the Fifth Circuit on precisely that point. *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 775 (5th Cir. 2003). Specifically, *Hoskins*

---

[2] *Smallwood* involved a suit by plaintiff Kelli Smallwood against the Mississippi Department of Transportation ("MDOT") and Illinois Central Railroad Company for injuries arising from a railroad accident. Illinois Central removed the action to federal court, asserting federal court jurisdiction based on diversity. Illinois Central argued that MDOT had been improperly joined because, as a result of the preemptive effect of FRSA, "there was no reasonable possibility of recovery against MDOT." *Id.* at 572. The district court agreed, accepted jurisdiction of the case, and found that FRSA also applied to preempt the claims against Illinois Central. As a result, the district court dismissed the action. On appeal, the Fifth Circuit, *en banc*, held that because FRSA preemption "equally bars claims against" the diverse defendant and the non-diverse defendant, "it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper." *Id.* at 574. In fact, the Fifth Circuit reiterated the district court's finding that FRSA did preempt all of the claims, with the result that "there is no improper joinder; there is only a lawsuit lacking merit." *Id.*

930912-1                                     7

held: "Because the legal landscape surrounding the complete preemption doctrine has shifted, we are no longer bound by our holding in *Beers*." *Id.*

### D. Applicable Law Supports Complete Preemption of the Plaintiffs' Claims by FRSA Regulations.

The complete preemption "landscape" has indeed "shifted," not only in general but in the specific setting of FRSA. Courts outside the Fifth Circuit have found complete preemption under FRSA where the asserted common law claims – such as those in this case – fall within the coverage of FRA and DOT regulations. *See Peters v. Union Pacific R.R. Co.*, 80 F.3d 257, 262 (8th Cir. 1996).[3] The recent Eighth Circuit ruling in *Lundeen v. Canadian Pac. Ry. Co.*, 447 F.3d 606 (8th Cir. 2006), is illustrative. There, the Eighth Circuit held that, despite plaintiffs' amendment of their complaint to remove all references to federal statutes, "the district court continues to have jurisdiction *through complete preemption of the state law claim of negligent inspection*." *Id*. at 611 (emphasis added).

In reconciling its previous holdings in *Peters* (finding complete FRSA preemption) and *Chapman v. Lab One*, 390 F.3d 620 (8th Cir. 2004) (finding no complete FRSA preemption), the Eighth Circuit in *Lundeen* noted that "complete preemption turns first on the Secretary of Transportation's regulations 'covering the subject matter of the State Requirement' and then any given regulation's solicitude for state law." *Id.* at 613. The drug testing regulation at issue in *Chapman* demonstrated "solicitude for state law" in an anti-waiver clause in the regulation and

---

[3] While plaintiffs attempt to discredit the relevance of *Peters* by characterizing it as an exhaustion of administrative remedies case, this mischaracterizes the Eighth Circuit's decision. In reaching the question of whether Peters' claim implicated issues of railroad safety, and thus involved certain administrative remedies, the court was required "to define the preemptive scope of the FRSA." In so doing, it determined that FRSA "on its face provides for broad preemption" and that "any issue raised [in an area directly addressed by FRA regulations] is a federal issue justifying removal." 80 F.3d at 262.

had "specifically contemplated the existence of a common-law cause of action for negligence." *Id.* at 613-14.  In contrast, "FRSA track inspection regulations lack" such solicitude for state law, "are intended to prevent negligent track inspection nationally and contain no savings clause." *Id.* The court therefore found **"*complete, jurisdictional, preemption*"** over the plaintiffs' negligent inspection claims.  *Id*.

