UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § § § | CIVIL ACTION<br><br>NO. 05-4182<br><br>SECTION "K"<br>JUDGE STANWOOD R. DUVAL, JR. |
| PERTAINS TO:   06-2152 (REED) AND 06-4066 (ACKERSON) | § § § § | MAG. DIV. 2<br>MAG. JOSEPH C. WILKINSON, JR. |
| MRGO | § § § § | |

**MANSON CONSTRUCTION CO.'S OPPOSITION TO
BEAN DREDGING, L.L.C.'S RULE 12(B)(6) MOTION TO DISMISS AND/OR
RULE 56 MOTION FOR SUMMARY JUDGMENT (REC. DOC. 1155) AND TO
DREDGING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO LOUISIANA REVISED STATUTE 9:2772 AND FEDERAL RULE OF
CIVIL PROCEDURE 12(C) (REC. DOC. 1163)**

Defendant Manson Construction Co. ("Manson") respectfully must oppose Bean Dredging, L.L.C.'s ("Bean") Rule 12(b)(6) motion to dismiss and/or Rule 56 motion for summary judgment (Rec. Doc. 1155) and the Dredging Defendants' motion for judgment on the pleadings pursuant to Louisiana Revised Statute 9:2772 and Federal Rule of Civil Procedure 12(c) (Rec. Doc. 1163), because such are unfounded as a matter of law.

## I.     INTRODUCTION

While admitting that plaintiffs' claims against them are maritime torts subject to the admiralty and maritime jurisdiction of this Honorable Court,[1] Bean and the Dredging Defendants seek the benefit of Louisiana Rev. Stat. 9:2772 under the "maritime but local" doctrine in an attempt to defeat the federal statute that Congress enacted to govern the timeliness of maritime personal injury and death claims and the well-entrenched maritime doctrines of laches and contribution and indemnity.  As a result, the question for the Court is this:  does federal law preempt Louisiana peremptive statutes with respect to plaintiffs' maritime tort claims?  "Yes," Manson submits, "federal law preempts Louisiana law in this case so that the characteristic features of admiralty law are preserved."

## II.    BACKGROUND

On April 24, 2006, Philip Reed, a resident of New Orleans, on behalf of similarly situated individuals, filed a class action complaint in New Orleans federal court.  The complaint alleges that the United States of America, through the Corps of Engineers,  as well as Bean and the Dredging Defendants,  performed dredging activities that caused environmental damage to surrounding wetlands that, in a natural state, would have protected Orleans and St. Bernard Parishes from flooding during and after Hurricane Katrina.  The complaint alleges that, as a result, class action plaintiffs sustained (1) property damage; (2) loss of use damages; (3) restoration damages; (4) diminution of property value; (5) ecological damage; (6) loss of income, profits and business opportunity; (7) mental anguish and emotional distress; (8) bodily harm; (9) death; and (10) past and future medical expenses.

---

[1] See Dredging Defendants' memorandum of law in support of motion to dismiss pursuant to the Suits in Admiralty Act and Fed. R. Civ. P. 12(c), at page 4, at subsection "A.  Maritime Torts:" "Plaintiffs' tort claims are admiralty claims."

2

The *Reed* Complaint names as defendants the Corps of Engineers and the Dredging Defendants, including Manson and Bean.

With respect to dredging activities, the *Reed* complaint alleges that until 1999, the Corps of Engineers performed all or most of the dredging, most recently using its Dredge WHEELER. Further, from 1999 to 2004, the New Orleans District of the Corps of Engineers awarded 154 contracts to the Dredging Defendants and other companies.

Specifically, the *Reed* complaint alleges that (i) Bean dredged in 1993, 1996, 1998, 1999, 2002, and 2004; (ii) T. L. James dredged in 1994, 1995, and 1997; (iii) Gulf Coast Trailing dredged in 1994 and 1997; (iv) Great Lakes dredged in 1995, 1998, 1999, 2001, 2004, and 2005; (v) Natco Limited Partnership dredged in 1997; (vi) Weeks Marine dredged in 1999, 2002, and 2003; (vii) Mike Hooks dredged in 2001; (viii) Luhr Bros., Inc. dredged in 2001; (ix) Manson dredged in 2003; (x) Pine Bluff Sand and Gravel dredged in 2004; and (xi) King Fisher Marine dredged in 2004.

