UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO.: 05-4182 "K"(2) |
| | * | JUDGE DUVAL |
| _____ | * | MAGISTRATE JUDGE WILKINSON |
| PERTAINS TO: INSURANCE, | * | |
| *Xavier Univ. of La.*, No. 06-0516 | * | |
| | * | |
| | * | |

### DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
### MOTION FOR MODIFICATION OF
### SCHEDULING ORDER AND CONTINUATION OF TRIAL DATE

It would be a waste of the Court's time and the parties' resources to conduct expert discovery or a trial of this case before the U.S. Court of Appeals for the Fifth Circuit has ruled on the water damage exclusion. This case should proceed on the same track as the other water damage exclusion cases that are part of the *In re Katrina Canal Breaches Consolidated Litigation* matter. Expert discovery and the trial of this case should not be conducted until after the Fifth Circuit has ruled. In the alternative, if the Court is going to proceed with a trial before the Fifth Circuit's ruling, a reasonable continuance of all deadlines including trial, at least 60 days should be granted.

1. **The Issues to Be Tried in this Case and the Nature of the Expert Testimony Required Will Depend Upon How This Court and the Fifth Circuit Rule on the Water Exclusion**

In seeking to modify the scheduling order and continue the trial date, Defendant Travelers Property Casualty Company of America ("Travelers") explained in detail how this case cannot efficiently be tried until the Fifth Circuit has ruled on the water exclusion. In response, Xavier University of Louisiana ("Xavier") contends that the Court could conduct a trial before that issue is resolved and simply determine the amount of damages "above the water line" and the amount of damages "below the water line." (Xavier Memo., at 5.) This case is not that simple. Xavier has submitted a claim in excess of $40 million for damages to 25 separate buildings on its campus. Of this total, Xavier seeks to recover for substantial damages that are "above the water line" but were clearly caused by the accumulation of moisture from the flood waters, such as mold damage and costs incurred for dehumidification, *inter alia*. The issues to be tried would be very different depending on how the Fifth Circuit ultimately rules on the water exclusion:

| **Possible Fifth Circuit Rulings on Water Exclusion** | **Principal Issues to Be Tried and Expert Testimony Required** |
|---|---|
| **Possibility No. 1** | |
| Fifth Circuit upholds Travelers' position that water exclusion applies to water released from levees regardless of the cause of the levee breach. | • Whether the reasonable cost of repairing the wind damage to Xavier's buildings is $5 million (the approximate amount paid by Travelers), more than $15 million (as Xavier contends) or some amount in between.<br><br>• To what extent the damage "above the water line" in each of Xavier's buildings was caused by floodwaters as opposed to wind. For example, Travelers contends that there is no coverage for remedying the effects of |

2

| **Possible Fifth Circuit Rulings on Water Exclusion** | **Principal Issues to Be Tried and Expert Testimony Required** |
|---|---|
| | the moisture that was present in the buildings due to the flood, including but not limited to dehumidification and mold.<br><br>• Expert testimony will be necessary with respect to the reasonable cost of the repairs and the cause of the damage. |
| **Possibility No. 2**<br><br>Fifth Circuit holds, consistent with Xavier's position, that the water exclusion applies only to the extent that the levee breaches were caused by a "natural" event. | • The extent to which the levee breaches on the 17th Street Canal and London Avenue Canal resulted from a "natural" as opposed to "man-made" cause.<br><br>• Where the water that impacted each of Xavier's buildings came from -- i.e., to what extent it resulted from a "natural" as opposed to "man-made" cause.<br><br>• The extent to which the damage to Xavier's buildings resulted from "natural" floodwaters as opposed to wind or "man-made" floodwaters.<br><br>• What the reasonable cost is of repairing the wind damage and "man-made" flood damage to Xavier's buildings.<br><br>• Whether Travelers is entitled to offsets or credits for payments made to Xavier by its flood insurance carrier.<br><br>• Expert testimony will be necessary with respect to the cause of the levee breaches, the flow of the water from the levee breaches to Xavier's buildings, the reasonable cost of the repairs and the cause of the damage to Xavier's buildings. |

| **Possible Fifth Circuit Rulings on Water Exclusion** | **Principal Issues to Be Tried and Expert Testimony Required** |
| --- | --- |
| **Possibility No. 3** | |
| Fifth Circuit holds that the water exclusion is completely inapplicable to the water damage to Xavier's buildings. | • What the reasonable cost is of repairing all of the damage to Xavier's buildings caused by both wind and flood. Xavier contends that this amount is in excess of $40 million.<br><br>• Expert testimony will be necessary only with respect to the reasonable cost of the repairs.<br><br>• Whether Travelers is entitled to offsets or credits for payments made to Xavier by its flood insurance carrier. |

As demonstrated by the table set forth above, the nature of the issues to be tried in this case will be substantially different depending on how the Fifth Circuit rules on the water damage exclusion. In order to even prepare to try the "natural" versus "man-made" issue, if it were relevant to coverage, Travelers would need to take substantial additional discovery, which would likely need to be done in conjunction with the other matters pending in *In re Katrina Canal Breaches Consolidated Litigation*. Travelers would also need to retain additional expert witnesses on that issue. Xavier's opposition to this motion completely ignores that issue. Even putting that issue aside, depending on the nature of the Fifth Circuit's decision, this may be an approximately $10 million dispute or an approximately $35 million dispute. (Travelers has already paid the undisputed amount of approximately $5 million for wind damage.) The quantity and nature of the testimony required on valuation of the damages will vary greatly depending on the amount in dispute. Moreover, if the Fifth Circuit's decision effectively reduces the amount

4

in dispute to $10 million (the difference between the $15 million claimed and the $5 million paid), it is more likely that the parties would be able to resolve the dispute, avoiding the need for a lengthy trial.

