IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| WINSTON, SR. & DONNA AARON, et al., | ) ) ) | CIVIL ACTION NO. 06-4746 JUDGE DUVAL |
| Plaintiffs, | ) ) | MAG. WILKINSON |
| v. | ) ) | |
| AIG CENTENNIAL INSURANCE COMPANY, et al., | ) ) ) | |
| Defendants. | ) | |


**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
ON BEHALF OF THE AIG DEFENDANTS**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................ 3

I.     The Complaint Fails To Meet The Notice Requirements of Rule 8(a)................. 3

    A.     The Complaint Fails To State A Claim By Any Single Plaintiff Against
Any Of The AIG Defendants ................................................................... 4

    B.     None Of The Separate Counts States A Cause of Action .......................... 6

        1.     The Breach-Of-Contract Claim Must Be Dismissed Because
No Plaintiff Alleges An Insurance Contract With An AIG
Defendant ................................................................................... 7

        2.     No Plaintiff States A Claim That An AIG Defendant Acted
Arbitrarily, Capriciously, Or Without Probable Cause In
Violation Of Section 658 ............................................................. 8

        3.     No Plaintiff States A Claim Against An AIG Defendant For
Breach Of Duty Under Section 1220 ............................................ 9

        4.     No Plaintiff States A Claim Against An AIG Defendant Under
The Provisions Of Section 658.2 ................................................. 10

        5.     No Plaintiff States A Claim Against An AIG Defendant For
Failure To Tender Fair And Adequate Payment For Casualty
Losses ....................................................................................... 11

        6.     No Plaintiff States A Claim Against An AIG Defendant For
Bad Faith Adjusting Practices ..................................................... 13

        7.     No Plaintiff States A Claim Against An AIG Defendant For
Failure To Comply With Louisiana's Valued Policy Law .......... 14

II.    The Complaint Should Be Dismissed For Failure To Satisfy The Requirements
For Joinder Under Rule 20(a) ............................................................................ 16

III.   Conclusion ....................................................................................................... 23

i

# TABLE OF AUTHORITIES

Page

**CASES**

*Abdullah v. ACandS, Inc.*,
    30 F.3d 264 (1st Cir. 1994)................................................................................... 19

*Arikat v. JP Morgan Chase & Co.*,
    430 F. Supp. 2d 1013 (N.D. Cal. 2006) ................................................................... 4

*Beanal v. Freeport-McMoran, Inc.*,
    197 F.3d 161 (5th Cir. 1999) ..................................................................... *passim*

*CCBN.com, Inc. v. Thomson Fin., Inc.*,
    270 F. Supp. 2d 146 (D. Mass. 2003) ..................................................................... 9

*Chauvin v. State Farm Fire & Cas. Co.*,
    450 F. Supp. 2d 660 (E.D. La. 2006) ..................................................................... 16

*Clausen v. Fid. & Deposit Co. of Md.*,
    660 So. 2d 83 (La. Ct. App. 1995)........................................................................... 13

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ................................................................................... 7

*Conley v. Gibson*,
    355 U.S. 41 (1957).................................................................................................. 3

*Defourneaux v. Metro. Property & Cas. Ins. Co.*,
    Civil Action No. 06-3809, 2006 WL 2524165 (E.D. La. Aug. 30, 2006) ............... 21

*DIRECTV, Inc. v. Adrian*,
    No. 03 C 6366, 2004 WL 1146122, at *3 (N.D. Ill. May 18, 2004) ....................... 20

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................................ 3

*Edwards v. Allstate Prop. & Cas. Ins. Co.*,
    No. Civ. A. 04-2434, 2005 WL 221558 (E.D. La. Jan. 27, 2005)................... 8, 9, 12

*Fernandez-Montes v. Allied Pilots Ass'n*,
    987 F.2d 278 (5th Cir. 1993) ............................................................................... 4, 7

*Filson v. Windsor Court Hotel*,
    907 So. 2d 723 (La. 2005) ..................................................................................... 15

*Gen. Elec. Capital Corp. v. Se. Health Care Inc.*,
    950 F.2d 944 (5th Cir. 1991) ..................................................................... 14

*Graham v. Milky Way Barge, Inc.*,
    824 F.2d 376 (5th Cir. 1987) ..................................................................... 15

*Hopkins v. Saunders*,
    199 F.3d 968 (8th Cir. 1999) ............................................................. 4, 7, 10

*In re Consol. Cos.*,
    185 B.R. 223 (E.D. La. 1995), *aff'd* 106 F.3d 396 (5th Cir. 1996) ......................................... 15

*In re Nuclear Imaging Sys., Inc.*,
    277 B.R. 59 (Bankr. E.D. Pa. 2002) ......................................................... 21, 22

*Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*,
    696 F.2d 53 (7th Cir. 1982) ........................................................ 17, 18, 20, 22

*Karmanos v. Baker*,
    617 F. Supp. 809 (E.D. Mich. 1985) ............................................................... 22

*Kenvin v. Newburger, Loeb & Co.*,
    37 F.R.D. 473 (S.D.N.Y. 1965) ..................................................................... 19

*Kyle v. Morton High School*,
    144 F.3d 448 (7th Cir. 1998) ..................................................................... 4, 6

*League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*,
    558 F.2d 914 (9th Cir. 1977) ..................................................................... 17

*Lumber Prods., Inc. v. Hiriart*,
    255 So. 2d 783 (La. Ct. App. 1972) ................................................................. 7

*Mathew v. Kilroe*,
    170 F. Supp. 416 (S.D.N.Y. 1959) ................................................................. 5

*Mosley v. Gen. Motors Corp.*,
    497 F.2d 1330 (8th Cir. 1974) ...................................................... 17, 18, 21

*Munz v. Parr*,
    758 F.2d 1254 (8th Cir. 1985) .................................................................. 9, 10

*Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*,
    497 F.2d 1151 (4th Cir. 1974) ...................................................... 16, 19, 20, 22

*Phillips v. Patterson Ins. Co.*,
    813 So. 2d 1191 (La. Ct. App. 2002) ............................................................. 8, 9

*Purveegiin v. Pike County Corr. Facility*,
   No. 3:CV06-0300, 2006 WL 1620219 (M.D. Pa. June 6, 2006) ....................................... 21, 22

