# Preliminary Report on the Performance of the New Orleans Levee Systems in Hurricane Katrina on August 29, 2005

by

R.B. Seed, P.G. Nicholson, R.A. Dalrymple, J.A. Battjes, R.G. Bea, G.P. Boutwell, J.D. Bray, B.D. Collins,
L.F. Harder, J.R. Headland, M.S. Inamine, R.E. Kayen, R.A. Kuhr, J. M. Pestana,
F. Silva-Tulla, R. Storesund, S. Tanaka, J. Wartman, T.F. Wolff, R.L. Wooten and T.F. Zimmie



Preliminary findings from field investigations and associated studies performed by teams from the University of California at Berkeley and the American Society of Civil Engineers, as well as a number of cooperating engineers and scientists, shortly after the hurricane.

Report No. UCB/CITRIS – 05/01
November 17, 2005

EXHIBIT
A






Case 2:05-cv-04182-SRD-JCW   Document 1767-2   Filed 11/21/06   Page 2 of 48

This project was supported, in part, by the National Science Foundation
under Grant No. CMS-0413327.
Any opinions, findings, and conclusions or recommendations
expressed in this report are those of the author(s) and do not
necessarily reflect the views of the Foundation.

This report contains the observations and findings of a joint
investigation between independent teams of professional engineers
with a wide array of expertise.  The materials contained herein are the observations
and professional opinions of these individuals, and does not necessarily reflect
the opinions or endorsement of ASCE or any other group or agency.

Ver. 1.2

This report has been slightly modified from its original version, which was issued on
November 2, 2005 in response to a deadline for testimony before the U.S. Senate
Committee on Homeland Security and Government Oversight.  The minor revisions
are not substantive in nature, and serve principally to improve the accuracy of the
language and the clarity of some of the statements.  No significant changes in the
technical content or findings have been made in this second iteration.

## List of Authors

**Jurjen A. Battjes, Ph.D.**, Emeritus Professor in Fluid Mechanics, Delft University of Technology, Delft, The Netherlands

**Robert G. Bea, Ph.D., P.E., G.E., S.E.**, Professor, Civil & Environmental Engineering, University of California, Berkeley, CA

**Gordon P. Boutwell, Ph.D.,P.E.**, President, Soil Testing Engineers, Inc., Baton Rouge & New Orleans, LA

**Jonathan D. Bray, Ph.D., P.E.**, Professor, Civil & Environmental Engineering, University of California, Berkeley, CA

**Brian D. Collins, Ph.D., P.E.**, Research Civil Engineer, United States Geological Survey, Menlo Park, CA

**Robert A. Dalrymple, Ph.D., P.E.**, Professor, Civil Engineering, Johns Hopkins University, Baltimore, MA

**Leslie F. Harder. Jr., Ph.D.**, Acting Deputy Director for Public Safety, California Department of Water Resources, Sacramento, CA

**John R. Headland, P.E.**, Senior Vice President, Moffatt & Nichol Engineers

**Michael S. Inamine, P.E.**, Construction Office Chief, Division of Engineering, California Department of Water Resources, Sacramento, CA

**Robert E. Kayen, Ph.D., P.E.**, Research Civil Engineer, United States Geological Survey, Menlo Park, CA

**Rebecca A. Kuhr, P.E., P.G.**, Senior Project Manager, Water Resources Engineering, HNTB Corporation, Kansas City, MO

**Peter G. Nicholson, Ph.D., P.E.**, Associate Professor & Graduate Chair, Civil & Environmental Engineering, University of Hawaii, Manoa, HI

**Juan M. Pestana, Ph.D., P.E.**, Associate Professor, Civil & Environmental Engineering, University of California, Berkeley, CA

**Raymond B. Seed, Ph.D.**, Professor, Civil & Environmental Engineering, University of California, Berkeley, CA

**Francisco Silva-Tulla, Sc.D., P.E.**, Consulting Civil Engineer, GeoEngineering and Environment, Lexington, MA

### List of Authors (Continued)

**Rune Storesund, P.E.**, Consulting Engineer, Storesund Consulting, Albany, CA

**Shigenobu Tanaka**, Principal Research Engineer, Secretariat for Preparatory Activities of the UNESCO-PWRI Centre, Japan

**Joseph Wartman, Ph.D., P.E.**, Assistant Professor, Civil, Architectural & Environmental Engineering,
Drexel University, Philadelphia, PA

**Thomas F. Wolff, Ph.D., P.E.**, Associate Dean for Undergraduate Studies, College of Engineering,
Michigan State University, East Lansing, MI

**R. Lee Wooten, P.E.**, Vice President, GEI Consultants, Inc., Winchester, MA

**Thomas F. Zimmie, Ph.D., P.E.**, Professor, Civil, Environmental & Geotechnical Engineering, Rensselaer Polytechnic Institute, Troy, NY

