UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NORMAN MORALES individually and | * | CIVIL ACTION NO. 06-5962 |
| On behalf of LAURETA MORALES, | * | |
| Plaintiffs, | * | SECTION: "B" (1) |
| versus | * | |
| | * | JUDGE LEMELLE |
| BUFFMAN, INC., SALVADOR | * | |
| MANGANO, MABEL B. MANGANO | * | MAGISTRATE SHUSHAN |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

**MAY IT PLEASE THE COURT:**

Defendant United States of America (hereinafter United States) removed this case on the alleged basis of original jurisdiction under 28 U.S.C. §§ 1346(b)(1), 1441(a) and 1442(a).

## I. BACKGROUND

Plaintiff Norman Morales, individually and on behalf of Laureta Morales, filed this action in the 34th Judicial District Court for the Parish of St. Bernard. This case presents an action against the defendants for damages caused by their negligence in failing to evacuate the St. Rita Nursing Home in anticipation of Hurricane Katrina. In their answer, the defendants make a third party demand against the United States of America alleging that their negligence in the construction and maintenaince of the Mississippi River Gulf Outlet (hereinafter "MRGO") renders them liable to defendants for all or a portion of defendant's liability to your plaintiff. Third Party Defendants, United States of America, promptly removed this action to Federal Court under 28 U.S.C. §§ 1346(b)(1), 1441(a) and 1442(a).

Page 1 of 12

In their Third Party Demand, the defendants incorrectly argue that this court has subject matter jurisdiction over this matter as the United States of America has "waived its sovereign immunity in connection with these claims under 28 U.S.C. §2674 and 28 U.S.C. §1346(b)." Defendants Third Party Demand, ¶¶ XXVII. In fact, the United States has not waived its sovereign immunity as claimed by defendants since the activity in controversy constitutes a "discretionary function" and is thereby an exception to the waiver of 28 U.S.C. §2674 and 28 U.S.C. §1346(b). 28 U.S.C. §2680(a). Furthermore, the United States of America is immune from liability in this action under the Flood Control Act. 33 U.S.C. §702(c).

Accordingly, this court lacks subject matter jurisdiction over the third party defendants United States, and therefore lacks any type of jurisdiction over the controversy. This case should be promptly remanded back to the 34th Judicial Disctrict Court to be tried on its merits.

## II.  LAW AND ARGUMENT

### This Court lacks Subject Matter Jurisdiction over the action because the United States of America cannot be sued in its capacity as a sovereign as it has not consented to be sued.

It is axiomatic that the United States may not be sued without its consent. *United States v. Mitchell*, 463 U.S. 206, 212 (1983), *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941). To consent, Congress must waive sovereign immunity by explicitly extending to federal courts subject matter jurisdiction over a specified cause of action. *Id.* The defendants argue that Congress has made such a waiver in connection with the present action through the Federal Torts Claims Act, 28 U.S.C. §2671 et seq. (hereinafter "FTCA").

The FTCA waives sovereign immunity and allows private individuals to sue the federal government for the negligent torts of its employees by granting federal courts exclusive subject matter jurisdiction over actions against the United States for damages related to that negligence. 28 U.S.C. §§1346(b), *see also Hix v. United States Army Corps of Engineers*, 155 Fed.Appx. 121,124-25 (2005). While the FTCA does waive sovereign immunity as described in the preceding sentence, the FTCA is

explicit that the waiver of immunity is subject to the exceptions enumerated in 28 U.S.C. §2680, including an exception that excludes from this court's subject matter jurisdiction claims challenging "discretionary functions" performed by government employees. *Hix* at 125. The "discretionary function" exception excludes subject matter jurisdiction over "any claim…based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. §2680(a).

Therefore, it is apparent that this Court does not have subject matter jurisdiction over this action if the negligence complained of by the defendants constitutes a "discretionary function" as contemplated by 28 U.S.C. §2860(a) and above-described.

