# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:    **KATRINA CANAL BREACHES**    **CONSOLIDATED LITIGATION** | * * * * * * * * * * | **CIVIL ACTION** <br><br> **NO. 05-4182** <br><br> **SECTION "K"** <br><br> **MAGISTRATE 2** |
| **LEVEE CASES** <br><br> **PERTAINS TO: 06-7682 (PAUL)** | | |

# MEMORANDUM IN SUPPORT OF
# MOTION FOR CLASS CERTIFICATION

**MAY IT PLEASE THE COURT:**

**I.  PROCEDURAL BACKGROUND:**

This lawsuit was originally filed on August 28, 2006 before the Civil District Court for the Parish of Orleans, State of Louisiana, assigned No. 2006-9738 "I", and allotted to the Honorable Piper M. Griffin. Named as Defendants were the Sewerage & Water Board of New Orleans, the Board of Commissioners for the Orleans Levee District, the Board of

Page -1-

Commissioners for the Port of New Orleans, the City of New Orleans, the New Orleans Public Belt Railroad Commission, CSX Transportation, Inc., BNSF Railway Company (f/k/a Burlington Northern and Sante Fe Railroad Company), and the Louisiana Department of Transportation and Development.

In their original Class Action Petition for Damages, Plaintiffs brought suit on the behalf of persons included within the following definition:

> This is a class action on behalf of all residents, real and personal property owners, business interests, and other economic and non-economic interests present on August 29, 2005 in an area bounded by Lake Pontchartrain on the North, the Inner Harbor Navigation Canal on the East, the Mississippi River on the South, and Elysian Fields Avenue on the West, and on behalf of persons whose decedents were located in that area on that date, who as a result of wrongful conduct occurring in Orleans Parish, suffered catastrophic flood-related damages in during and after Hurricane Katrina.

On October 10, 2006, pursuant to 28 U.S.C. §§ 1441 ( c ), this action was removed to this Court by CSX Transportation, Inc. On November 6, 2006, CSX filed a motion seeking dismissal under Fed.R.Civ.P. 12 (b) (6) or, alternatively, for summary judgment under Fed.R.Civ.P. 56. On November 8, 2006, BNSF filed a similar motion seeking dismissal under Fed.R.Civ.P. 12 (b) (6). That same day, Plaintiffs moved for remand under 28 U.S.C. § 1447 ©).[1] On November 13, 2006, the Louisiana Department of Transportation and Development moved for dismissal under Fed.R.Civ.P. 12 (b) (1).

Meanwhile, because of the removal, the provisions of Fed.R.Civ.P. 23 ©) and Uniform

---

[1] These motions are all noticed for hearing on Wednesday, November 29, 2006.

District Court Local Rule 23.1 B now apply.[2]   Local Civil Rule 23.1 B provides:

> **Within 90 days after filing of a complaint** in a class action, unless the period is extended on motion for good cause appearing, the plaintiff shall move for a certification under *FRCvP 23(c)(1)*, as to whether the case is to be maintained as a class action.

(Bold emphasis by Plaintiffs.)

Although motions which may result in remand are pending, this case is still before the U.S. District Court for the Eastern District of Louisiana.  Therefore, Plaintiffs submit this motion for class certification in an abundance of caution and in respectful compliance with Local Civil Rule 23.1 B.

## II.   CLASS CERTIFICATION:

Class actions are designed to conserve the resources of both the courts and the parties by allowing issues potentially affecting every class member to be litigated in an economical fashion, General Telephone Company of Southwest v. Falcon, 102 S.Ct. 2364 (1982).  To ensure that the purposes of class actions are fulfilled, Rule 23 requires that class actions certified under Rule 23(b)(3) meet the requirements of both Rule 23(a), which include numerosity, commonality, typicality, and adequacy of representation, and Rule 23(b)(3), which include predominance and superiority. Jenkins v. Raymark Industries, Inc., 782F.2d 468, 471 (5th Cir. 1986).  The Fifth Circuit has noted that district courts have wide discretion in deciding whether to certify a class in

---

[2] If this case were still before the Civil District Court for the Parish of Orleans, La. C.C.P. art. 592 A (1) would require Plaintiffs to file a motion to certify *within ninety days of service on all adverse parties.*  This would be later than the 90-day deadline imposed by Local Civil Rule 23.1 B.

a particular case. Jenkins at 472. In Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974), the U.S. Supreme Court held that courts must avoid inquiring into the merits of plaintiffs' claims when ruling on class certification.

