UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHRISTIE STEUDLEIN, WIFE OF/AND | * | DOCKET NO.:   2:06-CV-7307 |
| HENRY J. STEUDLEIN, III | * | |
| | * | JUDGE:      DUVAL |
| VERSUS | * | |
| | * | SECTION:   K |
| STATE FARM FIRE | * | |
| AND CASUALTY COMPANY, | * | MAGISTRATE:   WILKINSON |
| ET AL | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPPOSITION TO
## PLAINTIFFS' MOTION TO REMAND

**MAY IT PLEASE THE COURT:**

DEFENDANTS, **STATE FARM FIRE AND CASUALTY COMPANY** ("State Farm") and **HYLTON S. PETIT, JR.** ("Petit"), oppose the Motion for Remand filed by plaintiffs Christine Steudlein and Henry J. Steudlein, III ("the Steudleins") for the following reasons:

## I.      INTRODUCTION

Plaintiffs move for remand on the basis of no federal jurisdiction.  Plaintiffs' Motion should be denied because the case was properly removed under diversity jurisdiction, 28 USCA § 1332, because the both insurance agents named in the Petition as defendants (State Farm agent Petit and Warren Dennis (alleged to be the agent for Fidelity) are improperly joined to the lawsuit.  Without Petit and Dennis as parties, there is complete diversity of citizenship.

1

Alternatively, this lawsuit was properly removed to federal court based on federal question jurisdiction, 28 U.S.C. §1331. Plaintiffs' right to relief, based on the claims made in the Petition for Damages, necessarily depends upon resolution of questions of federal law, including the administration of a federally-regulated flood insurance policy. Alternatively, the Multiparty, Multiforum Trial Jurisdiction Act, 28 U.S.C. § 1369, provides federal jurisdiction justifying a denial of Plaintiff's Motion to Remand.

## II.    **FACTUAL & PROCEDURAL BACKGROUND**

The Steudleins filed a Petition for Damages on or about August 28, 2006, stating claims for damages against State Farm, Petit, Warren Dennis and Fidelity National Insurance Company. This matter was removed to this court on October 4, 2006; the earliest service was on Hylton Petit, September 6, 2006.

The Steudleins lived at 5632 Ada Place in Lakeview, New Orleans. They had a flood insurance policy issued by Fidelity in December, 2003; they had a homeowners insurance policy issued by State Farm on May 21, 1999.[1] The Steudleins submitted an application to State Farm for the homeowners insurance on May 17, 1999.[2]

On information and belief, the flood insurance policy issued by Fidelity was delivered to Plaintiffs, and one renewal notice was delivered to plaintiffs, indicating the flood insurance policy limits, in approximately December, 2003.

The homeowners insurance policy was issued by State Farm effective May 17, 2006. When the policy was issued, the policy limits were as follows: $142,100 (dwelling coverage); $14,210 (dwelling extension coverage); and $106,575 (contents coverage).[3] These were the

---

[1] See Exhibit "A", Affidavit of Hylton S. Petit, Jr., # 3-4

[2] See Exhibit "A", #4; See Exhibit "B", Homeowners Insurance Policy Application.

[3] See Exhibit "A", #7

limits indicated in the homeowners insurance application.[4]  The plaintiffs did not contact Petit to request higher limits.[5]  The policy limits did receive automatic inflationary increases; at the time of Hurricane Katrina (based on the May 17, 2005 renewal), the policy limits were as follows: $176,800 (dwelling coverage); $17,680 (dwelling extension coverage); and $132,600 (contents coverage).[6]

## III.   <u>ARGUMENT</u>

The Steudlein's claims against Mr. Petit, Mr. Dennis, Fidelity, and State Farm invoke this court's diversity jurisdiction or, alternatively, the court's federal question jurisdiction (i.e. the administration and maintenance of a federally-regulated flood policy).

Plaintiffs' allegations against Hylton Petit, the State Farm agent are prescribed an perempted.  The policy was issued more than three years before the filing of the lawsuit and plaintiff can point to no specific alleged act or omission on the part of Petit less than three years before the filing of the lawsuit.

Plaintiff's allegations against Warren Dennis are either prescribed or are the subject of federal jurisdiction pertaining to the policy administration of a federally regulated flood insurance policy.  In the first instance, the claims are prescribed because any such act by Dennis occurred more than one year before the filing of this lawsuit.  In the second instance, any act by Dennis which is to have occurred *after* the issuance of the policy qualifies as "policy administration."  Recent decisions of this court call for federal question jurisdiction of cases involving policy administration.  In the alternative, recent caselaw from another jurisdiction

---

[4] See Exhibit "B."

[5] See Exhibit "A", #10.

[6] See Exhibit "A", #8-9.

explains how procurement issues do fall under federal preemption, thus calling for federal question jurisdiction. Alternatively, the case is removeable under the MMTJA, 28 USC § 1369.

**A.      Plaintiff's claims against Hylton Petit, Jr., have Perempted.**

Plaintiff's naming of the individual agent, Petit, as a defendant on its face would defeat diversity jurisdiction if he were properly joined. However, Petit has been improperly joined.

Plaintiff claims Petit did not advise about additional coverages. Causes of action arising out of acts or omissions arising more than three years before the filing of this lawsuit are barred by peremption. Further, plaintiffs, receiving renewal notices of the policy, were aware of the policy limits of the policy, and were aware of (or should have been aware of) any alleged acts or omissions of Petit at least through the May 17, 2005 policy renewal. As plaintiff does not specifically allege any acts by Petit occurring after that date, all claims by plaintiffs against Petit are barred by peremption.

Removal jurisdiction premised on diversity cannot be defeated by the presence of an improperly-joined non-diverse defendant. See, e.g., Smallwood v. Ill. Cent. R.R., 385 F.3d 568 (5th Cir.2004) (en banc), cert. denied, 544 U.S. 992, 125 S.Ct. 1825, 161 L.Ed.2d 755 (2005). "[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state [or nondiverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state [or nondiverse] defendant." Id. at 573.

Louisiana Revised Statutes § 9:5606 establishes a 3-year peremptive period for claims by an insured against an insurance agent, and a 1-year date-of-discovery peremptive period. Both periods are considered peremptive. That statute provides, in pertinent part:

> **No action for damages against any insurance agent** ... whether based
> upon tort, or breach of contract, or otherwise, **arising out of an engagement
> to provide insurance services shall be brought unless filed ... within one**

> **year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.**

(Emphasis added).

