# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **THOMAS L. MOFFETT, II,** *et al.* | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civil No. PJM # 05-1547** |
| | * | |
| **COMPUTER SCIENCES** | * | |
| **CORPORATION,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |

## OPINION

Before the Court are eight motions to dismiss filed by various groups of Defendants. Earlier in these proceedings, the Court heard oral argument on the motions and took the matter under advisement. For the reasons set forth below, all the motions will be GRANTED.

## I.

## A.

Plaintiffs are 182 Maryland residents who are insureds and family or household members of insureds under the National Flood Insurance Program (NFIP), whose homes suffered damaged as a result of flooding during Hurricane Isabel in September 2003. They have sued various insurance companies; the Federal Emergency Management Agency (FEMA) and a number of its employees; private contractors who assist FEMA in the administration of the NFIP; and insurance adjusters who adjust claims under the NFIP. Plaintiffs allege violations of their due process rights, fraud in both the procurement of NFIP policies and the adjustment of claims under those policies, tortious interference with contract, and breach of contract.

1

## B.

The NFIP is a federally-subsidized program designed to make affordable flood insurance available to the general public at or below actuarial rates.  It was established under the National Flood Insurance Act of 1968 (NFIA), *see* 42 U.S.C. §§ 4001 *et seq*.  In 1978, FEMA took control of the program and assumed all relevant operational responsibilities.  *See* 15 U.S.C. § 2201 (reprinting 1978 Reorganization Plan No. 3); *see also* 42 U.S.C. § 4071(a); *see also Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 598-600 (4th Cir. 2002) (discussing the history and operation of the NFIP).  FEMA is authorized to promulgate regulations as to "the general terms and conditions of insurability which shall be applicable to properties eligible for flood insurance coverage," and as to "the general method or methods by which proved and approved claims for losses under such policies may be adjusted and paid."  *See Battle*, 288 F.3d at 599 (citing 42 U.S.C. §§ 4013, 4019).  In other words, FEMA writes the policies and makes the rules as to claims made under them.

NFIP insurance is marketed to the public in one of two ways:  directly by FEMA or through the "Write-Your-Own Program" ("WYO Program") under which a private carrier markets the insurance in its own name.  Over 90% of NFIP policies are written by WYO carriers.  *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 267 (3d Cir. 2004).  The WYO carriers have significant administrative responsibilities under the NFIP.  For the policies they issue, they are responsible for the adjustment, settlement, payment and defense of all claims.  44 C.F.R. § 62.23(d).  However, the program does not utilize a traditional reimbursement mechanism; the Federal Government actually pays the claims and covers adjustment and defense costs.  *See C.E.R.*, 386 F.3d at 267.  WYO carriers act as "fiscal agents" of the Government.  42 U.S.C. § 4071(a)(1).  When a WYO carrier collects a premium, it deducts fees and costs and deposits the remainder in the United States

Treasury.  *See* 42 U.S.C. § 4017(d); 44 C.F.R. Part 62, App. A, Art. IV(A).  Thus, payment on a

claim constitutes a direct charge on the Treasury.  *See* 44 C.F.R. § 62.23(f); *C.E.R.*, 386 F. 3d at 267

("It is the Government, not the companies, that pays the claims").  When WYO carriers are required

to defend claims, they are reimbursed by FEMA for their defense costs.  44 C.F.R. § 62.23(i)(6);

*C.E.R.*, 386 F.3d at 268 (citations omitted).  The carriers are compensated for their services by a

3.3% commission on claims paid.  44 C.F.R. Pt. 62, App. A, Art. III (C)(1).  This compensation

system has been devised to minimize the risk that the carriers might be inclined to undervalue

claims.  *See*, *e.g.*, *C.E.R.*, 386 F.3d at 270 n.8; *Bruinsma v. State Farm Fire & Cas. Co.*, 410 F.

Supp. 2d 628, 631 (D. Mich. 2006) ("These features of the National Flood Insurance Program

remove all disincentive from the insurance company to deny meritorious claims").

   The terms and conditions of coverage are fixed by FEMA regulation in the form of a

Standard Flood Insurance Policy ("SFIP") and do not vary whether the policy is marketed by FEMA

or a WYO company.  *See* 44 C.F.R. §§ 61.4(b), 61.13(d)-(e), 62.23 (c)-(d); *Battle*, 288 F.3d at 599

("[A]ll flood insurance policies issued by WYO Companies under the WYO Program must mirror

the terms and conditions of the SFIP, which terms and conditions cannot be varied or waived other

than by the express written consent of the Federal Insurance Administrator" (citations omitted)).

The SFIP is published in the Code of Federal Regulations at 44 C.F.R. Part 61, App. A(1).  It is a

single-risk policy that limits coverage to "direct physical loss by or from flood."  *Id.* Art. II(B)(12).

It also contains a lengthy list of losses that are not covered.  *Id.* Arts. IV, V.

   The SFIP sets forth a number of preconditions to collecting on a claim, the most important

of which is the filing of a proper "proof of loss" within 60 days of the flood loss, in which the

insured must give detailed written notice identifying the property damaged, how and when the

damage occurred, and the property's value. *Id.* Art. VII(J). Insureds have access to the services of

adjusters as a "courtesy," *id.* Art. VII(J)(7),(8), but the SFIP makes clear that the insured has the

ultimate responsibility for complying with the policy terms to ensure payment on covered losses,

*see id.* Art. VII(J)(5), (7), (8) ("5. In completing the proof of loss, you must use your own judgment

concerning the amount of loss and justify that amount . . . 7. The insurance adjuster whom we hire

to investigate your claim may furnish you with a proof of loss form, and she or he may help you

complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss

within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

8. We have not authorized the adjuster to approve or disapprove claims or to tell you whether we

will approve your claim").

  If an insured is dissatisfied with the handling of a claim, he or she may seek recourse from

the WYO company, submit to a binding appraisal process (resolving valuation disputes only, not

coverage disputes), or bring an action in a federal district court. *Id.* Art. VII(P); 42 U.S.C. § 4072

("In the event the program is carried out as provided in section 1340 [42 U.S.C. § 4071], the

Director shall be authorized to adjust and make payment of any claims for proved and approved

losses covered by flood insurance, and upon the disallowance by the Director of any such claim, or

upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant,

within one year after the date of mailing of notice of disallowance or partial disallowance by the

Director, may institute an action against the Director on such claim in the United States district court

for the district in which the insured property or the major part thereof shall have been situated, and

original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action

without regard to the amount in controversy"). Although the provision conferring jurisdiction on

the courts speaks only in terms of "an action against the Director," "a suit against a WYO company is the functional equivalent of a suit against FEMA" since a WYO carrier is a fiscal agent of the government. *C.E.R.*, 386 F.3d at 268.

