UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTINE STEUDLEIN WIFE OF/AND | * |
| HENRY J. STEUDLEIN, III | * |
| | * CASE NO. 06-7307 |
| Plaintiffs, | * |
| | * JUDGE STANWOOD R. DUVAL |
| vs. | * |
| | * MAG. JUDGE: |
| STATE FARM FIRE AND CASUALTY COMPANY, | * JOSEPH C. WILKINSON |
| FIDELITY NATIONAL INSURANCE COMPANY, | * |
| WARREN DENNIS AND HYLTON PETIT, JR. | * |
| | * |
| Defendants. | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN OPPOSITION TO MOTION TO REMAND

MAY IT PLEASE THE COURT:

Defendant, Fidelity National Property and Casualty Insurance Company ("Fidelity"), a Write-Your-Own ("WYO") Program carrier participating in the United States government's National Flood Insurance Program ("NFIP"), pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended,[1] appearing herein in its "fiduciary"[2] capacity, as the "fiscal agent" of the United States"[3] and at the expense of the U.S. Treasury,[4] and files this Opposition to Plaintiff's Motion to Remand as follows:

---

[1] 42 U.S.C. §4001, *et seq.*
[2] 44 C.F.R. §62.23(f).
[3] 42 U.S.C. §4071(a)(1); *Gowland v. Aetna Cas. & Surety Co.*, 143 F.3d 951, 953 (5th Cir. 1998).
[4] *Moffett v. Computer Sciences Corp*, ___ F.Supp.2d ___ 2006 WL 3000121, *10-12 (D.Md. Sept. 29, 2006).

**PREAMBLE**

Before the Court conducts its jurisdictional analysis over this dispute, it is asked to come to terms with what these Plaintiffs' Petition is actually claiming. In this dispute, Plaintiffs bought their homeowners' policy from one insurance company and purchased their flood policy from another insurance company. In addition, they purchased their homeowners' policy through one insurance agency, and then bought their flood policy through a different insurance agency. Then, upon having decided for themselves to have two different companies and two different agencies set up their homeowners' and flood policies, they then have the incredible audacity to sue the two different companies and two different agents upon a claim that they breached some never-explained duty to the Plaintiffs to make certain that there was no "gap" between the coverages afforded under the two policies.

FEMA is absolutely going to pay for all of Fidelity's defense costs in this lawsuit. There is absolutely no standard imposed by FEMA upon its more than 100 different WYO carriers requiring them to provide the incredible level of service (at government expense) being claimed by these Plaintiffs. There is no doubt but that FEMA's regulatory systems work exactly to the opposite of what these Plaintiffs are suggesting, and there is no doubt but that FEMA's systems would be impacted adversely if 50 different sets of state court systems were allowed to each decide whether federal fiscal intermediaries had affirmative duties to do what these Plaintiffs are suggesting is required of a FEMA fiscal agent. Further still, Plaintiffs' claims are exactly to the opposite of controlling Supreme Court decisions governing all federal insurance and benefits programs, such as *Heckler v. Community Health Services of Crawford County, Inc.*, 104 S.Ct. 2218 (1984). As per *Heckler*, Plaintiffs were required to become "familiar" with the Program in which they chose to participate. *Id.* at 2225.

Within this Memorandum, Defendant will examine the Plaintiffs' Petition, and then establish the propriety of all four grounds for removal that were invoked in Defendant's Notice of Removal. Those four grounds are: (1) 42 U.S.C. §4072 (the NFIP exclusive jurisdiction statute); (2) 28 U.S.C. §1331 (general federal question jurisdiction); (3) 28 U.S.C. §1337 (the commerce clause removal statute); and 28 U.S.C. §1442 (the federal officer removal statute).

In analyzing the argument of the Defendant Fidelity, it is requested that the Court keep separate the Plaintiffs' claims against Fidelity from the Plaintiffs' claims against the independent agent Dennis. This is a critical distinction for the purpose of NFIP removal analysis, for it is only Defendant Fidelity that is the "functional equivalent" of FEMA,[5] given its status as the "fiscal agent" and "fiduciary" of the United States. *Gowland, supra*; 42 U.S.C. §4071(a)(1) and 44 C.F.R. Pt. 62.23(f). Insurance agents, unlike the insurance company WYO carriers, have not signed an Arrangement (44 C.F.R. Pt. 62, App. A) with the federal government, and are not acting as the enforcers of FEMA's rules and regulations  and operating systems. (Simply put, asserting that the Arrangement does not pay for "agent" error is irrelevant to the question of federal reimbursement of claims of "company" error.)

Again, undersigned counsel asserts to this Honorable Court, as an officer of this Court, as he did in both *Newman v. Allstate*, 2006 WL 2632116 (E.D.La. Sept. 12, 2006), and in *Breakthrough Realty Unlimited, LLC v. Minor, et al*, 2006 WL 2224753 (E.D.La. Aug. 2, 2006), that 100 percent of Fidelity's reasonable defense costs and exposure in this matter (as distinct from the exposure of the agent) will indeed be paid by the United States Treasury. On this point, undersigned counsel asks that this Court examine the recent decision in *Moffett, supra*, from the District of Maryland. In *Moffett*, Judge Messitte heard oral argument not just from the

---

[5] *Van Holt v. Liberty Mutual Fire Ins. Co*., 163 F.3d 161, 166 (3rd Cir. 1998).

undersigned, but also from the United States directly. In that case where the United States and numerous FEMA officials were direct party defendants, Judge Messitte was able to hear exactly how the question of federal funds usage is determined by FEMA, and his conclusions are directly opposite to several rulings on this point that have emanated from the Eastern District of Louisiana. Defendant respectfully submits that Judge Messitte's ruling on how one determines whether federal funds are at stake in an NFIP-related litigation matter is correct.

