IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN COHEN and JANE COHEN, | |
| Plaintiffs, | |
| v. | CASE NO.: CV 99-4835 AHM (BQRx) |
| STATE FARM FIRE AND CASUALTY CO., et al. | |
| Defendants. | |

## DECLARATION OF JAMES S. P. SHORTLEY

I, James S. P. Shortley, state as follows:

1. I am the Director of Claims of the Federal Insurance Administration ("FIA"), a directorate within the Federal Emergency Management Agency ("FEMA"). In that capacity I have been authorized by the Administrator of the FIA to administer claims for the direct side of the National Flood Insurance Program ("NFIP") and advise Write-Your-Own ("WYO") insurance companies on the proper interpretation of the Standard Flood Insurance Policy ("SFIP"). I also am responsible for recommending to the Administrator whether a claim is grounded in actions of the WYO company that are significantly outside the scope of the Arrangement between FEMA and the WYO company, found at 44 C.F.R. Part 62, Appendix A.

2. The FIA promulgates the SFIP as authorized and directed by the National Flood Insurance Act, 42 U.S.C. § 4001 et seq. By regulation, all flood insurance issued under the NFIP is subject to Federal statute and regulations and the terms and conditions of the Standard Flood Insurance Policy. 44 C.F.R. § 61.4. As stated in that regulation, the SFIP is subject to interpretation by the FIA Administrator as to the scope of coverage in

accordance with the applicable statutes and regulations.

3. Through the WYO program, the same SFIP sold by the Federal government also is sold by participating private insurance companies. Premiums collected by the WYO companies are sent by the WYO company to the National Flood Insurance Fund, after deductions for expenses and a small reservation of funds to be applied to claims.

4. The FIA administers the National Flood Insurance Fund, which is maintained in the United States Treasury. The fund is used to pay claims on both the direct and WYO sides of the program, and to pay various programmatic expenses. The WYO company is in a fiduciary relationship with the United States and acts as a fiscal agent (but not general agent) for FEMA in accordance with 42 U.S.C.§ 4071.

5. In accordance with the Arrangement, FEMA pays the judgments, if any, and attorneys fees for claims that proceed to litigation against the WYO company. The general rule is set forth in the Arrangement, Article III (D)(2), which states: "Loss payments include payments as a result of litigation which arises under the scope of this Arrangement, and the Authorities set forth above." FEMA does not pay for claims against the WYO company that are determined to be grounded in actions by the Company that are significantly outside the scope of this Arrangement, as set forth in Article III (D)(4). This determination requires several steps. First FEMA's Office of the General Counsel ("OGC") reviews the notice of a claim submitted by the company to determine whether "the claim is grounded in actions by the Company that are outside the scope of the Arrangement, the National Flood Insurance Act, and 44 CFR chapter 1, subchapter B, and/or involve issues of insurer/agent negligence as discussed in Article IX of this Arrangement." If OGC's determination is affirmative, OGC then recommends to the FIA

whether the actions are significantly outside the scope of the Arrangement. The FIA then determines whether the actions are significantly outside the scope of the Arrangement, and if it so determines, advises the company that payment of any claim or judgment will not come from the National Flood Insurance Fund.

6. Article IX of the Arrangement is significant in several respects. First, under that provision the company is not responsible for "inadvertent delay, error, or omission made in connection with any transaction under this Arrangement." The FIA means by this that the WYO company is not liable and is not itself responsible for payment of claims arising out of delay, error, or omission in the sale or marketing of the Standard Flood Insurance Policy. The FIA amended both Articles III(D)(4) and IX in 1997. Part of the reason the FIA changed these provisions was to remove any doubt that the situation where a company is alleged to have misrepresented coverage or some other policy provision will be included in the scope of the Arrangement. In other words, the FIA determined that it did not agree with the result reached by the Fifth Circuit Court of Appeals in Spence v. Omaha Indemnity Insurance Co., 996 F.2d 793 (5th Cir. 1993). Article IX excepts from this broad scope of inclusion the situation where the company fails to include a mortgagee as co-payee on a claim payment in violation of the policy. In that circumstance, or when it is determined that the claim against the WYO company is grounded in actions significantly outside the scope of the Arrangement, the company must pay the claim from its own funds. Actions that are determined to be significantly outside the scope of the Arrangement include such things as forgery or agent liability for agent error, which should be covered by the agent's errors and omissions coverage. This also is consistent with FEMA's regulations, which state that the insurance agent is the

agent for the insured and not FEMA or the servicing agent, or by implication, the WYO company.

7. Claims against the WYO company, such as the one raised in the captioned case, do not involve the sale of the policy, but rather turn on the interpretation of the policy. The FIA did not intend Article IX to be implicated in this question, but rather intends that payment will be made for any judgment, as well as fees, from the National Flood Insurance Fund, as long as the actions of the company are not substantially outside the scope of the Arrangement. The FIA meant by this that judgments will be paid if the company is sued over its interpretation or application of a provision of the policy. In the captioned case, this means that if Plaintiffs obtained a judgment for liability based on the five specific allegations, a-e, in Paragraph 30 of the Complaint, that such judgment, as well as fees, will be paid from the National Flood Insurance Fund.

8. The regulations provide that the WYO company is not a general agent of the Federal government and are responsible for their obligations to their insureds. In other words, insureds under policies sold by the WYO company do not sue the Federal government directly. The National Flood Insurance Act also provides that the FIA is authorized to use fiscal agents to further its mission to administer the National Flood Insurance Program. The WYO companies are the FIA's fiscal agents, because they collect and distribute Federal funds and have a fiduciary responsibility to use those funds properly.

9. The FIA does not contemplate state-based tort claims to be brought against the WYO companies for activities arising out of the Standard Flood Insurance Policy or the statute and regulations on coverage. One of the problems with the Spence

decision, referenced earlier, is that it misconstrued the FIA's intentions. The FIA has never taken the position that an agent or broker is indemnified from the National Flood Insurance Fund; the crucial distinction is that the agent or broker is not a fiscal agent and has not entered into any type of relationship with FEMA regarding the National Flood Insurance Program. On the other hand, the WYO company has entered into the Arrangement and is not an agent or broker.

In accordance with 28 U.S.C. § 1746, I hereby declare and affirm under penalty of perjury that the above statements are true and correct to the best of my knowledge, information and belief.

Signed this 30th day of September, 1999.

James S. P. Shortley
Director of Claims, FIA