UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WINSTON, SR. AND DONNA AARON, et al., | * * | CIVIL ACTION NO.: 06-4746 |
| | * | HON. STANWOOD R. DUVAL, JR. |
| Plaintiffs, | * * | SECTION "K" |
| VERSUS | * * | HON. JOSEPH C. WILKINSON, JR. |
| AIG CENTENNIAL INSURANCE COMPANY, et al., | * * * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO SEVER AND
PROCEED SEPARATELY FILED BY DEFENDANTS ALLSTATE FIRE
AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY
COMPANY, ALLSTATE INSURANCE COMPANY AND ALLSTATE
<u>PROPERTY AND CASUALTY INSURANCE COMPANY</u>**

Defendants, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance Company and Allstate Property and Casualty Insurance Company (collectively hereinafter referred to as "Allstate"), submit this Memorandum in Support of Allstate's Motion to Sever and Proceed Separately.

- 1 -

72230

## INTRODUCTION

This action involves over 1,800 individually joined unrelated plaintiffs asserting claims against over 100 different unrelated insurance companies for denial of insurance coverage based on property damage and losses resulting from Hurricane Katrina. As explained in *Vaz* in confronting a practically identical situation involving Hurricane Katrina claims, treatment of plaintiffs' hurricane-related insurance claims in one "mass action" is inappropriate because "'[n]o two property owners will have experienced the same losses. The nature and extent of the property damage ... will vary greatly in its particulars, depending on the location and condition of the property before the storm struck and depending also on what combination of forces caused the damage.'" *Vaz v. Allstate Prop. & Cas. Co.*, No. 1:06 CV 481, 2006 WL 2583733, at *2 (S.D. Miss. Sept. 6, 2006) (*quoting Comer, et al. v. Nationwide Mut. Ins. Co., et al.*, No. 1:05 CV 436, 2006 WL 1066645, at *2 (S.D. Miss. Feb. 23, 2006)). In its recent order affirming the United States Magistrate Judge's conclusion that 300 individually joined plaintiffs should be required to file separate complaints corresponding to their individual property damage claims, the United States District Court for the Southern District of Mississippi recognized that while "[t]he business of managing the Hurricane Katrina insurance litigation is a process," "[l]umping a large number of Plaintiffs who are not similarly situated (but for Hurricane Katrina, some kind of damage, and at least one common insurance carrier) in one case is not the appropriate answer." *Vaz v. Allstate Prop. & Cas. Co.*, No. 1:06 CV 481, Doc. No. 26 (S.D. Miss. Oct. 25, 2006).

This Court has agreed that claims arising out of a storm do not present common issues of fact or law that predominate over individual issues. *See Shelton Pollet, Jr. v. Travelers Prop. Cas. Ins. Co., et. al.*, No. 01-863, 2001 WL 1471724, at *2 (E.D. La. Nov. 16, 2001) (holding that certification of class for hail storm insurance claims was inappropriate and "would result in

several thousand mini-trials on individual issues" as "every claimant has a different roof, with different hail damage, in a different location"). For the reasons set forth more fully below, Allstate submits that the well over one thousand individual claims brought in this action must be severed into separate cases against each plaintiff's own insurer.[1] Plaintiffs' claims do not satisfy Rule 20(a)'s requirement for permissive joinder that each claim arise from the same transaction or occurrence, or series of transactions or occurrences. Even assuming *arguendo* that plaintiffs' claims satisfied Rule 20(a), severance under Rule 21 would still be required. Plaintiffs' many hundreds of claims could not reasonably be tried together in a single trial because of the idiosyncratic nature of each claim. Not only would such a mass trial be unmanageable, it would severely prejudice Allstate's, as well as every other defendant's, right to a fair trial as to each of the individual claims presented, because of the inherent danger of jury confusion between the claims asserted by each plaintiff against any particular defendant and unavoidable potential for a decision precipitated by passion and prejudice. Severance of the individual claims is therefore an absolute necessity and each plaintiff should be required to file a separate complaint setting forth his or her individual course of action.[2]

## NATURE OF THE ACTION

This complaint names over 1,800 individuals or entities as plaintiffs and involves well over 1,000 separate insurance claims submitted to over 100 defendants arising from Hurricane Katrina. Plaintiffs assert claims for breach of contract, violation of the Louisiana bad-faith

---

[1] A husband and wife living at the same residence and sharing a single insurance policy would constitute but one claim, although listed as two plaintiffs. Thus, although there are over 1,800 named plaintiffs, there are approximately 1,300 claims pleaded.

