THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MICHAEL W. HUGHES** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **VERSUS** | * | **CIVIL ACTION NO.06-8885** |
| | * | |
| | * | **JUDGE: Stanwood R. Duval** |
| | * | |
| **LOUISIANA CITIZENS PROPERTY** | * | |
| **INSURANCE CORPORATION,** | * | **MAG. JUDGE: Joseph C.** |
| **WILLIAM E. WASHINGTON, INC. and** | * | **Wilkinson** |
| **ALLSTATE INSURANCE COMPANY** | * | |
| | * | |
| **Defendants.** | * | |

*********************************************

<u>**MEMORANDUM IN OPPOSITION TO MOTION TO REMAND**</u>

MAY IT PLEASE THE COURT:

Defendant, Allstate Insurance Company ("Allstate"), a Write-Your-Own ("WYO") Program

carrier participating in the United States government's National Flood Insurance Program ("NFIP"),

pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended,[1] appearing herein in

_____

[1]42 U.S.C. §4001, *et seq*.

its "fiduciary"[2] capacity, as the "fiscal agent" of the United States[3] and at the expense of the U.S. Treasury,[4] and files this Opposition to Plaintiff's Motion to Remand as follows:

## PREAMBLE

Before the Court conducts its jurisdictional analysis over this dispute, it is asked to come to terms with what this Petition is actually claiming. In this dispute, Plaintiff bought his homeowners' policy from one insurance company and purchased his flood policy from another insurance company. In addition, he purchased his homeowners' policy through one insurance agency, and then bought his flood policy through a different insurance agency.  Then, upon having decided for himself to have two different companies and two different agencies set up his homeowners' and flood policies, he then had the audacity to sue the two different companies and one of the different agents upon a claim that he breached some never-explained duty to the Plaintiff to make certain that there was no "gap" between either the coverages or the limits afforded under the two policies.

*FEMA is absolutely going to pay for all of Allstate's defense costs in this frivolous lawsuit.* There is absolutely no standard imposed by FEMA upon its more than 100 different WYO carriers requiring them to provide the incredible level of service (at government expense) being claimed by this Plaintiff. (Ex. A, Affidavit by Allstate)  There is no doubt but that FEMA's regulatory systems work exactly to the opposite of what this Plaintiff is suggesting, and there is no doubt but that FEMA's systems would be impacted adversely if 50 different sets of state court systems were allowed to each decide whether federal fiscal intermediaries had affirmative duties to do what this

---

[2] 44 C.F.R. §62.23(f).
[3] 42 U.S.C. §4071(a)(1); *Gowland v. Aetna Cas. & Surety Co.*, 143 F.3d 951, 953 (5th Cir. 1998).
[4] *Moffett v. Computer Sciences Corp,* ___ F.Supp.2d ___ 2006 WL 3000121, *10-12 (D.Md. Sept. 29, 2006).

2

Plaintiff is suggesting is required of a FEMA fiscal agent. Further still, Plaintiff's claims are exactly to the opposite of the controlling U.S. Supreme Court decisions governing all federal insurance and benefits programs, such as *Heckler v. Community Health Services of Crawford County, Inc.*, 104 S.Ct. 2218 (1984). As per *Heckler*, Plaintiffs were required to become "familiar" with the Program in which they chose to participate. *Id.* at 2225.  If they failed to meet their duty under *Heckler*, they have no cause to complain.  *Larmann v. State Farm,* 2005 WL 357191 (E.D.La. Feb. 11, 2005).

As for the Plaintiff's argument that Allstate's removal was defective due to lack of consent, Allstate will establish herein that NFIP plaintiffs cannot defeat the removal rights of WYO carriers by adding "separate and independent" claims against their own insurance agents.  Allstate will establish, pursuant to the analysis of the "separate and independent claim" issue set forth in Judge Vance's decision of *Benoit v. Grainger*, 1998 WL 749444 (E.D. La. 10/21/98) that the right of the federal fiscal agent in this case to remove this case to the courts of the United States was in no sense dependent upon obtaining the permission or consent of the plaintiff's own insurance agent.

Within this Memorandum, Defendant will examine the Plaintiff's Petition, and then establish the propriety of all four grounds for removal that were invoked in Defendant's Notice of Removal. Those four grounds are: (1) 42 U.S.C. §4072 (the NFIP exclusive jurisdiction statute); (2) 28 U.S.C. §1331 (general federal question jurisdiction); (3) 28 U.S.C. §1337 (the commerce clause removal statute); and 28 U.S.C. §1442 (the federal officer removal statute).  Defendant will then establish that the consent of the agent was unnecessary, given 28 U.S.C. §1441(c).

When analyzing the argument of the Defendant Allstate, it is requested that the Court keep separate the Plaintiff's claims against Allstate from the Plaintiff's claims against the independent

agent Beane. This is a critical distinction for the purpose of NFIP removal analysis, for it is only Defendant Allstate that is the "functional equivalent" of FEMA,[5] given its status as the "fiscal agent" and "fiduciary" of the United States. *Gowland,* 143 F.3d 951 (5th Cir. 1998); 42 U.S.C. §4071(a)(1) and 44 C.F.R. Pt. 62.23(f). Insurance agents, unlike the insurance company WYO carriers, have not signed an Arrangement (44 C.F.R. Pt. 62, App. A) with the federal government, and are not acting as the enforcers of FEMA's rules and regulations and operating systems. (Simply put, asserting that the Arrangement does not pay for "agent" error is irrelevant to the question of federal reimbursement of claims of "company" error.)

