1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
 2

 3

    SHIRLEY CHAMBERLAIN,          :    Docket No. CV 06-6479K(2)
 4  wife of/and ROBERT
    CHAMBERLAIN,                  :
 5
         Plaintiffs,             :    New Orleans, Louisiana
 6                                     Wednesday, November 15, 2006
              v.                 :    9:36 a.m.
 7
    LOUISIANA FARM BUREAU          :
 8  CASUALTY INSURANCE COMPANY
    and JAMES L. FRANTZ,          :
 9
         Defendants,             :
10
                           CONSOLIDATED IN
11
    COLLEEN BERTHELOT, ET AL.,    :    Docket No. CV 05-4182K(2)
12
         Plaintiffs,             :
13
              v.                 :
14
    BOH BROTHERS CONSTRUCTION      :
15  CO., L.L.C., ET AL.,
                                 :
16       Defendants,             :
                                 :
17  THIS DOCUMENT RELATES TO:
    REC. DOC. 1497               :
18
                               AND
19
    MARK JOHNSON and NICOLE       :    Docket No. CV 06-6248K
20  JOHNSON,
                                 :
21       Plaintiffs,             :
                                 :
22            v.                 :
                                 :
23  STATE FARM FIRE & CASUALTY    :
    COMPANY, ET AL.,             :
24
         Defendants,             :
25
```

```
 1                              AND

 2   GORDON S. CASE and          :     Docket No. CV 06-7390K
     TANJHA C. CASE,
 3                               :

          Plaintiffs,
 4                               :

               v.
 5                               :

     ANPAC LOUISIANA INSURANCE
 6   COMPANY,                    :

 7        Defendant.             :

 8   : : : : : : : : : : : : : : : :

 9

10                     TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE STANWOOD R. DUVAL, JR.,
11                   UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   For Plaintiffs, Shirley     GARY M. PENDERGAST, ESQ.
     Chamberlain and Robert      1515 Poydras Street, Suite 2260
14   Chamberlain:               New Orleans, Louisiana  70112

15   For Defendant James L.      Deutsch Kerrigan & Stiles, L.L.P.
     Frantz:                     BY:  BEVERLY A. DeLAUNE, ESQ.
16                               755 Magazine Street
                                 New Orleans, Louisiana  70130
17
     For Defendant, Louisiana    ANDREW L. PLAUCHE, JR., ESQ.
18   Farm Bureau Casualty        201 St. Charles Avenue, #4240
     Insurance Company:          New Orleans, Louisiana  70170
19
                                 AUSTIN JOHNSON, ESQ.
20
     Audio Operator:             CYNTHIA CRAWFORD
21

22   Transcript prepared by:     JANICE RUSSELL TRANSCRIPTS
                                 1133 Tanager Trail
23                               Virginia Beach, Virginia  23451
                                 757/422-9089
24
     Proceedings recorded by electronic sound recording; transcript
25   produced by transcription service.
```

```
 1   APPEARANCES (Continued):

 2   For Plaintiffs, Mark        PAUL E. MAYEAUX, ESQ.
     Johnson and Nicole          1100 Poydras Street, Suite 2610
 3   Johnson:                    New Orleans, Louisiana  70163

 4   For Defendants, State       Stone Pigman
     Farm Fire & Casualty        BY:  WAYNE J. LEE, ESQ.
 5   Company and Nora Vaden      546 Carondelet Street
     Insurance Company:          New Orleans, Louisiana  70130
 6
     For Plaintiffs, Gordon S.   Landry & Swarr, LLC
 7   Case and Tanjha C. Case:    BY:  DAVID R. CANNELLA, ESQ.
                                 1010 Common Street, Suite 2050
 8                               New Orleans, Louisiana  70112

 9   For Defendant, ANPAC        Leake & Andersson, LLP
     Louisiana Insurance         BY:  PEIRCE A. HAMMOND, II, ESQ.
10   Company:                         JASON R. BONNET, ESQ.
                                 Energy Centre, Suite 1700
11                               1100 Poydras Street
                                 New Orleans, Louisiana  70163
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2          THE COURTROOM DEPUTY:  Court's in session.  Be seated.

 3          Okay, let's see.  I'm going to call the cases.

 4          06-6248, Section K, that's Mark Johnson, et al. v.

 5  State Farm & Casualty Company, et al.; 06-6479, Section K,

 6  Shirley Chamberlain, et al. v. Louisiana Farm Bureau Casualty

 7  Insurance Company, et al.; 06-7390, Section K, Gordon S. Case,

 8  et al. v. ANPAC Louisiana Insurance Company.

 9          THE COURT:  Good morning.

10     (All parties respond)

11          THE COURT:  Okay.  Do you want to make your

12  appearances?

13          MR. MAYEAUX:  Paul Mayeaux on behalf of the, of Mark

14  and Nicole Johnson.

15          MR. PENDERGAST:  Gary Pendergast for the Chamberlains.

16          MR. CANNELLA:  Good morning.  David Cannella in the

17  Case case for the plaintiffs.

18          MR. PLAUCHE:  Your Honor, Andy Plauche, Farm Bureau in

19  Chamberlain.

20          MR. JOHNSON:  Austin Johnson for Farm Bureau in

21  Chamberlain, Your Honor.

22          MR. LEE:  Wayne Lee for the defendants, State Farm and

23  Nora Vaden Agencies in the Johnson v. State Farm and Nora Vaden

24  Agencies case.

25          MR. HAMMOND:  Peirce Hammond on the Gordon Case case
```

1  and Jason Bonnet.

2          MS. DeLAUNE:  And Beverly DeLaune on behalf of Jim

3  Frantz in the Chamberlain case.

4          THE COURT:  Thank you.

5          All right.  We -- I think we talked a little bit to

6  you about trying to compress the arguments.

7          Mr. Mayeaux, you're going to go first for -- for

8  the -- on the remand?

9          MR. MAYEAUX:  That's fine, Your Honor.

10          THE COURT:  No.  You were getting up.  I assumed you

11  were.

12          MR. MAYEAUX:  That's fine, unless you have an order.

13          THE COURT:  No.

14          MR. MAYEAUX:  I just know that my case was first in

15  line, so I --

16          THE COURT:  No, no.  I -- no.  No.  And I -- and the

17  emphasis on your case, frankly, your -- yours is the -- your

18  case seemed to be a little different than the others, at least

19  in my mind, and that's why I asked you to emphasize a

20  misjoinder because it seems a little more attenuated from the

21  accident issue than the other cases.

22          MR. MAYEAUX:  Okay.

23          THE COURT:  Do you understand what I'm saying?

24          MR. MAYEAUX:  I think -- I got a message from your

25  office that was read to me while I was in mediation yesterday,

1    and I -- I meant to call and follow up, but I --

2              THE COURT:  Well --

3              MR. MAYEAUX:  -- I was unable to.

4              THE COURT:  -- we were trying to give you a heads up

5    because time is precious.

6              MR. MAYEAUX:  Yes.

7              THE COURT:  And I guess what I'm telling you is, in

8    one of these, one or two of these cases, I'm going to have to

9    squarely address the MMTJA.  And yours, I may not have to

10   because I find that your, as I recall, your complaint is not --

11   is not -- and the other side may disagree -- but you're not

12   seeking any recovery based on a levee breach.

13             MR. MAYEAUX:  Correct, Your Honor.

14             THE COURT:  And therefore, I'm going to hear a lot of

15   argument about accident.  And yours is -- so yours, my concern

16   was -- going to hear a lot of argument from the other two that

17   are more, a little more involved than you are.

18             So I thought that you might focus on misjoinder, that

19   is, the -- your opposition has stated that the claims are

20   not -- let me say are misjoined.  We don't want to use not

21   properly joined because that gets into the rubric of improper

22   joinder -- are misjoined because the two claims aren't

23   sufficiently related, one against the agent and one against the

24   insurer, for two different reasons and they're saying that

25   they're misjoined.  And so I'm interested in your discussion on

1    that.

2          And we've already had something like this, except it

3    was a more -- I don't know if it was you.  No.  It was another

4    situation where there was a claim against the levee district

5    and a claim against the insurer, meaning, "If the insurer

6    doesn't pay me, I want the levee district to," and I found that

7    was misjoined.  This is, of course, a little different scenario

8    because it's certainly more related than that.

9          So with all that said, it's your turn.

10         MR. MAYEAUX:  Okay, Your Honor.

11         My case should be remanded, very simply.  I think the

12   Court's already telling me not to discuss the MMTJA, just --

13         THE COURT:  Well, we're going to have plenty

14   discussion on that --

15         MR. MAYEAUX:  -- respond on that later.

16         THE COURT:  -- with people who are probably more

17   affected than you are.

18         MR. MAYEAUX:  Okay.

19         With that being said, Your Honor, with respect to the

20   joinder issue, your fellow brethren on this bench, federal

21   bench, in similar cases have remanded under the circumstances,

22   finding that the claim against the agent and the claim against

23   the insurer are proper joinder defeating federal jurisdiction.

24         My case is very simple.  A Lakeview couple has a three

25   foot in diameter tree during the storm fall on their house, and

1  has five or ten windows blown out.  Their neighbor comes in on

2  Monday morning and all of the ceilings are wet and everything

3  in the house is wet.  And then, eight hours later, it floods.

4  They've recovered from their flood carrier and at issue is what

5  State Farm owes under a wind policy for the damage that

6  occurred prior to the flood.

7           With respect to the agent, my clients had a very

8  specific conversation with their agent within, roughly, 16, 18

9  months of the hurricane about the adequacy of their coverage

10  for both flood and wind and about the availability of excess

11  flood insurance.  They were told that there was no excess flood

12  insurance available.  Hence, the claim against the agent for

13  not only the adequacy of their wind, wind coverage, but the

14  availability of excess flood insurance.

15           I think the two go hand in hand, and I think this is

16  the typical case that stays in state court and that your fellow

17  judges have found is appropriate in state court and they've

18  sent back.

19           THE COURT:  I think you may have cited a Judge Zainey

20  and a Judge Lemmon case.

21           MR. MAYEAUX:  Lemmon, Livaudais.

22           THE COURT:  There's a --

23           MR. MAYEAUX:  Judge --

24           THE COURT:  Judge Zainey?

25           MR. MAYEAUX:  I think it was, but also, Judge --

```
1              THE COURT:  Rodlauer (phonetic)?

