UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § § § § | CIVIL ACTION No. 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO: MRGO, *Reed*, No. 06-2152 MRGO, *Ackerson*, No. 06-4066 | § § § | |

**REPLY IN FURTHER SUPPORT OF THE DREDGING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(c)**[1]

Plaintiffs' claims are barred by multiple forms of sovereign and government contractor immunity: (1) contractors cannot be sued for executing the will of Congress; (2) contractors

[1] This Reply is filed on the merits on behalf of Defendants Bean Dredging, L.L.C.; C.F. Bean L.L.C.; Bean Stuyvesant, L.L.C.; Stuyvesant Dredging Company; Stuyvesant Dredging, Inc.; Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corporation; C.F. Bean Corporation; Bean Horizon Corporation; and Bean Horizon L.L.C. *In addition*, subject to the Court's ruling on the Limitation Dredgers' Motion for Leave to File Reply Briefs as *Amicus Curiae*, this Reply is tendered on behalf of Great Lakes Dredging & Dock Company, Mike Hooks, Inc., T.L. James and Company, Inc., Gulf Coast Trailing Company, a Louisiana Partnership, and TLJIC, L.L.C., a Partner therein, Luhr Bros, Inc., King Fisher Marine Services, LP, Weeks Marine and Pine Bluff Sand and Gravel Company ("Dredging Defendants"), because the filing of their Limitation petitions stayed all other lawsuits by operation of law. *See* 46 U.S.C. App. § 185; Fed. R. Civ. P., Supp. Admiralty Rule F(3). This brief will refer to the Bean entities, plus the proposed *amici* as the "Dredging Defendants." Defendant Manson Construction Company is not a party to this filing.

NO NMS 131490 v1
2902907-000001

share the government's sovereign immunity, including immunity under the Flood Control Act and the discretionary function exception; and (3) government contractors are further immune in their own right unless a plaintiff alleges that they departed from the government's specifications. The Dredging Defendants' motion for immunity is unopposed in several key respects because Plaintiffs rely almost entirely on the *Robinson* plaintiffs' opposition to the *Government's* motion ("*Robinson* Opposition"),[2] which does not address any form of government contractor immunity.

It is undisputed that on these pleadings the Dredging Defendants cannot be held liable for executing Congress's will in performing maintenance dredging in the MRGO. Under almost identical circumstances, the Supreme Court so held in *Yearsley v. W. A. Ross Constr. Co.*[3] Plaintiffs do not cite *Yearsley*, though it was the centerpiece of the Dredging Defendants' lead argument in their Opening Memorandum, nor do Plaintiffs contest the underlying principle. As Plaintiffs have conceded by their silence, *Yearsley* governs this case. Plaintiffs' claims must be dismissed for lack of jurisdiction.

In addition, Plaintiffs' only response to the Dredging Defendants' "shared immunity" argument is that there is no immunity to share.[4] It is undisputed, therefore, that if the Government is immune, the claims against the Dredging Defendants must be dismissed as well. And the Government *is* immune. Sovereign immunity precludes suit for the Government's performance of discretionary functions like those at issue here.[5] Moreover, the Supreme Court

2 Pls.' Resp. at 2 (incorporating by reference the *Robinson* plaintiffs' pleadings and exhibits).

3 309 U.S. 18 (1940).

4 As public works contractors, the Dredging Defendants are entitled to share the protection of the Government's sovereign immunity. *See* Op. Mem. at 10-11. Plaintiffs do not contest the Dredging Defendants' right to "shared immunity" beyond conclusory assertions that the Flood Control Act and discretionary function immunities apply only to the Government. Pls.' Resp. at 3.

5 Because Plaintiffs offer no response of their own to this ground of immunity, the Dredging Defendants rest on their Opening Memorandum (at 14-15), and the Government's Reply to the *Robinson*

held in *Central Green v. United States*[6] that the Flood Control Act provides absolute immunity for damages caused by flood waters. The Court's holding was unequivocal—the text of the FCA requires immunity be determined "*not by the character of the federal project or the purposes it serves*, but by the character of the waters that cause the relevant damage."[7] Because Plaintiffs allege that they were harmed by flood waters, their claims are barred.

