Case 2:05-cv-04182-SRD-JCW   Document 1979   Filed 12/04/2006   Page 1 of 4

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § CIVIL ACTION<br>§ No. 05-4182 "K"(2)<br>§<br>§ JUDGE DUVAL<br>§ MAG. WILKINSON<br>§ |
| PERTAINS TO: MRGO, *Reed*, No. 06-2152<br>MRGO, *Ackerson*, No. 06-4066 | §<br>§<br>§<br>§ |

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF FOR CAUSE OF ACTION

Plaintiffs do not oppose the dredging defendants[1] motion to dismiss the Fourth Cause of

---

[1]   This Reply is filed on the merits on behalf of Defendants Bean Dredging, L.L.C.; C.F. Bean L.L.C.; Bean Stuyvesant, L.L.C.; Stuyvesant Dredging Company; Stuyvesant Dredging, Inc.; Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corporation; C.F. Bean Corporation; Bean Horizon Corporation; and Bean Horizon L.L.C. In addition, subject to the Court's ruling on the Limitation Dredgers' Motion for Leave to File Reply Briefs as Amicus Curiae, this Reply is tendered on behalf of Great Lakes Dredging & Dock Company, Mike Hooks, Inc., T.L. James and Company, Inc., Gulf Coast Trailing Company, a Louisiana Partnership, and TLJIC, L.L.C., a Partner therein, Luhr Bros, Inc., King Fisher Marine Services, LP, Weeks Marine and Pine Bluff Sand and Gravel Company, because the filing of their Limitation petitions stayed all other lawsuits by operation of law. See 46 U.S.C. App. § 185; Fed. R. Civ. P., Supp. Admiralty Rule F(3).

NO NMS 131518 v1
2902907-000001



Action stating claims under the Clean Water Act, but they request that the dismissal be without prejudice. Plaintiffs attempt to delay the finality of this issue is not supported by facts or law. On the contrary, defendants set forth multiple reasons supported by law why these claims should be dismissed with prejudice. There is no valid reason to delay a dismissal with prejudice.

Plaintiffs only argument is that they may, at some time in the future, comply with the mandatory 60 day notice provision in the Act so the dismissal should be without prejudice. What they fail to acknowledge or even discuss is the undeniable fact that they will never be able to comply with this requirement because there is no on-going violation. The purpose of the notice provision is to allow the polluter time to correct the polluting activity before a lawsuit is filed. Since the dredging activity which forms the basis of plaintiffs claims ended long before suit was filed, there is no activity allegedly in violation of an effluent limitation to enjoin. As this Court has already held in another case arising from Hurricane Katrina, the " Clean Water Act addresses only on-going pollution concerns, not the results of catastrophic flooding." [2]

Additionally, plaintiffs opposition memorandum completely ignores the dredging defendants other independent reasons why these claims should be dismissed with prejudice. The law is clear that the Clean Water Act does not provide for a private right of action for damage to individual property.[3] The law is equally clear that the Clean Water Act does not provide a basis for a citizen suit for environmental damage.[4]

Plaintiffs do not and cannot challenge these reasons for a dismissal with prejudice, as the

---

[2]    *O'Dwyer, et al. v. United States of America*, No. 05-4181 (E.D. La., July 19, 2006).

    *See, Middlesex County Sewerage Auth. V. Nat'l Sea Clammers Ass'n*, 453 U. S. 1, 11 (1981), and *EPA v. California ex rel. State Water Resources Control Bd.*, 426 U.S. 200, 206 (1976).

[4]   See Hamker v. Diamond Shamrock Chemical Co., 756 F.2d 392, 397 (5th Cir. 1985).

law does not permit the relief sought by the plaintiffs in their Fourth Cause of Action.

Accordingly, the dredging defendants are entitled to and the Court should enter a dismissal with

prejudice.

Respectfully submitted,

/s/ Terrence L. Brennan
William E. Wright, Jr. (Bar Roll No.8564)
Terrence L. Brennan (Bar Roll No. 3434)
of
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-5141
Facsimile: (504) 566-1201
wwright@dkslaw.com
tbrennan@dkslaw.com

Attorneys for C.F. Bean L.L.C., Bean Stuyvesant,
L.L.C., Stuyvesant Dredging Company, Stuyvesant
Dredging, Inc. and Royal Boskalis Westminster
N.V., in their own right and as successors to Bean
Dredging Corporation, C. F. Bean Corporation,
Bean Horizon Corporation and Bean Horizon
L.L.C.

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of December, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

1)     jfnevares-law@microjuris.com

2)     dbecnel@becnellaw.com

3)     csalas@salaslaw.com

4)     A.J. Rebennack ajrebennack@cox.net, Stephanie@rcaluda.com

/s/ Terrence L. Brennan

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § § § | CIVIL ACTION No. 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO: MRGO, *Reed*, No. 06-2152 MRGO, *Ackerson*, No. 06-4066 | § § § § | |

### REPLY IN FURTHER SUPPORT OF THE DREDGING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONCEALMENT AND IMPLIED WARRANTY CLAIMS PURSUANT TO FED. R. CIV. P. 12(c) AND 9(b)[1]

Plaintiffs offer no meaningful response to the Dredging Defendants' arguments that the

Complaints fail to state a claim for "concealment" or for breach of implied warranty. In their

---

This Reply is filed on the merits on behalf of Defendants Bean Dredging, L.L.C.; C.F. Bean L.L.C.; Bean Stuyvesant, L.L.C.; Stuyvesant Dredging Company; Stuyvesant Dredging, Inc.; Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corporation; C.F. Bean Corporation; Bean Horizon Corporation; and Bean Horizon L.L.C.  *In addition*, subject to the Court's ruling on the Limitation Dredgers' Motion for Leave to File Reply Briefs as *Amicus Curiae*, this Reply is tendered on behalf of Great Lakes Dredging & Dock Company, Mike Hooks, Inc., T.L. James and Company, Inc., Gulf Coast Trailing Company, a Louisiana Partnership, and TLJIC, L.L.C., a Partner therein, Luhr Bros, Inc., King Fisher Marine Services, LP, Weeks Marine  and Pine Bluff Sand and Gravel Company, because the filing of their Limitation petitions stayed all other lawsuits by operation of law.  *See* 46 U.S.C. App. § 185; Fed. R. Civ. P., Supp. Admiralty Rule F(3).  This brief will refer to the Bean entities, plus the proposed *amici* as the "Dredging Defendants."  Defendant Manson Construction Company is not a party to this filing.

