UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | Civil Action No. 05-4182 |
| | * | Consolidated Litigation |
| _____ | * | |
| | * | Section "K" |
| PERTAINS TO: | * | |
| RECORD DOCUMENT 1508 | * | New Orleans, Louisiana |
| | * | November 29, 2006 |
| * * * * * * * * * * * * * * * * | | |


MOTION TO CONTINUE TRIAL,
BEFORE THE HONORABLE STANWOOD R. DUVAL, JR.,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Travelers Property          Lugenbuhl, Wheaton, Peck, Rankin
Casualty Company of              & Hubbard
America:                         By:  RALPH S. HUBBARD, III, ESQ.
                                 By:  SIMEON REIMONENQ, JR., ESQ.
                                 Pan-American Life Center
                                 601 Poydras Street, Suite 2775
                                 New Orleans, Louisiana 70130


For Xavier University:          Sher, Garner, Cahill, Richter,
                                 Klein & Hilbert
                                 By:  JAMES M. GARNER, ESQ.
                                 By:  KEVIN M. McGLONE, ESQ.
                                 909 Poydras Street, Suite 2800
                                 New Orleans, Louisiana 70112


Court Audio Operator:           Cindy Usner

Transcriptionist:               Dorothy Bourgeois
                                 c/o U.S. District Court
                                 500 Poydras Street, Room C151
                                 New Orleans, Louisiana 70130
                                 (504) 589-7721


Proceedings recorded by electronic sound recording,

transcript produced by transcription service.

2

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | (Wednesday, November 29, 2006) |
| 3 | THE COURT:  Call the case, please. |
| 4 | THE CLERK:  The next matter on the docket is Civil |
| 5 | Action 05-4182, Section "K", consolidated with 06-0516, which |
| 6 | is the In Re:  Katrina Canal Breaches Consolidated Litigation, |
| 7 | Pertains to Insurance of Xavier University here on the motion |
| 8 | document 1508. |
| 9 | MR. HUBBARD:  May it please the Court, I'm Ralph |
| 10 | Hubbard representing Travelers Property Casualty Company of |
| 11 | America. |
| 12 | THE COURT:  Thank you, sir. |
| 13 | MR. HUBBARD:  And much has transpired since we last |
| 14 | spoke, Judge. |
| 15 | THE COURT:  This is true. |
| 16 | MR. HUBBARD:  It's good to see you. |
| 17 | THE COURT:  And much will transpire after we speak. |
| 18 | MR. HUBBARD:  That is true as well. |
| 19 | THE COURT:  Yes. |
| 20 | MR. HUBBARD:  But what we have before you today is |
| 21 | Travelers' Motion to Continue the Trial in this case filed by |
| 22 | Xavier as Plaintiff, which is currently set for January 16th. |
| 23 | That case was set for trial when it was in another section of |
| 24 | this court. |
| 25 | THE COURT:  Right. |

1          MR. HUBBARD:  It has been here for some time now, and

2     in this court it's part of the Katrina umbrella.  It is here

3     not because it is unique, but quite the opposite, because it is

4     like many, many other cases which were here when it came and

5     which continued to come into this court, involving the flood

6     question, which the Court has been wrestling with for months.

7          THE COURT:  Right.

8          MR. HUBBARD:  And maybe this motion in a way, and I'm

9     not sure exactly what the thinking of the Court is, hopefully

10    we'll be discussing that further on today.  But certainly,

11    perhaps we've been overtaken by events in light of the fact

12    that with the decision it's no longer speculation about whether

13    certain types of discovery and a certain type of experts might

14    be required for the trying of this case, but as with the

15    current state of the law based on the opinion that you handed

16    down on Monday, all of this is a certainty unless and until

17    somebody else tells us that that's not the case.

18          THE COURT:  Exactly.

19          MR. HUBBARD:  I hope that that decision will be made

20    in an expeditious manner and I'm certainly going to do

21    everything and I know the Court is doing everything.

22          THE COURT:  Right.

23          MR. HUBBARD:  And has done everything that it can in

24    its power to alert the Court of Appeals that this is something

25    that --

1          THE COURT:  And will continue to do so.

2          MR. HUBBARD:  -- that needs to be dealt with.

3          THE COURT:  All right.

4          MR. HUBBARD:  Now, the simple fact of the matter is

5    that in light of all of those things, Xavier doesn't have those

6    types of experts listed.  We don't have those types of experts

7    employed.  And I think that the basic reason for the umbrella

8    in the beginning of all of this with the Levee District was to

9    see that there was joint and unified discovery with respect to

10   what happened at those levees, because this question as to what

11   happened and why was teed up initially in the claims against

12   the Orleans Levee District and its contractors.

