## AFFIDAVIT

**STATE OF LOUISIANA**
**PARISH OF ORLEANS**

**BEFORE ME**, the undersigned authority, personally came and appeared:

### JOHN LASTRAPES

who after first being duly sworn, deposes and says as follows:

1. I, John Lastrapes, am over the age of majority, have never been convicted of a felony, and am competent to testify. I have personal knowledge of the facts stated herein and know each of them to be true and correct.

2. I am a licensed insurance agent and am president and owner of Lastrapes Insurance Agency. My agency procured flood and dwelling insurance for property located at 808 Weiblen Place, owned by Patricia DiCorte, beginning in 1996.

3. The structure located at 808 Weiblen Place was a one-story, 1500 square foot building constructed in 1955. In 1996, Ms. DiCorte elected to insure her dwelling under a policy of homeowner's insurance with a limit of $80,000.

4. Additionally, my agency procured flood insurance in 1996 for Ms. DiCorte with building limits of $66,000 and contents limits of $25,000.

5. Each year, flood insurance for Ms. DiCorte covering 808 Weiblen Place was renewed with the following coverages:



EXHIBIT A

| **Policy Period** | **Amount** |
|---|---|
| 11/29/96-11/29/97 | $66,000 building, $25,000 contents |
| 11/29/97-11/29/98 | $66,000 building, $25,000 contents |
| 11/29/98-11/29/99 | $66,000 building, $25,000 contents |
| 11/29/99-11/29/00 | $66,000 building, $25,000 contents |
| 11/29/00-11/29/01 | $66,000 building, $25,000 contents |
| 11/29/01-11/29/02 | $66,000 building, $25,000 contents |

6. On August 6, 2003, my office received a request from Eureka Homestead to raise the building limit on the flood policy to $105,000, following a refinance by Ms. DiCorte. That same day, I provided her with a quote to increase her building coverage to $105,000 on her flood policy. There was no request for an increase in her contents coverage, and my office did not speak to Ms. DiCorte about the amount of flood insurance. Ms. DiCorte elected to purchase the additional building coverage and the 11/29/02-11/29/03 flood policy contained building limits on this of $105,000 and contents limits of $25,000.

7. The flood policy issued from November 29, 2003 to November 29, 2004 had building limits of $115,500 and contents limits of $26,300, because the automatic increase in flood coverage offered by the insurer on the renewal form was selected. Ms. DiCorte would have received a copy of her Declaration page and the flood policy directly from the flood

insurer. The policy was renewed at the same building and coverage limits for the policy period 11/29/04 to 11/29/05. Again, no one from my office discussed the amount of flood coverage with Ms. DiCorte at any time following the procurement of the original flood policy in 1996.

8. At the time of Hurricane Katrina, my agency had procured a homeowner's policy through St. Paul Travelers for Ms. DiCorte, with a dwelling limit of $126,000 and a personal property limit of $88,200. The policy period of this policy was 11/29/04 to 11/29/05. The 11/29/03 to 11/29/04 homeowner's policy was also placed with St. Paul Travelers, with a dwelling limit of $117,000 and a personal property limit of $81,900. The 11/29/02 to 11/29/03 policy was placed with St. Paul Travelers with dwelling limits of $109,000 and personal property limits of $76,300. The 11/29/01 to 11/29/02 homeowner's policy was placed with St. Paul Travelers with dwelling limits of $102,000 and personal property limits of $71,400.

9. When my agency initially placed homeowner's insurance for Ms. DiCorte at the subject property, she elected replacement cost coverage in the amount of $80,000 for the building. The initial policy was placed with Travelers and Property Casualty Insurance Company. All subsequent increases were cost-of-living/inflation increases that were automatically placed in the policy. After initially discussing the amount of homeowner's coverage on the building and contents with Ms. DiCorte in 1996, Ms. DiCorte had no further conversations with me, nor anyone else in my office regarding the amount of homeowner's coverage on the building or property located at 808 Weiblen. The only conversations that occurred

involved claims or complaints about increase in the costs of the premiums.

Affiant further saith not.

_____
JOHN LASTRAPES

SWORN TO AND SUBSCRIBED
BEFORE ME, THIS __7__ DAY OF
__November__, 2006.

NOTARY PUBLIC (#_____)
Print Name: _____

STEPHEN D. ENRIGHT, JR.
Notary Public
State of Louisiana
LSBA # 23357
My Commission Expires At Death