UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ITELD, BERNSTEIN & ASSOCIATES, L.L.C. | CIVIL ACTION |
| | NO. 06-3418 |
| VERSUS | |
| | SECTION "R" |
| THE HANOVER INSURANCE GROUP; MASSACHUSETTS BAY INSURANCE COMPANY; MOSES SWENT; EUSTIS INSURANCE, INC., ABC INSURANCE CO. | MAG. DIV. 1 |

## AFFIDAVIT

**PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**BEFORE ME,** the undersigned authority, a Notary Public, duly commissioned and qualified in and for the Parish and State aforesaid, personally came and appeared:

**BRUCE ITELD, M.D.**

(hereinafter referred to as "Affiant"), who after first being duly sworn, stated as follows:

1. Affiant is a member of Iteld, Bernstein, & Associates, L.L.C. ("IBA"), Plaintiff in the above-captioned matter;

2. Affiant averred that IBA operated a single business providing medical services from two offices, one located at 9000 Patricia Street in Chalmette, Louisiana, and the other approximately nine (9) miles away, at 6040 Bullard Avenue, Suite 2, in New Orleans.

3. Affiant further averred that the two locations were never operated separately, but as a single entity. Affiant stated that neither income nor patients were segregated between the offices, and physicians were not relegated to one office or the other, and all doctors provided services in both of IBA's locations.

4. Affiant further averred that patients who were seen in one location were often referred to the other office.

5. Affiant stated that a single administrative office provided services to the entire business, and IBA was run as a single unit for tax and financial statement purposes.

6. Affiant stated that Moses Swent ("Swent") and Eustis Insurance, Inc. ("Eustis") acted as IBA's agents and were charged with securing full coverage in the event IBA sustained damage that interrupted its business income.

7. Affiant further stated that the coverage for lost business income was never intended to be dichotomized or segregated between the two offices, so that damage to one office would be limited to income the insurer attributed to that office. IBA did not account for income separately at each office for financial statement and/or tax purposes, and patients were treated sometimes at both locations. Because IBA was operated as a single entity, Affiant stated that it was IBA's intent to secure coverage for loss of income to the entity, not to an individual office, particularly because if one location was not operable, patients could be seen at the other location operated by IBA.

8. Affiant further stated that Swent and/or Eustis secured insurance coverage for IBA.

9. Affiant averred that IBA was not notified by either Swent, Eustis, the Hanover Insurance Group, or Massachusetts Bay Insurance Company that the coverage provided was not the coverage IBA had sought, or that the insurer would artificially attribute income to one IBA office or the other and then attempt to pay for lost business income only to one office in the event that only one office sustained a

covered cause of loss until approximately March of 2006, when letters were received from Hanover's representatives.

10. Affiant stated that IBA believed the Policy it had procured insured it for all actual lost business income in the event that it sustained a covered loss or covered damage anywhere on the "described premises", meaning a covered cause of loss occurring anywhere at either office location because IBA did not account for income separately between the two offices on its financial statements and tax returns. Affiant stated that IBA and its members believed that if one office sustained a <u>non-covered</u> loss, as occurred here, IBA could have routed its patients to its other office about ten minutes away, without any real loss of income. But in this case, IBA's "other office" suffered a <u>covered</u> cause of loss, and IBA could not re-route its patients. The covered cause of loss triggered coverage under the policy for IBA's business income that it lost.

11. On August 29, 2005, Hurricane Katrina hit the metropolitan New Orleans area. Affiant stated that the damage to the Bullard Avenue office was caused by the hurricane's wind and wind-driven rain, a clearly "Covered Causes of Loss" under the Policy. However, Affiant stated that the damage to the Patricia Drive office was, upon information and belief, primarily due to flooding, although some damage may have been caused by wind and/or wind-driven rain. Because the two office locations were only about 9 miles apart, and because they were operated merely as two branches of the same office, with patients being seen and doctors working interchangeably out of both offices in close proximity, Affiant stated that IBA patients who could not be seen at the Patricia Drive office could have easily been

seen, and many had been seen in the past, at the Bullard Avenue office, but for the destruction of that office by a Covered Cause of Loss.

12. Affiant averred that on information and belief, the policy which covers the losses at issue here was effective on June 1, 2005. IBA sustained its losses on August 29-30, 2005.

13. Affiant avers that suit was filed within one year of the time IBA first discovered its claims as asserted in the petition.

_____
BRUCE ITELD, M.D.

SWORN TO AND SUBSCRIBED
BEFORE ME, NOTARY, this ___ day
of _July_, 2006.

_____
NOTARY PUBLIC