34TH JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. BERNARD
STATE OF LOUISIANA

NO. **106 256**                    DIVISION "    "                    DOCKET NO.

ITELD, BERNSTEIN, & ASSOCIATES, L.L.C.

VERSUS

THE HANOVER INSURANCE GROUP, MASSACHUSETTS
BAY INSURANCE COMPANY, MOSES SWENT, EUSTIS
INSURANCE, INC. AND ABC INSURANCE COMPANY

FILED: _____ MAY 1 2 2006 _____          _____
                12:31 pm                              DEPUTY CLERK

## PETITION

The petition of Iteld, Bernstein, & Associates, L.L.C. (hereinafter "IBA", "Louisiana Heart", "the Insured", or "Plaintiff"), a Louisiana limited liability company doing business as Louisiana Heart Center, respectfully represents:

### JURISDICTION AND VENUE

I.

Made Defendant herein is The Hanover Insurance Company ("Hanover"), which is, upon information and belief, a foreign insurer authorized to do and doing business in the Parish of St. Bernard, State of Louisiana.

II.

Also made Defendant herein is Massachusetts Bay Insurance Company ("Massachusetts Bay"), which is, upon information and belief, a foreign insurer authorized to do and doing business in the Parish of St. Bernard, State of Louisiana.

III.

Made Defendant herein is Moses Swent ("Swent") who is, upon information and belief, a person of the full age of majority and a resident of and domiciled in the Parish of Orleans, State of Louisiana. Swent is the agent who sold the policy of Hanover/ Massachusetts Bay insurance policy to Plaintiff herein.

IV.

Also made Defendant is Eustis Insurance, Inc. ("Eustis"), which is, upon information and belief, a Louisiana corporation authorized to do and doing business in the Parish of St. Bernard, State of Louisiana. Eustis is the agency which sold the Hanover/Massachusetts Bay insurance policy to Plaintiff herein.

PLAINTIFF'S EXHIBIT
A

V.

Made Defendant is ABC Insurance Company ("ABC"), which on information and belief, provided a policy of insurance covering the acts and omissions of Swent and Eustis referred to herein. On information and belief, ABC is a foreign insurer authorized to do and doing business in the Parish of St. Bernard, State of Louisiana.

VI.

Plaintiff avers that the policy of insurance that forms the basis of this proceeding (**Exhibit A**, hereinafter the "Policy") was executed in the Parish of St. Bernard, State of Louisiana, and the tortious activity complained of herein also occurred in St. Bernard Parish.

## FACTUAL BACKGROUND
### The Insured

VII.

IBA is a limited liability company that operated a single business providing medical services from two offices, one located at 9000 Patricia Street in Chalmette, Louisiana, and the other located at 6040 Bullard Avenue, Suite 2, in New Orleans, Louisiana.

VIII.

The two locations were not operated separately, but as a single entity, and neither income nor patients were segregated between the offices. Doctors were not relegated to one office or the other; rather, all of IBA's physicians practiced and provided services in both of IBA's locations. Significantly, the two offices were only about 9 miles apart, and patients who were seen in one location were often referred to the other office for follow-up and/or other treatment/testing. A single administrative office provided services to the entire business; the administrations for the two offices were not separate, but the entity was run as a single unit for tax and accounting purposes.

IX.

Petitioner contacted Defendants Swent and Eustis for the purposes of securing full coverage for IBA in the event that any of IBA's offices sustained any damage whatsoever due to Covered Causes of Loss which interrupted its business and, thus, IBA's income. The coverage for loss of business income was never intended to be dichotomized between the two office locations (as the Property damage was) because, unlike property coverage which could be attributable to specific physical damage at one location or the other, IBA's income flowed between the offices.

X.

In addition, Defendants Swent and Eustis represented to IBA that they had, in fact, secured that coverage as IBA intended and as they were requested to do.

**The Policy**

XI.

On or about June 1, 2005, IBA entered into Policy of Insurance for Business Owners Coverage (**Exhibit A**) issued by Defendants Hanover and/or Massachusetts Bay, and signed by representatives of Hanover.  The policy provided coverage through, on information and belief, Massachusetts Bay.  The coverage included, among other things, loss to business property and business personal property, loss to business income, and liability insurances.

XII.

The Policy included a Businessowners Declaration (separately attached hereto as **Exhibit B**).  **Exhibit B** described the Insured as "Iteld, Bernstien & Assoc LLC DBA Louisiana Heart Center", a single entity.   The Declarations page also described the business of the Insured as "Office" (not plural).  Finally, when the Policy referred to the "Described Premises", that term was only defined once, not twice, and the "Premises" was defined as both locations together:

> "Described Premises:
>     No. 1  9000 Patricia Street, Chalmette, LA 70043
>     No. 2  6040 Bullard Avenue Ste 2, New Orleans, LA 70127"

Because the Policy's definition of the single term, "Described Premises", included both office locations, a Covered Cause of Loss only had to occur <u>somewhere on the "Described Premises"</u>, meaning somewhere at <u>either</u> office location, to trigger coverage for Lost Business Income.  Although Defendants certainly had the ability to provide coverage for Lost Business Income that they attributed to a particular, single office location <u>only in the event that a Covered Cause of Loss occurred at that particular location</u>, Defendants did not do so.  This is because all parties knew that IBA operated as a single entity, and income was not dichotomized between the two offices.

XIII.

