UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 |
| PERTAINS TO: LEVEE AND MRGO GROUPS | SECTION "K"(2) |

| | | | |
|---|---|---|---|
| 05-4181 | 05-6314 | 06-0020 | 06-2346 |
| 05-4182 | 05-6324 | 06-0886 | 06-2545 |
| 05-5237 | 05-6327 | 06-2278 | |
| 05-6073 | 05-6359 | 06-2287 | |

### ORDER AND REASONS

Before the Court are a Rule 12(b)(6) Joint Motion and Rule 56 Join Motion for Summary Judgment on the Affirmative Defense of Peremption to Dismiss the Levee and MRGO Groups of Plaintiffs' Complaints on Behalf of Eustis Engineering Company, Inc., Burk-Kleinpeter, Inc. and Modjeski and Master, Inc. (Doc. 463) and a Motion for Summary Judgment filed by Gotech, Inc. (Doc. 894). The focus of these motions concerns whether the causes of action brought by plaintiffs in this consolidated matter are perempted under La. Rev. Stat. 9:5607. These motions were heard at oral argument on August 25, 2006. The Court, having reviewed the pleadings, documents, affidavits and the relevant law, is prepared to rule.

**Background**

Eustis Engineering Company, Inc., Burk-Kleinpeter, Inc., Modjeski and Master, Inc. and Gotech, Inc. (hereinafter referred to as the Engineering Defendants) are alleged to have performed work in the areas where failures occurred with respect to the 17th Street Canal, the London Avenue Canal, the Orleans Avenue Canal, the Industrial Canal and the Mississippi River

Gulf Outlet ("MRGO")[1] in the wake of Hurricane Katrina.  Plaintiffs contend that the Engineering Defendants were negligent in connection with engineering services allegedly rendered on levee and flood wall projects.  Engineering Defendants maintain that the claims are perempted, that the relevant statute is retroactive in nature and that all services rendered in reference to the failed levee and floodwalls were performed and completed at least five years prior to these suits being filed.  Plaintiffs argue that the statute is not retroactive, that discovery is warranted under Fed. R. Civ. P. 56(f) and that although they have not plead fraud, they argue that they should have an opportunity to discover whether fraud has been committed.  Additionally, one plaintiff argues that the general maritime law would apply which would supplant the five-year peremptive statute.

**Standard of Review**

While the joint motion was filed both as a Rule 12 Motion and as one for summary judgment, the Court will approach these two motions as one for summary judgment.  Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the

---

[1] Allegations concerning the MRGO were raised only in those pleadings filed on behalf of the *O'Dwyer* plaintiffs.

2

governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment. Fed. R. Civ. P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id.*

When deciding a motion for summary judgment, the Court must avoid a "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Anderson*, 477 U.S. at 255. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

**Analysis**

The relevant peremption statute, La. Rev. Stat. 9:5607, has been amended and changed approximately nine times since 1964. The current statute establishes a five year peremptive

period, shortening the previous seven year peremptive period. La. Rev. Stat. 9:5607 provides in relevant part:.

> A. No action for damages against any professional engineer, . . . whether based upon tort, or breach of contract, or otherwise arising out of an engagement to provide any manner of movable or immovable planning, construction, design, or building, which may include but is not limited to consultation, planning, designs, drawings, specifications, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought unless filed in a court of competent jurisdiction and proper venue at the latest within five years from:
>
> (1) The date of registry in the mortgage office of acceptance of the work by owner; or
>
> (2) The date the owner has occupied or taken possession of the improvement, in whole or in part, if no such acceptance is recorded; or
>
> (3) The date the person furnishing such services has completed the services with regard to actions against that person, if the person performing or furnishing the services, as described herein, does not render the services preparatory to construction, or if the person furnishes such services preparatory to construction but the person furnishing such services does not perform any inspection of the work.
>
> B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
>
> C. The five-year period of limitation provided for in Subsection A of this Section is a peremptive period within the meaning of Civil Code Article 3458 and in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
>
> D. The provisions of this Section shall take precedence over and supersede the provisions of R.S. 9:2772 and Civil Code Articles 2762 and 3545.
>
> E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

> F. The peremptive periods provided in Subsections A and B of this Section shall
> not apply to any proceedings initiated by the Louisiana Professional Engineering
> and Land Surveying Board or the State Board of Architectural Examiners.

