UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2006 AUG 30  AM 11: 04
LORETTA G. WHYTE
CLERK

| | |
|---|---|
| ITELD, BERNSTEIN & ASSOCIATES, L.L.C. | CIVIL ACTION |
| VERSUS | NO. 06-3418 |
| THE HANOVER INSURANCE GROUP; MASSACHUSETTS BAY INSURANCE COMPANY; MOSES SWENT; EUSTIS INSURANCE, INC., ABC INSURANCE CO. | SECTION "R" MAG. DIV. 1 |

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND

**I.   PROCEDURAL DEFECTS IN THE REMOVAL**

**A.   The Failure To Join All Defendants Is Fatal- The Requirement of Joinder is Provided by 28 U.S.C. §1446 For All Removals in General, Not By the MMTJA**

Massachusetts Bay Insurance Company ("Mass. Bay") and Hanover Insurance Group ("Hanover")(collectively, the "Removing Defendants") failed to join or secure the consent of two other Defendants, Moses Swent ("Swent") and Eustis Insurance, Inc. ("Eustis") (collectively, "Eustis/Swent"), to the removal of this case from the 34th Judicial District for the Parish of St. Bernard. Although a Notice of Removal fails unless all defendants join in it (the "unanimity rule") *(See, Doe v. Kerrwood,* 969 F.2d 165 (5th Cir.1992)), Defendants aver that the Multiparty, Multi-forum Trial Jurisdiction Act ("MMTJA"), 28 U.S.C.§ 1369 and 1442(e) "does *not* require the non-removing defendants' consent." (Opp. Memo, **Doc. 11** p. 2) Defendants apparently assume, wrongfully so, that the consent of all defendants is only required when removal is predicated on diversity jurisdiction (28 U.S.C.§1332), and/or that the statutes which provide substantive jurisdiction to this Court are also the ones which require all defendants' consent to the removal.

Contrary to Defendants' arguments, the requirement that all defendants join in the removal is provided by 28 U.S.C. § 1446, entitled " **Procedure for Removal**", a generalized statute which provides the procedure to be used in <u>all</u> cases removed to federal fora. *Getty Oil Corp. V. Ins. Co. Of North America,* 841 F. 2d 1254, 1261 (5th Cir. 1988) held:

**28 U.S.C. §1446(a)** provides:

1

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No_____

> A defendant or defendants desiring to remove any civil action...shall file in the district court ...a verified petition...
>
> ***This statute has been interpreted to require that all then served properly joined defendants join in the removal petition...***

See also, *Casley v. Barnette*, 2005 WL 517495 (E.D. La. 2005):

> The procedures governing removal are set forth at 28 U.S.C. §1446...In cases involving multiple defendants, courts have interpreted this provision to require all served defendants to join in the removal...

In support of the claim that the MMTJA does not require all defendants' consent prior to removal,

Defendants cite only a law student's "Review of Litigation", 23 Rev.Litig. 177 (2004), fn. a1.

Aside from the Review's dubious precedential value, it does not support Defendants' claim:

> Section 1369 has some important implications...***The removal statute has been construed to require that all defendants agree to remove.../fn. 12/*** *Id.* §1441(a); *Chicago, Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245...(1900)...*Id.* at 180.

Interestingly, however, this article <u>does</u> makes several statements supporting the position of Plaintiff herein, Iteld, Bernstein & Associates, L.L.C. ("IBA" or "Plaintiff"):

> ...the supplemental-jurisdiction statute confers jurisdiction on federal...courts over all claims '<u>so related to claims in the action</u> within such original jurisdiction ... they form <u>part of the same case or controversy under Article III</u>..*Id.* at 182

> ...minimal diversity in a civil action likely will bring more suits into federal court, but proponents have claimed that a narrower provision like §1369, requiring an accident involving the deaths of seventy-five people, would limit this problem...On critic noted that, if a large number of people must be harmed...to trigger the general minimal-diversity provision, then rarely will a situation arise in which none of the seventy-five people harmed is a citizen of a different state than the defendants...If this criticism proves true...***federal courts will be burdened with a larger quantity of cases that are very complex and could...involve claims under the laws of many different states...*** *Id.* at 188.

