FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 DEC -5 PM 12: 48

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FARRELL J. CHATELAIN, JR. | * | DOCKET NO.: 06-8789 |
| | * | |
| | * | JUDGE: DUVAL |
| VERSUS | * | |
| | * | SECTION: "K" |
| STATE FARM FIRE AND CASUALTY | * | |
| INSURANCE COMPANY | * | MAGISTRATE: WILKINSON |
| | * | |

## OPPOSITION TO MOTION TO REMAND

**MAY IT PLEASE THE COURT:**

DEFENDANT, **STATE FARM FIRE AND CASUALTY COMPANY** ("State Farm"), opposes the Motion for Remand filed by plaintiff for the reasons set forth more fully below.

**I.   INTRODUCTION**

Plaintiff moves for remand on the basis of no federal jurisdiction.  Plaintiff's Motion should be denied because this lawsuit was properly removed to federal court based on diversity jurisdiction, 28, USCA § 1332, because at the time of removal, their was complete diversity between the parties and the amount in controversy was more than $75,000.  Alternatively, the Multiparty, Multiforum Trial Jurisdiction Act (28 U.S.C. § 1369) provide federal jurisdiction justifying a denial of Plaintiff's Motion to Remand.

**II.   FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff filed a Petition for Damages on or about August 28, 2006, stating claims against State Farm for damages associated with Hurricane Katrina.  Plaintiff brought his action in the

___ Fee___
___ Process___
_X_ Dktd___
___ CtRmDep___
___ Doc. No___

Civil District Court for the Parish of Orleans. (See Plaintiffs' Petition attached in its entirety hereto as Exhibit A.). Plaintiff alleges improper adjusting of his rental property insurance claims. Plaintiff claims that the property suffered "extensive damage as a result of high winds and/or tornado winds and/or wind driven rain". This extensive damage to the dwelling was allegedly caused by a covered peril under the State Farm rental policy #98-C3-5671-6. Exhibit "A". Plaintiff alleges in addition to the damages to the dwelling and debris removal, plaintiff is seeking "actual amount of rental revenue lost". Exhibit "A". Plaintiff's petition admits receiving payments from State Farm but alleges that additional amounts are due, along with penalties and attorney fees. Exhibit "A".

The coverage limits on plaintiff's policy are undisputed to be $61,063 for dwelling, $2,970 for contents, and Actual Loss of rental income for up to 12 months. State Farm prior to suit being filed paid $6,355.39 pursuant to damages to the dwelling under policy #98-C3-5671-6. No amounts have been paid for the alleged Loss rental income because plaintiff has not provided any documentation as to the loss of rent. Since the actual rental income is an issue, plus the remaining policy limits under the dwelling coverage plus the alleged penalties and attorney fees, the amount in controversy could be up to $75,000.

### III. ARGUMENT

T]he issue of whether an action should be remanded to the state court must be resolved by reference to Plaintiff's pleading at the time of removal." *State of Tex. v. Alliance Employee Leasing Corp.*, 797 F.Supp. 542, 544 (N.D. Tex. 1992)(citing *Greening v. Mutual Life Insurance of New York*, 558 F.Supp. 988, 990 (D. Mon.1983)). *See also American Fire and Casualty Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951). Therefore, the Court should assess

the Defendant's Removal and the Court's jurisdiction based on the allegations as they were on the date of Removal and not reference to plaintiff's assertions in the Motion to Remand.

### A. There is Diversity Jurisdiction Because There is Complete Diversity and The Amount In Controversey At the Time of Removal Was Greater Than $75,000.

It is indisputable that the plaintiff and State Farm are citizens of different states as set out in §§1332(a) and (c). The Plaintiff alleges in his Petition that he is a resident of Orleans Parish, Louisiana. State Farm is a foreign corporation organized under the laws of the State of Illinois, with its principal place of business in Bloomington, Illinois.

28 U.S.C. § 1332 provides federal district courts with concurrent original jurisdiction in cases "where the matter in controversy exceeds the sum or value of seventy-five thousand dollars, exclusive of interest and costs"

For purposes of this removal, it is "facially apparent" from the Petition for Damages that the amount in controversy exceeds seventy-five thousand dollars exclusive of interest and costs, especially when the plaintiff's claim for penalties and attorneys fees are considered. Plaintiff, in his Petition, has requested an award of benefits for additional monies remaining under the State Farm rental policy along with the "actual loss rental income" which as indicated could be more than the $75,000 jurisdictional limit. Plaintiff's petition was not accompanied by a binding Stipulation/Affidavit that his claims against State Farm are less than the $75,000 jurisdictional limit, and that she would forego any excess money judgment which would be awarded above the $75,000.

