

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 195989 (E.D.La.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

**C**
Briefs and Other Related Documents
Crawford v. Offshore Pipelines Int'l, Ltd.E.D.La.,1998.Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.
Jim E. **CRAWFORD**
v.
**OFFSHORE PIPELINES** INT'L, LTD. and J. Ray McDermott, S.A.
**No. Civ.A. 97-0144.**

April 22, 1998.

DUVAL, J.
***1** Before the court are three motions which were heard on December 17, 1997 with oral argument: Motion To Dismiss Pursuant to Rule 12(b)(2) filed by defendant Offshore Pipelines International Limited ("OPIL"); a Motion for Summary Judgment filed by defendant J. Ray McDermott, S.A. and a Motion to Stay Federal Court Proceedings filed by plaintiff Jim E. Crawford. Having reviewed the record, the arguments of counsel and the applicable law, the court transfers this case pursuant to 28 U.S.C. section 1406 to the Southern District of Texas, grants summary judgment in favor of J. Ray McDermott, and denies plaintiff Crawford's motion to stay as moot.

Plaintiff Jim Crawford ("Crawford") brought this action under against OPIL and J. Ray McDermott S.A. for injuries he allegedly sustained on January 24, 1998 while employed as an electrician assigned to Barge BB-316. Defendant OPIL contends that it is not subject to personal jurisdiction in this district and defendant J. Ray McDermott S.A. contends that it is not Crawford's employer and did not assume OPIL liabilities pursuant to a merger subsequent to the alleged accident.

**A. The court lacks personal jurisdiction over OPIL**

OPIL maintains that it is not subject to personal jurisdiction in this district. Plaintiff argues that jurisdiction over OPIL based on its Louisiana contacts and its relation to J. Ray McDermott, S.A., OPIL's grandparent company since 1994. The court ultimately concludes that plaintiff is unable to demonstrate that the court has personal jurisdiction over OPIL based on either theory.

A federal court sitting in diversity may exercise personal jurisdiction to the extent permitted under state law. *Allred V. Moore & Peterson,* 117 F.3d 278, 281 (5th Cir.1997). The reach of federal jurisdiction involves a two-step inquiry. *Jobe v. ATR Marketing, Inc.,* 87 F.3d 751, 753 (5th Cir.1996). First, the law of the forum state must provide for the assertion of such jurisdiction; and, second, the exercise of jurisdiction under state law must comport with the dictates of the Fourteenth Amendment Due Process Clause. *Id.* Louisiana's long arm statute permits the exercise of personal jurisdiction to the full extent permitted under due process. La.Rev.Stat. § 13:3201. Under the Due Process Clause, plaintiff must demonstrate that the nonresident defendant "purposely established minimum contacts with the forum state," and further that the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Plaintiff bears the burden of establishing the court's jurisdiction over the nonresident. *Jobe,* 87 F.3d at 753, *citing* *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.1994). In determining whether personal jurisdiction exists, the court may consider affidavits, as well as other discovery. *Id.* On a motion under Rule 12(b)(2) the court takes the uncontradicted allegations in plaintiff's complaint as true, and resolves any conflicts contained in the parties' affidavits in favor of the plaintiff for purposes of determining whether a prima facie case of personal jurisdiction exists. *Buillion v. Gillespie,* 895 F.2d 312, 317 (5th Cir.1990). Minimum contacts with the forum state can arise incident to either "specific jurisdiction" or "general jurisdiction." Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from the cause of action. *Felch v. Transportes Lar-Mex Sa Da CV,* 92 F.3d 320, 324 (5th Cir.1996). General jurisdiction will attach, even if the non-resident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts with the forum state are both continuous and systematic. *Id., citing* *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.), *cert denied,* 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT
tabbles
1

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 195989 (E.D.La.)
**(Cite as: Not Reported in F.Supp.)**

Page 2

***2** The fact that the court has personal jurisdiction over a parent corporation does not necessarily establish personal jurisdiction over its foreign subsidiary. So long as the parent and subsidiary corporations maintain separate corporate identities and the parent corporation does not control the subsidiary, the activities of parent and subsidiary corporations are not attributable to each other. *Hargrave v. Fibreboard Corporation*, 710 F.2d 1154, 1166 (5th Cir.1983). In *Hargrave* the Fifth Circuit stated:

[S]o long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other.... We have noted that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an later ego relationship between two corporations. Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship. All the relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist.

*Id.* (Citations omitted.); *see also Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir.1990). Here, the court has personal jurisdiction over OPIL's parent corporation, J. Ray McDermott, Inc., and its grandparent corporation, J. Ray McDermott, S.A., which both maintain offices in Louisiana. The burden is on plaintiff to establish that either OPIL's parent or grandparent controls OPIL's internal business operations and affairs.

