O'Donnell & Associates PC

TRIAL LAWYERS

550 SOUTH HOPE STREET
SUITE 1000
LOS ANGELES, CALIFORNIA 90071

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 DEC 11  PM 2:34

LORETTA G. WHYTE
CLERK

TEL 213.347.0290
FAX 213.347.0299
WWW.OSLAW.COM

December 11, 2006

Honorable Stanwood R. Duval, Jr.
United States District Court
Eastern District of Louisiana
500 Poydras Street
New Orleans, Louisiana 70130

Re: **Berthelot v. Boh Bros Constr., Civ. No. 05-4182**
(pertains to Robinson, No. 06-2268)

Dear Judge Duval:

We have received the supplemental letter brief submitted to the Court on December 7, 2006 (the "Letter Brief") by the United States Attorney General with respect to United States' Motion to Dismiss in the above referenced action. Pursuant to Rule 7.5E of the local rules for the Eastern District of Louisiana Plaintiffs, respectfully request that the Court consider the following response to the Letter Brief.

The Letter Brief merely discusses the Eleventh Circuit's decision in *Cranford v. United States*, 466 F.3d 955 (11th Cir. 2006) and advances two primary themes. First, the Government asserts that *Cranford* invalidated any application of the Supreme Court's opinion in *Indian Towing v. United States*, 350 U.S. 61 (1955) to the issue of the discretionary function exception to the Federal Tort Claims Act. Second, the Government contends that *Cranford* holds that the exercise of professional, engineering discretion in connection with a governmental decision does not preclude application of the discretionary function exception.

The Government's Letter Brief both misstates the sum and substance of *Cranford* and its application to this case. First, and foremost, the Government is attempting to distract this Court from the core claim advanced by Plaintiffs. As explained below, the Eleventh Circuit did *not* disavow *Indian Towing*, and the court's conclusions with respect to the discretionary function exception were *limited to the unique facts before the court*. Indeed, in *Alabama Electric Cooperative, Inc. v. United States*, 769 F.2d 1523, 1531 (11th Cir. 1985), the same Eleventh Circuit rejected the application of the discretionary function exception, and held that "the Corps' engineers must be held to the same professional standards of reasonableness and due care that a private engineer faces when

___ Fee___
___ Process___
_X_ Dktd___
___ CtRmDep___
___ Doc. No___

he plies his trade." *Cranford* did not even discuss, much less expressly or impliedly overrule, the longstanding *Alabama Electric Cooperative* decision.

### A. The Core of Plaintiffs' Case Rests on the Failure to Comply with Clear Congressional Mandates.

*Cranford* addressed a dispute over whether the Government had exercised due care in the marking of a sunken wreck in a well-traveled waterway. The plaintiffs claimed that the United States Coast Guard was negligent in the manner it "marked" the wreck and in refusing to remove the submerged vessel from Mobile Bay. *Id.* at 957. There was no claim raised in *Cranford*, nor could there have been, that the Government had failed to follow a statutory mandate. Rather, the only question was whether the manner in which the Government had chosen to mark a wreck and leave it in place had risen to the level of negligence.

As discussed below, this question squarely raised the issue of the governmental discretion defense. By contrast, the present case turns on a statutory claim that the Army Corps failed to satisfy the express provisions of the 1946 and 1958 amendments to the Fish and Wildlife Coordination Act, as amended at 16 U.S.C. § 662, in the administrative process of presenting the MR-GO project to Congress for approval and in implementing the legislative authorization. The claim before this Court entails non-compliance with a congressional mandate, not the misapplication of the powers given by Congress. *Cranford* simply has no bearing on this issue whatsoever.

As set out in Plaintiffs' opposition to the Motion to Dismiss, the United States Supreme Court has unambiguously recognized the distinction between discretionary functions and the violation of a statutory mandate. The controlling case has been and continues to be *Berkovitz v. United States*, 486 U.S. 531, 536 (1988), in which the Court expressly stated that "the discretionary function exception *will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.* In this event, the employee has no rightful option but to adhere to the directive." (emphasis added); *accord Commerce and Industry Ins. Co. v. Grinnell Corp.*, 280 F.3d 566, 572 (5th Cir. 2002).

