With the barrier design concept, the barrier control structures may need to be enlarged for environmental considerations.

BRIEF DESCRIPTION OF PLAN ELEMENTS. All plans were compared to the Future With No Additional Federal Action Condition. This condition assumes that hurricane protection improvements as they existed in October 1979 will continue to be operated and maintained over the project life. Actually, some additional work, such as some levee gap closures, would be completed to a degree of protection comparable to that of the rest of the levee. The various project reaches presently have different levels of protection as a result of being in various stages of construction.

Elements Common To All Plans. Some elements would be common to any barrier or high level plan developed. Some levees and floodwalls would follow the same alinement and have the same design under either type of plan as they would not be affected by the construction of the barriers. These levees and floodwalls include those in the Chalmette area, along either side of the IHNC, and along the Citrus-New Orleans East back levee between the IHNC and the point where the alternative Maxent Canal alinement intersects the levee. The Mandeville seawall feature does not provide hurricane protection; therefore, its design is not dependent on whether barriers are constructed. The alinement of the levees along the Citrus Lakefront, the New Orleans Lakefront and the Jefferson Parish Lakefront would be the same with or without barriers, although these levees would be significantly larger without the barriers. The advanced state of construction of existing levees and the extensive development in these areas make alternative alinements impracticable in these reaches.

BARRIER STRUCTURE(S) ALTERNATIVES. The barrier complexes included in the authorized plan and presented in the August 1974 EIS would be constructed at Lake Pontchartrain's three main tidal passes; Seabrook,

The Rigolets, and Chef Menteur Pass. Any barrier plan would require barrier complexes at all three locations; however, it is possible that the current designs would not be appropriate. Potential design modifications do not stem from any engineering deficiencies, but to the possible need to increase the size of the openings to minimize adverse effects upon the transport of biological, chemical, and physical constituents through The Rigolets and Chef Menteur Pass. (No modification for the Seabrook complex would be necessary.) The transport of such constituents is considered essential to the biological viability of the lake, and severe restrictions may have a significant adverse effect.

A number of complicated, time consuming, and expensive environmental-related studies would be required before a determination could be made as to the most suitable size of barrier complex. Cost estimates were developed for three sizes of complexes at The Rigolets and Chef Menteur Pass. These estimates, shown in Table 12, provide a means of assessing the costs involved in modifying the structures to any reasonable size. Because conduct of the necessary studies would have delayed this planning effort, the decision was made that, for preliminary plan formulation analysis, the costs of the smallest (and least expensive) complexes would be considered for the barrier plans. Selection of the least expensive complex would present the barrier plan from the most favorable economic standpoint. If necessary, the sensitivity of the results of the formulation analysis to barrier sizes and costs can be determined.

Figures 2, 3, and 4 depict artist's view of the conceptual designs of the Seabrook, Chef Menteur Pass, and The Rigolets complexes which were used in the development of cost estimates.

Levee Alinements. Because of the degree of existing development, there are practicable limits to levee alinement variations. There are

## TABLE 12

ESTIMATES OF FIRST COSTS TO COMPLETE BARRIER COMPLEXES
(1,000's of 1981 dollars)

| COMPLEX | SIZE | COST |
|---|---|---|
| Seabrook | N/A | 45,725[1] |
| Chef Menteur Pass | 43% of Natural Opening[2] | 109,301 |
|  | 50% of Natural Opening | 119,192 |
|  | 90% of Natural Opening | 151,093 |
| The Rigolets | 35% of Natural Opening[2] | 195,501 |
|  | 50% of Natural Opening | 228,215 |
|  | 90% of Natural Opening | 325,006 |

[1] Reflects only 50 percent of total first cost, which is hurricane protection project share, the other 50 percent is to be borne by the MR-GO navigation project.

[2] 1975 designs.

reasonable alternative alinements to the existing levee system only in two areas; the Citrus-New Orleans East area, and the East Bank of St. Charles Parish area.

Citrus-New Orleans East Levee Alinements. In the Citrus-New Orleans East area, the existing levee system incloses a large area of wetlands. Several groups and individuals are of the opinion that development of these wetlands would not be in the public interest. Further, the view has been expressed that the wetlands could be made much more productive if normal tidal exchange were reestablished. For these reasons, an alternate levee alinement was considered which would protect nonwetland areas which are presently developed or subject to development, but which would exclude wetland areas encompassed by the existing levee system. This alternative is called the Maxent Canal alinement, because a portion of it parallels a local drainage channel known as Maxent Canal. The alternative levee alinements in the New Orleans East area are shown on Plate 6.

St. Charles Parish Levee Alinements. The St. Charles Parish area east of the Mississippi River presently is not protected from hurricane tidal flooding from Lake Pontchartrain. A levee along the St. Charles Parish lakefront between the Jefferson Parish Lakefront levee on the east and the Bonnet Carre' Spillway on the west was a feature of the authorized plan; however, because of environmental concerns and considerations, its construction was indefinitely deferred in the early 1970's. Since the time the lakefront levee was proposed, the economic criteria which are applied to flood damage reduction projects to determine their economic feasibility has changed considerably, particularly with respect to the development of wetlands. Additionally, a suit was entered in the same court which enjoined construction of portions of the project to force construction of the St. Charles Lakefront levee. That suit is currently being held in abeyance pending submission of the final EIS.



**Intentionally Blank**

**Page 64**



**Intentionally Blank**

**Page 66**



PROPOSED RIGOLETS COMPLEX

TYPICAL GATE BAY

FIGURE 4

**Intentionally Blank**

**Page 68**