IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO.  05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| _____ | § | |
| | § | |
| PERTAINS TO: | § | |
| | § | |
| MRGO, *Reed*, No. 06-2152 | § | |
| MRGO, *Ackerson*, No. 06-4066 | § | |
| | § | |
| _____ | § | |

**MEMORANDUM SUBMITTED BY *REED* AND *ACKERSON*
PLAINTIFFS (1) IN FURTHER OPPOSITION TO THE DREDGING
DEFENDANTS' SEVERAL MOTIONS TO DISMISS AND (2) IN FURTHER
SUPPORT OF PLAINTIFFS' MOTIONS FOR LEAVE TO FILE
AMENDING AND SUPPLEMENTAL COMPLAINTS**

MAY IT PLEASE THE COURT:

NOW COME Phillip Reed, on behalf of himself and all others similarly situated (who is the plaintiff in Civil Action No. 06-2152) and Fellosea Ackerson, et al. (who are all the plaintiffs in Civil Action No. 06-4066) (collectively "Plaintiffs"), and respectfully submit this memorandum (1) in further opposition to the several motions to dismiss filed by defendants, Bean Dredging, L.L.C.; C.F. Bean L.L.C.; Bean Stuyvesant, L.L.C.; Stuyvesant Dredging Company; Stuyvesant Dredging, Inc.; Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corporation; C.F. Bean Corporation; Bean Horizon

Corporation; Bean Horizon L.L.C.; Gulf Coast Trailing Company; T.L. James & Company, Inc.; TLJIC, L.L.C., on its own behalf and as successor by merger to T.L. James Marine, Inc., and T.L. James Marine, L.L.C.; Great Lakes Dredge & Dock Company; Great Lakes Dredge & Dock Company, L.L.C. of Louisiana; Great Lakes Dredge & Dock Corporation of Delaware; Natco Dredging Limited Partnership; Great Lakes Trailing Company; Weeks Marine, Inc.; Mike Hooks, Inc.; Luhr Bros. Inc.; Pine Bluff and Gravel Company; and King Fisher Marine Service, L.P. (all collectively the "Dredging Defendants") and (2) in further support of Plaintiffs' motions for leave to file supplemental and amending complaints.1/

## I. INTRODUCTION.

Plaintiffs originally alleged at ¶ 32 of their Class Action Complaint that "Defendants breached their duty of reasonable case to Plaintiff[s] and the Class Members." In order to more specifically describe what actions by the defendants constitute negligence, Plaintiffs seek leave to file a First Supplemental and Amending Complaint adding the following allegations at the end of ¶ 32:

---

1/ Phillip Reed, on behalf of himself and all others similarly situated (plaintiff in Civil Action No. 06-2152) filed a motion for leave to amend his original complaint on December 15, 2006. Although this motion was noticed to be heard January 3, 2007 before Magistrate Judge Wilkinson, during the December 15, 2007 hearing Judge Duval stated he would rule on the matter. Furthermore, *Fellosea Anckerson, et al.* (all the plaintiffs in Civil Action No. 06-4066) will file a motion to amend their original complaint to make allegations similar to those made by Phillip Reed, and this memorandum is also submitted in support of that motion.

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete Documents

> Defendants failed to follow requirements of 33 CFR Parts 335-38, particularly 33 CFR 336.1(c)(4) and 33 CFR 320.4(b) and Executive Order No. 11990 made applicable thereby.  The Dredging Defendants deviated from and/or failed to execute their dredging activities in the manner required by the Army Corps of Engineers and by the Nationwide Permits, specific permits, or general authorizations for dredging issued by or obtained by the Army Corps of Engineers pursuant to 33 CFR §§ 337.5 and 338.2.  Furthermore, all defendants failed to follow State requirements (made applicable by 33 CFR 337.2) including those contained in Chapter 7, Sections 701 and 707 of the Louisiana Administrative Code related to dredging activities.

During the hearing held December 15, 2006 the Court requested additional briefing about these new allegations (which were not addressed in the briefs previously filed) and on the claims that are being made against the Dredging Defendants.

