UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 "K"(2)<br>JUDGE DUVALL<br>MAG WILKINSON |

**PERTAINS TO:**

**LEVEE:** *Ponchartrain Baptist Church*, 06-06642

## OPPOSITION TO MOTION TO REMAND

Defendant, James Construction Group, LLC f/k/a Angelo Iafrate Construction, LLC ("James")[1] opposes the Motion to Remand with Incorporated Memorandum ("Motion") filed by Plaintiffs for the following reasons:

**I.   INTRODUCTION**

Plaintiffs move for remand on the basis that their state court petition asserts "'admiralty and maritime claims' under the 'savings to suitors clause.'"  Motion at 3.  Plaintiffs' Motion should be denied because plaintiffs did not (a) plead in their Petition, or (b) prove in their Motion the essential elements of a claim arising under the admiralty or maritime jurisdiction of this

---

[1] The name change is noted in the on-line records of the Louisiana Secretary of State.  See http://www.sos.louisiana.gov/cgibin?rqstyp=crpdtlC&rqsdta=34684511Q

{N1597974.2}

1

Court. In fact, neither admiralty nor maritime jurisdiction exist. Moreover, because the "savings to suitors" clause does not limit the right of defendants to remove actions where a non-admiralty basis for federal jurisdiction exists, this lawsuit was properly removed irrespective of whether admiralty or maritime jurisdiction exists. Both federal officer jurisdiction, 28 U.S.C. § 1442(a)(1), and, federal question jurisdiction, 28 U.S.C. § 1331, supply a non-admiralty basis for removal. Accordingly, Plaintiffs' Motion to Remand must therefore be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed suit in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana seeking to recover damages allegedly resulting from levee breaches/failures during Hurricane Katrina at the 17th Street Canal, the London Avenue Canal and the Orleans Avenue Canal. *See* Plaintiffs' Petition attached as Exhibit "A." On September 28, 2006, James removed the suit to this Court. Rec. Doc. 1 in Member Case 06-6642. On November 7, 2006, Plaintiffs filed the instant Motion. Rec. Doc. 1526.

## III.   ARGUMENT

Plaintiffs' motion largely ignores the grounds upon which James actually based removal, focusing instead on their allegations that the "savings to suitors clause" applies, and somehow defeats removal. As discussed in detail below, Plaintiffs' motion must be denied because there is no admiralty or maritime jurisdiction with respect to their claims, such jurisdiction does not preclude James' removal on non-admiralty grounds, and James has pleaded non-admiralty grounds for removal under 28 U.S.C. §§ 1442 and 1331.

### A.   Plaintiffs' claims do not fall within Admiralty Jurisdiction

Plaintiffs repeatedly assert that their claims are "admiralty and maritime claims" brought under the "savings to suitors clause," 28 U.S.C. § 1333(1). Motion at 3. In a recent decision,

{N1597974.2}

2

this Court (Chief Judge Berrigan) examined in detail the requirements for federal court admiralty jurisdiction:

> Presently, in order to invoke federal admiralty jurisdiction under 28 U.S.C. 1333(1), a party must satisfy each of the so-called "location" and "connection" tests. The location test, which emerges in part from the AEA [Admiralty Extension Act, 46 App.U.S.C. § 740], asks "whether the tort occurred on navigable waters or whether injury suffered on land was caused by a vessel on navigable water." Courts read the "caused by" language of the statute to require the traditional tort law concept of "proximate cause."
>
> The connection test flows from the Supreme Court admiralty jurisprudence culminating in its opinion in *Sisson*. The test has two parts. First, a court must "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce." Second, "a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." In applying the two-part *Sisson* inquiry, courts must bear in mind that "protecting commercial shipping is at the heart of admiralty jurisdiction."

*In Re Ingram Barge Company*, 435 F. Supp. 2d 524, 526 (E.D. La. 2006) (citations and footnotes omitted).

At the outset, it is clear that Plaintiffs' Petition fails to state a claim within the admiralty jurisdiction of any court, state or federal. The Petition fails to allege that James' allegedly tortious conduct in connection with the London Avenue Canal occurred on navigable water or that the injury suffered on land was proximately caused by a vessel on navigable water. The Petition likewise fails to plead conduct by James that meets the connection test. Nothing in the Petition establishes that the incident - the failure of the London Avenue Canal, in the case of James - has a potentially disruptive impact on maritime commerce. Moreover, the Petition does not plead that the general character of James' activity giving rise to the incident "shows a substantial relationship to traditional maritime activity."

