**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| **In Re:  KATRINA CANAL BREACHES** | * | **CIVIL ACTION NO. 05-4182** |
| **CONSOLIDATED LITIGATION** | * | |
| | * | **SECTION "K"** |
| | * | |
| **PERTAINS TO:** | * | **MAGISTRATE (2)** |
| **LEVEE** | * | |
| **O'DWYER:  NO.     05-4389** | * | **JUDGE DUVAL** |
| | * | |
| | * | **MAGISTRATE WILKINSON** |
| * * * * * * * * * * * * * * * * * * | | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION**
**TO THE MOTION(S) TO DISMISS**
**FILED BY CSX CORPORATION AND**
**CSX TRANSPORTATION, INC.**

**MAY IT PLEASE THE COURT:**

In the immortal words of New York Yankee baseball player Yogi Bera:

"Its like *deja vu* all over again".

Plaintiffs in Civil Action No. 06-4389 begin this Memorandum in Opposition to the CSX defendants Motion(s) to Dismiss in this manner, because the Court already has received briefing and heard oral argument on the substance of the CSX defendants' motion(s) in another matter, namely in Civil Action No. 05-4181.  The Court will recall that on November 1, 2006, oral argument was heard on the factual and legal issues regarding the suffering inflicted on innocent plaintiffs by the CSX defendants, on both sides of the Industrial Canal.

For purposes of completing the record, for possible appeal purposes, plaintiffs recall for the Court's attention the following prior arguments, which are equally applicable here for denying the CSX defendants' motion(s):

**I.      NO FEDERAL LAW COMPLETELY PREEMPTS PLAINTIFFS' CLAIMS AGAINST ANY RAILROAD PURSUANT TO FEDERAL OR STATE LAW;**

The CSX defendants have cited the Court to the Federal Railroad Safety Act (49 U.S.C. §20101 et seq.), and the Interstate Commerce Commission Termination Act of 1995 (49 U.S.C. §10101, et seq.), which, rather than providing complete federal preemption over plaintiffs' claims against railroads, actually impose strict liability against railroads in cases of this nature.

The purpose of the Federal Railroad Safety Act is found in 49 U.S.C. §20101 and is defined as follows:

> The very purpose of this chapter is to promote safety in every area of railroad operations and reduce railroad related accidents and incidents. 49 U.S.C. §20101.

Additionally, by the clear provisions of the Interstate Commerce Termination Act of 1995, Congress imposed a heavy burden on the railroad industry:

> In regulating the railroad industry, it is the policy of the United States government:
>
> (8) to operate transportation facilities and equipment without detriment to the public health and safety. 49 U.S.C. §10101.

Can the CSX defendants actually represent to the Court, with a straight face, that the "havoc" wrought by their water-permeable ballast, roadbed and track was not detrimental to the public health and safety?

Furthermore, in arguing complete federal preemption, to the exclusion of state law, the CSX defendants have conveniently ignored the clear provisions of 49 CFR §213.2, which provides that:

> "Under 49 U.S.C. 20106, issuance of these regulations preempts any State law, regulation, or order covering the same subject matter, except an additional or more stringent law, regulation or order, that is necessary to eliminate or reduce an essentially local safety hazard, is not incompatible with a law, regulation, or order of the United States Government, and that does not impose an unreasonable burden on interstate commerce."

Thus, the very statutes cited by the CSX defendants, rather than eliminating consideration of state law, specifically permits states to pass legislation regulating railroads "necessary to eliminate or reduce an essentially local safety hazard", so long as the state legislation meets the other requirements set forth in the regulations.

Do the CSX defendants really believe that Articles 667, 2315 and 2317.1 of the Louisiana Civil Code are incompatible with federal law or impose an unreasonable burden on interstate commerce.  Do the CSX defendants really believe that federal law permits railroads engaged in interstate commerce to kill innocent people and destroy their property?

