**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES * | | CIVIL ACTION NO. 05-4182 |
| CONSOLIDATED LITIGATION * | | |
| * | | SECTION "K" |
| * | | |
| PERTAINS TO: * | | MAGISTRATE (2) |
| ALL LEVEE, MRGO * | | |
| RESPONDER CASES AND TO * | | JUDGE DUVAL |
| NO.   05-4181 * | | |
|         06-4389 * | | MAGISTRATE WILKINSON |
|         06-5786 * | | |
|         06-6099 * | | |
| * | | |
| * * * * * * * * * * * * * * * * * | | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION TO DISQUALIFY**
**THE LOUISIANA DEPARTMENT OF JUSTICE**
**AS COUNSEL OF RECORD FOR**
**ALL STATE AND STATE AGENCY DEFENDANTS**

**MAY IT PLEASE THE COURT:**

"A free society can exist only to the extent that those charged with enforcing the law respect it themselves. 'There is no more cruel tyranny than that which is exercised under cover of the law, and with the colors of justice." U.S. v. Jannotti, 673 F.2d 578 (3d Cir. 1982), citing Montesquieu, de l'Esprit des Lois (1748).

-1-

## THE FACTS

At 0005 hours on Tuesday, September 20, 2005, within twelve (12) hours of his having filed a Class Action lawsuit bearing Civil Action No. 05-4181 on the docket of This Honorable Court, undersigned counsel for plaintiffs was lawfully occupying his property on St. Charles Avenue in uptown New Orleans, watching television,[1] and preparing to retire for the evening when, suddenly and without warning, a dark colored sports utility vehicle emblazoned with "Louisiana State Police" on the passenger side door blocked counsel's driveway, following which three or four individuals believed to be Louisiana State Policemen (they were dressed in dark swat-team-like uniforms and armed to the teeth with side arms and automatic weapons), approached counsel in a very aggressive manner.

Counsel told the officers that they were not authorized to be on his property and that they should get back on the sidewalk, which is public property. In response, one of the officers told counsel, "Sir, you are coming with us; you can either come with us voluntarily or we will remove you from here by force; now what's it going to be?" Counsel replied, "I will not resist, but you will have to remove me from my property by force".

Thereafter, counsel was taken to the Union Passenger Terminal where he was tortured and illegally detained for 16 ½ hours, following which the persons having counsel in custody made a fatal mistake: they released him, alive. At the time of his release, counsel was handed a piece of paper purporting to show that he had been arrested on his own property for the misdemeanor of "public intoxication", which is a lie.

Appended hereto and marked as Exhibits are the following:

---

[1] Plaintiff had acquired a gasoline powered generator, since there was no electrical power in the City.

Exhibit No. 1 (A-L) – photographs of the wounds to counsel's lower extremities as a result of being shot, repeatedly, at point-blank range with a 12-gauge shotgun loaded with bean-bag rounds, while counsel's hands were cuffed behind his back or while counsel was on the other side of a locked chain-link fence from his tormentor.

Exhibit No. 2 (A-D) – handwritten medical records generated by physicians who attended counsel, including Dr. Brobson Lutz, on September 21, 2005, September 24, 2005, September 30, 2005, and October 2, 2005.

Exhibit No. 3 (A-K) –medical records from the Combat Support Hospital at the Convention Center, where counsel was treated for an infection of one wound to his right thigh, which swelled to nearly twice its normal size, between October 2 and October 8, 2005.

The brutal, physical injuries which were inflicted on counsel by police "goons" employed by the State of Louisiana were the product of a criminal, gangland-style "hit" on counsel ordered by "someone". In his personal, civil litigation[2] arising out of the "hit" counsel, as plaintiff, has averred as follows:

> Plaintiff does not know who ordered the "hit" on him, described, supra, but considers the following as reasonable possibilities:
>
> 1.    Rogue policemen;
>
> 2.    The State Officials named as defendants;

---

[2]    The civil litigation pending in This Honorable Court bears Civil Action No. 06-7280. The case was originally filed in Civil District Court, but was removed to Federal Court by one of the defendants.

      3.        The Local Officials named as defendants;

      4.        Some combination of nos. 2 and 3;

      5.        Plaintiff's former law partners;  or

      6.        Some combination of nos. 2, 3 and/or 5.

Of the various possibilities, plaintiff believes no. 1 to be the most unlikely, particularly since there was absolutely no illegal activity occurring on plaintiff's property, which arguably might have provided rogue policemen with some "pretext" to commit the illegal acts complained of herein.

