

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | : | CIVIL ACTION |
| | : | |
| | : | NO. 05-4182 "K"(2) |
| | : | |
| PERTAINS TO: | : | JUDGE DUVAL |
| LEVEE (06-6642) | : | |
| (PONTCHARTRAIN BAPTIST CHURCH) | : | MAGISTRATE WILKINSON |
| | : | |

---

### OPPOSITION OF MODJESKI AND MASTERS, INC.
### TO PLAINTIFFS' MOTION TO REMAND

---

Modjeski and Masters, Inc. ("Modjeski") opposes plaintiffs' Motion to Remand. Modjeski adopts the reasoning set forth in James Construction Group's ("James") opposition to plaintiffs' motion to remand as respects James' ability to remove under the government contractor's defense and contends that Modjeski also qualifies as a "person acting under an officer of the United States", and that this Court has jurisdiction over the claims against Modjeski pursuant to the 28 U.S.C. 1442§(a)(1). Contrary to plaintiffs' assertions, the United States is not a *sine qua non* to this Court's jurisdiction over plaintiffs' claims against James and Modjeski.



The Admiralty Extension Act, referred to in plaintiffs' memorandum, has no relevance to the federal officer removal statute, by which this case was removed and on which this opposition is based.[1]

### PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that Modjeski was at fault in connection with various items of work on the 17th Street Canal and London Avenue Canal, including dredging activities, construction of bridges, and levee improvements which included sheet piling.

Modjeski performed no engineering services involving flood protection for the London Avenue Canal, nor did it design any of the bridges over the 17th Street Canal, Orleans Canal or London Avenue Canal alleged in plaintiffs' petition. **See Conway Affidavit and Supporting Exhibits, filed herewith.**

Modjeski did provide engineering services in connection with dredging of the 17th

---

[1] The injuries alleged by the instant plaintiffs were not 'wholly' sustained on navigable waters. See Grubart v. Great Lakes Dredge and Duck Co., 513 U.S. 527,531 (1995). Plaintiffs' allegations against Modjeski relate to the floodwalls and dredging at the 17th Street Canal. Application of the Admiralty Extension Act to such claims was rejected by Judge Berrigan in the related case of In the matter of the Complaint of Ingram Barge, 435 F. Supp. 2d 524 (E.D. La. 2006), Judge Berrigan concluded that failed levees, which allegedly caused plaintiffs' damages, did not have a substantial relationship to traditional maritime activity. Id. at 528 (quoting Grubart, 513 U.S. at 534). Judge Berrigan also rejected plaintiffs' characteristics of the work as "negligent dredging," as a disingenuous effort to fit their claims into the Admiralty Extension Act. Nor does the "savings to suitor" clause cases have any relevance when there is an independent basis for jurisdiction such as 28 USC § 1442(a)(1), see S. Friedell Benedict on Admiralty, Jurisdiction and Principles § 132 (2006), "The generally accepted rule is that cases may not be removed from state court to federal court where the only basis of the federal court's jurisdiction is admiralty. If the court has both admiralty jurisdiction and some other basis of federal jurisdiction, such as diversity or federal jurisdiction, then the case can be removed."

Street Canal, and levee improvements for the 17th Street Canal, including sheet piling, all of which are addressed below and in the Conway Affidavit and Supporting Exhibits.

### MODJESKI'S CONTRACTS

Modjeski performed professional engineering services for the Sewerage and Water Board of New Orleans ("Water Board"), and the Orleans Levee District ("OLD").

Modjeski's engagement by the Water Board involved calculations and preparation of drawings and specifications for dredging of the 17th Street Canal. Modjeski's services for OLD involved the preparation of drawings and specifications for levee improvements and sheet pile protection along the east side of the Canal, including the area which breached.

Modjeski also provided engineering services for the Water Board in connection with dredging of the west side of the 17th Street Canal, and prepared drawings and specifications for levee improvements and sheet piling along the west side of the 17th Street Canal for the East Jefferson Levee District ("EJLD").

Although Modjeski was not in privity of contract with the U.S. Army Corps of Engineers ("Corps"), Modjeski's role was clearly analogous of that of subcontractors involved in government work, and clearly meets the jurisdictional requirements of 28 U.S.C. 1442(a)(1).

## JURISDICTION OVER ANALOGOUS CLAIMS AGAINST
## SUBCONTRACTORS UNDER 28 U.S.C. §1442

Nesbiet v. General Electric Company[2] and Fink v. Todd Shipyards[3] are examples of General Electric Company being able to remove suits to federal court under 28 U.S.C. 1442 by asserting federal officer/government contractor defenses. Both cases refer to the same affidavit used by General Electric and the same facts regarding General Electric supplying marine steam turbines containing asbestos to the Navy in the 1940's.

