AFFIDAVIT

## AFFIDAVIT OF WILLIAM B. CONWAY

PARISH OF ORLEANS

STATE OF LOUISIANA

BEFORE ME, the undersigned authority, personally came and appeared:

### William B. Conway, P.E.

who, after being first duly sworn in, deposes and states the following:

(1)   This Affidavit is based upon my personal knowledge.

(2)   Modjeski and Masters, Inc. (hereinafter sometimes "Modjeski") is a consulting engineering firm which has offices in the City of New Orleans.

(3)   Modjeski and Masters, Inc. is licensed by the State of Louisiana, holding License No. EF.0000570.

(4)   I am currently Chairman of the Board of Modjeski, and was previously its President.

(5)   I am a registered professional civil engineer in the State of Louisiana, and have been in responsible charge of Modjeski's New Orleans office since September 1961.

(6)   Modjeski did not perform any engineering services for levees, floodwalls, dredging, drainage or other flood protection work for the London Avenue Canal or Orleans Avenue Canal.

(7)   Modjeski did not perform any engineering services for the New Hammond Highway bridge over the 17th Street Canal, the Robert E. Lee Boulevard bridge over the Orleans Canal, or the Leon C. Simon Boulevard, Filmore Avenue, Mirabeau Avenue or Gentilly Boulevard bridges over the London Avenue Canal.

(8)   The projects described below, for the 17th Street Canal, were undertaken in Modjeski's New Orleans office, under my direct personal supervision.

(9)   Modjeski provided engineering services for the Sewerage & Water Board of New Orleans ("Water Board") in connection with maintenance dredging of the 17th Street Canal, for which the U.S. Army Corps of Engineers ("Corps") issued a permit in 1984.  The permit limits for the dredging were from Pump Station No. 6 to 370 feet north of the Bucktown Pedestrian bridge to the north.

(10)   The Corps provided criteria for the levees relative to the proposed dredging, and reviewed, critiqued and required changes to the calculations, designs, drawings and specifications for the work, in a "back and forth" process with the Corps that started in 1979 and culminated with the Corps' issuance of a permit in 1984.

(11)   The Corps exercised total and ultimate control over the drawings and specifications.  Had the drawings and specifications not met the

criteria of and been approved by the Corps, a permit would not have been issued to the Water Board and the dredging could not have been undertaken.

(12) **Exhibit "A"**, attached to this affidavit, includes selected correspondence, dredging application review comments, and criteria which illustrate the "back and forth" process and the control exercised by the Corps over the design, details, and the drawings and specifications for this project.

(13) Had the Corps not approved the drawings and specifications, the Corps would not have issued a permit and the dredging could not have been undertaken.

(14) Dredging between the Southern Railway bridge and the I-10 bridge commenced in November, 1984, and was completed in May, 1985.

(15) Thereafter, Modjeski entered into a contract with the Board of Commissioners of the Orleans Levee District ("OLD") for the preparation of drawings and specifications, and inspection of construction, for a project which involved levee work, initial driving of a sheet pile floodwall, and dredging of the east side of the 17th Street Canal from the I-10 bridge to the Hammond Highway bridge. Modjeski's drawings and specifications were completed and issued in February 1990, and a construction contract for the work was let

by OLD to Boh Bros. Construction Company in May 1990. The work was substantially complete as of March 11, 1992. OLD executed an acceptance of the Boh Bros. contract work on August 20, 1992, which was recorded on August 24, 1992.

(16) The Corps provided criteria for the levees and floodwalls for this project, and reviewed, critiqued and directed changes to the calculations, designs, drawings and specifications based on its own calculations and criteria.

(17) **Exhibit "B"**, attached to this affidavit, includes selected correspondence and design criteria which illustrate the control exercised by the Corps over this project. The Corps' letter of October 20, 1989, actually mandated the tip elevations of the sheet piling for the east side of the 17th Street Canal, which includes that reach of the levee and floodwall which breached.

(18) Had the drawings and specifications not met the criteria and mandates of the Corps, the Corps would have withheld approval and the work could not have been undertaken.

(19) Thereafter, Modjeski was engaged by OLD to prepare drawings and specifications for re-driving the floodwall sheet piles and placement of a concrete cap on the sheet pile floodwall along the east levee of the 17th Street Canal between Hammond Highway Bridge and the

Southern Railway tracks.  Modjeski's drawings and specifications were completed in and dated November 1992,  and were issued to the Corps for advertisement and public bidding.  Modjeski did not undertake inspection of construction and, based on its last invoice, performed its last services in February 1993.  The  work was performed by Pittman Construction Co., Inc., and was accepted by the Corps on April 25, 1995.

(20)  The Corps provided the criteria for the sheet pile capping, and reviewed, critiqued and directed changes to the drawings and specifications based on that criteria.  The Corps even mandated that the drawings be issued on its paper, and bear its title blocks.

(21)  **Exhibit "C"**, attached to this affidavit, includes design review comments and criteria which illustrate the control exercised by the Corps on this project.

(22)  Had the drawings and specifications not met the criteria and mandates of the Corps, the Corps would have withheld approval and the work could not have been undertaken.

(23)  Modjeski undertook other engineering projects for the OLD, Water Board, and Board of Levee Commissioners of the East Jefferson Levee District ("EJLD") involving the 17th Street Canal between Lake Pontchartrain and Pump Station No. 6, involving  levees, floodwalls

and dredging and which were unrelated to and remote from that reach of the east levee and floodwall of the Canal which were breached during Hurricane Katrina.   Those projects were also designed pursuant to criteria mandated by the Corps, and the drawings and specifications for those projects were also critiqued, and approved by the Corps before work could proceed.  These other projects are described below in Paragraphs 24 - 28.

