UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FRANK GAMBINO and | * | CIVIL ACTION |
| LUCREZIA GAMBINO | * | |
| | * | NO. 06-8636 |
| VERSUS | * | |
| | * | SECTION K |
| THE STANDARD FIRE INSURANCE COMPANY and | * | |
| ALLIANCE INSURANCE AGENCY SERVICES, INC. | * | MAG. (2) |

*************************************************

## ALLIANCE INSURANCE AGENCY SERVICES, INC.'S OPPOSITION TO MOTION TO REMAND

Defendant Alliance Insurance Agency Services ("Alliance"), submits this Opposition to Plaintiffs Frank and Lucrezia Gambino's ("Plaintiffs") Motion to Remand. As shown below, this Court has subject matter jurisdiction over Plaintiffs' claims against Alliance based on federal question jurisdiction. Further, even if this Court were not to have such jurisdiction (which it does), this is moot because Plaintiffs have no cause of action against Alliance and Plaintiffs' claims against Alliance are perempted. In their Motion to Remand, Plaintiffs stipulate that the damages sued upon are not the result of flooding and do not exceed $75,000. For the following reasons, Plaintiffs' motion should be denied:

- All flood claims, including failure to procure flood insurance, fall under the purview of federal law notwithstanding judicial opinions to the contrary.

- Removal is proper because: 1) failure to procure flood insurance should be governed by and preempted by federal law and 2) if Plaintiffs' allegations are true, Alliance is a fiscal agent of the federal government.

- Plaintiffs have no cause of action against Alliance because Alliance did not breach any duty owed to Plaintiff.

- Plaintiffs' claims against Alliance are perempted under La. R.S. § 9:5606.

- Plaintiffs' post-removal attempts to destroy this Court's jurisdiction should be disregarded.

## FACTS / PROCEDURAL HISTORY

Since the face of the Petition[1] is controlling in a removal action, the following is a summary of Plaintiffs' allegations:

This suit, filed in the 24th Judicial District Court, Parish of Jefferson, State of Louisiana, on August 30, 2006, arises out of Plaintiff's claims under their Standard Fire Insurance Company ("Standard Fire") homeowner's policy for losses allegedly caused by Hurricane Katrina. Alliance, a local insurance agent, procured homeowners insurance for Plaintiffs through Standard Fire. The Petition alleges that Plaintiffs' home and its contents were destroyed by the wind and floods resulting from Hurricane Katrina. The Petition further alleges that Alliances' negligence caused Plaintiffs to be deprived of proper insurance coverages.

On October 19, 2006, Alliance filed its Notice of Removal. Plaintiffs' Motion to Remand followed.

## LAW AND ARGUMENT

**I.** **Notwithstanding Judicial Opinions to the Contrary, All Flood Claims, Including Failure to Procure Flood Insurance, Fall Under Purview Of Federal Law And Invoke Federal Question Jurisdiction.**

Alliance acknowledges the District Court case law contrary to its position on procurement of insurance as a state issue but respectfully submits that the cases preceding this case have not focused on the decisive basis for conferring federal question jurisdiction. This

---

[1] See, Petition.

year, the Eastern District acknowledged that "the Fifth Circuit has not had the occasion to determine whether a state law tort claim for errors and omissions like Plaintiff's claims would be considered 'handling' and the Fifth Circuit has not determined whether state law claims for improper 'procurement' would be preempted by the National Flood Insurance Act (NFIA)." <u>Landry v. State Farm Fire & Cas. Co.</u>, No. 06-181 (Apr. 25, 2006) (ruling against federal jurisdiction but noting no decision from Fifth Circuit on this precise issue), *citing*, <u>Wright v. Allstate Ins. Co.</u>, 415 F.3d 384, 390 (5th Cir. 2005) ("state law tort claims arising from claims handling by a WYO are preempted by federal law").

The cases examining the issue have generally held that when an insurance agent fails to procure flood insurance, the federal government lacks a financial stake to confer federal question jurisdiction. However, as will be shown in this memorandum, whether the federal government has a financial stake should not be the dispositive issue and even if this Court finds that it is, the federal government has a huge financial stake in regulating the procurement of flood insurance policies.

