UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES    CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION NO. 05-4182 |
| | * | SECTION "K" |
| | * * | MAGISTRATE (2) |
| PERTAINS TO:    PONTCHARTRAIN BAPTIST CHURCH    NO. 06-6642 | * * * * | JUDGE DUVAL |
| | * | MAG. WILKINSON |
| * * * * * * * * * * * * | | |

**OPPOSITION OF BOH BROS. CONSTRUCTION CO., L.L.C.
TO PLAINTIFFS' MOTION TO REMAND**

Boh Bros. Construction Co., L.L.C. ("Boh Bros.") joins in the opposition to the plaintiffs' Motion to Remand.[1]  Boh Bros. adopts the arguments made in James Construction Group's ("James") opposition to plaintiffs' motion to remand, particularly insofar as James correctly asserts its right to remove pursuant to 28 U.S.C. 1442 § (a)(1).  Indeed, in ***Robert Harvey, et al v. The Board of Commissioners for the Orleans Levee District, Parish of Orleans***, C.A. No. 05-4568, this Honorable Court has already established the factual underpinnings necessary to deny

---

[1] Boh Bros. points out that Your Honor recently granted summary judgment in favor of Boh Bros., on the basis of peremption, in most, but not all of the cases filed against Boh Bros.  Boh Bros. certainly intends to file peremption motions in the remaining cases by the currently applicable deadline date for such motions, February 2, 2007.  Whether they will be opposed or not remains to be seen.  In any event, it may be unlikely that Your Honor would rule upon such remaining motions before this opposition is due, and Boh Bros. respectfully submits this opposition in order to preserve its argument herein, even should Boh Bros. subsequently be dismissed from this matter on the basis of peremption.

-1-

this motion to remand, based on federal officer jurisdiction.[2]  There is simply no need to reinvent the wheel.

### PLAINTIFFS' ALLEGATIONS, THE WORK PERFORMED, AND YOUR HONOR'S EARLIER RULINGS

Plaintiffs allege that Boh Bros. was at fault in connection with various items of work on the 17th Street Canal, including dredging activities and the construction of the original levee sheet piling (later driven deeper and "covered" by the floodwall constructed by Pittman).

Boh Bros. performed construction work for the Sewerage and Water Board of New Orleans ("Water Board") and the Orleans Levee District ("OLD"), as per its contract with same. (See Contract No. 24306 attached hereto as Exhibit "A" and specific terms for same as Exhibit "B").  Although Boh Bros. was not in privity of contract with the U.S. Army Corps of Engineers ("Corps"), Boh Bros.' role was clearly that of subcontractors involved in government work, and clearly meets the jurisdictional requirements of 28 U.S.C. 1442(a)(1).

This Honorable Court has already established, by either law of the case or perhaps judicial notice of its own factual determinations, the salient factual information necessary to establish that there is federal officer jurisdiction.  In the opinion issued on May 31, 2006 (Document No. 476), in **Robert Harvey**, C.A. No. 05-4568, this Honorable Court offered a lengthy factual recitation of the relationship between the U. S. Army Corps of Engineers and the Orleans Levee District ("OLD"), noting in particular the following salient facts:

---

[2] Boh Bros. pretermits further mention of the "savings to suitors" clause for reason that it is inapplicable to Boh Bros.' construction services at issue in this case, which services bear no relationship to traditional maritime activity. However, insofar as the 17th Street Outfall Canal is concerned, Your Honor's previous rulings leave no doubt that it is part of a flood control project; admiralty jurisdiction is non-existent. Moreover, the power to remove under 28 U.S.C. 1442 is "absolute." **Berthelot**, 2006 WL 1984661, at p. 6. Finally, Boh Bros. adopts by reference the arguments specifically advanced by James in its well-written opposition to the effect that admiralty and/or maritime jurisdiction is lacking, as these arguments are equally applicable to the 17th Street Outfall Canal.

