UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION NO: 05-4182 |
| CONSOLIDATED LITIGATION | * | |
| | * | SECTION: "K"(2) |
| VERSUS | * | |
| | * | JUDGE:  DUVAL |
| PERTAINS TO:  INSURANCE | * | |
| *Chehardy,* Nos. 06-1672, 06-1673, and 06-1674 | * | MAGISTRATE:  WILKINSON |
| *Vanderbrook*, No. 05-6323 | * | |
| *Xavier University*, No. 06-516 | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * | |

**DEFENDANT INSURERS' MEMORANDUM IN SUPPORT
OF MOTION TO STAY LITIGATION PENDING APPEAL**

The defendant insurance companies[1] in *Chehardy, et al. v. Wooley, et al.,* Nos.

06-1672 c/w 06-1673, and 06-1674, *Vanderbrook, et al. v. State Farm Fire and Casualty Co., et*

*al.,* No. 05-6323 and *Xavier University of Louisiana v. Travelers Property and Casualty*

---

[1]     This motion is submitted on behalf of Lexington Insurance Company, the Standard Fire
Insurance Company (improperly named as Travelers Property & Casualty Company of
America), Liberty Mutual Fire Insurance Company, Auto Club Family Insurance
Company, Aegis Security Insurance Company, the American Insurance Company,
Lafayette Insurance Company, the Hanover Insurance Company, Great Northern
Insurance Company, Allstate Insurance Company, Allstate Indemnity Company,
Encompass Insurance Company, and Unitrin Preferred Insurance Company (the
"Insurers").  Defendant State Farm Fire and Casualty Insurance Company ("State Farm")
is not a party to this motion.

- 1 -

74774

- 2 -

*Company of America*, No. 06-516 submit this Memorandum in Support of their Motion to Stay these matters pending the appeal of this Court's November 27, 2006 ruling.

## I. <u>INTRODUCTION</u>

This Court recently held that some of the exclusions in many of the Insurers' policies, including the water damage and negligent design, construction and maintenance exclusions, do not apply to water damage caused by "man-made" levee failures. *See* Nov. 27, 2006 Order of the Court (the "Order") (Doc. No. 1803). This Court also held that the water damage exclusion in the policies of defendant State Farm apply to "man-made" water damage and granted State Farm's motion to dismiss plaintiffs' coverage claims. *Id.* As part of its Order, the Court properly certified its ruling for immediate appeal to allow the United States Fifth Circuit Court of Appeals to address the "controlling question of law as to which there is a substantial ground for a difference of opinion" and this Court recognized that an "immediate appeal of these orders may materially advance the ultimate termination of the litigation." *See* Nov. 27, 2006 Order, p. 85. Consistent with the Court's certification, the Insurers filed the necessary pleadings with the Fifth Circuit Court of Appeals seeking permission to appeal. In addition, plaintiffs filed their own Petition for Appeal, seeking reversal of the Court's Order dismissing their coverage claims against State Farm. The Court recognized the pivotal importance of the issues on which appeal is sought by plaintiffs and the Insurers, and this Court has ordered that all motions relating to "insurance coverage issues" be stayed pending the appeal. (Doc. No. 2034 at p. 6).

74774

For the same reasons that the Court certified its decision for immediate appeal and stayed further motion practice regarding the "flood exclusion," the Insurers request that this Court stay this matter pending the outcome of the appeal.  As set forth herein, the resolution of the appeal may resolve many, if not all, of the claims against the Insurers.  Accordingly, a stay is appropriate to avoid the overwhelming costs and taxing of this Court's and the parties' time and resources that will be spent on complex discovery, pretrial proceedings and, possibly, class certification issues involving many parties – all of which may prove to be unnecessary, depending on the outcome of the appeal.  For these reasons, the Insurers' Motion to Stay should be granted.

