UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | * | CIVIL ACTION NO. 05-4182 |
| CONSOLIDATED LITIGATION | * | |
| | * | SECTION "K" |
| | * | |
| PERTAINS TO: | * | MAGISTRATE (2) |
| ALL LEVEE, MRGO | * | |
| RESPONDER CASES AND TO | * | JUDGE DUVAL |
| NO.    06-4389 | * | |
| 06-6099 | * | MAGISTRATE WILKINSON |
| | * | |

* * * * * * * * * * * * * * * * * *

PLAINTIFF'S MANUALLY FILED MEMORANDUM
ADDRESSING THE STATE'S CLAIMED
ELEVENTH AMENDMENT IMMUNITY, AND
WHY PLAINTIFFS ARE ENTITLED TO DISCOVERY

MAY IT PLEASE THE COURT:

In this Memorandum plaintiffs will attempt to persuade the Court that the Eleventh Amendment to the U.S. Constitution has been badly misconstrued by the judiciary, and that it simply does not apply under the facts and circumstances of this case.

Alternatively, plaintiffs will attempt to persuade the Court why they require discovery on the issue of the State's waiver of Eleventh Amendment immunity.

## THE 11TH AMENDMENT HAS BEEN BADLY MISCONSTRUED BY THE JUDICIARY, AND DOES NOT APPLY UNDER THE <u>FACTS AND CIRCUMSTANCES OF THIS CASE</u>

Sovereign immunity was waived by the State of Louisiana in the Louisiana Constitution of 1974, and more particularly in Article XII §10(A),[1] and given that waiver, neither the Eleventh Amendment nor the State venue statute, LSA-R.S. 13:5106(A),[2] defeats this Court's Article III original jurisdiction founded on a federal question under 28 U.S.C. 1331. The Eleventh Amendment does not defeat federal jurisdiction when there has been "a surrender of immunity" to quote Federalist 81, cited in articulating the rule in *Principality of Monaco v. State of Mississippi*, 292 U.S. 313, 322 (1934). The issue of sovereign immunity is an essential postulate for jurisdiction under Article III, but is no bar, where as here, the State's immunity is waived as it was by adoption of the Louisiana Constitution of 1974, and the State has consented to be sued.

By its literal terms the Eleventh Amendment bars actions on diversity – cases brought by citizens of another state or a foreign state against a state. It does not by its own terms defeat original jurisdiction, or even diversity, when brought by citizens of the same state as the state sued. The original jurisdiction of the Federal courts under Article III, Section 2[3], survived the subsequent adoption of the Eleventh Amendment. A federal court has federal question jurisdiction over claims against a state. This is not to say that sovereign immunity is trumped by Article III in federal question cases, since at least five

---

[1] "Section 10(A) No Immunity in Contract and Tort. Neither the State, a State agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property."
[2] "No suit against the State or a State agency or political subdivision shall be instituted in any Court other than a Louisiana State Court."
[3] "The judicial power shall extend to all cases, in law or equity, arising under the Constitution, the laws of the United States, and the treaties made, under their authority."

of nine justices on the Supreme Court have so held, against vigorous dissents[4], in a string of cases, ending with *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). Both sides of the debate agree, however, that there is no bar to federal jurisdiction when the immunity is surrendered, waived or the state consents to be sued, or Congress abrogates the state immunity.

The Eleventh Amendment was adopted by Congress in response to the holding in *Chisolm v. Georgia*, 2 Dall. 419, 1 L.Ed. 440 (1793), that the Supreme Court had diversity jurisdiction over suit by a North Carolina citizen against the State of Georgia. It was enacted in preference to other measures which would have had a broader effect.[5] As Chief Justice Marshall viewed the Eleventh Amendment then, it did not restrict federal question jurisdiction under Article III, "the judicial power was extended to all cases arising under the Constitution or laws of the United States, without respect to parties." *Cohens v. Virginia,* 19 U.S. (6 Wheat ) 264, 412 (1821).

Restrictions on suits against states do not rest on the Eleventh Amendment at all. When enacted, the State Constitutions and Charters of the various states contained sovereign immunity clauses, precluding actions by a state's own citizens. In the Judiciary Act of 1786, the particular laws of the United States invoked by Article III, federal jurisdiction was made concurrent with state court jurisdiction. State immunity was thus ingrained in Article III. As the Supreme Court in *Monaco v. Mississippi, supra*, said of

---

[4] Eg. Atascadero State Hospital v, Scanlon 473 U.S. 234, 247 (1985) (dissenting);   *Welch v. Texas Department of Highway & Public Transportation,* 483 U.S. 468, 496 (1987) (dissenting);  *Dellmuth v. Muth,* 491 U.S. 223, 233 (1989)(dissenting); *Port Authority Trans-Hudson Corp v. Feen,* 495 U.S., 299, 309 (1990)(concurring). See *also Pennsylvania v. Union Gas Company,* 491 U.S. 1, 23 (1989)

