UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § § § § | CIVIL ACTION No. 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO:  MRGO, *Reed*, No. 06-2152          MRGO, *Ackerson*, No. 06-4066 | § § § § | |

### DREDGING DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL AND AMENDING COMPLAINT

The Bean and Stuyvesant Defendants[1] and the Limitation Dredgers[2] (together, the "Dredging Defendants") submit the following Opposition to Plaintiff's Motion for Leave to File First Supplemental and Amending Complaint (Doc. No. 2236) pursuant to the Court's order of December 20, 2006 (Doc. No. 2317).[3]

---

[1] Bean Dredging, L.L.C.; C.F. Bean L.L.C.; Bean Stuyvesant, L.L.C.; Stuyvesant Dredging Co.; Stuyvesant Dredging, Inc.; Royal Boskalis Westminster N.V., in their own right and as successors to Bean Dredging Corp.; C.F. Bean Corp.; Bean Horizon Corp.; and Bean Horizon L.L.C.

[2] Defendants Gulf Coast Trailing Co.; T.L. James & Co., Inc.; TLJIC, L.L.C., on its own behalf and as successor by merger to T.L. James Marine, Inc. and T.L. James Marine, L.L.C.; Great Lakes Dredge & Dock Co.; Great Lakes Dredge & Dock Co., L.L.C. of Louisiana; Great Lakes Dredge & Dock Corp. of Delaware; Natco Dredging Limited Partnership; Great Lakes Trailing Co.; Weeks Marine, Inc.; Mike Hooks, Inc.; Luhr Bros. Inc.; Pine Bluff Sand and Gravel Co.; and King Fisher Marine Service, L.P.

[3] This Opposition is filed on the merits by the Bean and Stuyvesant Defendants. It is joined by the Limitation Dredgers as *amici curiae* because the filing of their Limitation petitions stayed all other lawsuits by operation of law. *See* 46 U.S.C. App. § 185; Fed. R. Civ. P., Supp. Admiralty Rule F(3). As

1

Plaintiffs' proposed amendments change nothing with respect to the Dredging Defendants. Plaintiffs' original complaints failed to allege what the Dredging Defendants did wrong, and the proposed amendments do not fix the problem. Plaintiffs now claim that the Defendants violated various state and federal rules governing the U.S. Army Corps of Engineers and its regulation of dredging projects. It would be impossible, however, for the Dredging Defendants to violate rules that govern the Corps—rules that make no mention of, and impose no duty on, dredgers. Plaintiffs also seek to summarily allege that the Dredging Defendants deviated from the Corps' project requirements. Proposing this allegation borders on sanctionable. It is not true as a matter of fact, as shown by the Corps' issuance of satisfactory certificates of completion, which were attached by the Bean and Stuyvesant Defendants to their motion to dismiss.[4] But regardless, Plaintiffs' claim that they need discovery to properly allege this claim is unavailing,[5] and the bare allegation that the "Dredging Defendants" departed from Corps' requirements in some unspecified manner is too conclusory to state a claim against fourteen entities for dozens of dredging projects undertaken over a thirteen-year period.

As amended, Plaintiffs' proposed complaints still seek to hold private contractors liable for executing the will of Congress and performing dredging operations for the Corps—claims that are barred by *Yearsley* and *Spearin*.[6] And Plaintiffs' claims still would be barred by the

---

a practical matter, Plaintiff's allegations would be equally futile as to all of the Dredging Defendants, but technically, Plaintiff's motion to amend should be resolved based on whether the proposed amendment states a claim only as to the Bean and Stuyvesant Defendants.

    *See* Rule 12(b)(6) Motion to Dismiss and/or Rule 56 Motion for Summary Judgment Based Upon the Affirmative Defense of Peremption Under La. R.S. 9:2772 (Doc. No. 1155).

    *Oreman Sales, Inc. v. Matsushita Elec. Corp. of Am.*, 768 F. Supp. 1174, 1180 (E.D. La. 1991); *Muhammad v. Louisiana*, No. 99-3742, 2000 WL 1511181, at *6 (E.D. La. Oct. 6, 2000).

    *Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18 (1940); *United States v. Spearin*, 248 U.S. 132 (1918).

