# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In Re: KATRINA CANAL BREACHES**<br>**CONSOLIDATED LITIGATION** | § <br> § <br> § <br> § <br> § <br> § | **CIVIL ACTION**<br><br>**NO. 05-4182**<br><br>**SECTION "K"**<br>**JUDGE STANWOOD R. DUVAL, JR.** |
| **PERTAINS TO:  06-2152 (REED)**<br><br>**MRGO** | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | **MAG. DIV. 2**<br>**MAG. JOSEPH C. WILKINSON, JR.** |

## MANSON CONSTRUCTION CO.'S OPPOSITION *AMICUS CURIAE* TO THE *REED* PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Defendant Manson Construction Co. ("Manson"), as *amicus curiae*, opposes the *Reed* plaintiffs' motion for leave to allow them to file their amended complaint (Rec. Doc. 2236).

**I.      INTRODUCTION**

On the eve of this Court's December 15, 2006, hearing on Manson's and the Dredging Defendants' Rule 12 motions to dismiss the *Reed* plaintiffs' claims (Rec. Docs. 1160 & 1176), the *Reed* plaintiffs moved this Court to grant them leave to file their amended complaint. This was despite Manson's and other Dredging Defendants' previously filed petitions according to the Limitation of Liability Act, 46 U.S.C. §§ 181, *et seq.*, prompted by claims of their alleged negligent dredging on the Mississippi River Gulf Outlet ("MRGO"). This Court should deny the

*Reed* plaintiffs' motion for, at a minimum, four reasons: (1) the filing of the amended complaint violates 46 U.S.C. § 185 and Rule F(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules"); (2) the proposed amended complaint is untimely; (3) regardless of the foregoing, the proposed amended complaint is futile because it states no new claims against Manson and the other Dredging Defendants but instead only describe regulations that purportedly apply to the U.S. Army Corps of Engineers (the "Corps of Engineers"); and (4) the regulations cited in the proposed amended complaint further evidence why these claims are barred by the discretionary function exception to the Federal Tort Claims Act and/or Suits in Admiralty Act.  For these reasons, Manson urges this Court to deny the *Reed* plaintiffs' motion.

## II.   ANALYSIS

### 1.   Plaintiffs' Proposed Amended Complaint Violates the Limitation of Liability Act.

As an initial matter, the *Reed* plaintiffs' motion for leave to amend their complaint should be denied because it violates the Limitation of Liability Act, 46 U.S.C. §§ 181 *et seq.* and Supplemental Rule F(3).   Specifically, Manson and every other Dredging Defendant, except Bean Dredging, previously filed their petitions for limitation and posted security for any claims filed in their respective limitations.[1]   46 U.S.C. § 185 of the Act states that upon filing the limitation and the posting of security, "all claims and proceedings against the owner with respect to the matter in question shall cease."   Supplemental Rule F(3) mirrors the statutory language of 46 U.S.C. § 185 and also states that once the owner files its petition for limitation and posts security, all actions against the vessel owner "shall cease."[2]   Consequently, if the *Reed* plaintiffs wish to allege new theories or claims against Manson and the Dredging Defendants that also filed for limitation, they must assert their claims in Manson's and the other Dredging Defendants'

---

[1] With its limitation complaint, Manson posted a bond in the amount of $35,400,000 (Rec. Doc. 2327).

[2] Supp. Fed. Rule Civ. Proc. F(3).

2

limitations apart from their original actions.[3]  For this reason alone, the Court should deny the *Reed* plaintiffs' motion.

### 2.    The Proposed Amended Complaint is Untimely.

The Court should also deny the *Reed* plaintiffs' motion for leave to file their proposed amended complaint because it is untimely.

By way of background, on April 24, 2006, the *Reed* plaintiffs filed their complaint against various parties, including Manson and the Dredging Defendants.

Thereafter, Manson and the Dredging Defendants answered the *Reed* complaint.

On September 15, 2006, the Dredging Defendants filed various Rule 12 motions to dismiss the *Reed* plaintiffs' claims, which were ultimately set for hearing on December 15, 2006.

Thereafter, the *Reed* plaintiffs' requested and obtained an extension to file their opposition to these Rule 12 motions by November 21, 2006.   But it was not until December 14, 2006 – **the day before the December 15, 2006, hearing on the Rule 12 motions** – that the *Reed* plaintiffs served on undersigned counsel for Manson a copy of their motion for leave to file their amended complaint.

