UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION NUMBER: 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO: MR-GO, *Robinson* (06-2268) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT UNITED STATES' MOTION**

**FOR LEAVE TO SUPPLEMENT RECORD; MEMORANDUM OF**

**POINTS AND AUTHORITIES**

**1. Defendants' Counsel Failed to Personally Serve the Government's Motion as Per an Agreement with Plaintiffs' Lead Counsel**

None of Plaintiffs' counsel were personally served with the Government's Memorandum in Support of its Motion for Leave to Supplement Record ("Governments' Motion to Supplement"). Plaintiffs' lead counsel formed a standing agreement with Defendants' counsel at the commencement of this action. Under this agreement, any filings with the court are to be served on lead counsel by facsimile, e-mail or regular U.S. mail. Declaration of Pierce O'Donnell ("O'Donnell Declaration") at ¶ 2. Counsel for both sides has followed this protocol with all filings until Defendants' counsel, Robin D. Smith, failed to serve Plaintiffs' lead counsel with the Government's recent Motion to Supplement. O'Donnell Declaration at ¶ 2. While counsel's failure to provide actual

1

service per our standing agreement was undoubtedly inadvertent, the fact is that Plaintiffs' lead counsel was unaware of the filing. O'Donnell Declaration ¶ 2. Plaintiffs' lead counsel acknowledges that it received an electronic filing notice sent by the court on December 20, 2006 that contained notice of Defendants' filing among the other thirty notices.

Due to the Christmas holidays and knowledge of the standing agreement with Defendants' counsel concerning service of court-filed documents, Plaintiffs' lead counsel did not learn of the Government's Motion to Supplement until January 7, 2007, when it received an e-mail from Ms. Janet Daley asking if Plaintiffs would oppose the Government's Motion to Supplement. O'Donnell Declaration, ¶ 2; Exhibit A.

Plaintiffs' lead counsel first learned of Defendants' desire to supplement the record through a December 18, 2006 e-mail sent by Robin D. Smith to Mr. O'Donnell. O'Donnell Declaration, ¶ 3; Exhibit B. While the e-mail stated that the United States would be moving to supplement the record, the e-mail attached only one document -- the December 15, 2006 report the Government now seeks to introduce.[1] *Id.* The e-mail did not attach a notice of motion, a memorandum of points and authorities, or any other document related to the Government's motion to introduce additional evidence. *Id.*

Mr. Smith's December 18, 2006 e-mail asked whether Plaintiffs had "any opposition to the motion." That same day -- December 18, 2006 -- at 11:13 a.m., Mr. O'Donnell responded to Mr. Smith by e-mail, stating: "Plaintiffs strongly oppose any supplementation of the record. The record on your motion to dismiss is closed." O'Donnell Declaration, ¶ 4; Exhibit D.

---

[1] The cover page of this document is attached to the O'Donnell Declaration as Exhibit C.

2

Plaintiffs' lead counsel received no response to his email and no further contact from the Government after December 18, 2006; nor did he receive any moving papers from the United States as per the prior agreement that all papers served with the court be similarly served on opposing lead counsel by facsimile, e-mail, or U.S. mail. O'Donnell Declaration at ¶¶ 2, 5. On January 7, 2007, Mr. O'Donnell received an e-mail from Ms. Janet Daley asking if Plaintiffs would oppose the Government's Motion to Supplement. O'Donnell Declaration, Exhibit A. Because Plaintiffs' counsel had not been served with any documents by Defendants, Mr. O'Donnell assumed that the Government had filed a motion to augment the record shortly before the January 7, 2007 date on which this e-mail was sent, or planned on filing such a motion in the near future. O'Donnell Declaration at ¶ 6. Mr. O'Donnell replied the same day by e-mail, stating that Plaintiffs would oppose a Government motion to augment the record on numerous grounds, including the irrelevance of the proffered report. O'Donnell Declaration, ¶ 7; Exhibit E.

