UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION<br><br><br>PERTAINS TO: MR-GO, *Robinson* (06-2268) | CIVIL ACTION<br>NUMBER: 05-4182 "K"(2)<br>JUDGE DUVAL<br>MAG. WILKINSON |

## PLAINTIFFS' OPPOSITION TO DEFENDANT UNITED STATES' MOTION FOR LEAVE TO SUPPLEMENT RECORD; MEMORANDUM OF POINTS AND AUTHORITIES

The Court should deny the Government's motion because the proffered exhibit -- a December 15, 2006 Interim Report issued by the United States Army Corps of Engineers entitled *Mississippi River Gulf-Outlet: Deep Draft De-Authorization interim Report to Congress* (the "2006 MR-GO Report") -- is not relevant since it never analyzed whether "levees" were in fact constructed along the MR-GO; the report is cumulative of other exhibits improperly offered by the Government; the conclusions in the report are scientifically unreliable; and the report is not properly authenticated.

**1. The Report Is Irrelevant and Cumulative.**

Initially, even if the Government's contention that the 2006 MR-GO Report substantiated the existence of flood control structures on or near the MR-GO were true (which it does not), the 2006 MR-GO Report is irrelevant and cumulative.

1

Plaintiffs have opposed the Government's motion to dismiss on several grounds; one of which is that the statutory flood immunity is not applicable here because Plaintiffs are not alleging that the failure of a federal flood control levee or floodwall was a cause of their injuries. Plaintiffs maintain that the defective MR-GO caused their flood damage -- and not levee breaches or levee design flaws. Therefore, whether there were federal flood control facilities along the MR-GO is irrelevant to the claims as pled by Plaintiffs, who are the master of their complaint.

On the issue of statutory flood control immunity, the parties have submitted sharply conflicting evidence on whether there were any federal flood control measures along the large stretches of the MR-GO where massive flooding occurred. This is a hotly disputed question of fact requiring discovery and denial of the motion to dismiss under Rule 56(f). In addition, the 2006 MR-GO Report is merely another self-serving Government document staking out the position it has taken in several proffered exhibits, adds nothing new, and is therefore cumulative. *See* Plaintiffs' Evidentiary Objections to Government Exhibits.

The purpose of the *interim* 2006 MR-GO Report was to study closure options for the MR-GO. At page v of the 2006 MR-GO Report, the authors note "the *primary purpose* of this interim report is to identify measures that could be included in a plan to de-authorize deep-draft navigation on the MRGO . . . ." (Emphasis added). The "study" was never intended to examine the waterway to determine whether levees or other flood control measures were part of the MR-GO.

Indeed, the 2006 MR-GO report *confirms* that the MR-GO was a navigation channel, rather than a flood control project. At page iv of the introduction, the report

notes that "[a] [United States Army Corps of Engineers] technical team evaluated potential modifications to the *navigation channel* with the intent of determining if any uses should be maintained." (Emphasis added). Simply put, because the 2006 MR-GO Report is completely devoid of any investigation into the nature of the earthen mounds lining the MR-GO or whether they comply with the Army Corps' standards for levees (which they do not), it is irrelevant to the Government's motion to dismiss, and it should be excluded from consideration.

2. **The 2006 MR-GO Report Should be Excluded Because Defendants Have Failed to Establish a Foundation for Admitting a Scientific/Technical Report, and It Is Unreliable.**

   a. **The Report is Not Admissible under *Daubert*.**

The 2006 MR-GO Report is highly suspect. It was written by the Defendant -- the Army Corps -- while a lawsuit is pending that involves the nature of the earthen mounds along the MR-GO. As demonstrated below, the document's methodology is scientifically unacceptable and there was no peer review. The report is not admissible under the relevant standards for scientific/technical evidence.

The admissibility of scientific evidence is governed by Federal Rule of Evidence 702 ("Rule 702") which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Even though Rule 702 is couched in terms relating to an expert witness, the standards reflected in this provision are applied to any form of scientific or technical

3

evidence, including reports and studies.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) ("Rule 702 further requires that *the evidence* or testimony 'assist the trial of fact to understand the evidence or to determine a fact in issue.'"  (Emphasis added, citation omitted).

In *Daubert,* the Supreme Court held that while Rule 702 "allow[ed] district courts to admit a somewhat broader range of scientific testimony that would have been admissible under *Frye* [*v. United States*, 293 F. 1013 (D.C. Cir. 1923)], *they leave in place the 'gatekeeper' role of the trial judge in screening such evidence*." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997) (emphasis and bracketed text added).  *See also Daubert*, 509 U.S. at 589 ("That the *Frye* test was displaced by the Rules of Evidence does not mean, however, that the Rules themselves place no limits on the admissibility of purported scientific evidence.  Nor is the trial judge disabled from screening such evidence.").

The Supreme Court in *Daubert* also defined a non-exclusive test for the admission of scientific evidence.  As summarized by the Fifth Circuit in *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1999), those factors included:

> (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Id*. at 275 (citing *Daubert*, 509 U.S. at 593-95).

