UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION<br><br>PERTAINS TO:<br>INSURANCE      (*Aaron,* 06-4746)<br>                       (*Abadie,* 06-5164) | *<br>*   CIVIL ACTION<br>*<br>*   NO. 05-4182 "K" (2)<br>*<br>*   JUDGE DUVAL<br>*<br>*   MAGISTRATE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**STATE FARM'S RESPONSE
TO PLAINTIFFS' MOTIONS FOR ADMINISTRATIVE CLOSURE**

State Farm Fire and Casualty Company, State Farm Mutual Automobile Insurance Company, and State Farm General Insurance Company (collectively, "State Farm") submit this response to the plaintiffs' *ex parte* motions to administratively close the *Aaron* and *Abadie* cases. (Rec. Docs. 2237, 2238.)[1]  As currently proposed to the Court, the administrative closures of these cases would prejudice State Farm and the other defendants.  For the reasons that follow, State Farm respectfully requests that the Court address the issues raised in the following discussion before issuing a blanket order closing the cases as plaintiffs have proposed.

---

[1]   Only State Farm Fire and Casualty Company and State Farm General Insurance Company are named as defendants in *Abadie*.

- 1 -

I.    BACKGROUND

   A.    *Aaron*

On August 25, 2006, the *Aaron* plaintiffs filed a "Complaint for Damages" in this Court. (Compl., Rec. Doc. 1 in 06-4746.) The Complaint presents more than one thousand plaintiffs suing more than one hundred insurance companies. The only commonality among the thousands of plaintiffs is that they all purport to be "owners of property in southeast Louisiana." (Compl. ¶¶ 6, 10.) Presumably each plaintiff had in effect at the time of Hurricane Katrina at least one insurance policy issued by some insurance company. The only commonality among the insurance company defendants is that they "issued policies of homeowners' property, commercial, business, rental and/or flood insurance" in southeast Louisiana. (Compl. ¶ 7.) The plaintiffs amended their complaint on August 29, 2006 to name additional plaintiffs. (First Am. Compl., Rec. Doc. 2.)

The *Aaron* plaintiffs' Complaint combines claims arising from "policies of property, commercial, business, rental and/or flood insurance." (Compl. ¶ 4.) Without pointing to the specifics of any policy, the plaintiffs recite that "[a]ll of said policies issued by the defendants provided coverage for losses and damages sustained by plaintiffs." (Compl. ¶ 11.) The plaintiffs then allege that State Farm and the other defendants "failed to make adequate payments on plaintiffs' claim." (Compl. ¶ 15.) They assert that the defendants engaged in unfair business practices; none of which are specified (Compl. ¶¶ 17-18.) They allege that the defendants violated the Louisiana Valued Policy Law, La. R.S. 22:695, and that the defendants failed to properly and adequately adjust claims in bad faith. (Compl. ¶¶ 19-23.) Finally, in paragraph 25, they list eight causes of action: breach of insurance contract; violation of La. R.S. 22:658; violation of La. R.S. 22:658.2; breach of a duty to act reasonable and fairly under La. R.S. 22:1220; breach of duty under La. R.S. 22:1220; failure to tender adequate payment for

casualty losses; bad faith adjusting practices; and other causes of action to be determined at trial. (Compl. ¶ 25.) The Complaint neither lists any facts supporting these causes of action, nor avers any basis for joint liability among any of the defendants.[2] The Complaint does not directly raise the issue of whether the water damage exclusion contained in the defendant insurers' policies is enforceable.[3]

On November 7, 2006, State Farm filed a Motion for a More Definite Statement because the plaintiffs' complaint fails to allege the facts necessary to support their causes of action. (Rec. Doc. 91 in 06-4746.) State Farm simultaneously filed a Motion to Sever because the plaintiffs' claims did not meet the requirements for permissive joinder under Rule 20. (Rec. Doc. 89 in 06-4746.) The case was then transferred to Section "K" and consolidated into the *In re Katrina Canal Breaches Consolidated Litigation.* (Rec. Docs. 98 in 06-4746, 1733 in 05-4182.) State Farm's motions have been re-set for hearing on March 23, 2007. (Rec. Doc. 2034, p. 3.)

