```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2
       ******************************************************************
 3     O'DWYER, ET AL
                                    Docket No. 05-CV-4181
 4     V.                          New Orleans, Louisiana
                                    Friday, March 24, 2006
 5     UNITED STATES OF AMERICA, ET AL
       ******************************************************************
 6     BERTHELOT, ET AL
                                    Docket No. 05-CV-4182
 7     v.                          New Orleans, Louisiana
                                    Friday, March 24, 2006
 8
       BOH BROTHERS CONSTRUCTION, INC., ET AL
 9     ******************************************************************
       JARED VODANOVICH
10
                                    Docket No. 05-CV-4191
11     v.                          New Orleans, Louisiana
                                    Friday, March 24, 2006
12     BOH BROTHERS CONSTRUCTION, INC., ET AL
       ******************************************************************
13     ROBERT HARVEY

14                                  Docket No. 05-CV-4568
       v.                          New Orleans, Louisiana
15                                  Friday, March 24, 2006

16     THE BOARD OF COMMISSIONERS FOR
       THE ORLEANS PARISH LEVEE DISTRICT
17     ******************************************************************
       ANN VODANOVICH
18
                                    Docket No. 05-CV-5237
19     v.                          New Orleans, Louisiana
                                    Friday, March 24, 2006
20
       BOH BROTHERS CONSTRUCTION, INC., ET AL
21     ******************************************************************
       GREER, ET AL
22                                  Docket No. 05-CV-5709
       V.                          New Orleans, Louisiana
23                                  Friday, March 24, 2006
       U. S. ARMY CORPS OF ENGINEERS
24     ******************************************************************

25
```

```
 1   ANN VODANOVICH
                                    Docket No. 05-CV-6069
 2   V.                             New Orleans, Louisiana
                                    Friday, March 24, 2006
 3   BOH BROTHERS CONSTRUCTION, ET AL
     ****************************************************************
 4   DAVID KIRSCH

 5                                   Docket No. 05-CV-6073
     v.                             New Orleans, Louisiana
 6                                   Friday, March 24, 2006

 7   BOH BROTHERS CONSTRUCTION, INC., ET AL
     ****************************************************************
 8   JIM EZELL

 9                                   Docket No. 05-CV-6314
     v.                             New Orleans, Louisiana
10                                   Friday, March 24, 2006

11   BOH BROTHERS CONSTRUCTION, INC., ET AL
     ****************************************************************
12   RICHARD VANDERBROOK, ET AL
                                    Docket No. 05-CV-6323
13   V.                             New Orleans, Louisiana
                                    Friday, March 24, 2006
14   STATE FARM FIRE & CASUALTY
     ****************************************************************
15   DAVID M. BROWN, SR.
                                    Docket No. 05-CV-6324
16   v.                             New Orleans, Louisiana
                                    Friday, March 24, 2006
17
     BOH BROTHERS CONSTRUCTION, INC., ET AL
18   ****************************************************************
     BETH A. LeBLANC
19                                   Docket No. 05-CV-6327
     v.                             New Orleans, Louisiana
20                                   Friday, March 24, 2006

21   BOH BROTHERS CONSTRUCTION, INC., ET AL
     ****************************************************************
22   FREDERICK BRADLEY, ET AL
                                    Docket No. 05-CV-6359
23   V.                             New Orleans, Louisiana
                                    Friday, March 24, 2006
24   MODJESKI AND MASTER, INC.
     ****************************************************************
25
```

```
 1   SULLIVAN, ET AL
                                       Docket No. 05-CV-0004
 2   V.                                New Orleans, Louisiana
                                       Friday, March 24, 2006
 3   STATE FARM FIRE & CASUALTY
     INSURANCE
 4   ********************************************************************
     JULIE E. TAUZIN, ET AL
 5                                     Docket No. 06-CV-0020
     v.                                New Orleans, Louisiana
 6                                     Friday, March 24, 2006

 7   THE BOARD OF COMMISSIONERS FOR
     THE ORLEANS PARISH LEVEE DISTRICT
 8   ********************************************************************
     BRUCE CONLAY
 9                                     Docket No. 06-CV-0151
     V.                                New Orleans, Louisiana
10                                     Friday, March 24, 2006
     ENCOMPASS INSURANCE COMPANY, ET AL
11
     ********************************************************************
12   DIANE W. ROGERS
                                       Docket No. 06-CV-0152
13   V.                                New Orleans, Louisiana
                                       Friday, March 24, 2006
14   ENCOMPASS INSURANCE COMPANY, ET AL
     ********************************************************************
15   WILLIAM R. BAIRD
                                       Docket No. 06-CV-153
16   V.                                New Orleans, Louisiana
                                       Friday, March 24, 2006
17   ENCOMPASS INSURANCE COMPANY, ET AL
     ********************************************************************
18   KELLY A. HUMPHREYS
                                       Docket No. 06-CV-0169
19   V.                                New Orleans, Louisiana
                                       Friday, March 24, 2006
20   ENCOMPASS INSURANCE COMPANY, ET AL
     ********************************************************************
21   FREDERICK BRADLEY, ET AL
                                       Docket No. 06-CV-0225
22   V.                                New Orleans, Louisiana
                                       Friday, March 24, 2006
23   PITTMAN CONSTRUCTION COMPANY, ET AL
     ********************************************************************
24

25
```

```
 1   MARY BETH FINNEY, ET AL
                                          Docket No. 06-CV-0886
 2   V.                                   New Orleans, Louisiana
                                          Friday, March 24, 2006
 3   BOH BROTHERS, ET AL
     ***********************************************************************
 4   MARY BETH GILLASPIE
                                          Docket No. 05-CV-1301
 5   V.                                   New Orleans, Louisiana
                                          Friday, March 24, 2006
 6   ST. PAUL FIRE AND MARINE
     INSURANCE COMPANY
 7                       (MIDDLE DISTRICT CASE)
     ***********************************************************************
 8   GLADYS CHEHARDY
                                          Docket No. 05-CV-1140
 9   V.                                   New Orleans, Louisiana
                                          Friday, March 24, 2006
10   J.P. ROBERT WOLLEY, ET AL
                         (MIDDLE DISTRICT CASE)
11   ***********************************************************************

12

                          TRANSCRIPT OF STATUS CONFERENCE
13           HEARD BEFORE THE HONORABLE STANWOOD R. DUVAL
                         UNITED STATES DISTRICT JUDGE
14


15
     APPEARANCES:
16
     FOR THE PLAINTIFFS:                  BRUNO & BRUNO
17                                        BY:  JOSEPH M. BRUNO, ESQ.
                                               DAVID S. SCALIA, ESQ.
18                                        855 Baronne Street
                                          New Orleans, LA 70113
19
                                          LAMBERT & NELSON
20                                        BY:  LINDA J. NELSON, ESQ.
                                          701 Magazine Street
21                                        New Orleans, LA 70130

22                                        GAINSBURGH, BENJAMIN, DAVID,
                                          MEUNIER & WARSHAUER
23                                        BY:  GERALD E. MEUNIER, ESQ.
                                               TODD R. SLACK, ESQ.
24                                             KARA M. HADICAN, ESQ.
                                          1100 Poydras Street, Suite 2800
25                                        Energy Centre
                                          New Orleans, LA 70163-2800
```

```
 1                              JACOBS & SARRAT
                                BY:  DARLEEN M. JACOBS, ESQ.
 2                              823 St. Louis Street
                                New Orleans, LA 70112
 3
                                SMITH & FAWER, L.L.P.
 4                              BY:  STEPHEN M. WILES, ESQ.
                                201 St. Charles Avenue, Ste. 3702
 5                              New Orleans, LA 70170

 6                              LAW OFFICES OF RONNIE G. PENTON
                                BY:  RONNIE G. PENTON, ESQ.
 7                              209 Hoppen Place
                                Bogalusa, LA 70427
 8                              LAW OFFICE OF DANIEL E.BECNEL,JR.
                                BY:  DANIEL E. BECNEL, ESQ.
 9                                   DARRYL J. BECNEL, ESQ.
                                     WILL PERCY
10                              106 Seventh Street
                                Reserve, LA 70084
11                              ASHTON R. O'DWYER, JR., ESQ.
                                One Canal Place, Suite 2670
12                              New Orleans, LA 70130

13                              DUGAN & BROWNE
                                BY:  JAMES DUGAN, ESQ.
14                              650 Poydras Street, Suite 2150
                                New Orleans, LA 70130
15
                                LAW OFFICE OF ROBERT G. HARVEY,SR
16                              BY:  ROBERT G. HARVEY, ESQ.
                                3431 Prytania Street
17                              New Orleans, LA 70115

18                              LANDRY & SWARR
                                BY:  FRANK J. SWARR, ESQ.
19                              1010 Common Street, Suite 2050
                                New Orleans, LA 70112
20
                                ROBERT L. MANARD, PLC
21                              BY:  PAUL E. MAYEAUX, ESQ.
                                1100 Poydras Street, Suite 2610
22                              New Orleans, LA 70163

23                              LAW OFFICES OF ROBERT M. BECNEL
                                BY:  ROBERT M. BECNEL, ESQ.
24                              425 West Airline Highway, Suite B
                                LaPlace, LA 70068
25
```

```
 1                              FAYARD & HONEYCUTT
                               BY:  CALVIN C. FAYARD, JR., ESQ.
 2                                  D. BLAYNE HONEYCUTT, ESQ.
                               519 Florida Avenue Southwest
 3                             Denham Springs, LA 70726

 4                             PENDLEY LAW FIRM
                               BY:  PATRICK W. PENDLEY, ESQ.
 5                             24110 Eden Street
                               P.O. Drawer 71
 6                             Plaquemine, LA 70765-0071

 7

 8
     FOR THE BOARD OF COMMISSIONERS
 9   FOR THE ORLEANS LEVEE DISTRICT:   McCRANIE, SISTRUNK, ANZELMO,
                                       HARDY, MAXWELL & McDANIEL
10                                     BY:   KYLE P. KIRSCH, ESQ.
                                             MARK HANNA, ESQ
11                                     3445 N. Causeway Blvd., Suite 800
                                       Metairie, LA 70002
12

13                                        - AND -

14                             LABORDE & NEUNER
                               BY:  BEN L. MAYEAUX, ESQ.
15                             One Petroleum Center
                               1001 W. Pinhook Rd., Suite 200
16                             Lafayette, LA 70505

17
     FOR WASHINGTON GROUP
18   INTERNATIONAL, INC.:      STONE, PIGMAN, WALTHER, WITTMANN
                               BY:   WILLIAM D. TREEBY, ESQ.
19                                   HEATHER LONIAN, ESQ.
                               546 Carondelet Street
20                             New Orleans, LA 70130

21                                        - AND -

22

23                             JONES DAY
                               BY:  GEORGE MANNING, ESQ.
24                             51 Louisiana Avenue, N.W.
                               Washington, D.C. 20001-2113
25
```

```
 1
       FOR BOH BROTHERS CONSTRUCTION
 2     COMPANY, L.L.C:                    KINGSMILL RIESS, L.L.C.
                                          BY:  MICHAEL R.C. RIESS, ESQ.
 3                                             CHARLES B. COLVIN, ESQ.
                                          201 St. Charles Avenue, Ste. 3300
 4                                        New Orleans, LA 70170-3300

 5                                             - AND -

 6                                        DEUTSCH, KERRIGAN & STILES
                                          BY:  TERRANCE L. BRENNAN, ESQ.
 7                                        755 Magazine Street
                                          New Orleans, LA 70130
 8
       FOR VIRGINIA WRECKING
 9     COMPANY, INC.:                     GAUDRY, RANSON, HIGGINS &
                                          GREMILLION, L.L.C.
10                                        BY:  WADE A. LANGLOIS, III, ESQ.
                                          401 Whitney Avenue, Suite 500
11                                        Gretna, LA 70054-1910

12
       FOR JAMES CONSTRUCTION
13     GROUP, L.L.C:                      JONES, WALKER, WAECHTER,
                                          POITEVENT, CARRERE & DENEGRE
14                                        BY:  RICHARD J. TYLER, ESQ.
                                          201 St. Charles Avenue, 50th Flr
15                                        New Orleans, LA 70170-5100

16
       FOR ST. PAUL FIRE & MARINE
17     INSURANCE COMPANY:                 LUGENBUHL, WHEATON, PECK,
                                          RANKIN & HUBBARD
18                                        BY:  RALPH S. HUBBARD, ESQ.
                                               JOSEPH P. GUICHET, ESQ.
19                                             MARTIN R. SADLER, ESQ.
                                          601 Poydras Street, Suite 2775
20                                        New Orleans, LA 70130

21
       FOR STANDARD FIRE INSURANCE
22     COMPANY:                           ROBINSON & COLE
                                          BY:  STEPHEN E. GOLDMAN, ESQ.
23                                        280 Turnbull Street
                                          Hartford, CT 06103-3597
24

25
```

```
 1   FOR B&K CONSTRUCTION
     COMPANY, INC.:                    SIMON, PERAGINE, SMITH &
 2                                     REDFEARN, L.L.P.
                                       BY:  HERMAN C. HOFFMANN, JR., ESQ
 3                                          BETTY F. MULLIN, ESQ.
                                       Energy Centre
 4                                     1100 Poydras Street, 30th Floor
                                       New Orleans, LA 70163-3000
 5

 6
     FOR MODJESKI AND MASTERS, INC.:   DEUTSCH, KERRIGAN & STILES
 7                                     BY:  VICTOR E. STILWELL, JR., ESQ
                                       755 Magazine Street
 8                                     New Orleans, LA 70130

 9
     FOR SEWERAGE AND WATER BOARD
10   OF NEW ORLEANS:                   SEWERAGE & WATER BOARD LEGAL DEPT
                                       BY:  GEORGE R. SIMNO, III, ESQ.
11                                     625 St. Joseph Street, Room 201
                                       New Orleans, LA 70165
12

13
     FOR BURK-KLEINPETER, INC.:        DEUTSCH, KERRIGAN & STILES
14                                     BY:  CHARLES F. SEEMANN, JR., ESQ
                                       755 Magazine Street
15                                     New Orleans, LA 70130

16
     FOR EUSTIS ENGINEERING
17   COMPANY, INC.:                    GARDNER & KEWLEY
                                       BY:  THOMAS F. GARDNER, ESQ.
18                                     1615 Metairie Rd., Suite 200
                                       Metairie, LA 70005
19

20   FOR C.R. PITTMAN:                 GALLOWAY, JOHNSON, TOMPKINS,
                                       BURR & SMITH
21                                     BY:  GERALD A. MELCHIODE, ESQ.
                                            J. MARSTON FOWLER, ESQ.
22                                     One Shell Square
                                       701 Poydras Street, 40th Floor
23                                     New Orleans, LA 70130

24

25
```

```
 1   FOR C. RAY NAGIN, EDWIN COMPASS,
     III AND CITY OF NEW ORLEANS:      CITY ATTORNEY'S OFFICE
 2                                     BY:  JAMES B. MULLALY, ESQ.
                                       CITY HALL
 3                                     1300 Perdido Street
                                       Room 5E01
 4                                     New Orleans, LA 70112

 5
     FOR THE UNITED STATES
 6   OF AMERICA:                       U.S. DEPARTMENT OF JUSTICE
                                       BY:  CATHERINE J. FINNEGAN, ESQ.
 7                                          ROBIN D. SMITH, ESQ.
                                       Torts Branch, Civil Division
 8                                     Benjamin Franklin Station
                                       P.O. Box 888
 9                                     Washington, D.C. 20044

10

11   FOR THE STATE OF LOUISIANA AND
     GOVERNOR KATHLEEN BLANCO:         LOUISIANA DEPARTMENT OF JUSTICE
12                                     BY:  PHYLLIS E. GLAZER, ESQ.
                                            MICHAEL KELLER, ESQ.
13                                     Office of Attorney General
                                       Litigation Division
14                                     601 Poydras Street, Suite 1725
                                       New Orleans, LA 70130
15

16   FOR JEFFERSON PARISH AND
     AARON BROUSSARD:                  BURGLASS & TANKERSLEY, L.L.C.
17                                     BY:  DENNIS J. PHAYER, ESQ.
                                       5213 Airline Drive
18                                     Metairie, LA 70001

19
     FOR UNITRIN PREFERRED
20   INSURANCE COMPANY:                PHELPS DUNBAR
                                       BY:  NEIL C. ABRAMSON, ESQ.
21                                     365 Canal Street
                                       Canal Place - Suite 2000
22                                     New Orleans, LA 70130-6534

23
     FOR STATE FARM FIRE AND
24   CASUALTY COMPANY:                 STONE PIGMAN WALTHER WITTMANN
                                       BY:  WAYNE J. LEE, ESQ.
25                                     546 Carondelet Street
                                       New Orleans, LA 70130-3588
```

```
 1   FOR ENCOMPASS INSURANCE COMPANY:     BARRASSO USDIN KUPPERMAN
                                          FREEMAN & SARVER
 2                                        BY:  JUDY Y. BARRASSO, ESQ.
                                          LL&E Tower, Suite 1800
 3                                        909 Poydras Street
                                          New Orleans, LA 70112
 4

 5   FOR FIREMAN'S FUND INSURANCE
     COMPANY:                             DUPLASS ZWAIN BOURGEOIS & MORTON
 6                                        BY:  D. MICHAEL PFISTER, ESQ.
                                          11814 Market Place Ave, Suite C
 7                                        Baton Rouge, LA 70816

 8

 9
     FOR KIMBERLY WILLIAMSON BUTLER:      BELHIA V. MARTIN, ESQ.
10                                        317 Magazine Street
                                          New Orleans, LA 70130
11

12
     Official Court Reporter:            Karen A. Ibos, CCR, RPR
13                                       500 Poydras Street, Room HB-406
                                         New Orleans, Louisiana 70130
14                                       (504) 589-7776

15

16
          Proceedings recorded by mechanical stenography, transcript
17   produced by computer.

18

19

20

21

22

23

24

25
```

<u>P R O C E E D I N G S</u>

(FRIDAY, MARCH 24, 2006)

(STATUS CONFERENCE)


THE COURT:  Good morning.  We are going to have a rather rapid but hopefully clear on the record who you represent and maybe we can do it in some orderly way.  But I wanted to look at you and hear you and then we will get into this meeting.

