IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

JUN 30 2003

Michael N. Milby, Clerk of Court

WILLIAM MCCULLOCH, *et al.*, §
§
Plaintiffs, §
§
v. § CIVIL ACTION NO. H-01-3747
§
DELTA LLOYDS INSURANCE §
COMPANY OF HOUSTON, §
TEXAS, *et al.* §
§
Defendants. §

## MEMORANDUM AND ORDER

The factual background of this claim alleging a wrongful denial of proceeds under a National Flood Insurance Program Standard Flood Insurance Policy was set out, in detail, in this court's January 2003 Memorandum and Opinion. That opinion identified a single legal issue that remained to be resolved between the policyholders, William and Kathryn McCulloch, and the insurer, Delta Lloyds Insurance Company. The issue is whether, under the renewal provisions of the Standard Flood Insurance Policy, the policy should have been reinstated with no gap in coverage when the flood loss occurred, or whether it could only be reinstated after thirty days, providing no coverage for the flood loss. In the earlier Memorandum and Opinion, this court concluded that if the use of an incorrect address on the renewal

EXHIBIT
J
tabbies

notice was the result of Delta Lloyds's mistake, the Policy should have been reinstated with no gap in coverage. If the error was not due to Delta Lloyds's mistake, the thirty-day period would apply, resulting in no coverage for the flood loss at issue  This legal issue turned on the resolution of a fact issue:  whether Delta Lloyds had actual, effective knowledge of the insureds' change of address before the 20001 renewal notice was mailed, making the use of the incorrect address Delta Lloyds's mistake. This court concluded that the summary judgment record as it stood in January 2003 did not permit resolution of this factual issue.

In February 2003, the McCullochs moved for leave to file a third amended complaint, adding Stan Migura d/b/a Migura Insurance Agency as a defendant and alleging that Migura should have changed the insureds' mailing address and payor designation on the Policy, but failed to do so. (Docket Entry No. 50). The McCullochs allege that Migura was negligent, made misrepresentations, and violated the Texas Deceptive Trade Practices Act and the Texas Insurance Code. In the proposed third amended complaint, the McCullochs also added allegations that Migura was Delta Lloyds's agent under Texas law, making Delta Lloyds liable to the McCullochs for Migura's negligence and misrepresentations, and seeking a declaratory judgment to this effect. In anticipation of this pleading, Delta Lloyds moved for leave to file a third-party complaint against Stan Migura and the Migura

Insurance Agency, seeking indemnity in the event Delta Lloyds was found liable for Migura's acts or omissions. (Docket Entry No. 49). Delta Lloyds also moved to deny the McCulloch's motion for leave to amend, on the basis of futility; the McCullochs responded, moving to strike certain of the exhibits Delta Lloyds filed. (Docket Entry No. 60).

While that motion was pending, the McCullochs moved for summary judgment against Delta Lloyds on the issue of coverage. (Docket Entry No. 59). The McCullochs argued that based on the record, they had effectively provided Delta Lloyds with notice of the change of address because they provided that information to Migura--although Migura had failed to transmit it to Delta Lloyds--and because the correct address was included on certain pieces of mail Delta Lloyds received. Delta Lloyds filed a cross-motion for summary judgment that no coverage existed, arguing that, as a matter of law, Migura's admitted failure to tell Delta Lloyds that the address and payor information he had provided for the McCulloch SFIP was incorrect, and the absence of any other effective communication of the correct information, meant that the misaddressed renewal notice did not result from Delta Lloyds's mistake. (Docket Entry No. 67). Delta Lloyds also moved to quash the jury demand. (Docket Entry No. 65).

While the cross-motions for summary judgment were pending, the McCullochs filed a motion for leave to file a fourth amended complaint. (Docket Entry No. 78). In this proposed amended complaint, the McCullochs seek to add a direct misrepresentation claim against Delta Lloyds. The McCullochs allege that Delta Lloyds misrepresented that Migura was authorized to accept a change of address notice. Delta Lloyds opposes this motion on the grounds that it is both untimely and futile.

Based on the pleadings, motions, briefs, submissions, and the applicable law, this court:

GRANTS the McCullochs' motion for leave to file the third amended complaint insofar as it adds Migura as a party and asserts causes of action against him, but DENIES the motion insofar as it adds claims that Delta Lloyds is liable for Migura's torts;

DENIES the McCullochs' motion for leave to file the fourth amended complaint;

DENIES as moot Delta Lloyds's motion for leave to amend;

DENIES the McCullochs' motion for summary judgment on the issue of coverage;

GRANTS Delta Lloyds's cross-motion for summary judgment on the issue of coverage; and

GRANTS the McCullochs' motion to compel mediation, but only as to Migura.[1]

The reasons for these rulings are explained below.

