## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION<br><br>PERTAINS TO:<br><br>LEVEE (Sims, Jr., No. 06-5116; DePass, No. 06-5127; Paul, No. 06-7682)<br><br>LEVEE/MRGO (Richard, No. 06-5118; Adams, No. 06-5128; Bourgeois, No. 06-5131; Ferdinand, No. 06-5132; Christophe, No. 06-5134; Williams, No. 06-5137; Porter, No. 06-5140; Augustine, No. 06-5142) | CIVIL ACTION<br><br>NO. 05-4182<br>& Consol. Cases<br><br>SECTION "K" (2)<br>JUDGE DUVAL<br><br>MAGISTRATE WILKINSON |

### MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS TO DISMISS PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

**MAY IT PLEASE THE COURT:**

This memorandum is submitted in support of the Rule 12(b)(6) Motion to Dismiss filed herein on behalf of Defendant, Board of Commissioners of the Port of New Orleans ("the Port"), and in support of said motion, the Port submits as follows.

1

## **BACKGROUND**

The Plaintiffs in the above-captioned matters purport to be members of various proposed classes of persons who claim to have suffered damages as a result of Hurricane Katrina. In each of the captioned matters, it appears that Plaintiffs attempt to hold the Port liable for the United States' mere construction and maintenance of the MRGO, and Plaintiffs predicate their claims against the Port upon identified "Acts of Assurance" between the Port and the United States Government wherein the Port allegedly agreed to "hold and save the United States free from all claim for damages due to [its] construction, maintenance and operation of the project." Based solely upon the alleged existence of these hold harmless provisions, Plaintiffs allege that they have the right to recover from the Port damages allegedly caused by the United States' operation and maintenance of the MRGO.[1]

The Port submits that, even should the hold harmless provisions identified by Plaintiffs, encompass the claims asserted herein, which is specifically denied, those provisions do not provide Plaintiffs with a cause of action against the Port for the United States' operation and maintenance of the MRGO. Rather, these hold harmless provisions are, at best, nothing more than agreements by the Port to indemnify the United States government for amounts it may be cast in

---

[1] See generally, Sims (06-5116) Complaint at ¶¶ 49-54, 59-60; DePass (06-5127) Complaint at ¶¶ 49-54, 59-60; Paul (06-7682) Complaint at ¶ 34; Richard (06-5118) Complaint at ¶¶ 35-40, 53-54; Adams (06-5128) Complaint at ¶¶ 35-40, 53-54; Bourgeois (06-5131) Complaint at ¶¶ 50-55, 70-72; Ferdinand (06-5132) at ¶¶ 45-50, 63-64; Christophe (06-5134) Complaint at ¶¶ 36-41, 54-55; Williams (06-5137) at ¶¶ 45-50, 63-64; Porter (06-5140) Complaint at ¶¶ 34-39, 52-53; Augustine (06-5142) Complaint at ¶¶ 35-40, 53-54.

2

judgment by Plaintiffs within the scope of, and as contemplated by, the hold harmless provisions.

Alternatively, the Port submits that Plaintiffs have failed to state a cause of action based upon the construction and maintenance of the MRGO as there are no factual allegations which, if proven, would entitle Plaintiffs to any relief sought. Particularly, Plaintiffs fail to allege any fault on the part of any party relative to the construction or maintenance of the waterway.

Aside from the above, the only statements made against the Port are the conclusory allegations that: (1) under one Act of Assurance executed in connection with the MRGO construction project, the Port "agreed to provide and maintain bridges required over the waterway" and (2) "[t]he Port is liable for damages due to its failure to maintain the highway bridges and approaches as agreed…" Notwithstanding these allegations, Plaintiffs' complaints still fail to state a cause of action against the Port since there are no accompanying allegations, which, if proven true, would entitle Plaintiffs to any relief. It is not alleged that any maintenance of any bridge had any relationship to the damages claimed by Plaintiffs.

For the above reasons, as fully explained below, the Port submits that Plaintiffs' Complaints fail to state a cause of action upon which relief can be granted against it, thereby warranting dismissal of all claims asserted herein against the Port.

## **LAW AND ARGUMENT**

When considering a motion to dismiss for failure to state a claim, the district court "is to take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). However, if it appears without a doubt that the facts alleged, taken as true, would not entitle the plaintiff to the relief sought, the complaint should be dismissed. See *Fernandez-Montes,* 987 F.2d at 284-85; *Hoshman v. Esso Standard Oil Co.,* 263 F.2d 499, 502 (5th Cir. 1959). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes,* 987 F.2d at 284. When the plaintiff's allegations are wholly conclusory and fail to set forth the facts which, if proved, would entitle plaintiff to the relief sought, dismissal of the complaint is warranted. *Fernandez-Montes,* 987 F.2d 278; *Hoshman,* 263 F.2d 499. *Davidson v. State of Ga.,* 622 F.2d 895 (5th Cir. 1980). To that end, dismissal of the plaintiff's complaint is warranted if it "lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall,* 42 F.3d 925 (5th Cir. 1995).

