UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NUMBER 05-4182 |
| | * | |
| | * | SECTION "K"  (2) |
| LEVEE CASES | * | |
| PERTAINS TO: 06-5131 (Bourgeois) | * | |
| and 06-5132 (Ferdinand) | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |

MEMORANDUM OF THE PUBLIC BELT RAILROAD
COMMISSION FOR THE CITY OF NEW ORLEANS IN
SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(b)(6)

I.      INTRODUCTION

The Public Belt Railroad Commission for the City of New Orleans (the "Public Belt") is a defendant in two of the cases consolidated as part of the referenced litigation, namely, the *Bourgeois* case, No. 06-5131 and the *Ferdinand* case, No. 06-5132.[1]  Both cases are putative class actions.

---

[1]     The Public Belt is a defendant in an additional case which was consolidated with the captioned case, namely, *Paul*, No. 06-7682.  The *Paul* case was remanded to state court pursuant to the Court's January 16, 2007 Order and Opinion.  Document No. 2718 herein.  On January 18, 2007, the Public Belt filed its "Rule 60(b) Motion for Reconsideration of Order Remanding Case to State Court Due to Mistake of Fact," asking the Court to reconsider its decision to remand the *Paul* case.  That motion is set for hearing on February 7, 2007.

In each case the plaintiffs' allegations against the Public Belt are based upon a derailment that occurred on September 11, 2004, almost one year before Hurricane Katrina.

The plaintiffs in each case are represented by the same attorneys, and the allegations in each case concerning the September 11, 2004 derailment, and concerning the alleged relationship between the September 11, 2004 derailment and the flooding that resulted from Hurricane Katrina, are also identical.[2]  In each case the allegations are in a section of the Complaint entitled "Damage to Floodgate W 30," and state identically, as follows:

> On or about September 11, 2004 floodgate W 30 was damaged by railcars being operated by the defendant CSX Transportation on tracks owned by defendant Public Belt Rail Road [sic] Commission and Burlington Northern and Santa Fe Railway Company;
>
> The Floodgate was owned by the Corps of Engineers and constructed property [sic] owned by it;
>
> In anticipation of a winter storm in December 2004, the Orleans Levee District placed sandbags in the opening;
>
> The Orleans Levee District made a claim against Public Belt and others for damages and received over $534,000 to repair the damages;
>
> The sandbags were unable to arrest the rush of waters flowing from the Mississippi River Gulf Outlet, down the IWW and against the west bank of the Inner Harbor Navigational Canal;
>
> The Corps of Engineers was aware of the damages and the sandbagging and knew that what was done was not adequate to arrest the exposure to risk;
>
> Plaintiffs' damages were the proximate caused [sic] by the damage to Floodgate;

---

[2]      The plaintiffs in *Ferdinand* allegedly resided in or owned property "in Bywater and Mid-City Communities bounded on the east by the Inner Harbor Navigational Canal the North by I-10 and I-610". *Ferdinand* Complaint, ¶ 8.  The *Bourgeois* plaintiffs allegedly resided in or owned property "in the Old Gentilly and Lake Terrace Communities in New Orleans bounded on the east by the Inner Harbor Navigational Canal on the south by I-10 and I-610." *Bourgeois* Complaint, ¶ 8.  These differing (and incomplete) descriptions of the geographic areas where plaintiffs reside or own property is no justification for initiation of two separate class action suits based upon the same factual occurrence.

In *Bourgeois* the quoted allegations are in Paragraphs 35-41; in *Ferdinand* the same allegations are in Paragraphs 30 – 36.

Paragraph 14 of each Complaint states:

Plaintiffs' Claims [sic] derive particularly from the damage to Floodgate W 30 which occurred on or about September 11, 2004, when struck by rail cars being operated by the defendant CSX Transportation, Inc. on tracks owned by defendants Public Belt and Burlington Northern;

Later, the Complaints identically state: "Neither the Defendant Port, the Public Belt nor the Defendant Levee Board are immuned form [sic] suit under the Louisiana Constitution Article 12, §10(A)." *Bourgeois*, Paragraph 96(f); *Ferdinand*, Paragraph 83(f).

Those are the extent of the factual allegations against the Public Belt in each Complaint.

