**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

—————————————————————————
                                            )
In Re:  KATRINA CANAL BREACHES              )        CIVIL ACTION
            CONSOLIDATED LITIGATION         )        NO. 05-4182 "K" (2)
                                            )        JUDGE DUVAL
—————————————————————————          )        MAG. WILKINSON
                                            )
PERTAINS TO:  LEVEE                         )
(*La. Envtl. Action Network, 06-9147*)      )
—————————————————————————          )


**DEFENDANT UNITED STATES' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**TABLE OF CONTENTS**

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     STATUTORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.     The Flood Control Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       B.     The Resource Conservation and Recovery Act ("RCRA") . . . . . . . . . . . . . . . . . 2

              1.     RCRA's Regulatory Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
              2.     RCRA's Citizen Suit Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
              3.     RCRA's Federal Facilities Provision . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.    FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.  The London Avenue Canal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
       B.  Hurricane Katrina . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.   LEAN's COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       LEAN's SUIT IS BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY . . . 10

I.     LEAN MUST IDENTIFY AN APPLICABLE WAIVER OF SOVEREIGN
       IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.    LEAN'S CLAIMS ARE PRESUMPTIVELY BARRED BY THE FLOOD
       CONTROL ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       A.     The Flood Control Act Generally Precludes Any Federal Agency
              Liability Resulting From Flood Damage . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       B.     LEAN Seeks to Impose Liability Upon the United States Based Upon
              Flood Damage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.    LEAN CANNOT IDENTIFY AN APPLICABLE WAIVER OF SOVEREIGN
        IMMUNITY WITHIN RCRA THAT EXPRESSLY OVERRIDES THE
        AFFIRMATION OF IMMUNITY IN THE FLOOD CONTROL ACT . . . . . . . . . . . . . 13

        A.    The RCRA Citizen Suit Provision Waiver Does Not Apply Because it
              Fails to Expressly Override Flood Control Act Immunity  . . . . . . . . . . . . . . . . . 14

        B.    The RCRA Federal Facilities Waiver Provision Does Not Apply to
              Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

              1.    LEAN Does Not Seek to Enforce Any RCRA "Requirement" . . . . . . . . 17
              2.    LEAN's Claims are Premised on Past Federal Activities . . . . . . . . . . . . 21

        CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## **TABLE OF AUTHORITIES**

<u>CASES</u>:

*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Boudreau v. United States*, 53 F.3d 81 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Charter Int'l Oil Co. v. United States*, 925 F. Supp. 104 (D.R.I. 1996) . . . . . . . . . . . . . . . . . . . 21

*Crowley Marine Services, Inc. v. Fednav Ltd.*, 924 F. Supp. 1030 (E.D. Wash. 1995),
    *clarified by*, 915 F. Supp. 218 (E.D. Wash. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21

*DOE v. Ohio*, 503 U.S. 607 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Florida Dep't of Envtl. Regulation v. Silvex Corp.*, 606 F. Supp. 159 (M.D. Fla. 1985) . . . . . . 21

*General Motors v. Hirschfield Steel Serv. Ctr.*, 402 F. Supp. 2d 800 (E.D. Mich. 2005) . . . . . . 20

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49 (1987) . . . . . . . . . . . . . . 22

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lane v. Pena*, 518 U.S. 187 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17, 20, 21

*Marina Bay Realty Trust LLC v. United States*, 407 F.3d 418 (1st Cir. 2005) . . . . . . . . . . . . . . 20

*McCarty v. United States*, 929 F.2d 1085 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

*McLellan Highway Corp. v. United States*, 95 F. Supp. 2d 1 (D. Mass. 2000) . . . . . . . . . . . 20, 22

*Meghrig v. KFC Western, Inc.*, 516 U.S. 479 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Miami-Dade County, Fla . v. United States*, 345 F. Supp. 2d 1319 (S.D. Fla. 2004) . . . . . . . . 23

*Miami-Dade County, Fla. v. United States*,
    No. 01-1930, 2003 WL 22992271 (S.D. Fla. Dec. 4, 2003) . . . . . . . . . . . . . . . . . . . . . . 22

*Middlesex County Bd. Of Chosen Freeholders v. New Jersey Dep't of Envtl. Prot.*,
    645 F. Supp. 715 (D.N.J. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mocklin v. Orleans Levee Dist.*, 877 F.2d 427 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237 (1985) . . . . . . . . . . . . . 20

*National Mfg. Co. v. United States*, 210 F.2d 263 (8th Cir. 1954) . . . . . . . . . . . . . . . . . . . . . 2, 11

*Perrin v. United States*, 444 U.S. 37 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Russello v. United States*, 464 U.S. 16 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . 10

*United States v. Dalm*, 494 U.S. 596 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Iron Mountain Mines Inc.*, 881 F. Supp. 1432 (E.D. Cal. 1995) . . . . . . . . . . . 16

*United States v. James*, 478 U.S. 597 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 12, 14

*United States v. Mitchell*, 445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. New Mexico*, 32 F.3d 494 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. New Orleans*,
    No. Civ. A. 02-3618, 2003 WL 22208578 (E.D. La. Sept. 19, 2003) . . . . . . . . . . . . . . . 16

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

FEDERAL STATUTES:

Comprehensive Environmental Response, Compensation, and Liability Act,
    42 U.S.C. §§ 9601 - 9675:

    Section 107, 42 U.S.C. § 9607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

    Section 113(f)(1), 42 U.S.C. § 9613(f)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    Section 113(h), 42 U.S.C. § 9613(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    Section 120, 42 U.S.C. § 9620 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Torts Claims Act, 28 U.S.C. § 2671 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    28 U.S.C. § 2674 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Flood Control Act of 1928, 33 U.S.C. § 702a *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    33 U.S.C. § 702c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

Resource Conservation and Recovery Act, 42 U.S.C. § 6901-6992k . . . . . . . . . . . . . . . . . . . . 1

Section 1003(b), 42 U.S.C. § 6902(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Subtitle C, 42 U.S.C. §§ 6921-34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Section 3002(a), 42 U.S.C. § 6922(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Section 3003, 42 U.S.C. § 6923 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Section 3004, 42 U.S.C. § 6924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

