# EXHIBIT H

Supplemental Agreement between United States and Orleans Levee District

SUPPLEMENTAL AGREEMENT BETWEEN

THE UNITED STATES OF AMERICA

AND

THE ORLEANS LEVEE DISTRICT

FOR LOCAL COOPERATION AT

LAKE PONTCHARTRAIN AND VICINITY HIGH LEVEL PLAN

THIS AGREEMENT entered into this __21__ day of __June__ 1985 by and between the UNITED STATES OF AMERICA (hereinafter called the "Government"), represented by the Contracting Officer executing this Agreement, and the Board of Commissioners of the Orleans Levee District, WITNESSETH THAT:

WHEREAS, construction of the Lake Pontchartrain and Vicinity (hereinafter called the "Project") was authorized by the Flood Control Act, approved October 27, 1965, Section 204 of Public Law 298, 89th Congress, 1st Session, substantially in accordance with the Report of the Chief of Engineers, dated 4 March 1964, contained in House Document No. 231, 89th Congress, 1st Session; and

WHEREAS, on January 2, 1971, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646 was enacted; and

WHEREAS, Section 92 of the Water Resources Development Act of 1974, (Public Law 251, 93d Congress) authorized, inter alia, a plan under which the non-Federal interest may pay its cash obligations for the project on a deferred basis; and

WHEREAS, Lake Pontchartrain, Louisiana, and Vicinity Hurricane Protection Project Reevaluation Study, dated December 1983, approved February 7, 1985, has authorized construction of the High Level Plan, rather than the Barrier Plan; and

WHEREAS, the Orleans Levee District agrees to comply with all the required conditions and provisions of local cooperation listed in the previous Assurances granted by said Levee District, dated September 30, 1966; March 29, 1974; April 2, 1974; July 8, 1975; and December 7, 1977, applicable to the High Level Plan.

NOW, THEREFORE, the Board of Commissioners of the Orleans Levee District, in consideration of the construction to be done by the United States of America on the High Level Plan, agrees that it will, without cost to the United States:

    a. Provide all lands, easements, and rights-of-way, including borrow and spoil disposal areas necessary for construction, operation, and maintenance of the project;

    b. Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project; and

    c. Hold and save the United States free from damages due to the construction works;

    d. Bear 30 percent of the first cost, to consist of the fair market value of the items listed in subparagraphs (a) and (b) above and a cash contribution as presently estimated below, to be paid either in a lump sum prior to initiation of construction or in installments at least annually in proportion to the Federal appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined:

COST TO ORLEANS LEVEE DISTRICT

($1,000,000's)

| ORLEANS LEVEE DISTRICT | | FIRST COST 1/ | LOCAL SHARE |
|---|---|---|---|
| Citrus New Orleans East | | 112.5 | 33.8 |
| New Orleans | | 249.1 | 74.7 |
| | TOTAL | 361.6 | 108.5 |

1/Cost to complete after October 1979; October 1981 price levels.

    e. This item has been deleted in full because it pertains only to the barrier plan:

      Provide an additional cash contribution equivalent to the estimated capitalized value of maintenance and operation of the Rigolets Navigation Lock and Channel to be undertaken by the United States, presently estimated at $3,816,000, the final determination to be made after construction is complete, said amount to be paid either in a lump sum prior to initiation of construction of the barrier or in installments at least annually in proportion to the Federal appropriation for construction of the barrier;

    f. Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

10

g. Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, and stoplog structures [the remainder of this item is deleted];

h. Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly;

i. Comply with the applicable provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646; and

j. Assume the responsibility to pay its share of the non-Federal project costs [the remainder of this item is deleted];

k. As a minimum adhere to the payment schedule of the deferred payment plan, the apportionment of costs to be made as actual costs values and schedules are determined. The first payment under the deferred payment plan was due on 1 October 1976, with subsequent payments being due on 1 October of each succeeding year, up to and including 1 October 1990. Interest is charged on the unpaid balance during this period at the rate of 3.225 percent per annum. Cash contributions required subsequent to 30 September 1991 shall be computed in accordance with the basic 30 percent requirement stipulated in Section 204 of the Flood Control Act of 1965, Public Law 89-298 and House Document 231, 89th Congress;

l. Recognizes that subsections (b), (c) and (e) of Section 221 of the Flood Control Act of 1970, Public Law 91-611 shall apply to paragraph (k) above.

