UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
COLLEEN BERTHELOT, ET AL      *   Docket 05-CV-4182-K(2)
                              *   (cons. Katrina Canal)
versus                        *
                              *   New Orleans, Louisiana
BOH BROS. CONSTRUCTION CO.,   *
   LLC, et al                 *   August 25, 2006, 1:30 p.m.
* * * * * * * * * * * * * * * *
```

PROCEEDINGS BEFORE THE
HONORABLE STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:             Bruno & Bruno
                                BY:  JOSEPH M. BRUNO, ESQ.
                                855 Baronne Street
                                New Orleans, Louisiana 70113

For the Plaintiffs:             Gainsburgh Benjamin David
                                  Meunier & Warshauer
                                BY:  GERALD E. MEUNIER, ESQ.
                                1100 Poydras Street, Suite 2800
                                New Orleans, Louisiana 70163

For the Plaintiffs:             Lambert & Nelson
                                BY:  HUGH P. LAMBERT, ESQ.
                                701 Magazine Street
                                New Orleans, Louisiana 70130

For the Plaintiffs:             ASHTON R. O'DWYER JR., ESQ.
                                One Canal Place, Suite 2670
                                New Orleans, Louisiana  70130

**Engineers' Exhibit 1**
In Re: KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION
EDLA CV No. 05-4182"K"(2)

1          THE COURT:  I'm familiar with --

2          MR. MEUNIER:  Judge, I think we can stipulate that
3 both statutes -- without pulling up right now the specific
4 provision in the engineer statute -- make an expressed
5 exception for fraud.

6          THE COURT:  Absolutely.

7          MR. MEUNIER:  This is the definition.  It's a
8 misrepresentation or a suppression of the truth made with the
9 intention either to obtain an unjust advantage or cause a loss
10 or inconvenience.  It may result from silence or inaction.  So
11 the question becomes -- these are experts.  These are
12 engineers.  Their business is engineering.  They are at the
13 site.  They are at the scene.  There now does appear certainly
14 to be a colorable issue in this historic litigation that
15 perhaps arguably -- certainly more than perhaps arguably -- the
16 design at the time was unsafe, that the construction at the
17 time was unsafe, that the design and the construction of these
18 important flood protection properties put many citizens at
19 great risk.

20              If you have that situation where experts are out
21 there doing their thing -- and we now know looking back
22 historically that there were problems, or arguably there were
23 problems.  The questions becomes -- a familiar question in tort
24 cases such as this -- what did the defendants know and when did
25 they know it?

1       Now, we recognize our burden, and here is the
2 conundrum.  Here is the problem.  Fraud goes to state of mind.
3 Fraud goes to intent.  They can give me an affidavit from their
4 engineer saying, "I didn't know anything," but I have to depose
5 that man to know truly whether that's the case.  I acknowledge,
6 Judge, and we must acknowledge that there is a rule that must
7 be taken seriously that says plaintiffs have to plead with
8 particularity the circumstances of fraud.

9       THE COURT:  I think there are cases that say you can
10 do it on information and belief, but under 9(b) you have to
11 give some indicia of fraud at least that can be explored.

12      MR. MEUNIER:  The question, I guess, becomes:  How
13 particular can I get, as a plaintiff, consistent with my
14 Rule 11 obligation not to sign something that is purely
15 speculative, particularly as serious as a fraud allegation?  I
16 have no discovery opportunity to get into the state of mind.  I
17 can look at documents.  I can look at their disclosure.  I can
18 look at their affidavits.  This is a state-of-mind issue.  So I
19 can't take any depositions yet.  I can't discover the state of
20 mind yet.  I have a rule telling me you have got to be
21 particular about what it is that was in the state of mind that
22 led to this.  I have another rule telling me don't go there;
23 you may be in a sanctionable situation.  I mean, it's been
24 difficult for the plaintiffs.

25      Now, in the normal case you would have a

1 defendant in court. You would have made various allegations of
2 negligence as well as other theories against that defendant.
3 You would hold back on the fraud allegation until you got
4 discovery. You would then add it upon discovery, or you would
5 add it in advance and they would come in and challenge it and
6 maybe you've got to drop it, but they're still in court and you
7 come back with an amendment later. The problem here is we are
8 up on the one-year anniversary of this catastrophe.
9      Now, I don't know what the impact will be if
10 this Court decides, well, you don't have discovery yet, but you
11 haven't pled it with particularity. It's an exception to
12 preemption. I'm saying the exception is not established, and
13 then later we get into discovery without the defendant in the
14 case and find out that, indeed, there was some state of mind
15 here, a knowledge of an issue of a risk. What do we do? So,
16 Judge --
17     THE COURT: You would probably have a real problem,
18 to be fair to your concerns, of at the very least collateral
19 estoppel or res judicata. Even though it wasn't at issue, it's
20 an interesting -- I understand your concerns.
21     MR. MEUNIER: It wouldn't be such a problem unless
22 I'm forced to rely on it to keep them in the case, you see. If
23 they are out of the case without my establishment of this
24 exception to preemption, then I've got a problem. So,
25 Your Honor, when I talk about the importance of discovery as a

1 Representations aren't a cause of action.

2     MR. LAMBERT: I'm with Mr. Meunier with regard to the
3 conduct. In other words, the conduct was done in the late '90s
4 and there was also some work done by --

5     THE COURT: But if I don't agree with Mr. Meunier, I
6 guess right now I'm wondering -- we were talking about remote.
7 What remote work was done in the preemptive period by whom?

8     MR. LAMBERT: Well, I don't know what was done
9 exactly by, for example, whatever engineering company was
10 contacted by the Levee Board with regard the complaints about
11 water seeping under --

12     THE COURT: I know you mentioned that. That's not
13 pled in the complaint as we speak.

14     MR. LAMBERT: I understand. That's one of those
15 little fraud problems that we have that we don't have enough
16 particularity at this point in time to address. The problem is
17 that I'm standing here trying to answer Your Honor's
18 questions -- and I would love to. The problem is I don't have
19 the information that I need to do that and I cannot get it from
20 the IPEC report. I need some deposition testimony in order to
21 find out where this berm went and who engineered this project
22 to the point where the water is up at this level on a calm day.
23 I just don't have that.

24     THE COURT: Have they not provided -- "they" meaning
25 the engineers, let's say -- all of the times they have been in