1. To a person on the **insured location** with the permission of an **insured**; or
2. To a person off the **insured location**, if the **bodily injury**:
   a. Arises out of a condition on the **insured location** or the ways immediately adjoining;
   b. Is caused by the activities of an **insured**;
   c. Is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or
   d. Is caused by an animal owned by or in the care of an **insured**.

## SECTION II — EXCLUSIONS

1. **Coverage E — Personal Liability and Coverage F — Medical Payments to Others** do not apply to **bodily injury** or **property damage**:
   a. Which is expected or intended by the **insured**.
   b. Arising out of or in connection with a **business** engaged in by an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business**;
   c. Arising out of the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply to the rental or holding for rental of an **insured location**:
      (1) On an occasional basis if used only as a residence;
      (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or
      (3) In part, as an office, school, studio or private garage;
   d. Arising out of the rendering of or failure to render professional services;
   e. Arising out of a premises:
      (1) Owned by an **insured**;
      (2) Rented to an **insured**; or
      (3) Rented to others by an **insured**;
      that is not an **insured location**;
   f. Arising out of:
      (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an **insured**;
      (2) The entrustment by an **insured** of a motor vehicle or any other motorized land conveyance to any person; or
      (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.
      This exclusion does not apply to:
      (1) A trailer not towed by or carried on a motorized land conveyance;
      (2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:
         (a) Not owned by an **insured**; or
         (b) Owned by an **insured** and on an **insured location**;
      (3) A motorized golf cart when used to play golf on a golf course;
      (4) A vehicle or conveyance not subject to motor vehicle registration

which is:
    (a) Used to service an **insured's** residence;
    (b) Designed for assisting the handicapped; or
    (c) In dead storage on an **insured location.**

**g.** Arising out of:
    (1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;
    (2) The entrustment by an **insured** of an excluded watercraft described below to any person; or
    (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an **insured.** This exclusion does not apply to watercraft:
    (1) That are not sailing vessels and are powered by:
        (a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an **insured;**
        (b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an **insured;**
        (c) One or more outboard engines or motors with 25 total horsepower or less;
        (d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an **insured;**
        (e) Outboard engines or motors of more than 25 total horsepower owned by an **insured** if:
            (i) You acquire them prior to the policy period; and
                (a) You declare them at policy inception; or
                (b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.
            (ii) You acquire them during the policy period.
        This coverage applies for the policy period.
    (2) That are sailing vessels, with or without auxiliary power:
        (a) Less than 26 feet in overall length;
        (b) 26 feet or more in overall length, not owned by or rented to an **insured.**
    (3) That are stored;

**h.** Arising out of:
    (1) The ownership, maintenance, use, loading or unloading of an aircraft;
    (2) The entrustment by an **insured** of an aircraft to any person; or
    (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

**i.** Caused directly or indirectly by war, including the following and any consequence of any of the following:
    (1) Undeclared war, civil war, insurrection, rebellion, revolution;
    (2) Warlike act by a military force or military personnel; or
    (3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an **insured**;

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **e.**, **f.**, **g.**, and **h.** do not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.**

2. **Coverage E — Personal Liability**, does not apply to:

a. Liability:

  (1) For any loss assessment charged against you as a member of an association, corporation, or community of property owners;

  (2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

    (a) That directly relate to the ownership, maintenance or use of an **insured location;** or

    (b) Where the liability of others is assumed by the **insured** prior to an **occurrence;**

  unless excluded in **(1)** above or elsewhere in this policy;

b. **Property damage** to property owned by the **insured;**

c. **Property damage** to property rented to, occupied or used by or in the care of the **insured.** This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d. **Bodily injury** to any person eligible to receive any benefits:

  (1) Voluntarily provided; or

  (2) Required to be provided;

  by the **insured** under any:

  (1) Workers' compensation law;

  (2) Non-occupational disability law; or

  (3) Occupational disease law;

e. **Bodily injury** or **property damage** for which an **insured** under this policy:

  (1) Is also an insured under a nuclear energy liability policy; or

  (2) Would be an insured under that policy but for the exhaustion of its limit of liability.

  A nuclear energy liability policy is one issued by:

  (1) American Nuclear Insurers;

  (2) Mutual Atomic Energy Liability Underwriters;

  (3) Nuclear Insurance Association of Canada;

  or any of their successors; or

f. **Bodily injury** to you or an **insured** within the meaning of part **a.** or **b.** of "**insured**" as defined.

3. **Coverage F — Medical Payments to Others**, does not apply to **bodily injury**:
   a. To a **residence employee** if the **bodily injury**:
      **(1)** Occurs off the **insured location**; and
      **(2)** Does not arise out of or in the course of the **residence employee's** employment by an **insured**.
   b. To any person eligible to receive benefits:
      **(1)** Voluntarily provided; or
      **(2)** Required to be provided;
     under any:
      **(1)** Workers' compensation law;
      **(2)** Non-occupational disability law; or
      **(3)** Occupational disease law;
   c. From any:
      **(1)** Nuclear reaction;
      **(2)** Nuclear radiation; or
      **(3)** Radioactive contamination;
     all whether controlled or uncontrolled and however caused; or
      **(4)** Any consequence of any of these; or
   d. To any person, other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II — ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses — We pay:**
   a. Expenses we incur and costs taxed against an **insured** in any suit we defend;
   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;
   c. Reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and
   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per **occurrence** for **property damage** to property of others caused by an **insured**.
   We will not pay for **property damage**:
   a. To the extent of any amount recoverable under Section I of this policy;
   b. Caused intentionally by an **insured** who is 13 years of age or older;
   c. To property owned by an **insured**;
   d. To property owned by or rented to a tenant of an **insured** or a resident in your household; or
   e. Arising out of:
      **(1)** A **business** engaged in by an **insured**;

