UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, *Robinson* (06-2268) | § | |
| _____ | § | |

**DEFENDANT UNITED STATES' REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR LEAVE
TO SUPPLEMENT RECORD**

The United States has moved to supplement the record with an additional document to aid the Court's determination of its subject-matter jurisdiction. This new document, the Mississippi River Gulf Outlet Deep-Draft De-Authorization Interim Report (the "MRGO Report"), issued on December 15, 2006, describes the relationship between the Mississippi River - Gulf Outlet ("MRGO") and the Lake Pontchartrain and Vicinity Hurricane Protection Project ("LPVHPP") levees, some of which were overtopped and dislocated during Hurricane Katrina. Although the plaintiffs have in their briefs and oral argument (although not their Complaint) questioned whether federal flood-control levees were built along the banks of the MRGO, the

MRGO Report confirms the existence of such levees. MRGO Report 8 ("the *MRGO levees were overtopped* by high surge and high, long-period waves before the hurricane made landfall, and that the *high velocities of water movement over the levees caused scouring and breaching of levees along the MRGO"* (emphasis added)). Thus, the MRGO Report is relevant to the Court's determination of whether it has subject-matter jurisdiction, because the Report confirms that the floodwaters that caused the plaintiffs' alleged damages were floodwaters that federal flood-control levees could not contain, and thus are indisputably "floods or flood waters" within the meaning of 33 U.S.C. § 702c.

Recognizing the impact of the Report, the plaintiffs have filed two briefs opposing the Court's consideration of this information. Neither, however, adduces any valid reason for depriving the Court of additional information about the levees.[1]

The plaintiffs first suggest that the new MRGO Report "is [i]rrelevant and [c]umulative." Plt. Updated Mem. 2; *accord* Plt. Orig. Mem. 4. They argue that the overtopping and erosion of levees along the MR-GO is irrelevant because, in their view, the sole question is whether MR-GO was a navigation project rather than a flood-control project. Plt. Updated Mem. 2. The failure of the LPVHPP levees is irrelevant, they say, because the levees were not "part of the MRGO." *Id.*

---

[1]The plaintiffs have styled both briefs identically and did not seek leave of Court to file a supplemental brief. The principal difference between the briefs is the latter's omission of the argument that the report should not be filed because the plaintiffs were not immediately aware of the motion for leave to file. Plt. Orig. Mem. at 1-2. The plaintiffs acknowledge, however, that they were apprised of the motion in advance of it and that they were notified pursuant to both Local and Federal Rules upon its filing. *Id.* at 2. Having been allowed additional time to file their opposition briefs, the plaintiffs cannot show any possible prejudice resulting from their failure to take prompt notice of the filing. The argument should be deemed abandoned, inasmuch as it is not reiterated in the "updated" version of the brief.

It is the plaintiffs' argument that is beside the point. At issue in determining the United States' motion to dismiss is whether the plaintiffs' alleged damages were "from or by floods or flood waters." 33 U.S.C. § 702c. The United States agrees that, depending upon the construction of § 702c, the failure of the levees along the MRGO may be irrelevant: the immunity afforded by § 702c is not contingent upon the failure of levees. In the broadest language conceivable, the statute provides immunity "for any damage from or by floods or flood waters at any place" without regard to the involvement of a flood-control project. But even if that broad language improperly were to be "confined to those waters that a federal project is unable to control," *Central Green Co. v. United States,* 531 U.S. 425, 431 (2001), then the existence of levees along the MR-GO and their failure to control Katrina's floodwaters would certainly be relevant.

It is the narrow construction of the statute that makes the existence of the MRGO levees potentially relevant. If the statute is narrowly construed, then the information in the MRGO Report becomes relevant to show that the plaintiffs' alleged damages were "from or by floods or flood waters" "that a federal project [was] unable to control." *Id.* The MRGO Report's relevance must be determined in light of the motion to dismiss, which is founded on § 702c and does not take issue with the alleged involvement of MRGO in the flooding. The MRGO Report is relevant and should be considered *if* the failure of the flood-control levees along MRGO is relevant to the application of § 702c. The Report states that "the MRGO levees were overtopped," "scour[ed]," and ultimately "breach[ed]" by the wind-whipped waves of Hurricane Katrina. MRGO Report 8. These events are now common knowledge within the Court's jurisdiction, and therefore are facts susceptible of judicial notice. Nevertheless, the United States, out of an abundance of caution, seeks leave to provide additional evidence of them.

3

The plaintiffs argue that MRGO Report is "[u]nreliable." Plt. Updated Mem. 3; *see also* Plt. Orig. Mem. 5. Citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), they assert that the Report lacks the necessary foundation for admission of scientific evidence. In their view, the issue isn't whether a layman would look at the "earthen mounds along most of the MRGO" and realize that they were levees erected to control storm-generated floodwaters; the issue is one of science: whether the "earthen mounds along most of the MRGO . . . satisfy the definition of 'levees' under the Army Corps' own criteria." Plt. Updated Mem. 5.

Here, again, the plaintiffs miss the mark. The application of Flood Control Act immunity does not turn on whether the "earthen mounds . . . satisfy the definition of 'levees' under the Army Corps' own criteria." It turns (at least, possibly) on whether the mounds—regardless of the cognomen placed on them—were flood-control structures intended to control floodwaters generated by Katrina. Framing the issue as one of science is patent nonsense. The Report is proffered to show the existence of the flood-control structures along the MRGO, not to establish that they met a formal definition of any particular type of structure. Suggesting, in this context, that the Report cannot be admitted because it fails to address "the definition of 'levees'" would be like quibbling over whether the Washington Monument is really an obelisk or just a pile of marble blocks, when the issue is not one of science or geometry but simply whether it sits on the Mall in honor of our country's first President. The levees adverted to in the MRGO Report were along the MRGO when Katrina struck and were intended to prevent flooding, regardless of whether scientists could reasonably disagree as to their precise "criteria."

