### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

```
IN RE: KATRINA CANAL BREACHES  *      Civil Action No. 05-4182
                               *      Consolidated Litigation
_____*
                               *      Section "K"
PERTAINS TO:                   *
RECORD DOCUMENT 2237, 2238     *      New Orleans, Louisiana
AND 2659.                      *      January 24, 2007
                               *
* * * * * * * * * * * * * * * *
```

### HEARING
### BEFORE THE HONORABLE STANWOOD R. DUVAL, JR.,
### UNITED STATES DISTRICT JUDGE

**APPEARANCES:**

```
For Consol Plaintiffs:          Bruno & Bruno
                                By:  JOSEPH M. BRUNO, ESQ.
                                855 Baronne Street
                                New Orleans, Louisiana 70113

                                Jim S. Hall & Associates
                                By:  JOSEPH W. RAUSCH, ESQ.
                                By:  JIM S. HALL, ESQ.
                                800 North Causeway Boulevard
                                Suite 100
                                Metairie, Louisiana 70001

For Consol Plaintiff            Fayard & Honeycutt
Anne Z. Kiefer, 06-5370:        By:  WANDA J. EDWARDS, ESQ.
                                519 Florida Boulevard
                                Denham Springs, Louisiana 70726

For Defendants; Liaison         Lugenbuhl, Wheaton, Peck, Rankin
Counsel only:                     & Hubbard
                                By:  RALPH S. HUBBARD, III, ESQ.
                                601 Poydras Street, Suite 2775
                                New Orleans, Louisiana 70130
```

2

**APPEARANCES (Cont'd.):**

```
For Defendants; Various        Gieger, Laborde & Laperouse, LLC
AIG Companies:                 By:  ROBERT I. SIEGEL, ESQ.
                               One Shell Square
                               701 Poydras Street, Suite 4800
                               New Orleans, Louisiana 70139


For Defendants Safeco:         Gordon, Arata, McCollam,
                                 Duplantis & Eagan, LLP
                               By:  WENDY H. ROBINSON, ESQ.
                               201 St. Charles Avenue
                               Suite 4000
                               New Orleans, Louisiana 70170


                               Alston & Bird, LLP
                               By:  CARI K. DAWSON, ESQ.
                               1201 West Peachtree Street
                               Atlanta, Georgia 30309


For Defendants ANPAC          Larzelere, Picou, Wells, Simpson,
Louisiana Insurance Co.          Lonero, LLC
and Republic Company:         By:  CHRISTOPHER PENNISON, ESQ.
                               Two Lakeway Center
                               3850 North Causeway Boulevard
                               Suite 1100
                               Metairie, Louisiana 70002


For Defendant Homesite         Deutsch, Kerrigan & Stiles, LLP
Insurance Co.:                 By:  KERRIE T. BELSOME, ESQ.
                               755 Magazine Street
                               New Orleans, Louisiana 70130


For Defendant State Farm       Stone, Pigman, Walther,
Fire & Casualty Co.:             Wittmann, LLC
                               By:  WAYNE J. LEE, ESQ.
                               By:  MARY L. DUMESTRE, ESQ.
                               546 Carondelet Street
                               New Orleans, Louisiana 70130


For Defendant Unitrin          Phelps Dunbar, LLP
Preferred Insurance Co.:       By:  NEIL C. ABRAMSON, ESQ.
                               Canal Place
                               365 Canal Street, Suite 2000
                               New Orleans, Louisiana 70130
```

**APPEARANCES (Cont'd.):**

| | |
|---|---|
| For Defendant Fidelity and Deposit Co. of Maryland: | Hailey, McNamara, Hall, Larmann & Papale<br>By:  SEAN P. MOUNT, ESQ.<br>One Galleria Boulevard<br>Post Office Box 8288<br>Suite 1400<br>Metairie, Louisiana 70011 |
| For Defendant Southwest Business Corporation: | Stone, Pigman, Walther, Wittmann, LLC<br>By:  NICHOLAS J. WEHLEN, ESQ.<br>546 Carondelet Street<br>New Orleans, Louisiana 70130 |
| For Defendant Allstate Indemnity Co.: | Barrasso, Usdin, Kupperman, Freeman & Sarver, LLC<br>By:  EDWARD R. WICKER, JR., ESQ.<br>LL&E Tower<br>909 Poydras Street, Suite 1800<br>New Orleans, Louisiana 70112 |
| Court Audio Operator: | Cynthia Crawford |
| Transcriptionist: | Dorothy Bourgeois<br>c/o U.S. District Court<br>500 Poydras Street, Room C151<br>New Orleans, Louisiana 70130<br>(504) 589-7721 |

Proceedings recorded by electronic sound recording,

transcript produced by transcription service.

4

```
 1                    P R O C E E D I N G S

 2               (Wednesday, January 24, 2007)

 3                 (Call to Order of the Court)

 4         THE COURT:  You may proceed.

 5         THE CLERK:  This is Civil Action 05-4182.

 6         THE COURT:  And I think it pertains to Abadie v.

 7   Aegis Security, et al, 06-5164 and Aaron v. AIG, et al, 06-4746

 8   as we nominate these things in the Katrina umbrella.

 9         MR. RAUSCH:  Your Honor, Joseph Rausch appearing in

10   Aaron and we'll defer to liaison counsel to address both of

11   these motions and I think there's one other matter.

12         MS. EDWARDS:  Thank you.  Wanda Edwards.  I think the

13   Kiefer matter.

14         THE COURT:  Oh, I'm sorry.  There's one other one and

15   I'm looking for it.

16         MS. EDWARDS:  That would be Kiefer.

17         THE COURT:  I know it's in here somewhere.  Do you

18   have the number of it?

19         MS. EDWARDS:  It's 06-5370.

20         THE COURT:  Yes.

21         MS. EDWARDS:  It's Kiefer.

22         THE COURT:  I did read that somewhere.

23         MR. BRUNO:  Did the Court get the number?

24         THE COURT:  Yes, sir.

25         MR. BRUNO:  Because we would also like to suggest,
```

1    Your Honor, that although there has been no motion filed, the

2    Austin case is a case that would fall under this in this

3    discussion.  It's a mass joinder of adjusting claims.  It is

4    06-5383.

5              THE COURT:  All right, sir.

6              MR. BRUNO:  With that, Judge; Judge, we're here this

7    morning to discuss an appropriate method to, at least to begin

8    to resolve what I am going to refer to as adjusting claims and

9    I hope you'll just bear with me and allow me to give you some

10   background as to the process.  I've learned a lot about this

11   adjusting process myself and a large part of my discourse is

12   just to make certain that when I say it I understand what I'm

13   talking about.

14             First, we're talking about 6,000 claims, about.  It

15   is out intent, although we have made some errors, to talk about

16   first party claims for homeowners who made claim against their

17   insurance companies for damages caused by Katrina.  It's not

18   the intent to include forced place carriers, that's a different

19   case which I don't want -- I'll just defer my discussion for a

20   moment.  In all of these cases, the Chehardy claim was made and

21   in most of these cases the value policy claim is made.  But

22   even with that we have some fundamental issues that need to be

23   resolved.  We alluded to that to you the other day.

24             The factual issue component is this:  First, the

25   extent to which the home was damaged by wind and the cost of

1    repair or replacement of those things; the extent to which

2    covered water damage and by "covered" I mean the water entered

3    the house through a hole in the roof, the roof is missing.

4            THE COURT:  Covered water damages meaning that where

5    there's not a dispute that the policy does in fact cover it?

