UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NUMBER 05-4182 |
| | * | |
| | * | SECTION "K" (2) |
| LEVEE CASES | * | |
| PERTAINS TO: 06-7682 (Paul) | * | |
| | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |

**REPLY OF THE PUBLIC BELT RAILROAD
COMMISSION IN SUPPORT OF RULE 60(b) MOTION
FOR RECONSIDERATION OF ORDER REMANDING
CASE TO STATE COURT DUE TO MISTAKE OF FACT**

**I.    INTRODUCTION**

On January 16, 2007, this Honorable Court issued an Order and Opinion (document "doc." no. 2718), which granted the plaintiffs' motion to remand the *Paul* case to state court. The plaintiffs' remand motion is doc no. 1543.

Earlier, the plaintiffs had voluntarily dismissed CSX Transportation, Inc. ("CSX") and BNSF Railway Company, Inc. ("BNSF") as defendants in the *Paul* case, and the Court's Order and Opinion mistakenly stated that CSX and BNSF were "the only two parties who opposed the motion to remand, [and they] have been dismissed from the lawsuit." *Id.*, doc. no. 2718, p. 2.

-1-

In fact, the Public Belt had also opposed the plaintiffs' remand motion, but the Court failed to note or consider the Public Belt's opposition before granting the plaintiffs' remand motion.[1] Thus, on January 19, 2007, the Public Belt filed its Rule 60(b) Motion for Reconsideration of Order Remanding Case to State Court Due to Mistake of Fact (doc. no. 2731), which is set for hearing on February 7, 2007.

The plaintiffs filed a timely opposition to the Public Belt's Rule 60(b) Motion, which opposition is doc. no. 2881. In their opposition, the plaintiffs note the Public Belt's complaint that its remand "opposition was overlooked." Doc. No. 2881, p. 1. The plaintiffs then, <u>as they must</u>, concede that the "Public Belt makes a compelling argument of mistake . . ." *Id.* at 2.

In their Opposition, the plaintiffs do not refute that the Rule 60(b) Motion is properly supported by the Court's failure to consider the Public Belt's Remand Opposition before granting the plaintiffs' motion to remand. Rather, the plaintiffs' entire argument is directed to the merits of the remand issue itself; that is, the plaintiffs concede that the Court made an error of fact in not considering the Public Belt's remand opposition prior to granting the plaintiffs' remand motion, but they argue that, nevertheless, the remand Order is correct.

Thus, the Public Belt will respond herein to the arguments in the plaintiffs' opposition on the merits of the remand issue.

However, the Public Belt respectfully asserts that, because the remand order was improvidently granted due to a mistake of fact, the Court should <u>first</u> grant the pending Rule 60(b) motion and reverse the January 16, 2007, order and opinion remanding the *Paul* case to state court. Then, in due course, the Court should consider the merits of the remand issue.

In the alternative, the Public Belt respectfully requests the Court to consider and rule upon this motion for reconsideration as quickly as possible. If, as the Public Belt contends, this court has jurisdiction over the plaintiffs' claims against the Public Belt, that jurisdiction should be exercised as soon as possible.

---

[1] The "Memorandum of the Public Belt Railroad Commissions for the City of New Orleans in Opposition to Motion to Remand" (the Public Belt's "Remand Opposition") is doc no. 1969-3.

II. **ARGUMENT**

The defendant Public Belt is a common carrier and is engaged in interstate commerce, notwithstanding that the Public Belt operates solely in two Louisiana parishes. *City of New Orleans v. Texas and Pacific Railway Co.*, 195 F.2d 887, 889 (5th Cir. 1952). The operations of the Public Belt are subject to the Federal Rail Safety Act (the "FRSA") and the regulations adopted thereunder. The plaintifffs' state law claims against the Public Belt are completely pre-empted by the FRSA. This argument is fully set forth in the Public Belt's December 4, 2006 Remand Opposition. (doc. no. 1969-3), and those arguments will not be repeated herein.

Rather, the Public Belt will respond to the arguments in support of the motion to remand asserted by the plaintiffs in their January 26, 2007 "Memorandum in Opposition to 62(b) [sic] Motion for Reconsideration of Order of Remand" ( the "Plaintiffs' Opposition"). The Plaintiffs' Opposition is document no. 2881 herein.

A. **The Claims Against The Railroad Defendants Are Separate And Independent Within The Meaning of 28 U.S.C. §1441(c) And The Consent Of Other Defendants To Removal Is Not Required.**

The plaintiffs argue, first and very briefly, that because a co-defendant in the *Paul* case, the Louisiana Department of Transportation and Development, (the "DODT") did not consent to removal, the removal was improper, and the Motion to Remand was properly granted. Plaintiffs' Opposition, p. 2.

