UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PAMELA SPEED, THERESA BERRY, | * | CIVIL ACTION |
| BRENDA HOLMES, AGNES POLLARD, | * | |
| BRIAN SIMMONS, TRISHA THOMAS, | * | NO. 06-11208 "K"(2) |
| CHRISTINE JACKSON, SONDRA | * | |
| DORSEY, FREDERICA PALMER, AND | * | JUDGE DUVAL |
| SIMUEL MILLER | * | |
| | * | MAG. WILKINSON |
| V. | * | |
| | * | |
| CITY OF NEW ORLEANS, BY AND | * | Removed from the Civil District |
| THROUGH THE NEW ORLEANS | * | Court for the Parish of Orleans, |
| PUBLIC BELT RAILROAD | * | State of Louisiana, Division "I-14" |
| COMMISSION, THE BURLINGTON | * | |
| NORTHERN AND SANTA FE | * | |
| RAILWAY COMPANY, BOARD OF | * | |
| COMMISSIONERS OF THE ORLEANS | * | |
| LEVEE DISTRICT | * | |

**MEMORANDUM IN SUPPORT OF BNSF RAILWAY COMPANY'S
MOTION FOR DISMISSAL UNDER RULE 12(B)(6)**

This memorandum is submitted by the BNSF Railway Company, f/k/a the Burlington Northern and Santa Fe Railway Company ("BNSF") in support of its Motion to Dismiss for failure to state a claim on which relief can be granted pursuant to FRCP 12 (b)(6).

Plaintiffs seek to expand the duty owed by the alleged ownership of track to include the protection of the community and population against flooding and property damage associated

1

with a natural disaster. The derailment made the subject of plaintiffs complaint against the railroad occurred over eleven months prior to Hurricane Katrina, BNSF was not in control or custody of the train at the time of the incident and efforts to repair the flood gate were well outside the responsibilities of the BNSF. The plaintiffs' claims attempt to stretch the limits of legal duty under Louisiana law, but creative pleading does not give rise to a duty owed. Moreover, the complaint seeks class actions status, but violates virtually every core pleading requirement of a class action. For these reasons, the claims should be dismissed pursuant to FRCP 12(b)(6).[1]

## BACKGROUND

Plaintiffs and putative class members filed this action seeking the recovery for property damages and bodily injury associated with flooding following Hurricane Katrina. The claims asserted by the plaintiffs seek recovery from nearly every local governmental entity, including the New Orleans Sewerage and Water Board, Orleans Levee District, Port of New Orleans and Louisiana Department of Transportation and Development arising out of various alleged statutory duties for the construction, maintenance, operation or protection of the City of New Orleans and the levee protection system surrounding it.

Plaintiffs' sole claim against BNSF and the railroad defendants arises out of a September 11, 2004 incident involving a train derailment that allegedly caused damage to Floodgate W-30 near the Inner Harbor Navigational Canal's west sea wall. BNSF is not alleged to have had any obligation whatsoever to maintain or otherwise repair the floodwalls or flood gates for levee protection in the City of New Orleans. Plaintiffs make no specific allegation as to BNSF other

---

[1] BNSF further adopts the argument of CSX Transportation as it relates to the issue of federal preemption as well as prior payment for repairs to the subject floodgate as set forth in in the consolidated levee litigation pending in this court, *In re Katrina Canal Breaches Consolidated Litigation*, 05-4182, (Doc. 1530).

than that it owned a locomotive involved in the derailment. (Petition for Damages, ¶ 4) Plaintiffs specifically acknowledge that BNSF was not operating the locomotive and was not in control of the train at the time the derailment occurred. (Petition for Damages, ¶ 4). Following the incident, repairs made by parties other than the BNSF were temporary in nature and the flood gate was not repaired at the time of Hurricane Katrina. As a factual matter, plaintiffs' allegation as to the ownership of the locomotive is simply inaccurate. In fact, Thomas Lobello, Jr., the Chief Operating Officer of the New Orleans Public Belt Railroad, a co-defendant, confirms that the locomotives involved in the derailment were owned by the NOPB Railroad. (Exhibit A, Affidavit of Thomas Lobello, Jr., previously filed in *Paul*, 04-4182).

