UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PAMELA SPEED, THERESA BERRY, BRENDA HOLMES, AGNES POLLARD, BRIAN SIMMONS, TRISHA THOMAS, CHRISTINE JACKSON, SONDRA DORSEY, FREDERICA PALMER, AND SIMUEL MILLER | * * * * * * * * | CIVIL ACTION<br><br>NO. 06-11208 "K" (2)<br><br>JUDGE DUVAL<br><br>MAG. WILKINSON |
| VERSUS | * * | |
| CITY OF NEW ORLEANS, BY AND THROUGH THE NEW ORLEANS PUBLIC BELT RAILROAD COMMISSION, THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT | * * * * * * * * * | Removed from the Civil District Court for the Parish of Orleans, State of Louisiana, Division "I-14" |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF THE PUBLIC BELT RAILROAD
COMMISSION FOR THE CITY OF NEW ORLEANS IN
SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(b)(6)**

I.  **INTRODUCTION**

The plaintiffs filed this action in the Civil District Court for the Parish of Orleans, State of Louisiana on November 21, 2006, against the Public Belt Railroad Commission for the City of New Orleans (the "Public Belt"),[1] the BNSF Railway Company

---

[1] The defendant is incorrectly referred to in the plaintiffs' state court petition as the "City of New Orleans, by and through the Public Belt Railroad Commission."

("BNSF"),[2] and the Board of Commissioners of the Orleans Levee District (the "Orleans Levee District"), seeking damages for property loss, damage to property, personal and mental anguish, and inconvenience (state court Petition, ¶ V.1) resulting from "flooding through the damaged and/or missing flood gate near the Industrial Canal in Gentilly during Hurricane Katrina . . .". *Id.*, ¶ III. 2.

BNSF removed the case to this Court on December 21, 2006.

The plaintiffs' claims against the Public Belt and BNSF arise solely from a September 11, 2004 train derailment that allegedly caused damage to Floodgate W 30 near the western sea wall of the Industrial Canal. Plaintiffs' state court removed Petition, ¶s III. 3 – 4.

The plaintiffs correctly allege that Floodgate W 30 on the western seawall of the Industrial Canal is "[i]ncluded within the flood control system under the authority, control and administration of the Orleans Levee District . . .". Plaintiffs' Petition, ¶ III. 3. In truth, as explained *infra*, La. R.S. 38:307 grants the Orleans Levee District the "full and exclusive" authority, control and administration of the flood control systems in a geographic area that includes the Industrial Canal flood control system. Federal law provides that the U.S. Army Corps of Engineers has the duty and responsibility to protect the population of the United States, including the City of New Orleans, from flooding. See, 33 U.S.C. §701, *et seq.*

By vague references to the duty of unspecified "Defendants" concerning the Industrial Canal flood control system, the plaintiffs infer that the Public Belt and BNSF owed a duty to the plaintiffs and/or to the public to protect them from flooding. The Public Belt and BNSF have no such duty. Rather, that duty has been vested in the Orleans Levee District and in the U.S. Army Corps of Engineers by the Louisiana legislature and by the U.S. Congress, respectively. No artful pleading on behalf of the plaintiffs can create such a duty on the part of the Public Belt or BNSF.

In addition, the plaintiffs' state law negligence claims are preempted by the Federal Railroad Safety Act and the Interstate Commerce Commission Termination Act of 1995.

---

[2]  The plaintiffs' Petition referred to that defendant as the Burlington Northern and Santa Fe Railway Company, its former name.

Thus, the plaintiffs' claims against the Public Belt, and the BNSF should be dismissed with prejudice.

Granting the plaintiffs leave to amend would be futile, because the Public Belt and BNSF had no duty to repair the damaged floodgate, or to protect the plaintiffs or the public from flooding, and because the plaintiffs' state law claims are preempted by federal law. The grant or denial of an opportunity to amend is within the discretion of the District court, but leave to amend need not be granted when amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962); *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 386-388 (5th Cir. 2003).

