UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PAMELA SPEED; THERESA BERRY; | * | CIVIL ACTION |
| BRENDA HOLMES; AGNES POLLARD; | * | |
| B BRIAN SIMMONS; TRISHA THOMAS; | * | NO: 2:06-cv-11208-SRD-JCW |
| CHRISTINE JACKSON; SONDRA | * | |
| DORSEY; FREDERICA PALMER; and | * | JUDGE: SRD |
| SIMUEL MILLER | * | |
| | * | MAG.: JCW |
| versus | * | |
| | * | |
| CITY OF NEW ORLEANS, BY AND | * | |
| THROUGH THE NEW ORLEANS PUBLIC | * | |
| BELT RAILROAD COMMISSION; | * | |
| THE BURLINGTON NORTHERN AND | * | |
| SANTA FE RAILWAY COMPANY; and | * | |
| BOARD OF COMMISSIONERS OF THE | * | |
| ORLEANS LEVEE COMMISSION | * | |

*********************************************

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND[1]

**MAY IT PLEASE THE COURT:**

The current matter has been removed by defendant, Burlington Northern and Santa Fe Railway Company ("BNSF"), from the Civil District Court for the Parish of Orleans on the

---

[1] Plaintiffs would like to acknowledge William C. Gambel, Esq. whose memorandum in support of remand was successfully used to obtain remand in *Paul v. Sewerage and Water Bd. Of New Orleans*, Docket # 06-7682 (USDC EDLa) (copy of order of remand attached as Exhibit "A"). The memorandum submitted by Mr. Gambel, addressing identical facts and applicable law as the above captioned matter, was used in preparing this memorandum.

grounds that the underlying cause of action is preempted by the Federal Railroad Safety Act ("FRSA") 49 USC §§20101-20117 and Interstate Commerce Commission Termination Act ("ICCTA") 49 USC §10101, *et seq.* and therefore gives rise to federal question jurisdiction. For the reasons that follow, the relied upon statutes do not give rise to federal question jurisdiction, and this Court must remand this case pursuant to 28 USC §1447(C), as subject matter jurisdiction is lacking.

Plaintiffs originally filed their petition for damages in state court asserting state law negligence claims for damages to property and personal injuries for themselves and others similarly situated, as a result of the damage to Flood Gate W-30 and the consequent flooding of the City of New Orleans.

Gate W-30 is part of the flood wall system situated immediately west of, and running in a north-south direction parallel to the Industrial Canal just north of the I-10 highrise. Railroad tracks run east-west across the Industrial Canal near the location of Gate W-30. On September 11, 2004, a locomotive owned by BNSF picked up several cars in the Almonaster/France Road Industrial area of the City of New Orleans and began proceeding on the railroad tracks owned by the New Orleans Public Belt Railroad ("NOPBRR"). When this train derailed, extensive damage was caused to Gate W-30 resulting in a 32.5 foot wide gap in the area's flood protection. These damages had not been repaired when Katrina made landfall, leaving the adjacent area vulnerable to flooding.

BNSF alleges that the claims asserted herein are preempted by the FRSA. The cases relied upon are, for the most part, Motion to Dismiss or Motion for Summary Judgment cases,

not removal cases.² What BNSF neglects to recognize is that neither FRSA nor ICTA are complete preemption statutes, and generally may only be raised as a defense against the claims asserted. These asserted claims do not arise under federal law, though federal law may be a defense to some or all of them.

A federal defense does not create federal question jurisdiction under 28 U.S.C. §1331. *Franchise Tax Board v. Const. Laborers Vacation Trust for Southern California*, 463 U.S. 1, 103 S.Ct. 2841 (1983)("a case may not be removed to federal court on the basis of a federal defense . . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."). Pursuant to "ordinary conflict preemption," state laws that conflict with federal laws are preempted, and preemption is asserted as "…a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63; 107 S.Ct. 1542; 95 L.Ed.2d 55 (1987).

