UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JENNIFER McKNIGHT | * | CIVIL ACTION: 06-7687 |
| and SCOTT McKNIGHT | * | |
| | * | SECTION: "F" |
| VERSUS | * | |
| | * | JUDGE: FELDMAN |
| MARTIN INSURANCE AGENCY, INC., | * | |
| LEXINGTON INSURANCE COMPANY, and | * | MAG. (4) |
| TRAVELERS INSURANCE COMPANY | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN OPPOSITION TO MOTION TO REMAND

**MAY IT PLEASE THE COURT:**

Defendant, **MARTIN INSURANCE AGENCY, INC.,** who for the purpose of opposing the Motion to Remand, respectfully submits this Memorandum in Opposition to Plaintiffs' Motion to Remand this matter from the docket of this Honorable Court to the Civil District Court for the Parish of Orleans, State of Louisiana.

## FACTUAL BACKGROUND

On August 29, 2006, Plaintiffs filed this lawsuit in the Civil District Court for the Parish of Orleans, State of Louisiana. The suit seeks, *inter alia*, damages and penalties for the failure to provide coverage and reimbursement for certain claims made under Plaintiffs' homeowner's and flood insurance policies for alleged losses resulting from Hurricane Katrina.

Martin Insurance Agency, a local insurance agent, procured homeowner's insurance for Plaintiffs through Lexington Insurance Company and flood insurance through The Standard Fire

Insurance Company (Incorrectly named as "Travelers Insurance Company"). The Petition alleges that Plaintiffs' homes were destroyed by the wind and flood resulting from Hurricane Katrina. The Petition further alleges that Martin Insurance Agency's negligence and breach of duty caused Plaintiffs to be deprived of proper insurance coverage.

On October 10, 2006, Martin Insurance Agency timely filed its Notice of Removal. Thereafter, Plaintiffs filed a Motion to Remand this matter to the Civil District Court for the Parish of Orleans.

Defendant Martin Insurance Agency now files this Memorandum in Opposition to Plaintiffs' Motion to Remand, and respectfully submits that the Notice of Removal clearly and specifically shows that subject matter jurisdiction is well-founded upon the existence of diversity jurisdiction under 28 U.S.C. § 1332, which grants federal courts concurrent original jurisdiction over claims where the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different States. Because Plaintiffs' claims against Martin Insurance Agency are perempted under La. R.S. § 9:5606 and Plaintiffs have no cause of action against Martin Insurance Agency because Martin Insurance Agency did not breach any duty owed to Plaintiffs, Martin Insurance Agency has been improperly joined in the Petition as there is no possibility of recovery against it under Louisiana law. Moreover, this Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 4072, 28 U.S.C. § 1442, and 28 U.S.C. § 1367. Finally, Defendants have satisfied all procedural requirements for removal. Therefore, this Honorable Court should deny the Motion to Remand and continue to exercise jurisdiction over this matter.

## LAW AND ARGUMENT

I. **REMOVAL WAS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1332.**

This a civil action over which the United States District Court for the Eastern District of Louisiana has concurrent original jurisdiction under the provisions of 28 U.S.C. § 1332 et seq., as the amount in controversy, evidenced by the Petition for Damages, exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, complete diversity exists between all proper adverse parties, and removal under 28 U.S.C. § 1441 was therefore proper.

### A. The amount in controversy exceeds the sum or value of seventy-five thousand dollars, exclusive of interest and costs.

28 U.S.C. § 1332 provides federal district courts with concurrent original jurisdiction in cases "where the matter in controversy exceeds the sum or value of seventy-five thousand dollars, exclusive of interest and costs, and is between - (1) citizens of different States. . . ."

For purposes of this removal, it is "facially apparent" from the Petition for Damages that the amount in controversy exceeds seventy-five thousand dollars exclusive of interest and costs. In addition to the request for an award for benefits under the insurance policy, Plaintiffs have expressly and specifically made a claim for statutory penalties under La. R.S. 22:1220 and La. R.S. 22:658 implicitly.

When Plaintiffs' specific claims for damages are considered in combination with the statutory penalties available under La. R.S. 22:658 and 22:1220, the amount in controversy clearly exceeds the jurisdictional amount of seventy-five thousand dollars ($75,000.00). While Martin Insurance Agency admits no liability nor any element of damages, Martin Insurance

Agency has met its burden of showing by a preponderance of evidence that the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00).

