UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JENNIFER McKnight | * | CIVIL ACTION: 06-7687 |
| and SCOTT McKnight | * | |
| | * | SECTION: "F" |
| VERSUS | * | |
| | * | JUDGE: FELDMAN |
| MARTIN INSURANCE AGENCY, INC., | * | |
| LEXINGTON INSURANCE COMPANY, and | * | MAG. (4) |
| TRAVELERS INSURANCE COMPANY | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendant, Martin Insurance Agency, Inc., respectfully submits this Memorandum In Support of its Motion for Summary Judgment and requests that this Court issue a judgment dismissing the claims of the plaintiffs, Jennifer McKnight  and Scott McKnight , against the defendant because the plaintiffs' claims are perempted under the one-year peremptive period set out in La. R.S. §9:5606(A).

## FACTS

This case arises from damages suffered by the plaintiffs, Jennifer McKnight  and Scott McKnight   (hereinafter "plaintiffs" or "McKnight  ") on August 29, 2005 as a result of Hurricane Katrina, and the subsequent lawsuit filed on August 29, 2006 by McKnight  against her insurers, Lexington Insurance Company (hereinafter "Lexington") and The Standard Fire Insurance Company (hereinafter "Standard"), and insurance agent, Martin Insurance Agency, Inc. (hereinafter defendant or "Martin").  The claims made against Martin stem from it acting as

1

G:\DOCS\9000's\9800-9899\9836\MIS of MSJ.001.peremption.aac.doc

the insurance agent for McKnight .  Specifically, the plaintiffs allege that Martin failed to

properly advise the plaintiffs[1] and failed to procure adequate insurance coverage.[2]

McKnight  secured a homeowner's insurance policy (#LEO58239602) through Martin

from Lexington on October 2, 2003.[3]  In addition, the plaintiffs obtained a flood insurance policy

(#6004815970) from Standard on October 2, 2003.[4]  The plaintiff's policies were in effect from

October 2, 2004 until October 2, 2005, which includes the date of loss of August 29, 2005.


## LAW

### 1.  Summary Judgment – Rule 56 of the Federal Rules of Civil Procedure

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory

judgment is sought may, at any time, move with or without supporting affidavits for a summary

judgment in the party's favor as to all or any part thereof."  Fed.R.Civ.P. 56(b).  Summary

judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The

United States Supreme Court has held that this plain language:

> mandates the entry of summary judgment, after adequate time for discovery and
> upon motion, against a party who fails to make a showing sufficient to establish
> the existence of an element essential to that party's case, and on which that party
> will bear the burden of proof at trial.  In such a situation, there can be "no genuine
> issue as to any material fact," since a complete failure of proof concerning an
> essential element of the nonmoving party's case necessarily renders all other facts
> immaterial.  The moving party is "entitled to a judgment as a matter of law"
> because the nonmoving party has failed to make a sufficient showing on an
> essential element of her case with respect to which she has the burden of proof.

---

[1] Pet. ¶ XXI and XXIII.
[2] Id.
[3] See Affidavit of Gemelle Linzy attached hereto as **Exhibit "A"**.
[4] See Affidavit of Gemelle Linzy attached hereto as **Exhibit "B"**.

G:\DOCS\9000's\9800-9899\9836\MIS of MSJ.001.peremption.aac.doc

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  The

moving party is not required to "produce evidence negating the existence of a material fact";

rather, the moving party's burden is "only [to] point out the absence of evidence supporting the

nonmoving party's case."   Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir 1992),

*certiorari denied*, 506 U.S. 832, 113, S.Ct. 98, 121 L.Ed.2d 59 (1992), *quoting*, Latimer v.

Smithkline & French Laboratories, 919 F.2d 301, 303 (5th Cir. 1990).  If the moving party makes

this showing, "the nonmovant must come forward with evidence which would be sufficient to

enable it to survive a motion for directed verdict at trial."   Skotak, 953 F.2d at 913, *citing*,

Transco Leasing Corp. v. U.S., 896 F.2d 1435, 1444 (5th Cir. 1990).


**2.  La. R.S. 9:5606 – One-Year And Three-Year Preemptive Periods For Actions Against Professional Insurance Agent Liability.**

Louisiana Revised Statute §9:5606 provides in relevant part as follows:

A. "No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458[5]

---

[5] Peremption is a period of time fixed by law for the existence of a right.  Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. C.C. art. 3458.

G:\DOCS\9000's\9800-9899\9836\MIS of MSJ.001.peremption.aac.doc

and, in accordance with Civil Code Article 3461[6], may not be renounced, interrupted, or suspended.  La. R.S. §9:5606.

