UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION NO. 05-4182 "K" (2) |
| PERTAINS TO LEVEE: | * * | JUDGE DUVAL |
| O'DWYER III, No. 06-5786 | * * | MAG. WILKINSON |

MEMORANDUM IN SUPPORT OF
CSX TRANSPORTATION, INC.'S MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(b)(6) (FAILURE TO STATE A CLAIM) AND
UNDER FED. R. CIV. P. 12(b)(5) (INSUFFICIENCY OF SERVICE OF PROCESS)

This is the third complaint filed by the *O'Dwyer* plaintiffs seeking to hold CSX Transportation, Inc. ("CSXT") liable for Katrina-related damages. This latest attempt repeats the same misguided allegations that the *O'Dwyer* plaintiffs already made – and CSXT already addressed – in *O'Dwyer I* (05-4181) and *O'Dwyer II* (06-4389).[1] Just as *O'Dwyer I* and *O'Dwyer II* should be dismissed, so too should this complaint.

---

[1] The allegations in Plaintiffs' "First Supplemental and Amending Protective Petition for Compensatory and Exemplary Damages and for Reasonable Attorney's Fee and Litigation in a Class Action Lawsuit Originally Filed in State Court Pursuant to the Louisiana Code of Civil Procedure" ("O'Dwyer III Complaint") are identical to the allegations in the proposed Second

944672-1

1

As articulated by CSXT previously,[2] the O'Dwyer III Complaint fails as a matter of law because (1) plaintiffs do not and cannot allege a legally enforceable duty owed by CSXT to plaintiffs, and (2) plaintiffs' claims are preempted by the Interstate Commerce Commission Termination Act of 1995 and the Federal Railroad Safety Act. In addition, plaintiffs have not properly served CSXT in this action. And because the O'Dwyer III Complaint is duplicative of two other O'Dwyer complaints, plaintiffs' litigation of this case should not be permitted. For these reasons, CSXT respectfully requests that its motion be granted and that the *O'Dwyer III* plaintiffs' claims against CSXT be dismissed.

## I. The Complaint Fails to Allege Any Duty Owed by CSXT to Plaintiffs and Therefore Fails to State a Claim.

In their third complaint, the *O'Dwyer* plaintiffs yet again fail to allege any duty owed to plaintiffs by CSXT. "A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627, 633 (La. 2006). In Louisiana, the existence of a duty and its scope are questions of law. *See Dupre v. Chevron, U.S.A., Inc.*, 20 F.3d 154, 159 (5th Cir. 1994). The failure to allege a duty renders a complaint legally deficient. *Johnson v. United States*, 547 F.2d 688, 695 n.47 (D.C. Cir. 1976) (citing 5 C. Wright & A. Miller, *Federal Practice* § 1249 at 224-28 (1969)); *Campbell v. City of San*

---

Supplemental and Amending Complaint in O'Dwyer II (No. 06-4389). In O'Dwyer II, plaintiffs sought leave to amend to include the very same allegations in the O'Dwyer III Complaint. Plaintiffs' Motion for Leave to Amend (Dkt. No. 2014) and CSXT's Opposition (Dkt. No. 2189) are pending before this Court.

[2] CSXT incorporates by reference the arguments made in CSX Transportation, Inc.'s Motion for Dismissal under Rule 12(b)(6) (Failure to State a Claim) (Aug. 29, 2006) (No. 05-4181, Dkt. No. 1045); Reply in Support of CSX Transportation, Inc.'s Motion to Dismiss (Oct. 27, 2006) (No. 05-4181, Dkt. No. 1464); CSX Transportation, Inc.'s Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Nov. 29, 2006) (No. 06-4389, Dkt. No. 1886); and CSX Corporation and CSX Transportation, Inc.'s Opposition to Motion For Leave to File Second Supplemental And Amending Complaint (Dec. 12, 2006) (No. 06-4389, Dkt. No. 2189).

*Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." (citations omitted)).

The O'Dwyer III Complaint alleges that CSXT "owned, operated and controlled the right-of-way, roadbed and railroad track, which penetrated the New Orleans Flood Defense System ..." in a manner that had been "negligently designed, constructed and maintained" and that those penetrations "served as conduits for storm surge" during Hurricane Katrina. O'Dwyer III Compl. ¶ II.XXIX. CSXT agrees that it owns tracks that run through parts of New Orleans. But "owning tracks" is not tortious, and does not alone give rise to legal duties in tort. Duty is a concept founded upon a nexus between a plaintiff and defendant sufficient to hold one accountable to the other. *See Lemann*, 923 So.2d at 633 ("The inquiry is whether the plaintiff has any law (statutory, jurisprudential or arising from general principles of fault) to support the claim that the defendant owned him a duty.").

A railroad operator, such as CSXT, simply has no duty in tort to safeguard the citizens of New Orleans from natural disasters or to protect populations from floods. And the scope of any tort duty CSXT owes to anyone in connection with the construction, maintenance, and operation of its rail property is confined by the risk, harm, and plaintiff at issue. "The essence of a scope of duty inquiry is whether the risk and harm encountered by the plaintiff fall within the scope and protection of the [law]... Since the law never gives absolute protection to any interest, recovery will be allowed only if a rule of law on which plaintiff relied includes within its limits protection against the particular risk that plaintiff's interests encountered." *Lazard v. Foti*, 859 So.2d 656, 660-61 (La. 2003).

In seeking to hold CSXT liable for hurricane-related flood damages, the O'Dwyer III Complaint never articulates how this flood damage is related to any duty owed by this private actor. While the Corps of Engineers and the Levee Board may have such a duty to protect the public from flooding, CSXT does not.[3] Absent any legislative duty to provide flood protection, private actors such as CSXT have no duty to protect the population of a city from floodwaters or hurricane damage. As this Court has noted, "the Board of Commissioners of the Orleans Levee District has the *full and exclusive* right and jurisdiction over the levees" and the levee districts have "the right to maintain the levees." Order and Reasons (Sept. 13, 2006) (Dkt. No. 1133) (citing La. Rev. Stat. 38:307 and 38:301 and granting 12(b)(6) motion filed by City of New Orleans) (emphasis added). And as the Honorable Judge Sarah Vance of this Court recently held in a similar class action claim for Hurricane Katrina damages, Louisiana courts *have not and would not* impose a duty to protect hundreds of thousands of plaintiffs from flooding. *See Barasich v. Columbia Gulf Transmission Co.*, No. 05-4161, 2006 U.S. Dist. Lexis 86062, at *47-56 (E.D. La. Sept. 28, 2006). Respectfully, the same result should follow here.

## II. The Claim Against CSXT is Preempted by Federal Railroad Law.

The O'Dwyer III Complaint asserts that CSXT's roadbed and railroad track, and their intersection with the New Orleans flood protection system, were "negligently designed,

---

[3] Congress has for several decades fixed upon a single entity – the Army Corps of Engineers, and not CSXT– the responsibility to protect United States populations from floods. *See* 33 U.S.C. §§ 701 et seq. (Congress mandated that Army Corps of Engineers is to provide hurricane and flood protection for the City of New Orleans). The Louisiana legislature in turn has imposed some level of flood-protection responsibility upon the Board of Commissioners of the Orleans Levee District – again, not on CSXT. *See Bd. Of Comm'rs of the Orleans Levee Dist. v. Dep't of Natural Res.*, 496 So.2d 281, 289 (La. 1986) (Louisiana legislature has given this Board authority and duty to protect New Orleans citizens from damage by flood); *Volkswagen of America, Inc. v. Robertson*, 713 F.2d 1151, 1154 (5th Cir. 1983) (Orleans Levee District maintains the hurricane protection levees in the New Orleans area, in compliance with the designs, plans, specifications, and requirements of the Corps of Engineers).

constructed and maintained" and that the penetrations "failed to adequately close" prior to Hurricane Katrina, resulting in flooding. O'Dwyer III Compl. ¶ II.XXIX. As explained in great detail in CSXT's other motions to dismiss in the *O'Dwyer* actions, such attempts to dictate how and where CSXT constructs, maintains and operates its track, roadbed, and right-of-way are preempted[4] by the Federal Railroad Safety Act ("FRSA") and the Interstate Commerce Commission Termination Act ("ICCTA").

