UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION NO. 05-4182 "K" (2) |
| PERTAINS TO LEVEE: | * * | JUDGE DUVAL |
| ADAMS, No. 06-4634 TAUZIN, No. 06-0020 | * * * | MAG. WILKINSON |

MEMORANDUM IN SUPPORT OF
CSX TRANSPORTATION, INC.'S MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(b)(6) (FAILURE TO STATE A CLAIM)

The complaint in *Adams, et al. v. Boh Brothers Construction, et al.*, Civil Action No. 06-4634 ("Adams Compl."), and the Second Amended Class Action Complaint in *Tauzin, et al. v. Board of Commissioners for the Orleans Parish Levee District, et al.*, Civil Action 06-0020 ("Tauzin Compl."), both seek to hold CSX Transportation, Inc. ("CSXT") liable for damages allegedly suffered by plaintiffs when Hurricane Katrina breached the New Orleans levee system on August 29, 2005. However, these complaints are both legally deficient and fail to state a claim against CSXT for two reasons. First, plaintiffs do not allege a legally enforceable duty owed by CSXT to plaintiffs – an essential element of their negligence claim – nor could they. Further, in asking this Court to instruct CSXT on the "design and construction" of its rail system,

940555_1.DOC

plaintiffs run headlong into the preemptive effect of two separate federal railroad regulatory schemes – the Interstate Commerce Commission Termination Act of 1995 and the Federal Railroad Safety Act.

For these reasons, CSXT respectfully requests that its motion be granted and that the *Adams* and *Tauzin* plaintiffs' claims against CSXT be dismissed.[1]

### I.   The *Adams* and *Tauzin* Complaints Fail to Allege Any Duty Owed by CSXT to Plaintiffs and Therefore Fail to State a Claim

"A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006). In Louisiana the existence of a duty and its scope are questions of law. *See Dupre v. Chevron, U.S.A., Inc.*, 20 F.3d 154, 159 (5th Cir. 1994). The failure to allege a duty renders a complaint legally deficient. *Johnson v. United States*, 547 F.2d 688, 695 n.47 (D.C. Cir. 1976) (citing 5 C. Wright & A. Miller, *Federal Practice* § 1249 at 227-28 (1969)); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial" (citations omitted)).

---

[1]   While there are differences in the *Adams and Tauzin* actions, the CSXT-specific allegations in both the Adams Complaint and Tauzin Complaint are identical. Adams Compl. ¶ 28(4); Tauzin Compl. ¶¶ 39-40. In deference to the Court's November 29, 2006, Minute Entry (Dkt. No. 2034), CSXT is responding to both *Tauzin* and *Adams* in one Motion to Dismiss under Federal Rule 12(b)(6). In addition, CSXT incorporates by reference its motions to dismiss filed in CSX Transportation, Inc.'s Motion for Dismissal under Rule 12(b)(6) (Failure to State a Claim) (Aug. 29, 2006) (No. 05-4181, Dkt. No. 1045); Reply in Support of CSX Transportation, Inc.'s Motion to Dismiss (Oct. 27, 2006) (No. 05-4181, Dkt. No. 1464); CSX Transportation, Inc.'s Motion for Dismissal under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Motion for Summary Judgment Under Rule 56 (Nov. 20, 2006) (No. 06-5131, Dkt. No. 1697); CSX Transportation, Inc.'s Motion for Dismissal under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Motion for Summary Judgment Under Rule 56 (Nov. 20, 2006) (No. 06-5132, Dkt. No. 1698); and CSX Transportation, Inc.'s Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Nov. 29, 2006) (No. 06-4389, Dkt. No. 1886).

The *Adams* and *Tauzin* plaintiffs allege that CSXT is liable for their flood damage due to the "negligent design and construction of a railroad crossing." Adams Compl. ¶ 28(4); Tauzin Compl. ¶ 39. Specifically, plaintiffs claim that CSXT "used highly erodible, lightweight and/or porous materials... in their flood protection structures, which caused them to be significantly weaker than the surrounding flood protection structures." Adams Compl. ¶ 28(4); Tauzin Compl. ¶ 39.[2] Further, plaintiffs fault CSXT for "negligently failing to take reasonable and inexpensive steps to prevent their flood protection structures' failure." Adams Compl. ¶ 28(4); Tauzin Compl. ¶ 40.

