| | **LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD** | |
|---|---|---|
| Ralph S. Hubbard | A LAW CORPORATION | |
| Tel.: (504) 568-1990 | SUITE 2775 PAN AMERICAN LIFE CENTER | |
| Fax: (504) 310-9195 | 601 POYDRAS STREET | e-mail: rhubbard@lawla.com |
| | NEW ORLEANS, LOUISIANA 70130 | |

February 8, 2007

Hon. Stanwood R. Duval, Jr.
United States District Court Judge
Eastern District of Louisiana
500 Poydras Street
New Orleans, LA 70130

Re:   *In Re: Katrina Canal Breaches Consolidated Litigation*
      Civil Action No. 05-4182, Section "K"

Dear Judge Duval:

This letter is written on behalf of the Insurer Defendants to address the issues raised during Liaison Counsel's conference with the Court on February 1, 2007. Specifically, this letter provides the Insurer Defendants' response to the Court's proposed "Multi-Tracking Plan" for the consolidated litigations and addresses the specific questions raised by the Court related to the proposed case management order.

The Insurer Defendants share the Court's desire for an expeditious and efficient resolution of the complex issues presented in this litigation. To that end, the Insurer Defendants are committed to continue working together where possible, such as in joint briefing and sharing of experts. Nevertheless, there are important issues the Insurer Defendants need to bring to the Court's attention concerning the Court's proposed "Multi-Tracking Plan." The Insurer Defendants note that while much of this letter focuses on the issues raised by (a) the need to conduct discovery and proceedings on the levee system issues in connection with the insurance cases and (b) certain plaintiffs' request for class certification on insurance claims, there are separate and independent challenges arising from the many individual insurance cases included within the umbrella, each with its own unique issues and claims.[1]

As set forth herein, the Insurer Defendants' concerns are based upon the well-grounded belief that fourteen (14) months is not sufficient time in which to conduct all of the fact discovery essential to a fair and just resolution of these cases. Indeed, the Insurer Defendants lack dominion and control over the witnesses, documents, and other physical evidence necessary to evaluate and rebut the Plaintiffs' allegations of negligent design,

---

[1] In addition, State Farm and Hartford submit that the Court's November 27, 2006, ruling granting State Farm and Hartford's Rule 12 motions render much of the discovery and proceedings discussed in this letter inapplicable to the claims against them.

EXHIBIT A

Honorable Stanwood R. Duval, Jr.
February 8, 2007
Page 2

construction and maintenance of the relevant portions of the hurricane protection system. Rather, such evidence currently is within the dominion and control of the responsible engineers, contractors and governmental entities. Consequently, in order to accurately estimate the numbers of expert and fact witnesses that will be needed to prepare an appropriate defense, the Insurer Defendants must first gain access to this evidence.

Moreover, based upon the limited information that can be gleaned from the various Complaints filed by the Plaintiffs in the consolidated cases, Plaintiffs' claims relate to the performance of specific design and construction activities under a number of distinct contracts, in disparate geographic locations, involving an assortment of engineers and contractors over the course of many years. In essence, discovery of the causes of actions alleged by Plaintiffs requires an assessment of a multitude of distinct engineering and construction projects including but not limited to an evaluation of such allegations as the use of particular types of heavy equipment at specific geographic locations. Most of the contracts and work activities referenced by the Plaintiffs also involved the Army Corps of Engineers (ACOE). The Insurer Defendants understand that the ACOE will take a minimum of 6 months to produce relevant documents within its control. By that point in time, nearly half of the time allotted for fact discovery in the Court's proposed "Multi-Tracking Plan" will have expired, and the class certification fact deposition and expert report deadlines will have expired. As structured, the Court's proposed plan does not permit sufficient time for discovery in light of the document production issues the parties will face.

Accordingly, the Insurer Defendants respectfully propose that the date for beginning fact depositions be pushed out by a minimum of six months, and that all other dates be adjusted accordingly.

