# STONE PIGMAN WALTHER WITTMANN L.L.C.

### COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

OUR FILE NUMBER

William D. Treeby
Direct Dial: (504) 593-0807
Direct Fax:  (504) 596-0807
E-Mail: wtreeby@stonepigman.com

62,272

February 8, 2007

**VIA HAND DELIVERY**

Judge Stanwood R. Duval, Jr.
500 Poydras Street
Room C-368
New Orleans, Louisiana 70130

Re:   *In re:  Katrina Canal Breach Consol. Litig.*, Case No. 05-4182

Dear Judge Duval:

The undersigned levee group defendants, The Orleans Levee District, The Sewerage & Water Board of New Orleans, The Board of Commissioners of the Port of New Orleans, James Construction Group, LLC, and Washington Group International (hereinafter the "Undersigned Levee Defendants"), hereby submit via Defendants' Liaison Counsel the following response to the Court's proposed multi-track Case Management Order ("CMO").

As a preliminary matter, the Undersigned Levee Defendants note that they were not present during the February 1, 2007 meeting when your Honor and Magistrate Judge Wilkinson discussed a contemplated new CMO with certain plaintiffs' counsel and Defendants' Liaison Counsel. Consequently, the Undersigned Levee Defendants' understanding of this new proposed CMO is based solely upon their discussions with Defendants' Liaison Counsel and Liaison Counsel's handwritten copy of an outline provided by the Court entitled, "3 Simultaneous Tracks" (hereinafter "CMO Outline"). The Undersigned Levee Defendants respectfully request, however, that in the future their counsel be present when a CMO is being discussed. The matters raised in the CMO Outline are not merely administrative, but instead are substantive issues that should be addressed on the record so that the Court has the benefit of input from all affected parties.

**EXHIBIT**

**6**

855024v.2

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

2

February 8, 2007

    A.    Response to Court's Proposed Multi-Track CMO

        1.    *The Master Complaint*

As the Undersigned Levee Defendants understand it, the Court is contemplating a "Master Complaint," a single amended complaint in which plaintiffs articulate all their claims against all defendants named in the several dozen proposed class actions filed against levee group defendants and previously consolidated by this Court as *In re: Katrina Canal Breaches Consol. Litig.*, No. 05-4182.[1] It is our understanding from Plaintiffs' Liaison Counsel that this new Master Complaint will merge all of the prior allegations, and perhaps add some additional allegations and parties, into a single pleading that will become the operative complaint applicable to all of the proposed class actions filed against defendants in the levee group. The Undersigned Levee Defendants agree that requiring plaintiffs to file this single operative complaint is the essential first step under any new CMO, and recommend that the new CMO issued by the Court explicitly state the foregoing purposes of the Master Complaint.

In addition, the Undersigned Levee Defendants suggest that the new CMO require that plaintiffs plead their factual allegations against each individual defendant with specificity in the new Master Complaint, so that it will identify the factual basis for each defendant's act or omission. Since these lawsuits were filed approximately eighteen months ago, several levee group defendants have made certain court-mandated disclosures to plaintiffs and produced contracts with the United States relating to their work on or near the levees. Moreover, Washington Group provided plaintiffs with a combined total of more than 37 boxes of documents on August 31, 2006, and December 12, 2006. James Construction is prepared to make a similar production. Considering all of the discovery that already has been provided to plaintiffs, the CMO also should require the plaintiffs to specify in the Master Complaint their class-action allegations, including: (i) their proposed class definitions, (ii) any sub-classes, and (iii) the type of class action they are seeking under Fed. R. Civ. P. 23(b). The foregoing specificity will enable the parties to conduct class-certification discovery more efficiently and proceed to a class-certification hearing more expeditiously.

