UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CONNIE ABADIE, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO. 06-5164 |
| AEGIS SECURITY INSURANCE CO., ET AL. | * | SECTION: K |
| | * | MAGISTRATE 2 |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON BEHALF OF NATIONAL FIRE & INDEMNITY EXCHANGE
TO DISMISS PLAINTIFFS' CLAIMS FOR DAMAGES**

MAY IT PLEASE THE COURT:

**I.  INTRODUCTION AND FACTUAL BACKGROUND**

On the morning of August 29, 2005, Hurricane Katrina blew violently ashore in Southeastern Louisiana bringing with her, torrential rain, wind and devastating floods. Rising water and winds in the City of New Orleans and surrounding parishes caused widespread damage to tens of thousands of structures, mostly homes.

On August 28, 2006, Plaintiffs, various insureds holding **policies of homeowners' insurance** purchased in this State, (hereinafter "Plaintiffs") filed a Class Action Complaint ("hereinafter Complaint"), in this Honorable Court, against numerous foreign insurers (hereinafter "Defendants") domiciled in various states and doing business in the State of Louisiana. Plaintiffs seek compensatory and punitive damages claiming breach of contract, breach of implied duty of fair dealing and good faith, breach

provide Plaintiff policyholders with insurance coverage for losses and damages to Plaintiffs' homes/residences caused by Hurricane Katrina.[1]

Throughout their Complaint, Plaintiffs hold themselves out as **holders of homeowner's insurance policies** and they hold Defendants out as the **issuers of those homeowner's insurance policies**, including the National Fire & Indemnity Exchange (hereinafter "NIE"), mover herein.[2] However, NIE is not now, nor has it ever been in the business of providing homeowner's insurance coverage in the State of Louisiana or any other state. NIE is a reciprocal exchange for a group of fabricare business owners (dry cleaning establishments) who pool their resources to essentially insure one another by paying a premium to purchase insurance from their Exchange.[3] NIE extends insurance coverage **ONLY** to subscribing dry cleaning business establishments who become subscribers to the Exchange. NIE **DOES NOT** write any type of homeowner's insurance policies, in contrast to Plaintiffs' claims in their Complaint.

As will be shown, NIE is clearly not in the class of Defendants from whom Plaintiffs' seek relief. As such, Plaintiffs cannot meet their burden of proof with respect to NIE regarding their homeowner's coverage claims. NIE, therefore, respectfully submits that there is no genuine issue of material fact with respect to its liability for the damages complained of herein and that it is entitled to judgment dismissing Plaintiffs' Complaint, as a matter of law with respect to any alleged liability on its part for the damages claimed by Plaintiffs.

---

1 See Plaintiffs' Original Complaint ¶ 2.
2 See Plaintiffs' Original Complaint ¶¶ 4, 9a, 9c, 9e, 11, 15-16, 43, 45, 74, 84, and p. 144,
3 A copy of NIE's 2006 subscriber's brochure is attached as Exhibit 1.

## II. LAW AND ARGUMENT

### A. SUMMARY JUDGMENT LAW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] The party moving for summary judgment bears the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.[5] When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The non-moving party, Plaintiffs herein, must come forward with "specific facts showing that there is a *genuine issue for trial.*"[6]

Thus, where the record taken as a whole would not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."[7] Finally, the court notes that the substantive law determines materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[8]

### 1. THERE IS NO GENUINE ISSUE AS TO LIABILITY ON THE PART OF MOVER HEREIN

---

4 Fed.R.Civ.P. 56(c).
5 *Stultz v. Conoco*, 76 F.3d 651, 656, (5th Cir. 1996), (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir. 1992) quoting *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).
6 *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) emphasis added; *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).
7 *Id.*
8 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

