UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 FEB 16 AM 7:42

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | : : : | CIVIL ACTION |
| | : | NO. 05-4182 "K" (2) |
| | : | |
| | : | JUDGE DUVAL |
| | : | |
| PERTAINS TO: | : | MAG. WILKINSON |
| LEVEE (06-6642) | : | |
| (PONTCHARTRAIN BAPTIST CHURCH) | : | |

## *EX PARTE* SUPPLEMENTAL MEMORANDUM OF PLAINTIFFS IN SUPPORT OF MOTION TO REMAND AND INCORPORATED EXHIBITS AND DECLARATIONS

## BACKGROUND

The common thread in Plaintiffs' Petition clearly indicates that the gravamen of the lawsuit, in large measure, concerns WORKS[1], namely, canal dredging related to widening of the canal, bridge demolition, reconstruction, and related activities on water and on land for the Hammond Highway (Bucktown) bridge on the 17th Street Canal, and the Robert E. Lee, Mirabeau, and Filmore Avenue bridges on the London Avenue Canal involving maritime actors and non-maritime actors whose collective fault caused damages to Plaintiffs arising out of the defendants' WORKS and ACTIONS. Vessels and/or appurtenances were used on those WORKS giving rise to maritime jurisdiction, maritime causes of action, and non-maritime causes of action (28 U.S.C. §1331; 46 U.S.C.app § 740) under Louisiana Civil Code Articles 665, 667, 2315, 2317, and to Constitutional torts for Inverse Condemnation under Article 1 § 4 of the Louisiana Constitution, and due process violations for which Plaintiffs seek damages.[2]

---

[1] *See* note 8, *infra.*

[2] The fact that the subterranean failures were so near to the canal bridges is a pattern noteworthy of recognition by the Court.

_____ Fee_____
_√_ Process_____
_X_ Dktd_____
_√_ CtRmDep_____
_____ Doc. No._____



Map of the 17th Street Canal showing the Old Hammond Highway (Bucktown) bridge.



Map of the London Avenue Canal showing the Mirabeau and Fillmore Avenue bridges.



Map of the London Avenue Canal showing the Robert E. Lee bridge.

In view of the noteworthy pattern involving the canal WORKS and subterranean failures, arguments that the law of the case is, or that issue preclusion arises from, this Court's *Berthelot* decision are inapplicable. In previous decisions, the Court has not addressed the WORKS which are the subject of this suit.[3]

## THE ISSUE

The nub of the issue before the Court is whether defendant James Construction Group, LLC ("James"), a non-governmental private actor, can remove Plaintiffs' Louisiana State Court Petition to this United States District Court under 28 U.S.C. § 1442(a)(1) or 28 U.S.C. § 1331. As brought to the Court's attention on January 15, 2007, the "Federal Officer Removal Statute" (28 U.S.C. § 1442(a)(1)) and divergence in the Circuits on the standards for its application is now pending for review by the United States Supreme Court in *Watson v. Philip Morris Companies, Inc.*, 420 F.3d 852 (8th Cir. 2005), *cert. granted* (U.S. Jan. 12, 2007) (No. 05-1284).

Defendants recently filed Oppositions[4] to Plaintiffs' Motion to Remand (Doc. 1526). There is little to add to the arguments made in Plaintiffs' Remand Memorandum. (Doc. 1526). Plaintiffs re-urge and emphasize those same arguments, especially the argument that the "Any Person Acting Under That Officer" clause in 28 U.S.C. § 1442(a)(1) distinguishes private actors

---

[3] To the extent that the WORKS may be considered "Remote Projects," such were not listed in this Court's Order and Decision of Dec. 8, 2006 (Doc. 2148 at 6-11), nor to our knowledge have they been addressed in other litigation; *See Berthelot v. Boh Bros. Construction Co., Inc.*, 2006 WL 1984661 (Duval, J.) (E.D.La. June 1, 2006); (Doc. 780).

[4] James Construction Group, LLC ("James") Opposition to Motion to Remand (Doc. 2354) (Dec. 12, 2006); Modjeski and Masters, Inc. ("Modjeski") Opposition to Motion to Remand (Doc. 2393) (Dec. 28, 2006); Boh Bros. Construction Co. ("Boh Bros") Opposition to Motion to Remand (Doc. 2411) (Jan. 2, 2007); C.R. Pittman Construction Co. ("Pittman") Opposition to Motion to Remand (Doc. 2412) (Jan. 2, 2007); *Ex Parte* Supplemental Opposition to Motion to Remand and Declaration of Michael Killgore by James (Doc. 2484) (Jan. 5, 2007).

5

from governmental officials. Plaintiffs submit the distinction is a limitation of the applicability of 28 U.S.C. § 1442(a)(1) to the defendants in this litigation.

## I.  PLAINTIFFS' PETITION MEETS THE REQUISITES FOR MARITIME TORT SUBJECT MATTER JURISDICTION

James and other defendants' attempt to dispose of Plaintiffs' Petition by stating that Plaintiffs' maritime jurisdictional and causes of action assertions are conclusory.[5]   To the contrary, the highlighted paragraphs of Exhibit C (the "Petition," without its attached Exhibits) reflect properly plead and non-frivolous assertions of admiralty jurisdictional elements, maritime tort causes of action, maritime contract causes of action, and other causes of action under concurrent State court jurisdiction.

