1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3


4
     IN RE: KATRINA CANAL BREACHES *   Civil Action No. 05-4182
5                                  *   Consolidated Litigation
                                   *
6    _____*   Section "K"
                                   *
7    PERTAINS TO:                  *   New Orleans, Louisiana
     RECORD DOCUMENT 2034          *
8                                  *   February 13, 2007
     * * * * * * * * * * * * * * * *
9

10
                         STATUS CONFERENCE
11          BEFORE THE HONORABLE STAN R. DUVAL JR.,
                  UNITED STATES DISTRICT JUDGE
12


13
     APPEARANCES:
14

15   For Plaintiffs:              Bruno & Bruno
                                   BY:  JOSEPH M. BRUNO, ESQ.
16                                 885 Baronne Street
                                   New Orleans, Louisiana 70113
17


18
     For Defendants:              Lugenbuhl, Wheaton, Pack, Rankin
19                                   & Hubbard
                                   BY:  RALPH S. HUBBARD III, ESQ.
20                                 601 Poydras Street, Suite 2775
                                   New Orleans, Louisiana 70130
21


22
     ALSO PRESENT (as per Sign-In Sheet):
23
     Jesse Wimberly
24   Joseph W. Rausch
     Dennis Phayer
25   George Trilly
     Marty McLeod

1   ALSO PRESENT (CONTINUED):

2   Shelby Dick
    Bill O'Niel
3   Dale Clary
    Kirk Aurandt
4   Rick Kessenich
    Tommy Anzelmo
5   Kyle Kirsch
    Ben L. Mayeaux
6   Darryl Becnel
    Walter C. Dumas
7   William Larzelere, Jr.
    Francis G. Weller
8   William H. Eckert
    Norman F. Hodkins
9   Howard Kaplan
    Jonathan M. Walsh
10  Kerrie T. Belsome
    Regina Wedig
11  John deGravelles
    C. Frank Holthans
12  A. J. Rebennack, Jr.
    Mike Dugan
13  Adrianne Bagzy
    David Persons
14  Jason J. Markey
    Larry G. Canada
15  David Moragas for Richard E. King
    William D. Treeby
16  Carelite Bertret
    Heather S. Lonian
17  Jerre Doak
    Charles F. Seewann, Jr.
18  Francis T. Barry, Jr.
    Herman Hoffman
19  David Walker
    Steve W. Rider
20  Robert I. Siegel
    Daniel W. Nelson
21  Martin Sadler
    Kevin Kamraczewski
22  Stephen H. Vogt
    Gary Russo
23  Carter Reid
    Tina L. Garmon
24  Seth Schmeeckle
    Simeon Kermioneque
25  LaDonna G. Wilson
    April Roberts

1    <u>ALSO PRESENT (CONTINUED)</u>:

2    Kevin Wetsan
     William R. Mustian, III
3    Danny Becnel
     Camilo K. Salas, III
4    Gordon Grant
     Philip Brooks, Jr.
5    Robert W. Knights.
     H. Minor Pipes, III
6    Brent A. Talbot
     Johnthan Mcult
7    Scott Winkelman
     John Ellison
8    Carl Hellmers
     Kimberly Diamond
9    Galen Brown
     Karen Milner
10   Benjamin R. Slater, III
     Wade Langlois
11   Paula Wellons
     Irma L. Netting
12   Samuel B. Gabb
     David Cannella
13   Wayne J. Lee
     Michael Keller
14   Phyllis Glazer
     Mat Gray
15   Kara Hadican
     Gerald Meunier
16   Daniel Becnel
     Kelly Bogart
17   Robin D. Smith
     Eric Hostetler
18   Sharon Shutler
     Steve W. Usdin
19   Edward R. Wicker, jr.
     Richard Cozad
20   Glenn B. Adams
     Andre J. Mouledoux
21   Billy Gaudet
     Darleen M. Jacobs
22   James A. Cobb, Jr.
     Patrick DeRouen
23   Rya Acomb
     Charles Chassaignac, IV
24   David E. Walker
     Stephen Bullock
25   Brent Barriere
     S. Jacob Bizady

1   ALSO PRESENT (CONTINUED):

2   Michael Riess
    Richard Feton
3   David S. Scalia
    Gary M. Zwain
4   Andy Weinstock
    Larry Duplass
5   Jason P. Foote
    Gordon P. Serou, Jr.
6   Wanda Edwards
    N. Frank Elliot, III
7   Derrick Whittington
    Terrence Brennan
8   Michael E. Holoway
    Wendy Hickok Robinson
9   Cari K. Dawson
    Jackie Brother
10  Nicholas J. Wehlen
    William C. Gambel
11  Christopher Jones
    Steve Judice
12  Sean Mount
    Revice Hanewood
13  Jay Lonero
    Maura Pelleteri
14  Amy Seltzer-Malish
    D. Blayne Honeycutt
15  Caprice Ieyoub
    Thomas M. Young
16  Brant Cacamo
    Matt Schultz
17  Allan Alario
    Will Grain
18  Joseph Messina
    Burt Carnahan
19  Dominic J. Gianna
    Edward J. Lilly
20  W. J. Wegmann, Jr.
    Stephanie Hotard
21  Robert J. Caluda
    Richard M. Martin, Jr.
22  Michael Code
    Thomas Buck
23  Paul Palermo
    Kirk Zapp
24  Christian Garbett
    Richard J. Tyler
25  Larry Dyess
    James Roy

