

# Homeowners Policy Booklet

# from Travelers Property Casualty

HO-4 HOMEOWNERS 4 - CONTENTS BROAD FORM

# YOUR HOMEOWNERS POLICY QUICK REFERENCE

**DECLARATIONS PAGE**
   Your Name
   Location of Your Residence
   Policy Period
   Coverages
   Amounts of Insurance
   Deductible Amounts

| | | Beginning On Page |
|---|---|---|
| | AGREEMENT | 1 |
| | DEFINITIONS | 1 |
| **SECTION I PROPERTY COVERAGES** | COVERAGES | 2 |
| |    Coverage C - Personal Property | 2 |
| |    Coverage D - Loss of Use | 3 |
| |    Additional Coverages | 3 |
| | PERILS INSURED AGAINST | 5 |
| | EXCLUSIONS | 6 |
| | CONDITIONS | 7 |
| |    Your Duties After Loss | 7 |
| |    Loss Settlement | 8 |
| **SECTION II LIABILITY COVERAGES** | COVERAGES | 9 |
| |    Coverage E - Personal Liability | 9 |
| |    Coverage F - Medical Payments to Others | 9 |
| | EXCLUSIONS | 9 |
| | ADDITIONAL COVERAGES | 12 |
| | CONDITIONS | 13 |
| |    Limit of Liability | 13 |
| |    Duties After Loss | 13 |
| **SECTION I and SECTION II CONDITIONS** | CONDITIONS | 14 |
| |    Policy Period | 14 |
| |    Cancellation | 14 |
| |    Nonrenewal | 14 |

HO-4  (04-91)

# Homeowners 4 Contents Broad Form

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:

   a. The one family dwelling, other structures and grounds; or

   b. That part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

Case 2:05-cv-04182-SRD-JCW   Document 3215-3   Filed 02/22/07   Page 4 of 18

## SECTION I - PROPERTY COVERAGES

### COVERAGE C - PERSONAL PROPERTY

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";
2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is to total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.
2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.
3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.
4. $1000 on trailers not used with watercraft.
5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.
6. $2000 for loss by theft of firearms.
7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.
8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.
9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.
10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media;
    for use with any electronic apparatus.
11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:
    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;
    b. Is away from the "residence premises"; and
    c. Is used at any time or in any manner for any "business" purpose.
    Electronic apparatus includes:
    a. Accessories and antennas; or
    b. Tapes, wires, records, discs or other media;
    for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;
2. Animals, birds or fish;
3. Motor vehicles or all other motorized land conveyances. This includes:
    a. Their equipment and accessories; or
    b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:
        (1) Accessories or antennas; or
        (2) Tapes, wires, records, discs or other media;
        for use with any electronic apparatus.

The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured";

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

a. Books of account, drawings or other paper records; or

b. Electronic data processing tapes, wires, records, discs or other software media.

However, we do cover the cost of blank recording or storage media and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D - LOSS OF USE**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property, makes the "residence premises" not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below:

    a. **Additional Living Expense**, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

    b. **Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

    Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

    **Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

    Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

    The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

    We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

    a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

    b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

    This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

    We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

    a. Your tree(s) felled by the peril of Windstorm or Hail;

    b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

    c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

    provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   a. Does not increase the limit of liability that applies to the covered property;

   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION 1 - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

   We will pay up to 10% of the limit of liability that applies to Coverage C for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $500 for:

   a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

   We do not cover use of a credit card or fund transfer card:

   a. By a resident of your household;

   b. By a person who has been entrusted with either type of card; or

   c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

   All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

   We do not cover loss arising out of "business" use or dishonesty of an "insured."

   This coverage is additional insurance. No deductible applies to this coverage.

   Defense:

   a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

   b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

   c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage C - Personal Property, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II - CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

   a. Perils Insured Against in Coverage C - Personal Property. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

   b. Hidden decay;

   c. Hidden insect or vermin damage;

   d. Weight of contents, equipment, animals or people;

   e. Weight of rain which collects on a roof; or

   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**

   We cover:

   a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window and covered as Building Additions and Alterations; and

   b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

   This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.

   Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

   This coverage does not increase the limit of liability that applies to the damaged property.

10. **Building Additions and Alterations.** We cover under Coverage C the building improvements or installations, made or acquired at your expense, to that part of the "residence premises" used exclusively by you. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage C.

