UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | ) | CIVIL ACTION No. 05-4182 "K" (2) |
| CONSOLIDATED LITIGATION | ) | |
| | ) | JUDGE DUVAL |
| _____ | ) | |
| | ) | MAG. WILKINSON |
| PERTAINS TO:   LEVEE | ) | |
| (La. Envtl. Action Network v. U.S. Army | ) | |
| Corps of Engineers, 06-9147) | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The Louisiana Environmental Action Network ("LEAN") respectfully submits its

Opposition to the U.S. Army Corps of Engineers' (Corps') Motion to Dismiss (filed Feb. 1,

2007, No. 2951).

**INTRODUCTION**

In its Motion to Dismiss, the Corps asserts a "sovereign immunity" defense to liability

under a statute that "expressly waives ***any immunity otherwise applicable*** to the United States,"

specifically including "any injunctive relief."  42 U.S.C. § 6961(a) (emphasis added).  Congress

also waived the Corps' immunity when it authorized plaintiffs to seek injunctions to abate

endangerments "against any person, including the United States . . . ."  Id. § 6972(a)(1)(B).

1

The Corps bases its motion on a legal theory that Congress amended the statute to eliminate.[1] Specifically, the Corps argues that the waiver of 42 U.S.C. § 6961 does not apply because liability for injunctive relief is not a "requirement." But Congress commanded the opposite result, stating in plain language that the term "requirements" includes "provisions for injunctive relief." 42 U.S.C. § 6961(a).

The Corps also attempts to conflate its subject matter jurisdiction argument with the merits, arguing that it enjoys immunity because it is has no "jurisdiction" over the London Avenue Canal and is not "engaged in any activity resulting, or which may result, in the disposal or management" of Canal sediments (which contain solid or hazardous waste). Def. Br. 21. But the plain language of federal regulations belies the Corps' denial of ongoing responsibility for the Canal.

Specifically, the law requires that the Corps "***shall ensure*** that . . . the requirements of Part 208.10 of 33 Code of Federal Regulations (CFR) are met,"[2] *i.e.*, that "[t]he structures and facilities constructed by the United States for local flood protection shall be ***continuously maintained*** in such a manner and operated at such times and for such periods as may be necessary to obtain the maximum benefits." 33 C.F.R. § 208.10(a)(1) (emphasis added). These regulations put the Corps squarely in charge of the Canal's maintenance and operation, forbidding the local operator from making "any change [to] any feature of the works" without prior Corps approval, id. § 208.10(a)(5), and commanding that "[m]aintenance measures or repairs" that the Corps deems necessary "shall be promptly taken or made." Id. § 208.10(a)(8).

---

[1] Cf. Charter Intern. Oil Co. v. United States, 925 F. Supp. 104, 107 (D.R.I. 1996) ("Congress rejected this narrower analysis [of earlier court decisions] by passing the Federal Facility Compliance Act of 1992, which recognized the serious environmental compliance problems at federal facilities and amended RCRA to permit [*inter alia*] punitive fines.").

[2] Regulation 1130-2-530, § 3-2(b)(2) http://www.usace.army.mil/publications/eng-regs/er1130-2-530/entire.pdf (visited Feb. 21, 2007) (attached as Exhibit) (emphasis added).

In sum, the Corps' Motion to Dismiss is without merit and should be denied.

## BACKGROUND

*The Plaintiff's Cause of Action*

This is an environmental citizen suit under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 *et seq*.  As amended in 1984, RCRA authorizes district courts to abate environmental hazards and order "such other action as may be necessary" in actions "against any person, including the United States."  Id. § 6972(a).  A defendant is liable if it is a person "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."  Id. § 6972(a)(1)(B).[3]

As amended in 1992, RCRA states: "The United States hereby expressly ***waives any immunity otherwise applicable*** to the United States with respect to any such substantive or procedural requirement (***including, but not limited to any injunctive relief*** . . . ) . . . ."  42 U.S.C. § 6961(a) (emphasis added).

_____

[3] 42  U.S.C. § 6972(a)(1)(B) "contains essentially three elements."  Cox v. City of Dallas, 256 F.3d 281, 292 (5th Cir. 2001).  A plaintiff must show:

> (1) that the defendant is a person, including, but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that the defendant has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and (3) that the solid or hazardous waste may present an imminent and substantial endangerment to health or the environment.

