UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  KATRINA CANAL BREACHES * | CIVIL ACTION |
| CONSOLIDATED LITIGATION        * | |
|                          * | NUMBER  05-4182 |
|                          * | |
|                          * | SECTION "K"  (2) |
| LEVEE CASES             * | |
| PERTAINS TO:  06-11208   * | JUDGE DUVAL |
| (Speed)                    * | |
|                          * | MAGISTRATE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * *

## OPPOSITION OF THE PUBLIC BELT RAILROAD COMMISSION FOR THE CITY OF NEW ORLEANS TO MOTION TO REMAND

The plaintiffs filed this action in Civil District Court for the Parish of Orleans, State of Louisiana on November 21, 2006, against the Public Belt Railroad Commission for the City of New Orleans (the "Public Belt"),[1] the BNSF Railway Company ("BNSF"),[2] and the Board of Commissioners of the Orleans Levee District (the "Orleans Levee District"), seeking damages for property loss, damage to property, personal and mental anguish, and inconvenience (state court Petition, ¶ V.1) resulting from "flooding through the damaged and/or missing flood gate near the Industrial Canal in Gentilly during Hurricane Katrina . . .". *Id.*, ¶ III. 2.

---

[1]     The defendant is incorrectly referred to in the plaintiffs' state court petition as the "City of New Orleans, by and through the Public Belt Railroad Commission."

[2]     The plaintiffs' Petition referred to that defendant as the Burlington Northern and Santa Fe Railway Company, its former name.

Because the plaintiffs' state law negligence claims against the Public Belt and BNSF are completely preempted by the Federal Rail Safety Act and the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. §10101, *et seq.*, BNSF removed the case to this Court on December 21, 2006.

The plaintiffs' claim against the Public Belt and BNSF arise solely from a September 11, 2004 train derailment that allegedly caused damage to Floodgate W-30 near the western sea wall of the Industrial Canal.  Plaintiffs' state court removed Petition, ¶s III. 3-4.

Plaintiffs allege that the Public Belt was operating a locomotive owned by BNSF and that "several cars of the 102-car train derailed at the location of Flood Gate W-30. The derailment began on tracks owned by the [Public Belt] . . ." Petition, ¶ III. 4.

> The plaintiffs further allege that:
>
> The Defendants are liable for all damages sustained by Petitioners . . . under the following non-exclusive legal causes of action:
>
> . . .
>
> (e) Neglect and/or intentional failure to operate the locomotive carrying the derailed cars with due care;
>
> (f) Neglect and/or intentional failure to direct traffic, including rail traffic, traveling along the railroad tracks that run east west cross [sic] the Industrial Canal near the location of Flood Gate W-30; …

Plaintiffs' Petition, ¶ IV. 1.[3]

The plaintiffs' claim against the Public Belt for negligent operation of a train is completely preempted by the Federal Rail Safety Act (the "FRSA").  To the extent the plaintiffs' allegations may be interpreted to include a claim of negligence in failing to maintain and/or repair its railroad tracks, such claims are also completely preempted by

---

[3]       By vague references to the duty of unspecified "Defendants" concerning the Industrial Canal flood control system, the plaintiffs infer that the Public Belt and BNSF owed a duty to the plaintiffs and/or to the public to protect them from flooding.  Petition, ¶ IV. 1.  The Public Belt and BNSF have no such duty. Rather, that duty has been vested in the Orleans Levee District and in the U.S. Army Corps of Engineers by the Louisiana legislature and by the U.S. Congress, respectively.  No artful pleading on behalf of the plaintiffs can create such a duty on the part of the Public Belt or BNSF.  See, the Memorandum of the Public Belt Railroad Commission for the City of New Orleans In Support of Motion to Dismiss Pursuant to F.R.C.P. Rule 12(b)(6), in the instant Speed case, document No. 3029-2 in the captioned consolidated cases, at pp. 3-8.

the FRSA.  The claims of improper placement or direction of rail traffic are completely subsumed by the regulation of FRSA and ICCTA.

