UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | *<br>* | CIVIL ACTION |
| | | * | NO. 05-4182 "K"(2) |
| | | * | |
| LEVEE CASES | | * | |
| | | * | JUDGE DUVAL |
| PERTAINS TO:  06-11208  (Speed) | | * | |
| | | * | MAG. WILKINSON |

**BNSF RAILWAY COMPANY'S OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND**

This memorandum is submitted by the BNSF Railway Company f/k/a the Burlington Northern Santa Fe Railway Company ("BNSF"), in opposition to the plaintiffs' Motion to Remand.  Plaintiffs' motion addresses only the question of whether federal question jurisdiction exists.  The uniquely federal issues raised by plaintiffs' complaint give rise to federal jurisdiction under both the Federal Railway Safety Act ("FRSA") and the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. § 10101, *et. seq.*  Removal was entirely appropriate and plaintiffs' motion should be denied.

1

**INTRODUCTION**

Plaintiffs' claims arise out of flooding in the City of New Orleans following Hurricane Katrina. The claims cast a net that extends well beyond the expanse of any legal duty that could possibly be owed. Plaintiffs also assert claims against BNSF and the New Orleans Public Belt Railroad arising out of a derailment that occurred on September 11, 2004, nearly one year *before* Hurricane Katrina.

Plaintiffs allege that "On Saturday, September 11, 2004, a train locomotive owned by Burlington and operated by NOPBR picked up several railroad cars in the Almonaster/France Road Industrial area of the City of New Orleans, and began proceeding on railroad tracks owned by NOPBR." (Petition for Damages ¶ IV). The Petition further contends that "several cars of the 102-car train derailed at the location of Flood Gate W-30. The derailment began on the tracks owned by NOPBR and extended to tracks owned by another company, CSX Transportation, Inc." (Petition for Damages ¶ IV).

Plaintiffs contend that BNSF was negligent because of the "failure to operate the locomotive carrying the derailed cars with due care" and further as a result of an alleged "failure to direct traffic, including rail traffic, traveling along the railroad tracks that run east-west cross the Industrial Canal near the location of Floodgate W-30." (Petition for Damages ¶ IV, 1.). Plaintiffs' claims, however characterized, either as negligence in the operation of a locomotive, or in the context of the improper placement or direction of rail traffic are completely subsumed by the applicable regulations under both the FRSA and ICCTA.

Because plaintiffs' asserted claims are based exclusively on the operation of a railroad, operation of locomotives, track placement and maintenance, they fall squarely within the context

of the regulations set forth under FRSA and ICCTA.  The allegations of the Petition for Damages therefore give rise to federal question jurisdiction and removal to this court is appropriate.

## ARGUMENT

### A. Jurisdiction Is Conferred On This Court Through Complete Preemption.

Under 28 U.S.C. § 1441, federal question jurisdiction exists in those cases in which a "well pleaded complaint establishes either that federal law creates a cause of action or that the plaintiffs' right to relief necessarily depends on resolution of a substantial question of federal law."  *See* 28 U.S.C. § 1441; *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed. 2d 420 (1983).  "In certain instances, the preemptive force of a federal statute is so complete that it transforms complaints styled as ordinary common-law claims into ones stating a federal claim."  *Peters v. Union Pac. R.R. Co.,* 80 F.3d 257, 260 (8th Cir. 1996).  Complete preemption is an exception to the well pleaded complaint rule and is a basis for federal jurisdiction. *Gaming Corp. of Am. v. Dorsey & Whitney,*  88 F.3d 536 (8th Cir. 1996).

As the Supreme Court noted in *Metropolitan Life Insurance Company v. Taylor*, "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  41 U.S. 58 (1986).  "Once an area of state law has been completely preempted, any claim reportedly based on that preempted state law is considered, upon its inception, a federal claim, and therefore arises under federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987).  A plaintiff cannot thwart the proper removal of a case be inadvertently, mistakenly or fraudulently concealing the federal questions with "artful pleading" of the federal cause of action in state law terms.  *See Rivet v. Regions Bank v.*

3

*Louisiana, et al*, 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed. 2d 912 (1998); *Caterpillar v. Williams, supra*.

