# EXHIBIT 1

34TH JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. BERNARD

STATE OF LOUISIANA

DOCKET NO: 107-436                                               DIVISION: "E"

SANDRA LOPEZ, INDIVIDUALLY AND ON BEHALF OF
HER MOTHER JANET MARIE PARKER, DECEASED

VERSUS

SALVADOR A. MANGANO, MABEL B. MANGANO, MANGUEST, INC., MANGANO
CONSULTANTS, INC., MANGANO MANAGEMENT, INC.,
MANACA, INC., BUFFMAN, INC., THE MANGANO CORPORATION,
ABC INSURANCE COMPANY AND ST. RITA'S NURSING HOME

FILED: 11-29-06                                    /s/ Betty Berne
                                                        DEPUTY CLERK

## THIRD PARTY DEMAND

NOW INTO COURT through undersigned counsel, come Third Party Plaintiffs, Salvador A. Mangano, Mabel B. Mangano, and Buffman, Inc. a/k/a St. Rita's Nursing Home, who for their Third Party Demand against: the United States of America, Kathleen Blanco, in her official capacity as Governor of the State of Louisiana; State of Louisiana, Department of Transportation and Development; Johnny Bradberry, in his official capacity as Secretary, Louisiana Department of Transportation and Development; State of Louisiana, Department of Health and Hospitals; Frederick P. Cerise, M.D., in his official capacity as Secretary, Department of Health and Hospitals; State of Louisiana, Office of the Attorney General; Charles Foti, in his official capacity as Attorney General, State of Louisiana; the Lake Borgne Basin Levee District; and Henry J. Rodriguez, in his official capacity as President, Parish of St. Bernard, respectfully aver as follows:

I.

Third Party Plaintiffs bring this Third Party Demand pursuant to Article 1111 of the Louisiana Code of Civil Procedure.

II.

On August 29, 2005, Hurricane Katrina passed through St. Bernard Parish, the effects of which caused significant breaches in the Lake Borgne Basin Levee system resulting in flooding of the entire parish. As a consequence of this catastrophic flooding,

St. Rita's Nursing Home, which is owned and operated by defendant Buffman, Inc., was severely damaged and thirty five residents of the home perished.

III.

The original petition filed against the Third Party Plaintiffs, alleges, among other things, that they negligently failed to evacuate St. Rita's Nursing Home prior to the storm making landfall. Third Party Plaintiffs have denied and continue to deny any negligence on their part.

IV.

Third Party Plaintiffs bring this third party demand seeking indemnity and/or contribution in tort from third party defendants in the event that Third Party Plaintiffs are cast in judgment herein. Third Party Plaintiffs also bring this action seeking apportionment of liability as mandated by Article 2324 of the Louisiana Civil Code.

V.

Made Third Party Defendants are the following:

(a) The United States of America;

(b) Kathleen Blanco, in her official capacity as Governor of the State of Louisiana;

(c) State of Louisiana, Department of Transportation and Development;

(d) Johnny Bradberry, in his official capacity as Secretary, Louisiana Department of Transportation and Development;

(e) State of Louisiana, Department of Health and Hospitals;

(f) Frederick P. Cerise, M.D., in his official capacity as Secretary, Louisiana Department of Health and Hospitals;

(g) State of Louisiana, Department of Justice, Office of the Attorney General;

(h) Charles Foti, in his official capacity as Attorney General, State of Louisiana;

(i) the Lake Borgne Basin Levee District, which is a political subdivision of the State of Louisiana; and

2

(j)   Henry J. Rodriguez, in his official capacity as President, Parish of St. Bernard.

## CLAIMS AGAINST DEPARTMENTS AND OFFICIALS OF THE STATE OF LOUISIANA

VI.

On or about July 11, 2005, Governor Blanco adopted the Louisiana Emergency Operations Plan by Executive Order KBB 2005-18. Defendants Bradberry, Foti and Cerise were also signatories to the Emergency Operations Plan ("EOP"). In addition to the terms of the EOP itself, the EOP incorporated as a separately published supplement the Southeast Louisiana Hurricane and Evacuation Plan (Supplement 1A).

