UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES * | CIVIL ACTION |
| CONSOLIDATED LITIGATION * | |
| * | NUMBER 05-4182 |
| * | |
| _____ * | SECTION "K" (2) |
| * | |
| LEVEE CASES * | |
| PERTAINS TO: 06-11208 * | JUDGE DUVAL |
| (Speed) * | |
| * | MAGISTRATE WILKINSON |
| * * * * * * * * * * * * * * * * * * * * * * * * | |

REPLY OF THE PUBLIC BELT RAILROAD COMMISSION
FOR THE CITY OF NEW ORLEANS IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(b)(6)

The plaintiffs' "Omnibus Memorandum In Opposition to Motions to Dismiss filed by BNSF Railway Company and Public Belt Railroad Commission for the City of New Orleans" (the "Plaintiffs' Opposition"), Document No. 3227, seems to assert three different defenses to the Motion to Dismiss of the Public Belt Railroad Commission for the City of New Orleans (the "Public Belt").[1]

First, at pp. 1-3 of their Opposition, the Plaintiffs argue that they have sufficiently alleged a claim because they alleged, at ¶ IV. 1 of their state court removed Petition (hereafter "Complaint"), that "BNSF's and Public Belt's negligent operation of the locomotive is a proximate cause of Plaintiffs' damages . . ." Plaintiffs' Opposition, p. 1.

---

[1] The Plaintiffs' Opposition also addresses matters that were put at issue only by the Motion to Dismiss filed by BNSF Railway Company ("BNSF"), including class action issues and factual issues concerning ownership of the locomotives involved in the September 11, 2004 train derailment. The instant Reply on behalf of the Public Belt does not address those issues which relate only to the BNSF motion.

Next, at pp. 3-6 of their Opposition, the plaintiffs argue that even if BNSF and the Public Belt had no duty to repair the floodgate or protect plaintiffs from flooding, nevertheless those defendants had a duty to operate the locomotive and railcars in a safe manner and to prevent any accident. Thus, according to the Plaintiffs, they have sufficiently alleged a claim because they alleged BNSF and the Public Belt violated the duty to operate the locomotive and the railcars in a safe manner, and further alleged that the violation of <u>that</u> duty rendered BNSF and the Public Belt liable for the Plaintiffs' damages from the flood eleven months later.

Finally, at pp. 6-7 of their Opposition, the Plaintiffs argue that federal preemption does not appear on the face of the Plaintiffs' Complaint, but is rather an affirmative defense and does not provide the basis for a motion to dismiss.

A. **Because the Public Belt and BNSF Have No Duty to Protect Plaintiffs From Flooding, and No Duty to Construct, Repair or Maintain Flood Control Systems, The Motions to Dismiss Are Due to Be Granted.**

The Plaintiffs virtually concede "that BNSF and Public Belt . . . had no duty [to] repair the floodgate or to protect Plaintiffs from flooding." Plaintiffs' Opposition, p. 4. However, the plaintiffs argue, BNSF and the Public Belt "had a duty to operate the locomotive and railroad cars in a safe manner and to prevent any accidents or derailments." *Id.* According to the Plaintiffs, the violation of that duty resulted in damage to the floodgate, and the failure to repair or replace the floodgate caused their property to flood eleven months later.

The plaintiffs' argument would eviscerate the duty/risk standard of Louisiana negligence law and render a tortfeasor infinitely liable for all remote consequences of its actions.

In order to recover damages, a plaintiff must allege and prove <u>all</u> four requisites of a negligence claim: (1) the conduct in question was a cause in fact of the plaintiff's harm, (2) the defendant owed a duty of care to the plaintiff, (3) the requisite duty was breached by the defendant, and (4) the risk of harm was within the scope of the duty breached. *Lazard v. Foti*, 2002-2888 (La. 10/12/03), 859 So.2d 656, 659. Because the Public Belt has no duty to protect the public from flooding, or to construct, maintain or

repair flood control structures, including the floodgate at issue, the plaintiffs fail to state a claim upon which relief may be granted.

As a limited purpose political subdivision of the state, the Public Belt has been granted authority by the legislature pursuant to La. R.S. 33:4530(C) only to control, operate, manage and develop a public belt railroad system, and has no powers or authority with respect to flood control. In *Safford v. Bayou Lafourche Fresh Water District*, 03-0700 (La. App. 1st Cir. 2/23/04), 872 So.2d 1127, the Court of Appeal held that the Bayou Lafourche Water District (which, like the Public Belt, had not been delegated any of the State's police power to protect citizens from damage by flooding) had no duty to the plaintiff whose riparian property along Bayou Lafourche had been damaged by flooding.

