# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | KATRINA CANAL BREACHES | * | CIVIL ACTION |
| | CONSOLIDATED LITIGATION | * | |
| _____ | | * | NO. 05-4182 "K"(2) |
| | | * | |
| PERTAINS TO LEVEE: | 06-11208 (Speed) | * | JUDGE DUVAL |
| | | * | |
| | | * | MAG. WILKINSON |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF BNSF RAILWAY COMPANY'S MOTION FOR DISMISSAL UNDER RULE 12(B)(6)

This supplemental memorandum is submitted by the BNSF Railway Company, f/k/a the Burlington Northern and Santa Fe Railway Company ("BNSF") in support of its Motion to Dismiss for failure to state a claim on which relief can be granted pursuant to FRCP 12 (b)(6).

Plaintiffs' opposition to BNSF's motion merely highlights their failure and indeed inability to plead a cognizable claim against BNSF. Plaintiffs plead no facts upon which this court could possibly find a duty owed to protect from the damages of flooding by hurricane Katrina. BNSF did not own subject flood gate and had no right, opportunity or authority to repair it. Any repairs to the floodgate were the exclusive province of another public entity. Moreover, plaintiffs ignore the fact that any claim based on the operation of a locomotive is

subject to complete preemption.  Plaintiffs have no basis for a claim against BNSF, and dismissal is warranted.

## ARGUMENT

### A. Plaintiffs' Opposition Identifies No Fact That Gives Rise To A Duty Owed By BNSF.

Plaintiffs' opposition does not get past the threshold issue that exists in any negligence action—"whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d  627, 633 (La. 2006).  In Louisiana the existence of a duty and its scope are questions of law. *See Dupre v. Chevron, U.S.A., Inc.*, 20 F.3d 154, 159 (5th Cir. 1994.)  Plaintiffs' contention that a duty was owed for the operation of a locomotive does not satisfy the pleading obligation such that they can survive dismissal under rule 12(b)(6).  Conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas Incorporated,* 336 F.3d 375, 379 (5th Cir.2003).  This court "need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990).

Plaintiffs focus on duties regarding the operation of the train at the time of a derailment, but they casually ignore the fact that no duty related to the operation of a locomotive could possibly have been owed at the time of Hurricane Katrina in 2005. The damage claim asserted against BNSF is premised on flooding that occurred following Hurricane Katrina, not damage flowing from a September 11, 2004 derailment.  The flooding did not occur at the time of the derailment and the only party that suffered any alleged injury, the Orleans Levee District ("OLD"), bears the *exclusive* responsibility for the repairing the floodgate.

**B. Plaintiffs Pleading Does Not Create A General Duty Of Flood Protection Owed By BNSF.**

Plaintiffs cannot artificially expand any alleged duty to include the protection of the general public.  In order to survive a Motion under Rule 12 (b)(6), plaintiffs must plead facts to support each element of their claim. See *Bagby v. Rydex Instruments,* 2007 WL507042 (N.D. Tx.)(dismissal granted for failure to plead necessary factual elements.) The plaintiffs' petition simply does not plead facts that would bring them within the scope of individuals to which a duty was owed, and on that basis alone, BNSF's motion should be granted.  The suggestion that BNSF owed an open ended duty to the general public to repair a flood gate it neither owned nor controlled cannot be supported by any legal theory of duty.[1]

As BNSF has previously pointed out, the Army Corps of Engineers, not BNSF – is charged with the responsibility to protect United States populations from floods.  *See* 33 U.S.C. § 701, *et seq.* (Congress mandated that the Army Corps of Engineers is to provide hurricane and flood protection for the City of New Orleans).  The Louisiana legislature has similarly charged the local governmental entity, the Board of Commissioners of the Orleans Levee District, with a level of responsibility–not BNSF.  *See Bd. Of Comm'rs of the Orleans Levee District v. Dep't of Natural Res.*, 496 So. 2d 281, 289 (La. 1986) (Louisiana legislature has given this Board authority and duty to protect New Orleans citizens from damage by flood); *Volkswagon of America, Inc. v. Robertson*, 713 F.2d 1151, 1154 (5th Cir. 1983) (Orleans Levee District

---

[1]    As a factual matter, as discussed in BNSF's original memorandum, payment for damages to the floodgate had previously been made by the New Orleans Public Belt. (See Affidavit of Jim Bridger attached to CSX Transportation Motion to Dismiss, in the consolidated levee litigation pending in this court, *In re Katrina Canal Breaches Consolidated Litigation,* 05-4182, (Doc. 1530).

maintains the hurricane protection levees in the New Orleans area, in compliance with the designs, plans, specifications and requirements of the Corps of Engineers).[2]

