**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | )<br>)<br>)<br>)<br>) | CIVIL ACTION<br>NO. 05-4182 "K" (2)<br>JUDGE DUVAL<br>MAG. WILKINSON |
| PERTAINS TO:  LEVEE<br>(*La. Envtl. Action Network, 06-9147*) | )<br>)<br>)<br>) | |

**DEFENDANT UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

## INTRODUCTION

Plaintiff Louisiana Environmental Action Network ("LEAN") has not identified any applicable waiver of sovereign immunity. LEAN does not dispute that its claims for injunctive relief are premised on flood damage from a federal flood control project, and fall within the scope of claims generally covered by the affirmative grant of immunity set forth in the Flood Control Act, 33 U.S.C. § 702c. Contrary to LEAN's argument, the Resource Conservation and Recovery Act ("RCRA") waiver at 42 U.S.C. § 6961(a) does *not* cover the claims for injunctive relief raised in this suit.

LEAN misunderstands that not all "provisions for injunctive relief" related to waste fall within the scope of the waiver at 42 U.S.C. § 6961(a), just those provisions for injunctive relief that implement objective "requirements." LEAN does not seek to enforce in this suit any objective requirement. *See Florida Dep't of Envtl. Reg'n v. Silvex Corp.*, 606 F. Supp. 159, 163 (M.D. Fla. 1985) ("*Silvex*") (dismissing on immunity grounds nearly identical claims that sought injunctive relief to abate an alleged imminent hazard from waste disposal, finding that such claims were not premised on non-compliance with any applicable "requirements").

While the Court need not even reach the Government's alternative arguments to dismiss this suit, LEAN also errs in concluding that the Corps' oversight authority over flood control projects at the London Avenue Canal means it has "jurisdiction" over a "solid waste management facility or disposal site" within the meaning of 42 U.S.C. § 6961(a) . LEAN further errs in asserting that the Corps is currently "engaged" in any relevant waste management or disposal activity within the meaning of 42 U.S.C. § 6961(a)

-2-

# DISCUSSION

I. **LEAN IS NOT SEEKING TO ENFORCE ANY "REQUIREMENT" WITHIN THE MEANING OF RCRA'S FEDERAL FACILITIES PROVISION.**

   A. **Courts Have Made Clear That the Term "Requirements" in the RCRA Federal Facilities Provision Refers Solely to Objective Standards and the Means for Implementing Them**.

LEAN alleges that it may bring suit to compel the Corps to abate alleged flood damage under the waiver of sovereign immunity set forth in RCRA's federal facilities provision, 42 U.S.C. § 6961(a). *See* Opp. at 6-9. The federal facilities section of RCRA provides, in relevant part, that agencies of the Federal Government:

> (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate, and local **requirements**, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal and management in the same manner, and to the same extent, as any person is subject to such requirements . . .

(emphasis added).

The parties' dispute here centers on the meaning of the word "requirements" as that term appears in 42 U.S.C. § 6961(a). Applying the principle that waivers of sovereign immunity must be construed strictly in favor of the sovereign, courts have interpreted the term "requirements" narrowly as it appears in RCRA and comparable environmental statutes. Specifically, courts have interpreted the term as encompassing "substantive environmental standards" and "the procedural means by which those standards are implemented: including permit requirements, reporting and monitoring duties, and submission to . . . inspections." *Parola v. Weinberger*, 848 F.2d 956, 961 (9th Cir. 1988). *See also, e.g.*, *United States v. Ohio*, 503 U.S. 607, 627 (1992) (finding that term "requirements" in RCRA federal facilities provision "can reasonably be

interpreted as including substantive standards and the means for implementing those standards"); *Silvex*, 606 F. Supp. at 163 (finding that term "requirements" in RCRA federal facilities provision refers to "objective and ascertainable," and "specific and precise," standards); *Romero-Barcelo v. Brown*, 643 F.2d 835, 855 (1st Cir. 1985) (finding that term "requirements" in similar Noise Control Act immunity waiver refers to "relatively precise standards capable of uniform application" and dismissing Puerto Rico's request to enjoin Naval training activities based on state nuisance statute), *reversed on other grounds, sub nom. Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982).

