UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION NUMBER: 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO:  MRGO, *Robinson,* (No. 06-2268) | |

**JOINT REPORT OF COUNSEL CONCERNING *ROBINSON* CASE**

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(f)**

At the status conference on February 13, 2007, the Court instructed the parties in the *Robinson* case to confer pursuant to Fed. R. Civ. P. 26(f) and to provide the Court with a joint report on the possibility of implementing a discovery and trial plan in *Robinson* separate from the case management plan for the consolidated litigation ("Joint Report"). Counsel for the *Robinson* plaintiffs and the United States conferred by telephone on February 26, 2007 and March 5, 2007 and have exchanged several drafts of a proposed Joint Report.  Despite good faith efforts to reach agreement on the issues, pretrial procedures, and dates detailed herein, counsel for both parties continue to have different

1

views on several issues.  Accordingly, these differences will be noted throughout this Report under separate subheadings of "Plaintiffs' Proposal" and "Defendants' Proposal" as well as respective objections, exceptions, and responses to each.

## I.   DISCOVERY AND SCHEDULING

### A. Plaintiffs' Proposal

Initial Disclosures

Pursuant to Rule 26(f)(1), the Plaintiffs propose that no changes should be made in the timing, form, or requirement for disclosures under Rule 26(a).  Plaintiffs agree to produce their initial disclosures under Rule 26(a)(1),(2) & (3) on April 7, 2007.  The United States has no objection to the Plaintiffs producing their initial disclosures on this date.

Topics for Discovery

Plaintiffs propose a plan to conduct discovery with respect to the following subjects and issues:

1.  The planning, authorization, construction, cost, maintenance, and operation of the Mississippi River-Gulf Outlet (the "MR-GO"), including without limitation any cost-benefits analysis and dredging history.

2.  Original plans, design memoranda and specifications for putative levees and other flood control structures along the MR-GO, the Gulf Intracoastal Waterway and the Inner Harbor Navigation Canal (*i.e.*, the Industrial Canal).

3.  The planning, authorization, construction, cost, maintenance, and operation of the "levees," spoil banks, and/or earthen embankments along the MR-GO.

4.  The United States Army Corps of Engineers' ("Army Corps") standards, criteria, methods or procedures for testing, analyzing, sampling and/or maintaining "levees," spoil banks, and/or earthen embankments.

5.  The Lake Pontchartrain and Vicinity Hurricane Protection Plan as it relates to the MR-GO and the construction of "levees" in the vicinity of the MR-GO.

6.  History of floods and flooding in Orleans and St. Bernard Parishes ("Greater New Orleans") since 1950.

7.  Modeling, forecasting, and/or predicting of hurricanes, tropical storms, and their related storm surge in Greater New Orleans since 1950.

8.  History of the state-of-the-art for modeling, forecasting, and/or predicting of tropical storms, hurricanes and their related storm surge in Greater New Orleans and elsewhere since 1950.

9.  Causes of floods and flooding of Greater New Orleans from tropical storms and hurricanes since 1950.

10. The areas of Greater New Orleans flooding during Hurricane Katrina and Hurricane Rita and the sources of the flooding and the relative contribution of the MR-GO to the flooding of areas of Greater New  Orleans.

11. Damages suffered by the *Robinson* plaintiffs.

12. Army Corps' levee design standards and criteria from 1950 to the present.

13. History of the state-of-the-art for design, construction, operation of navigable waterways and levees in the United States since 1950.

14. The MR-GO's impact on Greater New Orleans and surrounding environs, including records and reports dealing with wetland degradation in the Greater New Orleans area and any investigations or studies concerning remediation of any such wetland degradation in the Greater New Orleans area.

15. Army Corps' knowledge of any design or construction defects in the MR-GO, including warnings by local citizens, public officials, experts, and others.

16. Army Corps' interaction and communications with federal, state and local government agencies, citizens, and organizations concerning the MR-GO.

17. Public response to the MR-GO throughout its history.

18. The Beach Erosion Board and its study, analysis, and reporting on the MR-GO.

19. The Coastal Engineering Research Center and its study, analysis, and reporting on the MR-GO.

20. The effects of the connection of the MR-GO and the Gulf Intracoastal Waterway, commonly referred to as "the Funnel," during all hurricanes since the MR-GO's construction.

21. Army Corps knowledge of floods, and the causes of flooding, in Greater New Orleans and the role of wetlands as surge buffers since 1950.

22. History of the Army Corps' rules and regulations with respect to the investigation, design, construction, maintenance, or operation of the MR-GO, and water resource projects like the MR-GO, from 1950 to the present.

23. Condition and status of the MR-GO after hurricanes Katrina and Rita.

24. Post-Katrina investigations of putative levees and other flood control structures along the MR-GO, the Gulf Intracoastal Waterway and the Inner Harbor Navigation Canal.

