UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| **IN RE: KATRINA CANAL BREACHES** | * | **CIVIL ACTION** |
| **CONSOLIDATED LITIGATION** | * | |
| | | **NO. 05-4182 "K" (2)** |
| _____ | * | |
| **PERTAINS TO LEVEE:** | * | **JUDGE DUVAL** |
| *La. Environmental Action Network* | | |
| *(06-9147)* | | **MAG. WILKINSON** |

**MEMORANDUM IN OPPOSITION TO UNITED STATES'
MOTION TO DISMISS UNDER 12(b)(6)**

**NOW INTO COURT** through undersigned counsel, come Plaintiffs in *Bourgeois et al.*, Case No. 06-5131, *Adams et al.*, Case No. 06-5128 and *Ferdinand et al.*, Case No. 06-5132, home, property and business owners, and residents who suffered damages and losses from flooding proximately caused by the failure of the London Outfall Canal Levee, to file this Opposition to the Motion of the United States to Dismiss the claims asserted by the Louisiana Acton Environmental Network (LEAN. (Doc. 2951)

Amici Plaintiffs assert claims in three geographic areas, neighborhoods, to wit:

  1. The Old Gentilly and Lake Terrace (No. 06-5131, Bourgeois),

  2. The Lakeview, Carrollton and Hollygrove Plaintiffs (No. 06-5116, Adams),

and

  3. The Bywater and Mid City Plaintiffs (No. 06-5132, Ferdinand).

Amici Plaintiffs who suffered losses and damages due to flooding related to the failure of the London Avenue Canal and its closure.

In its Motion to Dismiss, the United States Army Corps claims that it enjoys immunity from claims of flooding from the London Avenue Canal by virtue of Section 702c of the 1928

Flood Control Act. It offers the Declaration of LTC Murray Starkel, Deputy District Commander of the New Orleans District of the Army Corps of Engineers, to support its assertion. (Doc. 2851-5) Defendant LEAN opposes the Motion contending that the Resources and Recovery Act (RCRA) is applicable, and that the waiver of sovereign immunity in RCRA trumps the 1928 Flood Act Immunity. Issue is joined accordingly.

Your Amici Plaintiffs offer no further argument on the RCRA immunity waiver issue, at this time. Rather, Amici Plaintiffs feel constrained to observe that it is by no means settled, that absent a RCRA waiver, Section 702c would afford immunity for London Avenue Canal related flooding losses. Amici Plaintiffs seek declaratory judgment on the issue in their Complaints.

## Summary of the Argument

To be immune under Section 702c, the damages must be caused by floodwaters carried by from a Federal Flood Control Project "designed and operated" as such[1], and the London Outfall Canal was neither designed nor operated as a federal flood control project. *Central Green Co. v. United States,* 531 U. S. 425 (2001).[2] The London Avenue Outfall Canal was designed and constructed by state interests entirely apart from the Federal Flood Control, and was operated as an outfall drainage canal.

Furthermore, though portions of the London Avenue Outfall Canal (north of the pumping station) were included in the Lake Pontchartrain & Vicinity Hurricane Protection Project, that inclusion did not effect a redesign as a federal flood control work on which immunity as defined in *Central Green*, is predicated. In fact, the LP&V Project was contained in the letter of the Chief of Engineers "on a review of reports . . . authorized by the Rivers & Harbors . . ." Chief's

---

[1] *Central Green,* 531 U.S. 425, 837 (2001) itself defined the "character of the waters" as "all waters that flow through a federal facility designed and operated, at least in part, for flood control purposes".

[2] Plaintiffs' views are contained in Amici Brief filed in Opposition to the United States' Motion to Dismiss in O'Dwyer. ( Doc. 2320)

2

Letter, Starkel Declaration, Exhibit G (Doc. 2951-12), and was adopted to mitigate the risk of exposure due to the construction of the MR-GO, a Highway of Commerce, made apparent by Hurricane Betsy. Cf. *Graci v. United States*, 456 F2d (5 Cir.; 1971). The belated inclusion of portions of the London Avenue Canal in the High Level Plan did not federalize the levees for flood control purposes. No work was done. The work later performed was commenced through the 1992 Energy & Water Development Appropriation Act, otherwise thus as designed by the Corps.

Finally, the flood waters which damaged your Amici Plaintiffs, though proximately caused by the failure of the London Avenue Canal, and the fault of the Corps, were not "of waters that flow through a federal facility designed and operated, at least in part, for flood control purposes" on which immunity depends under *Central Green*.

