UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JUDY M. PAUL and<br>WILLIE MACKIE, SR.<br>           Plaintiffs, | * * * * | CIVIL ACTION<br><br>NO. 07-993 |
| VERSUS | * * | SECTION "K" |
| SEWERAGE AND WATER BOARD OF<br>NEW ORLEANS, BOARD OF<br>COMMISSIONERS FOR THE<br>ORLEANS LEVEE DISTRICT, BOARD<br>OF COMMISSIONERS OF THE PORT<br>OF NEW ORLEANS, THE CITY OF<br>NEW ORLEANS, NEW ORLEANS<br>PUBLIC BELT RAILROAD<br>COMMISSION, CSX<br>TRANSPORTATION, INC., BNSF<br>RAILWAY COMPANY, f/k/a<br>BURLINGTON NORTHERN AND<br>SANTA RE RAILROAD COMPANY,<br>and THE LOUISIANA DEPARTMENT<br>OF TRANSPORTATION AND<br>DEVELOPMENT<br>           Defendants. | * * * * * * * * * * * * * * * * * | MAGISTRATE<br>DIVISION (2)<br><br>Removed from the Civil District<br>Court for the Parish of Orleans,<br>State of Louisiana, Division "I-14" |

* * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(b)(6)**

I.    **INTRODUCTION**

    A.    **FACTUAL BACKGROUND**

The plaintiffs filed this civil class action in Civil District Court for the Parish of Orleans, State of Louisiana, on August 28, 2006. The complaint includes a claim that

-1-

defendant, the Public Belt Railroad Commission for the City of New Orleans (the "Public Belt"), along with CSX Transportation, Inc. ("CSXT"), and BNSF Railroad Company (together "the Railroad Defendants'), was negligent in failing to properly maintain and repair railroad tracks from which a train derailed on September 11, 2004.  Complaint ¶¶ 21-25.

In addition to the Railroad Defendants, the other defendants are state and local governmental agencies, each of which is alleged to have some responsibility for construction and maintenance of flood control systems (and/or drainage and pumping systems) located at the 17 Street Canal, the London Avenue Canal, the Mississippi River Gulf Outlet, and the Inner Harbor Navigational Canal.  Those defendants are the Sewerage and Water Board of New Orleans, the Board of Commissioners of the Orleans Levee District (the "Levee Board"), the City of New Orleans, and the Louisiana Department of Transportation and Development.  The plaintiffs allege that the governmental defendants were negligent in performing their duties with respect to flood control and/or drainage and pumping, and that such negligence caused or contributed to the catastrophic flooding from Hurricane Katrina beginning on August 29, 2005.

The plaintiffs' sole claim against the Railroad Defendants is based upon a train derailment near the Inner Harbor Navigational Canal on September 11, 2004, some eleventh months before Hurricane Katrina.  The plaintiffs allege that one of the derailed cars damaged Flood Gate W-30 on the western seawall of the Inner Harbor Navigational Canal. Complaint, ¶ 24.

The plaintiffs allege that the Railroad Defendants failed to replace the damaged flood gate prior to Hurricane Katrina "so as to prevent entry of storm surges into the adjacent community." Complaint, ¶ 38(G).  In truth, of course, the Railroad Defendants have no duty or opportunity to make repairs themselves to the flood gate, or to replace the flood gate, which is owned and managed by the Levee Board.  The plaintiffs themselves contend that the defendant Levee Board is liable for its failure to promptly repair or replace Flood Gate W-30, and in failing to promptly "plug the gap" created by the missing Flood Gate W-30. Petition, ¶ 34 A, B, and C. The plaintiffs correctly allege that, pursuant to La. R.S. 38:307, the Levee Board has the legal responsibility and duty to construct and maintain the levees "and other works in relation to such projects." Petition,

¶ 4B. The plaintiffs fail to acknowledge that La. R.S. 38:307 grants the Levee Board "full and <u>exclusive</u> right, jurisdiction, power and authority" (emphasis supplied) over the levees and related public works.

To sue the Railroad Defendants for failure to repair the flood gate is analogous to suing the School Board or a private individual for failure to repair the flood gate after a school bus or a privately-owned automobile struck and damaged it. Neither the School Board, a private individual nor the Railroad Defendants have a duty or an opportunity to make repairs, themselves, to a flood gate damaged by the alleged negligence of such entities.

