UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | No. 05-4182 |
| PERTAINS TO: | * | & Consolidated Cases |
| LEVEE (Ferdinand., No. 06-5132) | * | |
| (Bourgeois, No. 06-5131) | * | |
| | * | SECTION K |
| * | JUDGE DUVAL | |
| * | MAGISTRATE WILKINSON | |

**************************************

MEMORANDUM IN OPPOSITION TO THE MOTION
TO DISMISS OR ALTERNATIVELY MOTION FOR
SUMMARY JUDGMENT (Doc. 1697 and 1698) AND IN SUPPORT
OF ALTERNATIVE MOTION FOR FRCP 56(f) RELIEF

        **NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Keith C.

Ferdinand, M. D., APMC, et al, (No. 06-5132), and Linda C. Bourgeois and Arnold F.

Bourgeois, et al, (No. 06-5131), to file this Memorandum in Opposition to the Motion to Dismiss

or Alternatively Motion for Summary Judgment filed by CSXT, Inc. (CSXT) and  in Support of

Alternative Motion for FRCP 56(f) Relief filed by Plaintiffs.

<u>Introduction</u>

        Theses two cases were filed on August 28, 2006, by Plaintiffs against CSXT, Burlington

Northern & Santa Fe (BNSF) and the Public Belt Railroad seeking recovery for damages and

losses due to flooding from the failure of the Floodwall on the west bank of the Industrial Canal

1

at Gate I-W-30.  The Port of New Orleans, the Orleans Levee Board, the New Orleans Sewerage

& Water Board, the Louisiana Department of Transportation, were also made parties defendant.

Assurance/contact claims were made against the first three (The Port of New Orleans, the

Orleans Levee Board and the New Orleans Sewerage & Water Board.), citing certain Acts of

Assurance given by each, essentially to hold the Corps harmless from claims as required by

Congressional mandate on which Corps participation was predicated.  Plaintiffs alleged that each

had filed claims against the United States Army Corps of Engineers and made demand on the

Assurance defendants prior to suit.  Parenthetically, it should be noted that Plaintiffs alleged an

intent to sue the United States Army Corps, but that the claims were not yet ripe, the six month

notice period not having passed.  The Louisiana Department of Transportation & Development

was later dismissed on Plaintiffs' Motion. Doc. 2735.

　　　As respects CSXT, and the instant Motion to Dismiss, Plaintiffs assert damage and

personal injury claims, including wrongful death due to the failure of the flood wall on the west

bank of the Industrial Canal, and particularly the flooding due to the damage to Flood Gate I-W

30, a part of the west flood wall, which was compromised by a September 10, 2004, rail car

derailment.  CSXT's misconduct, and the misconduct of the other two rail defendants,

Burlington Northern & Santa Fe ('BNSF") and the New Orleans Public Belt Railroad ("Public

Belt") is alleged to have contributed to Plaintiffs' losses.  The claims are intertwined with the

claim against the Orleans Levee Board for failing to repair the damaged gate, and against the

Port of New Orleans which had the garde, and with the claims against the Assurance defendants.

2

**Predicate Investigation**

In its initial report or assessment, the No. UCB/CITRIS Berkley Report, Excerpt Exhibit

A 1, described the Flood Gate I-W 30 failure in these general terms:

> ". . . (A) roadway embankment crosses through the levees, and a second gap in the 'line
> of protection' for a railway line (crossing the adjacent IHNC) crosses through at this
> location.  This represents a very complex 'transition' section, with overlapping users and
> overlapping authorities and responsible entities.  *The gate of the railway's floodgate wall
> had been knocked off by a train derailment several months prior to Hurricane Katrina*,
> and the railway was to have closed the resultant opening with a sandbag levee section
> within the gated opening.   Our understanding is that this sandbag closure was inspected
> by the Orleans Levee Board. This emergency closure appears to have been unsuccessful,
> *as floodwaters appear to have passed through this opening, and to have eroded and
> breached the earthen roadway embankment adjacent and behind this section . . .  all
> apparently contributed to flooding of the neighborhoods immediately inboard of this
> site*."  (Emphasis Added)

In furtherance thereof, Plaintiffs issued a series of FOIA requests.  The first to the United

States Army Corps of Engineers, under date January 19, 2006, asked for "any writings which

reference or mention the damage to the Flood Gate W-30 occurring on or about midnight

