UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | No. 05-4182 |
| PERTAINS TO: | * | & Consolidated Cases |
| LEVEE (Ferdinand., No. 06-5132) | * | |
| (Bourgeois, No. 06-5131) | * | |
| | * | SECTION K |
| | * | JUDGE DUVAL |
| | * | MAGISTRATE WILKINSON |

******************************************

**MEMORANDUM IN OPPOSITION TO THE**
**F.R.A.P. 12(b)(6) MOTION TO DISMISS**
**FILED BY PUBLIC BELT RAILROAD**

**NOW COMES,** *Keith C. Ferdinand, M. D., APMC et al*. (No. 06-5132) and *Linda C. Bourgeois and Arnold F. Bourgeois et al*. (No. 06-5131) to oppose the Motion to Dismiss filed by the Public Belt Railroad ("Public Belt") under F.R.C.P. 12(b)(6). (Doc. 2938).

The Mover Public Belt seeks to dismiss claims of negligence proximately caused by damages due to a train derailment asserted against it and other parties: CSX Transportation, Inc. (CSX) and Burlington and Northern Railroad (BNRR)[1]. Comparative fault is specifically pled in both complaints.[2] Those claims are joined with claims made by Plaintiffs against the Orleans

---

[1] The floodgate was damaged in the train derailment in September, 2004, and the gate had not been repaired by the time of Hurricane Katrina. The facts are considered in more detail in the Opposition filed to the Motion to Dismiss filed by CSX Transportation, Inc. (Doc. 3375).

[2] *Bourgeois* Complaint, para. 94; *Ferdinand* Complaint, para. 84.

Levee District, the Port of New Orleans and the Sewerage & Water Board in negligence and in contract under Acts of Assurance[3], and more recently, against the United States Army Corps of Engineers in negligence under the Federal Tort Claims Act or the Suits in Admiralty Act. [4]

Mover, Public Belt, attacks the sufficiency of Plaintiffs' allegations of negligence against it. Alternatively, it argues that Plaintiffs' claims derive from the failure to repair the damaged flood gate and assert that it, the Public Belt, had no duty to Plaintiffs to repair the gate, and thus did not proximately cause Plaintiffs' losses. The failure to repair the gate, it insists, was the responsibility of the Orleans Levee District, and any responsibility it had, was discharged when it paid the Orleans Levee District for the damage.

CSX and Burlington also resist the claims against them by separate Motions to Dismiss (CSX - Doc. 1697 and 1698); (BNSF- Doc. 1921 and 1922), and in CSX's case, with Alternative Motion for Summary Judgment, claiming that the locomotive was owned and operated by Public Belt employees offering the affidavit of a Public Belt employee to that effect.[5] The Mover, Public Belt, neglects to mention that it is plead that the locomotives and railcars were on tracks owned by Public Belt. Otherwise, the claim of sufficiency of the allegations is classic whip saw.

As to the cause of loss asserted against Public Belt, Plaintiffs' losses derive from the damage to the gate, not the failure to repair it. As to foreseeability, with all due respect, it can

---

[3] The defendant Port is sued under the Act of Assurance given under dates of April 15, 1957,, February 3, 1969, and January 10, 1974; Complaint, pp. 50, 52 and 54;

[4] Plaintiffs alleged that each field a Claim for Damages with the United States Army Corps of Engineers and made demand upon the Assurance Defendants prior to suit. Plaintiffs alleged that the claim against the United States Corps was not ripe for suit, the six months not having expired, but announced the intention to amend the Complaint to add the United States when appropriate. On February 1, 2007, Plaintiffs moved to amend the Complaint to add the United States. Doc. 2961 and Doc. 2963.

[5] See Affidavit of Jim Bridger, Exhibit offered by CSX  Doc. 1697-2

hardly have escaped Public Belt's consciousness that the railroad had license to pass through a gate in place which was in the floodwall to be closed in order to protect the public from loss when the need should arise. It seems strained for Pubic Belt to suggest that the flooding of adjacent properties was not a foreseeable risk of damage to the Floodgate.

The suggestion that the Orleans Levee District failed to discharge its duty to repair the gate, even after it received the money to do so, avails little to Mover Public Belt. With the adoption of comparative fault in Civil Code Articles 2323 and 2324 and joint and several liability for joint tortfeasors, the doctrine of intervening acts and superseded cause has been swept away.

