UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KATRINA CANAL BREACHES** § | **CIVIL ACTION** | |
| **CONSOLIDATED LITIGATION** § |  NO.   05-4182 "K"(2) | |
| § | JUDGE DUVAL | |
| § | MAG. WILKINSON | |
| _____ § | | |
| § | | |
| **PERTAINS TO:** § | | |
| § | | |
| **ALL CASES** § | | |
| § | | |
| _____ § | | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO INSURER DEFENDANTS'
MOTION TO ENFORCE STAY ORDER ISSUED BY THE FIFTH CIRCUIT ON
FEBRUARY 28, 2007**

MAY IT PLEASE THE COURT:

Plaintiffs begin by pointing out that the title of the Insurer Defendants' motion is inaccurate and misleading. The title states the Defendant Insurers' desire to "enforce the stay order issued", thus suggesting to the Court that plaintiffs are of the belief that the order should be ignored. This of course is not the case. The Insurer Defendants are not, as they suggest in the title, seeking to "enforce the stay order issued" by the Fifth Circuit, rather they are seeking a modification of that order by this Court and as a result, a stay of all cases under the Insurance Umbrella, and a stay of discovery in all cases—Insurance, Levee, and MR-GO—in the *In re Katrina Canal Breaches Consolidated Litigation*. Plaintiffs oppose this expansion as it is

clearly not what the Fifth Circuit ordered, and indeed, it is clearly not what the Insurer Defendants sought when they requested the stay in the Fifth Circuit.

The Stay Order entered by the United States Fifth Circuit Court of Appeals in *Chehardy*, *Vanderbrook* and *Xavier* applies to *only* to those cases, and to no other cases within the *In Re: Katrina Canal Breach Consolidated Litigation* Umbrella.  The Appellate Court's Order simply uses the word "GRANTED" and as such the effect of the Order is limited to the relief requested by the Defendants.  In the case of Xavier, at Footnote 4 on Page 5 of their Motion, the Travelers Property Casualty Company of America states as follows: "Travelers Property Casualty Company of America ***does not seek a stay in Xavier University with respect to matters other than the cause of levee breach***." (Emphasis added).  Furthermore, State Farm Fire and Casualty Company's Reply to Opposition to its Motion to Stay District Court Proceedings  and to Expedite states at Page 5:

> "Plaintiffs contend in their Opposition that a stay would be unfair because State Farm and other Defendant Insurers, who are parties in other Katrina related actions not before this Court, would be obtaining discovery materials in those actions, while Plaintiffs would "remain locked in the gates" and unable to pursue discovery during the pendency of this appeal.  See Opp. At 4-5. ***This contention ignores the crucial point that Plaintiffs' counsel, like counsel for State Farm and other Defendant Insurers, are involved in other Katrina-related actions that would not be affected by a stay entered here***.[6] (Emphasis added).
>
> _____
>
> [6]  For instance, Plaintiffs; counsel Joseph Bruno, who signed the Opposition here, is also counsel in other levee breach actions.  *See* Defendant Insurers' Reply to Opposition to Motion to Stay District Court Proceedings and Expedite Appeal, at 9 n. 4 (filed February 23, 2007)."

The remaining movers at Page 8 of their Reply to Opposition to Motion to Stay District Court

Proceedings and to Expedite Appeal state as follows:

> "Second, plaintiffs insist a stay would be unfair to them because defendants, who are parties to other Katrina-related cases not before this Court, would be gathering discovery materials in those cases during the pendency of this appeal while plaintiffs would be forced to wait. *Chehardy* Opp. at 5. **This argument is disingenuous given that plaintiffs' counsel, like defendants' counsel, are involved in other Katrina-related cases that would not be halted by a stay imposed here**.[4] Any tangential benefit from discovery in these separate cases over the next few months would inure to plaintiffs' counsel just as it would to defendants. (Emphasis added).
>
> _____
>
> [4] For example, attorney Joseph Bruno, who filed the *Chehardy* Opposition, is also counsel in a number of other levee breach cases. *See, e.g., Vodanovich et al. v. Boh Brothers et al.*, C.A. 2:05-cv-05237; *LeBlanc et al. v. Boh Brothers et al.*, C.A. 2:05-cv-06327; *Holmes et al. v. United States et al.*, C.A. 2:06-cv-05161."

