UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

PERTAINS TO: Insurance

CIVIL ACTION

NO. 05-4182 "K" (2)

JURY TRIAL REQUESTED

CLASS ACTION

This Master Consolidated Complaint for Insurance Sub-Group consolidates the following class actions: 06-1672, 06-1673, 06-1674, 06-5164, 06-11385, 07-1303, 07-1304.

## INSURANCE MASTER CONSOLIDATED CLASS ACTION COMPLAINT

Pursuant to ¶ II(B)(1) of this Court's Case Management and Scheduling Order No. 4, the Insurance PSLC submits this superseding Master Consolidated Class Action Complaint.

### I. PARTIES & JURISDICTION

1.    Each Plaintiff is a Louisiana resident who purchased an "All-Risk" contract of insurance from one of the Defendant insurers, as set forth in the attached Exhibit A, which is hereby incorporated by reference.

2.    Plaintiffs seek to proceed pursuant to Fed. R. Civ. P. 23 on behalf of themselves and three classes of insureds who are similarly situated to their respective Plaintiffs sub-classes, all of whom were Louisiana residents who owned or rented immovable property with improvements, principally residential or commercial structures, as well as personal property located there, which was damaged or destroyed by or as a proximate result of winds associated with Hurricane Katrina.

3.    Each Defendant is an insurance company who was doing business in the State of

1

Louisiana and in this District at all times relevant to this complaint, including the business of selling insurance and adjusting insurance claims.

4. Each Defendant insured one or more Plaintiffs as set forth in this complaint and the attached Exhibit A.

5. Each Defendant has been served with process in this action and therefore is subject to, and has submitted to, the jurisdiction of this Court.

6. Each Defendant is otherwise subject to the jurisdiction of this Court.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. This is an amending, superseding, consolidated complaint asserting causes of action by and against parties already before this Court.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District and the Defendants regularly transact business in this District.

## II.  GENERAL CLASS ACTION ALLEGATIONS

9. Plaintiffs collectively comprise and seek to represent three distinct classes: The Homeowner Policyholder's Class, The Renter's Class, and the Commercial Class.  All proposed class definitions exclude members of the judiciary, their administrative staff, and anyone else who might prevent this Court from presiding over this action.

10. Plaintiffs propose to subdivide the Homeowner Policyholder's Class into approximately 63 subclasses—one subclass per insurer.

11. *Predominance of Common Questions of Fact and Law.*  With respect to each proposed class and subclass, common questions of fact and law predominate over the questions affecting only individual class members, particularly with respect to matters of policy interpretation,

2

application of Louisiana law to the subject policies, application of Louisiana law to Defendants' conduct, the history and significance of specific policy provisions, the Defendants' respective policies, practices, and procedures as they apply to each class's respective claims, the efficient proximate cause of the inundation of the Plaintiffs' properties, including the fault of third parties, and the propriety of the declaratory relief sought by the respective classes.

12. *Typicality.* Plaintiffs' claims are typical of the claims of their respective class members in that: (a) Plaintiffs own or rent residential or commercial property within the State of Louisiana; (b) Plaintiffs each sustained damages and losses caused by a covered peril on such property; (c) such damage resulted during Hurricane Katrina; (d) each Plaintiff filed a valid claim for such loss with their respective insurer who denied or devalued the claim based upon policies, practices, and procedures that applied uniformly to members of each respective class and subclass; (e) which conduct is subject to Louisiana law, resulting in a uniform legal analysis and classwide resolution of the issues presented in this action.

13. *Numerosity.* The members of the class are so numerous that separate joinder of each member is impracticable. The exact number of individual claimants in a given class or subclass is unknown to Plaintiffs but is known to the respective Defendants. Given the magnitude of the losses at issue, no one can seriously question whether the classes are sufficiently numerous.

14. *Adequacy.* Plaintiffs will adequately represent the interests of the class because their interests do not conflict with those of their respective classes; Plaintiffs' interests are coextensive with those of their respective classes and they assert common rights of recovery based on essentially identical fact patterns. Plaintiffs have retained counsel competent and experienced in complex class action litigation who will pursue this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and counsel.

15. *Superiority.* Class treatment is a superior method for the fair and efficient adjudication of each proposed class because, among other reasons, certain class members likely are unaware of the esoteric legal issues raised by this action and unaware of the misconduct upon which this action is premised, making individual litigation and vindication of those class members' contractual rights unlikely. For those who might litigate, the expense of prosecuting individual claims would be prohibitive in light of the typical claimant's injury, the claimants' geographical dispersion, and the highly orchestrated, daunting array of legal forces harnessed by Defendants in response to this catastrophe. These claims already have been concentrated into this consolidated proceeding and, upon this Court's Order, have been further consolidated by way of this Master Complaint. By so proceeding, the claimants are more likely to receive notice of their rights and a forum in which to seek redress. Any difficulties in the management of this class action will be greatly outweighed by the value of the class action procedure.

16. The prosecution of separate claims by individual members of the class would create a substantial risk of inconsistent adjudications concerning individual members of the class that would in practical terms be dispositive of, or would substantially impair or impede, the ability of other class members' to protect their interests. Additionally, the prosecution of individual claims would bestow an organizational and logistical benefit upon the Defendants—permitting them to collate and strategically orchestrate the thousands of lawsuits and separate adjudications resulting from such litigation—while denying each plaintiff a commensurate organizational and logistical structure and the efficiencies that class treatment would engender.

17. Defendants have acted on grounds generally applicable to all members of each respective class and subclass. The geographic scope of the Class militates in favor of a single proceeding with uniform application of Louisiana law to the common facts.

### III.  THE HOMEOWNER POLICYHOLDER'S CLASS

**III (A)  Factual Allegations Applicable to All Homeowner Policyholder Class Members ("Homeowner Policyholders")**

18.  Each Homeowner Policyholder purchased a homeowner's All-Risk policy of insurance from at least one of the Defendants, which policy was in full force and effect on August 29, 2005.

19.  Each policy covered all losses from any cause unless specifically excluded by the policy.

20.  Homeowner Policyholders purchased their respective policies with the reasonable expectation that they could recover benefits for any and all losses to their residence and personal property caused by hurricanes, including all damage proximately and efficiently caused by hurricane wind, and "storm surge" proximately caused by hurricane wind.

21.  For the purpose of obtaining such coverage, most All-Risk Policies were endorsed with "special hurricane deductible endorsements" that expressly created the reasonable expectation that coverage was provided for hurricane-related damages and losses.

22.  Defendants had advance knowledge of the topographic characteristics of Greater New Orleans and the fragility of the New Orleans area levee system; yet, in contrast to other insurance policies available in the market and known to Defendants, the Defendants did not specifically exclude from coverage damages resulting from the breaking or failure of boundaries and levees of lakes, rivers, streams, or other bodies of water.

