UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES * | CIVIL ACTION |
| CONSOLIDATED LITIGATION * | |
| * | NUMBER 05-4182 |
| * | |
| * | SECTION "K" (2) |
| LEVEE CASES * | |
| PERTAINS TO: 06-5131 (Bourgeois) * | JUDGE DUVAL |
| and 06-5132 (Ferdinand) * | |
| * | MAGISTRATE WILKINSON |
| * * * * * * * * * * * * * * * * * * * * * | |

REPLY OF THE PUBLIC BELT RAILROAD
COMMISSION FOR THE CITY OF NEW ORLEANS IN
SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(b)(6)

I.   INTRODUCTION

In their "Memorandum in Opposition to the F.R.C.P. 12(b)(6) Motion to Dismiss filed by Public Belt Railroad" (hereafter "Plaintiffs' Opposition" or "Opposition"), Document No. 3385, the plaintiffs ignore the Public Belt's major argument – that the Public Belt has no duty to protect the plaintiffs, or anyone, from flooding.

Instead, the Bourgeois/Ferdinand plaintiffs argue that (unspecified) actions of the Public Belt in connection with the September 11, 2004 train derailment were the "proximate cause" of the plaintiffs' flood damage from Katrina. Opposition, p. 2. Plaintiffs make a completely unsupported argument that the adoption of comparative fault by the 1996 revision to Civil Code Articles 2323 and 2324 abolished the doctrine of intervening and superseding cause in Louisiana. See Plaintiffs' Opposition, p. 2: "As to failure of the Orleans Levee District to repair the gate being the intervening and superseding cause, the doctrine was virtually swept away by adoption of comparative fault." Footnote omitted.

The Plaintiffs also argue that federal preemption does not appear on the face of the Plaintiffs' Complaint, but is rather an affirmative defense and does not provide the basis for a motion to dismiss.

## II. ARGUMENT

### A. There are no Factual Allegations of Negligence or Other Fault on the Part of the Public Belt.

It is important to note that the Bourgeois/Ferdinand Complaints do not contain any allegations of negligence or other fault on the part of the Public Belt in causing the alleged September 11, 2004 train derailment. The plaintiffs state: "The mover, Public Belt, neglects to mention that it is plead [sic] that the locomotives and railcars were on tracks owned by Public Belt." Opposition, p. 2.[1] Thereafter, the plaintiffs state:

> The allegations in the complaint are sufficient to state a claim against Public Belt. It owned the tracts [sic], and the train and cars passed over its tracts [sic] when the gate was damaged, which is the alleged cause of the flooding in the neighborhood, flooding the gate that [sic] was put there to arrest. *Id.*, at p. 3.

The mere ownership of railroad tracks on which a derailment occurred is not sufficient to render the owner liable for the derailment. The plaintiffs have not alleged that the condition of the tracks caused or contributed to the derailment; they have not alleged that the tracks were improperly designed or constructed; nor have they alleged that the Public Belt failed to properly maintain the tracks. If one accepts as true the allegations of the plaintiffs – that the Public Belt owned the tracks on which the derailment occurred – those facts are insufficient to support a finding that the Public Belt is liable for damages resulting from the derailment.

Thus, the plaintiffs have failed to state a claim pursuant to which relief may be granted. That presents the issue of whether the plaintiffs should be given an opportunity to amend their complaint to state a claim. Because the Public Belt had no duty to repair the floodgate, and has no duty to protect the plaintiffs, or anyone, from flooding, granting the plaintiffs leave to amend would be futile. See, cases cited at p. 4 of the Public Belt's Original Memorandum.

---

[1] In truth, the Public Belt did note that the plaintiffs made that allegation. Public Belt's Memorandum In Support of Motion to Dismiss (the Public Belt's "Original Memorandum"), Doc. No. 2938-2, p. 2.

