No. **06-00056**

E.D. La. Docket No. 05-4182

U.S. COURT OF APPEALS
FILED

DEC 08 2006

CHARLES R. FULBRUGE III
CLERK

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

IN RE KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION
PERTAINS TO INSURANCE

*Chehardy*, C.A. Nos. 06-1672, 06-1673, 06-1674

GLADYS CHEHARDY, et al,
Respondent-Plaintiffs,

v.

STATE FARM FIRE & CAS. CO., et al.,
Petitioners-Defendants

U.S. COURT OF APPEALS
RECEIVED
DEC 08 2006
NEW ORLEANS, LA.

On Appeal From The United States District Court
For The Eastern District Of Louisiana

## PETITION OF
## LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION
## FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

JOHN W. WATERS, JR. T.A. (#13258)
DAVID E. WALLE (#13199)
GREGORY J. McDONALD (#1933)
BIENVENU, FOSTER, RYAN & O'BANNON
1010 Common Street, Suite 2200
New Orleans, LA 70112-2401
Telephone:    (504) 310-1500
Facsimile:    (504) 310-1501
*Attorneys for Petitioner-Defendant,*
*Louisiana Citizens Property Insurance Corporation*

No. _____

E.D. La. Docket No. 05-4182

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

IN RE KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION
PERTAINS TO INSURANCE

*Chehardy*, C.A. Nos. 06-1672, 06-1673, 06-1674

GLADYS CHEHARDY, et al,
Respondent-Plaintiffs,

v.

STATE FARM FIRE & CAS. CO., et al.,
Petitioners-Defendants

On Appeal From The United States District Court

For The Eastern District Of Louisiana

## PETITION OF
## LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION
## FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

JOHN W. WATERS, JR. T.A. (#13258)
DAVID E. WALLE (#13199)
GREGORY J. McDONALD (#1933)
BIENVENU, FOSTER, RYAN & O'BANNON
1010 Common Street, Suite 2200
New Orleans, LA 70112-2401
Telephone:    (504) 310-1500
Facsimile:    (504) 310-1501
*Attorneys for Petitioner-Defendant,*
*Louisiana Citizens Property Insurance Corporation*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**A.    Plaintiffs:**

1.    Gladys Chehardy

2.    Daniel Fontanez

3.    Jacquelyn Fontanez

4.    Larry Forster

5.    Glenda Forster

6.    Kenneth Maier

7.    Judith Maier

8.    Randy Gervais

9.    Lori Gervais

10.   Andre Mauberret

11.   Marlin Mauberret

12.   Debbie Strawn

13.   Dave Strawn

14.   Stephanie Boyd

15.   Brad Boyd

16.   New Orleans Flooring Supply, Inc.

-i-

17. Shawn Burst

18. Angelina Burst

19. Susan Brown (incorrectly identified as Patricia Brown in Amended Complaint)

20. Marie Fatheree

21. Katrina Daniels

22. Lionel Jones

23. Edna Jones

24. Karen Lewis

25. Shane Sylvester

26. Austra Zapata

27. Sabrina Perkins

28. Eldridge Pollard

29. Michael Peterson

30. Wendell Glation

31. Mack Barham

**B.    Counsel for Plaintiffs:**

32. Joseph M. Bruno

33. David S. Scalia

34. Bruno & Bruno

35. Joseph J. McKernan

36. Gordon J. McKernan

37. Chet Boudreaux

38. McKernan Law Firm

39. Calvin C. Fayard, Jr.

40. Fayard & Honeycutt

41. John N. Ellison

42. Darin McMullen

43. Anderson Kill & Olick, PC

44. Drew Ranier

45. N. Frank Elliot, III

46. Ranier, Gayle & Elliot, L.L.C.

**C.    Defendants, Defendants' Counsel, and Related Entities:**

47. Great Northern Insurance Company

48. Steven W. Usdin

49. Edward R. Wicker, Jr.

50. Barrasso Usdin Kupperman Freeman & Sarver, L.L.C.

51. State Farm Fire & Casualty Company

52. Wayne J. Lee

53. Stephen G. Bullock

54. Sarah House Barcellona

55. Stone, Pigman, Walther, Wittmann, LLC

56. Allstate Insurance Company

57. Allstate Indemnity Company

58. The Allstate Corporation

59.    Encompass Insurance Company

60.    Encompass Insurance Company of America

61.    Encompass Indemnity Company

62.    Liberty Mutual Fire Insurance Company

63.    Judy Y. Barrasso

64.    H. Minor Pipes, III

65.    Lafayette Insurance Company

66.    Howard Bruce Kaplan

67.    Bernard, Cassisa, Elliot & Davis

68.    The American Insurance Company

69.    Kelly Cambre Bogart

70.    Nicole McDaniel Bowen

71.    Jamie Michele Cambre

72.    Kevin R. Derham

73.    Lawrence J. Duplass

74.    Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock

75.    AAA Homeowners Auto Club Family Insurance Company

76.    Alan J. Yacoubian

77.    Neal J. Favret

78.    Johnson, Johnson, Barrios & Yacoubian

79.    Louisiana Citizens Property Insurance Corporation

80.    John William Waters, Jr.

81.     Gregory J. McDonald

82.     Bienvenu, Foster, Ryan & O'Bannon

83.     Traveler's Property Casualty Company of America

84.     Stephen E. Goldman

85.     Wystan M. Ackerman

86.     Robinson & Cole, L.L.P.

87.     Ralph Shelton Hubbard, III

88.     Seth Andrew Schmeekle

89.     Joseph Pierre Guichet

90.     Tina L. Garmon

91.     Lugenbuhl, Wheaton, Peck, Rankin & Hubbard

92.     Lexington Insurance Company

93.     Robert I. Siegel

94.     John E. Baay, III

95.     Daniel Gibbons Rauh

96.     Geiger, LaBorde & Laperouse, L.L.C.

97.     Richard Doren

98.     Anthony Edelstein

99.     Daniel W. Nelson

100.    Gibson, Dunn & Crutcher

101.    AEGIS Security Insurance Company

102.    Maura Zivalich Pelleteri

103.   Andrea A. Mittleider

104.   Amy M. Seltzer

105.   Krebs, Farley & Pelleteri, L.L.C.

106.   Hanover Insurance Company

107.   Paul E.B. Glad

108.   David R. Simonton

109.   Andrew R. Greene

110.   Sonnenschein, Nath & Rosenthal LLP

111.   Kristopher T. Wilson

112.   LaDonna Grey Wilson

**D.**   **District Court Judge Rendering Decision Below**

113.   Honorable Stanwood R. Duval, Jr.

      U.S. District Court for the Eastern District of Louisiana

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ -ix-

OTHER AUTHORITIES ................................................................... -xi-

INTRODUCTION ............................................................................ -1-

I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ....................... -4-

