Support for limiting this exclusion in the context of an all-risk policy is further

demonstrated in the Louisiana supreme court's decision  in *Doerr v. Mobil Oil Corp.*, 774 So.2d

119 (La. 2000).  In *Doerr*, a refinery discharged  hydrocarbons into the Mississippi River which

were drawn into the St. Bernard Parish water system and then distributed to users throughout the

parish.  Plaintiffs in that case sought compensation from St. Bernard Parish and its insurers for

personal injuries allegedly sustained from the use and/or consumption of the allegedly

contaminated water.  *Id.* at 121.

The Louisiana supreme court examined a total pollution exclusion endorsement in the

policy and analyzed its previous decision in *Ducote v. Koch Pipeline Co.,* 730 So.2d 432 (La.

1999).  In *Ducote*, the supreme court had previously held that pollution exclusions were

unambiguous and excluded coverage for injury "which would not have occurred in whole or in

part but for the [dispersal] of pollutants at any time." *Ducote*, 730 so.2d at432, 437.  The *Doerr*

court noted that this holding  made it irrelevant as to who precipitated the alleged pollution and

re-examined the pollution exclusion itself.

The *Doerr* policy read:

> This insurance does not apply to:
>
> (1) "Bodily injury", "property damage", "personal injury" or "advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
>
> (2) Any loss, cost or expense arising out of any:
>
> (a)Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or
>
> (b) Claim or suit by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the

42

effects of pollutants. Pollutants means solid liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Water includes material to be recycled, reconditioned or reclaimed.

*Id* at 122-23. The court noted that as written:

[T]he exclusion can be read to exclude coverage for anything from the release of chlorine gases by a conglomerate chemical plant to the release of carbon monoxide from a small business owner's delivery truck. It could be read to exclude injuries resulting from a slip and fall on an oil-slicked beach to a slip and fall on spilled gasoline at a corner service station. As pointed out in *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992):

> without some limiting principle, the pollution exclusion clause would . . . lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, on would not ordinarily characterize these events as pollution.

*Id.* at 124.

The court then examined the origin of the Total Pollution Exclusion and concluded that its purpose was to exclude coverage for environment pollution with respect to the active polluter of the environment, not to apply unambiguously "regardless [as the majority stated in *Ducote]* of whether the release was intentional or accidental, a one-time event or part of an on-going pattern of pollution." *Doerr* at 126, *citing, Ducote*, 730 So.2d at 437. The court continued "In fact, to give the pollution exclusion the broad reading found in *Ducote* would contravene the very purpose of a CGL policy, without regard to the realities which precipitated the need for the pollution exclusion–the federal government's war on active polluters." *Doerr* at 126. The court concluded:

43

Commercial General Liability policies are purchased by both large and small business owners in an attempt to protect against losses that may result from unforeseen liability-imposing events or circumstances. As stated in Section I(A)(1)(a) of the policy at issue here, the issuer of a liability policy "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Business owners rely on these policies to protect them against claims and losses which might otherwise force insolvency or prompt serious losses. The insurance company, on the other hand, agrees to absorb liability to which the business might otherwise be exposed in return for a premium which, along with the premiums of other insureds, is designed to adequately spread potential losses among all of the insurer's clients. These  businesses come to rely on the liability policies because, without them, a single large claim might force insolvency or an intolerable monetary loss. Consequently, business owners expect that any exclusions within their policy will be read reasonably and with due regard to the intent of the policy as a whole. Giving these pollution exclusions a strictly literal reading without regard to the limited purpose behind their post-CERCLA formation would thwart the very purpose of the comprehensive general liability policy.

Both liability insurers and their insureds have certain expectations regarding issuance of a CGL policy. The liability insurer expects premiums in exchange for a certain level of risk, and the insureds expect to be insulated generally from liability claims. **A literal reading of the total pollution exclusions would alter the general scope and expectation of the parties. Consequently, because the pollution exclusion was designed to exclude coverage for environmental pollution only, it should be interpreted so that the clause "will not be applied to all contact with substances that may be classified as pollutants."** Russ, *supra,* at § 127:6 n. 62 (citing *Stoney Run Co. v. Prudential-LMI Comm. Ins. Co.,* 47 F.3d 34, 37 (2nd Cir.1995)). As *Ducote* conflicts with the intent of the policy exclusion and disrupts the expectations of both insurers and insureds, that opinion will be overruled at this time.

*Doerr,* 774 So.2d at 127-28 ( footnote omitted) (emphasis added).

Likewise, defendants' seeking to employ the broadest possible definition of "flood" in the context of the ISO Water Exclusion would result in the evisceration of what an "all-risk" policy is meant to cover.  Certainly the damage sued upon was caused by flooding; but was the flooding caused by negligent acts or omissions excluded by the plain language of the policy?

44

The insurers could have drafted such a clear exclusion with very little effort, but they did not. As discussed herein, this precise issue, natural causes versus man-made causes, has been dealt with by various courts for a number of years. If the insurers, who wrote every word of the respective policies, wanted to make the language clear, that "flood" means water damage caused by negligent acts or omissions, it could have so drafted the policy language. For reasons only known to the insurer, it chose not to do so.

As is discussed, *infra,* in the sections concerning the State Farm policy and the Hartford policy, these insurers succeeded with very little effort in clearly excluding coverage for negligent acts or omissions. Indeed, if a consumer were to actually read the three different policy language presented in this case, one would expect that he or she would choose the ISO policy as it would be reasonable to assume that by comparison, it only excludes coverage for natural acts, unlike the other two policies. To find that the ISO language clearly excludes negligent acts would be to reward and encourage the use of vague language. This determination is underscored by the fact that the tension between natural flooding and flooding caused by negligent or intentional acts has existed for decades; obviously, some insurers made efforts to be clear in their intentions.

Furthermore, the defendant argues if the word "flood" does not include acts of negligence or omission, then the flooding which may occur as result of pumps not working in a heavy rain causing the streets to overflow with water would be covered under the policy. The Court disagrees. In that situation, the efficient proximate cause would be the natural occurrence of rain and the overflowing of the streets, not the failing of the pumps, and there would therefore would be no coverage as the cause efficient proximate cause was a natural act. What must be remembered is that the allegations in this matter revolve around the concept that the flood walls

involved collapsed precisely under the conditions that they were designed to withstand.  If the pumps failed at a point which they were designed to handle, then arguably  negligence might be present.

## 2.    Existence of NFIP Does Not Change Analysis

Insurers also argue that the existence of the National Flood Insurance Program ("NFIP") demonstrates that these policies are not meant to cover flooding of any sort.   The existence and scope of the NFIP has no bearing on the rules of contractual interpretation that this Court must apply as to whether an exclusion in a policy is ambiguous.  Moreover,  the Standard Flood Insurance Policy ("SFIP") does not purport to cover all water damage that could occur to a structure.   In the SFIP under the NFIP, "Flood" is defined as follows:

> 1.    A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (one of which is your property) from:
>     a.    Overflow of inland or tidal water,
>     b.    Unusual and rapid accumulation or run-off of surface waters from any source,
>     c.    Mudflow.
> 2.    Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood as defined in A.1.a. above.

44 C.F.R. Ch.1 (10-1-04 Edition) Pt. 61, App. A(1).  If an insurer wanted to exclude coverage for damages covered by a national insurance program, it could so state in the relevant exclusion.  Furthermore, "[i]t is the reasonable interpretation of an insured that governs the legal effect of

language in an insurance contract, and not whether the language chosen by an insurer may

constitute a legal term of art in another context.   *Lee v. Unum Life Ins. Co. of America*, 900

So.2d 1021, 1029 (La. App. 4th Cir. 2005).

