No. 06 ⚡ 0 0 0 5 6

*U. S. COURT OF AP...*
*DEC 0 8 2006*
*NEW ORLEANS, L...*

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

## IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION

### XAVIER UNIVERSITY OF LOUISIANA,
**Plaintiff-Respondent**

*U. S. COURT OF APPEALS*
*FILED*
*DEC 0 8 2006*
*CHARLES R. FULBRUGE III*
*CLERK*

### VERSUS

### TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,
**Defendant-Petitioner**

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA
## CIVIL ACTION NOS. 05-4182, 06-0516
## Hon. Stanwood R. Duval, Jr., Presiding

## PETITION FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(b)
## BY TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Ralph S. Hubbard III, T.A.
Simeon B. Reimonenq, Jr.
Seth A. Schmeeckle
LUGENBUHL, WHEATON, PECK,
     RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990

Stephen E. Goldman
Wystan M. Ackerman
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone: (860) 275-8200

Attorneys for Travelers Property Casualty
Company of America

No. _____

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION**

**XAVIER UNIVERSITY OF LOUISIANA,**
**Plaintiff-Respondent**

**VERSUS**

**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,**
**Defendant-Petitioner**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA
### CIVIL ACTION NOS. 05-4182, 06-0516
**Hon.  Stanwood R. Duval, Jr., Presiding**

---

## PETITION FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(b)
## BY TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

---

Ralph S. Hubbard III, T.A.
Simeon B. Reimonenq, Jr.
Seth A. Schmeeckle
LUGENBUHL, WHEATON, PECK,
    RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:  (504) 568-1990

Stephen E. Goldman
Wystan M. Ackerman
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone:  (860) 275-8200

Attorneys for Travelers Property Casualty
Company of America

No. _____

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION

**XAVIER UNIVERSITY OF LOUISIANA,**
**Plaintiff-Respondent**

**VERSUS**

**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,**
**Defendant-Petitioner**

---

### <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies, pursuant to Fed. R. Civ. P. 26.1

and Fifth Circuit Rule 28.2.1, that the following have an interest in the outcome of

this case.  These presentations are made in order that the judges of this Court may

evaluate possible disqualification or recusal.

1.  Plaintiff Xavier University of Louisiana

2.  Counsel for Plaintiffs:  James M. Garner, Darnell Bludworth, Timothy B. Francis, Kevin M. McGlone, Sher, Garner, Cahill Richter Klein & Hilbert, L.L.C., New Orleans, Louisiana

3.  Defendant Travelers Property Casualty Company of America, a subsidiary of The St. Paul Travelers Companies, Inc.

4.  Counsel for Defendant Travelers Property Casualty Company of America: Ralph S. Hubbard, III, Simeon B. Reimonenq, Jr., Seth A. Schmeeckle, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, Louisiana

5. Counsel for Defendant Travelers Property Casualty Company of America: Stephen E. Goldman, Wystan M. Ackerman, Robinson & Cole LLP, Hartford, Connecticut

Simeon B. Reimonenq, Jr.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS .............................................. i

TABLE OF AUTHORITIES .......................................................................... v

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................... 2

        A.      Background ............................................................................... 2

        B.      The Water Damage Exclusion.................................................. 3

        C.      The District Court's Order and Reasons .................................. 4

III.    QUESTIONS PRESENTED ............................................................... 11

IV.     RELIEF SOUGHT.............................................................................. 12

V.      WHY THIS APPEAL SHOULD BE ALLOWED ............................ 12

        A.      This Questions Presented Clearly Satisfy the Standards for
                Review Under Section 1292(b)................................................ 13

                1.      The Proper Interpretation of the Water Damage
                        Exclusion is a Controlling Question of Law ................. 13

                2.      There is Substantial Ground for Difference of
                        Opinion With Respect to the District Court's
                        Ruling.............................................................................. 14

                3.      Allowing This Appeal Will Materially Advance
                        the Ultimate Termination of This Case .......................... 19

        B.      This Court Should Grant Leave to Appeal Because an
                Appellate Decision on the Question Presented Will Aid
                the Resolution of Thousands of Other Hurricane Katrina
                Lawsuits................................................................................... 19

VI.     EXPEDITED TREATMENT OF THIS APPEAL IS
        APPROPRIATE.................................................................................. 20

VII.   CONCLUSION.....................................................................................20

CERTIFICATE OF SERVICE .....................................................................22

## **EXHIBITS**

District Court's Order and Reasons................................................................ A

Excerpts of Transcript of Oral Argument, Oct. 27, 2006  ............................B

# TABLE OF AUTHORITIES

## CASES

American Guar. & Liab. Ins. Co. v. 1906 Co.,
129 F.3d 802 (5th Cir. 1997) ................................................... 14

American Marine Underwriters, Inc. v. Holloway,
826 F.2d 1454 (5th Cir. 1987) ................................................. 13

Bartlett v. Cont'l Divide Ins. Co., 697 P.2d 412 (Colo. Ct. App. 1984),
aff'd, 730 P.2d 308 (Colo. 1986).............................................. 18

Berthelot v. Boh Bros. Const. Co., L.L.C.,
431 F. Supp. 2d 639 (E.D.La. 2006).......................................... 6

Boudreaux v. Dep't of Transp. & Dev.,
690 So. 2d 114 (La. App. 1 Cir. 1997) ..................................... 16

Brown v. Bullock, 294 F.2d 415 (2d Cir. 1961)............................. 19

Buente v. Allstate Prop. & Cas. Ins. Co.,
2006 WL 980784 (S.D. Miss. Apr. 12, 2006) ...................... 6, 18

Cadwallader v. Allstate Ins. Co., 848 So. 2d 577 (La. 2003) ................. 10, 16

