sought at this time, and the motion will be denied in that respect without prejudice, to be re-urged at the appropriate time.

### D.    Louisiana Citizens Property Insurance Corp.–Motion to Dismiss Doc. 903

Louisiana Citizens Property Insurance Corporation ("LCPIC") filed a motion which adopts the memoranda filed by the ISO defendants, State Farm and Allstate.  This defendant did not explain or provide the Court with which provisions of its own policy upon which it relies in order to ride on these memoranda's coattails.  From a review of the insurance policy, it appears that it tracks the language of the ISO defendants' policy–in particular the Water Damage Exclusions, the Weather Condition Exclusion and the Faulty, Inadequate or Defective Acts Exclusion.  As such, for the reasons stated in *Vanderbrook* and the reasons reiterated above with respect to the ISO defendants' policy,  LCPIC's Motion to Dismiss (Doc. 903) will be denied.

### E.  Encompass Indemnity Company's  Motion to Dismiss  (Doc. 923)

Encompass Indemnity Company ("Encompass") filed its Motion to Dismiss and Incorporated Memorandum and adopted (1) Allstate's arguments, (2) the ISO defendants' arguments as well (3) State Farms' arguments.  In its memorandum, this defendant does not specify what language within the Encompass policy upon which it relies in this instance.  It would appear that the policy tracks the Allstate policy in some regards as well as the ISO defendants' policies.  As best as this Court can ascertain, Encompass relies on the following language:

74

1.     **Water Damage Exclusion**

In a section entitled "LOSSES WE DO NOT COVER" at ALST 00176 of Exhibit A to the subject motion it states:

> We do not insure for loss caused directly or indirectly by any of the following.  such loss is excluded regardless of any other cause or event contributing concurrently or n any sequence to the loss.
>
>> 1.     **Real Property and Tangible Personal Property.**  We do not insure for loss:
>> a. caused by water damage, meaning:
>>
>>> 1.     Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;
>>>
>>> 2.     Water which backs up through sewers or drains;
>>>
>>> 3.     Water below the surface of the ground including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure; or
>>>
>>> 4.     Water emanating from a sump pump, sump pump well or similar device designed to prevent overflow, seepage or leakage of subsurface water.
>
> Direct loss by fire explosion or theft resulting from water damage is covered.

ALST 00177.  This water exclusion has neither the lead-in language of State Farm's policy nor the same wording as that of the Allstate policy.  It is most like the ISO policy and for all the reasons stated in the foregoing *Vanderbrook* and the *Chehardy* opinion to this point, the Court will deny the motion to dismiss as it pertains to the applicability of the Water Damage Exclusion.

75

Only Section 1 would be arguably applicable by operation of the facts in the instant matter, and the reasons given for the denial of the ISO provisions with respect to the Water Damage Exclusion operate equally in this instance.

## 2. Other Exclusions

The other provisions that would apparently mirror the arguments made in the other briefs noted are found at Section 2. of the LOSSES WE DO NOT COVER portion of the policy which states:

2.    Real Property. We do not insure for loss:

. . .

g.    To covered real property caused by any of the following.  **However, any ensuing loss not excluded or excepted in this policy is covered.**

(1)    Weather conditions. However, this exclusion applies only if weather conditions contribute in any way with a cause on (sic) event otherwise excluded to produce the loss.

(2)    Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

(3)    Faulty, inadequate or defective:

(a)    Planning, zoning, development, surveying, siting;

(b)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(c)    materials used in repair, construction, renovation or remodeling; or

(d)    Maintenance;

of part or all of any property whether on or off your residence premises.

(ALST 00178-79)(emphasis added). Considering the ensuing loss provision above, the Court likewise for all of the reasons stated previously finds that these exclusions do not operate to exclude coverage for the damages sought in *Chehardy* with respect to losses from water damage.

Again, the Court will deny the motion insofar as it seeks any dismissal of any extra-contractual issues as premature.  Thus, the Encompass Indemnity Company's Motion to Dismiss (Doc. 923) will be denied.

