No **06 - 00056**

DEC 0 8 2006

COURT OF APPEALS

NEW ORLEANS, LA.

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION

**RICHARD VANDERBROOK, MARY JANE SILVA, JAMES
CAPELLA, SOPHIA GRANIER, JACK CAPELLA as the Executor
of the Succession of LILIAN CAPELLA, GREGORY JACKSON,
PETER ASCANI, III and ROBERT G. HARVEY SR.,**
**Plaintiffs-Respondents**

U.S. COURT OF APPEALS
**FILED**

DEC 0 8 2006

CHARLES R. FULBRUGE III
CLERK

### VERSUS

**STATE FARM FIRE AND CASUALTY COMPANY, UNITRIN
PREFERRED INSURANCE COMPANY, HARTFORD INSURANCE
COMPANY OF THE MIDWEST, THE STANDARD FIRE INSURANCE
COMPANY, and HANOVER INSURANCE COMPANY,**
**Defendants-Petitioners**

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA
### CIVIL ACTION NOS. 05-4182, 05-6323
#### Hon. Stanwood R. Duval, Jr., Presiding

### PETITION FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(b)
### BY DEFENDANTS THE STANDARD FIRE INSURANCE COMPANY,
### HANOVER INSURANCE COMPANY and
### UNITRIN PREFERRED INSURANCE COMPANY

HART1-1368614-4

No. _____

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

## IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION

**RICHARD VANDERBROOK, MARY JANE SILVA, JAMES
CAPELLA, SOPHIA GRANIER, JACK CAPELLA as the Executor
of the Succession of LILIAN CAPELLA, GREGORY JACKSON,
PETER ASCANI, III and ROBERT G. HARVEY SR.,**
Plaintiffs-Respondents

### VERSUS

**STATE FARM FIRE AND CASUALTY COMPANY, UNITRIN
PREFERRED INSURANCE COMPANY, HARTFORD INSURANCE
COMPANY OF THE MIDWEST, THE STANDARD FIRE INSURANCE
COMPANY, and HANOVER INSURANCE COMPANY,**
Defendants-Petitioners

_____

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA
### CIVIL ACTION NOS. 05-4182, 05-6323
Hon. Stanwood R. Duval, Jr., Presiding

_____

## PETITION FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(b)
## BY DEFENDANTS THE STANDARD FIRE INSURANCE COMPANY,
## HANOVER INSURANCE COMPANY and
## UNITRIN PREFERRED INSURANCE COMPANY

_____

HART1-1368614-4

Ralph S. Hubbard III, T.A.
Joseph P. Guichet
Seth A. Schmeeckle
LUGENBUHL, WHEATON, PECK,
        RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:  (504) 568-1990

Attorneys for The Standard Fire
Insurance Company and Hanover
Insurance Company

Stephen E. Goldman
Wystan M. Ackerman
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone:  (860) 275-8200

Attorneys for The Standard Fire
Insurance Company

H. Alston Johnson III
PHELPS DUNBAR LLP
City Plaza
445 North Blvd., Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197

and

Neil C. Abramson
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130

Attorneys for Unitrin Preferred Insurance
Company

No. _____

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

### IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION

### RICHARD VANDERBROOK, ET AL.,

**Plaintiffs-Respondents**

**VERSUS**

### STATE FARM FIRE AND CASUALTY COMPANY, ET AL.,

**Defendants-Petitioners**

_____

### <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies, pursuant to Fed. R. Civ. P. 26.1 and Fifth Circuit Rule 28.2.1, that the following have an interest in the outcome of this case.  These presentations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Plaintiffs Richard Vanderbrook, Mary Jane Silva, James Capella, Sophia Granier (a/k/a Madeline Granier), Jack Capella as the Executor of the Succession of Lilian Capella, Gregory Jackson, Peter Ascani, III and Robert G. Harvey, Sr.

