with recent decisions in the Southern District of Mississippi, decisions by Judge Vance of the Eastern District of Louisiana, and appellate precedent throughout the United States.

The District Court's opinion is inconsistent with this Court's ruling in Florida E. Coast Ry. Co. v. United States, 519 F.2d 1184 (5th Cir. 1975), where this Court, interpreting a federal statute, adopted a definition of "flood" as "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be . . . ." Id. at 1192 (rejecting argument that federal government's immunity under Flood Control Act applied "only with respect to natural, as opposed to artificially precipitated, floods"). The District Court's ruling is also contrary to well-established caselaw enforcing water damage exclusions as applied to water inundation losses caused by hurricanes. See, e.g., Morehead v. Allstate Ins. Co., 406 F.2d 122, 122 (5th Cir. 1969).

Judge Duval's opinion is also inconsistent with Louisiana appellate decisions that have repeatedly used the term "flood," in accordance with its plain meaning, to describe a large-scale inundation of water resulting in some degree from a human act or omission. See, e.g., Saden v. Kirby, 660 So. 2d 423, 424 (La. 1995) ("flood" exacerbated by alleged negligence of defendants); Pracht v. City of

Shreveport, 830 So. 2d 546, 548 (La. App. 2 Cir. 2002) ("flood" allegedly resulting from "failure to properly design, construct and maintain the drainage canal").[14]

Judge Duval's opinion also conflicts with Louisiana Supreme Court precedent on insurance policy construction. The Louisiana Supreme Court has held that "a rather simple word with a well-established common sense meaning which is referenced in the insurance policy in a clearly worded context" must be given its generally prevailing meaning. Cadwallader, 848 So. 2d at 580. The word "flood" is a simple word with an ordinary, everyday meaning -- a large-scale inundation of ordinarily dry land. A flood is a flood regardless of whether the cause was "natural" or "man-made" or some combination thereof.

The Louisiana Supreme Court also held in Cadwallader that the lower court erred in comparing the policy at issue with other insurance policies, stressing that the lower court "ignored the fundamental precept" that a court must apply the "plain, ordinary and generally prevailing meaning as set forth in the policy at hand." Id. at 583. Judge Duval quoted at length from Cadwallader (Ord., 8), but departed from the holding of the case when he construed the ISO exclusion based

---

[14] See also Gleason v. Nuco, Inc., 774 So. 2d 1240, 1241 (La. App. 1 Cir. 2000) ("flood" allegedly resulted from negligence in constructing and maintaining drainage facilities); Boudreaux v. Dep't of Transp. & Dev., 690 So. 2d 114, 120 (La. App. 1 Cir. 1997) ("flood" allegedly resulted from negligence in design and construction of bridge such that bridge improperly functioned as a dam); Roberts v. Murphy Oil Corp., 577 So. 2d 308, 311 (La. App. 4 Cir. 1991) ("flood" allegedly resulted from negligent construction of road which disrupted drainage system); Summerville v. Missouri Pac. R.R. Co., 509 So. 2d 639, 640 (La. App. 3 Cir. 1987) ("flood" allegedly caused or exacerbated by negligent obstruction of natural drainage).

on a comparison with the Hartford and State Farm policy language. Id., 45.

The District Court's ruling also conflicts with Sweeney v. City of Shreveport, 584 So. 2d 1248 (La. App. 2 Cir. 1991), writ denied, 589 So. 2d 1057 (La. 1991), in which the Louisiana Court of Appeal held that an anti-concurrent causation clause in an exclusion made the exclusion applicable regardless of whether negligence contributed to the loss. Id. at 1251. Judge Duval was required to follow Sweeney absent "persuasive data" that the Louisiana Supreme Court would reach a different result. Team Envtl. Servs., Inc. v. Addison, 2 F.3d 124, 127 (5th Cir. 1993). Sweeney was not even mentioned, however, in Judge Duval's 85-page opinion.

Judge Duval's decision is also inconsistent with a recent ruling by Judge Vance of the Eastern District of Louisiana. See Dobson v. Allstate Ins. Co., 2006 WL 2078423, at *11 (E.D. La. July 21, 2006) (Vance, J.) (holding that insureds had no possibility of recovering against insurance agents for allegedly misrepresenting that hurricane-related flooding would be covered); see also Travelers Indem. Co. v. Powell Ins. Co., 1996 WL 578030, at *3 (E.D. La. Oct. 4, 1996) (Vance, J.) (holding that water damage exclusion was unambiguous).

The District Court's ruling also differs from recent decisions in Hurricane Katrina cases in the Southern District of Mississippi, where Judge Senter has held that "[t]he inundation that occurred during Hurricane Katrina was a flood, as that

term is ordinarily understood . . . ." <u>Buente v. Allstate Prop. & Cas. Ins. Co.</u>, 2006 WL 980784, at *1-2 (S.D. Miss. Apr. 12, 2006).

