1.      **All Issues Presented for Appeal Raise Controlling Questions of Law.**

Each of the issues raised in this appeal is a question of law.  The district court's finding of ambiguity in the Water Damage Exclusion is a legal question of contract interpretation.  *See, e.g., Am. Marine Underwriters, Inc. v. Holloway*, 826 F.2d 1454, 1456 (5th Cir. 1987) ("Whether an insurance policy is ambiguous is a question of law for the court."); *Gladney v. Paul Revere Life Ins. Co.*, 895 F.2d 238, 241 (5th Cir. 1990) ("the 'interpretation of a contract is a question of law, including the question whether the contract is ambiguous'" (citation omitted)).

It is likewise a question of law whether due process was denied by the entry of partial summary judgment in the absence of meaningful notice or opportunity to be heard.  *See, e.g., New York Life Ins. Co.*, 84 F.3d at 143.  So too is the question whether the grant of partial summary judgment was correct under Rule 56.  *See, e.g., Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) ("We review grants of summary judgment de novo, guided by the same Rule 56 standard as the district court.").

Finally, whether the district court prematurely invoked the rule of *contra proferentem* without giving the defendant the opportunity to present extrinsic evidence is also a question of law.  *See, e.g., Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 231 (3d Cir. 1994) (District Court's application of *contra proferentem* "is a question of law subject to plenary review on appeal.").

Each of these questions is likewise "controlling," as required under

§ 1292(b).   A question of law is "controlling" if its resolution on appeal could

materially affect the outcome of the litigation in the district court, even if it is not

certain to do so.  *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.,*

*Inc.*, 86 F.3d 656, 659 (7th Cir. 1996).  If an incorrect disposition of the issue

would ultimately require reversal of final judgment on appeal, then the issue is

plainly controlling.  *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3rd Cir.

1974); 16 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 3930, at 423 (2d ed. 1996).  And an issue also is controlling "if

interlocutory reversal might save time for the district court and time and expense

for the litigants." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (citation

omitted).

Here, the district court's ruling is dispositive of the central legal and factual

issue in the case -- whether Ms. Humphreys is entitled to coverage under the

Encompass policy -- and leaves only the question of damages for resolution.  If

Encompass is correct that the district court's Order violated fundamental rules of

contract interpretation, federal procedure and due process, then the correction of

any one of those errors on appeal will require reversal of any final judgment.

Plainly, these issues are "controlling."

2.    **All Issues Presented for Appeal Raise Questions as to Which There Is a Substantial Ground for Difference of Opinion.**

There are substantial grounds for difference of opinion on the issues presented for appeal. As argued in the *Chehardy* Petition filed by Encompass, the district court's interpretation of the Encompass Water Damage Exclusion conflicts with recent decisions in other hurricane cases in this Circuit, and with other longstanding authorities enforcing flood and other policy exclusions. (*See* Ex. B at 6-11.) The entry of partial summary judgment without adequate notice of the issues that the court would address plainly conflicts with fundamental constitutional principles of due process as elucidated in this Court's own decisions. *See*, *supra*, pp. 8-10. The court's entry of partial summary judgment in the face of material, disputed issues of fact with respect to the source of plaintiff's flooding violates the plain requirements of Rule 56. *Supra*, pp. 11-13. And the court's "first resort" invocation of *contra proferentem* conflicts with the relevant authorities that hold *contra proferentem* to be the *last* resort. *Supra*, pp. 13-15.

3.    **An Immediate Appeal from the District Court's Order Will Materially Advance the Ultimate Termination of the Litigation.**

As demonstrated above, the district court's grant of summary judgment for Ms. Humphreys was clearly improper and inconsistent with the court's own legal reasoning. Allowing the parties to go forward with a damages trial based on an

erroneous disposition of the central question of liability would be a waste of time and resources for both the court and the parties. The interests of efficiency and economy embodied in the standard for § 1292(b) review will therefore be served by an immediate appeal of the district court's erroneous and unconstitutional disposition of this case. *See, e.g., Thompson v. Shaw Group Inc.*, No. 04-1685, 2006 U.S. Dist. LEXIS 52411, at *10 (E.D. La. July 18, 2006) (certifying issue of whether the plaintiffs adequately satisfied pleading burden for immediate appeal where "a ruling favorable to Defendants on this issue would render years of discovery, enormous expenses incurred by the parties, and a trial on the merits unnecessary").

