IX.     Application of Legal Principles to the Policies Before the Court; and
   A.      ISO Water Damage Exclusion,

the Court again finds this exclusion ambiguous and as such, interprets the provision in favor of

the insured.  As such, the Motion to Dismiss with respect to the Water Damage Exclusion will be

denied.

Likewise Losses Not Covered Sections 2, 3 and 4 above do not exclude with specificity

damages  caused by water the presence of which was caused by the negligent or intentional acts

of man which is the gravamen of plaintiffs' claims.  Obviously, in the event that there is proof

adduced with respect to  an individual claim that the actual cause of the damage to that

individual home was actually caused by the types of occurrences described in these exclusions,

then a finder of fact could find these exclusions to be operative.  However, in the context of a

Motion to Dismiss, this Court cannot and will not find as a matter of law find that these

exclusions are not ambiguous and clearly exclude coverage for damage allegedly caused by the

failed levee system caused by the negligent or intentional acts of man.

With respect to Section 4, from the case law examined concerning this particular

exclusion, it does not appear that this exclusion is meant to address water damage caused by

negligence of the kind alleged in *Chehardy. See West v. Umialik Ins. Co.*, 8 P.3d 1135 (Ala.

2000); *Hudson v. Allstate Ins. Co.*, 25 A.D.3d 654 (N.Y. S.Ct. App. 2nd 2006); *Carver v. Allstate

Ins. Co.*, 76 S.W. 3d 901 (Ark. App. 2002).   Furthermore, the term "no matter the source" does

not address causation, rather it addresses the a location from where the water might emanate.  As

such and again for all of the reasons stated in *Vanderbrook,* the motion in this respect will be

denied.

## 2.    Planning, Construction or Maintenance

Allstate further relies on the following language which is in the same section noted above, that is the "Losses We Dot Not Cover Under Coverages A and B" which provides that it does not cover losses caused by:

22.    Planning, Construction or Maintenance, meaning faulty, inadequate or defective:

(a)    planning, zoning, development, surveying, siting;

(b)    design, specifications, workmanship, repair construction, renovation, remodeling, grading, compaction;

(c)    material used in repair, construction, renovation or remodeling; or

(d)    maintenance;

of property whether on or off the residence premises by any person or organization.

(Exhibit A to Motion, ALST 00232). Again, this exclusion does not clearly exclude man-made failures with respect to levees which is at the core of the *Chehardy* pleading. Although the Allstate provision does not have an ensuing loss provision like the one contained in the ISO policy, this exclusion would appear to apply only to defalcations which occur whether on or off the residence premises with respect to the construction or design, and the like, of the insured premises or for property insured but not on the insured premises. Therefore, the omission of the ensuing loss provision is irrelevant to the facts as plead herein. *See e.g. Holland v. Breaux*, 2005 WL 3542899 (E.D.La. Nov. 22, 2005) (Africk, J.); *Angott v. Great Northern Ins. Co.*, 2006 WL 1328874 (E.D. Mich. May 15, 2006); *Wright v. Safeco Ins. Co. of America*, 2004 WL 2095664 (Wash. App. Div. 1 Sept. 1, 2004). Again for all of the reasons cited with respect to what is required for an exclusion to an all-risk policy to be unambiguous and enforceable found in *Vanderbrook*, this exclusion fails.

70

### 3.      Storm Surge in Section 1of Exclusion for Flood

Allstate also reiterates the language contained in Section 1[21] of the losses not covered and

cites to *Tuepker v. State Farm*, 2006 WL 1442489 (S.D. Miss. May 24, 2006) to urge that

because"storm surge" was clearly excluded, there should be no coverage. This case is inapposite

to the one before the Court because in *Tuepker*, naturally occurring  storm surge was the cause of

loss along the  Mississippi Gulf Coast.  There was no levee failure involved; this argument is

irrelevant to the *Chehardy* allegations.

### 4.      Weather Conditions

Allstate also relies on Exclusion Section 21 which provides that Allstate does not cover

loss to the insured property caused by "weather conditions that contribute in any way with a

cause of loss excluded in this section to produce a loss."   (Exhibit A, ALST 00232).  Again, as

the Court has found that the Water Damage Exclusions are inapplicable, this exclusion has no

effect as the loss is not excluded by the "Losses We Do Not Cover" provisions.

### 5.      Hurricane Deductible Endorsement

Allstate argues in its opposition to the *Chehardy* motion, "Plaintiffs also have argued that

their homeowner policy covers flood damage because of a Hurricane Deductible Endorsement."

While this allegation in the *Chehardy* pleadings alludes the Court, the Court concurs that any

---

[21]      "Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of
water, or spray from any of these, whether or not driven by wind"

71

Hurricane Deductible Endorsement contained in a policy does not increase coverage provided to a homeowner or insured.  Rather it generally increases the applicable deductible for covered losses caused by a hurricane.  As such, the Court finds that such an endorsement does not increase the coverage conferred by the policy in question.


### 6.    Plaintiffs' Extra-Contractual Claims Fail As a Matter of Law

As stated above, the Court finds the relief sought by Allstate to be premature considering the posture of the case, and the motion will be denied without prejudice for it to be re-urged at the appropriate time.

Thus, Allstate Insurance Company and Allstate Indemnity Co.'s Motion to Dismiss (Doc. 939) will be denied.


### C.    State Farm's Motion to Dismiss (Doc. 1037)

State Farm moves for the dismissal of Count One of the Complaint for Declaratory Relief and Count Two for Breach of Contract based on the same exclusions previously discussed in the *Vanderbrook* opinion.

The State Farm policies provide  that "We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I-LOSSES NOT INSURED."  The policies  then provides:

SECTION I -LOSSES INSURED
Coverage A-Dwelling

72

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in Section I–LOSSES NO INSURED.

SECTION I - LOSSES NOT INSURED

2.      We do not insure under any coverage for loss which would not have occurred in the absence of one or more of the following excluded events.  We do not insure for such loss **regardless of: (a) the cause of the excluded event**; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

c.      (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these all whether driven by wind or not;

(Doc. 570, Exhibit A and B, pp. 7 and 10) (emphasis added).

For the reasons previously assigned in *Vanderbrook*, in particular Sections:

IV.     Legal Concepts for Contract Interpretation;

VI.     Parties' Contentions;

VII.    Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable Interpretations of the Term;

VIII.   Jurisprudence Further Demonstrates Reasonableness of Alternative Interpretations;

IX.     Application of Legal Principles to the Policies Before the Court; and

     A.      ISO Water Damage Exclusion and

     B.      State Farm Policy's "lead-In Provision,

State Farm's Motion to Dismiss (Doc. 1037) will be granted and Counts One and Two of the *Chehardy* Amended and Restated Complaint will be dismissed as to State Farm.  This provision clearly excludes flood damage "no matter the cause" which clearly includes both natural and man-made "causes."   As previously stated, the Court will not address the extra-contractual relief

73

sought at this time, and the motion will be denied in that respect without prejudice, to be re-urged at the appropriate time.

### D. Louisiana Citizens Property Insurance Corp.–Motion to Dismiss Doc. 903

Louisiana Citizens Property Insurance Corporation ("LCPIC") filed a motion which adopts the memoranda filed by the ISO defendants, State Farm and Allstate. This defendant did not explain or provide the Court with which provisions of its own policy upon which it relies in order to ride on these memoranda's coattails. From a review of the insurance policy, it appears that it tracks the language of the ISO defendants' policy–in particular the Water Damage Exclusions, the Weather Condition Exclusion and the Faulty, Inadequate or Defective Acts Exclusion. As such, for the reasons stated in *Vanderbrook* and the reasons reiterated above with respect to the ISO defendants' policy, LCPIC's Motion to Dismiss (Doc. 903) will be denied.

