*Indem. Co. v. Powell Ins. Co.*, No. 95-4188, 1996 WL 578030, at *3 (E.D. La. Oct. 4, 1996) (flood exclusion unambiguous).[5]

More specifically, the courts have found that flood damage is excluded regardless of whether it was caused by human negligence or error. That precise question was addressed in *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 680-81 (Col. 1989), in which the Colorado Supreme Court concluded that "[t]he generally accepted meaning of the term 'flood' does not include a distinction between artificial and natural floods" and that "there is no basis for holding that the term 'flood' is ambiguous as applied to 'the great overflowing of water' *caused by the failure of Lawn Lake Dam.*" (emphasis added). *See also Bartlett v. Cont'l Divide Ins. Co.*, 697 P.2d 412, 413 (Colo. Ct. App. 1984), *aff'd*, 730 P.2d 308 (Colo. 1986) (the term "flood" means "'a body of water (including moving water) . . . overflowing or inundating land not usually covered,' *and no distinction is made between natural and artificial causes*") (quoting 36A C.J.S. Flood) (emphasis added); *TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 732

---

[5]    *See also Buente v. Allstate Ins. Co.,* No. 05-712, 2006 WL 980784, at *1-2 (S.D. Miss. Apr. 12, 2006)("inundation that occurred during Hurricane Katrina was a flood, as that term is ordinarily understood."); *Quesada v. Dir. Fed. Emergency Mgmt. Agency*, 577 F. Supp. 695, 697 (S.D. Fla. 1983) (property damage caused by heavy flooding and rains attributable to tropical storm not covered), *aff'd*, 753 F.2d 1011 (11th Cir. 1985); *Eaker v. State Farm Fire & Cas. Ins. Co.*, 216 F. Supp. 2d 606, 622 (S.D. Miss. 2001) ("water damage" exclusion excluded damages from Hurricane claimed by plaintiff); *Hardware Dealers Mut. Ins. Co. v. Berglund*, 393 S.W.2d 309, 313-14 (Tex. 1965) (excluding coverage for damage caused by rising water accompanying hurricane).

(8th Cir. 1997) ("flood" includes both man-made and natural floods); *E.B. Metal & Rubber Indust., Inc. v. Fed. Ins. Co.*, 444 N.Y.S.2d 321, 322 (N.Y. App. Div. 1981) (flood exclusion applied to failed dike).[6]

>            **2.    In Enacting the National Flood Insurance Program, Congress Likewise Did Not Differentiate Between "Natural" and "Man-Made" Floods.**

Because it was not economic for private homeowner insurance companies to provide flood coverage, Congress created the National Flood Insurance Program ("NFIP") in 1968 to fill the void. *See* 42 U.S.C. § 4001, et seq. Under the NFIP, flood policies are underwritten by, and premiums paid to, the federal government. 44 C.F.R. Pt. 61, App. A. The National Flood Insurance Act, 42 U.S.C. § 4001, et seq., which was intended to fill the void left by private carriers' flood and water exclusions, does not differentiate between so-called "natural" floods and "man-made" floods, nor do the regulations promulgated thereunder or the NFIP Standard Flood Insurance Policy. *See* 44 C.F.R. Pt. 61, App. A(1); 44 C.F.R. § 59.1.

Although the court below was dismissive of arguments regarding the NFIP, the court's ruling necessarily sets up a conflict between the manner in which the

---

[6]    *See also Aetna Ins. Co. v. United States*, 628 F.2d 1201, 1203 (9th Cir. 1980) (collapse of partially completed dam caused "flood"), *cert. denied,* 450 U.S. 1025 (1981); *Indus. Enclosure Corp. v. N. Ins. Co.*, No. 97-6850, 2000 WL 1029192, at *6 (N.D. Ill. Jul. 26, 2000) (excluding water damage caused by overflow of tributary even though overflow may have been caused by collapse of nearby building); *Valley Forge Ins. Co. v. Hicks Thomas Lilienstern, L.L.P.*, 174 S.W.3d 254, 259 (Tex. Ct. App. 2004) (excluding loss resulting from water flowing through man-made underground structures).

industry and the federal government apply the term "flood," and the district court's
highly idiosyncratic interpretation of the term.[7]   At a minimum, the custom and
usage regarding flood coverage should have been considered in resolving any
claimed ambiguity before resorting to the rule of *contra proferentem*.   LA. CIV.
CODE art. 2056 (*contra proferentem* applies only "in case of doubt that cannot be
otherwise resolved");   LA. CIV. CODE art. 2053 (where contract meaning is
"doubtful", Louisiana allows consideration of extrinsic evidence to determine "the
nature of the contract, equity, *usages*, the conduct of the parties before and after the
formation of the contract and other contracts of a like nature between the same
parties" (emphasis added)); *Atlas Lubricant Corp. v. Fed. Ins. Co. of N.J.,* 293 So.
2d 550, 553-54 (La. App. 4th Cir. 1974) (court properly looked to parol evidence
to clarify ambiguity in insurance policy); *Trinity Indus., Inc. v. Ins. Co. of N.
America*, 916 F.2d 267, 269 (5th Cir. 1990) (looking to custom and usage to
construe ambiguity in insurance contract).

