06-56

No. _____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

IN RE KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION
(E.D. La. C.A. No. 05-4182)

PERTAINS TO INSURANCE
*Chehardy*, C.A. Nos. 06-1672, 06-1673, 06-1674

U.S. COURT OF APPEALS
FILED
DEC 1 1 2004
CHARLES R. FULBRUGE III
CLERK

U.S. COURT OF A
RECEI
DEC 1 1 2006
NEW ORLEANS, LA

GLADYS CHEHARDY, et al,

Plaintiffs-Appellees,

v.

STATE FARM FIRE & CASUALTY CO., et al.,

Defendants-Appellants.

On Appeal From The United States District Court
For The Eastern District Of Louisiana

## PETITION FOR PERMISSION TO APPEAL
## PURSUANT TO 28 U.S.C. § 1292(b) ON BEHALF OF
## LEXINGTON INSURANCE COMPANY, et al.*

RICHARD J. DOREN
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
(213) 229-7038

DANIEL W. NELSON
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8500

---

* Other petitioners are identified behind the front cover.

ROBERT I. SIEGEL
GIEGER, LABORDE & LAPEROUSE,
LLC
One Shell Square
701 Poydras St., Suite 4800
New Orleans, Louisiana 70139-4800
(504) 654-1307

*Attorneys for Petitioner*
*Lexington Insurance Company*

RALPH S. HUBBARD III, T.A.
JOSEPH P. GUICHET
SETH A. SCHMEECKLE
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
(504) 568-1990

STEPHEN E. GOLDMAN
WYSTAN M. ACKERMAN
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
(860) 275-8200

*Attorneys for Petitioner*
*The Standard Fire Insurance*
*Company*

HARRY M. REASONER
MARIE R. YEATES
VINSON & ELKINS LLP
2300 First City Tower
1001 Fannin Street
Houston, Texas 77002
(713) 758-2358

JUDY Y. BARRASSO
H. MINOR PIPES, III
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
(504) 589-9700

*Attorneys for Petitioner*
*Liberty Mutual Fire Insurance*
*Company*

ALAN J. YACOUBIAN
NEAL J. FAVRET
KERTH J. GRAVENER
JOHNSON, JOHNSON, BARRIOS &
YACOUBIAN
701 Poydras Street, Suite 4700
New Orleans, Louisiana 70139-7708
(504) 528-3001

*Attorneys for Petitioner*
*Auto Club Family Insurance*
*Company*

MAURA Z. PELLETERI
AMY M. SELTZER
KREBS, FARLEY & PELLETERI, L.L.C.
400 Poydras Street, Suite 2500
New Orleans, Louisiana  70130
(504) 299-3570

*Attorneys for Petitioner*
*Aegis Security Insurance Company*

LAWRENCE J. DUPLASS
C. MICHAEL PFISTER
KELLY CAMBRE BOGART
JAIME M. CAMBRE
DUPLASS, ZWAIN, BOURGEOIS,
MORTON, PFISTER & WEINSTOCK
3838 North Causeway Boulevard
Three Lakeway Center, Suite 2900
Metairie, Louisiana  70002
(504) 832-3700

*Attorneys for Petitioner*
*The American Insurance Company*

WILLIAM J. WEGMANN, JR.
ORR ADAMS, JR.
110 Veterans Memorial Blvd.
Suite 440
Metairie, Louisiana  70005
(504) 833-3800

HOWARD B. KAPLAN
BERNARD, CASSISA, ELLIOTT &
DAVIS
1615 Metairie Rd.
P.O. Box 55490
Metairie, Louisiana  70055-5490
(504) 834-2612

*Attorneys for Petitioner*
*Lafayette Insurance Company*

RALPH S. HUBBARD III, T.A.
JOSEPH P. GUICHET
SETH A. SCHMEECKLE
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
(504) 568-1990

*Attorneys for Petitioner*
*The Hanover Insurance Company*

The following is a complete listing of all of the defendants who are joining in filing this consolidated petition for permission to appeal:  Lexington Insurance Company, The Standard Fire Insurance Company (improperly named as Travelers Property Casualty Company of America), Liberty Mutual Fire Insurance Company, Auto Club Family Insurance Company, Aegis Security Insurance Company, The American Insurance Company, Lafayette Insurance Company, and The Hanover Insurance Company.

