*Buente v. Allstate Prop. & Cas. Ins. Co.*, No. 1:05 CV 712, 2006 WL 980784, at *1

(S.D. Miss. Apr. 12, 2006) ("The inundation that occurred during Hurricane

Katrina was a flood, as that term is ordinarily understood."). The ISO Defendants

respectfully submit that these cases accurately reflect the generally prevailing

meaning of the word "flood" in this context.

Instead of determining whether the word "flood" has a plain, ordinary,

generally prevailing meaning, the district court struggled to create an ambiguity by

grafting the concept of causation onto the meaning of the term "flood." There is

no basis in either Louisiana law or the ISO Defendants' policy language to support

such a strained interpretation, and the district court erred by inventing an ambiguity

where none existed. *See Cadwallader*, 848 So. 2d at 580. The way the district

court framed the question presented highlights its error:

> whether it is reasonable to find in the absence of further definition or
> provision in the ISO policy that there are two interpretations of the
> term 'flood'—[1] one which encompasses both a 'flood' which occurs
> solely because of natural causes and a 'flood' which occurs because of
> the negligent or intentional act of man and [2] one which limits itself
> only to a flood which occurs solely because of natural causes.

Ex. A at 24. In short, the district court started by assuming ambiguity and then

considered whether the presence of ambiguity could be disproved, rather than by

simply determining—as required by the Louisiana Civil Code—if the word has a

"generally prevailing meaning." LA. CIV. CODE ANN. art. 2047. In support, the

district court cited a few selected dictionary definitions of "flood" that include the

term "overflow," incorrectly substituted the concept of "overtopping" (which connotes escaping only vertical boundaries) for the concept of "overflowing" (which connotes escaping any boundary), and then leapt to the conclusion that "based on these definitions of 'flood', it is clear to this Court that implicit in the 'overtopping' definitions, *a natural event caused by rain or tide is contemplated*." Ex. A at 26 (emphasis added).

As an initial matter, the district court's conclusion is a *non sequitur*: even the dictionary definitions that the district court selected to support its interpretation lack any reference to causation. *See* Ex. A at 25–26. Nothing in the cited definitions—let alone in the generally prevailing use of the term "flood"—suggests that water flowing onto land that is normally dry is not a "flood" if the inundation results from the failure of a dam or levee instead of from a "natural" event. Moreover, limiting the meaning of the term "flood" in the Water Damage Exclusion to "overtopping" caused by "rain or tide" violates Article 2049 of the Civil Code ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective") because "flood" would then mean nothing more than "surface water,"

"tidal water," or "overflow of a body of water." *See* Ex. A at 41.[7]

The district court's artificial injection of a causation element into the meaning of the term "flood" is both inconsistent with the plain meaning of the word flood and with the lead-in language to the anti-concurrent-cause clause in the ISO Defendants' policies, which makes clear that the causal chain leading to the excluded event is irrelevant to the determination of coverage. *See Sweeney v. City of Shreveport*, 584 So. 2d 1248, 1251 (La. Ct. App. 1991), *writ denied*, 589 So. 2d 1057 (La. 1991) (relying on identical anti-concurrent-cause clause to reject argument that cause of excluded event renders policy ambiguous).

The district court also erred in employing the canons of construction of *ejusdem generis* and *noscitur a sociis*.[8]  *See* Ex. A at 13–14, 27–28, 34–37, 41.

---

[7] The district court elsewhere in its opinion states that these terms all refer only to natural events. Ex. A at 41.  That unsupported assertion conflicts, however, with the generally prevailing meaning of these terms and with other cases recognizing that they can occur as a result of non-natural events.  The failure of a wall that lets Lake Ponchartrain escape its bounds is surely an "overflow of a body of water" in the ordinary sense of the words, just as is an overflow of Lake Ponchartrain over a wall that could have been built higher.  Similarly, the term "waves" used in a water damage exclusion has been found to apply to a wave caused by a passing ship, which is obviously a man-made wave.  *See O'Meara v. Am. States Ins. Co.*, 268 N.E.2d 109, 111 (Ind. Ct. App. 1971) ("[W]e must agree that there are also artificial forces which may cause waves.").

