**THIS ORDER PERTAINS TO:**

*Xavier University*, C.A. No. 06–516

## ORDER AND REASONS

Plaintiff Xavier University of Louisiana ("Xavier") was insured by Travelers Property

Casualty Company of America ("Travelers") under a Commercial Insurance Policy designated as

"A Custom Insurance Policy" (Exhibit A to Opposition, TRAV 383) (hereinafter TRAV) which

included "Deluxe Property" coverage (TRAV 389) as part of an all risks policy.  Xavier incurred

severe property damage some of which was allegedly was caused by water which came from the

17th Street Canal and the London Avenue Canal breaches.  Relying on the following provision of

the policy, Travelers has denied coverage for the water damage which Xavier experienced:

> Water Damage Exclusion
>
> 1.     We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that has contributed concurrently or in sequence to the loss.
>
>     g.     Water
>
>         (1)     Flood,  surface water, waves, tides, tidal waves overflow of any body of water, or their spray, all whether driven by wind or not;
>
>         (2)     Mudslide or mudflow:
>
>         (3)     Water under the ground surface pressing on, or flowing or seeping through:
>
>             (a) foundations, walls, floors or paved surfaces;
>
>             (b) Basements, whether paved or not; or
>
>             (c) Doors, windows or other openings.

(TRAV 410).  Travelers has filed Plaintiff's Motion for Partial Summary Judgment (Doc. 1217)

seeking a ruling that, as a matter of law, damages to Xavier's campus following Hurricane

Katrina were caused by ground water which came from the collapses of the 17th Street Canal and

the London Avenue Canal levees as a result of man-made causes and that such damages are

covered under the "all risks" policy of insurance issued to Xavier by defendant Travelers.

## I.    Standard for Summary Judgment Motion

This motion has been brought pursuant to Fed. R. Civ. P. 56.  Summary judgment should

be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Substantive law determines the materiality of

facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of [the record] . . . which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S.

317, 323 (1986).  Once the movant meets this burden, the burden shifts to the non-movant "to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Id.* at 322.   "[M]ere allegations or

denials" will not defeat a well-supported motion for summary judgment. Fed. R. Civ. P. 56(e).

Rather, the non-movant must come forward with "specific facts" that establish an issue for trial.
*Id.*

When deciding a motion for summary judgment, the Court must avoid a "trial on
affidavits. Credibility determinations, the weighing of the evidence, and the drawing of
legitimate inferences from the facts" are tasks for the trier-of-fact. *Anderson*, 477 U.S. at 255.
To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The
party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be
believed." *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

Based on the analysis contained in the *Vanderbrook* opinion herein, in particular the legal
analysis contained in the following subsections:

| | |
|---|---|
| I. | The Civilian Approach as an Erie Court; |
| IV. | Legal Concepts for Contract Interpretation; |
| VI. | Parties' Contentions; |
| VII. | Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable Interpretations of the Term; |
| VIII. | Jurisprudence Further Demonstrates Reasonableness of Alternative Interpretations; |
| IX. | Application of Legal Principles to the Policies Before the Court; and |
| | A.     ISO Water Damage Exclusion, |

this Court finds that the Water Damage Exclusion as found in Xavier's Travelers policy is
ambiguous and as such affords Xavier coverage for damages sought provided that Xavier can
prove that the flooding it experienced was caused by the negligence of man. The ISO Water
Damage Exclusion and the subject exclusion are practically identical; indeed, with respect to the
subsection (1), the wording is identical. The exclusion does not clearly address flooding caused
by man-induced causes and as such, the Court must find coverage.

58

This ambiguity is highlighted by the policy language itself.  The Earth Movement Exclusion in the Travelers policy is preceded by the  same "lead-in" clause and provides:

    b.    Earth Movement

        (1)    Any earth movement (other than "sinkhole collapse") **whether natural or man made**, including bu not limited to earthquake, mine subsidence, landslide, or earth sinking, rising or shifting.  But if earth movement results in fire, or explosion, we will pay for the loss or damage caused by that fire or explosion.

(TRAV 409).  Thus, Travelers demonstrates that is has the ability to clearly exclude man-made earth-movement claims.  Its failure to use the same language in the same policy with respect to an exclusion within the same section of the policy gives further support to this Court's decision that the Water Damage Exclusion is limited to natural disasters–not those than man's negligence causes.

However, the Court cannot as a matter of law find that the damages to Xavier's campus following Hurricane Katrina were caused by ground water which came from the collapses of the 17th Street Canal and the London Avenue Canal levees. Obviously, there are questions of fact which preclude the granting of Xavier's motion in that regard.  Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 1217) is **GRANTED** in part as the Court finds that the Water Damage Exclusion would provide coverage for water damage caused by the negligent acts of mind and **DENIED** in part as the Court finds there are material questions of fact as to the cause of the water damage to Xavier.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THIS ORDER PERTAINS TO:**

*Chehardy,* **C.A. No. 06-1672, 06-1673, and 06-1674**

## ORDER AND REASONS

Before the Court are the following motions[18]:

Doc. 903      Motion to Dismiss filed by Louisiana Citizens Property Insurance Corp;

Doc. 923      Motion to Dismiss filed by Encompass Indemnity Company;

Doc. 932      Consolidated Rule 12(B)(6) Motion to Dismiss Plaintiffs' Amended and Restated Complaint filed by Defendants The Standard Fire Insurance Company, Lexington Insurance Company, Liberty Mutual Fire Insurance Company, The American Insurance Company, Aegis Security Insurance Company, Auto Club Family Insurance Company,[19] the Hanover Insurance Company and Lafayette Insurance Company

Doc. 936      Motion to Dismiss Plaintiffs" Amended and Restated Complaint filed by Great Northern Insurance Company;

Doc. 939      Motion to Dismiss Pursuant to Rule 12(b) filed by Allstate Insurance Company, Allstate Indemnity Company; and

Doc. 1037     Motion to Dismiss Plaintiffs' Amended and restated Complaint filed by State Farm Fire and Casualty Company.

