duplantier@gjtbs.com
kking@gjtbs.com
lduplass@duplass.com
caccardo@duplass.com
sdeblieux@duplass.com
mduran@oatshudson.com
dldysart@dst-law.com
angeliquew@dst-law.com
ecagan@joneswalker.com
psenentz@joneswalker.com
beckert@ungarino-eckert.com
wandaedwards@fayardlaw.com
felliot@rgelaw.com
lhartley@rgelaw.com
elliotts@bernard-cassisa.com
jellison@andersonkill.com
glite@andersonkill.com
mtodd@andersonkill.com
jfe@ecwko.com
crb@ecwko.com
wrwjv@aol.com
bemory@mblb.com
smethe@mblb.com
nenglish@gordonarata.com
wdorsey@gordonarata.com
jesnard@dkslaw.com
jke@rodneylaw.com
jke57@bellsouth.net
rexnicios@damicolaw.net
afannin@stonepigman.com
crfarrell@jonesday.com
calvinfayard@fayardlaw.com
donna@fayardlaw.com
sfinn@barrassousdin.com
tess.finnegan@usdoj.gov
catherine.corlies@usdoj.gov
dfischman@shergarner.com
jhubert@shergarner.com
stephen.flynn@usdoj.gov
torts.aa.files@usdoj.gov
John.Fontenot@arlaw.com
Bridget.Chandler@arlaw.com
jfoote@chopin.com
southall@ag.state.la.us

mlfrisch@bellsouth.net
jspellman1@bellsouth.net
lnfrisch@aol.com
nfroeschle@hunton.com
cfrosch@usryandweeks.com
cefrosch2@hotmail.com
mdelcastillo@usryandweeks.com
sam@lcgllaw.com
cgranger@lundydavis.com
ggambel@mrsnola.com
shotard@mrsnola.com
wgambel@millinglaw.com
mshrell@millinglaw.com
barrere@millinglaw.com
cgarbett@klb-law.com
dburleigh@klb-law.com
gardner@bayoulaw.com
aadams@bayoulaw.com
tgarmon@lawla.com
mspadoni@lawla.com
jgarner@shergarner.com
jchocheles@shergarner.com
mgarner@shergarner.com
beauxroux@aol.com
Lirette@bellsouth.net
sgaspard@burglass.com
jgasquet3@bellsouth.net
tgaudry@grhg.net
dbreaux@grhg.net
firm@grhg.net
kgelpi@monbar.com
lquintana@monbar.com
ymaranto@monbar.com
lgertler@ggvplaw.com
kagnelly@ggvplaw.com
mhgertler@ggvplaw.com
emaynard@ggvplaw.com
dgianna@midrid.com
cbarbier@midrid.com
dabraham@midrid.com
ngilbert@kcwlaw.com
gillyg@phelps.com
dunnk@phelps.com
tgirardi@girar_dikeese.com

sgisleson@hhkc.com
emartin@hhkc.com
glazerp@ag.state.la.us
kellerm@ag.state.la.us
pearleyj@ag.state.la.us
pennm@ag.state.la.us
sgoldman@rc.com
akowalsky@rc.com
gonzalep@phelps.com
bradfors@phelps.com
pabsgonzalez@hotmail.com
wynnegouxlobello@bellsouth.net
ggrant@monbar.com
lquintana@monbar.com
ymaranto@monbar.com
agreene@sonnenschein.com
pgregory@cpsmlaw.com
jimguest@bellsouth.net
jguichet@lawla.com
aboyd@lawla.com
khadican@gainsben.com
cbabin@gainsben.com
jim@jimshall.com
debbie@jimshall.com
jodi@jimshall.com
kerry@jimshall.com
wmh@haileymcnamara.com
ehangartner@midrid.com
mhanna@mcsalaw.com
ozg@mcsalaw.com
lharris@stonepigman.com
sgothard@stonepigman.com
randall@broussard-hart.com
rgharvey@bellsouth.net
Jhassinger@gjtbs.com
thassinger@gjtbs.com
awebster@gjtbs.com
bhawkins@barrassousdin.com
mowens@barrassousdin.com
arod@odwyerlaw.com
chellmers@frilotpartridge.com
hhoffmann@spsr-law.com
calcantar@spsr-law.com
homzab@cykg.com

cartere@cykg.com
pooles@cykg.com
dbhoneycutt@fayardlaw.com
mindy@fayardlaw.com
rhubbard@lawla.com
ljackson@lawla.com
lhudson@shergarner.com
khellyer@shergarner.com
mhudson@oatshudson.com
kellzey@oatshudson.com
thuval@hvfa-law.com
dimpastato@gmail.com
jspellman1@bellsouth.net
dollyno@aol.com
tkjacobson@aol.com
mrosinia@hotmail.com
johnsona@phelps.com
davisj@phelps.com
cjones@kcwlaw.com
sjudice@kcwlaw.com
meda-kay@kcwlaw.com
stacie@kcwlaw.com
kevink@sonnenschein.com
hkaplan@bernard-cassisa.com
bkatz@hhkc.com
bjackson@hhkc.com
dkavanagh@wkrlaw.com
pgkchoejr@kehoejr.com
akeller@bakerdonelson.com
lhook@bakerdonelson.com
kellerm@ag.state.la.us
babins@ag.state.la.us
glazerp@ag.state.la.us
pearleyj@ag.state.la.us
pennm@ag.state.la.us
philibertj@ag.state.la.us
dkelley@winston.com
jrk@ecwko.com
kcb@ecwko.com
rkerrigan@dkslaw.com
rek@dkslaw.com
rbrowne@dkslaw.com
rkessenich@daiglefisse.com
dlebreton@daiglefisse.com

rking@gjtbs.com
aditcharo@gjtbs.com
kkirsch@mcsalaw.com
lbarnes@mcsalaw.com
tbrady@mcsalaw.com
rkitto@monbar.com
njohnson@monbar.com
rknights@ggvplaw.com
kagnelly@ggvplaw.com
tknister@gordonarata.com
ccooper@gordonarata.com
lkohler@lawla.com
bkramer@crowell.com
sskreller@gmail.com
alex.kriegsman@usdoj.gov
efile_nrs.enrd@usdoj.gov
ajl@mcsalaw.com
hlambert@lambertandnelson.com
alexis@lambertandnelson.com
klambert@bakerdonelson.com
mrich@bakerdonelson.com
psigmon@bakerdonelson.com
jlandis@stonepigman.com
pkrupicka@stonepigman.com
klandry@ieyoublandry.com
kathilandry@aol.com
mlandry@landryswarr.com
lslaw@landryswarr.com
wlanglois@grhg.net
ptranchina@grhg.net
llarson@klb-law.com
spond@klb-law.com
blarzelere@lpw-law.com
tdejean@lpw-law.com
laskyk@phelps.com
battagld@phelps.com
tleblanc@lundydavis.com
jdibbley@lundydavis.com
jel@pkrlaw.com
lvw@pkrlaw.com
smt@pkrlaw.com
wlee@stonepigman.com
pwhite@stonepigman.com
dlichtl@frc-law.com

