NO. **06-56** 

Eastern District of Louisiana Docket No. 05-4182

**U.S. COURT OF APPEALS**
**FILED**
~~DEC~~ 1 3 2006
**CHARLES R. FULBRUGE III**
**CLERK**

United States Court of Appeals For The Fifth Circuit

IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION

PERTAINS TO:

KELLY A. HUMPHREYS
Plaintiff-Appellant
v.
ENCOMPASS INSURANCE COMPANY
Defendant-Appellee



DEC 13 2006
NEW ORLEANS, LA

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
JUDGE: STANWOOD R. DUVAL, JR.
CIVIL ACTION NO.: 06-0169

---

**PETITION OF PLAINTIFF-APPELLANT KELLY A. HUMPHREYS FOR PERMISSION TO APPEAL PURSUANT TO 28 USC §1292(b)**

---

THE CREELY LAW FIRM, L.L.C.
ROBERT G. CREELY, BAR # 4594
1010 Common Street, Suite 2650
New Orleans, Louisiana 70112-2401
Telephone: (504) 636-5226
Facsimile: (504) 636-5229
and
LANDRY & SWARR, L.L.C.
MICKEY P. LANDRY, BAR #22817
FRANK J. SWARR, BAR #23322
DAVID R. CANNELLA, BAR #26231
1010 Common, Suite 2050
New Orleans, Louisiana 70112
Telephone: (504) 299-1214
Facsimile: (504) 299-1215

NO. _____

Eastern District of Louisiana Docket No. 05-4182

**United States Court of Appeals For The Fifth Circuit**

IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION

PERTAINS TO:

KELLY A. HUMPHREYS
Plaintiff-Appellant
v.
ENCOMPASS INSURANCE COMPANY
Defendant-Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
JUDGE: STANWOOD R. DUVAL, JR.
CIVIL ACTION NO.: 06-0169

**PETITION OF PLAINTIFF-APPELLANT KELLY A. HUMPHREYS FOR PERMISSION TO APPEAL PURSUANT TO 28 USC §1292(b)**

THE CREELY LAW FIRM, L.L.C.
ROBERT G. CREELY, BAR # 4594
1010 Common Street, Suite 2650
New Orleans, Louisiana 70112-2401
Telephone: (504) 636-5226
Facsimile: (504) 636-5229
and
LANDRY & SWARR, L.L.C.
MICKEY P. LANDRY, BAR #22817
FRANK J. SWARR, BAR #23322
DAVID R. CANNELLA, BAR #26231
1010 Common, Suite 2050
New Orleans, Louisiana 70112
Telephone: (504) 299-1214
Facsimile: (504) 299-1215

## TABLE OF CONTENTS

| Section | | | Page |
|---|---|---|---|
| I. | TABLE OF AUTHORITIES | | 3 |
| II. | CERTIFICATE OF INTERESTED PERSONS | | 5 |
| III. | JURISDICTIONAL STATEMENT | | 6 |
| IV. | STATEMENT OF THE CASE | | 7 |
| V. | STATEMENT OF ISSUES PRESENTED FOR REVIEW | | 8 |
| VI. | RELIEF SOUGHT BY PLAINTIFF-APPELLANT | | 9 |
| VII. | WHY THIS APPEAL SHOULD BE ALLOWED | | 9 |
| | A. | The District Court erred in concluding that the "Hurricane Peril Coverage/Hurricane Deductible Endorsement" did not create independent coverage | 9 |
| | B. | Interpretation of a contract of insurance issued in Louisiana to a Louisiana property owner should be construed in conformity with Louisiana law | 12 |
| | C. | Insurance contracts are contracts of adhesion | 13 |
| | D. | Plaintiff has coverage for flood and wind damage | 16 |
| VIII. | CONCLUSION | | 17 |
| IX. | CERTIFICATE OF SERVICE | | 18 |

## I. TABLE OF AUTHORITIES

**Cases** | **Page**

*Corp. of Roman Catholic Church of Eunice. v. Royal Ins. Co., Ltd.*
158 La. 601, 104 So. 383 — 15

*Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000) — 14

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80, 58S.Ct. 817, 82L.Ed. 1188 (1938) — 11

*Golz v. Children's Bureau of New Orleans, Inc.*, 326 So.2d 865, 869 (La. 1976) — 12

