

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO. 05-4182 "K" (2) |
| | * | & Consolidated Cases |
| | * | |
| PERTAINS TO: | * | JUDGE DUVALL |
| | * | |
| LEVEE: 06-5127 (DEPASS) | * | MAG. KNOWLES |
| 06-5116 (SIMS) | * | |
| | * | |

*******************************************************************************

## REPLY MEMORANDUM

MAY IT PLEASE THE COURT:

**NOW COMES** Jefferson Parish to file its reply to plaintiffs' opposition to the Parish of Jefferson's Motion to Dismiss under F.R.C.P. 12(b)(1) and (b)(6).

## I.    Untimeliness of Opposition

At the outset, the Parish is constrained to point out that the plaintiffs' opposition was filed late. Pursuant to the Court's November 29, 2006 Order, oppositions to any responsive motions filed on or before February 1, 2007 were to be filed no later than February 22, 2007.

Plaintiffs filed this opposition on March 12, 2007, nearly three weeks after the Court's deadline. Replies to oppositions were due, pursuant to the Court's Order on March 1, 2007. Needless to say, that deadline has also passed.

Accordingly, Jefferson Parish submits that this Court should not consider plaintiffs' opposition because of its untimeliness and should grant the Parish's Motions as unopposed.

___ Fee_____
___ Process_____
_X_ Dktd _____
___ CtRmDep_____
___ Doc. No_____

In the event the Court decides to accept and consider plaintiffs' opposition, the Parish respectfully requests that the Court accept the Parish's reply, notwithstanding the passage of the Court's March 1st deadline, given the untimely filing of plaintiffs' opposition.

The Parish further submits that the Court's March 1, 2007 Case Management Order No. 4 (CMO 4) does not excuse plaintiffs' untimely opposition. The Parish understands the Court's reference to March 14, 2007 as the date for filing dispositive 12(b) Motions (at p. 23 of CMO 4) as relating only to cases filed after December 15, 2006. The Parish's 12(b) Motions in these cases were filed well before that date, and the Parish understands that the November 29th Court ordered schedule continues to apply to those Motions. Accordingly, the hearing date for the Parish's Motion is still March 23, 2007, rather than April 7, 2007, which relates to post December 15, 2006 cases and related motions.

## II.    There is No Federal Question with Respect to Jefferson Parish

Plaintiffs admit that "this is a case against the United States."[1] But that does not confer federal question jurisdiction on Jefferson Parish. Nowhere in the Complaints, as amended, or in plaintiffs' argument, is any direct connection between Jefferson Parish and a federal statute or a federal contract of assurance even alleged. Plaintiffs repeatedly refer to the Acts of Assurances of the Sewerage and Water Board, the levee districts and the Port of New Orleans, but never to any assurances by Jefferson Parish. The reason for this absence is clear. There are none. Thus, there is no federal question jurisdiction over Jefferson Parish.

In fact, plaintiffs have essentially acknowledged this themselves. In plaintiffs' memorandum in opposition to United States' Motion to Dismiss under 12(b)(6), filed in C.A. No. 06-1885 and 06-

---

[1]    See Plaintiffs' Opposition, at p. 6.

5771 (Record No. 2326) on an *amici* basis, plaintiffs assert that "it is the flooding from the return levees south of the pumping stations, entirely state "designed and operated," that these Eastbank residents seek redress."[2]  Plaintiffs also stated that "[t]he portions of the outfall canals or return levees inside of the pumping station were not incorporated in the Lake Plan [referring to the federal Lake Pontchartrain Louisiana and Vicinity Hurricane Protection project] nor was the expenditure of federal funds for their improvement authorized." In light of plaintiffs' position as expressed in that *amici* pleading, even the plaintiffs recognize that there is no federal question with respect to the canals south of the pumping station, which is all that is specifically alleged against Jefferson Parish.

## III.    Supplemental Jurisdiction

Plaintiffs expend only one short paragraph on the argument for supplemental jurisdiction over Jefferson Parish. They simply allege that "[S]uch is the case here" with respect to the existence of a common nucleus of operative facts.[3]  Apparently, plaintiffs' perceived common nucleus derives from the fact that "the liability of the [Corps] in negligence, or for that matter the Corps' immunity and the liability of the Assurance defendants is bound up with the liability of the Parish of Jefferson."[4]  Plaintiffs summarize their allegations against the Parish in their Opposition as follows:

> Plaintiffs' allegation of fault is not limited to the continuing pumping and failure to
> close the Hoey canal.  Plaintiffs also allege a general failure to maintain the levees
> including the Monticello Outfall Canal.  The fact that the Parish failed to provide
> power to the Hoey Gate, is alleged backflow . The fact that the Parish and Sewerage
> and Water Board shared the *garde* is also alleged.  Clearly, the general failure of the
> levees over which this defendant had *garde* are not "emergency preparedness"
> activities. Central to the complaint in *DePass* is the fact that the drainage in Old
> Metairie flooded from underneath. Complaint para. 76.   The fact that the

---

[2]      Record, No. 2326, at p. 4.

