U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
FILED
2007 MAR 23 PM 2:46
LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES CONSILIDATED LITIGATION * CIVIL ACTION NO. NO. 05-4182

SECTION: K (2)
JUDGE DUVAL
MAGISTRATE WILKINSON

PERTAINS TO:
(06-6642) Pontchartrain Baptist Church

* * * * * * *

**MEMORANDUM IN OPPOSITION TO ENGINEERS' JOINT RULE 12(b)(6) MOTION TO DISMISS AND RULE 56 MOTION FOR SUMMARY JUDGMENT (DOC. 2986) WITH INCORPORATED AFFIDAVID, DECLARATION, AND EXHIBIT;**

**AND**

**MEMORANDUM IN OPPOSITION TO RULE 56 JOINT MOTION OF ENGINEERS FOR SUMMARY JUDGMENT ON THE AFFIRMATIVE DEFENSES OF *RES JUDICATA*, OR IN THE ALTERNATIVE, COLLATERAL ESTOPPEL (DOC. 2974) WITH INCORPORATED AFFIDAVID, DECLARATION, AND EXHIBIT;**

**AND**

**MEMORANDUM IN OPPOSITION TO RULE 56 MOTION FOR SUMMARY JUDGMENT ON BEHALF OF BOH BROS. CONSTRUCTION CO., L.L.C. (DOC. 2970) WITH INCORPORATED AFFIDAVID, DECLARATION, AND EXHIBIT**

**MAY IT PLEASE THE COURT:**

## INTRODUCTION

Familiar with the law defining the burdens imposed on the party moving for Rule 12(b)(6) and Rule 56 Summary Judgment motions[1], we recognize that under a 12(b)(6) post

[1] In this case as to this suit, Boh Bros. Construction Co., L.L.C. and Modjeski and Masters, Inc. are hereafter collectively "Defendants."

Fee
Process
X Dktd
X CtRmDep
Doc. No.

answer motion, dismissal is proper only when there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged. A suit should not be dismissed if the Court (1) construes the complaint in the light most favorable to the Plaintiff; (2) accepts all well-pleaded factual allegations as true; and (3) determines whether Plaintiffs can prove any set of facts to support a claim that would merit relief. Likewise, a federal court does not need to accept as true, conclusary allegations or legal characterizations, and it need not accept unreasonable inferences or unwarranted deductions of fact. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir. 1982). The question of Plaintiffs ability to prove allegations or difficulties in such proof, is genuinely of no concern in ruling on a 12(b)(6) motion *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981). The Pontchartrain Baptist Church Petition[2] (hereafter "suit") is an **admiralty, inverse condemnation, and constitutional tort suit** and raises different issues on burden of proof and production.

Counsel for Boh Bros. in its Supplemental Memorandum in Opposition to Motion to Remand (Doc. 3198), asks this Court to ponder why Plaintiffs had extensively briefed the admiralty jurisdiction issue in its *Ex Parte* Supplemental Memorandum in Support of Motion to Remand and Incorporated Exhibits (Doc. 3170). It appears that counsel for Boh Bros. may have inadvertently misunderstood why Plaintiffs brief the admiralty jurisdictional issues extensively in their *Ex Parte* Supplemental Memorandum in Support of Motion to Remand (Doc. 3170). Plaintiffs merely responded to James Construction Co.'s "disguised 12(b)(6) motion." In this "quagmire" and "hydra-headed" case even this counsel admittedly has the capability to misplace.

Counsel for Boh Bros. suggested "ponderings" for this Court.[3] We submit this Court ponder one as well: why the subterranean failures of the canal banks and levees and floodwalls

---

[2] Member case # 06-6642.
[3] Doc. 3198 at 2.

occurred so close to recently reconstructed Bridges (Bosworth Affidavit, Exhibit C, pp. 1-30), especially noting that the Corps of Engineers from 1965 up to Katrina paid over $500 million for flood protection in the New Orleans area. Since Katrina, Boh Bros. and other Defendants have received lucrative contracts from the Corps for work done and services provided[4], but now claim that any actions on works that were completed over five years ago are perempted. This suit under the admiralty "savings to suitors" clause was initially filed in state court on August 29, 2006.

