UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO.: 05-4182<br><br>SECTION "K" (2) |

FILED IN:  05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073,
05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885,
06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346,
06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931,
06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471,
06-5771, 06-5786, 06-5937, 06-7682, 07-0206, 07-0647,
07-0993, 07-1284, 07-1286, 07-1288, 07-1289

PERTAINS TO:  LEVEE

MEMORANDUM OF THE PUBLIC BELT RAILROAD
COMMISSION FOR THE CITY OF NEW ORLEANS IN SUPPORT
OF MOTION TO DISMISS SUPERSEDING MASTER CONSOLIDATED
CLASS ACTION COMPLAINT PURSUANT TO F.R.C.P. RULE 12(b)(6)

I.  INTRODUCTION

In accordance with the Court's Case Management Order No. 4, the Levee Plaintiffs' Subgroup Litigation Committee (the "Levee PSLC") filed a Superseding Master Consolidated Class Action Complaint (the "Master Complaint"), Doc. No. 3420, on March 15, 2007.

The Master Complaint names the Public Belt Railroad Commission for the City of New Orleans (the "Public Belt") as a defendant. Id., ¶ 4(s).

The plaintiffs' claims against the Public Belt arise solely from a September 11, 2004 train derailment that allegedly caused damage to Floodgate W-30 near the western sea wall of the Industrial Canal. Master Complaint, ¶s 132 – 133, and 253 – 257.

The plaintiffs correctly allege that a co-defendant, The Board of Commissioners of the Orleans Levee District (the "Orleans Levee District"), "had care, custody and control of the entire New Orleans levee and flood wall system at all times pertinent herein, . . ." Master Complaint, ¶ 270.[1] In truth, as explained *infra*, La. R.S. 38:307 grants the Orleans Levee District the "full and exclusive" authority, control and administration of the flood control systems in a geographic area that includes the Industrial Canal flood control system. And Federal law provides that the U.S. Army Corps of Engineers has the duty and responsibility to protect the population of the United States, including the City of New Orleans, from flooding. See, 33 U.S.C. §701, *et seq.*

The plaintiffs imply, but do not specifically state, that the Public Belt owed a duty to the plaintiffs and/or to the public to protect them from flooding. Master Complaint, ¶ 254 states: "The following defendants had the legal responsibility and duty to these plaintiffs to protect against the harm and damages alleged herein resulting from the failure of the IHNC [the Inner Harbor Navigation Canal]: . . ." The Public Belt is included in the list of such defendants.

The Public Belt had no duty to protect the plaintiffs, or anyone, from the risk of flooding. That duty has been assigned to the Orleans Levee District by state law, and to the Corps of Engineers by federal law.

The Public Belt had no duty to repair the floodgate, nor did it have the right or opportunity to repair the floodgate. Rather, the floodgate at all pertinent times has been in the care, custody and control of a co-defendant, the Orleans Levee District, as affirmatively alleged by the Plaintiffs. The duty to repair the floodgate has been vested in the Orleans Levee District and in the U.S. Army Corps of Engineers by the Louisiana

---

[1] In an apparent contradiction, the Master Complaint also alleges that "the [Inner Harbor Navigational Canal] levees and floodgates were within the care, custody, control and *garde* of the PNO [Port of New Orleans], . . ." *Id.*, ¶ 266. For purposes of the Public Belt's Motion to Dismiss, it is significant that the Plaintiffs have not alleged that the *Public Belt* ever had care, custody, control or *garde* of any portion of any flood control system, including, but not limited to, Floodgate W-30.

legislature and by the U.S. Congress, respectively. No artful pleading on behalf of the plaintiffs can create such a duty on the part of the Public Belt.

In addition, the September 11, 2004 train derailment was not the legal, or proximate, cause of the plaintiffs' flood damage.

