UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION<br><br>NO. 05-4182 "K" (2) |
| PERTAINS TO LEVEE: MASTER<br>COMPLAINT | * * * | JUDGE DUVAL |
| FILED IN:<br>O'DWYER, No. 05-4181<br>TAUZIN, No. 06-0020<br>O'DWYER, No. 06-4389<br>ADAMS, No. 06-4634<br>O'DWYER, No. 06-5786 | * * * * * | MAG. WILKINSON |

MEMORANDUM IN SUPPORT OF
CSX TRANSPORTATION, INC.'S AND CSX CORPORATION'S MOTION TO
DISMISS UNDER FED. R. CIV. P. 12(b)(6) (FAILURE TO STATE A CLAIM),
FED. R. CIV. P. 12(b)(2) (LACK OF JURISDICTION OVER THE PERSON), AND
FED. R. CIV. P. 12(b)(5) (INSUFFICIENCY OF SERVICE OF PROCESS)[1]

The Superseding Master Class Action Complaint ("Master Complaint") filed in the above-referenced Levee actions seeks to hold CSX Transportation, Inc. ("CSXT") liable for

---

[1] In addition to CSX Transportation, Inc. ("CSXT"), the Master Complaint lists as a defendant CSX Transportation Corporation, which does not exist. CSX Corporation ("CSXC"), which is a defendant in the underlying *O'Dwyer* actions, is presumably the entity that plaintiffs intended to name in this Master Complaint. To the extent that plaintiffs intended to name CSXC, for the reasons stated in CSXC's motions to dismiss the *O'Dwyer* complaints (Dkt. Nos. 1046, 1550 and 3097), personal jurisdiction over CSXC is lacking in this Court (and CSXC also incorporates by reference those arguments). From this point forward, however, only CSXT, the only real CSX entity named, will be referenced and the Rule 12(b)(6) arguments discussed.

952822_1.DOC

damages allegedly suffered by plaintiffs when Hurricane Katrina breached the New Orleans levee system on August 29, 2005. The Master Complaint is legally deficient, however, and fails to state a claim against CSXT. As an initial matter, plaintiffs fail to even state by name a cause of action against CSXT. Rather, they seek to impose "legal fault" on the company based only on a so-called "legal duty." Master Complaint Count V. No such bare-bones cause of action exists under Louisiana law.[2]

Even assuming that plaintiffs intended to plead a negligence claim against CSXT, plaintiffs do not allege a legally enforceable duty owed by CSXT to plaintiffs – an essential element of a negligence or any other tort claim – nor could they.[3] Further, in asking this Court to instruct CSXT on the "design and construction" of its rail system, plaintiffs run headlong into the preemptive effect of two separate federal railroad regulatory schemes – the Interstate Commerce Commission Termination Act of 1995 and the Federal Railroad Safety Act.

CSXT already has moved to dismiss all of the underlying actions in which claims have been asserted against it on these same grounds. *See* CSXT's motions to dismiss the *O'Dwyer*, *Tauzin* and *Adams* actions (Dkt. Nos. 1045, 1886, 3095, and 3099). Because CSXT's motions remain pending, and because this Court's Case Management Order IV requires the filing of pleadings responsive to the Master Complaint by March 30, 2007, CSXT is filing this protective motion to reiterate the grounds for CSXT's dismissal from these Katrina cases. Nevertheless, a

---

[2] To the extent plaintiffs believe they can facilitate class certification through streamlined pleadings, they are mistaken. As the Fifth Circuit has repeatedly made clear, "[w]hether common issues predominate and whether the class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *Steering Committee v. ExxonMobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006). Included within that burden is the requirement that "plaintiffs [] first show that the cause of action, taken as whole, satisfies the predominance requirement of Rule 23(b)(3)." *Corley v. Indep. Sch. Dist.*, 152 Fed. Appx. 350, 355 (5th Cir. 2005).

[3] To avoid the need to file additional motions and briefing, CSXT will alternatively assume that plaintiffs intended to plead a negligence claim against it as they did in the underlying actions.

ruling on those pending motions in CSXT's favor will similarly dispose of this motion. Therefore, for the reasons set forth below and those stated in CSXT's motions to dismiss the *O'Dwyer*, *Tauzin*, and *Adams* actions (Dkt. Nos. 1045, 1886, 3095, and 3099, which are incorporated herein by reference), CSXT respectfully requests that this motion be granted and that the plaintiffs' claims against CSXT in the Master Complaint be dismissed.

