UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION § § § § § § PERTAINS TO: § § MRGO § § FILED IN:   05-4181, 05-4182, 05-5237, 05-6073, § 05-6314, 05-6324, 05-6327, 06-0225, § 06-0886, 06-2278, 06-2287, 06-4065, § 06-4389, 06-4634, 06-4931, 06-5032, § 06-5159, 06-5161, 06-5260, 06-5786, § 06-5937, 07-1271 § § | CIVIL ACTION NO.  05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |

**MEMORANDUM IN SUPPORT OF
WASHINGTON GROUP INTERNATIONAL, INC'S
<u>MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(c)</u>**

According to the MRGO Plaintiffs' ("Plaintiffs") Master Complaint (the "Complaint"), Defendant WGII International, Inc. ("WGII") contracted with the United States Army Corps of Engineers ("USACE") to level and clear abandoned industrial facilities and debris from the East Bank Industrial Area in order for the USACE, acting at the explicit instruction of Congress, to replace a lock on the Inner Harbor Navigation Canal ("IHNC"). The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because this Court is without jurisdiction to entertain a suit that effectively seeks to challenge Congress' decision to replace the lock. Moreover, the Complaint should be dismissed and judgment entered on the pleadings under Fed. R. Civ. P. 12(c) because the

Plaintiffs' allegations against WGII cannot sustain a negligence claim. Stripped of conclusory allegations and unsupported statements, Plaintiffs assert only the non-controversial proposition that WGII entered into and performed work under a contract with the USACE, the real target of the Complaint.

## BACKGROUND

Since November 2005, WGII has been named as a defendant in over twenty putative class actions. Each of the class actions leveled substantially the same allegation against WGII:

> Upon information and belief, Defendant, WGII INTERNATIONAL, INC., contracted to level and clear abandoned industrial sites along the IHNC between the floodwall and the canal. It is believed that the use of heavy vehicles and/or other heavy construction equipment along the IHNC between the floodwall and the canal damaged the levee and/or floodwall and caused and/or contributed to the [] breaches in the levee and/or floodwall [along the IHNC].

In response to each of the complaints, WGII filed an answer denying this allegation and asserting more than a dozen affirmative defenses. Because Plaintiffs failed to allege that WGII was a government contractor – thereby making a motion to dismiss the complaints under Rule 12(b)(1) more difficult to argue – WGII promptly informed Plaintiffs and the Court that it intended to file a motion for summary judgment pursuant to Fed. R. Civ. P. 56 based on the three-prong government contractor defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988). The parties subsequently negotiated

limited discovery to facilitate disposition of the motion, and WGII produced thirty-five boxes of documents to Plaintiffs on August 31, 2006.[1]

Nearly seven months after receiving the vast majority of WGII's documents (and after the Court's deadline for filing initial Rule 12 motions had lapsed), Plaintiffs filed their complaint against WGII, the USACE, and the Orleans and Lake Borgne Levee Districts. Notwithstanding the fact that the Complaint purported to consolidate and supersede all previously-served complaints in this litigation, it is beyond dispute that Plaintiffs' allegations against WGII were entirely new and distinct from those in the earlier complaints. Furthermore, Plaintiffs admitted for the first time that WGII's work near the IHNC was performed pursuant to a contract with the federal government:

> 40. Defendant WGII contracted with the Corps in connection with the IHNC/IHNC Lock Replacement Project, which was authorized by the River and Harbor Act of 1956, the Water Resources Development Acts of 1986 and 1996, and which was intended to enlarge and deepen the lock. Defendant WGII was hired to level and clear abandoned industrial sites along the IHNC/IHNC between the flood wall and the canal itself for the purpose of clearing acreage to make way for the digging of a new canal, which would be used temporarily for the same purposed as the existing IHNC/IHNC while the new system of larger locks was constructed.
>
> \*      \*      \*
>
> 42. More specifically, Defendant WGII's scope of work included, but were [sic] not limited to: demolition of abandoned industrial structures on the east side of the canal; removal of underground structures described in Defendant's own recommendation reports as "extensive excavation and subsurface activity"; abatement of vegetation, including numerous oak trees;

