UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

CIVIL ACTION

NO. 05-4182

SECTION "K" (2)

PERTAINS TO:  MRGO, *Robinson* (No. 6-2268)

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PIERCE O'DONNELL**

## I.      INTRODUCTION

Defendants' motion for certification is not only frivolous and untimely—it has already been decided by this Court.  After carefully considering whether certification was warranted, this Court decided against such a "premature" appeal in its Order of February 2, 2007 ("Order"). Specifically, after finding that "Plaintiffs' request for other discovery is well taken," this Court stated that:

> While the Court indicated at oral argument that it would consider granting certification of this issue for immediate appeal, having thoroughly analyzed the case, the Court funds that clearly it cannot grant the Rule 12(b)(1) motion and that discovery should commence and certification would be premature.

*In re Katrina Canal Breaches Consolidated Litigation (Pertains to Robinson v. United States)*, 471 F.Supp.2d 684, 696 & n. 5 (E.D. La. 2007).

Nothing has occurred in the intervening two and one-half months to require reconsideration.

Certification of interlocutory appeals is controlled by 28 U.S.C. § 1292(b), requiring Defendants to show that the Order denying their motion to dismiss (1) involves a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal would materially advance the ultimate resolution of the case.  According to established Fifth Circuit authority, Defendants bear the burden of establishing *each* of the three criteria for certification.  Failure to satisfy any one of these standards is fatal to a request for certification.

Defendants' motion urges an immediate appeal of two reasons.  First, Defendants contend that the Fifth Circuit should be given the opportunity to determine whether there is an

"established relationship" between the Mississippi River-Gulf Outlet ("MR-GO") and flood control structures constructed pursuant to the Lake Pontchartrain Vicinity Hurricane Protection Plan ("LPVHPP"), thereby triggering governmental immunity under the Flood Control Act of 1928, 33 U.S.C. § 702c ("FCA").  Defendants Brief at pp. 8-12.  Second, Defendants claim that certification is also justified because (1) the FCA can be interpreted as providing governmental immunity for flood damages, regardless of the nature, source or cause of the flood; and (2) a "substantial ground for a difference of opinion" exists over the interpretation of the FCA. Defendants' Brief at pp. 6-8.

With respect to Defendants' first issue for appeal, Fifth Circuit courts have repeatedly held that factual disputes are inherently inappropriate for interlocutory review.  This bar includes legal questions that can be settled only upon resolution of underlying factual differences.  Thus, the first question for appeal should not be certified because Defendants erroneously assert that they have submitted conclusive evidence of an "established relationship" between the MR-GO and the LPVHPP.  In truth, as the Court has determined, this is a sharply disputed factual issue manifestly unsuited for interlocutory appeal.

As for the second issue, Defendants erroneously claim that the differences between the parties over the interpretation of the FCA are sufficient to justify certification.  This is not the law in the Fifth Circuit.  Mere disagreement with the trial judge's ruling on a statutory construction issue does not establish a "substantial ground for a difference of opinion."  As the District Court for the Southern District of Texas observed in *Halliburton Energy Services, Inc. v. NL Industries*, 2007 WL 268492 at p. 11 (S.D. Tex. 2007), "'[s]imply because . . . counsel

2

disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement.'" (citations omitted). Rather, "[i]nterlocutory appeals are most warranted when an issue appears to confound *the district courts and divide them*." *Batton v. Georgia Gulf*, 261 F. Supp. 2d 575, 585 (M.D. La. 2003) (emphasis added).

Defendants also contend that this "difference of opinion" exists because Supreme Court decisions in *James v. United States*, 478 U.S. 597 (1986) and *Central Green Co. v. United States*, 531 U.S. 425 (2001) support their tortured reading of the FCA. In making this argument, Defendants rely on a single sentence torn from the body of each opinion without providing any explanation or context. In fact, each opinion contained numerous statements by the Supreme Court clearly stating the Government was immune from liability for damages caused by *flood control related flood waters only*. Neither case stands for the startling proposition that the United States is immune for flood damages, regardless of the nature, cause, or source of the damaging waters. Indeed, in his brief submitted to the Supreme Court in the *Central Green* case, the Solicitor General emphasized the necessity of some relationship between injury causing water and a federal flood control project. Thus, the only "difference of opinion" on the scope of FCA immunity is between the Government's correct statement of the law in its *Central Green* brief and the contradictory, absurd position taken in its briefing to this Court.

Certification would also likely result in a substantial delay of the case, not the advancement of its resolution. Based on the record developed to date, if this Court's Order were certified for interlocutory appeal, the Fifth Circuit would undoubtedly find that certification was "improvidently" granted—and remand the case to this Court—because of the glaring disputed

factual questions and the lack of any legitimate basis for Defendants' extreme interpretation of the FCA. In the end, after months of pointless briefing and argument, the parties would be left with the same outstanding issues existing on the day this Court issued its Order. In short, rather than leading to an expeditious resolution of this case, an appeal would substantially delay a trial on the merits, and this Court should deny Defendants' motion for certification.

## II.   LEGAL ARGUMENT

### A.   There Is No Recognized Basis Under Fifth Circuit Jurisprudence For An Interlocutory Appeal In This Case

Citing 28 U.S.C. § 1292(b), Defendants claim certification of this Court's order denying their motion to dismiss is "appropriate because the order 'involves a controlling question of law as to which there is substantial ground for difference of opinion' and an immediate appeal will 'materially advance the ultimate termination of the litigation.'" Defendants' Brief at p. 1. Conspicuously missing, however, is any discussion of Fifth Circuit case law as to what is meant by the statutory phrases "substantial ground for difference of opinion" or "materially advanc[ing] the ultimate termination of the litigation." The reason for this striking omission is that the relevant Fifth Circuit jurisprudence reveals the utter lack of merit in Defendants' motion.

District court certifications of interlocutory appeals "are governed by 28 U.S.C. § 1292(b)." *In re Complaint of L.L.P. & D. Marine, Inc.*, 1998 WL 66100 at p. 1 (E.D. La. 1998). Defendants bear "the burden to prove that the order [to be appealed] meets *each one of the criteria*" in 28 U.S.C. § 1292(b) for an interlocutory appeal. *B & B Advisory Services, LLC v. Bombardier Aerospace Corp.*, 2003 WL 22326511 at p. 2 (E.D. La. 2003) (emphasis and

4

bracketed text added); *see also In re Complaint of L.L.P. & D. Marine, Inc.*, 1998 WL 66100 at

p. 1.

 Defendants must establish three indispensable prerequisites in order to substantiate their

request for an interlocutory appeal:

> The statute requires the district judge to certify in his interlocutory order that
> (1) the order involves a controlling question of law in the case (2) as to which
> there is substantial ground for difference of opinion and (3) an immediate appeal
> from the order may materially advance the ultimate termination of the litigation.

