For Opinion See 121 S.Ct. 1005, 120 S.Ct. 1416

Supreme Court of the United States.
CENTRAL GREEN CO., Petitioner,
v.
UNITED STATES OF AMERICA.
No. 99-859.
February 18, 2000.

On Petition for a Writ of Certiorari to the United States Court of Appeals for the Ninth Circuit

Brief for the United States in Opposition
Seth P. Waxman, Solicitor General, Counsel of Record, David W. Ogden, Acting Assistant Attorney General, Robert S. Greenspan, Irene M. Solet, Attorneys, Department of Justice, Washington, D.C. 20530-0001, (202) 514-2217

**QUESTION PRESENTED**

Whether 33 U.S.C. 702c, which provides that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place," bars petitioner's tort action arising from property damage sustained as a result of allegedly negligent construction and maintenance of an irrigation canal that is part of a multi-purpose federal flood control project.

*III **TABLE OF CONTENTS**

Opinions below ... 1

Jurisdiction ... 1

Statement ... 2

Argument ... 4

Conclusion ... 17

TABLE OF AUTHORITIES

Cases:

Bailey v. United States, 35 F.3d 1118 (7th Cir. 1994) ... 14, 16

Boudreau v. United States, 53 F.3d 81 (5th Cir. 1995), cert. denied, 516 U.S. 1071 (1996) ... 12, 17

Boyd v. United States, 881 F.2d 895 (10th Cir. 1989) ... 13, 15

Cantrell v. United States, 89 F.3d 268 (6th Cir. 1996) ... 14

Dawson v. United States, 894 F.2d 70 (3d Cir. 1990) ... 12

Dewitt Bank & Trust Co. v. United States, 878 F.2d 246 (8th Cir. 1989), cert. denied, 494 U.S. 1016 (1990) ... 12, 14

E. Ritter & Co. v. Department of the Army, 874 F.2d 1236 (8th Cir. 1989) ... 13

Fisher v. United States Army Corps of Engineers, 31 F.3d 683 (8th Cir. 1994) ... 12

Fryman v. United States, 901 F.2d 79 (7th Cir.), cert. denied, 498 U.S. 920 (1990) ... 12

Hayes v. United States, 585 F.2d 701 (4th Cir. 1978) ... 3

Henderson v. United States, 965 F.2d 1488 (8th Cir. 1992) ... 13, 15

*IV Holt v. United States, 46 F.3d 1000 (10th Cir. 1995) ... 12, 15-16

Islands, Inc. v. United States Bureau of Reclamation, 64 F. Supp. 2d 966 (E.D. Cal. 1999) ... 7

Kennedy v. Texas Utils., 179 F.3d 258 (5th Cir. 1999) ... 13, 16, 17

McCarthy v. United States, 850 F.2d 558 (9th Cir. 1988), cert. denied, 489 U.S. 1052 (1989) ... 8

Mocklin v. Orleans Levee Dist., 877 F.2d 427 (5th Cir. 1989) ... 13

Morici Corp. v. United States, 681 F.2d 645 (9th Cir. 1982), aff'g 491 F. Supp. 466 (E.D. Cal. 1980) ... 3, 7, 8

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2000 WL 33979643 (U.S.)
(Cite as: 2000 WL 33979643)

Page 2

*Natural Resources Defense Council v. Houston*, 146 F.3d 1118 (9th Cir. 1998), cert. denied, 119 S. Ct. 1754(1999) ... 10-11

*Reese v. South Fla. Water Management Dist*, 59 F.3d 1128 (11th Cir. 1995) ... 12

*Thomas v. United States*, 959 F.2d 232 (4th Cir. 1992) ... 12, 16

*United States v. Iron Mountain Mines, Inc.*, 881 F. Supp. 1432 (E.D. Cal. 1995) ... 7

*United States v. James*, 478 U.S. 597 (1986) ... 3, 5, 6, 7, 11, 15, 17

*Washington v. East Columbia Basin Irrigation Dist*, 105 F.3d 517 (9th Cir.), cert. denied, 522 U.S. 948 (1997) ... 4, 5, 8, 14

*Williams v. United States*, 957 F.2d 742 (10th Cir. 1992) ... 13

*Zavadil v. United States*, 908 F.2d 334 (8th Cir. 1990), cert. denied, 498 U.S. 1108 (1991) ... 12

Statutes and regulations:

Federal Tort Claims Act, 28 U.S.C. 2671 ... 2

Flood Control Act of 1928, 33 U.S.C. 702c ... *passim*

*V Miscellaneous:

Dep't of the Interior, *Central Valley Basin*, S. Doc. No. 113, 81st Cong., 1st Sess. (1949) ... 2, 9, 10, 11

*1 OPINIONS BELOW

The opinion of the court of appeals (Pet. App. 1-9) is reported at 177 F.3d 834. The opinion of the district court (Pet. App. 10-20) is unreported.

