UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES     CIVIL ACTION
    CONSOLIDATED LITIGATION

            NO. 05-4182

            SECTION "K" (2)

FILED IN:    05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073, 06-6314,
      05-6324, 05-6327, 05-6359, 06-0020, 06-1885, 06-0225, 06-0886,
      06-11208, 06-2278, 06-2287, 06-2346, 06-062545, 06-3529, 06-4065,
      06-4389, 06-4634, 06-4931, 06-5032, 06-5042, 06-5159, 06-5163,
      06-5367, 06-5471, 06-5771, 06-5786, 06-5937, 06-7682, 07-0206,
      07-0647, 07-0993, 07-1284, 07-1286, 07-1288, 07-1289, 07-1349

PERTAINS TO:   LEVEE

FILED: _____       _____
                DEPUTY CLERK

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE DISMISSAL OF CERTAIN DEFENDANTS BASED ON THE LOUISIANA LAW OF PEREMPTION

**MAY IT PLEASE THE COURT:**

### FACTUAL BACKGROUND

Plaintiffs have brought claims against various defendants pursuant to the substantive provisions of the general maritime law of the United States and any law supplemental thereto.  In paragraph 9 of the Superseding Master Consolidated Class Action Complaint, plaintiffs specifically invoke subject–matter jurisdiction under "the Admiralty/Maritime Law of the United States, pursuant to 28 U.S.C. § 1333(1). . .."

Certain defendants, specifically contractors and engineers involved in activity concerning the 17th St. Canal, have suggested that the casualty underlying this lawsuit is subject to substantive Louisiana law, thereby permitting them to invoke Louisiana statutes providing peremptive periods within which plaintiffs were to assert causes of action against them.  These defendants, including Boh Brothers, Eustis Engineering Company, and Modjeski and Masters, *inter alia*,  (hereinafter referred to as the "construction and engineering defendants"), previously moved for Rule 12(b)(6) dismissal and summary judgment on the affirmative defense of peremption.  Dismissals were granted on this basis in certain cases, prior to the filing of the Superceding Master Complaint.[1]

In granting the defendants' motions, the Court held that La. Rev. Stat.  9:5607 preempted plaintiffs' claims because the work undertaken by said defendants,  including work in the 17th St. Canal, was performed at least five years prior to the suits against them having been filed.  In ruling, the court did not specifically consider the effect of maritime jurisdiction because certain plaintiffs had not plead it with respect to these defendants, while others had done so in a "conclusory, nonspecific" manner, absent any allegations "that would establish maritime jurisdiction." *See, e.g.,* Doc. 2148.

The Superseding Master Consolidated Class Action Complaint that was filed pursuant to court order on March 15, 2007 specifically addresses, in great factual detail, the basis for maritime jurisdiction with respect to various defendants' tortious activities in connection with work performed on the 17th St. Canal.  Beginning at paragraph 17, plaintiffs set forth the history of the construction

---

[1]For example, on December 8, 2006, the Court issued such a ruling in certain complaints. However, other complaints were in existence on December 8, 2006, which specifically involved maritime jurisdiction, but whose allegations were not yet addressed by the court with respect to jurisdiction. *See*, *e.g.*, Civil Action 06-6642, *Pontchartrain Baptist Church, et al. v. The Sewerage and Water Board of New Orleans, et al.  See, e.g.*, Document 3170 for discussion of maritime jurisdiction in that case.

of the Canal.  Beginning at paragraph 25, the plaintiffs detail the dredging project undertaken by defendants at issue in conjunction with applications approved by the Corps of Engineers.  These defendants were actively involved in the dredging of the Canal.  In particular, Eustis issued a report with respect to dredging.  *See* paragraph 45.  The Master Complaint  (paragraphs 25 through 72) addresses the construction of the Canal.  Paragraphs 73 and 74 address postconstruction events involving the Canal.  In particular, plaintiffs allege that dredging of the Canal (pursuant to a Corps of Engineers permit issued under the authority of the Rivers and Harbors Act) was negligently undertaken.  *See* paragraph 227 of Complaint (document 3420).  Accordingly, a factual basis for maritime jurisdiction not only exists, but has been plead, in these consolidated cases.

Inasmuch as these defendants' tortious conduct arises out of their "dredging" activities on a navigable waterway, i.e., the 17th St. Canal, their activities are inherently maritime in nature.  Their conduct also resulted in a potential disruption of commercial activity.  Accordingly, maritime jurisdiction exists, and the plaintiffs' claims against these particular defendants fall within this court's maritime jurisdiction.  Under well–established constitutional principles, defendants' state law defenses cannot subvert claims that are maritime, and, thus, federal, in nature.  In keeping with this, any limitations period pertinent to plaintiffs' claims must perforce be dictated by maritime, not Louisiana, law.

## LAW AND ARGUMENT

### PLAINTIFFS' CLAIM ARISE UNDER THE COURT'S ADMIRALTY OR MARITIME JURISDICTION.

The defendants in question overlook the fact that the tort in the case at bar involves a navigable waterway.  Whether a waterway is navigable is a question of fact that should be addressed

pursuant to the test established by *The Daniel Ball*, 77 U.S. 557, 19 L.Ed. 999 (1870).  In *The Daniel Ball*, the United States Supreme Court stated that:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact.  And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

*Id.* at 563.

