WP. Swindler/wn/2278
P-21/69G

FILE COPY

June 13 1984

Operations Division
Permits Section

SUBJECT: LMNOD-SP (17th Street Canal)2

Sewerage and Water Board of New Orleans
City Hall, Civic Center
New Orleans, Louisiana  70165

Gentlemen:

Enclosed is a permit dated this date authorizing dredging to enlarge and maintain an area and installation and maintenance of flood walls and mooring structures, in the 17th Street Canal (Metairie Relief Canal) from Pumping Station No. 6 to a point about 400 feet north of the Bucktown Pedestrian Bridge in Lake Pontchartrain, at Metairie, Louisiana, in Jefferson Parish.

You are again reminded of the information in the following paragraphs.

Work not in accordance with the plans is subject to removal regardless of the expense and the inconvenience that such removal may involve and regardless of the date when the discrepancy is discovered.

I am directed by the Department of the Army to caution you that if any material changes in the location or plans of the work are found necessary on account of unforeseen or altered conditions or otherwise, revised plans should be submitted promptly to the District Engineer. These revised plans will be reviewed, and, if found unobjectionable from the viewpoint of navigation and other public interest factors, will receive the approval required by Federal law before the work is begun. Public interest factors considered include, but are not limited to, fish and wildlife, water quality, economics, conservation, esthetics, recreation, water supply, flood damage prevention, ecosystems, and, in general, the needs and welfare of the people.

Your attention is directed to all the terms and conditions of the approval, especially those conditions relative to supervision and approval of work by the District Engineer and display of lights and signals as may be required by the US Coast Guard. In order to have the work finally approved and declared legal, all terms and conditions of the permit and plans shown on the drawings attached thereto must be rigidly adhered to.

LMN FL 215-1  (ER 1145-2-303)
25 Oct 73

FILE CO

EXHIBIT

B

Mr. Swindler/2278
P-21/69G

FILE COPY

It is necessary that you notify the District Engineer, in writing, 2 days prior to commencement of work and also upon its completion. If work is suspended for a period of more than 1 week, notice must be given of the date of such suspension and the date on which work is resumed.

The enclosed Notice of Authorization, ENG Form 4336, is to be conspicuously displayed at the site of work.

Sincerely,

C. J. Nettles
Chief, Operations Division

Enclosure

CF:  w/encl to encl 1
LMNED-S

Copy of permit send to:
Commerce, ATTN:  CAMO3

Sewerage and Water Board of New Orleans
c/o Modjeski and Masters

TERZI
LMNOD-S

SWINDLER
LMNOD-SP

LMNOD-S

NETTLES
LMNOD

*1984*

*Permit Record*

*File*

*for Micro. filming*

*Permit & Dwgs*
*Statement of Findings*
*Application*
*Author Card*
*Public Notice*
*Prelim Assessment*
*Engr Comts & levee bd letter*
*Environmental Assessment*

LMN FL 215-1
25 Oct 73

2

Mr. Swindler/wn/2278
P-21/69G

Application No. ___LMNOD-SP (17th Street Canal)2___

Name of Applicant ___Sewerage and Water Board of New Orleans___    FILE COPY
LMNOD-SP
1522-15

Effective Date ___June 13, 1984___    17th Street Canal
2/2
P-79-A-1223

Expiration Date (If applicable) _____

# DEPARTMENT OF THE ARMY
## PERMIT

Referring to written request dated ___May 9, 1983___ for a permit to:

(X) Perform work in or affecting navigable waters of the United States, upon the recommendation of the Chief of Engineers, pursuant to Section 10 of the Rivers and Harbors Act of March 3, 1899 (33 U.S.C. 403);

( ) Discharge dredged or fill material into waters of the United States upon the issuance of a permit from the Secretary of the Army acting through the Chief of Engineers pursuant to Section 404 of the Clean Water Act (33 U.S.C. 1344);

( ) Transport dredged material for the purpose of dumping it into ocean waters upon the issuance of a permit from the Secretary of the Army acting through the Chief of Engineers pursuant to Section 103 of the Marine Protection, Research and Sanctuaries Act of 1972 (86 Stat. 1052; P.L. 92-532);

Sewerage and Water Board of New Orleans
City Hall, Civic Center
New Orleans, Louisiana  70165

is hereby authorized by the Secretary of the Army:
to   dredge to enlarge and maintain an area and install and maintain flood walls
and mooring structures,

in  the 17th Street Canal (Metairie Relief Canal) from Pumping State No. 6
to a point about 400 feet north of the Bucktown Pedestrain Bridge, in
Lake Pontchartrain,
at  Metairie, Louisiana, in Jefferson Parish,

in accordance with the plans and drawings attached hereto which are incorporated in and made a part of this permit (on drawings, give file number or other definite identification marks.)  in 11 sheets titled Metairie Outfall
Canal Maintenance Dredging, dated May 1983,

