UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: LEVEE, MRGO, INSURANCE | § | |
| | § | |

## UNITED STATES' DOCUMENT PRODUCTION PROTOCOL

Pursuant to Section IV(C)(2) of Case Management and Scheduling Order No. 4

("CMO4") (Doc. Rec. No. 3299), the United States hereby presents its Document Production

Protocol. This document reflects the United States' current expectation as to document

production; however, it is subject to later revision if substantial changes in discovery occur.

Such revisions will occur either through a meet and confer process or court order.

**I.      PURSUANT TO THE COURT'S CASE MANAGEMENT ORDER, THE
         UNITED STATES WILL PRODUCE DOCUMENTS IN USABLE LOAD
         FILE FORMATS TO LIAISON COUNSEL, IN LIEU OF PRODUCTION
         TO THE THE JOINT ELECTRONIC REPOSITORY**

Section IV(C)(1)(a) of CMO4 provides, in pertinent part, that "[e]xcept for documents

and other evidentiary materials in the exclusive custody or control of the United States (which

will be maintained separately as provided herein), a joint electronic repository" will be

established for document production. Section IV(C)(2) then delineates the United States'

document "repository(ies)": "The United States is hereby required to (1) establish one or more

evidence repositories consisting of all such materials that are not privileged, and (2) prepare a log

as contemplated by Rule 26(b)(5) as to all such materials which the United States contends are

privileged."

Multiple reasons exist to except the United States from participation in the joint electronic repository, including: (1) the United States, which is facing over 200 Requests for Production directed solely at it from the other parties, will undoubtedly have the largest production in this litigation; (2) placing these documents and other evidentiary materials on the joint electronic repository would, therefore, increase "hosting," uploading, and maintenance costs for all parties involved; and (3) the United States would not be able to access the joint electronic repository without amending its internal Department of Justice internet security protocols.

Accordingly, the parties agree that the United States is not a part of the joint electronic repository and will not bear any costs associated with the joint electronic repository. The United States will produce its documents and electronically stored information in accordance with the technical specification description attached hereto at Exhibit 1.

## II.     THE UNITED STATES ANTICIPATES HAVING TO PRODUCE THREE CATEGORIES OF "DOCUMENTS" IN THIS LITIGATION

The United States anticipates producing three types of evidence: (1) tangible things, (2) paper documents, and (3) electronically stored information.

### A.     Tangible Things

The United States will produce tangible things at various repositories where these materials are being held. These repositories include, but are not limited to, locations in Vicksburg and New Orleans. The parties will coordinate, through liaison counsel, mutually agreed upon times and rules for examining things. Nothing in this order precludes or authorizes the shipment of tangible things for testing, and the parties shall meet and confer to determine whether a tangible thing shall be shipped for testing. However, if a party desires to test any of

2

the tangible things located in the various repositories, the costs of testing (including, but not limited to, loading, transporting and storing) the materials shall be borne entirely by the party requesting the testing. The party that obtains the materials for testing is also responsible for maintaining an evidentiary chain-of-custody and returning the materials to the repository from which it was obtained.

**B.    Paper Documents**

The United States anticipates voluminous document discovery. Currently, the United States believes documents exist in three groups: (1) documents housed at Federal Records Centers ("FRCs"), (2) documents housed at Army Corps of Engineers ("Corps") or contractor warehouses, and (3) "active" documents currently in the offices of the Corps personnel who are using the documents. The precise number of documents which are related to this litigation is currently unknown, but will number in the millions.

**1.    Documents Housed at Federal Records Centers**

The United States currently believes that numerous responsive documents are housed at FRCs. To the extent it fits within time and monetary constraints, documents relevant to this litigation held at FRCs will be transferred to a central location in New Orleans. Depending on the size of the document production request, one of two procedures will be used to produce the documents: (1) Traditional Document Production, if the request is not overly large; or (2) Review and Select. These are described fully on page three of the technical specification description attached hereto as Exhibit 1.

3

### 2.    Documents Housed at Corps Warehouses

The United States currently believes that documents are being held at various Corps storage warehouses. While these documents are not "active" and currently in use by Corps, these documents have not yet been delivered to FRCs. If the document production request is not overly large, the United States may opt to produce these documents without a review and select process. *See* Ex. 1. If the responsive documents to the request are voluminous, the United States' preference is to transfer these files to the central location in New Orleans for a review and select procedure. *See id.* The availability of this centralized transfer/review and select procedure is subject to time constraints imposed by requesting parties, monetary constraints, and the ability of the Corps to transfer these files to a central location. If documents cannot be transferred to a central location for review, alternative means of production must be agreed upon by all the parties or by order of the court.

