UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 MAY 29  AM 11: 39

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| *IN RE:* KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * * * | CIVIL ACTION NO. 05-4182 |
| | * | SECTION: K (2) |
| | * | |
| PERTAINS TO: | * | JUDGE DUVAL |
| | * | |
| INSURANCE | * * | MAGISTRATE WILKINSON |
| *(Vidacovich,* 2:06-cv-4719*)* | * | |

*******************************************

**PLAINTIFFS CHESTER AND MURLEEN  VIDACOVICH'S OPPOSITION TO DEFENDANT HARTFORD'S MOTION TO DISMISS PLAINTIFF'S VALUED POLICY LAW CLAIM**

**COMES NOW**, Plaintiffs Chester and Murleen Vidacovich who submit this, their Opposition to Defendant's Motion.  For the reasons set forth below Hartford's Motion must be denied, to-wit:

**I.      Introduction**

Louisiana R.S. 22:695 ("VPL" or "§695" ) applies  to "any fire insurance policy."   The Hartford homeowners policy at issue here is a "fire insurance policy" under both Louisiana legislation and jurisprudence.  Thus the VPL applies to the Hartford homeowners policy at issue here.  Whatsmore, under both Louisiana and United States Fifth Circuit law, the Louisiana VPL applies to both

___ Fee_____
___ Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No_____

fire and non-fire perils.

The VPL is an outright adoption of the seminal Louisiana Supreme Court case of *Hart v. North British & Mercantile Ins. Co.*  Because the *Hart* case involved a total loss caused by a combination of covered and non-covered perils, the Louisiana legislature employs a uniquely Louisiana device, the conditional obligation with a suspensive condition.  The "in the case of a total loss" language in the VPL is the suspensive condition and the VPL itself is a conditional obligation as contemplated by the Louisiana Civil Code.

Continuing its adoption of *Hart*, the VPL expressly provides "Any clause, condition, or provision of a policy of fire insurance contrary to the provisions of this Section shall be null and void, and have no legal effect."  Here, the Hartford's "flood" and "water " exclusions are exactly the kind of provisions that have no legal effect and are null and void in this case.

**II.     Statement of the Facts and Case**

This is a Hurricane Katrina case.  Your plaintiffs are George and Murleen Vidacovich who were pre-Katrina residents of St. Bernard Parish, Louisiana.  On August 29, 2005, Hurricane Katrina rendered their home at 2209 Kingfisher Drive, St. Bernard, Louisiana a total loss.  Initially, the damage was the 100+ MPH winds and the windblown rains of Katrina.  Thereafter, water intrusion and the strong

onrush of water contributed to the damage.  Water stood several feet high in the

Vidacovich home for weeks.

Plaintiffs filed suit on August 26, 2006 in the Eastern District of Louisiana

with jurisdiction based upon diversity of citizenship.   Thereafter, Defendant

Hartford filed an answer and now a motion to dismiss.  Because said motion is

meritless under the facts and law of this case, plaintiffs file this opposition and

respectfully request this court deny Hartford's motion.

**III.      Standard for Rule 12 Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure is "viewed with disfavor and is rarely granted." *Collins v. Morgan*

*Stanley Dean Witter* 224 F.3d 496,498 (5th Cir. 2000).  *See also Ramming v.*

*United States*, 281 F.3d 158, 161-162 (5th Cir. 2001).  The complaint must be

liberally construed in favor of the plaintiff, and all facts pleaded in the complaint

taken as true. *See Hoffman v. Kramer*, 362 F.3d 308, 318 n.7 (5th Cir. 2004).  This

is a "strict standard of review" which requires courts to determine whether in the

light most favorable to the plaintiff and with every doubt resolved in his behalf,

the complaint states any valid claim for relief." *Beanal v. Freeport-McMoran, Inc.*

197 F.3d 161, 164 (5th Cir. 1999).  Put another way, a motion to dismiss may not

be granted unless "it appears beyond doubt that the plaintiff can prove  no set of

facts in support of his claim which would entitle him to relief." *Stripling v.*

*Jordan Prod. Co. L.L.C.*, 234 F.3d 863, 873 (5ᵗʰ Cir. 2000). *See also Lowery v.*

*Texas A & M Univ. Sys.*, 117 F.3d 242,247 (5ᵗʰ Cir. 1997); *Baker v. Putnam* , 75

F.3d 190, 196 (5ᵗʰ Cir. 1996).[1]

## IV.   Argument

### I.   HARTFORD'S ARGUMENTS ARE BASED ON A COMPLETE MISUNDERSTANDING OF WHAT A FIRE INSURANCE POLICY IS IN LOUISIANA:  BOTH LOUISIANA LAW AND THE UNITED STATES FIFTH CIRCUIT AGREE THAT HOMEOWNERS POLICIES ARE FIRE INSURANCE POLICIES AND APPLY IN FULL FORCE TO FIRE AND NON-FIRE PERILS.

