UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES  CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | NO. 05-4182 "K" (2) |
| _____ | * | JUDGE DUVAL |
| PERTAINS TO:    ALL LEVEE CASES | * | MAGISTRATE WILKINSON |

\* \* \* \* \* \* \* \*

**JOINT REPLY MEMORANDUM OF PEREMPTED
CONTRACTORS, BOH BROS. CONSTRUCTION CO., LLC
AND B & K CONSTRUCTION COMPANY TO
PLAINTIFFS' OPPOSITION IN REGARD TO
MAY 1, 2007, SUPPLEMENTAL MOTION FILED
IN COMPLIANCE WITH MAGISTRATE WILKINSON'S
APRIL 17, 2007 ORDER**

**MAY IT PLEASE THE COURT:**

Defendants Boh Bros Construction Co., LLC (hereinafter "Boh") and B & K Construction Company (hereinafter "B & K") submit this reply memorandum to plaintiffs' Opposition memorandum (Doc. No. 4683, filed 5/15/07) which asserts that admiralty jurisdiction is proper in these levee breach suits and a theory of "federal maritime law preemption" of the Louisiana statutes applicable to contractors, specifically La. R.S. 9:2772, upon which this Court rendered its judgment (Doc. 2145) with reasons (Doc. 2142) on December 8, 2006.

Boh and the other "perempted Contractors" adopt by reference the argument against admiralty jurisdiction and maritime law preemption contained in the Reply Memorandum (Doc. No. 5380)

filed by the "perempted Engineers" (Eustis and Modjeski) in regard to the May 1, 2007 Supplemental Motion (Doc. No. 4118).

Before addressing plaintiffs' specific contentions raised in the Opposition, Boh and B & K note that plaintiffs' lead liaison counsel, Mr. Bruno, has stated in Court before Magistrate Wilkinson on both April 17, and May 24, 2007, that plaintiffs' contention of admiralty jurisdiction and maritime law preemption is urged in its Master Complaint only as to events regarding the dredging permit issued for the deepening of the 17th Street Canal and only against the contractor Boh, and the engineers Eustis Engineering and Modjeski and Masters. (And, presumably, the federal maritime jurisdiction is asserted against the defendant Corps in an attempt to avoid application of the flood immunity statute.) The plaintiffs do not assert the maritime law preemption argument against the pending motions by B & K Construction[1] and T. L. James[2], filed on February 1, 2007 (Doc. Nos. 2968, 2954).

In addition, it should be undisputed that the allegations asserted against Boh under such theory is that Boh acted as a "dredger" in regard to the time frame described in paragraphs 25 through 55 of the Superseding Master Consolidated Class Action Complaint (Doc. 3426).

---

[1] The Contractors also adopt by reference the Engineers' objection to untimely assertion in the Master Complaint of the admiralty jurisdiction claim, after the Case Management Order, pg. 13, had closed the pleadings for amendments. See Engineers Reply (Doc. No. 5380), page 3.

[2] Contractor T.L. James submits it is not involved in these allegations of plaintiffs. As noted in the Supplemental Motion filed on May 1, 2007: T.L. James has pending a Rule 12(b)(6) and Rule 56 Motion to Dismiss and/or for Summary Judgment (Doc. No. 2954) in one "Levee" case, *Creato Gordon* (06-5163). That is the only "Levee" suit in which T. L. James is named as a defendant. The Court's Minute Entry of April 17, 2007, ordering certain Contractors and Engineers to file a single supplemental motion to dismiss does not address T.L. James. Out of an abundance of caution, counsel for T.L. James notes no opposition was filed to T.L. James' motion to dismiss and T.L. James was not named as a defendant in the Superseding Master Consolidated Class Action Complaint. The only opposition to the February 1, 2007, Motions by Contractors were filed by the plaintiffs in *Pontchartrain Baptist* (06-6642) and *Cochran* (06-5785), untimely on March 15 and 14, respectively. Accordingly, defendant T.L. James believes it is not a party to the admiralty jurisdiction arguments asserted by plaintiffs.

