UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATRINA CANAL BREACHES § | | CIVIL ACTION |
| CONSOLIDATED LITIGATION § | | NO.   05-4182 "K"(2) |
| § | | JUDGE DUVAL |
| § | | MAG. WILKINSON |
| _____ § | | |
| § | | |
| PERTAINS TO: § | | |
| § | | |
| INSURANCE CASES § | | |
| _____ § | | |

### OPPOSITION TO STATE FARM'S MOTION TO QUASH DEPOSITION OF ALEXIS KING AND FOR PROTECTIVE ORDER

NOW INTO COURT, through undersigned counsel, come plaintiffs in the above referenced matters, who respectfully oppose the defendant State Farm Fire and Casualty Company's (hereinafter"State Farm") Motion to Quash the Deposition of Alexis King and for Protective Order, for the following reasons, to wit:

I.

### THE DEPOSITION OF ALEXIS KING IS AUTHORIZED

Federal Rules of Civil Procedure, Rule 26 (b)(1) holds in pertinent part:

> "b) Discovery Scope and Limits. Unless otherwise limited by order
> of the court in accordance with these rules, the scope of discovery
> is as follows:

1

> (1) In General. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

In the present case, the Court issued CMO No. 4 (Document 3299) on March 1, 2007 to govern the discovery and pre-trial proceedings under the Levee, MRGO and Insurance Group cases. CMO No. 4 provides:

> "Absent written agreement of the Liaison Counsel and any party to be deposed or an Order of the Court based on Motion for good cause shown or as provided elsewhere in this order, no fact deposition may be noticed before July 23, 2007. This provision does not apply to individual, non-Rule 30(b)(6), case specific discovery in non-putative class actions brought by individual insureds within the Insurance umbrella."

Subsequently on April 9, 2007, Plaintiffs' and Defendants' Liaison Counsel submitted a Joint Liaison Counsel Submission Re: Purported Common Insurance Discovery Protocol (Document 3687) to address "discovery relating to individual issues that is common to all insureds **of a particular insurance company**." [Emphasis added]. This joint protocol does not limit the commencement of discovery regarding individual issues to all insureds of State Farm. As such, Plaintiffs assert that the deposition is properly noticed.

## II.

### THE DEPOSITION TESTIMONY OF ALEXIS KING WILL DISCLOSE RELEVANT, NON-PRIVILEGED INFORMATION CONCERNING STATE FARM

As admitted by State Farm in their Motion, Ms. King is a State Farm Catastrophe Claim Team Manager. As a result of her actions in this position, Ms. King has become a target of the State of Mississippi Attorney General's investigation into improper Katrina claims handling practices, and has admitted to ongoing federal investigations, such that she has had to file an

affidavit to that effect in the United States District Court for the Southern District of Mississippi.

The actions that form the basis of this investigation are not unique; plaintiffs believe Ms. King has been involved in similar activities that have taken place in Oklahoma, Florida and now Mississippi. As such, it is likely that State Farm knew (or should have known) that one of its Catastrophe Claim Team Managers was engaging in such dubious conduct. State Farm has presented no testament, via affidavit or other competent evidence, that either addresses or refutes this multi-state correlation of State Farm's claims adjustment procedures.

Now as more information is revealed in the claims handling practice of catastrophes in those states, similar patterns of conduct are emerging in State Farm's claims handling practices in responding to Katrina claims in southern Louisiana. Such conduct is consistent with a pattern or routine practice of conduct by State Farm in its claims handling procedures that is "relevant to prove that the conduct of [State Farm] on a particular occasion was in conformity with the habit or routine practice." Federal Rules of Evidence, Rule 406. McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,, 894 F.2d 1482, (5th Cir. 1990).

One of the many inappropriate actions notated throughout State Farm's claims handling practices in responding to Katrina claims in southern Louisiana is the consistent under-evaluation of claims and underpayment to claimants. Because all of the Catastrophe Claims Team Managers would have had common superiors, plaintiffs are entitled to know who directed these activities. Additionally, plaintiffs are entitled to know the procedures by which the Claims Team Manager's performance was evaluated during the catastrophe response.

State Farm's catastrophe response obviously centers on the assignment of adjusters and engineers to evaluate claims. It is unlikely that such responses were formulated and designed by

the one Claims Team Manager assigned to southern Louisiana. There can be no doubt that the formulation and design of State Farm's catastrophe response is the result of decades of experience in handling catastrophe claims while still being able to post record profits. Ultimately, plaintiffs expect to examine whether the adjusters and engineers provided biased evaluations; and how this affected the profitability of company.

Further, plaintiffs are entitled to examine State Farm policies regarding conflicting reports, and its policy regarding the denial of claims. The claims handling procedures of State Farm are directly relevant to the manner in which loss adjustment was instituted and resolved. Ms. King likely has knowledge about how claims handling practices in Louisiana compare to her practices in Mississippi. Similarly, plaintiffs are entitled to know whether her counterparts in Louisiana took orders from the same supervisor(s) she did.

Plaintiffs are entitled to know whether the Catastrophe Claims Team Managers discussed overall Katrina strategy and how that strategy compared to catastrophe responses in other states. Based upon allegations that State Farm failed to adequately adjust the Katrina claims presented, it is material to the investigation of this allegation to determine the overall claims handling practices of the defendant; and then evaluate any deviations from the normal investigation process.

