UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:   KATRINA CANAL BREACHES
         CONSOLIDATED LITIGATION

CIVIL ACTION

NO.: 05-4182

SECTION "K" (2)

FILED IN :   **05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073, 06-6314,
05-6324, 05-6327, 05-6359, 06-0020, 06-1885, 06-0225, 06-0886,
06-11208, 06-2278, 06-2287, 06-2346, 06-062545, 06-3529, 06-4065,
06-4389, 06-4634, 06-4931, 06-5032, 06-5042, 06-5159, 06-5163,
06-5367, 06-5471, 06-5771, 06-5786, 06-5937, 06-7682, 07-0206,
07-0647, 07-0993, 07-1284, 07-1286, 07-1288, 07-1289**

PERTAINS TO: LEVEE

**OBJECTIONS AND RESPONSES OF THE BOARD OF COMMISSIONERS,
EAST JEFFERSON LEVEE DISTRICT TO THE LEVEE PLAINTIFFS'
FIRST SET OF REQUESTS FOR ADMISSION, INTERROGATORIES, AND
REQUESTS FOR PRODUCTION OF DOCUMENTS**

NOW INTO COURT, through undersigned counsel, comes Defendant, Board of

Commissioners, East Jefferson Levee District (hereinafter "EJLD"), which Objects and

Responds to the Levee Plaintiffs' First Set of Requests for Admissions, Interrogatories, and

Requests for Production of Documents, as follows:



EXHIBIT

A

## GENERAL OBJECTIONS

1.     EJLD objects to plaintiffs' Requests for Admission to the extent they request admission of facts about which EJLD lacks readily available information and/or documents. *Camp v. The Progressive Corp.*, __ F.Supp. ___ 2003 WL 21939778, p. 3 (E.D. La. 2003).

2.     EJLD objects to plaintiffs' Requests for Admission and Interrogatories to the extent the responses require legal conclusions. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001).

3.     EJLD objects to plaintiffs' Requests for Admission and Interrogatories to the extent the responses require disclosure of attorney work product.

4.     EJLD objects to plaintiffs' Requests for Admission and Interrogatories to the extent the responses require disclosure of the mental impressions of defense counsel.

5.     EJLD objects to plaintiffs' Requests for Admission and Interrogatories to the extent the responses require disclosure of information protected by the attorney-client privilege.

6.     EJLD objects to plaintiffs' Requests for Admissions, Interrogatories and Requests for Production to the extent they seek production of expert reports and/or opinions in advance of the deadline set forth in Case Management No. 4 Section II (D)(3).

## RESPONSES TO REQUEST FOR ADMISSIONS

### REQUEST FOR ADMISSION NO. 1:

Each class representative, including sub-class representatives. has submitted a Form 95 to the Corps.

### RESPONSE NO. 1:

ELJD has insufficient knowledge to either admit or deny Request for Admission No. 1. None of the Class Representatives have supplied EJLD with evidence supporting their contention that Form 95s were submitted. Thus, EJLD can neither admit nor deny Request for Admission No. 1.

### REQUEST FOR ADMISSION NO. 2:

The Form 95 submitted by each respective class and sub-class representative was legally sufficient.

### RESPONSE NO. 2:

ELJD has insufficient knowledge to either admit or deny Request for Admission No. 2. None of the class representatives have supplied EJLD with evidence supporting their contention that Form 95s were submitted. Thus, EJLD can neither admit nor deny Request for Admission No. 2.

**REQUEST FOR ADMISSION NO. 3:**

The Corps has not paid, settled, or otherwise resolved, in whole or in part, any claim set forth in any Form 95 submitted by any class or sub-class representative.

**RESPONSE NO. 3:**

EJLD has no knowledge as to whether the Corps has settled any claim set forth in any Form 95, much less a Form 95 submitted by a class or sub-class representative. Thus, EJLD can neither admit nor deny Request for Admission No. 3.

**REQUEST FOR ADMISSION NO. 4:**

No Defendant has paid, settled, or otherwise resolved, in whole or in part, any Hurricane Katrina-related claim asserted against it by any class or sub-class representative.

**RESPONSE NO. 4:**

EJLD admits that it has not paid, settled, or otherwise resolved, in whole or in part, any Hurricane Katrina-related claim asserted against it by any class or sub-class representative. Otherwise, EJLD has insufficient information with which to admit or deny Request for Admission No. 4.

**REQUEST FOR ADMISSION NO. 5:**

Each class and sub-class representative has satisfied all statutory conditions precedent to maintenance of an action pursuant to 28 U.S.C. § 2671, *et seq.* (Federal Tort Claims Act).

**RESPONSE NO. 5:**

EJLD has insufficient knowledge as to whether any class or sub-class representative has satisfied any or all statutory conditions precedent to maintenance of an action pursuant to 28 U.S.C. § 2671, *et seq.* (Federal Tort Claims Act).  Thus, EJLD can neither admit nor deny Request for Admission No. 5.

**REQUEST FOR ADMISSION NO. 6:**

Each class and sub-class representative suffered some damage as a result of inundation associated with Hurricane Katrina.

**RESPONSE NO. 6:**

EJLD objects to Request for Admission No. 6 on the grounds that the phrase "some damage" is vague and ambiguous.  Subject to its objection, EJLD states that it is reasonable to expect that each class and sub-class representative experienced "damage" in some sense of the word, although EJLD has no specific knowledge as to the "damage" or its cause.

**REQUEST FOR ADMISSION NO. 7:**

Each class and sub-class representative suffered damage to real property as a result of inundation associated with Hurricane Katrina.

**RESPONSE NO. 7:**

EJLD has no information with respect to damage to real property, if any, suffered by any class or sub-class representative from any cause. Thus, EJLD can neither admit nor deny Request for Admission No. 7.

**REQUEST FOR ADMISSION NO. 8:**

Each class and sub-class representative suffered damage to personal property as a result of inundation associated with Hurricane Katrina.

**RESPONSE NO. 8:**

EJLD has no information with respect to damage to personal property, if any, suffered by any class or sub-class representative from any cause. Thus, EJLD can neither admit nor deny Request for Admission No. 8.

**REQUEST FOR ADMISSION NO. 9:**

Members of the Class are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 9:**

Admitted.

REQUEST FOR ADMISSION NO. 10:

Members of Sub-Class One are so numerous that joinder of all such persons and entities in this action is impracticable.

RESPONSE NO. 10:

Admitted.

REQUEST FOR ADMISSION NO. 11:

Members of Sub-Class Two are so numerous that joinder of all such persons and entities in this action is impracticable.

RESPONSE NO. 11:

Admitted.

REQUEST FOR ADMISSION NO. 12:

Members of Sub-Class Three are so numerous that joinder of all such persons and entities in this action is impracticable.

RESPONSE NO. 12:

Admitted.

REQUEST FOR ADMISSION NO. 13:

Members of Sub-Class Four are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 13:**

    Admitted.

**REQUEST FOR ADMISSION NO. 14:**

    Members of Sub-Class Five are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 14:**

    Admitted.

**REQUEST FOR ADMISSION NO. 15:**

    Members of the Class are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 15:**

    Denied.  EJLD has no information suggesting that mere geographic location in and of itself makes joinder impracticable.

**REQUEST FOR ADMISSION NO. 15(sic):**

    Members of Sub-Class One are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 15 (sic):**

Denied.  EJLD has no information suggesting that mere geographic location in and of itself makes joinder impracticable.

**REQUEST FOR ADMISSION NO. 16:**

Members of Sub-Class Two are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 16:**

Denied.  EJLD has no information suggesting that mere geographic location in and of itself makes joinder impracticable.

**REQUEST FOR ADMISSION NO. 17:**

Members of Sub-Class Three are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 17:**

Denied.  EJLD has no information suggesting that mere geographic location in and of itself makes joinder impracticable.

**REQUEST FOR ADMISSION NO. 18:**

Members of Sub-Class Four are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 18:**

Denied. EJLD has no information suggesting that mere geographic location in and of itself makes joinder impracticable.

**REQUEST FOR ADMISSION NO. 19:**

Members of Sub-Class Five are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 19:**

Denied. EJLD has no information suggesting that mere geographic location in and of itself makes joinder impracticable.

**REQUEST FOR ADMISSION NO. 20:**

The filing of an individual civil action for Katrina-related property losses by each member of the Class would create the risk of inconsistent or varying adjudications among such actions.

**RESPONSE NO. 20:**

Denied. EJLD states that each individual claim for Katrina-related property losses turns on its own peculiar facts and circumstances, and must be considered on an individual basis to properly allocate fault, if any, and damages, if any.

## REQUEST FOR ADMISSION NO. 21:

The filing of an individual civil action for Katrina-related property losses by each member of the Class would create the risk of adjudications that would substantially impair or impede the ability of some class members to protect their interests.

