UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | *<br>*<br>*<br>* | CIVIL ACTION<br>NO. 05-4182 "K" (2)<br>JUDGE DUVAL<br>MAGISTRATE WILKINSON |
| | * | |
| PERTAINS TO LEVEE | * | |
| FILED IN:          05-4181, 05-4182, 05-5237, | * | |
| 05-6073, 05-6314, 05-6324, 05-6327, 06-0020, | * | |
| 06-0225, 06-0886, 06-2278, 06-2346, 06-2545, | * | |
| 06-4065, 06-4389, 06-4634, 06-4931, 06-5159, | * | |
| 06-5163, 06-5786, 06-7682, 07-0993, 07-1284, | * | |
| 07-1288, 07-1289 | * | |

********************************************

## THE SEWERAGE AND WATER BOARD OF NEW ORLEANS ANSWER TO LEVEE PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION, INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Now, through undersigned counsel, comes defendant, the Sewerage and Water Board of

New Orleans ("SWB") and responds to the Requests for Admission, First Set of Interrogatories

and Requests for Production of Documents propounded by Levee plaintiffs, as follows:

### RESPONSES TO REQUESTS FOR ADMISSION

The Sewerage and Water Board's responses to the Request for Admissions are set forth

below. There are numerous requests to which the Sewerage and Water Board has lodged an

objection or has responded that it has insufficient information to admit or deny the request. For

each such request, in an abundance of caution, in the event a request is deemed necessary, the

request is denied.

### REQUEST FOR ADMISSION NO. 1:

Each class representative, including sub-class representatives has submitted a Form 95 to

the Corps.

1



EXHIBIT

A

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

The SWB was not a recipient of any Form 95 filed by the proposed class representatives. Moreover, copies of the Form 95s purportedly submitted by the proposed class representatives were not attached to these discovery requests nor otherwise provided to the SWB. Therefore, the information sought is not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request. *Camp v. The Progressive Corp.*, 2003 WL 21939778, p.3 (E.D. La. 2003)(Answering party may cite lack of information or knowledge as a basis for denying a request for admission if such information is not known or readily available to the party upon reasonable inquiry.); *T. Rowe Price Small-Cap Fund v. Oppenheimer & Co.*, 174 F.R.D. 38, 43 (S.D.N.Y. 1997)("Generally, a ' reasonable inquiry' is limited to review and inquiry of those persons and documents that are within the responding party's control.").

**REQUEST FOR ADMISSION NO. 2:**

The Form 95 submitted by each respective class and sub-class representative was legally sufficient.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

The SWB was not a recipient of any Form 95 filed by the proposed class representatives. Moreover, copies of the Form 95s purportedly submitted by the proposed class representatives were not attached to these discovery requests nor otherwise provided to the SWB. Therefore, the information sought is not known or readily available to the SWB upon reasonable inquiry to

persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

## REQUEST FOR ADMISSION NO. 3:

The Corps has not paid, settled, or otherwise resolved, in whole or in part, any claim set forth in any form 95 submitted by any class or sub-class representative.

## RESPONSE TO REQUEST FOR ADMISSION NO. 3:

The SWB was not a party to any settlements of claims made against the USA by the proposed class representatives. Moreover, neither copies of the Form 95s nor any settlement documents were produced with these discovery requests. Consequently, the information sought is not known or readily available to the SWB upon reasonable inquiry to persons or review of documents with the SWB's control. Therefore, the SWB is unable to truthfully admit or deny this request.

## REQUEST FOR ADMISSION NO. 4:

No Defendant has paid, settled, or otherwise resolved, in whole or in part, any Hurricane Katrina-related claim asserted against it by any class or sub-class representative.

## RESPONSE TO REQUEST FOR ADMISSION NO. 4:

With respect to the SWB, admitted. With respect to any other defendant, the SWB was not party to any settlements reached. Moreover, copies of any settlement agreements reached with other parties have not been produced with these discovery requests. Consequently, the information sought is not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Therefore, the SWB cannot truthfully admit or deny this assertion.

3

## REQUEST FOR ADMISSION NO. 5:

Each class and sub-class representative has satisfied all statutory conditions precedent to maintenance of an action pursuant to 28 USC § 2671, *et seq.* (Federal Tort Claims Act).

## RESPONSE TO REQUEST FOR ADMISSION NO. 5:

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

The SWB was not a recipient of any Form 95 filed by the proposed class representatives. Moreover, copies of the Form 95s purportedly submitted by the proposed class representatives were not attached to these discovery requests nor otherwise provided to the SWB. Therefore, the information sought is not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

## REQUEST FOR ADMISSION NO. 6:

Each class and sub-class representative suffered some damage as a result of inundation associated with Hurricane Katrina.

## RESPONSE TO REQUEST FOR ADMISSION NO. 6:

The SWB objects to this request on the grounds that the phrase "some damage" is vague and ambiguous. Subject to its objection, the SWB has no knowledge with respect to whether the proposed class representatives were "inundated," and if so, no information whether this inundation caused damages. Moreover, information regarding whether any individual was "inundated" and whether such inundation caused damages, is not data compiled or utilized in the SWB's ordinary business activities. Therefore, these facts are not known or readily available to

4

the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request at this time.

## REQUEST FOR ADMISSION NO. 7:

Each class and sub-class representative suffered damage to real property as a result of inundation associated with Hurricane Katrina.

## RESPONSE TO REQUEST FOR ADMISSION NO. 7:

The SWB has no knowledge with respect to whether the proposed class representatives were "inundated," and no information whether this inundation caused damages to real property. Moreover, information regarding whether any individual was "inundated" and whether such inundation caused damages, is not data compiled or utilized in the SWB's ordinary business activities. Therefore, these facts are not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

## REQUEST FOR ADMISSION NO. 8:

Each class and sub-class representative suffered damage to personal property as a result of inundation associated with Hurricane Katrina.

## RESPONSE TO REQUEST FOR ADMISSION NO. 8:

The SWB has no knowledge with respect to whether the proposed class representatives were "inundated," and no information whether this inundation caused damages to personal property. Moreover, information regarding whether any individual was "inundated" and whether such inundation caused damages, is not data compiled or utilized in the SWB's ordinary business activities. Therefore, these facts are not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

**REQUEST FOR ADMISSION NO. 9:**

Members of the Class are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

While SWB denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions, SWB admits that the number of people who resided within the geographic boundaries of plaintiffs' proposed class and sub-classes would meet the numerosity requirement of Federal Rule of Civil Procedure 23.

**REQUEST FOR ADMISSION NO. 10:**

Members of the Class One are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

While SWB denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions, SWB admits that the number of people who resided within the geographic boundaries of plaintiffs' proposed class and sub-classes would meet the numerosity requirement of Federal Rule of Civil Procedure 23.

**REQUEST FOR ADMISSION NO. 11:**

Members of the Class Two are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

While SWB denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions, SWB admits that the number of people who resided within the geographic boundaries of plaintiffs' proposed class and sub-classes would meet the numerosity requirement of Federal Rule of Civil Procedure 23.

**REQUEST FOR ADMISSION NO. 12:**

Members of the Class Three are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

While SWB denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions, SWB admits that the number of people who resided within the geographic boundaries of plaintiffs' proposed class and sub-classes would meet the numerosity requirement of Federal Rule of Civil Procedure 23.

**REQUEST FOR ADMISSION NO. 13:**

Members of the Class Four are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

While SWB denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions, SWB admits that the number of people who resided within the geographic boundaries of plaintiffs' proposed class and sub-classes would meet the numerosity requirement of Federal Rule of Civil Procedure 23.

**REQUEST FOR ADMISSION NO. 14:**

Members of the Class Five are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

While SWB denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions, SWB admits that the number of people who resided within the geographic boundaries of plaintiffs' proposed class and sub-classes would meet the numerosity requirement of Federal Rule of Civil Procedure 23.

**REQUEST FOR ADMISSION NO. 15:**

Members of the Class are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

The SWB has no knowledge with respect to whether the proposed class members were "dispersed," and if so, no information whether the proposed class members have returned to their homes or businesses. Therefore, the SWB has no information whether joinder is impracticable. Moreover, information regarding these questions is not data compiled or utilized in the SWB's ordinary business activities. Consequently, these facts are not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

**REQUEST FOR ADMISSION NO. 15**

Members of Class One are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

The SWB has no knowledge with respect to whether the proposed class members were "dispersed," and if so, no information whether the proposed class members have returned to their homes or businesses. Therefore, the SWB has no information whether joinder is impracticable. Moreover, information regarding these questions is not data compiled or utilized in the SWB's ordinary business activities. Consequently, these facts are not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

## REQUEST FOR ADMISSION NO. 16:

Members of Sub-Class Two are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

## RESPONSE TO REQUEST FOR ADMISSION NO. 16:

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

The SWB has no knowledge with respect to whether the proposed class members were "dispersed," and if so, no information whether the proposed class members have returned to their homes or businesses. Therefore, the SWB has no information whether joinder is impracticable. Moreover, information regarding these questions is not data compiled or utilized in the SWB's ordinary business activities. Consequently, these facts are not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

9

### REQUEST FOR ADMISSION NO. 17:

Members of Sub-Class Three are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

### RESPONSE TO REQUEST FOR ADMISSION NO. 17:

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

The SWB has no knowledge with respect to whether the proposed class members were "dispersed," and if so, no information whether the proposed class members have returned to their homes or businesses. Therefore, the SWB has no information whether joinder is impracticable. Moreover, information regarding these questions is not data compiled or utilized in the SWB's ordinary business activities. Consequently, these facts are not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

### REQUEST FOR ADMISSION NO. 18:

Members of Sub-Class Four are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

### RESPONSE TO REQUEST FOR ADMISSION NO. 18:

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

The SWB has no knowledge with respect to whether the proposed class members were "dispersed," and if so, no information whether the proposed class members have returned to their homes or businesses. Therefore, the SWB has no information whether joinder is impracticable. Moreover, information regarding these questions is not data compiled or utilized in the SWB's ordinary business activities. Consequently, these facts are not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

**REQUEST FOR ADMISSION NO. 19:**

Members of Sub-Class Five are so geographically dispersed that joinder of all such persons and entities in this action is impracticable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

The SWB has no knowledge with respect to whether the proposed class members were "dispersed," and if so, no information whether the proposed class members have returned to their homes or businesses. Therefore, the SWB has no information whether joinder is impracticable. Moreover, information regarding these questions is not data compiled or utilized in the SWB's ordinary business activities. Consequently, these facts are not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

**REQUEST FOR ADMISSION NO. 20:**

The filing of an individual civil action for Katrina-related property losses by each member of the Class would create the risk of inconsistent or varying adjudications among such action.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

Denied. Each individual claim for Hurricane Katrina flooding damages turns on its own facts and circumstances and will require individual evaluations of the fault of each defendant, if any, and the damages, if any, associated with each defendants' fault.

**REQUEST FOR ADMISSION NO. 21:**

The filing of an individual civil action for Katrina-related property losses by each member of the Class would create the risk of adjudication that would substantially impair or impede the ability of come class members to protect their interests.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

Denied. Each individual claim for Hurricane Katrina flooding damages turns on its own facts and circumstances and will require individual evaluations of the fault of each defendant, if

any, and the damages, if any, associated with each defendants' fault. Thus, a judgment in one individual action will not have preclusive effect on another individual's action.

## REQUEST FOR ADMISSION NO. 22:

As of August 29, 2005, the MRGO, the 17th Street Canal, the Orleans Canal, the London Avenue Canal, and the IHNC were "things" over which one or more of the Defendants had "custody" within the meaning of Louisiana Civil Code art. 2317.

## RESPONSE TO REQUEST FOR ADMISSION NO. 22:

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

Denied.

## REQUEST FOR ADMISSION NO. 23:

The USA has not paid, settled, or otherwise resolved, in whole or in part, any claim set forth in the Form 95 submitted by any member of the Class.

## RESPONSE TO REQUEST FOR ADMISSION NO. 23:

The SWB was not a party to any settlements of claims made against the USA by the proposed class representatives. Therefore, the information sought is not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

## REQUEST FOR ADMISSION NO. 24:

No Defendant has paid, settled, or otherwise resolved, in whole or in part, any Katrina-related claim asserted against it by any member of the Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

      With respect to the SWB, admitted.  With respect to any other defendant, the SWB was not party to and has no information regarding the status of any settlements and no settlement documents were produced with these discovery requests.  Therefore, the information sought is not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control.  Consequently, the SWB cannot truthfully admit or deny this assertion

**REQUEST FOR ADMISSION NO. 25:**

      Each member of the Class, as defined, has suffered some damage as a result of inundation associated with Hurricane Katrina.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

      The SWB objects to this request on the grounds that the phrase "some damage" is vague and ambiguous.  However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

      The SWB admits that the proposed class definition as set forth in Paragraph 151 of the Superseding Master Consolidated Class Action Complaint includes those who "sustained damages as a result of inundation/flooding" due to Hurricane Katrina.  In all other respects, the SWB responds as follows:

      The SWB has no knowledge with respect to whether all proposed class members within the proposed class geographical boundaries were "inundated," and is so, no information whether this inundation caused each proposed class member damages.  Moreover, information regarding whether any individual was "inundated" and whether such inundation caused damages, is not data compiled or utilized in the SWB's ordinary business activities.  Therefore, these facts are not known or readily available to the SWB upon reasonable inquiry to persons or review of

14

documents within the SWB's control.  Consequently, the SWB is unable to truthfully admit or deny this request.

## REQUEST FOR ADMISSION NO. 26:

Every member of Sub-Class One experienced initial inundation that had as its sources the 17th Street Canal and the Orleans Avenue Canal, or both.

## RESPONSE TO REQUEST FOR ADMISSION NO. 26:

SWB objects to this request on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including precipitation) . . ." Subject to its objection, the SWB has no knowledge with respect to whether all proposed class members within the proposed class geographical boundaries were "inundated." Moreover the SWB has no knowledge as to the sources of the "initial inundation" for each class member.  The source of the "initial inundation" experienced by each individual class member is not data compiled or utilized in the SWB's ordinary business activities.  Therefore, the SWB is unable to truthfully admit or deny this request.

## REQUEST FOR ADMISSION NO. 27:

Every member of Sub-Class Two experienced initial inundation that had as its sources the Orleans Avenue Canal and the London Avenue Canal, or both.

## RESPONSE TO REQUEST FOR ADMISSION NO. 27:

SWB objects to this request on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including precipitation) . . ." Subject to its objection, the SWB has no knowledge with respect to whether all proposed class members within the proposed class geographical boundaries were "inundated."

Moreover the SWB has no knowledge as to the sources of the "initial inundation" for each class member. The source of the "initial inundation" experienced by each individual class member is not data compiled or utilized in the SWB's ordinary business activities. Therefore, the SWB is unable to truthfully admit or deny this request.

**REQUEST FOR ADMISSION NO. 28:**

Every member of Sub-Class Three experienced initial inundation that had as its sources the London Avenue Canal and the IHNC, or both.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

SWB objects to this request on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including precipitation) . . ." Subject to its objection, the SWB has no knowledge with respect to whether all proposed class members within the proposed class geographical boundaries were "inundated." Moreover the SWB has no knowledge as to the sources of the "initial inundation" for each class member. The source of the "initial inundation" experienced by each individual class member is not data compiled or utilized in the SWB's ordinary business activities. Therefore, the SWB is unable to truthfully admit or deny this request.

**REQUEST FOR ADMISSION NO. 29:**

Every member of Sub-Class Four experienced initial inundation that had as its sources the London Avenue Canal and the IHNC, or both.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

SWB objects to this request on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including

16

precipitation) . . ." Subject to its objection, the SWB has no knowledge with respect to whether all proposed class members within the proposed class geographical boundaries were "inundated." Moreover the SWB has no knowledge as to the sources of the "initial inundation" for each class member. The source of the "initial inundation" experienced by each individual class member is not data compiled or utilized in the SWB's ordinary business activities. Therefore, the SWB is unable to truthfully admit or deny this request.

## REQUEST FOR ADMISSION NO. 30:

Every member of Sub-Class Five experienced initial inundation that had as its sources the 17th Street Canal, the Orleans Canal, the London Avenue Canal, and the IHNC, or any of them.

## RESPONSE TO REQUEST FOR ADMISSION NO. 30:

SWB objects to this request on the grounds that the phrase "initial inundation" is vague and ambiguous, particularly in view of plaintiffs' definition of the term "inundation" to mean the mere "touching of real or personal property by water (other than but possibly including precipitation) . . ." Subject to its objection, the SWB has no knowledge with respect to whether all proposed class members within the proposed class geographical boundaries were "inundated." Moreover the SWB has no knowledge as to the sources of the "initial inundation" for each class member. The source of the "initial inundation" experienced by each individual class member is not data compiled or utilized in the SWB's ordinary business activities. Therefore, the SWB is unable to truthfully admit or deny this request.

## REQUEST FOR ADMISSION NO. 31:

The source of inundation affecting any member of the Class is a question that is common to every member of the Class.

