

**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

REPLY TO
ATTENTION OF

CONTRACTING DIVISION
PROJECTS WEST BRANCH

April 6, 2007

Mr. Charles R. Pittman, President
C.R. Pittman Construction Co., Inc.
821 Baronne Street
New Orleans, La 70113

SUBJECT:  Contracting Officer's Final Decisions for Replacement of Damaged Equipment at Dwyer Road Drainage Pumping Station, Orleans Parish, La (DACW29-00-C-0093), and Cousins Pumping Station Complex, Pumping Station Expansion and Fronting Protection, Jefferson Parish, La (DACW29-02-C-0062)

Dear Mr. Pittman:

As a follow-up to our meeting 15 March 2007 to discuss the subject claims against your firm, the following is provided:

After considerable, additional and thorough review of the facts, responsibilities, and regulatory guidance concerning the subject damaged equipment, I am satisfied with the appropriateness of my original decisions. The attached Contracting Officer's Final Decisions have been signed and herewith are issued to you.

Hurricane Katrina has caused great loss and misfortune to many.  Like so many other local businesses you are struggling to personally and professionally overcome the effects of the storm.  I realize this, and am very troubled by the financial hardship this decision places on C.R. Pittman Construction Company.  I also feel absolutely certain that the equipment lost or damaged, at your storage facility, can not be considered part of the permanent work; and that these decisions, based on my interpretations of the contract terms and conditions, are fitting.

As I have stated on several occasions, the successful and timely completion of these projects is critical to the affected area's flood control and hurricane protection. I remain willing to discuss any offer or alternative solution you may wish to present.

Sincerely,

Charles R. Zammit

Charles R. Zammit
Contracting Officer

Attachments:
COFD – DACW29-02-C-0062
COFD – DACW29-00-C-0093

**EXHIBIT**

"A"



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

April 6, 2007

Projects West Branch
Contracting Division

Mr. Charles R. Pittman, President,
C.R. Pittman Construction Co., Inc.
3021 Franklin Avenue
New Orleans, Louisiana 70122

> Re:   Contracting Officer's Final Decision;
> Contract No. DACW29-00-C-0093
> Southeast Louisiana Urban Flood Control Project,
> Dwyer Road Drainage Pumping Station, Orleans Parish,
> Louisiana

Dear Mr. Pittman:

This is a Contracting Officer's Final Decision issued pursuant to the Contract Disputes Act, 41 U.S.C. §601, et seq. This Final Decision addresses your company's liability under the referenced contract to the United States of America, through the U.S. Army Corps of Engineers, for unliquidated progress payments made for various items of equipment damaged by the flood waters of Hurricane Katrina. A Notice of Appeal Rights and a Demand for Payment are included at the end of this decision.

## FINDINGS OF FACT

1.     Contract No. DACW29-00-C-0093, a firm-fixed-price construction contract, was awarded to C.R. Pittman Construction Co., Inc. on 20 September 2000 in the original amount of $13,617,730.00. Generally, the contract work included demolition and removal of an existing drainage pumping station and the construction of a new pumping station. Specific items of work include, but are not limited to, the demolition and removal of an existing drainage pumping station; temporary bypass pumping; construction of a new drainage pump station; intake basin and cofferdam excavation and construction, and backfill; clearing and grubbing; unwatering; asphalt roadway removal and replacement; asphalt parking area; new drain lines and drainage structures; removal and replacement of drain lines and drainage structures; new and relocated sewer force mains; new and relocated water lines; fertilizing, seeding and mulching; and other incidental work.

2.     The original contract provided for completion of work within 730 calendar days after receipt of the notice to proceed.

3.     The notice to proceed was acknowledged by Pittman on 25 September 2000.

4.     During the course of contract performance, the required completion date was extended a total of 1,044 days. These time extensions were due to various reasons, such as unsuitable weather and changes to the contract.

5.    The contract work is currently ongoing.

6.    The contract required that Pittman purchase and furnish numerous items of equipment that would ultimately be installed by Pittman as part of the completed pumping station.

7.    During the course of contract performance, Pittman, in fact, did purchase numerous items of equipment that were ultimately to be incorporated into the completed pumping station. This included items such as an emergency generator, climber screen cleaners and a water booster pump, plus other items.

8.    After Pittman purchased the equipment, it stored the items at its storage yard and warehouse at 3021 Franklin Avenue, New Orleans, Louisiana.

9.    Although the purchased equipment had yet to be installed at the pumping station site, the government elected, under FAR 52.232-5(b)(2), Payments under Fixed-Price Construction Contracts, to make progress payments to Pittman for the purchased equipment being stored at the Franklin Avenue location. The following chart lists the relevant (for purposes of this final decision) items of equipment purchased by Pittman and the amount of money the government paid to Pittman through progress payments in consideration of the equipment purchased:

| EQUIPMENT DESCRIPTION | PROGRESS PAYMENT AMOUNT |
|---|---|
| Pot/Gen. Water Booster Pump | $9,566.93 |
| Climber Screen Cleaners | $681,250.00 |
| Exhaust Fans | $3,760.50 |
| Submersible Lift Station | $9,799.10 |
| Air Compressor | $2,180.00 |
| Emergency Generator | $1,200,000.00 |
| Misc. Valves | $19,930.65 |
| Louvers | $4,621.60 |
| Backflow Preventer | $5,447.82 |
| Diesel Fuel Transfer Pump | $735.75 |
| Misc. Plumbing Accessories | $3,000.00 |
| TOTAL | $1,940,218.62 |

10.    On 29 August 2005 Hurricane Katrina struck the New Orleans area. This hurricane event caused Pittman's storage yard and warehouse on Franklin Avenue to flood. The floodwaters damaged all of the items of equipment described in the foregoing paragraph. All such items of equipment were damaged so severely that they will require either total replacement or substantial refurbishment and restoration prior to installation. The total amount of pre-flood progress payments made for the equipment that was damaged, but which is no longer fit for use, is $1,940,218.62.

11. The contract includes the following standard clauses:

    a.    FAR 52.236-7, Permits and Responsibilities;

    b.    FAR 52.232-5, Payments Under Fixed-Price Construction Contracts;

    c.    FAR 52.245-2, Government Property (Fixed-Price Contracts);

    d.    FAR 52.233-1, Disputes;

12. The contract also includes the following general clauses in section 01100:

a. "DAMAGE TO WORK", Section 01100-2:

*The responsibility for damage to any part of the permanent work shall be as set forth in the Section 00700 Clause entitled "PERMITS AND RESPONSIBILITIES" (FAR 52.236-7). However, if, in the judgment of the Contracting Officer, any part of the permanent work performed by the Contractor is damaged by flood, earthquake, hurricane or tornado which damage is not due to the failure of the Contractor to take reasonable precautions or to exercise sound engineering and construction practices in the conduct of the work, the Contractor shall make the repairs as ordered by the Contracting Officer and full compensation for such repairs will be made at the applicable contract unit price or lump sum prices as fixed and established in the contract. If, in the opinion of the Contracting Officer, there are no contract unit or lump sum prices applicable to any part of such work, an equitable adjustment shall be made pursuant to the Section 00700 Clause entitled, "CHANGES" (FAR 52.243-4). Except as herein provided, damage to all work (including temporary construction), utilities, materials, equipment and plant shall be repaired to the satisfaction of the Contracting Officer at the Contractor's expense, regardless of the cause of such damage. Any costs associated with flooding of dewatered areas as directed by the Contracting Officer will be paid for by an equitable adjustment pursuant to the contract clause entitled "Changes".*

b. "PAYMENT FOR MATERIALS STORED OFF-SITE", Section 01100-20:

*Pursuant to the Contract Clause entitled "PAYMENTS UNDER FIXED PRICE CONSTRUCTION CONTRACTS" materials delivered to the Contractor at locations other than the site of the work may be taken into consideration in making progress payments if included in invoices for payment estimates, and if all the conditions of the Contract Clauses are fulfilled. Payment for items delivered to locations other than the work site shall be limited to materials which has (sic) been approved (if required by the Technical Specifications) and fabricated to the point where they are identifiable to an item of work required under this contract. Such payment shall be made only after receipt of paid or receipted invoices or invoices with canceled dollar value of the materials and labor incorporated into them. The delivery size shall be acceptable to the Government prior to any consideration for payment. Payment for materials delivered off-site is limited to: Treated Timber Piles, Untreated Timber Piles,*

*Overhead Electric Crane, Climber Screen Cleaners, Discharge Pipe, 350 CFS Pumps and Motors, Aboveground Storage Tanks, and Generator and Ancillary Equipment.*

13.    By letter of 14 October 2005 Pittman advised Alan Hunter, the Administrative Contracting Officer ("ACO") that various items of equipment and materials stored at the Franklin Avenue site had been damaged during the hurricane and requested "...direction relative to what to do at this point."

14.    By letter of 21 November 2005, Mr. Hunter advised Pittman that "...the Government has no responsibility for the damages to the materials and equipment stored at 3021 Franklin Avenue", citing the Permits and Responsibilities clause as well as the inapplicability of the Damage to Work clause.

15.    Subsequent correspondence from the ACO to Pittman reiterated the government's position. The ACO's letter of 7 March 2006 further requested that the contractor should submit a plan indicating how it intended to replace the equipment and the impact, if any, it would have on the scheduled completion date. The ACO's letter of 11 July 2006 advised Pittman that the government, in essence, had overpaid the contractor because the damaged equipment and materials no longer had the value that warranted the prior progress payments.

16.    By letter of 13 July 2006 Pittman advised the ACO of its position that the damaged equipment fell under the scope of the Damage to Work clause, based upon its assertion that the damaged equipment constitutes part of the "permanent work". Pittman further asserted that, due to government changes in the contract, the project was not ready to accept and install the equipment when it was ready to be shipped by the supplier, thus necessitating the storage requirement.