In the wake of *Lundeen*, multiple district courts within the Eight Circuit have denied motions to remand, finding complete preemption by FRSA and hence federal jurisdiction over claims pled under state tort law.  *See Gillenwater v. Burlington No. & Santa Fe Ry. Co.*, 435 F. Supp. 2d 959, 960-61 (E.D. Mo. 2006) (denying motion to remand state claims where claims were "*completely preempted* by the FRA regulations" that "govern the safety issues raised . . . in the complaint" (emphasis added)); *Kutilek v. Union Pac. R.R. Co.*, 2006 WL 2831039, *6-7 (E.D. Mo. 2006) (denying motion to remand because FRSA *completely preempts* state claims for negligent operation of train and failure to monitor or install warning devices); *Olberding v. Union Pac. R.R. Co.*, 2006 WL 2827648, *2 (W.D. Mo. 2006) (denying remand because "plaintiffs' [negligence] claims are *completely preempted* by the FRA regulations and defendant's removal of the case was therefore proper" (emphasis added)); *Hodge v. Burlington No. & Santa Fe Ry. Co.*, 2006 WL 2546812, *6-7 (E.D. Mo. 2006) (denying remand based on finding FRSA *completely preempts* claims regarding adequacy of warning devices, failure to train employees, negligent operation, and failure to monitor warning devices).  Other cases are to the contrary.  *See, e.g., Duncan v. Kan. City S. Ry. Co.*, 1998 WL 35069621 (W.D. La. 1998) (finding no FRSA complete preemption under the original Fifth Circuit *Aaron* test); *Connolly v. Union Pac. R.R. Co.*, 2006 WL 2794862, *5 (E.D. Mo. 2006) (granting motion to remand,

distinguishing *Lundeen*); *Sullivan v. BNSF Ry. Co.*, 447 F. Supp.2d 1092, 1097-99 (D. Ariz. 2006) (finding no FRSA complete preemption).  Each is distinguishable.[4]

Respectfully, complete preemption is the correct outcome under governing Supreme Court and Fifth Circuit precedent, under the facts pled in this case, and under the regulatory scheme established by FRSA.  FRA regulations establish a comprehensive regulatory regime including standards for track maintenance, 49 C.F.R. § 213.63, and track inspections, § 213.233, which subsume plaintiffs' claims that CSXT was negligent "in failing to keep the tracks under proper repair" and "failing to perform appropriate maintenance."  Congress explicitly granted exclusive authority to the Secretary of Transportation to impose civil penalties for violations of FRSA regulations, or to recommend that a civil action be brought in the district court to enjoin a violation or collect a civil penalty.  49 U.S.C. § 20111(a).  Because FRSA creates the exclusive, federal cause of action for plaintiffs' claims related to track inspection and track maintenance standards, those claims are completely preempted by FRSA.  A finding of complete preemption on these facts is consistent with the Fifth Circuit's comparable finding last year under ICCTA – a statute likewise providing an exclusive regulatory scheme, likewise focusing recourse in an administrative process, likewise focused on railroad operations, and likewise preemptive.[5]

---

[4] The analysis in *Duncan* strictly tracked the *Aaron* three-part analysis, which has since been modified.  The fact pattern in cases like *Connolly* was found to fall outside the "coverage" of the referenced FRA regulations – which, if so, would place the claims outside the scope of preemption, much less complete preemption.  The Arizona district court in *Sullivan* noted that the parties had identified for the Court's benefit no FRSA complete preemption authorities – authorities available to this Court.  *Sullivan* also applies a Ninth Circuit test – requiring both field and conflict preemption in order for complete preemption to apply – not controlling in this case.
[5] Although CSXT does not read the plaintiffs' complaint as involving ICCTA, the plaintiffs raise ICCTA in their brief (Remand Motion at 8).  To the extent that the plaintiffs' confusingly pleaded claims involve ICCTA, ICCTA's complete preemption serves as an additional basis to deny the plaintiffs' motion.

## CONCLUSION

Defendant CSXT respectfully requests that the Court deny plaintiffs' Motion to Remand, and exercise its subject matter jurisdiction over this action.

Respectfully submitted,

  /S/ Jonathan C. McCall
BRENT A. TALBOT (#19174)
JONATHAN C. MCCALL (#9227)
MICHAEL D. SPENCER (#27649)
  -of-
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075

and

ROY J. RODNEY, JR. (#02079)
JOHN K. ETTER (#25042)
  -of-
RODNEY & ETTER, L.L.C.
1232 Camellia Boulevard, Suite "C"
Lafayette, Louisiana  70508
Telephone:  (337) 981-5293
Telefax:  (337) 988-6918

**ATTORNEYS FOR CSX TRANSPORTATION, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 21ST day of November, 2006, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management.  All counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

  /S/ Jonathan C. McCall