On July 14, 2006, Manson answered the *Reed* suit and asserted a cross claim for contribution and indemnity against Bean and the Dredging Defendants for the *Reed* plaintiffs' claims.

On August 1, 2006, an identical suit was filed on behalf of the *Ackerson* plaintiffs (C. A. 06-4066).

On September 15, 2006, Manson answered the *Ackerson* suit and again asserted a cross claim for contribution and indemnity against Bean and the Dredging Defendants for the *Ackerson* plaintiffs' claims.

3

## III.   ANALYSIS

As stated, Bean and the Dredging Defendants concede that the *Reed* and *Ackerson* plaintiffs allege maritime torts subject to admiralty jurisdiction.[2]  For this reason, to place the case in the proper context, it is appropriate first to consider the maritime legal principles at issue.

### A.   *Maritime Torts – Time Limit to File Suit.*

Under federal maritime law, with respect to personal injury and death claims, in 1980 Congress codified 46 U.S.C. § 763a to govern the time delay within which a maritime tort plaintiff can bring suit for personal injury or death.  Specifically, 46 U.S.C. § 763a provides:

> Unless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued.

With respect to when a cause of action "accrues," courts sitting in admiralty employ the "discovery" rule.  According to the discovery rule, a cause of action accrues when the plaintiff knows, or should know, of the injury and its cause.[3]

For maritime torts unrelated to personal injury or death, the maritime doctrine of laches applies.  Indeed, for more than 130 years it has remained an undisputed principle of maritime law that admiralty prefers the equitable rule of laches as opposed to any rigid limitation.[4]  The rule is that "the delay which will defeat such a suit must in every case depend on the peculiar

---

[2] See Footnote No. 1, *supra*.

[3] *See, e.g., Clay v. Union Carbide Corp.*, 828 F.2d 1103 (5th Cir. 1987); *White v. Mercy Marine Division of Brunswick, Inc.*, 129 F.3d 1428 (11th Cir. 1997) citing *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (holding that the discovery rule applies in determining when a cause of action accrues under the Federal Employers' Liability Act); and *United States v. Kubrick* (holding the discovery rule applies to a cause of action brought under the Federal Tort Claims Act).

[4] *The Key City*, 14 Wall. (81 U.S.) 653, 660, 20 L.Ed. 896 (1871); *Gardner v. Panama R. Co.*, 342 U.S. 29, 30, 72 S.Ct. 12, 13 (1951). *See also Pure Oil Co. v. Snipes*, 293 F.2d 60 (5th Cir. 1961)(the equitable doctrine of laches controlled the timeliness of the suit rather than Louisiana's one-year statute of limitations arising out of a suit by a member of an oil-drilling crew against the owner of an oil-drilling platform.)

NO.99728208.1

circumstances of that case."[5]   The doctrine of laches governs "the disposition of maritime claims regardless of the form or forum of the suit."[6]

To that end, for maritime tort cases not governed by a specific federal statute, a court sustains a laches defense upon proof of two elements: (1) lack of diligence by the plaintiff in asserting his/her claim; and (2) prejudice to the party asserting the defense.[7]  Although laches is not identifiable with any particular state or federal statute, it may under certain circumstances be analyzed by reference to an analogous or otherwise applicable statute's period of limitation.  As a result, La. Rev. Stat. 9:2772, which applies to a contractor's tort liability, could only arguably be relevant to the time within which a maritime tort plaintiff could sue.  If arguably applicable, La. Rev. Stat. 9:2772 would weigh on the side of prejudice and against dilatoriness with the excuse, if any, as a counterbalance.  In other words, for claims not preempted by 46 U.S.C. § 763a, Bean and the Dredging Defendants could only argue that this Court should consider La. Rev. Stat. 9:2772 as part of the Court's laches analysis.  La. Rev. Stat. 9:2772 does not control in and of itself as movants suggest.

In sum, the truth is that courts sitting in admiralty will not permit rights arising under the general maritime law to be whittled down by state statutes of limitation.  Bean's and the Dredging Defendants' motions wholly ignore this fundamental characteristic of federal maritime law.

B.    *Maritime Indemnity and Contribution.*

Similarly, in the maritime tort context, it is also a firmly entrenched principle of maritime law that joint tortfeasors are, depending on the facts and circumstances, entitled to contribution

---

[5] *The Key City*, 14 Wall. At 620.