In other cases involving the water damage exclusion that are part of *In re Katrina Canal Breaches Consolidated Litigation*, including *Vanderbrook* and *Chehardy*, discovery is effectively stayed by order of the Court. On April 6, 2006, the Court ordered that "Rule 26(a)(1) disclosures shall be deferred until further order of the Court . . . ." (Minute Entry for Apr. 6, 2006 Status Conference, at p. 4, attached as Exhibit A hereto). Given that initial disclosures are the first step in the discovery process, discovery is not proceeding in those cases. See Fed. R. Civ. P. 26(d) (providing that parties may not seek discovery prior to Rule 26(f) conference, at which parties are required to arrange for Rule 26(a)(1) initial disclosures). While the Court has not clarified whether the April 6, 2006 order deferring discovery applies to new cases subsequently transferred to the *In re Katrina Canal Breaches Consolidated Litigation* matter, in the interests of judicial and litigant economy, all of the water damage exclusion cases that are presently consolidated should proceed on the same track.

The Court's limited resources should not be expended conducting a lengthy trial in this case on issues that may not need to be tried depending on how the Fifth Circuit rules. The issues presented by this case involving the water exclusion are similar to the issues presented in many other cases filed by individual homeowners and other plaintiffs that are also pending in this Court. There is no compelling reason why Xavier should be entitled to preferred treatment, or

should waste this Court's resources and cause unnecessary time and effort to be expended for a trial on issues that may never need to be tried.[1]

### 2. If the Court is Going to Proceed With a Trial of this Case Prior to a Fifth Circuit Ruling, A Reasonable Continuance Should Be Granted

If the Court decides to proceed with a trial before the Fifth Circuit rules on the water exclusion, a reasonable continuance of the trial date of at least 60 days and corresponding extension of all pre-trial deadlines should be granted. While Xavier has aggressively pursued discovery from Travelers, Xavier has stonewalled with respect to Travelers' efforts to obtain basic documentation from Xavier that is clearly discoverable and is central to the parties' dispute. For example, Travelers only recently learned that, shortly after the hurricane, Mr. Jim Landis of Landis Construction Co., LLC ("Landis"), the general contractor hired by Xavier, prepared a detailed itemization of the scope of the damage to Xavier's buildings. In addition, Sarah Busch, a Landis Project Superintendent also performed a scope for each of the 25 buildings on Xavier's campus. While this document was requested in Request No. 11 of Travelers' Request for Production of Documents, Xavier never produced it. (See Exhibits "A" and "B", Request No. 11 and response thereto. While Xavier previously provided a vague estimate prepared by Landis that is attached to Xavier's opposition to this motion, this estimate contained only amounts for broad categories of work such as "rough carpentry" and "finish

---

[1] While Xavier attempts to assert that it is in dire financial straits, there is no evidence of that. As Xavier admits, it paid for the repairs to its buildings using endowment funds, unrestricted funds and gift income. While Xavier unquestionably sustained substantial losses, Xavier has resumed its operations and has been paid in excess of $9 million by Travelers. If the Court were to determine that the millions of dollars paid by Travelers to date are insufficient, Xavier will be entitled to interest on any deficiency judgment that it obtains. There is no compelling reason why this case must take precedence over those of the many homeowners who have not yet repaired the damage to their homes and have also sued their insurers in this Court alleging that

carpentry." Xavier never provided the scopes prepared by Landis, which contains the type of detail that is customarily found in a commercial insurance claim submission, and which was necessary for Travelers' expert witnesses to perform their analysis.

In addition, Xavier has repeatedly refused to produce the documents pertaining to its flood insurance claim, or even identify the flood insurance carrier so that Travelers could serve a subpoena to obtain the flood claim documents. (See Exhibits "A" and "B", Request Nos. 3-7.) The flood insurance claim documents are plainly relevant to this dispute and should have been produced long ago.

If this Court decides to grant Xavier special treatment not afforded to the other parties in the Katrina Canal Breach litigation, an extension of time of at least 60 days is appropriate so that Travelers can obtain these essential documents from Xavier (via motion practice if necessary), arrange for its expert witnesses to complete their work after reviewing these documents, and complete additional necessary discovery, including obtaining discovery from Xavier's flood insurance carrier after it has been identified.

## CONCLUSION

For all of the foregoing reasons, in addition to those stated in Travelers' prior memorandum in support of this motion, Travelers' motion should be granted and an order should be entered staying all case management deadlines in this case and continuing the trial date pending a ruling on Plaintiffs' motion for partial summary judgment and completion of subsequent appellate proceedings.

---

the water damage exclusion is inapplicable or unenforceable and/or that they received insufficient payments for wind damage.

7

Respectfully submitted,

s/Simeon B. Reimonenq, Jr.
RALPH S. HUBBARD III, #7040
SIMEON B. REIMONENQ, JR., #19755
**LUGENBUHL, WHEATON, PECK,**
 **RANKIN & HUBBARD**
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:  (504) 568-1990
Facsimile: (504) 310-9195

**Attorneys for Travelers Property Casualty Company of America**

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2006, a copy of Defendant's Reply Memorandum in Support of Motion for Modification of Scheduling Order and Continuation of Trial Date was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all attorneys on the court's electronic listing by operation of the court's electronic filing system.  I also certify that I have mailed by United States Postal Service this filing to those attorneys listed by the court as non-CM/ECF participants.

s/Simeon B. Reimonenq, Jr.
SIMEON B. REIMONENQ, JR.