*Randall v. Lloyd's Underwriter's at London*,
   602 So. 2d 790 (La. Ct. App. 1992) ................................................................................... 7, 19

*Real Asset Mgmt. v. Lloyd's of London*,
   61 F.3d 1223 (5th Cir. 1995) ................................................................................................. 15

*Reinholdson v. Minnesota*,
   No. Civ. 011650, 2002 WL 32658480 (D. Minn. Nov. 21, 2002) ........................................... 5

*Riley v. Transamerica Ins. Group*,
   923 F. Supp. 882 (E.D. La. 1996) ..................................................................................... 7, 8, 9

*Rios v. City of Del Rio, Tex.*,
   444 F.3d 417 (5th Cir. 2006) .......................................................................................... 4, 7, 10

*Saval v. BL Ltd.*,
   710 F.2d 1027 (4th Cir. 1983) ......................................................................................... 19, 20

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966) ............................................................................................................... 16

*United States v. Alaska Pipeline Co.*,
   No. Civ. 95-725, 1997 WL 33763820 (D.D.C. Mar. 27, 1997) ....................................... 20, 22

*United States v. Bonanno Organized Crime Family of La Cosa Nostra*,
   683 F. Supp. 1411 (E.D.N.Y. 1988) ...................................................................................... 4

*Yucyco, Ltd. v. Republic of Slovenia*,
   984 F. Supp. 209 (S.D.N.Y. 1997) ..................................................................................... 4, 5

**STATUTES**

FED. R. CIV. P. 11(b) ...................................................................................................................... 6

FED. R. CIV. P. 21 ........................................................................................................................ 22

FED. R. CIV. P. 41(b) .................................................................................................................... 22

FED. R. CIV. P. 8(a)(2) ................................................................................................................... 3

LA. CIV. CODE ANN. art. 1 .......................................................................................................... 14

LA. CIV. CODE ANN. art. 9 .......................................................................................................... 14

LA. REV. STAT. ANN. § 22:1220 ............................................................................................... 9, 10

LA. REV. STAT. ANN. § 22:658 ................................................................................................... 8, 9

La. Rev. Stat. Ann. § 22:658.2............................................................................... 10, 11

La. Rev. Stat. Ann. § 22:695.................................................................................. 6, 14, 15

**STATE STATUTES**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1248
(3d ed. 2004) ............................................................................................................ 4

7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1655
(3d ed. 2001) .......................................................................................................... 17

Black's Law Dictionary 933 (8th ed. 2004) ........................................................... 17

AIG Centennial Insurance Co., AIG Indemnity Insurance Co., AIG National Insurance Co., Inc., AIG Premier Insurance Co., American General Indemnity Co., American General Property Insurance Co., The Hartford Steam Boiler Inspection & Insurance Co. of Connecticut, and Lexington Insurance Co. (collectively the "AIG Defendants") submit this memorandum in support of their motion to dismiss Plaintiffs' First Supplemental and Amended Complaint ("the Complaint") pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted and for improper joinder under Rule 20(a).[1]

## INTRODUCTION

In this case, more than 1,850 separate plaintiffs ("Plaintiffs") purport to bring claims against more than 100 separate insurance companies.  The Complaint purports to assert eight separate causes of action, each apparently brought against each of the defendant insurance companies, producing a staggering 1,480,000 or more nominal causes of action.  Despite this complexity, Plaintiffs base their claims on only a handful of general facts—indeed, the factual allegations are so sparse that they fail to provide any defendant with proper notice, even under the notice-pleading standards of Rule 8(a).  Most significantly, Plaintiffs fail to allege facts linking any claim by an individual Plaintiff to an individual defendant—and this despite the fact that each of the eight causes of action necessarily arises from individual contractual relationships between one Plaintiff and one—and only one—defendant.  Plaintiffs fail to indicate which Plaintiffs have insurance policies from which carriers, what type of policy or policies any Plaintiff had, whether a Plaintiff is claiming a "total loss" or insufficient payment for repairs, or

---

[1] This motion has not been filed on behalf of Audubon Indemnity Co. and The Hartford Steam Boiler Inspection & Insurance Co. because those entities have not been served with a summons or the Complaint.

1

the circumstances surrounding even one occurrence of allegedly improper claims handling by any one defendant.  The Fifth Circuit has instructed that such a complaint, "which contains [ ] 'bare bones' allegation[s] that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice."  *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (affirming motion to dismiss).  The Complaint should be dismissed as to the AIG Defendants for failure to state a claim.

The Complaint fails for the additional reason that the claims have been improperly joined.  Each Plaintiff's claim arises from a separate insurance policy with a single defendant, separate adjusting decisions, and separate instances of claims handling.  Thus, the claims fail to meet the requirements of Rule 20(a):   the alleged liability is not joint, several, or in the alternative, nor does it arise from a single transaction or occurrence.

## BACKGROUND

The facts alleged by Plaintiffs are few and general.  Plaintiffs simply allege that they all owned property in southeastern Louisiana and that the defendant companies "all issued policies of homeowners' property, commercial, business, rental and/or flood insurance covering plaintiffs' property."  Compl. ¶ 7.  There is no allegation, however, about which insurer or what type of policy allegedly insured any—let alone each—Plaintiff.   Plaintiffs allege that "a significant number of the claims are made under the National Flood Insurance Program," *id.* ¶ 5, but provide no further information.  Plaintiffs allege that all of the policies "provided coverage for losses and damages sustained by plaintiffs," *id.* ¶  11, and that "[a]s a result of the hurricane force winds and [the] consequent failure of levees, [their] properties were severely damaged and/or destroyed," *id.* ¶ 9; there is no allegation, however, about whether a Plaintiff seeks coverage for water damage, wind damage, or some other type of damage.  Plaintiffs also allege that the defendants failed to honor the terms of the policies by "tender[ing] insufficient and

2

untimely payments" that did not adequately cover the cost of repairs and damages, *id.* ¶¶ 14–15, but Plaintiffs make no effort whatsoever to allege what circumstances they claim made any payment either insufficient or untimely.