# Table of Contents

Executive Summary ...……………………………………………………… vi


**Chapter 1: Introduction and Overview**

1.1 Introduction ………………………………………………….... 1-1

1.2 Hurricane Katrina ……………………………………………… 1-2

1.3 Overview of the New Orleans Flood Protection Systems ………………… 1-2

1.4 Flood Protection System Performance During Hurricane Katrina………… 1-4

1.5 Organization of This Interim Report ……………………………… 1-6


**Chapter 2: The Orleans East Bank (Downtown) Protected Area**

2.1 Overview …………………………...……………………… 2-1

2.2 The 17th Street Canal Breach …………………….……………… 2-2

2.3 The London Avenue Canal Breached and Distressed Section …………… 2-5

    2.3.1 The North Breach and Distressed Section ………………….... 2-5

    2.3.2 The South Breach Section ……………………………… 2-7

2.4 Performance of the Flood Protection System along the West Bank of the

    INHC ……………………………………………………… 2-9


**Chapter 3: New Orleans East Protected Area**

3.1 Overview …………………………………………...……… 3-1

3.2 Lakefront Airport …………………………………………...… 3-1

3.3 Lakefront East from the Airport ……………………………………… 3-2

3.4 I-Wall Failures – Intracoastal Waterway and MRGO ………...………… 3-3

3.5 Earth Embankments – East and South ……...…………………...…… 3-3

3.6 Additional Transition Problems - IHNC …………………………… 3-4


**Chapter 4: Lower Ninth Ward and Adjacent St. Bernard Parish Protected Area**

4.1 Overview …………………………………………………..... 4-1

4.2 IHNC, East Side, South Breach, (Lower Ninth Ward) ………..………… 4-2

4.3  IHNC, East Side, North Breach, (Lower Ninth Ward) ……...…………  4-3

4.4  IWW/MRGO Bayou Bienvenue Gate and West …………………………  4-4

4.5  MRGO, Bayou Dupree and Northeast St. Bernard Parish …………………  4-5


**Chapter 5:  Plaquemines Parish**

5.1  Overview …………………………………………………………………  5-1

5.2  Point a la Hache …………………………...……………………………..  5-1


**Chapter 6:  The New Orleans Flood Protection System** …………………..………  6-1


**Chapter 7:  Terrestrial LIDAR Imagery of New Orleans Levees Affected by
          Hurricane Katrina**

7.1  Introduction ………………………………………………....…………...  7-1

7.2  Methodology ……………………………………………………….....….  7-1

7.3  Data Coverage:  LIDAR scan sites at Levee Breaks within the New
     Orleans Area …………………………………………………………….  7-3

7.4  Processing of LIDAR Imagery ……………………………………………  7-3

7.5  Analysis Examples of Levee Deformations Using LIDAR Data …………  7-3

7.6  Summary ………………………………………………………………….  7-5

7.7  References ……………………………………………………………..…  7-5


**Chapter 8:  Summary of Observations and Findings**

8.1  Summary and Findings …………………………………………….....…..  8-1

8.2  Comments on Future Reconstruction …………………………...………..  8-3


**Acknowledgements** ……………………………………………………………  8-6

Cover Image from http://www.noaanews.noaa.gov/stories2005/s2506.htm

## EXECUTIVE SUMMARY

This report presents the results of field investigations performed by several teams of engineers and scientists in the wake of the passage of Hurricane Katrina to study the performance of the regional flood protection systems in the New Orleans area. The principal focus of these efforts was to capture perishable data and observations related to the performance of flood control systems.

The initial field investigations occurred over a span of approximately two and a half weeks, from September 28 through October 15, 2005. The starting date for these field investigations was determined by balancing the need to gather vital perishable data before it was damaged or obscured by emergency repair operations versus the need to avoid interference with such emergency operations, and issues associated with safe access, logistics, etc. There were numerous occasions when team units arrived and investigated sites only days, or even hours, prior to the covering of vital information by ongoing emergency repair activities.

The storm surges produced by Hurricane Katrina resulted in numerous breaches and consequent flooding of approximately 75% of the metropolitan areas of New Orleans. Most of the levee and floodwall failures were caused by overtopping, as the storm surge rose over the tops of the levees and/or their floodwalls and produced erosion/scour that subsequently led to failures and breaches.

Overtopping was most severe on the east side of the flood protection system, as the waters of Lake Borgne were driven west towards New Orleans, and also farther to the south, along the lower reaches of the Mississippi River. Significant overtopping and erosion produced numerous breaches in these areas. The magnitude of overtopping was less severe along the Inner Harbor Navigation Canal (IHNC) and along the western portion of the Mississippi River Gulf Outlet (MRGO) channel, but this overtopping again produced erosion and caused additional levee failures.

Field observations suggest that little or no overtopping occurred along most of the levees fronting Lake Pontchartrain, but evidence of minor overtopping and/or wave splashover was observed at a number of locations. There was a breach in the levee system at the northwest corner of the New Orleans East protected area, near the Lakeside Airport.

Farther to the west, in the Orleans East Bank Canal District, three levee failures occurred along the banks of the 17th Street and London Avenue Canals. Evidence that we observed indicates that these failures occurred when water levels were below the tops of the floodwalls lining these canals. Based on our observations, we believe that these three levee failures were likely caused by failures in the foundation soils underlying the levees. In addition, we observed lateral displacements, sinkholes, and sand boils indicative of an

incipient breach at a fourth distressed levee/floodwall segment on the London Avenue Canal.

This report presents an overview of initial observations and findings regarding the performance of the New Orleans flood protection system, including observations regarding preliminary assessments of likely causes of failures and/or significant damage to levees and floodwalls at many sites. Although most of the failures/breaches that occurred were primarily due to overtopping and subsequent erosion, three major and costly breaches appear to have been the result of stability failures of the foundation soils and/or the earthen levee embankments themselves. In addition, it appears that many of the levees and floodwalls that failed due to overtopping might have performed better if conceptually simple details had been added and/or altered during their original design and construction.

Major repair and rehabilitation efforts are now underway to prepare the New Orleans flood protection system for future high water events. The next hurricane season will begin in June of 2006. Based on our observations, a number of initial comments are warranted concerning the rebuilding and rehabilitation of the levee system, and this preliminary report makes a number of observations and recommendations regarding ongoing flood system repair efforts. Preparing the levees for the next hurricane season should also include a review of how the system performed during Hurricane Katrina, so that key lessons can be learned and then used to improve the performance of the system.

There are ongoing studies of the performance of the flood protection system in this catastrophic event, as well as efforts to improve the levels of reliability and safety of these types of defenses for the future. We hope that the results of these studies will lead to a clear appreciation of what happened in Katrina, and that the lessons learned from this event will lead to improved protection in the future, not just in the New Orleans area, but throughout the nation and around the world.

concrete wall was insufficient, and this was exacerbated by the fact that the concrete wall and adjacent earthen levee section had different crest heights. It was common practice in the New Orleans area to build in "structural superiority" wherein structural walls (e.g.: the concrete T-wall and gate structure) had higher crowns than the crests of adjacent earthen levees. This caused overtopping to occur at the earthen levee sections, and produced especially severe overtopping erosion at the "transitions" between the concrete gate wall and earthen levees at each end.