The question of whether the construction and maintenance of the MRGO is a discretionary function is not necessarily a novel question for this court. This question was addressed in *Graci v. United States*, when plaintiffs filed a lawsuit against the United States for flood damages sustained in Hurricane Betsy allegedly caused by the negligent construction and maintenance of the MRGO. In that matter, the United States filed a motion to dismiss arguing that, among other grounds, the FTCA waiver did not apply because of the "discretionary function" exclusion cited by plaintiff in this memorandum, and codified in 28 U.S.C. 2680(a).

While presented in *Graci*, the court's consideration of whether the construction and maintenance of the MRGO constituted a discretionary function is not very revealing to us as we consider the question in the present matter. At the district level, Judge Christenberry of the Eastern District of Louisiana never completely considered the question, and on appeal, the only element of the decision analyzed related to the Flood Control Act, and not the discretionary function exception. *Graci*, 456 F.2d 20 (1971).

In *Graci*, the Eastern District felt that the discretionary function question was not ripe for

consideration upon a motion to dismiss in view of the trend at that time to view the discretionary function exception narrowly. *Graci*, 301 F.Supp. at 948 & n. 2, relying on *Indian Towing Co. v. United States*, 350 U.SS. 61 (1955). However, it is now clear that the determination of whether something is or is not a discretionary function is a jurisdictional issue and is not something that should refer to the merits of the case. *Hix* at 128 ("the discretionary function exception 'is premised on the notion that there is no jurisdiction to hear the claim as the United States has not waived sovereign immunity for that kind of suit, such defenses should be raised by a motion to dismiss for clack of subject matter jurisdiction…").

Additionally, before the appeal of *Graci*, on its rehearing at the Eastern District, Judge Heebe expresses some confusion as to why the government relied on the first clause of 28 U.S.C. §2680(a) when it does not deal with the "discretionary function exception at all." *Gracie*, 301 F.Supp. at 948 & n. 2. Judge Heebe even states that the government failed to argue the discretionary function exception before the Court in the re-hearing, as it did before Judge Christenberry, with any clarity. *Id.*

As a result, the Court can now for the first time fully consider whether claims based on negligence in the construction and maintenance of the MRGO constitutes a claim based on the "exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. §2680(a).

In the present controversy, the defendants allege that the United States of America owed a "duty of reasonable care" to the defendants and that this duty was breached by the negligent construction and maintenance of the MRGO. The defendants allege that the United States was further negligent by concealing the negative impacts of the MRGO. Defendants Third Party Demand ¶¶ XXXV.

To determine whether the "discretionary function" exception applies to these allegations, the court must first consider whether or not the construction and maintenance of the MRGO comprised acts

of government that were discretionary in nature. *Hix* at 125; *see also United States v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Guile v. United States*, 422 F.3d 221, 229 (5th Cir. 2005). An act must "involve an element of judgment or choice" to be considered as discretionary. *Gaubert* at 322.

As described in defendants' Third Party Demand, the construction of the MRGO was approved by Congress under the Rivers and Harbors Act in 1956 and carried out by the United States Army Corps of Engineers (hereinafter "Corps of Engineers") in 1965. It was originally designed as a short-cut for vessels to enter the Port of New Orleans. Defendants Third Party Demand ¶¶ XXVIII-IX.

In executing the construction, and later the maintenance, of the MRGO, there was no "federal statute, regulation, or policy specifically prescribing a course of action for an employee to follow." *Hix* at 125. Instead, the construction of the MRGO was approved as a concept, and the Corps of Engineers then used its discretion to complete and maintain the project. According to Public Law 455 of 1956, 70 Stat. 65, which authorized construction of the Outlet, the Outlet was to be constructed 'substantially in accordance with the recommendation of the Chief of Engineers.' See *Graci v. United States*, 301 F.Supp. at 948 & n.2.