A.     THE NUMEROSITY REQUIREMENT IS SATISFIED.

Rule 23(a)(1) requires class size to be so numerous that joinder of all members is impracticable.[3] There is no magic number that has been recognized, and courts have found the numerosity requirement satisfied in cases involving as few as 17 class members. Arkansas Educ. Assoc. V. Board of Educ. of Portland Arkansas School Dist., 446 F.2d 763 (8th Cir. 1971), many cases have been certified in the federal courts with less that 150 class members. *See, e.g.,* Duran v. Credit Bureau of Yuma, 93 F.R.D. 607 (D. Ariz. 1982) (105 members); Martin v. Housing Auth. of Atlanta, 86 F.R.D. 329 (N.D. Ga. 1980) (100 members). Here, there are tens of thousands of persons who resided or who had business and property interests within the geographic area described above. Therefore, in the instant case involving thousands of individuals, there can be no doubt that the numerosity requirements of Rule 23 are well-met.

B.     THERE ARE QUESTIONS OF LAW OR FACT COMMON TO THE CLASS.

The second requirement for maintaining a class action is that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The "commonality" requirement is satisfied when there is "at least one issue whose resolution will affect all or a significant number

---

[3] Mass joinder is not an issue here, because the suit was filed on a "joinder" basis in state court and all plaintiff's identities are known.

of the putative class members." Stewart v. Winter, 669 .2d 328, 335 (5th Cir. 1982).[4]  Because only one common issue is required, "[t]he threshold of commonality is not high." Jenkins, 782 F.2d at 472.S

In the instant case, the Class Action Petition identified numerous questions of law and fact common to the Plaintiffs, the putative class, or to Plaintiffs and subdivisions of the putative class, which include, but are not limited to, *e.g.*: whether Plaintiffs' damages were caused or exacerbated by the preventable entry of waters from the London Avenue Canal, the Inner Harbor Navigation Canal, and the 17th Street Canal; whether Plaintiffs' damages were caused or exacerbated by the failure of one or more of the Defendants to properly maintain the sea walls/levees on those canals; whether Plaintiffs' damages were caused or exacerbated by the failure, of one or more of the Defendants to properly inspect those seawalls/levees; and whether Plaintiffs' damages were caused or exacerbated by one or more of the Defendants shutting down storm drainage pumping stations during and after Hurricane Katrina. Thus, several common issues exist, and the "commonality" requirement is satisfied.

C.  **THE CLAIMS OF THE REPRESENTATIVE PARTIES ARE TYPICAL OF THE CLAIMS OF THE CLASS.**

The third requirement for a class action is that "the claims or the defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The "typicality" requirement is designed to ensure that the representative's claims are similar

---

[4] The Court granted partial summary judgment to all Plaintiffs on the issue of Monsanto's liability. This ruling would not be possible in the absence of class-wide common issues of fact and law.

enough to those of the class so that the representatives will adequately represent the class.

General Telephone Co., 457 U.S. at 157. Professor Newberg notes that:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

1 Newberg on Class Actions § 3.13 at 3-77. The test for "typicality" is not demanding, Shipes v. Trinity Industries, 987 F.2d 311, 316 (5th Cir. 1993), and it focuses on the general similarity of the legal and remedial theories of the class representatives' and class members' claims. Jenkins, 782 F.2d at 472. Here, the only real difference between Plaintiffs is the relative value of their damage claims.

In the instant case, the proposed class representatives' claims are typical of those of the class as a whole because there is uniformity between the legal claims and relief that the representatives seek and the claims and relief sought by the class members. All of these claims arise from the same single event – the catastrophic flooding of New Orleans when sea walls and levees failed during and after Hurricane Katrina. Further, as the Class Action Petition indicates, the representative plaintiffs seek damages for the same kind and degree of injuries alleged by the remaining plaintiffs.

### D. THE REPRESENTATIVE PARTIES WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS.

The fourth requirement of Rule 23 is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.CivP. 23(a)(4). Like the "typicality"

requirement, this prerequisite requires that the interests of the named Plaintiffs be aligned with the unnamed class members to ensure that the class representative has an incentive to pursue and protect the claims of the absent class members. Here, of course, there are no unnamed plaintiffs, and the interests of all named Plaintiffs are identical.

In the instant case both the proposed class representatives and their counsel will adequately represent the class. The proposed class representatives and class members are seeking the same types of relief on the same theories as the result of a single, discrete event, and there are no conflicts of interest between the representatives and class members. The proposed representatives, as a group, have claims for the types of damages that have been claimed by their co-plaintiffs. Further, the proposed representatives have a strong interest in prosecuting this action, and they will diligently prosecute this action on behalf of themselves and the absent class members.