Plaintiffs purchased their homeowners insurance policy from State Farm with an application dated May 17, 1999.[7]   Any action relating to an act or omission allegedly occurring at the time of the policy application and issuance, or before August 27, 2003, is barred by the three-year peremptive period under La. 9:5606.  Further, as a renewal notice was sent to plaintiffs around the time of May 17, 1999 renewal,[8] the plaintiffs "discovered or should have … discovered" the coverages and limits on the policy at that time, and this the one year prescription also applies to this case.

The allegations pled against Petit are the type that would have occurred at the time of the policy origination in 1999 if they happened at all.  Plaintiffs point to no specific allegations against Petit occurring at any date afterward, and only allege the same general allegations against Petit, Dennis, State Farm, and Fidelity.   Moreover, a review of these allegations listed in Plaintiffs' Motion to Remand shows that plaintiffs have no possibility of recovery against Petit:

(A) Underinsuring plaintiffs' property and failing to apprise the plaintiffs of such underinsurance.

The plaintiffs were aware of the original limits on the homeowners policy, because they signed the homeowners insurance application in May, 1999.[9]  Plaintiffs cannot therefore claim surprise that the policy initially was issued those limits - this is what the plaintiffs asked for.

---

[7] See Exhibit "A", #3-4.

[8] See Exhibit "A", #8.

Further, they would have received a copy of their policy stating those limits.  The plaintiffs also knew or should have known that the limits had not seen more than an inflationary increase at the time of the policy's May, 2005 renewal because the renewal notice would have listed the policy limits as they existed at the time.  In fact, each renewal notice sent to the Plaintiffs – in 2000, 2001, 2002, 2003, 2004, and 2005,[10] would have so listed the then-existing homeowners policy limits.  The plaintiffs did not ask Petit to raise their policy limits.[11]  The plaintiffs do not allege such.  If the home was uninsured, plaintiffs were apprised of such.

    (B). Failing to advise plaintiffs that homeowners/fire/liability insurance would not cover catastrophic levee failure or other acts of man which might result in damage to plaintiffs' property;

    The plaintiffs were in possession of their homeowners insurance policy for six years prior to Hurricane Katrina, and the policy contains exclusions relating to water damage and faulty or negligently designed structures.  An insured is responsible for reading his policy and presumed to know its terms.  See Dobson, et al, v. Allstate Insurance Co., No. 06-252, at p. 21, 27 (E.D. La 7/21/2006) (Vance, J.) (citing Motors Ins. Co. v. Bud's Boat Rental, 917 F.2d 199, 205 (5th Cir. 1990); Stephens v. Audubon Ins. Co., 665 So.2d 683, 686 (La. App. 2nd Cir. 12/6/95) (citing Matthews v. Business Men's Assur. Co. of America, 478 So.2d 634, 637 (La. App. 2nd Cir. 1985); Perkins v. Shelter Ins. Co., 540 So.2d 488 (La.App. 1st Cir.1989)).

---

[9] See Exhibit "B."

[10] See Exhibit "A", #5-6.

[11] See exhibit "A" # 10.

Further, flood insurance would cover the plaintiff's water related damages, and Petit does recall trying to sell Plaintiffs flood insurance at the time the homeowners policy was sold in 1999.[12] His recollection was that they had flood insurance from another source.[13]  Plaintiffs did in fact have a policy of flood insurance with Fidelity, so plaintiffs' allegations that Hylton Petit failed to advise them of the existence of flood insurance is either incorrect or irrelevant.

(C) Failing to advise plaintiffs of the existence of available and expanded insurance coverage which might have been available to cover the type of catastrophic levee failure which destroyed plaintiffs' home and its content;

See Explanation to (A) above and (F) below.

(D) Intentionally underinsuring plaintiffs' content;

See Response to (A) above.

(E) Failing to advise paintiffs of the underinsurance;

See Response to (A) above.

(F) Failing to apprise the plaintiffs of the existence of other insurance products, specifically, excess flood insurance coverage, which would have allowed plaintiffs to properly insure their dwelling and content;

The plaintiffs never asked Petit about excess flood insurance,[14] and if they had they would be told that they would not be eligible for it unless they first purchased the maximum limits of a primary flood insurance policy ($250,000 dwelling, $100,000 contents).  On information and belief, plaintiffs' primary flood insurance policy limits were only $191,000 (dwelling) and $34,500 (contents).   As the flood policy was with another company, Petit could not have adjusted these

---

[12] See Exhibit "A", #12-13.

[13] See Exhibit "A.", #13.

[14] See Exhibit "A", #14.

limits.  (Presumably Warren Dennis would have also advised plaintiffs that they were not eligible for excess flood insurance unless they increased their primary flood limits to the maximum.)

(G) Deviating from industry standards by failing to "match" plaintiffs' flood and homeowners coverages.

The flood and homeowners risks were insured by different insurers.  The respective agents and insurers would not know that the limits did not "match" unless the plaintiffs so informed them and requested an adjustment to the policy limits; the plaintiffs did not ask Petit to make any adjustment to the homeowners policy limits.[15]

Clearly the plaintiffs do not stand a chance of recovering on these allegations against Petit, even if such claims were not barred by peremption.  A cause of action against an agent is barred unless the "action for damages against any insurance agent ... arising out of an engagement to provide insurance services [is] filed ... within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered."  La R.S. 9:5606.  This was not done.  The plaintiffs *discovered or should have discovered* any alleged act or omission by the agent occurring through the time of the May 2005 renewal in or before May, 2005.   The lawsuit was filed on August 28, 2006, more than one year after the May 17, 2005 renewal notice (Exhibit C) and this suit is thus *too late* to raise a cause of action for any act or omission occurring at or before that date.  As such, any cause of action against the individual agent based on acts arising at the time of the policy issuance and through the 2005 renewal has perempted. Plaintiffs can point to no alleged act or omission occurring afterward. Since the claims against Petit are barred by peremption, plaintiffs have no possibility of recovery against Petit. Because there is no possibility of recovery against

---

[15] See Exhibit "A", #10.

Petit, he must be considered fraudulently joined, and the lawsuit may be removed by State Farm pursuant to the court's diversity jurisdiction.

**B.    Plaintiff's claims against Warren Dennis have Prescribed**

Plaintiff's naming of the individual agent for Fidelity, Warren Dennis ("Dennis"), as a defendant on its face would defeat diversity jurisdiction if he were properly joined.  Dennis, too, has been improperly joined.  To the extent plaintiff claims there was any wrongdoing by the agent more than one year before the filing of this lawsuit, those claims are prescribed.

Removal jurisdiction premised on diversity cannot be defeated by the presence of an improperly-joined non-diverse defendant. See, e.g., Smallwood v. Ill. Cent. R.R., 385 F.3d 568 (5th Cir.2004) (en banc), cert. denied, 544 U.S. 992, 125 S.Ct. 1825, 161 L.Ed.2d 755 (2005). "[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state [or nondiverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state [or nondiverse] defendant." Id. at 573.