Several other provisions of the SFIP and NFIP regulations are relevant to the present case. First, in 2000, FEMA added an express preemption clause to the SFIP:

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968 . . . and Federal common law.

44 C.F.R. Part 61, App. A(1) Art. IX.

Second, FEMA has promulgated a regulation that voids any representations inconsistent with the express terms of the SFIP:

> The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself. *Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void,* and the duly licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the servicing agent.

44 C.F.R. § 61.5(e) (emphasis added).

## C.

In the present suit, Plaintiffs have assigned Defendants to five different groups based on their respective roles in the administration of the NFIP. Although these groups are not perfectly aligned with Plaintiffs' various claims and the various motions to dismiss, they are helpful in sketching out the relevant background. The groups are these:

1)      The FEMA Group, consisting of FEMA and certain of its officials and contractors;[1]

_____

[1]

>        This includes David Paulison, David Maurstad, Ed Connor, James Shortley, Ramsey Gray, Michael Maroney, David Woodward, Debbie Woodward, Richard Woodward and Allied

2)      The CSC Group, consisting of Computer Sciences Corporation (CSC) and certain of its employees;[2]

3)      The WYO Group, consisting of WYO carriers[3] and Jerry Dubyak (a claims examiner employed by Omaha Property and Casualty);

4)      The Adjusters Group, consisting of independent adjusting companies and independent adjusters who adjust NFIP losses;[4]

5)      The Administrator/Processor Group, consisting of third-party administrators/processors and some of their employees.[5]

---

American Insurance Co., LLC.  Former FEMA Director Michael Brown is named in the Amended Complaint.  On September 12, 2005, David Paulison was named Acting Undersecretary of Homeland Security for Emergency Preparedness and Response.  Accordingly, he is automatically substituted for Brown under Fed. R. Civ. P. 25(d).  Defendants Gray, Maroney, David Woodward, Debbie Woodward, Richard Woodward and Allied American are not FEMA employees, but served under Defendant Shortley on a FEMA task force that reviewed NFIP claims in the wake of Isabel.

[2]      As the NFIP Bureau and Statistical Agent (BSA), CSC assists in the management of the NFIP, performs analytical and actuarial analyses, and develops forms, manuals, and other materials on the NFIP.  The individual CSC employees named in the Amended Complaint are Paul M. Cofoni, Joseph Buzzelli, Gerry Boa Rodney Cross, Bill Gambee, Robert Hodges, Owen Ivy, and Ed Kristapson.

[3]      This includes American Bankers Insurance Company of Florida, American Reliable Insurance Company, Fidelity National Property Casualty Insurance Company (formerly d/b/a/ First Community Insurance), Harleysville Mutual Insurance Company, Hartford Fire Insurance Company, Liberty Mutual Fire Insurance Company, Omaha Property and Casualty, Selective Insurance Company of the Southeast, USAA General Indemnity Company, Westfield Insurance Company, Windsor-Mt. Joy Mutual Insurance Company, State Farm Fire and Casualty Company, Allstate Insurance Company, Standard Fire Insurance Company (designated as "Travelers Property Casualty Company" in the Complaint), Nationwide Mutual Fire Insurance Company and Safeco Surplus Lines Insurance Company.

[4]      This includes CNC Corporation, Insurance Claims and Catastrophe Services, Inc., Bellmon Adjusters, Colonial Claims Corp., Doug Branham, Jackson Adjustment, Pilot Catastrophe Services, Simsol Insurance Services and John Postava.

[5]      This includes Electronic Data Systems, Greta Richardson, Covansys, Scott Holmes, National Flood Services, Inc., Fiserv NCSI, Inc., Kim Berger and Charles Mikell.

Plaintiffs have set out five causes of action in their Amended Complaint, not all of which apply to all Defendants.

Count I is a *Bivens* claim[6] alleging that the individual CSC Defendants, FEMA officials, and Jerry Dubyak deprived Plaintiffs of a liberty interest (physical health) and a property interest (insurance proceeds they were entitled to under the SFIP) without due process of law.

Count II alleges fraud in the procurement of the policies, i.e., that certain Defendants conspired to and falsely represented the "nature and extent of benefits that would be paid . . . in the event of a flood loss."[7]   Plaintiffs allege that they were told that in the event of a flood loss, "benefits would be paid to them which would make them whole . . . and which would be in an amount sufficient to return their property to pre-flood condition, up to the policy limits."[8]  All the while, Plaintiffs contend, Defendants knew that Plaintiffs would not be made whole and that the benefits payable would be far less than necessary to return Plaintiffs' properties to pre-flood condition.  This claim is brought against all Defendants, including the individual FEMA Defendants, but not FEMA itself.

Count III alleges fraud in the adjustment of claimed losses.  It is plead only against the adjuster and administrator Defendants.  Plaintiffs allege that these Defendants engaged in a systematic "low balling" scheme, whereby they induced insureds to settle claims for far less than the SFIP would allow, by misrepresenting the amounts that insureds could recover on their claims.

---

[6]
     *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

[7]
     Amended Compl. ¶ 72.

[8]
     *Id.* ¶ 73.

Plaintiffs also contend that these misrepresentations were accompanied by false statements concerning the negative consequences that would result in the event that an insured failed to settle promptly. The misrepresentations were allegedly made in a manner that caused Plaintiffs to believe that the adjusters were acting pursuant to FEMA mandate.

Count IV alleges tortious interference with contract. Although it is not entirely clear from the Amended Complaint, Plaintiffs appear to be saying that certain Defendants' actions caused FEMA to breach their insurance contracts. This claim, like Count II, is brought against all Defendants including individual FEMA Defendants, but not against FEMA itself.

Count V alleges breach of contract by the WYO carriers and FEMA. These Defendants allegedly breached by depriving Plaintiffs of the benefits of their SFIP contracts, namely that the SFIP would make them whole (after satisfaction of the deductible) by providing them with an amount sufficient to return their property to its pre-flood condition, up to the policy limits.

### D.

Defendants have divided themselves into groups and have filed eight motions to dismiss:

1) Motion to Dismiss Plaintiffs' Amended Complaint Against the CSC Defendants [Paper No. 56];
2) Motion to Dismiss on Behalf of Federal Defendants [Paper No. 69];
3) Motion to Dismiss Filed by Jerry Dubyak and Twelve WYO Companies [Paper No. 73];
4) Motion to Dismiss Count I by Jerry Dubyak [Paper No. 74];
5) Certain WYO Defendants' Motion to Dismiss the First Amended Complaint, and For More Definite Statement [Paper No. 75];
6) Motion to Dismiss Counts II, III, and IV of the First Amended Complaint Against the Independent Adjuster Defendants [Paper No. 76]; and
7) Administrator Defendants' Motion to Dismiss Counts II, III, and IV of Plaintiffs' First Amended Complaint [Paper No. 78].
8) Defendant SafeCo Surplus Lines Insurance Company's  Joinder in Certain WYO Defendants' Motion to Dismiss the First Amended Complaint, and for More Definite Statement [Paper No. 83].