### ARGUMENT

### I.     Plaintiffs' Well-Pleaded Petition

The strategy being employed in Plaintiffs' Motion to Remand is readily discernable. Despite what Plaintiffs actually pleaded in their Petition, they are now seeking to claim that their lawsuit is no different than several other NFIP-related cases where plaintiffs' Petitions were limited to claims related to what an agent (as distinct from the WYO carrier) did during the initial "procurement" of an NFIP policy. Much of the debate between the parties, and all of the Court's analysis, will stem from deciding whether the Plaintiffs' Petition for Damages is actually limited to claiming a dispute over what the agent did during the "procurement" of the policy, or whether Plaintiffs also included claims of wrongdoing against a federal fiscal intermediary.

In examining that question, the Court is asked to note the following aspects of the Plaintiffs' Petition. At paragraphs XVIII and XIX, Plaintiffs assert claims not just against their own insurance agent, but rather against their WYO carrier Fidelity, as "administrator and agent" for the flood policy, and as the Plaintiffs' "fiduciary." Paragraphs XVIII and XIX read as follows:

### XVIII.

Subsequent to the events of August 29, 2005, Plaintiffs first discovered that there was a significant disparity and gap between their homeowners/fire/liability

-4-

insurance coverages and their flood coverages.[6] Plaintiffs further learned that additional insurance and other insurance products were available which would have permitted them to reasonably protect their dwelling at 5632 Ada Place, New Orleans, Louisiana 70124 and the content contained therein. Neither the gap, nor other available insurance products were brought to Plaintiffs attention by either of the Defendants, State Farm or Fidelity.

XIX.

State Farm and Fidelity, as administrator and agent for both the homeowners/fire/liability policy, and flood policy, knew, or should have known, that there was a disparity or gap between the value of Plaintiffs' home and its insured value and a disparity or gap between the homeowners/fire/liability content coverage for such content. Despite such knowledge, the Defendants, State Farm and Fidelity, breached their fiduciary obligation as insureds and their fiduciary duty as agents, by their negligent failure to close the gap and/or to bring the gap to the attention of Plaintiffs.

Plaintiffs do not claim that the limits of their flood policy were set at anything other than what they requested. They never actually assert that their WYO carrier actually did anything wrong. Instead, they are asserting that without any requests for anything further from them, that their WYO carrier was under a legal obligation to search them out, and to try to get them to purchase more coverage.

In contrast, WYO carrier Fidelity asserts to this Court that Congress has mandated pursuant to 42 U.S.C. §4013, that all standards and duties concerning "the conditions of insurability" are to be set by federal regulation. Exactly as claims handling standards are set by federal regulation on authority of §4019 of the Act, §4013 precludes a view that state law would supply any legal standard or applicable standard of care that would govern the activities of a WYO Program carrier while administering these Plaintiffs' flood policy.

---

[6] Note that all citizens are charged with knowledge of the laws governing federal insurance programs. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1 (1947). The flood policy is itself a law. 44 C.F.R. Pt. 61, App. A(1). Louisiana law is to the same effect. "No one may avail himself of ignorance of the law. La. C.C. Art. 5.

**II.      Rules and Regulations Regarding Agency Relationships in the NFIP**

Defendant Fidelity is not in any sense asserting to this Court that NFIP participants cannot sue their own insurance agents when negligence occurs in the selection of limits. While Fidelity is not in any sense suggesting that any negligence actually occurred in this instance, it is asserting that <u>its</u> role in this situation is not to make the choice for insureds as to what limits they want to select. That is a decision made by the insureds working with their own agent.   See definition of "Applications" found at 44 C.F.R. Pt. 61 App. A(1).   Simply put, Fidelity is not these insureds' agent or their "fiduciary." Fidelity is the government's fiduciary and fiscal agent. 42 U.S.C. §4071(a)(1) and 44 C.F.R. Pt. 62.23(f).   Under Fidelity's Arrangements with the government, it is to issue and administer federal flood policies pursuant to FEMA's rules.   44 C.F.R. Pt. 62 App. A,, Art. II(D).