[2] Regardless of whether plaintiffs' claims are severed as requested here, Allstate submits that plaintiffs should be required to provide a more definite statement of the allegations in the Complaint pursuant to Federal Rule of Civil Procedure 12(e) and, accordingly, Allstate joins in State Farm's Rule 12(e) Motion for a More Definite Statement and Memorandum in Support (Doc. No. 91).

statutes, La. Rev. Stat. §§ 22:658 and 22:1220, failure to tender fair and adequate payment for casualty losses, and bad faith adjusting practices. (Complaint, ¶ 25.) Plaintiffs essentially challenge defendants' alleged failure to make "adequate payments" on their claims under their insurance policies. (Complaint, ¶ 15.)

Plaintiffs' claims are highly individualized. Plaintiffs' properties are located in different communities around New Orleans. With hundreds of properties in question, it is no surprise that the properties themselves varied greatly in types of materials (for example, siding versus brick), construction techniques and standards depending on the age of the home, and the pre-hurricane condition of the home. Some plaintiffs claim their houses suffered heavy wind damage. Other plaintiffs claim significant damage to the interior of their houses from when they filled up with flood water.

The hundreds of plaintiffs with Allstate policies also acquired their policies in a variety of different ways. Some plaintiffs bought their policies from agents many years ago and other plaintiffs bought their policies more recently. Multiple different Allstate agents are involved. In addition, these plaintiffs' claims were adjusted by a number of different Allstate claims adjusters. Some plaintiffs' claims were adjusted without engineers, while some properties were inspected by engineers retained by Allstate.

In short, the determination of whether a plaintiff can prevail under any of the pleaded theories against Allstate will require an individualized examination of, at a minimum, the following elements: (1) the circumstances surrounding each plaintiff's acquisition of his or her Allstate policy; (2) the alleged misrepresentations made by each plaintiff's Allstate agent; (3) the cause(s) of damage to each plaintiff's property; (4) the circumstances surrounding the adjustment of each plaintiff's claim; and (5) the circumstances surrounding each plaintiff's claim for

72230

infliction of emotional distress, including the cause and extent of each plaintiff's alleged emotional distress.[3]

In an attempt to weave a common thread through these highly individualized claims, plaintiffs baldly allege that defendants "engaged in a bad faith adjusting scheme to deprive its insureds of full policy benefits for which they paid." (Complaint, ¶ 17.) However, these conclusory allegations standing alone do not demonstrate that defendants have been properly joined in this action. Indeed, the Complaint does not provide any facts to form a basis for any type of joint liability. Instead, plaintiffs allege claims based on similar theories of liability against Allstate and over 100 separate and distinct legal entities. Yet, there are no facts alleged in the Complaint to suggest that the alleged acts which form the basis of any plaintiff's claims against any defendant arise out of the same series of transactions or occurrences as those acts alleged against any other defendant.[4]

---

[3] Allstate does not concede that plaintiffs' claims are properly pled or pled with appropriate specificity; however, it is plain from the nature of plaintiffs' attempted Hurricane Katrina property damage claims that each claim arises out of a separate and particular transaction and set of circumstances surrounding each individual plaintiff's different property loss, requiring severance.

[4] Plaintiffs' complaint does not even identify which plaintiffs were policyholders with of which defendants. Although plaintiffs' counsel submitted a list at Allstate's request of the plaintiffs that allegedly were Allstate policyholders, that list appears inaccurate. Indeed, in their zeal to name as many plaintiffs as possible, it appears that counsel did not investigate the facts of *any* individual claim. Fed. R. Civ. P. Rule 11. Allstate even without any discovery has identified many plaintiffs asserting claims against Allstate who do not appear to be Allstate policyholders at all, at least fourteen plaintiffs who either have filed other individual suits or who appear to be represented by other counsel, and others who have notified Allstate that they are not represented by plaintiffs' counsel at all. These highly individual circumstances alone further demonstrate the highly individual nature of each plaintiff's circumstances and why proceeding by way of a single mass action is inappropriate.