Again, undersigned counsel asserts to this Honorable Court, as an officer of this Court, as he did in both *Newman v. Allstate*, 2006 WL 2632116 (E.D.La. Sept. 12, 2006), and in *Breakthrough Realty Unlimited, LLC v. Minor, et al*, 2006 WL 2224753 (E.D.La. Aug. 2, 2006), that 100 percent of Allstate's reasonable defense costs and exposure in this matter (as distinct from the exposure of the agent) will indeed be paid by the United States Treasury. On this point, undersigned counsel asks that this Court examine the recent decision in *Moffett,* 2006 WL 3000121 (D.Md. Sept. 29, 2006), from the District of Maryland. In *Moffett*, Judge Messitte heard oral argument not just from the undersigned, but also from the United States directly. In that case where the United States and numerous FEMA officials were direct party defendants, Judge Messitte was able to hear exactly how the question of federal funds usage is determined by FEMA, and his conclusions are directly opposite to several rulings on this point that have emanated from the Eastern District of Louisiana.

---

[5] *Van Holt v. Liberty Mutual Fire Ins. Co*., 163 F.3d 161, 166 (3rd Cir. 1998).

**ARGUMENT**

I.    **Plaintiff's Well-Pleaded Petition**

The strategy being employed in Plaintiff's Motion to Remand is readily discernable. Despite what Plaintiff actually pleaded in his Petition, he is now seeking to claim that his lawsuit is no different than several other NFIP-related cases where Plaintiff's Petitions were limited to claims related to what an agent (as distinct from the WYO carrier) did during the initial "procurement" of an NFIP policy. Much of the debate between the parties, and all of the Court's analysis, will stem from deciding whether the Plaintiff's Petition for Damages is actually limited to claiming a dispute over what the agent did during the "procurement" of the policy, or whether Plaintiff also included claims of wrongdoing against a federal fiscal intermediary.

In examining that question, the Court is asked to note the following aspects of the Plaintiff's Petition. At paragraphs XVIII and XIX, Plaintiff asserts claims not just against their own insurance agent, but rather against their WYO carrier Allstate, as "administrator and agent" for the flood policy, and as the Plaintiff's "fiduciary." Paragraphs XVIII and XIX read as follows:

XVIII.

Subsequent to the events of August 29, 2005, Plaintiff first discovered that there was a significant disparity and gap between their homeowners/fire/liability insurance coverages and their flood coverages.[6] Plaintiff further learned that additional insurance and other insurance products were available which would have permitted them to reasonably protect their dwelling at 7337 Heather Court, New Orleans,

---

[6] Again, all citizens are charged with knowledge of the laws governing federal insurance programs. *Federal Crop Ins. Corp. v. Merrill*, 68 S.Ct. 1 (1947). The flood policy is itself a law.  44 C.F.R. Pt. 61, App. A(1); and *Mancini v. Redland Ins. Co.,* 248 F.3d 729 (8th Cir. 2001).  Louisiana law is to the same effect.  "No one may avail himself of ignorance of the law."  La. C.C. Art. 5.

Louisiana 70127 and the content contained therein. Neither the gap, nor other available insurance products were brought to Plaintiff attention by either of the Defendant, Allstate.

XIX.

Allstate, as administrator and agent for both the homeowners/fire/liability policy, and flood policy, knew, or should have known, that there was a disparity or gap between the value of Plaintiff's home and its insured value and a disparity or gap between the homeowners/fire/liability content coverage for such content. Despite such knowledge, the Defendant, Allstate, breached its fiduciary obligation as insurer and its fiduciary duty as agent for the flood policy, by their negligent failure to close the gap and/or to bring the gap to the attention of Plaintiff.

Plaintiff does not claim that the limits of his flood policy were set at anything other than what he requested. He never actually asserts that his WYO carrier actually did anything wrong. Instead, he is asserting that without any requests for anything further from him, that his WYO carrier was under a legal obligation to search him out, and to try to get him to purchase more coverage.

Significantly, at paragraph XX, Plaintiff based his claims on the allegedly insufficient limits upon and "existing" flood insurance policy.  In fact, as per the attached affidavit of Allstate, this policy had been in existence for just over *three* years before the occurrence of Katrina, having been applied for on July 12, 2002.  See Exhibit A, Affidavit of John Hintermister.  Allstate's attached affidavit explains the history of this policy, as well as the fact that Allstate never received a request for limits higher than what did exist on the date of loss.  As such, this is not a policy procurement case as it relates to Allstate.

Plaintiff's amorphous (and Allstate contends frivolous) claim is that all federal fiscal agent WYO program carriers are obligated under the terms of their agreement with FEMA (the

6

Arrangement) to find out what homeowners' limits were purchased by every person who buys an

NFIP policy through that WYO carrier, and then to "match" the homeowners' and flood limits.

In contrast to the Plaintiff's unfounded claims of never before recognized legal duties, WYO

carrier Allstate asserts to this Court that Congress has mandated pursuant to 42 U.S.C. §4013, that

all standards and duties concerning "the conditions of insurability" for the NFIP are to be set by

federal regulation. Exactly as claims handling standards are set by federal regulation on authority of

§4019 of the Act, §4013 precludes a view that state law would supply any legal standard or

applicable standard of care that would govern the activities of a WYO Program carrier while

administering this Plaintiff's flood policy.

## II.     Rules and Regulations Regarding Agency Relationships in the NFIP

Defendant Allstate is not in any sense asserting to this Court that NFIP participants cannot

sue their own insurance agents when negligence occurs in the selection of limits. Allstate is not

suggesting that any negligence actually occurred in this instance; however, Allstate is asserting that

its role in this situation is not to make the choice for insureds as to what limits they want to select.