2              MR. MAYEAUX:   -- Judge Barbier.

3         So unless the Court has any questions for me on the

4    issue of joinder, I --

5              THE COURT:  No.  I'm going to let -- I'm going to let

6    you have, since you've taken so little time, I'll let you

7    respond to whomever is going to take this one up on the other

8    side.

9         And I'm interested in just the misjoinder issue there.

10        If you want to, because we're going to have plenty

11   discussion about -- if you want to try to convince me that the

12   MMTJA applies to this, this particular one, you can attempt to

13   do so, but I'm just letting you know my -- I see this one as

14   not -- let me tell you how I see this one.

15        I see this one as since it -- since -- the accident,

16   if any, as I've already held, if any -- and when I say "held,"

17   as I've -- I've held to some extent dicta, perhaps, perhaps

18   unnecessary dicta, as dicta generally is, in the Flint case,

19   but I've already held that the hurricane itself, itself, is not

20   an accident.  Something has to culminate in an accident.  I

21   don't see it in this case, and I don't see it sufficiently

22   related under the MMTJA to have jurisdiction.

23        So I'm more interested in the joinder issue and so if

24   anybody wants to take that one up, they may.

25             MR. LEE:  Well, Your Honor, Wayne Lee on behalf of
```

1    State Farm Fire & Casualty Company, which did the removal in

2    this case.

3         I -- and I understand that Your Honor's trying to keep

4    the two separate, and I have to say that I do believe that

5    there is a basis for having this case treated in conjunction

6    with the 1369 issue and I'll -- if you want me to defer that

7    until later, I'll do that, Your Honor, but I can -- and address

8    at this point --

9         THE COURT:  Well, as it's discrete to this case, you

10   know, that would mean virtually every case not even involving a

11   levee breach would be in federal court.  Every case, every

12   case, frankly, that names two parties, that names the agent,

13   would be in federal court.

14        MR. LEE:  And --

15        THE COURT:  Because -- because you're saying Katrina's

16   the accident, not the levee breach.

17        MR. LEE:  No, Your Honor, if you remember, what

18   Mr. Mayeaux said was that there was a tree that fell on the

19   house --

20        THE COURT:  Uh-huh.  (Indicating an affirmative

21   response)

22        MR. LEE:  -- and there was rain that got into the

23   house and then the flood came and caused damage.

24        THE COURT:  Right.

25        MR. LEE:  His claim in this, against State Farm, is

1   that you have mishandled my claim and that I'm entitled to

2   additional money --

3           THE COURT:  Right.

4           MR. LEE:  -- under the homeowner's policy.

5           THE COURT:  Right.

6           MR. LEE:  And I'm entitled to the value, to recover

7   under the Valued Policy Law, which is, which says that when

8   there's a total loss of the property, that I'm entitled to

9   recover under that.

10          As Your Honor is aware, Judge Vance has already held

11  that if the property is not a total loss because of a covered

12  peril, then the Valued Policy Law does not come into play.

13          So to the extent that the plaintiffs' claim is, can be

14  either -- and as Your Honor's well aware from the levee breach

15  cases that we're dealing with, the question of what is covered

16  and what is not covered under the homeowner's policy, you know,

17  turns, can turn on -- and it's certainly being argued by others

18  -- that the flood is a covered loss under the homeowner's

19  policy.

20          THE COURT:  I don't think Mr. Mayeaux's arguing that

21  in his complaint.

22          MR. MAYEAUX:  I am not, Your Honor.

23          MR. LEE:  And I'd like to make sure if I --

24          THE COURT:  It's certainly being argued by many

25  others.  This is true.

1          MR. LEE:  And I certainly want to make sure, Your

2     Honor, that I understand from the plaintiffs' counsel if what

3     he is saying is that if there's a ruling by Your Honor on, that

4     goes the other way and says that flood is covered by the

5     homeowner's policy, that he's not seeking the recovery.  He's

6     not -- he doesn't want that recovery.  Because --

7          THE COURT:  Well, if he amends his complaint, that

8     would be another paper.  You might be able to remove it again.

9          MR. LEE:  His complaint simply says, "You owe me for

10    the damages that's covered by the policy."

11         THE COURT:  I'm saying but if he amends his complaint

12    to make that claim -- let's say I make that ruling -- then,

13    then, then you have a right to remove it here maybe again under

14    1369, if I find 1369 is applicable to even levee breaches,

15    which we're going to discuss a lot later on.

16         MR. LEE:  Well, Your Honor, as I said, I think that,

17    essentially, he's alleged a right to recover and to the extent

18    that any theory for recovery under the homeowner's policy is at

19    issue, then that still --

20         THE COURT:  All right.

21         MR. LEE:  -- brings into question whether or not the

22    flood damage is covered by his homeowner's policy.

23         THE COURT:  All right.

24         MR. LEE:  And if -- if he's -- if he -- we -- as I

25    said, if he's stipulating he doesn't want any, a piece of that

 1   and his view is that the flood is not covered, then I'm, that's

 2   a different question and --

 3           THE COURT:  Right.

 4           MR. LEE:  But I still think that we've got the Valued

 5   Policy --

 6           THE COURT:  I understand --

 7           MR. LEE:  -- Law issue as well --

 8           THE COURT:  I understand that.

 9           MR. LEE:  -- and how it ties in.

10           Now with respect to the misjoinder, Your Honor, it's

11   basically simple.  We've got a claim against the agent, which

12   they say is because, "You didn't properly advise me on what

13   policy, on policy limits."  And you've got a separate claim

14   against State Farm with regard to, you know, the handling of

15   the claim, how much was -- the adjuster who came out 18 months,

16   as he says, after, after the agent ever advised about, about

17   homeowner's, or flood coverage and handled and adjusted the

18   claim and inspected it and made determinations as to what was

19   covered and what was not, what the scope was, what the price

20   was, and then said, "This is how much we owe you."

21           They're not connected.  Whatever the agent -- whatever

22   the agent did is independent.  It's not joint liability.  It's

23   not solidary liability.  There's no allegation of conspiracy.

24   There is no interdependence on the liability of the agent for

25   State Farm.  The agent isn't the least bit involved in the

1   adjustment of the claim.  The adjusters aren't involved in

2   advising about what coverage to have.  They are -- they're

3   totally separate and apart.

4          THE COURT:  So you say there's not a palpable or real

5   connection.  I'm using the words that the courts have been

6   using about this.  There is not a palpable or real connection

7   between the claims and the parties joined?

8          MR. LEE:  Exactly, Your Honor.

9          THE COURT:  Now I would have to disagree, as I have

10  done on other occasions, with my colleagues, apparently,

11  according to Mr. Mayeaux and according to, I think, Judge

12  Lemmon on September 6, Judge Zainey on May 16th.

13         MR. LEE:  There are some cases -- in most of these

14  cases, Your Honor --

15         THE COURT:  Okay.  And you --

16         MR. LEE:  And most of the cases that we've been --

17         THE COURT:  And it's okay for you to say that they're

18  wrong because I might agree, too, but you think there are

19  distinctions.

20         So go ahead.

21         MR. LEE:  Oh, I think -- one of the things I think is

22  distinguishable, Your Honor, is most cases, including cases

23  that Mr. Mayeaux has that I've been involved in, there's also

24  an allegation that the company is liable for the acts of the

25  agent as opposed to a complete distinction between liability on

1   the part of the agent for his advice or failure to advise on

2   coverage versus the liability of the company for adjusting the

3   claim.

4           They're totally separate and apart.  Now what -- and

5   we disagree that the, as to whether or not the company can be

6   liable for --

7           THE COURT:  Oh, of course.

8           MR. LEE:  -- the acts of the independent agent, but

9   that's -- but there is that allegation in the other cases.

10  That is not present in this case.

11          And so you really do have a situation where the

12  liability is totally separate and apart and not connected in

13  any way, shape, or form.

14          The acts took place at different times.  They are --

15  they come out of different responsibilities and obligations and

16  case law for analysis, the statutory obligations that are being

17  addressed, and the claims against the adjusters in the handling

18  of the claim and they're totally separate items.

19          THE COURT:  You don't think there are any questions of

20  law or fact common to, that would overlap?

21          MR. LEE:  No, Your Honor, I don't.

22          THE COURT:  You can't come up --

23          MR. LEE:  I mean, one's -- he's suing the agent

24  because, "You didn't tell me about flood coverage."  He's

25  telling -- he's suing me -- he's suing State Farm now, he says,

1   "I'm talking about the roof coming in and the rain" --

2         THE COURT:  "You didn't pay me enough under my

3   homeowners."

4         MR. LEE:  -- you know.  So yeah, "You didn't, you

5   didn't properly adjust my claim."  And they're entirely

6   separate issues.  Separate policies, separate issues, separate,

7   separate duties, separate responsibilities, separate law

8   governing the liability under those, under those circumstances.

9         So under those facts, Your Honor, I believe that there

10   are, there is a misjoinder and, you know, there -- you -- we

11   did cite the, you know, the Dormeaux (phonetic) case in which

12   there's, in our memorandum, where the liability was even a

13   little, I think a little more connected where they at least

14   were saying the insurance company is liable for the, for the

15   situation, for the damages that were caused by the failure of

16   Jefferson Parish to operate the levee, to operate the pumps and

17   so the damage is the same.

18         Well, we're not even talking about the same damage.

19   We're talking about, as he says, flood damage versus wind

20   damage and they're totally separate, separate and apart.  And

21   under that circumstance, the court held that there was a

22   misjoinder and denied the remand of the case.

23         So, Your Honor, I believe that under these factual

24   scenarios under what they've alleged, there is a misjoinder.

25   There is no palpable basis for liability that would be the