Finally—and last only because it is not jurisdictional—the Dredging Defendants are immune as government contractors. The *only* inference that can be drawn from Plaintiffs' Complaints is that the Dredging Defendants did what the U.S. Army Corps of Engineers told them to do. Plaintiffs challenge the *Government's* decisions to construct, operate, and maintain the MRGO; they do not allege any separate negligence on the part of the Dredging Defendants. Thus, under *United States v. Spearin*[8]—another Supreme Court case Plaintiffs do not cite—any harm caused by the Dredging Defendants' activities in the MRGO is the sole responsibility of the Government. Even if the Government must remain in these suits, the Dredging Defendants should not.

## ARGUMENT

### I. It Is Undisputed that Plaintiffs May Not Sue the Dredging Defendants for Implementing the Will of Congress.

The Dredging Defendants may not be sued for executing orders dispatched from Congress. Under almost identical circumstances, the Supreme Court in *Yearsley*[9] rejected claims

---

plaintiffs (at 19-34).

6 531 U.S. 425 (2001).

7 *Id.* at 434 (emphasis added).

8 248 U.S. 132 (1918).

9 *Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18 (1940).

against a government contractor for damage allegedly caused by dredging the Missouri River. The Court ruled that the contractor's actions were "directed by the government of the United States" and "*there is no liability on the part of the contractor for executing [Congress's] will.*"[10] The *Yearsley* principle is directly applicable to these cases. "[W]here a contractor acts under the authority and direction of the United States," it is immune from suit.[11]

Plaintiffs do not dispute the principle, and the allegations in their Complaints preclude sidestepping this issue with the argument that they are not challenging the statutory authorization for the MRGO.[12] Plaintiffs *specifically pleaded* that Congress authorized and funded construction of the MRGO,[13] and they do not dispute that Congress funded the dredging of material from the MRGO to construct flood control levees, as well as maintenance dredging of the MRGO,[14] *thereby ratifying the dredging at issue in these cases.*[15]

Moreover, Plaintiffs have alleged—and continue to argue in response to the Dredging Defendants' and Government's motions to dismiss—that the Dredging Defendants were merely Government instrumentalities for whose actions the Government is liable.[16] The Dredging

---

10 *Id.* at 20-21 (emphasis added).

11 *Hardvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1316 (11th Cir. 1989); *see also Boyle v. United Tech. Corp.*, 487 U.S. 500, 506 (1988).

12 *See Robinson* Opp. at 24-26.

13 Compl. ¶ 7 ("Approved by the United States Congress under the Rivers and Harbor Act of 1956, construction . . . was completed in 1965 at an initial cost of approximately $92 million.").

14 *See* Op. Mem. at 7 (citing United States Army Corps of Engineers Design Mem. & Recon. Report, 100th Cong., 2nd Sess. (1988); Flood Control Act of 1965, Pub. L. No. 89-298, § 204, 79 Stat. 1073, 1077; Pub. L. 104-206, 110 Stat. 2984 (1996); Pub. L. 108-7, 117 Stat. 11 (2003)).

15 *Brooks v. Dewar*, 313 U.S. 354, 360-61 (1941) (repeated appropriations ratify the actions of the executive as an agent of Congress).

16 *See* Compl. ¶¶ 4, 13, 14 (referring to the Dredging Defendants as COE "subcontractors" and attributing their activities to the Government); Pls.' Opp. to Dredging Defs.' Mot. to Dismiss Pursuant to

NO NMS 131490 v1
2902907-000001

Defendants have presented a narrow legal issue that can be resolved without looking beyond Plaintiffs' allegations and the Congressional Record. *Yearsley* precludes Plaintiffs from dragging the Dredging Defendants into their dispute with the Government.