1

NO NMS 131489 v1
2082967-000001


EXHIBIT
B
tabbies

two-paragraph argument, Plaintiffs assert little more than that such causes of action do exist.[2] Even if that were true—and for the proposed "negligent concealment" claim, it is not— Plaintiffs still must *plead* their claims. They have not done so. Both claims should be dismissed.

## ARGUMENT

### 1.   Plaintiffs Have Failed To State a Claim for "Concealment."

Plaintiffs' "concealment" claim has three fatal flaws, each of which warrants dismissal. First, this claim cannot succeed because *Plaintiffs' own allegations establish that nothing was concealed.*[3] Plaintiffs did not respond to this dispositive point.

Second, neither Louisiana law nor maritime law recognizes the tort of "negligent concealment" that Plaintiffs propose, and Plaintiffs concede that they have not stated a claim for *fraudulent* concealment.[4] Plaintiffs may not make up causes of action, nor may they pursue a novel application of existing law without giving the Defendants at least some notice of what they have in mind.

Third, the Complaints provide no basis for inferring that the Dredging Defendants owed Plaintiffs a duty to disclose. "If a misrepresentation claim is based on a failure to disclose, even fraudulent intent is insufficient to confer liability in the absence of a duty to disclose."[5] This

---

Pls.' Resp. at 2-3.

*See* Op. Mem. at 4-5; Compl. ¶¶ 7, 9 (alleging pre-excavation concerns with the MRGO's environmental effects, a "growing perception that the project had dramatically increased the region's vulnerability to hurricanes and tropical storms," and that by the 1990s the MRGO was "widely characterized as an environmental disaster"), ¶ 19 (discussing Hurricanes Betsy and George), ¶ 22 (alleging that the MRGO was a "critical and fundamental flaw" in New Orleans flood protection, as documented in the pre-Katrina assessment of a "storm surge expert").

*See* Pls.' Resp. at 2 ("Plaintiffs have not alleged 'fraudulent concealment' . . . . This is a claim of negligent concealment.") (emphasis omitted). A Westlaw search in all Louisiana cases (state and federal) for "negligent concealment" turns up two cases, both of which involve hiding witnesses.

*Dorsey v. Northern Life Ins. Co.*, No. 04-0342, 2005 WL 2036738, *18 (E.D. La. Aug. 15, 2005) (internal quotation marks and ellipses omitted).

2

disclosure obligation does not arise unless there is a fiduciary or other confidential relationship between the parties.[6]   The Complaints do not provide any basis for an inference that the Dredging Defendants had such a relationship with the Plaintiffs,[7] and Plaintiffs do not argue otherwise.

Because Plaintiffs' allegations establish that nothing was concealed, because "negligent concealment" is not a cause of action under Louisiana or maritime law, and because Plaintiffs have not provided in their Complaints (or even in their Response) any basis for inferring that the Dredging Defendants owed Plaintiffs a duty to speak, Plaintiffs' "concealment" claims should be dismissed.

II.     **Plaintiffs Have Failed To State a Claim for Breach of an Implied Warranty.**

Plaintiffs' Response fails to provide any meaningful defense of their implied warranty claim. Plaintiffs point out, correctly, that Louisiana law recognizes that contracts may be made for the benefit of third parties.[8] But the question presented here is whether there is any basis in the Complaints for inferring that *these* contracts between the Dredging Defendants and the U.S. Army Corps of Engineers are contracts *pour autrui*. There is not. Plaintiffs do not claim to be intended beneficiaries of these contracts, nor could they,[9] and the "court is not required to conjure up unpled allegations . . . to save a complaint."[10]  This is not a question of fact as Plaintiffs contend;[11] it is a failure to state a claim.[12]

---

See Op. Br. at 6 (citing cases).

See *id.*

Pls.' Resp. at 3.

See Op. Br. at 8.

*Rios v. Del. Rio*, 444 F.3d 417, 421 (5th Cir. 2006).

Pls.' Resp. at 3.

3

In addition, government contracts are presumed *not* to be contracts *pour autrui*.[13]  Not surprisingly, Plaintiffs do not claim that this is the exceptional case involving a government contract that gives a third-party a right to compensation, and thus a right to bring suit for breach of contract.[14]  As such, even if the proposed warranty existed in the Dredging Defendants' contracts, and even if it was breached, as a matter of law, Plaintiffs still would not have standing to complain.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in their Opening Memorandum, the Dredging Defendants respectfully request that the Court dismiss the concealment and implied warranty claims against the Bean Defendants and award any further relief that the Court deems just and proper.