13          So, this case is part and parcel of those other cases

14   and as I said, I don't see any basis for treating it uniquely.

15   And moreover, the interest of judicial economy certainly would

16   not be served by trying it piecemeal.

17          THE COURT:  Well, that's what I was going to ask you,

18   Mr. Hubbard.  And I've looked at the motions and it's a bit

19   intricate but it appears it wouldn't be feasible to sever the

20   claims emanating from the water that would relate to the water.

21   In other words, to leave the water damage exclusion out of this

22   and try the case based on whatever other coverages are

23   available.  That doesn't seem to work.

24          MR. HUBBARD:  It's not going to work because the

25   question is -- I mean if we only owe for wind, the question is

1   how much of the $42 million that was spent was attributable to

2   water and how much was attributable to wind.  And then, of

3   course you have a different question:  If we do owe, if your

4   opinion is affirmed, the question then becomes why did the

5   levees fail, what levees failed?

6           THE COURT:  There's no question.

7           MR. HUBBARD:  Where did the water come from?

8           THE COURT:  No, that's true.

9           MR. HUBBARD:  And nobody has done a lick of work

10  about that because it really wasn't -- it certainly wasn't on

11  my radar screen whether it should have been.

12          THE COURT:  Yes, and as I'm sure all of you noticed

13  in the opinion, I'm not sure it impacts this particular

14  property but we still have to at that point, and I mentioned it

15  in oral argument, we'll have to confront the anti-concurrent

16  cause clause.  If there is, let's say, overtopping damage as

17  well as -- I'm giving an example as well as we -- and I don't

18  know.

19          MR. HUBBARD:  Right.

20          THE COURT:  I don't know that here at all whether

21  overtopping is involved at all.

22          MR. HUBBARD:  Right.

23          THE COURT:  All right.  But I see the problem is, and

24  I'm interested to see what Mr. Garner has to say, but the

25  problem is we've got a lot of Plaintiffs here and we're trying

1  to coordinate the discovery, as you well know, on the levee,

2  the alleged levee failures and what -- well, I said the alleged

3  levee failures, the alleged negligence and/or a lack of

4  maintenance referenced to levee failures.  And that's an

5  operative fact in triggering, based on my decision, the

6  coverage.

7          MR. HUBBARD:  Right.

8          THE COURT:  So, I understand your argument and I

9  certainly would prefer to do it and Mr. Garner, certainly in a

10  coordinated fashion.

11          MR. HUBBARD:  And I guess, Judge, if I could just

12  take two minutes to --

13          THE COURT:  You can take all of the time you want.

14          MR. HUBBARD:  Well, the opposition to our motion

15  weighs in heavily on the underlying facts and how things

16  transpired between the parties.

17          THE COURT:  Well, I saw that.

18          MR. HUBBARD:  We didn't go there in our motion

19  because we're talking about discovery and well, a part of it is

20  needing more time for our experts because the devil is in the

21  details in these kinds of cases.

22          THE COURT:  Well, and I know there is a request to

23  transfer it back to Judge Vance, but part of our protocol is

24  the levee breaches, like it or not, are here.  The Supreme

25  Court has refused the writ so it looks like we're going to

 1   eventually have to decide what cause.  And there are a myriad

 2   of breaches and different canals and et cetera, but we're going

 3   to have to get into that and Judge Vance -- we're not going to

 4   have a decision by Judge Vance over here and then another

 5   inconsistent decision here.

 6          So, I understand your argument and I understand

 7   Mr. Garner's plight, his client's plight.

 8          MR. HUBBARD:  Right.

 9          THE COURT:  And I was trying to think of some way to

10   separate it out, you know, where we could try your case on the

11   coverages that were in place and then sever that one, but it

12   may be because of how you allocate the damages, it may be

13   impossible.

14          MR. HUBBARD:  Well, actually I mean, and as I was

15   saying the devil is in the details, one of the problems that

16   we've had in adjusting this claim is lack of the type of

17   information that we needed and it's a historical problem.  I

18   mean our original independent adjuster went out there and

19   Mr. Landis was lead contractor and tried to work with him in

20   coming up with an estimate of damages.  He came up with a

21   relatively low estimate of damages above, for non flood

22   damages.  And in December, you know, and in fact of course

23   there are deductibles.  There's 27 buildings and there were

24   deductibles, and so I believe that it was his opinion at that

25   time that no money was owed and no money was paid, back in

1    those days.