As further evidence of the parties' intent, the Businessowners Declaration (Businessowners Renewal Declarations) described the Property Coverage and Limits of Insurance as follows:

| Property Coverage | Limits of Insurance | | | |
|---|---|---|---|---|
| | Loc No 001 | Bldg No 001 | Loc No 002 | Bldg No 001 | Loc No | Bldg No |
| Deductible Amt | $1,000 | | $1,000 | | $ |
| Business Amount Valuation | $ 0 | | $ 0 | | $ |
| Bus Personal Prop Valuation | $ 3,778,100 RC | | $ 491,715 RC | | $ |
| Business Income | Actual Business Loss Sustained not exceeding 12 consecutive months | | | | |
| Business Income Waiting Period | None/ 24 hour / 48 hour / 72 hour NONE | | | | |

Thus, although Defendants segregated the deductibles and personal property coverage by office on the Declarations page, *the coverage for lost business income was not segregated by location*, although Defendants certainly had the ability to do so.

XIV.

The Policy (**Exhibit A**) provided specifically as follows:

**Section I - Property**

**A.      Coverage**

> We will pay for direct physical loss of or damage to Covered Property *at the premises described in the Declarations* caused by or resulting from any Covered Cause of Loss.

This means the damage had to occur somewhere at the premises defined in the Declarations page, i.e. somewhere at either office. Nowhere did Defendants require damage due to Covered Causes of Loss at both locations, or that damage due to a Covered Cause of Loss occur at a particular location in order to trigger coverage for that Lost Business Income which Defendants had arbitrarily attributed to that particular location. IBA avers that Defendants' failure to particularize its exclusions, or to require that the Covered Cause of Loss occur at a single, particular location to trigger coverage for Lost Business Income at that location, must be construed against them, as the writers of the policy.

XV.

Specifically as to Lost Business Income, under "Additional Coverages", the Policy (**Exh. A**) provides coverage as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your operations" during the period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss...

Thus, the suspension of operations had to be caused by damage to property at the "Described Premises", meaning at either office. Because IBA could have referred and seen all patients at its Bullard Avenue office but for the damage caused by a Covered Cause of

4

Loss, the suspension of IBA's operations was caused by direct physical loss and damage to property at the described premises, namely the Bullard Avenue property. Thus, Defendants are liable for the entire actual loss of Business Income IBA sustained.

XVI.

The Policy (**Exhibit A**) defined "Business Income" as follows:

...Business Income means the:

> ...Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as result [sic] of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

> Continuing normal operating expenses incurred, including payroll expenses...

But the Policy also provided for "Extended Business Income", defined as follows:

**(2)     Extended Business Income**

    (a)    If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that :

        (I)    Begins on the date property...is actually repaired, rebuilt or replace and "operations" are resumed; and

        (ii)    Ends on the earlier of:

            (1)    The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

            (2)    The number of consecutive days shown in the Additional Property Coverage Schedule for this Additional Coverage...(30 days)

    (b)    Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss...

**(4)**     This Additional Coverage does not apply to other Additional Coverages...except:

With regard to (1) Business Income:

    (a)    Collapse;

(b)    Civil Authority;
( c)    Computer Equipment;...
(e)    Utility Services...

With regard to (2) Extended Business Income:

(a)    Collapse;
(b)    Computer Equipment...

## XVII.

Thus, Defendants were obligated to pay for IBA's lost net profit before taxes plus continuing normal operating expenses which occurred when the Described Premises (Bullard Avenue office) sustained a Covered Cause of Loss, and that includes all of IBA's lost net profits since all of its patients could easily have all been seen at the Bullard office. Again, Defendants could have limited the recovery of lost income in the Policy by requiring that a Covered Cause of Loss occur to a single, particular office location before recovery of Lost Business Income that Defendants attributed to that location could occur, but Defendants failed to so limit the Policy.

## XVIII.

The Policy further provided:

**g.**    **Extra Expense**

(1)    We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss...

(2)    Extra Expense means expense incurred:

    (a)    To avoid or minimize the suspension of business and to continue "operations":

        (i)    At the described premises; or

        (ii)    *At replacement premises or temporary locations, including relocation expense and costs to equip and operate the replacement or temporary locations...*

Thus, according to the Policy Defendants drafted, all extra expenses incurred to minimize the suspension of business and to continue "operations" at a temporary or replacement office were covered up to "12 consecutive months after the date of direct physical loss or damage", which is not the same as a Covered Cause of Loss.

## XIX.

The Policy's exclusions do not apply here. Although the Policy excluded certain losses

including damage caused by "[f]lood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not...", the loss suffered by IBA occurred, as previously stated, when patients could not be referred to and seen at the Bullard Avenue address which undisputedly sustained a Covered Cause of Loss.

XX.

The policy provides for mitigation of damages as follows:

**7.**   **Resumption Of Operations**

We will reduce the amount of your:

a.   Business income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property...at the described premises *or elsewhere.*

b.   Extra expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

So the Insured, IBA, was required to resume "operations", in whole or in part, either at its offices or elsewhere, and to the extent IBA was able to earn some income from its temporary operations elsewhere, that income would reduce the Lost Business Income recoverable under the Policy.  But the Extra Expense IBA incurred in opening a new office elsewhere was covered up to 12 consecutive months after the date of the physical loss or damage.

XXI.

However, Defendants define the "Period of Restoration", the period for which Lost Business Income benefits are payable, as ending on the earlier of:

(a)   The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(b)   The date *when business is resumed at a new permanent location.*

Thus, although the Business Income Loss should only be reduced, not discontinued, and then by the amount which IBA was able to earn by resuming operations "elsewhere", the Policy, as drafted by Defendants, was internally inconsistent and evidenced Defendants' bad faith herein.  Specifically, Defendants' definition of the "period of restoration" allowed Defendants to stop the payment of all benefits, even if IBA's Business Income had not reached its prior levels, as soon as IBA resumed operations elsewhere, merely by Defendants' unilateral assertion that the new location was "permanent". The Policy, as

drafted by Defendants, did not define what was meant by a new, "permanent" location.  On the other hand, the Policy as drafted by Defendants, concomitantly provided for merely the reduction of the benefits payable for Lost Business Income (by the amount which IBA earned in the new location) if the new location is deemed to be "temporary".  The deficiencies in the Policy, including Defendants' failure to define "permanent location", are to be construed against Defendants, the drafters of the Policy.