La. Rev. Stat. 9:5607

The Engineering Defendants provided the Court with affidavits meticulously setting forth the dates that the relevant work was performed in the area of all of the floodwalls and/or levees of all the canals in the area where the failures occurred. A review of these voluminous exhibits demonstrates that no services where rendered by any of the engineers in the relevant areas since August of 1994. The following charts set out in detail when the services were rendered by all of the engineers, with the exception of Gotech, and when the work was completed or accepted. Although Gotech does not appear on these charts, it has submitted independent exhibits that indicate that it only worked on the London Avenue Canal floodwall improvements in 1993 serving as a sub-consultant to Burk-Kleinpeter, Inc. ("BKI"). Gotech has also submitted affidavits that it was not involved in the other levees which are the subject of this suit. (Gotech, Exh. A, Aff. Rhaoul A. Guillaume, P.E. at ¶ 3, Gotech Exh. B, Aff. of Bruce K. Dyson, P.L.S. at ¶3.) The charts submitted by the other engineers as a graphic summary of this evidence are as follows:

5

## TABLE A: ENGINEERS RENDERED NO SERVICES
## ON SPECIFIC CANALS OR ON THE MRGO

| ENGINEER | CANAL OR MRGO | SERVICES RENDERED | APPENDIX REFERENCE |
|---|---|---|---|
| BKI | 17th Street | No services | BKI Appendix, Mr. Jackson's Affidavit, ¶ 7 |
| BKI | IHNC | No services | BKI Appendix, Mr. Jackson's Affidavit, ¶ 7 |
| BKI | MRGO | No services | BKI Appendix, Mr. Jackson's Affidavit, ¶ 7 |
| BKI | Orleans | No services | BKI Appendix, Mr. Jackson's Affidavit, ¶ 7 |
| Eustis | MRGO | No services | Mr. Gwyn's Affidavit, §5: MRGO, ¶ 51 |
| Modjeski | London | No services | Mr. Conway Affidavit, ¶8 |
| Modjeski | MRGO | No services | Mr. Conway Affidavit, ¶9 |
| Modjeski | Orleans | No services | Mr. Conway Affidavit, ¶8 |

## TABLE NO. 1: 17TH STREET CANAL
## (EAST SIDE BREACH AREA)

| ENGINEER | PROJECT | LAST SERVICES COMPLETED | RECORDED ACCEPTANCE OF CONSTRUCTION | CORPS' ACCEPTANCE OF CONSTRUCTION | APPENDIX REFERENCE |
|---|---|---|---|---|---|
| BKI | N/A | No Services | N/A | N/A | N/A |
| Eustis | Levee & Flood Wall EE-10214 | September 12, 1989 | August 24, 1992 | N/A | Mr. Gwyn's Affidavit, §2: 17th Street Canal, ¶ 21-23 & Exhibits 2.1-2.11 |
| Eustis | Levee Capping EE-10214 | September 12, 1989 | N/A | April 25, 1995 | Mr. Gwyn's Affidavit, §2: 17th Street Canal, ¶ 21-23 & Exhibits 2.1-2.11 |
| Modjeski | Levee, Flood Wall, Dredging | N/A | August 24, 1992 | N/A | Mr. Conway's Affidavit, ¶ 13, Exhibit 5 |
| Modjeski | Flood Wall Capping | February 1993 | N/A | April 25, 1995 | Mr. Conway's Affidavit ¶ 14, Exhibit 11 |