> ***During the 107th Congress, one member stated the intended scope of minimal diversity best when he described [it] as reaching a '<u>very narrowly defined category of cases</u>'*** /fn.67/ 147 Cong.Rec.H893-01,H894..March 14, 2001... ***Throughout the development of the substance of §1369, committee reports and statements from legislators indicated wide congressional support for keeping the exception to..complete diversity..as limited as possible****Id.* at 190

> ...***The legislative history does not discuss the meaning of 'discrete location,' but the legal term discrete means separate or distinct*** /fn. 85/ Black's law Dictionary 479 (7th ed. 1999)...***This suggests that the accident must occur at an identifiable location, which is probably another way to ensure that only specific, one-time accidents are covered by the general provision...****Id.* at 192.

Although not a part of §1369, an amendment to the removal statute passed in the

2

> same legislation intimately relates to §1369...The removal amendment permits a defendant to remove an action...if the action could have been brought originally in federal district court under §1369...***This provision functions as a mechanism to consolidate all related claims*** *arising from the same accident... Id.* at 195.
>
> ***Overall, the general provision is well-drafted to limit its application to a specific, single accident. Drafting changes that tighten the language, as well as express congressional intent to cope only with certain types of accidents,*** make the general provision one that will properly apply only to accidents such as airplane crashes, train wrecks, and other catastrophes. The removal amendment appropriately allows defendants to remove actions from state to federal courts in order to keep ***all claims arising from the accident in the same action..****Id.*at 195

What the author clearly states is that Congress did not intend to open the floodgates to allow into federal court literally thousands of cases dealing with completely diverse issues such as property claims, business interruption claims, wrongful deaths (i.e. nursing homes) and other claims - **all consolidated into a single suit with which a single division of this Honorable Court must deal.** And, although this law student does, on page 195, inexplicably reverse her earlier opinion stated on page 180 (that all defendants must agree to the removal), neither the author nor Defendants explain the following requirement of 28 U.S.C. §1441(e), which governs the supplemental or "piggyback" removal provisions on which the Removing Defendants now rely:

> The removal of an action under this subsection **shall be made in accordance with section 1446 of this title...**

The supplemental/"piggyback" jurisdiction on which Defendants rely to remove and join this case with *Chehardy* and others, **expressly requires** that removal be made in accord with 28 U.S.C. §1446, and the Fifth Circuit has interpreted §1446 to require the consent of all defendants. Defendants' claim that the MMTJA does not require all defendants' consent before removal is inaccurate. It is not the substantive jurisdictional statute that requires all defendants' consent, but the general procedural statute (§1446), which Defendants did not even address. Defendants can only hope to avoid remand if Eustis/Swent were fraudulently joined. They were not.

**B.   Is Defendants' Mere Allegation of Fraudulent Joinder, Without Proof, Enough?**

As to the issue of fraudulent joinder, Defendants aver that the other defendants do not have to "*actually be found* to have been fraudulently or improperly joined. Rather...no consent is required if there is an '*alleged*' improper or fraudulent joinder." (Opp. Memo, pp. 4-5) This is

3

clearly <u>not</u> the law. A mere unsupported allegation of improper or fraudulent joinder is not enough; even though the defendant <u>claims</u> fraudulent joinder, if the court finds that the missing defendants were <u>not</u> improperly or fraudulently joined, the case is remanded. *See, e.g.,* the analogous case of *Radlauer v. Great Northern Ins. Co.,* 2006 WL 1560791 (E.D. La. 2006):

> ...it cannot be said that there is not a palpable or real connection between the claims and the parties joined...this court does not address whether the joinder of the defendants was procedurally proper. This court only holds that the joinder of the defendants in this case, whether procedurally proper or improper, was not so egregious as to constitute fraudulent joinder. **Because there had been no fraudulent joinder, this matter must be remanded to state court..**

Thus, it is not enough to merely <u>allege</u> there has been a fraudulent joinder, Defendants are charged with the heavy burden of proving it, and failing that, the matter must be remanded.

### C.  Defendants Have Not Proven That Eustis/Swent Were Fraudulent Joined

Because there <u>is</u> in fact a duty under 28 U.S.C.§1446 to secure all Defendants' consent to remove, the removal will fail unless Defendants carry a heavy burden of proving that Eustis and Swent were fraudulently joined. Defendants aver Eustis/Swent were improperly joined because all claims against them are perempted under La. R.S. §9:5606. Defendants claim IBA should have been able to derive Defendants' *interpretation* of the Policy by a simple reading of it at the time the Policy was first purchased in 2003. So Defendants aver that any claims against Eustis/Swent were perempted in 2004, one year after the date IBA should have first read the Policy and figured out Defendants' interpretation of it. Thus, Defendants opine, IBA cannot possibly recover against Eustis/Swent now because all claims are perempted.