While State Farm admits no liability nor any element of damages, State Farm has met its burden of showing by a preponderance of evidence that the amount in controversy is in excess of

seventy-five thousand dollars ($75,000.00).

Furthermore, a subsequently filed Affidavit does not prevent removal. To determine whether jurisdiction is present for removal, the federal courts consider the claims made in the state court petition as they existed at the time of removal. *See Manguno v. Prudential Property & Casualty Inc. Co.,* 276 F.3d 720 (5th Cir. 2002).

If, under state law, the plaintiff will not be limited to recovery of the amount plead in her lawsuit, the Court must look to the "true" amount in controversy. *See De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1410 (5th Cir. 1995). "This maxim contemplates the existence of a state statute or doctrine that entitles a plaintiff to recover more than he has demanded. Louisiana is such a state, and has been at least since 1960 when its Code of Civil Procedure was enacted." *Grant v. Chevron Phillips Chemical Co.,* 309 F.3d 864, 869 (5th Cir. 2002).

"It is a general rule that 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.' *De Aguilar,* 47 F.3d at 1408 (quoting *St. Paul Mercury Indem Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.C.t 586, 590, 82 L.Ed. 845 (1938)). However, '[t]he face of the plaintiff's pleading will not control if made in bad faith.' *Id.* at 1410." *Pendleton v. Parke-Davis, a Div. of Warner Lambert Co.,* 2000 WL 1808500, *2 (E.D. La. 2000); *see also Shaffer v. Palm Harbor Homes, Inc.,* 328 F.Supp.2d 633, 635 (N.D. Miss. 2004); *Hood v. Gulf States Pipeline Corp.,* 2006 WL 548625, *3 (W.D.La. 2006) ("Plaintiffs' current Petition for Damages was written in bad faith and that Defendant has met its burden of proving that the amount in controversy exceeds the jurisdictional amount").

The Fifth Circuit, in *Grant,* has therefore stated:

> To accommodate the situation when the removal sought is from a
> Louisiana court and subject matter jurisdiction is grounded in

> diversity of citizenship, we have modified the usual rule for determining whether the amount in controversy is present. In such Louisiana situations, we permit the party seeking to maintain federal jurisdiction to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. [*Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir.2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409, 1412 (5th Cir.1995).] **When the case is one that has been removed from state court, such party may satisfy this burden in either of two ways: (1) by demonstrating that it is "facially apparent" from the petition that the claim likely exceeds $75,000** or (2) "by setting forth *the facts* in controversy-preferably in the removal petition, but sometimes by affidavit-that support a finding of the requisite amount." [*Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995) (emphasis in original); accord, *Manguno*, 276 F.3d at 723; *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir.1999); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir.1999).]

*Grant v. Chevron Phillips Chemical Co.* 309 F.3d 864, 868 (5th Cir. 2002)(bold emphasis supplied).

If a defendant can show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, the "plaintiff can defeat diversity jurisdiction only by showing to a 'legal certainty' that the amount in controversy does not exceed $75,000." *Grant v. Chevron Phillips Chemical Co.*, 309 F.3d at 869, quoting *De Aguilar*, 47 F.3d at 1412. *See also Hood v. Gulf States Pipeline Corp.*, 2006 WL 548625, *2 (W.D.La. Mar 02, 2006).

The Fifth Circuit "has expressed its concern about the possibility of 'abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading.'" *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 724 (5th Cir. 2002)(quoting *De Aguilar*, 47 F.3d at 1410; *see also Grant v. Chevron Phillips Chemical Co.*, 309 F.3d at 868-9.

When a state law prohibits a plaintiff from including an *ad damnum* clause, "[l]itigants who want to prevent removal must file a **binding stipulation or affidavit with their complaints**; once a defendant has removed the case, *St. Paul* makes later filings irrelevant." *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir.1992) (per curiam), citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 US 283, 58 S.Ct. 586 (1938). Furthermore, St. Paul notes that the general principal is that the plaintiff will have to show that they **are irrevocably bound by their pleadings in the situation**. *St. Paul* at 1412 n. 10. No such binding stipulation was made herein when the petition was filed.