The court examines whether it has general jurisdiction over OPIL. Specific jurisdiction is ruled out by the fact that Crawford sustained his injuries en route to India and therefore such injuries did not arise directly from OPIL's Louisiana contact. Crawford Deposition, p. 44. As to general jurisdiction, OPIL claims that it has insufficient contacts in Louisiana to subject it to personal jurisdiction and, further, that the activities of OPIL's parent and grandparent are not attributable to OPIL. In support of this motion, OPIL submitted the affidavit of Robert E. Stumpf, Assistant Secretary of McDermott Inc., who is knowledgeable about OPIL and its relationship to its parent and sister companies. Stumpf Affidavit, OPIL Exhibit A. Stumpf states that OPIL was and continues to be a separately incorporated Cayman Islands corporation that is a wholly owned foreign subsidiary of OPI International, Inc ("OPII"). OPII changed its name to J. Ray McDermott, Inc. on January 30, 1995. On January 31, 1995, Offshore Pipelines, Inc. (OPIL's former grandparent) merged into J. Ray McDermott Holdings, Inc., which is a separately incorporated, wholly-owned subsidiary of J. Ray McDermott, S.A. After the merger, Offshore Pipelines, Inc. ceased to exist. Though OPIL is now the wholly-owned foreign subsidiary of J. Ray McDermott, Inc., OPIL retained its name and separate corporate status. *Id.* According to Stumpf, OPIL has no purposeful activity in or directed at Louisiana:

***3** OPIL has never qualified to do business in Louisiana, has performed no work in Louisiana, has never owned property in Louisiana and does not now nor has it ever had any offices or places of business in Louisiana. OPIL performs services for the oil and gas industry outside of the United States and its territorial waters.

Its operations are carried out and directed by its President and Chief Operating Officer and Senior Vice President and General Manager both of whom are in Houston, Texas. It is still maintained as a wholly separate corporation.

*Id.*

OPIL did not have any contact with Louisiana in its interactions with Crawford, who is a Mississippi resident. Crawford was employed by OPIL under two successive contracts. Crawford first signed an international employment agreement in Orange, Texas to work for OPIL overseas on the Barge M-289. Crawford traveled from Mississippi to Texas where he joined the vessel, rode the vessel to India, and, upon arrival in India, returned to the United States. *See* Crawford Deposition, OPIL Exhibit B, pp. 22-32; September 29, 1992 Contract, OPIL Exhibit C. On January 4, 1994, plaintiff entered a second contract with OPIL, under which contract he was working at the time of alleged accident. OPIL Exhibit D. This contract too was executed in Orange, Texas. [FN1] According to Crawford, he boarded the India bound Barge BB-316 in Texas, rode the barge under tow to Cameron, Louisiana where the barge was placed on board the deck of ship which then carried it to India as cargo. Crawford Deposition, pp. 40-42. The alleged accident took place between en route to India; Crawford claims that it occurred somewhere around South America, between four and six days after the ship departed with the barge from the load point. *Id.*, at pp. 43-48.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 195989 (E.D.La.)
**(Cite as: Not Reported in F.Supp.)**

Page 3

FN1. The contract contains a choice of law provision that any disputes arising out of the agreement shall be governed by Texas law.

Crawford has offered some unconvincing evidence in support of personal jurisdiction over OPIL. Short of listing OPIL's Louisiana contacts, if any, or demonstrating that OPIL is controlled by its parent or grandparent, Crawford attempts to create an inference that OPIL's daily operations are run by the McDermott family of companies. First, Crawford argues that the "point of origin" listed on his employment contract is New Orleans. OPIL Exhibit C, "International Employment Agreement." A reading of the contract verifies OPIL's contention that the term "point of origin" is used because New Orleans International Airport is the closest airport to Crawford's home in Picayune, Mississippi. This detail does not change the fact that Crawford's contract was executed in Texas, that he departed from Texas, and was allegedly injured en route to India, *i.e.,* the contract does not confer upon OPIL a Louisiana contact. Second, Crawford points to an employment history document, dated April 4, 1995, which shows that Crawford was offered employment by J. Ray McDermott, S.A., OPIL's grandparent. This document proves nothing, as the employment action shown is dated after the accident, after the merger, and by Crawford's own admission, he did not take that job. Crawford Exhibit 2, Crawford Deposition, OPIL Exhibit 2, pp. 92-95. Third, Crawford claims that "the McDermott family of companies performs all accounting services and other various services for and on behalf of OPIL," including maintenance and cure of OPIL seamen for OPIL. Crawford Exhibit 3. Crawford's Exhibit 3 contains no less than five hundred pages and Crawford fails to offer any explanation as to which pages demonstrate that McDermott has taken services for OPIL; Crawford's counsel was likewise unable to direct the court to such evidence at oral argument on this motion. OPIL admits that since the merger, certain accounting functions were consolidated and that McDermott International, Inc. handles its subsidiaries' accounting. OPIL denies that McDermott pays maintenance and cure of OPIL's seamen, and there is no evidence that this is true. Fourth, based the fact that OPIL has no employees, Crawford infers, without any proof, that McDermott must "do all operations" on behalf of OPIL. Although OPIL has no employees, its operations are carried out by its officers in Houston, Texas, and not by J. Ray McDermott, S.A. Stumpf Affidavit. Fifth, Crawford submitted numerous contracts and agreements, which neither demonstrate that OPIL had continuous and systematic contacts with Louisiana and nor bear on whether OPIL is controlled by its corporate parent or grandparent.[FN2] Crawford Exhibit 4. Finally, plaintiff states that additional discovery would help him to establish that the court has personal jurisdiction over OPIL. Crawford has failed to submit any discovery during the pendency of this motion.