As explained in Plaintiffs' memorandum, the Congressional decision to build the MR-GO was the only discretionary function exercised in this case. Prior case law, including decisions from the Eleventh Circuit, establish that the manner in which the Army Corps satisfied the Congressional directives — including decisions about route, design, materials, soil erosion prevention and protection of marshlands — involved engineering and scientific judgment not protected by the discretionary function exception to the FTCA. *See Alabama Electric Cooperative, Inc*, 769 F.2d at 1531.

The present case does not implicate any discretionary functions  As reaffirmed by the Supreme Court in *United States v. Gaubert*, 499 U.S. 315, 322 (1991), "[t]he

Honorable Stanwood R. Duval, Jr.
December 11, 2006
Page 3 of 5

exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice' . . . ." Such discretion is absent where a statute directs a specific "course of action." *Id.*

### B.     *The Continued Lessons Gleaned From Indian Towing*

The Government's invocation of *Cranford* as new authority misconstrues the present action as one resting on the outmoded "operational/planning" paradigm established by the Supreme Court in *Dalehite v. United States*, 346 U.S. 15 (1953). There the Supreme Court ruled that a decision made at the "planning level" was an immune discretionary function, while discretion exercised at an "operational level" was actionable:

> The [plaintiffs] . . . would have us rule that the discretionary function exception does not apply to the execution of governmental decision, but this argument merely restates the operational conduct distinction rejected in [*United States v. Gaubert*, 499 U.S. 315 (1991)].

*Cranford*, 466 F.3d at 959.

The Government implies that the Eleventh Circuit, in rejecting the operational/planning distinction, had read the controlling Supreme Court cases to in effect overturn *Indian Towing* and grant blanket immunity any time the Government acted at all. This is an untenable reading of the controlling law.

To begin with, the Eleventh Circuit rejected the continued vitality of *Dalehite* only because the "operational/planning" dichotomy is no longer the accepted test for determining the application of discretionary function immunity. The Eleventh Circuit did not, however, disapprove *Indian Towing* for all purposes, but merely disapproved of the plaintiffs' reliance on the operational/planning distinction. As the Eleventh Circuit stated: "We have previously explained that "[t]his interpretation of *Indian Towing* . . . has been severely undercut, if not altogether disavowed, by the Supreme Court in *Gaubert*.'" *Cranford*, 466 F.3d at 959 (underlining added; citations omitted). Contrary to the Government's argument, this was hardly an all encompassing, blanket repudiation of *Indian Towing*; nor could it be since the Supreme Court in Berkovitz expressly stated:

> The decision in *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), also *illuminates the appropriate scope of the discretionary function exception*. The plaintiff in that case sued the Government for failing to maintain a lighthouse in good working order. The Court stated that the initial decision to undertake and maintain lighthouse service was a discretionary judgment. . . . The Court held, however, that the failure to maintain the lighthouse in good condition

3

> subjected the Government to suit under the FTCA. . . . *The latter course of conduct did not involve any permissible exercise of policy judgment.*

*Berkovitz*, 486 U.S. at 538 & n. 3 (emphasis added).

The Fifth Circuit has likewise recognized the continued viability of *Indian Towing* as an illustrative example of the contours of the discretionary function exception, rather than as support for the continued viability of the "planning/operational" test. In fact, relying on *Indian Towing* in this limited context, the Fifth Circuit reached a conclusion contrary to the Eleventh Circuit's ruling in *Cranford*. In *Sheridan Transp. Co. v. United States*, 834 F.2d 467 (5th Cir. 1987), the plaintiff sued the United States for damage sustained by one of its barges that struck a submerged wreck. The plaintiff claimed that the Coast Guard was negligent in the placement of the buoy that marked the wreck's location. Whereas the Eleventh Circuit held that the maintenance of such marker buoys was an immune discretionary function, the Fifth Circuit reversed a judgment for the United States, stating:

> Coast Guard regulations state that wreck markers are to be placed "as near to the wreck as conditions will permit." . . . Assuming that the Coast Guard had discretion whether or not to mark a wreck, that discretion had to be exercised responsibly. . . . Once the Coast Guard voluntarily assumed the duty to mark, it also assumed the obligation to use due care in doing so. *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 126-27, 100 L.Ed. 48 (1955) . . . .