## II.  **ARGUMENT.**

### A. **Plaintiffs Have Asserted Negligence Claims Under Maritime Law Based Upon Defendants' Failure to (1) Follow Dredging Regulations and (2) The Dictates of Reasonableness and Prudence.**

The Dredging Defendants agree that this case falls within the Court's admiralty jurisdiction.  The substantive law applicable in cases of admiralty jurisdiction is federal law. *Kermarec v. Compagnie General Transatlatique*, 358 U.S. 625 (1959).  Under the general federal maritime law, negligence is an actionable wrong.  *Leathers v. Blessing*, 105 U.S. 626 (1882); *Galentine v. Estate of Stekervetz,* 273 F. Supp. 2d 538, 544 (D.Del. 2003).  Improperly conducted dredging operations constitute negligence.  *Mansfield and Sons Co. v. The United States (The Oyster Cases),* 94 Ct. Cl. 397 (1941) ("Under these circumstances the



use of a suction dredge in the channel of New Haven Harbor constituted negligence"); *Petrovich v. The Untied States*, 421 F.2d 1364, 1367 f.n. 6 (Ct. Cl. 1970) ("It has been held in certain circumstances that the use of the hydraulic dredge may be negligence"); The No. 6, 241 F. 69 (2nd Cir. 1917) ("The dredge was responsible only for negligence."); *Beacon Oyster G. v. United States*, 63 F. Supp. 761 (Ct. Cl. 1946) ("The character of the dredging operations, which of themselves constitute negligence…")

In *Galentine*, 273 F. Supp. 2d at 544, the court explained that in admiralty a duty of care may be derived from (1) duly enacted laws, regulations and rules; (2) custom; or (3) the dictates of reasonableness and prudence:

> In order to prevail on a claim of maritime negligence a plaintiff must prove that there was: 1) a duty of care which obliges the person to conform to a certain standard of conduct; 2) a breach of that duty; 3) a reasonably close causal connection between the offending conduct and the resulting injury; and 4) actual loss, injury, or damages suffered by the Plaintiff.  1   Thomas Schoenbaum, *Admiralty and Maritime Law* § 5-2 at 170 (ed. 2001 (footnotes omitted).
>
> Generally, in admiralty, the duty of care may be derived from: 1) duly enacted laws, regulations and rules; 2) custom; or 3) the dictates of reasonableness and prudence.  *See Pennsylvania R. Co. v. The Marie Leonhardt*, 202 F. Supp. 368, 375 (E.D. Pa. 1962), *aff'd*, 320 F.2d 262 (3d Cir. 1963).  Ultimately, the basic duty of care is reasonable care under the particular circumstances.  *Admiralty and Maritime Law, supra*, § 5-2 at 170.
>
> After establishing the applicable duty of care, a breach of that duty must be demonstrated.  Such a breach is the failure to observe the degree of care, precaution, and vigilance which the



circumstances demand *Id.* at 173.

Here, Plaintiffs allege that in dredging the MRGO <u>all</u> defendants (1) failed to follow rules and regulations specifically enacted to control dredging operations, as well as permits or authorizations issued pursuant to those rules or regulations authorizing the dredging of the MRGO; and (2) failed to follow the dictates of reasonableness and prudence.  Furthermore, as to the Dredging Defendants, Plaintiffs allege that they "deviated from and/or failed to execute their dredging activities in the manner required by the Army Corps of Engineers and by the Nationwide Permits, specific permits, or general authorizations for dredging issued by or obtained by the Army Corps of Engineers pursuant to 33 CFR §§ 337.5 and 338.2."

The defendants' negligence include violating a duty of care imposed by the following federal and state rules and regulation and Executive Order.

*Corps' Dredging Regulations*

Dredging activities are highly regulated.  The Clean Water Act ("CWA") prohibits the discharge of dredge or fill materials into waters of the Untied States unless authorized by a permit issued by the Corps of Engineers (the "Corps") pursuant to §404 of the CWA. *Resource Investments, Inc. v U.S. Army Corp of Engineers*, 151 F. 3d 1162 (9th Cir. 1998); *Orange Environment, Inc. v. County of Orange*, 811 F. Supp. 926 (S.D.N.Y. 1993); *Holy Cross Wilderness Fund v. Madigan*, 960 F.2d 1515 (10th Cir. 1992) ("the Corps has a particular duty under the CWA to protect wetlands.").



In compliance with its duties under the CWA, the Corps has issued detailed regulations governing dredging activities. 33 CFR Parts 320, 322, 323, 325, 330, 335, 336, 337, 338. Part 335 "prescribes the practices and procedures <u>to be followed by the Corps</u> to ensure compliance with the specific statutes governing Army Civil Works operations and <u>maintenance projects</u> involving the discharge of dredged or fill material…" 33 CFR §335.1. Parts 335 through 338 are applicable to the Corps "when undertaking operation and <u>maintenance activities</u> at Army Civil Works projects." 33 CFR §335.3. Section 335.6 lists several related laws and Executive Orders, including Section 307(c) of the Coastal Zone Management Act of 1976 (16 U.S.C. 1456 (c)), as amended, and Executive Order 11990, Protection of Wetlands, May 24, 2977 (42 FR 26961, May 25, 1977). 33 CFR §335.6.