Plaintiffs' Motion likewise fails to establish admiralty jurisdiction over Plaintiffs' claims against James. In order to properly bring a claim under 28 U.S.C. §1333, the waterway at issue must be "navigable", or "presently used, or capable of being used, as an interstate highway for commercial trade or travel in the customary modes of travel on water." *LeBlanc v. Cleveland*, 198 F.3d 353, 359 (2d Cir. 1999). Plaintiffs' Motion fails to adduce any competent evidence establishing that the London Avenue Canal is a navigable water used or capable of being used for maritime commerce.[2]

Even if the London Avenue Canal were assumed to be navigable, which it is not,[3] Plaintiffs have not demonstrated in their Motion damage "caused by a vessel on navigable water" 46 U.S.C. § 740 (1948); *In Re Ingram Barge Company*, 435 F. Supp. 2d 524, 526 (E.D. La. 2006). Plaintiffs' Petition contains nothing but summary allegations regarding the use of "vessels and appurtenances" made "upon information and belief." The Motion introduces no admissible evidence of the use of "vessels and appurtenances" by James, let alone that these "vessels and appurtenances" proximately caused Plaintiffs' damages. To the contrary, the demolition and construction of the Filmore and Mirabeau Avenue bridges occurred using land-based equipment. Plaintiffs' failure to establish damage caused by a vessel on navigable water is fatal to their claim of admiralty jurisdiction. *In Re Ingram Barge Company,* 435 F. Supp. 2d at 527.

---

[2] Plaintiffs' Motion is accompanied by a hodgepodge of exhibits, none of which are authenticated by affidavit or declaration. Pretermitting admissibility, most of the exhibits have nothing to do with the London Avenue Canal, and none of the exhibits establish that any of the canals at issue are navigable waters.

[3] The London Avenue Canal is located east of the Orleans Avenue Canal. The canal extends northward approximately 3 miles from Pump Station No. 3 to its outfall at Lake Pontchartrain. Over its length, the canal is spanned by a fixed railroad trestle and fixed bridges at Lakeshore Drive, Leon C. Simon Blvd., Robert E. Lee Blvd., Filmore Ave., Mirabeau Ave., and Gentilly Blvd. *See* Exhibits "C" and "D."

Plaintiffs have presented no evidence that their claims meet the "connection" test for the invocation of maritime jurisdiction. That two part test requires that the Court assess the incident involved to determine whether (1) it has a potentially disruptive impact on maritime commerce and (2) the general character of the activity giving rise to the incident shows a substantial relationship to maritime activity. *In Re Ingram Barge Company,* 435 F. Supp. 2d at 528, citing *Grubart, Inc. v. Great Lakes Dredge & Dock*, 513 U.S. 527, 534 (1995). Here, Plaintiffs have presented no evidence to support either prong of the test. As discussed above, there have been no allegations, and no proof, that Plaintiffs' damages were caused by a vessel on a navigable waterway. Rather, Plaintiffs' claims assert nothing more than the alleged defective design and construction of the 17th Street, London Avenue, and Inner Harbor Navigation Canal levees. Such claims do not have a the required "substantial relationship to traditional maritime activity" to support admiralty jurisdiction. *In Re Ingram Barge Company*, 435 F. Supp. 2d at 528.

In the *Ingram Barge* case, Judge Berrigan found that claims asserting the failure of the Inner Harbor Navigation Canal levee (one of the levees at issue here) due to defective design and construction were not within the Court's admiralty jurisdiction for a number of reasons. First, "[t]o assert admiralty jurisdiction over these claims would not further the general purpose for which admiralty jurisdiction exists. Fundamentally, admiralty jurisdiction exists to allow federal courts to oversee and protect maritime commerce." *Id.* at 529. After noting jurisprudence holding that land-based structures such as bridges are typically deemed extensions of land, Judge Berrigan held it would "a stretch" to find that land-based levees were substantially related to maritime commerce:

> A levee is a structure fixed to the land whose fundamental purpose is to protect the land-based community from flood waters. Although its existence may have some impact on the nature of the

>water it confines, it is a stretch to claim that levees are built for reasons substantially related to maritime commerce.

*Id.* at 530 (citation omitted).

Second, Judge Berrigan held that "[e]ven were the Court to find that levees serve a dual purpose - one of which being related to maritime commerce - there is no support in the caselaw for asserting admiralty jurisdiction in this case." In this regard, the Court cited the Fifth Circuit case of *Adams v. Harris County, Texas*, 452 F.2d 994 (5th Cir. 1971), which rejected maritime jurisdiction over claims arising from a motorcycle accident that occurred on a drawbridge over navigable waters while the bridge was raised to allow a boat to pass. Noting that the appeal court found dispositive of the jurisdictional question that "the injuries in question occurred on a permanently fixed extension of land and in the absence of any maritime causation other than the approach of a vessel, without more," Judge Berrigan held that "the potentially maritime flavor of the structures involved in this accident is insufficient, by itself, to give this Court admiralty jurisdiction over the non-barge related claims." 435 F. Supp. 2d at 530. *See also In re Silver Bridge Disaster Litigation*, 381 F. Supp. 931 (S.D.W.Va. 1974) (claims arising out of collapse of federally owned bridge lacked requisite maritime nexus for admiralty jurisdiction).