**II.   THE CSX DEFENDANTS HAVE NOT PUT FORTH ANY EVIDENCE WHICH WOULD PERMIT THE COURT TO CONCLUDE THAT THEIR BALLAST, ROADBED OR TRACKS WERE CONSTRUCTED IN COMPLIANCE WITH ANY <u>STANDARD, MUCH LESS ANY FEDERAL STANDARD;</u>**

This argument is self-evident, since the CSX defendants have not produced a shred of evidence remotely suggesting that their ballast, roadbed and track were designed and constructed to any standard, much less any federal standard.  Indeed, the federal regulations provide precious little insight into what the federal government proscribes as "safe", but which proved to be completely unsafe in Hurricane KATRINA.

49 CFR 213.101 prescribes minimum requirements for ballast, crossties, track assembly fittings and the physical conditions of rails;  49 CFR §213.103 provides as follows with respect to requirements for "ballast":

> Unless it is otherwise structurally supported, all track shall be supported by material which will –
>
> a)   Transmit and distributed the load of the track and railroad rolling equipment to the subgrade;
>
> b)   Restrain the track laterally, longitudinally and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress existed by the rails;
>
> c)   Provide adequate drainage for the track;  and
>
> d)   Maintain proper track cross level, surface, and alignment.

None of the quoted regulations appear to be in conflict with Articles 667, 2315 and 2317.1 of the Louisiana Civil Code, and plaintiffs respectfully submit that the CSX

defendants could have designed and constructed their ballast, roadbed and track in a manner that did not result in death and destruction.

> **III.     AT LEAST ONE OF THE INVESTIGATIVE BODIES WHICH IS CONDUCTING FORENSIC EXAMINATION OF THE RETAINING WALL FAILURES IN THE GREATER NEW ORLEANS METROPOLITAN AREA HAS POINTED TO CRIMINAL AND WILLFUL ERRORS AND OMISSIONS, AND GROSS NEGLIGENCE, BY THE CSX DEFENDANTS, WHICH <u>CAUSED AND CONTRIBUTED TO PLAINTIFFS' DAMAGES;</u>**

Appended hereto and marked for identification as Exhibit 1 (consisting of the title page, pages 8-5, 8-9, 8-10, 11-13, 15-3 and 15-4, and Figures 8.4 and 8.5) are portions of the Independent Levee Investigation Team Report of July 31, 2006.   The Court is respectfully submitted to the following "lesson" promulgated by the ILIT:

> The continued operation of trains cannot be allowed to be considered more important than the safety in major urban populations.

Plaintiffs respectfully submit that the quoted sentence "says it all", although much more is said by the ILIT in their comprehensive report.

Furthermore, 49 U.S.C. §11704(b) provides that:

> A rail carrier providing transportation subject to the jurisdiction of the board . . . is liable for the damages sustained by a person as a result of an act or omission of that carrier in violation of this part.

Plaintiffs respectfully submit that the above quoted statutes impose strict liability on the railroad and, rather than providing a way out for the CSX defendants, provide plaintiffs with a way to impose strict liability against them.

Plaintiffs in this case have specifically invoked the provisions of Article 667, 2315 and 2317.1 of the Louisiana Civil Code, which provide as follows:

Article 667.  Limitations on use of property.

Although proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, all of which may be the cause of damage to him.

Article 2315.  Liability for acts causing damages:

A.  Every act of whatever of man that causes damage to another obliges him by his fault that happened to repair it.

Article 2317.1.  Damage caused by ruin, vice or defect in things.

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

As is apparent from a review of Exhibit No. _____:

The Federal Levee system was "penetrated" here by both the railway and the port roadway, and the interactions of the pervious railway ballast and the highly erodible roadway fill combined to fail the overall flood protection system at this location.

Louisiana's duty risk analysis was described by the Supreme Court in Duncan v. Kansas City RR Co., 773 So.2d 670 (La. 2000), as follows:

The plaintiff must prove:

1.     The conduct in question was a cause in fact of the resulting harm;

2.     That defendant owed a duty of care to plaintiff;

3.      That the duty was breached;  and

4.      That the risk of harm was within the scope of protection afforded by the duty breached.

Plaintiffs respectfully submit that it cannot reasonably be argued that the CSX defendants did not have a duty under the cited Civil Code Articles to wholly innocent plaintiffs, and that this duty was breached by the CSX defendants, at least according to the ILIT.