Among the defendants counsel has sued for the criminal, gangland-style "hit" are:

      1.        Louisiana State Trooper John Nelson

      2.        Louisiana State Trooper Christopher Ivy

      3.        The State of Louisiana

      4.        Governor Kathleen Blanco

      5.        The Louisiana Department of Public Safety and Corrections

      6.        Richard L. Stalder, Secretary, Department of Public Safety and Corrections

      7.        The Louisiana State Police

      8.        Col. Henry L. Whitehorn, Superintendent of the Louisiana State Police

      9.        Burl Cain, Warden of the Louisiana State Penitentiary at Angola, Louisiana

      10.      The Louisiana Department of Justice

      11.      Charles C. Foti, Jr., Attorney General of the State of Louisiana

      12.      Burton Guidry, Executive Director of the Criminal Division for the Louisiana Department of Justice

In keeping with the defense posture they have assumed in all "Victims of KATRINA" litigation, namely "no one is responsible for anything", the State defendants identified supra have filed Rule 12(b)(6) motions to dismiss, which are pending before Chief Judge Berrigan.

"Someone" ordered the Louisiana State Police to counsel's home at five minutes past midnight on Tuesday, September 20, 2005.  There was no illegal activity at counsel's home, at that time or at any other time.  If counsel were a convicted murderer, armed robber, or rapist, he would not have deserved the brutal, physical injuries which were deliberately inflicted upon him by the police "goon squad" employed by the State of Louisiana.  Counsel has averred that certain individuals conspired with State actors to inflict bodily harm on him, in order to embarrass and humiliate him, to silence him and to intimidate him from the free exercise of his constitutional rights.  Although the currently available evidence in counsel's civil case is circumstantial, counsel attaches to this memorandum and marks as Exhibit No. 4 a verified "Timeline", so that the Court will be in a position to draw its own conclusions about who was more likely than not complicit in ordering the criminal, gangland-style "hit".  In addition, the verified Timeline also reveals the following overt acts of intimidation directed at counsel by lawyers within the Louisiana Department of Justice representing the State defendants in this case:

1. A threat of physical violence by Michael C. Keller, an attorney with the Louisiana Department of Justice, on March 17, 2006;

2. An outrageous, unprofessional and threatening statement by Mr. Keller's Supervisor within the Louisiana Department of Justice,

        Paul B. Deal, on the steps of the Federal Courthouse in New Orleans, who told counsel, "You're lucky you didn't have a broomstick shoved up your %##&".

3. The threat of a Motion for Sanctions, both from Deal and from a lawyer who works for Deal in the LDOJ New Orleans Office.

4. A Motion for Sanctions against counsel filed by the LDOJ on December 22, 2006.

Part and parcel of the foregoing "mix" was a recent investigation of counsel by the Chief Disciplinary Counsel, Charles Plattsmier, which commenced on August 17, 2006, and concluded on December 12, 2006, with counsel being exonerated of any and all wrongdoing.[3] See attached letter of December 12, 2006, marked for identification as Exhibit No. 5. Also part of the "mix" was the refusal, on December 12, 2005, of the Louisiana Department of Justice to investigate who ordered the criminal, gangland-style "hit" on counsel, his brutalization, illegal detention, etc.

## LAW AND ARGUMENT

The grounds for disqualification of the Louisiana Department of Justice as counsel of record for the State defendants in this matter are stated in plaintiffs' Motion for Disqualification as follows:

1) Employees of the State and State agencies, including the LDOJ, have engaged in criminal conduct directed at counsel for plaintiffs, in violation

---

[3] One wonders if the most recent Motion for Sanctions filed by the LDOJ will result in yet another "investigation" of counsel by the Chief Disciplinary Counsel.

of Louisiana criminal and civil laws, and in derogation of rights guaranteed to plaintiffs' counsel by the U.S. and State Constitutions;

2) Employees of the State and State agencies, including the LDOJ, have engaged in criminal and civil conspiracy directed at counsel for plaintiffs, in violation of Louisiana criminal and civil laws, and in derogation of rights guaranteed to plaintiffs' counsel by the U.S. and State Constitutions;

3) Employees of the State and State agencies, including the LDOJ, have engaged in conduct prejudicial to the administration of justice;

4) Actual conflicts of interests exist between and among the State and State agencies, including the LDOJ, and other agencies and individuals on whose behalf the LDOJ has entered appearances in this litigation; and

5) Continuing legal representation of the State and State agencies by the LDOJ will result in the following:

   a. A situation which This Honorable Court should deem as intolerable for potential for misconduct, including the potential that lawyers within the LDOJ will commit obstruction of justice, subornation of perjury and threaten further harm to and/or continue to intimidate plaintiff's counsel (which already has occurred);

   b. Potential for lawyers within the LDOJ violating the Louisiana Rules of Professional Conduct, including particularly Rules 1.13, 1.16, 2.1, 3.3, 3.4 and 8.4;

   c. The likelihood that public suspicion as a result of the real or probable impropriety described, supra, will outweigh any social

>interest served by the LODJ's continuing the representation of the State and State agency defendants in this litigation.