Judge Porteous' decision in Fink finds that the affidavit of David Hopson was sufficient to support removal. In Nesbiet, the court found that the Hopson affidavit was not sufficient to establish that the Navy prohibited the warnings about asbestos being published, but then found that an accompanying affidavit of Rear Admiral Lehman (ship superintendent at the Brooklyn Navy Yard between 1942 and 1944), was sufficient to support the contention that the Navy controlled all warnings placed on equipment and in technical manuals.

While the issue of "privity of contract" between General Electric and the Navy was not specifically discussed in Nesbiet, it is clear from the recitation of facts that the claims were in regard to turbines supplied by General Electric to Navy ships both by direct contract between General Electric and the Navy and by contracts between General Electric and shipyards, which in turn were under contract with the Navy. Thus, in at least some of the claims removed in Nesbiet, General Electric was not in privity of contract with the Navy.

---

[2] 399 F.Supp. 2d 205 (SDNY 2005).

[3] C.A. 04-430 USDC, ED La., 4/19/04.

As stated in Nesbiet, "The Hopson affidavits show that GE manufactured and supplied turbines for U.S. Navy ships under contracts between GE and the Navy Department or contracts between GE and shipyards that had themselves contracted with the Navy Department."[4]

Judge Porteous' opinion in Fink also refers to the Hopson affidavit as stating that GE supplied turbines to Navy ships either by direct contract between the Navy and GE or by contract between GE and shipyards. The opinion also specifically refers to the Hopson affidavit (paragraphs 11 and 12) as supporting the assertion that "In the design phase of a turbine, as in all other phases, the U.S. Navy retained ultimate decision authority . . . If an engineering disagreement arose between the Navy and the outside design consultants, the Navy controlled the design adopted."

In Crocker v. Borden, Inc.,[5] Judge Livaudais held that Westinghouse, a third party defendant, properly removed the claims against it for supplying marine turbines to Avondale for Navy vessels, based upon the affidavit of its manager of design verification, James Gate, who declared that Westinghouse performed its work "under close, constant and detailed control and supervision by the Department of the Navy. The supervision and control was exercised by contract documents, design and construction drawings, written specifications, and personal oversight of Westinghouse work by Naval officers and civilian employees of the United States Navy." Judge Livaudais notes that the Gate affidavit was unrebutted.

---

[4] 399 F.Supp. 2d at 206.

[5] 852 F.Supp. 1322, 1325 (ED La. 1994).

Judge Lemelle, in <u>Mazant v. Visioneering, Inc.</u>,[6] ruled that subcontractors may use the government contractor defense, citing Fifth Circuit authority in the <u>Kirstetter v. Pacific Scientific Company</u>[7] and <u>Garner v. Santoro</u>[8] cases, and referring to that rule being adopted in the Third, Fourth and Sixth Circuits as well. (Judge Lemelle also denied summary judgment on the government contractor's defense asserted by a subcontractor, Burnham, because it did not prove that the government officers were engaged in review of its work, but then granted summary judgment in favor of Burnham for reason that there was no evidence of any defects in the sub-component which it manufactured).

<u>Kirstetter</u> and <u>Garner</u> clearly acknowledge the possibility of a government subcontractor defense. <u>Kirstetter</u> does not address privity but recites in its presentation of facts that defendant, Pacific Scientific Company, manufactured the "pilot restraint system" in the aircraft sold to the Navy. In discussing the government contractor defense, the Court stated "The government need not prepare the specifications to be considered to have approved them. See <u>Trevino v. General Dynamics</u>, 865 F.2d 1474, 1489 (5th Cir. 1989) (holding that 'substantive review' is adequate). To determine whether 'substantive review' occurred, a court must take into consideration a number of factors. Those factors involve examining drawings, evaluation from time to time, criticism, and extensive government testing a - continuous' back and forth' between the contractor and the government." 210 F.3d at 435.

---

[6] C.A. 04-0057, USDC, ED La., 3/14/06.

[7] 210 F.3d 431 (5th Cir. 2000).

[8] 865 F.2d 629 (5th Cir. 1989).

In Garner, the Court was confronted with the defendant epoxy paint manufacturer ("Seaguard") who sold paint to Ingalls Shipyard, which held a Navy contract to build destroyers (which were to be transferred to Iran). The plaintiff objected to Seaguard's assertion of the government contractor defense because no government contract with Seaguard was involved. The Fifth Circuit stated:

> "Garner's argument could be interpreted to mean that because the Navy does not have a direct contract with Seaguard, Seaguard cannot assert the government contractor defense. Garner cites no case to support this proposition, and we have not found a case which binds us to such a per se rule. Indeed, though not binding, Schwindt v. Cessna Aircraft Co., No. CV 485-472 (S.D. Ga. Aug. 31, 1988) [1988 WL 148433], indicates that a supplier to a company with a government contract can assert the defense if the supplier can meet the conditions set forth in Boyle. We, however, only state that given the limited factual information available to us concerning this defense, in particular what the terms of the involved contracts are, we are unprepared to agree with Garner's argument." 865 F 2d at 637 n. 13