(24) Modjeski was engaged by OLD to provide drawings, specifications, and inspection of construction of a "toe wall" at Pump Station No. 6. T. L. James and Company, Inc. ("T.L. James") was the contractor of record.   Construction was substantially complete on March 29, 1989.  OLD executed an acceptance of the T. L. James contract work on April 13, 1989, which was recorded on April 17, 1989.

(25) Modjeski was engaged by the Water Board to provide drawings, specifications, and inspection of construction of flood protection and dredging between the Hammond Highway and Lake Pontchartrain. Solvation Services, Inc. ("Solvation") was the contractor of record. The Water Board executed an acceptance of Solvation's contract work on December 13, 1989, which was recorded on December 27, 1989.

(26) Modjeski was engaged by OLD to provide drawings, specifications,

and inspection of construction of West End drainage improvements. Liberty Somerset, Inc. ("Liberty") was the contractor of record. Construction was substantially complete on August 26, 1992.  OLD executed an acceptance of the Liberty's contract work on October 9, 1992, which was recorded on October 12, 1992.

(27) Modjeski was engaged by EJLD and the Water Board to provide drawings, specifications, and inspection of construction for a project involving levees and floodwalls for the west side of the 17th Street Canal.  This project also involved dredging the west side of the Canal between the I-10 bridge and Hammond Highway bridge. Professional Construction Services, Inc. ("PCS") was the contractor of record.  EJLD executed an acceptance of PCS's contract work on March 24, 1994, which was recorded on March 29, 1994.

(28) Modjeski was engaged by OLD to provide drawings and specifications for raising and floodproofing the Veterans Highway Bridges over the 17th Street Canal. The construction contract for the project was let by the Corps to Johnson Brothers Corporation. Modjeski's drawings were completed in and dated June 1995. Modjeski did not provide inspection of the construction, which was done by the Corps or others. Modjeski's last services, in connection with dredging under the bridges, were performed prior to November

30, 1997.  Construction of the project was physically completed on December 3, 1997.  This project included approximately 45 linear feet of new floodwall and gates, of the "I-wall" type, between the Bridges and adjacent to and abutting the north and south sides of the Bridges, on east and west sides of the Canal.  The floodwall and gates were not breached, overturned or damaged during or after Hurricane Katrina.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed _12_ November, 2006.

_____
William P. Conway, P.E.

SWORN TO AND SUBSCRIBED
before me, this _12th_ day of
November, 2006

_____
Victor E. Stilwell, Jr., Notary Public
La. Bar No. 12484
My Commission expires at death
#307591v1<DKS> -Affidavit William Conway.1

EXHIBIT A

# EXHIBIT A



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P. O. BOX 60267
NEW ORLEANS, LOUISIANA 70160

LMNOD-SP (17th Street Canal)2

Sewerage and Water Board of New Orleans
c/o Modjeski and Masters
1055 St. Charles Avenue, Suite 510
New Orleans, Louisiana 70130

Gentlemen:

Reference is made to your application, numbered above, to dredge in the 17th
Street Canal in Metairie, Louisiana.

Your application has been reviewed by other elements of this District, and a
copy of their comments is attached. It will be necessary to comply with their
comments before we can complete processing your permit application.

Sincerely,

1 Incl
Engr CMT 2

C. W. DECKER
Chief, Regulatory Functions Branch
Operations Division

MODJESKI-E2
10528

LMNED-DL (14 Jan 81)
SUBJECT: Appl S&WB of N.O. to dredge to improve drainage in Metairie

TO  C/Reg Func Br, Ops Div        FROM  C/Engr Div        DATE  5 Mar 81  CMT 2

1. In addition to the drawings provided by your CMT 1, we also reviewed letters from Modjeski and Masters dated 28 Jan 81 and 6 Feb 81 which furnished stability analyses and design calculations for the proposed project.

2. The following comments should be resolved and the permit request resubmitted for our further review.

3. We concur in the applicant's analyses which shows the existing bulkhead on *the* Orleans Parish side of the canal located north of Hammond Hwy, ~~was found~~ to be unstable.~~by the analyses.~~

4. For the anchored wall proposed for the Jefferson Parish side of the canal, the method of analysis is adequate inasmuch as the method used for determining the wall pressures are concerned. The method for applying the factor of safety does not agree with our criteria. A factor of safety equal to 1.5 should be applied to the soil parameters before determining the wall penetration. It is permissible, however, to use a factor of safety = 1.0 when determining the anchor force.

5. Stability analyses utilizing the "Method of Wedges" should be furnished for the existing levee located north of the Hammond Hwy and on the Jefferson Parish side of the canal failing into the proposed improved canal.

6. The factors of safety at stations 554+00 and 604+00 are substantially below the minimum 1.30 factor of safety, therefore, the ~~analyses~~ *(design sections* should be ~~furnished~~ *redesigned.*

7. Material shall not be placed on the Jefferson Parish levee.

8. Unless it is known that the material planned for excavation from the canal is firm and can be excavated without major problems, the stability analyses should indicate the over excavation which will occur when the soft material cannot be excavated and lower firm virgin material is excavated.

9. The drawings indicate that some excavating is planned on the canal bank on the Jefferson Parish side. The applicant will be responsible for any erosion to the bank as a result of his operations. The applicant should fertilize and seed the excavated bank above the water surface. Other erosion protection at and below the water surface will be required if it is necessary.

10. The cross sections between Sta. 547+15 and Hammond Hwy should be extended to the west 60 feet so the full levee section can be shown.