The federal government enacted the National Flood Insurance Act ("NFIA"), 42 U.S.C. §§ 4001 *et seq.*, in part, to ensure uniformity of flood protection. The government controls underwriting and procurement regulations and policies relative to flood insurance. It follows then that the case law governing procurement of flood insurance, which relies necessarily on the insurance agent learning, following, and executing those federal regulations, should be governed by a uniform body of federal law. The alleged failure of a "Write Your Own" (WYO) carrier to procure flood insurance in accordance with the federal guidelines should not be left to the individual decision of each trial court and ultimately each appellate court in each of the 50 states. Moreover, federal question jurisdiction exists because as a WYO carrier, Alliance is a fiscal

agent of the federal government. Therefore, Alliance respectfully requests this Court to consider the removal/remand issue under the framework presented herein and to find that the Court should retain this matter under 28 U.S.C. § 1331 federal question jurisdiction.

## II. Removal Is Proper Because: (1) Failure to Procure Flood Insurance Should Be Governed And Preempted By Federal Law And (2) If Plaintiffs' Allegations Are True, Alliance Is A Fiscal Agent of the Federal Government.

The NFIP is operated by the Federal Emergency Management Agency ("FEMA"), which has authority to regulate the participation of private companies in the NFIP, the terms on which flood insurance will be provided, and the manner in which claims are adjusted and paid. 42 U.S.C. §§ 4013(a), 4019, 4071, 4081. By FEMA regulation, all policies issued under the NFIP (whether by FEMA or by a WYO company) must be issued using the terms and conditions of the Standard Flood Insurance Policy ("SFIP"). 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c). In 2003, FEMA changed its regulations to provide explicitly that sales and administration of flood policies are subject to those regulations insofar as WYO carriers are involved. 44 C.F.R. Pt. 62, App. A, Art, I. The SFIP form itself is a regulation and is found in 44 C.F.R. Pt.61, App. A. The WYO companies are not authorized to vary or waive any of the SFIP terms and conditions without the express written consent of FEMA. 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c). As a matter of federal law, these terms and conditions govern the adjustment of all claims: "A WYO Company issuing flood insurance coverage shall arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the NFIP, based upon the terms and conditions of the Standard Flood Insurance Policy." 44 C.F.R. § 62.23(d).

WYO carriers are paid by FEMA for the services they provide in connection with the underwriting and sale of SFIPs and for the handling and defense of claims under the policy. *See* 44 C.F.R. Part 62, App. A, Art. III. WYO carriers, however, do not bear the risk of loss under the

SFIPs. Rather, claims are paid with federal funds, and the federal government bears the risk of loss under the program. WYO carriers are fiscal agents of the United States, 42 U.S.C. § 4071(a)(I); 44 C.F.R. § 62.23(g), and payments on SFIP claims are a direct charge on the United States Treasury. See, Wright v. Allstate Ins. Co., 415 F.3d 384, 390 (5th Cir. 2005) ("state law tort claims arising from claims handling by a WYO are preempted by federal law"); 42 U.S.C. § 4017(d)(I).

The NFIP's federal regulatory structure is not confined to the four corners of the SFIP, but extends into numerous other areas of the activities of WYO companies and their agents including sales, marketing, and procurement. *See* 44 C.F.R. Pt. 62, App. A art. I (stating that the Federal Insurance Administration ("FIA") "has promulgated regulations and guidance implementing the Act and the Write-Your-Own program whereby participating private insurance companies act in a fiduciary capacity utilizing Federal funds to sell and administer [SFIPs], and has extensively regulated the participating companies' activities when selling or administering [SFIPs]"). By way of example, the Arrangement expressly directs that WYO companies "shall issue policies under the regulations prescribed by the Administrator in accordance with the Act," 44 C.F.R. Pt. 62, App. A, art. II.D.2, and "shall market flood insurance policies in a manner consistent with marketing guidelines established by FIA." Id. art. n.G.2.

Additionally, federal regulations direct WYO companies to "encourage [their] present property insurance policyholders to purchase flood insurance through the NFIP WYO program," 44 C.F.R. § 62.23(h)(1), and to comply with specified requirements regarding rating system procedures, transmission of premium payments, and the offering of premium payment plans. Id. § 62.23(h)(2), (3), (7).