-2-

S:\Boh Bros - 106\106-219 Berthelot\Pleadings\USDC\06-6642 Pontchartrain\070102 Opposition of Boh to Pltf Motion to Remand.doc

The 17th Street Outfall Canal is a "component" of the National Flood Control Program. (Page 1)

Pursuant to 33 U.S.C. 701(a-1), "improvements of rivers and other waterways for flood control and allied purposes shall be under the direction of the Secretary of the Army and supervision of the Chief of Engineers." (Page 2)

The United States Army Corps of Engineers (hereinafter "Corps") designed and installed the floodwalls for the London Avenue and 17th Street Outfall Canals. (Page 3)

"The Corps issued the specifications and bid packages for the construction of the London Avenue and 17th Street Outfall Canals." (Page 3)

"Any maintenance performed by OLD on the levees was done under the supervision and in accordance with regulations promulgated by the Corps." (Page 3)

"Federal law even prohibits OLD from initiating any flood control project without prior federal approval." 33 U.S.C. § 701(b-13) (Page 5)

OLD contends that the Corps was solely responsible for any construction work or structural design at the 17th Street Outfall Canal. (Page 12)

Boh Bros.' only involvement in this litigation, concerning the 17th Street Outfall Canal, is because of its construction activities performed as a subcontractor, on a government project that was unquestionably under the control, supervision and direction of the U. S. Army Corps of Engineers, not to mention that the U. S. Army Corps of Engineers was virtually in complete control of the design and planning of the project, all of which occurred pursuant to the National Flood Control Program. It is only logical to so conclude, given that this Honorable Court's prior opinion in **Robert Harvey**, as well as its opinion in **Berthelot v. Boh Bros. Construction Co., L.L.C.,** 2006 WL 1984661 (E.D. La. 2006), issued the very next day, both establish without

-3-

doubt that the OLD was not involved in such activities, and consequently the only party who could have been was the U. S. Army Corps of Engineers. Thus, it necessarily follows that any construction activities involving the 17th Street Outfall Canal were performed by a "person" "acting under" federal officers, and thus, because any such contractor parties can present a "colorable" "government contractor defense," the power to remove this matter was and is absolute.[3] While this Honorable Court may have previously determined that the OLD could not assert federal officer jurisdiction, the implication of the earlier opinions is that the contractor defendants (and for that matter the engineer defendants as well) patently can assert federal officer jurisdiction, and indeed have done so. This Honorable Court said as much in its earlier opinions, noting that the OLD did not "build or design" any structure, and noting that the litigations have focused on the design and construction of the levees which "was undertaken by the Corps." (***Robert Harvey***, p. 11). Unlike the OLD, Boh Bros., as well as the other contractor and engineer defendants, did participate in the construction process, and that is the critical distinction that yields federal officer jurisdiction herein.

### PRIVITY OF CONTRACT IS UNNECESSARY

***Nesbiet v. General Electric Company***[4] and ***Fink v. Todd Shipyards***[5] are examples of cases in which a party removed suits to federal court under 28 U.S.C. 1442 by asserting federal officer/government contractor defenses. Both cases refer to the same affidavit used by General

---

[3] Your Honor, in ***Furleigh v. Sewerage and Water Board of New Orleans***, 2004 WL 1794524 (E.D. La. 2004), noted that the availability of a collarable government contractor defense, to a person acting under a federal officer, rendered a case removable under 28 U.S.C. 1442. Thus, a showing that such a defense exhibits, to such a person, makes the care removable, even if such a defense by itself does not establish jurisdiction.

[4] 399 F. Supp. 2d 205 (SDNY 2005).

[5] C.A. 04-430 USDC, ED La. 4/19/04.

-4-

S:\Boh Bros - 106\106-219 Berthelot\Pleadings\USDC\06-6642 Pontchartrain\070102 Opposition of Boh to Pltf Motion to Remand.doc

Electric and the same facts regarding General Electric supplying marine steam turbines containing asbestos to the Navy.

Judge Porteous' decision in *Fink* found that the affidavit of David Hopson was sufficient to support removal. In *Nesbiet*, the court found that the Hopson affidavit was not sufficient to establish that the Navy prohibited the warnings about asbestos being published, but then found that an accompanying affidavit of Rear Admiral Lehman (ship superintendent at the Brooklyn Navy Yard) was sufficient to support the contention that the Navy controlled all warnings placed on equipment and in technical manuals.