## II.  PROCEDURAL FACTS

*Chehardy* is a putative class action against fifteen insurance companies, in which the plaintiffs, purportedly on behalf of residents of Orleans, Jefferson, and St. Bernard Parishes, seek several forms of relief, all arising out of the defendants' allegedly improper failure to pay for water damage: (1) declaratory relief that the different policies issued by the different insurance companies cover various types of damages that allegedly were caused by flooding; (2) damages resulting from the insurers' alleged breach of contract; (3) damages resulting from the insurers' alleged breach of implied duty of good faith; (4) damages resulting from the insurers' alleged breach of fiduciary duty in marketing and selling the policies; and (5) damages, penalties, and attorney fees under Louisiana's bad faith insurance statutes.  *See, e.g.,* Amended Complaint ¶¶ 25, 61, 68, 79, 91-92, 99.  (Doc. No. 445).  *Vanderbrook* and *Xavier University* are individual

74774

lawsuits by insureds against their insurers raising similar issues involving coverage for flood damage.

These cases, along with at least 166 other cases, have been transferred to Section K of this Court as part of its handling of all cases in the Eastern District of Louisiana, falling under the umbrella of the Hurricane Katrina Canal Breaches Consolidated Litigation.  This umbrella of litigation includes not only the insurance issues, but also all cases against the Levee Board, the Corps of Engineers and various contracting and engineering firms[2] regarding how and why certain levees failed during Hurricane Katrina, as well as claims involving the Mississippi River Gulf Outlet and the catastrophe at the St. Rita Retirement Center.

The cause and consequences of the levee breaches only become relevant in *Chehardy, Vanderbrook* and *Xavier University* if this Court's November 27, 2006 ruling finding certain policy exclusions inapplicable to water damage allegedly caused by negligent design, construction and/or maintenance of levees is upheld.  Reversal or modification of the decision on appeal may end, or at lease significantly limit, this litigation.  Costly and time-consuming discovery and pretrial proceedings would be required to determine the causes of the various floods throughout the City of New Orleans and in the surrounding parishes in general, and to individual houses or neighborhoods specifically.  To avoid these costs from being unnecessarily incurred, a stay should be entered pending the outcome of this appeal.  Judicial economy also counsels strongly in favor of staying this case pending the outcome of the appeal.

---

[2]     This Court granted summary judgments dismissing the claims against the contracting and engineering firms on December 8, 2006 (Doc. Nos. 2142 and 2148).  However, the claims against the Levee Board and the Corps of Engineers remain.

74774

### III.  LAW AND ARGUMENT

**A.      The Procedural Posture And The Facts In Dispute Warrant A Stay Pending The Appeal.**

The Court should stay this case pending an appeal.  This Court specifically designated these issues addressed in its November 27, 2006 ruling for appeal under 28 U.S.C. § 1292(b).  Order, p. 85.  (Doc. No. 1803).  For the same reasons the Court certified these issues for immediate appeal, it should stay the proceedings pending the outcome of that appeal.

In similarly complex cases requiring protracted discovery, courts have not hesitated to stay the case pending appeal.  In ruling on a motion to stay, in a complex case with very similar dispositive issues subject to a 1292(b) appeal, the court granted a motion to stay pending the appeal to the Fifth Circuit because a resolution of the issues on appeal might save both parties considerable time and expense.  *Castano v. Am. Tobacco Co.,* 162 F.R.D. 112 (E.D. La. 1995).  *Id.*  The court explained that "having determined to certify for appeal the order that certified this matter as a limited class action, the Court finds that it is in the interest of judicial economy and efficiency to stay this matter."  *Id.*  Several other cases have been stayed under similar circumstances. *See, e.g., Cont'l Ins. Co. v. Laneco Constr. Sys., Inc.*, No. 94-3338, 1995 WL 468169 (E.D. La. Aug. 7, 1995) and *Jesco Constr. Corp. v. Nationsbank Corp.*, No. 98-1567, 2000 WL 1251960 (E.D. La. Sept. 1, 2000).