[5] If the Framers had meant the Amendment to bar federal-question suits as well, they could not only have made their intentions clearer very easily, but could simply have adopted the first post- *Chisholm* proposal, introduced in the House of Representatives by Theodore Sedgwick of Massachusetts on instructions from the Legislature of that Commonwealth. Its provisions would have had exactly that expansive effect." Dissent, *Souter, J . Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996)

federal jurisdiction under Article III, "(b)ehind the words are essential postulates which limit and control". The essential postulate was said to be justiciability. "There is also the postulate that the States of the Union still possessing attributes of sovereignty shall be immune from suit without their consent." *Id.* In a more recent case it was said that "the principle of sovereign immunity [reflected in the Eleventh Amendment ] is a constitutional limitation on federal judicial power established in *Article III. . . . sovereign immunity that may be waived*"(Emphasis Added). *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 98, 99 (1984).

Thus the question is whether Louisiana has surrendered its sovereign immunity.

Article XII, § 10(A) of the Louisiana Constitution of 1974 is entitled: "**No Immunity in Contract and Tort".** It states:

> Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.

Article XII, §10(A) is such a waiver. In the context that sovereign immunity was an 'essential postulate that the State of the Union still possessed', and thus inherently restricted federal jurisdiction, the adoption of the Louisiana Constitution of 1974 lifted the bar.

This is clear from the language of the Act of Congress by which its jurisdiction was conferred, the Judiciary Act of 1789. The words were these: 'The circuit courts of the United States shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature at common law or in equity, . . . arising under the Constitution or laws of the United States, or treaties,' etc.-'Concurrent with the courts of the several States'. Federal Courts had no jurisdiction the state courts did not have.

Thus Congress, in legislating to carry the Constitution into effect, did not intend to invest its courts with any new and strange jurisdictions. The state courts had no power to entertain suits by individuals against a state without its consent.  Sovereign immunity barred such actions. Thus the Circuit Court, having only concurrent jurisdiction, had no such power.  When a State constitution lifts the proscription, however, the restriction is swept aside and should provide no bar to federal question jurisdiction.  After the adoption of the Louisiana Constitution of 1974, there simply is no sovereign immunity bar to federal court jurisdiction over the State of Louisiana for adjudication of a federal question. The restriction survives only in diversity cases – suit by citizens of another state or foreign state, barred by a literal reading of the Eleventh Amendment.

Neither *Perez v. Region 20 Educ. Service Center,* 307 F3d 318 (5th Cir. 2002), nor *Mohlor v. Mississippi* , 782 F2d 1291 (5th Cir. 1986), support a contrary conclusion. Both recognized the rule that a state may not be sued in federal court unless "the state consents to suit or the Congress validly abrogates sovereign immunity."  Perez turned on whether Region 20 was an arm of the state of Mississippi. No repeal of immunity was implicated.  *Mohlor v. Mississippi* cited the absence of "a valid statutory enactment or to official action by the state consenting to be suit in federal court or waiver or its immunity." *Id.*  "Therefore, no exception to the Eleventh Amendment bar applies in this case."

Whether the absence of waiver of state sovereign immunity or the state's consent to suit is a predicate to federal question jurisdiction has been before the Supreme Court on a number of times.  *Cohen v. Virginia, supra,* is one, the first, such occasion. The question was before the Supreme Court again in *Hans v. Louisiana,* 134 U.S. 1 (1890).

"The suability of the state without its consent was a thing unknown to the law." *Id.* p. 15. Hans was applied to preclude suits against the state in admiralty in *Ex parte New York* [No. 1.] 256 U.S. 490 (1921). Again "(t)hat a state may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given" *Id.*

In 1980 four (4) Justices argued that Hans was incorrectly decided, that the Eleventh Amendment was intended only to deny jurisdiction against states in diversity cases and that Hans and its progeny should be overruled. Hans survived, five to four, and withstood challenge in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), again by a five to four decision with the four dissenting justices believing Hans was wrongly decided. *Id.*

The Eleventh Amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Although the text of the Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, "we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ⋯ which it confirms." *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991). That presupposition, first observed over a century ago in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), has two parts: first, that each

State is a sovereign entity in our federal system; and second, that " '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent,' "*Id* at 13, 10 S.Ct. at 506 (emphasis deleted), quoting The Federalist No. 81, p. 487 (C. Rossiter Ed. 1961) (A. Hamilton). See also *Puerto Rico Aqueduct and Sewer Authority, supra,* at 146 ("The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity"). For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States "was not contemplated by the Constitution when establishing the judicial power of the United States." *Hans, supra,* at 15, 10 S.Ct. at 507.  It restricts the Court's diversity jurisdiction under Article III, which otherwise affords federal jurisdiction to "all cases in law and equity, arising under the Constitution , the laws of the United States and treaties".  It does not defeat federal question jurisdiction under the Judiciary Act of 1786, and its progeny.