Flood Control Act, discretionary function exception, and principles of shared immunity,[7] or in the alternative, the exclusivity provision of the Suits in Admiralty Act, which precludes Plaintiffs' attempt to sue the Dredging Defendants for actions taken on the Government's behalf and under its control.[8] Plaintiffs' motion for leave to amend should be denied and all claims against the Bean and Stuyvesant Defendants dismissed with prejudice.

## BACKGROUND

In August 2006, the Dredging Defendants filed six motions to dismiss. Plaintiffs filed responses in opposition in late November, but then they waited until December 14, 2006—the afternoon before a long-scheduled hearing on these motions—to request leave to amend.[9]

Plaintiffs now propose to add the following allegations of negligence:

> Defendants failed to follow requirements of 33 CFR Parts 335-38, particularly 33 CFR 336.1(c)(4) and 33 CFR 320.4(b) and Executive Order No. 11990 made applicable thereby. The Dredging Defendants deviated from and/or failed to execute their dredging activities in the manner required by the Army Corps of Engineers and by the Nationwide Permits, specific permits, or general authorizations for dredging issued by or obtained by the Army Corps of Engineers pursuant to 33 CFR §§ 337.5 and 338.2. Furthermore, all defendants failed to follow State requirements (made applicable by 33 CFR 337.2) including those contained in Chapter 7, Sections 701 and 707 of the Louisiana Administrative Code related to dredging activities.[10]

The provisions on which Plaintiffs rely are policies and procedures that govern the Corps' regulatory power over discharges of dredged material into waters of the United States and the ocean. As Plaintiffs themselves explain, the regulations in 33 CFR Parts 335 through 338

---

[7] *See* Dredging Defendants' Immunity Motion to Dismiss (Doc. No. 1160).

[8] *See* Dredging Defendants' Suits in Admiralty Act Motion to Dismiss (Doc. No. 1161).

[9] Plaintiffs propose to amend their jurisdictional allegations to rely on 28 U.S.C. § 1333 (general maritime jurisdiction) and 46 U.S.C. app. § 740 (Admiralty Extension Act). Pls.' Proposed Am. ¶ 4. But any delay attributable to the six-month waiting period for AEA claims against the Government cannot justify the last minute assertion of new claims against the Dredging Defendants.

[10] Pls.' Proposed Am. ¶ 32.

3

apply to actions taken *by the Corps*, not by private parties.[11]

The regulations on which Plaintiffs rely are as follows:

- **33 CFR § 336.1(c)(4)** provides that avoiding unnecessarily harmful effects on wetlands is one of several "factors [to be used], as appropriate, to evaluate the discharge of dredged material into waters of the U.S." This provision also directs the Corps to "follow the guidance in" 33 CFR § 320.4(b) and Executive Order 11990.

- **33 CFR § 320.4(b)** provides that permits will not be granted for activities that damage important wetlands, *unless* the Corps concludes that the benefits of the project outweigh the damages. This provision refers to the "additional requirements on wetlands considerations" stated in Executive Order 11990.

- **Executive Order 11990** directs federal agencies to minimize harm to wetlands. To that end, agencies "shall consider" various factors "relevant to a proposal's effect on the survival and quality of the wetlands."

- **33 CFR § 337.2** directs the Corps to "cooperate to the maximum extent practicable with state agencies to prevent violation of Federally approved state water quality standards and to achieve consistency to the maximum degree practicable with an approved coastal zone management program."

This last provision, 33 CFR § 337.2, requires the Corps to consider approved state coastal management laws, like Louisiana's Coastal Resources Program ("LCRP").[12] If a state agency seeks more stringent conditions than necessary to satisfy federal standards, however, the Corps is obliged only to "accommodate the state's concerns to the extent practicable."[13]

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 15(a), leave to amend is properly denied for futility.[14] "When a party advances the argument that amendment is futile, courts usually deny leave on the ground

---

[11] See Pls.' Mem. at 6-7.

[12] *See* La. Admin. Code, title 43, part I, §§ 701, 707; *see also* Pls.' Mem. at 9-13 (discussing Louisiana law).

[13] *See* 33 CFR § 377.2(b).