Under these circumstances, the *Reed* plaintiffs' proposed amended complaint is nothing more than a thinly veiled attempt by a dilatory amendment to defeat the Rule 12 dismissal motions at the last moment after all parties had fully briefed the Rule 12 motions.   Manson submits that such tactics are improper, and that the Court should not countenance such a request. The law is settled that this Court has expansive discretion to deny leave to amend in circumstances where, as here, the parties have fully briefed the pending motions to dismiss so that the moving party would be prejudiced by a dilatory amendment.[4]  If the *Reed* plaintiffs had a

---

[3] *See Pickle v. Char Lee* Seafood, *Inc.*, 174 F.3d 444, 450 (4th Cir. 1999)(*citing* Supp. Fed.R.Civ.P. F(5)).
[4] *Wade v. Hopper*, 993 F.2d 1246 (7th Cir. 1993).

valid basis to oppose the Rule 12 motions, then they should have done so in their opposition. Manson submits that the *Reed* plaintiffs are not entitled to a "second bite of the apple" in the form of their proposed amended complaint, the purpose of which is only a last ditch effort to defeat certain of Manson's and the Dredging Defendants' meritorious Rule 12 motions related to the true substance of the *Reed* plaintiffs' claims (Rec. Doc. 1160 and 1176).

3.   **The *Reed* Plaintiffs' Proposed Amended Complaint States No New Theories of Liability Against Manson and the Dredging Contractors, and Therefore is Futile.**

The *Reed* plaintiffs should also be denied leave to amend their complaint because the proposed amended complaint states no additional facts or legal theories to establish negligence against Manson or the other Dredging Defendants.  For this reason, the amendment is futile.[5] The Supreme Court has recognized that leave to amend is properly denied for many reasons, including undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment.[6]  In other words, this Court has discretion and should deny a motion to amend a complaint when the amendment is without merit.[7]

The *Reed* plaintiffs' proposed amended complaint alleges:

> Defendants failed to follow requirements of 33 CFR Parts 335-38, particularly 33 CFR 336.1(c)(4) and 33 CFR 320.4(b) and Executive Order No. 11990 made applicable thereby.  The Dredging Defendants deviated from and/or failed to execute their dredging activities in the manner required by the Army Corps of Engineers and by the Nationwide Permits, specific permits, or

---

[5] *See Shanahan v. City of Chicago*, 82 F.3d 776 (7th Cir. 1996)(request to file untimely and futile amended complaint denied).

[6] *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

[7] *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-873 (5th Cir. 2000); 6 *Wright, Miller & Kane*, § 1487 at 637; 3 *Moore's Federal Practice*, § 15.15 [3] at 15.50-51 (1997) (when a plaintiff proposes an amendment to his complaint without validity, the Court may deny leave to amend.  Courts will not grant leave to amend . . . when the proposed amendment is legally insufficient and it would be futile to grant leave to amend.  An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the Court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.)

4

general authorizations for dredging issued by or obtained by the Army Corps of Engineers pursuant to 33 CFR 337.5 and 338.2. Furthermore, all defendants failed to follow State requirements (made applicable by 33 CFR 337.2) including those contained in Chapter 7, Sections 701 and 707 of the Louisiana Administrative Code related to dredging activities.

But each of these regulations relate to the **Corps of Engineers** – and not to Manson or the other Dredging Defendants. By way of example, 33 C.F.R. § 335 "prescribes the practices and procedures to be followed by the **Corps of Engineers** to ensure compliance with the specific statutes governing . . . maintenance projects involving the discharge of dredged or fill material into waters of the U.S." (Emphasis added). § 336 lists factors to be considered by the **Corps of Engineers** as to dredging projects that involve discharge of material into U.S. waters. § 337 addresses the practice and procedure in dredging operations, i.e it lists certain guidelines of the **Corps of Engineers** related to public notification and agreement/coordination with a State. Finally, § 338 sets forth guidelines for the **Corps of Engineers** as far as other activities such as erosion projects, installation of boat ramps, jetty maintenance, etc. As the Court can see, these regulations do not apply to Manson or the other Dredging Defendants.

Further, the *Reed* plaintiffs allege that Manson and the Dredging Defendants failed to follow the requirements of §§ 336.1(c)(4) and 320.4(b) and Executive Order No. 11990. But § 336.1 indicates that the **Corps of Engineers**' District Engineer will follow the guidance of Part 320.4 and Executive Order No. 11990 when evaluating Corps of Engineers' operations and maintenance activities in wetlands. Also, § 320.4 outlines the policies that apply to the review of United States Department of Army permits by the Corps of Engineers District Engineer. Manson and the Dredging Defendants did not issue any permits or assist in the evaluation of Corps of Engineer projects, and, so, these regulations do not pertain to Manson or the other Dredging Defendants. Further, Executive Order No. 11990 addresses the need for the **Corps of Engineers**

5

to avoid to the extent possible the long and short term adverse impacts associated with the destruction or modification of wetlands and to avoid direct or indirect support of new construction in wetlands wherever there is a practical alternative. Again, this does not pertain to Manson or the other Dredging Defendants.