From the foregoing, it is clear that as of December 19, 2006, the Government was aware that Plaintiffs would oppose any attempt to introduce additional evidence in connection with its motion to dismiss. Nevertheless, the Government failed to inform this Court of Plaintiffs' opposition to expand the record. More importantly, the United States failed to serve Plaintiffs with its moving papers according to the agreement reached at the commencement of this action that all papers filed with the court be additionally served on opposing lead counsel by facsimile, e-mail, or U.S. mail. O'Donnell Declaration at ¶ 2.

3

## 2. The 2006 MR-GO Report is Totally Irrelevant to the Question of Whether the MR-GO is a "Flood Control" Project and Should Be Excluded

The Government asks this Court to consider the December 15, 2006 Interim Report issued by the United States Army Corps of Engineers entitled *Mississippi River Gulf-Outlet: Deep Draft De-Authorization interim Report to Congress* (the "2006 MR-GO Report") as evidence that the MR-GO is actually a "flood control" project rather than a "navigable waterway." Specifically, the Government's motion at page 2 asserts that "the MRGO Report supports the pending motion to dismiss by revealing that the flood of which the plaintiffs here complain is one that involved a federal flood control project."[2]

Even if this were true (which it is not), the 2006 MR-GO Report is irrelevant and cumulative. On the issue of statutory flood control immunity, the parties have submitted sharply conflicting evidence on whether there were any federal flood control measures along the large stretches of the MR-GO where massive flooding occurred. This is a hotly disputed question of fact requiring discovery and denial of the motion to dismiss under Rule 56(f). In addition, the 2006 MR-GO Report is merely another self-serving Government document staking out the position it has taken in several proffered exhibits, adds nothing new, and is therefore cumulative.

The purpose of the *interim* report was to study closure options for the MR-GO. At page v of the 2006 MR-GO Report, the authors note "the *primary purpose* of this

---

[2] Plaintiffs urge the Court not to be distracted by this motion. Plaintiffs have opposed the Government's motion to dismiss on several grounds; one of which is that the statutory flood immunity is not applicable here because Plaintiffs are not alleging that the failure of a federal flood control levee or floodwall was a cause of their injuries. Plaintiffs maintain that the defective MR-GO caused their flood damage -- and not levee breaches or levee design flaws. Therefore, whether there were federal flood control facilities along the MR-GO is irrelevant to the claims as pled by Plaintiffs, who are the master of their complaint.

4

interim report is to identify measures that could be included in a plan to de-authorize deep-draft navigation on the MRGO . . . ." (Emphasis added). The "study" was never intended to examine the waterway to determine whether levees or other flood control measures were part of the MR-GO structure.

Indeed, the 2006 MR-GO report *confirms* that the MR-GO was a navigation channel, rather than a flood control project. At page iv of the introduction, the report notes that "[a] [United States Army Corps of Engineers] technical team evaluated potential modifications to the *navigation channel* with the intent of determining if any uses should be maintained." (Emphasis added). Simply put, because the 2006 MR-GO Report is completely devoid of any investigation into the nature of the "earthen mounds" lining the MR-GO or whether they comply with the Army Corps' standards for levees (which they do not), it is irrelevant to the Government's motion to dismiss, and it should be excluded from consideration.

### 3. The 2006 MR-GO Report Is Fundamentally Inaccurate, Lacks the Reliability Required for Admissibility of Scientific Reports, and is Inadmissible for the Purpose Offered.

The 2006 MR-GO Report is also highly suspect. It was written by the Defendant -- the U.S. Army Corps of Engineers -- while a lawsuit is pending. As demonstrated below, its methodology is scientifically unacceptable, and there was no peer review. It is doubtful that the document is at all admissible under the relevant standards for scientific evidence.