In sum, "*Daubert,* in conjunction with Federal Rule of Evidence 702, "'imposes a special obligation upon a trial judge to ensure that any and all scientific testimony . . . is not only relevant, but reliable.' . . . This obligation pertains not only to scientific evidence

4

but to 'all expert testimony.'" *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001) (citations omitted).

The Government asks this Court to consider the 2006 MR-GO Report as evidence that the MR-GO is actually a "flood control" project rather than a "navigable waterway." Specifically, the Government's motion at page 2 asserts that "the MRGO Report supports the pending motion to dismiss by revealing that the flood of which the plaintiffs here complain is one that involved a federal flood control project."

Defendants, however, have failed to establish either the relevancy or the reliability of the 2006 MR-GO Report. The Government fails to discuss any of the five *Daubert* factors necessary to establish admissibility, and it provides no evidence which in any way reflects the relevancy or the reliability of this study. Indeed, the Government's brief fails to cite, much less discuss, Rule 702 or any case law interpreting this provision.

The issue of whether a pile of dirt is a "levee" involves matters of engineering, soils analysis, and hydrogeology, among other things. The Government fails to offer any evidence about the reliability of any of the principles or methods used; much less that their principals and methods were reliably applied. This omission is understandable in light of the evidence already offered by Plaintiffs that the earthen mounds along most of the MR-GO do not satisfy the definition of "levees" under the Army Corps' own criteria. *See* Declaration of Nina D. Froeschle in Support of Plaintiffs' Request to Conduct Additional Discovery Pursuant to Fed. R. Civ. P. 56(f) at ¶¶ 10-15.

### b. The Report is Seriously Flawed and Inherently Unreliable.

Even considering the limited scope of the 2006 MR-GO Report, the document is profoundly flawed and woefully deficient. In a December 21, 2006 "Statement of

Concerns," five prominent scientists sharply criticized the inaccuracy of the Army Corps' 2006 MR-GO Report. University of California at Berkeley Civil Engineering Professor Dr. Robert Bea; Louisiana State University Professors Drs. John Day, Ivor van Heerden, and Paul Kemp; and eminent environmental scientist Dr. Sherwood Gagliano jointly stated:

> On December 15, 2006, the Army Corps submitted to Congress its Interim Report concerning the "Mississippi River Gulf Outlet and Deep-Draft De-Authorization" ("Interim Report"). *Contrary to Congressional mandate*, the Interim Report fails to provide a comprehensive plan for closing the MR-GO much less any "measures for hurricane and storm protection." *The science and engineering conclusions* that the MR-GO did not contribute materially to hurricane storm surge during Hurricane Katrina *are not only demonstrably erroneous*, they are apparently the reason why the Army Corps fails to recommend any hurricane protective measures along Reach 1 and upper Reach 2 of the MR-GO in the Interim Report.

O'Donnell Declaration, Exhibit A at p. 2 (emphasis added).

A cursory review of the studies cited in the 2006 MR-GO Report highlights its utter lack of scientific value. As the concerned scientists stated in their Statement of Concerns:

> Five of the six studies cited by the Army Corps to support the proposition that the MR-GO has no appreciable effect on storm surge (Interim Report at pp. 7-8, Appendix 3) were based on hypothetical situations or computer modeling of assumed scenarios, did not rely on actual data from Hurricanes Betsy, Camille, or Katrina, did not evaluate the MR-GO's contribution to storm surge flooding due to destruction of wetlands, and primarily focused on Reach 2—"the long, southeast-trending section of the MR-GO" (Interim Report at Appendix 3, p. 1)—and not the "funnel" in Reach 1 along the GIWW/MR-GO. . . . Conspicuously absent from any of these studies is a rigorous, technically sound analysis of the demonstrated contribution of the Reach 1 and upper Reach 2 of the MR-GO—based on real word data—to the substantial enhancement of storm surge height, velocity, and duration or any recommendations about how to remediate this

> threat to human life and property. As the authors of one of the studies cited by the Army Corps frankly admitted, "no system of equations can really be expected to predict with a great degree of accuracy the complex physical phenomenon of flooding over marshland, bayous, houses, trees, etc." Bretsneider and Collins, *Storm Surge Effects of the Mississippi River-Gulf Outlet*, Nat'l Science Engineering Co. (1966) at p. 62.

O'Donnell Declaration, Exhibit A at p. 5.

The 2006 MR-GO Report is inherently unreliable because of the incompetent manner in which the Army Corps misinterpreted and misapplied its own underlying reports and data. The Government has therefore provided no foundation to establish the reliability -- and thus the admissibility -- of the 2006 MR-GO Report.

### 3. The Government Has Failed To Authenticate The 2006 MR-GO Report.

The 2006 MR-GO Report is inadmissible for the same reason that Plaintiffs opposed ten of the exhibits offered by Defendants several months ago. Those objections are incorporated here by reference. Among other things, the Government impermissibly seeks to admit a document that has no authentication or sponsoring declaration.