The plaintiffs have now filed a Motion to Administratively Close the *Aaron* case. (Rec. Doc. 2237). The plaintiffs assert that they filed the *Aaron* suit to interrupt prescription. (*Id.* at ¶ I.) They further assert that negotiations between the plaintiffs and insurers are ongoing,

---

[2] Some of the plaintiffs in *Aaron* are also named as putative class representatives in *Chetta v. State Farm Fire and Casualty Co.*, case no. 06-4662, a class action against State Farm pending before Section "E." The *Chetta* plaintiffs filed a motion to transfer that case into the consolidated litigation, but Judge Livaudais denied their motion, holding that their claims had nothing to do with the consolidated litigation other than that both suits were related to Hurricane Katrina. (*See* Order, Rec. Doc. 14 in 06-4662.)

[3] The Court recently held a telephone status conference regarding several class action suits filed by Jim S. Hall, the same attorney that filed the *Aaron* suit. (Rec. Doc. 2661.) The Court determined that the primary issues in those cases do not involve the applicability of
***(continued on next page)***

and that this litigation should be administratively closed "to allow those negotiations to continue unimpeded by protracted litigation." (*Id.* at ¶¶ IV-V.) The plaintiffs filed their motion as an *ex parte* motion, which State Farm opposed. (Rec. Doc. 2293.) Accordingly, this Court scheduled a hearing on these motions for January 24, 2007.

   B.   *Abadie*

On August 28, 2006, plaintiffs filed a putative class action complaint in this Court. (Compl., Rec. Doc. 1 in 06-5164.) The Complaint presents several thousand plaintiffs suing 161 insurance companies. The only commonality among the thousands of plaintiffs is that they are "property owners in the State of Louisiana" whose property allegedly suffered damage from Hurricane Katrina, and who had insurance policies in effect at the time of Hurricane Katrina. (Compl. ¶ 9(a).) The only commonality among the insurance company defendants is that they allegedly issued a homeowners insurance policies to one or more named plaintiffs and/or putative class members. (Compl. ¶¶ 2, 9(a).) The plaintiffs amended their Complaint on September 6, 2006 to name additional plaintiffs. (First Supp. and Am. Compl., Rec. Doc. 2 in 06-5164.)

The *Abadie* plaintiffs aver that they purchased "All Risk Policies" from the defendant insurers and that plaintiffs had the reasonable expectation that these policies would cover "any and all losses to their residence and personal property caused by hurricanes, including any and all damage proximately and efficiently caused by hurricane wind, and 'storm surge' proximately caused by hurricane wind." (Compl. ¶ 12.) Plaintiffs further allege that their

---

a water damage exclusion. The Court found that the cases were not related to the consolidated litigation and transferred them back to their original sections.

- 4 -

848087v.4

properties were damaged by Hurricane Katrina's wind and flood waters caused *inter alia*, by the breaches of the levees (Compl. ¶¶ 23-27); and that State Farm and the other defendants have failed to pay for covered losses under their insurance policies (Compl. ¶¶ 37, 40, 51), failed to properly adjust claims (Compl. ¶¶ 53-75), failed to advise plaintiffs of flood insurance available under the NFIP and of the availability of additional flood coverage in excess of the NFIP limits (Compl. ¶ 88), and owe the face amount of the homeowners polices under the Louisiana Valued Policy Law (Compl. ¶¶ 76-82).

The Complaint requests declaratory relief, including, among other things, a declaration that the plaintiffs' "losses were caused by covered perils and the efficient and proximate causes of losses were covered perils." (Compl. ¶ 42.) The Complaint further alleges against all insurance defendants breach of contract (Compl. ¶¶ 48-52); breach of the implied covenant of good faith and fair dealing pursuant to La. R.S. 22:658 and La. R.S. 22:1220 (Compl. ¶¶ 53-75); breach of the Louisiana Valued Policy Law, La. R.S. 22:695 (Compl. ¶¶ 76-82); and breach of fiduciary duty (Compl. ¶¶ 83-90). The Complaint lists no facts supporting these causes of action and does not assert any basis for or demand for joint liability among the insurance defendants. However, the Complaint does include allegations that the plaintiffs are asserting a class action against all the defendants. (Compl. ¶ 91).[4]

The plaintiffs have filed a Motion to Administratively Close the *Abadie* case. (Rec. Doc. 2238). Like the plaintiffs in *Aaron,* the *Abadie* plaintiffs assert that they filed the suit to interrupt prescription. (*Id.* at ¶ I.) They further assert that negotiations between the plaintiffs

---

[4] While State Farm denies that any aspect of the *Abadie* case is appropriate for class treatment, plaintiffs appear to have, in the vaguest of terms, attempted to assert a class action.