Let me say that the first 30 minutes is going to be Judge Wilkinson, who I'm sure all of you know, and myself talking.  After we talk then we'll listen for awhile and then we are going to have another meeting that I have already set.  So just to let you know that.

Let's make our appearances if we can start.  I don't know if you know your case numbers.

MR. O'DWYER:  May it please the court, your Honor, Ashton O'Dwyer for plaintiffs in Civil Action No. 05-4181.

THE COURT:  Thank you, sir.

MR. BRUNO:  Good morning, your Honor, Joseph Bruno and David Scalia from Bruno & Bruno in Ann Vodanovich No. 05-5237, Greer 05-5709, which has been dismissed, LeBlanc 05-6327, and Dahlgren 06-0188.

THE COURT:  Thank you, sir.

MR. WILES:  May it please the court, Stephen Wiles on behalf of plaintiff Judy Tauzin, Civil Action No. 06-20, your Honor.

```
1              THE COURT:  Thank you.

2              MR. PHAYER:  Your Honor, Dennis Phayer on behalf of

3    Jefferson Parish and Aaron Broussard in the O'Dwyer matter, Civil

4    Action 05-4181.

5              THE COURT:  Thank you, sir.

6              MS. MARTIN:  Good morning, your Honor, Belhia Martin on

7    behalf of Kimberly Williamson Butler in the O'Dwyer case, Civil No.

8    05-4181.

9              THE COURT:  Thank you.

10             MS. GLAZER:  Good morning, your Honor.  Phyllis Glazer and

11   Michael Keller for the State of Louisiana and Governor Kathleen

12   Blanco in the O'Dwyer matter 05-4181.

13             THE COURT:  Thank you.

14             MR. PENTON:  Good morning, Judge.  Ronnie Penton in the

15   Ezell matter, 05-6314.

16             MS. JACOBS:  Good morning, your Honor, Darlene Jacobs in

17   the matter 05-4568, Harvey v. Levee Board.

18             THE COURT:  Thank you.

19             MR. HARVEY:  Good morning, your Honor, Robert Harvey in

20   the Vanderbrook matter, 05-6323.

21             THE COURT:  Thank you, sir.

22             MR. MULLALY:  Good morning, your Honor, Magistrate

23   Wilkinson.  Jim Mullaly here on behalf of the City of New Orleans,

24   Honorable Mayor Nagin and also former Superintendent of Police Edwin

25   Compass, 05-4181.
```

1          THE COURT:  Thank you.

2          MR. MEUNIER:  Good morning, your Honor, Gerald Meunier

3    here with Todd Slack and Kara Hadican for plaintiffs in the Bradley

4    cases numbers 05-6359 and 06-0225.

5          THE COURT:  Thank you.

6          MS. NELSON:  Good morning, Judge, Linda Nelson with the

7    law firm of Lambert & Nelson.  I am here on behalf of the David

8    Kirsch plaintiffs 05-6073.

9          MR. HUBBARD:  Ralph Hubbard appearing here today on behalf

10   of St. Paul Travelers in its capacity as insurer of the Levee

11   District in most of the Levee District cases.  And on behalf of

12   Hanover, the Hartford and Standard Fire Insurance Company in the

13   Vanderbrook matter.

14         THE COURT:  Thank you.

15         MR. HUBBARD:  Joined by Stephen Goldman today here who was

16   admitted pro hoc vice in connection with the Standard Fire matters,

17   and Marty Sadler who is about to be admitted pro hoc for the

18   Hartford.

19         THE COURT:  Thank you, very much.

20         MR. ROBERT BECNEL:  Good morning, your Honor, Robert

21   Becnel, Diane Zink (PHONETIC) and Meghan Burns in the matter of

22   06-0886, Finney, et al v. Boh Brothers, et al.

23         THE COURT:  Thank you, sir.

24         MR. COLVIN:  Good morning, your Honor, Chuck Colvin,

25   Michael Riess and Terry Brennan on behalf of Boh Brothers in

1    Berthelot and eight other cases.

2         MR. HONEYCUTT:  Good morning, your Honor, Blayne Honeycutt

3    with Fayard & Honeycutt in the matter of the Gillaspie v. St. Paul,

4    No. 05-1301.  Presently in the Middle District but it's my

5    understanding this matter is about to be transferred.

6         THE COURT:  It has been, yes, sir.

7         MR. DUGAN:  Good morning, your Honor, James Dugan with the

8    Dugan & Brown firm on behalf of Vodanovich v. Boh Brothers, Case No.

9    05-4191.

10        MR. LANGLOIS:  Judge, Wade Langlois on behalf of Virginia

11   Wrecking Company and we are involved in several cases.

12        THE COURT:  Can you tell me which ones?

13        MR. LANGLOIS:  I believe it's Ezell, Berthelot, Ann

14   Vodanovich and Kirsch.

15        THE COURT:  Thank you.

16        MR. SEEMANN:  Charles Seemann, Jr. on behalf of

17   Burk-Kleinpeter, Inc. and Burk-Kleinpeter, L.L.C. in Kirsch 05-6073

18   and LeBlanc 05-6327; and named in other suits, all 05 suits,

19   Berthelot 4182, Vodanovich 4191, Vodanovich 5237, Vodanovich 6069

20   and Ezell 6314.

21        MS. BARRASSO:  Judy Barrasso on behalf of Encompass

22   Insurance Company and we are involved with four cases Conlay, Rogers

23   Humphreys and Baird v. Encompass Insurance Company and the Levee

24   Board.  And they are 0151 through 153 and Humphreys is 0169.

25        THE COURT:  Thank you.

```
 1          MR. HOFFMAN:  Good morning, Herman Hoffman and Betty
 2    Mullin of Simon Peragine, we're involved for B&K Construction in
 3    cases 05-4182, 05-5237, 05-6073, 05-6314, 05-6324, 05-6327, 06-20,
 4    06-886.
 5          THE COURT:  Thank you.
 6          MR. TYLER:  Richard Tyler for the James Construction
 7    Group, we are served in Berthelot, 05-4182, Kirsch 05-6073 and
 8    LeBlanc 05-6327.  And we are named in Vodanovich 05-4191, Kirsch
 9    05-6073 -- I'm sorry, Ezell, 05-6314, Tauzin 06-0020 and Finney
10    06-0886.
11          MR. GUICHET:  Good morning, your Honor, Joe Guichet on
12    behalf of St. Paul Fire and Marine Insurance Company in Berthelot
13    04182, Vodanovich 05237, Kirsch 06073, Ezell 06314, Brown 06324,
14    LeBlanc 06327.  We will also soon be making appearances in O'Dwyer
15    4181 and Finney 00886.
16          MR. LEE:  Good morning.  Wayne Lee here on behalf of
17    St. Farm Fire and Casualty Company in the Vanderbrook case 05-6323
18    and in the Sullivan case which is 06-004.
19          MR. TREEBY:  William Treeby, along with Heather Lonian
20    representing The Washington Group, pro hoc vice motion being filed
21    for George Manning of Jones Day in lead cases Berthelot v. Boh
22    Brothers 05-4182, Ann Vodanovich v. Boh Brothers 05-5237, Beth
23    LeBlanc v. Boh Brothers 05-6327, Julie Tauzin v. Board of
24    Commissioners Levee District 06-0020, Mary Beth Finney Civil Action
25    No. 06-0886, David Kirsch Civil Action No. 05-6073, Jim Ezell Civil
```

1   Action 05-6314 and David Brown 05-6324.

2          MR. MAYEAUX:  Paul Mayeaux on behalf of the Sullivan

3   plaintiffs in Sullivan v. State Farm 06-0004.

4          THE COURT:  Thank you.

5          MR. SIMNO:  May it please the court, your Honor, George

6   Simno on behalf of the Sewerage & Water Board of New Orleans in

7   Kirsch case, Ezell, Vodanovich and LeBlanc, 05-6073, 05-6314,

8   05-4191 and 05-6327.  We are named in other cases but have not been

9   served as of yet, your Honor.

10         THE COURT:  Thank you.

11         MR. FAYARD:  Good morning, your Honor.  I am here as a

12  result of messages that I received from Mr. Hubbard and the court

13  yesterday with respect to cases that were transferred from Judge

14  Polozola in Baton Rouge to this courthouse.  We are uncertain as to

15  which court or judge it will be assigned to yet, but I will read

16  those cases out for you.

17         MAGISTRATE WILKINSON:  You need identify yourself.

18         MR. FAYARD:  Calvin Fayard for the record.

19         MAGISTRATE WILKINSON:  We know who you are but others may

20  not.

21         MR. FAYARD:  Thank you.  Gladys Chehardy v. Wolley, Civil

22  Action 05-1140; consolidated with Chehardy v. Wolley, civil action

23  05-1162, consolidated with Chehardy v. Wolley, Civil Action 05-1163.

24  I am sure those numbers reflect numbers assigned to these cases by

25  the Middle District court in Baton Rouge.

1          THE COURT:  Thank you, sir.

2          MR. PENDLEY:  Patrick Pendley in the Kevin Slaton v.

3    St. Paul case, Civil Action 05-1138.  May I assume that that was

4    formerly in the Middle District?

5          THE COURT:  I don't have a record of that one, sir.

6          MR. PENDLEY:  That's a Middle District case then, your

7    Honor.

8          THE COURT:  All right.

9          MR. PENDLEY:  Thank you.

10         MR. MELCHIODE:  Good morning, your Honor, Gerald Melchiode

11   on behalf of C.R. Pittman Construction Company.  C.R. Pittman has

12   been named in Vodanovich, Berthelot, LeBlanc, Brown, Kirsch, Ezell

13   and Finney.  C.R. Pittman has not been served, it's oftentimes been

14   confused in the pleadings with Pittman Construction Company.  So I

15   want to make it clear today that I am not here for Pittman

16   Construction Company but rather C.R. Pittman Construction Company.

17         THE COURT:  Thank you, sir.

18         MR. HANNA:  May it please the court, Mark Hanna, Ben

19   Mayeaux and Kyle Kirsch on behalf of the Board of Commissioners for

20   the Orleans Levee District here on the Berthelot case 05-4182,

21   O'Dwyer 05-4181, Vodanovich 05-4191, Harvey 05-4568, Vodanovich

22   05-5237, Kirsch 05-6073, Ezell 05-6314, Vanderbrook 05-6323, Brown

23   05-6324, LeBlanc 05-6327, Armstead 05-6438, Tauzin 06-0020, Conlay

24   06-151, Rogers 06-152, Baird 06-153, Humphreys 06-169, Bradley

25   06-225, and the Finney case, and I apologize, your Honor, I do not

 1    have that number with me.

 2              THE COURT:  Thank you.

 3              MR. HANNA:  But those are the cases.

 4              MR. STILWELL:  Good morning, your Honor, Victor Stilwell

 5    of Deutsch, Kerrigan & Stiles representing Modjeski and Masters,

 6    Inc.  We are named in ten cases:  Ann Vodanovich 05-4191, LeBlanc

 7    05-6327, O'Dwyer 05-4181, Ezell 05-6314, Finney 06-0886, Bradley

 8    05-6359, Kirsch 05-6073, Berthelot 05-4182, Tauzin 06-002 and Brown

 9    05-6324.  Thank you, your Honor.

10              THE COURT:  Thank you.

11              MR. GARDNER:  Good morning, your Honor, Thomas Gardner of

12    Gardner & Kewley on behalf of Eustis Engineering, Inc.  Eustis is a

13    defendant in three actions that are pending before this court,

14    O'Dwyer 05-4181, LeBlanc 05-6327, and Ezell 05-6314.

15              THE COURT:  Thank you.

16              MR. ABRAMSON:  Good morning, your Honor, Neil Abramson on

17    behalf of Unitrin Preferred Insurance Company in the Richard

18    Vanderbrook case, Civil Action 05-6323.

19              THE COURT:  Thank you, sir.

20              MR. SMITH:  Your Honor, Robin Smith from the Department of

21    Justice, with me is Catherine Finnegan.  We are here in O'Dwyer

22    05-4181, Tauzin 06-20, in which we have not yet been served, Greer

23    05-5709.  And there are two cases which are not before your Honor,

24    which are also Katrina cases, the Parfait Family case which has been

25    consolidated with Ingram barge 05-4419, and Dahlgren 06-0188, in

1    which we also have not been served.

2         THE COURT:  Thank you.

3         MR. SWARR:  Good morning, your Honor, Frank Swarr on

4    behalf of the plaintiffs in the Humphreys case 06-0169, the Baird

5    case 06-0153, Rogers 06-0152 and Conlay 06-0151.

6         THE COURT:  Thank you, sir.

7         MR. BECNEL:  Daniel Becnel as well as Will Percy and

8    Darryl Becnel in Berthelot 05-4182, Brown 05-6324 and we represent

9    tens of thousands of these people.

10        THE COURT:  Thank you, sir.  All right.  I am sure all of

11   you probably know Judge Wilkinson, he is going to be the magistrate

12   judge on the cases that are ultimately under this umbrella, which is

13   not all been decided yet.  And will work closely with me on certain

14   issues, including discovery and other issues.

15             Let me explain the nature of my first notice.  It was

16   mandatory and for the time being all such notices are going to be

17   mandatory because obviously if we had to wait until a time that was

18   convenient for all of us, this case would not be decided in our

19   lifetime, much less even close thereto.  So it's got to be by the

20   very nature of it and the unwielding nature of it these cases and

21   notices have to be mandatory.  So all of you should have at least a

22   second chair who is completely familiar with the case, who has

23   authority to act, at least in procedural matters and settings, and

24   virtually the same authority as you do.

25             Once we get organized and have a structure then perhaps

1    the notices won't be as Draconian or imperious I should say, but

2    until that time we have an imperial court insofar as notices are

3    concerned, that's just the way it is.

4          The primary grouping of our cases -- we have a related

5    case rule.  We have obviously in our related case rule, we, the

6    court, have decided that we are going to liberalize it, at least for

7    the purposes of Katrina.  And so that we can try to efficiently

8    manage cases that appropriately fit under the umbrella sort of as a

9    mini MDL, that is an intracourt MDL in essence.  It will hopefully

10   help all of us be more efficient and have a consistent ruling, right

11   or wrong, that you have then one appeal from at the appropriate

12   time.

13         The groupings that I see now, and this is subject to

14   change because we've had a few announcements that I am not quite

15   sure of yet because there are a lot of complaints and a lot of

16   reading for us to do.  But we have class actions involving the three

17   levees:  Industrial, London and 17th.  We have class actions

18   involving just two of them and we have class actions involving just

19   one.  We have class actions naming a myriad of defendants, we have

20   class actions naming just one defendant.  We have non-class actions

21   in which the insurer and the homeowners, excuse me, the homeowner's

22   insurance policy is named.  And these are what I call the Encompass

23   cases only because Encompass is in four of them.  I think

24   Vanderbrook fits in it.

25         I am interested, and we will talk a little later how the

1  Chehardy, et al, cases fit into that grouping.  I regard that as a

2  separate grouping because only in the Chehardy case only the

3  insurers are named.  And in the cases involving Encompass,

4  Vanderbrook cases, the insurer is named and one individual suing the

5  insurer is named and then the Orleans Levee Board.  We have had, I

6  know of some cases transferred from the Middle District, Mr. Fayard

7  mentioned three that I know we have, and the Gillaspie case I am not

8  quite sure about, I thought it was part of that bundle but we will

9  check it.  We will check that out.

10        At this point I want to describe any recusal situations,

11  and I am going to explain and then let Judge Wilkinson speak to this

12  a little bit.  There's one aspect which he is going to direct

13  himself to and it involves the Jefferson Parish pump situation.  In

14  all of the cases it's only mentioned in one paragraph in

15  Mr. O'Dwyer's complaint.  And Judge Wilkinson.

16        MAGISTRATE WILKINSON:  My brother is the parish attorney

17  for Jefferson Parish and has been for ten years.  I recused myself

18  from what is the lowest numbered case in this set of cases, it's

19  05-4181 in which the plaintiff's attorney is Aston O'Dwyer.  And I

20  understand that the defendant's representative this morning is

21  Mr. Phayer.  I recused myself from that case only when the third

22  amended complaint was filed.  It does have, as Judge Duval said, a

23  paragraph or two alleging a claim against Jefferson Parish and Aaron

24  Broussard in his official capacity concerning the removal of the

25  pump operators out of the parish and the claim is that that caused

```
 1    some flooding.

 2            Unless someone speaks up, that is the only one of these

 3    cases in which that claim is made as I understand it as I reviewed

 4    these cases myself and that is the only one.  Does anybody see that

 5    claim in another case?

 6            I am required to recuse myself from that case because of

 7    my brother's position.  Although he is not counsel of record, he has

 8    supervisory authority over the lawyers who work for the parish.

 9            There is one other case called Berthelot in which the

10    parish has appeared, it seems to me only for the purposes of

11    opposing a motion to consolidate.  They are not a party in that

12    case.  Who represents Berthelot?

13            MR. BECNEL:  Daniel Becnel, your Honor.  And let me just

14    say, we have a number of these clients that want to add those; but I

15    can assure the court that I will recommend to all of my clients that

16    there is no conflict and I have no objection to your continuing to

17    serve in that capacity or whatever capacity you think is

18    appropriate.

19            However, I would ask, only because I lost it twice in the

20    appellate courts, there is a case called Tramonta v. Chrysler,

21    involved Judge Lemmon, and there may be a problem.  But I don't

22    know.  We don't have any.  We waive any potential conflict.

23            THE COURT:  But the fact is if you have a claim involving

24    Broussard, should I say the flooding or the pump, alleged pump

25    abandonment in Jefferson Parish, Judge Wilkinson is going to recuse
```

1    as I understand it.

2          MAGISTRATE WILKINSON:  Well, thank you for waving that,

3    Mr. Becnel, but I don't accept it.  I don't handle cases in which my

4    brother has some kind of oversight or even the appearance of some

5    kind of oversight.