## I. The Motion for Leave to File the Third and Fourth Amended Complaints

In their proposed third amended complaint, the McCullochs seek to join Stan Migura d/b/a Migura Insurance Agency as a defendant. Migura sold insurance policies, including those issued by Delta Lloyds as a WYO carrier. The McCullochs contend that Migura failed to notify Delta Lloyds that the information he had initially supplied as to the McCullochs' mailing address and payor status was incorrect. The McCullochs allege that Migura's failure caused their delay in sending the renewal check for the Delta Lloyds issued SFIP. The McCullochs allege that Migura admitted that he should have notified Delta Lloyds of the change in the McCullochs' mailing address and payor status and that he had misrepresented to the McCullochs that he had in fact done so when he had not. The McCullochs allege that Migura was negligent; made misrepresentations; violated the Texas Deceptive Trade Practices Act; and is liable under the Texas Insurance Code.

---

[1] This court also DENIES as moot Delta Lloyds's motion to extend deadlines; (Docket Entry No. 63); DENIES as moot Delta Lloyds's motion to quash the jury demand, (Docket Entry No. 65); and DENIES the McCullochs' motion to strike certain exhibits filed by Delta Lloyds in its Memorandum in Opposition to Plaintiffs' Motion for Leave to File Third Amended Complaint. (Docket Entry No. 60).

Case 2:06-cv-03757-MLCF-ALC Document 10-2 Filed 09/06/2006 Page 6 of 15

The McCullochs also seek to allege that under Texas law, Migura acted as Delta Lloyds's agent "for the purpose of receiving notice that the McCullochs' mailing address had changed and in effectuating the proper delivery of a renewal notice." (Docket Entry No. 51, ¶ 20). The McCullochs rely on both actual and apparent agency to accept notice on behalf of Delta Lloyds. (*Id.* at ¶ 21).

In the proposed fourth amended complaint, the McCullochs seek to add a claim against Delta Lloyds for directly "misrepresenting and misleading the McCullochs into believing that Migura was authorized to accept a change of address notice." (Docket Entry No. 78, p. 1). The McCullochs allege that Delta Lloyds committed fraud, negligent misrepresentation, and violations of Tex. Ins. Code Art. 21.21 §4(1) and (11), Tex. Ins. Code Art. 2121 §16(a), Tex. Bus. & Com. Code § 17.46(b)(5), (7), (9), (12), and (23), and Tex. Bus. & Com. Code §17.50(b)(3). (Docket Entry No. 79, p. 15, ¶ 31).

The representation that the McCullochs allege is false is in the Flood Insurance Renewal Premium Notice dated January 24, 2000. The following language appears in the portion of the Notice that sets out the payor name and mailing address and the insured's name and mailing address:

> **THIS IS NOT A BILL**
>
> If you are now responsible for the payment of this premium, please contact your insurance

> agent and change the payor status of this policy.

Above the block that identified the insured's name and mailing address, the Notice states:

> IF MAILING ADDRESS &/OR PROPERTY ADDRESS ARE INCORRECT, PLEASE NOTIFY AGENT

(Docket Entry No. 60, Ex. 1).

Delta Lloyds opposes the motions for leave to amend to add allegations that it is liable as a principal for Migura's alleged negligence and misrepresentations and that it is liable directly for misrepresenting Migura's authority to accept a notice of change of address. Delta Lloyds argues that the additional allegations are untimely and futile. FED. R. CIV. P. 15(a) requires leave of court for a party to file an amended pleading and provides that such leave "shall be freely given when justice so requires." In deciding whether to grant leave to file an amended pleading, a district court may consider factors such as undue delay; bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party; and futility of amendment. *See Foman v. Davis*, 371 U.S. 78, 182 (1962); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

The issues of futility and timeliness are both addressed below.

A.    Futility

Denial of leave to amend on the basis of futility is "premised . . . on the court's evaluation of the amendment as insufficient to state a claim     ." *Jamieson v. Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985). A denial on this basis "tends to blur the distinction between analysis of the procedural context under Rule 15(a) and analysis of the sufficiency of the complaint under Rule 12(b)(6)." *Id.* at 208-9 (citing *Pan-Islamic Trade Corp. v. Exxon*, 632 F.2d 539, 546 (5th Cir. 980)). Opinions frequently explicitly equate the futility analysis under Rule 15(a) with the legal sufficiency standard of Rule 2(b)(6). *See Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) ("In reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion."); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). A proposed complaint is legally insufficient under Rule 12(b)(6) "only if there is no set of facts that could be proven consistent with the allegations in the complaint that would entitle the plaintiff to relief." *Power Entertainment, Inc. v. Nat'l Football League Properties, Inc.*, 151 F.3d 247, 249 (5th Cir. 1998).

The primary basis for Delta Lloyds's futility argument is that the proposed state law tort claims are barred by federal preemption. The McCullochs

contend that under *Spence v. Omaha Indemn. Ins. Co.*, 996 F.2d 793 (5th Cir. 1993), their state law extracontractual claims against Delta Lloyds are not preempted.