Here, Plaintiffs claim that their damages resulted from the construction and maintenance of the MRGO. Plaintiffs do not allege that the Port either constructed or maintained the waterway. Rather, Plaintiffs allege that the Port is liable for damages caused by the United States' construction and maintenance activities by virtue of the Acts of Assurance hold harmless provisions.

Plaintiffs claim that the hold harmless provisions of the identified Acts of Assurance provide them with the right to assert a cause of action against the Port for the United States' construction and maintenance of the MRGO. This attempt by Plaintiffs is not a novel one. Many times before, plaintiffs, as third parties to Acts of Assurance, have argued that the hold harmless agreements contained therein gave them the right of action against the state or local agency for damages caused by the works of the United States government. Each time before, the courts held that these hold harmless provisions are nothing more than indemnity agreements, whereby the state or local agency only agrees to reimburse the United States government to the extent it is cast in judgment by damaged third parties. These agreements do not, as Plaintiffs suggest, provide them, as third parties, with a right or cause of action against the indemnifying state or local agency. See *Anderson v. Red River Waterway Commission*, 231 F.3d 211 (5th Cir. 2000); *Cooper v. City of Bogalusa*, 195 La. 1097, 198 So. 510 (La. 1940); *Adam v. Great Lakes Dredge and Dock Co.*, 273 So.2d 60 (La. App. 4 Cir. 1973); *Vujnovich v. State of Louisiana*, 184 So.2d 618 (La. App. 4 Cir. 1966); *Petrovich v. State of Louisiana*, 181 So.2d 811 (La. App. 4 Cir. 1966); *Vuljan v. Board of Commissioners of Port of New Orleans*, 170 So.2d 910 (La. App. 4 Cir. 1965); *Haeuser v. Board of Commissioners of Port of New Orleans*, 170 So.2d 728 (La.App. 4 Cir. 1965).

Plaintiff's approach here was first attempted in *Cooper*, 198 So. 510 (La. 1940). There, the plaintiff alleged damage to her property caused by the United States' dredging of the Pearl River. Plaintiff filed suit against the City of

Bogalusa and predicated her claim upon an "Act of Assurance" whereby by the City of Bogalusa had agreed to:

    (1)    assume full responsibility for all damages to property incident to the construction of the [Pearl River improvements];

    (2)    assume full responsibility for all property damage incident to the construction and maintenance of the [Pearl River improvements]; and

    (3)    hold and save harmless the United States of America, and its agents, from all claims for damages that may or might result from the construction and maintenance of the [Pearl River improvements].

*Cooper,* 198 So. at 511. The Louisiana supreme court acknowledged that "[i]f Plaintiff [had] suffered damage, then the active and only agency causing the damage [was] the United States government. The work [was] solely under the direction and control of the United States government.... [and] [t]he supervision, operation and maintenance of the finished project [vested] solely in the United States." *Cooper,* 198 So.2d at 512. Nevertheless, Plaintiff argued that, by virtue of the City's agreement to assume full responsibility and hold and save the United States harmless relative to all claims, she was entitled to bring a direct action against the City of Bogalusa to recover damages caused by the United States' works. The supreme court rejected that argument and held that the City's agreement only served as an agreement to indemnify the United States government in the event it was cast in judgment for damages caused by its

6

construction and maintenance of the subject improvements. *Cooper,* 198 So. at 512. It did not, as the plaintiff argued, grant her a right or cause of action to recover her damages from the City and, as such, the Plaintiff's lawsuit against the City of Bogalusa was properly dismissed. *Id.*

In *Vujnovich,* 184 So.2d 618, the plaintiff filed suit against the State of Louisiana seeking damages for destruction of his oyster bed caused by the United States' dredging and other improvements works to the Barataria Bay Waterway. The plaintiff's claims against the State were predicated upon its "Acts of Assurance" executed in connection with those works.

In connection with the Untied States' construction and maintenance of the Barataria Waterway, the Parish of Jefferson had agreed to "[h]old and save the United States free from damages due to construction and maintenance of the project," and in turn, the State of Louisiana agreed that it would "save and hold the Parish of Jefferson harmless on account of any liability or claim for damages incurred by said parish in granting the necessary assurances to the United States government….." *Vujnovich,* 184 So.2d. at 620.