Thus, each Complaint alleges only that the Public Belt owned track on which "railcars being operated by the defendant CSX Transportation" caused damage to floodgate W 30 on September 11, 2004. *Bourgeois* Complaint, ¶s 14 and 35; *Ferdinand* Complaint, ¶s 14 and 30. The plaintiffs do not allege that the condition of the tracks caused or contributed to the accident in which the floodgate was allegedly damaged, nor do the Complaints allege that any negligence or other fault on behalf of the Public Belt caused or contributed to the derailment.

Because there are no allegations of negligence or other fault attributable to the Public Belt, the allegations of each Complaint are inadequate to state a claim against the Public Belt. Therefore, the Public Belt's Motion to Dismiss must be granted.

The plaintiffs could amend their respective Complaints to set forth the actual facts concerning the December 11, 2004 accident that caused damage to Floodgate W 30. See, *e.g.*, pps. 3-5 of "CSX Transportation, Inc.'s Memorandum In Support of Motion for Dismissal Under Rule 12(b)(6) or, In the Alternative, Motion for Summary Judgment" in the *Bourgeois* case (Doc. No. 1697), and Exhibits 1 and 2 thereto.

But, even if the plaintiffs are allowed to amend their respective Complaints to set forth a more accurate recitation of the facts of the September 11, 2004 accident that allegedly damaged Floodgate W 30, the plaintiffs cannot state a claim against the Public Belt, or the other railroad defendants, CSX and BNSF Railway Company ("BNSF"), for two reasons:

**First**, the Public Belt, and the other railroad defendants, have no duty to repair the floodgate. Indeed, the railroad defendants have no right and no opportunity to repair the floodgate, which was in the care, custody and control of a co-defendant, the Orleans Levee District. The plaintiffs correctly allege that, pursuant to La. R.S. 38:307, the Orleans Levee District has the "<u>full and exclusive</u> right, jurisdiction, power, and authority to locate, relocate, construct, maintain, extend, and improve levees, embankments, seawalls, jetties, breakwaters, water-basins and other works within its district; . . ." *Bourgeois* Complaint, ¶ 2; *Ferdinand* Complaint, ¶ 2 (emphasis supplied).

**Second**, the plaintiffs' state law negligence claims are preempted by the Federal Railroad Safety Act (the "FRSA") and the Interstate Commerce Commission Termination Act of 1995.[3]

Thus, granting the plaintiffs leave to amend would be futile, because the Public Belt, and the other railroad defendants, had no duty to repair the damaged floodgate, or to protect the plaintiffs or the public from flooding, and because the plaintiffs' state law claims are preempted by federal law. The grant or denial of an opportunity to amend is within the discretion of the District Court, but leave to amend need not be granted when amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962); *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 386-388 (5th Cir. 2003).

The plaintiffs' claims against the Public Belt, and the other railroad defendants, should be dismissed with prejudice. Allowing the plaintiffs to amend their Complaints would be a futile act.

## II.    ARGUMENT

### A.    Standard of Review

Under F.R.C.P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The Court may not dismiss a claim unless it appears certain that the claimant cannot prove any set of facts in support of its

---

[3]    The plaintiffs' allegations against the Public Belt are solely that the Public Belt owned the track where the derailment occurred. State law negligence claims for personal injuries and property damages based upon negligent track inspection are completely preempted by the FRSA. *Lundeen v. Canadian Pacific Railway Co.*, 447 F.3d 606 (8th Cir. 2006).

claim that would entitle it to relief. *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 764 (5th Cir. 1996). However, conclusory allegations masquerading as factual conclusions will not defeat a motion to dismiss. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); see also *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974) (Conclusory allegations and unwarranted deductions of fact are not admitted as true). Courts do not have to accept "legal conclusions, 'unsupported conclusions,' 'unwarranted references,' or 'sweeping legal conclusions cast in the form of factual allegations.'" 5A, Wright & Miller, *Federal Practice and Procedure*, §1357, at 315-18.

**B.      The Public Belt Does Not Have a Duty in Tort to Repair Floodgate W 30, Nor Is It Permitted by Law to Repair a Floodgate.**

Pursuant to state law, the Board of Commissioners of the Orleans Levee District has full and exclusive jurisdiction over the levees and flood control structures within its jurisdiction, and its jurisdiction includes the levees and flood control structures of the Inner Harbor Navigational Canal (known as the Industrial Canal) and the other canals in Orleans Parish that are connected to Lake Pontchartrain.