Section 3005, 42 U.S.C. § 6925 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Section 6001, 42 U.S.C. § 6961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Section 6001(a), 42 U.S.C. § 6961(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 18, 21

Section 7002(a), 42 U.S.C. § 6972(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Section 7002(a)(1), 42 U.S.C. § 6972(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Section 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19, 20

Section 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) . . . . . . . . . . . . . . 1, 3, 4, 14, 15, 19, 20, 22

Section 7002(b), 42 U.S.C. § 6972(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Section 7003, 42 U.S.C. § 6973 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Facility Compliance Act of 1992, Pub. L. No. 102-386, 106 Stat. 1505 (1992) . . . . . . 14

STATE STATUTES:

La. R.S. 33: 4071 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 23

La. R.S. 38:307(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23

La. R.S. 38:330.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23

REGULATIONS:

40 C.F.R. Parts 264-265 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

40 C.F.R. Part 270 & §§ 271.13 & 271.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>LEGISLATIVE MATERIALS</u>:

S. Rep. No. 96-172, *reprinted in* 1980 U.S.C.C.A.N. 5019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>MISCELLANEOUS</u>:

http://www.epa.gov/katrina/testresults/sediments/summary.html (last visited Jan. 30, 2007) . . . 9

**DEFENDANT UNITED STATES ARMY CORPS OF ENGINEERS'**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## INTRODUCTION

This lawsuit relates to flooding in the Vista Park neighborhood of New Orleans following Hurricane Katrina and the breach of levees at the London Avenue Canal. Plaintiff Louisiana Environmental Action Network ("LEAN") contends that soils and sediments deposited into Vista Park as the result of flooding may present a threat to human health and the environment. LEAN seeks to compel Defendant United States Army Corps of Engineers to investigate sediments and soils in Vista Park and clean up any contaminated soils and sediments.

LEAN's suit is brought under the citizen suit provision of a federal statute that addresses management of solid waste: the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901-6992k. LEAN contends that the London Avenue Canal is a "hazardous and solid waste disposal facility" under RCRA and contends that the Corps' activities related to levees at the Canal "contributed to the handling and disposal of solid and hazardous waste that may present an imminent and substantial endangerment to health and the environment." *See* Complaint ¶¶ 42, 46; 42 U.S.C. § 6972(a)(1)(B).

LEAN's suit must be dismissed for lack of subject matter jurisdiction because the United States has not waived sovereign immunity for liability from flood damage. Instead, Congress in the Flood Control Act of 1928 affirmatively and emphatically barred actions against the federal government for liability resulting from floods. To the extent that Congress subsequently has waived sovereign immunity for certain types of suits under RCRA, these waivers do not apply here.

# BACKGROUND

## I.    STATUTORY BACKGROUND

### A.    The Flood Control Act

In response to a catastrophic Mississippi River flood, Congress enacted the Flood Control Act of 1928, 33 U.S.C. § 702a et seq.  The Act's immunity provision, 33 U.S.C. § 702c, is broadly worded to bar all actions against the federal government based on floods, providing that "[n]o liability of *any* kind shall attach to or rest upon the United States for *any* damage from or by floods or flood waters at *any* place." (Emphasis added).

As the Supreme Court has observed, this provision "outlines immunity in sweeping terms . . . . It is difficult to imagine broader language."  *United States v. James*, 478 U.S. 597, 604 (1986).  Examining the legislative history of section 702c, the Supreme Court found that the "sweeping language" of the Flood Control Act's immunity provision was "no drafting inadvertence."  478 U.S at 608.  Through this provision "Congress clearly sought to ensure beyond doubt that sovereign immunity would protect the Government from 'any' liability associated with flood control."  *Id.*   To this end, Congress employed "the broadest and most emphatic language" to describe the United States' immunity.  *Id.* (quoting *National Mfg. Co. v. United States*, 210 F.2d 263, 270 (8th Cir. 1954)).

### B.    The Resource Conservation and Recovery Act ("RCRA")

#### 1.    RCRA's Regulatory Scheme

Congress enacted the Resource Conservation and Recovery Act ("RCRA") primarily "to reduce the generation of hazardous waste and to ensure the proper treatment, storage and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483

(1996) (*quoting* 42 U.S.C. § 6902(b)).  To these ends, RCRA Subtitle C, 42 U.S.C. §§ 6921-34,

establishes a "cradle to grave" regulatory scheme for certain "hazardous" wastes.  For example,

among other RCRA requirements, owners and operators of hazardous waste treatment, storage,

and disposal facilities ("TSD facilities") must comply with standards promulgated by the United

States Environmental Protection Agency ("EPA") pursuant to RCRA section 3004, 42 U.S.C. §

6924 (*see* 40 C.F.R. Parts 264-265), and obtain permits pursuant to RCRA section 3005, 42

U.S.C. § 6925 (*see* 40 C.F.R. Part 270 & §§ 271.13 & 271.14).

<p style="text-align:center;">2.       **RCRA's Citizen Suit Provision**</p>

RCRA section 7002(a)(1) ("the RCRA citizen suit provision"), 42 U.S.C. § 6972(a)(1),

creates two distinct causes of actions that citizens may pursue in federal court.  First, under

subsection 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A), citizens may request a court to enforce

certain RCRA requirements by bringing suit against persons, including governmental agencies,

currently violating such requirements.[1]  The second cause of action created by the citizen suit

provision is set forth in subsection 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).  The subsection

7002(a)(1)(B) cause of action does not involve enforcement of RCRA requirements, but creates

a cause of action for abatement of an imminent and substantial endangerment that may be

presented by solid or hazardous waste.  In particular, under subsection 7002(a)(1)(B), a citizen

may bring suit against any person, including a federal agency, "who has contributed or who is

contributing to the past or present handling, storage, treatment, transportation, or disposal of any

solid or hazardous waste which may present an imminent and substantial endangerment to health

---

[1] RCRA section 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A), provides specifically that any person may commence a civil action against any person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to [RCRA]."