m. Comply with Section 601 of Title VI of the Civil Rights Act of 1964, Public Law 88-352 that no person shall be excluded from participation in, denied the benefits of, or subjected to discrimination in connection with the Project on grounds of race, creed, or national origin.

FURTHER, the parties agree that the unaltered provisions in the previous Assurances, dated September 30, 1966; March 29, 1974; April 2, 1974; July 8, 1975; and December 7, 1977, remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

THE UNITED STATES OF AMERICA        BOARD OF COMMISSIONERS
                                    ORLEANS LEVEE DISTRICT

By: _____       By: _____
    Colonel, CE                         President
    District Engineer
    Contracting Officer

DATE: 21 June 85                    DATE: 5/29/85

11

WHEREAS, on July 28, 1966, the Board of Commissioners of the Orleans Levee District granted two Assurances for the Lake Pontchartrain and Vicinity Project to the United States of America, one Assurance was for the Chalmette Area Plan and one was for the Barrier Plan, accepted by the Chief, Real Estate Division for and in behalf of the United States of America on September 30, 1966, containing the following items of local cooperation for the Chalmette Area Plan and the Barrier Plan, respectively:

### CHALMETTE AREA PLAN

    a. Provide all lands, easements, and rights-of-way, including borrow and spoil disposal areas necessary for construction, operation, and maintenance of the project;

    b. Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project;

    c. Hold and save the United States free from damages due to the construction works;

    d. Bear 30 percent of the first cost, to consist of the fair market value of the items listed in subparagraphs (a) and (b) above and a cash contribution as presently estimated below, to be paid either in a lump sum prior to initiation of construction or in installments at least annually in proportion to the Federal appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined:

| Project | Total Contribution for Construction | Lands and Relocations | Cash Contribution for Construction |
|---|---|---|---|
| Chalmette | $1,246,300 | $ 377,900 | $868,400 |

    e. Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

    f. Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, and stoplog structures;

    g. Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly; and

### BARRIER PLAN

    a. Provide all lands, easements, and rights-of-way, including borrow and spoil disposal areas necessary for construction, operation, and maintenance of the project;

   b.  Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project;

   c.  Hold and save the United States free from damages due to the construction works;

   d.  Bear 30 percent of the first cost, to consist of the fair market value of the items listed in subparagraphs (a) and (b) above and a cash contribution as presently estimated below, to be paid either in a lump sum prior to initiation of construction or in installments at least annually in proportion to the Federal appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined:

| Project | Total Contribution for Construction | Lands and Relocations | Cash Contribution for Construction |
|---|---|---|---|
| Lake Pontchartrain Barrier Plan | $28,940,400 | $6,241,100 | $22,699,300 |

   e.  Provide an additional cash contribution equivalent to the estimated capitalized value of maintenance and operation of the Rigolets navigation lock and channel to be undertaken by the United States, presently estimated at $3,816,000, the final determination to be made after construction is complete, said amount to be paid either in a lump sum prior to initiation of construction of the barrier or in installments at least annually in proportion to the Federal appropriation for construction of the barrier;

   f.  Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

   g.  Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, seawalls, and stoplog structures, but excluding the Rigolets navigation lock and its appurtenant navigation channels and the modified dual purpose Seabrook Lock;

   h.  Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly; and

   WHEREAS, on September 16, 1971, said Assurances were amended to obligate the Orleans Levee District for only that portion of the Project within Orleans Parish and to reflect an increase in cost participation, accepted by the Chief, Real Estate Division for and in behalf of the United States of America on March 29, 1974, containing the following items of local cooperation, to wit:

3

   a. Provide all lands, easements, and rights-of-way, including borrow and spoil disposal areas necessary for construction, operation, and maintenance of the project;

   b. Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project;

   c. Hold and save the United States free from damages due to the construction works;

   d. Bear 30 percent of the first cost, to consist of the fair market value of the items listed in subparagraphs (a) and (b) above and a cash contribution as presently estimated below, to be paid either in a lump sum prior to initiation of construction or in installments at least annually in proportion to the Federal appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined:

LAKE PONTCHARTRAIN PROJECT
ESTIMATE OF FIRST COSTS

| UNIT DESCRIPTION | TOTAL FIRST COSTS | FEDERAL COSTS | NON-FEDERAL COSTS | | |
|---|---|---|---|---|---|
| | | | Total | Lands Damages Relocations | Cash Contribution |
| BARRIER UNIT | | | | | |
| Seabrook Complex* | 20,920,000 | 17,782,000 | 3,138,000 | 13,000 | 3,125,000 |
| Chef Menteur Complex | 30,138,000 | 21,097,000 | 9,041,000 | 913,000 | 8,128,000 |
| Rigolets Complex | 41,045,000 | 28,731,000 | 12,314,000 | 400,000 | 11,914,000 |
| Capitalized operation and maintenance of Rigolets Lock | (See subparagraph (e) below) | | | | |
| TOTAL BARRIER UNIT | 92,103,000 | 67,610,000 | 24,493,000 | 1,326,000 | 23,167,000 |

4

LAKE PONTCHARTRAIN PROJECT
ESTIMATE OF FIRST COSTS

| UNIT DESCRIPTION | TOTAL FIRST COSTS | FEDERAL COSTS | NON-FEDERAL COSTS Total | Lands Damages Relocations | Cash Contribution |
|---|---|---|---|---|---|
| LEVEES, FLOOD-WALLS, AND APPURTENANT STRUCTURES UNIT | | | | | |
| Improvements in Orleans Levee District (Orleans Par.) | 77,337,000 | 54,136,000 | 23,201,000 | 18,737,000 | 4,464,000 |
| Improvements in St. Charles, Jefferson and St. Tammany Parishes | 23,220,000 | 16,426,000 | 6,794,000 | 1,340,000 | 5,454,000 |
| TOTAL LEVEES, FLOODWALLS, AND APPURTEN-ANT STRUCTURES UNIT | 100,557,000 | 70,562,000 | 29,995,000 | 20,077,000 | 9,918,000 |
| TOTAL BARRIER PLAN | 192,660,000 | 138,172,000 | 54,488,000 | 21,403,000 | 33,085,000 |

*Total Non-Federal cost includes only cost of Seabrook Complex applicable to hurricane protection purposes (30 percent of half the estimated first cost of construction);

   e.  Provide an additional cash contribution equivalent to the estimated capitalized value of maintenance and operation of the Rigolets Navigation Lock and Channel to be undertaken by the United States, presently estimated at $3,816,000, the final determination to be made after construction is complete, said amount to be paid either in a lump sum prior to initiation of construction of the barrier or in installments at least annually in proportion to the Federal appropriation for construction of the barrier;

   f.  Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

   g.  Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, seawalls, and stoplog structures, but excluding the Rigolets Navigation Lock and its appurtenant navigation channels and the modified dual purpose Seabrook Lock;

   h.  Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly; and

5

WHEREAS, on September 21, 1973, said Assurances were amended again, as to the Barrier Plan, to include Public Law 91-646, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 which was enacted into law on January 2, 1971, said Supplemental Assurance accepted by the Chief, Real Estate Division for and in behalf of the United States of America, on April 2, 1974; and