HARTFORD/Flake
Homeowners Policy 024

Form HO-3 (Ed. 10/93)        **Page 20 of 28**

(2) Any act or omission in connection with a premises owned, rented or controlled by an **insured**, other than the **insured location;** or

(3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured.**

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. **Bodily injury** or **property damage** not excluded under Section II of this policy; or

b. Liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

(2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmfull condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II — Coverage E — Personal Liability Exclusion **2.a.(1);**

2. Condition **1.** Policy Period, under SECTIONS I AND II — CONDITIONS.

## SECTION II — CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of **insureds,** claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence.**

Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each **insured.** This condition will not increase our limit of liability for any one **occurrence.**

3. **Duties After Loss.** In case of an accident or **occurrence,** the **insured** will perform the following duties that apply. You will help us by seeing that these duties are performed:

Form HO-3 (Ed. 10/93)          Page 21 of 28          HARTFORD/Flake
Homeowners Policy  025

    a. Give written notice to us or our agent as soon as is practical, which sets forth:
       (1) The identity of the policy and **insured**;
       (2) Reasonably available information on the time, place and circumstances of the accident or **occurrence**; and
       (3) Names and addresses of any claimants and witnesses;
    b. Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;
    c. At our request, help us:
       (1) To make settlement;
       (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured**;
       (3) With the conduct of suits and attend hearings and trials; and
       (4) To secure and give evidence and obtain the attendance of witnesses;
    d. Under the coverage — Damage to Property of Others — submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the **insured's** control;
    e. The **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **bodily injury.**

4. **Duties of an Injured Person — Coverage F — Medical Payments to Others.** The injured person or someone acting for the injured person will:
    a. Give us written proof of claim, under oath if required, as soon as is practical; and
    b. Authorize us to obtain copies of medical reports and records.
    The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim — Coverage F — Medical Payments to Others.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.
    No one will have the right to join us as a party to any action against an **insured.** Also, no action with respect to Coverage E can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** will not relieve us of our obligations under this policy.

8. **Other Insurance — Coverage E — Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II — CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or **bodily injury** or **property damage** in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an **insured** has:
    a. Intentionally concealed or misrepresented any material fact or circumstance;

    **b.** Engaged in fraudulent conduct; or
    **c.** Made false statements;
   relating to this insurance.

**3. Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

**4. Waiver or Change of Policy Provisions.**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**5. Cancellation.**

    **a.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

    **b.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

    Proof of mailing will be sufficient proof of notice.

    **(1)** When you have not paid the premium, we may cancel at any time by letting you know at lease 10 days before the date cancellation takes effect.

    **(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

    **(3)** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

        **(a)** if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

        **(b)** if the risk has changed substantially since the policy was issued.
    This can be done by letting you know at least 30 days before the date cancellation takes effect.

    **(4)** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

    **c.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

    **d.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**6. Non-Renewal.** We may elect not to renew this policy. We may do so by delivery to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**7. Assignment.** Assignment of this policy will not be valid unless we give our written consent.

HARTFORD/Flake
Homeowners Policy 027

Form HO-3 (Ed. 10/93)      **Page 23 of 28**

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

   b. **Insured** includes:

      (1) Any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises;** and

      (2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

The Company providing this insurance is the member of ITT Hartford Insurance Group designated in the Declarations (a stock insurance company). The Company has caused this policy to be signed by its President and by a Secretary, but this policy shall not be binding unless countersigned on the Declarations by a duly authorized agent of the Company.

Brian S. Becker, Secretary

David Zwiener, President

## THE FOLLOWING ENDORSEMENTS APPLY TO YOUR POLICY ONLY WHEN THEIR FORM NUMBER IS SHOWN ON YOUR DECLARATIONS PAGE IN THE AREA TITLED "FORMS AND ENDORSEMENTS NOW MADE PART OF THIS POLICY".

### These Endorsements Change The Policy. Please Read Them Carefully.

---

## Premises Alarm or Fire Protection System

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the **residence premises.** You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

**Form HO-216**   (Ed. 10/93)   Printed in U.S.A.   (ISO: HO-04-16-04-91)

Copyright, Insurance Services Office, Inc., 1990

HARTFORD/Flake
Homeowners Policy  028

**Form HO-3** (Ed. 10/93)          Page 24 of 28

**Personal Property Replacement Cost**
**SECTION I**
For an additional premium, covered losses to the following property are settled at replacement cost at the time of loss:

    **a.** Coverage C — Personal Property;
    **b.** If covered in this policy, awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

Personal Property Replacement Cost coverage will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy:

    **a.** Jewelry;
    **b.** Furs and garments trimmed with fur or consisting principally of fur;
    **c.** Cameras, projection machines, films and related articles of equipment;
    **d.** Musical equipment and related articles of equipment;
    **e.** Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry; and
    **f.** golfer's equipment meaning golf clubs, golf clothing and golf equipment.
    Personal Property Replacement Cost coverage will not apply to other classes of property separately described and specifically insured.

**1. PROPERTY NOT ELIGIBLE**
Property listed below is not eligible for replacement cost settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

    **a.** Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.
    **b.** Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.
    **c.** Articles not maintained in good or workable condition.
    **d.** Articles that are outdated or obsolete and are stored or not being used.

**2. REPLACEMENT COST**
The following loss settlement procedure applies to all property insured under this endorsement:

    **a.** We will pay no more than the least of the following amounts:
        **(1)** Replacement cost at the time of loss without deduction for depreciation;
        **(2)** The full cost of repair at the time of loss;
        **(3)** The limit of liability that applies to Coverage C, if applicable;
        **(4)** Any applicable special limits of liability stated in this policy; or
        **(5)** For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.
    **b.** When the replacement cost for the entire loss under this endorsement is more than $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is complete.
    **c.** You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

All other provisions of this policy apply.