To bolster their argument that the Report is unreliable, the plaintiffs have adduced a "Statement of Concerns" about the Report. *Id.* at 5-7. The "Statement of Concerns," however,

4

does not question or cast doubt on the existence of the levees. On the contrary, it takes them for granted. On page eight it alludes to the very same events described by the Report itself:

> "The same *storm surge from Lake Borgne* that *topped and eroded the levees along the 'MRGO' frontage* also pushed westward over the southeastern corner of the New Orleans East protected section, . . . and this produced overtopping and a number of breaches . . . . *This was a principal source of the catastrophic flooding* that subsequently made its way across the local undeveloped swamplands and into the populated areas *of New Orleans East.*"

Plt. Updated Mem. Exh. A, at 8 (emphasis added). The "Statement of Concerns" also describes the overtopping of the levees along the westernmost reach of the MRGO (the reach that is also part of the Gulf Intracoastal Waterway), observing that storm surge "overtopp[ed] a number of levees and floodwalls on both the north and south sides of this east-west trending channel." *Id.*

The plaintiffs' reliance on the "Statement of Concerns" suggests that the plaintiffs' own avowal of ignorance concerning the existence of the MRGO levees is less than genuine. The statement's subscribers have made numerous public statements that acknowledge the presence of flood-control levees along MRGO. Robert Bea was a principal author of "Investigation of the Performance of the New Orleans Flood Protection Systems in Hurricane Katrina on August 29, 2005," the final report of the so-called Independent Levee Investigation Team ("ILIT"). This report describes St. Bernard Parish and the Lower Ninth Ward as being "protected by a single continuous 'ring' of levees that, together, constitute one of the three main protected basins flooded by hurricane Katrina." ILIT Report 6-1. This ring of levees is depicted on a "[m]ap showing locations of levee breaches and distressed levee sections along MRGO."[2] An earlier version of this map was adopted by the plaintiffs. It appears in paragraph 9 of the Complaint. A

---

[2]Page 6-1 and Figure 6.1 of the ILIT Report are attached as Exh. 1. The entire ILIT report is available at http://www.ce.berkeley.edu/~new_orleans/.

similar map was prepared by Sherwood Gagliano, to illustrate his testimony to the U.S. Senate Committee on Environment and Public Works.  Dr. Gagliano's map, which is attached as Exhibit 2, shows the "FLOOD PROTECTION LEVEES" surrounding New Orleans East, the Lower Ninth Ward, and St. Bernard Parish.[3]

The flood-control purpose of the "earthen mounds" along the MRGO is an accepted fact, not one susceptible to serious dispute, much less a matter requiring scientific verification.  The Complaint itself, the "Statement of Concerns," and other public statements corroborate the information in the new MRGO Report: Katrina's floodwaters overtopped and eroded the MRGO levees.  There is nothing that casts doubt on the reliability of the Report as to the statements for which its admission is sought.

The plaintiffs, finally, argue that the Report has not been sufficiently authenticated.  Plt. Updated Mem. 7-9; Plt. Orig. Mem. 7-10.  This argument is, at best, purely formalistic.  Although the Report is said to be insufficiently authenticated, it is not said to be inauthentic.  Indeed, the plaintiffs seem to know that it *is* authentic.  Thus, they adduce a "Statement of Concerns" that takes issue with the Report and urges Congress not to accept the Report's findings and conclusions.  The "Statement"—the plaintiffs' own evidence—suggests that the Report is authentic.  It would be pointless to adduce a lengthy formal response to an inauthentic document.  By relying on the "Statement of Concerns," the plaintiffs tacitly acknowledge that the new MRGO Report is authentic.  Nevertheless, they set forth a spurious argument that, if established, would deprive the Court of an indisputably authentic and relevant document prepared by an Executive Department at the behest and for the benefit of Congress.  The

---

[3]Dr. Gagliano's map, and his prepared statement to the Senate committee, is available through a link provided at http://epw.senate.gov/hearing_statements.cfm?id=248938.

authenticity of the MRGO Report is apparent on the face of the document itself.  Moreover, the

Report itself and the news release that announced its publication are available at the official

website of the New Orleans District of the U.S. Army Corps of Engineers :

www.mvn.usace.army.mil.

 For these reasons, the United States' motion for leave to supplement the record should be

granted.

          Respectfully submitted,

           PETER D. KEISLER
          Assistant Attorney General

          C. FREDERICK BECKNER III
          Deputy Assistant Attorney General

          PHYLLIS J. PYLES
          Director, Torts Branch

          s/ Robin D. Smith
          ROBIN D. SMITH
          Trial Attorney
          Torts Branch, Civil Division
          U.S. Department of Justice
          P.O. Box 888
          Benjamin Franklin Station
          Washington, D.C.  20044
          (202) 616-4289
          (202) 616-5200 (fax)
          robin.doyle.smith@usdoj.gov
          Attorneys for Defendant United States

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2007, a true copy of Defendant United States' Reply Memorandum in Support of its Motion for Leave to Supplement Record was served on all counsel of record by ECF, electronic mail, facsimile, or first class mail.

                                     s/ Robin D. Smith
                                      Robin D. Smith