6            MR. BRUNO:  Precisely.

7            THE COURT:  All right.

8            MR. BRUNO:  But there may be though the question of

9    the amount of that damage and the cost of repairing that

10   damage.  And then finally, there is the Chehardy claim and that

11   is obviously that water damage that the Defendant claims, and

12   they have a burden here, of proving was caused by a flood, and

13   then of course we get into our Chehardy issues, et cetera.

14           THE COURT:  Right.

15           MR. BRUNO:  Now, the first point -- well, let me just

16   back up.  These lawsuits were filed proactively because there

17   was some concern on the Plaintiffs' side as to whether or not

18   the actions by the legislature were going to be effective in

19   extending the prescriptive period.  So, the real purpose in

20   filing was simply to protect the rights of these parties.  And

21   having done so, we recognize now we are a burden to you and we

22   are a burden to the insurance companies in as much as a lawsuit

23   has been filed and it has to be dealt with in some fashion.

24           Now, we have Chehardy and it's going its merry way.

25   I recognized, at least Joe Bruno, I don't know if anybody else

1  agrees with me, that the law issue of Chehardy is what it is,

2  but the fact issues remain the same and the fact issues will be

3  necessarily resolved by a fact finder.  Whether it will be you

4  or any other judge, it doesn't matter, or a jury will determine

5  how much damage from wind, how much covered water damage and

6  how much water damage from the levee or Act of God.  Those are

7  factual issues that we don't need to get to.

8         So, knowing that and understanding the process and we

9  have learned the process to be really a process where two

10  experts get together, if you really want to get down to it.  If

11  you're having a contractor or an adjusting expert from the

12  insurance company who goes to the house, looks at it,

13  photographs it and the Plaintiff's lawyer hires an expert to do

14  the same thing.  And when everything works you put them in a

15  room and you say, "Guys, tell me how much you can agree is the

16  amount of wind damage and tell me how much is the amount of

17  covered water damage" and the rest of course is off the table.

18         In my own firm we have about 4,500 of these and we

19  have successfully settled 600 utilizing this process, and I've

20  told all of the insurance companies that we're happy to even

21  execute a partial release, reserving the Chehardy and the value

22  policy claim.  And I might also point out that we have reduced

23  it to nothing more than the facts.  That is in this process, we

24  have told the defense counsel and/or the insurance companies

25  we're not making a claim for attorney's fees or penalties.  We

1  want to keep it solely to the facts.

2          So, when I was broached with the idea, "Well Joe,

3  what can you do to get it off of our docket?"  It seemed

4  totally logical and reasonable to administratively close with

5  an option to reopen if ultimately we couldn't agree as to those

6  facts.  And I think most everybody in the room has no

7  difficulty with that.

8          Now, here's our first problem and it's somewhat

9  ironic given the recent newspaper reports, but State Farm is a

10  company with whom I've made no settlements in the past six

11  months, none.  And State Farm objects to the administrative

12  closure and I don't need to argue that motion because it's not

13  something on which I believe you have discretion, I will sever

14  all of the State Farm cases from the motion so that we can, by

15  consent, find a way to take this off your docket and allow the

16  parties to continue their discussions.  So that to me is

17  another -- and State Farm, I believe, agrees.

18          THE COURT:  Now, explain that to me a little bit.

19  One of the things, you know, my obligation is to the justice

20  system at large, including the insureds and the insurers and to

21  try to figure out an efficient way to handle this monster if

22  there is one.  One of the concerns I had is when we sever;

23  mechanically what happens, and maybe your concept is different.

24  For instance, if I severed all of the Plaintiffs or some, I

25  guess we'd have to have separate numbers allocated to the suits

1    and they would still be here because of the Chehardy issue.

2            MR. BRUNO:  Exactly.

3            THE COURT:  But they would be here individually

4    rather than -- and I guess, I don't know what happens

5    mechanically, do you have to pay the filing fee for each one

6    with a separate number, you may.  I have not talked to the

7    clerk about this, but you may have already investigated that.

8    So, the severing thing is kind of a nightmare but I mean things

9    are what they are.

10            MR. BRUNO:  Well, I agree with that.

11            THE COURT:  But when you're talking about severing

12    State Farm, I wasn't quite -- you might elaborate on that.

13            MR. BRUNO:  Okay.  Let me be crystal clear because

14    you're right, that those are issues which I believe will come

15    further along down the road, today.  The simplest solution is

16    to identify all of those Plaintiffs who have a claim against

17    State Farm or a State Farm entity.  And either by consent or by

18    the order of this Court, which I believe you have the power to

19    do this, all right, so you just make that into two cases; one

20    is the Abadie case, the second one is the State Farm

21    plaintiffs.

22            The necessity of individual numbers and so on is

23    something that we can address another day, and we would.  And

24    part of this, I must share with you -- let me just back up a

25    little bit, because a lot of that stuff is interlocking.  You

1  know that we have been all working terribly hard on a Case

2  Management Order.

3           THE COURT:  Yes.

4           MR. BRUNO:  Which addresses discovery, and we have

5  been asked to think about how that discovery relates to these

6  individual fact determinations, and that is all part of this

7  CMO.  It will be there for your consideration.  I don't know if

8  the Defendants have embraced it but at least it's there and the

9  Court can decide how it wants to handle it.

10          The point I'm making to you is the CMO as I

11  understand it should cover not only Chehardy and not only, you

12  know, the common discovery issues in that regard, but it should

13  also handle the discovery issues as it relates to these fact

14  issues.  For example, even with State Farm.  And I frankly

15  thought this was something that would be of some benefit to the

16  Defendants.  I have 600 State Farm claims.  Mr. Rausch has 200

17  State Farm claims.  What we had contemplated, just like in the

18  levee case -- and I'm sorry, the levee discovery, is that the

19  deposition that we would take as to State Farm's claims

20  handling practices and the like, which would be the same

21  deposition that we would take for all the cases, we would take

22  just once.

23          And then it would fall under this CMO umbrella of,

24  you know, how that should take place and so on and so forth,

25  and is why we would draft it in such a way that the Case

1    Management Order might be considered by Judge Fallon or Feldman

2    or the other judges, and indeed the state court judges who have

3    expressed some interest in looking at it, because we are all

4    about efficiency.  We don't want to take State Farm 1,000

5    times.  I don't think State Farm wants to be deposed 1,000

6    times, but there are thousands of claims.

7           So, just keep that in the back of your mind in terms

8    of what we're trying to accomplish.  And specifically with the

9    business of the easy part would be the severance and I agree,

10   it is my problem as to whether they get separate numbers,

11   separate cases, and the fees.  That's my responsibility.  It is

12   also my responsibility, and I accept it, to present to you a

13   trial plan that would address how we would actually go about

14   trying these 600 State Farm cases.

15          THE COURT:  Does State Farm --

16          MR. BRUNO:  Now, having said all of that I'm not

17   choosing to try my cases against State Farm until that's my

18   only choice, and that's fine.  That's State Farm's prerogative.

19   But once they've made that determination it falls upon me to

20   suggest to the Court how we might try it.  I will tell you the

21   Case Management Order as we propose it covers the discovery

22   issues completely.  It covers the claims handling practices, it

23   covers the individual disclosures by Plaintiffs.  It covers the

24   individual disclosures that may relate to an individual claim

25   against State Farm, you know, that particular guy's claims

12

1    file, their pictures and stuff like that.  So, that's the easy

2    part.

3            All I want to do today is to let you know that, and I

4    think most of the parties in the room are in favor of an

5    administrative closure that allows us to continue --

6            THE COURT:  Well, that's what I was going to ask you.

7    We've talked about State Farm but I have some other

8    oppositions.