That argument is without merit.

The claims asserted in the *Paul* state court Petition against the Public Belt, CSX and BNSF (hereafter, the "Railroad Defendants"), are separate and independent from the other claims in the Petition.[2]

28 U.S.C. §1441(c) provides:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by [28 U.S.C. §1331] is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

---

[2] The *Paul* plaintiffs' Petition is included within Exhibit One to CSX's Notice of Removal in the *Paul* case, No. 06-7682.

A claim is "separate and independent" so as to support removal "if it involves an obligation distinct from the nonremovable claims in the case," *State of Texas v. Walker*, 142 F.3d 813, 817 (5th Cir. 1998), meaning that it involves a separate alleged wrong to the plaintiffs and does not involve substantially the same facts as the nonremovable claims. *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 104 (5th Cir. 1996).

The claims against the Railroad Defendants are "separate and independent" from the Petition's other claims, because they are based upon a different occurrence: a September 11, 2004 train derailment. The other defendants in the *Paul* case are governmental entities – the City of New Orleans, the Sewerage and Water Board of the City of New Orleans (the "S&WB"), the Board of Commissioners of the Orleans Levee District (the "OLD") and the DOTD. The claims against those governmental entities have nothing to do with the September, 2004 train derailment, but are based upon the alleged failures of those governmental entities to appropriately prepare for and prevent the damage from Hurricane Katrina.

The removable claims against the Railroad Defendants involve different facts, legal duties, parties, witnesses and transactions from the other claims comprising the Petition, and thus meet the "separate and independent" test under 28 U.S.C. §1441(c). Only the consent of the Railroad Defendants is required for removal under 28 U.S.C. §1441(c). *Henry v. Independent American Sav. Assoc.*, 857 F.2d 995, 999 (5th Cir. 1988) ("If one defendant's removal petition is premised on removable claims 'separate and independent' from the claims against other defendants, consent of the other defendants is not required."). All three Railroad Defendants consented to removal of the *Paul* case to federal court.[3]

By the plain terms of §1441(c), because the nonremovable claims or causes of action in the *Paul* case are "separate and independent," this entire action was properly removed to this Court.

---

[3]   The consents of the Public Belt and BNSF are Exhibit Two to CSX's Notice of Removal. Although not required, consents to removal were obtained from the S&WB, the OLD and the City of New Orleans (all defendants except DOTD). Those consents were attached as Exhibit Three *in globo* to CSX's Notice of Removal.

B.  **The Plaintiffs' State Law Negligence Claims Against the Public Belt for Failure to Properly Maintain and Repair Railroad Track Are Completely Preempted by the Federal Railroad Safety Act, 49 U.S.C. §s 20101-20117.**

At pages 3-4 of its December 4, 2006, Remand Opposition (doc. no. 1969-3), the Public Belt explained how, in response to recent Supreme Court pronouncements on complete preemption, the Fifth Circuit has refined its "complete preemption" analysis such that the proper focus of the analysis is now whether the preemptive statute in question was intended by Congress to provide an exclusive federal action, rather than whether Congress intended the claim to be removable. See *Haskens v. Bekins Van Lines*, 343 F.3d 769, 775-76 (5th Cir. 2003), and *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003).[4]

The Fifth Circuit has apparently never addressed whether the FRSA is a completely preemptive statute, but the Supreme Court has held that the FRSA preempts state law claims where "the federal regulations substantially subsume the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732 (1993).[5]

Thus, in those areas in which, pursuant to congressional authorization, the Department of Transportation has issued regulations mandating specific railroad safety standards, the requisites for complete preemption required by the Fifth Circuit have been met. The <u>only</u> allegations of negligence by the Public Belt asserted by the *Paul* plaintiffs

---

[4]  Under the Fifth Circuit test, for a statute to have complete preemptive effect, in addition to Congressional intent to provide an exclusive federal remedy, the statute (1) must contain a specific jurisdictional grant to the federal courts for enforcement of the right, and (2) must contain a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law. See, Public Belt's Remand Opposition, pp. 2 – 3 (doc. no. 1969-3).

The latter requirement is not mandated by Supreme Court precedent. See *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391 n.4 (1987) as discussed at p. 3 n.1 of the Public Belt's Remand Opposition. Nevertheless, the provisions of the FRSA implicated by the plaintiffs' allegations meet that test.