Plaintiffs attempt to extend the duty for the protection and maintenance of a levee protection system to the BNSF. Plaintiffs and putative class members do not encompass the class of individuals to whom BNSF could possibly owe a duty in this context. The derailment occurred nearly one year prior to Hurricane Katrina, and repairs by another party were made prior to the storm. The BNSF had no right, duty or opportunity to make independent repairs to property owned and managed by the Orleans Levee District ("OLD"). BNSF had no duty or obligation to maintain or repair the flood gate, and plaintiffs cannot impose such a duty merely through pleading. Plaintiffs have failed to state a claim on which relief could be granted, and dismissal as to all claims asserted against BNSF is warranted.

### ARGUMENT

#### I.     The Complaint Pleads No Duty Owed By BNSF

"A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006). In Louisiana the existence of a duty and its scope are questions of law. *See Dupre v. Chevron, U.S.A., Inc.*, 20 F.3d

3

154, 159 (5th Cir. 1994.) The failure to allege a duty renders a complaint legally deficient. *Johnson v. United States*, 547 F.2d 688, 695 (D.C. Cir. 1976) (citing 5 C. Wright & A. Miller, *Federal Practice* § 1249 at 227-28 (1969)); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an interference fairly may be drawn that evidence on these material points will be introduced at trial" (citations omitted)).

Plaintiffs' sole allegation here is that BNSF owned a locomotive involved in a derailment. (Petition for Damages ¶ 4). Plaintiffs do not contend that BNSF operated the locomotive at the time of the incident. (Petition for Damages, ¶ 4). As an added factor, plaintiffs contention that BNSF owned a locomotive involved in the derailment is factually erroneous. As demonstrated by the attached affidavit of Thomas Lobello, Jr., the Chief Operating Officer of the New Orleans Public Belt, the only locomotives involved in the incident were NOPB locomotives. (Exhibit A, Affidavit of Thomas Lobello, Jr.). The derailment occurred in a location of track owned by the New Orleans Public Belt, and the train was being operated by the New Orleans Public Belt employees at the time the accident occurred. (See Affidavit of Jim Bridger attached to CSX Transportation Motion to Dismiss, Exhibit 4).

Plaintiffs acknowledge that the BNSF did not have custody or control of the train or locomotive at the time of the incident, and therefore it would not have any corresponding duty to plaintiffs or others. Indeed, as set forth in the Motion to Dismiss previously filed on behalf of the CSX Transportation in the *Bourgeois* and *Ferdinand* matters, payment was made for all damages associated with the derailment by the New Orleans Public Belt shortly following the derailment. (See Affidavit of Jim Bridger attached to CSX Motion to Dismiss, Doc. 1697). There is no legal basis for plaintiffs contention that BNSF owed a duty, and indeed it did not.

Plaintiff's offer no more than general allegations of negligence to all of the defendants. No specific claim is made as to any alleged duty owed by the BNSF. BNSF did not have care, custody or control of the train or locomotive involved in the derailment at the time of the incident, and here, plaintiffs do not allege that negligence by the BNSF caused or contributed to the derailment. The Petition for Damages fails to offer any legal or factual basis whatsoever that would give rise to a duty owed.

This Court and the parties are not required to speculate about plaintiffs' theory of duty. "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss,'" *Campbell*, 43 F.3d at 975 (citation omitted), and a court "need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation," *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990). Plaintiffs plead no facts whatsoever that would give rise to a duty owed by BNSF, and as a result, the plaintiffs claims should be dismissed.

**II.     BNSF Has No Duty To The Putative Class Members To Repair The Floodgate.**

Plaintiffs appear to contend that BNSF had a continuing duty to ensure that repairs on the floodgate were adequate to protect the entire citizenry from flood waters. (Petition for Damages, ¶ 7-11). Yet, the Petition for Damages offers no source for any such duty, and no basis for recognizing or creating such a duty. Tort duties, moreover must be owed to someone. That someone is not identified in the complaint. The suggestion that BNSF owed an open ended duty to the general public to repair a flood gate it neither owned nor controlled cannot be supported by any legal theory of duty. Again, as a factual matter, payment for damages to the floodgate had previously been made by the New Orleans Public Belt. (See Affidavit of Jim Bridger attached to

5

CSX Transportation Motion to Dismiss, in the consolidated levee litigation pending in this court, *In re Katrina Canal Breaches Consolidated Litigation,* 05-4182, (Doc. 1530).