## II. ARGUMENT

### A. Standard of Review

Under F.R.C.P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The Court may not dismiss a claim unless it appears certain that the claimant cannot prove any set of facts in support of its claim that would entitle it to relief. *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 764 (5th Cir. 1996). However, conclusory allegations masquerading as factual conclusions will not defeat a motion to dismiss. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); see also *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974) (Conclusory allegations and unwarranted deductions of fact are not admitted as true). Courts do not have to accept "legal conclusions, 'unsupported conclusions,' 'unwarranted references,' or 'sweeping legal conclusions cast in the form of factual allegations.'" 5A, Wright & Miller, *Federal Practice and Procedure*, §1357, at 315-18.

### B. The Public Belt Does Not Have a Duty in Tort to Repair Floodgate W 30, Nor Is It Permitted by Law to Repair a Floodgate.

Pursuant to state law, the Board of Commissioners of the Orleans Levee District has full and exclusive jurisdiction over the levees and flood control structures within its jurisdiction, and its jurisdiction includes the levees and flood control structures of the Inner Harbor Navigational Canal (known as the Industrial Canal) and the other canals in Orleans Parish that are connected to Lake Pontchartrain.

La. R.S. 38:307(A)(1) provides, in pertinent part:

**Orleans Levee District; powers of board of commissioners**

The board of commissioners of the Orleans Levee District ... shall have full and **exclusive** right, jurisdiction, power, and authority to locate, relocate, construct, maintain, extend, and improve levees, embarkments, seawalls, jetties, breakwaters, water-basins, and other works in relation to such projects . . . along, over, and on the shores, bottom, and bed of Lake Pontchartrain in the parish of Orleans from its western boundary to the boundary line separating township 11 south, range 12 east, from township 11 south, range 13 east, at a distance not to exceed three miles from the present shore line, as the board may determine, and along and on the shores adjacent to the lake and along the canals connected therewith. The levees, embankments, seawalls, jetties, breakwaters, waterbasins, and other works shall be of such character and extent and of such height, width, slope, design, and material as the board determines, with power and authority to improve and to protect the same with such other structures as are deemed necessary and proper by the board.

*Id.*; emphasis supplied.

The Public Belt Railroad Commission for the City of New Orleans is an autonomous political subdivision of the State of Louisiana, analogous to the Sewerage & Water Board of New Orleans. *Cooper v. Public Belt Railroad*, 2003-2116 (La. App. 4th Cir. 10/6/04), 886 So.2d 531, 536-37, *writ denied*, 2004-2748 (La. 1/28/05), 893 So.2d 75.[3] La. R.S. 33:4530(C) provides that the "control, operation, management and development of the public belt railroad system shall be exclusively vested in" the Public Belt Railroad Commission for the City of New Orleans.

The Public Belt has no duty and no power to maintain or repair any floodgates, levees or flood control systems. The limited delegation of power by the legislature to the Public Belt authorizes the Public Belt only to control, operate, manage and develop a public belt railroad system.

In addition, the Public Belt has never had custody, control or *garde* of Floodgate W 30, or any floodgate, levee, or portion of any flood control system. The plaintiffs allege, correctly, that Floodgate W 30 is included in the flood control system under the

---

[3]   Article VI Section 44(1) of the Louisiana Constitution defines "local political subdivision" to mean "any parish or municipality," and Section 44(2) defines "political subdivision" to mean "a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions."

authority, control and administration of the Orleans Levee District. Petition, ¶ III. 3. The plaintiffs do not allege that Floodgate W 30 is part of the Public Belt's railroad system, or that the Public Belt ever had custody, control or *garde* of Floodgate W 30 or any portion of the flood control system of the Industrial Canal, nor could they truthfully make such an allegation.

Recently, in the Katrina Canal Breaches Consolidated Litigation, Civil Action No. 05-4182, consolidated with others, this Court granted the City of New Orleans' Motion to Dismiss for Failure to State a Claim in several cases. Order and Reasons (September 13, 2006), Document No. 1133. That decision stated:

> The gravamen of the City's motion is that plaintiffs in these cases seek damages allegedly caused by the breach of the levees and flood walls in the aftermath of Hurricane Katrina. However, as the City of New Orleans does not own and has no *garde*, care, custody of control of the levees in question, and the City of New Orleans did not participate in the design, construction, or maintenance of the levees, no cause of action lies against it.
>
> . . . [S]tatutorily, the City of New Orleans is not responsible for the levees. La. Rev. Stat. 38:307 provides that the Board of Commissioners of the Orleans Levee District has the full and exclusive right and jurisdiction over the levees and La. Rev. Stat. 38:301 provides that the levee districts have the right to maintain levees. Thus, it is clear that there are no duties which the City of New Orleans has with respect to the levees.