Stated otherwise, Plaintiffs' state law claims are not preempted merely because FRSA or ICTA may be implicated. "(F)ederal preemption is merely a defense to a plaintiff's state-law claim, and it does not alter the jurisdiction of the federal court." *Chapman v. Lab One,* 390 F.3d 620, 625 (8th Cir. 2004).

The Fifth Circuit, acting *en banc*, rejected the argument that FRSA mandated federal question jurisdiction and ordered remand of a railroad crossing case against Illinois Central

---

² The one removal case it cites, *Peters v. Union Pacific R.R.,* 80 F.3d 257 (8th Cir. 1996), is hardly a FRSA case. That case involved the refusal to reissue a locomotive certification following a suspension. The Federal Railway Administration has an engineer certification dispute procedure, and "Peters failed to exhaust available administrative remedies. The adversely affected party would have had two levels of appeal within the administrative structure. 49 C.F.R. §§ 240.407, 240.411. Peters chose not to avail himself of this procedure and cannot now complain that he has no available remedy." *Peters* at p. 263

Railroad Company, the operator of the train in *Smallwood v. Ill. Cent. R.R.*, 385 F.3d at 571 (5th Cir. 2004). In *Beers v. North American Van Lines, Inc.*, 836 F2d.910 (5th Cir. 1988), the Fifth Circuit relied on the lack of clear Congressional intent that state-law claims be removable in holding that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, did not completely preempt state law claims for loss or damage to goods during interstate transportation by a common carrier.[3]

"Federal courts are courts of limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Congress has provided the federal courts with jurisdiction over "all civil actions arising under the Constitution, laws, and treaties of the United States." 28 U.S.C. §1331. To determine whether removal jurisdiction is present, the Court must consider the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995). The party seeking removal bears the burden of proving that the Court has subject matter jurisdiction. *See, e.g., Manguno v. Prudential Property & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir.2002). Federal courts must presume that all suits lie outside their limited jurisdiction, *id.*, and any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root*, 200 F.3d 335, 339 (5th Cir. 2000). Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *Acuna* at 339.

The doctrine of preemption arises from the Supremacy Clause of the Constitution. When invoked, the doctrine requires that state law give way when it is in conflict with or frustrates

---

[3]  Although not raised here, the Eleventh Circuit applied the rule to ICTTA in *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1328-29 (11th Cir. 2001) ( Although the federal government through the ICCTA has legislated in an area where there has been a history of significant federal presence . . . West Palm Beach is acting under the traditionally local police power of zoning and health and safety regulation.)

federal law. U.S. Const. art. VI, cl. 2. State law is preempted when Congress expressly prohibits state regulation, when Congress implicitly leaves no room for state involvement by pervasively occupying a field of regulation, and when state law directly conflicts with federal law. Federal regulations also may preempt state law, if the agency intends its regulations to have preemptive effect, and the agency is acting within the scope of its delegated authority.

In the ordinary case, federal preemption is merely a defense to a plaintiff's state-law claims, and it does not alter the jurisdiction of the federal court.[4] In some extremely rare instances, the doctrine of "complete preemption" establishes more than a defense to a state-law claim. On occasion, the Supreme Court has concluded that "the pre-emptive force of a statute is so 'extraordinary' that it 'converts' an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Marcus v. AT & T Corp.*, 138 F.3d 46, 53 (2nd Cir.1998).

> The limited applicability of the complete preemption doctrine is evidenced by the fact that the Court has only approved its use in three areas: (1) claims under the Labor Management Relations Act by a labor union against an employer under a collective bargaining agreement, but not claims arising from individual employment contracts; (2) Employment Retirement and Insurance Security Act ("ERISA") suits by a beneficiary, but not suits by a state against an ERISA plan; and (3) certain Indian land grant rights. Thus, after Metropolitan Life, it is clear that the complete preemption doctrine applies only where Congress has clearly manifested an intent to disallow state law claims in a particular field.