**B. There is complete diversity between all proper parties as the non-diverse defendant has been "improperly joined" as there is no reasonable basis for the Court to predict that plaintiffs may be able to recover under Louisiana law.**

Plaintiffs' claims against Martin Insurance Agency, as their insurance agent, are prescribed and/or perempted under La. R.S. § 9:5606. Plaintiffs cannot maintain a claim against Martin Insurance Agency because any right to such claim no longer exists. Louisiana Revised Statute § 9:5606 provides a one-year/three-year prescriptive/peremptive period for claims against insurance agents, which completely eliminates any right to a cause of action after the requisite time period.[1] La. R.S. 9:5606(A), (D). The statute provides, in pertinent part:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue *within one year* from the date of the alleged act, omission, or neglect, or *within one year* from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, *in all events such actions shall be filed at the latest within three years* from the date of the alleged act, omission, or neglect.
>
> (*emphasis* added).

---

[1]    Bel v. State Farm Mut. Auto. Ins. Co., 845 So. 2d 377, 380 (La. App. 1st Cir. 2003) ("Peremption differs from prescription in several respects. While prescription prevents the enforcement of a right by legal action, but does not terminate the natural obligation, peremption extinguishes or destroys the right"); *see also* Biggers v. Allstate Ins. Co., 886 So. 2d 1179, 1181 (La. App. 5th Cir. 2004) ("La. Civil Code Art. 3458 defines peremption as 'a period of time fixed by law for the existence of a right.' Further, under that article 'unless timely exercised, the right is extinguished upon the expiration of the peremptive period.'"); Coffey v. Block, 762 So. 2d 1181, 1186 (La. App. 1st Cir. 2000).

Because Martin Insurance Agency is an insurance agency and sells insurance, the statute applies to Martin Insurance Agency.[2]

Plaintiffs originally purchased the insurance policies in question in October of 2003[3], almost three years before the filing of this suit.[4]    The purchase of the policy commenced the one-year prescriptive period under L.A. R.S. 9:5606[5]

Accordingly, this suit filed on August 28, 2006, more than two years after Plaintiffs purchase of the insurance policy, is prescribed.    **Further, even if this Court uses the renewal date of October 2, 2004,[6] Plaintiff's suit would not fall within the one year prescriptive period under well-settled Louisiana law.[7]**

---

[2]    *See,* Klein v. Am. Life & Cas. Co., 858 So. 2d 527, 531 (La. App. 1st Cir. 2003) (concluding that "because the acts of an insurance agent are generally imputable to the insurer he represents," peremptive period applies to insurance agents); *see also Biggers,* 886 So. 2d at 1180-83 (holding that peremptive period applied to insured's suit against agent for failure to procure adequate coverage).

[3]    See, Exhibit "A".  This date is the earliest record regarding Plaintiff's file in Pappalardo's records.  Pappalardo's records also indicate that no coverage existed over one of the properties alleged damaged in Hurricane Katrina and sued upon in this suit, namely 2322 Mexico Street.  See, Petition at ¶ V.

[4]    See, Rault v. Encompass., 06CV1734, 2006 WL 2078423, at *6 (E.D. La, July 21, 2006) (finding that "[t]he wrongful acts alleged against [the agent] occurred in 1989, when plaintiff [originally] purchased her policy"); Dobson, 2007 WL 2078423 at *8 (holding: "[s]ince it is the terms of the flood exclusion that would render [the agent's] alleged statement to plaintiffs about the terms of their policy inaccurate, his alleged misconduct occurred in 1991 when he sold plaintiffs the policy containing the flood exclusion); Cresson, 2006 WL 2912824 at *1-2 (holding that peremptive period began at time the claimant purchased her policy); Perez, 2006 WL 2178753 at *3 (same); Biggers, 886 So. 2d at 1183 (holding that peremptive period, applicable to insured's negligence suit against agent, began when plaintiff purchased policy).

[5]    Biggers, 886 So. 2d at 1183 (holding that peremptive period, applicable to insured's negligence suit against agent, began when plaintiff purchased policy).

[6]    See, Exhibit "A".  Plaintiff renewed the policy in question annually without any changes in coverage limits for at least three years prior to the filing of this suit February 2003-Fedbruary 2006).  The only alteration in the policy was an automatic inflation guard which was no initiated in any way by

Plaintiffs knew or should have known of their claim against Martin Insurance Agency --

*i.e.*, that Martin Insurance Agency was allegedly "negligent in failing to provide adequate

insurance coverage to Plaintiffs" -- when Plaintiffs originally purchased the insurance policy in

2003.  Accordingly, Plaintiffs knew or should have known the extent that their insurance policy

covered property damages at the time they purchased the policy.  Their claim at this late date is

prescribed.  Any claims against Martin Insurance Agency became prescribed one year after the

policy was purchased and, at the latest, in October 2004, when Plaintiffs renewed the policy

without any change thereto.[8]

Plaintiffs cannot avoid this result by claiming that they did not realize the extent of the

coverage of their policy or that Martin Insurance Agency was negligent in failing to provide

adequate insurance coverage because the insurance policy itself was sufficient to put them on

notice of these facts when they renewed the policy as is in October 2004.  Further, Plaintiffs can

not claim that they filed this action within the one-year prescriptive period allowed under

9:5606.  Louisiana courts have long recognized that a prescriptive period begins to run "when a

---

Pappalardo.