Based on the clear language of the statute, there is no doubt that the Legislature intended that the one-year and three-year periods are peremptive.  La. R.S. §9:5606(D).  Furthermore, it is clear that the intent was that three years after the "act, omission, or neglect," the cause of action is extinguished, regardless of when the negligence was discovered and even if a plaintiff could not have brought her claim before the three-year period expired.  Reeder v. North, 701 So.2d 1291, 1297 (La. 1997); *see also* Dobson v. Allstate Ins. Co., 2006 WL 2078423, at *6 (E.D.La. Jul 21, 2006).   The Louisiana Supreme Court, in dealing with an analogous provision of Louisiana's legal malpractice statute[7], pointed out that "the Legislature was aware of the pitfalls in this statute but decided, within its prerogative, to put a three-year absolute limit on a person's right to sue for legal malpractice, just as it would be within its prerogative to not allow legal malpractice actions at all."  Reeder, 701 So.2d at 1297.  The Court recognized that while the peremption provision of the legal malpractice statute may seem unfair in that a "person's claim may be extinguished before he realizes the full extent of his damages, the enactment of such a statute of limitations is exclusively a legislative prerogative."  Biggers v. Allstate Ins. Co., 886 So.2d 1179, 1182 (La.App. 5 Cir. Oct 26, 2004) (construing Reeder v. North, 701 So.2d 1291 (La. 1997)).

In Reeder the Louisiana Supreme Court pointed out that peremption differs from prescription in several respects.  Id at 1298.  The Court stated that:

---

[6] Peremption may not be renounced, interrupted, or suspended.  La. C.C. art. 3461.

[7] La. R.S. §9:5605 provides the same one-year and three-year limitations found in §9:5606 stating that actions for legal malpractice must be filed "…within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect."  La. R.S. §9:5605(A)

4

G:\DOCS\9000's\9800-9899\9836\MIS of MSJ.001.peremption.aac.doc

Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation (La. Civ.Code art. 1762(1)); peremption, however, extinguishes or destroys the right (La. Civ.Code art. 3458). Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as *contra non valentem*[8] are not applicable. As an inchoate right, prescription, on the other hand, may be renounced, interrupted, or suspended; and *contra non valentem* applies an exception to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. Id.

**3. Peremptive Period Begins To Run When The Plaintiff Obtains Actual Or Constructive Knowledge.**

The Louisiana courts have clarified that prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. See Roadhouse Bar-B-Que, Inc. v. Certain Underwriters at Lloyds, 909 So.2d 619, 623 (La.App. 3 Cir. May 04, 2005) (citing Campo v. Correa, 828 So.2d 502 (La. 2002)). In Campo the Louisiana Supreme Court said:

> A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. Campo, 828 So.2d at 510-511.

In other words, any information or knowledge that ought to excite the attention of the alleged victim and put her on guard sufficient to start the running of prescription. Id.

---

[8] *Contra non valentem* is a judicially-created doctrine which has been applied to prevent the running of prescription in four distinct situations: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

G:\DOCS\9000's\9800-9899\9836\MIS of MSJ.001.peremption.aac.doc

Under Louisiana law, an insured has a duty to read his insurance policy and know its provisions. Id.; see also Motors Ins. Co. v. Bud's Boat Rental, 917 F.2d 199, 205 (5th Cir.1990); Fidelity Homestead Ass'n v. Hanover Ins. Co., 2006 WL 2873562, at *3 (E.D.La. 2006); Stephens v. Audubon Ins. Co., 665 So.2d 683, 658 (La. App. 2 Cir. 1995) (citing Matthews v. Business Men's Assur. Co. of America, 478 So.2d 634, 637 (La.App. 2 Cir. 1985)); Perkins v. Shelter Ins. Co., 540 So.2d 488 (La.App. 1 Cir. 1989)). Knowledge that the terms of a policy directly contradict a representation or statement made by the insurance agent who sold the policy is sufficient to excite the attention of the victim and put her on guard. Dobson, 2006 WL 2078423, at *9.

Dobson v. Allstate Ins. Co. involved a home that was deemed a total loss because of damages caused by Hurricane Katrina. Dobson, 2006 WL 2078423, at *7. The loss was specifically caused by hurricane-driven water, which their insurer, Allstate, stated was excluded under the terms of their policy. In addition to filing suit on December 21, 2005 against its insurer, the plaintiffs also filed suit against their insurance agent Gregory Ruiz, alleging that they requested advice from their agent, who assured them "that the policy of fire (homeowner's) insurance he recommended included 'hurricane insurance' which would cover and insure the Plaintiffs for all damage associated with hurricanes." Id.