### A. Plaintiffs Have Conceded Federal Preemption Of These State Tort Claims By Invoking The Federal Railroad Safety Act And The Interstate Commerce Clause Termination Act.

Plaintiffs assert that CSXT is "liable to plaintiffs under the provisions of the Federal Railroad Safety Act and/or the Interstate Commerce Termination Act of 1995 [sic]" and, alternatively, that CSXT is "liable to plaintiffs for negligent violations" of the FRSA and the ICCTA. Plaintiffs thereby acknowledge what CSXT has *repeatedly* stated in this consolidated litigation – that state tort claims relating to railroad safety and to railroad construction or operation are superseded, and thus preempted by, the FRSA and the ICCTA. Plaintiffs' invocation of these two federal railroad regulatory schemes in the O'Dwyer III Complaint is apparently an attempt to assert claims against CSXT directly under the FRSA and the ICCTA.

---

[4] The doctrine of federal preemption is rooted in the Supremacy Clause of the Constitution: "[T]he laws of the United States... shall be the Supreme Law of the Land." U.S. Const. art. VI, cl. 2. The Supremacy Clause authorizes Congress to preempt state law in the legitimate exercise of its legislative authority: "Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law...." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 368 (1986). "Because federal law is the supreme law of the land, it preempts state laws that 'interfere with, or are contrary to, federal law.'" *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002) (quoting *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985)).

To the extent that plaintiffs are attempting to assert claims under either the FRSA or the ICCTA, this Court is not the appropriate forum for those actions.

There is no express or implied cause of action under the FRSA, and plaintiffs' attempt to create one is inherently flawed. The FRSA neither "impose[s] strict liability" nor is there any cause of action for what plaintiffs deem "negligent violation of" the FRSA. "By its terms, the FRSA does not provide a general private right of action to either (1) enforce compliance with safety regulations or (2) seek moneys based on loss caused by violations of those regulations." *Nippon Yusen Kaisha v. Union Pac. R.R. Co.*, No. CV 048861, 2005 WL 1241866, at *2 (C.D. Cal. 2005). Instead, "'the language of [the FRSA] is but a command to a federal agency, creating no rights in individuals.'... The FRSA specifically vests enforcement of safety standards solely within the power of the Secretary of Transportation." *Id.* (quoting *DeBiasio v. Illinois Cent. R.R.*, 1992 U.S. Dist. LEXIS 15573, *8-9 (N.D. Ill. Oct. 8, 1992). Not only does the language of the FRSA preclude any express private cause of action, the FRSA does not create an implied private cause of action either. *Id.* ("[I]t is clear that Congress did not intend to create a private right of action.").

"Rather than create a private cause of action, the FRSA creates an extensive regulatory scheme that places all authority over safety standards in the hands of the FRA and, in limited circumstances, certain state agencies," *not* in the hands of private plaintiffs. *Id. (citations omitted); see also Abate v. So. Pac. Transp. Co.*, 928 F.2d 167, 170 (5th Cir. 1991) ("The structure of the FRSA indicates that Congress intended to give federal agencies, *not private persons*, the sole power of enforcement." (emphasis added)). Plaintiffs' assertion of strict liability and negligence claims under the FRSA is therefore misguided as no such claims can exist under the statute.