CSXT does not have a legally cognizable duty to protect plaintiffs or the population of New Orleans from flood damage. While the *Adams* and *Tauzin* plaintiffs use slightly different language in their respective complaints, both complaints explicitly recognize that it is the New Orleans Levee Board which has jurisdiction over and responsibility for the maintenance of the New Orleans flood protection system. Adams Compl. ¶ 28(11) ("[t]he Orleans Levee District was legally charged with the obligation, jurisdiction, power and authority to ensure the proper construction, maintenance, inspection and design of the levees and flood walls); Tauzin Compl. ¶ 15(a) (the Orleans Levee District is "responsible for the development and maintenance of, and ***directly in charge of and responsible for*** the efficient operation and maintenance of ***all*** of the levee structures and facilities) (emphasis added). Indeed, the Adams Complaint specifically alleges: "[t]he Orleans Levee District has the ***full and exclusive right, jurisdiction, power and authority*** to locate, relocate, construct, maintain, extend, and improve levees, embankments" and other parts of the New Orleans flood protection system. Adams Compl. ¶ 28(11) (emphasis added). CSXT thus has no duty to erect "flood protection structures" or to protect the residents

---

[2] In fact, plaintiffs do not identify any flood protection structures built or maintained by CSXT. Rather, plaintiffs erroneously conclude – without offering any factual support – that rail crossings and roadbeds are flood protection structures.

of New Orleans from flood damage. Such a duty, if there is one, rests with others,[3] not with private railroad entities such as CSXT.

As fundamentally, tort law does not impose duties owed to the public at large. Plaintiffs in both *Adams* and *Tauzin* seek to represent a class composed of *all* residents, domicilaries, and property owners of the Parishes of Orleans and Jefferson damaged during Hurricane Katrina by the failure of the hurricane protection levees and floodwalls. Adams Compl. ¶ 10; Tauzin Compl. ¶ 13. Duties in negligence are not owed to an "area" and are not owed to an entire city or city population. They are owed to specific people with whom one has a relationship or legally sufficient nexus. "[N]egligence does not exist in the abstract, it contemplates a legal duty owing from one party to another...." *Tappen v. Ager*, 599 F.2d 376, 379 (10th Cir. 1979). A tort plaintiff "must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for '[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.'" *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (N.Y. 2001) (citations omitted).

CSXT simply does not have a general duty in tort to protect whole city populations from hurricane damage. This is a police power notion alien to private tort law. Moreover, a railroad's roadbeds are not "flood protection structures." Notwithstanding plaintiffs' attempts to

---

[3] Congress has for several decades fixed upon a single entity – the Army Corps of Engineers – responsibility to protect United States populations from floods. *See* 33 U.S.C. § § 701, *et seq.* (Congress mandated that Army Corps of Engineers is to provide hurricane and flood protection for the City of New Orleans). In turn, the Louisiana legislature has imposed some level of flood-protection responsibility upon the Board of Commissioners of the Orleans Levee District. *See Volkswagen of America, Inc. v. Robertson*, 713 F.2d 1151, 1154 (5th Cir. 1983) (Orleans Levee District maintains the hurricane protection levees in the New Orleans area, in compliance with the designs, plans, specifications, and requirements of the Corps of Engineers); *see also* Order and Reasons (Sept. 13, 2006) (Dkt. No. 1133) (as this Court has noted, "the Board of Commissioners of the Orleans Levee District has the full and exclusive right and jurisdiction over the levees" and the levee districts have "the right to maintain the levees") (citing La. Rev. Stat. 38:307 and 38:301 and granting 12(b)(6) motion filed by City of New Orleans). Indeed, both the *Adams* and *Tauzin* plaintiffs acknowledge in their respective complaints that "the project at issue was a federal construction project *undertaken by the Army Corps of Engineers.*" Adams Compl. ¶ 5; Tauzin Compl. ¶5 (emphasis added).