Related to the generation of a case management order, the Court also requested that the Insurer Defendants identify those issues that may be ripe for common discovery. As the Court is aware, however, the evidence concerning the levee breaches is not in the Insurer Defendants' control, and the Plaintiffs in the consolidated cases have not been subjected to any written or document discovery. As a result, the Insurer Defendants have nothing more substantive than the allegations set forth in the Plaintiffs' various Complaints from which to identify potential common liability issues. This spreadsheet summarizes various Plaintiffs' particular allegations of defective design, construction, and/or maintenance related to the floodwall breaches at issue in the Levee Umbrella consolidated cases.

As reflected in the spreadsheet, the Levee Umbrella Plaintiffs have alleged the occurrence of localized breaches in the hurricane protection system and have identified specific engineers and contractors allegedly responsible for those events. The Levee Umbrella Plaintiffs have not alleged the type of overarching system failures that would lend themselves to common issue discovery.

Moreover, the Levee Umbrella Plaintiffs have divided themselves into five geographically distinct zones with each zone of Plaintiffs alleging that their damages occurred as a result of specific failures in precise geographic locations. With regard to each of those

Honorable Stanwood R. Duval, Jr.
February 8, 2007
Page 3

localized events, the Plaintiffs have alleged specific acts of negligence against identified contractors performing the engineering, construction, and maintenance work. The written, document, and deposition discovery necessary to investigate the Plaintiffs' allegations will be specific to the particular engineers and contractors identified by Plaintiffs as having responsibility for the breach at issue. The fact that the identified engineering and construction contracts were all issued by the ACOE does not create common discovery issues. In fact, the contracts identified by the Plaintiffs were with different contractors and were issued over a span of years. With regard to particular breaches in identifiable geographical locations, the Insurer Defendants acknowledge that there will be common issues concerning the design, construction, and maintenance of the flood protection system at those discrete locations. At the same time, the Insurer Defendants do not believe there are common liability issues that lend themselves to common discovery with respect to the entire flood protection system or with respect to coverage determinations.

Finally, the Court requested that Insurer Defendants, through Liaison Counsel, provide responses to specific questions regarding limitations on discovery. We provide the following responses to those questions, seriatim, below:

1.  What will be the maximum number of experts to testify at a class certification hearing?

    Insurer Defendants understand that the Court has requested a designation of the maximum number of experts to testify at a class certification hearing. Insurer Defendants respectfully submit that this inquiry is premature. No motion for class certification has been filed, there has been no class discovery, and there has been no designation of expert testimony by Plaintiffs. Insurer Defendants can only speculate at this point as to the nature of the proofs to be submitted by Plaintiffs or how they intend to prove that liability, causation or damages can be proved on a class-wide basis.

    In particular, the underlying allegations here involve alleged acts, events and omissions to which the Insurer Defendants were not privy and in which they did not participate, i.e., the design, construction, maintenance and alleged failures of the levee system around New Orleans. The Insurer Defendants are committed to assisting the Court's efforts to advance resolution of these matters. However, at present, the Insurer Defendants are unable to identify with any reasonable accuracy the number of witnesses necessary for certification proceedings. This is particularly true here where plaintiffs have not yet defined the class or classes for which they seek certification and where the Insurer Defendants have no first-hand knowledge or information concerning the flood protection systems. The Insurer Defendants respectfully submit that this question can be more meaningfully answered after the parties have had an opportunity for written class discovery and after Plaintiffs have specified the class or classes that they seek to certify. Instead, the Court should set a deadline – at least 60 days after Plaintiffs have filed their motions for class certification identifying the proposed classes – for the parties to provide an estimate of the number of experts they intend to call at a class certification hearing.

Honorable Stanwood R. Duval, Jr.
February 8, 2007
Page 4

      To the extent that the Court's question can be addressed at this stage of the litigation, the Insurer Defendants submit that at least several of the technical merits experts, whose disciplines are identified in response to Question 2, below, will be required to demonstrate that common issues do not predominate here. Expert testimony will be needed to show that not all of the supposed levee and floodwall breaches occurred in the same fashion; that a determination that a particular breach was the result of human negligence is not a determination that any other breach was a function of human negligence; and that each of the breaches affected members of the proposed class differently based on geographic location. For example, testimony from structural, civil, or geotechnical engineers may be necessary to establish the different structural and subsurface conditions at various locations in the flood protection system. Meteorological, oceanographic and climatological experts may be needed to testify about the unique weather conditions at particular locations throughout the New Orleans flood protection system. Hydrologists may be needed to demonstrate that a breach of the system at one location did not affect class members at other locations. All of these disciplines, and others, may factor into the analysis. While the number of witnesses can be reduced through the use of coordinating experts who may rely upon work performed by others, the Insurer Defendants are not at this time able to identify a specified maximum number of technical experts that may be called at a class certification hearing. At present, Insurer Defendants' best estimate is 3-5 such witnesses will be required.