We also suggest that the new CMO provide a deadline for plaintiffs to file any amendments to the Master Complaint, *e.g.* 120 days into the discovery process. This will enable plaintiffs to make one final amendment based on discovery, but also will ensure that the pleading thereafter is fixed and not subject to change before the Court rules upon the class-certification

---

[1]    Washington Group, for example, has been named in twenty-four proposed class actions, the Orleans Levee District has been named in forty-five proposed class actions, the Sewerage & Water Board of New Orleans has been named in twenty-two proposed class actions, and the Board of Commissioners of the Port of New Orleans has been named in four proposed class actions. James Construction has been named in eighteen class actions and remains a defendant in nine.

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

3

February 8, 2007

issue. Doing so would eliminate the possibility of a last-minute change in plaintiffs' theory that would necessitate additional discovery and delay class-certification briefing.

Finally, it is unclear how the proposed CMO will govern the individual lawsuits filed against the levee group defendants. Undersigned Levee Defendants suggest that the CMO should mandate that all individual levee group actions are bound by the CMO as it pertains to discovery.

2.     *After the Master Complaint is filed, the CMO should provide additional time for threshold dispositive motions to be filed and decided.*

While the Court's most recent minute entry dated November 29, 2006, set a schedule for the filing of various Rule 12 Motions on the pleadings that did not require any discovery, it also has been understood by the parties that there would be at least two additional threshold motions that did require limited non-merits discovery. Indeed, from the inception of this litigation, Washington Group has declared its intention to file a summary judgment motion based on the government-contractor defense. James Construction likewise intends to file a motion for summary judgment based on the government-contractor defense. Pursuant to agreements reached with Plaintiffs' Liaison Counsel last summer, Washington Group already has produced more than 37 boxes of documents in response to plaintiffs' informal discovery requests relating to this anticipated motion. Washington Group and James Construction will be prepared to file their summary judgment motions as soon as plaintiffs file their Master Complaint and make initial disclosures, and the parties have an opportunity to obtain limited discovery from the United States Army Corps of Engineers ("USACE").

*The Manual for Complex Litigation* contemplates that it may be efficient for a court to rule on certain threshold motions for summary judgment before deciding whether the case satisfies the requirements for class certification under Rule 23. *Manual for Complex Litigation*, Fourth §§ 21.133, 11.34 (2005) (filing threshold dispositive motions early in a case can help "avoid pretrial activities that may be unnecessary if the summary-judgment motion is granted"). Furthermore, in a proposed class action, early resolution of threshold dispositive motions "may avoid expense for the parties and burdens for the court and may minimize use of the class action process for cases that are weak on the merits." *Id.* § 21.133. Thus, Undersigned Levee Defendants request that the new CMO provide additional time early in the schedule for such non-merits-based threshold summary judgment motions to be filed and decided.

3.     *The time allowed for class-certification discovery is insufficient.*

By any measure, the proposed class-action lawsuits that have been filed against the levee group defendants and consolidated by this Court are complex — both legally and factually — and no formal discovery has commenced. Consequently, it is unrealistic to expect the parties to conduct and conclude written discovery, documentary discovery, and depositions on all matters relevant to class certification within only a few months. This is especially true given the breadth of allegations that are likely to be contained in the Master Complaint (*i.e.*,

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

4

February 8, 2007

involving three different levees, located miles apart, each of which contained multiple alleged breaches and different defendants). Moreover, the USACE has indicated that it will take at least six more months to produce the rest of their relevant documents. Regardless of whether the USACE is a party to the action or is found immune, its fault in causing the flooding in some or all of the areas affected will be a critical issue for all parties. Consequently, the completion of discovery with respect to the USACE is essential to the determination of whether class certification is appropriate. Similarly, the Orleans Levee District ("O.L.D.") has indicated it has a large volume of potentially relevant documents dating back for more than fifty years. Many of these documents are currently stored on microfilm and will take considerable time to produce, and O.L.D. has suggested the production of these documents on a rolling basis. *See* January 26, 2007 Draft Case Management and Scheduling Order No. 4, at 38-39 ("Draft CMO No. 4"). Under the current proposed schedule, all of these documents could not be gathered and produced, much less reviewed, before the class certification depositions are set to occur.