Plaintiffs claim that NIE, in addition to numerous other named insurers, wrongfully, negligently, recklessly and intentionally refused to provide insurance coverage for losses and damages to the Plaintiffs' homeowner's policyholders' property caused by Hurricane Katrina.[9] Contrary to Plaintiffs' allegations, insofar as they pertain to mover herein, NIE has never issued a policy of homeowner's insurance to any of these numerous Plaintiffs named in either the original Complaint or Plaintiffs' First Supplemental and Amending Complaint.[10] A stated above, NIE has never issued any policy of homeowner's insurance in the State of Louisiana or any other state. Simply stated, because NIE is an insurer of commercial dry cleaning businesses only and has never issued a policy of homeowner's insurance, there is no genuine issue of fact regarding NIE's liability in this matter and it cannot, therefore, be held liable for the damages claimed by Plaintiffs in their Complaint and, as such, it should be dismissed as a matter of law, with prejudice, from these proceedings.

It is well established that the purpose of summary judgment is one of judicial economy and to avoid a trial which is unnecessary and which will result in delay and undue expense. Whether summary judgment is appropriate in any case is to be decided upon the particular facts of the case.[11] NIE respectfully submits that there is an absence of factual and/or legal support for Plaintiffs' claim for damages against it and that unnecessary defense of Plaintiffs' claims herein will cause undue time and expense.

Having shown that there is no factual and/or legal support for Plaintiffs' claims against NIE, the burden now shifts to Plaintiffs to produce factual and legal support sufficient to establish that they will be able to satisfy their evidentiary burden of proof at

---

9 See Plaintiffs' Original Complaint ¶ 2.
10 Plaintiffs filed their First Supplemental and Amending Complaint on 9/6/06.
11 *Anderson*, supra.

trial against NIE. Having made no specific allegations within their Complaint against NIE and having otherwise failed to produce any evidence in support of their claim for damages against NIE, Plaintiffs cannot meet their burden of proof and, therefore, NIE respectfully submits that it is entitled to summary judgment as a matter of law, dismissing the plaintiffs' claims against it, with prejudice.

### III. CONCLUSION

For the foregoing reasons, NIE respectfully submits that a review of the evidence and law demonstrates that Plaintiffs are not entitled to an award of damages against NIE. To the contrary, the evidence in this matter unequivocally reveals that NIE does not issue homeowner's insurance policies and that Plaintiffs' allegations regarding the defendants' refusal to provide coverage for Plaintiffs' property losses and damages have no basis in law or fact, insofar as those allegations pertain to NIE.

Accordingly, NIE, respectfully submits that this Honorable Court should grant its Motion for Summary Judgment, finding that Plaintiffs are not entitled to recovery of either compensatory or punitive damages against NIE and that any such claims against NIE should be dismissed with prejudice and at Plaintiffs' cost.

Respectfully submitted,

**CURRY & FRIEND,**
**A Professional Law Corporation**

BY: _/s/ Rene' A. Curry, Jr._
**RENE' A. CURRY, JR. (#4670)**
**CHRISTOFFER C. FRIEND (#1888)**
**GUY C. CURRY (#22032)**
**BRETT F. WILLIE (#26755)**
**228 St. Charles Avenue**
**1200 Whitney Bank Building**
**New Orleans, Louisiana 70130**
**Telephone: (504) 524-8556**

                                        **Attorneys for National Fire & Indemnity Exchange**

## CERTIFICATE OF SERVICE

**I DO HEREBY CERTIFY** that a copy of the above and foregoing Motion for Summary Judgment on behalf of National Fire & Indemnity Exchange to Dismiss Plaintiffs' Claims for Damages has been served upon counsel for Plaintiffs, by facsimile transmission and/or by certified mail, return receipt requested, postage prepaid, and properly addressed on this 8th day of February, 2007.

                                                  _/s/ René A. Curry, Jr._
                                                       RENE A. CURRY, JR.

EVERY PIECE IS IMPORTANT

THE CLEANER COMMITMENT 2006

EXHIBIT 1

# LEADERSHIP

## Protecting subscriber interests

All voting members of the Advisory Committee own fabricare businesses. Pictured from left to right, they include:

### OUR ADVISORY COMMITTEE MEMBERS

**RUSS PETROZZI**
Barron Cleaners & Feldman Furs – Niagara Falls, NY

Russ joined the Advisory Committee in 1995. His Capitol Cleaners has been in the family for 54 years and has been insured by the Exchange since 1986.