The issue of admiralty subject matter jurisdiction should not be before this court at this time.  However, since defendants attack Plaintiffs' Petition on the grounds that it allegedly fails to state admiralty jurisdiction and legally cognizable admiralty causes of action, Plaintiffs will nevertheless respond.  Rule 12(b)(1) provides the appropriate remedy for such a challenge.[6]

The test for determining the sufficiency of a complaint under Rule 12(b)(1) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Fifth Circuit explained:

> Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).  Further, "the plaintiff's complaint is

---

[5] *Ex Parte* Motion for Leave to Supplement Opposition to Motion to Remand and Declaration of Michael Killgore (Doc. 2484 at 2); *See also* Modjeski Opposition (Doc. 2393); Boh Bros Opposition (Doc. 2411); Pittman Opposition (Doc. 2412); James Opposition (Doc. 2354).

[6] Fed. R. Civ. P. 12(b)(1) (West 2003). Plaintiffs bring to this Court's attention that no Rule 12(b)(1) motion has been filed by any defendants in the instant case; on Feb. 1, 2007 defendants filed Rule 12(b)(6) and Rule 56 motions (Docs. 2986, 2974, and 2970) which Plaintiffs will address timely.

to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities, Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim." *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *TelPhonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992). Finally, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

*Ramming v. United States*, 281 F.3d 158, 161-62 (5th Cir. 2001).

Even applying the Rule 12(b)(1) standard (with no Rule 12(b)(1) motion filed), Plaintiffs' Petition clearly sets out the requisites for admiralty jurisdiction. The admiralty jurisdiction and the maritime causes of action asserted in the Petition are supported by Plaintiffs' Remand Memorandum and Exhibits (Doc. 1526) and this Memorandum and Exhibits. Plaintiffs' Petition filed in the 24th Judicial District Court for the Parish of Jefferson provides as follows:

(1)   Admiralty jurisdictional grounds; Admiralty Original Jurisdiction, 28 U.S.C. § 1333(1); Admiralty Extension Act, 46 U.S.C.app. § 740 (¶**3**);

(2)   Navigable waters of the United States (¶**7**);

(3)   Bridge and canal remote works and activities substantially related to traditional maritime activities (¶**18**, ¶**22**, ¶**23**, ¶**26**, ¶**27**, ¶**30**, ¶**31**, and ¶**32**)[7];

(4)   Vessels and appurtenances involved in the WORKS[8] and ACTIONS[9] in the canals (¶**21**, ¶**22**, ¶**26**, ¶**68**, and ¶**72**) (highlighted red);

---

[7] Plaintiffs have requested copies of the construction contracts and the duly filed Certificate of Acceptances with the appropriate mortgage offices, but to no avail; while defendant James did provide counsel with a contract, it has fallen into the "black hole" of paper, not yet found (Exh. K); Plaintiffs have requested that contract again, and other contracts and Certificates, repeatedly from defendants, *see* Email from William E. O'Neil, Counsel for Plaintiffs, to Jason Markey, Counsel for Pittman, Jan. 24, 2007, 17:46:00 CST (Exh. G at 39); Email from William E. O'Neil, Counsel for Plaintiffs, to Frank Barry, Counsel for Modjeski, Jan. 25, 2007, 15:21:00 CST (Exh. G at 40); Email from William E. O'Neil, Counsel for Plaintiffs, to Michael Riess, Counsel for Boh Bros, Jan 25, 2007, 15:9:00 CST (Exh. G at 41).

[8] The term WORKS throughout this *Ex Parte* Supplemental Memorandum of Plaintiffs in Support of Motion to Remand includes, without limitation, activities relating to repairs, operation, and canal excavation and dredging in connection with bridge projects involving demolition, and reconstruction of bridges in and over the canals.

(5)   The substance of the WORKS (¶**23**, ¶**26**, and ¶**29**);

(6)   Local sponsorship in connection with the WORKS and ACTIONS and interrelationships between co-sponsors(¶**31**, ¶**32**, and ¶**36**);

(7)   The re-allegations of paragraphs 1-55 (¶**72**);

(8)   Defendants negligently failed to supply information for guidance in business transactions, and failed to exercise reasonable care in gathering that information and transmitting information, which constitutes maritime negligent misrepresentation (¶**27**, ¶**38**, ¶**66**, and ¶**69**);

(9)   Assertion of damages caused by defendants' WORKS and ACTIONS (¶**72**, ¶**73**, ¶**75**, ¶**76**, and ¶**77**);

(10)  Proximate causes and damages resulting from the WORKS and ACTIONS (¶**80** and ¶**81**);

(11)  Equitable and other remedies (¶**81**).

Plaintiffs' Petition in 24th Judicial District Court, Parish of Jefferson.[10]

In *Grubart*, a case strikingly similar to the one filed by Plaintiffs, the Supreme Court found the requisites for admiralty jurisdiction were satisfied.[11]  Those requisites are satisfied in the instant case.