1  ALSO PRESENT (CONTINUED):

2  John Etter
   Drew A. Ranier
3  Peter B. Sloss
   Keith Couture
4  Marshall Redmon
   Amy Sarin
5  David Leland
   Charlie Lanier
6  Marc Frischhertz
   Dominic F. Impastato, III
7  Nyka Scott
   James H. Roussel
8  Hugh P. Lambert
   James M. Garner
9  Justin I. Woods
   Dexter A. Gary
10 Calvin Clifford Fayard, Jr.

11

12

13 Court Audio Operator:        Cynthia Crawford

14

15 Transcriptionist:            Johnna Barron
                                c/o U.S. District Court
                                500 Poydras Street, Room C151
16                              New Orleans, Louisiana 70130

17

18

19

20

21

22

23

24

25

**PROCEEDINGS**

**(February 13, 2007)**

  **THE CLERK:**  All rise.

   **THE COURT:**  Good morning.  Well, first I want to apologize for our modest courtroom.  As you know, the federal government is under certain budget constraints, and we are not able to have a more expansive courtroom than we have here.  So I'm sorry some of you have to stand.

    First, before I hear from you, you're going to hear from me.  You know, some of you know the Court.  Some of you have been in this court.  Some of you know the reputation of this court; some of you may not.  Some of you who are counsel from outside this venue may not.  Some of your clients from outside of this venue may not.  But when this is all said and done, you will be, at least, the legal aspect of this court and the way this court runs, aware of it.  And I want to tell you right now:  We're going to run it, this court.

    I could ask you-all to vote today on each senate under the Case Management Order we're going to issue, but you don't have a vote.  I know you know the Federal Rules of Civil Procedure.  I know all of you are bright, accomplished lawyers. I'm sure you've read it and you understand that an Article III judge is charged with the responsibility of ultimately getting resolution, and that's exactly what I'm going to do.

    Let me just make a comment that we all know that

1  this event that precipitated -- that's a terrible verb -- this
2  incident occurred over a year and a half ago.  We have matters
3  already in appeal.  This process is, by its nature, unwieldy.
4  It's going to take some time, I understand.  And we want to be
5  fair.  You are entitled to due process but due process by my
6  likes and, ultimately, the Court of Appeals likes, perhaps the
7  Supreme Court's, but not by yours necessarily; although, I'm
8  interested in what you have to say.  The bottom line is --
9          By the way, make sure we have no cell phones on
10 because you will be asked to leave immediately.
11          So I just want to set the stage here.  I am not
12 under the illusion that any of you -- and this is certainly not
13 meant as a pejorative -- that any of you are here -- some of
14 you may be, but I doubt it -- many of you are here because of
15 your universal sense of justice.  You want universal justice
16 for all.  You represent clients.  Judge Wilkinson and I are
17 here for the purpose of achieving justice for your clients, the
18 litigants in this matter, in a reasonable fashion.
19          As I said, over a year and a half ago, this
20 occurred.  We've already got things in the Court of Appeal,
21 but at best, this won't be resolved -- unless everything is
22 ultimately dismissed, this won't be resolved for eight or nine
23 years, with the appellate process.  It won't be.
24          When President Kennedy made his speech about
25 sending a man to the moon, when we look at world time, it's

1   about 5 1/2 years.  It's a pretty amazing accomplishment.  It
2   was actually rocket science; this isn't.  When World War II
3   occurred, it's amazing what happened to our industrial complex.
4   We started making planes and ships and armor and other things
5   at an incredible pace.  We can do a lot when we have to.
6   Although, we won't be on that kind of pace, that is, the World
7   War II pace.  We are going to be more on the man-to-the-moon
8   pace.  And I'm going to set it after hearing from you, as I am
9   supposed to.

10          You've got no vote.  You've got no right to talk
11  to the Court except we've established a procedure to do that.
12  You can talk to the Court in hearings and motions, and I will
13  entertain them.  I won't always have oral argument, but I will
14  entertain them and look at them carefully.  You have that right
15  at all times, and the Court will take no umbrage at that no
16  matter what it is.  "Court, you're wrong."  Of course, the
17  Court can be wrong.  "Court, we don't like this."  Of course,
18  I'll hear it.  That's where you have your voice, so you have a
19  record for appeal.