    This coverage is additional insurance.

## SECTION I - PERILS INSURED AGAINST

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

   This peril does not include loss to property on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immedi-

ately before the loss. A dwelling being constructed is not considered vacant.

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. Committed by an "insured";

   b. In or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

   c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

   This peril does not include loss caused by theft that occurs off the "residence premises" of:

   a. Property while at any other residence owned by, rented to or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

   b. Watercraft and their furnishings, equipment and outboard engines or motors; or

   c. Trailers and campers.

10. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    This peril does not include loss:

    a. To the system or appliance from which the water or steam escaped;

    b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

    c. On the "residence premises" caused by accidental discharge or overflow which occurs away from the building where the "residence premises" is located.

    In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system or an appliance for heating water.

    This peril does not include loss caused by or resulting from freezing except as provided in the peril of freezing below.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

    This peril does not include loss on the "residence premises" while unoccupied, unless you have used reasonable care to:

    a. Maintain heat in the building; or

    b. Shut off the water supply and drain the system and appliances of water. 15.

    Sudden and accidental damage from artificially generated electrical current.

    This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I - EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy.

2. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

   (a) Fire;

   (b) Explosion; or

(c) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

3. **Water Damage,** meaning:

   (a) Flood, surface water, waves, tidal water, overflow of a body of water or spray from any of these, whether or not driven by wind;

   (b) Water which backs up through sewers or drains or which overflows from a sump; or

   (c) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

   Direct loss by fire, explosion or theft resulting from water damage is covered.

4. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

5. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War,** including the following and any consequence of any of the following:

   (a) Undeclared war, civil war, insurrection, rebellion or revolution;

   (b) Warlike act by a military force or military personnel; or

   (c) Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

8. **Intentional Loss,** meaning any loss arising out of any act committed:

   (a) By or at the direction of an "insured"; and

   (b) With the intent to cause a loss.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

   b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

   a. Give prompt notice to us or our agent;

   b. Notify the police in case of loss by theft;

   c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

   d. Protect the property from further damage. If repairs to the property are required, you must:

      (1) Make reasonable and necessary repairs to protect the property; and

      (2) Keep an accurate record of repair expenses;

   e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   f. As often as we reasonably require:

      (1) Show the damaged property;

      (2) Provide us with records and documents we request and permit us to make copies; and

      (3) Submit to examination under oath, while not in the presence of any other "insured" and sign the same;

   g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) The time and cause of loss;

      (2) The interest of the "insured" and all others in the property involved and all liens on the property;

      (3) Other insurance which may cover the loss;

      (4) Changes in title or occupancy of the property during the term of the policy;

    (5) Specifications of damaged buildings and detailed repair estimates;

    (6) The inventory of damaged personal property described in **2.e.** above;

    (7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

    (8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

    a. Repair or replace any part to restore the pair or set to its value before the loss; or

    b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

    Each party will:

    a. Pay its own appraiser; and

    b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

13. **Nuclear Hazard Clause.**

    a. "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused or any consequence of any of these.

    b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

    c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

14. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

15. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is bought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### COVERAGE F -MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only;

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the " residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business";

   c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

      (1) On an occasional basis if used only as a residence;

      (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

      (3) In part, as an office, school, studio or private garage;

   d. Arising out of the rendering of or failure to render professional services;

   e. Arising out of a premises:

      (1) Owned by an "insured";

      (2) Rented to an "insured"; or

      (3) Rented to others by an "insured";

      that is not an "insured location";

   f. Arising out of:

      (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

      (2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

      (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

      This exclusion does not apply to:

      (1) A trailer not towed by or carried on a motorized land conveyance;

      (2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

         (a) Not owned by an "insured"; or

    (b) Owned by an "insured" and on an "insured location";

  (3) A motorized golf cart when used to play golf on a golf course;

  (4) A vehicle or conveyance not subject to motor vehicle registration which is:

    (a) Used to service an "insured's" residence;

    (b) Designed for assisting the handicapped; or

    (c) In dead storage on an "insured location";

g. Arising out of:

  (1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

  (2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

  (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

  (1) That are not sailing vessels and are powered by:

    (a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

    (b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

    (c) One or more outboard engines or motors with 25 total horsepower or less;

    (d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

    (e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

      (i) You acquire them prior to the policy period; and

      (a) You declare them at policy inception; or

      (b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

      (ii) You acquire them during the policy period.