Id. (footnotes omitted). "Handling, storage, treatment, transportation, or disposal" includes acts *or omissions* associated with these activities: "[A]ny affected citizen may bring suit against any [individual or entity] whose waste-related *acts or omissions* present an imminent and substantial endangerment to health or the environment."  Wilson v. Amoco Corp., 989 F. Supp. 1159, 1172 (D. Wyo. 1998) (emphasis added).

*Relevant Facts*

This citizen suit arises under RCRA because the breach of the London Avenue Canal released into a New Orleans neighborhood material that "includes urban runoff and other solid and hazardous waste"[4] and "may contain arsenic, polycyclic hydrocarbons, and lead." Complaint (filed Oct. 27, 2006) at ¶¶ 31-32.  Following the Canal's breach, LEAN's members and others "may be exposed to these chemicals when handling or otherwise contacting the soil or when breathing dust in the area."  Id. at ¶ 33.  Therefore, these sediments containing solid and hazardous waste "may present an imminent and substantial endangerment to health and the environment."  Id. at ¶¶ 46, 51.

The Corps is liable because it is a "person" whose "acts and omissions" include "handling and disposal, with respect to waste in the London Avenue Canal . . . ."[5]  Id. at ¶ 6. Moreover, by "failing to take such abatement actions as may be necessary to protect the public from risks posed by sediments in the Vista Park neighborhood" and by "designing, building, and maintaining inadequate levees for the London Avenue Canal," the Corps contributes to and has contributed to the endangerment at issue.  Id. at ¶¶ 46, 51.  The Corps is also liable as "an operator of the London Avenue Canal levees."  Id. at ¶ 39.

---

[4] Subject to exceptions that are not relevant here, solid waste is "discarded material" (whether liquid or solid).  42 U.S.C. § 6903(27).  "Hazardous waste" is solid waste, "which because of its quantity, concentration, or physical, chemical, or infectious characteristics *may* . . . pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."  42 U.S.C. § 6903(5)(B) (emphasis added).

[5] "'Handling' [as used in § 6972(a)(1)] is not defined in RCRA.  However, in ordinary usage, to 'handle' something is 'to deal with or have responsibility' for it."  Lincoln Properties v. Higgins, 23 Envtl. L. Rep. (Envtl. L. Inst.) 20,665, 20,672 (E.D. Cal. 1993) (citing American Heritage Dictionary 592 (2d College ed. 1985).  EPA interprets "handling" as follows: "'to deal with or have responsibility' for something."  EPA, Guidance on the Use of Section 7003 of RCRA 13 (1997), http://www.epa.gov/Compliance/resources/policies/cleanup/rcra/971020.pdf.

## STANDARD OF REVIEW

This Court recently reviewed the applicable standard of review in <u>Robinson v. United States (In re Katrina Canal Breaches Consol. Litig.)</u>, Nos. 05-4182, 06-2268, 2007 WL 293163 *2 (E.D. La., Feb. 2, 2007).  The Court "may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  <u>Id</u>. (quoting <u>Robinson v. TCI/US West Communications Inc</u>., 117 F.3d 900, 904 (5th Cir. 1997)).  As the Fifth Circuit has noted: "[d]ismissal is proper only when it appears certain that the plaintiffs cannot prove any set of facts in support of their claim which would entitle them to relief."  <u>TCI/US West Communications Inc</u>., 117 F.3d at 904 (internal quotation marks and citation omitted).

Where "issues of fact are central both to subject matter jurisdiction and the claim on the merits," this Court has "held that the trial court must assume jurisdiction and proceed to the merits."  <u>Robinson v. United States</u>, 2007 WL 293163 *3.  Thus, "[w]here the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court [. . .] is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case . . . " <u>Id</u>. (quoting <u>Williamson v. Tucker</u>, 645 F.2d 404, 415 (5th Cir.1981), cert. denied, 454 U.S. 897 (1981)).

Unlike a Rule 12(b)(6) motion, reliance on materials outside the pleadings does not convert the Corps' Rule 12(b)(1) to a summary judgment motion.  <u>Isquith ex rel. Isquith v. Middle S. Util., Inc</u>., 847 F.2d 186, 194 (5th Cir. 1988) (Rule 12(b)(6)'s provision for conversion to a Rule 56 summary judgment motion "is not applicable to motions under other rules," but applies only to Rule 12(b)(6) (quoting <u>Goldman v. Belden</u>, 754 F.2d 1059, 1066 (2d Cir.1985)),

5

cert denied, 488 U.S. 926 (1988); Zapp v. United Transp. Union, 727 F.2d 617, 619 n.5 (7th Cir. 1984) (The "provision [for conversion to summary judgment) by its terms is not applicable to a 12(b)(1) motion.").