In seeking remand, the plaintiffs do not address the decisions of the Supreme Court, the Fifth Circuit and other courts which analyze the types of state law negligence claims that are subject to complete preemption.

## ARGUMENT

### A.    Governing Principles of Complete Preemption

State court actions that could originally have been filed in federal court may be removed to federal court.  28 U.S.C. §1441.  Where federal question jurisdiction is the basis for removal, the cause of action must "arise under" the Constitution, laws or treaties of the United States.  28 U.S.C. § 1331.  A core premise underlying "arising under" jurisdiction is the "well-pleaded complaint" rule, whereby, generally, federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998).  Generally, a plaintiff can avoid removal by alleging only state law claims.  *Caterpillar*, at 392.

However, there are exceptions to that general rule.  One exception is federal question jurisdiction in "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action <u>or</u> that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28, 103 S. Ct. 2841 (1983); emphasis supplied.

In *Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturers*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed. 2d 257 (2005), the Supreme Court noted that "a state law claim could give rise to federal-question jurisdiction so long as it 'appears from the [complaint] that the right to relief depends upon the construction or application of [federal law].' " *Id.* at 313, 125 S. Ct. at 2367, quoting *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 41 S.Ct. 243 (1921).  In *Grable*, the Court held that the lack of a private right of action under federal law does <u>not</u> divest the court of federal jurisdiction when a state law claim contains a disputed and substantial question of federal

law, as long as finding federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. *Id.* at 314, 125 S.Ct. at 2368.

Prior to *Grable,* the Fifth Circuit set forth a three-part analysis for considering complete preemption. *Aaron v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 876 F.2d 1157 (5th Cir. 1989); *see also Johnson v. Baylor Univ.,* 214 F.3d 630, 632 (5th Cir. 2000). Under this framework, complete preemption turned on whether: (1) the preemptive statute in question contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable. *Johnson,* 214 F.3d at 632. This strictly stated test had the practical effect of rigidly confining complete preemption, perhaps to the two statutes that the Supreme Court had addressed. *See Heimman v. Nat'l Elevator Indus. Pension Fund,* 187 F.3d 493, 500 (5th Cir. 1999), *overruled on other grounds by Arana v. Ochsner Heath Plan,* 338 F.3d 433 (5th Cir. 2003) ("[F]ew federal statutes can meet such an exacting standard."). But the *Grable* decision negated the first prong of the Fifth Circuit's *Aaron* test: under appropriate circumstances, a federal private right of action is no longer required for complete preemption.

Moreover, in light of Supreme Court pronouncements prior to *Grable* on complete preemption, the Fifth Circuit in 2003 had refined its analysis to replace the third prong of the *Aaron* test. The Fifth Circuit no longer requires Congressional intent that the claims be "removable," but instead adopted the Supreme Court's directive that the focus be on "Congress's intent that the federal action be exclusive." *Hoskins v. Bekins*

*Van Lines*, 343 F.3d 769, 775-76 (5th Cir. 2003); *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003). [4]

### B.   The FRSA Provides For Complete Preemption, Justifying Removal

FRSA establishes a federal regulatory scheme designed to mandate uniform railroad regulations.  It contains a clearly expressed intent on the part of Congress that this regulatory regime be exclusive, and that it preempt state law.  FRSA, 49 U.S.C. § 20106 ("Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.")  The Supreme Court has held that FRSA preempts state law claims where "the federal regulations substantially subsume the subject matter of the relevant state law."  *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993); *see also Peters v. Union Pac. R.R. Co.*, 80 F.3d 357, 262 (8th Cir. 1996) ("Congress has expressly preempted state laws affecting railroad safety where the Secretary of Transportation has promulgated regulations."). [5]

In those spheres of railroad safety for which Congress has authorized the Department of Transportation to issue regulations mandating specific standards directed at railroad safety, and concerning which the agency in fact has issued such controlling regulations, there remains no common law claim.  Thus, a plaintiff's state law claim that a railroad did not properly maintain its tracks is completely preempted; DOT has exclusive jurisdiction to regulate and determine such issues.  *See Lundeen v. Canadian*