The Fifth Circuit has articulated a framework for considering complete preemption in this Circuit. In response to the Supreme Court finding of complete preemption of state claims by the Labor Management Relations Act and the Employment, Retirement and Income Security Act, the Fifth Circuit has established a three part analysis for complete preemption. See *Aaron v. National Union Fire Insurance Company of Pittsburg*, 876 F.2d 1157 (5th Cir. 1989); *Johnson v. Bailey University*, 214 F.3d 630 (5th Cir. 2000).

Under this framework, complete preemption turns on whether: (1) the preemptive statute in question contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for the enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable. *Johnson*, 214 F.3d at 632. Since 2003, in light of more recent Supreme Court pronouncements on complete preemption, the Fifth Circuit has refined the third prong of this analysis and no longer requires Congressional intent that the claims be "removable," but instead focuses on "Congress's intent that the federal action be exclusive." *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 775-76 (5th Cir. 2003); see *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003).[1]

---

[1] The Fifth Circuit's earlier suggestion that the federal statute must create a federal cause of action is not mandated by Supreme Court precedent. Further, in its discussion of the Ninth Circuit decision overturned in *Caterpillar*, one finds a suggestion that the Supreme Court might reject such an approach:

> The Court of Appeals also appears to have held that a case may not be removed to federal court on the ground that it is completely pre-empted unless the federal cause of action relied upon provides the plaintiff with a remedy . . . . This analysis is squarely contradicted by our decision in Avco Corp . . . . We there held that a [LMRA] claim was properly removed to federal court although at that time, the relief sought by the plaintiff could be obtained only in state court. 482 U.S. at 391 n.4.

4

### B. Congress Clearly Intended To Preempt State Law Claims Under The FRSA.

The FRSA establishes a federal regulatory scheme designed to mandate uniform railroad regulations. In the context of that scheme, Congress expressed a clear intent to establish uniform exclusive regulations that preempt state law. Under 49 USC § 20106, the FRSA provides that "laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." The Supreme Court has held that the FRSA preempts state law claims when "the federal regulations substantially subsume the subject matter of the relevant state law. See *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993); *Peters v. Union Pacific Railroad Company*, 80 F.3d 257 (8th Cir. 1996).

In enacting the FRSA, Congress assigned the Secretary of Transportation "exclusive authority to impose . . . a civil penalty for violation of a railroad safety regulation . . . and to recommend [civil district court] action be taken." 49 U.S.C. § 20111(a). Plaintiffs' contentions are directly and substantially subsumed by Congress's intent to create a nationally uniform standard in these spheres of railroad safety, enforceable by the Department of Transportation. This aspect of the claim against the Railroad Defendants is therefore completely preempted, justifying removal.

Congress has, therefore, created the exclusive federal remedy required by the Fifth Circuit in those spheres of railroad safety for which (a) it has authorized the Department of Transportation to issue regulations mandating specific standards directed at railroad safety, and (b) the agency in fact has issued such controlling regulations. The plaintiffs' claims are "substantially subsumed" by directly applicable FRA regulations that establish a nationally uniform system for track inspection, repair, maintenance and operation of rail traffic. *See, e.g.*,

5

49 C.F.R. § 213.2 (FRSA expressly preempts state law); § 213.63 (governing maintenance of track surfaces); § 213.233 (track inspections); § 215.13 (pre-departure freight car inspections); § 215.15 (periodic freight car inspections). *See also Lundeen v. Canadian Pac. Ry. Co.*, 447 F.3d 606, 614 (8th Cir. 2006).