VII.

The EOP mandates the responsibilities of state officials and agencies in the event of an emergency. The EOP "assigns responsibilities for actions and tasks that the State will take to provide for safety and welfare of its citizens against the threat of natural disasters." (EOP, at Section I, page 1)

VIII.

Governor Blanco declared a state of emergency on the evening of August 26, 2005 as Hurricane Katrina approached, thus triggering the provisions of the EOP.

IX.

Pursuant to the EOP, Governor Blanco was charged with the "overall responsibility for emergency management in the state." (EOP, at Section IV, page 7). The Governor is also responsible for the coordinated delivery of all emergency services, public, quasi-volunteer, and private, during a natural, technological and/or national security emergency/disaster situation. (EOP, at Section V, page 9). By reason of her overall responsibility for emergency management, Governor Blanco had an obligation to make sure that the State was in compliance with its own EOP. By reason of the failures to follow the EOP, which are detailed below, Governor Blanco failed to discharge her overall responsibility for emergency management and such failure caused and/or

contributed to the damages alleged by the plaintiffs, and for which Third Party Plaintiffs deny liability.

X.

Pursuant to the EOP, State departments, agencies and offices are required to carry out the responsibilities designated in Attachment 3 to the EOP, which is entitled "State Agency Emergency Support Functions ("ESF")." The EOP requires that these departments or agencies, including defendants Department of Transportation and Development, Department of Health and Hospitals, and Department of Justice, Office of the Attorney General, "organize, supervise and coordinate all the activities that take place in its functional area." (EOP, at Section IV, page 7).

XI.

ESF 1 imposes primary responsibility for emergency transportation on the Louisiana Department of Transportation and Development ("LDOTD"). ESF imposed a duty on LDOTD to designate a coordinator to "develop plans and procedures to mobilize transportation and support emergency evacuation for at risk populations." (ESF 1, at Section III(B)(1))

XII.

Upon information and belief, LDOTD did nothing to carry out the responsibilities imposed upon it under the EOP and ESF 1. LDOTD did nothing to provide transportation to persons at risk to permit them to evacuate prior to Hurricane Katrina. LDOTD did nothing to mobilize transportation and support emergency evacuation for the residents of the St. Rita Nursing Home. Johnny Bradberry, Secretary, has admitted in testimony before the United States Congress that he failed to carry out the responsibilities imposed on his department by the EOP. Secretary Bradberry's admitted inaction and failure to act caused and/or contributed to the damages alleged by the plaintiffs and for which Third Party Plaintiffs deny liability.

XIII.

ESF 13 deals with Public Safety and Security. Pursuant to this ESF, the Louisiana Department of Justice ("LDOJ") "ensures that operations are taken in

4

accordance with the legal authority of the state." (ESF 13, at Section III). Pursuant to this language, the Department of Justice, Office of the Attorney General, had the responsibility to monitor the compliance of other departments with the EOP. Appendix 2 to ESF 13 shows that with respect to safety and security, all other state departments, including LDOTD, reported to and assisted the Department of Justice.

XIV.

Upon information and belief, the Department of Justice and third party defendant Foti failed to carry out their duties and responsibilities under ESF 13 in that they did nothing to monitor and assure compliance by LDOTD and the Louisiana Department of Health and Hospitals with their obligations under the EOP. Such failures caused and/or contributed to the damages alleged by the plaintiffs and for which Third Party Plaintiffs deny liability.

XV.

Supplement 1A to the EOP is the Southeast Louisiana Hurricane Evacuation Plan. Pursuant to this Plan, the Louisiana Department of Health and Hospitals ("LDHH") was charged with the responsibility to "coordinate the evacuation and sheltering of people who have special medical and health needs." (Page 11) The plan further imposed a duty on LDHH to "call all nursing homes and other custodial care organizations in risk areas to make sure they are prepared to evacuate their residents." (Page 17) This Plan also required that once evacuation was recommended, LDHH was required to "mobilize State transportation resources to aid in the evacuation of people who have mobility and/or health problems." (Page 19)

XVI.