The plaintiffs' attempts to distinguish the *Safford* decision are unavailing. First, the plaintiffs assert that "[i]t appears that Mr. Safford alleged that his damages were caused by Water District's routine performance of acts related to its statutory duty to supply fresh water . . ." (Opposition, p. 5), and not by negligence, as the plaintiffs herein have alleged with respect to the Public Belt.

Actually, in *Safford*, the Water District challenged, *inter alia*, "the trial court's finding of negligence on its part, . . ." *Id.* at 1129. The Court of Appeal began its discussion of the trial court's ruling by stating: "<u>In reviewing the question of whether the District's action constituted negligence</u>, we conclude it owed no duty toward Mr. Safford . . ." *Id.* at 1130; emphasis supplied.

The Plaintiffs herein additionally seek to distinguish the *Safford* decision because Safford's damaged property was located below the ordinary high water mark of the bayou. Plainly, this is a distinction without a difference. The Court of Appeal decision is premised upon the Water District's "limited function and duties . . . " *Id.* at 1131. "The legislature has delegated the task of ensuring an adequate supply of fresh water in Bayou Lafourche to the District; it has not delegated any duty or responsibility of flood control to the District ." *Id.* at 1130.

Thus, the *Safford* Court concluded that even if the Water District was negligent, and even if its negligence resulted in damage to Mr. Safford's property, the Water

-3-

District was not liable for those damages, because, like the Public Belt in the instant case, the Water District lacked any duty or any authority with respect to flood control.

In Louisiana the existence of a duty and its scope are questions of law. *Dupre v. Chevron U.S.A., Inc.*, 20 F. 3d 154, 159 (5th Cir. 1994). Because the Public Belt has no duty or authority to protect the Plaintiffs from flooding, the pending motion to dismiss is due to be granted.

### B. The Train Derailment Was Not the Proximate Cause of the Plaintiffs' Flood Damage.

The Plaintiffs assert that their allegation, at ¶ IV. 1(e) of their Complaint, that their damages were caused by BNSF's and the Public Belt's negligent operation of a locomotive is sufficient to allege a claim, because it constituted an allegation of "proximate cause," or legal cause. Plaintiff's Opposition, p. 2.

That assertion ignores the Plaintiffs' requirement for alleging, and proving, all four of the requisites of a negligence claim, as set forth in *Lazard v. Foti, supra*. The lack of any duty by the Public Belt to prevent flooding defeats the Plaintiffs' claim, as previously explained.

But, in addition, the Plaintiffs are incorrect in asserting that the alleged negligent operation of a locomotive on December 11, 2004 was the proximate cause of their flooding from Hurricane Katrina, eleven months later. But for the City of New Orleans and the State of Louisiana forming the Public Belt Railroad in 1908, the alleged September 11, 2004 derailment would not have occurred, but that doesn't render the City and the State liable for the plaintiffs' flooding.

First of all, the plaintiffs' allegation that negligent operation of the locomotive on December 11, 2004 caused their damages is a mere legal conclusion. Conclusory allegations masquerading as factual conclusions will not defeat a motion to dismiss. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). The Court must examine the facts alleged in the Complaint to determine if negligent operation of the locomotive was the legal, or proximate, cause of the plaintiffs' flooding.

Cause-in-fact is a factual issue, but legal cause is a purely legal question. *Todd v. State*, 96-3090 (La. 9/9/97), 699 So.2d 35, 39.

In *Sutton v. Duplessis*, 584 So.2d 362 (La. App. 4th Cir. 1992), the Court defined legal, or proximate, cause as "any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred." *Id.* at 365; citations omitted. The *Sutton* Court stated that when an accident results from two negligent acts, "one more remote and one an intervening cause, the presence of the intervening cause prevents a finding of liability on the one responsible for the more remote cause." *Id.* at 365-66; citations omitted.

In *Sutton*, the Court of Appeal reversed a trial court judgment which found a mother to be at fault when her six year old son ran into the street and was struck by a car, because she was late in picking him up from school after classes ended. *Id.* at 364. The Court found there was factual causation – the child would not have been injured if his mother had been on time – but the mother's negligence did not constitute the legal, or proximate, cause of the child's injuries. *Id.* at 365. The school board's negligence superceded the mother's negligence in not picking up her child on time. *Id.* at 365-66.

The Court found the school board violated its duty of dealing with the foreseeable possibility that parents would show up late by taking action to prevent children from leaving school unsupervised. *Id.*

Similarly, in the instant case, the negligence of the Board of Commissioners of the Orleans Levee District (the "Levee Board"), in not replacing or repairing the damaged floodgate during the eleven month interval between the time the floodgate was damaged and the arrival of Hurricane Katrina, superceded any alleged negligence of BNSF and/or the Public Belt in damaging the floodgate. Maintaining and repairing the floodgate is within the scope of duty of the Levee Board, not the Public Belt or BNSF. Just as it was foreseeable by the School Board that parents might be late in picking up their children from school, it was certainly foreseeable by the Levee Board that traffic through roadways and railroads adjacent to the floodgates will damage the floodgates.