The scope of any tort duty BNSF owes to anyone in connection with the limited allegation of ownership of a locomotive is confined by the risk, harm, and plaintiff at issue. *See Dupre v. Chevron, U.S.A., Inc.,* 20 F.3d 154, 157 (5th Cir. 1994). Determining the scope of a duty is "ultimately a question of policy as to whether the particular risk falls within the scope of the duty." *Roberts v. Benoit,* 605 So.2d 1032, 1044 (La.1991); *Severn Place Assoc v. American Bldg. Services, Inc.* 930 So.l 2d 125 (La. App. 5th Cir. 2006). There "must be an 'ease of association' between the rule of conduct, the risk of injury, and the loss sought to be recovered." *Louisiana Swabbing Service, Inc. v. Enterprise Products Company,* 00-1161 (La.App. 3 Cir. 5/2/01), 784 So.2d 862, citing *Hill v. Lundin & Assoc., Inc.,* 260 La. 542, 256 So.2d 620 (La.1972). "Since the law never gives absolute protection to any interest, recovery will only be allowed if a rule of law on which the plaintiff relied includes within its limits protection against the particular risk that plaintiff's interests encountered." *Lazard v. Foti*, 859 So. 2d 656, 660-61 (La. 2003).

Plaintiffs offer no facts, pleadings or argument to suggest that the duty owed to the general public extends beyond the two governmental entities charged with protecting the citizenry from flooding. Duty is a limiting principle and plaintiffs offer no legal basis whatsoever that supports the contention that BNSF or the Public Belt, for that matter, had an unlimited, continuing duty to repair or maintain the floodgate.

---

[2] This Court is intimately familiar with the statutory basis and history of the Corps of Engineers and the Orleans Levee Districts' roles in designing, building, maintaining and operating the levees, flood walls and gates surrounding New Orleans. *See* 05-6323-*Vanderbrook*, Order and Reasons (June 1, 2006) (Dkt. No. 469); 05-4568-*Harvey*, Order and Reasons (June 2, 2006) (Dkt. No. 476); 06-3529-*Laurendine*, Order and Reasons (Aug. 9, 2006) (Dkt. No. 888)

The conduct alleged by plaintiffs clearly does not fall within the ambit of any duty possibly owed to a general population to foresee or protect against flooding risks associated with a hurricane, particularly when the event occurred nearly one year following the actions involving any railroad entity.

As a separate basis for dismissal under the negligence analysis, BNSF adopts the argument set forth by the NOPB on the issue of proximate and legal cause of the incident. (See Reply Memorandum of NOPB, Doc. 3290-3, p. 4-7).

### C. This Court Should Consider the Affidavits of Thomas Lobello, Jr. and Jim Bridger.

Plaintiffs seek to sidestep the affidavits of Thomas Lobello and Jim Bridger by suggesting that the court should not consider them. Both affidavits are from employees of the New Orleans Public Belt. [3] Ten days after a party submits evidence outside of the pleadings a party is on notice of the possibility that a court may convert a Rule 12 (b)(6) motion into a motion for summary judgment if the evidence is not excluded. *See Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1284 (5th Cir.1990), quoting *Clark v. Tarrant County, Texas,* 798 F.2d 736, 746 (5th Cir.1986)). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (recognizing that district courts possess the power to enter summary judgment *sua sponte* as long as the losing party was on notice that he had to come forward with all of his evidence).

Mr. Lobello notes that the locomotives involved in the September 11, 2004 derailment were operated and owned by the NOPB. Plaintiffs have submitted hearsay, incompetent evidence through the police report, purportedly to create a question of fact. The police report

---

[3]    See Affidavit of Jim Bridger attached to CSX Transportation Motion to Dismiss, in the consolidated levee litigation pending in this court, *In re Katrina Canal Breaches Consolidated Litigation,* 05-4182, (Doc. 1530

narrative is hearsay and cannot create a question of fact as to ownership of the locomotive. F.R.E. 801. In fact, the report specifically notes only that the investigator "learned" certain facts as to the operation of the locomotive. The information is unreliable and inadmissible. Moreover, the NOPB, perhaps the only party with nothing to gain from making such an assertion, affirmatively stated that it owned the subject locomotive and was operating it at the time of the incident (Affidavit of Thomas Lobello).