LEAN brings suit under 42 U.S.C. § 6972(a)(1)(B) to compel action to address an alleged potential "imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B) provides a cause of action to abate an alleged imminent endangerment, but a suit under this citizen suit provision is not a suit to enforce compliance with any objective "requirement," either substantive or procedural, within the meaning of 42 U.S.C. § 6961(a).

LEAN argues that this suit falls within the scope of the federal facilities provision waiver because (1) the citizen suit provision itself is a provision for injunctive relief and (2) the term "requirements" in the federal facilities provision at 42 U.S.C. § 6961(a) has been defined to include "provisions for injunctive relief." *See* Opp. at 8-9. What LEAN misunderstands is that for a particular injunctive relief provision to be covered by the waiver, there must be a nexus between that particular "provision for injunctive relief" and some applicable "requirement." That is, to the extent that the term "requirements" has been defined by Congress to include "provisions for injunctive relief," the phrase "provisions for injunctive relief" refers to "mechanisms for ensuring substantive compliance in the future" with applicable "requirements." *See State of Ohio*, 503 U.S. at 628. Accordingly, the waiver at 42 U.S.C. § 6961(a) encompasses

objective requirements relating to waste, including injunctive relief provisions to ensure compliance with those objective requirements. However, the waiver does not encompass injunctive relief provisions entirely disconnected from any applicable requirement.[1]

Indeed, the one federal court that has considered this issue squarely rejected LEAN's position, and held that a suit seeking injunctive relief to abate an alleged imminent hazard does not fall within the waiver of immunity in 42 U.S.C. § 6961(a). *See Silvex*, 606 F. Supp. at 159-63 (cited in United States' opening brief at 21). We discuss this case further below.

### B. The Court in *Silvex* Squarely Rejected LEAN's Position That a Claim Seeking Injunctive Relief to Abate an Imminent Hazard Seeks to Enforce Any "Requirement" Within the Meaning of RCRA.

In *Silvex*, Plaintiff State of Florida brought suit against the Navy and sought, among other things, to hold the Navy liable for injunctive relief under state law based on the alleged negligent release of hazardous waste materials generated at a naval air station. 606 F. Supp. at 161.[2] The applicable state law, Fla. Stat. § 403.726, provided authority nearly identical to the authority provided in 42 U.S.C. § 6972(a)(1)(B) – the provision under which LEAN brings suit here. Specifically, Fla. Stat. § 403.726 provided Florida with authority to "take any action necessary

---

[1] LEAN points to the fact that 42 U.S.C. § 6961(a) expressly waives immunity otherwise applicable to the United States. *See* Opp. at 7. But to the extent it waives otherwise applicable immunity, it does so only with respect to claims that are actually covered by the waiver. See 42 U.S.C. § 6961 (providing, "The United States hereby expressly waives any immunity otherwise applicable to the United States with respect to *such* substantive or procedural *requirement* (including, but not limited to, any injunctive relief . . . .)." (emphasis added). Put simply, the fact that the United States has expressly waived any otherwise applicable immunity relating to "requirements" begs the question of whether LEAN is seeking to enforce an applicable "requirement." LEAN's discussion of how this "otherwise applicable immunity" language compares to the language in another statute (CERCLA) is likewise misplaced (*see* Opp. at 7-8), because nothing in CERCLA addresses the question of what constitutes a "requirement" within the meaning of the RCRA federal facilities provision.

[2] LEAN's assertion that *Silvex* just involved a claim for money damages is wrong. *See* Opp. at 14.