25. Post-Katrina investigations of any contribution to the flooding of Greater New Orleans by the barge identified as ING 4727 owned and operated by the Ingram Barge Company.

26. The extent to which the Army Corps complied with all federal statutes and regulations and its own rules, standards, regulations, manuals and criteria in the planning, design, construction, operation and maintenance of the MR-GO.

27. The extent to which the Army Corps deviated from the route alignment and design from the MR-GO approved by Congress.

28. The respective percentages of fault for the flooding of Greater New Orleans attributable to the negligent planning, design, construction, operation or maintenance of the MR-GO and the failure of any flood control measures planned, designed, constructed, operated or maintained by the Army Corps.

Appointment of a Special Master

With regard to a Special Master, Plaintiffs believe that the expeditious, efficient, and fair resolution of the *Robinson* case would be materially enhanced if a Special Master were appointed to assist the Court with discovery disputes, claims management and processing, and settlement discussions in the *Robinson* case. Given the Court and Magistrate Judge's heavy docket of Katrina-related cases alone, and the desire to move the *Robinson* case forward to trial, a Special Master would be able to adopt streamlined procedures for prompt and informal resolution of issues and would be able to reduce the time period in which the Parties must wait for a determination of disputed discovery matters.

In section B (4), *infra*, the Government indicates that it does not object to the appointment of a Special Master for the purpose of managing discovery but not for settlement purposes. Without waving Plaintiffs' position that a Special Master for settlement purposes and claims management and processing is advisable, we join the Government in requesting the prompt appointment of a Special Master for discovery purposes, and we endorse the Government's nomination procedure (each side nominate two candidates if they cannot agree) and deadline of April 1, 2007.

Plaintiffs' Proposed Discovery and Trial Schedule

Pursuant to Rule 26(f)(2), the Plaintiffs propose that fact and expert discovery should be completed by February 1, 2008.  The Plaintiffs propose a scheduling order under Fed. R. Civ. P. 16(b) with the following dates:

| EVENT | PLAINTIFFS' PROPOSAL |
|---|---|
| Defendants' Answer Due | March 31, 2007 **[AGREED]** |
| Appointment of Special Master | April 1, 2007 **[AGREED]** |
| First Request for Production of Documents (Maximum 50 with subgroups) | March 30, 2007 |
| Initial Response to First Request for Production of Document | May 30, 2007 |
| First Set of Interrogatories (Maximum 50 with subgroups) | June 1, 2007 |
| Document Production to Third Parties | July 1, 2007 |
| Response to First Set of Interrogatories | August 1, 2007 |
| Commencement of Fact Depositions | August 7, 2007 |
| Second Request for Production of Documents (Maximum 50 with subgroups) | August 15, 2007 |
| Designation of Experts | October 1, 2007 |
| Response to Second Request for Production of Documents | October 15, 2007 |
| Commencement of Expert Depositions | November 1, 2007 |
| Exchange of Proposed Stipulated Facts (in lieu of Requests for Admissions) | January 4, 2008 |
| Fact and Expert Discovery Cut-Off | February 1, 2008 |

| Finalize Agreed Upon Stipulated Facts and File with Court | March 3, 2008 |
|---|---|
| File Motions for Summary Judgment | March 17, 2008 |
| Pretrial Conference and *Daubert* motions | May, 2008 |
| Trial | June 2008 |

**B.   Defendants' Exceptions to Plaintiffs' Proposal**

*1.   The Unites States takes exception to many of the proposed topics of discovery as being overly broad, unduly burdensome and irrelevant.  For example, certain requests – including but not limited to request numbers 8, 13, 22 – seek information related to unidentified waterways and storm surges.  Request 8 seeks information on the "[h]istory of the state-of-the-art for modeling, forecasting, and/or predicting of tropical storms, hurricanes and their related storm surge in Greater New Orleans and elsewhere since 1950," without specifying where "elsewhere" might be.  Request 13 seeks information on the "[h]istory of the state-of-the-art for design, construction, operation of navigable waterways and levees in the United States since 1950," without any limitation as to which waterways and levees.  Similarly, request 22 references "water resource projects like the MRGO," without specifying which projects and with no apparent limitation as to the location of these projects.  The requests are overly broad, unduly burdensome, and possibly irrelevant as they refer to waterways other than the MRGO and areas other than New Orleans.*

*The requests above, as well as request number 5 which seeks information on "[t]he Lake Pontchartrain and Vicinity Hurricane Protection Plan as it relates to the MR-GO*

and the construction of 'levees' in the vicinity of the MR-GO," are so overly broad and vague that discovery on any one of them could generate thousands, possibly millions, of pages of documents.  Documents related to the Lake Pontchartrain and Vicinity Hurricane Protection Plan alone would encompass most of our documents.  Even though topic number 5 is limited to the Hurricane Protection Plan as it relates to MRGO, the Plan was developed with MRGO as part of the landscape and, as such, the entire Lake Pontchartrain and Vicinity Hurricane Protection Plan "relates" to the MRGO.