## Law & Argument

The closure of the London Avenue pumping station, as a result of the failure of the levees federalized by the Lake Pontchartrain & Vicinity Hurricane Protection Plan improvements in 1997, was a proximate cause of the flooding suffered by Amici Plaintiffs. The Berkley Final Report expressed the opinion thusly: "loss of drainage capabilities as a result of breach of the drainage canals [such as within the 17th Street Drainage Canal, and the London Avenue Canal . . .]," which it identifies among the "three other significant pump and drainage system based failures." July 31, 2006 Report pp. 10-31. Memorandum Excerpt, Exhibit A.

It is misleading to simply say that the LP&V Project was originally authorized in the Federal Flood Act of 1965 (Starkel Declaration, para. 15) and to refer to the Lake Pontchartrain project as "flood protection control works." Starkel Declaration, para 10) Though Title II of Public Law 89-289 "may be cited as the Flood Control Act of 1965"( Sect.222), Section 201 (a)

3

defines the scope as authorizing the Corps "to construct, operate and maintain any water resource development project, involving, but not limited to , navigation, flood control and shore protection."  Exhibit B, p. 1075.  Furthermore, The Lake Pontchartrain project was not specified as a "flood control and improvement of the lower Mississippi River, adopted by the Act of May 15, 1928 (45 Stat 534) as amended or modified", rather the project was authorized in accordance with House Document 231, authorized by the Rivers & Harbor Act approved March 2, 1945.

It is a misstatement to refer to the LP&V project "a part of a broader federal flood control project." 1984 Reevaluation Plan.[3]  p.15.  The Lake Plan adopted in 1966 contemplated the closure of the Lake's three tidal passes at the Rigolets, the Chef and Seabrook (Inner Harbor Navigational pass) "the latter said to be a feature of the MR-GO Navigation Project".  p. 34.  In 1966, "the return levees paralleling the canals to the pumping stations were considered adequate." *Id.* p. 39.  No work was commissioned on the return levees in the 1966 Plan.  The 1984 Reevaluation Study which abandoned the Barrier Plan in favor of the High Level Plan included portions of these return levees, calling for elevating their heights, and "installing auxiliary pumping stations . . . at the lake to provide pumping capability when the flood gates were closed."  The portions of the outfall canals or return levees inside the pumping station were not incorporated in the Lake Plan, nor were the expenditure of federal funds for their improvement authorized.

Finally, the 1992 Energy & Water Development Appropriation Act mandated construction of the outfall levees.  The IPED Report, Exhibit C, describes it as follows:

> On February 7, 1985, the Director of Civil Works for the Corps of Engineers, after reviewing the reevaluation study and the final supplement to the environmental impact statement, approved the post-authorization change for the Lake Pontchartrain, Louisiana, and Vicinity Hurricane Protection project, thereby formalizing the High Level Plan.  In turn, the New Orleans District commenced

---

[3] The Reevaluation Plan is included in the Rule of Evidence 201 Submission filed at Doc. _____.

4

examining two alternative plans for providing "high level" standard project hurricane protection for the outfall canals—fronting protection in the form of gated structures at the canal entrances from the lake, and parallel protection in the form of floodwalls and flood proofing of bridges. The plans and designs for the outfall canals called for gated control structures at or near the canal entrances to the lake, but the local sponsor, the Orleans Levee Board, indicated its preference for parallel protection. *Congress settled the dispute through the 1992 Energy and Water Development Appropriations Act, which mandated construction of the parallel protection plan*. Emphasis Added. Final Draft, Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System, June 1, 2006.

## Conclusion

Regardless of the merit of LEAN's RCRA waiver claim, Section 702c does not preclude all claims for damage from the London Canal floodings. The United States' blanket assertion of Flood Act Immunity should be rejected.

March 8, 2007.

                                                            Respectfully submitted,

| | |
|---|---|
| OF COUNSEL: | /s/ William C. Gambel |
| MILLING BENSON WOODWARD, LLP | WILLIAM C. GAMBEL (#5900) |
| | 909 Poydras Street, Suite 2300 |
| | New Orleans, LA  70112-1010 |
| | Telephone:  (504) 569-7000 |
| | Telecopy:    (504) 569-7001 |
| | wgambel@millinglaw.com |
| | |
| | Attorneys for Amici Plaintiffs |

John J. Cummings, III (#4652)
Cummings & Cummings
416 Gravier Street
New Orleans, LA  70130
Phone:  (504) 586-0000
Fax:     (504) 522-8423

W359069

5

CERTIFICATE OF SERVICE

    I certify that on this 8th day of March, 2007, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana, and all counsel of record are being served this filing by either the Court's electronic filing system, email, or by telefaxing and/or placing a copy of same in the United States mail, properly addressed with adequate postage affixed thereon.

                                                                   /s/ <u>William C. Gambel</u>

W359069