### B. PROCEDURAL HISTORY

The thrust of the plaintiffs' claims against the Railroad Defendants focuses on railroad track inspection and maintenance. Complaint, ¶s 23, 38D and F. State law negligence claims for personal injuries and property damage based upon negligent track maintenance and inspection are completely preempted by the Federal Rail Safety Act, 49 U.S.C. §§ 20101 – 20117 (the "FRSA"). On that basis, CSXT removed this action to the Court pursuant to this Court's federal question jurisdiction on October 10, 2005. The matter, then No. 06-7682, was consolidated with the Katrina Canal Breaches Consolidated Litigation, No. 05-4182.

On January 16, 2007, this Honorable Court issued an Order and Opinion (document ("doc.") no. 2718 in the Katrina Canal Breaches Consolidated Litigation), which granted the plaintiffs' motion to remand the case to state court.[1] The plaintiffs' remand motion is doc. no. 1543.

Earlier, the plaintiffs had voluntarily dismissed CSX Transportation, Inc. ("CSX") and BNSF Railway Company, Inc. ("BNSF") as defendants in the *Paul* case, and the Court's Order and Opinion mistakenly stated that CSX and BNSF were "<u>the only two parties who opposed the motion to remand</u>, [and they] have been dismissed from the lawsuit." *Id.*, doc. no. 2718, p. 2.

In fact, the Public Belt had also opposed the plaintiffs' remand motion, but the Court failed to note or consider the Public Belt's opposition before granting the plaintiffs'

---

[1]   The Court's Order and Opinion was also entered as document no. 6 in the *Paul* case, 06-7682.

remand motion.[2] Thus, on January 19, 2007, the Public Belt filed its Rule 60(b) Motion for Reconsideration of Order Remanding Case to State Court Due to Mistake of Fact (doc. no. 2731), which was submitted for decision on February 7, 2007. No decision had been rendered on the Public Belt's motion for reconsideration at the time the instant Motion to Dismiss was filed.

However, it appears that the Court has no jurisdiction to reconsider its order remanding the case to state court for lack of subject matter jurisdiction, even if the decision was in error, or was due to a mistake of fact. See, *e.g., Helmer v. Weaver*, 123 F. Supp. 2nd 1010 (E.D. La. 2000) (and cases cited therein), relying upon 28 U.S.C. § 1447(d): "An order remanding a case to the State Court from which it was removed is not reviewable on appeal or otherwise." Emphasis added.

Thus, on February 15, 2007, the Public Belt removed this case for a second time, based upon federal question jurisdiction. See, *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996), recognizing that a defendant may file a second removal when an initial attempt at removal fails.

Now, the Public Belt has filed this Motion to Dismiss Pursuant to F.R.C.P. Rule 12(b)(6). The Plaintiffs' state court removed Petition does not state a claim against the Public Belt. Indeed, the plaintiffs cannot state a claim against the Public Belt based upon the facts of the September 11, 2004 train derailment that allegedly damaged Flood Gate W-30, for three reasons.

**First,** the Public Belt has no duty to repair the floodgate, nor does it have any right or opportunity to repair the floodgate. The floodgate has been at all pertinent times in the care, custody and control of a co-defendant, the Levee Board. Pursuant to La. R.S. 38:307, the Levee Board has the "full and exclusive right, jurisdiction, power, and authority to locate, relocate, construct, maintain, extend, and improve levees, embankments, seawalls, jetties, breakwaters, water-basins and other works within its district; . . ." (emphasis supplied).

**Second,** the September 11, 2004 derailment was not the legal, or proximate, cause of the plaintiffs' flood damage.

---

[2] In the "Memorandum of the Public Belt Railroad Commissions for the City of New Orleans in Opposition to Motion to Remand," doc. no. 1969-3, these facts are discussed in more detail.

**Third**, the plaintiffs' state law negligence claims are preempted by the FRSA.

Thus, granting the plaintiffs leave to amend would be futile, because the Public Belt had no duty to repair the damaged floodgate, or to protect the plaintiffs or the public from flooding, and because the plaintiffs' state law claims are preempted by federal law. The grant or denial of an opportunity to amend is within the discretion of the District Court, but leave to amend need not be granted when amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962); *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 386-388 (5th Cir. 2003).[3]

The plaintiffs' claims against the Public Belt should be dismissed with prejudice. Allowing the plaintiffs to amend their Complaint would be a futile act.

## II. ARGUMENT

### A. Standard of Review

Under F.R.C.P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The Court may not dismiss a claim unless it appears certain that the claimant cannot prove any set of facts in support of its claim that would entitle it to relief. *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 764 (5th Cir. 1996). However, conclusory allegations masquerading as factual conclusions will not defeat a motion to dismiss. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); see also *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974) (Conclusory allegations and unwarranted deductions of fact are not admitted as true). Courts do not have to accept "legal conclusions, 'unsupported conclusions,' 'unwarranted references,' or 'sweeping legal conclusions cast in the form of factual allegations.'" 5A, Wright & Miller, *Federal Practice and Procedure*, §1357, at 315-18.