September 10, 2004, the cost of repairing same, the letting of the contract to effect the repair of

the damage, the repair of the Gate and adjacent flood wall, the removal of the gate, and the

temporary closure of the opening in advance of Hurricanes Katrina and Rita occasioned by the

damage and removal, and the reinstallation of the Gate, together with any documents particular

to the breach of the enclosure on August 29, 2005."   Exhibit B.  The second on March 1, 2006,

referenced the FOIA request made under date January 19, 2006, under 5 U.S.C. 552(a)(3)(a) and

the Corps failure to make a timely determination under U.S.C. 552(a)(6)(8) 'deemed to have

---

1 Exhibit references are to the exhibits attached to the affidavit of counsel dated March .., 2006,
offered in support of Plaintiff's Motion for FRCT 56 Relief filed herewith.

exhausted administrative remedies with respect to the request'.  Exhibit C.  The third made on

the Department of Transportation, Federal Railroad Administration under date September 19,

2006, asked for "Any and all pictures, correspondence, documents, writings, and reports related

to or respecting the damage to Flood Gate I-W30, West Bank of the Industrial Canal, allegedly

occasioned on or about September 10, 2004, when rail cars operated by CSX Transportation, Inc.

on tracks owned by the City of New Orleans Public Belt Rail Road and/or Burlington Northern

struck the Floodwall and Flood Gate."  Exhibit D.  The fourth made on Occupational Safety &

Health Administration (OSHA) under date September 19, 2006, asked for "Any and all pictures,

correspondence, documents, writings, and reports related or respecting the damage to Flood Gate

I-W30, West Bank of the Industrial Canal, allegedly occasioned on or about September 10, 2004,

when rail cars operated by CSX Transportation, Inc. on tracks owned by the City of New

Orleans Public Belt Rail Road and/or Burlington Northern struck the Floodwall and Flood Gate."

 Exhibit E.

         The United States Army Corps of Engineers responded to the first and second requests by

letter March 7, 2006. Exhibit F.  The response included pictures of the damage (about 9/13/04 1-

19) and two pages showing the state of repairs (10/2/05).  Exhibit G.

         In furtherance of the inquiry, Plaintiffs obtained a copy of "Petition for Damages" filed

by the Orleans Levee Board against the City of New Orleans by and through the New Orleans

Public Belt, CSX Transportation, Inc., and Burlington Northern Sante Fe Railway Company, a

copy of which is attached.  Exhibit H.  In that petition it is alleged that "at least one of the

derailed cars crashed into the flood wall and flood gate support system causing extensive damage

to the structure and causing a 32.5' wide gap in the flood protection system."  Petition for

Damage Paragraph V.  The Petition reflects that service was made on all defendants.  With the Petition, the defendants were served with a First Request for Production.   Id. Paragraph VII.

Finally, shortly after filing suit, Plaintiffs served discovery requests upon defendant Burlington.  Although Burlington has formally responded, its responses are not particularly meaningful, Exhibit I; in fact they are meaningless.  All four Requests for Admissions 2-5 are all "vague, overbroad and burdensome", as are Interrogatories 1, 2, 3, and 4.  Interrogatory 7 is "vague, overbroad and ambiguous".  Interrogatory 9 is just "vague and overbroad".  Asked about the enterprise, the "relationship with other defendants", "persons operating the train", BNSF stonewalls.

Plaintiffs faired no better with Requests for Production..  Asked for "incident report or other writings . . . which reference the damage to Gate I-W30, or relative "to the law suit", (2) and (3) or writings relied on to support the answers to Requests for Admissions and Interrogatories.  Plaintiffs are told the Requests are "vague, overbroad and burdensome".  "Further the term 'writings' is undefined".

Shortly after filing suit, Plaintiffs made FOIA requests of the Federal Railway Administration and OSHA.  See letters attached.  Exhibits D and E.  The requests are pending, having been acknowledged, but responses have not yet been received.  See acknowledgments attached.  Exhibit J and Exhibit K.

Now plaintiffs have made a further FOIA request on the Corps under date of November 3, 2006, Exhibit L.

By Supplemental Affidavit in Opposition, the Federal RAilroad Administration provided FOIA Letter Response dated November 20, 2006, Exhibit M.