Finally, Public Belt, like CSX and BSNF, argues FRSA and ITCCA preemption. As noted in responses there, FRSA and ITCCA are ordinary preemption statutes, and defenses, and are not suitable for disposition via a 12(b)(6) Motion.

## Summary of the Argument

Thus, Plaintiffs oppose the Motion. The allegations in the complaint are sufficient to state a claim against Public Belt. It owned the tracts, and the train and cars passed over its tracts when the gate was damaged, which is the alleged cause of the flooding in the neighborhood[6], flooding the gate that was put there to arrest. No Rule 26 conference has been held and there has been no 26(a)(1) exchange. In fact, the New Orleans Police Report, the narrative from which is attached as Exhibit N to the Affidavit in Opposition to CSX's Alternative Motion for 56(f) relief (Doc. 3375), concludes that the cause for the derailment is unknown.

---

[6]Ferdinand Plaintiffs resided in, or did business in the Bywater and Mid City sections of the City of New Orleans, State of Louisiana; Bourgeois Plaintiffs resided in, or did business in the Old Gentilly and Lake Terrace sections of the City.

Plaintiffs do not claim that Public Belt failed to repair the gate. While failure to repair may bear on proximate cause, it seems beyond the pale for the Railroad, which avails itself of the license to pass through the Gate, to argue that the losses were not proximately caused thereby. As to failure of the Orleans Levee District to repair the gate being the intervening and superseding cause[7], the doctrine was virtually swept away by adoption of comparative fault. Articles 2323 -4.

Finally, both FRSA and ICTA are "ordinary preemption," asserted as "a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, . . . ." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987) As such, neither the FRSA nor the ICTTA defenses are suited to disposition on a 12(b)(6) Motion. *Cf. Brooks v. City or Winston Salem*, 85 F.3d 178, 181 (4th Cir; 1996) (observing that an affirmative defense may also be raised in a pre-answer motion pursuant to Rule 12(b)(6) of the Federal Rules "when the face of the complaint clearly reveals [its] existence"). "The defense faces a formidable hurdle when advanced on such a motion." *Cohn v. New Paltz Cent. School Dist.*, 171 Fed.Appx. 877 (2d. Cir, 2006). And again we cannot determine whether some relevant federal railroad law or standard super cedes some state law or standard, until the cause of the derailment can be determined.

## Law & Argument

---

[7] Even then Public Belt would be hard pressed to claim that the intervening cause was unforeseeable. Cf. *Conder v. Hull Lift Truck, Inc.,* 435 N.E.2d 10 (Ind., 1982) Some courts employ a rule that an independent intervening act of another that is unforeseeable and "sufficient of itself to cause the injury" is a superseding cause and the original tortious actor is not liable for any such harm. See *Powell v. Harsco Corp.*, 433 S.E.2d 608 (Ga.Ct.App.1993); *Jones v. Cent. of Ga. R. Co*., 386 S.E.2d 386 (Ga.Ct.App.1989); *Davis v. Brooks,* 655 A.2d 927, 930 (N.J.Super.Ct.App.Div.1993) ("a superseding intervening cause [is] one that so entirely supersedes the operation of the first tortfeasor's negligence that it alone caused the injury, without the first tortfeasor's negligence contributing thereto in any material way"); *Evers v. FSF Overlake Assocs.*, 77 P.3d 581, 2003 WL 2115289 (Okla.2003) ("the supervening act must be adequate of itself to bring the result" as well as independent and not reasonably foreseeable); *Underwood v. Waterslides of Mid-Am., Inc*., 823 S.W.2d 171, 180 (Tenn.Ct.App.1991).

4

1.  *The Complaint States Claims Against Public Belt*

Plaintiffs allege that *"(o)*n or about September 11, 2004 floodgate I-W 30 was damaged by railcars being operated by the defendant CSX Transportation on tracks owned by defendant Public Belt Rail Road Commission and Burlington Northern and Santa Fe Railway Company." Complaint, para. 35.  Plaintiffs' properties were flooded by waters admitted through the gate, indeed sand bags put there did not withstand the assault. Complaint, para.  Further, "Plaintiffs' damages were the proximate caused by the damage to Floodgate." Id pp 41.  Finally, "Plaintiffs plead *res ipsa loqutur*, given that the loss would not have occurred in the absence of negligence. Id. 92.

Finally, the New Orleans Police Report Narrative, attached as Exhibit N to the Affidavit given in Opposition to the FRCP 56 Motion filed by CSX Transportation, Inc. (Doc.3375) reflects that the investigator made no determination of the cause of the derailment.  Without a cause one cannot asses whether some federal or state law might preempt state law or regulation under RRSA of ITCCA.