The insurer defendants made the above representations to the Fifth Circuit to persuade the Court to enter a stay by clarifying their position that they were not seeking, and did not expect, a stay to be entered that would affect any cases other than *Chehardy*, *Vanderbrook* and *Xavier*. The Fifth Circuit, presumably so persuaded, granted the Insurer Defendants' request and entered an Order for the relief sought. Now the defendants, despite their representations in the Fifth Circuit to the contrary, seek not to enforce that Order, but to expand it to include a stay of all cases under the Insurance Umbrella, and a stay of discovery in all cases—Insurance, Levee, and MR-GO—in the *In re Katrina Canal Breaches Consolidated Litigation*.

I.  **LAW AND ARGUMENT**

The Insurer Defendants bear the burden of proving the need for such a stay, and the decision by this court to enter such a stay is discretionary. The Insurer Defendants have failed to meet their burden and the expansion of the stay order must be denied.

The fifth Circuit employs four factors in determining the propriety of a stay pending appeal:

> [A] petitioner must show [1] the likelihood of his prevailing on the merits on appeal, [2] that he is likely to suffer irreparable injury from the denial of the stay, [3] that the other parties will not be substantially harmed by the grant of stay, and [4] that granting the stay will serve the public interest.

*Drummond v. Fulton County Dep't of Family & Children's Servs.,* 532 F.2d 1001, 1002 (5th Cir. 1976) ( *siting Beverly v. U.S.,* 468 F.2d 732, 741 n. 13 (5th Cir. 1972)).  Consideration of these factors "requires a balancing of the equities as the affect the parties and the public."  5 Am. Jur. 2d *Appellate Review* § 470.

In the hallmark case of *Landis, infra,* the Supreme Court, in reversing an order granting a stay said:

> True, the suppliant for a stay must make out a *clear case* of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.  Only in *rare circumstances* will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both. . . .  *Especially in cases of extraordinary public moment*, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted.

*Landis v. N. American Co.,* 29 9U.S. 248, 255 (1936) (emphasis added).  This case is unquestionably one of "extraordinary public moment."  Likewise, in *Adolph Coors Co. v. Davenport Machine & Foundry Co.,* 89 F.R.D. 148, 153-54 (D. Colo. 1981) the court noted:

> Every party to a lawsuit has a right o an expeditious determination of his claim.  In granting a stay, a court must take into account the prejudicial effect on the parties.  The burden of showing that there is a pressing need for a delay and that the other party will not suffer harm from entry of a stay order is clearly on the party seeking the stay.

*Id.* (citations omitted).  Equally important, the Fifth Circuit's *Wedgeworth, infra*, case says:

> Although we recognize the court's broad discretion in this area, such control is not unbounded.  Proper use of this authority "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.". *Landis v. North American Co.,* 299 U.S. 248, 254-55, 57 S.Ct. 163, 165-66, 81 L.Ed. 153 (1936).
>
> The party seeking the stay bears the burden of justifying a delay tagged to another legal proceeding:
>
>> [T]he suppliant for a stay must make out a *clear case* of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.  Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.
>
> *Id.* At 255, 57 S.Ct. Qt 166.  Further, before granting a stay pending the resolution of another case, the court must carefully consider the time reasonably expected for resolution of the "other case," in light of the principle that "stay orders will be reversed when they are found to be immoderate or of an indefinite duration." *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982). *Accord, CTI-Container Leasing Corp., v. Uiterwyk Corp.*, 685 F.2d 1284 (11th Cir. 1982) (finding abuse fo discretion indefinite stay based pending Iranian claims). Thus a stay must be "so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible to prevision and description." *Landis,* 299 U.S. at 257, 57 S.Ct. At 167.

*Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

Just as in these cited cases, there are insufficient grounds to grant a stay in this action. First, the defendants justification for their requested stay was tempered by their suggestion that they were not seeking a stay that would effect Katrina related actions other than the three cases–*Chehardy, Vanderbrook, and Xavier*–in which the stay was sought.  Further, second, the length of the stay is not readily discernable.  Even though the expedited briefing schedule contemplates oral argument in the Fifth Circuit in June, when a decision will be handed down is

unknown. Even then, should the Fifth Circuit uphold the decision of this court plaintiffs anticipate that the Insurer Defendants will request that the stay be extended pending a decision on Petitions for Writs of Certiorari. Indeed, the stay could cause this matter now more than eighteen months old, and on track to begin moving forward expeditiously with the entry of Case Management Order No. 4, to come to a grinding halt, thus delaying the adjudication of the claims of thousands and thousands of people.