23.  The flood maps of New Orleans used and created in connection with the NFIP are premised upon the existence of the New Orleans levee system, further demonstrating that any failure of the levee system does not constitute "flood" for the purposes of the NFIP or in the context of the All-Risk policies sold in the Greater New Orleans Metropolitan Area.

24. Defendants did not specifically exclude from coverage any water damage resulting from the covered windstorm, storm surge, or man-made a/k/a third-party fault or negligence.

25. The Homeowner Policyholders purchased their all-risk policies directly from their respective insurers, each of whom sells policies directly to public or through agents authorized by Defendants to do so.

26. The availability through the National Flood Insurance Program of flood insurance, as well as the availability of excess flood insurance, were known to and sold by the Defendants at the time they sold their respective policies to the Homeowner Policyholders.

27. Despite this knowledge, at no time prior to August 29, 2005, did any Defendant advise a Homeowner Policyholder that—contrary to Defendants' representations—their true intent was not to cover damage or loss caused by hurricanes that might in any respect involve water damage, such that the Homeowner Policyholders' homes may be grossly underinsured and that Homeowner Policyholders thus may or should purchase primary or excess flood coverage.

28. Homeowner Policyholders trusted and relied upon their respective Defendant insurers' representations that the subject policies would cover any damage caused by a hurricane so that Homeowner Policyholders reasonably (and correctly) believed that their respective policies would cover any and all damages to insured property sustained during a hurricane.

29. The amount of insurance purchased by each Homeowner Policyholder varied based on the estimated cost of replacing the insured home—an amount estimated by the Defendants or their authorized agents whose estimates the Defendants ratified.

30. The Defendants placed valuations on each Homeowner Policyholder's property and used such valuations for purposes of determining premiums to be charged for each policy, under Louisiana's Valued Policy Law

6

31.  At 6:10 a.m., on August 29, 2005, Hurricane Katrina made landfall near Buras, Louisiana as a Category 3 hurricane, and then made a second landfall a short time later near the Louisiana-Mississippi border, with the eye of the storm passing just east of the City of New Orleans at approximately 9:00 a.m.

32.  Throughout August 29th and the following days, water inundated the Greater New Orleans Area, including the properties owned by the Homeowner Policyholders and insured by Defendants.

33.  The inundation of and resulting damage to the Homeowner Policyholders' insured properties had one of three efficient proximate causes: (i) the windstorm associated with Hurricane Katrina, (ii) the negligence or fault of third parties with respect to the design, construction, inspection, maintenance, and operation of an entire navigable waterway system that consisted at least in part of the Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway, the Inner Harbor Navigation Canal (a/k/a the Industrial Canal), the London Avenue Canal, the Seventeenth Street Canal, the Orleans Canal, and their environs including all associated levees, levee walls, spoilbanks, and/or associated structures; and/or (iii) the "storm surge" associated with Hurricane Katrina.

34.  Each Homeowner Policyholder has suffered a covered loss of, or damage to, his or her covered property.

35.  Many Homeowner Policyholders sustained substantial damage to their homes, rendering them a total loss.  All such Homeowner Policyholders are similarly situated with, and their claims are typical of, all other Homeowner Policyholders, except that those who suffered total losses are entitled to liquidated damages with respect to loss of their structures—namely the full value stated on the face of their policies.

7

36. In processing and adjusting the Homeowner Policyholders' respective claims, the Defendants ignored Louisiana's long-standing efficient proximate cause doctrine and instead adopted an industry-wide approach to denying valid claims for inappropriate reasons.

37. The Defendants have improperly equated inundation which had as its efficient proximate cause windstorm and/or third-party fault or negligence with "flooding" in an effort calculated to improperly expand each subject policy's water damage exclusion and thus to deny benefits owed to the Homeowner Policyholders, all in violation of the Homeowner Policyholders' reasonable expectations under their All-Risk policies.

38. The Defendants have improperly equated storm surge (which itself is caused by windstorm) with "flooding" in an effort calculated to improperly expand each subject policy's water damage exclusion and to thus deny benefits owed to the Homeowner Policyholders, all in violation of the Homeowner Policyholders' reasonable expectations under their All-Risk policies.

39. In or around 2000, Insurance Services Office, Inc. ("ISO") issued All-Risk homeowners policy forms for Louisiana pursuant to its "Homeowners Policy Program (2000 Edition)" that recommended that the Water Damage Exclusions be expanded to encompass losses "caused by or resulting from human or animal forces or any act of nature" because the language found in the prior ISO All-Risk policy forms had been interpreted to exclude only water damage occurring from natural sources.

40. In fact, ISO explained to the Louisiana Department of Insurance: "To point out that coverage is excluded not only for naturally occurring events, we added language to these exclusions to indicate that they apply even if the excluded event is *caused by or results from human or animal forces.*"

41. ISO scheduled the amendments to the Water Damage Exclusion, among language amending other policy provisions, to be approved on a state-by-state basis.

42. In March 2004 ISO, acting on behalf of all of its participating insurance companies, submitted the new language to the Louisiana Department of Insurance, and it was approved effective August 13, 2004—more than a year before Hurricane Katrina struck.

43. The inundation of the Homeowner Policyholders' respective properties was not "natural;" it resulted from the fault and negligence of the U.S. Army Corps of Engineers and/or other third parties.

44. The Defendants instituted policies, customs, practices, and procedures encouraging and directing their adjusters to follow specific guidelines whereby the adjusters would search out a nearby waterline and apply it a given Homeowner Policyholder's property in an effort calculated to deny benefits owed to the Homeowner Policyholders, all in violation the Homeowner Policyholders' reasonable expectations under their All-Risk policies.

45. The Defendants improperly instituted policies, customs, practices, and procedures encouraging and directing their adjusters to maximize damage purportedly caused by "flood" and to minimize damage caused by wind in an effort calculated to deny benefits owed to the Homeowner Policyholders, all in violation of the Homeowner Policyholders' reasonable expectations under their All-Risk policies.

46. The Defendants improperly instituted other policies, customs, practices, and procedures encouraging and resulting in the routine devaluation of the Homeowner Policyholders' respective claims, and the routine delay and denial of payment of benefits owed to the Homeowner Policyholders, all in violation of the Homeowner Policyholders' reasonable expectations under their All-Risk policies.

47. Each Homeowner Policyholder made timely payment of all premiums due under the subject policies, and each has otherwise satisfied all conditions precedent to maintenance of this action.

### III (B)   Class Allegations Applicable to All Homeowner Policyholder's Class Members ("Homeowner Policyholders")

48. The Homeowner Policyholders seek to represent a class defined as: all persons who owned property within the State of Louisiana which property was damaged or destroyed by or as a proximate result of winds associated with Hurricane Katrina, and who at the time of the loss had in effect an All-Risk homeowner's insurance policy issued by one of the Defendants.