Significantly, the plaintiffs do not seek authority to amend their Complaint, and they did not respond to the Public Belt's argument that amendment under these circumstances would be futile. Instead, the plaintiffs imply, but do not explicitly state, that they are entitled to discovery to assist them in pleading a sufficient complaint. The plaintiffs state: "No Rule 26 conference has been held and there has been no Rule 26(a)(1) exchange". Opposition, p. 3.

However, it is well established that a plaintiff is not entitled to discovery unless and until he pleads a complaint that is sufficient to state a claim. See, *e.g., Landry v. Airline Pilots Association*, 901 F.2d 404, 435 (5th Cir. 1990) (Defendants "correctly stated that no discovery was needed to resolve the Motions to Dismiss Under F.R.Civ. P. 12(b)(6). Such motions are decided on the face of the complaint.").

Here, the Court has determined that there is to be no discovery and no disclosures involving the Railroad Defendants (a term defined to include the Public Belt) "unless or until the Court enters an order denying the dispositive motions that the Railroad Group Defendants have filed or will file on or before March 14, 2007." Case Management Order No. 4, Doc. No. 3299, p. 23.

Thus, before they become entitled to discovery from the Public Belt, the Bourgeois/Ferdinand plaintiffs must state a claim pursuant to which relief may be granted. Their Complaints do not state a claim.

  **B. Because the Public Belt Has No Duty to Protect Plaintiffs From Flooding, and No Duty to Construct, Repair or Maintain Flood Control Systems, The Motion to Dismiss Is Due to Be Granted.**

The Bourgeois/Ferdinand plaintiffs concede that the Public Belt had no duty to repair the floodgate. The plaintiffs state: "As to the cause of loss asserted against Public Belt, Plaintiffs' losses derive from the damage to the gate, not the failure to repair it." Opposition, p. 2. "Plaintiffs do not claim that Public Belt failed to repair the gate." *Id.*, at p. 4.

In order to recover damages, a plaintiff must allege and prove all four requisites of a negligence claim: (1) the conduct in question was a cause in fact of the plaintiff's harm, (2) the defendant owed a duty of care to the plaintiff, (3) the requisite duty was breached by the defendant, and (4) the risk of harm was within the scope of the duty

breached. *Lazard v. Foti*, 2002-2888 (La. 10/12/03), 859 So.2d 656, 659. Because the Public Belt has no duty to protect the public from flooding, or to construct, maintain or repair flood control structures, including the floodgate at issue, the plaintiffs fail to state a claim upon which relief may be granted.

As a limited purpose political subdivision of the state, the Public Belt has been granted authority by the legislature pursuant to La. R.S. 33:4530(C) only to control, operate, manage and develop a public belt railroad system, and has no powers or authority with respect to flood control. See, pp. 5 – 9 of the Public Belt's Memorandum In Support of Motion to Dismiss, Doc. No. 2938-2. In *Safford v. Bayou Lafourche Fresh Water District*, 03-0700 (La. App. 1st Cir. 2/23/04), 872 So.2d 1127, the Court of Appeal held that the Bayou Lafourche Water District (which, like the Public Belt, had not been delegated any of the State's police power to protect citizens from damage by flooding) had no duty to the plaintiff whose riparian property along Bayou Lafourche had been damaged by flooding.

Thus, the *Safford* Court concluded that even if the Water District was negligent, and even if its negligence resulted in damage to Mr. Safford's property, the Water District was not liable for those damages, because, like the Public Belt in the instant case, the Water District lacked any duty or any authority with respect to flood control.

The *Safford* case is discussed in some detail at p. 8 – 9 of the Public Belt's Memorandum in Support of Motion to Dismiss. In their Opposition, the plaintiffs simply ignored the *Safford* case, and ignored the Public Belt's entire argument concerning the duty/risk analysis. The *Safford* case compels the dismissal of plaintiffs' claims.

In Louisiana the existence of a duty and its scope are questions of law. *Dupre v. Chevron U.S.A., Inc.*, 20 F. 3d 154, 159 (5th Cir. 1994). Because the Public Belt has no duty or authority to protect the Plaintiffs from flooding, the pending motion to dismiss is due to be granted.