        A.      The Plaintiffs' Claims ................................................ -4-

        B.      LCPIC's Policy Language in Attached Policies ............................. -5-

                1.      The Water Damage Exclusion ............................................ -5-

        C.      District Court Proceedings ............................................... -6-

II.     ISSUE ON APPEAL ................................................................... -7-

III.    RELIEF SOUGHT ...................................................................... -7-

IV.     REASONS WHY THIS APPEAL SHOULD BE ALLOWED ................................. -7-

        A.      Analysis of District Court Opinion ...................................... -8-

                1.      The District Court Erred in Its Analysis of the Enforceability of
                        LCPIC's Water Damage Exclusion .................................... -9-

                        (a)     There Is Nothing Ambiguous about the Term "Flood" ........ -10-

                        (b)     Courts Regularly Enforce Water Damage Exclusions Like
                                LCPIC's As Valid and Unambiguous .................................. -11-

                        ( c)    Congress Has Made No Distinction Between "Natural" or
                                "Man-made" Floods in Connection with the National Flood
                                Insurance Program ............................................ -14-

                        (d)     The District Court Should Have Enforced the Clear and
                                Unambiguous Flood Exclusion.   Instead, the Court
                                Misapplied Rules of Construction to Create an Ambiguity
                                That Did Not Otherwise Exist ............................... -15-

B.    This Case Is Appropriate for Interlocutory Appeal Pursuant to Section 1292(b) .......................................................................................... -17-

C.    Whether the Exclusionary Language in LCPIC's Homeowner Policies Is Enforceable Is a Controlling Question of Law ........................................... -18-

D.    There is A Substantial Ground for Difference of Opinion Concerning the District Court's Ruling that the LCPIC Exclusionary Language is Ambiguous ..................................................................................... -20-

E.    Interlocutory Appeal Will Materially Advance the Ultimate Termination of This Litigation ........................................................................... -22-

CONCLUSION ...................................................................................... -23-

PROOF OF SERVICE .............................................................................. -24-

## TABLE OF AUTHORITIES

*Aetna Ins. Co. v. United States*,
    628 F.2d 1201 (9th Cir. 8/14/80),
    *cert. denied*, 450 U.S. 1025 (1981) ................................................................... -11-

*Allied Structural Steel Co. v. Spannaus*,
    438 U.S. 234 (U.S.Minn., 6/28/78) .................................................................. -17-

*American Marine Underwriters, Inc. v. Holloway*,
    826 F.2d 1454 (5th Cir. 9/18/87) .................................................................... -18-

*Atlantic City Elec. Co. v. General Elec. Co.*,
    207 F.Supp. 613 (S.D.N.Y. 7/11/62),
    *aff'd* 312 F.2d 236 (2nd Cir. NY 12/31/62) ...................................................... -20-

*Bartlett v. Continental Divide Ins. Co.*,
    697 P.2d 412, 413 (Colo.App. 11/23/84),
    *aff'd,* 730 P.2d 308 (Col. 12/8/86) ................................... -11-, -13-, -21-

*BMW of North America, Inc. v. Gore*,
    517 U.S. 559 (U.S. Ala., 5/20/96) ..................................................................... -17-

*Board of Regents of State Colleges v. Roth*,
    408 U.S. 564 (U.S.Wis., 6/29/72) ..................................................................... -17-

*Buente v. Allstate Insurance Co.*,
    422 F.Supp. 2d 690 (S.D. Miss. 3/24/06) ........................................................ -21-

*Buente v. Allstate Property & Cas. Ins. Co.*,
    No. 1:05-CV-712, 2006 WL 980784 (S.D.Miss., 4/12/06) .......... -5-, -12-, -13-

*Dobson v. Allstate Ins. Co.*,
    06-0252, 06-1097, 06-1064, 06-1255, 06-1734, 06-1585,
    2006 WL 2078423 (E.D. La. 7/21/06) ............................................. -5-, -12-, -21-

*E.B. Metal & Rubber Industries, Inc. v. Federal Ins. Co.*,
    444 N.Y.S.2d 321 (N.Y.A.D. 3 Dept., 10/29/81) ................................. -13-, -21-

***Eaker v. State Farm Fire & Cas. Ins. Co.,***
     216 F.Supp.2d 606 (S.D. Miss. 9/17/01) ......................................................... -12-

***Ex parte Tokio Marine & Fire Ins. Co.,***
     322 F.2d 113 (5th Cir. 8/29/63) ........................................................... -8-

***Gopher Oil Co. v. Union Oil Co.,***
     757 F.Supp. 998 (D. Minn. 1991) ...................................................... -22-

***Hardware Dealers Mut. Ins. Co. v. Berglund,***
     393 S.W.2d 309 (Tex. 6/23/65) ........................................................ -12-

***In re Cement Antitrust Litigation,***
     673 F.2d 1020, 1026 (9th Cir. 1/27/82) ..................................................... -18-, -19-

***Industrial Enclosure Corp. v. Northern Ins. Co. of New York,***
     No. 97-6850, 2000 WL 1029192 (N.D.Ill., 7/26/00) .................................... -13-

***Johnson v. Burken,***
     930 F.2d 1202 (7th Cir. 4/22/91)  ........................................................ -19-

***Kane v. Royal Ins. Co. of America,***
     768 P.2d 678, 681 (Colo. 1/17/89) ........................................................... -11-, -21-

***Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave***
***Achille Lauro in Amministrazione Straordinaria,***
     921 F.2d 21 (2nd Cir. 12/7/90) ........................................................... -19-