The Court also takes note  that as a result of the 100 Year Flood Plane that was in effect

at the time of Katrina, some lenders did not required a homeowner to purchase flood insurance

where others did.  Some of the predictions with respect to that flooding were apparently incorrect

as a result of the alleged failure of the levee system.  An insured may reasonably expect

overtopping of a levee, but on the other hand an insured may not reasonably expect  that levees

designed and certified by the United States Corps of Engineers would fail as a result of negligent

design and construction as has been alleged.


3.       **Ensuing Loss Provisions of the Act or Decisions Exclusion Render the Exclusion Inapplicable**

The insurers also contend that another exclusion would act to deny coverage to any of the

instant policy holders.  The policies in the Exclusion Section also provide as follows:

Section 1–Exclusions

2.       We do not insure for loss to property described in Coverages A and B caused by any of the following.  **However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.**

. . .

b.       **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c.       **Faulty, inadequate or defective:**

(1)       Planning, zoning, development, surveying, siting;

(2)       Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3)       Materials used in repair, construction, renovation or remodeling; or

(4)       Maintenance;

47

of part or all of any property whether on or off the "residence premises."

(Standard Fire Policies, App, at INS 97 and INS 137; Hartford Policy, App. at INS 56; Hanover

Policy, app, at INS 10; Unitrin Policy, App. at INS 172.).  As the Court has found there is

coverage for the flood damage as alleged, then the losses would be considered "ensuing" and as

such, these exclusions would be inapplicable.  *See Lake Charles Harbor & Terminal District v.*

*Imperial Cas. & Indem. co.*, 857 F.2d 286 (5th Cir. 1988) (Rubin, J.).

As this Court concerning *Lake Charles Harbor in  Holden v. Connex-Metalna*, 2001 WL

40994 (E.D.La. Jan. 16, 2001):

> In *Lake Charles Harbor & Terminal District v. Imperial Casualty and
> Indemnity Company,* 670 F. Supp. 189 (W.D.La.1987), a cable broke on a
> shiploader, causing the shuttle portion of the loader to crash into the interior of
> the loader, resulting in extensive damage. The insurer denied coverage based on a
> policy exclusion for "[m]echanical or machinery breakdown; unless an insured
> peril ensues, and then only for the actual loss or damage caused by such ensuing
> peril." The plaintiff argued that the damage to the shiploader was an excluded
> peril. *Id.* at 193. It considered the that the purpose of an all risk policy "is to keep
> the insurer in its proper role as bearer of casualties rather than as warrantor or
> service contractor of the equipment of the insured. *Id.* at 194. The court held that
> damages to the ship unloader were covered under the policy, as "[t]he damages to
> the ship loader were not such as the insured would be expected to bear in the
> ordinary course of maintenance." *Id.*
>
> On appeal, the United States Court of Appeals for the Fifth Circuit
> affirmed, finding the policy language to be so ambiguous that its "words, read
> literally, are meaningless." *Lake Charles Harbor & Terminal District v. Imperial
> Casualty & Indemnity Co.,* 857 F.2d 286 (5th Cir.1988). The insurers asserted
> that "because a mechanical breakdown was the but for cause of the accident   no
> insured peril ensued." *Id* at 287. The Court of Appeals rejected such an
> interpretation. Examining the policy language, Judge Rubin found that
> "[w]hatever ensuing peril may mean, nothing in the policies indicates that
> catastrophic damages to a machine caused by its own mechanical breakdown
> cannot be included within the term." *Id* at 288. Thus, the court interpreted the
> exclusion to find that "the insurance policies covered all risks except those
> explicitly excluded from coverage, and excluded coverage for mechanical

48

breakdowns only when "no insured peril ensue[d]." *Id.* at 289.

*Id.* at *5 -6.

### 4.    Anti-Concurrent Cause Clause is Inapplicable

Finally, the Court finds that the Anti-Concurrent Cause Clause[16] is inapplicable to the

ISO water exclusion as there is no "separate" or other cause of damage. The allegations before

the Court are not analogous to those which the Mississippi federal courts are facing in *Buente v.*

*Allstate Ins. Co.*, 422 F. Supp.2d 690 (S.D. Miss. 2006) and *Tuepker v. State Farm Fire & Cas.*

*Co.*, 2006 WL 1442489 (S.D. Miss. May 24, 2006). This case does not present a combination of

forces that caused damage such as wind versus water as was present in the natural disaster which

the Mississippi Gulf Coast experienced as a result of Hurricane Katrina. The undefined term

"flood" in the Water Damage Exclusion is reasonably interpreted to be limited to flooding

caused by natural acts, not those that were man-made. As such, there is no excluded loss as

alleged in this Complaint. In this case the "cause" conflates to the flood; it is not wind damage

versus. water damage both of which were totally naturally occurring incidents as in *Buentes*.

But, there may be proof issues which will arise in the context of water damage that may have

been caused by water which naturally overtopped levees. The court is not striking the anti-

concurrent cause clause, it is simply holding that the term "flood" is ambiguous and that it finds

that "flood" in the ISO Water Exclusion context means simply "flood" caused by natural

occurences such as overtopping. As previously noted, the issue of the anti-concurrent cause

clause may have to addressed at a later stage of this litigation.

---

[16]This term of art is used to refer to the lead-in clause of the ISO policy which states "We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. (Standard Fire Policies, App, at INS 96 and INS 136; Hartford Policy, App. at INS 55; Hanover Policy, app, at INS 9; Unitrin Policy, App. at INS 171.)

**B.   State Farm Policy's "Lead-In" Provision**

The State Farm policies contain a specific lead-in which removes the ambiguity with

regard to causation of flood–that is natural versus man-made.   As previously noted, the State

Farm policies provide:

> SECTION I - LOSSES NOT INSURED
>
> 2.        We do not insure under any coverage for loss which would not have occurred in
> the absence of one or more of the following excluded events.  We do not insure for such
> loss **regardless of: (a) the cause of the excluded event**; or (b) other causes of the loss;
> or (c) whether other causes acted concurrently or in any sequence with the excluded
> event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves
> isolated or widespread damage, arises from natural or external forces, or occurs as a
> result of any combination of these:
>
> c.        (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray
> from any of these all whether driven by wind or not;

(Doc. 570, Exhibit A and B, pp. 7 and 10) (emphasis added).

The State Farm policy does precisely what the ISO Water Exclusion Policy fails to do.  It

makes it clear that regardless of the **cause** of the flooding, there is no coverage provided for any

flooding "regardless of the cause."  Such language is clear to the Court and as such, the Court

must find that the State Farm policy as written excludes coverage for all flooding.

In so finding, the Court is aware that it is at odds with the decision in *Murray*, 509 S.E.2d

at 489–92.  In its decision, the *Murray* court focused on the "natural or external forces" of the

lead-in clause, and concluded that the lead-in clause operated to defeat the efficient proximate

cause doctrine and the insureds' reasonable expectations.  The court basically excused a policy

holder from a "painstaking review" of the policy.  *Id.* at 490.  The *Murray* court relied

substantially on language contained in certain California cases; however, California has

50

statutorily limited the application of these types of clauses.  As noted in David L. Leitner;

Reagan W. Simpson; and John M. Bjorkman, 4 Law and Practice of Insurance Coverage

Litigation § 52:35:

> Three states, California, Washington, and West Virginia, follow the
> efficient proximate cause rule and also refuse to enforce at least some anti-
> concurrent causation policy provision.  In addition Wisconsin has found
> ambiguous and construed in favor of the insured the application of an anti-
> concurrent causation clause in a general policy form to an additional coverages
> endorsement.  The California courts have concluded that anti-concurrent
> causation policy provisions are contrast to the statutory mandate in that state's
> insurance Code.  In Washington, the courts simply have refused to enforce anti-
> concurrent causation provisions regardless of their clarity and have provided little
> rationale for this conclusion.  West Virginia's supreme Court has concluded that
> the anti-concurrent cause language conflicts with the insured's reasonable
> expectations and therefore, is unenforceable.