Casey v. Gen. Accident Ins. Co.,
578 N.Y.S.2d 337 (N.Y. App. Div. 1991)................................. 19

Clade v. Stone Ins., Inc., 2006 WL 2366373 (E.D. La. Aug. 14, 2006)......... 6

Coleman v. School Bd., 418 F.3d 511 (5th Cir. 2005) ................................... 9

Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863 (1994) ............. 12

Dobson v. Allstate Ins. Co.,
2006 WL 2078423 (E.D. La. July 21, 2006) ......................... 5, 17

E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.,
444 N.Y.S.2d 321 (N.Y. App. Div. 1981)................................. 18

Egle v. Allstate Ins. Co., 889 So. 2d 413 (La. App. 3 Cir. 2004)................. 13

Florida E. Coast Ry. Co. v. United States,
    519 F.2d 1184 (5th Cir. 1975) ................................................. 15

Front Row Theatre, Inc. v. American Mfr. Mut. Ins. Cos.,
    18 F.3d 1343 (6th Cir. 1994) .................................................. 18

Gleason v. Nuco, Inc., 774 So. 2d 1240 (La. App. 1 Cir. 2000) ................. 16

Hadjipateras v. Pacifica, S.A., 290 F.2d 697 (5th Cir. 1961) ....................... 13

In re Ingram Barge Co., 435 F. Supp. 2d 524 (E.D. La. 2006) .................. 1, 6

Johnson v. Burken, 930 F.2d 1202 (7th Cir. 1991) ...................................... 13

Kane v. Royal Ins. Co., 768 P.2d 678 (Colo. 1989) ............................... 11, 18

Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave
    Achille Lauro in Amministrazione Straordinaria,
    921 F.2d 21 (2d Cir. 1990)........................................................ 13

La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,
    630 So. 2d 759 (La. 1994) ..................................................... 9, 10

Morehead v. Allstate Ins. Co., 406 F.2d 122 (5th Cir. 1969) ....................... 15

Pakmark Corp. v. Liberty Mut. Ins. Co.,
    943 S.W.2d 256 (Mo. Ct. App. 1997)........................................ 18

Pracht v. City of Shreveport, 830 So. 2d 546 (La. App. 2 Cir. 2002) .......... 15

Principal Health Care of La., Inc. v. Lewer Agency, Inc.,
    38 F.3d 240 (5th Cir. 1994) .................................................... 13

Roberts v. Murphy Oil Corp., 577 So. 2d 308 (La. App. 4 Cir. 1991)......... 16

Saden v. Kirby, 660 So. 2d 423 (La. 1995) ................................................. 15

Smith Lupo Williams Partners v. Carter,
   2006 WL 2548255 (E.D. La. Aug. 31, 2006) ............................................ 5

St. Paul Fire & Marine Ins. Co. v. Valentine,
   665 So. 2d 43 (La. App. 1 Cir. 1995) ....................................................... 9

State v. All Property & Cas. Ins. Carriers,
   2006 WL 2498196 (La. Aug. 25, 2006) ..................................................... 5

Summerville v. Missouri Pac. R.R. Co.,
   509 So. 2d 639 (La. App. 3 Cir. 1987) ..................................................... 16

Sunshine Motors, Inc. v. New Hampshire Ins. Co.,
   530 N.W.2d 120 (Mich. Ct. App. 1995) ................................................... 18

Sweeney v. City of Shreveport,
   584 So. 2d 1248 (La. App. 2 Cir. 1991) ................................................... 17

TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.,
   114 F.3d 731 (8th Cir. 1997) ................................................................. 18

Team Envtl. Servs., Inc. v. Addison, 2 F.3d 124 (5th Cir. 1993) ................. 17

Travelers Indem. Co. v. Powell Ins. Co.,
   1996 WL 578030 (E.D. La. Oct. 4, 1996) ............................................... 17

## STATUTES

28 U.S.C. § 1292(b) ................................................................. 2, 12

La. Civ. Code § 2047 ......................................................... 1, 5, 6, 9

La. Civ. Code § 2052 ................................................................. 9

La. Rev. Stat. §§ 22:658 ............................................................ 3

## I.    INTRODUCTION

The fundamental question of law in this case is whether the inundation of Plaintiff Xavier University of Louisiana's ("Xavier") property at the time of Hurricane Katrina constitutes a "flood" as that term is used in a property insurance policy issued by Defendant Travelers Property Casualty Company of America ("Travelers").  In answering that question, Judge Duval of the Eastern District of Louisiana recognized that "everybody is referr[ing] to this as a flood."[1]  Judge Duval also acknowledged that the Louisiana Civil Code requires that "[t]he words of a contract must be given their generally prevailing meaning."[2]  Judge Duval, however, then made a fundamental legal error by failing to follow this basic requirement of the Louisiana Civil Code and ruling that the "flooding that ravaged New Orleans"[3] was not a "flood" if caused by human act or omission.

The generally prevailing meaning of the word "flood" is an inundation of ordinarily dry land.  Although Judge Duval does not appear to have disagreed with that proposition, he disregarded the requirements of Louisiana law and found that because there was more than one dictionary definition of the word "flood," he was compelled to apply the most restrictive definition in the dictionary.  Judge Duval then ruled that the word "flood" should be construed as limited to a "natural" event

---

[1] Transcript of Oral Argument, Oct. 27, 2006 (hereinafter, "Trans."), at p. 45 (Exhibit B hereto).
[2] La. Civ. Code § 2047.
[3] In re Ingram Barge Co., 435 F. Supp. 2d 524, 525 (E.D. La. 2006) (Berrigan, C.J.).

in some insurance policies, but not others.  In Judge Duval's view, whether the damage to Xavier's property was caused by "flood" within the meaning of the policy will depend on what caused the levees to fail.  This ruling defies common sense, distorts Louisiana principles of contract interpretation, and is contrary to well-established precedent.