**F.      Great Northern Insurance Company's Motion to Dismiss** (Doc. 936)

Great Northern adopted the Motion to Dismiss of Allstate and relies on the following specific policy language contained in its policy as concerns its argument with respect to the Water Damage Exclusion:

> EXCLUSIONS
> These exclusion apply to your Deluxe House Coverage, including the Extra Coverages, unless stated otherwise.
>
> The words "caused by" mean any loss that is contributed to, made worse by, or in any way results from that peril.
> . . .
> **Surface water.**  We do not cover any loss caused by:
> •flood, surface water, waves, tidal water, or water borne material from any of these;
> •overflow of water or water borne material from a body of water;
> •run off of water or water borne material from a paved surface, driveway, walkway, patio, or other similar surface; or
> •spray from any of these,
> from any source, even if driven by wind.  But we do insure ensuing covered loss unless another exclusion applies.

(Exhibit A, CH-FOR-020 and Exhibit B CH-BAR-018.)      This exclusion again does not clearly exclude water damage caused by negligent or intentional acts of man.  It does not address the ambiguity of the term "flood" and the fact that all of the listed "causes" appear to be the result of natural occurences, not the monumental civil engineering debacle that is alleged by plaintiffs.

For the reasons assigned in *Vanderbrook* and in the previous sections dealing with ISO and Allstate's motions in *Chehardy,* the Court finds that the Motion to Dismiss based on this exclusion is without merit.

As to the Faulty Planning, Construction or Maintenance, the following language appears in the same Exclusion section as above:

> These exclusion apply to your Deluxe House Coverage, including the Extra Coverages, unless stated otherwise.
>
> The words "caused by" mean any loss that is contributed to, made worse by, or in any way results from that peril.
> . . .
> **Faulty planning, construction or maintenance.** We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance. It does not matter whether the faulty acts, errors or omissions take place on or off the insured property. **But we do insure ensuing covered loss unless anther exclusion applies.** "Planning" includes zoning, placing, surveying, designing, compacting, setting specifications, developing property and establishing building codes or construction standards. "Construction" includes materials, workmanship, and parts or equipment used for construction or repair.

(Exhibit A, CH-FOR-021 and Exhibit B CH-BAR-019.) (emphasis added). Again, for all the reasons previously assigned in *Vanderbrook* and *Chehardy* with respect to this exclusion, as the damage would be considered loss from a covered peril based on the previous analysis, this provision does not operate to deny the insureds coverage.

Likewise, all other arguments raised as to "windstorm," "storm surge" and the applicability of the anti-concurrent clause are likewise rejected for the reasons stated heretofore in *Vanderbrook*. Finally, as noted, the Court will deny the motion insofar as it seeks the dismissal of the extra-contractual claims. The Court will deny that portion of the Motion to Dismiss without prejudice for it to be re-urged at the appropriate time. Thus, the Great Northern Insurance Company's Motion to Dismiss(Doc. 936) will be denied. Accordingly,

**IT IS ORDERED** with respect to:

Doc. 903      the Motion to Dismiss filed by Louisiana Citizens Property Insurance Corp is **DENIED.**

Doc. 923      the Motion to Dismiss filed by Encompass Indemnity Company is **DENIED.**

Doc. 932      Consolidated Rule 12(B)(6) Motion to Dismiss Plaintiffs' Amended and Restated Complaint filed by Defendants The Standard Fire Insurance Company, Lexington Insurance Company, Liberty Mutual Fire Insurance Company, The American Insurance Company, Aegis Security Insurance Company, Auto Club Family Insurance Company,[22] the Hanover Insurance Company and Lafayette Insurance Company is **DENIED.**

Doc. 936      Motion to Dismiss Plaintiff's Amended and Restated Complaint filed by Great Northern Insurance Company is **DENIED.**

Doc. 939      Motion to Dismiss Pursuant to Rule 12(b) filed by Allstate Insurance Company, Allstate Indemnity Company is **DENIED.**

Doc. 1037      Motion to Dismiss Plaintiffs' Amended and restated Complaint filed by State Farm Fire and Casualty Company is **GRANTED with respect to coverage and DENIED in part,** that is with respect to the extra-contractual claims of plaintiffs.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THIS ORDER PERTAINS TO:**

**KELLY A. HUMPHREYS**                 **CIVIL ACTION**

**VERSUS**                           **NO. 06-0169**

---

[22]This company was named as AAA Homeowners Auto Club in the Amended Complaint.