2. Counsel for Plaintiffs:  Robert G. Harvey, Sr., New Orleans, Louisiana

3. Counsel for Plaintiffs: Tamara Kluger Jacobson, New Orleans, Louisiana

4. Counsel for Plaintiffs:  Thomas Corrington, New Orleans, Louisiana

5.  Defendant State Farm Fire and Casualty Company, which is a subsidiary of State Farm Mutual Automobile Insurance Company

6.  Defendant Unitrin Preferred Insurance Company, which is a wholly owned subsidiary of Trinity Universal Insurance Company, which is a wholly owned subsidiary of Unitrin, Inc., a publicly traded company

7.  Defendant Hartford Insurance Company of the Midwest, which is a subsidiary of The Hartford Financial Services Group, Inc., a publicly traded company

8.  Defendant The Standard Fire Insurance Company, a wholly-owned subsidiary of Travelers Insurance Group Holdings Inc., which is a wholly-owned subsidiary of Travelers Property Casualty Corp., which is a wholly-owned subsidiary of The St. Paul Travelers Companies, Inc., a publicly traded company

9.  Defendant Hanover Insurance Company, a wholly owned subsidiary of Opus Investment Management, Inc., which is a wholly owned subsidiary of The Hanover Insurance Group, Inc., a publicly traded company of which Hotchkiss & Wiley owns more than 10% of the stock

10. Counsel for Defendant State Farm Fire and Casualty Company:  Wayne J. Lee, Stephen G. Bullock, Lesli D. Harris, Stone Pigman Walther Wittmann L.L.C., New Orleans, Louisiana

11. Counsel for Defendant Unitrin Preferred Insurance Company:  H. Alston Johnson III, Neil C. Ambramson, Phelps Dunbar LLP, New Orleans, Louisiana

12. Counsel for Defendant The Standard Fire Insurance Company, Hartford Insurance Company of the Midwest and Hanover Insurance Company: Ralph S. Hubbard, III, Joseph P. Guichet, Seth A. Schmeeckle, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, Louisiana

13. Counsel for Defendant The Standard Fire Insurance Company:  Stephen E. Goldman, Wystan M. Ackerman, Robinson & Cole LLP, Hartford, Connecticut

14. Counsel for Defendant Hartford Insurance Company of the Midwest: Christopher W. Martin, Martin R. Sadler, Martin, Disiere, Jefferson & Wisdom, L.L.P., Houston, Texas

15. Counsel for Defendant Hanover Insurance Company:  Paul E.B. Glad, Kevin P. Kamraczewski, Andrew R. Greene, Sonnenschein Nath & Rosenthal LLP, Chicago, Illinois

Ralph S. Hubbard, III

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ............................................. i

TABLE OF AUTHORITIES ........................................................................ vi

I.      INTRODUCTION ............................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................... 3

        A.      Plaintiff's Allegations ............................................................... 3

        B.      The Water Damage Exclusion .................................................. 3

        C.      The District Court's Order and Reasons .................................... 4

III.    QUESTIONS PRESENTED ............................................................. 10

IV.     RELIEF SOUGHT ........................................................................... 11

V.      WHY THIS APPEAL SHOULD BE ALLOWED ............................ 11

        A.      This Questions Presented Clearly Satisfy the Standards for
                Review Under Section 1292(b) ................................................ 12

                1.      The Proper Interpretation of the Water Damage
                        Exclusion is a Controlling Question of Law ................. 12

                2.      There is Substantial Ground for Difference of
                        Opinion With Respect to the District Court's
                        Ruling ........................................................................... 13

                3.      Allowing This Interlocutory Appeal Will
                        Materially Advance the Ultimate Termination of
                        This Case ...................................................................... 18

        B.      This Court Should Grant Leave to Appeal Because an
                Appellate Decision on the Question Presented Will Aid
                the Resolution of Thousands of Other Hurricane Katrina
                Lawsuits ................................................................................. 19

VI.     EXPEDITED TREATMENT OF THIS APPEAL IS
        APPROPRIATE ............................................................................. 20

VII.  CONCLUSION .................................................................................. 20

CERTIFICATE OF SERVICE ................................................................... 22

## **EXHIBITS**

District Court's Order and Reasons ................................................................A