The District Court's opinion is also in conflict with appellate decisions nationwide holding that water damage exclusions were applicable to losses caused by the failure of levees, dams and dikes, even where human acts or omissions caused or contributed to the event. <u>TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.</u>, 114 F.3d 731, 733 (8th Cir. 1997) (levee break); <u>Pakmark Corp. v. Liberty Mut. Ins. Co.</u>, 943 S.W.2d 256, 261-62 (Mo. Ct. App. 1997) (levee break); <u>E.B. Metal & Rubber Indus., Inc. v. Federal Ins. Co.</u>, 444 N.Y.S.2d 321, 321-22 (N.Y. App. Div. 1981) (dike failure) ; <u>Kane v. Royal Ins. Co.</u>, 768 P.2d 678, 681 (Colo. 1989) (dam failure); <u>Bartlett v. Cont'l Divide Ins. Co.</u>, 697 P.2d 412, 413 (Colo. Ct. App. 1984), <u>aff'd</u>, 730 P.2d 308 (Colo. 1986) (dam failure).[15]

Insofar as Judge Duval concludes that the word "flood" is ambiguous because it has multiple definitions (Ord., at 25-27, 39), other courts have held to the contrary. <u>See, e.g.</u>, <u>Citation Ins. Co. v. Gomez</u>, 426 Mass. 379, 381 (1998) ("Nor does the mere existence of multiple dictionary definitions of a word, without more, suffice to create an ambiguity, for most words have multiple definitions."); <u>Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.</u>, 432 F. Supp. 2d 488, 501

---

[15] <u>See also</u> <u>Front Row Theatre, Inc. v. American Mfr. Mut. Ins. Cos.</u>, 18 F.3d 1343, 1347 (6th Cir. 1994) (flooding caused in part by blocked drainage system); <u>Sunshine Motors, Inc. v. New</u>

(E.D. Pa. 2006) ("If multiple definitions alone created ambiguity, insurance policies would either lose all meaning or would devolve into epic tomes.").

The fact that there is substantial ground for difference of opinion is perhaps best demonstrated by Judge Duval's reliance on the <u>dissent</u> in <u>Kane</u>. <u>See</u> Ord., 31-33. The <u>majority</u> opinion of the Colorado Supreme Court, however, held that when the water damage exclusion "is construed in harmony with the generally accepted meaning of the term 'flood' and in the context of the facts of this case, <u>there is no doubt that this large-scale inundation of water was a 'flood.'</u>" <u>Id.</u> at 681 (emphasis added). Similarly here, there should be no doubt that the large-scale inundation of water in New Orleans was a "flood."

### 3.    Allowing This Interlocutory Appeal Will Materially Advance the Ultimate Termination of This Case

There is no question that this interlocutory appeal will materially advance the ultimate termination of this case. If this Court reverses the District Court decision and holds that the ISO Water Damage Exclusion bars coverage for the water damage alleged by Plaintiffs, such a ruling will be dispositive of the case. <u>See</u> <u>Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.</u> 86 F.3d 656, 659 (7th Cir. 1996) (holding that "materially advance" criterion under Section 1292(b) was satisfied where a reversal would be dispositive).

<u>Hampshire Ins. Co.</u>, 530 N.W.2d 120, 121 (Mich. Ct. App. 1995) (similar); <u>Casey v. Gen. Accident Ins. Co.</u>, 578 N.Y.S.2d 337, 338 (N.Y. App. Div. 1991) (similar).

**B.    This Court Should Grant Leave to Appeal Because An Appellate Decision On The Question Presented Will Aid the Resolution of Thousands of Other Hurricane Katrina Lawsuits**

This case is an ideal candidate for interlocutory review under Section 1292(b) because the question presented is not only a straightforward question of law, it is also a question that has been raised in thousands of other cases that are pending in the Eastern District of Louisiana.

Hurricane Katrina litigation is placing an extraordinary burden on the Eastern District of Louisiana.  The Chief Judge of that court recently issued a global order automatically extending defendants' time to plead, citing "the extraordinarily high volume of new civil cases" being filed.  Accepting this appeal will substantially advance the ultimate termination of thousands of cases filed in the Eastern District.  See Brown v. Bullock, 294 F.2d 415, 417 (2d Cir. 1961) (leave to appeal granted in part because issue presented "was likely to have precedential value for a large number of other suits").

Moreover, federal, state and local officials are heavily engaged in efforts to rebuild New Orleans.  Judge Duval's opinion will likely cause mass confusion regarding whether additional insurance recoveries might be available, which may lead to continued delays in a rebuilding process that has already taken too long.

It is also worth noting that this Court has granted interlocutory review in a case involving insurance coverage issues arising from the storm surge of Hurricane

Katrina in Mississippi. <u>See</u> <u>Tuepker v. State Farm Fire & Cas. Co.</u>, Case No. 06-00045 (5th Cir.). The issues in the present case are different, but no less important.