Further, immediate appeal will advance the ultimate resolution of all the Hurricane Katrina cases pending before the district court by crystallizing the issues to be considered by that court. *See, e.g., In re Pac. Forest Prods. Corp.*, 335 B.R. 910, 924-25 (S.D. Fla. 2005) (finding that an immediate appeal "would hasten the ultimate disposition" of the case where immediate consideration of the merits of the appeals "bears the benefit of crystallizing the issues at trial, and, importantly, staving off a potential re-trial should this Court reverse the Bankruptcy Court Order later").

## CONCLUSION

For all of the reasons stated above, Encompass requests that this Court accept Encompass's Petition and reverse the district court's Order granting partial summary judgment to plaintiff.

Respectfully Submitted,

Judy Y. Barrasso, 2814
Susan M. Rogge, 28203
BARRASSO USDIN KUPPERMAN,
       FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700

Richard L. Fenton
Kendra K. Hartman
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000

Attorneys for Petitioner-Defendant
Encompass Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Petition for

Permission to Appeal Under 28 U.S.C. § 1292(b) has been served upon the below

listed counsel of record via electronic mail this 11th day of December, 2006.

Counsel for Plaintiff:

Robert G. Creely (rcreeley@aol.com)
Mickey P. Landry (mlandry@landryswarr.com)

73582

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES                    CIVIL ACTION
CONSOLIDATED LITIGATION
                                                NO. 05-4182

PERTAINS TO INSURANCE                           SECTION "K"(2)
*Vanderbrook*, C.A. No. 05-6323
*Xavier University*, C.A. No. 06–516
*Chehardy*, C.A. No. 06-1672, 06-1673, and 06-1674

                              and

KELLY A. HUMPHREYS                              CIVIL ACTION

VERSUS                                          NO. 06-0169

ENCOMPASS INSURANCE COMPANY, ET AL.             SECTION K(2)
****PRINT TO WEB****

## ORDER

On September 19, 2006, *Berthelot, et al. v. Boh Bros. Construction, et al.*, C.A. No. 05-4182

was filed in the Eastern District of Louisiana.  This case began the stream of complaints that have

been filed as a result of damages arising out of all levee breaches which occurred in the aftermath

of Hurricane Katrina.

*Berthelot* was transferred to the undersigned on February 23, 2006.  (Doc. 47).  It was

subsequently determined by the *en banc* court of the Eastern District of Louisiana that in order to

avoid conflicting decisions among the various sections of the Court, the proper approach would be

to consolidate all such filings for purposes of pretrial discovery and motion practice.  As such, what

is now captioned "*In re: Katrina Canal Breaches Consolidated Litigation*," C.A. No. 05-4182,  has

become the umbrella for all cases which concern damages caused by flooding as a result of breaches

or overtopping in the areas of the 17th Street Canal, the London Avenue Canal, the Industrial Canal, and the Mississippi Gulf River Outlet ("MRGO").

The following Orders and Reasons[1] are being entered in four individual cases which are part of the umbrella and all of which have as their centerpiece the issue of insurance coverage. Theses cases are:

*Vanderbrook, et al. v. State Farm Fire & Cas. Co., et al.* C.A. No. 05-6323;

*Xavier University of Louisiana v. Travelers Property Ca. Co. of America*, C.A. No. 06-516;

*Chehardy, et al. v. State Farm, et al.,* C.A. No. 06-1672, 06-1673, and 06-1674; and

*Humphreys v. Encompass Ins. Co.*, C. A. No. 06-169.[2]

Oral argument was conducted with respect to *Vanderbrook* on August 25, 2006, and with respect to *Xavier, Chehardy and Humphreys* on October 27, 2006. Based on the pleadings, memoranda, exhibits, arguments and the relevant law, the Court is prepared to rule on all the motions pending in all four cases.

**IT IS ORDERED** that this document shall be entered onto the docket of the *In re Katrina Canal Breaches Consolidated Litigation*, C.A. No. 05-4182 referencing all three of the cases noted above and *Humphreys* separately. The Court will begin with the *Vanderbrook* matter.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

---

[1] The document numbers referred to herein are those as entered in the Consolidated Matter unless otherwise noted; once a case is consolidated in the umbrella, any document filed is entered sequentially, regardless of the case to which it pertains.

[2] *Humphreys* was initially consolidated but at the request of the litigants it was terminated from the umbrella; however, in light of the inter-related nature of this case, the Court will include this case in this consolidated opinion.