### E. Encompass Indemnity Company's Motion to Dismiss (Doc. 923)

Encompass Indemnity Company ("Encompass") filed its Motion to Dismiss and Incorporated Memorandum and adopted (1) Allstate's arguments, (2) the ISO defendants' arguments as well (3) State Farms' arguments. In its memorandum, this defendant does not specify what language within the Encompass policy upon which it relies in this instance. It would appear that the policy tracks the Allstate policy in some regards as well as the ISO defendants' policies. As best as this Court can ascertain, Encompass relies on the following language:

74

1.        **Water Damage Exclusion**

In a section entitled "LOSSES WE DO NOT COVER" at ALST 00176 of Exhibit A to

the subject motion it states:

> We do not insure for loss caused directly or indirectly by any of the following.  such loss is
>
> excluded regardless of any other cause or event contributing concurrently or n any
>
> sequence to the loss.

> 1.        **Real Property and Tangible Personal Property.**  We do not insure for
> loss:
> a. caused by water damage, meaning:

>> 1.        Flood, including, but not limited to surface water,
>> waves, tidal water or overflow of any body of
>> water, or spray from any of these, whether or not
>> driven by wind;

>> 2.        Water which backs up through sewers or drains;

>> 3.        Water below the surface of the ground including water
>> which exerts pressure on, or seeps or leaks through a
>> building, sidewalk, driveway, foundation, swimming pool
>> or other structure; or

>> 4.        Water emanating from a sump pump, sump pump
>> well or similar device designed to prevent
>> overflow, seepage or leakage of subsurface
>> water.

> Direct loss by fire explosion or theft resulting from water damage is covered.

ALST 00177.  This water exclusion has neither the lead-in language of State Farm's policy nor

the same wording as that of the Allstate policy.  It is most like the ISO policy and for all the

reasons stated in the foregoing *Vanderbrook* and the *Chehardy* opinion to this point, the Court

will deny the motion to dismiss as it pertains to the applicability of the Water Damage Exclusion.

Only Section 1 would be arguably applicable by operation of the facts in the instant matter, and the reasons given for the denial of the ISO provisions with respect to the Water Damage Exclusion operate equally in this instance.

### 2. Other Exclusions

The other provisions that would apparently mirror the arguments made in the other briefs noted are found at Section 2. of the LOSSES WE DO NOT COVER portion of the policy which states:

2.      Real Property. We do not insure for loss:

. . .

g.      To covered real property caused by any of the following. **However, any ensuing loss not excluded or excepted in this policy is covered.**

(1)     Weather conditions. However, this exclusion applies only if weather conditions contribute in any way with a cause on (sic) event otherwise excluded to produce the loss.

(2)     Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

(3)     Faulty, inadequate or defective:

(a)     Planning, zoning, development, surveying, siting;

(b)     Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(c)     materials used in repair, construction, renovation or remodeling; or

(d)     Maintenance;

of part or all of any property whether on or off your residence premises.

(ALST 00178-79)(emphasis added). Considering the ensuing loss provision above, the Court likewise for all of the reasons stated previously finds that these exclusions do not operate to exclude coverage for the damages sought in *Chehardy* with respect to losses from water damage.

76

Again, the Court will deny the motion insofar as it seeks any dismissal of any extra-contractual issues as premature.  Thus, the Encompass Indemnity Company's Motion to Dismiss (Doc. 923) will be denied.

**F.      Great Northern Insurance Company's Motion to Dismiss** (Doc. 936)

Great Northern adopted the Motion to Dismiss of Allstate and relies on the following specific policy language contained in its policy as concerns its argument with respect to the Water Damage Exclusion:

> EXCLUSIONS
> These exclusion apply to your Deluxe House Coverage, including the Extra Coverages, unless stated otherwise.
>
> The words "caused by" mean any loss that is contributed to, made worse by, or in any way results from that peril.
> . . .
> **Surface water.** We do not cover any loss caused by:
> •flood, surface water, waves, tidal water, or water borne material from any of these;
> •overflow of water or water borne material from a body of water;
> •run off of water or water borne material from a paved surface, driveway, walkway, patio, or other similar surface; or
> •spray from any of these,
> from any source, even if driven by wind.  But we do insure ensuing covered loss unless another exclusion applies.

(Exhibit A, CH-FOR-020 and Exhibit B CH-BAR-018.)      This exclusion again does not clearly exclude water damage caused by negligent or intentional acts of man.  It does not address the ambiguity of the term "flood" and the fact that all of the listed "causes" appear to be the result of natural occurences, not the monumental civil engineering debacle that is alleged by plaintiffs.

77

For the reasons assigned in *Vanderbrook* and in the previous sections dealing with ISO and Allstate's motions in *Chehardy,* the Court finds that the Motion to Dismiss based on this exclusion is without merit.

As to the Faulty Planning, Construction or Maintenance, the following language appears in the same Exclusion section as above:

> These exclusion apply to your Deluxe House Coverage, including the Extra Coverages, unless stated otherwise.
>
> The words "caused by" mean any loss that is contributed to, made worse by, or in any way results from that peril.
>
> . . .
>
> **Faulty planning, construction or maintenance.**  We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance.  It does not matter whether the faulty acts, errors or omissions take place on or off the insured property.  **But we do insure ensuing covered loss unless anther exclusion applies.**  "Planning" includes zoning, placing, surveying, designing, compacting, setting specifications, developing property and establishing building codes or construction standards.  "Construction" includes materials, workmanship, and parts or equipment used for construction or repair.

(Exhibit A, CH-FOR-021 and Exhibit B CH-BAR-019.) (emphasis added).  Again, for all the reasons previously assigned in *Vanderbrook* and *Chehardy* with respect to this exclusion, as the damage would be considered loss from a covered peril based on the previous analysis, this provision does not operate to deny the insureds coverage.

Likewise, all other arguments raised as to "windstorm," "storm surge" and the applicability of the anti-concurrent clause are likewise rejected for the reasons stated heretofore in *Vanderbrook*.  Finally, as noted, the Court will deny the motion insofar as it seeks the dismissal of the extra-contractual claims.  The Court will deny that portion of the Motion to Dismiss without prejudice for it to be re-urged at the appropriate time.  Thus, the Great Northern Insurance Company's Motion to Dismiss(Doc. 936) will be denied.  Accordingly,

**IT IS ORDERED** with respect to:

Doc. 903     the Motion to Dismiss filed by Louisiana Citizens Property Insurance Corp is **DENIED**.

Doc. 923     the Motion to Dismiss filed by Encompass Indemnity Company is **DENIED**.

Doc. 932     Consolidated Rule 12(B)(6) Motion to Dismiss Plaintiffs' Amended and Restated Complaint filed by Defendants The Standard Fire Insurance Company, Lexington Insurance Company, Liberty Mutual Fire Insurance Company, The American Insurance Company, Aegis Security Insurance Company, Auto Club Family Insurance Company,[22] the Hanover Insurance Company and Lafayette Insurance Company is **DENIED.**

Doc. 936     Motion to Dismiss Plaintiff's Amended and Restated Complaint filed by Great Northern Insurance Company is **DENIED.**

Doc. 939     Motion to Dismiss Pursuant to Rule 12(b) filed by Allstate Insurance Company, Allstate Indemnity Company is **DENIED**.

Doc. 1037    Motion to Dismiss Plaintiffs' Amended and restated Complaint filed by State Farm Fire and Casualty Company is **GRANTED with respect to coverage and DENIED in part,** that is with respect to the extra-contractual claims of plaintiffs.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THIS ORDER PERTAINS TO:**

**KELLY A. HUMPHREYS**                                        **CIVIL ACTION**

**VERSUS**                                                          **NO. 06-0169**

---

[22]This company was named as AAA Homeowners Auto Club in the Amended Complaint.

79

ENCOMPASS INSURANCE COMPANY, ET AL.                    SECTION K(2)


### ORDER AND REASONS

Kelly A. Humphreys ("Humphreys") filed a Motion for Partial Summary Judgment

seeking coverage for wind and flood damages caused by Hurricane Katrina. (Doc. 39).   Having

held oral argument on this matter on October 27, 2006, and having reviewed the pleadings,

exhibits, memoranda and the relevant law, the Court will rule in conformity with the prior

decisions rendered herein in the *In re Katrina Canal Breaches Consolidated Litigation* with

respect to *Vanderbrook, Xavier and Chehardy.*  The Court adopts and considers this motion in

conformity with Section I of the *Vanderbrook* opinion entitled "The Civilian Approach as an *Erie*

Court" and Section I of the *Xavier* opinion entitled "Standard for Summary Judgment Motion."