### 3.   The Faulty Workmanship Exclusion Unambiguously Excludes Plaintiffs' Claims.

The district court likewise refused to give effect to Encompass's faulty
workmanship exclusion to bar plaintiffs' claims.   The operative language excludes

---

[7]   Congress likewise made no distinction between "natural" or "man-made" floods in
granting immunity to the Army Corps of Engineers from liability for flood damage.   Rather, the
term "flood" in 33 U.S.C. § 702 means all types of floods regardless of whether attributable to a
natural disaster or government negligence.   *Aetna Ins. Co. v. United States*, 628 F.2d 1201, 1204-
05  (9th Cir. 1980), *cert. denied*, 450 U.S. 1025 (1981).

losses caused by "[f]aulty, inadequate or defective…[d]esign, specifications, workmanship, repair, construction … or [m]aintenance of part or all of any property whether on or off your residence premises." (Policy at ALST 178-79.) Plaintiffs in *Chehardy* allege that the levees failed not as a result of flood, but as a result of faulty design and maintenance. (Am. and Restated Compl. ¶ 64 (Doc. 516).) However, the district court refused to enforce this exclusion, on the grounds that "[a]s the Court has found there is coverage for the flood damage as alleged, then the losses would be considered 'ensuing' and as such, these exclusions would be inapplicable." Ex. A at 47-49; *id.* at 76. The district court's rationale that this exclusion does not apply is faulty.

In sum, Encompass's policy contains two separate exclusions -- the water damage exclusion and faulty workmanship exclusion -- both of which exclude coverage for the losses plaintiffs claim here. By distorting the plain meaning of the words, the district court in effect rewrote plaintiffs' insurance policies to achieve a result that was never intended under the plain policy language.[8] Interlocutory

---

[8]    Indeed, the district court's wholesale rewriting of the policy exclusions is so extreme that it raises questions regarding unconstitutional impairment of contract rights. Encompass's contract rights are protected from state invasion under Due Process. *Stidham v. Texas Comm'n on Private Sec.*, 418 F.3d 486, 492 n.9 (5th Cir. 2005) (contracts enforceable under state law are protected from state invasion under Due Process). Due Process commands that the state may not strip Encompass of these interests by stealth, through the backdoor of litigation, any more than it could so overtly by legislation. *See* U.S. CONST. ART. I., § 10; *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) (holding that due process protects financial interests against impairment through litigation); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (retroactive
*Footnote Continued*

review is essential at this juncture, for the judiciary and the public as well as the insurance industry, given the thousands of cases pending in the state and federal courts raising similar issues.

### B.    The Case Involves Controlling Questions of Law.

Whether the district court correctly found ambiguity in the interpretation of the contract is quintessentially a question of law. *See, e.g.*, *Am. Marine Underwriters, Inc. v. Holloway*, 826 F.2d 1454, 1456 (5th Cir. 1987) ("[w]hether an insurance policy is ambiguous is a question of law for the court"); *Gladney v. Paul Revere Life Ins. Co.*, 895 F.2d 238, 241 (5th Cir. 1990) ("[T]he 'interpretation of a contract is a question of law, including the question whether the contract is ambiguous'. . . ." (citation omitted)).

Such a question of law is "controlling" if its resolution on appeal could materially affect the outcome of the litigation in the district court, even if it is not certain to do so. *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996).   If an incorrect disposition of the issue would ultimately require reversal of final judgment on appeal, then the issue is plainly controlling. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3rd Cir.

---

application of law violating "[e]lementary considerations of fairness dictat[ing] that individuals should have an opportunity to know what the law is and to conform their conduct accordingly" barred).
    Encompass's pricing and rate structure at no time contemplated potential liability based on the supposed distinction between "man-made" and "natural" flooding.  There is no way that this policy, read as a whole, can be interpreted in the manner ascribed to by the district court.

1974); 16 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 3930, at 423 (2d ed. 1996).  Likewise, "it is clear that a question of

law is 'controlling' if reversal of the district court's order would terminate the

action." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).  And

an issue also is controlling "if interlocutory reversal might save time for the district

court and time and expense for the litigants." *Johnson v. Burken*, 930 F.2d 1202,

1206 (7th Cir. 1991) (citation omitted).