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

A. Plaintiffs:

| | | |
|---|---|---|
| 1. Mark Barham | 17. Bridget Gawlick |
| 2. Brad Boyd | 18. Lori Gervais |
| 3. Stephanie Boyd | 19. Randy Gervais |
| 4. Patricia Brown | 20. Wendell Glation |
| 5. Angelina Burst | 21. Lacey Glorioso |
| 6. Shawn Burst | 22. Monty Glorioso |
| 7. Gladys Chehardy | 23. Edna Jones |
| 8. Katrina Daniels | 24. Lionel Jones |
| 9. Heather Falou | 25. Karen Lewis |
| 10. Spencer Falou | 26. Judy Maier |
| 11. Marie Fatheree | 27. Kenneth Maier |
| 12. Daniel Fontanez | 28. Andre Mauberret |
| 13. Jacquelyn Fontanez | 29. Mairlyn Mauberret |
| 14. Glendy Forster | 30. Chuck Morris |
| 15. Larry Forster | 31. Day Morris |
| 16. Brandon Gawlick | |

32. New Orleans Flooring Supply, Inc.

33. Sabrina Perkins

34. Michael Peterson

35. Eldridge Pollard

36. Debbie Rittner

37. Perry Rittner

38. Dave Strawn

39. Debbie Strawn

40. Shane Sylvester

41. Austra Zapata

B. Counsel for Plaintiffs

1. Anderson Kill & Olick, PC

2. Bruno & Bruno

3. Fayard & Honeycutt

4. Levin, Papantonio, Thomas, Mitchell, Echsner Proctor, PA

5. McKernan Law Firm

6. Vernon Palmer Thomas, Esq.

C. Defendants, and Defendant-Petitioners

1. Auto Club Family Insurance Company, *Defendant-Petitioner*, is a wholly-owned subsidiary of Automobile Club Inter-Insurance Exchange, and there are no other corporations that own 10% or more of its stock.

2. Aegis Security Insurance Company, *Defendant-Petitioner*, has no parent corporation, is not a publicly traded company, and is not owned by a publicly traded company.

3. Allstate Indemnity Company, *Defendant*

4. Allstate Insurance Company, *Defendant*

5. The American Insurance Company, *Defendant-Petitioner*, is a wholly owned subsidiary of Fireman's Fund Insurance Company. Fireman's Fund Insurance Company, a California corporation, is a wholly owned subsidiary of Allianz Global Risks US Insurance Company.

Allianz Global Risks US Insurance Company is a wholly owned subsidiary of Allianz of America, Inc., which is a wholly owned subsidiary of Allianz Aktiengesellschaft (Allianz AG). Allianz AG is a publicly held company that indirectly holds 10% or more of Fireman's Fund Insurance Company and its subsidiaries.

6.  Chubb Custom Insurance Company, *Defendant*

7.  Encompass Insurance Company of America, *Defendant*

8.  Great Northern Insurance Company, *Defendant*

9.  The Hanover Insurance Company, *Defendant-Petitioner*, is a wholly owned subsidiary of Opus Investment Management, Inc., a wholly owned subsidiary of The Hanover Insurance Group, Inc., a publicly traded company of which Hotchkiss & Wiley owns more than 10% of the stock.

10.  Lafayette Insurance Company, *Defendant-Petitioner*, is a subsidiary of the United Fire & Casualty Company, a foreign insurer domiciled in Iowa, which is publicly traded on NASDAQ.

11.  Lexington Insurance Company, *Defendant-Petitioner*, is owned 70% by National Union Fire Insurance Company of Pittsburgh, Pa.; 20% by The Insurance Company Of The State Of Pennsylvania; and 10% by Birmingham Fire Insurance Company of Pennsylvania. National Union Fire Insurance Company of Pittsburgh, Pa., The Insurance Company Of The State Of Pennsylvania, and Birmingham Fire Insurance Company of Pennsylvania are each a wholly owned subsidiary of American International Group, Inc., a publicly traded company. No parent corporation or publicly held corporation owns 10% or more of the stock of American International Group, Inc.