[8] *Ejusdem generis* is the "canon of construction that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed."  Black's Law Dictionary 556 (8th ed. 2004).  This canon is wholly inapplicable here because there is no general term at issue that follows specific terms.  *Noscitur a sociis* is the "canon of construction holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it."  *Id.* at 1087.

Neither canon applies here because, as the Louisiana Civil Code makes clear, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, *no further interpretation may be made* in search of the parties' intent." LA. CIV. CODE ANN. art 2046 (emphasis added). The United States Supreme Court explained long ago that canons of construction act to *resolve* ambiguity, not to *introduce* it: "They may not be used to create but only to remove doubt." *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923) ("They have no place, as this court has many times held, except in the domain of ambiguity."). The Supreme Court specifically explained that the canon *noscitur a sociis* may be applied only if the individual word found in the company of others is ambiguous: "then, but only then, its aid may be sought to remove the obscurity or doubt by reference to the associated words." *Id.* at 520. In exactly the same way, rules about construing exclusions against the drafter apply only *after* an ambiguity is identified; they may not be applied to make a clear term ambiguous. *See La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 764 (La. 1994) ("If *after applying the other general rules of construction an ambiguity remains*, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured.") (emphasis added); *Cadwallader*, 848 So. 2d at 580 (The rule that "provisions seeking to narrow an insurer's obligation are strictly construed against the insurer" applies only to

"equivocal" or "[a]mbiguous" policy provisions.).  Because the term "flood" itself has a plain, ordinary, and unambiguous meaning, that meaning must be applied. *See Russell Motor Car Co.*, 261 U.S. at 520–21 ("The meaning of the several words, standing apart, being perfectly plain, what should be done is to apply them distributively, . . . giving to each its natural value and appropriate scope . . . .").[9]

Finally, contrary to the conclusory statement in the opinion below, applying the contract as written does not lead to absurd results. *See* Ex. A at 41 (Stating, without further explanation, that "[t]o find otherwise, leads to absurd results."). Quite the opposite:  it is the district court's strained interpretation that produces absurd results.  Under the district court's opinion, insurance coverage for insureds in New Orleans will depend on whether the insured property was in an area that suffered from "natural" flooding (*e.g.,* an "overtopped" levee) or in an area that was flooded due to a levee breach.  The notion that such a result was bargained for or anticipated by policyholders and insurers defies all notions of common sense. In addition, the district court's interpretation could lead to claims seeking double

---

[9]  The out-of-state cases the district court relied on as showing that the term "flood" is ambiguous, *see* Ex. A at 27–29, are inapposite for several reasons.  As an initial matter, the two cases that actually interpret the term "flood" each addressed instances where pipes burst and affected a single building, not a deluge of water that covered large portions of a major city.  More importantly, those cases applied canons of construction *before* concluding that the term "flood" was ambiguous on its own.  That approach squarely conflicts with the approach mandated by the Louisiana Civil Code.  *See* LA. CIV. CODE ANN. arts. 2046, 2047.

recovery by those who purchased flood coverage under National Flood Insurance

Program ("NFIP").  That would be absurd because the existence of separate NFIP

flood coverage, together with the express exclusion of water damage from flood in

homeowners' policies, demonstrates that no reasonable insured could have viewed

the ISO policy as providing flood coverage.  *See, e.g.*, *Kish v. Ins. Co. of N. Am.*,

883 P.2d 308, 312–13 (Wash. 1994) ("They knew that flood would be excluded by

any insurance policy they purchased, as exemplified by the existence of the

National Flood Insurance Program (of which the Plaintiffs' county was a part).").

## III.   Resolving The Interpretation Of "Flood" Would  Speed The Resolution Of Other Litigation Related To Hurricane Katrina

The ISO homeowners' insurance policy form used by many insurers,

including the ISO Defendants in this case, contains the Water Damage Exclusion.