As noted, the Court entertained oral argument on these motions on October 27, 2006 and is now prepared to rule thereon.

---

[18]It must be noted that the Amended and Restated Complaint does not specify which plaintiffs are insured by which defendants. The Court has attempted to ascertain this information for purposes of specificity with respect to its ensuing orders herein; however, there is some confusion which prevents the Court from doing so. In addition to which, the information provided is not in the record. However, it has been represented to the Court by counsel that all insurers herein have provided at least one policy to one plaintiff, thus the Court will enter its orders with respect to the insurers and will not be able to identify the specific plaintiff who is effected by such order.

[19]This company was named as AAA Homeowners Auto Club in the Amended Complaint.

I.     *Chehardy* Amended and Restated Complaint

Plaintiffs, as putative class representatives, allege that they are residents of the Parishes

of Orleans, St. Bernard and Jefferson who sustained damage to their property following

Hurricane Katrina.  Plaintiffs allege that they purchased homeowners insurance from the insurers

named as defendants in this case.  (Doc. 516, Amended and Restated Complaint, ¶¶ 26, 27, 44).

Plaintiffs claim that they suffered water damage resulting from the "catastrophic events"

of Hurricane Katrina (*Id.* ¶¶ 41-44) which left "approximately 80% of Orleans Parish . . . under

water . . . ." (*Id.* ¶ 45).  Plaintiffs allege that, on August 29, 2005, "there was water on both sides

of the Industrial Canal in New Orleans" and that "there was six to eight feet of water in the

City's Lower Ninth Ward," as a result of a breach in the Industrial Canal levee wall.  (*Id.* ¶¶ 41,

42) . Plaintiffs further state that "the levees around the City and adjoining parishes failed in at

least eight (8) distinct locations, including the 17th Street, London Avenue and Industrial

Canals," and that Plaintiffs suffered damage to their property as a result of these events.  (*Id.* ¶¶

43-45).

Plaintiffs allege that the cause of the levee failures was "negligent design, negligent

maintenance and/or inadequate materials," and that "any damages attributable to the levee

failures are the result of improper and/or negligent design, construction, maintenance of the

levees by various third parties and or third party negligence." (*Id.* ¶¶ 46-50).  Plaintiffs also

assert that high winds and storm surge contributed to levee failures and the resulting water

damage to each individual plaintiff's property.  (*Id.* at pp.17-18).

61

Plaintiffs acknowledge that their policies contain water damage exclusions that ostensibly exclude coverage for "floods" and allege that "the reasonable expectations of Louisiana policyholders is that 'flood' encompasses overflowing of the Mississippi River, accumulation of surface water due to heavy rainfalls, or similar phenomena but not the failing of virtually all man-made structures containing navigable Waters of the United States. . . due to negligent conduct beyond " beyond plaintiffs' control. (*Id.* ¶ 61) Plaintiffs contend that these water exclusions should not be given such a broad reading so as to disallow coverage under the circumstances alleged in the Amended and Restated Complain. (*Id.* ¶ 60). They maintain that Plaintiffs' "reasonable expectation" was that their homeowners policies would provide coverage for the type of flooding that occurred after Hurricane Katrina. (*Id.*)

The Complaint alleges five counts. Count I seeks a five-part declaratory judgment from this Court. (*Id.* ¶ 58) Specifically, Plaintiffs seek a declaratory judgment that:

(1)      "The first efficient proximate cause of the losses . . . was **'windstorm,'** a covered peril . . . thereby rendering any subsequent ***impact from water*** released by the levee and/or levee wall failures irrelevant to coverage";

(2)      "The second efficient proximate cause of the losses ***resulting from water entering the City of New Orleans*** and adjoining parishes . . . were acts of **negligence**";

(3)      "The third efficient proximate cause of the losses ***resulting from water entering the City of New Orleans*** and adjoining parishes . . . was **storm surge**, a known meteorological phenomenon that is not specifically excluded" by the Policies;

(4)    "The **breaking or failure of boundaries of** lakes, reservoirs, rivers,

streams, or other **bodies of water** was a peril not specifically excluded" by the

Policies;

(5)    "The **damage caused by water** entering the City of New Orleans and

adjoining parishes . . . due to the breaches in the levees and levee walls along the

17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere neither

falls within the regular definition of 'flood,' nor within any of the subject

insurance policies' exclusions of 'flood.'"

(*Id.* at pp. 17-18 (emphasis added)).