cnunez@frc-law.com
sbm@frc-law.com
elilly@cclhlaw.com
lross@cclhlaw.com
lirette@bellsouth.net
jlonero@lpw-law.com
bsimpson@lpw-law.com
rromeu@lpw-law.com
dlongman@pdlaw.com
kfulton@pdlaw.com
hlonian@stonepigman.com
dmurphy@stonepigman.com
blyons@cpsmlaw.com
gtmanning@jonesday.com
federal@geraldmaples.com
ldemos@femapleslaw.com
belhiamartin@bellsouth.net
martin@mdjwlaw.com
lindaa@mdjwlaw.com
rmmjr@cox.net
tlm@lcba-law.com
amassey@klb-law.com
aalmaaita@klb-law.com
pmatthews@usryandweeks.com
frm_matthews@yahoo.com
mdelcastillo@usryandweeks.com
bmayeaux@ln-law.com
denisen@ln-law.com
mmcalpine@mpc-law.com
sfury@mpc-law.com
mccall@chaffe.com
connors@chaffe.com
jim.mcconnon@usdoj.gov
catherine.corlies@usdoj.gov
gmcdonald@bfrob.com
kbutler@bfrob.com
mceachine@bernard-cassisa.com
jmcevoy@jonesday.com
gmckernan@mckernanlawfirm.com
hbarousse@mckernanlawfirm.com
jemckernan@mckernanlawfirm.com
hkeller@mckernanlawfirm.com
mcleodm@phelps.com
weyerp@phelps.com

G:\22910\Correspondence\Atty.All.01.wpd

mcmahonr@bernard-cassisa.com
blanchp@bernard-cassisa.com
rambo1615@yahoo.com
thibodt@bernard-cassisa.com
dmcnutt@barrypiccione.com
sdixon@barrypiccione.com
anne_medo@haileymcnamara.com
laurie_sigur@haileymcnamara.com
emmamckinda@yahoo.com
cm@mpc-law.com
khf@mpc-law.com
ljohnson@mpc-law.com
jmelchiode@gjtbs.com
mwilson@gjtbs.com
jmm@lcba-law.com
ddc@lcba-law.com
dmartin@gainsben.com
gmeunier@gainsben.com
kara.k.miller@usdoj.gov
catherine.corlies@usdoj.gov
cmitchell@levinlaw.com
willm@ln-law.com
bmayet@ln-law.com
stevens.moore@usdoj.gov
rosanne.alford@usdoj.gov
sherrel.taylor@usdoj.gov
jeanpaulmorrell@hotmail.com
amouledoux@mblb.com
bpgus@aol.com
dhoerner@mblb.com
pvanmatre@mblb.com
smount@hmhlp.com
clandry@hmhlp.com
jamesmullaly1@hotmail.com
dbrown@cityofno.com
jbmullaly@cityofno.com
bmullin@spsr-law.com
lynnz@spsr-law.com
jwmumphrey@mumphreylaw.com
smitchell@mumphreylaw.com
hmurphy@dkslaw.com
mcazaubon@dkslaw.com
pmurphy@murphylfirm.com
jleblanc@murphylfirm.com

kelliboudreaux@hotmail.com
rmurphy@mrsnola.com
Spassauer@mrsnola.com
jmusser@bellsouth.net
naitsum@hotmail.com
treymustian@yahoo.com
agn@longlaw.com
dnelson@gibsondunn.com
jfortell@gibsondunn.com
jfnevares-law@microjuris.com
jnicoletti@nicolettihornig.com
wfennell@nicolettihornig.com
gjnielsen@aol.com
jnieset@phjlaw.com
tdonnell@phjlaw.com
mnoble@monbar.com
mokeefe@monbar.com
gjcookie45@AOL.com
movak@nicolettihornig.com
pod@oslaw.com
aowen@oslaw.com
arod@odwyerlaw.com
weo@theoneilgroup.com
avj@theoneilgroup.com
pakamdi@aol.com
franntown@yahoo.com
dovella@hmhlp.com
jkent@hmhlp.com
mpalmintier@dphf-law.com
dmoore@dphf-law.com
jamerson@dphf-law.com
jamesp@ln-law.com
leslies@ln-law.com
dpatin@hmhlp.com
mpelleteri@kfplaw.com
aseltzer@kfplaw.com
tkittrell@kfplaw.com
GMPendergastLLC@aol.com
limo1462@aol.com
tpennebaker@nielsenlawfirm.com
ahayno@nielsenlawfirm.com
aprince@nielsenlawfirm.com
tcpatnlf@aol.com
cpennison@lpw-law.com

lgauthreaux@lpw-law.com
fedcourtmail@rgplaw.com
fedcourtmail2@rgplaw.com
dpersons@haileymcnamara.com
mbrown@haileymcnamara.com
mpfister@duplass.com
gjackson@duplass.com
kkeller@duplass.com
dphayer@burglass.com
mphillips@frilotpartridge.com
kballard@frilotpartridge.com
fap@pkrlaw.com
mpipes@barrassousdin.com
shooker@barrassousdin.com
aplauche@pmpllp.com
aguder@pmpllp.com
ahuff@pmpllp.com
charrell@pmpllp.com
jordeneaux@pmpllp.com
pzanco@pmpllp.com
cpoche@pdlaw.com
pmichon@pdlaw.com
ppolitz@twpdlaw.com
mmarcello@twpdlaw.com
rsylvera@twpdlaw.com
mfp@ecwko.com
matthewpopp@msn.com
dranier@rgelaw.com
marnold@rgelaw.com
jrather@mcsalaw.com
Drauh@glllaw.com
joe@jimshall.com
debbie@jimshall.com
ajrebennack@cox.net
stephanie@rcaluda.com
rickreed@sszblaw.com
sreimoncnq@lawla.com
aboyd@lawla.com
GRENDEIRO@WKRLAW.COM
JBERGERON@WKRLAW.COM
drichard@dmrlaw.net
pkr@lcba-law.com
mbm@lcba-law.com
trichard@chopin.com

clunn@chopin.com
rdominick@chopin.com
trichardson@usryandweeks.com
srider@mcglinchey.com
mgambill@mcglinchey.com
mriess@kingsmillriess.com
rittenberg@rittenbergsamuel.com
bill.riviere@phelps.com
weyerp@phelps.com
jrobert@frc-law.com
tgallinghouse@frc-law.com
aroberts@lawla.com
mnguyen@lawla.com
whrobinson@gordonarata.com
gordonarata@yahoo.com
gordonarata@yahoo.com/om
smaone@gordonarata.com
RJR@rodneylaw.com
NBM@rodneylaw.com
srogge@barrassousdin.com
ROSENBEH@PHELPS.COM
jroussel@bakerdonelson.com
jimr@wrightroy.com
sandym@wrightroy.com
susant@wrightroy.com
crr@lcba-law.com
gjrusso@perretdoise.com
llandry@perretdoise.com
csalas@salaslaw.com
dsalley@shrmlaw.com
mmonsour@shrmlaw.com
jsandoz@daiglefisse.com
tbarrios@daiglefisse.com
DAVID@brunobrunolaw.com
florian@brunobrunolaw.com
jennifer@brunobrunolaw.com
sschmeeckle@lawla.com
mspadoni@lawla.com
mschultz@levinlaw.com
nscott@bakerdonelson.com
lhook@bakerdonelson.com
cseemann@dkslaw.com
clafaye@dkslaw.com
lawyer94@aol.com