*Hulin v. Fibreboard Corp.*, 178 F.3d 316, 318-19 (5th Cir. 1999) — 11

*Hussain v. Enterprise Leasing Co., Inc.*, 735 So.2d 46, 48 (La. App. 5th Cir. 1999) — 13

*Lexis v. Hamilton*, 94-2204 (La. 4/10/95) 652 So.2d 1327, 1330 — 13

*Dorothy Michelet v. Scheuring Security Services, Inc.*, 680 So.2d 140 — 15

*Mozeke v. Int'l Paper Co.*, 856 F.2d 722, 724 (5th Cir. 1988) — 11

*Musser Davis Land Co. v. Union Pacific Resources*, 201 F.3d 561, 565 (5th Cir. 2000) — 11

*Ochsner Clinic v. Maxicare Louisiana, Inc.*, 672 So.2d 979, 981 (La. App. 5 Cir. 1996) — 12

*Pareti v. Sentry Indemnity Co.*, 536 So.2d 417, 420 (La. 1988) — 13

*Patricia Lee Sherwood v. Mercedes Stein*, 261 La. 358, 259 So.2d 876 — 15

*Bobbie H. Sims v. Norma A. Isaula Guerrero*
889 So.2d 1184, 39,091 (La. App. 2 Cir. 12/15/04) — 15

*Transcontinental Gas v. Transportation Ins. Co.*, 653 F.2d 985, 988 (5th Cir. 1992) — 11

*Turbo Trucking Co. v. Those Underwriters at Lloyd's London*
776 F.2d 527, 529 (5th Cir. 1985) — 15

*John B. Waldrip v. Connecticut National Life Insurance Co.*, 566 So.2d 434 — 15

**Statutes**

La. Rev. Stat. 22:654 — 9, 15

La. Civ. C. Art. 2045 — 12

La. Civ. C. Art. 2046 ................................................................................................ 12

La Civ. C. Art. 2056 ................................................................................................. 12

## II. CERTIFICATE OF INTERESTED PERSONS

**Pertains to U.S.D.C., E.D. La. No. 06-0169, Kelly A. Humphreys v. Encompass Ins. Co.**

The undersigned counsel of record certifies that the following listed person and entity as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Appellant: Kelly A. Humphreys

Counsel for Appellant:
THE CREELY LAW FIRM, L.L.C
ROBERT G. CREELY, BAR #4594
1010 Common Street, Suite 2650
New Orleans, Louisiana 70112-2401
Telephone: (504) 636-5226
Facsimile: (504) 636-5229

LANDRY & SWARR, L.L.C.
MICKEY P. LANDRY, BAR #22817
FRANK J. SWARR, BAR #23322
DAVID R. CANNELLA, BAR #26231
1010 Common, Suite 2050
New Orleans, Louisiana 70112
Telephone: (504) 299-1214
Facsimile: (504) 299-1215

Appellee: Encompass Insurance Company

Counsel for Appellee:
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
JUDY Y. BARRASSO
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9920

District Court Judge: Hon. Stanwood R. Duval, Jr., U.S.D.C., E.D. La., Sec. K

_____
ROBERT G. CREELY
Attorney for Appellant-Plaintiff Kelly A. Humphreys

### III.     JURISDICTIONAL STATEMENT

Pursuant to 28 USC §1292(b), this is a petition for permission to appeal an interlocutory ruling rendered by the Honorable Stanwood R. Duval, Jr., regarding the Hurricane Katrina canal breaches consolidated litigation. Specifically, appellant-plaintiff Kelly Humphries respectfully requests that this Honorable Court grant her permission to appeal Judge Duval's ruling of November 27, 2006, denying Plaintiff's Partial Motion for Summary Judgment for damages plaintiff sustained as a result of the 17th Street Canal Levee Breach. Plaintiff-appellant purchased from Encompass Insurance Company ("Defendant") a homeowner's policy of insurance.

The District Court had subject matter jurisdiction over this action pursuant to 28 USC §§ 1332 and 1441 based on diversity of jurisdiction. However, this action rises under the laws of the State of Louisiana.