[3]      See Plaintiffs' Opposition, at p. 7.

[4]      *Id.*

3

Geisenheimer gate was not provided power is also a concern.  That and the fact that canal levees were in a general state of disrepair and no longer suitable to contain [sic] waters projected to occur. . .[5]

But there is no explanation of how this is all bound up factually with the breach of the 17th Street Canal north of the pumping station, especially since the foregoing paragraph refers to the area south of the pumping station, which the plaintiffs have admitted is "entirely state designed and operated." Rather, plaintiffs simply refer to the possibility of the application of comparative negligence at the insistence of other defendants with Jefferson in the empty chair. Plaintiffs suggest that the dismissal of the Parish would not be in the interest of judicial economy or substantial justice for the parties. But, counsel for plaintiffs has filed State cases which emulate the factual claims of these two Federal actions but has left an empty chair for the Corps in those cases. Apparently an empty chair for the Corps is in the interest of judicial economy and substantial justice for the parties in State cases. Why not for the Parish in the Federal cases?

Plaintiffs attempt to bolster their argument against dismissal of the Parish by reference to *Leone v. Creighton*, D.C.N.Y. 1996, F. Supp. 192, but that case is factually inappropriate.[6] The Court in *Leone* retained jurisdiction over the State law claims even though it dismissed all Federal claims because that dismissal came after four years of litigation and completion of discovery. The Court found it would be unfair under these circumstances to require plaintiffs to restart in state court. Those are not the facts in this case. Dismissal of the Parish at this preliminary stage of the case, particularly in the face of virtually identical cases already filed in State Court, is consistent with judicial economy and would not work any injustice to the parties.

---

[5]      See plaintiffs' Opposition, p. 8.

[6]      See Plaintiffs' Opposition, at p. 8.

4

## IV. Common Nucleus

Essentially, plaintiffs assert that the supplemental jurisdiction over their negligence claims against the Parish (and the two levee districts) lies "in that negligence claims are made against the United States Corps of Engineers and Comparative Negligence is pled." Opposition, at p. 3.

But this is <u>not</u> the test for supplemental jurisdiction, as the plaintiffs themselves admit in their opposition. Rather, the test is whether the State and federal claims derive from a common nucleus of operative facts.

Instead of showing how the facts are common, plaintiffs' attempt to develop a common nucleus by alleging that the federal claims against the other defendants relating to contractual assurances are the same as the State negligence claims against the same assurance defendants. Thus, plaintiffs suggest, the same State negligence claims against the Parish, but with no related federal claims, are entitled to supplemental jurisdiction.

In fact, plaintiffs' original and amended petitions cite only state law and Parish Charter and ordinances with respect to the Parish's obligations. This is consistent with the plaintiffs' acknowledgment, discussed above, that the canals with which the Parish is concerned are "entirely state designed and operated."

Moreover, there are numerous errors in plaintiffs' opposition that require comments. For example, plaintiffs refer to the Berkeley Final Report at page 3 of their opposition. Not only is the quotation itself confusing, but the citation is inaccurate. The Final Report is not paginated as indicated by plaintiffs. Consequently, the Parish has been unable to locate the language quoted by the plaintiffs. Compounding this citation error, plaintiffs do not provide a source for their further

assertion that the Berkeley Final Report alleges the "Fault of the Parish and the Sewerage & Water Board with respect to the flooding."[7]

Citing to paragraph 76 of their complaint, plaintiffs also argue that "central to the complaint in *Depass* is the fact that drainage in Old Metairie flooded from underneath. However, no such assertions are contained in paragraph 76. To the contrary, paragraph 76 of their complaint merely alleges that the East Jefferson Levee District, the Parish of Jefferson, and the Sewerage & Water Board were negligent in failing to close the drainage lines to prevent back flow from the 17[th] Street Canal into Metairie.

Finally, with respect to any allegations against the Parish regarding the levees, we would note that this Court has already addressed allegations regarding responsibility for the levees involved in this case. By statute, Jefferson Parish is not responsible for the levees, as this Court similarly found when it granted the City of New Orleans' motion to dismiss for failure to state a claim in *In Re Katrina Canal Breaches Consolidated Litigation*, civil action number 05-4181, Order and Reasons [Doc. No. 1133]. This Court's reasoning with respect to the City of New Orleans applies with equal force to Jefferson Parish.