Absent the Defendants' construction or engineering contracts and related documents concerning Canal dredging and excavation, and the demolition and reconstruction of Bridges over the 17th Street and London Avenue Canals (hereafter collectively "PROJECTS"), there appears to be a clear violation of Louisiana Department of Natural Resources, Office of Conservation Regulations on the 17th Street Canal Project, specifically the maximum allowable vibration levels from pile-driving[5] on the Hammond Highway Bridge Project.

Vibration monitors on the Hammond Highway Bridge PROJECT indicate the clear violation of that stated maximum vibration level: "[V]ibration monitoring reports, dated January 16 and 20, 2004, from Alpha Testing and Inspection, Inc., indicate that "vibrations exceeded the 0.25 ips threshold stated in the contract."[6] This clear violation is a material fact relevant to Plaintiffs' theory on the subterranean bank and levee and floodwall failures. Provided below is the hand-drawn diagram attached by Alpha Testing's Mr. Ughart to the Vibration Monitoring Report of January 19, 2004.

---

[4] The foxes are in the henhouse.

[5] Doc. 3170, Ex. K, pp. 80-83, "Report of Vibration Monitoring," letter dated January 16, 2004 from the vibration monitoring company, Alpha Testing and Inspection, Inc. to the Orleans Levee District.

[6] Exhibit A (pp. 1-6) – "Vibration Monitoring at Hammond Hwy Bridge Flood-proofing Project," letter dated January 23, 2004 from OLD to the Corps of Engineers' Project Manager, Alfred Naomi, Sr., indicating that "vibrations exceeded the 0.25 ips threshold stated in the contract."




*Hand-drawn map included in Naomi letter dated January 16, 2004 detailing the location of the vibration monitoring equipment adjacent to "Apartment 27" which recorded the violations in the proximity of the failure site. Exhibit A-6, attached.

Plaintiffs submit that the violations of the maximum vibration levels on the 17th Street Canal's Hammond Highway Bridge, and possibly other violations at remote PROJECTS on the London Avenue Canal, give rise to the application of admiralty law's "*Pennsylvania Rule*" announced by the Supreme Court:

> The liability for damages is upon the ship or ships [Dredges or vessels and appurtenances] whose fault caused the injury. But when, as in this case, a ship [Dredge and appurtenances] at the time of a collision [Project work or service] is in actual violation of a statutory rule intended to prevent collisions [subterranean levee and floodwall failures], it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case, the burden rests upon the ship [Contractors and Engineers operating the Dredge and appurtenances or designing the Plan for the operation of the Dredge and appurtenances] of showing not merely that her [the Dredges, barges, vessels, and land-based work's] fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute.

> Under the rule, therefore, the burden of proof, including the burden of persuasion, is effectively shifted as to the causation issue, once it is established that a vessel [Dredge, barge, and appurtenances] is guilty of violating a statute or a regulation.
>
> . . .
>
> Although the rule speaks of a statutory violation, it is equally applicable to violations of regulations. *Belden v. Chase*, 150 B.S. 674 (1893).

*The Pennsylvania*, 86 U.S. (19 Wall) 125 (1874).

Courts have extended the Pennsylvania Rule to state statutes and local ordinances. *Florida E. Coast Railway Co. v. Revilo Corp.*, 637 F.2d 1060 (5th Cir. 1981); *The Amiral Cecille*, 134 Fed. 673 (D.C.Wash. 1905); Schoenbaum, Thomas J., *Admiralty and Maritime Law*, 4th ed., pp. 769-771 (West 2004).

All motions should be denied because Defendants have completey failed on their burden of proof.[7] Defendants have not supplemented the present 12(b)(6) and Summary Judgment motions with any "evidence" tending to support their Motions or to negate the *Pennsylvania Rule's* application. In fact, no admiralty issues, factual or legal, are raised or supported.