Further, the Master Complaint fails to allege any negligence or other fault of the Public Belt in causing the train derailment. The Master Complaint states only that "a New Orleans Public Belt Train derailment caused a thirty-two and a half foot wide gap in Floodgate W-30 . . ." *Id.* ¶ 256. Thus, the plaintiffs allege only that the derailment caused damage to the floodgate; they make no allegations concerning the cause of the derailment. No negligence or other fault of the Public Belt is alleged to have caused the derailment.

The plaintiffs could possibly amend their complaint to allege facts sufficient to state that some action or inaction of the Public Belt was the cause-in-fact of the derailment. However, because the Public Belt has no duty to protect the plaintiffs, or anyone, from flood damage, and because the train derailment was not the legal, or proximate, cause of the plaintiffs' flood damage, granting the plaintiffs leave to amend would be futile. The grant or denial of an opportunity to amend is within the discretion of the District Court, but leave to amend need not be granted when amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962); *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 386-388 (5th Cir. 2003).

## II.   ARGUMENT

### A.   Standard of Review

Under F.R.C.P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The Court may not dismiss a claim unless it appears certain that the claimant cannot prove any set of facts in support of its claim that would entitle it to relief. *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 764 (5th Cir. 1996). However, conclusory allegations masquerading as factual conclusions will not defeat a motion to dismiss. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); see also *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974) (Conclusory allegations and unwarranted deductions of

fact are not admitted as true). Courts do not have to accept "legal conclusions, 'unsupported conclusions,' 'unwarranted references,' or 'sweeping legal conclusions cast in the form of factual allegations.'" 5A, Wright & Miller, *Federal Practice and Procedure*, §1357, at 315-18.

### B. The Public Belt Does Not Have a Duty in Tort to Repair Floodgate W-30, Nor Is It Permitted by Law to Repair a Floodgate.

Pursuant to state law, the Board of Commissioners of the Orleans Levee District has full and exclusive jurisdiction over the levees and flood control structures within its jurisdiction, and its jurisdiction includes the levees and flood control structures of the Inner Harbor Navigational Canal (known as the Industrial Canal) and the other canals in Orleans Parish that are connected to Lake Pontchartrain.

La. R.S. 38:307(A)(1) provides, in pertinent part:

**Orleans Levee District; powers of board of commissioners**

> The board of commissioners of the Orleans Levee District ... shall have full and **exclusive** right, jurisdiction, power, and authority to locate, relocate, construct, maintain, extend, and improve levees, embarkments, seawalls, jetties, breakwaters, water-basins, and other works in relation to such projects ... along, over, and on the shores, bottom, and bed of Lake Pontchartrain in the parish of Orleans from its western boundary to the boundary line separating township 11 south, range 12 east, from township 11 south, range 13 east, at a distance not to exceed three miles from the present shore line, as the board may determine, and along and on the shores adjacent to the lake and along the canals connected therewith. The levees, embankments, seawalls, jetties, breakwaters, waterbasins, and other works shall be of such character and extent and of such height, width, slope, design, and material as the board determines, with power and authority to improve and to protect the same with such other structures as are deemed necessary and proper by the board.

*Id.*; emphasis supplied.

The Public Belt Railroad Commission for the City of New Orleans is an autonomous political subdivision of the State of Louisiana, analogous to the Sewerage & Water Board of New Orleans. *Cooper v. Public Belt Railroad*, 2003-2116 (La. App. 4th Cir. 10/6/04), 886 So.2d 531, 536-37, *writ denied*, 2004-2748 (La. 1/28/05), 893 So.2d

75.[2]   La. R.S. 33:4530(C) provides that the "control, operation, management and development of the public belt railroad system shall be exclusively vested in" the Public Belt Railroad Commission for the City of New Orleans.

The Public Belt has no duty and no power to maintain or repair any floodgates, levees or flood control systems. The limited delegation of power by the legislature to the Public Belt authorizes the Public Belt only to control, operate, manage and develop a public belt railroad system.