## I. The Master Complaint Fails to Allege Any Duty Owed by CSXT to Plaintiffs and Therefore Fails to State a Claim

"A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006). In Louisiana the existence of a duty and its scope are questions of law. *See Dupre v. Chevron, U.S.A., Inc.*, 20 F.3d 154, 159 (5th Cir. 1994). The failure to allege a duty renders a complaint legally deficient. *Johnson v. United States,* 547 F.2d 688, 695 n.47 (D.C. Cir. 1976) (*citing* 5 C. Wright & A. Miller, *Federal Practice* § 1249 at 227-28 (1969)); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial" (citations omitted)).

The Master Complaint seems to allege that CSXT is liable for plaintiffs' flood damage due to CSXT's design and construction of a railroad crossing at or near the Industrial Canal's flood protection structures. Specifically, plaintiffs claim that CSXT "used highly erodible, lightweight and/or porous materials... which caused CSX[T]'s structure to be significantly

weaker than its surrounding flood protection structures." Master Complaint ¶ 258.[4] Further, plaintiffs fault CSXT for failing to install "erosion protection devices" to prevent or limit erosion and/or failure of its structure. Master Complaint ¶¶ 259-60. Plaintiffs conclude that CSXT "failed to exercise due care in buildings (sic) its structure, and its failures directly and/or proximately caused and/or contributed to the breaches of the IHNC on the west side." Master Complaint ¶ 261.

CSXT does not have a legally cognizable duty to protect plaintiffs or the population of New Orleans from flood damage. In fact, the Master Complaint explicitly recognizes that it is the New Orleans Levee Board that has jurisdiction over and responsibility for the maintenance of the New Orleans flood protection system. Master Complaint ¶ 251 (Orleans Levee District "specifically was granted authority to erect flood control works as they relate to tidewater flooding, hurricane protection and saltwater intrusion, and engage in the construction and maintenance of safe levees and/or spoilbanks"); ¶ 270 (Orleans Levee District "had care, custody and control of the entire New Orleans levee and flood wall system at all times pertinent herein...").[5] CSXT thus has no duty to erect "flood protection structures" or to protect the

---

[4] In fact, plaintiffs do not identify any flood protection structures built or maintained by CSXT. Rather, plaintiffs erroneously conclude – without offering any factual support – that rail crossings and roadbeds are flood protection structures.

[5] The underlying complaints even more explicitly recognize the Orleans Levee District's responsibility for and control of the flood protection system. *See, e.g., Tauzin* Second Amended Complaint (Dkt. No. 675) ¶ 15(a) (the Orleans Levee District is "responsible for the development and maintenance of, and ***directly in charge of and responsible for*** the efficient operation and maintenance of ***all*** of the levee structures and facilities") (emphasis added); *Adams* Complaint (Dkt. No. 1 in No. 06-4634) ¶ 28(11) ("[t]he Orleans Levee District has the ***full and exclusive right, jurisdiction, power and authority*** to locate, relocate, construct, maintain, extend, and improve levees, embankments" and other parts of the New Orleans flood protection system.) (emphasis added).

residents of New Orleans from flood damage. Such a duty, if there is one, rests with others,[6] not with private railroad entities such as CSXT.

As fundamentally, tort law does not impose duties owed to the public at large. Plaintiffs seek to represent a class composed of *all* residents, domiciliaries, and property owners in the geographic area

> bounded to the north by Lake Pontchartrain, to the south by the Mississippi River, to the east by the IHNC, and to the west by the 17th Street Canal running from Lake Pontchartrain south to Metairie Road and then west on Metairie Road to Causeway Boulevard, and then south on Causeway Boulevard to the Mississippi River, who/which sustained damages as a result of the inundation/flooding in this area which occurred during and immediately following the landfall of Hurricane Katrina on or about August 29, 2005 . . . .

Master Complaint ¶ 151.[7] Duties in negligence are not owed to an "area" and are not owed to an entire city or city population. They are owed to specific people with whom one has a relationship or legally sufficient nexus. "[N]egligence does not exist in the abstract, it contemplates a legal duty owing from one party to another...." *Tappen v. Ager*, 599 F.2d 376, 379 (10th Cir. 1979). A tort plaintiff "must show that a defendant owed not merely a general

---

[6] Congress has for several decades fixed upon a single entity – the Army Corps of Engineers – responsibility to protect United States populations from floods. *See* 33 U.S.C. §§ 701, *et seq.* (Congress mandated that Army Corps of Engineers is to provide hurricane and flood protection for the City of New Orleans). In turn, the Louisiana Legislature has imposed some level of flood-protection responsibility upon the Board of Commissioners of the Orleans Levee District. *See Volkswagen of America, Inc. v. Robertson*, 713 F.2d 1151, 1154 (5th Cir. 1983) (Orleans Levee District maintains the hurricane protection levees in the New Orleans area, in compliance with the designs, plans, specifications, and requirements of the Corps of Engineers); *see also* Order and Reasons (Sept. 13, 2006) (Dkt. No. 1133) (as this Court has noted, "the Board of Commissioners of the Orleans Levee District has the full and exclusive right and jurisdiction over the levees" and the levee districts have "the right to maintain the levees") (citing La. Rev. Stat. 38:307 and 38:301 and granting 12(b)(6) motion filed by City of New Orleans).