---

[1] *See* Exhibit A (attaching negotiation and transmittal letters as follows: Ltr. from W. Treeby to J. Bruno, May 31, 2006; Ltr. from J. Bruno to W. Treeby, June 29, 2006; Ltrs. from W. Treeby to J. Bruno, July 27 and Aug. 31, 2006). WGII produced four additional boxes of documents to Plaintiffs on Dec. 12, 2006 and Apr. 9, 2007. *See* Exhibit B (attaching transmittal letters as follows: Ltr. from D. Clayman to J. Bruno, Dec. 12, 2006; Ltr. from W. Treeby to J. Bruno, Apr. 9, 2007).

removal of canal side obstructions; removal of the Jordan Street wharf, which included the removal of a concrete deck and support pilings to a depth of 36 feet below mean water level; removal of all electrical, sewer, gas, water, and telephone facilities on the site, including Boland sewer lift station; "bank removal" that included the vibratory extraction of bulkheads along the canal water's edge; removal of more than fifty structures and more than forty concrete slabs; grid trenching of the entire East Bank Industrial Area; removal of ten sunken or partially sunken barges; removal of barges that served as building foundations; removal of an estimated 3,000 pilings at the site, both on land and in the canal, by use of a vibratory extractor (to a depth of 30 feet for land-based pilings and 40-50 feet for canal/water-based pilings); grading and hydro-mulching the site; and other such work to be demonstrated through the course of discovery and trial.

   43. In performing the work, Defendant WGII, based on information and belief, undermined the integrity of the levee, and/or flood wall along the eastern shoreline of the IHNC/IHNC, abutting the Lower Ninth Ward of Orleans Parish.

   44. Defendant WGII's acts and/or omissions resulted in underseepage-induced erosion and other damage to the levee and/or flood wall ultimately causing and/or contributing to its catastrophic failure.

   45. Defendant WGII was negligent and/or at fault in the following non-exclusive respects: (1) it knew or should have known that its work was causing damage to the levee and/or floodwall structures and did nothing to correct the problem; (2) it failed to proper procedures in performing its work; (3) it failed to comply with appropriate regulations and standards in performing it s work; (4) it failed to notice the damage caused by its work and failed to call that damage to the attention of the appropriate authorities; (5) and any other acts of fault or negligence to be proven upon the trial of the cause.

In light of these new allegations, WGII is entitled to test the sufficiency of the Complaint against the standards enunciated in Fed. R. Civ. P. 12. Accordingly, WGII submits that its immediate dismissal is warranted as a matter of law under *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), and this Court's recent decision in the *Reed* and *Ackerson* cases. *In re Katrina Canal Breaches Consolidated Litigation*

("*Reed*"), No. 05-4182, 2007 WL 763742, at *6 (E.D. La. Mar. 9, 2007).[2] Although Plaintiffs scrupulously avoided identifying WGII as a government contractor in earlier iterations of their complaints, now they have clearly alleged that WGII was a government contractor enlisted to carry out the will of Congress to enlarge and update the IHNC lock. But Plaintiffs have *not* alleged that WGII committed any acts or omissions that were beyond the scope of the tasks the USACE hired it to do, or any facts supporting conclusory allegations that the work was performed negligently. Because WGII is immune from liability for executing Congress' will, *see Yearsley*, 309 U.S. at 20 and *Reed*, 2007 WL 763742, at *4 (E.D. La. Mar. 9, 2007) (citation omitted), this Court is without subject matter jurisdiction to adjudicate the merits of the case. Accordingly, WGII should be dismissed from the Complaint under Fed. R. Civ. P. 12(b)(1).