*Aprico v. Swan Lake*, 643 F.2d 1109, 1110 & n. 2 (5th Cir. 1981):

 Consistent with their longstanding policy against piecemeal appeals, Fifth Circuit courts

have emphatically stressed that interlocutory appeals are sanctioned in only *the most*

*extraordinary circumstances* where there is an unquestionable difference of opinion *between the*

*federal courts, not the parties* as to a controlling question of law and appellate review would

promote the ultimate resolution of a case. *See Halliburton Energy Services, Inc. v. NL*

*Industries*, 2007 WL 268492 at p. 11 (S.D. Tex. 2007) ("'Section 1292(b) appeals are

exceptional.'") (citations omitted); *Shimon v. Sewerage & Water Board of New Orleans*, 2006

WL 2548057 at p. 2 (E.D. La. 2006) ("Section 1292(b) should 'be applied in relatively few

situations and should not be read as a significant incursion on the traditional federal policy

against piecemeal appeals'.") (citations omitted).[1] Indeed, one commentator has suggested that

---

[1]  *See also Gottfried Corp. v. Travelers Cas. and Surety Co. of Amer.*, 2004 WL 1857656 at p. 1 (E.D. La. 2004) ("Certifications of interlocutory appeals are extraordinary remedies and should only be granted upon a showing that judicial economy and fairness demand review. . . . Federal policy discourages piecemeal appeals."); *Lejano v. K.S. Bandak*, 2000 WL 33416866 at p. 5

the "exceptional case standard" has become a fourth qualification for certifying interlocutory

appellate review.  *See* Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. §*

*1292(b)*, 88 Harv. L. Rev. 607, 625 (1975).  Accordingly, "[d]istrict courts should *construe*

*requirements for certification of interlocutory appeal strictly* and certify only where exceptional

circumstances warrant." *Copelco Capital, Inc. v. Gautreaux*, 1999 WL 729248 at p. 1 (E.D. La.

1999) (emphasis added).

       While this case is unique because of the number of victims and the severity of their

losses, this action is not "exceptional" for purposes of interlocutory review because Defendants

are unable to establish a legal basis warranting an appeal of this Court's Order.  Defendants'

motion is doomed for two glaring reasons.

       First, as explained in more detail below, questions of fact are quintessentially

inappropriate for interlocutory review.  Nevertheless, Defendants are essentially asking this

Court to authorize the appeal of an issue that can be decided only after a full development of, and

a trial determining, the facts, *i.e.* whether the United States Army Corps of Engineers ("Army

---

(E.D. La. 2001) ("Section 1292 (b) 'is meant to be applied in relatively few situations and should
not be read as a significant incursion on the traditional federal policy against piecemeal
appeals'.") (citations omitted);  *Steel Coils, Inc. v. M/V Lake Marion*, 2000 WL 1801842 at p. 2
(E.D. La. 2000) ("An interlocutory appeal . . . is 'exceptional' . . . ."); *Traffic Scan Network,
Inc. v. Winston*, 1993 WL 390144 at p. 2 (E.D. La 1993) ("Appeals under section 1292 are
exceptional and should be used sparingly so as not to contravene the Fifth Circuit's policy
against piecemeal appeals."); *White v. Taylor*, 677 F.Supp. 882, 888 (S.D. Miss 1988) ("The
Court of Appeals for the Fifth Circuit has cautioned that 'permission to appeal is granted
sparingly, not automatically'.") (citations omitted).

Corps") actually constructed "levees" along the southern bank of the MR-GO after 1965 in accordance with Congressional authorization and its own design criteria, rules, and regulations.

Second, as also discussed below, Defendants insist they should be allowed to appeal the question of whether the FCA immunizes the United State from liability for flood damages, regardless of the cause of the flood or the "nature of the waters" causing damage. According to Defendants, because the FCA's language is supposedly susceptible of such an expansive interpretation, a "substantial ground for difference of opinion" exists as to the FCA's meaning. Section 1292(b), however, mandates a difference of opinion between the federal courts, *not the litigants.*. Strikingly, Defendants fail to site a single case supporting their aberrant reading of the FCA. Instead, they rely on excerpts plucked from case law out of context to substantiate their untenable position. Here, where there is no judicial acceptance of—much less substantial difference of opinion among the federal courts concerning—Defendants' unfounded interpretation of the FCA, this Court should deny Defendants' motion for certification.

**B.      Defendants Cannot Take An Interlocutory Appeal Of This Court's Ruling Finding A Substantial Factual Dispute Over The Existence Of Alleged "Levees" Bordering The Southern Bank Of The MR-GO**

Defendants contend that "[a]n immediate appeal would allow the Court of Appeals to decide whether the established relationship between the MR-GO and the LPVHPP is sufficient to render the United States immune from liability . . . ." Defendants Brief at p. 12. The fatal flaw in Defendants' assertion is that it assumes Defendants have provided conclusive, undebatable proof of an "established relationship" between the MR-GO and the LPVHPP. In truth, whether any LPVHPP-mandated flood control structures—as approved by Congress—were ever

constructed by Defendants adjacent to the MR-GO–consistent with Army Corps design

criteria— is a sharply disputed question of fact.  As this Court incisively observed in its Order:

> There is intense disagreement as to the scope of the "levees" that were created in
> the dredging of the MRGO—are these spoil banks or actual flood control
> projects?  Likewise, there are serious questions as to the relationship between the
> MRGO and the LVP. . . . [A] complete understanding of the evolution of the
> MRGO and LVP in these areas is required before any legal determination can be
> made.   . . . The Government now contends that that certain "levees" that were
> constructed in conjunction with MRGO constitute projects that would be subject
> to immunity under § 702c. . . . [T]he Court finds that it would be legally
> inappropriate to use a Rule 12(b)(1) approach and dismiss this case at this
> juncture on the Court's finding of facts based on the record before it.  Thus, the
> Court must treat this motion as one brought under Rule 12(b)(6).  The Court
> would be extremely precipitous if it decided the underlying facts concerning the
> appropriations and interrelationship between the LVP and the MRGO now.   It is
> certainly not clear that the MRGO has morphed into a hybrid flood control
> project/navigational aid project.  This Court will deny this matter and finds that
> plaintiffs' request for further discovery is well taken.

*In re Katrina*, 471 F. Supp.2d at 695-96 (E.D. La. 2007).

Federal courts have consistently ruled that interlocutory appeals are not warranted when a

critical issue depends on the resolution of factual disputes (such as whether "levees" abutting the

MR-GO were constructed) or legal issues that require resolution of underlying factual

differences before the legal questions can be decided.  The Fifth Circuit is emphatic that it is

improvident of a District Court to authorize an interlocutory appeal where, as here, "[m]any parts

of this case . . . remain open for a factual trial."  *Spurlin v. Gen. Motors Corp.* 426 F.2d 294 (5th

Cir. 1970).  This Court forcefully underscored this point in *Gottfried Corp. v. Travelers Cas. and

Surety Co. of Amer.*, 2004 WL 1857656 (E.D. La. 2004):

'The statutory language [of 28 U.S.C. § 1292(b)] naturally suggests an opposition between a question of law and 'a question of fact or matter for the discretion of the trial court.' . . . '*There is indeed no reason to suppose that interlocutory appeals are to be certified for the purpose of inflicting upon courts of appeals an unaccustomed and ill-suited role as fact finders.* Even when the question is the supposed question of law whether there are any genuine issues of material fact that preclude summary judgment, ordinarily it seems better to keep courts of appeals aloof from interlocutory embroilment with the factual content of the record.' . . . . Indeed, *federal courts have consistently held that questions of fact . . . are inappropriate for interlocutory appeal under 28 U.S.C. § 1292(b).*

*Id.* at p. 2 (quoting 16 Wright & Miller, Fed. Pract. and Proc. Juris. 2d § 3930) (emphasis added); *see also In re World Trade Center Disaster Site Litigation*, 469 F.Supp.2d 134, 139 (S.D.N.Y. 2007) ("If the affirmative defense put forth by a defendant as his basis for claiming a right to an immediate appeal clearly cannot be supported by the undisputed facts, his claim to that right is not colorable."); *De Soto Med. Center, Inc. v. Methodist Hospitals of Memphis*, 604 F.Supp. 307, 311 (S.D. Miss. 1985) ("The motion . . . to certify this question for an interlocutory appeal is denied as there are a myriad of fact questions necessary to a resolution of this issue . . . .").