JURISDICTION

The judgment of the court of appeals was entered on May 20, 1999. A petition for rehearing was denied on September 7, 1999. Pet. App. 21. The petition for a writ of certiorari was filed on November 19, 1999. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

*2 STATEMENT

1. Petitioner, Central Green Company, owns pistachio orchards in Madera County, California. Pet. App. 2. The Madera Canal, which is part of the Central Valley Project (CVP), a multi-purpose water project constructed by the United States and authorized by Congress for purposes including flood control, runs through petitioner's property. *Ibid.* The canal supplies water for irrigation from Millerton Lake, a reservoir created by Friant Dam on the San Joaquin River. Dep't of the Interior, *Central Valley Basin*, S. Doc. No. 113, 81st Cong., 1st Sess. 130-131 (1949). Like the Madera Canal, Millerton Lake and Friant Dam are part of the CVP. *Ibid.*

2. Petitioner brought this action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. 2671 *et seq.*, in the United States District Court for the Eastern District of California, alleging that negligent design, construction, or maintenance of the Madera Canal by the federal government resulted in leakage of water from the canal. That leakage, which in turn caused surface and subsurface flooding of petitioner's property, allegedly caused harm to petitioner's pistachio orchards and increased petitioner's farming and harvesting costs. Pet. App. 2.

The United States moved for judgment on the pleadings, arguing, *inter alia,* that the United States is immune from liability under the Flood Control Act of 1928, 33 U.S.C. 702c *et seq*. Section 702c provides in pertinent part:
No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place.

33 U.S.C. 702c.

*3 The district court granted the government's motion for judgment on the pleadings. Pet. App. 20. Rejecting petitioner's contention that Section 702c did not apply because the waters carried through the Madera Canal are used for irrigation purposes and not for flood control, the district court observed that "[t]he legislative history [of Section 702c] * * * is very clear that the scope of the immunity is very broad." *Id.* at 19. The district court concluded that petitioner "ha[d] cited nothing that allows the undermining of the scope of that immunity when a multi-purpose project is involved." *Id.* at 19-20.

3. The court of appeals affirmed. Pet. App. 1-9. The court recognized that Section 702c "confers broad immunity for claims arising from the design, operation, or management of federally authorized flood control projects." *Id.* at 2. Petitioner's "sole

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

argument" against application of the immunity here, according to the court, was that the water that damaged its property was not "flood water" within the meaning of the statute because it was held "for irrigation purposes rather than flood control." *Id.* at 3. The Ninth Circuit concluded that its own decisions, both before and after this Court's decision in *United States v. James*, 478 U.S. 597 (1986), compelled rejection of that argument. Pet. App. 5-8. The court of appeals identified what it characterized as an "apparent contradiction" in *James* itself regarding whether application of the immunity created by Section 702c depends upon the specific purpose for which water within a federal flood control project is being used at the time of an injury. Pet. App. 4 (noting this Court's favorable citation in *James* of both *Morici Corp. v. United States*, 681 F.2d 645 (9th Cir. 1982), and *Hayes v. United States*, 585 F.2d 701 (4th Cir. 1978)). *4 The court stated that, in the wake of *James*, "[t]he circuits disagree over the degree of relation the injury must have with flood control activities before immunity will attach." *Ibid.*

The court concluded, however, that its own prior decisions-which confer Section 702c immunity to injuries "not wholly unrelated" to flood control-dictated rejection of petitioner's contention that the purpose for which the water was used at the time of the injury should be viewed as controlling. Pet. App. 8. Although the court expressed uncertainty about whether its earlier decisions had interpreted *James* too broadly (*id.* at 7), the court observed that its longstanding "not wholly unrelated" test was supported both by Congress's intent to confer "broad immunity" in Section 702c and by the similar approaches adopted by several other circuits. *Id.* at 8.