The threshold requirement under this test is that there be an interstate nexus.  Thus, if a waterbody is available as a highway for commerce between ports and places in different states, it is navigable for purposes of maritime jurisdiction.  A completely intrastate waterbody can also be considered navigable, however, if it can be considered part of an interstate waterway system.  *In re Boyer*, 109 U.S. 629, 3 S.Ct. 434, 27 L. Ed. 1056 (1884).  In *Sanders v. Placid Oil Co.*, 861 F.2d 1374 (5th Cir. 1988), the court held that navigable waters of the United States are those waters capable, in fact capable of navigation in interstate travel or commerce, and that distinctions between natural and man-made bodies of water are immaterial. Similarly, in *Weatherford v. U.S.*, 957 F. Supp 830 (M.D. La. 1997), the court held that water bodies are navigable for purposes of admiralty jurisdiction when, in their ordinary condition, they can serve as highways for commerce over which trade and travel are or may be conducted in customary modes.

"Navigability-in-fact" is the method of determining the navigability of a waterway.  For a water body to be navigable-in-fact, it must be capable of sustaining customary modes of trade and

travel on water.  In order to meet this test, proof of present or potential commercial activity is required.  As well, under the "indelible navigability" doctrine, if a body of water has ever been part of the navigable waters of the United States, it always remains so, even if any and all navigation has ceased to exist on the waterway. *United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 61 S.Ct. 291, 85 L. Ed. 243 (1940); *see also Finneseth v. Carter*, 712 F.2d 1041 (6th Cir. 1983) (an interstate lake not presently being used as a highway for commerce falls, nevertheless, within the court's maritime jurisdiction because it is susceptible of future use).

In the case at bar, the 17th St. Canal clearly constitutes a navigable waterway within the court's maritime jurisdiction.  If one travels from the Canal to Lake Pontchartrain, one is on a commercial highway that flows directly to the Gulf of Mexico.  The presence of United States Coast Guard aids to navigation demonstrate that the Canal is a navigable waterway.  Inland navigation is governed by the Inland Navigation Rules, 33 U.S.C. § § 2001-2073.  In fact, a United States Coast Guard's station is located adjacent to the mouth of the Canal.  Therefore, the casualty in the case at bar clearly involved navigable waters.

The "navigable waters of the United States" are defined in 33 C.F.R. Parts 329.1 and 329.4 as traditional waters where permits are required for work or structures pursuant to sections 9 and 10 of the River and Harbor Act of 1899.  They are also defined as "the waters of the United States, including territorial seas."  33 U.S.C. § 1362(7).  This would include the 17th St. Canal, which traditionally has hosted, and continues to host, a commercial fishing fleet.  *See* Exhibit A, attached hereto (a post-Katrina photograph depicting commercial shrimp boat in the 17th St. Canal, appearing with an article on the internet at 17th Street Canal, http://en.wikipedia.org/w/index.php?title=17th_Street_Canal&oldid=128852384).

- 5 -

"Waters of the United States" are defined in 33 C.F.R. 323.2(a). These are the waters where permits are required for the discharge of dredged or fill material pursuant to section 404 of the Federal Water Pollution Control Act, Amendments of 1972. *See Buttery v. United States*, 573 F. Supp. 283 (E.D. La. 1983). That such "waters" are represented by the 17th St. Canal is evidenced by the fact that the Corps of Engineers issued a June 1984 permit to authorize dredging. *See* Exhibit B, attached hereto. The Corps' "Statement of Findings" with respect to the permit acknowledges that the dredging work proposed is to occur "in navigable waters of the United States." See Exh. B, at p. 8.

The Corps' own definition of navigability generally tracks the judicial definition. 33 CFR Part 329.4 provides: "Navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce. A determination of navigability, once made, applies laterally over the entire surface of the water body, and is not extinguished by later actions or events which impede or destroy navigable capacity." Thus, even though the actual failure of the seawall on the 17th St. Canal occurred below the Old Hammond Highway Bridge, the entirety of the Canal is deemed navigable pursuant to federal regulations.[2] *See, e.g., Complaint of Paradise Holdings, Inc.*, 795 F.2d 756, 761 (9 Cir.), *cert. denied*, 479 U.S. 1008 (1986) (navigability of tidal waters is assessed via ebb and flow).

---

[2] "Navigability" as it relates to admiralty jurisdiction can differ from how it relates to Congress' regulatory authority. *Hardwick v. Pro-Line Boats, Inc.*, 895 F. Supp. 145, 147 (S.D. Tex. 1995). In the case at bar, however, the regulatory definitions of navigability comport with the jurisprudential test for jurisdiction as related to the 17th St. Canal.