COPY TO U S C G___JUN 1 3 1984_____    C.F. w/encl

COPY TO INSPECTOR___JUN 1 3 1984_____    US Department of Commerce, NOAA
NOS, Atlantic Marine Center
ATTN: ...
subject to the following conditions:    439 West York Street
Norfolk, Virginia 23510

1. General Conditions:

a. That all activities identified and authorized herein shall be consistent with the terms and conditions of this permit; and that any activities not specifically identified and authorized herein shall constitute a violation of the terms and conditions of this permit which may result in the modification, suspension or revocation of this permit, in whole or in part, as set forth more specifically in General Conditions j or k hereto, and in the institution of such legal proceedings as the United States Government may consider appropriate, whether or not this permit has been previously modified, suspended or revoked in whole or in part.

ENG FORM 1721, Sep 82    EDITION OF 1 JUL 77 IS OBSOLETE    (ER 1145-8-303)

1.

3

b. That all activities authorized herein shall, if they involve, during their construction or operation, any discharge of pollutants into waters of the United States or ocean waters, be at all times consistent with applicable water quality standards, effluent limitations and standards of performance, prohibitions, pretreatment standards and management practices established pursuant to the Clean Water Act (33 U.S.C. 1344), the Marine Protection, Research and Sanctuaries Act of 1972 (P.L. 92-532, 86 Stat. 1052), or pursuant to applicable State and local laws.

c. That when the activity authorized herein involves a discharge during its construction or operation, or any pollutant (including dredged or fill material), into waters of the United States, the authorized activity shall, if applicable water quality standards are revised or modified during the term of this permit, be modified, if necessary, to conform with such revised or modified water quality standards within 6 months of the effective date of any revision or modification of water quality standards, or as directed by an implementation plan contained in such revised or modified standards, or within such longer period of time as the District Engineer, in consultation with the Regional Administrator of the Environmental Protection Agency, may determine to be reasonable under the circumstances.

d. That the discharge will not destroy a threatened or endangered species as identified under the Endangered Species Act, or endanger the critical habitat of such species.

e. That the permittee agrees to make every reasonable effort to prosecute the construction or operation of the work authorized herein in a manner so as to minimize any adverse impact on fish, wildlife, and natural environmental values.

f. That the permittee agrees that he will prosecute the construction or work authorized herein in a manner so as to minimize any degradation of water quality.

g. That the permittee shall allow the District Engineer or his authorized representative(s) or designee(s) to make periodic inspections at any time deemed necessary in order to assure that the activity being performed under authority of this permit is in accordance with the terms and conditions prescribed herein.

h. That the permittee shall maintain the structure or work authorized herein in good condition and in reasonable accordance with the plans and drawings attached hereto.

i. That this permit does not convey any property rights, either in real estate or material, or any exclusive privileges; and that it does not authorize any injury to property or invasion of rights or any infringement of Federal, State, or local laws or regulations.

j. That this permit does not obviate the requirement to obtain state or local assent required by law for the activity authorized herein.

k. That this permit may be either modified, suspended or revoked in whole or in part pursuant to the policies and procedures of 33 CFR 325.7.

l. That in issuing this permit, the Government has relied on the information and data which the permittee has provided in connection with his permit application. If, subsequent to the issuance of this permit, such information and data prove to be materially false, materially incomplete or inaccurate, this permit may be modified, suspended or revoked, in whole or in part, and/or the Government may, in addition, institute appropriate legal proceedings.

m. That any modification, suspension, or revocation of this permit shall not be the basis for any claim for damages against the United States.

n. That the permittee shall notify the District Engineer at what time the activity authorized herein will be commenced, as far in advance of the time of commencement as the District Engineer may specify, and of any suspension of work, if for a period of more than one week, resumption of work and its completion.

o. That if the activity authorized herein is not completed on or before _____ day of _____, 19 _____, (three years from the date of issuance of this permit unless otherwise specified) this permit, if not previously revoked or specifically extended, shall automatically expire.

p. That this permit does not authorize or approve the construction of particular structures, the authorization or approval of which may require authorization by the Congress or other agencies of the Federal Government.

q. That if and when the permittee desires to abandon the activity authorized herein, unless such abandonment is part of a transfer procedure by which the permittee is transferring his interests herein to a third party pursuant to General Condition t hereof, he must restore the area to a condition satisfactory to the District Engineer.

r. That if the recording of this permit is possible under applicable State or local law, the permittee shall take such action as may be necessary to record this permit with the Register of Deeds or other appropriate official charged with the responsibility for maintaining records of title to and interests in real property.