### 3.    Active Files Currently Being Used by Corps Personnel

These documents are currently being used by Corps personnel. Removing these documents from Corps personnel would be highly burdensome, as these personnel must be able to continue their work. In addition, because these documents are active, they may not even be relevant to the essential issues in this litigation.

To minimize disruption to these personnel, one of two approaches may be employed. If the document production request is not overly large, the United States may opt to produce copies of these files without the review and select procedure. *See* Ex. 1. If the document production request is overly large, the United States' preference is to copy these files and transfer documents to the central location in New Orleans for a review and select procedure. *See id.* Once again, the

4

availability of this centralized transfer/review and select procedure is subject to time constraints imposed by requesting parties, monetary constraints, and the ability of the Corps to transfer these files to a central location. If documents cannot be transferred to a central location for review, alternative means of production must be agreed upon by all the parties or by order of the court.

## C.    Electronically Stored Information

Having neither received all requests for production nor having sufficient time to conduct an exhaustive search, the United States cannot calculate the quantity of responsive electronically stored information ("ESI"). However, the Corps facilities in New Orleans has a network drive space of approximately 25 terabytes. Other facilities that may have data responsive to a production request, such as Vicksburg, are also believed to have at least 25 terabytes of data. While all of the network drive space is not believed to be filled with ESI relevant to this litigation, a considerable amount of time and resources will be required to catalog the files and to index and search through to determine what is responsive to the requests for production. Because the quantity of responsive ESI is unknown, the present discussion of ESI will be subject to further revision as new technical issues arise.

Three types of ESI exist: (1) files that are readily convertible into TIFF, such as word processing files; (2) files that are not readily convertible into TIFF, such as spreadsheets, which can be readily produced in native formats; and (3) files that are not easily convertible into TIFF and that also do not lend themselves to production in native formats. This ESI will be produced as described in Exhibit 1.

5

After the United States completes its preliminary review of ESI to determine what is potentially responsive, the parties agree to meet and confer to discuss other issues with regard to the production of ESI.

## III.    ISSUES COMMON TO ALL CATEGORIES OF PRODUCTION

Some issues are common to all categories of production.  These include: (1) privilege concerns, (2) technical details concerning production, and (3) the IPET materials.

### A.    Privilege Concerns

Because of the large volume of documents and ESI that are relevant to this litigation, a "clawback" procedure for asserting privilege, as laid out in Federal Rule of Civil Procedure 26(b)(5) and in Section IV(C)(3)(e) of CMO4, will be used.  While the United States will endeavor to complete its privilege review prior to production, this clawback procedure will allow parties to assert privilege after production.  As fully described in Exhibit 2, a privilege will not be waived despite: (1) a failure to assert the privilege prior to production, and (2) the assertion of privilege only after production.  Otherwise, a thorough privilege review of a voluminous set of documents prior to production would be highly time consuming, costly, and inefficient which is incompatible with the Court's desire, expressed in CMO4, to a speedy and efficient resolution of this litigation.  To ensure that the provisions of the clawback agreement are enforceable, a court order will be entered.  A proposed court order is attached as Exhibit 2.

### B.    Technical Specification of Production

The technical aspects of production are discussed in Exhibit 1.  The United States will produce its documents and ESI on electronic media such as CDs, DVDs, or hard drives.  These media will be produced to plaintiffs' and defendants' liaison counsel.  Documents produced by

6

other parties and non-parties will be produced to the United States as "load files" in electronic media such as CDs, DVDs, or hard drives.

### C.     Initial Disclosures

The United States has previously disclosed a substantial number of documents on the "IPET website," https://ipet.wes.army.mil.  Pursuant to § IV(A)(1)(c) of CMO4, this disclosure satisfied the United States' mandatory initial disclosure under Federal Rule of Civil Procedure 26(a)(1)(B).

However, in an effort to obtain unitary exhibits, the United States will re-produce the documents housed on the IPET website if so requested.  Depending on the burden placed on the United States, this re-production will either be: (1) in the "traditional" format, where the United States chooses to re-produce all documents housed on the IPET website, or (2) via a "review and select", where the parties will review documents from the IPET website and indicate which documents they wish to have re-produced.  Any documents re-produced will be formatted according to the technical specification description attached hereto at Exhibit 1.  If technical issues arise which make this process infeasible, the parties agree to meet and confer in an effort to resolve this matter.  The United States will take best efforts to ensure that the IPET website will remain operational throughout the discovery period.