Hartford's motion is predicated on their superficial analysis of the term "fire

insurance policy."  Apparently, Hartford believes that because the word "fire" is in

the title, that peril is the only one covered.  To that end, Hartford makes much of

the fact that the Louisiana VPL only applies to "any fire insurance policy."  *See*

*Defendant's Motion to Dismiss @ 6.*  However, instead of advancing Hartford's

---

[1]    In evaluating a motion to dismiss, generally a court considers only the legal sufficiency of a plaintiff's allegations and thus is confined to the face of the pleadings. *See In re Electronic Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp.2d 658,664 (E.D. Tex. 2004).  However, a court may consider documents referred to in a plaintiff's complaint and essential to the plaintiff's claim, as well as facts of which the court may take judicial notice. *See id.*  Public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice. *See EEOC v. E.I. DuPont de Nemours & Co.*, 2004 WL 2347559 at 1 (E.D. La. Oct. 18, 2004); *United States v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003); *Chapman v. San Francisco Newspaper Agency*, 2002 WL 31119944, at 2 (N.D. Cal. Sept. 20, 2002).

claims, this obvious fact compels relief for the plaintiffs because the VPL applies

in full force to all perils covered by "any fire insurance policy", which include the

"all-risk" homeowner's policy at issue here.

### A.   LOUISIANA LAW AND JURISPRUDENCE: A HOMEOWNERS POLICY IS A FIRE POLICY

In Louisiana, a homeowner's policy is a fire insurance policy. *Grice v.*

*Aetna Casualty and Surety Company*, 359 So.2d 1288 (La.1978)(holding that a

homeowners policy is part of the same contract as the standard fire policy). In

*Grice,* the Louisiana Supreme Court defines the homeowners policy as a fire

policy: " the homeowners policy is so essentially 'connected' to the standard fire

policy that it would not be coherent standing alone, because the form of the policy

and the coverages section contemplates both as part of one policy." *Grice* at

1291.

This "one policy" concept is reflected in the way the Louisiana Legislature

defines the homeowner's policy:

> (15) Homeowners' insurance. A policy of insurance on a one- or two family owner-occupied premises, which **combines fire** and allied lines **with any one or more perils** of casualty, liability, or other types of insurance **within one policy form at a single premium,** where the insurers liability for damages to the premises under said policy is determined with reference to the replacement value of the premises.

La.R.S. 22:6(15) (emphasis added.)

Thus, a homeowners policy is necessarily a policy of fire insurance.[2]   La.

R.S. 22:6(15); *Grice v. Aetna*, 359 So.2d 1288(La.1978).[3]

The fire insurance policy has evolved to a "fire and other perils" policy and

---

[2]         All modern day property insurance can be traced back to the Great Fire of
London which burned over 13,000 homes to the ground in 1666. *Appleman on
Insurance Law* (Matthew Bender and Company 2001).  In 1680, Nicholas Barbon
established England's first fire insurance company to insure brick and frame
homes. *Id.*  By 1732 the concept had spread to across the sea to Charleston, South
Carolina. *Id.*
         By the early 1940s, enterprising insurance companies in the United States
expanded the traditional "fire policies" to include more than the single peril of
fire.  In 1943, the State of New York established a "Standard Form Insurance
Policy" that specifically covered "fire and other perils" *See Appleman.*
         Louisiana followed suit, shortly thereafter, and adopted the New York
model of multi-peril insurance as the "fire insurance" in Louisiana. *P.O.P.
Construction Co. v. State Farm*, 328 So.2d 105 (La.1976)("Section 691 of
Louisiana Insurance Code is modeled after the New York Standard Fire Insurance
Policy of 1943")(Dennis,j.).  The Louisiana Legislature mandates that Section 691
be made part of every fire insurance policy issued in Louisiana. La.R.S. 22:691.2.
Thus all "fire insurance" policies in Louisiana cover fire and other perils.
         By the mid 1950s, spurred on by the profits and popularity of the multi-
peril fire policies, insurance policies grew into the modern homeowners policy.
*See Appleman.*  The "Homeowners Policy" takes the fire and other perils concept
a step further, typically including general liability coverage but, of course, still
covering the peril of fire and of course, falling comfortably within the ambit of the
Louisiana VPL. *Id.; See Also* La.R.S. 22:6(15).