The plaintiffs do <u>not</u> contend that federal maritime law preempts state law in regard to the construction and improvements of the levees of the 17th Street Canal, including the "I" wall and capping work.

Thus the alleged maritime jurisdiction claims against "Contractors" involved in "dredging" the 17th Street Canal boil down to Boh only, and only for the time period already reviewed by the court in the peremption motions, granted on December 8, 2006.

Plaintiffs' Opposition Memorandum (Doc. 4683) page 10, confirms this:

"The essence of the complaint against the defendants at issue, as well as against other defendants, is that negligent dredging created a deeper channel that allowed seepage of water to weaken the structural walls of the 17th Street Canal, thereby causing the failure that led to catastrophic flooding in New Orleans."

A) <u>Assuming Arguendo There is Maritime Jurisdiction, There Remains No Identification of Fault</u>

Assuming arguendo that maritime tort jurisdiction exists (premised on "dredging") in regard to the 17th Street Canal, the plaintiffs in these levee cases remain at the same point as the plaintiffs in the MRGO dredging cases: failure to allege that the "dredger" did anything other than follow the plans given him.

In this Court's judgment (Doc. No. 3365) rendered on March 9, 2007, page 8, the Court stated:

"Plaintiffs' counsel in the briefs and at oral argument could not point out any allegation in the lengthy complaint which alleged that the Dredging Defendants did not carry out the contracts at issue with due care."

Likewise, in regard to the deepening of the 17th Street drainage canal, in which a work platform with crane was used in the drainage ditch, there is nothing asserted by plaintiffs as to what Boh did negligently.

B)    No Admiralty Jurisdiction in 17th Street Canal

Boh and B & K adopt by reference the Reply Memorandum filed by the Engineers.

Particularly relevant is the Louisiana Supreme Court's analysis in *Board of Commissioners v. Baron*, 236 La. 846, 109 So.2d 441 (La. 1959), in which it held:

> "The Seventeenth Street Canal is not a navigable river or stream, but is a man made drainage ditch at least 3 miles long. It has its beginning near the rear of New Orleans waterworks plant in Orleans Parish and, after practically tracking the dividing line between Orleans and Jefferson Parishes, empties into Lake Pontchartrain."

The plaintiffs' allegations that the mooring of fishing boats in the northern end of the drainage ditch, where it opens into Lake Pontchartrain at "Bucktown," do not contain any contention that the area of the drainage ditch at the breach site was ever navigable, or that any of the area where the drainage ditch was deepened from Pump Station No. 6 to the Hammond Highway bridge was navigable. Rather the presence of the Bucktown fishing boat moorings is used in a bootstrap argument to turn an inaccessible drainage ditch into a navigable waterway all the way from Lake Pontchartrain to Pump Station No. 6.

The existence of accidents having occurred in the past on drainage ditches does not render it a navigable waterway for purposes of admiralty jurisdiction. As stated by the Supreme Court and noted by Professor Schoenbaum in his treatise, the modern justification for the admiralty jurisdiction of the federal courts is "the important national interest in uniformity of law and remedies for those facing the hazards of waterborne transportation." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 677, 102 S. Ct. 2654, 2659, 73 L. Ed 2d 300 (1982); 1. Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 3-3 at pg. 84 (4th Ed. 1994).

4

Navigability also determines the extent of federal regulatory jurisdiction under the Rivers and Harbors Act, 33 USC § 403, *Loving v. Alexander*, 745 F.2d 861 (4th Cir. 1984) and the Federal Clean Water Act, 33 USC § 1362(7), *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L. Ed. 2d 419 (1985). Navigability is also linked to the existence <u>vel non</u> of a public navigational servitude, both under federal law and state law, see e.g. *United States v. Sasser*, 967 F.2d 993 (4th Cir. 1992).

However, the focus must remain upon the definition of navigability for the purpose of <u>admiralty jurisdiction</u>, not for the purpose of federal regulatory jurisdiction or federal navigational servitude. In *Kaiser Aetna v. US*, 444 US 164, 173-174, 100 S. Ct. 383, 62 L. Ed. 2d 332 (1979), the Court cautioned about confusing the broader concepts of regulation and servitude with the narrower realm of admiralty jurisdiction. <u>See also</u>: *Sasser*, 967 F. 2d at 996. Navigability for the purpose of admiralty jurisdiction must focus upon <u>current</u> navigability and the use of interstate commercial marine activity.