State Farm produced an affidavit of Michael Entwistle, one of its claims managers, to support its position that Ms. King does not have information relevant to the insurance plaintiffs' Louisiana Hurricane Katrina claims. However, Mr. Entwistle admits that Ms. King *may* have had communications with personnel assigned to catastrophe operations in Louisiana. Further, Mr. Entwistle's affidavit does not preclude the possibility that Ms. King was involved in the

adjustment of claims in Louisiana.

In particular, this affidavit bares the possibility that similar claims handling procedures were utilized in Louisiana as were previously used in Oklahoma, Florida and Mississippi. Plaintiffs are entitled to determine whether Ms. King trained claims adjusters who worked in Louisiana, or whether any of the third-party adjusters and engineers who were involved with Ms. King in her conduct that is part of the criminal investigations were assigned to handle claims in Louisiana.

State Farm argues that discovery in this litigation must be "limited to matters *relevant* to the claims and defenses related to insurance claims arising out of the *levee breaches* in the New Orleans metropolitan area" (State Farm Memorandum, p. 7 of 11), implying that persons other than Ms. King will be better sources of this information.  However, this does not render Ms. King's testimony irrelevant or undiscoverable.  In fact, just the opposite is true.  Plaintiffs have set forth a host of inquiries to be directed toward Ms. King which are probative of State Farm's Katrina claims handling.

Clearly, there are substantial issues that can be addressed by the taking of Ms. King's deposition testimony.  As such, the properly noticed deposition of Alexis King should proceed.

### III.

### A PROTECTIVE ORDER IS NOT WARRANTED

Under the Federal Rules of Civil Procedure, relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. Miller v. Doctor's General Hospital, 76 F.R.D. 136 (W.D.Okl.1977).  Discovery rules are to be accorded a broad and liberal treatment. Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13

L.Ed.2d 152 (1964); Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

    Rule 26( c) provides in pertinent part:

> "Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . . "

    Under the liberal discovery principles of the Federal Rules, a party is "required to carry a heavy burden of showing why discovery was denied." Blankenship v. Hearst Corp., 519 F.2d 418 (C.A.Cal. 1975); General Dynamics Corp. v. Selb Manufacturing Co., 481 F.2d 1204 (Eighth Cir. 1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974).

    "Good cause" within the meaning of Rule 26( c) contemplates a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." General Dynamics Corp., supra, at 1212. The party requesting a protective order must make a "specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." In re PE Corp. Sec. Litig., 221 F.R.D. 20, 26 (D.Conn.2003); Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 412 (M.D.N.C.1991); Gulf Oil v. Bernard, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

    It is very unusual for a court to prohibit the taking of a deposition altogether and "absent extraordinary circumstances, such an order would likely be in error." Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979).

    In the present case, the burden to preclude the taking of the Alexis King's deposition rests upon the shoulders of State Farm. As discussed above, State Farm has failed to articulate any "extraordinary circumstances" that fulfill this burden. Conversely, the plaintiffs have

demonstrated a substantial, relevant need to obtain Ms. King's deposition testimony.

Therefore, State Farm's Motion for Protective Order should be denied.

## IV.
## CONCLUSION

The deposition of Alexis King was properly noticed pursuant to the Federal Rules of Civil Procedure, and the Joint Liaison Counsel Submission Re: Purported Common Insurance Discovery Protocol. Despite this, State Farm now seeks to completely preclude the taking of this deposition.

In so moving, State Farm carries a heavy burden of showing why this discovery must be denied, and must demonstrate extraordinary circumstances to meet this burden. In it's Motion for Protective Order, State Farm does not allege that Ms. King's testimony is privileged, only that she does not have information relevant to the insurance plaintiffs' Louisiana Hurricane Katrina claims. Plaintiffs have set forth just a few circumstances which indicate that this assertion is highly unlikely.

In support of its Motion for Protective Order, State Farm produced only the affidavit of one of its managers, Michael Entwistle. Mr. Entwistle's affidavit clearly concedes that Ms. King may have had communications with State Farm personnel assigned to operations in Louisiana. However, this same affidavit also fails to refute the possibility that Ms. King was involved in the adjustment of claims in Louisiana.

Clearly, these comments do not constitute extraordinary circumstances. Therefore, State Farm's Motion for Protective Order must be denied.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**

    /s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS LIAISON COUNSEL
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775

**INSURANCE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

    s/ Calvin C. Fayard, Jr.
Calvin C. Fayard, Jr. (La. Bar #5486)
INSURANCE PSLC LIAISON COUNSEL
Fayard & Honeycutt, APLC
519 Florida Avenue, SW
Denham Springs, LA 70726
Tel: (225) 664-4193
Fax: (225) 664-6925
calvinfayard@fayardlaw.com

For

**INSURANCE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

John N. Ellison
James M. Garner
Joseph J. McKernan
Drew A. Ranier
Calvin C. Fayard, Jr.

## CERTIFICATE OF SERVICE

     I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 29th day of May, 2007.

                                              /s/ Joseph M. Bruno

                                              Joseph M. Bruno