## RESPONSE NO. 21:

Denied. A judgment in one individual civil action for Katrina-related property losses will not have preclusive effect on another individual's civil action for Katrina-related property losses. In fact, each individual's claim for Katrina-related property losses is unique in that each property's source/cause of damage differs from that of another.

## REQUEST FOR ADMISSION NO. 22:

As of August 29, 2005, the MRGO, the 17th Street Canal, the Orleans Canal, the London Avenue Canal, and the IHNC were "things" over which one or more of the Defendants had "custody" within the meaning of Louisiana Civil Code art. 2317.

## RESPONSE NO. 22:

EJLD denies that it had "custody" over the MRGO, the Orleans Canal, the London Avenue Canal, and the IHNC. EJLD's authority does not extend to the geographic areas occupied by those waterways. EJLD also denies that it had "custody" over the 17th Street Canal. EJLD states that it does not own the 17th Street Canal. EJLD further states its sole connection to

the 17th Street Canal is that it maintains the levee flood wall, and the berm on both sides of the flood wall, that line the west side of the 17th Street Canal north of Pumping Station 6.

## REQUEST FOR ADMISSION NO. 23:

The USA has not paid, settled, or otherwise resolved, in whole or in part, any claim set forth in the Form 95 submitted by any member of the Class.

## RESPONSE NO. 23:

EJLD has insufficient information with which to either admit or deny Request for Admission No. 23. Thus, EJLD can neither admit nor deny Request for Admission No. 23.

## REQUEST FOR ADMISSION NO. 24:

No Defendant has paid, settled, or otherwise resolved, in whole or in part, any Katrina-related claim asserted against it by any member of the Class.

## RESPONSE NO. 24:

EJLD has not paid, settled, or otherwise resolved, in whole or in part, any Katrina-related claim asserted against it by any member of the Class. Otherwise, EJLD has insufficient information and can neither admit nor deny Request for Admission No. 24.

## REQUEST FOR ADMISSION NO. 25:

Each member of the Class, as defined, has suffered some damage as a result of inundation associated with Hurricane Katrina.

**RESPONSE NO. 25:**

EJLD objects to Request for Admission No. 25 on the grounds that the phrase "some damage" is vague and ambiguous. Subject to its objection, EJLD states that it is reasonable to expect that many class members experienced "damage" in some sense of the word, although EJLD has no specific knowledge of the "damage" or its cause. EJLD admits that plaintiffs' proposed class definition limits class membership to persons and entities "who/which sustained damages as a result of inundation."

**REQUEST FOR ADMISSION NO. 26:**

Every member of Sub-Class One experienced initial inundation that had as its sources the 17th Street Canal and the Orleans Avenue Canal, or both.

**RESPONSE NO. 26:**

EJLD objects to Request for Admission No. 26 on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including precipitation) ...". Subject to its objection, EJLD denies Request for Admission No. 26 as written, and states that it expects that every member of Sub-Class One experienced "initial inundation" by means of precipitation, and not from waters that escaped either the 17th Street Canal or the Orleans Avenue Canal.

**REQUEST FOR ADMISSION NO. 27:**

Every member of Sub-Class Two experienced initial inundation that had as its sources the Orleans Avenue Canal and the London Avenue Canal, or both.

**RESPONSE NO. 27:**

EJLD objects to Request for Admission No. 27 on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including precipitation) ...".   Subject to its objection, EJLD denies Request for Admission No. 27 as written, and states that it expects that every member of Sub-Class Two experienced "initial inundation" by means of precipitation, and not from waters that escaped either the Orleans Avenue Canal or the London Avenue Canal.

**REQUEST FOR ADMISSION NO. 28:**

Every member of Sub-Class Three experienced initial inundation that had as its sources the London Avenue Canal and the IHNC, or both.

**RESPONSE NO. 28:**

EJLD objects to Request for Admission No. 28 on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but

possibly including precipitation) ...".    Subject to its objection, EJLD denies Request for Admission No. 28 as written, and states that it expects that every member of Sub-Class Three experienced "initial inundation" by means of precipitation, and not from waters that escaped either the London Avenue Canal or the IHNC.

## REQUEST FOR ADMISSION NO. 29:

Every member of Sub-Class Four experienced initial inundation that had as its sources the London Avenue Canal and the IHNC, or both.

## RESPONSE NO. 29:

EJLD objects to Request for Admission No. 29 on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including precipitation) ...".    Subject to its objection, EJLD denies Request for Admission No. 29 as written, and states that it expects that every member of Sub-Class Four experienced "initial inundation" by means of precipitation, and not from waters that escaped either the London Avenue Canal or the IHNC.

## REQUEST FOR ADMISSION NO. 30:

Every member of Sub-Class Five experienced initial inundation that had as its sources the 17th Street Canal, the Orleans Canal, the London Avenue Canal, and the IHNC, or any of them.

**RESPONSE NO. 30:**

EJLD objects to Request for Admission No. 30 on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including precipitation) ...".   Subject to its objection, EJLD denies Request for Admission No. 30 as written, and states that it expects that every member of Sub-Class Five experienced "initial inundation" by means of precipitation, and not from waters that escaped either the London Avenue Canal or the IHNC.

**REQUEST FOR ADMISSION NO. 31:**

The source of inundation affecting any member of the Class is a question that is common to every member of the Class.

**RESPONSE NO. 31:**

Denied.  Hurricane Katrina created numerous sources of inundation, as that term is defined by Plaintiffs.  The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 32:**

The source of inundation affecting any member of Sub-Class One is a question that is common to every member of that Sub-Class.

RESPONSE NO. 32:

Denied.   Hurricane Katrina created numerous sources of inundation, as that term is defined by Plaintiffs.  The effect each source of inundation had with respect to a particular class member varies case by case.

REQUEST FOR ADMISSION NO. 33:

The source of inundation affecting any member of Sub-Class Two is a question that is common to every member of that Sub-Class.

RESPONSE NO. 33:

Denied.   Hurricane Katrina created numerous sources of inundation, as that term is defined by Plaintiffs.  The effect each source of inundation had with respect to a particular class member varies case by case.

REQUEST FOR ADMISSION NO. 34:

The source of inundation affecting any member of Sub-Class Three is a question that is common to every member of that Sub-Class.

RESPONSE NO. 34:

Denied.   Hurricane Katrina created numerous sources of inundation, as that term is defined by Plaintiffs.  The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 35:**

The source of inundation affecting any member of Sub-Class Four is a question that is common to every member of that Sub-Class.

**RESPONSE NO. 35:**

Denied. Hurricane Katrina created numerous sources of inundation, as that term is defined by Plaintiffs. The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 36:**

The source of inundation affecting any member of Sub-Class Five is a question that is common to every member of that Sub-Class.

**RESPONSE NO. 36:**

Denied. Hurricane Katrina created numerous sources of inundation, as that term is defined by Plaintiffs. The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 37:**

Whether the Corps, Boh Bros, Eustis, EJLD, M&M, OLD, and SWB committed the negligent acts and omissions described in Count I of the Complaint is a question that is common to every member of Sub-Classes One, Two and Five.

RESPONSE NO. 37:

Denied. EJLD states that multiple breaches/overtopping, and the causes thereof, require separate and distinct fault allocations applicable to a determination of individual class members' sources and causes of damage.

REQUEST FOR ADMISSION NO. 38:

Whether the Corps, Boh Bros, Eustis, EJLD, Gulf Group, M&M, OLD, Pitman, and SWB committed the negligent acts and omissions described in Count II of the Complaint is a question that is common to every member of Sub-Classes One, Two and Five.

RESPONSE NO. 38:

Denied. EJLD states that multiple breaches/overtopping, and the causes thereof, require separate and distinct fault allocations applicable to a determination of individual class members' sources and causes of damage.

REQUEST FOR ADMISSION NO. 39:

Whether the Corps, B&K Construction, Burk-Kleinpeter, and Gotech committed the negligent acts and omissions described in Count III of the Complaint is a question that is common to every member of Sub-Classes One, Three and Five.

**RESPONSE NO. 39:**

Denied. EJLD states that multiple breaches/overtopping, and the causes thereof, require separate and distinct fault allocations applicable to a determination of individual class members' sources and causes of damage.

**REQUEST FOR ADMISSION NO. 40:**

Whether the Corps, OLD, and St. Paul committed the negligent acts and omissions described in Count IV of the Complaint is a question that is common to every member of Sub-Classes Four and Five.

**RESPONSE NO. 40:**

Denied. EJLD states that multiple breaches/overtopping, and the causes thereof, require separate and distinct fault allocations applicable to a determination of individual class members' sources and causes of damage.