17

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

Denied. Hurricane Katrina created numerous sources of inundation, as that term is defined by plaintiffs. The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 32:**

The source of inundation affecting any member of Sub-Class One is a question that is common to every member of that Sub- Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

Denied. Hurricane Katrina created numerous sources of inundation, as that term is defined by plaintiffs. The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 33:**

The source of inundation affecting any member of Sub-Class Two is a question that is common to every member of that Sub- Class.

18

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

Denied. Hurricane Katrina created numerous sources of inundation, as that term is defined by plaintiffs. The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 34:**

The source of inundation affecting any member of Sub-Class Three is a question that is common to every member of that Sub-Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

Denied. Hurricane Katrina created numerous sources of inundation, as that term is defined by plaintiffs. The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 35:**

The source of inundation affecting any member of Sub-Class Four is a question that is common to every member of that Sub-Class.

19

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

Denied. Hurricane Katrina created numerous sources of inundation, as that term is defined by plaintiffs. The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 36:**

The source of inundation affecting any member of Sub-Class Five is a question that is common to every member of that Sub- Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

Denied. Hurricane Katrina created numerous sources of inundation, as that term is defined by plaintiffs. The effect each source of inundation had with respect to a particular class member varies case by case.

**REQUEST FOR ADMISSION NO. 37:**

Whether the Corps, Boh Bros, Eustis, EJLD, M&M, OLD, and SWB committed the negligent acts and omissions described in Count I of the Complaint is a question that is common to every member of the Sub-Classes One, Two and Five.

20

## RESPONSE TO REQUEST FOR ADMISSION NO. 37:

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.")  However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

With respect to determining the existence of common issues for class certification purposed, the determination of whether a defendant was negligent, in a vacuum, is insufficient to establish legal or proximate causation of damages. Under Louisiana law, delictual liability consists of "fault, causation, and damages." *Dabog v. Deris*, 625 So.2d 493 (La. 1993). Therefore, for the fault of a defendant to be a common issue, that fault must have been a common cause of the damages sustained by all class members. Here, there are multiple defendants sued for "inundation" damages. Whether the fault, if any, of any defendant caused every proposed class member's damages, whether that fault combined with the fault, if any, of other defendants or persons to cause those damages, and in what combinations the fault of any defendant with other persons and defendants caused each class member's damages, are facts not compiled or utilized in the SWB's ordinary business activities. Therefore, whether the fault of the various defendants is a "common" issue for all class members are facts which are not known or readily available to the SWB upon reasonable inquiry to persons or review of document within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

## REQUEST FOR ADMISSION NO. 38:

Whether the Corps, Boh Bros, Eustis, EJLD, Gulf Group, M&M, OLD, Pitman and SWB committed the negligent acts and omissions described in Count II of the Complaint is a question that is common to every member of the Sub-Classes One, Two and Five.

### RESPONSE TO REQUEST FOR ADMISSION NO. 38:

Objection.  This request is improper as it seeks a conclusion of law.  *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.")  However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

With respect to determining the existence of common issues for class certification purposed, the determination of whether a defendant was negligent, in a vacuum, is insufficient to establish legal or proximate causation of damages.  Under Louisiana law, delictual liability consists of "fault, causation, and damages."  *Dabog v. Deris*, 625 So.2d 493 (La. 1993).  Therefore, for the fault of a defendant to be a common issue, that fault must have been a common cause of the damages sustained by all class members.  Here, there are multiple defendants sued for "inundation" damages.  Whether the fault, if any, of any defendant caused every proposed class member's damages, whether that fault combined with the fault, if any, of other defendants or persons to cause those damages, and in what combinations the fault of any defendant with other persons and defendants caused each class member's damages, are facts not compiled or utilized in the SWB's ordinary business activities.  Therefore, whether the fault of the various defendants is a "common" issue for all class members are facts which are not known or readily available to the SWB upon reasonable inquiry to persons or review of document within the SWB's control.  Consequently, the SWB is unable to truthfully admit or deny this request.

### REQUEST FOR ADMISSION NO. 39:

Whether the Corps, B&K Construction, Burk-Kleinpeter, and Gotech committed the negligent acts and omissions described in Count III of the Complaint is a question that is common to every member of the Sub-Classes One, Two and Five.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

With respect to determining the existence of common issues for class certification purposed, the determination of whether a defendant was negligent, in a vacuum, is insufficient to establish legal or proximate causation of damages. Under Louisiana law, delictual liability consists of "fault, causation, and damages." *Dabog v. Deris*, 625 So.2d 493 (La. 1993). Therefore, for the fault of a defendant to be a common issue, that fault must have been a common cause of the damages sustained by all class members. Here, there are multiple defendants sued for "inundation" damages. Whether the fault, if any, of any defendant caused every proposed class member's damages, whether that fault combined with the fault, if any, of other defendants or persons to cause those damages, and in what combinations the fault of any defendant with other persons and defendants caused each class member's damages, are facts not compiled or utilized in the SWB's ordinary business activities. Therefore, whether the fault of the various defendants is a "common" issue for all class members are facts which are not known or readily available to the SWB upon reasonable inquiry to persons or review of document within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

**REQUEST FOR ADMISSION NO. 40:**

Whether the Corps, OLD, and St. Paul committed the negligent acts and omissions described in Count IV of the Complaint is a question that is common to every member of the Sub-Classes Four and Five.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

With respect to determining the existence of common issues for class certification purposed, the determination of whether a defendant was negligent, in a vacuum, is insufficient to establish legal or proximate causation of damages. Under Louisiana law, delictual liability consists of "fault, causation, and damages." *Dabog v. Deris*, 625 So.2d 493 (La. 1993). Therefore, for the fault of a defendant to be a common issue, that fault must have been a common cause of the damages sustained by all class members. Here, there are multiple defendants sued for "inundation" damages. Whether the fault, if any, of any defendant caused every proposed class member's damages, whether that fault combined with the fault, if any, of other defendants or persons to cause those damages, and in what combinations the fault of any defendant with other persons and defendants caused each class member's damages, are facts not compiled or utilized in the SWB's ordinary business activities. Therefore, whether the fault of the various defendants is a "common" issue for all class members are facts which are not known or readily available to the SWB upon reasonable inquiry to persons or review of document within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

**REQUEST FOR ADMISSION NO. 41:**

Whether the Corps, CSX, OLD, PBR, PNO, and St. Paul committed the negligent acts and omissions described in Count V of the Complaint is a question that is common to every member of the Sub-Classes Four and Five.

24

**RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.") However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

With respect to determining the existence of common issues for class certification purposed, the determination of whether a defendant was negligent, in a vacuum, is insufficient to establish legal or proximate causation of damages. Under Louisiana law, delictual liability consists of "fault, causation, and damages." *Dabog v. Deris*, 625 So.2d 493 (La. 1993). Therefore, for the fault of a defendant to be a common issue, that fault must have been a common cause of the damages sustained by all class members. Here, there are multiple defendants sued for "inundation" damages. Whether the fault, if any, of any defendant caused every proposed class member's damages, whether that fault combined with the fault, if any, of other defendants or persons to cause those damages, and in what combinations the fault of any defendant with other persons and defendants caused each class member's damages, are facts not compiled or utilized in the SWB's ordinary business activities. Therefore, whether the fault of the various defendants is a "common" issue for all class members are facts which are not known or readily available to the SWB upon reasonable inquiry to persons or review of document within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

**REQUEST FOR ADMISSION NO. 42:**

Whether the Defendants, individually and alone, or together and in concert, violated Louisiana Civil Codes articles 667, 3215, 2316, 2317 and 2317.1, is a question that is common to every member of the Greater New Orleans Class.

25

**RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

Objection. This request is improper as it seeks a conclusion of law. *In re: Carney*, 258 F.3d 415, 419 (5th Cir. 2001)("Requests for admissions cannot be used to compel admission of a conclusion of law.")  However, in the event this objection is not sustained, and out of an abundance of caution, the SWB responds as follows:

Denied.

**REQUEST FOR ADMISSION NO. 43:**

The attorneys (and their respective firms) appointed by the Court as Plaintiffs' Liaison Counsel and as members of the LEVEE PSLC are competent to fairly and adequately protect the interests of the Greater New Orleans Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 43:**

The SWB admits that appointed class counsel and their firms are competent. However, in all other respects this request is denied because these same counsel represent plaintiffs in competing and over-lapping class and other actions which present conflicts of interests. These conflicts are particularly acute in these circumstances where defendants with limited assets have been sued by these same counsel in competing and over-lapping class and other actions.

**REQUEST FOR ADMISSION NO. 44:**

Inundation of the properties of the Class substantially contributed to the breakdown in social structure and loss of cultural heritage in the New Orleans area encompassed by the Class definition, and caused consequent damages to the Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

The SWB objects to this request on the grounds that it is overly broad, vague and ambiguous, and irrelevant. Subject to this objection, the SWB has no knowledge with respect to whether there has been breakdown in New Orleans' "social structure" or loss of "cultural

heritage," and whether such breakdown or loss caused damage to individual members of the proposed class. Such information is not data compiled or utilized in the SWB's ordinary business activities. Therefore, these facts are not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny this request.

## REQUEST FOR ADMISSION NO. 45:

Inundation of the properties of the Class substantially contributed to alteration of the physical, economic, political, social, and psychological character of the New Orleans area encompassed by the Class definition, and caused consequent damage to the Class.

## RESPONSE TO REQUEST FOR ADMISSION NO. 45:

The SWB objects to this request on the grounds that it is overly broad, vague and ambiguous, and irrelevant. Subject to this objection, whether inundation of properties has contributed to alteration of the physical, economic, political, social, and psychological character of the New Orleans area and whether this alteration caused damages to every proposed class member, is information not compiled or utilized in the SWB's ordinary business activities. Therefore, these facts are not known or readily available to the SWB upon reasonable inquiry to persons or review of documents within the SWB's control. Consequently, the SWB is unable to truthfully admit or deny the remainder of this request.

## REQUEST FOR ADMISSION NO. 46:

The causes of the class wide losses suffered by members of the Class and Five Sub-Classes are susceptible to analysis and determination on a class wide basis.

## RESPONSE TO REQUEST FOR ADMISSION NO. 46:

Denied. The class members' damages, if any, require individualized analysis and calculation.

27

## REQUEST FOR ADMISSION NO. 47:

The causes of the individual property losses suffered by members of the Class and the five Sub-Classes are susceptible to proof by way of a class trial.

## RESPONSE TO REQUEST FOR ADMISSION NO. 47:

Denied. The class members' damages, if any, require individualized analysis and calculation.

## REQUEST FOR ADMISSION NO. 48:

The source of inundation affecting any given property encompassed by the Class or five Sub-Classes is susceptible to analysis and determination of expert witnesses.

## RESPONSE TO REQUEST FOR ADMISSION NO. 48:

Denied that a single source of "inundation" "affected" every property and that this determination can be made on a class wide basis, but admitted that the potential sources of "inundation" for individual properties are susceptible to analysis and determination of causation by experts on a case by case basis.

## REQUEST FOR ADMISSION NO. 49:

The USA has undertaken efforts to analyze and determine the source or sources of inundation affecting properties encompassed by the Class and five Sub-Classes.

## RESPONSE TO REQUEST FOR ADMISSION NO. 49:

SWB objects to this request on the basis that it is vague and ambiguous in that the term "USA" is not defined. Subject to this objection, it is admitted that the U.S. Army Corps of Engineers was involved in the development of the IPET report. Otherwise, SWB has no knowledge whether or not the USA has undertaken efforts to analyze and determine the source or sources of inundation affecting properties encompassed by the Class and five Sub-Classes.

## RESPONSES TO FIRST SET OF INTERROGATORIES

### INTERROGATORY NO. 1:

For each request for admission you denied, or for which you qualified your answer, please provide the following: (i) a list of all persons, by name and title, you contacted in formulating your response; (ii) a description of the information they provided to you in formulating your response; and (iii) an explanation of the basis for your denial or qualification of your response.

### ANSWER TO INTERROGATORY NO. 1:

SWB objects to this interrogatory on ground that it requires disclosure of information protected by the attorney-client privilege and/or the work product of counsel for SWB. Subject to this objection:

    (I)     For each request for admission that was denied, and for each request for admission that was admitted with qualifications, Marcia St. Martin, Executive Director of the SWB.

    (II)     Ms. St. Martin provided these responses insofar as the information requested was known or readily available to the SWB upon reasonable inquiry of persons or review of documents within the SWB's control. Ms. St. Martin is intimately familiar with the documents and information compiled and maintained by the SWB.

    (III)     Objection. For each request for admission that was denied, and for each request for admission that was admitted with qualifications, the explanation for the denial or qualification is included within the response. Thus this interrogatory is redundant.

29

**INTERROGATORY NO. 2:**

If you contend that the Fed. R. Civ. P. 23(a) numerosity requirement is not satisfied as to the Class and/or any of its five proposed sub-classes, please (i) set forth every fact you believe supports your contention, and (ii) identify every witness you believe possesses knowledge of such facts, including which such facts each witness possesses. If you agree that the numerosity requirement is satisfied, please say so.

**ANSWER TO INTERROGATORY NO. 2:**

Reserving all objections and defenses to the motion for class certification save for the single element of numerosity under FRCP Rule 23(a)(1), the SWB states that it will not contest the "numerosity" element with respect to the proposed class and sub-classes.

**INTERROGATORY NO. 3:**

If you contend that any one or all of the respective claims set forth by the Class Representatives fails to satisfy the Fed. R. Civ. P. 23(a) typicality requirement with respect to the Class, please (i) set forth every fact you believe supports your contention, and (ii) identify every witness you believe possesses knowledge of such facts, including which such facts each witness possesses. If you agree that the class representatives satisfy the typicality requirement, please say so.

**ANSWER TO INTERROGATORY NO. 3:**

SWB contests whether the class representatives' claims satisfy the "typicality" requirement.

(i) and (ii):   The SWB believes that the sources of the inundation for each class member, the parties or persons responsible for the sources, and how those various sources combined to cause inundation, are different across the proposed class area. Moreover, whether the fault, if any, of any defendant caused every proposed class member's property damages or

30

losses, whether that fault combined with the fault, if any, of other defendants or persons to cause those damages, and in what combinations the fault of defendants and others may have combined to cause property damages are factors that are not known to the SWB at this time as discovery has just begun. Additionally, SWB believes that the damages sustained by each class representative are unique, and whether property damage or personal injury, will require individualized proof and analysis. The SWB has listed expert witnesses with respect to these issues, but they have not completed their analysis nor issued reports. Expert reports will be produced in compliance with the deadlines set forth in CMO #4. However, under Paragraph III(D)(5) of the CMO, drafts of class certification expert reports are considered protected work product and shall not be discoverable or admissible for any purpose, including impeachment.

**INTERROGATORY NO. 4:**

If you contend that the Class Representatives, or any of them, will not fairly and adequately protect the interests of the Class, please (i) set forth every facts you believe supports your contentions, and (ii) identify every witness you believe possesses knowledge of such facts, including which such facts each witness possesses.

**ANSWER TO INTERROGATORY NO. 4:**

SWB contests whether the class representatives' claims satisfy the "adequacy" requirement. This interrogatory is premature as discovery has just begun.

**INTERROGATORY NO. 5:**

Based upon the claims forms and/or all other information received to date, including the Complaint, please identify any defense you might set forth in response to any class member's claim against you that you would not set forth in any class representative's claim against you. If the answer is "none known at this time" please say so.

31

**ANSWER TO INTERROGATORY NO. 5:**

This request is premature as claim forms have not been produced and discovery has just begun.

**INTERROGATORY NO. 6:**

Do you agree that there are some questions of law or fact common to the members Class, including the class representatives?

**ANSWER TO INTERROGATORY NO. 6:**

No. There are no meaningful common questions of fact or law, as that term is used in Federal Rule of Civil Procedure 23 that could serve as the basis for representative litigation. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388,397 (6th Cir. 1998)(explaining that "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is common issue the resolution of which will advance the litigation.").

**INTERROGATORY NO. 7:**

Based upon the claims forms and/or all other information received to date, including the Complaint, please (i) identify all questions of law or fact affecting individual members of the Class that you contend would not also affect the Class Representatives and Sub-Class Representations, and (ii) state whether and in what way you contend that such individual questions predominate over questions that are common to the class members and the class representatives.

**ANSWER TO INTERROGATORY NO. 7:**

This request is premature as claim forms have not been produced and discovery has just begun.

## INTERROGATORY NO. 8:

Do you agree that a class action trial is the superior method for the fair and efficient adjudication of the controversies raised in this action vis-à-vis the members of the Class and five Sub-Classes? If not, please (i) state in detail why you disagree, and (ii) describe any and every procedure you contend would be superior, including in your description the reasons it would be superior.

## ANSWER TO INTERROGATORY NO. 8:

SWB objects to this interrogatory as premature because discovery in the case has just begun. Plaintiffs have not yet been deposed or responded to defendants' class discovery, and discovery has not yet been taken of SWB's co-defendants or third parties. SWB should not be required to determine and state its class-opposition arguments now, when discovery is still ongoing.