17.    As of the date of this final decision, Pittman has not replaced or refurbished any of the damaged equipment, nor has it reimbursed the government for any of the progress payments allocable to the damaged equipment.

## THE GOVERNMENT'S CLAIM

The government claims that Pittman is liable in the principal sum of $1,940,218.62, which represents the progress payments allocable to the flood-damaged equipment. Since the equipment is no longer suitable for installation in the pumping station, and since Pittman has neither replaced nor satisfactorily refurbished the equipment, the government contends that it has received no value for the payments made and, accordingly, that Pittman owes the government the amount of progress payments made to Pittman for the equipment.

## ANALYSIS AND DISCUSSION

The central question in the government's claim is: Who bears the risk of loss for the equipment damaged by the floodwaters of Hurricane Katrina? This issue is resolved through application of the terms and conditions of the contract.

## The Permits and Responsibilities clause:

The relevant part of the Permits and Responsibilities clause, FAR 52.236-7, reads as follows:

> ...*The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract.*

This provision provides, in effect, for the contractor's strict liability for damage to materials and work prior to completion and acceptance. The contractor bears responsibility for "all materials delivered and work performed" unless completion and acceptance, or acceptance of an applicable portion of the work, has occurred. No such acceptance of the relevant work occurred prior to the time the equipment was damaged by floodwaters. Accordingly, under the Permits and Responsibilities clause, the contractor is responsible for the damaged equipment.

## The Damage to Work clause:

The Damage to Work clause may, in the event of some defined occurrences, mitigate the strict dictates of the Permits and Responsibilities clause. It reads as follows:

> *The responsibility for damage to any part of the permanent work shall be as set forth in the Section 00700 clause of the contract entitled "Permits and Responsibilities" (FAR 52.236-7) However, if in the judgment of the Contracting Officer, any part of the permanent work performed by the Contractor is damaged by flood, earthquake, hurricane or tornado, which damage is not due to the failure of the Contractor to take reasonable precautions or to exercise sound engineering and construction practices in the conduct of the work, the Contractor shall make the repairs as ordered by the Contracting Officer and full compensation for such repairs will be made at applicable contract unit or lump sum prices as fixed and established in the contract. If, in the opinion of the Contracting Officer, there are not contract unit or lump sum prices applicable to any part of such work, an equitable adjustment shall be made pursuant to the Section 0700 Clause entitled "Changes" (FAR 52.243-4). Except as herein provided, damage to all work (including temporary construction), utilities, materials, equipment and plant shall be repaired to the satisfaction of the Contracting Officer at the contractor's expense, regardless of the cause of such damage.*

For purposes of this analysis, the most relevant phrase in the Damage to Work clause is "any part of the permanent work". If the damage to the stored equipment cannot be reasonably classified as damage to "permanent work", then this clause will provide no relief to the contractor. Because the damaged equipment was located in the contractor's storage area and had not yet been incorporated into the pump station, the damaged equipment was not "any part of the permanent work", as that phrase is used in the Damage to Work clause. Accordingly, the

Damage to Work clause is not applicable to the facts of this matter and may not be invoked as the basis to relieve the contractor from financial liability for the damaged equipment.

## Does passage of title to the government shift liability from the contractor to the government?

The question has been raised whether the presumed passage of ownership in the equipment in favor of the government as of the date of damage may have shifted the risk of loss to the government. As explained below, the answer is "no".

## FAR 52.232-5, Payments under Fixed-Price Construction Contracts:

FAR 52.232-5(b)(2), as implemented through the general provision entitled "Payment for Materials Stored Off-Site", Section 01100-20, allows the contracting officer to make progress payments to a contractor for "material delivered to the Contractor at locations other than the site" of the construction. FAR 52.232-5(f) clearly provides that risk of loss does not shift from the contractor simply because the government makes payment to the contractor for property delivered:

> *Title, liability and reservation of rights.* All material and work covered by progress payments made shall, at the time of payment, become the sole property of the Government, but this shall not be construed as-
> (1) Relieving the Contractor from the sole responsibility for all material and work upon which payments have been made or the restoration of any damaged work; or
>
> (2) Waiving the right of the Government to require the fulfillment of all of the terms of the contract.

## Government Property clause (FAR 52.245-2):

Additionally, the Government Property clause makes it clear that, while passage of title to the government occurs upon delivery of certain property, such passage of title does not relieve the contractor of liability for damage to the property:

> *(c) Title in Government Property....*
> (4) If this contract contains a provision directing the Contractor to purchase material for which the Government will reimburse the contractor as a direct item of cost under this contract -
> (i) Title to material purchased from a vendor shall pass to and vest in the Government upon the vendor's delivery of such material...
>
> *(g) Risk of Loss.* Unless otherwise provided in this contract, the Contractor assumes the risk of, and shall be responsible for, any loss or destruction of, or damage to, Government property upon its delivery to the Contractor or upon passage of title to the Government under paragraph (c) of this clause.....

## FAR 32.503-16, Risk of Loss:

Finally, this section of the FAR provides guidance and interpretation on how the risk of loss is, or is not, affected by the Progress Payments clause:

> *(a) Under the Progress Payments clause, and except for normal spoilage, the contractor bears the risk of loss, theft, destruction, or damage to property affected by the clause, even though title is vested in the Government, unless the Government has expressly assumed this risk. The clauses prescribed in this regulation related to progress payments, default, and terminations do not constitute a Government assumption of this risk.*

## Government right to seek repayment:

The gravamen of this claim is that the government has made payment for equipment which no longer exists or which is no longer suitable for incorporation into the permanent work. Even without specific authorization, it would be reasonable to conclude that the government would be entitled to claim reimbursement for payments made for equipment that has been damaged beyond use. Nonetheless, citation is made to FAR 32.503-16, Risk of Loss, section (b), which states:

> *(b) If a loss occurs in connection with property for which the contractor bears the risk, the contractor is obligated to repay to the Government the amount of unliquidated progress payments based on costs allocable to the property.*

Clearly, the government is entitled to assert this affirmative claim.

## Pittman's asserted defenses:

Pittman has asserted two reasons why the government, and not Pittman, should be responsible for the damaged equipment.

First, Pittman asserts that the damage to the equipment constitutes damage to the "permanent work" and, under the "Damage to Work" clause, the government should pay for the cost of refurbishing or replacing the equipment. As previously noted, the stored equipment does not constitute part of the "permanent work", meaning the "Damage to Work" clause is inapplicable.

Second, in its letter of 13 July 2006, Pittman states that, due to government changes to the contract, the project was not ready to accept and install the various items of equipment when they were ready to be shipped by the suppliers. It is not clear from the letter why Pittman believes this assertion to be relevant, but one can assume that Pittman is asserting that, had the equipment been installed at the pumping station, it either would not have flooded or, if it did flood, the cost of the damaged equipment would have been at the government's risk, under the Damage to Work clause. This assertion is without merit.

Assuming, *arguendo*, that some action of the government caused a delay in completion of the contract work (or in the installation of the damaged equipment) the contractor is thereby entitled to an equitable adjustment in the contract price. However, a change to the contract work that extends performance time does not relieve the contractor from its contractual obligation to bear

the risk of loss for equipment in its possession. To assert the contrary is to state that a government-caused extension in the time to performance has the effect of totally rewriting the contract's specific provisions on risk of loss, thereby making the government the insurer or indemnifier of the contractor.

When the equipment was damaged it was in the possession, custody and control of Pittman. For obvious reasons, the contract provides, under several clauses, that in such circumstances the risk of loss is with the contractor. A modification to the contract which extends the time of performance does not remove this risk from the contractor, but will entitle the contractor to the otherwise allowable costs directly associated with the additional performance time and extended risks, such as additional storage costs and insurance premiums. All terms and conditions of a contract that has been modified are still in full force and effect, *except* to the extent that the modification may have altered specific provisions of the contract. A change to the contract may entitle a contractor to recovery of *costs* caused by the change, but, unless specifically provided, the change does not alter the *risk of loss scheme* explicitly set forth elsewhere in the contract.

## FINAL DECISION

In consideration of the foregoing finding of facts, and based upon the foregoing analysis and discussion, it is my final decision that C.R. Pittman Construction Company, Inc. is justly and truly indebted to the United States of America, through the U.S. Army Corps of Engineers, under Contract Number DACW29-00-C-0093, in the amount of $1,940,218.62

## NOTICE OF APPEAL RIGHTS

This is the final decision of the Contracting Officer. This decision may be appealed under the Disputes clause to the Armed Services Board of Contract Appeals, Skyline 6, 5109 Leesburg Pike, Falls Church, Virginia 22041-3208. If you decide to appeal, you must mail or otherwise furnish written notice thereof to the Armed Services Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the contracting officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, shall include a copy of this decision and identify the contract by number. With regard to appeals to the Armed Services Board of Contract Appeals you may, solely at your election, proceed under the Boards' small claims procedure for claims of $50,000 or less or its accelerated procedures for claims of $100,000 or less. In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims (except as provided in the Contract Disputes Act, 41 U.S.C. § 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

## DEMAND FOR PAYMENT

The United States of America, through the U.S. Army Corps of Engineers, hereby demands payment of $1,940,218.62 from C.R. Pittman Construction Company, Inc. in

satisfaction of the sums determined to be due and owing pursuant to the foregoing contracting officer's final decision under Contract Number DACW29-00-C-0093. You are hereby notified that any amounts not paid within thirty (30) days from the date of this demand shall bear interest from the date of demand, or from any earlier date specified in the contract, and that the interest rate shall be the rate specified by the Secretary of the Treasury, for the period affected, under Public Law 92-41. If immediate payment is not practicable or if the amount is disputed, you may submit a proposal for deferment of collection. The undersigned contracting officer is the responsible official designated for determining the amount of the debt and for its collection.

If you have any questions, please contact me at (504) 862-1164.