[6] *Larios v. Victory Carriers, Inc.*, 316 F.2d 63, 65 (2d Cir. 1963); *Czaplicki v. Hoegh Silvercloud*, 351 U.S. 525, 531, 76 S. Ct. 1946, 100 L.Ed. 1387 (1956); *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 30 L.Ed.2d 550 (1959).

[7] *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961).

NO.99728208.1

and/or indemnity from a co-joint tortfeasor.[8]  This is because maritime law imposes joint and solidary liability upon tortfeasors who are alleged to have caused injury to a third-party.   If one tortfeasor pays a disproportionate share of the plaintiff's judgment, that tortfeasor is entitled to seek contribution from the remaining tortfeasors.  Further, the cause of action for contribution and/or indemnity, as the case may be, does not arise until payment or settlement of the plaintiff's claim.[9]  As discussed below, however, were the Court to find La. Rev. Stat. 9:2772 applicable to this case, it would, in effect, displace this important and well-entrenched component of the maritime fault regime.

C.     *The Louisiana Peremptive Statute On Contractors' Liability.*

Having discussed the federal maritime law at issue in the context of Bean's and the Dredging Defendants' motions, it is appropriate to discuss the Louisiana peremptive statute that Bean and the Dredging Defendants ask this Court to apply to the detriment of fundamental maritime law precepts.

Pretermitting the issue of whether a maritime dredger would qualify for peremption in the first instance, La. Rev. Stat. 9:2772 currently provides a peremptive period of five (5) years within which to bring actions involving deficiencies in surveying, design, supervision, or construction of immovables or improvements.     Prior to 2003, La. Rev. Stat. 9:2772's peremptory period was seven (7) years.  Prior to 1999, the peremptory period was ten (10) years.

Both the 1999 and 2003 changes are prospective and not retroactive.   Therefore, construction (i) completed prior to 1999 is subject to claims within ten (10) years of completion; (ii) construction completed between 1999 and 2003 is subject to claims within seven (7) years of

---

[8]*See, e.g., The Schooner Catherine v. Dickinson*, 58 U.S. (17 How.) 170, 15 L.Ed. 233 (1855); *Cooper v. Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974); *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421 (5th Cir. 1988), *rehearing denied* 860 F.2d 1255 (5th Cir. 1988).

[9] *See, e.g., Bradford v. Indiana & Michigan Elec. Co.*, 588 F.Supp. 708 (S.D.W.Va. 1984).

6

completion; and (iii) construction completed in 2003 and beyond is subject to claims within five (5) years of completion. This is because prescription merely prevents the enforcement of a right by inaction; in contrast, peremption destroys the right itself.[10] "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."[11] Periods of limitation that are preemptive are a condition of the right such that they are substantive in nature.[12]

In the absence of contrary legislative expression, substantive laws apply prospectively only.[13] And while it is well established that statutes of limitation are remedial in nature and as such are generally accorded retroactive application,[14] "Louisiana courts, and courts generally, distinguish between a period of limitation that is prescriptive and therefore procedural and one that is peremptive, a condition of right, and therefore substantive."[15] Because the peremptory period amendments to La. Rev. Stat. 9:2772 are substantive in nature, they can be applied prospectively only.

Significantly, La. Rev. Stat. 9:2772(B)(3) also states that it applies not only to direct claims against the contractor, but also to claims for contribution and indemnity:

> This peremptive period shall apply to every demand, whether
> brought by direct action or for contribution or indemnity or by
> third-party practice, and whether brought by the owner or by any
> other person.

So, as discussed below, were the Court to apply La. Rev. Stat. 9:2772, the maritime principles of contribution and indemnity would also be subverted, thus improperly eradicating

---

[10] *See Pounds v. Schori*, 377 So.2d 1195 (La. 1979); *Flowers Inc. v. Rausch*, 364 So.2d 928 (La. 1978).

[11] La. Civ. Code Art. 3458.

[12] *Kenney v. Trinidad Corp.*, 349 F.2d 832, 837 (5th Cir. 1965).

[13] La.Civ.Code Art. 6 (2006).

[14] *Kenney*, 349 F.2d at 837 (citations omitted).

[15] *Id.*

7

entirely Manson's cross-claims for contribution and indemnity against Bean and the Dredging Defendants – which are fundamental maritime rights.

       D.     *Under the Supremacy Clause, Federal Maritime Law Preempts the Louisiana Peremptive Statute.*

Having set forth the concepts involved, the issue is do these federal maritime law statutes and principles preempt the Louisiana peremptive statute? "Yes," Manson submits, "And here's why."