## ARGUMENT

### I.     The Complaint Fails To Meet The Notice Requirements of Rule 8(a)

The Complaint fails to state a claim against any of the AIG Defendants because it does not provide even the most basic notice as to any single Plaintiff's claim against an AIG Defendant.  Although the notice-pleading regime of the Federal Rules of Civil Procedure does not require detailed pleading of facts, it does require sufficient factual development of a claim to provide a defendant with notice.  As the Supreme Court explained last year, "the 'short and plain statement' [required by Rule 8(a)(2)] must provide the defendant with 'fair notice of what the plaintiff's claim is *and the grounds upon which it rests.*'"  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (emphasis added) (finding complaint legally insufficient for failing "this simple test").  The Fifth Circuit has made clear that a complaint that "contains a 'bare bones' allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury[] does not provide adequate notice." *Beanal*, 197 F.3d at 164.  This notice requirement applies to each Plaintiff and to each claim asserted by each Plaintiff.  FED. R. CIV. P. 8(a)(2) (requiring a short and plain statement of "the claim"); *Beanal*, 197 F.3d at 164 (requiring notice of the circumstances that give rise to "the claim").

Importantly, the requisite notice comes from factual allegations, not from the legal theories asserted.  "'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'"  *Rios v. City of Del Rio, Tex.*, 444

F.3d 417, 421 (5th Cir. 2006) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)), *cert. denied*, 127 S. Ct. 181 (2006).[2]

A.   **The Complaint Fails To State A Claim By Any Single Plaintiff Against Any Of The AIG Defendants**

The Complaint fails to meet Rule 8(a)'s standard. One of several significant flaws is its failure to link any claim by an individual Plaintiff to a particular defendant, a failing that deprives each defendant of the required notice. This defect is especially troubling because this case involves multiple claims, more than 1,800 individual plaintiffs, and more than 100 separate defendants. *See* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1248 (3d ed. 2004) ("Complaints involving multiple claims and parties often pose special pleading problems because of their inherent complexity."). As one court explained, Rule 8(a) "requires that a complaint against multiple defendants indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants." *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 219 (S.D.N.Y. 1997) (quotation marks omitted).[3] Courts have long held that a complaint's failure to clearly delineate

---

[2] *See also Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999) ("'[I]t is the facts well pleaded, not the theory of recovery or legal conclusions,' that state a cause of action and put a party on notice."); *Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir. 1998) ("For fair notice to be given, a complaint must at least include the operative facts upon which a plaintiff bases his claim.") (quotation marks omitted); *id.* at 456 ("[T]he law reporters are brimming with instances where a complaint failed to state a claim because of the lack of fair notice of the operative facts or the gravamen of the statement for relief.").

[3] *See also Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1020 (N.D. Cal. 2006) ("[P]laintiffs' allegations are insufficient in that they are ascribed to defendants collectively rather than to individual defendants."); *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 683 F. Supp. 1411, 1429 (E.D.N.Y. 1988) (describing "Rule 8's requirement that actions brought against multiple defendants must clearly specify the claims

[Footnote continued on next page]

4

which plaintiff asserts which claim(s) against which defendant warrants dismissal.  *See, e.g.*, *Mathew v. Kilroe*, 170 F. Supp. 416, 417 (S.D.N.Y. 1959) (granting dismissal of a claim because "[i]t is impossible to know from the complaint exactly what wrong is alleged to which defendant").[4]

Moreover, there is no basis for Plaintiffs' failure to state their claims directly against a defendant.  Each claim is an individual one because it is based either on an insurance contract between one insured and one insurer or on a statutory duty arising out of that insurance relationship.  In other words, each Plaintiff has claims against only his or her insurance company, not against each defendant insurance company, a point Plaintiffs themselves recognize by referring to their "respective" insurers.  Compl. ¶¶ 12, 13.  This is not a case where a plaintiff might not be able to determine which defendant is the proper subject of a given claim, as in a tort case with two potential causes; to the contrary, because the claims all flow from alleged insurance contracts, each Plaintiff should easily be able to identify the insurance company against which a given claim is brought.

The failure to allege basic facts about the policy under which a claim is made deprives the AIG Defendants of fair notice and creates significant practical problems.  Even if the AIG

---

[Footnote continued from previous page]
with which each particular defendant is charged") (quotation marks omitted), *aff'd*, 879 F.2d 20 (2d Cir. 1989).

[4] *See also Yucyco*, 984 F. Supp. at 219 (dismissing for failure to "articulate[] claims specific to this defendant"); *Reinholdson v. Minnesota*, No. Civ. 011650, 2002 WL 32658480, at *2–3 (D. Minn. Nov. 21, 2002) (dismissing complaint for failing to comply with Rules 8 and Rule 10(b) and stating, "One of the difficulties in this case is that the Second Amended Complaint fails to articulate which Plaintiff is suing which Defendant for what cause of action. These failures are compounded by the fact that there are not only multiple Defendants, there are multiple Plaintiffs. . . . Plaintiffs and Defendants are referred to in the plural, with no distinction as to which Plaintiff makes what claim against which Defendant.").

Defendants were to search their records to determine which, if any, of the more than 1,850 Plaintiffs had policies with them on August 29, 2005, they still would not gain sufficient information to reveal what claims any individual Plaintiff actually intends to assert.[5]   For example, many Plaintiffs have common names, which renders searches by name ineffective. Indeed, the Complaint includes two Meredith Williams, Compl. pp. 13, 14, and both a Willie Smith and a Willie Lee Smith, Compl. p. 11.  Moreover, a given Plaintiff might have more than one policy, such as a commercial policy on one property and a homeowner's policy on another, but on the sparse facts alleged by the Complaint, there is no way of knowing which Plaintiff is suing which defendant under which insurance policy or policies.

The Complaint also fails to link individual Plaintiffs to particular claims.  Because, for example, no details are provided about the extent of damage a given Plaintiff suffered, it is unclear whether any Plaintiff suffered a "total loss" and is making a claim under Louisiana's Valued Policy Law ("VPL"), LA. REV. STAT. ANN. § 22:695, or some lesser loss and is making a claim for cost of repair.  The Complaint similarly fails to allege which Plaintiffs are bringing claims for refusal to pay for mold damage, *id.* ¶ 18(3), or which Plaintiffs claim they were improperly advised about available coverages, *id.* ¶ 18(1).