The embankment material at this site was a sandy "shell" fill; a mix of sand and shells widely available in this region. This material, shown in close-up in Figure 2.31, appears to be highly erodeable, and was noted at a number of failed (breached) sections throughout the New Orleans flood protection system.

Figure 2.32 shows an additional example of this type of "transition" deficiency between a structural (concrete) wall and adjacent earthen levees, just a bit farther to the east at Location "C" in Figure 2.1(a).

Figure 2.33 shows a view looking to the southwest from the breach at Location "C" in Figure 2.32. Another breach, just 20 yards to the east of the breach section shown on Figure 2.29 also overtopped and eroded and breached. Figure 2.33 shows the inboard side results; massive flooding damage and considerable sediment deposits, including "shells" from the embankment fill.

There was an outboard protective wall and levee in the Port area, and this too was apparently overtopped and breached before the waters then overtopped the inboard levees and walls as discussed above. Our field investigation teams did not have the time to fully investigate all sections of the outboard walls and levees along this section, but there were some important observations and findings in the sections that were examined.

Figure 2.34 shows a complex "transition" at the northern end of the Port region along the west bank of the IHNC, immediately to the south of the Highway I-10 bridge, at Location "D" in Figure 2.1(a). At this location, outboard side levees and floodwalls associated with the Port and industrial operations conjoin with inboard side levees and floodwalls constructed by the USACE. In addition, a roadway embankment crosses through the levees, and a second gap in the "line of protection" for a railway line (crossing the adjacent IHNC) crosses through at this location. This represents a very complex "transition" section, with overlapping users and overlapping authorities and responsible entities. The gate of the railway's floodgate wall had been knocked off by a train derailment several months prior to Hurricane Katrina, and the railway was to have closed the resultant opening with a sandbag levee section within the gated opening. Our understanding is that this sandbag closure was inspected by the Orleans Levee Board. This emergency closure appears to have been unsuccessful, as floodwaters appear to have passed through this opening, and then to have eroded and breached the earthen roadway embankment adjacent and behind this section. Our field investigation teams were unable to track the direct consequences of this, as additional breaches along this same frontage section, as well as the major breach at the east bank of the nearby London Avenue Canal, all apparently contributed to flooding of the neighborhoods immediately inboard of this site.

*Jan 20 .*

# MILLING
# BENSON
# WOODWARD L.L.P.

**William C. Gambel**
A Professional Law Corporation
(504) 569-7210
wgambel@millinglaw.com

*Attorneys at Law*

January 19, 2006

<u>VIA FACSIMILE - 504 862 2827</u>

Frederick Wallace
Office of Chief Counsel
U.S.Army Corp of Engineers
400 Seventh Street, SW
New Orleans, Louisiana . 20590

      **Re:    Foia Request – Re:  Flood Gate W 30 – Industrial Canal**

Dear Mr. Wallace:

      Please consider this request under the Freedom of Information Act. 5 U.S.C. § 552, As Amended By Public Law No. 104-231, 110 Stat. 3048.

      Our client, Keith C. Ferdinand, M. D., on whose behalf and at whose instance this request is made, and who joins, ask that you provide to us the following

            Any writings which reference or mention the damage to the Flood Gate W-30 occurring on or about midnight September 10, 2004, the cost of repairing same, the letting of the contract to effect the repair of the damage, the repair of the Gate and adjacent flood wall, the removal of the gate, and the temporary closure of the opening in advance of Hurricanes Katrina and Rita occasioned by the damage and removal, and the reinstallation of the Gate; together with any documents particular to the breach of the enclosure on August 29, 2005.

      If any costs are incurred in the copying of the above referenced documents, please let us know and we will promptly remit what is required.



EXHIBIT
*B*

**MILLING BENSON WOODWARD L.L.P.**

January 19, 2006
Page 2


      Therefore, it is important that we obtain these documents as soon as possible.  Please do what you can to expedite this request.

                           Yours very truly,



                           William C. Gambel


Duly Authorized:

Keith C. Ferdinand, M. D.


W343400



# MILLING
# BENSON
# WOODWARD L.L.P.

### *Attorneys at Law*

**William C. Gambel**
A Professional Law Corporation
(504) 569-7210
*wgambel@millinglaw.com*

March 1, 2006

<u>VIA FACSIMILE - 504 862 2827</u>

Frederick Wallace
Office of Chief Counsel
U.S. Army Corp of Engineers
7400 Leake Avenue
New Orleans, Louisiana 70118

**Re:   Foia Request – Re:  Flood Gate W 30 – Industrial Canal**

Dear Mr. Wallace:

We have not received a formal response to the referenced FOIA request made under date January 19, 2006.  Please be advised that we regard the request to be one made under 5 U.S.C. 552(a)(3)(a) and by the Corps failure to make a timely determination under t U.S.C. 552(a)(6)(8) "deemed to have exhausted administrative remedies with respect to the request".  Id. (c)(i).  We are proceeding accordingly.

If you have another view or are prepared to furnish the materials requested, we invite you to so advise.

Yours very truly,

William C. Gambel

WCG/pb:345280w



EXHIBIT
C



MILLING
BENSON
WOODWARD L.L.P.

*Attorneys at Law*

**William C. Gambel**
A Professional Law Corporation
(504) 569-7210
wgambel@millinglaw.com

September 19, 2006

VIA FAX NO. 202-493-6068

Department of Transportation
Federal Railroad Administration
Office of Chief Counsel
1120 Vermont Avenue N. W.
Washington, DC 20590

Attention:     Denise Koshlon

Re:     FOIA Request - re: Flood Gate I-W 30, West Bank Industrial Canal
         New Orleans, Louisiana

Gentlemen:

Please consider this request under the Freedom of Information Act 5 U. S. C. § 552, as
Amended by Public Law No. 104-231, 110 Stat. 3048.