The government act central to this controversy – that the United States was negligent in the construction and maintenance of the MRGO – clearly involved judgment and/or choice. The employees or agents hired to construct and maintain the Outlet were not at the mercy of a governmental directive. *Hix* at 125. It seems clear to the plaintiff in this matter that the United States Congress did not authorize the construction of the MRGO and then require the Corps of Engineers to construct and maintain the outlet at their every whim. The United States Congress specifically requested construction according to the recommendations of the Chief of Engineers, to be provided after study and review. *Graci*, 301 F.Supp. at 948 (FN2).

In a case with similar facts to the present controversy, *Hix v. United States Army Corps of Engineers*, plaintiffs brought a FTCA negligence action against the Corps of Engineers for damages

suffered after two victims drowned in Galveston Island, Texas, near jetties that were maintained by the Corps of Engineers.  Similar to the present matter, the injuries sustained in *Hix* were related to a navigation project constructed and maintained by the Corps of Engineers, the Houston-Galveston Entrance Channel.  Part of this Entrance Channel were "jetties," which are structures designed to protect the channel.  The plaintiffs in *Hix* argued that the Corps were negligent because they failed to place warning signs around the jetties instructing people that it was dangerous to swim in that area. *Hix* at 126.  The United States Court of Appeals for the 5th Circuit held that the decision of the Corps of Engineers to not have warning signs fell "squarely within the discretionary function exception to the FTCA." *Id.*

The defendants argue in the Third Party Demand that the United States is liable to them for its failure to inform or warn them that the construction and maintenance of the MRGO had "greatly enhanced the possibility that their facility would flood during Hurricane Katrina."  Third Party Demand ¶¶ XXXV.  This is extraordinary similar to the allegations in *Hix* that the Corps of Engineers did not act affirmatively to warn the residents or visitors to the area that the jetties were not safe swimming areas.  In both cases, the action by the United States was a discretionary one, as it involved an element of judgment and choice.  *Hix* at 127; see also *Guile v. United States*, 422 F.3d 221, 228-31 (5th Cir. 2005) (holding that the United States Army's decision to hire a health care organization to provide psychiatric services and its decision to supervise and how closely to supervise the organization's work were discretionary in nature); *ALX El Dorado, Inc. v.Sw. Sav . & Loan*, 36 F.3d 409, 410-12 (5th Cir. 1994) (holding that the federal governments supervision of financial institutions under the receivership of the Federal Savings and Loan Insurance Corporation was a discretionary function).

Furthermore, courts have consistently held that government acts in the construction and maintenance of a navigation waterway were discretionary in nature as the acts necessarily involved an element of choice.  *See Canadian Pacific Ltd. v. United States*, 534 F.2d 1165 (5th Cir. 1976) (The

United States does not ensure the safe navigation of any waterway); *see also In re Lloyds Leasing Ltd.*, 764 F.Supp. 1114, 1138 (S.D. Tex. 1990); *Indian Towing v. United States*, 350 U.S. 61, 69, 76 S.Ct. 122 (1955) (The United States has no duty to establish aids to navigation); *Tringali Bros. v. United States*, 630 F.2d 1089, 1090 (5th Cir. Unit A, 1980); *Dunaway v. United States*, 136 F.Supp. 2d 576, 580 (1999) (Because the United States has no duty to ensure the safe navigation of any waterway, or to establish aids to navigation, it enjoys discretion as to whether and how it will establish such aids).

As was required in *Dunaway*, the defendants would have to show that the United States negligently failed to follow a specific, mandatory directive. *Id.* This they can not do.

A government act that is discretionary in nature does not automatically qualify it under the §2680(a) discretionary exception. The "choice" and/or element of "judgment" must be of a certain kind that the discretionary function exception was designed to shield, as the discretionary function was designed to prevent "judicial second-guessing of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *Hix* at 127 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984).

Unquestionabily, the judgment and decisions central to the construction and maintenance of the MRGO were based on public policy considerations. The channel itself was conceived as a tool to aid navigation and commerce in the region, and as such, was a public policy decision and concern of the federal government.