Counsel for Plaintiffs are experienced and have, and will, aggressively pursue the interests of all plaintiffs. These counsel regularly engage in complex litigation similar in size, scope, and complexity to the present case.

### E.   THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(3).

In addition to the four requirements discussed above, a class certified under Rule 23(b)(3) must satisfy two additional requirements: (1) questions of law or fact common to members of the class predominate over any questions affecting only individual members, and (2) the class action procedure must be superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3). Factors to be considered in the analysis include the

interest of the class members in individually controlling the prosecution of the action, the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the difficulties likely to be encountered in the management of a class action. Id.

Federal courts recognize that a class action is the appropriate vehicle for handling the claims of large numbers of individuals harmed as the result of a single catastrophic event. *See, e.g.,* Black v. Rhone-Poulenc, 173 F.R.D. 156 (S.D. Va. 1996) (certifying a class of thousands of individuals asserting claims for chemical exposure, evacuation, fear and fright, and property damage). In Louisiana, where catastrophic events are, unfortunately, commonplace, courts have routinely recognized the efficacy of class actions. *See, e.g.,* Livingston Parish Police Jury v. Illinois Central Gulf Railroad, 432 so.2d 1027 (La. App. 1st Cir. 1983); Adams v. CSX Railroad, 615 So.2d 476 (La. App. 4th Cir. 1993); Lailhengue v. Mobil Oil Co., 657 So.2d 542 (La. App. 4th Cir.1995); McCastle v. Rollins Environmental Services of La., 456 so.2d 612 (La. 1984). As in those cases, class treatment here better promotes fairness to the parties and conservation of the resources of this Court than does traditional piecemeal litigation.

E.      **PROPOSED CLASS DEFINITION AND GEOGRAPHIC AREA.**

Plaintiffs allege and propose that the class be defined as follows:

> *All residents, domiciliaries, business entities, property owners, and other persons and entities residing or present on August 29, 2005 inside the geographic area bounded by (1) Lake Pontchartrain on the North, (2) the Inner Harbor Navigation Canal on the East, (3) the Mississippi River on the South, and (4) Elysian Fields Avenue on the West, or whose decedents were present in said area on or after*

Case 2:05-cv-04182-SRD-JCW   Document 1838-1   Filed 11/27/06   Page 9 of 10

*August 29, 2005, who suffered damages as a result of Hurricane Katrina-related flooding on and after August 29, 2005, and thereafter suffered additional damages including but not limited to wrongful death, personal injury, loss of income and other economic losses, mental anguish, long term health risks associated with exposure to polluted flood waters, relocation expenses, damage to real property, and damage to personal property.*

### III. CONCLUSION:

This litigation arises out of a single, common event that effected a large number of persons, in a similar fashion. No other method of litigation management is better suited to the large number of parties plaintiff and the common issues of fact and law. Therefore, should this case not be remanded to the Civil District Court for the Parish of Orleans, it should be certified as a class action.

Respectfully submitted,

By: _[signature]_

| | |
|---|---|
| RICHARD M. MARTIN, Jr., Bar # 8998<br>416 Gravier Street<br>New Orleans, LA 70130<br>Telephone: (504) 586-0000 | JOHN J. CUMMINGS, III, Bar # 4652<br>CUMMINGS & CUMMINGS<br>416 Gravier Street<br>New Orleans, LA 70130<br>Telephone: (504) 586-0000 |
| DEBORAH SULZER, Bar # 19806<br>650 Poydras Street, Suite 2635<br>New Orleans, LA 70130<br>Telephone: (504) 299-3380 | RICHARD A. WEIGAND, Bar # 13324<br>WEIGAND & LEVENSON<br>427 Gravier Street<br>New Orleans, LA 70130<br>Telephone: (504) 568-1256 |

Page -9-

ARTHUR MORRELL, Bar # 1494
J.P. MORRELL, Bar # 29635
1660 Treasure Street
New Orleans, LA 70119
Telephone: (504) 261-0535

And, of Counsel:

WILLIAM C. GAMBEL, Bar # 5900
MILLING BENSON WOODWARD, LLP
909 Poydras Street, Suite 2300
New Orleans, LA 70112
Telephone: (504) 569-7210

SUZETTE BAGNERIS, Bar # 2224
3520 General DeGaulle Drive, Suite 4070
New Orleans, LA 70114
Telephone: (504) 368-1911