Louisiana Revised Statutes § 9:5606 establishes a 3-year peremptive period for claims by an insured against an insurance agent, and a 1-year date-of-discovery period. (Both periods are considered peremptive and cannot be interrupted once they start running.)  That statute provides, in pertinent part:

> **No action for damages against any insurance agent** ... whether based upon tort, or breach of contract, or otherwise, **arising out of an engagement to provide insurance services shall be brought unless filed ... within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.** However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

(Emphasis added).    Plaintiffs purchased their flood insurance policy from Fidelity with an application dated in December, 2003.    The three-year peremptive period does not apply as to Warren Dennis.    However, the policy was issued more than one year prior to the filing of this lawsuit, and the policy was renewed in December, 2004, also more than one year before the filing of plaintiffs' lawsuit.

The plaintiffs were aware of the original limits on the flood policy, because they signed the flood insurance application in December, 2003.  Plaintiffs cannot therefore claim surprise that the policy initially was issued those limits - this is what the plaintiffs asked for.    The plaintiffs also knew or should have known what the limits were at the time of the policy's December, 2004 renewal because the renewal notice presumably would have listed the policy limits as they existed at the time.

Based on the caselaw cited in the previous section, plaintiffs' claims against Dennis, at least those for any alleged act or omission alleged to have occurred before the time of the December, 2004 renewal, were more than one year prior to the filing of the lawsuit, and are barred by peremption under Louisiana's R.S. 9:5606.

## C.    The Court Has Federal Question Jurisdiction Over This Case.

As explained in the previous section, the court has *diversity jurisdiction* to the extent that any alleged act against Dennis took place more than one year before the filing of the lawsuit. This section will explain how, if any alleged acts of the agent occurred later, the court has jurisdiction under *federal question jurisdiction.*

Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."   An action will give rise to federal question jurisdiction where either a plaintiff's cause of action is itself

created by federal law, or where a plaintiff's state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 125 S. Ct. 2363, 2368 (2005).

### 1.   Plaintiffs' Claims Raise Federal Issues Regarding Flood Policy Administration

#### a.   Administering Policies is Regulated by FEMA.

The claims made by plaintiffs in this lawsuit raise a federal question because the case law and federal regulations both state that the *administration* of a flood insurance policy issued through the NFIP raises a federal question. Plaintiffs make claims for errors and omissions of Warren Dennis in failing to raise the limits of coverage of their flood policy. In their Motion to Remand, plaintiffs assert that they are not making claims against a flood policy, but rather they are making state law claims involving policy "procurement" and plaintiff asserts that such claims do not implicate federal law. However, once a policy has been issued, the issue is not policy procurement, but policy *administration*, and FEMA regulates the administering and marketing of flood policies as it does claims handling.[16]   [Plaintiff does not allege any specific act against Warren Dennis arising after December, 2004.  However, if there were any alleged act or omission occurring after December, 2004, it would involve a policy that had been in effect for

---

[16] The FEMA regulations also describe the **selling** of a policy, in additional to the **administering** of a policy, as invoking federal regulations and raising federal questions. See 44 C.F.R. Pt. 62, App. A art. I (stating that the Federal Insurance Administration ("FIA") has extensively regulated the participating companies' activities when **selling** or **administering** SFIPs. For example, the Arrangement expressly directs that WYO companies "shall issue policies under the regulations prescribed by the Administrator in accordance with the Act," 44 C.F.R. Pt. 62, App. A, art. II.D.2, and "shall market flood insurance policies in a manner consistent with marketing guidelines established by FIA." Id. art. II.G.2.  § 62.23(h)(2), (3), (7).  Additionally, in order to qualify for participation in the NFIP, WYO companies must "submit information concerning [their] plans for the WYO program including plans for the training and support of producers and staff [and] marketing plans and sales targets," 44 C.F.R. § 62.24(d), and WYO companies are required to submit to a federal review of their "claims, underwriting, customer service, marketing, and litigation activities" at least once every three years.  44 C.F.R. § 62.23(j)(2); 44 C.F.R. Pt. 62, App. B.  Thus under this rationale, even pure "procurement" claims invoke federal jurisdiction.

one year, and thus involve the *administration* of that policy.]   To the extent that plaintiffs plead claims against Defendants which involve policy administration by Dennis *after* the issuance of the flood insurance policy, this Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 4072.

While courts have been slow to distinguish policy administration from policy procurement, recent decisions of this and other courts establish that policy administration is indeed separate and apart from procurement, that policy administration claims are more similar to claims relating to claims-adjusting, and that **policy administration claims raise federal questions.**   Further, recent changes in the federal regulations also clarify that policy administration raise a federal question.

i.   Caselaw

In the recently-decided <u>Newman v. Allstate Insurance Company</u>[17], the plaintiff asserted errors and omissions claims against their insurance agent and insurer for wrongfully canceling a flood insurance policy.  The plaintiff styled these claims as "policy procurement claims."  The court disagreed and denied the Motion to Remand:

> While the plaintiff's Motion to Remand insists that this case is about the procurement of an NFIP policy and points only to state law claims of negligence and breach of contract against the defendants, the plaintiffs original petition asserts that their long-held policy was improperly cancelled by the defendants and should have remained in effect at the time of their loss.  These claims suggest that the plaintiffs contest the manner in which Allstate administered the NFIP policy.
>
> Courts have drawn a distinction between an NFIP participant's procurement of policies and the administration of existing policies.  Claims against agents and insurers for negligent acts or misrepresentations in the procurement of WYO policies on behalf of the NFIP may be remanded to the state court.  <u>See</u> <u>Wright v. Allstate Ins. Co.</u> 415 F.3d 384, 389 n. 3 (5th Cir. 2005); <u>Sullivan v. State Farm & Casualty Co.</u>, 2006 WL 2119320 (E.D. La ) (Barbier, J.); <u>Landry v. State Farm Fire & Casualty</u>, 428 F. Supp. 2d 531 (E.D.La. 2006) (Fallon, J.).  **However, both NFIP regulations and the**

---

[17] On this court's docket at 2:06-cv-03757 (E.D.La. September 13, 2006) (Feldman, J.) , a copy of which is attached hereto as Exhibit "D".

same courts and others have recognized the preemptive nature of the NFIP of any claim arising from claims-handling and administration of a WYO flood insurance policy. <u>See</u> 42. U.S.C. § 4072; 65 Fed. Reg. 60767 (Oct. 12, 2000) ('This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, et. seq.) and Federal common law."); <u>Spence v. Omaha Indemnity Ins. Co.,</u> 996 F.2d 793, 796 (5th Cir. 1993); <u>Sullivan</u>, 2006 WL, 211 9320, at *3; <u>Landry</u>, 428 F. Supp. At 534-35.