Defendants raise a host of arguments.  They argue that the *Bivens* claim is barred by sovereign immunity and because Congress has created a comprehensive remedy for aggrieved NFIP insureds.  As to the other non-contractual claims, they argue, *inter alia*, that these claims are preempted by federal law and that, in any event, Plaintiffs' reliance on the alleged misrepresentations was unreasonable as a matter of law.  In the alternative, Defendants argue that the fraud claims are not properly plead under Federal Rule of Civil Procedure 9(b).  Defendants concede that Count V, the breach of contract claim, may go forward, but argue that it should proceed in a more limited way than Plaintiffs propose.  Defendants also argue that all the non-policyholder Plaintiffs must be dismissed from the action.

Because of substantial overlap among the various motions, the Court will consider Defendants' arguments count-by-count, with a few detours where necessary.

## II.

In their motions to dismiss, Defendants have invoked both Federal Rule of Civil Procedure 12(b)(1) (only as to the Federal and CSC Defendants) and Federal Rule of Civil Procedure 12(b)(6).[9]

A motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) raises the question of whether the court has the authority or competence to hear the case.  Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction.  *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md.

---

[9]

Defendants have invoked Rule 9(b) as well, arguing that Plaintiffs have failed to plead their fraud claims with particularity.  The Court need not reach this issue since it is dismissing the fraud claims on other grounds.

Certain of the WYO carriers have also moved pursuant to Rule 12(e) for a more definite statement as to Plaintiffs' contract claims.  *See infra* note 31.

1996).  While the plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court, *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999), the court will only grant the 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Under Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a claim only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995). The court is obliged to accept as true all well-pleaded factual allegations in the complaint and must view them in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Finlator v. Powers*, 902 F.2d 1158, 1160 (4th Cir. 1990).  The court, however, is not obliged to accept the plaintiff's legal conclusions based on the alleged facts.  *District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979).  A complaint that fails to state a claim will be dismissed.  *Id.*

## A.

As an initial matter, the Court is satisfied that it has jurisdiction over this case.  Although the Fourth Circuit has declined to decide the issue of whether 42 U.S.C. § 4072 confers jurisdiction over claims against WYO carriers, it is clear that there is federal question jurisdiction over the breach of contract claims, *see Studio Frames v. Standard Fire Ins. Co.*, 369 F.3d 376, 380 (4th Cir. 2004), and supplemental jurisdiction over the common-law claims, *see* 28 U.S.C. § 1367.

**B.**

Count I is brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

"A *Bivens* action is a judicially created damages remedy designed to vindicate violations of

constitutional rights," by a federal official. *Zimbelman v. Savage*, 228 F.3d 367, 370 (4th Cir. 2000).

Plaintiffs allege that the individual FEMA and CSC Defendants, as well as Jerry Dubyak, have

deprived them of liberty and property interests without due process of law.

Although Defendants make a number of arguments as to Count I, the Court finds most

compelling their contention that a *Bivens* remedy is not appropriate because Congress has already

provided a comprehensive remedy for aggrieved NFIP insureds.  The Court explains.

A *Bivens* remedy is available only where "(1) Congress has not already provided an

exclusive statutory remedy; (2) there are no 'special factors counseling hesitation in the absence of

affirmative action by Congress'; and (3) there is no 'explicit congressional declaration' that money

damages not be awarded." *Judicial Watch v. Rossotti*, 317 F.3d 401, 410 (4th Cir. 2003) (citations

omitted).  The concept of "special factors" "include[s] an appropriate judicial deference to

indications that congressional inaction has not been inadvertent." *Schwieker v. Chilicky*, 487 U.S.

412, 423 (1988).  Where "the design of a Government program suggests that Congress has provided

what it considers adequate remedial mechanisms for constitutional violations that may occur in the

course of its administration," a *Bivens* remedy is generally not available.  *Id.*; *see also Olivares v.

Nat'l Aeronautics & Space Admin.*, 934 F. Supp. 698, 707 (D. Md. 1996) ("[G]enerally speaking,

where Congress has acted in an area and a remedy exists which is alternative to a *Bivens*-type suit,

no *Bivens*-type suit will lie").

*Schwieker* militates strongly against allowing a *Bivens* remedy in this case. There the Supreme Court concluded that the existence of an elaborate scheme of administrative remedies in the Social Security Disability Reform Act of 1984 was evidence that Congress did not intend that there be an additional remedy of money damages against federal officials. *See Schwieker*, 487 U.S. at 424-28. The Court concluded that while "a *Bivens* remedy would obviously offer the prospect of relief for injuries that must now go unredressed,"[10] Congress had still provided "meaningful safeguards or remedies." *Id.* at 425. Similarly in the case at bar aggrieved policyholders will not be left without a remedy if it turns out federal officials have violated their rights. Bearing in mind that the crux of Plaintiffs' claim is that they were denied the benefits they were owed under the SFIP, the existence of the judicial remedy provided by § 4072, a breach of contract action, is a sufficient reason to prompt denial of a *Bivens* remedy.[11] But there is more. An aggrieved policyholder may also invoke the appraisal option whereby the policyholder and the insurer each select appraisers, who in turn select an umpire to resolve any differences in the parties' valuations.

---

[10]    The Court is not convinced that such is the case here. Plaintiffs' proposed *Bivens* action seems to be little more than an attempt to elevate a straightforward breach of contract action to a claim of constitutional magnitude. Defendants have raised serious questions about whether Plaintiffs have stated a claim for violation of their due process rights. They argue that Plaintiffs do not have a protected property interest in "naming their price" as to the benefits they believe they are owed, i.e., they possess only a "unilateral expectation" of a benefit that does not rise to the level of a protected property interest, *see Bd. of Regents v. Roth*, 408 U.S. 564 (1972), and further that Plaintiffs have received all the process due them because they have had access to administrative and judicial remedies in the form of the appraisal option and a breach of contract suit in this Court, *see generally Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). The Court need not address these arguments given its conclusion that a *Bivens* action is not available in these circumstances.

[11]    As Defendants point out, the presence of procedural and substantive prerequisites to a breach of contract action, *e.g.*, filing the proof of loss, may be taken as evidence that Congress intended to limit the remedies available. If a *Bivens* remedy were allowed, these requirements could easily be circumvented.

12

*See* 44 C.F.R. Part 61, App. A(1), Art. VII(P).  The valuation is thus either agreed upon or set with the assistance of an impartial third party.  This represents a fair and reasonable procedure for Plaintiffs to contest FEMA's pay-out decisions with which they may not agree.

Congress appears to have provided a meaningful remedy in these circumstances, where the need for uniformity and the establishment of limits as to possible government liability are obvious.