Key to this Court understanding why the Federal Government is so adamant that its fiscal agents be distinguished from typical insurance agents, is understanding the absolute line of demarcation that FEMA has established between the legal duties of WYO companies that are established exclusively by federal law, and the wholly separate legal duties of insurance agents that are decided on a state-by-state basis under the relevant laws of the state where the agent lives. In this regard, it must be understood both that FEMA pervasively regulates its companies, and also that it scarcely regulates agents at all.   Regulating agents is up to the states.   Because of the great importance of this question to the continued success of the NFIP, and given the conflict between what federal law says about this topic, and what the Plaintiffs are claiming in their Petition, the Court is asked to examine this issue in more detail as set forth as follows:

First, and as was held in *Gowland*, 143 F.3d at 953, WYO Program insurance carriers such as Allstate are "by statute," the fiscal agent of the United States. FEMA's regulations repeat this same point. Please see 44 C.F.R. Pt. 62.23(f), which reads in pertinent part as follows:

> To facilitate the marketing of flood insurance coverage under the Program to policyholders of WYO companies, the Administrator will enter into Arrangements with such companies whereby the federal government will be a guarantor in which the primary relationship between the WYO company and the federal government will be one of a fiduciary nature, i.e., to assure that any taxpayer funds are accounted for and appropriately expended.

Please contrast 42 U.S.C. §4071(a)(1) and 44 C.F.R. Pt. 62.23(f) with what FEMA provides with respect to insurance agents. In this regard, 44 C.F.R. Pt. 61.5(e) states this:

> The Standard Flood Insurance Policy is authorized only under terms and condition established by federal statute, the Program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage that are not consistent with the National Flood Insurance Act of 1968 as amended, or the Program's regulations are void, and the duly licensed property and casualty agent acts for the insured and does act as agent for the federal government, the Federal Emergency Management Agency, or the servicing agent.

On this exact topic, Judge Marcia Crone of the Eastern District of Texas recently recognized that in the specific context of the NFIP, federal law establishes that insurance agents act for the insured, and not for the WYO carrier:

> FN1. The court notes that, under the NFIP, "the duly licensed property or casualty agent acts for the insured," not the "Write-Your-Own" ("WYO") insurance carrier authorized to issue SFIPs under the NFIP. 44 C.F.R. Pt. 61.5(e) (2005). *Hanak v. Talon Ins. Agency*, (E.D. Tex. 10/13/06) No. 1:05-cv-00777-MAC. (Ex. A)

The great importance of judicial enforcement of this separation between companies and agents is revealed by another recent decision, that being *Oaks v. Allstate*, No. 7:05-cv-00191-REW (E.D.Ky. 11/14/06). (Ex. B) In *Oaks*, an insufficient premium was collected at the initial issuance of the flood policy because of a mistake concerning the actual characteristics of the home to be insured, though it was unclear as to whether the mistake was made by the insured or

by the insured's agent. In the resulting lawsuit, the plaintiff argued that both the insurance agent

and the WYO company should be "penalized" for "their" mistake in mis-rating the policy. The

court disagreed for multiple reasons, among them the following:

> Similarly, the power to revise home ratings does not depend on whether
> Defendants were at fault for the errors in the original home rating. Plaintiffs
> suggest that it is particularly appropriate to "penalize" Defendants for any
> mistakes in generating the initial home rating. Regardless as to whether
> Defendants were at fault, Plaintiffs' argument finds no support in the text of the
> SFIP. Imposing any qualification on the Defendant's right to revise the home
> rating would be inconsistent with the NFIP, which authorizes coverage only as
> provided by statute, regulation, or the terms of the policy. See 44 C.F.R. Pt.
> 61.5(e). Defendants properly revised Plaintiffs home rating, in accordance with
> the proof, before honoring his claim. (Ex. B, pp. 15-16)

In addition, the NFIA provides for a clear difference between the statutory ability of

FEMA to reimburse WYO Program companies (who work for FEMA) as opposed to insurance

agents (who work for the insureds) for errors and omissions. Please compare 42 U.S.C. §4081(a)

(which was enacted in 1968) and §4081(c) (which was enacted in 1981). It has been recognized

in the courts that the WYO Program is statutorily authorized by §4081(a), which regards the

WYO companies.[7] The much later-enacted §4081(c) provides a hold harmless agreement for

insurance agents, but that hold harmless agreement excludes errors caused by the agents, rather

than by FEMA. For purposes of the current jurisdictional argument, this Court is simply asked to

notice that FEMA's reimbursement authority vis-à-vis the WYO companies in §4081(a) is

unrestricted, while its authority vis-à-vis agents is restricted. In this case, there is no dispute that

Allstate is an insurance company.

FEMA had made it crystal clear that 44 C.F.R. Pt. 61.5(e) applies with full force to the

WYO Program in the declaration FEMA submitted in *Cohen v. State Farm Fire  & Cas.*, 68

---

[7] See *Van Holt, supra*, at 165 ("In 1983, pursuant to the regulatory authority granted by Congress in 42 U.S.C.
§4081(a), FEMA created the "Write-Your-Own" ("WYO") Program.")

F.Supp.2d 1151 (C.D. Cal. 1999). In FEMA's *Cohen* declaration, it made three points that are of

particular importance to the current issue:

A.     Agent liability for agent error should be covered by an agent's E&O
       insurance policy.

B.     Under FEMA's regulations, the agent acts for the insured, not for FEMA,
       or "by implication" the Write-Your-Own Program company.