In addition, at least three plaintiffs asserting claims against Allstate here are also plaintiffs in the class action entitled *Aguilar v. Allstate Fire & Casualty Co.*, Case No 06-4660 (E.D. La), currently pending before Judge Feldman. *Aguilar* was filed by the same counsel representing plaintiffs here. The filing of both individual and class claims in separate lawsuits constitutes impermissible claim-splitting by some of the plaintiffs here, as well as needless multiplication and duplication of proceedings in violation of 28 U.S.C. § 1927. *See, e.g., Kidd v. Andrews*, 340

# ARGUMENT

The attempted joinder of 1,800 plaintiffs with nearly 1,300 highly-individualized property damage claims against over 100 different insurance companies is wholly improper under Federal Rule of Civil Procedure 20. *See Demboski v. CSX Transp., Inc.*, 157 F.R.D. 28, 29-30 (S.D. Miss. 1994) ("Plaintiffs' rights to relief do not arise from one transaction or occurrence or a series of transactions or occurrences [and therefore the] Plaintiffs' claims should be severed into four separate actions."); *Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974) (dismissing case brought by unincorporated associations of insurance agents alleging wrongful termination in violation of federal antitrust laws by 164 insurance agencies whose "actions as charged were separate and unrelated, with terminations occurring at different times for different reasons with regard to different agents"). Furthermore, even if joinder of this mass action were somehow tolerable under Rule 20, the prejudice to defendants and significant difficulties in judicial administration require severance under Rule 21.

### A. Rule 20(a)'s Requirements For Permissive Joinder Of Plaintiffs Cannot Be Satisfied.

Joinder in this case is improper under Rule 20. Rule 20(a) provides in relevant part that:

> (a) Permissive joinder. All persons may join in one action as plaintiffs, if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence,

---

F. Supp. 2d 333, 336 (W.D.N.Y. 2004) (enjoining plaintiff from prosecuting class action as a named plaintiff where plaintiff filed an individual action prior to the commencement of the class action because "[t]here is no sound reason why defendants should have to defend against the same claims, by the same plaintiff, in two courts, nor is there any good reason why two courts should adjudicate those same claims"). Moreover, it is an inherent conflict of interest for purported class representatives to also be pursuing their own individual claims in a separate action. *See, e.g., Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986) (granting motion to deny class certification with respect to two named plaintiffs where "prosecution of both a derivative and class action by [these plaintiffs] present[ed] an impermissible conflict of interest"). These troublesome and highly individualized factual and procedural defenses likewise illustrate some of the pitfalls of attempting to deal with these varied, separate claims in a single action.

> or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action....

Thus, permissive joinder of plaintiffs under Rule 20(a) requires two elements: (1) a right to relief arising from the "same transaction, occurrence, or series of transactions or occurrences," and (2) a question of law or fact common to all plaintiffs. *See, e.g., Demboski*, 157 F.R.D. at 29; *Weber v. Lockheed Martin Corp.*, No. 00-2876, 2001 WL 274518, at *2 (E.D. La. Mar. 20, 2001). Neither requirement is met here.

### 1. Plaintiffs' Thousands Of Claims Arise From Different Transactions And Occurrences, Involve Different Properties And Different Proofs.

This "mass action" involving thousands of claims fails to satisfy the first requirement of Rule 20(a)'s requirements for permissive joinder, because plaintiffs' right to relief (if any) does not arise from the same transaction, occurrence or series of transactions or occurrences. Plaintiffs' claims, which are based on the terms of their policies, the adjustment of their insurance claims, and alleged representations made to them at the time they purchased their policies, arise from individualized sets of facts. The determination of whether each plaintiff prevails on any of his or her claims is dependent on individualized facts and circumstances surrounding each plaintiff's loss. Plaintiffs' properties are located in different communities around New Orleans, and the properties experienced different conditions resulting in various degrees of damage.

As the U.S. District Court for the Southern District of Mississippi recently explained in confronting a practically identical situation: "Each property owner in Mississippi who had real and personal property damaged in Hurricane Katrina is uniquely situated. No two property owners will have experienced the same losses. The nature and extent of the property damage ... will vary greatly in its particulars depending on the location and condition of the property before the storm struck and depending also on what combination of forces caused the damage." *Comer,*