That is a decision made by the insureds working with their own agent.  See definition of

"Applications" found at 44 C.F.R. Pt. 61 App. A(1).  Simply put, Allstate is not these insureds' agent

or their "fiduciary." Allstate is the government's fiduciary and fiscal agent. 42 U.S.C. §4071(a)(1)

and 44 C.F.R. Pt. 62.23(f).  Under Allstate's Arrangement with the government, it is to issue and

administer federal flood policies pursuant to FEMA's rules.  44 C.F.R. Pt. 62 App. A,, Art. II(D).

Key to this Court understanding why the Federal Government is so adamant that its fiscal

agents be distinguished from typical insurance agents, is understanding the absolute line of

demarcation that FEMA has established between the legal duties of WYO companies that are established exclusively by federal law, and the wholly separate legal duties of insurance agents that are decided on a state-by-state basis under the relevant laws of the state where the agent lives. In this regard, it must be understood both that FEMA pervasively regulates its companies, and also that it scarcely regulates agents at all. Regulating agents is up to the states. Because of the great importance of this question to the continued success of the NFIP, and given the conflict between what federal law says about this topic, and what the Plaintiff are claiming in their Petition, the Court is asked to examine this issue in more detail as set forth as follows:

First, and as was held in *Gowland*, 143 F.3d at 953, WYO Program insurance carriers such as Allstate are "by statute," the fiscal agent of the United States. FEMA's regulations repeat this same point. Please see 44 C.F.R. Pt. 62.23(f), which reads in pertinent part as follows:

> To facilitate the marketing of flood insurance coverage under the Program to policyholders of WYO companies, the Administrator will enter into Arrangements with such companies whereby the federal government will be a guarantor in which the primary relationship between the WYO company and the federal government will be one of a fiduciary nature, i.e., to assure that any taxpayer funds are accounted for and appropriately expended.

Please contrast 42 U.S.C. §4071(a)(1) and 44 C.F.R. Pt. 62.23(f) with what FEMA provides with respect to insurance agents. In this regard, 44 C.F.R. Pt. 61.5(e) states this:

> The Standard Flood Insurance Policy is authorized only under terms and condition established by federal statute, the Program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage that are not consistent with the National Flood Insurance Act of 1968 as amended, or the Program's regulations are void, and the duly licensed property and casualty agent acts for the insured and does act as agent for the federal government, the Federal Emergency Management Agency, or the servicing agent.

8

On this exact topic, Judge Marcia Crone of the Eastern District of Texas recently recognized that in the specific context of the NFIP, federal law establishes that insurance agents act for the insured, and not for the WYO carrier:

> FN1. The court notes that, under the NFIP, "the duly licensed property or casualty agent acts for the insured," not the "Write-Your-Own" ("WYO") insurance carrier authorized to issue SFIPs under the NFIP. 44 C.F.R. Pt. 61.5(e) (2005). *Hanak v. Talon Ins. Agency*, (E.D. Tex. 10/13/06) No. 1:05-cv-00777-MAC. (Exh. B)

The great importance of judicial enforcement of this separation between companies and agents is revealed by another recent decision, that being *Oaks v. Allstate*, No. 7:05-cv-00191-REW (E.D.Ky. 11/14/06). (Exh. C) In *Oaks*, an insufficient premium was collected at the initial issuance of the flood policy because of a mistake concerning the actual characteristics of the home to be insured, though it was unclear as to whether the mistake was made by the insured or by the insured's agent. In the resulting lawsuit, the plaintiff argued that both the insurance agent and the WYO company should be "penalized" for "their" mistake in mis-rating the policy. The court disagreed for multiple reasons, among them the following:

> Similarly, the power to revise home ratings does not depend on whether Defendants were at fault for the errors in the original home rating. Plaintiff suggest that it is particularly appropriate to "penalize" Defendants for any mistakes in generating the initial home rating. Regardless as to whether Defendants were at fault, Plaintiff's argument finds no support in the text of the SFIP. Imposing any qualification on the Defendant's right to revise the home rating would be inconsistent with the NFIP, which authorizes coverage only as provided by statute, regulation, or the terms of the policy. See 44 C.F.R. Pt. 61.5(e). Defendants properly revised Plaintiff home rating, in accordance with the proof, before honoring his claim. (Exh. C, pp. 15-16)

In addition, the NFIA provides for a clear difference between the statutory ability of FEMA to reimburse WYO Program companies (who work for FEMA) as opposed to insurance agents (who

9

work for the insureds) for errors and omissions. Please compare 42 U.S.C. §4081(a) (which was enacted in 1968) and §4081(c) (which was enacted in 1981). It has been recognized in the courts that the WYO Program is statutorily authorized by §4081(a), which regards the WYO companies.[7] The much later-enacted §4081(c) provides a hold harmless agreement for insurance agents, but that hold harmless agreement excludes errors caused by the agents, rather than by FEMA. For purposes of the current jurisdictional argument, this Court is simply asked to notice that FEMA's reimbursement authority vis-a-vis the WYO companies in §4081(a) is unrestricted, while its authority vis-a-vis agents is restricted. In this case, there is no dispute that Allstate is an insurance company.