1   same, and we would move for, that the motion be denied.

2          THE COURT:   Thank you, Mr. Lee.

3          I'll give you a few minutes on the misjoinder issue,

4   sir.

5          MR. MAYEAUX:   Your Honor, the --

6          THE COURT:   He's saying that the agent, that you're

7   not seeking vicarious liability.   So two independent bases for

8   liability, so how, how do they overlap?

9          MR. MAYEAUX:   They overlap because they arise -- all

10  the damages at issue flow from one event.   It just so happens

11  that the obligations of State Farm under the wind policy were

12  triggered and occurred at the time of the hurricane and

13  following.   And the obligations of the agent temporally

14  occurred at a different time previously.

15         But all of it, all of it accrues or comes into being

16  when the damage occurs.   And the damage occurred at one

17  property at the same time.   We're dealing with the nature and

18  scope of that damage, how much of it is covered by wind and how

19  much of it, how much of that damage is going to be covered by

20  the agent for breach of the fiduciary duty.

21         So the -- there is -- the palpable connection and

22  they're common issues across the board with respect to damages.

23  There may be some discrete differences in the legal obligations

24  and how we analyze them, but everything's going to come down to

25  how much damage is there to this property and how are we going

1  to divvy it up between the agent and State Farm as the wind

2  coverage provider.

3          They're both going to be integrally involved in

4  sorting out the amount of damage and who's responsible for it.

5  It should be done in one forum.

6          THE COURT:  Okay.  I understand.

7          Thank you, sir.

8          All right.  Next case.

9          MR. PENDERGAST:  Good morning, Your Honor.  Gary

10  Pendergast for the Chamberlains.

11          Till about a month, month and a half ago, I had never

12  heard of the MMTJA and then all of a sudden all these removals

13  started to come in, and I've tried to learn a little bit about

14  it.  I'm not so sure how much I can assist the Court this

15  morning.

16          Chamberlains is a pure MMTJA case.  That's the only

17  basis cited by the defendants for removal and interestingly,

18  the Chamberlains lived at 6229 Bellaire Drive, which is about a

19  block north of the 17th Street Canal breach.

20          THE COURT:  I think -- I think Chamberlain may be one

21  where the basis that -- the basis is that -- no, no.  They

22  allege a piggyback --

23          MR. PENDERGAST:  The piggyback.

24          THE COURT:  -- on Abadie.  Yeah, okay.

25          MR. PENDERGAST:  And I -- Judge, I have all sorts of

 1   problems with Abadie.  I know Joe Bruno very well.  I know what

 2   Joe did in terms of bringing Abadie into the Eastern District

 3   of Louisiana.

 4         THE COURT:  Of course, it's also brought under the

 5   Class Action Fairness Act.

 6         MR. PENDERGAST:  Right.  I think that's a problem.

 7   Jurisdiction in that case, to my knowledge, has not been

 8   challenged.  It's not been questioned and what all of these

 9   defendants have done is simply say, "Okay.  Because Abadie is

10   here and jurisdiction has not been challenged" --

11         THE COURT:  If Abadie could be -- it's clear.  If

12   Abadie could be brought under 1369 and if -- if -- if -- (1) if

13   that is true and if your case is related to Abadie

14   sufficiently, then --

15         MR. PENDERGAST:  The problem --

16         THE COURT:  -- the piggy-back jurisdiction applies.

17         MR. PENDERGAST:  But that gets back to the question of

18   what's an accident.

19         Clearly, Judge, a hurricane cannot be an accident.  A

20   hurricane's a weather event that encompasses thousands and

21   thousands and thousands of different incidents and accidents as

22   the storm comes ashore.

23         Just with Hurricane Katrina, there were over 20

24   breaches in the MR-GO.  There were three in the Industrial

25   Canal; two in London Avenue.  A bolt of lightning may be an

1   accident within a hurricane.  A hurricane is not an accident.

2          In this case, the accident that destroyed the

3   Chamberlains' home was the breach in the 17th Street Canal,

4   pure and simple.

5          The defendants then have to -- let me get to the 75

6   deaths in a discrete location.  I have no idea what a discrete

7   location means.  My petition deals with only 6229 Chamberlain

8   Street (sic) and thank God, no one died there.

9          What a lot of these defendants have done -- I don't

10  remember if it was done in this case -- is they're attaching

11  death lists to their notices of removal.  I presume they're

12  getting these from coroner offices.  Not all of those people

13  died as a result of some incident occurring within Katrina.

14  There's suicide victims.  There's heart attack victims.  At

15  what point do the defendants have the responsibility for

16  demonstrating the 75 deaths in a discrete location?  They

17  haven't done it in this case.

18          THE COURT:  That's an interesting question.  And

19  something I was thinking about last night is, you know, I don't

20  regard -- we could argue.  This really gets -- that overtopping

21  is not an accident.  It just occurs.

22          MR. PENDERGAST:  Correct.

23          THE COURT:  We can argue that a breach is an accident

24  occurring from a natural event.  We could argue that based on

25  just the language without getting too much into legislative

1   history.

2          But then you -- you -- you -- if the 17th Street Canal

3   is the accident, first you get to the question -- and we're

4   going to be discussing this as we go along -- is, is each levee

5   breach a single accident?  Does it really conform to the

6   legislative history of and the intent of the statute?

7          Let's -- let's, for the sake of argument, say that it

8   is.  Then did 75 people die as a result of the 17th Street

9   Canal breach at a discrete location?  That is, I guess, where,

10  or did they die from a combination of overflooding, of

11  overtopping and breaching?  I don't know the answer to that

12  now.  So I am --

13         MR. PENDERGAST:  Or did they die of natural causes or

14  did they --

15         THE COURT:  I don't know.

16         MR. PENDERGAST:  -- take their own life?

17         Judge, I had a client who lived in St. Bernard Parish

18  who shot herself as floodwaters were coming into her home.  She

19  left a note to that effect.

20         Now is that one of the 75 discrete deaths that we, in

21  a discrete location that we have to deal --

22         THE COURT:  So you're wondering what the burden is of

23  the removing party to establish that, in fact, (1) does the

24  single accident -- and I think they're going to argue that all

25  the breaches are a single accident resulting from a naturally

1   occurring event.  I think they're going to argue that.

2          MR. PENDERGAST:  Well, what they've argued in all of

3   their notices of removal is that --

4          THE COURT:  Right.

5          MR. PENDERGAST:  -- Hurricane Katrina's the accident

6   and clearly --

7          THE COURT:  Yeah.  Well -- well, Hurricane Katrina is

8   only the natural event.  It must occur -- an accident must

9   occur therefrom.  And so at best, let's say that the levee

10  breaches are the accidents.  Then we put it under the statute:

11  (1) there are more than one levee breach, as you pointed out,

12  and (2) are you saying that it's their burden to show that 75

13  people died, who died, at a discrete location, whatever that

14  may be.

15         I don't know if St. Bernard is discrete from Orleans,

16  or if the Ninth Ward is discrete from New Orleans East.  I, you

17  know, we're all sort of treading water here.

18         MR. PENDERGAST:  But, Judge, they clearly are separate

19  and different events, the mechanics of each levee breach, the

20  London Avenue Canal.

21         THE COURT:  So you think they're not combinations of

22  law and fact?

23         MR. PENDERGAST:  Of course not.  You have this, the

24  incident at the Industrial Canal where there's some evidence

25  that a barge came through.  Now did the barge knock the levee

1    wall down, or did it come through after?  If the barge came

2    through first, how many people did that kill?  That's the

3    burden of the defendants in these removals to prove that and,

4    Judge, quite frankly, they can't do it.  There's no possible

5    way they can do that.

6              And for that reason alone, these cases should be

7    remanded to state court.

8              One, just one final point, and I'm not sure I'm

9    correct in this.

10             We filed a supplemental memo in this case regarding a

11   procedural deficiency.  Mr. Nance (sic), who's the agent in

12   this case, was served, according to the sheriff's office in

13   Orleans Parish on September the 12th.  I don't know if he's

14   joined in or consented to the removal by this time.  He

15   certainly didn't consent to it within the 30 days that he had

16   to consent.

17             So I would urge that as another basis for remand.

18             Thank you, sir.

19             THE COURT:  All right.

20             I think it might be best, because these two arguments

21   are very similar, if we hear both of these and then we hear

22   from the defendants.

23             This is going to be the first case that I know of that

24   some court -- because I'm going to do it on this one -- is

25   going to have squarely deal with 1369 and Hurricane Katrina and

1  acts.  We've -- we've -- we've -- "we," the Eastern District,

2  so far as I know, have danced around it, but not had to

3  squarely confront it.  And I -- I -- it may be time for that

4  confrontation now.

5          Go ahead, sir.

6          MR. CANNELLA:  May it please the Court, Your Honor, my

7  name's David Cannella.  I'm here on the Case case, 06-7390.

8          I pretty much laid everything out that I wanted to say

9  to the Court in my memo.  There was a few things that I wanted

10  to highlight to the Court as to why --

11          THE COURT:  Sure.

12          MR. CANNELLA:  -- I believe my case should be remanded

13  back to state court.

14          No. 1, I've tried to do my due diligence, but things

15  are flying pretty fast out of the Eastern District as far as

16  opinions regarding removals and remands.

17          THE COURT:  Not here, unfortunately.  It's been a

18  little slow here, but go ahead.  We've been working on one for

19  about a month, but go ahead.

20          MR. CANNELLA:  But as an officer of the court, I do

21  want to represent to you that I've done my due diligence and

22  I've not seen a single case come out of the Eastern District

23  under my fact pattern where there was a couple in Lakeview

24  where the exclusive basis for being removed up to here was the

25  MMTJA where there was no diversity and the Court kept it.  All

1  those cases have been sent down.