**II. The Flood Control Act Bars Suit for Damages Caused by Flood Waters.**

Plaintiffs allege that they were damaged by *flood waters* that escaped when *federal flood control projects* failed. As such, on its face, the Flood Control Act ("FCA") provides immunity.[17] Plaintiffs' reliance on the Fifth Circuit's 1971 decision in *Graci v. United States*[18] is misplaced for two reasons: (1) the *Graci* analysis was superseded by the Supreme Court in *Central Green v. United States*,[19] which held that the character of the waters—not the project—determines immunity; and (2) even if *Graci* retains any vitality, Plaintiffs allege that their damages occurred because federal flood control projects failed.[20] Under any analysis, Plaintiffs' claims are barred by the FCA.

First, in *Central Green*, the Supreme Court superseded *Graci*'s focus on the nature of the project—FCA immunity no longer depends on whether a government project was built for flood control or navigation, but rather on the character of the waters:

> The text of the statute does not include the words "flood control project." Rather it states that *immunity attaches to "any damage from or by floods or flood waters. . . ."* Accordingly, the text of the statute directs us to determine the scope of the immunity conferred, *not by the character of the federal project or the purposes it serves, but by the character of the waters that cause the relevant damage.*[21]

---

the Suits in Admiralty Act at 12; Pls.' Opp. to Gov't Mot. to Dismiss at 9-11.

17 *See* 33 U.S.C. § 702c; Op. Mem. at 11-13.

18 456 F.2d 20 (5th Cir. 1971).

19 531 U.S. 425 (2001).

20 Compl. ¶¶ 1, 2, 21-23.

21 *Central Green*, 531 U.S. at 434 (emphasis added).

> [I]n determining whether § 702c immunity attaches, courts should consider the character of the waters that cause the relevant damage rather than the relation between that damage and a flood control project.[22]

Plaintiffs allege that the character of the waters causing damage were "waters that flooded the New Orleans metropolitan area" as a result of Hurricane Katrina's "storm surge."[23] The *Robinson* Opposition makes a belated reference to "navigational waters,"[24] but Plaintiffs do not allege that "navigational waters" leaked out of MRGO because of negligent dredging by the Dredging Defendants. Rather, Plaintiffs expressly plead that storm-driven *flood waters* caused their damage when the New Orleans "flood protection system" failed.[25] Their claims are barred.

Plaintiffs resort to legislative history to argue that FCA immunity is restricted by the Government's "role and expenditures in providing flood protection,"[26] but this ignores the plain language of the statute and *Central Green*.[27] FCA immunity may not be premised on whether the MRGO is a flood, navigation, or mixed project; it is determined "*not* by the character of the federal project or the purposes it serves, but by the character of the waters that cause the relevant damage."[28] Here, by Plaintiffs' own admission, those were flood waters.

In addition, Plaintiffs ignore the Dredging Defendants' argument that their own

---

[22] *Id.* at 437.

[23] Compl. ¶¶ 2, 21, 22.

[24] *Robinson* Opp. at 46, 47, 50 (damages caused by "MRGO's storm driven navigational waters").

[25] Compl. ¶¶ 1, 21-23 (alleging twenty breaches of MRGO levees, three breaches of Industrial Canal levees, and flooding of Polder 1 by the 17th Street, Orleans, and London Avenue canals).

[26] *Robinson* Opp. at 40-43.

[27] *Central Green*, 531 U.S. at 434 (statutory text does not include words "flood control project").

[28] *Id.* (emphasis added).

allegations distinguish this case from *Graci*.[29] Plaintiffs allege flooding occurred because of failures of "three levee systems" and flooding of "Polder No. 1" when the Lake Pontchartrain levee system failed along the 17th Street Canal, Orleans Canal, and London Avenue Canal.[30] Therefore, even under the old *Graci* analysis, Plaintiffs' claims are barred by the Flood Control Act because the damages suffered were not "wholly unrelated" to flood control.[31]

Finally, this Court's recent decision in the Insurance cases[32] does not preclude finding the FCA applicable here. As the Court there explained, in the Insurance context,

> the question before the court is whether it is reasonable to find in the absence of further definition or provision in the ISO policy that there are two interpretations of the term "flood"—one which encompasses both a "flood" which occurs solely because of natural causes and a "flood" which occurs because of the negligent or intentional act of man and one which limits itself only to a flood which occurs solely because of natural causes.[33]