---

[13]      Plaintiffs complain that the Dredging Defendants improperly cite "non-maritime law from other jurisdictions." Pls.' Resp. at 3. This is not true.  It is entirely reasonable for the Dredging Defendants to rely on federal cases interpreting government contracts and the Restatement (Second) of Contracts, in addition to a pair of admiralty cases originating in the Eastern District of Louisiana, including *Atlantic & Gulf Stevedores, Inc. v. Revelle Shipping Agency, Inc.*, 750 F.2d 457 (5th Cir. 1985). *See* Op. Mem. at 8-9.  Further, Plaintiffs do not disagree with any of the legal principles on which the Dredging Defendants rely.  *Compare* Pls.' Resp. at 3 (Louisiana law recognizes that third-party beneficiaries may sue to enforce contracts *pour autrui*), *with* Op. Mem. at 8 (under maritime law and the Restatement, third-parties may bring suit on a contract if they are intended beneficiaries, but not if they are incidental beneficiaries).

[14]      *See* Op. Mem. at 8-9 (citing *Montana v. United States*, 124 F.3d 1269, 1273 n.6 (Fed. Cir. 1997); *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003)).

[13]      *See id.*

NO NMS 131489 v1
2902907-000001

Respectfully submitted,


/s/Terrence L. Brennan .
William E. Wright, Jr. (Bar Roll No.8564)
Terrence L. Brennan (Bar Roll No. 3434)
          of
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-5141
Facsimile:  (504) 566-1201
wwright@dkslaw.com
tbrennan@dkslaw.com

Attorneys for C.F. Bean L.L.C., Bean Stuyvesant,
L.L.C., Stuyvesant Dredging Company, Stuyvesant
Dredging, Inc. and Royal Boskalis Westminster
N.V., in their own right and as successors to Bean
Dredging Corporation, C. F. Bean Corporation,
Bean Horizon Corporation and Bean Horizon
L.L.C.

5

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of December, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

1)    jfnevares-law@microjuris.com

2)    dbecnel@becnellaw.com

3)    csalas@salaslaw.com

4)    A.J. Rebennack ajrebennack@cox.net, Stephanie@rcaluda.com


/s/ Terrence L. Brennan

No NMS 134489 v1
200290740000BH

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § § § | CIVIL ACTION No. 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| | § § | |
| PERTAINS TO:  MRGO, *Reed*, No. 06-2152 MRGO, *Ackerson*, No. 06-4066 | § § § | |

REPLY IN FURTHER SUPPORT OF THE
DREDGING DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(c)[1]

Plaintiffs' claims are barred by multiple forms of sovereign and government contractor

immunity: (1) contractors cannot be sued for executing the will of Congress; (2) contractors

---

[1]      This Reply is filed on the merits on behalf of Defendants Bean Dredging, L.L.C.; C.F. Bean L.L.C.; Bean Stuyvesant, L.L.C.; Stuyvesant Dredging Company; Stuyvesant Dredging, Inc.; Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corporation; C.F. Bean Corporation; Bean Horizon Corporation; and Bean Horizon L.L.C. *In addition*, subject to the Court's ruling on the Limitation Dredgers' Motion for Leave to File Reply Briefs as *Amicus Curiae*, this Reply is tendered on behalf of Great Lakes Dredging & Dock Company, Mike Hooks, Inc., T.L. James and Company, Inc., Gulf Coast Trailing Company, a Louisiana Partnership, and TLJIC, L.L.C., a Partner therein, Luhr Bros, Inc., King Fisher Marine Services, LP, Weeks Marine and Pine Bluff Sand and Gravel Company ("Dredging Defendants"), because the filing of their Limitation petitions stayed all other lawsuits by operation of law. *See* 46 U.S.C. App. § 185; Fed. R. Civ. P., Supp. Admiralty Rule F(3). This brief will refer to the Bean entities, plus the proposed *amici* as the "Dredging Defendants." Defendant Manson Construction Company is not a party to this filing.

1

NO NMS 131490 v1
2903907-000001



share the government's sovereign immunity, including immunity under the Flood Control Act and the discretionary function exception; and (3) government contractors are further immune in their own right unless a plaintiff alleges that they departed from the government's specifications. The Dredging Defendants' motion for immunity is unopposed in several key respects because Plaintiffs rely almost entirely on the *Robinson* plaintiffs' opposition to the *Government's* motion ("*Robinson* Opposition"),[2] which does not address any form of government contractor immunity.

It is undisputed that on these pleadings the Dredging Defendants cannot be held liable for executing Congress's will in performing maintenance dredging in the MRGO. Under almost identical circumstances, the Supreme Court so held in *Yearsley v. W. A. Ross Constr. Co.*[3] Plaintiffs do not cite *Yearsley*, though it was the centerpiece of the Dredging Defendants' lead argument in their Opening Memorandum, nor do Plaintiffs contest the underlying principle. As Plaintiffs have conceded by their silence, *Yearsley* governs this case. Plaintiffs' claims must be dismissed for lack of jurisdiction.

In addition, Plaintiffs' only response to the Dredging Defendants' "shared immunity" argument is that there is no immunity to share.[4]   It is undisputed, therefore, that if the Government is immune, the claims against the Dredging Defendants must be dismissed as well. And the Government *is* immune.   Sovereign immunity precludes suit for the Government's performance of discretionary functions like those at issue here.[5]   Moreover, the Supreme Court

---

Pls.' Resp. at 2 (incorporating by reference the *Robinson* plaintiffs' pleadings and exhibits).

309 U.S. 18 (1940).

As public works contractors, the Dredging Defendants are entitled to share the protection of the Government's sovereign immunity. *See* Op. Mem. at 10-11.   Plaintiffs do not contest the Dredging Defendants' right to "shared immunity" beyond conclusory assertions that the Flood Control Act and discretionary function immunities apply only to the Government. Pls.' Resp. at 3.