2          And I just want to respond briefly because there are

3    some things like we didn't pay until they filed suit and things

4    like that, and that we owe bad faith.  All of this is merits

5    kind of discussion, Your Honor, but I didn't want to leave it

6    completely unanswered.  So, at some point in time in December

7    we got a report from Mr. Landis which purported to break out

8    the floors above the first floor, treating the first floor as

9    flood and everything else as not flood.

10          Well, there was a lot of dehumidifying and I have

11    learned that dehumidifying a large building can run into the

12    millions of dollars.  I mean, much to my amazement, it's a very

13    serious business and mold and so forth as well, all

14    attributable to the flood which if the flood is excluded, we

15    would not normally have paid.  And so, we've been trying to get

16    the backup for that information because the document which is

17    attached to their opposition which lists a lot of numbers is

18    not the type of scope analysis, as they call it in the

19    business, as to what type of work needs to be done and where

20    and why, that we are typically used to using in the industry.

21          So, we didn't have the information that we needed.

22    We at that point got our own set of engineers to go out there

23    and look.  Much of the work had been done by then.  Now, as I

24    said our original independent adjuster thought we were looking

25    at a million and a half dollars and when we got a number of $15

 1    million from Mr. Landis, he was surprised.  He was off by a

 2    factor of ten.

 3             So, our guys went out there and looked at it in an

 4    after the fact manner but did a scientific analysis, but said

 5    what they really needed was this backup information that talked

 6    about the scope.  And they ultimately came in with somewhere

 7    between four and $5 million.  That money was paid.  Travelers

 8    has paid everything that it thinks it owes.  There's other

 9    business interruption and so forth.

10             THE COURT:  For the wind?

11             MR. HUBBARD:  For the wind.

12             THE COURT:  Yes, the wind.  And then, the business

13    interruption, you're still dealing with?

14             MR. HUBBARD:  I think that we've paid everything that

15    we owe there.  I don't think there's a problem there.  And we

16    have also paid for contents.  We just got that information

17    recently, but I believe that somewhere $10 million has been

18    paid on this claim, which is -- I mean, it is a large claim.  I

19    think they say that they've spent $42 million for one thing or

20    another.  And the question is, you know, do we owe it or do we

21    not?  We think that we have paid in good faith everything that

22    we owe, and we only recently have learned just in the last few

23    days that Mr. Landis does have the kind of scope information

24    apparently that we need and they are working on getting that to

25    us.

1           And then we were also lambasted to some extent for

2    not getting the proper -- for not getting deposition dates and

3    so forth.  And there's two sides to every story.  I mean, we

4    gave them dates in October that didn't work for them and now

5    we've having trouble getting dates in December.  You know,

6    they've noticed a deposition for December 1st and I guess I

7    would submit to the Court that Mr. Garner and I have been

8    working together and know each other well for many years, and

9    the fact that neither one of us has filed a motion, you hadn't

10   seen our faces here before except in connection with the flood

11   exclusion, neither has the Magistrate Judge; we're managing to

12   work out things like that, I think.

13           THE COURT:  Yes, sir.

14           MR. HUBBARD:  And we're still waiting on -- so, we're

15   waiting on the Landis report.  We're also waiting for

16   information about their flood carrier that they've refused to

17   disclose to us who that is and give us the information that we

18   need to see about what they might have been paid by them.  And

19   it's like any other lawsuit, you know, the parties are kind of

20   scrapping with each other a little bit.

21           THE COURT:  Well, my concern and I have, you know,

22   certainly empathy for both of your clients; my concern is how

23   do we try the case?  And I know there was flood insurance, I'm

24   talking about NFIP flood insurance in place as well.

25           MR. HUBBARD:  Right.

1        THE COURT:  So, you know, I was thinking about in

2   perhaps a foolish attempt to assist the parties trying to sever

3   things out, but it looks like it would be very difficult and it

4   maybe wasteful.  I will be interested to hear what Mr. Garner

5   says, but I'm not going to -- Mr. Garner needs to know that I'm

6   not going to try the levee breach case now.  I mean, one, it

7   may be a waste of time.  The Court of Appeals may -- of course,

8   I am going to have to try in another aspect, perhaps if the

9   Court is not depending on the immunity decision, which I

10  haven't even started yet.