### The Losses Underlying the Claim

#### XXII.

On August 29, 2005, Hurricane Katrina hit the metropolitan New Orleans area.  A mandatory evacuation order was issued for Chalmette, where the Patricia Street office was located, and for New Orleans (East), where the Bullard Avenue office was located.  Both properties were heavily damaged in the storm and remain uninhabitable to this day.  Medical services have not resumed in either location.

#### XXIII.

The damage to the Bullard Avenue office was caused by wind and wind-driven rain, clearly Covered Causes of Loss.  However, the damage to the office located on Patricia Drive in Chalmette was primarily due to flooding, although some damage may have been caused by wind and/or wind-driven rain.  It is undisputed that damage due to a Covered Cause of Loss occurred to property at the "Described Premises", which is the only requisite in the policy to trigger payment under the Lost Business Income coverage, because the "Described Premises" included the Bullard Avenue office, and Defendants do not dispute that said office was heavily damaged due to wind and/or wind-driven rain.

#### XXIV.

Plaintiff avers that because the two office locations were only about 9 miles apart, and because they were operated merely as two different branches of the same office, with patients being seen and physicians working interchangeably out of both offices, the patients who were could no longer be seen at the Patricia Drive office in Chalmette could have easily been seen, and many had been seen in the past, at the Bullard Avenue office in New Orleans East, but for the destruction of that office by a Covered Cause of Loss.  The loss in this case was sustained due to the inability of IBA to refer and see all patients at the Bullard Avenue office, which suffered a Covered Cause of Loss, thus creating a total loss of income.

XXV.

Because it was never intended that both locations have to suffer "Covered Causes of Loss" in order for there to be coverage for Lost Business Income, and because the Policy and Declarations do not reflect that a Covered Cause of Loss had to be sustained at a particular Location and Building in order to recover for lost income Defendants supposedly attribute to that office, Plaintiff avers that it should be reimbursed for its entire Lost Business Income, less any income it has been able to recover by resuming operations in a temporary location in Slidell.  Defendants have admitted that a Covered Cause of Loss occurred at the Described Premises - specifically, at the Bullard Avenue office. Defendants could have easily differentiated in the Policy between the two offices for purposes of loss of business income, but failed to do so.  Plaintiff avers that if the loss is not expressly excluded, it is covered

XXVI.

In early September, 2005, IBA made a claim under the Policy.  That claim included a request for reimbursement of all Lost Business Income suffered by IBA.

XXVII.

On March 10 and 13, 2006, and again on April 28, 2006, Defendant Hanover, acting on information and belief on behalf of all Defendants, rejected IBA's claim for any income that Defendants unilaterally attributed to the Chalmette office, other than income for a three-week period associated with the Policy's Civil Authority provisions. (*See* **Exhibits C-E**)

XXVIII.

Even as to the Bullard Avenue office (which Defendants admit sustained a Covered Cause of Loss), by relying on the definition for "period of restoration", Defendants claimed that coverage extended from August 30, 2005 (the day after the 24-hour Business Income Waiting Period), until only November 20, 2005 (30 days after IBA opened a temporary office in Slidell).  Defendants unilaterally asserted that IBA's newly-opened office was "permanent" even though the definition of "permanent" is found nowhere in the policy, and even though the new office is not even located in the same parish as IBA's previous locations. Defendants opined that coverage ended on November 20, 2005 even though IBA's Business Income had not reached its pre-Katrina levels by then and did not for months after that date. IBA further alleges that it was never its intention to make the Slidell facility its permanent premises.

XXIX.

In addition, as further evidence of Defendants' bad faith, Plaintiff avers that Defendants' calculation of IBA's Lost Business Income, and Defendants' arbitrary allocations of deflated income between the two facilities, was improperly performed, and the resulting losses were lower than the losses actually sustained by IBA.

XXX.

Defendants also paid nothing for "Extra Expense", meaning "expense incurred to avoid or minimize the 'suspension' of business and to continue 'operations'", during the "period of restoration" (which Hanover apparently unilaterally determined terminated on November 20, 2005 because IBA opened temporary offices in another parish at that time.) Defendants asserted that no "Extra Expenses" are due as to the Patricia Street facility because (even though expenses are not dichotomized by office by IBA) Patricia Street had to have suffered a Covered Cause of Loss to trigger this Policy provision. However, the Policy does not provide as much.

XXXI.

Even as to the Bullard Avenue location (to which all "Extra Expenses" can be attributed because all patients could have been seen at Bullard), Defendants assert that coverage is only for the period of restoration which ends, according to Defendants, when IBA opened a temporary office. However, the Extra Expense provision in the Policy specifically provides that Defendants will pay expenses incurred at "replacement" premises or at temporary locations, which is internally inconsistent with Defendants' contention that the coverage ended when a new, temporary office was opened.

## CAUSES OF ACTION

### Breach of Contract, Bad Faith Breach of Contract, Breach of the Obligation of Good Faith Performance Under A Contract

XXXII.

IBA re-asserts the allegations made in Articles I through XXXI above.   Plaintiff avers that same constitutes bad faith breaches of the Insurance Policy (**Exh. A**) that represents the contract of insurance existing between the parties. In the alternative, IBA avers that same constitutes breaches of the Insurance Policy which forms the Contract of Insurance between the parties.

XXXIII.