## TABLE NO. 2: LONDON AVENUE CANAL
## (AT THE BREACH AREAS)

| ENGINEER | PROJECT | LAST SERVICES COMPLETED | RECORDED ACCEPTANCE OF CONSTRUCTION | CORPS' ACCEPTANCE OF CONSTRUCTION | APPENDIX REFERENCE |
|---|---|---|---|---|---|
| BKI | N/A | August, 1994 | N/A | N/A | Mr. Jackson's Affidavit, ¶34, 36, 37; Exhibits 16, 17, 18. No inspection performed, Mr. Jackson's Affidavit, ¶32, 33, 38, 39, 40, Exhibits 14, 15, 19. |

| Eustis | Levee EE-12423 | July 23, 1993 | N/A | October 31, 1996 | Mr. Gwyn's Affidavit §3: London Avenue Canal, ¶ 33-35; Exhibit Nos. 3.1 - 3.6. |
| Modjeski | NONE | No Services | N/A | N/A | Mr. Conway's Affidavit, ¶8 |

TABLE NO. 3: INNER HARBOR NAVIGATION CANAL
(AT THE BREACH AREAS)

| ENGINEER | PROJECT | LAST SERVICES COMPLETED | RECORDED ACCEPTANCE OF CONSTRUCTION | CORPS ACCEPTANCE OF CONSTRUCTION | APPENDIX REFERENCE |
|---|---|---|---|---|---|
| BKI | N/A | No Services | N/A | N/A | N/A |
| Eustis | Levee and Flood Wall EE-07844 | January 22, 1990 | September 9, 1992 | N/A | Mr. Gwyn's Affidavit, §4: IHNC, ¶ 42-44; Exhibit Nos. 4.1 & 4.2. |

TABLE NO. 4: MRGO (NO SERVICES)

| ENGINEER | PROJECT | LAST SERVICES COMPLETED | RECORDED ACCEPTANCE OF CONSTRUCTION | CORPS ACCEPTANCE OF CONSTRUCTION | APPENDIX REFERENCE |
|---|---|---|---|---|---|
| BKI | N/A | No Services | N/A | N/A | N/A |
| Eustis | NONE | No Services | N/A | N/A | Mr. Gwyn's Affidavit, §5: MRGO, ¶ 51. |
| Modjeski | NONE | No Services | N/A | N/A | Mr. Conway's Affidavit ¶9 |

In a Reply Memorandum, plaintiffs contend that the engineers performed services within the five year peremptive period on some or all of the relevant canals. Plaintiffs acknowledge, however, that this work was remote from the breach areas, but contend that discovery should be

8

conducted to determine if this work could have contributed to the breaches.  A graphic summary of the work performed within the five year peremptive period is as follows:

### TABLE NO. 4–REMOTE WORK

| TABLE A | Eustis | Modjeski & Masters | Burk-Kleinpeter, Inc. |
|---|---|---|---|
| London Avenue | **July 6, 2001**<br>Norfolk Southern Railroad Trestle at **London Avenue** Canal<br>Pump Station No. 3 | **July 6, 2001**<br>Norfolk Southern Railroad Trestle at **London Avenue** Canal Pump Station No. 3 | |
| | **October 12, 2001**<br>Orleans Levee District Bridge at Lakeshore Drive and **London Avenue** Canal | | |
| | **March 7, 2002**<br>Orleans Levee District Dynamic Pile Analysis Filmore Avenue Bridge over **London Avenue** Canal | | |
| | **April 5, 2002**<br>Sewerage and Water Board<br>Piezometer Installations at Pump Station No. 4<br>**London Avenue** Canal | | |
| | **May 29, 2002**<br>Orleans Levee District Lakeshore Drive Improvements<br>Reach 3 and Bridge at **London Avenue** Canal | | |
| | **October 22, 2002**<br>Sewerage & Water Board of New Orleans<br>**London Avenue** Outfall Canal<br>Pumping Station No. 3, Frontal Protection | | |