First, IBA contends it could not learn of Defendants' interpretation of the Policy from reading it, and second, it had no duty to read the Policy in the first place, given its relationship with Eustis/Swent. Obviously, Defendants did not gratuitously disclose their interpretation of the Policy until 2006, long after they claim the one-year peremptive period expired.

In response, Defendants argue "[n]othing in the affidavit of Bruce Iteld suggests that IBA had this type of close, fiduciary-like relationship with Eustis or Swent..it appears their relationship was no more 'close' or 'trusting' than that which exists between every insured and his...agent." (Opp. Mem, p.19-20) Defendants misconstrue their heavy burden of proof here. <u>They</u> must

prove *"there is <u>no possibility</u>...the plaintiff would be able to establish a cause of action against the in-state defendant"*. *Jernigan v. Ashland Oil, Inc.* 989 F.2d 812, 815-6 (5th Cir. 1993). All Defendants have established is a fact issue as to whether IBA could have relied upon the representations and expertise of its insurance agent - and that will not prevent remand.

As a result, there is a factual issue as to whether IBA had a duty to read its Policy, or whether it could rely upon its agents. IBA did not actually discover Mass. Bay's interpretation of the Policy until after Hurricane Katrina, and thus, this claim is not perempted. Because the claim is not perempted, Defendants have not proven that there is <u>no possibility</u> that IBA will be able to recover against Eustis/Swent, and Defendants had to join them in the removal.

### D.  There Is No Fraudulent Misjoinder Here

Defendants aver Eustis/Swent were fraudulently misjoined, citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F. 3d 1353. But these same arguments, all based on *Tapscott*, were rejected not once but twice in this District. *Schwartz v Chubb & Sons, Inc.*, 2006 WL 980673 (E.D. La. April 11, 2006);*Radlauer v. Great Northern Ins. Co.*, 2006 WL 1560791 (E.D. La. May 16, 2006).

Defendants attempt to distinguish the clear rejection of the *Tapscott* decision by arguing that *Radlauer* did not involve any arguments that the claims against the agent were perempted under 9:5606. First, peremption under §9:5606 has <u>nothing to do with</u> whether the parties were fraudulently misjoined and whether *Tapscott* has been accepted in this Circuit. IBA refers the Court to its original Memorandum in Support of Remand. Second, *Schwartz* <u>did</u> involve both an issue of peremption under §9:5606 and the issue of *Tapscott* fraudulent misjoinder. The Court in *Schwartz* rejected both arguments and remanded the case.

Defendants also cite *Berthelot v. Boh Bros. Const. Co., L.L.C.*, 2006 WL1984661(E.D.La. 2006), arguing that Judge Duval found that claims against the Orleans Levee District ("OLD") were unrelated to claims against the defendant insurers. What Judge Duval held is as follows:

> ...the allegedly tortious conduct of OLD is entirely separate and distinct from the alleged breaches of contract by the Insurer Defendants. There are no allegations that OLD and the Insurer Defendants acted in concert. Nor are the Insurer Defendants the insurer of the alleged tortfeasor; they are not responsible for OLD's conduct. These claims are based on entirely different legal theories...

5

The issue in *Berthelot* was the joinder of the OLD, which was responsible for the levees, with the individual insurers, who had contractual coverage issues regarding homeowners insurance policies they issued to the plaintiffs. That kind of disparate joinder is not the same as joining an insurer with its agent, as pointed out in *Schwartz, supra*. Defendants are unable to distinguish *Schwartz* which specifically rejected Defendants' arguments as made herein.

## II.   SUBSTANTIVE DEFECTS IN THE REMOVAL

### A.   Is There Supplemental Jurisdiction Over This Case Pursuant to 28 U.S.C.§1441(e)?

1. Has the Fifth Circuit Really Decided this Issue Already?

   Defendants aver on pages 8-9 of their Opposition Memorandum:

   > ...the Fifth Circuit expressly found...the *Chehardy* action...was subject to original jurisdiction under section 1369. In no uncertain words, it held the MMTJA 'establishes supplemental jurisdiction over the *Wallace* action' as a result of the 'district court's original jurisdiction under §1369(a) over the...*Chehardy* action'...