While State Farm admits no liability nor any element of damages, under the rules of *De Aguilar* and *Grant*, State Farm has met its burden of showing that it is facially apparent that the amount in controversy is likely in excess of $75,000, that this federal court would have original diversity jurisdiction under 28 U.S.C. § 1332 and removal under 28 U.S.C. § 1441(b) is proper.

**B.     Multiparty, Multiforum Trial Jurisdiction Act (MMTJA)**

This case meets the criteria for jurisdiction under 28 U.S.C. § 1369, which provides, in pertinent part:

> **§ 1369. Multiparty, multiforum jurisdiction**
>
> **(a) In general.**--The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location, if--
>
>> **(1)** a defendant resides in a State and a substantial part of the accident took place in another State or other location, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;

    **(2)** any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or

    **(3)** substantial parts of the accident took place in different States.

Thus, original jurisdiction will lie over an action if each of the following requirements is satisfied:

    (a)  There is minimal diversity;

    (b)  One of the jurisdictional requirements set out in §1369(a)(1) – (3) is met;

    (c)  The action arises from a single "accident," as defined in § 1368(c)(4);

    (d)  At least 75 persons died as a result of the "accident"; and

    (e)  Those deaths occurred at a "discrete location."

These factors are discussed below:

  **a.**  ***No dispute as to Diversity and Jurisdictional Requirement.***

There is no dispute that there is minimal diversity between the parties in this case because Plaintiff is a citizens of Louisiana and State Farm is a citizen of Illinois. See 28 U.S.C. § 1369(c)(1) ("minimal diversity exists between adverse parties if *any* party is a citizen of a state and *any* adverse party is a citizen of another State") (emphasis added). There is no question that the jurisdictional requirements are met in that a substantial parts of the accident took place in different states, ie: Louisiana and Mississippi.

  **b.**  **Katrina is and Accident Under MMTJA**

Plaintiff disputes that Katrina is considered an "accident" under the statute. The MMTJA defines "accident" as either (1) "a sudden accident" or (2) **"a natural event culminating in an accident."** 28 U.S.C. § 1369(c)(4). Initially, it should be noted that in defining the statutory

term "accident", §1369(c)(4) uses the term "accident" within the body of the definition. To avoid circularity, it must be assumed that Congress intended for the term "accident" as used within the definition to have the ordinary meaning of that term which, when combined with the other parts of the definition, provides a definition of the statutory term "accident" for the purpose of the MMTJA. "Accident" is generally defined as "an unintended or unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." Black's Law Dictionary 15 (7th ed. 1999). When the statutory definition is so construed, it is clear that Plaintiff's lawsuit arises from an "accident" as that term is statutorily defined in at least two different ways.

First, Hurricane Katrina was a statutory "accident" under the second prong of the statutory definition (i.e., "a natural event culminating in an accident"). There can be no dispute that Hurricane Katrina was a "natural event." Neither can there be any dispute that Hurricane Katrina culminated in an untold number of smaller "accidents" within the ordinary meaning of that word (i.e., unintended or unforeseen injurious occurrences) across Louisiana and Mississippi, including the damage to the Plaintiff's residence, various levee breaches, and flooding throughout Jefferson and other parishes.

Additionally, the first prong of §1369(c)(4)'s definition of the statutory term "accident" (i.e., a sudden accident) provides a second way to find that this lawsuit arises out of an accident within the meaning of the MMTJA. Under the ordinary meaning of "accident" (i.e., "an unintended or unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated"), there can be little question about the fact that a hurricane qualifies as an "accident." While the meteorological events that gave rise to

Hurricane Katrina may have developed over a brief period of time, there is no doubt that Katrina struck suddenly or that its physical impact on the Gulf Coast was sudden.

Pursuant to the definition of "accident" in § 1369 (c)(4), the jurisdictional provisions of the MMTJA are implicated where an action arises either from (1) a sudden or unintended or unforeseen injurious occurrence or (2) a natural event culminating in an unintended or unforeseen injurious occurrence. Hurricane Katrina meets both alternatives of the specific, specialized definition of "accident" provided by the MMTJA.

c. **At least 75 persons died as a result of the accident.**

Plaintiffs' claims stem from Hurricane Katrina, August 29, 2005, an event during which over 1,500 persons died, including over 1,200 in Southeast Louisiana.[1].

d. **Those deaths occurred at a discrete location.**

Whether Hurricane Katrina is determined to be a sudden unintended or unforeseen injurious occurrence, a natural event culminating in an unintended or unforeseen injurious occurrence, or both, it must be found to have resulted in "death incurred at a discrete location by at least 75 natural persons" in order to qualify as an accident for purposes of the MMTJA. 28 U.S.C. §1369(c)(4).[2] While it is beyond dispute that Hurricane Katrina resulted in more than 75 deaths, the statute also requires that the requisite number of deaths have occurred at a "discrete

---

[1] See http://www.cnn.com/2006/US/03/19/katrina.toll/index.html;
http://www.dhh.louisiana.gov/offices/page.asp?ID=192&Detail=5248;
http://www.insurancejournal.com/news/southeast/2006/01/24/64517.htm.