FN2. Specifically, Crawford attaches two agreements, "Services Agreement" and a "Transition Services Agreement," both dated August 16, 1994 of entered between J. Ray McDermott, S.A., and McDermott International, Inc. The agreements provide that McDermott International shall provide or cause its subsidiaries to provide J. Ray McDermott, S.A. certain services on an exclusive basis. Crawford Exhibit 4.

*4 The court concludes that Crawford has failed to establish that OPIL had continuous and systematic contacts with Louisiana for jurisdictional purposes, that this court lacks of personal jurisdiction over OPIL, and that this case shall be transferred to the Southern District of Texas, where OPIL is subject to suit, as discussed section D, *infra.*

**B. J. Ray McDermott is entitled to summary judgment**

J. Ray McDermott S.A. requests that summary judgment be entered in its favor, dismissing all of Crawford's claims for negligence under the Jones Act and maintenance and cure under general maritime on ground that J. Ray McDermott S.A. is not Crawford's employer.

A Jones Act claim requires proof of an employment relationship. 46 U.S.C.A. § 688(a); *see* Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447, 452 (5th Cir.1980) Likewise, only a seaman's Jones Act employer owes that seaman a maintenance and cure obligation. *Peloto v. L & N Towing Co.,* 604 F.2d 396 (5th Cir.1979). Additionally, under the general maritime law, the shipowner or operator of a vessel is held to an implied warranty that the vessel is reasonably fit for its intended purpose. *Morales v. Galveston,* 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962). Schoenbaum, *Admiralty and Maritime Law* § 5-9 at 199 (2d ed.1994). Based on these well-established rules of law, J. Ray McDermott could only be liable to Crawford if it is Crawford's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 195989 (E.D.La.)
**(Cite as: Not Reported in F.Supp.)**

Page 4

employer, owned or operated Barge BB-316 or assumed OPIL's liabilities.

The following facts, as set forth by J. Ray McDermott, are uncontested by the plaintiff and the court adopts these facts as its findings herein. Plaintiff was employed by OPIL pursuant to his January 4, 1994 employment contract to travel with Barge BB-316 from Texas to India and then to work aboard the vessel in India until completion of his one year contract. Uncontested Facts Nos. 1, 2; *see* Crawford Deposition, pp. 34-37. J. Ray McDermott S.A. is a corporation which was incorporated on March 22, 1994 under the laws of the Republic of Panama. Uncontested Fact No. 3; *see* Stumpf Affidavit. On the date of Crawford's alleged accident, January 25, 1994, J. Ray McDermott S.A. did not even exist as an entity such that it did not and could not have employed plaintiff nor did it or could it own, operate, or charter any vessels including the BB-316, the barge upon which Crawford claims he was injured. Uncontested Fact No. 4; *see* Stumpf Affidavit. At all material times, OPIL was a separately incorporated Cayman Island corporation which has maintained and continues to maintain its separate corporate status with an identity wholly different from any other corporation including J. Ray McDermott S.A. Uncontested Fact No. 5; *see* Stumpf Affidavit. J. Ray. McDermott S.A. has never assumed any liabilities incurred by OPIL. Uncontested Fact No. 3; *see* Stumpf Affidavit. Crawford disputes two facts relative to this motion, but has failed to demonstrate with summary judgment type evidence that there is a genuine dispute as to either one. Again here Crawford references the services and transition services agreements that he submitted with his opposition to OPIL's motion to dismiss, and states that this evidence "raises questions of fact as to employment by J. Ray McDermott S.A. of plaintiff and as to whether J. Ray McDermott S.A. was the acting employer of plaintiff following the merger of OPI, Inc. with the McDermott Companies." The agreements prove nothing relative to this motion: neither agreement mentions OPIL, its employees or whether its liabilities would be assumed by J. Ray McDermott, S.A. Crawford has been unable to demonstrate that J. Ray McDermott could be liable for Crawford's Jones Act claim, would be required to pay maintenance and cure obligation to Crawford, or had a duty to maintain seaworthiness of the barge BB-316. The court concludes that Crawford has failed to show that there is any genuine issue of material fact as to his claims against J. Ray. McDermott, S.A. and shall therefore enter summary judgment in favor of J. Ray McDermott, S.A. dismissing all of Crawford's claims against it.