*Sheridan Transp. Co.*, 834 F.2d at 474 (citations omitted); *see also Seaboard Coast Line RR. Co. v. U.S.*, 473 F.2d 714, 716 (5th Cir. 1973) ("Once the government decided to build a drainage ditch, it was no longer exercising a discretionary policy-making function and it was required to perform the operational function of building the drainage ditch in a non-negligent manner.").

*Indian Towing*, *Sheridan Transp. Co.*, and *Seaboard Coast Line RR. Co.* stand for the solid proposition that any government agency must exercise its authority in a responsible manner. Nothing in *Cranford* alters this conclusion. In the case before this Court, the United States Army Corps of Engineers (the "Corps") had an obligation responsibly to carry out its statutory mandate to construct and maintain the MR-GO -- an obligation it failed to discharge with devastating consequences for the people of Greater New Orleans.

### C. *The Eleventh Circuit's Application of the Discretionary Function Exception to The Marking And Removal Of Submerged Wrecks*

The Eleventh Circuit also concluded that the marking of the submerged wreck was a discretionary function *based on evidence* showing the true extent of the Coast

4

Guard's discretion. The Court in *Cranford* first noted that "[t]he pertinent statutes, regulations, and internal policy allow the Coast Guard broad discretion in deciding how to mark a wreck." *Cranford*, 466 F.3d at 959. The Court further noted that "[t]he government persuasively explains that decisions in marking a wreck involve social, political, and economic policy considerations, such as taking into account the knowledge and customs of international mariners, balancing the needs of pleasure and commercial watercraft, and evaluating agency resource constraints, which include but are not limited to financial concerns." *Id.* at 960. Even with this evidence, however, the Eleventh Circuit found that determining whether the Coast Guard's decisions with respect to marking the wreck were discretionary functions was a "closer question." *Id.* at 959-960.

In the case before this Court, the Government provided no such evidence. There was no reference to any relevant statutes, regulations or internal policy memoranda governing the Corps or the planning, design or construction of the MR-GO. The Government introduced no documents, testimony or declarations relating to the nature of the Corps' decisions prior to either (1) presenting the MR-GO proposal to Congress in 1951, (2) planning and designing the MR-GO during the 1950s, or (3) constructing the MR-GO in the early 1960s. The only evidence provided by the Government dealt with the supposed construction of a lock and dam which never truly existed, and the erection of supposed levees that failed to satisfy the Corps' own standards for levee construction.

While the Eleventh Circuit in *Cranford* observed that professional standards do not automatically preclude the existence of a discretionary function, the Government in the case before this Court provided no evidence describing the nature of decisions made prior to, during, and after construction of the MR-GO. Simply put, the Government offered no evidence that any of the Army Corps' decisions concerning the MRGO involved a discretionary function. This lack of relevant evidence completely undermines the Government's motion to dismiss. As another judge of this Court noted in a similar context in *Bean Horizon Corp. v. Tennessee Gas Pipeline Co.*, 1998 WL 113935 (E. D. La. 1998), summary judgment in favor of the United States on discretionary function grounds based on the Army Corps' dredging operations was inappropriate where there was a question of fact as to whether the Corps complied with its own safety standards. *Id.* at p. 5. Likewise, "[s]ummary judgment must also be denied because of the existence of genuine issues of material fact concerning whether the Corps acted negligently in carrying out its discretionary decisions. . . . Once the Corps takes an action, it must act reasonably with respect to those who are likely to rely upon it." *Id.* Here, since the Government provided no competent evidence concerning its discretionary function exception arguments, this Court should deny the Government's motion to dismiss.

Respectfully submitted,

Pierce O'Donnell