Section 336.1(a) states that "[a]lthough the Corps does not process and issue permits for its own activity, the Corps authorizes its own discharges of dredge or fill material <u>by applying all applicable substantive legal requirements</u>…" 37 CFR 336.1(a). Furthermore, Section 376.1(a)(2) states that Section 307 of the Coastal Zone Management Act ("CZMA") requires the Corps to conduct its activities in a manner that is <u>consistent with a Federally-approved state management plan</u> to the maximum extent practicable. 33 CFR 336.1(a)(2).

Section 336.1(c)(4) states that "[m]ost wetland areas constitute a productive and valuable resource, the unnecessary alteration or <u>destruction</u> of which should be discouraged <u>as contrary to the public interest</u>. The district engineer will, therefore, follow the guidance in

6



33 CFR 320.4(b) and EO 11990, dated May 24, 1977, when evaluating Corps operations and maintenance activities in wetlands." 33 CFR § 336.1(c)(4).

Section 336.1(c)(10) states that [d]istrict engineers will make all reasonable efforts to comply with …. Federally approved coastal zone programs…" 33 CFR § 336.1(c)(10).

Executive Order 11990 states that "in order to avoid to the extent possible the long and short term adverse impacts associated with the destruction or modification of wetlands and to avoid direct or indirect support of new construction in wetlands…. **Section 1.** (a) Each agency shall provide leadership and shall take action to minimize the destruction, loss or degradation of wetlands… **Section 5.** In carrying out the activities described in Section 1 of this Order, each agency shall consider factors relevant to a proposal's effect on the survival and quality of wetlands. Among these factors are: (a) public health, safety, and welfare, including water supply, quality, recharge and discharge; pollution; flood and storm hazards; and sediment erosion;..... **Section 7**. …. (b) The term new construction shall include…. dredging [and] channelizing…."

*Coastal Zone Management Act ("CZMA")*

Following the publication of the Stratton Commission's report in 1969 entitled "Our Nation and the Sea," Congress enacted the CZMA in 1972, to, *inter alia*, "preserve, protect, develop, and where possible, to restore or enhance, the resources of the Nation's coastal zone

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF Complete

for this and succeeding generations." 16 U.S.C. § 1452(1). Congress also sought "to encourage and assist the states to exercise effectively their responsibilities in the coastal zone through the development and implementation of management programs to achieve wise use of the land and water resources of the coastal zone, giving full consideration to ecological, cultural, historic, and esthetic values as well as the needs for compatible economic development, … to encourage the participation and cooperation of the public, state and local governments, and interstate and other regional agencies, as well as of the Federal agencies having programs affecting the coastal zone,…. to encourage coordination and cooperation with an among the appropriate Federal, State, and local agencies, and international organizations where appropriate, in collection, analysis, synthesis, and dissemination of coastal management information, research results, and technical assistance, to support State and Federal regulation of land use practices affecting the coastal and ocean resources of the United States,…. and to respond to changing circumstances affecting the coastal environment and coastal resource management by encouraging States to consider such issues as ocean uses potentially affecting the coastal zone." *Id.*

Section 307(c)(1)(A) of the CZMA provides that "[e]ach Federal agency activity within or outside the coastal zone that affects any land or water use or natural resource of the coastal zone <u>shall be carried out in a manner which is consistent to the maximum extent practicable with the enforceable policies of approved State management programs</u>." 16 U.S.C. § 1456(c)(1)(A). State coastal management programs are comprehensive

8



management plans that describe, *inter alia*, the authorities and enforceable policies of the management program, the boundaries of the State's coastal zone, the organization of the management program, and related state coastal management concerns. *See* 15 U.S.C. §§ 1453(12), 1455(d).

*The Louisiana Coastal Resources Program*

The Louisiana Legislature, in 1978, enacted the State and Local Coastal Resources Management Act ("SLCRMA") (SLCRMA") (Act 361 of 1978, RS 49:214.21 *et seq.*), in order to balance conservation and development within Louisiana's coastal zone. Pursuant to the SLCRMA, in 1980, the Louisiana Department of Natural Resources ("LDNR") adopted, and the Legislature and the Governor approved, the Louisiana Coastal Use Guidelines.