Simply put, Plaintiffs have failed to plead or demonstrate satisfaction of the so-called "location" and "connection" tests required to invoke federal admiralty jurisdiction under 28 U.S.C. 1333(1). *In Re Ingram Barge Co.*, 435 F. Supp. 2d at 528, citing *Grubart*, 513 U.S. at 534. The failure to do so it fatal to their claims of admiralty jurisdiction. *In Re Ingram Barge Company*, 435 F. Supp. 2d at 528, citing *In re Madison Coal & Supply Co., Inc.*, 321 F. Supp. 2d 809, 812 (S.D.W.Va.2003).

**B.     The "Savings to Suitors Clause" Does Not Preclude Removal**

Even if Plaintiffs claims fell within the admiralty or maritime jurisdiction of the courts, the savings to suitors clause does not preclude removal. As the Fifth Circuit explained in *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1066 (5th Cir 1981):

> The "savings to suitors" clause does no more than preserve the right of maritime suitors to pursue non-maritime remedies. It does not guarantee them a nonfederal forum, or limit the right of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction other than admiralty.

Removal is proper when there exists an independent basis for federal jurisdiction. *See e.g.*, *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859 (E.D.La. 2001). James has established independent bases for jurisdiction by virtue of their "government contractor defense."

### C. Federal Officer Statute Provides Removal Jurisdiction

James asserted two independent bases for removal. First, that this Court has jurisdiction under the removal provisions of 28 U.S.C. §1442(a)(1) because James was a person acting under an agency of the United States, namely the U.S. Army Corps of Engineers, and that Plaintiffs' damages allegedly arose out of James' performance of construction work for that agency.[4] Second, that this Court has federal question jurisdiction under 28 U.S.C. § 1331. This Court has previously held that these statutes provide a basis for removal of actions from state to federal court. *Miles v. Sewerage and Water Board of New Orleans*, 2004 WL 1794527, at 2 (E.D. La. 2004) (Duval, J.).

---

[4] 28 U.S.C. § 1442(a)(1) provides, in pertinent part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . .

{N1597974.2}

The *Miles* case arose out of a different Army Corps of Engineers project, the Southeast Louisiana Urban Flood Control Project ("SELA Project").  There, plaintiffs filed suit against the Sewerage and Water Board of New Orleans ("Board") in state court.  The Board, in turn, filed third party demands against various parties, including James, the general contractor on the SELA Project.  James removed the proceeding pursuant to 28 U.S.C. § 1442(a)(1), the Federal Officer Removal Statute, and the Board moved to remand.

In denying remand, this Court first articulated the test for removal under § 1442(a)(1):

> In *Mesa v. California*, the Supreme Court set forth the criteria necessary to support removal under § 1442(a)(1).  *Crocker v. Borden*, 852 F. Supp. 1322 (E.D. La. 1994); *Akin v. Big Three Indus., Inc.*, 851 F. Supp. 819 (E.D. Tex. 1994); *Ryan*, 781 F. Supp. at 943.  Under *Mesa*, in addition to alleging a federal law defense, a person seeking removal must:
>
> (1) demonstrate that it acted under the direction of a federal officer;
>
> (2) raise a colorable defense to the plaintiff's claims; and
>
> (3) demonstrate a causal nexus between plaintiff's claims and the acts performed under color of federal office.
>
> *Crocker*, 852 F. Supp. at 1325.

2004 WL 1794527, at 1-2.[5]  In applying this test to the James removal, this Court found that James was acting under the direction of a federal officer, specifically the Corps.  *Id.* at 2.  The Court further found that James had asserted a colorable government contractor defense.  *Id.* at 2-3.  Finally, this Court found that the "causal nexus" requirement had been met because James performed the work at issue in

compliance with government specifications.  *Id.* at 3.

---

[5] *See also Lalonde v. Delta Field Erection*, 1998 WL 34301466.

Under this Court's ruling in *Miles*, James' removal of the instant case under § 1442(a)(1) was wholly proper. The declaration submitted by James establishes that James performed the London Avenue Canal project under the direction of a federal officer, specifically the Army Corps of Engineers. The declaration establishes that the Corps had direct and detailed control over James' work on the London Avenue Canal, specifically:

> 1. The Corps had direct and detailed control over the work of James in that the Corps occupied and staffed a full time field office at the Project site and performed daily inspections of the work being performed by James to verify that the work was in compliance with the specifications of the Corps.
>
> 2. Prior to performing major items of work, James was required to submit to the Corps for its approval the proposed methods of performing the work.
>
> 3. James was also required to submit to the Corps for its approval the items of equipment it planned on using to perform the work.
>
> 4. Prior to commencing work, preparatory meetings were scheduled by the Corps to go over the submittals to verify and approve precisely how the work was to be performed.
>
> 5. Also on a daily basis, the Corps prepared a Quality Assurance Report detailing its findings regarding James' compliance with the specifications and Corps' directions.
>
> 6. The Project was completed and the Corps informed James that after inspection the Corps found that the work of James was done in accordance with the Project plans and specifications and was accepted.