**IV.   CSX CORPORATION AND CSX TRANSPORTATION, INC. CONSTITUTE A SINGLE BUSINESS ENTERPRISE UNDER LOUISIANA LAW, AND PLAINTIFFS SHOULD BE ALLOWED TO CONDUCT DISCOVERY DIRECTED TO THIS ISSUE IN ORDER TO EXPLORE WHY THE PARENT ALLOWED ITS WHOLLY-OWNED SUBSIDIARY TO REPEAT, DURING HURRICANE KATRINA, THE SAME MISTAKES MADE DURING HURRICANE BETSY, FORTY (40) YEARS AGO.**

The single business enterprise theory is particularly relevant to plaintiffs' claims against the CSX defendants, and against CSX Corporation which owns 100% of the stock of CSX Transportation, Inc., because the ILIT report, Exhibit 1, supra, revealed as follows:

It should be further noted that this same site had also failed catastrophically in 1965 during hurricane BETSY, so that the re-failure of this same location represents a daunting case of lack of progress and learning over the intervening 40 years.  As discussed in Chapter 7, the east bank CSX rail crossing, which also failed during hurricane KATRINA, was also a "repeat" failure (as it, too, had failed during Hurricane BETSY in 1965).  The continued failure to recognize and suitably address the hazards associated with

these complex "penetrations", despite their demonstrated history of previous failure, is difficult to understand . . .

Site #5a was the west bank of the CXS railroad crossing.

\* \* \*

The failure at this site is particularly galling, as this cite also failed during hurricane BETSY in 1965, so the repeat failure represents a very disconcerting failure to learn."

Plaintiffs respectfully submit that discovery will reveal that, even if CSX Transportation, Inc. operates the railroad, and built the roadbed, installed the ballast, laid the tracks, etc., there is (or should be) corporate "oversight" of the subsidiary's insurance program, and risk management and safety functions.  Indeed, this is apparent from a reading of Mr. Schudtz's declaration wherein he admits:

"I am employed by CSX Corporation as Vice President Federal Regulation and General Counsel, and my duties include advising on matters related to regulatory affairs, regulatory compliance and corporate governance".

Plaintiffs respectfully submit that they should be permitted to discover documents and take depositions in order to determine the insurance, risk management and safety structure of both parent and subsidiary, and how Mr. Shudtz could have allowed his subsidiary to repeat, in Hurricane KATRINA, the same mistake made 40 years ago, during Hurricane BETSY.

## CONCLUSION

The standard governing Rule 12(b)(6) Motions to Dismiss for failure to state a claim is well established in the Fifth Circuit.  As the Court noted in the <u>Piotrowski v. City of Houston</u>, 51 F.3d 512 (5th Cir. 1995), dismissal under Rule 12(b)(6) is warranted <u>only</u> in those rare circumstances which the movant can prove no set of facts in support of his claim that would entitle him to relief.  The Court must bear in mind that Rule 12(b)(6) is designed to test the sufficiency of the Complaint;  it is not intended to resolve the dispute on the merits.  <u>First National Bank v. Lustig</u>, 809 F.Supp. 444 (E.D. La. 1992).  As the Supreme Court explained in its seminal 1957 decision in <u>Conley v. Gibson</u>, 335 U.S. 41, 78 S.Ct. 99 (1957), dismissal under Rule 12(b)(6) is inappropriate unless it appears "**<u>beyond doubt</u>**" that the plaintiff has failed to state a claim upon which relief may be granted.  Because dismissal under Rule 12(b)(6) is such a drastic remedy, Courts are admonished to grant leave to amend the offending Complaint as alternative to outright dismissal under Rule 12(b)(6).  Plaintiffs respectfully submit that they should be offered the alternative of amendment rather than dismissal in this instance.

Respectfully submitted,

**LAW OFFICES OF
ASHTON R. O'DWYER, JR.
Counsel for Plaintiffs**

By:_____
        **Ashton R. O'Dwyer, Jr.
In Proper Person
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Tel. 504-561-6561
Fax. 504-561-6560**

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon all counsel of

record via facsimile, this ___ day of November 2006.


_____