Further grounds for disqualification of the LDOJ from representing the State and State agencies relate to the facts that (a) undersigned counsel for plaintiffs has named as defendants in civil litigation pending before This Honorable Court employees of the LDOJ, namely Charles Foti and Burton Guidry, and (b) the fact that Charles Foti and other employees of the LDOJ, as well as State and State agency defendants represented by the LDOJ will be witnesses in this litigation.[4]

As recently as November 2005, Judge Barbier, in <u>United States v. Decay</u>, 406 F.Supp. 2d 679 (E.D. La. 2005), had occasion to succinctly summarize the rules pertaining to disqualification motions in the Fifth Circuit as follows:

> In considering whether a conflict exists which would warrant disqualification, courts look to state and national ethical standards adopted by the court. *Babineaux v. Foster*, 5005 WL 711604, *1 (E.D.La. Mar. 21, 2005) ( citing *FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1311-12 (5th cir. 1995). These rules apply in disqualification motions brought in criminal as well as civil cases. *Perillo v. Johnson*, 205 F.3d 775, 801 (5th Cir. 2000). Accordingly, the instant motion must be resolved with reference to the Local Rules for the Eastern District of Louisiana, the American Bar Association Model Rules of Professional Conduct ("ABA Model Rules"), and the Louisiana Rules of Professional Conduct. *Babineaux*, 2005 WL 711604 at *1 (citing *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001). The task is simplified by the fact that the Eastern District of Louisiana has adopted the State of Louisiana's Rules of Professional Conduct, which are identical to the ABA Model Rules in all respects relevant to this motion. *See*, L.R. 83.2. 4E, La. State Bar Art. XVI, ABA Model Rules of Professional Conduct.
>
> As numerous district courts have recognized, the party seeking disqualification bears the burden of proving a conflict. *See, e.g.,*

---

[4] Individuals within the Louisiana Department of Justice and the Louisiana State Police are smack-dab in the "middle" of Louisiana's Emergency Operations Plan, which will figure prominently in the liability phase of this case.

>*Babineaux*, 2005 WL 711604, *2; *Parker v. Rowan Companies, Inc.,* 2003 WL 22208569, 8 OE.D. La. Spet. 23, 2003); *Cramer v. Sabie Transp. Co.*, 141 F.Supp. 2d 727, 730 (S.D. Tex. 2001). Moreover, "[a] disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing. Therefore, notwithstanding the fundamental importance of safeguarding popular confidence in the integrity of the legal system, attorney disqualification . . . is a sanction that must not be imposed cavalierly." *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1316 (5th Cir. 1995). 406 F.Supp. 2d at pp. 683-684.

However, in Horaist v. Doctor's Hospital of Opelousas, 255 F.3d 261 (5th Cir. 2001), the Fifth Circuit stated as follows:

>. . . In considering a disqualification motion, we view the rules in light of the litigant's rights and the public interest, considering "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interest which will be served by the lawyer's continued participation in the case." (citation omitted). 255 F.3d at p. 266.

Undersigned counsel for plaintiffs respectfully submits that there could be no better case than the case at bar in which the appearance of impropriety in general (i.e., actual criminal acts of intimidation directed at plaintiffs' counsel), the fact that specific improprieties have already occurred, [5] and the likelihood of public suspicion concerning the improprieties, far outweigh any social interests which would be served by the LDOJ's continued participation in this case.

The Louisiana Department of Justice should be disqualified.

---

[5] The criminal gang-land style "hit", the threat by Mr. Keller on St. Patrick's Day, Mr. Deal's "broomstick" comment, and the threats of a Motion for Sanctions, which came true by the LDOJ's filing of a Motion for Sanctions on December 22, 2006, not to mention the investigation of plaintiff's counsel by the Chief Disciplinary Counsel, who is a State employee.

Respectfully submitted,

**LAW OFFICES OF
ASHTON R. O'DWYER, JR.
Counsel for Plaintiffs**

By:  **S/Ashton R. O'Dwyer, Jr.**
     **Ashton R. O'Dwyer, Jr.
     In Proper Person
     One Canal Place
     365 Canal Street
     Suite 2670
     New Orleans, LA 70130
     Tel. 504-561-6561
     Fax. 504-561-6560**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

S/Ashton R. O'Dwyer, Jr.