Judge Lemelle's reference to Ramey v. Martin-Baker Aircraft Company[9] as an example of the Fourth Circuit recognizing a subcontractor (not in privity of contract) eligible for government contractor defense is based upon the appellate court's affirmance of the trial court's finding that an ejection seat manufacturer for a Navy fighter was immune under the government contractor defense and that such component part manufacturer (Martin-Baker Aircraft Company) had successfully removed the case to federal court after McDonald Douglas had been dismissed from the Maryland state court action. The federal district Court then dismissed the claims against Martin-Baker on the grounds of military contractor defense. There is no direct mention in the opinion about privity of contract;

---

[9] 874 F.2d 946 (4th Cir. 1989).

rather, the Court uses the usual Boyle three-prong test and holds that "...Martin-Baker has demonstrated Navy participation in the design that amounts to more than rubber stamping." 874 F.2d at 950.

Judge Lemelle's reference to Tate v. Boeing Helicopters[10], as holding that subcontractors can assert the defense in the Sixth Circuit is grounded upon the Sixth Circuit's reference, 140 F.3d at 657 n.2 that "Breeze-Eastern [the subcontractor] concedes that, as a subcontractor, it bases its claims to the government contractor defense largely on the communications between the prime contractor, Boeing, and the Army.  Plaintiffs, however, do not dispute that a subcontractor receives the benefit of the relationship between the prime contractor and the government.  See generally, McGuire v. Hughes Aircraft Corp., 912 12 F.2d 67 (3rd Cir. 1990) (applying government contractor defense to subcontractor on basis of prime contractor's interaction with government)." In McGuire, the Third Circuit approved application of the government contractor defense to MPB Corporation, a manufacturer which supplied ball bearings to Allison Gas Turbine Division of General Motors Corporation, which supplied the helicopter engine of Hughes Aircraft, which supplied the helicopter to the Army.

Judge Duval denied motions to remand and approve removals by James Construction Group of suits for property damages arising from the Napoleon Avenue Covered Canal project, involving the Water Board and the Corps.[11]  His opinion stated,

---

[10] 140 F.3d 654 (6th Cir. 1998).

[11] Furiegh v.  Sewerage & Water Board of New Orleans, C.A. No. 04-1374, USDC, ED La., 8/9/04; Miles v. Sewerage & Water Board of New Orleans, C.A. No. 04-1587, USDC, ED La., 8/9/04.

"The Court also finds that James acted in both cases, under the direction of a federal officer, namely, the Corps and its chief engineer for the project, Timothy Roth . . . as stated in James' Notice of Removal and the supporting affidavit by James' Project Superintendent, Jerry E. Swenson, the Corps had direct and detailed control over James' work."

The foregoing authority compels this Court's exercise of jurisdiction over the claims asserted against Modjeski.

## CONCLUSION

The facts, as attested in the Conway Affidavit and evidenced by the Supporting Exhibits, clearly establish government contractor defense jurisdiction under 28 U.S.C. § 1442 as to the claims against Modjeski as well as to the claims against James.

Modjeski acted under the direction and control of the Corps, thereby qualifying as a "person" acting under the direction of federal officers who were exercising their discretionary authority over the projects. As such, a clear causal nexus exists between the claims asserted against Modjeski and the services which it performed under the direction and control of the Corps.

Once jurisdiction under 28 U.S.C. § 1442 (a)(1) is proper as to any of the defendants, this Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over all other claims that are so related that they form part of the same case or controversy.

Plaintiffs' motion to remand should therefore be denied.

_____
Francis J. Barry, Jr. (#02830)
Keith J. Bergeron (#25574)
    of
DEUTSCH, KERRIGAN & STILES, L.L.P.
755 Magazine Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-5141
Facsimile:  (504) 566-1201
Attorneys for Modjeski and Masters, Inc.,
Defendant

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that copies of the above and foregoing Memorandum and attached Supporting Affidavit and Exhibits have been served this _____ day of ~~November~~ December, 2006, by e-mail or by placing same in the United States Mail, postage prepaid and properly addressed to the following counsel of record:

William E. O'Neil
O'Neil/Vance Group LLC
701 N. Causeway Blvd.
Metairie, LA 70001

Gerald A. Melchiode
Galloway, Johnson, Tompkins, Burr & Smith
One Shell Square
701 Poydras Street
Suite 4040
New Orleans, LA 70130

George R. Simno, III
625 St. Joseph Street, Room 201
New Orleans, LA 70165

Don M. Richard
701 North Causeway Blvd.
Metairie, LA 70001

Richard John Tyler
Jones, Walker, Waechter, Poitevent,
Carrerre &Denegre
Place St. Charles
201 St. Charles Avenue
50th Floor
New Orleans, LA 70170-5100

_____
Francis J. Barry, Jr.

#307875v1<DKS> -Oppo2PlaintiffsMTR