2 Incl
Added 1 incl
2. Letters dtd 28 Jan 81 and 6 Feb 81

MODJESKI-E2
10529

Incl



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P. O. BOX 60267
NEW ORLEANS, LOUISIANA   70160

LMNOD-SP (17th Street Canal)2

| FILE | |
|------|---|
| HBG | |
| ACCT | |
| WBG | |
| TYS | |
| DFS | |
| BTM | ✓ |
| LFC | ✓ |
| MWT | |
| EEP | |
| STAFF | |

18 February 1982

*Please Review ctc carefully — what? we need to ctc? send copy to S&WBd.*

Sewerage and Waterboard of New Orleans
c/o Modjeski and Masters
1055 St. Charles Avenue, Suite 510
New Orleans, Louisiana  70130

Gentlemen:

Reference is made to your application, numbered above, for your proposed work
in the 17th Street Canal, in Orleans and Jefferson Parishes.

Your application has been reviewed by other elements of this District, and a
copy of their comments is attached.  It will be necessary to comply with their
comments and submit revised drawings to us including the requested information
before we can complete processing your permit application.

Sincerely,

C. W. DECKER
Chief, Regulatory Functions Branch
Operations Division

1 Incl
Engr CMT 2

MODJESKI-E2
10817

NED-DL

BJECT: Appl by New Orleans Sewerage and Water Board to improve drainage in 17th Street Canal, in Metairie, Louisiana, in Jefferson Parish

C/Ops Div                    FROM  C/Engr Div              DATE  12 Feb 82        CMT 2

The following comments should be resolved and the permit request resubmitted for our further review:

a. Drawings 3, 4, and 5 show the east side sheetpile tip elevation as +12.0', however, the supplementary soil stability analysis in incl 6 shows the sheetpile elevation as +9.0', and this should be corrected.

b. According to our analysis, there appears to be a stability problem between sta. 625+00 and sta. 670+00 where the excavation of the canal will directly tap the sands underlying the levee. A stability analysis should be done for the landside of the canal incorporating the effects of seepage to determine what corrective action is needed.

c. The plans and specifications should require a plan of flood protection to the present grade during construction.

d. Specifications relative to the floodwall should be submitted for review.

e. Cathodic protection for the steel sheet piling should be provided (see incl 12).

f. Vertical reinforcing bars should be bent and extended along the bottom of the wall section to improve design. See incl 12.

g. Details of how the new floodwall will tie into the bridges at Hammond Hwy., Veterans Blvd., I-10, I-610 and other tie-in areas should be included. Waterstops (U-type) should be provided at those locations to provide a watertight closure.

h. Consider moving the floodwall further than 4" away from the edge of levee. This may help in simplifying construction and also provide additional fill material in front of the wall in case of any erosion of the bank slope.

i. Place sheet pile interlocks at monolith joints to allow for differential settlement.

j. The $\frac{1}{2}$" monolith joints should be filled with preformed expansion joint material.

k. A 3-bulb waterstop at the monolith joints would provide better protection than the waterstop shown.

l. Provide tension connectors for timber piles in tension.

2

MODJESKI-E2
10818

incl

NED-DL
SUBJECT: Appl by New Orleans Sewerage and Water Board to improve drainage in
17th Street Canal, in Metairie, Louisiana, in Jefferson Parish

12 Feb 82

m.  Erosion protection should be provided on the canal slope.  Fertilizing and
seeding should also be included in the project.

n.  The earth material removed from the existing levees (not from the bottom of the
canal) may be placed on the Jefferson Lakefront levee landside berm.  If so placed, the
material must be spread uniformly over the berm, sloped to drain, and not to exceed 2
feet in thickness.  It must also be fertilized and seeded.

o.  Consideration should be given to extending concrete mats down slopes in canal
beneath the bridges.

Since the proposed work modifies the completed Lake Pontchartrain, Louisiana project
levee in Jefferson Parish, the final plans and specifications must be submitted for
approval upon resolution of the above comments.

.  *

9 Incl
Added incl 3 and 4
Added 1 incl
2.  Cathodic Protection & floodwall
    design

*It should be recognized that there is authorized a joint parish study, the purpose of
which is to define a solution which both Orleans and Jefferson Parishes can indorse.  Our
comments may, therefore, be premature, but are being furnished as per fonecon
Nettles-Chatry earlier this week.

3

MODJESKI-E2
10819



## TYPICAL I-WALL SECTION
SCALE: 3/4"=1'-0"

Note "A"
To Reinforcing bar welded to the top of each steel sheet pile, Install flexible jumpers at all monolith joints and all transitions from I-Wall to steel sheet piling. Jumpers shall be insulated No. 1/0 AWG coppers insulated with cross-linked polyethylene, in a 8" dia. loop. Jumpers shall be welded as specified to adjacent steel sheet piles at below the bottom of the concrete cap. Welded connections shall be coated with epoxy...

PROTECTED SIDE          FLOOD SIDE

MODJESKI-E2
10820



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT CORPS OF ENGINEERS
P. O. BOX 60267
NEW ORLEANS LOUISIANA   70160

LMNOD-SP (17th Street Canal)                                    20 January 1983

Sewerage & Water Board of New Orleans
City Hall, Civic Center
New Orleans, Louisiana  70165

Gentlemen:

Reference is made to your application, numbered above, for your proposed work
in the 17th Street Canal, in Metairie, Louisiana.

Your application has been reviewed by other elements of this District, and a
copy of their comments is attached.  It will be necessary to comply with their
comments and submit revised drawings to us including the requested information
before we can complete processing your permit application.