Finally, in order to qualify for participation in the NFIP, WYO companies must "submit information concerning [their] plans for the WYO program including plans for the training and support of producers and staff [and] marketing plans and sales targets," 44 C.F.R. § 62.24(d), and WYO companies are required to submit to a federal review of their "claims, underwriting, customer service, marketing, and litigation activities" at least once every three years. 44 C.F.R. § 62.23(j)(2); 44 C.F.R. Pt. 62, App. B.

Plaintiffs' claims would thus necessarily involve determining what SFIP coverage she could have purchased and the extent to which her alleged losses would have been covered under any such SFIP coverage. Moreover, the SFIP itself is "governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001 *et seq.*), and Federal common law." 44 C.F.R. Part 61 App. A(1), art. IX; see also Wright v. Allstate Ins. Co., 415 F.3d at 390.

Moreover, one of Plaintiffs' claims is premised on an alleged duty to provide certain kinds of advice with respect to policy options in connection with the sale of an SFIP by a WYO company. By federal statute, FEMA is charged with regulating the terms of participation in the WYO. 42 U.S.C. §§ 4071, 4081. FEMA regulates such participation through the "Arrangement" between FEMA and WYO companies, 44 C.F.R. Pt. 62, App. A, as well as numerous regulations and directives. Any duties or conditions imposed on WYO companies as a result of participation in the NFIP could only be imposed as a matter of federal law. Accordingly, an essential element of Plaintiffs' claims - the purported duty to advise as to additional coverage - requires construction of federal laws.

### A. This Court May Exercise Supplemental Jurisdiction Over Any Remaining State Law Claims.

To the extent that any of Plaintiffs' claims are not subject to federal jurisdiction under 28 U.S.C. §§ 1331 or 42 U.S.C. § 4072, this Court has jurisdiction over such claims under 28 U.S.C. § 1367, which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. See Exxon Mobil Corp. v. Allapattah Services, Inc., 125 S. Ct. 2611 (2005). To find that claims are "so related" and "form part of the same case or controversy" for Section 1367 jurisdiction, the Court must determine whether the plaintiff's claims "derive from a common nucleus of operative fact." City of Chicago v. International College of Surgeons, 522 U.S. 156, 165 (1997). All Plaintiffs' claims relate to insurance they allege they had or should have had for property allegedly destroyed as a result of Hurricane Katrina and thus "derive from a common nucleus of operative fact."

For all of these reasons, it is clear that Plaintiff's claims raise substantial federal questions. Removal is thus proper pursuant to 28 U.S.C. §§ 1331 or 42 U.S.C. § 4072.

### III. Plaintiffs Have No Cause Of Action Against Alliance Because Alliance Did Not Breach Any Duty Owed To Plaintiffs.

There is no possibility that Plaintiffs can obtain relief against Alliance because Plaintiffs have not stated and cannot state a claim against Alliance under well-settled Louisiana law. As supported by the Fifth Circuit and several decisions of various sections of this Court, Plaintiffs do not state a cause of action against Alliance:

- Motor Ins. Co. v. Bud's Boat Rental, Inc.,[2] wherein the Fifth Circuit noted that "the client is himself considered responsible for adequately advising the agent of the coverage needed and for reading the clear provisions of the insurance policy."

- Ragas v. Tarleton,[3] wherein Judge Feldman held that the plaintiff, who did not allege that the agent exceeded his authority, personally bound himself, or made any misrepresentations, failed to state a claim against the agent.

- Davis v. Allstate,[4] wherein Judge Vance found that the plaintiff failed to state a cause of action against Allstate insurance agent because "Plaintiff does not cite, and the Court does not find, any case imposing a duty on an agent to spontaneously identify a client's needs and advise him as to whether he is underinsured or carries the right type of coverage".

- Dobson v. Allstate,[5] wherein Judge Vance found that even if the Court were to consider plaintiffs' assertion that the agent negligently misrepresented the terms of their coverage to them in October 2004, they knew or should have known of his wrongful conduct as of that time, as they had a copy of their policy in hand. Accordingly, the plaintiffs failed to state a cause of action against the insurance agent because "Plaintiffs do not have a reasonable possibility of recovery against [agent]".