While the issue of "privity of contract" between General Electric and the Navy was not specifically discussed in *Nesbiet*, it is clear from the recitation of facts that the claims were in regard to turbines supplied in General Electric to Navy ships both by direct contract between General Electric and the Navy and by contracts between General Electric and shipyards, which in turn were under contract with the Navy. Thus, in at least some of the claims removed in *Nesbiet*, General Electric was not in privity of contract with the Navy. As stated in *Nesbiet*, "The Hopson affidavits show that GE manufactured and supplied turbines for U.S. Navy ships under contracts between GE and the Navy Department or contracts between GE and shipyards that had themselves contracted with the Navy Department."[6]

Judge Porteous' opinion in *Fink* also refers to the Hopson affidavit as stating that GE supplied turbines to Navy ships either by direct contract between the Navy and GE **or** by contract between GE and shipyards. The opinion also specifically refers to the Hopson affidavit (paragraphs 11 and 12) as supporting the assertion that "In the design phase of a turbine, as in all other phases, the U.S. Navy retained ultimate decision authority . . . if an engineering

---

[6] 399 F. Supp. 2d at 206.

-5-

S:\Boh Bros - 106\106-219 Berthelot\Pleadings\USDC\06-6642 Pontchartrain\070102 Opposition of Boh to Pltf Motion to Remand.doc

disagreement arose between the Navy and the outside design consultants, the Navy controlled the design adopted."

In ***Crocker v. Borden, Inc.***[7], Judge Livaudais held that Westinghouse, a third party defendant, properly removed claims against it based on its supplying marine turbines to Avondale for Navy vessels, based upon the affidavit of its manager of design verification, James Gate, who declared that Westinghouse performed its work "under close, constant and detailed control and supervision by the Department of the Navy.  The supervision and control was exercised by contract documents, design and construction drawings, written specifications, and personal oversight of Westinghouse work by Naval officers and civilian employees of the United States Navy."  Judge Livaudais noted that the Gate affidavit was unrebutted.

Judge Lemelle, in ***Mazant v. Visioneering, Inc.***[8], ruled that subcontractors may use the government contractor defense, citing Fifth Circuit authority in the ***Kirstetter v. Pacific Scientific Company***[9] and ***Garner v. Santoro***[10] cases, and referring to that rule being adopted in the Third, Fourth and Sixty Circuits as well.  (Judge Lemelle also denied summary judgment on the government contractor's defense asserted by a subcontractor, Burnham, because it did not prove that the government officers were engaged in review of its work, but then granted summary judgment in favor of Burnham for reason that there was no evidence of any defects in the sub-component which it manufactured).

***Kirstetter*** and ***Garner*** clearly acknowledge the possibility of a government subcontractor defense, particularly if the government approved the specifications.  ***Kirstetter*** does not address

---

[7] 852 F. Supp. 1322, 1325 (ED La. 1994).

[8] C.A. 04-0057, USDC, ED La. 3/14/06.

[9] 210 F. 3d 431 (5th Cir. 2000).

[10] 865 F. 2d 629 (5th Cir. 1989).

privity but recites in its presentation of facts that defendant, Pacific Scientific Company, manufactured the "pilot restraint system" in the aircraft sold to the Navy. In discussing the government contractor defense, the Court stated, "The government need not prepare the specifications to be considered to have approved them." See ***Trevino v. General Dynamics***, 865 F. 2d 1474, 1489 (5th Cir. 1989) (holding that 'substantive review' is adequate). To determine whether 'substantive review' occurred, a court must take into consideration a number of factors. Those factors involve examining drawings, evaluation from time to time, criticism, and extensive government testing a continuous 'back and forth' between the contractor and the government." 210 F. 3d at 435.

In ***Garner***, the Court was confronted with the defendant epoxy paint manufacturer ("Seaguard") who sold paint to Ingalls Shipyard, which held a Navy contract to build destroyers (which were to be transferred to Iran). The plaintiff objected to Seaguard's assertion of the government contractor defense because no government contract with Seaguard was involved. The Fifth Circuit stated:

> "Garner's argument could be interpreted to mean that because the Navy does not have a direct contract with Seaguard, Seaguard cannot assert the government contractor defense. Garner cites no case to support this proposition, and we have not found a case which binds us to such a per se rule. Indeed, though not binding, ***Schwindt v. Cessna Aircraft Co.***, No. CV 485-472 (S.D. Ga. Aug. 31, 1988) [1988 WL 148433], indicates that a supplier to a company with a government contract can assert the defense if the supplier can meet the conditions set forth in ***Boyle***. We, however, only state that given the limited factual information available to us concerning this defense, in particular what the terms of the involved contracts are, we are unprepared to agree with Garner's argument." 865 F. 2d at 637 n. 13.