This case, like *Castano*, *Continental Insurance Co.* and *Jesco,* should be stayed to allow the Fifth Circuit Court of Appeals to determine the fundamental, threshold legal issues that this Court certified for appeal before protracted complex litigation commences.  The issues on appeal are legal issues that could obviate the necessity for extensive discovery and costly and

74774

time-consuming hearings.  However, if the case is not stayed, the pretrial litigation process, with its inherent complexities and costs, will be triggered.  Without the stay, the Insurers and the plaintiffs will be compelled to begin the pretrial process, including the following:

1.  **The Filing Of Responsive Pleadings, Including The Potential Addition Of Third Parties.**

The plaintiffs contend, and the district court accepted as true for purposes of ruling on the Insurers' motions to dismiss, that the negligence or misconduct of third parties was the cause of flooding in the New Orleans area.  Because such flooding would presumably not be an excluded loss under the reasoning of the Order, it may be necessary for the Insurers to add the third parties allegedly responsible for the levee failures to these proceedings.  Specifically, plaintiffs have alleged that the floods were caused by the Army Corps of Engineers and the Orleans Parish Levee Board.  If true, then claims lie not only for the plaintiffs against those third parties, but potentially for the insurers as well, through subrogated rights.  In order to fully litigate these allegations of third-party negligence and responsibility, these parties may have to be added to the *Chehardy, Vanderbrook* and *Xavier University* litigation, which would likely trigger additional motion practice and procedural disputes and would burden such third parties with additional proceedings that may ultimately prove to be wholly unnecessary.

2.  **Extensive Discovery.**

This Court has ordered that liaison counsel for the plaintiffs and all defendants in all of the Hurricane Katrina litigation present proposed discovery plans to the Court by January 15, 2007. Even without considering the enormity of the task of trying to coordinate such a plan by January 15 at the same time that the appeal is being prosecuted, the actual undertaking

74774

of that discovery will be enormously expensive and time-consuming for all parties.  Based on the Court's Order, the parties would need to conduct extensive discovery to determine how the levees were built, designed and maintained.  In addition, the parties would need to conduct discovery to determine whether the cause of each alleged levee failure was human negligence, or the power and force of nature accompanying Hurricane Katrina.  That analysis would have to be conducted on at least a neighborhood-by-neighborhood basis, if not a street-by-street or house-by-house basis.  For example, reconstructing which houses in New Orleans East were damaged by flooding  from overtopping of the levees, which were damaged by flooding from breaches of any improperly designed, constructed and/or maintained levees, and which were damaged by flooding from the overflow of the Mississippi River Gulf Outlet will be a fundamental, but very complex, issue to be discovered and litigated on a claim-by-claim basis.  Even though the contractors, designers and engineers have been dismissed as parties, their roles in the alleged breaches, not to mention the United States Corps of Engineers and the Levee Boards overseeing these failed levees, will be the subject of extensive discovery that the plaintiffs and the Insurers will have to undertake.

This Court is well aware of the significant dispute amongst engineering and design experts who have been studying each levee breach on each canal in each flooded area for the last 15 months.  Determining the cause of flooding in particular neighborhoods (and ultimately of specific homes) will require extensive paper discovery, including interrogatories, documents productions and inspections, and deposition discovery – all of which will have to be coordinated by the multiple parties involved in the umbrella of litigation.  It is easy to predict

74774

that hundreds of thousands of pages of documents will be produced and reviewed, and hundreds of fact and expert witnesses deposed.  While it may well take some time for this discovery to hit full speed, the coordination and planning of the discovery alone is daunting.  To become embroiled in such sweeping discovery prior to the determination by the Fifth Circuit Court of Appeals of the "controlling question of law as to which there is a substantial ground for a difference of opinion" is, at best, premature, and at worst, unnecessarily burdensome and wasteful of the parties' and the Court's time and resources.

Moreover, the Insurers will suffer prejudice and expense just from being enmeshed in the towering mass of the Levee Board and MRGO cases, which involve complex and unrelated issues, the resolution of which may take years and undoubtedly will require extensive investigation and discovery.  Indeed, significant time and great expense will be, and already has been, required just to review the multitude of pleadings being filed every day in the umbrella of hurricane litigation other than *Chehardy, Vanderbrook* and *Xavier University*.