Sovereign Immunity was waived by the State of Louisiana;  the State and its agency are susceptible to suit by citizens of Louisiana here in this Court.

**ALTERNATIVELY, THE STATE DEFENDANTS' MOTIONS SHOULD
BE DENIED, BECAUSE THE MATTERS WHICH PLAINTIFFS ARE
SEEKING TO LITIGATE ARE MATTERS ON WHICH CONGRESS HAS
ALREADY ABROGATED THE STATE'S 11TH AMENDMENT
IMMUNITY, INVOLVING FLOOD CONTROL, HURRICANE
PROTECTION, AND DISASTER PREPARTION AND RESPONSE, AND
PLAINTIFFS SHOULD BE PERMITTED TO CONDUCT DISCOVERY
CONCERNING THE FEDERAL, STATE AND LOCAL LEGISLATIVE
SCHEMES, WHICH HAVE ESTABLISHED "PARTNERSHIPS"
BETWEEN AND AMONG THE FEDERAL, STATE AND LOCAL
GOVERNMENTS**

The Court should take judicial notice of the fact that this case involves at least three (3) areas which have resulted (or should have resulted) in "partnerships" between

and among federal, state and local governmental agencies, namely:  (1) Flood Control, (2) Hurricane Protection and (3) Disaster Preparation and Response.

Since Hurricane KATRINA much has been written about the many millions of federal dollars which have poured into Louisiana and New Orleans since Hurricane BETSY in 1965, earmarked for Flood Control and Hurricane Protection projects, which failed so miserably in KATRINA.

The case of <u>AT&T Communications v. Bell South Telecommunication Inc.</u>, 238 F.3d 636 (5th Cir. 2001), contains an exhaustive study of the jurisprudence since <u>College Savings Bank v. Florida Prepaid Post-Secondary Education Expense Board</u>, 527 U.S. 666, 119 S.Ct. 2219 (1999), and concluded that ". . . after <u>College Savings</u>, Congress may still obtain a non-verbal voluntary waiver of a State's Eleventh Amendment immunity, if the waiver can be inferred from the State's conduct in accepting a gratuity after being given clear and unambiguous statutory notice that it was conditioned on waiver of immunity." 238 F.3d at p. 645.  Additionally, in <u>Pace v. Bogalusa City School Board</u>, 403 F.3d 272 (5th Cir. 2005), the Court stated as follows in finding that the State of Louisiana and its agency waived 11th Amendment immunity by virtue of receipt of federal funds:

> "If waiver results from participation in a Spending clause program, the program must be a valid exercise of Congress' spending power;  the waiver condition must satisfy the clear statement rule (thereby ensuring that the State's waiver is "knowing");  and the program must be non-coercive (automatically establishing that the waiver is "voluntary")." 403 F.3d at p. 279.

Plaintiffs respectfully submit that they should be permitted to explore what "strings" may have been attached to the federal monies bestowed upon the State of Louisiana, and its agencies, both before and after Hurricane KATRINA.

In the "Post 9-11" world, Disaster Preparedness and Response has been (or should have been) at the forefront of Federal, State and local efforts to minimize the effects of natural or man-made disasters. When Governor Blanco requested, by letter dated August 27, 2005, to the President, through the FEMA Region VI Regional Director, that the President declare an emergency for the State of Louisiana, several things should have been "triggered", including the State of Louisiana and local Response Plans to get people in flood plains, and particularly those who did not have the means to fend for themselves, to higher ground, among other things that should have been prepared for long before catastrophe was imminent. Among the laws that define the federal role in emergency response, law enforcement and disaster relief is the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. §5121, et seq.), which is designed to provide a means by which the federal government may supplement state and local resources in major disasters or emergencies, where those State and local resources have been overwhelmed. In the words of the American Bar Association, Hurricane Katrina Task Force Subcommittee Report 13, 14-18 (Feb. 2006), reprinted in part in Farber, Chen, Disasters and the Law, Katrina and Beyond, Aspen Publishers (2006):

> "The federal government has interjected itself into the state and local government emergency planning process by conditioning the receipt of federal preparedness grant funding on review of state and urban area preparedness plans. This represents a federal exercise of its Tax and Spend power in the Constitution in order to encourage state compliance with such federal requirements."

Plaintiffs respectfully submit that they should be allowed to conduct discovery in order to explore what conditions may have been attached to the federal monies which have flowed into the State's coffers both before and after KATRINA.

Respectfully submitted,

S/Ashton R. O'Dwyer, Jr.
**Ashton R. O'Dwyer, Jr.**
**In Proper Person**
**Law Offices of Ashton R. O'Dwyer, Jr.**
Bar No. 10166
One Canal Place
365 Canal Street, Suite 2670
New Orleans, LA 70130
Tel.: (504) 561-6561
Fax. (504) 561-6560

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

**S/Ashton R. O'Dwyer, Jr.**