[14] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

4

that the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint. The suggestion that an amendment is futile requires the court to analyze the sufficiency of the complaint. . . . Leave to amend should be denied for futility if the proposed amendment is clearly insufficient on its face."[15]

## ARGUMENT

### I. Plaintiffs Cannot Sue the Dredging Defendants for Alleged Regulatory Missteps by the Corps.

The Dredging Defendants cannot be held liable for supposed mistakes made by the Corps in the regulatory process, and it would be futile to allow Plaintiffs to plead otherwise. It is impossible for the Dredging Defendants to violate policies and procedures governing the Corps' conduct of its own decision-making process, particularly aspirational rules designed to minimize environmental damage but which do not actually prohibit any activity absolutely.[16] Even if committed by the Corps, such "negligence" could not be the legal cause of Plaintiffs' damages. As Plaintiffs explain, there must be "a reasonably close causal connection between the offending conduct and the resulting injury,"[17] and one court already has held that defendants whose dredging allegedly contributed to coastal erosion may not be held liable for damages caused by Hurricane Katrina.[18] But even if Plaintiffs could overcome this hurdle, the Dredging Defendants are not responsible for the Corps' alleged regulatory missteps.

---

[15] *In re Mastercard Int'l, Inc. Internet Gambling Litig.*, No. 00-MD-1321, 2004 WL 287354, at *3-4 (E.D. La. Feb. 12, 2004) (Duval, J.) (internal citations omitted).

[16] *See, e.g.*, 33 CFR § 337.2 (state laws should be accommodated "to the extent practicable"); 33 CFR § 336.1(c)(4) (unnecessary wetlands damage "should be discouraged"); 33 CFR § 320.4(b) (damage should be cost-benefit justified); Executive Order 11990 (agencies shall "minimize" harm to wetlands).

[17] Pls.' Mem. at 4 (quoting *Galentine v. Estate of Stekervetz*, 273 F. Supp. 2d 538, 544 (D. Del. 2003) and Thomas Schoenbaum, 1 *Admiralty & Maritime Law* § 5.2 at 170 (2001 ed.)).

[18] *Barasich v. Columbia Gulf Transmission Co.*, No. 05-4161, 2006 WL 3333797, at *17 (E.D. La. Sept. 28, 2006) (Vance, J.) (dismissing suit claiming that hurricane damages were caused by dredging

Plaintiffs seek to allege that "Defendants" did not follow the policies and procedures governing the disposal of dredged material. Any such violation, however, clearly is attributable to the Corps, which designs, approves and directs the dredging projects—not the Dredging Defendants, who merely execute the Corps' wishes. Plaintiffs argue, "the fact that the Dredging Defendants are independent contractors do [sic] not relieve them from having to follow the law."[19] This begs the question whether the laws on which Plaintiffs rely are directed at the Dredging Defendants in the first place. They plainly are not. Plaintiffs' own summary of the regulatory framework demonstrates that these are procedural and substantive requirements for the Corps to follow in deciding whether to undertake an activity, and how. As the Supreme Court recently observed, "[i]n deciding whether to grant or deny a permit, the [Corps] exercises the discretion of an enlightened despot, relying on such factors as 'economics,' 'aesthetics,' 'recreation,' and 'in general, the needs and welfare of the people.'"[20] These are matters for the Corps' consideration, not free-standing obligations that the Dredging Defendants are capable of violating.

Plaintiffs' allegation that "all defendants" failed to follow state law requirements for disposing of dredged spoil is even more remote from the Dredging Defendants' activities. Here too Plaintiffs are making a futile attempt to fault the Dredging Defendants for the Corps' alleged misconduct. Plaintiffs claim that state law requirements were "made applicable by 33 CFR

---

pipeline canals in marshlands because plaintiffs could not "demonstrate as a matter of law that defendants had a duty to these hundreds of thousands of plaintiffs to protect them from the results of coastal erosion allegedly caused by operators that were physically and proximately remote from plaintiffs or their property").

[19]    Pls.' Mem. at 13.

[20]    *Rapanos v. United States*, 126 S. Ct. 2208, 2214 (2006) (quoting 33 CFR § 320.4(a)).

337.2."[21] but § 337.2 does not effect a wholesale importation of the LCRP guidelines into Corps dredging permits. It requires the Corps to *consider* approved state coastal management laws, and even if a state agency objects—which Plaintiffs do not claim happened here—the Corps is obliged only to "accommodate the state's concerns to the extent practicable."[22] More to the point, even if the *Corps* improperly exercised its discretion with regard to one or more state guidelines, that would not constitute negligence *by the Dredging Defendants*. In any conflict between federal and state authorities over the construction, operation, and maintenance of the MRGO, the Dredging Defendants would have been mere bystanders.