The *Reed* plaintiffs further allege that Manson and the Dredging Defendants specifically deviated or failed to execute their dredging activity pursuant to 33 C.F.R. §§ 337.5 and 338.2. But §§ 337.5 and 338.2 address the issuance by the **Corps of Engineers**' District Engineer of general authorizations for work which will have minimal adverse environmental impact. These regulations are based on certain sections of the Clean Water Act and the Ocean Dumping Act that also allow for general permits in situations where the United States Secretary of the Army determines, in its discretion, that the work will have a minimal adverse environmental impact. Again, these regulations deal with the **Corps of Engineers**' work process and procedure but do not pertain to any general obligation or legal duty that Manson or the Dredging Contractors are bound to follow.

Finally, the *Reed* plaintiffs allege that Manson and the Dredging Defendants failed to follow Title 43 of the Louisiana Administrative Code, specifically § 701 and § 707 that relate to obtaining coastal use permits prior to performing certain work. If the Corps of Engineers was somehow required to obtain permits from the State of Louisiana to perform its work on the MRGO, which is questionable at best, then that was the Corps of Engineers' obligation and does not pertain to Manson and the other Dredging Defendants, which were only performing dredging work as requested by the Corps of Engineers. In sum, the *Reed* plaintiffs assert without any actual support the purported (and highly doubtful) failure on the part of the Corps of Engineers to comply with the above regulations or permit requirements, but make no showing of any non-compliance by the Dredging Defendants as to any permit or other authorization required of them.

6

4.   **The Regulations Cited by the *Reed* Plaintiffs in the Proposed Amended Complaint Provide Further Evidence Why Their Claims Should Be Dismissed Under the Discretionary  Function Exception to the Federal Tort Claims Act and/or Suits in Admiralty Act.**

Contrary to their contention, the regulations cited in the proposed amended complaint by the *Reed* plaintiffs are but further evidence why this Court should grant Manson's and the Dredging Defendants' Rule 12 motions to dismiss the *Reed* plaintiffs' claims (Rec. Docs. 1160 and 1776) by reason of the discretionary function exception to the Federal Tort Claims Act and/or Suits in Admiralty Act.  By way of example, 33 C.F.R. § 336 lists factors to be considered by the Corps of Engineers in the evaluation of dredging projects involving discharge of dredging material into waters of the U.S. and ocean waters.   As previously discussed, the other regulations cited by the *Reed* plaintiffs also involve discretion that the Corps of Engineers must exercise when carrying out its statutory mandate.   Given the broad discretion afforded to the Corps of Engineers in these regulations, the dismissal of both the Corps of Engineers and Manson and the other Dredging Defendants under the discretionary function exception is appropriate.[8]

## III.   CONCLUSION

The *Reed* plaintiffs' proposed amended complaint violates the Limitation of Liability Act by attempting to continue prosecution on their purported claims against both Manson and the Dredging Defendants, despite the automatic stay afforded under the law.   The proposed amended complaint is also an untimely, last ditch effort to defeat improperly the meritorious Rule 12 motions filed by the Dredging Defendants and Manson that all parties were previously afforded a fair opportunity to brief fully.   Regardless, the proposed amended complaint adds nothing new for this Court to consider, and, so, is futile.   Specifically, the proposed amended complaint

---

[8] *See e.g. Dolphen Gardens v. United States*, 143 F.Supp. 824 (D. Conn. 1965)(holding that decision by Government as to how to dredge and what precautions it should take were subject to discretionary function exception, so that the Government and its contractor were immune from plaintiff's claims.)

7

references regulations that pertain only to the Corps of Engineers – and not Manson and the Dredging Defendants – all of which is further evidence why their claims are barred by the discretionary exception function.   For all of these reasons, the Court should deny the *Reed* plaintiffs' motion for leave to file their amended complaint.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: 

George M. Gilly, T.A.(Bar #6234)
William J. Riviere (Bar #20593)
Evans Martin McLeod (Bar #24846)
Christian E. Daigle (Bar #29819)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130

ATTORNEYS FOR MANSON CONSTRUCTION CO. AND MANSON GULF, L.L.C.

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by facsimile and/or by placing same in the United States mail, properly addressed and first class postage prepaid on this 5th day of January, 2007.

8

NO.99747750.1