Even considering the limited scope of the 2006 MR-GO Report, the document is profoundly flawed and woefully deficient. In a December 21, 2006 "Statement of Concerns," five prominent scientists sharply criticized the inaccuracy of the Corps' 2006

MR-GO Report. University of California at Berkeley Civil Engineering Professor Dr. Robert Bea; Louisiana State University Professors Drs. John Day, Ivor van Heerden, and Paul Kemp; and eminent environmental scientist Dr. Sherwood Gagliano jointly stated:

> On December 15, 2006, the Army Corps submitted to Congress its Interim Report concerning the "Mississippi River Gulf Outlet and Deep-Draft De-Authorization" ("Interim Report"). *Contrary to Congressional mandate*, the Interim Report fails to provide a comprehensive plan for closing the MR-GO much less any "measures for hurricane and storm protection." *The science and engineering conclusions* that the MR-GO did not contribute materially to hurricane storm surge during Hurricane Katrina *are not only demonstrably erroneous*, they are apparently the reason why the Army Corps fails to recommend any hurricane protective measures along Reach 1 and upper Reach 2 of the MR-GO in the Interim Report.

O'Donnell Declaration, Exhibit F at p. 2 (emphasis added).

A cursory review of the studies cited in the 2006 MR-GO Report highlights its utter lack of scientific value. As the concerned scientist stated in their Statement of Concerns:

> Five of the six studies cited by the Army Corps to support the proposition that the MR-GO has no appreciable effect on storm surge (Interim Report at pp. 7-8, Appendix 3) were based on hypothetical situations or computer modeling of assumed scenarios, did not rely on actual data from Hurricanes Betsy, Camille, or Katrina, did not evaluate the MR-GO's contribution to storm surge flooding due to destruction of wetlands, and primarily focused on Reach 2—"the long, southeast-trending section of the MR-GO" (Interim Report at Appendix 3, p. 1)—and not the "funnel" in Reach 1 along the GIWW/MR-GO. . . . Conspicuously absent from any of these studies is a rigorous, technically sound analysis of the demonstrated contribution of the Reach 1 and upper Reach 2 of the MR-GO—based on real word data—to the substantial enhancement of storm surge height, velocity, and duration or any recommendations about how to remediate this threat to human life and property. As the authors of one of the studies cited by the Army Corps frankly admitted, "no system of equations can really be expected to predict with a great degree of accuracy the complex physical phenomenon of flooding over marshland, bayous, houses, trees, etc." Bretsneider and Collins,

6

> *Storm Surge Effects of the Mississippi River-Gulf Outlet*, Nat'l
> Science Engineering Co. (1966) at p. 62.

ODonnell Declaration, Exhibit F at p. 5.

In the context of scientific expert witness testimony, the Supreme Court has stated:

> [I]n order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation-*i.e.,* "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 590 (1993); *see also* Cassandra Welch, Note, *Flexible Standards, Deferential Review: Daubert's Legacy of* Confusion, Harv. J. L. & Pub. Pol'y 1085, 1088 (2006) ("[F]or admissibility: the evidentiary proffer must be both relevant and reliable.").

Here, as shown, the 2006 MR-GO Report is neither relevant -- because it never analyzed whether "levees" were in fact constructed along the MR-GO -- nor is it reliable because of the incompetent manner in which the Corps misinterpreted and misapplied its own underlying reports and data. The Government has therefore provided to foundation to establish the reliability -- and thus the admissibility -- of the 2006 MR-GO Report.

### 4. The Government Has Failed To Authenticate The 2006 MR-GO Report

The 2006 MR-GO Report is inadmissible for the same reason that Plaintiffs opposed ten of the exhibits offered by Defendants several months ago. Those objections are incorporated here by reference. Among other things, the Government impermissibly seeks to admit a document that has no authentication or sponsoring declaration.

The Government cites *United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir.

7

1989) to the support its claim that "publication of this report on an official government web site and its accessibility through that site are sufficient to support a finding that the report is what it appears to be." Government's Motion at p. 3. In *Jimenez Lopez*, the Fifth Circuit upheld the admission of a criminal conviction record in a criminal trial not because it was obtained from a government internet site, or because it was self-authenticating pursuant to Fed. R. Evid. 902, but because it satisfied the general prerequisites for authentication set forth in Fed. R. Evid. 901. Specifically, the Court stated:

> In this case exhibit 3 is a document which appears on its face and by its contents to be a record of conviction of illegal entry into the United States by a magistrate's court for the Southern District of California. It was admitted into evidence on that basis. While it was not under seal, *it was signed by a United States Magistrate and was certified by a clerk of the court. Without the testimony of Agent Johnston the admissibility of the document would have been doubtful. But Johnston's testimony as to the chain of custody of the photostatic copy combined with the internal indicia of reliability within the document itself justified the conclusion of the court that the document was admissible to prove its contents.*

*Id.* at 772 (emphasis added).