The Government cites *United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989) to the support its claim that "publication of this report on an official government web site and its accessibility through that site are sufficient to support a finding that the report is what it appears to be." Government's Motion at p. 3. In *Jimenez Lopez*, the Fifth Circuit upheld the admission of a criminal conviction record in a criminal trial not because it was obtained from a government internet site, or because it was self-authenticating pursuant to Federal Rule of Evidence 902, but because it satisfied the general prerequisites for authentication set forth in Federal Rule of Evidence 901. Specifically, the Court stated:

7

> In this case exhibit 3 is a document which appears on its face and by its contents to be a record of conviction of illegal entry into the United States by a magistrate's court for the Southern District of California. It was admitted into evidence on that basis. While it was not under seal, *it was signed by a United States Magistrate and was certified by a clerk of the court. Without the testimony of Agent Johnston the admissibility of the document would have been doubtful. But Johnston's testimony as to the chain of custody of the photostatic copy combined with the internal indicia of reliability within the document itself justified the conclusion of the court that the document was admissible to prove its contents*.

*Jimenez Lopez*, 873 F.2d at 772 (emphasis added).

The Government further cites an *unreported* decision -- *U.S. E.E.O.C. v. E.I. DuPont de Nemours & Co.,* 2004 WL 2347559 (E.D. La. 2004) -- to support its claim that a document obtained from the internet is inherently reliable.[1]

On a factual level, *DuPont* presents a completely different scenario than that before this Court. In *DuPont*, the defendant objected to the introduction of a table of statistical data printed from an internet website maintained by the United States Census Bureau. *DuPont*, 2004 WL 2347559 at p. 1. The District Court found the document sufficiently reliable to admit into evidence *because of internet information printed directly on the document*:

> [T]he Court finds that the EEOC has submitted evidence sufficient to authenticate the exhibit. Rule 901(a) states that the requirement of authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." . . . . The exhibit contains the internet domain address from which the table was printed, and the date on which it was printed.

*Id*. at 2.

The 2006 MR-GO Report is not a simple recitation of statistical facts but an

---

[1] Unreported decisions do not constitute binding precedent. *See e.g. Stone v. William Beaumont Hosp.*, 782 F.2d 609, 614 & n. 4 (6th Cir. 1986); *Gamble v. Calbone*, 375 F.3d 1021, 1029 (10th Cir. 2004); *Hart v. Massanari*, 266 F.3d 1155, 1159 & n. 2 (9th Cir. 2001).

allegedly comprehensive report on the MR-GO.  Even though Plaintiffs were never served with a copy of the Defendants' motion, the copy of the 2006 MR-GO Report provided to Plaintiffs by the Government also contained no text specifying the relevant website from which it was obtained or the date of printing.  Moreover, while the Government purports to specify the relevant internet address in its motion, the Government does not identify the date on which the copy proffered to the Court was printed, nor does the Government provide any declarations to substantiate the date it obtained the 2006 MR-GO Report, or the validity of the website.  Indeed, the Government's motion does not even provide the exact internet address for the document, but instead it directs the Court to go through a labyrinth of hyperlinks at the end of which the Court *may* find the relevant report.

Federal Rule of Evidence 902 provides the only true standard for self-authentication of a government document.  Having failed to comply with this rule, the 2006 MR-GO Report is, and remains, unauthenticated, inadmissible evidence.  *See R.R. Mgmt. Co., L.L.C. v. CFS Louisiana Midstream Co.*, 428 F.3d 214, 220 (5th Cir. 2005).  In sum, the Government has established absolutely no evidentiary foundation for the admission of the 2006 MR-GO Report, and the Court should deny the Government's motion to augment the record in support of its motion to dismiss.

**4. Conclusion**

For all the foregoing reasons, the Court should deny Defendants' motion to augment the record in support of its motion to dismiss.


Dated:  January 12, 2007				Respectfully submitted,


						s/ Joseph M. Bruno
						JOSEPH M. BRUNO (LSBA No. 3604)
						Bruno & Bruno, on behalf of
						PIERCE O'DONNELL (*pro hac vice*)
						O'Donnell & Associates PC
						550 S. Hope Street, Suite 1000
						Los Angeles, California 90071
						(213) 347-0290
						(213) 347-0299 (fax)
						pod@oslaw.com
						Attorney for Plaintiffs

## PROOF OF SERVICE

I hereby certify that on January 12, 2007, a true and correct copy of Plaintiffs' Opposition to Defendant United States' Motion for Leave to Supplement Record, Memorandum of Points and Authorities, Declaration of Pierce O'Donnell, and the respective exhibits were served on Robin D. Smith, Defendants' counsel of record, by e-mail at robin.doyle.smith@usdoj.gov and facsimile at (202) 616-5200, and all other counsel of record by ECF.

s/ Joseph M. Bruno
JOSEPH M. BRUNO