- 6 -

and insurers are ongoing, and that this litigation should be administratively closed "to allow those negotiations to continue unimpeded by protracted litigation." (*Id.* at ¶¶ III-V.) Based on the course of dealings between the parties thus far, however, it is not clear how an administrative closure would further settlement of individual claims. Plaintiffs' counsel has asserted that he will not utilize the state mediation process on behalf of his individual clients. Further, plaintiffs' counsel has embarked on a practice of providing letters as to his clients' individual claims which purport to raise claim issues not previously addressed by State Farm. This informal process has been less than successful in that an appreciable number of the letters received to date contain numerous inaccuracies as to the property described and the scope of damage. Queries have been sent to the plaintiffs requesting a written clarification so that State Farm can attempt to address the issues, but most remain unresolved. Additionally, on more than one occasion, individual plaintiffs have contacted State Farm and advised that they do not consider themselves to be represented and are not parties to litigation involving State farm. Given these concerns, the inability to pursue discovery or seek judicial relief would actually hamper the potential for individual claim resolution.

The plaintiffs filed their motion for administrative closure as an unopposed motion, which State Farm opposed. (Rec. Doc. 2292.) The Court will also hear this motion on January 24, 2007.

## II.   LAW AND ARGUMENT

### A.   The Court Should Consider the Interests of the Parties When Considering the Motions for Administrative Closure.

An administrative closure is a device used by district courts to remove pending cases from their dockets. *Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004). Cases subject to administrative closure are usually pending on the court's docket, but stayed or

active elsewhere. *Id.* The effect of an administrative closure is no different than a simple stay, except that the case no longer counts as an active case pending on the court's docket. *Id.*; *see also Penn West Assocs., Inc. v. Cohen,* 371 F.3d 118, 128 (3d Cir. 2004) ("an order merely directing that a case be marked closed constitutes an administrative closing that has no legal consequence other than to remove that case from the district court's active docket"); *Lehman v. Revolution Portfolio L.L.C.,* 166 F.3d 389 (1st Cir. 1999) ("an administrative closing has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository"). An administrative closure is not an appealable dismissal or final decision. *S. La. Cement, Inc., v. Van Aalst Bulk Handling,* 383 F.3d 297, 302 (5th Cir. 2005); *see also Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 715 (5th Cir. 2002) (Dennis, J., concurring) ("the administrative closure reflects nothing more than the federal courts' overarching concern with tidy dockets; it has no jurisdictional significance"). Thus, when considering whether to administratively close these cases, this Court should use the same analysis that it would employ if the pending motions were motions to stay.

Motions to stay cases prior to the rendering of a judgment are not governed by the Federal Rules of Civil Procedure. Rather, the power to stay a case is incidental to the court's inherent power to control its docket. *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936). Jurisprudence does, however, guide the Court's use of that power. The proponent of a stay bears the burden of proving that a stay is warranted. *Clinton v. Jones,* 520 U.S. 681, 708 (1997); *Landis,* 299 U.S. at 255. The proponent "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis,* 299 U.S. at 255. Most importantly, the court must

balance the interests of each party, and the court should not enter a stay which by its terms would extend or delay the proceedings for an "immoderate stretch of time." *In re Offshore Diving & Salvaging, Inc.*, No. 99-1175, 1999 WL 407545 (E.D. La. June 18, 1999) (Vance, J.) (quoting *Landis*, 299 U.S. at 257.)

Therefore, when considering the plaintiffs' motions for administrative closure, the Court should balance the interests of the parties and consider the prejudice that State Farm and other defendants will suffer if the cases are stayed in their current form.

### B. State Farm and the Other Defendants Will Be Prejudiced by the Proposed Administrative Closure in its Current Form.