6          MR. PHAYER:  Your Honor, Dennis Phayer who is representing

7    the Parish and Aaron Broussard in the O'Dwyer matter.  There was an

8    effort made several weeks ago by the Levee Board or the Orleans

9    Levee Board to consolidate a slew of cases to transfer them to the

10   Middle District, and it was at that time that although the Parish

11   was not a party to the Berthelot case, the effort to consolidate and

12   transfer had been filed under the Berthelot caption.  So we filed an

13   opposition.  That's the sole involvement of the parish in that case.

14   We are not a party of record, we were not named as a defendant.

15         MAGISTRATE WILKINSON:  Unless there is some objection from

16   Mr. O'Dwyer who represents the plaintiffs or Mr. Phayer who

17   represents the two affected defendants, then I think what Judge

18   Duval wants to do is sever that one discrete claim, assign it a

19   separate civil action number for administrative purposes and leave

20   it assigned with Judge Knowles who is assigned to it now; is that

21   right, Judge?

22         THE COURT:  Yes.  And the logic behind that, one, is so we

23   can handle this; and, two, it doesn't involve a levee breach which

24   is the umbrella that -- this particular umbrella is a levee breach.

25         MR. O'DWYER:  No objection, your Honor.

1           MR. PHAYER:  No objection.

2           MS. JACOBS:  Mr. Phayer and I are involved in the state

3    court action in Jefferson Parish that seeks class action

4    certification against Mr. Broussard and the Parish of Jefferson.

5    It's only in state court, I only point that out to the court that

6    there may be a conflict.

7           THE COURT:  Thank you, Ms. Jacobs.  And I will do that and

8    I am going to.

9           MS. JACOBS:  I waive any conflict.

10          THE COURT:  Thank you very much and I will sever that.

11   While we are discussing recusal, let me make my disclosures.  And I

12   might point out that there's been a motion filed, my law clerk

13   apprised me this morning, to recuse all of the Middle District,

14   excuse me, all of the Eastern District.  We will deal with that when

15   the time comes.  But let me just say that I thought about this long

16   and hard, and unless there is a statutory recusal, and it's going to

17   be tried by me, I think it's our responsibility to hear it.  But I

18   will certainly look at the motion.

19           And I think if there is a recusal motion that's going to

20   be directed at one specific judge, I am going to give a time limit

21   for it to be filed because I think we have a responsibility to

22   handle these cases.  In essence, in the long run would mean we would

23   have to recuse from 90% of our docket because they're going to be

24   Katrina related.  Unless it's statutorily mandated, I am not

25   inclined to do it.

1          But let me tell you my situation so you can think about

2    whether you want to file a motion to recuse.  I had no real damage

3    from Hurricane Katrina, Hurricanes Katrina or Rita, fortunately,

4    either at Grand Isle where I have a place or in New Orleans.  My

5    daughter lives in Metairie near Causeway, she had six inches of

6    water.  She was very fortunate in her insurance coverage and has

7    absolutely zero economic damage.  Being the good negotiator that she

8    is, she will opt out of any class.  She has no economic damage at

9    all.  So that's my situation.

10         I might point out one other thing.  I have a brilliant

11   young law clerk, who is not in this courtroom, named Caroline

12   Fayard.  She happens to be related to one of the lawyers who just

13   spoke, Mr. Calvin Fayard, who is also a good friend of mine.  I want

14   to point out that Ms. Fayard is not my law clerk because of her

15   father, she is a graduate of Dartmouth Michigan Law School with

16   honors and is magnificent.

17         I am friendly with Mr. Fayard, however.  I can tell you

18   that will have nothing to do with my -- I am friendly with a lot of

19   you actually, but Mr. Fayard I have known for a long time.  Let me

20   put it that way.  So I will let you know that it won't have any

21   bearing on what I do, but if it makes you uncomfortable let me know.

22         We haven't decided, I might point out, where Mr. Fayard's

23   cases fit under this umbrella or if they do.  We will talk about

24   that later.  That's about as much disclosure, I think that's about

25   it.  Now.  Go ahead.

```
 1              MAGISTRATE WILKINSON:  I need to make one disclosure.
 2              THE COURT:  More disclosures from Judge Wilkinson.
 3              MAGISTRATE WILKINSON:  Luckily I am not as friendly as
 4    Judge Duval, so I am not friends with any of you.
 5              THE COURT:  We have to have one of those here in this
 6    case.
 7              MAGISTRATE WILKINSON:  Neither myself nor any member of my
 8    immediate family had any flooding damage as a result of the
 9    hurricane.  The damage we did have in my house or my immediate
10    family was minor wind damage.
11              I have an uncle who resides in the old part of Old
12    Metairie who had about 18 inches of water in his house.  He had some
13    sort of insurance coverage, which he seems to be satisfied with.  I
14    haven't talked to him in any great detail about his troubles, but I
15    am not sure at this point if he is a member of the class or if he
16    would be an opt out; but I think his economic situation is that he
17    may not have any economic damage.
18              I have another uncle who lived in Violet whose house was
19    lost, Violet's in St. Bernard Parish.  As far as I can understand
20    claims made in this case, he would not be a member of any putative
21    class.
22              My law clerk, I have one law clerk, she lived in Broadmoor
23    and had a lot of water in her house.  I don't think she is a member
24    of the class either because she also had adequate coverage which is
25    already paid off and probably doesn't have any damage.  In any
```

1    event, because of her former residence, she is not going to be

2    involved in anything having to do with this case.  And I don't get

3    my law clerk involved in discovery or case management matters in any

4    event, but she will not be involved.  And to the extent I need law

5    clerk assistance with this, which is probably going to be minimal, I

6    am going to bring in a student during the summer to help me.

7            THE COURT:  I might point out as well that Ms. Fayard will

8    not be working on this case and will not be involved in it at all.

9    Janet Daly will be the law clerk on the case.

10           I might point out that there are motions pending which

11   insofar as, I am going to talk about certain categories of them.

12   The Levee Board in the motions to remand has removed the case on the

13   federal office of the defense and that's at issue and we've heard

14   one oral argument, and frankly, I've done enough research where that

15   oral argument and briefing is sufficient for me to ultimately rule

16   on the issue that would effect any case involving the Orleans Levee

17   Board and I have to decide where there is a remand issue and I have

18   to make a decision, I have not done that.

19           We have some motions in Mr. O'Dwyer's case on immunity

20   that may effect other issues.  And I am going to talk more about

21   preliminary motions later on, as will Judge Wilkinson.  But those

22   are filed and we will talk a little later on about when we think

23   12(b)(6) type motions should be filed involving immunity and other

24   defenses.

25               All right.  Let's look at this thing.  Understanding that

1   the umbrella that we first designed -- and it's growing and we are

2   not sure if we're going to let it grow beyond the original scope, we

3   need to think about it and all of you need to think about it --

4   involving breaches in one of the three canals or all of the three

5   canals.  And as I said earlier, there are some class actions that

6   seek to certify, a class for all three canals.

7          Let me tell you, you do know which circuit you're in.  I

8   find it remote, and maybe not even a good idea from my standpoint,

9   that such a class would be certified.  My suggestion, suggestion,

10  these are suggestions, none of this is coming like lightening on

11  Mount Sinai on a tablet, it's just suggestions for you to ruminate

12  about, is that insofar as the levee breaches are concerned, and if

13  there are any other categories, is to file a master complaint for

14  each category.  We then have separate certification hearings so that

15  the attorneys who are involved in all three can be involved in the

16  master complaint in all three, and those who are involved in one or

17  two would be involved in the master complaint with respect to those

18  respective canals.

19         Then we have some non-class actions which to some degree

20  would be tagalongs, because, as an example, the case Ms. Barrasso is

21  in, she represents Encompass Insurance Company.  It's a coverage

22  issue, but the plaintiff has also sued the Orleans Levee Board

23  saying I want money from one of you, so it does involve the

24  liability with reference to a canal breach.  It also involves an

25  insurance coverage issue.  So it's kind of another -- and there are

1    mold issues in there as well.

2           Then we have the Chehardy cases, which I will call them

3    Mr. Fayard, and I think there are others like it, but they just sue

4    insurance companies; but there is an allegation in those that the

5    cases depend upon, it seems to me and we will hear more articulating

6    from you, depend upon for the coverage issue to even become viable

7    for a court to find that there is negligence relative to the canals,

8    that is the maintenance, the design, et cetera, the engineering, the

9    building.  So that is a linchpin to the coverage issue so it's

10   somewhat related there, but I regard that as a separate category.

11   That is also a class action of the Chehardy cases.

12          So we have those that are there and we realize that

13   everything we're discussing and even on April, and I will tell you

14   about the next meeting, even at our next meeting we have to be

15   somewhat flexible depending on what plays out.  Hydrology may show

16   that one home was flooded by two canals, the breach of two canals.

17   I am not sure what we do with that yet, I haven't thought it all

18   through.

19          Okay.  Unquestionably in a case like this, and all of you,

20   I see a lot of very imminent members of the bar here, and all of you

21   I'm sure are aware we are going to have a committee structure.  This

22   is what I am thinking about.  And again I am going to want your

23   input, not necessarily today, we can talk briefly, but at our next

24   meeting for you to think about.  I would have an overall committee

25   to coordinate all actions.  And that would be appointed by me after

1    I receive your resumes, although I do know most of you.

2         And it would consist of five members who would agree upon

3    that committee, this is again, that committee would be five members.

4    The overall committee would be five members and you would then, you

5    the five members, I would encourage you to appoint the lead liaison

6    counsel, the liaison counsel.

7         Then I would also have committees of three for each

8    separate class action that was filed.  And the reason, I thought a

9    lot about this, we think the master complaint for each category

10   makes it's:  One, easier to manage; and two, if you don't bleed over

11   in your certification questions and you get to a lot of lot of

12   problems with just common sense and Fifth Circuit law.  That's not

13   to say that I am saying we are going to certify any of these

14   classes.  It's just the way to streamline it, we are suggesting a

15   way that we make it more cohesive and discrete.

16        Furthermore, please understand that we may have other

17   categories, but that's sort of the thing we're thinking about.  We

18   are also thinking about requiring you to file certain motions before

19   class certification, so we give you a break on our rule on the time

20   for class certification.

21        I would really like it -- we are going to have a meeting

22   April 6th, 2006 at 10 A.M.  Again, that's why you need a good second

23   or third chair because these dates have to be arbitrary.  And some

24   of the things we are going to discuss is whether you agree to the

25   master complaint and whether you want a class certification hearing

1    for the three canals.  We will also discuss schedules, deadlines,

2    discovery, classes and motions and class certifications.  I am

3    certain that I am going to require immunity motions to be filed and

4    disposed of before we have class certification because it doesn't

5    really make sense otherwise.

6           I don't know, and I'm interested after we finish here,

7    what the Orleans Levee Board's position is, but it's filed a motion

8    to recuse the Eastern District, as I understand.  If it's remanded

9    in the Federal Office of Defense, I am not sure how many of the

10   other cases that may be here on CAFA jurisdiction; so either way

11   it's going to be here whether I remand or not, so that motion is

12   going to become relevant and I am going to rule on it very quickly.

13   But we have a lot of oppositions to get in.  We will talk about

14   that.  If you do want to oppose it -- maybe you all agree.  But that

15   doesn't mean you will win if you all agree; bit if you do oppose it,

16   we may have to have a master opposition because I don't want 5,000

17   oppositions.

18          At any rate, we would like you very much, and this is

19   Judge Wilkinson who is a wonderful organizer and manager himself,

20   suggests to confer and file a joint written report.  You may need to

21   stay here or at least get all of your e-mail address, how do you

22   prefer to do this, it's unwielded since we don't have a committee

23   structure.  Something we would like, I am not demanding, but we

24   would like for you to confer and file a joint written report

25   concerning your master class actions, a proposed schedule for

1    discovery deadlines and any suggestions you may have to streamline

2    these proceedings.

3            Now, if you feel like that's impossible to do until after

4    April 6th, that's fine, but I would like it now and maybe if you

5    could even informally get some of you together to at least get a

6    draft and send it out to the other people, et cetera.  The people

7    who filed individual actions will probably have to tagalong to some

8    degree.

9            Now, to the extent as the Encompass cases, if there is a

10   severance, if in those cases Orleans Levee Board is remanded, again

11   I haven't decided that yet, then I am going to keep the Encompass

12   cases, they are going to be severed because then they will be

13   diversity, that's what I am going to do if I do that, and then I'll

14   have to decide those insurance coverage issues.  But in a way it's a

15   vacuum because the insurance coverage issues may somehow relate to

16   liability, and the Chehardy cases may be a little different than the

17   Encompass cases, we have to think about those a little bit.

18           At this time the MR-GO is not included, and some of you

19   may want to speak to that after I'm through and Judge Wilkinson is

20   through, but because it does not involve a classic levee breach.

21   Now, if there is an argument that it should be included in all of

22   this in another category, we are certainly willing to listen to

23   that.

24           We've looked at some of the complaints and it appears some

25   of the defendants that either, to Judge Wilkinson, have not been

1    served or not appeared in all of the cases.  At the next meeting you

2    need to be prepared to discuss why and what do you intend to do

3    about it to rectify that issue and prevent dismissal under Rule

4    4(m).

5         Judge Wilkinson is going to be coordinating discovery and

6    other things, and he has a great suggestion that I think we should

7    do.

8         MAGISTRATE WILKINSON:  The size of this group is larger

9    than I anticipated it would be.  What we want from you before the

10   next meeting on April 6th is some sort of report or at least an

11   outline that contains from you all your ideas concerning phased

12   handling of this matter, by which we mean when preliminary motions

13   might be filed, what sort of motions those might be, whether there

14   should be, whether those motions should be filed and determined

15   before any discovery is permitted.  Whether once those motions are

16   filed and determined whether there should discovery limited to class

17   certification issues first.  If so, what sort of discovery might

18   that include, how long do you think it would take to conclude it,

19   what kind of discovery you might think about including in that

20   phase, whether written discovery should proceed before deposition

21   discovery, whether there is any need for expedited discovery in any

22   particular instance.

23        In other words, the typical sorts of things that you would

24   consider in making a report to the court, including your

25   suggestions, on how something like this should be managed.

1        Because of the massive size of this group and simply as a

2    method of coordinating it and without intending to tell you all who

3    you should make your liaison counsel --

4        THE COURT:  Don't forget I am going to appoint a committee

5    of five, as I said, unless you have other suggestions and that's

6    going to be the liaison, that has something to do with that.

7        MAGISTRATE WILKINSON:  And without any other inference to

8    be drawn from what I am about to say, unless they object, we want to

9    appoint Jerry Meunier for the plaintiffs group and Ralph Hubbard for

10   the defense group for the limited purpose of receiving from the rest

11   of you the suggestions that you have as to what should go in this

12   initial report and for simply typing it up and sending it to us, and

13   for no other purpose.

14       THE COURT:  Thank you, Judge.  That's a great idea.

15       MAGISTRATE WILKINSON:  Mr. Meunier, do you have any

16   objection to doing that?

17       MR. MEUNIER:  No objection.

18       THE COURT:  Mr. Hubbard, do you have any objection?

19       MR. HUBBARD:  No, your Honor.

20       MAGISTRATE WILKINSON:  These are ministers, all right,

21   they are scribes, so don't the two of you think that it means

22   anything else, for good or bad.

23       THE COURT:  One of the other issues on the agenda, and

24   this is directed to the United States, is a pro se case filed

25   against the President and others, President of the United States and

 1   others, that's Armstead v. U.S.A. No. 05-6438.  I don't know if the

 2   United States wants to do this, but we might suggest just to tidy

 3   this thing up, if you would waive service and file your motions it

 4   might expedite it.  We simply point that out, we certainly can't

 5   order you to do that, we just ask you to contemplate it so that we

 6   can get going.

 7        MAGISTRATE WILKINSON:  While you're contemplating that.

 8   There is something else about that.  Mr. Mullaly, are you here

 9   somewhere?

10        MR. MULLALY:  Yes, sir.

11        MAGISTRATE WILKINSON:  Ms. Glazer, are you here somewhere?

12        MS. GLAZER:  Yes, sir.

13        MAGISTRATE WILKINSON:  The Mayor is a defendant in that

14   case, the Governor is a defendant in that case, this is a case filed

15   in forma pauperis by a pro se petitioner, it is not assigned to me

16   yet but it is going to be assigned to me shortly.  I am going to

17   screen it just like you screen any case like that.

18        The same thing that Judge Duval said to the United States

19   also applies to you; in other words, what we want you to do is the

20   same thing that Judge Duval just told the United States to do.

21        MR. MULLALY:  Sir, if I may?  I believe there is a second

22   supplemental amending complaint filed in that case, the Armstead

23   matter, in which in one of the enumerated paragraphs the plaintiff

24   expresses his wishes to dismiss the Honorable C. Ray Nagin from the

25   complaint.  I will submit to the court that I did follow it up since

1    it is in forma pauperis, and I called the plaintiff who also

2    suggested to me that he does not any longer desire to sue the Mayor.

3    And if any further motion on his part is required, he will file

4    such.

5            THE COURT:  There is a motion required, unless we get a

6    motion to dismiss.

7            MR. MULLALY:  That was my immediate concern, that's why I

8    called him, I can try to suggest to him that he should file a

9    voluntarily dismissal.

10           THE COURT:  Otherwise it requires paper.

11           MR. MULLALY:  That's correct, your Honor.

12           MAGISTRATE WILKINSON:  Paper is not a strong point for

13   most pro se litigants, so would you do this, Mr. Mullaly, would you

14   as soon as the case is re-allotted to me, would you arrange for a

15   telephone conference with the plaintiff and yourself and call my

16   office and we will set up a conference?