State law is preempted by federal law in three circumstances. First, federal law preempts state law if Congress explicitly stated an intent to supplant the state law with a federal law. *See English v. General Elec. Co.*, 496 U.S. 72, 79, 10 S.Ct. 2270, 10 L.Ed.2d 65 (1990). If no explicit statutory language exists, "state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.* The third category of preemption is when a state law conflicts with a federal law such that it is impossible to comply with both federal and state laws, *id.*, or where state law poses as an obstacle to the goals of the federal statute. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984) (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

The preemption analysis of the NFIA begins with section 4072, which provides:

> Adjustment and payment of claims; judicial review; limitations; jurisdiction
>
> [T]he Director shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the

> Director, may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072.

As discussed at length in this court's previous Memorandum and Opinion, Delta Lloyds is a WYO, which may issue SFIPs in its own name, but may not may not alter, vary, or waive the terms of the SFIPs. 44 C.F.R. § 62.23(c). No WYO company has any permission to alter, vary, or waive any provision of an SFIP without the express written consent of the Federal Insurance Administrator. 44 C.F.R. Pt. 61.4(b), 61.13(d) and (3), 62.23(c) and (d). A WYO carrier may not alter the terms of the procedures and requirements for policy renewal and claims handling set forth in the SFIP, even if the procedures and requirements would violate the law of any particular state. WYO companies defend against claims but FEMA reimburses them for defense costs, 44 C.F.R. § 62.23(i)(6), because they are fiscal agents of the United States, 42 U.S.C. § 4071(a)(1), although they do not act as general agents of the United States, 44 C.F.R. § 62.63(g). As a WYO, Delta Lloyds keeps the premiums that it collects on SFIPs in segregated accounts from which claims and refunds on SFIPs are paid. If there are insufficient funds in the account, the WYO pays claims by drawing on FEMA letters of credit. 44 C.F.R. § 62, App. A. WYOs keep a portion

of the premiums collected as reimbursement for operating expenses. *Id.* WYOs receive commissions on payments of claims. The federal government encourages private insurers to provide flood insurance by bearing the ultimate responsibility for the payment of claims, allowing the WYO to receive a percentage of the premium to cover operating expenses, and paying a commission to the WYO on claims that the WYO pays to insureds. Because the government is ultimately responsible for the policies, the government controls the terms of the SFIPs.

Courts have consistently held that NFIA preempts state law claims pertaining to policy interpretation and claims handling. *See Gibson v. American Bankers Insurance Company*, 289 F.3d 943, 949 (6th Cir. 2001); *see also Van Holt v. Liberty Mutual Fire Insurance Company*, 163 F.3d 161 (3d Cir. 1998); *Spence v. Omaha Indemnity Insurance Company*, 996 F.2d 793, 796 (5th Cir. 1993); *Houck v. State Farm Fire and Casualty Company*, 194 F.Supp.2d 452 (D.S.C. 2002); *Neill v. State Farm Fire and Casualty Company*, 159 F.Supp.2d 770 (E.D.Pa. 2000); *Messa v. Omaha Property & Casualty Insurance Company*, 122 F.Supp.2d 513 (D.N.J. 2000).

In *Van Holt v. Liberty Mutual*, a lawsuit concerning claims handling, the Third Circuit held that section 4072 provides federal courts with subject matter jurisdiction for an insured's suits against a WYO because a suit against the WYO "is

the functional equivalent of a suit against FEMA." *Van Holt*, 163 F.3d at 166. In support of its finding, the Third Circuit noted that (1) a WYO company is a "fiscal agent" of the United States, 42 U.S.C. § 4071(a)(1); (2) regulations promulgated by FEMA require WYOs to defend claims but assure that FEMA reimburses defense costs, 44 C.F.R. § 62.23(i)(6); and (3) claims brought under SFIPs are ultimately paid by FEMA. *Van Holt*, 163 F.3d at 167.

In *West v. Harris*, 573 F.2d 873 (5th Cir.1978), the Fifth Circuit held that a plaintiff is not entitled to recover statutory penalties and attorneys' fees as provided by state law for arbitrary denial of coverage under NFIA. Although the court did not specify which type of preemption it deemed applicable, the language used by the court is the language of field preemption: "*Erie*'s state law proviso does not apply when a federal statute dominates the subject matter in issue" . . . "or when a uniform national rule is necessary to further the interests of the federal government." *West*, 573 F.2d at 881. The court emphasized the degree of federal involvement in the National Flood Insurance Program:

> Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in the case mandates the application of federal law.

*Id.; see also Hanover Building Materials v. Guiffrida*, 748 F.2d 101 (5th Cir. 1984).