The trial court permitted the plaintiff to proceed against the State by virtue of these hold harmless provisions, and judgment was ultimately rendered against the State. However, the court of appeals reversed and ordered that all claims asserted against the State be dismissed. *Vujnovich,* 184 So.2d at 621. Consistent with *Cooper,* the Fourth Circuit held that the plaintiff had no cause of action against the State based upon the "save harmless" assurance, which, in

the words of the court, was nothing more than an indemnity agreement executed in favor of the United States government. As the Court stated:

> ..... under the "save harmless" assurance [the State] stands only in the position of agreeing to reimburse the United States the amount which an owner might by judicial determination first recover in damages in an action against the United States.

*Vujnovich,* 184 So.2d at 621.

In *Vuljan,* 170 So.2d 910, the plaintiff filed suit against the Port seeking damages for the destruction of his oyster bed caused by the United States' construction and dredging works performed on the MRGO. The plaintiff's claim against the Port was predicated upon the very "Acts of Assurance" relied upon by Plaintiffs here, i.e., those in which the Port agreed "to indemnify and hold harmless the United States against any all claims that might result from the construction [or maintenance] of the [MRGO]."

The trial court dismissed the plaintiff's action against the Port, and the plaintiff appealed. The court of appeals affirmed the dismissal and held that the MRGO was a federal project, and "the federal government alone constructed it...." *Vuljan,* 170 So.2d at 912. The "assurance" by the Port was "in the nature of an agreement of indemnification and ....... did not create a cause of action in [plaintiff], a third person, to sue [the Port] for damages to his property resulting from the construction of the project." *Vuljan,* 170 So.2d at 913. The court likewise held in *Vuljan*:

> Under the "save harmless" assurance, [the Port] stands only in the position of

8

> agreeing to reimburse the United States the amount which an owner might by judicial determination first recover in damages in an action against the United States.

See also *Haeuser,* 170 So.2d 728 (Plaintiff had no direct action against the Port pursuant to Act of Assurance for damages caused by the United States' construction of the MRGO); *Petrovich,* 181 So.2d 811, 814 (The State's agreement to furnish the necessary rights-of-way and to hold harmless the United States did not give plaintiff a right or cause of action against the state for damages caused by the United States' construction of the Barataria Bay Waterway Project).

In accord with the above jurisprudence, the United States Fifth Circuit Court of Appeals has likewise held that "Acts of Assurance" executed by a state or local agency, wherein it agrees to hold and save the United States harmless from claims arising from a federal construction project, was nothing more than an indemnification agreement whereby the state or local agency agreed only to indemnify the United States for amounts it may be cast in judgment by third persons. *Anderson* 231 F.3d at 215. The state or local agency's agreement did not confer the power or right upon plaintiffs, as third parties, to file suit directly against the indemnifying state or local agency for the United States' acts or omissions.

All courts which decided the issue in question under identical or substantially similar circumstances, have agreed that the hold harmless provisions of these of "acts of assurance" are in the nature of indemnification

agreements. They can only serve as a means by which the United States government can seek reimbursement for amounts it may be cast in judgment to damaged third persons. The assurances do not, as Plaintiffs argue here, confer any rights upon them as third parties, to file suit directly against the indemnifying state or local agency.

No doubt Plaintiffs here hang their hats on the Louisiana Third Circuit Court of Appeals decision in *Cooper v. Louisiana Department of Public Works*, 870 So.2d 315 (La. App. 3 Cir. 2004). There, and under the facts and circumstances at issue in that case, the court held that an Act of Assurance constituted a *stipulation pour autrui* in favor of the plaintiffs, who were thus deemed third party beneficiaries of the assurances and therefore entitled to bring suit directly against the state agency. To the extent plaintiffs argue that this *Cooper* decision applies under the allegations presented here, the Port submits that said decision constitutes an anomaly in complete contravention of the aforementioned jurisprudence, including decisions of the Untied States Fifth Circuit Court of Appeals and the Louisiana Supreme Court. Accordingly, the Third Circuit's decision in *Cooper* is neither controlling nor persuasive, and it should be disregarded in its entirety.

Moreover, the Port submits that the Third Circuit's decision in *Cooper* was based upon facts not alleged here and consequently has no application in any event. In the Third Circuit's *Cooper* decision, the plaintiffs filed suit for permanent flooding of their property caused by the United States' construction of locks and dams to promote navigation of the Ouachita and Black Rivers.

Plaintiffs filed suit directly against the Louisiana Department of Transportation and Development ("DOTD") although it was acknowledged that the project "was solely under the direction and control of the United States" and "the only entity that caused the flooding of [the plaintiffs'] land [was] the Untied States." *Cooper* 870 So.2d. at 11.