La. R.S. 38:307(A)(1) provides, in pertinent part:

**Orleans Levee District; powers of board of commissioners**

The board of commissioners of the Orleans Levee District … shall have full and **exclusive** right, jurisdiction, power, and authority to locate, relocate, construct, maintain, extend, and improve levees, embarkments, seawalls, jetties, breakwaters, water-basins, and other works in relation to such projects . . . along, over, and on the shores, bottom, and bed of Lake Pontchartrain in the parish of Orleans from its western boundary to the boundary line separating township 11 south, range 12 east, from township 11 south, range 13 east, at a distance not to exceed three miles from the present shore line, as the board may determine, and along and on the shores adjacent to the lake and along the canals connected therewith. The levees, embankments, seawalls, jetties, breakwaters, waterbasins, and other works shall be of such character and extent and of such height, width, slope, design, and material as the board determines, with power and authority to improve and to protect the same with such other structures as are deemed necessary and proper by the board.

*Id.*; emphasis supplied.

As noted at page 3, *supra*, in their respective Complaints, the *Bourgeois* plaintiffs and the *Ferdinand* plaintiffs explicitly pleaded that the Orleans Levee District has the full and exclusive statutory authority as set out in La. R.S. 38:307(A)(1).

Federal law provides that the U.S. Army Corps of Engineers has the duty and responsibility to protect the population of the United States, including the City of New Orleans, from flooding.  See 33 U.S.C. §701, *et seq.*  The plaintiffs in *Bourgeois* and *Ferdinand* have alleged that the Corps of Engineers owns Floodgate W 30.  *Bourgeois* Complaint, ¶ 36; *Ferdinand* Complaint, ¶ 31.

The Public Belt Railroad Commission for the City of New Orleans is an autonomous political subdivision of the State of Louisiana, analogous to the Sewerage & Water Board of New Orleans.  *Cooper v. Public Belt Railroad*, 2003-2116 (La. App. 4th Cir. 10/6/04), 886 So.2d 531, 536-37, *writ denied*, 2004-2748 (La. 1/28/05), 893 So.2d 75.[4]  La. R.S. 33:4530(C) provides that the "control, operation, management and development of the public belt railroad system shall be exclusively vested in" the Public Belt Railroad Commission for the City of New Orleans.

The Public Belt has no duty and no power to maintain or repair any floodgates, levees or flood control systems.  The limited delegation of power by the legislature to the Public Belt authorizes the Public Belt only to control, operate, manage and develop a public belt railroad system.

In addition, the Public Belt has never had custody, control or *garde* of Floodgate W 30, or any floodgate, levee, or portion of any flood control system.  In *Bourgeois* and *Ferdinand,* the plaintiffs do not allege that Floodgate W 30 is part of the Public Belt's railroad system, or that the Public Belt ever had custody, control or *garde* of Floodgate W 30 or any portion of the flood control system of the Inner Harbor Navigational Canal, nor could they truthfully make such an allegation.

Earlier in this consolidated litigation, this Court granted the City of New Orleans' Motion to Dismiss for Failure to State a Claim in several cases.  Order and Reasons (September 13, 2006), Document No. 1133.  That decision stated:

---

[4]      Article VI Section 44(1) of the Louisiana Constitution defines "local political subdivision" to mean "any parish or municipality," and Section 44(2) defines "political subdivision" to mean "a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions."

The gravamen of the City's motion is that plaintiffs in these cases seek damages allegedly caused by the breach of the levees and flood walls in the aftermath of Hurricane Katrina. However, as the City of New Orleans does not own and has no *garde*, care, custody of control of the levees in question, and the City of New Orleans did not participate in the design, construction, or maintenance of the levees, no cause of action lies against it.

. . . [S]tatutorily, the City of New Orleans is not responsible for the levees. La. Rev. Stat. 38:307 provides that the Board of Commissioners of the Orleans Levee District has the full and exclusive right and jurisdiction over the levees and La. Rev. Stat. 38:301 provides that the levee districts have the right to maintain levees. Thus, it is clear that there are no duties which the City of New Orleans has with respect to the levees.