<p style="text-align:center;">3</p>

or the environment." 42 U.S.C. § 6972(a)(1)(B).  A court may order such person to take actions

as may be necessary to address the endangerment.  Congress based the latter subsection on

EPA's imminent hazard authority under 42 U.S.C. § 6973, and Congress intended this type of

citizen suit to build on "common law public nuisance remedies."  *Middlesex County Bd. Of*

*Chosen Freeholders v. New Jersey Dep't of Envtl. Prot.,* 645 F. Supp. 715 721-22 (D.N.J. 1986)

(citing S.Rep. No. 96-172, *reprinted* in 1980 U.S.C.C.A.N. 5019, 5023).

### 3.     RCRA's Federal Facilities Provision

RCRA's federal facilities provision provides that the Federal Government must comply

with all federal, state, and local hazardous and solid waste "requirements," in the event that the

Federal Government either has "jurisdiction" over a "solid waste management facility or

disposal site," or in the event that the Federal Government is "engaged" in activities resulting, or

which may result, in the disposal of waste.[7]

---

[7] The federal facilities section, 42 U.S.C. § 6961(a), states:

> Each department, agency, and instrumentality of the
> executive, legislative, and judicial branches of the Federal
> Government (1) having jurisdiction over any solid waste
> management facility or disposal site, or (2) engaged in any activity
> resulting, or which may result in the disposal or management of
> solid waste or hazardous waste shall be subject to, and comply
> with, all Federal, State, interstate, and local requirements, both
> substantive and procedural (including any requirement for permits
> or reporting or any provisions for injunctive relief and such
> sanctions as may be imposed by a court to enforce such relief),
> respecting control and abatement of solid waste or hazardous waste
> disposal and management in the same manner, and to the same
> extent, as any person is subject to such requirements, including the
> payment of reasonable service charges.
> The Federal, State, interstate, and local substantive and procedural
> requirements referred to in this subsection include, but are not
> limited to, all administrative orders and all civil and administrative
> penalties and fines, regardless of whether such penalties or fines

(continued...)

## II.   FACTUAL BACKGROUND[3]

### A.  The London Avenue Canal

The London Avenue Canal extends approximately 2.6 miles and is located on the south

side of Lake Pontchartrain in New Orleans.  Declaration of Murray Starkel ¶ 4 (hereinafter

"Starkel Decl.").  The Canal serves as a drainage canal to take flow of rain water drainage

mechanically pumped from the streets of New Orleans. Starkel Decl.  ¶ 5.  The New Orleans

Sewerage and Water Board has jurisdiction over the Canal in its drainage capacity.  *See* La. R.S.

33: 4071.

Levees and floodwalls have been constructed along both sides of the London Avenue

Canal for flood control purposes.  Starkel Decl. ¶ 6.[4]  Prior to 1992, the local flood protection

---

[2](...continued)

> are punitive or coercive in nature or are imposed for isolated,
> intermittent, or continuing violations.  The United States hereby
> expressly waives any immunity otherwise applicable to the United
> States with respect to such substantive or procedural requirement
> (including, but not limited to, any injunctive relief, adminsirative
> order or civil or administrative penalty or fine referred to in the
> preceding sentence, or reasonable service charge).

[3] This background statement contains facts material to the jurisdictional issues raised in the
instant motion to dismiss, and additionally contains general background facts for the Court's
convenience that are not material to the jurisdictional issues raised.  To the extent that the Corps
sets forth in this statement material facts that either supplement or refute the allegations in
LEAN's Complaint, the Corps' relies on the attached declaration of Murray P. Starkel and the
exhibits thereto.  *See Williamson v. Tucker*, 645 F.2d 404, 412-213 (5th Cir. 1981) (noting that
when a plaintiff's allegations of jurisdiction are challenged, no presumptive truthfulness attaches
to plaintiff's allegations, and a district court may consider matters outside the pleadings).

[4]  Located in the low-lying Mississippi River delta in Louisiana, large portions of the city of
New Orleans lie near or below sea level, a fact that has posed complex flood management
problems. The greatest natural flooding threat to New Orleans is from hurricane-induced storm
surges, waves, and rainfall.

system along both sides of the Canal consisted of earthen levees and concrete-capped steel-sheet walls. Starkel Decl. ¶ 7 and Starkel Decl. Ex. A ("London Avenue Canal Design Memorandum") at 44. These flood control structures were not constructed by the Federal Government. Starkel Decl. ¶ 7. Floodwalls were constructed between 1993 and 1996 on top of existing earthen levees along both sides of the Canal for improved flood protection as part of a federally-authorized flood control project. Starkel Decl. ¶ 8; Starkel Decl. Ex. B ("Narrative Completion Report for Contract No. DACW29-93-C-0050); Starkel Decl. Ex. C . ("Narrative Completion Report for Contract No. DACW29-94-C-0079). Much of the work related to flood control improvements at the London Avenue Canal conducted between 1993 and 1996 was performed by contractors River Road Construction, Inc. and B & K Construction Co. Starkel Decl. ¶ 11 and Starkel Decl. Exhibits B and C.

Congress initially authorized and directed the United States Army Corps of Engineers to improve hurricane protection along the London Avenue Canal through the Energy And Water Development Appropriations Act of 1992. Pub. L. No. 102-104, 105 Stat. 510 (1991) (Starkel Decl. Ex. D). This Act provides in relevant part that the "Secretary of the Army is authorized and directed to provide parallel hurricane protection along the entire lengths of the Orleans Avenue and London Avenue Outfall Canals by raising levees and improving flood protection works along and parallel to the entire lengths of the outfall canals . . . ." *Id*. at 514. Congress directed that the project be jointly funded by the Federal government and local interests, with the Federal Government responsible for 70 percent of the project cost. *Id*.

Congress in the Energy And Water Development Appropriations Act of 1992 authorized the London Avenue Canal flood control improvements to be incorporated into and part of a broader previously authorized federal flood control project in Louisiana referred to as the "Lake

Pontchartrain and Vicinity, Louisiana Hurricane Protection Project" ("the Lake Pontchartrain

Project"). *Id.* The Lake Pontchartrain Project was originally authorized by Congress in the

Flood Control Act of 1965. Pub. L. No. 89-298, § 204, 79 Stat. 1073, 1074 (Starkel Decl. Ex.