WHEREAS, on May 29, 1975, said Assurances were amended again, as to the Chalmette Area Plan to include Public Law 91-646, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, which was enacted into law on January 2, 1971, said Supplemental Assurance approved by the Chief, Real Estate Division for and in behalf of the United States of America, on July 8, 1975; and

WHEREAS, on March 30, 1976, the President of the Board of Commissioners of the Orleans Levee District agreed to a plan whereby said Levee Board would pay its cash obligations for the Project on a deferred basis pursuant to Section 92 of the Water Resources Development Act of 1974 (Public Law 251, 93d Congress), executed by the Acting District Engineer Contracting Officer on February 15, 1977, and approved on December 7, 1977 by the Acting Director of Real Estate for the Secretary of the Army, containing the following items of local cooperation, to wit:

    a. Provide all lands, easements, and rights-of-way, including borrow and spoil disposal areas necessary for construction, operation, and maintenance of the project;

    b. Accomplish all necessary alterations and relocations to roads, railroads, pipelines, cables, wharves, drainage structures, and other facilities required by the construction of the project;

    c. Hold and save the United States free from damages due to the construction works;

    d. Bear 30 percent of the first cost, to consist of the fair market value of the items listed in subparagraphs (a) and (b) above and a cash contribution as presently estimated below, to be paid either in a lump sum prior to initiation of construction or in installments at least annually in proportion to the Federal appropriation prior to start of pertinent work items, in accordance with construction schedules as required by the Chief of Engineers, or, as a substitute for any part of the cash contribution, accomplish in accordance with approved construction schedules, items of work of equivalent value as determined by the Chief of Engineers, the final apportionment of costs to be made after actual costs and values have been determined:

LAKE PONTCHARTRAIN PROJECT
ESTIMATE OF FIRST COSTS
1 January 1976

| UNIT DESCRIPTION | TOTAL FIRST COSTS | FEDERAL COSTS | NON-FEDERAL COSTS | | |
|---|---|---|---|---|---|
| | | | Total | Lands, Damages Relocations | Cash Contribution |
| | $ | $ | $ | $ | $ |
| BARRIER UNIT | | | | | |
| Seabrook Complex* | 30,150,000 | 25,630,000 | 4,520,000 | 20,000 | 4,500,000 |
| Chef Menteur Complex | 41,820,000 | 29,270,000 | 12,550,000 | 1,130,000 | 11,420,000 |
| Rigolets Complex | 63,780,000 | 44,810,000 | 18,970,000 | 875,000 | 18,095,000 |
| SUB-TOTAL BARRIER UNIT | 135,750,000 | 99,710,000 | 36,040,000 | 2,025,000 | 34,015,000 |
| Capitalized operation and maintenance of Rigolets Lock | | -9,230,000 | 9,230,000 | | 9,230,000 |
| TOTAL BARRIER UNIT | 135,750,000 | 90,480,000 | 45,270,000 | 2,025,000 | 43,245,000 |

7

LAKE PONTCHARTRAIN PROJECT
ESTIMATE OF FIRST COSTS
1 January 1976

| UNIT DESCRIPTION | TOTAL FIRST COSTS $ | FEDERAL COSTS $ | NON-FEDERAL COSTS Total $ | Lands, Damages Relocations $ | Cash Contribution $ |
|---|---|---|---|---|---|
| LEVEES, FLOODWALLS, AND APPURTENANT STRUCTURES UNIT | | | | | |
| Improvements in Orleans Levee District (Orleans Par. Barrier Plan) | 103,300,000 | 72,150,000 | 31,150,000 | 14,100,000 | 17,050,000 |
| Improvements in St. Charles, Jefferson and St. Tammany Parishes | 33,320,000 | 23,570,000 | 9,750,000 | 1,885,000 | 7,865,000 |
| TOTAL LEVEES, FLOODWALLS, AND APPURTENANT STRUCTURES UNIT | 136,620,000 | 95,720,000 | 40,900,000 | 15,985,000 | 24,915,000 |
| TOTAL BARRIER PLAN | 272,370,000 | 186,200,000 | 86,170,000 | 18,010,000 | 68,160,000 |
| CHALMETTE PLAN | | | | | |
| Improvements in Orleans Levee District (Orleans Par.) | 18,610,000 | 13,050,000 | 5,560,000 | 4,540,000 | 1,020,000 |
| Improvements in (St. Bernard Parish) | 61,020,000 | 42,750,000 | 18,270,000 | 5,590,000 | 12,680,000 |
| TOTAL CHALMETTE PLAN | 79,630,000 | 55,800,000 | 23,830,000 | 10,130,000 | 13,700,000 |
| TOTAL PROJECT | 352,000,000 | 242,000,000 | 110,000,000 | 28,140,000 | 81,860,000 |