HARTFORD/Flake
Homeowners Policy  029

Form HO-290   (Ed. 10/93)   Printed in U.S.A.   (ISO: HO 04-90-04-91)
Copyright, Insurance Services Office, Inc., 1990

**Replacement or Repair Cost Protection Coverage A — Dwelling**
For an additional premium, we agree to amend the present coverage amounts in accordance with the following provisions:
1. If you have:
   a. allowed us to adjust the Coverage A limit of liability and the premium in accordance with:
      **(1)** the property evaluations we make; and
      **(2)** any increases in inflation; and
   b. notified us, within 30 days of completion, of any alterations to the dwelling which increase the replacement cost of the dwelling by 5% or more; and
   c. elected to repair or replace the damaged building;
   We will:
   a. increase the Coverage A limit of liability to equal the current replacement cost of the dwelling if the amount of loss to the dwelling is more than the limit of liability indicated on the Declarations Page. However, in no event will such increased limit exceed the lesser of:
      **(1)** two times the Coverage A amount shown in the Declarations; or
      **(2)** the Coverage A amount shown in the Declarations plus $250,000.
   b. also increase by the same percentage applied to Coverage A the limit of liability for Coverages B, C and D. However, we will do this only if the Coverage A limit of liability is increased under paragraph **a.** above as a result of a Coverage A loss;
   c. adjust the policy premium form the time of loss for the remainder of the policy term based on the increased limits of liability.
2. If you comply with the provisions of this endorsement and there is a loss to a building insured under Coverage A, Section I condition 3. Loss Settlement paragraph **b.** is deleted and replaced by paragraphs **b.**, **c.** and **d.** as follows:
   b. Buildings under Coverage A or B at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts for equivalent construction and use on the same premises:
      **(1)** the replacement cost of the building or any parts of it;
      **(2)** the amount actually and necessarily spent to repair or replace the building or any parts of it;
      **(3)** the applicable limit of liability whether increased or not, adjusted in accordance with paragraph **1.** above.
   c. We will pay no more than the actual cash value of the damage until actual repair or replacement is completed.
   d. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.
This coverage does not apply to land, including land on which the dwelling or structures are located.
All other provisions of this policy apply.                              HARTFORD/Flake
Form H-352-2   (Ed. 10/93)   Printed in U.S.A.   (NS)   Homeowners Policy 030
Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc., 1991

Form HO-3 (Ed. 10/93)              Page 26 of 28

## Amendatory Endorsement Specifically Excepted Perils

As used herein, **Peril** means a cause of physical loss or damage to property. It has this meaning whether or not it is called a **Peril** or a **Cause of Loss** in this policy. Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs **A.** and **B.** below, are SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:

**A.** ACTS, ERRORS OR OMISSIONS by you or others in:
1. Planning, zoning, developing, surveying, testing or siting property;
2. Establishing or enforcing any building code, or any standard, ordinance or law about the construction, use or repair of any property or materials, or requiring the tearing down of any property, including the removal of its debris;
3. The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:
   a. Land or buildings or other structures;
   b. Roads, water or gas mains, sewers, drainage ditches, levees, dams or other facilities; or
   c. Other improvements or changes in or additions to land or other property;
4. The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or
5. The maintenance of any of such property or facilities.

This exception **A.** applies whether or not the property or facilities described above are:
1. Covered under this policy; or
2. On or away from the covered premises.

This exception **A.** does not reduce the insurance for loss or damage caused directly by a Covered Peril.

As used in this endorsement:
1. If this policy is written to cover the risk of loss from specially named causes, **Covered Peril** means any Peril specifically named as covered; or
2. If written to cover the risk of loss without specifying specifically named causes, **Covered Peril** means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

**B.** COLLAPSE, CRACKING or SHIFTING of buildings, other structures or facilities, or their parts, if the collapse, cracking or shifting:
1. Occurs during **earth movement, volcanic eruption** or **flood** conditions or within 72 hours after they cease; and
2. Would not have occurred but for **earth movement, volcanic eruption** or **flood.**

But if loss or damage by a Covered Peril ensues at the covered premises, we will pay for that ensuing loss or damage.

HARTFORD/Flake
Homeowners Policy  031

This exception **B.** applies whether or not there are other provisions in this policy relating to collapse, cracking or shifting of buildings, other structures or facilities, or their parts. Any such provision is revised by this endorsement to include this exception.

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more of the following Perils:

**1.** Earthqauke;
**2.** Flood;
**3.** Volcanic action;
**4.** Volcanic eruption; or
**5.** Sinkhole collapse,

this exception **B.** will not reduce that coverage.

As used in this exception **B.:**

**1.** **Cracking** means cracking, separating, shrinking, bulging or expanding;
**2.** **Shifting** means shifting, rising, settling, sinking, or lateral or other movement;
**3.** **Earth Movement** means any earth movement, including but not limited to **earthquake**, landslide, mudflow, erosion, contraction or expansion, subsidence, any movement of earth resulting from water combining with the ground or soil, and any other shifting of earth; all whether or not combined with **flood** or **volcanic eruption.** It does not include sinkhole collapse if loss by sinkhole collapse is specifically covered in this policy;
**4.** **Earthquake** means a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or shifting of rock beneath the surface of the ground from natural causes. An **Earthquake** includes all related shocks and after shocks;
**5.** **Volcanic eruption** means the eruption, explosion or effusion of a volcano. It does not include volcanic action if loss by volcanic action is specifically covered in this policy;
**6.** **Flood** means:
    **a.** Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;
    **b.** Release of water held by a dam, levy or dike or by a water or flood control device;
    **c.** Water that backs up from a sewer or drain; or
    **d.** Water under the ground surface pressing on, or flowing, leaking or seeping through:
        **(1)** Foundations, walls, floors or paved surfaces;
        **(2)** Basements, whether paved or not; or
        **(3)** Doors, windows or other openings.

All other provisions of this policy apply.