9            MR. BRUNO:  Well, it may be appropriate for me at

10   this point just to sit down and allow folks who may have some

11   objections.  Now, I would say this --

12           THE COURT:  So, your solution to this quandary, at

13   least one of your proposed solutions is, "All right Judge,

14   don't administratively close State Farm.  Administratively

15   close the remainder of the cases."  You will sever out State

16   Farm however it has to be either by individually, then there

17   will be individual cases.  Sever out all of those claims and

18   then we'll deal with the motions then of improper joinder and

19   that kind of thing with State Farm discretely or --

20           MR. BRUNO:  Well, if you do it, I think it's the

21   easiest thing.

22           THE COURT:  Or mis-joinder I should say, not improper

23   joinder.

24           MR. BRUNO:  Since I have joined them, be it

25   inappropriate or not, I think for our purposes -- and remember

13

```
 1   Judge, this whole concept of administrative closure, I think
 2   needs to be by consent, let's start with that motion.  And I
 3   think we do have consent, so that when we don't have consent
 4   then we simply take the case as it is, which is however
 5   inappropriately joined or not, let them file their papers.  But
 6   in the short term, to solve this, today's dilemma; that is
 7   State Farm doesn't agree.  Everybody else might and they will
 8   be heard.  Simple solution, cut it in two pieces.  Then we by
 9   consent close the other cases, we put whatever you know,
10   parameters the Court feels it needs to, you know, to do that,
11   and whatever parameters these folks need.
12          Now, a short word about some of the objections that
13   have been raised; first of all, I believe Safeco had some
14   problems but they have advised me this morning that they are a
15   company that only issues forced place coverage, and once we get
16   that, the affidavits and so forth, we will dismiss them from
17   Abadie, because we don't want forced place coverage here,
18   that's another case.
19          And any other company who only provides forced place
20   coverage, we don't want you in Abadie, we will dismiss you and
21   we'll put you in Anderson.
22          MR. RAUSCH:  Your Honor, we would join in that
23   position.  Actually, for us it's a small but understandably
24   separate block and we will work with them to try to resolve it
25   though.
```

```
 1              THE COURT:  All right.

 2              MR. BRUNO:  Now, the other issue that has been raised

 3    and I don't know if there is a lawyer in the room who

 4    represents a company that provides homeowner coverage but has

 5    an issue with regard to participating in discovery relative to

 6    the levees and is that issue still alive with anybody?

 7              MR. PENNISON:  Yes.

 8              MR. BRUNO:  You?

 9              MR. PENNISON:  Yes.

10              MR. BRUNO:  I'm sorry, who do you represent?

11              MR. PENNISON:  ANPAC and Republic Company.

12              MR. BRUNO:  Okay, good.  Now, the other issue that

13    has been raised is this:  ANPAC and Republic is not a Defendant

14    in Chehardy, okay.  And so, if we administratively close Abadie

15    where they are Defendants, then their beef is, "Well, we won't

16    get the benefit or we won't be able to participate because

17    we're not parties to Chehardy."

18              And that's an easy situation.  All I've got to do is

19    join ANPAC and Republic to Chehardy as a Defendant, and indeed

20    let me as an aside tell you that the CMO that, as I propose it,

21    calls for the Plaintiffs to identify any other companies that

22    ought to be made defendants in Chehardy or who are already

23    defendants in some other case and you haven't considered the

24    policy language, then those be identified discretely and either

25    the Plaintiffs bring a summary judgment or the Defendants bring
```

1   a Rule 12 so that you've got that nice big package to look at.

2             THE COURT:  Well, I'm not going to have any more,

3   until the Court of Appeal rules, I'm not going to have any

4   summary judgment Rule 12 on policy language referenced for

5   them.

6             MR. BRUNO:  That's fair enough.  All I'm saying is

7   Judge --

8             THE COURT:  That is stayed until the Court of Appeal

9   rules.

10            MR. BRUNO:  All I want to do for you is at least I've

11  put it in a box.

12            THE COURT:  Right.

13            MR. BRUNO:  Okay.  And at that point you do whatever

14  you want, I mean, you're the judge.  But what I would do for

15  you is I want it in a box with a nice bow.  And what that

16  accomplishes is then we know who is participating in the

17  discovery, and so that if I administratively close ANPAC and

18  Republic in <u>Abadie</u>, then they still have the right to

19  participate in all of the discovery that we're contemplating to

20  take place in the CMO.

21            And I think I've covered everything but I think at

22  this point it may be appropriate to hear from anybody who has

23  an objection to what I propose and we'll try to --

24            THE COURT:  Yes, and I'm interested to see how State

25  Farm visualizes the severance.  Let's assume I agree to the

16

1   severance of State Farm, and I can't just say it's hereby

2   severed.  I need to visualize what that means.  Does it mean

3   that they have been filed but that they're now individual cases

4   with separate numbers, you know, and I don't know --

5              MR. BRUNO:  Well, Judge Polozola --

6              THE COURT:  Hold on one second.

7              MR. BRUNO:  I'm sorry.

8        (Pause)

9              THE COURT:  Okay, go ahead.

10             MR. BRUNO:  Yes?

11             THE COURT:  Mr. Bruno, go ahead.

12             MR. BRUNO:  Oh, I'm sorry.  Judge, one of the other,

13   and again I don't want to provoke an argument on whether I've

14   appropriately joined the Defendants or not.

15             THE COURT:  Yes.

16             MR. BRUNO:  But what I have alleged for whatever or

17   however good it is, is that it ought to be a class action and

18   the common issue is the Chehardy value policy claim.  I may

19   lose that but right now, posture-wise, I'm appropriately before

20   the Court until such time as they file a motion and you rule

21   that I've made a mistake.  Here is a proposal that you may be

22   able to accept:

23             We will amend Abadie and suggest that there be a

24   subclass of State Farm guys and that would allow for a

25   severance of, in the same manner that you were thinking about

17

1    back in the day, about the different levee breaks, the same

2    concept.

3            THE COURT:  I'm still thinking about a subclass.  If

4    you are reading Fifth Circuit law, you all better be thinking

5    about a subclass if anything is going to be certified here.

6            MR. BRUNO:  Well, believe it or not --

7            THE COURT:  And I know I saw you were on the case, I

8    read the recent case.

9            MR. BRUNO:  The one that I got my head handed to me?

10           THE COURT:  Yes.

11           MR. BRUNO:  Yes, that one?

12           THE COURT:  Yes, yes.

13           MR. BRUNO:  Yes, that was an experience.

14           THE COURT:  Yes, that one.

15           MR. BRUNO:  I have to tell you that was an

16   experience.  I said why did I show up, you know?  Here's your

17   head, Joe.  Anyway, but procedurally, we right now at least

18   have the allegation that there ought to be a class.  And I

19   think procedurally it would be appropriate if I alleged a

20   separate class for State Farm to sever those out, and then they

21   can bring their motions as to whether it's, you know,

22   improperly joined, et cetera.

23           THE COURT:  Well you know, and we were talking about

24   that, you know, we can leave Abadie open, as an example,

25   administratively close it as to the individual Plaintiffs not

1    insured by State Farm, and then have State Farm bring its

2    motion in Abadie for mis-joinder and then once I rule that,

3    then we either get separate numbers or -- and that may be one

4    way to do it.

5              MR. BRUNO:  Well, yes.

6              THE COURT:  But I mean Mr. Lee is I'm sure going to

7    be --

8              MR. BRUNO:  Well, yes.  But the whole point of this

9    exercise is, is that we're not trying to bring more problems

10   and I would hope that no party in this room would stand before

11   this podium and say there is this technical thing that we can't

12   get.  There's every technical issue we can resolve in some

13   fashion.  If the parties are truly interested in resolution, as

14   I hope State Farm is, then I would expect that they would --

15   we'll find some way that preserves every right that they have

16   to dismiss or whatever, improper joinder, all of those rights;

17   but at least let's you, you know, close out the other 5,000

18   cases and allow those cases to be resolved, you know, in a more

19   expeditious manner.