[5]  In *Easterwood*, the Supreme Court held that the plaintiffs' state law claims based on allegations that a train was traveling at excessive speed were completely preempted. Thus, the plaintiffs' contention that the FRSA is defensive and does not "afford[ ] complete preemption sufficient to create federal question jurisdiction and removal" [Plaintiffs' Opposition, p. 2; doc. no. 2881] is incorrect. One must examine the nature of the claims asserted, as explained hereafter.

involve repair and maintenance of railroad tracks. See Petition, ¶ 38(D) and (F).[6] The plaintiffs claims have been "substantially subsumed" by directly applicable regulations of the Federal Rail Administration ("FRA") that establish a nationally uniform system for track inspection, maintenance and repair. *See,* the Public Belt's Remand Opposition, p. 5; doc. no. 1969-3.

In *Lundeen v. Canadian Pac. Ry. Co.*, 447 F.3d 606, 614 (8th Cir. 2006), the Eighth Circuit found state law claims for personal injuries and property damage based upon negligent track inspection to be completely preempted. These are precisely the types of claims asserted in the instant case. The *Lundeen* Court found that the FRA regulations established a specific inspection protocol including how, when and by whom track inspections must be conducted. *Id.* at 614, quoting from *In re Derailment Cases*, 416 F.3d 787, 793-94 (8th Cir. 2005). The regulations establish a national railroad safety program intended to promote safety in all areas of railroad operations. *Id.* Federal and state inspectors determine the extent to which railroads, shippers and manufacturers have fulfilled their obligations with respect to, among other things, inspection, and railroads face civil penalties for violations. *Id.* It is clear that FRA regulations are intended to prevent negligent track inspection, and there is no indication the FRA intended to leave open a state law cause of action to deter negligent inspection. *Id.*

Earlier, in *Peters v. Union Pac. R.R. Co.*, 80 F.3d 257 (8th Cir. 1996), the Eighth Circuit had found complete preemption with respect to the state law certification claim asserted by the plaintiff, because the FRA had established a comprehensive administrative adjudication system for handling certification disputes which, the Court found, completely preempted the plaintiff's state law claims. However, in *Chapman v. Lab One*, 390 F.3d 620 (8th Cir. 2004), the Eighth Circuit found no FRSA preemption as to state law claims based upon alleged deficient performance in the drug testing process because " 'the applicable statute and regulations concerning drug testing do not establish an intent to preempt the substantive common law at issue,' where the FRA's drug testing

---

[6]   The *Paul* Petition alleged that "a train owned by [BNSF] and operated by employees of CSX . . . derailed at the location of Flood Gate W-30." *Id.,* ¶ 22. "The derailment began on tracks owned by the City of New Orleans and/or the New Orleans Public Belt Railroad Commission, and extended to tracks owned by CSX Transportation, Inc." *Id.,* ¶ 23.

regulations included an anti-waiver provision". *Lundeen*, 447 F.3d at 613, quoting *Chapman*, 390 F.3d at 628-29.

The *Lundeen* Court concluded that the plaintiffs' state law claims of "negligent inspection of railroad track" were completely preempted because "FRSA track inspection regulations lack the solicitude for state law demonstrated by the anti-waiver clause in *Chapman*." *Lundeen*, at 613-14. After analyzing the FRA inspection regulations, the *Lundeen* Court then stated: "It is clear the FRA regulations are intended to prevent negligent track inspection and there is no indication the FRA meant to leave open a state law cause of action." *Id.* at 614.

Quite recently, in *Kutilek v. Union Pacific Rr. Co.*, 454 F.Supp 2d 876 (E.D. Mo. 2006), the plaintiff's decedent had been struck and killed by a Union Pacific train at a railroad crossing, and the plaintiff brought a state court wrongful death action based upon negligence. The railroad removed the action to federal district court, and the plaintiff moved for remand.

Applying the *Lungreen* analysis, the *Kutilek* Court concluded that the plaintiff's claims for negligent operation, failure to monitor audible warning devices, and failure to monitor or install light warnings on the train were completely preempted. *Id.* at 883. To the extent that the plaintiff's claims included additional allegations of negligence, the Court determined that it would exercise supplemental jurisdiction over the non-preempted claims. *Id.* at 884.[7] Similarly, in *Gillenwater v. Burlington Northern and Santa Fe Railway Co.*, 435 F.Supp. 2d 959 (E.D. Mo. 2006), the Court found that the FRSA completely preempted the plaintiff's state law claims of negligent track inspection. *Id.* at 960-61.