In spite of that payment, plaintiffs generally suggest that every defendant, including the BNSF, owed a continuing duty to safeguard the designated class against natural disasters such as floods resulting from Hurricane Katrina. Yet at the same time, plaintiffs contend that the flood control system was within the sole authority, control and administration of the OLD. (Petition for Damages, ¶ 3). Thus, even accepting the plaintiffs' allegations in the Complaint as true, BNSF owed no duty to ensure that the repairs to the floodgate were made following the derailment.

Moreover, Congress has for several decades fixed upon a single entity – the Army Corps of Engineers, and not BNSF – the responsibility to protect United states populations from floods. *See* 33 U.S.C. § 701, *et seq.* (Congress mandated that Army Corps of Engineers is to provide hurricane and flood protection for the City of New Orleans). The Louisiana legislature in turn has imposed some level of responsibility upon the Board of Commissioners of the Orleans Levee District – again, not on BNSF. *See Bd. Of Comm'rs of the Orleans Levee District v. Dep't of Natural Res.,* 496 So. 2d 281, 289 (La. 1986) (Louisiana legislature has given this Board authority and duty to protect New Orleans citizens from damage by flood); *Volkswagon of America, Inc. v. Robertson,* 713 F.2d 1151, 1154 (5th Cir. 1983) (Orleans Levee District maintains the hurricane protection levees in the New Orleans area, in compliance with the designs, plans, specifications and requirements of the Corps of Engineers).[2] Congress presumably could have imposed nationwide flood protection responsibility upon private actors like BNSF had it chosen; it did not. Indeed, the Orleans Levee District has already acknowledged in the consolidated levee litigation that *it* – and

---

[2] This Court is intimately familiar with the statutory basis and history of the Corps of Engineers and the Orleans Levee Districts' roles in designing, building, maintaining and operating the levees, flood walls and gates surrounding New Orleans. *See* 05-6323-*Vanderbrook*, Order and Reasons (June 1, 2006) (Dkt. No. 469); 05-4568-*Harvey*, Order and Reasons (June 2, 2006) (Dkt. No. 476); 06-3529-*Laurendine*, Order and Reasons (Aug. 9, 2006) (Dkt. No. 888)

not BNSF – "maintains and operates flood control structures in accordance with specific contractual instructions from the United Sates Government, as well as state and federal regulations and statutes." 05-6073-*Kirsch*, Answer to Second Amended Class Action Complaint (July 25, 2006) at 7, 18 (Dkt. No. 813). Put simply, the BNSF had no duty, obligation or opportunity to make repairs to a flood gate owned and maintained by another party.

As fundamentally, tort law does not impose duties owed to a designated class. Duties in negligence are not owed to an "area" and are not owed to an entire city or city population. They are owed to specific people with whom one has a relationship or legally sufficient nexus. "[N]egligence does not exist in the abstract, it contemplates a legal duty owing from one party to another . . . ." *Tappen v. Ager,* 599 F.2d 376, 379 (10th cir. 1979).

Accordingly, "duty to the world" concepts like that being advanced here are regularly rejected, *See, e.g., Hamilton v. Beretta U.S.A. Corp.,* 96 N.Y.2d 222, 232 (2001) (a tort plaintiff "must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for 'without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.'" (citation omitted)); *In re New York State Silicone Breast Implant Litig.,* 632 N.Y.S.2d 953, 955-56 (Sup. Ct. 1995), *aff'd,* 642 N.Y.S.2d 681 (App. Div. 1996) (Courts will not impose a duty of care "enforceable by any member of an indeterminate class of persons, present and prospective, known and unknown, directly or indirectly injured by any negligence." (citation omitted)); *Bathelt v. Asbestos Defs.,* No. 010906321 AS, 2003 WL 21994732, at *3 (Utah Dist. Ct., 3d Dist. Feb. 21, 2003) ("There is no duty to the general public and plaintiffs have failed to demonstrate any special relationship between themselves and this defendant.')