*Id.*, p. 1.

The Court was correct in concluding that the City has no duties with respect to the levees. The City is a general purpose, "local political subdivision" pursuant to Article III, Section 44(1) of the Louisiana Constitution and it possesses broad police powers and authority granted by the legislature and pursuant to its Home Rule Charter, which Charter is also the result of a legislative grant of authority. **If the City has no duties with respect to the design, construction, or maintenance of the levees, then a limited purpose political subdivision, such as the Public Belt, with limited, defined powers to control, operate, manage and develop a public belt railroad system, certainly has no duties with respect to the levees, floodgates or any part of the flood control system.**

If a public school bus had damaged an Industrial Canal floodgate on September 11, 2004, then presumably the plaintiffs would have named the Orleans Parish School Board as a defendant responsible for the flooding resulting from Hurricane Katrina. But creative pleading does not give rise to a legal duty. Limited purpose political subdivisions such as the School Board or the Public Belt, and private railroad companies such as BNSF, have no duties with respect to maintenance or repair of levees, floodgates, or any part of the flood control system.

The Public Belt owes no duty to the plaintiffs, or to the public, concerning flood control. Under the duty risk analysis, the plaintiffs must prove (1) that the conduct in question was the cause-in-fact of the resulting harm, (2) the defendant owed a duty of care to the plaintiffs, (3) the requisite duty of care was breached by the defendant, and (4) the risk of harm was within the scope of protection afforded by the duty breached. *Lazard v. Foti*, 02-2888 (La. 10/21/03), 859 So.2d 656, 659; *Roberts v. Benoit*, 605 So.2d 1032, 1041-42 (La. 1992). To recover, a plaintiff must prove all four elements. *Lazard*, at 659; *Roberts*, at 1042.

A threshold issue in any negligence case action is whether the defendant owed the plaintiffs a duty. *Lazard*, at 659. Whether a duty is owed is a question of law. *Id.* Thus, if the Public Belt can establish that it owed no duty to the plaintiffs or the public concerning flood control, this motion to dismiss should be granted as a matter of law.

In *Safford v. Bayou Lafourche Fresh Water District*, 03-0700 (La. App. 1st. Cir. 2/23/04), 872 So.2d 1127, *writ denied*, 04-0747 (La. 5/7/04), 872 So.2d 1086, the plaintiff, who owned riparian land along Bayou Lafourche near Donaldsonville, constructed a bulkhead, a dog pen and boat shed along the Bayou. *Id.*, at 1129. He sued the Bayou Lafourche Water District, seeking damages for flooding to those structures due to elevated water levels allegedly caused by the Water District's operation of pumps along the Bayou, pursuant to its statutory duty to provide fresh water to the surrounding area. *Id.* at 1128-29.

The Court of Appeal found that the Bayou Lafourche Water District had no duty to the plaintiff, or to the public, concerning flood control. The Court stated:

> <u>In reviewing the question of whether the District's actions constituted negligence, we conclude it owed no duty toward Mr. Safford with regard to the property at issue. The police power of the state</u>

> encompasses the exercise of its sovereign right to promote the general welfare of society, including the inherent right to protect citizens from damage by flood. *Board of Commissioners of Orleans Levee District v. Department of Natural Resources*, 496 So.2d 281, 289 (La. 1986). The legislature may delegate, either expressly or implicitly, the exercise of the police power to subordinate boards, commissions, or political corporations. *Id.* The legislature has delegated the task of ensuring an adequate supply of fresh water in Bayou Lafourche to the District; it has not delegated any duty or responsibility of flood control to the District. In *Board of Commissioners of Lafourche Basin Levee District v. Board of Commissioners of Atchafalaya Basin Levee District*, 340 So.2d 600, 602 (La. App. 1st Cir. 1976), this court confirmed the limited function and duties of the District by observing that "the purpose of [Acts 1950, No. 113] was to provide fresh water for drinking purposes rather than for the maintenance of a channel for navigation in Bayou Lafourche."

*Id.*, at 1130-31; emphasis supplied; footnote omitted.