*Marcus*, 138 F.3d at 54 (citations omitted). In short, "after *Metropolitan Life*, there is no complete preemption without a statement to that effect from Congress." *Marcus*, 138 F.3d at 55 (*citing, Metropolitan Life*, 481 U.S. at 65).

---

[4] "'[C]onflict' preemption, as we noted in *Vorhries*, 'is merely a defense to the merits of a claim....' We see nothing in the Locomotive Inspection Act to indicate 'that Congress clearly intended completely to replace state law with federal law and create a federal forum' at the same time. That is what would be necessary to create 'complete' or 'field' preemption, as opposed to the more routine conflict preemption." *Adkins v. Illinois Cent. R. Co.*, 326 F.3d 828, 835 (7th Cir. 2003)

### *FRSA and ICTA are not complete preemption statutes.*

In *Smallwood*, the plaintiff, a Mississippi resident, was injured in a railroad crossing accident by a train operated by the Illinois Central Railroad Company (Illinois Central), an Illinois corporation. *Smallwood*, 385 F.3d at 571-72. The railroad crossing was maintained by the Mississippi Department of Transportation (MDOT) with equipment purchased with federal funds. Smallwood sued both Illinois Central and the MDOT in Mississippi state court solely on state law causes of action. Illinois Central removed the case to federal court where it argued that Smallwood's negligence claims against the MDOT were preempted by FRSA, and, as such, that MDOT had been improperly joined. The district court agreed and denied remand because there was no realistic reason to believe that Smallwood could recover against the non-diverse MDOT. The district court granted summary judgment in favor of Illinois Central on precisely the same preemption ground. *Smallwood v. Ill. Cent. R.R.*, 2002 U.S. Dist. LEXIS 27674, *13-17 (S.D.Miss. Aug. 13, 2002).

The *Smallwood* court, sitting *en banc*, held that "[t]he railroad could not remove on the basis of federal question jurisdiction because the only federal question [, Illinois Central's claim of FRSA preemption,] appeared as a defense." *Smallwood*, 385 F.3d at 575-6. Thus, the *Smallwood* court reversed the district court's judgment and directed remand to state court.

The court in *Chapman v. Lab One*, 390 F.3d 620 (8th Cir. 2004), also rejected the argument that FRSA commands complete preemption of state negligence law. There the Court held that FRSA did not preempt the underlying state law claims such that FRSA could provide a basis for removal. *Chapman*, 390 F.3d at 629.

Similarly, *Adkins v. Illinois Cent. R. Co.*, 326 F.3d 828 (7th Cir 2003) held that the

Locomotive Inspection Act (LIA) did not provide a basis for federal jurisdiction under the complete preemption doctrine in an action brought by injured train passengers and survivors of those killed in train collision against locomotive manufacturer. The court held that nothing in the LIA indicated that Congress clearly intended completely to replace state law with federal law and create a federal forum at the same time. 49 U.S.C.A. 20701 *et seq. Adkins* offers this discussion of complete preemption and remand:

> The discussions in our recent decisions in *Tyson Foods, supra*, and *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398 (7th Cir. 2001), and the Supreme Court's latest word on the question in *Sprietsma v. Mercury Marine*, 537 U.S. 51, 123 S.Ct. 518, 526-30, 154 L.Ed.2d 466 (2002) (analyzing Federal Boat Safety Act's preemptive effect), underscore how narrow the ill-named "complete preemption" doctrine is. As we stressed in *Tyson Foods* and *Vorhees* and as we stress again here, this does not mean that the federal statute in question – here the Locomotive Inspection Act – does not have preemptive force. To the contrary, ordinary conflict preemption may well exist with respect to some or all of the claims. But "conflict" preemption, as we noted in *Vorhees*, "is merely a defense to the merits of a claim. As such, according to the well-pleaded complaint rule, it does not provide a basis for federal question jurisdiction." 272 F.3d at 403. We see nothing in the Locomotive Inspection Act to indicate that Congress "clearly intended completely to replace state law with federal law and create a federal forum" at the same time. *Id.* That is what would be necessary to create "complete" or "field" preemption, as opposed to the more routine conflict preemption. *Adkins*, 326 F.3d at 835.