[7]     See, *e.g.*, <u>Bel</u>, 845 So. 2d at 382 ("[t]herefore, we find that the insurance policy renewals do not constitute separate and distinct torts, commencing the peremptive period anew at each renewal"); <u>Biggers</u>, 886 So. 2d at 1183 (peremptive period applicable to insured's negligence suit against agent began when plaintiff purchased policy, notwithstanding subsequent renewals); <u>Bordelon v. Indep. Order of Foresters</u>, No. 05-2640, 2005 WL 3543815 (E.D. La. Oct. 4, 2005) (peremptive period began to run on day plaintiff was assisted in completing insurance application); <u>Calvin v. Janbar Enters., Inc.</u>, 856 So. 2d 88 (La. App. 4th Cir. 2003) (peremptive period begins to run when policy is acquired).

[8]     <u>Biggers</u>, *supra.*

Petitioner obtains actual or constructive knowledge of acts indicating to a reasonable person that he or she is the victim of a tort."[9]  A person is deemed to have constructive knowledge when a reasonable person would have had notice sufficient to "excite attention and put the injured party on guard and call for inquiry."[10]

Moreover, under Louisiana law, insureds are deemed to have read and known the provisions of their insurance contracts.[11]  The insurance policy itself was sufficient to put Plaintiff on notice regarding any error or omission by Martin Insurance Agency.  A reasonable person who read the policy's terms would be able to ascertain the coverage limits of the policy.

In sum, when Plaintiffs renewed the policy in October 2004, they had everything they needed to "excite attention" and put them on inquiry.  Because the policy expressly reveals any alleged error or omission by Martin Insurance Agency, Plaintiffs were on actual or constructive notice of the purported error or omission as of that date.[12]  Therefore, Plaintiffs' claims are

---

[9]      *See e.g.*, <u>Dobson</u>, 2006 WL 2078423, at * 9 (stating that "[a] prescriptive or preemptive period will begin to run when the injured party has constructive knowledge of the facts that would entitle him to bring a suit"); *Campo v. Correa, M.D.*, 828 So. 2d 502, 510 (La. 2002).

[10]      *Id.* at 510-11.

[11]      *See*, <u>T.H.E. Ins. Co. v. Larsen Intermodal Services, Inc.</u>, 242 F.3d 667 (5th Cir. 2001) (stating that under Louisiana law, "an insured is presumed to know the provisions of his policy"); *Dobson*, 2006 WL 2078423 at *9 (stating that "[a]n insured party is generally responsible for reading his policy, and he is presumed to know its provisions"); <u>McDermott Int'l, Inc. v. Industrial Risk Insurers</u>, 01CV3027, 2003 WL 22928802 (E.D. La. Dec. 9, 2003); <u>Stephens v. Audubon Ins. Co.</u>, 665 So. 2d 683, 686 (La. App. 2d Cir. 1995) (stating that "[a]n insured is presumed to know the provisions of his policy"); <u>Matthews v. Business Men's Assurance Co. of America</u>, 478 So. 2d 634, 637 (La. App. 2d Cir. 1985); <u>Perkins v. Shelter Ins. Co.</u>, 540 So. 2d 488 (La. App 1st Cir. 1989).

[12]      *See, e.g.*, <u>McCord v. Minn. Mut. Life Ins. Co.</u> 138 F. Supp. 2d 1180, 1189 (D. Minn. 2001) (under Louisiana law, "vanishing premium" claims were dismissed because policyholder should have known of conflict between policy terms and alleged misrepresentation made when he received the

prescribed because they filed suit more than one year from the date they knew or should have known of their cause of action.[13]

It is clear that Plaintiffs were put on adequate notice at the moment they purchased the policy in 2003, or at the latest, in October of 2004, when they renewed the policy without any changes thereto. Consequently, Plaintiffs' claims are prescribed because they filed suit more than one year from the date they knew or should have known of their cause of action.

**C.** **Plaintiff have No Cause of Action against Martin Insurance Agency because Martin Insurance Agency did not breach any duty owed to Plaintiffs.**

There is no possibility that Plaintiffs can obtain relief against Martin Insurance Agency because Plaintiffs have not stated and cannot state a claim against Martin Insurance Agency under well-settled Louisiana law. As supported by the Fifth Circuit and several decisions of various sections of this Court, Plaintiffs do not state a cause of action against Martin Insurance Agency:

> - <u>Motor Ins. Co. v. Bud's Boat Rental, Inc.</u>,[14] wherein the Fifth Circuit noted that "the client is himself considered responsible for adequately advising the agent of the coverage needed and for reading the clear provisions of the insurance policy."

---

policy).

[13]    *See id.; see also* <u>Simmons v. Templeton</u>, 723 So. 2d 1009, 1012 (La. App. 4th Cir. 1998).