The court in Dobson held that the plaintiffs claims were preempted as per La. R.S. §9:5606. Id at *8. The unrebutted evidence showed that the policy in question was initially issued in 1991 and that it contained the exclusion for flood since that time. Id. The court stated that "since it is the terms of the flood exclusion that would render Ruiz' alleged statement to plaintiffs about the terms of their policy inaccurate, his alleged misconduct occurred in 1991 when he sold plaintiffs the policy containing the flood exclusion." Id. As a result, the claims

6

G:\DOCS\9000's\9800-9899\9836\MIS of MSJ.001.peremption.aac.doc

against the agent were preempted as per La. R.S. §9:5606 because, under the express terms of the statute, regardless of whether a plaintiff sues within one year of discovering her cause of action, the claim is still preempted if the plaintiff does not bring it within three years of the act, omission, or neglect.  La. R.S. §9:5606(A).

The court stated that even if the it were to consider plaintiffs' allegation that the last time their agent had negligently misrepresented the terms of their policy to them was in October 2004, they either knew or should have known of their agent's wrongful conduct as of that time because they had a copy of their policy, which had been provided to them by the insurer on or before October 2004.  Dobson, 2006 WL 2078423, at *9.  The court held that an insured party is generally responsible for reading his policy, and that he is presumed to know its provisions, and pointed out that the policy provided to the plaintiffs at that time contained the flood exclusion, as well as a notice advising the plaintiffs that "flood protection was generally not available under a homeowners policy and could be purchased through a separate policy."  Id.

**4.   Renewal Of The Policy Does Not Operate to Restart Peremption.**

Generally, the renewal of an insurance policy does not operate to toll or restart the one-year or three-year peremptive periods set out in La. R.S. 9:5606 because the renewal does not constitute a separate tort.  Dobson, 2006 WL 2078423, at *6; Fidelity Homestead Ass'n v. Hanover Ins. Co., 2006 WL 2873562, at *2 (E.D.La. 2006); Southern Athletic Club, LLC v. Hanover Ins. Co., 2006 WL 2583406, at *2 (E.D.La. 2006); Perez v. Metropolitan Property and Cas. Ins. Co., 2006 WL 2178753, at *3 (E.D.La. 2006).  In order for each renewal to constitute a separate tort, the complained of conduct must consist of separate and distinct acts, "each of which gives rise to immediately apparent damages", as opposed to being a "continuation of the

G:\DOCS\9000's\9800-9899\9836\MIS of MSJ.001.peremption.aac.doc

ill effects of an original unlawful act." <u>Biggers v. Allstate Ins. Co.</u>, 886 So.2d 1179, 1182 (La.App. 5 Cir. Oct 26, 2004) (quoting <u>Bel v. State Farm Mut. Auto. Ins. Co.</u>, 845 So.2d 377, 382 (La.App. 1 Cir. 2003); see also <u>Bustamento v. Tucker</u>, 607 So.2d 532, 540 (La.1992). The peremptive period generally runs from the date of the original purchase of the policy because the renewal process usually does not afford the insurance agent the opportunity to make further misrepresentations about the policy, thus not constituting a separate and distinct act. <u>Biggers</u>, 886 So.2d at 1182; <u>Bel</u>, 845 So.2d at 382-83.

<u>Perez v. Metropolitan Property and Cas. Ins. Co.</u> involved damage incurred to the plaintiff's home as a result of Hurricane Katrina. <u>Perez</u>, 2006 WL 2178753, at *1. The plaintiff alleged that his home and personal property were destroyed by wind and sought the policy limits under his homeowner's policy, which was initially purchased in 1985, together with penalties and attorney's fees. <u>Id.</u> The plaintiff filed suit against his insurer and insurance agent. <u>Id.</u>

The court in <u>Perez</u> held that the three-year peremptive period found in La. R.S. §9:5606 began to run in this case in 1985 when the homeowner policy was initially purchased. <u>Id</u> at *3; citing <u>Biggers</u>, 886 So.2d at 1183 (holding that peremptive period, applicable to the insured's negligence suit against agent, began when insured purchased policy). The court also held that "the fact that the plaintiff renewed his homeowner policy each year does not toll the one-year peremptive period under well-settled Louisiana law." <u>Id.</u>; citing <u>Bel</u>, 845 So.2d 377 ("[t]herefore, we find that the insurance policy renewals do not constitute separate and distinct torts, commencing the peremptive period anew at each renewal"); and <u>Biggers</u>, 886 So.2d at 1183 (peremptive period applicable to insured's negligence suit against agent began when plaintiff purchased policy, notwithstanding subsequent renewals); and <u>Bordelon v. Indep. Order of Foresters</u>, 2005 WL 3543815 (E.D.La. 2005) (peremptive period begins to run when policy is

8

acquired).  As a result, the suit the plaintiff filed against his agent in February 2006, over twenty years after the he purchased his homeowner policy from the agent, was perempted as per La. R.S. §9:5606.  Id at *4.