The ICCTA similarly does not create a private right of action that can be heard in this Court. Instead, the ICCTA vests the Surface Transportation Board ("STB") with complete and exclusive jurisdiction over claims related to railroad operation and railroad construction. 49 U.S.C § 10501(b) ("The jurisdiction of the Board over… the construction, acquisition, operation, abandonment, or discontinuance of… tracks or facilities… is exclusive."). The STB alone has jurisdiction over claims related to railroad track location, construction, or operation – such as those contained in the O'Dwyer III Complaint – and the proper recourse, and redress, for a complaint about location and maintenance of rail tracks and rights-of-way is to petition the STB. *See* 49 C.F.R. Part 1111 (Surface Transportation Board – Complaint and Investigation Procedures).

Plaintiffs' references to the FRSA and the ICCTA in the O'Dwyer III Complaint do not further their case in any manner, as the assertions are either preempted by federal statute or are not properly before this Court. Accordingly, plaintiffs' claims should be dismissed.

**B.     The Claim Against CSXT is Preempted by the ICCTA.**

With its enactment of the ICCTA, Congress intended to "significantly reduce state and local regulation of railroads." *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 839 (E.D. Ky. 2004). Through the ICCTA Congress established the STB as an agency within the United States Department of Transportation with authority to regulate all aspects of railroad operations. *See* 49 U.S.C. § § 701(a), 702 (2000). Specifically, Section 10501 of the ICCTA reserves for the STB, and only the STB, "jurisdiction of the Board over… the construction, acquisition, operation, abandonment, or discontinuance of… tracks or facilities." 49 U.S.C. § 10501(b). Removing any doubts, Section 10501 concludes that the STB's jurisdiction over this broad sweep of rail

operations is *"exclusive"* and *"preempt[s] the remedies provided under Federal or State law."* *Id.* (emphasis added).[5]

The O'Dwyer III Complaint finds fault with the location of a CSXT right-of-way (alleging that it "penetrated" New Orleans' flood defense system) and how CSXT "designed, constructed and maintained" its "right-of-way, roadbed and railroad track." O'Dwyer III Compl. ¶ II.XXIX. Plaintiffs complain, in other words, about the "remedies provided . . . with respect to . . . [CSXT's] routes" and the "construction, acquisition, [and] operation" of "spur, industrial, team, switching, or side tracks, or facilities . . . ." 49 U.S.C. § 10501. Through a state law tort action, plaintiffs are asking a court to dictate where CSXT places its rail track and roadbed and how it operates its right-of-way. According to the clearly expressed will of Congress, only the STB has jurisdiction over such an action. *See Emerson v. Kan. City S. Ry. Co.*, No. Civ-05-331-KEW, 2006 WL 1785460, at *3 (E.D. Okla. June 26, 2006) (negligence claims that track drainage deficiencies resulted in flooding of plaintiffs' land "bear directly upon the 'practices,' 'operation,' and 'construction' in regards to Defendant's 'facilities,' namely the track in the

---

[5] Courts have long recognized the exceedingly broad reach of ICCTA preemption. "It is clear that the ICCTA has preempted *all* state efforts to regulate railroad transportation." *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013 (W.D. Wisc. 2000) (emphasis added); *see also CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996) ("[i]t is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations"); *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001) ("the plain language of the statute itself, and in particular its preemption provision, is so certain and unambiguous as to preclude any need to look beyond that language for congressional intent"). Courts have applied the ICCTA to preempt state regulation of rail transportation in a wide variety of settings, covering the broadest array of attempts at state regulation. *See, e.g., id.* at 439 (ICCTA held to preempt common law negligence claim); *City of Auburn v. United States*, 154 F.3d 1025, 1031 (10th Cir. 1998) (ICCTA held to preempt state and local environmental laws); *S.D. R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.*, 280 F. Supp. 2d 919 (D.S.D. 2003) (ICCTA held to preempt state law claims for punitive damages and tortious interference); *Burlington N. Santa Fe Ry. Corp. v. Anderson*, 959 F. Supp. 1288 (D. Mont. 1997) (ICCTA held to preempt state closure authority).

affected area" and therefore "are expressly reserved to the exclusive jurisdiction of the STB"); *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 843 (E.D. Ky. 2004) (ICCTA held to preempt negligence claims for flooding as a result of "construction and/or maintenance of the tracks and crossings"). Thus, the sole claim in *O'Dwyer III* against CSXT is preempted by the ICCTA.