recharacterize their function, CSXT's railroad tracks and crossings simply are not a part of the City of New Orleans' flood protection system. The latter, as admitted in *Adams*, is designed and maintained *exclusively* by the Orleans Levee Board. Adams Compl. ¶ 28(11); *see also* Tauzin Compl. ¶ 41 (The New Orleans' flood protection system is "within the jurisdiction and control of the Levee Board"). As the Honorable Judge Sarah Vance of this Court recently held in a similar class action claim for Hurricane Katrina damages, Louisiana courts *have not and would not* impose a duty to protect hundreds of thousands of plaintiffs from flooding. *See Barasich v. Columbia Gulf Transmission Co.*, No. 05-4161, 2006 U.S. Dist. Lexis 86062, at *47-56 (E.D. La. Sept. 28, 2006). Respectfully, the same result should follow here.

## II. The *Adams* and *Tauzin* Claims Against CSXT are Preempted by Federal Railroad Law.

Plaintiffs' negligence claims against CSXT in both *Adams* and *Tauzin* are based entirely on the "design and construction of a railroad crossing." Adams Compl. ¶ 28(4); Tauzin Compl. ¶¶ 39-40. Specifically, the Adams Complaint and the Tauzin Complaint fault CSXT for using "highly erodible, lightweight, and/or porous materials," for failing "to install a 'sheetpile cutoff' or similar device to prevent or limit erosion of its structure," and for not "installing concrete 'splash pads' or other erosion protection devices at the base of the 'I-walls.'" *Id.* Such claims are preempted by two separate federal railroad regulatory schemes - the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") and the Federal Railroad Safety Act ("FRSA").

### A. Federal Railroad Law Broadly and Expressly Preempts State Regulation.

The doctrine of federal preemption is rooted in the Supremacy Clause of the Constitution: "[T]he laws of the United States… shall be the Supreme Law of the Land." U.S. Const. art. VI, cl. 2. The Supremacy Clause authorizes Congress to preempt state law in the legitimate exercise

of its legislative authority: "Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law...." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 368 (1986). "Because federal law is the supreme law of the land, it preempts state laws that 'interfere with, or are contrary to, federal law.'" *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002) (quoting *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985)).

Railroads are subject to the regulatory authority of Congress under the Commerce Clause. *See, e.g., Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Executives Ass'n*, 491 U.S. 490, 510 (1989); *Houston, E & W Tex. Ry. Co. v. United States*, 234 U.S. 342, 350-52 (1914). The United States Supreme Court "repeatedly has recognized the preclusive effect of federal legislation" in the area of railroad regulation. *City of Auburn v. United States*, 154 F.3d 1025, 1029 (9th Cir. 1998).

Congress initially asserted federal authority over the railroad industry by enacting the Interstate Commerce Act, ch. 104, 24 Stat. 379 (1887), which has been acknowledged as "'among the most pervasive and comprehensive of federal regulatory schemes.'" *City of Auburn*, 154 F.3d at 1029 (citation omitted). Federal regulation of the railroad industry, already sweeping, expanded further in 1995 when Congress enacted the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. §§ 10101 *et seq.* ("ICCTA"), including within the ICCTA an express preemption of state "regulation of rail transportation."

In addition, Congress enacted the Federal Railroad Safety Act, 49 U.S.C. §§ 20101 *et seq.*, ("FRSA"), to promote safety in all areas of railroad operations. The FRSA broadly regulates rail safety, and like the ICCTA contains a sweeping express preemption clause. If the

"subject matter" of a lawsuit "covers" railroad safety, with limited exception the FRSA and its supporting regulations preempt the action.

### B. The *Adams* and *Tauzin* Claims Against CSXT are Preempted by the ICCTA.

With its enactment of the ICCTA, Congress intended to "significantly reduce state and local regulation of railroads." *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 839 (E.D. Ky. 2004). Through the ICCTA Congress established the Surface Transportation Board ("STB") as an agency within the United States Department of Transportation with authority to regulate all aspects of railroad operations. *See* 49 U.S.C. §§ 701(a), 702 (2000).

Specifically, Section 10501 of the ICCTA reserves for the STB, and only the STB, jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,....

49 U.S.C. § 10501(b). Removing any doubts, Section 10501 concludes that the STB's jurisdiction over this broad sweep of rail operations is *"exclusive"* and *"preempt[s] the remedies provided under Federal or State law."* *Id.* (emphasis added).