      In addition, the possibility of inconsistent results among named Plaintiffs raises significant manageability and predominance issues. Accordingly, Insurer Defendants may wish to call a demographic or other expert to testify based on the hydrological evidence whether the named Plaintiffs' claims are typical and whether the named Plaintiffs are adequate representatives of the larger class. For example, it is possible that one named Plaintiff is located in an area that was not affected by any alleged levee failure, while another named Plaintiff is located in an area where the source of water damage likely did result from a levee breach. This potential result raises the specter of some inconsistent and conflicting results for different Plaintiffs within the same proposed class.

      Individual Insurer Defendants may also wish to call their own claims or other insurance experts to testify regarding the particulars of some of the named Plaintiffs' claims with respect to whether those claims are typical of the class. For example, it is possible that some of the named Plaintiffs may have received full compensation for their losses through flood insurance. If so, those named Plaintiffs – if they have standing at all – may not be adequate representatives of a class of insureds.

      Finally, Insurer Defendants may wish to proffer expert testimony from a complex litigation specialist regarding superiority and manageability issues presented in the present case.

2.    What will be the maximum number of experts to testify in a trial addressing common liability issues?

Honorable Stanwood R. Duval, Jr.
February 8, 2007
Page 5

As noted above, the only common liability issues concern the design, construction, and maintenance of the flood protection system at discrete geographic locations. At this juncture, the Insurer Defendants have nothing more than the allegations set forth in Plaintiffs' various Complaints on which to base an identification of the factual issues that *may* require expert testimony at trial. Moreover, the Plaintiffs have not identified the number or kind of experts from which they intend to elicit opinion testimony at trial which in turn may require rebuttal experts. Additionally, particular allegations made by an individual plaintiff against an individual insurer may require that insurer to identify additional experts. Accordingly, the Insurer Defendants respectfully submit that it is too far early to identify the full range of common liability issues or common liability experts and thus reserve their right to revise the number and/or type of proposed experts as the need arises. Based solely on the limited factual information provided in Plaintiffs' Complaints, the Insurer Defendants anticipate that expert or opinion testimony may be elicited at trial as follows:

- Three to five experts to provide testimony on issues relating to Civil or Structural Engineering issues;

- Three to five experts to provide testimony on issues relating to Geotechnical Engineering issues;

- Four or more experts to provide testimony on Construction issues;

- Two or more experts to provide testimony on Surveying issues;

- Three to Five experts to provide testimony on Hydraulic Engineering and/or Hydrologic Engineering issues; and

- Three to five experts to provide testimony on Coastal and Oceanographic Engineering issues.

3. What is the earliest date for a class certification hearing in the Levee group cases?

The Insurer Defendants understand this question to be directed to other defendants in the consolidated cases. To the extent the Court intends issues in the class certification hearing in the Levee group of cases to have any application to class certification in the Insurer group of cases, then the Insurer Defendants respectfully submit that the earliest date would be fourteen (14) months from date of entry of an order.[2] Based on currently available information, this timeframe would allow for the completion of written discovery and production of relevant documents from various entities, including the ACOE, as previously discussed.

---

[2] State Farm notes that it has filed a motion to dismiss the class allegations against it in *Abadie*, and it believes that the same grounds would warrant dismissal of the class allegations against it in *Chehardy*. In both cases, State Farm believes that the Court's decision upholding its water damage exclusion makes the proposed class facially improper.

Honorable Stanwood R. Duval, Jr.
February 8, 2007
Page 6

4. What will be the maximum number of people a party will be allowed to list in its initial disclosures both as to "liability witnesses" and "fact witnesses," assuming initial disclosures as described by the Court?