Allowing more time for class-certification discovery will also assist the Court in conducting a "rigorous analysis of the Rule 23 prerequisites before certifying a class." *Steering Comm. v. Exxon Mobile Corp.*, 461 F.3d 598, 601 (5th Cir. 2006) (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)). The Fifth Circuit has repeatedly held that district courts must go beyond the pleadings in order to conduct this "rigorous analysis." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) ("At the same time, however, '[g]oing beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'") (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)). This rigorous analysis by the court presupposes that the parties have adequate time to conduct class-certification discovery. *See* Advisory Comm. Notes to Rule 23(c), 2003 Amendments.

In their January 26, 2007 Draft CMO No. 4, the levee group defendants proposed a class certification schedule that would set the class certification hearing for January 31, 2008. *See* Draft CMO No. 4 at 20-24. Given the complexity and magnitude of this case, the Undersigned Levee Defendants believe that the earliest date that such hearing would be appropriate is twelve months from the issuance of the Court's CMO.

4.    *Plaintiffs' motion for class certification should not be due until the end of the class-certification discovery period, when the accompanying brief can be supported by all evidence the plaintiffs intend to rely on in moving for class certification, as well as a proposed trial plan.*

The Court's CMO Outline, as presented by Defendant's Liaison Counsel, indicates that plaintiffs' motion for class certification would be due within 30 to 45 days. The Undersigned Levee Defendants respectfully request, however, that plaintiffs' motion for class certification be due later in the schedule, after a reasonable period of class discovery. As numerous cases have held, plaintiffs have the burden of demonstrating that the requirements for class certification are satisfied.

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

5

February 8, 2007

So long as the Master Complaint provides plaintiffs' class-action allegations with specificity, the discovery relevant to class certification should be able to proceed without the need for an early class-certification motion. Moreover, if plaintiffs were required to file their class brief *before* class-certification discovery (when such brief could not include record support), and defendants were required to file their class opposition briefs *after* class-certification discovery was complete (when such briefs would include record cites), it would effectively shift from the plaintiffs the burden of establishing that the requirements for class certification are satisfied.

The Undersigned Levee Defendants further request that the Court's CMO require plaintiffs' motion for class certification and supporting brief to be accompanied by all evidence that plaintiffs intend to rely on in moving for class certification. In addition, we request that the Court's CMO expressly require the plaintiffs' class-certification brief to include a detailed description of plaintiff's proposed trial plan that they contend would enable the Court to conduct a trial of the claims asserted on a class-action basis. This practice is encouraged by the Advisory Committee Notes to the 2003 Amendments to Fed. R. Civ. P. 23(c). *See* Fed. R. Civ. P. 23(c) Advisory Committee Notes ("An increasing number of courts require a party requesting class certification to represent a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof."). Such a proposed trial plan is particularly necessary in this case given the breadth of allegations and numerous parties involved. *See also Manual for Complex Litigation*, Fourth § 40.21, Sample Case Management Order, ¶ 5(e).

> 5.    *Any proposed CMO should allow time for potential severance motions.*

Although the Court has consolidated approximately forty-five proposed class-action cases against the levee group defendants, the Undersigned Levee Defendants urge the Court to allow time in the CMO's schedule for severance motions that some defendants might file in the future. *See* Fed. R. Civ. P. 21 ("Parties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just."). Moreover, to further judicial efficiency, the Court may ultimately deem it necessary to sever the case into two or more different cases. *See* Fed. R. Civ. P. 20, 21; *Applewhite v. Reichh Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995) ("Under Rules 20 and 21, the district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice."); *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994) (Under Rule 21, "[t]he trial court has broad discretion to sever issues to be tried before it."). The Undersigned Levee Defendants respectfully request the Court to provide time in the litigation schedule for motions to sever to be filed and decided.