**RICK MILLER**
Barron & Miller, Inc – Ft. Lauderdale, FL

Rick joined the Advisory Committee in 1995. He has been president of Barron & Miller Cleaners since 1983. He is a past president of South Eastern Fabricare Association and has been a subscriber of the Exchange since 1993.

**JACK BARRON**
Coronado Cleaners & Laundry Inc – El Paso, TX

Jack joined our Advisory Committee in 2010. He is the 1999 IDC Dry Cleaner of the Year. Jack has owned Coronado Cleaners since 1992 and has been a subscriber of the Exchange since 1996.

**JOSEPH YOON**
House of Kleen – Hyattsville, MD

Joseph joined the Advisory Committee in 1995. He is past president of the Federation of Korean Drycleaning Associations, has been president of House of Kleen since 1984 and insured with NIE since 1992. He retired from the Advisory Committee at the end of 2005.

**JEANNE MORGENTHALER WOLF**
CHAIRPERSON
Morgenthaler's Cleaners, Inc – St. Louis, MO

Jeanne is the 4th generation of Morgenthalers to manage the family business. Her great-grandfather was one of the first subscribers of NIE in 1915.

**LEO SOUKUP, JR.**
C D Wash, Inc – Hastings, NE

Leo has served on the Advisory Committee since 1977. The Soukups' business has been insured by NIE since 1923.

**LOUIS BADER**
(Not pictured)
Park & Wash of Woodstown, Inc – Woodstown, NJ

Louis has served as a member of the Advisory Committee since 1991. He established and still owns Park & Wash of Woodstown, Inc. He has been a subscriber of the Exchange since 1986.

**BOB AIKIN**
John L. Cooley, Inc – St. Louis, MO

Bob joined the attorney-in-fact in 1991. As president of the attorney-in-fact, he only votes when there is a tie.

### ADVISORY COMMITTEE ELECTIONS

Each year our subscribers elect seven members of the Exchange's Advisory Committee. The eighth member of the Advisory Committee is from the attorney-in-fact. That member only votes as a tie breaker.

### SUBSCRIBER MEETING

The Exchange's Annual Subscriber Meeting will be held at The Hyatt Regency at Union Station in St. Louis, Missouri beginning at 9:00 a.m. on Saturday, June 10, 2006. The agenda features the election of the Advisory Committee for the coming 12 months. All subscribers are encouraged to vote either in person or by proxy.





**PUZZLE PIECE**
The first jigsaw puzzle was created about 1760 by John Spilsbury, a London mapmaker. He pasted a map on some wood and cut around each of the countries. It was then used for teaching children about geography.

# STRUCTURE
## A solid foundation

In 1915, the National Association of Dyers & Cleaners (now International Fabricare Institute) organized the National Association of Dyers & Cleaners Inter-Insurance Exchange (the Exchange). In those days there was a very good reason to choose the Exchange: no one else would insure cleaners (because dangerous fires and explosions accompanied the early use of gasoline and naphtha in cleaning plants.) In the words of Albert Morgenthaler, "We tried every way we could to get insurance, but no one would write us. Finally Johny (Corley) organized the National Association of Dyers & Cleaners Inter-Insurance Exchange."

### ATTORNEY-IN-FACT

Since the Exchange's inception, its operations have been managed by John L. Corley, Inc.

"The Exchange was organized By the fabricare industry — For the fabricare industry."

## WHAT IS A RECIPROCAL EXCHANGE?

A reciprocal exchange is a group of risks that insure each other. When you purchase insurance from an exchange, you become more than a policyholder, you become a subscriber.