Throughout history Congress and the Supreme Court have continuously reshaped the scope of the federal judiciary's authority to hear admiralty cases. *Grubart*, 513 U.S. at 532 (describing history of admiralty jurisdiction); *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249 (1972); *Foremost Insurance Co. v. Richardson*, 457 U.S. 668 (1982); *Sisson v. Ruby*, 497 U.S. 358 (1990).  In order to invoke federal admiralty tort jurisdiction under 28 U.S.C. § 1333(1) and under 46 U.S.C.app. § 740, a party must satisfy each of the so-called "location" and

---

[9] The term ACTIONS throughout this *Ex Parte* Supplemental Memorandum of Plaintiffs in Support of Motion to Remand collectively includes, without limitation, the fault, acts/omissions/torts/wrongs/and breaches, more specifically, acts of negligence, breaches of duties, failure to warn, failure to disclose, failure to investigate, failure to supply information, strict liability, inverse condemnation, constitutional torts, and absolute liability.

[10] Exh. C.

[11] *Grubart v. Great Lakes Dredge & Dock*, 513 U.S. 527, 532 (1995).

"connection" tests.  The location test, which emerges in part from the Admiralty Extension Act, asks "whether the tort occurred on navigable waters and whether injury suffered on land was caused by a vessel on navigable waters."[12]

Plaintiffs argue that Louisiana courts have concurrent jurisdiction over admiralty causes of action under the "Saving to Suitors Remedies" clause.[13]  As such, 28 U.S.C. § 1442(a)(1) should not be used to wrest away Plaintiffs' rights and remedies in state court asserting admiralty and state law causes of action.

As stated in Plaintiffs' Motion to Remand with Incorporated Memorandum (Doc. 1526), the fault, acts/omissions/torts/wrongs/and breaches of contract and tort duties, more specifically, acts of negligence, breaches of duties, failure to warn, failure to disclose, failure to investigate, failure to supply information, strict liability, inverse condemnation, constitutional torts, and absolute liability (the ACTIONS)[14] arose from defendants' conduct in performing activities involving repairs, operation, and canal excavation and dredging in connection with bridge projects involving demolition, and reconstruction of bridges in and over the canals.  In the performance of obligations on those WORKS, defendants supplied and approved documents, specs, the use of pile drivers, air hammers, water jetting devices, blast monitoring equipment, and other methods causing damage to Plaintiffs from such ACTIONS.[15]  **Plaintiffs' causes of action relate to the WORKS and ACTIONS.**  Defendants' memoranda confuse Plaintiffs' causes of action with other Katrina litigation concerning other waterways and projects.

In the instant case, because the issues of fact are central both to admiralty subject matter jurisdiction and the claims on the merits, a veiled Rule 12(b)(1) motion is improper.  The recent

---

[12] *Grubart*, 513 U.S. at 534; *See also* the Admiralty Extension Act (46 U.S.C.app. § 740).
[13] 28 U.S.C. § 1333(1) (West 2003).
[14] *See* note 8, *supra*.
[15] Exh. I at 49-59.

filings of defendants Rule 12(b)(6) and Rule 56 motions attacking the merits of Plaintiffs' case intertwine jurisdictional attacks and attacks on the merits of Plaintiffs' maritime claims. An Court sitting in Admiralty may adopt, or borrow, state law where a uniform federal rule neither exists nor is necessary.[16] We recognize that under such circumstances, the proper course of action may be to find that admiralty jurisdiction exists and then deal with the motions addressing the merits of Plaintiffs' claims.[17]

## II.   **REMOVAL DEFECTS**

To remove under 28 U.S.C. § 1442(a)(1), the burden of proof is on the removing party to show that the WORKS and ACTIONS forming the basis of Plaintiffs' claims were undertaken by a federal officer or "a person acting under that officer."[18] Presently, the acts (WORKS) must be done under the "color of office" of that federal officer, *Florida v. Cohen*, 887 F.2d 1451, 1456 (11th Cir. 1989), and the removing party must allege that it was "[a] person acting under that officer."[19] Defendants' Opposition to Motion to Remand collectively urge that the Corps of Engineers had complete control over all aspects of plans, specifications, drawings, and work, engineering or otherwise, allegedly satisfying the "Any Person Acting Under That Officer" clause of 28 U.S.C. § 1442(a)(1).[20]

James' removal of this action is defective since the defendants' Oppositions fail to establish by clear and convincing evidence that the defendants complied with the Fifth Circuit

---

[16] *Grubart*, 513 U.S. at 545.

[17] *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981); cf. *Robinson v. United States*, #05-4182 (J. Duval) (E.D.La. Feb. 2, 2007).

[18] *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 391 (5th Cir. 1998).

[19] *Miller v. Diamond Shamrock Chemical Co.*, 275 F.3d 414, 417 (5th Cir. 2001); 28 US.C. § 1442(a)(1).

[20] The Oppositions (Docs. 2354, 2393, 2411, 2412, and 2484); *But see* Exh. J at 49-78 (indicating that control was shared between the Sewerage and Water Board, the Orleans Levee District, and perhaps others). Plaintiffs respectfully suggest that it may be precipitous for this Court at this time to determine the interrelationship among those parties and decide who controlled whom and what.