20          Also, you may be able to persuade me.  The art
21  of -- the primary art of being a good lawyer is the art of
22  persuasion.  Right now, you've got to persuade me now about
23  things.  I want you to think about how intelligently, perhaps,
24  some of this stuff has been presented to me and how persuasive
25  it might be to any judge.  So I want to set that stage right

1    from the start.  Understand this is my democracy.  It can't be
2    or we'd have complete anarchy.
3              The purpose of this meeting, of course, is not
4    for you to hear this lecture but to find out where we are in
5    other things, but I think it's time for me to deliver this
6    lecture for you to get to know me a little bit and understand
7    certain things.
8              I want to be fair, but I want to be fair to
9    everyone, including the judicial system itself.  In my mind,
10   discovery has been egregiously abused in this country for many,
11   many years.  I attended many depositions as a lawyer, and if I
12   were to take all those depositions and redact them to the
13   quintessence of what was important, I've probably wasted a
14   couple or three, four, years of my life in depositions; as you
15   will and as all of you have done and you will continue to do.
16             Federal rules do set limits.  We can opt out of
17   those.  In this case, obviously, those limits, on many
18   occasions, won't be realistic.  But there's a reason that
19   Congress did that.  It wasn't to protect you; it was to protect
20   your clients and the orderly administration of the system of
21   justice.
22             Okay.  The major immunity and coverage issues --
23   major -- have been addressed.  We have other motions that we
24   have under advisement, and we are going to have another meeting
25   to schedule when we try to dispose of those motions.  We know

 1   that the 1292 request has been granted as we all hoped it
 2   would, and we all hope we will get our resolution of that in a
 3   timely manner, but there is no such guaranty.  It would
 4   certainly be beneficial to all of us if the Court of Appeal
 5   acts with alacrity, specifically to that of the water-damage
 6   exclusion.
 7              We know that there's a Case Management Order
 8   that's forthcoming, and I might say nobody has seen it but my
 9   staff and Judge Wilkinson's staff.  When you see it, it's going
10   to be it.  Then, what you don't like about it, you can attempt
11   to amend.  But the purpose of having liaison counsel in this
12   structure is so that we can let liaison counsel know here's
13   what we're contemplating.  They can then let us know some of
14   the problems they have, and they can report it back to all of
15   you.  We certainly can't have a meeting -- and everybody wants
16   to attend.  Everybody -- well, let me get this straight,
17   everybody's not attending and there's not going to be
18   transcripts of that, of those meetings, period.  And if that
19   gets too big an issue, we just won't have meetings and I'm just
20   going to issue edicts.  It will be simple.  I'll issue my own
21   Case Management Order.  To me, it would be a lot easier than to
22   have to listen to all of you, but that's not something I would
23   want.  But you understand it's what a federal judge has the
24   right to do.  It's me who determines when this goes to trial.
25   It's me who determines what the Case Management Order says.

1    It's you who try to influence me or persuade me to do other
2    things.  Right now, through liaison counsel, we're not going to
3    have a town hall meeting on all this stuff.  Any of you who
4    have been in complex litigation ought to know better.
5                    So I take some umbrage at a couple of the things
6    that I received because I don't think they're persuasive, I
7    don't think they're well thought out.  And I'm going to want a
8    copy of the transcript of this hearing sent to your clients and
9    your outside counsel.  Persuasion.  Persuasion is -- not that
10   some of these -- some of the things that I got in your letters
11   were very helpful, and we incorporated them.  We want that.
12   We're willing to look at it.  Some of the things I got showed
13   of paranoia, of whining, missed the big picture, and were not
14   persuasive.
15                   All right.  You know, there's going to be
16   discovery regardless of what the Fifth Circuit does on the
17   motion to stay.  There's got to be discovery on the levee
18   breaches.  There's going to be discovery referencing MRGO.
19   There is going to be discovery relating to insurance issues,
20   assuming there is a stay granted, other than the water-damage
21   exclusion.  And what about adjusting issues?  And I know there
22   are CMOs being issued in other courts.
23                   And speaking of that, one of the meetings that
24   drew some ire was a meeting that was hastily called, and
25   Mr. Hubbard wasn't able to attend.  Mr. Schmeeckle attended and

1    Mr. Bruno attended with Alan Carrot (sp).  The only purpose of

2    that meeting, as I understood it, having been there, was that,

3    "Hey, Judge Feldman is going to be issuing a case management

4    order referencing insurance protocol.  Judge, you may want to

5    look at that and see if this court and other divisions of this

6    court might want to utilize that order in some aspect."

7              That was it.  That was the meeting.  And I found

8    it kind of an apple and an orange because some of it really

9    doesn't tie into my Katrina umbrella cases, but -- well, I do

10    want to look at Judge Feldman's order.  I'm glad I know that

11    it's out there, and I will certainly look at it, because he's

12    worked very hard on it.  And that's all that was, just to let

13    us know it was coming down the pike and then knowing that we

14    were working on a Case Management Order as well.  Frankly, that

15    was about it.

16          Again, it's a privilege to speak to the Court.

17    Privilege can be cut off.  I reviewed the letters that were

18    filed in conjunction with the motion for this hearing, which we

19    will turn this into anything else you want to talk about, and

20    some of the suggestions were helpful.