    This coverage applies for the policy period.

  (2) That are sailing vessels, with or without auxiliary power:

    (a) Less than 26 feet in overall length;

    (b) feet or more in overall length, not owned by or rented to an "insured."

  (3) That are stored;

h. Arising out of:

  (1) The ownership, maintenance, use, loading or unloading of an aircraft;

  (2) The entrustment by an "insured" of an aircraft to any person; or

  (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

  (1) Undeclared war, civil war, insurrection, rebellion, revolution;

  (2) Warlike act by a military force or military personnel; or

  (3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD,

   marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

   Exclusions e., f., g. and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

2. **Coverage E - Personal Liability**, does not apply to:

   a. Liability:

      (1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

      (2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

         (a) That directly relate to the ownership, maintenance or use of an "insured location"; or

         (b) Where the liability of others is assumed by the "insured" prior to an "occurrence";

         unless excluded in (1) above or elsewhere in this policy;

   b. "Property damage" to property owned by the "insured";

   c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

   d. "Bodily injury" to any person eligible to receive any benefits:

      (1) Voluntarily provided; or

      (2) Required to be provided;

      by the "insured" under any:

      (1) Workers' compensation law;

      (2) Non-occupational disability law; or

      (3) Occupational disease law;

   e. "Bodily injury" or "property damage" for which an "insured" under this policy:

      (1) Is also an insured under a nuclear energy liability policy; or

      (2) Would be an insured under that policy but for the exhaustion of its limit of liability.

      A nuclear energy liability policy is one issued by:

      (1) American Nuclear Insurers;

      (2) Mutual Atomic Energy Liability Underwriters;

      (3) Nuclear Insurance Association of Canada;

      or any of their successors; or

   f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F - Medical Payments to Others**, does not apply to " bodily injury":

   a. To a "residence employee" if the "bodily injury":

      (1) Occurs off the "insured location"; and

      (2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

   b. To any person eligible to receive benefits:

      (1) Voluntarily provided; or

      (2) Required to be provided;

      under any:

      (1) Workers' compensation law;

      (2) Non-occupational disability law; or

      (3) Occupational disease law;

   c. From any:

      (1) Nuclear reaction;

      (2) Nuclear radiation; or

      (3) Radioactive contamination;

      all whether controlled or uncontrolled or however caused; or

      (4) Any consequence of any of these; or

   d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:
   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;
   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E We need not apply for or furnish any bond;
   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and
   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other " insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured." We will not pay for "property damage":
   a. To the extent of any amount recoverable under Section I of this policy;
   b. Caused intentionally by an "insured" who is 13 years of age or older;
   c. To property owned by an "insured";
   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or
   e. Arising out of:
      (1) A "business" engaged in by an "insured";
      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or
      (3) The ownership, maintenance or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

   This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:
   a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or
   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
      (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and
      (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

   We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

   Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:
   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or
   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

   The following do not apply to this coverage:
   1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);
   2. Condition 1. **Policy Period,** under SECTIONS I AND II - CONDITIONS.

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:
      (1) The identity of the policy and "insured";
      (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and
      (3) Names and addresses of any claimants and witnesses;

   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

   c. At our request, help us:
      (1) To make settlement;
      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";
      (3) With the conduct of suits and attend hearings and trials; and
      (4) To secure and give evidence and obtain the attendance of witnesses;

   d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

   e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**

   The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II - CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:
   a. Intentionally concealed or misrepresented any material fact or circumstance;
   b. Engaged in fraudulent conduct; or
   c. Made false statements;
   relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**
   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**
   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.
   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations.

      Proof of mailing will be sufficient proof of notice.

      (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:
         (a) If there has been a material misrepresentation of fact which if known to us, would have caused us not to issue the policy; or
         (b) If the risk has changed substantially since the policy was issued.

         This can be done by letting you know at least 30 days before the date cancellation takes effect.

      (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:
   a. We insure the legal representative of the deceased but only with respect to the premises

    and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

    (1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

    (2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

This policy is signed for the company which is the insurer under this policy.

*[signature]*

James M. Michener
Secretary

*[signature]*

Bob Khanna
Chief Executive Officer
Personal Lines

**IN WITNESS WHEREOF, the Company has executed and attested these presents.**

PL-9107  8-97