### ARGUMENT

## I.     RCRA WAIVES SOVEREIGN IMMUNITY.

RCRA abrogates sovereign immunity in the clearest possible language, "expressly waiv[ing] any immunity otherwise applicable to the United States," specifically including "any injunctive relief."  42 U.S.C. § 6961(a).  Congress also waived the Corps' immunity when it authorized plaintiffs to bring "imminent and substantial endangerment" claims for injunctive relief "against any person, including the United States . . . ."  Id. § 6972(a)(1)(B); see Crowley Marine Services, Inc. v. Fednav Ltd., 915 F. Supp. 218, 222 (E.D. Wash. 1995) ("The 1992 amendment was a clear effort on behalf of Congress to equally apply environmental standards to private citizens and the federal government.").

The Corps' brief adopts potentially confusing terminology.  Specifically, the Corps labels RCRA's authorization to sue "any person, including the United States, and any other governmental instrumentality or agency . . . ." as the so-called "Citizen Suit Provision Waiver." Def. Br. 14.  Next, the Corps labels RCRA's overarching waiver of sovereign immunity as the so-called "Federal Facilities Waiver."  Def. Br. 17.  (Presumably, one could also break out RCRA's definition of "person," which includes the government,[5] and call it the "Definition of Person Waiver.")  In reality, all of these provisions should be read together.  42 U.S.C. § 6972 authorizes suit against the liable parties and 42 U.S.C. § 6961 clarifies Congress' clear and broad

---

[5] 42 U.S.C. § 6903(5).

intent to waive "any immunity otherwise applicable to the United States," and specifies that the waiver includes injunctive relief and sanctions.

The Corps apparently agrees that 42 U.S.C. § 6961(a) is sufficiently broad and clear to waive any immunity otherwise applicable under the Flood Control Act, focusing the first part of its brief on the irrelevant assertion that the "RCRA citizen suit provision" (42 U.S.C. § 6972), standing alone, would not be enough to waive flood-protection immunity.  Def. Br. 14-16 (admitting at p. 15 that "the federal facilities provision [42 U.S.C. § 6961] . . . *does* contain an express waiver of otherwise applicable immunity.").  The Corps also acknowledges the holding of United States v. Iron Mountain Mines, Inc., 881 F. Supp. 1432, 1440-41 (E.D. Cal. 1995), that the Comprehensive Environmental Response Compensation and Liability Act's (CERCLA's) imposition of "liability in certain categories of persons, including governmental entities, '[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section'" clarifies that CERCLA waives the government's flood-protection immunity.  The Corps also admits that this Court, among others, has reached the same result. United States v. City of New Orleans, No. 02-3618, 2003 WL 22208578, *2 (E.D. La., Sept. 19, 2003) ("A plain reading of the language is that the government is subject to CERCLA liability just like any private party or nongovernmental entity is subject to CERCLA liability.").

RCRA's waiver of "any immunity otherwise applicable to the United States" at 42 U.S.C. § 6961 is even clearer than the CERCLA language at issue in Iron Mountain.  Indeed, "[t]he federal facilities provision of the Resource Conservation and Recovery Act *exemplifies an unequivocal expression* . . . ."  Sierra Club v. Tennessee Valley Auth., 430 F.3d 1337, 1356 - 1357 (11th Cir. 2005).  The language "illustrates that Congress knows how to write an unequivocal and unambiguous waiver of sovereign immunity when it wants to do so."  Id.; see

Charter Intern. Oil Co. v. United States, 925 F. Supp. 104, 107 (D.R.I. 1996) ("Congress rejected this narrower analysis [of earlier court decisions] by passing the Federal Facility Compliance Act of 1992, which recognized the serious environmental compliance problems at federal facilities and amended RCRA to permit [*inter alia*] punitive fines.").  The legislative history explains: "this legislation . . . applies to all actions of the federal government, past and present, which are subject to solid or hazardous waste laws."  Charter Intern. Oil Co., 925 F. Supp. at 108 (quoting H.R. Rep. No. 11, 102d Cong., 2d Sess. 2 (1992) reprinted in 1992 U.S.C.C.A.N. 1287, 1291).