---

[4]    Even before the *Grable* decision, the Fifth Circuit appears to have expanded the first and second prongs of the *Aaron* analysis – the "cause of action" and "federal court" prongs – to make room in complete preemption analysis for a statute whose remedy is not a civil action, but administrative.  *See PCI Transp., Inc. v. Forth Worth & W.R.R. Co.*, 418 F.3d 535, 544-45 (5th Cir. 2005).  In *PCI Transportation*, the Fifth Circuit held that non-contractual claims for injunctive relief were completely preempted by the Interstate Commerce Clause Termination Act ("ICCTA"), thereby justifying removal.  ICCTA, which like FRSA regulates railroad operations, establishes an exclusive federal regulatory and administrative scheme for claims that otherwise would be the subject of state tort-law claims.  *Id.*  In particular, with regard to the *PCI* action, ICCTA provides that exclusive jurisdiction over actions regarding railroad "rates, classifications, rules ... practices, routes, services, and facilities" rests with the Surface and Transportation Board of the Department of Transportation.  49 U.S.C. § 10501(b)(1).  Noting that recent Supreme Court precedent "makes finding complete preemption easier,"  *PCI Transp.*, 418 F.3d at 544, n.32, the Fifth Circuit found ICCTA's regulatory scheme sufficient to meet the requirements for complete preemption on the facts before it.  *Id.*

[5]    Thus, the plaintiffs' contention, at the unnumbered third page of their Memorandum In Support of Motion to Remand (doc. no. 3030-2), that the FRSA is not a complete preemption statute, is patently incorrect.

*Pac. Ry. Co.*, 447 F.3d 606, 614 (8th Cir. 2006) ("It is clear the [Federal Railroad Administration] regulations are intended to prevent negligent track inspection and there is no indication the FRA meant to leave open a state law cause of action.")  The Public Belt does not suggest that any and all common law tort claims involving railroads, or even railroad safety, would be completely preempted by FRSA.  Rather, each railroad safety claim must be assessed individually to determine whether the Secretary of Transportation has, under its express FRSA authority, directly regulated in that area to ensure uniform safety policies and standards.

The only specific contention against the Public Belt in the instant case is that the locomotive was improperly operated.   Petition ¶ IV. 1(e).   The Federal Railroad Administration ("FRA"), a division of the Department of Transportation, is tasked with enforcing the FRSA.  The claims that give rise to federal jurisdiction in this case are "substantially subsumed" by directly applicable FRA regulations that establish a nationally uniform system of operating practices (see 49 CFR § 212.221, "Operating Practices Inspector"), for railroad employee safety training (49 CFR § 217), and for the qualification and certification of engineers to operate locomotives (§ 240).  Similarly, "Locomotive Standards and Inspections" are subject to a nationally uniform system (49 CFR § 230.5, express preemption), and § 230.29 (inspection and repair).  In enacting the FRSA, Congress assigned the Secretary of Transportation "exclusive authority to impose . . . a civil penalty for violation of a railroad safety regulation . . . and to recommend [civil district court] action be taken." 49 U.S.C. § 20111(a).

The petition's contention that the Public Belt was negligent in operating the locomotive is a contention directly and substantially subsumed by Congress's intent to create a nationally uniform standard in that sphere of railroad safety, enforceable by the Department of Transportation.  In *Hodge v. Burlington Northern & Santa Fe Railway Co.*, 461 F. Supp. 2d. 1044, 1053 (E.D. Mo. 2006), the court specifically found the plaintiff's state law claim for negligent operation of the train to be completely preempted by the FSRA and the regulations enacted.  This aspect of the claim against the Public Belt is therefore completely preempted, justifying removal.