Each railroad safety claim must be assessed individually to determine whether the Secretary of Transportation has, under its express FRSA authority, directly regulated in that area to ensure uniform safety policies and standards. The claims asserted by plaintiffs exclusively involve the operation of a locomotive and the direction of rail traffic at the time of the derailment in September 2004. (Petition ¶ IV, 1). In fact, in plaintiffs' opposition to the BNSF 12(b)(6) motion, they repeatedly contend that the asserted claims are based on the operation and maintenance of locomotives. (*see* Doc. 3227). Plaintiffs cannot have it both ways. The claims associated with these areas are uniquely federal and arise solely under the regulation enacted through the authority of the FRSA.

The Fifth Circuit has not yet addressed the complete preemption issue in the context of the FRSA, but other circuits have held that similar claims are completely preempted and therefore give rise to federal question jurisdiction. *See Peters v. Union Pacific R.R. Co.,* 80 F.3d 257, 262 (8th Cir. 1996).[2] The recent Eighth Circuit ruling in *Lundeen v. Canadian Pac. Ry. Co.,* 447 F.3d 606 (8th Cir. 2006), is also directly on point in the context of complete preemption of claims arising under FRSA regulations. There, the Eighth Circuit held that, despite plaintiffs' amendment of their Complaint to remove all references to federal statues, "the district court

---

[2] While plaintiffs attempt to discredit the relevance of *Peters* by characterizing it as an exhaustion of administrative remedies case, this mischaracterizes the Eighth Circuit's decision. In reaching the question of whether Peters' claim implicated issues of railroad safety, and thus involved certain administrative remedies, the court was required "to define the preemptive scope of the FRSA." In so doing, it determined that FRSA "on its face provides for broad preemption" and that "any issue raised [in an area directly addressed by FRSA regulations] is a federal issue justifying removal." 80 F.3d at 262.

6

continues to have jurisdiction *through complete preemption of the state law claim of negligent inspection.*" *Id.* At 611 (emphasis added).

In reconciling its previous holdings in *Peters* (finding complete FRSA preemption) and *Chapman v. Lab One.,* 390 F.3d 620 (8th Cir. 2004) (finding no complete FRSA preemption), the Eighth Circuit in *Lundeen* noted that "complete preemption turns first on the Secretary of Transportation's regulations 'covering the subject matter of the State Requirement' and then any given regulations 'covering the subject matter of the State Requirement' and then any given regulation's solicitude for state law." *Id.* At 613.  The drug testing regulation at issue in *Chapman* demonstrated "solicitude for state law" in an anti-waiver clause in the regulation and had "specifically contemplated the existence of a common-law cause of action for negligence." *Id.* at 613-14.  In contrast, "FRSA track inspection regulations lack" such solicitude for state law, "are intended to prevent negligent track inspection nationally and contain no savings clause." *Id.* The court therefore found **"complete, jurisdictional, preemption"** over the plaintiffs' negligent inspection claims. *Id.*

Even more specifically as it relates to the claims asserted here, the complete preemption of claims based on the negligent operation of a locomotive was addressed in  *Hodge v. Burlington Northern & Santa Fe Railway Co.*, 461 F.Supp 2d. 1044, 1053 (E.D. Mo.), where the court specifically found the plaintiff's state law claim for negligent operation of the train to be completely preempted by the FSRA.  Recovery for the manner in which the subject locomotive was operated at the time of the derailment is specifically and completely preempted by the FRSA regulations.

Also, in *Kutilek v. Union Pacific Rr. Co.*, 454 F.Supp 2d 876 (E.D. Mo. 2006), the district court considered the issue of complete preemption in the context of a railroad grade crossing

7

incident.  The court held that claims for negligent operation, failure to monitor audible warning devices, and failure to monitor or install light warnings on the train were completely preempted. *Id.* at 883.  Moreover, to the extent that the plaintiff's claims included additional allegations of negligence, the Court determined that it would exercise supplemental jurisdiction over the non-preempted claims.  *Id.* at 884.  The District Court in *Hodge* also chose to exercise supplemental jurisdiction over the plaintiffs' state law claims that were not completely preempted.  *Id.* at 1053.