Upon information and belief, LDHH and defendant Cerise did not comply with the provisions of this Plan. They did not call St. Rita's Nursing Home as required by the Plan, and offered no State transportation resources to evacuate the residents of St. Rita's Nursing Home. Such failures on the part of LDHH and Secretary Cerise caused and/or contributed to the damages alleged by the plaintiffs and for which the Third Party Plaintiffs deny liability.

5

XVII.

By reason of their breaches of the EOP, and the failure of the State or its agencies to offer transportation resources to at-risk residents, should Third Party Plaintiffs be cast in judgment herein, then defendants Blanco, LDTOD, LDOJ, LDHH, Bradberry, Foti and Cerise are liable to the Third Party Plaintiffs by way of indemnity or contribution in tort pursuant to Articles 2315 and 2324 of the Louisiana Civil Code.

## CLAIMS AGAINST THE LAKE BORGNE BASIN LEVEE DISTRICT

XVIII.

The Lake Borgne Basin Levee District was created by Act of the Louisiana Legislature codified at L.R.S. 38:327. Pursuant to this Act, the Board was granted the authority to establish adequate drainage and flood control in St. Bernard Parish and other areas within its jurisdiction. The Act specifically granted to the Lake Borgne Basin Levee District authority to erect flood control works as they relate to tidewater flooding, hurricane protection and saltwater intrusion.

XIX.

By law, all levee districts, including The Lake Borgne Basin Levee District, are required to engage in flood protection and in the construction and maintenance of levees. L.R.S. 38:325. By law, all levee districts and their commissioners, including this third party defendant, have the responsibility for the care and inspection of levees. L.R.S. 38:301(B).

XX.

The levees protecting St. Bernard Parish and St. Rita's Nursing Home failed in some instances during Hurricane Katrina, and were overtopped in others. Following the storm, it was determined by independent engineers that the levees in St. Bernard Parish had subsided significantly since their initial construction. These independent studies concluded that this change in elevation also caused and contributed to the failure and overtopping of levees in St. Bernard Parish. A principal author of one of these studies,

6

Professor Robert Bea of the University of California, has stated publicly that these elevation changes were ignored.

XXI.

Third Party Plaintiffs aver upon information and belief that the Lake Borgne Basin Levee District failed to discharge its statutorily mandated responsibilities as respects flood control and maintenance of levees, and such failure caused and/or contributed to the damages alleged by the plaintiff and for which Third Party Plaintiffs deny liability. Pursuant to Articles 2315 and 2317 of the Louisiana Civil Code, the Lake Borgne Basin Levee District is liable to Third Party Plaintiffs by way of indemnity or contribution in tort should Third Party Plaintiffs be cast in judgment herein.

## CLAIMS AGAINST HENRY J. RODRIGUEZ, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF ST. BERNARD PARISH

XXII.

By law, a local disaster or emergency may only be declared by a parish president. Any such order which declares a local emergency must be given prompt and general publicity and must be filed with the office of emergency preparedness and the office of the clerk of court. L.R.S. 29:727 (D). Once such an order is issued, the parish president also has the authority to direct and compel the evacuation of all or part of the population from the stricken or threatened area.

XXIII.

No written mandatory evacuation order was issued by Mr. Rodriguez or his designee as Hurricane Katrina approached. It is unclear whether any verbal mandatory evacuation order was ever given. If such a verbal order was given, then Mr. Rodriguez failed in his duty to give prompt and general publicity, as third party plaintiffs were never informed of any mandatory evacuation order. Mr. Rodriguez also failed in his responsibility to issue a written order as required by law or to appoint a nominee to do so in the event of his incapacity and inability to perform that responsibility.

XXIV.