In *Graham v. Amoco Oil Co.*, 21 F.3d 643 (5th Cir. 1994), the Fifth Circuit, relying upon *Sutton v. Duplessis*, found that, even if Amoco was negligent in delivering a large load of casing pipe to an oil platform without notifying the contractor in advance, the contractor's negligence, in unloading the casing and in supervising the plaintiff,

superceded any negligence of Amoco in delivering the casing. *Id.* at 649. The Court also found the delivery to be "too remote" to constitute the legal cause of the plaintiff's injury. *Id.*

In *Brow v. Allstate Indemnity Co.*, 99-2319 (La. App. 1st Cir. 11/3/00), 771 So.2d 268, the plaintiff alleged that the Louisiana Department of Transportation and Development ("DOTD") was among those at fault for his injuries in an automobile accident, alleging that DOTD failed to post any "wrong way/do not enter" signs at a highway intersection. The defendant Cummings entered the wrong lane of traffic and collided head-on with the vehicle driven by the plaintiffs. *Id.* at 273-74. The Court found that DOTD's action was a cause-in-fact of the collision, that Cummings would not have collided with the plaintiffs' vehicle if he had not entered the wrong lane of traffic. *Id.* at 273. But Cummings had traveled in the wrong lane for approximately 4.3 miles before the collision with plaintiff's vehicle, during which time eight or nine ongoing vehicles were forced off the highway to avoid Cummings' vehicle, and others attempted to alert Cummings by flashing their headlights and blowing their horns. *Id.* at 274.

The Court stated that the "wreck was the result of the events that had intervened between Cummings' entrance to Highway 61 and the scene of the accident and was not legally caused by DOTD." *Id.* at 274. The Court noted:

> Whether phrased in terms of scope of duty or legal cause or proximate cause, it can be useful to consider whether too much else has intervened-time, space, people, and bizarreness.

*Id.*; internal citation omitted.

Indeed, in *Lazard v. Foti, supra*, the Louisiana Supreme Court held that the defendant Sheriff was not liable for the death of a juvenile detainee who was improperly held in an adult detention facility, improperly released without adult supervision (he should have been released to his parents' custody), and then killed by the criminal act of a third party some twelve hours after his release.

The Court noted that a "duty owed by the sheriff does not render him liable for all consequences spiraling outward until the end of time." *Id.* at 662; internal citation omitted.

In the instant action, any negligence of the Public Belt or BNSF which resulted in damage to the floodgate on September 11, 2004, was superceded by the intervening negligence of the Levee Board in not replacing or repairing the floodgate during the eleven months before Hurricane Katrina struck. The negligence of the Public Belt and/or BNSF, if any, in causing the September 11, 2004 train derailment does not render them liable for all consequences spiraling outward until the end of time.

The negligence of the Levee Board in not replacing the damaged floodgate during the eleven month interval between the train derailment and the arrival of Hurricane Katrina was an intervening and superseding cause of the plaintiffs' flood damage, which prevents any finding of liability against the Public Belt for allegedly causing the train derailment. The train derailment is too remote from the plaintiffs' flood damage to be the proximate cause of that damage.

The September 11, 2004 train derailment was not the legal cause of the Plaintiffs' flood damages from Hurricane Katrina. The Plaintiffs have no ownership interest, or other interest, in the floodgate that was allegedly damaged by the derailment. The plaintiffs' damages were not caused by a train derailment; rather, the plaintiffs' damages resulted from a flood.

C.   **Plaintiffs' Claims are Expressly Preempted Under Federal Law.**

The Plaintiffs contend that federal preemption cannot be the basis of a motion to dismiss, because it does not appear on the face of a well-pleaded complaint. That is incorrect.

The Federal Rail Safety Act ("FRSA") establishes a federal regulatory scheme designed to mandate uniform railroad regulations. It contains a clearly expressed intent on the part of Congress that this regulatory regime be exclusive, and that it preempt state law. FRSA, 49 U.S.C. § 20106 ("Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.") The Supreme Court has held that FRSA preempts state law claims where "the federal regulations substantially subsume the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993); *see also Peters v. Union Pac. R.R. Co.*, 80 F.3d 357, 262 (8th Cir. 1996) ("Congress has expressly

preempted state laws affecting railroad safety where the Secretary of Transportation has promulgated regulations.").