Even if plaintiffs did properly plead a claim against BNSF for duty, which they have not, the only allegation against BNSF exclusively rests on the alleged ownership of the locomotive involved in the derailment. (Petition IV, 1). No other allegation has been made, and the use of hearsay evidence through the police report simply cannot defeat this motion. The affidavit of Mr. Lobello and Mr. Bridger establish that the locomotives involved in the incident did not belong to BNSF and that payment was made directly to the OLD for repairs to the flood gate by the NOPB following the incident. The BNSF had no right, duty or opportunity to make independent repairs to property owned and managed by the Orleans Levee District ("OLD"). Plaintiffs have failed to set forth a claim upon which relief can be granted against BNSF and the BNSF motion should be granted.

**D. Plaintiffs' Claims Should be Dismissed on the Basis of Federal Preemption.**

Plaintiffs fail to address the merits of the preemption issues raised in the BNSF motion to dismiss. As set forth in detail in the memorandum filed on the preemption claims cannot be addressed at this point, plaintiffs fail to address issue in any respect. As set forth in detail in the BNSF removal petition and Opposition to Motion to Remand (adopted herein in its entirety, plaintiffs' claims in the original petition are preempted under federal law) (See Doc. 3282).

Under 49 USC § 20106, the FRSA provides that "laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." The Supreme Court has held that the FRSA preempts state law claims when "the federal regulations substantially subsume the subject matter of the relevant state law. See *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993); *Peters v. Union Pacific Railroad Company*, 80 F.3d 257 (8th Cir. 1996).

In enacting the FRSA, Congress assigned the Secretary of Transportation "exclusive authority to impose . . . a civil penalty for violation of a railroad safety regulation . . . and to recommend [civil district court] action be taken." 49 U.S.C. § 20111(a). Plaintiffs' contentions are directly and substantially subsumed by Congress's intent to create a nationally uniform standard in these spheres of railroad safety, enforceable by the Department of Transportation. This aspect of the claim against the Railroad Defendants is therefore completely preempted, justifying removal.

The recent Eighth Circuit ruling in *Lundeen v. Canadian Pac. Ry. Co.*, 447 F.3d 606 (8th Cir. 2006), is also directly on point in the context of complete preemption of claims arising under FRSA regulations. There, the Eighth Circuit held that, despite plaintiffs' amendment of their Complaint to remove all references to federal statues, "the district court continues to have jurisdiction *through complete preemption of the state law claim of negligent inspection.*" *Id.* At 611 (emphasis added). Also in *Hodge v. Burlington Northern & Santa Fe Railway Co.*, 461 F.Supp 2d. 1044, 1053 (E.D. Mo.), the district court specifically found the plaintiff's state law claim for negligent operation of a train was completely preempted by the regulations under the

FSRA.  The claims asserted here are identical to those giving rise to complete preemption in prior cases, and both removal and dismissal are appropriate.

### E.    Plaintiffs' Complaint Fails to Meet The Pleading Requirements Of A Putative Class Action

Plaintiffs purport to prosecute this litigation on behalf of themselves and a class of "similarly situated" persons.  Presuming that their motion to remand will be granted, plaintiffs have made no attempt to cure the multiple defects in the Petition related to the class action allegations and their ability to proceed as a class in this matter. The Rules of this Court require that a party seeking class action status plead "allegations thought to justify the maintenance of the claim as a class action."  L.R. 23.1.  "In a prospective class action *the complaint should allege the existence of necessary facts* showing that the prerequisites of Rule 23(a) have been satisfied." *Batsakis v. FDIC*, 670 F. Supp. 749, 757 (W.D. Mich. 1987) (emphasis added) (citing *Peak v. Topeka Hous. Auth.*, 78 F.R.D. 78 (D. Kan. 1978)).  In particular, facts must be pled which, if proven, would satisfy each of the individual elements of Rule 23, and would establish that the action at hand can be certified for class treatment.  *In re Am Med. Sys., Inc.* 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200) (6th Cir. 1974)).

**CONCLUSION**

Plaintiffs have failed to plead a specific basis for a duty owed by BNSF in connection with the flooding resulting from Hurricane Katrina, plaintiffs' opposition fails to address the issue of federal preemption, and dismissal is warranted.

Respectfully submitted,

**FRILOT, PARTRIDGE, L.C.**

*/s/* Michael R. Phillips
**PATRICK A. TALLEY, JR. (#1616)**
**MICHAEL R. PHILLIPS (#21020)**
**CARL E. HELLMERS, III (#25705)**
1100 Poydras Street, Suite 3600
New Orleans, LA 70163
Telephone: (504) 599-8000
Facsimile: (504) 599-8100
**Counsel for BNSF Railway Company f/k/a Burlington Northern and Santa Fe Railroad Company**

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this 1st day of March, 2007 served a copy of the foregoing on all counsel of record via facsimile and/or by the United State Postal Service properly addressed and postage prepaid.

*/s/* Michael R. Phillips