-4-

pursuant to . . . [Fla. Stat. §] 403.131 to abate or substantially reduce, any imminent hazard caused by a hazardous substance." Fla. Stat. § 403.131 in turn provided Florida with authority bring a civil action to "seek injunctive relief." Thus, Florida advanced a claim that was functionally identical to the claim advanced by LEAN here insofar as the Government's immunity from suit is concerned. Like LEAN, Florida was seeking to abate an alleged imminent hazard, and like LEAN, Florida's cause of action was premised on a "provision for injunctive relief." The *Silvex* court, however, held that Florida was *not* seeking to enforce any "requirement" within the meaning of the RCRA federal facilities provision and granted the Navy's motion to dismiss. *See* 606 F. Supp. at 161-64. The result here should be no different.[3]

### C. LEAN's Interpretation Nullifies Restrictions on RCRA Citizen Suits.

The fact that 42 U.S.C. § 6972(a)(1)(B) does not by itself constitute a "requirement" within the meaning of the federal facilities provision waiver is made additionally clear by the fact that otherwise citizen suits under 42 U.S.C. § 6972(a)(1)(B) and suits for violations of "requirements" under 42 U.S.C. § 6972(a)(1)(A) would become nonsensically conflated. As we set forth in our opening brief (*see* opening brief at 19-20), such a construction would render meaningless Congress' restrictions on suits under subsection (a)(1)(B). Tellingly, LEAN does not even try to explain why such a result would make any sense.

---

[3] While RCRA was amended subsequent to the *Silvex* decision by the Federal Facilities Compliance Act of 1992, the "injunctive relief" language in 42 U.S.C. § 6961(a) that is relied upon by LEAN was present in the statute prior to the 1992 Amendments and was considered by the court in *Silvex*. *See* 606 F. Supp. at 162. Generally speaking, the 1992 Amendments added language to the federal facilities provision waiving immunity for punitive fines and revoking otherwise applicable immunity, but the Amendments did not in any relevant respect change the threshold scope of what constitutes a "requirement" within the scope of the waiver. In this regard, LEAN appears to misapprehend how the statute was amended in 1992. *See* Opp. at 2.

### D. LEAN's Interpretation Eviscerates Flood Control Act Immunity.

Adoption of LEAN's expansive definition of what constitutes a "requirement" would also lead to absurd results inasmuch as it would largely eviscerate the affirmative grant of immunity set forth in the Flood Control Act. The logical extension of LEAN's argument is that virtually *any* suit seeking injunctive relief premised on flood damage – whether brought under federal, state, or local law – can go forward under the RCRA federal facilities provision waiver. In particular, virtually any suit seeking injunctive relief premised on flood damage might be loosely characterized as relating to "waste" material, and therefore, arguably covered by the waiver at 42 U.S.C. § 6961(a). There is no reason, however, to conclude that Congress intended for its clear affirmation of immunity for federal flood control activities to be so easily evaded by invoking the RCRA waiver. Indeed, such a result would violate the principle that waivers of sovereign immunity must be strictly construed in favor of the sovereign, and that waivers of immunity must be clearly and unequivocally expressed. *See* United States Opening Br. at 10-11.

## II. THE CORPS DOES NOT HAVE "JURISDICTION" OVER A SOLID WASTE MANAGEMENT FACILITY OR DISPOSAL SITE, AND LEAN'S CLAIMS ARE PREMISED ON PAST FEDERAL ACTIVITIES.

If the Court agrees that LEAN is not seeking to enforce any "requirement" within the meaning of 42 U.S.C. § 6961(a), it need not reach the Corps' alternative arguments for dismissal. To the extent the Court reaches these arguments, LEAN's claims must additionally be dismissed because (1) the Corps does not have "jurisdiction" over any "solid waste management facility or disposal site," and (2) the Corps is not currently "engaged" in any relevant waste disposal activity. *See* 42 U.S.C. § 6961(a).