Some requests – including but not limited to numbers 6, 7, 8, 9, 12, 13, 21, and 22 – have been limited to seeking information only as early as 1950.  Other requests, however, have no date limitation and are broadly worded to seek information that may date back far earlier than 1950 – including but not limited to numbers 1, 3, 4, 14, 15, 16, 17, 18, 26, and 27.  We are uncertain at this time whether the Corps maintains responsive records that go back as far as the time periods that the requests may encompass; records will have been destroyed in accordance with agency regulations.  Compiling records no longer kept in the regular course of business will be unduly burdensome and should not be required absent a showing of particularized need.

2.  Several of the proposed topics for discovery – including but not limited to numbers 6, 7, 8, 9, 10, 11, 13, 14, 17, 20, 24, 25, and 28 – seek information which is not in the United States' possession and over which it has no control.  The United States should not be required to produce documents and things that are not in its possession or within its control.  Plaintiffs bear the burden of obtaining information from entities who possess and control documents and things of interest to them.

3. Four of the proposed topics of discovery – numbers 18, 19, 24, and 25 – may seek information that is privileged.  The United States reserves the right, at the appropriate time and by the production of a privilege log, to claim any privileges which may apply to any of the Robinson Plaintiffs' discovery requests after the specific requests are made.

4. The Plaintiffs have requested the appointment of a special master as soon as possible.  The United States does not object to the appointment of a special master for the purpose of managing discovery but proposes that the parties confer to determine a list of four candidates (absent agreement, the parties would submit two nominees per side).  The parties should submit their list to the Court no later than April 1, 2007, so that the Court can choose from among the candidates submitted by the parties.  The United States objects to the appointment of a special master for settlement purposes.  It is our position that a settlement evaluation cannot be made until after liability and damages discovery has taken place and other jurisdictional motions that the United States may file have been considered.  Additionally, we would object to having the same special master who handled discovery matters conduct settlement discussions.

5. The United States objects to the plaintiffs' proposal because it does not allow summary judgment motions to be filed until after the completion of all discovery in this case.  As is set out below in the United States' proposal, a more reasonable approach is to first conduct limited discovery on unresolved factual issues that may determine whether or not jurisdiction exists before the parties engage in broader discovery on liability and damages.  In making this suggestion, we are not seeking to "postpone the day of reckoning

*as long as possible," as the plaintiffs have suggested we are trying to do.  Rather, we believe that we have valid immunity defenses that can be ruled on after limited discovery.*

*The Court recently denied the United States' motion to dismiss in the Robinson case, holding that certain discovery was needed to allow the Court to determine jurisdictional issues presented therein, including whether the United States is immune from liability under the Flood Control Act, 33 U.S.C. §702c.  Specifically, the Court concluded that the applicability of the Flood Control Act could not be decided on a Rule 12(b)(1) motion because the issue depended on a factual determination as to whether the alleged negligence was related to a flood control project such that immunity attached to the floodwaters at issue.  The Court indicated that the primary factual determination that had to be made to resolve this issue was whether levees exist along the MRGO, and, if so, whether those levees are truly flood control levees or merely mounds of dirt created by repeated dredging of the channel.  See Record Doc. 2994 at 15-16 ("There is intense disagreement as to the scope of the 'levees' that were created in the dredging of the MRGO – are these spoilbanks or actual flood control projects?"); see also id. at 16-17 ("[T]he lower court decision in Graci noted that the MRGO was 'totally unrelated to . . . the national flood control program' . . . . But, it is hotly contested whether this remains the case.  The Government now contends that certain 'levees' that were constructed in conjunction with MRGO constitute projects that would be subject to immunity under § 702c."  (internal citation omitted and bolded emphasis in original)).  At oral argument, the Robinson Plaintiffs acknowledged that the only factual dispute regarding the levees in this case is whether there are flood control levees along the MRGO.  See Transcript of Oral Argument, 70:21-23; 72:13-15.  Therefore, we submit that a logical way to conduct*

discovery in this case is to first conduct discovery on the existence and nature of the levees along the MRGO because a resolution of these issues are determinative of the Court's subject matter jurisdiction.

The issues on the merits that the plaintiffs want to try **at a later date** than that proposed by the United States for a trial on jurisdictional facts are unique to this case. There is no benefit to the overall litigation in the plan proposed by the plaintiffs. It is the Court's ruling on the factual issues concerning the applicability of the Flood Control Act that may help resolve or narrow the issues in other cases in which the same jurisdictional questions will be raised. The discovery and trial schedule submitted by the United States below is logical and would allow the Robinson case to proceed in a timely, efficient manner.