---

[3] The Public Belt filed an Answer to the plaintiffs' complaint on December 4, 2006, while this action was pending herein as a result of the initial removal. The Answer is document no. 1958 in the Katrina Canal Breaches Consolidated Litigation.

B.  **The Public Belt Does Not Have a Duty in Tort to Repair Floodgate W 30, Nor Is It Permitted by Law to Repair a Floodgate.**

Pursuant to state law, the Board of Commissioners of the Orleans Levee District has full and exclusive jurisdiction over the levees and flood control structures within its jurisdiction, and its jurisdiction includes the levees and flood control structures of the Inner Harbor Navigational Canal (known as the Industrial Canal) and the other canals in Orleans Parish that are connected to Lake Pontchartrain.

La. R.S. 38:307(A)(1) provides, in pertinent part:

**Orleans Levee District; powers of board of commissioners**

> The board of commissioners of the Orleans Levee District ... shall have full and **exclusive** right, jurisdiction, power, and authority to locate, relocate, construct, maintain, extend, and improve levees, embarkments, seawalls, jetties, breakwaters, water-basins, and other works in relation to such projects . . . along, over, and on the shores, bottom, and bed of Lake Pontchartrain in the parish of Orleans from its western boundary to the boundary line separating township 11 south, range 12 east, from township 11 south, range 13 east, at a distance not to exceed three miles from the present shore line, as the board may determine, and along and on the shores adjacent to the lake and along the canals connected therewith. The levees, embankments, seawalls, jetties, breakwaters, waterbasins, and other works shall be of such character and extent and of such height, width, slope, design, and material as the board determines, with power and authority to improve and to protect the same with such other structures as are deemed necessary and proper by the board.

*Id.*; emphasis supplied.[4]

Federal law provides that the U.S. Army Corps of Engineers has the duty and responsibility to protect the population of the United States, including the City of New Orleans, from flooding. See 33 U.S.C. §701, *et seq.*

The Public Belt Railroad Commission for the City of New Orleans is an autonomous political subdivision of the State of Louisiana, analogous to the Sewerage & Water Board of New Orleans. *Cooper v. Public Belt Railroad*, 2003-2116 (La. App. 4th Cir. 10/6/04), 886 So.2d 531, 536-37, *writ denied*, 2004-2748 (La. 1/28/05), 893 So.2d

---

[4]  As noted at pages 2-3, *supra*, the plaintiffs explicitly pleaded that the Levee Board has the statutory authority as set out in La. R.S. 38:307.

75.[5] The Public Belt has no duties, responsibility, ownership, care, custody or control with respect to any flood control system, levees, flood walls, floodgates or related appurtenances. La. R.S. 33:4530(C) provides that the "control, operation, management and development of the public belt railroad system shall be exclusively vested in" the Public Belt Railroad Commission for the City of New Orleans.

The limited delegation of power by the legislature to the Public Belt authorizes the Public Belt only to control, operate, manage and develop a public belt railroad system, not to construct, maintain or repair any floodgates, levees or flood control systems.

In addition, the Public Belt has never had custody, control or *garde* of Floodgate W-30, or any floodgate, levee, or portion of any flood control system. The plaintiffs do not allege that Floodgate W-30 is part of the Public Belt's railroad system, or that the Public Belt ever had custody, control or *garde* of Floodgate W-30 or any portion of the flood control system of the Inner Harbor Navigational Canal, nor could they truthfully make such an allegation.

Earlier in the Katrina Canal Breaches Consolidated Litigation, the Court granted the City of New Orleans' Motion to Dismiss for Failure to State a Claim in several cases. Order and Reasons (September 13, 2006), Document No. 1133. That decision stated:

> The gravamen of the City's motion is that plaintiffs in these cases seek damages allegedly caused by the breach of the levees and flood walls in the aftermath of Hurricane Katrina. However, as the City of New Orleans does not own and has no *garde*, care, custody of control of the levees in question, and the City of New Orleans did not participate in the design, construction, or maintenance of the levees, no cause of action lies against it.
>
> . . . [S]tatutorily, the City of New Orleans is not responsible for the levees. La. Rev. Stat. 38:307 provides that the Board of Commissioners of the Orleans Levee District has the full and exclusive right and jurisdiction over the levees and La. Rev. Stat. 38:301 provides that the levee districts have the right to maintain levees. Thus, it is clear that there are no duties which the City of New Orleans has with respect to the levees.

---

[5]   Article VI Section 44(1) of the Louisiana Constitution defines "local political subdivision" to mean "any parish or municipality," and Section 44(2) defines "political subdivision" to mean "a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions."