Plaintiffs have obtained the New Orleans Police Department Report of the incident. Exhibit N.  The Narrative contains a summary from the interview of John Mayeaux, Trainmaster CSX Transportation, by Lt. Wells.  It reports observation of the damage to the cars on the train and damage to the tracks.  It reports that the floodgate I-W-30 was struck by one of the flat bed cars, that six cars were involved, that the metal track or the sliding floodgate was torn away and the concrete surrounding the gate post was knocked off and approximately three feet of the flood wall was also broken.  It concludes that the locomotive belonged to Burlington Northern Santa Fe Railroad.  The train ID numbers were 2002 and 2003.  The derailment began on tracks owned by the New Orleans Public Belt Railroad and extended to tracks owned by CSX Transportation. The date the incident occurred was 9-10-04 at 12:55 a.m.  Most important of all, Lt. Wells says

> "The cause of the derailment is unknown at this time"

Finally, Plaintiffs have obtained a copy of the Orleans Parish Levee District 2006 Emergency Operations Plan (EOP) Manual, including an excerpt of Attachment No. 3 at page 5, dated Friday, April 15, 2005 Rev., which refers to Gate No. 30, CSX Transportation Company, New Orleans Public Belt Railroad.  Exhibit 0.

## CSXTS MOTIONS -FRCP 12b6 and FRCP 56

CSXTs Memorandum is a hodge podge of argument on its Motion to Dismiss under 12(b)(6) and its Alternative Motion of Summary Judgment under 56.  It is important to consider the two separately.  For FRCP 12(b)(6) purposes, the Complaint is tested on its face.  Plaintiffs' allegations are consider as true and as such the plaintiffs' allegation that its (CSXTs) employees were operating the train, that the train derailed, that a rail car knocked out the Floodgate, that the gate was not repaired at the time of Katrina and the failure of the West Flood wall was the

proximate cause of plaintiffs' damages and losses are accepted in testing the sufficiency of Plaintiffs' claims.  Considered for 12(b)(6) purposes, CSXT's argument rests entirely on its contention that Plaintiffs' claims are preempted by the Federal Railroad Safety Act and The Interstate Commerce Termination Act.

The Alternative Motion for Summary Judgment is tested by a different standard.

Summary Judgment may be appropriate when seasonably made, where there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. For this purpose affidavit testimony may be taken into account. But, again, the motion must be made seasonably and even then FRCP 56(f) is available to the non moving party unable to respond to the summary judgment motion without further discovery.

<strong>Summary of the Argument</strong>

This Complaint is sufficient on its face. Both FRSA and ICTA are ordinary preemption" statutes, asserted as a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, . . .. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987).  As such, neither the FRSA nor the ICTTA defenses are suited to disposition on a 12(b)(6) Motion.  Cf. *Brooks v. City or Winston Salem*, 85 F.3d 178, 181 (4th  Cir; 1996) (observing that an affirmative defense may also be raised in a pre-answer motion pursuant to Rule 12(b)(6) of the Federal Rules when the face of the complaint clearly reveals [its] existence). The defense faces a formidable hurdle when advanced on such a motion.  *Cohn v. New Paltz Cent. School Dist*., 171 Fed.Appx. 877 (2d. Cir, 2006).

CSXT's Motion for Summary Judgment is not seasonable.  It comes prior to the FRCP Rule 26(a)(1) conference and the exchange of documents provided for.  Furthermore, Plaintiffs

invoke 56(f) to bar consideration of the Motion at this time, and observe that the Police Investigation fails to indicate a cause of the derailment.  Accordingly, federal railway laws or standards can hardly preempt state law on a conduct not yet known; the conduct to be preempted cannot be identified.

## Standard of Review

1.      *Standard of Review – General 12(b)(6) Standard*

A claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts that would entitle him to legal relief.  *Benton v. United States*, 960 F.2d 19, 21 (5th Cir.1992). . The Court must treat all well-pleaded allegations in the complaint as true, and find dismissal proper only if it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of the claims that would entitle [them] to relief.  *Downie v. City of Middleburg Heights*, 301 F.3d 688, 693 (6th Cir.2002) When considering a 12(b)(1) motion, this Court may resolve factual disputes.  *Moir*, 895 F.2d at 269.  When considering a 12(b)(6) motion, however, the Court must accept as true the plaintiffs' allegations.  *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 451-452 (6th Cir.2003); *Spann v. Cobb County Pretrial Court Services Agency,* Slip Copy, 2006 WL 3307467 (C.A.11; 2006).  We accept as true all factual allegations in the complaint and will affirm a dismissal under Rule 12(b)(6) only if it is certain that no relief can be granted under any set of facts which could be proved.  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) ([A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.); Cf. *Educadores Puertorriquenos en Acion v. Hernandez*, 367 F.3d 61, 66. (1st Cir., 2004).