2.  *Intervening and Superceding cause*

In defending on the basis of the Orleans Levee District's failure to repair, Public Belt conjures up the old doctrine of super ceding and intervening cause.  The doctrine was virtually abandoned upon adoption of the Comparative Fault.  See *Arcadian Corp. v. **Olin Corp**.,*824 So.2d 396 (*La.App. 3 Cir.,2002) ["The language in instruction number 9 is taken from *Reeves v. Louisiana & Arkansas Railway Company et al.,* 282 So.2d 503 (La.1973).  As already noted, this case was decided prior to the adoption of comparative fault.  The language cited in the jury instruction concerns intervening cause and the remoteness of the first actor's negligence.  In reality, *Reeves* is a case involving the last clear chance doctrine.  The last clear chance doctrine

5

was an equitable remedy designed to alleviate some of the harsh realities of the law of contributory negligence.  Because this area of the law has since changed, I find that this "faded negligence" analysis would no longer be appropriate for this case.  If this case was decided today, the analysis would more appropriately be one of comparative negligence."

The Restatement the Third Law – Torts;  Restatement (Third) of Torts: Liability for Physical Harm  Ch. 6, entitled Scope of Liability (Proximate Cause), § 34. Intervening Acts and Superseding Causes offers this description of the law:

> The extensive rules for when intervening acts become sufficient to "supersede" an actor's earlier tortuous conduct were developed at a time when the prevailing jurisprudence was that law was scientifically based and correct legal principles could be deduced through logical and objective inquiry.  Consistent with this philosophy, *the* "proximate cause" of any event could be determined through a neutral, scientific inquiry. Rules regarding which intervening acts prevented prior acts from being the cause of subsequent harm were integral to this inquiry.  Although criticism of this legal scientism had begun before the first two volumes of the Restatement of Torts were completed in 1934, the Restatement reflected this jurisprudential view.  It treated factual cause and limits on the scope of liability as a single inquiry and contained extensive provisions regarding which intervening acts could and could not be superseding causes. See Restatement of Torts §§ 439-452.
>
> . . . (M)uch of the formalism of its treatment of superseding causes has been supplanted in the latter part of the 20th century with a recognition that there are always multiple causes of an outcome and that the existence of intervening causes does not ordinarily elide a prior actor's liability. The advent of more refined tools for apportionment of liability--comparative responsibility, comparative contribution, and substantial modification of joint and several liability--also has undermined one important rationale for these rules:  the use of scope of liability to prevent a modestly negligent tortfeasor from being held liable for the entirety of another's harm when the tortuous acts of other, more culpable persons were also a cause of the harm.

Cf. *L.K.I. Holdings, Inc. v. Tyner*, 658 N.E.2d 111, 119-120 (Ind.Ct.App.1996) ("The adoption of comparative negligence, with its apportionment of fault, renders the protection of a remote [negligent] actor unnecessary.... The comparison of fault inherent in the doctrine of intervening cause has been incorporated into our comparative fault system.")

The preferred approach is to judge the conduct of the plaintiff under comparative fault."); *Yun v. Ford Motor Co.*, 647 A.2d 841, 851 (N.J.Super.Ct.App.Div.1994) (Baime, J., dissenting), rev'd, 669 A.2d 1378 (N.J.1996) (adopting opinion of Baime, J., in explanation for reversal); *Torres v. El Paso Elec. Co.*, 987 P.2d 386, 392-393 (N.M.1999) ("We believe that an expansive application of the doctrine of independent intervening cause to negligent acts is inconsistent with New Mexico's system of pure comparative fault."); *Von der Heide v. Pa. Dep't of Transp.*, 718 A.2d 286, 289-290 (Pa.1998) (holding plaintiff's actions could not constitute a superseding cause after the adoption of comparative fault); *Dodd v. Varady*, 799 S.W.2d 216, 220 (Tenn.Ct.App.1990); *Harris v. Utah Transit Auth.*, 671 P.2d 217, 222 (Utah 1983) (adoption of comparative fault requires modification of superseding-cause precedent); Buckley v. Bell, 703 P.2d 1089, 1095-1096 (Wyo.1985) (Cardine, J., dissenting) (arguing that just as comparative responsibility rendered doctrines of gross negligence, last clear chance, and assumption of risk unnecessary, so too comparative responsibility renders superseding cause unnecessary); see also Terry Christlieb, Note, *Why Superseding Cause Analysis Should Be Abandoned*, 72 TEX. L. REV. 161, 165 (1993) (superseding-cause doctrine "has no logical use under comparative systems," which "require every negligent party to pay an appropriate share of the damages for which it was a proximate cause"); cf. *Evans v. Oliver*, 1990 WL 74419 (4th Cir. May 7, 1990) (unpublished opinion applying West Virginia law) (recognizing the argument that comparative responsibility has modified the doctrine of "remote causation" and its rationale, but declining to decide the matter on the grounds that any error in omitting an instruction on remote cause was harmless; the court's explanation of the harmless error belied its claim that it need not decide the merits of the issue: it stated, "The court's instructions on proximate cause and comparative negligence adequately provided the jury with the opportunity