Moreover, moving forward with discovery and motion practice in cases other than *Chehardy, Vanderbrook, and Xavier* will not cause the injustice to the defendants as suggested in their motion. Indeed, the injustice will be visited upon the thousands of plaintiffs who have still, to this date more than eighteen month post Katrina, not concluded their insurance claims. The effect of a stay will prohibit those people whose from adjusting their claims, forcing them to wait even longer to rebuild their homes, and indeed their lives. A simpler way would be for this Court to bifurcate out the "Chehardy type" claims, allow discovery, claims adjusting, and even trials to go forward on the "non-Chehardy type" claims. The Defendant Insurers offer no compelling reason not to do so. Certainly, the Defendant Insurers have failed to meet their burden that they will suffer irreparable injury should the stay be denied, as they have equally failed to show how the plaintiffs will not be harmed if the stay is granted. The motion should be denied.

## II.   ADDITIONAL CONSIDERATIONS

Before providing additional reasons why this Honorable Court should summarily deny the Insurer Defendants' effort to hurl a monkey wrench into the carefully-crafted timetable set forth in the Court's March 1, 2007 "Case Management and Scheduling Order No. 4," the "Levee" and

"MRGO" Plaintiffs would first revisit what the Insurer Defendants wrote at page one of their February 7, 2007 "Motion to Stay District Court Proceedings and to Expedite Appeal" to the U.S. Fifth Circuit:

> "This Court has accepted an interlocutory appeal of the key question in the above-captioned Hurricane Katrina insurance litigation – namely, **whether the explicit water damage exclusions in defendants' insurance policies bar coverage for damage stemming from Katrina's flood waters.**"

(Bold emphasis by Plaintiffs)

<u>Nowhere</u> were any Levee or MRGO class certification issues presented in the Insurer Defendants' interlocutory appeal to the Fifth Circuit. Instead, the interlocutory appeal is devoted exclusively to the argument that this Court's November 27, 2006 Order (denying the insurers' motions to dismiss plaintiffs' claims under a disputed "flood" exclusion) should be reversed. Said differently, if the Levee and MRGO class certification *procedural* issues are "apples," the appellate Insurance exclusion *legal* issues are "oranges."

Despite the complete unrelatedness between class certification procedural issues and insurance coverage legal issues, the Insurer Defendants want this Court to delay the Levee and MRGO Plaintiffs' class certification-related deposition discovery by entering a stay until the Fifth Circuit affirms, modifies in part, or reverses the November 27, 2006 Order. Plaintiffs submit that such a stay is wholly unnecessary, and will serve no purpose other than disrupting the "temporal relevance" of the Court's carefully structured "Case Management and Scheduling Order No. 4."

**1.      The express goal of the Case Management and Scheduling Order No. 4 was moving the litigation ahead with "temporal relevance."**

The express goal of the Court, as set forth clearly in "Case Management and Scheduling Order No. 4" (hereinafter "CMO No. 4") and announced explicitly to counsel during the most recent group status conference, is that these consolidated matters are to move forward with alacrity and in strict accordance with the Court's own timetable. For example, at pages two and three of CMO No. 4, the Court instructs counsel that:

> "The aim of this order is to obtain substantial resolution of significant parts of these matters within approximately two years, keeping in mind that the event that precipitated this litigation occurred approximately 18 months ago. Moreover, it is the duty of the Court to bring resolution to the various issues presented to it in a time frame that gives the resolution at least some temporal relevance. The Court finds that these interests are best achieved by the implementation of an order that moves all three categories of cases covered by this order (Levee, MRGO and Insurance) forward simultaneously on three separate trial preparation tracks, including ( a ) class certification, ( b ) common liability issues and ( c ) individual insureds' adjusting and other issues that are on t common to the three case categories."