49. The Homeowner Policyholders' claims are appropriate for class treatment for the reasons set forth in Section II of this Master Complaint. Additionally, the division of the Homeowner Policyholders' class into Defendant-based subclasses will render each subclass representative's claim virtually identical to those of all other subclass members because of the uniformity of policy language and claims practices employed by each respective insurer.

50. The proposed subclass representatives are identified in Exhibit A attached hereto.

51. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) and (b)(3) and/or 23(b)(1)(B).

52. The Homeowner Policyholders aver that certification of a Defendant class may also be prudent given these unique circumstances.

### III (C)   Homeowner Policyholder Class COUNT I: Declaratory Relief

53. The Homeowner Policyholders reallege the foregoing paragraphs.

54. An actual controversy exists between the Homeowner Policyholders and their respective insurer Defendants as to the meaning of the subject policies, and application of Louisiana law to

such policies, and the Defendants' resulting duty to indemnify the Homeowner Policyholders for their losses.

55. It is therefore necessary and appropriate for the Court to declare the Homeowner Policyholders' and Defendants' rights and duties under the subject policies pursuant to 28 U.S.C. § 2201.

56. The losses suffered by Homeowner Policyholders due to or as a proximate result of the winds associated with Hurricane Katrina are covered losses under their respective policies. The Homeowner Policyholders' losses were caused by covered perils, and the efficient proximate causes of all losses were covered perils.

57. To give the water damage (a/k/a "flood") exclusions a broad reading and thus disallow coverage for the damages arising from this catastrophic disaster, which occurred despite the vast and expansive levees and spoilbanks existing in the Greater New Orleans Area, would contravene the very purpose of homeowner's All-Risk policies.

58. The Defendants' interpretation of the exclusions and the anti-concurrent causation clause should be declared unenforceable on the grounds such interpretation, if enforced, will lead to absurd consequences and would be contrary to public morals, public policy, good faith, elementary fairness, and a violation of the abuse of rights doctrine, valued policy law and other Louisiana law.

59. The reasonable expectation of the Homeowner Policyholders was that the all-risk policies they provided would provide coverage for losses caused by the failure of any man-made structures containing navigable waters surrounding the Greater New Orleans Area due to negligent conduct beyond the Homeowner Policyholders' control.

11

60. The Homeowner Policyholders should not be deprived of the coverage under their All-Risk policies where the Defendants have drafted vague, ambiguous, and unclear limitations on coverage, thereby violating the rule under Louisiana law that exclusions must be clearly and explicitly drafted. The Defendants consciously decided to sell the same comprehensive All-Risk policies to Homeowner Policyholders that they sell in the "high and dry" plains throughout the United States.

61. In violation of their statutory and contractual duties, the Defendants have refused to indemnify the Homeowner Policyholders for their losses and have denied coverage for their losses.

62. Thus, Homeowner Policyholders are entitled to a declaratory judgment that the damages they suffered are covered losses under the subject policies.

63. While the Insurance Company Defendants may continue to make investment income during the course of these proceedings, the Homeowner Policyholders must sit idly by awaiting a decision, unable all the while to begin reconstruction or renovation of their homes.

64. Accordingly, without resolution of this issue by declaratory judgment, the Homeowner Policyholders will in most instances be unable to remedy the damages they fully expected were covered by their all-risk policies.

65. **WHEREFORE**, the Homeowner Policyholders respectfully request a jury trial on all issues so triable, and that this Court enter a declaratory judgment in their favor against the Defendants as to Count I, ordering and decreeing the following (or by ordering and decreeing the requested relief should the factual predicates be otherwise established):

65a.    the first efficient proximate cause of the losses suffered by the Homeowner Policyholders on August 29, 2005, was "windstorm," a covered peril under each of

the insurance policies purchased by the Homeowner Policyholders, thereby rendering any subsequent impact from water released by the levees or due to other third-party negligence irrelevant to coverage afforded by the insurance policies; or

65b.    the second efficient proximate cause of the losses suffered by the Homeowner Policyholders on August 29, 2005, was inundation of their properties caused by man-made, third-party negligence or fault with respect to the design, construction, engineering, inspection, maintenance, and operation of the surrounding navigable waterway system, including all levees, levee walls, spoilbanks, and/or associated structures; and that such acts are not excluded from coverage in, and therefore are covered by, the subject All-Risk policies; or

65c.    the third efficient proximate cause of the losses suffered by the Homeowner Policyholders on August 29, 2005, was inundation of their properties caused by "storm surge," a known meteorological phenomenon that is not excluded from coverage in, and therefore is covered by, the subject policies.

65d.    The breaking or failure of boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by any of the Defendants' insurance policies, in contrast to other insurance policies available in the market.

65e.    The inundation of the subject properties due to breaches in the navigable waterway system in and around New Orleans—including all associated levees, levee walls, spoilbanks, and/or associated structures—neither falls within the regular definition of "flood," nor within any of the subject insurance policies' exclusions of "flood."

65f.    Those Homeowner Policyholders who suffered total losses to their respective properties suffered a "covered loss of, or damage to the covered property; and are

13

entitled to recover the full value placed on their properties by the Defendants without deduction or offset.

65g.   The Defendants' "anti-concurrent causation" policy provisions are inapplicable where a covered peril is the efficient proximate cause of the loss and, therefore, all losses or damages resulting from such covered peril are covered under the All-Risk policies at issue.

### III (D)   Homeowner Policyholders Class COUNT II: Breach of Contract

66.   The Homeowner Policyholders reallege the foregoing paragraphs.

67.   Valid contracts exist between Homeowner Policyholders and the Defendants in the form of the individual All-Risk policies, which obligate the Defendants to cover the loss of or damage to a dwelling and personal property therein which is caused by covered perils such as wind or windstorms or acts of negligence.

68.   Homeowner Policyholders paid all premiums due under the All Risk policies and materially performed their obligations under those policies.

69.   Upon proper and repeated demands by Homeowner Policyholders, the Defendants have refused to meet their obligations under the All Risk policies and refused to pay the full damages and losses for Homeowner Policyholder's homes and personal property being destroyed or damaged by the efficient proximate cause of covered perils such as wind or windstorms or acts of negligence.

70.   Louisiana's valued policy law requires that, if an "insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnify or

14

compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset." LRS § 22:695.

71. The valued policy law is read into each Homeowner Policyholder's policy as a matter of law, such that breach of the statute constitutes a breach of the contract.

72. The Defendants' failure to pay the Homeowner Policyholders all benefits due and owing, as described above, constitutes a breach of the Homeowner Policyholders' respective contracts of insurance.