### C. The Train Derailment Was Not the Proximate Cause of the Plaintiffs' Flood Damage.

The plaintiffs contend that their damages were proximately caused by the damage to the Floodgate. Opposition, p. 5, citing Paragraph 41 of the Bourgeois Complaint.[2] The plaintiffs' allegation that the train derailment caused their damages is a mere legal conclusion. Conclusory allegations masquerading as factual conclusions will not defeat a motion to dismiss. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). The Court must examine the facts alleged to determine if the December 11, 2004 train derailment was the legal, or proximate, cause of the plaintiffs' flooding.

Cause-in-fact is a factual issue, but legal cause, or proximate cause, is a purely legal question. *Todd v. State*, 96-3090 (La. 9/9/97), 699 So.2d 35, 39. Thus, if the Court finds that the Levee Board's failure to timely repair Floodgate W-30 was an intervening cause which produced the plaintiffs' flooding, the Court may determine, as a matter of law, that the September 11, 2004 train derailment was too remote to be a proximate, or legal, cause of the flooding.

At pp. 5 – 8 of their Opposition, the Plaintiffs make a rather odd argument that the adoption of comparative fault by the 1996 revision to Civil Code Articles 2323 and 2324 abolished the doctrine of intervening and superceding cause. In support of that argument, the plaintiffs cite many out of state authorities, but only one decision applying Louisiana law. That case is *Arcadian Corp. v. Olin Corp.*, 01-1060 (La. App. 3 Cir. 5/8/02), 824 So.2d 396. Plaintiffs cite and quote from that case (Opposition, pp. 5 – 6), and assert that the decision supports their argument that superceding and intervening cause "was virtually abandoned upon adoption of comparative fault." Plaintiffs' Opposition, p. 5.

**However, the plaintiffs' quotation from the *Arcadian Corporation* decision is actually from Judge Saunder's dissent in that case! The actual holding in that case <u>approved</u> the District Court's use of jury instructions on intervening and superseding cause.** The Court stated:

---

[2] That assertion ignores the Plaintiffs' requirement for alleging, and proving, all four requisites of a negligence claim. *Lazard v. Foti, supra.* The lack of any duty by the Public Belt to prevent flooding defeats the Plaintiffs' claim, as previously explained. Moreover, as previously noted, the plaintiffs have not alleged that the Public Belt caused the train derailment.

> Whether Accadian's negligence was an intervening cause of its own damages was an issue before the jury; thus, the jury charges pertaining to intervening cause were properly included in the trial court's instructions to the jury.

*Id.*, 824 So.2d at 402-03. See also *Oliveaux v. St. Francis Medical Center*, 39,147 (La. App. 2 Cir. 12/15/04), 889 So.2d 1264, where the Court approved that the jury charge under attack therein, and noted:

> The court's charge tracks the model charge in *Johnson, supra*, [Civil Jury Instructions, 18 La. Civ. L. Treatise], § 3.25, and was explicitly approved in *Arcadian Corp. v. Olin Corp.*, 2001-1060 (La. App. 3 Cir. 5/8/02), 824 So.2d 396, *writ denied*, 2002-1930 (La. 10/25/02), 827 So.2d 1174. This charge fairly and reasonably identified the issue of superseding cause and provided correct principles of law for the jury's consideration. *Smart v. Kansas City Southern*, [36,404 (La. App. 2 Cir. 11/6/02), 830 So.2d 581], *supra*. *Id.* at 1275.

There is no support for the plaintiffs' contention that the adoption of comparative fault in Louisiana caused the demise of the doctrine of intervening and superseding cause.

In *Sutton v. Duplessis*, 584 So.2d 362 (La. App. 4th Cir. 1992), the Court defined legal, or proximate, cause as "any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred." *Id.* at 365; citations omitted. The *Sutton* Court stated that when an accident results from two negligent acts, "one more remote and one an intervening cause, the presence of the intervening cause prevents a finding of liability on the one responsible for the more remote cause." *Id.* at 365-66; citations omitted.