***Landgraf v. USI Film Products,***
     511 U.S. 244 (U.S. 4/26/94) ............................................................. -17-

***Paschall v. Kansas City Star Co.,***
     605 F.2d 403 (8th Cir. 1979), *rev'd in part on other grounds,*
     955 F.2d 519 (8th Cir. 1992)) ........................................................... -22-

***Quesada v. Director, Fed. Emergency Mgmt. Agency,***
     577 F.Supp. 695 (S.D. Fla. 12/29/83),
     **aff'd**, 753 F.2d 1011 (11th Cir. 2/22/85) ......................................................... -12-

*Reynolds v. Select Properties, Ltd.*,
    93-1480 (La. 4/11/94), 634 So.2d 1180 ........................................................ -10-

*Riverwood Intern. Corp. v. Employers Ins. of Wausau*,
    420 F.3d 378 (5th Cir. 8/4/05) ............................................................. -10-

*Russell Motor Car Co. v. United States*,
    261 U.S. 514 (U.S. 4/9/23) ................................................................ -16-

*Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc.*,
    86 F.3d 656 (7th Cir. 6/5/96) .............................................................. -18-

*Stidham v. Texas Com'n on Private Sec.*,
    418 F.3d 486 (5th Cir. 7/22/05) ........................................................... -17-

*TNT Speed & Sport Center, Inc. v. American States Ins. Co.*,
    114 F.3d 731 (8th Cir. 5/27/97) .................................................... -13-, -21-

*Travelers Indem. Co. v. Powell Ins. Co.*,
    No. 95-4188, 1996 WL 578030 (E.D. La. 10/4/96) ...................................... -12-

*U.S. v. Woodbury*,
    263 F.2d 784 (9th Cir. 1959) ......................................................... -8-, -18-

*Valley Forge Ins. Co. v. Hicks Thomas Lilienstern, L.L.P.*,
    174 S.W.3d 254 (Tex.App.-Hous. 1 Dist., 12/16/04) .................................... -13-

*Wallis v. Country Mut. Ins. Co.*,
    723 N.E.2d 376 (Ill.App. 2 Dist. 1/4/00),
    *appeal denied*, 731 N.E. 2d 772 (Ill. 5/31/00) ................................................ -11-

*Western Nat. Mut. Ins. Co. v. University of North Dakota*,
    643 N.W.2d 4 (N.D. 4/16/02) ............................................................ -11-

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
    494 F.Supp. 1190 (E.D. Pa. 1980) ....................................................... -22-

## OTHER AUTHORITIES

16 Charles Alan Wright et al., Federal Practice and Procedure 3930,
    at 423 (2d ed. 1996) ................................................................... -19-, -23-

28 U.S.C. §1292(b) ........................................................... -2-, -7-, -17-

42 U.S.C. § 4001, *et seq.* ....................................................... -14-

44 C.F.R. Pt. 61, App. A ........................................................ -14-

La. Civ. Code art. 2047 ........................................................ -10-

La. R.S. 22:1220 ................................................................... -5-

U.S. CONST. ART. I, § 10 ....................................................... -17-

## **INTRODUCTION**

By Order entered on November 27, 2006, the district court held that the standard "water" or "flood" exclusion property insurance policies issued by Louisiana Citizens Property Insurance Corporation ("LCPIC") and other insurers was "ambiguous." See Order entered on November 27, 2006 (Exhibit A). As a result, LCPIC and other insurers face billions of dollars of additional exposure as a result of the damages caused by Hurricanes Katrina and Rita.

The district court certified its Order for interlocutory appeal (Exhibit A, pages 84-85). As the Judge Duval acknowledged, ". . . the potential impact of such a decision on individuals as well as the insurance industry might be considered overwhelming!" (Ex. A at p. 4). That is an understatement. LCPIC is the non-profit corporation created by the Legislature (*LRS 22:1430, et seq.*) to operate residual market insurance programs for the State of Louisiana. This decision will cost the citizens of Louisiana, who pay assessments to cover LCPIC's deficits, hundreds of millions of additional dollars, at least.

LCPIC respectfully seeks permission to file an interlocutory appeal from the Order entered on November 27, 2006, by the Honorable Judge Stanwood R. Duval, Jr. of the United States District Court for the Eastern District of Louisiana, in *Chehardy et al. v. State Farm et al.*, Nos. 06-1672, 06-1673, and 06-1074

-1-

("*Chehardy*"), part of the *In re Katrina Canal Breaches Consolidated Litigation*, No. 05-4182 ("Consolidated Litigation"). Copy of the Order is attached as Exhibit A.

The ruling has far reaching implications, not just for the *Chehardy* class action, but also for the many thousands of individual cases filed against insurance carriers in the aftermath of Hurricane Katrina. The economic consequences flowing from the decision are matters of grave regional and national importance. The immediate review by the federal circuit court is important *inter alia* because similar questions are being raised by cases in other jurisdictions within this circuit as well as in other circuits. Most of these cases in one form or another involve coverage issues and the scope of the exclusions for flood and water damage. The district court recognized this when it certified its Order for interlocutory appeal under 28 U.S.C. §1292(b), stating that: "all orders entered herein involve a controlling question of law as to which there is a substantial ground for a difference of opinion and an immediate appeal from these orders may materially advance the ultimate termination of the litigation." (Ex. A at p. 85.)

There is unquestionably "a substantial ground for a difference of opinion" with respect to the district court's resolution of this issue. For 80 years, courts in Louisiana and around the country have enforced homeowners insurance policy provisions that exclude coverage for losses caused by flood. Courts, commentators, Congress and

-2-

state insurance departments, including the Louisiana Department of Insurance, have publicly recognized that homeowner policies typically do not cover flood damage. However, the full scope of evidence on the historical context of the "water damage" exclusion was not introduced on the Rule 12(b)(6) motions, and the parties and court were constrained to accept well-pled facts as true. The district court failed to limit its decision in light of the procedural context, a 12(b)(6) motion, in which the issues were raised. Notwithstanding the long-standing and well-established precedent, the district court reached the absurd conclusion that "water damage" exclusions distinguished between "natural" floods and "man-made" floods. Neither the LCPIC's policies nor the reported case law recognizes such a distinction. The clear and unambiguous LCPIC exclusion for "water damage", defined to include "flood, surface water, waves, tidal water, overflow of a body of water, . . . water which backs up through sewers or drains . . .", excludes the water damage plaintiffs seek to recover here.