*Id.*  Louisiana has not spoken to the issue of whether the doctrine of efficient proximate cause

overrides anti-concurrent cause clauses.  As noted, Louisiana has adopted the efficient proximate

cause approach to coverage; however, the courts have not, to this Court's knowledge, squarely

addressed this tension.  Nonetheless, from the foregoing citations to the Code and the

*jurisprudence constant* concerning clear language and the ability for parties to a contract to

dictate the terms thereof, it appears that a Louisiana court would enforce the clear contractual

intent to exclude coverage as found in this State Farm lead-in clause.


### C. Hartford Policy's specific Flood Definition

Finally, in the *Vanderbrook* context, the efficacy of Hartford's "Amendatory

Endorsement Specifically Excepted Perils" must be examined. This two page provision provides

in relevant part:

51

As used herein, Peril means a cause of physical loss or damage to property.  It has this meaning whether or not it is called a Peril or a Cause of Loss in this policy.

Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS POLICY.  WE DO NOT COVER INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:

A. ACTS, ERRORS OR OMISSIONS by you or others in:

> . . .

> 3.   The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:
>> b.   Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; . . .

> 5.   The maintenance of any of such property or facilities.

> . . .

This exception A. applies whether or not the property or facilities described above are:

> 1.   Covered under this policy; or

> 2.   On or away from the covered premises.

This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.

As used in this endorsement:

> 1.   If this policy is written to cover the risk of loss from specifically named causes, **Covered Peril** means any Peril specifically named as covered;

> 2.   If written to cover the risk of loss without specifying specifically named causes, Covered Peril means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

B.   COLLAPSE CRACKING OR SHIFTING of buildings, other structures or facilities, or their parts, if the collapse, cracking or shifting:

1.         Occurs during earth movement, volcanic eruption or flood conditions or within 72 hours after they cease; and

2.         Would not have occurred but for earth movement, volcanic eruption, or flood.

But if loss or damage by a Covered Peril ensues at the covered premises, we will pay for that ensuing loss or damage.

This exception B. applies whether or not there are other provisions in this policy relating to collapse, cracking or shifting of buildings, other structures or facilities, or their parts. Any such provision is revised by this endorsement to include this exception.

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more of the following Perils:

...

2. Flood:

this exception B. will not reduce that coverage.

As used in this exception B:

. . .

6.         flood means:

a.         Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;

b.         Release of water held by a dam, levy or dike or by a water or flood control device; . . .

All other provisions of this policy apply.

(Doc. 568, Hartford Policy, App. at INS 74-75). Hartford urges both exceptions A and B as

excluding coverage for the flooding as alleged in the *Vanderbrook* petition.

The Court finds that exception A indeed acts as a specific exclusion for flood damage

caused by negligently maintained levees. To begin, its "lead-in" clause leaves nothing to the

imagination. It states unequivocally that "[e]ven if any of the terms of this policy might be

construed otherwise," the Acts, Errors or Omission of the insured or others are specifically

excepted from the policy. It continues, parsing the exclusion, to declare that Hartford

specifically excludes loss or damage directly or indirectly caused by acts, errors or omissions by

others in the design specifications, workmanship, repair, construction renovation, of levees,

dams or other facilities or the maintenance of any such property. Such a clear statement of

exclusion from coverage likewise must be enforced.

## X.   Conclusion

Thus, the Court finds that the ISO exclusions as contained in the Standard Fire Policies,

App. at INS 94 and INS 134, the Hartford Policy, App. at INS 53, the Hanover Policy, App. at

INS 7 and Unitrin Policy, App. at INS 169 are ambiguous and as such the Court finds that the

motion to dismiss based on the Water Exclusion must be denied for each of these insurers except

Hartford. However, because of the Amendatory Endorsement Specifically Excepted Perils,

Hartford's motion will be granted. Finally, because of the clarity of the State Farm exclusion as

to "regardless of cause", that motion will be granted. Accordingly,

54

**IT IS ORDERED** that with respect to:

Doc. No. 568      the Motion for Judgment on the Pleadings filed by Hanover Ins. Co. ("Hanover") insurer of plaintiff James Capella and Madeline Grenier[17] is **DENIED**.

Doc. No. 569      the Motion for Judgment on the Pleadings filed by Standard Fire Ins. Co. ("Standard") insurer of plaintiffs Peter Anthony Ascani, III, Gregory R. Jackson, and Monica Reyes is **DENIED**.

Doc. No. 570      the Motion for Judgment on the Pleadings filed by State Farm Fire & Cas. Co. ("State Farm") insurer of Mary Jane Silva and Robert G. Harvey is **GRANTED**.

Doc. No. 572      the Motion to Dismiss Party filed by Hartford Ins. Co. of the Midwest ("Hartford") insurer of Jack Capella as the Executor of the Succession of Lillian Capella is **GRANTED.**

Doc. No. 598      the Motion for Judgment on the Pleadings filed by Unitrim Preferred Ins. Co. ("Unitrim") insurer of Richard Vanderbrook is **DENIED.**

---

[17]See Footnote 1 above.

**THIS ORDER PERTAINS TO:**

*Xavier University,* C.A. No. 06–516

## ORDER AND REASONS

Plaintiff Xavier University of Louisiana ("Xavier") was insured by Travelers Property Casualty Company of America ("Travelers") under a Commercial Insurance Policy designated as "A Custom Insurance Policy" (Exhibit A to Opposition, TRAV 383) (hereinafter TRAV) which included "Deluxe Property" coverage (TRAV 389) as part of an all risks policy. Xavier incurred severe property damage some of which was allegedly was caused by water which came from the 17th Street Canal and the London Avenue Canal breaches. Relying on the following provision of the policy, Travelers has denied coverage for the water damage which Xavier experienced:

> Water Damage Exclusion
>
> 1.   We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that has contributed concurrently or in sequence to the loss.
>
>    g.   Water
>
>       (1)   Flood, surface water, waves, tides, tidal waves overflow of any body of water, or their spray, all whether driven by wind or not;
>
>       (2)   Mudslide or mudflow;
>
>       (3)   Water under the ground surface pressing on, or flowing or seeping through:
>
>          (a) foundations, walls, floors or paved surfaces;
>
>          (b) Basements, whether paved or not; or
>
>          (c) Doors, windows or other openings.

(TRAV 410). Travelers has filed Plaintiff's Motion for Partial Summary Judgment (Doc. 1217) seeking a ruling that, as a matter of law, damages to Xavier's campus following Hurricane Katrina were caused by ground water which came from the collapses of the 17th Street Canal and

the London Avenue Canal levees as a result of man-made causes and that such damages are

covered under the "all risks" policy of insurance issued to Xavier by defendant Travelers.


**I.      Standard for Summary Judgment Motion**

This motion has been brought pursuant to Fed. R. Civ. P. 56.  Summary judgment should

be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Substantive law determines the materiality of

facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of [the record] . . . which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S.

317, 323 (1986).  Once the movant meets this burden, the burden shifts to the non-movant "to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Id.* at 322.   "[M]ere allegations or

denials" will not defeat a well-supported motion for summary judgment. Fed. R. Civ. P. 56(e).

Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id.*

When deciding a motion for summary judgment, the Court must avoid a "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Anderson*, 477 U.S. at 255. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

Based on the analysis contained in the *Vanderbrook* opinion herein, in particular the legal analysis contained in the following subsections:

I.      The Civilian Approach as an Erie Court;
IV.     Legal Concepts for Contract Interpretation;
VI.     Parties' Contentions;
VII.    Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable Interpretations of the Term;
VIII.   Jurisprudence Further Demonstrates Reasonableness of Alternative Interpretations;
IX.     Application of Legal Principles to the Policies Before the Court; and
        A.      ISO Water Damage Exclusion,

this Court finds that the Water Damage Exclusion as found in Xavier's Travelers policy is ambiguous and as such affords Xavier coverage for damages sought provided that Xavier can prove that the flooding it experienced was caused by the negligence of man. The ISO Water Damage Exclusion and the subject exclusion are practically identical; indeed, with respect to the subsection (1), the wording is identical. The exclusion does not clearly address flooding caused by man-induced causes and as such, the Court must find coverage.