Recognizing that "the potential impact of [this] decision on individuals as well as the insurance industry might be considered overwhelming," Judge Duval certified his Order granting in part Xavier's motion for summary judgment, along with similar orders in other cases, for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[4]  Travelers now seeks leave to appeal.  This Court should grant leave to appeal because the question presented involves a controlling question of law of great importance in numerous cases.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Background

Travelers issued a commercial property insurance policy (hereinafter, the "Policy") to Xavier that was in effect when Hurricane Katrina struck on August 29, 2005.  Ord., 56.  Following the hurricane, Xavier made a claim for damage to its property, some of which was caused by floodwaters and some of which was caused by the hurricane winds.  Id.  On February 2, 2006, Xavier filed suit against

2

Travelers, alleging that Travelers had improperly delayed in adjusting the claim, and asserting claims for breach of contract and violation of La. Rev. Stat. §§ 22:658 and 22:1220.  Compl., ¶¶ 24-29.

In August of 2006, Xavier moved for partial summary judgment, seeking a ruling that the Policy provides coverage for "damages to Xavier's campus following Hurricane Katrina [that] were caused by ground water which came from the collapses of the 17th Street Canal and the London Avenue canal levees . . . ." Motion for Partial Summary Judgment, at 1.  Xavier admitted that its buildings were "inundated with several feet of ground water" as a result of a large-scale "spread of ground water that eventually covered approximately 80% of the city, including Xavier's campus."  Xavier Memo. in Support of Motion for Partial Summary Judgment, at 2, 4.  Xavier argued, however, that the Policy's exclusion for "flood" did not apply because the levee breaches on the 17th Street Canal and London Avenue Canal were caused by "man-made causes, not natural causes."[5]

## B.    The Water Damage Exclusion

The Policy contains the following exclusion for water damage (hereinafter, "Water Damage Exclusion"):

---

[4] District Court's Order and Reasons ("Ord."), dated Nov. 27, 2006, at 4, 85 (attached as Exhibit A hereto).

[5] In opposing Xavier's motion for partial summary judgment, Travelers also asked the District Court to enter partial summary judgment in its favor on the grounds that the Water Damage Exclusion was unambiguous and clearly applicable to the undisputed facts.  Travelers' Opp. to Xavier's Mot. for Partial Summary Judgment, at 24-25.

We will not pay for loss or damage caused <u>directly or indirectly</u> by any of the following. <u>Such loss or damage is excluded regardless of any other cause or event that has contributed concurrently or in any sequence to the loss</u>.

**g.   Water**

**(1)** <u>Flood</u>, surface water, waves, tides, tidal waves, <u>overflow of any body of water</u>, or their spray, all whether driven by wind or not;

[Ord., 56 (emphasis added).]

The question of law presented by Xavier's motion for partial summary judgment was whether this exclusion bars coverage for damage to Xavier's property caused by water released from the 17th Street Canal and London Avenue Canal, as a result of levee breaches on those canals.

**C.   The District Court's Order and Reasons**

On November 27, 2006, the District Court issued a consolidated Order and Reasons that decided Rule 12(b)(6) motions to dismiss in two other cases involving water damage exclusions, <u>Vanderbrook</u>, Civ. A. No. 05-6323 and <u>Chehardy</u>, Civ. A. Nos. 06-1672, 06-1673 and 06-1674, along with Xavier's motion for partial summary judgment in this case.

At the beginning of its opinion, the District Court correctly stated that the cases before the court "concern damages caused by **flooding as a result of breaches or overtopping**" of levees in New Orleans. Ord., 1 (emphasis added). In other words, regardless of whether the water comes from "overtopping" of

4

levees due to the forces of the hurricane or "breaches" of levees allegedly due in part to negligence, the inundation was "flooding." The District Court also correctly recognized that, under Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." Ord., 8 (quoting Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003)). See also La. Civ. Code § 2047 ("The words of a contract must be given their generally prevailing meaning.").

There is no doubt what the "generally prevailing meaning" of the word "flood" is in New Orleans. As Judge Duval stated at oral argument, "**I realize that everybody is referr[ing] to this as a flood. I'm not saying it's not a flood or the homes weren't flooded. The homes were flooded, no question.**" Trans., at 45 (emphasis added). The Louisiana Supreme Court has similarly recognized that "[i]n the City of New Orleans, where the levees failed, flood waters swamped large portions of the City." State v. All Property & Cas. Ins. Carriers, 2006 WL 2498196, at *1 (La. Aug. 25, 2006) (emphasis added). Numerous judges of the Eastern District of Louisiana have described the inundation of New Orleans as a flood.[6] Under Louisiana law, Judge Duval was required to apply that "generally

---

[6] Dobson v. Allstate Ins. Co., 2006 WL 2078423, at *11 (E.D. La. July 21, 2006) (Vance, J.); Smith Lupo Williams Partners v. Carter, 2006 WL 2548255, at *1 (E.D. La. Aug. 31, 2006) (Africk, J.) (noting that property was "damaged by the floodwaters that inundated New Orleans

prevailing meaning" of the word "flood" in interpreting the contracts at issue. La. Civ. Code § 2047. He erred in failing to do so.