**ENCOMPASS INSURANCE COMPANY, ET AL.**                    **SECTION K(2)**

## ORDER AND REASONS

Kelly A. Humphreys ("Humphreys") filed a Motion for Partial Summary Judgment seeking coverage for wind and flood damages caused by Hurricane Katrina. (Doc. 39).   Having held oral argument on this matter on October 27, 2006, and having reviewed the pleadings, exhibits, memoranda and the relevant law, the Court will rule in conformity with the prior decisions rendered herein in the *In re Katrina Canal Breaches Consolidated Litigation* with respect to *Vanderbrook, Xavier and Chehardy.* The Court adopts and considers this motion in conformity with Section I of the *Vanderbrook* opinion entitled "The Civilian Approach as an *Erie* Court" and Section I of the *Xavier* opinion entitled "Standard for Summary Judgment Motion." The Court will first review the pleadings herein.

### I.      Procedural History and Allegations of Petition

The petition was initially filed in Civil District Court for Parish of Orleans and after the Orleans Levee District was added, the suit was removed to the United States District Court for the Eastern District of Louisiana on January 13, 2006. It was eventually transferred to this section of Court, where the Court  granted a Motion to Sever the Orleans Levee District from this matter and remanded that party to state court leaving only Encompass as a litigant.

Plaintiff alleges that her property suffered damage as a result of the 17th Street Canal levee breach. (Petition at IX-XI.) Plaintiff purchased from Encompass a homeowner's policy of

80

insurance in which the summary notes that plaintiff paid an additional $409.00 for "Hurricane Peril Coverage."  The declaration sheet notes a $1000.00 "Hurricane Deductible."  Plaintiff sought damages under this policy for water damage, wind damage, bad faith claims, including but not limited to her claims under La. R.S. 22:658 and 22:1220.  Humphreys also had purchased National flood Insurance Program ("NFIP") coverage from which she collected and is not the subject of suit.  On June 12, 2006, a Rule 41 Stipulation of Partial Dismissal was filed notifying the Court that all of plaintiff's wind damage claims and her bad faith claims, including but not limited to her claims under La. R.S. 22:658 and 22:1220 had been compromised.  Thus, the only issue remaining is whether her homeowners policy provides coverage for the water damage which she experienced as the result of the collapse of the 17th Street Canal floodwall.

## II. The Motion Before the Court

The thrust of plaintiff's motion focuses on  the Hurricane Deductible Endorsement which she maintains takes precedence over policy language pursuant to La. Rev. Stat. 22:654 and the declaration sheet which states "Hurricane Coverage Peril."  Plaintiff maintains that:

1. By virtue of the Hurricane Peril Coverage/Hurricane Deductible endorsement," a hurricane is covered event.

2. Flood and wind is characteristic of a hurricane storm event;

3. Plaintiff has coverage for "windstorm," so why then did she purchase hurricane protection coverage; and

81

4.    Section 2 **Real Property** subsection g and g.(1) excludes weather conditions but states

"ensuing loss," not excluded or exempted by tin the policy is covered.

As such, plaintiff contends that the ensuing loss, damage caused by Windstorm and Hurricane

Peril Coverage and Hurricane Deductible Endorsement are ensuing losses that extended coverage

by virtue of the endorsements to provide coverage for otherwise excluded perils, i.e. wind and

flood waters caused by a hurricane.   In addition, plaintiff contends that these provisions create an

ambiguity of the type noted in *Tuepker, supra,* and as such, a finding of coverage should ensue.