Excerpts of Transcript of Oral Argument, Oct. 27, 2006 .............................B

## TABLE OF AUTHORITIES

### CASES

American Guar. & Liab. Ins. Co. v. 1906 Co.,
129 F.3d 802 (5th Cir. 1997) .................................................................. 13

American Marine Underwriters, Inc. v. Holloway,
826 F.2d 1454 (5th Cir. 1987) .............................................................. 13

Bartlett v. Cont'l Divide Ins. Co., 697 P.2d 412 (Colo. Ct. App. 1984),
aff'd, 730 P.2d 308 (Colo. 1986) ........................................................... 17

Berthelot v. Boh Bros. Const. Co., L.L.C.,
431 F. Supp. 2d 639 (E.D. La. 2006) ...................................................... 6

Boudreaux v. Dep't of Transp. & Dev.,
690 So. 2d 114 (La. App. 1 Cir. 1997) ................................................... 15

Brown v. Bullock, 294 F.2d 415 (2d Cir. 1961) ........................................... 19

Buente v. Allstate Prop. & Cas. Ins. Co.,
2006 WL 980784 (S.D. Miss. Apr. 12, 2006) .................................. 6, 17

Cadwallader v. Allstate Ins. Co., 848 So. 2d 577 (La. 2003) ............... 5, 9, 15

Casey v. Gen. Accident Ins. Co.,
578 N.Y.S.2d 337 (N.Y. App. Div. 1991) ............................................. 18

Citation Ins. Co. v. Gomez, 426 Mass. 379 (1998) ..................................... 17

Clade v. Stone Ins., Inc., 2006 WL 2366373 (E.D. La. Aug. 14, 2006) ........ 5

Coleman v. School Bd., 418 F.3d 511 (5th Cir. 2005) ................................... 8

Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863 (1994) ............. 11

Dobson v. Allstate Ins. Co.,
2006 WL 2078423 (E.D. La. July 21, 2006) ....................................... 5, 16

E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.,
　　444 N.Y.S.2d 321 (N.Y. App. Div. 1981)................................................. 17

Egle v. Allstate Ins. Co., 889 So. 2d 413 (La. App. 3 Cir. 2004)................. 13

Florida E. Coast Ry. Co. v. United States,
　　519 F.2d 1184 (5th Cir. 1975)................................................................ 13

Front Row Theatre, Inc. v. American Mfr. Mut. Ins. Cos.,
　　18 F.3d 1343 (6th Cir. 1994).................................................................. 17

Gleason v. Nuco, Inc., 774 So. 2d 1240 (La. App. 1 Cir. 2000).................. 15

Hadjipateras v. Pacifica, S.A., 290 F.2d 697 (5th Cir. 1961)...................... 12

In re Ingram Barge Co., 435 F. Supp. 2d 524 (E.D. La. 2006)................. 1, 5

Johnson v. Burken, 930 F.2d 1202 (7th Cir. 1991)...................................... 12

Kane v. Royal Ins. Co., 768 P.2d 678 (Colo. 1989)......................... 10, 17, 18

Kish v. Ins. Co. of N. Am., 883 P.2d 308 (Wash. 1994)................................ 9

Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave
　　Achille Lauro in Amministrazione Straordinaria,
　　921 F.2d 21 (2d Cir. 1990)............................................................... 12, 13

La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,
　　630 So. 2d 759 (La. 1994)..................................................................... 8, 9

Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.,
　　432 F. Supp. 2d 488 (E.D. Pa. 2006)..................................................... 17

Morehead v. Allstate Ins. Co., 406 F.2d 122 (5th Cir. 1969)...................... 13

Pakmark Corp. v. Liberty Mut. Ins. Co.,
　　943 S.W.2d 256 (Mo. Ct. App. 1997)................................................... 17

Pracht v. City of Shreveport, 830 So. 2d 546 (La. App. 2 Cir. 2002)......... 14

Principal Health Care of La., Inc. v. Lewer Agency, Inc.,
    38 F.3d 240 (5th Cir. 1994) .................................................................... 13