## VI.   EXPEDITED TREATMENT OF THIS APPEAL IS APPROPRIATE

Defendants-Petitioners respectfully request that, if the Court grants leave to appeal, the Court set an expedited schedule for briefing and oral argument pursuant to 5th Cir. R. 27.5. Given the importance of the issue presented and the likelihood that this Court's ruling will help to resolve thousands of cases pending in the Eastern District, expedited treatment of this appeal is warranted.

## VII.  CONCLUSION

The Court should grant this petition because the proper application of the ISO Water Damage Exclusion to the flooding that occurred in New Orleans is a matter of great importance in numerous lawsuits. It is clearly a controlling question of law on which there are substantial grounds for reversal. In due course, this Court should reverse the District Court's ruling.

Respectfully submitted,

_Neil C Abrams_

Neil C. Abramson (Bar #21436)
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130

And

H. Alston Johnson III (Bar # 7293)
PHELPS DUNBAR LLP
City Plaza
445 North Blvd., Suite 701
Baton Rouge, Louisiana 70802
Telephone: (225) 346-0285
Facsimile: (225) 381-9197

Attorneys for Unitrin Preferred
Insurance Company

Ralph S. Hubbard III, T.A., La. Bar. # 7040
Joseph P. Guichet, La. Bar # 24441
Seth A. Schmeeckle, La. Bar # 27076
LUGENBUHL, WHEATON, PECK,
        RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

Attorneys for The Standard Fire Insurance
Company and Hanover Insurance Company

Stephen E. Goldman
Wystan M. Ackerman
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone: (860) 275-8200
Facsimile: (860) 275-8299

Attorneys for The Standard Fire Insurance
Company

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading, as well as a computer readable disk copy, has been served upon the below listed counsel of record by hand delivery or by placing a copy of the same in both paper and electronic form in the U.S. Postal Service, with adequate postage affixed thereto, this 8th day of December, 2006:

Robert G. Harvey, Sr., Esq.
2609 Canal St., Fifth Floor
New Orleans, LA 70119

Thomas Corrington, Esq.
3431 Prytania St.
New Orleans, LA 70115

Tamara Kluger Jacobson, Esq.
2609 Canal Street, Fifth Floor
New Orleans, LA 70119

Wayne J. Lee, Esq.
Stephen G. Bullock, Esq.
Lesli D. Harris, Esq.
Stone Pigman Wather Wittmann L.L.C.
546 Carondelet St.
New Orleans, LA 70130

Christopher W. Martin, Esq.
Martin R. Sadler, Esq.
Martin, Disiere, Jefferson & Wisdom, L.L.P.
808 Travis St., Suite 1800
Houston, TX 77002

Seth A. Schmeeckle

22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE KATRINA CANAL BREACHES                    CIVIL ACTION
CONSOLIDATED LITIGATION
                                                NO. 05-4182

PERTAINS TO INSURANCE                           SECTION "K"(2)
*Vanderbrook*, C.A. No. 05-6323
*Xavier University*, C.A. No. 06–516
*Chehardy*, C.A. No. 06-1672, 06-1673, and 06-1674


and


KELLY A. HUMPHREYS                              CIVIL ACTION

VERSUS                                          NO. 06-0169

ENCOMPASS INSURANCE COMPANY, ET AL.             SECTION K(2)
****PRINT TO WEB****

<u>ORDER</u>

On September 19, 2006, *Berthelot, et al. v. Boh Bros. Construction, et al.*, C.A. No. 05-4182 was filed in the Eastern District of Louisiana. This case began the stream of complaints that have been filed as a result of damages arising out of all levee breaches which occurred in the aftermath of Hurricane Katrina.

*Berthelot* was transferred to the undersigned on February 23, 2006. (Doc. 47). It was subsequently determined by the *en banc* court of the Eastern District of Louisiana that in order to avoid conflicting decisions among the various sections of the Court, the proper approach would be to consolidate all such filings for purposes of pretrial discovery and motion practice. As such, what is now captioned "*In re: Katrina Canal Breaches Consolidated Litigation,*" C.A. No. 05-4182, has become the umbrella for all cases which concern damages caused by flooding as a result of breaches


EXHIBIT
A

or overtopping in the areas of the 17th Street Canal, the London Avenue Canal, the Industrial Canal, and the Mississippi Gulf River Outlet ("MRGO").

The following Orders and Reasons[1] are being entered in four individual cases which are part of the umbrella and all of which have as their centerpiece the issue of insurance coverage. Theses cases are:

*Vanderbrook, et al. v. State Farm Fire & Cas. Co., et al.* C.A. No. 05-6323;

*Xavier University of Louisiana v. Travelers Property Ca. Co. of America*, C.A. No. 06-516;

*Chehardy, et al. v. State Farm, et al.,* C.A. No. 06-1672, 06-1673, and 06-1674; and

*Humphreys v. Encompass Ins. Co.*, C. A. No. 06-169.[2]

Oral argument was conducted with respect to *Vanderbrook* on August 25, 2006, and with respect to *Xavier, Chehardy and Humphreys* on October 27, 2006. Based on the pleadings, memoranda, exhibits, arguments and the relevant law, the Court is prepared to rule on all the motions pending in all four cases.