**THIS ORDER PERTAINS SPECIFICALLY TO:**

*Vanderbrook, et al. v. State Farm Fire & Cas. Co., et al.* C.A. No. 05-6323;

## ORDER AND REASONS

Before the Court are the following motions filed in this matter:

| | |
|---|---|
| Doc. No. 568 | Motion for Judgment on the Pleadings filed by Hanover Ins. Co. ("Hanover") insurer of plaintiff James Capella and Madeline Grenier;[3] |
| Doc. No. 569 | Motion for Judgment on the Pleadings filed by Standard Fire Ins. Co. ("Standard") insurer of plaintiffs Peter Anthony Ascani, III, Gregory R. Jackson, and Monica Reyes; |
| Doc. No. 570 | Motion for Judgment on the Pleadings filed by State Farm Fire & Cas. Co. ("State Farm") insurer of Mary Jane Silva and Robert G. Harvey; |
| Doc. No. 572 | Motion to Dismiss Party filed by Hartford Ins. Co. of the Midwest ("Hartford") insurer of Jack Capella as the Executor of the Succession of Lillian Capella; |
| Doc. No. 598 | Motion for Judgment on the Pleadings filed by Unitrim Preferred Ins. Co. ("Unitrim") insurer of Richard Vanderbrook. |

These motions were brought in response to the class action suit brought by the "Vanderbrook" plaintiffs.

The instant petition was initially filed in Civil District Court for the Parish of Orleans on October 14, 2005. Plaintiffs filed suit seeking coverage for damages caused by the collapse of the 17th St. Canal floodwall and the ensuing water damage as well as claims against the Board of

---

[3]At oral argument on these motions, Hanover orally moved to include in its motion the claims of Madeline Grenier who had been misidentified as Sophia Granier as the insured. This motion was orally granted. Thus, the docket sheet as to this motion does not include her as the subject of the motion; however, the docket sheet should be so amended to reflect that the plaintiff Sophia Granier is actually Madeline Grenier and **IT IS SO ORDERED.** At the time of the hearing, the relevant policy of insurance was introduced and filed into the record.

Additionally, certain of the Defendants are improperly named. The Standard Fire Insurance Company ("Standard Fire") is improperly named as Travelers Insurance Company and St. Paul Travelers Insurance Company. Hartford Insurance Company of the Midwest ("Hartford") is improperly named as Hartford Insurance Company. Unitrin Preferred Insurance Company ("Unitrin") is improperly named as Kemper Insurance Company.

3

Commissioners for the Orleans Levee District ("OLD") for its alleged negligence. Defendants removed the case to this Court on December 2, 2005. On June 1, 2006, the Court severed the claims brought against OLD from those filed against the insurers and finding no basis for jurisdiction over OLD, remanded those claims to Civil District Court. The Court retained diversity jurisdiction over the remaining insurers.

Five different policies of insurance are involved in this case–all Homeowners/All Risk policies. Oral argument was conducted on August 25, 2006, and supplemental briefing ordered thereafter. Having reviewed the complaint, memoranda, exhibits, briefing, and the relevant law, the Court is now prepared to deliver its opinion.

It cannot be gainsaid that in approaching these motions, which are the first in a daunting line of litigation concerning insurance coverage for the losses caused by the canal breaches in New Orleans, the potential impact of such a decision on individuals as well as the insurance industry might be considered overwhelming. However, the Court believes that it is its duty to approach its analysis in a straightforward, judicious manner–that is analyzing the contractual disputes between an individual policy holder and the relevant insurer, sitting as an *Erie* court, using the civilian approach of a Louisiana court, applying the Louisiana Civil Code and seeking guidance from the jurisprudence of the state.

## I.      Civilian Approach as an *Erie* Court

This Court will apply Louisiana law in an attempt to rule as a Louisiana court would if presented with the same issues. *Musser Davis Land Co. v. Union Pacific Resources,* 201 F.3d 561,

565 (5th Cir.2000), *citing Erie R. Co. v. Tompkins,* 304 U.S. 64, 79-80, 58 S.Ct. 817, 82 L.Ed. 1188

(1938); *Mozeke v. Int'l Paper Co.,* 856 F.2d 722, 724 (5th Cir.1988). As stated in *Musser:*

> To determine a state law question, we first look to decisions of the Louisiana
> Supreme Court. *See Transcontinental Gas v. Transportation Ins. Co.,* 953 F.2d 985,
> 988 (5th Cir.1992). If the Louisiana Supreme Court has not spoken on the issue, it
> is our duty to determine as best we can what that court would decide. *See id.; Hulin
> v. Fibreboard Corp.,* 178 F.3d 316, 318-19 (5th Cir.1999).