The Court will first review the pleadings herein.


I.       **Procedural History and Allegations of Petition**

The petition was initially filed in Civil District Court for Parish of Orleans and after the

Orleans Levee District was added, the suit was removed to the United States District Court for the

Eastern District of Louisiana on January 13, 2006.  It was eventually transferred to this section of

Court, where the Court  granted a Motion to Sever the Orleans Levee District from this matter and

remanded that party to state court leaving only Encompass as a litigant.

Plaintiff alleges that her property suffered damage as a result of the 17th Street Canal levee

breach. (Petition at IX-XI.)  Plaintiff purchased from Encompass a homeowner's policy of

80

insurance in which the summary notes that plaintiff paid an additional $409.00 for "Hurricane

Peril Coverage." The declaration sheet notes a $1000.00 "Hurricane Deductible." Plaintiff

sought damages under this policy for water damage, wind damage, bad faith claims, including but

not limited to her claims under La. R.S. 22:658 and 22:1220. Humphreys also had purchased

National flood Insurance Program ("NFIP") coverage from which she collected and is not the

subject of suit. On June 12, 2006, a Rule 41 Stipulation of Partial Dismissal was filed notifying

the Court that all of plaintiff's wind damage claims and her bad faith claims, including but not

limited to her claims under La. R.S. 22:658 and 22:1220 had been compromised. Thus, the only

issue remaining is whether her homeowners policy provides coverage for the water damage which

she experienced as the result of the collapse of the 17th Street Canal floodwall.


**II. The Motion Before the Court**

The thrust of plaintiff's motion focuses on the Hurricane Deductible Endorsement which

she maintains takes precedence over policy language pursuant to La. Rev. Stat. 22:654 and the

declaration sheet which states "Hurricane Coverage Peril." Plaintiff maintains that:

1.      By virtue of the Hurricane Peril Coverage/Hurricane Deductible endorsement," a
        hurricane is covered event.

2.      Flood and wind is characteristic of a hurricane storm event;

3.      Plaintiff has coverage for "windstorm," so why then did she purchase hurricane protection
        coverage; and

81

4.      Section 2 **Real Property** subsection g and g.(1) excludes weather conditions but states

"ensuing loss," not excluded or exempted by tin the policy is covered.

As such, plaintiff contends that the ensuing loss, damage caused by Windstorm and Hurricane

Peril Coverage and Hurricane Deductible Endorsement are ensuing losses that extended coverage

by virtue of the endorsements to provide coverage for otherwise excluded perils, i.e. wind and

flood waters caused by a hurricane.   In addition, plaintiff contends that these provisions create an

ambiguity of the type noted in *Tuepker, supra,* and as such, a finding of coverage should ensue.

At oral argument, counsel for plaintiff also adopted the arguments of other counsel

concerning the applicability of the Water Damage Exclusion.


**III.     Applicable Policy Provisions**

The policy states in relevant part the following:

**COVERAGES**

**$1000 Hurricane Deductible (based on the residence value)**


**B. HURRICANE DEDUCTIBLE ENDORSEMENT**

We will pay only that part of the total of the loss for all Property Coverages that exceeds
the hurricane deducible state on the Coverage Summary.  The hurricane deductible shown
on the Coverage Summary applies to all covered property for direct physical loss or
damage caused directly or indirectly by a hurricane as defined below.  Such deductible
applies regardless of any other cause or event contributing concurrently or in any
sequence to the loss.  No other deducible provision in the policy applies to direct physical
loss caused by a hurricane.  In no event will the deductible applied for a hurricane loss be
less than the property deductible shown on the Coverage Summary.

Hurricane means wind, wind gust, hail, rain, tornado, cyclone or hurricane which result in
direct physical loss or damage to property be a storm system that has been declared to be
hurricane by the National Weather Service. the duration of the hurricane includes the time
period in your state:

82

A.   beginning at the time a hurricane watch or hurricane warning is issued for any part of the state by the National Weather Service;

B.   continuing for the time period during which the hurricane conditions exist anywhere in the state; and

C.   ending 12 hours following the termination of the last hurricane watch or hurricane warning for any part of your state by the National Weather se5rve.

All other provisions of this policy apply.

**REAL PROPERTY -COVERED PERILS**

We cover direct physical loss to property describe in **Real Property - Insuring Agreement,** unless the loss is not covered under **Property Coverage - Losses We Do Not Cover.**

. . .

**LOSSES WE DO NOT COVER**

The introductory paragraph is deleted and replaced by the following:

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. **However, coverage will be provided for any covered peril that precedes an excluded peril, occurs concurrently with an excluded peril, or occurs as a result of an excluded peril.**

(Exhibit "1E" amendment of G18733-H Required Coverage and amendments page 6 of 14.)

1.   **Real property and Tangible Personal Property**. We do not insure for loss:

a.   Caused by water damage, meaning:

(1)   Flood, surface water, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(Exhibit "1F" policy of Insurances page 11 of 23).

2.   **Real Property**. We do not insure for loss:

g.   To covered real property caused by any of the following. However, any ensuing loss not excluded or excepted in this policy is covered.

(1)   Weather conditions. However, this exclusion applies only if weather conditions contribute in any way with a cause on (sic) event otherwise excluded t produce the loss.

83

(Exhibit 1G, Page 13 of 23 of policy).

## III. Analysis

Plaintiff's contentions concerning the Hurricane Deductible are misplaced. This endorsement simply reduced the deductible that would normally be applicable from a percentage of the value of the house to a flat $1000.00. It does not create independent coverage. However, because of the ambiguity in the Water Damage Exclusion as previously discussed in *Vanderbrook, Xavier and Chehardy*, the Court finds it will grant the motion for partial summary judgment as the Water Damage Exclusion is ambiguous and must be construed against the insurer, and thus provides coverage for the insured herein. In so finding the Court reiterates and incorporates the *Vanderbrook* opinion above, in particular sections,

IV.     Legal Concepts for Contract Interpretation;

VI.     Parties' Contentions;

VII.    Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable Interpretations of the Term;

VIII.   Jurisprudence Further Demonstrates Reasonableness of Alternative Interpretations;

IX.     Application of Legal Principles to the Policies Before the Court; and

      A.     ISO Water Damage Exclusion.

Accordingly,

**IT IS ORDERED** that the Plaintiff's Motion for Partial Summary Judgment is **GRANTED** insofar as there is coverage as a result of the ambiguity in the Water Damage Exclusion and **DENIED** with respect to the Hurricane Deductible argument.

## CERTIFICATION FOR APPEAL

84

Pursuant to 28 U.S.C. § 1292(b), all orders entered herein involve a controlling question of law as to which there is a substantial ground for a difference of opinion and an immediate appeal from these orders may materially advance the ultimate termination of the litigation. In accordance with 28 U.S.C. § 1292(b), an application for appeal must be made to the Court of Appeals within ten days after the entry of this order.

The Court notes that if it had the power under Rule XII of the Rules of the Louisiana Supreme Court to certify the issues decided herein to that court, it would have done so, since there are no clear controlling precedents of the Louisiana Supreme Court on same and the issues presented and decided herein are significant and require an application of Louisiana law.

New Orleans, Louisiana, this __27th__ day of November, 2006.

_____

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**

85

No. _____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

IN RE KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

PERTAINS TO INSURANCE

*Chehardy*, C.A. Nos. 06-1672, 06-1673, 06-1674

GLADYS CHEHARDY, et al.,

Respondents-Plaintiffs,

v.

STATE FARM FIRE & CAS. CO., et al.,

Petitioners-Defendants.