By all three measures, the issue presented for appeal in this case is

"controlling."  Encompass moved to dismiss on the basis that plaintiffs' claims are

excluded from coverage by the water damage exclusion.  The district court denied

Encompass's motion, finding the water damage exclusion to be ambiguous.  If the

trial court was wrong, then the plaintiffs' claims are excluded from coverage as a

matter of law, and any final judgment entered in plaintiffs' favor would require

reversal on that basis.[9]

Finally, resolving the coverage issue now, on interlocutory appeal, could

potentially enable the parties to avoid protracted and expensive litigation, including

complex discovery, class certification briefing and trial preparation in this matter.

Indeed, a decision by this Court on the central coverage issue presented here would

---

[9]     If the appellate court were to find that there is no flood coverage as a matter of law,
plaintiffs' extra-contractual claims should fail as a matter of law as well, for the reasons set forth
in Encompass's motion to dismiss.  It is not necessary, however, that resolution of the issue
would definitely terminate the litigation.  *Katz*, 496 F.2d at 755.

dramatically impact not only this case, but also the many other lawsuits brought against Encompass that implicate coverage for flood damage under the policy exclusions put at issue here. *See Atl. City Elec. Co. v. Gen. Elec. Co.,* 207 F. Supp. 613, 619-20 (S.D.N.Y.), *aff'd*, 312 F.2d 236 (2d Cir. 1962) (certifying questions for review where it "affects the scope of discovery procedure, the length and complexity of ultimate trial, and the expenditure of time, money and effort which these cases will engender").

### C.   Interlocutory Appeal Will Materially Advance the Ultimate Termination of This Litigation.

An immediate appeal will materially advance the ultimate termination of the litigation because, if Encompass is right that the flood exclusions apply to the plaintiffs' claims, those claims are subject to dismissal.  Moreover, the coverage question raised by this appeal will impact the outcome in thousands of other Hurricane Katrina cases, including cases now being litigated against Encompass and other insurers, disputes currently in mediation, and innumerable potential cases which other Encompass policyholders currently may be considering whether to file.

In such circumstances, interlocutory review of legal issues is especially appropriate. *See, e.g., Gopher Oil Co. v. Union Oil Co.,* 757 F. Supp. 998, 1004 (D. Minn. 1991) ("[T]he general purpose of § 1292(b) is to provide interlocutory appeal in exceptional cases in order to avoid protracted and expensive litigation.")

16

(citing *Paschall v. Kansas City Star Co.*, 605 F.2d 403, 406 (8th Cir. 1979)), *rev'd in part on other grounds*, 955 F.2d 519 (8th Cir. 1992); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1190, 1243-45 (E.D. Pa. 1980) (although certification under 28 U.S.C. § 1292(b) has not been restricted in practice to exceptionally complex or protracted litigation, it remains especially suitable for use in such cases); *see also* 16 Wright *et al., supra*, § 3929, at 368-9; § 3930, at 425-7.

Correcting the district court's error now will also provide guidance for, and avoid the unnecessary trial of, thousands of similar cases that are currently clogging the courts below and draining the resources of the judiciary and the parties. Interlocutory review at this juncture is particularly appropriate given the number of cases that potentially are affected by the erroneous ruling below.

17

## CONCLUSION

For all of the reasons stated above, Encompass requests that this Court grant this Petition, allow the parties to brief the foregoing issues and, upon receiving briefs and arguments, reverse the district court's ruling in its November 27, 2006 Order insofar as that Opinion holds that water damage caused by levee breaches is covered under Encompass's homeowner policy.

Dated: December 11, 2006          Respectfully submitted,

_Judy Barrasso_

Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
BARRASSO USDIN KUPPERMAN
          FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700


Richard L. Fenton
Kendra K. Hartman
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000

*Attorneys for Petitioner*
*Encompass Indemnity Company*

18

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Petition

for Permission to Appeal Under 28 U.S.C. § 1292(b) has been served upon

the below listed counsel of record via electronic mail this 11th day of

December, 2006.

Counsel for Plaintiffs:
Joseph M. Bruno (jbruno@brunobrunolaw.com)
Joseph J. McKernan (jemckernan@mckernanlawfirm.com)
Calvin C. Fayard, Jr. (calvinfayard@fayardlaw.com)
John N. Ellison (jellison@andersonkill.com)
Drew Ranier (drainer@rgelaw.com)

Counsel for Defendants:
Steven W. Usdin (susdin@barrassousdin.com)
Wayne J. Lee (wlee@stonepigman.com)
H. Minor Pipes, III (mpipes@barrassousdin.com)
Howard Bruce Kaplan (hkaplan@bernard-cassisa.com)
Kelly Cambre Bogart (kbogart@duplass.com)
Alan J. Yacoubian (ayacoubian@jjbylaw.com)
John William Waters, Jr. (jwaters@bfrob.com)
Stephen E. Goldman (sgoldman@rc.com)
Ralph Shelton Hubbard (rhubbard@lawla.com)
Robert I. Siegel (rsiegel@glllaw.com)
Richard Doren (rdoren@gibsondunn.com)
Maura Zivalich Pelleteri (mpelleteri@kfplaw.com)
Paul E.B. Glad (pglad@sonnenschein.com)
Kristopher T. Wilson (kwilson@lawla.com)