12.  Liberty Mutual Fire Insurance Company, *Defendant-Petitioner*, is a wholly owned subsidiary of Liberty Mutual Group, Inc., which is not a publicly traded company. No parent corporation or publicly held corporation owns 10% or more of the stock of Liberty Mutual Group, Inc.

13.  Louisiana Citizens Property Insurance Corporation, *Defendant*

14. The Standard Fire Insurance Company, *Defendant-Petitioner*, is a wholly-owned subsidiary of Travelers Insurance Group Holdings Inc., a wholly-owned subsidiary of Travelers Property Casualty Corp., a wholly-owned subsidiary of The St. Paul Travelers Companies, Inc., a publicly traded company.

15. State Farm Fire & Casualty Company, *Defendant*

D. Counsel for Defendants

1. Barrasso Usdin Kupperman Freeman & Sarver, LLC,
*Counsel for Defendants Allstate Indemnity Company, Allstate Insurance Company, Encompass Insurance Company of America, and Great Northern Insurance Company, and for Defendant-Petitioner Liberty Mutual Fire Insurance Company*

2. Bienvenu, Foster, Ryan & O'Bannon,
*Counsel for Defendant Louisiana Citizens Property Insurance Corporation*

3. Bernard, Cassisa, Elliott & Davis,
*Counsel for Defendant-Petitioner Lafayette Insurance Company*

4. Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock,
*Counsel for Defendant-Petitioner The American Insurance Company*

5. Gibson, Dunn & Crutcher LLP,
*Counsel for Defendant-Petitioner Lexington Insurance Company*

6. Gieger, Laborde & Laperouse, LLC,
*Counsel for Defendant-Petitioner Lexington Insurance Company*

7. Johnson, Johnson, Barrios & Yacoubian,
*Counsel for Defendant-Petitioner Auto Club Family Insurance Company*

8. Krebs, Farley & Pelleteri, LLC,
*Counsel for Defendant-Petitioner Aegis Security Insurance Company*

9. Law Firm of William J. Wegmann,
*Counsel for Defendant-Petitioner Lafayette Insurance Company*

10. Lugenbuhl, Wheaton, Peck, Rankin & Hubbard,
    *Counsel for Defendant-Petitioner The Standard Fire Insurance*
    *Company*

11. Robinson & Cole LLP,
    *Counsel for Defendant-Petitioner The Standard Fire Insurance*
    *Company*

12. Sonnenschein, Nath & Rosenthal,
    *Counsel for Defendant-Petitioner The Hanover Insurance Company*

13. Stone Pigman Walther Wittmann, LLC,
    *Counsel for Defendant State Farm Fire & Casualty Company*

Daniel W. Nelson
Gibson, Dunn & Crutcher LLP
*Counsel for Defendant-Petitioner Lexington Insurance Company*

Ralph Shelton Hubbard, III
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard,
*Counsel for Defendant-Petitioners The Standard Fire Insurance*
*Company and The Hanover Insurance Company*

Judy Y. Barrasso
Barrasso Usdin Kupperman Freeman & Sarver, LLC,
*Counsel for Defendant-Petitioner Liberty Mutual Fire Insurance*
*Company*

Alan J. Yacoubian
Johnson, Johnson, Barrios & Yacoubian,
*Counsel for Defendant-Petitioner Auto Club Family Insurance Company*

Maura Zivalich Pelleteri
Krebs, Farley & Pelleteri, LLC,
*Counsel for Defendant-Petitioner Aegis Security Insurance Company*

Kelly Cambre Bogart
Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock,
*Counsel for Defendant-Petitioner The American Insurance Company*

Howard B. Kaplan
Bernard, Cassisa, Elliott & Davis
*Counsel for Defendant-Petitioner Lafayette Insurance Company*

vi

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

TABLE OF AUTHORITIES ............................................................................... viii

QUESTION PRESENTED ...................................................................................... 2

STATEMENT ......................................................................................................... 2

REASONS FOR GRANTING THE PETITION ....................................................... 5

    I.     The District Court's Order Satisfies The Statutory Elements Of
           Section 1292(b) ...................................................................................... 5