Accordingly, resolution of whether the exclusion applies to damage from flooding

that a plaintiff claims was caused by the negligent design, maintenance, and/or

operation of New Orleans' levee system during and after Hurricane Katrina will

have a significant impact on a large number of currently pending cases, as well as

on potential future cases.  The district court recognized the wide impact its

decision will have: "It cannot be gainsaid that in approaching these motions,

which are the first in a daunting line of litigation concerning insurance coverage

for the losses caused by the canal breaches in New Orleans, the potential impact of

17

such a decision on individuals as well as the insurance industry might be considered overwhelming." Ex. A at 4. Indeed, there are more than 100 currently pending cases that have been consolidated as the "Katrina Canal Breaches Consolidated Litigation" before Judge Duval in the Eastern District of Louisiana, and a number of these cases involve precisely the same issue as presented here. *Compare* Am. Compl. ¶ 64(5) ("The damage caused by water entering the City of New Orleans . . . due to the breaches in the levees . . . neither falls within the regular definition of 'flood,' nor within any of the subject insurance policies' exclusions of 'flood'."), *with, e.g., Abadie v. Aegis Sec. Ins. Co.*, No. 06-5164, D.E. 1, ¶ 3(e) (E.D. La.) (complaint for putative class action presenting substantially identical allegation); *Austin v. Allstate Fire & Cas. Co.*, No. 06-5383, D.E. 1, ¶ 3(d) (E.D. La.) (same); *Kiefer v. Allstate Ins. Co.*, 06-5370 (E.D. La.) (action by over 40 plaintiffs with substantially identical allegation). These cases involve potentially tens of thousands of individual coverage claims, *see, e.g., Abadie*, No. 06-5164, D.E. 1, ¶ 9(b) (alleging a class of "hundreds of thousands of persons"), and virtually every major property insurer in Louisiana. In addition to the class actions, there are also many individual cases that turn on interpretation of the Water Damage Exclusion, and several of these individual Hurricane Katrina coverage actions are slated to go to trial soon.

18

Clear guidance from this Court would promote judicial economy both by potentially streamlining the complex class actions and by ensuring that pending individual cases are tried under the correct legal standard. *See, e.g., Union Oil Co. of California v. John Brown E&C*, 121 F.3d 305, 311 (7th Cir. 1997) (recognizing that "[i]nterlocutory review is permitted to assure orderly and efficient administration of complex cases") (quotation marks omitted); *Marisol A. by Forbes v. Giuliani*, 104 F.3d 524, 528 (2d Cir. 1996) (recognizing that serving "judicial efficiency" "advances the purposes of section 1292(b)") (quotation marks omitted); *see also In re Benny*, 812 F.2d 1133, 1137 (9th Cir. 1987) (same). In addition to wasting judicial resources prior to a decision from this Court, trials of the individual coverage cases would waste the resources of the litigants, who might be forced to conduct a second trial if, after the question of the Water Damage Exclusion's enforceability ultimately reaches this Court in an appeal as of right, this Court concludes that the term "flood" does have a generally prevailing meaning that must be applied under Louisiana law.

Finally, resolving whether the Water Damage Exclusion is clear or ambiguous will also have important practical benefits for the every day lives of countless individuals in New Orleans. Reconstruction in New Orleans is unlikely to be significantly completed until it is clear who will pay for flood damage pay—a question that is inexorably linked to the pending coverage litigation. For these

19

reasons, this Court should take this appeal and resolve whether the Water Damage Exclusion is applicable to claims for flood damage.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, the ISO Defendants respectfully request that this Court grant this Petition, allow the parties to brief the foregoing issues and, upon receiving briefs and arguments, reverse the District Court's ruling in its November 27, 2006 Order holding that the ISO Defendants' Water Damage Exclusion is ambiguous, and hold that the Water Damage Exclusion forecloses plaintiffs' claims for flood damage.

Respectfully submitted this 8th day of December, 2006.

RICHARD J. DOREN
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
(213) 229-7038

DANIEL W. NELSON
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
(202) 955-8500

ROBERT I. SIEGEL
GIEGER, LABORDE & LAPEROUSE, LLC
One Shell Square
701 Poydras St., Suite 4800
New Orleans, Louisiana 70139-4800
(504) 654-1307

*Attorneys for Petitioner*
*Lexington Insurance Company*

RALPH S. HUBBARD III, T.A.
JOSEPH P. GUICHET
SETH A. SCHMEECKLE
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
(504) 568-1990

*Ralph S. Hubbard, III w/ permission by JWN*

STEPHEN E. GOLDMAN
WYSTAN M. ACKERMAN
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut  06103-3597
(860) 275-8200