Count II alleges a breach of contract claim based on the Moving Defendants' failure to

pay for water damage caused by flooding allegedly resulting from the "efficient proximate cause

of windstorms, storm surge and/or negligence." (*Id.* ¶ 68)

Finally, Plaintiffs also assert extra-contractual claims based on the Moving Defendants'

alleged improper denial of Plaintiffs' water damage claims.  These claims are based on

allegations that the Moving Defendants: (1) wrongfully denied coverage by "equating" losses

caused by wind, negligence and storm surge "with flood" (Count 3); (2) "misrepresented" that

the policies' Water Damage Exclusion applied to Plaintiffs' claims "without a legitimate basis"

for doing so (Count IV); and (3) directed their adjusters to "consider only nearby waterlines and

to ignore all other evidence in determining whether Policyholders' losses are covered . . ." in

violation of La. R.S. 22:658.2(A)(1) (Count V). (*Id.* ¶¶ 85, 87-88, and 90; *Id.* ¶¶ 73-74 and 76-

77)  La. R.S. 22:658.2(A)(1), which became effective on February 23, 2006, provides that "[n]o

insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."

## II.    Motions Filed

Based on substantially the same arguments set forth in the *Vanderbrook* matter, each of the named insureds has filed, either jointly or individually, depending on the language of their respective policies, the Motions to Dismiss noted above.  In approaching these arguments, the Court re-urges and adopts herein Section I of the *Vanderbrook* opinion–that is "I.  The Civilian Approach as an Erie Court" and "III. Standard for Judgment on the Pleadings."  Furthermore, the Court will not address any arguments made with respect to the extra-contractual claims brought by plaintiffs.  The Court intends to resolve the insurance coverage issues addressed in these consolidated cases and certify the matter to the United States Court of Appeals for the Fifth Circuit.  It would be premature and a distraction to approach the extra-contractual issues at this juncture.  Thus, the motions in this respect will be denied without prejudice to be re-urged at the appropriate time.

The Court will now examine each motion filed, not in numerical order, but in order of scope.

III.    **Policy Language and the Motions to Dismiss**

   A.    **Insurers Using ISO Policy Language–Motion to Dismiss Doc. No. 932**

The policies issued by The Standard Fire Insurance Company, Lexington Insurance

Company, Liberty Mutual Fire Insurance Company, The American Insurance Company, Aegis

Security Insurance Company, Auto Club Family Insurance Company and the Hanover Insurance

Company and Lafayette Insurance Company (hereafter "ISO defendants") are identical but for

one exception.  The Auto Club Family Insurance Company policy issued to Randy and Lori

Gervais (INS 88 THROUGH INS 000121) does not contain the "weather conditions" and

"faulty, inadequate or defective; design and maintenance exclusions, so the arguments made in

that respect are not applicable to them.  The Court will address the subject motion in relation to

the policy provisions upon which these ISO defendants rely.

   1.    **Water Damage Exclusion**

The ISO water damage exclusion provides:

(1)    We do not insure for loss **caused directly or indirectly by any of the following.** Such
       loss is excluded regardless of any other cause or event contributing concurrently or in any
       sequence to the loss.

       **(c) Water Damage**, meaning:
              Flood, surface water, waves, tidal water, overflow of a body of water, or
              spray from any of these, whether or not driven by wind;

(Doc. 932 Appendix of Moving Defendants at INS 11, INS71, INS 110, INS 155, INS 199, INS

357, INS 406 AND INS 458.)  Based on this language, the ISO defendants maintain that there is

no coverage.  For the same reasons assigned in the *Vanderbrook* opinion above, in particular,

65

IV.  Legal Concepts for Contract Interpretation;

VI.  Parties' Contentions;

VII.  Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable Interpretations of the Term;

VIII.  Jurisprudence Further Demonstrates Reasonableness of Alternative Interpretations;

IX.  Application of Legal Principles to the Policies Before the Court; and

    A.  ISO Water Damage Exclusion,

the Court reiterates and adopts those findings and reasoning and finds this exclusion ambiguous and as such, interprets the provision in favor of the insured. Thus, the Motion to Dismiss with respect to the Water Damage Exclusion will be denied.

### 2.  Weather Conditions Exclusion

The ISO defendants then urge that the Weather Conditions Exclusion reinforces the legal inadequacy of the plaintiffs' theory. That clause provides:

> We do not insure for loss to property described in Coverage A and B caused by any of the following. . .
>
> **a. Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above [which includes the Water Damage Exclusion ] to produce the loss.

(INS 0011, INS 0071, INS 00110, INS 00155, INS 00199, INS 00318, 8NS 358, INS 00406, and INS 00458). As the Court finds that the Water Damage Exclusion does not exclude coverage for water damage caused by the negligent or intentional acts of man, this provision is without force in this instance by its own terms, and the motion must be denied in this respect.

66

### 3.    Negligent Design, Construction or Maintenance

The ISO defendants also urge the following language should prevent coverage from

attaching:

Section 1–Exclusions

2.      We do not insure for loss to property described in Coverages A and B caused by any of the following.  **However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.**

. . .

b.      **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c.      **Faulty, inadequate or defective**:

(1)    Planning, zoning, development, surveying, siting;

(2)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3)    Materials used in repair, construction, renovation or remodeling; or

(4)    Maintenance;

of part or all of any property whether on or off the "residence premises."