cshofstahl@hvfa-law.com
dlang@hvfa-law.com
sharon.shutler@usdoj.gov
Torts.AA.Files@usdoj.gov
rsiegel@glllaw.com
jhale@glllaw.com
gsimno@swbno.org
dsimonton@sonnenschein.com
mrs@mcsalaw.com
kab@mcsalaw.com
mlt@mcsalaw.com
bslater@lemle.com
mmonfrey@lemle.com
psloss@mrsnola.com
jsmith@mckernanlawfirm.com
esimon@mckernanlawfirm.com
rasmith3@bellsouth.net
mmzornes@bellsouth.net
robin.doyle.smith@usdoj.gov
catherine.corlies@usdoj.gov
lgs@ecwko.com
saa@ecwko.com
spencer@chaffe.com
gaddy@chaffe.com
jspilman@hmhlp.com
jdanos@hmhlp.com
rvs127@juno.com
remy@ridgerunners.biz
attyecs@aol.com
cat1857@aol.com
vstilwell@dkslaw.com
dstrauss@klb-law.com
bcowand@klb-law.com
deborah@deborahsulzerlaw.com
fswarr@landryswarr.com
lslaw@landryswarr.com
patabary@dst-law.com
connies@dst-law.com
talbot@chaffe.com
maveaux@chaffe.com
ptalley@frilotpartridge.com
jtolar@frilotpartridge.com
ctankersley@burglass.com
ktheard@dkslaw.com

spacaccio@dkslaw.com
cthomas@gjtbs.com
cmussachia@gjtbs.com
vpthom1@bellsouth.net
lolivier@tonryandginart.com
rwest@tonryandginart.com
storres@torres-law.com
dhemelt@torres-law.com
rburns@torres-law.com
trainorg@phelps.com
chadtrammell@nixlawfirm.com
wtreas@nielsenlawfirm.com
sbillingsley@nielsenlawfirm.com
srogers@nielsenlawfirm.com
wtreeby@stonepigman.com
lshea@stonepigman.com
ctrieu@dcolvinlaw.com
slester@dcolvinlaw.com
rtyler@joneswalker.com
jcasella@joneswalker.com
mungarino@ungarino-eckert.com
john_unsworth@haileymcnamara.com
ltusa@haileymcnamara.com
rcurcuru@hmhlp.com
susdin@barrassousdin.com
shooker@barrassousdin.com
jvansteenis@daiglefisse.com
manderson@daiglefisse.com
regberk@yahoo.com
smv@theoneilgroup.com
avj@theoneilgroup.com
cmh@theoneilgroup.com
cmh@theoneilgroup.com
gvarga@rc.com
lgallucci@rc.com
wverret@barrypiccione.com
shvogt@bellsouth.net
smithsel@bellsouth.net
jean.michel.voltaire@usdoj.gov
jmv7182@hotmail.com
johnwalker@allengooch.com
wallj@phelps.com
dwalle@bfrob.com
jlindsey@bfrob.com

mwalshe@stonepigman.com
jwaters@bfrob.com
blawson@bfrob.com
BGWEEKS@AOL.COM
WKRLAW@AOL.COM
wjwegmann@aol.com
nancykhobbs@yahoo.com
nwehlen@stonepigman.com
lshea@stonepigman.com
aweinber@midrid.com
ebreaux@midrid.com
fweller210@aol.com
pwellons@twpdlaw.com
jellison@twpdlaw.com
mmarcello@twpdlaw.com
rsylvera@twpdlaw.com
marionwhite@bellsouth.net
wiedemannlaw@gmail.com
smwiles@fgmapleslaw.com
ltaylor@fgmapleslaw.com
kwilson@lawla.com
dfogg@lawla.com
lwilson@lawla.com
wimberly@nternet.com
dorisstein@nternet.com
swinkelman@crowell.com
jwise@frc-law.com
jrobert@frc-law.com
pzavoda@frc-law.com
sbm@frc-law.com
pwittmann@stonepigman.com
jchaillot@stonepigman.com
jweinstein@stonepigman.com
scott@wolfelaw.com
lillian@wolfelaw.com
jwolff@kcwlaw.com
cathy@kcwlaw.com
cjones@kcwlaw.com
robert.wood@phelps.com
woodr@phelps.com
jwoods@gainsben.com
bobw@wrightroy.com
darlenep@wrightroy.com
susant@wrightroy.com

wwright@dkslaw.com
mwyatt@nielsenlawfirm.com
snichols@nielsenlawfirm.com
srogers@nielsenlawfirm.com
wynnelawfirm@bellsouth.net
ajy@jjbylaw.com
dcc@jjbylaw.com
drutherford@jjbylaw.com
rspaysse@jjbylaw.com
gzwain@duplass.com
csilessi@duplass.com
pcobb@duplass.com
jdegravelles@dphf-law.com
jdegravelles@dphf-law.com

G:\22910\Correspondence\Atty.All.01.wpd

## PLEADINGS SENT BY U.S. MAIL TO:

Ms. Nicole M. Boyer
Duplass, Zwain, Bourgeois, Morton
Three Lakeway Center
3838 N. Causeway Blvd., Suite 2900
Metairie, LA 70002

Ms. Carole A. Breithoff (Weller)
2932 Lime Street
Metairie, LA 70006

Mr. Frederick J. Gisevius , Jr
Law Offices of Fred Gisevius
12 Metairie Court
Metairie, LA 70001

Ms. Laura Spansel Gravener
Barrasso Usdin Kupperman Freeman & Sarver, LLC
909 Poydras Street, Suite 1800
New Orleans, LA 70112

Mr. Joseph P. Lopinto , III
Lopinto Law Firm, L.L.C.
P. O. Box 246
Metairie, LA 70004

Mr. William J. Luscy , III
William Luscy, III, Attorney at Law
616 Papworth Avenue, Suite C
Metairie, LA 70005

G:\22910\Correspondence\Atty.All.01.wpd

PLEADINGS SENT BY FAX TO:

Susan E. Henning
Emmett, Cobb, Waits & Kessenich
1515 Poydras St.
Suite 1950
New Orleans, LA 70112
Fax: (504) 581-6020

Susie Morgan
Phelps Dunbar, LLP (New Orleans)
Canal Place
365 Canal St.
Suite 2000
New Orleans, LA 70130-6534
Fax: (504) 568-9130


Stephen Robert Rue
Stephen R. Rue & Associates
3309 Williams Blvd.
Kenner, LA 70005
Fax: (504) 443-5533

Richard Anthony Weigand
Weigand & Levenson
427 Gravier St., 1st Floor
New Orleans, LA 70130
Fax: (504) 525-3368

G:\22910\Correspondence\Atty.All.01.wpd

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES                CIVIL ACTION
CONSOLIDATED LITIGATION
                                            NO. 05-4182

PERTAINS TO INSURANCE                       SECTION "K"(2)
*Vanderbrook,* C.A. No. 05-6323
*Xavier University,* C.A. No. 06–516
*Chehardy,* C.A. No. 06-1672, 06-1673, and 06-1674

**and**

KELLY A. HUMPHREYS                          CIVIL ACTION

VERSUS                                      NO. 06-0169

ENCOMPASS INSURANCE COMPANY, ET AL.         SECTION K(2)
*****PRINT TO WEB*****

### ORDER

On September 19, 2006, *Berthelot, et al. v. Boh Bros. Construction, et al.,* C.A. No. 05-4182 was filed in the Eastern District of Louisiana. This case began the stream of complaints that have been filed as a result of damages arising out of all levee breaches which occurred in the aftermath of Hurricane Katrina.