This Honorable Court has appellate jurisdiction pursuant to 28 USC §§ 1291 and 1292 over the District Court's Order denying a portion of appellant's Partial Motion for Summary Judgment. Moreover, in the November 27th Order, Judge Duval found his ruling satisfied the requisite factors for immediate appeal to this Honorable Court of Appeals, stating that "all orders entered herein involve a controlling question of law as to which there is a substantial ground for a difference of opinion and an immediate appeal from these orders may materially advance the ultimate termination of the litigation."[1]

---

[1] Exhibit A, Order of 11/27/06, p. 85.

## IV.    STATEMENT OF THE CASE

It is plaintiff's contention that the "Deluxe-Home" HO-3 Policy of Insurance issued by defendant provides additional coverage as clearly stated in the policy endorsements that are entitled "Your Optional Coverages." Defendant contends, and the District Court agreed, that the "Hurricane Deductible Endorsement" ". . . simply reduces the deductible that would normally be applicable from a percentage of the value of the house to a flat $1,000.00."[2]

Simply stated, plaintiff's naked homeowner's insurance policy without the "Hurricane Deductible Endorsement" or "Windstorm Deductible Endorsement," both of which contained $1,000.00 deductibles, would not have provided coverage for wind, hail or hurricane damages sustained by her residence during Hurricane Katrina.[3] In fact, if the policy is read as interpreted by the District Court Judge, the "Hurricane Deductible Endorsement" that plaintiff paid an additional $409.00 in premiums provides absolutely no additional coverage or benefit in the event of a hurricane. Thus, the coverages contained in the "Hurricane Deductible Endorsement" as well as the deductible itself can never be triggered under plaintiff's policy if the ruling of the District Judge stands. Consequently, plaintiff paid premiums for "Hurricane Coverage Peril/Hurricane Deductible Endorsement" referred to as "Your Optional Coverages" and received no benefit in the form of insurance coverage in return.

Plaintiff purchased policy number 263810725 for the policy period of 7/18/2005 to 7/18/2006 for the property located at 431-429 S. Bernadotte, New Orleans, 70119. The policy listed among other coverages the following:

1.    Property location limit $310,000.00;

---

[2] Record Excerpts, Exhibit A, 11/27/06 Order, p. 84.
[3] Plaintiff also argued that the water damage exclusion was ambiguous and thus unenforceable. The District Court agreed, finding that the water damage exclusion contained in plaintiff's policy was ambiguous. Record Excerpts, Exhibit A, 11/27/06 Order, p. 84.

7

2. Property deductible $1,000.00;

3. Hurricane Peril Coverage;

4. $1,000.00 Hurricane Deductible (based on the resident's value) applied to hurricane losses; and

5. $1,000.00 Wind Storm Deductible applied to wind storm or hail losses.

Plaintiff's residence and contents suffered catastrophic loss due to Hurricane Katrina. Plaintiff seeks to recover for water damage that she sustained as a result of the collapse of the 17th Street Canal Flood Wall by virtue of the "Hurricane Peril Coverage/Hurricane Deductible Endorsement."

## V. STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the District Court properly ruled that the "Optional Coverages" section of plaintiff's homeowner's insurance policy did not create additional coverages for plaintiff's hurricane storm damage.

2. Whether the District Court properly ruled that the "Hurricane Peril Coverage/Hurricane Deductible Endorsement" contained in the Encompass policy simply reduced the deductible for plaintiff's hurricane damages.

3. If the ruling of the District Court is affirmed, then the coverages contained in the "Hurricane Deductible Endorsement," as well as the deductible itself, can never be triggered under plaintiff's policy. In this light, is the District Court's ruling consistent with established principles of Louisiana law and public policy?

8

## VI.     RELIEF SOUGHT BY PLAINTIFF-APPELLANT

Plaintiff-Appellant Kelly Humphries seeks the right to appeal the District Court's November 27, 2006 Order denying her Motion for Partial Summary Judgment concerning her argument for full coverage pursuant to the Hurricane Endorsement Deductible contained in the homeowner's insurance policy issued by Encompass Insurance Company. Plaintiff-Appellant respectfully requests an order from this Honorable Court reversing the District Court Order with respect to Plaintiff's argument to the Hurricane Endorsement Deductible argument.