**V.     State Law Cause of Action**

Plaintiffs refer to Judge Peytavin's reliance on two State cases for a denial of the Parish's similar State case motions. However, neither of those cases, *Eschete* and *McCloud*, addressed immunity under La. R.S. 29:735. Both cases dealt with immunity in discretionary matters under La. Rev. St. 9:2798.1. The Parish did not raise such immunity as a defense in those cases, so the decisions are irrelevant to the immunity at issue in these two Federal cases.

---

[7]        See Plaintiffs' Opposition, at p. 3.

Plaintiffs incorrectly rely on a completely inapposite case for their assertion that state immunity does not apply, Judge Peytavin's recent decision in *Loga, et al v. Jefferson Parish*, No. 625-125.[8]   Whereas *Loga* solely relates to allegations of negligence for evacuating the pump operators, the claims herein relate to the failure to close the Hoey Gate (often referenced by plaintiffs as the Geisenheimer Gate).  Rather than *Loga*, the state action that involves the same geographic area and allegations as these two cases, the failure to close the Hoey Gate, is *Delahoussaye, et al v. Jefferson Parish*, No. 624-894.

Plaintiffs in *Delahoussaye* allege that the 17th Street Canal rose to high levels which eventually backed into large sections of Metairie, that the flooded area is drained by a system which flows into the 17th Street Canal, entry into which is controlled by a flood gate known as the Geisenheimer Gate (Hoey's Gate).  Plaintiffs allege gross negligence by the Parish's failure to secure and/or close the gate.[9]

As cited by Judge Peytavin in his Order and Reasons in *Delahoussaye*, all parties in that matter agreed that allegations related to the Hoey Gate were vastly different from other cases, including the *Loga* case often cited by plaintiffs in their Opposition, involving allegations of the release of the pump operators.[10]   Thus, *Loga* is inapposite and irrelevant to plaintiff's allegations herein.

Just as it did in the instant matter, the Parish filed an exception alleging immunity from liability in *Delahoussaye* based on the Louisiana Homeland Security and Emergency Assistance

---

8       See plaintiffs' Opposition, pp. 5 and 9.

9       See Exhibit "A," Judge Peytavin's Judgment and Reasons for Judgment, dated September 29, 2006.

10       See Exhibit "A," Reasons for Judgment, p. 2-3.

Disaster Act, La.R.S. 29:735, **which Judge Peytavin granted.**[11] In granting the Parish's exception,

the Court acknowledged that the Parish is entitled to immunity for plaintiff's allegations related to

Hoey's Gate and ruled as follows:

> These largely reiterate arguments of action vs. inaction, commission vs.
> omission. These arguments would bear more consideration if Aaron Broussard or
> any employee had been sued or if the plaintiff has alleged defects in the parish owned
> Gegenheimer [sic] Gate.
>
> As things stand the wording of La. R.S. 29:735 has been judicially interpreted
> as affording emergency statutory immunity to solitary governmental entities for
> emergency preparedness activities. See *Castille vs. Lafayette City-Parish* above, at
> page 1265.
>
> > "The Castilles have not joined any individual City employee as
> > defendants in their suit. Their suit is against only the City itself.
> > Under the Act, the City enjoys immunity from legal responsibility for
> > damages sustained during emergency preparedness activities. It,
> > therefore, cannot be liable to the Castilles for the injuries in the car
> > accident."
>
> For the reasons stated above, the Parish of Jefferson's Exception of No Cause
> of Action will be granted.

Thus, decisions regarding the closure of the gates and culverts and decisions regarding the

placement of barriers, regardless of whether those decisions were the optimal decisions, cannot

create liability on the Parish's part under any circumstances pursuant to La. R.S. 29:735.

## VI.   Conclusion

As the court stated in response to the same 12(b) motions filed by the Parish in *Abel et al v.*

*Broussard et al*, C.A. No. 06-1640, the "only event that connects the claims is that they all were

precipitated by Hurricane Katrina and its aftermath. Otherwise, these is no common nucleus of

claims to others." (Doc. 20, p.1)

---

[11]     See Judge Peytavin's Judgment and Reasons for Judgment dated September 29, 2006.

For the foregoing reasons, defendant, the Parish of Jefferson, respectfully submits that this

Honorable Court should grant its 12(b) motion.

Respectfully submitted,

BURGLASS & TANKERSLEY, LLC

CHRISTOPHER K. TANKERSLEY (19176)
DENNIS J. PHAYER (10408)
SCOTT O. GASPARD (23747)
5213 Airline Drive
Metairie, Louisiana 70001-5602
Phone: (504) 836-2220 /Fax: (504) 836-2221
Attorney for defendant, the Parish of Jefferson

## CERTIFICATE OF SERVICE

I, Dennis J. Phayer, hereby certify that on the 21 day of March, 2007, I served a true copy of the foregoing pleading upon the following party by first class and/or electronic mail:

William C. Gambel
909 Poydras Street, Suite 2300
New Orleans, Louisiana 70112-1010
wgambel@millinglaw.com