Importantly, all motions should be denied because no Rule 12(b)(1) motion has been filed (perhaps Rule 11 concerns). Additionally, motions to dismiss are **disfavored** as to inverse condemnation allegations, *Moore v. City of Mesa*, 886 F.2d 260, 262 (9th Cir. 1989) (emphasis added).[8]

Photographs from the Berkley Reports reveal a seemingly noteworthy pattern between the Canal and Bridge PROJECTS and the proximity of the subterranean canal bank failures to those PROJECTS near and at the bridge abutments. Arguments that the Law of the Case, *res*

---

[7] Plaintiffs submit the burden is effectively shifted under both Rule 12(b)(6) and Rule 56 motion standards to the Defendants to prove that the excess vibrations from the clear violation of the maximum allowable vibration *could not have been* a substantial factor in the subterranean failure of the canal banks and levees and floodwalls.

[8] Defendants have not challenged or addressed the inverse condemnation claims or the constitutional tort allegations.

*judicata*, and collateral estoppel apply to this admiralty, inverse condemnation, and constitutional tort suit are inapplicable and will need not be addressed further. The previous Opinions and Reasons of this Court (Docs. 2142, "Contractors"; Doc. 2148, "Engineers") did not address this suit's allegation on the PROJECTS and the application of admiralty law.

The gravamen of the maritime claims against the Defendants involve non-governmental private actors. The breach of legal duties, fault, acts/omissions/torts/wrongs, inverse condemnation and constitutional torts are asserted as relating to dredging and the Bridges. More specifically, acts of negligence, failure to warn, failure to disclose, failure to investigate, failure to properly supply information, strict liability, absolute liability, are asserted as regards to PROJECTS work activities. The "whirlpool" observation is telling.[9] That dredges and grabs were used in dredging and excavation is not in dispute.[10] Plaintiffs attach hereto Declarations and other competent evidence supporting the suit's allegations and establish material facts in dispute on the PROJECTS work, services, and design. Moreover, plaintiffs repeatedly alleged in the suit that the PROJECTS had an effect on the 17th Street and London Avenue Canal failure sites.

**ADMIRALTY LAW AND PEREMPTION**

There is no uniform federal admiralty rule of law with respect to statutes of repose in connection with maritime causes of action like those at issue here[11] (hereafter collectively "statutes of repose"). Because no 12(b)(1) motion has been filed, **admiralty jurisdiction is uncontested and admiralty law applies to Defendants' motions.**

This suit is similar to *Grubart v. Great Lakes Dredge and Dock Co.*, 513 U.S. 527 (1995), which holding the Fifth Circuit adopted in *Scarborough v. Clemco Industries*, 391 F.3d

[9] Exhibit B (pp. 1-2), Declaration of Tracy Gately.
[10] Doc. 3170, Exhibit H, pp. 45-48.
[11] La. Rev. Stat. Ann. 9:2771, 9:2772, and 9:5607

660 (5th Cir. Nov. 18, 2004). Following *Scarborough*, admiralty substantive law applies.

**LACHES**

Since there is no generally applicable statute of limitations or "statutes of repose" in admiralty, the time period for filing an admiralty claim is governed by the equitable doctrine of latches. A finding of latches is normally an exercise of discretion with the trial court, and bars an action where the plaintiff's inexcusable delay in filing suit results in prejudice to the defendant. That is not the case on the listed remote "Projects"[12] and prior dredging and excavation works. Additionally, the doctrine of "equitable tolling" may be applied in admiralty.

**VESTING**

Admiralty adopts the "discovery rule," i.e. that a cause of action accrues when the plaintiff knew or should have known of his injury or its cause. *The Mercury Marine*, 129 F.3d 1428 (11 Cir. 1997); Schoenbaum, Thomas J., *Admiralty and Maritime Law*, 4th ed. §3-22. Accordingly, the Defendants' reliance on this Court's Opinions and Reasons in Doc. 2142 ("Contractors") and Doc. 2148 ("Engineers") on the "vesting" of causes of action under the "statutes of repose" is in direct conflict with the doctrine of latches and the admiralty "discovery rule."

Additionally, retroactive application of the "statutes of repose" is also in conflict with *Curtis v. Branton Industries, Inc.*, 944 So.2d 716, 724 (La.App. 3 Cir.) (Nov 2, 2006), *reh denied*, Jan. 10, 2007) which held that the peremptive periods in the applicable "statute of repose" are to be given prospective effect only.

This Court did not address the admiralty issue of latches or other issues in either of its

[12] Doc. 2148, Table 4 - "Remote Work."