In addition, the Public Belt has never had custody, control or *garde* of Floodgate W-30, or any floodgate, levee, or portion of any flood control system. As previously, noted, the plaintiffs correctly allege that Floodgate W-30 is included in the flood control system under the care, custody and control of the Orleans Levee District. Master Complaint, ¶ 270. The plaintiffs do not allege that Floodgate W-30 is part of the Public Belt's railroad system, or that the Public Belt ever had custody, control or *garde* of Floodgate W-30 or any portion of the flood control system of the Industrial Canal, nor could they truthfully make such an allegation.

Recently, in these consolidated cases, this Court granted the City of New Orleans' Motion to Dismiss for Failure to State a Claim in several cases. Order and Reasons (September 13, 2006), Document No. 1133. That decision stated:

> The gravamen of the City's motion is that plaintiffs in these cases seek damages allegedly caused by the breach of the levees and flood walls in the aftermath of Hurricane Katrina. However, as the City of New Orleans does not own and has no *garde*, care, custody of control of the levees in question, and the City of New Orleans did not participate in the design, construction, or maintenance of the levees, no cause of action lies against it.
>
> . . . [S]tatutorily, the City of New Orleans is not responsible for the levees. La. Rev. Stat. 38:307 provides that the Board of Commissioners of the Orleans Levee District has the full and exclusive right and jurisdiction over the levees and La. Rev. Stat. 38:301 provides that the levee districts have the right to maintain levees. Thus, it is clear that there are no duties which the City of New Orleans has with respect to the levees.

---

[2]   Article VI Section 44(1) of the Louisiana Constitution defines "local political subdivision" to mean "any parish or municipality," and Section 44(2) defines "political subdivision" to mean "a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions."

*Id.*, p. 1.

The Court was correct in concluding that the City has no duties with respect to the levees. The City is a general purpose, "local political subdivision" pursuant to Article III, Section 44(1) of the Louisiana Constitution and it possesses broad police powers and authority granted by the legislature and pursuant to its Home Rule Charter, which Charter is also the result of a legislative grant of authority. **If the City has no duties with respect to the design, construction, or maintenance of the levees, then a limited purpose political subdivision, such as the Public Belt, with limited, defined powers to control, operate, manage and develop a public belt railroad system, certainly has no duties with respect to the levees, floodgates or any part of the flood control system.**

If a public school bus had damaged an Industrial Canal floodgate on September 11, 2004, then presumably the plaintiffs would have named the Orleans Parish School Board as a defendant responsible for the flooding resulting from Hurricane Katrina. But creative pleading does not give rise to a legal duty. Limited purpose political subdivisions, such as the School Board or the Public Belt, have no duties with respect to maintenance or repair of levees, floodgates, or any part of the flood control system.

The Public Belt owes no duty to the plaintiffs, or to the public, concerning flood control. Under the duty-risk analysis, the plaintiffs must prove (1) that the conduct in question was the cause-in-fact of the resulting harm, (2) the defendant owed a duty of care to the plaintiffs, (3) the requisite duty of care was breached by the defendant, and (4) the risk of harm was within the scope of protection afforded by the duty breached. *Lazard v. Foti*, 02-2888 (La. 10/21/03), 859 So.2d 656, 659; *Roberts v. Benoit*, 605 So.2d 1032, 1041-42 (La. 1992). To recover, a plaintiff must prove all four elements. *Lazard*, at 659; *Roberts*, at 1042.

A threshold issue in any negligence action is whether the defendant owed the plaintiffs a duty. *Lazard*, at 659. Whether a duty is owed is a question of law. *Id.* Thus, if the Public Belt can establish that it owed no duty to the plaintiffs or the public concerning flood control, this motion to dismiss should be granted as a matter of law.

In *Safford v. Bayou Lafourche Fresh Water District*, 03-0700 (La. App. 1st Cir. 2/23/04), 872 So.2d 1127, *writ denied*, 04-0747 (La. 5/7/04), 872 So.2d 1086, the plaintiff, who owned riparian land along Bayou Lafourche near Donaldsonville, constructed a bulkhead, a dog pen and boat shed along the Bayou. *Id.*, at 1129. He sued the Bayou Lafourche Water District, seeking damages for flooding to those structures due to elevated water levels allegedly caused by the Water District's operation of pumps along the Bayou, pursuant to its statutory duty to provide fresh water to the surrounding area. *Id.* at 1128-29.