[7] The plaintiffs asserting claims against CSXT purport to represent two subclasses comprised of all individuals or entities in the geographic areas (1) "bounded to the north by Gentilly Boulevard (Gentilly Ridge), to the south by the Mississippi River, to the east by the IHNC, and to the west by Esplanade Avenue" (Master Complaint ¶ 182) and (2) "bounded to the north by Metairie Road/City Park Avenue, to the south by the Mississippi River, to the west by Causeway Boulevard, and to the east by Esplanade Avenue" (Master Complaint ¶ 189).

duty to society but a specific duty to him or her, for '[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.'" *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (N.Y. 2001) (citations omitted).

CSXT simply does not have a general duty in tort to protect large city areas from hurricane damage. This is a police-power notion alien to private tort law. Moreover, a railroad's roadbeds are not "flood protection structures." Notwithstanding plaintiffs' attempts to recharacterize their function, CSXT's railroad tracks and crossings simply are not a part of the City of New Orleans' flood protection system. The latter, as admitted in *Adams* and recognized by the Fifth Circuit and this Court, is designed and maintained *exclusively* by the Orleans Levee Board. *Adams* Complaint (Dkt. No. 1 in No. 06-4634) ¶ 28(11); *supra* n. 5; *see also Tauzin* Complaint (Dkt. No. 675) ¶ 41 (the New Orleans' flood protection system is "within the jurisdiction and control of the Levee Board"). As the Honorable Judge Sarah Vance of this Court recently held in a similar class action claim for Hurricane Katrina damages, Louisiana courts *have not and would not* impose a duty on others to protect hundreds of thousands of plaintiffs from flooding. *See Barasich v. Columbia Gulf Transmission Co.*, No. 05-4161, 2006 U.S. Dist. Lexis 86062, at *47-56 (E.D. La. Sept. 28, 2006). Respectfully, the same result should follow here.

## II. The Claims Against CSXT are Preempted by Federal Railroad Law.

Plaintiffs' claims against CSXT are based entirely on the "design and construction of a railroad crossing." Master Complaint ¶¶ 258-61. Specifically, the Master Complaint faults CSXT for using "highly erodible, lightweight, and/or porous materials," for failing "to install a 'sheetpile cutoff' or similar device to prevent or limit erosion of its structure," and for not

952822_1.DOC                                                    6

"installing concrete 'splash pads' or other erosion protection devices at the base of the 'I-walls.'" *Id.* Such claims are preempted by two separate federal railroad regulatory schemes – the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") and the Federal Railroad Safety Act ("FRSA").

### A.  Federal Railroad Law Broadly and Expressly Preempts State Regulation.

The doctrine of federal preemption is rooted in the Supremacy Clause of the Constitution: "[T]he laws of the United States... shall be the Supreme Law of the Land." U.S. Const. art. VI, cl. 2. The Supremacy Clause authorizes Congress to preempt state law in the legitimate exercise of its legislative authority: "Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law...." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 368 (1986). "Because federal law is the supreme law of the land, it preempts state laws that 'interfere with, or are contrary to, federal law.'" *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002) (quoting *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985)).

Railroads are subject to the regulatory authority of Congress under the Commerce Clause. *See, e.g., Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Executives Ass'n*, 491 U.S. 490, 510 (1989); *Houston, E & W Tex. Ry. Co. v. United States*, 234 U.S. 342, 350-52 (1914). The United States Supreme Court "repeatedly has recognized the preclusive effect of federal legislation" in the area of railroad regulation. *City of Auburn v. United States*, 154 F.3d 1025, 1029 (9th Cir. 1998).

Congress initially asserted federal authority over the railroad industry by enacting the Interstate Commerce Act, ch. 104, 24 Stat. 379 (1887), which has been acknowledged as "'among the most pervasive and comprehensive of federal regulatory schemes.'" *City of*

*Auburn*, 154 F.3d at 1029 (citation omitted). Federal regulation of the railroad industry, already sweeping, expanded further in 1995 when Congress enacted the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § § 10101 *et seq.* ("ICCTA"), including within the ICCTA an express preemption of state "regulation of rail transportation."