In addition, Plaintiffs have failed to plead any facts supporting their broad and conclusory allegations that WGII's work somehow "undermined the integrity of the levee and/or flood wall along the eastern shoreline of the IHNC/Industrial Canal," Compl. ¶ 43, and "resulted in under-seepage-induced erosion and other damage to the levee and/or flood wall, ultimately causing and/or contributing to its catastrophic failure." Compl. ¶ 44. Nor have Plaintiffs alleged any facts or identified any viable theory that WGII violated a duty owed to the USACE (with whom WGII contracted, and which controlled or owned the East Bank Industrial Area) or to Plaintiffs themselves. Instead, they have asserted that WGII did not follow unidentified "procedures" or "regulations" allegedly

---

[2] By filing this Rule 12 Motion, WGII does not intend to waive or otherwise diminish its right to seek to summary judgment under Rule 56. Rather, Plaintiffs' new allegations prompted WGII to bring this Rule 12 motion in order avoid further unnecessary and costly proceedings.

applicable to WGII's work for the USACE. Finally, Plaintiffs have not alleged and cannot credibly argue that the scope of any duty required of WGII encompassed the risk and harm posed by the confluence of circumstances that caused the catastrophic failure of certain levees and floodwalls abutting the Lower Ninth Ward. Accordingly, judgment in WGII's favor should be entered on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## ARGUMENT

Dismissal under Federal Rule of Civil Procedure 12(b)(1) or 12(c) is warranted when it "appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (construing Fed. R. Civ. P. 12(b)(1)); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (construing Fed. R. Civ. P. 12(c)). Although a court must construe a complaint "in the light most favorable to plaintiff and take the factual allegations contained therein as true," *Reed*, 2007 WL 763742, at *3, the plaintiff cannot avoid dismissal unless he has pled "specific facts, not merely conclusory allegations." *McWaters v. FEMA,* 436 F. Supp. 2d 802, 811 (E.D. La. 2006) (citing, *inter alia, Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). Accepted as true and stripped of unsupported conclusions, Plaintiffs' allegations demonstrate that this Court lacks subject matter jurisdiction over Plaintiffs' claims against WGII. Even if it did, Plaintiffs cannot state a claim against WGII simply for contracting with the USACE and performing the work it contracted to do.

871217v.1

## I. This Court Lacks Subject Matter Jurisdiction over Plaintiffs' Complaint Against WGII

For more than one hundred years, the Supreme Court has recognized that federal courts are not a proper venue for plaintiffs to second-guess the exercise of Congressional power. *See, e.g., Wisconsin v. Duluth*, 96 U.S. 379, 383 (1877) ("It cannot be necessary to say that when a public work [project] has been inaugurated or adopted by Congress, and its management placed under the control of its officers, there exists no right in any other branch of the government to forbid the work, or to prescribe the manner in which it shall be conducted.").

More recently, courts have recognized that plaintiffs cannot evade this long-established rule simply by proceeding against the private actors who performed work at the request and direction of the federal government. In *Yearsley*, for example, plaintiff sued a private construction company that built dikes for the federal government. As a result of the dikes' construction, 95 acres of plaintiff's land suffered from erosion. *Yearsley*, 309 U.S. at 20. The parties did not dispute that "the work which the contractor had done in the river bed was all authorized and directed by the Government of the United States for the purpose of improving the navigation of this navigable river." *Id*. Accordingly, the Court held that the government contractor was immune from liability, noting that "if th[e] authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." *Id*. at 20-21.

In the years since *Yearsley*, courts have consistently held that contractors cannot be liable for damages resulting from their performance of a contract with the federal government, so long as the contractor was not negligent in doing so. *See*, *e.g.*, *Ward v. Humble Oil & Ref. Co.*, 321 F.2d 775, 780 (5th Cir. 1963) ("This principle of nonsuability of government officers for acts done by them within the scope of their statutory powers, where those powers and their exercise are not constitutionally void, has been applied to government contractors executing the will of Congress under authority validly conferred by Congress on them.") (citing *Yearsley*).