In order for the Fifth Circuit to decide "whether the *established relationship* between the MRGO and the LPVHPP is sufficient to render the United States immune from liability," Defendants must present *competent evidence* that such a "relationship" actually existed. This is clearly a non-appealable, hotly-contested question of fact requiring further discovery and analysis by this Court after a trial on the merits since "Section 1292(b) is not intended to grant the appellate courts power to give advice on speculative matters." *Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860, 663 (3d Cir. 1977).

9

The paramount need for full blown discovery is underscored by the Defendants' gross mischaracterization of a critical factual issue. In their motion to dismiss, Defendants attempted to convince this Court that the MR-GO magically morphed into a flood control project in part because of a claimed lock and dam at Seabrook, Louisiana which Defendants' own documents revealed *was never constructed*. Furthermore, in support of this motion for certification, the only evidence the Government cites to corroborate the construction of purported "levees" along the MR-GO is the same solitary, unauthenticated, and unverified map—which supposedly showed completed "levees" along the MR-GO—presented to support their motion to dismiss.[2] *See* Defendant's Brief at p. 10.

In their opposition, Plaintiffs demonstrated that vast stretches of the Mr. GO had no "levees" but were merely spoil banks that do not qualify as "levees" under the Army Corps' own criteria for construction of "levees" in populated areas like Greater New Orleans. *See* Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss at pp. 30-34; Declaration of Nina Froeschle in Support of Plaintiffs' Request to Conduct Additional Discovery Pursuant to Fed. R. Civ. Proc. 56(f) at pp. 9-15. Such sharply-disputed assertions—predicated on dubious evidence lacking any foundation—hardly establishes that the Army Corps actually constructed "levees" along the MR-GO which (1) satisfied the Army Corps' own standards for "levee" construction and (2) used funds authorized for "levee" construction under the LPVHPP.

---

[2]  In neither motion have Defendants offered the declaration of a single Army Corps official to substantiate their assertion about "levees" along the MR-GO. This Sphinx-like silence on this critical factual question is telling.

Indeed, without the benefit of discovery, Plaintiffs have developed persuasive evidence that the Army Corps did not construct "levees" along the MR-GO. For example, attached as Exhibit 1 to the Declaration of Pierce O'Donnell ("O'Donnell Declaration") is a copy of a December, 2005 navigation chart published by the United States Department of Commerce, National Oceanic and Atmospheric Administration ("NOAA") for the portion of the MR-GO at issue.[3] The only "structures" depicted on this map along the southern bank of the MR-GO are "Spoil Areas" and embankments, not levees.

If the Army Corps had actually constructed "levees" along the MR-GO, it would have been a simple matter for it to produce construction contracts, materials invoices, or some other concrete proof of "levee construction." To date, no such evidence has been provided by Defendants—for reasons that will become evident at trial. In any event, the "levee" issue is a contested question of fact on a dispositive statutory immunity claim, and this Court's rulings on factual disputes, as a matter of law, are not amenable to interlocutory appeal. For this reason alone, Defendants' motion for certification should be denied.

---

[3] The map states that distance measurements along the MR-GO were "[t]abulated from surveys by the Corps of Engineers." Under the section of the map entitled "Authorities," the map states "[h]ydrography and topography by the National Ocean Service, Coast Survey, with additional data from *the Corps of Engineers*, Geological Survey, and U.S. Coast Guard." (Emphasis added). Due to the size of the map, it is being lodged separately from this opposition, which Exhibit 1 will also include relevant pages from the most recent edition of "Chart No. 1" which is a NOAA publication explaining the symbology on the map. The symbols for dikes or levees do not appear along the relevant portions of the MR-GO, *i.e.*, the southern bank of the MR-GO along Reach 2 of the waterway.

**C.**   **Defendants' Arguments Regarding The Scope Of FCA Immunity Are Not Subject To Dispute Among The Federal Courts**

The first two standards for interlocutory appeal under Section 1292(b)–a "controlling question of law" over which there is "substantial ground for difference of opinion"–are closely related.  We will therefore first address the second of these two criteria because it is the lynchpin of Defendants' motion.  Defendants contend there is a substantial difference of opinion over the interpretation of governmental immunity under 33 U.S.C. § 702c because the statute "can reasonably be interpreted as providing the United States immunity" for flooding of any kind regardless of the nature of the flood waters or any nexus to flood control.  Defendants' Brief at p. 2.

Certification of an interlocutory appeal, however, requires more than a difference of opinion between the parties over the interpretation of a statute.  As the District Court for the Middle District of  Louisiana noted in *Batton v. Georgia Gulf*, 261 F.Supp.2d 575 (M.D. La. 2003):

> The nub of the issue is whether there truly is a substantial ground for difference of opinion.  *Not just any close question should be certified for interlocutory appeal. The law is filled with close cases.*  Judicial economy counsels against sending every such close call to the courts of appeals, for district courts are quite capable of making those calls.  *Interlocutory appeals are most warranted when an issue appears to confound the district courts and divide them.*

*Id.* at 585 (emphasis added).[4]

---

[4] Similarly, the District Court for the Southern District of Texas commented in *Halliburton Energy Services, Inc. v. NL Industries*, 2007 WL 268492 at p. 11 (S.D. Tex. 2007), "'there must be substantial ground for difference of opinion over the controlling question of law

In our case, Defendants fail to cite a single decision where a federal court has adopted their sweeping view of the FCA.  In contrast, as explained in Plaintiffs' opposition to Defendants' motion to dismiss and as noted by this Court in its Order, a substantial body of federal law holds the United States liable for flood damages in a variety of contexts.  *See e.g. Peterson v. United States*, 367 F.2d 272 (9th Cir. 1966) (United States Air Force engineers' decision to dynamite an ice-jam causing a sudden discharge of water that damaged plaintiff's property not immunized under 33 U.S.C. § 702c); *Valley Cattle Co. v. United States*, 258 F.Supp. 12 (D. Hawaii 1966) (United States could be held liable for flooding of property downstream from a negligently maintained drainage ditches on United States Air force facility). Indeed, the consistent theme of federal jurisprudence on the proper interpretation of the FCA is that "[i]t does not follow that the mere happening of a flood insulates the Government from all damage claims flowing from it." *Mclaskey v. United States*, 386 F.2d 807, 808 & n. 1 (9th Cir. 1967).