ARGUMENT

Petitioner broadly asserts a conflict among the circuits on the meaning of 33 U.S.C. 702c. Although the courts of appeals have used different language in analyzing claims of immunity under this statute, no court of appeals has disagreed with the holding of the court below: that the federal government is immune from suit for property damages caused when flood waters escape from a multi-purpose project with flood-control as one of its purposes. In all relevant respects, this case is indistinguishable from *Washington v. East Columbia Basin Irrigation District*, 105 F.3d 517 (9th Cir.), cert. denied, 522 U.S. 948 (1997). In that case, as in this one, (1) the waters that caused the property damage were from an irrigation canal that was part of a multi-purpose project with flood control as one of its purposes; and (2) the plaintiff landowner could not *5 demonstrate that any other circuit would have ruled in its favor. This Court denied the petition for a writ of certiorari. 522 U.S. 948 (1997). Since that time, there has been no significant doctrinal development in the cases construing Section 702c that would warrant a grant of certiorari. The only difference between this case and *East Columbia Basin* is that the Ninth Circuit panel in this case openly expressed its disagreement with circuit precedent affording immunity. See Pet, App. 8-9, That is not a reason to grant further review.

1. The decision below correctly construes the Flood Control Act immunity provision, 33 U.S.C. 702c, in light of this Court's decision in *United States v. James*, 478 U.S. 597 (1986).

a. When Congress embarked upon a multi-decade program to construct dams and other structures for flood control in 1928, one of the issues it faced was the scope of the federal government's immunity from liability for damages resulting from its flood control activities. See *James*, 478 U.S. at 607-608. Congress limited the government's financial exposure by including in the 1928 legislation a provision that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." 33 U.S.C. 702c.

In *James*, this Court broadly construed that clear assertion of immunity to extend both to property damage and to personal injury. 478 U.S. at 605. The Court interpreted the terms "flood and flood waters" to apply to "all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control." *Ibid.* The "sweeping language" of Section 702c and the "equally broad and emphatic language" of its legislative history supported recognition of a broad *6 immunity for the United States. *Id.* at 608. Accordingly, the Court concluded, "the legislative history fully supports attributing to the unambiguous words of the statute their ordinary meaning." *Ibid.*

b. This case involves property damage caused directly by water escaping from a federal flood control project. It thus lies squarely within the plain language of Section 702c and the decision in *James*. The statute provides immunity for "any damage *from or by* floods or flood waters at any place." 33 U.S.C. 702c (emphasis added). This Court made clear in *James* that "flood[s]" and "flood waters" include "all waters contained in or carried through a federal flood control project for purposes of or related to flood control, *as well as to waters that such projects cannot control.*" 478 U.S. at 605 (emphasis added). That

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

language encompasses property damage caused by waters escaping through seepage from a canal that is part of a federal flood control project. Moreover, protection of the United States from liability for flooding of land caused by alleged construction failures of a federal flood control project was central to Congress's concern in creating an immunity for federal flood control activities. See *id.* at 606-608; see also *id.* at 617 (Stevens, J., dissenting) (arguing that the immunity under Section 702c should extend *only* to "overflow damage to land"). Nothing in this Court's decision in *James* supports petitioner's contention that an entire project, one of whose purposes is flood control, may be subdivided into parts that would not be immune from liability for damage caused by flood waters.

2. Petitioner nevertheless contends that the court of appeals' decision misreads *James* by effectively eliminating any requirement for a factual nexus between an injury and federal flood control activities to support *7 immunity under Section 702c. See Pet. 14.[FN1] That contention is incorrect: the injury complained of in this suit (property damage) is asserted to have been proximately caused by the negligent construction of an irrigation canal that performs flood control functions. The extensive Central Valley Project (CVP) has been the subject of Section 702c litigation in the Ninth Circuit and its constituent district courts on many occasions, and has produced judicial decisions in which the project's flood control function and the relationship of that function to the project as a whole have been described. See, *e.g., Morici Corp. v. United States,* 681 F.2d 645, 648 (9th Cir. 1982), aff'g 491 F. Supp. 466 (E.D. Cal. 1980); *Islands, Inc. v. United States Bureau of Reclamation,* 64 F. Supp. 2d 966, 969 (E.D. Cal. 1999); *United States v. Iron Mountain Mines, Inc.,* 881 F. Supp. 1432, 1439 (E.D. Cal. 1995). Those cases expressly rely on the integrated operation of the CVP's many components in finding immunity under Section 702c, and they give content to the court of appeals' ruling that the damage in question here is "not wholly unrelated to flood control." Pet. App. 8.