Defendants might contend that because an element of the wrong occurred on land, this court does not possess admiralty jurisdiction. The historic test for admiralty jurisdiction was based upon locality alone and thus, the essential issue was whether the incident occurred on navigable waters. *The Plymouth*, 70 U.S. 20, 18 L.Ed. 125 (1865). This test for jurisdiction was modified significantly in *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed. 2d 454 (1972), which involved an aircraft which crashed into the navigable waters of Lake Erie. In *Executive Jet*, the Supreme Court held that admiralty jurisdiction was lacking because the particular wrong did not bear a significant relationship to traditional notions of maritime activity. The Court found that for admiralty jurisdiction to exist, the following two-part test must be satisfied:

(1)     There must be a maritime locality, whereby the injury must occur on navigable waters; and

(2)     There must be a maritime nexus, in that there is a significant relationship between the wrong and traditional maritime activities involving navigation or commerce on navigable waters.

*Id.* at 268.

In *Foremost Insurance Company v. Richardson,* 457 U.S. 668, 102 S. Ct. 2654, 73 L.Ed. 2d 300 (1982), the Court considered a factual scenario in which two pleasure crafts collided on the Amite River, a navigable waterway within the state of Louisiana. The United States Supreme Court rejected the notion that traditional maritime activity necessarily must involve commercial activity. Instead, the Court required merely a showing of potential disruption to commercial activity. The Court reasoned that

The potential disruptive impact of a collision between boats on navigable waters . . compels the conclusion that this collision between two pleasure boats on navigable waters has a significant relationship with maritime commerce.

*Id.* at 675.

Thus, the *Foremost* Court established that for admiralty tort jurisdiction to exist, the following criteria must exist:

1.   The requirement that the wrong have a significant relationship to traditional maritime activity is not limited to aviation contacts;

2.   The maritime activity need not be an exclusively commercial one so long as it has a potential impact on maritime commerce; and

3.   The negligent operation of a vessel on navigable waters – including a pleasure boat – has a significant nexus to traditional maritime activity and thus sustains admiralty jurisdiction.

Therefore, the case at bar falls within admiralty jurisdiction in keeping with the dictates of *Foremost*, for the dredging performed by defendants certainly occurred on a navigable waterway, involved activities negligently conducted from barges or vessels that performed the dredging, and had a potential impact on maritime commerce.  The attached permit effectively acknowledges the latter point as well, noting that dredging in the Canal "will" have an impact, for example, on "fish and wildlife" in the (commercially-fished) waters of Lake Pontchartrain. *See* Exh. B, at p. 11.

In *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed. 2d 292 (1990), a case arising out of a fire that began in the washer/dryer unit of a private yacht moored in a marina, the Supreme Court extended the reach of admiralty jurisdiction. The Court reasoned that such an incident had a potentially disruptive impact upon maritime commerce and thus found there to be admiralty jurisdiction over the action.  Therefore, when determining whether a maritime nexus exists, the court must consider the possible impact of the event upon maritime shipping and commerce, the desirability of a uniform national rule to apply to such matters, and the need for admiralty expertise in the trial and decision of the case.  Maritime jurisdiction exists even though maritime commerce is not

disturbed as long as a "potential hazard to maritime commerce exists." *Sisson*, 497 U.S. at 362.  In the case at bar, not only was maritime commerce potentially impacted at the time of the dredging (*see, supra*), but the court can and should  take judicial notice of the actual disruption of maritime commerce in the wake of the 17th St. Canal's failure: the City of New Orleans was mandatorily evacuated for the first time in history, affecting the port, ship suppliers, stevedores, and other commercial entities.

Hence, plaintiffs' claims against the defendants in question fall within admiralty jurisdiction. These claims result from damages which plaintiffs will relate to inherently maritime activity (dredging) occurring in a navigable waterway.  The instrumentalities involved were maritime in nature: barges utilized in dredging.  The causal connexity between the defendants' dredging and the eventual casualty are classically maritime in nature.  Maritime commerce was both potentially and actually affected, not only by the dredging itself but by the flooding which allegedly was due, in part, to the dredging.

In *Grubart v. Great Lakes Dredge and Dock Co.*, 513 U.S. 527, 115 S. Ct. 1043, 130 L. Ed. 2d 1024 (1995), the United States Supreme Court rejected an effort to limit admiralty jurisdiction over land-based injuries caused by a vessel operating on navigable waters.  *Grubart* involved a claim arising from the pile-driving activity of a barge operating on the Chicago River. In upholding the court's admiralty jurisdiction, the Court reaffirmed the validity of the *Sisson* test, i.e., whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.  As in the case at bar, *Grubart* involved damages on land caused by the activities of a barge on a navigable waterway.  In the case at bar, since the ramifications of defendants' tortious conduct occurred on navigable water, the tort is considered to have occurred

on navigable water.  *See Wiedemann & Fransen, A.P.L.C. v. Hollywood Marine, Inc.*, 811 F.2d 864 (5th Cir. 1987); *Taylor v. Kennedy Engine, Inc.*, 861 F.2d 127 (5th Cir. 1988).