4

s. That there shall be no unreasonable interference with navigation by the existence or use of the activity authorized herein.

t. That this permit may not be transferred to a third party without prior written notice to the District Engineer, either by the transferee's written agreement to comply with all terms and conditions of this permit or by the transferee subscribing to this permit in the space provided below and thereby agreeing to comply with all terms and conditions of this permit. In addition, if the permittee transfers the interests authorized herein by conveyance of realty, the deed shall reference this permit and the terms and conditions specified herein and this permit shall be recorded along with the deed with the Register of Deeds or other appropriate official.

u. That if the permittee during prosecution of the work authorized herein, encounters a previously unidentified archeological or other cultural resource within the area subject to Department of the Army jurisdiction that might be eligible for listing in the National Register of Historic Places, he shall immediately notify the district engineer.

II. Special Conditions: (Here list conditions relating specifically to the proposed structure or work authorized by this permit:

v. That all dredging will be performed by bucket dredge or other similar mechanical dredge equipment to lessen turbidity impacts. No hydraulic dredging is to be performed.

w. That no dredging will be performed during Pumping Station No. 6 pumping operations.

x. That adequate silt screens will be placed in the immediate area of dredging operations to control turbidity.

y. That dredged material from the canal will be transported from the site by leak-proof trucks. Care will be taken during loading and transportation operations to control spillage of material from the trucks.

z. That a physical barrier will be constructed on the berm of the dredge area to control elutriate from entering the canal.

aa. That the site or sites from the offsite disposal of dredged material will be approved by the New Orleans District Corps of Engineers prior to disposal operations.

bc. That the disposal method such as coverage with clear fill, depth of disposal material, etc., will be in accordance with applicable state environmental laws and regulations.

cc. That the New Orleans District reserves the right to inspect the site during operations and add additional conditions to the permit to protect the overall public interest.

dd. That the permittee is aware that approvals or permits are required from the Orleans Levee Board and the Jefferson Levee Board.

ee. That the permittee is aware that the work authorized under this permit may not necessarily be creditable under the "Lake Pontchartrain, Louisiana and Vicinity Hurricane Protection" project.

ff. That the permittee will submit three sets of the final plans and specifications to the Chief of Engineering Division of the New Orleans District for information and further coordination with the permittee's architect-engineering firm.

gg. That in issuing this permit the New Orleans District recognizes that structures and mooring facilities in the canal will be removed and that some boat mooring structures may be placed in the canal after dredging. The New Orleans District interposes no objection to boat mooring structures in the canal provided the structures are installed by or under the approval of the permittee.

hh. That the permittee will maintain the present level of hurricane protection throughout the duration of the construction.

3
5

The following Special Conditions will be applicable when appropriate:

STRUCTURES IN OR AFFECTING NAVIGABLE WATERS OF THE UNITED STATES:

a. That this permit does not authorize the interference with any existing or proposed Federal project and that the permittee shall not be entitled to compensation for damage or injury to the structures or work authorized herein which may be caused by or result from existing or future operations undertaken by the United States in the public interest.

b. That no attempt shall be made by the permittee to prevent the full and free use by the public of all navigable waters at or adjacent to the activity authorized by this permit.

c. That if the display of lights and signals on any structure or work authorized herein is not otherwise provided for by law, such lights and signals as may be prescribed by the United States Coast Guard shall be installed and maintained by and at the expense of the permittee.

d. That the permittee, upon receipt of a notice of revocation of this permit or upon its expiration before completion of the authorized structure or work, shall, without expense to the United States and in such time and manner as the Secretary of the Army or his authorized representative may direct, restore the waterway to its former condition. If the permittee fails to comply with the direction of the Secretary of the Army or his authorized representative, the Secretary or his designee may restore the waterway to its former condition, by contract or otherwise, and recover the cost thereof from the permittee.

e. Structures for Small Boats: That permittee hereby recognizes the possibility that the structure permitted herein may be subject to damage by wave wash from passing vessels. The issuance of this permit does not relieve the permittee from taking all proper steps to insure the integrity of the structure permitted herein and the safety of boats moored thereto from damage by wave wash and the permittee shall not hold the United States liable for any such damage.

MAINTENANCE DREDGING:

a. That when the work authorized herein includes periodic maintenance dredging, it may be performed under this permit for _____ years from the date of issuance of this permit (ten years unless otherwise indicated);

b. That the permittee will advise the District Engineer in writing at least two weeks before he intends to undertake any maintenance dredging.

DISCHARGES OF DREDGED OR FILL MATERIAL INTO WATERS OF THE UNITED STATES:

a. That the discharge will be carried out in conformity with the goals and objectives of the EPA Guidelines established pursuant to Section 404(b) of the Clean Water Act and published in 40 CFR 230;

b. That the discharge will consist of suitable material free from toxic pollutants in toxic amounts.

c. That the fill created by the discharge will be properly maintained to prevent erosion and other non-point sources of pollution.

DISPOSAL OF DREDGED MATERIAL INTO OCEAN WATERS:

a. That the disposal will be carried out in conformity with the goals, objectives, and requirements of the EPA criteria established pursuant to Section 102 of the Marine Protection, Research and Sanctuaries Act of 1972, published in 40 CFR 220-228.

b. That the permittee shall place a copy of this permit in a conspicuous place in the vessel to be used for the transportation and/or disposal of the dredged material as authorized herein.