### IV.    THE PARTIES AGREE TO MEET AND CONFER TO DISCUSS ANY ISSUES NOT COVERED BY THIS DOCUMENT PRODUCTION PROTOCOL

While the parties envision this Document Production Protocol will control for the majority of document and ESI production, issues will inevitably arise that were not considered. Therefore, the parties agree to meet and confer in good faith to resolve any issues not considered

7

by this Document Production Protocol.  Failing to reach an agreement resolving these issues or

any other issues which the parties meet and confer to resolve, liaison counsel may file an

appropriate motion with the Court to obtain relief.


                        Respectfully submitted,

                        PETER D. KEISLER
                        Assistant Attorney General

                        C. FREDERICK BECKNER III
                        Deputy Assistant Attorney General

                        PHYLLIS J. PYLES
                        Director, Torts Branch

                        JAMES G. TOUHEY, JR.
                        Assistant Director, Torts Branch


                        JAMES F. MCCONNON, JR.
                        Trial Attorney
                        Torts Branch, Civil Division
                        U.S. Department of Justice
                        P.O. Box 888
                        Benjamin Franklin Station
                        Washington, D.C.  20044
                        (202) 353-2604
                        (202) 616-5200 (fax)
                        jim.mcconnon@usdoj.gov

                        PAUL LEVINE
                        Trial Attorney

                        Attorneys for Defendant United States

May 1, 2007

8

# EXHIBIT 1

**Document Production Protocol**

**May 1, 2007**

**Katrina Canal Breaches Consolidated Litigation**
**Eastern District of Louisiana**
**Consolidated Case No. 05-4182**

**The United States proposes the following protocol for the exchange of hard copy
and electronic material in the above referenced litigation:**

Processing:

- Paper Documents
  - Scanning
    - Black and white hard copy document will be scanned as single-page TIFF Group IV at 300 dpi.
    - Color documents will be scanned in JPEG format; color and black and white image files will be commingled in the order in which they were scanned.
    - Oversized documents (engineering drawings, for example) will be scanned for size where possible.
    - Where post-it notes are present on hard copies, pages will be scanned twice – with and without the notes. The page(s) will be scanned in sequence.
    - Cover pages and folders will be scanned to immediately precede the documents they contain.
  - OCR. OCR full-text will be provided for all hard copy documents. Depending on the quality of the original document, an effort will be made to provide the highest level of accuracy possible. Industry-standard software such as ScanSoft or Abby should be utilized to ensure that the highest quality OCR output is produced. "Machine-only" OCR will be provided with no manual cleanup.
  - Document Boundaries. Physical document boundaries indicating the "beginning" and "end" of a document will be provided in an image cross reference file with the scanned images. Physical document boundary codes will capture physical fasteners and groupings of documents as produced.
  - Document Numbering/Image Branding. Each document will be assigned a unique reference document number (DocID). The document number will consist of: agency code-container code-bates number, e.g. ACE-009-000000001. An electronic production log will be produced with scanned images to provide a decoded value for the agency code/container number to identify specific to the images produced: production source agency, division, office, location, custodian, original box or file drawer number, where this information is available in the source collection. The

sequential document number will be endorsed/branded onto the image and become a permanent part of the image, displayed in the lower right hand corner of an information channel appended to the document image so as to not to obscure any information on the document page. Confidentiality or other such endorsements will be branded on the left lower-hand. All numbers and endorsements will be a consistent font type and size.

- Electronically Stored Information (ESI).
  The United States envisions three categories of ESI production:
  - 1. Production of single-page TIFF Group IV images, metadata, OCR text, and associated load files. Files in this category include standard office automation file formats, e.g. Microsoft Word or WordPerfect documents. The parties agree to meet and confer regarding any documents they wish to have produced in native format.
  - 2. ESI that is not practical to convert to TIFF will be produced in native file format. Files in this category include spreadsheet file formats.
  - 3. Certain categories of ESI are structurally extremely complex and do not lend themselves to either native file or TIFF production. Examples include, but are not limited to, scheduling programs such as Primavera, accounting, construction management systems, contracting systems, and other databases such as MS Access, Oracle, Microsoft SQL Server, etc. For such systems, the USACE has a wide range of standard reports used in the normal course of business. The United States anticipates that the large majority of requests against these systems will be met by production of these reports. Reports will be provided electronically in a format suitable for loading to a litigation support database (TIFF, OCR text, metadata).
  - If a party or its experts lack access to proprietary software needed to review native files, the United States will meet and confer to obtain a resolution which allows that party to view the document (for example, provide a stand-alone workstation containing the necessary software to view the native file).
  - When practical, extracted, full-text will be provided for all material originating as ESI.
  - To the extent that it exists, metadata information will be provided identically for ESI produced as either native file or TIFF. See the "Production" section for the listing of metadata fields to be produced. It should be noted that not all metadata is available for all file types (the "recipients" metadata, for example, is specific to email and not available within a MS Word document). Metadata will be linked in a logical fashion.
  - Family relationships will be maintained among email and attachments by ensuring that attachments immediately follow their parent email, and setting the "begin attachment" and "end attachment" metadata fields appropriately.