[3]      La.R.S. 22:6(15) defined homeowners insurance for the first time by Acts 1999
no. 112 §1 eff. July 12, 1999.  Here the legislature merely codified the well settled
law in Louisiana , as interpreted by *Grice*.  This is significant in Louisiana as it is
a sign that the legislature has made a policy choice to raise the level of authority
of the holding in *Grice* from *jurisprudence constante* to that of " primary and
superior" See LSA C.C. arts. 1, 2; *Willis-Knighton Medical Center v. Caddo-
Shreveport Sales and Use Tax Commission*, 903 So.2d 1071, 1087 (La. 2005)("
Furthermore, we are a civilian jurisdiction in which legislation, the solemn
expression of legislative will, is the superior source of law.").  This action, unique
to Louisiana, has an even greater impact on this case because the Legislature also
adopts the holding of *Hart v. North British & Mercantile Ins. Co.*, 182 La. 551,
162 So.177 (La.1935) into the modern Louisiana Valued Policy law. *See infra
note 8;* pp. 14-20.

now to a homeowners policy that covers "fire and other allied lines with any one or more perils of casualty, liability, or other types of insurance within one policy form at a single premium." *See P.O.P. Construction Co. v. State Farm*, 328 So.2d 105 (La.1976); La R.S. 22:6(15).  Although homeowners policies have grown into omnibus, "all-risk", coverage insurance, its nucleus and identity is as a "fire policy."  Thus, there has never been a need for the Louisiana legislature to alter the original language from the VPL which Louisiana courts have found to be clear and unambiguous.  *See e.g. Farmers-Merchants Bank & Trust Company v. St. Katherine Insurance Company*, 693 So.2d 876, 881 (La App. 3rd 1997)("La R.S. 22:695 is clear and we will not engage in a search of legislative intent contrary to LSA C.C. art. 9 ").

If further divination is needed, the Louisiana Legislature recently enacted La. R.S. 22:696.  Section 696 only applies to a "fire insurance policy which provides coverage for damage to property." and requires insurers to disclose "whether an increased deductible is required for hurricane damage." *See* La.R.S. 22:696.  Reading this statute as the defendants would have it, i.e. fire insurance policies only cover fire damage, would make the entirety of §696 meaningless. However, reading §695 and §696 together, it is obvious that the Louisiana Legislature intended for the VPL to apply to multi-peril policies that cover, *inter*

7

*alia*, the peril of fire. Chief among these multi-peril fire policies are the

homeowner's policies, like the one at issue here.

### B.   UNITED STATES FIFTH CIRCUIT  JURISPRUDENCE: A HOMEOWNERS POLICY IS A FIRE POLICY

The United States Fifth Circuit has applied the Louisiana VPL to perils

other than fire, specifically to hurricane damage.  In *Real Asset Management v.*

*Lloyd's of London* 61 F3d 1223 (5th Cir. 1995) the Court found that the Louisiana

VPL applied where a building suffered wind damage from Hurricane Andrew and

was subsequently rendered a total loss because of the additional damage suffered

from exposure to sun and rain.  *Real Asset Management* at 1229.[4]  In its ruling,

the Fifth Circuit affirmed the District Court's award of the policy limits for a total

loss suffered where damages were from both covered and non-covered perils.

The holding of *Real Asset Management*  is entirely consistent with both the

plain language of the statute and the intent of the legislature as expressed in the

VPL.  Further, the holding reflects the fact that homeowners policies are fire

---

[4]         The Court remanded the case for a determination of whether or not the plaintiff had met his duty to mitigate damages. Every plaintiff has a  duty to mitigate damages and such a duty is outside the scope of the VPL which is a liquidated damages provision agreed upon by the parties.  In any event, *Real Asset Management* stands for the proposition that Louisiana  VPL applies where the initial damage to a structure was caused by a Hurricane and then days (or even months) later the structure was rendered a total loss by a combination of covered and  non-covered perils.

policies within the meaning of the VPL.  Importantly, *Real Asset Management* is

the law of the Fifth Circuit.   Thus, Hartford's arguments fail under United States

Fifth Circuit law, and their motion must be denied.