As established in <u>The Daniel Ball</u>, cited by plaintiffs in their opposition memorandum at pg. 4, "they are navigable in fact <u>when they are used, or are susceptible of being used, in their ordinary condition</u>, as highways for commerce . . ." 77 U.S. at 563.

The use of a small barge as a work platform with a crane to deepen the drainage ditch during construction projects does not equate to use of the 17th Street Canal, *in its ordinary condition*, south of the Hammond Highway bridge, as a highway for commerce. The question as to whether or not the crane barge would qualify as a "vessel" under maritime law is irrelevant, the question is whether or not the work of deepening the 17th Street drainage ditch from Pump Station No. 6 to the

Hammond Highway bridge took place on a navigable waterway and is related to, or impacts, commercial marine activity.

The case law is consistent that where structures are present which prevent commercial marine traffic the waterbody is not within admiralty jurisdiction. In *Guillory v. Outboard Motor Corp.*, 956 F.2d 114, 115 (5th Cir. 1992) the Fifth Circuit held that Crooked Creek Reservoir was blocked by a dam and further that, prior to the dam being constructed, Crooked Creek was so shallow in depth and overgrown by brush that travel was difficult, if not impossible. In *Smith v. Hustler, Inc.*, 514 F.Supp. 1265, 1269-1270 (W.D. La. 1981) the Court held that the formerly navigable Lake Bistineau, on the boundary line between Bienville and Bossier parishes, was rendered non-navigable for commercial marine activity by construction of a dam.

In *Adams v. Montana Power Company*, 528 F.2d 437, 440 (9th Cir. 1975) the Ninth Circuit ruled that an obstructed portion of the Missouri River was not navigable; and in *Chapman v. U.S.*, 575 F.2d 147, 151 (7th Cir. 1978), the Seventh Circuit found the Kankakee River was not used for commerce.

In *Livingston v. U.S.,* 627 F.2d 165, 167-168 (8th Cir. 1980) the Court held that the Norfolk River was obstructed and incapable of commerce. The Eighth Circuit stated in *Livingston*, 627 F.2d 169-170, "Federal admiralty jurisdiction had its genesis in the felt need to provide a uniform body of law governing navigation and commercial activity. Admiralty law, as a consequence, is concerned almost exclusively with the special needs of the shipping industry . . . In our view the closing of water to commercial shipping should likewise have the effect of eliminating admiralty jurisdiction over them. In other words, the concept of navigability in admiralty is properly limited to describing a present capability of waters to maintain commercial shipping."

In *Edwards v. Hurtel*, 717 F.2d 1204 (8th Cir. 1983) the Eighth Circuit found Table Rock Lake not susceptible of use for commerce; and in *Land and Lake Tours, Inc. v. Lewis*, 738 F.2d , 961 (8th Cir. 1984) the Eighth Circuit held again that Lake Hamilton was obstructed by two dams and was not navigable in regard to admiralty jurisdiction. The Eighth Circuit explained, "Because present navigability in fact is the linchpin of admiralty jurisdiction, the district court's finding that Lake Hamilton was currently non-navigable arguably ousted the court of jurisdiction under 28 U.S.C. §1333"; however, the Eighth Circuit then held that federal jurisdiction remained under 28 U.S.C. §1331. Likewise, in *Dunham v. Demaine*, 559 F.Supp. 224 (E.D. Ark. 1983) Lake Hamilton was found non-navigable.

An accident which occurred in a marshy area "clearly incapable of supporting maritime commerce" could not fulfill the requirement of maritime locality. *Strother v. Bren Lynn Corp.*, 671 F.Supp. 1118 (W.D. La. 1987), *aff'd* 834 F.2d 1023 (5th Cir. 1987).