**REQUEST FOR ADMISSION NO. 41:**

Whether the Corps, CSX, OLD, PBR, PNO, and St. Paul committed the negligent acts and omissions described in Count V of the Complaint is a question that is common to every member of Sub-Classes Four and Five.

**RESPONSE NO. 41:**

Denied. EJLD states that multiple breaches/overtopping, and the causes thereof, require separate and distinct fault allocations applicable to a determination of individual class members' sources and causes of damage.

**REQUEST FOR ADMISSION NO. 42:**

Whether the Defendants, individually and alone, or together and in concert, violated Louisiana Civil Code articles 667, 2315, 2316, 2317 and 2317.1, is a question that is common to every member of the Greater New Orleans Class.

**RESPONSE NO. 42:**

Denied. EJLD states that multiple breaches/overtopping, and the causes thereof, require separate and distinct fault allocations applicable to a determination of individual class members' sources and causes of damage.

**REQUEST FOR ADMISSION NO. 43:**

The attorneys (and their respective firms) appointed by the Court as Plaintiffs' Liaison Counsel and as members of the MRGO PSLC are competent to fairly and adequately protect the interests of the Greater New Orleans Class.

**RESPONSE NO. 43:**

EJLD admits that appointed class counsel and their firms are competent. However, in all other respects this request is denied because these same counsel represent plaintiffs in competing and over-lapping class and other actions that present conflicts of interests. These conflicts are particularly acute in these circumstances where the putative class asserts claims against defendants with limited assets. Moreover, given the size and diversity of interests within the putative class, EJLD expects conflicts within the class to emerge thus preventing Plaintiffs' Liaison Counsel, or anyone else, from effectively representing the class as a whole.

**REQUEST FOR ADMISSION NO. 44:**

Inundation of the properties of the Class substantially contributed to the breakdown in social structure and loss of cultural heritage in the New Orleans area encompassed by the Class definition, and caused consequent damages to the Class.

**RESPONSE NO. 44:**

EJLD objects to Request for Admission No. 44, on the grounds that it is overly broad, vague and ambiguous. EJLD admits that Hurricane Katrina adversely affected the New Orleans Metropolitan area.

**REQUEST FOR ADMISSION NO. 45:**

Inundation of the properties of the Class substantially contributed to alteration of the physical, economic, political, social, and psychological character of the New Orleans area encompassed by the Class definition, and caused consequent damages to the Class.

**RESPONSE NO. 45:**

EJLD objects to Request for Admission No. 44, on the grounds that it is overly broad, vague and ambiguous. EJLD admits that Hurricane Katrina adversely affected the New Orleans Metropolitan area.

**REQUEST FOR ADMISSION NO. 46:**

The causes of the classwide losses suffered by members of the Class and Five Sub-Classes are susceptible to analysis and determination on a classwide basis.

**RESPONSE NO. 46:**

EJLD objects to the phrase "classwide losses" on the grounds that it is vague and ambiguous.  Subject to its objection, Request for Admission No. 46 is denied.  EJLD further states that class members' damages, if any, require individualized analysis and calculation.

**REQUEST FOR ADMISSION NO. 47:**

The causes of the individual property losses suffered by members of the Class and the five Sub-Classes are susceptible to proof by way of a class trial.

**RESPONSE NO. 47:**

Denied. EJLD states that the sources of potential damage to class members are multiple and varied such that their affect on class members differs individual by individual.

**REQUEST FOR ADMISSION NO. 48:**

The source of inundation affecting any given property encompassed by the Class or five Sub-Classes is susceptible to analysis and determination by expert witnesses.

**RESPONSE NO. 48:**

Denied as written. However, EJLD admits that, as to any individual piece of property, a qualified expert or group of experts can estimate the sources of inundation (as that term is defined by plaintiffs herein) that affected the property.

**REQUEST FOR ADMISSION NO. 49:**

The USA has undertaken efforts to analyze and determine the source or sources of inundation affecting properties encompassed by the Class and five Sub-Classes.

**RESPONSE NO. 49:**

Admitted.

\* \* \* \* \*

## LEVEE CLASS PLAINTIFFS' FIRST INTERROGATORIES

### INTERROGATORY NO. 1:

For each request for admission you denied, or for which you qualified your answer, please provide the following: (I) a list of all persons, by name and title, you contacted in formulating your response; (ii) a description of the information they provided to you in formulating your response; and (iii) an explanation of the basis for your denial or qualification of your response.

### ANSWER TO INTERROGATORY NO. 1:

EJLD objects to Interrogatory No. 1, on the grounds that it requires disclosure of information protected by the attorney-client privilege and/or the work product of counsel for EJLD. Subject to its objection, EJLD states that, with respect to some Requests for Admission that were denied, or denied in part, Fran Campbell, Executive Director of East Jefferson Levee District, provided information in connection with the response. Otherwise, counsel for EJLD prepared responses to these Requests for Admissions, and in some instances, relied upon public information previously identified in exhibit lists filed by EJLD and others, and upon consultation with experts identified in witness lists filed by EJLD and others. The experts include, Dr. Paul Kuhlmeier, Greg Rigamer, Michael Truax, Dan Milham, and Dr. James Richardson.

**INTERROGATORY NO. 2:**

If you contend that the Fed. R. Civ. P. 23(a) numerosity requirement is not satisfied as to the Class and/or any of its five proposed sub-classes, please **(I)** set forth every fact you believe supports your contention, and **(ii)** identify every witness you believe possesses knowledge of such facts, including which such facts each witness possesses. If you agree that the numerosity requirement is satisfied, please say so.

**ANSWER TO INTERROGATORY NO. 2:**

Not applicable.  See EJLD's Responses to Requests for Admission.

**INTERROGATORY NO. 3:**

If you contend that any one or all of the respective claims set forth by the Class Representatives fails to satisfy the Fed. R. Civ. P. 23(a) typicality requirement with respect to the Class, please **(I)** set forth every fact you believe supports your contention, and **(ii)** identify every witness you believe possesses knowledge of such facts, including which such facts each witness possesses. If you agree that the class representatives satisfy the typicality requirement, please say so.

**ANSWER TO INTERROGATORY NO. 3:**

EJLD contests whether the class representatives' claims satisfy the "typicality" requirement.

(1) and (2)   EJLD believes that the sources of the inundation for each class member, the parties or persons responsible for the sources, and how those various sources combined to cause inundation, are different across the proposed class are.  Moreover, whether the fault, if any, of any defendant caused every proposed class member's property damages or losses, whether the fault combined with the fault, if any, of other defendants or persons to cause those damages, and in what combinations the fault of defendants and others may have combined to cause property damages are factors that are not known to EJLD at this time.  EJLD has consulted with expert witnesses, including Dr. Paul Kuhlmeier, Dan Milham, and Greg Rigamer with respect to these issues, but they have not completed their analysis nor issued reports.  EJLD will supplement this response with specific facts and opinions once Dr. Kuhlmeier completes his analysis and report.

Additionally, EJLD believes that the damages sustained by each class representative are unique, and whether property damage or personal injury, will require individualized proof and analysis.  EJLD will have additional information with which to supplemental this response once the class representative depositions have been completed.  Finally, EJLD has consulted with an expert witnesses, Michael Truax and Dr. James Richardson, with respect to the analysis and evaluation of property damages likely sustained by the class representatives, but neither Mr. Truax nor Dr. Richardson have not completed their analysis nor issued a report.  EJLD will

supplement this response with specific facts and opinions once Mr. Truax completes his analysis and report.

Further, EJLD will supplement this response upon receipt of further information relevant to the class representatives is received during the course of discovery and the litigation.

**INTERROGATORY NO. 4:**

If you contend that the Class Representatives, or any of them, will not fairly and adequately protect the interests of the Class, please (I) set forth every fact you believe supports your contention, and (ii) identify every witness you believe possesses knowledge of such facts, including which such facts each witness possesses.

**ANSWER TO INTERROGATORY NO. 4:**

EJLD contests whether the class representatives' claims satisfy the "adequacy" requirement. EJLD states that the plaintiffs' claims are varied. Some timely filed administrative claims, and some did not. Some sustained personal injury and some did not. Damage due to wind and rain, as opposed to flood, varies from class member to class member. Damage due to flying debris, or to falling trees, varies class member to class member. Damage due to power loss caused by wind, varies class member to class member. EJLD reserves the right to supplement this response subject to information learned through the discovery process or through other sources.

INTERROGATORY NO. 5:

Based upon the claims forms and/or all other information received to date, including the Complaint, please identify any defense you might set forth in response to any class member's claim against you that you would not set forth in any class representative's claim against you.  If the answer is "none known at this time" please say so.