SWB also objects because this interrogatory improperly accelerates the deadline (established by the Court in CMO #4) for SWB to state its basis for opposing class certification. Moreover, the interrogatory improperly seeks to shift the burden of proof by having SWB declare its position on the superiority requirement of Federal Rule of Civil Procedure 23 before SWB has seen plaintiffs' brief and evidence in support of their motion for class certification.

SWB further objects to the interrogatory because Federal Rule of Civil Procedure 23 places the burden of proof on the named plaintiffs to establish that a class-action trial would be superior to individual trials: it is not the defendants' burden to show the contrary, and the interrogatory thus subverts the burden of proof requirements of Federal Rule of Civil Procedure 23.

Furthermore, SWB objects to the interrogatory because it calls for a conclusion of law, improperly invades the attorney-client privilege and violates the opinion-work-product doctrine: while directed to SWB, the interrogatory can only be answered by SWB's litigation counsel.

Subject to the foregoing objections, SWB will contend that this proposed class action does not satisfy the superiority requirement of Federal Rule of Civil Procedure 23. Class certification will not avoid multiple trials to determine liability and damages regarding multiple class members.

## INTERROGATORY NO. 9:

Please identify and describe in detail every difficulty you contend is likely to be encountered in the management of the class action proposed by the Complaint.

## ANSWER TO INTERROGATORY NO. 9:

Objection. This interrogatory is premature, vague, ambiguous, overly broad and burdensome and calls for legal opinions

SWB objects to this interrogatory as premature because discovery in the case has just begun. Plaintiffs have not yet been deposed or responded to defendants' class discovery, and discovery has not yet been taken of SWB's co-defendants or third parties. SWB should not be required to determine and state its class-opposition arguments now, when discovery is still ongoing.

SWB also objects because this interrogatory improperly accelerates the deadline (established by the Court in CMO #4) for SWB to state its basis for opposing class certification. Moreover, the interrogatory improperly seeks to shift the burden of proof by having SWB declare its position on the manageability requirement of Federal Rule of Civil Procedure 23 before SWB has seen plaintiffs' brief and evidence in support of their motion for class certification.

34

SWB further objects to the interrogatory because Federal Rule of Civil Procedure 23 places the burden of proof on the named plaintiffs to establish that a class-action trial would be manageable; it is not the defendants' burden to show the contrary, and the interrogatory thus subverts the burden of proof requirements of Federal Rule of Civil Procedure 23.

Furthermore, SWB objects to the interrogatory because it improperly invades the attorney-client privilege and violates the opinion-work-product doctrine: while directed to SWB, the interrogatory can only be answered by SWB's litigation counsel.

Subject to the foregoing objections, SWB will contend that this proposed class action does not satisfy the manageability requirement of Federal Rule of Civil Procedure 23. Class certification will not avoid multiple trials to determine liability and damages regarding multiple class members.

**INTERROGATORY NO. 10:**

Please state the total number of Form 95s submitted which forms set forth claims by Louisiana citizens against the United States Army Corps of Engineers for losses arising in connection with Hurricane Katrina.

**ANSWER TO INTERROGATORY NO. 10:**

SWB does not know the total number of Form 95s submitted by Louisiana citizens against the USACE, nor does it have information at its disposal to make that determination.

**INTERROGATORY NO. 11:**

Please describe in detail the ways in which the information contained in the Form 95s described in the preceding interrogatory has been compiled and collated by the USA, e.g., by ZIP code, by damage type, by potential source of inundation, etc., including each format in which such compiled and/or collated information exists, e.g., database, spreadsheet, physical repository, etc.

35

**ANSWER TO INTERROGATORY NO. 11:**

Unknown.

**INTERROGATORY NO. 12:**

Please describe the results/conclusions of the reports of all efforts to date undertaken by you to estimate the number of persons who sustained damages or incurred losses in the geographical area covered by the Class and its five Sub-Classes.

**ANSWER TO INTERROGATORY NO. 12:**

SWB has not yet made an effort to determine or estimate the number of persons who may have sustained damages or incurred losses related to Hurricane Katrina in any geographic area.

**INTERROGATORY NO. 13:**

Please describe in detail each source of inundation and the manner in which you contend the inundation occurred with respect to the geographical area encompassed by the five Sub-Classes (e.g., flooded solely by one water source, flooded by commingled sources).

**ANSWER TO INTERROGATORY NO. 13:**

SWB objects to this interrogatory in the basis that it is premature as discovery has just begun. Subject to this objection, the SWB has listed expert witnesses with respect to these issues, but they have not completed their analysis nor issued reports. Expert reports will be produced in compliance with the deadlines set forth in CMO #4. However, under Paragraph III(D)(5) of the CMO, drafts of class certification expert reports are considered protected work product and shall not be discoverable or admissible for any purpose, including impeachment.

**INTERROGATORY NO. 15:**

Please identify by name, employer, position, and current professional address each person who has assisted in the formulation of responses to any of your responses to each part or sub-part

36

of the Levee Class Plaintiffs' First Set of Requests for Admission, Interrogatories, and Requests

for Production.

## ANSWER TO INTERROGATORY NO. 15:

The responses were formulated by undersigned counsel with assistance in some instances

from Marcia St. Martin, Executive Director of the SWB.

## RESPONSES TO REQUEST FOR PRODUCTION OF DOUMENTS

## REQUEST FOR PRODUCTION NO. 1:

Please produce a copy of every Form 95 that sets forth a claim by any Louisiana citizens

against the United States Army Corps of Engineers for losses arising in connection with

Hurricane Katrina.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

See attached Form 95 submitted by the SWB.

## REQUEST FOR PRODUCTION NO. 2:

Please produce a copy of all electronic files, databases, spreadsheets or other documents

that sort, collate, organize, categorize, or deal in some similar fashion with the Form 95s, or any

of them, identified in the preceding request and/or any information contained in such Form 95s.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

None in the possession of SWB.

## REQUEST FOR PRODUCTION NO. 3:

Please provide a copy of each and every document that contains or reflects any estimate

or precise calculation of the total dollar value of all claims asserted against the USA by way of

the Form 95s identified in Request No. 1.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

None in the possession of the SWB.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce a copy of each and every document that you believe supports your answers to Interrogatories No. 2-4 above, or any of them.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

This request is premature. SWB's expert reports, with supporting citations will be produced in conformity with the requirements of Case Management Order No. 4. At this time, see exhibit lists previously filed by SWB and others.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce a copy of every document consulted, obtained, or generated in connection with any activities described in response to Interrogatory No. 11 above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

SWB does not possess or control such documents.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce a copy of every document consulted, obtained, or generated in connection with any activities described in response to Interrogatory No. 12 above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

SWB objects to this request on the basis that it calls for information protected by the attorney client privilege and work product doctrine. Subject to this objection, SWB does not possess or control such documents.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce a copy of each and every document that would establish the number of persons residing on August 28, 2005, in the geographical area encompassed by the Class definition, or any Sub-Class of it.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

SWB does not possess or control such documents.

### REQUEST FOR PRODUCTION NO. 8:

Please produce a copy of each and every document that would establish the number of persons residing in the geographical area encompassed by the Class definition, or any Sub-Class of it, since August 29, 2005.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

SWB does not possess or control such documents.

### REQUEST FOR PRODUCTION NO. 9:

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the source of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

SWB objects to this request on the basis that it includes information privileged under the attorney work product doctrine. Subject to this objection, SWB's expert reports, with supporting citations, will be produced in conformity with the requirements of Case Management No. 4. At this time, see exhibit lists, including public reports listed therein, previously filed by SWB and others.

### REQUEST FOR PRODUCTION NO. 10:

Please provide a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the cause of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

SWB objects to this request on the basis that it includes information privileged under the attorney work product doctrine. Subject to this objection, SWB's expert reports, with supporting citations, will be produced in conformity with the requirements of Case Management No. 4. At this time, see exhibit lists, including public reports listed therein, previously filed by SWB and others.

## REQUEST FOR PRODUCTION NO. 11:

Please provide a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the process of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

SWB objects to this request on the basis that it includes information privileged under the attorney work product doctrine. Subject to this objection, SWB's expert reports, with supporting citations, will be produced in conformity with the requirements of Case Management No. 4. At this time, see exhibit lists, including public reports listed therein, previously filed by SWB and others.

## REQUEST FOR PRODUCTION NO. 12:

Please provide a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the timing of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

SWB objects to this request on the basis that it includes information privileged under the attorney work product doctrine. Subject to this objection, SWB's expert reports, with supporting citations, will be produced in conformity with the requirements of Case Management No. 4. At

40

this time, see exhibit lists, including public reports listed therein, previously filed by SWB and others. Further, SWB states that it possesses certain pumping station logs which may contain information which is relevant to this request. Any such logs will be produced in connection with SWB's initial document production due on May 29, 2007.

**REQUEST FOR PRODUCTION NO. 13:**

Please provide a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the <u>depth</u> of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

SWB objects to this request on the basis that it includes information privileged under the attorney work product doctrine. Subject to this objection, SWB's expert reports, with supporting citations, will be produced in conformity with the requirements of Case Management No. 4. At this time, see exhibit lists, including public reports listed therein, previously filed by SWB and others. Further, SWB states that it possesses certain pumping station logs which may contain information which is relevant to this request. Any such logs will be produced in connection with SWB's initial document production due on May 29, 2007.

**REQUEST FOR PRODUCTION NO. 14:**

Please provide a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the <u>duration</u> of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

SWB objects to this request on the basis that it includes information privileged under the attorney work product doctrine. Subject to this objection, SWB's expert reports, with supporting citations, will be produced in conformity with the requirements of Case Management No. 4. At

this time, see exhibit lists, including public reports listed therein, previously filed by SWB and others. Further, SWB states that it possesses certain pumping station logs which may contain information which is relevant to this request. Any such logs will be produced in connection with SWB's initial document production due on May 29, 2007.

## REQUEST FOR PRODUCTION NO. 15:

Please provide a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the receding of any inundation within the geographical area encompassed by the Class definition, or any Sub-Class of it.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

SWB objects to this request on the basis that it includes information privileged under the attorney work product doctrine. Subject to this objection, SWB's expert reports, with supporting citations, will be produced in conformity with the requirements of Case Management No. 4. At this time, see exhibit lists, including public reports listed therein, previously filed by SWB and others. Further, SWB states that it may possess pumping station logs which may contain information which is relevant to this request. Any such logs will be produced in connection with SWB's initial document production due on May 29, 2007.

## REQUEST FOR PRODUCTION NO. 16:

Please provide a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the timing, duration, and depth of precipitation during the period August 27, 2005, and September 1, 2005, within the geographical area encompassed by the Class definition, or any Sub-Class of it.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

SWB's expert reports, with supporting citations, will be produced in conformity with the requirements of Case Management No. 4. At this time, see exhibit lists previously filed by SWB

and others.  Further, SWB states that it possesses certain pumping station logs which may contain information which is relevant to this request.  Any such logs will be produced in connection with SWB's initial document production due on May 29, 2007.

Defendants reserve the right to supplement the discovery responses as information becomes available.

Respectfully submitted,

CHARLES M. LANIER, JR. -- 18299
J. WARREN GARDNER, JR. -- - 5928
KEVIN R. TULLY - BAR #1627
GREGORY S. LACOUR - 23823
CHRISTOVICH & KEARNEY, LLP
601 Poydras Street Suite 2300
New Orleans, Louisiana 70130-6078
Telephone: (504) 561-5700
Facsimile: (504) 561-5743

GEORGE R. SIMNO III, T.A. -- 12271
GERARD M. VICTOR -- 9815
625 St. Joseph Street, Room 201
New Orleans, Louisiana 70165
Telephone: (504) 585-2242
Facsimile: (504) 585-2426

ATTORNEYS FOR SEWERAGE AND
WATER BOARD OF NEW ORLEANS

43

## CERTIFICATE

I hereby certify a copy of the above and foregoing has been served upon Plaintiffs' Liaison

Counsel, Joseph M. Bruno, and Defendant's Liaison Counsel, Ralph S. Hubbard, via electronic

transmission on the 30th day of April, 2007.

_____
CHARLES M. LANIER, JR.

| FORM APPROVED<br>OMB NO.<br>1105-0008 | CLAIM FOR DAMAGE,<br>INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply<br>information requested on both sides of this form. Use additional sheet(s) if necessary. See<br>reverse side for additional instructions. |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>United States of America, Department of the Army,<br>Corps of Engineers<br>7400 Leake Avenue<br>New Orleans, Louisiana 70118 | 2. Name, Address of claimant and claimant's personal representative, if any.<br>(See instructions on reverse.) (Number, street, city, State and Zip Code)<br><br>Sewerage & Water Board of New Orleans<br>New Orleans, Louisiana 70165, through its representative<br>attorneys, Christovich & Kearney, LLP (see exhibit "A",<br>625 St. Joseph Street) |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☑ CIVILIAN | N/A | N/A | on or about Monday, 29 August 2005 | Unknown, continuous |

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof.) (Use additional pages if necessary.)

See Exhibit "B" for the description of the facts and circumstances attending the damages asserted in the Sewerage & Water Board of New Orleans' claim, and exhibit "C" Project Managers PW Report 01-19-07.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

The City of New Orleans may hold title to some of the damaged or destroyed equipment/facilities for claimant's benefit.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

The public water, drainage and sewerage system of New Orleans and their standard equipment and facilities were severely damaged and/or destroyed, and claimant suffered property losses, lost business and revenue because of the claimed event.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Not applicable.

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| G. Joseph Sullivan<br>Marcia St. Martin | Sewerage & Water Board of New Orleans, 625 St. Joseph Street<br>New Orleans, Louisiana 70165 |

| 12. (See instructions on reverse) | AMOUNT OF CLAIM (in dollars) | | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause<br>forfeiture of your rights.) |
| $440,000,000.00 | N/A | N/A | $440,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT
IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| *Marcia A. Gilbert* | (504) 661-5700 | 28 February 2007 |

| CIVIL PENALTY FOR PRESENTING<br>FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT<br>CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000, plus<br>double the amount of damages sustained by the United States.<br>(See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both.<br>(See 18 U.S.C. 287, 1001.) |

| 95-109<br>(See 31 U.S.C. 3729.) | NSN 7540-00-634-4046 | STANDARD FORM 95 (Rev. 7-85)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |

This form was electronically produced by National Procurement Services Staff

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

**Complete all items - Insert the word NONE where applicable**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to

Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes, If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number. ☑ No

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

See description in item 19 below

17. If deduction, state amount

The deductible is 2% of the claim to a maximum of $500,000.00.

18. If claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? *(It is necessary that you ascertain these facts)*

Claimant has claims pending with FEMA, but no action by FEMA on those claims has yet been taken.

19. Do you carry public liability and property damage insurance? ☑ Yes, If yes, give name and address of insurance carrier *(Number, street, city, State, and Zip Code)* ☐ No

Claimant maintains property insurance with Continental Casualty Company with $30 million for certain buildings and $4.7 million for contents. The policy covers fire and wind storm damage, but not flood. The deductible is 2% of the claim to a maximum of $500,000.00.

*"RE-BUILDING THE CITY'S WATER SYSTEMS FOR THE 21st CENTURY"*

## *Sewerage & Water Board* OF NEW ORLEANS

TOMMIE A. VASSEL, President Pro-Tem
C. RAY NAGIN, President

525 ST. JOSEPH STREET
NEW ORLEANS, LA 70165 • 504-529-2837
www.swbno.org

January 23, 2007

Mr. Charles M. Lanier, Jr.
Christovich & Kearney, L.L.P.
Attorneys at Law
Suite 2300, Pan American Life Center
601 Poydras Street
New Orleans, LA 70130

Re: Sewerage and Water Board of New Orleans Katrina Lawsuits

Dear Mr. Lanier:

On January 17, 2007 I made a recommendation to the directors of the Sewerage and Water Board of New Orleans, at its regular scheduled meeting, of my intention to engage your law firm to represent the Board in the various lawsuits filed against us in connection with damages from Hurricane Katrina. That recommendation was unopposed and therefore, I am pleased to advise that Christovich and Kearney are now engaged at the conditions and rates expressed in your letter to me dated January 9, 2007.

I look forward to meeting with you on Tuesday morning, January 23, 2007 in my office, at which time we will be able to discuss, in greater detail, the existing 43 lawsuits.