Sincerely,

Charles R Zammit

Charles R. Zammit
Contracting Officer

9

**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

Projects West Branch
Contracting Division

April 6, 2007

Mr. Charles R. Pittman, President,
C.R. Pittman Construction Co., Inc.
3021 Franklin Avenue
New Orleans, Louisiana 70122

Re:    Contracting Officer's Final Decision,
Contract No. DACW29-02-C-0062
West Bank and Vicinity, New Orleans Louisiana Hurricane
Protection Project, West of Algiers Canal Cousins Pumping
Station Complex Pumping Station Expansion and Fronting
Protection Jefferson Parish, Louisiana

Dear Mr. Pittman:

This is a Contracting Officer's Final Decision issued pursuant to the Contract Disputes Act, 41 U.S.C. §601, et seq. This Final Decision addresses your company's liability under the referenced contract to the United States of America, through the U.S. Army Corps of Engineers, for unliquidated progress payments made for various items of equipment damaged by the floodwaters of Hurricane Katrina. A Notice of Appeal Rights and a Demand for Payment are included at the end of this decision.

## FINDINGS OF FACT

1.    Contract No. DACW29-02-C-0062, a firm-fixed-price construction contract, was awarded to C.R. Pittman Construction Co., Inc. on 16 September 2002 in the original amount of $18,781,000.00. Generally, the contract work included construction of a pumping station consisting of pile-supported concrete intake basin and discharge tubes; a steel-framed superstructure; government-furnished pumps, gears and engines; all mechanical appurtenances, and related electrical equipment; dewatering and temporary retaining structures; T-wall fronting protection at existing pump stations; placing embankment, channel excavation, placing riprap, geotextile fabric, seeding and fertilizing, and other incidental work.

2.    The original contract provided for completion of work within 1,320 calendar days after receipt of the notice to proceed.

3.    The notice to proceed was acknowledged by Pittman on 10 October 2002.

4.    During the course of contract performance, the required completion date was extended a total of 404 days. These time extensions were due to various reasons, such as unsuitable weather and changes to the contract.

5.    The contract work is currently ongoing.



EXHIBIT

"B"

6.      The contract required that Pittman purchase and furnish numerous items of equipment that would ultimately be installed by Pittman as part of the completed pumping station.

7.      During the course of contract performance, Pittman, in fact, did purchase numerous items of equipment that were ultimately to be incorporated into the completed pumping station. This included items such as an emergency generator, vacuum pump, electrical motor control center, and other items.

8.      After Pittman purchased the equipment, it stored the items at its storage yard and warehouse at 3021 Franklin Avenue, New Orleans, Louisiana.

9.      Although the purchased equipment had yet to be installed at the pumping station site, the government elected, under FAR 52.232-5(b)(2), Payments under Fixed-Price Construction Contracts, to make progress payments to Pittman for the purchased equipment being stored at the Franklin Avenue location. The following chart lists the relevant (for purposes of this final decision) items of equipment purchased by Pittman and the amount of money the government paid to Pittman through progress payments in consideration of the equipment purchased:

| EQUIPMENT DESCRIPTION | PURCHASE PRICE |
|---|---|
| Potable Water Booster Pump | $23,880.41 |
| Ventilation Fans | $16,731.50 |
| Submersible Pump & Accs. | $10,608.56 |
| Vacuum Pump - Motor Driven | $45,924.32 |
| Vacuum Pump - Engine Driven | $79,707.68 |
| Air Comp. Motor & Engine Driven | |
| Electrical Motor Control Center | $36,500.00 |
| Emergency Generator | $79,931.25 |
| Sewage Treatment Plant | $48,937.50 |
| Waste Oil Pump | $3,145.74 |
| Diaphragm Valve Actuator | $3,860.63 |
| Control Panel - Climber | $9,650.78 |
| Cleaners | |
| Misc. Valves | $25,000.00 |
| Vacuum Piping Accessories | $6,649.75 |
| Builders Hardware | $5,162.79 |
| | $4,200.00 |
| TOTAL | $399,890.91 |

10.      On 29 August 2005 Hurricane Katrina struck the New Orleans area. This hurricane event caused Pittman's storage yard and warehouse on Franklin Avenue to flood. The floodwaters damaged all of the items of equipment described in the foregoing paragraph. The such items of equipment were damaged so severely that they will require either total replacement or substantial refurbishment and restoration prior to installation. The total amount of pre-flood progress payments made for the equipment that was damaged, but which is no

2

longer fit for use, is $399,890.91.

11. The contract includes the following standard clauses:

    a.    FAR 52.236-7, Permits and Responsibilities;

    b.    FAR 52.232-5, Payments Under Fixed-Price Construction Contracts;

    c.    FAR 52.245-2, Government Property (Fixed-Price Contracts);

    d.    FAR 52.233-1, Disputes;

12. The contract includes the following general clauses in section 01100:

"DAMAGE TO WORK", Section 01100-2:

*The responsibility for damage to any part of the permanent work shall be as set forth in the Section 00700 Clause entitled "PERMITS AND RESPONSIBILITIES" (FAR 52.236-7). However, if, in the judgment of the Contracting Officer, any part of the permanent work performed by the Contractor is damaged by flood, earthquake, hurricane or tornado which damage is not due to the failure of the Contractor to take reasonable precautions or to exercise sound engineering and construction practices in the conduct of the work, the Contractor shall make the repairs as ordered by the Contracting Officer and full compensation for such repairs will be made at the applicable contract unit price or lump sum prices as fixed and established in the contract. If, in the opinion of the Contracting Officer, there are no contract unit or lump sum prices applicable to any part of such work, an equitable adjustment shall be made pursuant to the Section 00700 Clause entitled, "CHANGES" (FAR 52.243-4). Except as herein provided, damage to all work (including temporary construction), utilities, materials, equipment and plant shall be repaired to the satisfaction of the Contracting Officer at the Contractor's expense, regardless of the cause of such damage.*

13. By modification of 9 March 2004, the following provision was added to the contract:

b. "PAYMENT FOR MATERIALS STORED OFF-SITE", Section 01100-23:

*Pursuant to the Contract Clause entitled "PAYMENTS UNDER FIXED PRICE CONSTRUCTION CONTRACTS" (APR 1989) materials delivered to the Contractor at locations other than the site of the work may be taken into consideration in making progress payments if included in invoices for payment estimates and if all the conditions of the Contract Clauses are fulfilled. Payment for items delivered to locations other than the work site shall be limited to materials which have been approved (if required by the technical specifications) and fabricated to the point where they are identifiable to an item of work required under this contract. Such payment shall be made only after receipt of paid or receipted invoices or invoices with canceled check showing title to the items by*

the prime Contractor. These invoices must show the dollar value of the materials and labor incorporated into them. The delivery size shall be acceptable to the Government and the materials shall be available for inspection by the Government prior to any consideration for payment. Payment for materials delivered off-site is limited to:

a.    Cast Iron trench Grating
b.    Ventilation Fans
c.    Submersible Pump w/Accessories
d.    Potable Water Booster Pump
e.    Vacuum Pump - Motor Driven Unit
f.    Vacuum Pump - Diesel Engine Driven Unit
g.    Vacuum Piping Accessories
h.    Waste Oil Piping Accessories
i.    Air Compressor
j.    Air Valve
k.    Builders Hardware
l.    Mechanical Climber Screen Cleaners
m.    Package Treatment Plant
n.    25 Ton Overhead Cranes
o.    Waste Oil Tank
p.    Major Electrical Equipment (MCC's, Etc.)
q.    Emergency Generator.

14.    By letter of 14 October 2005 Pittman advised Alan Hunter, the Administrative Contracting Officer ("ACO") that various items of equipment and materials stored at the Franklin Avenue site had been damaged during the hurricane and requested "...direction relative to what to do at this point."

15.    By letter of 21 November 2005, Mr. Hunter advised Pittman that "...the Government has no responsibility for the damages to the materials and equipment stored at 3021 Franklin Avenue", citing the Permits and Responsibilities clause as well as the inapplicability of the Damage to Work clause.

16.    Subsequent correspondence from the ACO to Pittman reiterated the government's position. The ACO's letter of 7 March 2006 further requested that the contractor should submit a plan indicating how it intended to replace the equipment and the impact, if any, it would have on the scheduled completion date. The ACO's letter of 11 July 2006 advised Pittman that the government, in essence, had overpaid the contractor because the damaged equipment and materials no longer had the value that warranted the prior progress payments.

17.    By letter of 13 July 2006 Pittman advised the ACO of its position that the damaged equipment fell under the scope of the Damage to Work clause, based upon its assertion that the damaged equipment constitutes part of the "permanent work". Pittman further asserted that, due to government changes in the contract, the project was not ready to accept and install the equipment when it was ready to be shipped by the supplier, thus necessitating the storage requirement.

18.     As of the date of this final decision, Pittman has not replaced or refurbished any of the damaged equipment, nor has it reimbursed the government for any of the progress payments allocable to the damaged equipment.

## THE GOVERNMENT'S CLAIM

The government claims that Pittman is liable in the principal sum of $399,890.91, which represents the progress payments allocable to the flood-damaged equipment. Since the equipment is no longer suitable for installation in the pumping station, and since Pittman has neither replaced nor satisfactorily refurbished the equipment, the government contends that it has received no value for the payments made and, accordingly, that Pittman owes the government the amount of progress payments made to Pittman for the equipment.

## ANALYSIS AND DISCUSSION

The central question in the government's claim is: Who bears the risk of loss for the equipment damaged by the floodwaters of Hurricane Katrina?  This issue is resolved through application of the terms and conditions of the contract.

## The Permits and Responsibilities clause:

The relevant part of the Permits and Responsibilities clause, FAR 52.236-7, reads as follows:

> ...The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract.