Within its sphere of operation, the maritime law of the United States is supreme; and the states are without power to disrupt it:

> [T]he "saving to suitors" clause [now codified at <u>28 U.S.C. § 1333</u>] allows state courts to entertain *in personam* maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called "reverse-Erie" doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.[16]

The Supreme Court laid the foundation of this doctrine in a series of cases more than 80 years ago.[17] Although the broad pronouncements of those early cases have been often hedged and qualified,[18] their core meaning remains: "If there is any sense at all in making maritime law a federal subject, then there must be some limit set to the power of the states to interfere in the field of its working."[19]

Generally stated, the Supremacy Clause analysis in the federal maritime law context is this: "Although state law may supplement maritime law where maritime law is silent, or where

---

[16] *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 2495, 91 L.Ed.2d 174 (1986).

[17] *See Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); *Chelentis v. Luckenbach S.S. Co.,* 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918); *Knickerbocker Ice Co. v. Stewart,* 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920).

[18] S*ee, e.g., Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 373-75, 79 S.Ct. 468, 480-81, 3 L.Ed.2d 368 (1959).

[19] G. Gilmore & C. Black, *The Law of Admiralty* § 1-17, at 48 (2d ed. 1975).

8

a local matter is at issue, state law may not be applied where it would conflict with maritime law."[20]   Put another way, while state law occasionally may be used to fill the gaps in an incomplete and less than perfect maritime system, state law cannot be employed to contravene an act of Congress, to prejudice the characteristic features of the maritime law, or to disrupt the harmony maritime law strives to bring to international and interstate relations.[21]

To determine when state law can be used, federal courts sitting in admiralty consider several factors, as follows:[22]

1.   Where state law provides detailed distinctions that are absent from and of little or no concern to maritime law, this factor weighs in favor of allowing maritime law to be supplemented.

2.   State law can supplement maritime law when the law regulates behavior in which the state has an especially strong interest.[23]   The "maritime but local" idea is a corollary:  the state interest, whatever its magnitude, is viewed as greater than any maritime concern.[24]

3.   State law can generally not be used to supplement maritime legislation because Congress is supreme in matters maritime, and the legislation is more likely than federal judge-made maritime law to be complete and self-sufficient.[25]   So, state law that conflicts with statutory maritime law is preempted.

4.   State law must work "no material prejudice to the essential features of the general maritime law" or it is preempted.[26]  In other words, maritime law preempts state law whenever a uniform rule will facilitate maritime commerce, or, conversely, when non-uniform regulation will work a material disadvantage to maritime

---

[20] *Coastal Iron Works, Inc. v. Petty Ray Geophysical,* 783 F.2d 577, 582 (5th Cir.1986) (citations omitted).

[21] *J. Ray McDermott & Co. v. The Vessel Morning Star,* 457 F.2d 815, 818 (5th Cir.) (en banc) (Ship Mortgage Act need not be supplemented by state law), *cert. denied,* 409 U.S. 948, 93 S.Ct. 271, 34 L.Ed.2d 218 (1972).

[22] *See, e.g., Exxon Corp. v. CHICK KAM CHOO,* 817 F.2d 307, 316-318 (5th Cir. 1987).

[23] *See, e.g., Askew v. American Waterways Operators,* 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1972) (Florida oil spill regulations);  *Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310, 316-19, 75 S.Ct. 368, 371-73 (1981) (Absent federal statute or judicially created rule, states have  power to regulate marine insurance.)

[24] *See, e.g., Grant-Smith-Porter Ship Co. v. Rohde,* 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed.2d 321 (1922) (carpenter injured while building ship on navigable waters cannot bring an action in admiralty but is restricted to state workman's compensation);  *cf. Kamani v. Port of Houston Authority,* 702 F.2d 612, 614 (5th Cir.1983) (action by longshoreman working aboard ship; remanding question whether state or maritime statute of limitations should apply to maritime action brought against state under the Texas Tort Claims Act).

[25] *Cf. Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (DOSHA may not be supplemented by judge-made recovery rules).