### B.   None Of The Separate Counts States A Cause of Action

The absence of factual allegations also demonstrates that none of the causes of action

---

[5]  Moreover, the burden of uncovering this information falls on Plaintiffs under Rule 11, which requires that a plaintiff make an "inquiry reasonable under the circumstances" *before* filing a complaint.  FED. R. CIV. P. 11(b).  "Having made this inquiry, it is hardly burdensome to require the plaintiff to share his conclusion with the court and the defendants." *Kyle*, 144 F.3d at 457 n.4 (addressing the fair-notice requirement).

states a claim upon which relief can be granted.[6]

### 1. The Breach-Of-Contract Claim Must Be Dismissed Because No Plaintiff Alleges An Insurance Contract With An AIG Defendant

Plaintiffs fail to allege sufficient facts to assert a breach-of-contract action against any of the AIG Defendants.  In order to allege a breach of contract, an insured must allege the existence of a valid contract.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 500 (5th Cir. 2000). Contracts do not exist independent of contracting parties.  A plaintiff must allege that a valid contract existed *between the plaintiff and the defendant*—yet no individual Plaintiff has alleged the existence of a contract with any AIG Defendant.  *See, e.g.*, *Randall v. Lloyd's Underwriter's at London*, 602 So. 2d 790, 791 (La. Ct. App. 1992) ("It is a well-accepted principle in Louisiana jurisprudence that, absent a contrary statutory provision, actions ex contractu cannot be maintained against a party by an individual who is not a party thereto.").[7]  No Plaintiff has alleged an insurance contract with an AIG Defendant; accordingly, the Complaint fails to state a claim for breach of contract against an AIG Defendant.  *See Beanal*, 197 F.3d at 164.

---

[6]  In addition to the seven causes of action specifically listed in Paragraph 25 of the Complaint, Compl. ¶ 25(1)–(7), and the reference to violation of the VPL, *id.* ¶ 19, the Complaint makes a passing reference to "negligence" and to "violations of multiple state and Federal statutes," *id.* ¶ 16, and it purports to reserve the right to assert "[o]ther causes of action that will be determined at trial," *id.* ¶ 25(8).  Facts, however, not theories of recovery, are necessary to provide notice, *Hopkins*, 199 F.3d at 973, and the Complaint alleges no circumstances that address negligence (an inherently fact-intensive cause of action) or provide any warning about what other violations the plaintiffs might have in mind.  To the extent these passing references are an attempt to state a claim, they present only "legal conclusions masquerading as factual conclusions" and thus "will not suffice to prevent a motion to dismiss."  *Rios*, 444 F.3d at 421 (quoting *Fernandez-Montes* , 987 F.2d at 284).

[7]  *See also Lumber Prods., Inc. v. Hiriart*, 255 So. 2d 783, 787 (La. Ct. App. 1972) (same); *Riley v. Transamerica Ins. Group*, 923 F. Supp. 882, 887 (E.D. La. 1996) (holding that a non-party to an insurance contract cannot state a claim against an insurer for breach of contract).

### 2.    No Plaintiff States A Claim That An AIG Defendant Acted Arbitrarily, Capriciously, Or Without Probable Cause In Violation Of Section 658

Section 658 requires insurers to "pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss," to "initiate loss adjustment of a property damage claim" within a prescribed period after notification of loss (the duration of which depends on whether the loss is "catastrophic"), and to "make a written offer to settle any property damage claim . . . within thirty days after receipt of satisfactory proofs of loss."  LA. REV. STAT. ANN. § 22:658(A).  It also provides that failure to make such a payment or written offer to settle, "when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty."  *Id.* § 22:658(B)(1).

As an initial matter, the penalties authorized by § 658 "do not stand alone," and with "no underlying breach of contract on [an] insurance policy, [a plaintiff] has no claims for penalties under La. R.S. 12:[1]220 and 22:658."  *Edwards v. Allstate Prop. & Cas. Ins. Co.*, No. Civ. A. 04-2434, 2005 WL 221558, at *3 (E.D. La. Jan. 27, 2005); *see also Phillips v. Patterson Ins. Co.*, 813 So. 2d 1191, 1195 (La. Ct. App. 2002); *Riley*, 923 F. Supp. at 888.  Because no plaintiff states a valid breach-of-contract claim, no plaintiff has alleged a valid claim under § 658. *Edwards*, 2005 WL 221558, at *3.

Moreover, Plaintiffs' claims under § 658 fail because they are based solely on the bald assertion that the "[d]efendants' failure to pay and/or timely initiate good faith loss adjustment was arbitrary, capricious and without probable cause and is in bad faith."  Compl. ¶ 21.  But even if each of the more than 100 defendants had failed to meet § 658's time limits for each of the more than 1,850 Plaintiffs, the Complaint is devoid of any factual allegations about the circumstances of these alleged failures:  it contains no allegations that could be construed to amount to a failure that was "arbitrary, capricious, or without probable cause," as required by the

8

statute.  LA. REV. STAT. ANN. § 22:658(B)(1).  Simply stating a legal conclusion that the failure was arbitrary and parroting back the statutory language without providing any factual allegations in support is insufficient to state a claim.  *Beanal*, 197 F.3d at 165 (rejecting conclusory allegations); *Munz v. Parr*, 758 F.2d 1254, 1259 (8th Cir. 1985) (affirming dismissal of certain defendants where the plaintiff made "conclusory statements" that "merely parrot[ed]" the legal standard); *CCBN.com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp. 2d 146, 154 (D. Mass. 2003) (dismissing claim where the complaint did "nothing more than parrot the second element" of the claim).

### 3. No Plaintiff States A Claim Against An AIG Defendant For Breach Of Duty Under Section 1220

Section 1220 imposes on insurers a "duty of good faith and fair dealing" and "an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims," La. Rev. Stat. Ann. § 22:1220(A).  It also lists six acts that, "if knowingly committed or performed by an insurer, constitute[] a breach" of those duties, *id.* § 22:1220(B).  Like their claims under § 658, Plaintiffs' claims based on alleged violations of § 1220 fail because they have not alleged a valid claim for breach of an insurance contract.  *See Edwards*, 2005 WL 221558, at *3; *Phillips*, 813 So. 2d at 1195; *Riley*, 923 F. Supp. at 888.