We asks that you provide to us the following:

> Any and all pictures, correspondence, documents, writings, and
> reports related to or respecting the damage to Flood Gate I-W30,
> West Bank of the Industrial Canal, allegedly occasioned on or about
> September 10, 2004, when rail cars operated by CSX Transportation,
> Inc. on tracks owned by the City of New Orleans Public Belt Rail
> Road and/or Burlington Northern struck the Floodwall and Flood
> Gate.  We are informed that the Floodwall and Flood Gate were
> owned by the United States Army Corps of Engineers and/or the
> Orleans Levee District.

**EXHIBIT**

**MILLING BENSON WOODWARD L.L.P.**

September 19, 2006
Page 2


      We represent home and property owners in the Bywater and Mid City sections of New Orleans adjacent to the damaged flood gate which, we believe, were damaged by flood waters as a result of the fact that the flood system had been compromised by the damage done to the wall and gate on September 10, 2004.

                      Very truly yours,

                      William C. Gambel

WCG:pb/353285



# MILLING BENSON WOODWARD L.L.P.
### *Attorneys at Law*

**William C. Gambel**
A Professional Law Corporation
(504) 569-7210
wgambel@millinglaw.com

September 19, 2006

VIA FAX NO. 202-693-1635

Occupational Safety & Health Administration
200 Constitution Avenue N. W.
Room N-3647
Washington, DC 20210

Attention:   Sue Izuma

Re:   FOIA Request - re: Flood Gate I-W 30, West Bank Industrial Canal
New Orleans, Louisiana

Gentlemen:

Please consider this request under the Freedom of Information Act 5 U. S. C. § 552, as Amended by Public Law No. 104-231, 110 Stat. 3048.

We asks that you provide to us the following:

Any and all pictures, correspondence, documents, writings, and reports related or respecting the damage to Flood Gate I-W30, West Bank of the Industrial Canal, allegedly occasioned on or about September 10, 2004, when rail cars operated by CSX Transportation, Inc. on tracks owned by the City of New Orleans Public Belt Rail Road and/or Burlington Northern struck the Floodwall and Flood Gate. We are informed that the Floodwall and Floodgate was owned by the United States Army Corps of Engineers and/or the Orleans Levee District.

**EXHIBIT**

**MILLING BENSON WOODWARD L.L.P.**

September 19, 2006
Page 2


    We represent home and property owners in the Bywater and Mid City sections of New Orleans adjacent to the damaged flood gate which, we believe, were damaged by flood waters as a result of the fact that the flood system had been compromised by the damage done to the wall and gate on September 10, 2004.

Very truly yours,

William C. Gambel

WCG:pb/353284



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

March 7, 2006

Reply to:
Office of Counsel

William C. Gambel
Milling Benson Woodward, L.L.P.
909 Poydras Street, Suite 2300
New Orleans, Louisiana 70112

Dear Mr. Gambell:

Reference your Freedom of Information Act request dated January 19, 2006 regarding your request for any writings which reference or mention the damage to the Flood Gate W-30 occurring on or about midnight September 10, 2004, the cost of repairing same, the letting of the contract to effect the repair of the damage, the repair of the Gate and adjacent flood wall, the removal of the gate, and the temporary closure of the opening in advance of Hurricanes Katrina and Rita occasioned by the damage and removal, and the reinstallation of the Gate; together with any documents particular to the breach of the enclosure on August 29.

After a diligent search of the records in the structures Branch of the New Orleans District the following records were located:

1. 9/13/04     Pictures of the damaged Floodgate W-30, (Nos.3-37)
2. 9/30/04     Letter from Orleans Levee District (OLD)
3. 10/05/04    Memo: Subject Review of Design Criteria for Floodgate W-30
4. 10/12/04    Letter from OLD
5. 1/28/05     Letter from Design Engineering, Inc. (DEI)
6. 2/2/05      Memo; Subject review of Plans
7. 2/10/05     Pictures of the W-30 Repairs
8. 2/24/05     E-mail Response to DEI
9. 3/30/05     Letter from DEI
10. Comments on DEI Plans and Response, (page 1 only)
11. DEI Plans for Repair to Floodgate W-30 with Excerpts pertaining to W-30 from 1970 Plans and Specs for Levee and Floodwall

The records have been reviewed and deemed releasable in their entirety. I trust that this response satisfies your request. The fee for processing your request is $78.75.

The fee is based on:

| | |
|---|---|
| 1 hour of search GS- 9/15 at $44.00 = | $  44.00 |
| Duplication costs (45 pg. x .15) = | $   6.75 |
| Color duplication costs (20 pg. x .50) = | $  10.00 |
| Oversized duplication costs ( 17 x 1.00)= | $  17.00 |
| Total | $  78.75 |



Gambel, William
March 7, 2006
Page 2 of 2

For the materials, you have received; please remit a check or money order, payable to *B2, New Orleans*, for the stated amount, to this office within 30 calendar days from the date of this correspondence. Should you have any questions regarding this response, please contact me at 504-862-2264.