The construction and maintenance of the MRGO is a discretionary function of the United States Governement as contemplated by §2680(a). Accordingly, the FTCA does not waive the sovereign immunity of the federal government as far as this action is concerned. The United States of America should be dismissed from this lawsuit and this case should be remanded back to the 34th Judicial District Court.

**This Court lacks Subject Matter Jurisdiction because the United States is immune under the Flood Control Act – 33 U.S.C. §702(c)**

"No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." 33 U.S.C. §702(c).   This blanket immunity is provided to the United States   by 33 U.S.C. §702(c), commonly referred to as the Flood Control Act (hereinafter "FCA").

It is clear that the existence of the Federal Torts Claims Act "does not in any way modify or repeal" the immunity granted by §702(c).  *Parks v. United States*, C.A.2 (N.Y.) 1966, 370 F.2d 92. Furthermore, the 5th Circuit has made it clear that they consider the language of §702(c) of the Flood Control Act to be "broad" and "sweeping," and based on its plain language, the terms "flood" and "flood waters" extend to "all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control." *United States v. James*, 478 U.S. 597, at 605 (1986); *see also Schneider v. Gulf Insurance Company*, 1993 WL 114520 (E.D.La.).

In the controversy before the court today, Laureta Morales, represented by her survivor, Norman Morales, drowned in flood waters at the St. Rita Nursing Home facility in St. Bernard.   The plaintiffs aver that these flood waters are of the character to qualify the United States for the immunity granted to it by the FCA, and the defendants, obviously, aver the opposite.

Again, the relevance of this Court's decision in *Graci v. United States* is pivotal.  *Graci v. United States*, 456 F.2d 20 (1971).   In that decision, the court ruled that an action under the FTCA for damages caused by the negligent construction and maintenance of the MRGO was not barred by the FCA since the outlet was a navigation project and not a flood control project. *Id.*   In other words, the FCA immunity was considered inapplicable since the flooding was the result of negligence in the construction and maintenance of navigational projects (i.e. channels and outlets) and not a flood control project (i.e. levees).

Fortuntely for the plaintiffs, the law and facts consequential to the present matter is easily distinguishable from the law and facts applicable to the *Graci* decision.

After *Graci,* in deciding whether the United States is immune to a suit for damages caused by flood, courts began considering whether the damages were or were not related to a flood control project. *United States v. James*, 478 U.S. 597, 605 (1986) ("the terms 'flood' and 'flood waters' apply to all waters contained in or carried through a federal flood control project for purposes of or related to flood control"); *see also Mocklin v. United States Army Corps of Engineers*, 877 F.2d 427, 430 & n.6 (1989) (Flotation channel was part of a flood control project because it was not 'wholly unrelated' to flood control as barges used the channel to deliver needed equipment and materials used in the reinforcement of the levees to prevent flooding...the channel must "be 'wholly unrelated' to flood control for the FCA not to apply"); *Graci,* 301 F.Supp. at 956.

In 2001, however, the United States Supreme Court unanimously held that the lower circuits had misinterpreted the FCA's §702(c) immunity as the statute directs courts to determine immunity not by the "character of the federal project or purposes its serves, but by the character of the waters that cause the relevant damages ad the purposes behind their release." *Central Green Co. v. United States*, 531 U.S. 425,434 (2001). Therefore, in determining whether the United States is immune for damages caused by flood, the courts "should consider the character of the waters that cause the relevant damage rather than the relation between that damage and a flood control project." *Id.* At 437.

In addition to these changes in the interpretation of the FCA's §702(c), the facts central to this controversy are different from the facts in *Graci*.

First, the magnitude and scope of Hurricane Katrina is vastly larger than the storm at the center of *Graci*, Hurricane Betsy. The breaching and over-topping of levees, and catastrophic flooding in general, was experienced all throughout the New Orleans Metro Area and the Gulf Coast, and was not an isolated instance of flooding traceable to a tidal surge that traveled through the MRGO. In their

Third Party Demand, defendants even admit that the magnitude of the storm surge was only "amplified" by the presence of the MRGO, thus presupposing an already destructive storm surge. Third Party Demand ¶¶ XXXIII.