This Court has original jurisdiction in this case under 42 U.S.C. § 4072.   The plaintiffs' NFIP policy claims do not arise from initial procurement, but rather from the administration of an existing flood policy over many years; therefore, state law claims are preempted and federal jurisdiction exists. <u>See</u> <u>Southpoint Villas Homeowners Assoc. v. Scottish Ins. Agency Inc.,</u> 213 F. Supp. 2d 586 (D.S.C. 2002).

<u>See</u> <u>Newman v. Allstate</u>, Exhibit "D", at p. 4-5 (emphasis added).[18]   The caselaw thus makes it clear that federal jurisdiction is proper where a plaintiff's claims arise from policy administration instead of policy procurement.

ii.      Federal Regulations

Futher, the most recent changes in the FEMA federal regulations make it even clearer that issues of policy administration (and even policy procurement) are intended by Congress to be decided by the federal courts.   Effective October 1, 2004, there was a new "Arrangement" between FEMA and all WYO Program carriers.   44 C.F.R. Pt. 62, App. A.   In that new Arrangement, FEMA further clarified its regulations to state that just as with disputes arising from claims and claims handling, the subjects of policy sales and administration are performed by the WYO carriers (1) in their fiduciary capacity to the government, (2) utilizing federal funds,

---

[18] <u>See</u> <u>also</u> <u>Breakthrough Realty Unlimited, LLC v. Minor, et al,</u> 2006 WL 2224753 (E.D. La. Aug. 2, 2006) (McNamara, J.)(plaintiff's claim that insurer failed to properly transfer NFIP policy from seller to buyer of home pertains to claims-handling, not procurement; Motion to Remand denied); <u>McCulloch v. Delta Lloyds Inc. Co. of Houston,</u> H-01-3747 (S.D. Tex June 30, 2003) (The non-renewal of a NFIP policy, occurring after the issuance of the policy, involved policy administration, not policy procurement)(A copy of this decision is attached hereto as Exhibit "J"); <u>Southpointe Villas Homeowners Ass'n, Inc. v. Scottish Ins. Agency, Inc.</u> 213 F.Supp.2d 586, 591 (D.S.C.,2002)("Plaintiff's claim for a refund of overcharged premiums necessarily places federal funds at risk." Though not a claim for a flood loss, the court finds federal jurisdiction.)

and (3) governed by extensive federal regulations. Moreover, FEMA again stated its view that

"*any litigation*" therefrom stated a federal question:

> Whereas, FIA has promulgated regulations and guidance implementing the Act and the Write Your Own Program whereby participating private insurance companies act in a fiduciary capacity utilizing federal funds to **sell** and **administer** the Standard Flood Insurance Policies, and has extensively regulated the participating companies' activities when **selling** or **administering** the Standard Flood Insurance Policies; and
>
> **Whereas any litigation resulting from**, related to, or arising from the companies' compliance with the written standards, procedures, and guidance issued by FEMA or FIA arises under the Act, regulations, or FIA guidance, and legal issues thereunder **raise a federal question**; and . . . . Id. at Art. I. (emphasis added)

FEMA's comments regarding the October, 2004 changes include the following:

> In addition, by clarifying the rule to comport with our understanding of jurisdiction, we will ensure that cases are brought in the appropriate **Federal** courts, and the provision limiting litigation exposure to the Program and its participants would minimize unnecessary proceedings (including those in State courts), protect the Federal Treasury, and further the purposes of the Program.

National Flood Insurance Program (NFIP); Assistance to Private Sector Property Insurers, 69 FR

45607, *45610.   (Emphasis added).  Not only have policy administration issues - especially

those where funds of the federal treasury are at stake - traditionally raised federal questions, but

the changes effected by the 2004 Arrangement make it clear that **all policy administration**

**issues** raise federal questions.   Therefore, despite plaintiffs' well-pleaded complaint, their claims

concern flood insurance policy administration and are intimately interrelated with federal law.

Therefore, Dennis' actions in administering the plaintiff's flood insurance policy after the date of

its issuance are regulated by FEMA and removable to this court.

## 2.    NFIP Procurement Claims are Preempted from Decision in State Court.

In the previous section, Defendants distinguish between policy procurement and policy

administration.   This is because it is clear that policy administration issues invoke federal

jurisdiction. This does not, however, mean that policy procurement does not do the same, but only that this is an emerging trend.

It is undisputed that claims against NFIP policies are paid with federal funds, and the federal government bears the risk of loss under the program. WYO carriers are fiscal agents of the United States, 42 U.S.C. § 4071(a)(I); 44 C.F.R. § 62.23(g), and payments on flood claims are a direct charge on the United States Treasury.  See Wright v. Allstate Ins. Co., 415 F.3d 384 (5th Cir. 2005); 42 U.S.C. § 4017(d)(I).   Therefore, state law is preempted by federal law (including the federal regulations that set out the NFIP) where claims are made against a flood insurance policy. "Federal regulations have no less pre-emptive effect than federal statutes."  In re Cajun Electric Power Coop., Inc., 109 F.3d 248, 254 (5th Cir. 1997).   The Fifth Circuit has held that Article IX of the National Flood Insurance Act expressly preempts any and all "state law tort claims arising from claims handling." Gallup v. Omaha Prop. & Cas. Ins. Co., 434 F.3d 341, 345 (5th Cir. 2005).

Judge Messitte of Maryland's District Court recently ruled that preemption of state law claims applies **not only to issues relating to claims handling, but also policy procurement**. See Thomas L. Moffett, II, et al., v. Computer Sciences Corp., et al., No. 8:05-cv-01547-PJM (D. Md. 9/29/06) (Messitte, J) (attached hereto as Exhibit "E".)   The federal regulations have been amended to allow FEMA *to determine* that it is not responsible to pay for complaints "significantly outside the scope of the Arrangement"[19], which impliedly allows FEMA to

---

[19] Effective October 1, 2004, there was a new "Arrangement" between FEMA and all WYO Program carriers, including Defendant State Farm. 44 C.F.R. Pt. 62, App. A.  In that new Arrangement, FEMA further clarified its regulations to state that just as with disputes arising from claims and claims handling, the subjects of policy **sales and administration** are performed by the WYO carriers (1) in their fiduciary capacity to the government, (2) utilizing federal funds, and (3) governed by extensive federal regulations. See also Section III(B)(1)(a)(ii) supra, at p. 9-10.

likewise *determine* that a claim of fraud in procurement is *not* outside the scope of the

Arrangement. <u>See</u> <u>Moffett</u>, Exhibit "E," at 24.   The Court in <u>Moffett</u> explained that:

> The cases holding that procurement claims are not preempted invariably
> trace back to the Fifth Circuit's decision in <u>Spence v. Omaha Indem. Ins.</u>
> <u>Co</u>. 996 F.2d 793 (5th Cir. 1993), which has been read to hold that "state
> law claims based on claims procurement were not preempted, while state
> law claims based on claims adjustment were" or "that state law tort
> claims against WYOs, whether based on procurement or claims
> adjustment, are not preempted by federal law." <u>Wright,</u> 415 F.3d [384,
> 389 (5th Cir. 2005)](citations omitted.) <u>Spence</u> and its progeny rest on a
> straightforward rationale: since Government money is not at stake when
> WYO carriers are sued for procurement fraud, these actions do not
> impede the objectives of the NFIP and therefore should not be
> preempted. [citations omitted].