The Court finds a *Bivens* remedy inappropriate in this case.  Count I will be dismissed.

## C.

There is substantial overlap between Defendants' arguments as to Count II (procurement fraud), Count III (adjustment fraud), and Count IV (tortious interference with contract).  The most important of these arguments is that the claims are preempted.  The Court will address Counts III and IV first, inasmuch as the preemption argument as to these claims is more straightforward, then move to Count II.

In Count III, Plaintiffs allege that the Independent Adjuster and Administrator Defendants committed common law fraud in the adjustment of NFIP claims by misrepresenting the nature and extent of Plaintiffs' SFIP coverage in order to induce them to accept "low ball" offers.  Plaintiffs further allege that these Defendants misrepresented the consequences Plaintiffs would face if they refused to accept these offers.  Count IV alleges that all Defendants, except FEMA and the WYO carriers, tortiously interfered with Plaintiffs' SFIP contracts.  While it is not entirely clear what specific conduct Plaintiffs are referring to in Count IV, since they simply incorporate by reference all preceding factual allegations in this count, what is apparent is that the challenged conduct centers around "the adjustment of the insured Plaintiffs' flood loss claims."[12]  In other words, the thrust of

---

[12]

    Amended Compl. ¶ 79.

both Counts III and IV is that they relate to *the handling of claims under the SFIP*.  The issue, then,

is whether and to what extent state common law actions related to that conduct, including fraud, are

preempted by federal law.

"[S]tate law is preempted under the Supremacy Clause in three circumstances: (1) when

Congress has clearly expressed an intention to do so ('express preemption'); (2) when Congress has

clearly intended, by legislating comprehensively, to occupy an entire field of regulation ('field

preemption'); and (3) when a state law conflicts with federal law ('conflict preemption')."  *College*

*Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595-96 (4th Cir. 2005).  Defendants' arguments involve

both express preemption and conflict preemption.  Express preemption means exactly what is says;

it applies where a statute or regulation explicitly bars state law regulation.  *Id.*  Conflict preemption

comes in two forms: (1) "a direct conflict between state and federal law, such that compliance with

both is impossible," and (2) where "a state law 'stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress.'"  *Id.* at 596.  "A state law may pose an

obstacle to federal purposes by interfering with the accomplishment of Congress's actual objectives,

or by interfering with the *methods* that Congress selected for meeting those legislative goals."  *Id.*

Defendants argue first that Counts III and IV are expressly preempted by Article IX of the

SFIP, added by regulation in 2000.[13]  The provision/regulation states that:

> This policy and *all disputes arising from the handling of any claim* under the policy are
> governed exclusively by the flood insurance regulations issued by FEMA, the National
> Flood Insurance Act of 1968 . . . and federal common law.

44 C.F.R. Part 61, App. A(1) Art. IX (emphasis added).

---

[13]     "[The SFIP] is more than a contract: it is also a regulation of the Federal Emergency
Management Agency, stating the conditions under which federal flood-insurance funds may be
disbursed to eligible policy holders."  *Mancini v. Redland Ins. Co.*, 248 F.3d 729, 733 (8th Cir.
2001).

"Federal regulations have no less pre-emptive effect than federal statutes." *In re Cajun Elec. Power Coop., Inc.*, 109 F.3d 248, 254 (5th Cir. 1997); *see also Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (U.S. 1985) ("We have held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes").  Recognizing this, the Fifth Circuit, in *Gallup v. Omaha Prop. & Cas. Ins. Co.*, has held that Article IX expressly preempts any and all "state law tort claims arising from claims handling."  434 F.3d 341, 345 (5th Cir. 2005).

But even before *Gallup*, the Third, Fifth, and Sixth Circuits, in cases involving the pre-2000 SFIP which did not contain an express preemption provision, held that state law actions regarding "claims handling" were preempted as matter of *conflict* preemption.  *See C.E.R.*, 386 F.3d at 272; *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005); *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 949 (6th Cir. 2002).  Thus Defendants argue that if the Court were to conclude that Counts III and IV are not expressly preempted, it should still conclude that they are preempted because allowing them would interfere with the objectives of the NFIP.  Defendants cite numerous cases to

15

this effect.[14]  Of particular note is the Third Circuit's analysis in *C.E.R.*[15]  There the court began by noting that "[i]ndisputably a central purpose of the [NFIP] is to reduce fiscal pressure on federal flood relief efforts."  *C.E.R.*, 386 F.3d at 270.  It then opined that allowing state tort suits would be at odds with this purpose:

> State tort suits against WYO companies, which are usually expensive, undermine this goal. Allowing suits to proceed . . . results in one of two consequences--both bad.  If FEMA refused to reimburse WYO carriers for their defense costs, insurers would leave the Program, driving the price of insurance higher. The alternative, remuneration for losses incurred in such suits, would directly burden the federal Treasury . . .
>
> Our understanding that expensive litigation will draw on federal funds is confirmed by FEMA's regulations and policies interpreting and implementing the NFIA.  Congress statutorily authorized FEMA to enter into 'arrangements' with private insurance companies.

---

[14]

Apart from the cases discussed above, Defendants cite: *West v. Harris*, 573 F.2d 873 (5th Cir. 1978); *Deverant v. Selective Ins. Co.*, No. 02-3801, 2004 U.S. Dist. LEXIS 8978 (E.D. Pa. Mar. 25, 2004); *Miceli v. Hartford Fire Ins. Co.*, No. Civ. A 03-2724, 2004 WL 253457 (E.D. La. Feb. 10, 2004); *Studio Frames, Ltd. v. Village Ins. Agency, Inc.*, No. 1:01CV876, 2003 WL 1785802 (M.D.N.C. Mar. 31, 2003); *Danos v. La. Farm Bureau*, No. Civ. A. 02-3031, 2003 WL 715753 (E.D. La. Feb. 24, 2003); *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 513 (D.N.J. 2000); *Neill v. State Farm Fire and Cas. Co.*, 159 F. Supp. 2d 770 (E.D. Pa. 2000); *3608 Sounds Ave. Condo. Ass'n v. S.C. Ins. Co.*, 58 F. Supp. 2d 499 (D.N.J. 1999); *Durkin v. State Farm Mut. Ins. Co.*, 3 F. Supp. 2d 724 (E.D. La. 1997); *Oppenheim v. Leone*, No. Civ. A. 96-1905, 1997 WL 149952 (E.D. La. Mar. 20, 1997); *Cage v. State Farm Ins. Co.*, No. Civ. A. 96-3068, 1997 WL 40641 (E.D. La. Jan. 31, 1997); *Stock v. State Farm Ins. Co.*, No. 96-1903, 1997 WL 40629 (E.D. La. Jan. 30, 1997); *Schopen v. State Farm Ins. Co.*, No. Civ. A. 96-1892, 1996 WL 696444 (E.D. La. Dec. 2, 1996); *Levy v. Omaha Prop. & Cas.*, No. 96-567 1996 WL 680251 (E.D. La. Nov. 21, 1996); *Adams v. State Farm Fire & Cas. Co.*, No. 96-1571, 1996 WL 592734 (E.D. La. Oct. 10, 1996).