C.     The agent has not signed an Arrangement with FEMA, while the WYO
       carrier has. (Ex. C)

In October of 2000, FEMA reiterated its position upon this same topic when it published

its "Digest and Guide on Litigation Concerning the National Flood Insurance Program." That

document was published by FEMA and distributed to "the WYO companies and their counsel to

assist in ongoing litigation pursuant to the National Flood Insurance Act." (quoting "Notice to

Guide and Digest Users" at page ii of the Guide) At page 18 of FEMA's Guide, it sets forth the

following as FEMA's declared position upon this issue:

In general common law and insurance principles, unless there is an alternative
express agreement to the contrary, the insurance agent is the agent of the insured
and not the insurer. Likewise, and as set out in the federal law and NFIP
regulations, the insurance agent is the agent of the insured and not the agent of
FEMA or the WYO company. (See Ex. D)

Next, the SFIP also makes clear that agents and companies have separate roles in the

NFIP. Please examine the definition of "Application" (SFIP Art. II) states:

Application means the statement made and signed by you or **your agent**, in
applying for this policy. The application gives information we use to determine
the eligibility of the risk, the kind of policy to be issued, and the correct premium
payment. The application is part of this flood insurance policy, the correct
premium payment must accompany the application. (emphasis added).[8]

As was held in *Wright,* 415 F.3d at 388, 42 U.S.C. §4081(c) has no application whatsoever to the

insurance companies that agree to participate in the NFIP. Under the applicable federal laws,

---

[8] 44 C.F.R. Pt. 61, App. A(1) Art. II - Definitions.

agents act for the insured, while the companies act as the fiscal agent of FEMA. *Id.* Under this system, each true party in interest to the Program, that being the insured/citizen and the U.S. Government, is provided an insurance professional to care for their interests.

## III.   Federal Funds are at Risk

Federal law alone controls the resolution of Plaintiffs' dispute against Fidelity. Despite the brevity of Plaintiffs' Memorandum, Plaintiffs are essentially arguing that Congress only provided for the governance of federal law over claims handling, but not as to so-called "policy procurement" issues. Plaintiffs rely upon 42 U.S.C. §4019. However, please see 42 U.S.C. §4013. There, Congress provided the exact same federal and exclusive delegation of authority to the federal Executive Branch for the "conditions of insurability," as it provided with respect to claims handling. *Moffett, supra*, at *1. As per §4013, the federal regulations adopted by FEMA exclusively govern the question of what obligations are owed by the WYO carriers such as Fidelity. In this regard, please examine the "Undertakings of the Company" section of the Arrangement. 44 C.F.R. Pt. 62, App. A, Art. II. Nowhere in that document/regulation do the WYO carriers take on any duty even remotely akin to what these Plaintiffs are claiming.

In *West v. Harris,* 573 F.2d 873 (5th Cir. 1978), the Fifth Circuit held, pursuant to §4019, that federal regulations governing claims handling preempted any state law upon the same topic. *Id.* at 880-81. There is no analytical difference between the situation at bar, which arises out of the "conditions of insurability" regulated by FEMA on authority of §4013. On both the policy administration side of the Program, and the claims handling side, the federal government needs a nationally uniform rule litigated in the federal courts, or this program will not long succeed.

On authority of §4013, FEMA promulgated all of the regulations concerning the administration of flood policies found throughout 44 C.F.R. Pt. 61. Pursuant to that same

-10-

authority, FEMA adopted all those portions of the SFIP that relate to policy issuance and administration. For instance, please see SFIP Article II. (44 C.F.R. Pt. 61, App. A(1)) There, in the "Definitions" article, is found the definition of both "Application" and "Declarations Page." Those two definitions make clear that the WYO carrier issues the policy based upon what has been applied for by "you or your agent" and based upon what premium has been paid. Article I of the SFIP also states that the policy is dependent upon whether the insured has "paid the correct premium." WYO carriers, as distinct from insurance agents, are charged with enforcing FEMA's rules and regulations based upon the company's "fiduciary" duties to the federal government. See 44 C.F.R. Pt. 62.23(f); *Oaks, supra*. While it might be true that an agent has legal duties vis-à-vis an insured in the selection of limits of coverage, WYO carriers do not. There is nothing in federal law that makes it the responsibility of the WYO carrier to decide for the insured what limits will be applied for. However, and as was found in *Oaks*, the rating and issuance of flood policies is governed exclusively by federal law.

Fidelity now refers the Court's attention to the "Arrangement" that governs the relationship between the government and all WYO Program carriers such as Fidelity. 44 C.F.R. Pt. 62, App. A. In particular, Fidelity asks this Court to examine two paragraphs in Article I of the Arrangement that will be set forth below. Further, Fidelity asks that this Court notice that the provisions set forth below were added to the Arrangement by FEMA three years ago, after federal courts started remanding so-called "policy procurement" lawsuits involving the flood program to the state courts. Notably, the provisions set forth below are in the new Arrangement that took effect on October 1, 2004. Set forth below is the Arrangement that governs this case:

> Whereas, FIA has promulgated regulations and guidance implementing the Act and the Write-Your-Own Program whereby participating private insurance companies act in a fiduciary capacity **utilizing federal funds to sell and administer** the Standard Flood Insurance Policies, and has extensively regulated

the participating companies' activities when **selling or administering** the Standard Flood Insurance Policies; and

Whereas any litigation resulting from, related to, or arising from the companies compliance with the written standards, procedures, and guidance issued by FEMA or FIA arises under the Act, regulations, or FIA guidance, and legal issues thereunder **raise a federal question**; and . . . (emphasis added)