*et al. v. Nationwide Mut. Ins. Co., et al.*, No. 1:05 CV 436, 2006 WL 1066645, at *2 (S.D. Miss. Feb. 23, 2006); *see also Vaz v. Allstate Prop. & Cas. Co.*, No. 1:06 CV 481, 2006 WL 2583733 (S.D. Miss. Sept. 6, 2006); *Bradley v. Nationwide Mut. Ins. Co.*, No. 1:06 CV 528, 2006 WL 2594548 (S.D. Miss. Sept. 6, 2006); *McFarland v. State Farm Fire & Cas. Co.*, No. 1:06 CV 466, 2006 WL 2577852 (S.D. Miss. Sept. 6, 2006). In each of the *Vaz*, *Bradley*, and *McFarland* decisions, the court recognized that "[i]n a superficial sense, the hurricane was a common occurrence; however, the storm was vastly different in its effect depending on the specific geographic location of each particular home." *Vaz*, 2006 WL 2583733, at * 1; *Bradley*, 2006 WL 2594548, at *1; *McFarland*, 2006 WL 2577852, at *1. The nature, extent and cause of damage at each plaintiff's property is a factual question requiring specific evidence pertaining to wind speeds, timing of the forces, possible eyewitness accounts, and expert analysis of available data with regard to each individual property. *Cf. Buente v. Allstate Ins. Co.*, 422 F. Supp. 2d 690, 697 (S.D. Miss. 2006).

Similarly, the determination whether a plaintiff prevails on a claim that representations concerning coverage were made at the time of purchase of the policy will depend, in part, on the representations made by a specific agent to each particular plaintiff and that plaintiff's right to rely on the alleged representations. That is to say, Agent A's representations to Plaintiff A are irrelevant to the question of what Agent B allegedly represented to Plaintiff B.

The case of *Demboski, supra*, further illustrates why severance is appropriate in the present case. In that case, four plaintiffs brought a joint action seeking recovery for wrongful deaths and personal injuries allegedly sustained as a result of an alleged general practice by the defendant railroad company with respect to railroad crossing safety. In granting the defendant's motion to sever the proceeding, the court explained:

72230

> Plaintiffs' rights to relief do not arise from one transaction or occurrence or a series of transactions or occurrences; for example, the four crossings accidents alleged in the Plaintiffs' Complaint involved different plaintiffs, separate accidents, different crossings, different train crews, different dates and times, different driver conduct, different vehicles, different injuries, different damages, different defensive postures, and different physical facts....

*Demboski*, 157 F.R.D. at 29-30.

Plaintiffs' claims here similarly involve different plaintiffs, different purchase transactions, different insurance agents, different adjusters, different properties, different combinations of wind and flood, different engineers inspecting the damages, different engineering companies, different witnesses, different injuries, different damages, and will require different defensive postures. Rule 20(a)'s requirement that plaintiffs' right to relief arise from the same transaction, occurrence or series of transactions or occurrences cannot possibly be satisfied under such circumstances.[5] *Demboski, supra; see also Reed v. American Medical Security Group, Inc.*, 324 F. Supp. 2d 798, 804-05 (S.D. Miss. 2004) (Rule 20(a) requirement not satisfied because "[a]lthough each of these plaintiffs purchased the same basic insurance policy, they all did so under different circumstances and with a different understanding of his or her policy based on allegedly different misrepresentations or omissions by different agents at different times"); *Grennell v. Western Southern Life Ins. Co.*, 298 F. Supp. 2d 390, 398 (S.D. W.Va. 2004) (allegations that 1,800 plaintiffs "were fraudulently induced to purchase the same thing does not satisfy the requirements of Rule 20(a)"); *Insolia v. Philip Morris, Inc.*, 186 F.R.D.

---

[5] Although there is a split in the case law regarding whether federal or state joinder laws should apply to this analysis, with regard to Louisiana law there is no material difference between the two rules. *Defourneaux v. Metro. Prop. & Cas. Ins. Co.*, No. 06-3809, 2006 WL 2524165, at *1 n.2 (E.D. La. Aug. 30, 2006) (severing unrelated claims that included nondiverse parties and noting that there is a split in case law as to whether federal joinder rules or state joinder rules apply, but finding that Louisiana's joinder rule, Article 463 of the Louisiana Code of Civil Procedure, and Fed. R. Civ. P. 20 were very similar such that there is not a material difference between them).

547, 549 (W.D. Wis. 1999) (Rule 20(a) "demands more than the bare allegation that all plaintiffs are victims of a fraudulent scheme perpetrated by one or more defendants"); *Saval v. BL Ltd.*, 710 F.2d 1027, 1031-32 (4th Cir. 1983) (allegations of "similar problems" with cars, alleged reliance upon similar misrepresentations and possession of similarly-worded warranties insufficient to support joinder).

### 2. There Are No Common Issues Of Law Or Fact.

Plaintiffs' complaint fails to meet the second requirement of Rule 20 as well. The only "common issues" alleged to supposedly unite the 1,800 named plaintiffs and their nearly 1,300 claims against over 100 insurance companies is that the defendants are alleged to have independently committed the same actions giving rise to plaintiffs' claims. However, such bare allegations alone are a wholly insufficient basis for joinder. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) ("The only similarity between the allegations [against the various defendants] are allegations of violations of Alabama Code §§ 5-19-1, 5-19-19, and 5-19-20. Such commonality on its face is insufficient for joinder."); *Turpeau v. Fidelity Fin. Servs., Inc.*, 936 F. Supp. 975, 978-79 (N.D. Ga. 1996).