FEMA had made it crystal clear that 44 C.F.R. Pt. 61.5(e) applies with full force to the WYO Program in the declaration FEMA submitted in *Cohen v. State Farm Fire  & Cas.*, 68 F.Supp.2d 1151 (C.D. Cal. 1999). In FEMA's *Cohen* declaration, it made three points that are of particular importance to the current issue:

   A.    Agent liability for agent error should be covered by an agent's E&O insurance policy.

   B.    Under FEMA's regulations, the agent acts for the insured, not for FEMA, or "by implication" the Write-Your-Own Program company.

   C.    The agent has not signed an Arrangement with FEMA, while the WYO carrier has. (Exh. D)

In October of 2000, FEMA reiterated its position upon this same topic when it published its "Digest and Guide on Litigation Concerning the National Flood Insurance Program." That document was published by FEMA and distributed to "the WYO companies and their counsel to assist in

---

[7]See *Van Holt, supra*, at 165 ("In 1983, pursuant to the regulatory authority granted by Congress in 42 U.S.C. §4081(a), FEMA created the "Write-Your-Own" ("WYO") Program.")

ongoing litigation pursuant to the National Flood Insurance Act." (quoting "Notice to Guide and Digest Users" at page ii of the Guide) At page 18 of FEMA's Guide, it sets forth the following as FEMA's declared position upon this issue:

> In general common law and insurance principles, unless there is an alternative express agreement to the contrary, the insurance agent is the agent of the insured and not the insurer. Likewise, and as set out in the federal law and NFIP regulations, the insurance agent is the agent of the insured and not the agent of FEMA or the WYO company. (See Exh. E)

> Next, the SFIP also makes clear that agents and companies have separate roles in the NFIP. Please examine the definition of "Application" (SFIP Art. II) states:

> Application means the statement made and signed by you or **your agent**, in applying for this policy. The application gives information we use to determine the eligibility of the risk, the kind of policy to be issued, and the correct premium payment. The application is part of this flood insurance policy, the correct premium payment must accompany the application. (emphasis added).[8]

As was held in *Wright,* 415 F.3d at 388, 42 U.S.C. §4081(c) has no application whatsoever to the insurance companies that agree to participate in the NFIP. Under the applicable federal laws, agents act for the insured, while the companies act as the fiscal agent of FEMA. *Id.* Under this system, each true party in interest to the Program, that being the insured/citizen and the U.S. Government, is provided an insurance professional to care for their interests.

## III.    Federal Funds are at Risk

Federal law alone controls the resolution of Plaintiff's dispute against Allstate. Despite the brevity of Plaintiff's Memorandum, Plaintiff is essentially arguing that Congress only provided for

---

[8] 44 C.F.R. Pt. 61, App. A(1) Art. II - Definitions.

the governance of federal law over claims handling, but not as to so-called "policy procurement" issues. Plaintiff relies upon 42 U.S.C. §4019. However, please see 42 U.S.C. §4013. There, Congress provided the exact same federal and exclusive delegation of authority to the federal Executive Branch for the "conditions of insurability," as it provided with respect to claims handling. *Moffett,* 2006 WL 3000121, *1 (D.Md. Sept. 29, 2006).  As per §4013, the federal regulations adopted by FEMA exclusively govern the question of what obligations are owed by the WYO carriers such as Allstate. In this regard, please examine the "Undertakings of the Company" section of the Arrangement. 44 C.F.R. Pt. 62, App. A, Art. II. Nowhere in that document/regulation do the WYO carriers take on any duty even remotely akin to what  this Plaintiff is claiming.

In *West v. Harris,* 573 F.2d 873 (5th Cir. 1978), the Fifth Circuit held, pursuant to §4019, that federal regulations governing claims handling preempted any state law upon the same topic. *Id.* at 880-81. There is no analytical difference between the situation at bar, which arises out of the "conditions of insurability" regulated by FEMA on authority of §4013. On both the policy administration side of the Program, and the claims handling side, the federal government needs a nationally uniform rule litigated in the federal courts, or this program will not long succeed.

On authority of §4013, FEMA promulgated all of the regulations concerning the administration of flood policies found throughout 44 C.F.R. Pt. 61. Pursuant to that same authority, FEMA adopted all those portions of the SFIP that relate to policy issuance and administration. For instance, please see SFIP Article II. (44 C.F.R. Pt. 61, App. A(1)) There, in the "Definitions" article, is found the definition of both "Application" and "Declarations Page." Those two definitions make clear that the WYO carrier issues the policy based upon what has been applied for by "you or your

agent" and based upon what premium has been paid. Article I of the SFIP also states that the policy is dependent upon whether the insured has "paid the correct premium." WYO carriers, as distinct from insurance agents, are charged with enforcing FEMA's rules and regulations based upon the company's "fiduciary" duties to the federal government. See 44 C.F.R. Pt. 62.23(f); *Oaks, supra*. While it might be true that an agent has legal duties vis-à-vis an insured in the selection of limits of coverage, WYO carriers do not. There is nothing in federal law that makes it the responsibility of the WYO carrier to decide for the insured what limits will be applied for. However, and as was found in *Oaks*, the rating and issuance of flood policies is governed exclusively by federal law.