2         Now there's various nuances, and I think you've hit on

3  -- eventually, you're going to have to address it and that's

4  why we're here today -- but what I'm representing to you is

5  that, by and large, the vast majority of cases where this issue

6  has been nipped and, you know, glancing discussed, etcetera,

7  they all get sent back to state court.  Okay.  That's No. 1.

8         No. 2, in my particular case the alleged accident is,

9  No. 1, the 17th Street Canal breach.  We don't mention anything

10  about MR-GO.  They don't mention anything about any other

11  breaches anywhere, London Avenue, etcetera.  It's strictly the

12  17th Street Canal breach.  And that gets to both the

13  accident -- because what they define the accident as is 17th

14  Street Canal breach plus Hurricane Katrina equals accident

15  under the statute.

16         That hits on what you were talking with Mr. Gary about

17  as far as, you know, what is the accident?  Well, they're just

18  talking about the 17th Street Canal.

19         No. 2 is their burden of proof regarding the discrete

20  location and the 75 deaths.  There was no showing in their

21  removal that there were 75 deaths based on the 17th Street

22  Canal breach and, you know, at the end of the day, Judge, my

23  case is I sued my homeowner, the homeowner's for a house on

24  Brook Street.  The sum total of the allegation is, "You didn't

25  pay us the full extent of the wind damage and all claims

1 | arising out of the wind damage."

2 | THE COURT:  I thought you also have an argument that

3 | the, an issue that's in my court that we're about to rule on in

4 | the next few days, hopefully -- we've been working on quite

5 | bit -- is whether the flood exclusion -- now it depends on the

6 | policy -- but whether the flood -- I mean, what I say is there

7 | are many different policy languages -- but whether the flood

8 | exclusion applies and because of that you say that the levee

9 | breach was a negligent act and therefore, I'm -- and the flood,

10 | the water damage exclusion -- not the flood exclusion -- the

11 | water damage exclusion and your homeowner's policy covers it

12 | because it's an act of negligence.

13 | I think you did make that allegation, did you not,

14 | sir?

15 | MR. CANNELLA:  I think the allegation that I made is

16 | that if, if the combination of floodwaters and wind event

17 | total, you know, created a total loss -- and that kind of hits

18 | on the Valued Policy allegation in my petition -- that if the

19 | combination of those two, then I still get coverage under the

20 | homeowner's.

21 | I do -- I don't believe I alleged any negligence on

22 | the part of the levee board or --

23 | THE COURT:  No, no.  I'm not saying on the part of

24 | those.  Let me, let me look at your complaint.

25 | And, Ravi, if you could help me find his complaint.

1          MR. PENDERGAST:  Here it is, Your Honor.

2          THE COURT:  We're getting it right up here.  We'll

3  have it.

4          MR. CANNELLA:  Do you know what paragraph you're

5  referring to?  Oh, I have it.

6          MR. PENDERGAST:  It in regard to --

7          MR. CANNELLA:  I thought you knew what -- I thought

8  you were pointing to a particular paragraph.

9          THE COURT:  "A declaration by this Court that the

10  subject's flood exclusion is not applicable and ambiguous."

11  So --

12          MR. CANNELLA:  Okay.  You're just -- okay.  I see what

13  you're saying --

14          THE COURT:  Right.

15          MR. CANNELLA:  -- just to the flood exclusion.

16          THE COURT:  And so that would mean that one would

17  argue that then that implicates a levee breach.  They're

18  alleging the accident's a levee breach and if it couldn't be

19  brought, perhaps -- and I think -- let's -- it -- let's say

20  they removed your case under (a) and (b), 1441(e)(1)(A) or (B),

21  that -- that -- we're probably talking about (B) --

22          MR. CANNELLA:  Uh-huh.  (Indicating an affirmative

23  response)

24          THE COURT:  -- if it piggybacks through a case where

25  they have defended here.

1      MR. CANNELLA:  Right.

2      THE COURT:  And what they're saying is it relates to

3  the accident, namely, a levee breach.  And so that's what

4  they're, that's what the argument is.

5      MR. CANNELLA:  In fact, Judge, it can only be the

6  piggy-back prong because there's no minimal diversity in this

7  case.  ANPAC Louisiana is a Louisiana --

8      THE COURT:  And I tend to agree with you.

9      MR. CANNELLA:  -- insurance --

10      THE COURT:  We're talking about the piggy-back prong.

11      MR. CANNELLA:  Yes, sir.

12      THE COURT:  So (1) then that analysis means could the

13  case upon which they're piggybacking been brought here under

14  1369 and then (2) is it sufficiently related to your case where

15  it should be brought up?

16      MR. CANNELLA:  The sufficiently related, I think what

17  I would like to point out is that --

18      THE COURT:  Well, I supplied the word "sufficiently."

19      MR. CANNELLA:  Well, you -- I --

20      THE COURT:  The statute doesn't say it.

21      MR. CANNELLA:  Right, right.

22      THE COURT:  Go ahead.

23      MR. CANNELLA:  No.  Yes, sir.  You -- I appreciate

24  that.

25      I think all that I'm trying to say, Judge -- and I'm

1   going to sit down after I say this -- is that, you know, the

2   cases, or the case where the MMTJA comes up is the fire in the

3   nightclub a discrete location, or a bus crash like the Custom

4   bus crash that we had on Mother's Day about five or six years

5   ago right there by the Pan-Am building, Pan-Am stadium, or a

6   plane crash, something like that.  As far as I know, no one

7   died at 209 West Brook in Lakeview, which is the subject

8   property here.  And they haven't even shown the Court that 75

9   people died within a ten-block area, much less, you know, where

10  the subject property is.

11         And I'm just saying the burden's on them to show you

12  that jurisdiction exists.  That hasn't been shown here, Judge.

13  It may very well exist.  It's not in these pleadings.

14         THE COURT:  Thank you, sir.

15         MR. CANNELLA:  Thank you, Your Honor.

16         THE COURT:  Okay.

17         Good morning, Mr. Johnson.  I know we had this,

18  somewhat of a discussion in the Flint case.  We were hoping to

19  get enlightenment from the Court of Appeal, but we didn't.

20         So here we are.

21         MR. JOHNSON:  Thank you, Your Honor.  I hope to

22  suggest to you some ways where we might invite your colleagues

23  on the Fifth Circuit to help us out with this.

24         Austin Johnson and Andy Plauche on behalf of Farm

25  Bureau.  And thank you, Your Honor, for taking time to give us

1   a chance to help you resolve this difficult question.  I know

2   you got plenty of other things to do, and I hope that we'll add

3   to your understanding today.

4           It's interesting to me, indeed pleasing to me, that

5   there's actually a fair amount of common ground here, it

6   appears to me.  Several of the lawyers who've been up here on

7   the plaintiffs' side of the cases have said, if I took the

8   notes correctly -- and I think Mr., my colleague, Mr.

9   Pendergast, said this -- that the accident in Chamberlain was

10  the breach in the 17th Street Canal, which, of course, that's

11  been our position ever since you and I had this dialogue in the

12  Flint case and you expressed your view that the hurricane could

13  not, itself, be the accident.

14          I don't necessarily agree with that, and I don't want

15  to go into that because that's not the ground on which we were

16  moved here.

17          THE COURT:  Yeah, because then -- I'm not changing on

18  that because --

19          MR. JOHNSON:  I understand, but I do want to just

20  point the Court -- and I may be wasting my time with that --

21  but remember, that there are two pieces to the definition of

22  accident and one of them is "a natural event culminating in an

23  accident," which, of course, doesn't help you because it

24  doesn't define accident.

25          THE COURT:  But you're -- you're -- you're -- it's

 1   sort of a solecistic thing --

 2          MR. JOHNSON:  But --

 3          THE COURT:  -- that the hurricane itself is the

 4   accident.

 5          MR. JOHNSON:  I understand, but they threw in --

 6          THE COURT:  I don't --

 7          MR. JOHNSON:  -- "natural event" for a reason.  But

 8   I'm not going to press that point.

 9          THE COURT:  Right.  They threw in "natural event,"

10   according to legislative history, if you get specific,

11   according to, when you go back to 1990 because they said, well,

12   a bridge might be eroding and then the bridge would collapse

13   and eroding over time.  They certainly weren't contemplating --

14   nobody in the Congressional History mentioned hurricane.

15          So for whatever illumination the Congressional History

16   gives us, which is over a period of 10 to 12 years with gaps,

17   because this thing took a long time from the time it was, it

18   was conceived as, perhaps, a bill till the time it actually

19   became law --

20          MR. JOHNSON:  Very true.

21          THE COURT:  -- as you well know.

22          MR. JOHNSON:  Very true.

23          Well, let me just say then, Your Honor, I think we are

24   all focused, at the moment, anyway, on the same, on the same

25   point, which is, is the levee break on the 17th Street Canal.

1   And I'm speaking now specifically to Chamberlain.  That's what

2   Mr. Pendergast has already said and I agree with him, that if

3   it's going to be an accident, it's going to be the 17th Street

4   Canal.

5          Now let me just say that there is an additional issue

6   in Chamberlain, Your Honor, that is a part of our discussion

7   that I don't want you to lose sight of and that is there is a

8   claim for relief under federal law in Chamberlain.  And that's

9   quite important, and I'm going to --

10          THE COURT:  Okay.  Let's look at the complaint.

11          MR. JOHNSON:  It -- at -- it's --

12          THE COURT:  I know the word -- I know the word --

13          MR. JOHNSON:  It's in Paragraph 8, Your Honor.

14          THE COURT:  Yeah.  I remember, I remember seeing it.

15          MR. JOHNSON:  Well, maybe I -- Paragraph 13 might be.

16   I didn't mean to speak too quickly.

17          THE COURT:  Okay.  Let me --

18          MR. JOHNSON:  It's Paragraph 13, Your Honor.

19          THE COURT:  All right.  Let me get the right

20   complaint, and I'll have it outlined.

21          MR. JOHNSON:  And that -- it's the -- Chamberlain is

22   the only case --

23          THE COURT:  Right.  It says --

24          MR. JOHNSON:  -- of the three that I've heard in which

25   that's true.

1          THE COURT:  -- attorney's fees -- penalties --

2          MR. JOHNSON:  "Penalties and attorney's fees under

3  applicable provisions of state and federal law."

4          THE COURT:  Of course --

5          MR. JOHNSON:  Now I --

6          THE COURT:  -- we all know there are no provisions