Immunity under the FCA presents a fundamentally different question. The FCA's concern is specifically with floods occurring "because of the negligent or intentional act of man."[34] In addition, interpreting statutory text does not require construing ambiguities against

---

29 *See* Pls.' Resp. at 3 (citing *Graci* for the naked assertion that the FCA "does not provide immunity to anyone for maritime activities"). The Supreme Court has explained that statutes like the Federal Tort Claims Act and the Suits in Admiralty Act do not waive the sovereign immunity of the Government and its contractors under the Flood Control Act. *See United States v. James*, 478 U.S. 597, 599 (1986) (holding that the FCA "bars recovery where the Federal Government would otherwise be liable under the Federal Tort Claims Act"); *Central Green*, 531 U.S. at 437 (explaining that *James* "rejected" the proposition "that the Federal Government's subsequent waiver of sovereign immunity in the Federal Tort Claims Act had impliedly repealed § 702c").

30 Compl. ¶¶ 1, 22, 23.

31 *Mocklin v. Orleans Levee District*, 877 F.2d 427, 430 (5th Cir. 1989); *see also* Op. Mem. at 13.

32 *In re Katrina Canal Breaches Consol. Litig. (Humphreys v. Encompass Ins. Co.)*, No. 05-4182, 2006 WL 3421012 (E.D. La. Nov. 27, 2006) (holding certain policy exclusions for "flood" damages did not clearly apply to the flooding caused by Hurricane Katrina).

33 *Id.* at *14.

34 *Compare id.*, *with Central Green*, 531 U.S. at 427, 437 (holding that claims for flooding related

the drafter, as is the case with insurance policies.[35] In holding that "courts should consider the character of the waters that cause the relevant damage rather than the relation between that damage and a flood control project,"[36] the Supreme Court in the context of the FCA has precluded the distinction this Court drew when interpreting the insurance policy exclusions.

## III. The Dredging Defendants Are Entitled to Dismissal as Government Contractors.

As the Supreme Court held in its seminal decision regarding the government contractor defense, *United States v. Spearin*,[37] where "the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications."[38] Plaintiffs' allegations establish that (1) the Government approved reasonably precise specifications with which the Dredging Defendants conformed; and (2) the Government knew about the dangers of contract performance.[39] Plaintiffs do not even mention *Spearin*, and their attempt to disavow their own Complaints is futile.[40] Plaintiffs are bound by their pleadings;[41] their claims must be dismissed.

---

to "negligence in the design, construction, and maintenance" of a canal were barred by FCA).

35 *See Humphreys*, 2006 WL 3421012, at *5-6.

36 *Central Green*, 531 U.S. at 437.

37 248 U.S. 132 (1918).

38 *Id.* at 136; *see also* Op. Mem. at 16-17 (citing additional cases to same effect).

39 *See* Compl. ¶¶ 9, 13-17.

40 *See* Pls.' Resp. at 3-4 (asserting that Complaints did not allege that the Government approved project parameters with which Dredging Defendants conformed, and that they did not allege that the Government knew about the potential harmful effects of the MRGO).

41 *See Morales v. Dept. of the Army*, 947 F.2d 766, 769 (5th Cir. 1991) ("Factual assertions in pleadings are judicial admissions conclusively binding on the party that made them. [The defendant] may not now argue contrary to the factual allegations of his complaint.") (internal citations and quotation marks omitted); *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995) ("Allegations in a complaint are binding admissions, . . . and admissions can of course admit the admitter to the exit from

First, the Complaints allege that the Government approved reasonably precise specifications with which the Dredging Defendants conformed.[42] This case involves public works contracts, and the only allegations regarding the maintenance dredging are that the Government decided to conduct such dredging and not to use the dredge spoil differently.[43] This is not a case where detailed contract specifications are at issue, like a product liability claim turning on the peculiar design of military equipment. Plaintiffs' Complaints identify the MRGO's authorizing legislation, they identify the location, depth, and width of the project established by that legislation, and they identify the maintenance dredging contracts at issue.[44] Plaintiffs do *not* allege that the Dredging Defendants dredged negligently, for example, by dredging outside the parameters of the contracts, and their Response made no attempt to clarify how—*separate and apart* from the alleged negligence of the Government—the Dredging Defendants were negligent. Quite the contrary, Plaintiffs relied on the *Robinson* Opposition, which emphasized that Government negligence is "*solely*" the issue here.[45]