Because Plaintiffs offer no response of their own to this ground of immunity, the Dredging Defendants rest on their Opening Memorandum (at 14-15), and the Government's Reply to the *Robinson*

2

held in *Central Green v. United States*[6] that the Flood Control Act provides absolute immunity for damages caused by flood waters. The Court's holding was unequivocal—the text of the FCA requires immunity be determined "*not by the character of the federal project or the purposes it serves, but by the character of the waters that cause the relevant damage.*"[7] Because Plaintiffs allege that they were harmed by flood waters, their claims are barred.

Finally—and last only because it is not jurisdictional—the Dredging Defendants are immune as government contractors. The *only* inference that can be drawn from Plaintiffs' Complaints is that the Dredging Defendants did what the U.S. Army Corps of Engineers told them to do. Plaintiffs challenge the *Government's* decisions to construct, operate, and maintain the MRGO; they do not allege any separate negligence on the part of the Dredging Defendants. Thus, under *United States v. Spearin*[8]—another Supreme Court case Plaintiffs do not cite—any harm caused by the Dredging Defendants' activities in the MRGO is the sole responsibility of the Government. Even if the Government must remain in these suits, the Dredging Defendants should not.

## ARGUMENT

I.     **It Is Undisputed that Plaintiffs May Not Sue the Dredging Defendants for Implementing the Will of Congress.**

The Dredging Defendants may not be sued for executing orders dispatched from Congress. Under almost identical circumstances, the Supreme Court in *Yearsley*[9] rejected claims

---

plaintiffs (at 19-34).

531 U.S. 425 (2001).

*Id.* at 434 (emphasis added).

248 U.S. 132 (1918).

*Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18 (1940).

3

against a government contractor for damage allegedly caused by dredging the Missouri River. The Court ruled that the contractor's actions were "directed by the government of the United States" and *there is no liability on the part of the contractor for executing [Congress's] will.*"[10] The *Yearsley* principle is directly applicable to these cases. "[W]here a contractor acts under the authority and direction of the United States," it is immune from suit.[11]

Plaintiffs do not dispute the principle, and the allegations in their Complaints preclude sidestepping this issue with the argument that they are not challenging the statutory authorization for the MRGO.[12] Plaintiffs *specifically pleaded* that Congress authorized and funded construction of the MRGO,[13] and they do not dispute that Congress funded the dredging of material from the MRGO to construct flood control levees, as well as maintenance dredging of the MRGO,[14] *thereby ratifying the dredging at issue in these cases.*[15]

Moreover, Plaintiffs have alleged—and continue to argue in response to the Dredging Defendants' and Government's motions to dismiss—that the Dredging Defendants were merely Government instrumentalities for whose actions the Government is liable.[16]   The Dredging

---

[10]   *Id.* at 20-21 (emphasis added).

[11]   *Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1316 (11th Cir. 1989); *see also Boyle v. United Tech. Corp.*, 487 U.S. 500, 506 (1988).

[12]   *See Robinson* Opp. at 24-26.

[13]   Compl. ¶ 7 ("Approved by the United States Congress under the Rivers and Harbor Act of 1956, construction . . . was completed in 1965 at an initial cost of approximately $92 million.").

[14]   *See* Op. Mem. at 7 (citing United States Army Corps of Engineers Design Mem. & Recon. Report. 100th Cong., 2nd Sess. (1988); Flood Control Act of 1965, Pub. L. No. 89-298, § 204, 79 Stat. 1073, 1077; Pub. L. 104-206, 110 Stat. 2984 (1996); Pub. L. 108-7, 117 Stat. 11 (2003)).

[15]   *Brooks v. Dewar*, 313 U.S. 354, 360-61 (1941) (repeated appropriations ratify the actions of the executive as an agent of Congress).

[16]   *See* Compl. ¶¶ 4, 13, 14 (referring to the Dredging Defendants as COE "subcontractors" and attributing their activities to the Government); Pls.' Opp. to Dredging Defs.' Mot. to Dismiss Pursuant to

4

Defendants have presented a narrow legal issue that can be resolved without looking beyond Plaintiffs' allegations and the Congressional Record. *Yearsley* precludes Plaintiffs from dragging the Dredging Defendants into their dispute with the Government.

**II.    The Flood Control Act Bars Suit for Damages Caused by Flood Waters.**

Plaintiffs allege that they were damaged by *flood waters* that escaped when *federal flood control projects* failed.   As such, on its face, the Flood Control Act ("FCA") provides immunity.[17]   Plaintiffs' reliance on the Fifth Circuit's 1971 decision in *Graci v. United States*[18] is misplaced for two reasons: (1) the *Graci* analysis was superseded by the Supreme Court in *Central Green v. United States*,[19] which held that the character of the waters—not the project— determines immunity; and (2) even if *Graci* retains any vitality, Plaintiffs allege that their damages occurred because federal flood control projects failed.[20]   Under any analysis, Plaintiffs' claims are barred by the FCA.

First, in *Central Green*, the Supreme Court superseded *Graci*'s focus on the nature of the project—FCA immunity no longer depends on whether a government project was built for flood control or navigation, but rather on the character of the waters:

> The text of the statute does not include the words "flood control project."  Rather it states that *immunity attaches to "any damage from or by floods or flood waters. . . ."*  Accordingly, the text of the statute directs us to determine the scope of the immunity conferred, *not by the character of the federal project or the purposes it serves, but by the character of the waters that cause the relevant damage.*[21]

---

the Suits in Admiralty Act at 12; Pls.' Opp. to Gov't Mot. to Dismiss at 9-11.

[17]    *See* 33 U.S.C. § 702c; Op. Mem. at 11-13.

[18]    456 F.2d 20 (5th Cir. 1971).

[19]    531 U.S. 425 (2001).

[20]    Compl. ¶¶ 1, 2, 21-23.

[21]    *Central Green*, 531 U.S. at 434 (emphasis added).