11        But in other words, if the Fifth Circuit doesn't

12  agree with my ruling then all of that is for naught.  So I'm

13  trying to think about how we go about that, but I'm not going

14  to try the levee breach case.  That is if it was in fact

15  negligence and because in fact was for this damage was "X".

16  I've got to do that under the umbrella.

17        MR. HUBBARD:  Well, I have to tell you, Judge, and I

18  think we have laid it out in our reply memo which was filed

19  last Tuesday, I think.  But if you're going to try the case

20  right now, I mean the judicial economy is not going to be

21  served, because if your decision is upheld and there's no

22  reason to parse out the flood, I mean you're talking about

23  pages and pages and pages of details.  And I would suspect days

24  of testimony, if not even longer than that.  It's very serious.

1          We have 27 buildings and you're talking about a score

2   of different things.  You're going to have different opinions

3   from different experts, and as well as all these fact witnesses

4   as to what the scope of the work should have, would have, could

5   have been.  And to try to carve the flood out is a very serious

6   investment of time on the part of the Court and the parties and

7   lots of dollars there.

8          So, we don't think it would work.  You know, we think

9   that this case -- I mean, there are a lot of people that would

10  like to be trying their case, you know, January 16th or

11  whenever.  We're all caught up in the same mill and everybody

12  is doing everything they can to kind of expedite that, but I

13  think that the one thing that we can agree on, it doesn't make

14  sense to have every one of these hundreds of cases go out and

15  do its own discovery on what happened, and why.

16          THE COURT:  No, that's not going to happen.

17          Mr. Garner, no matter how eloquent you are, I can

18  tell you in advance, that's not going to happen.

19          MR. HUBBARD:  So, we respectfully suggest that we

20  would like to see this case continued without date and the

21  deadlines bumped and we'll continue working towards what we can

22  work on to get the case ready for trial.

23          THE COURT:  All right, thank you, sir.

24          Mr. Garner?

25          MR. GARNER:  Thank you, Your Honor.

1          THE COURT:  Now that I have thrown cold water on you

2     already, I'm sure you'll recover.

3          MR. GARNER:  I'll try to rise like the phoenix.

4     Your Honor always talks about trial dates being contracts with

5     the Court and I think we've tried to live with that contract.

6     And I'll stipulate Ralph and Simeon are good guys who I like

7     working with.  I don't blame them for any of this.  We are in a

8     bit of a plight though, as Your Honor knows through the papers.

9     I disagree with Ralph.  Ralph has got to defend his client, but

10    I can't wait to try the bad faith case because all of the

11    information they were given last November and December, they've

12    repeatedly -- not necessarily Ralph, but Simeon and his

13    adjusters repeatedly met with our people.

14          I think these cases have a lot of intellectual issues

15    and an 85 page opinion on what the word "flood" means shows

16    that.  But at the end of the day, I don't think particularly a

17    claim like Xavier's is going to be that complicated.

18    Obviously, my opinion is look at the IPIT (phonetic) report.  I

19    mean, Your Honor thought it was a fact issue but at trial, I'll

20    put on one witness, the author of the IPIT report, who is going

21    to say the report says what it says.  It's like three feet

22    thick with the attachments.  I'm not the Sewerage and Water

23    Board case.

24          And there is going to be, I agree with Ralph, those

25    cases are going to involve a lot more discovery and a lot more

1   witnesses over whose fault it was and whether it was fault.

2   When an insurer has to pay under an all risk policy I don't

3   have to prove they've got a subrogation claim against somebody.

4   That's their problem.  And I put it in the record in my <u>John</u>

5   <u>George's</u> case, my Imperial partners in the <u>Imperial Trading</u>

6   case, Travelers paid the roof and then went out and sued the

7   roofer on a subrogation claim.

8            I don't have to prove negligence per se to collect.

9   I have to show it was an active man some kind of way.  The

10  Corps' IPIT report says we didn't consider the hydrostatic

11  pressure pushing on that wall to push the levees back at the

12  Seventeenth Street Canal.  Whether that was negligence or not,

13  I don't -- I would submit that I don't need to prove that to

14  win.  It's a bench trial, we're going to try it before

15  Your Honor.  We're happy to do that.  I suggested to Ralph

16  beforehand, maybe 60 days.