IBA further avers that said events breached the obligation of good faith performance under the contract of insurance. La.C.C. art. 1759 and/or 1997 impose an obligation of good faith and fair dealing on both parties to a contract.  Defendants violated this obligation by failing and/or refusing to perform in compliance with the parties' intent as expressed in the Insurance Policy which is the contract of insurance between the parties hereto.

**Statutory Violations**

XXXIV.

Hanover and/or Massachusetts Bay failed to properly pay the portion of the claim they arbitrarily attributed to the Patricia Drive office.  Defendants improperly asserted that IBA had full coverage for any loss of business income, and then artificially dichotomized between the two offices, asserting that any lost income they assessed to the Chalmette location would fall under flood coverage.  This misrepresented the terms of the policy at issue in violation of La. R.S. § 22:1214.

XXXV.

Petitioner further asserts that Hanover and/or Massachusetts Bay are now improperly refusing to settle and/or pay the claims for loss of business income in breach of the insurance policy at issue, and/or they are misrepresenting such coverage, and/or they are unreasonably failing to pay the full amount of the damage due under the policy, causing loss to Petitioner, all in violation of La. R.S. §§ 22:658 and 22:1214.

XXXVI.

Petitioners assert that Defendants are liable to Petitioner for all damages flowing from Defendants' breaches and violations of La. R.S. §§ 22:658 and 22:1214, including but not limited to attorneys' fees, penalties, and any other damages available under Louisiana law, including but not limited to La. R.S.§ 22:1220.

**Negligent And/Or Intentional Misrepresentations**

XXXVII.

IBA re-asserts the allegations made in Articles I through XXXVI above.  IBA avers that Defendants, Swent and Eustis, intentionally and/or negligently misrepresented the coverages on the policy sold to Petitioner, including intentional and/or negligent misrepresentations that the policy would give Petitioner full coverage for interruption to their business and the

concomitant loss of business income in the event of a covered loss to described premises, which defines "premises" as both offices together.

XXXVIII.

Petitioner further avers that Defendants, Swent and Eustis, owed a fiduciary obligation to Petitioner to secure full coverage for their business from interruption. Petitioner avers that Defendants Eustis and Swent failed to secure said coverage as was requested, did not research other available coverages, and did not inform Petitioner that IBA was at risk in the event of damage and/or destruction of one office by a covered loss and the other by a non-covered loss, so that the patients and income which freely flowed between the offices and which was never dichotomized before could be artificially assessed by the insurer to the non-covered office so as to trigger a policy exclusion.

XXXIX.

Petitioners aver that ABC, as the errors and omissions insurer of Defendants Swent and/or Eustis, is liable for the acts and omissions of Swent and/or Eustis as outlined herein.

**Breach of Fiduciary Obligation**

XL.

IBA re-asserts the allegations made in Articles I through XXXIX above. IBA avers that same constitutes breaches of the fiduciary obligations owed by Defendants Swent and Eustis to Plaintiff.

**Damages**

XLI.

IBA has been specifically damaged in the following particulars:

Loss of Business Income

Cost to remedy any other existing problems.

XLII.

In addition, IBA has incurred and/or claims other recoverable damages as follows:

Attorneys' Fees and Costs

Statutory Penalties

Costs

Other damage as may be shown at trial.

XLIII.

Plaintiff demands trial by jury and avers that the amount in dispute herein exceeds the statutory minimum required for a jury demand.

**WHEREFORE**, Iteld, Bernstein, & Associates, L.L.C. prays that after due proceedings had, there be trial by jury and a judgment in their favor and against Defendants herein, The Hanover Insurance Group, Massachusetts Bay Insurance Company, Moses Swent, Eustis Insurance, Inc., and ABC Insurance Company, for such damages as they may be cast, plus legal interest from date of demand until paid and all costs of these proceedings, attorneys' fees and statutory penalties, and for all other general, legal and equitable to which Petitioner may be entitled.

RESPECTFULLY SUBMITTED:

LANNY R. ZATZKIS, T.A. (BAR # 13781)
KAREN D. MCCARTHY (BAR # 14193)
ZATZKIS, McCARTHY & ASSOCIATES, L.L.C.
650 POYDRAS STREET, SUITE 2750
NEW ORLEANS, LA 70130
TELEPHONE: (504) 523-2266
FACSIMILE: (504) 593-9921
Attorneys for Iteld, Bernstein, & Associates

**PLEASE SERVE:**

**THE HANOVER INSURANCE COMPANY**
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, Louisiana 70809

**MASSACHUSETTS BAY INSURANCE COMPANY**
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, Louisiana 70809

**MOSES SWENT**
1340 Poydras Street, Suite1900
New Orleans, Louisiana 70112

**EUSTIS INSURANCE, INC.**
Through its registered agent for service of process
George Sumner
1340 Poydras Street, Suite1900
New Orleans, Louisiana 70112

**ABC INSURANCE COMPANY**

Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, Louisiana 70809

**34TH JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. BERNARD**
**STATE OF LOUISIANA**

NO.          1 0 6   2 5 6      DIVISION " "                    DOCKET NO.

**ITELD, BERNSTEIN, & ASSOCIATES, L.L.C.**

**VERSUS**

**THE HANOVER INSURANCE GROUP, MASSACHUSETTS**
**BAY INSURANCE COMPANY, MOSES SWENT, EUSTIS**
**INSURANCE, INC. AND ABC INSURANCE COMPANY**

FILED: _____ MAY 1 2 2006 _____       /S/Elizabeth A. Ruiz_____
                                                                DEPUTY CLERK

<u>**VERIFICATION AFFIDAVIT**</u>

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

**BEFORE ME**, the undersigned authority, a Notary Public, duly commissioned and

qualified in and for the Parish and State aforesaid, personally came and appeared:

**BRUCE J. ITELD, M.D.**

who being duly sworn, stated under oath that he is a member of Iteld, Bernstein &

Associates, L.L.C., the Petitioner in the above-captioned matter, and that he has read the

forgoing Petition, and that the allegations contained therein are true and correct to the best of

his knowledge information and belief.