| | | | |
|---|---|---|---|
| | **January 9, 2004**<br>Orleans Levee District<br>**London Avenue** Canal<br>Mirabeau Bridge and<br>Filmore Bridge<br>Engineering Analyses | | |
| | **Service rendered after August 29, 2000**<br>Monitoring groundwater levels during the construction of Fronting Protection at Pump Station No. 4 associated with the **London Avenue** Canal system | | |
| **Industrial Canal** | **September 22, 2000**<br>IHNC **(Industrial Canal)** to Paris Road, Chalmette area and Citrus Back Levees and St. Rose Drainage Structure | | |
| | **November 13, 2000**<br>Testing of samples for soil borings - Chalmette Area Plan, IHNC **(Industrial Canal**) to Paris Road | | |
| | **March 8, 2002**<br>Sewerage and Water Board<br>Proposed Addition at Pump Station Number 19 on the IHNC **(Industrial Canal)** | | |
| | **Service rendered after August 29, 2000**<br>Emergency Generator Project at Pump Station No. 19 associated with the IHNC **(Industrial Canal)** system | | |
| | **Service rendered after August 29, 2000**<br>Testing services on soil samples provided to Eustis by the Corps associated with the IHNC **(Industrial Canal)** system | | |
| **17th Street Canal** | | | **2000**<br>Construction of a new sheet pile bulkhead to protect the Bruning House at the Lake, on the north end of the west side of the **17th Street Canal** |

10

| | | | **2004**<br>Construction of new T-Wall Floodwall, discharge piping and stilling basin for the NSRR/I-10 Drainage Pump Station on east side of **17th Street Canal** in the south right-of-way of I-10. |
|---|---|---|---|

There is no allegation that Gotech performed any remote services within five years of these suits bing filed.

The Court therefore must decide two fundamental questions to resolve these motions. The first question is whether the five year peremptive statute is retroactive and the second question is whether there is any genuine issue of material fact as to whether the services were performed and accepted more than five years prior to the filing of the instant lawsuits.

**Applicability of Five Year Peremptive Statute**

Plaintiffs argue that the five year statute enacted in 2003 is not retroactive in nature and that either the immediately preceding enactment establishing a seven year peremptive period or the enactment previous thereto establishing a ten year period apply.  Moreover, plaintiffs contend that if the five year peremptive statute applies, it is unconstitutional as it would take a "vested" property right away from them.

Peremption is a period of time fixed by law for a right to exist.  *Poree v. Elite Elevator Serv., Inc.*, 665 So.2d 133 (La. App. 4th Cir. 1995), *writ den.*, 667 So.2d 1053 (La. 1996). Unless the right is timely exercised, the right is extinguished when the peremptive period ends.  La. Civ. Code art. 3458.  A peremption statute is by its nature remedial.

> Statutes of limitation are exclusively a legislative prerogative. In setting a statute of limitation, a legislature does not eliminate the remedy for a civil wrong; it makes a legislative determination that after a certain period of time no cause of

11

>action can arise. Until the time that a cause of action vests, a legislature has the
>power to create new rights and abolish old ones. *Dunn v. Felt,* 379 A.2d 1140,
>1141 (Del.Super.1977). In finding that the right to recover in tort is not a
>fundamental right, our court has noted that "[w]here access to the judicial process
>is not essential to the exercise of a fundamental constitutional right, the legislature
>is free to allocate access to the judicial machinery on any system or classification
>which is not totally arbitrary." *Bazley v. Tortorich,* 397 So.2d 475, 485
>(La.1981); *Everett v. Goldman,* 359 So.2d 1256 (La.1978).
>*Crier v. Whitecloud,* 496 So.2d 305, 310 (La.1986) (on rehearing); *see also,*
>*Whitnell v. Silverman,* 95-0112 (La.12/6/96), 686 So.2d 23.

*Orleans Parish School Bd. v. Pittman Const. Co., Inc*., 372 So.2d 717, 720 (La.App. 4th Cir. 1979).