Unfortunately, this is simply not true. The Fifth Circuit did **not** find that *Chehardy* was subject to original jurisdiction under §1369, nor did the appellate court find that *Wallace*[1] (the case actually in front of the Fifth Circuit) was subject to supplemental jurisdiction. The Court only held:

> "[a]lthough the district court recognized that Farm Bureau removed under §1441(e)(1)(B), **the court did not determine whether the defendants met the requirements of §1441(e)(1)(B)**, instead stating that even if the defendants could meet those requirements, the abstention provisions of 1369(b) prevented the case from being heard in the federal courts...

> ...we VACATE the order of remand and REMAND to the district court "for further proceedings not inconsistent with this opinion". *Id.* at 702.

If the Fifth Circuit had actually already found original federal jurisdiction under the MMTJA for a Katrina-related claim (i.e., in the *Chehardy* case), and supplemental federal jurisdiction under the MMTJA for a Katrina-related claim (i.e., the *Wallace* case), *Wallace* would have proceeded to trial before Judge Livaudais. But the Fifth Circuit only found that a determination of whether supplemental jurisdiction under §1441(e) existed had not yet occurred. When *Wallace* was returned to the district court, a second motion to remand was filed based on lack of supplemental

---

[1] *Wallace v. La. Citizens Prop. Ins. Corp.*, 444 F. 3d 697 (5th Cir. 2006) and *Chehardy v. State Farm Fire & Cas. Co.*, no. 05-01140 (M.D. La. 2005).

subject matter jurisdiction under 28 U.S.C.§1441(e)(1)(B). The *Wallace* defendants argued similarly to Defendants herein, asserting that the "Fifth Circuit has now ruled twice... without detecting a lack of subject matter jurisdiction". The district court held on second remand:

> ...**[the] Notice of Removal asserts federal supplemental subject matter jurisdiction under 28 U.S.C.§1441(e)(1)(B) and 28 U.S.C.§1369. This is insufficient to overcome the presumption against federal subject matter jurisdiction. Because this court lacks subject matter jurisdiction**, it cannot entertain defendants' motions to transfer. *Wallace v. La. Citizens Prop. Ins. Corp.*, no. 06-0114 (June 7, 2006)

The Wallace defendants filed petitions for writ of mandamus and alternative motions to appeal under 28 U.S.C. §1291 on the second remand Order. On August 2, 2006, the Fifth Circuit denied the petitions for writ of mandamus and the alternative motions for appeal. *In Re: La. Farm Bur. Cas. Ins. Co., et al*, no. 06-30596. *Wallace* was remanded to state court, where it exists today. *Wallace* does not provide precedential support for Defendants' arguments, as Defendants claim.

2.  <u>Is There Supplemental Jurisdiction Pursuant to 28 U.S.C.§1441(e) Here?</u>

Defendants aver as follows on page 15 of their Opposition Memorandum:

> ...<u>IBA does not dispute that Massachusetts Bay has been named a defendant in other actions pending in the Eastern District of Louisiana that also arise from Hurricane Katrina</u>. Under the plain terms of the MMTJA, Massachusetts Bay therefore can avail itself of the supplemental, 'piggyback' jurisdiction" provided by section 1441(e)(1)(B), and remove this case to federal court based thereon.

This, however, is also incorrect. The only case cited in the Notice of Removal (**Doc. No. 1**) as involving Mass. Bay as a defendant is *Sampia v. Massachusetts Bay Ins. Co.*, No. 06-00559. Mass. Bay relies on its involvement in *Sampia* to provide supplemental federal jurisdiction over this case, even if this case does not support the independent exercise of original federal jurisdiction under the MMTJA. But *Sampia* was dismissed on August 3, 2006. Therefore, *Sampia* will not provide supplemental jurisdiction for Mass. Bay pursuant to 28 U.S.C. §1441(e) as to defendant Mass. Bay because the *Sampia* case no longer exists. (*See* proceedings no. 06-00559, **Doc. No. 26**) Mass. Bay literally asks this Court to take the untenable position of premising its jurisdiction in this litigation on another suit which no longer exists in this Court.