[2] Defendants believe that a proper construction of § 1369(c)(4) – one which assumes Congress intended to use parallel construction – is that the 75 deaths must result from the statutory accident (i.e. the "sudden accident" or the "natural event"). However, even if the second prong of 28 U.S.C. §1369(c)(4)'s definition of "accident" were interpreted to require that the 75 deaths must result from the ordinary accident that is the definitional component of the statutory accident, the requirement would still be met with respect to Hurricane Katrina as the substantial majority of the more than 1,000 deaths caused by Hurricane Katrina were the result of flooding and most of the

location." 28 U.S.C. §1369(c)(4). "Discrete" is an inherently relative term and only denotes something "individual; separate; distinct." Black's Law Dictionary 479 (7th Ed. 1999). As such, the specificity of the term "discrete" is a function of the context and circumstances in which it is used. A natural reading of the term "discrete location" as used in the MMTJA would vary the applicable boundaries of the location based upon the nature and characteristics of the statutory accident at issue. Here, where Hurricane Katrina is the statutory accident, the term "discrete location" should be understood as encompassing the geographic area devastated by the landfall of that storm (i.e. the American Gulf Coast). This location is specific and identifiable to the exclusion of all other geographic areas and its scope of framed by reference to the causative event that necessitates the inquiry (i.e. Hurricane Katrina). Well more than 75 persons died in New Orleans and the coastal areas of Louisiana and Mississippi as a result of Hurricane Katrina.

Nonetheless, even if the Court were inclined to interpret the term "discrete" to require that the requisite number of deaths have occurred in a defined area less than the entire area impacted by the statutory accident, there are numerous locations that would qualify, including the State of Louisiana, the Eastern District of Louisiana, the City of New Orleans, and/or the Lakeview area of New Orleans between the 17th Street and London Avenue Canals. *See Chehardy v. La. Ins. Comm, et al*, No. 3:05-CV-1140, Docket #188 (M.D. La. March 16, 2006)(holding requirements of § 1369 had been met in a case arising from Hurricane Katrina without specifying the discrete location relied upon) (attached as Exhibit B).

Any of these various discrete locations would suffice to satisfy the MMTJA's threshold. Once it is established that the requisite number of deaths occurred at a given discrete location and

---

hundreds of deaths in New Orleans were the result of the breaches of the various levees and canals comprising the

that those deaths resulted from the statutory accident, the Court would have jurisdiction over any and all civil actions arising out of the same accident irrespective of where the injuries on which those actions were based might have been suffered.

MMTJA jurisdiction does not depend upon whether the Plaintiff's claims are related in some way to any of the deaths caused by Hurricane Katrina, nor does it depend upon whether Plaintiff's claim even arises in the same discrete location as the deaths. The MMTJA specifically contemplates that the **qualifying accident could span multiple judicial districts or states**. See 28 U.S.C. §1369(a)(3) (providing for jurisdiction where "substantial parts of the accident took place in different States"); see also 28 U.S.C. § 1391 (g) (providing for venue "in any district in which ... a substantial part of the accident giving rise to the action took place").

Katrina was both a sudden unintended or unforeseen injurious occurrence and a natural event culminating in many unintended or unforeseen injurious occurrences across the Gulf Coast region. Hurricane Katrina resulted in more than 75 deaths both overall and in specific locales as small as Orleans Parish. There is no dispute about the fact that this lawsuit arose out of Hurricane Katrina; indeed, Plaintiffs' Petition has expressly alleged such. This is all the plain language of §1369 requires.

### 1. Cases Declining to Find Jurisdiction under the MMTJA Fail to Consider the Plain Language of the Statute.

The best evidence of what Congress intended in enacting a particular statute is the words that it chose to use in the statute itself; courts should not consult legislative history unless the statutory language itself is ambiguous. *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 125 S. Ct. 2611, 2625-27, 162 L.Ed.2d 502 (2005). "[The Supreme Court] has stated

---

city's flood control system.

time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous then, the first canon is also the last: judicial inquiry is complete." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)(citations and internal quotation marks omitted).