**C. Crawford's motion to stay is moot**

***5** The court having determined that it lacks personal jurisdiction over OPIL, Crawford's employer at the time of the accident, and entered summary judgment in favor of J. Ray McDermott, S.A., there is nothing more for the court to decide in this matter and the court therefore denies as moot Crawford's motion to stay this action pending resolution of a related state action pending in Civil District Court for the Parish of Orleans, State of Louisiana.

**D. Transfer Pursuant to 28 U.S.C. § 1406**

No party disputes that subject matter jurisdiction over this matter is founded on diversity, 28 U.S.C. § 1332, and the Jones Act, 46 U.S.C. § 688. Given the posture of this matter, venue is improper in this district. A § 688 Jones Act claim shall be filed "in the district in which the defendant employer resides or in which his principal office is located." 46 U.S.C. § 688(a). For diversity as well as Jones Act purposes, a corporate defendant "resides" in any district in which it is subject to personal jurisdiction. *See* 28 U.S.C. § 1391(c), 15 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 3825 (2d ed.1986). Based on the court's finding that it lacks personal jurisdiction over OPIL, the court finds that OPIL does not "reside" in this district and that venue in this district is improper. OPIL does reside in Houston, Texas, where its officers run the company, and venue is proper in the Southern District of Texas.

This court has discretion to transfer this action to the Southern District of Texas. 28 U.S.C. § 1406(a). Where there is a defect in venue, the proper remedy is found under 28 U.S.C. § 1406(a). *See Tel-Phonic Servs., Inc. v. TBS Int'l. Inc.,* 975 F.2d 1134, 1141 (5th Cir.1992). Section 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought.

A court may invoke the remedial measures of § 1406(a) *sua sponte* . [FN3] *See Caldwell v. Palmetto State Sav. Bank of South Carolina,* 811 F.2d 916, 919 (5th Cir.1987). 15 Charles A. Wright, Arthur R.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Miller & Mary Kay Kane, *Federal Practice and Procedure* § 3827 (2d ed.1986). Transfer is authorized whether or not the court has personal jurisdiction over the defendant. *Id., citing* Goldlawr, *Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). The court finds it in the interest of justice to transfer this case to the Souther District of Texas, where OPIL is subject to suit. OPIL admits that it was Crawford's employer and Crawford should be permitted to pursue his claim against OPIL. Absent transfer pursuant to § 1406(a), Crawford may be barred from refiling his claims against OPIL in Texas. *See Wilson v. Zapata Off-Shore Co.,* 939 F.2d 260, 266 (5th Cir.1991). Thus, the court finds it in the interest of justice that this matter be transferred to the Southern District of Texas, Houston Division.

FN3. The court raised the issue of transfer at oral argument and provided the parties an opportunity to present their views on the issue. *See, e.g., Stjernholm v. Peterson,* 83 F.3d 347, 349 (10th Cir.1996). Defendant OPIL stated to the court that OPIL would not object to a transfer to the Southern District of Texas, and that OPIL had indeed invited Crawford to sue it in that venue at the outset of this lawsuit and plaintiff's related state action.

***6** Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment** filed by defendant J. Ray McDermott, S.A. ("J. Ray McDermott") is **GRANTED,** dismissing all claims against it with prejudice.

**IT IS FURTHER ORDERED** that this court **LACKS PERSONAL JURISDICTION** over defendant Offshore Pipelines International Limited and hereby **TRANSFERS** this matter pursuant to 28 U.S.C. § 1406 to the Southern District of Texas, Houston Division.

**IT IS FURTHER ORDERED** that the **Motion to Stay Federal Court Proceedings** filed by plaintiff Jim E. Crawford is **DENIED as moot** .

E.D.La.,1998.
Crawford v. Offshore Pipelines Int'l, Ltd.
Not Reported in F.Supp., 1998 WL 195989 (E.D.La.)

Briefs and Other Related Documents (Back to top)

• 2:97cv00144 (Docket) (Jan. 15, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.