In August 1980, Louisiana's coastal zone management program, the Louisiana Coastal Resources Program ("LCRP"), was approved by the National Oceanic and Atmospheric Administration ("NOAA"), U.S. Department of Commerce, under section 306 of the CZMA, 16 U.S.C. § 1455(d). The enforceable policies of the LCRP, as approved by NOAA, include, but are not limited to, the 94 Coastal Use Guidelines adopted by the State, as well as Articles IX, Section 1 of the Louisiana Constitution. These Coastal Use Guidelines identify a range of information that must be submitted for activities affecting the coastal zone, and they also list significant detrimental and adverse impacts that are to be avoided. In order for a proposed federal activity to be consistent with the LCRP, it must comply with *all* of the applicable Guidelines.

Coastal Use Guideline 1.6 identifies general information that must be considered when evaluating whether a proposed use is in compliance with the guidelines and therefore consistent to the maximum extent practicable with the enforceable policies. *See* LA. ADMIN. CODE tit. 43, §701.F. Information that must be considered under Guideline 1.6 includes, but is not limited to: elevation, soil, and water conditions and flood and storm hazard characteristics of site; techniques and materials used in construction, operation, and maintenance of use; existing drainage patterns and water regimes of surrounding area including flow, circulation, quality, quantity, and salinity; and impacts on them; availability of feasible alternative sites or methods of implementing the use; economic need for use and extent of impacts of use on economy of the locality; extent of resulting public and private benefits; existence of necessary infrastructure to support the use and public costs resulting from the use; extent of impacts on existing and traditional uses of the area and on future uses for which the are is suited; proximity to and extent of impacts on important natural features such as beaches, barrier islands, tidal passes, wildlife and aquatic habitats, and forest lands; the extent to which regional, state, and national interests are served including the national interest in resources and the siting of facilities in the coastal zone as identified in the coastal resources program; proximity to, and extent of impacts on, special areas, particular areas, or other areas of particular concern of the state program or local programs; likelihood of, and extent of impacts of, resulting secondary impacts and cumulative impacts; extent of impacts on navigation, fishing, public access, and recreational opportunities; and extent of long term



benefits or adverse impacts.

Coastal Use Guideline 1.7 sets forth 21 categories of adverse impacts that must be avoided, and directs that uses and activities be planned, sited, designed, constructed, operated, and maintained to avoid such types of impacts to the maximum extent practicable. *See* LA. ADMIN. CODE tit. 43, §701.G. These include: adverse economic impacts on the locality of the use and affected governmental bodies; destruction or adverse alterations of streams, wetland, tidal passes, inshore waters and water-bottoms, beaches, dunes, barrier islands, and other natural biologically valuable areas or protective coastal features; fostering of detrimental secondary impacts in undisturbed or biologically highly productive wetland areas; detrimental changes in existing salinity regimes; detrimental discharges of suspended solids into coastal waters, including turbidity resulting from dredging; adverse alteration or destruction of unique or valuable habitats, critical habitat for endangered species, important wildlife or fishery breeding or nursery areas, designated wildlife management or sanctuary areas, or forestlands; land loss, erosion and subsidence; adverse disruption of existing social patterns; adverse effects of cumulative impacts; adverse alteration or destruction of public parks, shoreline access points, public works, designated recreation areas, scenic rivers, or other areas of public use and concern; increases in the potential for flood, hurricane or other storm damage, or increases in the likelihood that damage will occur from such hazards.

Coastal Use Guideline 1.9 states that "[l]inear facilities (which are defined to be "those uses and activities which result in creation of structures or works which are primarily



linear in nature. Examples include pipelines, roads, canals, channels and power lines") involving the use of dredging or filling shall be avoided in wetland and estuarine areas to the maximum extent practicable"; "[l]inear facilities shall be of the minimum practical size and length"; "[l]inear facilities involving dredging shall not traverse beaches, tidal powers, protective reefs, or other natural gulf shoreline…."; "[l]inear facilities shall be planned, designed, located and built using the best practical techniques to minimize disruption of natural hydrologic and sediment transport patterns… and to minimize adverse impacts on wetlands"; "[l]inear facilities shall be planned, designed, and built using the best practical techniques to prevent bank slumping and erosion, and salt water intrusion, and to minimize the potential for inland movement of storm generated surges." *See* LA. ADMIN. CODE tit. 43, §707.