Exhibit "B." This direct and detailed control over James' work by the Corps satisfies the "acting under" prong of the *Mesa* test. *See Miles* at 2.

The declaration submitted by James also establishes that James has raised a colorable federal defense to the Plaintiffs' claims, specifically the "government contractor defense." As this Court stated in *Miles*, "[t]he purpose for this requirement is to ensure that the federal district

court is passing on a question of federal law.  In other words, assertion of the federal defense provides federal question jurisdiction which makes the case suitably removable." *Id.* at 2-3 (citing *Akin v. Big Three Indus., Inc.*, 851 F. Supp. 819, 823 (E.D. Tex. 1994).  As in *Miles*, James has raised a colorable federal defense to the Plaintiff's claims, thus satisfying the second prong of the *Mesa* test.[6]

Finally, the "causal nexus" requirement is met because James performed its work in compliance with government specifications, Exhibit "B," and Plaintiffs' claims arise out of work performed by James under the direction of the Corps.  *Miles* at 3.  When a government contractor performs work pursuant to the federal officer's specifications and is later sued because compliance with those specifications allegedly caused injury, the nexus requirement is satisfied.  *Akin*, 851 F. Supp. at 823-824; *see also Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1998).

Plaintiffs' arguments against federal officer removal lack merit.  Plaintiffs argue that because neither the Untied States or any of its agencies or officers were named in the lawsuit, James is not entitled to federal jurisdiction.  *See* Motion at 7.  Plaintiffs offer no support for this position, and, indeed, it is not consistent with the case law, which does not require that the government (or any of its agencies) be named as co-defendant.

Finally, Plaintiffs' suggest that "until discovery is conducted" it is unclear that the government contractor defense applies.  *See* Motion at 7-8.  This argument misapprehends the second prong of the *Mesa* test.  While James asserts that the defense clearly applies, it need not prove the defense here.  *See* Footnote 6.  As discussed in detail above, James need merely show

---

[6] James' government contractor defense need not prevail in order to have this case removed.  All that is required under § 1442(a)(1) is that James assert a colorable claim to the defense; this Court need not delve into the actual merits of the defense.  *Miles* at 2 (citing cases).

that it has a *colorable* defense, which it has done. In such circumstances, defendants are entitled to have the validity of their defense adjudicated by a federal, not a state, court. *Holton v. Blue Cross & Blue Shield*, 56 F. Supp. 2d 1347, 1351 (M.D. Ala. 1999).

### D.  Federal Question Jurisdiction Under 28 U.S.C. § 1331

Plaintiffs' Motion to Remand only tangentially touches upon James' invocation of federal question jurisdiction under 28 U.S.C. § 1331. Again, Plaintiffs conflate their "savings to suitors" clause" arguments with James' actual basis for removal under this statute. The "savings to suitors" clause merely allows Plaintiffs to bring admiralty and maritime claims in state court, it does not guarantee them that forum when there is jurisdiction under 28 U.S.C. §1331. *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859 (E.D.La. 2001). Further, Plaintiffs claims are not "saved to suitors" for, as explained *supra*, they do not qualify as admiralty and maritime claims under 28 U.S.C. §1333. Removal is proper pursuant to this statute when there is a substantial federal issue, and the federal court can entertain the suit without disturbing the balance between federal and state agencies. *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312-313 (2005). Here, the Plaintiffs' claims raise disputed and substantial federal issues, specifically, but not limited to, the federal government contractor defense propounded by James and virtually all of the other Defendants. Moreover, the Court *can* entertain this lawsuit without disturbing the balance between federal and state agencies. There is nothing inherently "state" oriented about Plaintiffs' claims that would preclude a federal court from deciding the issues involved in this case. Accordingly, removal is proper under § 1331.

### III.  CONCLUSION

For the foregoing reasons, Defendant, James Construction Group, LLC respectfully requests that this Court deny the Plaintiffs' Motion to Remand.

{N1597974.2}

Respectfully submitted,


\_\_/s/ Emily E. Eagan _____
RICHARD J. TYLER, T.A. (#1155)
EMILY E. EAGAN (#29166)
Jones, Walker, Waechter, Poitevent,
 Carrère & Denègre L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170-5100
(504) 582-8266
Fax: (504) 589-8266
Attorneys for James Construction Group, LLC


CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all counsel of record via U.S. Mail, ECF, e-mail, hand delivery, or facsimile this 26th day of December, 2006.


\_\_/s/ Emily E. Eagan_____