                                        Sincerely,

1 Incl                                  C. W. DECKER
Engr CMT 4                              Chief, Regulatory Functions Branch
                                        Operations Division

MODJESKI-E2
02411

MODJESK1-E2
02412

LMNED-DD
SUBJECT: Appl by N. O. S&WB to Improve Drainage in the 17th St. Canal, Metairie,
Jefferson Parish, LA

TO  C/Ops Div                    FROM  C/Engr Div              DATE  11 Jan 83      CMT

1. Relative to the subject permit, the Corps has jurisdiction on the 17th St. Canal only
the extent that the proposed construction affects the grade and integrity of the existing
Federal levee on the west bank. Therefore, the following comments must be implemented as they affect the integrity of the existing 1950 project. However, local interests may
wish to consider providing protection which exceeds the existing 1950 Federal project. 17th St. Canal is in the alinment of the Federally authorized Lake Pontchartrain Hurricane
Protection project, which is presently under design and construction, and the canal levee
may be incorporated into that project. If this does occur, the proposed work will be
creditable toward the local interests required 30% contributions only if the work complies
with Corps design criteria, and is incorporated into an approved design memorandum

2. The following comments should be resolved and revised drawings again resubmitted for
our further review:

    a. The gap in the levee at Veterans Hwy. is shown on the plan and profile to be below required grade for the 1950 project. Some positive means should be provided for closing
gaps. Should local interests decide to provide protection above that of the existing 1950
project, some means for closing the gaps at Hammond Hwy., Veterans Hwy. and I-10 will have
to be provided.

    b. A 3-bulb waterstop is required at all monolith joints in order to meet Corps' design
criteria. This allows for a greater degree of movement of the floodwall without damaging
the waterstop.

    c. The steel sheet pile interlocks must be placed at the monolith joints to allow for
differential movement between floodwall monoliths.

    d. An L-type waterstop similar to that shown on incl 18 should be provided at any
location where a new wall ties into an existing structure. The floodwall should be
supported by a steel sheet piling and not tied to the existing structure. Differential
settlement could cause cracks to develop in the floodwall.

    e. A coal tar epoxy should be painted on the sheet piling situated in the new fill
material between Sta. 642+00± and Sta. 663+00 in order to prevent severe corrosion. New
embankment material contains voids. Steel sheet piling driven in new embankment tends to
corrode in that region, thus requiring additional protection.

    f. Timber piles in tension must be provided with tension connectors to assure a
complete transfer of the tension loading into the piles.

    g. Preliminary specifications for this project do not include a section on concrete.
This portion of the specifications should be provided for our review.

    h. The sheetpile cutoff wall is not entirely effective for reducing the uplift
pressures required between Sta. 617+50 and Sta. 663+00. A more positive means of reducing

MNED-OD

SUBJECT:   Appl by N. O. S&WB to Improve Drainage in the 17th St. Canal, Metairie, Jefferson Parish, LA

11 Jan 83

plift pressure should be used within this reach.  Preventive measures should also be taken etween Sta. 614+00 to Sta. 617+50 and Sta. 663+00 to 670+00 since the acceptable factor of afety figure of 1.2 is not maintained in this area.

i.  This office requests a final set of plans and specifications for their files.

. All the above comments are based on the contract drawings provided with the subject ermit request. The levee and floodwall elevations shown are consistent with the project uthorized in May of 1950 for, among other items, enlargement of the return levee along the rleans Parish line.  However, the New Orleans Sewerage and Water Board (S&WB) by their etter of 27 Oct 82, had requested levee elevations along the 17th St. Canal for a high evel plan under the Lake Pontchartrain, La. and Vicinity Hurricane Protection project.  A etter was sent by this office on 20 Dec 82, providing those preliminary levee and floodwall levations.  These elevations are dependent on the plan of protection for raising aralleling levees and floodwalls along the Outfall Canals being ultimately incorporated nto the Lake Pontchartrain project.  The elevations shown on the permit drawings are below he 34.0 (at lake) and 35.0 (at existing pumping station) Cairo Datum elevations given in ur 20 December letter.  If the S&WB intends to construct the subject floodwall to the high evel plan elevations, this permit along with new design analyses, must be resubmitted for eview.

5 Incl
dded 2 incl
7.   Design Sketch Painting Detail
8.   Design Sketch — "L" Type
     Waterstop

F: w/o incl
MNED-DL

MODJESKI-E2
02413



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P. O. BOX 60267
NEW ORLEANS, LOUISIANA   70160

May 5, 1983

REPLY TO
ATTENTION OF:

Engineering Division
Structural Design Section

Mr. G. Joseph Sullivan
General Superintendent
City Hall, Civic Center
New Orleans, Louisiana   70165

Dear Mr. Sullivan:

Reference is made to your letter of March 31, 1983, concerning your floodwall analyses for the 17th Street Canal, relative to the high level plan for the Lake Pontchartrain, Louisiana and Vicinity Hurricane Protection plan.

A meeting was held on April 14, 1983, concerning your request for information regarding any additional analyses that would be needed to bring your proposed canal modifications in compliance with Corps standards for the tentatively selected high level plan hurricane protection. At that meeting there were representatives from the Corps, your office, and your consultants (both Modjeski and Masters and Eustis Engineers). The following is a list of requirements that were discussed and are needed to upgrade the floodwalls mentioned above, should they be included in the Lake Pontchartrain project.

a. I-wall analyses for sheet pile tip penetration should be performed for water at the top of the wall (Still Water Level + Freeboard).

b. Landside stability analyses should be performed using still water levels in the canal and the appropriate seepage forces in the cohesionless materials.

c. Settlement analyses should be performed in any areas where the levee is raised.

d. Seepage analyses should be performed to determine what measures are needed, if any, to control protected side excess hydrostatic heads in the underlying pervious strata. It is recommended that a factor-of-safety of 1.25 be used, based on total weights, to determine the need for control.

MODJESKI-E2
01747

-2-

In addition to the items described above, the analyses previously presented to this office used a low water elevation of 18.5 Cairo Datum (C.D.). The adequacy of this elevation has been checked and found to be too high. The low water elevation which would affect the canal side stabilities should be 15.5 C.D. (elevation -5 National Geodetic Vertical Datum (N.G.V.D.)). Any analyses that would be impacted should be redone and designs for the high level plan should agree with this elevation.