- Wellmeyer v. Allstate,[6] wherein Judge Vance stated, "plaintiffs are chargeable with knowledge of the terms of their policy, and they could not justifiably rely on the alleged misrepresentations of their insurance agents about the type of coverage they held. Plaintiffs received their policies, and the terms of the coverage were clear. Plaintiffs could have verified or contradicted any representation about the terms of coverage by referring to the policies themselves."

---

[2] 917 F.2d 199, 205 (5th Cir. 1990).

[3] 06CV4137, 2006 WL 2925448, at * 3-4 (E.D. La. Oct. 10, 2006). See also, Leblanc v. Mid-Continent Life Ins., No. 93-2677, 1993 U.S. Dist. LEXIS 14792, at *4 (E.D. La. Oct. 20, 1993) (holding no cause of action exists under Louisiana law against agent of named insurer, unless agent personally bound itself or exceed its authority). See also, La. Civ. Code arts. 3016, 3019.

[4] 06CV1064, 2006 WL 2078243, at *10 (E.D. La. July 21, 2006).

[5] 06CV1064, 2006 WL 2078243, at *9 (E.D. La. July 21, 2006).

[6] 06CV1585, 2006 WL 2078423, at *11 (E.D. La. July 21, 2006).

- Parker v. Lexington Ins. Co.[7], Wherein Judge Zainey held that an agent had no duty to advise its client to purchase flood insurance with higher limits.

- Frischhertz v. Lexington Ins. Co.[8], Wherein Judge Barbier, citing Dobson, held that "no case imposes a duty on an agent to identify a client's needs and advise him whether he is underinsured or carries the correct type of coverage."

Moreover, in order for an insurance agent to held liable for failure to procure insurance for another, the complainant must allege and prove: (1) an undertaking or agreement by the insurance agent to procure insurance, (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he failed to obtain such insurance, and (3) the actions of the agent warranted an assumption by the client that he was properly insured. See e.g., Karam v. St. Paul & Marine Ins. Co., 281 So.2d 728, 730-31 (La. 1973); See also, Sullivan, et al. v. State Farm Cas. Ins. Co., et al., Civil No. 06-0004 (E.D.La. April 6, 2006) (holding that plaintiff stated no cause of action where no facts were alleged evidencing an undertaking by agent to advise about and/or offer plaintiff excess flood insurance). Plaintiffs have not made any allegations that purport to establish any of these three elements. Contrary to Plaintiffs' allegations[9], Alliance had no duty to advise Plaintiffs as to the availability or need to purchase excess flood insurance. Plaintiffs have made conclusory allegations which are in no way supported by any jurisprudential or statutory authority. As shown above, Louisiana law strongly supports that Plaintiffs' assertions are without merit and that Plaintiffs have no cause of action against Alliance.

---

[7]  06CV4156, 2006 WL 3328041, at * 9-10 (E.D. La. Nov. 15, 2006).

[8]  06CV5676, 2006 WL 3228385, at * 5-6 (E.D. La. Nov. 3, 2006).

[9]  See, Petition at ¶ VII.

## IV.   Plaintiffs' Claims Against Alliance Are Perempted Under La. R.S. § 9:5606.

Plaintiffs' claims against Alliance, an insurance agent, are perempted under La. R.S. § 9:5606. Plaintiffs cannot maintain a claim against Alliance because any right to such claim no longer exists. Louisiana Revised Statutes §9:5606 provides a one-year/three-year peremptive period for claims against insurance agents, which completely eliminates any right to a cause of action after the requisite time period.[10] La. R.S. 9:5606(A), (D). The statute provides, in pertinent part:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue *within one year* from the date of the alleged act, omission, or neglect, or *within one year* from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, *in all events such actions shall be filed at the latest within three years* from the date of the alleged act, omission, or neglect.

(emphasis added). Because Alliance is an insurance agency and sells insurance, the statute applies to Alliance.[11]

---

[10]   Bel v. State Farm Mut. Auto. Ins. Co., 845 So. 2d 377, 380 (La. App. 1st Cir. 2003) ("Peremption differs from prescription in several respects. While prescription prevents the enforcement of a right by legal action, but does not terminate the natural obligation, peremption extinguishes or destroys the right"); see also, Biggers v. Allstate Ins. Co., 886 So. 2d 1179, 1181 (La. App. 5th Cir. 2004) ("La. Civil Code Art. 3458 defines peremption as 'a period of time fixed by law for the existence of a right.' Further, under that article 'unless timely exercised, the right is extinguished upon the expiration of the peremptive period.'"); Coffey v. Block, 762 So. 2d 1181, 1186 (La. App. 1st Cir. 2000).