Judge Lemelle's reference to ***Ramey v. Martin-Baker Aircraft Company***[11] as an example of the Fourth Circuit recognizing a subcontractor (not in privity of contract) eligible for government contractor defense is based upon the appellate court's affirmance of the trial court's finding that an ejection seat manufacturer for a Navy fighter was immune under the government contractor defense and that such component part manufacturer (Martin-Baker Aircraft Company) had successfully removed the case to federal court after McDonald Douglas had been dismissed from the Maryland state court action.  The federal district court then dismissed the claims against Martin-Baker on the grounds of military contractor defense.  There is no direct mention in the opinion about privity of contract; rather, the court uses the usual ***Boyle*** three-prong test and holds that ". . . Martin-Baker has demonstrated Navy participation in the design that amounts to more than rubber stamping."  874 F. 2d at 950.

Judge Lemelle's reference to ***Tate v. Boeing Helicopters***[12], as holding that subcontractors can assert the defense in the Sixth Circuit is grounded upon the Sixth Circuit's reference, 140 F. 3d at 657 n. 2 that "Breeze-Eastern [the subcontractor] concedes that, as a subcontractor, it bases its claims to the government contractor defense largely on the communications between the prime contractor, Boeing, and the Army.  Plaintiffs, however, do not dispute that a subcontractor receives the benefit of the relationship between the prime contractor and the government.  See generally, ***McGuire v. Hughes Aircraft Corp.***, 91212 F. 2d 67 (3rd Cir. 1990)(applying government contractor defense to subcontractor on basis of prime contractor's interaction with government)."  In ***McGuire***, the Third Circuit approved application of the government contractor defense to MPB Corporation, a manufacturer which supplied ball bearings to Allison Gas

---

[11] 874 F. 2d 946 (4th Cir. 1989).

[12] 140 F. 3d. 654 (6th Cir. 1998).

Turbine Division of General Motors Corporation, which supplied the helicopter engine of Hughes Aircraft, which supplied the helicopter to the Army.

Your Honor has previously denied motions to remand and approved removals by James Construction Group of suits for property damages arising from the Napoleon Avenue Covered Canal Project, involving the Water Board and the Corps.[13]  Your Honor stated, "The Court also finds that James acted in both cases, under the direction of a federal officer, namely, the Corps and its chief engineer for the project, Timothy Roth . . . as stated in James' Notice of Removal and the supporting affidavit by James' Project Superintendent, Jerry E. Swenson, the Corps had direct and detailed control over James' work."

## CONCLUSION

Boh Bros. further references the fact that Your Honor has already held, in these consolidated litigations, that the government "controlled" virtually every aspect of the design and construction of the 17th Street Outfall Canal, including the preparation of the specifications on each project.

The foregoing authority compels this Court's exercise of jurisdiction over the claims asserted against Boh Bros.

The facts clearly establish both federal officer jurisdiction, and the availability of a government contractor defense, and thus jurisdiction under 28 U.S.C. § 1442 as to the claims against Boh Bros. as well as to the claims against James.

Once jurisdiction under 28 U.S.C. § 1442 is proper as to any of the defendants, this Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over all other claims that are so

---

[13] ***Furleigh v. Sewerage & Water Board of New Orleans***, C.A. No. 04-1374, USDC, ED La. 8/9/04); ***Miles v. Sewerage & Water Board of New Orleans***, C.A. No. 04-1587, USDC, ED La. 8/9/04).

related that they form part of the same case or controversy. ***Davis v. Dept of Health and Hospitals***, 2006 WL 2089264 (5th Cir. 2206); ***Perret v. American National Property and Casualty***, 2006 WL 3412267 (E.D. La. 2006); ***Torregano v. Cross***, 2006 WL 3375363 (E.D. La. 2006).

Plaintiffs' motion to remand should therefore be denied.

Respectfully submitted,

**KINGSMILL RIESS, L.L.C.**

By: *s/Charles B. Colvin*
Michael R. C. Riess (#2073)
Charles B. Colvin (#4352)
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170-3300
Telephone: (504) 581-3300
Facsimile: (504) 581-3310
***Attorneys for Boh Bros. Construction Co., L.L.C.***

Terrence L. Brennan (#32434)
DEUTSCH, KERRIGAN & STILES, L.L.P.
755 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
***Attorneys for Boh Bros. Construction Co., L.L.C.***

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleadings has this day been served upon all counsel of record by hand, by fax, by electronic transmittal and/or by depositing same in the United States mail, postage prepaid and properly addressed this 2nd day of January, 2007.

*s/Charles B. Colvin*