### 3.     Class Certification Hearings.

In the absence of a stay, plaintiffs may seek to commence class certification proceedings in the near future.  The class certification process would likely require substantial discovery, as well as extensive hearings regarding the propriety of this proceeding being certified as a class action.  Given the multitude of parties, the range of issues that may vary across the various flooded areas, and the different claims of various plaintiffs depending upon their insurer and homeowner policy, this will be a burdensome task that may ultimately prove to have been entirely unnecessary.

74774

4.      **Motion Practice.**

Embedded within each of the categories of pretrial activities above is the substantial likelihood of extensive motion practice that will impose a great burden on both the parties and the Court.  For example, the propriety of the plaintiffs' joinder of all of the insurers into one action remains to be tested.[3]  Improper joinder motions and motions to sever will have to be filed, briefed and heard.  Should the Insurers prevail on the appeal, this extensive motion practice is yet another stage of the litigation that will have been undertaken needlessly.

5.      **Expert Retention And Discovery.**

In order to prepare to try the issues of the cause of the flooding as the Court's ruling currently requires, all parties will be required to retain and consult with their own experts, as well as to prepare to contest experts retained by their opponents.  This retention and consultation is both enormously time-consuming and very expensive.  If the cause of the flooding is not relevant to the exclusions at issue, then it will not be necessary for the plaintiffs or the Insurers to engage in this burdensome and costly process.

**B.      Both Plaintiffs And Defendants Are Appealing This Court's November 26, 2006 Order**

In mutual recognition of the fundamental significance of this Court's ruling in these proceedings, both plaintiffs and the Insurers have sought permission from the Fifth Circuit Court of Appeals to appeal that Order.  In their petition, plaintiffs echoed the Insurers' contentions that "an immediate appeal of these orders may materially advance the ultimate termination of the litigation."  (Chehardy Plaintiffs' Petition for Permission to Appeal as filed in

---

[3]      *Comer v. Nationwide Mut. Ins. Co., et al.*, No. 1:05 CV 436, 2006 WL 1066645, at *2 (S. D. Miss. Feb. 23, 2006).

74774

the U.S. Fifth Circuit Court of Appeal December 11, 2006).  Plaintiffs request that the appellate court reverse the dismissal of their claims against State Farm, thereby maintaining it as a defendant in the proceeding.  Without such a reversal, State Farm need not participate in the *Chehardy* or *Vanderbrook* proceedings in general, and, specifically, in the complex, lengthy, expensive, time-consuming discovery that this Court's Order makes necessary for those insurers against whom the plaintiffs still have claims.  Only if the plaintiffs are successful in their appeal will it be necessary for State Farm to engage in these pretrial proceedings.  In the interim, pending the appeal, and without a stay, discovery and other pretrial proceedings will continue, and if plaintiffs prevail on their appeal, State Farm will be entitled to re-litigate these issues.  All of the steps in the pretrial process outlined above will have to be repeated for State Farm.  With a complete stay, that risk of duplication will be avoided, to the benefit of all parties and this Court.

C.     **Relief Sought.**

        The appealing Insurers and the plaintiffs have moved expeditiously to seek permission to appeal the Order that this Court has certified for review by the Fifth Circuit Court of Appeals.  If the petitions for permission to appeal are granted, the Insurers intend to request expedited consideration by the Fifth Circuit.  The Insurers respectfully request that during the pendency of these appellate proceedings – which involve a controlling question of law that may dispose of the central issue in the *Chehardy*, *Vanderbrook* and *Xavier University* litigation – this Court stay these proceedings until the Fifth Circuit Court of Appeals rules.[4]   Once the Fifth

---

[4]     Given the discrete coverage issues in the Xavier University case concerning the extent and nature of the damage caused by wind, Travelers Property Casualty Company of America does not seek a stay in that case with respect to matters other than the cause of the levee breaches.