## II. Plaintiffs Cannot State a Claim with Baseless Conjecture that the Dredging Defendants Might Have Departed from Corps Standards in Some Unspecified Way.

In a desperate, eleventh-hour attempt to keep the Dredging Defendants in this case, Plaintiffs seek to allege that the Dredgers deviated from project requirements set by the Corps under general authorizations or job-specific permits. This is patently false as a matter of fact, and Plaintiffs' counsel knows it.[23] As part of their Rule 12(b)(6) Motion to Dismiss and/or Rule 56 Motion for Summary Judgment Based Upon the Affirmative Defense of Peremption Under La. R.S. 9:2772 (Doc. No. 1155), the Bean and Stuyvesant Defendants filed Corps certificates demonstrating the satisfactory completion of each and every MRGO project they undertook.[24]

Plaintiffs' brief makes no attempt to explain how it possibly could be true that the Bean

---

[21] Pls.' Proposed Am. ¶ 32.

[22] § 377.2(b). Moreover, underlying this federal "practicability" hedge, the LCRP guidelines themselves only require compliance with environmental standards "to the maximum extent practicable." *See* Pls.' Mem. at 10-12 (summarizing Coastal Use Guidelines 1.6, 1.7, and 1.10 as directives to be followed "to the maximum extent practicable").

[23] *See* Fed. R. Civ. P. 11; 28 U.S.C. § 1927.

[24] If Plaintiff were to persist in making this allegation as part of a claim in the Limitation proceedings, the Limitation Dredgers will demonstrate at the appropriate time that this allegation is equally untrue as to each of them.

7

and Stuyvesant Defendants (or any of the other Dredgers) deviated from Corps specifications when the Corps approved their performance on every job. Quite the contrary, Plaintiffs essentially admit that this allegation is baseless by arguing that they need discovery for support because "it is impossible to know what [the contracts] required the Dredging Defendants to do."[25] Plaintiffs knew enough to allege a breakdown of MRGO projects by year, Dredging Defendant, and cubic yards dredged,[26] and, at least as to the Bean and Stuyvesant Defendants, should have known that the contractual requirements were complied with every time. Plaintiffs cannot keep the Dredging Defendants in this case with admittedly unfounded assertions of "negligence" and then seek a discovery fishing expedition to support their baseless claim, particularly where evidence *already in the record* demonstrates that the proposed allegation is patently false.[27]

In any event, Plaintiffs cannot save their negligence claim with the passing assertion that every Dredging Defendant departed from unidentified Corps specifications on numerous jobs over a thirteen-year period. It is well-established that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to

---

[25] Pls.' Mem. at 13.

[26] *See* Compl. ¶ 17.

[27] *See Oreman Sales, Inc. v. Matsushita Elec. Corp. of Am.*, 768 F. Supp. 1174, 1180 (E.D. La. 1991) ("Under the amended federal rules, a plaintiff may no longer file a conclusory complaint not well-grounded in fact, conduct a fishing expedition for discovery, and only then amend its complaint in order finally to set forth well-pleaded allegations."); *Muhammad v. Louisiana*, No. 99-3742, 2000 WL 1511181, at *6 (E.D. La. Oct. 6, 2000) (refusing to "grant plaintiff additional time to conduct a fishing expedition to develop a discrimination case" where plaintiff had filed two complaints already, and asked for discovery to support allegation of racial discrimination); *cf.* Order Granting Contractors' Motion to Dismiss, *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, slip op. at 10 (Doc. No. 2142) (E.D. La. Dec. 8, 2006) (refusing to allow discovery to determine whether fraud had been committed where "there is neither any allegation of fraud in the various complaints, nor is there any competent evidence presented to the Court that would create a genuine issue as to a material fact or convince the Court to allow discovery on this issue"); Order Granting Engineers' Motion to Dismiss, *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, slip op. at 14 (Doc. No. 2148) (E.D. La. Dec. 8, 2006) (same).

dismiss"[28] Plaintiffs have not identified the nature of the Dredging Defendants' purported negligence, they have not tendered a complaint supporting any connection between any such negligence and their damages, and they have no basis for expanding their allegations consistent with Rule 11.