The Government further cites an *unreported* decision -- *U.S. E.E.O.C. v. E.I. DuPont de Nemours & Co.*, 2004 WL 2347559 (E. D. La. 2004) -- to support its claim that a document obtained from the internet is inherently reliable. Unreported decisions do not constitute binding precedent. *See e.g. Stone v. William Beaumont Hosp.* 782 F.2d 609, 614 & n. 4 (6th Cir. 1986); *Gamble v. Calbone*, 375 F.3d 1021, 1029 (10th Cir. 2004); *Hart v. Massanari*, 266 F.3d 1155, 1159 & n. 2 (9th Cir. 2001).

On a factual level, *DuPont* presents a completely different scenario than that before this Court. In *DuPont*, the defendant objected to the introduction of a table of

8

statistical data printed from an internet website maintained by the United States Census Bureau. *DuPont*, 2004 WL 2347559 at p. 1. The District Court found the document sufficiently reliable to admit into evidence *because of internet information printed directly on the document*:

> [T]he Court finds that the EEOC has submitted evidence sufficient to authenticate the exhibit. Rule 901(a) states that the requirement of authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." . . . . The exhibit contains the internet domain address from which the table was printed, and the date on which it was printed.

*Id.* at 2.

The 2006 MR-GO Report is not a simple recitation of statistical facts but an allegedly comprehensive report on the MR-GO. Even though Plaintiffs were never served with a copy of the Defendants' motion, the copy of the 2006 MR-GO Report provided to Plaintiffs by the United States Attorney also contained no text specifying the relevant website from which it was obtained or the date of printing. Moreover, while the Government purports to specify the relevant internet address in its motion, the Government does not identify the date on which the copy proffered to the Court (if any) was printed, nor does the Government provide any declarations to substantiate the date it obtained the 2006 MR-GO Report, or the validity of the website. Indeed, the Government's motion does not even provide the exact internet address for the document, but instead it directs the Court to go through a labyrinth of hyperlinks at the end of which the Court *may* find the relevant report.

Fed. R. Evid. 902 provides the only true standard for self-authentication of a government document. Having failed to comply with this rule, the 2006 MR-GO Report is, and remains, unauthenticated, inadmissible evidence. *See Railroad Management Co.,*

9

*L.L.C. v. CFS Louisiana Midstream Co.*, 428 F.3d 214, 220 (5th Cir. 2005). In sum, the Government has established absolutely no evidentiary foundation for the admission of the 2006 MR-GO Report, and the Court should deny the Government's motion to augment the record in support its motion to dismiss.

## 5. Conclusion

For all the foregoing reasons, this Court should deny Defendants' motion to augment the record in support of its motion to dismiss.

Respectfully submitted,

s/ Joseph M. Bruno
JOSEPH M. BRUNO (LSBA No. 3604)
Bruno & Bruno, on behalf of
PIERCE O'DONNELL (*pro hac vice*)
O'Donnell & Associates PC
550 S. Hope Street, Suite 1000
Los Angeles, California 90071
(213) 347-0290
(213) 347-0299 (fax)
pod@oslaw.com
Attorney for Plaintiffs

10

## **PROOF OF SERVICE**

I hereby certify that on January 9, 2007, a true and correct copy of Plaintiffs' Opposition to Defendant United States' Motion for Leave to Supplement Record, Memorandum of Points and Authorities, Declaration of Pierce O'Donnell, and the respective exhibits were served on Robin D. Smith, Defendants' counsel of record, by e-mail at robin.doyle.smith@usdoj.gov and facsimile at (202) 616-5200, and all other counsel of record by ECF.

s/ Joseph M. Bruno
JOSEPH M. BRUNO

11