The defendants bear a risk of extreme prejudice in the *Aaron* and *Abadie* cases if a blanket order staying those cases, as plaintiffs have proposed, is issued. Rather, any closure order should be crafted to minimize the harm to State Farm and the other defendants.[5]

#### 1. The Court Should Dismiss the *Abadie* Class Allegations Before Closure.

The *Abadie* case has been filed as a "mass action," but it also purports to assert a class action on behalf of other homeowners. Plaintiffs' counsel has indicated that the case was filed as a precaution to protect against prescription. However, the impact is the massive misjoinder of plaintiffs and defendants with a patently improper class action combined in a complaint that presents no basis for joinder or class certification.[6] While State Farm and others

---

[5] Plaintiffs do not present any support for the proposition that administrative closure would facilitate resolution of pending claims. Absent a mechanism for the submission of meaningful claims information, resolutions are no more likely after closure than if the cases remain on the docket.

[6] The impropriety of the proposed class is most clear as to State Farm since judgments have been entered (a) enforcing the State Farm water damage exclusion (*Chehardy v.*
*(continued on next page)*

have filed Rule 12 motions and motions to sever in *Aaron*, the deadline for the filing of Rule 12 motions in *Abadie* was extended by the Court to February 1, 2007. State Farm will file a motion to sever, a motion for more definite statement, and a motion to dismiss the class allegations in *Abadie*. An administrative closure should not be granted without first considering the propriety of the current procedural posture.

Closing the *Abadie* case in its current posture is prejudicial to State Farm and perhaps other defendants. As a class action, it purports to suspend prescription for untold numbers of putative class members based upon allegations that can fairly be described as alleging every conceivable theory of liability. Clearly, this is improper and prejudicial. Accordingly, the plaintiffs should dismiss the improper class allegations before closure. Alternatively, the Court should consider motions to dismiss the class action before ruling on the administrative closure. Indeed, federal courts have dismissed patently improvident class actions allegations on the court's own motion. *See Comer v. Nationwide Mut. Ins. Co.,* No. 1:05-CV-436, 2006 WL 1066645 (S.D. Miss. Feb. 23, 2006) (noting the individual questions of damage, coverage, policy provisions, mortgage obligations, and the other relevant particulars involved in the case of each individual property owner who sustained damage as a result of Hurricane Katrina and ordering each plaintiff to file a separate action against their own insurer and/or own mortgage lender); *Guice v. State Farm Fire & Cas. Co.,* No. 1:06-CV-1, 2006 WL 2359474, *5 (S.D. Miss. Aug. 14, 2006).

---

*State Farm Fire & Cas. Co.*, Nos. 06-1672, 06-1673, 06-1674 (Rec. Doc. 1803 in 05-4182); *Vanderbrook v. State Farm Fire & Cas. Co.*, No. 05-6323 (Rec. Doc. 1803 in 05-4182)) and (b) holding that the valued policy law does not apply when a property is a
***(continued on next page)***

### 2. The Court Should Address the Effect that the Proposed Stay Will Have on Discovery.

Discovery in *Aaron* and *Abadie* would presumably be halted as the administrative closures are now proposed. However, it is not clear what effect the closures will have on the parties in *Aaron* and *Abadie* regarding the discovery that the Court is planning in the consolidated litigation. (*See* Minute Entry of Jan. 11, 2007, Rec. Doc. 2655.) Under the current proposals to close *Aaron* and *Abadie*, it is uncertain whether the parties to those cases would be bound by discovery conducted during the closure and if so, whether they will have the right to participate in that discovery.[7]

This Court has held that State Farm's water damage exclusion is unambiguous and excludes from coverage damage caused by the flooding even if there is third party fault as alleged here. State Farm believes that in light of that ruling, it should no longer be under the *Katrina Canal Breach* umbrella. But at this juncture, State Farm remains in the litigation, and it is potentially impacted by the discovery plan that this Court is considering. The proposed closure orders do not address the effect that the closures have on discovery in the event that any of the closed cases are re-opened.