17           MR. MULLALY:  Yes, sir.

18           MAGISTRATE WILKINSON:  So that we can handle that.

19           MR. MULLALY:  I sure will.

20           THE COURT:  Thank you, Judge.  One of the things that, and

21   many other things, but in thinking about the class or the classes in

22   a lot of the complaints there is a fear of flooding, and I am not

23   certain if that fear of flooding applies to those who actually

24   stayed and were in the flood or those who left because it may make

25   some difference in motion practice.  We just need some clarification

1    on that.  It may be clear to you, it's not quite clear to us, but I

2    am sure that anybody who read the Old Testament has a fear of

3    flooding.  But we just need to know the context of where, what you

4    mean by it.  Just in thinking about classes.

5           Let me point out to you something that, I look at the size

6    of this and we don't know how much we are going to let it grow.  Let

7    me point out right now, too, before I make this point, that Judge

8    Vance has a ton of cases under the umbrella relating to insurance

9    coverage, not the kind, it's 22:695 coverage, so it's a different

10   case than you have, but she has about 45 of those, but I don't think

11   any of those are included in this umbrella; but she has her own

12   umbrella and she volunteered to do that in an attempt to have

13   consistent rulings coming out of this court.

14          All right.  When we get to the committee structure, it's

15   going to be very important, and I am going to make those

16   appointments and then you're going -- I'd like you to, who are on

17   the committee to name the lead person.  Just to let you know, if you

18   really want to be on the committee there may be, I am not saying

19   there will be, I am not omniscient, but there may be cost for

20   staffing, administrative costs, may be a special master down the

21   line; in other words, if you don't have, if you don't want to pony

22   up a little money, don't do it.  Have the wherewithal to do it and

23   include that in your applications, when we do that.

24          On April the 6th I will formalize that more, I am

25   interested to see what you think about my suggested structure, you

1    may hate it and you may have a better suggestion.

2            As we said in our other order, because of the number of

3    people, we love to hear from you, if you're calling to invite us to

4    a party that's great.  But otherwise, don't call chambers with

5    questions, fax them in writing because we simply, we do have other

6    customers, believe it or not, and this would be impossible unless I

7    can designate one person for those calls and I don't have the luxury

8    of that.  So for the present time, if you have questions, and you

9    may have plenty, please fax them and make it a lot easier.

10           Janet on occasion will e-mail you and then of course you

11   can reply by e-mail.  My only request is please don't abuse that

12   because she has other customers, too, and we have tons of motions

13   right now.  So we're all busy just like all of you, just use your

14   discretion and limit that accordingly.

15           Judge, do you have anything else to say before we hear

16   from this illustrious group?

17           MAGISTRATE WILKINSON:  I am not sure that you said this or

18   not.  The preliminary report that we want from you all, Mr. Meunier

19   and Hubbard are going to type it up and send it in to us, we would

20   like it sent to us no later than April 4.  And for the scribes

21   purposes, it should be as inclusive of ideas as possible.

22           THE COURT:  One other thing I want to mention.  On April

23   6th when we have our next meeting, I am going to give you X days,

24   any others of you to file a motion to recuse, which I will hear.  I

25   am not going to do the thing which I would do normally that is let

1    you blindly recuse me.  I just think -- I've thought long and hard

2    about this and I know that I can be fair, you may not know that, but

3    I just think it's our responsibility.

4         This is not going to be a lot of fun for most of us

5    anyhow, unless you have a very strange sense of fun.  But it can be

6    done, I think, fairly and efficiently and in a civilized fashion.

7    But I will certainly look at a motion to recuse, if you file it, and

8    I know we already have one for all of the Middle District (SIC)

9    which I am going to hear.  And you might want to speak to that as

10   well and whatever else you want to speak about.

11        Realizing we are going to have another meeting on the 6th,

12   but you might want to speak about how you want to oppose, which I

13   have not even seen yet, if you want to oppose the motion of all of

14   the Eastern District judges, maybe you can get a group together and

15   file a master opposition.

16        MAGISTRATE WILKINSON:  Mr. Kirsch, when is that motion set

17   for hearing?

18        MR. KIRSCH:  19th I believe, your Honor.

19        MAGISTRATE WILKINSON:  Of April?

20        MR. KIRSCH:  April 19th.

21        MR. BECNEL:  May I speak?

22        THE COURT:  Yes, sir.  Anyone here may speak.  Mr. Becnel.

23        MR. BECNEL:  May it please the court, Daniel Becnel.  The

24   only reason I am trying to come first is I have to get out of here.

25        THE COURT:  I know that.

1       MR. BECNEL:  I have a rather important matter with all

2  deference to this court.

3       I think since you have used the term the Manual For

4  Complex Litigation, it might be wise for the court, and that manual

5  was first put together by Judge Pointer, Mr. Fayard and I were

6  involved with the breast implant case when he did that.

7       MAGISTRATE WILKINSON:  We are familiar with it,

8  Mr. Becnel.

9       MR. BECNEL:  But what I was going to suggest is that

10  federal judge, Judge Breyer last week in San Francisco has an MDL

11  case and appointed Judge Fern Smith who also served as the head of

12  the Federal Judicial Center for a number of years and has retired,

13  and he appointed her in a very, very complex case with glowing

14  reports.  I would suggest maybe someone of that caliber might help

15  all of us to reach compromise instead of having the court -- and I

16  would like the court to know that many of us are trying to do this

17  on a pro bono basis.  This is not a fee generating case for most of

18  us, unless some miracle happens.

19       The other thing I think mainly because my parish did not

20  suffer damage and we were kind of the jumping off point for the Army

21  and the State Police and everything else, probably I've heard from

22  more people than almost anybody else in terms of this.  Some of them

23  are so poor and so destitute that I think we need to do different

24  things.  Instead of forcing people, whether we do master complaints

25  or whether we do class actions or whether we do mass joinders, try

1   to streamline this, as is being done now in many of the federal

2   cases in the last few weeks, only because I've been appointed to

3   some of the committees and Medtronics and Bextra, Celebrex, et

4   cetera, they are allowing in the mass joinder to file just hundreds

5   of cases.

6        And Judge Fallon has allowed tolling agreements which is

7   an excellent idea for the parties to get together once you decide

8   who is doing what.  It just eliminates the clerk's office from being

9   inundated that we could possibly get some plaintiff fact sheet or

10  defendant fact sheet that is done.  But this is so massive I think

11  anything we've ever done, any of us in the past is just almost

12  irrelevant because we don't know what we're undertaking.

13       I've attempted to contact Author Miller at the Harvard Law

14  School and Ken Starr at Pepperdine to see if we could get assistance

15  from those type, one on the right, one on the left, let's say, law

16  schools and all of those in the middle, assistants as a major pro

17  bono project to assist in brief writing and organization and maybe

18  summer internships.

19       But I think this is the case that calls for this unique

20  thinking rather than what we've also done in the litigation mode,

21  and I would suggest to the court that we have to keep the costs

22  done, I know everybody runs out and gets these experts and we pay

23  tens of thousands of and millions of dollars for these experts, we

24  have a lot of people that have done a lot of this work already,

25  although nobody has been put under oath, the Corps of Engineers has

1   done their own research, the National Sciences Foundation.  Mr. Will

2   Percy of my office has contacted the head of those various people

3   and we could do some maybe expedited depositions dealing with the

4   finding or at least the facts before we get into gigantic motion

5   practice, before we get in even and kind of take class certification

6   as Judge Bechtel did in the Phen-Fen litigation and maybe hear

7   arguments on it if you have to, but maybe just put it on the side

8   and leave that until you develop some facts.

9          And I am certain that most of the lawyers around here,

10  Mr. Bruno has acted as a conduit for us and held a number of

11  meetings at his facility, Mr. Lambert has worked on it.  In fact,

12  many of the lawyers that are sitting here, Ms. Jacobs and others

13  have worked very hard over the last few months trying to figure out

14  how can we do this, (a) efficiently, how can we try to avoid, if

15  there is recovery, to charge these people money because even if

16  everybody paid everything that was other than the federal

17  government, I mean we can't even start to comprehend what we're

18  dealing with.  So -- and with the benefit of the federal judiciary

19  from around the country who are very sympathetic to the situation

20  and nobody knows how to handle this, nobody knows and there is no

21  road map.

22          So I just think we have to have innovative thinking and I

23  think we have to have more than just "the local bar" because it's

24  bigger than this area, it's bigger than all of us, and maybe none of

25  us know what we're getting into but we're here and we've got to be

```
 1    somewhere.  So I'd appreciate the opportunity to talk to you if I

 2    leave, I hope you don't take it the wrong way.

 3               THE COURT:  Absolutely not, Mr. Becnel.  Thank you, thank

 4    you very much.

 5               MR. BRUNO:  Judge, I rise.  We have met on numerous

 6    occasions and I can actually report preliminarily on many of the

 7    issues that you've raised, and I would like to do that now if I may.

 8    We have a little slide presentation.

 9               THE COURT:  Just for the record can show that Mr. Joe

10    Bruno is speaking.

11               MR. BRUNO:  I'm sorry, Joseph Bruno.  The slides are just,

12    for the purposes of indicating, your Honor, to the court --

13               THE COURT:  Excuse me just a minute.  Judge Wilkinson

14    isn't fortunate enough to have this.  All right.  Thank you.

15               MR. BRUNO:  Indicate to the court the nature of the claims

16    that have been made, not here to argue the correctness or

17    incorrectness or the position of the parties at this time.

18    Something just died.  I have the PC on.

19               THE COURT:  Just to let you know, unfortunately today we

20    are going to have to shut it down about 11:30.

21               MR. BRUNO:  I'll be brief, Judge.  Let me tell you that I

22    met with everyone, invited everyone who was on your list of cases

23    consolidated today.  Most of them did show up and we have met

24    several times so I believe I am giving you accurate information as

25    to some consensus.
```

1          We've also spoken to defense counsel and even have some

2     proposals that I think you will find are consistent with what you

3     just said.  Very briefly, Judge, that's Lady Katrina, just to

4     illustrate, some folks don't really understand how the winds went

5     but it's nothing more than an indication of where or how the winds

6     affected the community.

7          The next slide simply indicates the amount of water that

8     was actually sustained by the city.  You can see the little yellow

9     dotted lines.  All of the area within the yellow dotted line

10    sustained flooding, which as you can see is about 90% of the city of

11    New Orleans.

12         Here is an illustration of the protective barriers that

13    were supposed to be in place to guard against this water that we

14    just saw inundate the city.  You can see the 17th Street canal,

15    Orleans canal, London, the Inner Harbor Navigation Canal, sometimes

16    known as the Industrial Canal and then it's labeled MR-GO but it's

17    really two bodies of water, it's the Intracoastal Waterway which

18    then veers off to the MR-GO.  Now, here, Judge, is an indication of

19    where either breaches, all of the breaches that are reported by the

20    Corps of Engineers occurred.

21         If you start with the 17th Street canal you can see, and I

22    think this thing allows me to --

23         THE COURT:  You can zoom in or make a mark.

24         MR. BRUNO:  Anyway that's the breach of the 17th Street

25    canal, there were two breaches on the London Avenue canal, there was

1   two breaches of the Industrial Canal, which allowed water to go into

2   downtown New Orleans, and there was a breach of the Industrial Canal

3   which allows the water to go into the lower 9th Ward.  You can see

4   this line here, that's called Reach 1 of the MR-GO.  No real levee

5   breaches there.  This is called Reach 2 of the MR-GO and you can see

6   there's a large number of breaches there (INDICATING).

7        You talk a little bit about the MR-GO and whether or not

8   that may be a case to be brought here, I shouldn't say brought here

9   I should say included.  I just want you to be aware that the

10  allegation will likely be that the storm surge came from Lake Borgne

11  in what has been referred to as a funnel, the water went up the

12  Industrial Canal and believed to be responsible for the breaching of

13  the levees at the Industrial Canal, among other causes.

14       Now, I make that point, Judge, because the MR-GO will

15  likely be part of this umbrella of broken levees.  These are just

16  pictures of the --

17       THE COURT:  We are going off of ELMO?

18       MR. BRUNO:  Here we go.  I'm sorry, very quickly.  This is

19  a very interesting map because it allows you to see, and again this

20  is from the Times Picayune, nothing special about this, this allows

21  you to see a couple of things.  It allows you to see the water depth

22  in the various areas and how they relate to the various breaches.

23  Really what's interesting about this is you can see that there is a

24  natural barrier which would include an area likely to have been

25  damaged by the 17th Street canal, which is this area here bounded on

the north by the lake, on the west by the Jefferson Parish line, on

the east really by the Orleans Canal because the Orleans Canal

didn't breach at all, so the water mostly affected Lakeview and then

moved down into Mid City and then down into the Uptown area.

If you look at the colors of the map you can see the green

and the blue are higher levels, and you can see there really is an

easy way to draw a line around each of these areas.  The Lakeview

area here, the Gentilly area here affected by the 17th Street.  This

area, again you can see the Gentilly Boulevard ridge which goes to

the City Park Avenue and then into Metairie Road is a natural ridge,

which allows you to see that this area here is easily defined as an

area of major impact or significant impact from the breaches of the

Industrial Canal (INDICATING).

Lower 9th Ward likewise and New Orleans East from the

overtopping of levees from the MR-GO.  The point being that all of

these areas were impacted by broken levees or the failures by the

United States Corps of Engineers.  All of that to say this.  We see

the case divided into three larges areas with three subparts.  The

first area are the levee cases, which you've already talked about,

and that is people who are responsible for building and maintaining

those levees.  We believe that the Corps of Engineers' liability is,

should be treated as a separate grouping because, as you know, we

have to go through the administrative process.

THE COURT:  I did want to mention that because you have

the Federal Tort Claims Act.

1          MR. BRUNO:  Precisely.

2          THE COURT:  You have to go through the administrative

3     procedure, no question.

4          MR. BRUNO:  Exactly.  And the fact of the matter is that

5     there will be, we believe, thousands and thousands of claims made.

6     We will have to wait the six months, and there is no reason in the

7     world to delay any of what we do while that's going on.  There is

8     going to be litigation against the Corps of Engineers, there is no

9     question about it.  There will be litigation against the Corps

10    relative to the levee breaks, there will be litigation against the

11    Corps of Engineers relative to MR-GO.  But because of the

12    administrative component we think that needs to be treated

13    separately.

14          Then you've got the levee cases.  And again there's

15    allegations that the Levee Board is responsible for all three

16    breaches --

17          THE COURT:  None of which as I recall except a couple of

18    pro se mention the Corps, maybe one.  Most of them do not mention

19    the Corps as a defendant in the levee breach cases.

20          MR. BRUNO:  Right.  And the reason for that, since I

21    drafted the first lawsuit which you can see somewhat, if not very

22    similar to subsequent lawsuits, the logic was not to bring the Corps

23    for that administrative issue.

24          The final grouping of cases is what we call the insurance

25    cases.  The reason why they're in this soup at all is because the

1   allegation is that the insurance policies ought to cover water

2   damage resulting from breaks in levees.   That's the allegation,

3   good, bad or ugly.   There is a relationship.

4          Now the first thing is, we thank you very much for having

5   this hearing because one of the things that's delayed the filing of

6   these lawsuits there is a sense of this community that we really

7   didn't know which judge was going to end up with the case, and there

8   are a lot of lawyers out there who have been sort of waiting to see

9   where the thing is going to land.   So my first point is there will

10  be additional lawsuits that we know will be filed.   That's number

11  one.

12         The second thing is that we have met with the defense

13  counsel and we do have, I believe, a lot of agreements as to how we

14  should proceed.   We do agree, first, and obviously that the recusal

15  issue should be taken up and should be taken up once and only once

16  and be resolved and we can decide and move on.

17         The next issue that we believe should be taken up is

18  remand.   And again, because we've got all of these different types

19  of cases that regard what we believe to be these similar issues,

20  they should naturally be taken up at one time, in one place so we

21  know where these cases are going to land.   And that obviously

22  impacts --

23         THE COURT:   We are very much in agreement on that.

24         MR. BRUNO:   I think the defendants are in the same view,

25  you have the CAFA issues, if not --

```
1           THE COURT:  Oddly enough, I have quite a few CAFA issues

2    already.

3           MR. BRUNO:  As the court knows and the parties know it

4    would apply to mass joinders in any case.  So we haven't decided

5    even whether we want to pursue --

6           THE COURT:  Attempt to remand on the basis of CAFA you're

7    talking about?

8           MR. BRUNO:  No, my point is that CAFA would -- I make that

9    point for this point.  We may not proceed with the motions for class

10   certification, we may decide to handle this as a mass joinder.  And

11   the fact is that if we did that CAFA would still have some

12   application, so that's something that the court needs to consider.

13          And as an aside, I would like to ask the court on behalf

14   of all of the parties to allow us to stay or put off the requirement

15   that we file the motion for certification within the 90 days

16   because -- and I don't know that anybody --

17          THE COURT:  That was something I was already thinking

18   about, in the April 6th meeting and in the report we talked about

19   earlier you can, of course, talk to Mr. Meunier, and in the report

20   of things you want us to consider, we will make that decision on

21   April the 6th, but I think it's certainly my initial reaction is

22   that's what I plan to do anyway.

23          MR. BRUNO:  I want to make the point we are all of one

24   mind that, we're already discussed that and we are there.

25          THE COURT:  Sure, it makes sense.
```

```
 1          MR. BRUNO:  The next issue that we want to discuss, we

 2     have discussed this with the defense, and your Honor is right, it's

 3     there already.  There are many motions that would be dispositive, of

 4     particular defendant's liability, some which may or may not require

 5     discovery.  Our thinking is that we ask the defendants to simply

 6     identify what those motions might be.  And then the plaintiffs would

 7     have an opportunity to say, well, we need or don't need discovery;

 8     in other words, we could hash that issue out.  If we could agree

 9     that there is no discovery on a particular motion, those would go to

10     the top.

11          MAGISTRATE WILKINSON:  This is exactly the sort of thing

12     we want you to put in that report.  Mr. Becnel raised the specter of

13     massive motion practice, that's not what we have in mind for these

14     initial motion filings.  What we have in mind are basically the

15     things you just mentioned, remand, recusal --

16          THE COURT:  Immunity.

17          MAGISTRATE WILKINSON:  Immunity.

18          MR. BRUNO:  Preemption, prescription.

19          MAGISTRATE WILKINSON:  The basic kinds of things that will

20     help us define who is involved and let us go forward.

21          MR. BRUNO:  My point is, Judge, we're there.  We are

22     there.  You will get the report but we've already decided and I am

23     here to report we're there.

24          THE COURT:  Very encouraging.

25          MR. BRUNO:  And in discussions with defense counsel as
```

1    recently as about 15 minutes ago, their only concern, as I

2    understand it, is to get the recusal issues, once that's resolved --

3         THE COURT:  I am, too.  Let me say that the recusal issues

4    impact this court and me in particular quite a bit.  When I say

5    because we don't -- let's get it done.  I want to give it time, a

6    specific time when the recusal motions must be filed.  We already

7    have one, but it relates to all of the judges in the Eastern

8    District.  That's a different motion than recusing Judge Duval

9    and/or Judge Wilkinson.