Without disagreeing with its earlier decision in *West*, the Fifth Circuit later decided against NFIA preemption of state law in *Spence v. Omaha*, 996 F.2d 793 (5th Cir. 1993). The plaintiffs in that case had alleged breach of contract as well as fraud arising out of representations by the WYO's agents in the procurement of the policy. The decisions in *Spence* and *West* present the dichotomy between policy procurement and claims handling that the courts consistently apply.

In *Spence*, the Fifth Circuit addressed whether federal law governs not only an insured's claims pertaining to claims handling, but also his state law tort claims arising out of policy procurement. *Spence*, 996 F.2d at 796. The plaintiffs in *Spence* purchased flood insurance from a WYO and then sustained property losses in a flood. Relying on a policy exclusion pertaining to finished basements, the WYO denied payment on their claim. The plaintiffs filed a lawsuit alleging breach of the insurance contract for denial of their claim and also alleging fraud arising out of representations made by the sales agent representing Omaha in the process of procuring the policy. The Fifth Circuit noted that the NFIA's one-year statute of limitations applied to plaintiffs' contract claims, but held that the state law prescriptive period applied to the tortious misrepresentation claims. *Id.* In support of its holding,

the Fifth Circuit noted that section 4072 "addresses itself solely to actions arising from partial or complete disallowance of flood insurance policy claims." *Id.* The court emphasized that WYOs possess substantial autonomy in SFIP marketing, in contrast to policy interpretation and claims handling. 44 C.F.R. § 62.23(e). The Fifth Circuit concluded that the regulations "plainly do not contemplate reimbursement for judgments on tort claims such as those asserted by the [plaintiffs]." *Spence*, 996 F.2d at 796 n. 17; *see* 44 C.F.R. § 62, App. A, Art. III, §. D(2).

Since *Spence* was decided, FEMA revised the SFIP to include a discussion of the preemptive nature of the SFIP to state law claims. *See* 65 Fed.Reg. 60767 (Oct. 12, 2000). In a paragraph entitled "What Law Governs," the policy clearly and unambiguously states "[t]his policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, *et seq.*) and Federal common law"). The policy containing this revised language applies to this case. (Docket Entry No. 45, p. 38).

Since *Spence*, courts have continued to apply the distinction between causes of action arising from policy interpretation and claims handling, which are preempted, and causes of action arising from policy procurement, which may not be. In *Miller v. Omaha Prop. & Cas. Ins. Co.*, the court held as follows:

> the court does not view *Spence* as authorizing all state law causes of action related to disputes over federally-funded flood insurance, only those causes related to misrepresentations in the procurement of such flood insurance. Claims involving the interpretation of policies issued under the NFIP must be governed by federal law.

*Miller v. Omaha Prop. & Cas. Ins..Co.*, No. H-95-4942, slip op. at 8 (S.D. Tex. Sept. 4, 1997). In *Jamal v. Travelers Lloyds of Texas Ins. Co.*, 129 F.Supp.2d 1024 (S.D. Tex. 2001), the court noted that "[a]ctions complaining of misrepresentations made to induce the purchase of insurance . . . do not constitute coverage disputes. Thus, state law tort claims for fraud and misrepresentation are not preempted in such cases." Another court articulated the distinction as follows:

> Policy procurement is an entirely different creature than claims handling. NFIA regulations provide that FEMA will reimburse WYO insurers for the claims and the claims handling, as well as for the costs of defending a lawsuit, based on claims handling, and there is thus no incentive for the WYO insurer to deny a claim in part or in full–the more claims the WYO insurer agrees to pay, the more money it will receive from the U.S. Treasury. On the other hand, the WYO insurers may have the incentive to have fraudulent misrepresentations when trying to get potential customers to sign up for flood insurance in the first place.

*Messa*, 122 F. Supp. 2d at 521

The court in *Scherz v. South Carolina Insurance Company*, 12 F.Supp.2d 1000 (C.D.Cal. 2000), rejected its earlier decision in *Cohen v. State Farm Fire & Casualty*, 68 F.Supp.2d 151 (C.D.Cal. 1999), due in part to the fact that

*Cohen* "failed to distinguish between 'claims handling disputes' . . . and disputes involving the initial issuance or procurement of the SFIP." *Scherz,* 12 F. Supp.2d at 1005; *see also Gibson*, 289 F.3d at 949 (noting distinction but finding that because the plaintiffs' allegations pertain to claims handling it was unnecessary to decide preemption issue as to procurement claims); *Houck*, 194 F.Supp.2d at 461; *Neill*, 159 F.Supp.2d at 776; *Bleecker v. Standard Fire Ins. Co.*, 30 F.Supp.2d 726, 733 (E.D.N.C. 2000).