The plaintiffs argued that the provisions of the DOTD's Acts of Assurance, executed in favor of the United States, gave them the right to proceed directly against the DOTD. The Louisiana Third Circuit, in accord with the jurisprudence cited above, acknowledged that the Acts of Assurance "save harmless" provision, considered alone, was nothing more than an agreement by the DOTD to indemnify the United States in the event it was cast in judgment. *Cooper*, 870 So.2d. at 329-30. It did not, in and of itself, provide the plaintiffs with a right of direct action against the DOTD. *Id.* However, the Third Circuit held that in light of other obligations assumed by the DOTD therein, the Act of Assurance executed by the DOTD created a *stipulation pour autrui* in favor of the plaintiffs with respect to the DOTD's performance obligations and its breach thereof. Particularly, the DOTD had agreed that it would:

> A. Furnish free of cost to the United States all lands, easements, and right of way[s], including flowage rights in overflow areas... necessary for construction of the project and for its subsequent maintenance and when and as required; [and]
>
> ***
>
> C. Hold and save the United States free from damages due to

11

> construction and maintenance of
> the project.

*Cooper*, 870 So.2d. at 319-20. Accordingly, the DOTD had assumed the contractual obligation of appropriating all property necessary for the project, which if performed correctly, would have included appropriation of the plaintiffs' property in exchange for just compensation. However, the DOTD failed to appropriate the plaintiffs' property which was "necessary for construction of the project and for its subsequent maintenance." The Third Circuit reasoned that the DOTD's contractual duty to appropriate necessary lands in exchange for just compensation, was intended for the benefit of the landowners, and it was the DOTD's breach thereof which gave rise to the plaintiffs' claim for damages. As the Third Circuit stated:

> the obligation that the United States imposed as a condition of the "Act of Assurances" and undertaken by the DOTD (to provide the United States with all lands necessary for the construction of maintenance of [the project] constitutes a *stipulation pour autrui* in favor of the plaintiffs.

*Cooper* 870 So.2d at 330-31. It was this obligation which constituted a *stipulation pour autrui*, and it was the DOTD's failure to perform that obligation which gave rise to the plaintiffs' claims. This, when considered with the hold harmless provision, evidenced an intent that the DOTD would answer for plaintiffs' damages caused by its fault, and thus gave plaintiffs the right to proceed directly against the DOTD. As the Third Circuit held:

> we find that the Plaintiffs had a right to proceed directly against the DOTD for

12

> the damages **arising out of the breach of its promise** to the United States to provide it, free of claims, with all lands and servitudes necessary for the construction and maintenance of the locks and dams along the Ouachita and Black Rivers.

(emphasis added) *Cooper,* 870 o.2d at 331.

Here, plaintiffs' claims against the Port are predicated solely upon the hold harmless provisions. There are absolutely no allegations that Plaintiffs' claims arise from any failure of the Port to perform any obligation necessary for the construction or maintenance of the MRGO. Under these circumstances, and since no breach of contract by the Port gave rise to Plaintiffs' claims, the Third Circuit's decision in *Cooper* has no application. In line with all other jurisprudence cited herein, the hold harmless provisions at issue here do not give Plaintiffs any right or cause of action against the Port for the United States' design, construction or maintenance of the MRGO. Rather, the hold harmless provisions relied upon by Plaintiffs, are nothing more than indemnification agreements which do not confer any rights upon Plaintiffs as third parties thereto. Even the Louisiana Third Circuit, prior to its *Cooper* decision, held that an indemnification agreement, without more, cannot constitute a *stipulation pour autrui* in favor of damaged third parties. See *Soileau v. Yates Drilling Co.,* 183 So.2d. 62 (La.App. 3 Cir. 1966). For the indemnitor to be held liable to a third party, there must be some evidence that the indemnitor's conduct gave rise to the third party's claims. *Id.*

Notwithstanding the above, the Port submits that Plaintiffs' complaints still fail to state a claim upon which relief can be granted as they contains no factual allegations which, if proven, would establish negligence on other culpable conduct on the part of anyone for the construction or maintenance of the MRGO. Plaintiffs' complaints contain only conclusory allegations that their claims "resulted from" or "were due to" the construction and maintenance of the MRGO. The simple fact that the waterway was built and maintained does not establish any claim for which relief may be granted.