*Id.*, p. 1.

The Court was correct in concluding that the City has no duties with respect to the levees. The City is a general purpose, "local political subdivision" pursuant to Article III, Section 44(1) of the Louisiana Constitution and it possesses broad police powers and authority granted by the legislature and pursuant to its Home Rule Charter, which Charter is also the result of a legislative grant of authority. **If the City has no duties with respect to the design, construction, or maintenance of the levees, then a limited purpose political subdivision, such as the Public Belt, with limited, defined powers to control, operate, manage and develop a public belt railroad system, certainly has no duties with respect to the levees, floodgates or any part of the flood control system.**

If a public school bus had damaged an Inner Harbor Navigational Canal floodgate on September 11, 2004, then presumably the plaintiffs would have named the Orleans Parish School Board as a defendant responsible for the flooding resulting from Hurricane Katrina. But creative pleading does not give rise to a legal duty. Limited purpose political subdivisions such as the School Board or the Public Belt, and private railroad companies such as CSX or BNSF, have no duties with respect to maintenance or repair of levees, floodgates, or any part of the flood control system.

The Public Belt owes no duty to the plaintiffs, or to the public, concerning flood control. Under the duty risk analysis, the plaintiffs must prove (1) that the conduct in question was the cause-in-fact of the resulting harm, (2) the defendant owed a duty of

care to the plaintiffs, (3) the requisite duty of care was breached by the defendant, and (4) the risk of harm was within the scope of protection afforded by the duty breached. *Lazard v. Foti*, 02-2888 (La. 10/21/03), 859 So.2d 656, 659; *Roberts v. Benoit*, 605 So.2d 1032, 1041-42 (La. 1992). To recover, a plaintiff must prove all four elements. *Lazard*, at 659; *Roberts*, at 1042.

A threshold issue in any negligence case action is whether the defendant owed the plaintiffs a duty. *Lazard*, at 659. Whether a duty is owed is a question of law. *Id.* Thus, if the Public Belt can establish that it owed no duty to the plaintiffs or the public concerning flood control, this motion to dismiss should be granted as a matter of law.

In *Safford v. Bayou Lafourche Fresh Water District*, 03-0700 (La. App. 1st. Cir. 2/23/04), 872 So.2d 1127, *writ denied*, 04-0747 (La. 5/7/04), 872 So.2d 1086, the plaintiff, who owned riparian land along Bayou Lafourche near Donaldsonville, constructed a bulkhead, a dog pen and boat shed along the Bayou. *Id.*, at 1129. He sued the Bayou Lafourche Water District, seeking damages for flooding to those structures due to elevated water levels allegedly caused by the Water District's operation of pumps along the Bayou, pursuant to its statutory duty to provide fresh water to the surrounding area. *Id.* at 1128-29.

The Court of Appeal found that the Bayou Lafourche Water District had no duty to the plaintiff, or to the public, concerning flood control. The Court stated:

> In reviewing the question of whether the District's actions constituted negligence, we conclude it owed no duty toward Mr. Safford with regard to the property at issue. The police power of the state encompasses the exercise of its sovereign right to promote the general welfare of society, including the inherent right to protect citizens from damage by flood. *Board of Commissioners of Orleans Levee District v. Department of Natural Resources*, 496 So.2d 281, 289 (La. 1986). The legislature may delegate, either expressly or implicitly, the exercise of the police power to subordinate boards, commissions, or political corporations. *Id.* The legislature has delegated the task of ensuring an adequate supply of fresh water in Bayou Lafourche to the District; it has not delegated any duty or responsibility of flood control to the District. In *Board of Commissioners of Lafourche Basin Levee District v. Board of Commissioners of Atchafalaya Basin Levee District*, 340 So.2d 600, 602 (La. App. 1st Cir. 1976), this court confirmed the limited function and duties of the District by observing that "the purpose of [Acts 1950, No. 113] was to provide fresh water for drinking purposes rather than for the maintenance of a channel for navigation in Bayou Lafourche."

*Id.*, at 1130-31; emphasis supplied; footnote omitted.