F). Pursuant to documents referenced in section 204 of the Flood Control Act of 1965, the Lake

Pontchartrain Project is conditioned on local interests agreeing to "maintain and operate all

features" of flood control works. *See* Starkel Decl. ¶ 16.[5]

Prior to January 1, 2007, the Board of Commissioners of the New Orleans Levee District

("the Levee District") was responsible for the operation and maintenance of levees and

floodwalls in New Orleans. La. R.S. 38:307(A)(1). Effective January 1, 2007, two new regional

levee boards were created, separated by the Mississippi River. La. R.S. 38:330.1. The portion

of the New Orleans on the east side of the Mississippi River encompassing the London Avenue

Canal now falls under the jurisdiction of the Board of Commissioners of the Southeast Louisiana

Flood Protection Authority – East. *Id.* This Board of Commissioners, as successor to the Board

of Commissioners of the New Orleans Levee District, has the "right, jurisdiction, power, and

authority to locate, relocate, construct, maintain, extend, and improve levees, embankments,

seawalls . . . and other works in relation to such projects" along Lake Pontchartrain "and the

canals connected therewith." La. R.S. 38:307(A)(1).

---

[5] The Flood Control Act of 1965 provides in relevant part that the Lake Pontchartrain Project is authorized "substantially in accordance with the recommendations of the Chief of Engineers in House Document Numbered 231, Eighty-ninth Congress . . ." Pub. L. 89-298, § 204, 79 Stat. 1077. House Document Numbered 231 contains letters and supporting documentation submitted to Congress from the Secretary of the Army and the Chief of Engineers recommending the authorization of the Lake Pontchartrain Project, and is commonly referred to as "the Chief's Report." *See* Starkel Decl. Ex. G. The Chief's Report contains the recommendation that local interests shall "maintain and operate" flood control works in accordance with Corps regulations. *Id.*

Under contract with the United States, the Levee District agreed as local sponsor to "maintain and operate" certain features of the Lake Pontchartrain Project.  Starkel Decl. ¶ 17; Starkel Decl. Ex. H  ("Supplemental Agreement between United States and Orleans Levee District").  For all portions of the London Avenue Canal levees and floodwalls for which federally authorized construction has been completed, the local sponsor has retained responsibility for the operation and maintenance of levees and floodwalls.  Starkel Decl. ¶ 19. The Corps does not own or operate the levees, floodwalls, or other flood control structures at the London Avenue Canal, including those flood control improvements authorized by the Energy and Water Development Appropriations Act of 1992.  Starkel Decl. ¶ 20.  Nor has the Corps owned or operated such structures in the past.  *Id.*

### B.    Hurricane Katrina

Hurricane Katrina struck New Orleans the morning of August 29, 2005, after building up water levels in the Gulf of Mexico for several days.  Starkel Decl. ¶ 21.  At or around the time Hurricane Katrina struck New Orleans, two breaches occurred along the London Avenue Canal: one near Mirabeau Avenue, and one near Robert E. Lee Boulevard and Pratt Drive.  Starkel Decl. ¶ 22.  The  breaches exacerbated flooding within New Orleans caused by Hurricane Katrina.  Starkel Decl. ¶ 23.

After Hurricane Katrina came ashore on the Louisiana Gulf Coast, the United States Environmental Protection Agency ("EPA") and the Louisiana Department of Environmental Quality conducted a comprehensive investigation to characterize any potential environmental effects to the parishes that were flooded by up to 10 feet of water.  *See generally* EPA's Katrina response website,  http://www.epa.gov/katrina/testresults/sediments/summary.html (last visited Jan. 30, 2007).  EPA reports on its website that

> Since early September 2005, EPA has collected approximately
> 1,800 sediment and soil samples in Jefferson, Orleans,
> Plaquemines, and St. Bernard Parishes in four discrete phases.
> Most of these samples were analyzed for over 200 metals and
> organic chemicals

*Id*.  EPA further reports on its website that its most recent sediment sampling was conducted

between February and June 2006 and that "[t]he sediments remaining in the flood-impacted areas

are not expected to cause adverse health impacts provided people use good personal hygiene

practices."  *Id*.

## III.    LEAN's COMPLAINT

Plaintiff Louisiana Environmental Action Network ("LEAN") filed the instant suit on

October 27, 2006.  LEAN alleges generally that the Corps' failed to "design, construct, and

maintain adequate containment structures around the London Avenue Canal," and that breaches

of these containment structures during Hurricane Katrina in August 2005 "resulted in the

disposal of solid and hazardous waste from the London Avenue Canal into the surrounding

neighborhood [of Vista Park], which  may present an imminent and substantial endangerment."

Complaint ¶ 1.[6]

LEAN brings two claims for relief under RCRA's citizen suit provision.  First, LEAN

alleges that "[t]he Corps' conduct in designing, handling, and maintaining inadequate levees for

the London Avenue Canal contributed to the handling and disposal of solid and hazardous waste

that may present an imminent and substantial endangerment to health and the environment."  *Id*.

¶ 46.  Second, LEAN alleges that the Corps' conduct in "failing to adequately test sediments in

---

[6] LEAN avers that it serves as an umbrella organization for environmental and citizen groups
and that its purpose is to protect the State's land, air, water, and other natural resources.
Complaint ¶ 5.  LEAN further avers that it has members who live, work, or recreate in the area
of the London Avenue Canal breach.  *Id*.

9

the Vista Park neighborhood" following Hurricane Katrina, and "in failing to take such

abatement actions as may be necessary to protect the public from risks posed by the sediments in

the Vista Park neighborhood" following Katrina, contributes to the handling of solid and

hazardous waste that may present an imminent and substantial endangerment to health and the

environment.  Complaint ¶¶ 50-51.

## STANDARD OF REVIEW

The federal courts are courts of limited jurisdiction and may exercise only that

jurisdiction which Congress has granted them.  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S.

534, 541 (1986).  Plaintiff bears the burden of proving that subject matter jurisdiction exists.