\*Total non-Federal cost includes only cost of Seabrook Complex applicable to hurricane protection purposes (30 percent of half the estimated first cost of construction);

    e. Provide an additional cash contribution equivalent to 67.1% of the estimated capitalized value of maintenance and operation of the Rigolets Navigation Lock and Channel to be undertaken by the United States, the cash contribution is presently estimated at $6,193,300, the final determination to be made after construction is complete, said amount to be paid either in a lump sum prior to initiation of construction of the barrier or in installments at least annually in proportion to the Federal appropriation for construction of the barrier;

8

   f. Provide all interior drainage and pumping plants required for reclamation and development of the protected areas;

   g. Maintain and operate all features of the project in accordance with regulations prescribed by the Secretary of the Army, including levees, floodgates and approach channels, drainage structures, drainage ditches or canals, floodwalls, seawalls, and stoplog structures, but excluding the Rigolets Navigation Lock and its appurtenant navigation channels and the modified dual purpose Seabrook Lock;

   h. Acquire adequate easements or other interest in land to prevent encroachment on existing ponding areas unless substitute storage capacity or equivalent pumping capacity is provided promptly;

   i. Comply with the applicable provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646;

   j. Assume the responsibility to pay its share of the non-Federal project costs, presently estimated to be $67,086,140. This amount consists of $24,182,840, which is Orleans Levee District's pro rata share (67.1 percent) of the non-Federal cost of construction of the barrier unit; $36,710,000, which is the non-Federal cost of construction in Orleans Parish exclusive of the barrier unit; and $6,193,300, which is 67.1% of the capitalized value of maintenance and operation of the Rigolets navigation lock and channel.

   k. As a minimum, adhere to the payment schedule of the deferred payment plan attached hereto as exhibit 1, the apportionment of costs to be made as actual costs, values and schedules are determined. The first payment under the deferred payment plan is due on 1 October 1976, with subsequent payments being due on 1 October of each succeeding year up to and including 1 October 1990. Interest is charged on the unpaid balance during this period at the rate of 3.225 percent per annum. Cash contributions required subsequent to 30 September 1991 shall be computed in accordance with the basic 30 percent requirement stipulated in Section 204 of the Flood Control Act of 1965, Public Law 89-298 and House Document 231, 89th Congress; and

   l. Recognized that subsections (b), (c) and (e) of Section 221 of the "Flood Control Act of 1970", Public Law 91-611 shall apply to paragraph (k) above; and


   WHEREAS, the Board of Commissioners of the Orleans Levee District, represented by Emile W. Schneider its  President , pursuant to and by virtue of the provisions of its resolution, adopted May 22, 1985, a duly certified copy of such resolution being annexed hereto and made a part hereof, who declared that, in accordance with said resolution and pursuant thereto, he, the said  President  of the Board of Commissioners of the Orleans Levee District, has assured and does hereby assure the Secretary of the Army of the United States that said Board of Commissioners of the Orleans Levee District has the authority and capability to furnish the non-Federal cooperation required by the Federal legislation authorizing the project and by other applicable law; and