**Form H-380-1**   (Ed. 10/93)   Printed in U.S.A.   (NS)

HARTFORD/Flake
Homeowners Policy  032

```
        POL #    PROD    SUB SHT CO ST EFF      EXP    TERM    RNST      STAT AS OF
    55RB 450657  562201  BM1 FLA G  LA 102004 102005  12                 A   102004

                AGY TRAN ORIG       C/S INFO
    PRV POL #   PROD   IN POL DT TX CD RO PROD   ACT CH# EFF    DT PRC  REQ
    55RB 450657        102086   0551            AREN     102004 090404 MICROFILM

        -UNDERWRITER- PRIM       D AGY                        TYPE 08
        INIT TERR CDS POL #      T PROF LCL MIUA COMBO W/F LTERM  RE U/W CODES
             9Z                  P                         SYSTEM

     NAME FLAKE,BEVERLY H
    STREET 310 16TH ST                           CITY NEW ORLEANS
     CNTY ORLEANS               ST LA  ZIP 70124    PLACE CD

    IF DIFF FROM MAIL ADDR        POOL ID    CK RCVD        LBTXCD
    RES ADDR                                                RSN
    CITY/CNTY                                   ST    ZIP

    ADDL RES PREMISES
    STREET                                   # OF FAM         TERR
       CITY               CNTY                   ST    ZIP

            OTHER     PERS      LOSS OF    PERS       MED PAY/ MINN/SC
    DWLG    STRUCT    PROP      USE        LIAB       PERSON   VALUE
    $ 198,000 $ 19,800 $ 138,600 $  39,600 $ 100,000  $1,000

    MTG1 LOAN #          CODE       CHGS ON POL
      NAME
    STREET                                    LOT #     BLOCK #
      CITY               ST    ZIP      NY3    ADDITION

    MTG2 LOAN #          CODE          SRC 0    3/4 FAM OLT TERR
      NAME
    STREET
      CITY               ST    ZIP

            DEDUCTIBLE      YR       -PROT- PREM LTD OP      WIND
    OCCUPANCY TYPE AMT  CONST  BLT  TERR CLASS CD GRP ACC ID  CERT
    1 FMLY   FLAT 250  BRK MAS 1965 36   03    03 0.93

    FT FROM MI FROM FIRE TOWN/ SO ST  #    -HO4/6-  DOUBLE  HI WIND RENEWAL
    HYD    FIRE STA DISTRICT   IND SNMBLS RATE TYPE WALL CR CODE    CR
    500    03     FPP USED                               Y  86

    HO4/6-# APTS    HO 256 LIMIT      MINE SUBSIDENCE       RET CR X
    EXCEPTIONS WIND   THEFT    RENOVATION YEARS H-   W-    P-  SHUTTER
                                        AUTO POL # 55 PH 313464
                              ACCT CR Y   MEM Y  S/P PSPEC POL N

     COMPANION POL #                        COSTIMATOR OVERRIDE
    DWELLING TYPE    SINGLE ENTRY  DEVIATION  CITY CD   CNTY CD 071
    DED #1:
    DED #2:                      HARTFORD/Flake          DWELL CL
    DED #3:    HYD TYPE  HYD IN CITY  Homeowners Policy 033  SPECIALTY N
    FL ORD/LAW REJECT   BCEG   BCEG YEAR     INDIVID GRADE   FLOOD POL

    BILL METHOD   PAYOR      BILL PLAN ACCOUNT #   PREMIUM PAYMENT SCHEDULE
    12 PAY PLAN   INSURED    MO       82936156     DUE DT    PREMIUM
                                                   102004    187600
```

```
IF OTHER PAYOR                                    CANC R/P
   NAME
STREET                                      REWRITE    OLD RATE DATE
   CITY                   ST    ZIP         HCC IND    GUARANTEE DT

BASIC
CHART  COV E OR F DUPL OF ADDL RES ADDL RES  AMENDED
PREM   +/- PREM   LIAB OR OCC PREM EMPL PREM COV PREM
$2,079
COV D INCR PREM        TOTAL ENDT PREM  $213  TOTAL POL PREM  $1,876.00
COV B DECR CR.
DED #1 PREM       DED #2 PREM        DED #3 PREM


*** COSTIMATOR -- UNIT
    AS OF DATE   101486
    VERSION DT   6287
    REPL COST    00201000
       %ITV      100         PC IND   PC LETTER DATE
    CONST CLASS  CUSTOM       MSB REF NUM
    TOT # UNITS  013          INS RPT N      ROOF MATERIAL

POLICY # 55 RB  450657   NAME: FLAKE,BEVERLY H
FORM          POLICY TYPE  DWLG CITY/TOWN
HO-3   10-93  STANDARD     WITHIN CITY/TOWN LIMITS? Y/N Y
ENDT #                     FIRE PROT PRVDR NEW ORLEANS

                                            PCNT PD CR
TEXAS CREDITS:
  FIRE      BURGLAR    SPRINKLERS     DEAD BOLT   DEAD BOLT CRDT
  HOME 5%   YEAR       5% CRDT     HOME 15%  YEAR     15% CRDT
  CNTRL FIRE     LOCAL FIRE     FIRE ALARM FD     SPRKLRS SOME
  CNTRL BURG     LOCAL BURG     BURG ALARM PD     SPRKLRS ALL


HO-300LA 0704  H-380-1 1093  HO-322 1093
HO216   PREM ALARM/FIRE PROT SYSTEM 20 PERC CR    PREMIUM    $416 CR.
H-347-1 REPLC OR REPAIR COST PROT-COV A                      $5
H-266-1 LIFETIME CONTINUATION AGREEMENT           PREMIUM    $NIL
HO-290  PERSONAL PROPERTY REPLACEMENT COST                   $208
```

HARTFORD/Flake
Homeowners Policy  034

# SPECIAL   PROVISIONS
# LOUISIANA



### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SECTION I - PROPERTY COVERAGES
### COVERAGE C - Personal Property
**Special Limits of Liability**

Items **10.** and **11.** are deleted and replaced by the following: (these are items **7.** and **8.** in Form HO–8)

10.  $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

   a.  Accessories or antennas; or

   b.  Tapes, wires, records, discs or other media;

   for use with any electronic apparatus described in this item **10.**

11.  $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

   a.  Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

   b.  Is away from the **residence premises**; and

   c.  Is used at any time or in any manner for any **business** purpose.