20             THE COURT:  Well you know, one of the things that

21   I've thought about is that you know, without any court

22   supervision, how do we know the case is going to move along?  I

23   don't want to leave people in the lurch, but I'm relying on

24   people who are officers of the court telling me they're going

25   to actively pursue these cases and I'm going to have a very

1    liberal if I do that.  If I do administratively close it as to

2    the individuals not insured by State Farm, let's say as an

3    example, I would have a liberal policy of opening; I mean

4    anybody could bring a petition, a motion to open for good cause

5    and then that flexibility is always there.

6         MR. BRUNO:  Well, and we probably ought to, you know,

7    and again this is an issue for both parties.

8         THE COURT:  And maybe set out some time tables, as

9    well.

10        MR. BRUNO:  Yes, when we report to you, because truth

11   be told, you know, our clients are pressuring us and I know

12   that, you know, their clients are pressuring them and if we're

13   not able to at least agree to sit down, then they have the

14   right to say it's time to try the case.  We actively believe

15   that that's the way it should be, that it should happen.

16        Now, I just have to report to you that State Farm is

17   a different animal because they're still hiding behind --

18   forgive me, I shouldn't say hiding behind.  They still believe

19   that concurrent cause is a defense.  And so, as long as that's

20   out there, then we've got to try it.  And so, let's just --

21   we'll just deal with that.

22        Everybody else, we have been negotiating.  We have

23   some issues as to the words for partial release and my only

24   thought to the good lawyers in the back of the room, I would

25   like it to be one release that everybody is comfortable with so

1    that we have a draft that they are looking at.  So, we are

2    making, I think, great progress with most of the carriers and I

3    would like to -- and because we have so many other fish to fry,

4    I want to keep the ball moving on all of these fronts, if we

5    can.  And I would accept the burden of reporting to the Court

6    on a monthly if not every two months, how many cases have we

7    moved.

8                THE COURT:  Yes, and we ought to establish some

9    protocol.

10               MR. BRUNO:  You know, which companies and do you need

11   the magistrate to have a little meeting with me, and maybe I'm

12   being, you know, too hard headed or the other side on

13   reporting.  I think it's very important to report on the

14   progress.  We do believe that we have to get these things off

15   everybody's plate and that is our goal, you know.  I don't, as

16   you know, I don't make any money if I don't let them sit.  So,

17   at least conceptually, Judge, that's where we are and perhaps

18   it's better for you now to hear from State Farm.

19               THE COURT:  All right.

20               MR. BRUNO:  Or the other insurance companies in the

21   room.

22               MR. LEE:  Good morning, Your Honor.

23               THE COURT:  Good morning.

24               MR. LEE:  Wayne Lee on behalf of the Defendant State

25   Farm.

1          THE COURT:  Good morning, Mr. Lee.

2          MR. LEE:  I appreciate having the opportunity to talk

3    with Your Honor and to address these issues, because quite

4    frankly Your Honor, I haven't had a lot of experience with

5    administrative closure.  You know I haven't, you know, we've

6    looked it up in the books and tried to find out exactly what it

7    meant, what the parameters are, what the implications are, and

8    basically we see that it's in effect a stay of the case, it

9    takes it off the Court's docket administratively, but it

10   doesn't tell you anything else about what happens in the

11   interim.

12          And the proposed order that was submitted by the

13   Plaintiffs simply said, "It's closed."  Now, we see that there

14   a lot of implications in this case and as it stands right now

15   in the posture that it has been presented.  Now, we've got

16   three cases; the first is the Abadie case which is just a mass

17   action with thousands of Plaintiffs and about 160 insurance

18   companies and it's got also thrown in, a class action

19   allegation.  Now, Mr. Bruno says, you know, he filed this as a

20   precaution to interrupt prescription and you know, it's really

21   like Chehardy, but quite frankly, Your Honor, if it's like

22   Chehardy, we could have just amended Chehardy, but that's not

23   what was done.  We've got a new lawsuit.

24          He says it's got pieces of -- it's got the, you know,

25   the Chehardy water damage exclusion issue.  It also references

1    the VPL issues and of course there is a different VPL lawsuit

2    that's out there, class action, and in fact there are several

3    of them that have been filed, and those are and that issue is

4    going up on appeal, as well.

5            So, but this one also as he referred to it as claims

6    handling litigation, claims handling lawsuits.  And basically

7    what the complaint says is we got a complaint that you didn't

8    pay us enough.  And anybody who is a homeowner and who has a

9    Hurricane Katrina claim and doesn't feel like they have gotten

10   enough whether you're now or later, you're part of the class.

11   But we don't know in any way, shape or form specifically what

12   the complaints are by any Plaintiff against any specific

13   Defendant.  And there's nothing separate from the Chehardy

14   allegations that says -- that provides a common element or even

15   purports to give a common element as to, you know, why these

16   people -- these Defendants are together or why the Plaintiffs

17   are together or why it ought to be a class.

18           And that was a concern, because being able to find a

19   lawsuit of this type interrupts prescription as to -- purports

20   to interrupt -- I'm sorry, to suspend prescription as to anyone

21   who could be a member of the class.  So, we've got all of these

22   issues out there, these sort of you know, you've heard of the

23   guy that you know, that threw everything at somebody but the

24   kitchen sink.  Well, this one has got the kitchen sink and

25   everything else too, and is that the class.  Is all this

1    interrupted to anybody who might be, you know, who may down the

2    line have an issue.  In the meantime, you know, when you file

3    this lawsuit you've got issues that related to a pre-judgment

4    interest.  Is that, you know, open now as to every one?

5              THE COURT:  All right.

6              MR. LEE:  We had concerns about that.  It didn't

7    address what happens with discovery in the interim, because we

8    recognize that there's discussions going on right now with

9    regard to the Case Management Order and how the Court would be

10   proceeding, but there was no tie with this, so you don't know

11   how that would affect.  We also didn't know anything about what

12   happens in terms of preserving evidence.  I mean, you know,

13   while the case is closed people have issues there.

14             So, these are all the kinds of things that set off

15   concerns when we saw the motion and felt that they had not been

16   discussed with the Court and needed to be considered and put on

17   the table before an order would be entered.  So that's why our

18   response was filed as that.  It was filed as a response.  The

19   Abadie case is -- I mean the Aaron case is similar.  But there

20   is no class action allegation but it has got a host of other

21   things that they've thrown in and we've got lots and lots of

22   parties.

23             We have already filed in the Aaron case a motion, a

24   Rule 12 motion and a request for more Defendants statement, a

25   definite statement as to the allegations in that case.  And we

1    filed a motion of severance because again, you know, as the

2    Court has observed, our policy is different so we, you know, we

3    believe that anyone who has got a claim against State Farm

4    should be asserting their claim based upon our policy and

5    that's how the liability should be assessed, not on the basis

6    of what other policies may provide, and so, we've got that

7    pending.

8            The Kiefer case is I guess sort of like Chehardy but

9    again, they dropped the class action allegations but again, you

10   know, a joinder of lots of different people with lots of

11   different issues.  So, we have raised these concerns,

12   Your Honor, and presented them for the Court's consideration.

13           Now, with respect to Counsel's suggestion though that

14   State Farm hasn't' been, you know, settling cases.  Well, State

15   Farm has been settling cases.  State Farm has been paying, you

16   know, they have been receiving data, they've been making

17   payments to the insureds.  Now, whether they have agreed,

18   reached an agreement with Plaintiff counsel as to the amount as

19   to -- well, counsel may not be agreeable to that but payments

20   have been made.  We have been settling case as part of the

21   Department of Insurance's mediation program, along the way with

22   many parties.  Mr. Bruno doesn't want to participate in that

23   program at all.