As previously noted, the only claims asserted against the Public Belt in the *Paul* Petition are claims of negligent track repair and maintenance. Thus, pursuant to the analysis of the Eighth Circuit in the *Lundeen* case, the plaintiffs' claims against the Public Belt are completed preempted. To the extent that there may be claims pleaded against the Public Belt other than claims of negligent track repair and maintenance, the Court has supplemental jurisdiction over those claims. But if the Court finds, as did the

---

[7] The *Kutilek* decision and other decisions referencing the *Lundeen* decision are noted at p. 8 of the Public Belt's Remand Opposition.

Eighth Circuit, that claims of negligent track repair and maintenance are completed preempted by the FRSA, then this action was properly removed to this Court.

The analysis of the *Lundeen* Court is completely consistent with the Supreme Court's analysis of similarly-preempted claims in the *Easterbrook* case, and it is also fully consistent with the analysis applied by the Fifth Circuit to other federal statutes in *Haskins v. Bekin Van Lines*, *supra*, and *PCI Transportation, Inc. v. Forth Worth and W.R.R.*, 418 F.3d 535 (5th Cir. 2005), discussed at pp. 3-4 of the Public Belt's Remand Opposition (doc. no. 1969-3).

In their recent Opposition, the *Paul* plaintiffs do not even address the Public Belt's contention that their state law negligence claims are completely preempted by the FRSA, pursuant to the analysis of the *Lundeen* decision and its progeny, even though that argument was set forth in some detail in the Public Belt's Remand Opposition.

Instead, the plaintiffs create and attack their own "straw man," arguing at length that their claims are not preempted by the Interstate Commerce Commission Termination Act ("ICCTA"). The Public Belt addressed ICCTA preemption only in a final footnote of the final page of its Remand Opposition, where the Public Belt noted:

> Although the Public Belt does not read the plaintiffs' complaint as involving ICCTA, the plaintiffs raise ICCTA in their brief (Remand Motion at 8). To the extent that the plaintiffs' confusingly pleaded claims involve ICCTA, ICCTA's complete preemption serves as an additional basis to deny the plaintiffs' motion.

*Id.* at p. 9, n.5. The Public Belt's primary contention has always been that the plaintiffs' claims are preempted by the FRSA.

The complete failure, or refusal, of the plaintiffs to address the issue of the FRSA's complete preemption of the plaintiffs' claims related to track inspection and track maintenance provides further support of the validity of the Public Belt's argument.

## CONCLUSION

The Public Belt respectfully asserts that the Court made a mistake of fact when it granted the *Paul* plaintiffs' motion to remand that matter to state court without considering the arguments in favor of removal asserted by the Public Belt in its December 4, 2006 Remand Opposition.

Thus, the Public Belt urges the court to grant the pending Rule 60(b) Motion for Reconsideration of the remand Order now, and then in due course, consider the merits of the remand issue. Alternatively, the Public Belt respectfully requests that the Court consider and rule upon both the motion for reconsideration, and the merits of the plaintiffs' remand order, as quickly as possible.

With respect to the merits of the plaintiffs' remand motion, the motion is due to be denied.

It is not relevant that one of the defendants, the Louisiana DOTD, failed to consent to removal. The plaintiffs' claims against the Public Belt, and against the other railroad companies originally named defendants herein (but since voluntarily dismissed with prejudice by the plaintiffs), CSX and BNSF, are "separate and independent" from the claims against the other defendants herein within the meaning of 28 U.S.C. §1441(c), because those claims arise from a September 11, 2004 train derailment. The claims against the other defendants - all governmental entities - are based upon the alleged failure of those entities to appropriately prepare for and prevent the damage from Hurricane Katrina.

Finally, the plaintiffs' state law negligence claims against the Public Belt for failure to properly maintain and repair railroad tracks are completely preempted by the Federal Rail Safety Act and the regulations adopted pursuant thereto by the Federal Rail Administration.

Thus, in due course, the Court should deny the plaintiffs' remand motion and exercise its subject matter jurisdiction over this action.

Respectfully submitted,

HAMILTON, BROWN & BABST

_____
GALEN S. BROWN, T.A. (#3556)
KAREN E. MILNER (#8499)
601 POYDRAS STREET, SUITE 2750
NEW ORLEANS, LOUISIANA 70130
TELEPHONE: (504) 566-1805
FAX: (504) 566-1569
E-MAIL: gbrown@hamiltonfirm.net

Attorneys for Defendant, Public Belt Railroad Commission for the City of New Orleans

### CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this 6th day of February, 2007.

_____
GALEN S. BROWN