7

Duty, in short, is a limiting principle. The scope of any tort duty BNSF owes to anyone in connection with the limited allegation of ownership of a locomotive is confined by the risk, harm, and plaintiff at issue. *See Dupre v. Chevron, U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994). "The essence of a scope of duty inquiry is whether the risk and harm encountered by the plaintiff fall within the scope and protection of the [law] . . . . Since the law never gives absolute protection to any interest, recovery will only be allowed if a rule of law on which the plaintiff relied includes within its limits protection against the particular risk that plaintiff's interests encountered." *Lazard v. Foti*, 859 So. 2d 656, 660-61 (La. 2003) (sheriff's duty to not hold a minor in an adult detention center did not encompass risk that released juvenile would be killed by a third party after his release).

Plaintiffs' sole allegation is that BNSF owned a locomotive involved in a derailment. As a factual matter, plaintiff's allegation is simply inaccurate, but moreover, ownership alone does not give rise to a duty to the plaintiffs. In no event could the BNSF possibly have a cognizable duty to protect the citizenry against flooding. Plaintiffs plead no facts whatsoever that would give rise to such a duty owed by BNSF, and the plaintiffs claims should be dismissed.

### III. Plaintiffs' Complaint Fails to Meet The Most Basic Pleading Requirements Of A Putative Class Action

Plaintiffs purport to prosecute this litigation on behalf of themselves and a class of "similarly situated" persons. But the Rules of this Court require that a party seeking class action status plead "allegations thought to justify the maintenance of the claim as a class action." Local Rule 23.1. This includes basic information such as facts identifying the named class representatives and how they relate to and can adequately represent the class proposed. It is not sufficient to recite the elements of Rule 23: "In a prospective class action ***the complaint should allege the existence of necessary facts*** showing that the prerequisites of Rule 23(a) have been

8

satisfied." *Batsakis v. FDIC*, 670 F. Supp. 749, 757 (W.D. Mich. 1987) (emphasis added) (citing *Peak v. Topeka Hous. Auth.*, 78 F.R.D. 78 (D. Kan. 1978)).  In particular, facts must be pled which, if proven, would satisfy each of the individual elements of Rule 23, and would establish that the action at hand can be certified for class treatment.  *In re Am Med. Sys., Inc.* 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)).

Just as they fail to plead a cognizable duty owed in tort, plaintiffs fail to plead the most elementary requirements of Rule 23.  For instance:

*1.* Plaintiffs allege no facts supporting their assertion that they are representative – or even members – of the class they propose.  Rule 23 requires that named plaintiffs set forth why they should be permitted to prosecute an action on behalf of others being absent from the litigation.  A named plaintiff who is not a class member does not have standing to sue on a proposed class's behalf, and cannot meet the commonality typicality and adequacy of representation requirements of Rule 23(a).  *See, e.g. Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 216 (1974); *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 518 (6th Cir. 1976).  At a minimum, then, the named plaintiffs must allege claims that mirror the claims of proposed class – representation of a class 'is not appropriate where the named plaintiffs have difference claims and/or circumstances than other members, thereby creating the possibility of a less than vigorous advancement of the case for all plaintiffs involved." *Reilly v. Gould, Inc.*, 965 F. Supp. 588, 600 (M.D. Penn. 1997) (dismissing class action allegations).  Thus, a plaintiff "cannot rely on the potential claims of unnamed parties to preserve causes of action that she cannot maintain herself." *Hilton v. Atlas Roofing Corp. of Miss.*, Civ. A. No. 05-4204, 2006 WL 1581239 at *2 (E.D. La. May 18, 2006).