With respect to the instant matter, the legislature has delegated to the Public Belt the duty of controlling, operating, constructing, maintaining and developing a public belt railroad system for the City of New Orleans, and the legislature has delegated to the Orleans Levee Board the "full and exclusive" duty of flood control within a geographic area that includes the Industrial Canal, its levees, floodgates and other appurtenances. La. R.S. 38:307.

The legislature has not delegated any duty or responsibility to the Public Belt concerning flood control, or the maintenance or repair of flood control improvements. If a Water District that operates pumping stations along Bayou Lafourche pursuant to its statutory duty to provide fresh water to the surrounding area has no duty or responsibility concerning flood control along Bayou Lafourche, then it is clear beyond peradventure that the Public Belt has no duty or responsibility concerning flood control along the Industrial Canal.

There is no pleading by the plaintiffs, regardless of how artful, that can create such a duty on the part of the Public Belt. Allowing the plaintiffs to amend to attempt to set forth such a duty would be futile. *Foman v. Davis, supra*; *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc., supra*.

The claims of the plaintiffs against the Public Belt are due to be dismissed for failure to state a claim upon which relief may be granted.[4]

### C. Plaintiffs' Claims are Expressly Preempted Under Federal Law.

All claims asserted by the plaintiffs are preempted by two separate railroad regulatory schemes – the Interstate Commerce Commission Termination Act of 1995 and the Federal Railroad Safety Act. The Public Belt adopts, as though set forth herein *in extenso*, the memoranda and argument on the issue of federal preemption filed by CSX Transportation in support of its Motion to Dismiss in the *Paul* case, No. 06-7682. Those memoranda are in Documents No. 1522 and 1530 in the Katrina Canal Breaches Consolidated Litigation, No. 05-4182.

### III. CONCLUSION

The Public Belt has no duty to the plaintiffs, or to anyone, to protect them from flooding, nor does it have any duty to maintain or repair flood control structures.

In addition, the plaintiffs' claims are preempted by federal law.

Thus, the claims of the plaintiffs against the Public Belt are due to be dismissed, for failure to state a claim upon which relief may be granted.

---

[4] If this motion to dismiss is denied, then in due course, the Public Belt will file a motion for summary judgment, showing that it obtained an estimate dated October 18, 2004, from Boh Bros. Construction Company, LLC, for repairs to Floodgate W 30 that was damaged on September 11, 2004, and that on November 11, 2004, Anthony Marinello, Manager of Engineering and Maintenance for the Public Belt, wrote a letter to Stevan Spencer, Chief Engineer of the Orleans Levee District, transmitting a copy of the Boh Bros. estimate and description of the proposed repairs to Floodgate W 30, and offered to have Boh Bros. perform the repairs at the expense of the Public Belt. The Levee Board refused the offer of the Public Belt to have Boh Bros undertake the repairs to Floodgate W 30 at the Public Belt's expense.

Instead, in December, 2004, the Levee Board, for the first time, provided the Public Belt with its own estimated costs of repairs. The Public Belt promptly hand-delivered a check to the Levee Board in the amount of $427,387.96, the full amount of the Levee Board's estimated costs of repairs to the floodgate. See, the affidavit of Jim Bridger, General Manager (Chief Executive Officer) of the Public Belt, attached as Exhibit 1 to the Motion for Summary Judgment of CSX Transportation, Inc. in the *Bourgeois* case, No. 06-5131, one of the cases in the Katrina Canal Breaches Consolidated Litigation, No. 05-4182. CSX's Motion to Dismiss/For Summary Judgment in the *Bourgeois* case is Doc. No. 1697 in those consolidated cases.

Respectfully submitted,

HAMILTON, BROWN & BABST

*Galen S. Brown*
GALEN S. BROWN, T.A. (#3556)
KAREN E. MILNER (#8499)
601 POYDRAS STREET, SUITE 2750
NEW ORLEANS, LOUISIANA 70130
TELEPHONE: (504) 566-1805
FAX: (504) 566-1569
E-MAIL: gbrown@hamiltonfirm.net

Attorneys for Defendant, Public Belt Railroad Commission for the City of New Orleans

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this 31st day of January, 2007.

*Galen S. Brown*
GALEN S. BROWN