The same is true of ICTA. BNSF can make no showing "to indicate 'that Congress clearly intended completely to replace state law with federal law and create a federal forum' at the same time. That is what would be necessary to create 'complete' or 'field' preemption, as opposed to the more routine conflict preemption." *Adkins,* 326 F.3d at 835. ICTA does not provide a private right of action for a person aggrieved by negligence, and the absence of an alternative cause of action militates against a finding of complete preemption under *Lab One*, supra.

Finally, as noted *infra*, the Fifth Circuit in *Beers v. North American Van Lines, Inc.*, 836 F2d.910 (5th Cir. 1988), relied on the lack of clear Congressional intent that state-law claims are removable in holding that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §14706, did not completely preempt state law claims for loss or damage to goods during interstate transportation by a common carrier. The Eleventh Circuit has followed suit in *Fl. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1328-29 (11th Cir. 2001).

**Remand is appropriate when ordinary conflict preemption is at issue.**

In *Southeast Texas Environmental, L.L.C. v. BP Amoco Chem. Co.*, 329 F.Supp.2d 853 (S.D. Tex. 2004), Judge Kent stated:

> Defendants do not explain how this alleged statutory defense provides the Court with subject matter jurisdiction. The Court can only suppose that Defendants seek to establish federal question jurisdiction by virtue of . . . certain provisions of CERCLA. Even assuming that (CERCLA) furnishes a defense against Plaintiffs' claims, this argument goes to the merits of the case, not to the Court's jurisdiction. The well-pleaded complaint rule dictates that subject matter jurisdiction cannot rest on a federal defense. *See Rivet v. Regions Bank of Louisiana*, 522 U.S. at 478, 118 S.Ct. at 925 (1998). ("A defense is not part of a plaintiffs properly pleaded statement of his or her claim."). Accordingly, "a case may not be removed to federal court on the basis of a federal defense, … even if the defense is anticipated in the plaintiffs complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Id.* (citing *Franchise Tax Bd.*, 463 U.S. at 14, 103 S.Ct. at 2848. While the AOC's "Contribution Protection" provision may bode ill for Plaintiffs' claims, it does not support removal jurisdiction.
>
> Defendants maintain that Plaintiffs' state-law claims are preempted by CERCLA and therefore arise under federal law. Ordinary conflict preemption, however, does not support subject matter jurisdiction. See *Rivet*, 522 U.S. at 478, 118 S.Ct. at 925. Even assuming that state-law contribution claims are preempted by CERCLA, this argument fails to establish that Plaintiffs' claims arise under federal law.

*Southeast Texas Environmental*, 329 F.Supp.2d at 859-60.

Further, in *America First Communications, Inc. v. Shadowlands*, 2004 WL 32936 (E.D.

La. 2004), Judge Vance of this Court, held:

> In short, Shadowlands confuses complete preemption and ordinary preemption. The doctrine of complete preemption is inapplicable here, and although ordinary conflict preemption may apply, Shadowlands may assert this doctrine only as a defense. As a defense, conflict preemption does not support removal because there is no federal claim on the face of plaintiff's complaint. This Court therefore lacks jurisdiction to entertain this action.*Shadowlands* at *4.

Remanding the case to state court, Judge Vance added:

> The Court is therefore confident that the state court, pursuant to the overwhelming weight of federal and state precedent, will be able to recognize the validity of the preemption defense and dismiss the action. *Shadowlands* at *4.