[6]    917 F.2d 199, 205 (5th Cir. 1990).

- Ragas v. Tarleton,[15] wherein Judge Feldman held that the plaintiff, who did not allege that the agent exceeded his authority, personally bound himself, or made any misrepresentations, failed to state a claim against the agent;

- Davis v. Allstate,[16] wherein Judge Vance found that the plaintiff failed to state a cause of action against Allstate insurance agent because "Plaintiff does not cite, and the Court does not find, any case imposing a duty on an agent to spontaneously identify a client's needs and advise him as to whether he is underinsured or carries the right type of coverage";

- Dobson v. Allstate,[17] wherein Judge Vance found that even if the Court were to consider plaintiffs' assertion that the agent negligently misrepresented the terms of their coverage to them in October 2004, they knew or should have known of his wrongful conduct as of that time, as they had a copy of their policy in hand.  Accordingly, the plaintiffs failed to state a cause of action against the insurance agent because "Plaintiffs do not have a reasonable possibility of recovery against [agent]"; and

- Wellmeyer v. Allstate,[18] wherein Judge Vance stated, "plaintiffs are chargeable with knowledge of the terms of their policy, and they could not justifiably rely on the alleged misrepresentations of their insurance agents about the type of coverage they held. Plaintiffs received their policies, and the terms of the coverage were clear. Plaintiffs could have verified or contradicted any representation about the terms of coverage by referring to the policies themselves."

- Parker v. Lexington Ins. Co.[19], Wherein Judge Zainey held that an agent had no duty to advise its client to purchase flood insurance with higher limits.

- Frischhertz v. Lexington Ins. Co.[20], Wherein Judge Barbier, citing Dobson, held that "no case imposes a duty on an agent to identify a client's

---

[15]    06CV4137, 2006 WL 2925448, at * 3-4 (E.D. La. Oct. 10, 2006).

[16]    06CV1064, 2006 WL 2078243, at *10 (E.D. La. July 21, 2006).

[17]    06CV1064, 2006 WL 2078243, at *9 (E.D. La. July 21, 2006).

[18]    06CV1585, 2006 WL 2078423, at *11 (E.D. La. July 21, 2006).

[19]    06CV4156, 2006 WL 3328041, at * 9-10 (E.D. La. Nov. 15, 2006).

[20]    06CV5676, 2006 WL 3228385, at * 5-6 (E.D. La. Nov. 3, 2006).

needs and advise him whether he is underinsured or carries the correct type of coverage."

In sum, based on the allegations of negligence in the Petition, there is no possibility that Plaintiffs can obtain relief against Martin Insurance Agency.

## II.   REMOVAL IS PROPER UNDER FEDERAL QUESTION JURISDICTION UNDER THE NATIONAL FLOOD INSURANCE PROGRAM, 42 U.S.C. § 4072.

A review of the Plaintiffs' Petition shows that they have pleaded several issues that raise federal questions thereby making jurisdiction proper in this Court under 28 U.S.C. §1331.

42 USC §4053[21] provides original exclusive jurisdiction with the United States district courts for actions related to a claim made under an NFIP policy. This is because the National Flood Insurance Program ("NFIP") is operated by the Federal Emergency Management Agency ("FEMA"), which has authority to regulate the participation of private insurance companies (like State Farm) in the NFIP, the terms on which flood insurance will be provided, and the manner in which claims are adjusted and paid. 42 U.S.C. §§ 4013(a), 4019, 4071, 4081.

Martin Insurance Agency acknowledges the existence of District Court case law contrary to its position on procurement of insurance as a state issue but respectfully submits that the cases preceding this case have not focused on the decisive basis for conferring federal question jurisdiction. This year, the Eastern District acknowledged that "the Fifth Circuit has not had the occasion to determine whether a state law tort claim for errors and omissions like Plaintiffs'

---

[21]    §4053 reads: "The insurance companies and other insurers which form, associate, or otherwise join together in the pool under this part my adjust and pay all claims for proved and approved losses covered by flood insurance in accordance with the provisions of this chapter and, upon the disallowance by any such company or other insurer of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the mailing of notice of disallowance or partial disallowance of the claim, may institute an action on such claim against such company or other insurer in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy."

claims would be considered 'handling' and the Fifth Circuit has not determined whether state law claims for improper 'procurement' would be preempted by the National Flood Insurance Act (NFIA)." Landry v. State Farm Fire & Cas. Co., No. 06-181 (Apr. 25, 2006) (ruling against federal jurisdiction but noting no decision from Fifth Circuit on this precise issue), *citing*, Wright v. Allstate Ins. Co., 415 F.3d 384, 390 (5th Cir. 2005) ("state law tort claims arising from claims handling by a WYO are preempted by federal law").