## ARGUMENT

### A. McKnight 's Claims Against Martin Are Perempted Under The One-Year Peremptive Period Set Out In La. R.S. §9:5606(A).

McKnight 's claims against Martin stem from policies that were issued by Lexington and Standard to the plaintiffs and were in effect on the date of the alleged loss, August 29, 2005.  The policies in question were renewed on October 2, 2004 and were in effect until October 2, 2005, representing a renewal of the original policies that were issued in October 2, 2003.  McKnight was supplied with a copy of the policies when they were originally issued on October 2, 2003, and, according to Louisiana Law cited above, the plaintiffs had a duty to read the policies and know their provisions.  As a result, the plaintiffs were put on actual or constructive notice that Martin failed to properly advise the plaintiffs and/or failed to procure adequate insurance coverage on October 2, 2003, and the peremptive period started to run on that date.

As stated above, the renewal of an insurance policy does not recommence the one-year or three-year peremptive periods set out in La. R.S. 9:5606 because the renewal does not constitute a separate tort.  See Dobson, 2006 WL 2078423, at *6; Fidelity Homestead Ass'n v. Hanover Ins. Co., 2006 WL 2873562, at *2 (E.D.La. 2006); Southern Athletic Club, LLC v. Hanover Ins. Co., 2006 WL 2583406, at *2 (E.D.La. 2006); Perez v. Metropolitan Property and Cas. Ins. Co., 2006 WL 2178753, at *3 (E.D.La. 2006).  Even if the policy renewal could recommence the peremptive period, the latest that Martin could have failed to properly advise the plaintiffs and/or failed to procure adequate insurance coverage was on October 2, 2004, when the policies were

9

Case 2:05-cv-04182-SRD-JCW   Document 3054-2   Filed 02/07/07   Page 10 of 11

renewed.  The Petition in this case was not filed until August 29, 2006, more than one year from

the October 2, 2004 renewal of the policies.

The claims against Martin are perempted under the one-year peremptive period set out in

La. R.S. §9:5606(A), which provides that suit must be filed "within one year from the date of the

alleged act, omission, or neglect, or within one year from the date that the alleged act, omission,

or neglect is discovered or should have been discovered."  As previously stated, McKnight  had

actual or constructive notice that Martin failed to properly advise the plaintiffs and/or failed to

procure adequate insurance coverage on October 2, 2003, the date the policy was originally

issued; therefore, the plaintiff had until one year from the October 2, 2003 issuance to file suit

but did not file until August 29, 2006.  Even if the court were to decide that the renewal date,

October 2, 2004, recommenced the peremptive period, the latest that Martin could have failed to

properly advise the plaintiffs and/or failed to procure adequate insurance coverage was on

October 2, 2004, the date the policy was renewed.  As a result, plaintiffs had one year from the

October 2, 2004 renewal of the policy to file suit and avoid the one-year peremptive period but

did not file until August 29, 2006.


## CONCLUSION

The claims against Martin are perempted under the one-year peremptive period because

the lawsuit was filed more than one year from the October 2, 2003 original issuance of the

policy, which is when Martin's alleged misconduct occurred and the date the peremptive period

began to run.  Although under Louisiana law the subsequent renewals of the policy issued on

October 2, 2003 do not serve to toll or restart the peremptive periods, even if the renewal on

October 2, 2004 were to recommence the peremptive period, the claims against Martin would

G:\DOCS\9000's\9800-9899\9836\MIS of MSJ.001.peremption.aac.doc

still be perempted under the one-year peremptive period because the lawsuit was filed on August

29, 2006, more than one year from the October 2, 2004 renewal.

**Respectfully submitted:**

**UNGARINO & ECKERT, LLC**


<u>**/s/ Stephen M. Gelé**</u>
**MATTHEW J. UNGARINO#15061**
**STEPHEN M. GELÉ *#22385 (T.A.)***
**Suite 1280 Lakeway Two**
**3850 North Causeway Boulevard**
**Metairie, Louisiana  70002**
**Telephone:     (504) 836-7537**
**Fax:              (504) 836-7538**
**sgele@ungarino-eckert.com**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 21, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all of the following: Gary M. Pendergast, John E. Baay, II, Robert I. Siegel, William A. Barousse, Gary J. Russo, Camille B. Poche, and Douglas C. Longman, Jr.

<u>/s/ Stephen M. Gelé</u>
UNGARINO & ECKERT, LLC
3850 N. Causeway Blvd., Suite 1280
Metairie, LA 70002
Telephone: (504) 836-7537
Fax: (504) 836-7538
sgele@ungarino-eckert.com

11

G:\DOCS\9000's\9800-9899\9836\MIS of MSJ.001.peremption.aac.doc