### C. The Claim Against CSXT is Preempted by the FRSA.

Congress enacted the FRSA "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA vests in the Secretary of Transportation broad powers to prescribe regulations for *"**every area** of railroad safety.*" 49 U.S.C. § 20103(a) (emphasis added). With the FRSA Congress sought nationwide uniformity in the area of rail safety: "Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106. With limited exceptions pertaining to purely local hazards, a state law or lawsuit is preempted by the FRSA whenever the Act's implementing regulations "cover" or "substantially subsume" the subject matter of the state law or action. *See, e.g., CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 661, 675 (1993) (maximum railroad-speed regulations "cover" the subject-matter of train speed and therefore preempt a jury verdict that a train was traveling at an excessive speed).

Pursuant to his authority under the FRSA, the Secretary has long regulated the construction and maintenance of railroad tracks and roadbeds, including regulations directly aimed at ensuring proper drainage of track areas. *See* 49 C.F.R. Part 213, subparts B and D. Subpart B ("Roadbed," §§ 213.31 *et seq.*) prescribes minimum requirements for "roadbed and areas immediately adjacent to a roadbed." Subpart D ("Track Structure," § 213.101 *et seq.*)

prescribes minimum requirements for "ballast, crossties, track assembly fitting, and the physical condition of rails." The track regulations include 49 C.F.R. § 213.103, directly addressing the supporting material used in the construction of roadbeds:

> Unless it is otherwise structurally supported, all track shall be supported by material which will –
>
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
> (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
> (c) Provide adequate drainage for the track; and
> (d) Maintain proper track crosslevel, surface, and alignment.

Because FRSA regulations "cover" the manner in which railroads design and construct their roadbeds and tracks, and specifically address the nature of the supporting materials, a state action purporting to affect how a railroad's roadbed or track is "designed, constructed and maintained" or how it is supported, is preempted.

The O'Dwyer III Complaint attempts precisely this. By alleging CSXT was negligent in the "design[ ], construct[ion] and maint[enance]" of its "right-of-way, roadbed and railroad track" through its choice of construction and support materials ("the railroad embankment fill"), the complaint seeks to impose obligations upon CSXT irrespective of, and in conflict with, its compliance with the requirements established by FRSA regulations. Such a claim defies Congressional intent to create a nationally uniform set of standards applicable to railroads.

FRSA preemption applies, therefore, unless plaintiffs' negligence claim falls within the narrow "local" safety or security hazard savings clause. The FRSA's savings clause permits a state to adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation or order meets three conditions: (1) it is necessary to eliminate or reduce an essentially local safety hazard; (2) it is not incompatible with a federal

944672-1

10

law, regulation, or order; and (3) it does not unreasonably burden interstate commerce. Plaintiffs' claim meets none of these conditions. 49 U.S.C. § 20106.

First, the only conceivable "safety hazard" plaintiffs attempt to address in their complaint is flooding. Flooding is anything but "essentially local." To state the obvious, New Orleans is not the only jurisdiction where local, state, and federal governments must determine how flood protections systems and railroad operations may be integrated. A hazard is a "discrete and truly local hazard" if it "relates to the avoidance of a specific collision." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 640 (5th Cir. 2005) (citation omitted). A condition that could occur anywhere at any time – such as a flood – is not a discrete, truly local hazard. *Id.*

Second, the plaintiffs' claim is "incompatible" with FRSA law and regulations. The FRSA imposes safety standards governing how CSXT is to design and construct its right-of-way, roadbed, and track. The *O'Dwyer III* plaintiffs attempt to create some other standard through the guise of a negligence action. This attempt is incompatible with regulations promulgated under the FRSA that already "cover" these very aspects of CSXT's operations.