Courts have long recognized the exceedingly broad reach of ICCTA preemption. "It is clear that the ICCTA has preempted *all* state efforts to regulate railroad transportation." *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013 (W.D. Wisc. 2000) (emphasis added); *see also CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996) ("[i]t is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations"); *Friberg v. Kansas City S. Ry. Co.*,

267 F.3d 439, 443 (5th Cir. 2001) ("the plain language of the statute itself, and in particular its preemption provision, is so certain and unambiguous as to preclude any need to look beyond that language for congressional intent"). Courts have applied the ICCTA to preempt state regulation of rail transportation in a wide variety of settings, covering the broadest array of attempts at state regulation. *See, e.g., id.* at 439 (ICCTA held to preempt common law negligence claim); *City of Auburn*, 154 F.3d at 1031 (ICCTA held to preempt state and local environmental laws); *S.D. R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.*, 280 F. Supp. 2d 919 (D.S.D. 2003) (ICCTA held to preempt state law claims for punitive damages and tortious interference); *Burlington N. Santa Fe Ry. Corp. v. Anderson*, 959 F. Supp. 1288 (D. Mont. 1997) (ICCTA held to preempt state closure authority).

The complaints in these actions find fault with the "design and construction of a railroad crossing." Adams Compl. ¶ 28(4); Tauzin Compl. ¶ 39. Plaintiffs essentially are asking the Court to dictate how CSXT designs and constructs its railroad crossings, including its roadbed and its rail track. According to the clearly expressed will of Congress, only the Surface Transportation Board has jurisdiction over such an action. *See Emerson v. Kan. City S. Ry. Co.*, No. Civ-05-331-KEW, 2006 WL 1785460, at *3 (E.D. Okla. June 26, 2006) (negligence claims that track drainage deficiencies resulted in flooding of plaintiffs' land "bear directly upon the 'practices,' 'operation,' and 'construction' in regard to Defendant's 'facilities,' namely the track in the affected area" and therefore "are expressly reserved to the exclusive jurisdiction of the STB"); *Maynard*, 360 F. Supp. at 843 (ICCTA held to preempt negligence claims for flooding as a result of "construction and/or maintenance of the tracks and crossings"). Thus, the sole claim in both *Adams* and *Tauzin* against CSXT is preempted by the ICCTA.

### C.     The *Adams* and *Tauzin* Claims Against CSXT are Preempted by the FRSA.

Congress enacted the FRSA "to promote safety in all areas of railroad operations and to reduce railroad-related accidents, and incidents." 49 U.S.C. § 20101. The FRSA vests in the Secretary of Transportation broad powers to prescribe regulations for "*every area* of railroad safety." 49 U.S.C. § 20103(a) (emphasis added). With the FRSA Congress sought nationwide uniformity in the area of rail safety: "Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106. Nevertheless, Section 20106 further provides:

> A State may adopt or continue in force a law, regulation, or order related to railroad safety or security <u>until</u> the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order <u>covering the subject matter</u> of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation or order –
>
> (1) is necessary to eliminate or reduce an essentially local safety or security hazard;
>
> (2) is not incompatible with a law, regulation, or order of the United States Government; and
>
> (3) does not unreasonably burden interstate commerce.

(emphasis added). With limited exceptions pertaining to purely local hazards, therefore, a state law or lawsuit is preempted by the FRSA whenever the Act's implementing regulations "cover" or "substantially subsume" the subject matter of the state law or action. *See, e.g., CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 661, 675 (1993) (maximum railroad-speed regulations "cover" the subject-matter of train speed and therefore preempt a jury verdict that a train was traveling at an excessive speed).

Pursuant to his authority under the FRSA, the Secretary has long regulated the construction and maintenance of railroad tracks and roadbeds, including regulations directly aimed at ensuring proper drainage of track areas. *See* 49 C.F.R. Part 213, subparts B and D. Subpart B ("Roadbed," §§ 213.31 *et seq.*) prescribes minimum requirements for "roadbed and areas immediately adjacent to a roadbed." Subpart D ("Track Structure," § 213.101 *et seq.*) prescribes minimum requirements for "ballast, crossties, track assembly fitting, and the physical condition of rails." The track regulations include 49 C.F.R. § 213.103, directly addressing the supporting material used in the construction of roadbeds:

> Unless it is otherwise structurally supported, all track shall be supported by material which will –
>
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
>
> (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
>
> (c) Provide adequate drainage for the track; and
>
> (d) Maintain proper track crosslevel, surface, and alignment.