Because the Insurer Defendants were not involved in the design, construction, and maintenance of the flood protection system, the Insurer Defendants have only limited knowledge on these subjects. Accordingly, the Insurer Defendants will need to rely upon information provided by other parties and third-parties. Thus, the Insurer Defendants are concerned that any pre-set limitation on the number of persons a party may identify with factual knowledge regarding the issues presented in the Levee Umbrella may interfere with the Insurer Defendants' ability to prepare their defense. In addition, the Insurer Defendants are concerned about any order that would limit their ability to call witnesses that are not known to them today but whose identities may be revealed during discovery.

Attempting to address the Court's question, however, the Insurer Defendants anticipate that the number of potential fact witnesses on construction and engineering projects is very large because of the sheer number of parties involved and the vast amount of specialized work performed. A pre-set maximum, therefore, may exclude from disclosure a potential witness that may be crucial in the parties' determination of the issues presented to the Court.

On each of the construction and engineering projects listed in the various Plaintiffs' Complaints throughout the consolidated litigation, the number of personnel with factual knowledge that would be identified under Rule 26 disclosures is daunting. Particularly on a large scale construction project, the number of people with factual knowledge can be extensive. For example, the ACOE typically will have 20-30 individuals with knowledge of the many facets of the Project, including the Chief and Deputy Chief of Construction in the District Office; the Supervisory, Resident, and Area Engineers; all the way down to the multiple Project Engineers and Quality Assurance Inspectors that review the work every day. The ACOE will also have numerous administrative and contracting personnel, including the Chief of Contracting, the Contracting Officer and staff at each office involved in administering the Project. In addition to the ACOE, the general contractor will have from eight to ten individuals with personal knowledge of the Project, including the Project Executive, Project Manager, Assistant Project Managers, the Superintendents, and the Foremen. Each general contractor will have multiple subcontractors, typically in excess of ten, each of whom would have approximately six people with factual knowledge (in the same categories/titles as the general contractor personnel). The general contractor and the subcontractors will then have material and equipment suppliers, also generally in excess of ten per Project, with relevant factual knowledge.

Added to the number of individuals involved in the construction of each project identified by the Plaintiffs is the number of individuals involved in the design and engineering of each of the relevant projects. For any of the design and engineering projects identified by the Plaintiffs, approximately 30-40 persons with factual knowledge would have to be identified. This figure includes approximately ten persons from the ACOE, from the Chief and Deputy Chief of Engineering to the assigned Project Engineers. On information and belief, most of the engineering projects identified by Plaintiffs were performed by outside consultants for the

ACOE. These outside engineering firms would have approximately eight people with knowledge of the Project, including the Project Executive, the Project Manager, the lead engineer and the assigned project engineers. The engineering firms would typically also have as many as four sub-consulting engineers each with three to five people with relevant knowledge.

In summary, the identification of people with knowledge, just on the construction and engineering Projects identified by the Plaintiffs, is incalculable at this time. Moreover, a premature limitation on the number of people to be identified would unfairly prejudice the Insurer Defendants' ability to gather information necessary to an efficient and effective defense. As an alternative, the Insurer Defendants respectfully suggest that reliable estimates of the number of liability and fact witnesses can only be made after reasonable discovery has been taken. The Insurer Defendants propose that the Court order the parties to provide their estimates of the number of these categories of witnesses by a date certain, at least three months after the commencement of fact depositions.

5.  What, if any, are the insurance coverage issues ripe for common discovery?

Insurer Defendants understand that the Court has requested a counterproposal to paragraph 4 of Plaintiffs' preamble in the proposed CMO. Defendants propose the following:

The Court also recognizes that in the insurance umbrella there may be multiple complaints making similar or identical allegations regarding a particular insurer's claims and adjusting practices and procedures. These issues are separate from, and not part of, the consolidated levee breach discovery that is contemplated elsewhere in this order. However, it is in the interest of party and judicial economy to avoid duplicative or repetitive discovery on allegations of purported company-wide claim processing or adjusting practices that are asserted in multiple complaints against a particular insurance company relating to the adjustment of wind claims. Accordingly, it is the intention of this Court to coordinate such discovery as much as possible and to work with other divisions of the Court to facilitate consolidated depositions on issues relating to allegations concerning a given insurers' purported claims practices and the methodology for differentiating water damage from wind.