> 6.    *Any proposed CMO is premature in addressing what trial plan may be appropriate for the trial of these actions.*

The Undersigned Levee Defendants respectfully suggest that at this early juncture, before the Master Complaint, before any formal discovery, before any class-

certification decision, and before any briefing for trial plans, it would be premature for the Court to issue a CMO that decides upon any particular trial plan for these cases. (*See, e.g.*, Court's CMO Outline indicating a trial of "common liability issues," followed by a separate phase for "damages."). Improper slicing of the issues or staging of the case may violate the Seventh Amendment reexamination clause. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419-20 (5th Cir. 1998) (explaining the risk of bifurcated proceedings where "successive juries would pass on issues decided by prior ones, introducing potential Seventh Amendment problems and further decreasing the superiority of the class action device"); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750-51 (5th Cir. 1996) (Court cannot bifurcate issues in violation of Seventh Amendment in order to make a class "manageable," because "[t]he Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues."). Here, a determination of whether or not damages may be bifurcated necessarily depends on the factual and legal theories of the case. *See In re Rhone Poulenc Rorer Inc.*, 51 F.3d 1293, 1302-03 (7th Cir. 1995) (holding that "judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries"; bifurcation is authorized, but court "must carve at the joint"). Consequently, the Undersigned Levee Defendants respectfully urge the Court to issue a CMO that does not set forth a trial plan.

     B.     Answers to the Court's Specific Questions Posed to Defendants

     The questions below were sent to undersigned counsel by Defendants' Liaison Counsel after the February 1, 2007 meeting with your Honor and Magistrate Judge Joseph Wilkinson.

     *1.     What will be the maximum number of experts to testify at a class certification hearing? What kind of experts are anticipated?*

     The Undersigned Levee Defendants assert that it is impossible to determine at this stage — before receiving the plaintiffs' Master Complaint, conducting any discovery, or receiving the plaintiffs' Motion for Class Certification — the number of experts expected to testify at a class-certification hearing. Indeed, at this point, defendants are not clear as to what the proposed classes or subclasses will be. Subject to these concerns, the Undersigned Levee Defendants contemplate a possibility of experts in at least the following six fields: coastal engineering and/or hydrology, meteorology, topography, geotechnical engineering, demographics, and class certification issues. Obviously, this list may grow based on the course of discovery and learning the direction of plaintiffs' case.

     *2.     What will be the maximum number of experts to testify in a trial addressing common liability issues? What kind of experts are anticipated?*

     The Undersigned Levee Defendants respectfully cannot respond to this question (as posed by Defendants' Liaison Counsel) because it appears to assume (1) that some class will be certified, and (2) that there are some presently undefined "common liability" issues among the

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

7

February 8, 2007

parties in what is now an umbrella consisting of over 185 cases. Moreover, under Louisiana law, delictual liability consists of "fault, causation, and damages." *Dabog v. Deris*, 625 So.2d 492, 493 (La. 1993) (citation omitted). With respect to each putative class member, we believe there to be no serious disagreement that the damages element will require individualized proof. Additionally, with respect to causation, given the multiple canals and levees, along with the differing roles that various defendants played in the design, construction and maintenance of each levee, we do not believe that there can be a class-wide determination of causation. In short, given the necessity for individualized proof for causation and damages — two essential elements of a "liability" determination — we do not believe a trial of "common liability issues" is possible. Nor do Counsel believe that any proposed class can be certified. Subject to these concerns, the Undersigned Levee Defendants contemplate a possibility of at least seven types of experts per party in each of the following fields:     levee design, levee construction, levee maintenance/operation, coastal engineering and/or hydrology, meteorology, topography, and geotechnical engineering.

> 3.    *What is the earliest date for a class certification hearing in the levee group of cases? How would your answer change if plaintiffs add the United States as a defendant considering the deadline for filing Form 95s?*

Counsel for the Undersigned Levee Defendants believe that the earliest date a class-certification hearing can take place is a minimum of twelve months from the entry of the new CMO. As described above, it will be very difficult — even in one year — to conduct written discovery, document discovery, and depositions on class-certification issues, followed by class-certification briefing.