An exchange's subscribers appoint an attorney-in-fact to manage the exchange. Our subscribers also elect a committee to advise the attorney-in-fact of subscriber needs and preferences. Our Advisory Committee also decides what to do with the Exchange's profit, how the Exchange's assets should be invested, what actuarial firm should analyze the Exchange's loss reserves, and what CPA firm should audit the Exchange's financial statements.

When our Exchange generates a profit, up to 100% of that profit can be returned to policyholders.

If our Exchange generates a loss, policyholders can not be required to pay additional premium. That's because our Exchange issues only non-assessable policies.



JOHN L. CORLEY, LL.D.
As Secretary of the National Association of Dyers & Cleaners (now IFI), John Corley was the driving force behind the formation of the Insurance Exchange (now National Fire & Indemnity Exchange). He was elected to the International Fabricare Institute's Hall of Fame in 1990.

## TO OUR FELLOW FABRICARE BUSINESS OWNERS

The year 2005 will long be remembered as the year that Hurricanes Katrina, Rita and Wilma terrorized the Gulf Coast. Never in our lifetime have natural disasters devastated so many American lives. Never before has our Exchange faced such a challenge.

We received hurricane claims from 223 fabricare locations in 2005. Several of those businesses suffered total losses that were inaccessible for a long time. In New Orleans, it's still hard to see even businesses return to normal.

Our Exchange is paying out about $4 million on claims related to the 2005 hurricanes. That's more than our worst hurricane year, 2004. Fortunately, we had purchased reinsurance that is reimbursing our hurricane claims. That's not enough to allow the Exchange to generate a 2005 profit, but it is enough to rate our financial condition as "excellent".

We're learning from Katrina's devastation. One lesson for all of us is that too many businesses lack flood insurance. Even if you aren't in a flood plain, we recommend that you buy a flood policy from the National Flood Insurance Program. A second lesson is that most catastrophe analysis models have been underestimating the risks from hurricanes. As a result, our Exchange has increased its purchase of hurricane reinsurance for 2006.

We're hoping that future hurricane seasons will be mild, but the experts are predicting the 2006 season could be severe. We're doing our best to be ready. Thank you for allowing us to serve you.

Sincerely,

Jeanne M. Wolf
Jeanne Wolf



SUBSCRIBER RELATIONSHIPS

SUBSCRIBERS
ELECT
APPOINT
ADVISORY COMMITTEE
ATTORNEY-IN-FACT

# COVERAGE

*Numerous options to fit your needs*

## YOUR CUSTOMERS' PROPERTY

PROTECT PROPERTY IN YOUR CARE, CUSTODY AND CONTROL

- Garments for drycleaning
- Garments for laundering
- Garments for alterations
- Garments (including leather/fur) for storage
- Shoes for repair
- Leathers/fur to and from contractor
- Garments in transport
- Heirlooms for drycleaning
- Fire orders for restoration

### FROM THESE PERILS

- Robbery/theft
- Employee theft
- Accidental damage in processing
- Fire
- Smoke
- Lightning
- Windstorm/hail
- Flood
- Sudden water escape from plumbing or roof
- Vandalism
- Falling objects
- Riot
- Earthquake

WITH THE FOLLOWING POLICIES

- Commercial Multi-Peril

## YOUR EMPLOYEES

PROTECT THE PEOPLE YOU RELY ON TO RUN YOUR BUSINESS

- Your family
- Your employees

### FROM THESE LOSSES

- Work related medical expenses
- Work related survivor benefits
- Work related disability
- Employee benefits

WITH THE FOLLOWING POLICIES

- Workers Compensation
- Employee Benefits Bond



*"We understand the risks fabricare businesses face. We offer multiple options to manage those risks."*





**PUZZLE PIECE:**
The golden age of jigsaw puzzles was during the Great Depression. In the 1930s, home insurance, movies, and jigsaw puzzles, replaced outdoor entertainment and offered an escape from troubled times.