10

standard of "direct and detailed control" under 28 U.S.C. § 1442(a)(1).[21]  That standard is now

under review in the Supreme Court. *Watson v. Philip Morris Companies, Inc.*, 420 U.S. 599

(2005), *cert. granted*, (Jan. 12, 2007) (No. 05-1528).  The documents in Exhibit J raise serious

questions on the direct and detailed control of the WORKS.  In fact, one may reasonably infer

that it is at best unclear and doubtful[22] to what extent a federal officer, if any, had direct and

detailed control over the WORKS, especially in light of the <u>admission</u> of Plaintiffs' allegation[23]

of local sponsorship and in the Answer filed by the Board of Commissioners for the Orleans

Levee District.[24]

      Counsel are not unmindful that it is well established that removal is an independent basis

for invoking federal jurisdiction, and that the rules governing what claims are removable are

basically the same as those for original federal jurisdiction such as "arising under" or "diversity"

of citizenship.  Because the types of cases that may be removed, and the conditions under which

they may be removed, are governed by federal statutes (28 U.S.C. § 1441), the propriety of

removal depends on whether the Petition originally could have been filed in federal court or

whether there exists a special statute authorizing removal. The latter is the position taken by

James and certain other defendants.

      Complicating the removal issue is the fact that the Petition contains facts asserting both

maritime and non-maritime causes of action, damages, and remedies caused by the WORKS and

ACTIONS using vessels and appurtenances in and on navigable waterways, *i.e.* the 17th Street

and London Avenue Canals.  The conduct in the performance of the WORK obligations gives

---

[21] *Winters*, 149 F.3d at 389.
[22] Exh. J at 77a – 77c.
[23] Exh. C at ¶31.
[24] Doc. 2416 at ¶31.

rise to the ACTIONS. Those WORKS are co-sponsorships[25] (a joint venture) between the New

Orleans Sewerage & Water Board, the Orleans Levee District, the East Jefferson Levee District,

and the Corps of Engineers.[26]

In what specific roles and responsibilities defendants (as Engineers, Consultants,

Architects, Contractors, Designers or other entities) were obligated to perform their maritime and

non-maritime WORKS giving rise to the ACTIONS is cloudy. Only through discovery can

defendants' roles and responsibilities be made clear.

## III.    "VESSELS" USED DURING THE WORKS

The Supreme Court in *Jerome B. Grubart, Inc., v. Great Lakes Dredge & Dock Co.,* 513

U.S. 527 (1995) held that establishing admiralty jurisdiction over a claim against one maritime

tortfeasor establishes admiralty jurisdiction over claims against the other joint tortfeasors, even

one whose activities were allegedly land-based. The Fifth Circuit has adopted the *Grubart*

holding in *Scarborough v. Clemco Industries,* 391 F.3d 660 (5th Cir. 2004), *cert. denied,* 544

U.S. 999 (U.S. 2005). Professors Marist and Galligan state that "Under *Grubart,* a tort claim

which ordinarily would not be maritime may be so connected with a maritime claim that it will

also be deemed a maritime tort."[27]

Professors Marist and Galligan on page 41 of ADMIRALTY IN A NUTSHELL infer that the

above quote is based on the same *Grubart* language that the *Scarborough* court relied on. The

Professors later discuss the topic in more detail:

> "In *Grubart,* the defendants argued that the presence of a nonmaritime tortfeasor
> weakened the "maritime flavor" of the tort caused by the vessel on navigable
> waters. *However, the Court concluded that 'as long as one of the putative tortfeasors*

---

[25] Exh. J; *See also* note 13, *infra.*
[26] Doc. 1545 at ¶31.
[27] Marist, Frank L. and Galligan, Thomas C. Jr., ADMIRALTY IN A NUTSHELL (5th ed. 2005) at 338-339.

> *was engaged in traditional maritime activity the allegedly wrongful activity will 'involve' such traditional maritime activity' and will satisfy the 'substantial relationship to traditional maritime activity' required for maritime tort jurisdiction."*

Marist & Galligan, ADMIRALTY IN A NUTSHELL at 338-39. (emphasis added)

In a recent unanimous decision, the Supreme Court held that 1 U.S.C. §3 sets out the controlling definition of a "vessel":

> "The word vessel includes every description of watercraft or other artificial contrivance used, or practically capable of being used, as a means of transportation on water regardless of its primary purpose or state at a particular moment."

*Stewart v. Dutra Construction Co.*, 543 U.S. 481, 492 (2005); *See also Arnold v. Luedtke Engineering Co.*, 2006 U.S.App. LEXIS 20054 1, 15 (6th Cir. 2006) (barge used by workers as a platform for welding steel plates onto a seawall is a "vessel"); *Holmes v. Atlantic Sounding Company, Inc.*, 47 F.3d 441 (5th Cir. 2006), *superseded by* 47 F.2d 441 (5th Cir. Jan. 19, 2006), *citing Dutra, supra*, (barge used by workers as a dormitory for dredge personnel is a "vessel").

James admits that it was professionally engaged in the London Avenue Canal WORKS, in particular in the bridge/canal WORK at Filmore Avenue and Mirabeau Avenue.[28] Importantly, in his Declaration, Michael Killgore, President of James' Industrial Group[29], admits that vessels were used to transport personnel and materials.[30]

As admitted by James' President, "vessels" were used in the London Avenue Canal WORKS. Vessels were used in the 17th Street Canal WORKS as well.[31] There is no dispute that

---

[28] Declaration of Corey Melancon (Doc. 2354 at ¶¶3 and 4).

[29] *Ex Parte* Motion for Leave to file Supplement Opposition to Motion to Remand and Declaration of Michael Killgore. (Doc. 2484 at ¶¶5, 7, 8, and 9).