21          Hopefully, you trust your liaison counsel to report

22    back to you so that you can then voice any objections.  But

23    that's the only way that's going to really work.  You may

24    consider down the line of having -- we may, because right now

25    I'm not in the frame of mind to consider much in this regard --

1    we may consider expanding the number of liaison counsel that
2    attend these things.  That's down the line.
3          And you will see in the CMO that some changes have
4    been made to reflect some of your concerns.  And, you know, let
5    me say, I don't expect the plaintiffs or the defendants to love
6    every aspect of the CMO.  You're not supposed to.  It's not
7    your CMO; it's the Court's.
8          Okay.  The CMO is not going to come out as quickly as
9    we thought because we are looking -- because we have time -- we
10   have other things to do, just like all of you do, and it will
11   probably be by the end of February, the beginning of March,
12   when it comes out.  It's going to come out, and it's going to
13   be the Court's CMO.
14         As I have told liaison counsel, we have not seen the
15   CMO.  Because I'm not having a vote on this, you understand?  I
16   have input but no vote.  As it's not written on stone tablet
17   with lightning, it can be changed.  It can be modified if you
18   are persuasive; at least, to me.  Hopefully, I will listen to
19   you.  If you don't like parts of it, file something.  I'm not
20   going to take any umbrage at anything you're doing for your
21   client.  I think the integrity of the court proceedings, I will
22   take umbrage there if I feel that there is an underlying
23   undercurrent about that.  That, I can tell you.
24         The transfer of cases -- just a note, the transfer of
25   case that are -- if we still have cases transferring in, we're

1    going to put something in that those probably will not stand

2    and will be the subject of a new preliminary pretrial

3    conference unless otherwise not notified by the Court.

4            And, of course, some of you are individual persons

5    who have been shed to this sort of multiheaded hydra because

6    you made the water-damage exclusion claim, and that's why

7    you're here, and we're going to try to make some steps to

8    address your concerns as well because you're not in some of the

9    class actions or the other aspects of it.

10           Well, one of the problems with this, as we all claim

11   to know is that, even though we have a connective theme that is

12   the levee breach that gets us peer, some of these things are

13   quite different, and, believe me, I well understand that.  And

14   at some point -- at some point -- we may send you back to other

15   places for trial and other things, but right now, for

16   case-management purposes, we are trying to handle it all at

17   this point.  And we're going to.

18           Okay.  Just to let you know, on settling the

19   severance issue, the executive committee met, and all that

20   court hasn't acted yet, but a lot of these cases, the vast

21   majority of cases we've got, are subject to severance issues.

22   What's going to happen there is, where there's not agreement,

23   as we have not had in some of our cases, we're going to sever

24   those that are misjoined.  They will have separate numbers,

25   they will have to file an amended complaint, but the good news

```
 1   is -- and you will be assigned a separate number -- you will
 2   not have to pay a filing fee.  So that is some --
 3               MR. BRUNO:  Thank you, Judge.
 4               THE COURT:  Well, you can thank Steve in the clerk's
 5   office who figured out a way to do this.  That's where that
 6   comes from.
 7               Okay.  Now, understand this:  When the Case
 8   Management Order comes out, there's not going to be a specific
 9   limit like we had talked about with liaison counsel on
10   witnesses, et cetera.  But understand that I am going to.  I
11   will limit the number of experts.  I will limit -- at the
12   appropriate time.  I agree that it's premature now.  I'm going
13   to limit the number of experts.  I'm going to limit the number
14   of witnesses on each category.  I may even appoint court
15   experts.  But it's not going to be a 90-expert or a 60 -- it
16   won't be.  It's not going to be.  Understand that's not going
17   to happen.  So you need to be thinking creative instead of
18   finding every way to make this monster more of a monster than
19   it is.  I'm going to make the monster, I'm going to make it one
20   that's manageable.  That's my job.  I have to do it.  It's your
21   job to protect your clients as best you can.  I know all of you
22   are doing that.
23               So, with that, it's your turn.  Liaison counsel
24   have any -- Mr. Hubbard?  Mr. Bruno?
25               Oh, let me tell you one thing.  I'd much rather
```

1    be the judge, I must say, than the liaison counsel.  They have

2    done a great job.  They have represented your interests well,

3    at least by my likes and, I think, Judge Wilkinson's likes.

4    They have comport themselves quite well, and they've worked

5    very hard and have been very forceful and, more importantly,

6    persuasive in their discussions with the Court.

7            **MR. HUBBARD:**  May it please the Court.  Ralph

8    Hubbard, Defendants' liaison counsel.  I'm going to very brief,

9    Judge.  I think that with respect to the Case Management Order,

10   the defendants in this case submitted 60- or 70-page papers to

11   you, and I know that you've read them.

12           **THE COURT:**  Yes, sir.

13           **MR. HUBBARD:**  And I personally don't have anything

14   more to say about that; although others might, I suppose, if

15   the Court's interested in hearing that.