Rather than arguing that a waiver of "any immunity otherwise applicable to the United States" means less than what it says, the Corps instead relies on a meritless assertion, rebutted below, that 42 U.S.C. § 6961 does not apply to this case.

## II.     RCRA'S WAIVER AT 42 U.S.C. § 6961 APPLIES TO THIS CASE.

### A.     Congress specified that its waiver includes liability for injunctive relief.

The Corps' motion is based on the theory that 42 U.S.C. § 6961 does not apply because liability for injunctive relief is, supposedly, not a "requirement."  But Congress commanded the opposite result, stating in plain language that the term "requirements" includes "provisions for injunctive relief."  42 U.S.C. § 6961(a).[6]  In its Brief at 18, the Corps relies on United States v.

---

[6] 42 U.S.C.A. § 6961(a) states in pertinent part:

> Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal and management in the same manner, and to the same extent, as any person is subject

New Mexico, 32 F.3d 494 (10th Cir. 1994), which does not support its argument.  Indeed, the

United States lost that case.  The Tenth Circuit rejected the government's argument for immunity

and approvingly cited authority that "'requirements' are *not* limited to specific and objective

criteria, but can include criteria that are open-ended."  Id. at 498 (internal quotation marks and

citation omitted) (emphasis added).

Because Congress unequivocally mandated that the term "requirement" include

injunctive relief, the Corps' argument is without merit.

**B.      The Corps is responsible for releases of contaminated sediments at the London
          Avenue Canal.**

The Corps also argues that 42 U.S.C. § 6961 does not apply because—incredibly—it is

not "engaged in any activity resulting, or which may result, in the disposal or management of

solid or hazardous waste" and lacks "jurisdiction" over the London Avenue Canal.  Def. Br. 21.

But the Corps' own regulations establish the Corps has jurisdiction over and responsibility for

operations at the London Avenue Canal.

The Code of Federal Regulations commands: "The structures and facilities constructed

by the United States for local flood protection shall be ***continuously maintained*** in such a

---

> to such requirements, including the payment of reasonable service charges. The
> Federal, State, interstate, and local substantive and procedural requirements
> referred to in this subsection include, but are not limited to, all administrative
> orders and all civil and administrative penalties and fines, regardless of whether
> such penalties or fines are punitive or coercive in nature or are imposed for
> isolated, intermittent, or continuing violations. The United States hereby expressly
> waives any immunity otherwise applicable to the United States with respect to
> any such substantive or procedural requirement (including, but not limited to, any
> injunctive relief, administrative order or civil or administrative penalty or fine
> referred to in the preceding sentence, or reasonable service charge). . . . Neither
> the United States, nor any agent, employee, or officer thereof, shall be immune or
> exempt from any process or sanction of any State or Federal Court with respect to
> the enforcement of any such injunctive relief.

manner and operated at such times and for such periods as may be necessary to obtain the

maximum benefits." 33 C.F.R. § 208.10(a)(1) (emphasis added). The Corps' regulations

establish that the Corps is responsible for "ensur[ing] . . . that the requirements of Part 208.10 of

33 Code of Federal Regulations (CFR) are met." Specifically, the Corps' Regulation 1130-2-530

provides, "MSC [Major Subordinate Commands] and district commanders *shall ensure* that: (1)

essential maintenance is performed in accordance with existing agreements, [and] (2) that the

requirements of Part 208.10 of 33 Code of Federal Regulations (CFR) are met." Regulation

1130-2-530, § 3-2(b) (emphasis added).[7]  Regulation 1130-2-530 also requires that "Projects that

protect urban areas or ones where failure would be catastrophic and result in loss of life should

be inspected annually." Id. § 3-3(a). Under the law "No improvement" may be made to the

levees "nor shall any excavation or construction be permitted . . . nor shall any change be made

in any feature of the works without prior determination by the District Engineer of the

Department of the Army . . . ." 33 C.F.R. § 208.10(a)(5). Furthermore, "[m]aintenance

measures or repairs which the District Engineer deems necessary *shall* be promptly taken or

made." Id. § 208.10(a)(8) (emphasis added).