In *Lundeen v. Canadian Pac. Ry. Co.*, *supra*, 447 F.3d at 614, the Eighth Circuit found state law claims for personal injuries and property damage based upon negligent

track inspection to be completely preempted.[6]   The *Lundeen* Court found that the FRA regulations established a specific inspection protocol including how, when and by whom track inspections must be conducted. *Id.* at 614, quoting from *In re Derailment Cases*, 416 F.3d 787, 793-94 (8th Cir. 2005).  The regulations establish a national railroad safety program intended to promote safety in all areas of railroad operations. *Id.*[7]  Federal and state inspectors determine the extent to which railroads, shippers and manufacturers have fulfilled their obligations with respect to, among other things, inspection, and railroads face civil penalties for violations. *Id.*   It is clear that FRA regulations are intended to prevent negligent track inspection, and there is no indication the FRA intended to leave open a state law cause of action to deter negligent inspection. *Id.*

Earlier, in *Peters v. Union Pac. R.R. Co.*, 80 F.3d 257 (8th Cir. 1996), the Eighth Circuit had found complete preemption with respect to the state law certification claim asserted by the plaintiff, because the FRA had established a comprehensive administrative adjudication system for handling certification disputes which, the Court found, completely preempted the plaintiff's state law claims.  However, in *Chapman v. Lab One*, 390 F.3d 620 (8th Cir. 2004), the Eighth Circuit found no FRSA preemption as to state law claims based upon alleged deficient performance in the drug testing process because " 'the applicable statute and regulations concerning drug testing do not establish an intent to preempt the substantive common law at issue,' where the FRA's drug testing regulations included an anti-waiver provision".  *Lundeen*, 447 F.3d at 613, quoting *Chapman*, 390 F.3d at 628-29.

The *Lundeen* Court concluded that the plaintiffs' state law claims of "negligent inspection of railroad track" were completely preempted because "FRSA track inspection regulations lack the solicitude for state law demonstrated by the anti-waiver clause in *Chapman*." *Lundeen*, at 613-14.  After analyzing the FRA inspection regulations, the *Lundeen* Court then stated:  "It is clear the FRA regulations are intended to prevent negligent track inspection and there is no indication the FRA meant to leave open a state law cause of action." *Id.* at 614.  Thus, to the extent that the plaintiffs' allegations may

---

[6]      See, 49 CFR 213.63 (governing maintenance of track surfaces), § 213.233 and § .237(a)-(c) (track inspections), cited in *Lundeen*, at 614.

[7]      See 49 CFR § 213.2 (FRSA expressly preempts state law).

be interpreted to include allegations of negligent track inspection or track maintenance against the Public Belt (see Petition, ¶ III. 4), those allegations are completely preempted under the analysis of the *Lundeen* court.

As previously noted, in *Hodge*, the District Court, applying the *Lundeen* analysis, found the FRSA completely preempts claims of negligent operation of a train (the allegations against the Public Belt herein). *Id.*, 461 F. Supp. 2d at 1053. The *Hodge* Court also found complete preemption with respect to the plaintiff's state law claims concerning adequacy of warning devices, failure to train employees, and failure to monitor warning devices. *Id.* Similarly, in *Gillenwater v. Burlington Northern and Santa Fe Railway Co.*, 435 F.Supp. 2d 959 (E.D. Mo. 2006), the Court found that the FRSA completely preempted the plaintiff's state law claims of negligent track inspection, design of railroad crossing warning devices, use of locomotive horn, audible safety devices and maintenance and inspection of crossing devices. *Id.* at 960-61. The *Gillenwater* Court stated:

> . . . the Eighth Circuit explicitly found [in *Lundeen*] that preemption under the Federal Railroad Safety Act is complete unless there is a savings clause indicating that Congress meant to leave open a state cause of action. *Id.* at 614. Gillenwater has not pointed to, and I have not found, any savings clause that indicates that Congress meant to leave open a state cause of action with respect to Gillenwater's claims. And the Eighth Circuit noted that " 'complete' preemption is an exception to the well-pleaded complaint rule and, unlike preemption as a defense, is a basis for federal jurisdiction." *Id.* at 611.

Here, as in *Gillenwater*, the plaintiffs have pointed to no savings clause demonstrating Congress' intention to leave open a state cause of action with respect to the plaintiffs' claims.