In the wake of *Lundeen*, other district courts have denied motions to remand, finding complete preemption by FRSA and hence federal jurisdiction over claims pled under state tort law.  *See Gillenwater v. Burlington No. & Santa Fe Ry. Co.,* 435 F.Supp.2d 959, 960-61 (E.D. Mo. 2006) (denying motion to remand state claims where claims were "**completely preempted** by the FRA regulations" that "govern the safety issues raised … in the complaint" (emphasis added)); *Olberding v. Union Pac. R.R. Co.,* 2006 WL 2827648, *2 (W.D. Mo. 2006) (denying remand because "plaintiffs' [negligence] claims are **completely preempted** by the FRA regulations and defendant's removal of the case was therefore proper" (emphasis added).[3]

Complete preemption is the correct outcome under governing Supreme Court  precedent, under the facts pled in this case, and under the regulatory scheme established by FRSA.  FRSA regulations establish a comprehensive regulatory regime related to operation, maintenance and inspection of locomotive equipment.  Congress explicitly granted exclusive authority to the Secretary of Transportation to impose civil penalties for violations of FRSA regulations, or to

---

[3] In comparable situations involving similar state-law negligence allegations, courts have found complete preemption by FRSA.  *See, e.g Fed. Ins. Co. v. Burlington No. & Santa Fe Ry. Co.,* 270 F. Supp. 2d 1183, 1187-88 (C.D. Cal. 2003) ("maintenance, repair, and inspection of track conditions is directly and comprehensively covered by FRSA . . . thus, it is preempted."); *Mehl v. Canadian Pac. Ry. Ltd.,* 417 F. Supp. 2d 1104, 1116-17 (D.N.D. 2006) (FRSA preempts state law negligent inspection, construction, operation and maintenance claims).

recommend that a civil action be brought in the district court to enjoin a violation or collect a civil penalty. 49 U.S.C. § 20111(A).

Plaintiffs' seek recovery for damages caused by the negligent operation of a locomotive at the time of a derailment. The use, operation, maintenance and inspection of locomotive equipment is heavily and exclusively regulated by the FRSA. Plaintiffs' claims are uniquely federal and the uniformity sought by Congress in the enactment of the FRSA is directly implicated by plaintiffs' attempt to seek recovery in state court. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the plaintiffs' claims, though couched in terms of state law, are in fact attempts at regulation of railroad safety and are completely preempted by the FRSA. Removal was thus proper pursuant to 28 U.S.C. §§ 1441(a), (b), and (c).

### C. Plaintiffs' Claims For Placement And Operation Of Track Are Preempted Under The ICCTA.

As a separate and independent basis for removal, the plaintiffs' claims give rise to complete preemption under the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. § 10101, *et. seq*. Plaintiffs specifically seek recovery for the movement and direction of rail traffic in the location of the derailment. (Petition, IV, 1(f)). The Interstate Commerce Act also regulates the rail industry as it relates to routes, transportation and operating rules, and the ICCTA is now recognized as 'among the most pervasive and comprehensive of federal regulatory schemes.' *Rushing, supra. quoting Chicago & Northwest Transportation Company v. Kalo Brick & Tile Company*, 450 U.S. 311, 318 (1981).

In furtherance of this purpose, the ICCTA contains a jurisdictional section granting exclusive jurisdiction to the Surface Transportation Board over nearly all matters of railroad

9

regulation.  *Maynard*, 360 F.Supp. 2d 836, 839; *Cedarapids, Inc. v. Chicago Central & Pacific Railroad Company*, 265 F.Supp.2d 1005 (N.D. Iowa 2003).

> The jurisdiction of the Board over - -
>
> (1) *transportation by rail carriers*, and the remedies provided in this part with respect to rates, classifications, *rules (including car service, interchange, and other operating rules), practices, routes, services and facilities of such carriers*; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one state,
>
> *is exclusive.*  Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are *exclusive and preempt the remedies provided under Federal or State Law.*

49 U.S.C. § 10501(b) (2002) (emphasis added).[4]  The preemptive effects of this provision are, by design, broader than provisions contained in earlier railroad statutes. *New England Central Railroad, Inc. v. Springfield Terminal Railway Company and Boston and Maine Corporation*, 2006 WL 266528 (D. Mass), -- F.Supp.2d --.  Indeed, as several courts have now noted, it "is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *CSX Transporation, Inc. v. Georgia Public Service Commission*, 944 F.Supp. 1573, 1581 (N.D. Ga. 1996); *Guckenberg v. Wisconsin Central Limited*, 178 F.Supp.2d 954, 958 (E.D. Wisc.); *New England Central Railroad, Inc. v. Springfield Terminal Railway Company*, 2006 WL 266528 (D. Mass.).