Should Third Party Plaintiffs be cast in judgment herein for a failure to evacuate St. Rita's Nursing Home, then Third Party Plaintiffs aver that such failure was caused or contributed to by the failure of third party defendant Rodriguez to timely issue an evacuation order, or alternatively, in failing to put such order in writing and to assure dissemination of such order to Third Party Plaintiffs. By reason of such failure, third party defendant, Rodriguez, is liable to Third Party Plaintiffs by way of indemnity and/or contribution pursuant to Article 2315 of the Louisiana Civil Code.

**CLAIMS AGAINST THE UNITED STATES OF AMERICA**

XXV.

These claims for indemnity or contribution are brought against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671 *et seq.* As this is filed as a Third Party Demand, the requirement that Third Party Plaintiffs first exhaust their administrative remedies is waived by statute. 28 U.S.C. § 2675(a). Moreover, this third party claim may be brought in a state court, subject to the right of the United States to remove the entire action. *Hassan v. Louisiana Department of Transportation & Development*, 923 F.Supp. 890 (W.D.La. 1996).

XXVI.

Venue is proper in the Parish of St. Bernard in that the claims giving rise to this third party action occurred in this parish.

XXVII.

The United States of America has waived its sovereign immunity in connection with these claims under 28 U.S.C. §2674 and 28 U.S.C. §1346(b).

XXVIII.

The Mississippi River Gulf Outlet ("MRGO") is a man-made navigational channel connecting the Gulf of Mexico to the City of New Orleans. Construction of the waterway was approved by Congress under the Rivers and Harbors Act in 1956. The construction was carried out by an instrumentality of the United States of America, the United States Army Corps of Engineers ("Corps of Engineers") in 1965.

XXIX.

The MRGO was originally designed to have a width of 650 feet and a depth of 36 feet. The waterway was constructed in the shallow marsh areas of St. Bernard Parish and the Chandeleur Sound. One of the primary justifications for the construction of the waterway was as a short-cut for vessels to enter the Port of New Orleans.

XXX.

The MRGO had known and foreseeable impacts on the environment of St. Bernard Parish. Over time, the waterway caused the loss of thousands of acres of wetlands, including brackish marsh, saline marsh, and cypress swamps and forests. Over time and due to dredging activities done by the Corps of Engineers, the MRGO expanded in size, to a width in some places of over 2000 feet. By 2005, this soil erosion, when coupled with the loss of wetlands, made the MRGO a conduit for storm surge and greatly increased the risk of flooding in the interior sections of St. Bernard Parish.

XXXI.

Wetlands such as those destroyed since the opening of the MRGO provide a natural barrier against tidal surge from storms and hurricanes. Wetlands loss from the construction and maintenance of the MRGO have made St. Bernard Parish and Third Party Plaintiffs' nursing home facility more vulnerable to the effect of storm surge. This was evident as early as 1965, when Hurricane Betsy created a tidal surge that moved up the MRGO and breached levees in Orleans Parish. Third Party Plaintiffs' facility was not flooded by Hurricane Betsy. By 2005, however, the MRGO had expanded and caused erosion of wetlands that acted as a means for tidal surge to directly enter the populated areas of St. Bernard Parish.

XXXII.

On August 29, 2005, levees along the MRGO were breached in several different places in St. Bernard Parish where wetlands had been lost. These levees were also overtopped due to the magnitude of the storm surge that was not absorbed and

9

lessened by the wetlands that previously had protected St. Bernard Parish. In areas where the wetlands had not been lost, the levees were not breached.

### XXXIII.

On the morning August 29, 2005, a massive storm surge traveled from Lake Borgne and the Gulf of Mexico via the MRGO, causing the destruction of the levees protecting the St. Rita Nursing Home from flooding. The magnitude of the storm surge was amplified by the presence of the MRGO and its environmental impacts. The storm surge and destruction of the levees in turned caused catastrophic flooding in St. Bernard Parish.

### XXXIV.

The St. Rita's Nursing Home sits on what is relatively high ground for St. Bernard Parish. Despite its elevation, on the morning of August 29, 2005, the facility became inundated in a matter of minutes to a depth of some six feet. Upon information and belief, Third Party Plaintiffs aver that their facility would not have flooded, and the plaintiff's decedent would not have perished but for the presence of the MRGO and its environmental impacts.