In those spheres of railroad safety for which Congress has authorized the Department of Transportation to issue regulations mandating specific standards directed at railroad safety, and concerning which the agency in fact has issued such controlling regulations, there remains no common law claim. Thus, for example, a plaintiff's state law claim that a railroad did not properly maintain its tracks is completely preempted; DOT has exclusive jurisdiction to regulate and determine such issues. See *Lundeen v. Canadian Pac. Ry. Co.*, 447 F. 3d 606, 614 (8th Cir. 2006) ("It is clear the [Federal Railroad Administration] regulations are intended to prevent negligent track inspection and there is no indication the FRA meant to leave open a state law cause of action.") The Public Belt does not suggest that any and all common law tort claims involving railroads, or even railroad safety, would be completely preempted by FRSA. Rather, each railroad safety claim must be assessed individually to determine whether the Secretary of Transportation has, under its express FRSA authority, directly regulated in that area to ensure uniform safety policies and standards.

The only specific contention against the Public Belt in the instant case is that the locomotive was improperly operated. Petition ¶ IV.1(e). The Federal Railroad Administration ("FRA"), a division of the Department of Transportation, is tasked with enforcing the FRSA. The claims that give rise to federal jurisdiction in this case are "substantially subsumed" by directly applicable FRA regulations that establish a nationally uniform system of operating practices (see 49 CFR § 212.221, "Operating Practices Inspector"), for railroad employee safety training (49 CFR § 217), and for the qualification and certification of engineers to operate locomotives (§ 240). Similarly, "Locomotive Standards and Inspections" are subject to a nationally uniform system (49 CFR § 230.5, express preemption), and § 230.29 (inspection and repair). In enacting the FRSA, Congress assigned the Secretary of Transportation "exclusive authority to impose . . . a civil penalty for violation of a railroad safety regulation . . . and to recommend [civil district court] action be taken." 49 U.S.C. § 20111(a).

In *Mehl v. Canadian Pacific Railway, Ltd.*, 417 F. Supp 2d 1104 (D.N.D. 2006), the Court granted the defendant's motion to dismiss with respect to the plaintiffs' claims

of negligent operation of a train which derailed and released anhydrous ammonia. *Id.* at 1117-18. "[T]he Plaintiffs' state law negligent operation claims are covered by federal regulation and . . . such claims are preempted." *Id.* at 1118. The *Mehl* Court also granted the defendant railroad's motion to dismiss the plaintiffs' state law claims of negligent inspection of freight cars, and their state law claims of negligent construction and maintenance, and of defective track conditions (*id.* at 1115-17), stating that "the Plaintiffs' construction and maintenance claims are preempted by federal regulation and must be dismissed." *Id.* at 1117. And in *In re Derailment Cases*, 416 F.3d 787 (8th Cir. 2005), the Court held that the plaintiffs' state law claim of negligent inspection of freight cars was expressly preempted by the FRA regulations adopted pursuant to FRSA, and affirmed the District Court's dismissal of those claims. *Id.* at 792-94.

Ironically, in their Memorandum In Support of Motion to Remand, Document No. 3030-2, the *Speed* plaintiffs complain that *Mehl v. Canadian Pacific Railway*, cited in BNSF's Notice of Removal, did not deal with the issue of <u>removal</u>, but rather "is a 12(b)(6) case, (state law is preempted when it conflicts). . ." Plaintiffs' Memorandum In Support of Motion to Remand, Doc. No. 3030-2, page 10. Plaintiffs are correct. Indeed, in *Mehl*, the very claim they are asserting herein – negligent operation of a train – was determined to be preempted.

The outcome should be the same herein. Congress explicitly granted exclusive authority to the Secretary of Transportation to impose civil penalties for violations of FRSA regulations, or to recommend that a civil action be brought in the district court to enjoin a violation or collect a civil penalty. 49 U.S.C. § 20111(A). Because FRSA creates the exclusive, federal cause of action for plaintiffs' claims related to negligent operation of a train, that claim is preempted by FRSA, and must be dismissed.

### CONCLUSION

The Public Belt has no duty to the plaintiffs, or to anyone, to protect them from flooding, nor does it have any duty to maintain or repair flood control structures.

The September 11, 2004 train derailment was not the legal, or proximate, cause of the plaintiffs' flood damage from Hurricane Katrina.

In addition, the plaintiffs' claims are preempted by the Federal Rail Safety Act.

Thus, the plaintiffs' claims against the Public Belt are due to be dismissed, for failure to state a claim upon which relief may be granted.

Respectfully submitted,

HAMILTON, BROWN & BABST

*/s/ Galen S. Brown*
GALEN S. BROWN, T.A. (#3556)
KAREN E. MILNER (#8499)
601 POYDRAS STREET, SUITE 2750
NEW ORLEANS, LOUISIANA 70130
TELEPHONE: (504) 566-1805
FAX: (504) 566-1569
E-MAIL: gbrown@hamiltonfirm.net

Attorneys for Defendant, Public Belt Railroad Commission for the City of New Orleans

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this 28th day of February, 2007.

*/s/ Galen S. Brown*
GALEN S. BROWN