### A. The Corps Does Not Have "Jurisdiction" Within the Meaning of RCRA.

In response to the Corps' motion to dismiss, LEAN does not dispute that the Corps does not, in fact, have any ownership interest in the London Avenue Canal or adjacent flood control structures. LEAN further does not dispute that the local Levee District is responsible under state law for the operation and maintenance of flood control structures at the Canal, and that the Sewerage and Water Board is responsible under state law for the operation of the Canal in its drainage capacity. LEAN additionally does not dispute that under the Flood Control Act of 1965 (and documents referenced therein), and under contract with the United States, the Levee District has agreed that it has responsibility for maintaining and operating flood control structures at the London Avenue Canal.

In support of its position that the Corps nevertheless has "jurisdiction" over the Canal within the meaning of 42 U.S.C. § 6961(a), LEAN alleges that under the Corps' regulations, the Corps has some oversight authority over the operation and maintenance of the flood control structures at the Canal by the Levee District.[4] *See* Opp. at 9-10. Contrary to LEAN's argument, however, oversight authority is insufficient, as a matter of law, to confer the Corps with "jurisdiction" over the London Avenue Canal or its flood control structures within the meaning of 42 U.S.C. § 6961(a), assuming *arguendo* that such structures can even be characterized as a "solid waste management facility" or "disposal site." *See* 42 U.S.C. § 6961(a).[5]

---

[4] LEAN's argument that the testimony of the Corps' declarant LTC Murray P. Starkel, lacks foundation is without merit. *See* Opp. at 11-12. Mr. Starkel's testimony is supported by documentary evidence attached to his declaration, and LEAN does not dispute the authenticity of that evidence.

[5] The Corps does not concede that such structures constitute a "solid waste management facility" or "disposal site."

As an initial matter, we note that LEAN' selective citation to Corps regulations and internal guidance documents is misleading.[6/] The flood control regulations when read in their entirety actually underscore that the Levee District, and not the Corps, has day-to-day control over operation and maintenance of flood control structures at the London Avenue Canal. *See* 33 C.F.R. § 208.10(a)(2), (b), (c) (all providing that responsible local agencies, as opposed to the Corps, shall be in charge of maintenance and operation of flood control works).[7/] LEAN emphasizes that the Corps' regulations provide that flood control structures "shall be continuously maintained" (*see* Opp. at 9-10), but then fails to point out that the regulations actually specify that these structures shall be continuously maintained not by the Corps, but *by non-federal sponsors*. 33 C.F.R. § 208.10(a).

In any event, to the extent that the Corps, pursuant to the Flood Control Act and its implementing regulations, retains oversight over flood control structures at the London Avenue

---

[6/]   Engineering Regulation 1130-2-530, which is cited by LEAN, is a non-binding internal Corps guidance document and is not published in the Code of Federal Regulations. Its stated purpose is to establish the "policy for the operation and maintenance . . . . of [Corps]-built flood protection projects operated and maintained by non-Federal sponsors." Regulation 1130-2-530 at I-I.

[7/] For example, 33 C.F.R. § 208.10(a)(2) provides:

> The State, political subdivision thereof, or other responsible local agency, which furnished assurance that it will maintain and operate flood control works in accordance with regulations prescribed by the Secretary of the Army, as required by law, shall appoint a permanent committee consisting of or headed by an official hereinafter called the "Superintendent," who shall be responsible for the development and maintenance of, and directly in charge of, an organization responsible for the efficient operation and maintenance of all of the structures and facilities during flood periods and for continuous inspection and maintenance of the project works during periods of low water, all without cost to the United States.