6. The United States has not yet answered the complaint. Therefore, the contours of the litigation plan proposed by the parties may require revision after the United States answers the complaint.

### C. Plaintiffs' Response to Government's Exceptions to Plaintiffs' Proposal

In response to the Government's initial draft of these exceptions, Plaintiffs have narrowed the scope of their proposed discovery, reduced the number of subjects, and shortened the time period covered by the subjects by 50 years—from 1900 to the present to 1950 to the present. Information dating back to 1950 is essential because this marked the beginning of the planning process for the MR-GO.

For the most part, the Government's objections are premature. Plaintiffs will propound interrogatories and document requests to which the Government can object if it believes they are overly broad, unduly burdensome or irrelevant.

11

*Information about the Army Corps' design, construction, maintenance, and operation of other waterways is relevant to its knowledge and state-of-the-art issues.*

*To the extent the Government does not have information covered by subjects in its custody, possession or control, it will not be required to produce it. Plaintiffs intend to seek information from third parties.*

*To the extent the Government claims privilege with respect to post-Katrina investigations, those issues can be addressed at the appropriate time.*

### D. Defendants' Proposed Discovery and Trial Schedule

For the Court's convenience, we provide this summary of our proposal:

| EVENT | UNITED STATES' PROPOSAL |
|---|---|
| Answer Due | March 31, 2007 **[AGREED]** |
| Appointment of Special Master | For discovery purposes only. Parties must submit their list of proposed candidates to the Court no later than April 1, 2007. **[AGREED]** |
| PHASE 1 – Initial Disclosures | <u>Plaintiffs</u> – April 7, 2007.<br><br><u>United States</u> – Rule 26(a)(1)(B) disclosures deemed satisfied (*See* Consolidated Cases CMO, Record Doc. 3299 at 22); Rule 26(a)(1)(A) disclosures made on same rolling schedule as document production. **[AGREED]** |
| PHASE 2 – Discovery Limited to Jurisdictional Issues | April 16, 2007 – June 18, 2007<br><br>• Discovery limited to the existence and nature of levees along the MRGO;<br>• Written discovery limited to jurisdictional issues and must be served on April 16, 2007. The two sides shall each have a total of 25 interrogatories, including subparts. Responses to written discovery are |

| | |
|---|---|
| | due 30 days from the date of request;<br>• All other discovery against the United States in the *Robinson* litigation is stayed until the jurisdictional issues are resolved by motion practice at the end of Phase 3 or by trial at the end of Phase 4. |
| PHASE 3 – Summary Judgment Motions on Jurisdictional Issues | <u>Motions filed</u>:  July 18, 2007, noticed for hearing on August 20, 2007.<br><br><u>Responses due</u>:  August 6, 2007.<br><br><u>Replies due</u>:  August 13, 2007. |
| PHASE 4 –  Trial on Jurisdictional Issues | <u>Joint pre-trial report due</u>:  August 31, 2007.<br><br><u>Pre-trial conference date</u>:  September 10, 2007.<br><br><u>Trial date</u>:  September 24, 2007. |
| PHASE 5 – Liability and Damages Discovery | <u>Document Production</u> – October 15, 2007 through August 18, 2008.<br>• Plaintiffs produce no later than July 16, 2007, a list of requests for documents not previously made available on the IPET website.  The list of requests shall be prioritized in the order that the plaintiffs would prefer the documents be produced;<br>• During the time frame above, the United States shall produce responsive, non-privileged documents on a rolling basis at intervals of 30 days;<br>• Documents shall be produced in the order set forth in the list of requests to the extent feasible;<br>• Documents available on IPET website need not be reproduced in response to any request;<br>• Any privileges claimed and/or objections to document requests will be set forth on the same rolling basis |

|  | as document production.<br><br>Written discovery (interrogatories and requests for admission) – must be served on March 3, 2008.<br>• The parties will be given a minimum of 90 days to respond.<br>• The two sides shall each have a total of 25 interrogatories, including subparts.<br>• Leave to serve additional interrogatories may be granted to the extent consistent with the principles of Rule 26(b)(2).<br><br>Fact depositions (including non-parties) – may be noticed beginning March 3, 2008, and no later than August 1, 2008.<br><br>Expert discovery<br>• Plaintiffs shall designate experts by June 2, 2008;<br>• The United States shall designate experts by July 1, 2008;<br>• Plaintiffs shall produce expert reports by August 18, 2008;<br>• The United States shall produce expert reports by September 17, 2008;<br>• Depositions of Plaintiffs' experts must take place by October 17, 2008;<br>• Depositions of the United States' experts must take place by November 17, 2008. |
|---|---|
| PHASE 6 – Pre-trial Motions (including *Daubert* motions) | Motions filed: December 17, 2008, noticed for hearing on January 29, 2009.<br><br>Responses due: January 16, 2009.<br><br>Replies due: January 26, 2009. |
| PHASE 7 – Trial on Liability and Damages | Joint pre-trial report due: February 9, 2009.<br><br>Pre-trial conference date: February 16, 2009. |