*Id.*, p. 1.

The Court was correct in concluding that the City has no duties with respect to the levees. The City is a general purpose, "local political subdivision" pursuant to Article III, Section 44(1) of the Louisiana Constitution and it possesses broad police powers and authority granted by the legislature and pursuant to its Home Rule Charter, which Charter is also the result of a legislative grant of authority. The Public Belt is a limited purpose political subdivision, with defined powers. **If the City has no duties with respect to the design, construction, or maintenance of the levees, then a limited purpose political subdivision, such as the Public Belt, with limited, defined powers to control, operate, manage and develop a public belt railroad system, certainly has no duties with respect to the levees, floodgates or any part of the flood control system.**

If a public school bus had damaged an Inner Harbor Navigational Canal flood gate on September 11, 2004, then presumably the plaintiffs would have named the Orleans Parish School Board as a defendant responsible for the flooding resulting from Hurricane Katrina. But creative pleading does not give rise to a legal duty. Limited purpose political subdivisions such as the School Board or the Public Belt, and private railroad companies such as CSX or BNSF, have no duties with respect to maintenance or repair of levees, floodgates, or any part of the flood control system.

Under the duty risk analysis, the plaintiffs must prove (1) that the conduct in question was the cause-in-fact of the resulting harm, (2) the defendant owed a duty of care to the plaintiffs, (3) the requisite duty of care was breached by the defendant, and (4) the risk of harm was within the scope of protection afforded by the duty breached. *Lazard v. Foti*, 02-2888 (La. 10/21/03), 859 So.2d 656, 659; *Roberts v. Benoit*, 605 So.2d 1032, 1041-42 (La. 1992). To recover, a plaintiff must prove all four elements. *Lazard*, at 659; *Roberts*, at 1042.

A threshold issue in any negligence case is whether the defendant owed the plaintiffs a duty. *Lazard*, at 659. Whether a duty is owed is a question of law. *Id.* Thus, if the Public Belt can establish that it owed no duty to the plaintiffs or the public concerning flood control, this motion to dismiss should be granted as a matter of law.

In *Safford v. Bayou Lafourche Fresh Water District*, 03-0700 (La. App. 1st Cir. 2/23/04), 872 So.2d 1127, *writ denied*, 04-0747 (La. 5/7/04), 872 So.2d 1086, the plaintiff, who owned riparian land along Bayou Lafourche near Donaldsonville, constructed a bulkhead, a dog pen and boat shed along the Bayou. *Id.*, at 1129. He sued the Bayou Lafourche Water District, seeking damages for flooding to those structures due to elevated water levels allegedly caused by the Water District's operation of pumps along the Bayou, pursuant to its statutory duty to provide fresh water to the surrounding area. *Id.* at 1128-29.

The Court of Appeal found that the Bayou Lafourche Water District had no duty to the plaintiff, or to the public, concerning flood control. The Court stated:

> In reviewing the question of whether the District's actions constituted negligence, we conclude it owed no duty toward Mr. Safford with regard to the property at issue. The police power of the state encompasses the exercise of its sovereign right to promote the general welfare of society, including the inherent right to protect citizens from damage by flood. *Board of Commissioners of Orleans Levee District v. Department of Natural Resources*, 496 So.2d 281, 289 (La. 1986). The legislature may delegate, either expressly or implicitly, the exercise of the police power to subordinate boards, commissions, or political corporations. *Id.* The legislature has delegated the task of ensuring an adequate supply of fresh water in Bayou Lafourche to the District; it has not delegated any duty or responsibility of flood control to the District. In *Board of Commissioners of Lafourche Basin Levee District v. Board of Commissioners of Atchafalaya Basin Levee District*, 340 So.2d 600, 602 (La. App. 1st Cir. 1976), this court confirmed the limited function and duties of the District by observing that "the purpose of [Acts 1950, No. 113] was to provide fresh water for drinking purposes rather than for the maintenance of a channel for navigation in Bayou Lafourche."

*Id.*, at 1130-31; emphasis supplied; footnote omitted.

With respect to the instant matter, the legislature has delegated to the Public Belt the duty of controlling, operating, constructing, maintaining and developing a public belt railroad system for the City of New Orleans, and the legislature has delegated to the Orleans Levee Board the "full and exclusive" duty of flood control within a geographic area that includes the Inner Harbor Navigational Canal, its levees, floodgates and other appurtenances. La. R.S. 38:307.