2.      *Standard of Review – 12(b)(6) Standard - more stringent*

Where, the defendant raises a affirmative defenses via Rule 12(b)(6) Motion, in this case federal preclusion under the Federal Railway Safety Act and Regulations, the burden is even more stringent. The availability of the defense as a matter of law, then, turns on whether the plaintiff could possibly prove any set of facts that would undermine the objective reasonableness of defendants' actions. In other words, the defense must be based on facts appearing on the face of the complaint. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir., 2004)(internal quotation marks omitted). also *Brooks v. City or Winston Salem*,85 F.3d 178, 181 (4th Cir; 1996) (observing that an affirmative defense may also be raised in a pre-answer motion pursuant to Rule 12(b)(6) of the Federal Rules when the face of the complaint clearly reveals [its] existence). The defense faces a formidable hurdle when advanced on such a motion. *Cohn v. New Paltz Cent. School Dist*., 171 Fed.Appx. 877 (2d. Cir, 2006); Cf. *Nicholas v. Goord*, 430 F.3d 652, 658 n. 8 (2d. Cir., 2005) (stating that a Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion). To prevail on a motion for qualified immunity in this early stage of the proceedings, [n]ot only must the facts supporting the defense appear on the face of the complaint, but  the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief*McKenna*, 386 F.3d at 436 (internal quotation marks and citation omitted. Cf. *Brody v. Hankin,* 145 Fed.Appx. 768 (3 rd Cir., 2005.) (reversing a decision in granting a motion to dismiss under Rule 12(b0(6) grounds of *res judicata*, or claim preclusion. Because *res judicata* is an affirmative defense, and the basis for dismissing this case on *res judicata* grounds was not apparent on the face of the complaint. At 770, 771) Cf. *Terranova v. New York*, 144 Fed.Appx. 143 (2nd. Cir.; 2005.)[W]e have permitted the defense to be successfully asserted in a

9

Rule 12(b)(6) motion, id., where  the complaint itself establishe[d] the circumstances required as a

predicate to a finding of qualified immunity.  *Green v. Maraio*, 722 F.2d 1013 , 1018(2nd Cir.,1983)

3.    *Lack of Seasonability of Motion for Summary Judgment*

> "Summary judgment is proper when, viewing the evidence in the light
> most favorable to the nonmovant, "there is no genuine issue of any material fact"
> and the moving party is "entitled to judgment as a matter of law. " *Brooks,*
> *Tarlton, Gilbert, Douglas & Kressler v. United States Fire Insurance Company*,
> 832 F.2d 1358 (5th, Cir. 1987);  FED.R.CIV.P. 56(c)."  *Carter v.*
> *RMH Teleservices, Inc.* Slip Copy, 2006 WL 3147325 C.A.5 (Tex.), 2006. When
> fact questions are raised, we must "review the facts drawing all inferences most
> favorable to the party opposing the motion."  "(W)e will affirm a summary
> judgment only when we are convinced, after an independent review of the record,
> that "there is no genuine issue as to any material fact" and that the movant is
> "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see*
> *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985).

4.    *Standard of Review 56 (f)*

"Rule 56(f) requires a party to state the reasons why it cannot adequately respond to the

summary judgment motion without further discovery and must support those reasons by

affidavit."  *Chambers v. A. Trans. Air, Inc.,* 17 F.3d 998, 1002 (7th Cir. 1994).  Grant of

Rule 56(f) motions are reviewed for abuse of discretion. To grant Summary judgment the

moving party is "entitled to judgment as a matter of law. " *Brooks Tarlton*, *supra*. The United

States Supreme Court ("Supreme Court") has stated clearly that summary judgment is

inappropriate unless the parties are allowed adequate time for discovery. *See Celotex,* 477 U.S. at

326. The Supreme Court noted in *Celotex* that "[a]ny potential problem with **premature** motions

can be adequately dealt with under Rule 56(f), which allows a summary judgment motion to be

denied . . .  if the nonmoving party has not had an opportunity to make full discovery."  Although

the Amended Complaint does not include an extensive discussion of the claim, the "simplified

notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) Cf. *Summers v. Leis,* 368 F.3d 881 (6th Cir.2004). Appellants Br. at 28-30. In *Summers,* the district court denied the defendant's summary judgment motion because it believed that "any decision regarding qualified immunity was **premature** and should await the close of discovery." *Id.* at 887.

Until discovery as to the cause of the derailment which damaged the Gate, a Summary Judgment Motion is premature.