7

to assign whatever negligence it deemed appropriate to the respective parties in this case."). But see *James v. Meow Media, Inc.,* 90 F. Supp. 2d 798 (W.D.Ky.2000); *Minor v. Zidell Trust*, 618 P.2d 392, 395 (Okla.1980).

Finally see *Great Lakes Dredge & Dock Co. v. City of **Chicago***, 260 F.3d 789 (C.A.7 (Ill.),2001 ["Failure to Repair has never been argued as an independent intervening cause of the collapse. The cause continues to be an occurrence resulting in damage to property that took place during the first period. That some inspectors saw a crack is certainly not an adequate reason to absolve the insurers of all liability."]

3.     *Federal Preemption FRSA and ITCCA are ordinary defensive preemption not appropriately raised by FRCP 12(b)(6) Motion;*

The federal preemption is ordinary conflict preemption not complete preemption[8]. At best, it is a defense against the claims asserted against it. See *Metropolitan Life Co. v. Taylor*, 481 U.S. 58, 63 (1987).[9] Further, "[w]here federal law is said to bar state action in fields of traditional state regulation . . . . we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund,* 520 U.S. 806, 813 n. 8, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997); *Rice,* 331 U.S. at 230, 67 S.Ct. 1146.

---

[8]". . .  "(C)onflict" preemption, as we noted in *Vorhries,* "is merely a defense to the merits of a claim. . . . We see nothing in the Locomotive Inspection Act to indicate that Congress "clearly intended completely to replace state law with federal law and create a federal forum" at the same time. *Id.* That is what would be necessary to create "complete" or "field" preemption, as opposed to the more routine conflict preemption." *Adkins v. Illinois Cent. R. Co.* 326 F.3d 828, 835 (C.A.7 ; 2003)

[9] In short, "after *Metropolitan Life,* there is no complete preemption without a statement to that effect from Congress." *Marcus v. AT & T Corp.,* 138 F.3d 46, 55 (2d Cir.1998).

Our own Fifth Circuit has held FRSA it is not a complete defense, in an *en banc* decision, in *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568 (C.A.5 (Miss.), 2004.)  Other circuits have similarly so held.  *Chapman v. Lab One*, 390 F.3d 620, (C.A.8 th; Iowa), 2004. (drug testing claims were not preempted by Federal Railroad Safety Act (FRSA), as amended by Federal Omnibus Transportation Employee Testing Act )  *Adkins v. Illinois Cent. R. Co.* 326 F.3d 828 (C.A.7 ; 2003) (nothing in the Locomotive Inspection Act indicated that Congress clearly intended completely to replace state law with federal law and create a federal forum at the same time. 49 U.S.C.A. § 20701 et seq.)  The Eleventh Circuit has applied the rule to ICTTA in *Fla. E. Coast Ry. Co. v. City of W. Palm Beach,* 266 F.3d 1324, 1328-29 (11th Cir.2001) ("Although the federal government through the ICTTA has legislated in an area where there has been a history of significant federal presence, . . . West Palm Beach is acting under the traditionally local police power of zoning and health and safety regulation.")

Ordinary conflict preemption, the defense, must be presented as a defense.  Under Federal Rule of Civil Procedure 12(b)(6), "[such a] motion ⋯ should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief.' ' *Gottesman v. J.H. Batten, Inc.,* 286 F.Supp.2d 604, 610 (M.D.N.C.2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 94, 102 (1957)). Moreover, the court must construe the facts in the light most favorable to Plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993).  The defendant must establish that state tort law supporting plaintiff's claim is entirely preempted.  To do so the Mover must show that a particular federal law or regulation entirely preempts each and every theory of liability supporting plaintiffs' claims, citing the particular statues or regulations and showing that the federal rule "completely subsumed" the state negligence law or standard or theory supporting

9

plaintiffs' claims.  Compliance with the federal "subsuming" law or standard must be satisfactorily proved or this breach must not itself give rise to a state or federal claim.