**2.     The Court placed the Levee, MRGO and Insurance claims into three different claim categories because they feature different parties and different legal issues.**

At page three of CMO #4, the Court carefully distinguished between the three categories of claims made subject to the Order. It wrote that the "Levee" plaintiffs allege that *"the defendants are liable for water damage caused by the breaching of an I-wall on the 17th Street Canal, the breaching of two I-walls on the London Avenue Canal, and the breaching of the levees on the Industrial Canal."* The "MRGO" plaintiffs allege that *"the United States and the other defendants are liable for water damage caused by the MRGO in the areas of the Upper and Lower Ninth Ward, New Orleans East, and St. Bernard Parish."* While both the "Levee" and

the "MRGO" lawsuits focus on responsibility for failed or breached levees and flood walls, the "Insurance" lawsuit is very different.  There, the plaintiffs *"are insureds who allege, among other things relating principally to individual adjusting and coverage issues, that the efficient proximate cause of the surface water damage to their property in the New Orleans Metropolitan area was the neglect of the same parties made defendant n the Levee and MRGO umbrellas."*  While the plaintiffs in the separate Insurance, Levee, and MRGO litigations share a common interest in identifying who is responsible for the levee and flood wall failures, the Levee and MRGO litigations are not concerned with "individual adjusting and coverage issues."  Indeed, the Insurer Defendants' interlocutory appeal to the Fifth Circuit is exclusively devoted to a contractual coverage (exclusion) issue, and has no bearing on ultimate responsibility for the various levee and flood wall failures.

**3.     The Insurer Defendants do not seek any stay or delay of those aspects of CMO No. 4 that will pertain to the Levee and MRGO pleadings or written/document discovery, or of the pre-hearing conferences or class certification hearings.**

By their own admission, at page two of their supporting Memorandum, the Insurer Defendants do not seek to stay or delay those aspects of CMO No. 4.which relate to the Levee and MRGO Plaintiffs' pleadings and written/document discovery.  Also, they nowhere request any change in the scheduled dates for class certification pre-hearing conferences or class certification hearings.  Accordingly, the following deadlines remain unchallenged by the Insurer Defendants:

(1)     Plaintiffs must file separate Master Consolidated Class Action Complaints no later than March 15, 2007;

(2)     Defendants must file separate Answers no later than March 30, 2007;

(3) Plaintiffs must file separate Motions for Class Certification no later than March 30, 2007;

(4) Plaintiffs and defendants must file separate class certification-related Preliminary Lists of Witnesses and Preliminary Lists of Exhibits no later than March 30, 2007;

(5) Plaintiffs and defendants must submit to separate sets of interrogatories, requests for production, and requests for admission all limited to class certification issues no later than March 30, 2007;

(6) Written responses to discovery must be provided no later than April 30, 2007;

(7) Motions to compel concerning class certification written discovery must be filed no later than May 30, 2007;

(8) Plaintiffs and defendants File separate class certification-related Final List of Witnesses and Final List of Exhibits no later than June 27, 2007;

(9) Plaintiffs' motions for amendment of Motions for Class Certification must be filed no later than July 18, 2007 and noticed for hearing on August 8, 2007;

(10) Defendants' written oppositions to any motion to amend must be filed no later than August 1, 2007;

(11) Written reports of Plaintiffs' class certification experts must be delivered to defendants no later than August 10, 2007;

(12) Plaintiffs' memoranda in support of their motions for class certification must be filed no later than August 31, 2007;

(13) All contrary motions concerning class certification, including <u>Daubert</u> motions regarding class certification experts and motions *in limine* regarding class issues, must be filed no later than September 26, 2007;

(14) Reply briefs with respect to class certification must be filed no later than October 9, 2007;

(15) Separate proposed class certification pre-hearing briefs shall be submitted no later than October 25, 2007;

(16) Separate pre-hearing conferences will be conducted on or before October 30, 2007; and

     (17)    Class certification hearings will commence on November 5, 2007 and conclude on or before November 16, 2007.

**5.    The Insurer Defendants fail to show good cause why class certification-related depositions should be stayed or delayed.**

Plaintiffs suggest that the Insurer Defendants must show "good cause" why class certification depositions should be stayed or deferred in the Levee and MRGO cases. Suggesting baldly that the interests of "judicial economy" will be served by throwing the careful pre-certification calendar into disarray is ludicrous.

Presently, class certification fact depositions are to commence "immediately after the exchange of preliminary witness lists" on March 30, 2007, and must be completed no later than July 27, 2007.

Plaintiffs' expert reports must be submitted by August 10, 2007 and those of defendants' experts by August 24, 2007. Then, class certification expert depositions must be completed by September 14, 2007.

Putting aside the obvious fact that Levee and MRGO pre-certification proceedings have absolutely nothing to do with this Court's or the Fifth Circuit's "question of law" resolution of the Insurer Defendant's policy exclusions, bumping fact deposition dates will have a "domino effect" on every subsequent event. For example, if fact depositions aren't competed by July 27, 2007, Plaintiffs' expert reports (due August 10, 2007) might well be affected because an expert will be unable to base his/her class certification opinion upon actual witness testimony. Or, if a fact witness can't be deposed, there will be problems with authentication of critical documents and subsequent admissibility problems at the class certification hearing. The upshot is that deferral or a stay of fact depositions will disrupt all subsequent events on the present schedule.