73. For those Homeowner Policyholders who have suffered a total loss, the Defendants' failure to indemnify or compensate the Homeowner Policyholders in an amount equal to the values used for determining the individual policy premiums constitutes a breach of the Homeowner Policyholders' respective contracts of insurance.

74. As a result of the Defendants' breaches, each Homeowner Policyholder has been deprived the benefit of insurance coverage for which the Defendants were paid substantial premiums and, accordingly, each Homeowner Policyholder has suffered damages and losses.

75. **WHEREFORE**, the Homeowner Policyholders demand a jury trial on all issues so triable and judgment against the Defendants, respectively, for all amounts due under the subject All-Risk policies, other compensatory and consequential damages, punitive damages, interest, attorney fees, costs, and any further relief that may be acquired at law or in equity.

### III (E)   Homeowner Policyholder Class COUNT III: Breach of the Implied Covenant of Good Faith and Fair Dealing

76. The Homeowner Policyholders reallege the foregoing paragraphs.

77. By selling their insurance policies to the Homeowner Policyholders, the Defendants assumed a duty of good faith and fair dealing to their respective insureds, including an obligation to promptly indemnify the Homeowner Policyholders for their losses.

78. Defendants lack an arguable or legitimate basis for refusing to pay the Homeowner Policyholders' claims.

79. By engaging in the conduct described above, and by failing therefore to pay the Homeowner Policyholders all benefits due and owing, the Defendants have violated the duties of good faith and fair dealing owed to Homeowner Policyholders.

80. As a direct and proximate result of the Defendants' bad faith acts, the Homeowner Policyholders have suffered, and will continue to suffer, substantial damages.

81. Moreover, the Defendants' persistent and systematic acts and omissions were carried out with malice and gross negligence and with a disregard for the Homeowner Policyholders' rights so as to warrant the imposition of punitive damages against the Defendants.

82. **WHEREFORE**, the Homeowner Policyholders demand a jury trial on all issues so triable and judgment against the Defendants, respectively, for all amounts due under the All-Risk policies, other compensatory and consequential damages, punitive damages, interest, attorney's fees, costs, and any further relief that may be acquired at law or in equity.

### III (F)   Homeowner Class COUNT IV: Breach of LRS § 22:658, LRS § 22:658.2, LRS § 22:1220, La. Civ. Code Art. 1997 and Louisiana Law (Insurance Bad Faith)

83. The Homeowner Policyholders reallege the foregoing paragraphs.

84. Defendants' uniform denial of coverage constitutes bad faith under La. Rev. Stat. Ann. § 22:1220, La. Civ. Code Art. 1997, La. Rev. Stat. Ann. § 22:658, La. Rev. Stat. Ann. § 22:658.2, and Louisiana law.

85.  Pursuant to La. Rev. Stat. § 22:1220A, the Defendants owe the Homeowner Policyholders a "duty of good faith and fair dealing" as well as a duty to "adjust claims fairly and promptly and to make a reasonable effort to settle claims" with the Homeowner Policyholders.

86.  La. Rev. Stat. § 22:1220B prohibits the Defendants from, inter alia, "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue" and "[f]ailing to pay the amount of any claim . . . when such failure is arbitrary, capricious or without probable cause."

87.  The Defendants have misrepresented the coverage afforded under the Homeowner olicyholders' subject policy provisions by wrongfully and without a legitimate basis seeking to give the "flood" exclusions a broad reading in an effort calculated to deprive the Homeowner Policyholders of benefits to which they are entitled.

88.  The Defendants have breached known duties through a motive of self interest and/or ill will without having a reasonable basis to deny these claims, instead denying claims in an arbitrary and capricious manner and without probable cause.

89.  By so doing, and by engaging in the specific conduct described above, and by failing therefore to pay the Homeowner Policyholders all benefits due and owing, the Defendants have violated the duties of good faith and fair dealing owed to the Homeowner Policyholders.

90.  Moreover, pursuant to a recent enactment of the Legislature of Louisiana, an insurance company acts in bad faith when it fails "to pay claims pursuant to R.S. 22:658.2 [and] such failure is arbitrary, capricious, or without probable cause." La. Rev. Stat. § 22:1220A. The Defendants' conduct described above was arbitrary, capricious, and without probable cause, thus violating this statute and constituting bad faith.

17

91. As a direct and proximate result of the Defendants' bad faith acts, the Homeowner Policyholders have suffered, and will continue to suffer, substantial damages and losses.

92. **WHEREFORE**, the Homeowner Policyholders demand a jury trial on all issues so triable and judgment against the Defendants, respectively, for all amounts due under the Policies, other compensatory and consequential damages, punitive damages, interest, attorneys' fees, costs, and any further relief that may be acquired at law or in equity.

### III (G)  Homeowner Policyholder Class COUNT V: Breach of Fiduciary Duty

93. Homeowner Policyholders reallege the foregoing paragraphs.

94. In selling and placing insurance, as described above, Defendants function as insurance brokers or agents.

95. As such, Defendants owe their respective Homeowner Policyholders a fiduciary duty of undivided loyalty, due care, and fidelity.

96. Defendants owed Homeowner Policyholders a fiduciary duty to perform their responsibilities as insurance brokers and/or agents with good faith and appropriate skill in Homeowner Policyholders' best interests and with heightened care, fidelity, diligence and full disclosure required of a fiduciary.

97. Among other things, insurance brokers and/or agents are obligated to provide advice and assistance to prospective insureds so that risks to which they are exposed are adequately insured, or at a minimum, to provide them with adequate opportunity and advice to make a decision as to what coverage to purchase.

98. Defendants' failure to fully disclose and properly advise the Homeowner Policyholders, as described above, breached the fiduciary duties owed to the Homeowner Policyholders.

99.  Such breaches caused the Homeowner Policyholders substantial damages and losses.

100.  **WHEREFORE**, the Homeowner Policyholders demand a jury trial on all issues so triable and judgment against the Defendants, respectively, for all amounts due under the Policies, other compensatory and consequential damages, punitive damages, interest, attorney's fees, costs, and any further relief that may be recovered at law or in equity.

IV.  THE TRAVELERS RENTER'S CLASS

### IV (A)  Factual Allegations Applicable to All Travelers Renter's Class Members ("Renter's Plaintiffs").

101.  Renter's Plaintiff Eva Maynard, at the time of Hurricane Katrina, was covered under a standard Travelers homeowner's policy, HO-4. The class members are any and all renters insured under the HO-4 and also the Travelers homeowner's policy HO-3, whose language relating to exclusions is materially identical.

102.  Made Defendant herein is The Travelers Indemnity Company ("Travelers"), a oreign insurance company who, directly and/or through one or more subsidiaries, sisters, and/or other affiliated insurance companies was, at all pertinent times, licensed to be engaged and actually engaged in the business of insurance within the State of Louisiana.