In *Sutton*, the Court of Appeal reversed a trial court judgment which found a mother to be at fault when her six year old son ran into the street and was struck by a car, because she was late in picking him up from school after classes ended. *Id.* at 364. The Court found there was factual causation – the child would not have been injured if his mother had been on time – but the mother's negligence did not constitute the <u>legal</u>, or proximate, cause of the child's injuries. *Id.* at 365. The school board's negligence superceded the mother's negligence in not picking up her child on time. *Id.* at 365-66.

The Court found the school board violated its duty of dealing with the foreseeable possibility that parents would show up late by taking action to prevent children from leaving school unsupervised. *Id.*

Similarly, in the instant case, the negligence of the Board of Commissioners of the Orleans Levee District (the "Levee Board"), in not replacing or repairing the damaged floodgate during the eleven month interval between the time the floodgate was damaged and the arrival of Hurricane Katrina, superceded any alleged negligence of any railroad in damaging the floodgate. Maintaining and repairing the floodgate is within the scope of duty of the Levee Board, <u>not</u> that of the Public Belt.[3] Just as it was foreseeable by the School Board that parents might be late in picking up their children from school, it was certainly foreseeable by the Levee Board that traffic through roadways and railroads adjacent to the floodgates will damage the floodgates.

In *Graham v. Amoco Oil Co.*, 21 F.3d 643 (5th Cir. 1994), the Fifth Circuit, relying upon *Sutton v. Duplessis*, found that, even if Amoco was negligent in delivering a large load of casing pipe to an oil platform without notifying the contractor in advance, the contractor's negligence, in unloading the casing and in supervising the plaintiff, superceded any negligence of Amoco in delivering the casing. *Id.* at 649. The Court also found the delivery to be "too remote" to constitute the legal cause of the plaintiff's injury. *Id.*

In *Brow v. Allstate Indemnity Co.*, 99-2319 (La. App. 1st Cir. 11/3/00), 771 So.2d 268, the plaintiff alleged that the Louisiana Department of Transportation and Development ("DOTD") was among those at fault for his injuries in an automobile accident, alleging that DOTD failed to post any "wrong way/do not enter" signs at a highway intersection. The defendant Cummings entered the wrong lane of traffic and collided head-on with the vehicle driven by the plaintiffs. *Id.* at 273-74. The Court found that DOTD's action was a cause-in-fact of the collision, that Cummings would not have collided with the plaintiffs' vehicle if he had not entered the wrong lane of traffic. *Id.* at 273. But Cummings had traveled in the wrong lane for approximately 4.3 miles before the collision with plaintiff's vehicle, during which time eight or nine ongoing

---

3   See Plaintiffs' opposition, p. 4: "Plaintiffs do not claim that Public Belt failed to repair the gate."

vehicles were forced off the highway to avoid Cummings' vehicle, and others attempted to alert Cummings by flashing their headlights and blowing their horns. *Id.* at 274.

The Court stated that the "wreck was the result of the events that had intervened between Cummings' entrance to Highway 61 and the scene of the accident and was not legally caused by DOTD." *Id.* at 274. The Court noted:

> Whether phrased in terms of scope of duty or legal cause or proximate cause, it can be useful to consider whether too much else has intervened – time, space, people, and bizarreness.

*Id.*; internal citation omitted.

Indeed, in *Lazard v. Foti*, *supra*, the Louisiana Supreme Court held that the defendant Sheriff was not liable for the death of a juvenile detainee who was improperly held in an adult detention facility, improperly released without adult supervision (he should have been released to his parents' custody), and then killed by the criminal act of a third party some twelve hours after his release.

The Court noted that a "duty owed by the sheriff does not render him liable for all consequences spiraling outward until the end of time." *Id.* 859 So.2d. at 662; internal citation omitted.