Despite many years of usage of the same policy language excluding "water damage" by "flood" without any finding of ambiguity, including years with some of the worse hurricanes the area has experienced, the district court has now found "flood" to be ambiguous. It did so primarily on general contract interpretation principals and dictionary definitions of "flood". The district court found the term "flood" was somehow so ambiguous that the flood of New Orleans was somehow not

-3-

a "flood" within the meaning of ordinary parlance and the LCPIC policies. The district court essentially re-wrote the terms of homeowners policies issued by LCPIC and several other insurance carriers to create coverage where it does not exist. Further, the court found the plaintiffs' allegations of negligent design, maintenance and construction of the levees was somehow not within the exclusion for negligent design, construction or maintenance.

For the reasons set forth below, this Court should accept the district court's certification and grant LCPIC leave to appeal the district court's ruling.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The Plaintiffs' Claims

*Chehardy* is a putative class action against LCPIC and other insurance carriers seeking coverage under their homeowners policies for water damage they claim to have suffered in the wake of Hurricane Katrina. Plaintiffs contend that the flood and water exclusions in the homeowners policies at issue do not apply to their claims because the water damage they suffered resulted from windstorm, storm surge and/or negligence in the design, maintenance or use of the levee systems in and around the City of New Orleans.[1] (Amended and Restated Complaint, pp. 17-18, Doc. 516.) Plaintiffs sought a declaration that their water damage was covered under their

---

[1] The district court's Order focuses almost exclusively on the plaintiff's allegations regarding levee breaches, rather than "windstorm" or "storm surge."

respective homeowners' policies, and sought damages against the defendant insurers for breach of contract.  Plaintiffs also asserted extra-contractual claims for violation of Louisiana's bad faith statutes, breach of the implied covenant of good faith and fair dealing under La. R.S. 22:1220 and breach of fiduciary duty.  (*Id.* ¶¶ 65-100.)

## B.  LCPIC's Policy Language in Attached Policies

LCPIC moved to dismiss plaintiffs' complaint based on the same exclusion in its two  homeowners policies at issue that unambiguously exclude coverage for flood damage, no matter what the source.  This exclusion is clear, unambiguous, and enforceable, and numerous courts in this Circuit have so held.  *See, e.g.*, ***Buente v. Allstate Property & Cas. Ins. Co.***, No. 1:05-CV-712, 2006 WL 980784 (S.D.Miss., 4/12/06); ***Dobson v. Allstate Ins. Co.***, Nos. 06-0252, 06-1097, 06-1064, 06-1255, 06-1734, 06-1585, 2006 WL 2078423 (E.D. La. 7/21/06).

### 1.  The Water Damage Exclusion

LCPIC's water damage exclusion in the policies attached as Exhibits A and B to the Rule 12(b)(6) motion, plainly excludes the following:

> "We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> **3.   Water Damage**, meaning:

-5-

    **a.**    Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

    **b.**    Water which backs up through sewers or drains or which overflows from a sump; or

    **c.**    Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

    Direct loss by fire, explosion or theft resulting from water damage is covered."

## C.  District Court Proceedings

LCPIC filed a Rule 12(b)(6) motion to dismiss asking the Court to rule that as matter of law the plaintiffs' flood damage was not covered under the two homeowners insurance policies submitted.  Because of the volume of briefing it incorporated and adopted by reference the briefing of the many other insurers filing similar motions.

Reading the LCPIC policies and exclusions as a whole, applying ordinary meaning to the words used, the LCPIC policies do not cover "flood" losses of any kind, natural or man-made.  Further allegations of negligent design or construction are excluded by the "faulty design" exclusion.

Nonetheless, based on a hyper-technical linguistic analysis, and contrary to applicable jurisprudence, the district court held that the flooding of New Orleans as a result of levee breach was somehow not "water damage" or a "flood" within the

-6-

plain meaning of the LCPIC policies because the policies do not "clearly exclude water damage caused by negligent or intentional acts of man." The court likewise refused to enforce the faulty design exclusion. (Ex. A, pp. 74-77.) The district court certified its ruling for immediate appeal pursuant to 28 U.S.C. §1292(b). (*Id.*, pp. 85.)

## II.    ISSUE ON APPEAL

Is flood damage resulting from the breach of the levees in the New Orleans area excluded under the two LCPIC homeowners policies at issue?

## III.   RELIEF SOUGHT

LCPIC respectfully requests that this Court review and reverse the district court's Order and grant LCPIC's motion. Flood damage caused by levee breaches is clearly excluded under the LCPIC homeowners policies, and *Chehardy* should be dismissed in its entirety.

## IV.   REASONS WHY THIS APPEAL SHOULD BE ALLOWED

Under 28 U.S.C. § 1292(b), which governs interlocutory appeals in the federal courts, there are three requirements for certification of an order for immediate appeal: (1) the order involves a controlling question of law; (2) there is a substantial ground for difference of opinion as to that question; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.

Here, the district court found that all three requirements are met with respect to the issues contained in its Order. (Ex. A at p. 85.) The district court's determination in this regard is deserving of "careful consideration," (**U.S. v. Woodbury**, 263 F.2d 784, 786 (9th Cir. 1959)), and this Court historically has "allowed full use of this effective device." **Ex parte Tokio Marine & Fire Ins. Co.**, 322 F.2d 113, 115 (5th Cir. 8/29/63).

This case is an ideal candidate for interlocutory appeal.