58

This ambiguity is highlighted by the policy language itself. The Earth Movement Exclusion in the Travelers policy is preceded by the same "lead-in" clause and provides:

> b.    Earth Movement
>
> (1)   Any earth movement (other than "sinkhole collapse") **whether natural or man made**, including bu not limited to earthquake, mine subsidence, landslide, or earth sinking, rising or shifting. But if earth movement results in fire, or explosion, we will pay for the loss or damage caused by that fire or explosion.

(TRAV 409). Thus, Travelers demonstrates that is has the ability to clearly exclude man-made earth-movement claims. Its failure to use the same language in the same policy with respect to an exclusion within the same section of the policy gives further support to this Court's decision that the Water Damage Exclusion is limited to natural disasters–not those than man's negligence causes.

However, the Court cannot as a matter of law find that the damages to Xavier's campus following Hurricane Katrina were caused by ground water which came from the collapses of the 17th Street Canal and the London Avenue Canal levees. Obviously, there are questions of fact which preclude the granting of Xavier's motion in that regard. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 1217) is **GRANTED** in part as the Court finds that the Water Damage Exclusion would provide coverage for water damage caused by the negligent acts of mind and **DENIED** in part as the Court finds there are material questions of fact as to the cause of the water damage to Xavier.

*************************************************************

59

**THIS ORDER PERTAINS TO:**

*Chehardy*, **C.A. No. 06-1672, 06-1673, and 06-1674**

## ORDER AND REASONS

Before the Court are the following motions[18]:

| | |
|---|---|
| Doc. 903 | Motion to Dismiss filed by Louisiana Citizens Property Insurance Corp; |
| Doc. 923 | Motion to Dismiss filed by Encompass Indemnity Company; |
| Doc. 932 | Consolidated Rule 12(B)(6) Motion to Dismiss Plaintiffs' Amended and Restated Complaint filed by Defendants The Standard Fire Insurance Company, Lexington Insurance Company, Liberty Mutual Fire Insurance Company, The American Insurance Company, Aegis Security Insurance Company, Auto Club Family Insurance Company,[19] the Hanover Insurance Company and Lafayette Insurance Company |
| Doc. 936 | Motion to Dismiss Plaintiffs" Amended and Restated Complaint filed by Great Northern Insurance Company; |
| Doc. 939 | Motion to Dismiss Pursuant to Rule 12(b) filed by Allstate Insurance Company, Allstate Indemnity Company; and |
| Doc. 1037 | Motion to Dismiss Plaintiffs' Amended and restated Complaint filed by State Farm Fire and Casualty Company. |

As noted, the Court entertained oral argument on these motions on October 27, 2006 and is now

prepared to rule thereon.

---

[18]It must be noted that the Amended and Restated Complaint does not specify which plaintiffs are insured by which defendants. The Court has attempted to ascertain this information for purposes of specificity with respect to its ensuing orders herein; however, there is some confusion which prevents the Court from doing so. In addition to which, the information provided is not in the record. However, it has been represented to the Court by counsel that all insurers herein have provided at least one policy to one plaintiff, thus the Court will enter its orders with respect to the insurers and will not be able to identify the specific plaintiff who is effected by such order.

[19]This company was named as AAA Homeowners Auto Club in the Amended Complaint.

I.     *Chehardy* **Amended and Restated Complaint**

Plaintiffs, as putative class representatives, allege that they are residents of the Parishes

of Orleans, St. Bernard and Jefferson who sustained damage to their property following

Hurricane Katrina.  Plaintiffs allege that they purchased homeowners insurance from the insurers

named as defendants in this case.  (Doc. 516, Amended and Restated Complaint, ¶¶ 26, 27, 44).

Plaintiffs claim that they suffered water damage resulting from the "catastrophic events"

of Hurricane Katrina (*Id.* ¶¶ 41-44) which left "approximately 80% of Orleans Parish . . . under

water . . . ." (*Id.* ¶ 45).  Plaintiffs allege that, on August 29, 2005, "there was water on both sides

of the Industrial Canal in New Orleans" and that "there was six to eight feet of water in the

City's Lower Ninth Ward," as a result of a breach in the Industrial Canal levee wall.  (*Id.* ¶¶ 41,

42) . Plaintiffs further state that "the levees around the City and adjoining parishes failed in at

least eight (8) distinct locations, including the 17th Street, London Avenue and Industrial

Canals," and that Plaintiffs suffered damage to their property as a result of these events.  (*Id.* ¶¶

43-45).

Plaintiffs allege that the cause of the levee failures was "negligent design, negligent

maintenance and/or inadequate materials," and that "any damages attributable to the levee

failures are the result of improper and/or negligent design, construction, maintenance of the

levees by various third parties and or third party negligence." (*Id.* ¶¶ 46-50).  Plaintiffs also

assert that high winds and storm surge contributed to levee failures and the resulting water

damage to each individual plaintiff's property.  (*Id.* at pp.17-18).

61

Plaintiffs acknowledge that their policies contain water damage exclusions that ostensibly exclude coverage for "floods" and allege that "the reasonable expectations of Louisiana policyholders is that 'flood' encompasses overflowing of the Mississippi River, accumulation of surface water due to heavy rainfalls, or similar phenomena but not the failing of virtually all man-made structures containing navigable Waters of the United States. . . due to negligent conduct beyond " beyond plaintiffs' control. (*Id.* ¶ 61)  Plaintiffs contend that these water exclusions should not be given such a broad reading so as to disallow coverage under the circumstances alleged in the Amended and Restated Complain. (*Id.* ¶ 60).  They maintain that Plaintiffs' "reasonable expectation" was that their homeowners policies would provide coverage for the type of flooding that occurred after Hurricane Katrina. (*Id.*)

The Complaint alleges five counts. Count I seeks a five-part declaratory judgment from this Court. (*Id.* ¶ 58)  Specifically, Plaintiffs seek a declaratory judgment that:

(1)     "The first efficient proximate cause of the losses . . . was **'windstorm,'** a covered peril . . . thereby rendering any subsequent *impact from water* released by the levee and/or levee wall failures irrelevant to coverage";

(2)     "The second efficient proximate cause of the losses *resulting from water entering the City of New Orleans* and adjoining parishes . . . were acts of **negligence"**;

(3)     "The third efficient proximate cause of the losses *resulting from water entering the City of New Orleans* and adjoining parishes . . . was **storm surge**, a known meteorological phenomenon that is not specifically excluded" by the Policies;

62

(4)     "The **breaking or failure of boundaries of** lakes, reservoirs, rivers, streams, or other **bodies of water** was a peril not specifically excluded" by the Policies;

(5)     "The **damage caused by water** entering the City of New Orleans and adjoining parishes . . . due to the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere neither falls within the regular definition of 'flood,' nor within any of the subject insurance policies' exclusions of 'flood.'"

(*Id.* at pp. 17-18 (emphasis added)).

Count II alleges a breach of contract claim based on the Moving Defendants' failure to pay for water damage caused by flooding allegedly resulting from the "efficient proximate cause of windstorms, storm surge and/or negligence." (*Id.* ¶ 68)

Finally, Plaintiffs also assert extra-contractual claims based on the Moving Defendants' alleged improper denial of Plaintiffs' water damage claims. These claims are based on allegations that the Moving Defendants: (1) wrongfully denied coverage by "equating" losses caused by wind, negligence and storm surge "with flood" (Count 3); (2) "misrepresented" that the policies' Water Damage Exclusion applied to Plaintiffs' claims "without a legitimate basis" for doing so (Count IV); and (3) directed their adjusters to "consider only nearby waterlines and to ignore all other evidence in determining whether Policyholders' losses are covered . . ." in violation of La. R.S. 22:658.2(A)(1) (Count V). (*Id.* ¶ ¶ 85, 87-88, and 90; *Id.* ¶ ¶ 73-74 and 76-77) La. R.S. 22:658.2(A)(1), which became effective on February 23, 2006, provides that "[n]o

63

insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."