Judge Duval concluded that the Water Damage Exclusion in Xavier's Policy was ambiguous because it "does not clearly address flooding caused by man-induced causes" and, therefore, that the Policy "affords Xavier coverage for damages sought provided that Xavier can prove that the flooding it experienced was caused by the negligence of man." Ord., 58. Judge Duval further held that "the Water Damage Exclusion is limited to natural disasters-not those than [sic] man's negligence causes." Id., 59. Xavier's motion for partial summary judgment was "**GRANTED** in part as the Court finds that the Water Damage Exclusion would provide coverage for water damage caused by the negligent acts of mind [sic] and **DENIED** in part as the Court finds there are material questions of fact as to the cause of the water damage to Xavier." Id.

Judge Duval incorporated by reference his opinion in Vanderbrook into his Order and Reasons in this case. Ord., 58. In his Vanderbrook opinion, Judge

---

following Hurricane Katrina"); Clade v. Stone Ins., Inc., 2006 WL 2366373, at *1 (E.D. La. Aug. 14, 2006) (Feldman, J.) ("Plaintiff's home flooded during Hurricane Katrina."); In re Ingram Barge Co., 435 F. Supp. 2d 524, 525 (E.D. La. 2006) (Berrigan, J.) ("The allegations in this case arise out of the damage caused by the flooding that ravaged New Orleans after Hurricane Katrina."); Berthelot v. Boh Bros. Const. Co., L.L.C., 431 F. Supp. 2d 639, 642 (E.D.La. 2006) (Duval, J.) (noting that litigation arose out of "the canal levee and/or floodwall breaches and subsequent flooding which occurred after Hurricane Katrina struck New Orleans"). See also Buente v. Allstate Prop. & Cas. Ins. Co., 2006 WL 980784, at *1 (S.D. Miss. Apr. 12, 2006) (holding that "the inundation which occurred at the time of Hurricane Katrina was a flood, as that term is ordinarily understood").

Duval acknowledged that "**[c]ertainly the damage sued upon was caused by flooding** . . . ." Ord., 44. That should have been the end of his analysis under Louisiana law. He proceeded, however, to pose the question of whether "the flooding caused by negligent acts or omissions [is] excluded by the plain language of the policy." Id. (emphasis added). Judge Duval then reviewed Webster's Dictionary and held that "because the policies are all-risk, and because 'flood' has numerous definitions, it reasonably could be limited to natural occurrences" rather than man-made occurrences, and, therefore, that the term "flood" was ambiguous. Ord., 40.

In creating a distinction between "natural" and "man-made" floods, the District Court reasoned that if "flood" were construed simply as the "inundation of usually dry land by water," as Defendants contended, the remainder of the exclusion would be "superfluous" because "[t]he ensuing words '[surface water,] waves, tidal water, overflow of a body of water or spray from any of these, whether or not driven by wind' all are instances relating to **natural** events which can cause inundation of usually dry land." Id., 40-41 (emphasis in original). Judge Duval offered no explanation, however, for that conclusion. He failed to address Defendants' argument that the opposite is true -- if "flood" were limited to purely "natural" events, the remainder of the exclusion would be superfluous because it is

difficult to conceive of a natural "flood" that would not consist of surface water, waves, tidal water, or overflow of a body of water.[7]

The District Court's distinction between "natural" floods and "man-made" floods was simply an arbitrary limitation on the meaning of the word "flood." It would be equally arbitrary, for example, to limit "flood" to salt water rather than fresh water, or to inundation caused by water from rivers rather than lakes or oceans.

Ultimately, Judge Duval concluded that the same word -- "flood" -- has a different meaning in the Insurance Services Office, Inc. (ISO) exclusion and Travelers exclusion (which are essentially identical) than it has in the State Farm Fire & Casualty Co. ("State Farm") exclusion. State Farm's policy contains the exact same list of types of water damage as the Travelers exclusion, i.e., "flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these . . . ." Ord., 50. Judge Duval held, however, that because State Farm's anti-concurrent causation language introducing its exclusion contains slightly different language from the ISO and Travelers exclusions, the State Farm exclusion "excludes coverage for all flooding," whether natural or man-made. Ord., 50. This result makes no sense. The word flood has one "generally

_____

[7] Judge Duval's conclusion that an "overflow of a body of water" can only be a "natural" event is also inconsistent with his observation that man-made "pumps not working in a heavy rain" have "cause[d] the streets to overflow with water" in New Orleans. Ord., 45.

prevailing meaning," not two different meanings. La. Civ. Code § 2047. Moreover, the purpose of the anti-concurrent causation clauses in both the ISO and State Farm policies is to specify that a loss caused by "flood" (or any of the other types of water damage listed therein) is not covered irrespective of what causes or contributes to the water damage. The anti-concurrent causation clauses do not and cannot change the ordinary meaning of the word "flood."

After concluding that the word "flood" was ambiguous, Judge Duval proceeded to apply the "reasonable expectations doctrine" under which "[t]he court should construe the policy 'to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry.'" Ord., 11 (quoting La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759, 764 (La. 1994)).[8]  See also La. Civ. Code § 2052. Judge Duval concluded that "if a consumer were to actually read the three different policy language[s] presented in this case [i.e., ISO, State Farm and Hartford], one would expect that he or she would choose the ISO policy as it would be reasonable to assume that by comparison, it only excludes

---

[8] It is clear that the "reasonable expectations" doctrine would be inapplicable if Judge Duval had concluded that the word "flood" is unambiguous.  Coleman v. School Bd., 418 F.3d 511, 522 (5th Cir. 2005) (Louisiana law "precludes use of the reasonable expectations doctrine to recast policy language when such language is clear and unambiguous."); St. Paul Fire & Marine Ins. Co. v. Valentine, 665 So. 2d 43, 47 (La. App. 1 Cir. 1995) (reasonable expectations doctrine inapplicable where policy unambiguous).

coverage for natural acts, unlike the other two policies."[9]   Ord., 45.   Judge Duval also concluded that "[a]n insured may reasonably expect overtopping of a levee, but on the other hand an insured may not reasonably expect that levees designed and certified by the United States Corps of Engineers would fail as a result of negligent design and construction as has been alleged." Ord., 47.