At oral argument, counsel for plaintiff also adopted the arguments of other counsel

concerning the applicability of the Water Damage Exclusion.

## III.    Applicable Policy Provisions

The policy states in relevant part the following:

> **COVERAGES**
>
> **$1000 Hurricane Deductible (based on the residence value)**
>
> **B. HURRICANE DEDUCTIBLE ENDORSEMENT**
> We will pay only that part of the total of the loss for all Property Coverages that exceeds
> the hurricane deducible state on the Coverage Summary.  The hurricane deductible shown
> on the Coverage Summary applies to all covered property for direct physical loss or
> damage caused directly or indirectly by a hurricane as defined below.  Such deductible
> applies regardless of any other cause or event contributing concurrently or in any
> sequence to the loss.  No other deducible provision in the policy applies to direct physical
> loss caused by a hurricane.  In no event will the deductible applied for a hurricane loss be
> less than the property deductible shown on the Coverage Summary.
>
> Hurricane means wind, wind gust, hail, rain, tornado, cyclone or hurricane which result in
> direct physical loss or damage to property be a storm system that has been declared to be
> hurricane by the National Weather Service.  the duration of the hurricane includes the time
> period in your state:

82

A.   beginning at the time a hurricane watch or hurricane warning is issued for any part of the state by the National Weather Service;

B.   continuing for the time period during which the hurricane conditions exist anywhere in the state; and

C.   ending 12 hours following the termination of the last hurricane watch or hurricane warning for any part of your state by the National Weather se5rve.

All other provisions of this policy apply.

**REAL PROPERTY -COVERED PERILS**

We cover direct physical loss to property describe in **Real Property - Insuring Agreement,** unless the loss is not covered under **Property Coverage - Losses We Do Not Cover.**

. . .

**LOSSES WE DO NOT COVER**

The introductory paragraph is deleted and replaced by the following:

We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.  **However, coverage will be provided for any covered peril that precedes an excluded peril, occurs concurrently with an excluded peril, or occurs as a result of an excluded peril.**

(Exhibit "1E" amendment of G18733-H Required Coverage and amendments page 6 of 14.)

1.   **Real property and Tangible Personal Property**. We do not insure for loss:

a.   Caused by water damage, meaning:

(1)   Flood, surface water, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(Exhibit "1F" policy of Insurances page 11 of 23).

2.   **Real Property**. We do not insure for loss:

g.   To covered real property caused by any of the following.  However, any ensuing loss not excluded or excepted in this policy is covered.

(1)   Weather conditions.  However, this exclusion applies only if weather conditions contribute in any way with a cause on (sic) event otherwise excluded t produce the loss.

83

(Exhibit 1G, Page 13 of 23 of policy).

## III. Analysis

Plaintiff's contentions concerning the Hurricane Deductible are misplaced. This endorsement simply reduced the deductible that would normally be applicable from a percentage of the value of the house to a flat $1000.00. It does not create independent coverage. However, because of the ambiguity in the Water Damage Exclusion as previously discussed in *Vanderbrook, Xavier and Chehardy*, the Court finds it will grant the motion for partial summary judgment as the Water Damage Exclusion is ambiguous and must be construed against the insurer, and thus provides coverage for the insured herein. In so finding the Court reiterates and incorporates the *Vanderbrook* opinion above, in particular sections,

IV.    Legal Concepts for Contract Interpretation;

VI.    Parties' Contentions;

VII.   Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable Interpretations of the Term;

VIII.  Jurisprudence Further Demonstrates Reasonableness of Alternative Interpretations;

IX.    Application of Legal Principles to the Policies Before the Court; and

     A.    ISO Water Damage Exclusion.

Accordingly,

**IT IS ORDERED** that the Plaintiff's Motion for Partial Summary Judgment is **GRANTED** insofar as there is coverage as a result of the ambiguity in the Water Damage Exclusion and **DENIED** with respect to the Hurricane Deductible argument.