Roberts v. Murphy Oil Corp., 577 So. 2d 308 (La. App. 4 Cir. 1991) ........ 15

Saden v. Kirby, 660 So. 2d 423 (La. 1995) .................................................. 14

Smith Lupo Williams Partners v. Carter,
    2006 WL 2548255 (E.D. La. Aug. 31, 2006) ............................................ 5

Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.,
    86 F.3d 656 (7th Cir. 1996) ..................................................................... 18

St. Paul Fire & Marine Ins. Co. v. Valentine,
    665 So. 2d 43 (La. App. 1 Cir. 1995) ........................................................ 8

State v. All Property & Cas. Ins. Carriers,
    2006 WL 2498196 (La. Aug. 25, 2006) .................................................... 5

Summerville v. Missouri Pac. R.R. Co.,
    509 So. 2d 639 (La. App. 3 Cir. 1987) .................................................... 15

Sunshine Motors, Inc. v. New Hampshire Ins. Co.,
    530 N.W.2d 120 (Mich. Ct. App. 1995) .................................................. 17

Sweeney v. City of Shreveport,
    584 So. 2d 1248 (La. App. 2 Cir. 1991) .................................................. 16

TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.,
    114 F.3d 731 (8th Cir. 1997) ................................................................... 17

Team Envtl. Servs., Inc. v. Addison, 2 F.3d 124 (5th Cir. 1993) ................. 16

Travelers Indem. Co. v. Powell Ins. Co.,
    1996 WL 578030 (E.D. La. Oct. 4, 1996) ............................................... 16

## STATUTES

28 U.S.C. § 1292(b) ................................................................................. 2, 3

42 U.S.C. § 4001(b) .................................................................................. 2

La. Civ. Code § 2047 ....................................................................... 1, 5, 6, 8

La. Civ. Code § 2052 ................................................................................. 8

## I.   INTRODUCTION

The fundamental question of law in this case is whether the massive inundation of New Orleans at the time of Hurricane Katrina constitutes a "flood" as that term is used in property insurance policies.  In answering that question, Judge Duval of the Eastern District of Louisiana recognized that "everybody is referr[ing] to this as a flood" and that "[t]he homes were flooded, no question."[1] Judge Duval also acknowledged that the Louisiana Civil Code requires that "[t]he words of a contract must be given their generally prevailing meaning."[2]  Judge Duval, however, then made a fundamental legal error by failing to follow this basic requirement of the Louisiana Civil Code and ruling that the "flooding that ravaged New Orleans"[3] was not a "flood" if caused by human act or omission.

The generally prevailing meaning of the word "flood" is an inundation of ordinarily dry land.  Although Judge Duval does not appear to have disagreed with that proposition, he disregarded the requirements of Louisiana law and found that because there was more than one dictionary definition of the word "flood," he was compelled to apply the most restrictive definition in the dictionary.  Judge Duval then ruled that the word "flood" should be construed as limited to a "natural" event in some insurance policies, but not others.  In Judge Duval's view, whether each

---

[1] Transcript of Oral Argument, Oct. 27, 2006 (hereinafter, "Trans."), at p. 45 (Exhibit B hereto).
[2] La. Civ. Code § 2047.
[3] In re Ingram Barge Co., 435 F. Supp. 2d 524, 525 (E.D. La. 2006) (Berrigan, C.J.).

policyholder's damage was caused by "flood" within the meaning of the policies will vary, depending on which insurer issued the policy, which levee breaks the water came from, and what caused the levees to fail. This ruling defies common sense, distorts Louisiana principles of contract interpretation, and is contrary to well-established precedent. It also threatens to wreak havoc on the well-established relationship between the insurance industry and the federally-subsidized National Flood Insurance Program.[4]

Recognizing that "the potential impact of [this] decision on individuals as well as the insurance industry might be considered overwhelming," Judge Duval certified his Order on Defendants' Rule 12(c) motions for judgment on the pleadings for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[5] Defendants-Petitioners The Standard Fire Insurance Company ("Standard Fire"), Hanover Insurance Company ("Hanover") and Unitrin Preferred Insurance Company ("Unitrin") now seek leave to appeal. This Court should grant leave to appeal because the question presented involves a controlling question of law of great importance in numerous cases.