**IT IS ORDERED** that this document shall be entered onto the docket of the *In re Katrina Canal Breaches Consolidated Litigation*, C.A. No. 05-4182 referencing all three of the cases noted above and *Humphreys* separately. The Court will begin with the *Vanderbrook* matter.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

[1]The document numbers referred to herein are those as entered in the Consolidated Matter unless otherwise noted; once a case is consolidated in the umbrella, any document filed is entered sequentially, regardless of the case to which it pertains.

[2]*Humphreys* was initially consolidated but at the request of the litigants it was terminated from the umbrella; however, in light of the inter-related nature of this case, the Court will include this case in this consolidated opinion.

**THIS ORDER PERTAINS SPECIFICALLY TO:**

*Vanderbrook, et al. v. State Farm Fire & Cas. Co., et al.* C.A. No. 05-6323;

## ORDER AND REASONS

Before the Court are the following motions filed in this matter:

Doc. No. 568     Motion for Judgment on the Pleadings filed by Hanover Ins. Co. ("Hanover") insurer of plaintiff James Capella and Madeline Grenier;[3]

Doc. No. 569     Motion for Judgment on the Pleadings filed by Standard Fire Ins. Co. ("Standard") insurer of plaintiffs Peter Anthony Ascani, III, Gregory R. Jackson, and Monica Reyes;

Doc. No. 570     Motion for Judgment on the Pleadings filed by State Farm Fire & Cas. Co. ("State Farm") insurer of Mary Jane Silva and Robert G. Harvey;

Doc. No. 572     Motion to Dismiss Party filed by Hartford Ins. Co. of the Midwest ("Hartford") insurer of Jack Capella as the Executor of the Succession of Lillian Capella;

Doc. No. 598     Motion for Judgment on the Pleadings filed by Unitrim Preferred Ins. Co. ("Unitrim") insurer of Richard Vanderbrook.

These motions were brought in response to the class action suit brought by the "Vanderbrook" plaintiffs.

The instant petition was initially filed in Civil District Court for the Parish of Orleans on October 14, 2005. Plaintiffs filed suit seeking coverage for damages caused by the collapse of the 17th St. Canal floodwall and the ensuing water damage as well as claims against the Board of

---

[3]At oral argument on these motions, Hanover orally moved to include in its motion the claims of Madeline Grenier who had been misidentified as Sophia Granier as the insured. This motion was orally granted. Thus, the docket sheet as to this motion does not include her as the subject of the motion; however, the docket sheet should be so amended to reflect that the plaintiff Sophia Granier is actually Madeline Grenier and **IT IS SO ORDERED**. At the time of the hearing, the relevant policy of insurance was introduced and filed into the record.

    Additionally, certain of the Defendants are improperly named. The Standard Fire Insurance Company ("Standard Fire") is improperly named as Travelers Insurance Company and St. Paul Travelers Insurance Company. Hartford Insurance Company of the Midwest ("Hartford") is improperly named as Hartford Insurance Company. Unitrin Preferred Insurance Company ("Unitrin") is improperly named as Kemper Insurance Company.

Commissioners for the Orleans Levee District ("OLD") for its alleged negligence. Defendants removed the case to this Court on December 2, 2005. On June 1, 2006, the Court severed the claims brought against OLD from those filed against the insurers and finding no basis for jurisdiction over OLD, remanded those claims to Civil District Court. The Court retained diversity jurisdiction over the remaining insurers.

Five different policies of insurance are involved in this case–all Homeowners/All Risk policies. Oral argument was conducted on August 25, 2006, and supplemental briefing ordered thereafter. Having reviewed the complaint, memoranda, exhibits, briefing, and the relevant law, the Court is now prepared to deliver its opinion.

It cannot be gainsaid that in approaching these motions, which are the first in a daunting line of litigation concerning insurance coverage for the losses caused by the canal breaches in New Orleans, the potential impact of such a decision on individuals as well as the insurance industry might be considered overwhelming. However, the Court believes that it is its duty to approach its analysis in a straightforward, judicious manner–that is analyzing the contractual disputes between an individual policy holder and the relevant insurer, sitting as an *Erie* court, using the civilian approach of a Louisiana court, applying the Louisiana Civil Code and seeking guidance from the jurisprudence of the state.