> Under Louisiana's Civil Law tradition, courts look first and foremost to statutory law.
> The Louisiana Civil Code instructs that "[sources of law are legislation and
> custom,]" and that "[l]legislation is a solemn expression of legislative will." "[T]he
> primary basis of law for a civilian is legislation, and not (as in the common law) a
> great body of tradition in the form of prior decisions of the courts." The concept of
> *stare decisis* is foreign to the Civil Law, including Louisiana. Therefore, in cases
> such as this we are guided by decisions rendered by the Louisiana appellate courts,
> particularly when numerous decisions are in accord on a given issue-the so-called
> *jurisprudence constant*-but we are not strictly bound by them.

*Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.,* 953 F.2d 985, 988 (5th Cir.1992)

(footnotes omitted). Thus, the Louisiana Civil Code provides the primary source and framework by

which this Court must review the these contracts. With this in mind, the Court will first examine

the allegations made by the plaintiffs.


## II.     The Petition and Issue Presented

Plaintiffs each own a home in New Orleans which is insured by one of the defendants and

which suffered substantial water damage at the time of Hurricane Katrina. (Petition, ¶ 7.) They

allege that "[s]ometime between 10:00 and 11:00 a.m. on August 29, 2005, before the full force of

[Hurricane Katrina] reached the City of New Orleans, a small section of the concrete outfall canal

wall known as the 17th Street Canal, suddenly broke, causing water to enter the streets of the City

of New Orleans and homes of Petitioners," which damaged Plaintiffs' homes. (Id., ¶ 3.) Plaintiffs contend that "said water damage inflicted on the Petitioners' homes and property was not the result of flood, surface water, waves, title [sic] water, tsunami, seiche, overflow of a body of water, seepage under or over the outfall canal wall or spray from any of the above but was water intrusion, caused simply from a broken levee wall." (Id., ¶ 4 (emphasis added).) Plaintiffs claim that defendants improperly failed to pay for the water damage to their homes because it is not an excluded loss. (Id., ¶ 10.) Plaintiffs also contend that the water damage exclusions in the policies are unconscionable and void. (Id., ¶ 11.)

Plaintiffs further allege, separately, that the Levee Board "breached their duty to Petitioners by failing to correct the break [in the canal wall] or warn others including Petitioners of the impending water intrusion . . . ." (Id., ¶ 6.) As noted, these allegations have been severed and remanded to state court.

Plaintiffs contend that because Louisiana employs the "efficient proximate cause doctrine" with respect to coverage and because the third-party negligence of Orleans Levee District is the efficient, proximate cause of the subsequent flooding of plaintiffs' homes, their Homeowners Policies should provide coverage. The defendants maintain that under the clear, unambiguous terms of the policies at issue, they are entitled to judgment as a matter of law.

### III.    Standard for Judgment on the Pleadings

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge.  The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "'a complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"   *Id. citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Fifth Circuit explained:

> Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliott v. Foufas,* 867 F.2d 877, 880 (5ᵗʰ Cir. 1989).  Further, "the plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities, Inc.* 94 F.3d 189, 194 (5ᵗʰ Cir. 1996).  This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim. *Hitt*, 561 F.2d at 608.  In other words, a motion to dismiss an action for failure to state a claim"admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5ᵗʰ Cir. 1992).  Finally, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5ᵗʰ Cir. 1994).

*Id.* at 161-62. Bearing this standard in mind, the court will examine the civilian rules of construction to aid it in its determination of the viability of defendants' motions.


## IV.  Legal Concepts for Contract Interpretation

### A.      Insurance Policy is a Contract and Rules of Construction

"An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship." La. Civ. Code art. 1983; *Edwards v. Daugherty*, 883 So.2d 932, 940 (La. 2004); *Peterson v. Schimek*, 729 So.2d 1024, 1028 (La. 1999).  As such, the general rules of contract interpretation as set forth in the Louisiana Civil Code guide the Court in interpreting the subject insurance policies. *Peterson*, 729 So.2d at 1028. "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of

7

the parties to the contract. *See* La. Civ. Code art. 2045; *Carbon* [*v. Allstate Ins. Co.,* 97-3085, p. 4 (La. 10/20/98, 719 So. 2d 437, 439]*; Louisiana Ins.* [*Guar. Ass'n v. Interstate Fire & Cas. Co.* 03-0911, p. 5 (La. 1/14/94)], 630 So.2d 759, 763." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577 (La. 2003).