On Appeal From The United States District Court
For The Eastern District Of Louisiana
E.D. La. Docket No. 05-4182

## PETITION OF ENCOMPASS INDEMNITY COMPANY
## FOR PERMISSION TO APPEAL UNDER 28 U.S.C. § 1292(b)

Judy Y. Barrasso                    Richard L. Fenton
Edward R. Wicker, Jr.               Kendra K. Hartman
BARRASSO USDIN KUPPERMAN            SONNENSCHEIN NATH &
    FREEMAN & SARVER, L.L.C.            ROSENTHAL LLP
909 Poydras Street, Suite 1800      7800 Sears Tower
New Orleans, Louisiana 70112        Chicago, Illinois  60606
Telephone:  (504) 589-9700          Telephone:  (312) 876-8000

                                    *Attorneys for Petitioner*
                                    *Encompass Indemnity Company*

No. _____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

IN RE KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

PERTAINS TO INSURANCE

*Chehardy*, C.A. Nos. 06-1672, 06-1673, 06-1674

GLADYS CHEHARDY, et al.,

Respondents-Plaintiffs,

v.

STATE FARM FIRE & CAS. CO., et al.,

Petitioners-Defendants.

On Appeal From The United States District Court
For The Eastern District Of Louisiana
E.D. La. Docket No. 05-4182

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons
and entities as described in the fourth sentence of Rule 28.2.1 have an interest in
the outcome of this case.  These representations are made in order that the judges
of this Court may evaluate possible disqualification or recusal.

i

**A.     Plaintiffs:**

1.    Gladys Chehardy

2.    Daniel Fontanez

3.    Jacquelyn Fontanez

4.    Larry Forster

5.    Glenda Forster

6.    Kenneth Maier

7.    Judith Maier

8.    Randy Gervais

9.    Lori Gervais

10.   Andre Mauberret

11.   Marlin Mauberret

12.   Debbie Strawn

13.   Dave Strawn

14.   Stephanie Boyd

15.   Brad Boyd

16.   New Orleans Flooring Supply, Inc.

17.   Shawn Burst

18.   Angelina Burst

19.   Susan Brown (incorrectly identified as Patricia Brown in Amended Complaint)

20.   Marie Fatheree

21.   Katrina Daniels

ii

22.    Lionel Jones

23.    Edna Jones

24.    Karen Lewis

25.    Shane Sylvester

26.    Austra Zapata

27.    Sabrina Perkins

28.    Eldridge Pollard

29.    Michael Peterson

30.    Wendell Glation

31.    Mack Barham

**B.    Counsel for Plaintiffs:**

32.    Joseph M. Bruno

33.    David S. Scalia

34.    Bruno & Bruno

35.    Joseph J. McKernan

36.    Gordon J. McKernan

37.    Chet Boudreaux

38.    McKernan Law Firm

39.    Calvin C. Fayard, Jr.

40.    Fayard & Honeycutt

41.    John N. Ellison

42.    Darin McMullen

43. Anderson Kill & Olick, PC

44. Drew Ranier

45. N. Frank Elliot, III

46. Ranier, Gayle & Elliot, L.L.C.

**C.    Defendants, Defendants' Counsel, and Related Entities:**

47. Great Northern Insurance Company

48. Steven W. Usdin

49. Edward R. Wicker, Jr.

50. Barrasso Usdin Kupperman Freeman & Sarver, L.L.C.

51. State Farm Fire & Casualty Company

52. Wayne J. Lee

53. Stephen G. Bullock

54. Sarah House Barcellona

55. Stone, Pigman, Walther, Wittmann, LLC

56. Allstate Insurance Company (a wholly-owned subsidiary of The Allstate Corporation, which is a Delaware corporation. The stock of The Allstate Corporation is publicly traded. No publicly-held entity owns 10% or more of the stock of The Allstate Corporation.)

57. Allstate Indemnity Company (a wholly-owned subsidiary of Allstate Insurance Company, which is an Illinois insurance

company.  Allstate Insurance Company is a wholly-owned

subsidiary of The Allstate Corporation, a Delaware corporation.

The stock of The Allstate Corporation is publicly traded.  No

publicly-held entity owns 10% or more of the stock of The

Allstate Corporation.)

58.    The Allstate Corporation (parent to Allstate Insurance

Company and Allstate Indemnity Company, both being Illinois

insurance companies.  The Allstate Corporation is a Delaware

corporation.  The stock of The Allstate Corporation is publicly

traded.  No publicly-held entity owns 10% or more of the stock

of The Allstate Corporation.)

59.    Encompass Insurance Company (a wholly owned subsidiary of

Encompass Financial Group, LLC, which is a Delaware limited

liability company.  Encompass Financial Group, LLC is a

wholly-owned subsidiary of Allstate Insurance Company,

which is an Illinois insurance company.  Allstate Insurance

Company is a wholly-owned subsidiary of The Allstate

Corporation, a Delaware corporation.  The stock of The Allstate

Corporation is publicly traded.  No publicly-held entity owns

10% or more of the stock of The Allstate Corporation.)

60. Encompass Insurance Company of America (a wholly owned
    subsidiary of Encompass Financial Group, LLC, which is a
    Delaware limited liability company. Encompass Financial
    Group, LLC is a wholly-owned subsidiary of Allstate Insurance
    Company, which is an Illinois insurance company. Allstate
    Insurance Company is a wholly-owned subsidiary of The
    Allstate Corporation, a Delaware corporation. The stock of The
    Allstate Corporation is publicly traded. No publicly-held entity
    owns 10% or more of the stock of The Allstate Corporation.)

61. Encompass Indemnity Company (a wholly owned subsidiary of
    Encompass Financial Group, LLC, which is a Delaware limited
    liability company. Encompass Financial Group, LLC is a
    wholly-owned subsidiary of Allstate Insurance Company,
    which is an Illinois insurance company. Allstate Insurance
    Company is a wholly-owned subsidiary of The Allstate
    Corporation, a Delaware corporation. The stock of The Allstate
    Corporation is publicly traded. No publicly-held entity owns
    10% or more of the stock of The Allstate Corporation.)

62. Liberty Mutual Fire Insurance Company

63. Judy Y. Barrasso

64. Richard L. Fenton

65.   Kendra K. Hartman

66.   H. Minor Pipes, III

67.   Lafayette Insurance Company

68.   Howard Bruce Kaplan

69.   Bernard, Cassisa, Elliot & Davis

70.   The American Insurance Company

71.   Kelly Cambre Bogart

72.   Nicole McDaniel Bowen

73.   Jamie Michele Cambre

74.   Kevin R. Derham

75.   Lawrence J. Duplass

76.   Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock

77.   AAA Homeowners Auto Club Family Insurance Company

78.   Alan J. Yacoubian

79.   Neal J. Favret

80.   Johnson, Johnson, Barrios & Yacoubian

81.   Louisiana Citizens Property Insurance Corporation

82.   John William Waters, Jr.

83.   Gregory J. McDonald

84.   Bienvenu, Foster, Ryan & O'Bannon

85.   Traveler's Property Casualty Company of America

86.   Stephen E. Goldman

87.   Wystan M. Ackerman

88.   Robinson & Cole, L.L.P.

89.   Ralph Shelton Hubbard, III

90.   Seth Andrew Schmeekle

91.   Joseph Pierre Guichet

92.   Tina L. Garmon

93.   Lugenbuhl, Wheaton, Peck, Rankin & Hubbard

94.   Lexington Insurance Company

95.   Robert I. Siegel

96.   John E. Baay, III

97.   Daniel Gibbons Rauh

98.   Geiger, LaBorde & Laperouse, L.L.C.

99.   Richard Doren

100.  Anthony Edelstein

101.  Daniel W. Nelson

102.  Gibson, Dunn & Crutcher

103.  AEGIS Security Insurance Company

104.  Maura Zivalich Pelleteri

105.  Andrea A. Mittleider

106.  Amy M. Seltzer

107.   Krebs, Farley & Pelleteri, L.L.C.

108.   Hanover Insurance Company

109.   Paul E.B. Glad

110.   David R. Simonton

111.   Andrew R. Greene

112.   Sonnenschein Nath & Rosenthal LLP

113.   Kristopher T. Wilson

114.   LaDonna Grey Wilson

**D.   District Court Judge Rendering Decision Below:**

115.   Honorable Stanwood R. Duval, Jr.

U.S. District Court for the Eastern District of Louisiana

# **TABLE OF CONTENTS**

**Page**

Certificate of Interested Persons ................................................................. i