19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES                    CIVIL ACTION
CONSOLIDATED LITIGATION
                                                NO. 05-4182

PERTAINS TO INSURANCE                           SECTION "K"(2)
*Vanderbrook*, C.A. No. 05-6323
*Xavier University*, C.A. No. 06–516
*Chehardy*, C.A. No. 06-1672, 06-1673, and 06-1674

and

KELLY A. HUMPHREYS                              CIVIL ACTION

VERSUS                                          NO. 06-0169

ENCOMPASS INSURANCE COMPANY, ET AL.             SECTION K(2)
****PRINT TO WEB****

## ORDER

On September 19, 2006, *Berthelot, et al. v. Boh Bros. Construction, et al.*, C.A. No. 05-4182

was filed in the Eastern District of Louisiana. This case began the stream of complaints that have

been filed as a result of damages arising out of all levee breaches which occurred in the aftermath

of Hurricane Katrina.

*Berthelot* was transferred to the undersigned on February 23, 2006. (Doc. 47). It was

subsequently determined by the *en banc* court of the Eastern District of Louisiana that in order to

avoid conflicting decisions among the various sections of the Court, the proper approach would be

to consolidate all such filings for purposes of pretrial discovery and motion practice. As such, what

is now captioned "*In re: Katrina Canal Breaches Consolidated Litigation,*" C.A. No. 05-4182, has

become the umbrella for all cases which concern damages caused by flooding as a result of breaches

or overtopping in the areas of the 17th Street Canal, the London Avenue Canal, the Industrial Canal, and the Mississippi Gulf River Outlet ("MRGO").

The following Orders and Reasons[1] are being entered in four individual cases which are part of the umbrella and all of which have as their centerpiece the issue of insurance coverage. Theses cases are:

*Vanderbrook, et al. v. State Farm Fire & Cas. Co., et al.* C.A. No. 05-6323;

*Xavier University of Louisiana v. Travelers Property Ca. Co. of America*, C.A. No. 06-516;

*Chehardy, et al. v. State Farm, et al.,* C.A. No. 06-1672, 06-1673, and 06-1674; and

*Humphreys v. Encompass Ins. Co.*, C. A. No. 06-169.[2]

Oral argument was conducted with respect to *Vanderbrook* on August 25, 2006, and with respect to *Xavier, Chehardy and Humphreys* on October 27, 2006. Based on the pleadings, memoranda, exhibits, arguments and the relevant law, the Court is prepared to rule on all the motions pending in all four cases.

**IT IS ORDERED** that this document shall be entered onto the docket of the *In re Katrina Canal Breaches Consolidated Litigation*, C.A. No. 05-4182 referencing all three of the cases noted above and *Humphreys* separately. The Court will begin with the *Vanderbrook* matter.

***************************

---

[1] The document numbers referred to herein are those as entered in the Consolidated Matter unless otherwise noted; once a case is consolidated in the umbrella, any document filed is entered sequentially, regardless of the case to which it pertains.

[2] *Humphreys* was initially consolidated but at the request of the litigants it was terminated from the umbrella; however, in light of the inter-related nature of this case, the Court will include this case in this consolidated opinion.

**THIS ORDER PERTAINS SPECIFICALLY TO:**

*Vanderbrook, et al. v. State Farm Fire & Cas. Co., et al.* C.A. No. 05-6323;

## ORDER AND REASONS

Before the Court are the following motions filed in this matter:

| | |
|---|---|
| Doc. No. 568 | Motion for Judgment on the Pleadings filed by Hanover Ins. Co. ("Hanover") insurer of plaintiff James Capella and Madeline Grenier;[3] |
| Doc. No. 569 | Motion for Judgment on the Pleadings filed by Standard Fire Ins. Co. ("Standard") insurer of plaintiffs Peter Anthony Ascani, III, Gregory R. Jackson, and Monica Reyes; |
| Doc. No. 570 | Motion for Judgment on the Pleadings filed by State Farm Fire & Cas. Co. ("State Farm") insurer of Mary Jane Silva and Robert G. Harvey; |
| Doc. No. 572 | Motion to Dismiss Party filed by Hartford Ins. Co. of the Midwest ("Hartford") insurer of Jack Capella as the Executor of the Succession of Lillian Capella; |
| Doc. No. 598 | Motion for Judgment on the Pleadings filed by Unitrim Preferred Ins. Co. ("Unitrim") insurer of Richard Vanderbrook. |

These motions were brought in response to the class action suit brought by the "Vanderbrook" plaintiffs.