    II.    The District Court Ignored The Plain Meaning Of The Term
           "Flood" And Improperly Invented Ambiguity Where None Exists ... 9

    III.   Resolving The Interpretation Of "Flood" Would  Speed The
           Resolution Of Other Litigation Related To Hurricane Katrina......... 17

CONCLUSION AND RELIEF SOUGHT ............................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Abadie v. Aegis Sec. Ins. Co.*, No. 06-5164, D.E. 1 (E.D. La.)................................ 18

*All Prop. & Cas. Ins. Carriers*, 937 So. 2d.............................................................. 11

*Austin v. Allstate Fire & Cas. Co.*, No. 06-5383, D.E. 1 (E.D. La.)........................ 18

*Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006)................................................... 6

*Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377 (5th Cir. 2004) .................... 6

*Buente v. Allstate Prop. & Cas. Ins. Co.*, No. 1:05 CV 712, 2006 WL
    980784 (S.D. Miss. Apr. 12, 2006) ..................................................................... 12

*Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577 (La. 2003)................... 4, 9, 12, 15

*Clade v. Stone Ins., Inc.*, No. 06-2304, 2006 WL 2366373 (E.D. La. Aug. 14,
    2006) ...................................................................................................................... 11

*Dobson v. Allstate Ins. Co.*, No. 06-1585, 2006 WL 2078423 (E.D. La. July
    21, 2006) ............................................................................................................ 7, 11

*Edwards v. Allstate Prop. & Cas. Ins. Co.*, No. Civ. A. 04-2434, 2005 WL
    221558 (E.D. La. Jan. 27, 2005).............................................................................. 7

*Fla. E. Coast Ry. Co. v. United States*, 519 F.2d 1184 (5th Cir. 1975)................. 10

*Giardina v. Allstate Ins. Co.*, No. 06-6415, 2006 WL 3406743 (E.D. La.
    Nov. 22, 2006) ...................................................................................................... 11

*In re Benny*, 812 F.2d 1133 (9th Cir. 1987)............................................................ 19

*Johnson v. Augustine*, No. 2006 CE 1690, 2006 WL 2473474 (La. Ct. App.
    Aug. 29, 2006) ...................................................................................................... 11

*Kane v. Royal Insurance Co. of America*, 768 P.2d 678 (Colo. 1989)............... 8, 10

*Kiefer v. Allstate Ins. Co.*, 06-5370 (E.D. La.) ...................................................... 18

*Kish v. Ins. Co. of N. Am.*, 883 P.2d 308 (Wash. 1994)......................................... 17

*La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759 (La. 1994)...... 15

*Marisol A. by Forbes v. Giuliani*, 104 F.3d 524 (2d Cir. 1996) ............................. 19

*O'Meara v. Am. States Ins. Co.*, 268 N.E.2d 109 (Ind. Ct. App. 1971) ................. 14

*Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256 (Mo. Ct. App. 1997) ........................................................................................................................ 8

*Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, No. 06-3179, 2006 WL 3396171 (E.D. La. Nov. 21, 2006)................................................................ 11

*Russell Motor Car Co. v. United States*, 261 U.S. 514 (1923)......................... 15, 16

*Smith Lupo Williams Partners v. Carter*, No. 06-2808, 2006 WL 2548255 (E.D. La. Aug. 31, 2006) ...................................................................................... 11

*State v. All Prop. & Cas. Ins. Carriers Authorized & Licensed To Do Bus. In State*, 937 So. 2d 313 (La. 2006) ........................................................................... 2

*Sweeney v. City of Shreveport*, 584 So. 2d 1248, 1251 (La. Ct. App. 1991).......... 14

*TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731 (8th Cir. 1997) ..................................................................................................................... 8

*Travelers Indem. Co. v. Powell Ins. Co.*, No. 95-4188, 1996 WL 578030 (E.D. La. Oct. 4, 1996) ......................................................................................... 7

*Union Oil Co. of California v. John Brown E&C*, 121 F.3d 305 (7th Cir. 1997) ................................................................................................................... 19