*Attorneys for Petitioner*
*The Standard Fire Insurance*
*Company*

*Judy Y. Barrasso w/ permission by JWN*

JUDY Y. BARRASSO
H. MINOR PIPES, III
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
(504) 589-9700

*Attorneys for Petitioner*
*Liberty Mutual Fire Insurance*
*Company*

HARRY M. REASONER
MARIE R. YEATES
VINSON & ELKINS LLP
2300 First City Tower
1001 Fannin Street
Houston, Texas  77002
(713) 758-2358

*Alan J. Yacoubian w/ permission by JWN*

ALAN J. YACOUBIAN
NEAL J. FAVRET
KERTH J. GRAVENER
JOHNSON, JOHNSON, BARRIOS &
YACOUBIAN
701 Poydras Street, Suite 4700
New Orleans, Louisiana 70139-7708
(504) 528-3001

*Attorneys for Petitioner*
*Auto Club Family Insurance*
*Company*

*Maura Z. Pelleteri w/ permission by dwn*

MAURA Z. PELLETERI
AMY M. SELTZER
KREBS, FARLEY & PELLETERI, L.L.C.
400 Poydras Street, Suite 2500
New Orleans, Louisiana  70130
(504) 299-3570

*Attorneys for Petitioner*
*Aegis Security Insurance Company*

*Kelly C. Bogart w/ permission by dwn*

LAWRENCE J. DUPLASS
C. MICHAEL PFISTER
KELLY CAMBRE BOGART
JAIME M. CAMBRE
DUPLASS, ZWAIN, BOURGEOIS,
MORTON, PFISTER & WEINSTOCK
3838 North Causeway Boulevard
Three Lakeway Center, Suite 2900
Metairie, Louisiana  70002
(504) 832-3700

*Attorneys for Petitionert*
*The American Insurance Company*

*William J. Wegmann Jr. w/ permission by dwn*

WILLIAM J. WEGMANN, JR.
ORR ADAMS, JR.
110 Veterans Memorial Blvd.
Suite 440
Metairie, Louisiana 70005
(504) 833-3800

*Howard B. Kaplan w/ permission by dwn*

HOWARD B. KAPLAN
BERNARD, CASSISA, ELLIOTT &
DAVIS
1615 Metairie Rd., P.O. Box 55490
Metairie, Louisiana  70055-5490
(504) 834-2612

*Attorneys for Petitioner*
*Lafayette Insurance Company*

*Ralph S. Hubbard, III w/ permission by JAW*

RALPH S. HUBBARD III, T.A.
JOSEPH P. GUICHET
SETH A. SCHMEECKLE
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
(504) 568-1990

*Attorneys for Petitioner*
*The Hanover Insurance Company*

1

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2
     *********************************************************************
 3   O'DWYER, ET AL

 4                                       Docket No. 05-CV-4181
     V.                                  New Orleans, Louisiana
 5
                                         Friday, October 27, 2006
 6   UNITED STATES OF AMERICA, ET AL
     *********************************************************************
 7
     KELLY A. HUMPHREYS
 8
                                         Docket No. 06-CV-0169
 9   V.                                  New Orleans, Louisiana

10                                       Friday, October 27, 2006
     ENCOMPASS INSURANCE COMPANY, ET AL
11
     *********************************************************************
12
     XAVIER UNIVERSITY OF LOUISIANA
13
                                         Docket No. 06-CV-516
14   V.                                  New Orleans, Louisiana

15                                       Friday, October 27, 2006
     TRAVELERS PROPERTY CASUALTY
16   COMPANY OF AMERICA

17   *********************************************************************

18   CHEHARDY, ET AL

19                                       Docket No. 06-1672, 1673 &
     V.                                  1674
20                                       New Orleans, Louisiana