(INS 0011, INS 0071, INS, 00110, INS 00155, INS 00197, INS 00318, INS 00358, INS 00406,

and INS 00458) (emphasis added).  As there is an ensuing loss provision in this section, again

for the specific reasons stated above in Section IX.A.3. of the *Vanderbrook* opinion, the Court

rejects this argument and will deny the motion.


### 4.  Plaintiffs' Extra-Contractual Claims Fail As a Matter of Law

As stated above, the Court finds the relief sought by defendants to be premature, and the

motion will be denied without prejudice for these arguments to be re-urged at the appropriate

time.

Thus, the Motion to Dismiss (Doc. 932) filed by the ISO defendants will be denied.

**B.     Allstate Insurance Company and Allstate Indemnity Co.'s Motion to Dismiss (Doc. 939)**[20]

The Court will now examine the policy language of the Allstate policies in light of its

Motion to Dismiss.

### 1.     Water Damage Exclusion

Allstate relies on the following policy language to exclude coverage for the relevant plaintiffs.

**Losses We Do Not Cover Under Coverages A and B:**

We do not cover loss to the property described in Coverage A–Dwelling Protection or Coverage B–Other Structures Protection consisting of or caused by:

1.     Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2.     Water or any other substance that backs up through sewers or drains.

3.     Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4.     Water or any other substance on or below the surface of the ground, regardless of its source.  This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

(Exhibit A to Motion, ALST 00230-00231).With respect to  Section 1above, for all of the

reasons stated heretofore in the *Vanderbrook* opinion above, in particular,

IV.     Legal Concepts for Contract Interpretation;

VI.     Parties' Contentions;

VII.     Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable Interpretations of the Term;

VIII.     Jurisprudence Further Demonstrates Reasonableness of Alternative Interpretations;

---

[20]Allstate filed a Motion for Judgment on the Pleadings in October 31, 2005, prior to this matter being transferred from the United States District Court for the Middle District of Louisiana to this Court and in reference to the Original Petition and First Supplemental and Amending Petition.  Considering the filing of the Amended and Restated Complaint filed in this Court on June 2, 2006, that motion is **DENIED** as **MOOT.**

IX.     Application of Legal Principles to the Policies Before the Court; and
A.      ISO Water Damage Exclusion,

the Court again finds this exclusion ambiguous and as such, interprets the provision in favor of

the insured.  As such, the Motion to Dismiss with respect to the Water Damage Exclusion will be

denied.

Likewise Losses Not Covered Sections 2, 3 and 4 above do not exclude with specificity

damages  caused by water the presence of which was caused by the negligent or intentional acts

of man which is the gravamen of plaintiffs' claims.  Obviously, in the event that there is proof

adduced with respect to  an individual claim that the actual cause of the damage to that

individual home was actually caused by the types of occurrences described in these exclusions,

then a finder of fact could find these exclusions to be operative.  However, in the context of a

Motion to Dismiss, this Court cannot and will not find as a matter of law find that these

exclusions are not ambiguous and clearly exclude coverage for damage allegedly caused by the

failed levee system caused by the negligent or intentional acts of man.

With respect to Section 4, from the case law examined concerning this particular

exclusion, it does not appear that this exclusion is meant to address water damage caused by

negligence of the kind alleged in *Chehardy*.  *See West v. Umialik Ins. Co.*, 8 P.3d 1135 (Ala.

2000); *Hudson v. Allstate Ins. Co.*, 25 A.D.3d 654 (N.Y. S.Ct. App. 2nd 2006); *Carver v. Allstate

Ins. Co.*, 76 S.W. 3d 901 (Ark. App. 2002).   Furthermore, the term "no matter the source" does

not address causation, rather it addresses the a location from where the water might emanate.  As

such and again for all of the reasons stated in *Vanderbrook,* the motion in this respect will be

denied.

## 2.    Planning, Construction or Maintenance

Allstate further relies on the following language which is in the same section noted

above, that is the "Losses We Dot Not Cover Under Coverages A and B" which provides that it

does not cover losses caused by:

22.    Planning, Construction or Maintenance, meaning faulty, inadequate or defective:

  (a)    planning, zoning, development, surveying, siting;

  (b)    design, specifications, workmanship, repair construction, renovation, remodeling, grading, compaction;

  (c)    material used in repair, construction, renovation or remodeling; or

  (d)    maintenance;

of property whether on or off the residence premises by any person or organization.

(Exhibit A to Motion, ALST 00232). Again, this exclusion does not clearly exclude man-made

failures with respect to levees which is at the core of the *Chehardy* pleading. Although the

Allstate provision does not have an ensuing loss provision like the one contained in the ISO

policy, this exclusion would appear to apply only to defalcations which occur whether on or off

the residence premises with respect to the construction or design, and the like, of the insured

premises or for property insured but not on the insured premises. Therefore, the omission of the

ensuing loss provision is irrelevant to the facts as plead herein. *See e.g. Holland v. Breaux*,

2005 WL 3542899 (E.D.La. Nov. 22, 2005) (Africk, J.); *Angott v. Great Northern Ins. Co.*, 2006

WL 1328874 (E.D. Mich. May 15, 2006); *Wright v. Safeco Ins. Co. of America*, 2004 WL

2095664 (Wash. App. Div. 1 Sept. 1, 2004). Again for all of the reasons cited with respect to

what is required for an exclusion to an all-risk policy to be unambiguous and enforceable found

in *Vanderbrook*, this exclusion fails.