*Berthelot* was transferred to the undersigned on February 23, 2006. (Doc. 47). It was subsequently determined by the *en banc* court of the Eastern District of Louisiana that in order to avoid conflicting decisions among the various sections of the Court, the proper approach would be to consolidate all such filings for purposes of pretrial discovery and motion practice. As such, what is now captioned "*In re: Katrina Canal Breaches Consolidated Litigation,*" C.A. No. 05-4182, has become the umbrella for all cases which concern damages caused by flooding as a result of breaches

EXHIBIT

*A*

or overtopping in the areas of the 17th Street Canal, the London Avenue Canal, the Industrial Canal, and the Mississippi Gulf River Outlet ("MRGO").

The following Orders and Reasons[1] are being entered in four individual cases which are part of the umbrella and all of which have as their centerpiece the issue of insurance coverage. Theses cases are:

*Vanderbrook, et al. v. State Farm Fire & Cas. Co., et al.* C.A. No. 05-6323;

*Xavier University of Louisiana v. Travelers Property Ca. Co. of America*, C.A. No. 06-516;

*Chehardy, et al. v. State Farm, et al.,* C.A. No. 06-1672, 06-1673, and 06-1674; and

*Humphreys v. Encompass Ins. Co.*, C. A. No. 06-169.[2]

Oral argument was conducted with respect to *Vanderbrook* on August 25, 2006, and with respect to *Xavier, Chehardy and Humphreys* on October 27, 2006. Based on the pleadings, memoranda, exhibits, arguments and the relevant law, the Court is prepared to rule on all the motions pending in all four cases.

**IT IS ORDERED** that this document shall be entered onto the docket of the *In re Katrina Canal Breaches Consolidated Litigation*, C.A. No. 05-4182 referencing all three of the cases noted above and *Humphreys* separately. The Court will begin with the *Vanderbrook* matter.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

[1]The document numbers referred to herein are those as entered in the Consolidated Matter unless otherwise noted; once a case is consolidated in the umbrella, any document filed is entered sequentially, regardless of the case to which it pertains.

[2]*Humphreys* was initially consolidated but at the request of the litigants it was terminated from the umbrella; however, in light of the inter-related nature of this case, the Court will include this case in this consolidated opinion.

2

**THIS ORDER PERTAINS SPECIFICALLY TO:**

*Vanderbrook, et al. v. State Farm Fire & Cas. Co., et al.* C.A. No. 05-6323;

## ORDER AND REASONS

Before the Court are the following motions filed in this matter:

| | |
|---|---|
| Doc. No. 568 | Motion for Judgment on the Pleadings filed by Hanover Ins. Co. ("Hanover") insurer of plaintiff James Capella and Madeline Grenier;[3] |
| Doc. No. 569 | Motion for Judgment on the Pleadings filed by Standard Fire Ins. Co. ("Standard") insurer of plaintiffs Peter Anthony Ascani, III, Gregory R. Jackson, and Monica Reyes; |
| Doc. No. 570 | Motion for Judgment on the Pleadings filed by State Farm Fire & Cas. Co. ("State Farm") insurer of Mary Jane Silva and Robert G. Harvey; |
| Doc. No. 572 | Motion to Dismiss Party filed by Hartford Ins. Co. of the Midwest ("Hartford") insurer of Jack Capella as the Executor of the Succession of Lillian Capella; |
| Doc. No. 598 | Motion for Judgment on the Pleadings filed by Unitrim Preferred Ins. Co. ("Unitrim") insurer of Richard Vanderbrook. |

These motions were brought in response to the class action suit brought by the "Vanderbrook" plaintiffs.

The instant petition was initially filed in Civil District Court for the Parish of Orleans on October 14, 2005. Plaintiffs filed suit seeking coverage for damages caused by the collapse of the 17th St. Canal floodwall and the ensuing water damage as well as claims against the Board of

---

[3] At oral argument on these motions, Hanover orally moved to include in its motion the claims of Madeline Grenier who had been misidentified as Sophia Granier as the insured. This motion was orally granted. Thus, the docket sheet as to this motion does not include her as the subject of the motion; however, the docket sheet should be so amended to reflect that the plaintiff Sophia Granier is actually Madeline Grenier and **IT IS SO ORDERED**. At the time of the hearing, the relevant policy of insurance was introduced and filed into the record.

Additionally, certain of the Defendants are improperly named. The Standard Fire Insurance Company ("Standard Fire") is improperly named as Travelers Insurance Company and St. Paul Travelers Insurance Company. Hartford Insurance Company of the Midwest ("Hartford") is improperly named as Hartford Insurance Company. Unitrin Preferred Insurance Company ("Unitrin") is improperly named as Kemper Insurance Company.

Commissioners for the Orleans Levee District ("OLD") for its alleged negligence. Defendants removed the case to this Court on December 2, 2005. On June 1, 2006, the Court severed the claims brought against OLD from those filed against the insurers and finding no basis for jurisdiction over OLD, remanded those claims to Civil District Court. The Court retained diversity jurisdiction over the remaining insurers.

Five different policies of insurance are involved in this case–all Homeowners/All Risk policies. Oral argument was conducted on August 25, 2006, and supplemental briefing ordered thereafter. Having reviewed the complaint, memoranda, exhibits, briefing, and the relevant law, the Court is now prepared to deliver its opinion.

It cannot be gainsaid that in approaching these motions, which are the first in a daunting line of litigation concerning insurance coverage for the losses caused by the canal breaches in New Orleans, the potential impact of such a decision on individuals as well as the insurance industry might be considered overwhelming. However, the Court believes that it is its duty to approach its analysis in a straightforward, judicious manner--that is analyzing the contractual disputes between an individual policy holder and the relevant insurer, sitting as an *Erie* court, using the civilian approach of a Louisiana court, applying the Louisiana Civil Code and seeking guidance from the jurisprudence of the state.

## I.      Civilian Approach as an *Erie* Court

This Court will apply Louisiana law in an attempt to rule as a Louisiana court would if presented with the same issues. *Musser Davis Land Co. v. Union Pacific Resources,* 201 F.3d 561,

565 (5th Cir.2000), *citing Erie R. Co. v. Tompkins,* 304 U.S. 64, 79-80, 58 S.Ct. 817, 82 L.Ed. 1188

(1938); *Mozeke v. Int'l Paper Co.,* 856 F.2d 722, 724 (5th Cir.1988). As stated in *Musser:*

> To determine a state law question, we first look to decisions of the Louisiana
> Supreme Court. *See Transcontinental Gas v. Transportation Ins. Co.,* 953 F.2d 985,
> 988 (5th Cir.1992). If the Louisiana Supreme Court has not spoken on the issue, it
> is our duty to determine as best we can what that court would decide. *See id.; Hulin
> v. Fibreboard Corp.,* 178 F.3d 316, 318-19 (5th Cir.1999).