## VII.    WHY THE APPEAL SHOULD BE ALLOWED

### A.     THE DISTRICT COURT ERRED IN CONCLUDING THAT THE "HURRICANE PERIL COVERAGE/HURRICANE DEDUCTIBLE ENDORSEMENT" DID NOT CREATE INDEPENDENT COVERAGE

Plaintiff purchased a contract of insurance with coverages that include "Hurricane Peril Coverage" a term undefined in the body of the insurance policy.[4] However, as an endorsement to the insurance policy plaintiff received a "Hurricane Deductible Endorsement" entitled "Your Optional Coverages."[5] Plaintiff contends that the summary of coverages "Declaration Sheet" and the "Hurricane Deductible Endorsement" provides additional coverages specifically as stated in the "Hurricane Deductible Endorsement."[6] Specifically, the policy provides as follows, in pertinent part:

The Hurricane Deductible shown on the coverage summary applies to all covered property for direct physical loss or damage caused directly or indirectly by a hurricane as defined below." "Hurricane means wind, wind gusts, hail, rain, tornado, cyclone or hurricane which results in direct physical loss or damage to the property by a storm system that has been declared to be a hurricane by the National Weather Service.[7]

---

[4] Record Excerpts, Exhibit B, USP Deluxe-Package Amended Policy Coverage Summary, at p. 2 of 5.
[5] Record Excerpts, Exhibit C.
[6] Record Excerpts, Exhibit B.
[7] Record Excerpts, Exhibit C.

9

Furthermore, La. Rev. Stat. 22:654 reads in part as follows:

Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement or application attached to or made a part of the policy.

Thus, any endorsement to a policy of insurance takes precedence over the policy provisions contained in the body of the contract of insurance. Plaintiff's "Hurricane Deductible Endorsement" reads as follows:

The hurricane deductible shown on the Coverage Summary applies to all covered property for direct physical loss or damage caused directly or indirectly by a hurricane as defined below. Such deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss. No other deductible provision in the policy applies to direct physical loss caused by a hurricane. In no event will the deductible applied for a hurricane loss be less than the property deductible shown on the Coverage Summary.

Hurricane means wind, wind gust, hail, rain, tornado, cyclone or hurricane which results in direct physical loss or damage to property by a storm system that has been declared to be hurricane by the National Weather Service. The duration of the hurricane includes the time period in your state:

A. beginning at the time a hurricane watch or hurricane warning is issued for any part of the state by the National Weather Service;

B. continuing for the time period during which the hurricane conditions exist anywhere in the state; and

C. ending 12 hours following the termination of the last hurricane watch or hurricane warning for any part of your state by the National Weather Service.

All other provisions of this policy apply.

Defendant argued to the District Court that it adopted the arguments made by Allstate Insurance Company in Allstate's Motion to Dismiss certain other plaintiffs' claims for coverage from rising water under the Allstate Hurricane Deductible Endorsement. However, the Allstate "Hurricane Deductible Endorsement" has language that is materially different than that included in plaintiff's policy of insurance. The Allstate endorsement states in part:

10

"Hurricane" - means a weather system declared by the National Hurricane Center to be a "hurricane".

"Tropical Storm" - means a weather system declared by the National Hurricane Center to be a "tropical storm".

"Windstorm" - means wind, wind gusts, hail, rain, snow, sleet, sand, dust, tornadoes or cyclones caused by or resulting from a hurricane or a tropical storm.

Hurricane Deductible

The hurricane deductible applies to any loss caused by windstorm to property covered under Section I of this policy during the following period:

a.      beginning 24 hours prior to the time a hurricane watch or hurricane warning is issued by the **National Hurricane Center** for any part of the state in which your residence premises is located;

b.      during the duration of such hurricane, and

c.      ending 72 hours after the **National Hurricane Center** declares that the **hurricane** has been downgraded to a **tropical storm**.

The hurricane deductible amount will appear on your Policy Declarations. We will pay only when a covered loss caused windstorm exceeds the hurricane deductible amount. We will then pay only the excess amount. We reserve the right to limit changes to this and other deductibles at any time.

The hurricane deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss. If another deductible applicable to the loss exceeds the hurricane deductible, the greater deductible will be applied to the loss.

All other provisions of the policy apply.[8]

Unlike the Encompass endorsement, the Allstate Endorsement clearly limits and applies a deductible to windstorm damage that occurs to covered property during a hurricane as clearly defined in the Allstate policy of insurance. If it was Encompass' intention to limit coverage or apply a deductible to windstorm damage only, then it should have used language similar to that contained in the Allstate policy. Rather, defendant in its "Hurricane Deductible Endorsement"

---

[8] Record Excerpts, Exhibit A, p. 71.