Orders and Reasons because the *O'Dwyer complaints*[13] were found deficient. The previous Orders and Reasons are not binding on these Plaintiffs whose suit is not conslusory, not indecipherable, and not without context. For the facts establishing maritime jurisdiction in this suit, situs and traditional maritime activity, see Plaintiffs' *Ex Parte* Supplemental Memorandum in Support of Motion to Remand (Doc. 3170).[14]

**LACK OF PARTICULARITY**

Addressing the admiralty causes of action and allegations on the remote PROJECTS, there is lack of support or competent "evidence" by Defendants to support their motions. The declarations and documents supporting the basis for this Court's Orders and Reasons in Doc. 2142 ("Contractors") and Doc. 2148 ("Engineers") do not address this suit's maritime claims, inverse condemnation claims, or constitutional torts - reason enough to dismiss the motions.

**UNIFORMITY**

It is quite commonly observed that one of the goals of admiralty law is uniformity. To the extent this is achieved, it is one of the virtues of admiralty law that persons engaged in maritime commerce should not have to be exposed to different rules when their vessels (dredges included) operate from state to state no matter where those vessels were constructed, operate, or are serviced by contractors (shipyards) or engineers. The Constitution "extend(s)" the judicial power of the United States "to all cases . . . of admiralty and maritime jurisdiction," U.S. Const. Art. III § 2, cl.1. The "fundamental purpose" underlying that jurisdictional grant is "(t)o preserve adequate harmony and appropriate uniform rules relating to maritime matters and bring them within control of the federal government. *Knickerbrocker Ice Co. v. Stewart*, 253 U.S. 149,

---

[13] C.A. Nos. 05-4181, 06-1850, 06-1885, 06-4024, and 06-4389.

[14] Doc. 2354-2.

160 (1920); see Joseph Story, *Commentaries on the Constitution §870*, at 618-619 (abridged ed. 1933) (1987 reprint). The establishment of a uniform body of federal law governing maritime matters was of particular concern to the framers. *California v. Deseat Research, Inc.*, 523 U.S. 491, 501 (1998); (quoting Frankfurter and Landis) *The Business of the Supreme Court* (1927)); see also, David P. Currie, *Federalism and the Admiralty: "The Devil's Own Mess,"* 1960 Sup. Ct. Rev. 158.

To extend Louisiana R.S. 9:2771, 9:2772, and 9:5607 to apply to maritime causes of action threatens the long-standing federal interest in uniformity by placing the special interest "statutes of repose" beyond the reach of admiralty courts. Federal jurisdiction over admiralty actions is not exclusive. Since the first Judiciary Act in 1789, state courts have had concurrent jurisdiction over *in personam* admiralty actions under the "savings to suitors remedies" clause now embodied in 28 U.S.C. 1331 (1) and a jurisdictional basis alleged in this suit when filed in state court. See *American Dredging Co. v. Miller*, 510 U.S. 443, 446 (1994). In entertaining such actions, especially under *Scarbrough,* federal and state courts are generally obligated to give effect to substantive maritime law.[15] The Louisiana Legislature may not adopt or abolish a remedy (which the "statutes of repose" do) that "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law" *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 216 (1917), which is exactly what the "statutes of repose" do.

Moreover, to the extent that the "statutes of repose" draw meaningful distinctions among maritime naval architects, engineers, designers, and others, the statutes conflict with admiralty law. For example, in Alabama, Texas, and Mississippi, similar "statutes of repose" may be different, as to time. This again creates uniformity problems. As mentioned above, the

---

[15] *Scarborough*, 391 F.3d 660 (5th Cir. 2004).

applicability of "statutes of repose" in this admiralty suit flies in the face and conflicts with the admiralty "discovery rule."

In sum, the fundamental objective of admiralty law is uniformity *across the whole country*. Adopting a legal regime that permits parties no right of redress in admiralty for damages arising out of design, construction, and engineering resulting from maritime related works, conducted from vessels and appurtenances (dredges/barges) abrogation under state "statutes of repose" conflicts with admiralty law.