The Court of Appeal found that the Bayou Lafourche Water District had no duty to the plaintiff, or to the public, concerning flood control. The Court stated:

> In reviewing the question of whether the District's actions constituted negligence, we conclude it owed no duty toward Mr. Safford with regard to the property at issue. The police power of the state encompasses the exercise of its sovereign right to promote the general welfare of society, including the inherent right to protect citizens from damage by flood. *Board of Commissioners of Orleans Levee District v. Department of Natural Resources*, 496 So.2d 281, 289 (La. 1986). The legislature may delegate, either expressly or implicitly, the exercise of the police power to subordinate boards, commissions, or political corporations. *Id.* The legislature has delegated the task of ensuring an adequate supply of fresh water in Bayou Lafourche to the District; it has not delegated any duty or responsibility of flood control to the District. In *Board of Commissioners of Lafourche Basin Levee District v. Board of Commissioners of Atchafalaya Basin Levee District*, 340 So.2d 600, 602 (La. App. 1st Cir. 1976), this court confirmed the limited function and duties of the District by observing that "the purpose of [Acts 1950, No. 113] was to provide fresh water for drinking purposes rather than for the maintenance of a channel for navigation in Bayou Lafourche."

*Id.*, at 1130-31; emphasis supplied; footnote omitted.

With respect to the instant matter, the legislature has delegated to the Public Belt the duty of controlling, operating, constructing, maintaining and developing a public belt railroad system for the City of New Orleans, and the legislature has delegated to the Orleans Levee District the "full and exclusive" duty of flood control within a geographic area that includes the Industrial Canal, its levees, floodgates and other appurtenances. La. R.S. 38:307.

The legislature has not delegated any duty or responsibility to the Public Belt concerning flood control, or the maintenance or repair of flood control improvements. **If a Water District that operates pumping stations along Bayou Lafourche pursuant to its statutory duty to provide fresh water to the surrounding area has no duty or responsibility concerning flood control along Bayou Lafourche, then it is clear beyond peradventure that the Public Belt has no duty or responsibility concerning flood control along the Industrial Canal.**

There is no pleading by the plaintiffs, regardless of how artful, that can create such a duty on the part of the Public Belt. Allowing the plaintiffs to amend to attempt to set forth such a duty would be futile. *Foman v. Davis, supra; U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc., supra.*

The claims of the plaintiffs against the Public Belt are due to be dismissed for failure to state a claim upon which relief may be granted.[3]

### C. The Train Derailment Was Not the Proximate Cause of the Plaintiffs' Flood Damage.

The plaintiffs imply, but do not explicitly state, that the September 11, 2004 train derailment was a proximate cause of their flood damage. Master Complaint, ¶s 132, 256-57. Those allegations are mere legal conclusions, Conclusory allegations masquerading as factual conclusions will not defeat a motion to dismiss. *Blackburn v. City of Marshall, supra,* 42 F.3d at 931.

---

[3] If this motion to dismiss is denied, then in due course, the Public Belt will file a motion for summary judgment, showing that it obtained an estimate dated October 18, 2004, from Boh Bros. Construction Company, LLC, for repairs to Floodgate W-30 that was damaged on September 11, 2004, and that on November 11, 2004, Anthony Marinello, Manager of Engineering and Maintenance for the Public Belt, wrote a letter to Stevan Spencer, Chief Engineer of the Orleans Levee District, transmitting a copy of the Boh Bros. estimate and description of the proposed repairs to Floodgate W-30, and offered to have Boh Bros. perform the repairs at the expense of the Public Belt. The Levee Board refused the offer of the Public Belt to have Boh Bros undertake the repairs to Floodgate W-30 at the Public Belt's expense.