In addition, Congress enacted the Federal Railroad Safety Act, 49 U.S.C. § § 20101 *et seq.*, ("FRSA"), to promote safety in all areas of railroad operations. The FRSA broadly regulates rail safety, and like the ICCTA contains a sweeping express preemption clause. If the "subject matter" of a lawsuit "covers" railroad safety, with limited exception the FRSA and its supporting regulations preempt the action.

### B.    The Claim Against CSXT Is Preempted by the ICCTA.

With its enactment of the ICCTA, Congress intended to "significantly reduce state and local regulation of railroads." *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 839 (E.D. Ky. 2004). Through the ICCTA Congress established the Surface Transportation Board ("the STB") as an agency within the United States Department of Transportation with authority to regulate all aspects of railroad operations. *See* 49 U.S.C. § § 701(a), 702 (2000).

Specifically, § 10501 of the ICCTA reserves for the STB, and only the STB, jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,....

952822_1.DOC                                                8

49 U.S.C. § 10501(b). Removing any doubts, § 10501 concludes that the STB's jurisdiction over this broad sweep of rail operations is "*exclusive*" and "*preempt[s] the remedies provided under Federal or State law.*" *Id.* (emphasis added).

Courts have long recognized the exceedingly broad reach of ICCTA preemption. "It is clear that the ICCTA has preempted *all* state efforts to regulate railroad transportation." *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013 (W.D. Wisc. 2000) (emphasis added); *see also Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001) ("the plain language of the statute itself, and in particular its preemption provision, is so certain and unambiguous as to preclude any need to look beyond that language for congressional intent"); *CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996) ("[i]t is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations"). Courts have applied the ICCTA to preempt state regulation of rail transportation in a wide variety of settings, covering the broadest array of attempts at state regulation. *See, e.g., Friberg*, 267 F.3d at 439 (ICCTA held to preempt common law negligence claim); *City of Auburn*, 154 F.3d at 1031 (ICCTA held to preempt state and local environmental laws); *S.D. R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.*, 280 F. Supp. 2d 919 (D.S.D. 2003) (ICCTA held to preempt state law claims for punitive damages and tortious interference); *Burlington N. Santa Fe Ry. Corp. v. Anderson*, 959 F. Supp. 1288 (D. Mont. 1997) (ICCTA held to preempt state closure authority).

The complaints in these actions seek to find fault with the design and construction of a railroad crossing. Master Complaint ¶¶ 258-61. Plaintiffs are essentially asking the Court to dictate how CSXT designs and constructs its railroad crossings, including its roadbed and its rail track. According to the clearly expressed will of Congress, only the STB has jurisdiction over

such an action. *See Emerson v. Kan. City S. Ry. Co.*, No. Civ-05-331-KEW, 2006 WL 1785460, at *3 (E.D. Okla. June 26, 2006) (negligence claims that track drainage deficiencies resulted in flooding of plaintiffs' land "bear directly upon the 'practices,' 'operation,' and 'construction' in regard to Defendant's 'facilities,' namely the track in the affected area" and therefore "are expressly reserved to the exclusive jurisdiction of the STB"); *Maynard*, 360 F. Supp. at 843 (ICCTA held to preempt negligence claims for flooding as a result of "construction and/or maintenance of the tracks and crossings"). Thus, the sole claim against CSXT is preempted by the ICCTA.

### C. The Claim Against CSXT Is Preempted by the FRSA.

Congress enacted the FRSA "to promote safety in all areas of railroad operations and to reduce railroad-related accidents, and incidents." 49 U.S.C. § 20101. The FRSA vests in the Secretary of Transportation broad powers to prescribe regulations for "*every area* of railroad safety." 49 U.S.C. § 20103(a) (emphasis added). With the FRSA Congress sought nationwide uniformity in the area of rail safety: "Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106. Nevertheless, § 20106 further provides:

> A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation or order –
>
> > (1) is necessary to eliminate or reduce an essentially local safety or security hazard;
> > (2) is not incompatible with a law, regulation, or order of the United States Government; and
> > (3) does not unreasonably burden interstate commerce.

(emphasis added). With limited exceptions pertaining to purely local hazards, therefore, a state law or lawsuit is preempted by the FRSA whenever the Act's implementing regulations "cover" or "substantially subsume" the subject matter of the state law or action. *See, e.g., CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 661, 675 (1993) (maximum railroad-speed regulations "cover" the subject-matter of train speed and therefore preempt a jury verdict that a train was traveling at an excessive speed).