Congress possessed the authority necessary to order the IHNC Lock Replacement Project. Article I of the Constitution grants Congress the power "to regulate Commerce . . . among the several States," U.S. Const., Art. I § 8, and it has long been recognized that this power extends to regulating and improving the nation's waterways. *See*, *e.g.*, *South Carolina v. Georgia*, 93 U.S. 4, 11-12 (1876) ("[Congress] may build light-houses in the bed of [a] stream. It may construct jetties. It may require all navigators to pass along a prescribed channel, and may close any other channel to their passage. If, as we have said, the United States have succeeded to the power and rights of the several States, so far as control over inter-State and foreign commerce is concerned, this is not to be doubted."); *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 75 (1824) ("The power of Congress, then, comprehends navigation, within the limits of every State in the Union; so far as that navigation may be, in any manner, connected with commerce with foreign nations, or among the several States, or with the Indian tribes.") (internal quotations omitted). Plaintiffs do not dispute that Congress possessed the authority to

execute the IHNC Lock Replacement Project; to the contrary, they have specificallly identified the very statutory provisions ordering it.

### A. Plaintiffs Have Affirmatively Alleged that Congress Exercised Its Authority to Replace the IHNC Lock

According to the Complaint, Congress first authorized the USACE to construct an additional or replacement lock on the IHNC in 1956. *See* Compl ¶ 40; River and Harbor Act of 1956, Pub. L. No. 84-455, 70 Stat. 65. In 1986, Congress modified the Act. Among other things, Congress directed the Secretary of the Army to determine the precise location and design of the lock replacement project. *See* Compl. ¶ 40; Water Resources Development Act of 1986, Pub. L. No. 99-662, § 844(a), 100 Stat. 4082, 4177 (hereinafter, "WRDA"). *See also* H.R. Rep. No. 101-536, at 28 (1991); S. Rep. No. 101-378, at 33 (1991) (USACE should "give maximum consideration to lock replacement alternatives which minimize residential and business disruption while meeting the goal of improving waterborne commerce"). In 1996, Congress amended the WRDA again, *see* Compl. ¶ 40, WRDA of 1996, PL 104-303, 110 Stat. 3658, and subsequently issued appropriations affirming Congress' commitment to execution of the project, *see, e.g.,* H.R. Rep. No. 108-10 (2003) (Conf. Rep.) ("The conferees continue to recognize the vital importance of the Inner Harbor Navigation Canal Lock, Louisiana Project, and direct the Corps of Engineers to take every practicable action to ensure that construction proceeds expeditiously and that the project benefits are delivered with dispatch."). To

that end, the USACE hired WGII to remove abandoned industrial facilities and debris from the East Bank Industrial Area.  Compl. ¶¶ 40-41.[3]

### B. Plaintiffs Have Not Alleged Any Facts Suggesting That WGII Performed Work for the USACE in a Negligent Manner

Plaintiffs have not alleged any facts supporting a claim that WGII performed any of its work for the USACE in a negligent fashion.  As discussed more fully in Section II, Plaintiffs have recited a laundry list of tasks WGII performed in the East Bank Industrial Area.  Compl. ¶ 42.  They do not identify which or how any of these tasks were performed in a deficient manner, but nonetheless conclude "on information and belief" that the work undermined or damaged the levee and/or floodwall, thereby "causing and/or contributing" to their failure.  Compl. ¶¶ 43-44.  Absent these conclusory (and therefore impermissible) assertions, Plaintiffs have alleged only that WGII contracted with and performed work for the USACE near an area that flooded following Hurricane Katrina.