The Fifth Circuit's controlling decision in *Graci v. United States*, 456 F.2d 20 (5th Cir. 1971)—holding that the United States could be held liable for flood damages caused by the MR-GO during Hurricane Betsy in 1965—is entirely consistent with this body of law.  *In re Katrina*, 471 F.Supp. 2d at 690-92 (quoting *Graci*, 456 F.2d at 22-27).  Accordingly, this Court rightly held:

---

for certification under § 1292(b).' . . . '*But simply because a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement*.'" (Emphasis added; citations omitted).

> The Government maintains that the plain language of § 702c clearly means that the United States cannot be liable for damages caused by any floodwaters of any kind occurring anywhere. . . . The Court finds that this wholesale approach to immunity in the context of this motion to dismiss is neither supported by the history of the Flood Control Act of 1928, nor is a fair reading of *Central Green Co. v. United States*, 531 U.S. 425 (2001).

*In re Katrina*, 471 F.Supp.2d at 690.

Undaunted by the lack of authority supporting their interpretation of the law, Defendants resort to wrenching language from United States Supreme Court decisions out of context to fabricate legal support out of whole cloth. At page 7 of their Brief, Defendants assert their reading of the law is validated by the Supreme Court's opinion in *James v. United States*, 478 U.S. 597 (1986) where the Supreme Court stated "the FCA 'safeguard[s] the United States against liability of any kind for damage from or by floods or flood waters in the broadest and most emphatic language'." Defendants' Brief at p. 7 (*quoting James*, 478 U.S. at 608). Defendants, however, ignore the Supreme Court's qualification just two sentences before this observation where it noted, "Congress clearly sought to ensure beyond doubt that sovereign immunity would protect the Government from 'any' liability *associated with flood control*." *James*, 478 U.S. at 608 (emphasis added).[5]

---

[5] *James* is replete with other remarks by the Supreme Court clearly limiting its decision to the "flood control" context:

> The Flood Control Act . . . was the Nation's response to the disastrous flood in the Mississippi River Valley in 1927. . . . *The flood control system* in the Mississippi River Valley in response to this catastrophe was the largest *public works project* undertaken up to that time in the United States. . . . It is not surprising . . . that

Additional compelling support for the conclusion that the Supreme Court's decision in *James* was restricted to governmental immunity in the flood control context—and did not hold the United States immune from flood damage regardless of the cause or source—appears in the Government's own brief filed with the Supreme Court.  Attached as Exhibit 2 to the O'Donnell Declaration is a copy of the United States Brief filed with the Supreme Court in the *James* case.  In *James*, the Government did not espouse the broad, all encompassing interpretation of the FCA advanced in our case.  Instead, on page 12, footnote 2 of the Government's brief, the United States observed:

> Some courts have stated that Section 702c does not apply when damage is caused by an act that is 'wholly unrelated to any Act of Congress authorizing expenditures of federal funds for flood control, or any act undertaken pursuant to any such authorization' . . . Other courts have interpreted the provision more broadly.  . . . *This case does not present an occasion for resolving this issue concerning the scope of Section 702c because the damage for which respondents seek compensation plainly resulted from the operation of federal flood control projects.*

Brief of the United States, *James v. United States*, (No. 85-434), 1985 WL 669416 at p. 12 & n. 2 (1985) (emphasis added; citations omitted).

---

> the legislative history of § 702c shows a consistent concern for limiting the Federal Government's financial liability to expenditures directly necessary for the construction and operation of *the various projects*.  Numerous statements concerning the immunity provision confirm that it was intended to *reaffirm sovereign immunity in such a dangerous and extensive project*.

*Id.* at 607 (emphasis added); *see also id.* at 612 ("[T]here are numerous passages in the legislative history that emphasize the intention of Congress to protect the Federal Government from *any* damages liability that might arise out of flood control.") (emphasis in the original; underlining added).

Simply put, *James v. United States* does not support the proposition that Defendants are immune from liability for flood damages from any source because by the United States' own admission that this issue was never before the Supreme Court.

The Supreme Court's opinion in *Central Green Co. v. United States*, 531 U.S. 425 (2001)—and once again the Government's briefing—also refute Defendants' argument that this decision supports their overly broad interpretation of the FCA. As this Court noted in its Order, *Central Green* involved property damage to a pistachio farm caused by "subsurface and surface water flooding from the Madera Canal, a federal facility leased to the Madera Irrigation District." *In re Katrina*, 471 F.Supp.2d at 692. The canal was also part of a "vast federal project known as the Central Valley Project . . . which included flood control projects for the Sacramento and San Joaquin Rivers in California." *Id.* The Ninth Circuit affirmed the dismissal of the Plaintiff's complaint because the Madera Canal was not "wholly unrelated" to the broader federal flood control project. *Id.* at 693. Rejecting this not "wholly unrelated" test, the Supreme Court reversed the dismissal, holding that "'courts should consider the character of the waters that cause the relevant damage rather than the relation between that damage and a flood control project.'" *Id.* at 694 (quoting *Central Green*, 531 U.S. at 437).

This unambiguous holding alone refutes the Government's argument that it is immune from all flooding regardless of the cause or source because if Defendants' assertion was accurate, there would be no need for a court to consider the "character of the waters"; the United States would be immune from flood related liability under any circumstances. In addition, while the Supreme Court in *Central Green* shifted the focus of FCA immunity away from the relationship

between a "flood control project" and damaging "flood waters" as the touchstone of FCA immunity, it preserved the necessity of some relationship between "flood control" and "flood waters" when examining the "character of the waters." As the Supreme Court noted in *Central Green*:

> In *James*, we held that the phrase "flood or flood waters" is not narrowly confined to those waters that a federal project is unable to control, and that *it encompasses waters that are released for flood control purposes* when reservoired waters are at flood stage. ... [I]t is the text of § 702c, *as informed by our holding in James*, rather than the broad dictum of that opinion, that governs the scope of the United States' immunity from liability for damage caused 'by floods or flood waters'."

*Central Green*, 531 U.S. at 437 (emphasis added).

Significantly, in its briefs submitted to the Supreme Court in connection with *Central Green*, the Government unequivocally admitted the need for a relationship between "flood waters" and "flood control." Exhibit 3 to the O'Donnell Declaration is the United States' brief in opposition to the petition for writ of certiorari in *Central Green*. At pages 11-12 of the United States' brief, the Government states:

> [C]ontrary to petitioner's assertions, the court of appeals has not applied Section 702c without regard to whether *a factual nexus exists between the injury in question and the government's flood control activities.* ... The decision below is entirely consistent with the decisions of the other circuits articulating, in the wake of *James, some form of factual nexus requirement as an essential predicate to immunity under Section 702c.* When the various other circuits have concluded that the particular facts before them satisfy that nexus requirement, they have held the government immune from suit. *In other cases, involving injuries more remotely related to federal flood control efforts, they have held the government subject to suit.*

Brief of the United States in opposition to petition for writ of certiorari, *Central Green Co. v. United States*, (No. 99-859), 2000 WL 33979643 at pp. 11-12 (2000) (emphasis added).