   FN1. Petitioner suggests (at 13-14) that in past filings we have drawn an "illusory" distinction between injuries traceable to a flood control project and those caused by flood control activities. The point of that distinction is that, when the government's flood control activities are not the proximate cause of the injury, courts of appeals have employed a variety of different linguistic formulas to determine whether the government enjoys immunity from suit under 33 U.S.C. 702c but those different tests have not caused different results. See note 6, *infra.*

Indeed, as long ago as *Morici,* cited favorably by this Court in *James,* 478 U.S. at 605 n.7, the Ninth Circuit and the district court described the factual nexus between the project's flood control activities and its *8 other purposes in extending the immunity to damages caused by waters escaping from an irrigation component of the CVP. As the district court in the *Morici* case recognized, "[t]he Central Valley Project is operated as an integrated whole, rather than as a number of separate, isolated parts, because water releases at any one facility must be coordinated with releases at other facilities in that river basin." *Morici v. United States,* 491 F. Supp. at 490. The analysis in *Morici* formed the basis for the Ninth Circuit's more recent decision in *Washington v. East Columbia Basin Irrigation District,* 105 F.3d 517 (9th Cir.), cert. denied, 522 U.S. 948 (1997), which involved waters escaping from an irrigation component of another multi-purpose federal water project, the Columbia Basin Project.[FN2]

   FN2. In its only published decision applying Section 702c since *James* where the damage was not caused by escaping waters-and where the nexus between the injury and flood control therefore could not be assumed-the Ninth Circuit explicitly acknowledged its reliance on the existence of such a linkage in concluding that the government was immune. The plaintiff in *McCarthy v. United States,* 850 F.2d 558 (9th Cir. 1988), cert. denied, 489 U.S. 1052 (1989), was injured in a diving accident that occurred in a lake that was part of a multi-purpose federal flood control project. In determining that Section 702c protected the government from liability, the court of appeals noted that the level of water in the lake was monitored on a daily basis to calibrate discharges for flood control purposes, and that therefore waters in the project "for purposes related to flood control were a *substantial factor* in bringing about McCarthy's injuries." 850 F.2d at 561-562 (emphasis added).

The circumstances of *Morici* are replicated here. The inherent nexus between flood control and damage caused by waters escaping from the integrated,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

multipurpose CVP is evident from a Department of the Interior report prepared shortly after Friant Dam, *9 Millerton Lake, and the Madera Canal were placed in operation. See Dep't of the Interior, *Central Valley Basin,* S. Doc. No. 113, 81st Cong., 1st Sess. (1949). The report states that levees-the primary method of flood control in California's Central Valley before construction of the CVP-would "advantageously be supplemented by the operation of multiple-purpose reservoirs *and irrigation canals*" *Id.* at 162 (emphasis added). The role of the project's various components in achieving that flood control benefit was explained as follows:

Reservoirs would be used *to store flood flows* until they could be released at rates within the capacity of the channels below, *or until they could be used to meet irrigation requirements.* Irrigation canals in some cases would be used to advantage to carry a portion of the flood flows away from the danger zones to areas where the water could be used beneficially. Such use of multiple-purpose structures for flood control is an important factor in the comprehensive plan for basin development.

*Ibid.* (emphasis added).

The report further explained that two sorts of floods occur in the Central Valley-those caused by rain and those caused by snow-melt. S. Doc. No. 113, *supra,* at 162. Both are controlled by maintaining sufficient water storage capacity in reservoirs behind dams. *Ibid.* When such storage space is used to store a rain flood, "it must be emptied as rapidly as possible" to make room for future, unpredictable rains. *Ibid.* Thus, "storage space reserved for such floods cannot be used for conservation [*i.e.,* irrigation] until after the rain-flood season." *Ibid.* The volume of snow-melt in any given year can be predicted several months in advance, *10 however, allowing operators of the CVP "to empty sufficient storage space in advance of the snow-melt run-off to prevent or reduce flood damage, with reasonable assurance that the reservoir will fill before the end of the storage season." *Ibid.* Thus, "[s]torage required for control of snow-melt run-off * * * is essentially conservation storage, *in that it is used to capture and retain water until needed for irrigation" Ibid.* (emphasis added).