The essence of the complaint against the defendants at issue, as well as against other defendants, is that negligent dredging created a deeper channel that allowed seepage of water to weaken the structural walls of the 17th St. Canal, thereby causing the failure that led to catastrophic flooding in New Orleans.  In this respect, the plaintiffs' allegations are quite similar to those in *Grubart, Inc. v. Great Lakes Dredge and Dock Co.*, 513 U.S. 527 (1995).  In *Grubart*, the complaint alleged the negligent weakening of a tunnel structure located underneath the bed of the Chicago River, into which the defendant had contracted to install pilings.  *Id.* at 529.  The Supreme Court determined that the connection to maritime activity was more than sufficient because the incident resulted from "damage by a vessel in navigable water to an underwater structure."  *Id.* at 539.  In turn, "the general character of the activity was maritime in nature because the work giving rise to the claim was 'repair or maintenance work on a navigable waterway performed from a vessel.'" *Texaco Exploration and Production, Inc. v. AmClyde Engineered Products Co., Inc.*, 448 F. 3d 760, 771 (*quoting Grubart*, 513 U.S. at 540).  Thus, the activity alleged to be maritime in nature at the case at bar–dredging–was the very activity that the United States Supreme Court found maritime in nature in *Grubart*.

As the Fifth Circuit has held in *Scarborough v. Clemco Industries*, 391 F.3d 660 (5 Cir. 2004), to invoke federal admiralty jurisdiction, the activity must be of a sort with a potential to disrupt maritime commerce, and the general character of the activity giving rise to the incident should bear a substantial relationship to a particularly maritime activity.  *Id.* at 664.  Furthermore, as the *Scarborough* court maintains, *Grubart* requires that "as long as one of the putative tortfeasors was

engaged in traditional maritime activity, the allegedly wrongful activity will 'involve' such traditional maritime activity and will meet the second nexus prong." *Id*. at 665 (*quoting Grubart*, 513 U.S. at 541).

The Supreme Court in *Grubart* also noted, with respect to satisfaction of maritime jurisdiction, that "[t]here is no need or justification for posing an additional jurisdictional requirement that the damage done must be close in time and space to the activity that caused it. A nonremoteness requirement is not supported by the Extension of Admiralty Jurisdiction Acts' language, and the phrase 'caused by' used in the Act indicated that the proper standard is proximate cause." *Grubart*, 513 U.S. at 528 (*quoting Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 210 (1963)).

Numerous courts have found dredging to be a particularly maritime activity. In *Lakes of Gum Cove Hunting and Fishing, L.L.C. v. Weeks Marine, Inc.*, 183 F. Supp. 2d 537 (W. D. La. 2001), damage was alleged to have resulted from dredging of the Calcasieu River Ship Canal and with respect to how the dredge material was disposed. The plaintiff claimed that dredged material contained toxic substances and was deposited on its property without its consent. Maritime jurisdiction was invoked. The court noted that as a general rule in the Fifth Circuit "the impact of torts must 'take effect' on water to satisfy the location test." *Egorov Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancy*, 183 F.3d 453, 456 (5 Cir. 1999). As the court noted, however, "an exception to this general rule is provided by the Admiralty Extension Act, 46 U.S.C. 740. According to this statute, "[a]ny injury to property consummated on land when caused by vessel on navigable waters is within admiralty jurisdiction." 182 F. Supp at 543. Accord, *Complaint of Ingram Barge Co.*, 435 F. Supp. 2d 534 (E.D. La. 2006). The *Lakes of Gum Cove* court held that the activity of

- 11 -

the dredging engineer satisfied the test for admiralty jurisdiction, finding that its activity was analogous to the circumstances in *Grubart*, which also involved dredging. *Id.* at 544.

In fact, this same legal principle has been recently validated by another section of this court in Hurricane Katrina–related litigation.   In *In re Ingram Barge Company*, 05-4419 (E.D. La. 3/14/2007), the lawsuit claimed damages for injuries to persons and property as a result of flooding of the Industrial Canal, the Mississippi River Gulf Outlet, and the Gulf Intercoastal Waterway during Hurricane Katrina.   Among the defendants was L & A, the owner of a terminal in the Industrial Canal which housed a barge owned by Ingram, that was moored and secured, but which broke loose as Katrina made landfall.  Judge Ginger Berrigan posited that the Admiralty Extension Act extends to "all cases of damages . . . to property caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." *Id*. at 3; 46 U.S.C. § 740.   In *In re Ingram Barge*, L & A claimed that negligent dredging of certain waterways, as activities separate from the government's maintenance of the levees and other land based structures, was a cause of damage.   The court looked to *Grubart* to determine whether the general character of the activity giving rise to the incident bore a substantial relationship to traditional maritime activity.   *Id*. at 5.   In doing so, the court held that "[b]y its very nature, dredging seems to affect maritime commerce as a key motivation for dredging is to keep waterways passable for commercial and other vessels." *Id.*  The court noted that the United States, as a defendant, did not seriously contest whether dredging affects maritime commerce.   Distinguishing the construction and maintenance of land–based structures, from the degree to which dredging might impact or undermine land based structures, the court held that dredging, as an activity, bore a substantial relationship to traditional maritime activity.   The court relied upon *Grubart*, 513 U.S. at 540, which involved "a dredge on navigable waters," and *Southern*

- 12 -

*Natural Gas Company v. Pontchartrain Materials, Inc.*, 711 F.2d 1251 (5 Cir. 1983), which found

the Corps liable under the Suits in Admiralty Act for failing to warn dredging vessels of certain

pipelines or for failing to prohibit dredging in the area of the pipelines.  The court thus found that a

claim alleging damage as a result of the dredging "sounds in admiralty."  *In re Ingram Barge*, 05-

4419 at 5.