This permit shall become effective on the date of the District Engineer's signature.

Permittee hereby accepts and agrees to comply with the terms and conditions of this permit.

_____  June 13, 1984
PERMITTEE  DATE

BY AUTHORITY OF THE SECRETARY OF THE ARMY:

_____  June 13, 1984
C. J. Bathles, Chief, Operations Division  DATE
for Robert C. Lee, Colonel
DISTRICT ENGINEER.
U.S. ARMY, CORPS OF ENGINEERS

Transferee hereby agrees to comply with the terms and conditions of this permit.

_____  _____
TRANSFEREE  DATE

Enclosure
Set of map (11 sheets)

U.S. GOVERNMENT PRINTING OFFICE : 1983 O - 404-308



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160

REPLY TO
ATTENTION OF:

STATEMENT OF FINDINGS

13 June 1984

Waterway No.: (17th Street Canal)2                    Sequence No. 12518

Concerning approval of Department of the Army permit under Section 10 of the River and Harbor Act of 3 March 1899 (30 Stat. 1151; 33 U.S.C. 403), to Sewerage and Water Board of New Orleans, City Hall, Civic Center, New Orleans, Louisiana   70165.

1.  I have reviewed and evaluated, in light of the overall public interest, the documents and factors concerning this permit application, as well as the stated views of other interested Federal and non-Federal agencies and the concerned public, relative to proposed work in navigable waters of the United States.

2.  The possible consequences of this proposed work have been studied for environmental effects, social well-being, the public interests and in accordance with regulations published in 33 CFR 320 through 330 and, when applicable, the guidelines published in 40 CFR 230.1. Factors bearing on my review include: navigation, present and prospective; flood heights and beach erosion or accretion; fish and wildlife; water quality; esthetics and ecology; historic values and recreation; water supply; floodplain use; energy production and distribution; food distribution; and other public interests.

3.  Specific information concerning the work follows:

   a.  Name of applicant:  Sewerage and Water Board of New Orleans, City Hall, Civic Center, New Orleans, Louisiana 70165. Copies of the permit applications are attached as Inclosure 1.

   b.  Location, character, and purpose of proposed work:  In Jefferson Parish, along Jefferson-Orleans parish line. Dredging to enlarge and maintain an existing outfall canal, known as "Metairie Relief Canal", approximately 200 feet wide and 13,000 feet long, from and including Pumping Station No. 6 to Lake Pontchartrain, to improve the present hydraulic characteristics of the canal to allow the pumping rate of Pumping Station No. 6 to be increased to 10,400 cubic feet per second, thereby reducing the instances of street and home floodings in the drained area. The 17th Street Canal is the main stormwater drainage outlet for approximately 7,860 acres of urbanized land in Orleans Parish (Uptown, Broadmoor, Carrollton) and approximately 2,250 acres of similar area in Jefferson Parish (between Metairie Road and the Mississippi River). The proposed project combines two (2) previously submitted permit requests by the Sewerage and Water Board of New Orleans, who alleges ownership of the canal.

30

13 June 1984

c. Authority: The dredging of material in navigable waters of the United States requires authorization under Section 10 of the River and Harbor Act of 3 March 1899.

d. Other Federal, state, and local authorizations: Except for the required water quality certification from the Louisiana Department of Natural Resources, Water Pollution Control Division, which has been obtained, and an approval from Department of Natural Resources, Coastal Management Section, which has been waived, no specific approvals are known to be required. The views of appropriate Federal, state and local agencies will be discussed in later paragraphs.

e. Public notice and public meeting or hearing: A public notice dated 13 February 1981 announcing the permit application by Sewerage and Water Board of New Orleans was mailed to all known interested parties. A copy of the public notice is attached as Inclosure 2. Because of the controversy and the need for additional information, a special public notice, dated 26 February 1981, was issued announcing a public hearing to be held on 31 March 1981. A copy of the special public notice is attached as Inclosure 3. On 31 March 1981, a public hearing was held at City Hall, Orleans Parish City Council's Chambers, New Orleans, Louisiana. On 23 June 1983, a public notice was issued on the Sewerage and Water Board's revised permit application dated 9 May 1983. A copy of this public notice is attached as Inclosure 4.