2

- o All reasonable steps to reduce duplication will be taken. De-duplication will be performed within a custodian. The producing party will maintain references to all removed duplicate files.
- o ESI produced in native file format will be assigned a unique reference number (DocID) serving as a bates number equivalent. The file name will be composed of the DocID followed by the original file extension. The DocID format will follow the agreed-upon bates number format.
- o If a file to be produced in native file format needs redaction, the file will be rendered in TIFF, and the TIFF will be redacted and produced.
- o Document Numbering / Image Branding. All TIFF images will be branded with their corresponding bates number in the lower right-hand corner with a consistent font type and size. The number must not obscure any part of the underlying image.
- o Confidentiality or other such endorsements will be branded on the left lower-hand of the image with a consistent font type and size.

## Production

- • Document production will be completed by one of two processes:
  - o Traditional. United States identifies responsive, non privileged documents and these are provided to parties in scanned image format in response to discovery requests according to specification in the Document Management Protocol
  - o Review and Select. United States makes responsive paper documents available to parties to review. Written guidelines for a review and select operation will be agreed upon in advance of this operation. The United States will identify paper collections that are voluminous or otherwise appropriate for this review. Efforts will be made to provide inventories in advance to further cull the materials to be made available for review (for example SF-135s for potentially relevant accessions at Federal Records Centers). Facilities to accomplish reviews will be identified by the United States and monitors assigned to control the operation. Uniquely numbered boxes will be signed out and in during the review process. Parties will indicate selections via "Start" and "Stop" sheets. After selections for an entire box are designated, pages selected during the review will be scanned by the United States' litigation support vendor. Following a review of scanned images for privilege, non-privileged images will be produced according to deliverable specifications in the Document Management Protocol. The "review and select" process may also be modified and employed for review and selection of electronic files as feasible and agreed to by the parties. The United States' right to claim privilege for any document selected using this process is not waived.
  - o The parties agree to meet and confer to formulate the exact procedure for how the review and select procedure will take place. When using a review and select procedure, the United States' production requirement is satisfied when a notice of production is provided to liaison counsel that

review and select is set to commence. The availability of a review and
select procedure is subject to the scheduling constraints of Plaintiffs and
Defendants.

- Document production between parties shall be made using the appropriate
  electronic media (DVD, CD-ROM, etc.). The highest-capacity media will be
  used to minimize tracking overhead. Physical media will be labeled with the
  producing party, production date, media volume name, and document number
  range.
- The United States will produce media to liaison counsel. In the alternative,
  parties may request that the documents be turned over to an entity designated by
  the reviewing parties.
- The following data shall be provided for each deliverable:
    o Electronic images (TIFF and or JPEG). Image file names will composed
      of the document number and a four digit page number designation
      followed by the appropriate file extension (.TIF, or .JPG).
    o Electronic production log providing decoded value for the agency
      code/container number to identify specific to the images produced:
      production source agency, division, office, location, custodian, original
      box or file drawer number, where this information is available in the
      source collection.
    o Full-text (either OCR or text extracted from ESI) will be delivered at the
      document level. The full-text file name will be composed of the bates
      number of the associated document followed by a .TXT extension.
    o Electronic load files:
        ▪ A document cross-reference file will be provided with the
          following fields: the unique reference number (DocID), the first
          bates number, the last bates image number, and the document
          metadata. This file will be provided as a standard delimited ASCII
          text file.
        ▪ An image cross reference file will be provided with the following
          fields: the unique document ID (DocID), the image number of the
          image, a flag indicating the start of a document, file path of the
          corresponding image, and the file name of the corresponding
          image. The file will be provided as a standard ASCII text file.
- The following metadata for ESI will be provided: Start Bates, End Bates, Start
  Attachment, End Attachment, Source, Original file path, file name, and extension,
  File type / file extension, MD5 hash value, File Size in bytes, File Date / Time.

For e-mail: E-mail subject, Author, Recipients, From, To, Blind Copyees, Date /
Time sent, Date / Time received.