### C.    The VPL applies to Non-fire perils.

There is not one word of limiting or exclusionary language in the VPL that

would suggest that of all of the perils covered under a homeowner's policy that the

VPL should only apply to fire damage.  Other states have in fact limited the

application of their VPL  to the peril of fire.  *Compare*  La.R.S. 22: §695 *with* MS

Code § 83-13-5 ( " When buildings and structures are insured against loss by fire .

. . and . . . are totally destroyed by fire . . .").  The fact that the Louisiana

legislature included none of this limiting language , under the rules of statutory

construction, serve to show that the Louisiana VPL's  intended application is to all

of the perils covered under "any fire insurance policy."

Thus, the VPL applies to policies covering the peril of fire and, in full force,

to all of the perils covered under that fire insurance policy.   Both United States

and Louisiana courts have so held.  *See e.g. Holloway v. Liberty Mutual Fire Ins.*

*Co.*, 290 So.2d 791 (La. Ct. App. 1974)(holding that the VPL applies where

damage was caused by leaky pipe.) *See Also Caruso et al v. Allstate Insurance Co.*

*et al* (CA # 06-2613, E.D.La.)(February 26,2007)(Vance)[5].  Hartford's arguments

fail and their motion must be denied.

## II.   HARTFORD'S MOTION MUST BE DENIED AS A MATTER OF LAW: THEIR ARGUMENTS ARE BASED ON A COMPLETE MISUNDERSTANDING OF THE VALUED POLICY LAW IN LOUISIANA.

The Louisiana Valued Policy law is clear and unambiguous and must be

applied as written.  LSA C.C. art. 9; *See also Farmers-Merchants Bank & Trust*

*Company v. St. Katherine Insurance Company*, 693 So.2d 876, 881 (La App. 3rd

1997)("La R.S. 22:695 is clear and we will not engage in a search of legislative

intent contrary to LSA C.C. art. 9 ").  The court in *Farmers-Merchants Bank*

---

[5]     Hartford makes much of Judge Vance's opinion in *Chauvin et al v. State Farm et al*. 450 F. Supp. 2d 660 (E.D. La. 2006).  In *Chauvin*, the court held that "absurd consequences" would result if the VPL were applied to cases where "a few shingles" were damaged by a covered peril while the rest of the total loss was caused by a non-covered peril.  *See Chauvin* at 14.  While the correctness of that decision is being reviewed on appeal, it is important to note here that our case and that case are completely distinguishable because here, plaintiffs have alleged " a significant portion of the damage was caused by wind and windblown rain of the Hurricane" See Complaint at ¶6.  Furthermore Plaintiffs have alleged that the "efficient proximate cause" of the damage is a "covered peril". See Complaint at ¶8.  Thus Judge Vance's ruling in *Chauvin* is completely inapplicable.
      It is more productive to consider Judge Vance's more recent pronouncement on the VPL where the court finds that homeowner's policies are in fact "fire policies" as contemplated by the VPL. *Caruso et al. v. Allstate et al.* (E.D. La. 06-2613)(Vance)( February 26, 2007).( ". . . the VPL applies to any policy that qualifies as a ' fire insurance policy;, that is, it applies to any policy that includes the peril of fire and not exclusively to the peril of fire." *Caruso* at 14.  Judge Vance also held that the VPL applies to both fire and non-fire perils : " After considering the context and purpose of the VPL and the relevant case law interpreting the statute, the Court finds that the VPL applies to covered perils other than fire in a multi-peril policy that provides fire insurance.". *Id* at 13.

applied the "clear " VPL and said ". . . the public policy behind the Valued Policy Law is very strong and the statute is intended to be interpreted liberally in favor of the insured." *id.*   In fact, the plain language of the statute compels only one interpretation: that the full amount of the homeowners policy be paid as agreed upon liquidated damages "in the case of a total loss."   La.R.S. 22: §695.[6]

---

[6]   **§695.       Valued policy clause, exceptions**

A.     Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of a total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer.   Coverage may be voided under said contract in the event of criminal fault on the part of the insured or the assigns of the insured.