Even in cases involving the broader rights of navigational servitude, the Courts have not allowed "dredging" to turn a ditch into "navigable water." For instance in *Dardar v. Lafourche Realty, Inc.*,[3] commercial fishermen had attempted to assert the federal navigational servitude (which is broader than admiralty jurisdiction) and therefore, the right to use a system of navigable waters controlled by the plaintiff landowner through an arrangement of fences, gates, and levees. Much of the system involved pipeline canals.[4] The case had already been remanded by the Fifth Circuit to the District Court to determine applicability based on a single test: Whether "the landowner's

---

[3] 1994 WL 374309 (ED. La. 1994)

[4] *Dardar* *3-4.

7

dredging activity on any of the waterways" "initially rendered that body navigable."[5] The Court concluded that because the pipeline canals existed as a result of the dredging for the purposes of laying the pipeline, the federal navigational servitude could not be imposed on that waterway, even though navigable by the Plaintiffs' small recreational vessels. Consequently, the Plaintiffs had no right to use or navigate upon the landowner's pipeline canals.[6]

Similarly, in *Buckskin Hunting Club v. Bayard*, 868 So. 2d 266 (La. App. 3 Cir. 2004) the holder of a hunting lease sought a temporary restraining order and an injunction to prohibit hunters from re-entering the leased property. The property consisted of navigable rivers and man-made pipeline canals. The Court stated that the landowner must allow running water to pass through the canal but that this did not equate to the public having a navigational servitude.

Likewise, the U.S. Supreme Court has held that there is no right to fish in private canals on private property or to trespass to do so.[7] This remains the law in Louisiana regardless of "running water."[8]

The fact that construction activities take place in, and on, a drainage ditch is not indicative that it is a "navigable waterway" supporting commercial marine activity, just as it is established that oil and gas drilling activities do not represent true commercial marine activity, *Sohyde Drilling & Marine Company v. Coastal States Gas Producing Co.*, 644 F.2d 1132 (5th Cir. 1981), cert. den sub nom. *Valero Energy Corp. v. Sohyde Drilling & Workover, Inc.*, 454 U.S. 1081 (1981).

---

[5] *Dardar,* at *5, citing *Dardar v. Lafourche Realty Co.*, 985 F.2d 824, 826 (5th Cir. 1993).

[6] *Dardar* *5-6.

[7] *Vaughn v. Vermillion Corporation*, 444 U.S. 206, 208-209, 100 S.Ct. 399, 401 (1979).

[8] *Brown v. Rougon*, 552 So. 2d 1052, 1060 (La. App. 1st Cir. 1989); *Parm v. Shumate*, 2006 W.L. 2925373 (W.D. La. 10/11/06).

In *Sohyde*, the district court held that admiralty jurisdiction, under the Admiralty Extension Act, 460 U.S.C. App. §740 (now 46 USC § 30101), existed over a well blowout on a submersible drilling barge which had been towed into a dead-end, dredged canal slip (eight feet deep, 120 feet wide) located six miles south of Delcambre. In reversing the district court, the Fifth Circuit (per Judge Brown) observed, "As for the 'instrumentalities' involved in the case, they were essentially the same as those involved in a land-based work-over operation . . . None of the instrumentalities have a peculiarly salty flavor," (644 F.2d 1137) and then addressed the question of "maritime connexity." The Fifth Circuit held, "This case, which involves a well blowout in a dead-end canal slip in Louisiana is simply not of such a character that leaving the parties to pursue state law remedies would disturb the federal interest of maintaining the uniformity of maritime law. Under the circumstances, we believe that the interests of federal-state comity would be best served by having the dispute resolved under state law." 644 F.2d at 1138.

If in *Adams v. Montana Power Company*, 528 F.2d 437 (9th Cir. 1975) a portion of the Missouri River has been rendered non-navigable waters by man made obstructions, how could the 17th Street Canal south of the Hammond Highway bridge be deemed navigable water when portions of a major river on this continent are not?

C.     "False Conflict"

With no entrenched maritime law principles regarding the regulation of engineers, architects and contractors in the construction of immovables such as levees and drainage canals, the plaintiffs' assertion that there is a conflict between La. R.S. 9:2772 and the maritime law rule of "laches" is a false conflict.