ANSWER TO INTERROGATORY NO. 5:

EJLD has received no claim forms, nor has there been an opportunity to depose the plaintiffs.  Further, plaintiffs have not responded to defendants written discovery.  To the extent counsel for EJLD has commenced consideration of potential defenses to the plaintiffs' claims, such information is protected by the attorney-client privilege and constitutes attorney-work product and mental impressions.

INTERROGATORY NO. 6:

Do you agree that there are some questions of law or fact common to the members Class, including the class representatives?

ANSWER TO INTERROGATORY NO. 6:

There are no common issues of law or fact the determination of which will resolve disputes on a class-wide basis.

INTERROGATORY NO. 7:

Based upon the claims forms and/or all other information received to date, including the Complaint, please (i) identify all questions of law or fact affecting individual members of the Class that you contend would not also affect the Class Representatives and Sub-Class Representatives, and (ii) state whether and in what way you contend that such individual questions predominate over questions that are common to the class members and the class representatives.

ANSWER TO INTERROGATORY NO. 7:

EJLD has not been provided with claim forms. However, EJLD expects to contend that individual issues predominate over common issues. EJLD states that the sources of water affecting each class members' properties are varied, and that fault allocations with respect to each source will differ. Further, EJLD expects that the contributions of wind/rain versus flood will vary from property to property. The valuation of each property requires an individualized analysis, and is not subject to formulaic calculation. Business interruption claims also require individualized analysis. EJLD reserves the right to supplement this response at a later date.

INTERROGATORY NO. 8:

Do you agree that a class action trial is the superior method for the fair and efficient adjudication of the controversies raised in this action vis-a-vis the members of the Class and five

Sub-Classes? If not, please (I) state in detail why you disagree, and (ii) describe any and every procedure you contend would be superior, including in your description the reasons it would be superior.

## ANSWER TO INTERROGATORY NO. 8:

No. For the reasons outlined in Answer to Interrogatory Nos. 3 and 4, specifically that the typicality and adequacy prongs are not met due to the various potential causes of the plaintiffs' damages, the fault, if any, attributable to any defendant or any other person or entity, and the overall need of individualized proof of damages. Moreover, common issues do not predominate over issues requiring individualized proof. EJLD states that class certification will not avoid multiple trials to determine liability and damages regarding multiple class members. EJLD contends that the manageability issues inherent in such multiple trials should preclude class certification.

## INTERROGATORY NO. 9:

Please identify and describe in detail every difficulty you contend is likely to be encountered in the management of the class action proposed by the Complaint.

ANSWER TO INTERROGATORY NO. 9:

Objection.   This Interrogatory is premature, vague, ambiguous, overly broad and burdensome.   EJLD cannot possibly know, nor even anticipate, every difficulty that may be encountered.  Subject to its objection, EJLD identifies the following potential difficulties:

(1)    Multiple sources of damage, and the necessity of multiple fault allocations;

(2)    Multiple causes of damage from multiple sources;

(3)    Individual factors regarding each class members' claimed damages require individual analysis;

(4)    Multiple categories of claimed damages sustained by class members;

(5)    The lack of mathematical or formulaic calculations applicable to determining class members' damages; and

(6)    EJLD reserves its rights to supplement and amend this Interrogatory response either by amending its response herein, or by other methods consistent with Case Management Order No. 4.

INTERROGATORY NO. 10:

Please state the total number of Form 95s submitted which forms set forth claims by Louisiana citizens against the United States Army Corps of Engineers for losses arising in connection with Hurricane Katrina.

ANSWER TO INTERROGATORY NO. 10:

EJLD does not know the total number of Form 95s submitted by Louisiana citizens against the USACE, nor does it have information at is disposal to make that determination.

INTERROGATORY NO. 11:

Please describe in detail the ways in which the information contained in the Form 95s described in the preceding interrogatory has been compiled and collated by the USA, e.g., by ZIP code, by damage type, by potential source of inundation, etc., including each format in which such compiled and/or collated information exists, e.g., database, spreadsheet, physical repository, etc.

ANSWER TO INTERROGATORY NO. 11:

Unknown.

INTERROGATORY NO. 12:

Please describe the results/conclusions of the reports of all efforts to date undertaken by you to estimate the number of persons who sustained damages or incurred losses in the geographical area covered by the Class and its five Sub-Classes.

ANSWER TO INTERROGATORY NO. 12:

EJLD has not made an effort to determine or estimate the number of persons who may have sustained damages or incurred losses related to Hurricane Katrina in any geographic area.

**INTERROGATORY NO. 13:**

Please describe in detail each source of inundation and the manner in which you contend the inundation occurred with respect to the geographical area encompassed by the five Sub-Classes (e.g., flooded solely by one water source, flooded by commingled sources).

**ANSWER TO INTERROGATORY NO. 13:**

EJLD has consulted, and will continue to consult, with experts relative to the issues described in this Interrogatory. Those experts include Dr. Paul Kuhlmeier, Mr. Greg Rigamer, and Mr. Dan Milham. EJLD may retain additional experts. Expert reports will be provided as required by Case Management Order No. 4.

**INTERROGATORY NO. 14 (misnumbered 15):**

Please identify by name, employer, position, and current professional address each person who has assisted in the formulation of responses to any of your responses to each part or sub-part of the Levee Class Plaintiffs' First Set of Requests for Admission, Interrogatories, and Requests for Production.

**ANSWER TO INTERROGATORY NO. 14 (misnumbered 15):**

Fran Campbell, Executive Director, East Jefferson Levee District, in addition to the experts referenced above.

\* \* \* \* \*

## LEVEE CLASS PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

Please produce a copy of every Form 95 that sets forth a claim by any Louisiana citizens against the United States Army Corps of Engineers for losses arising in connection with Hurricane Katrina.

### RESPONSE NO. 1:

EJLD does not possess, nor does it control, any Form 95.

### REQUEST FOR PRODUCTION NO. 2:

Please produce a copy of all electronic files, databases, spreadsheets or other documents that sort, collate, organize, categorize, or deal in some similar fashion with the Form 95s, or any of them, identified in the preceding request and/or any information contained in such Form 95s.

### RESPONSE NO. 2:

EJLD does not possess or control electronic files, databases, spreadsheets or other documents that sort, collate, organize, categorize, or deal in some similar fashion with Form 95.

### REQUEST FOR PRODUCTION NO. 3:

Please produce a copy of each and every document that contains or reflects any estimate or precise calculation of the total dollar value of all claims asserted against the USA by way of the Form 95s identified in Request No. 1.

**RESPONSE NO. 3:**

EJLD does not possess or control the documents described in Request for Production No.

3.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce a copy of each and every document that you believe supports your answers to Interrogatories No. 2-4 above, or any of them.

**RESPONSE NO. 4:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4. In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce a copy of every document consulted, obtained, or generated in connection with any activities described in response to Interrogatory No. 11 above.

**RESPONSE NO. 5:**

EJLD does not possess or control such documents.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce a copy of every document consulted, obtained, or generated in connection with any activities described in response to Interrogatory No. 12 above.

**RESPONSE NO. 6:**

  EJLD does not possess or control such documents.

**REQUEST FOR PRODUCTION NO. 7:**

  Please produce a copy of each and every document that would establish the number of persons residing on August 28, 2005, in the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 7:**

  EJLD does not possess or control such documents.

**REQUEST FOR PRODUCTION NO. 8:**

  Please produce a copy of each and every document that would establish the number of persons residing in the geographical area encompassed by the Class definition, or any Sub-Class of it, since August 29, 2005.

**RESPONSE NO. 8:**

  EJLD does not possess or control such documents.

**REQUEST FOR PRODUCTION NO. 9:**

  Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the source of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 9:**

      EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4. In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 10:**

      Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the cause of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 10:**

      EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4. In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 11:**

      Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the process of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 11:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4. In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the timing of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 12:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4. In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the depth of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 13**:

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4.  In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 14**:

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the duration of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 14**:

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4.  In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 15**:

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the receding of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 15:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4.  In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the timing, duration, and depth of precipitation during the period August 27, 2005, and September 1, 2005, within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 16:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4.  In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS, MORTON
PFISTER & WEINSTOCK**


/s/ Gary M. Zwain
_____
LAWRENCE J. DUPLASS, (#5199)
GARY M. ZWAIN, (#13809)
JOSEPH E. BEARDEN, III (#26188)
Three Lakeway Center, Suite 2900
3838 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone No.: (504) 832-3700
Facsimile No.: (504) 837-3119
*Attorneys for Defendant, Board of Commissioners,
East Jefferson Levee District*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on the

following counsel of record via hand delivery, facsimile transmission, electronic transmission

and/or U. S. Mail, First Class postage prepaid, this 30th day of April, 2007.