With best regards,

Very truly yours,

GERARD M. VICTOR
SPECIAL COUNSEL

GMV:mH
n:\lit\deh\hurricane katrina\070123lanletfirpresentation.doc

Members of the Board:  BENJAMIN L. EDWARDS SR. • SIDNEY H. EVANS, JR. • ARNIE FIELKOW • NORMA E. GRACE • BARBARA LAMONT • ALEX J. LEWIS, I
C. RAY NAGIN • PENELOPE RANDOLPH • FLORENCE W. SCHORNSTEIN • GARY N. SOLOMON • OLIVER M. THOMAS, JR • TOMMIE A VASSEL • CYNTHIA WILLARD-LEWIS
* An Equal Opportunity Employer *

EXHIBIT
A

RIDER TO STANDARD FORM - 95

The United States, through the U.S. Army Corps of Engineers, exclusively planned, controlled, and supervised the design and construction of levees, I-walls, spoilbanks, flood walls and waterways, including but not limited to the Mississippi River Gulf Outlet (MRGO), 17th Street Canal, Industrial Canal, the Orleans Canal, and/or the London Avenue Canal, the outer levees fronting Lake Borgne, their tributaries, other tributaries, which failed on or about August 29, 2005, causing damage to property owned and/or used for the benefit of the Sewerage and Water Board of New Orleans. The United States, through the U.S. Army Corps of Engineers, knew or reasonably should have known of the negligent and/or defective planning, controlling and supervising of the above which lead to the failures and the resulting damages the Sewerage and Water Board of New Orleans claims.

The $440,000,000.00 claim the Sewerage and Water Board of New Orleans is derived by adding together $350,000,000.00 in lost and/or damaged equipment and facilities plus $90,000,000.00 in lost revenue. Because of the magnitude of the past losses, and the ongoing business losses, the total losses will exceed the amounts claimed pursuant to the claimant's claim filed on Wednesday, 28 February 2007.



Project Managers PW Report
01-19-07

| Status | HSES Number | Project NO. | Project Manager | View Pw | Cat | Damaged Facility | Project Condition | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Mine** | | | | | | | | | | | | |
| | 3333 | DW05X02 | Ethel Williams | DRUM1 | B | OVERTIME FOR EMERGENCY WORK | 100% | Out on Appeal | $ 14,500,000.00 | | $ 2,976,420.00 | $ 2,976,420.00 |
| | 6420 | DW05X01 | General Victor | DRUM1 | B | FARRELL TRAILER | 100% | ALL DOCUMENTATION SUBMITTED | $ 3,630,487.59 | | $ 1,159,231.98 | $ 1,159,231.98 |
| | 6965 | DW05X02 | General Victor | DRUM1 | D | ALUSTRS TRAILER | 97% | | $ 1,633,568.00 | | $ 1,363,920.00 | $ 1,363,920.00 |
| | 6221 | DW05X03 | General Victor | DRUM1 | B | JEFF DAVIS TRAILER Park | 100% | | $ 600,014.54 | $8,878.54 | | $ 8,878.58 |
| | 8 | DW0347 PW1 | Gable | DRUM1 | D | POTABLE Water | 100% | Is De be Proceeding | $ 6,078,274.67 | | | - |
| | 309.0 | DW06X04 | General Victor | DRUM1 | B | TEMPORARY OFFICE (BUILDINGS ASKS) | 100% | Contract as Projected Cost | $ 117,002.00 | | $ 117,002.00 | $ 117,002.00 |
| | 6409 | DW06X05 | Gordon Austin | DRUM1 | B | PREVENTIVE MEASURES | 100% | ALL DOCUMENTATION SUBMITTED | $ 325,000.00 | | $ 58,974.72 | $ 58,974.72 |
| | 1016.0 | DW06X11 | Gordon Austin | DRUM1 | B | BUILDING INSPECTIONS FOR HEALTH AND SAFETY | 100% | involves with Contracts and Blds | $ 15,254.00 | $15,254.00 | | $ 15,293.95 |
| | 687.0 | DW06X04 | Jason Higginbotham | DRUM1 | D | EMERGENCY IDENTIFICATION BADGES | 100% | | $ 60,708.81 | | $ 60,708.81 | $ 60,708.81 |
| | | DW06X14 | Jason Higginbotham | | D | Mutual Aid Labor | 100% | | $ 170,000.00 | | | - |
| | 3362 | DW06X09 | Lynn Cabette | DRUM1 | D | Advertisement and and phone bills | 80% | All Documentation Submitted | $ 199,000.00 | 0 | | - |
| | | DW06X70 | Pat Ward | | F | hand-held electronic meter readers | 100% | involves with Contracts and Blds | $ 9,555.00 | $9,555.00 | | $ 9,555.95 |
| | 6152.0 | DW06X0178 | Leonard Hersh | DRUM1 | B | EMERGENCY LAND FOOD DISTRIBUTION | 100% | Volu. support documentation | $ 184,005.12 | | $ 184,005.12 | $ 184,005.12 |
| | 4016 | DW07X2 | Gordon Austin | DRUM1 | F | Pump Stations Cleaning and Disinfection | 100% | | $ 2,650.57 | | | - |
| | 4016 | DW07X3 | Jason Higginbotham | DRUM1 | F | Emergency Satellite office contracts | 100% | | $ 1,000.00 | | | - |
| | 4018 | DW07X04 | Emile Anderson | DRUM1 | E | Per Haoard and theft devices | 20% | | $ 2,200,000.00 | | | - |
| | 4160 | DW07X1X | Robin Angele | DRUM1 | E | Carrollton Water Plant Control Building | | | $ 7,007.00 | $7,007.00 | | $ 7,007.00 |
| | 6072 | DW07X8 | Teddi | DRUM1 | E | East Bank and West Bank Water Treatment Plants | | | $ 671,758.63 | | $ 671,766.88 | $ 671,758.88 |
| | 6051 | DW07X9 | Verety | DRUM1 | E | East Bank WWTP De Batteries Replacement | | | $ 18,947.02 | $16,987.02 | | $ 16,987.02 |
| | 6093 | DW07X91 | Verety | DRUM1 | D | Central Arkansas Water | 100% | | $ 68,952.65 | | | - |
| | 13526 | DW07X14 | CROCKETT Higginbotham | DRUM1 | A | CANAL CLEANING | | | $ 450,000.00 | | $ 450,000.00 | $ 450,000.00 |

BY JACOB HIGGENBOTHAM
EMERGENCY MANAGER



EXHIBIT C

# Power

| Status | HSNO Number | Project NO. | Project Manager | View PW | Col | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 31010 | DW015 | Gary Sarrat | DW/m | F | Underground Feeder Repair/Replace | 33% | Bid and Contracts | 2,574,411.00 | | $1,609,814.59 | 1,609,814.59 |
| | 1005.3 | DU0530103 | Gary Sarrat | DW/m | F | 2011EUTZ OVERHEAD DISTRIBUTION | 100% | Bid and Contracts | 477,937.00 | | 477,937.00 | 477,937.00 |

# Networks

| Status | HSNO Number | Project NO. | Project Manager | View PW | Col | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 331-0 | DW040V1 | Brad Dennie | DW/NL | F | CLEAN AND RESPECT Sewerage COLLECTION NETWORK | 52% | | 29,000,000.00 | | 13,934,000.00 | 13,934,000.00 |
| | 84262 | DW040G | Rudy August | DW/NL | F | WATER REPAIR SYSTEMS | 41% | | 19,138,364.40 | | 19,138,364.40 | 19,138,070.20 |
| | 331V-3 | DW0507 | Rudy August | DW/NL | B | REPAIR SEWAGE COLLECTION NETWORK | 40% | Bid and Contracts | 44,904,922.00 | | 11,290,000.00 | 10,166,300.00 |
| | 0068 | DW0541 | Brad Dennie | DW/NL | F | Sewer force mains - Parish-Wide Manholes only | 100% | | 50,566.63 | | 50,566.63 | 50,566.63 |
| | 8117 | n0371 | Rudy August | | | LIFT FORCE MAIN AT MICHOUD | | | | | | |

# St. Joe

| Status | HSNO Number | Project NO. | Project Manager | View PW | Col | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4110 | DW060A5 | David Morris | DW/STL | E | ST JOSEPH OFFICE BUILDING | 50% | Bid and Contracts | 1,184,240.00 | | 1,184,240.00 | 86,673.56 |
| | | DW0521 | Malcolm Nelson | DW/STL | F | Computer Center UPS | 100% | All Documentation Submitted | 18,000.00 | | 18,000.00 | 18,000.00 |
| | 000-0 | DW060V99 | Jacqueline Dulac | DW/STL | E | MAILBOX POSITIVE5 LOADING SYSTEM REPLACEMENT | 100% | Bid and Contracts | 135,892.00 | | 135,892.00 | 135,892.00 |
| | 5114 | DW060A3 | Rudy D Cornelis | DW/STL | E | Document Restoration | 100% | ALL DOCUMENTATION SUBMITTED | 306,052.00 | 181,250.40 | 318,052.00 | 100,848.90 |
| | 19730 | DW0 635 | James Defean | DW/STL | E | St Joe and Central Yard Complexes | | | 61,238.40 | | | 61,298.41 |
| | 14019 | DW0541 | | | | St Joe Call Center | 90% | | 167,154.07 | | 167,154.07 | 167,154.07 |
| | 14253 | DW0440 | | | | Storm Damage to St.Joe | 100% | | 112,244.78 | | 112,244.78 | 112,244.78 |

BY JACOB HOOTMOTHAM
EMERGENCY MANAGER

Project Managers PM Report
01-19-07

## Central Yard

| Status | NEPR Number | Project NO. | Project Manager | View PW | Cat | Designed Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 5005 | DV810253-1 | Howard Hobard | DR12H | E | Central Yard Garage #1 | 20% | Contract or Projected Cost | $164,300.77 | | $164,300.77 | $164,300.77 |
| | 3040 | DV810029 | Howard Hobard | DR13H | C | CENTRAL YARD PARKING LOT | 20% | Invoices with Contracts and Bids | $33,157.00 | $33,157.00 | | $33,157.00 |
| | 3738 | DV810311 | Howard Hobard | DR12H | E | CENTRAL YARD FENCE | 75% | Invoices with Contracts and Bids | $104,858.00 | | $104,858.00 | $104,858.00 |
| | 8250 | DV810302 | Howard Hobard | DR13H | E | CENTRAL YARD ICE HOUSE | 20% | Bid list and Contracts | $5,000.00 | $18,738.00 | | $10,736.00 |
| | 3730 | DV810302 | Howard Hobard | DR13H | E | CENTRAL YARD FUEL DOCK | 20% | Invoices with Contracts and Bids | $22,165.75 | $1,000.04 | | $1,000.04 |
| | 7890.0 | DV810034 | Howard Hobard | DR12H | E | CENTRAL YARD GARAGE #2 | 20% | Bid list and Contracts | $200,000.00 | | $200,000.00 | $100,587.00 |
| | 6072 | DV810304 | Howard Hobard | DR12H | E | CENTRAL YARD GARAGE #1 | 20% | Bid list and Contracts | $400,000.00 | | $400,000.00 | $70,292.35 |
| | 5640 | DV810204 | Howard Hobard | DR12H | E | CENTRAL YARD MACHINE AND MAIL SHOP | 20% | Bid list and Contracts | $130,935.00 | | $130,935.00 | $47,945.75 |
| | | DV810207 | Howard Hobard | | E | CENTRAL YARD BODY SHOP BUILDING 7 | 20% | Contract or Projected Cost | $100,000.00 | | $100,000.00 | |
| | 6976.0 | DV810318 | Howard Hobard | DR12H | E | CENTRAL TIRE SHOP BUILDING 3 | 20% | Invoice and Bid list | $60,007.00 | $64,721.00 | $3,018.10 | $25,651.05 |
| | 1865 | DV810329 | Howard Hobard | DR12H | E | CENTRAL YARD GEN ROOM POWER | 20% | Contract or Projected Cost | $50,000.00 | $87,624.70 | $80,907.00 | $9,219.93 |
| | 8018 | DV810343 | Howard Hobard | DR12H | E | CENTRAL YARD D-BID BUILDING 6 | 20% | Bid list and Contracts | $350,014.00 | | $320,904.50 | $51,993.31 |
| | 1518 | DV810343 | Howard Hobard | DR13H | E | CENTRAL NEW WAREHOUSE FACILITY | 20% | Bid list and Contracts | $518,846.00 | | $518,846.00 | $210,735.95 |
| | 3432 | DV810343 | Howard Hobard | DR12H | E | CENTRAL YARD ANNEX BUILDING | 20% | Bid list and Contracts | $50,000.00 | | $874,170.80 | $28,698.25 |
| | 5502.0 | DV810343 | Howard Hobard | DR12H | E | CENTRAL YARD ANNEX BLDG | 20% | | $50,000.00 | $19,311.10 | | $29,311.31 |
| | 6815 | DV810304 | Howard Hobard | DR12H | F | CENTRAL YARD WAREHOUSE HUMSEN 1 | 20% | Contract or Projected Cost | $10,000.00 | $10,000.00 | | $15,918.55 |
| | 4505 | DV810314 | Howard Hobard | DR13H | F | Central Yard New Warehouse - additional contents | 0% | | $150,000.00 | $41,003.22 | | $41,003.22 |
| | 13108 | DV810477 | Howard Hobard | DR13H | F | CENTRAL YARD WAREHOUSE MAXON'S CONTENTS | 0% | | $193,000.00 | $1,000.00 | | $1,000.04 |
| | 12555 | DV810430 | Howard Hobard | DR13H | F | CENTRAL YARD GARAGE (REPAIR OF TURBINE AND MOTOR | 0% | | $10,021.02 | $10,021.02 | | |
| | 12413 | DV810473 | Howard Hobard | DR13H | F | CENTRAL YARD TRUCK SCALE REPAIR | 75% | Bid list and Contracts | $100,000.00 | | $100,000.00 | $23,406.05 |
| | 8611 | DV810253 | Howard Hobard | DR13H | F | Central Yard Admin Building - contents | 0% | Bid list and Contracts | $2,395,583.90 | | $2,295,583.95 | $1,877,542.45 |
| | 14537 | DV810413 | Howard Hobard | DR13H | F | CENTRAL YARD GARAGE #3 SPARE PARTS | 0% | Bid list and Contracts | $142,000.00 | $41,003.23 | | $41,003.23 |

Garage 1 contents

Project Managers PW Report
01-19-07

| Status | HSMS Number | Project NO. | Project Manager | View Pw | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|--------|-------------|-------------|-----------------|---------|-----|------------------|---------------------|-----------------------------------------------|----------------------------------|------------------------------|------------------------------|----------------------------|
|        |             |             |                 |         |     |                  |                     |                                               |                                  |                              |                              |                            |

BY JASON HIGGINBOTHAM
EMERGENCY MANAGER

Project Managers PM Report
05-15-07

## Sewerage Station

| Name | HDNS Number | Project NO. | Project Manager | Vwr/Pw | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 377.0 | DV6EAD20 | Bob Moehlan | DM1PH | F | EMERGENCY ELECTRICAL REPAIRS SEWAGE PUMPING STATION A | 100% | Invoice and bid list | $ 150,000.00 | | $ 150,000.00 | $ 150,000.00 |
| | 378.0 | DV6EAD21 | Bob Moehlan | DM1WL | F | EMERGENCY ELECTRICAL REPAIRS SEWAGE PUMP STATION D | 100% | Invoice and bid list | $ 425,000.00 | | $ 425,000.00 | $ 425,000.00 |
| | 637.0 | DV6EAD30 | Bob Moehlan | DM1PH | F | SSPS-1 | 25% | Invoice and bid list | $ 763,600.00 | | $ 297,418.00 | $ 297,418.00 |
| | 631.0 | DV6EAD31 | Bob Moehlan | DM1PH | F | SSPS-3 | 25% | Invoice and bid list | $ 178,000.00 | | | $ 34,072.15 |
| | 1131.0 | DV6EAD32 | Bob Moehlan | DM1WL | F | SSPS-4 | 25% | Invoice and bid list | $ 890,000.00 | | $ 121,383.94 | |
| | 831.0 | DV6EAD34 | Bob Moehlan | DM1WL | F | SSPS-5 | 25% | Invoice and bid list | $ 763,600.00 | | $ 297,418.00 | $ 297,418.00 |
| | 4103 | DV6EAD04 | Bob Moehlan | DM1WL | F | SSPS-6 | 25% | Bid list and Contracts | $ 763,600.00 | $39,854.00 | $ 297,418.00 | $ 297,418.00 |
| | 623 | DV6EAD05 | Bob Moehlan | DM1PH | F | SSPS-8 | 25% | Bid list and Contracts | $ 890,000.00 | $14,530.00 | | 20,163.51 |
| | 1231 | DV6EAD06 | Bob Moehlan | DM1PH | F | SSPS-9 | 25% | Bid list and Contracts | $ 890,000.00 | $7,235.13 | | 11,124.02 |
| | 1878 | DV6EAD07 | Bob Moehlan | DM1PH | F | SSPS-14 | 25% | Bid list and Contracts | $ 890,000.00 | | $ 200,164.00 | 200,164.06 |
| | 1834 | DV6EAD08 | Bob Moehlan | DM1PH | F | SSPS-16 | 25% | Bid list and Contracts | $ 763,600.00 | | $188,318.00 | 92,171.85 |
| | 850.0 | DV6EAD09 | Bob Moehlan | DM1PH | F | SSPS-17 | 25% | Bid list and Contracts | $ 763,600.00 | | $312,043.31 | 67,072.41 |
| | 850.6 | DV6EAD10 | Bob Moehlan | DM1PH | F | SSPS-18 | 25% | Bid list and Contracts | $ 763,600.00 | $28,045.13 | | 42,003.24 |
| | 850.0 | DV6EAD21 | Bob Moehlan | DM1PH | F | SSPS-18 | 25% | Bid list and Contracts | $ 178,000.00 | $1,000.00 | | 1,000.05 |
| | 850.6 | DV6EAD73 | Bob Moehlan | DM1PH | F | SSPS-20 | 25% | Bid list and Contracts | $ 763,600.00 | | $ 293,731.00 | 83,690.7 |
| | 866.0 | DV6EAD74 | Bob Moehlan | DM1PH | F | SSPS-21 | 25% | Bid list and Contracts | $ 178,000.00 | $81,188.00 | $ 124,084.00 | 101,378.55 |
| | 852.0 | DV6EAD75 | Bob Moehlan | DM1PH | F | SSPS-22 | 25% | Bid list and Contracts | $ 178,000.00 | | | 38,158.55 |
| | 872.0 | DV6EAD76 | Bob Moehlan | DM1PH | F | SSPS-23 | 25% | Bid list and Contracts | $ 178,000.00 | | $151,708.55 | 55,214.05 |
| | 1051 | DV6EAD78 | Bob Moehlan | DM1PH | F | SSPS-24 | 25% | Bid list and Contracts | $ 178,000.00 | | $134,664.29 | 78,619.90 |
| | 1129.0 | DV6EAD77 | Bob Moehlan | DM1PH | F | SSPS-25 | 25% | Bid list and Contracts | $ 178,000.00 | | $172,914.55 | 70,464.41 |
| | 1155.0 | DV6EAD79 | Bob Moehlan | DM1WL | F | SSPS-26 | 25% | Bid list and Contracts | $ 178,000.00 | | | 19,349.29 |
| | 1173 | DV6EAD80 | Bob Moehlan | DM1WL | F | SSPS "A" | 25% | Bid list and Contracts | $ 3,700,000.00 | $44,875.00 | | |