This provision provides, in effect, for the contractor's strict liability for damage to materials and work prior to completion and acceptance.  The contractor bears responsibility for "all materials delivered and work performed" unless completion and acceptance, or acceptance of an applicable portion of the work, has occurred.  No such acceptance of the relevant work occurred prior to the time the equipment was damaged by floodwaters.  Accordingly, under the Permits and Responsibilities clause, the contractor is responsible for the damaged equipment.

## The Damage to Work clause:

The Damage to Work clause may, in the event of some defined occurrences, mitigate the strict dictates of the Permits and Responsibilities clause.  It reads as follows:

> The responsibility for damage to any part of the permanent work shall be as set forth in the Section 00700 clause of the contract entitled "Permits and Responsibilities" (FAR 52.236-7)  However, if in the judgment of the Contracting Officer, any part of the permanent work performed by the Contractor is damaged by flood, earthquake, hurricane or tornado, which damage is not due to the

*failure of the Contractor to take reasonable precautions or to exercise sound engineering and construction practices in the conduct of the work, the Contractor shall make the repairs as ordered by the Contracting Officer and full compensation for such repairs will be made at applicable contract unit or lump sum prices as fixed and established in the contract. If, in the opinion of the Contracting Officer, there are not contract unit or lump sum prices applicable to any part of such work, an equitable adjustment shall be made pursuant to the Section 0700 Clause entitled "Changes" (FAR 52.243-4). Except as herein provided, damage to all work (including temporary construction), utilities, materials, equipment and plant shall be repaired to the satisfaction of the Contracting Officer at the contractor's expense, regardless of the cause of such damage.*

For purposes of this analysis, the most relevant phrase in the Damage to Work clause is "any part of the permanent work". If the damage to the stored equipment cannot be reasonably classified as damage to "permanent work", then this clause will provide no relief to the contractor. Because the damaged equipment was located in the contractor's storage area and had not yet been incorporated into the pump station, the damaged equipment was not "any part of the permanent work", as that phrase is used in the Damage to Work clause. Accordingly, the Damage to Work clause is not applicable to the facts of this matter and may not be invoked as the basis to relieve the contractor from financial liability for the damaged equipment.

## Does passage of title to the government shift liability from the contractor to the government?

The question has been raised whether the presumed passage of ownership in the equipment in favor of the government as of the date of damage may have shifted the risk of loss to the government. As explained below, the answer is "no".

## FAR 52.232-5, Payments under Fixed-Price Construction Contracts:

FAR 52.232-5(b)(2), as implemented through the general provision entitled "Payment for Materials Stored Off-Site", Section 01100-20, allows the contracting officer to make progress payments to a contractor for "material delivered to the Contractor at locations other than the site" of the construction. FAR 52.232-5(f) clearly provides that risk of loss does not shift from the contractor simply because the government makes payment to the contractor for property delivered:

*Title, liability and reservation of rights. All material and work covered by progress payments made shall, at the time of payment, become the sole property of the Government, but this shall not be construed as-*
*(1) Relieving the Contractor from the sole responsibility for all material and work upon which payments have been made or the restoration of any damaged work; or*
*(2) Waiving the right of the Government to require the fulfillment of all of the terms of the contract.*

**Government Property clause (FAR 52.245-2):**

Additionally, the Government Property clause makes it clear that, while passage of title to the government occurs upon delivery of certain property, such passage of title does not relieve the contractor of liability for damage to the property:

> *(c) Title in Government Property....*
> *(4) If this contract contains a provision directing the Contractor to purchase material for which the Government will reimburse the contractor as a direct item of cost under this contract -*
> *(i) Title to material purchased from a vendor shall pass to and vest in the Government upon the vendor's delivery of such material...*
>
> *(g) Risk of Loss. Unless otherwise provided in this contract, the Contractor assumes the risk of, and shall be responsible for, any loss or destruction of, or damage to, Government property upon its delivery to the Contractor or upon passage of title to the Government under paragraph (c) of this clause.....*

**FAR 32.503-16, Risk of Loss:**

Finally, this section of the FAR provides guidance and interpretation on how the risk of loss is, or is not, affected by the Progress Payments clause:

> *(a) Under the Progress Payments clause, and except for normal spoilage, the contractor bears the risk of loss, theft, destruction, or damage to property affected by the clause, even though title is vested in the Government, unless the Government has expressly assumed this risk. The clauses prescribed in this regulation related to progress payments, default, and terminations do not constitute a Government assumption of this risk.*

**Government right to seek repayment:**

The gravamen of this claim is that the government has made payment for equipment which no longer exists or which is no longer suitable for incorporation into the permanent work. Even without specific authorization, it would be reasonable to conclude that the government would be entitled to claim reimbursement for payments made for equipment that has been damaged beyond use. Nonetheless, citation is made to FAR 32.503-16, Risk of Loss, section (b), which states:

> *(b) If a loss occurs in connection with property for which the contractor bears the risk, the contractor is obligated to repay to the Government the amount of unliquidated progress payments based on costs allocable to the property.*

Clearly, the government is entitled to assert this affirmative claim.
**Pittman's asserted defenses:**

Pittman has asserted two reasons why the government, and not Pittman, should be responsible for the damaged equipment.

First, Pittman asserts that the damage to the equipment constitutes damage to the "permanent work" and, under the "Damage to Work" clause, the government should pay for the cost of refurbishing or replacing the equipment.  As previously noted, the stored equipment does not constitute part of the "permanent work", meaning the "Damage to Work" clause is inapplicable.

Second, in its letter of 13 July 2006, Pittman states that, due to government changes to the contract, the project was not ready to accept and install the various items of equipment when they were ready to be shipped by the suppliers.  It is not clear from the letter why Pittman believes this assertion to be relevant, but one can assume that Pittman is asserting that, had the equipment been installed at the pumping station, it either would not have flooded or, if it did flood, the cost of the damaged equipment would have been at the government's risk, under the Damage to Work clause.  This assertion is without merit.

Assuming, *arguendo*, that some action of the government caused a delay in completion of the contract work (or in the installation of the damaged equipment) the contractor is thereby entitled to an equitable adjustment in the contract price.  However, a change to the contract work that extends performance time does not relieve the contractor from its contractual obligation to bear the risk of loss for equipment in its possession.  To assert the contrary is to state that a government-caused extension in the time to performance has the effect of totally rewriting the contract's specific provisions on risk of loss, thereby making the government the insurer or indemnifier of the contractor.

When the equipment was damaged it was in the possession, custody and control of Pittman.  For obvious reasons, the contract provides, under several clauses, that in such circumstances the risk of loss is with the contractor.  A modification to the contract which extends the time of performance does not remove this risk from the contractor, but will entitle the contractor to the otherwise allowable costs directly associated with the additional performance time and extended risks, such as additional storage costs and insurance premiums.  All terms and conditions of a contract that has been modified are still in full force and effect, *except* to the extent that the modification may have altered specific provisions of the contract.  A change to the contract may entitle a contractor to recovery of *costs* caused by the change, but, unless specifically provided, the change does not alter the *risk of loss scheme* explicitly set forth elsewhere in the contract.

## FINAL DECISION

In consideration of the foregoing finding of facts, and based upon the foregoing analysis and discussion, it is my final decision that C.R. Pittman Construction Company, Inc. is justly and truly indebted to the United States of America, through the U.S. Army Corps of Engineers, under Contract Number DACW29-02-C-0062, in the amount of $399,890.91.

## NOTICE OF APPEAL RIGHTS

18

This is the final decision of the Contracting Officer. This decision may be appealed under the Disputes clause to the Armed Services Board of Contract Appeals, Skyline 6, 5109 Leesburg Pike, Falls Church, Virginia 22041-3208. If you decide to appeal, you must mail or otherwise furnish written notice thereof to the Armed Services Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the contracting officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, shall include a copy of this decision and identify the contract by number. With regard to appeals to the Armed Services Board of Contract Appeals you may, solely at your election, proceed under the Boards' small claims procedure for claims of $50,000 or less or its accelerated procedures for claims of $100,000 or less. In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims (except as provided in the Contract Disputes Act, 41 U.S.C. § 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

## DEMAND FOR PAYMENT

The United States of America, through the U.S. Army Corps of Engineers, hereby demands payment of $399,890.91 from C.R. Pittman Construction Company, Inc. in satisfaction of the sums determined to be due and owing pursuant to the foregoing contracting officer's final decision under Contract Number DACW29-02-C-0062. You are hereby notified that any amounts not paid within thirty (30) days from the date of this demand shall bear interest from the date of demand, or from any earlier date specified in the contract, and that the interest rate shall be the rate specified by the Secretary of the Treasury, for the period affected, under Public Law 92-41. If immediate payment is not practicable or if the amount is disputed, you may submit a proposal for deferment of collection. The undersigned contracting officer is the responsible official designated for determining the amount of the debt and for its collection.

If you have any questions, please contact me at (504) 862-1164.