[26] *See John Baizley Iron Works v. Span,* 281 U.S. 222, 230-232, 50 S.Ct. 306, 307-08, 74 L.Ed. 819 (1930).

actors.   This concept is described as the need for uniformity.  Applying state law inconsistent with "characteristic features" of maritime law would defeat the reasonably settled expectations of maritime actors.[27]

5.    State law that conflicts or is inconsistent with international or interstate relations is preempted.

Applying these factors to this case, it is clear why La. Rev. Sta. 9:2772 cannot apply to the *Reed* and *Ackerson* plaintiffs' maritime tort claims.  First, by reason of 46 U.S.C. § 763a and the maritime doctrines of laches and of indemnity and contribution, can it truly be suggested that La. Rev. Stat. 9:2772 provides detailed distinctions that are absent from or of little concern to federal maritime law?   To the contrary, Congress specifically adopted 46  U.S.C. § 763a to govern the time within which maritime personal injury and death suits must be filed.  Not only this, but for more than 130 years, courts sitting in admiralty have applied the equitable doctrine of laches to determine when a maritime tort suit may be brought, and have specifically rejected a rigid limitation period.[28]   Further, to apply La. Rev. Stat. 9:2772 to these claims would mean that the Court would have to displace the "discovery rule" applicable to the timeliness of maritime tort actions, and the *Reed* and *Ackerson* plaintiffs' alleged causes of action would not have  "accrued" when they knew, or should have known, of their injury and cause, but rather would have vanished even before their occurrence.

Second, with respect to whether the state has a strong interest in the resolution of these maritime tort claims, Manson submits that the state of Louisiana has no substantial interest in

---

[27] *See, e.g., Branch v. Schumann,* 445 F.2d 175, 178 (5th Cir.1971) (Florida may not impose higher standard of care on owner-operator of a motorboat than the "reasonableness" standard of general maritime law);  *cf. Byrd v. Byrd,* 657 F.2d 615, 617-18 (4th Cir.1981) (admiralty court should not apply Virginia inter-spousal immunity doctrine; trend is away from this immunity; state law should not be applied "where its application would defeat an otherwise meritorious cause of action") (citing cases).  Uniformity is related to predictability and to reasonable legal expectations.  As a result, it is of greatest importance where, as here, legal relations are not predictably related to a certain locale and its laws.  For example, the Dredging Defendants would potentially be performing dredging work for the United States Army Corps of Engineers in numerous states.

[28] *See e.g. Pure Oil Co. v. Snipes,* 293 F.2d 60 (5th Cir. 1961)(finding that the equitable doctrine of laches controlled the timeliness of the suit rather than Louisiana's one-year statute of limitations arising out of a suit by a member of an oil-drilling crew against the owner of an oil-drilling platform).

10

applying its law to govern the purported liability of dredging contractors on a navigable waterway like the Mississippi River Gulf Outlet. <u>Certainly, Louisiana has absolutely no interest in using its laws to deprive its citizens of their maritime law rights.</u>  Further, many of the dredgers are non-Louisiana companies, including Manson (State of Washington); Great Lakes (State of New Jersey with principal place of business in Illinois); King Fisher Marine (Port Lavaca, Texas); Luhr Bros. (headquartered in Columbia, Illinois, but with offices in Louisiana); Pine Bluff Sand and Gravel (headquartered in Pine Bluff, Arkansas); and Weeks Marine (headquartered in New Jersey with offices in Louisiana).  Additionally, while submitting that the Mississippi River Gulf Outlet riverbed is an immovable, Bean and the Dredging Defendants have offered no evidence whatsoever to lead this Court to the conclusion that when the Louisiana Legislature adopted La. Rev. Stat. 9:2772, it intended for this statute to apply to suits against maritime dredging contractors allegedly performing negligent dredging work (which is vehemently denied as a matter of fact) on the Mississippi River Gulf Outlet for the United States Army Corps of Engineers.   In contrast, the United States has a significant interest in plaintiffs' maritime tort claims, which includes a direct claim by the *Reed* and *Ackerson* plaintiffs against the United States Army Corps of Engineers arising out of maritime dredging contracts on the Mississippi River Gulf Outlet, which is a federally funded project.