Plaintiffs' allegation that the defendants breached "their duty to act reasonably and fairly under La. R.S. 22:1220," Compl. ¶ 25(4), fails for the additional reason that there are not adequate supporting factual allegations.  Determining whether actions were reasonable or fair requires some information about what actions were taken and what the surrounding circumstances were.  The closest Plaintiffs come to providing any necessary context, however, is to allege that the defendants violated those duties

> by one of the following acts or omissions:  (a) [k]nowingly misrepresenting pertinent facts or policy provisions regarding the coverage at issue; (b)

> [a]rbitrarily, capriciously and without probable cause failing to pay the amount of claim due within sixty (60) days after receipt of satisfactory proof of loss; and (c) [a]djusting claims in violation of La. R.S. 22:658.2.

Compl. ¶ 23.  The way this allegation is phrased highlights the lack of notice permeating the Complaint:  it accuses the defendants collectively of "*one* of the following acts or omissions," *id.* (emphasis added), without providing any factual allegations about even a single instance of one of the listed acts or omissions—let alone notifying individual defendants of what they are alleged to have done.  The above-quoted allegation about these potential acts or omissions asserts no facts; it is simply a legally insufficient, conclusory repetition of the statutory language of § 22:1220(B)(1), (5), and (6).  *See Rios*, 444 F.3d at 421; *Munz*, 758 F.2d at 1259; *Beanal*, 197 F.3d at 164; *Hopkins*, 199 F.3d at 973.

Rather than remedying the recurring problem of conclusory allegations masquerading as factual allegations, Plaintiffs instead abstract even further and allege even more generically that the defendants also committed a "[b]reach of duty under La. R.S. 22:1220."  Compl. ¶ 25(5). This claim fails for the same reasons as its predecessor:  no factual allegations show how any defendant failed to fulfill a duty imposed by § 1220.

### 4. No Plaintiff States A Claim Against An AIG Defendant Under The Provisions Of Section 658.2

Section 658.2 contains four provisions that govern claims involving immoveable property:  an insurer cannot determine whether a loss is covered by homeowner's insurance by "us[ing] the floodwater mark on a covered structure without considering other evidence," LA. REV. STAT. ANN. § 22:658.2(A)(1) an insurer cannot determine whether a loss is covered by homeowner's insurance by "us[ing] the fact that a home is removed or displaced from its foundation without considering other evidence," *id.* § 22:658.2(A)(2); the burden is on the

insurer to establish an exclusion under the policy, *id.* § 22:658.2(B); and any clause that attempts to alter that burden is null and void, *id.* § 22:658.2(C).

Plaintiffs' attempt to state a cause of action for "adjust[ment of] claims in violation of La. R.S. 22:658.2," Compl. ¶ 23(c), also fails. Section 658.2 does not provide an independent basis for liability. Rather, it imposes liability pursuant to § 1220, and thus applies only when the requirements of § 1220 are met. *See* LA. REV. STAT. ANN. § 22.658.2(D). As described above, no Plaintiff has alleged a valid § 1220 claim.

Moreover, Plaintiffs fail to allege facts providing notice as to why or how § 658.2 could apply to any of the AIG Defendants. The Complaint alleges no facts that intimate how even a single defendant violated any of § 658.2's provisions. No allegation identifies which Plaintiffs have homeowner's insurance. No allegation asserts that any one insurer (let alone each and every insurer) relied exclusively on floodwater marks. No allegation asserts that the home of any Plaintiff was removed or displaced from its foundation, nor that any insurer relied exclusively on that fact. No allegation asserts that any insurer attempted to shift the burden of proof as to excluded perils. And no allegation asserts that any policy contained language attempting to shift this statutory burden. Plaintiffs, thus, have failed to state a claim under § 658.2.

### 5. No Plaintiff States A Claim Against An AIG Defendant For Failure To Tender Fair And Adequate Payment For Casualty Losses

Plaintiffs claim that the defendants also failed "to tender fair and adequate payment for casualty losses." Compl. ¶ 25(6). As a preliminary matter, it is unclear how this claim is any different from Plaintiffs' legally deficient breach-of-contract claim. There is no way to judge whether a payment is "fair and adequate" independent of the terms of the insurance policy; whether, for example, any particular type of payment is even potentially due a Plaintiff depends on whether the policy covers the loss at issue. Since no Plaintiff provided any information

11

showing the existence of a valid insurance contract with any individual defendant, it follows that no Plaintiff can show that any given payment was inadequate under the terms of a policy.

In addition, even if this were a valid, separate cause of action, Plaintiffs fail to allege any facts supporting a claim that payments were unfair or inadequate.  In making allegations apparently related to this claim, Plaintiffs blur together collective allegations against all the defendants, alleging the tender of "insufficient and untimely" payments that did not include the full costs of repair, such as "post-Katrina unit cost, labor cost and material cost, overhead and profit for the contractor hired to do repairs, adequate compensation for the loss of contents and additional living expenses, business interruption, business loss, loss of income, profits, rental income and other recoverable items to be shown at trial."  Compl. ¶ 14.  These allegations, however, simply state a legal conclusion, namely that Plaintiffs are entitled to certain costs; they do not set out any *facts* that support a claim for the costs.  The Complaint does not, for example, allege that even one Plaintiff incurred any repair costs of any sort—let alone costs in excess of a coverage payment.

In *Edwards*, a single plaintiff made "conclusory and expansive allegations that a contractor['s] overhead and profit costs are paid whenever damages occur on insured structures." 2005 WL 221558, at *3.  This Court noted that "absent from the petition [was] a single fact alleged that would give rise to any need for general contractors' overhead and profit."  *Id.* "There are no allegations," this Court explained, "for the type of damage that was suffered or the nature or complexity of required repairs.  The facts or the circumstances which are necessary to give rise to the claim that a general contractor was necessary due to the specific damages to [the plaintiff's] home are not adequately alleged."  *Id.* (dismissing claims under Rule 12(b)(6)).  The Complaint here suffers the same type of shortcomings with regard to repair-related claims.  Even

worse, the Complaint fails to allege any facts that might indicate *which* Plaintiffs seek more overhead and profit, which seek additional material costs, or which seek more compensation for lost contents.  The other claims suffer from similar flaws—there is no allegation, for example, of what business was interrupted, how, or for how long.