Sincerely,

Frederick W. Wallace
Freedom of Information Act Coordinator

Enclosures

Orleans Levee District
Damage to Floodgate W30



No. 1 -. OLB Floodgate     9/13/04  Storage Monolith Damage

No. 2 -. OLB Floodgate     9/13/04   Storage Monolith Damage



EXHIBIT

Orleans Levee District
Damage to Floodgate W30



No. 3 -. OLB Floodgate     9/13/04     Storage Monolith Damage



No. 4 -. OLB Floodgate     9/13/04     Seal Plates, RR Crossing

LPV:  Floodgate W-30 Repairs (10 February 2005)





L-Type Waterstop that will need adjustment.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA DEC -3 P 3: 15   **SECTION 10**

NO: 2004- 17143          DIVISION:          SECTION:

CIVIL
DISTRICT COURT

BOARD OF COMMISSIONERS OF THE
ORLEANS LEVEE DISTRICT

**VERSUS**

CITY OF NEW ORLEANS, by and through
the NEW ORLEANS PUBLIC BELT RAILROAD COMMISSION,
CSX TRANSPORTATION, INC. and
THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY

**F**

3 c/c out
12-8-04
L.F

## PETITION FOR DAMAGES

The petition of **Board of Commissioners of the Orleans Levee District, ("OLD"),**

the governing authority of the Orleans Levee District, a public levee district and political

subdivision of the State of Louisiana, with respect represents that:

I.

Made defendants herein are:

a.      The City of New Orleans, by and through the New Orleans Public Belt

Railroad Commission ("NOPBRR"), a commission established by the City of New Orleans

charged with the responsibility and authority to develop, control, operate, manage and

maintain the public belt railroad system within Orleans Parish;

b.      CSX Transportation, Inc. ("CSX"), a foreign corporation authorized to do and

doing business in the State of Louisiana; and

c.      The Burlington Northern and Santa Fe Railway Company ("Burlington", a

foreign corporation authorized to do and doing business in the State of Louisiana.

II.

The defendants are justly and truly indebted unto OLD for any and all damages as

are reasonable in the premises, plus legal interest thereon from date of judicial demand,

until paid, and all costs of these proceedings, for the following reasons.

III.

OLD has the statutory responsibility to develop, construct and maintain flood control

systems and structures within the City of New Orleans, including, but not necessarily

limited to, levees, flood walls and flood gates, in order to protect and preserve the City of

New Orleans from incursion from surrounding waterways.



EXHIBIT
H

VERIFIED
L.F

 

IV.

Included within the flood control system under the authority, control and administration of OLD is Flood Gate W-30, part of the flood wall system situated immediately west of, and running in a north-south direction parallel to, the Industrial Canal just north of the Interstate-10 Highrise.   Railroad tracks running east-west cross the Industrial Canal near the location of Flood Gate W-30.

V.

Sometime before midnight on Friday, September 10, 2004, or in the wee hours of Saturday, September 11, 2004, a train locomotive owned Burlington and operated by employees of CSX picked up several railroad cars in the Almonaster/France Road industrial area of the City of New Orleans, and began proceeding on railroad tracks owned by NOPBRR. Almost immediately thereafter, several cars of the 102-car train derailed at the location of Flood Gate W-30. The derailment began on the tracks owned by NOPBRR and extended to tracks owned by CSX. At least one of the derailed cars crashed into the flood wall and flood gate support system causing extensive damage to the structure, and creating a 32.5' wide gap in the flood protection system.

VI.

Train car derailments such as in the instant matter do not occur absent negligent acts and/or omissions by the parties involved.  Accordingly, OLD specifically pleads the doctrine of *res ipsa loquitur*.  Nevertheless, and upon information and belief, the derailment was caused by the acts and/or omissions of the employees, representatives, and/or agents of the defendants, or others for whom the defendants are responsible, in the following, non-exclusive particulars:

1.      Failing to maintain control of the locomotive;

2.      Failing to see what they should have seen;

3.      Failing to take whatever steps are necessary to avert derailment;

4.      Operating the locomotive with disregard for the current circumstances and conditions;

5.      Failing to keep their tracks under proper repair and maintenance, and in appropriate order under the circumstances and conditions;

6.      Such other acts as discovery in this matter disclose and as may be proven at trial.

VII.

As a result of the accident, OLD sustained the following, non-exclusive damages:

1.      Materials, supplies and manpower expended for the emergent sandbagging of the gap in the flood protection system, including, but not limited to that which became necessary upon the approach of Hurricane Ivan in the days following the accident;

2.      Fees, costs and expenses incurred, or to be incurred, for engineering and/or other studies required for the repair and reconstruction the flood wall and flood gate support system;

3.      Fees, costs and expenses incurred, or to be incurred, for putting the repair and reconstruction of the flood wall out to public bid as required by law;

4.      Fees, costs and expenses incurred, or to be incurred, for overseeing, managing and administering the repair and reconstruction project;

5.      Fees, costs and expenses incurred, or to be incurred, for the actual repair and construction of the flood wall and flood gate support system;

6.      Such other damages as may be proven at trial.

VIII.

OLD attaches hereto as Exhibit "A" its First Request for Production of Documents and things directed to the defendants, and requests that they respond within the delays allowed by La. Code Civ. Proc. art. 1462(B).

WHEREFORE, OLD prays that the defendants be served with a copy of this Petition; that they be cited to appear and answer same; and, after due proceedings had, there be judgment herein in favor of Board of Commissioners of the Orleans Levee District and against the City of New Orleans by and through the New Orleans Public Belt Railroad Commission, CSX Transportation, Inc. and The Burlington Northern and Santa Fe Railway Company, as their respective liabilities may ultimately be determined, for any and all damages which may be reasonable in the premises, plus legal interest thereon from date of judicial demand, until paid, and all costs of these proceedings.

3

 

OLD further prays for any and all other general and equitable relief to which it may

be entitled.