Second, the damages central to this controversy clearly result from failures of a federal flood control project. While the defendants attempt to put all blame of the flooding of St. Bernard on the MRGO, it is impossible for them to ignore the fact that levees were breached and over topped before water began pouring into the parish. These levees are part of federal flood control projects, and many of the levees breached were built after *Graci* to separate and protect St. Bernard Parish from the MRGO. Obviously in the circumstances of this case, the flooding of St. Bernard Parish and the St. Rita Nursing Home facility is related to the failures of a flood control project.

As a result of the foregoing, the question of whether the FCA 702(c) immunity applies in this case is an untested question to this court.

In determining whether immunity will attach to the United States in this case, therefore, this court, according to *Central Green Co.*, must consider the character of the waters that caused the damage complained of, and the purpose behind their release. *Central Green Co.* at 435. In the *Central Green Co.* decision, the Supreme Court gives us some guidance in how we should interpret it's new test by stating that it is "relatively easy to determine that a particular release of water that has reached flood stage is 'flood water.'" *Id* at 437. According to Justice Steven's decision, a "single, discrete incident" that causes a flood – such as a hurricane – would qualify the federal government for 702(c) immunity. *Id.*

It would take great imagination for the defendants to argue that the character of the water that damaged the defendant's facility was not "flood waters" as contemplated by the FCA and the Supreme Court in *Central Green Co.*

The intent of the Flood Control Act is exceptionally clear. Even in the *Graci* decision, on

rehearing, Judge Heebe states that "one could not wish for a more lucid statement of the rationale of the [FCA] immunity: that an immunity from liability for floodwater damage arising in connection with flood control works was the condition upon which the government decided to enter into the area of the nationwide flood programs." *Graci*, 301 F.Supp. at 955.

The damages at the center of the current dispute were the result of the United States' failure to protect the St. Rita Nursing Home from flooding, despite their flood control attempts. The fact that there were attempts, however negligent, to protect the region from flood can be credited to the Flood Control Act, which was only passed with the assurance that the United States would not be liable for any failures or inadequacies in their efforts.

On August 29, 2005, flood waters poured into the Parish of St. Bernard and demonstrated to the entire world that the attempts of the United States to protect New Orleans from flooding had miserably failed. But, the United States Congress could not have made a more lucid statement in providing immunity to the United States in the case of such failure, and that immunity applies here. Accordingly, this court does not have jurisdiction over the plaintiffs action, and moves to have the matter remanded to the 34th Judicial District Court.

## III. Conclusion

Considering the foregoing motion, the removal is without merit as the United States District Court for the Eastern District of Louisiana does not have subject matter jurisdiction over this controversy, and this matter should therefore be remanded to the 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana, with cost assigned to the Defendant.

Respectfully submitted,

SCOTT G. WOLFE, JR, LSBA 30122
THE WOLFE LAW OFFICES, L.L.C.
4821 Prytania Street
New Orleans, Louisiana 70115
Telephone: (504) 894-9653
Fax: (866) 761-8934

GREGORY J. NOTO (LSBA 14275)
532 E. Judge Perez Dr.
Suite 102
Chalmette, LA 70043
(504) 279-6686
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above foregoing pleading has been forwarded to the following counsel of record via U.S. Mail, properly addressed and postage pre-paid on the 16th day of October, 2006.

James A. Cobb, Jr., Esq.
Susan E. Henning, Esq.
John F. Emmett, Esq.
Louis G. Spencer, Esq.
1515 Poydras Street, Suite 1950
New Orleans, Louisiana 70112

Stevens E. Moore, Esq.
Hale Boggs Federal Building
500 Poydras Street, Room 210B
New Orleans, Louisiana 70130

SCOTT G. WOLFE, JR.