<u>See</u> <u>id.</u> at 20 (See exhibit "E").  The Fifth Circuit, however, has subsequently questioned whether

it had  made such a holding in <u>Spence</u>:

> A careful reading of <u>Spence</u>, however, reveals that <u>Spence</u> does not hold
> that state law tort claims are not preempted by the NFIA. The issue in
> <u>Spence</u> was a narrow one: whether federal or state law determined the
> statute of limitations for bringing state law claims against a WYO. While
> we held that state law would govern the statute of limitations for state
> law tort claims, we did not foreclose the possibility of field or conflict
> preemption. […] Thus, the issue of whether the NFIA preempted state
> law tort claims was not before the court in <u>Spence</u>, and the court did not
> address it.

<u>Wright v. Allstate Ins. Co.</u>  415 F.3d 384, 389 -390 (5th Cir. 2005).   As the <u>Moffett</u> court

explains, FEMA has been critical of <u>Spence</u> and its progeny:

> FEMA expressly disagreed with the interpretation of the regulations
> given by <u>Spence</u>, and promptly amended its regulations to make clear
> what its position pre-<u>Spence</u> had always been – that state law fraud
> claims based on policy procurement were not 'outside the scope of the
> Arrangement.'  FEMA's position then and now is **that the most that**
> **these regulations do is to 'protect [ ] FEMA from responsibility for**
> **egregious conduct totally outside the Arrangement, such as an**
> **assault by an employee of the WYO Company on an insured party.'**
> <u>See</u> Brief for the United States as Amicus Curiae at 29, <u>Gallup v. Omaha</u>
> <u>Prop. & Cas. Ins. Co</u>. 434 F.3d 341, 345 (5th Cir. 2005).  They do not
> however, except procurement fraud from preemption.

<u>See</u> <u>id</u>, at 25 (emphasis added).  The <u>Moffett</u> court reasoned that procurement claims against

companies and adjusters *could be within* the scope of the arrangement, and therefore such claims,

or the defense thereof, *could be* paid for with U.S. Treasury funds, depending on the determination of FEMA's General Counsel. See id. at 24.   Additionally, "while FEMA may well decline to indemnify WYO's for certain errors, omissions, or negligence, where, as here, WYO's are sued for both procurement fraud and claims handling fraud (or procurement fraud alone), FEMA would still presumably have a duty to defend such claims until such time as they are proven, since the claims might in fact prove totally groundless.  This would involve federal funds. . . . This court finds the argument for conflict preemption as to procurement fraud claims no less persuasive than the argument for conflict preemption of clams handling fraud." See id. (Exhibit "E") at 25-26.

What the Moffett court thus decided was that state law tort claims against WYO carriers are not *automatically* outside the scope of the Arrangement between FEMA and insurance carriers.  It is *up to FEMA* to determine whether such claims, including procurement claims, are outside the scope and thus outside FEMA's responsibility to reimburse.  However, until FEMA has so decided, FEMA *may be* obligated to defend and reimburse the claims styled as state law tort claims, including procurement claims. Therefore the federal courts have jurisdiction over procurement claims as long as there is a chance that federal funds might be involved, and unless FEMA's General Counsel has determined that the claims are outside the "scope," there is a chance, so it would be improper for federal courts to refuse to recognize that the claims may be pre-empted by federal law.

Though Moffett did not expressly apply to agents, the decision logically extends to agents, for as it is up to FEMA to determine whether a claim against a WYO carrier is inside or outside "the scope of the Arrangement", that discretion applies similarly to agents, and until FEMA determines the claim will not or cannot be covered, federal preemption of state court

claims applies.   If, as decided by <u>Moffett</u>, federal law preempts state courts from hearing such claims, then federal courts must have jurisdiction over policy procurement claims, including claims for fraud, negligence, errors and omissions against insurance agents.

### 3.    Multiparty, Multiforum Trial Jurisdiction Act (MMTJA)

This Court also has jurisdiction under 28 U.S.C. § 1369 over lawsuits arising from Hurricane Katrina. 28 U.S.C. § 1369 is titled the "Multiparty, Multiforum Trial Jurisdiction Act (MMTJA)."  This statute was passed in an effort to provide a federal forum and consolidate actions related to a large disaster. "The MMTJA was designed to ameliorate the restrictions on the exercise of federal jurisdiction that ultimately forced parties in multiple suits arising from the same disaster to litigate in several fora." <u>Wallace v. Louisiana Citizens Property Ins. Corp.</u>, 444 F.3d 697, 702 (5th Cir. 2006), citing the statute's legislative history at H.R.REP. NO. 106-276, at 7 (1999).   In §1369, and its corresponding removal statute, §1441(e), Congress has displayed a preference for common federal forums for large disasters in order to promote uniformity. Note, <u>The Multiparty, Multiforum Trial Jurisdiction Act: Open Ing The Door To Class Action Reform</u>, 23 Rev. Litig. 177 (Winter 2004), 186 (footnotes omitted).  Various provisions of the MMTJA, such as the minimal diversity requirement, the "piggyback" provisions of 28 USC 1441(e)(1)(b), and the elimination of the requirement that all defendants consent to removal have also been said to reveal "that the removal amendment is meant to allow parties to join actions currently in state courts to cases pending in federal court." <u>See</u> <u>id</u>, citing H.R. Rep. No. 102-373, at 11 (1999).