[15]

Though its holding was based on the conclusion that state law suits would impede the objectives of the NFIP, *C.E.R.* also acknowledged the possibility of a direct conflict between state and federal law if state law actions were allowed.  *See C.E.R*, 386 F.3d at 270 ("[W]e note that the standards used to analyze ordinary insurance claims differ from those applied to [SFIP] claims. In the realm of private insurance, common law doctrines (such as 'reasonable expectations,' 'notice/prejudice,' and 'substantial compliance') govern the evaluation of claims. By contrast, a WYO insurer must strictly follow the claims processing standards set out by the federal Government").

FEMA, in turn, specified the terms of these Arrangements in the regulations governing the Program. Among other things, the Arrangement in effect when C.E.R. purchased its Policy provided that FEMA could reimburse a WYO company for 'payments as a result of awards or judgments for punitive damages arising under the scope of this Arrangement and policies of flood insurance issued pursuant to this Arrangement provided that prompt notice of any claim for punitive damages [was submitted].' The Write-Your-Own Claims Manual issued by FEMA to WYO companies also provided explicitly that the Government would reimburse a WYO company for punitive damages under appropriate circumstances. Thus it appears that FEMA ordinarily will be responsible financially for the costs of defending a lawsuit against a WYO company. The efficiency goals of the Program, on balance, would better be served by requiring claimants to resolve their disputes by means of the remedies FEMA provides.[16]

*Id.* at 270-71 (citations and footnotes omitted).

Apart from the concerns stated in *C.E.R.*, courts have noted that allowing state law actions would jeopardize the interest in uniformity in the administration of the NFIP. As one court has put it:

> [S]ubjecting WYO companies to fifty different bad faith statutes would undermine Congressional intent to have a uniform system. Courts consistently have recognized that the NFIP's internal consistency and nationwide uniformity would be undermined if WYO companies are subject to each state's bad faith laws . . . Exposing WYO companies to bad faith liability in every state would create two curious results. First, [because of sovereign immunity] the holder of a FEMA-issued flood insurance policy would be entitled to less legal protection than the holder of a WYO-issued policy. Second, WYO companies might be more willing to issue[] flood insurance policies in some states and less willing in others. Either result would frustrate Congressional intent, as it would 'create an internal inconsistency within an otherwise balanced statutory and regulatory structure.'

*Peal v. N.C. Farm Bureau Mut. Ins. Co.*, 212 F. Supp. 2d 508, 516-517 (E.D.N.C. 2002) (citations and footnotes omitted).

Finally, and of particular significance, application of the preemption doctrine would not work an undue hardship on aggrieved insureds since they always retain a contract remedy. If an insured

---

[16]

       The specific regulations relating to reimbursement cited here have since been amended, but the Court's concern that FEMA may ultimately have to foot the bill continues to apply with equal force. This is discussed in greater detail below.

17

can recover in contract for a shortfall in benefits, a tort remedy would add little to the enterprise.[17]

If an insured was in fact defrauded in the adjustment of his claims by a "low ball" offer, he remains

entitled to a full recovery of direct losses by suing in contract.[18]

Defendants have made a convincing case for both express and conflict preemption as to

Counts III and IV.[19]

Count II, which claims fraud in the procurement of NFIP policies, presents a slightly

different case.  The Court does not understand Defendants to argue that this claim is expressly

preempted by Article IX of the SFIP.  Rather, they argue that the claim is barred by reason of

---

[17]

     The Court acknowledges that Plaintiffs seek consequential as well as punitive damages on their fraud claims.  Ultimately, of course, that has no bearing on whether or not there is federal preemption.

[18]

     *See* 2 Dan B. Dobbs, Law of Remedies § 9.2(1), at 551 (2d ed. 1993) (explaining that the "loss of bargain" measure of damages for fraud "is exactly like the expectancy measure of contract damages;" it "attempts to put the plaintiff in the economic position he would have been in had the representations been true").  This underscores the point that the Third Circuit made in *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161 (3d Cir. 1998), and again in *C.E.R.*: "[W]e must hold that a tort claim of the kind alleged by C.E.R. is equivalent to a contractual claim that turns on the interpretation of a Policy.  That step we have already taken. *Van Holt* held that a state claim 'sounding in tort' but 'intimately related to the disallowance of [an] insurance claim' is essentially a contractual claim and therefore within the exclusive jurisdiction of the federal courts."  386 F.3d at 272 (citation omitted).

[19]

     Plaintiffs offer a variation on their argument as to Count III, which is easily refuted. While they apparently acknowledge that Article IX of the SFIP expressly preempts some claims against WYO carriers, they argue that Count III is not preempted because it is brought only against the adjuster and administrator Defendants.  Without citing any authority, they argue that these Defendants "have no standing" to claim that Count III is preempted.  The Court disagrees.  Article IX preempts "*all disputes arising from the handling of any claim*" under the SFIP.  It is not limited to suits against WYO carriers.  Moreover, as Defendants have pointed out, this outcome would work directly against one of the principal ends of preemption: uniformity of decisions.  As Plaintiffs would have it, they can pursue adjustment fraud claims against independent adjusters, but if claims are brought against FEMA or WYO carriers for the very same conduct, they are preempted.

conflict preemption.[20]  The Court acknowledges that several courts, disagreeing with Defendants, have held that procurement fraud claims are not preempted.[21]  These courts have made a "critical distinction between claims seeking recovery under the SFIP--which are preempted--and those arising from alleged misrepresentations made during the procurement of the policy--which are not."  *Reeder v. Nationwide Mut. Fire Ins. Co.*, 419 F. Supp. 2d 750, 758 (D. Md. 2006) (citing *Houck v. State Farm Fire and Cas. Co.*, 194 F. Supp. 2d 452, 461 (D.S.C. 2002)).  At the same time, most Courts of Appeals have yet to weigh in on this issue.  *See Wright*, 415 F.3d at 390 ("We join these circuits in holding that state law tort claims arising from *claims handling* by a WYO are preempted by federal law" (emphasis added)); *C.E.R.*, 386 F.3d at 271 n.12 ("We need not decide today whether a case alleging misrepresentation in claims procurement would also be preempted"); *Gibson*, 289

---

[20]

While it might not expressly preempt procurement fraud claims, Article IX is relevant to the analysis of whether they are preempted as a matter of conflict preemption.  Most significantly, it expresses FEMA's concern over the disruptive effect that various state law tort suits (no matter how styled) might have on the NFIP.  *See* National Flood Insurance Program (NFIP); Insurance Coverage and Rates, 65 Fed. Reg. 34,824, 34,825-27 (proposed May 31, 2000) ("The Administrator intends that the same benefits should be available to insureds wherever the insured property is located, or whether the policy is purchased from a WYO insurance company or from the Federal Government.  Thus, there is a need for uniformity in the interpretation of and standards applicable to the policies and their administration. Therefore, we have clarified the policy language pertaining to jurisdiction, venue and applicable law to emphasize that matters pertaining to the Standard Flood Insurance Policy, including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal law").  It is also important to note the context in which this regulation was promulgated.  It came on the heels of the decision in *Cohen v. State Farm Fire and Cas.*, 68 F. Supp. 2d 1151 (C.D. Cal. 1999), which held that extra-contractual claims were not preempted, and, according to Defendants, opened the floodgates to such claims.