As of October 1, 2004, the "Arrangement" expressly declares (as a federal regulation) the government's view that all NFIP operations, and not just claim activities, fall within the scope of the duties of a WYO company that are owed *to the federal government*. These new paragraphs, which were added to Article I of the Arrangement under the heading "Findings, Purpose and Authority," serve to bolster the fact that the full scope of insurance-related operations of a WYO Program carrier fall within the scope of the Arrangement, and not just the subject of claims handling. In these regards, the Court is asked to examine the Arrangement itself, and in particular Article II(A)(1), Articles II(D)(2)(3) and (4), and Article II(G)(1), wherein FEMA expressly declares within the Arrangement as a federal regulation, that all matters of "policy administration," "policy issuance," and "policy marketing," do come within the scope of the Arrangement.

Critically, FEMA's view upon these questions has never changed. It has always had the opinion that liabilities arising against its fiscal agents (as distinct from insurance agents) for their alleged acts and omissions in the context of the "sale or marketing" of NFIP policies do fall within the scope of the Arrangement. *Moffett, supra*, at *11. It is only the courts that have held a different view, and that different view was erroneously developed based upon a misreading of *West v. Harris*, 573 F.2d 873 (5th Cir. 1978), *cert. denied*, 440 U.S. 946 (1979); and *Spence v. Omaha Indemnity Ins. Co.*, 996 F.2d 793 (5th Cir. 1993) decisions. In proof of this assertion, Fidelity attaches as Exhibit C, the earlier-mentioned declaration that FEMA submitted in *Cohen*

*v. State Farm Fire & Cas.*, 68 F.Supp.2d 1151 (C.D. Cal. 1999). In the declaration, and at Item 6, FEMA explained the meaning of the same provisions of the Arrangement upon which several prior court decisions incorrectly rely, and asserts that FEMA's view of the meaning of this language is as follows: "The FIA means by this that the WYO company is not liable and is not itself responsible for the payment of claims arising out of the delay, error, or omission in the sale or marketing of the Standard Flood Insurance Policy." Notably, an agency's interpretation of its own regulations, as distinct from its interpretation of statutes, is given "controlling weight."[9] (This same declaration was quoted and relied upon in *Moffett, supra.*)

In deciding whether Fidelity did or did not act outside of the scope of its Arrangement with FEMA, such that federal funds are or are not at issue, Fidelity raises these three points:

1. It is no longer appropriate to argue that FEMA is statutorily precluded from reimbursing its §4071(a)(1) fiscal agents for their own errors and omissions because of 42 U.S.C. §4081(c). The Fifth Circuit has now recognized that that statute has no application whatsoever to insurance companies.[10] Notably, virtually all prior NFIP "policy procurement" remand orders are based on that erroneous view. This position is further evidenced by FEMA's position as stated in its *amicus* brief in *Gallup v. OPAC,* 434 F.3d 341 (5th Cir. 2005).[11] At bottom, virtually all prior related cases, all of which are predicated upon that erroneous understanding of the statutory scheme, are no longer good law.

2. There is no allegation in this case that Fidelity failed to strictly construe and to enforce any of FEMA's rules, or that Fidelity violated any of FEMA's rules. In other words, from FEMA's perspective, it appears from the Plaintiffs' Petition that Fidelity has discharged its duty

---

[9] *See Stinson v. U.S.*, 508 U.S. 36 (1993).
[10] *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2005).
[11] *See,* Exhibit C at page 11.

as the government's "fiduciary" exactly as FEMA has intended. 44 C.F.R. Pt. 62.23(f). Nothing

in the Petition asserts otherwise. **As such, why would FEMA not pay?**

3. Apart from this Court's own review of the Arrangement, Fidelity would point out that

the analytical path governing how one determines whether an activity falls within the scope of

authority of a federal Arrangement, or not, such that state-law-based tort liability arising out of

NFIP operations would befall a private corporation or the government, has <u>not</u> been uniformly

approached by the courts. In *Central Claims Service v. Computer Sciences Corp.*, 706 F.Supp.

463, 467 (E.D.La. 1989), Judge Feldman of this Court explained both the legal test and public

policy considerations involved in deciding whether a private corporation acting for FEMA in the

context of the NFIP acted within or "outside the scope of" the federal regulatory scheme:

> The Fifth Circuit has held that the test of whether an official is acting within the
> scope of his authority is whether "the act [has] more or less connection with the
> general matters committed by law to the officer's control or supervision, and [is]
> not . . . manifestly or palpably beyond his authority."[12] The Bushman court,
> applying the same test, found that the defendant had acted within the scope of his
> authority, and rejected plaintiff's argument that the wrongful nature of the letter's
> contents was sufficient to strip the immunity defense of its force. As the court
> explained:
>
>> [T]o separate the activity that constitutes the wrong from its
>> surrounding context - - an otherwise proper exercise of authority -
>> - would effectively emasculate the immunity defense. Once the
>> wrongful acts are excluded from an exercise of authority, only
>> innocuous activity remains to which immunity would be available.
>> Thus, the defense would apply only to conduct for which it is not
>> needed. *Id*. at 467.