In *Tapscott*, the only common factor uniting the plaintiffs' claims was the allegation that the sale of service contracts violated certain state laws. *Id.* at 1355. Based on this purported commonality, the plaintiffs joined separate and unrelated sellers of service contracts in the same suit. The Eleventh Circuit upheld the granting of a motion to sever:

> The [district] court rejected [the plaintiffs'] argument that "a mere allegation of common business practice subjects all defendants to joinder." ... The district court correctly found no allegation of joint liability or any allegation of conspiracy. Further, the alleged transactions involved ... are wholly distinct....

*Id.* at 1360 (citations omitted). As in *Tapscott*, any plaintiff's allegations against any defendant relate only to alleged actions taken by ***that defendant against that plaintiff***—such claims are

entirely distinct from other alleged actions taken by other defendants against other plaintiffs. *See id.* Thus, in addition to severing plaintiffs' claims as against each defendant, each plaintiff's claims against his or her insurer should be severed from other plaintiffs' claims against the same defendant.

Simply put, the mere fact that plaintiffs allege similar wrongful conduct against more than one defendant does not somehow transform separate claims into the same occurrence. As noted above, permissive joinder of defendants in the same action requires a right to joint, several, or alternative relief arising from the same transaction, occurrence, or series of transactions or occurrences. Fed. R. Civ. P. 20(a). By no stretch can the actions of each individual defendant against each of its policyholders be read in the Complaint to relate to the same occurrence or series of occurrences alleged against that particular defendant, let alone the same occurrence or series of occurrences alleged against Allstate or any of the other defendants. *See e.g., Weber v. Lockheed Martin Corp.*, No. 00-2876, 2001 WL 274518, at *2 (E.D. La. Mar. 20, 2001) ("Although the factual allegations in the petition are sparse, there is no allegation that the alleged discriminatory actions were carried out by common actors, at a common time or with any common tactics."); *McIntosh v. Southwestern Bell*, 168 B.R. 187, 188-89 (E.D. Ark. 1994) (holding that, under the Eighth Circuit's "logical relationship" test, the defendants were misjoined because, "[t]here is no connection among the defendants other than the fact that they are all creditors of the debtor. There is no underlying transaction or occurrence which connect them.").[6]

---

[6] *See also Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 564 F. Supp. 1358, 1370-71 (D. Del. 1983) (holding that a plaintiff patent holder could not join multiple alleged infringers under Fed. R. Civ. P. 20(a) because, "[a]llegations of infringement against two unrelated parties based on different acts do not arise from the same transaction."); *Movie Sys., Inc. v. Abel*, 99 F.R.D. 129 (D. Minn. 1983) (holding that a distributor of television

72230

B.  **Even If Permissive Joinder Were Possible Under Rule 20, Severance Under Rule 21 Would Still Be Mandated Because A Single Trial Of Plaintiffs' Thousands Of Claims Would Be Unwieldy And Prejudice Each Defendant's Right To A Fair Trial.**

Rule 21 provides that "[a]ny claim against a party may be severed and proceeded with separately." The Court has "broad discretion" to sever claims under Rule 21. *See Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). Severance under Rule 21 creates "separate actions or suits where previously there was but one." *Allied Elevator, Inc. v. East Texas State Bank*, 965 F.2d 34, 36 (5th Cir. 1992) (citation omitted). Severance under Rule 21 is appropriate even where the requirements of Rule 20(a) for permissive joinder are satisfied. *See, e.g., United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983) (rejecting argument that "Rule 21 may be used only to cure misjoinder of parties," holding that the rule "is not so limited"). "[C]oncern for a fair and impartial trial" is "paramount" in deciding whether to sever separate claims. *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998). Where "different injuries, different damages, different defensive postures and other individualized factors will be so dissimilar as to make the management of the cases [joined] under Rule 20 impractical," severance is mandated. *Pittman v. Purdue Pharma Co.*, No. 3:03cv152BN, 2004 U.S. Dist. LEXIS 9840, at *16 (S.D. Miss. Mar. 12, 2004) (citations omitted).