Allstate now refers the Court's attention to the "Arrangement" that governs the relationship between the government and all WYO Program carriers such as Allstate. 44 C.F.R. Pt. 62, App. A. In particular, Allstate asks this Court to examine two paragraphs in Article I of the Arrangement that will be set forth below. Further, Allstate asks that this Court notice that the provisions set forth below were added to the Arrangement by FEMA three years ago, after federal courts started remanding so-called "policy procurement" lawsuits involving the flood program to the state courts. Notably, the provisions set forth below are in the new Arrangement that took effect on October 1, 2004. Set forth below is the Arrangement that governs this case:

> Whereas, FIA has promulgated regulations and guidance implementing the Act and the Write-Your-Own Program whereby participating private insurance companies act in a fiduciary capacity **utilizing federal funds to sell and administer** the Standard Flood Insurance Policies, and has extensively regulated the participating companies' activities when **selling or administering** the Standard Flood Insurance Policies; and
>
> Whereas any litigation resulting from, related to, or arising from the companies compliance with the written standards, procedures, and guidance issued by FEMA or FIA arises under the Act, regulations, or FIA guidance, and legal issues thereunder **raise a federal question**; and . . . (emphasis added)

As of October 1, 2004, the "Arrangement" expressly declares (as a federal regulation) the government's view that all NFIP operations, and not just claim activities, fall within the scope of the duties of a WYO company that are owed *to the federal government*. These new paragraphs, which were added to Article I of the Arrangement under the heading "Findings, Purpose and Authority," serve to bolster the fact that the full scope of insurance-related operations of a WYO Program carrier fall within the scope of the Arrangement, and not just the subject of claims handling. In these regards, the Court is asked to examine the Arrangement itself, and in particular Article II(A)(1), Articles II(D)(2)(3) and (4), and Article II(G)(1), wherein FEMA expressly declares within the Arrangement as a federal regulation, that all matters of "policy administration," "policy issuance," and "policy marketing," do come within the scope of the Arrangement.

Critically, FEMA's view upon these questions has never changed. It has always had the opinion that liabilities arising against its fiscal agents (as distinct from insurance agents) for their alleged acts and omissions in the context of the "sale or marketing" of NFIP policies do fall within the scope of the Arrangement. *Moffett,* at *11 . It is only the courts that have held a different view, and that different view was erroneously developed based upon a misreading of *West v. Harris*, 573 F.2d 873 (5th Cir. 1978), *cert. denied*, 440 U.S. 946 (1979); and *Spence v. Omaha Indemnity Ins. Co.*, 996 F.2d 793 (5th Cir. 1993) decisions. In proof of this assertion, Allstate attaches as Exhibit D, the earlier-mentioned declaration that FEMA submitted in *Cohen v. State Farm Fire & Cas.*, 68 F.Supp.2d 1151 (C.D. Cal. 1999). In the declaration, and at Item 6, FEMA explained the meaning of the same provisions of the Arrangement upon which several prior court decisions incorrectly rely, and asserts that FEMA's view of the meaning of this language is as follows: "The FIA means by this that the WYO company is not liable and is not itself responsible for the payment of claims arising

14

out of the delay, error, or omission in the sale or marketing of the Standard Flood Insurance Policy."
Notably, an agency's interpretation of its own regulations, as distinct from its interpretation of
statutes, is given "controlling weight."[9] (This same declaration was quoted and relied upon in
*Moffett, supra*.)

   In deciding whether Allstate did or did not act outside of the scope of its Arrangement with
FEMA, such that federal funds are or are not at issue, Allstate raises these three points:

   1. It is no longer appropriate to argue that FEMA is statutorily precluded from reimbursing
its §4071(a)(1) fiscal agents for their own errors and omissions because of 42 U.S.C. §4081(c). The
Fifth Circuit has now recognized that that statute has no application whatsoever to insurance
companies.[10] Notably, virtually all prior NFIP "policy procurement" remand orders are based on that
erroneous view.  At bottom, virtually all prior related cases, all of which are predicated upon that
erroneous understanding of the statutory scheme, are no longer good law.

   2. There is no allegation in this case that Allstate failed to strictly construe and to enforce any
of FEMA's rules, or that Allstate violated any of FEMA's rules. In other words, from FEMA's
perspective, it appears from the Plaintiff's Petition that Allstate has discharged its duty as the
government's "fiduciary" exactly as FEMA has intended. 44 C.F.R. Pt. 62.23(f). Nothing in the
Petition asserts otherwise. **As such, why would FEMA not pay?**

   3. Apart from this Court's own review of the Arrangement, Allstate would point out that the
analytical path governing how one determines whether an activity falls within the scope of authority
of a federal Arrangement, or not, such that state-law-based tort liability arising out of NFIP

---

[9] *See Stinson v. U.S.*, 508 U.S. 36 (1993).
[10] *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2005).

operations would befall a private corporation or the government, has <u>not</u> been uniformly approached by the courts. In *Central Claims Service v. Computer Sciences Corp.*, 706 F.Supp. 463, 467 (E.D.La. 1989), Judge Feldman of this Court explained both the legal test and public policy considerations involved in deciding whether a private corporation acting for FEMA in the context of the NFIP acted within or "outside the scope of" the federal regulatory scheme:

> The Fifth Circuit has held that the test of whether an official is acting within the scope of his authority is whether "the act [has] more or less connection with the general matters committed by law to the officer's control or supervision, and [is] not . . . manifestly or palpably beyond his authority."[11] The Bushman court, applying the same test, found that the defendant had acted within the scope of his authority, and rejected plaintiff's argument that the wrongful nature of the letter's contents was sufficient to strip the immunity defense of its force. As the court explained:
>
>> [T]o separate the activity that constitutes the wrong from its surrounding context - - an otherwise proper exercise of authority - - would effectively emasculate the immunity defense. Once the wrongful acts are excluded from an exercise of authority, only innocuous activity remains to which immunity would be available. Thus, the defense would apply only to conduct for which it is not needed. *Id*. at 467.