7  under federal law for attorney's fees.  But, anyway.

8          MR. JOHNSON:  I understand that.

9          THE COURT:  Right.  Right.

10          MR. JOHNSON:  And -- at least we think that's the

11  case.

12          THE COURT:  Right.

13          MR. JOHNSON:  But, of course, a meritless claim under

14  federal law doesn't mean you don't have jurisdiction --

15          THE COURT:  This is true.

16          MR. JOHNSON:  -- to adjudicate the issue.

17          THE COURT:  This is true.

18          MR. JOHNSON:  So I don't want us to lose sight of that

19  because if, in fact, Your Honor is interested in trying to

20  invite your colleagues on the Fifth Circuit to deal with this,

21  I'm going to suggest a way that that may be, that may be

22  instrumental in doing that.  And Your Honor's seen that

23  allegation, so you know what my argument would be with respect

24  to that.

25          THE COURT:  Right.

1          MR. JOHNSON:  I don't think I really need to go into

2     that --

3          THE COURT:  Right.

4          MR. JOHNSON:  -- in great detail.  But since a lot of

5     the discussion has been on the accident, let me, let me try to

6     put this in some perspective.

7          First of all, there's been a lot of discussion in all

8     of these cases, I think, about the meaning of accident and the

9     meaning of discrete location.  We're all floundering around for

10    what the Congress may have meant because it didn't really help

11    us very much with the definitions that they gave.  In the case

12    of discrete location, they didn't give one at all.

13         I think you can only interpret these, Your Honor, in

14    the context of what must have been the congressional objective

15    with this legislation.  We all agree that the legislation is

16    very strange.  It is a radical departure from everything we

17    have known about federal subject matter jurisdiction.  I don't

18    need to tell the Court that.  It abandons, for this purpose,

19    complete diversity and that's been talked about for decades and

20    it's the first time I'm aware that the Congress has done that.

21         It has permitted, under this piggy-back provision that

22    has been referred to, it has permitted the removal of cases

23    over which the Court would never have had original subject

24    matter jurisdiction, which is a radical departure from

25    everything we know about removal.  Those are two major, radical

1  changes to this structure.

2      It seems to me that it can only be, in the face of

3  that, that the Congress must have intended for this to serve a

4  purpose, and we are at the crossroads of that purpose and that

5  is are we going to try to get into this a single system, not

6  necessarily a single case, but a single system all of the

7  events that have flowed from a given accident?

8      Now the fact you say, well, maybe there are multiple

9  levee breaks and those could be multiple accidents.  I don't

10 think that that would lead you to rule in the Chamberlain case,

11 for example, that the statute doesn't apply to the Chamberlain

12 case.  If there are other incidents, they don't all have to be

13 a single accident.  We're talking about the breach in the 17th

14 Street Canal.

15     THE COURT:  Well, I'm going to read to you -- we know

16 what the statute says.  The statute says -- by the way, it's

17 another interesting aspect we'll talk about a little later --

18 but we know the statute says single accident.  Now does that

19 mean that the -- so why, why didn't -- (1) we could ask the

20 question, why didn't the statute say a naturally occurring

21 event resulting in accidents?  It says a single accident.

22     So I'm not sure what that means, but I'm just reading

23 you from, reading to you from an article on the, by Laura

24 Offenbacher.  You may have read it.  23 Rev. Litig. 177.  And

25 I'm just, I'm picking a paragraph at random, which -- but --

1   not at random, but one paragraph:

2              "Overall, the general provision is well drafted to

3              limit its application to a specific single accident.

4              Drafting changes to tighten the language as well as

5              express congressional intent to cope with only certain

6              types of accidents make the general provision one that

7              will properly apply to accidents, such as airplane

8              crashes, train wrecks, and other catastrophes.  The

9              removal amendment appropriately allows defendants to

10             remove actions from state to federal courts in order

11             to keep all claims arising from the accident in the

12             same action.  The general provision effectively

13             restricts minimal diversity on the intended narrow

14             class of cases."

15        What is -- what is, you know, is it a specific single

16   accident?  Here, we have, my goodness, they're not common

17   questions of law and fact from the MR-GO to the alleged failure

18   mechanism of the various flood control projects to simple

19   overtopping.  There's so many combinations and permutations

20   here, that's, that's one of the things I'm struggling with.

21        MR. JOHNSON:  But as you've already observed, Your

22   Honor, the piggy-back provision if we call -- we all know what

23   we're talking about, (e)(1)(B) --

24        THE COURT:  Right.

25        MR. JOHNSON:  -- does not talk about common questions

1   of law and fact.  It does not talk about substantial.  It

2   simply says, "arises from the same accident."

3         Now if, in fact, what Abadie is about, in part -- and

4   we all think that it is -- about the levee break at the 17th

5   Street Canal, among others --

6         THE COURT:  We do.

7         MR. JOHNSON:  -- and Mr. Pendergast has already told

8   us that his case is about the break in the 17th Street Canal,

9   that's the congressional touchstone under 1441(e)(1)(B).  We're

10  all putting other things into it.  You did it.  I've done it,

11  but that's not what it says.  It says, "arises from the same

12  accident," and I'm trying to focus this on the Chamberlain

13  case.  We can't decide all those other cases today.  We can

14  only decide -- I mean, these other two you can -- but all those

15  others you've talked about.

16        And let me point one other thing about this single

17  accident business -- two things:

18        First of all, going back to the "definition" -- and

19  I'll put that in quotation marks because I don't think it's

20  much of a definition of accident and I don't think you do,

21  either -- but if you take up "natural event culminating in an

22  accident" out of the "definition" of accident and you put it up

23  there where it says "single" -- it's in the first part of 1369

24  -- you get a single natural event culminating in an accident.

25        Now we know this was a single natural event.  We all

38

1  could agree to that.  It's a single natural event and that's

2  what they tell you.  You can go back to the accident part and

3  plug that in, that's what it says, "single natural event."

4          THE COURT:  Well, that's -- that's a -- that's --

5  we -- I thought about that, obviously, whether the, whether you

6  say the single event was the, was the, was the hurricane and,

7  therefore -- but the way the statute reads -- and talk to me

8  about this.  Let me --

9          MR. JOHNSON:  Well, let me, let me give you my second

10 point on that, Your Honor, so we don't lose that thought.

11 Under sub (3) --

12         THE COURT:  It says that "arises from a single

13 accident."

14         MR. JOHNSON:  Which could be single natural event

15 culminating in an accident.

16         And the other thing, look at (a)(3), Your Honor, which

17 is one of those threshold criteria.  It talks about one of the

18 ways to make 1369 apply is if substantial parts of the accident

19 took place in different states.

20         THE COURT:  Well, the legislative history goes to that

21 like a plane --

22         MR. JOHNSON:  Sure, but --

23         THE COURT:  -- because it's traveling.  I mean, that's

24 what, that's what, really, we're talking about.

25         MR. JOHNSON:  But the, what the words say is, Your

1    Honor, different parts of an accident could have started in

2    different states.

3          My point is that accident may not be, given the

4    language in the statute, quite as narrow as the commentators

5    might have thought that it would be.  But again, I don't want

6    us to lose sight of the congressional objective, the context of

7    the radical changes.

8          This is so unusual that it has to be that they're

9    trying to get us to a place where the various issues of

10   causation and legal consequences I've pointed out in my brief

11   could at least be in one place that we find out, okay, what did

12   happen?  Was it overtopping?  Was it, in fact, a case that the

13   17th Street Canal, given the hydrology or whatever it is of New

14   Orleans, that that would have eventually flooded the whole

15   place whether there were any other breaks in canals.  We don't

16   -- I mean, as you said, "I don't know" -- that's your quote --

17   I don't know, either.

18         And so what the plaintiffs are asking you to do is to

19   assume that all that didn't happen and we're getting the cart

20   before the horse.  Because there's supposed to be a judicial

21   forum where we do that, and I think the Congress has told us,

22   much as we in the Eastern District -- I'll adopt myself for

23   today -- may not like the workload that's produced by that.

24   The Congress meant something by this.  And at the rate we're

25   going, it's going to be that virtually nothing comes here under

1  1441(e)(1)(B) if we're going to be so tight about the

2  definition of accident.

3        Now you and I both hoped when we were here arguing

4  Flint that your colleagues on the Fifth Circuit would give you

5  some help.  I still would like to see that happen, and I

6  suspect all of you would like to see that happen.  Let me just

7  suggest a couple of dispositions here that I think might help.

8        Obviously, if I'm standing at this podium in

9  opposition to this motion, I want you to just deny the motion

10  and the case goes forward.  I mean, the fact that I don't

11  discuss that any further doesn't mean that's --

12        THE COURT:  Certainly.  Your -- your --

13        MR. JOHNSON:  -- what I want.  That --

14        THE COURT:  Obviously, your first -- your first --

15        MR. JOHNSON:  That's my first choice.

16        THE COURT:  -- your first and most --

17        MR. JOHNSON:  That's my first choice.

18        THE COURT:  -- adamant argument is that there's

19  clearly jurisdiction under 1369 and therefore --

20        MR. JOHNSON:  I would love for you to write an --

21        THE COURT:  -- I should deny --

22        MR. JOHNSON:  -- erudite opinion that --

23        THE COURT:  --remand.

24        MR. JOHNSON:  -- resolved all of that, you know.

25        THE COURT:  And -- and --