This case is no different than *Roland v. Jumper Creek Drainage Dist.,*[46] another case Plaintiffs ignore, where the court dismissed a complaint against a dredging contractor for damages sustained when drainage canals and ditches overflowed because the contractor

---

the federal courthouse."); *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) ("Litigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail.").

42 *See* Compl. ¶¶ 13-17.

43 *Id.* ¶ 14 (Defendants dumped spoil in the Gulf rather than using it to mitigate wetland damage).

44 *Id.* ¶¶ 7, 16-17.

45 *Robinson* Opp. at 26 ("Plaintiffs' negligence claims are predicated *solely* on the Army Corps' incompetence during the project's investigation, planning, construction, maintenance and operational phases.") (emphasis in original).

46 4 F.2d 719 (S.D. Fla. 1925).

performed pursuant to the plans and specifications under the supervision of the Government drainage district engineer. Just so here, Plaintiffs are challenging the *Government's* decisions.

The Complaints also allege the second element of contractor immunity—that the Government was warned or already knew about the risks presented by the MRGO.[47] Plaintiffs falsely assert that they pleaded no such thing,[48] but in fact, Plaintiffs allege, "*Before excavation* of the MRGO, state and *federal resource agencies* expressed concern about the project's apparent lack of ecological consideration," and that, "[i]n March 2000, the Environmental Subcommittee of the MRGO Policy Committee"—*part of the U.S. Environmental Protection Agency*—"prepared a restoration/mitigation plan to address environmental impacts related to the construction, operation and maintenance of the MRGO."[49] Even *Kerstetter v. Pacific Sci. Co.*,[50] the one and only case cited by Plaintiffs in their Response, holds that there is no duty to inform the Government of what it already knows.[51] Plaintiffs' claims should be dismissed.

**CONCLUSION**

The Dredging Defendants respectfully request that the Court dismiss claims against the Bean Defendants for lack of jurisdiction, or in the alternative, for failure to state a claim.

---

47 *See Boyle*, 487 U.S. at 512; *Miller v. Diamond Shamrock Co.*, 275 F.3d 414 (5th Cir. 2001).

48 Pls.' Resp. at 4 (arguing Plaintiffs' have not alleged Government knowledge, "*certainly not in ¶ 9 of the Complaints*, as claimed by the Dredging Defendants") (emphasis added).

49 Compl. ¶ 9 (emphasis added) (also alleging that "[c]oncerns expanded with a growing perception that the project had dramatically increased the region's vulnerability to hurricanes and tropical storms").

50 210 F.3d 431 (5th Cir. 2000) (cited in Pls.' Resp. at 4).

51 *Id.* at 436 ("The third part of the Boyle test requires the contractor to warn the government about those equipment dangers that were known to the contractor, *but not to the government*.") (emphasis added).

NO NMS 131490 v1
2902907-000001

Respectfully submitted,

/s/ Terrence L. Brennan
William E. Wright, Jr. (Bar Roll No.8564)
Terrence L. Brennan (Bar Roll No. 3434)

of
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
wwright@dkslaw.com
tbrennan@dkslaw.com

Attorneys for C.F. Bean L.L.C., Bean Stuyvesant, L.L.C., Stuyvesant Dredging Company, Stuyvesant Dredging, Inc. and Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corporation, C. F. Bean Corporation, Bean Horizon Corporation and Bean Horizon L.L.C.

12

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 4th day of December, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

1) jfnevares-law@microjuris.com

2) dbecnel@becnellaw.com

3) csalas@salaslaw.com

4) A.J. Rebennack ajrebennack@cox.net, Stephanie@rcaluda.com

/s/ Terrence L. Brennan

NO NMS 131490 v1
2902907-000001