NO NMS 131496 v1
2902907-000004

> [I]n determining whether § 702c immunity attaches, courts should consider the character of the waters that cause the relevant damage rather than the relation between that damage and a flood control project.[22]

Plaintiffs allege that the character of the waters causing damage were "waters that flooded the New Orleans metropolitan area" as a result of Hurricane Katrina's "storm surge."[23] The *Robinson* Opposition makes a belated reference to "navigational waters,"[24] but Plaintiffs do not allege that "navigational waters" leaked out of MRGO because of negligent dredging by the Dredging Defendants. Rather, Plaintiffs expressly plead that storm-driven *flood waters* caused their damage when the New Orleans "flood protection system" failed.[25] Their claims are barred.

Plaintiffs resort to legislative history to argue that FCA immunity is restricted by the Government's "role and expenditures in providing flood protection,"[26] but this ignores the plain language of the statute and *Central Green*.[27] FCA immunity may not be premised on whether the MRGO is a flood, navigation, or mixed project; it is determined "*not* by the character of the federal project or the purposes it serves, but by the character of the waters that cause the relevant damage."[28] Here, by Plaintiffs' own admission, those were flood waters.

In addition, Plaintiffs ignore the Dredging Defendants' argument that their own

---

[22]   *Id.* at 437.

[23]   Compl. ¶¶ 2, 21, 22.

[24]   *Robinson* Opp. at 46, 47, 50 (damages caused by "MRGO's storm driven navigational waters").

[25]   Compl. ¶¶ 1, 21-23 (alleging twenty breaches of MRGO levees, three breaches of Industrial Canal levees, and flooding of Polder 1 by the 17th Street, Orleans, and London Avenue canals).

[26]   *Robinson* Opp. at 40-43.

[27]   *Central Green*, 531 U.S. at 434 (statutory text does not include words "flood control project").

[28]   *Id.* (emphasis added).

6

allegations distinguish this case from *Graci*.[29]  Plaintiffs allege flooding occurred because of

failures of "three levee systems" and flooding of "Polder No. 1" when the Lake Pontchartrain

levee system failed along the 17th Street Canal, Orleans Canal, and London Avenue Canal.[30]

Therefore, even under the old *Graci* analysis, Plaintiffs' claims are barred by the Flood Control

Act because the damages suffered were not "wholly unrelated" to flood control.[31]

Finally, this Court's recent decision in the Insurance cases[32] does not preclude finding the

FCA applicable here.  As the Court there explained, in the Insurance context,

> the question before the court is whether it is reasonable to find in the absence of
> further definition or provision in the ISO policy that there are two interpretations
> of the term "flood"—one which encompasses both a "flood" which occurs solely
> because of natural causes and a "flood" which occurs because of the negligent or
> intentional act of man and one which limits itself only to a flood which occurs
> solely because of natural causes.[33]

Immunity under the FCA presents a fundamentally different question.  The FCA's

concern is specifically with floods occurring "because of the negligent or intentional act of

man."[34]  In addition, interpreting statutory text does not require construing ambiguities against

---

[29]      *See* Pls.' Resp. at 3 (citing *Graci* for the naked assertion that the FCA "does not provide
immunity to anyone for maritime activities").  The Supreme Court has explained that statutes like the
Federal Tort Claims Act and the Suits in Admiralty Act do not waive the sovereign immunity of the
Government and its contractors under the Flood Control Act. *See United States v. James*, 478 U.S. 597,
599 (1986) (holding that the FCA "bars recovery where the Federal Government would otherwise be
liable under the Federal Tort Claims Act"); *Central Green*, 531 U.S. at 437 (explaining that *James*
"rejected" the proposition "that the Federal Government's subsequent waiver of sovereign immunity in
the Federal Tort Claims Act had impliedly repealed § 702c").

[30]      Compl. ¶¶ 1, 22, 23.

[31]      *Mocklin v. Orleans Levee District*, 877 F.2d 427, 430 (5th Cir. 1989); *see also* Op. Mem. at 13.

[32]      *In re Katrina Canal Breaches Consol. Litig. (Humphreys v. Encompass Ins. Co.)*, No. 05-4182,
2006 WL 3421012 (E.D. La. Nov. 27, 2006) (holding certain policy exclusions for "flood" damages did
not clearly apply to the flooding caused by Hurricane Katrina).

[33]      *Id.* at *14.

[34]      *Compare id.*, *with Central Green*, 531 U.S. at 427, 437 (holding that claims for flooding related

7

the drafter, as is the case with insurance policies.[35]  In holding that "courts should consider the character of the waters that cause the relevant damage rather than the relation between that damage and a flood control project,"[36] the Supreme Court in the context of the FCA has precluded the distinction this Court drew when interpreting the insurance policy exclusions.

### III.   The Dredging Defendants Are Entitled to Dismissal as Government Contractors.

As the Supreme Court held in its seminal decision regarding the government contractor defense, *United States v. Spearin*,[37] where "the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications."[38]  Plaintiffs' allegations establish that (1) the Government approved reasonably precise specifications with which the Dredging Defendants conformed; and (2) the Government knew about the dangers of contract performance.[39]  Plaintiffs do not even mention *Spearin*, and their attempt to disavow their own Complaints is futile.[40]  Plaintiffs are bound by their pleadings;[41] their claims must be dismissed.

---

to "negligence in the design, construction, and maintenance" of a canal were barred by FCA).

[35]   *See Humphreys*, 2006 WL 3421012, at *5-6.

[36]   *Central Green*, 531 U.S. at 437.

[37]   248 U.S. 132 (1918).

[38]   *Id.* at 136; *see also* Op. Mem. at 16-17 (citing additional cases to same effect).