17           I don't want to disrupt the fabric of what

18  Your Honor's trying to do because I understand it and respect

19  it.  This is a big -- I mean, there may be no bigger piece of

20  litigation ever I see in my lifetime, but Xavier is in a

21  plight.  We've settled the business interruption claim.  I

22  agreed with that; that happened after the lawsuit was filed.  I

23  got with Rich Gruebel (phonetic) the Travelers people, that was

24  paid.  That has nothing to do with the $42 million.  We spent

25  $42 million on the fix.

1          What I suggested and I agree with you, I don't want

2     to sever flood out.  That makes no sense.  I think we can

3     almost stipulate what was below the line and what was above the

4     line.  There's a lot of e-mails on that.  I was debating that

5     last fall with George Claypool, who is an independent

6     contractor for Travelers and, you know, here is the contract.

7     Your Honor, it's easier here because it is a bench trial.  Here

8     is the contract of insurance.  Here is our 15 to 20 binders

9     from Landis.  This was above the line.  This is our position

10    this was below the line.  They are going to say more was below

11    the line and more was above the line.

12         Your Honor enters two numbers on the judgment.  If

13    the flood exclusion -- if my ruling of November 27th holds,

14    this is the number.  If it gets reversed, this is the number.

15    Obviously, my charge from Dr. Francis is to get this case tried

16    and to get his life resolved.  And he would be the last person,

17    as you know, he's the president of the LRA; he would be the

18    last person in the world who would want to disrupt what

19    Your Honor is doing.  But my charge still could mean I don't

20    know whether we can do this in 60 days or 90 days.  I kind of

21    hate to get totally sucked up in like the pure levee breach

22    cases, because I don't think I need to go there.  I understand

23    why those people need to go there, but --

24         THE COURT:  There are a lot of cases though,

25    Mr. Garner, who you're not the only case alleging this.

1          MR. GARNER:  I understand.

2          THE COURT:  And so it would be how I rule, you'd have

3    -- this would be on the levee breach issue it would affect tons

4    of people.  And we want discovery, et cetera, reference the

5    levee breaches.

6          MR. GARNER:  I understand there's more cases like --

7          THE COURT:  And that's the rub here.

8          MR. GARNER:  I understand there's more cases like

9    mine in mine, but ultimately, the IPIT report says what the

10   IPIT report says.  The engineers from Berkeley are going to say

11   what they say and Dr. Vaneer (phonetic) from LSU is going to

12   say what he says.  I agree with Ralph.  I'd like to go take

13   those two depositions.  I don't think I need them but if

14   they're going to argue at some point that the IPIT report is

15   hearsay and doesn't come in under 803.8(c), I'll have some

16   testimony from the gentleman from Berkeley who says yes, we are

17   IPIT and this is what we did, this is who we are.  This is what

18   we drafted.  And I will offer, file and introduce that three

19   foot --

20         THE COURT:  And you don't anticipate some expert is

21   going to say these levees would have collapsed no matter what?

22         MR. GARNER:  He may want to have somebody to say

23   that.

24         THE COURT:  Well, he hasn't had time to get one yet.

25         MR. GARNER:  Well, and I respect that.

1          THE COURT:  Right.

2          MR. GARNER:  And that's why I suggested maybe 60

3    days.  And I don't want to disrupt what you do in here, I just

4    want to try to get to a trial date with Your Honor.  I

5    understand what you're saying here, I just would like to get to

6    a trial date, have Ralph take -- and I'm not being critical of

7    Ralph.  The record shows we're trying to push this.  Your Honor

8    knows that.  I think Ralph would concede that.

9          Ralph wants to go get an expert to say these levees

10   would have collapsed no matter what.  That's his God-given

11   Constitutional right.  I don't think he needs more than 60 to

12   90 days to do that.

13         THE COURT:  All right.

14         MR. HUBBARD:  I appreciate Mr. Garner's take on how

15   fast I can get something done.  But I think that that's a very

16   short time schedule for what I see we're up against.

17         And I think that he -- I disagree with Mr. Garner's

18   assessment of what type of information we need about the levee

19   failures because as the Court wrote at Page 58 of its opinion:

20   "This Court finds that the water damage exclusion as found in

21   Xavier's Travelers policy is ambiguous, and as such afford

22   Xavier coverage for damages sought provided that Xavier can

23   prove that the flooding it experienced was caused by the

24   negligence of man."  Negligence of man; that's a standard of

25   care type of approach and so we are a Sewerage and Water Board

1   kind of case.  It's like who made the mistake and was it a real

2   mistake or not.  And you know, maybe we should go ahead and --

3   well, I won't even go there.