                                                    _____
                                                    BRUCE J. ITELD, M.D.

**SWORN TO AND SUBSCRIBED BEFORE ME,**

this ___ day of _____, 2006.

_____
NOTARY PUBLIC

14

**34ᵀᴴ JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. BERNARD**

**STATE OF LOUISIANA**

NO. 106-256                                                                DIVISION "E"

**ITELD, BERNSTEIN & ASSOCIATES, L.L.C.**

**VERSUS**

**THE HANOVER INSURANCE GROUP, MASSACHUSETTS
BAY INSURANCE COMPANY, MOSES SWENT,
EUSTIS INSURANCE, INC. AND ABC INSURANCE COMPANY**

FILED:_____          _____
                                                    **DEPUTY CLERK**

**ANSWER**

NOW INTO COURT, through undersigned counsel, come defendants, Moses Swent ("Swent") and Eustis Insurance, Inc. ("Eustis"), who, in response to plaintiff's Petition, respectfully aver as follows:

1.

The allegations in paragraph I are denied for lack of sufficient information to justify a belief as to their truth and veracity.

2.

The allegations in paragraph II are denied for lack of sufficient information to justify a belief as to their truth and veracity.

3.

The allegations in paragraph III are denied.

4.

The allegations in paragraph IV are denied except that Eustis admits that it is a Louisiana corporation.

5.

The allegations in paragraph V are denied.

6.

The allegations in paragraph VI are denied.

7.

The allegations in paragraph VII are admitted.


PLAINTIFF'S
EXHIBIT
B

8.

The allegations in paragraph VIII are denied for lack of sufficient information to justify a belief as to their truth and veracity.

9.

The allegations in paragraph IX are denied.

10.

The allegations in paragraph X are denied.

11.

The allegations in paragraph XI are denied except that defendants admit that Massachusetts Bay Insurance Company issued policy No. ODO-6962236-02 for the policy period from June 1, 2005, to June 1, 2006.

12.

The allegations in paragraph XII set forth legal conclusions for which no answer is required.

13.

The allegations in paragraph XIII set forth legal conclusions for which no answer is required.

14.

The allegations in paragraph XIV set forth legal conclusions for which no answer is required.

15.

The allegations in paragraph XV set forth legal conclusions for which no answer is required.

16.

The allegations in paragraph XVI set forth legal conclusions for which no answer is required.

17.

The allegations in paragraph XVII set forth legal conclusions for which no answer is required.

18.

The allegations in paragraph XVIII set forth legal conclusions for which no answer is required.

19.

The allegations in paragraph XIX set forth legal conclusions for which no answer is required.

20.

The allegations in paragraph XX set forth legal conclusions for which no answer is required.

21.

The allegations in paragraph XXI set forth legal conclusions for which no answer is required.

22.

The allegations in paragraph XXII are denied for lack of sufficient information to justify a belief as to their truth and veracity except that defendants admit that on August 29, 2005, Hurricane Katrina hit the Metropolitan New Orleans Area.

23.

The allegations in paragraph XXIII are denied for lack of sufficient information to justify a belief as to their truth and veracity.

24.

The allegations in paragraph XXIV are denied for lack of sufficient information to justify a belief as to their truth and veracity.

25.

The allegations in paragraph XXV set forth legal conclusions and/or request procedural relief for which no answer is required.

26.

The allegations in paragraph XXVI are denied for lack of sufficient information to justify a belief as to their truth and veracity.

27.

The allegations in paragraph XXVII are denied for lack of sufficient information to justify a belief as to their truth and veracity.

28.

The allegations in paragraph XXVIII are denied for lack of sufficient information to justify a belief as to their truth and veracity.

29.

The allegations in paragraph XXIX set forth legal conclusions for which no answer is required.

30.

The allegations in paragraph XXX are denied for lack of sufficient information to justify a belief as to their truth and veracity.

31.

The allegations in paragraph XXXI set forth legal conclusions for which no answer is required.

32.

The allegations in paragraph XXXII set forth legal conclusions for which no answer is required.

33.

The allegations in paragraph XXXIII set forth legal conclusions for which no answer is required.

34.

The allegations in paragraph XXXIV set forth legal conclusions for which no answer is required.

35.

The allegations in paragraph XXXV set forth legal conclusions for which no answer is required.

36.

The allegations in paragraph XXXVI set forth legal conclusions for which no answer is required.

37.

The allegations in paragraph XXXVII set forth legal conclusions for which no answer is required. However, to the extent an answer is required, the same are denied.

38.

The allegations in paragraph XXXVIII set forth legal conclusions for which no answer is required. However, to the extent an answer is required, the same are denied.

39.

The allegations in paragraph XXXIX are denied for lack of sufficient information to justify a belief as to their truth and veracity.

40.

The allegations in paragraph XL set forth legal conclusions for which no answer is required. However, to the extent an answer is required, the same are denied.

41.

The allegations in paragraph XLI are denied.

42.

The allegations in paragraph XLII are denied.

43.

The allegations in paragraph XLIII request procedural relief for which no answer is required.

44.

The allegations in the prayer for relief set forth legal conclusions and/or request procedural relief for which no answer is required. However, to the extent an answer is required, the same are denied.

## AFFIRMATIVE DEFENSES

AND NOW, for further answer to the Petition, defendants, Moses Swent and Eustis Insurance, Inc., respectfully aver as follows:

45.