A remedial statute is accorded retroactive application unless a cause of action has vested and thus a property right exists which is protected by the guarantee of due process. As stated in the seminal case, *Reeder v. North,* 701 So.2d 1291 (La.1997):

>It is well established that statutes of limitation are remedial in nature and as such
>are generally accorded retroactive application. . . . However, statutes of limitation,
>like any other procedural or remedial law, cannot consistently with state and
>federal constitution apply retroactively to disturb a person of a pre-existing right. .
>. . Nonetheless, a newly-created statute of limitation or one which shortens
>existing periods of limitation will not violate the constitutional prohibition against
>divesting a vested right provided it allows a reasonable time for those affected by
>the act to assert their rights. . . . Moreover, the legislature is the judge of the
>reasonableness of the time and the courts will not interfere except where the time
>is so short as to amount to a denial of justice. . . . Finally, where an injury has
>occurred for which the injured party has a cause of action, such cause of action is
>a vested property right which is protected by the guarantee of due process. . . ."
>(Citations omitted.) *Lott v. Haley*, [370 So.2d 521] at 523-524.

*Id.* at 1296 -1297.

A cause of action for property damage does not arise until damages are incurred. It is only at that point in time, the cause of action would be considered to have "vested."

>The prescriptive period for an action under LSA-C.C. Art. 667 for damages
>caused to neighboring property is one year. *Dean v. Hercules, Incorporated,* 328
>So.2d 69 (La.1976); *Dwyer v. Smith,* 546 So.2d 895 (La.App. 1st Cir.1989).

12

> Prescription commences to run from the date damages were sustained or from the date the owner of the damaged property acquired, or should have acquired, knowledge of the damage. LSA-C.C. Arts. 3492, 3493.

*Barr v. Smith,* 598 So.2d 438, 440 (La.App. 2nd Cir. 1992). "It is very basic under LSA-C.C. Art. 2315, that for there to be a cause of action, the plaintiff must suffer some loss or receive some damage. *Potter v. Krown Drugs*, 214 So.2d 198 (La.App.4th Cir., 1968)." *Perkins v. Brown,* 236 So.2d 579, 581-582 (La.App. 1st Cir. 1970).

Thus, based on Louisiana law, as to any work completed more than 5 years from the filing of these lawsuits, the causes of action would be pre-empted and no longer exist. Plaintiffs argue that the vesting took place at the time the allegedly defective services were rendered. Plaintiffs cited several cases which they argue hold that a cause of action vests when the injury occurs. *See, e.g., Lott v. Hailey*, 370 So.2d 521, 524 (La. 1979). It is important to note that these cases involved prescription rather than peremption. When a statute is clearly peremptive such as the one at issue, a cause of action is extinguished if the injury has not yet occurred. Moreover, in *Lott*, the injury did occur to the plaintiff in the form of malpractice. Here, no injury occurred (i.e. damage to property) until after the five year period had run. Therefore, if no services were performed within five years of the date suit was filed, any cause of action is perempted.

**Is There a Genuine Issue of Material Fact as to When These Services Were Performed?**

Plaintiffs argue that there are genuine issues of material fact as to when certain work was completed and if other work was performed and not revealed in preliminary discovery. Plaintiffs have not submitted any affidavits or other competent evidence indicating that the information submitted by the Engineering Defendants that the services performed and the acceptance of those

services is incorrect.  Plaintiffs hypothesize and speculate but do not overcome the prima facie evidence submitted by the engineers.  Based upon the extensive documentary evidence submitted by the engineers, and the amount of public information available to plaintiffs as well as information supplied to them by the defendants,  the Court finds that further discovery is not warranted.

Additionally, plaintiffs argue that services were performed within the five year period on remote areas as indicated in the table set forth above.  The oral argument in this matter was conducted approximately one year after Hurricane Katrina.  Plaintiffs submitted no competent evidence to indicate that any work performed on the remote area would have any bearing on any of the areas that failed.  Without such affidavit evidence, plaintiffs have failed to raise a genuine issue as to a material fact as to the so-called "remote" work.  Moreover, plaintiffs have not alleged in their complaints that the remote work had any effect on the breaches.