Hanover avers that its involvement in *Vanderbrook v. State Farm Fire & Casualty Co.*, no. 05-06323, allows it to invoke this Court's supplemental jurisdiction as well. Hanover notes that

*Vanderbrook* was consolidated with *Chehardy,* the same lawsuit that Hanover wrongfully supposed created supplemental jurisdiction in the *Wallace* case. (Notice of Removal,**Doc. No. 1**, p. 8-9). Although Defendants accuse IBA of "set[ting] forth a parade of horribles..." (alleging that if a staggering number of cases are consolidated, it will create hundreds of mini-trials within a trial), it is necessary to examine *Vanderbrook, Chehardy* and other cases on which Hanover now bases supplemental jurisdiction to determine if IBA's predictions are based on fact.

*Chehardy* and *Vanderbrook* were consolidated with *Berthelot v. Boh Bros. Constr. Co., L.L.C.,* no. 05-4182 (also referred to as 05-4181), a master case now entitled *In Re Katrina Canal Breaches Consolidated Litigation.* Per its name, the master case involves the breaches of the 17th Street, London Avenue and other canal levees, the construction, maintenance, care and inspection of the levees, and the liability of various entities for the levee breaches. But *this case has nothing to do with the canal levee construction, care, inspection or breaches. This is merely a business interruption claim for property in St. Bernard Parish that was damaged by wind and an interpretation of a business interruption insurance policy.*

Particularly pertinent is an <u>Unopposed</u> Motion to Sever and Proceed Separately filed in *Katrina Canal Breaches Consolidated Litigation,*no. 05-4182, **Doc. 497**. Defendant, Encompass Insurance Company ("Encompass"), noted that three suits against it involved individual homeowners who alleged that Encompass acted arbitrarily and capriciously in handling their insurance claims. The plaintiffs originally also sued the Orleans Levee District ("OLD"), averring OLD was negligent in its maintenance of the 17th Street Canal levee and thus was responsible for the flooding damage to the plaintiffs' homes. The suits were originally filed in Orleans Parish, removed to this Court, and consolidated with the Canal Breaches Litigation because of the plaintiff's assertions as to OLD and the levees. But, the plaintiffs dismissed their claims against the OLD, and <u>the defendant insurer</u> argued:

> ...the claims against Encompass...should be severed...from **the towering mass of levee board claims**...All of the plaintiffs...request[ed] a dismissal with prejudice of their claims against the Orleans Levee District. Plaintiffs' filing was prompted by **their desire to have their cases severed from the mass of consolidated levee district cases. Now, the Encompass suits solely consist of individual actions against Encompass involving claims under homeowners insurance**

> *policies. The Encompass suits involve separate and distinct factual allegations and legal issues and <u>no longer have anything to do with the facts or issues regarding the Orleans Levee District. Plaintiffs and Encompass agree that they will be prejudiced and delayed in their litigation by continued consolidation with the numerous levee board cases...</u>*
>
> *Unlike many of the levee board cases, no contractor, engineer, or governmental agency is named as a defendant in the Encompass Suits, and the Encompass Suits do not seek a determination regarding which entity was at fault regarding the levee breaches or the flooding related to the 17th Street Canal. Instead, the Encompass Suits solely present legal questions regarding the proper interpretation of insurance policies...Because the Encompass Suits present issues of law pertaining to contract interpretation that can be addressed without regard to the cause of the levee breaches, no purpose is served by a continued consolidation of the Encompass Suits with the levee board cases. The Court should not allow the straightforward coverage claims in the Encompass Suits to be bogged down in the complicated and irrelevant issues raised by the levee board cases...*
>
> *...Courts consistently have recognized, however, that consolidation is improper where the issues in the suits are different...consolidation also is improper if it would prejudice the rights of the parties...*

*Berthelot v. Boh Bros,* 05-4182, **Doc. 497**, p. 1-5. The defendant insuror's Motion to Sever was granted. *Id.* **Doc. No. 498.** Remand was not an issue because of the plaintiff's initial pleadings. These are exactly the objections IBA raised, despite Defendants' claims that "this case shares several common issues and facts with the other Katrina lawsuits pending against Massachusetts Bay". Mass. Bay does not identify what those issues and facts in common with other Katrina lawsuits are, other than the event of Katrina itself, and further does not even identify the other lawsuits, other than the now-dismissed *Sampia* case.