Despite the plain language of Section 1369 and without acknowledging any of the aforementioned Supreme Court precedent, some decisions have recently refused to apply it to claims arising out of Hurricane Katrina based on the legislative history of the MMJTA. *See Southhall v. St. Paul Travelers Ins. Co.*, NO. 06-3848, 2006 WL 2385365, at *5-6 (E.D. La. Aug. 16, 2006) (Barbier, J.) in which this Honorable Court concluded from legislative history that *MMTJA was intended to allow consolidation of cases related to common disaster and holding that MMTJA did not confer jurisdiction over case before court because it was not a large class action and defendants had made no suggestion that case should be consolidated with any other pending litigation.* See also *Hillery v. State Farm Fire & Cas. Co.*, Case No. 2:06-CV-2909, Docket No. 7, pp. 5-8 (E.D. La. July 26, 2006) (Barbier, J.); *Willhoft v. Kert Leblanc Ins. Agency, Inc.*, Case No. 2:06-CV-1235, Docket No. 27, pp. 4-5 (E.D. La. July 5, 2006) (Lemmon, J.) (concluding from legislative history and commentary that MMTJA jurisdiction "is not intended to apply to a case where there are not many plaintiffs and many defendants"); *see also Wallace v. La. Citizens Prop., Ins. Corp.*, No. 2:06-CV-114, Docket No. 58, p. 4 (E. D. La. June 7, 2006) (Livaudais, J.) (rejecting MMTJA argument out of hand based solely on general "presumption against federal subject matter jurisdiction"). However, as noted previously, the plain and unambiguous text of § 1369 imposes no requirement that a given case involved any

particular number of plaintiffs or defendants or that it have any legal or factual issues in common with any other pending action.

While jurisdictional statutes are to be strictly construed, they must still be applied in accordance with their plain language. The unambiguous jurisdiction requirements of § 1369 are all satisfied in this case; whether or not Congress contemplated the application of MMTJA to this sort of action is entirely beside the point. Indeed, in holding that the plain language of 28 U.S.C. § 1367 overruled prior to Supreme Court pendent party jurisdiction case law, the Supreme Court refused to consider and/or give weight to legislative history specifically disclaiming any intent to accomplish such a result. *Exxon,* 125 S. Ct. at 2625-27. This court thus has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1369(a), and Defendant requests that this Honorable Court reconsider its prior rulings on the MMTJA.

Further, the limited abstention grounds of §1369 do not apply:

> **(b) Limitation of jurisdiction of district courts.**--The district court shall abstain from hearing any civil action described in subsection (a) in which--
>
> **(1)** the substantial majority of all plaintiffs are citizens of a single State of which the primary defendants are also citizens; and
>
> **(2)** the claims asserted will be governed primarily by the laws of that State.

Section 1369(b) does not require the Court to abstain from exercising jurisdiction over this case. Section 1369(b)(1), the first requirement for abstention, is not satisfied. State Farm and plaintiff are not citizens of the same state. It is therefore not the case that the plaintiff is a citizens of the same state as all of the primary defendants and the court should not abstain. *See Passa v. Derderian,* 308 F. Supp. 2d 44, 61 (D.R.I. 2004) ("§ 1369 does not require this court to abstain if

any *one* of the so-called 'primary defendants' is from a state other that Rhode Island") (emphasis in original).

### 2. This Court has "Piggyback" Jurisdiction under 28 U.S.C. §1369.

In the alternative, if there were not original jurisdiction for removal under §1369, the statute also grants what has been termed "piggyback" jurisdiction. While 28 U.S.C. § 1441(e)(1)(A), allows removal in cases where the federal courts have original jurisdiction under 28 U.S.C. § 1369, a companion provision, 28 U.S.C. § 1441(e)(1)(B) also allows removal of actions not otherwise removable but where a defendant is a party to a different case which was brought or could have been brought into federal court under 28 U.S.C. § 1369. State Farm is a defendant in the Katrina-related matter entitled *Gladys Chehardy, et al, v. J. Robert Wooley, et al.*, (3:05-CV-01140) in the Middle District of Louisiana. *Chehardy* has been removed pursuant to 28 U.S.C. 1369 and 28 U.S.C. 1441(e)(1)(A).