      Coastal Use Guideline 1.10 states that "[s]poil shall not be disposed of in a manner which could result in the impounding or draining of wetlands…"; [s]poil shall not be disposed of on marsh (defined as "wetlands subject to inundation in which the dominant vegetation consists of reeds, sedges, grasses, cattails, and other low growth")… to the maximum extent practicable; "[s]poil disposal areas should be designed and constructed and maintained using the best practical techniques to retain the spoil at the site, reduce turbidity, and reduce shoreline erosion when appropriate." *See* LA. ADMIN. CODE tit. 43, §707.

      Article IX, Section 1 of the Louisiana Constitution, an enforceable policy of the LCRP provides, in part, that: "[t]he natural resources of the state, including air and water, and the

 Click Here & Upgrade Expanded Features Unlimited Pages — PDF Complete Documents

healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people." LA. CONST. Art. IX, Sec. 1.

Thus, the federal and state rules and regulations and Executive Order outlined above and the Louisiana Constitution specifically required the defendants <u>to</u> <u>avoid</u> <u>damage</u> <u>to</u> <u>the</u> <u>wetlands</u> <u>and</u> <u>prevent</u> <u>soil</u>  <u>erosion</u> when conducting their dredging operations. They violated these duties in a negligent manner.

The Dredging Defendants have argued that they were just doing what they had to do under their contracts with the Corps. But this defense is not available to them (at least at this time) for various reasons.

First, the contracts between the Dredging Defendants and the Corps have not been made available and it is impossible to know what they required the Dredging Defendants to do.

Second, the fact that the Dredging Defendants are independent contractors do not relieve them from having to follow the law. For example, in *United States of America v. Van Leuzen*, 816 F. Supp. 1171 (S.D.Tex. 1993), the Government prosecuted both the principal and his independent contractor for depositing fill material in wetlands without a CWA permit or not do.

Third, the discretionary function exception is not applicable if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."

13

*Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *Buchanan v. United States of America*, 915 F.2d 969 (5th Cir. 1990) ("Conduct cannot be discretionary if mandated by law."); *Lively v. United Stats of America*, 870 F.2d 296 (5th Cir. 1989) ("*Berkovitz*… simply held that the violation of a mandatory regulation is not exempt from liability").

Fourth, at best the Dredging Defendants may be able to argue that they were <u>ordered</u> by the Government to conduct dredging operations in a manner that could damage to wetlands and cause <u>soil</u> <u>erosion</u>. But they have not made that showing. Furthermore, the Corps has not admitted ordering the Dredging Defendants to do so. Surely the Corps will argue that it complied with all the applicable rules and regulations outlined above. If so, why did the damage to wetlands and soil erosion occur? The only possible explanation is that the Dredging Defendants failed to follow the rules and regulations outlined above or failed to conduct the dredging operation with the care required by the existing circumstances. Surely discovery is needed to make that determination. But at this stage Plaintiffs have set forth a valid claim against the Dredging Defendants based on their own negligence.

### B. <u>Wetlands Are Navigable Waters.</u>

During the hearing held December 15, 2006, Plaintiffs' counsel argued that the Suits in Admiralty Act provided an independent basis of jurisdiction because the defendants' dredging activities caused damage to wetlands, which are "navigable waters" of the Untied States and thus the damage occurred on navigable waters. However, counsel was unable to



cite the regulations on point. In support of this argument counsel calls the Court's attention to *Fox Bay Partners v. United States Corps of Engineers*, 831 F. Supp. 605 (N.D. Ill. 1993) and authorities cited therein.

### III.  CONCLUSION.

For all the reasons set forth above, the Dredging Defendants' motions should be denied and Plaintiffs' motion for leave to file their supplemental and amending complaints should be granted.



Respectfully Submitted:

Camilo K. Salas III (Louisiana Bar No. 11657)
SALAS & Co., L.C.
650 Poydras Street, Suite 1650
New Orleans, LA 70130
Telephone: 504-799-3080
Fax: 504-799-3085
E-Mail: csalas@salaslaw.com

*s/Camilo K. Salas III*

Attorneys for Phillip Reed, on behalf of himself and all others similarly situated in *Reed,* No. 06-2152

And

A. J. Rebennack (Louisiana Bar No. 18677)
2202 Avenue B
Metairie, Louisiana 70001
Telephone: 504-792-0512
Fax: 504-831-1203
E-Mail: rebennacks@cox.net
Attorney for all the plaintiffs in *Ackerson,* No. 06-4066

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 22nd day of December, 2006 served a copy of the foregoing pleading on all parties to this proceeding via facsimile, e-mail and/or U. S. Mail.

*s/Camilo K. Salas III*I