We hope the information provided above has answered your questions concerning designs for the 17th Street Canal floodwalls. However, if you have any additional questions, or if another meeting would be helpful, please feel free to contact us.

Sincerely,

Frederic M. Chatry
Chief, Engineering Division

cc:  Mr. Bodet
     5/9/83

MODJESKI-E2
01748

PARTNERS

T. R. KEALEY, INC
R. E. FELSBURG, INC
W. B. CONWAY
H. H. SNYDER
C. F. COMSTOCK
J. J. SCHERRER
J. M. KULICKI

SENIOR ASSOCIATES

R. W. CHRISTIE
T. SHINTAKU
C. T. FORTRAM

ASSOCIATES

J. H. LITTLE
J. R. BOWDEN
H. E. WALDNER
H. E. ECKHOFF
T. Y. SOONG
J. E. PRICKETT
B. P. STRAIN, JR.
D. F. SORGENFREI
B. T. MARTIN, JR
J. L. MCKENNEY
G. A. MURRAY
E. W. ROHRBAUGH

## MODJESKI AND MASTERS

CONSULTING ENGINEERS

*Founded 1893*

1055 ST CHARLES AVE
NEW ORLEANS, LA 70130
TELEPHONE 504  524 4344

May 26, 1983

Mr. Roger Swindler
New Orleans District
U.S. Army Corps of Engineers
Post Office Box 60267
New Orleans, LA  70160

RE:   PERMIT APPLICATION,
      METAIRIE OUTFALL CANAL (17TH STREET CANAL)

Dear Mr. Swindler:

Please find enclosed our Permit Application for
the maintenance dredging of the Metairie Outfall Canal
(17th Street Canal) in Jefferson Parish, Louisiana.

We would greatly appreciate the processing of
this application at your earliest convenience.

Very truly yours

MODJESKI AND MASTERS  -  Engineers

BARNEY T. MARTIN

SHF/BTM:bw
ATTACHMENT.
cc: Mr. G. Joseph Sullivan - Sewerage & Water Board

MODJESKI-E2
10796

APPLICATION FOR A DEPARTMENT OF THE ARMY PERMIT
For use of this form, see EP 1145-2-1

*Form Approved • Office of Mgmt & Budget No. 49-R0420*

The Department of the Army permit program is authorized by Section 10 of the River and Harbor Act of 1899, Section 404 of P. L. 92—500 and Section 103 of P. L. 92—532. These laws require permits authorizing structures and work in or affecting navigable waters of the United States, the discharge of dredged or fill material into waters of the United States, and the transportation of dredged material for the purpose of dumping it into ocean waters. Information provided in ENG Form 4345 will be used in evaluating the application for a permit. Information in the application is made a matter of public record through issuance of a public notice. Disclosure of the information requested is voluntary; however, the data requested are necessary in order to communicate with the applicant and to evaluate the permit application. If necessary information is not provided, the permit application cannot be processed nor can a permit be issued.

One set of original drawings or good reproducible copies which show the location and character of the proposed activity must be attached to this application (see sample drawings and checklist) and be submitted to the District Engineer having jurisdiction over the location of the proposed activity. An application that is not completed in full will be returned.

| 1. Application number (To be assigned by Corps) | 2. Date | 3. For Corps use only. |
|---|---|---|
|  | 9 May 1983 |  |
|  | Day   Mo.   Yr. |  |

| 4. Name and address of applicant. | 5. Name, address and title of authorized agent. |
|---|---|
| Sewerage & Water Board of New Orleans City Hall, Civic Center New Orleans, LA 70165 | Modjeski and Masters 1055 St. Charles Ave., Suite 510 New Orleans, LA 70130 |
| Telephone no. during business hours | Telephone no. during business hours |
| A/C ( ) _____ A/C ( ) _____ | A/C (504) 524-4344 A/C ( ) _____ |

6. Describe in detail the proposed activity, its purpose and intended use (private, public, commercial or other) including description of the type of structures, if any to be erected on fills, or pile or float—supported platforms, the type, composition and quantity of materials to be discharged or dumped and means of conveyance, and the source of discharge or fill material. If additional space is needed, use Block 14.

    This project combines two (2) previously submitted permit requests by
    the Sewerage & Water Board of New Orleans' plan to improve the hydraulic
    characteristics of the 17th St. Canal. The limits of the total project are
    Pump Station No. 6 on the south and 370.0 ft. north of Bucktown Pedestrian
    Bridge to the north, as shown on Attachment pages 2 & 3. The Permit Application

7. Names, addresses and telephone numbers of adjoining property owners, lessees, etc., whose property also adjoins the waterway.

    Levees separate all land owners from the canal, and due to the large number of
    property owners whose land backs up to the levees, we were instructed by the Corps
    of Engineers to omit this information.

8. Location where proposed activity exists or will occur.

Address:

Just east of Orpheum and Lake Avenues
Street, road or other descriptive location

Metairie
In or near city or town

Jefferson        LA
County        State        Zip Code

Tax Assessors Description: (If known)

| Map No. | Subdiv. No. | Lot No. |
|---|---|---|
| Sec. | Twp. | Rge. |

9. Name of waterway at location of the activity.

Metairie Relief Canal (17th St. Canal)

ENG Form 4345. 1 OCT 77        Edition of 1 Apr 74 is obsolete.

MODJESKI-E2
10797

10. Date activity is proposed to commence. _____ Late 1983 _____

Date activity is expected to be completed _____ Mid 1984 _____

11. Is any portion of the activity for which authorization is sought now complete?  ☐ YES  ☒ NO
If answer is "Yes" give reasons in the remark section.  Month and year the activity was completed
_____.  Indicate the existing work on the drawings.