[11]   See, Klein v. Am. Life & Cas. Co., 858 So. 2d 527, 531 (La. App. 1st Cir. 2003) (concluding that "because the acts of an insurance agent are generally imputable to the insurer he represents," peremptive period applies to insurance agents); see also, Biggers, 886 So. 2d at 1180-83 (holding that peremptive period applied to insured's suit against agent for failure to procure adequate coverage).

Plaintiffs originally purchased the insurance policy in question on October 21, 2001[12], almost five years before the filing of this suit.[13] The purchase of the policies commenced the peremptive period.[14]

Accordingly, this suit filed on August 28, 2006, almost five years after Plaintiffs' purchase of the insurance policy, is perempted. **Further, even if this Court uses the last renewal date of the policy before Hurricane Katrina, October 21, 2004[15], Plaintiffs' suit would not fall within the one or three-year peremptive periods under well-settled Louisiana law.**[16]

---

[12]  See, Exhibit "A". Alliance's records regarding Plaintiff only go back as far as October 21, 2001. However, upon information and belief, Alliance asserts that the policy in question was originally procured at a date much sooner than October 2001.

[13]  See, Rault v. Encompass., 06CV1734, 2006 WL 2078423, at *6 (E.D. La. July 21, 2006) (finding that "[t]he wrongful acts alleged against [the agent] occurred in 1989, when plaintiff [originally] purchased her policy"); Dobson, 2007 WL 2078423 at *8 (holding: "[s]ince it is the terms of the flood exclusion that would render [the agent's] alleged statement to plaintiffs about the terms of their policy inaccurate, his alleged misconduct occurred in 1991 when he sold plaintiffs the policy containing the flood exclusion); Cresson, 2006 WL 2912824 at *1-2 (holding that peremptive period began at time the claimant purchased her policy); Perez, 2006 WL 2178753 at *3 (same); Biggers, 886 So. 2d at 1183 (holding that peremptive period, applicable to insured's negligence suit against agent, began when plaintiff purchased policy).

[14]  See, e.g., Dobson, 2006 WL 2078423, at *9 ("the wrongful acts alleged against [the agent] occurred in 1989, when plaintiff purchased her policy") and at *8 ("since it was the terms of the flood exclusion that would render [the agent's] alleged statement to plaintiffs about the terms of their policy inaccurate, his alleged misconduct occurred in 1991 when he sold plaintiffs the policy containing the flood exclusion"); Lieschen Clover v. Allstate Ins. Co., 2006 WL 3366132, *4 (E.D. La. 11/20/06) ("[t]he misrepresentations were allegedly made on or before May 11, 2005, when the policy was issued. Suit was not filed until May 17, 2006. Thus, ... this action against [the agent] is preempted under Section 9:5606 and is hereby dismissed."); Biggers, 886 So. 2d at 1183 (holding that peremptive period, applicable to insured's negligence suit against agent, began when plaintiff purchased policy); McCord v. Minn. Mut. Life Ins. Co. 138 F. Supp. 2d 1180, 1189 (D. Minn. 2001) (under Louisiana law, "vanishing premium" claims were dismissed because policyholder should have known of conflict between policy terms and alleged misrepresentation made when he received the policy).

[15]  See, Exhibit "A".

[16]  See, e.g., Bel, 845 So. 2d at 382 ("[t]herefore, we find that the insurance policy renewals do not constitute separate and distinct torts, commencing the peremptive period anew at each renewal"); Biggers,

Plaintiffs knew or should have known of their claim against Alliance -- *i.e.*, that Alliance was allegedly negligent in failing to provide adequate insurance coverage to Plaintiff -- within three years of their purchase of the policy on October 21, 2001. Any claims against Alliance became perempted on October 22, 2004, more than three years after the policy was purchased.[17]