74774

Circuit has ruled, the Court and the parties will be in the best position to determine what, if anything, is required to further litigate these cases in an effective and efficient manner.  Given the complexity of the issues and the significance of what is at stake, this stay will not cause undue hardship to the plaintiffs.  Instead, it will allow for the efficient, fair and orderly litigation of the claims brought by the plaintiffs and the defenses asserted by the defendants.

## IV.  CONCLUSION

For the reasons stated above, the Insurers respectfully request that the Court grant this Motion to Stay until the Fifth Circuit Court of Appeals has ruled.

Respectfully submitted,


/s/Steven W. Usdin
STEVEN W. USDIN, #12986
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
(504) 589-9700

*Attorneys for Defendant*
*Great Northern Insurance Company*


ROBERT I. SIEGEL
GIEGER, LABORDE & LAPEROUSE, LLC
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana  70139-4800
(504) 654-1307

*Attorneys for Defendant*
*Lexington Insurance Company*


- 11 -

74774

JUDY Y. BARRASSO, #2814
H. MINOR PIPES, III, #24603
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
(504) 589-9700

*Attorneys for Defendant*
*Liberty Mutual Fire Insurance Company*


JUDY Y. BARRASSO, #2814
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
(504) 589-9700

*Attorneys for Defendants*
*Allstate Insurance Company,*
*Allstate Indemnity Company and*
*Encompass Insurance Company*


ALAN J. YACOUBIAN
NEAL J. FAVRET
KERTH J. GRAVENER
JOHNSON, JOHNSON, BARRIOS &
 YACOUBIAN
701 Poydras Street, Suite 4700
New Orleans, Louisiana  70139-7708
(504) 528-3001

*Attorneys for Defendant*
*Auto Club Family Insurance Company*

- 12 -

74774

MAURA Z. PELLETERI
AMY M. SELTZER
KREBS, FARLEY & PELLETERI, P.L.L.C.
400 Poydras Street, Suite 2500
New Orleans, Louisiana  70130
(504) 299-3570

*Attorneys for Defendant*
*Aegis Security Insurance Company*


LAWRENCE J. DUPLASS
C. MICHAEL PFISTER
KELLY CAMBRE BOGART
JAIME M. CAMBRE
DUPLASS, ZWAIN, BOURGEOIS,
 MORTON, PFISTER & WEINSTOCK
3838 North Causeway Boulevard
Three Lakeway Center, Suite 2900
Metairie, Louisiana  70002
(504) 832-3700

*Attorneys for Defendant*
*The American Insurance Company*


WILLIAM J. WEGMANN, JR.            HOWARD B. KAPLAN
ORR ADAMS, JR.                     BERNARD, CASSISA, ELLIOTT & DAVIS
110 Veterans Memorial Boulevard    1615 Metairie Road, P. O. Box 55490
Suite 440                          Metairie, Louisiana  70055-5490
Metairie, Louisiana  70005         (504) 834-2612
(504) 833-3800

                                   *Attorneys for Defendant*
                                   *Lafayette Insurance Company*

- 13 -

74774

- 14 -

RALPH S. HUBBARD III, T.A.
JOSEPH P. GUICHET
SETH A. SCHMEECKLE
LUGENBUHL, WHEATON, PECK,
 RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
(504) 568-1990

*Attorneys for Defendants*
*The Hanover Insurance Company and*
*The Standard Fire Insurance Company*


NEIL C. ABRAMSON
NORA BOLLING BILBRO
PHELPS DUNBAR, L.L.P.
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
(504) 584-9200

*Attorneys for Defendant*
*Unitrin Preferred Insurance Company*

- 14 -

74774

- 15 -

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Defendant Insurers' Memorandum in Support of Motion to Stay Litigation Pending Appeal has been served upon all counsel of record by electronic noticing this 2nd day of January, 2007.

*/s/Steven W. Usdin*

74774