Plaintiffs argue that the Dredging Defendants must have done *something* wrong because otherwise "why did the damage to wetlands and soil erosion occur?"[29] Plaintiffs' own complaint provides the answer, and it has nothing to do with negligence by the Dredging Defendants. Plaintiffs allege that this damage occurred because the Corps followed orders from the U.S. Congress to cut a channel through the marshes of lower St. Bernard Parish more than 40 years ago.[30] The existence of the MRGO allegedly caused damaging saltwater intrusion, which caused erosion in and around the MRGO, which necessitated further congressionally-mandated dredging to maintain the channel, which allegedly caused further wetlands damage.[31] Plaintiffs even concede that adverse environmental effects already were evident as early as the late 1960s[32]—more than twenty years before the first Dredging Defendant project about which Plaintiffs now complain.

Moreover, as noted above, the aspirational regulations allegedly violated by the Corps are designed to *minimize* environmental degradation, not eradicate it. Even if all of these regulations

---

[28] *Rios v. City of Del Rio*, 444 F.3d 417, 421 & n.2 (5th Cir. 2006) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) and citing additional cases); *see also Jones v. Alcoa, Inc.*, 339 F.3d 359, 363 (5th Cir. 2003) (court need not accept plaintiff's assertion that a particular job assignment was a term of employment contract where allegation "is devoid of detail, let alone any factual basis to support [that] conclusion").

[29] Pls.' Mem. at 14.

[30] Compl. ¶¶ 7-8.

[31] *Id.* ¶¶ 11-13; *see also* note 34, *infra*.

[32] Compl. ¶ 9.

9

governed the Corps for the entire history of the MRGO (which is not the case[33]) and even if Congress had never ordered the Corps to continue maintaining and operating the MRGO (which it did[34]), the Corps could have complied with these regulations to the letter and the wetlands damage might still have occurred—again, all without any negligence on the part of the Dredging Defendants.

Finally, Plaintiffs contend that the Dredging Defendants "failed to follow the dictates of reasonableness and prudence." Pls.' Mem. at 5, 14. This vacuous assertion misses the point of the Dredging Defendants' core argument for dismissal: if any unreasonable or imprudent behavior is attributable to anyone, it is to Congress and the Corps, not the Dredging Defendants. Plaintiffs still have not explained what the Dredging Defendants did wrong, making it futile to grant leave to amend.

## CONCLUSION

For the foregoing reasons, the Dredging Defendants respectfully request that the Court deny Plaintiff's motion for leave to file an amended complaint and dismiss all claims against the Bean and Stuyvesant Defendants with prejudice.

---

[33] Executive Order 11990, for example, was issued on May 24, 1977, and Plaintiffs note that the Coastal Zone Management Act was enacted in 1972 and that Louisiana's coastal management program was not enacted until 1978 or federally approved pursuant to the CZMA until 1980. Pls.' Mem. at 7, 9.

[34] *See, e.g.*, Pub. L. 108-7, 117 Stat. 11 (2003) (appropriation for MRGO maintenance dredging); Pub. L. 104-206, 110 Stat. 2984 (1996) (same); Pub. L. 102-104, 105 Stat. 510 (1991) (directing the Secretary of the Army to "construct and maintain bank stabilization measures" for the MRGO); *see also* Flood Control Act of 1965, Pub. L. No. 89-298, § 204, 79 Stat. 1073, 1077 (1965) (authorizing construction of flood control projects with material dredged from the MRGO).

                    Respectfully submitted:

                    /s/ Terrence L. Brennan
                    Terrence L. Brennan (Bar Roll No. 3434)
                    William E. Wright, Jr. (Bar Roll No. 8564)
                    Kelley E. Theard (Bar Roll No. 29445)
                              of
                    Deutsch, Kerrigan & Stiles, L.L.P.
                    755 Magazine Street
                    New Orleans, Louisiana 70130
                    Telephone: (504) 581-5141
                    Facsimile: (504) 566-1201
                    tbrennan@dkslaw.com
                    wwright@dkslaw.com
                    ktheard@dkslaw.com
                    Attorneys for Bean Dredging L.L.C.,
                    C. F. Bean, L.L.C., Royal Boskalis
                    Westminster N.V., Stuyvesant Dredging
                    Company, Stuyvesant Dredging, Inc.
                    And Bean Stuyvesant L.L.C.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 5th day of January, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

1)     jfnevares-law@microjuris.com

2)     dbecnel@becnellaw.com

3)     csalas@salaslaw.com

4)     A.J. Rebaneck

                                                        /s/ Terrence L. Brennan