These concerns are very real since the defendants will be prejudiced if they are not allowed to seek discovery during the proposed closures regarding a plaintiff's individual claim. If the cases are closed without any arrangement for the taking of discovery, the

---

"total loss" and the "total loss" is not the result of a loss that is covered by the homeowners insurance policy. (*Chauvin v. State Farm*, No. 06-6454, (Rec. Doc. 63.))

[7] If the parties are to participate in the ongoing discovery, then can it really be said that these cases are truly "closed"?

defendants may never have the opportunity to gather evidence in the individual cases regarding the damage to a plaintiff's property before much of it is lost.

### 3. The Order Does Not Address Informal Discovery and/or the Preservation of Physical Evidence.

Plaintiffs likely and understandably want to repair their properties as quickly as possible. However, in the process of restoring their homes, the evidence pertinent to the damages and bad faith litigation will be lost. Once a property is restored, in many cases it will be impossible to determine the cause of the damage to a plaintiff's property (e.g., wind versus flood) or the extent to which the damage might be a covered loss. State Farm and the other defendants should not have to litigate bad faith allegations, with potential for bad faith penalties, without the ability to obtain discovery for defense against the plaintiffs' claims.

A stay is improper when there is a danger that evidence will be lost prior to trial. In *Clinton v. Jones,* the Supreme Court held that it was an abuse of discretion for the district court to stay Paula Jones' sexual harassment lawsuit against President Clinton until Clinton left office. 520 U.S. at 707-708. The Court stated that the stay "increase[d] the danger of prejudice resulting from the loss of evidence, including inability of witnesses to recall specific facts, or the possible death of a party." *Id.* Based on the statement of the Court in *Clinton*, it would be an abuse of discretion for this Court to administratively close these cases as currently proposed, without providing a mechanism for ongoing discovery.

### 4. The Court Should Rule on All Pending Motions Before the Cases Are Administratively Closed.

The *Aaron* and *Abadie* plaintiffs have not yet filed proper complaints, and their claims are improperly joined. State Farm's Motion for More Definite Statement and Motion to

848087v.4

Sever in *Aaron* remain pending,[8] and the Court has stated that it will not take up these motions until late March. It would be improper to stay these actions in their current form, when the current form of this litigation is plainly contrary to the Federal Rules of Civil Procedure, including Rule 12 and Rule 19. Until each individual plaintiff puts State Farm on notice of what he or she alleges State Farm did wrong, State Farm cannot properly prepare a defense to the claims. For example, State Farm cannot identify whether a claim is being brought under a homeowners policy, flood policy, or both, because the plaintiffs have not stated under what policy of insurance they are bringing suit. Some plaintiffs may also have made claims for looting damage in the aftermath of the storm, but the plaintiffs do not state whether those claims, or just direct storm damage, are the subject of the suit.

Further, State Farm's review of the list of *Abadie* claims provided by plaintiffs' counsel shows that the claims of many of the *Abadie* plaintiffs may not involve flood damage or claims for flood damage, and those claims are therefore improperly consolidated in the *Katrina Canal Breaches* litigation. For these reasons, the Court should not grant an administrative closure until it rules upon State Farm's pending motions and the plaintiffs' demands are clarified and severed.[9]

Moreover, if State Farm or another defendant settles a claim brought by a plaintiff, under the current proposals there are no mechanisms for the claim to be resolved without reopening the entire litigation, severing those claims and then dismissing the individual

---

[8]  As previously stated, *supra* p. 9, State Farm plans to file similar motions in *Abadie*.

[9]  Indeed, in many cases individual plaintiffs are not even aware that they sued State Farm.

plaintiffs' claim, and then reclosing the lawsuit. This cumbersome process places an unnecessary burden upon the Court and the parties for the dismissal of settled claims.

### 5. The Closure of the Mass Actions Does Not Address the Propriety of the Stay as to the Individual Claims.

In a typical case, a motion for stay or closure involves a limited number of plaintiffs and defendants, all aware of their relative posture and status. Here, State Farm has been advised that aligned against it are more than 500 plaintiffs in *Abadie* and more than 200 in *Aaron*. The appropriateness of closure as to any individual claim has not been addressed. Over the course of the past two months, State Farm has seen:

(1) Several plaintiffs in *Aaron* are also named plaintiffs in *Chetta*, currently pending before Judge Livaudais. No reason is given for the plaintiffs litigating on a dual track.