10         I can just tell you this.  I haven't read your motion,

11   Mr. Kirsch, but it's highly unlikely, unless there is a statutory

12   violation, you are going to prevail on that motion.  But I am going

13   to look at it.

14         MR. BRUNO:  Judge, consider this --

15         THE COURT:  We need to get the individual motions filed,

16   too.

17         MR. BRUNO:  I agree.  But we need to address the en banc,

18   if you will, or the venue issues first because you also have Judge

19   Vance, as you said, she's got all of those cases.  The logic to me

20   is if for -- my point is if for some reason this whole bench can't

21   handle hurricane related cases and they can't handle any

22   hurricane -- or at least you would want one consistent ruling across

23   the board.  So that's why I think we take the en banc issue first,

24   and you're correct the next issue would be a particular judge should

25   be recused or not recused.

```
 1            THE COURT:  En banc is going to be quick.  So I am going

 2   to give you a specific time to file for recusal, you and anybody

 3   else to do that.  I might do that today and confer with judge --

 4            MR. BRUNO:  I can tell you right now the plaintiffs have

 5   no intention and will oppose any such motion to recuse this bench.

 6   We think the case has got to say here for any number of reasons,

 7   this is our community, our people are hurt, our people are affected

 8   and that's enough said.

 9            THE COURT:  I might want to hear from a defense counsel.

10   But I think they need the opportunity to file that and I am going to

11   give them X number of days, whoever wants to do this, plaintiff or

12   defense.

13            MR. BRUNO:  Right.  In any case, Judge, so then we would

14   resolve the issue of how much discovery.  We would hope to be able

15   to do that by agreement; and if we couldn't, we would just submit to

16   you alternative plans of how much discovery would be necessary on a

17   particular type or series of motions.

18            THE COURT:  Absolutely.

19            MR. BRUNO:  The discovery, Judge, you may not realize, a

20   lot of this discovery is on the internet already, it's there.  It's

21   going to be a little different than you normally see.  A lot of this

22   information is out there, and Mr. Becnel is right, there's a lot of

23   stuff that has been done by a lot of experts on this issue.  And

24   frankly, we would like to have as many of these dispositive issues

25   moved to the front.
```

```
1              As I said, it's unfortunate I had frankly hoped that the
2    United States would not make the people of this community jump
3    through this administrative hoop.  We are going to get there.
4    Apparently they are going make us wait six months and that's fine.
5    But that is kind of looming out there and many of the issues and
6    many of the rulings may impact that subsequent litigation.  So I
7    would like you to kind of, I don't know how to say this except to
8    say keep an eye on it or maybe if there was some way to
9    administratively close those cases and put off the ruling.  I
10   understand the argument about jurisdiction, believe me.  I didn't
11   file an opposition in Greer --
12              THE COURT:  Which cases are we talking about?
13              MR. BRUNO:  We're talking about Greer.
14              THE COURT:  Those, Greer has been dismissed.
15              MR. BRUNO:  You dismissed it.  And you have Dahlgren which
16   is a MR-GO case.  Just think about parking that somewhere, I
17   understand.  We will not file an opposition to the motion to dismiss
18   for jurisdictional issues, we did not file the Form 95.  We are
19   going to file the Form 95 and we are going to, you will see,
20   hundreds of thousands of these 95 forms filed.  It's going to
21   happen.
22              I just think that, well, I would just pray that the United
23   States of America would recognize that it's an issue that's
24   ultimately going to be before somebody at some point in time.  Why
25   don't we all be stand up about it and just try to plan for it.  My
```

1    only request for you is that it be under this umbrella, I'll just

2    leave it at that.

3            THE COURT:  All right.  I understand.

4            MR. BRUNO:  And, Judge, I think that's all I have to say.

5    Let me just check my notes.  I thought had made some other points.

6            Oh, master complaint, we've already agreed, the plaintiffs

7    have gotten together, we can either make our pleadings conform or

8    file a master complaint.  Our only thought was it would be one

9    complaint and not a complaint for each --

10           THE COURT:  I am going to tell you, Mr. Bruno, to try to

11   certify this as one class action for every, it's going to be

12   extraordinary --

13           MR. BRUNO:  Judge, I didn't mean to suggest that it would

14   be for certification purposes, rather I would suggest that it would

15   be a master complaint for the purposes of allowing you and the

16   defendants to file all of the dispositive motions.

17           THE COURT:  I see.  Okay.

18           MR. BRUNO:  Because the truth of it is, when you think

19   about it, a motion to certify could be a part of the case or a

20   section or something.  There is any number of ways to address this

21   business --

22           THE COURT:  Ultimately we do have to engage in the

23   certification hearing if we get past all of this.

24           MR. BRUNO:  Exactly.

25           THE COURT:  Unless you make it a mass joinder case and you

1    name everybody individually.

2         MR. BRUNO:  Precisely.  And that's why our original

3    thought was, Judge, we will give you a master complaint, one master

4    complaint, lay it all out --

5         THE COURT:  Give me your thoughts on April 6, but I

6    understand what your thinking is, but eventually we will have to

7    cross the certification bridge, unless you choose to do it another

8    way.

9         MR. BRUNO:  We are of this mind.  We would like to put

10   that off for now.

11        THE COURT:  I understand.

12        MR. BRUNO:  We would like to resolve what I would call

13   them preliminary dispositive.  In the state court we call them, you

14   know, exceptions of no cause of action.

15        THE COURT:  I understand your dilatory conclusory

16   exceptions of state court and here as well.

17        MR. BRUNO:  Thank you for helping me with that.

18        THE COURT:  I can remember a little of that.  I filed

19   quite a few of them in my day.

20        MR. BRUNO:  Judge, that's it unless you have some

21   questions.

22        THE COURT:  Mr. O'Dwyer, you raised your hand, and I am

23   interested in what the defendants might have to say about this, too.

24        MR. O'DWYER:  Just two quick points, your Honor.  For the

25   benefit of plaintiff's counsel in the room that may not know what

1    the Form 95 is, there is no requirement that a Form 95 be filed.  An

2    administrative claim can be perfected by a letter that identifies

3    the plaintiff, sets forth the identity of the agency against whom

4    the claim is being made, sets forth the basis of the claim and sets

5    forth some cert.  It can be done by letter there is no requirement

6    for a Form 95.

7           The second point I wanted to make, your Honor, I heard

8    your Honor say that these cases do not involve MR-GO.  Maureen

9    O'Dwyer, 05-4181, most definitely involves MR-GO.  I filed a claim

10   against the Corps of Engineers dealing with the defective design,

11   construction, inspection and maintenance of the MR-GO way back when,

12   months ago.  And I have recently filed an amendment which is pending

13   before Magistrate Knowles for next Wednesday.  I don't know whether

14   Magistrate Wilkinson is going to rule on that motion or not.

15          He just ruled on a similar motion granting me leave to

16   amend Parfait and my claim and third-party complaint against the

17   government in Ingram allowing the amendment to assert a claim for

18   the defective design of an entire navigable waterway system;

19   including the Mississippi River Gulf outlet, the Gulf Intracoastal

20   Waterway, the Inner Harbor Navigation Canal, also known as the

21   Industrial Canal, the 17th Street canal and the London Avenue canal,

22   all of which are navigable waters of the United States, your Honor.

23   So this case does involve MR-GO.

24          THE COURT:  I think I mentioned the paragraph that we read

25   earlier.  Yes, Ms. Barrasso.

```
1              MS. BARRASSO:  Judge, I just want to continue my mantra

2    about the insurance coverage issues.  I am also involved in the

3    Chehardy case, as is Mr. Lee.  And we believe that those, that the

4    insurance coverage issues are completely separate from this case.

5    And the Chehardy case we had filed motion for judgment on the

6    pleadings way back in October, and that issue on coverage which

7    would be dispositive of the whole case if granted --

8              THE COURT:  You would acknowledge the allegations as true?

9              MS. BARRASSO:  Yes, Judge.

10             THE COURT:  In other words, you would say, yes, there was

11   negligence in these canal breaches.  Now, if you lose then, but then

12   they're related.

13             MS. BARRASSO:  Judge, what we would ask that those

14   dispositive motions be considered first before you throw us into

15   this.

16             THE COURT:  Absolutely.  Any 12(b)(6) motions that don't

17   require discovery, I would certainly consider them.

18             MS. BARRASSO:  And we would ask before you throw us into

19   this and throw us into those procedures --

20             MAGISTRATE WILKINSON:  Is it fully briefed?

21             MS. BARRASSO:  The plaintiffs have not responded yet and

22   we had asked -- Judge Polozola spent a lot of time --

23             THE COURT:  I will decide that when it comes to me and

24   it's set for hearing.

25             MS. BARRASSO:  Judge, it's a legal issue and we think
```

```
 1   either way it's decided --
 2           THE COURT:  Pleadings are true still no coverage.
 3           MS. BARRASSO:  Exactly.  And the three companies that are
 4   left in that case I think have has had the motion pending, and we
 5   think that either way it's a type of issue that should go up to the
 6   Fifth Circuit, it's a legal issue.
 7           THE COURT:  It'll go up to the Fifth Circuit eventually
 8   whether I think it should right away or think, I don't know.
 9   Depends how right you are.  Yes.
10           MR. SEEMANN:  Charles Seemann.  I understand Judge
11   Wilkinson's about putting it all in the report and writing, there
12   are a couple of things that might be addressed.  No. 1, the state of
13   the U.S. Mail today is uncertain at best and I think the court ought
14   to consider ordering some form of duplicative service of papers.
15   I'm finding sometimes it takes one week for mail to get from one
16   place in New Orleans to another, if you're coming from outside the
17   city it can take more time.
18           MAGISTRATE WILKINSON:  What mode of service alternatively
19   do you suggest?
20           MR. SEEMANN:  It's up to the court.
21           THE COURT:  We are going have electronic service but
22   probably not for another, it's going to come in incrementally, we
23   won't probably have in about six months.
24           MR. SEEMANN:  Fax would work for the short-term but that's
25   something we need now.
```

1          The sign in sheet identifying all of the lawyers and all

2     of the players in the different suits, will that be available to us?

3          THE COURT:  I will get you, the court reporter will, since

4     it was announced we will have that transcribed and try to e-mail it

5     to you, if we have e-mail addresses.

6          MR. SEEMANN:  Should I just e-mail my address to chambers

7     or what?

8          THE COURT:  We have, we have it I'm sure if you filed a

9     pleadings.

10         MR. SEEMANN:  I am not sure that I filed a pleading.

11         MAGISTRATE WILKINSON:  Make arrangements with the court

12    reporter to send you whatever mode you want to send you a list of

13    lawyers who made appearances today.

14         MR. SEEMANN:  And the last item while it addresses itself

15    to the conference on April 6th has immediate practical consequences

16    for some us, which is you made the inquiry about why defendants

17    haven't answered when the suits are out there and so forth.  One of

18    the problems is the enormous number of trees have already given

19    their lives for the paper in this litigation, and Judge Porteous put

20    a stay on pleadings with the idea of maybe getting a master

21    complaint, at least that's the way I understood.

22         I am wondering if we can have a blanket relief from

23    answering, I join with Mr. Bruno in the idea that I've got

24    relatively small insurance limits for this coverage and they

25    declined by the cost of defense.  So it's a very real expense to

1  answer seven detailed complaints, many of which are practically

2  identical.  If we can have relief until they're all put in a master

3  complaint, it would make an awful lot of sense and the record would

4  be measured in inches instead of feet.

5       THE COURT:  Maybe April 6 is not that far away maybe we

6  can get that all.

7       MR. BRUNO:  I forgot to mention.

8       THE COURT:  Nobody is going to default you or dismiss you

9  now.

10      MR. SEEMANN:  That's the only issue.

11      MAGISTRATE WILKINSON:  We didn't mean to suggest that

12  everybody had to answer by April 6th.  What was meant is April 6 --

13      THE COURT:  Tell us why and now you are telling us why.

14      MR. BRUNO:  When the case was before Judge Porteous we had

15  agreed to have the case, the pleadings either be similar in that we

16  would serve everybody and that we would waive service.

17      THE COURT:  We will to save your clients --

18      MR. SEEMANN:  Frankly the only reason I haven't waived

19  service in some of them is just to try to wait --

20      THE COURT:  Certainly at this point let's have a

21  standstill of entering on defaults.

22      MR. SEEMANN:  I wanted that to be on the record.

23      THE COURT:  All right.  That's on the record.  Mr. Lee,

24  Wayne Lee.

25      MR. LEE:  Just a couple of questions mostly for

1    clarification.  As Ms. Barrasso noted I am a party in the Chehardy

2    cases, and I don't know whether the court has actually made a

3    decision whether it's going to be before the court or not or under

4    this umbrella?

5              THE COURT:  Right now if Encompass is under the umbrella,

6    you're under the umbrella because it's somewhat related to

7    Encompass.  When I say the umbrella, it may be a separate umbrella

8    but they're all in Section K right now anyhow.

9              MR. LEE:  Chehardy is the one that's been transferred.

10             THE COURT:  Right.

11             MR. LEE:  If it's here that's fine, your Honor, we just

12   need to know the process and when we will be able to start putting

13   things on the docket which we assume will come offer the April 6th

14   conference.

15             THE COURT:  Yes.

16             MR. LEE:  What we do have, we have a different category

17   which is not just the Encompass type case which includes Vanderbrook

18   which is not a class, where we don't have class action parties here

19   at all.  And with respect to those, for example --

20             THE COURT:  Except for Chehardy came in, all of the

21   insurance cases involving the Levee Board and/or the homeowners

22   insurer were not class actions.

23             MR. LEE:  That's correct, your Honor.

24             THE COURT:  I intend to put those in a separate category

25   to some degree.  If we're getting to a point where we're having

1   discovery, if say you lose your preliminary motions on coverage

2   because if I find, well, if I read the complaint and if they prove

3   that there may be coverage, I'm not sure what we do because then

4   coverage is dependent upon a finding of negligence in reference to

5   the breach.

6          MR. LEE:  In Vanderbrook, for example, we haven't gotten

7   to the point of that issue yet because we've got still pending

8   motions for severance.

9          THE COURT:  You have a motion to remand in a lot of these

10  cases.

11         MR. LEE:  That's correct.

12         THE COURT:  Which I have not ruled upon.

13         MR. LEE:  We will be addressing that and I am not quite

14  sure to what extent that that fits under how you anticipate the

15  umbrella fitting.

16         THE COURT:  I am not sure either, it's one of my

17  conundrums.  I understand it's difficult, absolutely.

18         MR. LEE:  And the last category, your Honor, I am also

19  involved in the Sullivan case which we have motions pending right

20  now for the 5th, which really it doesn't fit any of this --

21         THE COURT:  The Sullivan case I happen to have, I think

22  just by random allotment.

23         MR. LEE:  That's correct, your Honor.

24         THE COURT:  Yes.

25         MR. LEE:  Since it was noticed I want, I didn't know

1   whether you were considering us part of the levee grouping?

2          THE COURT:  Not really, no.

3          MR. LEE:  Is not, thank you.

4          THE COURT:  I don't think I am.  I didn't notice if it's

5   in the group.  It's not.

6          MR. LEE:  Thank you, your Honor.

7          THE COURT:  Thank you.

8          MR. FAYARD:  Judge, Calvin Fayard.  Have you recognized

9   someone else?

10         THE COURT:  No, sir.

11         MR. FAYARD:  Friendship or not friendship aside, I had a

12   checklist of about two pages to go through today with respect to

13   organization, and from my perspective I think they've all been

14   touched on.  I don't see a need to reiterate any of that except a

15   couple of things.

16       No. 1, as the court knows organization is extremely

17   important in a matter like this.  I would suggest that we have

18   regular meetings.  I understand calendars of everyone, including the

19   court, you have a lot of business going on other than this case.

20   However, we can meet late in the afternoon or early in the morning

21   and I think regular meetings, even on a weekly basis at the

22   beginning would be extremely beneficial.

23       We did that in this very courtroom on another case many

24   years ago, and the judge found that afternoons worked very well with

25   people that had travel and they would get through their morning

1    dockets.

2         Recusal is something that has to be addressed, and I agree

3    with the court on that as well as the immunity issues and the other

4    issues with respect to other cases.

5         Now, on the Chehardy case, and that's why I rise.  I am

6    assuming I am before this court until I am told otherwise.

7         THE COURT:  Yes, sir.

8         MR. FAYARD:  I am going to comply with the orders of this

9    court, and I will submit and my cocounsel will submit to the scribes

10   and thereafter to the court the organization that we think needs to

11   be implemented with respect to those cases.  I cannot, however,

12   leave your Honor with the impression that they are in the posture as

13   the defendants have described ready for dismissal.  They are not.

14        These cases were brought in state court in East Baton

15   Rouge Parish, the Commissioner of Insurance was named as a defendant

16   and the defendants removed them to the Middle District court.  The

17   Middle District court has dismissed the insurance commissioner, has

18   retained jurisdiction, but transferred the cases over the

19   defendant's objection to this court.

20        So once we're here, we are ready, but the case will be in

21   a little different posture, I think, with many additional issues.