The statute and regulations support the distinction the cases recognize. Section 4072 makes no mention of tort claims arising out of policy procurement. Nor does the government dictate the manner in which WYOs procure customers. FEMA regulations give WYOs broad discretion to market the insurance policies "pursuant to their customary business practices." 44 C.F.R. § 62.23(a). This court must determine whether the proposed additional claims against Delta Lloyds, based on state law, arise from policy interpretation or claims handling on the one hand, or policy procurement on the other. The proposed third amended complaint includes the following paragraphs alleging that Delta Lloyds is liable for the negligence, negligent undertaking, misrepresentations, and statutory violations of the insurance agent, Migura:

> Defendants Migura, independently and *as agent for Delta Lloyds* was negligent in failing to send a renewal notice to

> Plaintiffs proper address and in failing to properly complete all the paperwork necessary to ensure that the McCullochs would receive renewal notices at their proper address . . . Defendant Migura breached his duty by sending the renewal notice to the wrong address and by failing to notify others of this necessary change.

(Docket Entry No. 51, p. 8, ¶20) (emphasis added).

> Defendants Migura and *Delta Lloyds, by and through its agent Migura* undertook, gratuitously and/or for consideration, to render services for the McCullochs which Defendants recognized or should have recognized as necessary to protect the McCullochs and their property. The McCullochs relied on Defendants' undertaking to correct the address and to send appropriate premium renewal notices to the McCullochs, which Defendants failed to do and as a result, the McCullochs suffered damages because of their reliance on Defendants' negligent undertaking.

(Docket Entry No. 51, p. 9, ¶21) (emphasis added).

> Defendants Migura and *Delta Lloyds, by and through its agent Migura,* misrepresented that the McCullochs' change of address would be and/or had been made, and that, as a result, the proper address was being used by Delta Lloyds. These misrepresentations were false and made recklessly as a positive assertion without any knowledge of their truth or alternatively, Defendant did not exercise reasonable care or competence in communicating the information. These misrepresentations regarding the address change were material because they induced the McCullochs into renewing the Delta Lloyds policy with an incorrect address.

(Docket Entry No. 51, p. 9, ¶22) (emphasis added). The proposed amended complaint also alleges that Migura and Delta Lloyds, *by and through its agent Migura,*

misrepresented that the change of address would be and/or had been made, in violation of the Deceptive Trade Practices Act and the Texas Insurance Code. The proposed amended complaint alleges that Migura was acting in the course and scope of its agency, actual or apparent, for Delta Lloyds when Migura failed to provide the correct address and payor information to Delta Lloyds. (Docket Entry No. 51, p. 12, ¶ 26).

The proposed fourth amended complaint adds the following allegations as to Delta Lloyds's direct liability under state law:

> In a January 2000 notice received by the McCullochs, Delta Lloyds told the McCullochs to "NOTIFY AGENT OF CHANGE OF ADDRESS." The McCullochs complied . . . . Delta Lloyds knew or should have known that in instructing the McCullochs to notify Migura of their change of address, the McCullochs would reasonably believe Migura was authorized to accept such notice on Delta Lloyds behalf. If Migura is, in fact, not authorized to accept notice, then the representation was false, made recklessly and as a positive assertion, or alternatively, made in violation of Delta Lloyds' duty to use ordinary care in representing such matters to the McCullochs. In any scenario, Delta Lloyds' representation will have caused the McCullochs damages should the court not find coverage under the policy. In short, for Delta Lloyds' direct misrepresentation, the McCullochs seek to hold Delta Lloyds liable for committing fraud, a negligent misrepresentation, violating Tex. Ins. Code Art. 21.21 §4(1) and (11), Tex. Ins. Code Art. 21.21 §16(a), Tex. Bus. & Com. Code §17.46(b)(5), (7), (9), (12), and (23), and Tex. Bus & Com. Code §17.50(b)(3).

(Docket Entry No. 79, pp. 14-15, ¶¶29-31).

The allegations that Delta Lloyds, directly or through an agent, Migura, is liable under state common law misrepresentation and negligence causes of action and for state statutory violations do not concern policy procurement as that term is used in the preemption cases. The cases carve out from federal preemption allegations of tortious conduct that allegedly occurred in the initial marketing and selling of a flood insurance policy. *Spence*, 996 F.2d at 793 (insureds alleged misrepresentations regarding the scope of insurance coverage); *Powers v. Autin-Gettys-Cohen Ins.*, 2000 WL 1593401 (E.D. La. Oct. 24, 2000) (insureds asserted tort claim against insurance company alleging they were overcharged and misinformed); *Houck*, 194 F. Supp.2d at 52 (insureds alleged insurer improperly induced them to purchase more expensive coverage than necessary). By contrast, the allegations against Delta Lloyds in the proposed third and fourth amended complaints all deal with the procedures and steps used to prepare and mail renewal notices, long after the Policy initially issued. There are no allegations of misrepresentations made before the Policy issued as to the extent or scope of coverage or benefits that would be available.

Article VII (H)(3) of the SFIP specifically covers the renewal of an SFIP. It provides as follows:

> H. Policy Renewal
>
> 1. This policy will expire at 12:01 a.m. on the last day of the policy term.