Just because a plaintiff sustains damages in connection with, or in proximity to, a "thing" does not suffice to establish any negligence or fault on the part of anyone. It is a fundamental principle of tort law that the mere happening of an event that causes damage or injury to persons does not establish liability on the part of the defendant. See *Edwards v. Sears, Roebuck and Co.,* 512 F.2d 276 (5th Cir. 1975); *Kersey v. American River Transp. Co.,* 353 F.Supp.2d 683 (E.D. La. 2004); *Guidry v. Aventis Pharmaceuticals, Inc.,* 418 F.Supp.2d 835 (M.D. La. 2006); *Skandia Ins. Co., Ltd. v. Star Shipping AS,* 173 F.Supp.2d 1288 (S.D. Ala. 2001); *Clements v. Chotin Transp., Inc.,* 496 F.Supp. 163 (M.D. La. 1980); *Barrow v. Brownwell,* 938 So.2d 118 (La.App. 1 Cir. 2006); *Hesse v. Champ Service Line,* 933 So.2d 247 (La.App. 3 Cir. 2006); *Lara v. Knotts,* 764 So.2d 241 (La.App. 2 Cir. 2000); *Parker v. Southwestern Offshore Corp.,* 763 So.2d 638 (La.App. 2 Cir. 1999) *Riley v. Louisiana I-Gaming,* 732 So.2d 541 (La.App. 5 Cir. 1999); *Keys v. Sambo's Restaurant, Inc.,* 389 So.2d 1360 (La.App. 3 Cir 1980). Rather, for a plaintiff to recover damages he must establish

14

that the defendant was negligent. *Id.* Since negligence is a requisite to tort recovery, and Plaintiffs have not alleged any facts which, if assumed to be true, would prove negligent construction or maintenance of the MRGO, Plaintiffs' complaints fail to state a claim for which relief can be granted.

Likewise, Plaintiffs' complaints also contain conclusory allegations that the Port is liable for damages due to its failure to maintain the highway bridges and approaches. These allegations are insufficient to state a claim against the Port as Plaintiffs again fail to allege facts essential to recovery relative to bridge maintenance. Plaintiffs' complaints contain no allegations of fact which, if true, would establish that any maintenance of any bridge was negligent or that any bridge or, more importantly, that any negligent maintenance thereof, had a casual relationship to the damages claimed. See *Kennedy v. Sheriff of East Baton Rouge,* 935 So.2d 669 (La. 2006) (causation is required for tort recovery); *Anthony v. Chevron USA, Inc.,* 284 F.3d 578 (5th Cir. 2002); *Broussard v. U.S.,* 989 F.2d 171 (5th Cir. 1993).

For Plaintiffs to state a claim against the Port, the allegations of fact, assumed to be true, must establish that they are legally entitled to the relief sought. For the reasons set forth above, Plaintiffs' claims against the Port fail as a matter of law and all such claims should be dismissed herein.

## CONCLUSION

Plaintiffs filed suit against the Port seeking recovery of flood-related damages allegedly caused, at least in part, by the United States' construction, operation and maintenance of the MRGO. Plaintiffs' claims against the Port are

predicated upon the alleged "Acts of Assurance" wherein the Port agreed to hold the United States harmless from claims for damages due to the construction, maintenance and operation of the MRGO.

As set forth herein, it is well established that the hold harmless provisions relied upon by Plaintiffs constitute only agreements to indemnify the United States for amounts it may cast in judgment by third parties within the scope of, and as contemplated by, the hold harmless provisions. The "Acts of Assurance" and their hold harmless provisions, do not, as Plaintiffs allege here, confer any right upon them to assert any cause of action against the Port for the United States' construction, operation and maintenance of the project(s) at issue.

Moreover, Plaintiffs have not alleged facts which, if proven true, could establish any negligence on the part of the Port. Finally, there are no allegations that any conduct by the Port had any casual relationship to the damages claimed.

For all of the above reasons, it is submitted that Plaintiffs have failed to state a claim upon which relief can be granted against the Port, and therefore all claims asserted against the Port herein should be dismissed at Plaintiffs' cost.

Respectfully submitted, this 31st day of January, 2007.

                        DAIGLE FISSE & KESSENICH, PLC

BY:   /s/ J. Fredrick Kessenich
        J. FREDRICK KESSENICH (7354)
        JONATHAN H. SANDOZ (23928)
        MICHAEL W. MCMAHON (23987)
        JON A. VAN STEENIS (27122)
        KIRK N. AURANDT (25336)
        P. O. Box 5350
        Covington, Louisiana 70434-5350
        Telephone: 985/871-0800
        Facsimile: 985/871-0899
        Attorneys for Defendant, Board of
        Commissioners of the Port of New
        Orleans

## **CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this 31st day of January, 2007.

                        /s/ J. Fredrick Kessenich
                        J. FREDRICK KESSENICH