With respect to the instant matter, the legislature has delegated to the Public Belt the duty of controlling, operating, constructing, maintaining and developing a public belt railroad system for the City of New Orleans, and the legislature has delegated to the Orleans Levee Board the "<u>full and exclusive</u>" duty of flood control within a geographic area that includes the Inner Harbor Navigational Canal, its levees, floodgates and other appurtenances.  La. R.S. 38:307.

The legislature has not delegated any duty or responsibility to the Public Belt concerning flood control, or the maintenance or repair of flood control improvements.  If a Water District that operates pumping stations along Bayou Lafourche pursuant to its statutory duty to provide fresh water to the surrounding area has no duty or responsibility concerning flood control along Bayou Lafourche, then it is clear beyond peradventure that the Public Belt has no duty or responsibility concerning flood control along the Inner Harbor Navigational Canal.

There is no pleading by the plaintiffs, regardless of how artful, that can create such a duty on the part of the Public Belt.  Allowing the plaintiffs to amend to attempt to set forth such a duty would be futile.  *Foman v. Davis*, *supra*; *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc., supra.*

The claims of the plaintiffs in the *Ferdinand* case and the *Bourgeois* case against the Public Belt are due to be dismissed for failure to state a claim upon which relief may be granted.[5]

---

[5]      If this motion to dismiss is denied, then in due course, the Public Belt will file a motion for summary judgment, showing that it obtained an estimate dated October 18, 2004, from Boh Bros. Construction Company, LLC, for repairs to Floodgate W 30 that was damaged on September 11, 2004, and that on November 11, 2004, Anthony Marinello, Manager of Engineering and Maintenance for the Public Belt, wrote a letter to Stevan Spencer, Chief Engineer of the Orleans Levee District, transmitting a copy of the Boh Bros. estimate and description of the proposed repairs to Floodgate W 30, and offered to have Boh Bros. perform the repairs at the expense of the Public Belt.  The Levee Board refused the offer of the Public Belt to have Boh Bros undertake the repairs to Floodgate W 30 at the Public Belt's expense.

Instead, in December, 2004, the Levee Board, for the first time, provided the Public Belt with its own estimated costs of repairs.  The Public Belt promptly hand-delivered a check to the Levee Board in the amount of $427,387.96, the full amount of the Levee Board's estimated costs of repairs to the floodgate.  See, the affidavit of Jim Bridger, General Manager (Chief Executive Officer) of the Public Belt, attached as Exhibit 1 to CSX's Motion for Summary Judgment in the *Bourgeois* case.  CSX's Motion to Dismiss/For Summary Judgment in the *Bourgeois* case is Doc. No. 1697 in these consolidated cases.

**C.     Plaintiffs' Claims are Expressly Preempted Under Federal Law.**

All claims asserted by the *Bourgeois* and *Ferdinand* plaintiffs are preempted by two separate railroad regulatory schemes – the Interstate Commerce Commission Termination Act of 1995 and the Federal Railroad Safety Act.  The Public Belt adopts, as though set forth herein *in extenso*, the memoranda and argument on the issue of federal preemption filed by CSX Transportation in support of its Motion to Dismiss in the *Paul* case, No. 06-7682.   Those memoranda are in Documents No. 1522 and 1530 in the captioned Katrina Canal Breaches Consolidated Litigation.   State law negligence claims based upon negligent track inspection are completely preempted by the FRSA.   See footnote 3, *supra*.

**III.     CONCLUSION**

The Public Belt has no duty to the plaintiffs, or to anyone, to protect them from flooding, nor does it have any duty to maintain or repair flood control structures.

In addition, the plaintiffs' claims are preempted by federal law.

Thus, the claims of the plaintiffs in the *Bourgeois* and *Ferdinand* cases against the Public Belt are due to be dismissed, for failure to state a claim upon which relief may be granted.

Respectfully submitted,

HAMILTON, BROWN & BABST

*Galen S. Brown*

GALEN S. BROWN, T.A. (#3556)
KAREN E. MILNER (#8499)
601 POYDRAS STREET, SUITE 2750
NEW ORLEANS, LOUISIANA  70130
TELEPHONE:  (504) 566-1805
FAX:  (504) 566-1569
E-MAIL: gbrown@hamiltonfirm.net

Attorneys for Defendant, Public Belt Railroad Commission for the City of New Orleans

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this ___31st___ day of January, 2007.

_Galen S. Brown_
GALEN S. BROWN