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Taber Partners, I v. Merit*

*Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993).  When a plaintiff's allegations of jurisdiction are

challenged, no presumptive truthfulness attaches to plaintiff's allegations, and a district court

may consider matters outside the pleadings.  *Williamson v. Tucker*, 645 F.2d at 412-213.

## ARGUMENT

## LEAN's SUIT IS BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY

## I.     LEAN MUST IDENTIFY AN APPLICABLE WAIVER OF SOVEREIGN IMMUNITY

It is axiomatic that neither the United States nor any agency or instrumentality thereof

may be sued unless Congress has explicitly consented to suit.  *United States v. Dalm*, 494 U.S.

596, 608 (1990).  Therefore, to establish jurisdiction over a claim against the United States,

plaintiff must identify a Congressional waiver of immunity or consent to be sued that is clearly

and unequivocally expressed.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  A waiver of

the Government's sovereign immunity will be strictly construed, in favor of the sovereign.  *Lane*

*v. Pena*, 518 U.S. 187, 192 (1996).  A statute's legislative history cannot supply a waiver that

does not appear clearly in any statutory text.  *Id.*   A general waiver of sovereign immunity does

not confer jurisdiction if a more specific statute bars the requested relief.  *McCarty v. United*

*States*, 929 F.2d 1085, 1088 (5th Cir. 1991).

## II.    LEAN'S CLAIMS ARE PRESUMPTIVELY BARRED BY THE FLOOD CONTROL ACT

### A.    The Flood Control Act Generally Precludes Any Federal Agency Liability Resulting From Flood Damage

The immunity provision of the Flood Control Act of 1928 ("The Flood Control Act") is

broadly worded to bar all actions against the federal government based on damage from floods at

federal flood control projects.  The immunity provision provides that "[n]o liability of *any* kind

shall attach to or rest upon the United States for *any* damage from or by floods or flood waters at

*any* place" (emphasis added).  33 U.S.C. § 702c.  This language "safeguard[s] the United States

against liability of any kind for damage from or by floods or flood waters in the broadest and

most emphatic language."  *United States v. James*, 478 U.S. at 608 (quoting *National Mfg. Co. v.*

*United States* at 270).  The Supreme Court examined the legislative history of section 702c in

*James* and observed that it "shows a consistent concern for limiting the Federal Government's

financial liability to expenditures directly necessary for the construction and operation" of

authorized flood control projects.  478 U.S. at 607.   "Congress clearly sought to ensure beyond

doubt that sovereign immunity would protect the Government from 'any' liability associated

with flood control."  478 U.S. at 608.

In *James*, actions were brought against the United States to recover for the death of

recreational boaters who drowned when they were swept through discharge points of reservoirs

on federal flood control projects after discharge points were opened to alleviate potential

flooding.  Plaintiffs sought relief under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671

11

*et seq.*  The FTCA provides that the United States has waived sovereign immunity and is liable in tort claims "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  Notwithstanding the fact that the Government could have been liable for damages under the Federal Tort Claims Act ("FTCA") and the fact that the FTCA was enacted subsequent to the Flood Control Act, the Supreme Court held in *James* that the Government was entitled to absolute immunity under the section 702c of the Flood Control Act.  Thus, the Supreme Court concluded that the FTCA waiver did *not* abrogate the ban on suits premised on flood damage set forth in the Flood Control Act.  *See also Boudreau v. United States*, 53 F.3d 81 (5th Cir. 1995) (holding Flood Control Act provided United States with immunity from liability for alleged negligence of Coast Guard Auxiliary in attempting to tow stranded recreational vessel on flood control lake); *Mocklin v. Orleans Levee Dist.*, 877 F.2d 427 (5th Cir. 1989) (dismissing FTCA action against Corps because flotation channel in which child drowned contained flood waters within meaning of Flood Control Act, rendering the Corps immune from liability).

## B.     LEAN Seeks to Impose Liability Upon the United States Based Upon Flood Damage

Here, LEAN indisputably seeks to impose liability upon the United States based upon alleged damage from federal flood control activities.  At the crux of LEAN's Complaint is its allegation that the Corps' "engineering, design, and construction" failures in implementing a federal flood control project at the London Avenue Canal resulted in breaches of containment structures.  Complaint ¶ 29.  LEAN alleges that these breaches "caused water and other materials, including sediment, to leave its containment within the canal and spill onto the property of residents of the Vista Park neighborhood."  Complaint ¶ 30.  LEAN then alleges that these flooded materials may pose a potential hazard to human health or the environment.

12

Complaint ¶¶ 16, 46.  Based on these allegations, LEAN seeks to have this Court compel the Corps to investigate potential contamination and implement a cleanup program under Court oversight.  *See* Complaint, Prayer for Relief.

Because LEAN's claims are grounded on assertions that the United States' exercised or failed to exercise control over floodwaters in a manner that gives rise to liability, section 702c of the Flood Control Act presumptively bars suit.  To avoid the bar on suit set forth in the Flood Control Act, LEAN must identify a waiver of sovereign immunity that expressly overrides the affirmation of absolute immunity in the Flood Control Act.  This LEAN cannot do.  As we discuss in the following section, LEAN's reliance on waivers of sovereign immunity in RCRA is misplaced.

## III.   LEAN CANNOT IDENTIFY AN APPLICABLE WAIVER OF SOVEREIGN IMMUNITY WITHIN RCRA THAT EXPRESSLY OVERRIDES THE AFFIRMATION OF IMMUNITY IN THE FLOOD CONTROL ACT

Two provisions within RCRA contain waivers of sovereign immunity: the citizen suit provision, 42 U.S.C. § 6972(a) and RCRA's "federal facilities" provision, 42 U.S.C. § 6961.  LEAN points to both of these waivers in their Complaint as bases for jurisdiction.  *See* Complaint ¶¶ 10, 22.  However, as discussed below, neither waiver applies.