   Electronic apparatus includes:

   a.  Accessories and antennas; or

   b.  Tapes, wires, records, discs or other media;

   for use with any electronic apparatus described in this item **11.**

**Property Not Covered**

Item **3.b.** is deleted and replaced by the following:

3.  Motor vehicles or all other motorized land conveyances. This includes:

   b.  Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

      (1)  Accessories or antennas; or

      (2)  Tapes, wires, records, discs or other media;

      for use with any electronic apparatus described in this item **3.b.**

      The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a.  Used to service an **insured's** residence; or

   b.  Designed for assisting the handicapped;

### COVERAGE D - Loss of Use

For all forms other than HO–4 and HO–6

Item **1.** is deleted and replaced by the following:

1.  If a loss covered under this Section makes that part of the **residence premises** where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

HARTFORD/Flake
Homeowners Policy  035

Form HO–300 LA  (Ed. 7/04)  (ISO: HO01170104)

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

For Forms HO-4 and HO-6, Item 1, is deleted and replaced by the following:

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the **residence premises** not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

    Payment will be for the shortest time required to repair or replace the damage, or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

## ADDITIONAL COVERAGES

2. **Reasonable Repairs** is deleted and replaced by the following:

2. **Reasonable Repairs.** We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage if a Peril Insured causes the loss. This coverage does not increase the limit of liability that applies to the property being repaired.

6. **Credit Card, Fund Transfer Card, Forgery And Counterfeit Money** is deleted and replaced by the following:

6. **Credit Card Fund Transfer Card, Forgery And Counterfeit Money**

    We will pay up to $500 for:

    a. The legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured's** name;

    b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawn or transfer of funds, issued to or registered in an **insured's** name.

    c. Loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

    d. Loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

    We do not cover use of a credit card or fund transfer card:

    a. By a resident of your household;

    b. By a person who has been entrusted with either type of card; or

    c. If an **insured** has not complied with all terms and conditions under which the cards are issued.

    All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

    We do not cover loss arising out of **business** use or dishonesty of an **insured.**

    This coverage is additional insurance. No deductible applies to this coverage.

    **Defense:**

    a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when our limit of liability for the loss has been exhausted by payment of a judgment or settlement.

    b. If a suit is brought against an **insured** for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

    c. We have the option to defend at our expense and **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

9. **Glass or Safety Glazing Material** is deleted and replaced by the following:

9. **Glass or Safety Glazing Material.**

    a. We cover:

        (1) For all forms other than HO-4 and HO-6, the breakage of Glass Or Safety Glazing Material which is part of a covered building, storm door or storm window, and for:

            (a) Form HO-4, the breakage of Glass Or Safety Glazing Material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

            (b) Form HO-6, the breakage of Glass Or Safety Glazing Material which is part of a building, storm door or storm window, and covered under Coverage A; and

HARTFORD/Flake
Homeowners Policy 036

Form HO-300 LA   (Ed. 7/04)

    (2)  For all forms other than **HO-4** and **HO-6**, the breakage, caused directly by Earth Movement, of Glass Or Safety Glazing Material which is part of a covered building, storm door or storm window, and for:

        (a)  Form **HO-4**, the breakage, caused directly by Earth Movement, of Glass Or Safety Glazing Material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

        (b)  Form **HO-6**, the breakage, caused directly by Earth Movement, of Glass Or Safety Glazing Material which is part of a building, storm door or storm window, and covered under Coverage A; and

    (3)  The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

  **b.**  This coverage does not include loss:

    (1)  To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

    (2)  On the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this ADDITIONAL COVERAGE **9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Forms HO-1 and HO-8, we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is ADDITIONAL COVERAGE 8. in Forms HO-1 and HO-8.)

The following ADDITIONAL COVERAGE is added to all forms except HO-8. With respect to Form HO-4, the words **covered building** used below, refer to property covered under ADDITIONAL COVERAGE **10.** Building Additions and Alterations.

**11.**  **Ordinance or Law.**

  **a.**  You may use up to 10% of the limit of liability that applies to COVERAGE A (or for Form HO-4, you may use up to 10% of the limit of liability that applies to Building Additions and Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

    (1)  The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a PERIL INSURED AGAINST:

    (2)  The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a PERIL INSURED AGAINST to another part of that covered building or other structure; or

    (3)  The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a PERIL INSURED AGAINST.

  **b.**  You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

  **c.**  We do not cover:

    (1)  The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    (2)  The costs to comply with any ordinance or law which requires any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

3 of 8

HARTFORD/Flake
Homeowners Policy 037

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is ADDITIONAL COVERAGE 10. in Forms HO–1 and HO–6.)

## SECTION I - EXCLUSIONS

1.   **Ordinance or Law** is deleted and replaced by the following:

2.   **Ordinance or Law,** meaning any ordinance or law:

    **a.**   Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion **1.a.** in all forms other than HO–3, **1.a(1)** in Form HO–3 does not apply to the amount of coverage that may be provided for under ADDITIONAL COVERAGES, Glass or Safety Glazing Material or Ordinance or Law;

    **b.**   The requirements of which result in a loss in value to property; or

    **c.**   Requiring any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

    This exclusion applies whether or not the property has been physically damaged.

    (This is exclusion **1.a.** in Form HO–3.)

2.   **Earth Movement** is deleted and replaced by the following:

2.   **Earth Movement,** meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

    **a.**   Fire; or

    **b.**   Explosion;

    ensues and then we will pay only for the ensuing loss.

    This exclusion does not apply to loss by theft.

    (This is exclusion **1.b.** in Form HO–3.)