24           So, we're trying to adjust claims and handle the

25   claims as we go.  But what we are confronted here with is a

25

1    class action that seems to me to be somewhat duplicative of

2    what is already there with Chehardy and the other VPL cases,

3    but still somehow separate and apart is broader still in terms

4    of concept.  So, one of the things that we asking, Your Honor,

5    is to be able to address that issue and get that, you know, if

6    there's no supposed to be a class, then --

7              THE COURT:  What about the suggestion of Mr. Bruno of

8    severing the State Farm?  I mean I haven't heard from anybody

9    else yet, but I'm just curious.  Severing, in other words, not

10   administratively closing the case as to those persons who were

11   insured by one identifying them and then not administratively

12   closing the case as to those individuals insured by State Farm

13   and then letting you hear, you have your motions and go forth

14   on those.

15             What is your feeling about that, sir?

16             MR. LEE:  Your Honor, and we certainly, and I think

17   we've indicated in our response that out anticipation, you

18   know, the Court has set up I think the deadline for filing.

19             THE COURT:  Right.

20             MR. LEE:  For filing the Rule 12 motions on cases in

21   under the umbrella.  And we anticipated that assuming if this

22   was not administratively closed that we would indeed --

23             THE COURT:  Right.

24             MR. LEE:  -- file motions to sever so that State Farm

25   would be separated from the other carriers, and that we would

1   address the Rule 12 adequacy of the complaints and the class.

2           THE COURT:  So, at least for right now that may be

3   and I'm not certain it is yet, but maybe if the bulk of the

4   parties reach a consensus as to administrative closure and then

5   I get a protocol for that administrative closure, where I get

6   reports on a monthly basis.  And anybody can reopen it.  State

7   Farm would be in a separate category and it is my understanding

8   that it would not be administratively closed, they would be

9   filing its motions and we would be listening to them and trying

10  to dispose of them.

11          MR. LEE:  Yes Your Honor, because we certainly

12  believe that they are made --

13          THE COURT:  And I don't know if that's going to work

14  but we haven't heard from anybody else.

15          MR. LEE:  I don't know, Your Honor, and frankly, I

16  commend Safeco's work for their draft of the proposed formal

17  order, because we think that it did address a lot of the issues

18  that State Farm raised.  And there may indeed be some claims,

19  again State Farm that would be appropriate for closure.  But I

20  do know as I've noted, we've seen in the mass of claimants in

21  the Abadie case and in the Aaron cases, claimants that better,

22  at least as far as we can determine, weren't even flood

23  victims.  So, why are they under this umbrella in the first

24  place?  I don't know why they would be part of this, either a

25  class or closed as a group.  I don't know.

1              And we've got others who, you know, who -- and we get

2    calls from people who say-- you know, they talk, when they talk

3    to their adjuster they say to the adjuster, "What do you mean

4    you can't talk?"

5              "Well, we've been informed that you're a party in the

6         lawsuit."

7              "What do you mean I'm a party in the lawsuit?"

8              Well, and we've had some cleanups going on there.

9    Now, I'm not saying that that there's a lot of it, but there is

10   some, so we've been trying to deal with those issues,

11   Your Honor, and what we have been hoping to do is give this

12   case to a posture where we at least understand what we have,

13   you know, procedurally.  And then we can -- and then maybe it

14   would be appropriate for some cases or some aspect or some

15   portion of some number to be closed.

16             THE COURT:  Do we have, and I'll ask both of you:  Do

17   we have a pretty good record now as to which one of the named

18   Plaintiffs in these three cases or four cases are insured by

19   State Farm?  How long would it take to get that information?

20             MR. LEE:  Plaintiff's counsel had given us --

21             MR. BRUNO:  Yes.

22             MR. LEE:  -- a list of their insureds.

23             THE COURT:  Okay.

24             MR. LEE:  So, of the State Farm insureds, and so we

25   can --

1          THE COURT:  So, that could be done with expeditious?

2          MR. BRUNO:  Well once again, yes, Judge.  It's State

3  Farm who proposed the motion to sever which is precisely what

4  we're contemplating.  We have an opposition to the motion to

5  sever.  We will give you on short order, you know, I would ask

6  you to look -- give you 24 hours just to talk to State Farm and

7  see how quickly they can verify that what we're doing is

8  accurate.

9          THE COURT:  Okay.

10          MR. BRUNO:  And that we have folks who -- do you

11  remember no documents, no houses, no nothing.  We're doing our

12  best to identify these folks.

13          THE COURT:  Well, we'll give you some time but I --

14          MR. BRUNO:  The point is, yes, and naturally.  And I

15  don't know about Mr. McKern but I don't think the number of

16  plaintiffs in this lawsuit is large?

17          MR. LEE:  No.  Yes, those are much smaller.

18          MR. BRUNO:  Yes, but the point I'm making is yes, we

19  will provide you with who these folks are in short order.

20          THE COURT:  Okay.  So Mr. Lee, what I'm thinking

21  about doing with you right now, and that may change when I hear

22  the rest of it, it's having your client severed.  That is what

23  I would first do is administratively close everybody but your

24  client, but your insureds.  And then your motion in Abadie

25  would be for mis-joinder, more definite statement, to eliminate

1    the claim, whatever your motions are going to be.

2             MR. LEE:  Yes, sir, Your Honor.

3             THE COURT:  and I'm thinking about doing it that way,

4    because we can always improve.

5         (Pause)

6             THE COURT:  Anything else, Mr. Lee?

7             MR. LEE:  Your Honor, I think, I guess if I've

8    answered your questions I guess I'll --

9             THE COURT:  Yes.

10            MR. LEE:  I want to make sure that I have addressed

11   them.

12            THE COURT:  Yes.

13            MR. LEE:  Okay.

14            THE COURT:  Yes, sir, you have.  Yes.

15            MR. LEE:  Thank you, Your Honor.

16            MR. HUBBARD:  May it please the Court, Ralph Hubbard,

17   in my capacity as Defendant's liaison counsel, only.  I just

18   wanted to make two quick points that people might be chewing

19   over that had something on the defense side and they were going

20   to come forward and address the Court.  And also, really there

21   are suggestions for the Court of course.  And one of those is

22   that while it's a generous offer by Mr. Bruno to add a bunch of

23   new Defendants in the Chehardy case, I don't think that any of

24   us are here to do that to our clients.

25            And the solution that I see, and seriously for this

```
 1   problem of whether or not someone that has been --
 2             THE COURT:  Discovery?
 3             MR. HUBBARD:  -- administratively closed can
 4   participate, and will be bound which is important to you and
 5   me.
 6             THE COURT:  We can put that in the CMO.
 7             MR. HUBBARD:  Just put it in the CMO.  We've got it
 8   in our draft.
 9             THE COURT:  That was going to be my approach.
10             MR. HUBBARD:  That's a good idea, and we're on board
11   with that and I think that that will solve everybody's
12   problems.
13             THE COURT:  Absolutely.
14             MR. HUBBARD:  So, for those of you out there who
15   are --
16             THE COURT:  They should not be foreclosed and then
17   the CMO should direct itself to that issue, rather than you
18   know, having to name more parties, et cetera.  People are
19   certainly free to do whatever they might, but from an
20   administrative standpoint I would prefer to do it that way.
21             MR. LEE:  Yes, sir.
22             MR. HUBBARD:  And the only other preliminary point
23   that I would like to make before we --
24             MR. BRUNO:  And so, you are saying that they will be
25   bound by the ruling in Chehardy?
```

1          MR. HUBBARD:  No.

2          THE COURT:  No, no.

3          MR. HUBBARD:  No, they will be bound by all of the

4     discovery.