The complaint here pleads plaintiffs' name and addresses. That is the totality of plaintiffs' pleading of identifying information about any plaintiff. There is no information contained regarding the nature of the alleged damages each of the representative plaintiffs seek, and moreover, the scope of damages alleged on behalf of the class include property damage, business losses, wrongful death and personal injury. It is impossible to glean from the petition filed in state court how the claimed representatives suffered damages as alleged on behalf of the entire class. The petition offers no information about property ownership, no information about the harms these plaintiffs suffered, no information about how BNSF's alleged conduct affected them, and no other information that would permit even conjecture about whether plaintiffs are within their own class definition or are suitable representatives.

2.  Plaintiffs fail to define a class of persons who have claims against BNSF with clarity and certainty. 5 *Moore's Federal Practice* § 23.2[1] (3d ed.). "It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (finding that "residents of this State active in the 'peace movement'" did not satisfy Rule 23's requirement of an adequately defined class). Plaintiffs seemingly bring this action on behalf of anyone who suffered any injury during or after Hurricane Katrina because of flooding. (*e.g.*, persons who allegedly suffered personal and/or mental and/or property, physical and/or economic damages as a result of flooding. (Petition for Damages, ¶ 1).

Putting aside plaintiffs' failure to allege any facts in support of their contention that they are representative of their proposed class, their class definition is so broad that it could include anyone with any property interest including the defendants. Even more, plaintiffs' class definition lacks sufficient clarity to determine whether it includes anyone supposedly damaged

10

by the alleged actions of BNSF that plaintiffs place at issue in this lawsuit. Plaintiffs' class definition falls far short of meeting Rule 23's requirements of "clarity and certainty."

3. Plaintiffs plead no facts suggesting adequacy of representation. Fed. R. Civ. P. 23(a)(4). The "adequacy" requirement of Rule 23(a)(4) is one of the most important elements because it is intended to protect the interests of the absent class members. Courts do not accept bald assertions of commonality, typically or adequacy of representation – all of which in any event, are missing here – but rather look for alleged *facts* that, if proven, would support these critical prerequisites to class certification. *Batsakis*, 670 F. Supp. At 757-58. When a court determines that the proposed class will not adequately protect class interests, it may dismiss the action. *Roman v. ESB, Inc.*, 550 F.2d 1343, 1356 (4th Cir. 1979). Plaintiffs' complaint alleges no facts indicating why or how their representation of the sweeping proposed class would be adequate or effective.

Class litigation is a departure from the norm in our judicial system of individual litigation. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). Plaintiffs seeking class treatment must from the outset plead facts which, if proven, would justify such a departure. Absent such pleading, dismissal of class allegations is appropriate. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th cir. 1985) (court did not abuse its discretion in refusing to allow class discovery where plaintiff could not plead prima facie case of class action); *Baum v. Great W. Cities, Inc.*, 703 F.2d 1197, 1210 (10th cir. 1983) (district court order granting motion to dismiss class action allegations affirmed); *Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003) (granting motion to dismiss where pleading requirements of Rule 23(b)(3) not met).

**IV.     Plaintiffs Claims Are Expressly Preempted Under Federal Law.**

All claims asserted by plaintiffs are expressly precluded under the doctrine of federal preemption. BNSF adopts, as if set forth herein, *in extenso,* the memorandum and argument on the issue of federal preemption filed by CSX Transportation in its Motion to Dismiss in *Paul*, 06-7682 (Doc. 1522 and 1530).

## CONCLUSION

Plaintiffs have failed to plead a specific basis for a duty owed by BNSF in connection with the flooding resulting from Hurricane Katrina and have failed to plead the requirements of a class action. All claims against BNSF should be dismissed.

Respectfully submitted,

FRILOT, PARTRIDGE, L.C.

_____
PATRICK A. TALLEY, JR. (#1616)
MICHAEL R. PHILLIPS (#21020)
CARL E. HELLMERS, III (#25705)
1100 Poydras Street, Suite 3600
New Orleans, LA 70163
Telephone: (504) 599-8000
Facsimile: (504) 599-8100
**Counsel for BNSF Railway Company f/k/a Burlington Northern and Santa Fe Railroad Company**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 5th day of January, 2007 served a copy of the foregoing on all counsel of record via facsimile and/or by the United State Postal Service properly addressed and postage prepaid.

_____