Judge Goodwin in *Arlia ex rel. Massey Energy Co. v. Blankenship*, 234 F. Supp. 2d 606 (S.D.W.Va. 2002) said it this way:

> Under ordinary conflict preemption, state laws that conflict with federal laws are preempted, and preemption is asserted as "a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." ... (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). In contrast, "[i]n the case of complete preemption . . . Congress 'so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Id*. at 187. In determining that this case is not removable, the court is only deciding the latter question--complete preemption. A claim may be preempted by federal law but not be completely preempted so as to give rise to federal question jurisdiction. Accordingly, this court's ruling that the plaintiffs claim is not completely preempted is not determinative of whether the claim is nonetheless preempted under ordinary principles of conflict preemption. On remand, if the West Virginia court is inclined to recognize the Diamond rule and permit this derivative action, the defendants may attempt to raise ordinary conflict preemption as a federal defense to that claim.

*Arlia*, 234 F.Supp.2d at 613.

### The Cases cited by BNSF do not support removal.

To support removal, BNSF primarily offers "ordinary conflict preemption" cases to support its argument. However, none purport to support removal. Specifically, *Mehl v. v.*

*Canadian Pacific Railway*, 417 F. Supp. 2d 1104 (D.N.D. 2006) is a 12(b)(6) case, (state law is preempted when it conflicts) and "*CP Rail* direct(ed) the courts attention to numerous regulations which it asserts cover(ed) each of the Plaintiffs negligence claims." *Mehl,* 417 F. Supp. 2d at 1115.

The same can be said of *In re: Derailment Cases*, 416 F3d 787 (8th Cir. 2005) and *Federal Ins. Co. v. Burlington Northern and Santa Fe Ry.,* 270 F.Supp.2d 1183. (C.D. Cal. 2003). Both of these were Summary Judgment cases. There is no mention of federal question jurisdiction or any inquiry as to whether the federal preemption involved converted plaintiffs' cases into one arising under federal law in either opinion. In fact, in *Burlington,*

> There is no indication that [Burlington] was responsible for the derailment or negligent in maintaining the tracks.... FIC's Opposition states that the "rail was very old, of a gage too small for the mainline track, and had defects that had been detected on Burlington runs." Yet FIC fails to proffer admissible evidence in support of these conclusory allegations. In fact, FIC does not present any contradictory evidence. Since there is no genuine issue of material fact regarding Burlington's negligence, summary judgment is warranted.

## **CONCLUSION**

In conclusion, Plaintiffs submit that BNSF has failed to establish the jurisdiction of this Court. Therefore, this matter must be remanded to the Civil District Court for the Parish of Orleans.

Respectfully Submitted,

**SMITH STAG, L.L.C.**

*/s/ Sharonda R. Williams*

Stuart H. Smith (# 17805)
Michael G. Stag (#23314)
Sharonda R. Williams (#28809)
365 Canal Street, Suite 2850
New Orleans, LA 70130
Telephone: (504) 593-9600
Facsimile: (504) 593-9601

Val Patrick Exnicios (#19563)
Liska, Exnicios & Nungesser
365 Canal Street, Suite 2290
New Orleans, LA 70130
Telephone: (504) 410-9611
Facsimile: (504) 410-9937

Anthony D. Irpino (24727)
Irpino Law Firm
365 Canal Street, Suite 2290
New Orleans, LA 70130
Telephone: (504) 525-1500
Facsimile: (504) 525-1501

Conrad S.P. Williams, III (#14499)
St. Martin, Williams & Bourque, APLC
PO Box 2017
Houma, LA 70361-2017
Telephone: (985) 876-3891
Facsimile: (985) 851-2219

Attorneys for Plaintiffs

## Certificate of Service

I certify that on this 1st day of February, 2007, a copy of the foregoing Motion to Remand, Memorandum in Support of Remand and Notice of Hearing has been filed with the United States District Court for the Eastern District of Louisiana, and all counsel of record are being served this filing by either the Court's electronic filing system, or by telefaxing placing a copy of same in the United States mail, properly addressed with adequate postage affixed thereon.

_/s/ Sharonda R. Williams_
SHARONDA R. WILLIAMS