The cases examining the issue have generally held that when an insurance agent fails to procure flood insurance, the federal government lacks a financial stake to confer federal question jurisdiction.   However, as will be shown in this memorandum,  whether the federal government has a financial stake should not be the dispositive issue and even if this Court finds that it is, the federal government has a huge financial stake in regulating the procurement of flood insurance policies.

The federal government enacted the National Flood Insurance Act ("NFIA"), 42 U.S.C. §§ 4001 *et seq.,* in part, to ensure uniformity of flood protection.  The government controls underwriting and procurement regulations and policies relative to flood insurance.  It follows then that the case law governing procurement of flood insurance, which relies necessarily on the insurance agent learning, following, and executing those federal regulations, should be governed by a uniform body of federal law.  The alleged failure of a "Write Your Own" (WYO) carrier to procure flood insurance in accordance with the federal guidelines should not be left to the individual decision of each trial court and ultimately each appellate court in each of the 50 states. Moreover, federal question jurisdiction exists because as a WYO carrier, Martin Insurance Agency is a fiscal agent of the federal government.   Therefore, Martin Insurance Agency

respectfully requests this Court to consider the removal/remand issue under the framework presented herein and to find that the Court should retain this matter under 28 U.S.C. § 1331 federal question jurisdiction.

The NFIP is operated by the Federal Emergency Management Agency ("FEMA"), which has authority to regulate the participation of private companies in the NFIP, the terms on which flood insurance will be provided, and the manner in which claims are adjusted and paid. 42 U.S.C. §§ 4013(a), 4019, 4071, 4081. By FEMA regulation, all policies issued under the NFIP (whether by FEMA or by a WYO company) must be issued using the terms and conditions of the Standard Flood Insurance Policy ("SFIP"). 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c).   In 2003, FEMA changed its regulations to provide explicitly that sales and administration of flood policies are subject to those regulations insofar as WYO carriers are involved. 44 C.F.R. Pt. 62, App. A, Art. I. The SFIP form itself is a regulation and is found in 44 C.F.R. Pt.61, App. A.  The WYO companies are not authorized to vary or waive any of the SFIP terms and conditions without the express written consent of FEMA. 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c). As a matter of federal law, these terms and conditions govern the adjustment of all claims: "A WYO Company issuing flood insurance coverage shall arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the NFIP, based upon the terms and conditions of the Standard Flood Insurance Policy." 44 C.F.R. § 62.23(d).

WYO carriers are paid by FEMA for the services they provide in connection with the underwriting and sale of SFIPs and for the handling and defense of claims under the policy. *See* 44 C.F.R. Part 62, App. A, Art. III. WYO carriers, however, do not bear the risk of loss under the SFIPs. Rather, claims are paid with federal funds, and the federal government bears the risk of

loss under the program. WYO carriers are fiscal agents of the United States, 42 U.S.C. § 4071(a)(I); 44 C.F.R. § 62.23(g), and payments on SFIP claims are a direct charge on the United States Treasury. *See*, <u>Wright v. Allstate Ins. Co.</u>, 415 F.3d 384, 390 (5th Cir. 2005)("state law tort claims arising from claims handling by a WYO are preempted by federal law"); 42 U.S.C. § 4017(d)(I).

The NFIP's federal regulatory structure is not confined to the four corners of the SFIP, but extends into numerous other areas of the activities of WYO companies and their agents including sales, marketing, and procurement. *See* 44 C.F.R. Pt. 62, App. A art. I (stating that the Federal Insurance Administration ("FIA") "has promulgated regulations and guidance implementing the Act and the Write-Your-Own program whereby participating private insurance companies act in a fiduciary capacity utilizing Federal funds to sell and administer [SFIPs], and has extensively regulated the participating companies' activities when selling or administering [SFIPs]"). By way of example, the Arrangement expressly directs that WYO companies "shall issue policies under the regulations prescribed by the Administrator in accordance with the Act," 44 C.F.R. Pt. 62, App. A, art. II.D.2, and "shall market flood insurance policies in a manner consistent with marketing guidelines established by FIA." Id. art. n.G.2.

Additionally, federal regulations direct WYO companies to "encourage [their] present property insurance policyholders to purchase flood insurance through the NFIP WYO program," 44 C.F.R. § 62.23(h)(1), and to comply with specified requirements regarding rating system procedures, transmission of premium payments, and the offering of premium payment plans. Id. § 62.23(h)(2), (3), (7).

Finally, in order to qualify for participation in the NFIP, WYO companies must "submit information concerning [their] plans for the WYO program including plans for the training and support of producers and staff [and] marketing plans and sales targets," 44 C.F.R. § 62.24(d), and WYO companies are required to submit to a federal review of their "claims, underwriting, customer service, marketing, and litigation activities" at least once every three years. 44 C.F.R. § 62.23(j)(2); 44 C.F.R. Pt. 62, App. B.