Finally, plaintiffs' claim would "unreasonably burden interstate commerce." In evaluating this burden, courts consider "the practical and cumulative impact were other States" to take similar actions. *CSX Transp. Inc. v. Williams*, 406 F.3d 667, 673 (D.C. Cir. 2005). The court in *Williams* weighed the burden of a proposed local ban on a railroad's shipment of certain types of freight, considering the effect not only of that one jurisdiction's ban, but also the possibility of multiple, varying bans throughout the country. As the D.C. Circuit observed in *Williams*, "[i]t would not take many similar bans to wreak havoc with the national system of hazardous materials shipment." *Id.* (citation omitted). So here, the prosecution of civil actions nationwide seeking monetary awards to discipline where a railroad locates, and how it "maintains

and builds" rail tracks and roadbeds would create anything but nationwide uniformity, and would "wreak havoc" on our nation's system of rail transportation. In questioning a rail entity's construction and design of its track and roadbed, the *O'Dwyer III* plaintiffs seek to regulate an area substantially "covered" by the FRSA. Thus, their claim against CSXT is preempted and should be dismissed.

**III.   Plaintiffs' Complaint Should Be Dismissed for Improper Service.**

On January 22, 2007, plaintiffs sent a copy of the original petition, the amended petition, and a summons, by United States Postal Service certified mail, addressed to:

> Mr. Michael J. Ward
> Chairman, President and Chief Executive Officer
> CSX Corporation
> 500 Water Street
> Jacksonville, FL 32202

Plaintiffs' mailing was received at that address on January 25, 2007. This was plaintiffs' only attempt to serve CSXT in this action.

The purported service of the petition and summons on CSXT is insufficient and invalid because it was not made on CSXT's agent for service of process, as required by Louisiana law. Service on someone other than the agent for service of process is invalid unless the process-server certifies that he is unable, after due diligence, to serve the agent. Here, CSXT has an agent for service of process in Louisiana, plaintiffs did not make service on that agent, and no process-server has certified that he was unable to serve that agent. Therefore the attempted service on CSXT through someone other than its agent for service – in this case, service on a corporate

944672-1                                       12

officer *of another corporation* in Florida -- is invalid. Plaintiffs' action against CSXT should be dismissed under Fed. R. Civ. P. 12(b)(5) (insufficiency of service of process).[6]

Service of a summons and complaint on a corporation such as CSXT is governed by Fed. R. Civ. P. 4(h) ("Service Upon Corporations and Associations"). Rule 4(h) says that service on a domestic or foreign corporation, if it is to be made in a judicial district of the United States, may be made either under Rule 4(e)(1) or by delivery to an officer or other specified persons. Because plaintiffs have not delivered a copy of the petition and summons to any officer or agent of CSXT, they must show that they have made proper service under Rule 4(e)(1).

Rule 4(e)(1) says that service may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State . . . ." Plaintiffs therefore are required to show that they made service on CSXT pursuant to the law of the State of Louisiana.

The pertinent Louisiana law is La. Code Civ. P. art. 1261(B). Article 1261 requires personal service on the corporation's agent of service, and allows other methods only "[i]f the [defendant] corporation has failed to designate an agent for service of process, if there is no registered agent by reason of death, resignation, or removal, or if the person attempting to make service certifies that he is unable, after due diligence, to serve the designated agent . . . "

When a corporation has an agent for service of process, as CSXT does in Louisiana, service of petition and citation <u>must</u> be made on the agent of process and may not be made in any

---

[6] In another of the consolidated actions the same plaintiffs' lawyer has served CSX Transportation, Inc. through its agent for service of process, *see* Dkt. 833 (return on service in No. 05-4181), and there is no explanation why he has failed to do so in the present action.