Because FRSA regulations "cover" the manner in which railroads design and construct their roadbeds and tracks, and specifically address the nature of the supporting materials, a state action purporting to affect how a railroad's roadbed or track is "designed and constructed" or how it is supported is preempted.

Both the Adams Complaint and the Tauzin Complaint attempt precisely this. By alleging CSXT was negligent in the "design and construction of a railroad crossing" through its choice of construction and support materials, the complaints seek to impose obligations upon CSXT irrespective of, and in conflict with, its compliance with the requirements established by FRSA

regulations. Such a claim defies Congressional intent to create a nationally uniform set of standards applicable to railroads.

FRSA preemption applies, therefore, unless plaintiffs' negligence claims fall within the narrow "local" safety or security hazard savings clause. The FRSA's savings clause permits a state to adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation or order meets three conditions: (1) it is necessary to eliminate or reduce an essentially local safety hazard; (2) it is not incompatible with a federal law, regulation, or order; and (3) it does not unreasonably burden interstate commerce. Plaintiffs' claims meet none of these conditions.

First, the only conceivable "safety hazard" plaintiffs attempt to address in their complaints is flooding. Flooding is anything but "essentially local." To state the obvious, New Orleans is not the only jurisdiction where local, state, and federal governments must determine how flood protections systems and railroad operations may be integrated. A hazard is a "discrete and truly local hazard" if it "relates to the avoidance of a specific collision." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 640 (5th Cir. 2005) (citation omitted). A condition that could occur anywhere at any time – such as a flood – is not a discrete, truly local hazard. *Id.*

Second, the plaintiffs' claims are "incompatible" with FRSA law and regulations. The FRSA imposes safety standards governing how CSXT is to design and construct its crossings, roadbed, and track. Both *Adams* and *Tauzin* attempt to create some other standard through the guise of a negligence action. This attempt is incompatible with regulations promulgated under the FRSA that already "cover" these very aspects of CSXT's operations.

Finally, plaintiffs' claims would "unreasonably burden interstate commerce." In evaluating this burden, courts consider "the practical and cumulative impact were other States"

940555_1.DOC                                11

to take similar actions. *CSX Transp. Inc. v. Williams*, 406 F.3d 667, 673 (D.C. Cir. 2005). The court in *Williams* weighed the burden of a proposed local ban on a railroad's shipment of certain types of freight, considering the effect not only of that one jurisdiction's ban, but also the possibility of multiple, varying bans throughout the country. As the D.C. Circuit observed in *Williams*, "[i]t would not take many similar bans to wreak havoc with the national system of hazardous materials shipment." *Id.* (citation omitted). So here, the prosecution of civil actions nationwide seeking monetary awards to discipline how a railroad designs and constructs rail crossings, roadbeds, and tracks would create anything but national uniformity, and would "wreak havoc" on our nation's system of rail transportation. In questioning a rail entity's construction and design of its track and roadbed, the *Adams* and *Tauzin* plaintiffs seek to regulate an area substantially "covered" by the FRSA. Thus, their claims against CSXT are preempted.

## CONCLUSION

Plaintiffs have failed to plead negligence against CSXT and have asserted a claim preempted by federal railroad laws. Respectfully, the Adams Complaint and Tauzin Complaint should be dismissed as to CSXT for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

s/Jonathan C. McCall
BRENT A. TALBOT (#19174)
JONATHAN C. MCCALL (#9227)
MICHAEL D. SPENCER (#27649)
-of-
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075

and

ROY J. RODNEY, JR. (#02079)
JOHN K. ETTER (#25042)
       -of-
**RODNEY & ETTER, L.L.C.**
620 North Carrollton Avenue
New Orleans, Louisiana 70119
Telephone: 504-483-3224
Facsimile: 504-483-2259

**ATTORNEYS FOR CSX TRANSPORTATION, INC.**

February 8, 2007