6.  What is the maximum number of Interrogatories and Requests for Production to be issued to each category of defendant?

As discussed above, the allegations set forth in the Plaintiffs various Complaints involve a large number of different contractors that performed design, construction and/or maintenance work on or near separate component parts of the New Orleans regional flood protection system over the course of more than forty years. None of the documents or other information relating to this work is in the possession of the Insurer Defendants. In fact, the Insurer Defendants do not have dominion or control over the vast majority of the documents, witnesses or other information that might ultimately be pertinent to their liability in these consolidated cases if this Court's November 27, 2006, ruling is affirmed on appeal. Most of these documents, witnesses and other information are, or at one time were, under the dominion and control of the governmental entities that contracted for the work or the contractors that performed the work.

Honorable Stanwood R. Duval, Jr.
February 8, 2007
Page 8

As such, the Insurer Defendants maintain that the limitation in FRCP 33 on the number of interrogatories a party may serve on any other party works inordinately to their disadvantage. Respectfully, the Insurer Defendants propose that the number of interrogatories they be allowed to serve on any other party relating to flood protection system issues be increased to 50 and that the Court's Case Management Order make it clear that the Insurer Defendants are allowed to serve interrogatories, not only on the Plaintiffs, but on the other groups of defendants (including the government) as well. With respect to discovery between Plaintiffs and Insurer Defendants on non-flood protection system insurance issues, Defendants suggest that the normal limits of FRCP 33 apply, which would allow a sufficient number of interrogatories to include the master set and any particular interrogatories relevant to individual cases.

With regard to requests for production of documents, FRCP 34 contains no limitation of any kind other than its reference to the general scope and limits on discovery set forth in FRCP 26. At this juncture in the consolidated proceedings, the Insurer Defendants are not aware of any reason or basis to limit the scope of document discovery by limiting the number of requests or otherwise. The Insurer Defendants further respectfully request that the Court's case management order make it clear that the Insurer Defendants are allowed to serve document requests, not only on the Plaintiffs, but on the other groups of Defendants (including the government) as well. The Insurer Defendants continue to embrace the discovery coordination concepts set out in the Parties' proposed Case Management No. 4, including the requirement that affiliated groups of parties prepare and issue a master set of written discovery.

The Insurer Defendants are committed to working together with the Court in order to ensure the expeditious resolution of the above case management issues. To that end, the Insurer Defendants would appreciate the opportunity to be heard in open court regarding these and other issues related to the case management of these proceedings.

Sincerely,

*Ralph Hubbard*

Ralph S. Hubbard, III

RSH/msb
Attachment

Survey of Allegations in Sampling From Complaints:
In Re Katrina Canal Breaches Consolidated Litigation, CA No. 05-4182