If a proposed class action against USACE is consolidated with the levee group proposed class actions, any class-certification hearing may have to be delayed further. *See Lunsford v. United States*, 570 F.2d 221, 227 (8th Cir. 1977); *see also Pennsylvania v. Nat'l. Ass'n of Flood Inss.*, 520 F.2d 11, 24 (3rd Cir. 1975); *Hoskins v. United States*, No. 00-1713, 2001 WL 175237, at *3 (E.D. La. 2001) ("A class action may be brought under the FTCA only if each claimant has individually satisfied the jurisdictional prerequisites for maintaining a suit under the FTCA."). To proceed otherwise would result in having to certify multiple class actions against the USACE because the class can only be certified as to those individuals who have satisfied the jurisdictional prerequisites (*i.e.,* at least a completed Form 95 and six months of no action to constitute a denial of their claim).

> 4.    *The Court will be requiring "Old School" disclosures under Fed. R. Civ. P. 26 (pre-2000 amendments), which requires identifying all persons with testimony, not just favorable testimony.   What will be the maximum number of people a party will be allowed to list in its initial disclosures both as to "liability witnesses" and "fact witnesses"?   It is unclear if Magistrate Judge Wilkinson intends this provision to be limited to class actions or not.*

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

8

February 8, 2007

Counsel for Undersigned Levee Defendants do not understand this question as stated because the requirement for a "maximum number" of people a party will be allowed to list will necessarily require exclusion of individuals who have relevant information unless the "maximum number" is artificially determined to be a number that would be very excessive. This is particularly so since "initial disclosures" must be made before discovery. As an example, the plaintiffs have indicated to the O.L.D. that they believe O.L.D. must disclose documents back to 1947. If these documents are thought to be relevant to plaintiffs' claims, this number could only be determined after reviewing all of those documents. "Old School" disclosures, at this point in time, might be construed to include a number of people that are presently not determinable. We believe this question must have been misunderstood, and we need clarification as to the actual requirement for disclosures. We believe that if "Old School" disclosures are required then there should be no limit, and there should be an ongoing requirement to supplement these disclosures on a periodic basis (*e.g.*, each 30 days) during discovery, without leave of Court.

> 5.    *The Court noted that the defendants did not have a counterproposal to paragraph 4 of the plaintiffs' proposed Preamble on page 2 of the CMO. The Court is demanding a counterproposal. That is, he wants us to identify the issues ripe for "common discovery."*

The Undersigned Levee Defendants believe this question applies only to Insurer Group Defendants.

> 6.    *What is the maximum number of interrogatories and requests for production to be issued to each category of defendants?*

The Undersigned Levee Defendants believe plaintiffs should be limited to a master set of 25 interrogatories and a master set of 25 document requests as to each defendant in each group. Further, it should be made clear that parties who are ultimately dismissed on the basis of any dispositive motion would not be subject to discovery beyond the Initial Disclosure stage.

C.    General Comments Regarding Proposed CMO Outline

The Undersigned Levee Defendants believe the proposed CMO Outline represents a significant change in direction from the Court's April 11, 2006 CMO, which had consolidated twenty-one Katrina cases for "pretrial purposes" only. The number of cases consolidated has increased to more than 185, and these cases are quite diverse in terms of the parties involved, the subject matter, the claims alleged, the theories employed, and the locations of different breaches on the various levees. For example, some suits involve claims by individual homeowners against their insurance companies on coverage issues, some are proposed class actions against private companies and government agencies for improper construction and maintenance of levees, and some present claims under the Federal Tort Claims Act against the USACE. While counsel for the Undersigned Levee Defendants were not present for the Court's meeting on February 1, 2007, we do not understand how the Court's upcoming CMO could

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

9

February 8, 2007

contemplate that all of these cases could be resolved with only three trials. According to Federal Rule of Civil Procedure 42(a), if the actions involve a common question of law or fact, a district court has the discretion to consolidate the actions. *Atkins v. Schmutz Mfg. Co.*, 435 F.2d 527, 534 n. 33 (4th Cir. 1970); *N.C. Natural Gas Corp. v. Seaboard Sur. Corp.*, 284 F.2d 164, 167 (4th Cir. 1960). The propriety of consolidation, however, depends on "the amount of common evidence among the cases." *Manual for Complex Litigation*, Fourth § 11.631 (2005). Given the differences noted above, the Undersigned Levee Defendants question how 185 cases can be resolved with only three trials. Moreover, it seems premature for the Court to be deciding that issue at this early juncture.