## YOUR PROPERTY & INCOME

**PROTECT THE PROPERTY YOU OWN AND THE INCOME IT GENERATES**

- Building
- Improvements & betterments
- Equipment & tools
- Business income
- Plate glass
- Signs & awnings
- Valuable papers
- Money & securities
- Accounts receivable
- Equipment breakdown
- Computer
- Commercial auto

**FROM THESE PERILS**

- Fire
- Lightning
- Windstorm & hail
- Vehicles
- Explosion
- Aircraft
- Smoke
- Theft & burglary
- Vandalism
- Falling objects
- Riot
- Sudden water escape from plumbing
- Sewer back-up
- Weight of ice/snow/sleet
- Sudden & accidental breakdown
- Artificially generated electric current
- Flood
- Earthquake
- Pollution release

**WITH THE FOLLOWING POLICIES**

- Commercial Multi-Peril
- Equipment Breakdown
- Electronic Data Processing (Computer)
- Commercial Auto
- Flood
- Environmental Liability

## YOUR BUSINESS EQUITY

**PROTECT YOUR EQUITY FROM THESE CLAIMS**

- Damage to property of others
- Bodily injury to others
- Personal injury
- Medical payments to others
- Fire damage liability
- Defense cost
- Completed products & services
- Employee suit for bodily injury by disease
- Employee suit for bodily injury by accident
- Advertising injury
- Employee suit for wrongful termination
- Employee theft of your money/securities
- Employee suit for discriminatory practices
- Employee suit for sexual harassment
- Employee theft of customer's clothing

**WITH THE FOLLOWING POLICIES**

- Commercial Multi-Peril
- Equipment Breakdown
- Electronic Data Processing (Computer)
- Commercial Auto
- Flood
- Environmental Liability

*This is only a brief overview of the most common exposures and coverages.*

*Please see the actual insurance policies for coverage terms, definitions, and exclusions.*

*Some coverages are not available in every state.*

■ *National Fire & Indemnity Exchange offers coverage for all of the gray coded risks.*

■ ■ ■ ■ *Risks coded in other colors are not covered by National Fire & Indemnity Exchange. We can help you access those coverages through other insurers.*

# TEAMWORK

*Flexibility / dedication / experience / specialized skills*





## WE ARE ONE OF A KIND

Most insurers serve numerous industries. They frequently adjust their list of target industries and juggle their staffing and pricing accordingly. Likewise, much of their workforce juggles dozens of ever-changing industries. They become well rounded, but it's hard to develop expertise serving dozens of ever-changing industries.

We're a different animal. We're not well rounded. We serve one industry: fabricare. Our staffing and pricing are stable. Every member of our workforce is focused on the fabricare industry for 40 hours a week. We've been focused on fabricare for a long time (see NIE years listed after each teammate's name). We'll continue to be focused on fabricare for a long time to come.

*"We don't just KNOW about fabricare. We CARE about fabricare."*

### RATING & UNDERWRITING

Each of our raters and underwriters understand the exposures that fabricare businesses face, the proper coverages for those exposures, and the state guidelines for pricing those coverages.

[seated, left to right] Suzanne Collier 2 yrs, Shirley Clemmons 9 yrs, Susan Fitch 2 yrs, Beth Piper 2 yrs, Becky Widmer 7 yrs [understanding, left to right] Karen Jochems 14 yrs, Ann Howsden 24 yrs, Suzanne Collier 2 yrs, Beth Piper 2 yrs



### RECEPTION

Friendly, knowledgeable, real live people answer your calls for 50 hours each week. If you want to talk to a machine or a recording, you'll have to call after normal business hours.



Adele Hardauer 2 yrs

GREATER COMMITMENT

# GEOGRAPHY

The territory we serve



"Our exposures are well spread across the country. A disaster in any one state is diluted by results in 31 other states."

### GREEN STATES

In these 32 states, the Exchange's commercial package policy is supplemented with products from other quality carriers.

### TAN STATES

In these 7 states, we act as an agent to help fabricate businesses secure quotes from other quality carriers.

### BLUE STATES

We do not maintain licenses in these states.



POLICYHOLDERS BY STATE