[30] Michael Killgore is the President of the Industrial Group of James Construction Group, LLC, f/k/a Angelo Iafrate Construction, LLC. (Doc. 2354 at ¶2).

[31] Exh. A at 1-3; Exh. H; *See e.g. Stewart v. Dutra, supra.*

the vessels were located and used in and on the navigable waters of the London Avenue and 17th Street Canals during the WORKS and ACTIONS.

## IV.   REQUISITES FOR ADMIRALTY TORT JURISDICTION

There are three requisites a party seeking to invoke admiralty jurisdiction in tort must allege:

(1) the tort occurred on navigable waters,

(2) the general features of the incident causing damages were of a sort with the potential to disrupt maritime commerce, and

(3) the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime commerce.

*Grubart*, 513 U.S. at 534-35; *See also In re: Ingram Barge Co.*, 435 F.Supp.2d 524 (E.D.La. May 25, 2006), *appeal docketed* (No. 06-30705) (5th Cir. June 30, 2006).  **Each of the above requisites in the Petition is properly alleged.**

### A.   THE LOCATION REQUISITE

A court applying the location test must determine whether the tort, caused by a vessel or its appurtenances, occurred on a navigable waterway, even if the injury was suffered on land.[32] In the Petition, the location test is properly alleged and satisfied by evidence in the incorporated Exhibits.[33]

A maritime tort committed by just one defendant while using a vessel or its appurtenances on a navigable waterway is enough to establish maritime tort jurisdiction over all the alleged claims. *Grubart*, 513 U.S. at 540-41.  The Supreme Court, in *Grubart,* rejected the defendant City of Chicago's argument that under *Sisson* there must be complete identity between

---

[32] 46 U.S.C.app § 740 (2003).
[33] *See* p.17, *infra*.

14

the activities giving rise to the incident and traditional maritime activity.   In rejecting that

argument, the Supreme Court stated:

> The city misreads *Sisson,* however, which did not consider the activities
> of the washer/dryer manufacturer, who was possibly an additional tortfeasor,
> and whose activities were hardly maritime; the activities of Sisson, the boat
> owner, supplied the necessary substantial relationship to traditional maritime
> activity.

> Likewise, in *Foremost,* we said that "[b]ecause the 'wrong' here involves
> the negligent operation of a vessel on navigable waters, we believe that it has a
> sufficient nexus to traditional maritime activity to sustain admiralty
> jurisdiction...." 457 U.S. at 674.  By using the word "involves," we made it clear
> that we need to look only to *whether one of the arguably proximate causes of*
> *the incident originated in the maritime activity of a tortfeasor: as long as one of*
> *the putative tortfeasors was engaged in traditional maritime activity the*
> *allegedly wrongful activity will "involve" such traditional maritime activity and*
> *will meet the second nexus prong. Thus, even if we were to identify the*
> *"activity giving rise to the incident" as including the acts of the city as well as*
> *Great Lakes, admiralty jurisdiction would nevertheless attach."*

*Id.* at 541 (emphasis added), *citing Sisson, supra,* at 364. (emphasis added)

The Fifth Circuit followed the Supreme Court's *Grubart* holding when it stated that

"[t]he substantial relationship test is satisfied when at least one alleged tortfeasor was engaging

in activity substantially related to traditional maritime activity and such activity is claimed to

have been **a** proximate cause of the incident." *Scarborough,* 391 F.3d at 665 (emphasis added).

In *Scarborough,* the court held "because the *Sisson* test is satisfied, federal admiralty jurisdiction

exists over the claims." *Id.*

James admits it used vessels in performing its WORK obligations in the London Avenue

canal.  Exhibits A and H establish that vessels were used in performing WORK obligations in the

17th Street canal.  The negligent WORKS and ACTIONS allegedly produced vibrations, erosion

of soil, and decomposition of the canal's subterranean walls and bottoms **beneath** the levees, all

of which damaged Plaintiffs.[34]   The result of the WORKS and ACTIONS using vessels and appurtenances by defendants (especially the contractors, Boh Bros., C.R. Pittman, James, and Gulf Coast) negligently weakened the respective canal walls and bottoms **beneath** the levees on the 17th Street and London Avenue Canals causing Plaintiffs' damages. During the performance of the WORK, pile drivers, air hammers, water jetting devices, blasting equipment,[35] or other methods of construction were used in demolition and reconstruction which created hazards and damages.[36]

Like defendant James, defendant Gulf Coast used cranes, barges,[37] and other vessels, methods, or appurtenances on the 17th Street WORKS.[38]   Materials from bridge demolition and reconstruction methods were often provided and removed by vessels stationed North and South of the bridge, and in and under the bridge.[39]   These vessels were located on navigable waters.

All defendants' collective WORKS and ACTIONS are proximate causes of the damages whether arising from providing engineering, consulting, architectural, surveying, design, plans and specifications, drafting, construction, dredging, excavation (vessel-based and/or land-based) contract administration, or other activities.