16               I would like to take advantage of this, if I

17   could, for kind of a housekeeping measure since we've got

18   everybody assembled.  I think there may be a number of people

19   that we don't have on the defendants' list, on our e-mail list,

20   so that we can communicate with them.

21           **THE COURT:**  How do you suggest we do that?  I think

22   that's a good idea.

23           **MR. HUBBARD:**  Well, there's an order you issued

24   that's on the court's website at our request sometime ago.

25   It's either Case Management Order No. 3 or the minute entry Of

1    what -- of November 29.  In that -- and please pay attention to

2    this:  Don't send us an e-mail.  We get 700 e-mails a day.  We

3    want people to send us their information:  Your name, who you

4    represent, address, and your e-mail address; and we'll put you

5    into the e-mail system that way.  But send it to us by fax,

6    please, and send it to Seth Schmeeckle's attention,

7    S-C-H-M-E-E-C-K-L-E, not to me, please.  And that fax number is

8    (504)310-9195.  (504)310-9195.

9                 We desperately want to get everybody on the list

10   so that everybody can get in the game.  And please identify

11   yourself as to whether -- that you're not only a defendant but

12   as to who you represent, whether you're in for an insurer or a

13   railroad or whatever, so that we can create some subgroups

14   there in order to communicate.  Thank you.

15                Additionally, Judge, I guess there's just one

16   other thing that I thought that's in line with the Case

17   Management Order.  Since you issued your order at the end of

18   November with respect to the water-damage exclusion --

19           **THE COURT:**  Yes, sir.

20           **MR. HUBBARD:**  -- the insurers have been working to

21   find ways to make the case more manageable for us and for the

22   Court.  To that end, we immediately interviewed the best

23   construction lawyers, realizing that it seems like the key

24   element of what's ahead of us now is what happened with the

25   levees, perhaps more so than insurance coverage questions.  So

1    we interviewed the best construction lawyers in America, and we

2    have retained Mr. Carter Reid of the Watt Tieder firm in

3    McLean, Virginia, to represent a consortium of insurers.

4                We're not through determining who's going to

5    participate in the retention of Mr. Reid, which companies.

6    We're hoping that every one of them will because we believe

7    that, jointly, it will make it more affordable for everybody;

8    it will make it more efficient for the Court; and it will

9    prevent any of these companies who won't have the right kind of

10   counsel from being at risk by not having a proper defense.

11               So, if the Court would, Mr. Reid has not yet

12   appeared before you.  I wondered if we could take just a minute

13   to let me introduce him to the Court and let him say a word or

14   two.

15               **THE COURT:**  Absolutely, sir.

16               **MR. HUBBARD:**  Carter?

17               **MR. REID:**  Morning, Your Honor.  Carter Reid.  I'm

18   humbled and flattered by Mr. Hubbard's reference to me.  I am

19   very excited.  My firm's very excited to be involved.  We do

20   only construction-related architectural engineering-related

21   issues.  We're working very hard at this moment to be sure we

22   understand all the relevant issues and certainly develop an

23   appreciation for the dynamic here that the Court faces.  We are

24   devoted to that task, and in that regard, we're confident that

25   we can help to try to streamline or, at least, keep the issues

1   focused on those that are relevant so that we don't waste the

2   Court's time with a bunch of issues related to at least those

3   construction/architect/engineering-related issues.

4           We are aware of the need, obviously, and look

5   forward to working with the other defendants and coordinating

6   with the plaintiffs to see to it that we can get that done.  In

7   that regard, I've already had a couple of discussions this

8   morning about working out things like the document repository,

9   things of that nature.  So we certainly hope that we contribute

10  to making the effort worthwhile and focused.  And I look

11  forward to working with everyone, including Your Honor.

12          **THE COURT:**  Well, thank you, sir.  We appreciate

13  that.  Any help is welcome.

14          **MR. BRUNO:**  Good morning, Your Honor.  We're

15  certainly pleased to meet Mr. Reid.  It's interesting

16  because --

17          **COURT RECORDER:**  Excuse me.  State your name for the

18  record.  I know who you are, but you need to state your name

19  for the record.

20          **MR. BRUNO:**  I don't know who I am.  I apologize.  My

21  name is --

22          **THE COURT:**  Now we know who really runs this

23  courtroom.

24          **MR. BRUNO:**  You have to forgive me.  That tornado

25  passed within a couple blocks of the house, and I thought the

1    aliens were coming.

2              My name is Joseph Bruno.  And, Judge, let me say

3    again before everybody in this courtroom I am so deeply honored

4    to have this position and I hope that I comport myself in a way

5    that will make you proud.

6              We happened to meet Mr. Reid.  We had a little

7    bit of a laugh.  I got a letter yesterday from one of the law

8    firms that wasn't selected by Mr. Hubbard and asking if I

9    wanted to hire them.  I don't know, guys, if that's a good idea

10   or not, but I just thought that was interesting.