 Consistent with the regulations cited above, Max L. Hearn, Executive Director of the

Orleans Levee District, testified to the Senate that:

> The Levee District's operation and maintenance procedures are conducted in
> accordance with federal regulations and *under the oversight of the Corps*. . . .
> The Corps conducts annual inspections of the flood control structures within the
> Orleans' Levee District's jurisdiction and grades the Levee District on
> compliance.

Hurricane Katrina: Who's In Charge of the New Orleans Levees?: Hearing before Sen. Comm.

on Homeland Security and Gov't Affairs, 109th Cong. (Dec. 15, 2005) (statement of Max L.

---

[7] Regulation 1130-2-530, http://www.usace.army.mil/publications/eng-regs/er1130-2-530/entire.pdf (visited Feb. 21, 2007).

Hearn, exec. Dir., Orleans Levee Dist.), http://hsgac.senate.gov/_files/121505Hearn.pdf

(emphasis added).

The Corps' disavowal of responsibility is also belied by admissions on its own web page

which reveals ongoing activity and jurisdiction at the Canal, *e.g.*, the Corps continues to modify

the Canal, to award contracts for work at the Canal, to seek and spend federal money at the

Canal, and is responsible for meeting hurricane protection standards at area levees.[8]


**III.    THE CORPS OFFERS TESTIMONY THAT IS INADMISSIBLE AND WRONG.**


To bolster its denial of responsibility for the London Avenue Canal, the Corps cites

selected documents outside the pleadings to argue that it is not responsible for contaminated

sediments released from the London Avenue Canal.  Because this argument is flatly inconsistent

with federal regulations (the Corps' Regulation 1130-2-530 and 33 C.F.R. § 208.10) and

admissions on the Corps web page, discussed above, this Court should reject the Corps'

disavowal of responsibility for the London Avenue Canal.

In addition, the Corps presents inadmissible testimony.  Specifically, the Corps'

declarant offers the legal opinion that "[t]he Corps does not . . . operate the levees, floodwalls or

---

[8]  See, e.g., http://www.hq.usace.army.mil/cepa/releases/hpimprovements-layout.pdf  (visited
Feb. 21, 2007) ("Adding a structure at the mouth of each canal [the 17th Street Canal, the
Orleans Avenue Canal, and the London Avenue Canal] is key to better protection. These new
structures will keep storm surge out and permit existing pump stations to continue operation.");
http://www.mvn.usace.army.mil/hps (visited Feb. 21, 2007) ("the U.S. Army Corps of Engineers
. . has awarded a contract . . . for . . . vertical flow pump systems to be installed at the 17th Street
and London Avenue Canals");
http://www.hq.usace.army.mil/cepa/releases/neworleanslevees.htm (visited Feb. 21, 2007)
(announcing "the release of U.S. Army Corps of Engineers revised estimates of costs to certify
and further enhance the area's levees."); http://www.hq.usace.army.mil/cepa/corpspoints/1-2-
06.htm (visited Feb. 21, 2007) (announcing that "Task Force Guardian has been assigned the
mission to repair and restore the New Orleans area hurricane protection system to its authorized
level of protection by June 2006, the beginning of next year's hurricane season.").

other flood control structures at the London Avenue Canal . . . .  Nor has the Corps . . . operated

such structures in the past."  Decl. of LTC Murray P. Starkel, ¶ 20.  LTC Starkel, however, does

not base his testimony on personal knowledge, but only "information and belief."  Id. at ¶ 3.

Accordingly, LEAN objects to this declaration as inadmissible and lacking foundation.

LTC Starkel's testimony is also wrong as a matter of law.  The Corps is an operator of

the London Avenue Canal levees and floodwalls because the Corps controls those structures.

Specifically, as demonstrated in Argument II above, the Corps has veto power over "any change"

to the levees and flood walls and may impose any maintenance measures or repair requirements

that the Corps deems necessary.  33 C.F.R. § 208.10(a)(5),(8).

The Corps argues that "the Orleans Levee District has retained responsibility *as between*

*the Federal Government and the Levee District* for the operation and maintenance of levees and

floodwalls at the London Avenue Canal."  Decl. of LTC Murray P. Starkel, ¶ 19 (emphasis

added).  But there is nothing in RCRA to suggest that there can be no more than one operator.