Other cases are to the contrary. *See, e.g., Duncan v. Kan. City S.Ry. Co.*, 1998 WL 35069621 (W.D. La. 1998) (finding no FRSA complete preemption under the original Fifth Circuit *Aaron* test); *Connolly v. Union Pac. R.R. Co.*, 2006 WL 2794862, *5 (E.D. Mo. 2006) (granting motion to remand, distinguishing *Lundeen*); *Sullivan v.*

*BNSF Ry. Co.*, 447 F.Supp.2d 1092, 1097-99 (D.Az. 2006) (finding no FRSA complete preemption). Each is distinguishable.[8]

In the recent case of *Kutilek v. Union Pacific Rr. Co.*, 454 F.Supp 2d 876 (E.D. Mo. 2006), the plaintiff's decedent had been struck and killed by a Union Pacific train at a railroad crossing, and the plaintiff brought a state court wrongful death action based upon negligence. The railroad removed the action to federal district court, and the plaintiff moved for remand.

Applying the *Lundeen* analysis, the *Kutilek* Court concluded that the plaintiff's claims for negligent operation, failure to monitor audible warning devices, and failure to monitor or install light warnings on the train were completely preempted. *Id.* at 883. To the extent that the plaintiff's claims included additional allegations of negligence, the Court determined that it would exercise supplemental jurisdiction over the non-preempted claims. *Id.* at 884. The District Court in *Hodge* also chose to exercise supplemental jurisdiction over the plaintiffs' state law claims that were not completely preempted. *Id.* at 1053. To the extent there may be claims pleaded against the Public Belt in addition to the claims of negligent operation of a train and negligent track maintenance and inspection (which claims are completely preempted), the Court has supplemental jurisdiction over such claims.

In addition, the plaintiffs' claims are completely preempted because their claims would "unreasonably burden interstate commerce." In evaluating this burden, courts consider "the practical and cumulative impact were other states" to take similar actions. *CSX Transportation, Inc. v. Williams*, 406 F.3d 667, 673 (D.C. Cir. 2005). The Court in *Williams* thus weighed the burden of a proposed local ban on a railroad's shipment of certain types of freight, considering the effect not only of that one jurisdiction's ban but also the possibility of multiple, varying bans throughout the country. The *Williams* Court

---

[8]     The analysis in *Duncan* strictly tracked the *Aaron* three-part analysis, which has since been modified by the Fifth Circuit and overruled, in part, by the Supreme Court's *Grable* decision. The fact pattern in cases like *Connolly* was found to fall outside the "coverage" of the referenced FRA regulations – which, if so, would place the claims outside the scope of preemption, much less complete preemption. The Arizona district court in *Sullivan* noted that the parties had identified for the Court's benefit no FRSA complete preemption authorities – authorities available to this Court. *Sullivan* also applies a Ninth Circuit test – requiring both field and conflict preemption in order for complete preemption to apply – not controlling in this case.

noted: "It would not take many similar bans to wreak havoc with the national system of hazardous materials shipment." *Id.* (citation omitted). The prosecution of civil actions nationwide seeking monetary awards to discipline how a railroad operates its locomotives, and how it repairs, maintains and inspects its rail lines would undermine the system of nationwide uniformity of such practices, and would "wreak havoc" on our nation's rail transportation system.

49 U.S.C. §20106, a preemption provision of the FRSA, specifically authorizes a state to adopt or continue in force an additional or more rigorous law when that law (1) is necessary to eliminate or reduce an essentially local safety or security hazard (2) is not incompatible with a federal law, regulation or order; and (3) does not unreasonably burden interstate commerce. This provision is of no help to the plaintiffs in the instant case. The plaintiffs do not allege that the general state negligence law which they seek to apply to regulate the Public Belt's operation of its trains, and the maintenance, inspection and repair of its tracks, is designed to eliminate or reduce an essentially local hazard; plainly, it is not. Moreover, as set forth above, application of the general law of negligence to operation of a locomotive <u>is</u> incompatible with the FRSA and the regulations adopted pursuant thereto, <u>and</u> application of the general negligence laws would unreasonably burden interstate commerce.