---

[4] In *Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturers*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed. 2d 257 (2005), the Supreme Court noted that "a state law claim could give rise to federal-question jurisdiction so long as it 'appears from the [complaint] that the right to relief depends upon the construction or application of [federal law].' " *Id.* at 313, 125 S. Ct. at 2367, quoting *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 41 S.Ct. 243 (1921).  In *Grable*, the Court held that the lack of a private right of action under federal law does not divest the court of federal jurisdiction when a state law claim contains a disputed and substantial question of federal law, as long as doing so will not disturb the balance of federal and state judicial responsibilities. *Id.* at 314, 125 S.Ct. at 2368.

Recently, the Fifth Circuit evaluated whether the ICCTA jurisdictional provisions resulted in complete preemption and thus federal jurisdiction.  See *PCI Transp., Inc. v. Forth Worth & W.R.R. Co.*, 418 F.3d 535, 544-45 (5th Cir. 2005).   In *PCI Transportation*, the Fifth Circuit held that non-contractual claims for injunctive relief were completely preempted by the Interstate Commerce Clause Termination Act ("ICCTA"), thereby justifying removal.  In particular, with regard to the *PCI* action, ICCTA provides that exclusive jurisdiction over actions regarding railroad "rates, classifications, rules . . . practices, routes, services, and facilities" rests with the Surface and Transportation Board of the Department of Transportation.  49 U.S.C. § 10501(b)(1).   Noting that the recent Supreme Court precedent "makes finding complete preemption easier," *PCT Transp.*, 418 F.3d at 544, n.32, the Fifth Circuit found ICCTA's regulatory scheme sufficient to meet the requirement for complete preemption on the facts before it. *Id.*

Here, plaintiffs assert claims based on the alleged failure to properly direct or manage a rail route in the Greater New Orleans area.  The specific basis for recovery as set forth in the complaint is based on the alleged negligent failure "to direct traffic (including rail traffic)." (Petition IV, 1).  The gravamen of the plaintiffs' claim against BNSF is the alleged negligent operation of a rail route in this location. (Petition IV, 1).  The claims fall squarely within the regulatory authority of the Surface Transportation Board, which governs the "practices, routes and services" of rail carriers,  49 U.S.C. § 10501(b)(1).  Like the claims asserted in *PCI Transp.*, plaintiffs' claims are therefore removable on the basis of federal question jurisdiction.

## CONCLUSION

Plaintiffs assert claims for negligence in the operation of a locomotive and the management of an interstate rail route. Those claims arise exclusively under federal law, and the Congressional interest in uniformity in this completely preempts any attempt by plaintiffs to regulate the railroad industry in this area through state law tort claims. Removal was appropriate and plaintiffs' motion to remand should be denied.

>
> Respectfully submitted,
> **FRILOT, PARTRIDGE, L.C.**
>
> /s/ Michael R. Phillips
> **PATRICK A. TALLEY, JR. (#1616)**
> **MICHAEL R. PHILLIPS (#21020)**
> **CARL E. HELLMERS, III (#25705)**
> 1100 Poydras Street, Suite 3600
> New Orleans, LA 70163
> Telephone: (504) 599-8000
> Facsimile: (504) 599-8100
> **Counsel for BNSF Railway Company f/k/a Burlington Northern and Santa Fe Railroad Company**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 27th day of February, 2007 served a copy of the foregoing on all counsel of record via facsimile and/or by the United State Postal Service properly addressed and postage prepaid.

> /s/ Michael R. Phillips