### XXXV.

The United States of America owed a duty of reasonable care to Third Party Plaintiffs which was breached by the construction and maintenance of the MRGO. In addition, the United States of America negligently concealed from Third Party Plaintiffs that the construction and maintenance of the MRGO had greatly enhanced the possibility that their facility, which did not flood during Hurricane Betsy, would flood during Hurricane Katrina. By reason of these acts of negligence, the United States of America is liable to Third Party Plaintiffs by way of indemnity and/or contribution should they be cast in judgment herein.

**WHEREFORE**, Third Party Plaintiffs pray that process in due form of law may issue, citing the Third Party Defendants to appear and answer within the time prescribed by law, and that after due proceedings are had, that there be judgment in favor of Third Party Plaintiffs, dismissing the original petition at petitioners' cost;

alternatively, should Third Party Plaintiffs be cast in judgment herein, they pray that they may recover against Third Party Defendants by way of indemnity and/or contribution, together with all costs of these proceedings.

RESPECTFULLY SUBMITTED:

WYNNE, GOUX & LOBELLO

BY: *Martha D. Bowden*
Jeremy D. Goux, Esq./LBRN 25065
Martha D. Bowden LBRN 28316
417 North Theard Street
Covington, Louisiana 70433
Telephone: (985) 898-0504
Facsimile: (985) 898-0840
Email: wgllawfirm@bellsouth.net

EMMETT, COBB, WAITS & HENNING
James A. Cobb, Jr. (La. 4213)
Susan E. Henning (La. 6793)
Louis G. Spencer (La. 26520)
1515 Poydras Street, Suite 1950
New Orleans, Louisiana 70112
Telephone: (504) 581-1301
Facsimile: (504) 581-6020

**PLEASE SERVE:**

**The United States of America**
Service Pursuant to Rule 4, F.R.C.P.

Serve a copy on:
(1) **James Letten**
United States Attorney
Eastern District of Louisiana
500 Poydras Street, Suite B210
Hale Boggs Federal Building
New Orleans, Louisiana 70130

By Certified Mail by defendants to:

Alberto R. Gonzales
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

(2) **Kathleen Blanco**
Governor of the State of Louisiana
Service pursuant to La.Code Civ.Pro. Art. 1265,
L.R.S. 13:5107 and L.R.S. 39:1538

A TRUE COPY
Lena R. Torres
CLERK OF COURT
PARISH OF ST. BERNARD
STATE OF LOUISIANA

By */s/ Susan Randazzo*
DEPUTY CLERK
/S/Susan Randazzo

11

900 Third Street, Office of the Governor
Baton Rouge, Louisiana 70802

**(3) Louisiana Department of Transportation and Development**
1201 Capitol Access Road
Baton Rouge, Louisiana 70804

**(4) Johnny Bradberry**
1201 Capitol Access Road Room 302O
Baton Rouge, Louisiana 70804

**(5) Louisiana Department of Justice, Office
of the Attorney General, Charles Foti**
Capitol Building, 22nd Floor
Baton Rouge, Louisiana 70804

**(6) Louisiana Department of Health and Hospitals**
628 North Fourth Street
Baton Rouge, Louisiana 70802

**(7) Frederick P. Cerise, M.D.**
628 North Fourth Street
Baton Rouge, Louisiana 70802

In order to comply with L.R.S. 13:5107 and L.R.S. 39:1538,
Please also serve on behalf of all State of Louisiana defendants:

**(8) Charles C. Foti**
Capitol Building, 22nd Floor
Baton Rouge, Louisiana 70804

and through:

**(9) Office of Risk Management**
1201 North Third Street
Baton Rouge, Louisiana 70802

**(10) Lake Borgne Basin Levee District**
Through Robert Turner
6136 E. St. Bernard Highway
Violet, Louisiana 70092

**(11) Henry J. Rodriguez**
8201 West Judge Perez Drive
St. Bernard Government Complex
Chalmette, Louisiana 70043