-8-

Canal, this supervisory function does not confer the Corps with "jurisdiction" over the Canal as that term is used in 42 U.S.C. § 6961(a).  Waivers of sovereign immunity must be strictly construed in favor of the sovereign, and LEAN does not cite to a single case in which a court has ever found that oversight over a state or local government alone conferred a federal agency with "jurisdiction" over a site within the meaning of 42 U.S.C. § 6961(a).  Indeed, in the most analogous case to this one, a federal court dismissed a citizen suit based on a similar provision in the Clean Water Act, holding that the regulatory authority of the United States Fish and Wildlife Service over habitat conservation on a property did not mean that the Service had "jurisdiction" over the property for purposes of the similar Clean Water Act immunity waiver.  *Environmental Prot. Info. Ctr. v. United States Fish & Wildlife Serv.*, Case No. C 04-4647, 2005 WL 3877605 at *3 (N.D. Cal. Apr. 22, 2005).  That the Corps' oversight authority should not be deemed to confer "jurisdiction" is even more apparent in this case, where the central focus is allegations of deficiencies in federal flood control activities.  Congress has made clear through the Flood Control Act that it intends for such activities to be immune from suit.  Constructing flood control structures and exercising regulatory oversight over flood control structures can be much more obviously characterized as flood control activities than as activities relating to a "solid waste management facility" or "disposal site."  *See* 42 U.S.C. § 6961.[8]

Furthermore, taken to its logical extension, construing the exercise of oversight authority alone to give rise to "jurisdiction" under the RCRA waiver would lead to absurd results.  For example, the Federal Government (acting through the Environmental Protection Agency) has

---

[8] Contrary to LEAN's suggestion (*see* Opp. at 2), whether the Corps' regulations confer "jurisdiction" within the meaning of 42 U.S.C. § 6961 for purposes of the immunity inquiry is a pure issue of law, and the Court need not reach the merits of LEAN's claims to resolve the immunity issue.

-9-

oversight authority to enforce violations of RCRA requirements relating to hazardous waste at all hazardous waste sites. *See* 42 U.S.C. § 6928. Under LEAN's flawed logic, the existence of this oversight authority would presumably mean that the Federal Government has "jurisdiction" within the meaning of the RCRA waiver over *every* site at which hazardous waste is present. There is no reason to believe that Congress intended for the waiver to be so broadly construed.

### B. LEAN's Claims are Premised on Past Federal Activities.

LEAN is further mistaken in contending that the Corps is currently "engaged" in any relevant waste disposal activity within the meaning of the waiver at 42 U.S.C. § 6961(a). LEAN's claims in this suit are premised entirely on *past* alleged federal design and approval of flood control measures. To the extent LEAN purports to identify any ongoing federal flood control activities (*see* Opp. at 11, n.8), LEAN does not allege that these ongoing activities caused the alleged contamination resulting from Hurricane Katrina that LEAN seeks to abate.

LEAN points out that endangerment suits brought under 42 U.S.C. § 6972(a)(1)(B) generally can be based on past activities (*see* Opp. at 13), but as we set forth in our opening brief, nothing in 42 U.S.C. § 6972(a)(1)(B) waives immunity from suit under the Flood Control Act. *See* United States' Opening Brief at 14-17. Thus, the fact that citizen suits brought under 42 U.S.C. § 6972(a)(1)(B) can be based on past activities does not answer the question of whether LEAN has identified any applicable waiver of immunity in 42 U.S.C. § 6961(a). LEAN has not and cannot do so.

### CONCLUSION

For these reasons, and the reasons set forth in the Corps' opening brief, the Corps' motion to dismiss for lack of subject matter jurisdiction should be granted.

-10-

                                              -11-

                                              Respectfully submitted,

                                              MATTHEW J. McKEOWN
                                              Acting Assistant Attorney General
                                              Environment & Natural Resources
                                                  Division

                                              s/ Eric G. Hostetler
                                              ERIC G. HOSTETLER
                                              Environmental Defense Section
                                              Environment & Natural Resources
                                                  Division
                                              U.S. Department of Justice
                                              P.O. Box 23986
                                              Washington, D.C. 20026-3986
                                              (202) 305-2326

DATED: March 1, 2007

CERTIFICATE OF SERVICE

      I, Eric G. Hostetler, hereby certify that on March 1, 2007, I served a copy of the foregoing United States' Reply in Support of Motion to Dismiss on counsel of all parties to this proceeding electronically by using the CM/ECF system and/or by United States mail:

                             s/ Eric G. Hostetler
                             Eric G. Hostetler