| | |
|---|---|
| | <u>Trial date</u>:  March 2, 2009. |

### Phase 1 – Initial Disclosures

The United States' initial disclosure requirement under Rule 26(a)(1)(B) is deemed satisfied in view of the Army Corps' production of a large number of documents to a public website.  *See* Consolidated Cases CMO, Record Doc. 3299 at 22 (holding same). The United States' Rule 26(a)(1)(A) disclosures shall be made on the same rolling schedule as its document production.

### Phase 2 – Discovery Limited to Jurisdictional Issues

A time period of approximately two months – beginning on April 16, 2007 and ending on June 18, 2007 – will be allotted during which discovery on the existence and nature of the levees along the MRGO must take place.  Written discovery during Phase 2 must be served on April 16, 2007, and must be limited to these jurisdictional issues.  Each side may propound a total of 25 interrogatories, including subparts.  Responses to written discovery are due 30 days from the date of request.  All other discovery against the United States in the *Robinson* litigation is stayed until these jurisdictional issues are resolved by motion practice at the end of Phase 3 or by trial at the end of Phase 4.

### Phase 3 – Summary Judgment Motions on Limited Jurisdictional Issues

At the completion of Phase 2, the parties shall be given one month – until July 18, 2007 – to file summary judgment motions.  The motions are to be noticed for hearing on August 20, 2007.  Responses are due on August 6, 2007, and replies on August 13, 2007.

Phase 4 – Possible Trial on Jurisdictional Issues

After the Court has ruled on the jurisdictional motions, a trial on these issues will be held September 24, 2007, if necessary. A joint pre-trial report (which would include stipulations, witness lists, and exhibits lists) is due on August 31, 2007. A pre-trial conference will be held on September 10, 2007.

Phase 5 – Liability and Damages Discovery

Should discovery on liability and damages be necessary following the Court's ruling on the above-referenced jurisdictional issues, it will be conducted as follows:

Document production will begin no earlier than October 15, 2007 and must be completed by August 18, 2008. The plaintiffs shall provide the United States with a prioritized list of requests for documents not previously made available on the IPET website no later than July 16, 2008. The list of requests shall be prioritized in the order that the plaintiffs would prefer the documents be produced. The United States shall produce responsive, non-privileged documents during the time frame above on a rolling basis at intervals of 30 days until the end of this time period. Documents shall be produced in the order set forth in the list of requests to the extent feasible. Documents available on the IPET website need not be reproduced in response to any request. Any privileges claimed and/or objections to document requests shall be set forth on the same rolling basis as document production. For example, if the United States were responding to the plaintiffs' first ten document requests in its first production, it would include a privilege log and objections responsive to only those ten requests along with its production.

16

The remaining forms of written discovery (interrogatories and requests for admission) must be served on March 3, 2008.  The parties shall be given a minimum of 90 days to respond.  The plaintiffs may propound a total of 25 interrogatories, including subparts, to the United States.  Likewise, the United States may propound a total of 25 interrogatories, including subparts, to the plaintiffs.  Leave to serve additional interrogatories may be granted to the extent consistent with the principles of Rule 26(b)(2).

The earliest date for noticing the depositions of fact witnesses (including non-party witnesses) is March 3, 2008.  Fact depositions must be concluded by August 1, 2008.

Expert discovery shall be conducted as follows:  (a) Plaintiffs must designate their experts by June 2, 2008; (b) the United States must designate experts by July 1, 2008; (c) Plaintiffs must produce their expert reports by August 18, 2008; (d) the United States must produce expert reports by September 17, 2008; (e) Depositions of the plaintiffs' experts must take place by October 17, 2008; (f) Depositions of the United States' experts must take place by November 17, 2008.

Phase 6 – Pre-trial Motions

Any pre-trial motions (including *Daubert* motions) must be filed by December 17, 2008, and noticed for hearing on January 26, 2009.  Responses are due on January 16, 2009.  Replies are due on January 26, 2009.

Phase 7 – Trial on Liability and Damages

A trial on liability and damages will take place beginning on March 2, 2009.  A joint pre-trial report (which would include stipulations, witness lists, and exhibits lists) is due on February 9, 2009.  A pre-trial conference will be held on February 16, 2009.

### E. Plaintiffs' Objections to Government's Proposal

*1. Plaintiffs' Agree with the Government's Phase 1 Proposal*

Plaintiffs have no objection to the Government's Phase 1 -- Initial Disclosure proposal.