The legislature has not delegated any duty or responsibility to the Public Belt concerning flood control, or the maintenance or repair of flood control improvements. **If a Water District that operates pumping stations along Bayou Lafourche pursuant to its statutory duty to provide fresh water to the surrounding area has no duty or responsibility concerning flood control along Bayou Lafourche, then it is clear beyond peradventure that the Public Belt has no duty or responsibility concerning flood control along the Inner Harbor Navigational Canal.**

There is no pleading by the plaintiffs, regardless of how artful, that can create such a duty on the part of the Public Belt. Allowing the plaintiffs to amend to attempt to set forth such a duty would be futile. *Foman v. Davis, supra*; *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc., supra.*

The plaintiffs' claims against the Public Belt are due to be dismissed for failure to state a claim upon which relief may be granted.[6]

### C. The Train Derailment Was Not the Proximate Cause of the Plaintiffs' Flood Damage.

The plaintiffs allege that the negligence of the "Railroad Defendants", including the Public Belt, in "failing to keep the tracks under proper repair", and "failing to perform appropriate maintenance" caused their flood damage. Complaint, ¶ 38.

But the alleged negligence that caused the December 11, 2004 train derailment was not the proximate cause of the plaintiffs' flooding from Hurricane Katrina, eleven months later. But for the City of New Orleans and the State of Louisiana forming the

---

[6] If this motion to dismiss is denied, then in due course, the Public Belt will file a motion for summary judgment, showing that it obtained an estimate dated October 18, 2004, from Boh Bros. Construction Company, LLC, for repairs to Floodgate W 30 that was damaged on September 11, 2004, and that on November 11, 2004, Anthony Marinello, Manager of Engineering and Maintenance for the Public Belt, wrote a letter to Stevan Spencer, Chief Engineer of the Orleans Levee District, transmitting a copy of the Boh Bros. estimate and description of the proposed repairs to Floodgate W 30, and offered to have Boh Bros. perform the repairs at the expense of the Public Belt. The Levee Board refused the offer of the Public Belt to have Boh Bros undertake the repairs to Floodgate W 30 at the Public Belt's expense.

Instead, in December, 2004, the Levee Board, for the first time, provided the Public Belt with its own estimated costs of repairs. The Public Belt promptly hand-delivered a check to the Levee Board in the amount of $427,387.96, the full amount of the Levee Board's estimated costs of repairs to the floodgate. See, the affidavit of Jim Bridger, General Manager (Chief Executive Officer) of the Public Belt, attached as Exhibit 1 to CSX's Motion for Summary Judgment in the *Bourgeois* case, No. 06-5131. The *Bourgeois* case is one of the consolidated cases in the Katrina Canal Breaches Consolidated Litigation. CSX's Motion to Dismiss/For Summary Judgment in the *Bourgeois* case is Doc. No. 1697 in those consolidated cases.

Public Belt Railroad in 1908, the alleged September 11, 2004 derailment would not have occurred, but that doesn't render the City and the State liable for the plaintiffs' flooding.

Cause-in-fact is a factual issue, but legal cause is a purely legal question. *Todd v. State*, 96-3090 (La. 9/9/97), 699 So.2d 35, 39.

In *Sutton v. Duplessis*, 584 So.2d 362 (La. App. 4th Cir. 1992), the Court defined legal, or proximate, cause as "any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred." *Id.* at 365; citations omitted. The *Sutton* Court stated that when an accident results from two negligent acts, "one more remote and one an intervening cause, the presence of the intervening cause prevents a finding of liability on the one responsible for the more remote cause." *Id.* at 365-66; citations omitted.

In *Sutton*, the Court of Appeal reversed a trial court judgment which found a mother to be at fault when her six year old son ran into the street and was struck by a car, because she was late in picking him up from school after classes ended. *Id.* at 364. The Court found there was factual causation – the child would not have been injured if his mother had been on time – but the mother's negligence did not constitute the legal, or proximate, cause of the child's injuries. *Id.* at 365. The school board's negligence superceded the mother's negligence in not picking up her child on time. *Id.* at 365-66.

The Court found the school board violated its duty of dealing with the foreseeable possibility that parents would show up late by taking action to prevent children from leaving school unsupervised. *Id.*

Similarly, in the instant case, the negligence of the Levee Board, in not replacing or repairing the damaged floodgate during the eleven month interval between the time the floodgate was damaged and the arrival of Hurricane Katrina, superceded any alleged negligence of the Public Belt in damaging the floodgate. Maintaining and repairing the floodgate is within the scope of duty of the Levee Board, not the Public Belt. Just as it was foreseeable by the School Board that parents might be late in picking up their children from school, it was certainly foreseeable by the Levee Board that traffic through roadways and railroads adjacent to the floodgates will damage the floodgates.