### Law & Argument

1.   *Federal Preemption FRSA and ITCCA are ordinary defensive preemption not appropriately raised by FRCP 12(b)(6) Motion;*

The federal preemption is ordinary conflict preemption not complete preemption.[2]  At best, it is a defense against the claims asserted against it.  See *Metropolitan Life Co. v. Taylor*, 481 U.S. 58, 63 (1987). Further, "[w]here federal law is said to bar state action in fields of traditional state regulation . . . . we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and

---

[2]" . . . '(C)onflict' preemption, as we noted in *Vohries*, "is merely a defense to the merits of a claim. . . .We see nothing in the Locomotive Inspection Act to indicate that Congress "clearly intended completely to replace state law with federal law and create a federal forum" at the same time.  *Id.*  That is what would be necessary to create 'complete' or 'field' preemption, as opposed to the more routine conflict preemption."  *Adkins v. Illinois Cent. R. Co.,* 138 F.3d 46, 55 (2d Cir., 1998).

manifest purpose of Congress."3.

Our own Fifth Circuit has held FRSA it is not a complete defense, in an *en banc* decision, in *Smallwood v. Illinois Cent. R. Co***,** 385 F.3d 568 (C.A.5 (Miss.), 2004.)  Other circuits have similarly so held.  *Chapman v. Lab One***,** 390 F.3d 620, (C.A.8 th; Iowa), 2004. (drug testing claims were not preempted by Federal Railroad Safety Act (FRSA), as amended by Federal Omnibus Transportation Employee Testing Act )  *Adkins v. Illinois Cent. R. Co.* 326 F.3d 828 (C.A.7 ; 2003) (nothing in the Locomotive Inspection Act indicated that Congress clearly intended completely to replace state law with federal law and create a federal forum at the same time. 49 U.S.C.A. § 20701 et seq.) The Eleventh Circuit has applied the rule to ICTTA in *Fla. E. Coast Ry. Co. v. City of W. Palm Beach,* 266 F.3d 1324, 1328-29 (11th Cir.2001) ("Although the federal government through the ICTTA has legislated in an area where there has been a history of significant federal presence, . . . West Palm Beach is acting under the traditionally local police power of zoning and health and safety regulation.")

Ordinary conflict preemption, the defense, must be presented as a defense.  Under Federal Rule of Civil Procedure 12(b)(6), "[such a] motion ⋯ should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." '  (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 94, 102 (1957)).  Moreover, the court must construe the facts in the light most favorable to Plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993).  The defendant must establish that state tort law supporting plaintiff's claim is entirely preempted.  To do so the Mover must

---

3 In short, "after *Metropolitan Life,* there is no complete preemption without a statement to that effect from Congress."  *Marcus v. AT & T Corpor.,* 138 F.3d 46, 55 (2d Cir. 1998).

show that a particular federal law or regulation entirely preempts each and every theory of liability supporting plaintiffs' claims, citing the particular statues or regulations and showing that the federal rule "completely subsumed" the state negligence law or standard or theory supporting plaintiffs' claims.  Compliance with the federal "subsuming" law or standard must be satisfactorily proved or this breach must not itself give rise to a state or federal claim.

It may be conceptually possible to preset the defense in a 12(b)(6) Motion, but to do so requires more than its mere assertion.  The Mover must satisfy his burden "beyond doubt", construed in light most favorable to Plaintiffs".   CSXT has not even attempted to meet its burden.  It certainly has not rebutted the Civil Code Article 2317.1 claim, much less attempted to parse out every theory of liability and show how  federal law or regulation entirely "so subsumes" state law, so that both the federal law or regulation has been satisfied or the breach of it does not itself give rise to a cause of action.

The Motion to Dismiss is premature, the defense is not ripe, and not suitable for 12(b)(6) relief. In avoiding a particularized discussion of the federal law or rules which preempt, CSXT avoids a key requirement of conflict preemption, the need to show availability of the defense factually. The moving papers are not sufficient to support the relief, if considered as a FRCP 56 Motion. The following are some examples of cases supporting prematurity.

In *St. Louis Sw. Ry. Co. v. Malone Freight Lines, Inc,* 39 . 3d 864, 867 (8th Cir. 1994), the Eighth Circuit ruled a failure to warn claim was not preempted by the FRSA because the devices prescribed in the federally-approved crossing upgrade plan were not installed or operational at the time of the accident.