It may be conceptually possible to preset the defense in a 12(b)(6) Motion, but to do so requires more than the mere assertion.  The Mover must satisfy his burden "beyond doubt", construed in light most favorable to Plaintiffs".   CSXT has not even attempted to meet its burden.  It certainly has not rebutted the Civil Code Article 2317.1 claim, much less attempted to parse out every theory of liability and show how  federal law or regulation entirely "so subsumes" state law, so that both the federal law or regulation has been satisfied or the breach of it does not itself give rise to a cause of action.

The Motion to Dismiss is premature, the defense is not ripe, and not suitable for 12(b)(6) relief. In avoiding a particularized discussion of the federal law or rules which preempt, CSXT avoids a key requirement of conflict preemption, the need to show availability of the defense factually. The moving papers are not sufficient to support the relief, if considered as a FRCP 56 Motion. The following are some examples of cases supporting prematurity.

In *St. Louis Sw. Ry. Co. v. Malone Freight Lines, Inc,* 39 . 3d 864, 867 (8th Cir. 1994), the Eighth Circuit ruled a failure to warn claim was not preempted by the FRSA because the devices prescribed in the federally-approved crossing upgrade plan were not installed or operational at the time of the accident.

In *Kiemele v. Soo Line R.R. Co.,* 93 F. 3d 472 (8th Cir. 1996), the Eighth Circuit ruled that a negligence claim regarding the reflectivity of crossing warning signs or "crossbucks" was not preempted by the FRSA because a factual question existed as to whether the crossbucks were "operating".  The Eight Circuit relied upon language from *Elrod v. Burlington No. *1110 R.R. Co.,* 68 F. 3d 241, 244 (8th Cir. 19950, wherein the Eighth Circuit held "a railroad's common-law

duty of care continues until the federally prescribed devices are actually installed and operating."

In *Bock v. St. Louis Sw. Ry. Co.,* 181 F.3d 920, 923 (8th Cir. 1999), the Eighth Circuit re-affirmed its holding in previous cases that once federal funds are expended towards grade crossing safety devices, and those devices are installed and operating, state law negligence claims are preempted by federal regulations.

For Public Belt to prevail, it must show that the FRSA and/or the ICTTA completely preempt state negligence law supporting these claims. Absent complete preemption, the federal law, regulation or order which preempts is merely a defense against the claim, and it must cite each law, regulation or order which ostensibly supports the standard of conduct it believes so supplants every theory of state law liability and preset proof of facts supporting the assertion that it complied with the federal standard which ostensibly so preempts (or the breach does not give rise to a claim). Such an effort is not one appropriate in a 12(b)(6) Motion; not here, not now.

## Conclusion

Public Belts' 12(b)(6) Motion should be denied. The Complaints states a claim against it. Proximate Cause is sufficiently pled. Intervening and super ceding cause defenses went out with comparative fault. Finally FRSA and ICTTA are defensive, not suitable for disposition by Motion to Dismiss. Without a cause of derailment, no judgment can be made as to the application of some federal law or standard to preempt the state law or standard to be applied.
March 12, 2007.

                                          Respectfully submitted,
OF COUNSEL:

MILLING BENSON WOODWARD L.L.P.  /s/ William C. Gambel
                                                    William C. Gambel (LA Bar No. 5900)
                                                    909 Poydras Street, Suite 2300

        New Orleans, LA  70112-1010
        Telephone:  (504) 569-7000
        Telecopy:  (504) 569-7001
        wgambel@millinglaw.com

John J. Cummings, III (LA Bar No. 4652
Cummings, Cummings & Dudenhefer
416 Gravier Street
New Orleans, LA  70130
Telephone:  (504) 569-0000
Telecopy:  (504) 586-8423
ccdlawfirm@aol.com

W358197

CERTIFICATE OF SERVICE

I certify that on this 12th day of March, 2007, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana, and all counsel of record are being served this filing by either the Court's electronic filing system, e-mail, or by telefaxing and/or placing a copy of same in the United States mail, properly addressed with adequate postage affixed thereon.

<u>/s/ William C. Gambel</u>

W358197