Next, there is the problem of expert depositions. The Levee and MRGO Plaintiffs presume the Insurer Defendants' motion also contemplates deferral or a stay of class certification expert depositions. How can either side prepare for a class certification hearing without deposing the other side's experts?

When all is said and done, the Insurer Defendants' suggestion that all events save depositions remain on their current schedule is disingenuous. Without the timely as-scheduled completion of fact and expert depositions, this Court's determination to conduct class certification hearings in November 2007 will be frustrated.

6. **If class certification-related fact and expert depositions are taken in the Levee and MRGO cases, they will not need to be retaken in the Insurance case no matter how long the Insurance case is stayed by this Court or by the Fifth Circuit.**

Class certification, from the Levee and MRGO Plaintiff's perspective, involves demonstrating to the Court that, *inter alia*, the parties are too numerous for joinder much less individual trials, that there are common questions of law or fact, that the claims or defenses are typical to the putative class, that the proposed class representation is adequate, that common questions of law or fact predominate over individual issues, and that a class action is a superior alternative to individual lawsuits. Discovering and presenting those issues has not one wit to do with whether any Insurer Defendant is legally entitled to rely upon a policy coverage exclusion.

Class certification is a procedural process entirely divorced from any "on the merits" determination of causation or of any defendant's liability to any plaintiff in damages. What possible reason could the Insurer Defendants have in obstructing the Levee and MRGO Plaintiffs' ability to depose fact witnesses? Fact deposition testimony that, *e.g.*, 1,500,000 persons evacuated before Hurricane Katrina struck, or that 80% of New Orleans flooded, or that

most if not all individual plaintiffs – including the class representatives – suffered property damage or losses, or that specific acts of negligence caused the common flooding catastrophe, have <u>nothing</u> to do with the validity or invalidity of any insurance policy "flood" exclusion.

**7.      Class certification depositions won't need to be repeated in the insurance case.**

Class certification deposition discovery of the Insurer Defendants in the Levee and MRGO cases will be limited.. Of necessity, class certification deposition discovery will be limited to, e.g., "how many flood and/or wind loss claims were made by your insureds?" Or, "what areas of New Orleans were the sources of flood and/or wind loss claims?" While this information is relevant to numerosity, for example, it has no bearing on whether the Insurer Defendants are legally entitled to assert their purported "flood" exclusion.

It is also clear that any class certification discovery in the Levee and MRGO cases will not need to be retaken in the Insurance class certification process. The Levee and MRGO Plaintiffs have an interest in absolute numbers of affected flood victims, whereas the Insurance Plaintiffs more likely have an interest in how many insureds were denied coverage under one exclusion or another.

Lastly, it is again apples and oranges. To the extent that any Insurer is a defendant in the Levee or MRGO case, it is because that Insurer is a direct action defendant in its capacity as a liability insurer of a party alleged to have played a role in causing the flooding. That Insurer's posture as a direct action defendant has nothing whatsoever to do with asserting flood exclusions against homeowners.

**III.     CONCLUSION**

The Insurance case exclusion issue is entirely unrelated to class certification issues in the

Levee and MRGO cases. Staying or deferring class certification-related fact and expert depositions in the Levee and MRGO cases will destroy the "temporal relevance" of the Court's carefully-timed schedule of pre-certification hearing events.

The Insurer Defendants are only a small group of possible deponents (which are limited to 20 in any event), and they are hardly the principal object of class certification discovery in the Levee and MRGO cases. They have not shown any justification, much less "good cause shown" why class certification depositions is two different and unrelated cases should be stayed or deferred.

Therefore, the Levee and MRGO Plaintiffs suggest that the Insurer Defendant's motion should be denied forthwith.

**Respectfully Submitted,**

s/ Joseph M. Bruno
Joseph M. Bruno (#3604)
BRUNO & BRUNO, L.L.P.
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Liaison Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9 day of March, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants. I further certify that I mailed the foregoing

document and the notice of electronic filing by first-class mail to all counsel of record who are non-CM/ECF participants.

                                                BRUNO & BRUNO

                                                s/ Joseph M. Bruno
                                                Joseph M. Bruno (#3604)