103.  The subject policy includes coverage (identified as "Coverage C") for personal property owned by the insured.

104.  Plaintiff and class members assert coverage under the policies by virtue of the "Windstorm or hail" coverage in the HO-4 policy for renters, in combination with the non-excluded event, namely the negligent acts of third parties, as set out below.

105.  There is no exclusion relating to this coverage for the negligence or fault of third parties.

106. The exclusion relating to Water Damage refers to: "Flood, surface water, waves, tidal water, overflow of a body of water or spray from any of these, whether or not driven by wind."

107. The Water Damage Exclusion set out above is identical in both the HO-3 Policy (Home Owners - Home and Contents) and HO-4 (Renters - Contents Only).

108. This Court, in *In Re Katrina Canal Breaches Consolidated Litigation*, ___ F. Supp. 2d ___, 2006 WL 3421012 (E.D. La. 2006), held that the Water Damage Exclusion was ambiguous and would be considered in favor of the insureds, and that it would not operate to exclude water damage caused by negligently maintained levees.

109. In or around 2000, ISO issued an "HO 2000" Homeowners Form for Louisiana that recommended that the Water Damage Exclusions be expanded to encompass "caused by or resulting from human or animal forces or any act of nature" because the language found in the Travelers policy had been interpreted to exclude only water damage occurring from natural sources.

110. In or around 2004, Travelers internally decided to amend the Water Damage Exclusion in its HO-3 and HO-4 policies to clarify it, in accordance with the above paragraph.

111. Travelers scheduled the amendments to the Water Damage Exclusion, among language amending other policy provisions, to be approved on a state-by-state basis beginning in 2004. But it had not yet applied to the State of Louisiana prior to August 29, 2005, simply because it scheduled other states ahead of the State of Louisiana.

112. In fact, in July 2004 the State of Louisiana had already approved adoption in at least one other policy of the ISO language set forth above, that Travelers wished to insert in its policy.

113. Travelers, however, made the decision not to expand its Water Damage Exclusion in such way.

114. The massive water damage arising in the wake of breaches of the Seventeenth Street Canal Levee, the New London Canal Levee, and the levees and/or levee walls along the Industrial Canal were not "natural," but were the result of the fault and negligence of the U.S. Army Corps of Engineers and/or other third parties.

115. Travelers erroneously denied coverage for all class members based upon the aforementioned deliberate misreading of the policies.

116. Travelers' denial of coverage was uniform and implemented on a policy level.

117. Travelers uniformly relied on the ambiguous Water Damage Exclusion to support its denial of coverage to HO-3 and HO-4 policyholders across the Greater New Orleans region, whether the policy was an HO-3 policy or an HO-4 policy, without distinction, and without exception, in respect of all policyholders within the class, knowing full well that it had concluded that the language was ambiguous and needed clarification as recommended by ISO in 2000, and approved by Travelers itself in 2004.

118. Because Travelers denied coverage to the Plaintiff and other class members contrary to its own internal decision to adopt ISO language, and the new Water Damage Exclusion, (which it considered to be clear), it acted in bad faith under La. Rev. Stat. § 22:1220, La. Civ. Code art. 1997, La. Rev. Stat. § 22:658, and Louisiana law.

119. Travelers' uniform denial of coverage in the wake of its internal decision to the contrary constitutes bad faith under the same laws.

120. Travelers' uniform labeling of both HO-3 and HO-4 policies as "Homeowners" policies is contrary to La. Rev. Stat. § 22:624, as that label fails to specify the scope of coverage offered therein, in that it fails to differentiate between "All Risk" homeowners' coverage for HO-3 policies and "named perils" renters' coverage for HO-4 policies.

121. Travelers' uniform denial of coverage constitutes bad faith under La. Rev. Stat. § 22:1220, La. Civ. Code art. 1997, La. Rev. Stat. § 22:658, and Louisiana law.

### IV (B)   Class Allegations Applicable to All Renter's Class Members ("Renter's Plaintiffs").

122. Renter's Plaintiff Eva Maynard, who is an adult domiciled and residing in the Parish of St. Bernard, seeks to represent a class defined as: all Louisiana residents who were covered for damage or loss to personal property under one or more policies of insurance issued by Travelers (including all parents, sisters, subsidiaries, or affiliated insurance companies) which policy applied to renters and was in effect on August 29, 2005.

123. The Renter's Plaintiffs' claims are appropriate for class treatment for the reasons set forth in Section II of this Master Complaint and for the additional reasons set forth below.

124. Common questions include whether the subject policies provide coverage for loss or damage to personal property as a result of water damage caused by the negligence or fault of third parties; and/or whether the water damage arising in the wake of Hurricane Katrina was the result of the fault or negligence of the U.S. Army Corps of Engineers and/or other third parties.

125. Eva Maynard's claims are typical of the class.

126. Eva Maynard will fairly and adequately advance and protect the interests of the class; Eva Maynard is committed to the vigorous prosecution of this action and has retained competent counsel who are experienced in complex litigation of this nature.

127. The class may be defined objectively in terms of ascertainable criteria, such that the Court may determine the constituency of the class for the purposes of the conclusiveness of any judgment that may be rendered. It is believed and alleged that the Defendant has a list of each and every class member; who can therefore be ascertained by the Court and notified by mail.

128.  The Defendant has acted and/or refused to act on grounds generally applicable to the class, thereby making appropriate declaratory relief with respect to the class as a whole.

### IV (C)   Relief Sought by the Renter's Class Members ("Renter's Plaintiffs")

129.  The Renter's Plaintiffs are entitled to a declaration that the Travelers' policies provide coverage to the Renter's Plaintiffs for personal property damage by man-made water damage caused by the negligence or fault of the U.S. Army Corps of Engineers and/or other third parties.

130.  The Renter's Plaintiffs are further entitled to additional associated general and/or equitable relief, penalties, and attorneys' fees.

131.  **WHEREFORE**, the Renter's Plaintiffs respectfully pray that this Petition be deemed good and sufficient and that, after due proceedings be had, a class be certified and that, after further proceedings be had, there be judgment herein in favor of the plaintiff class, and against Defendant, The St. Paul Travelers Companies, Inc., for a declaration as to coverage under the Travelers policies and for any and all associated appropriate general and/or equitable relief, penalties, attorneys' fees, interest, and costs.

## V.  THE COMMERCIAL CLASS

### V (A)   Factual Allegations Applicable to All Commercial Class Members

132.  Each Commercial Class Member is a commercial a for-profit or not-for-profit entity or organization that owns or operates immovable property with improvements, principally commercial structures, as well as business and personal property located there, with such property being located in the State of Louisiana and within the jurisdiction of this Court, and each was insured by at least one of the Commercial Defendants, as set forth in the attached Exhibit A ("Commercial Defendants"), which is hereby incorporated by reference.