In the instant action, any negligence of the Public Belt which resulted in damage to the floodgate on September 11, 2004, was superceded by the intervening negligence of the Levee Board in not replacing or repairing the floodgate during the eleven months before Hurricane Katrina struck. The negligence of the Public Belt, if any, in causing the September 11, 2004 train derailment does not render the Public Belt liable for all consequences spiraling outward until the end of time.

The negligence of the Levee Board in not replacing the damaged floodgate during the eleven month interval between the train derailment and the arrival of Hurricane Katrina was an intervening and superseding cause of the plaintiffs' flood damage, which prevents any finding of liability against the Public Belt for allegedly causing the train derailment. The train derailment is too remote from the plaintiffs' flood damage to be the proximate cause of that damage.

The September 11, 2004 train derailment was not the legal cause of the Plaintiffs' flood damages from Hurricane Katrina. The Plaintiffs have no ownership interest, or

other interest, in the floodgate that was allegedly damaged by the derailment. The plaintiffs' damages were not caused by a train derailment; rather, the plaintiffs' damages resulted from a flood.

    **D.    Preemption of the Plaintiffs' Claims Pursuant to the Federal Rail Safety Act.**

The Federal Rail Safety Act ("FRSA") establishes a federal regulatory scheme designed to mandate uniform railroad regulations. It contains a clearly expressed intent on the part of Congress that this regulatory regime be exclusive, and that it preempt state law. FRSA, 49 U.S.C. § 20106 ("Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.") The Supreme Court has held that FRSA preempts state law claims where "the federal regulations substantially subsume the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993); *see also Peters v. Union Pac. R.R. Co.*, 80 F.3d 357, 262 (8th Cir. 1996) ("Congress has expressly preempted state laws affecting railroad safety where the Secretary of Transportation has promulgated regulations.").

In those spheres of railroad safety for which Congress has authorized the Department of Transportation to issue regulations mandating specific standards directed at railroad safety, and concerning which the agency in fact has issued such controlling regulations, there remains no common law claim. Thus, for example, a plaintiff's state law claim that a railroad did not properly maintain its tracks is completely preempted; DOT has exclusive jurisdiction to regulate and determine such issues. See *Lundeen v. Canadian Pac. Ry. Co.*, 447 F. 3d 606, 614 (8th Cir. 2006) ("It is clear the [Federal Railroad Administration] regulations are intended to prevent negligent track inspection and there is no indication the FRA meant to leave open a state law cause of action.") Each railroad safety claim must be assessed individually to determine whether the Secretary of Transportation has directly regulated in that area to ensure uniform safety policies and standards.

As previously noted, the *Bourgeois/Ferdinand* Plaintiffs make <u>no</u> allegations of negligence or other fault against the Public Belt. Thus, there are no specific contentions of railroad safety violations against the Public Belt.

The plaintiffs have stated no claims against the Public Belt; thus, there are no claims subject to preemption. Rather, these plaintiffs simply fail to state a claim against the Public Belt.

## CONCLUSION

The Public Belt has no duty to the plaintiffs, or to anyone, to protect them from flooding, nor does it have any duty to maintain or repair flood control structures.

The September 11, 2004 train derailment was not the legal, or proximate, cause of the plaintiffs' flood damage from Hurricane Katrina.

In addition, the plaintiffs' complaints are devoid of any allegations of negligence or other fault on the part of the Public Belt.

Thus, the plaintiffs' claims against the Public Belt are due to be dismissed, for failure to state a claim upon which relief may be granted.

Respectfully submitted,

HAMILTON, BROWN & BABST

*/s/ Galen S. Brown*
GALEN S. BROWN, T.A. (#3556)
KAREN E. MILNER (#8499)
601 POYDRAS STREET, SUITE 2750
NEW ORLEANS, LOUISIANA 70130
TELEPHONE: (504) 566-1805
FAX: (504) 566-1569
E-MAIL: gbrown@hamiltonfirm.net

Attorneys for Defendant, Public Belt Railroad Commission for the City of New Orleans

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this 20th day of March, 2007.

*Galen S. Brown*
**GALEN S. BROWN**