## A.    Analysis of District Court Opinion

In ruling on the motions to dismiss filed in the *Consolidated Litigation* cases, the district court framed the threshold issue - - whether there could be two reasonable interpretations of the term "flood" in the insurance policies at issue, one that encompassed flood caused by either natural and so-called "man-made" causes, and one interpretation that was limited solely to natural causes. After examining various definitions of the term "flood" and the law cited by both parties, the district court held that both interpretations were reasonable. (*Id.* at pp. 39-41.) The district court gave scant consideration to a third interpretation its analysis raised - that the term "flood", if ambiguous, could be construed to apply only to so-called "man-made causes." As a result, the court determined that the flood exclusions contained in the vast majority

-8-

of the insurance policies before it were ambiguous and, under Louisiana law, it was constrained to construe them against the insurer and in favor of coverage. (*Id.*)

Based on that conclusion, the district court denied LCPIC's motion to dismiss and held that the policies provided coverage for flood damage caused by negligent acts or omissions in constructing or maintaining the levees, but not for flood damage resulting from a naturally occurring flood. (*Id.* at pp. 75-76.) The district court's analysis is erroneous, far-reaching and in direct conflict with long-standing authority enforcing flood and other policy exclusions. It misapplies rules of construction to create, rather than to resolve ambiguity. It conflicts with what courts, commentators, Congress and state insurance departments (including the Louisiana Department of Insurance) publicly have recognized -- that homeowner policies typically do not cover flood damage.

### 1. The District Court Erred in Its Analysis of the Enforceability of LCPIC's Water Damage Exclusion

The district court held that the LCPIC water damage exclusions, which it believed were the same as "ISO" defendants, are ambiguous as to whether it excludes so-called "man-made" floods (caused by third party negligence or failure of man-made structures) as well as natural phenomenon and held, therefore, that LCPIC's two policies do not exclude coverage for flood or water damage caused by third party negligence such as levee breaches.

-9-

In concluding that the flood of New Orleans after Hurricane Katrina was not a "flood" within the meaning of the homeowner policies, the district court manufactured ambiguity where it does not exist.

### (a)    There Is Nothing Ambiguous about the Term "Flood"

The term "flood" is not specifically defined in LCPIC's homeowner policies and, accordingly, it must be given its plain, ordinary, and generally prevailing meaning. La. Civ. Code art. 2047; *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183; *see also Riverwood Intern. Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 383 (5th Cir. 8/4/05) (undefined term in insurance policy must be given its plain meaning). The district court glossed over the exclusion for "water damage", and merely focused on one component, "flood". The "water damage" exclusion is a more broad exclusion than the district court gave credence to. It is significant, for the use of the exclusion "water damage" evidences the intent that "flood" of any cause were excluded.

The "common and popular meaning" of "flood" is water flowing over normally dry land, without regard for the source or cause of the inundation.[2] Consistent with this definition, courts repeatedly have defined "flood" to mean "a body of water

---

[2] For example, the Oxford English Dictionary defines a "flood" as "an overflow of a large amount of water over dry land," while the American Heritage Dictionary of the English Language [4th Ed.] defines "flood" as "[a]n overflowing of water onto land that is normally dry."

(including moving water) . . . overflowing or inundating land not usually covered, *and no distinction is made between natural and artificial causes*." ***Bartlett v. Continental Divide Ins. Co.***, 697 P.2d 412, 413 (Colo.App. 11/23/84), *aff'd,* 730 P.2d 308 (Col. 12/8/86) (*citing* 36A C.J.S. Flood) (emphasis added).[3] This is in sharp contrast to those cases relied upon by the district court concerning bursting or leakage of pipes or water mains, which do not involve bodies of water or inundation.

> **(b)   Courts Regularly Enforce Water Damage Exclusions Like LCPIC's As Valid and Unambiguous**

Courts routinely enforce water damage exclusions like LCPIC's as valid and unambiguous. The Colorado Supreme Court, in ***Kane v. Royal Ins. Co. of America***, 768 P.2d 678, 681 (Colo. 1/17/89), specifically answered and rejected the attempted distinction between "natural" flood and "man-made" flood in a water damage exclusion. In ***Kane***, a dam failed, and the water damage exclusion was upheld. Recently, Judge Vance in the Eastern District of Louisiana held that Allstate Insurance Company's flood exclusion is "clearly worded" and that the "clear policy language" indicates that flooding caused by hurricanes is excluded. In fact, the court held that

---

[3] *See, e.g.,* ***Aetna Ins. Co. v. United States***, 628 F.2d 1201 (9th Cir. 8/14/80) (partially completed dam collapsed causing "flood"), *cert. denied,* 450 U.S. 1025 (1981); *see* ***Wallis v. Country Mut. Ins. Co.***, 723 N.E.2d 376, 378 (Ill.App. 2 Dist. 1/4/00) ("flood" is water that "escapes from a watercourse in large volumes and flows over adjoining property in no regular channel ending up in an area where it would not normally be expected"; loss occurring when waters overflowed bank and rose into insured's home resulted from "flood" within exclusion of policy), *appeal denied,* 731 N.E.2d 772 (Ill. 5/31/00); ***Western Nat. Mut. Ins. Co. v. University of North Dakota***, 643 N.W.2d 4, 9 (N.D. 4/16/02) (plain meaning of flood in dictionaries is "overflowing of water on an area normally dry").

the policy language was so clear that an insured could not justifiably rely on an agent's alleged representations that the policy covered flood. ***Dobson v. Allstate Ins. Co.***, Nos. 06-0252, 06-1097, 06-1064, 06-1255, 06-1734, 06-1585, 2006 WL 2078423 (E.D. La. 7/21/06).

Other state and federal courts have consistently enforced similar water damage or flood exclusions, and none have held them to be ambiguous.  For example, when Metairie Country Club sought coverage for golf carts damaged by severe flooding in May 1995, Judge Vance denied the claim, holding that the policy's flood exclusion "on its face unequivocally excludes coverage for flood damage to the golf carts". ***Travelers Indem. Co. v. Powell Ins. Co.***, No. 95-4188, 1996 WL 578030, at *3 (E.D. La. 10/4/96).[4]  See also, the district court's decision in ***Buente v. Allstate Property & Cas. Ins. Co.***, No. 1:05-CV-712, 2006 WL 980784, at *1 (S.D.Miss., 4/12/06), which held Allstate's flood exclusion valid and enforceable and applicable to Hurricane

---

[4] See also ***Quesada v. Director, Fed. Emergency Mgmt. Agency***, 577 F.Supp. 695 (S.D. Fla. 12/29/83) (where homeowner policy specifically excluded damage caused by flood and related events, property damage caused by heavy flooding and rains attributable to tropical storm was not covered), *aff'd*, 753 F.2d 1011 (11th Cir. 2/22/85); ***Eaker v. State Farm Fire & Cas. Ins. Co.***, 216 F.Supp.2d 606, 622 (S.D. Miss. 9/17/01) (where plaintiff brought suit under homeowner policy for property damage following Hurricane Georges, court held "water damage" exclusion excluded damages claimed by plaintiff); ***Hardware Dealers Mut. Ins. Co. v. Berglund***, 393 S.W.2d 309, 313-14 (Tex. 6/23/65) (excluding coverage for damage caused by rising water accompanying hurricane).