## II.    Motions Filed

Based on substantially the same arguments set forth in the *Vanderbrook* matter, each of the named insureds has filed, either jointly or individually, depending on the language of their respective policies, the Motions to Dismiss noted above.  In approaching these arguments, the Court re-urges and adopts herein Section I of the *Vanderbrook* opinion–that is "I.  The Civilian Approach as an Erie Court" and "III. Standard for Judgment on the Pleadings."  Furthermore, the Court will not address any arguments made with respect to the extra-contractual claims brought by plaintiffs.  The Court intends to resolve the insurance coverage issues addressed in these consolidated cases and certify the matter to the United States Court of Appeals for the Fifth Circuit.  It would be premature and a distraction to approach the extra-contractual issues at this juncture.  Thus, the motions in this respect will be denied without prejudice to be re-urged at the appropriate time.

The Court will now examine each motion filed, not in numerical order, but in order of scope.

III.    **Policy Language and the Motions to Dismiss**

      A.    **Insurers Using ISO Policy Language–Motion to Dismiss Doc. No. 932**

The policies issued by The Standard Fire Insurance Company, Lexington Insurance Company, Liberty Mutual Fire Insurance Company, The American Insurance Company, Aegis Security Insurance Company, Auto Club Family Insurance Company and the Hanover Insurance Company and Lafayette Insurance Company (hereafter "ISO defendants") are identical but for one exception.    The Auto Club Family Insurance Company policy issued to Randy and Lori Gervais (INS 88 THROUGH INS 000121) does not contain the "weather conditions" and "faulty, inadequate or defective; design and maintenance exclusions, so the arguments made in that respect are not applicable to them.    The Court will address the subject motion in relation to the policy provisions upon which these ISO defendants rely.

      1.    **Water Damage Exclusion**

The ISO water damage exclusion provides:

(1)    We do not insure for loss **caused directly or indirectly by any of the following.** Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

      **(c) Water Damage**, meaning:

            Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(Doc. 932 Appendix of Moving Defendants at INS 11, INS71, INS 110, INS 155, INS 199, INS 357, INS 406 AND INS 458.)  Based on this language, the ISO defendants maintain that there is no coverage.  For the same reasons assigned in the *Vanderbrook* opinion above, in particular,

65

IV.    Legal Concepts for Contract Interpretation;

VI.    Parties' Contentions;

VII.   Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable
       Interpretations of the Term;

VIII.  Jurisprudence Further Demonstrates Reasonableness of Alternative
       Interpretations;

IX.    Application of Legal Principles to the Policies Before the Court; and

       A.      ISO Water Damage Exclusion,

the Court reiterates and adopts those findings and reasoning and finds this exclusion ambiguous

and as such, interprets the provision in favor of the insured. Thus, the Motion to Dismiss with

respect to the Water Damage Exclusion will be denied.


### 2.    Weather Conditions Exclusion

The ISO defendants then urge that the Weather Conditions Exclusion reinforces the legal

inadequacy of the plaintiffs' theory. That clause provides:

> We do not insure for loss to property described in Coverage A and B caused by
> any of the following. . .
>
> **a. Weather conditions.** However, this exclusion only applies if weather
> conditions contribute in any way with a cause or event excluded in paragraph 1. above
> [which includes the Water Damage Exclusion ] to produce the loss.

(INS 0011, INS 0071, INS 00110, INS 00155, INS 00199, INS 00318, 8NS 358, INS 00406, and

INS 00458). As the Court finds that the Water Damage Exclusion does not exclude coverage for

water damage caused by the negligent or intentional acts of man, this provision is without force

in this instance by its own terms, and the motion must be denied in this respect.

66

### 3.    Negligent Design, Construction or Maintenance

The ISO defendants also urge the following language should prevent coverage from

attaching:

Section 1–Exclusions
2.      We do not insure for loss to property described in Coverages A and B caused by
any of the following.  **However, any ensuing loss to property described in Coverages
A and B not excluded or excepted in this policy is covered.**

   . . .

     b.      **Acts or decisions,** including the failure to act or decide, of any person,
group, organization or governmental body;

     c.      **Faulty, inadequate or defective**:

       (1)      Planning, zoning, development, surveying, siting;

       (2)      Design, specifications, workmanship, repair, construction,
renovation, remodeling, grading, compaction;

       (3)      Materials used in repair, construction, renovation or remodeling;
or

       (4)      Maintenance;

       of part or all of any property whether on or off the "residence premises."

(INS 0011, INS 0071, INS, 00110, INS 00155, INS 00197, INS 00318, INS 00358, INS 00406,

and INS 00458) (emphasis added).  As there is an ensuing loss provision in this section, again

for the specific reasons stated above in Section IX.A.3. of the *Vanderbrook* opinion, the Court

rejects this argument and will deny the motion.

### 4.  Plaintiffs' Extra-Contractual Claims Fail As a Matter of Law

As stated above, the Court finds the relief sought by defendants to be premature, and the

motion will be denied without prejudice for these arguments to be re-urged at the appropriate

time.

Thus, the Motion to Dismiss (Doc. 932) filed by the ISO defendants will be denied.

67

**B.**     **Allstate Insurance Company and Allstate Indemnity Co.'s Motion to Dismiss (Doc. 939)[20]**

The Court will now examine the policy language of the Allstate policies in light of its

Motion to Dismiss.

**1.     Water Damage Exclusion**

Allstate relies on the following policy language to exclude coverage for the relevant plaintiffs.

**Losses We Do Not Cover Under Coverages A and B:**

We do not cover loss to the property described in Coverage A–Dwelling Protection or Coverage B–Other Structures Protection consisting of or caused by:

1.     Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2.     Water or any other substance that backs up through sewers or drains.

3.     Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4.     Water or any other substance on or below the surface of the ground, regardless of its source.  This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

(Exhibit A to Motion, ALST 00230-00231).With respect to  Section 1above, for all of the

reasons stated heretofore in the *Vanderbrook* opinion above, in particular,

IV.     Legal Concepts for Contract Interpretation;

VI.     Parties' Contentions;

VII.     Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable Interpretations of the Term;

VIII.     Jurisprudence Further Demonstrates Reasonableness of Alternative Interpretations;

---

[20]Allstate filed a Motion for Judgment on the Pleadings in October 31, 2005, prior to this matter being transferred from the United States District Court for the Middle District of Louisiana to this Court and in reference to the Original Petition and First Supplemental and Amending Petition.  Considering the filing of the Amended and Restated Complaint filed in this Court on June 2, 2006, that motion is **DENIED** as **MOOT.**

IX.    Application of Legal Principles to the Policies Before the Court; and
     A.    ISO Water Damage Exclusion,

the Court again finds this exclusion ambiguous and as such, interprets the provision in favor of

the insured. As such, the Motion to Dismiss with respect to the Water Damage Exclusion will be

denied.

     Likewise Losses Not Covered Sections 2, 3 and 4 above do not exclude with specificity

damages caused by water the presence of which was caused by the negligent or intentional acts

of man which is the gravamen of plaintiffs' claims. Obviously, in the event that there is proof

adduced with respect to an individual claim that the actual cause of the damage to that

individual home was actually caused by the types of occurrences described in these exclusions,

then a finder of fact could find these exclusions to be operative. However, in the context of a

Motion to Dismiss, this Court cannot and will not find as a matter of law find that these

exclusions are not ambiguous and clearly exclude coverage for damage allegedly caused by the

failed levee system caused by the negligent or intentional acts of man.