Neither of these conclusions is correct or even addresses the question of what the "reasonable expectations of the parties" were "in the light of the customs and usages of the industry." La. Ins. Guar. Ass'n, 630 So. 2d at 764.   There is no basis in the policy language or any other part of the record to conclude that the parties would expect that the water damage exclusion would apply if levees overflowed, but not if levees breached as a result of negligence.   Xavier plainly knew that flood was excluded by the Travelers Policy, as evidenced by the fact Xavier purchased a substantial amount of flood insurance.   Affidavit of Ralph S. Hubbard III, Exhibit B (filed in District Court).

The District Court relied heavily on a few cases holding that a water main break does not constitute a "flood," without explaining how a water main break that results solely from human acts or omissions could possibly be comparable to the massive inundation of New Orleans during a hurricane.   Ord., 27-29.   The

_____

[9] This analysis is contrary to Louisiana law.  The Louisiana Supreme Court has held that it was error for a lower court to construe one insurance policy based on a comparison with other insurance policies. Cadwallader, 848 So. 2d at 583.  See infra at p. 16.

District Court then dismissed as inapposite cases across the country holding that water damage exclusions applied where levees and dikes failed as a result of human acts or omissions, simply because those courts did not directly address a potential "natural" versus "man-made" distinction. Id., 30-31. Judge Duval relied heavily on a <u>dissenting</u> opinion in <u>Kane v. Royal Ins. Co.</u>, 768 P.2d 678 (Colo. 1989), in which the <u>majority</u> held that "[t]he generally accepted meaning of the term 'flood' does <u>not</u> include a distinction between artificial and natural floods." Ord., 19 (<u>quoting</u> <u>Kane</u>, 768 P.2d at 681) (emphasis added).

Judge Duval's distinction between "natural" floods and "man-made" floods would also be unworkable as applied to real world scenarios. There are few floods that could not be prevented if manmade structures controlling the waters or damaged by the waters were perfectly engineered and constructed. As Judge Duval recognized at oral argument, no one suggests that the levees in New Orleans would have failed on August 29, 2005 if it were a calm, sunny day. Trans., 38.

## III.   QUESTIONS PRESENTED

1.     Does the Water Damage Exclusion apply to damage to Xavier's property caused by water released from canals, as a result of breaks in levee walls, assuming that human acts or omissions may have contributed to the levee breaks?

2.     Was the District Court's decision granting in part Xavier's motion for partial summary judgment erroneous as a matter of law?

## IV.   RELIEF SOUGHT

Travelers seeks permission to appeal pursuant to 28 U.S.C. § 1292(b) from the District Court's Order of November 27, 2006 insofar as it grants, in part, Xavier's motion for partial summary judgment and fails to enter partial summary judgment in favor of Travelers.  Defendants seek reversal of the District Court's Order, after briefing and oral argument on the merits.

## V.   WHY THIS APPEAL SHOULD BE ALLOWED

In accordance with 28 U.S.C. § 1292(b), the District Court certified that "all orders entered herein involve a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from these orders may materially advance the ultimate termination of the litigation." Ord., 85. This case involves precisely the type of question for which Section 1292(b) was designed to facilitate interlocutory review.  See Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 883 (1994) (noting that § 1292(b) is a suitable "vehicle for vindicating serious contractual interpretation claims").  The proper application of the water damage exclusions to the inundation of New Orleans is a controlling question of law not only in this case but in thousands of cases raising the same issue.  There is more than substantial ground for disagreement with the District Court's opinion, and a reversal would end this litigation.

A.   **The Questions Presented Clearly Satisfy the Standards for Review Under Section 1292(b)**

1.   **The Proper Interpretation of the Water Damage Exclusion is a Controlling Question of Law**

The District Court correctly determined that this case involves a "controlling question of law" within the meaning of § 1292(b). As this Court has previously recognized, "the issue need not, for example, be dispositive to be a 'controlling question'" under § 1292(b). Hadjipateras v. Pacifica, S.A., 290 F.2d 697, 702 n.10 (5th Cir. 1961). A question is "controlling" where "interlocutory reversal might save time for the district court, and time and expense for the litigants." Johnson v. Burken, 930 F.2d 1202, 1206 (7th Cir. 1991) (Posner, J.). A question "need not affect a wide range of pending cases" in order to be controlling, although where, as here, that is the case, it provides additional grounds for the court of appeals to exercise its discretion to grant the petition. Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 921 F.2d 21, 24 (2d Cir. 1990).

In this case, the question of whether there is an ambiguity in the Water Damage Exclusion is clearly a question of law,[10] and is subject to de novo

---

[10] Principal Health Care of La., Inc. v. Lewer Agency, Inc., 38 F.3d 240, 242 (5th Cir. 1994) ("Interpretation of an insurance policy is a question of law.") (applying Louisiana law); American Marine Underwriters, Inc. v. Holloway, 826 F.2d 1454, 1456 (5th Cir. 1987) ("Whether an insurance policy is ambiguous is a question of law for the court") (applying Louisiana law); Egle v. Allstate Ins. Co., 889 So. 2d 413, 415 (La. App. 3 Cir. 2004) (noting that

review.[11]   It is equally clear that if this Court reverses the District Court, such a ruling will resolve a substantial portion of this case.  Xavier has submitted a claim for more than $40 million for damages to 25 separate buildings, including a claim of more than $15 million for wind damage (with respect to which Travelers has paid approximately $5 million) and a claim of more than $25 million for flood damage.  The issues to be tried and the amount in dispute would be very different depending on the applicability of the Water Damage Exclusion.  If the Water Damage Exclusion applies to flooding of Xavier's property, the only issue in dispute will be the amount of the wind damage.  In contrast, if the applicability of the Water Damage Exclusion depends on the extent to which the cause of the levee breaks was "natural" as opposed to "man-made," extensive discovery and a trial would be necessary on that issue.  An interlocutory appeal may avoid a potentially unnecessary trial on this issue.