### CERTIFICATION FOR APPEAL

84

Pursuant to 28 U.S.C. § 1292(b), all orders entered herein involve a controlling question of law as to which there is a substantial ground for a difference of opinion and an immediate appeal from these orders may materially advance the ultimate termination of the litigation.  In accordance with 28 U.S.C. § 1292(b), an application for appeal must be made to the Court of Appeals within ten days after the entry of this order.

The Court notes that if it had the power under Rule XII of the Rules of the Louisiana Supreme Court to certify the issues decided herein to that court, it would have done so, since there are no clear controlling precedents of the Louisiana Supreme Court on same and the issues presented and decided herein are significant and require an application of Louisiana law.

New Orleans, Louisiana, this _27th_ day of November, 2006.

_____

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**

85

1

1                        UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA

2

3   ***********************************************************
O'DWYER, ET AL

4                             Docket No. 05-CV-4181
V.                        New Orleans, Louisiana

5
                             Friday, October 27, 2006
6   UNITED STATES OF AMERICA, ET AL
   ***********************************************************
7

8   KELLY A. HUMPHREYS

9                             Docket No. 06-CV-0169
V.                        New Orleans, Louisiana

10                          Friday, October 27, 2006
ENCOMPASS INSURANCE COMPANY, ET AL

11

12   ***********************************************************

XAVIER UNIVERSITY OF LOUISIANA

13                           Docket No. 06-CV-516
14   V.                        New Orleans, Louisiana

15                          Friday, October 27, 2006
TRAVELERS PROPERTY CASUALTY
16   COMPANY OF AMERICA

17   ***********************************************************

18   CHEHARDY, ET AL

19                           Docket No. 06-1672, 1673 &
V.                        1674
20                           New Orleans, Louisiana

21                          Friday, October 27, 2006
STATE FARM FIRE & CASUALTY
22   COMPANY, ET AL

23   ***********************************************************

24

25

EXHIBIT

B

```
 1                TRANSCRIPT OF MOTION PROCEEDINGS
        HEARD BEFORE THE HONORABLE STANWOOD R. DUVAL
 2                 UNITED STATES DISTRICT JUDGE

 3

 4   APPEARANCES FOR 06-169:

 5   FOR THE HUMPHREYS PLAINTIFFS:    THE CREELY LAW FIRM
                                      BY:  ROBERT G. CREELY, ESQ.
 6                                    1010 Common Street, Suite 2650
                                      New Orleans, LA 70112
 7

 8
     FOR ENCOMPASS INSURANCE COMPANY:   BARRASSO USDIN KUPPERMAN
 9                                      FREEMAN & SARVER
                                        BY:  JUDY Y. BARRASSO, ESQ.
10                                      909 Poydras Street
                                        LL&E Tower - Suite 1800
11                                      New Orleans, LA 70112

12

13

14   APPEARANCES FOR 06-516:

15   FOR XAVIER UNIVERSITY
     OF LOUISIANA:                    SHER GARNER CAHILL RICHTER
16                                    KLEIN & HILBERT
                                      BY:  JAMES M. GARNER, ESQ.
17                                         DARNELL BLUDWORTH, ESQ.
                                      909 Poydras Street
18                                    LL&E Tower - 28th Floor

19

20   FOR TRAVELERS PROPERTY CASUALTY
     COMPANY OF AMERICA:              LUGENBUHL, WHEATON, PECK,
21                                    RANKIN & HUBBARD
                                      BY:  RALPH S. HUBBARD, III, ESQ.
22                                         SIMEON B. REIMONENQ, JR., ESQ
                                           SETH A. SCHMEECKLE, ESQ.
23                                    601 Poydras Street, Suite 2775
                                      New Orleans, LA 70130
24

25
```

3

1    **APPEARANCES FOR 06-1672, 1673 & 1674:**

2

3    FOR THE CHEHARDY PLAINTIFFS:        BRUNO & BRUNO
                                          BY:   JOSEPH M. BRUNO, ESQ.
                                          855 Baronne Street
4                                         New Orleans, LA 70113