---

[4] The NFIP was designed to make federally funded flood insurance available because "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions." 42 U.S.C. § 4001(b).

[5] District Court's Order and Reasons ("Ord."), dated Nov. 27, 2006, at 4, 85 (attached as Exhibit A hereto).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Plaintiffs' Allegations

On August 29, 2005, Hurricane Katrina passed through New Orleans. Plaintiffs' Petition ("Pet."), ¶ 1.  Each plaintiff owns a home in New Orleans that was insured by one of the defendants and that sustained substantial water damage at the time of Hurricane Katrina.  Id., ¶ 7.  Plaintiffs allege that "[s]ometime between 10:00 and 11:00 a.m. on August 29, 2005, before the full force of [Hurricane Katrina] reached the City of New Orleans, a small section of the concrete outfall canal wall known as the 17th Street Canal, suddenly broke, causing water to enter the streets of the City of New Orleans and homes of Petitioners . . . ."  Id., ¶ 3.

Plaintiffs claim that Defendants improperly failed to pay for the water damage to their homes because it is not an excluded loss.  (Id., ¶¶ 4, 10.)  Plaintiffs also contend that the water damage exclusions in the Policies are unconscionable and void.[6]  (Id., ¶ 11.)

### B.     The Water Damage Exclusion

The policies issued to Plaintiffs by Defendants-Petitioners Standard Fire, Hanover and Unitrin all contain the following water damage exclusion (hereinafter,

---

[6] Plaintiffs also alleged, separately, that the Orleans Levee Board "breached their duty to Petitioners by failing to correct the break [in the canal wall] or warn others including Petitioners

the "ISO Water Damage Exclusion"[7]):

> We do not insure for loss caused *directly or indirectly* by any of the following. *Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.*
>
> **c.     Water Damage**, meaning:
>
>> **(1)** *Flood*, surface water, waves, tidal water, *overflow of a body of water*, or spray from any of these, whether or not driven by wind;
>>
>> [Ord., 15 (italics added).]

The question of law presented by the motions to dismiss before the District Court was simply whether this exclusion bars coverage for damage to Plaintiffs' property caused by water entering the streets of New Orleans from a canal, as a result of a break in a canal wall. (Pet., ¶ 3.)

## C.     The District Court's Order and Reasons

At the beginning of its opinion, the District Court correctly stated that the cases before the court "concern damages caused by **flooding as a result of breaches or overtopping**" of levees in New Orleans. Ord., 1 (emphasis added). In other words, regardless of whether the water comes from "overtopping" of levees due to the forces of the hurricane or "breaches" of levees allegedly due in part to negligence, the inundation was "flooding." The District Court also correctly recognized that, under Louisiana law, "[w]ords and phrases used in an

---

of the impending water intrusion . . . ." Id., ¶ 6. The claims against the Orleans Levee Board were severed and remanded to state court. Ord., 6.

insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." Ord., 8 (quoting Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003)). See also La. Civ. Code § 2047 ("The words of a contract must be given their generally prevailing meaning.").

There is no doubt what the "generally prevailing meaning" of the word "flood" is in New Orleans. As Judge Duval stated at oral argument, "**I realize that everybody is referr[ing] to this as a flood. I'm not saying it's not a flood or the homes weren't flooded. The homes were flooded, no question.**" Trans., at 45 (emphasis added). The Louisiana Supreme Court has similarly recognized that "[i]n the City of New Orleans, where the levees failed, flood waters swamped large portions of the City." State v. All Property & Cas. Ins. Carriers, 2006 WL 2498196, at *1 (La. Aug. 25, 2006) (emphasis added). Numerous judges of the Eastern District of Louisiana have described the inundation of New Orleans as a flood.[8] Under Louisiana law, Judge Duval was required to apply that "generally

---

[7] This exclusion was drafted by the Insurance Services, Office, Inc. (ISO), which prepares standardized insurance policy language used by many insurers in order to help them "measure, manage and reduce risk." Ord., 15 n.4.