I.      **Civilian Approach as an *Erie* Court**

This Court will apply Louisiana law in an attempt to rule as a Louisiana court would if presented with the same issues. *Musser Davis Land Co. v. Union Pacific Resources,* 201 F.3d 561,

4

565 (5th Cir.2000), *citing Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80, 58 S.Ct. 817, 82 L.Ed. 1188

(1938); *Mozeke v. Int'l Paper Co.*, 856 F.2d 722, 724 (5th Cir.1988). As stated in *Musser:*

> To determine a state law question, we first look to decisions of the Louisiana
> Supreme Court. *See Transcontinental Gas v. Transportation Ins. Co.*, 953 F.2d 985,
> 988 (5th Cir.1992). If the Louisiana Supreme Court has not spoken on the issue, it
> is our duty to determine as best we can what that court would decide. *See id.; Hulin
> v. Fibreboard Corp.*, 178 F.3d 316, 318-19 (5th Cir.1999).

> Under Louisiana's Civil Law tradition, courts look first and foremost to statutory law.
> The Louisiana Civil Code instructs that "[sources of law are legislation and
> custom,]" and that "[l]egislation is a solemn expression of legislative will." "[T]he
> primary basis of law for a civilian is legislation, and not (as in the common law) a
> great body of tradition in the form of prior decisions of the courts." The concept of
> *stare decisis* is foreign to the Civil Law, including Louisiana. Therefore, in cases
> such as this we are guided by decisions rendered by the Louisiana appellate courts,
> particularly when numerous decisions are in accord on a given issue-the so-called
> *jurisprudence constant*-but we are not strictly bound by them.

*Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir.1992)

(footnotes omitted). Thus, the Louisiana Civil Code provides the primary source and framework by

which this Court must review the these contracts.  With this in mind, the Court will first examine

the allegations made by the plaintiffs.


## II.     The Petition and Issue Presented

Plaintiffs each own a home in New Orleans which is insured by one of the defendants and

which suffered substantial water damage at the time of Hurricane Katrina. (Petition, ¶ 7.)  They

allege that "[s]ometime between 10:00 and 11:00 a.m. on August 29, 2005, before the full force of

[Hurricane Katrina] reached the City of New Orleans, a small section of the concrete outfall canal

wall known as the 17th Street Canal, suddenly broke, causing water to enter the streets of the City

of New Orleans and homes of Petitioners," which damaged Plaintiffs' homes. (Id., ¶ 3.) Plaintiffs contend that "said water damage inflicted on the Petitioners' homes and property was not the result of flood, surface water, waves, title [sic] water, tsunami, seiche, overflow of a body of water, seepage under or over the outfall canal wall or spray from any of the above but was water intrusion, caused simply from a broken levee wall." (Id., ¶ 4 (emphasis added).) Plaintiffs claim that defendants improperly failed to pay for the water damage to their homes because it is not an excluded loss. (Id., ¶ 10.) Plaintiffs also contend that the water damage exclusions in the policies are unconscionable and void. (Id., ¶ 11.)

Plaintiffs further allege, separately, that the Levee Board "breached their duty to Petitioners by failing to correct the break [in the canal wall] or warn others including Petitioners of the impending water intrusion . . . ." (Id., ¶ 6.) As noted, these allegations have been severed and remanded to state court.

Plaintiffs contend that because Louisiana employs the "efficient proximate cause doctrine" with respect to coverage and because the third-party negligence of Orleans Levee District is the efficient, proximate cause of the subsequent flooding of plaintiffs' homes, their Homeowners Policies should provide coverage. The defendants maintain that under the clear, unambiguous terms of the policies at issue, they are entitled to judgment as a matter of law.

III.    Standard for Judgment on the Pleadings

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "'a complaint should not be dismissed for failure to state a

6

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id. citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Fifth Circuit explained:

> Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989). Further, "the plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities, Inc.* 94 F.3d 189, 194 (5th Cir. 1996). This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim. *Hitt*, 561 F.2d at 608. In other words, a motion to dismiss an action for failure to state a claim"admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992). Finally, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

*Id.* at 161-62. Bearing this standard in mind, the court will examine the civilian rules of construction to aid it in its determination of the viability of defendants' motions.

## IV. Legal Concepts for Contract Interpretation

### A.  Insurance Policy is a Contract and Rules of Construction

"An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship." La. Civ. Code art. 1983; *Edwards v. Daugherty*, 883 So.2d 932, 940 (La. 2004); *Peterson v. Schimek*, 729 So.2d 1024, 1028 (La. 1999). As such, the general rules of contract interpretation as set forth in the Louisiana Civil Code guide the Court in interpreting the subject insurance policies. *Peterson*, 729 So.2d at 1028. "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of

7

the parties to the contract. *See* La. Civ. Code art. 2045; *Carbon* [*v. Allstate Ins. Co.,* 97-3085, p. 4 (La. 10/20/98, 719 So. 2d 437, 439]; *Louisiana Ins.* [*Guar. Ass'n v. Interstate Fire & Cas. Co.* 03-0911, p. 5 (La. 1/14/94)], 630 So.2d 759, 763." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577 (La. 2003).