In *Cadwallader,* the Supreme Court of the State of Louisiana set forth succinctly the most important guiding principles:

> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *See* La. Civ Code art. 2047; *Peterson v. Schimek,* 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1028-29; *Carbon,* 719 So.2d at 440-441; *Reynolds,* 634 So.2d at 1183. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. *Carrier v. Reliance Ins. Co.,* 99-2573, p. 11 (La.4/11/00), 759 So.2d 37, 43; *Peterson,* 729 So.2d at 1029. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. *Succession of Fannaly v. Lafayette Ins. Co.,* 01-1355, p. 4 (La.1/15/02), 805 So.2d 1134, 1138; *Peterson,* 729 So.2d at 1029.
> . . .
>
> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Fannaly,* 805 So.2d at 1137; *Louisiana Ins.,* 630 So.2d at 764. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Peterson,* 729 So.2d at 1029; *Louisiana Ins.,* 630 So.2d at 764. The determination of whether a contract is clear or ambiguous is a question of law. *Louisiana Ins.,* 630 So.2d at 764.

*Cadwallader,* 848 So.2d at 580 (coverage provided by UM policy for resident relative in household did not include foster children). In addition, an insurance contract "is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given

8

meaning.   One portion of the policy should not be construed separately at the expense of disregarding other provisions." La. Civ. Code art. 2050. *Peterson*, 729 So.2d at 1029.

### B.   All-Risks Liability Insurance: Coverage, Exclusions and Ambiguities

A Homeowners Policy is considered a type of "all-risks" insurance. "  All-risks insurance is a special type of insurance extending to risks not usually contemplated, and generally allows recovery for all fortuitous losses, unless the policy contains a specific exclusion expressly excluding the loss from coverage." Jane Massey Draper, "Coverage Under All-Risk Insurance", 30 A.L.R.5th 170.  The United States Court of Appeals for the Fifth Circuit acknowledged this concept stating, "[a] policy of insurance insuring against 'all risks' creates a special type of coverage that extends to risks not usually covered under other insurance; recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Alton Ochsner Medical Foundation v. Allendale Mut. Ins.*, 219 F.3d 501, 504 (5th Cir. 2000), *citing U.S. Indus., Inc. v. Aetna Cas. & Sur. Co.,* 690 F.2d 459, 461 (5th Cir.1982) (construing Louisiana law and citing *Dow Chem. Co. v. Royal Indem. Co.,* 635 F.2d 379, 387 (5th Cir.1981) (construing Texas law)).

Thus, in the context of the instant motions, under Louisiana law, unless there is a specific exclusion for the type of water damage that an insured has incurred, coverage is presumed under these policies. The focus of a court's inquiry then is on the relevant exclusions to coverage. "When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. . . . On the other hand, the insurer bears the

9

burden of proving the applicability of an exclusionary clause within a policy." *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000).

With respect to the proper approach concerning the interpretation of an exclusion, they are generally strictly construed. *Bezue v. Hartford Accident and Indem. Co.*, 224 So.2d 76, 77 (La. App. 1st Cir. 1969). *Cadwallader* further amplifies this concept:

> Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. La. Civ. Code art. 2056; *Carrier*, 759 So.2d at 43; *Louisiana Ins.*, 630 So.2d at 764. Under this rule of strict construction, **equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer.** *Carrier*, 759 So.2d at 43.

*Cadwallader*, 848 So.2d at 580 (emphasis added).   This rule of interpretation is based on the fact that these provisions are prepared by the insurer, and the insured had no voice in the preparation. *Louisiana Ins.*, 630 So.2d at 764.  This type of contract is commonly referred to as a contract of adhesion.  Article 2056 states, "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.  A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."  La. Civ. Code art. 2056; *see Louisiana Ins. Guar. Assoc.*, 630 So.2d at 764 *citing* 15 *Civil Law Treatise, Insurance Law and Practice* § 4 (1986) and W. Freedman, 2 *Richards on the Law of Insurance* § 11:2[f] (6th Ed. 1990) ("*Richards*").  "That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable." *Cadwallader*, 848 So. 2d at 580 *citing Carrier*, 759 So.2d at 43-44. (emphasis in original) and *Louisiana Ins. Guar. Assoc.*, 630 So.2d at 770.

10

The Supreme Court of Louisiana gave further instruction with respect to the interpretation

of an ambiguity in *Louisiana Ins. Guar. Assoc.* stating:

> "Ambiguity will also be resolved by ascertaining how a reasonable insurance policy
> purchaser would construe the clause at the time the insurance contract was entered."
> *Breland v. Schilling*, 550 So.2d 609, 610-11 (La.1989). The court should construe
> the policy "to fulfill the reasonable expectations of the parties in the light of the
> customs and usages of the industry." *Trinity Industries*, 916 F.2d at 269 (5th
> Cir.1990) (citing *Benton*, 379 So.2d at 231 and LSA-C.C. Arts. 2045, 2050, 2053 and
> 2054). In insurance parlance, this is labelled the reasonable expectations doctrine.
> *Richards, supra* at § 11:2[g].