Table of Contents ..................................................................................... x

Table of Authorities ................................................................................ xii

Introduction .............................................................................................. 1

I.     Relevant Factual and Procedural Background ............................... 3

    A.     The Plaintiffs' Claims ......................................................... 3

    B.     Encompass's Policy Language............................................. 3

    C.     District Court Proceedings .................................................. 5

II.    Issue on Appeal ............................................................................. 6

III.   Relief Sought ................................................................................ 6

IV.    Reasons Why This Appeal Should Be Allowed............................. 6

    A.     There Is Substantial Ground For Difference of Opinion on the
        District Court's Contract Interpretation.  ............................. 6

        1.     The Courts Have Enforced the Water Damage Exclusions
               Whether the Flood was "Natural" or "Man-Made.".................. 9

        2.     In Enacting the National Flood Insurance Program, Congress
               Likewise Did Not Differentiate Between "Natural" and
               "Man-Made" Floods. ............................................................... 11

        3.     The Faulty Workmanship Exclusion Unambiguously
               Excludes Plaintiffs' Claims ..................................................... 12

    B.     This Case Involves Controlling Questions of Law. ............. 14

C.    Interlocutory Appeal Will Materially Advance the Ultimate
      Termination of This Litigation.............................................................16

Conclusion ..................................................................................................18

## **TABLE OF AUTHORITIES**

**PAGES**

## **CASES**

*Aetna Ins. Co. v. United States*, 628 F.2d 1201 (9th Cir. 1980),
     *cert. denied*, 450 U.S. 1025 (1981) ........................................................11, 12

*Am. Marine Underwriters, Inc. v. Holloway*, 826 F.2d 1454 (5th Cir. 1987).........14

*Atl. City Elec. Co. v. Gen. Elec. Co.*, 207 F. Supp. 613 (S.D.N.Y.), *aff'd*,
     312 F.2d 236 (2d Cir. NY 1962) ...................................................................16

*Atlas Lubricant Corp. v. Fed. Ins. Co. of N.J.*, 293 So. 2d 550
     (La. Ct. App. 4th Cir. 1974) ..........................................................................12

*Bailey v. Battiest Constr. Co.*, 809 So. 2d 1118 (La. Ct. App. 4th Cir. 2002) ......6, 7

*Bartlett v. Cont'l Divide Ins. Co.*, 697 P.2d 412 (Colo. Ct. App. 1984),
     *aff'd*, 730 P.2d 308 (Col. 1986) ...................................................................10

*BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) ...............................................13

*Buente v. Allstate Ins. Co.*, No. 05-712, 2006 WL 980784 (S.D. Miss. Apr. 12,
     2006)................................................................................................................10

*Cotton Bros. Cypress Co. v. Home Ins. Co. of N.Y.*, 84 So. 792 (La. 1920) ............7

*Dobson v. Allstate Ins. Co.*, No. 06-0252, 2006 WL 2078423
     (E.D. La. Jul. 21, 2006) ...................................................................................9

*Dorsey v. Metro. Life Ins. Co.*, 145 So. 304 (La. Ct. App. 1933) .............................7

*E.B. Metal & Rubber Indust. Inc. v. Fed. Ins. Co.* 444 N.Y.S.2d 321
     (N.Y. App. Div. 1981)......................................................................................11

*Eaker v. State Farm Fire & Cas. Ins. Co.*, 216 F. Supp. 2d 606
     (S.D. Miss. 2001)..............................................................................................10

*Fla. E. Coast Ry. Co. v. United States.*, 519 F.2d 1184 (5th Cir. 1975) ...................8

*Gladney v. Paul Revere Life Ins. Co.*, 895 F.2d 238 (5th Cir. 1990) .....................14

*Gopher Oil Co. v. Union Oil Co.*, 757 F. Supp. 998 (D. Minn. 1991).....................16

*Hardware Dealers Mut. Ins. Co. v. Berglund*, 393 S.W.2d 309 (Tex. 1965) .........10

*Indus. Enclosure Corp. v. N. Ins. Co.*, No. 97-6850, 2000 WL 1029192
    (N.D. Ill. Jul. 26, 2000)...............................................................................11

*Johnson v. Burken*, 930 F.2d 1202 (7th Cir. 1991) .................................................15

*Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678 (Col. 1989) ......................................10

*Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3rd Cir. 1974) ............................14, 15

*Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21 (2d Cir. 1990) ...........................15

*Landgraf v. USI Film Prod.*, 511 U.S. 244 (1994) .................................................13

*Paschall v. Kansas City Star Co.*, 605 F.2d 403 (8th Cir. 1979),
    *rev'd in part on other grounds*, 955 F.2d 519 (8th Cir. 1992)......................17

*Quesada v. Dir. Fed. Emergency Mgmt. Agency*, 577 F. Supp. 695 (S.D.
    Fla. 1983), *aff'd*, 753 F.2d 1011 (11th Cir. 1985).........................................10

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
    86 F.3d 656 (7th Cir. 1996).........................................................................14

*Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486 (5th Cir. 2005) ...............13

*TNT Speed & Sport Ctr. Inc. v. Am. States Ins. Co.*, 114 F.3d 731
    (8th Cir. 1997) .............................................................................................10

*Travelers Indem. Co. v. Powell Ins. Co.*, No. 95-4188, 1996 WL 578030
    (E.D. La. Oct. 4, 1996) ..................................................................................9

*Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267 (5th Cir. 1990) ................12

*Valley Forge Ins. Co. v. Hicks Thomas Lilienstern, L.L.P.*, 174 S.W.3d 254
    (Tex. Ct. App. 2004) ...................................................................11

*W. Nat'l Mut. Ins. Co. v. Univ. of N.D.*, 643 N.W.2d 4 (N.D. 2002) ........................8

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1190
    (E.D. Pa. 1980) .......................................................................17

## STATUTES

28 U.S.C § 1292(b) ...........................................................*passim*

33 U.S.C. § 702 ......................................................................12

42 U.S.C. § 4001.....................................................................11

LA. CIV. CODE art. 2046 ..............................................................7

LA. CIV. CODE art. 2047 ..............................................................6

LA. CIV. CODE art. 2052 ..............................................................8

LA. CIV. CODE art. 2053 .............................................................12

LA. CIV. CODE art. 2056 .............................................................12

## OTHER AUTHORITY

16 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
    PROCEDURE §§ 3929-30 (2d ed. 1996). ...................................15, 17

44 C.F.R. Pt. 61, App. A .............................................................11

44 C.F.R. § 59.1 ......................................................................11

U.S. CONST. ART. I., § 10 ............................................................13

## INTRODUCTION

Encompass Indemnity Company ("Encompass") respectfully seeks permission to file an interlocutory appeal from the Order ("Order") entered on November 27, 2006, by the Honorable Judge Stanwood R. Duval, Jr. of the United States District Court for the Eastern District of Louisiana, in *Chehardy et al. v. State Farm et al.*, Nos. 06-1672, 06-1673, and 06-1674 ("*Chehardy*"), which is one of the many hurricane lawsuits under the caption *In re Katrina Canal Breaches Consolidated Litigation*, No. 05-4182 ("Consolidated Litigation"). A copy of the Order is attached hereto as Exhibit A.

The district court's ruling has far-reaching implications for thousands of individual Hurricane Katrina cases and class actions pending against insurance carriers in Louisiana federal and state courts. Most of these cases in one form or another involve coverage issues and the scope of the exclusions for flood and water damage. The issues presented are therefore of great importance to the region, the insurance industry, and policyholders alike. They require prompt and immediate consideration.

The district court certified its Order for interlocutory appeal under 28 U.S.C. § 1292(b), finding among other things that the Order involved "controlling question[s] of law as to which there is a substantial ground for a difference of opinion…." (Ex. A at 85.) There is certainly "substantial ground" for difference of

1

opinion here. For more than 80 years, courts, commentators, Congress and state insurance departments, including the Louisiana Department of Insurance, have publicly recognized that homeowner policies typically do not cover flood damage.