The instant petition was initially filed in Civil District Court for the Parish of Orleans on October 14, 2005. Plaintiffs filed suit seeking coverage for damages caused by the collapse of the 17th St. Canal floodwall and the ensuing water damage as well as claims against the Board of

---

[3]At oral argument on these motions, Hanover orally moved to include in its motion the claims of Madeline Grenier who had been misidentified as Sophia Granier as the insured. This motion was orally granted. Thus, the docket sheet as to this motion does not include her as the subject of the motion; however, the docket sheet should be so amended to reflect that the plaintiff Sophia Granier is actually Madeline Grenier and **IT IS SO ORDERED**. At the time of the hearing, the relevant policy of insurance was introduced and filed into the record.

Additionally, certain of the Defendants are improperly named. The Standard Fire Insurance Company ("Standard Fire") is improperly named as Travelers Insurance Company and St. Paul Travelers Insurance Company. Hartford Insurance Company of the Midwest ("Hartford") is improperly named as Hartford Insurance Company. Unitrin Preferred Insurance Company ("Unitrin") is improperly named as Kemper Insurance Company.

3

Commissioners for the Orleans Levee District ("OLD") for its alleged negligence. Defendants

removed the case to this Court on December 2, 2005. On June 1, 2006, the Court severed the claims

brought against OLD from those filed against the insurers and finding no basis for jurisdiction over

OLD, remanded those claims to Civil District Court. The Court retained diversity jurisdiction over

the remaining insurers.

Five different policies of insurance are involved in this case–all Homeowners/All Risk

policies. Oral argument was conducted on August 25, 2006, and supplemental briefing ordered

thereafter. Having reviewed the complaint, memoranda, exhibits, briefing, and the relevant law,

the Court is now prepared to deliver its opinion.

It cannot be gainsaid that in approaching these motions, which are the first in a daunting line

of litigation concerning insurance coverage for the losses caused by the canal breaches in New

Orleans, the potential impact of such a decision on individuals as well as the insurance industry

might be considered overwhelming. However, the Court believes that it is its duty to approach its

analysis in a straightforward, judicious manner–that is analyzing the contractual disputes between

an individual policy holder and the relevant insurer, sitting as an *Erie* court, using the civilian

approach of a Louisiana court, applying the Louisiana Civil Code and seeking guidance from the

jurisprudence of the state.

## I.      Civilian Approach as an *Erie* Court

This Court will apply Louisiana law in an attempt to rule as a Louisiana court would if

presented with the same issues. *Musser Davis Land Co. v. Union Pacific Resources,* 201 F.3d 561,

565 (5th Cir.2000), *citing Erie R. Co. v. Tompkins,* 304 U.S. 64, 79-80, 58 S.Ct. 817, 82 L.Ed. 1188

(1938); *Mozeke v. Int'l Paper Co.,* 856 F.2d 722, 724 (5th Cir.1988). As stated in *Musser:*

> To determine a state law question, we first look to decisions of the Louisiana
> Supreme Court. *See Transcontinental Gas v. Transportation Ins. Co.,* 953 F.2d 985,
> 988 (5th Cir.1992). If the Louisiana Supreme Court has not spoken on the issue, it
> is our duty to determine as best we can what that court would decide. *See id.; Hulin
> v. Fibreboard Corp.,* 178 F.3d 316, 318-19 (5th Cir.1999).

> Under Louisiana's Civil Law tradition, courts look first and foremost to statutory law.
> The Louisiana Civil Code instructs that "[sources of law are legislation and
> custom,]" and that "[l]egislation is a solemn expression of legislative will." "[T]he
> primary basis of law for a civilian is legislation, and not (as in the common law) a
> great body of tradition in the form of prior decisions of the courts." The concept of
> *stare decisis* is foreign to the Civil Law, including Louisiana. Therefore, in cases
> such as this we are guided by decisions rendered by the Louisiana appellate courts,
> particularly when numerous decisions are in accord on a given issue-the so-called
> *jurisprudence constant-*but we are not strictly bound by them.

*Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.,* 953 F.2d 985, 988 (5th Cir.1992)

(footnotes omitted). Thus, the Louisiana Civil Code provides the primary source and framework by

which this Court must review the these contracts.  With this in mind, the Court will first examine

the allegations made by the plaintiffs.


## II.    The Petition and Issue Presented

Plaintiffs each own a home in New Orleans which is insured by one of the defendants and

which suffered substantial water damage at the time of Hurricane Katrina. (Petition, ¶ 7.) They

allege that "[s]ometime between 10:00 and 11:00 a.m. on August 29, 2005, before the full force of

[Hurricane Katrina] reached the City of New Orleans, a small section of the concrete outfall canal

wall known as the 17th Street Canal, suddenly broke, causing water to enter the streets of the City

of New Orleans and homes of Petitioners," which damaged Plaintiffs' homes. (Id., ¶ 3.) Plaintiffs contend that "said water damage inflicted on the Petitioners' homes and property was not the result of flood, surface water, waves, title [sic] water, tsunami, seiche, overflow of a body of water, seepage under or over the outfall canal wall or spray from any of the above but was water intrusion, caused simply from a broken levee wall." (Id., ¶ 4 (emphasis added).)  Plaintiffs claim that defendants improperly failed to pay for the water damage to their homes because it is not an excluded loss. (Id., ¶ 10.) Plaintiffs also contend that the water damage exclusions in the policies are unconscionable and void. (Id., ¶ 11.)