*Wallace v. La. Citizens Prop. Ins. Corp.*, 444 F.3d 697 (5th Cir. 2006) ................ 11

*Whitt v. State Farm Fire & Cas. Co.*, 734 N.E.2d 911 (Ill. App. Ct. 2000)........... 10

*Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996) ............................. 6

**State Statutes**

LA. CIV. CODE ANN. art. 2046.................................................................. 9, 10, 14, 16

LA. CIV. CODE ANN. art. 2047.................................................................... 4, 9, 12, 16

**Other Authorities**

Black's Law Dictionary (8th ed. 2004)..................................................................... 14

Lexington Insurance Company, The Standard Fire Insurance Company (improperly named as Travelers Property Casualty Company of America), Liberty Mutual Fire Insurance Company, Auto Club Family Insurance Company, Aegis Security Insurance Company, The American Insurance Company, Lafayette Insurance Company, and The Hanover Insurance Company (collectively the "ISO Defendants") respectfully petition this Court pursuant to 28 U.S.C. § 1292(b) for permission to appeal an order of the United States District Court for the Eastern District of Louisiana.[1]  Although the district court recognized that plaintiffs seek to recover for water damage to their property from flooding in and around New Orleans that accompanied Hurricane Katrina, it nonetheless concluded the Water Damage Exclusion in the ISO Defendants' policies was inapplicable because it found that one of the terms in the exclusion—"flood"—is ambiguous.  The district court reached that result by erroneously ignoring the plain, ordinary, generally prevailing meaning of the word "flood"—an inundation of water over normally dry

---

[1]  For the Court's convenience, a group of the defendants identified by the District Court as using the "ISO policy language" and denominated the "ISO Defendants" by the District Court (*see* Ex. A at 65 (opinion below)) are submitting this consolidated petition because the policy provisions that formed the basis for District Court's Order are identical, although the policies are not identical in their entirety.  As the District Court explained, "'ISO' is an acronym for 'Insurance Services Office, Inc.' which provides products and services help to the insurance industry . . . [and] . . . provides standardized insurance policy language such as the policies noted herein." *See* Ex. A at 15 n.4.

1

land—and instead inventing an ambiguity by distinguishing between floods caused by natural forces and floods caused by man-made events. The district court *sua sponte* certified its order for review under 28 U.S.C. § 1292(b), recognizing that "the potential impact . . . on individuals as well as the insurance industry might be considered overwhelming." Ex. A at 4.

## QUESTION PRESENTED

Whether the district court erred in concluding that the water damage exclusions in insurance policies issued by the ISO Defendants do not apply to water damage claims arising out of the inundation of water in the New Orleans area that accompanied Hurricane Katrina?

## STATEMENT

This lawsuit arises out of insurance claims for property damage caused by the massive water inundation of the City of New Orleans and surrounding parishes that accompanied Hurricane Katrina. Several courts have already recognized that what occurred in New Orleans was a flood as that term is commonly used. As the Louisiana Supreme Court put it: "In the City of New Orleans, where the levees failed, flood waters swamped large portions of the City." *State v. All Prop. & Cas. Ins. Carriers Authorized & Licensed To Do Bus. In State*, 937 So. 2d 313, 316 (La. 2006). Because of these flood waters, "[a] staggering number of houses and businesses in Louisiana were either destroyed or suffered major damage." *Id.*

Plaintiffs bring claims seeking to recover for property damage caused by the water inundation of New Orleans. "Plaintiffs claim that they suffered water damage resulting from the 'catastrophic events' of Hurricane Katrina[,] which left 'approximately 80% of Orleans Parish . . . under water." Ex. A at 61 (citation omitted). Plaintiffs further allege that "the levees around the City and adjoining parishes failed in at least eight (8) distinct locations" and that "there was six to eight feet of water in the City's Lower Ninth Ward." Am. Compl. ¶¶ 41–43. In short, as the district court stated in its opinion, "[c]ertainly the damage sued upon was caused by flooding." Ex. A. at 44.