21                                       Friday, October 27, 2006
     STATE FARM FIRE & CASUALTY
22   COMPANY, ET AL

23   *********************************************************************

24

25
```

1    TRANSCRIPT OF MOTION PROCEEDINGS
     HEARD BEFORE THE HONORABLE STANWOOD R. DUVAL
2              UNITED STATES DISTRICT JUDGE

3

4  **APPEARANCES FOR 06-169:**

5  FOR THE HUMPHREYS PLAINTIFFS:     THE CREELY LAW FIRM
                                     BY:  ROBERT G. CREELY, ESQ.
6                                    1010 Common Street, Suite 2650
                                     New Orleans, LA 70112
7

8

   FOR ENCOMPASS INSURANCE COMPANY:  BARRASSO USDIN KUPPERMAN
9                                    FREEMAN & SARVER
                                     BY:  JUDY Y. BARRASSO, ESQ.
10                                   909 Poydras Street
                                     LL&E Tower - Suite 1800
11                                   New Orleans, LA 70112

12

13

14  **APPEARANCES FOR 06-516:**

15  FOR XAVIER UNIVERSITY
    OF LOUISIANA:                    SHER GARNER CAHILL RICHTER
16                                   KLEIN & HILBERT
                                     BY:  JAMES M. GARNER, ESQ.
17                                        DARNELL BLUDWORTH, ESQ.
                                     909 Poydras Street
18                                   LL&E Tower - 28th Floor

19

20  FOR TRAVELERS PROPERTY CASUALTY
    COMPANY OF AMERICA:              LUGENBUHL, WHEATON, PECK,
21                                   RANKIN & HUBBARD
                                     BY:  RALPH S. HUBBARD, III, ESQ.
22                                        SIMEON B. REIMONENQ,JR., ESQ
                                          SETH A. SCHMEECKLE, ESQ.
23                                   601 Poydras Street, Suite 2775
                                     New Orleans, LA 70130
24

25

```
 1   APPEARANCES FOR 06-1672, 1673 & 1674:

 2

     FOR THE CHEHARDY PLAINTIFFS:        BRUNO & BRUNO
 3                                       BY:  JOSEPH M. BRUNO, ESQ.
                                         855 Baronne Street
 4                                       New Orleans, LA 70113

 5
                                         ANDERSON KILL & OLICK
 6                                       BY:  JOHN N. ELLISON, ESQ.
                                         1600 Market Street, Suite 2500
 7                                       Philadelphia, PA 19103

 8
                                         FAYARD & HONEYCUTT
 9                                       BY:  CALVIN C. FAYARD, JR., ESQ.
                                         519 Florida Avenue Southwest
10                                       Denham Springs, LA 70726

11
                                         RANIER, GAYLE & ELLIOT
12                                       BY:  N. FRANK ELLIOT, III, ESQ.
                                         1419 Ryan Street
13                                       Lake Charles, LA 70602-1890

14
                                         LEVIN, PAPANTONIO, THOMAS,
15                                       MITCHELL, ECHSNER & PROCTOR
                                         BY:  MATTHEW D. SCHULTZ, ESQ.
16                                       316 S. Baylen Street, Suite 600
                                         Pensacola, FL 32581
17

18                                       LARRY D. DYESS, ESQ.
                                         4637 Jamestown Avenue, Suite C
19                                       Baton Rouge, LA 70808

20

21
     FOR STATE FARM FIRE & CASUALTY
22   COMPANY:                            STONE, PIGMAN, WALTHER, WITTMANN
                                         BY:  WAYNE J. LEE, ESQ.
23                                           STEPHEN G. BULLOCK, ESQ.
                                         546 Carondelet Street
24                                       New Orleans, LA 70130

25
```

4

```
 1   FOR TRAVELERS INSURANCE COMPANY
     AND STANDARD FIRE INSURANCE
 2   COMPANY:                          LUGENBUHL, WHEATON, PECK,
                                       RANKIN & HUBBARD
 3                                     BY:  RALPH S. HUBBARD, ESQ.
                                            SIMEON B. REIMONENQ,JR,ESQ.
 4                                          SETH A. SCHMEECKLE, ESQ.
                                       601 Poydras Street, Suite 2775
 5                                     New Orleans, LA 70130

 6

 7
     FOR STANDARD FIRE INSURANCE
 8   COMPANY:                          ROBINSON & COLE
                                       BY:  WYSTAN M. ACKERMAN, ESQ.
 9                                          STEPHEN E. GOLDMAN, ESQ.
                                       280 Turnbull Street
10                                     Hartford, CT 06103-3597