70

### 3.    Storm Surge in Section 1of Exclusion for Flood

Allstate also reiterates the language contained in Section 1[21] of the losses not covered and cites to *Tuepker v. State Farm*, 2006 WL 1442489 (S.D. Miss. May 24, 2006) to urge that because"storm surge" was clearly excluded, there should be no coverage. This case is inapposite to the one before the Court because in *Tuepker*, naturally occurring storm surge was the cause of loss along the Mississippi Gulf Coast. There was no levee failure involved; this argument is irrelevant to the *Chehardy* allegations.

### 4.    Weather Conditions

Allstate also relies on Exclusion Section 21 which provides that Allstate does not cover loss to the insured property caused by "weather conditions that contribute in any way with a cause of loss excluded in this section to produce a loss." (Exhibit A, ALST 00232). Again, as the Court has found that the Water Damage Exclusions are inapplicable, this exclusion has no effect as the loss is not excluded by the "Losses We Do Not Cover" provisions.

### 5.    Hurricane Deductible Endorsement

Allstate argues in its opposition to the *Chehardy* motion, "Plaintiffs also have argued that their homeowner policy covers flood damage because of a Hurricane Deductible Endorsement." While this allegation in the *Chehardy* pleadings alludes the Court, the Court concurs that any

---

[21]     "Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind"

Hurricane Deductible Endorsement contained in a policy does not increase coverage provided to a homeowner or insured. Rather it generally increases the applicable deductible for covered losses caused by a hurricane. As such, the Court finds that such an endorsement does not increase the coverage conferred by the policy in question.

### 6.      Plaintiffs' Extra-Contractual Claims Fail As a Matter of Law

As stated above, the Court finds the relief sought by Allstate to be premature considering the posture of the case, and the motion will be denied without prejudice for it to be re-urged at the appropriate time.

Thus, Allstate Insurance Company and Allstate Indemnity Co.'s Motion to Dismiss (Doc. 939) will be denied.

### C.      State Farm's Motion to Dismiss (Doc. 1037)

State Farm moves for the dismissal of Count One of the Complaint for Declaratory Relief and Count Two for Breach of Contract based on the same exclusions previously discussed in the *Vanderbrook* opinion.

The State Farm policies provide that "We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I-LOSSES NOT INSURED." The policies then provides:

> SECTION I -LOSSES INSURED
> Coverage A-Dwelling

72

We insure for accidental direct physical loss to the property described in
Coverage A, except as provided in Section I–LOSSES NO INSURED.

SECTION I - LOSSES NOT INSURED

2.      We do not insure under any coverage for loss which would not have
occurred in the absence of one or more of the following excluded events.  We do
not insure for such loss **regardless of: (a) the cause of the excluded event**; or
(b) other causes of the loss; or (c) whether other causes acted concurrently or in
any sequence with the excluded event to produce the loss; or (d) whether the
event occurs suddenly or gradually, involves isolated or widespread damage,
arises from natural or external forces, or occurs as a result of any combination of
these:

c.      (1) flood, surface water, waves, tidal water, overflow of a body of water, or
spray from any of these all whether driven by wind or not;

(Doc. 570, Exhibit A and B, pp. 7 and 10) (emphasis added).

For the reasons previously assigned in *Vanderbrook*, in particular Sections:

IV.     Legal Concepts for Contract Interpretation;

VI.     Parties' Contentions;

VII.    Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable
        Interpretations of the Term;

VIII.   Jurisprudence Further Demonstrates Reasonableness of Alternative
        Interpretations;

IX.     Application of Legal Principles to the Policies Before the Court; and

        A.      ISO Water Damage Exclusion and

        B.      State Farm Policy's "lead-In Provision,

State Farm's Motion to Dismiss (Doc. 1037) will be granted and Counts One and Two of the

*Chehardy* Amended and Restated Complaint will be dismissed as to State Farm.  This provision

clearly excludes flood damage "no matter the cause" which clearly includes both natural and

man-made "causes."   As previously stated, the Court will not address the extra-contractual relief

73

sought at this time, and the motion will be denied in that respect without prejudice, to be re-urged at the appropriate time.

### D.    Louisiana Citizens Property Insurance Corp.–Motion to Dismiss Doc. 903

Louisiana Citizens Property Insurance Corporation ("LCPIC") filed a motion which

adopts the memoranda filed by the ISO defendants, State Farm and Allstate. This defendant did

not explain or provide the Court with which provisions of its own policy upon which it relies in

order to ride on these memoranda's coattails. From a review of the insurance policy, it appears

that it tracks the language of the ISO defendants' policy–in particular the Water Damage

Exclusions, the Weather Condition Exclusion and the Faulty, Inadequate or Defective Acts

Exclusion. As such, for the reasons stated in *Vanderbrook* and the reasons reiterated above with

respect to the ISO defendants' policy, LCPIC's Motion to Dismiss (Doc. 903) will be denied.