> Under Louisiana's Civil Law tradition, courts look first and foremost to statutory law.
> The Louisiana Civil Code instructs that "[sources of law are legislation and
> custom,]" and that "[l]legislation is a solemn expression of legislative will." "[T]he
> primary basis of law for a civilian is legislation, and not (as in the common law) a
> great body of tradition in the form of prior decisions of the courts." The concept of
> *stare decisis* is foreign to the Civil Law, including Louisiana. Therefore, in cases
> such as this we are guided by decisions rendered by the Louisiana appellate courts,
> particularly when numerous decisions are in accord on a given issue-the so-called
> *jurisprudence constant-*but we are not strictly bound by them.

*Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.,* 953 F.2d 985, 988 (5th Cir.1992)

(footnotes omitted). Thus, the Louisiana Civil Code provides the primary source and framework by

which this Court must review the these contracts. With this in mind, the Court will first examine

the allegations made by the plaintiffs.


## II.     The Petition and Issue Presented

Plaintiffs each own a home in New Orleans which is insured by one of the defendants and

which suffered substantial water damage at the time of Hurricane Katrina. (Petition, ¶ 7.) They

allege that "[s]ometime between 10:00 and 11:00 a.m. on August 29, 2005, before the full force of

[Hurricane Katrina] reached the City of New Orleans, a small section of the concrete outfall canal

wall known as the 17th Street Canal, suddenly broke, causing water to enter the streets of the City

of New Orleans and homes of Petitioners," which damaged Plaintiffs' homes. (Id., ¶ 3.) Plaintiffs contend that "said water damage inflicted on the Petitioners' homes and property was not the result of flood, surface water, waves, title [sic] water, tsunami, seiche, overflow of a body of water, seepage under or over the outfall canal wall or spray from any of the above but was water intrusion, caused simply from a broken levee wall." (Id., ¶ 4 (emphasis added).)  Plaintiffs claim that defendants improperly failed to pay for the water damage to their homes because it is not an excluded loss. (Id., ¶ 10.) Plaintiffs also contend that the water damage exclusions in the policies are unconscionable and void. (Id., ¶ 11.)

Plaintiffs further allege, separately, that the Levee Board "breached their duty to Petitioners by failing to correct the break [in the canal wall] or warn others including Petitioners of the impending water intrusion . . . ." (Id., ¶ 6.)  As noted, these allegations have been severed and remanded to state court.

Plaintiffs contend that because Louisiana employs the "efficient proximate cause doctrine" with respect to coverage and because the third-party negligence of Orleans Levee District is the efficient, proximate cause of the subsequent flooding of plaintiffs' homes, their Homeowners Policies should provide coverage. The defendants maintain that under the clear, unambiguous terms of the policies at issue, they are entitled to judgment as a matter of law.


## III.  Standard for Judgment on the Pleadings

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge.  The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "'a complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief.'"  *Id. citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

The Fifth Circuit explained:

> Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliott v. Foufas,* 867 F.2d 877, 880 (5ᵗʰ Cir. 1989). Further, "the plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities, Inc.* 94 F.3d 189, 194 (5ᵗʰ Cir. 1996). This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim. *Hitt,* 561 F.2d at 608. In other words, a motion to dismiss an action for failure to state a claim"admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1137 (5ᵗʰ Cir. 1992). Finally, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory. *Cinel v. Connick,* 15 F.3d 1338, 1341 (5ᵗʰ Cir. 1994).

*Id.* at 161-62. Bearing this standard in mind, the court will examine the civilian rules of construction

to aid it in its determination of the viability of defendants' motions.


## IV. Legal Concepts for Contract Interpretation

### A.    Insurance Policy is a Contract and Rules of Construction

"An insurance policy is a conventional obligation that constitutes the law between the

insured and insurer, and the agreement governs the nature of their relationship." La. Civ. Code art.

1983; *Edwards v. Daugherty,* 883 So.2d 932, 940 (La. 2004); *Peterson v. Schimek,* 729 So.2d 1024,

1028 (La. 1999). As such, the general rules of contract interpretation as set forth in the Louisiana

Civil Code guide the Court in interpreting the subject insurance policies. *Peterson,* 729 So.2d at

1028. "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of

the parties to the contract. *See* La. Civ. Code art. 2045; *Carbon* [*v. Allstate Ins. Co.,* 97-3085, p. 4 (La. 10/20/98, 719 So. 2d 437, 439]; *Louisiana Ins.* [*Guar. Ass'n v. Interstate Fire & Cas. Co.* 03-0911, p. 5 (La. 1/14/94)], 630 So.2d 759, 763." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577 (La. 2003).

In *Cadwallader*, the Supreme Court of the State of Louisiana set forth succinctly the most important guiding principles:

> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *See* La. Civ Code art. 2047; *Peterson v. Schimek,* 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1028-29; *Carbon,* 719 So.2d at 440-441; *Reynolds,* 634 So.2d at 1183. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. *Carrier v. Reliance Ins. Co.,* 99-2573, p. 11 (La.4/11/00), 759 So.2d 37, 43; *Peterson,* 729 So.2d at 1029. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. *Succession of Fannaly v. Lafayette Ins. Co.,* 01-1355, p. 4 (La.1/15/02), 805 So.2d 1134, 1138; *Peterson,* 729 So.2d at 1029.
>
> . . .
>
> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Fannaly,* 805 So.2d at 1137; *Louisiana Ins.,* 630 So.2d at 764. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Peterson,* 729 So.2d at 1029; *Louisiana Ins.,* 630 So.2d at 764. The determination of whether a contract is clear or ambiguous is a question of law. *Louisiana Ins.,* 630 So.2d at 764.

*Cadwallader,* 848 So.2d at 580 (coverage provided by UM policy for resident relative in household did not include foster children). In addition, an insurance contract "is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given

8

meaning.   One portion of the policy should not be construed separately at the expense of disregarding other provisions." La. Civ. Code art. 2050. *Peterson*, 729 So.2d at 1029.

**B.     All-Risks Liability Insurance: Coverage, Exclusions and Ambiguities**

A Homeowners Policy is considered a type of "all-risks" insurance. " All-risks insurance is a special type of insurance extending to risks not usually contemplated, and generally allows recovery for all fortuitous losses, unless the policy contains a specific exclusion expressly excluding the loss from coverage." Jane Massey Draper, "Coverage Under All-Risk Insurance", 30 A.L.R.5th 170. The United States Court of Appeals for the Fifth Circuit acknowledged this concept stating, "[a] policy of insurance insuring against 'all risks' creates a special type of coverage that extends to risks not usually covered under other insurance; recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Alton Ochsner Medical Foundation v. Allendale Mut. Ins.*, 219 F.3d 501, 504 (5th Cir. 2000), *citing U.S. Indus., Inc. v. Aetna Cas. & Sur. Co.,* 690 F.2d 459, 461 (5th Cir.1982) (construing Louisiana law and citing *Dow Chem. Co. v. Royal Indem. Co.,* 635 F.2d 379, 387 (5th Cir.1981) (construing Texas law)).

Thus, in the context of the instant motions, under Louisiana law, unless there is a specific exclusion for the type of water damage that an insured has incurred, coverage is presumed under these policies. The focus of a court's inquiry then is on the relevant exclusions to coverage. "When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. . . . On the other hand, the insurer bears the

9

burden of proving the applicability of an exclusionary clause within a policy." *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000).