11

defines coverage not only as a result of the wind, but also, direct or indirect damage caused by a hurricane resulting in direct physical loss to property.

**B.   INTERPRETATION OF A CONTRACT OF INSURANCE ISSUED IN LOUISIANA TO A LOUISIANA PROPERTY OWNER SHOULD BE CONSTRUED IN CONFORMITY WITH LOUISIANA LAW**

The District Court adopted the "civilian approach as an *Erie* Court" and attempted to apply Louisiana law to interpret the legal issues presented to it for consideration. The District Court cited *Musser Davis Land Co. v. Union Pacific Resources*, 201 F.3d 561, 565 (5th Cir. 2000), *citing Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80, 58S.Ct. 817, 82L.Ed. 1188 (1938); *Mozeke v. Int'l Paper Co.*, 856 F.2d 722, 724 (5th Cir. 1988) and quoted *Musser* as follows:

> To determine a state law question, we first look to decisions of the Louisiana Supreme Court. See *Transcontinental Gas v. Transportation Ins. Co.*, 653 F.2d 985, 988 (5th Cir. 1992). If the Louisiana Supreme Court has not spoken on the issue, it is our duty to determine as best we can what that court would decide. See *id.*; *Hulin v. Fibreboard Corp.*, 178 F.3d 316, 318-19 (5th Cir. 1999).

> Under Louisiana's Civil Law tradition, courts look first and foremost to statutory law. The Louisiana Civil Code instructs that "[sources of law are legislation and custom,]" and that "[1]legislation is a solemn expression of legislative will." "[T]he primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts." The concept of star decisis is foreign to the Civil Law, including Louisiana. Therefore, in cases such as this we are guided by decisions rendered by the Louisiana appellate courts, particularly when numerous decisions are in accord on a given issue-the so-called jurisprudence constant-but we are not strictly bound by them.

## C. INSURANCE CONTACTS ARE CONTRACTS OF ADHESION

In interpreting the provisions of a contract, the common intent of the parties must be determined. La. Civ. C. Art. 2045. If the words of a contract are clear and unambiguous and lead to no absurd consequences, then no further interpretation may be made in search of the parties' intent. La. Civ. C. Art. 2046; *Ochsner Clinic v. Maxicare Louisiana, Inc.*, 672 So.2d 979, 981 (La. App. 5 Cir. 1996). However, in cases where the clear intent of the parties cannot be determined from the terms of the contract, the trier of fact must construe ambiguous terms against the party who furnished the terms.

In a contract of adhesion, ambiguous provisions are to be construed against the party providing the contract, because the party with less bargaining power (i.e. the party who does not provide the contract) must adhere to terms dictated by the party with superior bargaining power (i.e., the party who prepared and provides the contract) in the formulation of the contract itself. Contracts of adhesion are generally standardized in form and offered on a "take it or leave it basis," with the issuing party offering no negotiation on text, options, or price. Insurance policies are almost always standardized in form and are contract of adhesion.

Louisiana law defines a contract of adhesion as follows:

Broadly defined, a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker part actually consented to the terms.

*Golz v. Children's Bureau of New Orleans, Inc.*, 326 So.2d 865, 869 (La. 1976) (citing La. Civ. C. Arts. 1766, 1811). La. Civ. C. Art. 2056 further provides that "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who

furnished its text. A contract issued in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."

In *Hussain v. Enterprise Leasing Company, Inc.*, 735 So.2d 46, 48 (La. App. 5th Cir. 1999), the court addressed the contractual interpretation of contracts of adhesion, and recognized the implicit overreaching aspects of such contracts:

In *Lexis v. Hamilton*, 94-2204 (La. 4/10/95) 652 So.2d 1327, 1330, the court stated that the Civil Code articles and jurisprudence which mandate strict construction of a contract of adhesion are primarily designed to protect an unwary policyholder from the "small print" often injected into insurance contracts by those with superior bargaining power.
This does not mean that a party who signs a written contract can avoid the contract by claiming that they did not read the instrument; however, it does protect the holder of a policy of insurance where the terms of the policy are ambiguous in nature and subject to interpretation.