**EQUITABLE ESTOPPEL**

Under Louisiana law, the doctrine of equitable estoppel entered into Louisiana jurisprudence between 1818-1843 without reference to its English Chancery origins. *Frieby v. Chretien*, 10 La. 214 (La. 1835). It is well settled that equitable estoppel essentially translates as "protection from detrimental reliance." In Louisiana under the doctrine of *venire contra factum proprium,* or equitable estoppel, remains relatively unknown and has received mention only three times in Louisiana jurisprudence. See *Promissory Estoppel: Common Law in Civil Law Bottles*, Mohammed Mattar, 4 Tul.Civ.L.F. 71, 75, n. 9 (1988); *Sanders v. United Distributors, Inc.*, 405 So.2d 536 (4th Cir. 1981). Yet, to the extent the Plaintiffs and others who were damaged by the inundation relied on the professionalism of Defendant contractors and engineers (Boh Bros., Modjeski, and others) arising from the affirmation of completion and acceptance of non-defective work and services whether or not properly recorded, or from the occupation or possession by owner (fact dispute), or date of substantial completion, Plaintiffs are harmed where there may be defective work but on this there is no discovery. If despite Plaintiffs' affirmations, the work and services are deficient, the doctrine of *venire contra factum proprium*

should apply to extinguish the peremption defense under the "statutes of repose." This Court sitting with either its admiralty or its civil law cavity hat (under La. Civ. Code art. 4) should apply equitable principles to Plaintiffs' claims and against Defendants.

**CONSTITUTIONALITY**

That the vesting of rights under the "statutes of repose" must accrue within the five year period, this Court has made clear. The *owner* or *other person in possession or control* of any completed PROJECT, if deficient, cannot assert the defense (9:2772(E)). On the PROJECTS here, peremption should not apply because of admiralty law, and the application of equitable estoppel. As a result, five years does not bar Plaintiffs' claims or discovery of them.

With respect to dredging and excavation not done within the five year period, documents show Defendants do not state with particularity when or where dredging work was done "under or in connection with Bridges" nor when it was completed or accepted.

Additionally, while we recognize that in *Burmaster v. Gravity Drainage District No. 2 of Parish of St. Charles*, 366 So.2d 1381 (La. 1978) the Court held the 1977 version of La. Rev. Stat. 9:2771 and 9:2772 "statutes of repose" did not violate due process or equal protection guarantees, it did not address "Open Access to the Courts." Plaintiffs nevertheless submit two constitutional challenges to the "statues of repose." Here and now, those statutes in a different form, violate the fundamental right of Access to the Courts under Article 1, § 22 of the Louisiana Constitution by extinguishing rights before they accrue and plaintiffs' maritime remedies.

Aware that the *Burmaster* reasoning suggests that the "statutes of repose" define the term during which a cause of action exists and, by definition, if that time expires, no cause of action is vested *ergo* none is abrogated. That begs the question. The question is whether admiralty remedies accorded by due process, equal protection, and Access to the Courts are abrogated. In

short, constitutional protections cannot be evaded by arguing semantics in that the cause of action is not abrogated, but only defined to exist for a specific period of time. In any event, admiralty follows the "discovery rule."

Historically, the liability of architects, engineers, contractors, and other members of the construction community for injury or damages arising from defects was limited. As products liability law developed from *MacPherson v. Buick*, 111 N.E. 1050 (N.Y.Ct. App. 1916) onward, concepts eventually crept in to the abolition of the privity requirement in the construction area. So the construction industry's response was special "statutes of repose" which are, of course, not uncommon. They differ from state to state with respect to time in which actions must be commenced, and in some respects are similar in that an action must be filed from some trigger date associated with acceptance, the completion of a construction project, or substantial completion. Thus, uniformity and the "discovery rule" are in conflict with the present "statutes of repose."

The Louisiana "statutes of repose" bar all actions against categories of construction persons for, among others, damages from the design, planning, supervision, inspection, or observation of construction or damages to property, movable or immovable, "arising out of such deficiency" more than five years after the time trigger date as provided in the statutes.