Instead, in December, 2004, the Levee Board, for the first time, provided the Public Belt with its own estimated costs of repairs. The Public Belt promptly hand-delivered a check to the Levee Board in the amount of $427,387.96, the full amount of the Levee Board's estimated costs of repairs to the floodgate. See, the affidavit of Jim Bridger, General Manager (Chief Executive Officer) of the Public Belt, attached as Exhibit 1 to the Motion for Summary Judgment of CSX Transportation, Inc. in the *Bourgeois* case, No. 06-5131, one of the cases in the Katrina Canal Breaches Consolidated Litigation, No. 05-4182. CSX's Motion to Dismiss/For Summary Judgment in the *Bourgeois* case is Doc. No. 1697 in these consolidated cases.

The December 11, 2004 train derailment was not the proximate cause of the plaintiffs' flooding from Hurricane Katrina, eleven months later. But for the City of New Orleans and the State of Louisiana forming the Public Belt Railroad in 1908, the alleged September 11, 2004 derailment would not have occurred, but that doesn't render the City and the State liable for the plaintiffs' flooding.

Cause-in-fact is a factual issue, but legal cause is a purely legal question. *Todd v. State*, 96-3090 (La. 9/9/97), 699 So.2d 35, 39; see also, *Pickett v. RTS Helicopter*, 128 F.3d 925, 929 (5th Cir. 1997) ("Although [defendant] PSC may have established a prerequisite to the eventual injury by designing a seat belt that *could* be misassembled, PSC did not proximately cause the injury because, as a matter of law, the *actual* misassembly sufficiently intervened to break the causal chain." Italicized emphasis in original; underlined emphasis added). The Court must examine the facts alleged in the Complaint to determine whether, as a matter of law, the December 11, 2004 train derailment was a legal cause of the plaintiffs' flooding.

In *Sutton v. Duplessis*, 584 So.2d 362 (La. App. 4th Cir. 1992), the Court defined legal, or proximate, cause as "any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred." *Id.* at 365; citations omitted. The *Sutton* Court stated that when an accident results from two negligent acts, "one more remote and one an intervening cause, the presence of the intervening cause prevents a finding of liability on the one responsible for the more remote cause." *Id.* at 365-66; citations omitted.

In *Sutton*, the Court of Appeal reversed a trial court judgment which found a mother to be at fault when her six year old son ran into the street and was struck by a car, because she was late in picking him up from school after classes ended. *Id.* at 364. The Court found there was factual causation – the child would not have been injured if his mother had been on time – but the mother's negligence did not constitute the legal, or proximate, cause of the child's injuries. *Id.* at 365. The school board's negligence superceded the mother's negligence in not picking up her child on time. *Id.* at 365-66.

The Court found the school board violated its duty of dealing with the foreseeable possibility that parents would show up late by taking action to prevent children from leaving school unsupervised. *Id.*

Similarly, in the instant case, the negligence of the Levee Board, in not replacing or repairing the damaged floodgate during the eleven month interval between the time the floodgate was damaged and the arrival of Hurricane Katrina, superceded any alleged negligence of the Public Belt in damaging the floodgate.[4] Maintaining and repairing the floodgate is within the scope of duty of the Levee Board, not the Public Belt. Just as it was foreseeable by the School Board that parents might be late in picking up their children from school, it was certainly foreseeable by the Levee Board that traffic through roadways and railroads adjacent to the floodgates will damage the floodgates.

In *Graham v. Amoco Oil Co.*, 21 F.3d 643 (5th Cir. 1994), the Fifth Circuit, relying upon *Sutton v. Duplessis*, found that, even if Amoco was negligent in delivering a large load of casing pipe to an oil platform without notifying the contractor in advance, the contractor's negligence, in unloading the casing and in supervising the plaintiff, superceded any negligence of Amoco in delivering the casing. *Id.* at 649. The Court also found the delivery to be "too remote" to constitute the legal cause of the plaintiff's injury. *Id.*