Pursuant to his authority under the FRSA, the Secretary has long regulated the construction and maintenance of railroad tracks and roadbeds, including regulations directly aimed at ensuring proper drainage of track areas. *See* 49 C.F.R. Part 213, subparts B and D. Subpart B ("Roadbed," §§ 213.31 *et seq.*) prescribes minimum requirements for "roadbed and areas immediately adjacent to a roadbed." Subpart D ("Track Structure," § 213.101 *et seq.*) prescribes minimum requirements for "ballast, crossties, track assembly fitting, and the physical condition of rails." The track regulations include 49 C.F.R. § 213.103, directly addressing the supporting material used in the construction of roadbeds:

> Unless it is otherwise structurally supported, all track shall be supported by material which will –
>
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
> (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
> (c) Provide adequate drainage for the track; and
> (d) Maintain proper track crosslevel, surface, and alignment.

Because FRSA regulations "cover" the manner in which railroads design and construct their roadbeds and tracks, and specifically address the nature of the supporting materials, a state action purporting to affect how a railroad's roadbed or track is "designed and constructed" or how it is supported is preempted.

The Master Complaint attempts precisely this. By alleging CSXT is at fault for the design and construction of a railroad crossing through its choice of construction and support materials, the complaint seeks to impose obligations upon CSXT irrespective of, and in conflict with, its compliance with the requirements established by FRSA regulations. Such a claim defies Congressional intent to create a nationally uniform set of standards applicable to railroads.

FRSA preemption applies, therefore, unless plaintiffs' negligence claims fall within the narrow "local" safety or security hazard savings clause. The FRSA's savings clause permits a state to adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation or order meets three conditions: (1) it is necessary to eliminate or reduce an essentially local safety hazard; (2) it is not incompatible with a federal law, regulation, or order; and (3) it does not unreasonably burden interstate commerce. Plaintiffs' claim meets none of these conditions.

First, the only conceivable "safety hazard" plaintiffs attempt to address in the Master Complaint is flooding. Flooding is anything but "essentially local." To state the obvious, New Orleans is not the only jurisdiction where local, state, and federal governments must determine how flood protections systems and railroad operations may be integrated. A hazard is a "discrete and truly local hazard" if it "relates to the avoidance of a specific collision." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 640 (5th Cir. 2005) (citation omitted). A condition that could occur anywhere at any time – such as a flood – is not a discrete, truly local hazard. *Id.*

Second, the plaintiffs' claim is "incompatible" with FRSA law and regulations. The FRSA imposes safety standards governing how CSXT is to design and construct its crossings, roadbed, and track. But the Master Complaint attempts to create some other standard through

the guise of a lawsuit. This attempt is incompatible with regulations promulgated under the FRSA that already "cover" these very aspects of CSXT's operations.

Finally, plaintiffs' claim would "unreasonably burden interstate commerce." In evaluating this burden, courts consider "the practical and cumulative impact were other States" to take similar actions. *CSX Transp. Inc. v. Williams*, 406 F.3d 667, 673 (D.C. Cir. 2005). The court in *Williams* weighed the burden of a proposed local ban on a railroad's shipment of certain types of freight, considering the effect not only of that one jurisdiction's ban, but also the possibility of multiple, varying bans throughout the country. As the D.C. Circuit observed in *Williams*, "[i]t would not take many similar bans to wreak havoc with the national system of hazardous materials shipment." *Id.* (citation omitted). So here, the prosecution of civil actions nationwide seeking monetary awards to discipline how a railroad designs and constructs rail crossings, roadbeds, and tracks would create anything but national uniformity, and would "wreak havoc" on our nation's system of rail transportation. In questioning a rail entity's construction and design of its track and roadbed, the plaintiffs seek to regulate an area substantially "covered" by the FRSA. Thus, their claim against CSXT is preempted.

## CONCLUSION

Plaintiffs have failed to plead negligence against CSXT and have asserted a claim preempted by federal railroad laws. Respectfully, the Master Complaint should be dismissed as to CSXT for failure to state a claim under Rule 12(b)(6).

s/ Jonathan C. McCall
BRENT A. TALBOT (#19174)
JONATHAN C. MCCALL (#9227)
MICHAEL D. SPENCER (#27649)
  -of-
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075

and

ROY J. RODNEY, JR. (#02079)
JOHN K. ETTER (#25042)
  -of-
**RODNEY & ETTER, L.L.C.**
620 North Carrollton Avenue
New Orleans, Louisiana 70119
Telephone: (504) 483-3224
Facsimile: (504) 483-2259

**ATTORNEYS FOR DEFENDANTS
CSX TRANSPORTATION, INC. AND
CSX CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2007, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management. All counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

s/ Jonathan C. McCall