This is precisely the same allegation the Court found wanting against the Dredging Defendants in *Reed*.  *Reed*, 2007 WL 763742, at *3-4.  In that case, plaintiffs asserted

---

[3] Throughout the 1980s and 1990s, the USACE evaluated various proposals concerning sites for the new lock.  *ACORN v. United States Army Corps of Eng'rs*, No. Civ. A. 00-0108, 2000 WL 433332, at *6 (E.D. La. Apr. 20, 2000) (Duval, J.).  By March 1997, the USACE had developed a nine-volume Final Evaluation Report ("March 1997 Evaluation Report") that included an analysis of the various lock replacement alternatives considered, an Environmental Impact Statement ("EIS"), a Community Impact Plan ("Mitigation Plan"), and supporting technical data/appendices.  *ACORN*, 2000 WL 43332 at *7.  The March 1997 Evaluation Report ultimately recommended the "North of Claiborne Avenue Plan," which provided for the construction of an 100-foot by 36-foot by 1,200-foot lock in the area between the Claiborne Avenue and Florida Avenue bridges on the IHNC, as well as a new low-level St. Claude Avenue Bridge.  *See* March 1997 Evaluation Report, www.mvn.usace.mil/prj/ihnc/EvaluationReport /ihnc_eval.htm.  The North of Claiborne Avenue Plan also included a provision for a temporary two-way bypass channel to be built in the East Bank Industrial Area.  *Id.*  In 1998, the Secretary of the Army approved the lock replacement project, and sought and received Congressional appropriations to fund its construction.  *ACORN*, 2000 WL 433332 at *8.

that the dredging defendants contracted with the Corps to dredge material from the MRGO. Complaint ¶¶ 16-17, *Reed v. United States of America*, Civil Action No. 06-2152, 2007 WL 763742 (E.D. La. Mar. 9, 2007). This Court reviewed the complaint on a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(c), and agreed with the Dredging Defendants that *Yearsley* barred the Court from exercising subject matter jurisdiction over the complaint. *Reed*, 2007 WL 763742, at *3-4. So holding, this Court observed that the authority to carry out the construction of the MRGO was validly conferred by an act of Congress; there could be no liability for a contractor that merely executed Congress' will; and that plaintiffs failed to allege that "any Dredging Defendant deviated from the scope of the work that it was mandated to do by the Government." *Id.* at *3. The same analysis and same result should apply here.

## II.     WGII Is Entitled to Judgment on The Pleadings, Which Fail to Allege an Actionable Claim of Negligence Against WGII

While the Court must "take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff," *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993), this liberal standard does not permit plaintiffs to escape dismissal by relying on conclusory allegations. *Id*. ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"); *McWaters*, 436 F.

Supp. 2d at 811 ("In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations") (citation omitted).[4]

In order to properly allege a negligence claim under any of the articles cited in Paragraphs 75 and 77 of the Complaint, Plaintiffs have the burden of pleading *facts* satisfying five elements: (1) that the defendant owed a duty to the plaintiffs; (2) that it breached that duty; (3) that the conduct in question was a substantial factor – or a cause-in-fact – of the alleged harm; (4) that the risk and harm caused were within the scope of protection afforded by the duty breached; and (5) actual damages. *Roberts v. Benoit,* 605 So.2d 1032, 1051 (La. 1991).[5] The failure to plead facts supporting any one of these factors precludes a plaintiff from proceeding with his claim. *See, e.g., Buxton v. Fireman's Fund Ins. Co.,* 422 So.2d 647 (La. Ct. App. 3rd 1982) (dismissing petition for failure to allege the existence or breach of a duty); *see also Snider v. Pagragan*, 480 So. 2d 1053, 1054 (La. Ct. App. 5th 1985) (dismissing petition for failure to allege facts indicating that risk and harm were within the scope of the duty purportedly breached).

Plaintiffs' conclusory allegations fall far short of satisfying the critical elements of a claim against WGII. An examination of these shortcomings illustrates why the Court should dismiss the Complaint: first, Plaintiffs have not asserted any *facts* supporting a

---

[4] The standards for deciding motions under Rule 12(c) and 12(b)(6) are identical, and cases addressing them cite the rules interchangeably. *See, e.g., McWaters,* 436 F. Supp. 2d at 811; *Great Plains Trust*, 313 F.3d at 313 (citing 5A Wright & Miller, Federal Practice & Procedure § 1368 at 591 (Supp. 2002)).