Based on its proper reading of *Central Green* and consistent with the Government's admission that "some form of factual nexus requirement [is] an essential predicate to immunity under Section 702c," this Court correctly rejected Defendants' clearly erroneous interpretation of the FCA and skewed reading of *Central Green*. *In re Katrina*, 471 F.Supp.2d at 690.  Not surprisingly, therefore, Defendants have cited no case law supporting its claim that the FCA confers blanket immunity on the United States for liability from any flooding due to any cause or source.  Simply put, there is no "substantial difference of opinion" over the law—except the Government's own inconsistencies between what it argued in the Supreme Court and in this District Court.

D.   **Defendants Claim That The Fifth Circuit Has Not Specifically Revisited Its Decision In *Graci* Or Addressed the Supreme Court's Ruling In *Central Green* Does Not Justify An Interlocutory Appeal**

In an argument related to the Government's immunity contention of a "substantial ground for difference of opinion" as to the scope of FCA, Defendants also assert that the Fifth Circuit "should be given the opportunity to resolve any asserted tension between its prior decision [in *Graci v. United* States] and the later Supreme Court decisions."  Defendants' Brief at p. 8.  This "asserted tension," however, is a fiction arising from Defendants' unsubstantiated claims of the existence of "levees" constructed along the MR-GO—a sharply disputed, factually intensive issue inappropriate for interlocutory appellate review.

Defendants then similarly insist that "certification is particularly appropriate because, while *Central Green* was decided more than five years ago, there are no Fifth Circuit decisions that apply it. . . . Nor can the Court confidently rely on cases decided prior to *Central Green*."

Defendants' Brief at p. 9. The short answer to this argument is that if cases before *Central Green* are so "unreliable," why have Defendants relied to such a great extent on one such conspicuously pre-*Central Green* opinion–*James v. United States*, 478 U.S. 597 (1986) decided 15 years before *Central Green*–in making this application for certification?

In actuality, as demonstrated above, *James v. United States* and *Central Green Co. v. United States* provided more than sufficient guidance for this Court to conclude that Defendants' fanciful, radical interpretation of the FCA – advanced in their motion to dismiss and in this application for certification – totally missed the mark. Even if this were a difficult issue of first impression – which it clearly is not – "neither unusual facts nor legal issues of first impression require, or in this instance justify, certification of an interlocutory appeal." *Judicial Watch, Inc. v. National Energy Policy Development Group*, 233 F.Supp.2d 16, 27 (D.D.C. 2002).[6]

Contrary to the Defendants' suggestion, *Graci v. United States* remains good law that the Fifth Circuit need not reconsider, much less prematurely reconsider. *Graci* accurately predicated its decision on the fact that the MR-GO is indisputably a navigable waterway and not a federal flood control project. *Graci*, U.S. 6 F.2d at 22, 26. In other words, the Hurricane Betsy-related flooding was unrelated to federal "levees" (or other flood control facilities) or waters that they

---

[6] *See also In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) ("[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion."); *Consub Delaware LLC v. Schahin Engenharia Limitada*, 2007 WL 473728 at p. 2 (S.D.N.Y. 2007) ("Interlocutory appeal . . . 'is not intended as a vehicle to provide early review of difficult rulings in hard cases.'") (citations omitted); *Halliburton Energy Services, Inc.*, 2007 WL 268492 at p. 11 ("[S]imply because a court is the

could not contain.  Indeed, the Supreme Court in *James* approvingly cited *Graci,* noting the case

stands for the proposition that 33 U.S.C. § 702c "conferred immunity only for floods or flood

waters connected with a flood control project."  *James,* 478 U.S. at 601, n. 2.

　　　This Court's carefully reasoned analysis in its Order, its patience during months of

briefing (including Defendants' belated attempts to augment the record), and its insightful

questioning during more than two hours of oral argument was a paradigm of thoughtful,

considered judicial decision-making.  Defendants' suggestion that this Court could not make the

"hard calls" in this case without further guidance from the Fifth Circuit is a gratuitous,

unfounded deprecation of this Court's wise discharge of its responsibilities.

　　　This Court's decision to deny Defendants' motion to dismiss was not due to lack of

appellate court direction.  It was based on a manifestly correct conclusion that Defendants had

failed to meet the standards of Rule 12(b) under controlling Fifth Circuit law because of sharply

disputed factual issues and a clearly erroneous legal interpretation of the FCA.  Accordingly, this

Court should deny Defendants' motion for certification.

**E.**　　**Since There Is No Difference Of Opinion Over Defendants' Radical
Interpretation of the FCA, The Issue Of The Scope Of The Government's
Immunity Is Not Controlling In This Case**

　　　With respect to the first Section 1292(b) criterion, a question of law is "controlling" "if

reversal of the district court's action would terminate the litigation." *Northfield Ins. Co. v.*

---

first to rule on a question . . . does not qualify the issue as one over which this is substantial
disagreement.").

*George E. Buisson Realty Co.*, 1999 WL 77721 at p. 2 (E.D. La. 1999), *see also Green v. Administrators of the Tulane Ed. Fund*, 1998 WL 61041 at p. 1 (E.D. La. 1998). Since Defendants have failed to provide any authority supporting its radical interpretation that the FCA immunizes the United States for any liability for flood damages, regardless of the source or cause, this "question of law" is not "controlling" in the context of this case. The dispositive question on FCA immunity remains the same: to what extent were Plaintiffs' injured by flood waters related to "flood control" versus the degree to which Plaintiffs' damages were attributable to the MR-GO.

Indeed, Defendants conceded at oral argument that *Central Green* did away with the "all or nothing" proposition of FCA immunity existing under the former "wholly unrelated" test. In other words, under this legal analysis, if the flood water causing injury was only 1% related to a flood control project, the United States enjoyed total immunity for all damages. *See Morici Corp. v. United States*, 681 F.2d 645, 648 (9th Cir. 1982).[7]

---

[7] The Fifth Circuit in *Graci v. United States, supra,* found the United States liable for flood damages caused by the MR-GO under the restrictive "wholly unrelated" test. *See Morici Corp.,* 681 F.2d at 647-48 ("This court has consistently used the "wholly unrelated" standard to determine whether 702c immunity applies. The [*Peterson v. United States*, 367 F2d 271 (9th Cir. 1966)] reasoning was also followed by the Fifth Circuit in *Graci v. United States,* 456 F.2d 20, 26 (5th Cir. 1971), when it held that liability for flooding caused by negligent construction of the Mississippi River-Gulf Outlet, a project which had nothing to do with flood control, was not barred by the 702c immunity."). The Supreme Court in *Central Green* rejected the "wholly unrelated" test and *contracted*, not expanded, FCA governmental immunity. *Sanko S.S. Co., Ltd. v. United States*, 272 F.2d 1231, 1232 (9th Cir. 2001) ("[T]he United States Supreme Court reversed *Central Green* and established a more restrictive test for determining sovereign immunity."). Since the Fifth Circuit held that FCA governmental immunity did not apply to the flood damages caused by the MR-GO under the "wholly unrelated" test which recognized a

In rejecting the "wholly unrelated" test, the Supreme Court in *Central Green* repudiated the "all or nothing" approach to a plaintiff's damages. As this Court observed in its Order, "the concept that the Government might be immune from damage from the effect of some water and not as to other water is recognized in [*Central Green Co. v. United States*, 531 U.S. 425 (2001)]." *In re Katrina*, 471 F.Supp.2d at 694. This Court further noted Defendants' acknowledgement of this conclusion:

> [T]he Government's position ignores the fact that even the Supreme Court in *Central Green* opened the possibility of a segregation of damages – those for which the Government would be immune under § 702c and those for which immunity would not attach. *Indeed, the Government even concurred with this reading at oral argument.*

*In re Katrina*, 471 F.Supp.2d at 694 (emphasis added).