The report made clear that this is precisely how Friant Dam, Millerton Lake, and the Madera Canal operate. "Both rain and snow-melt floods on the main San Joaquin River and its principal tributaries * * * cause damage on the flood plains along the rivers, and in the Sacramento-San Joaquin Delta." S. Doc. No. 113, *supra,* at 164. Levees along the river were "inadequate to control even moderate floods," but "Millerton Lake (Friant) Reservoir on the San Joaquin River * * * now offers additional protection." *Ibid.* The report estimated that "the average damage from recurrent floods [along the San Joaquin River] would be $4,215,000 annually, under conditions prior to the beginning of the operation of Millerton Lake in 1944" but that "[t]his reservoir will reduce the annual damage by $279,000." *Ibid.* That flood control benefit directly results from the diversion of the waters of the San Joaquin River into *irrigation* canals fed by Millerton Lake-including the Madera Canal, which runs through petitioner's property. See *id.* at 130 ("the run-off of San Joaquin River will be made available for diversion at Friant Dam to Friant-Kern and Madera canals"). Indeed, virtually the entire flow of the San Joaquin River is diverted into those canals. *Natural Resources Defense Council v. Houston,* 146 F.3d 1118, 1123 (9th Cir. 1998) ("[s]ince the time that the dam was completed,*11 the Friant unit has impounded the San Joaquin River water behind the Friant dam and diverted the water to surrounding irrigation districts," leaving "a dry stretch of San Joaquin riverbed" below the dam), cert. denied, 119 S. Ct. 1754 (1999).[FN3]

FN3. As the foregoing references to S. Doc. 113 demonstrate, the court of appeals was incorrect in stating that "[t]he [Madera] canal is not a flood control project and serves no flood control purpose." Pet. App. 9 (quoted in Pet. 22).

The court of appeals thus did not stray from this Court's definition of "flood waters" in *James* when it applied that definition to the water seeping onto petitioner's land from the Madera Canal Not only was that seepage caused by waters that the CVP "[could] not control," but those waters were also "contained in or carried through a federal flood control project *for purposes* of or related to *flood control" James,* 478 U.S. at 605 (emphasis added). Thus, contrary to petitioner's assertions, the court of appeals has not applied Section 702c without regard to whether a factual nexus exists between the injury in question and the government's flood control activities.

3. The decision below is entirely consistent with the decisions of the other circuits articulating, in the wake of *James,* some form of factual nexus requirement as an essential predicate to immunity under Section 702c. When the various other circuits have concluded that the particular facts before them satisfy that nexus requirement, they have held the government immune from *12 suit.[FN4] In other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 3, p. 60

cases, involving injuries more remotely related to federal flood control efforts, they have held *13 the government subject to suit.[FN5]

FN4. *Reese v. South Fla. Water Management Dist.*, 59 F.3d 1128, 1130 (11th Cir. 1995) (government immune from suit in drowning at federal flood control lake caused by opening of water control device, noting that "periodic release of water is fundamental to the operation of a flood control project"); *Boudreau v. United States*, 53 F.3d 81, 84 (5th Cir. 1995) (based on facts of case, government immune from suit where there was a "sufficient association" between injury to recreational boater during Coast Guard rescue and activities of flood control), cert. denied, 516 U.S. 1071 (1996); *Holt v. United States*, 46 F.3d 1000, 1004 (10th Cir. 1995) (government immune from suit where there was a "sufficient nexus" between car accident and mist, which was created by water released from flood control project's dam and which caused an ice slick on an adjacent road); *Fisher v. United States Army Corps of Engineers*, 31 F.3d 683, 684 (8th Cir. 1994) (government immune from suit where shallow level of water as a result of operation of flood control project was a "substantial factor" in a recreational diving accident); *Thomas v. United States*, 959 F.2d 232 (4th Cir. 1992) (Table) (government immune from suit in recreational diving accident occurring at lake which, despite its commercial uses, had flood control uses as well and which was "monitored and maintained daily by the Army for the purpose of controlling floods"); *Zavadil v. United States*, 908 F.2d 334, 336 (8th Cir. 1990) (government immune from suit where water level at Gavins Point Dam, a part of a flood control project, was a "substantial factor" in a recreational diving accident), cert. denied, 498 U.S. 1108 (1991); *Fryman v. United States*, 901 F.2d 79, 82 (7th Cir.) (government immune from suit for injuries sustained at lake created as part of a flood control project which "increase[d] the probability" of injury), cert. denied, 498 U.S. 920 (1990); *Dawson v. United States*, 894 F.2d 70 (3d Cir. 1990) (government immune from suit for recreational swimming accident caused by unsafe depth of water due in part to releases of water for flood control purposes); *Dewitt Bank & Trust Co. v. United States*, 878 F.2d 246, 247 (8th Cir. 1989) (government immune from suit where management of shallow waters at a flood control project was a "substantial factor" in causing injuries sustained in diving accident), cert. denied, 494 U.S. 1016 (1990); *Mocklin v. Orleans Levee Dist*, 877 F.2d 427 (5th Cir. 1989) (government immune from suit for drowning caused by deep water in a flotation channel that had been excavated for a flood control project).