### MARITIME LAW PREEMPTS STATE LAW THAT EITHER CONFLICTS WITH MARITIME LAW OR INTERFERES WITH MARITIME PRINCIPLES.

The defendants claim that La. Rev. Stat. 9:5607 perempts plaintiffs' claims.  Since maritime

torts are governed by the federal general maritime law, however, Louisiana state law is preempted.

Article VI of the United States Constitution, the Supremacy Clause provides that the laws of the

United States "shall be the supreme law of the land; . . . anything in the Constitution or laws of any

state to the contrary notwithstanding."  *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114,

2128, 68 L.Ed. 2d 576 (1981).  Similarly, the United States Supreme Court in *Boggs v. Boggs*, 520

U.S. 833, 117 S.Ct. 1754, 138 L.Ed. 2d 45 (1997), held that:

> Conventional conflict pre-emption principles require pre-emption "where compliance
> with both federal and state regulations is a physical impossibility,. . . or where state
> law stands as an obstacle to the accomplishment and execution of the full purpose and
> objectives of Congress."

*Id.* at 844, 117 S.Ct. At 1762 (quoting *Gade v. National Solid Wastes Management Assn.*, 505 U.S.

88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed. 2d 73 (1992)).  Stated otherwise, when Congress legislates

within the scope of its constitutionally granted powers, federal legislation displaces state law.

*Wardair Canada, Inc. v. Florida Department of Revenue*, 477 U.S. 1, 106 S.Ct. 2369, 91 L.Ed. 2d

1 (1986).  If Congress does not entirely displace state regulation over the matter in question, state

law is still preempted to the extent that it actually conflicts with federal law.  *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed. 2d 443 (1984).

There are two ways in which federal preemption of a state's law occurs:

1.      A provision of the state law may be incompatible with a federal statute such that compliance with both is a physical impossibility, or

2.      Even if compliance with both is not impossible, state law is nonetheless preempted if its application would disturb, interfere with, or seriously compromise the purposes of the federal statutory scheme.

*Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n*, 461 U.S. 190, 203-204, 103 S.Ct. 1713, 1721-22, 75 L.Ed. 2d 752 (1983).

In *Lambert v. Babcock & Wilcox, Co.*, 70 F. Supp. 2d 877 (S.D. Ind. 1999), the court held that a state's statute of repose was inapplicable because it conflicted with the maritime law's statute of limitations in 46 U.S.C. § 763a.  The statute of repose in *Lambert*–like La. Rev. Stat. 9:5607 in the case at bar–conflicted with the maritime law's limitations period.[3]

In *In re Amtrak "Sunset LTD" Train Crash*, 121 F.3d 1421 (11th Cir. 1997), the court held, in an allision case, that federal law preempted contravening state law.  In *Amtrak*, a barge struck a bridge support, eventually causing a train to derail into the water.  *Id.* at 1422.  The plaintiffs sought to invoke Alabama's wrongful death law instead of federal maritime law.  *Id.* at 1423.  After balancing the goals of the state's law against the effect on traditional maritime principles, the court denied the applicability of state law.  *Id.* at 1427.  The court allowed that the protection of Alabama's citizens and allowing recovery from wrongful death are significant goals.  *Id.* at 1426.  They were

---

[3] "A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time."  *Servicios–Expoarma, C.A. v. Indus. Maritime Carriers, Inc.*, 135 F.3d 984, 989 (5 Cir. 1998).  A statute of repose abolishes a cause of action after a period of time even if the cause of action has not yet accrued.

insufficient, however, to overcome federal maritime concerns. *Id.* To allow Alabama's law to prevail would improperly interfere with standards already provided by admiralty law. *Id.* When an admiralty principle is threatened, federal law governs.

Another recent case illustrates this legal principle. In *Green v. Vermilion Corp.*, 144 F.3d 332 (5th Cir. 1998), *cert. denied*, 143 L. Ed. 2d 349 (1999), the Vermilion Corp. employed Green to work at a "duck camp" that it operated pursuant to a contract with a private club. This camp was located on marshland near a private canal which came off a bayou. Green worked as both a cook and a watchman at the camp, and he performed general maintenance on it. He traveled to the camp via boat, and he also occasionally assisted in mooring and unloading supply boats that called at the camp.