The general public has been quite vocal relative to this project. Many comments have been received in response to the public notices and public hearing. These letters, expressing support or opposition to the proposed project, too numerous to list in this report, are found in the permit file and in the public hearing transcript. The main comments expressing support of the project cited the pressing need to reduce flooding in the area drained by the 17th Street Canal. The main comments in opposition to the project center on impacts of the project on Bucktown area residences located along the canal. These topics and other comments are addressed in the environmental assessment.

f. Views of state and local authorities: On 24 August 1982, Louisiana Water Pollution Control Division sent a letter of no objection concerning the proposed dredging of the canal. On 27 August 1979, Louisiana Department of Wildlife and Fisheries sent a letter of no objection. On 3 October 1979, Louisiana Department of Public Health sent a letter of no objection. On 1 April 1981, Louisiana Office of Public Works wrote to Jefferson Parish Levee District warning them of the effect of dredging by the Sewerage and Water Board on the integrity of Orleans Parish levees and recommended that more engineering data be furnished by the applicant. On 8 April 1981, Jefferson Parish Council urged the Corps not to grant the Sewerage and Water Board a permit to dredge the canal, rather the applicant should be allowed only to dredge the sandbar at the mouth of the canal. This recommendation was based on findings of an independent study conducted by W. H. Herbst, Consultant Engineers hired by Jefferson Parish Council. The Herbst study did not completely agree with previous engineering studies conducted by Modjeski and Masters, consultants to the applicant for the need for dredging the entire outfall canal. In order to resolve the public controversy over the project, the State of Louisiana authorized a study to determine the need for the canal

2

3/

13 June 1984

dredging. The consultants Linfield, Hunter and Gibbons, Inc. of New Orleans, selected jointly by the applicant and Jefferson Parish, completed the study in January 1983 and recommended dredging of the canal from Pumping Station No. 6 to Lake Pontchartrain. On 16 May 1980, the Louisiana State Historic Preservation Officer determined that Bucktown, located at the reach of the canal between Hammond Highway and Lake Pontchartrain, is not eligible for nomination to the National Register of Historic Places, therefore, there were no objections posed to the issuance of the permit to the applicant. On 6 January 1982, Coastal Management Section (CMS) determined that no coastal use permit was required. On 15 July 1983, Jefferson Parish Council passed a resolution requesting the Corps not to permit the Sewerage and Water Board to dredge the portion of the Canal between Hammond Highway and Lake Pontchartrain until the Bucktown controversy is resolved.

g. Views of Federal authorities: On 5 February 1980, the Environmental Protection Agency (EPA) requested the applicant to provide sediment analysis data. The applicant provided a copy of lab report concerning the results of bulk sediment analysis. On 15 September 1980, the EPA informed the applicant that the sediment test results showed heavy concentrations of some contaminants and recommended that no open-water dumping of these sediments should be attempted. On 23 September 1980, the EPA recommended that no dredging should be allowed in the canal, rather only the sandbar at the mouth of the canal be dredged. However, when the applicant agreed to transport the dredged material from the canal in leak-proof trucks to be deposited at a non-wetland site, the EPA, by letter dated 10 March 1981, changed its previous position of objecting to canal dredging and left the decision on the matter to the discretion of the District Engineer.

No comments were received from US Fish and Wildlife Service. No adverse comments were received from National Marine Fisheries Service.

On 12 March 1981, the Federal Emergency Management Agency supported the canal dredging and urged the Corps to issue the permit.

There were four congressional inquiries concerning the permit application, two letters from the Congresswoman Lindy Boggs, one letter from Senator J. Bennett Johnston, and one letter from Senator Russell B. Long.

h. Views of the District Engineer on:

(1) Navigation: The 17th Street Canal is not used for commercial or recreational navigation; however, the reach of the canal between Hammond Highway and Lake Pontchartrain, known as Bucktown, is used for mooring of both commercial and sporting fishing vessels owned by the fishermen of Bucktown.

(2) Harbor lines: Not Applicable.

(3) Flood heights, drift, and flood protection: The proposed dredging and canal improvements will help alleviate street flooding and minimize flood damages to residences and businesses in both Orleans and Jefferson parishes within the drainage areas of the canal totaling over 10,000 acres inhabited by over 200,000 people.

3

32

13 June 1984

(4) Beach erosion and accretion: Not applicable.

(5) Fish and wildlife: Impacts on fish and wildlife are discussed in the Environmental Assessment (Inclosure 5).

(6) Water quality: Impacts on water quality are discussed in Environmental Assessment.

(7) Esthetics: There will be a temporary change in the esthetic appearance of the project site during dredging and levee realinement.

(8) Historic values: No known historic sites are located on or near the proposed project site.

(9) Recreation: The existing bike path on the levee on Jefferson Parish side of the canal will be closed temporarily during the construction.

(10) Economy: The proposed project will have only minor impact on the local economy. The project will displace two businesses and nine residences located in Bucktown area of the canal. The fishing fleet may have to relocate to another site during the construction and may be able to return into the canal after completion of the project. Additionally, Jefferson Parish has a permit to build a marina immediately west of the mouth of the canal. In their permit application, Jefferson Parish indicated that space would be made available for the fishing boats presently in the 17th Street Canal.

(11) Water supply: Not applicable.

(12) Energy needs: The amount of energy, in the form of fuels, will depend on which alternative will be selected for accomplishing the dredging operations.