Where available, the following metadata will be extracted: Title, Creation date /
time, Last modification date/time, Last saved by name

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: LEVEE, MRGO, INSURANCE | § | |
| | § | |

## ORDER

Pursuant to Federal Rule of Civil Procedures 16, Federal Rule of Civil Procedure 26, and Case Management and Scheduling Order No. 4 ("CMO4") (Doc. Rec. No. 3299), the Court hereby enters the following order concerning privilege review.

In view of the large volume of documents and electronically stored information ("ESI") that may be produced during discovery in these cases, it is foreseeable that parties will inadvertently produce documents and ESI that are privileged or otherwise protected. To speed production, it is hereby ordered that the production of a document or ESI, in whole or in part, shall not constitute a waiver of any privilege or other protection as to any portion of that document or ESI, in this or in any other proceeding.

In addition, because the United States and other parties may be engaging in a review and select procedure, certain documents will be seen by the receiving party prior to a privilege review by the producing parties. Therefore, for purposes of this order, such viewing by the receiving party shall not be deemed a waiver of any privilege or protection.

A party who wishes to assert privilege or other protection as to a document or ESI produced shall "file a notice into the record identifying the document [or ESI] by its specific identifying characteristic, such as by Bates number." CMO4 § IV(C)(3)(e). This notice shall

contain information sufficient to identify: (1) the document or ESI, including information as necessary to locate the materials produced; and (2) the privilege or other protection that applies. Notice may be made orally on the record at a deposition or hearing, provided that it is subsequently confirmed in writing, per CMO4 § IV(C)(3)(e), within 10 days from the date of the hearing or receipt of the deposition transcript by the party asserting privilege or other protection.

Upon notice per CMO4 § IV(C)(3)(e) from the producing party pursuant to this order, the parties shall attempt to reach agreement regarding the assertion of privilege or protection that may apply to the document or ESI or any portion of the document or ESI. If the parties do not reach an agreement within 20 days after notice ("the meet and confer period"), the receiving party "is to immediately destroy the document [or ESI] received and all copies thereof, unless it received the original, in which case it shall return the original to the producing party." CMO4 § IV(C)(3)(e). "If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The producing party must preserve the information until the claim is resolved." Fed. R. Civ. P. 26(b)(5)(B).

Within 30 days of the expiration of the meet and confer period described herein, "[a]ny party seeking to contest the assertion of privilege [or protection] as to inadvertently produced documents [or ESI] must request in camera review of the document(s) [or ESI] in question by filing a motion that does not disclose the content of the document(s) [or ESI] over which the producing party has asserted privilege." CMO4 § IV(C)(3)(e). If the receiving party fails to file such a motion within the 30 days period, it waives any right to dispute the privilege or protection

with respect to that document or ESI unless good cause exists for the failure to file such a motion (for example, evidence not available at the time privilege was asserted demonstrates the document or ESI was not privileged).

At all times after the producing party provides the requisite notice, the receiving party shall not refer to the allegedly privileged or protected material in any manner, whether written or oral, in any interrogatory, request for admission, document request, interview, deposition, oral argument, trial or submission to the Court; nor will the receiving party disclose the substance of that material to any third party; however, the receiving party may reference the allegedly privileged or protected material to the Court in accordance with § IV(C)(3)(e) of CMO4.

A party may challenge the assertion of any privilege or other protection for any documents or ESI originally withheld from production, or asserted as an objection to any Interrogatory or interposed during any deposition by filing a timely motion to compel, provided, however, that within 90 days of the objection or withholding, the moving party notifies in writing the party claiming the privilege or protection that the assertion of a privilege or protection is being challenged. The notice required by this paragraph shall contain information sufficient to: (1) identify the document, ESI, interrogatory, or deposition at issue; (2) identify the privilege or protection that is being challenged; and (3) briefly explain the basis for the challenge. The parties shall in good faith attempt to resolve the matter. If the matter has not been resolved within 30 days from the receipt of the notice required by this paragraph, the party challenging the privilege or protection may file a motion to compel.

3

Nothing in this Order shall prohibit a party, consistent with the Federal Rule of Civil Procedure, the Local Rules, or Case Management Orders entered by the Court, from withholding from review and/or production any document or ESI covered by any privilege(s) or protection(s). To the extent this Order is inconsistent with any provision of a Case Management Order, this order controls.

New Orleans, Louisiana, this _____ day of May, 2007.


                                      JOSEPH C. WILKINSON, JR.
                                UNITED STATES MAGISTRATE JUDGE

4