B.     Any clause, condition, or provision of a policy of fire insurance contrary to the provisions of this Section shall be null and void, and have no legal effect.   Nothing contained herein shall be construed to prevent any insurer from cancelling or reducing, as provided by law, the insurance on any property prior to damage or destruction.

C.     The liability of the insurer of a policy of fire insurance, in the event of total or partial loss, shall not exceed the insurable interest of the insured in the property unless otherwise provided for by law.   Nothing in this Section shall   be construed as to preclude the insurer from questioning or contesting the insurable interest of the insured.

D.     This Section shall only apply to policies issued or renewed after January 1, 1992, and shall not apply to a loss covered by a blanket-form policy of insurance nor to a loss covered by a builders risk policy of insurance.

11

A.   **The VPL is a bargained for conditional obligation with the suspensive condition, "in the case of a total loss" that requires the defendant insurers to pay liquidated damages as agreed upon to the homeowners who paid for this benefit.**

" A conditional obligation is one dependent on an uncertain event" La.C.C. art. 1767. The "total loss" of the covered property is that uncertain event. Since, the obligation is not enforceable until the "total loss" occurs, the condition is suspensive. *Id.* Plaintiffs are mindful that "Courts do not construe stipulations in a contract as suspensive conditions unless the express contract language compels such construction." *Hampton v. Hampton, Inc.*, 713 So.2d 1185 (La.1ˢᵗ Cir.1998).

The plain language of the VPL "compels such a construction." *Id.* The Legislature chose the words and all parties agreed that "in the case of a total loss" the insurers would pay the full value of the homeowners policy. There is only one way to read this VPL language: "If a total loss occurs, during the term of the policy, then insurers are obligated to pay the full amount of the homeowners policy, without deduction or offset, as agreed upon liquidated damages." This is a valid and fully enforceable suspensive condition contained in a valid, fully enforceable, bargained for conditional obligation. Seeing, the "in the case of a total loss" language in the correct light, it is even easier to recognize the absurdity of the

---

Added by Acts 1991, No. 850 § 1.  Amended by Acts 1995, No. 737, §1.

arguments presented by Hartford.  Conditional obligations containing suspensive

conditions do not require any causation elements.  Thus, there are none in the VPL.

**B.**     **The "total loss" can be caused by a combination of covered and non-covered perils, even where, as in some cases, there would not have been a total loss were in not for the damage from a non-covered peril.**

Hartford  trumpets the fact that some damage to the homes that suffered a

total loss was caused by "water" or "flood" each of which is an excluded peril

under the policy.  However, both the legislation and custom of Louisiana law

support the plaintiffs' contention that the total loss can be caused by some

combination of covered and non-covered perils and is no barrier to coverage under

the VPL.[7]

Nowhere in the statute can the word "cause," or any of its derivatives, be

---

[7]             This fact eliminates the need to "litigate percentages" in Louisiana.  For Louisianians who have already lost everything, the law spares them further suffering.  It would be absolutely impossible to look at a slab of concrete or a few broken boards and determine with any degree of accuracy what percentage of the damage was caused by which peril and in which order.

             Further, if the policy were as defendants would have it, some people may stay behind in Plaquemines and St. Bernard with video cameras and the like so that they can prove that the entire destruction was caused by a covered peril.  This would spell certain death in the event a Category 4 or 5 Hurricane made a direct hit.

             Because the VPL applies as plaintiffs claim, citizens are encouraged to evacuate when such storms are imminent.  This law saves lives.  It is good public policy.

found.  In fact the statute does not address causation in any way.  *See* La.R.S. 22:695.  Nowhere in the statute is there mention of "perils."  There is no requirement in the statute that the "total loss" be caused by a covered peril or a combination of covered perils.  The statute also does not limit coverage to any specific peril, such as fire.  Instead, it values "any covered loss of, or damage to" insured property "in the case of a total loss."