9

First, "laches" is a rule of prescription or statute of limitations and not a rule of peremption or existence of a cause of action. Second, "laches" always requires that the federal court look to a state statute of limitations as to what constitutes inexcusable delay, *Compania Anonima Venezuelana de Navegaeion v. M/V Tiuna*, 1988 AMC 2621, 2630 (S.D. Fla. 1985), and "In the absence of special circumstances and adequate explanations for delaying beyond the period within which actions at law would be brought under the state statute of limitation, a court of equity will deny relief . . . If such absence of special circumstances appears clearly from the face of the libel, a court will be justified in declaring as a matter of law that the right has been barred by laches." *McDaniel v. Gulf & South American S.S. Co.*, 228 F.2d 189, 192 (5th Cir. 1955), cited in 1B *Benedict on Admiralty*, § 5 at 1-43 n.19 (7th Ed. 2006).

In this case there is no body of federal maritime law to substitute for the Louisiana regulatory laws controlling contractors who have constructed or improved immovables. Thus the advice of the Louisiana Supreme Court in *Jagers v. Royal Indemnity Co.*, 276 So. 2d 309, 311 (La. 1973) is apropos: "A false conflict occurs when it is found that only a single state has an interest in the application of its law, and that the other state has no interest in the application of its law in the case."

## CONCLUSION

The assertion of admiralty jurisdiction in regard to deepening of a drainage ditch which has not and cannot support maritime commercial activity is a red herring that should no longer consume the Court's time. It was raised by the O'Dwyer plaintiffs in the first peremption motion filed in June, 2006, and argued by the Pontchartrain Baptist Church plaintiffs in opposition to the peremption motions filed on February 1, 2007, and taken under submission by the Court. The Superseding Master Consolidated Class Action Complaint still fails to identify any action by a Contractor, as a

"dredger," which could constitute fault. But even if admiralty jurisdiction were found, and even if some action or omission constituting fault on the part of a Contractor in dredging was identified, the plaintiffs have still not shown why maritime law would not adopt the regulatory framework, including the peremption statute, La. R.S. 9:2272, provided by Louisiana law for contractors involved in the construction of immovables. Plaintiffs' siren call to this Court to create, without guideposts, a federal maritime law for drainage canal and levee construction should be rejected.

Respectfully Submitted,

DEUTSCH, KERRIGAN & STILES, L.L.P.

/s/ Terrence L. Brennan
TERRENCE L. BRENNAN (#3434)
WILLIAM E. WRIGHT (#8564)
KELLY E. THEARD (#29445)
755 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
**ATTORNEYS FOR:**
**BOH BROS.**
**DEFENDANT AND MOVER**

SIMON, PERAGINE, SMITH & REDFEARN, L.L.P.

/s/ Herman C. Hoffmann, Jr.
HERMAN C. HOFFMANN, JR., (#6899)
BETTY F. MULLIN (#9818)
1100 Poydras Street, 30th Floor
New Orleans, LA 70163-3000
Telephone: (504) 569-2030
Facsimile: (504) 569-2999
**ATTORNEYS FOR:**
**B & K CONSTRUCTION CO., INC.,**
**DEFENDANT AND MOVER**

KINGSMILL RIESS, L.L.C.

/s/ Michael R. C. Riess
MICHAEL R. C. RIESS, (#02073)
CHARLES B. COLVIN (#4352)
201 St. Charles Ave., Suite 3300
New Orleans, LA 70170-3300
Telephone: (504) 581-3300
Facsimile: (504) 581-3310
**ATTORNEYS FOR:**
**BOH BROS. CONSTRUCTION CO.,**
**DEFENDANT AND MOVER**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 29th day of May, 2007, I served a copy of the Notice of Hearing of the Supplemental Motion on counsel for all parties to this proceeding, by e-filing, e-mail or United States Mail, postage prepaid.

    /s/ Terrence L. Brennan
TERRENCE L. BRENNAN (#3434)
WILLIAM E. WRIGHT (#8564)
KELLY E. THEARD (#29445)
755 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
**ATTORNEYS FOR:**
**BOH BROS.**
**DEFENDANT AND MOVER**

#438031v2<DKS> -BohBrosJointReplyMemo