/s/ Gary M. Zwain
_____
GARY M. ZWAIN (#13809)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:   KATRINA CANAL BREACHES          CIVIL ACTION
         CONSOLIDATED LITIGATION
                                         NO.: 05-4182

                                         SECTION "K" (2)

FILED IN :  05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073, 06-6314,
            05-6324, 05-6327, 05-6359, 06-0020, 06-1885, 06-0225, 06-0886,
            06-11208, 06-2278, 06-2287, 06-2346, 06-062545, 06-3529, 06-4065,
            06-4389, 06-4634, 06-4931, 06-5032, 06-5042, 06-5159, 06-5163,
            06-5367, 06-5471, 06-5771, 06-5786, 06-5937, 06-7682, 07-0206,
            07-0647, 07-0993, 07-1284, 07-1286, 07-1288, 07-1289

PERTAINS TO: LEVEE

---

## OBJECTIONS AND RESPONSES OF THE BOARD OF COMMISSIONERS, EAST JEFFERSON LEVEE DISTRICT TO THE LEVEE PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION, INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS

---

NOW INTO COURT, through undersigned counsel, comes Defendant, Board of

Commissioners, East Jefferson Levee District (hereinafter "EJLD"), which Objects and

Responds to the Levee Plaintiffs' First Set of Requests for Admissions, Interrogatories, and

Requests for Production of Documents, as follows:

## GENERAL OBJECTIONS

1.     EJLD objects to plaintiffs' Requests for Admission to the extent they request admission of facts about which EJLD lacks readily available information and/or documents. *Camp v. The Progressive Corp.*, __ F.Supp. ___ 2003 WL 21939778, p. 3 (E.D. La. 2003).

2.     EJLD objects to plaintiffs' Requests for Admission and Interrogatories to the extent the responses require legal conclusions. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001).

3.     EJLD objects to plaintiffs' Requests for Admission and Interrogatories to the extent the responses require disclosure of attorney work product.

4.     EJLD objects to plaintiffs' Requests for Admission and Interrogatories to the extent the responses require disclosure of the mental impressions of defense counsel.

5.     EJLD objects to plaintiffs' Requests for Admission and Interrogatories to the extent the responses require disclosure of information protected by the attorney-client privilege.

6.     EJLD objects to plaintiffs' Requests for Admissions, Interrogatories and Requests for Production to the extent they seek production of expert reports and/or opinions in advance of the deadline set forth in Case Management No. 4 Section II (D)(3).

## RESPONSES TO REQUEST FOR ADMISSIONS

### REQUEST FOR ADMISSION NO. 1:

Each class representative, including sub-class representatives, has submitted a Form 95 to the Corps.

### RESPONSE NO. 1:

ELJD has insufficient knowledge to either admit or deny Request for Admission No. 1. None of the Class Representatives have supplied EJLD with evidence supporting their contention that Form 95s were submitted. Thus, EJLD can neither admit nor deny Request for Admission No. 1.

### REQUEST FOR ADMISSION NO. 2:

The Form 95 submitted by each respective class and sub-class representative was legally sufficient.

### RESPONSE NO. 2:

ELJD has insufficient knowledge to either admit or deny Request for Admission No. 2. None of the class representatives have supplied EJLD with evidence supporting their contention that Form 95s were submitted. Thus, EJLD can neither admit nor deny Request for Admission No. 2.

**REQUEST FOR ADMISSION NO. 3:**

The Corps has not paid, settled, or otherwise resolved, in whole or in part, any claim set forth in any Form 95 submitted by any class or sub-class representative.

**RESPONSE NO. 3:**

EJLD has no knowledge as to whether the Corps has settled any claim set forth in any Form 95, much less a Form 95 submitted by a class or sub-class representative. Thus, EJLD can neither admit nor deny Request for Admission No. 3.

**REQUEST FOR ADMISSION NO. 4:**

No Defendant has paid, settled, or otherwise resolved, in whole or in part, any Hurricane Katrina-related claim asserted against it by any class or sub-class representative.

**RESPONSE NO. 4:**

EJLD admits that it has not paid, settled, or otherwise resolved, in whole or in part, any Hurricane Katrina-related claim asserted against it by any class or sub-class representative. Otherwise, EJLD has insufficient information with which to admit or deny Request for Admission No. 4.

**REQUEST FOR ADMISSION NO. 5:**

Each class and sub-class representative has satisfied all statutory conditions precedent to maintenance of an action pursuant to 28 U.S.C. § 2671, *et seq.* (Federal Tort Claims Act).

**RESPONSE NO. 5:**

EJLD has insufficient knowledge as to whether any class or sub-class representative has satisfied any or all statutory conditions precedent to maintenance of an action pursuant to 28 U.S.C. § 2671, *et seq.* (Federal Tort Claims Act).  Thus, EJLD can neither admit nor deny Request for Admission No. 5.

**REQUEST FOR ADMISSION NO. 6:**

Each class and sub-class representative suffered some damage as a result of inundation associated with Hurricane Katrina.

**RESPONSE NO. 6:**

EJLD objects to Request for Admission No. 6 on the grounds that the phrase "some damage" is vague and ambiguous.  Subject to its objection, EJLD states that it is reasonable to expect that each class and sub-class representative experienced "damage" in some sense of the word, although EJLD has no specific knowledge as to the "damage" or its cause.

**REQUEST FOR ADMISSION NO. 7:**

Each class and sub-class representative suffered damage to real property as a result of inundation associated with Hurricane Katrina.

**RESPONSE NO. 7:**

EJLD has no information with respect to damage to real property, if any, suffered by any class or sub-class representative from any cause. Thus, EJLD can neither admit nor deny Request for Admission No. 7.

**REQUEST FOR ADMISSION NO. 8:**

Each class and sub-class representative suffered damage to personal property as a result of inundation associated with Hurricane Katrina.

**RESPONSE NO. 8:**

EJLD has no information with respect to damage to personal property, if any, suffered by any class or sub-class representative from any cause. Thus, EJLD can neither admit nor deny Request for Admission No. 8.

**REQUEST FOR ADMISSION NO. 9:**

Members of the Class are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 9:**

Admitted.

## REQUEST FOR ADMISSION NO. 10:

Members of Sub-Class One are so numerous that joinder of all such persons and entities in this action is impracticable.

## RESPONSE NO. 10:

Admitted.

## REQUEST FOR ADMISSION NO. 11:

Members of Sub-Class Two are so numerous that joinder of all such persons and entities in this action is impracticable.

## RESPONSE NO. 11:

Admitted.

## REQUEST FOR ADMISSION NO. 12:

Members of Sub-Class Three are so numerous that joinder of all such persons and entities in this action is impracticable.

## RESPONSE NO. 12:

Admitted.

## REQUEST FOR ADMISSION NO. 13:

Members of Sub-Class Four are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 13:**

Admitted.

**REQUEST FOR ADMISSION NO. 14:**

Members of Sub-Class Five are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 14:**

Admitted.

**REQUEST FOR ADMISSION NO. 15:**

Members of the Class are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 15:**

Denied. EJLD has no information suggesting that mere geographic location in and of itself makes joinder impracticable.

**REQUEST FOR ADMISSION NO. 15(sic):**

Members of Sub-Class One are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 15 (sic):**

Denied.  EJLD has no information suggesting that mere geographic location in and of itself makes joinder impracticable.

**REQUEST FOR ADMISSION NO. 16:**

Members of Sub-Class Two are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 16:**

Denied.  EJLD has no information suggesting that mere geographic location in and of itself makes joinder impracticable.

**REQUEST FOR ADMISSION NO. 17:**

Members of Sub-Class Three are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 17:**

Denied.  EJLD has no information suggesting that mere geographic location in and of itself makes joinder impracticable.

**REQUEST FOR ADMISSION NO. 18:**

Members of Sub-Class Four are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 18:**

Denied. EJLD has no information suggesting that mere geographic location in and of itself makes joinder impracticable.

**REQUEST FOR ADMISSION NO. 19:**

Members of Sub-Class Five are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE NO. 19:**

Denied. EJLD has no information suggesting that mere geographic location in and of itself makes joinder impracticable.

**REQUEST FOR ADMISSION NO. 20:**

The filing of an individual civil action for Katrina-related property losses by each member of the Class would create the risk of inconsistent or varying adjudications among such actions.

**RESPONSE NO. 20:**

Denied. EJLD states that each individual claim for Katrina-related property losses turns on its own peculiar facts and circumstances, and must be considered on an individual basis to properly allocate fault, if any, and damages, if any.

**REQUEST FOR ADMISSION NO. 21:**

The filing of an individual civil action for Katrina-related property losses by each member of the Class would create the risk of adjudications that would substantially impair or impede the ability of some class members to protect their interests.