BY JACOH HOGHOOTTHM
EMERGENCY MANAGER

Project Managers PW Report
01-19-07

| Status | HSMS Number | Project NO. | Project Manager | View PW | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 6145 | DWER0193 | Bob Meehan | PW_ | S | Brd A structural repairs | 70% | | $ 12,500.00 | $0.00 | | $ — |
| | 9075.0 | DWER4361 | Bob Meehan | PW_ | F | SGPS-LACEE FORTIER | 25% | Invoices with Contracts and Bids | $ 665,000.00 | $41,855.00 | | $ 41,855.00 |
| | 1171.0 | DWER0242 | Bob Meehan | PW_ | F | SGPS-AMERICA | 25% | Bid list and Contracts | $ 116,000.00 | | $ 116,178.00 | $ 38,927.83 |
| | 955.0 | DWER0282 | Bob Meehan | PW_ | F | SGPS-AMERICA MARINE | 25% | Bid list and Contracts | $ 435,000.00 | | $ 111,278.00 | $ 111,278.00 |
| | 1035.0 | DWER0304 | Bob Meehan | PW_ | F | SGPS-AMO | 25% | Bid list and Contracts | $ 176,000.00 | | $ 105,416.51 | $ 67,209.44 |
| | 1055.0 | DWER0285 | Bob Meehan | PW_ | F | SGPS-"T" | 25% | Bid list and Contracts | $ 990,000.00 | | $ 180,122.00 | $ 166,185.95 |
| | 821.0 | DWER0306 | Bob Meehan | PW_ | F | SGPS-BERG | 0% | Invoices with Contracts and Bids | $ 665,000.00 | | $ 105,227.05 | $ 105,227.05 |
| | 672.0 | DWIG187 | Bob Meehan | PW_ | F | SGPS-Bel X | 25% | Invoices with Contracts and Bids | $ 665,000.00 | | $ 73,900.55 | $ 73,900.55 |
| | 875.0 | DWER0299 | Bob Meehan | PW_ | F | SGPS-BRIARWOOD | 25% | Invoices with Contracts and Bids | $ 683,250.00 | | $ 79,544.00 | $ 79,544.00 |
| | 883.0 | DWER0300 | Bob Meehan | PW_ | F | SGPS-BULLARD | 25% | Invoices with Contracts and Bids | $ 368,850.00 | | $ 113,406.00 | $ 113,406.00 |
| | 2221 | DWER0292 | Bob Meehan | PW_ | F | SGPS-BURKE | 25% | | $ 176,000.00 | $47,065.70 | | $ 47,065.71 |
| | 2244 | DWER0295 | Bob Meehan | PW_ | F | SGPS-CASTEL MANOR | 25% | | $ 176,000.00 | $44,839.28 | | $ 44,839.28 |
| | 1345.0 | DWER0294 | Bob Meehan | PW_ | F | SGPS-DEBOSE | 25% | Invoices with Contracts and Bids | $ 529,500.00 | $119,015.00 | $ 116,157.27 | $ 116,157.27 |
| | 914.0 | DWER0305 | Bob Meehan | PW_ | F | SGPS-DYCKASAW | 25% | Invoices with Contracts and Bids | $ 674,750.00 | | $ 113,253.00 | $ 10,915.05 |
| | 987.0 | DWER0306 | Bob Meehan | PW_ | F | SGPS-CITY PARK | 25% | Invoices with Contracts and Bids | $ 3,700,050.00 | | | $ 113,760.00 |
| | 814.0 | DWER0297 | Bob Meehan | PW_ | F | SGPS-DORMYER | 25% | Invoices with Contracts and Bids | | | $ 119,851.00 | $ 119,851.00 |
| | 1184 | DWER0307 | Bob Meehan | PW_ | F | SGPS-DOT | 0% | | $ 655,500.00 | | | $ — |
| | 1172.0 | DWER0298 | Bob Meehan | PW_ | F | SGPS-EASTOVER | 25% | Invoices with Contracts and Bids | $ 471,500.00 | $25,027.00 | | $ 26,627.01 |
| | 606.0 | DWER0308 | Bob Meehan | PW_ | F | SGPS-SPANCER AND FLORIDA | 25% | Invoices with Contracts and Bids | $ 665,000.00 | $43,056.00 | | $ 42,056.90 |
| | 1151.0 | DWER0102 | Bob Meehan | PW_ | F | SGPS-DELGERS | 25% | Bid list and Contracts | $ 176,000.00 | | $ 116,503.00 | $ 41,330.50 |
| | 2002 | DWER0102 | Bob Meehan | PW_ | F | SGPS-GENIVILLY OAKS | 25% | Bid list and Contracts | $ 655,000.00 | | $ 123,529.00 | $ 3,395.50 |
| | 816.0 | DWER0103 | Bob Meehan | PW_ | F | SGPS-INDUSTRIAL PARK | 25% | Invoices with Contracts and Bids | $ 560,500.00 | | $ 114,549.10 | $ 114,549.10 |
| | 852.0 | DWER0104 | Bob Meehan | PW_ | F | SGPS-KAMATT | 25% | Invoices with Contracts and Bids | $ 647,350.00 | | $ 93,567.00 | $ 93,667.0 |
| | 1172 | DWER0109 | Bob Meehan | PW_ | F | LAKE FORREST | 25% | | $ 176,000.00 | $9,107.41 | | $ 6,107.40 |
| | | | | | F | SGPS-LAKE TERRACE | 25% | | | | | |

BY JASON HIGHBOTHAM
EMERGENCY MANAGER

Project Managers PW Report
01:16:07

| Status | NDMS Number | Project NO. | Project Manager | View Per | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 835-0 | DW050106 | Bob Moniken | PM PM | F | EOC-LAKEWOOD SOUTH | 25% | Invoices with Contracts and Bids | $ 595,000.00 |  | $ 73,552.00 | $ 73,552.00 |
|  | 861-0 | DW050107 | Bob Moniken | PM PM | F | EOC-LAMB | 25% | Invoices with Contracts and Bids | $ 802,615.00 |  | $ 104,433.00 | $ 104,433.00 |
|  | 861-0 | DW050108 | Bob Moniken | PM PM | F | EOC-LAWRENCE | 25% | Invoices with Contracts and Bids | $ 791,605.00 |  | $ 106,237.00 | $ 106,237.00 |
|  | 865-0 | DW050109 | Bob Moniken | PM PM | F | EOC-LOGGETT | 25% | Invoices with Contracts and Bids | $ 605,000.00 |  | $ 122,108.00 | $ 122,108.00 |
|  | 875-0 | DW050110 | Bob Moniken | PM PM | F | EOC-MECCO | 25% | Invoices with Contracts and Bids | $ 441,650.00 |  | $ 144,748.00 | $ 144,748.00 |
|  | 865-0 | DW050111 | Bob Moniken | PM PM | F | EOC-MICHOUD | 25% | Invoices with Contracts and Bids | $ 1,050,000.00 |  | $ 174,092.00 | $ 174,092.00 |
|  | 835-0 | DW050112 | Bob Moniken | PM PM | F | EOC-Parish med | 0% | Bid Set and Contracts | $ 665,000.00 |  | $ 81,230.00 | $ 81,230.00 |
|  | 835-0 | DW050115 | Bob Moniken | PM PM | F | EOC-PINES VILLAGE | 25% | Bid Set and Contracts | $ 210,000.00 | $1,000.00 |  | $ 1,000.00 |

BY JASON HIGGENBOTHAM
EMERGENCY MANAGER

Project Managers PW Report
01-10-07

| Status | HCNS Number | Project NO. | Project Manager | View PW | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COSTS SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 873-0 | DWBPD114 | Bob Moehlen | DRAIN | F | SOFS PLUM ORCHARD | 25% | Invoices with Contracts and Bids | $ 502,160.00 |  | $ 69,270.00 | $ 69,270.00 |
|  | 869-0 | DWBPD116 | Bob Moehlen | DRAIN | F | SOFS UNDERWOOD | 25% | Invoices with Contracts and Bids | $ 213,300.00 |  | $ 114,648.00 | $ 114,648.00 |
|  | 1196 | DWBPD116 | Bob Moehlen | DRAIN | F | SOFS SOUTHERN SCRAP | 25% | Invoices with Contracts and Bids | $ 467,700.00 |  | $ 111,835.00 | $ 111,835.00 |
|  | 864-0 | DWBPD117 | Bob Moehlen | DRAIN | F | SOFS VOIETH VOISE NR2 | 25% | Invoices with Contracts and Bids | $ 532,400.00 |  | $ 82,261.00 | $ 82,261.00 |
|  | 1158-0 | DWBPD118 | Bob Moehlen | DRAIN | F | SOFS VICTORIA | 25% | Invoices with Contracts and Bids | $ 525,152.00 |  | $ 111,275.00 | $ 111,275.00 |
|  | 801-2 | DWBPD119 | Bob Moehlen | DRAIN | F | SOFS VILLAGE QUEST | 25% | Invoices with Contracts and Bids | $ 555,550.00 |  | $ 71,787.00 | $ 71,787.00 |
|  | 876-0 | DWBPD120 | Bob Moehlen | DRAIN | F | SOFS WEBER | 25% | Invoices with Contracts and Bids | $ 665,250.00 |  | $ 105,237.00 | $ 105,237.00 |
|  | 1196-0 | DWBPD121 | Bob Moehlen | DRAIN | F | SOFS WILSON | 25% | Bid list and Contracts | $ 176,000.00 |  | $ 114,140.00 | $ 114,140.00 |
|  | 1960-0 | DWBPD121 | Bob Moehlen | DRAIN | F | SOFS WALSH | 25% |  | $ 9,788.00 | $8,788.00 |  | $ 9,788.00 |
|  | 1991 | DWBPD122 | Bob Moehlen | DRAIN | F | SOFS ENGLISH TURN #1 | 25% |  | $ 4,650.27 | $4,650.27 |  | $ 6,658.00 |
|  | 4128 | DWBPD123 | Bob Moehlen | DRAIN | F | SOFS ENGLISH TURN #2 | 25% |  | $ 3,841.00 | $3,841.00 |  | $ 3,040.36 |
|  | 1562-0 | DWBPD124 | Bob Moehlen | DRAIN | F | SOFS ENGLISH HOUSE and Marine | 0% | Invoices with Contracts and Bids | $ 526,000.00 |  |  | - |
|  | DWBPD125 |  | Bob Moehlen | DRAIN | F | DARBON LAKES | 25% | Flood PW |  | $0.00 |  | - |
|  | DWBPD126 |  | Bob Moehlen | DRAIN | F | SOFS HIDEAWAY | 0% | Invoices with Contracts and Bids | - |  |  | - |
|  | 2964-0 | DWBPD127 | Bob Moehlen | DRAIN | F | FEWER PUMP LOWER COAST | 25% | Flood PW | $ 1,810.55 |  |  | $ 1,810.55 |
|  | 2855 | DWBPD128 | Bob Moehlen | DRAIN | F | SOFS PARK TIMBERS | 25% | Contract or Projected Cost |  | $0.00 |  | - |
|  | 3600-0 | DWBPD129 | Bob Moehlen | DRAIN | F | SOFS TALL TIMBERS | 25% |  | $ 17,000.00 | $1,700.00 |  | $ 1,219.35 |
|  | 4073 | DWBPD131 | Bob Moehlen | DRAIN | F | SOFS FOREST ISLES | 25% |  | $ 1,641.00 | $1,641.00 |  | $ 1,641.05 |
|  | 3697-0 | DWBPD132 | Bob Moehlen | DRAIN | F | SOFS WOODLAND | 25% |  | $ 118,000.00 | $3,317.00 |  | $ 3,317.08 |
|  | 1330-0 | DWBPD133 | Bob Moehlen | DRAIN | F | SOFS WRIGHT | 25% |  | $ 1,700.00 | $1,700.00 |  | - |
|  | 1096-0 | DWBPD134 | Bob Moehlen | DRAIN | F | Sewer Pump Station Aurea | 25% |  | $ 1,925.61 | $1,925.61 |  | $ 1,405.51 |
|  | 4151 | DWBPD135 | Bob Moehlen | DRAIN | F | SOFS SLIDY | 25% | Bid list and Contracts | $ 526,000.00 |  | $ 100,552.02 | $ 99,711.02 |
|  | 2878-0 | DWBPD136 | Bob Moehlen | DRAIN | F | SOFS BRIDGE PLAZA | 25% | Contract or Projected Cost | $ 2,000,000.00 |  | $ 1,905,963.04 |  |
|  | 4021 | DWBPD137 | Bob Moehlen | DRAIN | F | Station D electrical repairs | 75% | Contract or Projected Cost | $ 1,400,000.00 |  | $ 818,529.54 | $ 818,529.54 |
|  | 6997 | DWB254 | Bob Moehlen | DRAIN | F | Station D pump electrical intake repairs | 75% |  | $ 350,000.00 |  | $1,700.00 |  |
|  | 11517 | DWB253 | Bob Moehlen | DRAIN | F | SOFS "C" | 75% |  |  |  |  |  |

BY JASON HIGGINBOTHAM
EMERGENCY MANAGER

Project Managers PW Report
01-16-07

| Status | HSMD Number | Project No. | Project Manager | View Pw | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 7154 | DW0372 | Bob Moorkian | DW374 | F | Station D | 0% | | $ 14,438.00 | $14,438.00 | | $ 14,438.00 |
| | 6691 | DW0373 | Bob Moorkian | DW374 | F | Station D Building Contents | 0% | | $ 350,000.00 | | $ 350,000.00 | $ 19,256.56 |
| | 1027-2 | DW0374/0140 | Bob Moorkian | DW374 | F | DSP2-MACCY | 25% | Invoice with Contracts and Bids | $ 12,367.00 | $12,367.00 | | $ 12,367.00 |
| | 1072-2 | DW0250 | Bob Moorkian | DW374 | F | Memorial Drainage Pump Station | 25% | Invoice with Contracts and Bids | $ 107,550.00 | | $ 107,550.00 | $ 107,550.00 |
| | 6543 | DW0221 | Bob Moorkian | DW374 | F | Sewer Pump Station W/Network | 25% | | $ 150,000.00 | $42,550.00 | | $ 42,550.06 |
| | 4244 | DW5373 | Bob Moorkian | DW374 | G | Partial installation temp by pass pumps at DPS | 90% | | $ 119,118.75 | | $ 414,550.71 | $ 254,219.00 |
| | 14695 | DW5444 | Bob Moorkian | DW374 | G | Rental of Temp Pumps Required | 100% | | $ 203,772.30 | | $ 203,772.30 | $ 145,140.31 |
| | 14691 | DW5446 | Bob Moorkian | | G | LIFT STATIONS (PARISH WIDE) RENTAL OF TEMP GENERATORS | 175% | | $ 56,816.74 | | | $ 9,119.74 |
| | 14694 | DW0424 | | | | CATHODIC PROTECTION | | | | | | |