Sincerely,

Charles R. Zammit
Charles R. Zammit
Contracting Officer

GALLOWAY, JOHNSON, TOMPKINS, B R & SMITH
A PROFESSIONAL LAW CORPORATION

JOHN E. GALLOWAY †∘
J. MICHAEL JOHNSON (1946-2001)
JAMES M. TOMPKINS †∘▲
TIMOTHY F. BURR †∘
THOMAS J. SMITH †∘
LARRY G. CANADA ††∘ ж
RICHARD G. DUPLANTIER, JR. †
J. MICHAEL GRIMLEY, JR. ∘†
MARK R. PHARR, III •†
JASON P. WAGUESPACK †
GERALD A. MELCHIODE †∘
W. DAVID JESTER ∘⊕
KEVIN A. MARKS †∘
KEVIN L. COLE †•
LES PICKETT •
RICHARD E. KING †∘ ж
NATASHA Z. WILSON †∘
MARY LOU SUMMERVILLE •
DORIS T. BOBADILLA †ж
JESSICA R. JONES •
TIMOTHY W. HASSINGER †
STEPHEN J. MOORE †⊕∘
KIMBERLY A. ANDERSON †
R SCOTT TRAWEEK ∘⊕
JAMES A. PRATHER †
PHILLIP S. HOWELL ∘
LYNNE JUREK SHANNON •

————————

CLARE VETTERS COUGILL •
MARGARET A. KRASICKI ∘
BRUCE A. BANNON †
JULIE E. VAICIUS †
MICHAEL D. LONEGRASS †
TERESA LEYVA MARTIN †
FREDERICK W. SWAIM III †
PETER A. BOURGEOIS †
CYNTHIA J. THOMAS †▲⊕
JULIE D. ROBLES † (1959-2005)
JASON F. GILES †
TIFFANY A. MANN †
FRANK A. ROMEU, JR. ††•
JESSIE S. HAYNES †
JAMES T. BAILEY •
B. WESLEY PITTS †

RYAN M. BOURGEOIS †
KURTIS J. KEEFER ∴ ∀
THOMAS L. ROBINSON ∴
GORDON V. GREIG †
RYAN PEDRAZA ∴
JACOB G. ESPARZA •
RANDY L. HOTH †
LAMBERT J. HASSINGER, JR †
DAVID M. MORAGAS †
A. KATHRYN BREARD †ж ⊕
JACK FAHERTY †
MICHAEL J. NICAUD, JR. †
FRANCIS deBLANC, III †
ANDREA L. ALBERT †
KIMBERLY A. DIAMOND †
RON T. CAPEHART •
JEFFREY P. GREEN †
MATTHEW J. LINDSAY †
BOBBY G. HAWKINS †
ASHLEY A. MANNSCHRECK •
JASON J. MARKEY †
BARRY E. PIKE †
GARRETT P. LABORDE †
DAVID N. LORIA †
ANDREW J. GIBSON †
JENNIFER G. MARTINEZ †
CHERRELL R. SIMMS †
WILLIAM J. FERRY †∘ ж
MEGAN A. WHITLOCK •
ANDREW A. WOOD ∘
JENNIFER L. SIMMONS †
KELLY C. HARTMANN •

ONE SHELL SQUARE
701 POYDRAS STREET
40ᵀᴴ FLOOR
NEW ORLEANS, LOUISIANA 70139

TELEPHONE (504) 525-6802
TELECOPY (504) 525-2456

www.gjtbs.com

1301 MCKINNEY STREET, SUITE 1400
HOUSTON, TEXAS 77010
TELEPHONE (713) 599-0700
TELECOPY (713) 599-0777

118 EAST GARDEN STREET
PENSACOLA, FLORIDA 32502
TELEPHONE (850) 436-7000
TELECOPY (850) 436-7099

4021 AMBASSADOR CAFFERY PARKWAY
BUILDING A SUITE 175
LAFAYETTE, LOUISIANA 70503
TELEPHONE (337) 735-1760
TELECOPY (337) 993 0933

#3 SANCTUARY BOULEVARD
THIRD FLOOR
MANDEVILLE, LOUISIANA 70471
TELEPHONE (985) 674-6680
TELECOPY (985) 674-6681

7730 CARONDELET AVENUE, SUITE 110
ST. LOUIS, MISSOURI 63105
TELEPHONE (314) 725-0525
TELECOPY (314) 725-7150

1213 31ST AVENUE
GULFPORT, MISSISSIPPI 39501
TELEPHONE (228) 214-4250
TELECOPY (228) 214 9650

*Please Respond To The New Orleans Office*

• ADMITTED IN TEXAS
† ADMITTED IN LOUISIANA
∴ ADMITTED IN FLORIDA
▲ ADMITTED IN WASHINGTON D.C
∘ ADMITTED IN MISSISSIPPI
■ ADMITTED IN ALABAMA
⊕ ADMITTED IN MASSACHUSETTS
⊙ ADMITTED IN PUERTO RICO
‡ ADMITTED IN CALIFORNIA
∀ ADMITTED IN WEST VIRGINIA
⊕ ADMITTED IN CONNECTICUT
∿ ADMITTED IN MISSOURI
ж ADMITTED IN ILLINOIS

May 22, 2007

## VIA CERTIFIED MAIL AND FACSIMILE

Mr. Charles Zammitt
Contracting Officer
Department of the Army
New Orleans District Corps of Engineers
P.O. Box 60267
New Orleans, Louisiana 70160-0267

RE:   C. R. Pittman Construction Co., Inc. v. The United States of America
      U.S. District Court, Eastern District of Louisiana
      Civil Action No.: 07-2771-K-2
      Our File No. 2501-016

Dear Mr. Zammitt:

C.R. Pittman Construction Co., Inc. ("CRPCCI") has filed the referenced suit against the Corps regarding the Cousins Contract and the Dwyer Contract, appealing both the April 6, 2007, final decision that CRPCCI was indebted to the United States of America, through the U.S. Army Corps of Engineers, under Contract Number DACW29-00-C-0093, in the amount of $1,940,218.62 and the April 6, 2007, final decision that CRPCCI was indebted to the United

EXHIBIT

"C"

GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
A PROFESSIONAL LAW CORPORATION

Mr. Charles Zammitt
May 22, 2007
Page 2

States of America, through the U.S. Army Corps of Engineers, under Contract Number
DACW29-02-C-0062, in the amount of $399,890.91.

In appealing the two final decisions of April 6, 2007, CRPCCI is specifically seeking a
declaratory judgment that:

1. The Corps breached both the Dwyer Contract and the Cousins Contract;
2. The Corps is responsible for the damaged equipment;
3. CRPCCI is not responsible for the damaged equipment;
4. The Corps is liable to CRPCCI by the terms of the contract for the loss of and/or
   damage to the equipment; and
5. CRPCCI is entitled to an equitable adjustment of the contract time and contract
   price with regard to both the Dwyer Contract and the Cousins Contract.

In addition, CRPCCI is also seeking:

1. Damages arising out of the breach by the Corps of both the Dwyer Contract and the
   Cousins Contract;
2. Damages and Set-Off, Recoupment, and/or Compensation pursuant to La. C.C. Art.
   1893 arising out of the negligence of the Corps;
3. Damages for equitable adjustment in the contract time and contract price of each
   contract; and
4. Reasonable attorney's fees, expenses and court costs related to this action.

CRPCCI asks that the Corps reconsider the decisions it has made in light of the claims set
forth in the referenced Complaint and in the interest of completing the projects. CRPCCI also
requests a meeting with you and your counsel to discuss possible resolution of this matter.
CRPCCI believes that resolution of these disputes is possible so as to avoid protracted litigation
and delay to the projects.

## REQUEST FOR DEFERMENT OF COLLECTION

Pursuant to 48 C.F.R. 32.613(a)(2007), CRPCCI formally requests a deferment
agreement to defer collection of both the April 6, 2007, final decision that CRPCCI was indebted
to the United States of America, through the U.S. Army Corps of Engineers, under Contract
Number DACW29-00-C-0093, in the amount of $1,940,218.62 and the April 6, 2007, final
decision that CRPCCI was indebted to the United States of America, through the U.S. Army
Corps of Engineers, under Contract Number DACW29-02-C-0062, in the amount of
$399,890.91.

Pursuant to 48 C.F.R. 32.613(e)(2007), CRPCCI's request for deferment is appropriate so
as to avoid an extreme financial hardship on it as a small business concern. In addition, pursuant

GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
A PROFESSIONAL LAW CORPORATION

Mr. Charles Zammitt
May 22, 2007
Page 3

to 48 C.F.R. 32.613(d), the request for deferment is advisable based upon the strength of its claims and to avoid possible over collection. The loss and undue hardship on CRPCCI outweighs the need for the Corps to obtain security for the potential loss as set forth in 48 C.F.R. 32.613(e)(2007).

As required by 48 C.F.R 32.613(l)(2007), CRPCCI is prepared to present such security as necessary in the amount of the claims. Please advise of whether a bond or other collateral is acceptable to the Corps, and what other terms of deferment are desired by the Corps.

We await your response.

Cordially,

Gerald A. Melchiode
William J. Perry

GAM/WJP/jjm

# GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
### A PROFESSIONAL LAW CORPORATION

JOHN E. GALLOWAY †◦
J. MICHAEL JOHNSON (1946-2001)
JAMES M. TOMPKINS †▵◦
TIMOTHY F. BURR †◦
THOMAS J. SMITH †◦
LARRY G. CANADA †∗▸
RICHARD G. DUPLANTIER, JR. †
J. MICHAEL GRIMLEY, JR. ◦†
MARK R. PHARR, III ∗†
JASON P. WAGUESPACK †
GERALD A. MELCHIODE †
W. DAVID JESTER ▵✦
KEVIN A. MARKS †
KEVIN L. COLE †∗
LES PICKETT ◦
RICHARD E. KING †◦∗
NATASHA Z. WILSON ∗
MARY LOU SUMMERVILLE ▵
DORIS T. BOBADILLA †※
JESSICA R. JONES ∗
TIMOTHY W. HASSINGER †
STEPHEN J. MOORE †◦▾
KIMBERLY G. ANDERSON †
L. SCOTT TRAWEEX ▵✦
JAMES A. PRATHER †
PHILLIP S. HOWELL ▵
LYNNE JUREK SHANNON †

------------

CLARE VETTERS COUGILL ∗
MARGARET A. KRASICKI ◦
BRUCE A. BANNON †
JULIE E. VAICIUS †
MICHAEL D. LONEGRASS †
TERESA LEYVA MARTIN †
FREDERICK W. SWAIM III †
PETER A. BOURGEOIS †
CYNTHIA J. THOMAS †▵◦
JULIE D. ROBLES † (1959-2005)
JASON F. GILES †
TIFFANY A. MANN †
FRANX A. ROMEU, JR. †‡∗
JESSIE S. HAYNES †
JAMES T. BAILEY ∗
WESLEY PITTS †