Third, Bean and the Dredging Defendants cannot genuinely contend that applying the Louisiana peremptive statute to plaintiffs' maritime tort claims would not conflict with the characteristic features of maritime law and defeat its desired uniformity. Specifically, 46 U.S.C. § 763a directly contradicts La. Rev. Stat. 9:2772 because 46 U.S.C. § 763a allows suits within three years of when the cause of action "accrues." Similarly, for over 130 years, maritime actors have known that the equitable doctrine of laches, as opposed to any rigid limitation or

11

preemptive period, applied to maritime torts.  Were the Court to now supplement – or rather rewrite – maritime law on this occasion with state law, which is subject to the ebb and flow of the Louisiana legislature's decision-making, federal maritime law would be in constant flux, with maritime torts governed by rigid state limitations depending upon the location where the maritime casualty occurs and the type of maritime actor being sued.[29]

Finally, La. R.S. 9:2772 (B)(3) directly conflicts with the firmly entrenched principle of indemnity and contribution because La. R.S. 9:2772 (B)(3) provides that in addition to direct claims, claims for contribution and indemnity are also barred if made outside the peremptive period.  To apply La. Rev. Stat. 9:2772 to this case would displace these important contribution and indemnity components of the maritime fault regime, thus destroying this essential feature of maritime law and defeating uniformity.  In short, applying La. Rev. Stat. 9:2772 would lead unnecessarily to uncertainty on the part of maritime actors in their legal relations, which would then potentially depend upon the state where the work is located and that state's laws.

In 1972, in a case involving movant/Dredging Defendant Great Lakes, the Louisiana Fourth Circuit Court of Appeal in *Sewerage and Water Board of New Orleans v. Sanders, et al.*,[30] reversed a trial court's sustaining an exception of prescription filed by Great Lakes based upon Louisiana Civil Code art. 3536 that provided for a 1-year prescriptive period to sue for offenses and quasi offenses, holding that the maritime doctrine of laches was substantive in nature, so that the Louisiana Civil Code must yield.  Interestingly, in *Sanders, supra,* Great Lakes

---

[29] *See e.g., The Key City,* 81 U.S. at 660 (the doctrine of laches, not state statutes of limitations apply to suits enforcing maritime liens); *Workman v. City of New York,* 179 U.S. 552, 560, 21 S.Ct. 212, 215, 45 L.Ed. 314 (1900) ("[I]t becomes manifest that the decisions of this court overthrow the assumption that the local law or decisions of a State can deprive of all rights to relief, in a case where redress is afforded by the maritime law and is sought to be availed of in a cause of action maritime in its nature and depending in a court of admiralty of the United States.")
[30] 264 So.2d 270, 272-274 (La. App. 4th Cir. 1972).

12

NO.99728208.1

was sued for its alleged negligence arising out of the dredging and backfilling of a pipeline trench on the Mississippi River Gulf Outlet.

In holding that the doctrine of laches is a substantive right essential to insure uniformity in the judicial administration of maritime law, such that laches – and not art. 3536 – governed the time within which plaintiff could sue Great Lakes, the Fourth Circuit stated:

> The question of whether prescription or laches is the proper limitation to a maritime tort action brought on a civil side of a federal court was squarely presented in the case of *Oroz v. American President Lines,* 259 F.2d 636 (2d Cir. *1958).* In resolving this issue, the court stated at pages 638, 639:
>
>> 'Sound judicial administration of maritime claims requires uniformity with respect to the measure of limitations as well as with respect to such matters as contributory negligence and burden of proof.
>>
>> 'For these reasons we are of the opinion that the proper measure of the time within which suit must be commenced is the admiralty doctrine of laches, not a local statute of limitations.'
>
> Subsequently, in the case of *Larios v. Victory Carriers, Inc., 316 F.2d 63, 65 (2d Cir. 1963),* after noting that laches and not the statute of limitation was the controlling principle with respect to the effect of a delay in bringing suit, the court observed:
>
>> '(This) would also be true if the suit against Victory Carriers and Onassis Corp. had been brought in a state court under the saving clause. For it is now clear that the maritime law controls all 'substantive' issues in the disposition of maritime claims regardless of the form or forum of suit.'[31]

This same rationale applies with equal force to this day. The *Reed* and *Ackerson* plaintiffs' claims against Great Lakes, Bean, and the remaining Dredging Defendants are subject to federal maritime law: 46 U.S.C. § 763a and the "discovery" rule, as well as the maritime principles of laches and contribution and indemnity.

---

[31] 264 So.2d at 272-274.