### 6.    No Plaintiff States A Claim Against An AIG Defendant For Bad Faith Adjusting Practices

The Complaint next alleges a cause of action for "[b]ad faith adjusting practices," based on a litany of alleged unfair practices, including (1) "[f]ailing to properly advise insureds of the available coverages applicable to plaintiffs' homeowner[s], business, commercial and flood policies," (2) "[f]ailing to properly adjust claims," (3) "[r]efusing to pay for mold damage which occurred from the covered loss," (4) [i]mproperly applying concurrent causation clauses of the insurance policies," and (5) violating § 22:1214(14)(a)–(*o*).  Compl. ¶¶ 25(7), 18.  Each of these allegations, however, is simply a bald conclusion unsupported by factual allegations as to even one instance of conduct.  The Complaint does not mention the circumstances under which any insurer failed to provide advice, nor what that advice should have been; it does not allege which, if any, plaintiff suffered mold damage; and it does not allege the circumstances surrounding even one instance of concurrent causes impacting payment.  In short, the Complaint provides no notice as to what circumstances give rise to a claim relating to even one of these asserted practices.  *Beanal*, 197 F.3d at 164.

The last of this shotgun spray of allegations about unfair practices suffers from an additional flaw:  § 22:1214(14) of the Louisiana Insurance Code does not provide for a private cause of action.  *Clausen v. Fid. & Deposit Co. of Md.*, 660 So. 2d 83, 86 (La. Ct. App. 1995); *Riley*, 923 F. Supp. at 888.

**7.      No Plaintiff States A Claim Against An AIG Defendant For Failure To Comply With Louisiana's Valued Policy Law**

Plaintiffs allege that the defendants have "failed to comply with Louisiana's Valued Policy Clause, La. R.S. 22:695." Compl. ¶ 19.[8]  Even assuming the Complaint attempts to assert claims under the VPL, Plaintiffs fail to state a VPL claim for two basic reasons:  first, the VPL applies only to fire insurance policies and fire loss, but no Plaintiff has alleged that he or she had a fire insurance policy or suffered a loss from fire; second, the VPL applies only in the event of a "total loss" caused by a covered peril, but no Plaintiff has alleged that he or she suffered a total loss, let alone a total loss caused by a covered peril.

The text of the VPL makes clear that it applies only to fire insurance policies:  "Under any *fire insurance policy* insuring inanimate immovable property in this state, . . . in the case of total loss the insurer shall . . . compensate any covered loss" using the valuation used to determine the premiums.   LA. REV. STAT. ANN. § 22:695(A) (emphasis added).[9]  Plaintiffs, however, make no allegations that they were insured under fire insurance policies; they claim only that they had "policies of homeowners' property, commercial, business, rental and/or flood insurance," Compl. ¶ 7.  Such an allegation is insufficient to state a claim under § 22:695, as this Court has previously recognized.  *See In re Consol. Cos.*, 185 B.R. 223, 226 (E.D. La. 1995),

---

[8]  This is the Complaint's only reference to the VPL.  Compl. ¶ 19.  Because Plaintiffs do not identify the VPL as one of the causes of action they are bringing, *see id.* ¶ 25, it is unclear whether any Plaintiff actually intends to assert a claim under the VPL.

[9]  Under the Louisiana Civil Code, legislation takes precedence over jurisprudence, and thus federal courts applying the substantive law of Louisiana must focus on the text of the statute. LA. CIV. CODE ANN. art. 1; *id.* art. 9 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."); *Gen. Elec. Capital Corp. v. Se. Health Care Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).

*aff'd* 106 F.3d 396 (5th Cir. 1996) (finding that § 22:695 should not be read into an all-risk commercial property insurance policy).  Similarly, in *Graham v. Milky Way Barge, Inc.*, 824 F.2d 376, 381 (5th Cir. 1987), the Fifth Circuit held that § 22:692, another statute referring to "fire insurance," did not apply to non-fire losses because "[b]ased upon the language of the statute itself, the provision would appear to apply to fire policies only."[10]

The Complaint fails to state a claim under the VPL for the additional reason that no individual Plaintiff has alleged that he or she suffered a total loss.  The Complaint lumps Plaintiffs together in alleging that their properties were "severely damaged and/or destroyed," but it fails to allege, as to even a single Plaintiff, that "the cost of repair exceeds the value of the property," and so qualifies as a total loss.  *Real Asset Mgmt. v. Lloyd's of London*, 61 F.3d 1223, 1229 (5th Cir. 1995) (defining "total loss" under Louisiana law).  Given that the Complaint also alleges that Plaintiffs—again without specifying which Plaintiffs—are entitled to repair costs, including labor and material costs and overhead and profit, the defendants have no notice as to any individual Plaintiff who is bringing a VPL claim.

In addition, no Plaintiff here has alleged that a covered peril caused the total loss.  Even if the VPL were deemed to apply to policies that were not fire insurance policies, it would apply only to total losses that result from a covered peril:  "in the case of total loss the insurer shall . . . compensate any *covered* loss" at the value of the policy.  LA. REV. STAT. ANN. § 22:695(A) (emphasis added).  In this case, Plaintiffs have alleged that their properties were damaged by

---

[10] These holdings are driven by well-settled Louisiana rules of statutory interpretation making clear that the legislature's decision to use the unambiguous term "fire insurance policy," and not, for example, "any insurance policy" or "homeowner's policy," is significant.  *Filson v. Windsor Court Hotel*, 907 So. 2d 723, 728 (La. 2005) (applying "[t]he settled rule of statutory construction that the mention of one thing in a statute implies the exclusion of another thing").

winds and flooding, Compl. ¶ 9, and that "a significant number of the claims are made under the National Flood Insurance Program," *id.* ¶ 5. No Plaintiff has alleged a total loss covered by a covered peril. As this Court recently held, "Louisiana's Valued Policy Law does not apply when a total loss is not caused by a covered peril." *Chauvin v. State Farm Fire & Cas. Co.*, 450 F. Supp. 2d 660, 669 (E.D. La. 2006). Thus, to the extent the Complaint purports to assert a claim under the VPL, it should be dismissed.