Respectfully submitted,

GERARD G. METZGER, APLC
GERARD G. METZGER
La. Bar Roll No. 9468
CATHERINE M. LALLA
La. Bar Roll No. 28942
829 Baronne Street
New Orleans, Louisiana   70113
Telephone: (504) 581-9322

GWENDOLYN M. HANHART, Of counsel
La. Bar Roll No. 1402
829 Baronne Street
New Orleans, Louisiana   70113
Telephone: (504) 581-9322

Attorneys for the Board of Commissioners of the
Orleans Levee District

PLEASE SERVE:

City of New Orleans, by and through the
New Orleans Public Belt Railroad Commission,
through its Ex-Officio President
Honorable C. Ray Nagin, Mayor
City Hall
New Orleans, Louisiana  70112

CSX Transportation, Inc.
through its agent for service of process
CT Corporation System
8550 United Plaza Boulevard
Baton Rouge, Louisiana  70809

The Burlington Northern and Santa Fe Railway Company,
through its agent for service of process
CT Corporation System
8550 United Plaza Boulevard
Baton Rouge, Louisiana  70809

4

NOV. 15. 2006  5:08PM    FRILOT PARTRIDGE                          NO. 993    P.  1

 **FRILOT PARTRIDGE**

Frilot Partridge, LC                504.599.8000 phone
1100 Poydras Street, Suite 3600     504.599.8100 fax
New Orleans, Louisiana 70163        www.frilotpartridge.com

Carl E. "Chip" Hellmers            504-599-8035 phone
chellmers@frilotpartridge.com      504-599-8156 fax

# Facsimile

| | | | |
|---|---|---|---|
| To: | William C. Gambel, Esq. | Fax: | 504-569-7001 |
| Cc: | Galen S. Brown, Esq.<br>Brent A. Talbot, Esq. | | 504-566-1569<br>504-544-6095 |
| From: | Carl E. Hellmers, III | Date: | November 15, 2006 |
| Total Pages: | 11 | File #: | 338-061073 |
| Re: | **Katrina Canal Breaches Consolidated Litigation<br>Pertains to Paul (06-7682)<br>United States District Court, Eastern District of Louisiana<br>No. 05-4182 "K" (2)** | | |

NOTES:

**If you do not receive all pages, please call Leah Ward at (504) 599-8218.**

**ATTENTION**
The contents of this facsimile are confidential information, and may also be **legally privileged**, intended only for
the use of the individual of entity named above.  If you are not the intended recipient or agent thereof, you are hereby
notified that any use, review, dissemination, copying or distribution of this document or the information contained
herein is strictly prohibited.

If you did not receive all pages, or if you received this facsimile in error or are not the designated recipient or agent
thereof, please immediately contact Leah Ward at (504) 599-8218 (504) 599-8000.



FRILOT PARTRIDGE ᴵᴾ

Frilot Partridge, L.C.           504.599.9000 phone
1100 Poydras Street, Suite 3600   504.599.8100 fax
New Orleans, Louisiana 70163      www.frilotpartridge.com

Carl E. "Chip" Hellmers, III  504-599-8035 phone
chellmers@frilotpartridge.com  504-599-8156 fax

November 15, 2006

**Via facsimile:  (504) 569-7001**

William C. Gambel, Esq.
Millington, Benson, Woodward, LLP
909 Poydras Street, Suite 2300
New Orleans, LA  70112

> Re:   **Katrina Canal Breaches Consolidated Litigation**
>       **Pertains to Paul (06-7682)**
>       **United States District Court, Eastern District of Louisiana**
>       **No. 05-4182 "K" (2)**
>       **Our file: 338-061073**

Dear Mr. Gambel

Enclosed please find the Objections and Answers of BNSF Railway Company to Petitioners' First Request for Admissions, Request for Production of Documents and Answers to Interrogatories.

In the event you have any questions, please contact me.

Sincerely,

Carl E. "Chip" Hellmers, III

CEH/lw
Enclosure
cc:   Galen S. Brown, Esq. (via facsimile:  504-566-1569)
      Brent A. Talbot, Esq. (via facsimile:  504-544-6095)

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | KATRINA CANAL BREACHES | * | CIVIL ACTION |
| | CONSOLIDATED LITIGATION | * | |
| | | * | NO. 05-4182 "K"(2) |
| | | * | |
| PERTAINS TO LEVEE: | | * | JUDGE DUVAL |
| | | * | |
| PAUL, NO. 06-7682 | | * | MAG. WILKINSON |

## OBJECTIONS AND ANSWERS OF BNSF RAILWAY COMPANY F/K/A BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY TO PETITIONERS' FIRST REQUEST FOR ADMISSIONS, REQUEST FOR PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES

NOW INTO COURT, through undersigned counsel, comes the BNSF Railway Company, f/k/a/ the Burlington Northern and Santa Fe Railway Company ("BNSF"), who responds to the Request for Admissions, Request for Production of Documents and Interrogatories propounded upon them by Plaintiffs, Judy M. Paul and Willie Mackie, Sr., as follows:

### REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Please admit you were a named defendant in the lawsuit.

1

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

It is admitted that the Burlington Northern and Santa Fe Railway Company was named as a defendant.   It is denied that the BNSF Railway Company, f/k/a/ the Burlington Northern and Santa Fe Railway Company was named as a defendant.

### REQUEST FOR ADMISSION NO. 2:

Admit that the locomotive involved in the incident was owned by you as alleged.

### RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Denied.

### REQUEST FOR ADMISSION NO. 3:

Admit that the locomotive involved in the incident was in disrepair, not suitable for movement of the train and tow on the night in question, and its condition was a proximate cause of the incident.

### OBJECTION AND RESPONSE TO REQUEST FOR ADMISSION NO. 3:

Objection.   The request is vague, overbroad, ambiguous and burdensome.   The request fails to define the term "disrepair."   The request further seeks an admission as to the ultimate cause of the incident and is therefore an improper request for admission. Subject to the objection, BNSF did not own the subject locomotive involved in the incident and has no information related to the condition of the locomotive at the time of the incident.   The request cannot therefore be admitted or denied.

### REQUEST FOR ADMISSION NO. 4:

Admit that the tracts [sic] in use were in disrepair, not suitable for movement of the train and tow, and failed, and the failure was a proximate cause of the incident.