At least one federal court in Louisiana has denied a Motion to Remand in a Hurricane Katrina case based on that courts' assumption of jurisdiction under 28 U.S.C. § 1369.   On March 16, 2006, Judge Polozola in the Middle District of Louisiana, in <u>Gladys Chehardy, et al,</u>

v. J. Robert Wooley,. et al, denied a Motion to Remand and found the court to have jurisdiction

under 28 U.S.C.§ 1369.  See Exhibit "F." [20]

### i.      This court has original jurisdiction under 28 U.S.C. § 1369.

This case meets the criteria for jurisdiction under 28 U.S.C. § 1369, which provides, in

pertinent part:

> **§ 1369. Multiparty, multiforum jurisdiction**
>
> **(a) In general.**--The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location, if--
>
>> **(1)** a defendant resides in a State and a substantial part of the accident took place in another State or other location, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;
>>
>> **(2)** any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or
>>
>> **(3)** substantial parts of the accident took place in different States.

Thus, original jurisdiction will lie if each of the following requirements is met:

(a)     There is minimal diversity;
(b)     One of the jurisdictional requirements set out in §1369(a)(1) – (3) is met;
(c)     The action arises from a single "accident," as defined in § 1368(c)(4);
(d)     At least 75 persons died as a result of the "accident"; and
(e)     Those deaths occurred at a "discrete location."

These factors are discussed below:

---

[20] Chehardy was originally filed in the Middle District of Louisiana (3:05-CV-01140), transferred to the Eastern District of Louisiana, and consolidated with # 2:05-cv-04182-SRD-JCW.  The Order attached as Exhibit F was rendered in the Middle District

Plaintiffs note in their Motion for Remand that Defendant's Notice of Removal cites Wallace v. Louisiana Citizens Property Ins. Corp., 444 F.3d 697, 702 (5th Cir. 2006), to support its removal under §1369's "piggyback" jurisdiction.  On March 31, 2006, a panel of the U.S. Fifth Circuit Court of Appeal, in James Wallace, et al, v. Louisiana Citizens Property Insurance Corp., et al, 444 F.3d 697, 702 (5th Cir. 2006), vacated a grant of a Motion to Remand, determining that federal jurisdiction existed based on 28 U.S.C.§ 1369.  The Fifth Circuit opinion in Wallace does indeed support Defendant's removal of this case.  However, subsequent to this ruling the District Court, Judge Livaudais, despite the Fifth Circuit's ruling, again remanded the case because "piggyback" jurisdiction – see section III(C)(2) below—was "insufficient" despite clear statutory

(a)     Minimal Diversity is Present.

Minimal diversity exists because Plaintiffs are citizens of Louisiana and State Farm is a citizen of Illinois.  See 28 U.S.C. § 1369(c)(1) ("minimal diversity exists between adverse parties if any party is a citizen of a state and any adverse party is a citizen of another State").

(b)     Jurisdictional Requirements are Present.

Additionally, it is beyond dispute that, of the three jurisdictional requirements of § 1369(a), at least § 1369 (a)(2) applies to this case because State Farm is a resident of Illinois and Petit is a citizen of Louisiana.[21]

(c)  This Action Arises from a Single "Accident" as defined by 28 U.S.C. §1369(c)(4).

The MMTJA defines "accident" as either (1) "a sudden accident" or (2) "a natural event culminating in an accident."  28 U.S.C. § 1369(c)(4).   Initially, it should be noted that in defining the statutory term "accident", §1369(c)(4) uses the term "accident" within the body of the definition.  To avoid circularity, it must be assumed that Congress intended for the term "accident" as used within the definition to have the ordinary meaning of that term which, when combined with the other parts of the definition, provides a definition of the statutory term "accident" for the purpose of the MMTJA.  "Accident" is generally defined as "an unintended or unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated."  Black's Law Dictionary 15 (7th ed. 1999).

It would not be correct to say that because something less than Hurricane Katrina is an accident, then Hurricane Katrina is not an "accident."  This is contrary to the language of the

---

authority and a 5th Circuit decision to the contrary.  Mover respectfully suggests that Judge Livaudais' decision is erroneous and the Fifth Circuit opinion is correct.

[21] Further, the other two requirements will also be met in this case: State Farm resides in Illinois and substantial parts of the accident took place in other states, i.e., Louisiana and Mississippi. (§ 1369 (a)(1)); substantial parts of the accident took place in different states, such as Louisiana and Mississippi (§ 1369 (a)(3));

statute.  The MMTJA defines "accident" as either (1) "a sudden accident" or (2) "a natural event culminating in an accident."  28 U.S.C. § 1369(c)(4).   The statute thus clearly contemplates a smaller *accident* making up an "accident."[22]   A natural event becomes an "accident" by culminating in an *accident*.  Clearly the statute contemplates that more than one accident may be possible, or more accurately, the statute contemplates accidents in different senses of the word.

Hurricane Katrina was a statutory "accident" under the second prong of the statutory definition (i.e., "a natural event culminating in an accident").   There can be no dispute that Hurricane Katrina was a "natural event," and that Hurricane Katrina culminated in smaller *accidents* within the ordinary meaning of that word (i.e., unintended or unforeseen injurious occurrences) across Louisiana and Mississippi, including the damage to the Plaintiff's residence, various levee breaches, and flooding throughout Orleans parishes.

Further, under the language of the statute, if a natural event becomes an "accident" by culminating in an *accident* under §1369(c)(4), this does not prevent there being a "single accident" within the meaning of §1369(a).   There is no requirement that the culminating events cannot be characterized as accidents themselves, or that there cannot be more than one; it is thus not inconsistent with the language of the statute for there to be more than one accident when one culminates in another.  The statute also does not require that a natural event culminate in only one *accident*.

Two subsections of the statute contemplate the "accident" having ***parts***:

    a.    a defendant resides in a State and a substantial **part of the accident** took place in another State or other location, regardless of whether that

---

[22] For clarity's sake, quotation marks will be used to refer to the "accident" required by 28 U.S.C.A. §1369(a).  Italics will be used to note the definitional *accident,* as the word is used in §1369 (c)(4) to define an "accident."

defendant is also a resident of the State where a substantial part of the
accident took place;

(3)    substantial **parts of the accident** took place in different States."

28 U.S.C. § 1369 (a)(1) and (3).  It is entirely consistent with the plain language of the statute
that levee breaches, pumping station failures and other acts are "parts of the accident."

Additionally, the first prong of §1369(c)(4)'s definition of the statutory term "accident"
(i.e., a sudden *accident*) provides a second way to find that this lawsuit arises out of an
"accident" within the meaning of the MMTJA.  Under the ordinary meaning of *accident* (i.e., "an
unintended or unforeseen injurious occurrence; something that does not occur in the usual course
of events or that could not be reasonably anticipated"), there can be little question that a
hurricane qualifies as an *accident*; there is no doubt that Katrina struck suddenly or that its
physical impact on the Gulf Coast was sudden.