[21]

This is not to say that other courts have not gone the other way.  *See*, *e.g.*, *Scritchfield v. Mut. of Omaha Ins. Co.*, 341 F. Supp. 2d 675, 680-81 (E.D. Tex. 2004); *Mason v. Witt*, 74 F. Supp. 2d 955, 963 (E.D. Cal. 1999).

F.3d at 949-50 ("It is unnecessary for us to decide whether policy procurement type state law claims are preempted by NFIA").

The cases holding that procurement claims are not preempted invariably trace back to the Fifth Circuit's decision in *Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793 (5th Cir. 1993), which has been read to hold that "state law claims based on claims procurement were not preempted, while state law claims based on claims adjustment were" or "that state law tort claims against WYOs, whether based on procurement or claims adjustment, are not preempted by federal law."[22] *Wright*, 415 F.3d at 389 (citations omitted). *Spence* and its progeny rest on a straightforward rationale: since Government money is not at stake when WYO carriers are sued for procurement fraud, these actions do not impede the objectives of the NFIP and therefore should not be preempted. *See*, *e.g.*, *Reeder,* 419 F. Supp. 2d at 763 ("United States Treasury funds are not at stake for judgments against WYO Companies arising out of tort claims based on misrepresentations made during the procurement of SFIPs" (citing *Spence*, 996 F.2d at 796 n.17)); *Houck*, 194 F. Supp. 2d at 463 ("[T]he court finds no substantial federal interest concerning these causes of actions because they are outside the scope of the Arrangement and not reimbursable"); *Davis v. Travelers Prop. & Cas.*

---

[22]

In *Wright*, however, the Fifth Circuit itself made clear that it did not read *Spence* in that way:

A careful reading of *Spence* . . . reveals that *Spence* does not hold that state law tort claims are not preempted by the NFIA. The issue in *Spence* was a narrow one: whether federal or state law determined the statute of limitations for bringing state law claims against a WYO. While we held that state law would govern the statute of limitations for state law tort claims, we did not foreclose the possibility of field or conflict preemption. Rather, our holding was premised on the fact that 'the NFIA contains no express preemption provision' and 'neither [the insurer] nor the federal government as amicus suggests preemption of the state law fraud claim.' Thus, the issue of whether the NFIA preempted state law tort claims was not before the court in Spence, and the court did not address it. (Emphasis added).

*Wright*, 415 F.3d at 389-90.

*Co.*, 96 F. Supp. 2d 995, 1004 (N.D. Cal. 2000) ("Defendants and FEMA contend that state-law claims interfere with the statutory scheme and frustrate the intent of Congress, while depleting federal funds in a manner not contemplated by Congress. As shown, state-law claims like the ones at issue will not frustrate the goals of Congress").

These courts cite NFIA and FEMA regulations in support of their conclusion.  First, they suggest that § 4081(c) of the NFIA, which provides that "[t]he Director of the Federal Emergency Management Agency may not hold harmless or indemnify an agent or broker for his or her error or omission," "appear[s] to contemplate negligence actions against WYO Companies." *Reeder*, 419 F. Supp. 2d at 761.  Second, they note that FEMA regulations "remove negligence-type claims from the 'Arrangement' between FEMA and WYO Companies," meaning that WYO carriers are not reimbursed for such claims. *Id.* at 762 (citing former 44 C.F.R. Pt. 62, App. A, Art. IX ("The parties [to the Arrangement] shall not be liable to each other for damages caused by inadvertent delay, error, or omission made in connection with any transaction under this Arrangement.  In the event of such actions, the responsible party must attempt to rectify that error as soon as possible after discovery of the error and act to mitigate any costs incurred due to that error").  Finally, the courts note that "FEMA regulations . . . provide[] that FEMA can refuse to reimburse a WYO insurer if a claim is based on actions by the insurer outside the scope of the NFIP."[23]  *Davis*, 96 F. Supp. 2d at 1004

---

[23]     The regulations were amended in 2004.  Article III(D)(3)(a)-(b), titled "Limitation on Litigation Costs," now provides:

> If the FEMA [Office of General Counsel] finds that the litigation is grounded in actions by the Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence, then the FEMA [Office of General Counsel] shall make a recommendation to the Administrator regarding whether all or part of the litigation is significantly outside the scope of the Arrangement . . . any award or judgment for damages and any costs to defend such litigation will not be recognized under Article III as a

(citing former 44 C.F.R. Pt. 62, App. A, Art. III(D)(3)(a) ("If it is determined that the claim is

grounded in actions by the Company that are outside the scope of this Arrangement, the National

Flood Insurance Act, and 44 C.F.R. chapter 1, subchapter B, and/or involve issues of insurer/agent

negligence as discussed in Article IX of this Arrangement, the [Office of General Counsel] shall

make a recommendation to the Administrator as to whether the claim is grounded in actions by the

Company that are significantly outside the scope of this Arrangement.   In the event the

Administrator determines that the claim is grounded in actions by the Company that are significantly

outside the scope of this Arrangement, the Company will be notified, in writing, within thirty (30)

days of the Administrator's decision if the decision is that any award or judgment for damages

---

reimbursable loss cost, expense or expense reimbursement.
44 C.F.R. Pt. 62, App. A, Art III(D)(3)(a)-(b).

Article IX, titled "Errors and Omissions," now provides:

> In the event of negligence by the Company that has not resulted in litigation but has resulted
> in a claim against the Company, FEMA will not consider reimbursement of the Company
> for costs incurred due to that negligence unless the Company takes all reasonable actions to
> rectify the negligence and to mitigate any such costs as soon as possible after discovery of
> the negligence. Further, (i) if the claim against the Company is grounded in actions
> significantly outside the scope of this Arrangement or (ii) if there is negligence by the agent,
> FEMA will not reimburse any costs incurred due to that negligence. The Company will be
> notified in writing within thirty (30) days of a decision not to reimburse. In the event the
> Company wishes to petition for reconsideration of the decision not to reimburse, the
> procedure in Article III, Section D.3.d shall apply.

*Id.* at Art. IX.