FEMA's view, as set forth in the attached declaration from the *Cohen* matter, and Judge

Feldman's description of the applicable legal test, are perfectly in sync. Also, FEMA's view (and

its sole authority over this issue) was just addressed in a lengthy ruling just announced by Judge

Messitte of the District of Maryland in *Moffett v. Computer Sciences Corp., supra.* In that action,

---

[12] *Norton v. McShane*, 332 F.2d 855, 859 (5th Cir. 1964), *cert denied*, 380 U.S. 981 (1965).

a group of 182 Maryland residents sued FEMA, various FEMA officials, various WYO insurance companies, several adjusting companies and adjusters, as well as several vendors. Plaintiffs' Complaint pursued both what was styled as policy procurement and claims handling allegations. Judge Messitte, after hearing both from FEMA *directly* and from all of the other defendants at an oral argument that lasted two days, issued a lengthy ruling explaining in great detail how one *properly* determines whether federal funds are at issue in a particular piece of NFIP litigation. Most significantly, Judge Messitte held that the determination of whether federal funds are at risk is not in any sense to be decided based upon the use of buzz words in a plaintiff's Complaint. As just one of Judge Messitte's several observations, is the following:

> The regulation leaves the definition of what is within and without the Arrangement to FEMA's General Counsel. If determination of what is "significantly outside the scope of the Arrangement" or agent negligence were left to the pleader, FEMA would ostensibly be obliged to decline to reimburse any activity that the pleader might assert in a Complaint was "significantly outside the scope of the Arrangement" or that arguably amounted to agent negligence. Every time an aggrieved insured might use these magic words, the WYO carrier would be left to twist in the wind. This would obviously not be in the best interest of the NFIP; WYO carriers might well leave the Program in droves. By bringing more types of WYO cases within the scope of the Arrangement and hence the preemptive fold, FEMA is able to provide important protections and incentives to WYOs. *Id.* at 11.

Based on all of the authorities and analysis set forth above, Fidelity asserts that all of its defense costs and exposure in this case will be payable from federal funds.[13]

## IV.    *Landry v. State Farm, Sullivan v. State Farm*, and *Nash v. Kelleher*

Fidelity is well aware of the recent jurisprudence on the issue of "procurement." Fidelity will address two of these recent cases, *Landry v. State Farm*, 428 F.Supp.2d 531 (E.D.La. 2006); and *Sullivan v. State Farm*, 2006 WL 2119320 (E.D.La. July 27, 2006), as follows:

---

[13] 44 C.F.R. §62.23(i)(6).

In *Landry*, State Farm removed the matter because it construed the plaintiffs' Complaint as making allegations not just against the agent, but also as making allegations of the independent tortious conduct of State Farm. In other words, State Farm construed the plaintiffs' Complaint in *Landry* as asserting both the tortious conduct of the agent, and of State Farm itself in its capacity as FEMA's agent. Judge Fallon disagreed, and construed the Complaint as only claiming that the State Farm agent had erred, and that the only claim against FEMA's fiscal agent State Farm was one of imputed fault for the acts of the agent. Upon having concluded that *Landry* did not include a claim of company error (as opposed to just agent error), the case was remanded. A ruling in Fidelity's favor in this matter is in no sense inconsistent with *Landry*.

This same critical distinction between allegations of agent error and company error is at the crux of Judge Barbier's ruling in *Sullivan v. State Farm*, 2006 WL 2119320 (E.D.La. July 27, 2006). In *Sullivan*, Judge Barbier explained his refusal to retain federal question jurisdiction over the case upon the following rationale:

> Because the Plaintiff's claim do not arise from State Farm's compliance with FEMA's regulations under an NFIP policy, but rather are claims that relate to the procurement of insurance and errors and omissions of an insurance agent, this case does not fall under this Court's federal question jurisdiction.[14]

In the instant matter, it is indeed true that Plaintiffs' Petition for Damages includes claims against an insurance agent. However, it is just as true that there are separate and distinct claims directed at Fidelity that go well beyond simply asserting that Fidelity is liable as the supposed "principal" under state law of the Plaintiffs' insurance agent. As such, the *Landry* and *Sullivan* line of cases do not provide the answer for what should happen with the matter at bar.

---

[14] *Sullivan*, *supra*, at * 3.

**V.      Four Distinct Grounds Support Removal**

Upon all of these showings and explanations made thus far, Fidelity believes that this Court would properly take subject matter jurisdiction over this case for four distinct reasons:

**1.  42  U.S.C.  §4072:** Fidelity respectfully asks this Honorable Court to give due consideration to Judge Feldman's recent ruling in *Newman v. Allstate, supra*. In *Newman,* Judge Feldman agreed with the growing number of federal judges who see a clear distinction between true policy procurement cases, which principally are directed at what an insurance agent does at the initial procurement, and a separate category of cases labeled policy administration cases, which concern the steps taken by a WYO carrier in both issuing, and then administering an existing NFIP policy. In the matter at bar, Plaintiffs went beyond just suing their own insurance agent for what was done in selecting the limits. They have also sued Fidelity, and asserted that its activities pursuant to the regulations adopted pursuant to 42 U.S.C. §4013, should be challenged and potentially altered in a state court forum, and pursuant to state law. Under the analysis of Judge Feldman's *Newman* decision, the claims of these Plaintiffs against Fidelity should be restricted to the federal courts under §4072.