Here, severance pursuant to Rule 21 would be appropriate, even if plaintiffs could satisfy the requirements of Rule 20(a), which, as shown above, they cannot. The prejudice that Allstate and the other defendants would suffer if forced to participate in a single trial of all plaintiffs' claims is obvious. The sheer volume of evidence concerning the differing claims of well over

---

programs could not join, under Fed. R. Civ. P. 20(a), multiple defendants who were alleged to have pirated microwave signals because, "[i]t may be that the complaint[ ] assert[s] a right to relief against all defendants arising from *similar* transactions, but the rule permitting joinder requires that such arise from the *same* transactions. . . . No concert of action is alleged, nor could it be because the operative facts of each transaction are distinct and unrelated to any other.") (emphasis in original).

72230

one thousand different plaintiffs will inevitably lead to jury confusion. *See, e.g., Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 518 (N.D. Ill. 2000) (severing action because "[t]he jury may simply resolve the confusion [created by five different factual situations] by considering all the evidence to pertain to all the plaintiffs' claims, even when it is relevant to only one plaintiff's case."); *Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1063 (S.D. Tex. 1996) (severing action due to prejudice and the "great danger that the jury will find [defendant] liable based on the sheer number of witnesses testifying about its purported wrongdoing"); *Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 790 (N.D. Ga. 1994) (severing claims because of the "tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus, prejudicing defendant with respect to the other plaintiffs' claims").

As one court put it, "[e]ven if tolerably permitted by [Federal Rule of Civil Procedure] 20(a)," where joinder of defendants will prejudice defendants or create significant difficulties in judicial administration, such concerns "far outweigh any financial saving and convenience to the plaintiff...." *Movie Sys., Inc. v. Abel*, 99 F.R.D. 129, 130 (D. Minn. 1983). In the instant case, "judicial economy and efficiency are self-evidently furthered by severance in material ways." *In re Merrill Lynch & Co., Inc. Research Reports Securities Litig.*, 214 F.R.D. 152, 157 (S.D.N.Y. 2003). Different witnesses and documentary proof will be required for each of plaintiff's claims against his or her insurer. *See, e.g., Shelton Pollet, Jr. v. Travelers Prop. Cas. Ins. Co., et. al.*, No. 01-863, 2001 WL 1471724, at *2 (E.D. La. Nov. 16, 2001) (rejecting plaintiff's attempt to consolidate property damage claims arising out of a storm where it "would result in several thousand mini-trials on individual issues"). In such a case, the "[d]iscovery burdens and associated expenses" to Allstate of litigating this case with the other defendants "would operate expansively absent a severance" of plaintiffs' claims against other insurers. *Id.* at 157.

Participation by Allstate in discovery, motion practice and trial related to many hundreds of unrelated claims against over one hundred other insurers would be tremendously and unnecessarily expensive.

Put simply, a consolidated trial would fester with confusion. The overwhelming bulk of the evidence at a joint trial would pertain to the many different circumstances surrounding over one thousand individual losses. As the court explained in *Demboski*, "[a]lthough Plaintiffs may develop some evidence ... common to all claims ... common sense dictates that the evidence in other instances as to each specific incident will be so dissimilar that it would be difficult to manage a consolidated trial. Certainly it would be very difficult to try all four of these separate cases together and be fair to all parties." *Id.* at 30. Obviously, the difficulties of trying four dissimilar cases together in *Demboski* pales in comparison to the difficult task of trying well over one thousand cases at once in this action.

Although possible trial prejudice created by joinder can sometimes purportedly be negated by jury instructions, it is not realistic to expect this could be done in this action. "[E]ven the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant" acted wrongfully. *Moorhouse v. Boeing Co.*, 501 F. Supp. 390, 393 n.4 (D.C. Pa. 1980), *aff'd per curiam* 639 F.2d 774 (3d Cir. 1980). A single jury cannot be expected to retain over one thousand different sets of facts and distinguish between the idiosyncrasies of each different claim.

72230

## CONCLUSION

For the reasons set forth above, Allstate respectfully requests this Court to grant its Motion to Sever and Proceed Separately and require each plaintiff to file a separate complaint setting forth his or her individual course of action.

Respectfully submitted,

_____
Judy Y. Barrasso, #2814
Susan M. Rogge, #28203
    Of
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 589-9700

Attorneys for Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance Company and Allstate Property and Casualty Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum in Support of Motion to Sever and Proceed Separately has been served upon all counsel of record by facsimile, hand delivery, electronic mail, or placing same in the United States mail, postage prepaid and properly addressed, this 21st day of November, 2006.

_____

72230