FEMA's view, as set forth in the attached declaration from the *Cohen* matter, and Judge Feldman's description of the applicable legal test, are perfectly in sync. Also, FEMA's view (and its sole authority over this issue) was just addressed in a lengthy ruling just announced by Judge Messitte of the District of Maryland in *Moffett*, 2006 WL 3000121, *10-12 (D.Md. Sept. 29, 2006). In that action, a group of 182 Maryland residents sued FEMA, various FEMA officials, various WYO insurance companies, several adjusting companies and adjusters, as well as several vendors. Plaintiff's Complaint pursued both what was styled as policy procurement and claims handling allegations. Judge Messitte, after hearing both from FEMA *directly* and from all of the other

---

[11] *Norton v. McShane*, 332 F.2d 855, 859 (5th Cir. 1964), *cert denied*, 380 U.S. 981 (1965).

defendants at an oral argument that lasted two days, issued a lengthy ruling explaining in great detail how one *properly* determines whether federal funds are at issue in a particular piece of NFIP litigation. Most significantly, Judge Messitte held that the determination of whether federal funds are at risk is not in any sense to be decided based upon the use of buzz words in a plaintiff's Complaint. As just one of Judge Messitte's several observations, is the following:

> The regulation leaves the definition of what is within and without the Arrangement to FEMA's General Counsel. If determination of what is "significantly outside the scope of the Arrangement" or agent negligence were left to the pleader, FEMA would ostensibly be obliged to decline to reimburse any activity that the pleader might assert in a Complaint was "significantly outside the scope of the Arrangement" or that arguably amounted to agent negligence. Every time an aggrieved insured might use these magic words, the WYO carrier would be left to twist in the wind. This would obviously not be in the best interest of the NFIP; WYO carriers might well leave the Program in droves. By bringing more types of WYO cases within the scope of the Arrangement and hence the preemptive fold, FEMA is able to provide important protections and incentives to WYOs. *Id*. at 11.

Based on all of the authorities and analysis set forth above, Allstate asserts that all of its defense costs and exposure in this case will be payable from federal funds.[12]

## IV.   Four Distinct Grounds Support Removal

Upon all of these showings and explanations made thus far, Allstate believes that this Court would properly take subject matter jurisdiction over this case for four distinct reasons:

**1. 42 U.S.C. §4072:** Allstate respectfully asks this Honorable Court to give due consideration to Judge Feldman's recent ruling in *Newman v. Allstate,* 2006 WL 2632116 (E.D.La. Sept. 12, 2006). In *Newman,* Judge Feldman agreed with the growing number of federal judges who see a clear distinction between true policy procurement cases, which principally are directed at what an

---

[12] 44 C.F.R. §62.23(i)(6).

insurance agent does to induce a person to purchase a policy, and a separate category of cases labeled policy administration cases, which concern the steps taken by a WYO carrier in both issuing, and then administering an existing NFIP policy. See also *Southpointe Villas Homeowners Assoc. v. Scottish Ins. Agency Inc.*, 213 F.Supp.2d 586 (D.S.C. 2002).  In the matter at bar, Plaintiff went beyond just suing his own insurance agent for what was done in selecting the limits. He has also sued Allstate, and asserted that its activities pursuant to the regulations adopted pursuant to 42 U.S.C. §4013, should be challenged and potentially altered in a state court forum, and pursuant to state law. Under the analysis of Judge Feldman's *Newman* decision, the claims of this Plaintiff against Allstate should be restricted to the federal courts under §4072.

Please recall, that as per Allstate's attached affidavit, Plaintiff's flood policy had been in existence for over three years before Katrina.  Nowhere within the Petition is the Plaintiff claiming any problem with what happened in 2001 when the policy was initially procured.  Clearly, that would be a time barred claim.  His allegations concern what happened far more recently, at renewals, and during a time frame where Allstate was administering an existing NFIP policy.  Under such cases as *Southpointe Villas*, *Newman*, *McCullogh* and the earlier referenced *Oaks* decision, such disputes are restricted to the federal courts, and analysis of such claims is solely a question of federal law.

**2. 28 U.S.C. §1331:** The question of what duties are owed by WYO Program carriers while administering NFIP policies is a significant federal question and a significant federal interest. The Court is asked to ponder what would happen to the NFIP if 50 different sets of state courthouses were allowed to answer all questions arising out of all activities governed by 42 U.S.C. § 4013.

The core question raised by Plaintiff's Petition against Allstate is the question of whether federal fiscal agents such as Allstate have an affirmative legal obligation to inform all persons who purchase federally backed flood insurance policies from their company, of any gaps in coverage or limits that might exist between the insureds' private homeowners' policy, and their federally backed flood policy. To determine the answer to this question, the Court would have to look at the structure and purpose of the National Flood Insurance Act and in particular at 42 U.S.C. §4013. The Court would then also have to examine all of the regulations relating to policy issuance and administration found at 44 C.F.R. Pt. 61, as well as the regulations governing the WYO carriers found at 44 C.F.R. Pt. 62.23 and 62, App. A. Finally, the Court would need to evaluate the import of the Supreme Court's decisions in *Federal Crop Ins. Corp. v. Merrill*, 68 S.Ct. 1 (1947), as well as *Heckler*, *supra*, concerning whether NFIP participants such as the Plaintiff at bar can properly claim ignorance of the scope of coverage afforded by NFIP policies.  Irrefutably, the questions posed by the Plaintiffs' Petition go to the heart of how one properly operates a *federal insurance program*.  However, in no sense would any aspect of these questions be resolved by looking to anything emanating from just one state. As the questions raised by the claims Plaintiff chose to make against Allstate as the master of his claims are *only* federal questions, Defendant maintains that this Court has federal question jurisdiction.