```
 1              MR. JOHNSON:  And that's appealable, but it's only
 2   appealable at the end of the case, which you could move the
 3   case along and try to get it appealed.  Well, that's not a
 4   swift determination, but it is a sure determination.  Because
 5   that's an appealable disposition, and I know you know that's
 6   what, that's my first choice.
 7              The second choice would be that you would, that you
 8   would, in fact, deny the remand, but you would certify the
 9   question under 1292(b), 28 U.S.C. 1292(b).  I think you can do
10   that.  What's -- the problem with that is, of course, as you
11   know, the Fifth Circuit doesn't have to hear it.
12              THE COURT:  No question.
13              MR. JOHNSON:  Now they might, and I think they should.
14   And I'll do my part, you know, in trying to help that happen,
15   but if you're going to deny the remand, I would urge you to
16   certify that question under 1292(b).
17              THE COURT:  I would be inclined to do that.  If I deny
18   the remand, I would definitely be inclined to --
19              MR. JOHNSON:  Right.
20              THE COURT:  -- certify the question.
21              MR. JOHNSON:  Because, as you know, granting the
22   motion to remand --
23              THE COURT:  Now that --
24              MR. JOHNSON:  -- can't be certified.
25              THE COURT:  No question about that.
```

1          MR. JOHNSON:  Okay.  So we're all on the same page.

2          Now the last disposition that I would suggest to you

3   is that if you're going to remand the case -- Chamberlain I'm

4   talking about, in particular -- that you remand under 1441(c)

5   and 1367(c) on supplemental jurisdiction.  Because you can

6   focus on the claim under federal law and say there's a federal

7   question here and under 1441(c), you can exercise your

8   discretion not to hear the rest of the case, "non-removable

9   parts," and remand those back for consideration by the state.

10  You're aware of that.  You know how to do that.

11         The good part about that is that's an appealable order

12  because it's not a 1447(c) ground and that's pretty well

13  recognized.  And I would suggest that to you as another

14  possibility.

15         THE COURT:  I -- you know, we may be -- we may be --

16  on the cases that I have, the large cases, not the single

17  cases, apparently the only -- the basis -- that are filed here

18  directly -- could be definitely taken up where I'm not the

19  Supreme Court, in essence, on a remand.  There hasn't been a

20  challenge because there are, other bases for jurisdiction have

21  been alleged, CAFA, federal questions, etcetera.

22         So I don't know if I'm going to have those.  So it may

23  have to -- you may be right -- it may have to come from a case,

24  a single case.

25         MR. JOHNSON:  Well, and I'm just trying to help us all

1  get some -- we're all, you know, the counsel on both sides, the

2  judges here, everybody's spending a whole lot of time --

3          THE COURT:  I agree.

4          MR. JOHNSON:  -- on an important, but, nonetheless,

5  threshold issue about, okay, who's going to hear your case?

6  And I know the plaintiffs are frustrated with that.  The

7  defendants have a right to this forum, if the statute is read

8  the way we think.  So, I mean, we don't need to go through all

9  that.

10          I will say, Your Honor, that on the point of my most

11  preferred remedy, remember that in -- and I went over this in

12  considerable detail in the opposition to the motion to

13  remand -- the recitations in Abadie are, as you well know,

14  extremely broad and assert the same kinds of causal issues,

15  levee breaks and all that, and that's what this case is about.

16  I picked -- I picked 13 -- I mean, 8 before because I wanted to

17  read 8.

18          Paragraph 8 in the Chamberlain state court petition

19  says:

20          "Much of the damage to plaintiffs' home was caused by

21          water entering the city," beginning on such such a

22          date, "due to the breaches in the floodwalls along the

23          17th Street Canal."

24  That's their allegation.

25          So if the measurement under the federal statute is,

1    does it arise out of the same accident and if the 17th Street

2    Canal is an accident, the natural event culminating in that

3    accident, I don't see how you keep from doing this.

4            THE COURT:  Now did Judge -- Judge Lemelle rendered an

5    opinion -- again, I'm assuming you disagree with it -- but you

6    may want to distinguish it.  Are you familiar with that

7    opinion?

8            MR. JOHNSON:  Well, there've been a number, but I,

9    when you were talking about that before, I --

10           THE COURT:  He talked about discrete -- he talked

11   about discrete location and single accident.

12           MR. JOHNSON:  Right.  But I --

13           THE COURT:  He had another basis, as well, but --

14           MR. JOHNSON:  I agree with the statement that was made

15   at the podium that all the other cases have gone back.  I

16   actually agree with that, but I also think that all the rest of

17   them were removals of a single case, based on 1369(a) and

18   1441(e)(1)(A), that is, that they were removing under not our

19   piggy-back provision, but (A) that says you can remove a 1369

20   case.

21           THE COURT:  Yeah.  You have to be brought under 1369.

22           MR. JOHNSON:  And they were not 1369 cases.

23           That's not your issue.

24           THE COURT:  No.

25           MR. JOHNSON:  You are right.  You have the bad luck,

1    or the good luck, whichever it is, to be the first one to have

2    to squarely deal with this issue.  And I agree with that part

3    of it.

4            So I don't think we need to distinguish -- I mean,

5    they are distinguishable.  I've looked through all of them --

6    and, of course, they're now -- it's a string citation.  You get

7    one right after the other -- but I don't think they were

8    (e)(1)(B) cases.  I think -- and (e)(1)(B) is clearly, as we

9    all know -- and you and I talked about this before -- it's a

10   different animal.

11           THE COURT:  No question.

12           MR. JOHNSON:  Because it really is -- is -- the whole

13   measurement is -- and they're really the only two questions

14   that we've looked at, which is, is Abadie, in our case, could

15   it have been a 1369 case?  And is this -- does this arise out

16   of the same accident?  And that's the issues that you have to

17   deal with.

18           I would urge you -- I'll stay at the podium as long as

19   you want to answer questions because I think that's the purpose

20   of the exercise -- but I would urge you, Your Honor, to keep in

21   mind that the Congress must have had something in mind to do

22   something as radical as they did.

23           THE COURT:  And as I understand it, Mr. Johnson, your,

24   your argument is that the single accident is, in other words,

25   there may have been a series of accidents, but -- make sure I

1   understand your argument as refined -- that when they say, when

2   the statute says the term "accident" means "a sudden accident

3   or a natural event culminating in an accident that results in

4   the death, results in death incurred at a discrete location by

5   at least 75 persons."

6            Let's talk about the -- then we go up to (a), 1369(a):

7                "The district court shall have original jurisdiction

8                of any civil action involving minimal diversity

9                between adverse parties that arises from a single

10               accident where at least 95" -- "75 natural persons

11               have died in the accident at a discrete location."

12           So looking at that plain language, what's -- your

13   first argument is that Hurricane Katrina is the single --

14           MR. JOHNSON:  Single natural --

15           THE COURT:  -- natural event?

16           MR. JOHNSON:  -- event culminating in an accident.

17           THE COURT:  And so the accidents all occurred from a

18   single naturally occurring event?

19           MR. JOHNSON:  Yes, sir.

20           THE COURT:  Regardless of the myriad levee breaches or

21   whatever other, or MR-GO or other mechanisms that may have

22   caused the accident.

23           Now what about the fact that there may be different

24   causative -- in the classic case that comes under this, there's

25   one plane that crashes, one train that wrecks.  So the

1  causation is common.  Here, you have, you could have a glob of

2  cases brought up, everything relating to Hurricane Katrina, in

3  essence, and a levee breach, let's say, but the mechanism of

4  proof is different, depending on where you are, that is, the

5  MR-GO, New Orleans East, St. Bernard, Lakeview.  It becomes --

6  does it really fulfill the intent of the statute?

7         MR. JOHNSON:  Well, see, here's where I think your

8  question hits right at one of the most important points.  We

9  don't know the answer to the causal determinations.  The fact

10  that -- it could be that most or all of them are related to

11  some grand plan about how to build levees in this part of the

12  country and that the mistake turns out to be that we built them

13  with sand, or we built them with -- I -- you and I have no

14  idea.

15         And the whole point is to get, one time we go through

16  the process of determining as much as we can how these failures

17  occurred.  You may determine one day, or the Eastern District

18  may determine -- some court may determine -- that the causal

19  issues are entirely different in every instance, but that

20  doesn't mean that the threshold jurisdictional question, as we

21  sit here today, has to be decided that there are multiple

22  causes that cannot fit together.

23         I mean, the truth of the matter is, Your Honor, the

24  Congress was trying to find -- and I know it doesn't seem now

25  like a convenient forum because it's your forum -- but they

1  were trying to find a convenient forum in which those issues

2  can be decided one time.  We don't know what the answers are.

3        And I will say, since you, you know, you want to get

4  hold of the argument, lest there be any doubt, in the

5  Chamberlain case it's a fairly easy argument because we're all

6  focused on the 17th Street Canal, and I could just say I think

7  Hurricane Katrina caused the accident, the break in the canal,

8  and it's the same accident that they're talking about and we'll

9  have to talk about the legal consequences.

10        THE COURT:  What about the 75 deaths?

11        Mr. JOHNSON:  But the multiple -- sir?

12        THE COURT:  What about the 75 deaths?

13        MR. JOHNSON:  Well, now that's -- I'm glad you brought