[39]   *See* Compl. ¶¶ 9, 13-17.

[40]   *See* Pls.' Resp. at 3-4 (asserting that Complaints did not allege that the Government approved project parameters with which Dredging Defendants conformed, and that they did not allege that the Government knew about the potential harmful effects of the MRGO).

[41]   *See Morales v. Dept. of the Army*, 947 F.2d 766, 769 (5th Cir. 1991) ("Factual assertions in pleadings are judicial admissions conclusively binding on the party that made them. [The defendant] may not now argue contrary to the factual allegations of his complaint.") (internal citations and quotation marks omitted); *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995) ("Allegations in a complaint are binding admissions, . . . and admissions can of course admit the admitter to the exit from

NO NMS 13:490 v1
2-902907-000001

First, the Complaints allege that the Government approved reasonably precise specifications with which the Dredging Defendants conformed.[42] This case involves public works contracts, and the only allegations regarding the maintenance dredging are that the Government decided to conduct such dredging and not to use the dredge spoil differently.[43] This is not a case where detailed contract specifications are at issue, like a product liability claim turning on the peculiar design of military equipment. Plaintiffs' Complaints identify the MRGO's authorizing legislation, they identify the location, depth, and width of the project established by that legislation, and they identify the maintenance dredging contracts at issue.[44] Plaintiffs do *not* allege that the Dredging Defendants dredged negligently, for example, by dredging outside the parameters of the contracts, and their Response made no attempt to clarify how—*separate and apart* from the alleged negligence of the Government—the Dredging Defendants were negligent. Quite the contrary, Plaintiffs relied on the *Robinson* Opposition, which emphasized that Government negligence is "*solely*" the issue here.[45]

This case is no different than *Roland v. Jumper Creek Drainage Dist.,*[46] another case Plaintiffs ignore, where the court dismissed a complaint against a dredging contractor for damages sustained when drainage canals and ditches overflowed because the contractor

---

the federal courthouse."); *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) ("Litigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail.").

[42]   *See* Compl. ¶¶ 13-17.

[43]   *Id.* ¶ 14 (Defendants dumped spoil in the Gulf rather than using it to mitigate wetland damage).

[44]   *Id.* ¶¶ 7, 16-17.

[45]   *Robinson* Opp. at 26 ("Plaintiffs' negligence claims are predicated *solely* on the Army Corps' incompetence during the project's investigation, planning, construction, maintenance and operational phases.") (emphasis in original).

[46]   4 F.2d 719 (S.D. Fla. 1925).

9

performed pursuant to the plans and specifications under the supervision of the Government drainage district engineer. Just so here, Plaintiffs are challenging the *Government's* decisions.

The Complaints also allege the second element of contractor immunity—that the Government was warned or already knew about the risks presented by the MRGO.[47]  Plaintiffs falsely assert that they pleaded no such thing,[48] but in fact, Plaintiffs allege, "*Before excavation of the MRGO, state and federal resource agencies expressed concern* about the project's apparent lack of ecological consideration," and that, "[i]n March 2000, the Environmental Subcommittee of the MRGO Policy Committee"—*part of the U.S. Environmental Protection Agency*—"prepared a restoration/mitigation plan to address environmental impacts related to the construction, operation and maintenance of the MRGO."[49]  Even *Kerstetter v. Pacific Sci. Co.*,[50] the one and only case cited by Plaintiffs in their Response, holds that there is no duty to inform the Government of what it already knows.[51]  Plaintiffs' claims should be dismissed.

## CONCLUSION

The Dredging Defendants respectfully request that the Court dismiss claims against the Bean Defendants for lack of jurisdiction, or in the alternative, for failure to state a claim.

---

[47]    *See Boyle*, 487 U.S. at 512; *Miller v. Diamond Shamrock Co.*, 275 F.3d 414 (5th Cir. 2001).

[48]    Pls.' Resp. at 4 (arguing Plaintiffs' have not alleged Government knowledge, "*certainly not in ¶ 9 of the Complaints*, as claimed by the Dredging Defendants") (emphasis added).

[49]    Compl. ¶ 9 (emphasis added) (also alleging that "[c]oncerns expanded with a growing perception that the project had dramatically increased the region's vulnerability to hurricanes and tropical storms").

[50]    210 F.3d 431 (5th Cir. 2000) (cited in Pls.' Resp. at 4).

[51]    *Id.* at 436 ("The third part of the Boyle test requires the contractor to warn the government about those equipment dangers that were known to the contractor, *but not to the government*.") (emphasis added).

10

Respectfully submitted,


/s/ Terrence L. Brennan
William E. Wright, Jr. (Bar Roll No.8564)
Terrence L. Brennan (Bar Roll No. 3434)

of
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-5141
Facsimile:  (504) 566-1201
wwright@dkslaw.com
tbrennan@dkslaw.com

Attorneys for C.F. Bean L.L.C., Bean Stuyvesant,
L.L.C., Stuyvesant Dredging Company, Stuyvesant
Dredging, Inc. and Royal Boskalis Westminster
N.V., in their own right and as successors to Bean
Dredging Corporation, C. F. Bean Corporation,
Bean Horizon Corporation and Bean Horizon
L.L.C.