4        But the IPIT report I don't think stands for the

5   proposition that it was negligent.  It's quite the contrary.

6   We, in our brief to you on the flood issue we quoted parts of

7   the IPIT report which said that it was build in accordance --

8   that the design was reasonable and that it was built in

9   accordance with the design.

10       THE COURT:  Yes, and I would be getting out ahead of

11  myself.  But let me just tell you what I'm going to do.  I'm

12  going to grant your continuance.  And I realize how much it

13  impacts Xavier, but there are a lot of people who are getting

14  impacted.  What I'm hoping, Mr. Hubbard, is that you and

15  liaison counsel and me can get this thing up and running so

16  that Mr. Garner can have this issue -- and be involved in the

17  issue, but have this issue as to the alleged negligence tried

18  almost as quickly as we can after the Court of Appeal rules.

19       Now, I'm going to have to have that -- frankly, I'm

20  going to have to have to decide that regardless of the

21  insurance cases, because there are other cases not dependent

22  upon it.

23       MR. HUBBARD:  Right.

24       THE COURT:  I'm going to have to decide that.  And so

25  maybe we can get a time table where we don't have people

1   hanging out to dry forever, like Xavier and thousands of

2   others, and your clients for that matter to get some resolution

3   of this.

4              But I'm going to grant your motion, and I'm going to

5   ask liaison counsel to make a proposal as to when these issues

6   can be resolved and I'd like you to coordinate to some degree

7   with Mr. Garner since he's got a very large client with a lot

8   of need as to the trial date

9              MR. HUBBARD:  We would certainly be happy to welcome

10  his input and I know that you're meeting with my co liaison

11  counsel and me today.

12             THE COURT:  Yes.

13             MR. HUBBARD:  So, I suggest that we start on this

14  project today.

15             THE COURT:  Yes.

16             MR. HUBBARD:  As I know you want to, as well.

17             THE COURT:  Yes, I do.

18             MR. HUBBARD:  Thank you very much, Judge.

19             THE COURT:  Well, thank you and I am sorry.

20             MR. GARNER:  And the only thing I was going to ask

21  Your Honor:  Can we -- I presume you have no objection to us

22  maybe using the trial date week to take Travelers deposition

23  and do some discovery?

24             THE COURT:  Depositions; I'm not staying anything.

25             MR. GARNER:  Okay, all right.

1           THE COURT:  We are, I think, adjourned for the day.

2           MR. GARNER:  Thank you.

3           MR. HUBBARD:  Your Honor, I have one quick question

4    on that.  I mean, actually, the discovery in all of the other

5    cases is stayed because you have instructed us not to do the

6    Rule 23 -- I mean, your February 6th order says --

7           THE COURT:  We will talk about discovery in our

8    meeting.

9           MR. HUBBARD:  Today, okay.

10          THE COURT:  Let's do that.

11          MR. HUBBARD:  That's fine.

12          THE COURT:  All right.

13          MR. GARNER:  We've done our disclosures, right,

14   Ralph?  We've done our disclosures.

15          MR. HUBBARD:  I think that we have.

16          MR. REIMONENQ:  No, initially I believe we have

17   waived them.

18          MR. GARNER:  We waived them.

19          MR. REIMONENQ:  We waived disclosures, right.

20          MR. GARNER:  That's right, we waived them.  You're

21   right.

22          MR. REIMONENQ:  Right.

23          MR. GARNER:  I would just like -- I understand, but

24   my deposition of Travelers on the Xavier client is unique to

25   me.  Maybe I can do that the week of January 16th, which was

21

1    the original trial date.

2              MR. HUBBARD:  We'll work on that.

3              THE COURT:  You all can talk about that.  And I'm

4    going to try to get things moving now.

5              MR. GARNER:  Thank you, Your Honor.

6              THE COURT:  And I'll talk to the liaison counsel.

7              MR. HUBBARD:  Thank you, Judge.

8              THE COURT:  All right.

9                        *    *    *    *    *

10                   (Hearing is Concluded)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **C E R T I F I C A T E**

       I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

**/s/Dorothy M. Bourgeois**          **12/6/06**
**Dorothy M. Bourgeois**             **Date**