Defendants affirmatively aver that to the extent plaintiff has in any way been damaged, which is specifically denied, such damage was caused solely by plaintiff's

inattention, negligence, want of caution and care, or other fault, which amounts to contributory, comparative, or victim fault and serves as a bar to, or in diminution of, any award of damages made to plaintiff.

46.

Alternatively, while at all times specifically denying that plaintiff was damaged as alleged, defendants affirmatively aver that such damage was caused solely by the fault of others for whose actions defendants are not responsible.

**WHEREFORE**, defendants, Moses Swent and Eustis Insurance, Inc., pray that their answer be deemed good and sufficient and that after the completion of these proceedings, there be judgment rendered in favor of defendants and against plaintiff dismissing the Petition with prejudice, assessing all costs against plaintiff, and awarding all just and equitable relief to which defendants may be entitled.

Respectfully submitted,

LOWE, STEIN, HOFFMAN,
  ALLWEISS & HAUVER, L.L.P.

MAX J. COHEN (17515)
JAMES T. BUSENLENER (22284)
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139-7735
(504) 581-2450
(504) 581-2461 (Fax)
Email: MCohen@LSHAH.COM
         JBusenlener@LSHAH.com
Attorneys for Eustis Insurance, Inc. and
Moses Swent

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record to this proceeding by hand delivery, by fax, by Federal Express, or by placing a copy in the United States Mail, postage prepaid and properly addressed this _13th_ day of _July_____, 2006.

MAX J. COHEN

-6-



ALLMERICA FINANCIAL®
CITIZENS INSURANCE®
HANOVER INSURANCE®

## ADDITIONAL INTEREST SCHEDULE

### BUSINESSOWNERS RENEWAL DECLARATIONS

09

RENEWAL OF ODO 6962236

| Policy Number | Policy Period From | To | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| ODO-6962236-02 | 06/01/2005 | 06/01/2006 | MASSACHUSETTS BAY INSURANCE COMPANY | 040419200 |

**Named Insured and Address**

ITELD BERNSTIEN & ASSOC LLC
DBA LOUISIANA HEART CENTER
9000 PATRICIA ST STE 212
CHALMETTE LA 70043

**Agent**

504-586-0440
EUSTIS INSURANCE, INC.
1340 POYDRAS ST, STE. 1800
NEW ORLEANS, LA 70112

| Name And Address | Interest Type | Location | Building |
|---|---|---|---|
| PHILIPS MEDICAL CAPTIAL<br>1111 OLD EAGLE SCHOOL ROAD<br>WAYNE PA 19087 | LOSS PAYEE | 001 | 01 |
| WHITNEY NATIONAL BANK<br>PO BOX 61260<br>NEW ORLEANS, LA 70161 | LOSS PAYEE | 002 | 01 |

106 256

# FILED

MAY 12 2006

ST. BERNARD PARISH CHIEF DEPUTY CLERK

Form 391-1014 (7-99)
Date Issued: 05/05/2005

ORIGINAL/INSURED



PLAINTIFF'S
EXHIBIT

C

4.367



ALLMERICA FINANCIAL®
CITIZENS INSURANCE®
HANOVER INSURANCE®

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS RENEWAL DECLARATIONS

09
RENEWAL OF ODO 6962236

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| ODO-6962236-02 | 06/01/2005 | 06/01/2006 | MASSACHUSETTS BAY INSURANCE COMPANY | 040419200 |

**Named Insured and Address**
ITELD BERNSTIEN & ASSOC LLC
DBA LOUISIANA HEART CENTER
9000 PATRICIA ST STE 212
CHALMETTE LA 70043

**Agent**
504-586-0440
EUSTIS INSURANCE, INC.
1340 POYDRAS ST. STE. 1900
NEW ORLEANS, LA 70112

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| DEBRIS REMOVAL | NONE | $25,000 | N/A | $25,000 |
| PRESERVATION OF PROPERTY - 30 DAYS | NONE | INCLUDED | N/A | INCLUDED |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $10,000 | N/A | $10,000 |
| POLLUTANT CLEAN-UP AND REMOVAL | NONE | $25,000 | N/A | $25,000 |
| MONEY ORDERS & COUNTERFEIT PAPER | $500 | $5,000 | N/A | $5,000 |
| FORGERY & ALTERATION | $500 | $10,000 | N/A | $10,000 |
| GLASS EXPENSES | $250 | INCLUDED | N/A | INCLUDED |
| ARSON & THEFT REWARD | NONE | $10,000 | N/A | $10,000 |
| TENANT SIGNS | $500 | $5,000 | N/A | $5,000 |
| FIRE EXTINGUISHER RECHARGE | NONE | $5,000 | N/A | $5,000 |
| INSTALLATION FLOATER | $1,000 | $5,000 | N/A | $5,000 |
| FINE ARTS | $500 | $10,000 | N/A | $10,000 |
| FENCE & WALLS | $500 | $2,500 | N/A | $2,500 |
| SALESPERSONS SAMPLES | $1,000 | $5,000 | N/A | $5,000 |
| LEASEHOLD INTEREST | NONE | $10,000 | N/A | $10,000 |
| UNAUTHORIZED BUSINESS CARD USE | $500 | $5,000 | N/A | $5,000 |
| UTILITY SERVICES | | | N/A | |
| DIRECT DAMAGE | $500 | $10,000 | | $10,000 |
| BUSINESS INCOME | 24HR WAITING PERIOD | $5,000 | N/A | $5,000 |
| DEFERRED PAYMENT | NONE | $5,000 | N/A | $5,000 |
| NEWLY ACQRD PREMISES - 60 DAYS | | | N/A | |
| BUILDING | SEE BUILDING AND CONTENTS DEDUCTIBLE | $1,000,000 | | $1,000,000 |
| PERSONAL PROPERTY | | $500,000 | | $500,000 |
| BUSINESS INCOME | | $250,000 | N/A | $250,000 |
| OUTDOOR PROPERTY - TREES, SHRUBS AND PLANTS-$1,000 EACH ITEM; ANTENNAS $2,000 EACH ITEM | $500 | $5,000 | N/A | $5,000 |
| PERSONAL EFFECTS | $500 | $5,000 | N/A | $5,000 |
| INVENTORY & APPRAISAL | NONE | $10,000 | N/A | $10,000 |
| KEY & LOCK REPLACEMENT | NONE | $1,000 | N/A | $1,000 |