Plaintiffs at oral argument also requested the Court allow discovery to determine whether the engineers committed fraud thereby avoiding the applicability of the five year peremptive statute.  As stated above,  in La. Rev. Stat. 9:5607(E) provides that the statute would not be applicable in cases of fraud as defined in La. Civ. Code art. 1953.  Again, there is neither any allegation of fraud in the various complaints, nor is there any competent evidence presented to the Court that would create a genuine issue as to a material fact or convince the Court to allow discovery on this issue.

**O'Dwyer Contentions**

14

The *O'Dwyer* complaints are those suits numbered C..A. Nos. 05-4181, 06-1850, 06-1885, 06-4024 and 06-4389[2]. In C.A. No. 06-4389, O'Dwyer names a myriad of defendants including the Engineering Defendants. O'Dwyer makes general allegations not discrete to each defendant. Moreover, he alleges various bases for jurisdiction including the general maritime law. Again, he does not state how these allegations apply to the Engineering Defendants, or for that matter, any of the other defendants. The defendants and the allegations are all in globo. Moreover, it appears that the defendants are mis-joined. Therefore, the complaint is completely conclusory and indecipherable, and equally subject to the previous admonition by this Court with respect counsel's wholesale listing of federal jurisdictional grounds as stated in Doc. 788 at 12 in the Court's Order and Reasons of July 19, 2006 in which the Court noted, as stated in Wright & Miller, *Federal Practice and Procedure*, § 1210:

> As is true in the case of pleading a federal question under Section 1331, the entirety of the complaint must support the jurisdictional allegation in a case based on a claim arising under a special federal question statute. Enough should be alleged in the statement of the claim to show that the action does arise under the statute on which it purports to be based. Indeed, it is these statements in the body of the pleading that give the district court subject matter jurisdiction and not the mere conclusory reference to or recitation of a federal statute in the jurisdictional allegations.

*Id.* at 146.

In sum, Mr. O'Dwyer's allegations invoking maritime law are conclusory, non-specific and without context. "To establish maritime jurisdiction and demonstrate the independent

---

[2] The Court must note that it has dismissed for the most part the first complaint filed by Mr. O'Dwyer, that being C.A. No. 05-4181; in addition, Mr. O'Dwyer was denied leave to amend after having amended said complaint twelve times. In addressing Mr. O'Dwyer's allegations herein, the Court does not intend to sanction or comment on the viability of these subsequently filed complaints as they may run counter to the Court's order denying leave to amend.

application of maritime law, a plaintiff must show a maritime situs and a connection to traditional maritime activity. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S. Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995)." *Champagne v. Tetra Applied Technologies Inc.*, 2006 WL 287985 (S.D.Tex. Feb. 6, 2006). The O'Dwyer complaint makes no allegations as to the Engineering Defendants that would establish maritime jurisdiction. Additionally, as of the time this matter was taken under submission, none of the other plaintiffs that have sued the engineers have plead or argued maritime jurisdiction. Accordingly,

**IT IS ORDERED** that the Rule 12(b)(6) Joint Motion and Rule 56 Join Motion for Summary Judgment on the Affirmative Defense of Peremption to Dismiss the Levee and MRGO Groups of Plaintiffs' Complaints on Behalf of Eustis Engineering Company, Inc., Burk-Kleinpeter, Inc. and Modjeski and Master, Inc. (Doc. 463) and a Motion for Summary Judgment filed by Gotech, Inc. (Doc. 894) are **GRANTED**.

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 54(b), finding there is no just cause for delay, judgment shall be entered in favor of defendants Eustis Engineering

Company, Inc., Burk-Kleinpeter, Inc. and Modjeski and Master, Inc. and Gotech, Inc. and against all plaintiffs in C.A. Nos.  05-4181, 05-4182, 05-5237, 05-6073, 05-6314, 06-0020, 05-6324, 05-6327, 05-6359, 06-0886, 06-2278, 06-2287,  06-2545 and 06-2346.

New Orleans, Louisiana, this __8th__ day of December, 2006.

        **STANWOOD R. DUVAL, JR.**
      **UNITED STATES DISTRICT COURT JUDGE**