Further, Defendants argue that the "MMTJA's goals of judicial economy and consistency will be furthered by having this critical issue [the scope of policy coverage] *decided solely by the Judges of this Court, as opposed to a bevy of different Louisiana state court judges*". But then, in the very next paragraph, Defendants aver there "is no reason...why the Court would need to descend into the logistical quagmire that IBA imagines. Nothing in the MMTJA *requires the Court to consolidate an action removed on the basis of supplemental jurisdiction with the other cases on which it 'piggybacked'.*" (Opp.Memo.p.16) Defendants do not explain why a "bevy of different Louisiana state court judges" would be likely to come up with different or inconsistent policy interpretations or judgments, but an equally numerous "bevy" of federal court

judges would not. The MMTJA contemplates that liability from a single accident in a single place will be determined *in a single forum* to avoid different results, and then the various cases will be remanded to state court for determination of individual damages. Defendants' insistence that this Court does not *have* to consolidate bastardizes the intent of the statute obviously just to allow Defendants what they really want: a way around what they call the state court's "bevy".

### B.   Is There Original Jurisdiction Over This Case Pursuant to the MMTJA?

In addition to arguing that there is <u>supplemental</u> jurisdiction over this case pursuant to 28 U.S.C. §1441(e), Defendants also argue that the MMTJA (which requires a "single accident, where at least 75 natural persons have died in the accident at a discrete location") provides <u>original</u> jurisdiction to this Court justifying the removal of this case to this Court. IBA's arguments in its original Memorandum in Support of Remand (as to the inapplicability of the MMTJA's words, "single accident" and "75 [deaths] ...at a discrete location", to the facts of the multifaceted Katrina personal injury, property loss, wrongful death, construction negligence, insurance and other claims) will not be repeated here.  However, Defendants now aver that the 75 deaths occurred in what they characterize as "discrete locations" meaning the entire Parishes of Orleans and St. Bernard, and perhaps others.  Suffice it to say that such an expansive reading will likely lend itself to abuse, and if the "discrete location" is defined so broadly as to include entire parishes or counties, that will set a precedent to expand it even further, to states, regions, and even the entire United States, until the requirement of a "discrete location" is literally written out of the statute.  Courts will not interpret statutes so that the interpretation will produce absurd results. *U.S. v. Izaguirre-Flores,* 405 F. 3d 270, 277 (5th Cir. 2005). Certainly, the Congressional intent was not to define the statute so broadly, as the law review article cited by Defendants and quoted hereinabove clearly points out.

RESPECTFULLY SUBMITTED:

*[signature]*

LANNY R. ZATZKIS, T.A. (Bar #13781)
KAREN D. McCARTHY (Bar #14193)
YVETTE A. D'AUNOY (Bar #22761)
ZATZKIS, McCARTHY & ASSOCIATES, L.L.C.
650 Poydras Street, Suite 2750
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
Facsimile: (504) 593-9921
Email: Lanny@Zatzkis.com,
Karen@Zatzkis.com and Yvette@Zatzkis.com
COUNSEL FOR PLAINTIFF

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ITELD, BERNSTEIN & ASSOCIATES, L.L.C. * | CIVIL ACTION |
| * | |
| * | NO. 06-3418 |
| VERSUS * | |
| * | SECTION "R" |
| THE HANOVER INSURANCE GROUP; * | |
| MASSACHUSETTS BAY INSURANCE * | MAG. DIV. 1 |
| COMPANY; MOSES SWENT; EUSTIS * | |
| INSURANCE, INC., ABC INSURANCE * | |
| COMPANY; * | |

**************************************************

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served upon all parties, through counsel of record:

Ralph S. Hubbard, III
Kristopher T. Wilson
Joseph P. Guichet
Seth A. Schmeeckle
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone number: (504) 568-1990

Kevin P. Kamraczewski
Paul E. B. Glad
David Simonton
Sonnenschein, Nath & Rosenthal, L.L.P.
7800 Sears Tower
Chicago, IL 60606
Telephone number: (312) 876-8000

Max J. Cohen
James T. Busenlener
Lowe, Stein, Hoffman, Allweiss, & Hauver, L.L.P.
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139-7735

via facsimile, hand delivery, express courier, and/or U.S. Mail, postage prepaid and properly addressed, this 18th day of August, 2006.

1