Under the language of 28 U.S.C. § 1441(e)(1)(B), because State Farm "is a party to an action [*Chehardy*] which is or could have been brought, in whole or in part, under section 1369 in a United States district court and arises from the same accident as the action in State court", the above-captioned matter [Chatelain] is removable "even if the action to be removed [Chatelain] could not have been brought in a district court as an original matter."

In other words, because *Chehardy* has been removed to federal court under 28 U.S.C. § 1369 and 28 U.S.C. § 1441(e)(1)(A), other cases arising out of the same accident (Hurricane Katrina) in which State Farm is a party may also be removed to federal court under 28 U.S.C.

1441(e)(1)(B) even if there was no original jurisdiction under 28 U.S.C. § 1369.[3]  Plaintiff complains that "one case cannot piggyback on another unrelated case simply because they are pending in the same court." On the contrary, this is precisely what the statute calls for. The only requirement is that the cases arise from the same accident, and interpreting the "accident" as Hurricane Katrina, this is met within the plain language of the statute.  Even if the court were to determine that there is no case jurisdiction under §1369 (a), this Court still has jurisdiction of the present matter as long as any of the above actions are subject to §1369(a).

Moreover, even assuming the abstention provision of Section 1369(b) did apply to this case, that would not prevent the Court from exercising jurisdiction over this case under the piggyback jurisdiction of 28 U.S.C. § 1441(e)(1)(B). The Fifth Circuit has specifically held that Section 1369(b) operates only as a limitation on a court's ability to hear a case brought as an original matter under Section 1369(a). *Wallace*, 444 F. 3d at 702. As discussed in detail above, Section 1441(e)(1)(B) permits the removal of an action over which the federal courts would not have independent subject matter jurisdiction under Section 1369(a) or any other provision. Therefore, even if found applicable to the facts of this case, Section 1369(b) would not prevent defendants from removing this case on the basis of Section 1441(e)(1)(B). *See Wallace*, 444 F.

---

[3] Of note, §1441(e)(1)(B) does not require that the case upon which removal is premised have been brought or removed on the basis of §1369(a), only that it "could have been" so brought. Therefore, so long as a defendant is a party to an action which falls within the jurisdictional scope of §1369(a), that defendant may remove any other action arising from the same statutory accident to which it is also party irrespective of otherwise applicable restrictions on federal jurisdiction. See *Wallace*, 444 F. 3d at 702. Thus while the Chehardy case was removed under §1369(a), other cases which were not brought to federal court in that basis, but which could have been, also apply as a basis for removal under the "piggyback" jurisdiction of § 1441(e)(1)(B). State Farm is also a defendant in the Katrina-related cases (1) Sonya Dumont v. State Farm Insurance Company, No. 2.06-cv-02457-EEF-JCW, (2) Genevieve Williams, et al v. State Farm Fire and Casualty Company et al, No. 2:06-cv-02919-SSV-ALC, and (3) Pearl Caruso, et al v. Allstate Insurance Company, et al., No. 2:06-cv-02613-SSV-ALC. Each of these features minimal diversity, a relation to Hurricane Katrina, and a lead defendant not from Louisiana; thus each was or could have been removed to federal court under 28 U.S.C. § 1369. Therefore these cases may also serve as a basis for removing the present case to federal court under 28 U.S.C. § 1441(e)(1)(B) "piggyback" jurisdiction.

3d at 702 ("Consequently, § 1369(b) is not an independent bar to the exercise of jurisdiction over a case removed pursuant to §1441(e)(1)(B), as it applies only to the exercise of original jurisdiction under § 1369(a).")

## IV. CONCLUSION

Plaintiff's claims as pled in the original Petition for Damages seeks additional limits under the State Farm policy as well as "actual rental income" loss as a result of Hurricane Katrina which is more than the $75,000 jurisdictional limits. There is no dispute that the parties are citizens of different states. Therefore, this Honorable Court has jurisdiction under diversity pursuant to § 1332. In the alternative, 28 U.S.C. §1369 provides an additional basis for federal jurisdiction.

Respectfully submitted:

BRANT J. CACAMO, #26227
ERIC B. BERGER, #26196
CHARLES R. RUMBLEY, #29666
LOBMAN, CARNAHAN, BATT,
  ANGELLE & NADER
THE TEXACO CENTER, SUITE 2300
400 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130
(504) 586-9292  FAX (504) 586-1290
*Attorneys for State Farm Fire & Casualty Co.*

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 4th day of Dec., 2006, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing same by United States mail, properly addressed, and first class postage prepaid.