12. List all approvals or certifications required by other federal, interstate, state or local agencies for any structures, construc-
tion, discharges, deposits or other activities described in this application.

| Issuing Agency | Type Approval | Identification No. | Date of Application | Date of Approval |
|---|---|---|---|---|

All agencies contacted in our previous application will be notified in this
application.

13. Has any agency denied approval for the activity described herein or for any activity directly related to the activity
described herein?

☐ Yes  ☐ No  (If "Yes" explain in remarks)

14. Remarks or additional information.

for Phase I was submitted to your office on December 29, 1980.  The Permit
Application for Phase II was submitted April 20, 1981.  This application is
to supersede the previous ones by combining the two (2) phases into one (1)
project.

The applicant's goal for the 7860 acres (75%) of Orleans Parish and 2550
acres (25%) of Jefferson Parish drained by the 17th St. Canal is a drainage
system capable of providing 5-year return frequency protection.  The canal's
tributary area is shown on Attachment page 9.  Elements of the overall plan
include:    Improving the drainage system upstream of Pump Station No. 6,
increasing the pumping capacity of Pump Station No. 6 from 6650 to 10,400 cfs,
and dredging the 17th St. Canal  (470,000 c.y.) to give it the capability of
carrying the increased flow.  The improvement of the canal to a cross-section
capable of carrying 10,400 cfs in the section between the Hammond Hwy. Bridge
and the Bucktown Bridge was provided for in the December 29, 1980 application.

15. Application is hereby made for a permit or permits to authorize the activities described herein.  I certify that I am familiar
with the information contained in this application, and that to the best of my knowledge and belief such information is true,
complete, and accurate.  I further certify that I possess the authority to undertake the proposed activities.

_William J Conway_
Signature of Applicant or Authorized Agent

The application must be signed by the applicant; however, it may be signed by a duly authorized agent (named in Item 5)
if this form is accompanied by a statement by the applicant designating the agent and agreeing to furnish, upon request,
supplemental information in support of the application.

18 U. S. C. Section 1001 provides that:  Whoever, in any manner within the jurisdiction of any department or agency
of The United States knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact
or makes any false, fictitious or fraudulent statements or representations or makes or uses any false writing or document
knowing same to contain any false fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or
imprisoned not more than five years, or both.  Do not send a permit processing fee with this application.  The appropriate
fee will be assessed when a permit is issued.

MODJESKI-E2
10798

Preliminary plans for this project call for the construction of sheet pile walls with concrete caps along both levees for the majority of the length of the project, then excavation of the canal to provide a flow area in the neighborhood of 2500 square feet. In addition, some lowering of the existing levees behind the proposed sheet pile walls will be required to meet stability requirements. Sheet pile walls will, however, be of sufficient height to meet current flood protection criteria. The Southern Railroad Bridge just north of Pump Station No. 6 will require some modification as it could possibly become a substantial flow obstruction at extremely high lake stages and could also be a possible cause of flooding, due to the fact that the rail elevation is several feet below the existing levees in its proximity. Detailed hydraulic analyses have been undertaken during the design phase of this project to determine the effect of this bridge and other obstructions within the canal for the design flow of 10,400 cfs. Hydraulic gradient calculations based on the projected flow of 10,400 cfs at normal lake elevations and after completion of canal dredging indicate an insufficient rise in water elevation at Veterans Hwy. Bridge to warrant consideration of flood gates. A synopsis of the hydraulic analyses is described on Attachment page 10.

All excavated material will be hauled away in leak-proof trucks and disposed of in a non-wetland area and covered by at least one foot of clean fill to comply with suggestions made by the EPA concerning a previous Permit Application. Preliminary cross-sections of the canal are shown on Attachment pages 4-9. Exact sections, sheet pile wall stability analyses, detailed hydraulic studies and estimated earthwork quantities have been previously forwarded to you as they became available during the design phase of this project.

"The applicant hereby certifies that, to the best of his knowledge, the proposed activity described in this Permit Application complies with and will be conducted in a manner that is consistent with the Coastal Zone Management Program of the State of Louisiana."

MODJESKI-E2
10799



END PROJECT

LAKE   PONTCHARTRAIN

N

PROJECT LOCATION

Scale in Feet

BEGIN PROJECT

METAIRIE OUTFALL CANAL
SEWERAGE AND WATER BOARD
OF ORLEANS PARISH, LA.
PREPARED BY: MODJESKI AND MASTERS
MAY, 1983
SH. 1 OF 10

MODJESKI-E2
10800



PREPARED BY:
MODJESKI AND MASTERS
METAIRIE OUTFALL CANAL
MAINTENANCE DREDGING
JEFFERSON PARISH, LA.

SEWERAGE AND WATER BOARD
OF NEW ORLEANS
SH. 2 OF 10   MAY, 1963

GENERAL PLAN - 1
SCALE: 1" = 400'

MODJESKI-E2
10801

MODJESKI AND MASTERS
CONSULTING ENGINEERS

Project ____
Subject ____

Sheet ____ of ____
Made ____ Ckd ____
Date ____ Rev ____

PREPARED BY
MODJESKI AND MASTERS
METAIRIE OUTFALL CANAL
MAINTENANCE DREDGING
JEFFERSON PARISH, LA.