Plaintiffs cannot avoid this result by claiming that they did not realize the extent of the coverages of their policy or that Alliance was negligent in failing to provide adequate insurance coverage because the insurance policy itself was sufficient to put them on notice of these facts on October 21, 2001, and at the latest, October 21, 2004. Louisiana courts have long recognized that a prescriptive period begins to run "when a Petitioner obtains actual or constructive knowledge of acts indicating to a reasonable person that he or she is the victim of a tort."[18] A person is deemed to have constructive knowledge when a reasonable person would have had notice sufficient to "excite attention and put the injured party on guard and call for inquiry."[19] Insureds are also deemed to have read and known the provisions of their insurance contracts.[20]

---

886 So. 2d at 1183 (peremptive period applicable to insured's negligence suit against agent began when plaintiff purchased policy, notwithstanding subsequent renewals); Bordelon v. Indep. Order of Foresters, No. 05-2640, 2005 WL 3543815 (E.D. La. Oct. 4, 2005) (peremptive period began to run on day plaintiff was assisted in completing insurance application); Calvin v. Janbar Enters., Inc., 856 So. 2d 88 (La. App. 4th Cir. 2003) (peremptive period begins to run when policy is acquired).

[17] Biggers, supra.

[18] See e.g., Dobson, 2006 WL 2078423, at *9 (stating that "[a] prescriptive or preemptive period will begin to run when the injured party has constructive knowledge of the facts that would entitle him to bring a suit"); Campo v. Correa, M.D., 828 So. 2d 502, 510 (La. 2002).

[19] Id. at 510-11.

[20] See, T.H.E. Ins. Co. v. Larsen Intermodal Services, Inc., 242 F.3d 667 (5th Cir. 2001) (stating that under Louisiana law, "an insured is presumed to know the provisions of his policy"); Dobson, 2006 WL 2078423 at *9 (stating that "[a]n insured party is generally responsible for reading his policy, and he is presumed to know its provisions"); McDermott Int'l, Inc. v. Industrial Risk Insurers, 01CV3027, 2003 WL 22928802 (E.D. La. Dec. 9, 2003); Stephens v. Audubon Ins. Co., 665 So. 2d 683, 686 (La. App. 2d

The insurance policy itself was sufficient to put Plaintiffs on notice regarding any error or omission by Alliance. A reasonable person who read the policy's terms would be have been able to ascertain the coverage limits of the policy and spot any potential causes of action in negligence.

In sum, when Plaintiffs purchased the policy on October 21, 2001, they had everything needed to "excite attention" and put them on inquiry. Because the policy expressly reveals any alleged error or omission by Alliance, Plaintiffs were on actual or constructive notice of the purported error or omission as of that date.[21] Therefore, Plaintiffs' claims are perempted because they failed to file suit within the one or three-year peremptive periods provided under Louisiana law.[22]

---

Cir. 1995) (stating that "[a]n insured is presumed to know the provisions of his policy"); Matthews v. Business Men's Assurance Co. of America, 478 So. 2d 634, 637 (La. App. 2d Cir. 1985); Perkins v. Shelter Ins. Co., 540 So. 2d 488 (La. App 1st Cir. 1989).

[21] See, e.g., Dobson, 2006 WL 2078423, at *9 ("the wrongful acts alleged against [the agent] occurred in 1989, when plaintiff purchased her policy") and at *8 ("since it was the terms of the flood exclusion that would render [the agent's] alleged statement to plaintiffs about the terms of their policy inaccurate, his alleged misconduct occurred in 1991 when he sold plaintiffs the policy containing the flood exclusion"); Lieschen Clover v. Allstate Ins. Co., 2006 WL 3366132, *4 (E.D. La. 11/20/06) ("[t]he misrepresentations were allegedly made on or before May 11, 2005, when the policy was issued. Suit was not filed until May 17, 2006. Thus, ... this action against [the agent] is preempted under Section 9:5606 and is hereby dismissed."); Biggers, 886 So. 2d at 1183 (holding that peremptive period, applicable to insured's negligence suit against agent, began when plaintiff purchased policy); McCord v. Minn. Mut. Life Ins. Co. 138 F. Supp. 2d 1180, 1189 (D. Minn. 2001) (under Louisiana law, "vanishing premium" claims were dismissed because policyholder should have known of conflict between policy terms and alleged misrepresentation made when he received the policy).

[22] See id.; see also Simmons v. Templeton, 723 So. 2d 1009, 1012 (La. App. 4th Cir. 1998).