(2) *Aaron* was initially transferred to this section by Judge Vance, presumably because she thought it asserted issues that brought it under the *Katrina Canal Breaches* umbrella. A review of the complaint suggests that it is not appropriately in this umbrella.

(3) Several individuals named as plaintiffs in *Aaron* and/or *Abadie* have informed State Farm that either (a) they did not authorize anyone to name them as a plaintiff in a lawsuit or (b) that they are represented by other attorneys.

(4) Some individuals named in the lawsuits do not appear to have had flood damage, thus raising in State Farm's mind questions as to why they are joined in these lawsuits and why a closure of their claims is appropriate.

### 6. The Proposed Closure Does Not Address the Impact of Closure on Prejudgment Interest.

The plaintiffs' current proposals for administrative closure contain no time limits and could stretch on indefinitely. Staying this litigation indefinitely will harm State Farm by

subjecting it to open-ended litigation with the possibility that years of prejudgment interest could be added to any judgment eventually rendered against it. An indefinite stay like the one proposed is precisely what the Supreme Court warned against when it stated that stays may not continue in force for an "immoderate stretch of time." *Landis*, 299 U.S. at 257. This issue is magnified by the fact that *Abadie* purports to assert claims on behalf of a class. The plaintiffs have prayed for prejudgment interest, (e.g., *Aaron* Compl. p. 38), but they are the parties seeking the delay. Because the plaintiffs seek this delay, prejudgment interest should not run on any claims against State Farm during the period of the closure.

**7. Due Process Concerns Would Prevent Orders Issued in the Consolidated Litigation During the Closure From Applying to the Parties in *Aaron* or *Abadie*.**

It is fundamental that due process requires an opportunity for a hearing before a court can issue an order affecting the rights and interests of a party. During the period of the administrative closures, as proposed, the parties would not have an opportunity to participate at hearings on the issues that are pending in the consolidated litigation. Therefore, any orders issued by the Court should not be binding upon the parties in *Aaron* and *Abadie*.

**8. Any Order for Closure or Stay Should Include a Specific Date for Review.**

As now proposed, the closures would be for an indefinite time. The Complaints currently fail to set forth the particular causes of action that are pled against each defendant, any facts supporting the alleged causes of action, or how the general allegations are applicable to the individual plaintiffs' claims. State Farm is left to speculate as to what defenses it may have, what additional parties may need to be joined, and what issues are involved in the individual plaintiffs' claims. If the cases are closed indefinitely, the proposed closures will toll the prescriptive period for the plaintiffs but could leave State Farm without recourse against other potentially liable

parties. The Court should establish a date by which individual plaintiffs must clarify their claims to allow State Farm time to timely join any necessary third parties.

State Farm respectfully suggests that the Court should specify a date, prior to the two-year anniversary of Hurricane Katrina, at which time the parties would report to the Court on the status of the matters, address dismissal of any settled claims, and discuss the need and/or propriety of a continuation of the closures.

### III.    CONCLUSION

Plaintiffs bear the burden to prove that an administrative closure of these cases is warranted, and they have not yet addressed any of the concerns raised by the defendants. State Farm respectfully requests that if the Court decides to grant the administrative closures, it consider the issues presented herein and enter an appropriate judgment that minimizes the prejudice the closures will have upon the parties.

Respectfully submitted,

*s./ J. Dalton Courson*
Wayne J. Lee, 7916, T.A.
Mary L. Dumestre, 18873
Michael Q. Walshe, Jr., 23968
Andrea L. Fannin, 26280
Sarah H. Barcellona, 28080
J. Dalton Courson, 28542
Heather S. Lonian, 29956
of
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA  70130
Telephone: (504) 581-3200
Facsimile: (504) 581-3361

*Attorneys for State Farm Fire and Casualty Company, State Farm General Insurance Company, and State Farm Mutual Automobile Insurance Company*

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Response to Plaintiffs' Motion for Leave Administrative Closure has been served upon all counsel of record by electronic service through the Court's CM/ECF system or placing same in the United States mail, postage prepaid and properly addressed, this 16th day of January, 2007.

*s./ J. Dalton Courson*