22        Now, presently on the pleadings, Judge, we as a plaintiffs

23   did not want to be in Baton Rouge because we didn't want to be in a

24   vacuum, we didn't want to be in a closet.  We need to be in the

25   courtroom where the decisions that are made that impact our case,

1    and that's this courtroom today.  Tomorrow it may be somewhere else,

2    I am not sure because we got to get through these preliminary

3    motions and the court has to make those decisions.

4           If you send us to Texas, we will address it in Texas.  But

5    right now I think we're here.  And so we want the opportunity and we

6    appreciate the opportunity to give our positions to your Honor by

7    April the 6th and we will be present in court to discuss those.

8           Now, just one question about the committee.  And I am not

9    rising, I am not volunteering and I am not nominating myself or

10   anyone else.

11          MR. BECNEL:  I am going to nominate him.

12          MR. FAYARD:  But I have been asked in the back.  Do the

13   applications need to be in by the 6th or are you envisioning that at

14   some later date?

15          THE COURT:  I am envisioning on the 6th giving you a

16   deadline for the applications.  So you don't have to put the

17   applications in now.  On the 6th I will tell you anybody who wants

18   to apply you have until April 15th or whatever date you think is

19   reasonable.  That's really what I was thinking.

20          MR. FAYARD:  Thank you, Judge.

21          THE COURT:  Once we decide what we think the committee

22   structure should be.

23          MR. FAYARD:  If the criteria is to be technically educated

24   like Mr. Bruno where he put his notes up on the screen, I probably

25   won't --

1          THE COURT:  Thank you, Mr. Fayard, I feel your pain.

2          MR. PENDLEY:  May it please the court, your Honor, Patrick

3     Pendley for the Slaton case.  For those of us who have, compared to

4     the few number that are not, that are here in this court, we would

5     assume, with the consent of the court, we would like, at least I

6     would anyway, like to participate in the process as outlined by the

7     court until it's affirmatively established that I won't be here.

8          THE COURT:  Has the Slaton case been transferred?

9          MR. PENDLEY:  I have no knowledge of that.

10          THE COURT:  Can you tell me a little bit about it, Mr.

11     Pendley?

12          MR. PENDLEY:  It's a suit against Orleans Levee Board

13     only.

14          MAGISTRATE WILKINSON:   What court?

15          MR. PENDLEY:  It's in the Middle District, Judge Parker.

16          THE COURT:  To my knowledge he has not transferred it yet,

17     but we will certainly include you since you have, as a courtesy to

18     you, Mr. Pendley, we will do that whether we have it or not.

19          MR. PENDLEY:  Thank you, Judge.

20          THE COURT:  Do you have the number, please?

21          MR. PENDLEY:  I gave it earlier, Judge.

22          THE COURT:  It's on the record.

23          MR. PENDLEY:  CA-05-1138(A), which is Judge Parker's

24     division.

25          THE COURT:  Thank you very much.

 1             MAGISTRATE WILKINSON:  Has anybody asked him to transfer

 2    it down here, Mr. Pendley?

 3             MR. PENDLEY:  No, Judge.

 4             THE COURT:  I won't be sending him any letters.

 5             MR. PENDLEY:  I think it was the adverse, Judge, that the

 6    motion was to go up to Baton Rouge.

 7             THE COURT:  Right.

 8             MR. HONEYCUTT:  Dwayne Honeycutt, actually our case is

 9    consolidated with the Slaton case, and it was my understanding that

10    the magistrate had indicated that Judge Parker was waiting for Judge

11    Polozola to make a ruling.

12             THE COURT:  So you think it's coming?

13             MR. HONEYCUTT:  It's my understanding --

14             THE COURT:  The case is in the mail, so to speak.

15             MR. HONEYCUTT:  But no official order yet.

16             THE COURT:  Okay.  Thank you.

17             MR. WILES:  May it please the court, Stephen Wiles, your

18    Honor.  When we first met with Judge Porteous we had some discrete

19    assignments with respect to the master complaint, service of process

20    that were placed on Mr. Bruno.  And I am just trying to get some

21    clarification of how we are going to proceed with that considering

22    what Judge Wilkinson said this morning as to -- we have been meeting

23    and working on that, are we to continue that assignment --

24             THE COURT:  You've heard what I said today.  I am going to

25    crystallize it better on the 6th.  I made no specific decision about

1    whether I think, a master complaint that would encompass what

2    actions, there are a lot of complaints, there's a lot of different

3    things here so I need to know the nature of the master complaint and

4    you need to talk about it now that you've heard all of this.  So I

5    think we're probably going to defer that until the 6th, if I

6    understand what you're saying.

7          Because I think Mr. Bruno is saying, well, let's have a

8    master complaint where we all get together, make one master

9    complaint which is going to include everything, which is not going

10   to go for class certification.  I am telling you, you understand

11   that if we do get to a class certification situation I am going to

12   strongly urge you break up the master complaint and do several

13   master complaints, I don't know how many yet.

14         But for the purposes of organization you feel like it's a

15   good idea here, you need to sit down, now that you've heard what

16   other cases we may have, what you think this master complaint might

17   encompass.  And on the 6th we will make a final decision on that.

18         MR. WILES:  Thank you, your Honor.

19         THE COURT:  Anything else?  Mr. Meunier, Mr. Hubbard.  Now

20   that you've been labeled as scribes, have you taken minutes of this

21   meeting?

22         MR. MEUNIER:  I've tried, your Honor, and I have some good

23   note takers with me, but I believe the substantive I have.  And

24   Ralph and I would just like to address some of the logistics of the

25   report.

1        THE COURT:  Yes, sir.

2        MR. MEUNIER:  First of all, let me get some contact

3   information for people who are listening so that we can send me by

4   e-mail, for example, what they may suggest for inclusion in the

5   report.  My e-mail address is gmeunier@gainsben.com.

6        MR. HUBBARD:  And I would appreciate, Ralph Hubbard, the

7   other scribe, I would appreciate it if everybody would send, on the

8   defense side -- I think we should do it everybody on the plaintiff

9   side send their e-mail information and address book for them and all

10  of the defendants would send their initial e-mail today preferably

11  to the e-mail address I am about to give you, we will create an

12  address book for defendants and will have two separate address books

13  and Jerry and I can swap back and forth so we can that communicate

14  with everybody or just plaintiffs or just defendants because we have

15  a pretty short time frame we are working with here.

16        And I am going to give you my e-mail address as well,

17  Ms. Joe Guichet who works with me in my office and I would

18  appreciate it if you send your initial e-mail to him just to keep

19  from loading up my box.  And that address is jguichet@lawla.com.

20  And I have the same email address but it's rhubbard@lawla.com.

21        THE COURT:  You're not involved with scientology, are you?

22        MR. HUBBARD:  I have nothing to do -- no relation.

23        THE COURT:  I am teasing, that's a joke.

24        MR. HUBBARD:  I only wish I had written all of those books

25  or sold all of those books anyway.

1        THE COURT:  Right.  Exactly.  If you would please, when

2   you get this master list please email it to Janet.

3        MR. HUBBARD:  Certainly we will do that.

4        THE COURT:  And she will give you her email address.

5        MR. HUBBARD:  And you send it to me and Gerry, please

6   include your address, telephone number, your fax number and who you

7   represent.  And then we will talk some more today and get back to

8   everybody about whether there's going to be a meeting or when there

9   would be one and the like.

10        MR. MEUNIER:  Our thought was that we would first get sent

11   to us all of the various ideas for inclusion in the joint report,

12   you've heard a lot of discussion about that already from counsel,

13   and then when Ralph and I assemble all of that probably would make

14   sense for us to set up some sort of meeting together with

15   appropriate people there so that we can fashion this joint report on

16   time for you.  Because we are on a fairly short time schedule.

17        THE COURT:  I agree.  And understand that we realize this

18   is an imperfect world and we all have constraints.  So if there is

19   something else that needs to be refined, we are going to work with

20   you.  We are going to be imperious in our notice, but hopefully

21   reasonable in every other aspect of this matter.

22        MR. MEUNIER:  Thank you, Judge.

23        MAGISTRATE WILKINSON:  One thing that Mr. Becnel mentioned

24   earlier and I would like to have as an attachment to this report.

25   If there is a list of experts who everyone recognizes to be experts

1    have already conducted studies and maybe reached conclusions about

2    failure mode, why don't you attach that to this report so that we

3    can see who it is you think already is out there in the expert world

4    so that there wouldn't be additional, so that we can consider

5    holding the expense down of retaining further experts to do things.

6         MR. BECNEL:  Judge, it was the National Sciences

7    Foundation and it's a professor of civil engineering out of, Dr. Vee

8    (PHONETIC) out of Stanford.

9         MAGISTRATE WILKINSON:  There may be some others as well.

10        MR. BECNEL:  There's a number of them, he was the head,

11   independently appointed head.

12        THE COURT:  Back to the recusal issue because it drives

13   everything else.  I would hate -- look, all of you and your clients

14   deserve a court that's going to be stable.  I am telling you that I

15   am not talking about mentally stable, but at least not a lot, no

16   more additional allotments to other judges stable.  So I'd like, I'm

17   interested in when you think you might like to be able to -- we have

18   Mr. Kirsch's, the omnibus recusal issue, but I am interested in one

19   that's going to relate to Judge Duval and Judge Wilkinson.

20         She's got a note here and I'm sure it has some relevance,

21   it doesn't dawn on me quite yet.  I was born and practiced law in

22   Houma, Louisiana.  I've only been here as a result of President

23   Clinton's brilliance in appointing me as a federal judge.  I am not

24   a native New Orleanian, I was born here but only stayed here for

25   three days.  And probably saying I don't know my way around the

```
 1   city.
 2            MAGISTRATE WILKINSON:  I guess I should disclose I was
 3   born in Terrytown and I live in Gretna.  I don't know what that has
 4   to do with anything.
 5            THE COURT:  But the recusal issue really does concern me,
 6   so I'd like a motion, if there's going to be a motion to recuse me,
 7   I would like to get a time limit.
 8             Do any of you have any idea what would be a reasonable
 9   time limit to file a motion for recusal so we can get that disposed
10   of.
11            MR. BECNEL:  Five days.
12            MR. MEUNIER:  I think the facts are known, I don't think
13   we need to delay the filing too much.
14            THE COURT:  I would like it filed on or before April 6th
15   in notice for the next hearing date.  I will be in Caneel Bay,
16   sorry.  I will be.
17            MR. MEUNIER:  Any motions to recuse at all need to be
18   filed by that time?
19            THE COURT:  Any motions about recusal need to be filed on
20   or before April 5th so we will have them in hand for the meeting.
21   And notice them and -- well, nobody will have a chance to file an
22   opposition to it.  We'll get it straight.  Anything else?  We have a
23   few minutes.
24            MR. O'DWYER:  I have one question.
25            THE COURT:  Yes, sir, Mr. O'Dwyer.
```

1        MR. O'DWYER:  Your Honor, can Judge Wilkinson address my

2   motion whether or not the motion to leave to amend that is set for

3   hearing before Judge Knowles next Wednesday for the 29th will be

4   transferred to your Honor?

5        MAGISTRATE WILKINSON:  I think what we're going to do is

6   sever out your Jefferson Parish pump operator claim out from that

7   case and assign it a separate number, it's going to be allotted to,

8   it's already allotted to Judge Duval.  That is going to be allotted

9   to Judge Knowles, and the remainder of 4181 is going to be

10  reallotted to me where it was originally.

11       MR. O'DWYER:  There is that motion to be heard next

12  Wednesday that you should be aware of.

13       MAGISTRATE WILKINSON:  I'm sure the ruling that would

14  result would be the same whether it was me or Knowles.

15       MR. BECNEL:  The other thing I wanted to disclose, my

16  daughter-in-law formerly was with the U.S. Attorney's Office

17  resigned this past month.  My other daughter-in-law was with the

18  City Attorney's Office and has resigned this past month.  So I don't

19  think I have any conflicts, neither one of them work on either one

20  of these cases on either side.

21       THE COURT:  Okay.  I think we've had a lot of disclosure.

22  The only one that I didn't make is my wonderful courtroom deputy

23  Sheena Demas lived in New Orleans East, she's now in the paradise of

24  the western world Houma, Louisiana, with her family but she commutes

25  here.  But she was flooded, she obviously she is my courtroom

1   deputy, but I just thought I should divulge it.

2           All right.  We really appreciate all of you coming and we

3   will continue to meet.

4           THE DEPUTY CLERK:  All rise.

5       (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

6

7                           * * * * * *

8

9

10                     REPORTER'S CERTIFICATE

11

12       I, Karen A. Ibos, CCR, Official Court Reporter, United States

13   District Court, Eastern District of Louisiana, do hereby certify

14   that the foregoing is a true and correct transcript, to the best of

15   my ability and understanding, from the record of the proceedings in

16   the above-entitled and numbered matter.

17

18

19                         _____

20                         Karen A. Ibos, CCR, RPR

21                         Official Court Reporter

22

23

24

25

## 0

**05-4181** [5] - 11:17, 12:4, 12:8, 12:12, 12:25
**05-4568** [1] - 12:17
**05-5237** [1] - 11:20
**05-5709** [1] - 11:21
**05-6073** [1] - 13:8
**05-6314** [1] - 12:15
**05-6323** [1] - 12:20
**05-6327** [1] - 11:21
**05-6359** [1] - 13:4
**05-CV-0004** [1] - 3:1
**05-CV-1140** [1] - 4:8
**05-CV-1301** [1] - 4:4
**05-CV-4181** [1] - 1:3
**05-CV-4182** [1] - 1:6
**05-CV-4191** [1] - 1:10
**05-CV-4568** [1] - 1:14
**05-CV-5237** [1] - 1:18
**05-CV-5709** [1] - 1:22
**05-CV-6069** [1] - 2:1
**05-CV-6073** [1] - 2:5
**05-CV-6314** [1] - 2:9
**05-CV-6323** [1] - 2:12
**05-CV-6324** [1] - 2:15
**05-CV-6327** [1] - 2:19
**05-CV-6359** [1] - 2:22
**06-0188** [1] - 11:22
**06-0225** [1] - 13:4
**06-0886** [1] - 13:22
**06-20** [1] - 11:25
**06-CV-0020** [1] - 3:5
**06-CV-0151** [1] - 3:9
**06-CV-0152** [1] - 3:12
**06-CV-0169** [1] - 3:18
**06-CV-0225** [1] - 3:21
**06-CV-0886** [1] - 4:1
**06-CV-153** [1] - 3:15
**06103-3597** [1] - 7:23

## 1

**1001** [1] - 6:15
**1010** [1] - 5:19
**106** [1] - 5:10
**1100** [3] - 4:24, 5:21, 8:4

**11814** [1] - 10:6
**1300** [1] - 9:3
**1615** [1] - 8:18
**1725** [1] - 9:14
**1800** [1] - 10:2

## 2

**200** [2] - 6:15, 8:18
**2000** [1] - 9:21
**20001-2113** [1] - 6:24
**20044** [1] - 9:9
**2006** [24] - 1:4, 1:7, 1:11, 1:15, 1:19, 1:23, 2:2, 2:6, 2:10, 2:13, 2:16, 2:20, 2:23, 3:2, 3:6, 3:10, 3:13, 3:16, 3:19, 3:22, 4:2, 4:5, 4:9, 11:2
**201** [4] - 5:4, 7:3, 7:14, 8:11
**2050** [1] - 5:19
**209** [1] - 5:7
**2150** [1] - 5:14
**24** [24] - 1:4, 1:7, 1:11, 1:15, 1:19, 1:23, 2:2, 2:6, 2:10, 2:13, 2:16, 2:20, 2:23, 3:2, 3:6, 3:10, 3:13, 3:16, 3:19, 3:22, 4:2, 4:5, 4:9, 11:2
**24110** [1] - 6:5
**2610** [1] - 5:21
**2670** [1] - 5:11
**2775** [1] - 7:19
**280** [1] - 7:23
**2800** [1] - 4:24

## 3

**30** [1] - 11:9
**30th** [1] - 8:4
**317** [1] - 10:10
**3300** [1] - 7:3
**3431** [1] - 5:16
**3445** [1] - 6:11
**365** [1] - 9:21
**3702** [1] - 5:4

## 4

**401** [1] - 7:10
**40th** [1] - 8:22
**425** [1] - 5:24

## 5

**500** [2] - 7:10, 10:13
**504** [1] - 10:14
**50th** [1] - 7:14

**51** [1] - 6:24
**519** [1] - 6:2
**5213** [1] - 9:17
**546** [2] - 6:19, 9:25
**589-7776** [1] - 10:14
**5E01** [1] - 9:3

## 6

**601** [2] - 7:19, 9:14
**625** [1] - 8:11
**650** [1] - 5:14

## 7

**70001** [1] - 9:18
**70002** [1] - 6:11
**70005** [1] - 8:18
**70054-1910** [1] - 7:11
**70068** [1] - 5:24
**70084** [1] - 5:10
**701** [2] - 4:20, 8:22
**70112** [4] - 5:2, 5:19, 9:4, 10:3
**70113** [1] - 4:18
**70115** [1] - 5:17
**70130** [12] - 4:21, 5:12, 5:14, 6:20, 7:7, 7:20, 8:8, 8:15, 8:23, 9:14, 10:10, 10:13
**70130-3588** [1] - 9:25
**70130-6534** [1] - 9:22
**70163** [1] - 5:22
**70163-2800** [1] - 4:25
**70163-3000** [1] - 8:4
**70165** [1] - 8:11
**70170** [1] - 5:5
**70170-3300** [1] - 7:4
**70170-5100** [1] - 7:15
**70427** [1] - 5:7
**70505** [1] - 6:16
**70726** [1] - 6:3
**70765-0071** [1] - 6:6
**70816** [1] - 10:7
**71** [1] - 6:5
**755** [3] - 7:7, 8:7, 8:14