> 2. We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.
>
> 3. If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:
>
> > a. If you or your agent notified us, not later than 1 year after the date on which the payment of the renewal premium was due, of nonreceipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.
> >
> > b. If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy. In that case, the policy will remain an expired policy as of the expiration date shown on the Declarations Page.

(Docket Entry No. 31, p. 6).

This court has held that under Article VII.H.3, there are two consequences from the insurer's failure to give timely notice of a premium payment deadline. If no renewal notice is given or if it is defectively given as a result of the

insurer's mistake, the policy provides a one-year period from the expiration date during which the insured can give notice of the nondelivery and make the necessary payment. If the insurer gave proper notice, the thirty-day rule applies, giving the insured a thirty-day grace period in which to pay the renewal premium or secure another means of protection.

The SFIP itself specifically addresses the procedures governing the preparation and mailing of renewal notices and the consequences of the insured's failure to receive such a notice in a timely fashion because of an incorrect address. If Delta Lloyds's mistake led to the incorrectly addressed renewal notice, the McCullochs will be entitled to reinstatement of the Policy and a finding that the coverage denial breached the contract. If Delta Lloyds's mistake did not cause the incorrect address to be placed on the renewal notice, then, under the SFIP, the Policy had lapsed when the loss occurred.

The cases are clear that when the allegations concern the manner in which the policy is interpreted, or the manner in which the claims are handled, resulting in a determination of coverage or its absence, state law causes of action are preempted. *Jamal*, 129 F. Supp.2d at 1031 (state law claim of breach of the duty of good faith and fair dealing and claim under Texas Insurance Code preempted by federal law because these claims deal with contract coverage issues); *Schertz*, 12 F. Supp.2d at 1010

(state law claim for breach of implied covenant and fair dealing preempted when plaintiffs alleged failure to act promptly on claim); *Neill*, 159 F. Supp.2d at 778 (state law bad faith and breach of contract claim arising out of insurer's handling of flood claim are preempted). The procedures at the basis of this case–the preparation of a renewal notice and the consequences of errors in that notice–are much more similar to the claims handling procedures that are held preempted than to the marketing aspects of policy procurement that can support an extracontractual state law cause of action. The procedures are covered by the SFIP when, as here, the allegations are allegations that coverage were wrongfully denied, section 4072 applies and state law claims are preempted. The McCullochs' claims of state law violations in the way the renewal procedures were handled, leading to the denial of coverage, are preempted by federal law.

This court DENIES the McCullochs' motion for leave to file the portions of the third amended complaint that assert state law extracontractual claims against Delta Lloyds and DENIES the McCullochs' motion for leave to file the fourth amended complaint, as futile.

**B. Timeliness**

As an additional ground for denying the motion for leave to file the fourth amended complaint, this court finds that it is untimely. On January 21, 2003,

this court entered a scheduling order, which set the date for discovery cutoff at March 21, 2003, and for pretrial motions due April 18, 2003. The McCullochs filed the motion for leave to file the fourth amended complaint on May 20, 2003. Both parties had pending dispositive motions. (Docket Entry Nos. 59, 67).

Once a scheduling order deadline to amend a pleading has expired, the party seeking to amend is effectively asking the court for leave to amend both the scheduling order and the pleading. *See, e.g., Johnson*, 975 F.2d at 607-08; *SIL-FLO*, 917 F.2d at 1518. Rule 16(b) requires that scheduling orders "shall not be modified except upon a showing of good cause."[2] By limiting the time for amendments to pleadings, Rule 16(b) is designed to ensure that "at some point both the parties and the pleadings will be fixed." *See id.* (Advisory Committee Notes to 1983 Amendment). All circuit courts to consider the issue have ruled that the Rule 16(b) "good cause" standard, rather than the "freely given" standard of Rule 15(a), governs a motion to amend filed after the deadline set in the scheduling order. *See Parker v. Columbia Pictures Inds.*, 204 F.3d 326 (2d Cir. 2000); *Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330 (3d Cir. 2000); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430,

---

2 In *Wallin v. Fuller*, the Fifth Circuit held that an amendment to conform the pleadings to include issues tried by consent was governed by Rule 15(b) rather than Rule 16. 476 F.2d 1204, 1209 (5th Cir. 1973). The court based its holding on the language of Rule 15(b), which does not give the trial court discretion, but rather requires amendment when issues outside the pleadings are tried by consent. *See id.* Rule 15(a), applicable to amendments such as the one at issue here, does not contain such language. This case presents a different issue.

437 (8th Cir. 1999); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)

(per curiam); *Riofrio Anda v. Ralston Purina, Co.*, 959 F.2d 1149,    54-1155 (1st Cir.

1992); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992);

*SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518 (10th Cir. 1990) Several district

courts in the Fifth Circuit have adopted this standard as well. *See Porter v. Milliken

& Michaels, Inc.*, No. 99-0199, 2001 WL 378687 (E.D. La. Apr. 12, 2001); *Howell v.