As an initial matter, we note that the waivers set forth in the citizen suit and federal facilities provisions are distinct and quite different in scope insofar as the remedies they authorize.  Accordingly, each waiver must be addressed separately on its own terms.  *See*, *e.g., DOE v. Ohio*, 503 U.S. 607, 615-28 (1992).[7]

---

[7]   In *DOE v. Ohio*, the Supreme Court concluded that neither the citizen suit waiver nor the federal facilities provision waived federal sovereign immunity from punitive fines.  Following the *Ohio* decision, Congress revised the federal facilities provision of RCRA to, among other things, waive sovereign immunity from punitive fines.  *See* Federal Facility Compliance Act of

(continued...)

13

A.    The RCRA Citizen Suit Provision Waiver Does Not Apply Because it Fails to Expressly Override Flood Control Act Immunity

The RCRA citizen suit provision, 42 U.S.C. § 6972(a)(1)(B), provides in relevant part, that:

> [A]ny person may commence a civil action on his own behalf . . . against any person, including the United States and any other governmental instrumentality or agency . . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

This provision generally waives immunity for claims described in the provision. However, it notably does not expressly repeal earlier enacted statutes that affirmatively provide immunity for certain types of liability. In this regard, the citizen suit provision is similar in nature to the waiver of immunity contained in the Federal Tort Claims Act ("FTCA") that was addressed by the Supreme Court in *United States v. James*, 478 U.S. 597. In *James*, the Supreme Court found that the absolute immunity for liability premised on flood damage set forth in the Flood Control Act barred suit related to operation of a flood control project notwithstanding the subsequently-enacted waiver of immunity set forth in the FTCA. Just as the tort claims premised on flood damage brought under the FTCA were barred by Flood Control Act section 702c, nuisance-type endangerment claims that are premised on flood damage and brought under the RCRA citizen suit provision, 42 U.S.C. § 6972(a)(1)(B), are likewise barred. The Supreme Court's decision in *James* clarifies that a waiver of immunity enacted subsequent to the Flood Control Act does not

_____

7/(...continued)
1992, Pub. Law No. 102-386, 106 Stat. 1505 (1992). We cite to *Ohio* simply to illustrate how the distinct immunity waivers within the citizen suit and federal facilities provisions must be addressed individually.

14

abrogate Flood Control Act immunity absent language expressly repealing such immunity.  The RCRA citizen suit provision does not contain any such express repeal language.

That the RCRA citizen suit provision does not contain the necessary repeal language is made clear by comparing it to the RCRA federal facilities provision, 42 U.S.C. § 6961.  The federal facilities provision – which for reasons discussed in the next section has no applicability to the claims raised here – generally requires certain federal activities to be in compliance with "all Federal, State, interstate, and local requirements . . . respecting control and abatement of solid waste or hazardous waste disposal and management."  The federal facilities provision expressly repeals otherwise applicable immunity, stating in relevant part,  "The United States hereby expressly waives any immunity otherwise applicable to the United States with respect to any such . . . requirement."[9]  Thus, the federal facilities provision, unlike the citizen suit provision, *does* contain an express waiver of otherwise applicable immunity.  Congress' decision to include an express waiver of otherwise applicable immunity in the federal facilities provision while omitting any such express waiver in the citizen suit provision reflects Congress' intent that the citizen suit provision not abrogate otherwise applicable immunity.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (alteration in original; internal quotation marks and citation omitted).

---

[9] As discussed in section III, B, below (*see*, *infra*, at 17-23), although the RCRA's federal facilities provision contains an express repeal of otherwise applicable immunity, the federal facilities provision does not cover imminent and substantial endangerment claims brought under 42 U.S.C. § 6972(a)(1)(B) based on certain past federal activities, and is inapplicable here.

The waiver provision within another environmental statute, the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), contains an additional example of a provision that, unlike the RCRA citizen suit provision, does expressly repeal otherwise applicable immunity such as Flood Control Act immunity.  Under CERCLA, the United States may be liable for cleanup costs incurred by a person "notwithstanding any other provision of law."  *See* 42 U.S.C. §§ 9607, 9620.  *See United States v. Iron Mountain Mines Inc.*, 881 F. Supp. 1432, 1440-41 (E.D. Cal. 1995) ("*Iron Mountain*") (holding that sovereign immunity for CERCLA contribution claims against the United States arising from flood-related damage had been waived because "notwithstanding any other provision of rule or law" language expressly repealed otherwise applicable immunity).[9]  The *Iron Mountain* court found that "notwithstanding any other provision of rule or law" language constituted an express waiver of any immunity that the United States could otherwise claim.  *Id*. at 1441.  *See also United States v. New Orleans,* No. Civ. A. 02-3618, 2003 WL 22208578 (E.D. La. Sep. 19, 2003) (applying reasoning in *Iron Mountain Mines* and reaching same result); *Crowley Marine Services Inc. v. Fednav Ltd.*, 924 F. Supp. 1030, 1035 (E.D. Wash. 1995) (same), *clarified by*, 915 F. Supp. 218 (E.D. Wash. 1995).  However, in this case, RCRA's citizen suit provision does not contain any such express waiver of Flood Control Act immunity.

Further supporting the conclusion that the RCRA citizen suit waiver does not nullify Flood Control Act immunity is the basic principle that a "general waiver of sovereign immunity . . . does not confer jurisdiction if a more specific statute bars the requested relief."  *McCarty v. United States*, 929 F.2d at 1088.  Here, the relevant Corps activities that allegedly give rise to

---

[9] CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1), allows a party who itself has been held liable for cleanup of hazardous substances to seek contribution from any other person who is potentially liable under CERCLA under certain statutorily prescribed circumstances.

RCRA liability were indisputably flood control activities.  Liability for flood control activities has been addressed specifically by Congress within the Flood Control Act.  In contrast, RCRA addresses a broader range activities that relate to the handling of solid and hazardous waste.  The Flood Control Act more specifically addresses the particular Corps' activities that allegedly give rise to liability in this case.  Accordingly, the Flood Control Act bar on suit trumps the RCRA citizen suit waiver.

Finally, to the extent there is any ambiguity regarding whether the RCRA citizen suit provision repeals Flood Control Act immunity, this ambiguity must be resolved in favor of the Government.  Waivers of sovereign immunity must be strictly construed in favor of the sovereign.  *Lane v. Pena*, 518 U.S. at 192.