4.   **Power Failure** is deleted and replaced by the following:

4.   **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **residence premises.** But if the failure of power or other utility service results in a loss, from a PERIL INSURED AGAINST on the **residence premises,** we will pay for the loss or damage caused by that PERIL INSURED AGAINST.

    (This is exclusion **1.d.** in Form HO–3.)

8.   **Intentional Loss** is deleted and replaced by the following:

8.   **Intentional Loss,** meaning any loss arising out of any act committed:

    **a.**   With respect to loss caused by fire;

        **(1)**   By you or at the direction of the **insured;** and

        **(2)**   With the intent to cause a loss.

    **b.**   With respect to loss caused by a peril other than fire and with respect to all **insureds** covered under this policy;

        **(1)**   By you or at the direction; and

        **(2)**   With the intent to cause a loss.

    This is item **1.h.** in Form HO–3.)

HARTFORD/Flake<br>Homeowners Policy  038

Form HO–300 LA   (Ed. 7/04)

## SECTION I - CONDITIONS

3.   Loss Settlement

Under Forms HO-2 and HO-3, Item b.(1)(b) is deleted and replaced by the following:

   (b)   The replacement cost of that part of the building damaged with material of like kind and quality; or

Under Form HO-6, Item b.(2) is deleted and replaced by the following:

   (2)   If the damage is not repaired or replaced within a reasonable time, at actual cash value but not more than the amount required to repair or replace.

9.   Our Option is deleted and replaced by the following:

9.   Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

10.   Loss Payment is deleted and replaced by the following:

10.   Loss Payment. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. The undisputed portion of the loss will be payable 30 days within we receive your proof of loss.

12.   Mortgage Clause.

The following sentence is deleted:

If the policy is cancelled or not renewed by us, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

The following sentences are added to replace the above:

If this policy is cancelled by us, the mortgagee will be notified:

a.   At least 10 days before the date cancellation takes effect if we cancel for nonpayment of premium; or

b.   At least 30 days before the date cancellation takes effect if we cancel for any other reason.

If the policy is not renewed by us, the mortgagee will be notified at least 10 days before the date nonrenewal takes effect.

## SECTION II - LIABILITY COVERAGES

Under COVERAGE E – PERSONAL LIABILITY items 1. and 2. are deleted and replaced by the following:

1.   Pay up to our limit of liability for the damages for which the insured is legally liable; and

2.   Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when our limit of liability for the occurrence has been exhausted by payment of a judgment or settlement.

## SECTION II - EXCLUSIONS

Under I COVERAGE E – Personal Liability and COVERAGE F – Medical Payments to Others, item a. is deleted and replaced by the following in all forms and Endorsments HO–73;

a.   With respect to loss caused by fire;

1.   Which is expected or intended by one or more insureds even if the bodily injury or property damage

   (i)   Is of a different kind, quality, or degree than initially expected or intended; or

   (ii)   Is sustained by a different person, entity, real or personal property, than initially expected or intended.

b.   With respect to loss caused by a peril other than fire and with respect to all insureds covered under this policy;

HARTFORD/Flake
Homeowners Policy 039

5 of 8

Form HO-300 LA (Ed. 7/04)

    **1.**  Which is expected or intended by one or more **insureds** even if the **bodily injury** or **property damage;**

        **(i)**  Is of a different kind, quality, or degree than initially expected or intended; or

        **(ii)**  Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **1.b.(1)** does not apply to **bodily injury** resulting from the use of reasonable force by one or more **insureds** to protect persons or property.

## SECTIONS II - CONDITIONS

**6.**  **Suit Against Us** does not apply.

## SECTIONS I AND II - CONDITIONS

**2.**  **Concealment or Fraud** is deleted and replaced by the following:

**2.**  **Concealment or Fraud.**

    **a.**  Under SECTION I – PROPERTY COVERAGES, with respect to all **insureds** covered under this policy, we provide no coverage for loss under SECTION I – PROPERTY COVERAGES if, whether before or after a loss, one or more **insureds** have:

        **(1)**  Intentionally concealed or misrepresented any material fact or circumstance;

        **(2)**  Engaged in fraudulent conduct; or

        **(3)**  Made false statements;

    relating to this insurance.

    **b.**  Under SECTION II – LIABILITY COVERAGES, we do not provide coverage to one or more **insureds** who, whether before or after a loss, have:

        **(1)**  Intentionally concealed or misrepresented any material fact or circumstance;

        **(2)**  Engaged in fraudulent conduct; or

        **(3)**  Made false statements;

    **c.**  However, if the conduct specified under **a.** or **b.** above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if know to us would have caused us not to issue the policy, coverage will only be denied if the conduct was committed with the intent to deceive relating to this insurance.

**5.**  **Cancellation**

Paragraphs **b.**, **c.** and **d.** are deleted and replaced by the following:

    **b.**  The following applies with respect to premium payments due on new and renewal policies, including installment payments:

        **(1)**  If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **(2)** and **(3)** below.

        **(2)**  We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we received notice of the returned check or negotiable instrument.

        **(3)**  The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

    **c.**  The following applies if **b.** above does not apply.

We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

        **(1)**  When you have not paid the premium, regardless of the period of time this policy has been in effect, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

HARTFORD/Flake
Homeowners Policy 040

Form HO-300  LA  (Ed. 7/04)

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 20 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us except as provided in item c.(5) below, we may cancel:

    (a) If there has been a material misrepresentation of fact with the intent to deceive:

        (1) In the procurement of the contract; or

        (2) At any other time since the policy was issued;

        which if know to us would have caused us not to issue the policy; or

    (b) If the risk as changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period of:

    (a) More than one year;or

    (b) Three years or less;

We may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

(5) When this policy has been in effect and renewed for more than three years, we may cancel for any one of the following:

    (a) If you have commited fraud with the intent to deceive:

        (1) In the procurement of the contract; or

        (2) At any other time since the policy was issued;

    (b) If the insured risk has undergone a material change;

    (c) If you have filed two or more claims within three years;or

    (d) If the continuation of this policy endangers our solvency.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

We will not, however, cancel this policy, regardless of the period of time this policy has been in effect, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

d.   If this policy is cancelled, we will return any premium refund due, subject to Paragraphs (1), (2) and (3) below. The cancellation will be effective even if we have not made or offered a refund.