5          THE COURT:  No, no, no, no.  The CMO would allow them

6     to --

7          MR. LEE:  To participate in the discovery.

8          THE COURT:  -- to participate in the discovery with

9     some protocol.

10          MR. HUBBARD:  Right.  So that if we take the

11     deposition of an expert witness.

12          THE COURT:  Precisely.

13          MR. HUBBARD:  In connection, in connection with the

14     levee breach?

15          THE COURT:  You would notify them and they would be

16     involved, et cetera.  Now, that's the way to do it.  Now, and

17     the ruling on Chehardy, frankly, I'm not ruling any more on

18     that issue, as I said, until the Court of Appeal rules and then

19     pretty much everybody will know the score, hopefully.

20          MR. HUBBARD:  But we will be doing discovery that has

21     to do with levee failures.

22          THE COURT:  And I might say when the time that

23     happens, you know, I might be on senior status.

24          MR. HUBBARD:  Me, too.

25          THE COURT:  But I've been looking at the record and

1    I'm hoping that the Court of Appeal will be coming forth fairly

2    soon with something on that.  That is on the decision on the

3    certification.

4            MR. HUBBARD:  Yes, sir.  And the second thing that I

5    would like to have the Court and my constituency be thinking

6    about is you had suggested that you might sever State Farm, and

7    I don't think any of us would have any problem with that if

8    they were severed in their entirety.  The only problem is that

9    if they are then going to bring motions that have to do with

10   mis-joinder which is liable to wind up slicing or not, their

11   case up into individual claims, et cetera.

12           THE COURT:  Right.

13           MR. HUBBARD:  I think that the insurance Defendants,

14   my constituency would be interested in participating in that

15   process rather than have State Farm going it alone and probably

16   laying the foundation for what's going to happen to all of the

17   rest of us without our participating at all.  I mean, I just --

18   we hadn't talked.  We didn't really talk about that before we

19   came in here today.

20           THE COURT:  And you mean you would be filing an

21   amicus on their behalf or you would want to -- tell me to make

22   sure, because if you're closed -- well, let me say this.  A

23   mis-joinder, the mis-joinder if that occurs, that simply means

24   that, assuming that there is jurisdiction, that all of the

25   cases would still be here if I granted the motion of mis-

33

```
 1    joinder, but they would then be individual cases.

 2              MR. HUBBARD:  That's correct.

 3              THE COURT:  And you know if that's what the law is,

 4    that's what it is.  And then, but what you're saying is you may

 5    want to on behalf of your clients and the group you are the

 6    liaison counsel for, file mis-joinder motions as well?

 7              MR. HUBBARD:  Well, or to participate in that

 8    decision, I guess your idea of the amicus, that might work for

 9    me.

10              THE COURT:  Yes.

11              MR. HUBBARD:  You know, so long as we have a chance

12    to speak to it.  I'm not sure exactly where everybody would

13    come in.

14              THE COURT:  So, when you're open, in the event we do

15    open it up, you would have a mis-joinder decision that at least

16    you participated in?

17              MR. HUBBARD:  Right.

18              THE COURT:  Is that what you're saying?

19              MR. HUBBARD:  Exactly.

20              THE COURT:  All right.

21              MR. HUBBARD:  That's exactly.

22              THE COURT:  All right.

23              MR. HUBBARD:  So then we'll have to do it all over

24    again.

25              THE COURT:  Well, I certainly would allow that.
```

1          MR. HUBBARD:  Okay.  And I probably will have some

2     other things to say at the end of this, but I think there are

3     some other people that need to come forward first.

4          THE COURT:  Okay.

5          MR. HUBBARD:  Thank you.

6          MR. PENNISON:  May it please the Court, Your Honor,

7     Chris Pennison here for the ANPAC and Republic Companies.  We

8     are smaller players other than, compared to State Farm in the

9     Abadie and Aaron cases and we're also in Austin.  Just to give

10    you a quick background on that, I think in Abadie we have less

11    than 50 claimants each with Mr. Bruno's office; in Aaron we

12    have eight Republic claimants and five that have been

13    identified by Mr. Rausch; and in Austin we have no Republic

14    named Plaintiffs and I think we may have one ANPAC.

15         We are actually at this point participating in the

16    process that Mr. Bruno has laid out.  We have spoken with

17    Mr. Rausch that we are going to be participating in settlement

18    negotiations.  So, we are trying to work within that framework

19    that has been set up, so we don't have an objection to the

20    concept of administrative closure per se.

21         THE COURT:  Okay.

22         MR. PENNISON:  We do have an issue with being dragged

23    in under the CMO with all of the discovery requirements.  And I

24    understand the discussion with Mr. Hubbard just now about

25    putting in the CMO that we all have the right to participate.

1   But I guess my point in that is I know that discovery is going

2   to be divided up with insurance issues, levee issues, and so

3   forth.

4          THE COURT:  Yes.

5          MR. PENNISON:  And to the extent that in opening --

6          THE COURT:  Corps of Engineers issues, absolutely,

7   yes.

8          MR. PENNISON:  But in the opening phase there is

9   going to be disclosure and written discovery.  And if there is

10  some way that we can work out an agreement with counsel, I

11  don't know if the Court would be amenable to this to where on

12  the insurance discovery we can put that aside for the time

13  being, work within the structure that Mr. Bruno has set up with

14  the settlement negotiations or the administrative closure.  Our

15  point being that if it's going to be administratively closed

16  and we are actively participating in the settlement

17  negotiations, then there should not be a requirement of us

18  going through the insurance discovery.

19         THE COURT:  I agree with you.  The CMO, I think

20  Mr. Hubbard suggested only that you don't get left at the gate

21  on the discovery if you want to participate, not to compel you

22  to do anything.

23         MR. PENNISON:  Okay.  To the extent we're not

24  compelled then to that.

25         THE COURT:  Is that right, Mr. Hubbard?

36

1          MR. HUBBARD:  Yes, sir.  I mean, exactly.  They're

2     still administratively closed.

3          THE COURT:  Right.

4          MR. HUBBARD:  So, they're not going to be doing Rule

5     26 disclosures.

6          THE COURT:  Exactly.

7          MR. HUBBARD:  They're not going to be doing the

8     discovery --

9          THE COURT:  Absolutely.

10         MR. HUBBARD:  -- on the individual claims.

11         THE COURT:  Absolutely.

12         MR. PENNISON:  And Your Honor, at that point we would

13    be in agreement.  The other issue is, and I think the proposed

14    order submitted by Safeco addresses this and I'll request that

15    they put it in there, is that during the administrative closure

16    that we are allowed to avail ourselves of all rights under the

17    policy.

18         Meaning if during the course of settlement

19    negotiations we need an "E", an examination under oath or we

20    need an additional document request as per allowed under the

21    policy and so forth, that even though discovery is not ongoing,

22    that we're still allowed to do that.

23         THE COURT:  I think we would have to have a tailored

24    administrative disclosure and I agree that the Safeco points

25    make sense, and we would incorporate those into our

1    administrative closure order, if we so do that.

2          MR. PENNISON:  Thank you, Your Honor.

3          THE COURT:  All right.

4          MS. DAWSON:  Good morning, Your Honor, Cari Dawson

5    for the Safeco Defendants.  Your Honor, we just want to state

6    on the record to make sure we are clear with what Mr. Bruno has

7    represented on his behalf and on behalf of Mr. Rausch, that the

8    only policies that Safeco has and the only Plaintiffs that have

9    been identified in both the Abadie case and the Aaron case

10    involved forced place policies and lender place policies.