Certain Defendants in this matter sell flood insurance policies as a Write-Your-Own ("WYO") covering both residential and commercial properties in Louisiana and other states pursuant to its participation in the NFIP. In his Petition, what the Plaintiff refers to as his "flood policy" is actually an NFIP policy. The Standard Flood Insurance Policy ("SFIP") is set forth in FEMA regulations, see 44 C.F.R. Pt. 61, App. A, and states that it is "governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law." 44 C.F.R. Pt. 61, App. A(1), art. IX; see also Wright v. Allstate Ins. Co., 415 F.3d 384, 390 (5th Cir. 2005). The WYO companies are not authorized to vary or waive any of the SFIP terms and conditions without the express written consent of FEMA. 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c). Downey v. State Farm Fire & Casualty Co., 266 F.3d 675 (7th Cir. 2001), holds that an action brought by an insured under a WYO flood insurance policy against an insurer which had issued policy pursuant to the NFIP was one in which the duties or rights of the United States under a federal program were at stake, so that the application of federal law was required and the action thus came within the district court's federal question jurisdiction.

Further, claims are paid with federal funds, and the federal government bears the risk of loss under the program. WYO carriers are fiscal agents of the United States, 42 U.S.C. § 4071(a)(I); 44 C.F.R. § 62.23(g), and payments on SFIP claims are a direct charge on the United States Treasury. See Wright v. Allstate Ins. Co., supra; 42 U.S.C. § 4017(d)(I).

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 does not require that a complaint plead a federal cause of action. Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 125 S. Ct. 2363 (2005). Rather, a complaint only must involve a "controversy respecting the construction and effect of the [federal] IMartin Insurance Agency" which is "sufficiently real and substantial" Id. at 2369; Hopkins v. Walker, 244 U.S. 486, 490-491 (1917); Drawhorn v. Qwest Communications Int'l, Inc., 121 F. Supp. 2d 554, 562 (E.D. Tex. 2000). As in Grable, Hopkins, and Dawkins, the claims alleged in the Plaintiff' Petition require construction of federal IMartin Insurance Agency in several respects.

Even though the Plaintiffs bring claims under Louisiana law (Bad Faith: LSA-R.S. 22:1220), federal jurisdiction is implicated because these claims **necessarily** involve the interpretation of the SFIP, which is found in FEMA. Harper v. National Flood Insurers Association, 494 F. Supp. 234 (M.D. Pa. 1980), recognizes that the removal of an action arising under the NFIP is proper, as the Act grants exclusive jurisdiction to federal district courts.

The federal issues presented here are "sufficiently real and substantial" because there is a strong federal interest in having them resolved in a federal forum. Indeed, Congress has already manifested its belief that federal, not state, courts provide the appropriate forum for resolution of issues of federal law regarding flood insurance. 42 U.S.C. § 4072. An insured seeking recovery

under SFIP "must file the suit in the United States District Court of the district in which the insured property was located at the time of the loss." 44 C.F.R. Part 61 App. A(1) art. VII.R.

In addition, in enacting the NFIA, Congress found that "the objectives of a flood insurance program should be integrally related to a **unified national program** for flood plain management . . . ." 42 U.S.C. § 4001(c)(2) (emphasis added).

For all of these reasons, it is clear that the Plaintiffs' claims raise substantial federal questions. Removal is thus proper pursuant to 28 U.S.C. §§ 1331 and 1441.

Moreover, the Plaintiffs' primary claims pertaining to Martin Insurance Agency are premised on the alleged existence of a duty on the part of the agent to consult, advise, and communicate regarding the NFIP in general and the dwelling and contents coverage options under their SFIP specifically. The duty that the Plaintiffs allege is necessarily one of consulting, advising, and communicating with plaintiffs about the meaning of provisions of federal law and what they should do to take advantage of them. Accordingly, any duty the agent may have owed to the Plaintiffs with respect to their flood insurance policy must arise, if at all, under federal law.

Furthermore, determining the extent of any such duty would require taking into account the plaintiffs' own duty under federal law to familiarize themselves with the terms of a federal program from which they seek to benefit.[22] FEMA also regulates the selling, administering, and

---

[22] The NFIP is a federal benefit program and citizens seeking to benefit from such programs are charged, as a matter of federal law, with the responsibility of familiarizing themselves with the requirements of those programs. Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 63 (1984); Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947). Accordingly, an insured under the NFIP is charged with constructive knowledge of the provisions of the SFIP "regardless of actual knowledge of what is in the regulations or of the hardship resulting from ignorant innocence." See Larmann v. State Farm Ins. Co., No. 03-2993, 2005 WL 357191, at *5 (E.D. La. Feb. 11, 2005) (unpublished opinion); see also Wright, 415 F.3d at 388.

marketing of flood policies.[23]    Therefore, the insurance agent's actions in selling the policy - the

very actions which plaintiffs allege to breach fiduciary duties - are regulated by FEMA.