944672-1                                13

other fashion. Until the plaintiff shows that he has made a diligent but unsuccessful effort to serve the agent, service on any other person or by any other method is invalid. *See, e.g., Scott Fence Indus., Inc. v. Neuenhaus*, 490 So. 2d 1132, 1134 (La. Ct. App. 5th Cir. 1986) ("A plaintiff must first make a diligent effort to serve a corporation's registered agent for service of process before using an alternative form of service on a corporation.").

Defendant CSXT has an agent for service of process in Louisiana. *See* **Exhibit A**, (certificate taken from the record of the Louisiana Secretary of State showing that CSXT's agent for service of process in Louisiana is Corporation Service Company, 320 Somerulos St., Baton Rouge, La 70802-6129, appointed in August of 2005). Plaintiffs do not state, and there is nothing in the record to show, that any attempt to serve CSXT through that registered agent of service of process was ever made. In particular, there is no due-diligence certification of inability to serve the registered agent, as required by article 1261. Therefore, plaintiffs' attempt to serve CSXT through anyone other than Corporation Service Company is invalid. Plaintiffs' action against CSXT should be dismissed under Fed. R. Civ. P. 12(b)(5).

## IV. The Court Should Dismiss, Or Alternatively, Stay This Action Because It Is Duplicative

The plaintiffs have filed three separate class action lawsuits – amended on numerous occasions – which allege substantially the same legal theories and make the same fact allegations on behalf of the same group of plaintiffs. Trying these three cases at the same time serves only to give plaintiffs three opportunities at every phase of the litigation to perfect their responses. It is simply impermissible for plaintiffs to pursue the same case *three separate times*.

Allowing these duplicative cases to remain and proceed is a waste of both the parties and the Court's time and resources. Accordingly, CSXT respectfully requests that this Court dismiss

the *O'Dwyer III* action because it is duplicative of *O'Dwyer I* and *O'Dwyer II*. It is a waste of this Court's resources, and the resources of all defendants involved in the *O'Dwyer* actions to be forced to litigate *the same case* three times.

If the Court deems dismissal on this ground not appropriate, CSXT respectfully requests that the Court issue a stay in *O'Dwyer III*. For purposes of the stay, *O'Dwyer III* should track *O'Dwyer I* and *O'Dwyer II*. Should either *O'Dwyer I* or *II* be dismissed, or should individual plaintiffs or defendants be dismissed in either of these two cases, CSXT submits that *O'Dwyer III* – as stayed – should dismiss the same parties or, if appropriate, the entire case. This will prevent this duplicative litigation from proceeding, which will benefit both the Court and the parties.

## CONCLUSION

Plaintiffs have failed to plead negligence against CSXT and have asserted a claim preempted by federal railroad laws. Plaintiffs have also failed to properly serve CSXT. Respectfully, the O'Dwyer III Complaint should be dismissed as to CSXT for failure to state a claim under Rules 12(b)(6) and 12(b)(5).

                      Respectfully submitted,

                      _s/ Jonathan C. McCall_
                      BRENT A. TALBOT (#19174)
                      JONATHAN C. MCCALL (#9227)
                      MICHAEL D. SPENCER (#27649)
                        -of-
                      **CHAFFE McCALL, L.L.P.**
                      2300 Energy Centre
                      1100 Poydras Street
                      New Orleans, Louisiana 70163-2300
                      Telephone: (504) 585-7000
                      Facsimile: (504) 585-7075

                      and

        ROY J. RODNEY, JR. (#02079)
        JOHN K. ETTER (#25042)
          -of-
        **RODNEY & ETTER, L.L.C.**
        620 North Carrollton Avenue
        New Orleans, Louisiana 70119
        Telephone: 504-483-3224
        Facsimile: 504-483-2259

**ATTORNEYS FOR CSX TRANSPORTATION, INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that on this 8th day of February, 2007, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management. All counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

                                                               s/ Jonathan C. McCall