| Levees/Floodwalls | Contractors | a/k/a f/k/a | Task | Allegation | Reference |
|---|---|---|---|---|---|
| 17th Street Canal | Gulf Group, Inc. of Florida | | Contracted to repair bridge that spans 17th Street Canal from Old Hammond Highway to Robert E. Lee Blvd. | Believed to have placed construction equipment and heavy vehicles on levee during that project damaged the levee/flood wall | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Page 16 ¶ 36.A.1 |
| | Boh Brothers Construction Company, L.L.C. | | Contracted to construct portions of the 17th Street Levee/Flood Wall including placement of sheet piling for the purpose of supporting the concrete flood walls | Negligent design and construction of levee/flood wall including placement of sheet piling for the purpose of supporting concrete flood wall. Further believed that use of heavy vehicles and/or heavy construction equipment damaged the levee/flood wall | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint Pages 16 - 17 ¶ 36.A.2 |
| | C.R. Pittman Construction Company, Inc. | Green Wave Construction Company, Inc. | Contracted to construct portions of the 17th Street Levee/Floodwall | Negligent design and construction of levee/flood wall including concrete slab sections. Further believed that use of heavy vehicles and/or heavy construction equipment damaged the levee | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Page 17 ¶ 36.A.3 |
| | Pittman Construction Co. of LA., Inc. | | Contracted to construct portions of the 17th Street Levee/Flood Wall including placement of concrete flood wall slabs atop the sheet piling | Negligent design and construction of levee/flood wall including concrete slab sections. Further believed that use of heavy vehicles and/or heavy construction equipment damaged the levee/flood wall | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Page 17 ¶ 36.A.3 |
| | Modjeski & Masters, Inc. | | Engineers contracted for the design of the 17th Street Canal Levee/Flood Wall | Levees and flood walls were negligently designed and faulty designed caused breach | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Page 17 ¶ 36.A.4 |
| London Avenue Canal | Burk-Kleinpeter, Inc. | | Engineers contracted for the London Avenue Canal Levee/Flood Wall | Levees and flood walls were negligently designed and faulty designed caused breach | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Page 18 ¶ 36.B.1 |
| | Burk-Kleinpeter, L.L.C. | | Engineers contracted for the London Avenue Canal Levee/Flood Wall | Levees and flood walls were negligently designed and faulty designed caused breach | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Page 18 ¶ 36.B.1 |
| | B&K Construction Company, Inc. | B&K Construction Company | Contracted to construct the 17th Street Levee/Flood Wall including placement of sheet pilings and construction and placement of concrete flood wall slabs atop the sheet piling | Negligent design and construction of levee/flood wall including the sheet pilings and concrete slab sections. Further believed that use of heavy vehicles and/or heavy construction equipment damaged the levee/flood wall | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Page 18 ¶ 36.B.2 |
| | C.R. Pittman Construction Company, Inc. | Green Wave Construction Company, Inc. | Contracted to construct the Gentilly Boulevard bridge over the London Avenue Canal | Believed to have placed construction equipment and heavy vehicles on levee during that project damaged the levee/flood wall | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Page 18 ¶ 36.B.3 |

Survey of Allegations in Sampling From Complaints:
In Re Katrina Canal Breaches Consolidated Litigation, CA No. 05-4182

| Levees/Floodwalls | Contractors | a/k/a f/k/a | Task | Allegation | Reference |
|---|---|---|---|---|---|
| | Miller Excavating Services, Inc. | | Contracted to construct the Leon C. Simon Boulevard bridge over the London Avenue Canal | Believed to have placed construction equipment and heavy vehicles on levee during that project damaged the levee/flood wall | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Pages 18-19 ¶ 36.B.4 |
| | James Construction Group, LLC | Iafrate Construction , LLC | Contracted to flood-proof the Filmore Avenue bridge and the Mirabeau bridge over the London Avenue Canal | Believed that negligence in the demolition of the old bridges and construction of the new bridges placed construction equipment and heavy vehicles on levee during that project damaged the levee/flood wall | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Page 18 ¶ 36.B.5 |
| Industrial Canal | Washington Group International, Inc. | Morrison Knudsen Corporation; MK-Ferguson Company; The H.K. Ferguson Company | Contracted to level and clear abandoned industrial sites along the Industrial Canal between flood wall and canal | Believed to have placed construction equipment and heavy vehicles on levee during that project damaged the levee/flood wall | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Page 19 ¶ 36.C.1 |
| | Virginia Wrecking Company, Inc. | | Contracted for the demolition, removal and disposal of the Galvez Street Wharf, a warehouse and an adjacent storeroom and for the removal of the debris by the barge along the Industrial Canal | Believed to have placed construction equipment and heavy vehicles on levee during that project damaged the levee/flood wall | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Page 19 ¶ 36.C.2 |
| | Boh Brothers Construction Co., L.L.C. | | Contracted to install casings, test piles and reaction piles along the Industrial Canal between December 1999 and May of 2000 | Believed to have placed construction equipment and heavy vehicles on levee during that project damaged the levee/flood wall | Berthelot v. Boh Bros., C.A. No. 05-4182 (E.D. La. 2005) Supplemental & Amending Complaint, Page 19 ¶ 36.C.3 |