Although probably unintended, and considering that more may have been said in the February 1, 2007 meeting to clarify these matters, the CMO Outline and the Court's questions might be construed as indicating that the Court is assuming that some of the cases will be certified as class actions. For example, Question No. 2 above refers to "common liability issues." Similarly, the CMO Outline, as relayed by Defendants' Liaison Counsel, makes it appear that the Court already has determined a trial plan. In addition, the CMO Outline appears to suggest that the liability phase can be bifurcated from the damages phase, but again, the Undersigned Levee Defendants do not understand which claims or cases the Court would be bifurcating, and whether the Court is contemplating a single jury for all phases. The Undersigned Levee Defendants believe that these decisions are premature, and should not be made until the cases are further developed and the issues have been briefed.

Finally, due to the complexity of this matter involving many different defendants who have diverse and possibly adverse interests, it is respectfully requested that the Court now permit formerly-designated Defense Liaison Committee Members[2] to attend the February 12, 2007 meeting and all future Liaison Counsel meetings with the Court.

---

[2]    Defense Liaison Committee Members include: Ralph Hubbard, Thomas P. Anzelmo, William D. Treeby, Judy Barrasso, and Francis Barry.

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

10

February 8, 2007

Very truly yours,

Thomas P. Anzelmo, 2533
Mark E. Hanna, 19336
Kyle P. Kirsch, 26363
Andre J. Lagarde, 28649
Of
McCranie, Sistrunk, Anzelmo, Hardy,
  Maxwell & McDaniel
3445 N. Causeway Boulevard, Suite 800
Metairie, Louisiana 70002
Telephone: (504) 831-0946
Facsimile: (504) 831-2492

And

James L. Pate, 10333
Ben L. Mayeux, 19042
Of
Laborde & Neuner
One Petroleum Center, Suite 200
1001 West Pinhook Road, Suite 200
Post Office Drawer 52828
Lafayette, Louisiana 70505-2828
Telephone: (337) 237-7000

Attorneys for the Counsel for the
Board of Commissioners for the
Orleans Levee District

George R. Simno III, 12271
Gerard M. Victor, 9815
625 St. Joseph Street, Room 201
New Orleans, Louisiana 70165
Telephone: (504) 585-2242
Facsimile: (504) 585-2426

And

Charles M. Lanier, Jr., 18299
J. Warren Gardner, Jr., 5928
Kevin R. Tully, 1627
Gregory S. Lacour, 23823
Of
Christovich & Kearney, LLP
601 Poydras Street, Suite 2300
New Orleans, Louisiana 70130-6078
Telephone: (504) 561-5700
Facsimile: (504) 561-5743

Attorneys for Sewerage and Water
Board of New Orleans

855024v.2

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE

11

February 8, 2007

William D. Treeby, 12901
Carmelite M. Bertaut, 3054
Heather S. Lonian, 29956
    Of
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504) 581-3200
Facsimile:  (504) 581-3361

Attorneys for Washington Group
International, Inc.

Of counsel
Adrian Wager-Zito
Julie McEvoy
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-4645
Facsimile: (202) 626-1700

Kirk N. Aurandt, 25336
J. Fredrick Kessenich, 7354
Jonathan H. Sandoz, 23928
Michael W. McMahon, 23987
Jon A. Van Steenis, 27122
    Of
Daigle Fisse & Kessenich, PLC
Post Office Box 5350
Covington, Louisiana 70434-5350
Telephone: (985) 871-0800
Facsimile: (985) 971-0899

Attorneys for The Board of Commissioners
of the Port of New Orleans

Richard J. Tyler, 1155
Emily E. Eagan, 29166
    Of
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8266

Attorneys for James Construction Group, LLC

cc:    Magistrate Judge Joseph C. Wilkinson

855024v.2