Thus, because James and the other defendants' WORKS and ACTIONS were done under maritime contracts[40] on navigable waters of the United States[41] using vessels and appurtenances

---

[34] Exh. C at ¶45.
[35] Exh. J at 99 (implying that for safety purposes, the Corps set a maximum vibration safety factor level of 0.25); *But see* Exh. K at 101 (report from on-site blast vibration monitor, a Dallas Instruments, Serial No. 2809-17 BR2-LF, indicating that the monitor recorded vibrations from WORKS at levels of 0.37).  Those recordings are 50% over the Corps' implied maximum of 0.25; *See e.g.* Exh. L at 99, indicating that the contractors were notified that vibrations from the WORKS were exceeding the Corps' safety factor level of 0.25.
[36] Photographs of the 17th Street and London Avenue Canals (Exh. K at 34a – 34c).
[37] Exh. H, at 43–48.
[38] *Id; See also* Exh. A.
[39] Exh. A.
[40] *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 24 (2004) (mixed contracts containing both maritime and non-maritime language are maritime contracts); *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307, 311 (2nd Cir. June 30, 2005)

which allegedly collectively resulted in ACTIONS and were proximate causes of Plaintiffs'

damages, admiralty jurisdiction and law, at a minimum, apply to all of Plaintiffs' admiralty tort

and contract claims, and arguably to other claims asserted in the Petition. *Scarborough v. Clemco*

*Industries*, 391 F.3d 660 (5th Cir. 2004), *cert. denied*, 544 U.S. 599 (2005).

## B.   MARITIME CONNECTION REQUISITE

### 1.   POTENTIAL DISRUPTION TO MARITIME COMMERCE

There are two questions in the maritime connection inquiry. The first question is whether

the incident causing the damage was of a sort with the potential to disrupt maritime commerce.

*Grubart*, 513 U.S. at 539. This inquiry depends on a description that characterizes the incident at

an intermediate level of possible generality. *Id.* The Court in *Grubart* stated: "the general

description of the incident at issue here may be described as 'damage by a vessel in navigable

water to an underwater structure.'"[42]

Justice Scalia's concurring opinion in *Sisson* puts forth his own test:

> I would hold that a wrong which occurs (1) in navigable waters,
> (2) on a vessel, and (3) while that vessel is engaged in a traditional
> maritime activity, bears a significant relationship to a traditional maritime
> activity. A vessel engages in traditional maritime activity for these
> purposes when it navigates, as in *Foremost,* when it lies in dock, as in the
> present case, and when it does anything else (*e.g.*, dropping anchor) that
> vessels normally do in navigable waters. It would be more straightforward
> to jettison the "traditional maritime activity" analysis entirely, and to
> return (for vessels) to the simple locality test--which in that context, as we
> observed in *Executive Jet,* "worked quite satisfactorily," 409 U.S. at 254.
> But that would eliminate what *Foremost* evidently sought to achieve--the
> elegance of a general test applicable to *all* torts. That test will produce
> sensible results if interpreted in the manner I have suggested.
> This approach might leave within admiralty jurisdiction a few unusual
> actions such as defamation for "a libel published and circulated

---

[41] The Corps definition (Exh. D at 29–30); the CWA definition (Exh. D at 31-33); *See* Declaration of Peter Gericka (Exh. A at 1-3); *See also* Declaration of Michael Killgore (Doc. 2484).

[42] The structure there was an underwater tunnel.

exclusively on shipboard," Hough, *supra*, at 531, but there seems to me little difference in principle between bringing such an issue to the federal courts and bringing a slip-and-fall case. In any event, exotic actions appear more frequently in the theoretical musings of the "thoroughbred admiralty men," *ibid.,* than in the federal reports. The time expended on such rare freakish cases will be saved many times over by a clear jurisdictional rule that makes it unnecessary to decide, in hundreds of other cases, what particular activities aboard a vessel are "traditionally maritime" in nature, and what effect a particular tort will have on maritime commerce. The latter tests produce the sort of vague boundary that is to be avoided in the area of subject-matter jurisdiction wherever possible.

*Sisson*, 497 U.S. at 373-74 (Justice Scalia concurring).

In the instant case, the general description of the incident at issue is "damage done by vessels or appurtenances in navigable waters to subterranean canal walls and bottoms **beneath** the levees from WORKS and ACTIONS.   The ACTIONS and the injuries and damages originated from vessels and appurtenances and personnel involved in the WORKS, the consummation of those WORKS and ACTIONS somewhere being inevitable on water and on land.   The WORKS and ACTIONS disrupted and closed navigable canal waterways and other maritime businesses in the New Orleans area, including navigation access to the canals, the Port of New Orleans, and other waterways."[43]   There is little question that the incidents at issue here were not only of the sort with the potential to disrupt maritime commerce, but, in fact, a disruption occurred.[44]

---

[43] Plaintiffs request this Court to take judicial notice of facts supporting disruptions to maritime commerce. *See* Gordon, Russel, "Nagin orders first-ever mandatory evacuation of New Orleans," New Orleans *Times-Picayune,* Aug. 28, 2005. www.nola.com/newslogs/breakingtp/indexssf?/mtlogs/nola_Times-Picayune/archives/2005_08.html.
[44] Further, we request the Court take judicial notice of the fact that the Port of New Orleans, ship suppliers, warehouses, and businesses were forced to shut down for months, clearly disrupting maritime commerce. *See id.*

The WORKS and ACTIONS done by certain defendants on the navigable 17th Street Canal resulted in closure of the waterway, essentially putting the Bucktown Fleet out of business.[45]

The London Avenue incidents, as well, disrupted maritime commerce in that the WORKS and ACTIONS affected virtually every dock, berth, and landing, and also displaced professionals working in the maritime industry (whether on the Canal or not).[46]   We ask the Court to take judicial notice of the fact that Mayor Nagin and Parish Council Presidents Broussard and Rodriguez issued orders that would not let residents return to the city due to defendants' negligent WORKS and ACTIONS.   Even this United States District Court, where admiralty cases are filed, paid for, and adjudicated, was closed for months.[47]   The Coast Guard closed and restricted navigation to the Port of New Orleans and the Port of South Louisiana.[48] Taking judicial notice only of the above facts, clearly the disruption requisite is met.