11             But housekeeping as well.  The plaintiff lawyers

12   who are in insurance cases, if I may make this request to the

13   plaintiff lawyers in insurance cases that have come into this

14   courtroom, would you please send to Mr. Calvin Fayard, not me,

15   the name of your case, the name of the insurance companies that

16   you have sued, and give us some indication of the number of

17   plaintiffs that you represent.  We're trying just to get a

18   handle on how many cases there are out there.  Please know

19   that, at least in our proposals to the Court, we are very, very

20   mindful of the fact that you want to get the adjusting

21   component of your claims resolved, and we've made some

22   suggestions to the Court which we hope will allow that to

23   proceed even while the Chehardy issues are on appeal.  Thank

24   you, Judge.

25             **THE COURT:**  Can you give them Mr. Fayard's -- the

1   address where they --

2           **MR. BRUNO:**  Yeah, Calvin, why don't you tell us how

3   best to contact you.  Calvin Fayard -- I'm sorry.  Calvin

4   Fayard will be primarily handling the insurance umbrella within

5   the larger umbrella.

6           **MR. FAYARD:**  Calvin Fayard, Your Honor.  The email

7   address is calvinfayard@faywardlaw.com.  Even I can remember

8   that.  The phone number is (225)664-4193.

9           **THE COURT:**  And do you mind being apprized via

10  e-mail?

11          **MR. FAYARD:**  That would be perfect, Judge.  Thank

12  you.

13          **THE COURT:**  Thank you.  By the way, if anybody has

14  any suggestions about, as this thing grows, because I don't

15  want -- if there's a way to -- I know Judge Fallon has done

16  some things in the Vioxx to try to accommodate everybody.  You

17  know, this is my courtroom and this is all I have, but I can

18  make maybe other arrangements, because we'll have other

19  meetings like this as we go on.  If anybody has any creative

20  suggestions about how we can accommodate, I'm willing to

21  listen.

22          **MR. MEUNIER:**  Morning, Your Honor.  Jerry Menieur.

23  In the Vioxx case, Judge Fallon sets up a desk outside the door

24  to the courtroom, and there's a table there with at least two

25  staff people, and there are numerous sign-in sheets.  As

 1   counsel come in, they sign outside.  That avoids the snaking

 2   line into the courtroom.

 3         **THE COURT:**  And that's certainly -- one good

 4   suggestion is that --

 5         **MR. MEUNIER:**  And then, frankly, you begin --

 6   whenever you begin, and if there are people still signing up,

 7   it's being done outside, and they come in after that.

 8         **THE COURT:**  Right.  Thank you.

 9         **MR. BECNEL:**  Judge --

10         **THE COURT:**  By the way, anyone is welcome to speak at

11   this kind of hearing, so...

12         **MR. BECNEL:**  Yesterday someone sent me, and I didn't

13   know this -- Daniel Becnel, part of the management committee --

14   someone sent me an *Academy of Court-Appointed Masters*,

15   appointing special masters and other judicial adjuncts, a

16   handbook for judges.  I thought it was one of the most

17   interesting things putting ethics and professionalism and

18   interrelationships between the courts and magistrates and

19   special masters and court-appointed masters, with checklists

20   and incredible information, cited cases, comparing state and

21   federal rules.  I just thought -- this is my only copy.  I

22   would give it to the Court --

23         **THE COURT:**  We already have a copy, Mr. Becnel.

24         **MR. BECNEL:**  Okay.  Well, I just thought people maybe

25   ought to read it.  It might be helpful.

 1          **THE COURT:**  Thank you.

 2          **MR. O'NEIL:**  May it please the Court.  Good morning,

 3   Your Honor.  My name is Bill O'Neil, and I represent the

 4   Pontchartrain Baptist Church plaintiffs in this case.

 5          **THE COURT:**  Yes.

 6          **MR. O'NEIL:**  I am here simply to bring to the Court's

 7   attention another case.  I brought to the Court's attention the

 8   <u>Watson</u> case that's before the United States Supreme Court on

 9   28 USC 1422(a)1, which is the military contractor defense.  And

10   I wanted to bring to the Court's attention that on January 10,

11   the Third Circuit Court of Appeals in Louisiana, in a case

12   called *Curtis v. Branton Industries, Inc.*, the cite is 2006

13   Westlaw, 3093239, issued a ruling in connection with the

14   Louisiana statutes 92271 and 92272 and their retroactivity, and

15   I thought the Court might be interested in that.

16          **THE COURT:**  Thank you, sir.

17          **MR. O'NEIL:**  Thank you, Your Honor.

18          **MR. ROUSSEL:**  Your Honor?

19          **THE COURT:**  Yes, sir.

20          **MR. ROUSSEL:**  Good morning, Your Honor.  I'm James

21   Roussel and am the representative of the drudging interests to

22   the defense liaison committee.