To the contrary, RCRA imposes liability on "any person . . . including *any* past or present . . .

operator . . . who has contributed or who is contributing to the past or present handling, storage,

treatment, transportation, or disposal of any solid or hazardous waste . . . ."  42 U.S.C. §

6972(a)(1)(B).  Cf. United States v. Bestfoods, 524 U.S. 51, 66-67 (1998) (holding under

CERCLA that "an operator is simply someone who directs the workings of, manages, or

conducts the affairs of a facility. To sharpen the definition for purposes of . . . environmental

contamination, an operator must manage, direct, or conduct operations specifically related to

pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or

decisions about compliance with environmental regulations.").  Because the Corps directs the

12

operations that resulted in release of contaminated sediments (which the Corps now declines to investigate and abate the risks from) the Corps is an operator of the facility.

## IV.     THE CORPS' ARGUMENT ABOUT "PAST" FEDERAL ACTIVITIES MISSES THE POINT.

The Corps argues that RCRA's waiver cannot reach wholly past federal activities.  The argument is irrelevant.  This lawsuit—like all lawsuits under 42 U.S.C. § 6972(a)(1)(B)—is forward looking, based on the Corps' ongoing failure to investigate and abate, as necessary, a situation that may pose an imminent and substantial endangerment.  Meghrig v. KFC W., Inc., 516 U.S. 479, 486 (1996) (Congress designed § 6972(a)(1)(B) "to provide a remedy that ameliorates present or obviates the risk of future 'imminent' harms, not a remedy that compensates for past cleanup efforts.").

42 U.S.C. § 6961 waives immunity of agencies with jurisdiction of facilities or engaged in activities resulting in management of solid waste.  The immunity includes the requirement that the agency comply with injunctive relief that 42 U.S.C. § 6972(a) authorizes where a defendant has contributed or is contributing to past or present waste handling that may endanger the public.  Because the Corps has jurisdiction over the London Avenue Canal, and is engaged in activities that result in management of solid waste at that facility, the Corps is liable for injunctive relief crafted to remedy its ongoing failure to investigate and abate the endangerment at issue.

**V.     THE CORPS' CITATION OF CASES ABOUT IMMUNITY FROM MONEY DAMAGES UNDER STATE STATUTES DOES NOT ADVANCE ITS ARGUMENT.**

The Corps cites <u>Marina Bay Realty Trust LLC v. United States</u> 407 F.3d 418 (1st Cir. 2005), in which the First Circuit held that RCRA contains "no express waiver of immunity for private suits seeking monetary damages."  407 F.3d at 423.  This is not relevant to a claim under RCRA, since RCRA does not provide a cause of action for recovery of such damages.  <u>Meghrig v. KFC W., Inc.</u>, 516 U.S. 479, 487 (1996) ("Congress did not intend for a private citizen to be able to undertake a cleanup and then proceed to recover its costs under RCRA.").  This case is not about private money damages; instead, LEAN seeks an injunction, which RCRA specifically authorizes.  42 U.S.C. § 6972(a).

Similarly, the Corps cites <u>McLellan Highway Corp. v. United States</u>, 95 F. Supp. 2d 1, 17 (D. Mass. 2000), <u>Gen. Motors Corp. v. Hirschfield Steel Serv. Ctr., Inc</u>., 402 F. Supp. 2d 800, 807 (E.D. Mich. 2005), and <u>Fla. Dept. of Envtl. Regulation v. Silvex Corp</u>., 606 F. Supp. 159, 163 (M.D. Fla. 1985).  These cases are about recovery of money under state statutes and so are not relevant to this action for injunctive relief under RCRA.

## CONCLUSION

For all the forgoing reasons, the Corps' Motion to Dismiss must be DENIED.

Respectfully submitted on February 22, 2007,

/s/ Dana Steinberg

_____
Dana Steinberg, Student Attorney

/s/ Jeremy Epstein

_____
Jeremy Epstein, Student Attorney

14

/s/ Adam Babich

_____

Adam Babich, SBN: 27177
Tulane Environmental Law Clinic
6329 Freret Street
New Orleans, Louisiana 70118
Telephone: (504) 865-5789; Fax: (504) 862-8721
Babich Direct Line: (504) 862-8800

*Counsel for Plaintiff Louisiana Environmental Action
Network*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been served upon counsel of record by electronic means on February 22, 2007.

/s/ Adam Babich

_____

Adam Babich

15