### C. Complete Preemption Under the FRSA in Those Areas Where FRA Regulations have Substantially Subsumed the Subject Matter of State Law is Supported by the *Grable* Decision

The Fifth Circuit has not addressed the issue of complete preemption since the *Grable* decision negated the first prong of the *Aaron* test.

As previously noted, in *Grable* the Supreme Court held that lack of a private right of action under federal law does not divest the court of federal jurisdiction if the state law claim contains a disputed and substantial question of federal law. The *Grable* Court stated:

> Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

*Id.* at 314, 125 S.Ct. at 2368.

Prior to *Grable*, in *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229 (1986), the Court rejected the defendant drug company's argument that the plaintiff's state law tort claim was completely preempted by a federal drug branding law. The plaintiffs alleged that Merrell Dow had violated the federal branding law, which rendered the company presumptively negligent under state law. *Id.* at 806. The Court found that the state law claims were not completely preempted.

In *Grable*, the Supreme Court interpreted *Merrell Dow* not as making a federal cause of action a <u>necessary</u> condition of federal jurisdiction, but rather as viewing a lack of a federal cause of action as one indication of evidence of congressional intent as to federal jurisdiction. *Grable*, at 317-18. The *Grable* Court acknowledged that the rejection of jurisdiction in *Merrell Dow* rested in large part on the Court's recognition that holding that federal jurisdiction existed over a state drug misbranding action would have opened the door to an enormous shift of cases into federal courts, a shift that the Court did not believe Congress intended. *Id.*, at 318-19.

There is no reason to believe that recognition of federal jurisdiction over the limited areas in which state law claims are preempted by the Federal Rail Safety Act will open the federal courts to a tremendous number of cases. Indeed, since *Grable* was decided almost two years ago, only a handful of lower court decisions have recognized complete preemption over some state tort claims based upon the FRSA. No court in the geographic area of the Fifth Circuit has even had occasion to rule upon such a contention. The concerns expressed by the *Grable* Court, with respect to the drug misbranding claims that might have flooded the federal courts had Merrell Dow been decided differently, are not present here.

**D.    The Plaintiffs' Claims For Placement and Operation of Track Are Preempted By the Interstate Commerce Commission Termination Act.**

The plaintiffs' claims are also completely preempted pursuant to the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10101, *et seq.*, which provides a separate and independent basis for removal.

In support of this contention, the Public Belt adopts by reference the argument set forth at pages 9 – 11 of the Opposition to Remand filed by BNSF Railway Company in the instant *Speed* case on February 27, 2007.

### E.    The Plaintiffs' Remand Motion Does Not Support Remand

In seeking remand, the plaintiffs do not grapple with Supreme Court doctrine on complete preemption.  Nor do they address the exclusive regulatory scheme set forth under the FRSA.  Instead, the plaintiffs suggest that the Fifth Circuit, *en banc*, in *Smallwood v. Ill. Cent. R.R.Co.*, 385 F.3d 568 (5th Cir. 2004), held that FRSA is not completely preemptive.  See, unnumbered sixth and seventh pages of the plaintiffs' memorandum in support of motion to remand, Doc. No. 3030-2.  *Smallwood* held no such thing.  In *Smallwood*, the Fifth Circuit addressed a "narrow but not unimportant question regarding diversity jurisdiction . . . and the doctrine of improper joinder."  *Id.* at 571.  To the limited extent it mentioned FRSA preemption, the Court merely noted the district court's finding that ***there was FRSA preemption.***[9]

The plaintiffs next contend (at the unnumbered eighth page of their memorandum) that, for complete preemption to exist, clear Congressional intent that state claims be removable must be shown, relying on *Beers v. North American Van Lines, Inc.* 836 F.2d 910 (5th Cir. 1988) (addressing complete preemption removal under the Carmack Amendment to the Interstate Commerce Act).  But *Beers* has been expressly overruled by the Fifth Circuit on precisely that point.  *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 775 (5th Cir. 2003).  Specifically, *Hoskins* held:  "Because the legal landscape surrounding the complete preemption doctrine has shifted, we are no longer bound by our holding in *Beers*."  *Id.*