*2. Plaintiffs' Objections to the Government's Phase 2 Proposal*

Plaintiffs oppose the Government's proposal to stay all other discovery until document production is complete and to allow no discovery other than discovery related to so-called "jurisdictional issues." Depositions should not be delayed until completion of all document production and written discovery. There are a number of depositions that will not require finalizing document production by the Government, including depositions of plaintiffs, percipient witnesses, and state and local officials with knowledge of the facts. These depositions could be taken in an initial phase of the Robinson litigation, followed by the remaining depositions after the Government completes document production on October 15, 2007 as proposed by Plaintiffs. Under the Plaintiffs' proposed discovery cut-off of February 1, 2008, that would allow an additional three and one-half months to complete depositions relating to the MR-GO for which the documents produced are necessary. Indeed, as the Government concedes, there will likely be a limited number of witnesses alive today who were involved with the MR-GO forty or fifty years ago.

Plaintiffs oppose the Government's proposal to slice the Robinson case into *seven phases* that will consume nearly two years and will result in a final judgment *four years after the Government's defective MR-GO is alleged to have drowned Greater New Orleans.* Because of the substantial overlap of facts bearing on jurisdictional and merits

determinations, the phasing proposed by the Government creates needless work for the parties and an unnecessary burden on the Court. The Government's proposed trial on jurisdictional issues (Phase 4) <u>in September 2007</u> would necessitate the production of evidence going to the merits of the case.

*The issue of what structures were or were not built along the MR-GO after 1965—and what role they played (if any) in causing the flooding—is also an issue central to a trial on the merits.

*Similarly, whether the Army Corps complied with federal statutes and regulations is an issue related to due care exception to the Federal Tort Claims Act as well as the issue of negligence on the merits.

*Likewise, with respect to the discretionary function exception, the alleged violation of the River and Harbor Act of 1945 and the Wildlife and Fisheries Act of 1946 -- as well as the choices made by Army Corps officials and the reasons behind those choices -- relate directly to whether the Army Corps was negligent in the planning, design, and construction of the MR-GO.

The so-called "jurisdictional issues" which the Government wants to carve out for special treatment are inextricably intertwined with the merits of Plaintiffs' claims. The Government is promoting false economies while at the same time delaying justice for tens of thousands of Katina victims. As the Fifth Circuit has advised, "[w]hen the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action, the court should assume jurisdiction over the case and decide the case on the merits." United States ex rel. Laird v. Lockheed Martin Eng'g and Sci. Servs. Co., 336 F.3d 346, 350 (5th Cir. 2003) (quoting Eubanks v. McCotter, 802 F.2d 790, 792-93 (5th Cir. 1986) (emphasis

*added).  This was precisely what this Court recently ruled in denying the Government's
motion to dismiss.  See Order and Reasons, dated February 2, 2007 at pages 4-7 (citing,
inter alia, Montez v. Department of the Navy, 392 F.3d 147 (5th Cir. 2004) ("where issues
of fact are central both to subject matter jurisdiction and the claim on the merits, we have
held that the trial court must assume jurisdiction and proceed to the merits."))*

*The inability to differentiate meaningfully between issues relating to jurisdiction
and the merits of Plaintiffs' claims was a primary reason for this Court's denial of the
Government's motion to dismiss.  Thus, on the issue of the Flood Control Act (33 U.S.C.
§702c), the Court ruled:*

> *The Government now contends that certain 'levees' that were
> constructed in conjunction with MRGO constitute projects that
> would be subject to immunity under §702c. As such, <u>clearly the
> viability of the cause of action against the United States is
> inextricably tied to the basis for the United States' claims of lack of
> jurisdiction.</u>  This fact is underscored by the requests for
> supplementation of the record, and the plaintiffs' request for Rule
> 56 discovery. . . . It is certainly not clear that the MR-GO has
> morphed into a hybrid flood control project/navigational aid
> project.*

*Order and Reasons, dated February 2, 2007 at pp. 16-17(emphasis added).*

*Similarly, the Court—citing "the quagmire of facts and issues which require
examination prior to this Court's ruling on the applicability of the 'due care' and
'discretionary function' exceptions"—denied the Government's motion to dismiss on the
second and third bases for the claimed lack of jurisdiction. Order and Reasons, dated
February 2, 2007 at p.34.  Again, the Court was persuaded that the Plaintiffs had offered
more than sufficient evidence on these putative exceptions to the Federal Tort Claims Act
to "raise issues that are inextricably tied to the gravamen of plaintiffs' cause of action . . .
." Id. at p. 33.*

The Government has created an artifice in proposing three phases related to jurisdictional issues—discovery, summary judgment, and trial. Besides consuming an extraordinary amount of time and resources (up to at least September 24, 2007), it is highly unlikely that the Government will prevail on summary judgment in light of the substantial number of sharply disputed facts, thereby requiring a trial on issues that are immutably interconnected with the merits of Plaintiffs' causes of action. The same conflict in the evidence that led to denial of the motion to dismiss will hardly be eliminated by discovery.  Indeed, if anything, the record by the close of discovery and argument on summary judgment will undoubtedly reflect even more genuine issues of intensely disputed facts.