In *Graham v. Amoco Oil Co.*, 21 F.3d 643 (5th Cir. 1994), the Fifth Circuit, relying upon *Sutton v. Duplessis*, found that, even if Amoco was negligent in delivering a large load of casing pipe to an oil platform without notifying the contractor in advance, the contractor's negligence, in unloading the casing and in supervising the plaintiff, superceded any negligence of Amoco in delivering the casing. *Id.* at 649. The Court also found the delivery to be "too remote" to constitute the legal cause of the plaintiff's injury. *Id.*

In *Brow v. Allstate Indemnity Co.*, 99-2319 (La. App. 1st Cir. 11/3/00), 771 So.2d 268, the plaintiff alleged that the Louisiana Department of Transportation and Development ("DOTD") was among those at fault for his injuries in an automobile accident, alleging that DOTD failed to post any "wrong way/do not enter" signs at a highway intersection. The defendant Cummings entered the wrong lane of traffic and collided head-on with the vehicle driven by the plaintiffs. *Id.* at 273-74. The Court found that DOTD's action was a cause-in-fact of the collision, that Cummings would not have collided with the plaintiffs' vehicle if he had not entered the wrong lane of traffic. *Id.* at 273. But Cummings had traveled in the wrong lane for approximately 4.3 miles before the collision with plaintiff's vehicle, during which time eight or nine ongoing vehicles were forced off the highway to avoid Cummings' vehicle, and others attempted to alert Cummings by flashing their headlights and blowing their horns. *Id.* at 274.

The Court stated that the "wreck was the result of the events that had intervened between Cummings' entrance to Highway 61 and the scene of the accident and was not legally caused by DOTD." *Id.* at 274. The Court noted:

> Whether phrased in terms of scope of duty or legal cause or proximate cause, it can be useful to consider whether too much else has intervened—time, space, people, and bizarreness.

*Id.*; internal citation omitted.

Indeed, in *Lazard v. Foti, supra*, the Louisiana Supreme Court held that the defendant Sheriff was not liable for the death of a juvenile detainee who was improperly held in an adult detention facility, improperly released without adult supervision (he should have been released to his parents' custody), and then killed by the criminal act of a third party some twelve hours after his release.

The Court noted that a "duty owed by the sheriff does not render him liable for all consequences spiraling outward until the end of time." *Id.* at 662; internal citation omitted.

In the instant action, any negligence of the Public Belt which resulted in damage to the floodgate on September 11, 2004, was superceded by the intervening negligence of the Levee Board in not replacing or repairing the floodgate during the eleven months before Hurricane Katrina struck. The negligence of the Public Belt, if any, in causing the September 11, 2004 train derailment does not render it liable for all consequences spiraling outward until the end of time.

The negligence of the Levee Board in not replacing the damaged floodgate during the eleven month interval between the train derailment and the arrival of Hurricane Katrina was an intervening and superseding cause of the plaintiffs' flood damage, which prevents any finding of liability against the Public Belt for allegedly causing the train derailment. The train derailment is too remote from the plaintiffs' flood damage to be the proximate cause of that damage.

The September 11, 2004 train derailment was not the legal cause of the Plaintiffs' flood damages from Hurricane Katrina. The Plaintiffs have no ownership interest, or other interest, in the floodgate that was allegedly damaged by the derailment. The plaintiffs' damages were not caused by a train derailment; rather, the plaintiffs' damages resulted from a flood.

### D.  Plaintiffs' Claims are Expressly Preempted Under Federal Law.

The Federal Rail Safety Act ("FRSA") establishes a federal regulatory scheme designed to mandate uniform railroad regulations. It contains a clearly expressed intent on the part of Congress that this regulatory regime be exclusive, and that it preempt state law. FRSA, 49 U.S.C. § 20106 ("Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable."). The Supreme Court has held that FRSA preempts state law claims where "the federal regulations substantially subsume the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993); *see also Peters v. Union Pac. R.R. Co.*, 80 F.3d 357, 262 (8th Cir. 1996) ("Congress has expressly

preempted state laws affecting railroad safety where the Secretary of Transportation has promulgated regulations.").

In those spheres of railroad safety for which Congress has authorized the Department of Transportation to issue regulations mandating specific standards directed at railroad safety, and concerning which the agency in fact has issued such controlling regulations, there remains no common law claim. Thus, a plaintiff's state law claim that a railroad did not properly maintain its tracks is completely preempted; DOT has exclusive jurisdiction to regulate and determine such issues. *See Lundeen v. Canadian Pac. Ry. Co.*, 447 F.3d 606, 614 (8th Cir. 2006) ("It is clear the [Federal Railroad Administration] regulations are intended to prevent negligent track inspection and there is no indication the FRA meant to leave open a state law cause of action."). The Public Belt does not suggest that any and all common law tort claims involving railroads, or even railroad safety, would be completely preempted by FRSA. Rather, each railroad safety claim must be assessed individually to determine whether the Secretary of Transportation has, under its express FRSA authority, directly regulated in that area to ensure uniform safety policies and standards.