In *Kiemele v. Soo Line R.R. Co.,* 93 F. 3d 472 (8th Cir. 1996), the Eighth Circuit ruled

13

that a negligence claim regarding the reflectivity of crossing warning signs or "crossbucks" was not preempted by the FRSA because a factual question existed as to whether the crossbucks were "operating".  The Eight Circuit relied upon language from *Elrod v. Burlington No. *1110 R.R. Co.,* 68 F. 3d 241, 244 (8th Cir. 19950, wherein the Eighth Circuit held "a railroad's common-law duty of care continues until the federally prescribed devices are actually installed and operating."  In *Bock v. St. Louis Sw. Ry. Co.,* 181 F.3d 920, 923 (8th Cir. 1999), the Eighth Circuit re-affirmed its holding in previous cases that once federal funds are expended towards grade crossing safety devices, and those devices are installed and operating, state law negligence claims are preempted by federal regulations.

For CSXT to prevail, it must show that the FRSA and/or the ICTTA completely preempt state negligence law supporting these claims.  Absent complete preemption, the federal law, regulation or order which preempts is merely a defense against the claim, and it must cite each law, regulation or order which ostensibly supports the standard of conduct it believes so supplants every theory of  state law liability and preset proof of facts supporting the assertion that it complied with the federal standard which ostensibly so preempts (or the breach does not give rise to a claim). Such an effort is not one appropriate in a 12(b)(6) Motion; not here, not now.

*Opposition to Summary Judgment*

To support the FRCP 56 Motion, CSXT offers its spin on the facts. It acknowledges the derailment.  It acknowledges that a railcar stuck the gate. It acknowledges the damages, in fact it offers some evidence of a substantial payment of $456,000, acknowledging fault by rail defect(s). It denies that its employees were operating the train, however, and asserts that it did

14

not make the direct payment. It offers no accident report. It stands silent in the face of Plaintiffs allegations of joint enterprise locomotive owned by Burlington and operated by CSXT on tracts of Public Belt and CSXT.  Although it acknowledges that the rail cars came to rest on its tracts post derailment.  Compliant is Burlington's non-responsiveness to Plaintiffs' discovery it is not forthcoming with any information about its contracted relationship with Public Belt the ownership if the rail cars which inflated the damage, the cars in the tow, etc.

Mover CSXT offers the affidavit of Bridgers of Public Belt to show that Public Belt employees not CSXT employees were operating the train at the time of its derailment.  It ignores the fact that Public Belt Railroad is not for profit and no funds of the City of New Orleans or of said commission, except funds derived from the revenues produced by said operations shall be expended.  31.3.  As such, Public Belt is in a facilitator – for the benefit of the for profit railroad companies moving its cars through the Public Belt facilities.  It neglects to mention that it facilitates those railway companies via "contracts or contacts, containing such laws and conditions, stipulations and provisions "set by the Commission.  R. S. 31.3A or that the Commission is granted the power and authority to compel . . . any railroad company or railroad companies entering the City of New Orleans . . . to use (its) property . . . on such reasonable terms and conditions as the Commission may prescribe . . "

It is not sufficient in the face of allegations of an enterprise, including a not for profit public entity, to simply say the public entity employed the drivers, and remain silent as to whether it had a contract with that entity, whether it had cars and cargo in the tow, or whether its rail car inflicted the damages or contributed to the events which led to the damages and loss.

**Conclusion**

15

CSXT's 12(b)(6) Motion should be denied.   FRSA and ICTTA are defensive, not suitable for disposition by Motion to Dismiss.  The Alternative Motion for Summary Judgment should be denied as unseasonable.  Alternatively Plaintiffs Motion for 56(f) relief should be granted.  Plaintiffs should be permitted to complete discovery.

Respectfully submitted,

/s/ William C. Gambel
WILLIAM C. GAMBEL, Bar #5900
MILLING BENSON WOODWARD L.L.P.
909 Poydras Street, Suite 2300
New Orleans, LA 70112
Phone: (504) 569-7000
Fax:    (504) 569-7001
wgambel@millinglaw.com

Of Counsel:

JOHN J. CUMMINGS, III, Bar #4652
**CUMMINGS & CUMMINGS**
416 Gravier Street
New Orleans, LA 70130
Phone: (504) 586-0000
Fax:    (504) 522-8423
ccdlawfirm@aol.com

W358916

CERTIFICATE OF SERVICE


     I certify that on this 9th day of March, 2007, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana, and all counsel of record are being served this filing by either the Court's electronic filing system, e-mail, or by telefaxing and/or placing a copy of same in the United States mail, properly addressed with adequate postage affixed thereon.

               /s/ William C. Gambel

W358916