133.  The Commercial Class Members purchased their All-Risk policies from Commercial Defendants with the reasonable expectation that they would be able to recover for any and all losses to their properties, business personal property, and business income caused by hurricanes, including any and all damage proximately and efficiently caused by hurricane wind, and "storm surge" proximately caused by hurricane wind.

134.  For the purpose of obtaining such coverage, Commercial Class Members were endorsed with "special hurricane deductible endorsements" that expressly created the reasonable expectation that coverage was provided for hurricane-related damages and losses.

135.  The Defendants placed valuations on each Commercial Class Member's property and used such valuations for purposes of determining premiums to be charged for each policy, under Louisiana's Valued Policy Law.

136.  Commercial Defendants had advance knowledge of the topographic characteristics of Greater New Orleans and the fragility of the New Orleans area levee system; yet, in contrast to other insurance policies available in the market and known to Commercial Defendants, the Commercial Defendants did not specifically exclude from coverage damages resulting from the breaking or failure of boundaries and levees of lakes, rivers, streams, or other bodies of water.

137.  Commercial Defendants did not specifically exclude from coverage water damage resulting from windstorm, storm surge, or man-made a/k/a third-party fault or negligence.

138.  The Commercial Class Members trusted and relied upon Commercial Defendants' representations that their respective policies would cover any damage caused by a hurricane and, thus, reasonably believed that the policies would cover any and all hurricane damage.

139.  At all times relevant hereto, the Commercial Class Members made timely payment of the premiums due on their respective All-Risk policies.

140. At 6:10 a.m., on August 29, 2005, Hurricane Katrina made landfall near Buras, Louisiana as a Category 3 hurricane, and then made a second landfall a short time later near the Louisiana-Mississippi border, with the eye of the storm passing just east of the City of New Orleans at approximately 9:00 a.m.

141. Throughout August 29th and the following days, water inundated the Greater New Orleans Area, including the properties owned by the Commercial Class Members and insured by Commercial Defendants.

142. The inundation of and resulting covered loss and damage to the Commercial Class Members' insured properties had three efficient proximate causes: (i) the windstorm associated with Hurricane Katrina, (ii) the negligence or fault of third parties with respect to the design, construction, inspection, maintenance, and operation of an entire navigable waterway system that consisted at least in part of the Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway, the Inner Harbor Navigation Canal (a/k/a the Industrial Canal), the London Avenue Canal, the Seventeenth Street Canal, the Orleans Canal, and their environs including all associated levees, levee walls, spoilbanks, and/or associated structures; and (iii) the "storm surge" associated with Hurricane Katrina.

143. Many Commercial Class Members sustained substantial damage to their properties, rendering them a total loss. All such class members are similarly situated with, and their claims are typical of, all other class members, except that those who suffered total losses are entitled to liquidated damages with respect to their structures—the full value on the face of their policies.

144. The Commercial Defendants have improperly equated inundation which had as its efficient proximate cause windstorm and third-party fault or negligence with "flooding" in an effort calculated to improperly expand each subject policy's water damage exclusion and thus to

deny benefits owed to the Commercial Class Members, all in violation of the Commercial Class Members' reasonable expectations under their All-Risk policies.

145. The Commercial Defendants have improperly equated storm surge (which itself is caused by windstorm) with "flooding" in an effort calculated to improperly expand each subject policy's water damage exclusion and to thus deny benefits owed to the Commercial Class Members, all in violation of the Commercial Class Members' reasonable expectations under their All-Risk policies.

146. The Commercial Class Members sustained damage to their real property, business personal property, and a loss of income and/or revenue as a result of the catastrophic events of August 29, 2005, and the following days, said catastrophic events being precipitated by Hurricane Katrina, a Category 3 storm with sustained winds of 110 knots.

### V (B)    Class Allegations Applicable to All Commercial Class Members

147. The Commercial Class Plaintiffs identified in Exhibit A seek certification of the following class: All owners and operators of for-profit and not-for-profit commercial entities and organizations in the State of Louisiana, whose real property was destroyed or damaged and who sustained loss of business personal property, income and/or revenue, all as a result of winds and other perils generated by Hurricane Katrina, and who at the time of the loss had in effect an "All-Risk" policy of insurance from one or more of the Commercial Defendants.

148. *Numerosity.* Hurricane Katrina caused damage or destruction to approximately 160,000 structures and properties, many of which were owned or operated by Commercial Class Members. The exact number and identities of the class members are unknown at this time, and can only be ascertained through appropriate discovery, plaintiffs are of information and belief

that the class of plaintiffs clearly consists of hundreds of commercial entities and organizations presenting a level of numerosity better handled through the class action procedure.

149. *Common Questions Of Law And Fact.* There are common questions of law and fact applicable to all Commercial Class Members and Commercial Defendants, including those identified in Paragraph 11 as well as the legal determination of whether the efficient proximate cause of losses suffered as a result of water entering the City of New Orleans and surrounding parishes beginning on August 29, 2005, were standard covered perils in the insurance company defendants' "All Risk" property insurance policies.

150. *Adequate Representation.* Commercial Class Plaintiffs identified in Exhibit A will fairly and adequately represent the interests of the class; all are represented by skilled attorneys who are experienced in the handling of mass tort class action litigation and who may be expected to handle this action in an expeditious and economical manner to the best interest of all members of the class.

151. *Typicality.* The claims of Commercial Class Plaintiffs identified in Exhibit A are typical of the claims of the class members they seek to represent, in that they are all claims by an insured commercial entity and/or organization against its property insurer arising from losses suffered as a result of Hurricane Katrina in the City of New Orleans and surrounding parishes on August 29, 2005.

152. *Superiority.* The class action procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the Commercial Class Members is impracticable. Individual litigation by each of the class members, besides being unduly burdensome to the Plaintiffs would also be unduly burdensome and expensive to the court system as well as the Defendants.

153.  Accordingly, class certification is appropriate under the Federal Rules of Civil Procedure, Rule 23(b)(2), Rule 23(b)(3) and/or Rule 23(b)(1)(B), and the class action vehicle is the superior method for handling this litigation.

### V (C)    Commercial Class COUNT I: Declaratory Relief

154.  The Commercial Class Members repeat and re-allege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

155.  An actual controversy exists between the Commercial Class Members and Commercial Defendants concerning Commercial Defendants' duty to indemnify the Commercial Class Members for their losses.

156.  Consequently, under the circumstances, it is necessary and appropriate for the Court to declare the rights and duties of the Commercial Class Members and  Commercial Defendants under the subject policies pursuant to 28 U.S.C. § 2201.

157.  The losses suffered by the Commercial Class Members as a result of Hurricane Katrina are covered losses under their respective All-Risk policies.