Katrina's storm surge, observing that the "inundation that occurred during Hurricane Katrina was a flood, as that term is ordinarily understood." [5]

In fact, courts routinely enforce flood exclusions to deny coverage for flood damage caused by negligence or man-made failures. Not one court in over 80 years has held otherwise in a case with remotely similar facts. *See, e.g., TNT Speed & Sport Center, Inc. v. American States Ins. Co.*, 114 F.3d 731 (8th Cir. 5/27/97) (flood exclusion enforced after levee broke because vandal removed sandbags and dirt from levee); *Bartlett*, 697 F.2d 412, *supra* (flood exclusion applied where damage resulted from water released when a dam failed); *E.B. Metal & Rubber Industries, Inc. v. Federal Ins. Co.*, 444 N.Y.S.2d 321, 322 (N.Y.A.D. 3 Dept., 10/29/81) (rejecting argument that a flood exclusion similar to Encompass's did not apply because the flood was caused by a failed dike that broke due to a pre-existing weakness). [6]

---

[5] The court in *Buente* denied Allstate's motion for judgment on the pleadings because the plaintiffs there also sought recovery for loss caused by wind, which is covered. Unlike *Buente*, plaintiffs here only seek coverage for flood damage, which plainly is excluded.

[6] *See also Industrial Enclosure Corp. v. Northern Ins. Co. of New York*, No. 97-6850, 2000 WL 1029192 (N.D.Ill., 7/26/00) (excluding water damage caused by overflow of tributary even though overflow may have been caused by collapse of nearby building). Likewise, in *Bartlett v. Continental Divide Ins. Co.*, 697 P.2d 412, *supra*, the Court was unpersuaded by plaintiffs' argument that the flood exclusion did not apply where the damage resulted from water released when a dam failed. Despite the insureds' effort to contort the word "flood," the court gave the term "its ordinary and customary meaning" and determined that the "cause of the loss was the flood caused by the failure of the dam; and loss by flood was specifically excluded from coverage." *Id.* at 413-14. *See also, Valley Forge Ins. Co. v. Hicks Thomas Lilienstern, L.L.P.*, 174 S.W.3d 254 (Tex.App.-Hous. 1 Dist., 12/16/04) (excluding loss resulting from water flowing through man-made underground structures).

### ( c)   Congress Has Made No Distinction Between "Natural" or "Man-made" Floods in Connection with the National Flood Insurance Program

Because of the nature of flood losses, Congress recognized that it was uneconomic for private insurers to provide flood coverage among their basic coverages, and in 1968, created the National Flood Insurance Program ("NFIP") to fill this void.  *See* 42 U.S.C. § 4001, *et seq.*   Under the NFIP, flood policies are underwritten by and premiums paid to the federal government. 44 C.F.R. Pt. 61, App. A.  It is noteworthy that there is no differentiation between so-called "natural" floods and "man-made" floods in the National Flood Insurance Act (42 U.S.C. § 4001, *et seq.*), the regulations promulgated thereunder, the NFIP Standard Flood Insurance Policy, or the claims practices of FEMA.

Relying on the commonly accepted meaning of the term "flood," FEMA has paid billions in flood claims arising out of the flooding of New Orleans in the aftermath of Hurricane Katrina.  Neither the plaintiffs with flood insurance nor FEMA raised any contention that it was not a "flood" but instead damage caused by third party negligence causing the levee break.  Although the court below was dismissive of arguments regarding the NFIP, the court's ruling necessarily sets up a conflict with the manner in which the industry and the federal government regard the term "flood." At a minimum, the custom and usage regarding "flood" coverage and the availability

-14-

and scope of coverage under the NFIP should have been considered in resolving any

ambiguity before resorting to the rule of *ejusdem generis* or *noscitur a sociis*.

> **(d)    The District Court Should Have Enforced the Clear and Unambiguous Flood Exclusion.   Instead, the Court Misapplied Rules of Construction to Create an Ambiguity That Did Not Otherwise Exist**

LCPIC's policies use the term "flood" as part of the "water damage" exclusion

without any limitation regarding the type or source of the flood, consistent with the

plain and commonly-understood definition of the word.  Plaintiffs' damage here was

caused by massive amounts of water flooding or inundating dry land.  There is no

question that this was a "flood" within the meaning of LCPIC's "water damage"

exclusion.  And there is no "ambiguity" whatsoever.

The district court held the "water damage" exclusion is ambiguous and subject

to competing reasonable interpretations.  Neither the plaintiffs nor the district court

provided a single case to support the proposition that a "water damage" exclusion,

including "flood" does not apply to bar claims involving flood loss resulting from

man-made failures or other negligence.  The district court rejected solid case law

directly on point in favor of cases dealing with earthquake exclusions, boating

accidents, or bursting pipes to come to the conclusion that "flooding" *could* mean

overflow of water from natural sources, instead of water flowing onto otherwise dry surfaces as a result of a failure of a man-made structure such as a levee or a dam.[7]

In reaching its conclusion, the district court misapplied the doctrines of *ejusdem generis* and *noscitur a sociis*. These rules of construction are applied as interpretive aids to resolve a contract's meaning **after** a contract has otherwise been found to be ambiguous. ***Russell Motor Car Co. v. United States***, 261 U.S. 514, 519 (U.S. 4/9/23) (canons of construction act to resolve ambiguity, not to introduce it). Here, the court used these rules of construction to create the ambiguity. For example, the court's holding that the term "flood" referred only to natural causes is in part based on application of the rule of *ejusdem generis* that the specific terms in the policy, like "surface water, waves and overflow of a body of water" in effect modify the term "flood." In the LCPIC policies, the term "flood" stands alone, in addition to, but not modified by "surface water, waves, and overflow of a body of water." They are all part of the "water damage" exclusion. The term "flood," in itself, is not ambiguous. It includes any flow of water onto otherwise dry land. Indeed, the term "overflow of a body of water" under the district court's definition would make the term "flood" in