     With respect to Section 4, from the case law examined concerning this particular

exclusion, it does not appear that this exclusion is meant to address water damage caused by

negligence of the kind alleged in *Chehardy. See West v. Umialik Ins. Co.*, 8 P.3d 1135 (Ala.

2000); *Hudson v. Allstate Ins. Co.*, 25 A.D.3d 654 (N.Y. S.Ct. App. 2nd 2006); *Carver v. Allstate

Ins. Co.*, 76 S.W. 3d 901 (Ark. App. 2002). Furthermore, the term "no matter the source" does

not address causation, rather it addresses the a location from where the water might emanate. As

such and again for all of the reasons stated in *Vanderbrook,* the motion in this respect will be

denied.

69

2.     **Planning, Construction or Maintenance**

Allstate further relies on the following language which is in the same section noted

above, that is the "Losses We Dot Not Cover Under Coverages A and B" which provides that it

does not cover losses caused by:

22.     Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
  (a)     planning, zoning, development, surveying, siting;
  (b)     design, specifications, workmanship, repair construction, renovation, remodeling, grading, compaction;
  (c)     material used in repair, construction, renovation or remodeling; or
  (d)     maintenance;

  of property whether on or off the residence premises by any person or organization.

(Exhibit A to Motion, ALST 00232).  Again, this exclusion does not clearly exclude man-made

failures with respect to levees which is at the core of the *Chehardy* pleading.   Although the

Allstate provision does not have an ensuing loss provision like the one contained in the ISO

policy, this exclusion would appear to apply only to defalcations which occur whether on or off

the residence premises with respect to the construction or design, and the like, of the insured

premises or for property insured but not on the insured premises.  Therefore, the omission of the

ensuing loss provision is irrelevant to the facts as plead herein.  *See e.g. Holland v. Breaux*,

2005 WL 3542899 (E.D.La. Nov. 22, 2005) (Africk, J.); *Angott v. Great Northern Ins. Co.*, 2006

WL 1328874 (E.D. Mich. May 15, 2006); *Wright v. Safeco Ins. Co. of America*, 2004 WL

2095664 (Wash. App. Div. 1 Sept. 1, 2004).   Again for all of the reasons cited with respect to

what is required for an exclusion to an all-risk policy to be unambiguous and enforceable found

in *Vanderbrook*, this exclusion fails.

70

3.    **Storm Surge in Section 1of Exclusion for Flood**

Allstate also reiterates the language contained in Section 1[21] of the losses not covered and

cites to *Tuepker v. State Farm*, 2006 WL 1442489 (S.D. Miss. May 24, 2006) to urge that

because"storm surge" was clearly excluded, there should be no coverage. This case is inapposite

to the one before the Court because in *Tuepker*, naturally occurring  storm surge was the cause of

loss along the  Mississippi Gulf Coast.  There was no levee failure involved; this argument is

irrelevant to the *Chehardy* allegations.


4.    **Weather Conditions**

Allstate also relies on Exclusion Section 21 which provides that Allstate does not cover

loss to the insured property caused by "weather conditions that contribute in any way with a

cause of loss excluded in this section to produce a loss."  (Exhibit A, ALST 00232).  Again, as

the Court has found that the Water Damage Exclusions are inapplicable, this exclusion has no

effect as the loss is not excluded by the "Losses We Do Not Cover" provisions.


5.    **Hurricane Deductible Endorsement**

Allstate argues in its opposition to the *Chehardy* motion, "Plaintiffs also have argued that

their homeowner policy covers flood damage because of a Hurricane Deductible Endorsement."

While this allegation in the *Chehardy* pleadings alludes the Court, the Court concurs that any

---

[21]     "Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of
water, or spray from any of these, whether or not driven by wind"

71

Hurricane Deductible Endorsement contained in a policy does not increase coverage provided to a homeowner or insured. Rather it generally increases the applicable deductible for covered losses caused by a hurricane. As such, the Court finds that such an endorsement does not increase the coverage conferred by the policy in question.

### 6.      Plaintiffs' Extra-Contractual Claims Fail As a Matter of Law

As stated above, the Court finds the relief sought by Allstate to be premature considering the posture of the case, and the motion will be denied without prejudice for it to be re-urged at the appropriate time.

Thus, Allstate Insurance Company and Allstate Indemnity Co.'s Motion to Dismiss (Doc. 939) will be denied.

### C.      State Farm's Motion to Dismiss (Doc. 1037)

State Farm moves for the dismissal of Count One of the Complaint for Declaratory Relief and Count Two for Breach of Contract based on the same exclusions previously discussed in the *Vanderbrook* opinion.

The State Farm policies provide that "We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I-LOSSES NOT INSURED." The policies then provides:

> SECTION I -LOSSES INSURED
> Coverage A-Dwelling

72

We insure for accidental direct physical loss to the property described in
Coverage A, except as provided in Section I–LOSSES NO INSURED.

SECTION I - LOSSES NOT INSURED

2.       We do not insure under any coverage for loss which would not have
occurred in the absence of one or more of the following excluded events.  We do
not insure for such loss **regardless of: (a) the cause of the excluded event**; or
(b) other causes of the loss; or (c) whether other causes acted concurrently or in
any sequence with the excluded event to produce the loss; or (d) whether the
event occurs suddenly or gradually, involves isolated or widespread damage,
arises from natural or external forces, or occurs as a result of any combination of
these:

c.       (1) flood, surface water, waves, tidal water, overflow of a body of water, or
spray from any of these all whether driven by wind or not;

(Doc. 570, Exhibit A and B, pp. 7 and 10) (emphasis added).

For the reasons previously assigned in *Vanderbrook*, in particular Sections:

IV.     Legal Concepts for Contract Interpretation;

VI.     Parties' Contentions;

VII.    Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable
        Interpretations of the Term;

VIII.   Jurisprudence Further Demonstrates Reasonableness of Alternative
        Interpretations;

IX.     Application of Legal Principles to the Policies Before the Court; and

        A.      ISO Water Damage Exclusion and

        B.      State Farm Policy's "lead-In Provision,

State Farm's Motion to Dismiss (Doc. 1037) will be granted and Counts One and Two of the

*Chehardy* Amended and Restated Complaint will be dismissed as to State Farm.  This provision

clearly excludes flood damage "no matter the cause" which clearly includes both natural and

man-made "causes."  As previously stated, the Court will not address the extra-contractual relief

sought at this time, and the motion will be denied in that respect without prejudice, to be re-urged at the appropriate time.

**D.    Louisiana Citizens Property Insurance Corp.–Motion to Dismiss Doc. 903**

Louisiana Citizens Property Insurance Corporation ("LCPIC") filed a motion which adopts the memoranda filed by the ISO defendants, State Farm and Allstate.  This defendant did not explain or provide the Court with which provisions of its own policy upon which it relies in order to ride on these memoranda's coattails.  From a review of the insurance policy, it appears that it tracks the language of the ISO defendants' policy–in particular the Water Damage Exclusions, the Weather Condition Exclusion and the Faulty, Inadequate or Defective Acts Exclusion.  As such, for the reasons stated in *Vanderbrook* and the reasons reiterated above with respect to the ISO defendants' policy,  LCPIC's Motion to Dismiss (Doc. 903) will be denied.

**E.  Encompass Indemnity Company's  Motion to Dismiss**  (Doc. 923)

Encompass Indemnity Company ("Encompass") filed its Motion to Dismiss and Incorporated Memorandum and adopted (1) Allstate's arguments, (2) the ISO defendants' arguments as well (3) State Farms' arguments.  In its memorandum, this defendant does not specify what language within the Encompass policy upon which it relies in this instance.  It would appear that the policy tracks the Allstate policy in some regards as well as the ISO defendants' policies.  As best as this Court can ascertain, Encompass relies on the following language:

1.     **Water Damage Exclusion**

In a section entitled "LOSSES WE DO NOT COVER" at ALST 00176 of Exhibit A to

the subject motion it states:

> We do not insure for loss caused directly or indirectly by any of the following.  such loss is
>
> excluded regardless of any other cause or event contributing concurrently or n any
>
> sequence to the loss.