### 2.   There is Substantial Ground for Difference of Opinion With Respect to the District Court's Ruling

The District Court also correctly determined that there is substantial ground for difference of opinion on its ruling.  The District Court's ruling is inconsistent with opinions of this Court and the Louisiana appellate courts.  It also conflicts

---

"interpretation of an insurance policy is a question of law, and we have authority to construe provisions of the policy in order to resolve questions of coverage").

[11] American Guar. & Liab. Ins. Co. v. 1906 Co., 129 F.3d 802, 805 (5th Cir. 1997).

with recent decisions in the Southern District of Mississippi, decisions by Judge Vance of the Eastern District of Louisiana, and appellate precedent throughout the United States.

The District Court's opinion is inconsistent with this Court's ruling in Florida E. Coast Ry. Co. v. United States, 519 F.2d 1184 (5th Cir. 1975), where this Court, interpreting a federal statute, adopted a definition of "flood" as "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be . . . ." Id. at 1192 (rejecting argument that federal government's immunity under Flood Control Act applied "only with respect to natural, as opposed to artificially precipitated, floods"). The District Court's ruling is also contrary to well-established caselaw enforcing water damage exclusions as applied to water inundation losses caused by hurricanes. See, e.g., Morehead v. Allstate Ins. Co., 406 F.2d 122, 122 (5th Cir. 1969).

Judge Duval's opinion is also inconsistent with Louisiana appellate decisions that have repeatedly used the term "flood," in accordance with its plain meaning, to describe a large-scale inundation of water resulting in some degree from a human act or omission. See, e.g., Saden v. Kirby, 660 So. 2d 423, 424 (La. 1995) ("flood" exacerbated by alleged negligence of defendants); Pracht v. City of Shreveport, 830 So. 2d 546, 548 (La. App. 2 Cir. 2002) ("flood" allegedly resulting

from "failure to properly design, construct and maintain the drainage canal").[12]

Judge Duval's opinion also conflicts with Louisiana Supreme Court precedent on insurance policy construction. The Louisiana Supreme Court has held that "a rather simple word with a well-established common sense meaning which is referenced in the insurance policy in a clearly worded context" must be given its generally prevailing meaning. Cadwallader, 848 So. 2d at 580. The word "flood" is a simple word with an ordinary, everyday meaning -- a large-scale inundation of ordinarily dry land. A flood is a flood regardless of whether the cause was "natural" or "man-made" or some combination thereof.

The Louisiana Supreme Court also held in Cadwallader that the lower court erred in comparing the policy at issue with other insurance policies, stressing that the lower court "ignored the fundamental precept" that a court must apply the "plain, ordinary and generally prevailing meaning as set forth in the policy at hand." Id. at 583. Judge Duval quoted at length from Cadwallader (Ord., 8), but departed from the holding of the case when he construed the ISO exclusion based on a comparison with the Hartford and State Farm policy language. Id., 45.

---

[12] See also Gleason v. Nuco, Inc., 774 So. 2d 1240, 1241 (La. App. 1 Cir. 2000) ("flood" allegedly resulted from negligence in constructing and maintaining drainage facilities); Boudreaux v. Dep't of Transp. & Dev., 690 So. 2d 114, 120 (La. App. 1 Cir. 1997) ("flood" allegedly resulted from negligence in design and construction of bridge such that bridge improperly functioned as a dam); Roberts v. Murphy Oil Corp., 577 So. 2d 308, 311 (La. App. 4 Cir. 1991) ("flood" allegedly resulted from negligent construction of road which disrupted drainage system); Summerville v. Missouri Pac. R.R. Co., 509 So. 2d 639, 640 (La. App. 3 Cir. 1987) ("flood" allegedly caused or exacerbated by negligent obstruction of natural drainage).

The District Court's ruling also conflicts with <u>Sweeney v. City of Shreveport</u>, 584 So. 2d 1248 (La. App. 2 Cir. 1991), <u>writ denied</u>, 589 So. 2d 1057 (La. 1991), in which the Louisiana Court of Appeal held that an anti-concurrent causation clause in an exclusion made the exclusion applicable regardless of whether negligence contributed to the loss. <u>Id.</u> at 1251. Judge Duval was required to follow <u>Sweeney</u> absent "persuasive data" that the Louisiana Supreme Court would reach a different result. <u>Team Envtl. Servs., Inc. v. Addison</u>, 2 F.3d 124, 127 (5th Cir. 1993). <u>Sweeney</u> was not even mentioned, however, in Judge Duval's 85-page opinion.

Judge Duval's decision is also inconsistent with a recent ruling by Judge Vance of the Eastern District of Louisiana. <u>See Dobson v. Allstate Ins. Co.</u>, 2006 WL 2078423, at *11 (E.D. La. July 21, 2006) (Vance, J.) (holding that insureds had no possibility of recovering against insurance agents for allegedly misrepresenting that hurricane-related flooding would be covered); <u>see also Travelers Indem. Co. v. Powell Ins. Co.</u>, 1996 WL 578030, at *3 (E.D. La. Oct. 4, 1996) (Vance, J.) (holding that water damage exclusion was unambiguous).