5
                                          ANDERSON KILL & OLICK
6                                         BY:   JOHN N. ELLISON, ESQ.
                                          1600 Market Street, Suite 2500
7                                         Philadelphia, PA 19103

8
                                          FAYARD & HONEYCUTT
9                                         BY:   CALVIN C. FAYARD, JR., ESQ.
                                          519 Florida Avenue Southwest
10                                        Denham Springs, LA 70726

11
                                          RANIER, GAYLE & ELLIOT
12                                        BY:   N. FRANK ELLIOT, III, ESQ.
                                          1419 Ryan Street
13                                        Lake Charles, LA 70602-1890

14
                                          LEVIN, PAPANTONIO, THOMAS,
15                                        MITCHELL, ECHSNER & PROCTOR
                                          BY:   MATTHEW D. SCHULTZ, ESQ.
16                                        316 S. Baylen Street, Suite 600
                                          Pensacola, FL 32581

17

18                                        LARRY D. DYESS, ESQ.
                                          4637 Jamestown Avenue, Suite C
19                                        Baton Rouge, LA 70808

20

21
     FOR STATE FARM FIRE & CASUALTY
22   COMPANY:                             STONE, PIGMAN, WALTHER, WITTMANN
                                          BY:   WAYNE J. LEE, ESQ.
23                                              STEPHEN G. BULLOCK, ESQ.
                                          546 Carondelet Street
24                                        New Orleans, LA 70130

25

4

```
 1   FOR TRAVELERS INSURANCE COMPANY
     AND STANDARD FIRE INSURANCE
 2   COMPANY:                          LUGENBUHL, WHEATON, PECK,
                                       RANKIN & HUBBARD
 3                                     BY:  RALPH S. HUBBARD, ESQ.
                                            SIMEON B. REIMONENQ,JR,ESQ.
 4                                          SETH A. SCHMEECKLE, ESQ.
                                       601 Poydras Street, Suite 2775
 5                                     New Orleans, LA 70130

 6

 7
     FOR STANDARD FIRE INSURANCE
 8   COMPANY:                          ROBINSON & COLE
                                       BY:  WYSTAN M. ACKERMAN, ESQ.
 9                                          STEPHEN E. GOLDMAN, ESQ.
                                       280 Turnbull Street
10                                     Hartford, CT 06103-3597

11

12   FOR ENCOMPASS INSURANCE COMPANY,
     ALLSTATE INSURANCE COMPANY AND
13   LIBERTY MUTUAL INSURANCE COMPANY: BARRASSO USDIN KUPPERMAN
                                       FREEMAN & SARVER
14                                     BY:  JUDY Y. BARRASSO, ESQ.
                                            H. MINOR PIPES, III, ESQ.
15                                     LL&E Tower, Suite 1800
                                       909 Poydras Street
16                                     New Orleans, LA 70112

17

18   FOR AMERICAN INSURANCE COMPANY:   DUPLASS ZWAIN BOURGEOIS, MORTON,
                                       PFISTER & WEINSTOCK
19                                     BY:  KELLY C. BOGART, ESQ.
                                       3838 N. Causeway Blvd.,Suite 2900
20                                     Metairie, LA 70002

21

22
     FOR AAA HOMEOWNERS AUTO CLUB
23   FAMILY INSURANCE COMPANY:         JOHNSON, JOHNSON, BARRIOS &
                                       YACOUBIAN
24                                     BY:  ALAN J. YACOUBIAN, ESQ.
                                            NEAL J. FAVRET, ESQ.
25                                     701 Poydras Street, Suite 4700
                                       New Orleans, LA 70139-7708
```