[8] Dobson v. Allstate Ins. Co., 2006 WL 2078423, at *11 (E.D. La. July 21, 2006) (Vance, J.); Smith Lupo Williams Partners v. Carter, 2006 WL 2548255, at *1 (E.D. La. Aug. 31, 2006) (Africk, J.) (noting that property was "damaged by the floodwaters that inundated New Orleans following Hurricane Katrina"); Clade v. Stone Ins., Inc., 2006 WL 2366373, at *1 (E.D. La. Aug. 14, 2006) (Feldman, J.) ("Plaintiff's home flooded during Hurricane Katrina."); In re Ingram Barge Co., 435 F. Supp. 2d 524, 525 (E.D. La. 2006) (Berrigan, C.J.) ("The allegations in this case arise out of the damage caused by the flooding that ravaged New Orleans after

prevailing meaning" of the word "flood" in interpreting the contracts at issue. La. Civ. Code § 2047.  He erred in failing to do so.

In his opinion, Judge Duval acknowledged that "**[c]ertainly the damage sued upon was caused by flooding** . . . ."  Ord., 44.  That should have been the end of his analysis under Louisiana law.  He proceeded, however, to pose the question of whether "the flooding caused by negligent acts or omissions [is] excluded by the plain language of the policy."  Id. (emphasis added).  Judge Duval then reviewed Webster's Dictionary and held that "because the policies are all-risk, and because 'flood' has numerous definitions, it reasonably could be limited to natural occurrences" rather than man-made occurrences, and, therefore, that the term "flood" was ambiguous. Ord., 40.

In creating a distinction between "natural" and "man-made" floods, the District Court reasoned that if "flood" were construed simply as the "inundation of usually dry land by water," as Defendants contended, the remainder of the exclusion would be "superfluous" because "[t]he ensuing words '[surface water,] waves, tidal water, overflow of a body of water or spray from any of these, whether or not driven by wind' all are instances relating to **natural** events which

---

Hurricane Katrina."); Berthelot v. Boh Bros. Const. Co., L.L.C., 431 F. Supp. 2d 639, 642 (E.D.La. 2006) (Duval, J.) (noting that litigation arose out of "the canal levee and/or floodwall breaches and subsequent flooding which occurred after Hurricane Katrina struck New Orleans"). See also Buente v. Allstate Prop. & Cas. Ins. Co., 2006 WL 980784, at *1 (S.D. Miss. Apr. 12, 2006) (holding that "the inundation which occurred at the time of Hurricane Katrina was a flood, as that term is ordinarily understood").

can cause inundation of usually dry land." Id., 40-41 (emphasis in original). Judge Duval offered no explanation, however, for that conclusion. He failed to address Defendants' argument that the opposite is true -- if "flood" were limited to purely "natural" events, the remainder of the exclusion would be superfluous because it is difficult to conceive of a natural "flood" that would not consist of surface water, waves, tidal water, or overflow of a body of water.[9]

The District Court's distinction between "natural" floods and "man-made" floods was simply an arbitrary limitation on the meaning of the word "flood." It would be equally arbitrary, for example, to limit "flood" to salt water rather than fresh water, or to inundation caused by water from rivers rather than lakes or oceans.

Ultimately, Judge Duval concluded that the same word -- "flood" -- has a different meaning in the ISO policy than it has in the State Farm Fire & Casualty Co. ("State Farm") policy. State Farm's policy contains the exact same list of types of water damage as the ISO exclusion, i.e., "flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these . . . ." Ord., 50. Judge Duval held, however, that because State Farm's anti-concurrent causation language introducing its exclusion contains slightly different language

---

[9] Judge Duval's conclusion that an "overflow of a body of water" can only be a "natural" event is also inconsistent with his observation that man-made "pumps not working in a heavy rain" have "cause[d] the streets to overflow with water" in New Orleans. Ord., 45.

from the ISO exclusion, the State Farm exclusion "excludes coverage for all flooding," whether natural or man-made. Ord., 50. This result makes no sense. The word flood has one "generally prevailing meaning," not two different meanings. La. Civ. Code § 2047. Moreover, the purpose of the anti-concurrent causation clauses in both the ISO and State Farm policies is to specify that a loss caused by "flood" (or any of the other types of water damage listed therein) is not covered irrespective of what causes or contributes to the water damage. The anti-concurrent causation clauses do not and cannot change the ordinary meaning of the word "flood."