In *Cadwallader*, the Supreme Court of the State of Louisiana set forth succinctly the most important guiding principles:

> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *See* La. Civ Code art. 2047; *Peterson v. Schimek,* 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1028-29; *Carbon,* 719 So.2d at 440-441; *Reynolds,* 634 So.2d at 1183. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. *Carrier v. Reliance Ins. Co.,* 99-2573, p. 11 (La.4/11/00), 759 So.2d 37, 43; *Peterson,* 729 So.2d at 1029. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. *Succession of Fannaly v. Lafayette Ins. Co.,* 01-1355, p. 4 (La.1/15/02), 805 So.2d 1134, 1138; *Peterson,* 729 So.2d at 1029.
>
> . . .
>
> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Fannaly,* 805 So.2d at 1137; *Louisiana Ins.,* 630 So.2d at 764. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Peterson,* 729 So.2d at 1029; *Louisiana Ins.,* 630 So.2d at 764. The determination of whether a contract is clear or ambiguous is a question of law. *Louisiana Ins.,* 630 So.2d at 764.

*Cadwallader*, 848 So.2d at 580 (coverage provided by UM policy for resident relative in household did not include foster children). In addition, an insurance contract "is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given

8

meaning.   One portion of the policy should not be construed separately at the expense of disregarding other provisions." La. Civ. Code art. 2050. *Peterson*, 729 So.2d at 1029.

**B.**    **All-Risks Liability Insurance: Coverage, Exclusions and Ambiguities**

A Homeowners Policy is considered a type of "all-risks" insurance. " All-risks insurance is a special type of insurance extending to risks not usually contemplated, and generally allows recovery for all fortuitous losses, unless the policy contains a specific exclusion expressly excluding the loss from coverage." Jane Massey Draper, "Coverage Under All-Risk Insurance", 30 A.L.R.5th 170. The United States Court of Appeals for the Fifth Circuit acknowledged this concept stating, "[a] policy of insurance insuring against 'all risks' creates a special type of coverage that extends to risks not usually covered under other insurance; recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Alton Ochsner Medical Foundation v. Allendale Mut. Ins.*, 219 F.3d 501, 504 (5th Cir. 2000), *citing U.S. Indus., Inc. v. Aetna Cas. & Sur. Co.,* 690 F.2d 459, 461 (5th Cir.1982) (construing Louisiana law and citing *Dow Chem. Co. v. Royal Indem. Co.,* 635 F.2d 379, 387 (5th Cir.1981) (construing Texas law)).

Thus, in the context of the instant motions, under Louisiana law, unless there is a specific exclusion for the type of water damage that an insured has incurred, coverage is presumed under these policies. The focus of a court's inquiry then is on the relevant exclusions to coverage. "When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. . . . On the other hand, the insurer bears the

9

burden of proving the applicability of an exclusionary clause within a policy." *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000).

With respect to the proper approach concerning the interpretation of an exclusion, they are generally strictly construed. *Bezue v. Hartford Accident and Indem. Co.*, 224 So.2d 76, 77 (La. App. 1st Cir. 1969). *Cadwallader* further amplifies this concept:

> Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. La. Civ. Code art. 2056; *Carrier,* 759 So.2d at 43; *Louisiana Ins.,* 630 So.2d at 764. Under this rule of strict construction, **equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer.** *Carrier,* 759 So.2d at 43.

*Cadwallader*, 848 So.2d at 580 (emphasis added). This rule of interpretation is based on the fact that these provisions are prepared by the insurer, and the insured had no voice in the preparation. *Louisiana Ins.,* 630 So.2d at 764. This type of contract is commonly referred to as a contract of adhesion. Article 2056 states, "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." La. Civ. Code art. 2056; *see Louisiana Ins. Guar. Assoc.,* 630 So.2d at 764 *citing* 15 *Civil Law Treatise, Insurance Law and Practice* § 4 (1986) and W. Freedman, 2 *Richards on the Law of Insurance* § 11:2[f] (6th Ed. 1990) ("*Richards*"). "That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable." *Cadwallader*, 848 So. 2d at 580 *citing Carrier,* 759 So.2d at 43-44. (emphasis in original) and *Louisiana Ins. Guar. Assoc.,* 630 So.2d at 770.

10

The Supreme Court of Louisiana gave further instruction with respect to the interpretation

of an ambiguity in *Louisiana Ins. Guar. Assoc.* stating:

> "Ambiguity will also be resolved by ascertaining how a reasonable insurance policy
> purchaser would construe the clause at the time the insurance contract was entered."
> *Breland v. Schilling,* 550 So.2d 609, 610-11 (La.1989). The court should construe
> the policy "to fulfill the reasonable expectations of the parties in the light of the
> customs and usages of the industry." *Trinity Industries,* 916 F.2d at 269 (5th
> Cir.1990) (citing *Benton,* 379 So.2d at 231 and LSA-C.C. Arts. 2045, 2050, 2053 and
> 2054). In insurance parlance, this is labelled the reasonable expectations doctrine.
> *Richards, supra* at § 11:2[g].