*Louisiana Ins. Guar. Assoc.*, 630 So.2d at 764.   The Louisiana Supreme Court then noted in a

footnote:

> "The reasonable expectations doctrine can be capsulized as follows: "courts will
> protect the [insured's] reasonable expectations . . . regarding the coverage afforded
> by insurance contracts even though a careful examination of the policy provisions
> indicates that such expectations are contrary to the expressed intention of the
> insurer." R. Keeton and A. Widiss, *Insurance Law* § 6.13 (1988).

*Id.* at n. 19.   Thus, if after applying the other general rules of construction, an ambiguity remains,

the ambiguous contractual provision is to be construed against the insurer who furnished the policy's

text and in favor of the insured finding coverage. La. Civ. Code art. 2056. *Peterson*, 729 So. 2d

at1029. "It is the reasonable interpretation of an insured that governs the legal effect of language

in an insurance contract, and not whether the language chosen by an insurer may constitute a legal

term of art in another context." *Lee v. Unum Life Ins. Co. of America*, 900 So.2d 1021, 1029 (La.

App. 4th Cir. 2005).

## C. Exclusions and Canons of Construction

The Louisiana Supreme Court in interpreting an exclusion to coverage in the context of a

company's public liability insurance stated:

11

> The exclusion clause must necessarily be examined and interpreted in the light of its own design and intent, as well as in view of the objects and purposes of the policy. Once coverage has been extended, as it is quite clearly the purpose of the policy to do and as has been done here, it should be withdrawn only when exclusion is established with certainty. And because comprehensive exclusion is violative of the purpose and intent of policy coverage, exclusion must necessarily be specific and not general. It is specific, as distinguished from comprehensive, when it particularly identifies the insured or insureds intended to be excluded. The exclusion clause, as its name implies, sets forth the traits, characteristics and circumstances that mark an insured for exclusion. And the insured or insureds to be excluded must bear the marks and traits, or conform with the circumstances, described and particularized in the exclusion clause as the basis for exclusion.'

*Pullen v. Employers' Liability Assur. Corp.,* 89 So.2d 373, 377 (La. 1956).

Indeed, in *Anderson v. Indiana Lumbermens Mut. Ins. Co.*, 127 So.2d 304 (La. App. 2nd Cir. 1961), a Louisiana appellate court dealt with a claim made on homeowner policy where "collapse" was a covered peril and there was an exclusion which provided that the insurer would not be liable "for loss caused directly or indirectly by earthquake, **or other earth movements** except landslides." *Id.* at 304 (emphasis added). In the home in question, a crack had appeared in the wall of the house and since that time, the crack had become larger, extending into the ceiling of the living room and cracks had appeared in the walls, at every window and door in the house. The door frames were out of square and the foundation was broken, cracked, fallen and uneven. It was alleged in that case that the cause of damage to the home was (1) the expansion and contraction of the soil which had caused (2) the cracking, breaking and falling of the concrete slab (3) combined with the falling cracking, breaking and unequal settlement of the building (4) thus impairing the basic structural integrity of the building. The insurer maintained that the damage to the house did not constitute a "collapse" and that even if it did, it was excluded as it was caused by "other earth movements."

The appellate court noted that there was no precedent for an interpretation of "collapse" in Louisiana and noted that there were four cases rendered outside of Louisiana where the evidence

12

did not indicate the structure had completely fallen down or caved in–two finding coverage and two

denying coverage based on this exclusion.

The court, after discussing the guidance provided by the Civil Code in determining the

construction of the word "collapse", noted:

> LSA-Civil Code, art. 1955 providing that 'all clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act' appears to be a statement of the 'ejusdem generis' rule of construction, concerning which Black's Law Dictionary states:
>
>> 'In the construction of laws, wills, and other instruments, the 'ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. Black, Interp. of Laws, 141; Goldsmith v. U.S., C.C.A.N.Y., 42 F.2d 133, 137; Aleksich v. Industrial Accident Fund, 116 Mont. 69 (127), 151 P.2d 1016, 1021. The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention.
>> 'The maxim 'ejusdem generis', is only an illustration of the broader maxim, 'noscitur a sociis'. State v. Western Union Telegraph Co., 196 Ala. 570, 72 So. 99, 100.'
>
> And, in defining the phrase, 'noscitur a sociis', as used in the aforesaid definition the following explanation and definition are given:
>
>> 'It is known from its associates, 1 Vent. 225. The meaning of a word is or may be known from the accompanying words. 3 Term R. 87; Broom, Max. 588. Morecock v. Hood, 202 N.C. 321, 162 S.E. 730, 731; Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co. of Maryland, 223 Ala. 385, 136 So. 800, 801.
>> 'The doctrine means that general and specific words are associated with and take color from each other, restricting general words to sense analogous to less general. Dunham v. State, 140 Fla. 754, 192 So. 324, 325, 326.'