Encompass's policies are no exception. They clearly exclude any loss "[c]aused by water damage, meaning flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind." Yet based on a contrived distinction between so-called "natural" floods and "man-made" floods -- a distinction *not* made in Encompass's policy forms -- the district court here essentially rewrote the policies to create coverage where none exists. It held that to the extent plaintiffs' losses were caused by failed levees that were improperly maintained or designed, the flooding of New Orleans was somehow not a "flood," and the losses somehow were not "caused by water damage" or "flood."[1]

An overwhelming weight of jurisprudence, including the Eighth Circuit, Colorado Supreme Court and state appellate courts, have enforced similar or identical water exclusions, including in cases involving so-called "man-made" floods. The district court's holding is at odds both with these authorities and with the plain, ordinary meaning of the policy language. Accordingly, and as more

---

[1]     The court also held that Encompass's exclusion for faulty workmanship was inapplicable because it contained an "ensuing loss provision." Ex. A at 47-49 and 76.

fully set forth below, this Court should accept the district court's certification and grant Encompass leave to appeal the district court's ruling.

## I.        RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.        The Plaintiffs' Claims

*Chehardy* is a putative class action against Encompass and other insurance carriers seeking coverage under homeowner policies for water damage allegedly caused by Hurricane Katrina.  Plaintiffs contend that the water damage exclusions in their homeowner policies do not apply because the water damage they suffered resulted from windstorm, storm surge and/or from negligence in the design, maintenance or use of the New Orleans levee systems.[2]  (Am. and Restated Compl. ¶¶ 59-64 (Doc. 516).)  Plaintiffs, under a variety of legal theories, seek declaratory relief, contract damages, and extracontractual bad faith penalties pursuant to La. R.S. 22:1220. (*Id.* ¶¶ 51-69; 70-100.)

### B.        Encompass's Policy Language

Encompass moved to dismiss plaintiffs' complaint based on separate exclusions in Encompass's homeowner policies -- the "water damage" exclusion and the "faulty workmanship" exclusion -- either one of which excludes coverage for plaintiffs' alleged losses.

---

[2]      The district court's Order focuses almost exclusively on the plaintiffs' allegations regarding levee breaches, rather than "windstorm" or "storm surge."

**The Water Damage Exclusion**

Encompass's water damage exclusion excludes any loss:

    a.    Caused by water damage, meaning:

        1.    Flood, surface water, waves, tidal water, or overflow of a body of water, or spray from any of these, whether or not driven by wind;

        2.    Water which backs up through sewers or drains;

        3.    Water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure; or

        4.    Water emanating from a sump pump, sump pump well or similar device designed to prevent overflow, seepage or leakage of subsurface water.

(Encompass's Motion to Dismiss Ex. A ("Policy") ALST 00176-77 (Doc. 923-4).)

**The Faulty Workmanship Exclusion**

In addition, the Encompass policy expressly exclude any loss:

    g.    To covered real property caused by any of the following. However, any ensuing loss not excluded or excepted in this policy is covered.

        (1)    Weather conditions. However, this exclusion applies only if weather conditions contribute in any way with a cause on (sic) event otherwise excluded to produce the loss.

        (2)    Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

        (3)    Faulty, inadequate or defective:

            (a)    Planning, zoning, development, surveying, siting;

4

     (b)     Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

     (c)     Materials used in repair, construction, renovation or remodeling; or

     (d)     Maintenance;

of part or all of any property whether on or off your residence premises.

(*Id.* at ALST 00178-79.)

## C.    District Court Proceedings

Based on these clear and unambiguous exclusions, Encompass moved to dismiss plaintiffs' complaint. Encompass incorporated and adopted by reference the 12(b)(6) motions to dismiss filed by Allstate Insurance Company, Allstate Indemnity Company, and other moving defendants. Employing a lengthy and hyper-technical linguistic analysis, and contrary to established jurisprudence as well as plain meaning, the district court held that the flooding of New Orleans as a result of levee breach was somehow not a "flood" or "water damage" within the plain meaning of the policy because the policy does not "clearly exclude water damage caused by negligent acts of man." The court likewise refused to enforce the faulty workmanship exclusion. (Ex. A at 76.) The court certified its ruling for immediate appeal under 28 U.S.C. § 1292(b). (*Id.* at 85.)

5

II.     **ISSUE ON APPEAL**

Is flood or water damage allegedly resulting from a breach of the New

Orleans levees due to improper design or maintenance excluded under

Encompass's homeowner policies?

III.    **RELIEF SOUGHT**

Encompass respectfully requests that this Court review and reverse the

district court's Order.  Flood damage caused by levee breaches is clearly excluded

under Encompass's homeowner policies, and *Chehardy* should be dismissed in its

entirety.

IV.     **REASONS WHY THIS APPEAL SHOULD BE ALLOWED**

An order is appropriate for immediate interlocutory appeal pursuant to 28

U.S.C. § 1292(b) if: (1) the order involves a controlling question of law; (2) there

is a substantial ground for difference of opinion as to that question; and (3) an

immediate appeal from the order may materially advance the ultimate termination

of the litigation.  The district court correctly found that all three requirements are

met here.  (Ex. A at 85.)

    A.     **There Is Substantial Ground for Difference of Opinion on the
           District Court's Contract Interpretation.**

Where, as here, words in a contract are not otherwise defined, they must be

given their "generally prevailing" meaning.  LA. CIV. CODE art. 2047; *Bailey v.*

*Battiest Constr. Co.,* 809 So. 2d 1118, 1120 (La. Ct. App. 4th Cir. 2002) (meaning

6

of contract is to be determined "in accordance with the general, ordinary, plain and popular meaning of the words used in the policy"). Virtually every newspaper, every news broadcast, every internet site and blog and every discussion regarding Hurricane Katrina described the "flooding" of the City of New Orleans.[3] The district court itself admitted, "[c]ertainly the damage sued upon was caused by flooding." (Ex. A at 44.) The "generally prevailing meaning" of the term "flood" plainly includes the flooding of New Orleans.

Nonetheless, the district court concluded that, to the extent that the source of the flooding was levee breach or canal failure, New Orleans' post-Katrina deluge was somehow not a "flood." To reach this absurd result, the Court in part claimed to apply certain canons of construction. (Ex. A at 7-14, 74-76.) But "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046. The doctrines of *ejusdem generis* and *noscitur a sociis* are canons of construction designed to *resolve* the meaning of a contract **after** it has been found ambiguous, not to introduce ambiguity where the words used are otherwise clear. LA. CIV. CODE art. 2046; *Dorsey v. Metro. Life Ins. Co.*, 145 So. 304, 310 (La. App. 1933) (Westerfield, J., concurring); *Cotton Bros. Cypress Co. v. Home Ins.*

---

[3]     A Google search of "New Orleans Flood 2005" yields more than one million sites. A similar search on Yahoo! yields nearly three million sites.

*Co. of N.Y.*, 84 So. 792, 794 (La. 1920).  Moreover, in finding that the

unambiguous term "flood" was modified because it was followed by examples of

supposedly "natural" events, the court ran directly afoul of LA. CIV. CODE ANN. art

2052, which provides that "When the parties intend a contract of general scope but,

to eliminate doubt, include a provision that describes a specific situation,

***interpretation must not restrict the scope of the contract to that situation alone."***

The district court therefore manufactured ambiguity where it does not exist.

There is nothing ambiguous about the term "flood."[4]  A "flood" is "[w]ater which

inundates an area of the surface of the earth where it ordinarily would not be

expected to be." *Fla. E.  Coast Ry. Co. v. United States,* 519 F.2d 1184, 1192 (5th

Cir. 1975).  *See, also, W. Nat'l Mut. Ins. Co. v. Univ. of N.D.*, 643 N.W.2d 4, 10

(N.D. 2002) (plain meaning of flood is "overflowing of water on an area normally

dry").