Plaintiffs further allege, separately, that the Levee Board "breached their duty to Petitioners by failing to correct the break [in the canal wall] or warn others including Petitioners of the impending water intrusion . . . ." (Id., ¶ 6.) As noted, these allegations have been severed and remanded to state court.

Plaintiffs contend that because Louisiana employs the "efficient proximate cause doctrine" with respect to coverage and because the third-party negligence of Orleans Levee District is the efficient, proximate cause of the subsequent flooding of plaintiffs' homes, their Homeowners Policies should provide coverage. The defendants maintain that under the clear, unambiguous terms of the policies at issue, they are entitled to judgment as a matter of law.

## III.    Standard for Judgment on the Pleadings

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge.  The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "'a complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id. citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Fifth Circuit explained:

> Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliott v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989). Further, "the plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities, Inc.* 94 F.3d 189, 194 (5th Cir. 1996). This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim. *Hitt,* 561 F.2d at 608. In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1137 (5th Cir. 1992). Finally, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory. *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir. 1994).

*Id.* at 161-62. Bearing this standard in mind, the court will examine the civilian rules of construction to aid it in its determination of the viability of defendants' motions.

## IV. Legal Concepts for Contract Interpretation

### A.    Insurance Policy is a Contract and Rules of Construction

"An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship." La. Civ. Code art. 1983; *Edwards v. Daugherty*, 883 So.2d 932, 940 (La. 2004); *Peterson v. Schimek*, 729 So.2d 1024, 1028 (La. 1999). As such, the general rules of contract interpretation as set forth in the Louisiana Civil Code guide the Court in interpreting the subject insurance policies. *Peterson*, 729 So.2d at 1028. "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of

the parties to the contract. *See* La. Civ. Code art. 2045; *Carbon* [*v. Allstate Ins. Co.,* 97-3085, p. 4 (La. 10/20/98, 719 So. 2d 437, 439]; *Louisiana Ins.* [*Guar. Ass'n v. Interstate Fire & Cas. Co.* 03-0911, p. 5 (La. 1/14/94)], 630 So.2d 759, 763." *Cadwallader v. Allstate Ins. Co.,* 848 So.2d 577 (La. 2003).

In *Cadwallader,* the Supreme Court of the State of Louisiana set forth succinctly the most important guiding principles:

> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *See* La. Civ Code art. 2047; *Peterson v. Schimek,* 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1028-29; *Carbon,* 719 So.2d at 440-441; *Reynolds,* 634 So.2d at 1183. An insurance contract, however, should not be interpreted in an *unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. Carrier v. Reliance Ins. Co.,* 99-2573, p. 11 (La.4/11/00), 759 So.2d 37, 43; *Peterson,* 729 So.2d at 1029. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. *Succession of Fannaly v. Lafayette Ins. Co.,* 01-1355, p. 4 (La.1/15/02), 805 So.2d 1134, 1138; *Peterson,* 729 So.2d at 1029.
>
> . . .
>
> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Fannaly,* 805 So.2d at 1137; *Louisiana Ins.,* 630 So.2d at 764. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Peterson,* 729 So.2d at 1029; *Louisiana Ins.,* 630 So.2d at 764. The determination of whether a contract is clear or ambiguous is a question of law. *Louisiana Ins.,* 630 So.2d at 764.

*Cadwallader,* 848 So.2d at 580 (coverage provided by UM policy for resident relative in household did not include foster children). In addition, an insurance contract "is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given

8

meaning. One portion of the policy should not be construed separately at the expense of disregarding other provisions." La. Civ. Code art. 2050. *Peterson*, 729 So.2d at 1029.

### B.     All-Risks Liability Insurance: Coverage, Exclusions and Ambiguities

A Homeowners Policy is considered a type of "all-risks" insurance. " All-risks insurance is a special type of insurance extending to risks not usually contemplated, and generally allows recovery for all fortuitous losses, unless the policy contains a specific exclusion expressly excluding the loss from coverage." Jane Massey Draper, "Coverage Under All-Risk Insurance", 30 A.L.R.5th 170. The United States Court of Appeals for the Fifth Circuit acknowledged this concept stating, "[a] policy of insurance insuring against 'all risks' creates a special type of coverage that extends to risks not usually covered under other insurance; recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Alton Ochsner Medical Foundation v. Allendale Mut. Ins.*, 219 F.3d 501, 504 (5th Cir. 2000), *citing U.S. Indus., Inc. v. Aetna Cas. & Sur. Co.,* 690 F.2d 459, 461 (5th Cir.1982) (construing Louisiana law and citing *Dow Chem. Co. v. Royal Indem. Co.,* 635 F.2d 379, 387 (5th Cir.1981) (construing Texas law)).