The homeowner insurance policies under which plaintiffs bring their claims, however, specifically exclude losses caused by "Water Damage," which is defined to include, among other things, damage from "flood." The exclusion in the policies issued by the ISO Defendants states:

(1)   We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

c.  Water Damage, meaning:

Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

Ex. A at 65 (quoting the ISO policy language) (emphasis removed) (hereafter, the "Water Damage Exclusion"). The ISO Defendants moved to dismiss plaintiffs'

3

complaint on the ground, among others, that plaintiffs' claims for water damage losses are clearly excluded by the policies' Water Damage Exclusion.

The district court correctly stated that under Louisiana's civil-law system, statutes are the primary basis of law, Ex. A. at 5, and Louisiana's statutes require that words must be given their "plain, ordinary and generally prevailing meaning," *id.* at 8 (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003) (which cites LA. CIV. CODE ANN. art. 2047)). The district court also recognized the Louisiana Supreme Court's instruction that "[t]he rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Id.* at 8 (quoting *Cadwallader*, 848 So. 2d at 580).

Despite its correct statement of these basic and controlling principles of Louisiana law, the district court denied the ISO Defendants' motion to dismiss, reasoning that the Water Damage Exclusion does not apply to a claim for water damage coverage caused by third-party negligence in maintaining New Orleans' system of levees. The district court focused its analysis narrowly on the term "flood" (it did not analyze other components of the water damage exclusion, such as an "overflow of a body of water") and concluded that the meaning of the term "flood" is ambiguous. It theorized "that there are two interpretations of the term

4

'flood'—[1] one which encompasses both a 'flood' which occurs solely because of natural causes and a 'flood' which occurs because of the negligent or intentional act of man and [2] one which limits itself only to a flood which occurs solely because of natural causes." Ex. A at 24 (stating the question before it). The district court then surveyed dictionaries and out-of-state case law and applied canons of construction that are applicable only after ambiguity has been found to conclude that the term "flood" "is susceptible of two reasonable interpretations" and therefore that the ISO Defendants' Water Damage Exclusion is ambiguous. *Id.* at 39. In light of that conclusion, the district court denied the ISO Defendants' motion to dismiss.[2]

## REASONS FOR GRANTING THE PETITION

### I.   The District Court's Order Satisfies The Statutory Elements Of Section 1292(b)

The order certified by the district court amply meets the statutory requirements of 28 U.S.C. § 1292(b). "A district court may certify an order for interlocutory appeal under § 1292(b) where the order 'involves a controlling

---

[2] The district court also denied defendant Allstate Insurance Company's motion to dismiss, finding its water damage exclusion ambiguous for failing to define the various events that could cause a flood. Ex. A at 68–69. The district court granted defendant State Farm Fire and Casualty Company's motion to dismiss, concluding that its water damage exclusion was not ambiguous because it contained slightly different "lead-in" language stating that various exclusions, including the water damage exclusion, apply "regardless of . . . the cause of the excluded event." Ex. A at 50–51.

question of law as to which there is substantial ground for difference of opinion and [ ] an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Belt v. EmCare, Inc.*, 444 F.3d 403, 407 n.6 (5th Cir. 2006). As the district court certified, its order meets all of these elements. *See* Ex. A at 84–85 (certification to appeal).

The question framed by the district court—whether the word "flood" is ambiguous—is "a controlling question of law" the resolution of which will "materially advance the ultimate termination of the litigation."[3] If the ISO Defendants' Water Damage Exclusion, particularly the word "flood," is held to be unambiguous, then Plaintiffs' claims—which the district court recognized are all based on flooding, Ex. A at 44 ("[c]ertainly the damage sued upon was caused by flooding")—all must fail because water damage from floods is excluded from coverage under their policies. The controlling nature of the question (and the fact that its resolution will materially advance the termination of this litigation) are

---

[3] Because "§ 1292(b) provides for review of an *order* rather than review of a particular *question*," this Court upon review "'may address any issue fairly included within the certified order.'" *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 n.2 (5th Cir. 2004) (quoting *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)). In light of this rule, the ISO Defendants have focused this brief on the key error made by the district court— concluding that the term "flood" is ambiguous—while intending, should permission to appeal be granted, to also address other arguments presented in the district court, particularly the fact that the Water Damage Exclusion also includes other terms, such as "overflow of a body of water," that exclude plaintiffs' alleged losses and the fact that the district court's ruling will interfere with administration of the National Flood Insurance Program.

conclusively demonstrated by the district court's dismissal of plaintiffs' coverage claims against defendant State Farm, whose water damage exclusion the district court found was not ambiguous.[4]  In addition, as discussed in more detail in part III, *infra*, deciding this issue now will aid in the resolution of many similar cases pending in Louisiana district courts with the same or highly similar allegations.