11

12   FOR ENCOMPASS INSURANCE COMPANY,
     ALLSTATE INSURANCE COMPANY AND
13   LIBERTY MUTUAL INSURANCE COMPANY: BARRASSO USDIN KUPPERMAN
                                       FREEMAN & SARVER
14                                     BY:  JUDY Y. BARRASSO, ESQ.
                                            H. MINOR PIPES, III, ESQ.
15                                     LL&E Tower, Suite 1800
                                       909 Poydras Street
16                                     New Orleans, LA 70112

17

18   FOR AMERICAN INSURANCE COMPANY:   DUPLASS ZWAIN BOURGEOIS, MORTON,
                                       PFISTER & WEINSTOCK
19                                     BY:  KELLY C. BOGART, ESQ.
                                       3838 N. Causeway Blvd.,Suite 2900
20                                     Metairie, LA 70002

21

22
     FOR AAA HOMEOWNERS AUTO CLUB
23   FAMILY INSURANCE COMPANY:         JOHNSON, JOHNSON, BARRIOS &
                                       YACOUBIAN
24                                     BY:  ALAN J. YACOUBIAN, ESQ.
                                            NEAL J. FAVRET, ESQ.
25                                     701 Poydras Street, Suite 4700
                                       New Orleans, LA 70139-7708
```

5

```
 1
     FOR LAFAYETTE INSURANCE COMPANY:      LAW FIRM OF WILLIAM J. WEGMANN
 2                                         BY:  WILLIAM J. WEGMANN, JR., ESQ
                                           110 Veterans Memorial Boulevard
 3                                         Suite 440
                                           Metairie, LA 70005
 4

 5

 6   FOR LOUISIANA CITIZENS PROPERTY
     INSURANCE CORPORATION:                BIENVENU, FOSTER, RYAN & O'BANNON
 7                                         BY:  GREGOR J. McDONALD, ESQ.
                                           1010 Common Street, Suite 2200
 8                                         New Orleans, LA 70112-2401

 9

10

11

12

13

14

15   Official Court Reporter:              Karen A. Ibos, CCR, RPR
                                           500 Poydras Street, Room HB-406
16                                         New Orleans, Louisiana 70130
                                           (504) 589-7776
17