### E.  Encompass Indemnity Company's Motion to Dismiss  (Doc. 923)

Encompass Indemnity Company ("Encompass") filed its Motion to Dismiss and

Incorporated Memorandum and adopted (1) Allstate's arguments, (2) the ISO defendants'

arguments as well (3) State Farms' arguments. In its memorandum, this defendant does not

specify what language within the Encompass policy upon which it relies in this instance. It

would appear that the policy tracks the Allstate policy in some regards as well as the ISO

defendants' policies. As best as this Court can ascertain, Encompass relies on the following

language:

74

1.      **Water Damage Exclusion**

In a section entitled "LOSSES WE DO NOT COVER" at ALST 00176 of Exhibit A to

the subject motion it states:

> We do not insure for loss caused directly or indirectly by any of the following. such loss is
>
> excluded regardless of any other cause or event contributing concurrently or n any
>
> sequence to the loss.

> 1.      **Real Property and Tangible Personal Property.** We do not insure for
> loss:
>
> a. caused by water damage, meaning:

> 1.      Flood, including, but not limited to surface water,
> waves, tidal water or overflow of any body of
> water, or spray from any of these, whether or not
> driven by wind;

> 2.      Water which backs up through sewers or drains;

> 3.      Water below the surface of the ground including water
> which exerts pressure on, or seeps or leaks through a
> building, sidewalk, driveway, foundation, swimming pool
> or other structure; or

> 4.      Water emanating from a sump pump, sump pump
> well or similar device designed to prevent
> overflow, seepage or leakage of subsurface
> water.

> Direct loss by fire explosion or theft resulting from water damage is covered.

ALST 00177. This water exclusion has neither the lead-in language of State Farm's policy nor

the same wording as that of the Allstate policy. It is most like the ISO policy and for all the

reasons stated in the foregoing *Vanderbrook* and the *Chehardy* opinion to this point, the Court

will deny the motion to dismiss as it pertains to the applicability of the Water Damage Exclusion.

Only Section 1 would be arguably applicable by operation of the facts in the instant matter, and

the reasons given for the denial of the ISO provisions with respect to the Water Damage

Exclusion operate equally in this instance.

### 2. Other Exclusions

The other provisions that would apparently mirror the arguments made in the other briefs

noted are found at Section 2. of the LOSSES WE DO NOT COVER portion of the policy which

states:

    2.      Real Property. We do not insure for loss:

          . . .

      g.      To covered real property caused by any of the following. **However, any ensuing loss not excluded or excepted in this policy is covered.**

          (1)      Weather conditions. However, this exclusion applies only if weather conditions contribute in any way with a cause on (sic) event otherwise excluded to produce the loss.

          (2)      Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

          (3)      Faulty, inadequate or defective:

              (a)      Planning, zoning, development, surveying, siting;

              (b)      Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

              (c)      materials used in repair, construction, renovation or remodeling; or

              (d)      Maintenance;

            of part or all of any property whether on or off your residence premises.

(ALST 00178-79)(emphasis added). Considering the ensuing loss provision above, the Court

likewise for all of the reasons stated previously finds that these exclusions do not operate to

exclude coverage for the damages sought in *Chehardy* with respect to losses from water damage.

Again, the Court will deny the motion insofar as it seeks any dismissal of any extra-contractual issues as premature. Thus, the Encompass Indemnity Company's Motion to Dismiss (Doc. 923) will be denied.

**F.    Great Northern Insurance Company's Motion to Dismiss** (Doc. 936)

Great Northern adopted the Motion to Dismiss of Allstate and relies on the following specific policy language contained in its policy as concerns its argument with respect to the Water Damage Exclusion:

> EXCLUSIONS
>
> These exclusion apply to your Deluxe House Coverage, including the Extra Coverages, unless stated otherwise.
>
> The words "caused by" mean any loss that is contributed to, made worse by, or in any way results from that peril.
>
> . . .
>
> **Surface water.** We do not cover any loss caused by:
>
> •flood, surface water, waves, tidal water, or water borne material from any of these;
>
> •overflow of water or water borne material from a body of water;
>
> •run off of water or water borne material from a paved surface, driveway, walkway, patio, or other similar surface; or
>
> •spray from any of these,
>
> from any source, even if driven by wind. But we do insure ensuing covered loss unless another exclusion applies.

(Exhibit A, CH-FOR-020 and Exhibit B CH-BAR-018.)    This exclusion again does not clearly exclude water damage caused by negligent or intentional acts of man. It does not address the ambiguity of the term "flood" and the fact that all of the listed "causes" appear to be the result of natural occurences, not the monumental civil engineering debacle that is alleged by plaintiffs.

For the reasons assigned in *Vanderbrook* and in the previous sections dealing with ISO and

Allstate's motions in *Chehardy,* the Court finds that the Motion to Dismiss based on this

exclusion is without merit.

As to the Faulty Planning, Construction or Maintenance, the following language appears

in the same Exclusion section as above:

> These exclusion apply to your Deluxe House Coverage, including the Extra Coverages, unless stated otherwise.
>
> The words "caused by" mean any loss that is contributed to, made worse by, or in any way results from that peril.
>
> . . .
>
> **Faulty planning, construction or maintenance.** We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance. It does not matter whether the faulty acts, errors or omissions take place on or off the insured property.  **But we do insure ensuing covered loss unless anther exclusion applies.** "Planning" includes zoning, placing, surveying, designing, compacting, setting specifications, developing property and establishing building codes or construction standards. "Construction" includes materials, workmanship, and parts or equipment used for construction or repair.