With respect to the proper approach concerning the interpretation of an exclusion, they are generally strictly construed. *Bezue v. Hartford Accident and Indem. Co.*, 224 So.2d 76, 77 (La. App. 1st Cir. 1969). *Cadwallader* further amplifies this concept:

> Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. La. Civ. Code art. 2056; *Carrier,* 759 So.2d at 43; *Louisiana Ins.,* 630 So.2d at 764. Under this rule of strict construction, **equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer.** *Carrier,* 759 So.2d at 43.

*Cadwallader*, 848 So.2d at 580 (emphasis added). This rule of interpretation is based on the fact that these provisions are prepared by the insurer, and the insured had no voice in the preparation. *Louisiana Ins.,* 630 So.2d at 764. This type of contract is commonly referred to as a contract of adhesion. Article 2056 states, "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." La. Civ. Code art. 2056; *see Louisiana Ins. Guar. Assoc.,* 630 So.2d at 764 *citing* 15 *Civil Law Treatise, Insurance Law and Practice* § 4 (1986) and W. Freedman, 2 *Richards on the Law of Insurance* § 11:2[f] (6th Ed. 1990) ("*Richards*"). "That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable." *Cadwallader*, 848 So. 2d at 580 *citing Carrier,* 759 So.2d at 43-44. (emphasis in original) and *Louisiana Ins. Guar. Assoc.,* 630 So.2d at 770.

The Supreme Court of Louisiana gave further instruction with respect to the interpretation

of an ambiguity in *Louisiana Ins. Guar. Assoc.* stating:

> "Ambiguity will also be resolved by ascertaining how a reasonable insurance policy
> purchaser would construe the clause at the time the insurance contract was entered."
> *Breland v. Schilling,* 550 So.2d 609, 610-11 (La.1989). The court should construe
> the policy "to fulfill the reasonable expectations of the parties in the light of the
> customs and usages of the industry." *Trinity Industries,* 916 F.2d at 269 (5th
> Cir.1990) (citing *Benton,* 379 So.2d at 231 and LSA-C.C. Arts. 2045, 2050, 2053 and
> 2054). In insurance parlance, this is labelled the reasonable expectations doctrine.
> *Richards, supra* at § 11:2[g].

*Louisiana Ins. Guar. Assoc.,* 630 So.2d at 764.   The Louisiana Supreme Court then noted in a

footnote:

> "The reasonable expectations doctrine can be capsulized as follows: "courts will
> protect the [insured's] reasonable expectations . . . regarding the coverage afforded
> by insurance contracts even though a careful examination of the policy provisions
> indicates that such expectations are contrary to the expressed intention of the
> insurer." R. Keeton and A. Widiss, *Insurance Law* § 6.13 (1988).

*Id.* at n. 19.   Thus, if after applying the other general rules of construction, an ambiguity remains,

the ambiguous contractual provision is to be construed against the insurer who furnished the policy's

text and in favor of the insured finding coverage.  La. Civ. Code art. 2056.  *Peterson,* 729 So. 2d

at 1029.  "It is the reasonable interpretation of an insured that governs the legal effect of language

in an insurance contract, and not whether the language chosen by an insurer may constitute a legal

term of art in another context." *Lee v. Unum Life Ins. Co. of America,* 900 So.2d 1021, 1029 (La.

App. 4th Cir. 2005).


## C. Exclusions and Canons of Construction

The Louisiana Supreme Court in interpreting an exclusion to coverage in the context of a

company's public liability insurance stated:

11

> The exclusion clause must necessarily be examined and interpreted in the light of its own design and intent, as well as in view of the objects and purposes of the policy. Once coverage has been extended, as it is quite clearly the purpose of the policy to do and as has been done here, it should be withdrawn only when exclusion is established with certainty. And because comprehensive exclusion is violative of the purpose and intent of policy coverage, exclusion must necessarily be specific and not general. It is specific, as distinguished from comprehensive, when it particularly identifies the insured or insureds intended to be excluded. The exclusion clause, as its name implies, sets forth the traits, characteristics and circumstances that mark an insured for exclusion. And the insured or insureds to be excluded must bear the marks and traits, or conform with the circumstances, described and particularized in the exclusion clause as the basis for exclusion.'

*Pullen v. Employers' Liability Assur. Corp.,* 89 So.2d 373, 377 (La. 1956).

Indeed, in *Anderson v. Indiana Lumbermens Mut. Ins. Co.*, 127 So.2d 304 (La. App. 2nd Cir. 1961), a Louisiana appellate court dealt with a claim made on homeowner policy where "collapse" was a covered peril and there was an exclusion which provided that the insurer would not be liable "for loss caused directly or indirectly by earthquake, **or other earth movements** except landslides." *Id.* at 304 (emphasis added). In the home in question, a crack had appeared in the wall of the house and since that time, the crack had become larger, extending into the ceiling of the living room and cracks had appeared in the walls, at every window and door in the house. The door frames were out of square and the foundation was broken, cracked, fallen and uneven. It was alleged in that case that the cause of damage to the home was (1) the expansion and contraction of the soil which had caused (2) the cracking, breaking and falling of the concrete slab (3) combined with the falling cracking, breaking and unequal settlement of the building (4) thus impairing the basic structural integrity of the building. The insurer maintained that the damage to the house did not constitute a "collapse" and that even if it did, it was excluded as it was caused by "other earth movements."

The appellate court noted that there was no precedent for an interpretation of "collapse" in Louisiana and noted that there were four cases rendered outside of Louisiana where the evidence

12

did not indicate the structure had completely fallen down or caved in–two finding coverage and two

denying coverage based on this exclusion.

The court, after discussing the guidance provided by the Civil Code in determining the

construction of the word "collapse", noted:

> LSA-Civil Code, art. 1955 providing that 'all clauses of agreements are interpreted
> the one by the other, giving to each the sense that results from the entire act' appears
> to be a statement of the 'ejusdem generis' rule of construction, concerning which
> Black's Law Dictionary states:
>
>> 'In the construction of laws, wills, and other instruments, the
>> 'ejusdem generis rule' is, that where general words follow an
>> enumeration of persons or things, by words of a particular and
>> specific meaning, such general words are not to be construed in their
>> widest extent, but are to be held as applying only to persons or things
>> of the same general kind or class as those specifically mentioned.
>> Black, Interp. of Laws, 141; Goldsmith v. U.S., C.C.A.N.Y., 42 F.2d
>> 133, 137; Aleksich v. Industrial Accident Fund, 116 Mont. 69 (127),
>> 151 P.2d 1016, 1021. The rule, however, does not necessarily require
>> that the general provision be limited in its scope to the identical
>> things specifically named. Nor does it apply when the context
>> manifests a contrary intention.
>> 'The maxim 'ejusdem generis', is only an illustration of the broader
>> maxim, 'noscitur a sociis'. State v. Western Union Telegraph Co., 196
>> Ala. 570, 72 So. 99, 100.'
>
> And, in defining the phrase, 'noscitur a sociis', as used in the aforesaid definition the
> following explanation and definition are given:
>
>> 'It is known from its associates, 1 Vent. 225. The meaning of a word
>> is or may be known from the accompanying words. 3 Term R. 87;
>> Broom, Max. 588. Morecock v. Hood, 202 N.C. 321, 162 S.E. 730,
>> 731; Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co. of
>> Maryland, 223 Ala. 385, 136 So. 800, 801.
>> 'The doctrine means that general and specific words are associated
>> with and take color from each other, restricting general words to
>> sense analogous to less general. Dunham v. State, 140 Fla. 754, 192
>> So. 324, 325, 326.'