In the instant case, the homeowner's policyholder entered into a contract of adhesion with defendant insurer for protection against all perils covered under her policy. The policy states a face value for the Coverage of dwelling or structure and contents. There is no question that this policy was issued on a "take it or leave it basis." There is also no question that the policyholder was completely devoid of bargaining power with respect to the formation of her homeowner's policy. On the contrary, it was within the sole discretion and power of defendant to issue the policy, determine the amount of coverage to be offered, and determine the premium to be charged. None of these terms was negotiable. Defendant determine the value of the dwelling, the amount of the premium charged, the terms of the contract and the term of the policy itself. There can be no doubt that the contract constitutes a contract of adhesion. Thus, under Louisiana law, any doubts or ambiguities concerning the terms of the insurance contract must be construed in favor of the policyholder and against the insurer who formulated and issued the homeowner's policy. *Pareti v. Sentry Indemnity Co.*, 536 So.2d 417, 420 (La. 1988).

When doubt exists or the contract of insurance is ambiguous language it must be construed in favor of the insured. The Louisiana Supreme Court has determined the basis for interpretation of an insurance contract. In *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000) states as follows:

An insurance policy is an aleatory contract subject to the same basic interpretive rules as any other contract. See La. Civ. Code art. 1912, cmt. e; *Magnon v. Collins*, 98-2822, p. 6 (La.7/7/99), 739 So.2d 191, 196; *Peterson v. Schimek*, 98-1712, p. 4 (La.3/2/99), 729 So.2d 1024, 1028; *Smith v. Matthews*, 611 So.2d 1377, 1379 (La.1993). The interpretation of an insurance contract is nothing more than a determination of the common intent of the parties. See La. Civ. Code art. 2045; *Magnon*, 98-2822 at 6, 739 So.2d at 196; *Ledbetter v. Concord Gen. Corp.*, 95-0809, p. 3 (La.1/6/96), 665 So.2d 1166, 1169. Obviously, the initial determination of the parties' intent is found in the insurance policy itself. See La. Civ. Code art. 2046. In analyzing a policy provision, the words, often being terms of art, must be given their technical meaning. See *id.* at art. 2047. When those technical words are unambiguous and the parties' intent is clear, the insurance contract will be enforced as written. See La. Civ. Code art. 2046; *Magnon*, 98-2822 at 7, 739 So.2d at 197. If, on the other hand, the contract cannot be construed simply, based on its language, because of an ambiguity, the court may look to extrinsic evidence to determine the parties' intent. *See Peterson*, 98-1712 at 5, 729 So.2d at 1029.

When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. *See Barber v. Best*, 394 So.2d 779, 781 (La.App. 4th Cir.1981). On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy. *See Dubois v. Parish Gov't Risk Mgmt. Agency Group Health*, 95-546, p. 5 (La.App. 3 Cir. 1/24/96), 670 So.2d 258, 260; *Shaw v. Fidelity & Cas. Ins. Co.*, 582 So.2d 919, 925 (La.App. 2nd Cir.1991); *Landry v. Louisiana Hosp. Serv., Inc.*, 449 So.2d 584, 586 (La.App. 1st Cir.1984); *Barber*, 394 So.2d at 781. Importantly, when making this determination, any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage. *See Yount v. Maisano*, 627 So.2d 148, 151 (La.1993); *Garcia v. St. Bernard Parish Sch. Bd.*, 576 So.2d 975, 976 (La.1991); *Breland v. Schilling*, 550 So.2d 609, 610 (La.1989); *Sherwood v. Stein*, 261 La. 358, 362, 259 So.2d 876, 878 (1972).

15

The Encompass policy at issue is ambiguous as the term "Hurricane Peril Coverage" (as it appears in plaintiff's declaration sheet) is not defined in the policy and the "Hurricane Deductible Endorsement" has no mechanism to be triggered under any set of circumstances if the ruling of the District Court is affirmed.

The only bargaining point plaintiff has with Encompass was to purchase endorsements as written by Encompass to provide her with additional coverage for "windstorm" and "Hurricane Peril Coverage" and "Hurricane Deductible Endorsement." Plaintiff did all she could to provide maximum coverage for her residence.