That the Louisiana Legislature has considerable latitude in defining and modernizing the law needs no support. But under the Louisiana Constitution of 1974's preamble, Art. 1, §2 (Due Process), Article 1 § 3 (Equal Protection), and Article 1 § 4(B) Right to Property, there must be some limitation on that power for the benefit of those persons, like Plaintiffs, who sustained damage to their property. They belong to no identifiable group, and rarely are able to rally the political process to their aid like contractors and engineers. The protection of basic property

interests from the power to infringe them is a primary function of any constitution. Certainly, the right to the protection of the law for ones property is a right as essential to the happiness of an individual as is liberty.

While statutes of limitations are intended to compel the exercise of a right of action within a reasonable time and suppress stale and fraudulent claims so that they can be advanced while evidence to rebut them is fresh is understandable, "statutes of repose" bar all actions against the Defendant contractors and engineers after five years. In light of what the Legislature did after the *Bunge* case[16], and with the recent decision in *Curtis*,[17] perhaps it is time for the Court (District or Appellate), donning its Admiralty or Civil Law hat, to take a closer look especially regarding violation of Equal Protection under Louisiana Constitution Art. I § 3.

These consolidated national spotlight Katrina cases present important, peculiar, but not unique circumstances. Important rights are to be protected against Legislative power particularly where the Defendants are all scrambling for "immunity" one way or another.[18] Arguably the abrogation of legal remedies is not applicable to the facts in this *Admiralty case* under "savings to suitors remedies…" They conflict with admiralty law: the statutes today do not pass muster! They violate the Open Access to Courts provision of the Louisiana Constitution.

Not unmindful that the obvious purpose of the statutes is to end the potential threat of a lawsuit against contractors and engineers, should that objective be achieved at the expense of abrogating rights of a property owner? The two objectives have to be balanced against each other. Which should prevail? In this case that balancing weighs towards the Access to the Open Court. Sure, the passage of time may prevent difficulty in obtaining probative reliable evidence but those difficulties fall more heavily on the Plaintiff.

---

[16] *Bunge Corp. v. Gatx Corp.*, 557 So.2d 1376 (La. 1990).
[17] *Curtis v. Branton Industries, Inc.*, 944 So.3d 716 (La.App.3.Cir. Nov. 2, 2006), *reh denied*, Jan. 10, 2007.
[18] Under the military contractor defense, sovereign immunity, derivative discretionary function, or other basis.

Any argument that "long tail liability" accompanies torts of omission or commission in construction projects misses the mark. The reality is that even without special "statutes of repose," those in the construction business (here, contractors and engineers) are not legally liable for injuries that are caused by errors and omissions of others. While control may be a factor after completion of a Project, it is not relevant after a completed project or work or service may not have been completed *properly*. Strangely, the "statutes of repose," while protecting Defendants, put those who had no part in the Project or works or services in the liability seat. The net effect is to subject Owners to the results of defective work and services after five years – an effect that is unconscionable here where Owners hide under "immunity." See *Watson v. Philip Morris Companies, Inc.*, 420 F.3d 852 (8th Cir. 2004), *cert. granted,* (U.S. Jan. 12, 2007) (No. 05-1284); *Lakeview Boulevard Condominium Assoc. v. Apartment Sales Corp.*, 6 P.3d 74 (Wash.Ct.App. 2000).

The Supreme Court structured the government contractor defense in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) which is under review by the Supreme Court in *Watson, infra.* The defense includes three elements, and those elements are disputed issues of fact in this suit:

(1) Did the government approve reasonable pricing specifications;

(2) Did equipment conform to those specifications; and

(3) Did the supplier of services or of materials warn the government about any danger known to the supplier and not known to the government?

**<u>SPECIFICITY AS TO DEFENDANT MODJESKI AND MASTERS</u>**

In 1981 at a Public Hearing on the proposed dredging and widening of the 17th Street Canal and increasing the pumping capacity of Station #6 (the largest in the world), Mr. Conway with Modjeski, the now Chairman of the Board, said:

> One approach to the problem and one that I said we're trying to explore is raising the levees, but we found that – well, I say raising the levees so much as widening the canal adjacent to the levee, steeping their slopes. We found we can't do that. The levees are currently – I won't say on the point of eminent collapse, because they're not – but they currently violate the Corps of Engineer standards for levee stability. These standards generally require a 1.3 factor of safety on what is called slope stability. They violate that standard virtually along the canal. Any attempt by us to dig more dirt away adjacent to those levees tends to worsen that stability problem. We're currently investigating this in great detail. We're starting a detailed investigation.