In *Brow v. Allstate Indemnity Co.*, 99-2319 (La. App. 1st Cir. 11/3/00), 771 So.2d 268, the plaintiff alleged that the Louisiana Department of Transportation and Development ("DOTD") was among those at fault for his injuries in an automobile accident, alleging that DOTD failed to post any "wrong way/do not enter" signs at a highway intersection. The defendant Cummings entered the wrong lane of traffic and collided head-on with the vehicle driven by the plaintiffs. *Id.* at 273-74. The Court found that DOTD's action was a cause-in-fact of the collision, that Cummings would not have collided with the plaintiffs' vehicle if he had not entered the wrong lane of traffic. *Id.* at 273. But Cummings had traveled in the wrong lane for approximately 4.3 miles before the collision with plaintiff's vehicle, during which time eight or nine ongoing

---

[4] Significantly, the plaintiffs have not alleged that the train derailment resulted from the Public Belt's negligence or other fault. See p. 3, supra.

vehicles were forced off the highway to avoid Cummings' vehicle, and others attempted to alert Cummings by flashing their headlights and blowing their horns. *Id.* at 274.

The Court stated that the "wreck was the result of the events that had intervened between Cummings' entrance to Highway 61 and the scene of the accident and was not legally caused by DOTD." *Id.* at 274. The Court noted:

> Whether phrased in terms of scope of duty or legal cause or proximate cause, it can be useful to consider whether too much else has intervened- time, space, people, and bizarreness.

*Id.*; internal citation omitted.

Indeed, in *Lazard v. Foti, supra*, the Louisiana Supreme Court held that the defendant Sheriff was not liable for the death of a juvenile detainee who was improperly held in an adult detention facility, improperly released without adult supervision (he should have been released to his parents' custody), and then killed by the criminal act of a third party some twelve hours after his release.

The Court noted that a "duty owed by the sheriff does not render him liable for all consequences spiraling outward until the end of time." *Id.* at 662; internal citation omitted.

In the instant action, even if the negligence of the Public Belt resulted in damage to the floodgate on September 11, 2004, such negligence was superceded by the intervening negligence of the Levee Board in not replacing or repairing the floodgate during the eleven months before Hurricane Katrina struck. The negligence of the Public Belt, if any, in causing the September 11, 2004 train derailment does not render it liable for all consequences spiraling outward until the end of time.

The negligence of the Levee Board in not replacing the damaged floodgate during the eleven month interval between the train derailment and the arrival of Hurricane Katrina was an intervening and superseding cause of the plaintiffs' flood damage, which prevents any finding of liability against the Public Belt for allegedly causing the train derailment. The train derailment is too remote from the plaintiffs' flood damage to be the proximate cause of that damage.

The September 11, 2004 train derailment was not the legal cause of the Plaintiffs' flood damages from Hurricane Katrina. The Plaintiffs have no ownership interest, or

other interest, in the floodgate that was allegedly damaged by the derailment. The plaintiffs' damages were not caused by a train derailment; rather, the plaintiffs' damages resulted from a flood.

### III. CONCLUSION

The Public Belt has no duty to the plaintiffs, or to anyone, to protect them from flooding, nor does it have any duty to maintain or repair flood control structures.

Moreover, the September 11, 2004 train derailment was not the legal, or proximate, cause of the Plaintiffs' flood damage from Hurricane Katrina.

Alternatively, the Plaintiffs' Master Complaint states no facts alleging negligence or other fault of the Public Belt in the cause-in-fact of the September 11, 2004 train derailment.

Thus, the claims of the plaintiffs against the Public Belt are due to be dismissed, for failure to state a claim upon which relief may be granted.

Respectfully submitted,

HAMILTON, BROWN & BABST

GALEN S. BROWN, T.A. (#3556)
KAREN E. MILNER (#8499)
601 POYDRAS STREET, SUITE 2750
NEW ORLEANS, LOUISIANA 70130
TELEPHONE: (504) 566-1805
FAX: (504) 566-1569
E-MAIL: gbrown@hamiltonfirm.net

Attorneys for Defendant, Public Belt Railroad Commission for the City of New Orleans

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this 30th day of March, 2007.

*Galen S. Brown*
GALEN S. BROWN