[5] That Plaintiffs purport to impute strict liability for WGII's work does not affect the necessary prerequisites for stating a claim against it under any of the articles identified in the Complaint. As the Louisiana Supreme Court observed in *Lasyone v. Kansas City Southern R.R.,* 786 So.2d 682, 689 n.9 (2001), the Louisiana legislature effectively eliminated any distinction between Articles 2315, 2316, and 2317 in 1996, and a cause of action arising under any of these articles depends first on sufficiently pleaded allegations of negligence. *Id.* at 689 n.9.

conclusion or inference that WGII did anything to "undermine[] the integrity" of the levee and/or floodwall, or that any such work "caused or contributed to" the failure of the levees and/or floodwalls; second, Plaintiffs have not identified any duty WGII has allegedly breached; and third, Plaintiffs have not asserted any facts explaining how a purported failure to exercise an unspecified duty of care when removing abandoned industrial facilities and debris from an area *near* the levee and/or floodwall would encompass (1) the risk that a storm surge caused by an act of nature and magnified by the acts of others would overwhelm the levees and/or floodwalls; or (2) the harm that could occur as a result of the catastrophic failure of levees and/or floodwalls designed, built, and maintained by entities other than WGII.

### A. Plaintiffs' Conclusory Assertions Cannot Satisfy Their Obligation to Plead Facts Supporting Each Element of a Negligence Claim Under Louisiana Law

Plaintiffs purport to catalog an extensive inventory of tasks WGII performed for the USACE. Specifically, Paragraph 42 of the Complaint alleges that:

> Defendant WGII's scope of work included, but were [sic] not limited to: demolition of abandoned industrial structures on the east side of the canal; removal of underground structures described in Defendant's own recommendation reports as "extensive excavation and subsurface activity"; abatement of vegetation, including numerous oak trees; removal of canal side obstructions; removal of the Jordan Street wharf, which included the removal of a concrete deck and support pilings to a depth of 36 feet below mean water level; removal of all electrical, sewer, gas, water, and telephone facilities on the site, including Boland sewer lift station; "bank removal" that included the vibratory extraction of bulkheads along the canal water's edge; removal of more than fifty structures and more than forty concrete slabs; grid trenching of the entire East Bank Industrial Area; removal of ten sunken or partially sunken barges; removal of barges that served as building foundations; removal of an estimated 3,000 pilings at the site, both on land and in the canal, by use of a vibratory extractor (to a depth of 30

> feet for land-based pilings and 40-50 feet for canal/water-based pilings);
> grading and hydro-mulching the site; and other such work to be
> demonstrated through the course of discovery and trial.

*Id.* Plaintiffs do not allege that WGII performed these acts on the levee and/or floodwall (indeed, those terms are not defined anywhere in the Complaint and not mentioned at all here), and they do not state any *facts* even *suggesting* that WGII performed any act in a deficient or negligent manner. Nonetheless, Plaintiffs assert on information and belief that WGII "undermined the integrity of the levee, and/or flood wall along the eastern shoreline of the IHNC/Industrial Canal, abutting the Lower Ninth Ward of Orleans Parish," Compl. ¶ 43, and further that WGII's "acts and/or omissions resulted in underseepage-induced erosion and other damage to the levee and/or flood wall ultimately causing and/or contributing to its catastrophic failure." Compl. ¶ 44. Plaintiffs bear the burden of pleading *facts* supporting these blunderbuss allegations of fault, causation, and damages, and they have patently failed to do so.

### B. Plaintiffs Have Not Articulated Any Duty Required of Or Breached by WGII

Plaintiffs have failed to allege any facts or identify any viable theory that WGII violated a duty owed to them. In entirely conclusory fashion, the Complaint alleges:

> (1) [WGII] knew or should have know that its work was causing damage to
> the levee and/or flood wall structures and did nothing to correct the
> problem; (2) it failed to follow proper procedures in performing its work; (3)
> it failed to comply with appropriate regulations and standards in performing
> its work; (4) it failed to notice the damage caused by its work and failed to
> call that damage to the attention of the appropriate authorities; (5) and [that
> WGII should be liable for] any other acts of fault or negligence to be
> proven upon the trial of the cause.