The Defendants' concession during oral argument is a fatal admission that this motion has no merit. If the Government was immune from liability from any and all causes, as it now claims, there would be no reason for Defendants' acquiescence in the idea that a court can segregate damages between immune and non-immune sources or causes. Defendants would be immune from flood damages without limitation, and "segregation" would be superfluous. In other words, to concede this point, the Government necessarily accepted the underlying premise that the United States was immune from liability for flood water damage due to flood control, on the one hand, but liable for flood water damage stemming from the MR-GO, on the other. The

---

broader scope of governmental immunity, it is specious for Defendants to claim it would be immune from MR-GO-related flood damage under *Central Green* which *diminished* the scope of FCA governmental immunity and rejected the "wholly unrelated" test.

Government's concession during oral argument—acknowledging the limitation of FCA immunity to floodwaters related to flood control—highlights the utter lack of merit in this motion.

Defendants attempt to evade this admission by changing the calculus required to segregate damages.  Specifically, Defendants claim that "[t]he 'segregation' suggested by the language of the FCA and *Central Green* is quite different from the distinction suggested by the Court.  . . . Thus, [according to Defendants,] the 'segregation' required by the statute is whether damages stem from a flood or floodwaters (for which the United States is immune under the FCA) or other types of waters (for which the United States is not immune under the FCA)." Defendants Brief at p. 13 (bracketed text added).

Like Defendants' other arguments in this motion, their contention about "segregation" is based on an erroneous assumption that the United States is cloaked with FCA immunity from liability for damages due to any and all "flood waters," regardless of the cause or source.  As demonstrated above, however, Defendants have cited no authority to support this nonsensical reading of the law.  Indeed, Defendants have no support to validate their view of the type of "segregation" required under the FCA and *Central Green*, nor do they even attempt to explain the nature of those "other types of waters" for which Defendants claim the Government lacks immunity.

**F.**   **The Only True Hardship Resulting From An Appeal Would Be That
Suffered By Plaintiffs And Hundreds of Thousands Of Other New Orleans
Residents Whose Lives Have Been So Devastatingly Ruined By Defendants'
Negligence**

As for the third of the Section 1292(b) criteria – "an immediate appeal from the order

may materially advance the ultimate termination of the litigation."—Defendants also fail to

establish this related criterion for the reasons discussed above.  There is clearly no "substantial

difference of opinion" as to whether Defendants are unqualifiedly immune for all flood damages,

irrespective of any cause or source, since no authority exists to validate Defendants' argument,

and Defendants have conceded that their "all or nothing" approach conflicts with the controlling

Supreme Court decision in *Central Green* and that segregation between immune and non-

immune causes is required.  Similarly, since so many outstanding critical questions of fact must

be resolved, an interlocutory appeal is clearly unwarranted.

From a pragmatic standpoint, nothing will be gained from an appeal since the Fifth

Circuit would most likely find that certification was improvidently granted because of the lack of

any "substantial difference of opinion" or because of the impropriety of an interlocutory appeal

of disputed factual questions.  *See e.g.*, *United States v. Bear Marine Services*, 696 F.2d 1117 (5th

Cir. 1983); *Kerns v. McWilliams*, 435 F.2d 1306, 1306 (5th Cir. 1971).  This outcome is almost a

foregone conclusion because federal appellate courts routinely defer to District Courts'

determinations of the existence of genuine issues of disputed fact.  *See e.g.*, *Varity Corp. v.

Howe*, 516 U.S. 489, 498 (1996) ("[w]e give deference to the factual findings of the District

Court, recognizing its comparative advantage in understanding the specific context in which the

events of this case occurred.")  After spending months preparing appellate briefs and arguing

before the Fifth Circuit, the parties would be left in the same position that they occupied on

February 2, 2007 when this Court rendered its decision.  Therefore, "such an appeal would more

likely tend to delay rather than advance termination of the litigation. The parties would be better

advised to expend their energies completing discovery rather than taking appeals." (*Struthers*

*Scientific & Intern. Corp. v. General Foods Corp.*, 290 F.Supp. 122, 130 (D.Tex. 1968). [8]

> Defendants further insist that:

> [W]ithout resolution of the immunity, weeks, if not months, will be required to
> evaluate the documents that bear on this issue . . . .  It is presently estimated that
> several million pages of documents may be responsive to the Plaintiffs First
> Request for Production of Documents.  Producing these documents will cost in
> excess of $20 million, require tens of thousands of hours, and consume many
> months.

Defendants' Brief at p. 16.

Plaintiffs seriously question the Governments' claim about the number of *relevant*

documents and the estimated cost of production.  If the Government has legitimate concerns

about the breadth of the requests, it can take the matter to Magistrate Wilkinson.  For now,

however, Defendants have provided no declaration or any evidence to substantiate their claim

that discovery in this case will be as onerous or expensive as they claim.  As one federal court

recognized 150 years ago, there is "no prerogative possessed by the United States to be exempt

_____

[8] Defendants also claim that "[w]ithout a clear and definitive construction, discovery will
necessarily be diffuse."  Defendants' Brief at p. 15.  Defendants' concern is specious at best
because this motion is sought to terminate or at least delay this case, rather than to seek direction
as to the scope of discovery.

from the rules of evidence, which govern other suitors, in civil actions . . . ." *United States v. Dunham,* Brunn. Coll. C. 653, 25 F.Cas. 938 (C.C. Mass. 1857). In the final analysis, Plaintiffs' right to due process cannot be defeated by unsubstantiated claims of burden and expense. *See c.f. Taylor v. Hayes,* 418 U.S. 488, 500 (1974). ("Due process cannot be measured in minutes and hours or dollars and cents.")

Since Defendants have failed to satisfy the first two criteria for an interlocutory appeal, the putative discovery and trial burdens alone do not warrant certification. As the First Circuit noted in the analogous context of the "collateral order doctrine" in *Lamphere v. Brown University*, 553 F.2d 714 (1st Cir. 1977): "If the hardships of trial are routinely held to implicate a separate interest reviewable under the collateral order doctrine, the distinction between interlocutory and final orders would be seriously undermined, if not eliminated."