FN5. See *Kennedy v. Texas Utils.*, 179 F.3d 258 (5th Cir. 1999) (no immunity where injury occurred on dry land due to a condition with no association to flood control); *Cantrell v. United States*, 89 F.3d 268 (6th Cir. 1996) (no immunity from claim by recreational boater injured by allegedly negligent driver of Army Corps of Engineers' boat); *Henderson v. United States*, 965 F.2d 1488 (8th Cir. 1992) (no immunity in death of fisherman where drowning was caused by release of water, at direction of private power company, from dam operated for hydroelectric power generation); *Boyd v. United States*, 881 F.2d 895 (10th Cir. 1989) (no immunity for allegedly negligent failure to warn swimmers of hazard from boats, in death of snorkeler struck by privately operated power boat at flood control lake); *E. Ritter & Co. v. Department of the Army*, 874 F.2d 1236 (8th Cir. 1989) (no immunity for erosion caused by rain waters that had not yet come in contact with flood control project); see also *Williams v. United States*, 957 F.2d 742 (10th Cir. 1992) (concluding, on basis of record evidence and language of authorizing statute, that particular project was not a flood control project).

Petitioner is incorrect (Pet, 18-23) that the tests articulated by other courts would produce a different result on the facts here.[FN6] In *Cantrell*, for example, a fisherman *14 sued the government for an injury from a crash by an Army Corps of Engineers boat that was transporting him after his own boat malfunctioned. In denying the government's assertion of Section 702c immunity, the court of appeals ruled that there must be a nexus between the allegedly tortious government conduct and flood control. See *Cantrell v. United States*, 89 F.3d 268, 273 (6th Cir. 1996). Contrary to petitioner's suggestion (at 18-19), that test is satisfied in this case. Petitioner's complaint

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 3, p. 61

alleged that the United States had negligently "designed," "maintained," and "operated" a canal that is part of an integrated multi-purpose flood control project, and that the government's negligence caused waters escaping from that project to damage petitioner's property. C.A. E.R. 4-8 (Compl. ¶ ¶ 16-34). Thus, even if Section 702c in all circumstances required a nexus between the allegedly tortious act and flood control activities, that nexus requirement would be satisfied here. See pp. 8-11, *supra*.

FN6. Although more tentatively than petitioner would have it (see *id.* at 18), the court of appeals similarly observed that the outcome "would probably" be different in certain other circuits. Pet. App. 9. But petitioner and the court below disagree about which ones. Compare Pet, 18 and Pet. App. 9. As we have previously noted in other briefs in opposition to certiorari, the courts of appeals employ slightly different linguistic formulations to determine whether the requisite factual nexus between the injury and the government's flood control project or activities has been established. See, *e.g.*, Br. in Opp. at 9 n.5, *Paulk v. United States*, No. 99-390 (filed Nov. 3, 1999). But here, as in those cases, the same result would have been reached under any of the prevailing approaches. Thus, the property damage injury here was "not wholly unrelated" to a project with flood control as one of its purposes. Pet. App. 8; *Washington v. East Columbia Basin Irrigation Dist.*, 105 F.3d 517, 520 (9th Cir.), cert. denied, 522 U.S. 948 (1997). Likewise, "governmental control of flood waters was a substantial factor in causing" petitioner's property damage, since releases of the flood control waters from Millerton Lake supplied the Madera Canal and those releases resulted from the capacity of the Friant Dam to retain flood waters. *DeWitt Bank & Trust Co. v. United States*, 878 F.2d 246, 247 (8th Cir. 1989), cert. denied, 494 U.S. 1016 (1990). And the injury was certainly "more likely" because of the "activities or characteristics" of a flood control project, both in terms of the volume of flood waters supplied to the Madera Canal as well as its design and construction as a means of controlling such waters for conservation/irrigation purposes. See *Bailey v. United States*, 35 F.3d 1118, 1124 (7th Cir. 1994).