A fellow Vermilion employee, who was operating a vessel on waterways next to the camp, radioed Green and asked him to assist in tying up the vessel and in unloading supplies and equipment from it. While he was mooring the vessel, Green boarded it, and he slipped and fell on the deck, injuring his neck and back. He filed suit against the corporation that operated the camp, and he asserted claims under the Longshore and Harbor Worker's Compensation Act and under the general maritime law. A Motion for Summary Judgment was filed, and, in part, the district court dismissed several of Green's claims on the basis that the Louisiana Worker's Compensation Act provided his exclusive remedy. Green appealed. The court determined that the first step in its analysis was to determine whether admiralty jurisdiction existed. *Id.* at 336. The court concluded that the situs test for admiralty jurisdiction was met because Green was injured while on navigable waters. *Id.* (citing *Kelly v. Smith*, 485 F. 2d 520, 525 (5th Cir. 1973), *cert. denied*, 416 U.S. 969 (1974)).

Assessing the factual circumstances before it, the court determined that Green was injured while engaged in the traditional maritime activity of mooring a vessel. Similarly, the plaintiffs in the

case at bar suffered injury as a result of dredging, a traditional maritime activity.  The *Green* court held that the vessel was routinely engaged on navigable waters, and that the cause of Green's injury was vessel-related.  Accordingly a sufficient "nexus to maritime activity for us to assert admiralty jurisdiction over this case" existed.  *Id.* (citing *King v. Universal Electric Construction*, 799 F. 2d 1073, 1075 (5ᵗʰ Cir. 1986); *Kelly v. Smith*, 485 F. 2d at 526.

As in the case at bar, the issue before the *Green* court was whether state law could operate to "deprive a party of a cause of action afforded by federal maritime law."  *Green*, 144 F.3d at 336. The court held that "an action for negligence has long been a vestige of general maritime law; subjecting it to the ebbs and flows of state legislation would disrupt the essential features of admiralty law."  *Id.* at 341.  Accordingly, the court held that "the exclusive remedy provision of the Louisiana workers' compensation act does not preclude Green from asserting his general maritime negligence claim against Vermilion for the non-fatal injuries sustained during the course of his employment while upon navigable waters."  *Id.*  The same is true in the case at bar; a state statute that would provide a defendant with prospective immunity for a tort that initiates on navigable waters cannot preempt a federal maritime right of action.

In *Young v. Players Lake Charles, L.L.C.,* 47 F. Supp. 2d 832 (S.D. Tex. 1999), the court was confronted with whether Louisiana's statutory antidram-shop law could preclude a remedy asserted under maritime law.  In *Young*, several residents of Texas were traveling on  I-10 in Louisiana when they were struck by a vehicle driven by a man who had become legally intoxicated at the riverboat casino in Lake Charles, where he had been gambling.  Evidence revealed that he had received several "comps" from the casino, some of which were used to purchase drinks.  The collision resulted only a short time after he had left the boat.  Plaintiff contended that the defendant casino was

negligent because it had continued to serve a person that it knew or should have known was intoxicated.

The first issue before the court in *Young* was whether admiralty jurisdiction existed.  Although the existence of jurisdiction apparently was not disputed by the parties before the court, the court, nonetheless, applied the traditional two-pronged test of *Grubart v. Great Lakes Dredge & Dock Company*, 513 U.S. 527, 534 (1995).  The *Young* court found that it was indisputable that the negligent conduct–serving excessive alcohol aboard the vessel–occurred on navigable waters.  The court also found that a substantial relationship with traditional maritime activity existed because the casino vessel regularly transported passengers over navigable waters.

Defendants contended, however, that substantive Louisiana state law as opposed to maritime law applied.  The reason for this was manifest; Louisiana has an antidram-shop law, which essentially absolves a server of alcohol from liability caused by an intoxicated person.  The court rejected this argument, finding that the general maritime law had adopted fundamental principles of negligence law.  In short, did defendant have a duty towards plaintiffs, was that duty breached, and was there a causal connection between the breach of duty and the plaintiff's injury? *Id*. at 837.  Accordingly, the court held that federal maritime law applied.

In the case at bar, federal law similarly preempts state law.  In fact, the presumption is that federal law preempts state law, and the burden is on the party seeking the application of state law to demonstrate otherwise.  *Verdin v. Louisiana Land and Exploration Co.*, 96-1815 (La. App. 4 Cir. 3/12/97); 693 So. 2d 162.  When a state statute conflicts with or frustrates substantive federal law, as in the case at bar, the former is preempted and can have no effect.  U.S. Const., Art. VI, cl. 2; *Maryland v. Louisiana*.  In *Naquin v. Louisiana Power & Light Company*, 98-2270 (La. App. 1st Cir.

- 17 -

3/31/00), 768 So. 2d 605, a man, who was traveling in his boat near Bayou Jean Lacroix over property owned by the defendant, was injured after he was struck by a low hanging power line. Similar to the defendants in the case at bar, the defendant excepted to the suit, contending that the plaintiff had failed to state a cause of action and asserting immunity pursuant to the Recreational Use Statutes.  La. Rev. Stat. 9:2791 and 9:2795.  The district court rendered judgment in favor of the defendant and dismissed the lawsuit.  An appeal ensued, in which the plaintiff contended that a genuine issue of material fact existed with respect to whether "the waterway at issue [was] a navigable water body to which the recreational use statutes do not apply."  768 So. 2d at 608.