(13) Land use classification and coastal zone management plans: Louisiana Coastal Management Section has determined that a coastal use permit is not required.

j. Other pertinent remarks:

(1) Appropriate alternatives: There are no other practical alternatives. To minimize the impacts of the dredging on water quality in the canal and Lake Pontchartrain, the applicant will use mechanical (bucket) dredging and will provide means to prevent the elutriate from returning into the canal and will haul the dredge material in leak-proof trucks for deposition on a non-wetland site.

(2) Extent and permanence of beneficial and/or detrimental effects: The implementation of the proposed work will reduce the intensity of street flooding and minimize damages to property. The project will also cause temporary displacement of two businesses and nine residences in Bucktown. No wetlands will be impacted.

4

33

11 June 1984

(3)  Probable impacts in relation to cumulative effects created by other activities:  The proposed work is to dredge and enlarge an existing canal; therefore, no further developments or activities are anticipated to occur as result of the implementation of this project.

k.  Environmental Assessment:  An environmental assessment is included as Inclosure 5.

l.  Conformity to Section 404 (b)(1) guidelines (40 CFR Part 230):  The permit application is not subject to the requirements of the Clean Water Act.

m.  Conclusion:  The following conclusions are based on the proposed project:

(1)  The dredging of the canal will have temporary adverse impacts on fish and wildlife and other biota and water quality in Lake Pontchartrain.

(2)  There are no other practical and economical alternatives to dredging.  The impact of the project can be reduced by the use of bucket dredging and placement of silt screens at the mouth of the canal during dredging to prevent the contaminated sediments from reaching the lake, and hauling the dredge material in leak-proof trucks to a non-wetland site.  Also, there will be no dredging during the periods of high water or when the pumps are in operation.

(3)  No wetlands will be impacted by the project.

(4)  Louisiana Water Pollution Control Division has issued a water quality certification on the project.

(5)  Louisiana Department of Natural Resources, Coastal Zone Management Section has determined that no coastal use permit is required for the project.

(6)  The impacts of the proposed action have been assessed and are not significant enough to require the preparation of an EIS.

(7)  Based on thorough evaluation of all pertinent factors, I have concluded that completion of the applicant's proposed project will cause temporary displacement of residents of Bucktown fishing village and will have no significant adverse impact on water quality and biota of Lake Pontchartrain.  The project will also help alleviate frequent street flooding

5

34

11 June 1984

and minimize flood damages to the properties of approximately 200,000 inhabitants of both Jefferson and Orleans Parishes. I find that granting of the Department of the Army permit as prescribed by regulations published in 33 CFR Parts 320-330 to be in the public interest.

ROBERT C. LEE
Colonel, CE
Commanding

5 Inclosures
1. Applications (3)
2. Public Notice
3. Special Public Notice
4. Public Notice (revised permit application)
5. Environmental Assessment

6

35

12

FILE COPY

February 30, 1987

Operations Division
Permits Section

SUBJECT:  LMNOD-SP(17th Street Canal)

Sewerage and Water Board of New Orleans
City Hall, Civic Center
New Orleans, Louisiana  70164

Gentlemen:

As requested in your letter dated February 4, 1987, the authorization granted by the Secretary of the Army in permit dated June 13, 1984, from the District Engineer at New Orleans, Louisiana, to dredge to enlarge and maintain an area and install and maintain flood walls and mooring structures in the 17th Street Canal (Metairie Relief Canal) from Pumping Station No. 6 to a point about 400 feet north of the Bucktown Pedestrian Bridge in Lake Pontchartrain, at Metairie, Louisiana, in Jefferson Parish, is specifically extended to June 13, 1992.

The conditions to which the work is made subject, excepting the time limit for completion, remain in full force and effect.

This is the last extension of time which will be granted for this permit without full permit reprocessing.  If the work is not completed by the date granted under this letter, it will be necessary for you to reapply for a permit to perform any work after that date.  You then must submit a new completed application form, permit drawings indicating work completed and remaining, and request new letters of no objection.  It is possible that, as a result of the new evaluation, your request for a time extension could be denied or the authorization for the portion of your project not completed could be significantly modified.

BY AUTHORITY OF THE SECRETARY OF THE ARMY:

SWINDLER.
LMNOD-SP

C.73

VENTOLA
LMNOD-SP

Henry R. Schorr
Assistant Chief, Operations Division
for
Lloyd K. Brown
Colonel, Corps of Engineers
District Engineer

FILE COPY

**404**

**126 48** PUBLIC NOTICED DATED

PERMITS, APPROVAL OF BRIDGE PLANS, LICENSES, ETC.