The reason that the VPL does not mention "causation" or "perils" in any way is because the VPL is a conditional obligation that is activated by the occurrence of an uncertain event, called a "suspensive condition," and not by damage caused by a specific peril or perils whether covered or not covered under the other terms of the policy.  *See* La. C.C. art. 1767.  As a matter of law, it is the *occurrence* of the suspensive condition that is important, not why or how the agreed upon suspensive condition occurred. *Id.*

C.    **The seminal case, which inspired the language of the VPL and is the longstanding custom and the predominant jurisprudence is a case where the total loss was caused by a combination of covered and non-covered perils.**

*Hart v. North British & Mercantile Ins. Co.*, 182 La. 551, 162 So.177 (La. 1935) is the seminal jurisprudential interpretation of the VPL, no other Louisiana

case contradicts it, and all subsequent cases support its reasoning.[8]  This long

standing line of jurisprudence, all in accord, is the very definition of *jurisprudence*

*constante,* or "custom," that is persuasive authority in Louisiana.  *See Willis-*

*Knighton Medical Center v. Caddo-Shreveport Sales and Use Tax Commission,*

903 So.2d 1071 (La. 2005)(citing *Doerr v. Mobil Oil Corp.*, 774 So.2d 119 (La.

2000))(". . . a series of adjudicated cases, all in accord, form the basis for

*jurisprudence constante"* ).[9]

---

[8]     *See e.g.  Southern Produce co. v. American Ins. Co. of Newark, N.J.*, 166 So.2d
59 (La. 4th Cir. 1964), writ denied 167 So.2d 675 (La.1964); *Nielsen v. Lafayette
Ins.Co.*, 300 So.2d 217 (La. 2nd Cir. 1974)(" 'Value Policy Clause' must be
regarded as part of any fire insurance policy  on immovables.").

[9]     In their memorandum, Hartford asserts other tortured interpretations of §695 and
cite the cases of *Consolidated Companies, Graham v. Milky Way Barge, and Turk*
as authority.  None of these cases are legislation and since none of them have been
adopted by any Louisiana appellate court, they can form no basis whatever for
*jurisprudence constante*.  As such, they are no authority  at all.

In fact, the Louisiana Supreme Court recently referred to several  Louisiana
appellate court adoptions of a U.S. Fifth Circuit notion of Louisiana substantive
law and referred to those cases as " a very slender reed with which to support the
great weight of an argument in favor of *jurisprudence constante"*.  *See Willis-
Knighton* at 1088.

The cases cited by Hartford are of far less significance than even a "slender reed."
*Consolidated Companies* is an erroneously decided §691 case.  *Milky Way Barge*
is an erroneously decided  §692 case.  Neither involve homeowners policies.
Neither have addressed 22:6(15) which defines homeowners policies as fire
policies.  Neither have addressed the superiority and primacy of legislation in
correctly applying Louisiana law.

Even though, there is no good reason to follow a wrongly decided case, the court
should be comforted to know that there is no controlling 5th Circuit case on point
that would mandate the wrong, dangerous, and absurd decision that Hartford

15

urges.

They cite *Graham v. Milky Way Barge*, 824 F.2d 376 (5th Cir. 1987) for the proposition that the law of the circuit is that the VPL only applies to fire losses. This is not the case at all.

First, *Graham* was a §692 case that did not involve a homeowners policy. The cases at bar all involve homeowners policies as defined by La.R.S. 22:6(15) which was enacted in 1999 and specifically defined homeowners policies as fire policies. Since the court did not have reason to pass on whether or not a homeowners policy was a fire policy and could not have had the benefit of La. R.S. 22:6(15), *Graham* simply does not control here.

Second, the court in *Graham* gave this as its reasoning: " this Court has not been able to find any Louisiana case law to the effect that La.R.S. 22:692 should be applied to any other than fire losses covered by a policy for insurance covering losses due to fire."

The Court's vain search for "case law" relating to §692 is also proof positive that it did not consider "the legislation" of §695 as would have been proper. Also, that opinion, which was wrongly decided even then, was decided prior to the legislative re-enactment of the VPL in 1992.

As discussed in this memorandum, the legislation as it stands today is almost certainly an outright adoption of the reasoning of the *Hart* case which describes the VPL as liquidated damages agreed upon by the parties and applies the VPL to a case where the total loss was caused by a combination of covered and specifically excluded perils. *Graham* has no analysis of *Hart*, has no findings relative to the "liquidated damages" clause, and thus does not pass on the essential issues of the cases at bar.

Specifically relating to the *Graham* court's concerns, La.R.S. 22:696 absolutely contemplates non-fire damage under a homeowners policy. Again the court did not have the benefit of this legislation.