**RESPONSE NO. 21:**

Denied. A judgment in one individual civil action for Katrina-related property losses will not have preclusive effect on another individual's civil action for Katrina-related property losses. In fact, each individual's claim for Katrina-related property losses is unique in that each property's source/cause of damage differs from that of another.

**REQUEST FOR ADMISSION NO. 22:**

As of August 29, 2005, the MRGO, the 17th Street Canal, the Orleans Canal, the London Avenue Canal, and the IHNC were "things" over which one or more of the Defendants had "custody" within the meaning of Louisiana Civil Code art. 2317.

**RESPONSE NO. 22:**

EJLD denies that it had "custody" over the MRGO, the Orleans Canal, the London Avenue Canal, and the IHNC. EJLD's authority does not extend to the geographic areas occupied by those waterways. EJLD also denies that it had "custody" over the 17th Street Canal. EJLD states that it does not own the 17th Street Canal. EJLD further states its sole connection to

the 17th Street Canal is that it maintains the levee flood wall, and the berm on both sides of the flood wall, that line the west side of the 17th Street Canal north of Pumping Station 6.

## REQUEST FOR ADMISSION NO. 23:

The USA has not paid, settled, or otherwise resolved, in whole or in part, any claim set forth in the Form 95 submitted by any member of the Class.

## RESPONSE NO. 23:

EJLD has insufficient information with which to either admit or deny Request for Admission No. 23. Thus, EJLD can neither admit nor deny Request for Admission No. 23.

## REQUEST FOR ADMISSION NO. 24:

No Defendant has paid, settled, or otherwise resolved, in whole or in part, any Katrina-related claim asserted against it by any member of the Class.

## RESPONSE NO. 24:

EJLD has not paid, settled, or otherwise resolved, in whole or in part, any Katrina-related claim asserted against it by any member of the Class. Otherwise, EJLD has insufficient information and can neither admit nor deny Request for Admission No. 24.

## REQUEST FOR ADMISSION NO. 25:

Each member of the Class, as defined, has suffered some damage as a result of inundation associated with Hurricane Katrina.

**RESPONSE NO. 25:**

EJLD objects to Request for Admission No. 25 on the grounds that the phrase "some damage" is vague and ambiguous. Subject to its objection, EJLD states that it is reasonable to expect that many class members experienced "damage" in some sense of the word, although EJLD has no specific knowledge of the "damage" or its cause. EJLD admits that plaintiffs' proposed class definition limits class membership to persons and entities "who/which sustained damages as a result of inundation."

**REQUEST FOR ADMISSION NO. 26:**

Every member of Sub-Class One experienced initial inundation that had as its sources the 17th Street Canal and the Orleans Avenue Canal, or both.

**RESPONSE NO. 26:**

EJLD objects to Request for Admission No. 26 on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including precipitation) …".    Subject to its objection, EJLD denies Request for Admission No. 26 as written, and states that it expects that every member of Sub-Class One experienced "initial inundation" by means of precipitation, and not from waters that escaped either the 17th Street Canal or the Orleans Avenue Canal.

**REQUEST FOR ADMISSION NO. 27:**

Every member of Sub-Class Two experienced initial inundation that had as its sources the Orleans Avenue Canal and the London Avenue Canal, or both.

**RESPONSE NO. 27:**

EJLD objects to Request for Admission No. 27 on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including precipitation) ...".   Subject to its objection, EJLD denies Request for Admission No. 27 as written, and states that it expects that every member of Sub-Class Two experienced "initial inundation" by means of precipitation, and not from waters that escaped either the Orleans Avenue Canal or the London Avenue Canal.

**REQUEST FOR ADMISSION NO. 28:**

Every member of Sub-Class Three experienced initial inundation that had as its sources the London Avenue Canal and the IHNC, or both.

**RESPONSE NO. 28:**

EJLD objects to Request for Admission No. 28 on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but

possibly including precipitation) ...".   Subject to its objection, EJLD denies Request for Admission No. 28 as written, and states that it expects that every member of Sub-Class Three experienced "initial inundation" by means of precipitation, and not from waters that escaped either the London Avenue Canal or the IHNC.

## REQUEST FOR ADMISSION NO. 29:

Every member of Sub-Class Four experienced initial inundation that had as its sources the London Avenue Canal and the IHNC, or both.

## RESPONSE NO. 29:

EJLD objects to Request for Admission No. 29 on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including precipitation) ...".   Subject to its objection, EJLD denies Request for Admission No. 29 as written, and states that it expects that every member of Sub-Class Four experienced "initial inundation" by means of precipitation, and not from waters that escaped either the London Avenue Canal or the IHNC.

## REQUEST FOR ADMISSION NO. 30:

Every member of Sub-Class Five experienced initial inundation that had as its sources the 17th Street Canal, the Orleans Canal, the London Avenue Canal, and the IHNC, or any of them.

**RESPONSE NO. 30:**

EJLD objects to Request for Admission No. 30 on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including precipitation) ...".    Subject to its objection, EJLD denies Request for Admission No. 30 as written, and states that it expects that every member of Sub-Class Five experienced "initial inundation" by means of precipitation, and not from waters that escaped either the London Avenue Canal or the IHNC.

**REQUEST FOR ADMISSION NO. 31:**

The source of inundation affecting any member of the Class is a question that is common to every member of the Class.

**RESPONSE NO. 31:**

Denied.   Hurricane Katrina created numerous sources of inundation, as that term is defined by Plaintiffs.  The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 32:**

The source of inundation affecting any member of Sub-Class One is a question that is common to every member of that Sub-Class.

RESPONSE NO. 32:

Denied. Hurricane Katrina created numerous sources of inundation, as that term is defined by Plaintiffs. The effect each source of inundation had with respect to a particular class member varies case by case.

REQUEST FOR ADMISSION NO. 33:

The source of inundation affecting any member of Sub-Class Two is a question that is common to every member of that Sub-Class.

RESPONSE NO. 33:

Denied. Hurricane Katrina created numerous sources of inundation, as that term is defined by Plaintiffs. The effect each source of inundation had with respect to a particular class member varies case by case.

REQUEST FOR ADMISSION NO. 34:

The source of inundation affecting any member of Sub-Class Three is a question that is common to every member of that Sub-Class.

RESPONSE NO. 34:

Denied. Hurricane Katrina created numerous sources of inundation, as that term is defined by Plaintiffs. The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 35:**

The source of inundation affecting any member of Sub-Class Four is a question that is common to every member of that Sub-Class.

**RESPONSE NO. 35:**

Denied.   Hurricane Katrina created numerous sources of inundation, as that term is defined by Plaintiffs.  The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 36:**

The source of inundation affecting any member of Sub-Class Five is a question that is common to every member of that Sub-Class.

**RESPONSE NO. 36:**

Denied.   Hurricane Katrina created numerous sources of inundation, as that term is defined by Plaintiffs.  The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 37:**

Whether the Corps, Boh Bros, Eustis, EJLD, M&M, OLD, and SWB committed the negligent acts and omissions described in Count I of the Complaint is a question that is common to every member of Sub-Classes One, Two and Five.

**RESPONSE NO. 37:**

Denied. EJLD states that multiple breaches/overtopping, and the causes thereof, require separate and distinct fault allocations applicable to a determination of individual class members' sources and causes of damage.

**REQUEST FOR ADMISSION NO. 38:**

Whether the Corps, Boh Bros, Eustis, EJLD, Gulf Group, M&M, OLD, Pitman, and SWB committed the negligent acts and omissions described in Count II of the Complaint is a question that is common to every member of Sub-Classes One, Two and Five.

**RESPONSE NO. 38:**

Denied. EJLD states that multiple breaches/overtopping, and the causes thereof, require separate and distinct fault allocations applicable to a determination of individual class members' sources and causes of damage.

**REQUEST FOR ADMISSION NO. 39:**

Whether the Corps, B&K Construction, Burk-Kleinpeter, and Gotech committed the negligent acts and omissions described in Count III of the Complaint is a question that is common to every member of Sub-Classes One, Three and Five.

**RESPONSE NO. 39:**

Denied. EJLD states that multiple breaches/overtopping, and the causes thereof, require separate and distinct fault allocations applicable to a determination of individual class members' sources and causes of damage.

**REQUEST FOR ADMISSION NO. 40:**

Whether the Corps, OLD, and St. Paul committed the negligent acts and omissions described in Count IV of the Complaint is a question that is common to every member of Sub-Classes Four and Five.

**RESPONSE NO. 40:**

Denied. EJLD states that multiple breaches/overtopping, and the causes thereof, require separate and distinct fault allocations applicable to a determination of individual class members' sources and causes of damage.

**REQUEST FOR ADMISSION NO. 41:**

Whether the Corps, CSX, OLD, PBR, PNO, and St. Paul committed the negligent acts and omissions described in Count V of the Complaint is a question that is common to every member of Sub-Classes Four and Five.