BY: JASON HIGGINBOTHAM
EMERGENCY MANAGER

Project Managers PW Report
01-15-07

## Drainage

| Status | HDMS Number | Project NO. | Project Manager | View Pw | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1250 | DW082018 | Gary Sorrel | DRLRH | F | EMERGENCY ELECTRICAL REPAIRS DPS 2 | 85% | Invoices | $ 2,560,000.00 | | $ 1,500,000.00 | $ 500,000.00 |
| | 1242 | DW082019 | Gary Sorrel | DRLRH | F | ELECTRICAL REPAIRS DPS 3 | 90% | Invoices | $ 3,700,000.00 | | $ 3,700,000.00 | $ 3,700,000.00 |
| | 1240 | DW090018 | Gary Sorrel | DRLRH | F | GENERATION 3 AND 5 SWITCHGEAR DPS 5 AND 6 | 91% | Invoices | $ 11,910,000.00 | | $ 11,910,000.00 | $ 10,110,000.00 |
| | 1240 | DW092018 | Gary Sorrel | DRLRH | F | EMERGENCY ELECTRICAL REPAIRS DPS 1 | 90% | Invoices | $ 4,180,000.00 | | $ 3,160,000.00 | $ 2,550,000.00 |
| | 3160 | DW082018 | Gary Sorrel | DRLRH | F | EMERGENCY ELECTRICAL REPAIRS DPS 1 | 90% | Invoices | $ 1,200,000.00 | | $ 1,000,000.00 | $ 520,000.00 |
| | 3190 | DW092017 | Gary Sorrel | DRLRH | F | EMERGENCY ELECTRICAL REPAIRS DPS 1 | 70% | Invoices | $ 106,555.00 | | $ 106,555.00 | $ 63,422.04 |
| | 32154 | DW090184 | Jack Huntsman | DRLRH | F | DRAINAGE PUMPING STATION 4 | 75% | Invoices | $ 4,647,250.00 | | $ 4,647,250.00 | |
| | | DW090168 | Jack Huntsman | DRLRH | F | DRAINAGE PUMPING STATION 6 | 70% | Invoices | $ 192,244.91 | | $ 192,244.91 | $ 192,244.91 |
| | 6909 | DW0820 | Jack Huntsman | DRLRH | D | Pumping Station 6 and 7 | 70% | Invoices | $ 55,000.00 | $29,420.80 | | $ 58,155.52 |
| | 5693 | DW090144 | Jack Huntsman | DRLRH | F | DRAINAGE PUMPING STATION 10 DCIRUS | 50% | Invoices | $ 12,000.00 | $23,597.77 | | $ 29,397.77 |
| | 1932 | DW090149 | Jack Huntsman | DRLPR | F | DRAINAGE PUMPING STATION 11 | 50% | Invoices | $ 250,000.00 | | | $ 294,693.41 |
| | 4922 | DW090150 | Jack Huntsman | DRLPR | F | DRAINAGE PUMPING STATION 12 | 90% | Invoices | $ 314,000.00 | | $ 314,000.00 | $ 16,378.05 |
| | 4948 | DW090151 | Jack Huntsman | DRLNH | F | DRAINAGE PUMPING STATION 13 | 55% | Invoices | $ 55,000.00 | $16,578.00 | | $ 11,423.26 |
| | 1954 | DW090172 | Jack Huntsman | DRLRH | F | DRAINAGE PUMPING STATION 14 JAHNZOE | 50% | Invoices | $ 65,000.00 | $11,423.00 | | $ 11,423.26 |
| | 3112.8 | DW090153 | Jack Huntsman | DRLNH | F | DRAINAGE PUMPING STATION 15 | 50% | Invoices | $ 3,405,911.00 | | $ 900,625.00 | $ 900,625.06 |
| | 4331 | DW090154 | Jack Huntsman | DRLRH | F | DRAINAGE PUMPING STATION 18 | 50% | Invoices | $ 45,000.00 | | | $ |
| | 3117.0 | DW090156 | Jack Huntsman | DRLNH | F | DRAINAGE PUMPING STATION 19 MANERI | 50% | Invoices | $ 179,533.00 | | $ 75,000.00 | $ 49,111.62 |
| | 3120.0 | DW090157 | Jack Huntsman | DRL192 | F | DRAINAGE PUMPING STATION 19 | 50% | Invoices | $ 24,674.00 | $24,674.00 | | $ 24,674.08 |
| | 1935 | DW090158 | Jack Huntsman | DRL191 | F | DRAINAGE PUMPING STATION 20 AMD | 50% | Invoices | $ 74,721.00 | | $ 129,721.00 | $ 129,721.06 |
| | 1937.0 | DW090159 | Jack Huntsman | DRL191 | F | DRAINAGE PUMPING STATION DWYER | 50% | Invoices | $ 129,721.00 | | $ 95,767.00 | $ 84,467.08 |
| | 2241 | DW090160 | Jack Huntsman | DRL191 | F | DRAINAGE PUMPING STATION ELAINE | 50% | Invoices | $ 95,767.00 | $7,555.00 | | $ 7,555.04 |
| | 3112.6 | DW090161 | Jack Huntsman | DRLRH | F | DRAINAGE PUMPING STATION GRANT | 50% | Invoices | $ 7,555.00 | | | $ 3,105.06 |
| | 2500 | DW090162 | Jack Huntsman | DRL193 | F | DRAINAGE PUMPING STATION PROSHURD and Closed | 50% | Invoices | $ 45,105.00 | $3,105.00 | | $ |
| | 4210 | DW090164 | Jack Huntsman | DRLNH | F | DRAINAGE PUMPING STATION L10 | 50% | Invoices | $ 45,000.00 | $40,000.00 | | $ 16,612.06 |

Project Managers PW Report
01-15-07

| Status | HSMS Number | Project NO. | Project Manager | View PW | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1653-0 | DVBRO165 | Jack Hackbend | QR101 | F | UNDERPASS PUMPING STA BAY STREET | 60% | Invoices | $ 29,000.00 | $12,729.58 | | $ 12,729.58 |
| | 1542-0 | DVBRO166 | Jack Hackbend | QR304 | F | UNDERPASS PUMPING STA BROAD STREET | 65% | Invoices | $ 76,540.00 | | $ 76,540.00 | $ 76,540.00 |
| | 612-0 | DVBRO167 | Jack Hackbend | QR301 | F | UNDERPASS PUMPING STA CANAL STREET | 50% | Invoices | $ 165,894.00 | $1,000.00 | | $ 1,000.00 |
| | 1543 | DVBRO168 | Jack Hackbend | QR358 | F | UNDERPASS PUMPING STA FRANKLIN AVE | 50% | Invoices | $ 97,662.10 | $45,129.13 | | $ 49,650.51 |
| | 2235 | DVBRO169 | Jack Hackbend | QR101 | F | UNDERPASS PUMPING STA HOSPITAL ST | 50% | Invoices | $ 76,537.53 | | $ 76,537.00 | $ 65,344.85 |
| | 4258 | DVBRO170 | Jack Hackbend | QR301 | F | UNDERPASS PUMPING STA HARCOUR ER | 50% | Invoices | $ 18,275.00 | $18,275.00 | | $ 1,655.21 |
| | 1290-0 | DVBRO171 | Jack Hackbend | QR304 | G | UNDERPASS PUMPING STA NEW CARROLTON | 50% | Invoices | $ 117,118.00 | $28,491.00 | | $ 21,528.54 |
| | 2020 | DVBRO172 | Jack Hackbend | QR301 | F | UNDERPASS PUMPING STA OLD CARROLTON | 50% | Invoices | $ 129,500.00 | | $ 129,500.00 | $ 128,500.05 |
| | 1950-0 | DVBRO174 | Jack Hackbend | QR304 | F | UNDERPASS PUMPING STA PARIS AVE | 50% | Invoices | $ 153,493.00 | | $ 153,493.00 | $ 153,493.55 |
| | 795-0 | DVB 115 | Jack Hackbend | QR104 | F | Underpass Pump Sta Prestonian | 60% | Invoice | $ 1,000.00 | $1,000.00 | | $ 1,000.00 |
| | 3087-0 | DVBRO116 | Jack Hackbend | QR104 | F | UNDERPASS PUMPING STA TRESS DR | 50% | Invoices | $ 17,857.59 | $17,857.59 | | $ 1,270.06 |
| | 1185-0 | DVBRO177 | Jack Hackbend | QR104 | F | UNDERPASS PUMPING STA ST BERNARD AVE | 50% | Invoices | $ 100,715.00 | | $ 100,715.00 | $ 100,715.56 |
| | 4299 | DVBRO164 | Jack Hackbend | QR304 | G | Goat Drainage Pumping Emergency Generators | 60% | Invoices | $ 80,282.70 | | $ 60,282.70 | $ 60,282.71 |
| | 16297 | DVBRO148 | | | F | ASBESTOS REMOVAL AT PSI PUMP STATION 2 AND 3 | 100% | | $ 145,948.00 | $17,857.59 | $ 62,441.00 | $ 62,441.00 |

BY JACOB HECHENDTHAU
EMERGENCY MANAGER

Project Managers PW Report
01-10-07

## West Bank Sewerage Treatment Plants

| Status | HSBS Number | Project NO. | Project Manager | Estr Pw | Col | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1956 | DW0K012 | LBA Vesely | DE108 | G | West Bank WTP | 70% | Invoice | $56,000.00 | | $8,151.00 | $8,151.00 |
| | 3162 | DW0K030 | LBA Vesely | DE108 | F | W.B. WWTP | 70% | Invoice | $9,387.50 | | $9,387.50 | $9,387.50 |
| | 4108 | DW0AD192 | LBA Vesely | DE101 | F | WEST BANK MOTOR REPAIR | 70% | Invoice | $87,857.50 | $81,326.00 | | $31,326.34 |
| | 2912 | DW0290 | LBA Vesely | DE104 | A | West Bank WWTP Debris Removal | 70% | Invoice | $30,144.00 | $30,144.00 | | $30,144.02 |
| | 5464 | DW0291 | LBA Vesely | DE104 | F | WEST BANK WATER TREATMENT PLANT POLICE DEWATERING | 70% | Invoice | $1,300,000.00 | | $1,300,000.00 | $1,195,251.01 |
| | 5486 | DW0296 | LBA Vesely | DE103 | F | WWWTP SLUDGE HAULERS | 70% | Invoice | $2,210.00 | $2,210.00 | | $2,210.05 |
| | 4188 | DW0297 | LBA Vesely | DE104 | F | WWWTP ICE MACHINE | 70% | Invoice | $6,000.00 | $6,000.00 | | $6,000.05 |
| | 4198 | DW0298 | LBA Vesely | DE104 | F | WWWTP SCAMWORKS | 70% | Invoice | $110,000.00 | | $87,096.14 | $87,096.14 |
| | 5998 | DW0329 | LBA Vesely | DE101 | F | WWWTP INCINERATOR | 70% | Invoice | $29,730.00 | $29,730.00 | | $29,730.05 |
| | 10542 | DW0340 | LBA Vesely | DE101 | | WWTP TEMPORARY WASH STATION AND RESTROOMS | 70% | Invoice | $5,200.00 | $5,200.00 | | $5,200.05 |
| | 10762 | DW0347 | LBA Vesely | DE104 | | WWTP RE-CULTIVATION OF THE ACTIVE SLUDGE | 72% | Invoice | $9,709.37 | $9,709.37 | | $9,709.35 |
| | 10566 | DW0348 | LBA Vesely | DE178 | | WWTP REPLACEMENT OF PRESSURE WASHER | 70% | Invoice | $3,500.00 | $3,500.00 | | $3,500.35 |
| | 10414 | DW0349 | LBA Vesely | DE104 | F | West Bank WWTP Additional Emergency Work | 70% | Invoice | $1,187,463.12 | | $1,187,463.12 | $1,187,463.05 |
| | 2920-0 | DW0351 | LBA Vesely | DE104 | F | Wastewater Treatment Plants Sludge - Emergency Operations | 70% | Invoice | $42,000.00 | | | $42,000.01 |
| | 4729 | | LBA Vesely | DE104 | F | West Bank lamp, office rental + bit solution | 72% | | | | | |

BY JASON BRONKHORST
EM EMERGENCY MANAGER

Project Managers PW Report
01-18-07

## East Bank Sewerage Plants

| Dates | FEMA Number | Project NO. | Project Manager | View Per | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original Estimated Project Cost | Small Project Cost Submitted | Large Project Cost Submitted | Eligible Obligated Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2742 | SW04CX | Mike Vesely | Dalphn | B | EAST BANK WATER PLANT PROCESS & GENERATION USAGE (Beach System) | 70% | Invoices | 721,902.00 | | 721,902.00 | 721,902.00 |
| | | SW04... | Mike Vesely | Dalphn | E | EBWWTP GAS PUMPS | 70% | Invoices | 12,735.00 | $12,735.00 | | 12,735.00 |
| | 565.0 | SW04G/TB | Mike Vesely | Dalphn | B | EBWWTP SCADA PT GEN FOR EAST BANK EWTP | 70% | Invoices | 329,040.00 | | 329,040.00 | 329,040.00 |
| | 331.0 | SW04C03 | Mike Vesely | Dalphn | D | EMERGENCY EBARD DT GEN FOR EAST BANK EWTP | 70% | Invoices | 329,040.00 | | 329,040.00 | 553,250.00 |
| | 331-1 | SW04C05 | Mike Vesely | Dalphn | B | EMERGENCY EBARD DT GEN FOR EAST BANK EWTP | 70% | Invoices | 147,293.81 | | 143,934.28 | 147,293.81 |
| | 555.0 | SW04C05 | Mike Vesely | Dalphn | F | E.B. WWTP CHLORINE SYSTEM | 70% | Invoices | 311,000.00 | | 19,000.00 | |
| | 416.0 | SW04C07 | Mike Vesely | Dalphn | F | E.B. WWTP WATER SUPPLY | 70% | Invoices | 31,213.93 | $31,213.93 | | 31,213.93 |
| | 555.0 | SW04C09 | Mike Vesely | Dalphn | B | E.B. WWTP TEST LARGE MOTORS | 70% | Invoices | 77,033.00 | | 77,033.00 | 77,033.00 |
| | 629.0 | SW04C47 | Mike Vesely | Dalphn | E | EBWWTP TEMP OFFICE | 70% | Invoices | 5,400,000.00 | | 1,194,340.91 | 793,657.00 |
| | 4200 | SW04D49 | Mike Vesely | Dalphn | F | EBWWTP SCADA Design, Installation, provide & Instrumentation | 70% | Invoices | 627,423.00 | | 627,423.00 | 627,423.00 |
| | 644.0 | SW04D50 | Mike Vesely | Dalphn | F | EBWWTP ELECTRICAL INSPECTIONS AND TESTING | 70% | Invoices | 29,248.95 | 329,248.00 | | 29,248.95 |
| | 621.0 | SW04D51 | Mike Vesely | Dalphn | G | EBWWTP RAIL ROAD SPUR | 70% | Invoices | 18,000.00 | | | |
| | | SW04D52 | Mike Vesely | Dalphn | F | EBWWTP NORTH PUMP STA | 70% | Invoices | 120,000.00 | | | |
| | | SW04D53 | Mike Vesely | Dalphn | F | EBWWTP OXYGEN BLDG | 70% | Invoices | 18,000.00 | | | |
| | | SW04D54 | Mike Vesely | Dalphn | F | EBWWTP SOUTH PUMP STA | 70% | Invoices | 70,085.50 | | 70,085.50 | 70,085.50 |
| | 621.0 | SW04D55 | Mike Vesely | Dalphn | F | EBWWTP FENCE REPAIR | 70% | Invoices | 70,085.50 | | $11,178.20 | 25,533.50 |
| | 621.0 | SW04D57 | Mike Vesely | Dalphn | F | EBWWTP SHOP AND SUPPLY BLDG | 70% | Invoices | 140,000.00 | | | |
| | | SW04D58 | Mike Vesely | Dalphn | F | EBWWTP WET AND CONTROL | 70% | Invoices | 4,200,000.00 | | | |
| | 559.0 | SW04D59 | Mike Vesely | Dalphn | F | EBWWTP STORAGE BUILDING | 70% | Invoices | 26,024.08 | $29,024.08 | | 12,377.50 |
| | 2448 | SW0218 | Mike Vesely | Dalphn | A | East Bank WWTP Facilities Cleaning | 70% | Invoices | 1,400,000.00 | $56,000.00 | $56,000.00 | 56,000.00 |
| | 2446-1 | sw0216-1 | Mike Vesely | Dalphn | A | East Bank WWTP Facilities Cleaning | 70% | Invoices | 1,200,000.00 | | 17,200,000.00 | 1,200,000.00 |
| | 527.0 | SW0217 | Mike Vesely | Dalphn | F | East Bank WWTP Equip. Replace | 70% | Invoices | 2,216,484.95 | | 2,216,484.95 | 2,416,484.95 |
| | 565.0 | SW0218 | Mike Vesely | Dalphn | F | East Bank WWTP Temp/ Flow Pumps | 70% | Invoices | 324,245.00 | | 500,462.53 | 504,746.00 |
| | 565-1 | SW0218-1 | Mike Vesely | Dalphn | B | East Bank WWTP Temp/ Flow Pumps | 70% | Invoices | 256,215.00 | | 256,215.00 | 256,215.00 |