ONE SHELL SQUARE
701 POYDRAS STREET
40TH FLOOR
NEW ORLEANS, LOUISIANA 70139

TELEPHONE (504) 525-6802
TELECOPY (504) 525-2456

www.gjtbs.com

1301 MCKINNEY STREET, SUITE 1400
HOUSTON, TEXAS 77010
TELEPHONE (713) 599-0700
TELECOPY (713) 599-0777

4021 AMBASSADOR CAFFERY PARKWAY
BUILDING A SUITE 175
LAFAYETTE, LOUISIANA 70503
TELEPHONE (337) 735-1760
TELECOPY (337) 993 0933

7730 CARONDELET AVENUE, SUITE 110
ST. LOUIS, MISSOURI 63105
TELEPHONE (314) 725-0525
TELECOPY (314) 725-7150

118 EAST GARDEN STREET
PENSACOLA, FLORIDA 32502
TELEPHONE (850) 436-7000
TELECOPY (850) 436-7099

#3 SANCTUARY BOULEVARD
THIRD FLOOR
MANDEVILLE, LOUISIANA 70471
TELEPHONE (985) 674-6680
TELECOPY (985) 674-6681

1213 31ST AVENUE
GULFPORT, MISSISSIPPI 39501
TELEPHONE (228) 214-4250
TELECOPY (228) 214 9650

RYAN M. BOURGEOIS †
KURTIS J. KEEFER ▵▾
THOMAS L. ROBINSON †
GORDON V. GREIG †
RYAN PEDRAZA ▵
JACOB C. ESPARZA ∗
RANDY L. HOTH †
LAMBERT J. HASSINGER, JR †
DAVID M. MORAGAS †
A. KATHRYN BREARD ††∗✦
JACK FAHERTY †
MICHAEL J. NICAUD, JR. †
FRANCIS deBLANC, III †
ANDREA L. ALBERT †
KIMBERLY A. DIAMOND †
RON T. CAPEHART ∗
JEFFREY P. GREEN †
MATTHEW J. LINDSAY †
BOBBY G. HAWKINS †
ASHLEY A. MANNSCHRECK ∗
JASON J. MARKEY †
BARRY E. PIKE †
GARRETT P. LABORDE †
DAVID N. LORIA †
ANDREW J. GIBSON †
JENNIFER S. MARTINEZ †
CHERRELL R. SIMMS †
WILLIAM J. PERRY †※※
MEGAN A. WHITLOCK ∗
ANDREW A. WOOD ▵
JENNIFER L. SIMMONS †
KELLY C. HARTMANN †

∗ ADMITTED IN TEXAS
† ADMITTED IN LOUISIANA
▵ ADMITTED IF FLORIDA
▴ ADMITTED IN WASHINGTON D.C
• ADMITTED IN MISSISSIPPI
✦ ADMITTED IN ALABAMA
◦ ADMITTED IN MASSACHUSETTS
◎ ADMITTED IN PUERTO RICO
‡ ADMITTED IN CALIFORNIA
▾ ADMITTED IN WEST VIRGINIA
✦ ADMITTED IN CONNECTICUT
✶ ADMITTED IN MISSOURI
※ ADMITTED IN ILLINOIS

*Please Respond To The New Orleans Office*

May 31, 2007

## VIA U.S. MAIL AND FACSIMILE

Mr. Charles Zammitt
Contracting Officer
Department of the Army
New Orleans District Corps of Engineers
P.O. Box 60267
New Orleans, Louisiana 70160-0267

RE:   C. R. Pittman Construction Co., Inc. v. The United States of America
      U.S. District Court, Eastern District of Louisiana
      Civil Action No.: 07-2771-K-2
      Our File No. 2501-016

Dear Mr. Zammitt:

C.R. Pittman Construction Co., Inc. ("CRPCCI") requests a meeting with you and your counsel to discuss possible resolution of this matter.  CRPCCI believes that resolution of these disputes is possible so as to avoid protracted litigation, the potential for an adverse ruling against the Corps that could create bad precedent for it, and delay to the projects.

EXHIBIT
"D"

GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
A PROFESSIONAL LAW CORPORATION

Mr. Charles Zammitt
May 31, 2007
Page 2


CRPCCI still awaits a response to the formal request for a deferment agreement to defer collection of both the April 6, 2007 final decision that CRPCCI was indebted to the United States of America, through the U.S. Army Corps of Engineers, under Contract Number DACW29-00-C-0093, in the amount of $1,940,218.62 and the April 6, 2007 final decision that CRPCCI was indebted to the United States of America, through the U.S. Army Corps of Engineers, under Contract Number DACW29-02-C-0062, in the amount of $399,890.91. In connection with these requests, CRPCCI already has in place sufficient surety bond to comply with 48 C.F.R 32.613(l)(2007).

Finally, in our recent conversation, you indicated that we could continue to deal with you directly on the deferment issue as a "contract" issue, but that the U.S. Attorney would be handling the lawsuit issue. As we see both issues intertwined, we request a meeting with both you and the U.S. Attorney to discuss this matter.

We await your response.

Cordially,

Gerald A. Melchiode
William J. Perry

GAM/WJP/jjm

cc:   James B. Letten, U.S. Attorney

| PERFORMANCE BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) September 20, 2000 | FORM APPROVED OMB NO. 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

**PRINCIPAL (Legal name and business address)**

C. R. Pittman Construction Co., Inc.
3021 Franklin Avenue
New Orleans, LA  70122

**TYPE OF ORGANIZATION ("X" one)**

[ ] INDIVIDUAL     [ ] PARTNERSHIP

[ ] JOINT VENTURE  [X] CORPORATION

**STATE OF INCORPORATION**

Louisiana

**SURETY (IES) (Name(s) and business address(es))**

Travelers Casualty and Surety Company of America
Home Office: One Tower Square, 3PB, Hartford, CT 06183
Field Office: 3900 N. Causeway Blvd., Metairie, LA 70002

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 13 | 617 | 730 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 20 Sep 00 | DACW29-00-C-0093 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The principal has entered into the contract identified above.

**THEREFORE:**

The above obligation is void if the Principal —

(a) (1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

**WITNESS:**

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

### PRINCIPAL

| | 1. (Seal) | 2. (Seal) | 3. (Seal) | |
|---|---|---|---|---|
| SIGNATURE(S) | | | | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Charles R. Pittman, President | 2. | 3. | |

### INDIVIDUAL SURETY(IES)

| | 1. (Seal) | 2. (Seal) |
|---|---|---|
| SIGNATURE(S) | | |
| NAME(S) (Typed) | 1. | 2. |

### CORPORATE SURETY(IES)

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| SURETY A | Travelers Casualty and Surety Company of America -One Tower Square, Hartford 06183 | | CT | 50,973,000.00 | Corporate Seal |
| | SIGNATURE(S) | 1. Lisa Umbach | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Lisa Umbach, Attorney-in-Fact | 2. | | |

**EXHIBIT "E"**

SN 7540-01-152-8060
Previous edition not usable

EXPIRATION DATE: 09-30-95

25-107

STANDARD FORM 25   (REV. 1-90)
Prescribed by GSA - FAR (48 CFR) 53.228(b)

CORPORATE SURETY(IES) (Continued)

| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate |
|---|---|---|---|---|---|
| SURETY A | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | Seal |
| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate |
| SURETY B | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | Seal |
| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate |
| SURETY C | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | Seal |
| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate |
| SURETY D | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | Seal |
| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate |
| SURETY E | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | Seal |
| | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate |
| SURETY F | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | Seal |

| BOND PREMIUM ▶ | RATE PER THOUSAND $ See Below | TOTAL $ 95,473.00 |
|---|---|---|

First $2,500,000 = $8.65/M; Next $2,500,000 = $7.10/M; Next $2,500,000 = $6.90/M; Next $6,117,730 = $6.35/M

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of the approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)"

on the face of the form insert only the letter identification of the sureties.

(b).- Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25 (REV. 1-90) BACK

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY
Hartford, Connecticut 06183-9062
TRAVELERS CASUALTY AND SURETY COMPANY OF ILLINOIS
Naperville, Illinois 60563-8458

## POWER OF ATTORNEY AND CERTIFICATE OF AUTHORITY OF ATTORNEY(S)-IN-FACT

**KNOW ALL PERSONS BY THESE PRESENTS, THAT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY** and **FARMINGTON CASUALTY COMPANY,** corporations duly organized under the laws of the State of Connecticut, and having their principal offices in the City of Hartford, County of Hartford, State of Connecticut, and **TRAVELERS CASUALTY AND SURETY COMPANY OF ILLINOIS,** a corporation duly organized under the laws of the State of Illinois, and having its principal office in the City of Naperville, County of DuPage, State of Illinois, (hereinafter the "**Companies**") hath made, constituted and appointed, and do by these presents make, constitute and appoint: **Christopher H. Noble, Lisa Umbach, Bradley J. Tschirn, Kris M. Marino** or **Madeline Harper**

of **Metairie, LA,** their true and lawful Attorney(s)-in-Fact, with full power and authority hereby conferred to sign, execute and acknowledge, at any place within the United States, or, if the following line be filled in, within the area there designated the following instrument(s):
by his/her sole signature and act, any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking and any and all consents incident thereto

**and to bind the Companies, thereby as fully and to the same extent as if the same were signed by the duly authorized officers of the Companies, and all the acts of said Attorney(s)-in-Fact, pursuant to the authority herein given, are hereby ratified and confirmed.**

This appointment is made under and by authority of the following Standing Resolutions of said Companies, which Resolutions are now in full force and effect:

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her.

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary.

VOTED: That any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary, or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority.