E.    *Bean's and the Dredging Defendants' Arguments.*

To avoid preemption, Bean and the Dredging Defendants attempt to draw a distinction between the concept of peremption and statutes of limitations, averring that admiralty "has no rules governing the duration of a contractor's liability."  But from the maritime law perspective and the application of the doctrine of laches, this is a distinction without a difference.  As discussed above, regardless of how Bean and the Dredging Defendants attempt to separate the concepts of statutes of limitation and peremption, the end result of peremption in admiralty law is the same:  it would defeat maritime tort claims without due regard to these fundamental maritime statutes and principles.  Indeed, while Bean and the Dredging Defendants reference many cases to illustrate purportedly the maritime but local doctrine,[32] they cannot cite even **one** case in the history of maritime law wherein a court sitting in admiralty has employed any law, whether a peremptive law, a prescriptive law, a statute of limitation, statutory bar, and/or a statute of repose, to displace wholly 46 U.S.C. § 763a and the doctrines of laches and contribution and indemnity.  That is because, in actuality, admiralty courts use the maritime but local doctrine to expand -- and not contract -- the remedies available to maritime tort plaintiffs by supplementing

---

[32] Further, not one of the cases cited by Bean and the Dredging Defendants supports using the maritime but local doctrine to the defeat federal statutory law on prescription of maritime personal injury and death claims or the doctrine of laches.  *See, e.g., Karim v. Finch Shipping Co.*, 374 F.3d 302, 308-09 (5th Cir. 2004)(admiralty courts may alter attorney contingency fee contract governed by state law involving uncounselled seaman); *Kossick v. United Fruit Co.*, 365 U.S. 731, 739 (1961)(The Court held that state law statute of frauds **cannot** be used to supplement maritime law.); *Green v. Industrial Helicopters, Inc.*, 593 S.3d 634, 638 (La. 1992); *Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1488 (11th Cir. 1986)(federal maritime law does not prohibit a direct action under state law against a maritime insurer); *American Dredging Co. v. Miller*, 510 U.S. 443 (1944)(This case involved an admiralty Jones Act suit brought in **state court** pursuant to "savings to suitors" clause.  The Court held that doctrine of forum *non conveniens* is procedural in nature, so that state law procedure on forum *non conveniens* could apply instead of its federal counterpart.  This case, however, is pending in a federal court, and Bean and the Dredging Defendants have not and cannot argue that while in federal court, 46 U.S.C. § 763a and the doctrines of laches and contribution are procedural in nature such that they could be displaced by state peremptive law.); *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir. 1991)(The Fifth Circuit held that the doctrine of *uberrimae fidei* did not constitute entrenched federal precedent, so that Texas law could govern interpretation of marine insurance contract.  In contrast, Bean and the Dredging Defendants cannot genuinely contest that the doctrine of laches and contribution and indemnity are not "entrenched" in the maritime law.)

14

admiralty law with plaintiff friendly state law.[33]  Here, the movants seek exactly the opposite --
using state law to deprive plaintiffs of rights.

In sum, Bean and the Dredging Defendants improperly ask this Court to grant them protection from claims for their alleged negligent acts that occurred more than 5 years ago, but without any regard whatsoever as to whether (a) the *Reed* and *Ackerson* plaintiffs' causes of actions had "accrued" three years before they filed; (b) the *Reed* and *Ackerson* plaintiffs were diligent in asserting their claims against Bean and the Dredging Defendants; and/or (c) the *Reed* and *Ackerson* plaintiffs purported lack of diligence prejudiced Bean and the Dredging Defendants in the defense of their case.

## IV.    CONCLUSION

The Supremacy Clause mandates that La. Rev. Stat. 9:2772 yield to federal statute 46 U.S.C. § 763a and the firmly-entrenched maritime principles of laches and contribution and indemnity so that the essential characteristics of maritime law are preserved.  Bean's and the Dredging Defendants' peremption motions lack merit as a matter of law and should be denied. Manson respectfully submits that the Court should deny the motions and instead enter a judgment that 46 U.S.C. § 763a and the firmly-entrenched maritime principles of laches and contribution and indemnity apply to the *Reed* and *Ackerson* plaintiffs' claims.

---

[33] *See, e.g., Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 116 S.Ct. 619 (1996) and cases cited therein.

NO.99728208.1

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: _____

George M. Gilly, T.A.(Bar #6234)
William J. Riviere (Bar #20593)
Evans Martin McLeod (Bar #24846)
Christian E. Daigle (Bar #29819)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130

ATTORNEYS FOR MANSON CONSTRUCTION
CO. AND MANSON GULF, L.L.C.

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by electronic transmission, facsimile and/or by placing same in the United States mail, properly addressed and first class postage prepaid on this 21st day of November, 2006.

_____

16