## II.     The Complaint Should Be Dismissed For Failure To Satisfy The Requirements For Joinder Under Rule 20(a)

The Complaint should be dismissed for an additional, independent reason: Plaintiffs' attempt to join more than 1,850 Plaintiffs together in bringing claims arising from separate insurance policies held by the unrelated Plaintiffs and to pursue those individual claims collectively against unrelated defendants violates Rule 20(a). *See Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151, 1154 (4th Cir. 1974) (affirming the dismissal of "unrelated transactions running into the thousands"). While "the impulse" under the Federal Rules of Civil Procedure is "toward entertaining the broadest possible scope of action consistent with fairness to the parties," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966), that broad purpose is limited by the requirements of the Rules themselves. Under Rule 20(a), plaintiffs can join together in a single suit only "if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences," and defendants can be joined only "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences." Rule 20(a) requires, in other words, that "a right to relief must be asserted *by, or against, each plaintiff or*

*defendant* relating to or arising out of the same transaction or occurrence." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (emphasis added).[11]

Here, both the joinder of defendants and the joinder of plaintiffs is improper.  Each Plaintiff has claims only against his or her own insurance company—or for a particularly well-insured Plaintiff with multiple policies, against perhaps two or three insurance companies (although this situation is impossible to discern from the Complaint)—not against *each* of the more than 100 insurance companies joined in this action, as Rule 20(a) requires.  *See Intercon Research*, 696 F.2d at 57; *Mosley*, 497 F.2d at 1333.  Each of the causes of action set out in the Complaint arises from an insurance contract or from a statutory duty created by the insurance contract, *see* Compl. ¶ 25, not from some collective injury caused by separate defendants.  This one-to-one correspondence between an insured and an insurer does not involve a right to relief that is "joint[], several[], or in the alternative," as required by Rule 20(a).  It is not "joint" because a failure to comply with contractual or statutory duties arising from a given contract implicates only the insurer who issued the policy, not other insurers; it is not "several" for the same reason—liability cannot be several unless more than one party is liable, *see* BLACK'S LAW DICTIONARY 933 (8th ed. 2004) (defining "several liability" as "[l]iabilty that is separate and distinct *from another's liability*, so that the plaintiff may bring a separate action against one

---

[11] *See also League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (same); *Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982) (discussing joinder of defendants and explaining that "a right to relief must be asserted by the plaintiff *against each defendant* relating to or arising out of the same transaction or series of transactions") (emphasis added); 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1655 (3d ed. 2001) ("[P]laintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief *against each of them* that arises out of the same transaction or occurrence and presents questions of law or fact common to all.") (emphasis added).

defendant without joining *the other liable parties*") (emphases added); Compl. ¶¶ 12, 13 (plaintiffs dealt with their "respective" insurance companies); and it is not "in the alternative" because the only party that could possibly be liable is the insurer that issued the policy.  For all of the defendants to be properly joined, at least one Plaintiff would need to have a right to relief against every one of the defendants, *Intercon Research*, 696 F.2d at 57 ("a right to relief must be asserted by the plaintiff against each defendant"), and no facts alleged in the Complaint suggest—let alone plead—any such joint or several claim.

The joinder of plaintiffs fails for symmetrical reasons:  the 1,850 Plaintiffs fail to assert a single claim that each can bring against any one particular defendant.  *See Mosley*, 497 F.2d at 1333.  Each Plaintiff necessarily can state a claim against only the defendant that issued the policy in effect on August 29, 2005.  The fact that the Complaint joins both Plaintiffs and defendants does not obviate either of these two rules—that is, a Plaintiff cannot avoid the requirement that he must have a right to relief against each defendant by joining additional Plaintiffs with individual rights to relief against particular defendants until all of the defendants are covered; such an approach would read the "joint[], several[], or in the alternative" restriction right out of Rule 20(a).

The Complaint also fails to satisfy Rule 20(a)'s requirement that the right to relief arise from "the same transaction, occurrence, or series of transactions or occurrences."  Federal courts use a case-by-case approach when determining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, and generally regard "all 'logically related' events entitling a person to institute a legal action against another . . . as comprising a transaction or occurrence."  *Mosley*, 497 F.2d at 1333; *see also id.* at 1334 (concluding that "a company-wide policy purportedly designed to discriminate against blacks in employment"

constituted a single transaction or occurrence).  The focus is on the event or series of events that entitles a person to relief against another.  It is not enough to satisfy the test if the event or series of events involve "'distinct and unrelated acts which happen[] to involve violations of the same statutory duty.'"  *Nassau County*, 497 F.2d at 1154 (quoting *Kenvin v. Newburger, Loeb & Co.*, 37 F.R.D. 473, 475 (S.D.N.Y. 1965)).  Instead, it is the "operative facts" giving rise to a right to relief that must be related.  *Id.*

In this case, the right to relief that each Plaintiff asserts arises from separate transactions with different operative facts pertaining to individual coverage determinations, not from a single transaction or occurrence.  The right to relief for any of the alleged breaches of contract, for example, depends upon the specific circumstances giving rise to the insurance claim, such as whether the Plaintiff has a valid insurance policy, the type of insurance policy, the policy's provisions and exclusions, the amount of damage to the property, the cause of the damage, the actions taken by the insured in making the claim, and the actions taken by the insurer.  These circumstances are the operative facts creating a right to relief—no Plaintiff may seek relief based on the breach of another's contract, *see Randall*, 602 So. 2d at 791 (requiring privity of contract)—and the operative facts are different for each Plaintiff.  *See, e.g.*, *Nassau County*, 497 F.2d at 1154 (affirming dismissal for failing to comply with Rule 20(a) where insurance agents sued 164 insurance companies for terminating or threatening to terminate thousands of agency contracts in violation of federal antitrust laws).[12]  To paraphrase the Fourth Circuit in *Nassau*

--------

[12]  *See also Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (affirming dismissal for failure to satisfy the same transaction or occurrence test where individual owners of Jaguar automobiles alleged similar defects but "[t]he cars were purchased at different times, were driven differently, and had different service histories"); *Abdullah v. ACandS, Inc.*, 30 F.3d 264, 268 n.5 (1st Cir. 1994) (explaining that an asbestos-related complaint did not arise from

[Footnote continued on next page]

*County*, the defendants' "actions as charged were separate and unrelated, with [alleged breaches] occurring at different times for different reasons with regard to different [properties, claims, policies, and insurance companies]." *Id.* at 1154. The fact that an individual Plaintiff can recover only from a defendant with which that Plaintiff has an insurance policy highlights the fact that these are separate transactions. For example, in *Intercon Research*, the Seventh Circuit affirmed the dismissal of a complaint for failure to satisfy the common transaction test based on a lack of privity of contract with one of the defendants. 696 F.2d at 57.