2

## OBJECTION AND RESPONSE TO REQUEST FOR ADMISSION NO. 4:

Objection.  The request improperly seeks a legal conclusion as to the ultimate legal cause of the incident and is therefore an improper request for admission.  The request fails to define the term "disrepair."  Further, the track involved in the incident was not under the care, custody or control of the BNSF, and BNSF cannot therefore admit or deny the truth of the request.

## REQUEST FOR ADMISSION NO. 5:

Admit that the train and tow was being operated in an unsafe manner, which was a proximate cause of the incident.

## OBJECTION AND RESPONSE TO REQUEST FOR ADMISSION NO. 5:

Objection. This request is vague overbroad and burdensome.  The request fails to define the term "operated in an unsafe manner." Further, the request is improper in that it seeks an admission as to the ultimate legal cause of the incident, and the request is therefore an improper request for admission.  BNSF was not in control of the locomotive at the time of the incident, and therefore cannot admit or deny the request.

## INTERROGATORIES

## INTERROGATORY NO. 1:

Please describe any risk reporting and risk management system you had in force at the time of the incident for gathering information respecting incidents involving damage to persons and property related to or respecting your business.

## OBJECTION TO INTERROGATORY NO. 1:

Objection, the request is vague, overbroad and ambiguous.  The terms "risk management system" are undefined.  The request is further vague, overbroad and

ambiguous, particularly as related to the term "respecting your business."   The request
further seeks information that is irrelevant and will not lead to the discovery of
admissible evidence.

**INTERROGATORY NO. 2:**

Please state when you first became aware of the damage to Gate IW-30 or related
property involved in the incident.

**OBJECTION TO INTERROGATORY NO. 2:**

Objection.  The request is vague, overbroad and burdensome.  The request further
seeks information that is irrelevant and will not lead to the discovery of admissible
evidence.

**INTERROGATORY NO. 3:**

Please identify the persons within your employ who have any knowledge of the
damage to Gate IW 30 or property involved.

**OBJECTION TO INTERROGATORY NO. 3:**

Objection.  This request seeks information that may be protected by the attorney-
client or work product privilege.  The request is further overbroad, vague and ambiguous.
BNSF has no first hand knowledge or information regarding the damage to floodgate IW
30 as no BNSF personnel were involved.

**INTERROGATORY NO. 4:**

Please describe your relationship, at the date and time of the incident, with the
other defendants named in the suit with respect to operation of the train and tow, the
tracks traversed, the repair of the damage, the cost of movement of the train, the tow and
the individual cars.

4

**OBJECTION TO INTERROGATORY NO. 4:**

Objection. This request is vague, overbroad and ambiguous. The request further seeks information that is irrelevant and will not lead to the discovery of admissible evidence. The request is further burdensome to the extent that it seeks information regarding alleged relationships with various governmental entities that literally have no bearing whatsoever on the circumstances surrounding the subject matter involved in this case.

**INTERROGATORY NO. 5:**

Please identify the person or persons employed by you who assisted in the preparation of the responses of these Requests and the search for documents responsive hereto.

**ANSWER TO INTERROGATORY NO. 5:**

Objection. This request seeks information that is irrelevant and will not lead to the discovery of admissible evidence.

**INTERROGATORY NO. 6:**

Please identify the persons who were actually operating the train at the time of the incident, and the persons, firms and corporations by who employed.

**ANSWER TO INTERROGATORY NO. 6:**

BNSF no specific information as to those individuals operating the train at the time of the incident.

**INTERROGATORY NO. 7:**

Please state whether you owned the tracks as alleged.

## OBJECTION AND ANSWER TO INTERROGATORY NO. 7:

Objection. This request is vague overbroad and ambiguous. The request fails to define the location of track involved "as alleged." Subject to the objection, the derailment did not occur on track owned by the BNSF.

## INTERROGATORY NO. 8:

If you deny any of the request for admission, please state in evidentiary detail the facts which you rely to support your denial.

## ANSWER TO INTERROGATORY NO. 8:

BNSF did not have care, custody or control of the subject locomotive or the track at the time of the incident, and the NOPB locomotive involved in the incident was not owned by the BNSF.

## INTERROGATORY NO. 9:

Please state the arrangement you had with the employer of the personnel operating the train and the tow at the time of the incident.

## OBJECTION TO INTERROGATORY NO. 9:

Objection. This request is vague and overbroad. The term "arrangement" is undefined and the request is therefore ambiguous.

## REQUEST FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 1:

Please produce any incident reports or other writings in your possession which reference the damage to Gate IW-30.

6

### OBJECTION TO REQUEST FOR PRODUCTION NO. 1:

Objection.  This request seeks information that may be protected by the attorney client or work product privilege.   The request is further vague, overbroad and burdensome.   Further, the term "writings" is undefined and the request is therefore ambiguous.

### REQUEST FOR PRODUCTION NO. 2:

Please produce all writings related to or referenced in the lawsuit and the damage to Gate IW-30 and/or the resolution of the claims asserted.

### OBJECTION TO REQUEST FOR PRODUCTION NO. 2:

Objection.  This request seeks information protected by the attorney-client or work product privilege.  The term "the lawsuit" is undefined as there are several lawsuits involving the incident.  The request is vague, overbroad and burdensome.  Further, the term "writings" is undefined.

### REQUEST FOR PRODUCTION NO. 3:

Please produce any documents related to or respecting the lawsuit.

### OBJECTION TO REQUEST FOR PRODUCTION NO. 3:

Objection.  This request is vague, overbroad, ambiguous, and seeks no formal or specific response.  The terms "related to or respecting" are undefined, overbroad and vague.  BNSF cannot make any determination as to those documents which may now or in the future involve the subject lawsuit.  In the event plaintiffs have a specific request for a document, BNSF will attempt to comply.

7

## REQUEST FOR PRODUCTION NO. 4:

Please produce any documents related to or respecting the incident described in the Petition.