Pursuant to the definition of "accident" in § 1369 (c)(4), the jurisdictional provisions of
the MMTJA are implicated where an action arises either from (1) a sudden or unintended or
unforeseen injurious occurrence or (2) a natural event culminating in an unintended or unforeseen
injurious occurrence.   Hurricane Katrina meets both alternatives of the specific, specialized
definition of "accident" provided by the MMTJA.

Furthermore, the plaintiffs' property was in the Lakeview section of New Orleans.
Lakeview was inundated after the breach of the 17th Street Canal.  This levee breach must also be
considered either an *accident* which Hurricane Katrina culminated in within the meaning of the
statute, or in the alternative, the "accident" under 28 U.S.C.A. §1369(a). "[A] levee break might
very well be considered an accident arising from a natural event so as to trigger the provisions of

22

the MMTJA." <u>Berry v. Allstate Ins. Co.</u> 2006 WL 2710588, *3 (E.D.La.,2006), citing <u>Flint v.</u>

<u>Louisiana Farm Bureau Mut. Ins. Co.,</u> 2006 WL 2375593 (E.D.La.,2006).

(d).   <u>At least 75 persons died as a result of the accident.</u>

Plaintiffs' claims stem from Hurricane Katrina, August 29, 2005, an event during which

over 1,500 persons died, including over 1,200 in Southeast Louisiana.[23]  In the alternative, if the

17th Street Canal Levee breach is to be considered the "accident," according to a map printed in

the Times-Picayune, over 75 persons died in the Lakeview area.[24]

(e).   <u>Those deaths occurred at a discrete location.</u>

While it is beyond dispute that Hurricane Katrina resulted in more than 75 deaths, the

statute also requires that the requisite number of deaths have occurred at a "discrete location." 28

U.S.C. §1369(c)(4).  "Discrete" is a relative term; it denotes something "individual; separate;

distinct." Black's Law Dictionary 479 (7[th] Ed. 1999).  The specificity of the term "discrete" is a

function of the context and circumstances in which it is used.  A natural reading of the term

"discrete location" as used in the MMTJA would vary the applicable boundaries of the location

based upon the nature and characteristics of the statutory accident at issue.  Here, where

Hurricane Katrina is the statutory "accident," the term "discrete location" should be understood

as encompassing the geographic area devastated by the landfall of that storm (i.e. the American

Gulf Coast).  This location is specific and identifiable to the exclusion of all other geographic

areas and its scope of framed by reference to the causative event (i.e. Hurricane Katrina).

---

[23] See http://www.cnn.com/2006/US/03/19/katrina.toll/index.html;
http://www.dhh.louisiana.gov/offices/page.asp?ID=192&Detail=5248;
http://www.insurancejournal.com/news/southeast/2006/01/24/64517.htm.

[24] See Coleman Warner & Robert Travis Scott, "Where They Died", New Orleans *Times Picayune*, Oct. 23, 2005, at A-1, A-14, A-15 (attached as Exhibits K and L.)

Nonetheless, even if the Court were inclined to interpret the term "discrete" to require that the requisite number of deaths have occurred in a defined area less than the entire area impacted by the statutory accident, there are numerous locations that would qualify, including the State of Louisiana, the Eastern District of Louisiana, the City of New Orleans, and/or the Lakeview area of New Orleans between the 17th Street and London Avenue Canals. Any of these various discrete locations would suffice to satisfy the MMTJA's threshold.

Once it is established that the requisite number of deaths occurred at a given discrete location and that those deaths resulted from the statutory accident, the Court would have jurisdiction over any and all civil actions arising out of the same accident. MMTJA jurisdiction does not depend upon whether the Plaintiffs' claim is related in some way to any of the deaths caused by Hurricane Katrina, nor does it depend upon whether Plaintiffs' claim even arises in the same discrete location as the deaths. The MMTJA specifically contemplates that the qualifying accident could span multiple judicial districts or states. See 28 U.S.C. §1369(a)(3) (providing for jurisdiction where "substantial parts of the accident took place in different States"); see also 28 U.S.C. § 1391 (g) (providing for venue "in any district in which ... a substantial part of the accident giving rise to the action took place"). However, as the 17th Street Canal levee breach qualifies as an *accident* in which Hurricane Katrina culmimated, or in the alternative, an "accident," and Lakeview as a "discrete location," there nevertheless is a tie between plaintiffs' claims and these specific sites.

Katrina was both a sudden unintended or unforeseen injurious occurrence and a natural event culminating in many unintended or unforeseen injurious occurrences across the Gulf Coast. Hurricane Katrina resulted in more than 75 deaths both overall and in specific locales as small as the Lakeview district of New Orleans. There is no dispute about the fact that this lawsuit arose

out of Hurricane Katrina; indeed, Plaintiffs' Petition has expressly alleged such.   (Petition,

Paragraph III).    This is all the plain language of §1369 requires.

### ii.    Cases Declining to Find Jurisdiction under the MMTJA Fail to Consider the Plain Language of the Statute.

The best evidence of what Congress intended in enacting a particular statute is the words

that it chose to use in the statute itself; courts should not consult legislative history unless the

statutory language itself is ambiguous.  See Exxon Mobil Corp. v. Allapattah Services, Inc., 545

U.S. 546, 125 S. Ct. 2611, 2625-27, 162 L.Ed.2d 502 (2005).  "[The Supreme Court] has stated

time and again that courts must presume that a legislature says in a statute what it means and

means in a statute what it says there.  When the words of a statute are unambiguous then, the first

canon is also the last: judicial inquiry is complete."  Conn. Nat. Bank v. Germain, 503 U.S. 249,

253-54 (1992)(citations and internal quotation marks omitted).

While plaintiff argues that "It is obvious that the narrow jurisdiction under the  MMTJA

is not intended to apply to a case where there are not many plaintiffs nor many defendants," there

is  no  such  requirement  in  the  statute.    Despite  the  plain  language  of  § 1369  and  without

acknowledging  any  of  the  aforementioned  Supreme  Court  precedent,  some  decisions  have

improperly reached this conclusion based on the legislative history of the MMJTA, though such

a conclusion is not supported by the plain language of the statute.  See Southhall v. St. Paul

Travelers Ins. Co., No. 06-3848, 2006 WL 2385365, at *5-6 (E.D. La. Aug. 16, 2006) (Barbier,

J.) (concluding from legislative history that MMJTA did not confer jurisdiction over case before

court because it was not a large class action and defendants had made no suggestion that case

should be consolidated with any other pending litigation); Hillery v. State Farm Fire & Cas. Co.,

Case No. 2:06-CV-2909, Docket No. 7, pp. 5-8 (E.D. La. July 26, 2006) (Barbier, J.) (attached as

Exhibit "G" (same); Willhoft v. Kert Leblanc Ins. Agency, Inc., Case No. 2:06-CV-1235, Docket

No. 27, pp. 4-5 (E.D. La. July 5, 2006) (Lemmon, J.) (attached as Exhibit "H") (concluding from legislative history and commentary that MMTJA jurisdiction "is not intended to apply to a case where there are not many plaintiffs and many defendants").