As *Reeder* noted, "[t]hese regulations make explicit what appears to have been standard FEMA
practice with respect to reimbursement of litigation costs."  419 F. Supp. 2d at 762 n.13 (citing
National Flood Insurance Program (NFIP); Assistance to Private Sector Property Insurers
Emergency Preparedness and Response Directorate, Department of Homeland Security, 69 Fed.
Reg. 45,607 at 45,608 (Interim Final Rule, July 30, 2004) ("FEMA will *continue* to rely on the
'significantly outside the scope of the Arrangement' standard for [litigation] reimbursement
decisions") (emphasis added)).

arising out of such actions will not be recognized under Article III of this Arrangement as a reimbursable loss cost, expense or expense reimbursement"); *see also Reeder*, 419 F. Supp. 2d at 762 nn. 12, 13.

Accordingly, Plaintiffs argue that "if the accused activity [i.e., procurement fraud, adjustment fraud, and tortious interference] is outside the scope of the authorized arrangement between the accused party and FEMA, rather than under the policy, there [is] no express or field preemption[24] of any kind." And in this case, say Plaintiffs, Defendants conspired "to act completely outside the scope of their authority under the NFIP" by carrying out an "'in-place' comprehensive scheme" to deny them the benefits of their SFIPs, a conspiracy starting with FEMA at the top and running all the way down to the independent adjusters.[25]

In response, Defendants maintain that, on their face, the FEMA regulations cited by Plaintiffs do not have the meaning Plaintiffs give them nor have they ever been interpreted or applied by FEMA in the way that Plaintiffs and the case authorities suggest. In no sense, say Defendants, have

---

[24]
        Plaintiffs presumably mean conflict preemption, not field preemption.

[25]
        In their Opposition to Defendants' motions, Plaintiffs stress that Defendants "fundamentally misunderstand the procurement fraud cause of action." They seek to make clear that they "are not asserting a misrepresentation of insurance coverage in the SFIP beyond that which the SFIP in facts covers." Rather, they suggest, the misrepresentation they allege "relates to whether the flood loss benefits to which they were entitled under the policy would in fact be paid to them." The Court can understand Defendants' apparent confusion. The Amended Complaint alleges that Defendants falsely represented the "nature and extent of benefits that would be paid . . . in the event of a flood loss," and that "benefits would be paid to them which would make them whole . . . and which would be in an amount sufficient to return their property to pre-flood condition, up to the policy limits." It strains reason to argue that these allegations are not about misrepresentations as to coverage.

the regulations been interpreted by FEMA to except from fraud from preemption, including procurement fraud. The Court finds Defendants' arguments compelling.

First, as Defendants have noted, the regulations allowing FEMA to refuse to reimburse a WYO can unquestionably be read differently from the way in which FEMA reads them. What the "outside-the-scope" regulation does is authorize FEMA's General Counsel and then the Federal Insurance Administrator <u>to find</u> that certain actions are significantly outside the scope of the NFIP arrangement and/or involve agent negligence. *See* 44 C.F.R. Pt. 62, App. A, Art. III(D)(3)(a) ("If the *FEMA OGC finds* that the litigation is grounded in actions by the Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence, then the FEMA OGC shall make a recommendation to the Administrator regarding whether all or part of the litigation is significantly outside the scope of the Arrangement" (emphasis added)). The regulation leaves the definition of what is within and without the Arrangement to FEMA's General Counsel. If determination of what is "significantly outside the scope of the Arrangement" or agent negligence were left to the pleader, FEMA would ostensibly be obliged to decline to reimburse any activity that the pleader might assert in a complaint was "significantly outside the scope of the Arrangement" or that arguably amounted to agent negligence. Every time an aggrieved insured might use these magic words, the WYO carrier would be left to twist in the wind. This would obviously not be in the best interest of the NFIP; WYO carriers might well leave the Program in droves. By bringing more types of WYO cases within the scope of the Arrangement and hence the preemptive fold, FEMA is able to provide important protections and incentives to WYO's.

Second, FEMA, whose opinion on the matter is certainly entitled to deference, *see Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 883-84 (2000); *Scherz v. South Carolina Ins. Co.*, 112

F. Supp. 2d 1000, 1009 (C.D. Cal. 2000), has never agreed with Plaintiffs' interpretation of what is meant by "significantly outside the scope of the Arrangement" or "agent negligence."  FEMA expressly disagreed with the interpretation of the regulations given by *Spence*, and promptly amended its regulations to make clear what its position pre-*Spence* had always been -- that state law fraud claims based on policy procurement were not "outside the scope the Arrangement."[26] FEMA's position then and now is that the most that these regulations do is to "protect[] FEMA from responsibility for egregious conduct totally outside the Arrangement, such as an assault by an employee of the WYO Company on an insured party."  *See* Brief for the United States as Amicus Curiae at 29, *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 345 (5th Cir. 2005).  They do not, however, except procurement fraud from preemption.

Finally, Defendants suggest and the Court is persuaded that federal funds may very well be at stake in connection with procurement fraud claims, however much Plaintiffs may argue that they are not.  Insofar as it is for FEMA's General Counsel in given cases "to recommend" what is outside the Arrangement, and – so as not to unduly discourage WYO's from participating in the program – he chooses not to, federal funds are surely implicated.  And while FEMA may well decline to indemnify WYO's for certain errors, omissions, or negligence, where, as here, WYO's are sued for both procurement fraud and claims handling fraud (or procurement fraud alone), FEMA would still

---

[26]   The WYO carriers have attached to their reply brief a declaration of Defendant James Shortley that was filed in *Cohen v. State Farm.*  In pertinent part, it states that:

> The FIA amended both Articles III(D)(4) and IX in 1997.  Part of the reason the FIA changed these provisions was to remove any doubt that the situation where a company is alleged to have misrepresented coverage or some other policy provision will be included in the scope of the Arrangement.  In other words, the FIA determined that it did not agree with the result reached by the Fifth Circuit Court of Appeals in *Spence* . . . .

presumably have a duty to defend such claims until such time as they are proven, since the claims might in fact prove to be totally groundless.  This would involve federal funds.  In contrast, Plaintiffs' assertion that federal funds are not involved seems at best conclusory.[27]  The distinction between claims handling and procurement fraud that *Reeder* and other courts have found so significant appears to this Court to be a distinction without a difference.[28]  The Court finds the argument for conflict preemption as to procurement fraud claims no less persuasive than the argument for conflict preemption of claims handling fraud.

Summing up, the Court concludes that Count II is preempted as a matter of conflict preemption, and that Counts III and IV are preempted as a matter of both express and conflict preemption.  Accordingly Counts II, III, and IV will be dismissed.[29]

---

[27]

*Cf.* The Fifth Circuit's statement in *Wright* as to claims handling:

Wright's argument that his breach of contract suit does not implicate federal funds because FEMA may, in some cases, choose not to reimburse a WYO is similarly unavailing.  FEMA regulations permit FEMA to decline to recognize as a reimbursable loss cost claims grounded in actions by the WYO which FEMA determines are 'significantly outside the scope of this Agreement.' Wright has provided no more than a conclusory assertion that this provision renders his claim something other than a claim for federal funds.