**2. 28 U.S.C. §1331:** Similarly, the question of what duties are owed by WYO Program carriers while administering NFIP policies is a significant federal question and a significant federal interest. The Court is asked to ponder what would happen to the NFIP if 50 different sets of state courthouses were allowed to answer the question posed by these Plaintiffs' Petition.

The core question raised by Plaintiffs' Petition against Fidelity is the question of whether federal fiscal agents such as Fidelity have an affirmative legal obligation to inform all persons who purchase federally backed flood insurance policies from their company, of any gaps in coverage that might exist between the insureds' private homeowners' policy, and their federally

-17-

backed flood policy. To determine the answer to this question, the Court would have to look at the structure and purpose of the National Flood Insurance Act and in particular at 42 U.S.C. §4013. The Court would then also have to examine all of the regulations relating to policy issuance and administration found at 44 C.F.R. Pt. 61, as well as the regulations governing the WYO carriers found at 44 C.F.R. Pt. 62.23 and 62, App. A. Finally, the Court would need to evaluate the import of the Supreme Court's decisions in *Federal Crop Ins. Corp. v. Merrill*, 68 S.Ct. 1 (1947), as well as *Heckler*, *supra*, concerning whether NFIP participants such as the Plaintiffs at bar can properly claim ignorance of the scope of coverage afforded by NFIP policies. However, in no sense would any aspect of this question be resolved by looking to anything emanating from state law. As the questions raised by the claims Plaintiffs chose to make against Fidelity as the master of their claims are *only* federal questions, Defendant maintains that this Court has federal question jurisdiction.

### 3. 28 U.S.C. §1442

No court has as yet examined a question of whether FEMA's fiscal intermediaries can properly invoke the federal officer removal statute in support of a removal of a case this type. In this case, Fidelity is making that argument to this Court. It asks that this Court undertake analysis of this question, if it concludes that jurisdiction does not exist under either of the two grounds previously discussed.

Removal under 28 U.S.C. §1442 is *not* limited to cases in which a federal agency itself (or agency employee) is a named defendant; non-governmental entities have removal rights under §1442 when a state court complaint challenges their conduct under color of a federal office or agency. See *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998)(holding that private corporate entities are "persons" under §1442(a)(1)). Removal is

appropriate under §1442 when: (1) the defendant is a "person" within the meaning of the statute; (2) the defendant "acted pursuant to a federal officer's directions and a causal nexus exists between the defendants' actions under color of federal office and the Plaintiffs' claims"; and (3) the defendant assert a "colorable federal defense." *Winters*, 149 F.3d at 398-400. See *Malsch v. Vertex Aerospace, LLC*, 361 F. Supp. 2d 583, 585 (S.D. Miss. 2005) (defendants must "raise a colorable federal defense to plaintiffs' claims … and it must 'establish that the suit is for a[n] act under color of office'"). All three elements are present here.

First, Fidelity is a "person" within the meaning of the statute. *Winters, supra*; see also *Watson v. Philip Morris Cos*., 420 F.3d 852, 863 (8th Cir. 2005).

Second, the Petition challenges conduct undertaken by Fidelity under color of federal office. This second requirement "is neither 'limited' nor 'narrow,' but should be afforded a broad reading so as not to frustrate the statute's underlying rationale." *Winters*, 149 F.3d at 398. Here, the Plaintiffs' Petition squarely places at issue Fidelity's decisions, all made on FEMA's behalf as its fiscal agent and fiduciary, concerning the Plaintiffs' participation in this federal program. All of the activities put at issue by the Plaintiffs' Petition put at issue standards of care under the NFIP that are subject to comprehensive federal regulation by FEMA, which as per the National Flood Insurance Act, exclusively controls all such matters. 42 U.S.C. §§4013 and 4019; *Moffett, supra*. Fidelity has no authority whatsoever to deviate from FEMA's position on how such matters are to be handled. *Id*.

The third prong for removal under §1442 is the assertion of a colorable federal defense. At the removal stage, defendants "need not prove the asserted defense, but need only articulate its 'colorable' applicability to the plaintiff's claims." *Winters*, 149 F.3d at 400. See also *Malsch*,

361 F. Supp. 2d at 587 (test is not whether defendant's "proffered federal defense is meritorious, but rather whether it is at least 'colorable').

Fidelity's straightforward colorable federal defense is that it does not have any duty such as that alleged by the Plaintiffs, to affirmatively determine if there is a "gap" between the coverages afforded b the Plaintiffs' homeowners' policy versus their flood policy. One key purpose of the federal officer removal statute is to avoid having federal defenses concerning federal statutory schemes resolved in a piecemeal and inconsistent basis in the state courts. Resolution of Fidelity's defenses in federal court goes to the heart of why Congress enacted the federal officer removal statute.

Defendant acknowledges this Court's recent ruling in *Berthelot v. Boh Bros. Construction*, 2006 WL 1984661 (E.D.La. June 01, 2006). However, the defendant invoking the federal officer removal statute in *Berthelot* was the Orleans Levee District ("OLD"). Plainly, there is an incredible difference between Fidelity appearing as a federal fiscal agent and fiduciary (42 U.S.C. §4071(a)(1) and 44 C.F.R. Pt. 62.23(f)) directly handling U.S. Treasury exposures and  funds, and the situation governing the relationship between OLD and the Corp of Engineers. No court has ever labeled OLD the "functional equivalent" of the Corp. In contrast, virtually all courts recognize that WYO carriers act in FEMA's stead, and are truly doing its bidding.