**3. 28 U.S.C. §1442:** Removal under 28 U.S.C. §1442 is *not* limited to cases in which a federal agency itself (or agency employee) is a named defendant; non-governmental entities have removal rights under §1442 when a state court complaint challenges their conduct under color of a federal office or agency. See *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998)(holding that private corporate entities are "persons" under §1442(a)(1)).  Removal is

19

appropriate under §1442 when: (1) the defendant is a "person" within the meaning of the statute; (2) the defendant "acted pursuant to a federal officer's directions and a causal nexus exists between the defendants' actions under color of federal office and the Plaintiff's claims"; and (3) the defendant assert a "colorable federal defense." *Winters*, 149 F.3d at 398-400. See *Malsch v. Vertex Aerospace, LLC*, 361 F. Supp. 2d 583, 585 (S.D. Miss. 2005) (defendants must "raise a colorable federal defense to Plaintiff's claims … and it must 'establish that the suit is for a[n] act under color of office'"). All three elements are present here.

First, Allstate is a "person" within the meaning of the statute. *Winters,* 149 F.3d 387; see also *Watson v. Philip Morris Cos*., 420 F.3d 852, 863 (8th Cir. 2005).

Second, the Petition challenges conduct undertaken by Allstate under color of federal office. This second requirement "is neither 'limited' nor 'narrow,' but should be afforded a broad reading so as not to frustrate the statute's underlying rationale." *Winters*, 149 F.3d at 398. Here, the Petition squarely places at issue Allstate's decisions, all made on FEMA's behalf as its fiscal agent and fiduciary, concerning the Plaintiff's participation in this federal program. All of the activities put at issue by the Plaintiff's Petition put at issue standards of care under the NFIP that are subject to comprehensive federal regulation by FEMA, which as per the National Flood Insurance Act, exclusively controls all such matters. 42 U.S.C. §§4013 and 4019; *Moffett,* 2006 WL 3000121 (D.Md. Sept. 29, 2006). Allstate has no authority whatsoever to deviate from FEMA's position on how such matters are to be handled. *Id*.

The third prong for removal under §1442 is the assertion of a colorable federal defense. At the removal stage, defendants "need not prove the asserted defense, but need only articulate its

'colorable' applicability to the plaintiff's claims." *Winters*, 149 F.3d at 400. See also *Malsch*, 361 F. Supp. 2d at 587 (test is not whether defendant's "proffered federal defense is meritorious, but rather whether it is at least 'colorable').

Allstate's straightforward colorable federal defense is that it does not have any duty such as that alleged by the Plaintiff, to affirmatively determine if there is a "gap" between the coverages afforded by the Plaintiff's homeowners and flood policies. One key purpose of the federal officer removal statute is to avoid having federal defenses concerning federal statutory schemes resolved in a piecemeal and inconsistent basis in state courts. Resolution of Allstate's defenses in federal court goes to the heart of why Congress enacted the federal officer removal statute.

Defendant acknowledges this Court's recent ruling in *Berthelot v. Boh Bros. Construction*, 2006 WL 1984661 (E.D.La. June 01, 2006). However, the defendant invoking the federal officer removal statute in *Berthelot* was the Orleans Levee District ("OLD"). Plainly, there is an incredible difference between Allstate appearing as a federal fiscal agent and fiduciary (42 U.S.C. §4071(a)(1) and 44 C.F.R. Pt. 62.23(f)) directly handling U.S. Treasury exposures and  funds, and the situation governing the relationship between OLD and the Corp of Engineers. No court has ever labeled OLD the "functional equivalent" of the Corp. In contrast, virtually all courts recognize that WYO carriers act in FEMA's stead, and are truly doing its bidding.

Defendant respectfully submits that the federal officer removal statute *fits like a glove* over cases of this type. Each of the three prongs of that type of removal is clearly met here. In particular, and unlike federal question removals that do work from the face of the Plaintiff's well-pleaded Petition, federal officer removals work from the Defendant's defenses. *Winters*, 149 F.3d at 398-400.

Here, as Allstate has multiple colorable defenses to the Plaintiff's allegations, and as there is a federal interest in the uniform adjudication of claims disputes involving the NFIP in the federal courts, the federal officer removal statute is literally tailor made for removals of this type.

    **4. 28 U.S.C. §1337:**   Removal of this case is also proper under 28 U.S.C. §1337, which provides that the district courts shall have original jurisdiction of any civil action or proceeding arising under any act of Congress regulating commerce. Just like §1442, §1337 is not subject to the well-pleaded-complaint rule. Under §1337, removal is proper where the facts alleged in the Plaintiff's Petition bring into play an act of Congress that regulates commerce, regardless of whether any reference to the said act appears in the Plaintiff's pleading. *Uncle Ben's International Division of Uncle Ben's Inc. v. Hapag-Lloyd Aktiengesellschaft*, 855 F.2d 215, 216-17 (5th Cir. 1988); *Crispin Co., v. Lykes Bros. Steamship Co.*, 134 F.Supp.704, 706 (S.D.Tex. 1955); and *Commonwealth of Puerto Rico v. Sea-Land Service Inc.*, 349 F.Supp.964, 973-74 (D.P.R. 1970).