14  that up, again.

15        I mean, Your Honor, this -- that's no different from

16  those cases in which there's some doubt about some

17  jurisdictional requisite and you engage in a sort of what the

18  Fifth Circuit calls a summary judgment-type procedure to delve

19  far enough into that to get that answer.  I don't think you can

20  declare today, or when you write an opinion there weren't or

21  that -- we don't know.

22        So if you -- if that concerns you, you could go into

23  that summary judgment-type procedure because that's perfectly

24  legitimate and the Fifth Circuit says that.

25        I don't think that's really necessary here because

49

1   given, once again, if Congress' intent is to find out the

2   causal sequence that led to this, given the unusual nature not

3   only of this natural event, but of the place where it occurred

4   and the topography and all that, there's really not a whole lot

5   of doubt that the "discrete location" could be, as -- it could

6   be as big as the parish.  It could be bigger than that.

7        Well, we're not, we're not talking so much about

8   geography -- and the writers all talk about this -- we're

9   talking about common inquiry, or inquiry into common facts and

10  at least we're not talking about -- I haven't tried to get any

11  Hurricane Rita cases in here because that wouldn't be a

12  discrete location.  We haven't even tried to do that.  We're

13  trying to be faithful to what we think the Congress intended,

14  which is to have a judicial forum where you deal with all these

15  things at one time.

16       So you could solve that with a summary judgment

17  procedure.  I don't really think that's necessary in this

18  instance.  And as I said, I'm happy to stand up here as long as

19  you want to listen, but --

20            THE COURT:  No, I think that's --

21            MR. JOHNSON:  That's quite sufficient, more than

22  sufficient, right?

23            THE COURT:  Thank you.

24            MR. JOHNSON:  Thank you.

25            THE COURT:  Yes, sir.

1          MR. HAMMOND:  Thank you, Your Honor.  Peirce Hammond

2     on behalf of ANPAC Louisiana Insurance Company.

3          I'll start with the question on the 75 deaths.  What

4     the Court needs to determine is whether Abadie is a case that

5     could have been brought under 1369 and, therefore, whether in

6     Abadie there were 75 deaths associated with the accident there,

7     okay?

8          You know, if --

9          THE COURT:  I agree.

10          MR. HAMMOND:  -- evidence of 75 deaths occurring in

11     Orleans Parish from the levee breaches is what this Court needs

12     in order to resolve the issue, I think it's pretty apparent

13     that we had that flooding resulting in deaths.  We had things

14     occurring as a result of the flood where people died, and I

15     think there's ample evidence to that.  But we're able and

16     prepared to submit evidence of that right now for the Court.

17          In a subsequent -- in a pleading in another case,

18     Brankel (phonetic), 06-6102, ANPAC filed a newspaper article

19     dealing with victims of Katrina, where they were found, and it

20     also attaches the names of the bodies, "Hurricane Katrina

21     victims were released to families."  But certainly, there is

22     more evidence and we'd like to submit to the Court  I'd like

23     leave to file that.

24          MR. CANNELLA:  I don't mean to be out of place, but,

25     to the extent that I need to preserve my objections, I object

 1  to the extent that this isn't properly filed.

 2          This is David Cannella in the Case case.

 3          THE COURT:  Right.

 4          MR. CANNELLA:  And I'm sorry.

 5          MR. HAMMOND:  I'm trying --

 6          MR. CANNELLA:  I don't mean to interrupt.

 7          MR. HAMMOND:  You know --

 8          MR. CANNELLA:  I'm sorry.

 9          MR. HAMMOND:  In order to avoid the Court not being

10  squarely presented with the issue, I'd like the opportunity to

11  submit that issue and so we can decide the real legal issue

12  that we're here trying to decide.

13          I mean, I think it's abundantly apparent that there

14  were 75 deaths occurring in Orleans Parish as a result of levee

15  breaches occurring after Hurricane Katrina.  We can submit what

16  we have now.  We can submit supplemental memorandum, if the

17  Court requires, if that's necessary.  I think that we'll be

18  able to do so.  And it's really in the Abadie case that the

19  Court needs to determine whether that is a case that could have

20  been brought under 1369 due to an accident resulting in 75

21  deaths.

22          We're a pending -- we're 1441(e)(1)(B).  We don't need

23  to show in our case that, you know, we had --

24          THE COURT:  Right.  You're -- if it is, arises out of

25  the same accident and the case to which you're piggybacking

1   upon can be brought under 1369, you win.

2              MR. HAMMOND:  Right.

3              That's, that's the first thing.

4              Now the second question is, how do you determine

5   what's an accident.  I firmly believe that the failure of the

6   levee system is the accident.  This is something that was in

7   charge of the Corps of Engineers and the New Orleans Levee

8   Board and the levees under their charge failed.  If one part of

9   a levee fails, the whole city floods.

10             So you have to protect the entire system for it to be

11  effective.

12             THE COURT:  What was the point of -- and there's a lot

13  of talk in the legislative history about toxic torts and

14  products liability cases being not part of this.  Mass torts,

15  there's a lot of talk in the legislative history about that.

16             Are you familiar with that at all?

17             MR. HAMMOND:  I can't -- I'm not diversed in that,

18  Your Honor, but it doesn't seem that there would be one event

19  in a lot of toxic torts.  There would be multiple exposures,

20  different locations, and they're very mixed cases; whereas,

21  this is one event.  It's a hurricane culminating in a failure

22  of a hurricane levee system in New Orleans.

23             You know, there are other analogies to our case,

24  which, if you had an earthquake in California and a dam broke

25  that should have withstood that Point 3 earthquake, but it

1   broke anyway, flooding a town, and killing, you know, a

2   thousand people, you'd have a natural event culminating in an

3   accident resulting in 75 more deaths.

4          If you had a nuclear power plant that melted down, you

5   know, you'd have an accident and a widespread area would be

6   affected over many cities, states, whatever.

7          You know, if you have, in the City of New Orleans, if

8   the city doesn't maintain the pump system and they, you know,

9   they do something wrong with the pumps and it rains

10  torrentially and the whole neighborhood floods and 75 people

11  die, you got another accident resulting in 75 deaths, you know.

12  It's --

13         So in this case you're dealing with an accident where

14  the hurricane levee system broke down from the hurricane.  The

15  City of New Orleans flooded causing 75 deaths.  That is clearly

16  a common fact set for all of this litigation and they all --

17  and the fact that in our case they're seeking coverage for

18  that, as they are in Abadie -- they're seeking coverage for

19  that -- they're saying in our case the efficient proximate

20  cause was wind.  In Abadie, they're saying the efficient

21  proximate cause was wind.  They're trying to exclude flood for

22  the same reasons they're trying to exclude flood in Abadie.

23  These are -- these are the same issues involved in the same

24  case arising out of the same facts.

25         THE COURT:  You know, what an interesting -- the word

1   -- the word "injury" is defined in the definitions, but not

2   mentioned in the statute.  I think Mr. Johnson and I, maybe,

3   have discussed that last, last time he argued here several

4   months ago.  Because these are all physical injury cases -- I

5   mean -- excuse me -- property damage cases.  They have nothing

6   to do with the deaths.

7          That seems to be, again, a bit attenuated because the

8   deaths are the triggering event, yet the deaths are not part of

9   this lawsuit at all and it's something that caused me some,

10  some problem, the way the statute is written.  And again, it's,

11  like many statutes, not a model of clarity and perhaps, like

12  some judicial opinions as well, not to pick on the Congress.

13  But injury is placed in the definitions section and it's not in

14  the text of the statute prior to the definitions section --

15         MR. HAMMOND:  Well, Your Honor, I mean --

16         THE COURT:  -- but if we give it effect, it -- it --

17  it -- couldn't it be construed as property damage of those

18  persons who were, who were injured physically in the accident?

19  That also gives them the right for their property damage claim.

20         MR. HAMMOND:  Your Honor, I think the inclusion of 75

21  deaths was to say it has to be a serious event.  It has to be

22  an event that resulted in a catastrophe and in this case,

23  that's what you have, an event that resulted in a catastrophe.

24         And like the nightclub case, not everybody died in the

25  nightclub, but they had other people who were injured in the

1    nightclub.

2              THE COURT:  Right.  I agree.

3              MR. HAMMOND:  So you -- you're not just --

4              THE COURT:  This case isn't about injury, though.  You

5    understand there's nothing in this case about some bodily

6    injury.  I mean, in Abadie, and, you know, and Chehardy are all

7    about insurance.

8              So -- so there's nothing about -- all I'm saying is --

9    it may --

10             MR. HAMMOND:  Well --

11             THE COURT:  -- not be relevant --

12             MR. HAMMOND:  You know ---

13             THE COURT:  -- there is no injury, other than to

14   property, not to people.

15             I just might just read you a definition that was told

16   to Congress, and this is a 1990, albeit, 1991 because, as I

17   said, this thing had a long history:

18             "Accident is defined in this section" -- "accident

19             must be sudden in nature, may include natural events

20             culminating in accidents, and must occur in a discrete

21             location.  The bill is intended to apply to those

22             events" -- and this time it was 25 -- "in which 25 or

23             more persons are killed or injured together in a

24             single catastrophic accident, such as a hotel fire, a

25             railroad, airplane, bus accident, or bridge collapse.