11

NO NMS 131490 v1
76029037.000001

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of December, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

1)      jfnevares-law@microjuris.com

2)      dbecnel@becnellaw.com

3)      csalas@salaslaw.com

4)      A.J. Rebennack ajrebennack@cox.net, Stephanie@rcaluda.com


/s/ Terrence L. Brennan

13

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § § § | **CIVIL ACTION**<br>**No. 05-4182 "K"(2)**<br><br>**JUDGE DUVAL**<br>**MAG. WILKINSON** |
| | § | |
| PERTAINS TO: MRGO, *Reed*, No. 06-2152 MRGO, *Ackerson*, No. 06-4066 | § § § § | |

## REPLY IN FURTHER SUPPORT OF THE DREDGING DEFENDANTS' MOTION TO DISMISS PURSUANT TO THE SUITS IN ADMIRALTY ACT AND FED. R. CIV. P. 12(c) [1]

Pursuant to 46 U.S.C. app. § 745, all claims against the Dredging Defendants must be

dismissed because, "where a remedy is provided by [the Suits in Admiralty Act ("SAA")] it shall

---

[1]    This Reply is filed on the merits on behalf of Defendants Bean Dredging, L.L.C.; C.F. Bean L.L.C.; Bean Stuyvesant, L.L.C.; Stuyvesant Dredging Company; Stuyvesant Dredging, Inc.; Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corporation; C.F. Bean Corporation; Bean Horizon Corporation; and Bean Horizon L.L.C.  *In addition*, subject to the Court's ruling on the Limitation Dredgers' Motion for Leave to File Reply Briefs as *Amicus Curiae*, this Reply is tendered on behalf Great Lakes Dredging & Dock Company, Mike Hooks, Inc., T.L. James and Company, Inc., Gulf Coast Trailing Company, a Louisiana Partnership, and TLJIC, L.L.C., a Partner therein, Luhr Bros, Inc., King Fisher Marine Services, LP, Weeks Marine  and Pine Bluff Sand and Gravel Company, because the filing of their Limitation petitions stayed all other lawsuits by operation of law.  *See* 46 U.S.C. App. § 185; Fed. R. Civ. P., Supp. Admiralty Rule F(3).  This brief will refer to the Bean entities, plus the proposed *amici* as the "Dredging Defendants."  Defendant Manson Construction Company is not a party to this filing.

1

NO NMS 131488 v1
2002907-000001



hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States . . . whose act or omission gave rise to the claim."[2]

Plaintiffs allege that the Government is responsible for the Dredging Defendants' activities in the MRGO, and they allege that the SAA provides them with a remedy against the Government for those activities.[3]   Nonetheless, Plaintiffs oppose dismissing the Dredging Defendants from these cases, arguing that dismissal would be premature without discovery and without a ruling on the Government's motion to dismiss.[4]  Plaintiffs are mistaken.  There is no factual dispute requiring discovery because Plaintiffs' own allegations establish that the Dredging Defendants acted within the scope of a Section 745 agency.[5]  Nor is there any reason to delay dismissal pending the outcome of the Government's motion—the Dredging Defendants' rights under Section 745 are not contingent on Plaintiffs properly managing their litigation against the Government.  Section 745 requires dismissing Plaintiffs' claims.

## ARGUMENT

I.    **Plaintiffs' Allegations Establish that the Dredging Defendants Are "Agents" of the Government Under Section 745.**

Only one inference can be drawn from the Plaintiffs' Complaints:   the Dredging Defendants acted subject to the Government's "overall control and direction" to accomplish

---

[2]    If the Court determines that Plaintiffs' claims are barred by any of the several immunities raised in the Dredging Defendants' Immunity Motion (Doc. No. 1160), then it would not be necessary to resolve this claim for dismissal pursuant to the SAA exclusivity provision.  *See* Op. Mem. at 2-3.

[3]    *See* Compl. ¶¶ 4, 13, 14; *see also* Pls.' Resp. at 12 (arguing that the Government is responsible for the Dredging Defendants' activities and that the SAA provides a remedy against the Government); Op. Mem. at 3-9 (explaining why, if the Plaintiffs have any remedy on the facts alleged, then they have a remedy against the Government under the SAA).

[4]    *See* Pls.' Resp. at 8-9, 12.

[5]    *See* Op. Mem. at 9-10; Compl. ¶¶ 4, 13-17.

2

tasks undertaken on the Government's behalf.[6]  This is all that Section 745 requires.[7]  Plaintiffs assert that there is no evidence in the record or allegations in their Complaints to establish the Government's control over the Dredging Defendants' activities,[8] but in fact, Plaintiffs themselves expressly attribute the Dredging Defendants' activities in the MRGO to the Government.  In addition to the concessions in their Response,[9] Plaintiffs' Complaints include the following allegations:

> "*the negligence of the United States of America arises out of its maritime activities . . . carried out* by the United States of America's own fleet of dredging vessels and *by fleets of dredging vessels owned by the other Defendants*, pursuant to maritime dredging contracts between them";[10]

> "*the Corps of Engineers*, using its own fleet of dredge vessels and *through maritime dredging contracts with the other Defendants*, continuously dredge the soil from the bottom of the channel";[11]

> "the Corps of Engineers *and its subcontractors (the other Defendants)* do advance maintenance dredging to the channel to a depth of 41 feet";[12]

> "The Corps of Engineers does not mitigate or compensate for the damage it causes to the wetlands.  Each year, the United States of America pays the other Defendants, pursuant to maritime dredging contracts, about $22 million to dredge the bottom of the MRGO channel . . . ."[13]

---

[6]   *See* Compl. ¶¶ 4, 13, 14 (quoted below).

[7]   *Favorite v. Marine Personnel & Provisioning, Inc.*, 955 F.2d 382, 388 (5th Cir. 1992) (cited in Pls.' Resp. at 9-10); *Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995, 997-98 (9th Cir. 1997) (same).

[8]   Pls.' Resp. at 8-11.

[9]   *See* Pls.' Resp. at 12 ("Plaintiffs agree with the Dredging Defendants' argument that Plaintiffs' claims against the Government fall within the Court's admiralty jurisdiction . . . .  Plaintiffs also agree with the Dredging Defendants' contention that the SAA allows Plaintiffs to assert admiralty claims against the Government for the damages they have suffered.").