Form 391-1018 (7-02)
Date Issued: 05/05/2005

ORIGINAL/INSURED

4,388

ALLMERICA FINANCIAL®
CITIZENS INSURANCE®
HANOVER INSURANCE®

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS RENEWAL DECLARATIONS

09    RENEWAL OF ODO 6962236

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| ODO-6962236-02 | 06/01/2005 | 06/01/2006 | MASSACHUSETTS BAY INSURANCE COMPANY | 040419200 |

**Named Insured and Address**

ITELD BERNSTIEN & ASSOC LLC
DBA LOUISIANA HEART CENTER
9000 PATRICIA ST STE 212
CHALMETTE LA 70043

**Agent**

504-586-0440
EUSTIS INSURANCE, INC.
1340 POYDRAS ST, STE. 1900
NEW ORLEANS, LA 70112

| Additional Property Coverages & Extensions | Deductible | Amount Included | Additional Amount Increase | Total Limit |
|---|---|---|---|---|
| GARAGE, STORAGE BUILDINGS AND OTHER APPURTENANT STRUCTURES | $500 | $10,000 | N/A | $10,000 |
| PERSONAL PROPERTY IN TRANSIT | $1000 | $5,000 | N/A | $5,000 |
| BUSINESS INCOME EXTENDED BI | | 30 DAYS | N/A | 30 DAYS |
| EMPLOYEE DISHONESTY INCLUDING ERISA | $1,000 | $10,000 | $90,000 | $100,000 |
| TOOLS & SMALL EQUIPMENT | $500 | $5,000 | N/A | $5,000 |
| PERSONAL PROPERTY OFF PREMISES | $1000 | $50,000 | N/A | $50,000 |
| BUSINESS INCOME DEPEN PROP | NONE | $5,000 | N/A | $5,000 |
| TERRORISM | SEE BUILDING AND CONTENTS DEDUCTIBLE | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED | N/A | SAME AS PROPERTY LIMITS OF INSURANCE IF COVERED |

Form  391-1018  (7-02)
Date Issued:  05/05/2005

ORIGINAL/INSURED

4.369



THE AMERICA FINANCIAL®
CITIZENS INSURANCE®
HANOVER INSURANCE®

## ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
### BUSINESSOWNERS RENEWAL DECLARATIONS

09         RENEWAL OF ODO 6962236

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| ODO-6962236-02 | 06/01/2005 | 06/01/2006 | MASSACHUSETTS BAY INSURANCE COMPANY | 040419200 |

**Named Insured and Address**

ITELD BERNSTIEN & ASSOC LLC
DBA LOUISIANA HEART CENTER
9000 PATRICIA ST STE 212
CHALMETTE LA 70043

**Agent**

504-586-0440
EUSTIS INSURANCE, INC.
1340 POYDRAS ST, STE. 1900
NEW ORLEANS, LA 70112

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 001 | 001 | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC DATA PROCESSING | | | $500 | | | |
|   HARDWARE & SOFTWARE | | | | $35,000 | $115,000 | $150,000 |
|   EXTRA EXPENSE | | | | $5,000 | $20,000 | $25,000 |
| VALUABLE PAPERS | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
|   ON PREMISES | | | | $25,000 | N/A | $25,000 |
|   OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| MONEY & SECURITIES | | | $500 | | | |
|   ON PREMISES | | | | $10,000 | N/A | $10,000 |
|   OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN COVERAGE | | | | INCLUDED IN PROPERTY LIMITS OF INSURANCE | | |

PROTECTIVE DEVICES CREDIT
  AUTOMATIC SPRINKLER SYSTEM    YES
  AUTOMATIC FIRE ALARM    YES
  CENTRAL STATION SECURITY    YES

Form  391-1018A (9-04)
Date Issued: 05/05/2005

ORIGINAL/INSURED

4 370



ALLMERICA FINANCIAL®
CITIZENS INSURANCE®
HANOVER INSURANCE®

# ADDITIONAL PROPERTY COVERAGES AND EXTENSIONS
## BUSINESSOWNERS RENEWAL DECLARATIONS

09        RENEWAL OF ODO 6962236

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| ODO-6962236-02 | 06/01/2005 | 06/01/2006 | MASSACHUSETTS BAY INSURANCE COMPANY | 040419200 |

**Named Insured and Address**

ITELD BERNSTIEN & ASSOC LLC
DBA LOUISIANA HEART CENTER
9000 PATRICIA ST STE 212
CHALMETTE LA  70043

**Agent**

504-586-0440
EUSTIS INSURANCE, INC.
1340 POYDRAS ST, STE. 1900
NEW ORLEANS, LA  70112

| Additional Property Coverages & Extensions | Loc. No. | Bldg. No. | Deductible Amount | Amount Included | Additional Amount | Total Limit |
|---|---|---|---|---|---|---|
| ORDINANCE OR LAW | 002 | 001 | NONE | $5,000 | N/A | $5,000 |
| ELECTRONIC DATA PROCESSING | | | $500 | | | |
| HARDWARE & SOFTWARE | | | | $35,000 | N/A | $35,000 |
| EXTRA EXPENSE | | | | $5,000 | N/A | $5,000 |
| VALUABLE PAPERS | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| ACCOUNTS RECEIVABLE | | | $1,000 | | | |
| ON PREMISES | | | | $25,000 | N/A | $25,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| MONEY & SECURITIES | | | $500 | | | |
| ON PREMISES | | | | $10,000 | N/A | $10,000 |
| OFF PREMISES | | | | $5,000 | N/A | $5,000 |
| EQUIPMENT BREAKDOWN COVERAGE | | | | INCLUDED IN PROPERTY LIMITS OF INSURANCE | | |

| PROTECTIVE DEVICES CREDIT | |
|---|---|
| AUTOMATIC SPRINKLER SYSTEM | YES |
| AUTOMATIC FIRE ALARM | YES |
| CENTRAL STATION SECURITY | YES |