SEWARAGE AND WATER BOARD
OF NEW ORLEANS
SH. 3 OF 10   MAY, 1983

GENERAL PLAN - 2
SCALE : 1" = 400'

MODJESKI-E2
10802



ORLEANS PARISH

JEFFERSON PARISH

EXISTING BUILDING

EXISTING WALL
EL. 27.5

NORMAL WATER SURFACE

EL. 15.5(±)

225   200   175   150   125   100   75   50   25   0

40
30
20
10
0

EXISTING

EXISTING BUILDING
TO REMAIN

EXISTING WALL
TO REMAIN

NORMAL WATER SURFACE

EL. 6.0

225   200   175   150   125   100   75   50   25   0

40
30
20
10
0

PROPOSED

SECTIONAL VIEW 300' NORTH OF THE BUCKTOWN BRIDGE

(LOOKING SOUTH)

1" = 40'

**MODJESKI-E2**
**10803**

| METAIRIE OUTFALL CANAL |
| SEWERAGE AND WATER BOARD |
| OF ORLEANS PARISH, L.A. |

PREPARED BY: MODJESKI AND MASTERS
SH. 4 OF 10                    MAY, 1983



ORLEANS PARISH

JEFFERSON PARISH

EXISTING LEVEE EL. 29(±)

EXISTING SHEET PILE WALL EL. 27.6

EXISTING GROUND EL. 24.2 TO 25.5

NORMAL WATER SURFACE

EL. 14(±)

40
30
20
10
0

225   200   175   150   125   100   75   50   25   0

EXISTING

LEVEE EL. 26.0

PROPOSED FLOODWALL EL. 31.0

PROPOSED SHEET PILE WALL AND MOORING FACILITIES

EL. 26.0

NORMAL WATER SURFACE

EL. 2.0

40
30
20
10
0

225   200   175   150   125   100   75   50   25   0

PROPOSED

SECTIONAL VIEW BETWEEN BUCKTOWN BRIDGE AND HAMMOND HIGHWAY

(LOOKING SOUTH)

1"=40'

MODJESKI-E2
10804

METAIRIE OUTFALL CANAL
SEWERAGE AND WATER BOARD
OF ORLEANS PARISH, LA.
PREPARED BY: MODJESKI AND MASTERS
SH. 5 OF 10          MAY, 1983



ORLEANS PARISH

JEFFERSON PARISH

LEVEE EL. 27 (±)

LEVEE EL. 29 (±)

EXISTING SHEET
PILE WALL EL. 30.4

EXISTING SHEET
PILE WALL EL. 32.0

NORMAL WATER SURFACE

EL. 9.0 (±)

EXISTING

LEVEE EL. 26.0

LEVEE EL. 26.0

FLOODWALL EL. 31.0

FLOODWALL EL. 31.0

NORMAL WATER SURFACE

EL. 2.0

PROPOSED

SECTIONAL VIEW BETWEEN HAMMOND HIGHWAY AND VETERANS HIGHWAY

(LOOKING SOUTH)

1" = 40'

MODJESKI-E2
10805

METAIRIE OUTFALL CANAL
SEWERAGE AND WATER BOARD
OF ORLEANS PARISH, LA.
PREPARED BY: MODJESKI AND MASTERS
SH. 6 OF 10          MAY, 1983



ORLEANS PARISH

JEFFERSON PARISH

EXISTING BIKE PATH
STA. 590+38 TO STA. 625+30

LEVEE EL. 27.4(±)

EXISTING SHEET PILE
WALL EL. 30.4

LEVEE EL. 30(±)

EXISTING SHEET PILE
WALL EL. 32.0

NORMAL WATER SURFACE

EL. 12.0(±)

EXISTING

RELOCATED BIKE PATH
STA. 590+38 TO STA. 625+30

LEVEE EL. 29.0

FLOODWALL EL. 31.0

LEVEE EL. 29.0

FLOODWALL
EL. 31.0

NORMAL WATER SURFACE

EL. 3.0

PROPOSED

SECTIONAL VIEW BETWEEN VETERANS HIGHWAY AND I-10

(LOOKING SOUTH)

1" = 40'

**MODJESKI-E2**
**10806**

METAIRIE OUTFALL CANAL
SEWERAGE AND WATER BOARD
OF ORLEANS PARISH, LA.

| PREPARED BY:  MODJESKI  AND  MASTERS | |
| SH. 7  OF 10 | MAY, 1983 |



ORLEANS PARISH

JEFFERSON PARISH

EXISTING BIKE PATH
STA. 642+76 TO 675+00

EL. 31(±)

EL. 32.5(±)

NORMAL WATER SURFACE

EL. 12.0(±)

225   200   175   150   125   100   75   50   25   0

40
30
20
10
0

EXISTING

RELOCATED BIKE PATH
STA. 642+76 TO STA. 675+00

EL. 33.0

EL. 33.0

NORMAL WATER SURFACE

225   200   175   150   125   100   75   50   25   0

EL. 4.0

40
30
20
10
0

PROPOSED

SECTIONAL VIEW BETWEEN I-10 AND PUMP STATION NO. 6

(LOOKING SOUTH)

1" = 40'

MODJESKI-E2
10807

METAIRIE OUTFALL CANAL
SEWERAGE AND WATER BOARD
OF ORLEANS PARISH, LA.

PREPARED BY: MODJESKI AND MASTERS
SH. 8 OF 10                    MAY, 1983



NORMAL WATER SURFACE

10'(±)CL.          10'(±)CL.

MATERIAL TO BE
EXCAVATED

CONCRETE BLOCK
MATS REQUIRED

EXCAVATION LIMITS AT BRIDGES
NO SCALE

NOTE:   NO EXCAVATION WILL BE REQUIRED BETWEEN I-10 EASTBOUND AND
        I-10 WESTBOUND. HOWEVER CONCRETE BLOCK MATS WILL BE REQUIRED.