V.     **Plaintiffs' Post-Removal Attempts To Defeat This Court's Jurisdiction Should Be Disregarded.**

Standard Fire is non-resident foreign insurance company[23]. Plaintiffs and Alliance are citizens of Louisiana. Nonetheless, the citizenship of Alliance does not defeat this Court's subject-matter jurisdiction because Plaintiffs improperly joined Alliance.[24]

The standard for determining when a defendant has been fraudulently joined was recently explained by the Fifth Circuit in Hornbuckle v. State Farm Lloyds[25]:

> For removal purposes, a local defendant is deemed fraudulently joined not only when there is no arguably reasonable basis for predicting that the local law would recognize the cause of action pled against that defendant, but also when, as shown by piercing the pleadings in a summary judgment type procedure, there is no arguably reasonable basis for predicting that the plaintiff would produce sufficient evidence to sustain a finding necessary to recover against that defendant. Were this not the rule, the removal rights of out-of-state defendants would largely be theoretical and practically meaningless.

"Under this standard, the Court must determine whether there is arguably a *reasonable* basis for predicting that state law might impose liability. This means that there must be a reasonable possibility of recovery, not merely a *theoretical* one."[26] Significantly, these rules have been applied to instances of improper joinder of insurance agents and adjusters.[27]

---

[23]   See, Petition at ¶ 1.

[24]   See, Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d 529, 533 (5th Cir. 2006); Smallwood v. Ill. Cent. R.R., 385 F.3d 568, 573 (5th Cir. 2004); *In re* Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002); Burden v. General Dynamics Corp., 60 F.3d 213, 217-18 (5th Cir. 1995) (stating that improperly joined defendants "must be ignored for diversity jurisdiction"); Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 817 (5th Cir. 1993) (finding that because co-defendants "were improperly joined, ... their citizenship [was] to be disregarded for purposes of determining diversity jurisdiction").

[25]   385 F.3d 538, 545-56 (5th Cir. 2004).

[26]   Ross v. CitiFinancial, Inc., 344 F.3d 458, 462 (5th Cir.) cert. denied, 126 S. Ct. 335 (2005) (emphasis in original, citations omitted); see also Smallwood, 385 F.3d at 573.

[27]   See e.g., Ragas v. Tarleton, 2006 WL 2925448 (Feldman, J.) (denying motion to remand where

**As stated earlier, there is no possibility that Plaintiffs can obtain relief against Alliance because Alliance did not breach any duty owed to Plaintiffs. Thus, Plaintiffs have no reasonable possibility of recovery against Alliance.**

Moreover, it is apparent from the face of the Petition that the amount in controversy at issue in this case exceeds $75,000, exclusive of interest and costs. Plaintiffs did not allege in their Petition that the amount in controversy at issue in this case does not exceed $75,000. When a plaintiff's damages are insufficient for federal jurisdiction, in accordance with Louisiana Code of Civil Procedure Article 893, plaintiff is required to make such an allegation in the Petition. Pursuant to Louisiana Code of Civil Procedure article 893, as amended, Louisiana law now requires an allegation regarding the amount of damages when necessary to establish the "lack of jurisdiction of federal courts due to insufficiency of damages..." La. Code Civ. Proc. art. 893 (in pertinent part); see also Bruce v. Fisher, No. 06-0840 (W.D. La. July 13, 2006), 2006 WL 2505908. "In other words, the foregoing allegation is required *only* when the damages are insufficient to satisfy the federal jurisdictional minimum." La. Code Civ. Proc. Art. 893 (in pertinent part). In the absence of such an allegation, the plaintiff has "in effect conceded by their state court pleadings that the requisite jurisdictional amount *is* in controversy. This creates a 'strong presumption' in favor of jurisdiction." Id. at *1.