## 8

**800** [1] - 6:11
**823** [1] - 5:2
**855** [1] - 4:18
**888** [1] - 9:8

## 9

**909** [1] - 10:3

## A

**A** [5] - 2:18, 3:18, 7:10, 8:21, 10:12
**a** [1] - 11:5
**Aaron** [1] - 12:3
**AARON** [1] - 9:16
**about** [1] - 13:17
**ABRAMSON** [1] - 9:20
**Action** [3] - 11:17, 11:25, 12:4
**admitted** [2] - 13:16, 13:17
**After** [1] - 11:10
**Airline** [2] - 5:24, 9:17
**AL** [25] - 1:3, 1:5, 1:6, 1:8, 1:12, 1:20, 1:21, 2:3, 2:7, 2:11, 2:12, 2:17, 2:21, 2:22, 3:1, 3:4, 3:10, 3:14, 3:17, 3:20, 3:21, 3:23, 4:1, 4:3, 4:10
**al** [2] - 13:22
**all** [1] - 11:10
**already** [1] - 11:12
**also** [1] - 12:24
**am** [1] - 13:7
**AMERICA** [2] - 1:5, 9:6
**And** [1] - 13:11
**and** [17] - 11:6, 11:7, 11:8, 11:10, 11:11, 11:19, 11:21, 12:3, 12:10, 12:11, 12:24, 13:3, 13:4, 13:12, 13:17, 13:21, 13:25
**AND** [11] - 2:24, 4:6, 6:13, 6:21, 7:5, 8:6, 8:9, 9:1, 9:11, 9:16, 9:23
**ANN** [2] - 1:17, 2:1
**Ann** [1] - 11:20
**another** [1] - 11:12
**ANZELMO** [1] - 6:9
**APPEARANCES** [1] - 4:15
**appearances** [1] - 11:14
**appearing** [1] - 13:9
**are** [2] - 11:5, 11:11
**ARMY** [1] - 1:23
**as** [1] - 13:10
**ASHTON** [1] - 5:11
**Ashton** [1] - 11:16
**at** [1] - 11:7
**Attorney** [1] - 9:13
**ATTORNEY'S** [1] - 9:1

**Ave** [1] - 10:6
**Avenue** [6] - 5:4, 6:2, 6:24, 7:3, 7:10, 7:14
**awhile** [1] - 11:11

## B

**B** [3] - 5:24, 7:3, 9:2
**B&K** [1] - 8:1
**BAIRD** [1] - 3:15
**Baronne** [1] - 4:8
**BARRASSO** [2] - 10:1, 10:2
**Baton** [1] - 10:7
**be** [2] - 11:9, 13:17
**Becnel** [1] - 13:21
**BECNEL** [5] - 5:8, 5:9, 5:23, 5:23, 13:20
**been** [1] - 11:21
**BEFORE** [1] - 4:13
**behalf** [8] - 11:25, 12:2, 12:7, 12:23, 13:7, 13:9, 13:11, 13:25
**Belhia** [1] - 12:6
**BELHIA** [1] - 10:9
**BEN** [1] - 6:14
**BENJAMIN** [1] - 4:22
**Benjamin** [1] - 9:8
**BERTHELOT** [1] - 1:6
**BETH** [3] - 2:18, 4:1, 4:4
**BETTY** [1] - 8:3
**Blanco** [1] - 12:12
**BLANCO** [1] - 9:11
**BLAYNE** [1] - 6:2
**Blvd** [1] - 6:11
**BOARD** [5] - 1:16, 3:7, 6:8, 8:9, 8:10
**Board** [1] - 12:17
**Bogalusa** [1] - 5:7
**Boh** [2] - 13:22, 13:25
**BOH** [10] - 1:8, 1:12, 1:20, 2:3, 2:7, 2:11, 2:17, 2:21, 4:3, 7:1
**BOURGEOIS** [1] - 10:5
**Box** [1] - 9:8
**BRADLEY** [2] - 2:22, 3:21
**Bradley** [1] - 13:3
**Branch** [1] - 9:7
**Brennan** [1] - 13:25
**BRENNAN** [1] - 7:6
**BROTHERS** [10] - 1:8, 1:12, 1:20, 2:3, 2:7, 2:11, 2:17, 2:21, 4:3, 7:1

**Brothers** [2] - 13:22, 13:25
**BROUSSARD** [1] - 9:16
**Broussard** [1] - 12:3
**BROWN** [1] - 2:15
**BROWNE** [1] - 5:13
**BRUCE** [1] - 3:8
**Bruno** [3] - 11:19, 11:20
**BRUNO** [4] - 4:16, 4:17, 11:19
**BURGLASS** [1] - 9:16
**BURK** [1] - 8:13
**BURK-KLEINPETER** [1] - 8:13
**Burns** [1] - 13:21
**BURR** [1] - 8:20
**but** [1] - 11:6
**But** [1] - 11:7
**Butler** [1] - 12:7
**BUTLER** [1] - 10:9
**BY** [38] - 4:17, 4:20, 4:23, 5:1, 5:4, 5:6, 5:8, 5:13, 5:16, 5:18, 5:21, 5:23, 6:1, 6:4, 6:10, 6:14, 6:18, 6:23, 7:2, 7:6, 7:10, 7:14, 7:18, 7:22, 8:2, 8:7, 8:10, 8:14, 8:17, 8:21, 9:2, 9:6, 9:12, 9:17, 9:20, 9:24, 10:2, 10:6
**by** [3] - 10:16, 10:17, 13:15

## C

**C** [6] - 6:1, 8:2, 9:1, 9:20, 10:6, 11:1
**C.R** [1] - 8:20
**CALVIN** [1] - 6:1
**can** [2] - 11:7, 11:14
**Canal** [3] - 5:11, 9:21, 9:21
**capacity** [1] - 13:10
**Carondelet** [2] - 6:19, 9:25
**CARRERE** [1] - 7:13
**case** [2] - 11:15, 12:7
**CASE** [2] - 4:7, 4:10
**cases** [2] - 13:4, 13:11
**CASUALTY** [3] - 2:14, 3:3, 9:24
**CATHERINE** [1] - 9:6
**Causeway** [1] - 6:11
**CCR** [1] - 10:12
**Center** [1] - 6:15

**Centre** [2] - 4:25, 8:3
**CHARLES** [2] - 7:3, 8:14
**Charles** [3] - 5:4, 7:3, 7:14
**CHEHARDY** [1] - 4:8
**Chuck** [1] - 13:24
**CITY** [3] - 9:1, 9:2
**City** [1] - 12:23
**Civil** [5] - 9:7, 11:17, 11:25, 12:3, 12:7
**clear** [1] - 11:6
**COLE** [1] - 7:22
**Colvin** [1] - 13:24
**COLVIN** [2] - 7:3, 13:24
**COMMISSIONERS** [3] - 1:16, 3:7, 6:8
**Common** [1] - 5:19
**COMPANY** [16] - 3:10, 3:14, 3:17, 3:20, 3:23, 4:6, 7:2, 7:9, 7:17, 7:22, 8:1, 8:17, 9:20, 9:24, 10:1, 10:5
**Company** [1] - 13:12
**Compass** [1] - 12:25
**COMPASS** [1] - 9:1
**computer** [1] - 10:17
**CONFERENCE** [2] - 4:12, 11:3
**CONLAY** [1] - 3:8
**connection** [1] - 13:16
**CONSTRUCTION** [12] - 1:8, 1:12, 1:20, 2:3, 2:7, 2:11, 2:17, 2:21, 3:23, 7:1, 7:12, 8:1
**CORPS** [1] - 1:23
**Court** [1] - 10:12
**court** [2] - 11:16, 11:24
**COURT** [15] - 1:1, 1:5, 11:18, 11:23, 12:1, 12:5, 12:9, 12:13, 12:18, 12:21, 13:1, 13:5, 13:14, 13:19, 13:23
**CT** [1] - 7:23

## D

**D** [5] - 6:2, 6:18, 9:7, 10:6, 11:1
**D.C** [2] - 6:24, 9:9
**Dahlgren** [1] - 11:21
**DANIEL** [2] - 5:8, 5:8
**DARLEEN** [1] - 5:1
**Darlene** [1] - 12:16
**DARRYL** [1] - 5:9

**DAVID** [4] - 2:4, 2:15, 4:17, 4:22
**David** [2] - 11:20, 13:7
**DAY** [1] - 6:23
**DENEGRE** [1] - 7:13
**Denham** [1] - 6:3
**DENNIS** [1] - 9:17
**Dennis** [1] - 12:2
**DEPARTMENT** [2] - 9:6, 9:11
**DEPT** [1] - 8:10
**DEUTSCH** [3] - 7:6, 8:6, 8:13
**Diane** [1] - 13:21
**DIANE** [1] - 3:12
**dismissed** [1] - 11:21
**DISTRICT** [8] - 1:1, 1:1, 1:16, 3:7, 4:7, 4:10, 4:13, 6:9
**District** [2] - 13:11
**Division** [2] - 9:7, 9:13
**do** [1] - 11:7
**Docket** [23] - 1:3, 1:6, 1:10, 1:14, 1:18, 1:22, 2:1, 2:5, 2:9, 2:12, 2:15, 2:19, 2:22, 3:1, 3:5, 3:9, 3:12, 3:15, 3:18, 3:21, 4:1, 4:4, 4:8
**don't** [1] - 11:14
**Drawer** [1] - 6:5
**Drive** [1] - 9:17
**DUGAN** [2] - 5:13, 5:13
**DUNBAR** [1] - 9:20
**DUPLASS** [1] - 10:5
**DUVAL** [1] - 4:13

## E

**E** [9] - 3:4, 4:23, 5:8, 5:21, 7:22, 8:7, 9:12, 11:1
**E.BECNEL,JR** [1] - 5:8
**EASTERN** [1] - 1:1
**Eden** [1] - 6:5
**Edwin** [1] - 12:24
**EDWIN** [1] - 9:1
**ENCOMPASS** [5] - 3:10, 3:14, 3:17, 3:20, 10:1
**Energy** [2] - 4:25, 8:3
**ENGINEERING** [1] - 8:16
**ENGINEERS** [1] - 1:23

**ESQ** [54] - 4:17, 4:17, 4:20, 4:23, 4:23, 4:24, 5:1, 5:4, 5:6, 5:8, 5:9, 5:11, 5:13, 5:16, 5:18, 5:21, 5:23, 6:1, 6:2, 6:4, 6:10, 6:10, 6:14, 6:18, 6:19, 6:23, 7:2, 7:3, 7:6, 7:10, 7:14, 7:18, 7:18, 7:19, 7:22, 8:2, 8:3, 8:7, 8:10, 8:14, 8:17, 8:21, 9:2, 9:6, 9:7, 9:12, 9:12, 9:17, 9:20, 9:24, 10:2, 10:6, 10:9
**et** [2] - 13:22
**ET** [25] - 1:3, 1:5, 1:6, 1:8, 1:12, 1:20, 1:21, 2:3, 2:7, 2:11, 2:12, 2:17, 2:21, 2:22, 3:1, 3:4, 3:10, 3:14, 3:17, 3:20, 3:21, 3:23, 4:1, 4:3, 4:10
**EUSTIS** [1] - 8:16
**Ezell** [1] - 12:15
**EZELL** [1] - 2:8

## F

**F** [3] - 8:3, 8:14, 8:17
**FARM** [3] - 2:14, 3:3, 9:23
**FAWER** [1] - 5:3
**FAYARD** [2] - 6:1, 6:1
**FINNEGAN** [1] - 9:6
**Finney** [1] - 13:22
**FINNEY** [1] - 4:1
**FIRE** [6] - 2:14, 3:3, 4:6, 7:16, 7:21, 9:23
**Fire** [2] - 13:12, 13:16
**FIREMAN'S** [1] - 10:5
**firm** [1] - 13:7
**FIRM** [1] - 6:4
**first** [1] - 11:9
**Floor** [2] - 8:4, 8:22
**Florida** [1] - 6:2
**Flr** [1] - 7:14
**for** [5] - 11:11, 11:17, 12:11, 13:3, 13:17
**FOR** [26] - 1:16, 3:7, 4:16, 6:8, 6:9, 6:17, 7:1, 7:8, 7:12, 7:16, 7:21, 8:1, 8:6, 8:9, 8:13, 8:16, 8:20, 9:1, 9:5, 9:11, 9:16, 9:19, 9:23, 10:1, 10:5, 10:9
**former** [1] - 12:24
**FOWLER** [1] - 8:21

**FRANK** [1] - 5:18
**Franklin** [1] - 9:8
**FREDERICK** [2] - 2:22, 3:21
**FREEMAN** [1] - 10:1
**FRIDAY** [1] - 11:2
**Friday** [23] - 1:4, 1:7, 1:11, 1:15, 1:19, 1:23, 2:2, 2:6, 2:10, 2:13, 2:16, 2:20, 2:23, 3:2, 3:6, 3:10, 3:13, 3:16, 3:19, 3:22, 4:2, 4:5, 4:9
**from** [1] - 11:20
**FUND** [1] - 10:5

## G

**G** [5] - 5:6, 5:6, 5:15, 5:16, 11:1
**GAINSBURGH** [1] - 4:22
**GALLOWAY** [1] - 8:20
**GARDNER** [2] - 8:17, 8:17
**GAUDRY** [1] - 7:9
**General** [1] - 9:13
**GEORGE** [2] - 6:23, 8:10
**Gerald** [1] - 13:2
**GERALD** [2] - 4:23, 8:21
**get** [1] - 11:8
**GILLASPIE** [1] - 4:4
**GLADYS** [1] - 4:8
**GLAZER** [2] - 9:12, 12:10
**Glazer** [1] - 12:10
**going** [3] - 11:5, 11:9, 11:11
**GOLDMAN** [1] - 7:22
**Goldman** [1] - 13:15
**Good** [12] - 11:5, 11:19, 12:6, 12:10, 12:14, 12:16, 12:19, 12:22, 13:2, 13:6, 13:20, 13:24
**GOVERNOR** [1] - 9:11
**Governor** [1] - 12:11
**Greer** [1] - 11:20
**GREER** [1] - 1:21
**GREMILLION** [1] - 7:9
**Gretna** [1] - 7:11
**GROUP** [2] - 6:17, 7:13
**GUICHET** [1] - 7:18

## H

Hadican [1] - 13:3
HADICAN [1] - 4:24
HALL [1] - 9:2
HANNA [1] - 6:10
Hanover [1] - 13:12
HARDY [1] - 6:9
Hartford [3] - 7:23, 13:12, 13:18
HARVEY [3] - 1:13, 5:16, 12:19
Harvey [2] - 12:17, 12:19
HARVEY,SR [1] - 5:15
has [1] - 11:21
have [3] - 11:5, 11:11, 11:12
HB-406 [1] - 10:13
hear [1] - 11:8
HEARD [1] - 4:13
HEATHER [1] - 6:19
here [5] - 12:23, 13:3, 13:7, 13:9, 13:15
HERMAN [1] - 8:2
HIGGINS [1] - 7:9
Highway [1] - 5:24
hoc [2] - 13:16, 13:17
HOFFMANN [1] - 8:2
HONEYCUTT [2] - 6:1, 6:2
Honor [12] - 11:16, 11:19, 11:25, 12:2, 12:6, 12:10, 12:16, 12:19, 12:22, 13:2, 13:20, 13:24
HONORABLE [1] - 4:13
Honorable [1] - 12:24
hopefully [1] - 11:6
Hoppen [1] - 5:7
HUBBARD [4] - 7:17, 7:18, 13:9, 13:15
Hubbard [1] - 13:9
HUMPHREYS [1] - 3:18

## I

I [5] - 11:1, 11:7, 11:12, 11:14, 13:7
I'm [1] - 11:10
Ibos [1] - 10:12
if [2] - 11:14, 11:15
III [3] - 7:10, 8:10, 9:1
in [16] - 11:7, 11:17,

11:20, 12:3, 12:7, 12:12, 12:14, 12:16, 12:19, 13:3, 13:10, 13:11, 13:12, 13:16, 13:21, 13:25
INC [14] - 1:8, 1:12, 1:20, 2:7, 2:11, 2:17, 2:21, 2:24, 6:18, 7:9, 8:1, 8:6, 8:13, 8:17
Insurance [1] - 13:12
INSURANCE [11] - 3:3, 3:10, 3:14, 3:17, 3:20, 4:6, 7:17, 7:21, 9:20, 10:1, 10:5
insurer [1] - 13:10
INTERNATIONAL [1] - 6:18
into [1] - 11:8
is [2] - 11:9, 13:17
it [3] - 11:7, 11:16, 11:24
its [1] - 13:10

## J

J [8] - 4:20, 5:9, 5:18, 7:14, 8:21, 9:6, 9:17, 9:24
J.P [1] - 4:10
Jacobs [1] - 12:16
JACOBS [3] - 5:1, 5:1, 12:16
JAMES [3] - 5:13, 7:12, 9:2
JARED [1] - 1:9
JEFFERSON [1] - 9:16
Jefferson [1] - 12:3
JIM [1] - 2:8
Jim [1] - 12:23
JOHNSON [1] - 8:20
Joined [1] - 13:15
JONES [2] - 6:23, 7:13
JOSEPH [2] - 4:17, 7:18
Joseph [2] - 8:11, 11:19
JR [5] - 5:11, 6:1, 8:2, 8:7, 8:14
JUDGE [1] - 4:13
Judge [3] - 11:9, 12:14, 13:6
JUDY [1] - 10:2
Judy [1] - 11:25
JULIE [1] - 3:4
just [1] - 11:12
JUSTICE [2] - 9:6, 9:11

## K

Kara [1] - 13:3
KARA [1] - 4:24
Karen [1] - 10:12
KATHLEEN [1] - 9:11
Kathleen [1] - 12:11
KELLER [1] - 9:12
Keller [1] - 12:11
KELLY [1] - 3:18
KERRIGAN [3] - 7:6, 8:6, 8:13
KEWLEY [1] - 8:17
KIMBERLY [1] - 10:9
Kimberly [1] - 12:7
KINGSMILL [1] - 7:2
KIRSCH [2] - 2:4, 6:10
Kirsch [1] - 13:8
KLEINPETER [1] - 8:13
know [4] - 11:10, 11:12, 11:14, 11:15
KUPPERMAN [1] - 10:1
KYLE [1] - 6:10