Standard Motor Prods., Inc.*, 2001 WL 196969 (N.D. Tex. Feb. 26, 2001).

      The "good cause" standard focuses on the diligence of the party asking

the court to modify the scheduling order. *Parker*, 204 F.3d at 340; *In re Milk Prods.*,

195 F.3d at 437; *Johnson*, 975 F.2d at 609; *Marcum v. Zimmer*, 163 F.R.D. 250, 254

(S.D.W.Va. 1995). The absence of prejudice to the nonmovant is relevant to Rule

15(a), but does not satisfy the "good cause" requirement of Rule 16(b). *Tschantz*, 160

F.R.D. at 571

      To demonstrate "good cause," the movant must show that, despite

diligence, he could not have reasonably met the scheduling deadline. 6A WRIGHT, ET

AL., FEDERAL PRACTICE & PROCEDURE, § 1522.1 at 231 (2d ed.1990). In the context

of a motion for leave to amend, the court may deny the motion if the movant "knows

or should have known of the facts upon which the proposed amendment is based but

fails to include them in the original complaint." *Pallottino v. City of Rio Rancho*, 31

F.3d 1023, 1027 (10th Cir.1994); *Sosa*, 133 F.3d at 1419 (denying leave to amend under rule 16(b) when facts were known to plaintiff at time of first complaint); *Parker*, 204 F.3d at 340 (same).

Plaintiffs make no argument as to why they failed to include the claim of Delta Lloyds's direct liability for extracontractual causes of action when they filed the third amended complaint, instead limiting their arguments to how Delta Lloyds is arguably not prejudiced. Plaintiffs had available to them the information regarding the "new" causes of action as of the previous filing. In fact, in Delta Lloyds's opposition to plaintiffs' motion for leave to file the third amended complaint, it noted that plaintiffs had limited the causes of action to those alleging only indirect tortious conduct. Plaintiffs do not attempt any showing of good cause for failing to allege these claims earlier. The failure to do so is an independent basis for denying leave to file the fourth amended complaint.

## II.   The Cross-Motions for Summary Judgment

The parties have cross-moved for summary judgment as to the coverage issue. This court, in its January 2, 2003 Memorandum and Opinion, identified the outstanding legal issue as whether, under the policy's renewal clause, the policy should have been reinstated with no gap in coverage, or whether it would be reinstated after a thirty-day lapse in coverage, leaving the loss uninsured. This court construed

the renewal provision, Article VII(H)(3), which provides a one-year extended grace period when "we"–the WYO insurer, made a mistake in mailing the renewal notice by using an incorrect address, and "you"–the insureds–timely notify the insurer of the nonreceipt of the renewal notice before the due date for the premium. The court held that the legal issue turned on a question of fact–whether Delta Lloyds had actual, effective notice of the insureds' change of address before the 2001 renewal notice was mailed. The court found that the record contained insufficient information as to whether Delta Lloyds was effectively informed of the change of address and payor status. William McCulloch submitted an affidavit stating that he did notify Delta Lloyds, but he did not state how or when he did so. For these reasons, the court previously denied summary judgment on the coverage issue. The parties have now supplemented the summary judgment evidence on this question.

After this court's previous memorandum and opinion, William McCulloch testified in a deposition, clarifying the steps he took to inform Delta Lloyds or its servicing agent, NFS, of the change in address and payor status. William McCulloch testified at his deposition as follows:

> Q.   It is my understanding that you personally never called Delta Lloyds or National Flood Services prior to the June, 2001, loss and said, "Hey, you need to correct the mailing address for my flood insurance policy and you need to correct the person listed as paying the premium on the policy?"

> A. I–the only thing that I would differ in that, I called Stan Migura, who was an agent for Delta Lloyds.
> Q. . . . You didn't call Delta Lloyds Insurance Company's main office?
> A. I did not.
> Q. All right. And you didn't call National Flood Services out of Kallispell, Montana.
> A. Not until after the flood.
> Q. All right. What you're saying is, is you did call Stan Migura prior to the flood and say, "Hey, Stan, fix this?"
> A. Correct.

(Docket Entry No. 70, Ex. A, pp. 82-83). McCulloch later expanded this testimony:

> Q. [Your affidavit says that you provided notice to the National Flood Services, although the court noted in its opinion that you did not explain how.] So, I'm going to ask you: How did you provide the notice to the National Flood Service?
> A. I think there's–there's several ways to respond to that. First and foremost, as I said earlier, the check that I sent or that we sent, I should say, that my wife signed, had our correct address on the check. In addition to that, the envelope the check was mailed in had our correct address listed as the return address on the envelope. In addition, there's a document that's been–we've discussed before today–I don't think it's ever been produced as an exhibit–but it's the document that showed up at our house in January of 2000, that it was a copy of a renewal notice that stated in large caps "this is not a bill." It's the one that had the correct–incorrect, excuse me, the incorrect payor information and the incorrect mailing address for us on it. It's the one my wife had the conversation with Mr. Migura about that we discussed earlier. On that particular piece of paper, it states that if the payor information and /or the

> mailing address is incorrect, we were to contact the agent, being, in this situation, Mr. Migura. That was a document that was generated by Delta Lloyds. . . .