**B.     The RCRA Federal Facilities Waiver Provision Does Not Apply to Plaintiffs' Claims**

Beyond RCRA's citizen suit provision, LEAN cites to RCRA's federal facilities provision, 42 U.S.C. § 6961(a), as a basis for jurisdiction.  Complaint ¶ 10.  However, the waiver of sovereign immunity from regulation within RCRA's federal facilities provision simply does not apply to LEAN's claims for two reasons.  First, LEAN is not seeking to enforce "requirements" within the meaning of the federal facilities provision.  Second, LEAN's endangerment claims are not premised on ongoing federal activities.

**1.     LEAN Does Not Seek to Enforce Any RCRA "Requirement"**

RCRA's federal facilities provision provides in relevant part that:

> Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate and local *requirements*, both substantive and

17

> procedural (including any requirement for permits or reporting or
> any provisions for injunctive relief and such sanctions as may be
> imposed by a court to enforce such relief), respecting control and
> abatement of solid waste or hazardous waste disposal and
> management in the same manner, and to the extent, as any person
> is subject to such requirements, including the payment of
> reasonable service charges.

42 U.S.C. § 6961(a) (emphasis added).  Accordingly, to fall within the scope of this immunity

waiver, a plaintiff must, among other things, bring a claim premised on the violation of Federal,

State, or local "requirements" respecting waste disposal and management.

Here, LEAN is not seeking to enforce any "requirements" respecting waste disposal and

management.  The term "requirements" as used in RCRA has been interpreted to mean

"objective and administratively preestablished standards" that are "subject to uniform

application" along with "the procedural means by which those standards are implemented."

*United States v. New Mexico*, 32 F.3d 494, 497 (10th Cir. 1994) (quotations and citations

omitted).  For example, as explicitly stated in the federal facilities provision, RCRA

"requirements" include those objective standards involving "permits or reporting."  Other

provisions of RCRA specify additional examples of statutory "requirements" respecting waste

disposal and management.  For example, in RCRA section 3002(a), 42 U.S.C. § 6922(a),

Congress required the EPA Administrator to establish objective "requirements" applicable to

generators of hazardous waste including, among other things, recordkeeping, labeling, and

reporting requirements.  Similarly, RCRA section 3003, 42 U.S.C. § 6923, requires the EPA

Administrator to establish objective "requirements" applicable to transporters of hazardous

waste.  Likewise, RCRA section 3004, 42 U.S.C. § 6924, requires the EPA administrator to

establish objective "requirements" applicable to owners and operators of hazardous waste

treatment, storage and disposal facilities.

Endangerment claims under RCRA subsection 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), such as those brought here, do not seek to enforce any statutory or related regulatory "requirements" related to waste management.  As LEAN itself points out in its Complaint, Congress intended an endangerment claim brought under subsection 7002(a)(1)(B) to build on common law public nuisance remedies, and thus, "the gravamen of such a suit is a potential endangerment to human health or environment *rather than a statutory violation*." Complaint ¶ 24 (emphasis added).  Thus, subsection 7002(a)(1)(B) creates a cause of action where a defendant has contributed to handling of RCRA regulated solid or hazardous waste that creates an imminent and substantial endangerment, but this cause of action does not seek to enforce any statutory "requirement."[10]  Accordingly, the waiver in the federal facilities provision related to "requirements" does not provide a basis for jurisdiction over the instant endangerment suit under subsection 7002(a)(1)(B).

The fact that subsection 7002(a)(1)(B) does not itself create any RCRA "requirements" is further made clear by comparing it to subsection 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A).  In subsection (a)(1)(A), Congress *did* provide a cause of action against persons alleged to be in violation of any "requirement" created by RCRA.[11]  If subsection 7002(a)(1)(B) were to be construed as involving enforcement of a RCRA "requirement," then subsections (a)(1)(A) and (a)(1)(B) would become nonsensically conflated.  That is, if subsection 7002(a)(1)(B) were to be

---

[10] Indeed, liability under the endangerment provision of section 7002(a)(1)(B) is independent of whether or not a defendant has complied with statutory "requirements."  A defendant in a subsection 7002(a)(1)(B) endangerment action may have complied with all applicable statutory requirements, but still have strict liability under subsection 7002(a)(1)(B).  Conversely, a defendant in a subsection 7002(a)(1)(B) action may have violated applicable requirements, but have no endangerment liability under subsection 7002(a)(1)(B).

[11] Plaintiffs do not bring any claims here under subsection (a)(1)(A).

construed as involving enforcement of a RCRA "requirement," a person could necessarily bring a subsection (a)(1)(B) claim under subsection (a)(1)(A) instead, since subsection (a)(1)(A) allows a person to enforce RCRA "requirements."  However, Congress carefully distinguished between claims brought under subsections (a)(1)(A) and (a)(1)(B).  Among other things, Congress provided that endangerment suits brought under subsection (a)(1)(B) require additional pre-suit notice and are subject to unique defenses.  *See* 42 U.S.C. § 6972(b).  Conflating subsection (a)(1)(A) claims with subsection (a)(1)(B) claims would render the specific restrictions on (a)(1)(B) claims surplusage.  *See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985) (noting that it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative").

Furthermore, in interpreting the scope of the federal facilities provision waiver (and, in particular, the scope of the term "requirements"), this waiver must be construed narrowly in favor of the sovereign.  *Lane v. Pena*, 518 U.S. at 192.  If there is any ambiguity regarding the term "requirements," such ambiguity must be construed in favor of immunity.  Courts have applied this general principle and interpreted the term "requirements" narrowly in similar types of lawsuits.  For example, courts have held that the term "requirements" does not encompass liability for cleanup costs incurred to respond to spillage of waste materials.  *See, e.g.*, *Marina Bay Realty Trust LLC v. United* States, 407 F.3d 418, 422-23 (1st Cir. 2005); *McLellan Highway Corp. v. United States*, 95 F. Supp. 2d 1, 16-17 (D. Mass. 2000); *General Motors v. Hirschfield Steel Serv. Ctr.*, 402 F. Supp. 2d 800, 804-07 (E.D. Mich. 2005); *Florida Dep't of Envtl. Regulation v. Silvex Corp*, 606 F. Supp. 159, 161-64 (M.D. Fla. 1985).[12]  As explained in

---

[12] *But see Charter Int'l Oil Co. v. United States*, 925 F. Supp. 104 (D.R.I. 1996) (holding United States waived sovereign immunity for recovery of response costs brought under state law);

(continued...)