(1) If you cancel this policy, we will refund the return premium, if any, within 30 days after the date cancellation takes effect.

(2) If we cancel this policy, and the return premium is not refunded with the notice of cancellation, we will refund it within a reasonable time after the date cancellation takes effect. We will send the refund to you unless (3) below applies.

(3) If we cancel based on Paragraph b. above, we will return the premium due, if any, within 10 days after the expiration of the 10– day period referred to in b.(3). If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

6.   **Nonrenewal** is deleted and replaced by the following:

6.   **Nonrenewal.**

   a.   We may elect not to renew this policy, subject to the provisions of paragraphs b. and c. below. We may do so by delivering to you or mailing to you at your mailing address shown in the Declaration, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

HARTFORD/Flake
Homeowners Policy 041

Form HO–300  LA  (Ed. 7/04)

    **b.**  If this policy has been in effect and renewed with us for more than three years, we will not exercise our right of nonrenewal except:

        (1)  When you have not paid the premium;

        (2)  If you have committed fraud;

        (3)  If the insured risk has undergone a material change;

        (4)  If you have filed two or more claims within three years; or

        (5)  If the continuation of this policy endangers our solvency.

    **c.**  We will not, however, exercise our right of nonrenewal, regardless of the period of time this policy has been in effect with us, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

**8.**  **Subrogation**

The following paragraph is added:

If we pay an **insured** for a loss caused by another **insured** who intentionally commits, or directs another to commit any act that results in loss by fire, the rights of the **insured** who intentionally committed, or directed another to commit, such an act are transferred to us to the extent of our payment. The **insured** may not waive such rights.

All other provision of this policy apply.

HARTFORD/Flake
Homeowners Policy 042

Form HO–300 LA   (Ed. 7/04)

Copyright, Insurance Services Office, Inc., 1994

## <u>No</u> Section II - Liability Coverages For
## Home Day Care Business
## <u>Limited</u> Section I - Property Coverages For
## Home Day Care Business

If an **insured** regularly provides home day care services to a person or persons other than **insureds** and receives monetary or other compensation for such services, that enterprise is a **business**. Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an **insured** to a relative of an **insured** is not considered a **business**.

Therefore, with respect to a home day care enterprise which is considered to be a **business**, this policy:

1.   Does not provide Section II – Liability Coverages because a **business** of an **insured** is excluded under exclusion **1.b.** of Section II – Exclusions;

2.   Does not provide Section I – Coverage B coverage where other structures are used in whole or in part for **business**;

3.   Limits coverage for property used on the **residence premises** for the home day care enterprise to $2,500, because Coverage C – Special Limits of Liability – item **8.** imposes that limit on **business** property on the **residence premises**. (Item **8.** corresponds to item **5.** in Form HO–8);

4.   Limits coverage for property used away from the **residence premises** for the home day care enterprise to $250, because Coverage C – Special Limits of Liability - item **9.** imposes that limit on **business** property away from the **residence premises**. Special Limit of Liability item **9.** does not apply to adaptable electronic apparatus as described in Special Limit of Liability items **10.** and **11.** (Items **9.**, **10.** and **11.** correspond to items **6.**, **7.** and **8.** respectively in Form HO–8.)

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

HO–322   (Ed. 10–93)  Printed in U.S.A.   (ISO: HO 04 96 04 91)         Copyright, Insurance Services Office, Inc., 1990

HARTFORD/Flake
Homeowners Policy  043

## Amendatory Endorsement
## Specifically Excepted Perils



As used herein, **Peril** means a cause of physical loss or damage to property. It has this meaning whether or not it is called a **Peril** or a **Cause of Loss** in this policy.

Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:

A.  **ACTS, ERRORS OR OMISSIONS** by you or others in:

1.  Planning, zoning, developing, surveying, testing or siting property;

2.  Establishing or enforcing any building code, or any standard, ordinance or law about the construction, use or repair of any property or materials, or requiring the tearing down of any property, including the removal of its debris;

3.  The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:

    a.  Land or buildings or other structures;

    b.  Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; or

    c.  Other improvements or changes in or additions to land or other property;

4.  The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or

5.  The maintenance of any of such property or facilities.

This exception A. applies whether or not the property or facilities described above are:

1.  Covered under this policy; or

2.  On or away from the covered premises.

This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.

As used in this endorsement:

1.  If this policy is written to cover the risk of loss from specifically named causes, **Covered Peril** means any Peril specifically named as covered; or

2.  If written to cover the risk of loss without specifying specifically named causes, **Covered Peril** means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

B.  **COLLAPSE, CRACKING or SHIFTING** of buildings, other structures or facilities, or their parts, if the collapse, **cracking or shifting:**

1.  Occurs during **earth movement, volcanic eruption** or **flood** conditions or within 72 hours after they cease; and

2.  Would not have occurred but for **earth movement, volcanic eruption, or flood.**

But if loss or damage by a Covered Peril ensues at the covered premises, we will pay for that ensuing loss or damage.

This exception B. applies whether or not there are other provisions in this policy relating to collapse, **cracking** or **shifting** of buildings, other structures or facilities, or their parts. Any such provision is revised by this endorsement to include this exception.

HARTFORD/Flake
Homeowners Policy 044

Form H-380-1  (Ed. 10/93)  Printed in U.S.A.  (NS)

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more of the following Perils:

1. Earthquake;
2. Flood;
3. Volcanic action;
4. Volcanic eruption; or
5. Sinkhole collapse,

this exception B. will not reduce that coverage.