11          Therefore, it's our understanding that both

12    Mr. Rausch on behalf of Jim Hall's office in the Aaron case and

13    Mr. Bruno in the Abadie case intend to dismiss out my client

14    Safeco and all of those insureds from Abadie and Aaron.

15          THE COURT:  And that is my understanding as well.  Is

16    that correct, Mr. Bruno?

17          MR. BRUNO:  On their furnishing an affidavit that,

18    you know, that it covers me.  That's all.

19          MR. RAUSCH:  Your Honor, the only question we have

20    seen is in some cases the actual declaration of the coverage

21    has the homeowner as an additional named insured.  Now, Safeco

22    has represented that that never happens, that they don't do

23    business like that.  In other forced place policies the

24    homeowners are additional named insureds.

25          So, once again as Mr. Bruno said, verification that

```
1    there is no interest of our homeowner clients in those

2    policies, --

3              THE COURT:  All right, okay.

4              MR. RAUSCH:  -- we will address that.

5              THE COURT:  All right.

6              MS. DAWSON:  And Your Honor, since then we would want

7    to similar to what I think Your Honor is contemplating with

8    respect to State Farm, we wouldn't want these cases closed to

9    the extent that issue has not been resolved.  And perhaps there

10   is a way to sort of carve out.  Because what I don't want to

11   have happen is this is unresolved, the case gets dismissed and

12   quite frankly, Your Honor, because of the lender place policy,

13   the forced place issue, we would have preliminary standing

14   motions, Rule 12 motions that we would want to tee up.  And

15   with the case being closed, of course, we would intend to move

16   to reopen to address that, if it can't be resolved by the

17   parties.

18             THE COURT:  All right.  Well, why don't I do that?

19   And you can try to resolve it and then with the understanding

20   that -- and I'm going to put that specifically in the minute

21   entry that Safeco, because of the forced place issue, in the

22   event it is not resolved among the Plaintiffs and yourself, and

23   your client, that you may open to bring Rule 12 motions on the

24   standing.

25             MS. DAWSON:  Thank you, Your Honor.
```

1          THE COURT:  Hold on one second.

2      (Pause)

3          THE COURT:  Yes, go ahead.  Yes, sir?

4          MR. WEHLEN:  Good morning, Your Honor.

5          THE COURT:  Yes, sir?

6          MR. WEHLEN:  Nick Wehlen here on behalf of Southwest

7  Business Corporation.  I just wanted to follow up on what

8  counsel for Safeco just said to the Court.  We would request

9  that the minute entry reflect that all lender placed carriers.

10          THE COURT:  All right.

11          MR. WEHLEN:  Rather than just Safeco be held out.

12          MR. BRUNO:  Where the homeowner is not an additional

13  insured.

14          MR. WEHLEN:  Absolutely.

15          MR. BRUNO:  All right.

16          MR. WEHLEN:  Where the homeowner is not an additional

17  insured.

18          THE COURT:  Okay.

19          MR. WEHLEN:  Thank you, Your Honor.

20          THE COURT:  That's fair enough.

21          MR. WEHLEN:  Thank you.

22          THE COURT:  And I think Judge Berrigan has the forced

23  place issue before her.

24          MR. BRUNO:  I don't know.

25          MR. RAUSCH:  I'm not sure.

40

1          THE COURT:  She does.

2          MR. BRUNO:  I don't know.

3          MR. RAUSCH:  Yes?

4          THE COURT:  She does.

5          MR. BRUNO:  Has Anderson been transferred?

6          THE CLERK:  Yes.

7          THE COURT:  Oh, it has been?

8          THE CLERK:  Yes.

9          THE COURT:  We did?

10          THE CLERK:  Yes.

11          MR. BRUNO:  Anderson is in front of Judge Berrigan?

12          THE CLERK:  Yes.

13          MR. BRUNO:  Okay, I didn't know.  I missed that.

14          THE COURT:  Guess what?  I did too.  Go ahead.

15          MS. BELSOME:  Your Honor, Kerrie Belsome on behalf of

16  Homesite.  We also filed a response.  We are not opposed to

17  administratively closing.  Again, like the other insurers, we

18  were looking for some guidance.  I think some of those issues

19  have been addressed by Mr. Hubbard and Mr. Bruno today and I

20  think we'll be satisfied, you know, with continuing

21  negotiations at this point.  And again, we don't necessarily

22  oppose, we just wanted some guidelines.

23          And some of the issues that were brought up today

24  such as the monthly reporting, I think, is a good idea.

25          THE COURT:  Absolutely.  I think that's essential for

1    everyone.

2              MS. BELSOME:  Our client's main concern is just to

3    keep these cases moving.  We're as much interested in resolving

4    them as Mr. Bruno is; however, we want to make sure we get the

5    information that we need to give a meaningful evaluation to

6    whatever settlement demands they have, and you know, just

7    continue to keep it moving forward.  So I think, again, the

8    reporting idea.

9              THE COURT:  I think that's the Court's responsibility

10   as well, so I'm certainly in concurrence with the monthly

11   reports to all parties, including the Court.

12             MS. BELSOME:  Thank you, Your Honor.

13             THE COURT:  Thank you, Counsel.

14             MR. SIEGEL:  Your Honor, just a housekeeping matter.

15   I'm Robert Siegel and I represent Various AIG Companies.

16             THE COURT:  Yes, sir.

17             MR. SIEGEL:  Yesterday both Mr. Rausch and Mr. Bruno

18   filed a motion to dismiss those AIG related companies for whom

19   they had no insureds or Plaintiffs that match up --

20             THE COURT:  Yes.

21             MR. SIEGEL:  -- with any of those companies, and

22   before the case was administratively closed, we would like to

23   see those --

24             THE COURT:  Signed?

25             MR. SIEGEL:  -- orders resolved and signed

42

1    beforehand, if that would be appropriate.

2              THE COURT:  Well, should I be getting those fairly

3    quickly?

4              MR. SIEGEL:  They already came up on the e-mail

5    notification last night.

6              THE COURT:  Okay.  Sir, we move so much slower than

7    we used to though, you're safe.

8              MR. SIEGEL:  Okay.

9              THE COURT:  I promise you.

10             MR. SIEGEL:  Thank you, Your Honor.

11             MR. BRUNO:  Judge, I have to rise and comment on this

12   business of the parties who will not be participating in the

13   CMO.  Please let me remind you that what we're trying to

14   accomplish goes well beyond just the cases in this section.

15   We're trying to confect something that covers all insurance

16   cases in the entire courthouse, as well as all insurance cases

17   that may be in any state court anywhere.

18             And the reason for that, is as I've pointed out,

19   however many cases ANPAC has, he's got cases in state court and

20   of course, you know, perhaps the unintentional result of

21   Mr. Lee's action is a lot of these cases may go back to state

22   court, so you know, be careful what you wish for.  But in any

23   case, the whole idea was to craft a document which provided for

24   26 disclosures, interrogatories, 30(b)(6) and individual

25   depositions.  And let me share with you that the timing of

1    these things is something that I'm mindful of, you know,

2    relates to the number of cases Ralph may have or State Farm, et

3    cetera.   And I can only take so many depositions at a time.

4            I'm going to respectfully suggest that it really is

5    not a good idea to carve-out anybody from the CMO, because the

6    whole purpose is for them to be a part of it, because A:   The

7    logic would be I'm helping you, you're only answering one set

8    of interrogatories and not 400.   You're being deposed once and

9    not 500 times.   I mean, this is intended to help both of the

10   parties.