Effective October 1, 2004, there was a new "Arrangement" between FEMA and all WYO

Program carriers, including Defendant State Farm.  44 C.F.R. Pt. 62, App. A.    In that new

Arrangement, FEMA further clarified its regulations to state that just as with disputes arising

from claims and claims handling, the subjects of policy sales and administration are performed

by the WYO carriers (1) in their fiduciary capacity to the government, (2) utilizing federal funds,

and (3) governed by extensive federal regulations.

Moreover, FEMA again stated its view that "any" litigation therefrom stated a federal

question:

> Whereas, FIA has promulgated regulations and guidance implementing
> the Act and the Write Your Own Program whereby participating private
> insurance companies act in a fiduciary capacity utilizing federal funds to
> sell and administer the Standard Flood Insurance Policies, and has
> extensively regulated the participating companies' activities when selling
> or administering the Standard Flood Insurance Policies; and
>
> Whereas any litigation resulting from, related to, or arising from the
> companies' compliance with the written standards, procedures, and
> guidance issued by FEMA or FIA arises under the Act, regulations, or
> FIA guidance, and legal issues thereunder raise a federal question; and . .
> . . Id. at Art. I.

---

[23] See 44 C.F.R. Pt. 62, App. A art. I (stating that the Federal Insurance Administration ("FIA") has extensively
regulated the participating companies' activities when **selling** or **administering** SFIPs.  For example, the
Arrangement expressly directs that WYO companies "shall issue policies under the regulations prescribed by the
Administrator in accordance with the Act," 44 C.F.R. Pt. 62, App. A, art. II.D.2, and "shall market flood insurance
policies in a manner consistent with marketing guidelines established by FIA." Id. art. II.G.2.  § 62.23(h)(2), (3),
(7).  Additionally, in order to qualify for participation in the NFIP, WYO companies must "submit information
concerning [their] plans for the WYO program including plans for the training and support of producers and staff
[and] marketing plans and sales targets," 44 C.F.R. § 62.24(d), and WYO companies are required to submit to a
federal review of their "claims, underwriting, customer service, marketing, and litigation activities" at least once
every three years.  44 C.F.R. § 62.23(j)(2); 44 C.F.R. Pt. 62, App. B.

Any prior NFIP-related remand orders that are based upon a view that while errors occurring during claims handling do fall within the scope of the Arrangement, but errors relating to "policy procurement" do not, are no longer good law.   The two paragraphs quoted above from 44 C.F.R. 62 App. A, effective in October, 2004, reflect a change in the regulatory scheme, stating that "**any litigation** resulting from, related to, or arising from the companies' compliance with the written standards, procedures, and guidance issued by FEMA or FIA arises under the Act, regulations, or FIA guidance, and legal issues **thereunder raise a federal question**." (Emphasis supplied).

FEMA's comments regarding the October, 2004 changes include the following:

> In addition, by clarifying the rule to comport with our understanding of jurisdiction, we will ensure that cases are brought in the appropriate **Federal** courts, and the provision limiting litigation exposure to the Program and its participants would minimize unnecessary proceedings (including those in State courts), protect the Federal Treasury, and further the purposes of the Program.

National Flood Insurance Program (NFIP); Assistance to Private Sector Property Insurers, 69 FR 45607, *45610.  (Emphasis added).

Thus the Plaintiffs' claims regarding policy procurement against the agent also raise federal questions under the National Flood Insurance Act.

Additionally, 28 U.S.C. § 1442 provides allows federal officials, and those acting under their authority, named as defendants to remove certain matters to federal court.  Removal under 28 U.S.C. §1442 is *not* limited to cases in which a federal agency itself (or agency employee) is a named defendant; non-governmental entities have removal rights under §1442 when a state court complaint challenges their conduct under color of a federal office or agency. See <u>Winters v.</u>

Diamond Shamrock Chem. Co., 149 F.3d 387, 398 (5th Cir. 1998) (holding that private corporate entities are "persons" under §1442(a)(1)).

Removal is appropriate under §1442 when: (1) the defendant is a "person" within the meaning of the statute; (2) the defendant "acted pursuant to a federal officer's directions and . . . a causal nexus exists between the defendants' actions under color of federal office and the plaintiffs' claims"; and (3) the defendant asserts a "colorable federal defense." Winters, 149 F.3d at 398-400. See Malsch v. Vertex Aerospace, LLC, 361 F. Supp. 2d 583, 585 (S.D. Miss. 2005) (defendant must "raise a colorable federal defense to plaintiffs' claims ... and it must 'establish that the suit is for a[n] act under color of office'" (emphasis in original)). All three elements are present here.

First, Defendants in this matter are "persons" within the meaning of the statute. Winters; see also Watson v. Philip Morris Cos., 420 F.3d 852, 863 (8th Cir. 2005).