## 2.    THE SUBSTANTIAL RELATIONSHIP REQUISITE

For the second question in the maritime connection inquiry, a court must look to whether the general character of the activity (WORKS) giving rise to the incident shows a substantial relationship to traditional maritime activity.   In determining whether a tortfeasor's activity (WORKS) on navigable waters is so closely related to an activity traditionally subject to admiralty law that the reasons for applying admiralty rules would apply, this Court need only

---

[45] Declaration of Peter Gericka (Exh. A at 1-3) (the closure of the 17th Street Canal, clearly a navigable waterway of the United States, has decimated the Bucktown Fleet as well as other maritime commercial businesses along the Canal).

[46] Declaration of Arthur Sargent (Exh. B at 4-5).

[47] Order of September 4, 2005 (Chief Judge Berrigan) (closing the New Orleans offices of the United States District Court for the Eastern District of Louisiana until further notice and that all deadlines and delays in matters pending before the court were suspended until ordered otherwise; in addition, all prescriptive matters and other time-sensitive deadlines for new litigation were likewise suspended until further notice); *See also* Jones Walker, *Court Operations Update* (Oct. 7, 2005), Retrieved Feb. 1, 2007 from www.joneswalker.com/db30/cgi-bin/pubs/Court.pdf.

[48] Adams, Chris, "Closed New Orleans port creating problems," Miami *Herald*, Sept. 8, 2005. Retrieved Feb. 1, 2007, www.miami.com/mld/miamiherald/12585180.htm?template=contextModules/printhistory.jsp.

note that the navigation of vessels and the maritime construction projects of bridges and canals (dredging included) took place on the navigable waters of the 17th Street and London Avenue Canals and clearly fall within the requisite substantial relationship to traditional maritime activity. *Foremost*, 457 U.S. at 675; *Sisson, supra,* at 367.

The WORKS and ACTIONS alleged in Plaintiffs' Petition are substantially related to traditional maritime activities.  Barges and appurtenances and similar vessels have traditionally been used in excavation, dredging, bridge demolition, and bridge reconstruction WORKS. *Grubart*, 513 U.S. at 540.[49]

Michael Killgore (President of James' Industrial Group) in his Declaration at ¶8 and ¶9 indicates that commercial construction WORK was undertaken by James in the London Avenue Canal projects, a navigable waterway, with "vessels." That James was paid $4.21 million for the maritime construction WORK, in and of itself, establishes maritime commerce.[50]

James' first Declaration stated that the demolition and construction on the London Avenue WORKS were done using "land-based equipment."[51] The second Declaration states that the WORKS were done using vessels.[52]  At a minimum, the Declarations are seemingly contradictory.  Modjeski's reliance in citing *In re: Ingram Barge Company*, 435 F.Supp.2d 524

---

[49] *Shea v. Rev-Lyn Contracting Co.*, 868 F.2d 515, 518 (1st Cir. 1989) (bridge repair by crane-carrying barge); *Nelson v. United States*, 639 F.2d 469, 472 (9th Cir. 1980) (Kennedy, J.) (repair of wave suppressor from a barge); *In re New York Dock Co.*, 61 F.2d 777 (2nd Cir. 1932) (pile driving from crane-carrying barge in connection with the building of a dock); *In re P. Sanford Ross, Inc.*, 196 F. 921, 923-924 (E.D.N.Y. 1912) (pile driving from crane-carrying barge close to water's edge), *rev'd on other grounds*, 204 F. 248 (2nd Cir. 1913); cf. *In re: The V-14813*, 65 F.2d 789, 790 (5th Cir. 1933) ("There are many cases holding that a dredge, or a barge with a pile driver, employed on navigable waters, is subject to maritime jurisdiction"); *Lawrence v. Flatboat*, 84 F. 200 (S.D.Al. 1897) (pile driving from crane-carrying barge in connection with the erection of bulkheads), *aff'd sub nom. Southern Log Cart & Supply Co. v. Lawrence*, 86 F. 907 (5th Cir. 1898).
[50] Doc. 2354, ¶¶2 and 3; *See also* Exh. L at 99.
[51] Doc. 2554 at 4.
[52] Doc. 2489-2 at ¶¶8 and 9.

(2006) for lack of maritime jurisdiction is clearly misplaced. The instant case is not a suit against the United States and maritime jurisdiction and causes of action are well-plead.[53]

James and Modjeski are incorrect in relying on *In re: Ingram Barge Company*, as support that Plaintiffs' allegations are conclusory. Plaintiffs' allegations are specific and non-frivolous. Their failure to mention that *Ingram* is on appeal to the Fifth Circuit, *appeal docketed* (No. 06-30705) (Sept. 5, 2006) is obviously an inadvertent oversight. In any event, *Ingram* is distinguishable from the instant case because *Ingram* involved *a suit against the United States* and concerned different waterways and overtopping. The maritime allegations by counsel in *Ingram* were crafted quite differently. That is not the case here.