23                We have a question, Judge.  We have two issues

24   that we would like to bring up by motion to the Court.  One is

25   15 entities have been sued in the dredging suits which don't

1  exist or no longer exist or were trade names.  They're just
2  names that somebody pulled out of the hat.
3              And the second is is that recently a suit has
4  been filed against the limitation plaintiffs in violation of
5  the rules, and we wish to move to have that case dismissed.
6  Should we proceed through Mr. Public to do that, or can we just
7  file the motion straightaway?
8         THE COURT:  You can file your motions on your own
9  there.
10        MR. ROUSSEL:  Good.  Thank you, very much.
11        THE COURT:  And, of course, I'm quite aware that I
12  have motions in that case pending.  Frankly, I made some
13  decisions.  I just haven't had time to articulate or have --
14  get them done, but we're working on them.
15        MR. ROUSSEL:  Judge, we understand that.  You've got
16  a lot of your plate, so we're not --
17        THE COURT:  We're a little slower than we like to be.
18        MR. ROUSSEL:  We think you're doing pretty well.
19  Thank you.
20        THE COURT:  We're trying.  We're really concerned
21  about the -- you know, some of the individual persons, and
22  we're going to do our best.  As I said before, when this Case
23  Management Order comes up, all of you have a right to file --
24  you probably ought to coordinate it through liaison counsel,
25  but if they don't agree, you have a right to file anything you

1   want in this court whether liaison counsel agrees with it or

2   not.  You ought to get it first.  But nothing precludes you,

3   ultimately, from filing a motion to change it or to get them to

4   try to persuade us to change it.

5          MR. BRUNO:  Once again, Joseph Bruno, plaintiff

6   liaison counsel.  Judge, the plaintiffs have agreed to work

7   together and to combine what little brain power we have

8   available to us, and we really would ask that anybody who does

9   contemplate a motion, that they would, I believe, be best

10  served if they would submit it to our liaison counsel so that

11  we can, first of all, make certain that somebody else is not

12  contemplating the same exact motion.  One of the things that

13  we've had a problem with, as you know, even with the

14  Chehardy --

15         THE COURT:  Well, I do have something like that in

16  the case management order that will be coming out.

17         MR. BRUNO:  Oh, okay.

18         THE COURT:  The reason I mentioned it to Mr. Roussel,

19  he's in a category that's --

20         MR. BRUNO:  By himself.

21         THE COURT:  -- sui generis.  Yes, sir.

22         MR. BRUNO:  I understand that, and I certainly agree

23  with Jimmy's feeling on that subject.  But when it comes to

24  levee issues, you know, having different lawyers filing

25  different motions on the same subject with different

1   allegations and different claims, it's problematic for us.

2          THE COURT:  I couldn't agree more because it is

3   strain on the court.

4          MR. BRUNO:  Right.  And the same thing with the

5   insurance stuff.  So we are ready, willing, and able to

6   coordinate and, frankly, bring the best of the best to each of

7   these issues.

8          THE COURT:  I think before we leave today, also, we

9   got to set another meeting, an en mas meeting, and I'll try to

10  make better arrangements if I can.

11          But before we go on, is the -- is Mr. Robin

12  Smith here?

13          MR. SMITH:  Here, Your Honor.

14          THE COURT:  Is there a representative of the

15  Robertson plaintiffs here?

16          MR. SMITH:  Yes, Your Honor.  Jim Roy.

17          THE COURT:  Oh, Mr. Roy.

18          MR. ROY:  Here, Your Honor.

19          THE COURT:  Would y'all mind stepping up?  I want to

20  talk to you a bit, and I'd like your input.

21          I'm thinking about doing a separate Case

22  Management Order on -- and, by the way, I have looked at the

23  government's request about liaison counsel in this area and am

24  considering that as well.  But I'm thinking about a separate

25  case management order on Robertson, and here's why -- I'm just

1    thinking about it -- is that it's six plaintiffs and it's a

2    little tighter.  The government -- both of you may disagree,

3    and the track may be something far different than what I'm

4    thinking about that ultimately happens.  But what I'd like to

5    do is have each of you meet under Rule 26(f) and come up with a

6    plan on when you think a discovery plan and a trial plan for

7    Robinson.

8                    Of course, I know that the government's going to

9    be -- I'm guessing that the government's going to -- after

10   certain discovery, may be filing another motion.  I understand

11   all of that, but -- and if you can report to me -- when do you

12   think you can give me a report to me where your agreements are

13   and your differences are?  I don't want to push you on that.

14   What will be a reasonable time?

15            MR. ROY:  Your Honor, Jim Roy for the plaintiff's

16   side of the equation.  We have submitted through one of our

17   co-counsel, Pierce O'Donnell, a proposed scheduling order

18   pleading to an expedited trial.  We have submitted that to the

19   government.  I have not spoken directly to the government, but

20   I understand they are not in agreement with it.  What I would

21   suggest, with your permission, if this is what you seek, is

22   that we prepare a single document --

23            THE COURT:  With disagreements?

24            MR. ROY:  Yes.  -- that lays out what we proposed

25   where the government can agree --

1      **THE COURT:**  The government may say four years; you
2  may say -- who knows.  I would like to see that because it
3  would help me keep that in context where I can look at it in a
4  balanced way.