---

[9]     *Smallwood* involved a suit by plaintiff Kelli Smallwood against the Mississippi Department of Transportation ("MDOT") and Illinois Central Railroad Company for injuries arising from a railroad accident.  Illinois Central removed the action to federal court, asserting federal jurisdiction based on diversity.  Illinois Central argued that MDOT had been improperly joined because, as a result of the preemptive effect of FRSA, "there was no reasonable possibility of recovery against MDOT."  *Id.* at 572.  The district court agreed, accepted jurisdiction of the case, and found that FRSA also applied to preempt the claims against Illinois Central.  As a result, the district court dismissed the action.  On appeal, the Fifth Circuit, *en banc*, held that because FRSA preemption "equally bars claims against" the diverse defendant and the non-diverse defendant, "it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper."  *Id.* at 574.  In fact, the Fifth Circuit reiterated the district court's finding that FRSA did preempt all of the claims, with the result that "there is no improper joinder; there is only a lawsuit lacking merit."  *Id.*

The plaintiffs' argument, at the unnumbered ninth and tenth pages of their memorandum, that the cases finding preemption under the FRSA are primarily "ordinary conflict preemption" cases, and that "none purport to support removal" is misplaced. As previously noted, the Supreme Court itself found complete removal under the FRSA with respect to a state law claim of excessive train speed in *Easterwood*. In addition, *Lundeen* reversed the District Court's decision to remand the case to state court, and the *Hodge* decision denied the plaintiffs' motion to remand, as did the *Kutilek* and *Gillenwater* decisions.

Complete preemption of the plaintiffs' claims is the correct outcome under the governing Supreme Court precedent, the regulatory scheme enacted by the FRA, and the facts pled by the plaintiffs. FRA regulations establish a comprehensive regulatory regime including operating practices inspection (49 C.F.R. § 212.221), railroad employee safety training (49 C.F.R. §217), and the qualification and certification of engineers to operate locomotives (49 C.F.R. §240), which subsume the plaintiffs' claims that the Public Belt was operating the locomotive negligently. Similarly, 49 C.F.R. § 213.63 and § 213.233 preempt any claims of negligent track inspection or maintenance. Congress explicitly granted exclusive authority to the Secretary of Transportation to impose civil penalties for violations of FRSA regulations, or to recommend that a civil action be brought in the district court to enjoin a violation or collect a civil penalty. 49 U.S.C. § 20111(A). Because FRSA creates the exclusive, federal cause of action for plaintiffs' claims related to negligent operation of a train, that claim is completely preempted by FRSA.

## CONCLUSION

Defendant Public Belt respectfully requests that the Court deny the plaintiffs' Motion to Remand, and exercise its subject matter jurisdiction over this action. The plaintiffs' state law negligence claims against the Public Belt for negligent operation of a train are completely preempted by the FRSA and the regulations adopted pursuant thereto. If the plaintiffs' claims include a claim of failure to maintain or inspect track, those claims are completely preempted as well.

The plaintiffs' claims concerning placement and operation of track are also completely preempted by the Interstate Commerce Commission Termination Act.

If there are any claims that are not completely preempted, the Court should exercise supplemental jurisdiction over those claims.

Respectfully submitted,

HAMILTON, BROWN & BABST

*Galen S. Brown*

GALEN S. BROWN, T.A. (#3556)
KAREN E. MILNER (#8499)
601 POYDRAS STREET, SUITE 2750
NEW ORLEANS, LOUISIANA  70130
TELEPHONE:  (504) 566-1805
FAX:  (504) 566-1569
E-MAIL: gbrown@hamiltonfirm.net

Attorneys for Defendant, Public Belt Railroad Commission for the City of New Orleans

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this  27th day of February, 2007.

*Galen S. Brown*

GALEN S. BROWN