Finally, under the Plaintiffs' proposed discovery plan, the Government will have an opportunity to seek summary judgment on jurisdictional and any other issues that it chooses.  Plaintiffs have proposed ample time for the filing of summary judgment motions on March 17, 2008—one and one-half months after discovery cut-off.  If those motions are denied, the case will be able to proceed to trial since, under the Plaintiff's proposal, _all_ discovery—jurisdictional and merits as well as fact and expert—will have been completed.

3. _Plaintiffs' Objections to the Government's Phase 3 Proposal._

See Plaintiffs' Objections to the Government's Phase 2 Proposal, supra.

4. _Plaintiffs' Objections to the Government's Phase 4 Proposal_

See Plaintiffs' Objections to the Government's Phase 2 Proposal, supra.

From the very outset of filing its lawsuit in April 2006 (immediately after the expiration of Plaintiffs' six-month waiting period), the MR-GO Litigation Group has pressed for an expeditious trial so that the Government's liability for flooding over half of

21

*Greater New Orleans could be promptly determined in time for the victims to realize any practical benefit from the victory. As the Court so aptly noted in its Case Management and Scheduling Order No. 4, "it is the duty of the Court to bring resolution to the various issues presented to it in a time frame that gives the resolution at least some temporal relevance." (Page 3). As it is, even under Plaintiffs' proposal, the Robinson case will not go to trial until June 2008. Unlike the Government's glacial pace that denies due process to Katrina victims, Plaintiffs have sought to strike a balance between the Government's need to prepare and the claimants' right to a trial date that offers some prospect of securing just and timely compensation.*

   5.  *Plaintiffs' Objections to the Government's Phase 5 Proposal*

*The Government proposes that liability and damages discovery consume 13 months—from October 15, 2007 to November 17, 2008. On its face, this timetable is excessive.*

*First, the Robinson case for the most part entails few of the issues common to cases in the other groups. Robinson involves only the MR-GO, only the Federal Tort Claims Act, and only flooding in the Upper and Lower Ninth Ward, New Orleans East, and St. Bernard Parish. Issues involving levee design, construction, and maintenance along the 17th Street and London Avenue Canals are not germane to the Government's liability with respect to the Robinson Plaintiffs.*

*Second, Plaintiffs propose <u>ten months</u> for fact and expert discovery on liability and damages -- between March 30, 2007 and February 1, 2008. This is more than sufficient time for the Government to take and respond to discovery on the circumscribed issues related to the Robinson case. This is especially true since the Army Corps commissioned*

an expert study of the causes of the flooding and that report was completed and released to the public in June 2006. *See Interagency Performance Evaluation Task Force (IPET), Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System, June 1, 2006.*

Third, Plaintiffs' proposed timetable allows for at least 60 days for the Government to respond to each set of interrogatories and document requests.

Fourth, Plaintiffs have agreed to limit sets of interrogatories and document production requests to a maximum of 50 with subparts.

Finally, in an effort to eliminate unnecessary issues for trial, Plaintiffs propose—and urge the Court to require—the parties stipulate to as many facts as possible before filing motions for summary judgment and before trial. In fact, Plaintiffs believe that after discovery, many of the facts concerning the MR-GO—including its history, planning, construction, operation and maintenance, its role in the destruction of the surge-buffering wetlands, and the unheeded warnings about its defects—will be largely undisputed.

Plaintiffs are amenable to the Government's proposal to assert claims of privilege and/or objections on the same rolling basis as document production. The proposed bi-monthly reporting on document production status is acceptable.

6. *Plaintiffs' Objections to Government's Phase 6 Proposal*

See Plaintiffs' Objections to the Government's Phase 5 Proposal, supra.

Plaintiffs' proposal allows for pre-trial motions (including Daubert) in May 2008.

7. *Plaintiffs' Objections to Government's Phase 7*

Plaintiffs strenuously oppose the Government's entire proposed discovery and trial schedule. Under the Government's recommended timetable, the Robinson case would not

go to trial on liability and damages <u>until March 2009</u> -- three and one-half years after Hurricane Katrina. This is a disservice to the victims for whom justice delayed will be justice denied. The Government's apparent strategy is to postpone the day of reckoning as long as possible.