The Petition alleges that "[o]n or about September 11, 2004, a train owned by [BNSF] and operated by employees of [CSX] derailed at the location of Flood Gate W-30." *Id.*, ¶ 22. According to the Petition, "[t]his derailment began on tracks owned by the City of New Orleans and/or the [Public Belt], and extended to Tracks owned by [CSX]." *Id.*, ¶ 23. The Petition claims that this derailment created "a 32.5 foot wide gap in the Inner Harbor Navigational Canal's west sea wall;" *Id.*, ¶ 24, which, eleven months later, allowed Hurricane Katrina's storm surge to enter eastern Gentilly and the Upper Ninth Ward areas of New Orleans, allegedly causing damage to plaintiffs and "those similarly situated." *Id.*, ¶ 26.

The only specific contention against the Public Belt is that as one of the "Railroad Defendants," it failed "to keep the tracks under proper repair", failed "to perform appropriate maintenance" and failed "to take steps necessary to avoid derailment." Petition, ¶ 38. The Federal Railroad Administration ("FRA"), a division of the Department of Transportation, is tasked with enforcing the FRSA. The claims that give rise to federal jurisdiction in this case are "substantially subsumed" by applicable FRA

regulations that speak directly to the subject matter of the allegations in the Petition concerning track inspection, repair, and maintenance. Part 213 of the Federal Railroad Administration's regulations, promulgated under FRSA, covers all aspects of "Track Safety Standards" and contains an express statement of preemption. 49 C.F.R. § 213.2 (2005) (express preemption); § 213.63 (maintenance of track surfaces); § 213.233 (track inspections), and § 213.237 (a)-(c) (track inspections). Part 215 in turn governs "Railroad Freight Car Safety Standards," including pre-departure (§ 215.13) and periodic (§ 215.15) inspection of freight cars. By its plain terms, the Petition seeks to hold the "Railroad Defendants," including the Public Belt, negligent for "[f]ailing to keep the tracks under proper repair" and for "[f]ailing to perform appropriate maintenance." Petition ¶ 38. The Petition thus falls squarely within the "coverage" of federal safety regulations. In enacting the FRSA, Congress assigned the Secretary of Transportation "exclusive authority to impose . . . a civil penalty for violation of a railroad safety regulation . . . and to recommend [civil district court] action be taken." 49 U.S.C. § 20111(a).

In *Lundeen v. Canadian Pac. Ry. Co., supra*, 447 F.3d at 614, the Eighth Circuit found state law claims for personal injuries and property damage based upon negligent track inspection to be completely preempted.[7] The *Lundeen* Court found that the FRA regulations established a specific inspection protocol including how, when and by whom track inspections must be conducted. *Id.* at 614, quoting from *In re Derailment Cases*, 416 F.3d 787, 793-94 (8th Cir. 2005). The regulations establish a national railroad safety program intended to promote safety in all areas of railroad operations. *Id.*[8] Federal and state inspectors determine the extent to which railroads, shippers and manufacturers have fulfilled their obligations with respect to, among other things, inspection, and railroads face civil penalties for violations. *Id.* It is clear that FRA regulations are intended to prevent negligent track inspection, and there is no indication the FRA intended to leave open a state law cause of action to deter negligent inspection. *Id.*

---

[7]   The previously-referenced regulations, 49 CFR 213.63 (governing maintenance of track surfaces), § 213.233 and § .237(a)-(c) (track inspections), are cited in *Lundeen*, at 614.

[8]   See 49 CFR § 213.2 (FRSA expressly preempts state law).

Earlier, in *Peters v. Union Pac. R.R. Co.*, 80 F.3d 257 (8th Cir. 1996), the Eighth Circuit had found complete preemption with respect to the state law certification claim asserted by the plaintiff, because the FRA had established a comprehensive administrative adjudication system for handling certification disputes which, the Court found, completely preempted the plaintiff's state law claims. However, in *Chapman v. Lab One*, 390 F.3d 620 (8th Cir. 2004), the Eighth Circuit found no FRSA preemption as to state law claims based upon alleged deficient performance in the drug testing process because " 'the applicable statute and regulations concerning drug testing do not establish an intent to preempt the substantive common law at issue,' where the FRA's drug testing regulations included an anti-waiver provision". *Lundeen*, 447 F.3d at 613, quoting *Chapman*, 390 F.3d at 628-29.