158.  The Commercial Class Members have given timely notification to their respective insurers and made timely demands in writing that the Commercial Defendants cover the Commercial Class Members' losses.

159.  Commercial Defendants are obligated by the terms and conditions of the subject All-Risk policies to indemnify the Commercial Class Members for their losses.

160.  Commercial Defendants have refused to indemnify the Commercial Class Members for their losses and Commercial Defendants have denied coverage for the losses.  Thus, the

Commercial Class Members are entitled to a declaratory judgment that the damages it suffered are covered losses under their respective All-Risk policies.

161. Specifically, the Commercial Class Members' losses were caused by covered perils, the efficient causes of their losses were covered perils, and the efficient and proximate causes of loss were covered perils.

162. Further, to give the "flood" exclusions a broad reading and thus disallow the coverage for the damages arising from this catastrophic disaster, which occurred despite the vast and expansive levees existing in the Greater New Orleans area, would contravene the very purpose of the Commercial Class Members' "All-Risk" policies.

163. Further, the Commercial Defendants' interpretation of the exclusions and the anti-concurrent causation clause should be declared unenforceable on the grounds such interpretation, if enforced, will lead to absurd consequences and would be contrary to public morals, public policy, good faith, elementary fairness, and a violation of the abuse of right doctrine, valued policy law, and other Louisiana laws.

164. The reasonable expectations of Commercial Class Members were and are that "flood" encompasses overflowing of the Mississippi River, accumulation of surface water due to heavy rainfalls, or similar phenomena, but not the failing of virtually all man-made structures containing Navigable Waters of the United States surrounding the New Orleans Metropolitan Area due to negligent conduct beyond the Commercial Class Members' control.

165. Finally, the Commercial Class Members should not be deprived of coverage under their respective policies where the Commercial Defendants' drafted vague, ambiguous and unclear limitations on coverage, thereby violating the rule that exclusions must be clearly and explicitly drafted. They decided to sell the same comprehensive All-Risk property insurance

29

policies that they sell in the "high and dry" plains throughout the United States to other commercial entities and organizations.

166. Without resolution of this issue by declaratory judgment, the Commercial Class Members will be unable to remedy the damages it fully expected were covered by their respective All-Risk policies issued by Commercial Defendants.

167. **WHEREFORE,** the Commercial Class Members respectfully request a jury trial on all issues so triable, and that this Court enter a declaratory judgment in their favor against the Defendants as to Count I, ordering and decreeing the following (or by ordering and decreeing the requested relief should the factual predicates be otherwise established):

167a. the first efficient proximate cause of the losses suffered by the Commercial Class Members on August 29, 2005, was "windstorm," a covered peril under the insurance policy purchased by the Commercial Class Members, thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policies; or

167b. the second efficient proximate cause of the losses suffered by the Commercial Class Members and the Commercial Class on August 29, 2005, was inundation of their properties caused by man-made, third-party negligence or fault with respect to the design, construction, inspection, maintenance, and operation of the surrounding navigable waterway system, that consisted at least in part of the Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway, the Inner Harbor Navigation Canal (a/k/a the Industrial Canal), the London Avenue Canal, the 17th Street Canal, and the Orleans Avenue Canal, including all levees, levee walls, spoilbanks, and/or

associated structures, and that such acts are not excluded from coverage in, and therefore are covered by, the subject policies; or

167c.   the third efficient proximate cause of the losses suffered by the Commercial Class Members and the Commercial Class on August 29, 2005, was inundation of their properties caused by "storm surge," a known meteorological phenomenon that is not excluded from coverage in, and therefore is covered by, the subject policies.

167d.   The breaking or failure of levees or boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by the subject policies, in contrast to other insurance policies available in the market.

167e.   The inundation of the subject properties due to breaches in the navigable waterway system in and around New Orleans—including all associated levees, levee walls, spoilbanks, and/or associated structures—neither falls within the regular definition of "flood," nor within any of the subject insurance policies' exclusions of "flood."

167f.   Those Homeowner Policyholders who suffered total losses to their respective properties suffered a "covered loss of, or damage to the covered property; and are entitled to recover the full value placed on their properties by the Defendants without deduction or offset.

167g.   The Commercial Defendants' "anti-concurrent causation" policy provisions are inapplicable where a covered peril is the efficient proximate cause of the loss and, therefore, all losses or damages resulting from such covered peril are covered under the All-Risk policies at issue.

### V (D)    Commercial Class COUNT II:
### Breach of Contract

168. The Commercial Class Members repeat and re-allege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

169. A valid contract exists between the Commercial Class Members and their respective insurers in the form of the All-Risk policies, which obligate the Commercial Defendants to cover the loss of or damage to a dwelling and personal property therein which is caused by wind or windstorms, storm surge or acts of negligence.

170. Each Commercial Class Member paid all premiums due under its All-Risk policy and materially performed its obligations under such policy.

171. Upon proper and repeated demands by the Commercial Class Members, Commercial Defendants have refused to meet their obligations under the subject policies and have refused to pay the full damages for the Commercial Class Members' properties, including real and business personal property damaged, and business income lost, by the efficient proximate cause of windstorms, storm surge and/or negligence.

172. As a direct and proximate result of the breach by the Commercial Defendants, the Commercial Class Members were deprived of the benefit of insurance coverage for which Commercial Defendants were paid substantial premiums and, accordingly, the Commercial Class Members have suffered substantial damages.

173. **WHEREFORE,** the Commercial Class Members demand a trial by jury on all issues so triable, judgment against Commercial Class Defendants, respectively, for all amounts due under the All-Risk policies, other compensatory damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

### V (E)   Commercial Class COUNT III: Breach of the
### Implied Covenant of Good Faith & Fair Dealing

174. The Commercial Class Members repeat and re-allege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

175. By selling the subject policies to the Commercial Class Members, Commercial Defendants assumed a duty of good faith and fair dealing to the Commercial Class Members, including an obligation to promptly indemnify the Commercial Class Members for their losses.

176. Commercial Defendants have failed to follow Louisiana's long-standing efficient proximate cause doctrine and have instead adopted an industry-wide approach to denying valid claims for inappropriate reasons.

177. Commercial Defendants also have failed to provide coverage for the Commercial Class Members' losses and instead has attempted to equate the efficient proximate cause of windstorm and the negligent design, construction and maintenance of the levees in the New Orleans area and/or third party negligence which caused the Commercial Class Members' losses with "flooding" in an effort to exclude coverage.

178. Commercial Defendants also have wrongfully denied coverage for claims by equating "storm surge" with "flood", thereby improperly expanding the "flood" exclusion and defeating the reasonable expectation of Commercial Class Members.