---

[7] Strikingly, the Court reasoned that cases interpreting the water damage exclusion to apply to both natural and man-made flows of water were distinguishable on the basis that those cases did not raise the distinction between natural and so-called "man-made" floods. (Ex. A, pp. 29-30.) The fact that the distinction was not raised in this bevy of cases undermines the notion that a reasonable policyholder would conclude that only natural floods were covered.

the exclusion mere surplusage. The doctrines of *ejusdem generis* and *noscitur a sociis* should have no application at all because the term "flood" is not reasonably susceptible of different meanings.[8]

**B.    This Case Is Appropriate for Interlocutory Appeal Pursuant to Section 1292(b)**

Immediate interlocutory appeal is allowed under Section 1292(b) if three requirements are met: (1) the order involves a controlling question of law; (2) there is a substantial ground for difference of opinion as to that question; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. §1292(B). This Court historically has "allowed full use of this effective device." *Ex parte Tokio Marine & Fire Ins. Co.*, 322 F.2d 113, 115 (5th Cir. 8/29/63).

---

[8] Indeed, the district court's wholesale rewriting of the policy exclusions is so extreme that it raises questions regarding unconstitutional impairment of contract rights. LCPIC's contract rights are protected from state invasion under Due Process. *Stidham v. Texas Com'n on Private Sec.*, 418 F.3d 486, 492 n. 9 (5th Cir. 7/22/05) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (U.S.Wis., 6/29/72) (contracts enforceable under state law protected from state invasion under Due Process). Due Process commands that the state may not strip LCPIC of these interests by stealth, through the backdoor of litigation, any more than it could do overtly by legislation. *See* U.S. CONST. ART. I., § 10; *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 562 (U.S. Ala., 5/20/96) (due process protects financial interests against impairment through litigation); *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (U.S.Minn., 6/28/78) (contract relationship substantially impaired by change in law violates Contract Clause); *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (U.S. 4/26/94) (retroactive application of law violating "[e]lementary considerations of fairness dictat[ing] that individuals should have an opportunity to know what the law is and to conform their conduct accordingly" barred). LCPIC's pricing and rate structure at no time contemplated potential liability based on the supposed distinction between "man-made" and "natural" flooding. There is no way that this policy, read as a whole, can be interpreted in the manner ascribed to by the district court.

-17-

The district court determined that its Order met these requirements (Ex. A at p. 85.) The district court's determination in this regard is deserving of "careful consideration." *U.S. v. Woodbury*, 263 F.2d 784, 786 (9th Cir. 2/2/59). Furthermore, the district court's determination in this regard was plainly correct, as argued below.

### C. Whether the Exclusionary Language in LCPIC's Homeowner Policies Is Enforceable Is a Controlling Question of Law

The question LCPIC seeks to appeal is a "controlling question of law."

The district court found the "water damage" exclusions in LCPIC's policies to be ambiguous, and on that basis found coverage for plaintiffs' losses arising from "man-made" floods. Whether the district court correctly found ambiguity in the interpretation of the contract is quintessentially a question of law. *See e.g., American Marine Underwriters, Inc. v. Holloway*, 826 F.2d 1454, 1456 (5th Cir. 9/18/87) ("[w]hether an insurance policy is ambiguous is a question of law for the court."); *Gladney v. Paul Revere Life Ins. Co.*, 895 F.2d 238, 241 (5th Cir. 1990) ("[T]he 'interpretation of a contract is a question of law, including the question whether the contract is ambiguous'. . . ." (citation omitted)).

Such a question of law is "controlling" if its resolution on appeal could materially affect the outcome of the litigation in the district court, even if it is not certain to do so. *Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc.*, 86 F.3d 656, 659 (7th Cir. 6/5/96); *In re Cement Antitrust Litigation*,

-18-

673 F.2d 1020, 1026 (9th Cir. 1/27/82).   If an incorrect disposition of the issue would ultimately require reversal of final judgment on appeal, then the issue is plainly controlling. 16 Charles Alan Wright et al., Federal Practice and Procedure 3930, at 423 (2d ed. 1996).   Likewise, "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2nd Cir. 12/7/90).   And an issue is also controlling "if interlocutory reversal might save time for the district court and time and expense for the litigants." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 4/22/91) (citation omitted).

By all three measures, the issue presented for appeal in this case is "controlling."   LCPIC moved to dismiss on the basis that plaintiffs' claims are excluded from coverage by the "water damage" exclusions. The district court denied LCPIC's motion, finding the exclusions to be ambiguous.   If the trial court was wrong, then the plaintiffs' claims are excluded from coverage as a matter of law, and any final judgment entered in plaintiffs' favor would require reversal on that basis. Likewise, if this Court were to determine that flood damage is unambiguously excluded from coverage then plaintiffs' claims will fail as a matter of law and the case against LCPIC should terminate.

Finally, resolving the coverage issue now, on interlocutory appeal, would enable the parties to avoid protracted and expensive litigation, including complex discovery, class certification briefing and trial preparation in this matter.  Indeed, a decision by this Court on the central coverage issue presented here would dramatically impact not only this case, but also the many other lawsuits brought against LCPIC and other insurers that implicate coverage for flood damage under the policies "water damage" exclusions at issue here.  *See Atlantic City Elec. Co. v. General Elec. Co.,* 207 F.Supp. 613, 619-20 (S.D.N.Y. 7/11/62), *aff'd* 312 F.2d 236 (2nd Cir. NY 12/31/62) (certifying questions for review where it "affects the scope of discovery procedure, the length and complexity of ultimate trial, and the expenditure of time, money and effort which these cases will engender").

### D. There is A Substantial Ground for Difference of Opinion Concerning the District Court's Ruling that the LCPIC Exclusionary Language is Ambiguous

As the district court acknowledged, "there is substantial ground for difference of opinion" regarding its decision.  (Ex. A, p. 85.)  Indeed, the district court's ruling conflicts with recent decisions in other hurricane cases in this Circuit, and with long-standing authorities enforcing flood and other policy exclusions where flood damage resulted from man-made failures or other causes.  It is in conflict with decisions such

-20-

as the Colorado Supreme Court's decision in *Kane v. Royal Ins. Co. of America*, 768 P.2d 678, 681 (Colo. 1/17/89).