> 1.     **Real Property and Tangible Personal Property.**  We do not insure for
>        loss:
>
>        a. caused by water damage, meaning:
>
>        1.     Flood, including, but not limited to surface water,
>               waves, tidal water or overflow of any body of
>               water, or spray from any of these, whether or not
>               driven by wind;
>
>        2.     Water which backs up through sewers or drains;
>
>        3.     Water below the surface of the ground including water
>               which exerts pressure on, or seeps or leaks through a
>               building, sidewalk, driveway, foundation, swimming pool
>               or other structure; or
>
>        4.     Water emanating from a sump pump, sump pump
>               well or similar device designed to prevent
>               overflow, seepage or leakage of subsurface
>               water.

> Direct loss by fire explosion or theft resulting from water damage is covered.

ALST 00177.  This water exclusion has neither the lead-in language of State Farm's policy nor

the same wording as that of the Allstate policy.  It is most like the ISO policy and for all the

reasons stated in the foregoing *Vanderbrook* and the *Chehardy* opinion to this point, the Court

will deny the motion to dismiss as it pertains to the applicability of the Water Damage Exclusion.

Only Section 1 would be arguably applicable by operation of the facts in the instant matter, and

the reasons given for the denial of the ISO provisions with respect to the Water Damage

Exclusion operate equally in this instance.


### 2. Other Exclusions

The other provisions that would apparently mirror the arguments made in the other briefs

noted are found at Section 2. of the LOSSES WE DO NOT COVER portion of the policy which

states:

> 2.    Real Property.  We do not insure for loss:
>
> . . .
>
> g.    To covered real property caused by any of the following.  **However, any ensuing loss not excluded or excepted in this policy is covered.**
>> (1)   Weather conditions.  However, this exclusion applies only if weather conditions contribute in any way with a cause on (sic) event otherwise excluded to produce the loss.
>> (2)   Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.
>> (3)   Faulty, inadequate or defective:
>>> (a)   Planning, zoning, development, surveying, siting;
>>> (b)   Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>>> (c)   materials used in repair, construction, renovation or remodeling; or
>>> (d)   Maintenance;
>> of part or all of any property whether on or off your residence premises.

(ALST 00178-79)(emphasis added). Considering the ensuing loss provision above, the Court

likewise for all of the reasons stated previously finds that these exclusions do not operate to

exclude coverage for the damages sought in *Chehardy* with respect to losses from water damage.

Again, the Court will deny the motion insofar as it seeks any dismissal of any extra-

contractual issues as premature.  Thus, the Encompass Indemnity Company's Motion to Dismiss

(Doc. 923) will be denied.


**F.      Great Northern Insurance Company's Motion to Dismiss** (Doc. 936)

Great Northern adopted the Motion to Dismiss of Allstate and relies on the following

specific policy language contained in its policy as concerns its argument with respect to the Water

Damage Exclusion:

> EXCLUSIONS
> These exclusion apply to your Deluxe House Coverage, including the Extra Coverages,
> unless stated otherwise.
>
> The words "caused by" mean any loss that is contributed to, made worse by, or in any way
> results from that peril.
> . . .
> **Surface water.**  We do not cover any loss caused by:
> •flood, surface water, waves, tidal water, or water borne material from any of these;
> •overflow of water or water borne material from a body of water;
> •run off of water or water borne material from a paved surface, driveway, walkway, patio, or
> other similar surface; or
> •spray from any of these,
> from any source, even if driven by wind.  But we do insure ensuing covered loss unless
> another exclusion applies.


(Exhibit A, CH-FOR-020 and Exhibit B CH-BAR-018.)      This exclusion again does not clearly

exclude water damage caused by negligent or intentional acts of man.  It does not address the

ambiguity of the term "flood" and the fact that all of the listed "causes" appear to be the result of

natural occurences, not the monumental civil engineering debacle that is alleged by plaintiffs.

For the reasons assigned in *Vanderbrook* and in the previous sections dealing with ISO and

Allstate's motions in *Chehardy,* the Court finds that the Motion to Dismiss based on this

exclusion is without merit.

As to the Faulty Planning, Construction or Maintenance, the following language appears

in the same Exclusion section as above:

> These exclusion apply to your Deluxe House Coverage, including the Extra Coverages,
> unless stated otherwise.
>
> The words "caused by" mean any loss that is contributed to, made worse by, or in any way
> results from that peril.
>
> . . .
>
> **Faulty planning, construction or maintenance.** We do not cover any loss caused by the
> faulty acts, errors or omissions of you or any other person in planning, construction or
> maintenance. It does not matter whether the faulty acts, errors or omissions take place on
> or off the insured property.  **But we do insure ensuing covered loss unless anther
> exclusion applies.** "Planning" includes zoning, placing, surveying, designing, compacting,
> setting specifications, developing property and establishing building codes or construction
> standards. "Construction" includes materials, workmanship, and parts or equipment used
> for construction or repair.

(Exhibit A, CH-FOR-021 and Exhibit B CH-BAR-019.) (emphasis added).  Again, for all the

reasons previously assigned in *Vanderbrook* and *Chehardy* with respect to this exclusion, as the

damage would be considered loss from a covered peril based on the previous analysis, this

provision does not operate to deny the insureds coverage.

Likewise, all other arguments raised as to "windstorm," "storm surge" and the

applicability of the anti-concurrent clause are likewise rejected for the reasons stated heretofore in

*Vanderbrook*.  Finally, as noted, the Court will deny the motion insofar as it seeks the dismissal of

the extra-contractual claims.  The Court will deny that portion of the Motion to Dismiss without

prejudice for it to be re-urged at the appropriate time.  Thus, the Great Northern Insurance

Company's Motion to Dismiss(Doc. 936) will be denied.  Accordingly,

**IT IS ORDERED** with respect to:

Doc. 903     the Motion to Dismiss filed by Louisiana Citizens Property Insurance Corp is
**DENIED.**

Doc. 923     the Motion to Dismiss filed by Encompass Indemnity Company is **DENIED.**

Doc. 932     Consolidated Rule 12(B)(6) Motion to Dismiss Plaintiffs' Amended and Restated
Complaint filed by Defendants The Standard Fire Insurance Company, Lexington
Insurance Company, Liberty Mutual Fire Insurance Company, The American
Insurance Company, Aegis Security Insurance Company, Auto Club Family
Insurance Company,[22] the Hanover Insurance Company and Lafayette Insurance
Company is **DENIED.**

Doc. 936     Motion to Dismiss Plaintiff's Amended and Restated Complaint filed by Great
Northern Insurance Company is **DENIED.**

Doc. 939     Motion to Dismiss Pursuant to Rule 12(b) filed by Allstate Insurance Company,
Allstate Indemnity Company is **DENIED.**

Doc. 1037    Motion to Dismiss Plaintiffs' Amended and restated Complaint filed by State Farm
Fire and Casualty Company is **GRANTED with respect to coverage and
DENIED in part,** that is with respect to the extra-contractual claims of plaintiffs.


**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**THIS ORDER PERTAINS TO:**


**KELLY A. HUMPHREYS**                                          **CIVIL ACTION**

**VERSUS**                                                      **NO. 06-0169**

---

[22]This company was named as AAA Homeowners Auto Club in the Amended Complaint.