The District Court's ruling also differs from recent decisions in Hurricane Katrina cases in the Southern District of Mississippi, where Judge Senter has held that "[t]he inundation that occurred during Hurricane Katrina was a flood, as that

term is ordinarily understood . . . ." <u>Buente v. Allstate Prop. & Cas. Ins. Co.</u>, 2006 WL 980784, at *1-2 (S.D. Miss. Apr. 12, 2006).

The District Court's opinion is also in conflict with appellate decisions nationwide holding that water damage exclusions were applicable to losses caused by the failure of levees, dams and dikes, even where human acts or omissions caused or contributed to the event. <u>TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.</u>, 114 F.3d 731, 733 (8th Cir. 1997) (levee break); <u>Pakmark Corp. v. Liberty Mut. Ins. Co.</u>, 943 S.W.2d 256, 261-62 (Mo. Ct. App. 1997) (levee break); <u>E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.</u>, 444 N.Y.S.2d 321, 321-22 (N.Y. App. Div. 1981) (dike failure); <u>Kane v. Royal Ins. Co.</u>, 768 P.2d 678, 681 (Colo. 1989) (dam failure); <u>Bartlett v. Cont'l Divide Ins. Co.</u>, 697 P.2d 412, 413 (Colo. Ct. App. 1984), <u>aff'd</u>, 730 P.2d 308 (Colo. 1986) (dam failure).[13]

The fact that there is substantial ground for difference of opinion is perhaps best demonstrated by Judge Duval's reliance on the <u>dissent</u> in <u>Kane</u>. <u>See</u> Ord., 31-33. The <u>majority</u> opinion of the Colorado Supreme Court, however, held that when the water damage exclusion "is construed in harmony with the generally accepted meaning of the term 'flood' and in the context of the facts of this case, <u>there is no doubt that this large-scale inundation of water was a 'flood.'</u>" <u>Id.</u> at 681

---

[13] <u>See also</u> <u>Front Row Theatre, Inc. v. American Mfr. Mut. Ins. Cos.</u>, 18 F.3d 1343, 1347 (6th Cir. 1994) (flooding caused in part by blocked drainage system); <u>Sunshine Motors, Inc. v. New</u>

(emphasis added).  Similarly here, there should be no doubt that the large-scale inundation of water in New Orleans was a "flood."

### 3.    Allowing This Interlocutory Appeal Will Materially Advance the Ultimate Termination of This Case

There is no question that this interlocutory appeal will materially advance the ultimate termination of this case.  If this Court reverses the District Court decision and holds that the Water Damage Exclusion bars coverage for the flood damage to Xavier's property, such a ruling would resolve a substantial portion of this case.  Such a decision would effectively reduce the amount in dispute from more than $40 million to approximately $10 million (i.e., the difference between the approximately $15 million claimed for wind damage and the approximately $5 million paid).

### B.    This Court Should Grant Leave to Appeal Because An Appellate Decision On The Question Presented Will Aid the Resolution of Thousands of Other Hurricane Katrina Lawsuits

This case is an ideal candidate for interlocutory review under Section 1292(b) because the question presented is not only a straightforward question of law, it is also a question that has been raised in thousands of other cases that are pending in the Eastern District of Louisiana.  See Brown v. Bullock, 294 F.2d 415, 417 (2d Cir. 1961) (leave to appeal granted where issue presented "was likely to

---

Hampshire Ins. Co., 530 N.W.2d 120, 121 (Mich. Ct. App. 1995) (similar); Casey v. Gen. Accident Ins. Co., 578 N.Y.S.2d 337, 338 (N.Y. App. Div. 1991) (similar).

have precedential value for a large number of other suits").

It is also worth noting that this Court has granted interlocutory review in a case involving insurance coverage issues arising from the storm surge of Hurricane Katrina in Mississippi. See Tuepker v. State Farm Fire & Cas. Co., Case No. 06-00045 (5th Cir.). The issues in the present case are different, but no less important.

## VI.  EXPEDITED TREATMENT OF THIS APPEAL IS APPROPRIATE

Travelers respectfully requests that, if the Court grants leave to appeal, the Court set an expedited schedule for briefing and oral argument pursuant to 5th Cir. R. 27.5. Given the importance of the issue presented and the likelihood that this Court's ruling will help to resolve thousands of cases pending in the Eastern District, expedited treatment of this appeal is warranted.

## VII.  CONCLUSION

The Court should grant this petition because the proper application of water damage exclusions to the flooding that occurred in New Orleans is a matter of great importance in numerous lawsuits. It is clearly a controlling question of law on which there are substantial grounds for reversal. In due course, this Court should reverse the District Court's ruling.

Respectfully submitted,

Ralph S. Hubbard III, T.A., La. Bar. # 7040
Simeon B. Reimonenq, Jr., La. Bar # 19755
Seth A. Schmeeckle, La. Bar # 27076
LUGENBUHL, WHEATON, PECK,
     RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:  (504) 568-1990
Facsimile:  (504) 310-9195

Stephen E. Goldman
Wystan M. Ackerman
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone:  (860) 275-8200
Facsimile:  (860) 275-8299

Attorneys for Travelers Property Casualty
Company of America

21

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading, as well as a computer readable disk copy, has been served upon the below listed counsel of record by hand delivery or by placing a copy of the same in both paper and electronic form in the U.S. Postal Service, with adequate postage affixed thereto, this 8th day of December, 2006:

> James M. Garner, Esq.
> Darnell Bludworth, Esq.
> Timothy B. Francis, Esq.
> Sher Garner Cahill Richter Klein & Hilbert, L.L.C.
> 909 Poydras St., 28th Floor
> New Orleans, LA 70112