5

```
 1
      FOR LAFAYETTE INSURANCE COMPANY:     LAW FIRM OF WILLIAM J. WEGMANN
 2                                         BY:  WILLIAM J. WEGMANN, JR., ESQ
                                           110 Veterans Memorial Boulevard
 3                                         Suite 440
                                           Metairie, LA 70005
 4

 5

 6    FOR LOUISIANA CITIZENS PROPERTY
      INSURANCE CORPORATION:               BIENVENU, FOSTER, RYAN & O'BANNON
 7                                         BY:  GREGOR J. McDONALD, ESQ.
                                           1010 Common Street, Suite 2200
 8                                         New Orleans, LA 70112-2401

 9

10

11

12

13

14

15    Official Court Reporter:            Karen A. Ibos, CCR, RPR
                                          500 Poydras Street, Room HB-406
16                                        New Orleans, Louisiana 70130
                                          (504) 589-7776
17

18

19        Proceedings recorded by mechanical stenography, transcript
      produced by computer.
20

21

22

23

24

25
```

6

```
 1                    P R O C E E D I N G S
 2                 (FRIDAY, OCTOBER 27, 2006)
 3                   (MOTION PROCEEDINGS)
 4
 5           THE DEPUTY CLERK:  Court's in session, please be seated.
 6   This is civil action 05-4182, reference 06-1672, 1673 and 1674.
 7           MR. BRUNO:  Good afternoon, your Honor.  Are you all
 8   right?
 9           THE COURT:  Yeah, I'm all right, I'm just waiting.
10           MR. BRUNO:  I didn't know if you were ready for us or not.
11   Your Honor, Joseph Bruno, liaison counsel.  John Ellison will be
12   arguing for the Chehardy group and Mr. Garner and then Mr. Bob
13   Creely.  We've agreed to split the time.  And all of the plaintiffs
14   will speak first, even though we are defending some motions and
15   proposing some motions, but we figured the best thing to do is let
16   us go first, 30 minutes that side, go 30 minutes this side.
17           MR. HUBBARD:  With no rebuttal.
18           MR. BRUNO:  With no rebuttal.
19           THE COURT:  You can be seated.  I am just going to make a
20   few comments.  One reason for the, at least the way the world have
21   been in this case lately, the truncated time period is that I've had
22   hours of argument on the bulk of these issues and gone over
23   virtually every case that you have cited in a previous argument, so
24   I am familiar with the cases and the policy language.
25           As I see these cases, as we still, the issue, really the
```

 1  being at unbelievable heights, about wave action creating all kinds

 2  of problems and putting pressure on all of the defenses that this

 3  city has.  And I guess I'll go ahead and jump right to there now, if

 4  the court were to go down that road and say, well, we have to

 5  determine whether it was natural or a man-made event, how do you do

 6  that?  You would be making up some new rules because nobody else has

 7  done that before.

 8          THE COURT:  You mean without a trial?

 9          MR. HUBBARD:  Even with a trial.  Without question, I mean

10  the Corps of Engineers has already said in the report that's not

11  properly in the record but that you've seen.  They've said that this

12  was due in large measure to Hurricane Katrina, a purely natural

13  event.  Is it a 60-40 test, is it 75-25, 80-20?

14          THE COURT:  Make sure I understand your argument.  I guess

15  we can agree that if Hurricane Katrina would not have occurred on

16  August 29th, 2005, that the levees probably would not have breached

17  at that time or been overflowed either, I think we can probably say

18  that.

19          MR. HUBBARD:  Exactly.

20          THE COURT:  The question is though if they breach and one

21  overflowed, is that an occurrence -- then we get into is that an

22  occurrence under your all risk policy or not?

23          MR. HUBBARD:  We don't really use the word occurrence, we

24  just pay for damages that are not excluded, and the question is did

25  it create something that's exclude and, yes, it did, it created a

1   it be easy to say natural or man-made like they did in the earth

2   moving exclusion or they did in the Hartford policy?  Wouldn't that

3   be really easy if that's what you intend?  Because if I am shopping

4   for policies and I am looking around at all of these things and look

5   at the Hartford and say, look at this, how am I John Q. Public

6   supposed to know which one provides me what, unless I'm Nostradamus.

7           MR. HUBBARD:  All I can tell you, Judge, is that the

8   Cadwallaer case, which I just had up, by the Louisiana Supreme Court

9   in 2003, said you don't look to other policies to try to figure out

10  whether the one in front of you is ambiguous.  You look at the four

11  corners of what you've got and you deal with that.