After concluding that the word "flood" was ambiguous, Judge Duval proceeded to apply the "reasonable expectations doctrine" under which "[t]he court should construe the policy 'to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry.'" Ord., 11 (quoting La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759, 764 (La. 1994)).[10] See also La. Civ. Code § 2052. Judge Duval concluded that "if a consumer were to actually read the three different policy language[s] presented in this case [i.e., ISO, State Farm and Hartford], one would expect that he or she would choose the ISO

---

[10] It is clear that the "reasonable expectations" doctrine would be inapplicable if Judge Duval had concluded that the word "flood" is unambiguous. Coleman v. School Bd., 418 F.3d 511, 522 (5th Cir. 2005) (Louisiana law "precludes use of the reasonable expectations doctrine to recast policy language when such language is clear and unambiguous."); St. Paul Fire & Marine Ins. Co. v. Valentine, 665 So. 2d 43, 47 (La. App. 1 Cir. 1995) (reasonable expectations doctrine inapplicable where policy unambiguous).

policy as it would be reasonable to assume that by comparison, it only excludes coverage for natural acts, unlike the other two policies." Ord., 45.[11]  Judge Duval also concluded that "[a]n insured may reasonably expect overtopping of a levee, but on the other hand an insured may not reasonably expect that levees designed and certified by the United States Corps of Engineers would fail as a result of negligent design and construction as has been alleged." Ord., 47.

Neither of these conclusions is correct or even addresses the question of what the "reasonable expectations of the parties" were "in the light of the customs and usages of the industry." La. Ins. Guar. Ass'n, 630 So. 2d at 764.  There is no basis in the policy language or any other part of the record to conclude that the parties would expect that the water damage exclusion would apply if levees overflowed, but not if levees breached as a result of negligence.  Plaintiffs plainly "knew that flood would be excluded by any insurance policy they purchased, as exemplified by the existence of the National Flood Insurance Program (of which the Plaintiffs' county was a part)." Kish v. Ins. Co. of N. Am., 883 P.2d 308, 312-13 (Wash. 1994).

The District Court relied heavily on a few cases holding that a water main break does not constitute a "flood," without explaining how a water main break

---

[11] This analysis is contrary to Louisiana law.  The Louisiana Supreme Court has held that it was error for a lower court to construe one insurance policy based on a comparison with other insurance policies. Cadwallader, 848 So. 2d at 583.  See infra at p. 15.

that results solely from human acts or omissions could possibly be comparable to the massive inundation of New Orleans during a hurricane. Id., 27-29. Judge Duval then dismissed as inapposite cases across the country holding that water damage exclusions applied where levees and dikes failed as a result of human acts or omissions, simply because those courts did not directly address a potential "natural" versus "man-made" distinction. Id., 30-31. Judge Duval relied heavily on a dissenting opinion in Kane v. Royal Ins. Co., 768 P.2d 678 (Colo. 1989), in which the majority held that "[t]he generally accepted meaning of the term 'flood' does not include a distinction between artificial and natural floods." Ord., 19 (quoting Kane, 768 P.2d at 681) (emphasis added).

Judge Duval's distinction between "natural" floods and "man-made" floods would also be unworkable as applied to real world scenarios. There are few floods that could not be prevented if manmade structures controlling the waters or damaged by the waters were perfectly engineered and constructed. As Judge Duval recognized at oral argument, no one suggests that the levees in New Orleans would have failed on August 29, 2005 if it were a calm, sunny day. Trans., 38.