*Louisiana Ins. Guar. Assoc.,* 630 So.2d at 764.   The Louisiana Supreme Court then noted in a

footnote:

> "The reasonable expectations doctrine can be capsulized as follows: "courts will
> protect the [insured's] reasonable expectations . . . regarding the coverage afforded
> by insurance contracts even though a careful examination of the policy provisions
> indicates that such expectations are contrary to the expressed intention of the
> insurer." R. Keeton and A. Widiss, *Insurance Law* § 6.13 (1988).

*Id.* at n. 19.   Thus, if after applying the other general rules of construction, an ambiguity remains,

the ambiguous contractual provision is to be construed against the insurer who furnished the policy's

text and in favor of the insured finding coverage.  La. Civ. Code art. 2056.  *Peterson,* 729 So. 2d

at 1029.  "It is the reasonable interpretation of an insured that governs the legal effect of language

in an insurance contract, and not whether the language chosen by an insurer may constitute a legal

term of art in another context." *Lee v. Unum Life Ins. Co. of America,* 900 So.2d 1021, 1029 (La.

App. 4th Cir. 2005).


**C. Exclusions and Canons of Construction**

The Louisiana Supreme Court in interpreting an exclusion to coverage in the context of a

company's public liability insurance stated:

11

> The exclusion clause must necessarily be examined and interpreted in the light of its own design and intent, as well as in view of the objects and purposes of the policy. Once coverage has been extended, as it is quite clearly the purpose of the policy to do and as has been done here, it should be withdrawn only when exclusion is established with certainty. And because comprehensive exclusion is violative of the purpose and intent of policy coverage, exclusion must necessarily be specific and not general. It is specific, as distinguished from comprehensive, when it particularly identifies the insured or insureds intended to be excluded. The exclusion clause, as its name implies, sets forth the traits, characteristics and circumstances that mark an insured for exclusion. And the insured or insureds to be excluded must bear the marks and traits, or conform with the circumstances, described and particularized in the exclusion clause as the basis for exclusion.'

*Pullen v. Employers' Liability Assur. Corp.,* 89 So.2d 373, 377 (La. 1956).

Indeed, in *Anderson v. Indiana Lumbermens Mut. Ins. Co.*, 127 So.2d 304 (La. App. 2nd Cir. 1961), a Louisiana appellate court dealt with a claim made on homeowner policy where "collapse" was a covered peril and there was an exclusion which provided that the insurer would not be liable "for loss caused directly or indirectly by earthquake, **or other earth movements** except landslides." *Id.* at 304 (emphasis added). In the home in question, a crack had appeared in the wall of the house and since that time, the crack had become larger, extending into the ceiling of the living room and cracks had appeared in the walls, at every window and door in the house. The door frames were out of square and the foundation was broken, cracked, fallen and uneven. It was alleged in that case that the cause of damage to the home was (1) the expansion and contraction of the soil which had caused (2) the cracking, breaking and falling of the concrete slab (3) combined with the falling cracking, breaking and unequal settlement of the building (4) thus impairing the basic structural integrity of the building. The insurer maintained that the damage to the house did not constitute a "collapse" and that even if it did, it was excluded as it was caused by "other earth movements."

The appellate court noted that there was no precedent for an interpretation of "collapse" in Louisiana and noted that there were four cases rendered outside of Louisiana where the evidence

12

did not indicate the structure had completely fallen down or caved in–two finding coverage and two

denying coverage based on this exclusion.

The court, after discussing the guidance provided by the Civil Code in determining the

construction of the word "collapse", noted:

> LSA-Civil Code, art. 1955 providing that 'all clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act' appears to be a statement of the 'ejusdem generis' rule of construction, concerning which Black's Law Dictionary states:
>> 'In the construction of laws, wills, and other instruments, the 'ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. Black, Interp. of Laws, 141; Goldsmith v. U.S., C.C.A.N.Y., 42 F.2d 133, 137; Aleksich v. Industrial Accident Fund, 116 Mont. 69 (127), 151 P.2d 1016, 1021. The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention.
>> 'The maxim 'ejusdem generis', is only an illustration of the broader maxim, 'noscitur a sociis'. State v. Western Union Telegraph Co., 196 Ala. 570, 72 So. 99, 100.'
>
> And, in defining the phrase, 'noscitur a sociis', as used in the aforesaid definition the following explanation and definition are given:
>
>> 'It is known from its associates, 1 Vent. 225. The meaning of a word is or may be known from the accompanying words. 3 Term R. 87; Broom, Max. 588. Morecock v. Hood, 202 N.C. 321, 162 S.E. 730, 731; Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co. of Maryland, 223 Ala. 385, 136 So. 800, 801.
>> 'The doctrine means that general and specific words are associated with and take color from each other, restricting general words to sense analogous to less general. Dunham v. State, 140 Fla. 754, 192 So. 324, 325, 326.'