*Anderson*, 127 So.2d 306-07; *but see, Nida v. State Farm Fire & Cas. Co.,* 454 So.2d 328 (La. App.

3rd Cir. 1984) (insurance definition of "collapse" in policy at issue revised to deny coverage for

losses against settling). The *Anderson* court eventually found that the insurance at issue therein provided coverage finding that "collapse" would not be given an "abstract, narrow construction." Citing to *Jenkins v. United States Fire Ins. Co.*, 185 Kan. 665, 347 P.2d 417 (Kan. 1959), the court noted that construing on the basis of intention, it would be understood that if the settling, falling, cracking bulging or breaking of the insured building so materially impaired the basic structure, that it would be considered a "collapse." Thus, the Court in interpreting the **risk insured** employed the **expansive** definition.

The court then found that the **exclusion** was to be **narrowly construed** relying on *Pullen*. It found that "other earth movements" is entirely "too general to have application to any degree of certainty" to the causation of the "collapse" of the subject building as the cause of damage would embrace "the same general kind, class or nature of peril as its companion words 'earthquake' and 'landslide.'" *Anderson*, 127 So.2d at 308-09. As such, the concept of the "specific controls the general" was used to find the exclusion limited a more violent earth movement–not just the natural expansion and contraction of the soil that had allegedly caused the damage for which coverage was sought. *See also, Smith v. Burton*, 928 So.2d 74, 79 (La. App. 1st Cir. 2005); *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil* Corp., 289 F.3d 373, 377 (5th Cir. 2002); *Sommers v. State Farm Fire and Cas. Co.*, 764 So.2d 87, 91 (La. App. 4th Cir. 2000) (where general terms precede specific terms, principle is the same: general terms should be construed to encompass things similar or analogous to those in the specific terms). With these precepts in mind the Court will now turn to the specific water damage exclusions at issued before the Court.

**V.     Insuring Language and Exclusions of the Policies at Issue**

14

### a. ISO Policies

The "ISO policies"[4] issued by Standard Fire, Hartford, Hanover and Unitrin, all contain

identical language. As to the coverage provided, each policy states:

> COVERAGE A - DWELLING and COVERAGE B- OTHER STRUCTURES:
> We insure against risk of direct loss to property described in Coverages A and B
> only if that loss is a physical loss to property.

(Standard Fire Policies, App. at INS 94 and INS 134; Hartford Policy, App. at INS 53; Hanover

Policy, App. at INS 7; Unitrin Policy, App. at INS 169.)[5]     Following the coverage provision, this

exclusion appears:

> (1)    We do not insure for loss **caused directly or indirectly by any of the**
> **following.** Such loss is excluded regardless of any other cause or event
> contributing concurrently or in any sequence to the loss.[6]
>  . . .
> **(c) Water Damage**, meaning:
> Flood, surface water, waves, tidal water, overflow of a body of water,
> or spray from any of these, whether or not driven by wind;

(Standard Fire Policies, App. at INS 96 and INS 136; Hartford Policy, App. at INS 56; Hanover

Policy, App. at INS 9; Unitrin Policy, App. at INS 171.)   "Flood" is not defined anywhere in the

policy. this exclusion will be referred to as the ISO exclusion.

---

[4]"ISO" is an acronym for "Insurance Service Office, Inc." which provides products and services help to the insurance industry to measure, manage and reduce risk. It provides standardized insurance policy language such as the policies noted herein. *See,* ISO Homepage at www.iso.com.

[5]These citations refer to the appendix filed in conjunction with the Motion for Judgment on the Pleadings filed by Hanover Ins. Co. (Doc. No. 568) that was used as a joint exhibit containing all of the insurance policies at issue herein.