Reading the Encompass policy and exclusions as a whole, there is no way

that any reasonable policyholder, applying the ordinary and generally prevailing

---

[4]     Although the court claimed to rely in part on dictionary definitions (Ex. A at 25-27), the definitions cited do not support the court's argument that "flood" is by definition limited to "natural" phenomena.  It is noteworthy that the Oxford English Dictionary defines a "flood" as "an overflow of a large amount of water over dry land," while the American Heritage Dictionary of the English Language  [4th Ed.] defines "flood" as "[a]n overflowing of water onto land that is normally dry."  Either definition unquestionably describes the post-Katrina inundation of New Orleans.

meaning to the words used, could conclude that his Encompass policy covered "flood" losses of any kind.

Nor could a reasonable policyholder conclude that negligent design or construction of levees was covered in the face of plain language excluding coverage for "[f]aulty, inadequate or defective ... [d]esign, specifications, workmanship, repair, construction . . . or . . . [m]aintenance of part or all of any property whether on or off your residence premises."

Plainly put, the court below disregarded the contract terms, ignored relevant case law and statutory provisions, and substituted non-sensical, hyper-technical linguistics for plain meaning, ultimately arriving at a conclusion that was completely contrary to the express and unambiguous intent of the drafter.

### 1.    The Courts Have Enforced the Water Damage Exclusions Whether the Flood was "Natural" or "Man-Made."

Not surprisingly, the courts have routinely enforced water damage exclusions similar to Encompass's as valid and unambiguous. Recently, Judge Vance in the Eastern District of Louisiana held that Allstate Insurance Company's flood exclusion is "clearly worded" and that the "clear policy language" excluded flooding caused by hurricanes. *Dobson v. Allstate Ins. Co.*, No. 06-0252, 2006 WL 2078423, at *11 (E.D. La. Jul. 21, 2006). In fact, the court held that the policy language was so clear that an insured could not justifiably rely on an agent's alleged oral representation that the policy covered flood. *Id. See, also, Travelers*

9

*Indem. Co. v. Powell Ins. Co.*, No. 95-4188, 1996 WL 578030, at *3 (E.D. La. Oct. 4, 1996) (flood exclusion unambiguous).[5]

More specifically, the courts have found that flood damage is excluded regardless of whether it was caused by human negligence or error. That precise question was addressed in *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 680-81 (Col. 1989), in which the Colorado Supreme Court concluded that "[t]he generally accepted meaning of the term 'flood' does not include a distinction between artificial and natural floods" and that "there is no basis for holding that the term 'flood' is ambiguous as applied to 'the great overflowing of water' ***caused by the failure of Lawn Lake Dam.***" (emphasis added). *See also Bartlett v. Cont'l Divide Ins. Co.*, 697 P.2d 412, 413 (Colo. Ct. App. 1984), *aff'd*, 730 P.2d 308 (Colo. 1986) (the term "flood" means "'a body of water (including moving water) . . . overflowing or inundating land not usually covered,' *and no distinction is made between natural and artificial causes*") (quoting 36A C.J.S. Flood) (emphasis added); *TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 732

---

[5]     *See also Buente v. Allstate Ins. Co.*, No. 05-712, 2006 WL 980784, at *1-2 (S.D. Miss. Apr. 12, 2006)("inundation that occurred during Hurricane Katrina was a flood, as that term is ordinarily understood."); *Quesada v. Dir. Fed. Emergency Mgmt. Agency*, 577 F. Supp. 695, 697 (S.D. Fla. 1983) (property damage caused by heavy flooding and rains attributable to tropical storm not covered), *aff'd*, 753 F.2d 1011 (11th Cir. 1985); *Eaker v. State Farm Fire & Cas. Ins. Co.*, 216 F. Supp. 2d 606, 622 (S.D. Miss. 2001) ("water damage" exclusion excluded damages from Hurricane claimed by plaintiff); *Hardware Dealers Mut. Ins. Co. v. Berglund*, 393 S.W.2d 309, 313-14 (Tex. 1965) (excluding coverage for damage caused by rising water accompanying hurricane).

(8th Cir. 1997) ("flood" includes both man-made and natural floods); *E.B. Metal & Rubber Indust., Inc. v. Fed. Ins. Co.*, 444 N.Y.S.2d 321, 322 (N.Y. App. Div. 1981) (flood exclusion applied to failed dike).[6]

### 2. In Enacting the National Flood Insurance Program, Congress Likewise Did Not Differentiate Between "Natural" and "Man-Made" Floods.

Because it was not economic for private homeowner insurance companies to provide flood coverage, Congress created the National Flood Insurance Program ("NFIP") in 1968 to fill the void. *See* 42 U.S.C. § 4001, et seq. Under the NFIP, flood policies are underwritten by, and premiums paid to, the federal government. 44 C.F.R. Pt. 61, App. A. The National Flood Insurance Act, 42 U.S.C. § 4001, et seq., which was intended to fill the void left by private carriers' flood and water exclusions, does not differentiate between so-called "natural" floods and "man-made" floods, nor do the regulations promulgated thereunder or the NFIP Standard Flood Insurance Policy. *See* 44 C.F.R. Pt. 61, App. A(1); 44 C.F.R. § 59.1.

Although the court below was dismissive of arguments regarding the NFIP, the court's ruling necessarily sets up a conflict between the manner in which the

---

[6]    *See also Aetna Ins. Co. v. United States*, 628 F.2d 1201, 1203 (9th Cir. 1980) (collapse of partially completed dam caused "flood"), *cert. denied*, 450 U.S. 1025 (1981); *Indus. Enclosure Corp. v. N. Ins. Co.*, No. 97-6850, 2000 WL 1029192, at *6 (N.D. Ill. Jul. 26, 2000) (excluding water damage caused by overflow of tributary even though overflow may have been caused by collapse of nearby building); *Valley Forge Ins. Co. v. Hicks Thomas Lilienstern, L.L.P.*, 174 S.W.3d 254, 259 (Tex. Ct. App. 2004) (excluding loss resulting from water flowing through man-made underground structures).

industry and the federal government apply the term "flood," and the district court's

highly idiosyncratic interpretation of the term.[7]  At a minimum, the custom and

usage regarding flood coverage should have been considered in resolving any

claimed ambiguity before resorting to the rule of *contra proferentem*.  LA. CIV.

CODE art. 2056 (*contra proferentem* applies only "in case of doubt that cannot be

otherwise resolved");  LA. CIV. CODE art. 2053 (where contract meaning is

"doubtful", Louisiana allows consideration of extrinsic evidence to determine "the

nature of the contract, equity, *usages*, the conduct of the parties before and after the

formation of the contract and other contracts of a like nature between the same

parties" (emphasis added)); *Atlas Lubricant Corp. v. Fed. Ins. Co. of N.J.,* 293 So.

2d 550, 553-54 (La. App. 4th Cir. 1974) (court properly looked to parol evidence

to clarify ambiguity in insurance policy); *Trinity Indus., Inc. v. Ins. Co. of N.

America*, 916 F.2d 267, 269 (5th Cir. 1990) (looking to custom and usage to

construe ambiguity in insurance contract).

### 3.   The Faulty Workmanship Exclusion Unambiguously Excludes Plaintiffs' Claims.

The district court likewise refused to give effect to Encompass's faulty

workmanship exclusion to bar plaintiffs' claims.  The operative language excludes

---

[7]       Congress likewise made no distinction between "natural" or "man-made" floods in granting immunity to the Army Corps of Engineers from liability for flood damage.  Rather, the term "flood" in 33 U.S.C. § 702 means all types of floods regardless of whether attributable to a natural disaster or government negligence.  *Aetna Ins. Co. v. United States*, 628 F.2d 1201, 1204-05  (9th Cir. 1980), *cert. denied*, 450 U.S. 1025 (1981).

losses caused by "[f]aulty, inadequate or defective…[d]esign, specifications, workmanship, repair, construction … or [m]aintenance of part or all of any property whether on or off your residence premises." (Policy at ALST 178-79.) Plaintiffs in *Chehardy* allege that the levees failed not as a result of flood, but as a result of faulty design and maintenance. (Am. and Restated Compl. ¶ 64 (Doc. 516).) However, the district court refused to enforce this exclusion, on the grounds that "[a]s the Court has found there is coverage for the flood damage as alleged, then the losses would be considered 'ensuing' and as such, these exclusions would be inapplicable." Ex. A at 47-49; *id.* at 76. The district court's rationale that this exclusion does not apply is faulty.