Thus, in the context of the instant motions, under Louisiana law, unless there is a specific exclusion for the type of water damage that an insured has incurred, coverage is presumed under these policies. The focus of a court's inquiry then is on the relevant exclusions to coverage. "When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. . . . On the other hand, the insurer bears the

9

burden of proving the applicability of an exclusionary clause within a policy." *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000).

With respect to the proper approach concerning the interpretation of an exclusion, they are generally strictly construed. *Bezue v. Hartford Accident and Indem. Co.*, 224 So.2d 76, 77 (La. App. 1st Cir. 1969). *Cadwallader* further amplifies this concept:

> Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. La. Civ. Code art. 2056; *Carrier*, 759 So.2d at 43; *Louisiana Ins.*, 630 So.2d at 764. Under this rule of strict construction, **equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer.** *Carrier*, 759 So.2d at 43.

*Cadwallader*, 848 So.2d at 580 (emphasis added).   This rule of interpretation is based on the fact that these provisions are prepared by the insurer, and the insured had no voice in the preparation. *Louisiana Ins.*, 630 So.2d at 764.   This type of contract is commonly referred to as a contract of adhesion.   Article 2056 states, "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.   A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."   La. Civ. Code art. 2056; *see Louisiana Ins. Guar. Assoc.*, 630 So.2d at 764 *citing* 15 *Civil Law Treatise, Insurance Law and Practice* § 4 (1986) and W. Freedman, 2 *Richards on the Law of Insurance* § 11:2[f] (6th Ed. 1990) ("*Richards*").   "That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable." *Cadwallader*, 848 So. 2d at 580 *citing Carrier*, 759 So.2d at 43-44. (emphasis in original) and *Louisiana Ins. Guar. Assoc.*, 630 So.2d at 770.

The Supreme Court of Louisiana gave further instruction with respect to the interpretation

of an ambiguity in *Louisiana Ins. Guar. Assoc.* stating:

> "Ambiguity will also be resolved by ascertaining how a reasonable insurance policy
> purchaser would construe the clause at the time the insurance contract was entered."
> *Breland v. Schilling,* 550 So.2d 609, 610-11 (La.1989). The court should construe
> the policy "to fulfill the reasonable expectations of the parties in the light of the
> customs and usages of the industry." *Trinity Industries,* 916 F.2d at 269 (5th
> Cir.1990) (citing *Benton,* 379 So.2d at 231 and LSA-C.C. Arts. 2045, 2050, 2053 and
> 2054). In insurance parlance, this is labelled the reasonable expectations doctrine.
> *Richards, supra* at § 11:2[g].

*Louisiana Ins. Guar. Assoc.,* 630 So.2d at 764.   The Louisiana Supreme Court then noted in a

footnote:

> "The reasonable expectations doctrine can be capsulized as follows: "courts will
> protect the [insured's] reasonable expectations . . . regarding the coverage afforded
> by insurance contracts even though a careful examination of the policy provisions
> indicates that such expectations are contrary to the expressed intention of the
> insurer." R. Keeton and A. Widiss, *Insurance Law* § 6.13 (1988).

*Id.* at n. 19.   Thus, if after applying the other general rules of construction, an ambiguity remains,

the ambiguous contractual provision is to be construed against the insurer who furnished the policy's

text and in favor of the insured finding coverage. La. Civ. Code art. 2056. *Peterson,* 729 So. 2d

at1029. "It is the reasonable interpretation of an insured that governs the legal effect of language

in an insurance contract, and not whether the language chosen by an insurer may constitute a legal

term of art in another context." *Lee v. Unum Life Ins. Co. of America,* 900 So.2d 1021, 1029 (La.

App. 4th Cir. 2005).


## C. Exclusions and Canons of Construction

The Louisiana Supreme Court in interpreting an exclusion to coverage in the context of a

company's public liability insurance stated:

11

The exclusion clause must necessarily be examined and interpreted in the light of its own design and intent, as well as in view of the objects and purposes of the policy. Once coverage has been extended, as it is quite clearly the purpose of the policy to do and as has been done here, it should be withdrawn only when exclusion is established with certainty. And because comprehensive exclusion is violative of the purpose and intent of policy coverage, exclusion must necessarily be specific and not general. It is specific, as distinguished from comprehensive, when it particularly identifies the insured or insureds intended to be excluded. The exclusion clause, as its name implies, sets forth the traits, characteristics and circumstances that mark an insured for exclusion. And the insured or insureds to be excluded must bear the marks and traits, or conform with the circumstances, described and particularized in the exclusion clause as the basis for exclusion.'