There is also—as the opinion below itself states, Ex. A at 85—"substantial ground for [ ] difference of opinion" about whether the term "flood" incorporates into its definition limitations based on the cause of the flood.  As discussed in more detail below, the district court erred in applying the relevant Louisiana Civil Code provisions to interpret the Water Damage Exclusion at issue in this case.[5]  The interpretation adopted below contradicts the plain, ordinary meaning of the term "flood" and conflicts with the rulings of those courts that have considered the

---

[4]  The district court denied all defendants' motions to dismiss Plaintiffs' extra-contractual claims without prejudice pending resolution of the insurance coverage issues. Ex. A at 64. This Court's guidance on whether the Water Damage Exclusion is applicable will not only resolve that key issue, but will also lead to the overall termination of the litigation because the extra-contractual claims cannot stand in the absence of a valid coverage claim. *See, e.g., Edwards v. Allstate Prop. & Cas. Ins. Co.*, No. Civ. A. 04-2434, 2005 WL 221558, at *3 (E.D. La. Jan. 27, 2005) (With "no underlying breach of contract on [an] insurance policy, [a plaintiff] has no claim for penalties under La. R.S. 12:[1]220 and 22:658.").

[5]  The Eastern District of Louisiana has previously found that similar water damage exclusions are not ambiguous. *See Dobson v. Allstate Ins. Co.*, No. 06-0252, 2006 WL 2078423, at *11 (E.D. La. July 21, 2006) (concluding that "flooding caused by hurricanes" was excluded from coverage by "clear policy language"); *Travelers Indem. Co. v. Powell Ins. Co.*, No. 95-4188, 1996 WL 578030, at *3 (E.D. La. Oct. 4, 1996) (concluding that flood exclusion was unambiguous and refusing to "strain to find an ambiguity in the policy where none exists").

meaning of "flood" in a similar context.  Other courts that have considered this exact issue—whether a dam or levee failure amounts to a "flood"—have found no ambiguity in the meaning of "flood."   For example, in *Kane v. Royal Insurance Co. of America*, the Colorado Supreme Court concluded that "[t]he generally accepted meaning of the term 'flood' does not include a distinction between artificial and natural floods."  768 P.2d 678, 680–81 (Colo. 1989) (Upholding water damage exclusion because "there is no basis for holding that the term 'flood' is ambiguous as applied to 'the great overflowing of water' caused by the failure of Lawn Lake Dam."); *see also TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 733 (8th Cir. 1997) (accepting that the term "flood" includes both artificial and natural floods and holding that where vandals removed sandbags and dirt from a levee, resulting in a release of water, recovery was barred by the water damage exclusion); *Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256, 261–62 (Mo. Ct. App. 1997) (holding that because the "policy unambiguously excluded coverage for loss caused directly or indirectly by flooding," flooding caused by a failed levee was an excluded peril).[6]

---

[6] The district court notes that *TNT* and *Pakmark* involved the interpretation of water damage exclusions that contained anti-concurrent-cause language. Ex. A at 30. While that is true, those courts necessarily reached the issue of applying an anti-concurrent-cause provision only after concluding that there was an excluded peril—*i.e.,* floods resulting from "man-made" events were within the meaning of the water damage exclusion.