18

19        Proceedings recorded by mechanical stenography, transcript
     produced by computer.
20

21

22

23

24

25
```

6

P R O C E E D I N G S

(FRIDAY, OCTOBER 27, 2006)

(MOTION PROCEEDINGS)


1
2
3
4
5      THE DEPUTY CLERK:  Court's in session, please be seated.
6  This is civil action 05-4182, reference 06-1672, 1673 and 1674.
7      MR. BRUNO:  Good afternoon, your Honor.  Are you all
8  right?
9      THE COURT:  Yeah, I'm all right, I'm just waiting.
10      MR. BRUNO:  I didn't know if you were ready for us or not.
11  Your Honor, Joseph Bruno, liaison counsel.  John Ellison will be
12  arguing for the Chehardy group and Mr. Garner and then Mr. Bob
13  Creely.  We've agreed to split the time.  And all of the plaintiffs
14  will speak first, even though we are defending some motions and
15  proposing some motions, but we figured the best thing to do is let
16  us go first, 30 minutes that side, go 30 minutes this side.
17      MR. HUBBARD:  With no rebuttal.
18      MR. BRUNO:  With no rebuttal.
19      THE COURT:  You can be seated.  I am just going to make a
20  few comments.  One reason for the, at least the way the world have
21  been in this case lately, the truncated time period is that I've had
22  hours of argument on the bulk of these issues and gone over
23  virtually every case that you have cited in a previous argument, so
24  I am familiar with the cases and the policy language.
25      As I see these cases, as we still, the issue, really the

1  it be easy to say natural or man-made like they did in the earth

2  moving exclusion or they did in the Hartford policy?  Wouldn't that

3  be really easy if that's what you intend?  Because if I am shopping

4  for policies and I am looking around at all of these things and look

5  at the Hartford and say, look at this, how am I John Q. Public

6  supposed to know which one provides me what, unless I'm Nostradamus.

7       MR. HUBBARD:  All I can tell you, Judge, is that the

8  Cadwallaer case, which I just had up, by the Louisiana Supreme Court

9  in 2003, said you don't look to other policies to try to figure out

10  whether the one in front of you is ambiguous.  You look at the four

11  corners of what you've got and deal with that.

12       THE COURT:  Then why do I go to the most expansive

13  definition that exists for flood?  That is water covering land.  Why

14  do I go to that in the context of an all risk policy when I've paid

15  for coverage for third-party negligence?

16       MR. HUBBARD:  Because the test is not whether it's treated

17  differently because it's in an all risk policy, the test is what is

18  the ordinary generally prevailing usage of the word in your

19  community.

20       THE COURT:  I think the Civil Code says you look at

21  context of the contract you're dealing with.

22       MR. HUBBARD:  Well, the Civil Code also says the line

23  about you use the generally prevailing meaning.

24       THE COURT:  You're right.

25       MR. HUBBARD:  And so then you look at what sophisticated

1   people in our community, how have they referred to what we're

2   dealing with here in the context of perhaps having levees that broke

3   that resulted in the inundation.

4          And Judge Africk says that "the property was damaged by

5   flood waters that inundated New Orleans following Hurricane

6   Katrina."  Judge Feldman says, "Plaintiff's home flooded during

7   Hurricane Katrina."  Judge Berrigan says, "the allegations in this

8   case arise --"

9          THE COURT:  I agree.  I'll tell you what Judge Duval will

10   say it was a flood.

11          MR. HUBBARD:  Exactly.

12          THE COURT:  There is a flood in the sense that these

13   houses were damaged by water.  But Judge Duval isn't necessarily

14   going to say that the policy when it says flood for the purposes of

15   insurance policy means water damage -- why don't you just put water

16   damage?  Water damage period.  Water damage, any damage by water.

17   That's the end of it, for any cause whatsoever.  I guess that would

18   be pretty clear.  Any damage by water.  So anyway.

19          It's really how you construe this word; if I am looking at

20   it, what does a flood mean in that context.  And I realize that

21   everybody is referred to this as a flood.  I am not saying it's not

22   a flood or the homes weren't flooded.  The homes were flooded, no

23   question.

24          MR. HUBBARD:  I guess what I'm suggesting, Judge --

25          THE COURT:  Water came into the house.

1           MR. HUBBARD:  And all I'm saying is that if that's what we

2    all called it, then that's what it is.  And the fact that you put

3    that word into an insurance policy is one reason why we don't have a

4    bunch of definitions for it is because we all know what a flood is.

5    And the word flood is not based on -- it's not a fair approach to

6    say, in my opinion, Judge, to say did you mean naturally causing or

7    did you mean caused by man, because the word flood means all of it.

8           It's like the word fire.  I would suggest the same thing.

9    Fire.  What is fire?  Well, it's combustion.  Is it combustion

10   that's caused by a kid playing with a lighter or is it combustion

11   that's caused by God when your house is hit by lightening?

12          THE COURT:  All of the terms following the word flood are

13   standing out there, some of them would be synonymous with flood, by

14   the way.  All of them are natural acts.  If you look at the terms --

15   let me read it again, I ought to know it by now -- a surface water,

16   why isn't that a flood.

17          Waves, why isn't that a flood?  If waves come into your

18   house.  Tidal waves, overflow of a body of water, all of them.  I

19   mean, why isn't that a flood?  Why does it put the word flood there,

20   that would be simple.  That's it.  Water damage exclusion, flood.

21          MR. HUBBARD:  Because it's a defined word and that's the

22   way -- you can choose to define a word however you wish.

23          THE COURT:  If those are modifiers of the word flood,

24   they're all natural.

25          MR. HUBBARD:  Let's talk about that because that's exactly

74

1

2                     REPORTER'S CERTIFICATE

3

4        I, Karen A. Ibos, CCR, Official Court Reporter, United States

5    District Court, Eastern District of Louisiana, do hereby certify

6    that the foregoing is a true and correct transcript, to the best of

7    my ability and understanding, from the record of the proceedings in

8    the above-entitled and numbered matter.

9

10

11       OFFICIAL SEAL            
         KAREN A. IBOS
12       Certified Court Reporter
         in and for the State of Louisiana       Karen A. Ibos, CCR, RPR
         Certificate Number 91007
13       Certificate expires 12-31-08             Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25