(Exhibit A, CH-FOR-021 and Exhibit B CH-BAR-019.) (emphasis added). Again, for all the

reasons previously assigned in *Vanderbrook* and *Chehardy* with respect to this exclusion, as the

damage would be considered loss from a covered peril based on the previous analysis, this

provision does not operate to deny the insureds coverage.

Likewise, all other arguments raised as to "windstorm," "storm surge" and the

applicability of the anti-concurrent clause are likewise rejected for the reasons stated heretofore in

*Vanderbrook.* Finally, as noted, the Court will deny the motion insofar as it seeks the dismissal of

the extra-contractual claims. The Court will deny that portion of the Motion to Dismiss without

prejudice for it to be re-urged at the appropriate time. Thus, the Great Northern Insurance

Company's Motion to Dismiss(Doc. 936) will be denied. Accordingly,

**IT IS ORDERED** with respect to:

Doc. 903     the Motion to Dismiss filed by Louisiana Citizens Property Insurance Corp is **DENIED**.

Doc. 923     the Motion to Dismiss filed by Encompass Indemnity Company is **DENIED**.

Doc. 932     Consolidated Rule 12(B)(6) Motion to Dismiss Plaintiffs' Amended and Restated Complaint filed by Defendants The Standard Fire Insurance Company, Lexington Insurance Company, Liberty Mutual Fire Insurance Company, The American Insurance Company, Aegis Security Insurance Company, Auto Club Family Insurance Company,[22] the Hanover Insurance Company and Lafayette Insurance Company is **DENIED.**

Doc. 936     Motion to Dismiss Plaintiff's Amended and Restated Complaint filed by Great Northern Insurance Company is **DENIED.**

Doc. 939     Motion to Dismiss Pursuant to Rule 12(b) filed by Allstate Insurance Company, Allstate Indemnity Company is **DENIED**.

Doc. 1037    Motion to Dismiss Plaintiffs' Amended and restated Complaint filed by State Farm Fire and Casualty Company is **GRANTED with respect to coverage and DENIED in part,** that is with respect to the extra-contractual claims of plaintiffs.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THIS ORDER PERTAINS TO:**

**KELLY A. HUMPHREYS**                                                      **CIVIL ACTION**

**VERSUS**                                                                          **NO. 06-0169**

---

[22]This company was named as AAA Homeowners Auto Club in the Amended Complaint.

**ENCOMPASS INSURANCE COMPANY, ET AL.**                    **SECTION K(2)**

## ORDER AND REASONS

Kelly A. Humphreys ("Humphreys") filed a Motion for Partial Summary Judgment

seeking coverage for wind and flood damages caused by Hurricane Katrina. (Doc. 39).   Having

held oral argument on this matter on October 27, 2006, and having reviewed the pleadings,

exhibits, memoranda and the relevant law, the Court will rule in conformity with the prior

decisions rendered herein in the *In re Katrina Canal Breaches Consolidated Litigation*  with

respect to *Vanderbrook, Xavier and Chehardy.*  The Court adopts and considers this motion in

conformity with Section I of the *Vanderbrook* opinion entitled "The Civilian Approach as an *Erie*

Court" and Section I of the *Xavier* opinion entitled "Standard for Summary Judgment Motion."

The Court will first review the pleadings herein.


**I.      Procedural History and Allegations of Petition**

The petition was initially filed in Civil District Court for Parish of Orleans and after the

Orleans Levee District was added, the suit was removed to the United States District Court for the

Eastern District of Louisiana on January 13, 2006.  It was eventually transferred to this section of

Court, where the Court  granted a Motion to Sever the Orleans Levee District from this matter and

remanded that party to state court leaving only Encompass as a litigant.

Plaintiff alleges that her property suffered damage as a result of the 17th Street Canal levee

breach. (Petition at IX-XI.)  Plaintiff purchased from Encompass a homeowner's policy of

80

insurance in which the summary notes that plaintiff paid an additional $409.00 for "Hurricane

Peril Coverage."   The declaration sheet notes a $1000.00 "Hurricane Deductible."  Plaintiff

sought damages under this policy for water damage, wind damage, bad faith claims, including but

not limited to her claims under La. R.S. 22:658 and 22:1220.  Humphreys also had purchased

National flood Insurance Program ("NFIP") coverage from which she collected and is not the

subject of suit.   On June 12, 2006, a Rule 41 Stipulation of Partial Dismissal was filed notifying

the Court that all of plaintiff's wind damage claims and her bad faith claims, including but not

limited to her claims under La. R.S. 22:658 and 22:1220 had been compromised.  Thus, the only

issue remaining is whether her homeowners policy provides coverage for the water damage which

she experienced as the result of the collapse of the 17th Street Canal floodwall.


## II. The Motion Before the Court

The thrust of plaintiff's motion focuses on  the Hurricane Deductible Endorsement which

she maintains takes precedence over policy language pursuant to La. Rev. Stat. 22:654 and the

declaration sheet which states "Hurricane Coverage Peril."  Plaintiff maintains that:

1.     By virtue of the Hurricane Peril Coverage/Hurricane Deductible endorsement," a
       hurricane is covered event.

2.     Flood and wind is characteristic of a hurricane storm event;

3.     Plaintiff has coverage for "windstorm," so why then did she purchase hurricane protection
       coverage; and

81

4.      Section 2 **Real Property** subsection g and g.(1) excludes weather conditions but states

"ensuing loss," not excluded or exempted by tin the policy is covered.