*Anderson*, 127 So.2d 306-07; *but see, Nida v. State Farm Fire & Cas. Co.*, 454 So.2d 328 (La. App.

3rd Cir. 1984) (insurance definition of "collapse" in policy at issue revised to deny coverage for

losses against settling). The *Anderson* court eventually found that the insurance at issue therein provided coverage finding that "collapse" would not be given an "abstract, narrow construction." Citing to *Jenkins v. United States Fire Ins. Co.*, 185 Kan. 665, 347 P.2d 417 (Kan. 1959), the court noted that construing on the basis of intention, it would be understood that if the settling, falling, cracking bulging or breaking of the insured building so materially impaired the basic structure, that it would be considered a "collapse." Thus, the Court in interpreting the **risk insured** employed the **expansive** definition.

The court then found that the **exclusion** was to be **narrowly construed** relying on *Pullen.* It found that "other earth movements" is entirely "too general to have application to any degree of certainty" to the causation of the "collapse" of the subject building as the cause of damage would embrace "the same general kind, class or nature of peril as its companion words 'earthquake' and 'landslide.'" *Anderson*, 127 So.2d at 308-09. As such, the concept of the "specific controls the general" was used to find the exclusion limited a more violent earth movement—not just the natural expansion and contraction of the soil that had allegedly caused the damage for which coverage was sought. *See also, Smith v. Burton*, 928 So.2d 74, 79 (La. App. 1ˢᵗ Cir. 2005); *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil* Corp., 289 F.3d 373, 377 (5ᵗʰ Cir. 2002); *Sommers v. State Farm Fire and Cas. Co.*, 764 So.2d 87, 91 (La. App. 4ᵗʰ Cir. 2000) (where general terms precede specific terms, principle is the same: general terms should be construed to encompass things similar or analogous to those in the specific terms). With these precepts in mind the Court will now turn to the specific water damage exclusions at issued before the Court.

## V.    Insuring Language and Exclusions of the Policies at Issue

### a. ISO Policies

The "ISO policies"[4] issued by Standard Fire, Hartford, Hanover and Unitrin, all contain

identical language. As to the coverage provided, each policy states:

> COVERAGE A - DWELLING and COVERAGE B- OTHER STRUCTURES:
> We insure against risk of direct loss to property described in Coverages A and B
> only if that loss is a physical loss to property.

(Standard Fire Policies, App. at INS 94 and INS 134; Hartford Policy, App. at INS 53; Hanover

Policy, App. at INS 7; Unitrin Policy, App. at INS 169.)[5]      Following the coverage provision, this

exclusion appears:

> (1)    We do not insure for loss **caused directly or indirectly by any of the
> following.** Such loss is excluded regardless of any other cause or event
> contributing concurrently or in any sequence to the loss.[6]
>        . . .
> **(c) Water Damage**, meaning:
>             Flood, surface water, waves, tidal water, overflow of a body of water,
>             or spray from any of these, whether or not driven by wind;

(Standard Fire Policies, App. at INS 96 and INS 136; Hartford Policy, App. at INS 56; Hanover

Policy, App. at INS 9; Unitrin Policy, App. at INS 171.)  "Flood" is not defined anywhere in the

policy. this exclusion will be referred to as the ISO exclusion.

---

[4]"ISO" is an acronym for "Insurance Service Office, Inc." which provides products and services help to the insurance industry to measure, manage and reduce risk. It provides standardized insurance policy language such as the policies noted herein. *See,* ISO Homepage at www.iso.com.

[5]These citations refer to the appendix filed in conjunction with the Motion for Judgment on the Pleadings filed by Hanover Ins. Co. (Doc. No. 568) that was used as a joint exhibit containing all of the insurance policies at issue herein.

[6]This provision is generally referred to as an "anti-concurrent cause clause." Its genesis was the result of court decisions utilizing the "concurrent causation doctrine". Under this doctrine, the insurer is obligated to pay for damages resulting from a combination of covered and excluded perils if the efficient proximate cause is a covered peril. To counteract these decisions, insurers began employing the anti-concurrent cause clause to exclude losses if caused in whole or in part, in any sequence of events by an excluded peril. Stephen P. Pate, *Recent Developments in Property Insurance Law,* 33 Tort & Ins. L.J. 659, 663 (1998).

### b. State Farm Policy with "Lead-In" Provision

The State Farm policies note at the outset that "We insure for accidental direct physical loss

to the property described in Coverage A, except as provided in SECTION I-LOSSES NOT

INSURED." They then provide:

SECTION I -LOSSES INSURED
Coverage A-Dwelling
We insure for accidental direct physical loss to the property described in Coverage A, except
as provided in Section I–LOSSES NO INSURED.

SECTION I - LOSSES NOT INSURED

2.      We do not insure under any coverage for loss which would not have occurred in the
absence of one or more of the following excluded events. We do not insure for such loss
regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c)
whether other causes acted concurrently or in any sequence with the excluded event to
produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or
widespread damage, arises from natural or external forces, or occurs as a result of any
combination of these:[7]

c.      (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from
any of these all whether driven by wind or not;

(Doc. 570, Exhibit A and B, pp. 7 and 10).

### C. Hartford Policy's specific Flood Definition

Of all of these policies, only Hartford includes an "Amendatory Endorsement Specifically

Excepted Perils." (Form H-380). This two page provision provides in relevant part:

As used herein, Peril means a cause of physical loss or damage to property. It has this
meaning whether or not it is called a Peril or a Cause of Loss in this policy.

Even if any of the terms of this policy might be construed otherwise, the following Perils, as
described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS
POLICY. WE DO NOT COVER INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR
INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED
BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:

---

[7]This subsection is known as the "lead-in" provision.

16

A. ACTS, ERRORS OR OMISSIONS

. . .

3.    The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:

b.    Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; . . .

5.    The maintenance of any of such property or facilities.

. . .

This exception A. applies whether or not the property or facilities described above are:

1.    Covered under this policy; or

2.    On or away from the covered premises.

This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.

As used in this endorsement:

1.    If this policy is written to cover the risk of loss from specifically named causes, **Covered Peril** means any Peril specifically named as covered;

2.    If written to cover the risk of loss without specifying specifically named causes, Covered peril means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

B.    COLLAPSE CRACKING OR SHIFTING of buildings, other structures or facilities, or their parts, if the collapse, cracking or shifting:

1.    Occurs during earth movement, volcanic eruption or flood conditions or within 72 hours after they cease; and

2.    Would not have occurred but for earth movement, volcanic eruption, or flood.

But if loss or damage by a Covered Peril ensues at the covered premises, we will pay for that ensuing loss or damage.

This exception B. applies whether or not there are other provisions in this policy relating to collapse, cracking or shifting of buildings, other structures or facilities, or their parts. Any such provision is revised by this endorsement to include this exception.

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more of the following Perils:

...

2. Flood:

this exception B. will not reduce that coverage.

As used in this exception B:

17

. . .

6.      flood means:

      a.      Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;

      b.      Release of water held by a dam, levy (sic) or dike or by a water or flood control device; . . .

All other provisions of this policy apply.

(Doc. 568, Hartford Policy, App. at INS 74-75). Thus, Hartford's Amendatory Endorsement Specifically Excepted Perils defines the term "flood" and specifically includes the release of water held by a levee or a flood control device.

## VI.    Parties' Contentions

Defendants[8] contend that all water damage caused by the canal breach is excluded from coverage as these policies exclude coverage for water damage resulting from a "flood" and that clearly the inundation of the City of New Orleans caused by the failure of its levees was a "flood." Seeking the broadest possible definition of the term, defendants maintain that "flood" is not limited to natural events. For this proposition they maintain that under Louisiana law, a court is "required to interpret the term using its plain, ordinary and generally prevailing meaning" and should not enlarge insurance coverage beyond that which is reasonably contemplated." *Cadwallader*, 848 So.2d at 583-84.

Defendants rely on *Kane v. Roby Ins. Co.*, 768 P.2d 678, 681 (Colo. 1989) for this proposition. In *Kane*, plaintiffs' property had been damaged by a flood caused by a dam failure.

---

[8]The Court would note that while a consolidated memorandum was filed on behalf of the insurers as instructed by the Court, individual arguments were also made. The Court has reviewed these and will only address those specific arguments when they diverge in a relevant way from the whole.

Plaintiffs had in place a certain all-risk policies covering direct physical loss thereto except that which was excluded. The water damage exclusion was identical to the ISO policy noted above; it excepted "flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water or spray from any of the foregoing, all whether driven by wind or not." *Id.* at 680. The insureds maintained in that suit that the term "flood" was ambiguous as it was not defined and no distinction was made between naturally and artificially caused floods, and as such should have been limited to natural events.

> A divided Supreme Court of the State of Colorado held for the insurers. The majority stated:

> The generally accepted meaning of the term "flood" does not include a distinction between artificial and natural floods. For example, *Webster's New World Dictionary* 535 (2d ed. 1974), defines "flood" as: "[A]n overflowing of water on an area normally dry; inundation; deluge. . . ." *Webster's Ninth New Collegiate Dictionary* 474 (9th ed. 1988), defines the term as: "[A] rising and overflowing of a body of water esp [ecially] onto normally dry land. . . ." *Black's Law Dictionary* (5th ed. 1979), contains a similar definition: "An inundation of water over land not usually covered by it. Water which inundates area of surface of earth where it ordinarily would not be expected to be." The inundation of insureds' normally dry land falls squarely within these generally accepted definitions of the term "flood."[FN2] *See Bartlett v. Continental Divide Ins. Co.,* 697 P.2d 412 (Colo.App.1984) (no distinction in insurance policy between natural and artificial causes of flood; to make such distinction would be to rewrite the terms of the policy).

*Id.* at 681.

Thus, the majority rejected the concept that causation–that is the failure  of  a man-made object which would cause an "artificial" flood as opposed to a naturally occurring flood–would influence the interpretation of the exclusion.  In so finding, it distinguished a prior decision, *Ferndale Development Co. v. Great American Ins. Co.*, 34 Colo. App. 258, 527 P.2d 939 ( Colo. App.1974), wherein a Colorado appellate court had found the term "flood" ambiguous and found coverage where a broken city water line caused the "inundation of the footings and foundations

of a partially completed condominiums being constructed by the insured." The majority

reasoned that in *Ferndale*, "the term 'flood' was ambiguous not only because the water was

released from a man-made object, but also because a water main is not so clearly a 'body of

water,'" and because "the amount released was less clearly an 'inundation' or 'deluge'."

Plaintiffs in *Kane* also contended, relying on *Koncilja v. Trinity Universal Ins. Co.* , 528

P.2d 939 (Colo. App. 1974), that even if the flood exclusion applied, the "efficient moving

cause" of their loss was a covered risk, that is the third party negligence leading to the failure of

the Lawn Lake Dam, and coverage should be available. In *Koncilja,* the damage at issue was

caused by a broken water pipe embedded in the floor of the house which caused the ground

beneath the house to subside which, in turn, caused the house to settle and crack. The

homeowners' insurance policy at issue insured against "loss occurring as a result of '[accidental

discharge, leakage or overflow of water or steam from within a plumbing . . . system.'" The

claim was initially denied based on an exclusion of losses "'caused by, resulting from,

contributed to, or aggravated by any earth movement [or] water below the surface of the

ground.'" *Kane,* 768 P.2d at 684, citing *Koncilja.* at 940. The *Koncilja* court applied the efficient

proximate cause rule that where there is a concurrency of different causes, the efficient

cause–the one that sets others in motion–is the cause to which the loss is to be attributed, though

the other causes may follow it, and operate more immediately. *Id.* The *Koncilja* court noted that

while the excluded settling of earth may have "operated more immediately in producing the

damages, the predominate or efficient proximate cause of the loss was the accidental leakage

from the plumbing system." *Id.* Thus, the *Koncilja* court found that as these provisions gave

20

rise to an ambiguity as to the extent of policy coverage, the contract should be construed in favor

of coverage.

The majority of Colorado supreme court found that there was no such conflict of

provisions of coverage in the *Kane* policies.  The majority stated:

> Third party negligence is not a covered risk which creates inconsistency or
> ambiguity between the language of coverage and the language of exclusion.
> Although loss from third party negligence is covered under an "all risk" policy,
> that coverage is expressly subject to the language of the exclusions included in
> the policy. Under the policy language here, the insureds' loss which is caused by,
> resulting from, contributed to or aggravated by a flood is excluded regardless of
> the existence of any other contributing cause. Unlike in *Koncilja,* there is no
> inconsistency or ambiguity in the inclusionary and exclusionary language of the
> insurance policies in this case.
>
> Moreover, the "efficient moving cause" rule set forth in *Koncilja* does not
> control our decision in this case. We believe that the "efficient moving cause"
> rule, if it were to be adopted by this court, must yield to a well-settled principle of
> law: namely, that courts will not rewrite a contract for the parties. *See, e.g.,*
> *Republic Ins. Co. v. Jernigan,* 753 P.2d 229, 232 (Colo.1988).

*Id.* at 685.  Thus, the majority held that the term "flood" in the insurance policies at issue

included both naturally and artificially caused floods.

Other cases cited by the defendants herein for the proposition  that the term "flood" in an

insurance policy includes both naturally and artificially caused floods include *Bartlett v. Cont'l*

*Divide Ins. Co.,* 697 P.2d 412, 413 (Colo. Ct. App. 1984) (lower court decision concerning

apparently the same Lawn Lake Dam collapse finding no distinction between natural and

artificial causes where dam failure caused damage); *TNT Speed & Sport Ctr., Inc. v. American*

*States Ins. Co.,* 114 F.3d 731 (8th Cir. 1997) (no coverage where vandals removed sandbags and

dirt from levee causing levee to break); *Pakmark Corp. v. Liberty Mut Ins. Co.,* 943 S.W. 2d

(Mo. Ct. app. 1997) (no coverage where levee broke); *E.B. Metal & Rubber Indus. Inc. v.*

21