### D.  PLAINTIFF HAS COVERAGE FOR FLOOD AND WIND DAMAGE

As cited in the introductory section of this paper, La. Rev. Stat. 22:654 requires endorsements to take precedence over policy language. This is likewise the jurisprudential interpretation of endorsement provisions similar to plaintiff's "Hurricane Deductible Endorsement." *Turbo Trucking Co. v. Those Underwriters at Lloyd's London*, 776 F.2d 527, 529 (5th Cir. 1985); *Corporation of Roman Catholic Church of Eunice. v. Royal Ins. Co., Limited*, 158 La. 601, 104 So. 383; *Bobbie H. Sims, et al v. Norma A. Isaula Guerrero, et al*, 889 So.2d 1184, 39,091 (La. App. 2 Cir. 12/15/04); *Patricia Lee Sherwood v. Mercedes Stein, et al*, 261 La. 358, 259 So.2d 876; *John B. Waldrip v. Connecticut National Life Insurance Co., et al*, 566 So.2d 434; and *Dorothy Michelet v. Scheuring Security Services, Inc., et al*, 680 So.2d 140. In fact, in *Turbo, supra*, the U. S. 5th Circuit Court of Appeal found that the policy "is subordinate to the provisions of the endorsement ... ."

Encompass argues in its answer that "flood is not covered in plaintiff's policy." Encompass states plaintiff's "loss, inter alia, caused by water damage, meaning flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, 'whether or

not driven by wind'." This argument was not the basis for the District Court's ruling regarding the "Hurricane Deductible Endorsement" as the District Court found that the ISO water damage exclusion to be ambiguous and unenforceable. By urging the policy defense Encompass chooses to ignore the declaration sheet wherein plaintiff purchases "Hurricane Coverage Peril" (an undefined term in the policy) and, additionally, plaintiff's policy includes Endorsement G1-32383-A(09-98) referring to the "Hurricane Deductible Endorsement."[9]

The "Hurricane Peril Coverage/Hurricane Deductible Endorsement" does not limit coverage to "windstorm" or "hail," but rather covers damages "caused directly or indirectly" by a hurricane. The Encompass "Hurricane Deductible Endorsement" covers damage to plaintiff's residence by the flood waters that were imposed upon the Metropolitan New Orleans area and ". . . results in direct physical loss or damage to property by a storm system that has been declared to be a hurricane by the National Weather Service."

## VIII.   CONCLUSION

Plaintiff's "Hurricane Peril Coverage/Hurricane Deductible Endorsement" clearly expands coverage and provides her with coverage for any damage to property caused by a hurricane. If not, there is no method to trigger coverage under the "Hurricane Peril Coverage/Hurricane Deductible Endorsement." The endorsement could be excluded from plaintiff's policy of insurance and she would receive the same remedy without paying an additional premium.

For the reasons stated herein, plaintiff-appellant respectfully requests this Honorable Court of Appeals to grant this petition and allow plaintiff to bring the issue concerning the Hurricane Endorsement and Deductible as discussed in Judge Duval's Order of November 27,

---

[9] Record Excerpts, Exhibit B, USP Deluxe-Package Amended Policy Coverage Summary, at p. 4 of 5.

2006, on pages 79-84 before the Court. Plaintiff respectfully requests that, following receipt of briefs and oral argument and additional reasons to be provided therein, this Court enter an order reversing the District Court's ruling denying plaintiff's Motion for Partial Summary Judgment, in part, and ordering the action remanded to the District Court to proceed on the merits.

    Respectfully submitted,

    THE CREELY LAW FIRM, LLC

    BY: _____
    ROBERT G. CREELY, BAR #4594
    1010 Common Street
    Suite 2650
    New Orleans, Louisiana 70112
    Telephone: (504) 636-5226
    Facsimile: (504) 636-5229

    AND

    LANDRY & SWARR, L.L.C.

    MICKEY P. LANDRY, BAR #22817
    FRANK J. SWARR, BAR #23322
    DAVID R. CANNELLA, BAR #26231
    1010 Common, Suite 2050
    New Orleans, Louisiana 70112
    Telephone: (504) 299-1214
    Facsimile: (504) 299-1215

## IX.   CERTIFICATE OF SERVICE

I hereby certify that the above has been served on opposing counsel by telefax or by depositing a copy of same in the U.S. Mail, postage prepaid, this 13th day of December, 2006.

    _____
    ROBERT G. CREELY