Exhibit D (pp. 9-10), Transcript, 1981 Hearing.

Despite that statement, documents provided by Modjeski indicate **November 30, 1997** "Dredging under certain bridges" on the **17th Street Canal.**[19] On December 3, 1997, new floodwalls and gates of the I-wall type were installed "between the Bridges and adjacent to the north and south side of the Bridges, on east and west sides of the 17th Street Canal."[20] What was the scope of the contract? Who drafted the dredging design plan? When did they finish?

Whether the PROJECT work is in compliant with *Boyle, infra,* is only determinable through limited discovery.

**SPECIFICITY AS TO BOH BROS.**

In the Incorporated Statement of Undisputed Material Facts (Doc. 560-4), Boh Bros. states: "On May 9, 1999, Boh Bros. was contracted to provide all equipment, materials, and supplies for work on the 17th Street Canal *projects*." If that contract is a contract for the sale of goods (materials and supplies), nowhere in 9:2771, 9:2772, or 9:5607 is there mention of peremption for a contract for the sale of goods (materials and supplies). In fact, the Court in *Burmaster* stated:

---

[19] Doc. 1084, p. 5, "Table B."

[20] Doc. 1084, p. 5, "Table B."

> We need not reach the issue of whether this statutory language [9:2772] includes or excludes materialmen and those [Boh Bros.] furnishing or manufacturing construction components because . . . it is reasonable for the legislature to have concluded that . . . those furnishing . . . construction components are . . . different from . . . the architect [or engineer] [contractor 9:2771] such that the protection of the pre-emptive period established by 9:2772 should not be accorded to that class.

*Burmaster*, 366 So.2d at 1386 (1978).

Accordingly, assuming *arguendo* the contract mentioned is one for the sale of goods, the "statutes of repose" do not apply.

## CONCLUSION

This case does not "mimic the other class action" suits and so is not subject to the Court's earlier Orders and Reasons.[21] Plaintiffs' suit asserts theories different from 06-4065, 06-4634, 06-0225, 06-5367, 06-4931, 06-5785, 06-5042, 06-647, 06-5308, 06-5163, 06-5032, 06-6642, and 06-5937.

As an admiralty, inverse condemnation (expropriation), and constitutional tort suit, all Motions should be denied. In the alternative, the Rule 56 motion should be deferred to allow Plaintiffs limited discovery.

Attached to this Opposition Memorandum are:

1) Statement of Disputed Material Facts (pgs. 19-23);

2) Vibration monitoring report and letters (Exhibit A);

3) Declaration of Tracy Gately (Exhibit B);

4) Affidavit of H. J. Bosworth (Exhibit C);

5) Transcript of 1981 Public Hearing, March 31, 1981 (Exhibit D); and

6) Selected pages from the *Preliminary Report* from Berkeley.

---

[21] Docs. 2142 and 2148.

Respectfully submitted,

WILLIAM E. O'NEIL (BAR #10213)
THE O'NEIL GROUP, LLC
*Counsel for Plaintiffs*
701 N. Causeway Boulevard
Metairie, Louisiana 70001
Phone: (504) 833-4770
(504) 813-3283
Fax: (504) 831-5360
E-mail: weo@theoneilgroup.com

-and-

DON M. RICHARD, (BAR #11226)
ATTORNEY AT LAW
*Counsel for Plaintiffs*
701 N. Causeway Boulevard
Metairie, Louisiana 70001
Phone: (504) 834-9882
(504) 813-3283
Fax: (504) 831-5360
E-mail: drichard@dmrlaw.net

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the above and foregoing has been served on all counsel of record via U.S. Mail, e-mail, hand delivery, or facsimile this 23rd day of March, 2007.

New Orleans, Louisiana this 23rd day of March, 2007.

WILLIAM E. O'NEIL
THE O'NEIL GROUP, LLC
*Counsel for Plaintiffs*
701 North Causeway Boulevard
Metairie, Louisiana 70001
Phone: (504) 833-4770
(504) 813-3283
Fax: (504) 831-5360
E-mail: weo@theoneilgroup.com