Compl. ¶ 45. Paragraphs 45(1) and (4) rely entirely on the speculative conclusions in Paragraphs 43 and 44 that removing industrial debris from abandoned properties some unstated distance from the undefined levee and/or floodwall damaged them in some unspecified way.

Paragraphs 45(2) and (3) similarly fail for lack of any factual support, and for the additional reason that a defendant cannot be charged with breaching duties arising from "procedures" and "regulations and standards" unless the plaintiff has specifically identified those provisions. *See, e.g.*, *Klott v. Chapman*, 191 F. Supp. 484, 485 (N.D. Ind. 1961); *accord* 82 C.J.S. Statutes § 433 ("[W]here statutes are in issue as a standard of ordinary care alleged to have been violated, the specific statutes are material, and must be pleaded."). The Complaint makes no effort to identify the provisions purportedly applicable to WGII's work at the East Bank Industrial Area.

Finally, Plaintiffs are impermissibly attempting to bookmark the possibility of additional claims in Paragraph 45(5), which has no rightful place in a complaint for negligence or strict liability under Louisiana law. *See, e.g., Snoddy v. City of Marksville*, 702 So.2d 890, 898-99 (La. Ct. App. 3d 1997) (noting that such open-ended allegations do not "fairly allow a defendant to form a defense" to negligence and strict liability claims and striking them from a petition). Viewed individually or collectively, Plaintiffs' allegations fail to allege or identify *any* duty attaching to WGII's work for the USACE in the East Bank Industrial Area.

- 15 -

871217v.1

### C. WGII Cannot Be Liable for Risks and Harms Beyond the Scope of Any Duties It May Have Owed the Plaintiffs

Even assuming Plaintiffs had adequately alleged that WGII had and failed a particular duty of care (and properly identified the party or parties to whom such a duty was owed) when removing industrial debris from sites near the levee and/or floodwall, such a duty would not encompass the risk that a storm surge (which, according to the Complaint, resulted from an act of nature and which was magnified by the actions of entities other than WGII) would overwhelm the levees and/or floodwalls.  Nor would such a duty have contemplated the harm that could occur as a result of the catastrophic failure of the levees and/or floodwalls bordering the IHNC (which, according to the Complaint, were improperly designed, built, and maintained by entities other than WGII).

Duties of care "are designed to protect *some* persons under *some* circumstances against *some* risks.  Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury.  The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case at it arises." *Roberts,* 602 So.2d at 1044 (emphasis in original; internal citations omitted).  Where, as here, there is alleged to be more than one cause of harm, a court must determine the "exact risk or risks anticipated by imposition of the legal duty which has been breached" and "the legal or policy considerations which grant excuses from certain circumstances which follow an act of negligence.  This requires, under the facts and the law of each case and the attendant exigencies, a jurisprudential determination which will implement and make

effective our broad codal provisions concerning those who should respond in damages for their faults." *Id.*, 605 So. 2d at 1045 (affirming dismissal of negligent hiring case where risk of injury too attenuated from alleged harm).

Turning first to allegations implicating risk, a substantial portion of the Complaint is devoted to Plaintiffs' theory that a storm surge caused by Hurricane Katrina at the convergence of the Gulf Intra-Coastal Waterway ("GIWW") and the Mississippi River Gulf Outlet ("MRGO") overwhelmed the levees and floodwalls along those bodies of water and the IHNC. To that end, Plaintiffs specifically allege that the USACE negligently designed, built, and maintained MRGO (*see, e.g.,* Compl. ¶¶ 23-25), which caused "an accelerated/enhanced hurricane surge" to rush "through and over" the levees and floodwalls along the GIWW, MRGO, and the IHNC, and resulted in the "massive inundation of all of the class geography." Compl. ¶ 34. These allegations do not implicate anything WGII did or could have done in the East Bank Industrial Area.

As to harm, Plaintiffs have lodged substantial and detailed allegations against the USACE, which was responsible for the design, construction, and maintenance of the IHNC levees and floodwalls, and which appears to be the primary target of the Complaint. Beginning at Paragraph 59 of the Complaint and continuing through Paragraph 74, Plaintiffs set forth detailed and specific failures by the USACE, including the negligent construction of the GIWW and MRGO (Compl. ¶¶ 60 and 61); reliance on insufficient hurricane strength assumptions and erroneous elevation data when designing and building the levees and floodwalls (Compl. ¶¶ 63-65); use of inappropriate materials for levee

construction (Compl. ¶ 71); and failure to provide "sheetpile cutoff, concrete armoring or similar features to prevent erosion, undercutting, collapse or failure, " or to account for "negligently inadequate height." (*Id.*) According to the Complaint, these failures led to catastrophic breaches of the levees and floodwalls and caused extensive damage in Orleans and St. Bernard Parishes. (*See, e.g.,* Compl. ¶ 72). The Complaint does not allege that any of these harms were within WGII's purview or control.

Simply stated, the Complaint does not allege any facts from which it would be reasonable to conclude that WGII was "under a duty to protect each of the plaintiff's interests affected against the type of damage that did in fact occur." *McLachlan v. New York Life Ins. Co.,* 2006 U.S. Dist. LEXIS 15499 *9 (E.D. La. Apr. 3, 2006) (Vance, J.) (granting motion to dismiss where defendant owed no duty to prevent harm of which plaintiff complained). The fact that WGII removed abandoned industrial facilities and debris from the East Bank Industrial Area for the USACE could not have encompassed the risk that a storm surge occasioned by an act of nature and magnified by the improper design and construction of MRGO would overwhelm those storm protection structures. Nor could WGII's work have encompassed the harm that could occur as a result of the catastrophic failure of levees and/or floodwalls that were improperly designed, built, and maintained by the USACE or other entities. Plaintiffs should not be allowed to survive this motion in the vain hope that discovery might bear out their speculative theories of

871217v.1

liability against WGII.[6]  Accordingly, the Complaint should be dismissed and judgment entered on the pleadings.

## CONCLUSION

For the foregoing reasons, WGII respectfully requests that the Court dismiss all claims against WGII for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief can be granted.

---

[6] Indeed, this is the unusual case in which Plaintiffs have already been provided with extensive discovery *before* filing their complaint.  WGII has produced almost 40 boxes of documents addressing WGII's work in the East Bank Industrial Area.  Even after reviewing these documents, Plaintiffs have not been able to plead any facts that would tie their conclusory allegations of damage to the levee and/or flood wall to any work performed by WGII.  As this Court previously concluded when it denied a discovery request by the plaintiffs in the dredging actions, allowing discovery to substantiate speculative claims "would constitute a rank fishing expedition."  Order and Reasons, *In re Katrina Canal Breaches Consolidated Litigation*, No. 05-4182, at 7 (Mar. 9, 2007) (Duval, J.).

- 19 -

871217v.1

Dated:  May 2, 2007

Respectfully submitted,

/s/Heather S. Lonian
William D. Treeby, Bar No. 12901
John M. Landis, Bar No. 7958
Heather S. Lonian, Bar No. 29956
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone:  504-581-3200
Fax:  504-581-3361

George T. Manning
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309-3053
Phone:  404-521-3939
Fax:  404-581-8330

Adrian Wager-Zito
Julia E. McEvoy
Christopher R. Farrell
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone:  202-879-3939
Fax: 202-626-1700

*Attorneys for Defendant*
*Washington Group International, Inc.*

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Memorandum in Support of Washington Group International, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c) has been served upon all counsel of record through the Court's CM/ECF electronic filing system or by placing same in the United States mail, postage prepaid and properly addressed, this 2nd day of May, 2007.

/s/Heather S. Lonian

871217v.1