Finally, one of the few accurate statements in Defendants' motion is their observation that "*Robinson* has been advanced as a test case." Defendants' Brief at p. 5. As such, hundreds of thousands of New Orleans' residents[9] whose lives were ruined and dreams were shattered, await a resolution of this case. Even if Defendants' claims about the $20 million cost for discovery are accurate, this figure pales in comparison to the billions of dollars of damages suffered by innocent citizens who trusted their Government to protect them and whose faith was so tragically betrayed by the Army Corps' palpable negligence.[10]

---

[9]  Over 300,000 claims have already been filed with the Army Corps. Defendants' Brief at p. 4.

## III.   CONCLUSION

Hurricane Katrina struck in August 2005.  Now, as the two year anniversary of this tragedy–and another hurricane season–approaches, Defendants seek to further deny Plaintiffs their deserved day in court by concocting a certification request—which this Court has already denied—based on misstatements of law and unsubstantiated facts.  This motion not only lacks merit—it smacks of bad faith.  Plaintiffs therefore respectfully request that this Court put an end to Defendants' machinations by denying this motion for certification.

---

[10] Defendants comparison of this case with *Vanderbrook* (C.A. No. 05-6323), *Xavier University* (C.A. No. 06-516), and *Chehardy* (C.A. No. 06-1672) (the "Insurance Cases") certified for appeal is disingenuous.  Indeed, the reasons for this Court's decision to certify an appeal of its ruling in the Insurance Cases litigation demonstrates the frivolousness of the Government's motion here.  The controlling issue of contract interpretation in the Insurance Cases was a pure question of law (and did not involve resolution of disputed facts), there was clearly room for reasonable differences of opinion on the controlling issue of proper policy interpretation, and immediate resolution would materially advance resolution of the cases.  *See In re Katrina Canal Breaches Consolidated Litigation* (*Pertains to Insurance*), 466 F.Supp.2d 729, 734-35, 747 (E.D. La. 2006).  In sum, the three statutory requirements for interlocutory appeal contained in 28 U.S.C. § 1292(b) were satisfied in the Insurance Cases and certification was justified.  In stark contrast, Defendants here have totally failed to establish any of the three criteria which could justify their request for an interlocutory appeal

Dated: May 8, 2007

**Respectfully submitted,**

APPROVED PLAINTIFFS LIAISON COUNSEL
**Bruno & Bruno, L.L.P.**

/s/ Joseph M. Bruno
Joseph M. Bruno, (LSBA No. 3604)
855 Baronne Street
New Orleans, Louisiana 70133
Telephone: (504) 525-1335
Facsimile: (504) 581-1493
PLAINTIFFS LIAISON COUNSEL

**O'Donnell & Associates**

/s/ Pierce O'Donnell
Pierce O'Donnell (*pro hac vice*)
550 S. Hope St., Suite 1000
Los Angeles, California 90071
Phone: (213) 347-0290
Fax: (213) 347-0298

**The Andry Law Firm, LLC**
Jonathan B. Andry (LSBA No. 20081)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile: (504) 585-1788

**Domengeaux Wright Roy & Edwards LLC**
Bob F. Wright (LSBA No. 13691)
James P. Roy (LSBA No. 11511)
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502-3668
Telephone: (337) 233-3033
Facsimile: (337) 233-2796

**Fayard & Honeycutt**
Calvin C. Fayard, Jr. (LSBA No. 5486)
Blayne Honeycutt (LSBA No. 18264)
519 Florida Avenue, S.W.
Denham Springs, Louisiana 70726
Telephone: (225) 664-4193
Facsimile:  (225) 664-6925

**Girardi & Keese**
Thomas V. Girardi (*pro hac vice*)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 489-5330
Facsimile:  (213) 481-1554

**Ranier, Gayle & Elliot, LLC**
N. Frank Elliot III
1419 Ryan Street
Lake Charles, LA 70601
Telephone: (337) 494-7171
Facsimile: (337).494.7218

**Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, P.A.**
Clay Mitchell (*pro hac vice*)
Matt Schultz (*pro hac vice*)
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile:  (850) 436-6123

**McKernan Law Firm**
Joseph Jerry McKernan (LSBA No 10027)
John Smith (LSBA No. 23308)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile:  (225) 926-1202

**Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC**
Gerald E. Meunier  (LSBA 9471)
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile:  (504) 528-9973

**Law Office of Elwood C. Stevens, Jr., a Professional Law Corporation**
Elwood C. Stevens, Jr.  (LSBA No. 12459)
1205 Victor II Boulevard
P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile:  (985) 385-4861

**Cotchett, Pitre, Simon & McCarthy**
Joseph W. Cotchett  (*pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

**Law Office of Frank J. D'Amico, Jr. APLC**
Frank J. D'Amico, Jr. (LSBA No. 17519)
Richard M. Exnicios, Esq. (LSBA No. 25666)
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-9561
Fax: 504-525-9522

**Salas & Co., LC**
Camilo K. Salas, III (LSBA No. 11657)
650 Poydras Street, Suite 1650
New Orleans, LA  70130
Telephone: (504) 799-3080
Facsimile:  (504) 799-3085

## DECLARATION OF PIERCE O'DONNELL

I, Pierce O'Donnell declare as follows:

1.      I am an attorney licensed to practice before the Courts of the State of California.  I am a member of O'Donnell and Associates PC, co-counsel of record for Plaintiffs and have been admitted to practice before this Court pro hac vice in connection with this action.  I have personal knowledge of the matters set forth herein, except for those matters stated on information and belief, and as to those matters, I am informed and believe them to be true.  If called as a witness, I could and would testify competently to the following:

2.      Attached hereto as Exhibit 1 are true and correct copies of (a) the most recent version of a nautical navigation chart published by the United States Department of Commerce, National Oceanic and Atmospheric Administration ("NOAA"), covering Reach 2 of the Mississippi River-Gulf Outlet ("MR-GO") and (2) relevant excerpts from a NOAA publication entitled "Chart 1" which includes an description of the symbology used on NOAA navigation charts.

3.      The map and Chart 1 were obtained from an authorized seller of NOAA navigation charts, West Marine in San Diego, California. "Print on Demand" charts are available through the OceanGrafix retail network.  See http://nauticalcharts.noaa.gov/pod/Pod.htm,  The OceanGrafix website, http://www.oceangrafix.com/agent_search.php?location=US-CA, shows West Marine in San Diego as one of the "Print on Demand" outlets.

4.      The Print on Demand program enables the printing "on demand" at a remote retailer of the most up to date navigational charts based on information maintained by NOAA.

5.      The relevant pages from Chart 1 show the symbols for "embankments" and "levees," and as can be seen on the NOAA chart, there are no symbols for levees along the southern bank (Reach 2) of the MR-GO.  Instead, the map shows only the existence of "spoil areas" and "embankments."

6.      Because of the size of the map, it is being lodged separately with the Court, while the relevant pages from Chart 1 are attached hereto.

7.      Attached hereto as Exhibit 2 is a true and correct copy of the United States' Brief filed with the United States Supreme Court with respect to *United States v. James* (No. 85-434) 1985 WL 669416 (1985) obtained from Westlaw.

8.      Attached hereto as Exhibit 3 is a true and correct copy of the United States' Brief in Opposition to the Petitioner's Petition for Writ of Certiorari filed in connection with *Central Green Co. v. United States* (No. 99-859) 2000 WL 33979643 (2000) obtained from Westlaw.

I declare under penalty of perjury under the laws of the United States and the States of California and Louisiana that the foregoing is true and correct and that this declaration is executed this 8th day of May, 2007 in Los Angeles, California.


/s/ Pierce O'Donnell
PIERCE O'DONNELL

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL ARGUMENT.......................................................................................... 4

    A.    There Is No Recognized Basis Under Fifth Circuit Jurisprudence For
        An Interlocutory Appeal In This Case ............................................................ 4

    B.    Defendants Cannot Take An Interlocutory Appeal Of This Court's
        Ruling Finding A Substantial Factual Dispute Over The Existence Of
        Alleged "Levees" Bordering The Southern Bank Of The MR-GO ................. 7

    C.    Defendants' Arguments Regarding The Scope Of FCA Immunity Are
        Not Subject To Dispute Among The Federal Courts....................................... 12

    D.    Defendants Claim That The Fifth Circuit Has Not Specifically
        Revisited Its Decision In *Graci* Or Addressed the Supreme Court's
        Ruling In *Central Green* Does Not Justify An Interlocutory Appeal.............. 18

    E.    Since There Is No Difference Of Opinion Over Defendants' Radical
        Interpretation of the FCA, The Issue Of The Scope Of The
        Government's Immunity Is Not Controlling In This Case .............................. 20

    F.    The Only True Hardship Resulting From An Appeal Would Be That
        Suffered By Plaintiffs And Hundreds of Thousands Of Other New
        Orleans Residents Whose Lives Have Been So Devastatingly Ruined
        By Defendants' Negligence .......................................................................... 24

III.  CONCLUSION....................................................................................................... 27

## TABLE OF AUTHORITIES

### CASES

*Aprico v. Swan Lake*
   643 F.2d 1109 2 (5th Cir. 1981) ............................................................................................ 5

*B & B Advisory Services, LLC v. Bombardier Aerospace Corp.*
   2003 WL 22326511 at p. 2 (E.D. La. 2003) ............................................................................ 5

*Batton v. Georgia Gulf*
   261 F. Supp. 2d 575 (M.D. La. 2003) ................................................................................ 3, 12

*Central Green Co. v. United States*
   531 U.S. 425 (2001) .................................................................................................... passim

*Consub Delaware LLC v. Schahin Engenharia Limitada*
   2007 WL 473728 (S.D.N.Y. 2007) ........................................................................................ 19

*Copelco Capital, Inc. v. Gautreaux*
   1999 WL 729248 (E.D. La. 1999) .......................................................................................... 6

*De Soto Med. Center, Inc. v. Methodist Hospitals of Memphis*
   604 F.Supp. 307 (S.D. Miss. 1985) ........................................................................................ 9

*Gottfried Corp. v. Travelers Cas. and Surety Co. of Amer.*
   2004 WL 1857656 (E.D. La. 2004) ..................................................................................... 6, 9

*Graci v. United States*
   456 F.2d 20 (5th Cir. 1971) ........................................................................... 14, 18, 20, 21

*Green v. Administrators of the Tulane Ed. Fund*
   1998 WL 61041 (E.D. La. 1998) ..................................................................................... passim

*Halliburton Energy Services, Inc. v. NL Industries*
   2007 WL 268492 (S.D.Tex. 2007) ...................................................................... 2, 5, 13, 19

*In re Complaint of L.L.P. & D. Marine, Inc.*
   1998 WL 66100 (E.D. La. 1998) ............................................................................................ 4

*In re Flor*
   79 F.3d 281 (2d Cir. 1996) .................................................................................................... 19

*In re Katrina Canal Breaches Consolidated Litigation (Pertains to Insurance)*
   466 F.Supp.2d 729 (E.D. La. 2006) ................................................................................. 1, 27

*In re Katrina Canal Breaches Consolidated Litigation (Pertains to Robinson v. United States)*
   471 F.Supp.2d 684 (E.D. La. 2007) ............................................................................ passim

*In re World Trade Center Disaster Site Litigation*
   469 F.Supp.2d 134 (S.D.N.Y. 2007) ..................................................................................... 9

*James v. United States*
   478 U.S. 597 (1986) ..................................................................................................... passim

*Judicial Watch, Inc. v. National Energy Policy Development Group*
   233 F.Supp.2d 16 (D.D.C. 2002) ........................................................................................ 19

*Lamphere v. Brown University*
   553 F.2d 714 (1st Cir. 1977) .............................................................................................. 26

*Lejano v. K.S. Bandak*
   2000 Wl 33416866 (E.D. La. 2001) ..................................................................................... 6

*Link v. Mercedes-Benz of North America, Inc.*
   550 F.2d 860 (3d Cir. 1977) ............................................................................................... 10

*McLaskey v. United States*
   386 F.3d 807 (9th Cir. 1967) .............................................................................................. 13

*Morici Corp. v. United States*
   681 F.2d 645 (9th Cir. 1982) ......................................................................................... 21, 22

*Northfield Ins. Co. v. George E. Buisson Realty Co.*
   1999 WL 77721 (E.D. La. 1999) ........................................................................................ 21

*Peterson v. United States*
   367 F.2d 272 (9th Cir. 1966) ......................................................................................... 13, 22

*Sanko S.S. Co., Ltd. v. United States*
   272 F.2d 1231 (9th Cir. 2001) ............................................................................................ 22

*Shimon v. Sewerage & Water Board of New Orleans*
   2006 WL 2548057 (E.D. La. 2006) ...................................................................................... 5

*Spurlin v. Gen. Motors Corp.*
   426 F.2d, 294 (5th Cir. 1970) .............................................................................................. 9

*Steel Coils, Inc. v. M/V Lake Marion*
   2000 WL 190182 (E.D. La. 2000) ........................................................................................ 6

*Struthers Scientific & Intern. Corp. v. General Foods Corp.*
   290 F.Supp. 122 (D.Tex. 1968) .......................................................................................... 25

iii

*Taylor v. Hayes*
    418 U.S. 488 (1974)................................................................................................... 26

*Traffic Scan Network, Inc. v. Winston*
    1993 WL 390144 (E.D. La 1993) ............................................................................... 6

*United States v. Bear Marine Services*
    696 F.2d 1117 (5th Cir. 1983) ................................................................................... 24

*United States v. Dunham*
    Brunn. Coll.  C. 653, 25 F.Cas. 938 (C.C.Mass. 1857) ........................................ 26

*Valley Cattle Co. v. United States*
    258 F.Supp. 12 (D.Hawaii 1966)............................................................................. 13

*Varity Corp. v. Howe*
    516 U.S. 489(1996).................................................................................................. 25

*White v. Taylor*
    677 F.Supp. 882 (S.D. Miss 1988)............................................................................ 6

## STATUTES

33 U.S.C. § 702c .................................................................................................... passim

## OTHER AUTHORITIES

*Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88
    Harv. L. Rev. 607 (1975) ........................................................................................... 5