*15 Likewise, the test articulated by the Eighth Circuit is met here, contrary to petitioner's suggestion (at 19). In *Henderson*, a fisherman was swept away when water was released from a dam operated by the Army Corps of Engineers, which had contracted with a private power company that requested releases of waters at particular times to generate hydroelectric power. 965 F.2d at 1490-1491. But unlike this case, *Henderson* did not involve waters escaping from a multi-purpose project-a situation expressly covered by *James*, which defined "flood waters" to include "waters that such projects cannot control." 478 U.S. at 605. Rather, *Henderson* concerned the *controlled release* of waters for hydro-electric power generation. Thus, the Eighth Circuit's decision in *Henderson* was a straightforward application of the statement in *James* that the waters be "flood waters" that a flood control project "cannot control." *Ibid*. No such waters were at issue in *Henderson*, but they are at issue here.

Nor is it clear, as petitioner asserts (Pet. 19), that the Tenth Circuit would reach a different result on the facts here. That circuit declined to hold the government immune from suit in *Boyd* because it found an insufficient factual nexus between federal flood control efforts and a swimmer's death caused by a privately operated power boat in a federal flood control lake. See 881 F.2d at 900. As in *Henderson*, the theory of liability asserted against the government was a negligent failure to warn. That theory had no relation to the government's flood control activities. By contrast, the construction of the Madera Canal and its operation as an irrigation canal are directly related to the flood control purpose of the Central Valley Project. Thus, *Boyd* provides no reason to think that the decision below would have come out differently in the Tenth Circuit. See also *16*Holt, 46 F.3d at 1005* (Tenth Circuit holding government immune where injury was caused by flood control activities).

Finally, citing the pre-*James* decision in *Hayes*, petitioner asserts (at 21) that the outcome on the facts here would be different in the Fourth Circuit. In an unpublished decision issued after *James*, however, that circuit favorably cited not only the Ninth Circuit's *McCarthy* decision but numerous other post-*James* decisions applying a factual nexus test. See *Thomas v. United States*, 959 F.2d 232 (4th Cir. 1992) (Table), 1992 WL 67789, at *1. The court held there that Section 702c immunized the government from liability for a diving injury in a lake operated by the Army Corps of Engineers because the lake's multiple purposes included flood control and it was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"constantly * * * monitored and maintained daily by the Army for the purpose of controlling floods."[FN7]

> FN7. The court of appeals suggested a different list of circuits in which the outcome would "probably" be different on the facts here, omitting the Sixth Circuit but including the Seventh. See Pet. App. 9. Although petitioner acknowledges that "the issue is not settled in the Seventh Circuit" (Pet. 22), to the extent that that court "focused its inquiry" (*ibid.*) on whether "flood control activities increase[d] the probability of the plaintiffs injury" (*Bailey v. United States*, 35 F.3d 1118, 1124 (7th Cir. 1994)), that test is met here. The flood control benefit of impounding the waters of the San Joaquin River at Friant Dam is directly achieved by diverting water into the Madera Canal. See pp. 8-11, *supra*.
>
> Likewise, petitioner is incorrect to assert that the government "likely would not be accorded immunity" in the Fifth Circuit. Pet. 22 (citing *Kennedy v. Texas Utils.*, 179 F.3d 258 (1999)). That case is readily distinguishable. As the court in *Kennedy* concluded, "[w]hile the term flood waters may be ambiguous and thus subject to differing interpretations, the ordinary and common meaning * * * does not, in our view, extend to an injury occurring on land apart from water and as the result of a use of the land itself." 179 F.3d at 261. The court there also cast no doubt on the continuing validity of *Boudreau*, in which the Fifth Circuit had upheld the government's immunity from a suit alleging negligence when the Coast Guard Auxiliary attempted to tow a stranded recreational vessel on a flood control lake because such actions constituted "the management of a flood control project." 53 F.3d at 85 (quoting *James*, 478 U.S. at 610).

*17 CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

SETH P. WAXMAN

*Solicitor General*

DAVID W. OGDEN

*Acting Assistant Attorney General*

ROBERT S. GREENSPAN

IRENE M. SOLET

*Attorneys*

FEBRUARY 2000

CENTRAL GREEN CO., Petitioner, v. UNITED STATES OF AMERICA.
2000 WL 33979643 (U.S.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.