The Court of Appeal for the First Circuit reversed.  The Court of Appeal found that some evidence existed that there were camps that were designed and constructed to benefit the presence of people in the area; ergo, there was a question of fact with respect to whether the marshland involved was completely undeveloped.  Second, evidence was presented that the waterway was navigable because it afforded access to and from a canal and was capable and did indeed allow boat traffic.  *Id.* at 609.  The Court of Appeal held that ". . . the factual issue of navigability makes this case inappropriate for summary judgment."  The court cited several cases, some of which have previously been cited by the plaintiffs in the case at bar, for the proposition that "[a]n injury which occurs on a navigable waterway is not subject to a defense under La. R.S. 9:2791 and 9:2795."  768 So. 2d at 609 n.4.  As these cases demonstrate, "[n]avigability is a question of fact."  *Id.*

Plaintiffs acknowledge that in certain circumstances, "[s]tate law and regulations may supplement federal maritime law when 'there is no conflict between the two systems of law, and the need for uniformity of decision does not bar state action.'"  T. Schoenbaum, *Admiralty and Maritime Law*, § 4-1 at 123.  Thus, "a Louisiana state court should respect Louisiana law unless there is some

federal impediment to application of that law contained in federal legislation or a clearly applicable rule in the general maritime law." *Green v. Industrial Helicopters, Inc.*, 593 So. 2d 634, 637 (La. 1992), *cert. denied*, 506 U.S. 819 (1992). The peremptive statute asserted by certain defendants in the case at bar, however, like the Louisiana antidram-shop statute before the court in *Young*, the recreational use statutes before the court in *Verdin*, and the Louisiana worker's compensation law before the court in *Green,* represents an impediment to established federal rights, and therefore, it can not be enforced in a way to preempt applicable federal maritime law.[4]

In *Buras v. United Gas Pipeline Company*, 598 So. 2d 397 (La. App. 4th Cir.), *writ denied*, 605 So. 2d 1147 (La. 1992), an individual was injured when he went bass-fishing on a canal. He was transporting a twelve-foot pirogue across the center of a skiff. The sides of the pirogue struck a cluster of pilings located near a gas pipeline that crossed the canal bottom. The pirogue then swung around and struck the plaintiff, knocking him down into the skiff. Significantly, the piling cluster and the pipeline were located within a seventy-five foot right of way obtained from the landowner by a gas company. In *Buras*, it was undisputed that the canal was a navigable waterway; nonetheless, the court addressed the navigability of the accident situs, finding that the canal was in an area "which allows navigation from the Mississippi River to the Gulf of Mexico." *Id.* at 400. The canal at issue in *Buras* had a gas pipeline installed at its bottom. The canal preexisted the pipeline. The court held that the canal on which the plaintiff was injured was not contained in a private tract of land which the

---

[4] Courts have, at times, permitted a state law's measure of damages to fill a gap in federal law. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206 (1996)("Because this case involves a watercraft collision on navigable waters, it falls within admiralty's domain.") *See also Kelly v. Bass Enterprises Production Co.*, 17 F. Supp. 591 (E.D. La. 1998). The fact that state law might provide the element of damages for a maritime claim does <u>not</u> mean that the case does not arise under maritime law for jurisdictional purposes.

landowner opened for recreational purposes.  Instead, it is a navigable waterway which affords access from the Mississippi River to the Gulf of Mexico." *Id.* at 400.  The court suggested that the location of a gas pipeline was not the type of instrumentality found in an undeveloped tract of land. Accordingly, the court held that the area where the plaintiff was injured was not covered by the recreational use statute, stating specifically that "we conclude that an injury which occurs on a navigable waterway such as the one here is not subject to a defense under La. R.S. 9:2791 and 9:2795.  Therefore, UGPLC, as the holder of the right of way which traverses a navigable canal, cannot assert these statutes to avoid liability in the instant case." *Id.* at 400.

### THE COURT HAS NOT PREVIOUSLY ADJUDICATED THE MARITIME NATURE OF THE CLAIMS IN THE CASE AT BAR.

Defendants may assert that the issue of maritime jurisdiction has previously been adjudicated by the court.  Plaintiffs respectfully submit that the jurisdictional bases set forth in their Master Complaint have not yet been addressed by the court.  The law-of-the-case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." *United States v. Lawrence*, 179 F. 3d 343, 351 (5th Cir. 1999).  "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988).  However, "unlike res judicata, the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not." *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Amer.*, 272 F. 3d 276, 279 (5 Cir. 2001).  Accordingly, a position that has been assumed without decision for purposes of resolving another issue is not the law of the case; an issue not presented for decision is not likely to have been decided; and an issue barely

presented may likewise be found not to have been decided.  *See* Wright and Miller, Federal Practice

& Procedure: Jurisdiction 2d, § 4478.  In the case at bar, the court has not yet confronted the issue

of preemption of state law by maritime claims that have been properly established and plead.

Furthermore, although courts are inclined to avoid reconsideration of questions once decided

in the same proceeding, "it is clear that all federal courts retain power to reconsider if they wish."

*Id*.  The law of the case doctrine is "a rule of convenience and utility and yields to adequate reason."

*Loumar, Inc. v. Smith*, 698 F. 2d 759, 762 (5 Cir. 1983).  The three most commonly announced

standards from departing from the law of the case are: (1) new evidence, (2) an intervening change

of law, and (3) clear error and manifest injustice.  However, prior to final judgment and appeal, law

of the case decisions rest with the trial court's sound discretion.

> All too often . . . a trial court could not operate justly if it lacked
> power to reconsider its own rulings as an action progressed toward
> judgment.  Far too many things can go wrong, particularly with
> rulings made while the fact are still undeveloped or with decisions
> made under the pressures of time and docket.  Civil Rule 54(b)
> confirms the trial court's necessary authority to correct itself.  It
> provides that until the court expressly directs entry of final judgment,
> an order that resolves fewer than all of the claims among all of the
> parties "is subject to revision at any time before the entry of judgment
> adjudicating all the claims and the rights and liabilities of all the
> parties.  And so the Supreme Court has said that 'every order short of
> a final decree is subject to reopening at the discretion of the district
> judge."

*See* Wright & Miller, *supra*.  In the case at bar, plaintiffs have asserted specific facts to establish the

existence of maritime jurisdiction.  For purposes of any motion to dismiss pursuant to Rule 12 (b)(6),

these allegations must be accepted as true.  *See* courts' ruling at Doc. 40, p. 6 ("The question

therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his

behalf, the complaint states, any valid claim for relief.'") *See also Fernandez–Montes v. Allied Pilots*

*Ass'n*, 987 F.2d 278, 284 (5 Cir. 1993).  Finally, in the alternative, plaintiffs have recently undertaken

discovery on the issue of maritime jurisdiction, and they should be afforded opportunity to complete

this process.

### ANY LIMITATIONS PERIOD APPLICABLE TO THE CLAIMS AGAINST THE ENGINEERING DEFENDANTS IS GOVERNED BY MARITIME LAW.

Plaintiffs' maritime claims in the case at bar are governed by the maritime doctrine of laches.

In *Czaplicki v. S. S. Hoegh Silvercloud*, 351 U.S. 525 (1956), the Supreme Court defined the

doctrine of laches with respect to its preemption of any direct application of state statutes of

limitation.  The Court held

> It is well settled, however, that laches as a defense to an admiralty suit
> is not to be measured by strict application of statutes of limitations;
> instead, the rule is that "the delay which would defeat such a suit must
> in every case depend on the peculiar equitable circumstances of that
> case.  *Key City*, 81 U.S. 653, 660.  In cases where suit has been
> brought after some lapse of time, the question is whether it would be
> inequitable, because of the delay, to enforce the claim. *Holmberg v.
> Armbrecht*, 327 U.S. 392, 396; *Southern Pacific Company v. Bogert*,
> 250 U.S. 483, 488–89.  "Where there has been no inexcusable delay
> in seeking a remedy and where no prejudice to the defendant has
> ensued from the mere passage of time, there would be no bar to
> relief."  *Gardner v. Panama R. Co.*, 342 U.S. 29 (1951).

Even if an analogous statute of limitation is exceeded, prejudice to the defendant is not

presumed.  *McDaniel v. Gulf & South America S.S. Co.*, 228 F.2d 189 (5 Cir. 1955).  Thus, where

delay is excusable and no prejudice exists to a party resulting from the delay, mere passage of time

does not bar relief in a maritime action.  *Czaplicki v. SS. Hoegh  Silvercloud*, 351 U.S. 525 (1956).

Accordingly, in the case at bar, inasmuch as these claims were filed within a reasonable time frame

the plaintiffs' first awareness of negligence on behalf of the defendants' activities, they have been

timely filed.

- 22 -

## **CONCLUSION**

For the foregoing reasons, maritime tort jurisdiction and substantive maritime tort law obtain and apply as to plaintiffs' claims that the negligent dredging of the 17th St. Canal caused or substantially contributed to the flooding associated with the failure of the Canal's floodwalls following Hurricane Katrina. The contractor and engineering defendants which participated in or facilitated this dredging work knew, or should have known, of the safety risks created by their activity.

All prior or pending motions by these defendants to be dismissed on the basis of the Louisiana law of peremption, accordingly are without merit, and no dismissals on this bases are valid, inasmuch as the Louisiana law of preemption is supplanted by substantive maritime law, with respect to the conduct at issue.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**

s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS LIAISON COUNSEL
Bruno & Bruno, L.L.P.
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

- 23 -

**LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

 s/Gerald E. Meunier
GERALD E. MEUNIER (La. Bar #9471)
LEVEE PSLC LIAISON COUNSEL
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Phone:504/522-2304
Facsimile:504/528-9973
E-mail:gmeunier@gainsben.com

For

LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE

Gerald E. Meunier
Daniel E. Becnel, Jr.
Joseph M. Bruno
D. Blayne Honeycutt
Hugh P. Lambert
Darlene Jacobs
Walter Dumas