To enlarge & m an area 4 l, 4 mg floodwalls & mooring structs. Pumping Date of receipt about 400 feet N of the Bucktown Pedestrian Bridge in La Ka Pont M elaira ...

| DATE OF APPLICATION | RECEIVED—DATE | ACTION TAKEN | DATE FORWARDED |
|---|---|---|---|
| 23 Aug 79 | 23 Aug 79 | | June 13, 1984 |

| ISSUED BY | DATE | FILE NO. | CORRESPONDENCE FILE NO. 1922-15 |
|---|---|---|---|
| | 6-18-84 | P-79-AA-1933 (17th ST CANAL)2 |

RENEWED OR EXTENDED—DATE: TE 02/20/87

CANCELED OR RELINQUISHED—DATE:

DATE OF EXPIRATION: 6-13-92    DATE MODIFIED:

CONSTRUCTION STARTED—DATE: | CONSTRUCTION COMPLETED—DATE | REPORT OF COMPLETION SUBMITTED—DATE:

TERMS AND CONDITIONS: v,w,x,y,z,aa,bb,cc,dd,ee,ff,gg,hh

RENTAL OR FEE: | RENTAL DUE—DATE | RENTALS COLLECTED AND DATE

INSPECTED BY WHOM AND DATE:

REMARKS: (over)

| NAME AND ADDRESS | WATERWAY | MILE NO. | STRUCTURE |
|---|---|---|---|
| SEWERAGE & WATER BOARD OF NEW ORLEANS (17th ST. CANAL)2 | | | DREDGING |

APPLICANT: Sewerage & Water Board of New Orleans
WATERWAY NO: (17th Street Canal)2
PARISH: Jefferson Ph

SEQUENCE NO: 000415
REGISTER NO: Time Extension
DESCRIPTION: Dredging, flood walls & mooring structures

RECORD OF PERMIT PROCESSING

Date Receipt Acknowledged: 2/10/87
Date Prelim Assess:
Date Env Assess:
EIS Required? __ Yes __ No __ Other Agency
  Date DEIS/FEIS to LMVD:
  Date FEIS in Fed Register:
Date of Pub Notice:
Date for Comments:
# Ltrs of Cmt: __ # Acknowledged:
# Ref to Applicant:
Date of Public Hearing:
Fee Required? __ Yes __ No __ Amount

Agency and Other Comments:
DNR  WLF  SCC  STATE LANDS  HISTORICAL
PORT COMM  LEVEE DIST  PARISH  TOWN
ARCHEOLOGIST  F&WS  NMFS  EPA  NTS
LHRA  USCG  NOAA  LMNED  LMNPD  LMNRE
OTHER:
REMARKS:

See reverse for additional remarks
Jane
(33 CFR 320 - 325)
LMN Form 1031
1 Nov 77

14



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT. CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS. LOUISIANA 70160-0267

REPLY TO
ATTENTION OF

LMNOD-SP                                        20 February 1987

STATEMENT OF FINDINGS

Waterway No.:  (17th Street Canal)2              Sequence No.: 000415

Concerning issuance of Department of the Army permit under Section 10 of the
River and Harbor Act of 3 March 1899 (30 Stat. 1151; 33 U.S.C. 403) and/or
Section 404 of PL 92-500 (86 Stat. 816; 33 U.S.C. 1344), to Sewerage and Water
Board of New Orleans, City Hall, Civic Center, New Orleans, Louisiana, for
approval of last time extension:

1.  I have reviewed and evaluated, in light of the overall public interest,
the documents and factors concerning this permit application, as well as the
stated views of other interested Federal and non-Federal agencies and the
concerned public, relative to the proposed work in navigable waters of the
United States and/or in navigable waters.

2.  The possible consequences of this proposed work have been studied for
environmental effects, social well-being, the public interests and in
accordance with regulations published in 33 CFR 320 through 330 and, when
applicable, the guidelines published in 40 CFR 230.1.  Factors bearing on my
review include:  navigation, present and prospective; flood heights and beach
erosion or accretion; fish and wildlife; water quality; esthetics and ecology;
historic values and recreation; water supply; floodplain use; energy
production and distribution; food production; and other public interests.

3.  In evaluation of this work and consideration of comments received from
coordination of Public Notice Number (no public notice issued) the following
points are considered pertinent:

    a.  Federal Agencies.  Refer to paragraph 3d.

    b.  State and Local Agencies.  Refer to paragraph 3d.

    c.  Individuals or Organized Groups.  Refer to paragraph 3d.

    d.  Other Considerations.  The request for an extension of time was
granted without issuing a public notice or requiring letters of no objection
because there were no significant changes in the attendant circumstances since
the permit was issued.

4.  I find that issuance of the Department of the Army permit as prescribed by
regulations published in 33 CFR 320 through 330 to Sewerage and Water Board of
New Orleans is based on thorough analysis and evaluation of the various
factors enumerated above; that there are no reasonable alternatives available
to the applicant that will achieve the purposes for which the work is being

LMN FL 1063-0(Edition of 1 Sep 77 obsolete)
1 Aug 78

G 81

15

LMNOD-SP (17th Street Canal)2                          20 February 1987
SUBJECT:  Statement of Findings - Sewerage and Water Board of New Orleans

constructed; that the proposed work is in accordance with the overall desires
of the public as reflected in the comments of state and local agencies and the
general public; that the proposed work is deemed to comply with established
state and local laws, regulations, and codes; that there have been no
identified significant adverse environmental effects related to the work; that
the issuance of this permit is consonant with national policy, statutes, and
administrative directives; and that on balance, issuance of a Department of
the Army permit would not be contrary to the public interest.


                              LLOYD K. BROWN
                              Colonel, CE
                              Commanding


                    By:

                              HENRY B. SCHORR
                              Assistant Chief, Operations Division


LMN FL 1063-0(Edition of 1 Sep 77 obsolete)
1 Aug 78


                                    6682

Martin/hmaw/1113



## DEPARTMENT OF THE ARMY

NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

FILE COPY



REPLY TO
ATTENTION OF

MAY 22 1992

Operations and Readiness Division
Eastern Evaluation Section

SUBJECT: SE(17th Street Canal)2

Sewerage and Water Board of New Orleans
625 St. Joseph Street
New Orleans, Louisiana 70165

Gentlemen:

As requested in your letter dated May 27, 1992, the authorization granted by the Secretary of the Army in permit dated June 13, 1984, from the District Engineer at New Orleans, Louisiana, to dredge to enlarge and maintain an area and install and maintain flood walls and mooring structures, in the 17th Street Canal (Metairie Relief Canal) from Pumping Station No. 6 to a point about 400 feet north of the Bucktown Pedestrian Bridge, in Lake Pontchartrain, at Metairie, Louisiana, in Jefferson Parish, is specifically extended to June 13, 1997.

The permittee is reminded of special conditions v through hh of the subject permit. These and all other conditions to which the work is made subject, excepting the time limit for completion, remain in full force and effect.

BY THE AUTHORITY OF THE SECRETARY OF THE ARMY:

Albert J. Guillot
Assistant Chief, Operations and
  Readiness Division
  for
James V. Hall
Lieutenant Colonel, U.S. Army
Deputy District Engineer

BAEH
OD-SE

VENTOLA
OD-

661

FILE COPY



# DEPARTMENT OF THE ARMY
### NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
### P.O. BOX 60267
### NEW ORLEANS, LOUISIANA 70160-0267

REPLY TO
ATTENTION OF

CELMN-OD-SE

## Department of the Army Permit Evaluation

## and Decision Document

Applicant:  Sewerage and Water Board of New Orleans

Application No.:  SE (17th Street Canal)2

This document constitutes the Environmental Assessment, Statement of Findings, and, if applicable, review and compliance determination according to the 404(b)(1) guidelines for the proposed work.

The applicant has requested Department of the Army permit approval to complete project authorized June 13, 1984.

I have determined that the proposed work need not be advertised by public notice for the reason indicated below.

(X)   The proposed request is for a time extension to continue work previously authorized.  Regulations under 33 CFR 325.6(d) allow granting of time extensions without the need to readvertise a project by public notice if there have been no significant changes in the attendant circumstances since the authorization was issued.

( )   The proposed work is a minor modification or addition to work previously permitted.  The impacts of the proposed work are expected to have no adverse impacts or only very minor impacts.

( )   The proposed work qualifies for approval under 33 CFR 325.2(e)(1) by a letter of permission.

Although the proposed work is being authorized in accordance with abbreviated procedures allowed under

662

-2-

regulations found under 33 CFR 320 through 330, the project has been assessed to include all the evaluation factors cited in 33 CFR 325.3(c) even though a detailed Environmental Assessment and a detailed Statement of Findings have not been prepared.

(X)   Alternatives to include no action, other project designs, and other sites were considered but not found to be practical or feasible.

Other factors relevant to the review of the applicant's proposal, if any, are listed below.

The permittee indicated by letter dated May 27, 1992, that Phase I and III of the project work has been completed. Phase II of the project was delayed due to the permittee trying to negotiate a joint agreement between Jefferson Parish and Orleans Parish Levee Districts to combine the flood protection work with the permittee's dredging operation (Phase IIA & IIB).  Once after the agreement has been settled, approximately 60 per cent of Phase IIA has been completed, and Phase IIB of the project commenced the first week in June, 1992.  In the approval, the permittee was reminded that special conditions v through hh and all other conditions of the permit, which the work is made subject, still remain in full force and effect.

Having reviewed the information provided by the applicant, the permit file, and the assessment of environmental impacts, I find this permit action will not have a significant impact on the human environment. Therefore, an Environmental Impact Statement will not be required.

I find that issuance of a Department of the Army permit, as prescribed by regulations published in 33 CFR 320 to 330 and 40 CFR 230, is not contrary to the overall public interest.

_June 14, 1992_
Date

_18 Jun 92_
Date

_June 23, 1992_
Date

_Miranda R. Martin_
Preparer

_[signature]_
Reviewer

_Albert J. Lambert_
Approving Officer

663