Had the court properly analyzed the law, it may have reached a different result. It does not matter, for our purposes, however because *Graham* is inapposite. The VPL is part of every contract on immovables in Louisiana and this is so whether or not §691 or §692 apply. The Legislature raised *Hart* in 1992 to the primary and superior source of law. *Graham* does not contain this analysis. *Graham* was not presented with these facts. *Graham* in no way binds your honor and thankfully, its tainted reasoning is contained within itself and does not spill over

16

While the *Hart* case itself is "considerable  persuasive authority," its holding

and reasoning are much more significant because they have been raised to the level

of "primary and superior source of law" through legislative enactment. *See Doerr*

at 129. [10]

---

into the matters before the court.

Taking some convenient language from decisions not directly on point and claiming that this judicial pronouncement is somehow  the" law of the land" is what commoners do.  It is not how law is determined in Louisiana.  None of those other cases is legislation or custom.  None have been adopted by a single Louisiana Appellate Court.  They are in no way, the law of Louisiana and cannot be considered by this court when making an *Eerie* determination.

"prior errors in judicial interpretation do not 'insulate' the judge from returning to legislation itself to determine its correct meaning." Albert Tate, Jr.,  *Civilian Methodology in Louisiana* 44 Tul. L. Rev., 673, 678 (1970).

[10]      The language of the VPL is so congruent with the *Hart* case that it would seem to be an outright legislative adoption of the case.  This is significant in Louisiana as it is a sign that the legislature has made a choice to raise the level of authority of the language to that of " primary and superior" See LSA C.C. arts. 1, 2; *Willis-Knighton* at   1087 (" Furthermore, we are a civilian jurisdiction in which legislation, the solemn expression of legislative will, is the superior source of law.").

A comparison of the language of the statute and the *Hart* reasoning  reveals the following striking similarities, to-wit:

*Hart:*

"Must be regarded as part of the policy of insurance . . . agreed upon by the parties"

§695:

TITLE:         Value Policy Clause

In *Hart*, the destroyed home at issue was insured by a value fire policy at the time the building burned in 1932. *Hart* at 178. Significantly, while the building was unusable as a home after the fire, it still stood. Pursuant to a city ordinance, the City of Shreveport demolished and removed the remaining structure. *Id.* at 179. The Court determined that the damage to the former building was 75% fire and

---

*Hart*:

"the amount written [must be regarded]
as liquidated damages
agreed upon by the parties"

§695A:

"If the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy. . . the insurer shall compute and indemnify or compensate. . . at such valuation without deduction or offset"

*Hart*:

"And this is so, notwithstanding the policy is inconsistent therewith . . .  Any attempt to limit the insurer's liability in conflict with the valued policy statute cannot be of any avail"

§695B:

"Any clause, condition, or provision of a policy of fire insurance contrary to the provisions of this Section shall be null and void and have no legal effect."

The similarities are overwhelming and the intent of the legislature could not be more clear: if the suspensive condition of "in the case of a total loss" occurs, then the insurers are obligated to pay the homeowners the full value of their homeowners policies, without deduction or offset, as liquidated damages even if specifically excluded perils contributed to the total loss.

18

25% City of Shreveport pursuant to its civil order. *Id.*

The value fire insurance policy in *Hart* contained two provisions containing specific exclusions relative to the case: "This company shall not be liable for loss caused directly or indirectly . . . by order of any civil authority." *Id* at 180. And another exclusion: "This company shall not be liable . . . For loss occasioned by ordinance or law regulating construction or repair of building." *Id.*

The issue presented to the Supreme Court was almost identical to ours: a home insured by a valued fire insurance policy is destroyed by a combination of a covered peril and a peril that was specifically excluded by the insurance policy, i.e. action of a civil authority, in *two* separate provisions.[11]   After thoughtful consideration, the Louisiana Supreme Court held that the " . . . defendant company is liable for the face of the policy, whether any loss resulted directly or indirectly from the action of the civil authorities . . . " *Id.* At 181.[12]

In explaining their holding, the Court pronounced these most important

---

[11]   The only real difference between our case and *Hart* is that the non-covered peril in *Hart* may have been excluded by more policy provisions than the alleged non-covered peril in the instant case.

[12]   The Court also found that the 75% destruction of the building rendered the building a "constructive total loss" but cleared up all confusion, if there ever was any, as to the scope of the valued policy statute by its holding. The insurers owed the "face amount of the policy" even though damage was caused by the "civil authority", which is specifically excluded as a peril in the policy in two separate provisions. Thus the designation of "liquidated damages." *Hart* at 181.

19

words, to-wit:

> "The valued policy statute must be regarded as part of the policy of
> insurance, and the amount written in the policy as liquidated damages agreed
> upon by the parties, and this is so, notwithstanding the policy is inconsistent
> therewith . . . any attempt to limit the insurer's liability in conflict with the
> valued policy statute cannot be of any avail" *Id.*

Placed in the proper context, it becomes abundantly clear that the reason the

Legislature drafted the VPL with a suspensive condition is that in adopting the

reasoning of *Hart*, it is of no moment that perils specifically and explicitly

excluded in the insurance policy may have contributed to the total loss.  What is

important is that there is a loss covered under the terms of the policy and that a

total loss, in fact, occurred.  That is exactly what the plain language and meaning of

the VPL reflect and what the parties bargained for.  The VPL, with its roots in the

*Hart* case, is the law of Louisiana and it defeats all of Hartford's claims.

## III.   HARTFORD ERRONEOUSLY RELIES ON THE  FLOOD EXCLUSION IN THE POLICY

Throughout Hartford's Memorandum, they rely on their "flood" exclusion.

*See Defendant's Motion to Dismiss* at 3-4.[13]  Hartford's flood exclusion, while

otherwise valid, has no effect in this matter, where plaintiffs have alleged and have

---

[13]  This same exclusion was held to be a valid exclusion by this Honorable Court in the
*Vanderbrook* matter.  See *In re: Katrina Canal Breaches Consolidated Litigation* Pertains to
*Vanderbrook et al v. State Farm et al* (E.D. La. # 05-6323)(Doc # 1803, 11/27/2006)(Duval).
Plaintiffs agree 100% with the ruling of the court.  However, that opinion does not address the
issue presented here, Hartford's otherwise valid "flood" exclusion versus the VPL.

actually suffered, a total loss to their covered property, to-wit:

B.      **Any clause, condition, or provision of a policy of fire insurance
        contrary to the provisions of this Section shall be null and void,
        and have no legal effect.** Nothing contained herein shall be construed
        to prevent any insurer from cancelling or reducing, as provided by
        law, the insurance on any property prior to damage or destruction.

La.R.S. 22:695B (emphasis added).

This provision is important because the VPL is part of the Hartford insurance

policy. *See Hart* at 181 ( *"The valued policy statute must be regarded as part of the*

*policy of insurance") ; See Also Nielsen v. Lafayette Ins. Co.*, 300 So.2d 217 (La.

2nd Cir. 1974)(" 'Value Policy Clause' must be regarded as part of any fire

insurance policy on immovables."). While Hartford's "flood" or "water" exclusion

is otherwise valid, in the context of a total loss, where ,as here, plaintiffs have

suffered "any covered loss" as determined by the homeowners policy, all of

Hartford's "flood" or "water"  exclusions are "null and void and shall have no legal

effect." La.R.S. 22:695B.

Because plaintiffs have alleged, and actually suffered, a total loss, Hartford's

exclusions are null and void as a matter of law and Hartford cannot rely on them to

deny coverage  or dismiss plaintiff's claims.

## V.    Conclusion

For the reasons outlined above, Hartford's Motion to Dismiss Plaintiff's

Valued Policy Law Claim must be denied.

Respectfully Submitted:

Rémy Voisin Starns
Attorney At Law
533 Europe Street
Baton Rouge, La. 70802
Phone: (225) 381-3131
Fax:   (225) 612-6940
E-mail: rvs127@juno.com

Rémy Voisin Starns
La Bar # 26522
Attorney for Plaintiffs George and
Murleen Vidacovich

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re:  KATRINA CANAL BREACHES            *
CONSOLIDATED LITIGATION                   *    Case No. 05-4182
                                          *    Div. "K"
_____      *
                                          *    Judge Duval
PERTAINS TO:  INSURANCE                   *
      (Chester Vidacovich, No. 06-4719)   *
                                          *    Magistrate Wilkinson
                                          *

**************************************

## CERTIFICATE OF SERVICE

I do herby certify that I have on this *29ᵗʰ* day of *May, 2007*, served a copy of the

foregoing pleading on counsel for all parties to this proceeding, by mailing the same by United

States mail, properly addressed and first class postage prepaid.

_____
REMY VOISIN STARNS