**RESPONSE NO. 41:**

Denied. EJLD states that multiple breaches/overtopping, and the causes thereof, require separate and distinct fault allocations applicable to a determination of individual class members' sources and causes of damage.

**REQUEST FOR ADMISSION NO. 42:**

Whether the Defendants, individually and alone, or together and in concert, violated Louisiana Civil Code articles 667, 2315, 2316, 2317 and 2317.1, is a question that is common to every member of the Greater New Orleans Class.

**RESPONSE NO. 42:**

Denied. EJLD states that multiple breaches/overtopping, and the causes thereof, require separate and distinct fault allocations applicable to a determination of individual class members' sources and causes of damage.

**REQUEST FOR ADMISSION NO. 43:**

The attorneys (and their respective firms) appointed by the Court as Plaintiffs' Liaison Counsel and as members of the MRGO PSLC are competent to fairly and adequately protect the interests of the Greater New Orleans Class.

**RESPONSE NO. 43**:

EJLD admits that appointed class counsel and their firms are competent. However, in all other respects this request is denied because these same counsel represent plaintiffs in competing and over-lapping class and other actions that present conflicts of interests. These conflicts are particularly acute in these circumstances where the putative class asserts claims against defendants with limited assets. Moreover, given the size and diversity of interests within the putative class, EJLD expects conflicts within the class to emerge thus preventing Plaintiffs' Liaison Counsel, or anyone else, from effectively representing the class as a whole.

**REQUEST FOR ADMISSION NO. 44**:

Inundation of the properties of the Class substantially contributed to the breakdown in social structure and loss of cultural heritage in the New Orleans area encompassed by the Class definition, and caused consequent damages to the Class.

**RESPONSE NO. 44**:

EJLD objects to Request for Admission No. 44, on the grounds that it is overly broad, vague and ambiguous. EJLD admits that Hurricane Katrina adversely affected the New Orleans Metropolitan area.

**REQUEST FOR ADMISSION NO. 45:**

Inundation of the properties of the Class substantially contributed to alteration of the physical, economic, political, social, and psychological character of the New Orleans area encompassed by the Class definition, and caused consequent damages to the Class.

**RESPONSE NO. 45:**

EJLD objects to Request for Admission No. 44, on the grounds that it is overly broad, vague and ambiguous. EJLD admits that Hurricane Katrina adversely affected the New Orleans Metropolitan area.

**REQUEST FOR ADMISSION NO. 46:**

The causes of the classwide losses suffered by members of the Class and Five Sub-Classes are susceptible to analysis and determination on a classwide basis.

**RESPONSE NO. 46:**

EJLD objects to the phrase "classwide losses" on the grounds that it is vague and ambiguous.  Subject to its objection, Request for Admission No. 46 is denied.  EJLD further states that class members' damages, if any, require individualized analysis and calculation.

**REQUEST FOR ADMISSION NO. 47:**

The causes of the individual property losses suffered by members of the Class and the five Sub-Classes are susceptible to proof by way of a class trial.

**RESPONSE NO. 47:**

Denied. EJLD states that the sources of potential damage to class members are multiple and varied such that their affect on class members differs individual by individual.

**REQUEST FOR ADMISSION NO. 48:**

The source of inundation affecting any given property encompassed by the Class or five Sub-Classes is susceptible to analysis and determination by expert witnesses.

**RESPONSE NO. 48:**

Denied as written. However, EJLD admits that, as to any individual piece of property, a qualified expert or group of experts can estimate the sources of inundation (as that term is defined by plaintiffs herein) that affected the property.

**REQUEST FOR ADMISSION NO. 49:**

The USA has undertaken efforts to analyze and determine the source or sources of inundation affecting properties encompassed by the Class and five Sub-Classes.

**RESPONSE NO. 49:**

Admitted.

\* \* \* \* \*

## LEVEE CLASS PLAINTIFFS' FIRST INTERROGATORIES

### INTERROGATORY NO. 1:

For each request for admission you denied, or for which you qualified your answer, please provide the following: (I) a list of all persons, by name and title, you contacted in formulating your response; (ii) a description of the information they provided to you in formulating your response; and (iii) an explanation of the basis for your denial or qualification of your response.

### ANSWER TO INTERROGATORY NO. 1:

EJLD objects to Interrogatory No. 1, on the grounds that it requires disclosure of information protected by the attorney-client privilege and/or the work product of counsel for EJLD. Subject to its objection, EJLD states that, with respect to some Requests for Admission that were denied, or denied in part, Fran Campbell, Executive Director of East Jefferson Levee District, provided information in connection with the response. Otherwise, counsel for EJLD prepared responses to these Requests for Admissions, and in some instances, relied upon public information previously identified in exhibit lists filed by EJLD and others, and upon consultation with experts identified in witness lists filed by EJLD and others. The experts include, Dr. Paul Kuhlmeier, Greg Rigamer, Michael Truax, Dan Milham, and Dr. James Richardson.

**INTERROGATORY NO. 2:**

If you contend that the Fed. R. Civ. P. 23(a) numerosity requirement is not satisfied as to the Class and/or any of its five proposed sub-classes, please **(I)** set forth every fact you believe supports your contention, and **(ii)** identify every witness you believe possesses knowledge of such facts, including which such facts each witness possesses. If you agree that the numerosity requirement is satisfied, please say so.

**ANSWER TO INTERROGATORY NO. 2:**

Not applicable.  See EJLD's Responses to Requests for Admission.

**INTERROGATORY NO. 3:**

If you contend that any one or all of the respective claims set forth by the Class Representatives fails to satisfy the Fed. R. Civ. P. 23(a) typicality requirement with respect to the Class, please **(I)** set forth every fact you believe supports your contention, and **(ii)** identify every witness you believe possesses knowledge of such facts, including which such facts each witness possesses. If you agree that the class representatives satisfy the typicality requirement, please say so.

**ANSWER TO INTERROGATORY NO. 3:**

EJLD contests whether the class representatives' claims satisfy the "typicality" requirement.

(1) and (2)   EJLD believes that the sources of the inundation for each class member, the parties or persons responsible for the sources, and how those various sources combined to cause inundation, are different across the proposed class are.  Moreover, whether the fault, if any, of any defendant caused every proposed class member's property damages or losses, whether the fault combined with the fault, if any, of other defendants or persons to cause those damages, and in what combinations the fault of defendants and others may have combined to cause property damages are factors that are not known to EJLD at this time.  EJLD has consulted with expert witnesses, including Dr. Paul Kuhlmeier, Dan Milham, and Greg Rigamer with respect to these issues, but they have not completed their analysis nor issued reports.  EJLD will supplement this response with specific facts and opinions once Dr. Kuhlmeier completes his analysis and report.

Additionally, EJLD believes that the damages sustained by each class representative are unique, and whether property damage or personal injury, will require individualized proof and analysis.  EJLD will have additional information with which to supplemental this response once the class representative depositions have been completed.  Finally, EJLD has consulted with an expert witnesses, Michael Truax and Dr. James Richardson, with respect to the analysis and evaluation of property damages likely sustained by the class representatives, but neither Mr. Truax nor Dr. Richardson have not completed their analysis nor issued a report.  EJLD will

supplement this response with specific facts and opinions once Mr. Truax completes his analysis and report.

Further, EJLD will supplement this response upon receipt of further information relevant to the class representatives is received during the course of discovery and the litigation.

## INTERROGATORY NO. 4:

If you contend that the Class Representatives, or any of them, will not fairly and adequately protect the interests of the Class, please (I) set forth every fact you believe supports your contention, and (ii) identify every witness you believe possesses knowledge of such facts, including which such facts each witness possesses.

## ANSWER TO INTERROGATORY NO. 4:

EJLD contests whether the class representatives' claims satisfy the "adequacy" requirement. EJLD states that the plaintiffs' claims are varied. Some timely filed administrative claims, and some did not. Some sustained personal injury and some did not. Damage due to wind and rain, as opposed to flood, varies from class member to class member. Damage due to flying debris, or to falling trees, varies class member to class member. Damage due to power loss caused by wind, varies class member to class member. EJLD reserves the right to supplement this response subject to information learned through the discovery process or through other sources.

**INTERROGATORY NO. 5:**

Based upon the claims forms and/or all other information received to date, including the Complaint, please identify any defense you might set forth in response to any class member's claim against you that you would not set forth in any class representative's claim against you. If the answer is "none known at this time" please say so.

**ANSWER TO INTERROGATORY NO. 5:**

EJLD has received no claim forms, nor has there been an opportunity to depose the plaintiffs. Further, plaintiffs have not responded to defendants written discovery. To the extent counsel for EJLD has commenced consideration of potential defenses to the plaintiffs' claims, such information is protected by the attorney-client privilege and constitutes attorney-work product and mental impressions.

**INTERROGATORY NO. 6:**

Do you agree that there are some questions of law or fact common to the members Class, including the class representatives?

**ANSWER TO INTERROGATORY NO. 6:**

There are no common issues of law or fact the determination of which will resolve disputes on a class-wide basis.

**INTERROGATORY NO. 7:**

Based upon the claims forms and/or all other information received to date, including the Complaint, please **(i)** identify all questions of law or fact affecting individual members of the Class that you contend would not also affect the Class Representatives and Sub-Class Representatives, and **(ii)** state whether and in what way you contend that such individual questions predominate over questions that are common to the class members and the class representatives.

**ANSWER TO INTERROGATORY NO. 7:**

EJLD has not been provided with claim forms. However, EJLD expects to contend that individual issues predominate over common issues. EJLD states that the sources of water affecting each class members' properties are varied, and that fault allocations with respect to each source will differ. Further, EJLD expects that the contributions of wind/rain versus flood will vary from property to property. The valuation of each property requires an individualized analysis, and is not subject to formulaic calculation. Business interruption claims also require individualized analysis. EJLD reserves the right to supplement this response at a later date.

**INTERROGATORY NO. 8:**

Do you agree that a class action trial is the superior method for the fair and efficient adjudication of the controversies raised in this action vis-a-vis the members of the Class and five

Sub-Classes? If not, please **(I)** state in detail why you disagree, and **(ii)** describe any and every procedure you contend would be superior, including in your description the reasons it would be superior.

<u>ANSWER TO INTERROGATORY NO. 8:</u>

No. For the reasons outlined in Answer to Interrogatory Nos. 3 and 4, specifically that the typicality and adequacy prongs are not met due to the various potential causes of the plaintiffs' damages, the fault, if any, attributable to any defendant or any other person or entity, and the overall need of individualized proof of damages. Moreover, common issues do not predominate over issues requiring individualized proof. EJLD states that class certification will not avoid multiple trials to determine liability and damages regarding multiple class members. EJLD contends that the manageability issues inherent in such multiple trials should preclude class certification.

<u>INTERROGATORY NO. 9:</u>

Please identify and describe in detail every difficulty you contend is likely to be encountered in the management of the class action proposed by the Complaint.

## ANSWER TO INTERROGATORY NO. 9:

Objection. This Interrogatory is premature, vague, ambiguous, overly broad and burdensome. EJLD cannot possibly know, nor even anticipate, every difficulty that may be encountered. Subject to its objection, EJLD identifies the following potential difficulties:

(1) Multiple sources of damage, and the necessity of multiple fault allocations;

(2) Multiple causes of damage from multiple sources;

(3) Individual factors regarding each class members' claimed damages require individual analysis;

(4) Multiple categories of claimed damages sustained by class members;

(5) The lack of mathematical or formulaic calculations applicable to determining class members' damages; and

(6) EJLD reserves its rights to supplement and amend this Interrogatory response either by amending its response herein, or by other methods consistent with Case Management Order No. 4.

## INTERROGATORY NO. 10:

Please state the total number of Form 95s submitted which forms set forth claims by Louisiana citizens against the United States Army Corps of Engineers for losses arising in connection with Hurricane Katrina.

**ANSWER TO INTERROGATORY NO. 10:**

EJLD does not know the total number of Form 95s submitted by Louisiana citizens against the USACE, nor does it have information at is disposal to make that determination.

**INTERROGATORY NO. 11:**

Please describe in detail the ways in which the information contained in the Form 95s described in the preceding interrogatory has been compiled and collated by the USA, e.g., by ZIP code, by damage type, by potential source of inundation, etc., including each format in which such compiled and/or collated information exists, e.g., database, spreadsheet, physical repository, etc.

**ANSWER TO INTERROGATORY NO. 11:**

Unknown.

**INTERROGATORY NO. 12:**

Please describe the results/conclusions of the reports of all efforts to date undertaken by you to estimate the number of persons who sustained damages or incurred losses in the geographical area covered by the Class and its five Sub-Classes.

**ANSWER TO INTERROGATORY NO. 12:**

EJLD has not made an effort to determine or estimate the number of persons who may have sustained damages or incurred losses related to Hurricane Katrina in any geographic area.

**INTERROGATORY NO. 13:**

Please describe in detail each source of inundation and the manner in which you contend the inundation occurred with respect to the geographical area encompassed by the five Sub-Classes (e.g., flooded solely by one water source, flooded by commingled sources).

**ANSWER TO INTERROGATORY NO. 13:**

EJLD has consulted, and will continue to consult, with experts relative to the issues described in this Interrogatory. Those experts include Dr. Paul Kuhlmeier, Mr. Greg Rigamer, and Mr. Dan Milham. EJLD may retain additional experts. Expert reports will be provided as required by Case Management Order No. 4.

**INTERROGATORY NO. 14 (misnumbered 15):**

Please identify by name, employer, position, and current professional address each person who has assisted in the formulation of responses to any of your responses to each part or sub-part of the Levee Class Plaintiffs' First Set of Requests for Admission, Interrogatories, and Requests for Production.

**ANSWER TO INTERROGATORY NO. 14 (misnumbered 15):**

Fran Campbell, Executive Director, East Jefferson Levee District, in addition to the experts referenced above.

* * * * *

## LEVEE CLASS PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

Please produce a copy of every Form 95 that sets forth a claim by any Louisiana citizens against the United States Army Corps of Engineers for losses arising in connection with Hurricane Katrina.

### RESPONSE NO. 1:

EJLD does not possess, nor does it control, any Form 95.

### REQUEST FOR PRODUCTION NO. 2:

Please produce a copy of all electronic files, databases, spreadsheets or other documents that sort, collate, organize, categorize, or deal in some similar fashion with the Form 95s, or any of them, identified in the preceding request and/or any information contained in such Form 95s.

### RESPONSE NO. 2:

EJLD does not possess or control electronic files, databases, spreadsheets or other documents that sort, collate, organize, categorize, or deal in some similar fashion with Form 95.

### REQUEST FOR PRODUCTION NO. 3:

Please produce a copy of each and every document that contains or reflects any estimate or precise calculation of the total dollar value of all claims asserted against the USA by way of the Form 95s identified in Request No. 1.

## RESPONSE NO. 3:

EJLD does not possess or control the documents described in Request for Production No.

3.

## REQUEST FOR PRODUCTION NO. 4:

Please produce a copy of each and every document that you believe supports your answers to Interrogatories No. 2-4 above, or any of them.

## RESPONSE NO. 4:

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4. In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

## REQUEST FOR PRODUCTION NO. 5:

Please produce a copy of every document consulted, obtained, or generated in connection with any activities described in response to Interrogatory No. 11 above.

## RESPONSE NO. 5:

EJLD does not possess or control such documents.

## REQUEST FOR PRODUCTION NO. 6:

Please produce a copy of every document consulted, obtained, or generated in connection with any activities described in response to Interrogatory No. 12 above.

**RESPONSE NO. 6:**

EJLD does not possess or control such documents.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce a copy of each and every document that would establish the number of persons residing on August 28, 2005, in the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 7:**

EJLD does not possess or control such documents.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce a copy of each and every document that would establish the number of persons residing in the geographical area encompassed by the Class definition, or any Sub-Class of it, since August 29, 2005.

**RESPONSE NO. 8:**

EJLD does not possess or control such documents.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the source of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 9:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4. In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the cause of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 10:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4. In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the process of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 11:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4.  In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the timing of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 12:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4.  In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the depth of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 13:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4.  In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the duration of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 14:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4.  In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the receding of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 15:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4.  In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the timing, duration, and depth of precipitation during the period August 27, 2005, and September 1, 2005, within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE NO. 16:**

EJLD's expert reports, with supporting citations, will be produced in conformity to the requirements of Case Management Order No. 4.  In the meantime, the Plaintiffs are directed to exhibit lists previously filed by EJLD and others.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS, MORTON PFISTER & WEINSTOCK**

/s/ Gary M. Zwain
LAWRENCE J. DUPLASS, (#5199)
GARY M. ZWAIN, (#13809)
JOSEPH E. BEARDEN, III (#26188)
Three Lakeway Center, Suite 2900
3838 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone No.: (504) 832-3700
Facsimile No.: (504) 837-3119
*Attorneys for Defendant, Board of Commissioners, East Jefferson Levee District*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on the following counsel of record via hand delivery, facsimile transmission, electronic transmission and/or U. S. Mail, First Class postage prepaid, this 30th day of April, 2007.

/s/ Gary M. Zwain
GARY M. ZWAIN (#13809)