BY JASON HOCHSCHOTTAM
EMERGENCY MANAGER

Project Managers PW Report
01-16-07

| FEMA Number | Project No. | Project Manager | View Pw | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Obligated OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 878-0 | DW0219 | Uda Veedy | DMSM | G | EDWWTP FEED-WATCH FOR SECONDARY TREATMENT | 70% | Invoices | $ 208,530.00 | | $268,530.00 | $ 208,530.14 |
| 1164 | DW0220 | Uda Veedy | DMSM | F | East Bank WWTP Emergency Generator Usage | 70% | Invoices | 154,771.00 | | $154,771.00 | 154,771.04 |
| 1854 | | Uda Veedy | DMSM | F | East Bank WWTP Emergency Generator Usage | 70% | Invoices | 165,828.00 | | $165,828.00 | 165,828.06 |
| 1935-0 | DW0222 | Uda Veedy | DMSM | F | East Bank WWTP Plant AX & Water | 70% | Invoices | 216,050.00 | | $216,050.00 | 216,050.06 |
| 2035-0 | DW0224 | Uda Veedy | DMSM | F | East Bank WWTP Plant Wet Power | 70% | Invoices | 450,000.00 | $34,000.00 | | 34,000.06 |
| 1841-0 | DW0225 | Uda Veedy | DMSM | B | EAST BANK WWTP LIGHTING MONITOR MONTH | 70% | Invoices | 70,068.00 | | $70,068.00 | 70,068.06 |
| 1727-0 | DW0231 | Uda Veedy | DMSM | G | EAST BANK WWTP SODIUM HYPOCHLORITE DISINFECTION | | Invoices | 11,979.75 | 311,779.75 | | |
| 1727-2 | DW0231 | Uda Veedy | DMSM | G | EAST BANK WWTP SODIUM HYPOCHLORITE DISINFECTION | 70% | Invoices | 100,000.00 | | | |
| 1777 | DW0241 | Uda Veedy | DMSM | F | East Bank WWTP Acetic Gel Press | 70% | Invoices | 4,931,693.73 | | $4,931,693.73 | 3,553,173.15 |
| 1862 | DW0242 | Uda Veedy | DMSM | F | East Bank WWTP Dryer/Generators | 70% | Invoices | 64,129.39 | | | 64,129.39 |
| 1983 | DW0243-A | Uda Veedy | DMSM | F | East Bank WWTP Pre-Dewater Damages | 70% | Invoices | 9,841.91 | | | 9,841.97 |
| 1984 | DW0244 | Uda Veedy | DMSM | F | East Bank WWTP Pre-Dewater Damages | 70% | Invoices | 330,731.53 | | $330,731.53 | 330,731.53 |
| 2133 | DW0245 | Uda Veedy | DMSM | F | EDWWTP CARBON DEPOCK AND OXYGEN ANALYZER | 70% | Invoices | 330,731.53 | | | 3,254.04 |
| 3076-0 | DW0253 | Uda Veedy | DMSM | F | East Bank WWTP Misc. Plant Equipment | 70% | Invoices | 3,254.54 | | | 3,254.54 |
| 1835 | DW0254 | Uda Veedy | DMSM | F | Guns and Fixit equipment | 70% | Invoices | 493,777.81 | | $493,777.81 | 493,777.81 |
| 1693 | DW0255 | Uda Veedy | DMSM | F | East Bank WWTP Misc. Plant Equip. II | 70% | Invoices | 349,520.90 | | $349,264.55 | 349,520.90 |
| 3081-0 | DW0255 | Uda Veedy | DMSM | F | East Bank WWTP Misc. Plant Equip. III | 70% | Invoices | 16,231,110.43 | | $4,200,000.00 | 319,943.71 |
| 3382-0 | DW0256 | Uda Veedy | DMSM | F | East Bank WWTP Misc. Plant Equip. IV | 70% | Invoices | 414,344.42 | | $414,472.81 | 414,344.42 |
| 3196-0 | DW0257 | Uda Veedy | DMSM | F | East Bank WWTP Misc. Plant Equip. V | 70% | Invoices | 16,336.77 | $18,525.77 | | 16,336.77 |
| 3953-0 | DW0258 | Uda Veedy | DMSM | F | East Bank WWTP Effluent Channel Pipes | 70% | Invoices | 77,973.00 | | $77,250.77 | 67,370.20 |
| 3414 | DW0276 | Uda Veedy | DMSM | F | EB WWTP Iron/Bar Socket repair | 70% | Invoices | 1,258,500.20 | | $1,258,500.20 | 607,817.C |
| 1414/01 | DW0 278 | Uda Veedy | | | EB WWTP Sweeper Socket repair w/ Sub-screen Rental Feed-Full Loader & Wash | 70% | Invoices | 58,000.00 | | 58,000.00 | |
| 10023 | DW0 277 | Uda Veedy | DMSM | G | Generator Rental - EDWWTP Sub preston | 70% | Invoices | 651,828.91 | | $51,828.91 | |
| 10023.1 | In0277.1 | Uda Veedy | | | Generator Rental - EDWWTP Sub preston | 70% | Invoices | | | | |
| | DW0260 | Uda Veedy | DMSM | F | East Bank WWTP Misc. Plant Equip VI | 70% | Invoices | 100,000.00 | | | $0.0 |
| 2937 | DW0264 | Uda Veedy | DMSM | F | East and West Bank WWTP complete maint. System tech. assistance | 70% | Invoices | 100,000.00 | | | |
| 4132 | DW0261 | Uda Veedy | DMSM | F | EDWWTP PAS MOTOR | 70% | Invoices | 2,272,155.00 | | $1,530,554.00 | 1,530,554.06 |
| 4193 | DW0263 | Uda Veedy | DMSM | F | EDWWTP High Voltage Repairs | 70% | Invoices | | | | |

BY JASON HOCHSCHILD
EMERGENCY MANAGER

Project Managers TWI Report
01-15-07

| Status | HSDR Number | Project NO. | Project Manager | View PW | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4161 | DW0 294 | Lilla Vesely | DM3PH | 0 | EBWWTP Temp Power (Labor) | 70% | Invoices | $ 101,422.00 | | $ - | $ 101,422.00 |
| | 4079 | DW0293 | Lilla Vesely | DM3PH | F | EBWWTP Engineering | 70% | Invoices | $ 20,500.00 | | $ 127,073.00 | $ 16,214.91 |
| | 5198 | DW0295 | Lilla Vesely | DM3PH | E | EBWWTP Windows and Doors | 70% | Invoices | $ 200,000.00 | | $ 338,535.00 | |
| | 5194-1 | DW0294 | Lilla Vesely | DM3PH | E | EBWWTP Windows and Doors | 70% | Invoices | $ 114,545.00 | | $ 15,340.27 | |
| | 587-0 | DW0297 | Lilla Vesely | DM3PH | E | EBWWTP Stripped SDs | 70% | Invoices | $ 26,413.00 | | $ 26,413.00 | $ 41,938.33 |
| | 5174 | DW0268 | Lilla Vesely | DM3PH | E | EBWWTP Hoists | 70% | Invoices | $ 34,242.00 | | | |
| | 1154-1 | DW0259-1 | Lilla Vesely | DM3PH | E | EBWWTP labor Readers | 70% | Invoices | $ 108,000.00 | | | $ 88,000.00 |
| | 4021 | DW0293 | Lilla Vesely | DM3PH | E | EBWWTP Forge Barrels | 70% | Invoices | $ 10,000.00 | | | |
| | 4146 | DW0101 | Lilla Vesely | DM3PH | D | EBWWTP Forge Barrels | 70% | Invoices | $ 668,000.00 | | $ 568,835.00 | |
| | | DW0202 | Lilla Vesely | | B | EBWWTP Misc. Items | 70% | Invoices | $ 148,341.00 | | | $ 13,409.95 |
| | | DW0203 | Lilla Vesely | | B | EBWWTP Misc. Items | 70% | Invoices | $ 13,409.93 | $ 13,409.93 | | $ 390,374.44 |
| | 4147 | #4270 | Lilla Vesely | DM3PH | | EBWWTP | 70% | Invoices | $ 150,000.00 | | $ 150,000.00 | |
| | 5603 | DW0276 | Lilla Vesely | DM3PH | F | EBWWTP Regain to concrete structures | 70% | Invoices | $ 81,000.00 | | | |
| | | DW0267 | Lilla Vesely | | F | EBWWTP Replace Academy Vouchers | 70% | Invoices | $ 10,000.00 | | | |
| | | DW0249 | Lilla Vesely | | F | EBWWTP Repair 34 Volt DC details | 70% | Invoices | $ 20,000.00 | | $ 20,000.00 | |
| | 4204 | DW0268 | Lilla Vesely | DM3PH | E | EBWWTP Oxygen Dasis Electronics Repairs | 70% | Invoices | $ 1,742,700.00 | | $ 1,784,700.00 | |
| | 11517 | DW0301 | Lilla Vesely | DM3PH | F | EBWWTP Replace plant underground conduit runs & wiring | 70% | Invoices | $ 210,000.00 | | $ 205,321.97 | $ 208,521.97 |
| | 1968 | DW0302 | Lilla Vesely | DM3PH | F | EBWWTP Meter, Ohio clocks, wiring, compressed air & pivot instrument air | 70% | Invoices | $ 25,000.00 | | | $ 72,454.00 |
| | 5393 | DW0304 | Lilla Vesely | DM3PH | E | EBWWTP Trash Scale Replacement | 70% | Invoices | $ 32,211.00 | $ 35,211.00 | | $ 35,211.00 |
| | 5695 | DW0306 | Lilla Vesely | DM3PH | E | EBWWTP Cone repairs throughout facility | 70% | Verdia Approve with Price | $ 1,892,252.00 | | $ 1,892,252.00 | $ 1,240,974.71 |
| | 5598 | DW0306 | Lilla Vesely | DM3PH | F | EBWWTP SCADA Design, Installation, controls & Instrumentation | 70% | Invoices | $ 45,000.00 | $ 45,000.00 | | |
| | 5653 | DW0307 | Lilla Vesely | DM3PH | E | EBWWTP Equipment area painting, On Deck, IVS pumphouse, etc | 70% | Invoices | $ 100,000.00 | | $ 199,202.00 | $ 199,202.00 |
| | | DW0359 | Lilla Vesely | DM3PH | E | EBWWTP Roof cracks, On Deck, pumphouse, maint, & remove roof slocks | 70% | Invoices | | | $ 319,933.75 | $ 319,933.75 |
| | 5592 | DW0509 V1 | Lilla Vesely | | | Solds Building Roof | 70% | Invoices | | | | $ 25,138.20 |
| | 5607 | DW0309 | Lilla Vesely | DM3PH | F | EBWWTP Oxygen Oxide Repair to all Train concrete | 70% | Invoices | $ 450,000.00 | | $ 450,000.00 | |
| | 7250 | DW0310 | Lilla Vesely | DM3PH | F | EBWWTP Metal Bldg Others, Lamblating, Roof Ups, facility roll & salety items | 70% | Invoices | $ 123,000.00 | | $ 123,000.00 | $ 88,299.10 |
| | 5055 | DW0312 | Lilla Vesely | DM3PH | F | EBWWTP Disposal of Misc. chemicals & solvents | 70% | Invoices | $ 5,000.00 | | | |

BY JACOB HOCHHEITHAM
EMERGENCY MANAGER

Project Managers PW Report
01-16-07

| Status | HSMP Number | Project NO. | Project Manager | View Pw | Cat | Damage of Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 8162 | DW0015 | Lila Veely | Dn Ing | F | EDWWTP Storm water compound hinotino, fireplace Flooring Auxilary | 70% | Invoices | $ 60,000.00 | | $ 70,000.00 | $ 70,000.00 |
| | 8160 | DW0019 | Lila Veely | PRI9In | F | EDWWTP Repair Philadelphia Library on beld 3 | 70% | Invoices | $ 1,900,000.00 | | $ 308,000.00 | $ 168,406.34 |
| | 7316 | DW0016 | Lila Veely | | E | EDWWTP Control & Workspace repair | 70% | Invoices | $ 350,000.00 | | $ 116,000.00 | $ 14,105.56 |
| | 8101 | DW0018 | Lila Veely | DW1In | F | EDWWTP PSO50 skid replacement at Transformers, stable bldg | 70% | Invoices | $ 363,000.00 | | $ 320,000.00 | |
| | | DW0019 | Lila Veely | | E | EDWWTP Levee Chain link Fencing replacement, fuel pole repair, erosion | 70% | Invoices | $ 205,000.00 | | $ 205,000.00 | |
| | 6956 | DW0021 | Lila Veely | DN1In | F | EDWWTP Remove old Oxygen Plant & Cycl tower | 70% | Invoices | $ 450,000.00 | | | |
| | | DW0022 | Lila Veely | | E | EDWWTP Repair Solids building roof | 70% | Invoices | $ 3,429,439.30 | | $ 3,429,439.30 | $ 3,429,439.30 |
| | 8104-V1 | DW0023 | Lila Veely | | F | EDWWTP Repair FLUIDIZED BED INCINERATOR | 70% | Invoices | $ 500,000.00 | | $ 500,000.00 | |
| | 4182 | DW0024 | Lila Veely | DN1In | F | EDWWTP Removal of old MB9 furnace (cheaper before mid range) | 70% | Invoices | $ 203,000.00 | $ 10,217.00 | | 19,278.56 |
| | 14920 | DW0025 | Lila Veely | | F | EDWWTP Replace Grease concentrator | 70% | Invoices | | | | |

BY JACOH HODGENDOTHAM
EMERGENCY MANAGER

Project Managers FW Report
01-18-07

| Status | HCR# Number | Project NO. | Project Manager | View PW | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  | DW0526 | Usa Vandy |  | F | ENWWTP DC of electrical over 200 A internal, main, junction | 70% | Invoice | 151,500.00 |  |  |  |
|  |  | DW0527 | Usa Vandy |  | F | ENWWTP Storm Drainage System Repairs & faulty drain, grate | 70% | Invoice | 178,500.00 |  |  |  |
|  | 8076 | DW0528 | Usa Vandy | DMJM | E | ENWWTP Roadway repairs | 70% | Invoice | 314,000.00 |  | $ 314,000.00 | $ 100,827.12 |
|  |  | DW0529 | Usa Vandy |  | E | ENWWTP Sidewalk repairs | 70% | Invoice | 236,500.00 |  |  |  |
|  |  | DW0530 | Usa Vandy | DMJM | E | ENWWTP Plant Painting | 70% | Invoice | 500,000.00 |  | $ 500,000.00 | $ 79,816.58 |
|  | 7227 | DW0531 | Usa Vandy | DMJM | F | ENWWTP Restore control room, climate control for Electronics | 70% | Invoice | 50,000.00 | $ 50,000.00 |  | 17,643.00 |
|  | 7188 | DW0532 | Usa Vandy | DMJM | F | ENWWTP Remove & if trash existing emergency generators | 70% | Invoice | 315,000.00 |  | $ 315,000.00 | $ 12,011.68 |
|  | 5998 | DW0533 | Usa Vandy | DMJM | E | ENWWTP Office building replacement (includes Migration) | 70% | Invoice | 1,200,000.00 |  | $ 672,786.00 | 570,785.00 |
|  | 8142 | DW0534 | Usa Vandy | DMJM | F | ENWWTP Automobile Mixers in Sedimentation Basins +IMPROVEMENT | 70% | Invoice | 176,000.00 |  | $ 176,000.00 | . |
|  | 8345 | DW0535 | Usa Vandy |  | F | ENWWTP Storm water main valves MITIGATION | 70% | Invoice | 100,000.00 |  | $ 29,607.34 | 25,637.58 |
|  | 8343 | DW0536 | Usa Vandy |  | F | ENWWTP Headgates Hit flood gate MITIGATION | 70% | Invoice | 250,000.00 |  |  |  |
|  |  | DW0538 | Usa Vandy |  | F | ENWWTP Main Transformer flood protection enclosure MITIGATION | 70% | Invoice | 825,000.00 |  |  |  |
|  |  | DW0539 | Usa Vandy |  | F | ENWWTP New 2MW emergency Generator MITIGATION | 70% | Invoice | 600,000.00 |  |  |  |
|  |  | DW0540 | Usa Vandy |  | F | ENWWTP Relocate main transformers MITIGATION | 70% | Invoice | 150,000.00 |  |  |  |
|  |  | DW0541 | Usa Vandy |  | F | ENWWTP Upgrade transfer switching, main power | 70% | Invoice | 600,000.00 |  |  |  |
|  | 4051 | DW0542 | Usa Vandy | DMJM | F | ENWWTP Clarifier #1 Repairs - NOT ELIGIBLE | 70% | Invoice | 4,600,000.00 |  | $ 1,887,720.62 | $ 1,667,753.81 |
|  | me2141 | me2141 | Usa Vandy | DMJM | F | Appeal Approved for pw4543-340 | 70% | Invoice | 3,315.00 |  |  |  |
|  | 42314 | 42314 | Usa Vandy |  | E | Purchase two Trac-200 Portable generators NOT ELIGIBLE | 70% | Invoice | 181,000.00 |  | $ 181,000.00 | 161,000.00 |
|  | 5898 | DW0582 | Usa Vandy | DMJM | C | ENWWTP rental of 4 Godwin Diesel Pumps | 70% | Invoice | 29,811.00 | 29,811.00 |  | 29,911.00 |
|  | 5250 | DW0583 | Usa Vandy | DMJM | D | Set up & Maintenance of 2MW Diesel Generator NOT ELIGIBLE | 70% | Invoice | 28,094.34 | 28,094.34 |  | 28,094.34 |
|  | 5400 | DW0584 | Usa Vandy | DMJM | D | ENWWTP lease & metering temporary 1250KW Generator | 70% | Invoice | 25,000.00 |  |  | 7,841.21 |
|  | 6070 | DW0587 | Usa Vandy | DMJM | E | Propane Contents of ENWWTP destroyed trailer | 70% | Invoice | 71,153.00 |  | $ 71,153.00 | . |
|  | 6710 | DW0604 | Usa Vandy | DMJM | E | ENWWTP Admin Building contents & supplies | 70% | Invoice | 50,000.00 |  |  |  |
|  | 3034 | DW0609 | Usa Vandy | DMJM | D | LAB FLAG outsourcing of required lab testing | 70% | Invoice | 2,320,292.83 |  | $ 2,320,292.83 | $ 2,320,292.83 |
|  | 4193 | DW0010 | Usa Vandy | DMJM | F | EAST WWTP backboard repairs Mid 1 thru 10 | 70% | Invoice | 492,902.00 |  | $ 492,902.00 | 492,902.00 |
|  | 4194 | DW0031 | Usa Vandy | DMJM | F | ENWWTP FLAG pump testing, California Engrs, Oxygen Chads heater | 70% | Invoice | 154,546.00 |  |  |  |
|  |  | DW0042 | Usa Vandy | DMJM | G | ENWWTP Hurricane debris & sludge disposal | 70% | Invoice | 129,368.00 |  |  |  |
|  |  | DW0045 | Usa Vandy | DMJM | F | ENWWTP 14EG Generator Connection, H pump house 480V equipment | 70% | Invoice |  |  |  |  |

BY JACOB HIGGINBOTTOM
EMERGENCY MANAGER

Project Managers PW Report
01-18-07

| Status | NCEP Number | Project NO. | Project Manager | View Pw | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 6263 | DV03247 | LDte Veruty | DVLPH | E | Maintenance Equip & related Fleet Dock WWTP | 70% | Invoices | $ 671,758.58 | | $ 671,758.58 | $ 671,759.61 |
| | 7008 | DV03277 | LDte Veruty | DVLGH | E | DWWTP DIESDINE SYSTEM | 70% | Invoices | $ 21,157.95 | $ 21,157.95 | | $ 21,157.94 |
| | 3414 | DV03272 | LDte Veruty | DBJQH | F | EB WWTP Mechanical/Electrical | 70% | Invoices | $ 2,416,521.97 | | $ 1,918,621.37 | $ 1,918,611.23 |
| | 13328 | DV05425 | LDte Veruty | | F | EB WWTP MISC REPAIRS | 0% | Invoices | $ 137,010.33 | | $ 137,010.33 | $ 137,010.32 |
| | 12429 | DV03429 | LDte Veruty | DS?H | F | EB ELEVST UPGRADE | 0% | Invoices | $ 557,500.00 | | $ 557,500.00 | |
| | 19287.0 | DV0430 | LDte Veruty | DS?H | D | EB WWTP GENERATOR RENT AFTER JUNE 30TH 2006 | 0% | Invoices | $ 5,000,000.00 | $ 300,000.00 | $ 1,974,401.88 | $ 1,974,401.88 |
| | 19231.0 | DV0432 | LDte Veruty | DS?H | E | ALTERNATE POWER SUPPLY GEN | 100% | Invoices | $ 17,568.97 | $ 17,568.97 | | $ 17,568.55 |
| | 13240 | DV0438 | LDte Veruty | DS?H | D | EB WWTP PETROL TRAILER PARK | 0% | Invoices | $ 399,897.33 | | $ 399,897.33 | $ 399,897.33 |
| | 15489 | DV06431 | LDte Veruty | DP?H | F | EB WWTP CONTROL WIRING REPLACEMENT | 50% | Invoices | | | | |
| | | DV06410 | LDte Veruty | DS?H | C | WATER SUPPLY | 10 | Invoices | $ 513,508.61 | | $ 31,915.00 | |

BY JASON HOERNOTIVAM
EMERGENCY MANAGER

Project Managers PW Report
01-19-07

## West Bank Water Plant

| Status | HCMS Number | Project NO. | Project Manager | View Per | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 7273 | DW040184 | Gary Benyard | DW0PM | F | ALGIERS INTAKE #1 | 75% | Bid and Contracts | $200,000.00 | $8,000.00 |  | $1,100.00 |
|  | 3600 | DW040185 | Gary Benyard | DW0PM | F | ALGIERS INTAKE #2 | 75% | Invoices with Contracts and Bids | $200,000.00 | $18,000.00 |  | $9,000.00 |
|  | 3600.3 | DW0020 | Cary Benyard | DW0PM | F | ALGIERS WATER INTAKE #3 | 75% |  | $4,164.00 | $10,728.84 |  | $10,728.84 |

## East Bank Water Plant

| Status | HCMS Number | Project NO. | Project Manager | View Per | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 4448 | DW004072 | George DeKeas | DW0PM | F | Carrolton WTP Boiler Room |  | Bid and Contracts | $120,000.00 |  | $8,606.25 | $8,606.25 |
|  | 627-0 | DW005048 | Gary Barral | DW0PM | E | Carrolton WTP Elect. Control Bldg. |  | Invoices with Contracts and Bids | $1,382.00 | $1,382.00 |  | $1,382.05 |
|  | 3126 | DW004013 | Gary Barral | DW0PM | E | CARROLLTON FACILITY (HAMILTON) SUB STATION |  |  | $3,021.25 | $3,023.25 |  | $3,023.25 |
|  | 4841 | DW040161 | Todd Holloway | DW0PM | E | CARROLLTON WTP BUILDING REPAIR |  | Contract or Projected Cost | $120,000.00 | $40,158.00 |  | $65,340.55 |
|  | 4152 | DW040162 | George DeKeas | DW0PM | F | CARROLLTON INTAKE #1 |  | Contract or Projected Cost | $200,000.00 | $8,893.13 | $320,000.00 | $8,893.17 |
|  | 3353 | DW040163 | George DeKeas | DW0PM | F | CARROLLTON INTAKE #2 |  | Contract or Projected Cost | $171,000.00 |  |  |  |
|  |  | DW040164 | Gary Barral |  | F | CARROLLTON (TITEC) CHANGER |  | Contract or Projected Cost | $175,000.00 |  |  |  |
|  |  | DW040167 | Gary Barral |  | F | SPRUCE STREET FIREL CHANGER |  | Contract or Projected Cost | $20,000.00 | $12,000.00 |  |  |
|  | 4075 | DW040195 | George DeKeas | DW0PM | E | Carrolton WTP Head House |  | Contract or Projected Cost | $55,000.00 |  | $55,000.00 |  |
|  |  | DW040196 | George DeKeas |  | E | Carrolton WTP High Lift Bldg. |  | Bid ias and Contracts | $40,000.00 |  |  |  |
|  |  | DW040197 | George DeKeas |  | E | Carrolton WTP Low Lift Bldg. |  | Contract or Projected Cost | $1,375.00 | $1,375.00 |  | $1,375.05 |
|  | 365-0 | DW0207 | George Dufrene | DW0PM | E | Carrolton WTP Mud Pump Bldg. |  | Contract or Projected Cost | $30,000.00 | $30,000.00 |  |  |
|  | 3765 | DW0193 | George Dufrene | DW0PM | E | Carrolton WTP Parade Bldg. |  | Bid ias and Contracts | $200,000.00 |  | $100,000.00 | $44,435.55 |
|  | 8847 | DW0204 | George Dufrene | DW0PM | E | Carrolton WTP Power I House |  | Contract or Projected Cost | $70,000.00 | $70,000.00 |  |  |
|  | 3558 | DW0205 | Randy Canfield | DW0PM | E | Carrolton WTP Welding Bldg. |  | Bid ias and Contracts | $70,000.00 |  | $40,927.00 | 19,205.71 |
|  | 1550-0 | DW0206 | George Dufrene | DW0PM | F | Carrolton WTP Generation Station |  | Bid ias and Contracts | $20,000.00 |  |  | 25,250.56 |
|  | 811-0 | DW0207 | Pablo Aguilera | DW0PM | E | Carrolton WTP Elect. Warehouse |  | Invoices with Contracts and Bids | $3,000.00 | $3,000.00 |  | 3,000.05 |

BY JASON HECKINGOTTOM
EMERGENCY MANAGER

Project Managers PW Report
01-15-07

| Status | ITEMS Number | Project NO. | Project Manager | View Pw | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3172 | DW8206 | Tom Deell | PWPH | E | Carrollton WTP Engineering Bldg. | | Contract or Projected Cost | $ 20,000.00 | $40,000.00 | | $ - |
| | 3499 | DW8209 | Vincent Fouchi | PWPH | F | Carrollton WTP Filter Gallery | | Bid list and Contracts | $ 251,277.22 | | $251,277.22 | $ 315,676.00 |
| | 3056-0 | DW8210 | George Dukuau | PWPH | E | Carrollton WTP Freq. Changer Bldg. | | Bid list and Contracts | $ 7,081.20 | $7,081.20 | | $ 7,081.00 |
| | 929 | DW8211 | Todd Hathaway | PWPH | E | Carrollton WTP Gas Comp. Bldg. | | Involue with Contracts and Bids | $ 22,000.00 | $1,150.00 | | $ 1,150.00 |
| | 6116 | DW8212 | Gabe Dipwcell | PWPH | E | Carrollton WTP Hamilton Storage RM | | Contract or Projected Cost | $ 25,000.00 | $15,000.00 | | $ 6,500.00 |
| | 4953 | DW8212.1 | Gabe Dipwcell | PWPH | E | CARROLLTON HAMILTON PURIFICATION | | Done By Ernst German Group | $ 83,000.00 | | $ 83,500.00 | $ 85,500.00 |
| | 4397 | DW8214 | Gabe Dipwcell | PWPH | E | Carrollton WTP Machine Shop | | Contract or Projected Cost | $ 88,000.00 | $70,123.90 | | $ 70,123.05 |
| | | DW8222 | Vincent Fouchi | | F | Carrollton WTP Realiwain Depth | | Contract or Projected Cost | $ 11,000.00 | | | |
| | 4144 | DW8223 | Vincent Fouchi | PWPH | F | Carrollton WTP Claborne Goivadory/ Subestation] | | Contract or Projected Cost | $ 9,000.00 | $ 9,000.00 | | $ 8,924.41 |
| | | DW8224 | Vincent Fouchi | | F | Carrollton WTP O/4 Basin | | Contract or Projected Cost | $ 60,000.00 | | | |
| | | DW8226 | Vincent Fouchi | | F | Carrollton WTP Lime Depth | | Contract or Projected Cost | $ 60,000.00 | | | |
| | 6036 | DW8227 | Vincent Fouchi | | F | Carrollton WTP New Filter Gallery | | Bid list and Contracts | $ 178,453.84 | | $ 178,453.84 | $ 178,453.84 |
| | | DW8228 | Vincent Fouchi | | F | Carrollton WTP Old Mud Pump House | | Contract or Projected Cost | $ 50,000.00 | | | |
| | | DW8229 | Todd Hathaway | | F | Carrollton WTP Spruce St. Fueling Station | | Contract or Projected Cost | $ 18,500.00 | $ 18,500.00 | | |
| | 3723 | DW8231 | Vincent Fouchi | PWPH | F | Carrollton WTP Vessel Metering Telemetry | | Contract or Projected Cost | $ 30,000.00 | $ 20,000.00 | | $ 23,671.41 |
| | 2966-0 | DW8203-0 | Gabe Dipwcell | PWPH | E | Carrollton WTP Chemical Bldg. | | Contract or Projected Cost | $ 16,143.75 | $18,143.75 | | $ 18,143.71 |
| | 672 | DW8400-180 | Gabe Dipwcell | PWPH | D | EAST BANK WTP EQUIPMENT REPLACEMENT | | | $ 95,109.62 | | $ 95,109.62 | $ 95,109.62 |
| | | | | | | | | | $ 43,783.10 | $21,607.10 | | $ 21,607.11 |

BY JACOH HIGGENBOTTUM
EMERGENCY MANAGER

Project Managers PW Report
09-15-07

| Status | NEMIS Number | Project NO. | Project Manager | View Pw | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Equipment | | | | | | | | | | | | |
| | 847-0 | DR050043 | Von Tran | Project | E | Vehicle Replacement | 100 | During Operation PW 219-290 | $ 10,104,778.73 | | $ | $ |
| | 3399 | DR05271 | Robert Peterson | Project | F | Vehicle renew | 0 | Bid list and Contracts | $ 1,261,730.00 | | $ 1,261,730.00 | $ 854,026.68 |
| | 3534-0 | DR05278 | Von Tran | Project | E | Vehicle | 100 | All Documentation Submitted | $ 1,097,820.00 | | $ 1,097,820.00 | $ 1,097,820.00 |
| | 3511 | DR05278 | Von Tran | Project | C | Vehicle | 100 | All Documentation Submitted | $ 2,129,252.00 | | $ 2,129,252.00 | $ 2,129,252.00 |
| | 4174 | DR05260 | Von Tran | Project | E | Vehicle | 100 | All Documentation Submitted | $ 1,638,067.00 | | $ 1,638,067.00 | $1,638,067.0 |
| | 2007 | DR05574 | Howard Island | Project | F | Misc Vehicle equipment | 0 | | $ 250,000.00 | | $ 250,000.00 | $ 84,422.81 |
| Entergy Power Poles | | | | | | | | | | | | |
| | 6909 | DR05060 | Gary Santal | Project | B | Entergy Power Poles Station 8 and B | 100 | All Documentation Submitted | $ 193,244.91 | | $ 193,244.91 | $ 193,244.91 |
| | 6914 | DR05061 | Gary Santal | Project | B | Entergy Power Poles Station 1 | 100 | All Documentation Submitted | $ 169,507.88 | | $ 169,507.88 | $ 169,507.88 |
| | 6973 | DR05062 | Gary Santal | Project | B | Entergy Power Poles Claiborne Plant | 100 | All Documentation Submitted | $ 171,205.68 | | $ 171,205.68 | $ 171,205.68 |
| | 7347 | DR05063 | Gary Santal | Project | B | Entergy Power Poles Pumping Station D | 100 | All Documentation Submitted | $ 342,218.43 | | $ 342,218.43 | $ 342,218.43 |
| | 6970 | DR05064 | Gary Santal | Project | B | Entergy Power Poles DPS 19 | 100 | All Documentation Submitted | $ 344,655.07 | | $ 344,655.07 | $ 344,655.07 |
| | 6972 | DR05065 | Gary Santal | Project | B | Entergy Power Poles DPS 4 | 100 | All Documentation Submitted | $ 417,218.51 | | $ 417,218.51 | $ 417,218.51 |
| | 6964 | DR05066 | Gary Santal | Project | B | Entergy Power Poles DPS 16 | 100 | All Documentation Submitted | $ 96,541.22 | | $ 96,541.21 | $ 89,841.25 |
| | 6443 | DR05067 | Gary Santal | Project | B | Entergy Power Poles DPS 10 | 100 | All Documentation Submitted | $ 107,430.15 | | $ 104,438.15 | $ 104,438.15 |

Project Managers PW Report
01-19-07

| Status | HSMS Number | Project NO. | Project Manager | View PW | Cat | Damaged Facility | Project Completion | Emergency Operations Information for Managers | Original ESTIMATED PROJECT COST | SMALL PROJECT COST SUBMITTED | LARGE PROJECT COST SUBMITTED | Eligible OBLIGATED Amount |
|--------|-------------|-------------|-----------------|---------|-----|------------------|--------------------|-------------------------------------------|--------------------------------|------------------------------|-------------------------------|---------------------------|
| | | | | | | | | | | | | |

| Estimated Project Cost | $ 397,463,724.16 |
|---|---|
| Estimated Project Cost | 197,657,776.26 |
| Insurance Deduction | 170,000,000.00 |
| Adjusted Estimate | 197,417,776.26 |
| 15 PO | 1565,684.19 |
| Large Project Cost | 151,055,429.31 |
| Small Project Cost | 871,217,650.21 |
| Eligible Obligated | 133,393,611.10 |
| 10% Cost Share | 119,876,576.10 |
| Admin Fee | 871,579.09 |
| Amount Obligated | 172,741,319.19 |
| Total Paid by State | 130,657,402.83 |

| Elevators Center | Claims |
| PA CUEPE | Claims |
| PA DIGEST | Claims |
| STAFFORD ACT | |

BY JACOB H EDGHILL/OTHAM
EMERGENCY MANAGER