**This Power of Attorney and Certificate of Authority is signed and sealed by facsimile under and by authority of the following Standing Resolution voted by the Boards of Directors of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY, FARMINGTON CASUALTY COMPANY** and **TRAVELERS CASUALTY AND SURETY COMPANY OF ILLINOIS,** which Resolution is now in full force and effect:

VOTED: That the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking to which it is attached.

(8-97)

IN WITNESS WHEREOF, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY, FARMINGTON CASUALTY COMPANY and TRAVELERS CASUALTY AND SURETY COMPANY OF ILLINOIS have caused this instrument to be signed by their **Senior Vice President**, and their corporate seals to be hereto affixed this 9th day of November, 1999.

STATE OF CONNECTICUT

}SS. Hartford

COUNTY OF HARTFORD

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY
TRAVELERS CASUALTY AND SURETY COMPANY OF ILLINOIS



By _____

George W. Thompson
**Senior Vice President**

On this 9th day of November, 1999 before me personally came **GEORGE W. THOMPSON** to me known, who, being by me duly sworn, did depose and say: that he/she is **Senior Vice President** of **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY, FARMINGTON CASUALTY COMPANY** and **TRAVELERS CASUALTY AND SURETY COMPANY OF ILLINOIS**, the corporations described in and which executed the above instrument; that he/she knows the seals of said corporations; that the seals affixed to the said instrument are such corporate seals; and that he/she executed the said instrument on behalf of the corporations by authority of his/her office under the Standing Resolutions thereof.



*Marie C Tetreault*

My commission expires  June 30, 2001  Notary Public
**Marie C. Tetreault**

CERTIFICATE

I, the undersigned, Assistant Secretary of **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY** and **FARMINGTON CASUALTY COMPANY,** stock corporations of the State of Connecticut, and **TRAVELERS CASUALTY AND SURETY COMPANY OF ILLINOIS**, stock corporation of the State of Illinois, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney and Certificate of Authority remains in full force and has not been revoked; and furthermore, that the Standing Resolutions of the Boards of Directors, as set forth in the Certificate of Authority, are now in force.

Signed and Sealed at the Home Office of the Company, in the City of Hartford, State of Connecticut. Dated this    20th    day of September                   ,    2000.



By _____

Kori M. Johanson
**Assistant Secretary, Bond**

| PAYMENT BOND<br>(See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br>September 20, 2000 | FORM APPROVED OMB NO.<br>9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

**PRINCIPAL (Legal name and business address)**

C. R. Pittman Construction Co., Inc.
3021 Franklin Avenue
New Orleans, LA 70122

**TYPE OF ORGANIZATION ("X" one)**

☐ INDIVIDUAL  ☐ PARTNERSHIP
☐ JOINT VENTURE  ☒ CORPORATION

**STATE OF INCORPORATION**
Louisiana

**SURETY (IES) (Name(s) and business address(es))**

Travelers Casualty and Surety Company of America
Home Office: One Tower Square, 3PB, Hartford, CT 06183
Field Office: 3900 N. Causeway Blvd., Metairie, LA 70002

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 2 | 500 | 000 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 20 Sep 00 | DACW29-00-C-0093 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**

| | 1. | 2. | 3. | |
|---|---|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) | (Seal) | Corporate |
| NAME(S) & TITLE(S) (Typed) | 1. Charles R. Pittman, President | 2. | 3. | Seal |

**INDIVIDUAL SURETY(IES)**

| | 1. | 2. | |
|---|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) | |
| NAME(S) (Typed) | 1. | 2. | |

**CORPORATE SURETY(IES)**

| | NAME & ADDRESS | Travelers Casualty and Surety Company of America –One Tower Square, Hartford 06183 | STATE OF INC.<br>CT | LIABILITY LIMIT<br>$ 50,973,000.00 | |
|---|---|---|---|---|---|
| SURETY A | SIGNATURE(S) | 1. *Lisa Umbach* | 2. | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. Lisa Umbach, Attorney-in-Fact | 2. | | Seal |

NSN 7540-01-152-8061
Previous edition not usable

EXPIRATION DATE: 09-30-95

25-205

STANDARD FORM 25-A   (REV. 1-90)
Prescribed by GSA - FAR (48 CFR) 53.228(c)

IN WITNESS WHEREOF, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY, FARMINGTON CASUALTY COMPANY and TRAVELERS CASUALTY AND SURETY COMPANY OF ILLINOIS have caused this instrument to be signed by their Senior Vice President, and their corporate seals to be hereto affixed this 9th day of November, 1999.

STATE OF CONNECTICUT

}SS. Hartford

COUNTY OF HARTFORD

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY
TRAVELERS CASUALTY AND SURETY COMPANY OF ILLINOIS



By _____

George W. Thompson
**Senior Vice President**

On this 9th day of November, 1999 before me personally came **GEORGE W. THOMPSON** to me known, who, being by me duly sworn, did depose and say: that he/she is **Senior Vice President** of **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY, FARMINGTON CASUALTY COMPANY** and **TRAVELERS CASUALTY AND SURETY COMPANY OF ILLINOIS**, the corporations described in and which executed the above instrument; that he/she knows the seals of said corporations; that the seals affixed to the said instrument are such corporate seals; and that he/she executed the said instrument on behalf of the corporations by authority of his/her office under the Standing Resolutions thereof.



My commission expires June 30, 2001  Notary Public
**Marie C. Tetreault**

CERTIFICATE

I, the undersigned, **Assistant Secretary** of **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY**, stock corporations of the State of Connecticut, and **TRAVELERS CASUALTY AND SURETY COMPANY OF ILLINOIS**, stock corporation of the State of Illinois, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney and Certificate of Authority remains in full force and has not been revoked; and furthermore, that the Standing Resolutions of the Boards of Directors, as set forth in the Certificate of Authority, are now in force.

Signed and Sealed at the Home Office of the Company, in the City of Hartford, State of Connecticut. Dated this 20th day of September , 2000 .



By _____

Kori M. Johanson
**Assistant Secretary, Bond**

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY
Hartford, Connecticut 06183-9062

## POWER OF ATTORNEY AND CERTIFICATE OF AUTHORITY OF ATTORNEY(S)-IN-FACT

KNOW ALL PERSONS BY THESE PRESENTS, THAT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, corporations duly organized under the laws of the State of Connecticut, and having their principal offices in the City of Hartford, County of Hartford, State of Connecticut, (hereinafter the "Companies") hath made, constituted and appointed, and do by these presents make, constitute and appoint: Christopher H. Noble, Lisa D. Umbach, Bradley J. Tschirn, Madeline Harper, Tiffany S. Lomax, of Metairie, Louisiana, their true and lawful Attorney(s)-in-Fact, with full power and authority hereby conferred to sign, execute and acknowledge, at any place within the United States, the following instrument(s): by his/her sole signature and act, any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking and any and all consents incident thereto and to bind the Companies, thereby as fully and to the same extent as if the same were signed by the duly authorized officers of the Companies, and all the acts of said Attorney(s)-in-Fact, pursuant to the authority herein given, are hereby ratified and confirmed.

This appointment is made under and by authority of the following Standing Resolutions of said Companies, which Resolutions are now in full force and effect:

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her.

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary.

VOTED: That any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary, or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority.

This Power of Attorney and Certificate of Authority is signed and sealed by facsimile (mechanical or printed) under and by authority of the following Standing Resolution voted by the Boards of Directors of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, which Resolution is now in full force and effect:

VOTED: That the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking to which it is attached.

(11-00 Standard)

IN WITNESS WHEREOF, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELER CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY have caused this instrument to I signed by their Senior Vice President and their corporate seals to be hereto affixed this 2nd day of October 2001.

STATE OF CONNECTICUT

}SS. Hartford

COUNTY OF HARTFORD

  

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY

By _____

George W. Thompson
**Senior Vice President**

On this 2nd day of October, 2001 before me personally came GEORGE W. THOMPSON to me known, who, being by me duly sworn, did depose and say:  that he/she is Senior Vice President of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, the corporations described in and which executed the above instrument; that he/she knows the seals of said corporations; that the seals affixed to the said instrument are such corporate seals; and that he/she executed the said instrument on behalf of the corporations by authority of his/her office under the Standing Resolutions thereof.



My commission expires  June 30, 2006  Notary Public
**Marie C. Tetreault**

CERTIFICATE

I, the undersigned, Assistant Secretary of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, stock corporations of the State of Connecticut, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney and Certificate of Authority remains in full force and has not been revoked; and furthermore, that the Standing Resolutions of the Boards of Directors, as set forth in the Certificate of Authority, are now in force.

Signed and Sealed at the Home Office of the Company, in the City of Hartford, State of Connecticut. Dated this  16th  day of September     , 20  02

  

By _____

Kori M. Johanson
**Assistant Secretary, Bond**

| PERFORMANCE BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) 16 September 2002 | FORM APPROVED OMB NO. 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

**PRINCIPAL (Legal name and business address)**
C. R. Pittman Construction Company, Inc.
3021 Franklin Avenue
New Orleans, LA 70122

**TYPE OF ORGANIZATION ("X" one)**
[ ] INDIVIDUAL    [ ] PARTNERSHIP
[ ] JOINT VENTURE    [X] CORPORATION

**STATE OF INCORPORATION** Louisiana

**SURETY (IES) (Name(s) and business address(es))**
Travelers Casualty and Surety Company of America
Field Office: 3900 N. Causeway Blvd., Metairie, LA 70002
Home Office: One Tower Square, 3PB, Hartford, CT 06183

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 18 | 781 | 000 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 16 Sep 02 | DACW29-02-C-0062 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The principal has entered into the contract identified above.

**THEREFORE:**

The above obligation is void if the Principal —

(a) (1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

**WITNESS:**

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

**PRINCIPAL**

| | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate |
|---|---|---|---|---|
| SIGNATURE(S) | | | | |
| NAME(S) & TITLE(S) (Typed) | 1. Charles R. Pittman, President | 2. | 3. | Seal |

**INDIVIDUAL SURETY(IES)**

| | 1. (Seal) | 2. (Seal) |
|---|---|---|
| SIGNATURE(S) | | |
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| SURETY A | NAME & ADDRESS | Travelers Casualty and Surety Company of America –One Tower Square, Hartford 06183 | STATE OF INC. CT | LIABILITY LIMIT $ 58,568,000.00 | Corporate |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. Lisa D. Umbach | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Lisa D. Umbach, Attorney-in-Fact | 2. | | Seal |

EXHIBIT "F"

NSN 7540-01-152-8060
Previous edition not usable

EXPIRATION DATE: 09-30-95

25-107

STANDARD FORM 25 (REV. 1-90)
Prescribed by GSA - FAR (48 CFR) 53.228(b)

CORPORATE SURETY(IES) (Continued)

| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | | |
|---|---|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | | Seal |
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | | |
| | SIGNATURE(S) | 1. | | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | | Seal |
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | | |
| | SIGNATURE(S) | 1. | | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | | Seal |
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | | |
| | SIGNATURE(S) | | | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | | Seal |
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | | |
| | SIGNATURE(S) | 1. | | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | | Seal |
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | | |
| | SIGNATURE(S) | 1. | | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | | Seal |

| BOND PREMIUM ▶ | RATE PER THOUSAND $8.65/7.10/6.90/6.35 | TOTAL $ 161,607.00 |
|---|---|---|

INSTRUCTIONS

This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

(a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of the approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)"

on the face of the form insert only the letter identification of the sureties.

(b).- Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25 (REV. 1-90) BACK

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
FARMINGTON CASUALTY COMPANY
Hartford, Connecticut 06183-9062

## POWER OF ATTORNEY AND CERTIFICATE OF AUTHORITY OF ATTORNEY(S)-IN-FACT

KNOW ALL PERSONS BY THESE PRESENTS, THAT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, corporations duly organized under the laws of the State of Connecticut, and having their principal offices in the City of Hartford, County of Hartford, State of Connecticut, (hereinafter the "Companies") hath made, constituted and appointed, and do by these presents make, constitute and appoint: **Christopher H. Noble, Lisa D. Umbach, Bradley J. Tschirn, Madeline Harper, Tiffany S. Lomax**, of Metairie, Louisiana, their true and lawful Attorney(s)-in-Fact, with full power and authority hereby conferred to sign, execute and acknowledge, at any place within the United States, the following instrument(s): by his/her sole signature and act, any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking and any and all consents incident thereto and to bind the Companies, thereby as fully and to the same extent as if the same were signed by the duly authorized officers of the Companies, and all the acts of said Attorney(s)-in-Fact, pursuant to the authority herein given, are hereby ratified and confirmed.

This appointment is made under and by authority of the following Standing Resolutions of said Companies, which Resolutions are now in full force and effect:

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her.

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary.

VOTED: That any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary, or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority.

This Power of Attorney and Certificate of Authority is signed and sealed by facsimile (mechanical or printed) under and by authority of the following Standing Resolution voted by the Boards of Directors of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, which Resolution is now in full force and effect:

VOTED: That the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking to which it is attached.

(11-00 Standard)

IN WITNESS WHEREOF, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY have caused this instrument to be signed by their Senior Vice President and their corporate seals to be hereto affixed this 2nd day of October 2001.

STATE OF CONNECTICUT

}SS. Hartford

COUNTY OF HARTFORD

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY



By _____

George W. Thompson
Senior Vice President

On this 2nd day of October, 2001 before me personally came **GEORGE W. THOMPSON** to me known, who, being by me duly sworn, did depose and say: that he/she is **Senior Vice President** of **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY**, the corporations described in and which executed the above instrument; that he/she knows the seals of said corporations; that the seals affixed to the said instrument are such corporate seals; and that he/she executed the said instrument on behalf of the corporations by authority of his/her office under the Standing Resolutions thereof.



My commission expires June 30, 2006  Notary Public
Marie C. Tetreault

CERTIFICATE

I, the undersigned, **Assistant Secretary** of **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY**, stock corporations of the State of Connecticut, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney and Certificate of Authority remains in full force and has not been revoked; and furthermore, that the Standing Resolutions of the Boards of Directors, as set forth in the Certificate of Authority, are now in force.

Signed and Sealed at the Home Office of the Company, in the City of Hartford, State of Connecticut. Dated this   16th   day of September   , 20 02.



By _____

Kori M. Johanson
Assistant Secretary, Bond

| PAYMENT BOND<br>(See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br>16 September 2002 | FORM APPROVED OMB N<br>9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructio searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comme regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secreta (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Pro (9000-0045), Washington, D.C. 20503.

PRINCIPAL (Legal name and business address)
C. R. Pittman Construction Company, Inc.
3021 Franklin Avenue
New Orleans, LA 70122

TYPE OF ORGANIZATION ("X" one)

☐ INDIVIDUAL          ☐ PARTNERSHIP

☐ JOINT VENTURE      ☒ CORPORATION

STATE OF INCORPORATION
Louisiana

SURETY (IES) (Name(s) and business address(es))
Travelers Casualty and Surety Company of America
Field Office: 3900 N. Causeway Blvd., Metairie, LA 70002
Home Office: One Tower Square, 3PB, Hartford, CT 06183

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 18 | 781 | 000 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 16 Sep 02 | DACW29-02-C-0062 |

OBLIGATION:   .

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporatio acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shov opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of t Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of t contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| | PRINCIPAL | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate |
| NAME(S) & TITLE(S) (Typed) | 1. Charles R. Pittman, President | 2. | 3. | Seal |

| | INDIVIDUAL SURETY(IES) | | |
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. | (Sea |
| NAME(S) (Typed) | 1. | 2. | |

| | | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | Travelers Casualty and Surety Company of America -One Tower Square, Hartford 06183 | STATE OF INC. CT | LIABILITY LIMIT $58,568,000.00 | |
| | SIGNATURE(S) | 1. Lisa D. Umbach | 2. | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. Lisa D. Umbach, Attorney-in-Fact | 2. | | Seal |

NSN 7540-01-152-8061
Previous edition not usable

EXPIRATION DATE: 09-30-95

25-205

STANDARD FORM 25-A   (REV 1-90

**CORPORATE SURETY(IES) (Continued)**

| | | | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | | | $ | |
| | SIGNATURE(S) | 1. | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | Seal |
| SURETY C | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | Seal |
| SURETY D | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | Seal |
| SURETY E | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | Seal |
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | Seal |
| | NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | | Corporate |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | Seal |

## INSTRUCTIONS

This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

(a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of the approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)."

on the face of the form, insert only the letter identification of the sureties.

(b). Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25-A (REV. 1-90) BACK

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY
Hartford, Connecticut 06183-9062

## POWER OF ATTORNEY AND CERTIFICATE OF AUTHORITY OF ATTORNEY(S)-IN-FACT

**KNOW ALL PERSONS BY THESE PRESENTS, THAT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY** and **FARMINGTON CASUALTY COMPANY,** corporations duly organized under the laws of the State of Connecticut, and having their principal offices in the City of Hartford, County of Hartford, State of Connecticut, (hereinafter the "Companies") hath made, constituted and appointed, and do by these presents make, constitute and appoint: **Christopher H. Noble, Lisa D. Umbach, Bradley J. Tschirn, Madeline Harper, Tiffany S. Lomax, of Metairie, Louisiana,** their true and lawful Attorney(s)-in-Fact, with full power and authority hereby conferred to sign, execute and acknowledge, at any place within the United States, the following instrument(s): by his/her sole signature and act, any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking and any and all consents incident thereto and to bind the Companies, thereby as fully and to the same extent as if the same were signed by the duly authorized officers of the Companies, and all the acts of said Attorney(s)-in-Fact, pursuant to the authority herein given, are hereby ratified and confirmed.

This appointment is made under and by authority of the following Standing Resolutions of said Companies, which Resolutions are now in full force and effect:

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her.

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary.

VOTED: That any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary, or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority.

**This Power of Attorney and Certificate of Authority is signed and sealed by facsimile (mechanical or printed) under and by authority of the following Standing Resolution voted by the Boards of Directors of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY** and **FARMINGTON CASUALTY COMPANY, which Resolution is now in full force and effect:**

VOTED: That the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking to which it is attached.

(11-00 Standard)

IN WITNESS WHEREOF, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELER CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY have caused this instrument to b signed by their Senior Vice President and their corporate seals to be hereto affixed this 2nd day of October 2001.

STATE OF CONNECTICUT

)SS. Hartford

COUNTY OF HARTFORD

  

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY

By_____

George W. Thompson
Senior Vice President

On this 2nd day of October, 2001 before me personally came GEORGE W. THOMPSON to me known, who, being by me duly sworn, did depose and say: that he/she is Senior Vice President of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, the corporations described in and which executed the above instrument; that he/she knows the seals of said corporations; that the seals affixed to the said instrument are such corporate seals; and that he/she executed the said instrument on behalf of the corporations by authority of his/her office under the Standing Resolutions thereof.



Marie C Tetreault

My commission expires June 30, 2006  Notary Public
Marie C. Tetreault

CERTIFICATE

I, the undersigned, Assistant Secretary of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, stock corporations of the State of Connecticut, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney and Certificate of Authority remains in full force and has not been revoked; and furthermore, that the Standing Resolutions of the Boards of Directors, as set forth in the Certificate of Authority, are now in force.

Signed and Sealed at the Home Office of the Company, in the City of Hartford, State of Connecticut. Dated this 16th day of September , 20 02

  

By _____

Kori M. Johanson
Assistant Secretary, Bond