Like the breach-of-contract claims, each claim alleging that an insurance company handled insurance claims improperly, adjusted them improperly, or violated other statutory duties will depend upon the specific facts relating to the circumstances under which an individual Plaintiff presented a claim; because these claims were presented to different insurance companies, different claims handlers, and different adjusters for different properties and because the handling and adjusting decisions were specific to the claim, the operative facts for each of these rights to relief will be different. *See Nassau County*, 497 F.2d at 1154; *Saval*, 710 F.2d at 1031. And the mere fact that more than 1,850 Plaintiffs rely on similar statutes does not show that the underlying circumstances constitute the required "same transaction or occurrence." *See, e.g.*, *DIRECTV, Inc. v. Adrian*, No. 03 C 6366, 2004 WL 1146122, at *3 (N.D. Ill. May 18, 2004) ("Allegations of similar statutory violations do not satisfy the 'same transaction' requirement."); *United States v. Alaska Pipeline Co.*, No. Civ. 95-725, 1997 WL 33763820, at *1 (D.D.C. Mar. 27, 1997) ("Plaintiff cannot join defendants who simply engaged in similar types

---

[Footnote continued from previous page]

the same transaction or occurrence because it was "bereft of factual allegations indicating why 1000 plaintiffs and 93 defendants belong in the same action" and gave "no indication of whether plaintiffs were injured while serving on the same vessels or during the same time periods" or whether they were injured by the same products).

of behavior, but who are otherwise unrelated."); *In re Nuclear Imaging Sys., Inc.*, 277 B.R. 59, 63 (Bankr. E.D. Pa. 2002) ("Courts have clearly rejected the notion that a plaintiff may permissively join defendants in one lawsuit simply because they are all purportedly liable to the plaintiff on similar or identical causes of action.").

The fact that each claim arises out of post-Hurricane Katrina coverage determinations does not make them all part of one transaction or occurrence, for it is not the existence of Hurricane Katrina that creates a right to relief against a given insurance company, but the actions of the insurance company in responding to an insurance claim presented to it. *Mosley*, 497 F.2d at 1333 (regarding "all 'logically related' events *entitling a person to institute a legal action against another* . . . as comprising a transaction or occurrence") (emphasis added). In *Defourneaux v. Metropolitan Property & Casualty Insurance Co.*, Civil Action No. 06-3809, 2006 WL 2524165 (E.D. La. Aug. 30, 2006), a couple sued both their insurance company and Jefferson Parish for, respectively, arbitrarily denying insurance claims and failing to properly maintain the pumping and draining system. This Court concluded that joining the claims against the two parties would violate Rule 20: "[t]he only common factual thread between the claims is Hurricane Katrina," and the claims "did not arise from the same transaction or occurrence." *Id.* at *2; *see also Purveegiin v. Pike County Corr. Facility*, No. 3:CV06-0300, 2006 WL 1620219, at *2 (M.D. Pa. June 6, 2006) (dismissing civil rights claims of a prisoner proceeding *pro se* because "the only common thread" was that the alleged incidents occurred at the facility).

Plaintiffs may contend that severance, not dismissal, is the appropriate remedy. In order to sever, however, the Court would have to be able to match individual Plaintiffs to the defendants against which they bring claims, an impossible endeavor under the current complaint. As the Seventh Circuit explained in *Intercon Research*, "Rule 20(a) was designed to allow a

plaintiff to join only those parties *against whom the plaintiff has a legitimate claim*."  696 F.2d at

58 (emphasis added).   Because the plaintiffs there lacked privity of contract as to one of the

defendants, the court affirmed the dismissal of that defendant because "the party joinder

requirements of Rule 20(a) were not met."  *Id.*  This approach is consistent with Rule 21, which

states that "[m]isjoinder of parties is not ground for dismissal of an action," but that "[p]arties

may be dropped . . . by order of the court on motion of any party or of its own initiative at any

stage of the action and on such terms as are just."  FED. R. CIV. P. 21; *see also In re Nuclear

Imaging*, 277 B.R. at 63 ("Thus, if a plaintiff has improperly joined defendants, the lawsuit is not

dismissed; rather, the proper remedy is to dismiss only the misjoined defendants."); *Karmanos v.

Baker*, 617 F. Supp. 809, 814 (E.D. Mich. 1985) (dismissing defendants against whom no claims

remained), *aff'd*, 816 F.2d 258 (6th Cir. 1987); *Alaska Pipeline Co.*, 1997 WL 33763820, at *2

(concluding that 60 defendants that did not satisfy the same transaction test "must be dismissed"

under Rule 21).

　　　　Finally, Plaintiffs' attempt to join such a large number of unrelated parties into one action

is an abuse of Rule 20 that merits dismissal of the Complaint.   In *Nassau County*, the court

concluded that "[t]he misjoinder here, resting on thousands of unrelated transactions, is such a

gross abuse of procedure that dismissal under [Rule] 41(b) for failure to comply with the federal

rules is warranted.   Although the usual remedy under Rule 21 is severance, that would be

inadequate to remedy the present abuse since the result would be thousands of individual

actions."  497 F.2d at 1154; FED. R. CIV. P. 41(b)  ("For failure of the plaintiff . . . to comply

with these rules . . ., a defendant may move for dismissal of an action or of any claim against the

defendant."); *see also Purveegiin*, 2006 WL 1620219, at *3 (dismissing action that failed to meet

the requirements of Rules 8 and 20 "for failure to comply with the Federal Rules of Civil Procedure").  This action is no different.

## III.   Conclusion

For these reasons, the claims presented against the AIG Defendants in the First Supplemental and Amended Complaint should be dismissed.

Respectfully submitted:

/s/ Robert I. Siegel
_____
Robert I. Siegel, T.A. (#12063)
Daniel G. Rauh (#27280)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square - Suite 4800
701 Poydras Street
New Orleans, Louisiana  70139-4800
Telephone:  (504) 561-0400
Facsimile:  (504) 561-1011
*Attorneys for AIG Centennial Insurance Company, AIG Indemnity Insurance Company, AIG National Insurance Company, AIG Premier Insurance Company, American General Indemnity Company, American General Property Insurance Company, Lexington Insurance Company, and The Hartford Steam Boiler Inspection and Insurance Company of Connecticut*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on counsel for all parties in this proceeding by facsimile and/or by United States Mail, properly addressed, first class postage prepaid, this 20th day of November, 2006.

/s/ Robert I. Siegel
_____
ROBERT I. SIEGEL