## OBJECTION TO REQUEST FOR PRODUCTION NO. 4:

See Objection to Request for Production No. 3.

## REQUEST FOR PRODUCTION NO. 5:

Please produce any documents on which you rely to support the answers to the interrogatories.

## OBJECTION TO REQUEST FOR PRODUCTION NO. 5:

Objection. This request is vague, overbroad, ambiguous, and seeks no formal or specific response. The request further seeks information that may be protected by the attorney client or work product privilege. BNSF cannot make any determination as to those documents which plaintiffs seek in connection with the request.


Respectfully submitted,


PATRICK A. TALLEY, JR. (LA. #1616)
CARL E. HELLMERS, III (LA. #25705)
Frilot, Partridge, Kohnke & Clements, L.C.
1100 Poydras Street, 3600 Energy Centre
New Orleans, LA 70163-3600
Telephone: (504) 599-8035
Facsimile: (504) 5998156
**Counsel for BNSF Railway Company
f/k/a Burlington Northern and Santa Fe
Railroad Company**

8

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this _15_ day of November, 2006 served a copy

of the foregoing on all counsel of record via facsimile and/or by the United State Postal

Service properly addressed and postage prepaid.



U.S. Department
of Transportation

**Federal Railroad
Administration**

1120 Vermont Ave., N.W.
Washington, D.C. 20590

9/20/2006

Mr. William C. Gambel
Attorney
Milling, Benson, Woodward L.L.P.
909 Poydras Street, Suite 2300
New Orleans, LA 70508

Re: FRA File No.: FOIA-06-444

Dear Mr. Gambel:

The purpose of this letter is to acknowledge receipt of your Freedom of Information Act
(FOIA) records request by the Federal Railroad Administration (FRA).  You have requested
records related to:   Pictures, correspondence, documents, writings, and reports related to
the damage on 9/10/2004 when cars operated by CSXT on tracks owned by the City New
Orleans to Flood Gate I-W30, West Bank of the Industrial Canal.

We have assigned your request the FOIA file number indicated above and are initiating a
search of the agency's files for responsive records.  Please be advised that the FRA is
currently experiencing a high number of FOIA requests and is addressing backlogged
requests with all due diligence on a first-in, first-out basis.  Your request will be addressed
in the order it was received.  We regret any inconvenience caused by the delay.

If you are interested in railroad accident data, including railroad supplied reports for specific
accidents, you can access these materials through the FRA's web site at:
http://safetydata.fra.dot.gov/officeofsafety/.  Select "Crossing" for highway-rail grade
crossing accident information or "Query" for all railroad accidents, including highway-rail
grade crossing accidents, rail equipment accidents, and reportable casualties.  Other options
are available for other types of records.  If you are able to satisfy your request through the
website, please let me know so we can focus on other pending requests.

If you have any questions regarding FRA's FOIA process, please contact me at (202) 493-
6065 or betty.watson@fra.dot.gov.

Sincerely,

Betty J. Watson
Administrative Staff Assistant

EXHIBIT

**U.S. Department of Labor**

Occupational Safety and Health Administration
Washington, D.C. 20210

Reply to the attention of:



## ACKNOWLEDGMENT OF FOIA REQUEST

September 21, 2006

Mr. William C. Gambel
Milling, Benson & Woodward, L.L.P.
Attorneys at Law
909 Poydras Street, Suite 2300
New Orleans, Louisiana 70112

Dear Mr. Gambel:

Your Freedom of Information Act (FOIA) request dated September 19, 2006, for Occupational Safety and Health Administration (OSHA) records was received by this office on September 19, 2006. You requested records concerning Flood Gate I-W 30, West Bank Industrial Canal located in New Orleans, Louisiana.

Our regional office in Dallas, is the appropriate office to respond to your inquiry. I have forwarded your request to them for action and a direct response to you. Should you need their address it is:

Occupational Safety and Health Administration
U.S. Department of Labor
525 Griffin Street, Room 602
Dallas, Texas 75202

Thank you for contacting OSHA for information. If we can be of further service, please contact our FOIA Officer, Ms. Sue Izumi, at (202) 693-1999.

Sincerely,

William G. Wright, Communication Services Chief
Office of Communications





# MILLING BENSON WOODWARD L.L.P.

### Attorneys at Law

**William C. Gambel**
A Professional Law Corporation
(504) 569-7210
wgambel@millinglaw.com

November 3, 2006

**CORRECTED**

<u>VIA FACSIMILE - 504 862 2827</u>

Frederick Wallace
Office of Chief Counsel
U.S.Army Corp of Engineers
400 Seventh Street, SW
New Orleans, Louisiana  20590

      **Re:    Foia Request – Re: Flood Gate I-W30**

Dear Mr. Wallace:

    Please consider this request under the Freedom of Information Act.  5 U.S.C. § 552, As Amended By Public Law No. 104-231, 110 Stat. 3048.

    We ask that you provide to us the following:

        Any requests for approval, permission or permits, or indications of no objection and Corps of Engineers responses or replies, including documents exchanged, to rebuild, reconstruct or re-erect the bed of the railroad and relay the tracks for the passage of rail traffic through the west flood wall of the Inner Harbor Navigation Canal or Industrial Canal to replace, repair, or relocate the rail tracks which passed through Flood Gate I-W 30 on and before August 29, 2005.

    By way of further definition we understand Norfolk Southern owned the rail bed and tracks.

               Very truly yours,

               William C. Gambel

WCG:pb/354772



*New Orleans* • 909 Poydras Street, Suite 2300 • New Orleans, Louisiana 70112 • (504)569-7000 • Fax (504)569-7001
*Lafayette* • 101 LaRue France, Suite 200 • Lafayette, Louisiana 70508 • (337)232-3929 • Fax (337)233-4957
*Baton Rouge* • 339 Florida Street, Suite 300 • Baton Rouge, Louisiana 70801 • (225)291-7300 • Fax (225)291-4524