As noted previously, the plain and unambiguous text of § 1369 imposes no requirement that a given case involved any particular number of plaintiffs or defendants or that it have any legal or factual issues in common with any other pending action.  As one commentator has noted:

> The MMJTA could include a class action, but it is not limited to class actions. In theory, at least, it could apply to an action by a single plaintiff against two defendants, one of diverse citizenship from the plaintiff and one not—not long as the other requisites of the statute are satisfied.

Johnson, "Current Topics in Federal Subject Matter Jurisdiction" (attached as Exhibit "I"), p. 9. While jurisdictional statures are to be strictly construed, they must still be applied in accordance with their plain language.  The unambiguous requirements of § 1369 are all satisfied in this case. This court thus has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1369(a).

Further, the limited abstention grounds of §1369 do not apply:

> **(b) Limitation of jurisdiction of district courts.**--The district court shall abstain from hearing any civil action described in subsection (a) in which--
>
> **(1)** the substantial majority of all plaintiffs are citizens of a single State of which the primary defendants are also citizens; and
>
> **(2)** the claims asserted will be governed primarily by the laws of that State.

Section 1369(b) does not require the Court to abstain from exercising jurisdiction over this case for two reasons.  First, Section 1369(b)(1), the first requirement for abstention, is not satisfied. State Farm and Fidelity must be considered "primary" defendants.   It is therefore not the case that the plaintiffs are citizens of the same state as all of the primary defendants and the court should not abstain.  See Passa v. Derderian, 308 F. Supp. 2d 44, 61 (D.R.I. 2004) ("§ 1369 does

not require this court to abstain if any *one* of the so-called 'primary defendants' is from a state other that Rhode Island") (emphasis in original).

Nor do defendants agree that the claims will be governed primarily by the laws of Louisiana, for the reasons stated in Section III(C) of this brief. Therefore original federal subject matter jurisdiction lies under 28 U.S.C. § 1369; this matter was properly removed under 28 U.S.C. 1441(e)(1)(A), and remand should be denied.

### 4.      This Court has "Piggyback" Jurisdiction under 28 U.S.C. §1369.

In the alternative, if there were no original removal jurisdiction under 28 U.S.C. §1369, the statute also grants what has been termed "piggyback" jurisdiction. While 28 U.S.C. § 1441(e)(1)(A), allows removal in cases where the federal courts have original jurisdiction under § 1369, a companion provision, 28 U.S.C. § 1441(e)(1)(B) allows removal of actions not otherwise removable but where a defendant is a party to a different case which was brought or could have been brought into federal court under § 1369. State Farm is a defendant in the Katrina-related matter entitled Gladys Chehardy, et al, v. J. Robert Wooley, et al., (3:05-CV-01140) in the Middle District of Louisiana. Chehardy has been removed pursuant to §1369 and §1441(e)(1)(A). See Exhibit "F".

Under the language of 28 U.S.C. § 1441(e)(1)(B), because State Farm "is a party to an action [Chehardy] which is or could have been brought, in whole or in part, under § 1369 in a United States district court and arises from the same accident as the action in State court", the present action [Steudlein] is removable "even if the action to be removed [Steudlein] could not have been brought in a district court as an original matter." In other words, because Chehardy has been removed to federal court under § 1369 and § 1441(e)(1)(A), other cases arising out of the same accident (Hurricane Katrina) in which State Farm is a party may also be removed to federal court under 1441(e)(1)(B) even if there was no original jurisdiction under § 1369.

Fidelity's Notice of Removal also cited several cases on which Fidelity is a defendant in federal court, on which piggyback jurisdiction can be based.

Plaintiff complains that "one case cannot piggyback on another unrelated case simply because they are pending in the same court." On the contrary, this is precisely what the plain language of the statute provides. The only requirement is that the cases *arise* from the same accident, and interpreting the "accident" as either Hurricane Katrina or the 17th Street Canal Levee breach, this requirement is met within the plain language of the statute.

Moreover, even assuming the abstention provision of Section 1369(b) did apply to this case, that would not prevent the Court from exercising jurisdiction over this case under the piggyback jurisdiction of 28 U.S.C. § 1441(e)(1)(B). The Fifth Circuit has specifically held that Section 1369(b) operates only as a limitation on a court's ability to hear a case brought as an *original* matter under Section 1369(a). Wallace, 444 F. 3d at 702. Therefore, even if found applicable to the facts of this case, Section 1369(b) would not prevent defendants from removing this case on the basis of Section 1441(e)(1)(B). See Wallace, 444 F. 3d at 702 ("Consequently, § 1369(b) is not an independent bar to the exercise of jurisdiction over a case removed pursuant to §1441(e)(1)(B), as it applies only to the exercise of original jurisdiction under § 1369(a).")

### 5. The Court May Exercise Supplemental Jurisdiction Over Any Remaining State Law Claims

Should the Court conclude that it has jurisdiction over the Steudleins' claims pursuant to either or both of 28 U.S.C. §§ 1331 and 1369, the Court has jurisdiction over any remaining state law claim pursuant to 28 U.S.C. § 1367, which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of

28

the United States Constitution." See generally, Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S. Ct. 2611 (2005).

## IV.   CONCLUSION

Although nominally pled as state-law causes of action, the Steudleins' claims are removable to court.  The claims against Petit are barred by peremption.  The claims against Dennis are either barred by peremption, and the case is removable for diversity jurisdiction, or they involve flood insurance policy administration, and the case is removable for federal question jurisdiction.  Any way one looks at plaintiff's claims versus Dennis invokes this Court's jurisdiction.

In the alternative, 28 U.S.C. §1369 provides an additional basis for federal jurisdiction.

**ACCORDINGLY,** Defendants pray that the Court deny the Motion To Remand.

Respectfully submitted,

BURT K. CARNAHAN, #3920
JOSEPH M. MESSINA, T.A. #14216
ERIC B. BERGER, #26196
LOBMAN, CARNAHAN, BATT,
  ANGELLE & NADER
THE TEXACO CENTER, SUITE 2300
400 POYDRAS STREET
NEW ORLEANS, LOUISIANA  70130
(504) 586-9292   FAX (504) 586-1290
*Attorneys for State Farm Fire & Casualty Co. and Hylton S. Petit, Jr.*

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this **21ˢᵗ** day of **November, 2006,** served a copy of the foregoing pleading on counsel for all parties to this proceeding, by email via the Court's ECF system.