*Wright*, 415 F.3d at 388-89.

[28]

In fact, there is a nagging internal inconsistency to Plaintiffs' argument that is hard to resolve.  At the same time that they allege a conspiracy orchestrated and directed by FEMA, they contend that certain of the actions of the parties carrying out that conspiracy have been "significantly outside the scope of the Arrangement."  If, as Plaintiffs allege, FEMA has been at the helm of the conspiracy, then the WYO carriers and other Defendants acting at FEMA's direction have arguably been operating *within* the scope of the Arrangement.

[29]

Having reached this conclusion, the Court need not address the other arguments that Defendants have advanced as to these claims.  They include, *inter alia*, that Plaintiffs' reliance on the alleged misrepresentations was unreasonable as a matter of law and is barred by FEMA regulation; that the fraud claims are not plead with particularity; that Plaintiffs have failed to show causation; that the Federal and CSC Defendants are immune from suit; that the Commerce Clause,

**D.**

That leaves Count V, Plaintiffs' claim against the WYO carriers and FEMA for breach of

the SFIP contract.  Defendants concede that this claim may go forward,[30] but argue that it should

only be allowed to do so in a limited fashion.  In particular, they argue that Plaintiffs are not entitled

_____

Appropriations Clause, and the McCarren-Ferguson Act bar the claims, and that the tortious
interference claims fail because a party cannot interfere with his own contract.  The Court would
only note that some courts have found the unreasonable reliance argument a convincing basis to bar
any and all fraud claims.  *See, e.g.*, *Richmond Printing, LLC v. Dir., FEMA*, 72 Fed. Appx. 92, 98
(5th Cir. 2003) ("The unique situation presented by the NFIP creates additional responsibilities for
the insured.  One of those responsibilities is that, given that the insured is doing business with the
government and that the terms of the SFIP are published in the CFR, the insured has a duty to read
and understand the terms of its SFIP.  Richmond here claims that, because it never received a copy
of the SFIP, it had no way of knowing what the proof of loss submission requirements were and that,
because [defendants] were acting as government agents, Richmond reasonably relied upon their
representations concerning the SFIP.  Even if Richmond did not receive a copy of the SFIP, a copy
was widely available and Richmond had a duty to familiarize itself with the terms of the policy.
While [defendants] may have made statements which contradicted the proof of loss terms of the
SFIP . . . any reliance by Richmond on those statements was unreasonable as a matter of law");
*Larmann v. State Farm Ins. Co.*, No. 03-2993, 2005 U.S. Dist. LEXIS 2204, at *13 (E.D. La. Feb.
3, 2005) ("[P]laintiffs may not recover from the Agents who were private parties involved in the
program. All of the plaintiffs claims involve allegations of misrepresentations by the Agents as to
the amount and extent of coverage on their residence under the SFIP. The provisions of the SFIP are
made available to the public through the publication of the Code of Federal Regulations. Thus, the
SFIP is different from a typical, privately issued insurance policy because 'the insured has an
additional outlet to which to turn to obtain information about the terms of the policy.'" (citation
omitted)); *Devarent v. Selective Ins. Co.*, No. 02-3801, 2004 U.S. Dist. LEXIS 8978, at *3 (E.D. Pa.
Mar. 25, 2004) ("These fraud and negligent misrepresentation allegations are insufficient. They do
not evince a critical element of both claims--reasonable reliance--in that an insured is charged by
law with constructive knowledge of the contents of the SFIP, which are published at 44 C.F.R. Pt.
61, App. A, 42 U.S.C. §§ 4013 and 4019.  Even assuming, as the amended complaint asserts, that
defendant's agent intentionally misrepresented the scope of the available coverage under the SFIP
and the procedure for making a claim, plaintiff was not entitled to rely on those
misrepresentations").

[30]    Some of the WYO carriers maintain that Count V should be dismissed because
Plaintiffs have not alleged compliance with all requirements of the policy.  The Court declines to
dismiss Count V on this ground at this juncture.  Defendants will have ample opportunity to assert
defenses based on non-compliance with the terms of the SFIP as to specific Plaintiffs as the case
progresses.

to certain of the damages that they claim, *viz.*, delay damages, prejudgment interest, disgorgement of profits, and a refund of premiums. Plaintiffs have withdrawn their claims for disgorgement of profits and refund of premiums. As to the claims for delay damages and prejudgment interest, the Court agrees with Defendants.

Coverage under the SFIP is limited to "direct physical loss by or from flood." 44 C.F.R. Part 61, App. A(1), Art. III(A). Specifically excluded are "1. Loss of revenue or profits; 2. Loss of access to the insured property or described location; 3. Loss of use of the insured property or described location; 4. Loss from interruption of business or production; 5. Any additional living expenses incurred while the insured building is being repaired or is unable to be occupied for any reason; 6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris . . . ; [and] 7. Any other economic loss you suffer." *Id.* Art. V(A). These provisions establish beyond question that consequential damages such as delay damages are not recoverable. *See*, *e.g.*, *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 139 (1st Cir. 1984) ("We believe that the type of loss insured under the SFIP does not include the kind of economic loss claimed by appellant under the rubric of 'consequential damages'").

The same is true as to prejudgment interest; it is not recoverable under the SFIP. *See Newton v. Capital Assur. Co.,* 245 F.3d 1306 (11th Cir. 2001); *Sandia Oil Co. v. Becton*, 889 F.2d 258 (10th Cir. 1989).

Accordingly, with the excision of these damage claims, Count V may go forward.[31]

---

[31] Certain of the WYO carrier Defendants have also moved for a more definite statement as to Count V. They argue that Plaintiffs should be required to indicate whether their contract claims are based on pricing or coverage disputes. Subsequent to oral argument on the

## E.

Finally, Defendants have moved to dismiss all non-policyholder Plaintiffs.  Since all other counts have been dismissed and since the non-policyholder Plaintiffs are not included in Count V, they have no remaining claims in this suit.  As a result, they will be dismissed.

## III.

For the foregoing reasons, Defendants' several Motions to Dismiss are GRANTED.

A separate Order will issue.


_____/s/_____
**PETER J. MESSITTE**
**September 29, 2006**                                          **UNITED STATES DISTRICT JUDGE**


present motions, Plaintiffs provided some documentation as to the nature of their claims, which Defendants believe is insufficient.  The Court need not resolve the matter at this point.  For present purposes, the Motion for a More Definite Statement will be deemed moot, but the Court is also prepared to revisit this issue as the case progresses.