Defendant respectfully submits that the federal officer removal statute *fits like a glove* over cases of this type. Each of the three prongs of that type of removal is clearly met here. In particular, and unlike federal question removals that do work from the face of the Plaintiffs' well-pleaded Petition, federal officer removals work from the Defendant's defenses. *Winters*, 149 F.3d at 398-400. Here, as Fidelity has multiple colorable defenses to the Plaintiffs' allegations, and as there is a federal interest in the uniform adjudication of claims disputes

-20-

involving the NFIP in the federal courts, the federal officer removal statute is literally tailor made for removals of this type.

### 4. 28 U.S.C. §1337

Similarly, no Court has as yet passed upon whether a federal fiscal intermediary may properly invoke the commerce clause removal statute. Fidelity does so in this case. If the three other grounds are not sufficient to support jurisdiction, Fidelity asks that this Court examine the question upon this statute. In this regard, Fidelity argues as follows:

Removal of this case is also proper under 28 U.S.C. §1337, which provides that the district courts shall have original jurisdiction of any civil action or proceeding arising under any act of Congress regulating commerce. Just like §1442, §1337 is not subject to the well-pleaded-complaint rule. Under §1337, removal is proper where the facts alleged in the Plaintiffs' Petition bring into play an act of Congress that regulates commerce, regardless of whether any reference to the said act appears in the Plaintiffs' pleading. *Uncle Ben's International Division of Uncle Ben's Inc. v. Hapag-Lloyd Aktiengesellschaft*, 855 F.2d 215, 216-17 (5th Cir. 1988); *Crispin Co., v. Lykes Bros. Steamship Co.*, 134 F.Supp.704, 706 (S.D.Tex. 1955); and *Commonwealth of Puerto Rico v. Sea-Land Service Inc.*, 349 F.Supp.964, 973-74 (D.P.R. 1970).

Clearly, under the National Flood Insurance Act, 42 U.S.C. §4001, *et seq.*, Congress is regulating commerce by promulgating the complex and comprehensive statutory scheme that is commonly described as the National Flood Insurance Act. As recognized in *C.E.R. 1988, Inc. v. Aetna Cas. and Sur. Co.*, 386 F.3d 263, FN3 (3rd Cir. 2004):

> FN3. The insurance industry in the United States operates in interstate commerce. States may regulate the insurance industry only to the extent Congress permits. U.S. Const. art. I, § 8, cl. 3. The McCarren-Ferguson Act, 15 U.S.C. § 1011, *et seq.*, grants states this power except where Congress enacts legislation that "specifically relates to the business of insurance." 15 U.S.C. §1012 (b). In *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 116 S.Ct 1103, 134 L.Ed.2d 237

(1996), the Supreme Court held that the exception for acts relating to the business of insurance should be construed broadly, noting that "[t]he word 'relates' is highly general." *Id*. at 38, 116 S.Ct. 1103. Without doubt the NFIA is congressionally-enacted legislation relating to the business of insurance.

Beyond the general proposition that the National Flood Insurance Act regulates commerce, it is also clear that in a more particularized sense, the Act expressly regulates "the conditions of insurability." See, e.g., 42 U.S.C. §§4013 and 4019. *Moffett, supra*. Plainly, federal laws affecting commerce are involved in the facts put at issue in the Plaintiffs' Petition, and so removal of that Petition is proper pursuant to 28 U.S.C. §1337.

## CONCLUSION

Fidelity and its undersigned counsel respectfully recognize the line of cases that squarely holds that an agent can be held liable under state law in the context of NFIP policy procurement disputes, and that a case of that type may properly be litigated in the state courts. However, that series of holdings does not answer the question presented here. In this matter, these Plaintiffs did not just sue their own insurance agent, but have separately asserted as the master of their claims that a federal fiscal intermediary has an incredibly high and broad duty of care to all participants in this federally funded program. Clearly, this case should be restricted to the courts of the United States. The Court is also asked to carefully examine both *Central Claims* and *Moffett*, and to thereafter see that federal funds are plainly at stake in this proceeding.

WHEREFORE, Fidelity prays that this Honorable Court will deny the Plaintiffs' Motion to Remand.

Dated: November 21, 2006.

Respectfully submitted,

NIELSEN LAW FIRM, L.L.C.

/s/ Gerald J. Nielsen
Joseph J. Aguda, Jr., #27762
Gerald J. Nielsen, (T.A.) #17078
Three Lakeway Center
3838 N. Causeway Boulevard, Suite 2850
Telephone (504)837-2500
Facsimile (504) 832-9165
Counsel for Defendant, Fidelity National
Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the following:

Gary M. Pendergast
1515 Poydras Street, Suite 2260
New Orleans, LA 70112

I further certify that I mailed the foregoing document and the notice of electronic filing by facsimile and first-class mail to the following non-CM/ECF participants.

N/A

/s/ Gerald J. Nielsen
Gerald J. Nielsen