    Clearly, under the National Flood Insurance Act, 42 U.S.C. §4001, *et seq.*, Congress is regulating commerce by promulgating the complex and comprehensive statutory scheme that is commonly described as the National Flood Insurance Act. As recognized in *C.E.R. 1988, Inc. v. Aetna Cas. and Sur. Co.*, 386 F.3d 263, FN3 (3rd Cir. 2004):

> FN3. The insurance industry in the United States operates in interstate commerce. States may regulate the insurance industry only to the extent Congress permits. U.S. Const. art. I, § 8, cl. 3. The McCarren-Ferguson Act, 15 U.S.C. § 1011, *et seq.*, grants states this power except where Congress enacts legislation that "specifically relates to the business of insurance." 15 U.S.C. §1012 (b). In *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 116 S.Ct 1103, 134 L.Ed.2d 237 (1996), the Supreme Court held that the exception for acts relating to the business of insurance should be construed broadly, noting that "[t]he word 'relates' is highly general." *Id.* at 38, 116 S.Ct. 1103. Without doubt the NFIA is congressionally-enacted legislation relating to the business of insurance.

Beyond the general proposition that the National Flood Insurance Act regulates commerce, it is also clear that in a more particularized sense, the Act expressly regulates "the conditions of insurability." See, e.g., 42 U.S.C. §§4013 and 4019. *Moffett,* 2006 WL. Plainly, federal laws affecting commerce are involved in the facts put at issue in the Plaintiff's Petition, and so removal of that Petition is proper pursuant to 28 U.S.C. §1337.

**5. 28 U.S.C. §1441(c):**  Plaintiff does not dispute that Allstate is indeed a WYO Program carrier, or that as per *Gowland*, 143 F.3d 951, Allstate operates as the fiscal agent of the United States in the context of the NFIP.   Nevertheless, Plaintiff contends that a WYO carrier such as Allstate must obtain the consent of the Plaintiff's own insurance agent before removing a case of this type.  Pursuant to the analytical path employed by Judge Vance in *Benoit v. Granger*, 1998 WL 749444. Allstate disagrees.

In *Benoit*, Judge Vance analyzed this situation in that matter against the Fifth Circuit's decisions in *Eastus v. Bluebell Creameries*, 97 F.3d 100 (5th Cir. 1996), *Carl Heck Engineers, Inc. v. Lafouche Parish Police Jury*, 622 F.2d 133 (5th Cir. 1980), and *Henry v. Independent American Savings Association*, 857 F.2d 995 (5th Cir. 1998).  She described the applicable test from the three cases as follows: Under *Eastus*, the plaintiff's allegations must "involve different facts for each defendant."  Under the *Carl Heck* test, "a claim is separate and independent if the claim would be removable if sued upon alone."   Under *Henry*, "a claim against one defendant is separate and independent if it is a claim for which only the removing defendant itself may be liable."

At bar, Plaintiff's Petition sues Allstate and the agent separately in two different counts. Moreover, Allstate submits that this Honorable Court is well aware that the events that would take

place at the agent's office in the initial procuring of the policy, have no connection to events occurring one and two and three years later when Allstate would renew the policy. Plaintiff's claim against Allstate is an ongoing obligation of what it was supposed to have done at the time of renewal. If these cases were tried together, there would be no overlap between the activities of the agent that are being alleged as tortious, and the activities of the company that are alleged to be tortious. We would be trying two separate cases.

Moving to the *Carl Heck* test, Allstate submits that it is now established that a policy administration case is removable to the federal courts. This is established by Judge Feldman's decision in *Newman*, Judge McNamara's decision in *Breakthrough Reality*, and by Judge Rosenthal's decision in *McCulloch,* as cited in *Newman*. Simply put, had the Plaintiff not sued his own insurance agent (44 C.F.R. Pt. 61.5(e)) at all, and rather sued only FEMA's fiscal agent and fiduciary (44 C.F.R. Pt. 62.23(f)) this case would have been removable. It is indeed a case that would have been subject to the original jurisdiction of the United States Courts had it been filed in federal court in the first place by the Plaintiff.

Finally, if *anyone* is liable for what happened at the renewals of Plaintiff's policy, it is the company and not the agent. Companies send out renewal notices, and companies change limits. If indeed this Plaintiff did apply to Allstate for additional limits, and pay for them (in other words comply with the applicable rules for increasing limits), and if Allstate "dropped the ball," then if anyone could be held liable under these circumstances, it would be Allstate and not the agent. In other words, Allstate knows of no principal of law that would make the agent responsible for policy administration errors by the company.

24

As a final consideration of this issue, Defendant believes that this Court is well aware that the Plaintiff's bar has sued insurance agents throughout the state of Louisiana *in droves* mainly for the purpose of defeating removals to the federal courts.  Allstate asks this Court to consider this practice in the light of its impact upon FEMA's ability to have its cases concerning policy administration disputes resolved in the federal courts.  The question presented is this: is the right to remove such cases subject to the consent of the Plaintiff's own agent?

WHEREFORE, Allstate prays that this Honorable Court will deny the Plaintiff's Motion to Remand.

Dated this 28th day of November, 2006

Respectfully submitted,
NIELSEN LAW FIRM, L.L.C.
*/s/Gerald J. Nielsen*
GERALD J. NIELSEN, La. S.B. 17078
MARY ELLEN WYATT, La. S.B. 30805
3838 N. Causeway Blvd.  Suite 2850
Metairie, Louisiana 70002
Tel. (504) 837-2500   Fax (504) 832-9165
Email: mwyatt@nielsenlawfirm.com
Attorney for Allstate Insurance Company in its
capacity as a WYO Program carrier

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served upon all counsel of record, Gary M. Pendergast, 1515 Poydras Street, Suite 2260, New Orleans, Louisiana by CM/ECF on this 28th day of November, 2006

*/s/Gerald J. Nielsen*
Gerald J. Nielsen