```
 1              The reference to natural events is inserted to ensure

 2              that an accident, such as a bridge collapse, qualifies

 3              as an accident within the scope of the bill,

 4              notwithstanding the collapse was caused by long-term

 5              flooding, foundation shifting, or other natural events

 6              that precipitated a sudden accident."

 7         MR. HAMMOND:  You know --

 8         THE COURT:  You know, it's --

 9         MR. HAMMOND:  It's --

10         THE COURT:  I understand the arguments.  It's a

11    question of how I, how I deem --

12         MR. HAMMOND:  Yeah.

13         THE COURT:  -- the language of the statute based on,

14    to the extent I can find it, congressional intent.

15         MR. HAMMOND:  Your Honor, I think that there's no

16    limitation to this jurisdiction to apply just to personal

17    injury cases.  I don't --

18         THE COURT:  Well, you know, of course, this would mean

19    that -- I understand, and I would say Congress intended that

20    every insurance case involving a levee breach would be, have

21    federal court jurisdiction, every insurance case.

22         So I'll have to --

23         MR. HAMMOND:  Well --

24         THE COURT:  -- you certainly made some arguments that

25    -- that are not -- that will make me ponder and think about it.
```

1          MR. HAMMOND:  Thank you, Your Honor.

2          THE COURT:  All right.

3          Defense want any, like 3 or 4, 5 minutes?

4          MR. JOHNSON:  Your Honor, could I just -- can I

5    clarify the injury point for you, again?

6          THE COURT:  Go ahead.

7          MR. JOHNSON:  Because I do know what happened.  And

8    I'm not going to talk very long.

9          The -- what you read from was an earlier version,

10   obviously, of the statute.

11         THE COURT:  Yeah, it was.

12         MR. JOHNSON:  And the measurement was going to be 25

13   injuries or deaths.

14         THE COURT:  Right.

15         MR. JOHNSON:  They took out -- they upped that to 75

16   deaths.  They took out the injury, but they forgot to take out

17   the definition of injury.

18         And your observation about toxic torts and products

19   liability, my understanding is the people who then in 2002

20   didn't want CAFA to pass wanted to make sure that this was not

21   some kind of stalking horse for CAFA-type cases.  And so they

22   wanted to be sure that toxic torts, products liability, they

23   mention breast implant, asbestos, all that, was not in this.

24         So part of the tailoring was up the deaths and so

25   forth.

1          And I didn't say, but you know it from reading our

2   papers, that we don't think the consent of the other defendants

3   is required.

4          THE COURT:  Right.

5          MR. JOHNSON:  And -- and one more thing.  I'm sorry.

6          But I just wanted the record to reflect that although

7   we don't need this argument in this case, Farm Bureau will take

8   the position in an appropriate case that the multiple levee

9   breaks within 30 minutes or 45 minutes or an hour were actually

10  an accident, themselves.  We don't really need that in the

11  Chamberlain case, but --

12         THE COURT:  Right.

13         Thank you very much.

14         MR. HAMMOND:  Do we need to do anything more to submit

15  evidence on 75 deaths?

16         THE COURT:  If you do, I will apprise you, and I'll do

17  it fairly quickly.

18         MR. HAMMOND:  Thank you, Your Honor.

19         THE COURT:  Thank you.

20         MS. DeLAUNE:  Your Honor, I just want to clarify

21  something quickly regarding defendant Frantz, James Frantz.

22         He did actually file --

23         THE COURTROOM DEPUTY:  State your name.

24         MS. DeLAUNE:  Jim Frantz.

25         THE AUDIO OPERATOR:  State your name for the record.

1          MS. DeLAUNE:  Oh, I'm sorry.  Beverly DeLaune on

2     behalf of Jim Frantz.

3          He did file a consent to removal.  It was after the 30

4     days, but it was really only filed as a precaution.  Because as

5     I read the MMTJA article, it doesn't require consent of all

6     defendants.

7          THE COURT:  Thank you very much.  That's noted for the

8     record.

9          Anyone -- any --

10          MR. PENDERGAST:  I have nothing further, Your Honor.

11          THE COURT:  All right.

12          Anything else?

13          MR. CANNELLA:  I would like to say two, three things.

14          THE COURT:  All right.

15          MR. CANNELLA:  Very briefly.

16          THE COURT:  Go ahead.

17          MR. LEE:  Your Honor, I just want to make sure before

18     I --

19          MR. CANNELLA:  Oh, I'm sorry.  Go ahead, Mr. Lee.  Go

20     ahead.

21          MR. LEE:  Excuse me.

22          Your Honor, I just wanted to make sure.  I know we

23     touched very briefly on the 1369 issue and MMTJA, but we have

24     argued that.  We're covered by that.

25          I think we have suggested in our brief that concurred

1   with the argument that Mr. Johnson presented that the, in

2   reading the statute, the accident can be the hurricane and the

3   accidents and events which cause accidents.  In that

4   circumstance, we believe that there is -- that -- that we would

5   still come under that, under that umbrella.

6          Similarly, we have cases that have been asserted, both

7   the Abadie case and the Aaron (phonetic) case, which, which

8   makes the same kind of allegations, which was, indeed, filed as

9   a 1369 case.  We are a defendant.  State Farm is a defendant in

10  that case, as well.

11         THE COURT:  In the Aaron case you said?

12         MR. LEE:  The Aaron case and the Chetta (phonetic)

13  case.  Both were filed as a, both a -- Chetta was filed as a

14  CAFA and a, and as a 1369.  The Aaron case was filed as a 1369

15  case by the plaintiffs.

16         THE COURT:  Has that case -- is it -- I'm just

17  curious.  Who has that case?

18         MR. LEE:  Your Honor, as of, I think, yesterday or the

19  day before, you do.

20         THE COURT:  Oh, Jesus.

21         MR. LEE:  It was -- it was before Judge Vance and it

22  was, and it was transferred to Your Honor within the last

23  couple of days.

24         THE COURT:  Does it involve levee breaches?

25         MR. LEE:  It -- there's an allegation of levee

 1   breaches.  It has the allegations of the Valued Policy Law.  It

 2   has -- it's got the kitchen sink, very much like Abadie.

 3           THE COURT:  Okay.  But the sole --

 4           MR. LEE:  It's just different -- different --

 5           THE COURT:  -- basis is 1369?

 6           MR. LEE:  It's not -- it's not the sole basis, but it

 7   is one of the bases --

 8           THE COURT:  All right.

 9           MR. LEE:  -- that they assert.

10           THE COURT:  Okay.  I gotcha.

11           Thank you.

12           MR. LEE:  Thank you, Your Honor.

13           MR. CANNELLA:  David Cannella, Your Honor, on behalf

14   of the plaintiffs in the Case case.  Very briefly.

15           No. 1, I heard Mr. Johnson state that this is a

16   radical departure from the jurisdictional norm.  If this -- the

17   -- the -- 1369.

18           If this is a radical departure from the standard, then

19   you got to be real clear and if it's not real clear, we win.

20   This Court's a court of limited jurisdiction.  If it's not

21   clear that this Court has federal question jurisdiction, we go

22   back to state court.  There's a limited basis.  They have the

23   burden of proof.  They haven't shown it.

24           No. 2, again, the single accident/discrete location.

25   Plane crash, nightclub, bus crash.  We're talking about an area

1    that's actually less than a plot of land in Lakeview, or a

2    building, at most, is a plot of land, but you're talking about

3    an injury or death --

4            THE COURT:  But the piggyback -- we can't just isolate

5    to you.  We have to go to the piggyback and if it is, arises

6    out of the same accident as the piggy-back case, then that --

7    it doesn't make any difference that there's just one --

8            MR. CANNELLA:  No.  And I appreciate your statement,

9    Judge, but what -- it dovetails into my next point, which is

10   the deaths occurred not at -- a plane crash.  Instantly, or

11   within an hour, or two hours.  You're talking about deaths that

12   occurred between one and ten days later.  That's not the

13   purpose of this statute.

14           THE COURT:  So you're saying it's not a sudden

15   accident?

16           MR. CANNELLA:  Right.

17           THE COURT:  Okay.

18           MR. CANNELLA:  Yes, sir.

19           THE COURT:  I understand.

20           MR. CANNELLA:  And then -- I happen to do a lot of

21   asbestos work on plaintiffs' side, and I think that it doesn't

22   apply to the toxic area.  Because you have what's called the

23   latency period where you have exposures, but the disease

24   doesn't develop till years and years later.

25           THE COURT:  Yeah.  I don't think the defendants are

```
 1   claiming that, either.

 2             MR. CANNELLA:  Right.  No, no.  I agree.  I just

 3   thought to bring it up because Your Honor had a concern about

 4   it.  You'd have logistical problems.

 5             THE COURT:  Okay.  Thank you.

 6             All right.  We'll take this case under submission.

 7             MR. LEE:  Thank you, Your Honor.

 8             MR. PLAUCHE:  Thank you, Your Honor.

 9             MR. JOHNSON:  Thank you, Your Honor.

10             THE COURT:  Hopefully, you'll have a fairly prompt

11   ruling.  If I need other information, I will apprise you.

12             MR. CANNELLA:  Thank you, Your Honor.

13             MR. PLAUCHE:  Thank you, Your Honor.

14             MR. MAYEAUX:  Thank you, Your Honor.

15             MR. JOHNSON:  Thank you, Your Honor.

16        (Proceedings concluded at 10:48 a.m.)

17

18

19

20

21

22

23

24

25
```

1                         CERTIFICATE

2          I, court approved transcriber, certify that the

3   foregoing is a correct transcript from the official electronic

4   sound recording of the proceedings in the above-entitled

5   matter.

6   /s/ Janice Russell                    November 18, 2006

7   Janice Russell, Transcriber                  Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25