[10]   Compl. ¶ 4 (emphasis added).

[11]   *Id.* ¶ 13 (emphasis added).

[12]   *Id.* ¶ 14 (emphasis added).

[13]   *Id.*

3

These admissions firmly establish that the Dredging Defendants' MRGO activities were undertaken on the Government's behalf, that those activities were subject to the Government's control, and that the party potentially liable for those activities is the United States. Put another way, it is impossible to infer from Plaintiffs' allegations that the Dredging Defendants were *not* subject to the Government's "overall control and direction" in carrying out their contractual obligations in the MRGO. Plaintiffs have pleaded themselves out of court and no discovery would remedy that deficiency.[14]

Plaintiffs' opposition to the Government's motion to dismiss further demonstrates that discovery would not resolve this issue. Arguing that their claims against the United States should not be dismissed for failure to comply with the Admiralty Extension Act, Plaintiffs explain that the Government is responsible "for damage resulting from the dredging performed under the maritime dredging contracts between the Government and the Dredging Defendants. *Pursuant to those contracts, the Dredging Defendants dredged the MRGO at the Government's request.*"[15]

In light of these admissions, Plaintiffs cannot be heard to assert that the relationship between the Dredging Defendants and the Government is a question of fact. It is not. The parties agree about the law, they agree that the Dredging Defendants were the Government's

---

[14]   *See Morales v. Dept. of the Army*, 947 F.2d 766, 769 (5th Cir. 1991) ("Factual assertions in pleadings are judicial admissions conclusively binding on the party that made them. [The defendant] may not now argue contrary to the factual allegations of his complaint.") (internal citations and quotation marks omitted); *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995) ("Allegations in a complaint are binding admissions, . . . and admissions can of course admit the admitter to the exit from the federal courthouse.") (citing *Morales*); *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) ("Litigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail.").

[15]   Pls.' Opp. to Gov't Mot. to Dismiss at 9 (emphasis added); *see also id.* at 10-11 (arguing that the Extension Act requirements do not apply to claims against the Government for damage done by the vessels owned or operated by the Dredging Defendants).

4

"subcontractors," that the Government performed maintenance in the MRGO "through maritime dredging contracts with the other Defendants," and that if anyone is subject to suit for damages allegedly done by the Dredging Defendants' vessels, it is the United States.[16] The Dredging Defendants undertook to dredge the MRGO on the Government's behalf, and they acted subject to the Government's "overall control and direction." All claims should be dismissed.

## II.   Plaintiffs' Missteps in Suing the Government Are Irrelevant to the Dredging Defendants' Rights Under Section 745.

Any missteps Plaintiffs made in suing the United States cannot impair the statutory rights of the Dredging Defendants to dismissal under Section 745. Plaintiffs allege that they have a remedy against the Government for damages connected to the Dredging Defendants' activities in the MRGO.[17] They argue, however, that the Dredging Defendants may not raise a Section 745 defense unless and until this Court denies the Government's motion to dismiss.[18] Plaintiffs do not cite any authority to support their argument. In fact, regardless of how the Court rules on the Government's motion, the Dredging Defendants are entitled to dismissal. For purposes of Section 745 and the Dredging Defendants' motion, the issue is whether Plaintiffs *had* a remedy against the Government on the facts alleged; it does not matter whether they pursue that remedy properly, improperly, or not at all.[19] All claims should be dismissed.

---

[16]     *See* Compl. ¶¶ 4, 13, 14; Resp. at 12; Op. Mem. at 3-9.

[17]     Pls.' Resp. at 12.

[18]     *Id.* at 11-12.

[19]     *See Favorite*, 955 F.2d at 388-89 (dismissing claims against agent under § 745 even though suit against the United States had been dismissed on statute of limitations grounds); *Watts v. Pinckney*, 752 F.2d 406, 408 (9th Cir. 1985) (vacating judgment against agent as void for lack of jurisdiction based on § 745 even though suit against United States was dismissed for failure to comply with "forthwith service" requirement in 46 U.S.C. app. § 742); *Farnsworth v. Sea-Land Serv., Inc.*, No. 87-5954, 1989 WL 20544, at *2-3 (E.D. La. Mar. 7, 1989), *aff'd* 896 F.2d 552 (5th Cir. 1990) (table) (dismissing claims against agent under § 745 even though suit against the United States had been dismissed for failure to comply with Fed. R. Civ. P. 4).

NO NMS 134488 v1
2902907-000001

## CONCLUSION

For the foregoing reasons, and the reasons set forth in their Opening Memorandum, the Dredging Defendants respectfully request that the Court dismiss all claims against the Bean Defendants as barred by 46 U.S.C. app. § 745, and award any further relief that the Court deems just and proper.

Respectfully submitted,

/s/Terrence L. Brennan
William E. Wright, Jr. (Bar Roll No.8564)
Terrence L. Brennan (Bar Roll No. 3434)
          of
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
wwright@dkslaw.com
tbrennan@dkslaw.com

Attorneys for C.F. Bean L.L.C., Bean Stuyvesant, L.L.C., Stuyvesant Dredging Company, Stuyvesant Dredging, Inc. and Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corporation, C. F. Bean Corporation, Bean Horizon Corporation and Bean Horizon L.L.C.

6

NO NMS 131488 v1
2902907-000001

NO NMS 131488 v1
2 02907-00 0001

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of December, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

1)      jfnevares-law@microjuris.com

2)      dbecnel@becnellaw.com

3)      csalas@salaslaw.com

4)      ajrebennack@cox.net, Stephanie@rcaluda.com

/s/ Terrence L. Brennan

8