Form  391-1018A (9-04)
Date Issued:  05/05/2005

ORIGINAL/INSURED



ALLMERICA FINANCIAL®
CITIZENS INSURANCE®
HANOVER INSURANCE®

# BUSINESSOWNERS DECLARATION

## BUSINESSOWNERS RENEWAL DECLARATIONS

09

RENEWAL OF ODO 6962236

| Policy Number | Policy Period | | Coverage is Provided in the | Agency Code |
|---|---|---|---|---|
| | From | To | | |
| ODO-6962236-02 | 06/01/2005 | 06/01/2006 | MASSACHUSETTS BAY INSURANCE COMPANY | 040419200 |

**Named Insured and Address**
ITELD BERNSTIEN & ASSOC LLC
DBA LOUISIANA HEART CENTER
9000 PATRICIA ST STE 212
CHALMETTE LA 70043

**Agent**
504-586-0440
EUSTIS INSURANCE, INC.
1340 POYDRAS ST, STE. 1900
NEW ORLEANS, LA 70112

### Forms and Endorsements Schedule

| Form Number | Edition Date | Description |
|---|---|---|
| BP1203 | 06/89 | LOSS PAYABLE PROVISIONS |
| 391-1022 | 07/02 | DELUXE PROPERTY SPECIAL BROADEN |
| 391-1157 | 07/04 | LA EMPLOYEE BENEFITS |
| 391-1119 | 11/02 | TERRORISM ACCEPTANCE OF COVERAG |
| 391-1123 | 11/02 | EXCL OF ACTS OF BIO TERRORISM |
| 391-1127 | 12/02 | NUCLEAR BIO OR CHEMICAL TERRORI |
| 391-1006 | 07/02 | BOP LIABILITY SPECIAL BROADENIN |
| BP0417 | 07/02 | EMPLOYMENT RELATED PRACTICES EX |
| 391-0802 | 10/90 | BOP SIGNATURE PAGE |
| 391-1003 | 07/04 | BUSINESSOWNERS POLICY COVERAGE |
| BP1007 | 07/02 | EXCLUSION YEAR 2000 COMPUTER RE |
| BP0514 | 01/03 | WAR EXCLUSION |
| 411-0504 | 05/98 | LA NOTICE Y2K ENDORSEMENT |
| 231-0475 | 06/89 | PILR NOTICE |
| BP0130 | 09/04 | LOUISIANA CHANGES |
| 391-1155 | 09/04 | LOUISIANA CHANGES |
| 391-1173 | 01/05 | ADVISORY NOTICE |
| 391-1163 | 08/04 | NOTICE TO POLICYHOLDERS |

Form  391-1016 (7-99
Date Issued: 06/05/2005

ORIGINAL/INSURED

4.372

The criteria set forth in Paragraphs (1)(a) through (1)(d) do not limit the coverage otherwise provided under this Additional Coverage for the causes of loss listed in Paragraphs (2)(a), (2)(d) and (2)(e).

(3) With respect to the following property:

(a) Awnings;

(b) Gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Piers, wharves and docks;

(f) Beach or diving platforms or appurtenances;

(g) Retaining walls; and

(h) Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in Paragraphs (2)(b) through (2)(f), we will pay for loss or damage to that property only if such loss or damage is a direct result of the collapse of a building insured under this policy and the property is Covered Property under this policy.

(4) If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

(a) The collapse was caused by a cause of loss listed in Paragraphs (2)(a) through (2)(f) of this Additional Coverage;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in Paragraph (3) above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph (4) does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(5) This Additional Coverage, Collapse, will not increase the Limits Of Insurance provided in this policy.

e. Water Damage, Other Liquids, Powder or Molten Material Damage

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

(2) Is directly caused by freezing.

f. Business Income

(1) Business Income

(a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your operations" during the period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1000 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(i) The portion of the building which you rent, lease or occupy; and

ALLMERICA FINANCIAL®
CITIZENS INSURANCE®
HANOVER INSURANCE®
ODO6962236      0404192

(ii) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(b) We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. For purposes of this insurance, all recoverable loss ceases when the period of restoration ends.

(c) Business Income means the:

(i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(ii) Continuing normal operating expenses incurred, including payroll expenses .

(2) Extended Business Income

(a) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(i) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

(ii) Ends on the earlier of:

(1) The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

(2) The number of consecutive days shown in the Additional Property Coverage Schedule for this Additional Coverage after the date determined in (2)(a) above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

(b) Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(3) This Additional Coverage is not subject to the Limits of Insurance of Section I - Property.

(4) This Additional Coverage does not apply to other Additional Coverages or Coverage Extensions except:

With regard to (1) Business Income:

(a) Collapse;

(b) Civil Authority;

(c) Computer Equipment;

(d) Equipment Breakdown or

(e) Utility Services.

With regard to (2) Extended Business Income:

(a) Collapse;

(b) Computer Equipment or

(c) Equipment Breakdown.

g. Extra Expense

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1000 feet of the site at which the described premises are located.