MODJESKI-E2
10808

SYNOPSIS OF HYDRAULIC ANALYSIS

I.   Determination of Cross-sectional Area

Reference:  Open-channel Hydraulics by Chow, 1959
            Pages 165-168

A.   A velocity of 4 fps was determined to be the recommended
     allowable.

B.   The Manning Formula was used to arrive at the desirable cross-
     sectional area of 2500 sf.

C.   The D'Aubuisson Method was used to calculate the backwater
     effect of the bridges and other obstructions.

II.  History of Project

A.   Phase I

     1.   Canal capacity analyzed for 7225 cfs.

     2.   Canal capacity analyzed for 10,000 cfs from Hammond
          Hwy. to the Lake and pump 6650 cfs from Pump Station No. 6
          to Hammond Hwy.

B.   Phase II - canal capacity analyzed for 10,400 cfs from Pump
              Station No. 6 to the Lake.

     1.   M & M Manual Calculations

     2.   HEC 2 by consultant of Jefferson Parish

     3.   Hydro-dynamic Model & HEC 2 by Drs. Alawady and Suhada

     4.   Linfield-Hunter Analysis

MODJESKI-E2
10809

*File - 17th Street Canal*



**DEPARTMENT OF THE ARMY**

NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160

REPLY TO
ATTENTION OF:

September 7, 1983

Engineering Division
Structural Design Section

Mr. Barney T. Martin, Jr., Associate
Modjeski and Masters
1055 St. Charles Avenue
New Orleans, Louisiana 70130

Dear Mr. Martin:

Reference is made to your letter of August 10, 1983, and the enclosure from Eustis Engineering (letters of 22 and 27 July, 1983) relative to additional design analyses prepared at the request of the New Orleans Sewerage and Water Board (S&WB) for paralleling levees and floodwalls on the 17th Street Canal. Those analyses provided designs for a high level plan of protection along the 17th Street Canal for the Lake Pontchartrain Hurricane Protection plan. We have reviewed the information furnished and have the following comments to present.

Reference is made to the telephone conversation on August 24, 1983, between Mr. Jim Richardson of this office and Mr. Lou Napolitano of Eustis Engineering concerning their letter of July 22, 1983. The following is a list of comments that were discussed relative to performing a test section for the canal;

(1) We have no objection to using a test section to determine the effects of dredging on hydrostatic pressures.

(2) The depths of the piezometers were not given. This information is needed to evaluate the test section.

(3) How long will the piezometers be read before excavation starts?

(4) A set of plans and specifications for the "test section" should be furnished to this office.

MODJESKI-E2
01750

-2-

Concerning the Eustis letter of July 27, 1983, which provided additional stability analyses, the following comments are offered;

(1)  The factors of safety obtained from the canal side stabilities with low water conditions appear to be based on analyses using uplift in the sand to a low groundwater elevation. This assumption is questionable for the conditions where the canal possibly taps the sand. If the proposed test section indicates that higher groundwater elevations will be encountered, then the analyses should reflect the proper groundwater elevations.

(2)  The standard Corps minimum factor of safety for levee stability against failure into the canal is 1.3 for a minimum canal water level of -5.0 National Geodetic Vertical Datum (N.G.V.D.). Your current design provides a minimum safety factor of 1.2. Preliminary analyses have shown that the minimum factor of safety of 1.3 could be obtained by reducing the mass of embankment or shifting the embankment landward. However, at a meeting held on August 24, 1983, at our offices, yourself and Mr. Larry Bodet of the S&WB expressed problems with attaining any of these recommendations, primarily because of excessive costs. Mr. Bodet stated that an estimate would be prepared and submitted to us for the additional costs required to achieve the 1.3 factor of safety. As discussed in a recent telephone conversation between Mr. Bodet and myself, we will consider whether some relaxation in the requirements of a safety factor of 1.3 minimum for a canal stage of -5.0 N.G.V.D. is appropriate in this instance.

(3)  The uplift analysis section on page 4 of this letter indicates three reaches with factors of safety less than the required 1.25. (See our letter to S&WB dated May 5, 1983, paragraph d, enclosure). However, only two reaches are stated as having possible problems. All three reaches should be included.

Reference is also made to telephone conversations on August 18 and 19, 1983, between Mr. Jorge Romero of this office and yourself, concerning your design of the steel sheetpiling for the subject floodwalls. As a result of the wall heights and tip elevations presented for a high level plan design, it was necessary to recheck the steel sheet pile shown on the original contract plans. The sections of sheetpiling being checked at this time by your office were discussed in the referenced telephone conversations, but those sections have not been presented to us as of yet. In an effort to speed up the review process,

MODJESKI-E2
01751

-3-

we have checked several types of sheetpiling and have arrived at the following results. Our computations show that the following sheet pile sections would be acceptable; PZ-22 for Station 614+00 to 670+00 (both banks), PZ-27 for Station 589+00 to 614+00 (both banks) and PZ-38 for Station 554+00 to 589+00 (both banks). For Station 539+00 to 554+00 (Orleans side), because of the excessive deflections calculated for steel sheetpiling in this region, it will be necessary to use a design that will reduce those deflections. As discussed with you in the referenced telephone conversations, this may necessitate using a T-wall, or some other acceptable means for reducing deflections.

We would appreciate being provided with a set of contract plans and specifications for the subject work as soon as they become available.

We hope the above information will be helpful in finalizing your designs. In an effort to complete these reviews as soon as possible, we will be available to answer any questions or provide information that you may request. If it would be beneficial for us to meet with you to resolve any comments, please feel free to contact us. It is our intention to complete any necessary reviews as quickly as possible, in order to maintain present construction schedules.

Sincerely,

Frederic M. Chatry
Chief, Engineering Division

Enclosure
Copy furnished:

Mr. G. Joseph Sullivan
General Superintendent
New Orleans Sewerage and Water Board
City Hall, Civic Center
New Orleans, Louisiana  70165

MODJESKI-E2
01752