---

agent improperly joined); Dobson v. Allstate, 2006 WL 2078423 (Vance, J.) (same); Cresson v. State Farm Fire and Cas. Co., No. 06CV4763, 2006 WL 2912824 (E.D. La. Oct. 5, 2006) (McNamara, J.) (same); Perez v. Metropolitan Prop. and Cas. Ins. Co., No. 06CV2574, 2006 WL 2178753 (E.D. La. July 28, 2006) (Lemelle, J.) (same); Edwards v. Allstate Prop. & Cas. Co., No. 04-2434, 2005 WL 221560 (E.D. La. Jan. 27, 2005) (Duval, J.) (finding adjuster was fraudulently joined where plaintiff failed to establish reasonable basis of recovery); Kimball v. Modern Woodmen of Am., 939 F. Supp. 479 (M.D. La. 1996) (Parker, J.) (holding that agent was fraudulently joined where plaintiff failed to establish knowledge of falsity of representation).

In Bruce v. Fisher, the plaintiff was involved in a car accident and sued the defendant in state court. The Bruce plaintiff did not allege that their damages were less than the jurisdictional minimum. The defendant removed the case to federal court and the Plaintiff filed a motion to remand. In denying the plaintiff's motion, the court found that because plaintiff did not allege that their damages were less than the jurisdictional amount, as required by law, "it [was] 'facially apparent' that the amount in controversy exceeded $75,000 at the time of removal." Id.

When a plaintiff has not alleged a specific amount of damages, a removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000. Luckett v. Delta Airlines, Inc. 171 F3d 295, 298 (5th Cir. 1999); DeAgullar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993). The defendant may make the requisite showing by demonstrating that it is facially apparent that the claims are likely above $75,000. Grant v. Chevron Phillips Chem. Co., 309 F.3d 864, 868 (5th Cir. 2002). Once a defendant has made such a showing, diversity jurisdiction may be defeated only if the plaintiff demonstrates to a "legal certainty" that the amount in controversy does not exceed $75,000. Grant, 309 F.3d at 869. The Fifth Circuit has emphasized that "there is no burden-shifting exercise", rather, the "plaintiff must make all information known at the time the complaint is filed." Grant, 309 F.3d at 864.

Thus, the jurisdictional facts must be judged at the time of removal and a subsequent reduction of the amount claimed cannot oust a federal district court's jurisdiction. Gebbia v. Wal-Mart Stores, Inc. 233 F.3d 880, 883 (5th Cir. 2000). A federal district court may not consider post-removal events in determining whether the amount in controversy is met. See, St. Paul Reinsurance Co., Ltd. v. Greenburg, 134 F.3d 1250, 1254 & n.18 (5th Cir. 1998); Association Nacional de Pascadores a Peuqena Escala o Artesanales de Columbia v. Dow Quimica de Columbia S.A., 988 F.2d 559, 565 (5th Cir. 1993).

In this case, Plaintiffs' attempts to destroy this Court's diversity jurisdiction with a post-removal stipulation that damages will not exceed $75,000 should be disregarded. Plaintiffs attempt to defeat federal question jurisdiction by stipulating that Plaintiffs' damages did not result from floods should also be disregarded. These stipulations go against 5th Circuit precedent which requires a plaintiff to make all information known at the time the complaint is filed. See, Grant, 309 F.3d 864. Plaintiffs missed their opportunity by failing to state in the Petition that their damages did not result from floods and that damages will not exceed $75,000. As such, these stipulations have no bearing on this Court's jurisdiction over this matter.

## CONCLUSION

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 4072 because the resolution of this matter involves the interpretation of federal law. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Further, even if such jurisdiction were not to exist (which it does), this is moot because Plaintiffs have no cause of action against Alliance and their claims against Alliance have been perempted. Furthermore, penalties and attorney fees are not appropriate because: 1) the Fifth Circuit has not issued a ruling on point and 2) Alliance has submitted a good faith theory of federal jurisdiction which would expound upon the existing law. Plaintiffs' Motion to Remand should be denied in its entirety.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all of the following: Derek D. Gambino, Camille Bienvenu Poche

/s/ William H. Eckert
UNGARINO & ECKERT, LLC
3850 N. Causeway Blvd., Suite 1280
Metairie, LA 70002
Telephone: (504) 836-7537
Fax: (504) 836-7538
beckert@ungarino-eckert.com

Respectfully submitted:

**UNGARINO & ECKERT L.L.C.**

/s/ William H. Eckert
WILLIAM H. ECKERT (T.A.) (#18591)
PAUL J. HAMMER (#30540)
Suite 1280 Lakeway Two
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone:    504/836-7537
Fax:          504/836-7538
beckert@ungarino-eckert.com