## L

L [3] - 5:20, 6:14, 7:6
L.L.C [5] - 7:2, 7:9, 7:13, 9:16
L.L.P [2] - 5:3, 8:2
LA [37] - 4:18, 4:21, 4:25, 5:2, 5:5, 5:7, 5:10, 5:12, 5:14, 5:17, 5:19, 5:22, 5:24, 6:3, 6:6, 6:11, 6:16, 6:20, 7:4, 7:7, 7:11, 7:15, 7:20, 8:4, 8:8, 8:11, 8:15, 8:18, 8:23, 9:4, 9:14, 9:18, 9:22, 9:25, 10:3, 10:7, 10:10
LABORDE [1] - 6:14
Lafayette [1] - 6:16
Lambert [1] - 13:7
LAMBERT [1] - 4:19
LANDRY [1] - 5:18
LANGLOIS [1] - 7:10
LaPlace [1] - 5:24
LAW [5] - 5:6, 5:8, 5:15, 5:23, 6:4
law [1] - 13:7
LeBlanc [2] - 2:18, 11:21
LEE [1] - 9:24
LEGAL [1] - 8:10
let [1] - 11:12
Let [1] - 11:9

Let's [1] - 11:14
Levee [3] - 12:17, 13:10, 13:11
LEVEE [1] - 1:16, 3:7, 6:9
Linda [1] - 13:6
LINDA [1] - 4:20
listen [1] - 11:11
Litigation [1] - 9:13
LL&E [1] - 10:2
LONIAN [1] - 6:19
look [1] - 11:7
Louis [1] - 5:2
LOUISIANA [3] - 1:1, 9:11, 9:11
Louisiana [26] - 1:4, 1:7, 1:11, 1:14, 1:19, 1:22, 2:2, 2:5, 2:9, 2:13, 2:16, 2:19, 2:23, 3:2, 3:5, 3:9, 3:13, 3:16, 3:19, 3:22, 4:2, 4:5, 4:9, 6:24, 10:13, 12:11
LUGENBUHL [1] - 7:17

## M

M [7] - 2:15, 4:17, 4:24, 5:1, 5:4, 5:23, 5:23
Magazine [5] - 4:20, 7:7, 8:7, 8:14, 10:10
Magistrate [1] - 12:22
make [1] - 11:14
MANARD [1] - 5:20
MANNING [1] - 6:23
MARCH [1] - 11:2
March [23] - 1:4, 1:7, 1:11, 1:15, 1:19, 1:23, 2:2, 2:6, 2:10, 2:13, 2:16, 2:20, 2:23, 3:2, 3:6, 3:10, 3:13, 3:16, 3:19, 3:22, 4:2, 4:5, 4:9
MARINE [2] - 4:6, 7:16
MARK [1] - 6:10
Market [1] - 10:6
MARSTON [1] - 8:21
MARTIN [3] - 7:19, 10:9, 12:6
Martin [1] - 12:6
Marty [1] - 13:17
MARY [2] - 4:1, 4:4
MASTER [1] - 2:24
MASTERS [1] - 8:6
matter [7] - 12:3, 12:12, 12:15, 12:17,

12:20, 13:13, 13:21
matters [1] - 13:16
MAXWELL [1] - 6:9
May [2] - 11:16, 11:24
maybe [1] - 11:6
MAYEAUX [2] - 5:21, 6:14
Mayor [1] - 12:24
McCRANIE [1] - 6:9
McDANIEL [1] - 6:9
me [1] - 11:9
mechanical [1] - 10:16
meeting [2] - 11:8, 11:12
Meghan [1] - 13:21
MELCHIODE [1] - 8:21
Metairie [4] - 6:11, 8:18, 8:18, 9:18
Meunier [1] - 13:2
MEUNIER [3] - 4:22, 4:23, 13:2
MICHAEL [3] - 7:2, 9:12, 10:6
Michael [2] - 12:11, 13:25
MIDDLE [2] - 4:7, 4:10
minutes [1] - 11:9
MODJESKI [2] - 2:24, 8:6
morning [12] - 11:5, 11:19, 12:6, 12:10, 12:14, 12:16, 12:19, 12:22, 13:2, 13:6, 13:20, 13:24
MORTON [1] - 10:5
most [1] - 13:11
MR [12] - 11:16, 11:19, 11:24, 12:2, 12:14, 12:19, 12:22, 13:2, 13:9, 13:15, 13:20, 13:24
MS [4] - 12:6, 12:10, 12:16, 13:6
much [1] - 13:19
MULLALY [2] - 9:2, 12:22
Mullaly [1] - 12:23
MULLIN [1] - 8:3
myself [1] - 11:10

## N

N [2] - 6:11, 11:1
N.W [1] - 6:24
NAGIN [1] - 9:1
Nagin [1] - 12:24

**NEIL** [1] - 9:20
**NELSON** [3] - 4:19, 4:20, 13:6
**Nelson** [2] - 13:6, 13:7
**NEUNER** [1] - 6:14
**New** [51] - 1:4, 1:7, 1:11, 1:14, 1:19, 1:22, 2:2, 2:5, 2:9, 2:13, 2:16, 2:19, 2:23, 3:2, 3:5, 3:9, 3:13, 3:16, 3:19, 3:22, 4:2, 4:9, 4:16, 4:21, 4:25, 5:2, 5:5, 5:12, 5:14, 5:17, 5:19, 5:22, 6:20, 7:4, 7:7, 7:15, 7:20, 8:4, 8:8, 8:11, 8:15, 8:23, 9:4, 9:14, 9:22, 9:25, 10:3, 10:10, 10:13, 12:23
**NEW** [2] - 8:10, 9:1
**No** [27] - 1:3, 1:6, 1:10, 1:14, 1:18, 1:22, 2:1, 2:5, 2:9, 2:12, 2:15, 2:19, 2:22, 3:1, 3:5, 3:9, 3:12, 3:15, 3:18, 3:21, 4:1, 4:4, 4:8, 11:17, 11:20, 11:25, 12:7
**numbers** [2] - 11:15, 13:4

**O**

**O** [1] - 11:1
**O'Dwyer** [4] - 11:17, 12:3, 12:7, 12:12
**O'DWYER** [3] - 1:3, 5:11, 11:16
**of** [17] - 9:13, 11:10, 11:25, 12:2, 12:7, 12:11, 12:23, 12:24, 13:7, 13:10, 13:11, 13:21, 13:25
**OF** [17] - 1:1, 1:5, 1:16, 1:23, 3:7, 4:12, 5:6, 5:8, 5:15, 5:23, 6:8, 8:10, 9:1, 9:6, 9:11, 9:11
**OFFICE** [3] - 5:8, 5:15, 9:1
**Office** [1] - 9:13
**OFFICES** [2] - 5:6, 5:23
**Official** [1] - 10:12
**on** [9] - 11:6, 11:24, 12:2, 12:6, 12:23, 13:7, 13:9, 13:11, 13:25
**One** [3] - 5:11, 6:15,

8:22
**orderly** [1] - 11:7
**Orleans** [51] - 1:4, 1:7, 1:11, 1:14, 1:19, 1:22, 2:2, 2:5, 2:9, 2:13, 2:16, 2:19, 2:23, 3:2, 3:5, 3:9, 3:13, 3:16, 3:19, 3:22, 4:2, 4:5, 4:9, 4:18, 4:21, 4:25, 5:2, 5:5, 5:12, 5:14, 5:17, 5:19, 5:22, 6:20, 7:4, 7:7, 7:15, 7:20, 8:4, 8:8, 8:11, 8:15, 8:23, 9:4, 9:14, 9:22, 9:25, 10:3, 10:10, 10:13, 12:23
**ORLEANS** [5] - 1:16, 3:7, 6:9, 8:10, 9:1
**our** [1] - 11:14

**P**

**P** [3] - 6:10, 7:18, 11:1
**P.O** [2] - 6:5, 9:8
**Parish** [1] - 12:3
**PARISH** [3] - 1:16, 3:7, 9:16
**PATRICK** [1] - 6:4
**PAUL** [3] - 4:6, 5:21, 7:16
**Paul** [1] - 13:10
**PECK** [1] - 7:17
**PENDLEY** [2] - 6:4, 6:4
**PENTON** [3] - 5:6, 5:6, 12:14
**Penton** [1] - 12:14
**PERAGINE** [1] - 8:1
**PERCY** [1] - 5:9
**Perdido** [1] - 9:3
**Petroleum** [1] - 6:15
**PFISTER** [1] - 10:6
**Phayer** [1] - 12:2
**PHAYER** [2] - 9:17, 12:2
**PHELPS** [1] - 9:20
**PHONETIC** [1] - 13:21
**PHYLLIS** [1] - 9:12
**Phyllis** [1] - 12:10
**PIGMAN** [2] - 6:18, 9:24
**Pinhook** [1] - 6:15
**PITTMAN** [2] - 3:23, 8:20
**Place** [4] - 5:7, 5:11, 9:21, 10:6
**plaintiff** [1] - 11:25
**PLAINTIFFS** [1] -

4:16
**plaintiffs** [3] - 11:17, 13:3, 13:8
**Plaquemine** [1] - 6:6
**PLC** [1] - 5:20
**please** [2] - 11:16, 11:24
**POITEVENT** [1] - 7:13
**Police** [1] - 12:24
**Poydras** [9] - 4:24, 5:14, 5:21, 7:19, 8:4, 8:22, 9:14, 10:3, 10:13
**PREFERRED** [1] - 9:19
**pro** [2] - 13:16, 13:17
**Proceedings** [1] - 10:16
**produced** [1] - 10:17
**Prytania** [1] - 5:16

**R**

**R** [7] - 3:15, 4:13, 4:23, 5:11, 7:19, 8:10, 11:1
**R.C** [1] - 7:2
**RALPH** [1] - 7:18
**Ralph** [1] - 13:9
**RANKIN** [1] - 7:17
**RANSON** [1] - 7:9
**rapid** [1] - 11:6
**rather** [1] - 11:5
**RAY** [1] - 9:1
**Rd** [2] - 6:15, 8:18
**record** [1] - 11:6
**recorded** [1] - 10:16
**REDFEARN** [1] - 8:2
**Reporter** [1] - 10:12
**represent** [1] - 11:6
**Reserve** [1] - 5:10
**RICHARD** [2] - 2:12, 7:14
**Riess** [1] - 13:25
**RIESS** [2] - 7:2, 7:2
**Robert** [2] - 12:19, 13:20
**ROBERT** [8] - 1:13, 4:10, 5:15, 5:16, 5:20, 5:23, 5:23, 13:20
**ROBIN** [1] - 9:7
**ROBINSON** [1] - 7:22
**ROGERS** [1] - 3:12
**RONNIE** [2] - 5:6, 5:6
**Ronnie** [1] - 12:14
**Room** [3] - 8:11, 9:3, 10:13
**Rouge** [1] - 10:7

**RPR** [1] - 10:12

**S**

**S** [4] - 1:23, 4:17, 7:18, 11:1
**Sadler** [1] - 13:17
**SADLER** [1] - 7:19
**SARRAT** [1] - 5:1
**SARVER** [1] - 10:1
**say** [1] - 11:9
**Scalia** [1] - 11:20
**SCALIA** [1] - 4:17
**SEEMANN** [1] - 8:14
**set** [1] - 11:12
**Seventh** [1] - 5:10
**SEWERAGE** [2] - 8:9, 8:10
**Shell** [1] - 8:22
**SIMNO** [1] - 8:10
**SIMON** [1] - 8:1
**sir** [5] - 11:18, 11:23, 12:5, 12:21, 13:23
**SISTRUNK** [1] - 6:9
**Slack** [1] - 13:3
**SLACK** [1] - 4:23
**SMITH** [4] - 5:3, 8:1, 8:20, 9:7
**So** [1] - 11:12
**some** [1] - 11:7
**Southwest** [1] - 6:2
**Springs** [1] - 6:3
**Square** [1] - 8:22
**SR** [1] - 2:15
**St** [6] - 5:2, 5:4, 7:3, 7:14, 8:11, 13:10
**ST** [2] - 4:6, 7:16
**STANDARD** [1] - 7:21
**Standard** [2] - 13:12, 13:16
**STANWOOD** [1] - 4:13
**start** [1] - 11:14
**STATE** [4] - 2:14, 3:3, 9:11, 9:23
**State** [1] - 12:11
**STATES** [4] - 1:1, 1:5, 4:13, 9:5
**Station** [1] - 9:8
**STATUS** [2] - 4:12, 11:3
**Ste** [2] - 5:4, 7:3
**stenography** [1] - 10:16
**Stephen** [2] - 11:24, 13:15
**STEPHEN** [2] - 5:4, 7:22
**STILES** [3] - 7:6, 8:6,

8:13
**STILWELL** [1] - 8:7
**STONE** [2] - 6:18, 9:24
**Street** [26] - 4:18, 4:20, 4:24, 5:2, 5:10, 5:14, 5:16, 5:19, 5:21, 6:5, 6:19, 7:7, 7:19, 7:23, 8:4, 8:7, 8:11, 8:14, 8:22, 9:3, 9:14, 9:21, 9:25, 10:3, 10:10, 10:13
**Suite** [15] - 4:24, 5:11, 5:14, 5:19, 5:21, 5:24, 6:11, 6:15, 7:10, 7:19, 8:18, 9:14, 9:21, 10:2, 10:6
**SULLIVAN** [1] - 3:1
**Superintendent** [1] - 12:24
**sure** [1] - 11:10
**SWARR** [2] - 5:18, 5:18

**T**

**talk** [1] - 11:11
**talking** [1] - 11:10
**TANKERSLEY** [1] - 9:16
**TAUZIN** [1] - 3:4
**Tauzin** [1] - 11:25
**TERRANCE** [1] - 7:6
**Terry** [1] - 13:25
**Thank** [13] - 11:18, 11:23, 12:1, 12:5, 12:9, 12:13, 12:18, 12:21, 13:1, 13:5, 13:14, 13:19, 13:23
**that** [3] - 11:9, 11:12, 11:13
**THE** [24] - 1:16, 1:16, 3:7, 3:7, 4:13, 4:16, 6:8, 6:9, 9:5, 9:11, 11:5, 11:18, 11:23, 12:1, 12:5, 12:9, 12:13, 12:18, 12:21, 13:1, 13:5, 13:14, 13:19, 13:23
**the** [22] - 11:6, 11:9, 11:16, 11:24, 12:3, 12:7, 12:11, 12:12, 12:14, 12:17, 12:20, 12:23, 13:3, 13:6, 13:7, 13:10, 13:11, 13:12, 13:16, 13:17, 13:21
**then** [3] - 11:8, 11:11
**this** [1] - 11:8
**THOMAS** [1] - 8:17

**to** [6] - 11:5, 11:7, 11:9, 11:11, 11:12, 13:17
**today** [2] - 13:9, 13:15
**Todd** [1] - 13:3
**TODD** [1] - 4:23
**TOMPKINS** [1] - 8:20
**Torts** [1] - 9:7
**Tower** [1] - 10:2
**transcript** [1] - 10:16
**TRANSCRIPT** [1] - 4:12
**Travelers** [1] - 13:10
**TREEBY** [1] - 6:18
**Turnbull** [1] - 7:23
**TYLER** [1] - 7:14

## U

**U** [1] - 1:23
**U.S** [1] - 9:6
**UNITED** [4] - 1:1, 1:5, 4:13, 9:5
**UNITRIN** [1] - 9:19
**USDIN** [1] - 10:1

## V

**V** [15] - 1:4, 1:22, 2:2, 2:13, 2:23, 3:2, 3:9, 3:13, 3:16, 3:19, 3:22, 4:2, 4:5, 4:9, 10:9
**v** [11] - 1:7, 1:11, 1:14, 1:19, 2:5, 2:9, 2:16, 2:19, 3:5, 12:17, 13:22
**Vanderbrook** [2] - 12:20, 13:13
**VANDERBROOK** [1] - 2:12
**very** [1] - 13:19
**vice** [1] - 13:16
**VICTOR** [1] - 8:7
**VIRGINIA** [1] - 7:8
**Vodanovich** [1] - 11:20
**VODANOVICH** [3] - 1:9, 1:17, 2:1

## W

**W** [3] - 3:12, 6:4, 6:15
**WADE** [1] - 7:10
**WAECHTER** [1] - 7:13
**WALKER** [1] - 7:13
**WALTHER** [2] - 6:18, 9:24

**wanted** [1] - 11:7
**WARSHAUER** [1] - 4:22
**was** [1] - 13:15
**WASHINGTON** [1] - 6:17
**Washington** [2] - 6:24, 9:9
**WATER** [2] - 8:9, 8:10
**way** [1] - 11:7
**WAYNE** [1] - 9:24
**We** [1] - 11:5
**we** [5] - 11:7, 11:8, 11:11, 11:14
**we'll** [1] - 11:11
**West** [1] - 5:24
**WHEATON** [1] - 7:17
**which** [1] - 11:21
**Whitney** [1] - 7:10
**who** [4] - 11:6, 11:10, 13:15, 13:17
**WILES** [2] - 5:4, 11:24
**Wiles** [1] - 11:24
**Wilkinson** [2] - 11:10, 12:23
**WILL** [1] - 5:9
**will** [1] - 11:8
**WILLIAM** [2] - 3:15, 6:18
**WILLIAMSON** [1] - 10:9
**Williamson** [1] - 12:7
**with** [3] - 13:3, 13:6, 13:16
**WITTMANN** [2] - 6:18, 9:24
**WOLLEY** [1] - 4:10
**WRECKING** [1] - 7:8

## Y

**Y** [1] - 10:2
**you** [19] - 11:6, 11:7, 11:8, 11:10, 11:12, 11:15, 11:18, 11:23, 12:1, 12:5, 12:9, 12:13, 12:18, 12:21, 13:1, 13:5, 13:14, 13:19, 13:23
**your** [12] - 11:15, 11:16, 11:19, 11:25, 12:6, 12:10, 12:16, 12:19, 12:22, 13:2, 13:20, 13:24
**Your** [1] - 12:2

## Z

**Zink** [1] - 13:21
**ZWAIN** [1] - 10:5