(*Id.*, pp. 96-97). Later, he continued:

> Q. All right. Now, very specifically, though, you never sent a letter or any type of written instructions that specifically told National Flood Services, "Please change my address to the Drummond Street address and please list the McCullochs as being the payor of the premium?
>
> A. Other than the return envelope that we discussed and the address on the check, I never sent anything to Montana to the National Flood Services. Instead, I notified the National Flood Services and Delta Lloyds Insurance Company by complying with their policy in communicating this information to the agent.
>
> Q. I understand. But I guess what I'm asking is simply "yes" or "no," Cameron, you never sent a letter to National Flood Services or any other type of written instructions yourself that said, "Change my mailing address and change the person who's paying the premium to me."
>
> A. Correct.

(*Id.*, pp. 101-02).

Delta Lloyds argues that this testimony establishes that the McCullochs failed to provide notice of the correct address and payor status to Delta Lloyds or to NFS. The McCullochs respond that they notified the Migura Insurance Agency; mailed a check that had their correct address in an envelope with a correct return address; and filed a change of address notice with the United States Postal Service.

The McCullochs argue that it is "not proper for Delta Lloyds to claim that it did not have notice of a change of address when the McCullochs informed Migura of their change of address--the very person Delta Lloyds told them to notify," (Docket Entry No. 76, p. 3), essentially an estoppel argument.

The McCullochs do not present or identify any summary judgment evidence in the supplemented record that raises a fact issue as to whether Delta Lloyds had actual notice of the McCullochs' change of address but, through its own mistake, caused the renewal notice to be sent to the wrong address. William McCulloch's deposition testimony repeatedly establishes that he did not inform either Delta Lloyds or NFS that the address and payor status information they had previously been provided was incorrect or supply the correct information. The McCullochs told Migura and relied on Migura to transmit the correct information to Delta Lloyds and NFS.[3] Migura did not do so. The fact that the McCullochs paid with a check that showed the correct address and enclosed envelope, and had filed a change of address with the Postal Service, did not effectively inform Delta Lloyds that the address and payor status information it had on the insureds was incorrect. Delta Lloyds has submitted uncontested summary judgment evidence that it did not have effective,

[3] Under the applicable WYO regulation, 44 C.F.R. §61.5(e), the "duly licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the servicing agent." The McCullochs' argument that Migura was an agent of Delta Lloyds is contradicted by the NFIA interpretive regulations.

actual notice that the address and payor information provided on the insureds' application was no longer correct. The McCullochs have failed to raise a fact issue that the use of the incorrect address on the renewal notice was the result of Delta Lloyds's mistake. The McCullochs admit that Migura failed to tell Delta Lloyds or NFS to change the address and payor status from what was shown on the application.

The McCullochs appear to argue that Delta Lloyds should be estopped from denying coverage because the McCullochs followed Delta Lloyds's instructions in notifying Migura of the incorrect address. The courts have consistently rejected any claim of estoppel against a WYO insurer absent proof of affirmative misconduct, going beyond negligence, which is not alleged or indicated on this record. In *Gowland v. Aetna*, 43 F.3d 951 (5th Cir. 998), the insureds suffered a flood loss and reported the damage claim to their agent, who in turn notified the insurer, the WYO company. However, the policy also required the insureds to submit to the insurer a sworn proof of loss within sixty days of the loss. The court concluded that the plaintiffs' equitable estoppel argument was "inapplicable" as against a participating WYO company, because of the unique nature of the National Flood Insurance Program, which allows "consumers to obtain flood insurance which virtually would be impossible to purchase in the marketplace." *Id.* Delta Lloyds is not estopped from

denying coverage based on Migura's failure to transmit the information he received of the change of address and payor status for the insureds.

## III. Conclusion and Order

This court GRANTS the McCullochs' motion for leave to file the third amended complaint insofar as it adds Migura as a party and asserts causes of action against him, but DENIES the motion insofar as it adds claims that Delta Lloyds is liable for Migura's torts; DENIES the McCullochs' motion to file a fourth amended complaint; DENIES as moot Delta Lloyds's motion for leave to amend; GRANTS Delta Lloyds's second motion for summary judgment as to coverage; DENIES the McCullochs' motion for summary judgment as to coverage; and GRANTS the McCullochs' motion to compel mediation, but only as to Migura. An order relating to mediation will be separately entered.

SIGNED on June 27, 2003, at Houston, Texas.

Lee H. Rosenthal
United States District Judge