*McLellan*, "a clear focus on the precise statutory language" in the federal facilities provision "does not evidence an unambiguous waiver of sovereign immunity to private suits for reimbursement of response costs" incurred by private parties to cleanup up a site.  95 F.Supp. 2d at 16.  Likewise here, the precise statutory language in the federal facilities provision does not evidence an unambiguous waiver of sovereign immunity to suits seeking to directly compel the cleanup of a site.[13]

### 2.    LEAN's Claims are Premised on Past Federal Activities

Alternatively even if LEAN's suit were deemed to be premised on violation of some RCRA "requirement" as that term is used in RCRA section 6001(a), 42 U.S.C. § 6961(a), the waiver of immunity in section 6001(a) would still not apply here because LEAN's suit is premised on past federal activities at a site that is not under federal jurisdiction.

Section 6001(a) applies to federal agencies "(1) *having jurisdiction over* any solid waste management facility or disposal site," or (2) *engaged in* any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste."  42 U.S.C. § 6961(a) (emphasis added).  This language makes clear that section 6001(a) applies to federal agencies

_____

[12]/(...continued)
*Crowley Marine Services v. Fednav Ltd.*, 915 F. Supp. 218, 222-23 (E.D. Wash. 1995) (same). *Charter Oil* has now been overruled in the First Circuit by *Marina Bay Realty Trust LLC*.  The United States submits that both *Crowley* and *Charter* were erroneously decided in that they rested their findings that section 6001(a) waived immunity to suits entirely on legislative history that accompanied the 1992 amendments.  This wholesale reliance on legislative history to determine the scope of a waiver of sovereign immunity was improper.  *See Lane*, 518 U.S. at 192 ("statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text").

[13]/  As discussed above (*see supra* at 14-17), RCRA's citizen suit provision contains a waiver of sovereign immunity for suits seeking to compel the cleanup of a site, but the citizen suit provision does not apply here because it does not expressly waive preclusion of suits for damage from floods granted by the Flood Control Act.

having *current* jurisdiction over a solid waste management facility or disposal site, or *currently* engaged in *present* activities resulting, or which may result, in the disposal or management of solid waste.  *See Miami-Dade County, Florida v. United States*, No. 01-1930, 2003 WL 22992271, at *4 (S.D. Fla. Dec. 4, 2003) (holding that section 6001 waiver does not apply to past government activities).

Section 6001(a) does not contain any language suggesting an intent to cover past activities, let alone the clear and unambiguous language that would be necessary to waive the government's immunity for such activities.  As the Supreme Court made clear in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 57 (1987), where Congress intends to include wholly past activities within a statute, it uses specific language to make that clear. Congress chose not to use language in section 6001 that unequivocally includes past activities – like the language Congress used in the section 7002(a)(1)(B) waiver (applying the waiver to persons who engaged in certain actions which contributed to "*past* or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.") 42 U.S.C. § 6972(a)(1)(B) (emphasis added) .[14]

The fact that Congress limited the waiver in section 6001(a) to current waste management and disposal activities is consistent with the overall focus of RCRA generally on ensuring proper treatment and disposal prospectively.  LEAN's claims in this suit are not premised on current waste management and disposal activities, but rather premised on alleged past federal design and approval of flood control measures.  LEAN does not allege that the Corps

---

[14]  As discussed above (*see supra* at 14-17), the section 7002(a)(1)(B) waiver does not apply in this case because this case is premised on flood damage, and section 7002(a)(1)(B) fails to expressly override immunity for damages from floods.

is currently "engaged" in any relevant waste disposal or management activities that have resulted in hazardous materials being deposited into the Vista Park neighborhood.[15]

Nor can LEAN demonstrate that the Corps has current jurisdiction over any "solid waste management facility" or "disposal site" in the location of the London Avenue Canal breach and nearby neighborhood which is the subject of the Complaint.  As an initial matter, although the term "jurisdiction "is not defined in RCRA, a "fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."  *Perrin v. United States*, 444 U.S. 37, 42 (1979).  The ordinary meaning of jurisdiction over real property implies legal control or power.  *Miami-Dade County, Fla . v. United States*, 345 F. Supp. 2d 1319, 1355 (S.D. Fla. 2004).  To the extent that LEAN alleges that the Corps currently owns and operates the London Avenue Canal levees (*see* Complaint ¶¶ 37, 39), these allegations are simply incorrect.  *See* Starkel Decl. ¶ 20.  The Board of Commissioners of the Southeast Louisiana Flood Protection Authority – East, currently operates the levees and floodwalls adjacent to the Canal.  *See* La. R.S. 38:307(A)(1); La. R.S. 38:330.1. The Sewerage and Water Board of the City of New Orleans has jurisdiction over the Canal to the extent it is used for drainage.  *See* La. R.S. 33: 4071.  Thus, the Corps does not have "jurisdiction" over the London Avenue Canal or its levees within the meaning of RCRA section 6001(a).[16]

---

[15] The Corps disputes that its past flood control activities constituted "management or disposal" of waste, but the Court need not reach this issue to resolve the instant motion.

[16] The Corps also disputes that the London Avenue levees are either a "solid waste management facility" or a "disposal site" within the meaning of RCRA section 6001(a), but the Court need not reach these questions to resolve the instant motion.

In short, the waiver of sovereign immunity set forth in RCRA section 6001(a) does not apply in this case.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth above, Plaintiff LEAN's Complaint should be dismissed for lack of subject matter jurisdiction.

<div style="margin-left:50%">

Respectfully submitted,

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment & Natural Resources
    Division


<u>s/ Eric G. Hostetler     </u>
ERIC G. HOSTETLER
Environmental Defense Section
Environment & Natural Resources
    Division
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986
(202) 305-2326

</div>

DATED: February 1, 2007