As used in this exception B.:

1. **Cracking** means cracking, separating, shrinking, bulging or expanding;

2. **Shifting** means shifting, rising, settling, sinking, or lateral or other movement;

3. **Earth Movement** means any earth movement, including but not limited to **earthquake,** landslide, mudflow, erosion, contraction or expansion, subsidence, any movement of earth resulting from water combining with the ground or soil, and any other **shifting** of earth; all whether or not combined with **flood** or **volcanic eruption.** It does not include sinkhole collapse if loss by sinkhole collapse is specifically covered in this policy;

4. **Earthquake** means a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or **shifting** of rock beneath the surface of the ground from natural causes. An **Earthquake** includes all related shocks and after shocks;

5. **Volcanic eruption** means the eruption, explosion or effusion of a volcano. It does not include volcanic action if loss by volcanic action is specifically covered in this policy;

6. **Flood** means:

   a. Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;

   b. Release of water held by a dam, levy or dike or by a water or flood control device;

   c. Water that backs up from a sewer or drain; or

   d. Water under the ground surface pressing on, or flowing, leaking or seeping through:

      (1) Foundations, walls, floors or paved surfaces;

      (2) Basements, whether paved or not; or

      (3) Doors, windows or other openings.

All other provisions of this policy apply.

HARTFORD/Flake
Homeowners Policy  045

2 of 2

Form H-380-1



# PERSONAL PROPERTY REPLACEMENT COST

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SECTION I**

For an additional premium, covered losses to the following property are settled at replacement cost at the time of loss.

 a. Coverage C – Personal Property;

 b. If covered in this policy, awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

Personal Property Replacement Cost coverage will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy:

 a. Jewelry;

 b. Furs and garments trimmed with fur or consisting principally of fur;

 c. Cameras, projection machines, films and related articles of equipment;

 d. Musical equipment and related articles of equipment;

 e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry; and

 f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost coverage will not apply to other classes of property separately described and specifically insured.

**1. PROPERTY NOT ELIGIBLE**

Property listed below is not eligible for replacement cost settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

 a. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

 b. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

 c. Articles not maintained in good or workable condition.

 d. Articles that are outdated or obsolete and are stored or not being used.

**2. REPLACEMENT COST**

The following loss settlement procedure applies to all property insured under this endorsement.

 a. We will pay no more than the least of the following amounts:

  1. Replacement cost at the time of loss without deduction for depreciation;

  2. The full cost of repair at the time of loss;

  3. The limit of liability that applies to Coverage C, if applicable;

  4. Any applicable special limits of liability stated in this policy; or

  5. For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.

 b. When the replacement cost for the entire loss under this endorsement is more than $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is completed.

 c. You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

All other provisions of this policy apply.

             HARTFORD/Flake
             Homeowners Policy 046

HO-290   (Ed. 10-93)   Printed in U.S.A.   (ISO: HO 04 90 04 91)    Copyright, Insurance Services Office, Inc., 1990

## LIFETIME CONTINUATION AGREEMENT – HOMEOWNERS

After the policy is in effect sixty (60) days, or if this is a renewal or continuation policy, we will continue the policy for as many additional policy periods as you wish, provided:

1.  You pay the premium when due.

2.  You maintain at least 80% of the full replacement cost of the dwelling under Coverage A.

3.  We reserve the right to substitute more current forms and endorsements when they are approved and adopted.

4.  You do not knowingly increase the hazard of the risk without written permission of the company.

5.  There has not been a material misrepresentation of fact which if known to us would have caused us not to issue the policy.

All other provisions of this policy apply.

Form H-266-1 (Ed. 2/88) Printed in U.S.A. (NS)          **THE HARTFORD**



## PREMISES ALARM OR
## FIRE PROTECTION SYSTEM

For a premium credit we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

HO-216   (Ed.10-93)   Printed in U.S.A.   (ISO:HO 04 16 04 91)

Copyright,Insurance Services Office,Inc.,1990

HARTFORD/Flake
Homeowners Policy  048

# Replacement or Repair Cost Protection –
## Coverage A – Dwelling



If the percent of replacement cost indicated on the Declaration and subsequent continuations is 100%, for an additional premium, we agree to amend the present coverage amounts indicated on the Declarations page in accordance with the following provisions:

If you have:

a.   selected a Coverage A limit of liability which is 100% of the replacement cost of the dwelling in accordance with the property evaluations we make;

b.   maintained the Coverage A limit of liability at 100% of the replacement cost of the dwelling in accordance with:

1.   the property evaluations we make

2.   any increases in inflation; and

c.   notified us, within 30 days of completion, of any alterations to the dwelling which increase the replacement cost of the dwelling by 5% or more; and

d.   elected to repair or replace the damaged building;

We will:

a.   increase the Coverage A limit of liability to equal the current replacement cost of the dwelling if the amount of loss to the dwelling is more than the limit of liability indicated on the Declarations page;

b.   also increase by the same percentage applied to Coverage A the limits of liability for Coverages B, C and D. However, we will do this only if the Coverage A limit of liability is increased under paragraph a. above as a result of a Coverage A loss;

c.   adjust the policy premium from the time of loss for the remainder of the policy term based on the increased limits of liability.

If you comply with the provisions of the endorsement and there is a loss to a building insured under Coverage A, Section I Condition 3. Loss Settlement paragraph b. is deleted and replaced by paragraphs b., c. and d. as follows:

b.   Buildings under Coverage A or B at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts for equivalent construction and use on the same premises:

(1)   the replacement cost of the building or any parts of it;

(2)   the amount actually and necessarily spent to repair or replace the building or any parts of it;

(3)   for Coverage B only: the applicable limit of liability whether increased or not.

c.   We will pay not more than the actual cash value of the damage until actual repair or replacement is completed.

d.   You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

All other provisions of this policy apply.

HARTFORD/Flake
Homeowners Policy 049