11           THE COURT:   But are we talking about individual

12   disclosures on every insured as well, in other words?

13           MR. BRUNO:   Sure.   Now, remember that can be tailored

14   because what you disclose is something that we have open for

15   discussion.   I mean we recognize the need for some disclosures

16   and of course as an advocate, what I'm proposing is much

17   broader than what I'm sure defense counsel would agree to.   But

18   again, the logic is what it is.

19           THE COURT:   Well, the administrative closure though,

20   you see, then the CMO -- the administrative closure would take

21   them out of that.

22           MR. BRUNO:   It would.   But remember you've got other

23   cases in your section and I don't know, does ANPAC have any non

24   Abadie cases that have been --

25           THE COURT:   To the extent that it's something else

44

 1    the administrative closure has no effect on it, the same old

 2    controls.

 3            MR. BRUNO:  Okay.  Well, that's right.  So, all I've

 4    got to do is bring them into Chehardy.  And again, I'm not

 5    doing it -- and I guess I'm saying that to you because I'm not

 6    trying to end-run you, but the whole concept of --

 7            THE COURT:  That's up to you.

 8            MR. BRUNO:  All right.

 9            THE COURT:  Like I said, who you name is who you

10    name.

11            MR. BRUNO:  Well, yes.

12            THE COURT:  Yes.

13            MR. BRUNO:  And I don't want you to think I'm being

14    flip about it, because I do understand the logic of it, because

15    if they're closed, they're closed, they're closed.  But and

16    that is what it is.  But there may be a defendant before you

17    and they're not in Abadie.

18            THE COURT:  If they are in another case that is not

19    administratively closed they are going to be subject to any

20    order that I render under the Katrina umbrella that insofar as

21    it applies to them.

22            MR. BRUNO:  Right.  Well, so I'm comfortable that no

23    Abadie Defendant complied who was administratively closed,

24    complied to this.  That's fine.

25            MR. HUBBARD:  Ralph Hubbard, again.

45

1          THE COURT:  One second, Mr. Hubbard.  One second,

2     please.

3          (Pause)

4          THE COURT:  Go ahead.

5          MR. HUBBARD:  Your Honor, Ralph Hubbard for the

6     Defendants again.  I mean it seems to me that all that remains

7     is the crafting of an order, because I don't hear any further

8     objections from my side of the table and I don't know whether

9     the Court -- would the Court prefer that Mr. Bruno and I and

10    our groups give you some kind of joint proposed order?

11         THE COURT:  You know, I was going to do it but you

12    can do it and you know the things that I want and that I've

13    said I wanted incorporated, including the reporting and the

14    right to open for good cause, to reopen for good cause, the

15    severance of State Farm.  But yes, you can submit an order,

16    too.

17         MR. HUBBARD:  Well, I think it would be a good idea

18    if we tried to submit a joint order and to the extent we can't

19    agree as we're doing in the CMO, we'll just highlight what the

20    Plaintiffs want and what the Defendants want, if there is a

21    difference of opinion.

22         THE COURT:  Yes, hopefully you can agree but don't

23    take too long because I'm just going to do it, otherwise, you

24    know.

25         MR. HUBBARD:  Well, okay.

46

1          MR. BRUNO:  I know that, Judge, and you know it's

2     unfortunate but we are still getting you know these letters of

3     request, "Please dismiss us" and all that.  So, I know that

4     you're anxious to close it but I think a week or so would be

5     okay.

6          THE COURT:  Well wait now, I wasn't going to say

7     tomorrow.

8          MR. BRUNO:  We're focused now on the CMO and we're

9     going to turn that in on Friday.

10          THE COURT:  But I'm going to give you a deadline.

11          MR. BRUNO:  And next Friday --

12          THE COURT:  I'm going to give you a deadline.  And if

13     I don't get it, you know.

14          MR. BRUNO:  Then we'll --

15          THE COURT:  You know, I was here and I know just --

16     like I said I need the information from you, who the

17     individuals are with State Farm, and I need that.

18          MR. BRUNO:  Is February 1st too late, Judge?

19          THE COURT:  What's that?

20          MR. BRUNO:  February 1st is that too late, Judge?

21          THE COURT:  No.

22          MR. BRUNO:  Okay.

23          THE COURT:  That's a great date.

24          MR. HUBBARD:  Well, and Ms. Dawson has volunteered on

25     behalf of Safeco to do the first cut of that thing.

47

 1              THE COURT:  Thank you, Ms. Dawson.  We appreciate it.

 2              MR. HUBBARD:  So Joe, that's who you're probably

 3    dealing with.

 4              MR. BRUNO:  That's fine.

 5              MR. HUBBARD:  Thank you, Your Honor.

 6              MR. BRUNO:  And the Safeco would apply to all other

 7    similarly situated forced place?

 8              MS. DAWSON:  Yes.

 9              THE COURT:  Yes.

10              MR. BRUNO:  Okay.

11              THE COURT:  Okay.  All right, well I appreciate it.

12    You have been as cooperative as possible.  Yes, sir?

13              MR. PENNISON:  Your Honor, Chris Pennison again.  I

14    just have one other housekeeping measure because Mr. Bruno did

15    mention at the beginning, the Austin case.  I don't know if

16    it's the intent to have Austin included in the administrative

17    closure or not.

18              THE COURT:  I thought it was.

19              MR. PENNISON:  The reason I ask is because there was

20    no motion filed on that.

21              THE COURT:  There was no motion.

22              MR. PENNISON:  But we don't have an opposition to

23    that.

24              THE COURT:  All right.

25              MR. SIEGEL:  Finally, as a matter of housekeeping, we

1   have a conference on February the 13th, I think, in this case.

2   If that stands, we'll go ahead and get together or -- I didn't

3   raise that to the Court whether it should be adjusted or held.

4               THE COURT:  Wait, hold on.

5               MR. BRUNO:  Is that the mandatory?

6               MR. SIEGEL:  Yes.

7               MR. BRUNO:  But we need that.

8               MR. SIEGEL:  Okay, all right.

9               THE COURT:  Is that in the Katrina umbrella case, you

10  mean?

11              MR. BRUNO:  Yes, yes.

12              THE COURT:  Oh, yes.

13              MR. BRUNO:  Yes, you need that.

14              THE COURT:  Oh no, no, no, I'm not going to postpone

15  that.

16              MR. SIEGEL:  Okay.

17              THE COURT:  No.

18              MR. HUBBARD:  I just have one final matter,

19  Your Honor.

20              THE COURT:  All right.

21              MR. HUBBARD:  I think that the answers are due on

22  February 1st in all of these cases.  That is now the deadline

23  for getting this order to administratively close it.  I wonder

24  if we could have a minute entry extending the time for

25  answering these four cases that we're talking about, by seven

1   days?

2          THE COURT:  Yes.

3          MR. HUBBARD:  Just so that we don't run, you know,

4   into extra paperwork.

5          THE COURT:  And that will be done.

6          MR. HUBBARD:  Thank you.

7          THE COURT:  All right.  Thank you very much and I

8   appreciate the spirit of cooperation.

9          MR. BRUNO:  Thank you.

10          THE COURT:  This is a hard, a rather multifaceted

11   problem and you all are doing as good a job as you can.  Thank

12   you very much.

13      (All Counsel respond, "Thank you, Judge.")

14          THE COURT:  We are adjourned.

15                        *   *   *   *   *

16                     (Hearing is Concluded)

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

       I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

**/s/Dorothy M. Bourgeois**           **1/27/07**
**Dorothy M. Bourgeois**              **Date**