Second, the Petition challenges conduct undertaken by Defendants under color of federal office. This statute has been applied to insurers.  In Neurological Associates--H. Hooshmand, M.D., P.A. v. Blue Cross/Blue Shield of Florida, Inc. 632 F.Supp. 1078, 1081 (S.D.Fla. 1986), the court determined that an insurer administering a state's Medicare program was covered by the statute as a person acting under the color of government authority:

> The contract in this case is a standard form used by the government to make agreements with medical providers who participate in the Medicare program under the Medicare law and regulations. It is simply the Government's mechanism to carry out the Medicare Act and the regulations.
> The United States Supreme Court has determined that when a claim is made seeking the payment of benefits under the Act, it should be treated as a "claim arising under" the Medicare Act. Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).

See id., at 1081.  Here, the Plaintiffs' Petition squarely places at issue Defendants' decisions, all made on FEMA's behalf as its fiscal agent and fiduciary, concerning the Plaintiffs' participation in this federal program.  All of the activities put at issue by the Plaintiffs' Petition put at issue standards of care under the NFIP that are subject to comprehensive federal regulation by FEMA, which as per the Act, exclusively controls all such matters.

The third prong for removal under §1442 is the assertion of a colorable federal defense.  At the removal stage, defendants "need not prove the asserted defense, but need only articulate its 'colorable' applicability to the plaintiff's claims." Winters, 149 F.3d at 400.  See also Malsch, 361 F. Supp. 2d at 587 (test is not whether defendant's "proffered federal defense is meritorious, but rather whether it is at least 'colorable'").  Defendants have done that here.  As discussed above, Martin Insurance Agency has explained that the statutes and regulations of this program govern certain Defendants' decisions and decisions-making process, and Defendants' decisions are all in accord with FEMA's regulations and the statues of this program.

To the extent that any of the Plaintiffs' claims are not subject to federal jurisdiction under 28 U.S.C. §§ 1331 or 1332 or 1369 or 42 U.S.C. § 4072, this Court has jurisdiction over such claims under 28 U.S.C. § 1367, which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.  See Exxon Mobil Corp. v. Allapattah Services, Inc., ___ U.S. ___, 125 S. Ct. 2611 (2005).

To find that claims are "so related" and "form part of the same case or controversy" for section 1367 jurisdiction, the Court must determine whether the Plaintiffs' claims "derive from a

common nucleus of operative fact." <u>City of Chicago v. International College of Surgeons</u>, 522 U.S. 156, 165 (1997). All of the Plaintiffs' claims relate to insurance they allege they had or should have had from Defendants for personal property allegedly destroyed as a result of Hurricane Katrina and thus "derive from a common nucleus of operative fact."

Should the Court find that any claims against Defendants are not otherwise subject to federal jurisdiction, such claims would arise out of the same SFIP and the same alleged breach of purported duty with respect to the Plaintiffs' flood coverage that give rise to federal question jurisdiction over claims against Defendants. Accordingly, supplemental jurisdiction over any such state law claims would be appropriate.

<u>**CONCLUSION**</u>

Defendant, Martin Insurance Agency has conclusively established that federal subject matter jurisdiction exists over this matter under the provisions of to U.S.C. § 1332, 28 U.S.C. § 1331, 42 U.S.C. § 4072, 28 U.S.C. § 1442, and 28 U.S.C. § 1367. Therefore, removal of this matter from the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, to the docket of the United States District Court for the Eastern District of Louisiana, was proper pursuant to the provisions of 28 U.S.C. 1441 et seq. and 28 U.S.C. 1446 et seq. The facts and evidence before this court and the jurisprudence cited herein all support Defendant's argument for jurisdiction. Accordingly, this Honorable Court should deny the Motion to Remand.

Furthermore, any request for penalties and attorney fees are not appropriate because: 1) the Fifth Circuit and/or the Louisiana Supreme Court has not issued a ruling on point and 2) Martin Insurance Agency has submitted a good faith theory of federal jurisdiction which would expound upon the existing law. Plaintiffs' Motion to Remand should be denied in its entirety.

Respectfully submitted:

**UNGARINO & ECKERT, LLC**

/S/ Matthew J. Ungarino
**MATTHEW J. UNGARINO #15061**
*STEPHEN M. GELE #22385 – T.A.*
**Suite 1280 Lakeway Two**
**3850 North Causeway Boulevard**
**Metairie, Louisiana 70002**
**Telephone:** *(504) 836-7556*
**Fax:**            (504) 836-7566
**E-mail: sgele@ungarino-eckert.com**

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing pleading upon all counsel of record, by United States mail, properly addressed and first class postage prepaid and/or via facsimile or email, on December 11, 2006.

/S/ Matthew J. Ungarino
MATTHEW J. UNGARINO