## C.    THE NAVIGABLE WATERS REQUISITE

The 17th Street and London Avenue Canals are navigable waters of the United States since all three Canals are connected to Lake Pontchartrain which is connected to the Gulf of Mexico, and therefore are subject to the *ebb and flow* of the Lake's tidal waters. (*tidal test*, i.e. the mean high water mark). This test still applies to the coastline and to the canals, in particular, the London Avenue canal where James used vessels in the canal waters as a means of transporting personnel and materials.[54]

Additional support for the Canals' navigability status is the 1986 Corps of Engineers final rule defining "navigable waters" of the United States ("Corps definition").[55] Moreover, the EPA has set out its own definition of "navigable waters" under the Clean Water Act ("CWA

---

[53] Doc. 2393 at 2, note 1; *See also* Exh. C.
[54] Declaration of Michael Killgore (Doc. 2484 at ¶¶7, 8, and 9); Exh. K at 100-101.
[55] 33 C.F.R § 328.3(a)(5) (2003), Exh. D at 29-30.

definition").[56]   These definitions incorporate and broaden the traditional "navigation in fact" waters test and include the *tidal test*.

Moreover, where there is a *surface hydraulic connection* (even if intermittent) whereby a canal is capable of carrying pollutants to or from other "waters of the United States" (Lake Pontchartrain), then the canal is a tributary to other "waters of the United States." *U.S. v. Edison*, 108 F.3d 1336, 1342 (11th Cir. 1997); *See also Ex parte Boyer*, 109 U.S. 629 (1884).

Because the Canals receive water from Lake Pontchartrain, and are affected by the *ebb and flow of the Lake's tide* and are capable of carrying pollutants to the Lake, those three canals are "tributaries to other waters of the United States," *viz* Lake Pontchartrain.   Under the Corps' definition, the CWA definition, and admiralty case law, the 17th Street, London Avenue, and Orleans Avenue Canals are "navigable waters" of the United States, thus satisfying the navigable waters requisite for admiralty jurisdiction.

James correctly states that the Second Circuit has advanced the notion of a present navigability test in *LeBlanc v. Cleveland*, 198 F.3d 353 (2nd Cir. 1999).   But James failed to mention *Complaint of Paradise Holdings, Inc.*, 795 F.2d 756, 761 (9th Cir. 1986), *cert. denied*, 479 U.S. 1008 (1986), where the Court held that the standard for assessing navigability of *tidal waters* is *ebb and flow*. (Emphasis added).   The *Paradise Holdings* court, in commenting on *Adams v. Montana Power Co.*, 528 F.2d 437 (9th Cir. 1975), said:

> "Because we concluded that none of the activities on the river constituted commerce, we held the action was not cognizable in admiralty. *This ruling extends only to inland bodies of water and was not intended to alter the rule pertaining to tidal waters.*"
>
> *Id.* at note 4. (emphasis added)

---

[56] 40 C.F.R § 230.3(s)(5) (2003), Exh. D at 32-33.

James' transporting workers and equipment from place to place in the canal on vessels fulfills the transportation function on navigable waters.

## V.   <u>SUMMARY</u>

Defendants' arguments on the applicability of 28 U.S.C. § 1442(a)(1), and what each consider the factual and legal underpinnings necessary for removal, are, to say the least unsupported by the facts and now premature in light of the *grant of certiorari* in *Watson, supra.*

In Bos Bros' recently filed Opposition Memoranda, it asserts that *Berthelot,* 2006 WL 1984661 (J. Duval) (E.D.La. June 1, 2006) establishes the law of the case, to-wit, that your Honor's previous rulings leave no doubt that "admiralty jurisdiction is non-existent."[57] Boh Bros is wrong!  Nowhere have we found such a ruling by this Court.  The gravamen of Plaintiffs' maritime jurisdiction, maritime, and non-maritime causes of action arise from activities in connection with the WORKS and ACTIONS of defendants in navigable waters using vessels and their appurtenances.

Counsel for Plaintiffs now disembark.

---

[57] *See* note 2, *supra.*

23

Respectfully Submitted,

for WILLIAM E. O'NEIL (BAR #10213)
THE O'NEIL GROUP, LLC
*Counsel for Plaintiffs.*
701 North Causeway Boulevard
Metairie, Louisiana 70001
Phone: (504) 833-4770
       (504) 813-3283
Fax:   (504) 831-5360
E-mail: weo@theoneilgroup.com

-and-

DON M. RICHARD, (BAR #11223)
ATTORNEY AT LAW
*Counsel for Plaintiffs.*
701 North Causeway Boulevard
Metairie, Louisiana 70001
Phone: (504) 834-9882
       (504) 813-3283
Fax:   (504) 831-5360
E-mail: drichard@dmrlaw.net

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing has been served on all counsel of record via U.S. Mail, e-mail, hand delivery, or facsimile this 8th day of February, 2007.

New Orleans, Louisiana this 8th day of February, 2007.

for WILLIAM E. O'NEIL

24