5      Would the government have any objection?

6      **MR. SMITH:**  No, Your Honor, we have no objection to
7  doing that.  We received the proposed plan from the plaintiffs
8  yesterday, and as far as I know, no one from our office has
9  communicated with them about it.  So I don't know what
10 disagreements he's referring to, but I think he means
11 anticipated disagreements.

12     **THE COURT:**  Well, there may be anticipatory
13 disagreements.  I understand that.  So if you can do that by --
14 is February 28, is that enough time?

15     **MR. SMITH:**  I think -- I think so, Your Honor.

16     **THE COURT:**  Plaintiffs, if you need an extension, let
17 me know.  Okay.  We'll put that in writing.

18     **MR. ROY:**  Your Honor, as soon as we know the
19 specifics of the objections to the proposal we've made, we'll
20 be able to confer as early as this afternoon at lunch to be
21 able to get something together for you in a unified document
22 with the proposal and objections --

23     **THE COURT:**  By February 28.  And you two can decide
24 when you need meet.  Hold on one second.

25     **THE MAGISTRATE:**  We want a traditional Rule 26(f)

 1  report from just you two, and nobody else is involved in it.

 2  Just you two, no letter writers, in connection with this, the

 3  26(f) report that you two filed.

 4          **THE COURT:**  I think you two are the only involved

 5  parties.  Although there may be peripheral parties, now,

 6  there's no question.

 7          **MR. ROY:**  We can do that.

 8          **THE COURT:**  All right.  Thank you very much.  I

 9  appreciate it.

10          Okay.  Judge Wilkinson, you have anything?

11  Anyone else have anything?

12          We ought to set another meeting date -- I know

13  we are setting out motion scheduling and other things.  Any of

14  you have a suggestion for a meeting date?  Is April too long?

15  By that time, we will have resolved some of the other motions,

16  you will have time to digest the Case Management Order, and you

17  can come in and tell us how great it is, but I don't anticipate

18  that, of course.  It's hard to pick a date with this many

19  people.

20          **MR. BRUNO:**  I have just to ask a question, Judge,

21  because I have received many phone calls, and again, primarily

22  from plaintiff lawyers with the Chehardy/adjusting claims.

23          **THE COURT:**  Right.

24          **MR. BRUNO:**  Ask you to clarify whether these will be

25  mandatory meetings in the future or whether or not the

1    adjusting folks --
2            **THE COURT:**  I just think mandatory for all liaison
3    counsel and sub-liaison counsel.  But other than that, unless
4    somebody can give me a good reason, I don't see why, why it
5    should be mandatory.
6            **MR. BRUNO:**  Okay.
7            **THE COURT:**  I just don't.
8            **MR. BRUNO:**  Well, I think in particular the
9    adjusting -- the folks who have insurance claims --
10           **THE COURT:**  Yes.  I don't want to unduly burden
11   anybody.
12           **MR. BRUNO:**  Sure.
13           **THE COURT:**  So you are welcome to attend, but the
14   nucleus of the committees is who I really want.  And then
15   anybody would have a right to speak.
16           **MR. BRUNO:**  Okay.
17           **THE COURT:**  Anything else?  Well, with -- hold on.
18   Judge Wilkinson has one statement.
19           **THE MAGISTRATE:**  There are some of you who are here
20   in connection with the St. Rita Nursing Home cases.  As we
21   presently contemplate, the St. Rita Nursing Home cases are not
22   going to be the subject of the Case Management Order that comes
23   out shortly.
24           I'm in touch with Judge Foil, who's the state
25   court judge in charge of the St. Rita cases in St. Bernard.  He

1  has a status conference set up for March 1 in Chalmette at

2  10:00 a.m.  Of course, he can only order those who are in cases

3  that are still in St. Bernard Parish to attend that.  But I

4  don't think he'd have an objection to those of you whose cases

5  have been removed from attending.  You can contact his office

6  if you have a question about that, if you want to attend.  I'm

7  going to attend the St. Rita's meeting in Chalmette on

8  March 1st, and we may have some joint court topics to discuss

9  at that time.

10            So those of you whose cases have been removed to

11  this court, you may want to contact Judge Foil's office to make

12  sure it's okay for you-all to attend.  I can't imagine that

13  it's not.  It's at 10:00 on March 1 in the St. Bernard Parish

14  Courthouse.

15         **THE COURT:**  I want to thank you very much for

16  attending.  Please forgive me if I was overly didactic, and

17  we'll see you later.

18                           **CERTIFICATE**

19            I certify that the foregoing is a correct transcript

20  to the best of my ability and understanding from the electronic

21  sound recording of the proceeding in the above-entitled and

22  numbered matter.

23  _____          _____

   Johnna B. Barron                         Date
24  Transcriptionist

25