The Court has expressed an interest in expeditiously advancing the Robinson case to trial. Plaintiffs have proposed a timetable that allows discovery to be done in an orderly and efficient manner, mindful of the need to have a trial on the merits as soon as practicable while allowing the parties sufficient time to prepare. The Robinson case was filed in April 2006. A trial two years later in June 2008 is eminently reasonable.

The Robinson case presents a unique opportunity for a "test case" of the Government's liability for the flooding of more than 50% of Greater New Orleans. A verdict for the Robinson plaintiffs has the potential to serve as a catalyst for a global settlement via a negotiated resolution with the Army Corps or Congressional legislation. Indeed, this is precisely the type of case—with hundreds of billions of dollars in claims filed by an estimated 100,000 victims to date—that demands this kind of bellwether trial.

## F. Defendants' Response to Plaintiffs' Objections

1. In Plaintiffs' objection number 2, they mistakenly assert that the United States proposes to stay all other discovery until document production is complete and that depositions should be delayed until the completion of all document production and written discovery. To clarify, the United States proposes that jurisdictional discovery limited to the existence and nature of the levees along the MRGO take place first and that discovery on all other issues be stayed until the jurisdictional issues are resolved by motion practice or by trial in September 2007. Once the jurisdictional issues are resolved, our proposal

24

provides for overlapping time periods for document production and fact and expert discovery on liability and damages issues. For example, document production in Phase 5 runs from October 15, 2007 – August 18, 2008. Fact depositions may be noticed as early as March 2, 2008, written discovery must be served by March 3, 2008, and expert discovery begins in June 2008.

2. Plaintiffs' objection number 2 also mistakenly assumes that the United States is seeking jurisdictional discovery related to the due care and discretionary function exceptions to the Federal Tort Claims Act. (See Plaintiffs' references to whether the Army Corps complied with federal statutes and regulations, the alleged violation of the River and Harbor Act and Wildlife and Fisheries Act, and the due care and discretionary function exceptions). The United States proposes limited jurisdictional discovery only on the existence and nature of the levees along the MRGO in order to determine whether the Flood Control Act applies.

3. The Plaintiffs complain throughout their objections that the timeframe proposed by the United States for this litigation is excessive. However, the Plaintiffs' primary complaint seems to be that they do not want to engage in jurisdictional discovery at the beginning of the case which might resolve the case. Subtracting the 5 months that the United States has suggested for jurisdictional discovery, motion practice on jurisdictional issues, and a possible trial on jurisdictional issues (Phases 2-4), the difference between the United States' proposal and the Plaintiffs' proposal is that the United States' proposal is approximately 4 months longer. The topics for discovery suggested by the Plaintiffs are quite broad, which is why the United States has proposed a longer discovery schedule than the Plaintiffs.

## II.   Other Rule 26(f) Issues

### A.  Both Parties

The Parties agree that they will meet and confer promptly to attempt to agree upon a procedure under Rule 26(f)(3) relating to disclosure or discovery of electronically stored information.

By agreement of counsel or subject to order of the Court, if the parties become aware of persons who possess relevant information but who by reason of age or ill health may become unavailable for deposition, the deposition may be taken as soon as practicable.

The Parties further agree that they will meet and confer promptly to attempt to agree upon a procedure under Rule 26(f)(4) for a protective order to deal with claims of privilege, privacy, proprietary information and the like.

### B.  Plaintiffs

The Plaintiffs are not aware of any issues related to claims of privilege or protection pursuant to Rule 26(f)(4).  Plaintiffs have agreed for the present not to request any limitation on discovery pursuant to Rule 26(f)(5).

III.   **Further Orders**

Pursuant to Fed. R. Civ. P. 26(f)(6), the parties propose that at this time no other orders be entered by the court under Fed. R. Civ. P. 26(c) or Fed. R. Civ. P. 16(b) or (c).

Other than the foregoing, the Parties make no further proposals at this time regarding orders that should be entered by the Court pursuant to Fed. R. Civ. P. 16(b) or 16(c).

Dated:  March 8, 2007                                         Respectfully submitted,

**Plaintiffs' Subgroup Litigation Committee-MRGO**
James P. Roy
Pierce O'Donnell
John Andry
Clay Mitchell


By:  s/ Pierce O'Donnell
BY CONSENT
     Attorneys for Plaintiffs
     Pierce O'Donnell (*pro hac vice*)
O'Donnell & Associates PC
550 South Hope Street, Suite 1000
Los Angeles, California 90071-2627
Telephone: (213) 347-0290
Facsimile:  (213) 347-0299
pod@oslaw.com

**United States Department of Justice**

By:  s/ Robin D. Smith
     Attorney for Defendants
     Robin D. Smith
Torts Branch, Civil Division
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4289
Facsimile:  (202) 616-5200
robin.doyle.smith@usdoj.gov

27