The *Lundeen* Court concluded that the plaintiffs' state law claims of "negligent inspection of railroad track" were completely preempted because "FRSA track inspection regulations lack the solicitude for state law demonstrated by the anti-waiver clause in *Chapman*." *Lundeen*, at 613-14. After analyzing the FRA inspection regulations, the *Lundeen* Court then stated: "It is clear the FRA regulations are intended to prevent negligent track inspection and there is no indication the FRA meant to leave open a state law cause of action." *Id.* at 614. The plaintiffs' allegations against the Public Belt include only allegations of negligent track inspection or track maintenance. Petition, ¶ 38. Those allegations are completely preempted under the analysis of the *Lundeen* court.

In *Federal Insurance Company v. Burlington Northern and Santa Fe Railway Co.*, 270 F. Supp. 2d 1183 (C.D. Cal. 2003), the Court granted summary judgment to the defendant railroad, on the basis that the plaintiff's state law negligence claims related to maintenance, repair and inspection of railroad track conditions, in connection with a derailment, were completed preempted by FRA regulations. *Id.*, at 1187-88. See also *In re Derailment Cases*, 416 F.3d 787 (8th Cir. 2005), holding that the plaintiffs' claim of negligent inspection of freight cars was preempted by the FRA regulation adopted pursuant to FRSA, and affirming the District Court's dismissal of those claims. *Id.* at 792-794; and *Mehl v. Canadian Pacific Railway, Ltd.*, 417 F.Supp. 2d 1104 (D.N.D. 2006), granting the defendant railroad's Motion to Dismiss the plaintiffs' state law claims

of negligent inspection of freight cars, and defective track conditions, stemming from a derailment and the release of anhydrous ammonia. *Id.* at 1115-1117.

In addition, the plaintiffs' claims are completely preempted because their claims would "unreasonably burden interstate commerce." In evaluating this burden, courts consider "the practical and cumulative impact were other states" to take similar actions. *CSX Transportation, Inc. v. Williams*, 406 F.3d 667, 673 (D.C. Cir. 2005). The Court in *Williams* thus weighed the burden of a proposed local ban on a railroad's shipment of certain types of freight, considering the effect not only of that one jurisdiction's ban but also the possibility of multiple, varying bans throughout the country. The *Williams* Court noted: "It would not take many similar bans to wreak havoc with the national system of hazardous materials shipment." *Id.* (citation omitted). The prosecution of civil actions nationwide seeking monetary awards to discipline how a railroad repairs, maintains and inspects its rail lines would undermine the system of nationwide uniformity of such practices, and would "wreak havoc" on our nation's rail transportation system.

49 U.S.C. §20106, a preemption provision of the FRSA, specifically authorizes a state to adopt or continue in force an additional or more rigorous law when that law (1) is necessary to eliminate or reduce an essentially local safety or security hazard; (2) is not incompatible with a federal law, regulation or order; and (3) does not unreasonably burden interstate commerce. This provision is of no help to the plaintiffs in the instant case. The general state negligence law which the plaintiffs seek to apply to regulate the Public Belt's maintenance, inspection and repair of its tracks, is plainly not designed to eliminate or reduce an essentially local hazard. Moreover, as set forth above, application of the general law of negligence to maintenance, inspection and repair of railroad tracks <u>is</u> incompatible with the FRSA and the regulations adopted pursuant thereto, <u>and</u> application of the general negligence laws would unreasonably burden interstate commerce.

### III. CONCLUSION

The Public Belt has no duty to the plaintiffs, or to anyone, to protect them from flooding, nor does it have any duty to maintain or repair flood control structures.

The September 11, 2004 train derailment was not the legal, or proximate, cause of the plaintiffs' flood damage from Hurricane Katrina.

In addition, the plaintiffs' claims are preempted by the Federal Rail Safety Act.

Thus, the plaintiffs' claims against the Public Belt are due to be dismissed, for failure to state a claim upon which relief may be granted.

Respectfully submitted,

HAMILTON, BROWN & BABST

*/s/ Galen S. Brown*
GALEN S. BROWN, T.A. (#3556)
KAREN E. MILNER (#8499)
601 POYDRAS STREET, SUITE 2750
NEW ORLEANS, LOUISIANA 70130
TELEPHONE: (504) 566-1805
FAX: (504) 566-1569
E-MAIL: gbrown@hamiltonfirm.net

Attorneys for Defendant, Public Belt Railroad Commission for the City of New Orleans

### CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this 28th day of February, 2007.

*/s/ Galen S. Brown*
GALEN S. BROWN