179. Moreover, Commercial Defendants directed their adjusters to follow specific "guidelines" whereby the adjusters would arbitrarily, capriciously and without probable cause, find a nearby waterline and apply it to Commercial Class Members' property in order to deny full payment of the Commercial Class Members' claims.

180. Commercial Defendants further directed their adjusters to ignore all other information and evidence, and instead, to use only the procedure and guidelines mandated by them, specifically, the arbitrary application of any nearby waterline to the Commercial Class Members' properties.

181. In directing their adjusters to ignore any information or evidence other than the arbitrary and capricious application of any nearby waterline, Commercial Defendants violated La. Rev. Stat. Ann. § 658.2(A)(1) which provides that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."

182. By engaging in all of the conduct above, Commercial Defendants lack an arguable or legitimate basis for refusing to pay the Commercial Class Members' claims.

183. By engaging in the conduct described above, Commercial Defendants violated the duties of good faith and fair dealing owed to the Commercial Class Members.

184. As a direct and proximate result of the Commercial Class Members' bad faith actions, the Commercial Class Members have suffered, and will continue to suffer, substantial damages.

185. Moreover, by engaging in the conduct above, Commercial Defendants' persistent and systematic acts and omissions were carried out with malice and gross negligence and with a disregard for the Commercial Class Members' rights so as to warrant the imposition of punitive damages against Commercial Class Members.

186. **WHEREFORE,** the Commercial Class Members demand a trial by jury on all issues so triable, judgment against Commercial Defendants, respectively, for all amounts due under its Policy, other compensatory damages, punitive damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

**V (F)     Commercial Class COUNT IV:  Breach of the La. Rev. Stat.
§§ 22:658, 22:658.2, and 22:1220, La. Civ. Code Art. 1997 and
Louisiana Law (Insurance Bad Faith)**

187. The Commercial Class Members repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

188. Commercial Defendants' uniform denial of coverage constitutes bad faith under La. Rev. Stat. Ann. § 22:658, 658.2, and1220, La. Civ. Code Ann. art. 1997, and Louisiana law.

189. Pursuant to La. Rev. Stat. Ann § 22:1220(A), Commercial Defendants owe the respective Commercial Class Members a "duty of good faith and fair dealing" as well as a duty to "adjust claims fairly and promptly and to make a reasonable effort to settle claims" with Commercial Class Members.

190. La. Rev. Stat. Ann § 22:1220(B) prohibits Commercial Defendants from, *inter alia*, "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue" and "[f]ailing to pay the amount of any claim . . .when such failure is arbitrary, capricious or without probable cause."

191. Commercial Defendants have misrepresented the coverage afforded by the All-Risk policy provisions by wrongfully and without a legitimate basis seeking to have the "flood" exclusions given a broad reading in an effort to disallow coverage for the damages arising from Hurricane Katrina, and in other ways.

192. Commercial Defendants have failed to follow Louisiana's long-standing efficient proximate cause doctrine and has instead adopted an industry-wide approach to denying valid claims for inappropriate reasons without probable cause.

193. Specifically, Commercial Defendants have failed to provide coverage for the Commercial Class Members' losses and, instead, has attempted to equate the efficient proximate

cause of windstorm and/or the negligent design, engineering, construction, operation, maintenance and/or repair of the levees in Greater New Orleans area which cause the Commercial Class Members' losses with "flooding" in an effort to exclude coverage and/or third party negligence.

194. Commercial Defendants also have wrongfully denied coverage for claims by equating "storm surge" with "flood," thereby improperly expanding the "flood" exclusion and defeating the reasonable expectation of Louisiana's commercial entities and organizations who are policyholders, including Commercial Class Members.

195. As such, Commercial Defendants have breached known duties through a motive of self interest and/or ill will without having a reasonable basis to deny these claims, instead denying claims in an arbitrary and capricious manner and without probable cause.

196. Moreover, pursuant to a recent enactment of the Legislature of Louisiana, an insurance company acts in bad faith when it fails "to pay claims pursuant to R.S. 22:658.2 [and] such failure is arbitrary, capricious, or without probable cause." La. Rev. Stat. Ann. § 22:1220(A).

197. In directing their adjusters to consider only nearby waterlines and to ignore all other evidence in determining whether Commercial Defendants' losses are covered under the All Risk policies, Commercial Defendants violated La. Rev. Stat. Ann § 658.2.A(1), which provides that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."

198. By engaging in all of the above conduct, Commercial Defendants have engaged in bad faith conduct in violation of La. Rev. Stat. Ann. § 22:658, 658.2, and 1220, La. Civ. Code Ann. art. 1997, and Louisiana law.

36

199. **WHEREFORE,** the Commercial Class Members demand a trial by jury on all issues so triable, judgment against Commercial Defendants, respectively, for all compensatory damages including all amounts due under its policies, other compensatory damages, plus interest on that amount, costs of suit, attorneys' fees incurred in pursuing payment of the loss, consequential damages, punitive damages, and such other relief deemed just and proper by the Court.

Respectfully submitted this 15th day of March, 2007,

INSURANCE PLAINTIFFS SUB-GROUP
LITIGATION COMMITTEE


BY: _____
Calvin C. Fayard, Jr. (La. Bar No. 5486)
LIAISON COUNSEL – INSURANCE PSLC
calvinfayard@fayardlaw.com
FAYARD AND HONEYCUTT, APLC
519 Florida Avenue, SW
Denham Springs, LA 70726
Ph: (225) 664-4193
Fax: (225) 664-6925

FOR THE INSURANCE PLAINTIFFS
  SUB-GROUP LITIGATION COMMITTEE

John N. Ellison, Esq.
jellison@andersonkill.com
ANDERSON KILL & OLICK, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  19103
Ph: (215) 568-4202
Fax: (215) 568-4375
*Admitted Pro Hac Vice*

AND

James M. Garner (La. Bar No. #19589)
JGarner@SHERGARNER.com
Sher, Garner, Cahill, Richter,
  Klein, & Hilbert, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112
Phone:  504-299-2100
Fax:    504-299-2300

AND

Joseph J. McKernan, (La. Bar No. 10027)
jemckernan@mckernanlawfirm.com
MCKERNAN LAW FIRM
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Ph: (225) 926-1234
Fax: (225) 926-1202

AND

Drew A. Ranier (La. Bar No. 8320)
dranier@rgelaw.com
RANIER, GAYLE and ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
Ph: (337) 494-7171
Fax: (337) 494-7218

AND ON BEHALF OF

Joseph J. Bruno (La. Bar No. 3604)
jbruno@brunobrunolaw.com
BRUNO & BRUNO, L.L.P.
855 Baronne Street
New Orleans, LA 70113
Ph:  (504) 525-1335
Fax:  (504) 561-6775
PLAINTIFFS' LIAISON COUNSEL