The Southern District of Mississippi recently held in another Hurricane Katrina case that the flood exclusion in a homeowner policy issued by Allstate Insurance Company are "valid and enforceable," and not ambiguous. *Buente v. Allstate Insurance Co.*, 422 F.Supp. 2d 690, 696 (S.D. Miss. 3/24/06). Likewise, the Eastern District of Louisiana held last month that Allstate's flood exclusion is "clearly worded" and that the "clear policy language" indicates that flooding caused by hurricanes is excluded. *Dobson v. Allstate Ins. Co.*, Nos. 06-0252, 06-1097, 06-1064, 06-1255, 06-1734, 06-1585, 2006 WL 2078423 (E.D. La. 7/21/06). These decisions evidence a "difference of opinion" between those courts and the district court here over interpretation of "flood" in a "water damage" exclusion.

The district court's decision also conflicts with a myriad of older cases that have enforced flood exclusions even where losses arose from a "man-made" flood. *See, e.g., E.B. Metal & Rubber Industries, Inc. v. Federal Ins. Co.*, 444 N.Y.S.2d 321 (N.Y.A.D. 3 Dept., 10/29/81); *TNT Speed & Sport Center, Inc. v. American States Ins. Co.*, 114 F.3d 731 (8th Cir. 5/27/97); *Bartlett, supra*, 697 P.2d 412. These authorities directly conflict with the trial court's ruling that "man-made" floods are not encompassed within LCPIC's flood exclusions.

Since the district court's decision directly conflicts with a host of other decisions, there is patently "substantial ground for difference of opinion" as to whether Encompass's exclusion is ambiguous, or is triggered by a "man-made" flood.

### E.    Interlocutory Appeal Will Materially Advance the Ultimate Termination of This Litigation

An immediate appeal will materially advance the ultimate termination of the litigation because, if LCPIC is right that "flood" in the "water damage" exclusions apply to the plaintiffs' claims, those claims are subject to dismissal.    Moreover, the coverage question raised by this appeal will impact the outcome in thousands of other Hurricane Katrina cases, including cases now being litigated against LCPIC and other insurers.

In such circumstances, interlocutory review of legal issues is especially appropriate. *See, e.g., Gopher Oil Co. v. Union Oil Co.*, 757 F.Supp. 998, 1004 (D. Minn. 1991) ("[T]he general purpose of § 1292(b) is to provide interlocutory appeal in exceptional cases in order to avoid protracted and expensive litigation.") (citing *Paschall v. Kansas City Star Co.*, 605 F.2d 403, 406 (8th Cir. 1979), *rev'd in part on other grounds*, 955 F.2d 519 (8th Cir. 1992)); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F.Supp. 1190, 1243-45 (E.D. Pa. 1980) (although certification under 28 U.S.C. § 1292(b) has not been restricted in practice to exceptionally complex or

protracted litigation, it remains especially suitable for use in such cases); *see also* 16 Wright *et al, supra*, §3929, at 368-69; §3930, at 425-27.

Correcting the district court's error now will short-circuit the unnecessary trial of huge numbers of similar cases that are now -- or soon will be -- wasting the time and resources of the litigants and clogging the courts below.

## **CONCLUSION**

For all of the reasons stated above, LCPIC respectfully requests that this Court grant this Petition, allow the parties to brief the foregoing issues and, upon receiving briefs and arguments, reverse the District Court's ruling in its November 27, 2006 Order in so far as that Opinion holds that water damage caused by levee breaches is covered under LCPIC's policies at issue.

Respectfully submitted,

BIENVENU, FOSTER, RYAN & O'BANNON

BY: _____
JOHN W. WATERS, JR. T.A. (#13258)
DAVID E. WALLE (#13199)
GREGORY J. McDONALD (#1933)
1010 Common Street, Suite 2200
New Orleans, LA 70112-2401
Telephone: (504) 310-1500
Facsimile: (504) 310-1501
*Attorneys for Petitioner-Defendant,*
*Louisiana Citizens Property Insurance*
*Corporation*

-23-

## PROOF OF SERVICE

I, John W. Waters, Jr., hereby certify that a copy of the above and foregoing

*Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b)* has been served

upon all counsel of record by electronic filing, or facsimile transmission, hand

delivery, or depositing same in the United States Mail, postage pre-paid on December

8, 2006.  The names of individual counsel are too numerous to list individually here,

but are based upon the counsel of record list in the district court.

_____

JOHN W. WATERS, JR.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE KATRINA CANAL BREACHES                          CIVIL ACTION
CONSOLIDATED LITIGATION
                                                      NO. 05-4182

PERTAINS TO INSURANCE                                 SECTION "K"(2)
*Vanderbrook,* C.A. No. 05-6323
*Xavier University,* C.A. No. 06–516
*Chehardy,* C.A. No. 06-1672, 06-1673, and 06-1674


                              and


KELLY A. HUMPHREYS                                    CIVIL ACTION

VERSUS                                                NO. 06-0169

ENCOMPASS INSURANCE COMPANY, ET AL.                   SECTION K(2)
****PRINT TO WEB****

                             <u>ORDER</u>

On September 19, 2006, *Berthelot, et al. v. Boh Bros. Construction, et al.,* C.A. No. 05-4182

was filed in the Eastern District of Louisiana.  This case began the stream of complaints that have

been filed as a result of damages arising out of all levee breaches which occurred in the aftermath

of Hurricane Katrina.

Berthelot was transferred to the undersigned on February 23, 2006.  (Doc. 47).  It was

subsequently determined by the *en banc* court of the Eastern District of Louisiana that in order to

avoid conflicting decisions among the various sections of the Court, the proper approach would be

to consolidate all such filings for purposes of pretrial discovery and motion practice.  As such, what

is now captioned "*In re: Katrina Canal Breaches Consolidated Litigation,*" C.A. No. 05-4182,  has

become the umbrella for all cases which concern damages caused by flooding as a result of breaches