**ENCOMPASS INSURANCE COMPANY, ET AL.**                    **SECTION K(2)**

## ORDER AND REASONS

Kelly A. Humphreys ("Humphreys") filed a Motion for Partial Summary Judgment seeking coverage for wind and flood damages caused by Hurricane Katrina. (Doc. 39).   Having held oral argument on this matter on October 27, 2006, and having reviewed the pleadings, exhibits, memoranda and the relevant law, the Court will rule in conformity with the prior decisions rendered herein in the *In re Katrina Canal Breaches Consolidated Litigation* with respect to *Vanderbrook, Xavier and Chehardy.* The Court adopts and considers this motion in conformity with Section I of the *Vanderbrook* opinion entitled "The Civilian Approach as an *Erie* Court" and Section I of the *Xavier* opinion entitled "Standard for Summary Judgment Motion." The Court will first review the pleadings herein.

### I.       Procedural History and Allegations of Petition

The petition was initially filed in Civil District Court for Parish of Orleans and after the Orleans Levee District was added, the suit was removed to the United States District Court for the Eastern District of Louisiana on January 13, 2006.  It was eventually transferred to this section of Court, where the Court  granted a Motion to Sever the Orleans Levee District from this matter and remanded that party to state court leaving only Encompass as a litigant.

Plaintiff alleges that her property suffered damage as a result of the 17th Street Canal levee breach. (Petition at IX-XI.)  Plaintiff purchased from Encompass a homeowner's policy of

80

insurance in which the summary notes that plaintiff paid an additional $409.00 for "Hurricane Peril Coverage." The declaration sheet notes a $1000.00 "Hurricane Deductible." Plaintiff sought damages under this policy for water damage, wind damage, bad faith claims, including but not limited to her claims under La. R.S. 22:658 and 22:1220. Humphreys also had purchased National flood Insurance Program ("NFIP") coverage from which she collected and is not the subject of suit. On June 12, 2006, a Rule 41 Stipulation of Partial Dismissal was filed notifying the Court that all of plaintiff's wind damage claims and her bad faith claims, including but not limited to her claims under La. R.S. 22:658 and 22:1220 had been compromised. Thus, the only issue remaining is whether her homeowners policy provides coverage for the water damage which she experienced as the result of the collapse of the 17th Street Canal floodwall.

## II. The Motion Before the Court

The thrust of plaintiff's motion focuses on the Hurricane Deductible Endorsement which she maintains takes precedence over policy language pursuant to La. Rev. Stat. 22:654 and the declaration sheet which states "Hurricane Coverage Peril." Plaintiff maintains that:

1.    By virtue of the Hurricane Peril Coverage/Hurricane Deductible endorsement," a hurricane is covered event.

2.    Flood and wind is characteristic of a hurricane storm event;

3.    Plaintiff has coverage for "windstorm," so why then did she purchase hurricane protection coverage; and

4.    Section 2 **Real Property** subsection g and g.(1) excludes weather conditions but states "ensuing loss," not excluded or exempted by tin the policy is covered.

As such, plaintiff contends that the ensuing loss, damage caused by Windstorm and Hurricane Peril Coverage and Hurricane Deductible Endorsement are ensuing losses that extended coverage by virtue of the endorsements to provide coverage for otherwise excluded perils, i.e. wind and flood waters caused by a hurricane.   In addition, plaintiff contends that these provisions create an ambiguity of the type noted in *Tuepker, supra,* and as such, a finding of coverage should ensue.

At oral argument, counsel for plaintiff also adopted the arguments of other counsel concerning the applicability of the Water Damage Exclusion.

### III.    Applicable Policy Provisions

The policy states in relevant part the following:

**COVERAGES**

**$1000 Hurricane Deductible (based on the residence value)**

**B. HURRICANE DEDUCTIBLE ENDORSEMENT**

We will pay only that part of the total of the loss for all Property Coverages that exceeds the hurricane deducible state on the Coverage Summary.  The hurricane deductible shown on the Coverage Summary applies to all covered property for direct physical loss or damage caused directly or indirectly by a hurricane as defined below.  Such deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss.  No other deducible provision in the policy applies to direct physical loss caused by a hurricane.  In no event will the deductible applied for a hurricane loss be less than the property deductible shown on the Coverage Summary.

Hurricane means wind, wind gust, hail, rain, tornado, cyclone or hurricane which result in direct physical loss or damage to property be a storm system that has been declared to be hurricane by the National Weather Service.  the duration of the hurricane includes the time period in your state:

82

A.  beginning at the time a hurricane watch or hurricane warning is issued for any part of the state by the National Weather Service;

B.  continuing for the time period during which the hurricane conditions exist anywhere in the state; and

C.  ending 12 hours following the termination of the last hurricane watch or hurricane warning for any part of your state by the National Weather se5rve.

All other provisions of this policy apply.


**REAL PROPERTY -COVERED PERILS**


We cover direct physical loss to property describe in **Real Property - Insuring Agreement,** unless the loss is not covered under **Property Coverage - Losses We Do Not Cover.**

. . .

**LOSSES WE DO NOT COVER**


The introductory paragraph is deleted and replaced by the following:


We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.  **However, coverage will be provided for any covered peril that precedes an excluded peril, occurs concurrently with an excluded peril, or occurs as a result of an excluded peril.**

(Exhibit "1E" amendment of G18733-H Required Coverage and amendments page 6 of 14.)

1.  **Real property and Tangible Personal Property**. We do not insure for loss:

   a.  Caused by water damage, meaning:

      (1)  Flood, surface water, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(Exhibit "1F" policy of Insurances page 11 of 23).

2.  **Real Property**. We do not insure for loss:

   g.  To covered real property caused by any of the following.  However, any ensuing loss not excluded or excepted in this policy is covered.

      (1)  Weather conditions.  However, this exclusion applies only if weather conditions contribute in any way with a cause on (sic) event otherwise excluded t produce the loss.

(Exhibit 1G, Page 13 of 23 of policy).

### III. Analysis

Plaintiff's contentions concerning the Hurricane Deductible are misplaced. This endorsement simply reduced the deductible that would normally be applicable from a percentage of the value of the house to a flat $1000.00. It does not create independent coverage. However, because of the ambiguity in the Water Damage Exclusion as previously discussed in *Vanderbrook, Xavier and Chehardy*, the Court finds it will grant the motion for partial summary judgment as the Water Damage Exclusion is ambiguous and must be construed against the insurer, and thus provides coverage for the insured herein. In so finding the Court reiterates and incorporates the *Vanderbrook* opinion above, in particular sections,

IV.     Legal Concepts for Contract Interpretation;

VI.     Parties' Contentions;

VII.    Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable Interpretations of the Term;

VIII.   Jurisprudence Further Demonstrates Reasonableness of Alternative Interpretations;

IX.     Application of Legal Principles to the Policies Before the Court; and

    A.     ISO Water Damage Exclusion.

Accordingly,

**IT IS ORDERED** that the Plaintiff's Motion for Partial Summary Judgment is **GRANTED** insofar as there is coverage as a result of the ambiguity in the Water Damage Exclusion and **DENIED** with respect to the Hurricane Deductible argument.

### CERTIFICATION FOR APPEAL

84

Pursuant to 28 U.S.C. § 1292(b), all orders entered herein involve a controlling question of law as to which there is a substantial ground for a difference of opinion and an immediate appeal from these orders may materially advance the ultimate termination of the litigation. In accordance with 28 U.S.C. § 1292(b), an application for appeal must be made to the Court of Appeals within ten days after the entry of this order.

The Court notes that if it had the power under Rule XII of the Rules of the Louisiana Supreme Court to certify the issues decided herein to that court, it would have done so, since there are no clear controlling precedents of the Louisiana Supreme Court on same and the issues presented and decided herein are significant and require an application of Louisiana law.

New Orleans, Louisiana, this __27th__ day of November, 2006.

                                   _____
                                   STANWOOD R. DUVAL, JR.
                                   UNITED STATES DISTRICT COURT JUDGE