Simeon B. Reimonenq, Jr.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE KATRINA CANAL BREACHES                    CIVIL ACTION
CONSOLIDATED LITIGATION
                                                NO. 05-4182

PERTAINS TO INSURANCE                           SECTION "K"(2)
*Vanderbrook*, C.A. No. 05-6323
*Xavier University*, C.A. No. 06–516
*Chehardy*, C.A. No. 06-1672, 06-1673, and 06-1674


                              and


KELLY A. HUMPHREYS                              CIVIL ACTION

VERSUS                                          NO. 06-0169

ENCOMPASS INSURANCE COMPANY, ET AL.             SECTION K(2)
****PRINT TO WEB****

## ORDER

On September 19, 2006, *Berthelot, et al. v. Boh Bros. Construction, et al.*, C.A. No. 05-4182

was filed in the Eastern District of Louisiana.  This case began the stream of complaints that have

been filed as a result of damages arising out of all levee breaches which occurred in the aftermath

of Hurricane Katrina.

  *Berthelot* was transferred to the undersigned on February 23, 2006.  (Doc. 47).  It was

subsequently determined by the *en banc* court of the Eastern District of Louisiana that in order to

avoid conflicting decisions among the various sections of the Court, the proper approach would be

to consolidate all such filings for purposes of pretrial discovery and motion practice.  As such, what

is now captioned "*In re: Katrina Canal Breaches Consolidated Litigation*," C.A. No. 05-4182, has

become the umbrella for all cases which concern damages caused by flooding as a result of breaches

EXHIBIT

A

or overtopping in the areas of the 17th Street Canal, the London Avenue Canal, the Industrial Canal,

and the Mississippi Gulf River Outlet ("MRGO").

The following Orders and Reasons[1] are being entered in four individual cases which are part

of the umbrella and all of which have as their centerpiece the issue of insurance coverage.  Theses

cases are:

*Vanderbrook, et al. v. State Farm Fire & Cas. Co., et al.* C.A. No. 05-6323;

*Xavier University of Louisiana v. Travelers Property Ca. Co. of America*, C.A. No. 06-516;

*Chehardy, et al. v. State Farm, et al.,* C.A. No. 06-1672, 06-1673, and 06-1674; and

*Humphreys v. Encompass Ins. Co.*, C. A. No. 06-169.[2]

Oral argument was conducted with respect to *Vanderbrook* on August 25, 2006, and with respect

to *Xavier, Chehardy and Humphreys* on October 27, 2006.  Based on the pleadings, memoranda,

exhibits, arguments and the relevant law, the Court is prepared to rule on all the motions pending

in all four cases.

**IT IS ORDERED** that this document shall be entered onto the docket of the *In re Katrina*

*Canal Breaches Consolidated Litigation*, C.A. No. 05-4182 referencing all three of the cases noted

above and *Humphreys* separately.  The Court will begin with the *Vanderbrook* matter.

********************************

---

[1]The document numbers referred to herein are those as entered in the Consolidated Matter unless otherwise noted; once a case is consolidated in the umbrella, any document filed is entered sequentially, regardless of the case to which it pertains.

[2]*Humphreys* was initially consolidated but at the request of the litigants it was terminated from the umbrella; however, in light of the inter-related nature of this case, the Court will include this case in this consolidated opinion.

2

**THIS ORDER PERTAINS SPECIFICALLY TO:**

*Vanderbrook, et al. v. State Farm Fire & Cas. Co., et al.* C.A. No. 05-6323;

## ORDER AND REASONS

Before the Court are the following motions filed in this matter:

Doc. No. 568      Motion for Judgment on the Pleadings filed by Hanover Ins. Co. ("Hanover") insurer of plaintiff James Capella and Madeline Grenier;[3]

Doc. No. 569      Motion for Judgment on the Pleadings filed by Standard Fire Ins. Co. ("Standard") insurer of plaintiffs Peter Anthony Ascani, III, Gregory R. Jackson, and Monica Reyes;

Doc. No. 570      Motion for Judgment on the Pleadings filed by State Farm Fire & Cas. Co. ("State Farm") insurer of Mary Jane Silva and Robert G. Harvey;

Doc. No. 572      Motion to Dismiss Party filed by Hartford Ins. Co. of the Midwest ("Hartford") insurer of Jack Capella as the Executor of the Succession of Lillian Capella;

Doc. No. 598      Motion for Judgment on the Pleadings filed by Unitrim Preferred Ins. Co. ("Unitrim") insurer of Richard Vanderbrook.

These motions were brought in response to the class action suit brought by the "Vanderbrook" plaintiffs.

The instant petition was initially filed in Civil District Court for the Parish of Orleans on October 14, 2005. Plaintiffs filed suit seeking coverage for damages caused by the collapse of the 17th St. Canal floodwall and the ensuing water damage as well as claims against the Board of

---

[3]At oral argument on these motions, Hanover orally moved to include in its motion the claims of Madeline Grenier who had been misidentified as Sophia Granier as the insured. This motion was orally granted. Thus, the docket sheet as to this motion does not include her as the subject of the motion; however, the docket sheet should be so amended to reflect that the plaintiff Sophia Granier is actually Madeline Grenier and **IT IS SO ORDERED.** At the time of the hearing, the relevant policy of insurance was introduced and filed into the record.

    Additionally, certain of the Defendants are improperly named. The Standard Fire Insurance Company ("Standard Fire") is improperly named as Travelers Insurance Company and St. Paul Travelers Insurance Company. Hartford Insurance Company of the Midwest ("Hartford") is improperly named as Hartford Insurance Company. Unitrin Preferred Insurance Company ("Unitrin") is improperly named as Kemper Insurance Company.