12          THE COURT:  Then why do I go to the most expansive

13  definition that exists for flood?  That is water covering land.  Why

14  do I go to that in the context of an all risk policy when I've paid

15  for coverage for third-party negligence?

16          MR. HUBBARD:  Because the test is not whether it's treated

17  differently because it's in an all risk policy, the test is what is

18  the ordinary generally prevailing usage of the word in your

19  community.

20          THE COURT:  I think the Civil Code says you look at

21  context of the contract you're dealing with.

22          MR. HUBBARD:  Well, the Civil Code also says the line

23  about you use the generally prevailing meaning.

24          THE COURT:  You're right.

25          MR. HUBBARD:  And so then you look at what sophisticated

1   people in our community, how have they referred to what we're

2   dealing with here in the context of perhaps having levees that broke

3   that resulted in the inundation.

4         And Judge Africk says that "the property was damaged by

5   flood waters that inundated New Orleans following Hurricane

6   Katrina."  Judge Feldman says, "Plaintiff's home flooded during

7   Hurricane Katrina."  Judge Berrigan says, "the allegations in this

8   case arise --"

9         THE COURT:  I agree.  I'll tell you what Judge Duval will

10   say it was a flood.

11         MR. HUBBARD:  Exactly.

12         THE COURT:  There is a flood in the sense that these

13   houses were damaged by water.  But Judge Duval isn't necessarily

14   going to say that the policy when it says flood for the purposes of

15   insurance policy means water damage -- why don't you just put water

16   damage?  Water damage period.  Water damage, any damage by water.

17   That's the end of it, for any cause whatsoever.  I guess that would

18   be pretty clear.  Any damage by water.  So anyway.

19         It's really how you construe this word; if I am looking at

20   it, what does a flood mean in that context.  And I realize that

21   everybody is referred to this as a flood.  I am not saying it's not

22   a flood or the homes weren't flooded.  The homes were flooded, no

23   question.

24         MR. HUBBARD:  I guess what I'm suggesting, Judge --

25         THE COURT:  Water came into the house.

1    MR. HUBBARD:  And all I'm saying is that if that's what we

2  all called it, then that's what it is.  And the fact that you put

3  that word into an insurance policy is one reason why we don't have a

4  bunch of definitions for it is because we all know what a flood is.

5  And the word flood is not based on -- it's not a fair approach to

6  say, in my opinion, Judge, to say did you mean naturally causing or

7  did you mean caused by man, because the word flood means all of it.

8    It's like the word fire.  I would suggest the same thing.

9  Fire.  What is fire?  Well, it's combustion.  Is it combustion

10  that's caused by a kid playing with a lighter or is it combustion

11  that's caused by God when your house is hit by lightening?

12    THE COURT:  All of the terms following the word flood are

13  standing out there, some of them would be synonymous with flood, by

14  the way.  All of them are natural acts.  If you look at the terms --

15  let me read it again, I ought to know it by now -- a surface water,

16  why isn't that a flood.

17    Waves, why isn't that a flood?  If waves come into your

18  house.  Tidal waves, overflow of a body of water, all of them.  I

19  mean, why isn't that a flood?  Why does it put the word flood there,

20  that would be simple.  That's it.  Water damage exclusion, flood.

21    MR. HUBBARD:  Because it's a defined word and that's the

22  way -- you can choose to define a word however you wish.

23    THE COURT:  If those are modifiers of the word flood,

24  they're all natural.

25    MR. HUBBARD:  Let's talk about that because that's exactly

74

1

2                        REPORTER'S CERTIFICATE

3

4        I, Karen A. Ibos, CCR, Official Court Reporter, United States

5    District Court, Eastern District of Louisiana, do hereby certify

6    that the foregoing is a true and correct transcript, to the best of

7    my ability and understanding, from the record of the proceedings in

8    the above-entitled and numbered matter.

9

10

11

12                              Karen A. Ibos, CCR, RPR

13                              Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25