## III.   QUESTIONS PRESENTED

1.     Does the ISO Water Damage Exclusion apply to damage to Plaintiffs' property caused by water entering the streets of New Orleans from a canal, as a

result of breaks in a levee wall, assuming that human acts or omissions may have contributed to the levee breaks?

2.     Was the District Court's denial of Defendants' Rule 12(b)(6) motions to dismiss erroneous as a matter of law?

## IV.   RELIEF SOUGHT

Defendants seek permission to appeal pursuant to 28 U.S.C. § 1292(b) from the District Court's Order of November 27, 2006 denying their Rule 12(b)(6) motions to dismiss.  Defendants seek reversal of the District Court's Order, after briefing and oral argument on the merits.

## V.   WHY THIS APPEAL SHOULD BE ALLOWED

In accordance with 28 U.S.C. § 1292(b), the District Court certified that "all orders entered herein involve a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from these orders may materially advance the ultimate termination of the litigation."  Ord., 85. This case involves precisely the type of question for which Section 1292(b) was designed to facilitate interlocutory review.  See Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 883 (1994) (noting that § 1292(b) is a suitable "vehicle for vindicating serious contractual interpretation claims").  The proper application of the ISO Water Damage Exclusion to Plaintiffs' allegations is a controlling question of law not only in this case but in thousands of cases raising the same

issue.  There is more than substantial ground for disagreement with the District Court's opinion, and a reversal would end this litigation.

A. **The Questions Presented Clearly Satisfy the Standards for Review Under Section 1292(b)**

1. **The Proper Interpretation of the Water Damage Exclusion is a Controlling Question of Law**

The District Court correctly determined that this case involves a "controlling question of law" within the meaning of § 1292(b).  As this Court has previously recognized, "the issue need not, for example, be dispositive to be a 'controlling question'" under § 1292(b).  Hadjipateras v. Pacifica, S.A., 290 F.2d 697, 702 n.10 (5th Cir. 1961).  A question is "controlling" where "interlocutory reversal might save time for the district court, and time and expense for the litigants."  Johnson v. Burken, 930 F.2d 1202, 1206 (7th Cir. 1991) (Posner, J.).  A question "need not affect a wide range of pending cases" in order to be controlling, although where, as here, that is the case, it provides additional grounds for the court of appeals to exercise its discretion to grant the petition.  Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 921 F.2d 21, 24 (2d Cir. 1990).

12

In this case, the question of whether there is an ambiguity in the ISO Water Damage Exclusion is clearly a question of law,[12] and is subject to de novo review.[13]  It is equally clear that if this Court reverses the District Court and holds that the ISO Water Damage Exclusion unambiguously applies to the facts alleged, such a ruling will be dispositive of this case.  Plaintiffs' only claim is for water damage resulting from the levee breaks.  Pet., ¶¶ 3, 7.  A question of law is certainly "controlling" where, as here, reversal of the district court order will end the case.  Klinghoffer, 921 F.2d at 24 ("Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is "controlling" if reversal of the district court's order would terminate the action.").

### 2.    There is Substantial Ground for Difference of Opinion With Respect to the District Court's Ruling

The District Court also correctly determined that there is substantial ground for difference of opinion on its ruling.  The District Court's ruling is inconsistent with opinions of this Court and the Louisiana appellate courts.  It also conflicts

---

[12] Principal Health Care of La., Inc. v. Lewer Agency, Inc., 38 F.3d 240, 242 (5th Cir. 1994) ("Interpretation of an insurance policy is a question of law.") (applying Louisiana law); American Marine Underwriters, Inc. v. Holloway, 826 F.2d 1454, 1456 (5th Cir. 1987) ("Whether an insurance policy is ambiguous is a question of law for the court") (applying Louisiana law); Egle v. Allstate Ins. Co., 889 So. 2d 413, 415 (La. App. 3 Cir. 2004) (noting that "interpretation of an insurance policy is a question of law, and we have authority to construe provisions of the policy in order to resolve questions of coverage").

[13] American Guar. & Liab. Ins. Co. v. 1906 Co., 129 F.3d 802, 805 (5th Cir. 1997).