*Anderson*, 127 So.2d 306-07; *but see, Nida v. State Farm Fire & Cas. Co.*, 454 So.2d 328 (La. App.

3rd Cir. 1984) (insurance definition of "collapse" in policy at issue revised to deny coverage for

13

losses against settling). The *Anderson* court eventually found that the insurance at issue therein provided coverage finding that "collapse" would not be given an "abstract, narrow construction." Citing to *Jenkins v. United States Fire Ins. Co.*, 185 Kan. 665, 347 P.2d 417 (Kan. 1959), the court noted that construing on the basis of intention, it would be understood that if the settling, falling, cracking bulging or breaking of the insured building so materially impaired the basic structure, that it would be considered a "collapse." Thus, the Court in interpreting the **risk insured** employed the **expansive** definition.

The court then found that the **exclusion** was to be **narrowly construed** relying on *Pullen*. It found that "other earth movements" is entirely "too general to have application to any degree of certainty" to the causation of the "collapse" of the subject building as the cause of damage would embrace "the same general kind, class or nature of peril as its companion words 'earthquake' and 'landslide.'" *Anderson*, 127 So.2d at 308-09. As such, the concept of the "specific controls the general" was used to find the exclusion limited a more violent earth movement–not just the natural expansion and contraction of the soil that had allegedly caused the damage for which coverage was sought. *See also, Smith v. Burton*, 928 So.2d 74, 79 (La. App. 1st Cir. 2005); *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil* Corp., 289 F.3d 373, 377 (5th Cir. 2002); *Sommers v. State Farm Fire and Cas. Co.*, 764 So.2d 87, 91 (La. App. 4th Cir. 2000) (where general terms precede specific terms, principle is the same: general terms should be construed to encompass things similar or analogous to those in the specific terms). With these precepts in mind the Court will now turn to the specific water damage exclusions at issued before the Court.


V.     **Insuring Language and Exclusions of the Policies at Issue**

### a. ISO Policies

The "ISO policies"[4] issued by Standard Fire, Hartford, Hanover and Unitrin, all contain identical language. As to the coverage provided, each policy states:

> COVERAGE A - DWELLING and COVERAGE B- OTHER STRUCTURES:
> We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property.

(Standard Fire Policies, App. at INS 94 and INS 134; Hartford Policy, App. at INS 53; Hanover Policy, App. at INS 7; Unitrin Policy, App. at INS 169.)[5]    Following the coverage provision, this exclusion appears:

> (1)    We do not insure for loss **caused directly or indirectly by any of the following.**  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.[6]
>
>  . . .
>
>    **(c) Water Damage**, meaning:
>        Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(Standard Fire Policies, App. at INS 96 and INS 136; Hartford Policy, App. at INS 56; Hanover Policy, App. at INS 9; Unitrin Policy, App. at INS 171.)  "Flood" is not defined anywhere in the policy.  this exclusion will be referred to as the ISO exclusion.

---

[4]"ISO" is an acronym for "Insurance Service Office, Inc." which provides products and services help to the insurance industry to measure, manage and reduce risk.  It provides standardized insurance policy language such as the policies noted herein. *See,* ISO Homepage at www.iso.com.

[5]These citations refer to the appendix filed in conjunction with the Motion for Judgment on the Pleadings filed by Hanover Ins. Co. (Doc. No. 568) that was used as a joint exhibit containing all of the insurance policies at issue herein.

[6]This provision is generally referred to as an "anti-concurrent cause clause."  Its genesis was the result of court decisions utilizing the "concurrent causation doctrine".  Under this doctrine, the insurer is obligated to pay for damages resulting from a combination of covered and excluded perils if the efficient proximate cause is a covered peril.  To counteract these decisions, insurers began employing the anti-concurrent cause clause to exclude losses if caused in whole or in part, in any sequence of events by an excluded peril. Stephen P. Pate, *Recent Developments in Property Insurance Law,* 33 Tort & Ins. L.J. 659, 663 (1998).

15

**b. State Farm Policy with "Lead-In" Provision**

The State Farm policies note at the outset that "We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I-LOSSES NOT INSURED." They then provide:

> SECTION I -LOSSES INSURED
> Coverage A-Dwelling
> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in Section I–LOSSES NO INSURED.
>
> SECTION I - LOSSES NOT INSURED
>
> 2. We do not insure under any coverage for loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:[7]
>
> c. (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these all whether driven by wind or not;

(Doc. 570, Exhibit A and B, pp. 7 and 10).

**C. Hartford Policy's specific Flood Definition**

Of all of these policies, only Hartford includes an "Amendatory Endorsement Specifically Excepted Perils." (Form H-380). This two page provision provides in relevant part:

> As used herein, Peril means a cause of physical loss or damage to property. It has this meaning whether or not it is called a Peril or a Cause of Loss in this policy.
>
> Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:

---

[7]This subsection is known as the "lead-in" provision.

16