[6]This provision is generally referred to as an "anti-concurrent cause clause." Its genesis was the result of court decisions utilizing the "concurrent causation doctrine". Under this doctrine, the insurer is obligated to pay for damages resulting from a combination of covered and excluded perils if the efficient proximate cause is a covered peril. To counteract these decisions, insurers began employing the anti-concurrent cause clause to exclude losses if caused in whole or in part, in any sequence of events by an excluded peril. Stephen P. Pate, *Recent Developments in Property Insurance Law,* 33 Tort & Ins. L.J. 659, 663 (1998).

15

**b. State Farm Policy with "Lead-In" Provision**

The State Farm policies note at the outset that "We insure for accidental direct physical loss

to the property described in Coverage A, except as provided in SECTION I-LOSSES NOT

INSURED." They then provide:

> SECTION I -LOSSES INSURED
> Coverage A-Dwelling
> We insure for accidental direct physical loss to the property described in Coverage A, except
> as provided in Section I–LOSSES NO INSURED.
>
> SECTION I - LOSSES NOT INSURED
>
> 2.        We do not insure under any coverage for loss which would not have occurred in the
> absence of one or more of the following excluded events. We do not insure for such loss
> regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c)
> whether other causes acted concurrently or in any sequence with the excluded event to
> produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or
> widespread damage, arises from natural or external forces, or occurs as a result of any
> combination of these:[7]
>
> c.        (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from
> any of these all whether driven by wind or not;

(Doc. 570, Exhibit A and B, pp. 7 and 10).

**C. Hartford Policy's specific Flood Definition**

Of all of these policies, only Hartford includes an "Amendatory Endorsement Specifically

Excepted Perils." (Form H-380). This two page provision provides in relevant part:

> As used herein, Peril means a cause of physical loss or damage to property. It has this
> meaning whether or not it is called a Peril or a Cause of Loss in this policy.
>
> Even if any of the terms of this policy might be construed otherwise, the following Perils, as
> described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS
> POLICY. WE DO NOT COVER INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR
> INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED
> BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:

---

[7]This subsection is known as the "lead-in" provision.

16

A. ACTS, ERRORS OR OMISSIONS

. . .

    3.    The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:

        b.    Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; . . .

    5.    The maintenance of any of such property or facilities.

. . .

This exception A. applies whether or not the property or facilities described above are:

    1.    Covered under this policy; or

    2.    On or away from the covered premises.

This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.

As used in this endorsement:

    1.    If this policy is written to cover the risk of loss from specifically named causes, **Covered Peril** means any Peril specifically named as covered;

    2.    If written to cover the risk of loss without specifying specifically named causes, Covered peril means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

B.    COLLAPSE CRACKING OR SHIFTING of buildings, other structures or facilities, or their parts, if the collapse, cracking or shifting:

    1.    Occurs during earth movement, volcanic eruption or flood conditions or within 72 hours after they cease; and

    2.    Would not have occurred but for earth movement, volcanic eruption, or flood.

But if loss or damage by a Covered Peril ensues at the covered premises, we will pay for that ensuing loss or damage.

This exception B. applies whether or not there are other provisions in this policy relating to collapse, cracking or shifting of buildings, other structures or facilities, or their parts. Any such provision is revised by this endorsement to include this exception.

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more of the following Perils:

...
2. Flood:

this exception B. will not reduce that coverage.

As used in this exception B:

17

. . .

6.    flood means:

    a.    Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;

    b.    Release of water held by a dam, levy (sic) or dike or by a water or flood control device; . . .

All other provisions of this policy apply.

(Doc. 568, Hartford Policy, App. at INS 74-75). Thus, Hartford's Amendatory Endorsement Specifically Excepted Perils defines the term "flood" and specifically includes the release of water held by a levee or a flood control device.

## VI.    Parties' Contentions

Defendants[8] contend that all water damage caused by the canal breach is excluded from coverage as these policies exclude coverage for water damage resulting from a "flood" and that clearly the inundation of the City of New Orleans caused by the failure of its levees was a "flood." Seeking the broadest possible definition of the term, defendants maintain that "flood" is not limited to natural events. For this proposition they maintain that under Louisiana law, a court is "required to interpret the term using its plain, ordinary and generally prevailing meaning" and should not enlarge insurance coverage beyond that which is reasonably contemplated." *Cadwallader*, 848 So.2d at 583-84.

Defendants rely on *Kane v. Roby Ins. Co.*, 768 P.2d 678, 681 (Colo. 1989) for this proposition. In *Kane*, plaintiffs' property had been damaged by a flood caused by a dam failure.

---

[8]The Court would note that while a consolidated memorandum was filed on behalf of the insurers as instructed by the Court, individual arguments were also made. The Court has reviewed these and will only address those specific arguments when they diverge in a relevant way from the whole.

18