In sum, Encompass's policy contains two separate exclusions -- the water damage exclusion and faulty workmanship exclusion -- both of which exclude coverage for the losses plaintiffs claim here. By distorting the plain meaning of the words, the district court in effect rewrote plaintiffs' insurance policies to achieve a result that was never intended under the plain policy language.[8] Interlocutory

---

[8]    Indeed, the district court's wholesale rewriting of the policy exclusions is so extreme that it raises questions regarding unconstitutional impairment of contract rights. Encompass's contract rights are protected from state invasion under Due Process. *Stidham v. Texas Comm'n on Private Sec.*, 418 F.3d 486, 492 n.9 (5th Cir. 2005) (contracts enforceable under state law are protected from state invasion under Due Process). Due Process commands that the state may not strip Encompass of these interests by stealth, through the backdoor of litigation, any more than it could so overtly by legislation. *See* U.S. CONST. ART. I., § 10; *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) (holding that due process protects financial interests against impairment through litigation); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (retroactive *Footnote Continued*

review is essential at this juncture, for the judiciary and the public as well as the

insurance industry, given the thousands of cases pending in the state and federal

courts raising similar issues.

**B.    The Case Involves Controlling Questions of Law.**

Whether the district court correctly found ambiguity in the interpretation of

the contract is quintessentially a question of law. *See, e.g., Am. Marine*

*Underwriters, Inc. v. Holloway*, 826 F.2d 1454, 1456 (5th Cir. 1987) ("[w]hether

an insurance policy is ambiguous is a question of law for the court"); *Gladney v.*

*Paul Revere Life Ins. Co.*, 895 F.2d 238, 241 (5th Cir. 1990) ("[T]he 'interpretation

of a contract is a question of law, including the question whether the contract is

ambiguous'. . . ." (citation omitted)).

Such a question of law is "controlling" if its resolution on appeal could

materially affect the outcome of the litigation in the district court, even if it is not

certain to do so. *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.,*

*Inc.*, 86 F.3d 656, 659 (7th Cir. 1996).   If an incorrect disposition of the issue

would ultimately require reversal of final judgment on appeal, then the issue is

plainly controlling. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3rd Cir.

---

application of law violating "[e]lementary considerations of fairness dictat[ing] that individuals should have an opportunity to know what the law is and to conform their conduct accordingly" barred).

Encompass's pricing and rate structure at no time contemplated potential liability based on the supposed distinction between "man-made" and "natural" flooding.  There is no way that this policy, read as a whole, can be interpreted in the manner ascribed to by the district court.

14

1974); 16 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3930, at 423 (2d ed. 1996).  Likewise, "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).  And an issue also is controlling "if interlocutory reversal might save time for the district court and time and expense for the litigants." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (citation omitted).

By all three measures, the issue presented for appeal in this case is "controlling."  Encompass moved to dismiss on the basis that plaintiffs' claims are excluded from coverage by the water damage exclusion.  The district court denied Encompass's motion, finding the water damage exclusion to be ambiguous.  If the trial court was wrong, then the plaintiffs' claims are excluded from coverage as a matter of law, and any final judgment entered in plaintiffs' favor would require reversal on that basis.[9]

Finally, resolving the coverage issue now, on interlocutory appeal, could potentially enable the parties to avoid protracted and expensive litigation, including complex discovery, class certification briefing and trial preparation in this matter.  Indeed, a decision by this Court on the central coverage issue presented here would

---

[9]    If the appellate court were to find that there is no flood coverage as a matter of law, plaintiffs' extra-contractual claims should fail as a matter of law as well, for the reasons set forth in Encompass's motion to dismiss.  It is not necessary, however, that resolution of the issue would definitely terminate the litigation. *Katz,* 496 F.2d at 755.

15

dramatically impact not only this case, but also the many other lawsuits brought against Encompass that implicate coverage for flood damage under the policy exclusions put at issue here. *See Atl. City Elec. Co. v. Gen. Elec. Co.,* 207 F. Supp. 613, 619-20 (S.D.N.Y.), *aff'd,* 312 F.2d 236 (2d Cir. 1962) (certifying questions for review where it "affects the scope of discovery procedure, the length and complexity of ultimate trial, and the expenditure of time, money and effort which these cases will engender").

### C.   Interlocutory Appeal Will Materially Advance the Ultimate Termination of This Litigation.

An immediate appeal will materially advance the ultimate termination of the litigation because, if Encompass is right that the flood exclusions apply to the plaintiffs' claims, those claims are subject to dismissal.  Moreover, the coverage question raised by this appeal will impact the outcome in thousands of other Hurricane Katrina cases, including cases now being litigated against Encompass and other insurers, disputes currently in mediation, and innumerable potential cases which other Encompass policyholders currently may be considering whether to file.

In such circumstances, interlocutory review of legal issues is especially appropriate. *See, e.g., Gopher Oil Co. v. Union Oil Co.,* 757 F. Supp. 998, 1004 (D. Minn. 1991) ("[T]he general purpose of § 1292(b) is to provide interlocutory appeal in exceptional cases in order to avoid protracted and expensive litigation.")

16

(citing *Paschall v. Kansas City Star Co.*, 605 F.2d 403, 406 (8th Cir. 1979)), *rev'd in part on other grounds*, 955 F.2d 519 (8th Cir. 1992); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1190, 1243-45 (E.D. Pa. 1980) (although certification under 28 U.S.C. § 1292(b) has not been restricted in practice to exceptionally complex or protracted litigation, it remains especially suitable for use in such cases); *see also* 16 Wright *et al., supra*, § 3929, at 368-9; § 3930, at 425-7.

Correcting the district court's error now will also provide guidance for, and avoid the unnecessary trial of, thousands of similar cases that are currently clogging the courts below and draining the resources of the judiciary and the parties.  Interlocutory review at this juncture is particularly appropriate given the number of cases that potentially are affected by the erroneous ruling below.

## CONCLUSION

For all of the reasons stated above, Encompass requests that this Court grant this Petition, allow the parties to brief the foregoing issues and, upon receiving briefs and arguments, reverse the district court's ruling in its November 27, 2006 Order insofar as that Opinion holds that water damage caused by levee breaches is covered under Encompass's homeowner policy.

Dated: December 11, 2006      Respectfully submitted,

_____

Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
BARRASSO USDIN KUPPERMAN
        FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700

Richard L. Fenton
Kendra K. Hartman
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000

*Attorneys for Petitioner*
*Encompass Indemnity Company*

18

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Petition for Permission to Appeal Under 28 U.S.C. § 1292(b) has been served upon the below listed counsel of record via electronic mail this 11th day of December, 2006.

Counsel for Plaintiffs:
Joseph M. Bruno (jbruno@brunobrunolaw.com)
Joseph J. McKernan (jemckernan@mckernanlawfirm.com)
Calvin C. Fayard, Jr. (calvinfayard@fayardlaw.com)
John N. Ellison (jellison@andersonkill.com)
Drew Ranier (drainer@rgelaw.com)

Counsel for Defendants:
Steven W. Usdin (susdin@barrassousdin.com)
Wayne J. Lee (wlee@stonepigman.com)
H. Minor Pipes, III (mpipes@barrassousdin.com)
Howard Bruce Kaplan (hkaplan@bernard-cassisa.com)
Kelly Cambre Bogart (kbogart@duplass.com)
Alan J. Yacoubian (ayacoubian@jjbylaw.com)
John William Waters, Jr. (jwaters@bfrob.com)
Stephen E. Goldman (sgoldman@rc.com)
Ralph Shelton Hubbard (rhubbard@lawla.com)
Robert I. Siegel (rsiegel@glllaw.com)
Richard Doren (rdoren@gibsondunn.com)
Maura Zivalich Pelleteri (mpelleteri@kfplaw.com)
Paul E.B. Glad (pglad@sonnenschein.com)
Kristopher T. Wilson (kwilson@lawla.com)

19