*Pullen v. Employers' Liability Assur. Corp.,*  89 So.2d 373, 377 (La. 1956).

Indeed, in *Anderson v. Indiana Lumbermens Mut. Ins. Co.*, 127 So.2d 304 (La. App. 2nd Cir. 1961), a Louisiana appellate court dealt with a claim made on homeowner policy where "collapse" was a covered peril and there was an exclusion which provided that the insurer would not be liable "for loss caused directly or indirectly by earthquake, **or other earth movements** except landslides." *Id.* at 304 (emphasis added). In the home in question, a crack had appeared in the wall of the house and since that time, the crack had become larger, extending into the ceiling of the living room and cracks had appeared in the walls, at every window and door in the house. The door frames were out of square and the foundation was broken, cracked, fallen and uneven. It was alleged in that case that the cause of damage to the home was (1) the expansion and contraction of the soil which had caused (2) the cracking, breaking and falling of the concrete slab (3) combined with the falling cracking, breaking and unequal settlement of the building (4) thus impairing the basic structural integrity of the building. The insurer maintained that the damage to the house did not constitute a "collapse" and that even if it did, it was excluded as it was caused by "other earth movements."

The appellate court noted that there was no precedent for an interpretation of "collapse" in Louisiana and noted that there were four cases rendered outside of Louisiana where the evidence

12

did not indicate the structure had completely fallen down or caved in–two finding coverage and two

denying coverage based on this exclusion.

The court, after discussing the guidance provided by the Civil Code in determining the

construction of the word "collapse", noted:

> LSA-Civil Code, art. 1955 providing that 'all clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act' appears to be a statement of the 'ejusdem generis' rule of construction, concerning which Black's Law Dictionary states:
>
> > 'In the construction of laws, wills, and other instruments, the 'ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. Black, Interp. of Laws, 141; Goldsmith v. U.S., C.C.A.N.Y., 42 F.2d 133, 137; Aleksich v. Industrial Accident Fund, 116 Mont. 69 (127), 151 P.2d 1016, 1021. The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention.
> > 'The maxim 'ejusdem generis', is only an illustration of the broader maxim, 'noscitur a sociis'. State v. Western Union Telegraph Co., 196 Ala. 570, 72 So. 99, 100.'
>
> And, in defining the phrase, 'noscitur a sociis', as used in the aforesaid definition the following explanation and definition are given:
>
> > 'It is known from its associates, 1 Vent. 225. The meaning of a word is or may be known from the accompanying words. 3 Term R. 87; Broom, Max. 588. Morecock v. Hood, 202 N.C. 321, 162 S.E. 730, 731; Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co. of Maryland, 223 Ala. 385, 136 So. 800, 801.
> > 'The doctrine means that general and specific words are associated with and take color from each other, restricting general words to sense analogous to less general. Dunham v. State, 140 Fla. 754, 192 So. 324, 325, 326.'

*Anderson*, 127 So.2d 306-07; *but see, Nida v. State Farm Fire & Cas. Co.,* 454 So.2d 328 (La. App.

3rd Cir. 1984) (insurance definition of "collapse" in policy at issue revised to deny coverage for

13

losses against settling). The *Anderson* court eventually found that the insurance at issue therein provided coverage finding that "collapse" would not be given an "abstract, narrow construction." Citing to *Jenkins v. United States Fire Ins. Co.*, 185 Kan. 665, 347 P.2d 417 (Kan. 1959), the court noted that construing on the basis of intention, it would be understood that if the settling, falling, cracking bulging or breaking of the insured building so materially impaired the basic structure, that it would be considered a "collapse." Thus, the Court in interpreting the **risk insured** employed the **expansive** definition.

The court then found that the **exclusion** was to be **narrowly construed** relying on *Pullen*. It found that "other earth movements" is entirely "too general to have application to any degree of certainty" to the causation of the "collapse" of the subject building as the cause of damage would embrace "the same general kind, class or nature of peril as its companion words 'earthquake' and 'landslide.'" *Anderson*, 127 So.2d at 308-09. As such, the concept of the "specific controls the general" was used to find the exclusion limited a more violent earth movement–not just the natural expansion and contraction of the soil that had allegedly caused the damage for which coverage was sought. *See also, Smith v. Burton*, 928 So.2d 74, 79 (La. App. 1st Cir. 2005); *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil* Corp., 289 F.3d 373, 377 (5th Cir. 2002); *Sommers v. State Farm Fire and Cas. Co.*, 764 So.2d 87, 91 (La. App. 4th Cir. 2000) (where general terms precede specific terms, principle is the same: general terms should be construed to encompass things similar or analogous to those in the specific terms). With these precepts in mind the Court will now turn to the specific water damage exclusions at issued before the Court.

V.      **Insuring Language and Exclusions of the Policies at Issue**

14