## II.    The District Court Ignored The Plain Meaning Of The Term "Flood" And Improperly Invented Ambiguity Where None Exists

Louisiana law dictates that insurance contracts must be enforced as written. The Louisiana Civil Code mandates that "[t]he words of a contract *must* be given their generally prevailing meaning." LA. CIV. CODE ANN. art. 2047 (emphasis added). "When the words of a contract are clear and explicit and lead to no absurd consequences, *no further interpretation may be made* in search of the parties' intent." *Id.* art. 2046 (emphasis added). For courts applying Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning." *Cadwallader*, 848 So. 2d at 580. "The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists" or permit a court to interpret an insurance contract "in an unreasonable or strained manner under the guise of contractual interpretation." *Id.*

Under these rules, the question at issue is straightforward: Does the word "flood" have a plain, ordinary, generally prevailing meaning? If it does, then courts applying Louisiana law are bound by the Louisiana Civil Code to enforce the contract as written. *See* LA. CIV. CODE ANN. art. 2047; *id.* art. 2046. The answer to this question is also straightforward: the word "flood" is a common, non-technical word that has a plain, ordinary, generally prevailing meaning.

9

The word "flood" refers simply to the presence of a large volume of water in a normally dry place; the word does not describe how the water got there. Several courts, including this Court, have observed that the word "flood" means "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be." *Fla. E. Coast Ry. Co. v. United States*, 519 F.2d 1184, 1192 (5th Cir. 1975) (quotation marks omitted); *see also, e.g., Whitt v. State Farm Fire & Cas. Co.*, 734 N.E.2d 911, 914 (Ill. App. Ct. 2000) (finding a "flood" to be "'[a]n inundation of water over land not usually covered by it'"); *Kane*, 768 P.2d at 680–81 (concluding that "[t]he inundation of insureds' normally dry land falls squarely within the[] generally accepted definitions of the term 'flood'").

The district court's opinion frequently characterizes the ISO Defendants' ordinary usage of the word "flood" to describe what occurred in New Orleans as "the broadest possible definition" of the term, *see, e.g.*, Ex. A at 18, 37, but that simply is not correct. Indeed, one has to make a conscious, strained effort to describe the hundreds of millions of gallons of water that submerged large portions of New Orleans as anything but a "flood" or "flooding." In fact, the district court itself observed during oral argument that "***everybody*** is referr[ing] to this as a flood." Oral Argument Tr. 45, Oct. 27, 2006 (attached as Exhibit B and emphasis added); *see also id.* ("The homes were flooded, no question."). In the same vein, numerous recent cases addressing Hurricane Katrina claims have described what

10

occurred in New Orleans simply as a "flood."  The Supreme Court of Louisiana,

for example, used the term "flood waters." *All Prop. & Cas. Ins. Carriers*, 937 So.

2d at 316.  *See also Johnson v. Augustine*, No. 2006 CE 1690, 2006 WL 2473474,

at \*4 n.7 (La. Ct. App. Aug. 29, 2006) ("Hurricane Katrina struck on August 29,

2005, causing severe flooding and destruction throughout the southeastern part of

the state.").  Similarly, this Court recently described "damage due to Hurricane

Katrina" simply as "flood damage." *Wallace v. La. Citizens Prop. Ins. Corp.*, 444

F.3d 697, 699 (5th Cir. 2006).  Several federal district courts have likewise used

the ordinary meaning of the word "flood" to describe water damage insurance

claims following Hurricane Katrina.  *See, e.g., Giardina v. Allstate Ins. Co.*, No.

06-6415, 2006 WL 3406743, at \*1 (E.D. La. Nov. 22, 2006) (Berrigan, J.) ("the

damage was caused by flood waters"); *Preston v. Tenet Healthsystem Mem'l Med.*

*Ctr., Inc.*, No. 06-3179, 2006 WL 3396171, at \*1 (E.D. La. Nov. 21, 2006) (Fallon,

J.) (discussing "floodwaters rising more than eight feet in height" in New Orleans);

*Smith Lupo Williams Partners v. Carter*, No. 06-2808, 2006 WL 2548255, at \*1

(E.D. La. Aug. 31, 2006) (Africk, J.) (noting that property was "damaged by the

floodwaters that inundated New Orleans following Hurricane Katrina"); *Clade v.*

*Stone Ins., Inc.*, No. 06-2304, 2006 WL 2366373, at \*1 (E.D. La. Aug. 14, 2006)

(Feldman, J.) ("Plaintiff's home flooded during Hurricane Katrina."); *Dobson*,

2006 WL 2078423, at \*11 (Vance, J.) ("flooding caused by hurricanes"); *see also*

11