As such, plaintiff contends that the ensuing loss, damage caused by Windstorm and Hurricane

Peril Coverage and Hurricane Deductible Endorsement are ensuing losses that extended coverage

by virtue of the endorsements to provide coverage for otherwise excluded perils, i.e. wind and

flood waters caused by a hurricane.   In addition, plaintiff contends that these provisions create an

ambiguity of the type noted in *Tuepker*, *supra*, and as such, a finding of coverage should ensue.

At oral argument, counsel for plaintiff also adopted the arguments of other counsel

concerning the applicability of the Water Damage Exclusion.


III.    **Applicable Policy Provisions**

The policy states in relevant part the following:

**COVERAGES**

**$1000 Hurricane Deductible (based on the residence value)**


**B. HURRICANE DEDUCTIBLE ENDORSEMENT**

We will pay only that part of the total of the loss for all Property Coverages that exceeds
the hurricane deducible state on the Coverage Summary.  The hurricane deductible shown
on the Coverage Summary applies to all covered property for direct physical loss or
damage caused directly or indirectly by a hurricane as defined below.  Such deductible
applies regardless of any other cause or event contributing concurrently or in any
sequence to the loss.  No other deducible provision in the policy applies to direct physical
loss caused by a hurricane.  In no event will the deductible applied for a hurricane loss be
less than the property deductible shown on the Coverage Summary.

Hurricane means wind, wind gust, hail, rain, tornado, cyclone or hurricane which result in
direct physical loss or damage to property be a storm system that has been declared to be
hurricane by the National Weather Service.  the duration of the hurricane includes the time
period in your state:

82

A.   beginning at the time a hurricane watch or hurricane warning is issued for any part of the state by the National Weather Service;

B.   continuing for the time period during which the hurricane conditions exist anywhere in the state; and

C.   ending 12 hours following the termination of the last hurricane watch or hurricane warning for any part of your state by the National Weather se5rve.

All other provisions of this policy apply.

**REAL PROPERTY -COVERED PERILS**

We cover direct physical loss to property describe in **Real Property - Insuring Agreement,** unless the loss is not covered under **Property Coverage - Losses We Do Not Cover.**

. . .

**LOSSES WE DO NOT COVER**

The introductory paragraph is deleted and replaced by the following:

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. **However, coverage will be provided for any covered peril that precedes an excluded peril, occurs concurrently with an excluded peril, or occurs as a result of an excluded peril.**

(Exhibit "1E" amendment of G18733-H Required Coverage and amendments page 6 of 14.)

1.   **Real property and Tangible Personal Property.** We do not insure for loss:

a.   Caused by water damage, meaning:

(1)   Flood, surface water, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(Exhibit "1F" policy of Insurances page 11 of 23).

2.   **Real Property.** We do not insure for loss:

g.   To covered real property caused by any of the following. However, any ensuing loss not excluded or excepted in this policy is covered.

(1)   Weather conditions. However, this exclusion applies only if weather conditions contribute in any way with a cause on (sic) event otherwise excluded t produce the loss.

(Exhibit 1G, Page 13 of 23 of policy).

**III. Analysis**

       Plaintiff's contentions concerning the Hurricane Deductible are misplaced.  This endorsement simply reduced the deductible that would normally be applicable from a percentage of the value of the house to a flat $1000.00.  It does not create independent coverage.  However, because of the ambiguity in the Water Damage Exclusion as previously discussed in *Vanderbrook, Xavier and Chehardy*, the Court finds it will grant the motion for partial summary judgment as the Water Damage Exclusion is ambiguous and must be construed against the insurer, and thus provides coverage for the insured herein.  In so finding the Court reiterates and incorporates the *Vanderbrook* opinion above, in particular sections,

IV.     Legal Concepts for Contract Interpretation;

VI.     Parties' Contentions;

VII.    Definitions and Usage of the Word "Flood" Demonstrate Two Reasonable Interpretations of the Term;

VIII.   Jurisprudence Further Demonstrates Reasonableness of Alternative Interpretations;

IX.     Application of Legal Principles to the Policies Before the Court; and

       A.     ISO Water Damage Exclusion.

Accordingly,

       **IT IS ORDERED** that the Plaintiff's Motion for Partial Summary Judgment is **GRANTED** insofar as there is coverage as a result of the ambiguity in the Water Damage Exclusion and **DENIED** with respect to the Hurricane Deductible argument.

**CERTIFICATION FOR APPEAL**

84

Pursuant to 28 U.S.C. § 1292(b), all orders entered herein involve a controlling question of law as to which there is a substantial ground for a difference of opinion and an immediate appeal from these orders may materially advance the ultimate termination of the litigation.  In accordance with 28 U.S.C. § 1292(b), an application for appeal must be made to the Court of Appeals within ten days after the entry of this order.

The Court notes that if it had the power under Rule XII of the Rules of the Louisiana Supreme Court to certify the issues decided herein to that court, it would have done so, since there are no clear controlling precedents of the Louisiana Supreme Court on same and the issues presented and decided herein are significant and require an application of Louisiana law.

New Orleans, Louisiana, this  27th  day of November, 2006.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE