UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

PERTAINS TO:
INSURANCE

CIVIL ACTION

NO. 05-4182
SECTION "K"  MAG "2"

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF MOTION FOR
## PARTIAL SUMMARY JUDGMENT REGARDING RETROACTIVITY OF ACT 813

**May it Please the Court:**

The Insurance Plaintiffs' Subgroup Litigation Committee (the "Insurance PSLC"), as the

representative of numerous plaintiffs who have asserted Katrina-related claims against insurance

companies (the "Insurers"), submits the following Memorandum in Support of its Motion for

Partial Summary Judgment Regarding the retroactivity of Act 813.

There are two bases for applying Act 813, which amended Louisiana Revised Statute §

22:658(B)(1), to Plaintiffs' claims against the Insurers.  First, as a matter of law, the Legislature

intended that Act 813 apply retroactively to govern all claims arising out of Hurricanes Katrina

and Rita.  Second, even if this Court concludes that Act 813 applies prospectively only, it still

governs to the extent any Insurer failed to pay what it owed within 30 days of the effective date

of Act 813---August 15, 2006.

## SUMMARY OF ARGUMENT

### I.   Act 813 Applies Retroactively

- Courts must determine whether the legislature intended a given law to apply retroactively or prospectively.[1]

- Louisiana courts rely on legislative history as a source for determining the legislature's intent.[2]

  o   The history of Act 813 indisputably establishes that, in passing the bill, the **legislature intended "to encourage" insurers to settle hurricane claims quickly.** [3]

- Louisiana courts rely on "Historical and Statutory Notes" as a source for determining the legislature's intent.[4]

- The "Historical and Statutory Notes" to Louisiana Revised Statute § 22:658 demonstrate that the legislature was motivated to pass Act 813 because of its belief that the insurance companies' conduct in **"stalling or refusing to pay claims . . . cause[d] delays in the recovery process."**[5]

---

[1]*Genusa v. Dominique*, 1997-0047 (La. App. 1 Cir. 2/20/1998), 708 So. 2d 784, 790.

[2]*See Dombrowski v. Saints*, 2005-0762 (La. App. 1 Cir. 8/2/2006), 943 So. 2d 403, 408; *Industrial Risk Insurers v. New Orleans Public Serv.*, 735 F. Supp. 200, 202 (E.D. La. 1990).

[3]*See* House Committee on Insurance, Minutes of Meeting, 2006 Regular Session, May 31, 2006, p. 2, attached as Exhibit "A."

[4]*See Wilcox v. Gamble Guest Care Corp.,* 40,650 (La. App. 2 Cir. 4/12/2006), 928 So. 2d 695, 698.

[5]*See* Louisiana Revised Statute § 22:658, Historical and Statutory Notes.

2

- Applying Act 813 retroactively will not impermissibly impair contractual obligations or disturb vested rights.  The Louisiana Supreme Court has already held that Katrina-related emergency legislation does not unconstitutionally impair contractual rights.[6]

  o Insurers had no "vested right" in the penalties provisions in the prior version of Louisiana Revised Statute § 22:658 because, in the aftermath of Katrina, those provisions, when compared with the revised version of the statute, **constituted a "future benefit" only**.[7]

## II.   Act 813 Applies Prospectively to Plaintiffs' Claims.

- Louisiana Revised Statute § 22:658 imposes a duty on an insurer to adjust claims fairly and promptly.

  o In Mississippi, Judge Senter has concluded that, under Mississippi law, an "insurer has a continuing duty to act reasonably and in good faith in investigating and paying legitimate claims under its policies."[8]

  o Similarly, in Louisiana, an insurer's duty of good faith and fair dealing continues throughout the litigation.[9].

- The Insurers had a continuing to pay claims following their receipt of a satisfactory proof of loss.  If they failed to pay these claims thirty days of the effective date of Act 813, they are subject to its provisions.

---

[6]*See State v. All Property & Cas. Ins. Carriers Authorized & Licensed to Do Business in the State of Louisiana*, 2006-2030 (La. 8/25/2006), 937 So. 2d 313 (hereinafter, "*All Property & Casualty Carriers*").

[7]*Tenant v. Russell,* 214 La. 1046, 1052, 39 So. 2d 726, 7285 (1949) (emphasis added).

[8]*Broussard v. State Farm Prop. & Cas. Co.,* No. 1:06CV6 (S.D. Miss. Jan. 17, 2007), 2007 WL 113942.

[9]*See Theriot v. Midland Risk Insurance Co.*, 95-227 (La.App. 3 Cir. 11/2/1995), 664 So. 2d 547, 550, *rev'd on other grounds*, 694 So. 2d 184 (La. 1997);  *Harris v. Fontenot*, 606 So. 2d 72, 74 (La.App. 3 Cir. 1992).

**INTRODUCTION**

I.      **FACTUAL BACKGROUND**

Hurricane Katrina, called "The Storm that Changed America" by Time Magazine, made landfall in south Louisiana on August 29, 2005.   Wind, wind-driven rain, and water that gushed through a defective levee system damaged Plaintiffs' property.  In this matter, Plaintiffs alleged that they provided satisfactory proofs of loss to the Insurers and that, despite receiving this proof, the Insurers failed to pay what they owed under their policies.

II.     **THE LOUISIANA LEGISLATURE RESPONDS TO THE CONDUCT OF INSURANCE COMPANIES.**

As this Court is all too aware, thousands of Louisiana residents were dissatisfied with the conduct of the Insurers.  In a resolution passed by the Louisiana Legislature in 2005, the House of Representatives declared that displaced residents "can not begin to return home to rebuild their destroyed businesses and homes because **insurance companies are contesting the validity of homeowners' insurance policies and stalling or refusing to pay claims.**"[10]      The Legislature further found that "**this delay and refusal to pay is detrimental to the citizens of Louisiana and is causing delays in the recovery process.**"[11] This resolution was designated as part of the "Historical and Statutory Notes" for Louisiana Revised Statute § 22:658.

---

[10]*See* Louisiana Revised Statute § 22:658, Historical and Statutory Notes, House Concurrent Resolution No. 58 of the 2005 First Extraordinary Session (emphasis added).

4

In 2006, the Legislature formally amended Louisiana Revised Statute § 22:658.   As proposed in Act 813, the amended version of the statute increased penalties for insurers who fail to pay claims timely.[12]

The legislative history conclusively demonstrates that the legislature intended Act 813 to apply retroactively.   Senator Edwin Murray, who sponsored the bill, stated that he "had several constituents complain about their insurance companies."[13]   Senator Murray declared that the "penalties were not enough to encourage these insurers to be more timely in getting adjusters to these people's homes **so that these claims can be settled**."[14]   In arguing in support of an attorneys' fees provision, Senator Murray stated that it would be wrong to force insureds who have "to deal with costs associated with a disaster" to "pay for an attorney in order to get their claims settled."[15]

The legislature's response to insurance companies' handling of Katrina claims was, in short, twofold—first, the legislature resolved that the dilatory conduct of insurers "caus[ed] delays" in the recovery process; then, the legislature formally revised the law "to encourage"

---

[11]*See id.* (emphasis added).

[12]*See* Act No. 813 (enrolled), attached as Exhibit "B."  As stated above, the revised version of Act 813 increased the penalty for insurers who arbitrarily and capriciously fail to pay claims.  The increased penalty is 50 percent (up from 25 percent), plus reasonable attorneys' fees and costs.

[13]*See* Exhibit "A," p. 2.

[14]*See id.*

[15]*See id.* at 3.

insurers to settle the claims of insureds who were already "deal[ing] with the costs associated with a disaster." Plainly, the legislature enacted Act 813 to pressure insurance companies to settle claims related to Hurricane Katrina (and Rita), regardless of when these claims were filed. Accordingly, the Insurance PSLC submits that the Louisiana Legislature intended for Act 813 to apply retroactively.

## ARGUMENT

### I.    ACT 813 APPLIES RETROACTIVELY

#### A.    Assessing the Temporal Effect of Laws

Generally, laws cannot apply retroactively. As stated by the Louisiana Supreme Court, though, "civilian theory . . . admits three exceptions" to this general rule: laws that lessen penalties, laws that are merely interpretive of existing legislation, and **those that the legislature has expressly or impliedly declared to be retroactive**.[16]

In addition to  civilian theory, there are two statutes that set forth rules for deciding whether a law may be applied retroactively—Louisiana Civil Code article 6 and Louisiana Revised Statute § 1:2. Louisiana courts construe the two statutes as "co-extensive."[17] Reading these statutes "together to determine whether a legislative enactment is to be applied retroactively or prospectively, the courts must ascertain whether in the enactment the legislature

---

[16]*Ardoin v. Hartford Accident & Indem. Co.,* 360 So. 2d 1331, 1338 (La. 1978).

[17]*Genusa v. Dominique*, 1997-0047 (La. App. 1 Cir. 2/20/98), 708 So. 2d 784, 790.

expressed its intent regarding retroactive or prospective application."[18]   Accordingly, if a court

decides that the "legislature expressed its intent regarding retrospective or prospective

application . . . [its] inquiry is at an end."[19]

**B.     Legislative History and Historical Notes Establish Legislature's Intent to
        Apply Act 813 Retroactively.**

In his treatise of Legislative Law and Procedure, Professor Raymond Lamonica observed

that, where appropriate, courts may "consider . . . legislative history" when interpreting a

statute.[20]   Legislative history that directly relates to statutory construction typically "refers to

utterances (and some events) that engage the attention of the legislature during the process, from

conception to birth, of enacting the statute being interpreted."[21]

Courts consider legislative history when determining whether legislation applies

retroactively. *Dombrowski v. New Orleans Saints*, for example, centered on a dispute over the

applicability of a workers' compensation provision related to offsets.[22]   This provision, Louisiana

Revised Statute § 23:1225, was in effect at the time plaintiff signed his employment contract (in

1996), but had been legislatively repealed in 2004.   Plaintiff argued that the repeal should be

applied retroactively, which would mean that Section 23:1225 would be treated as if it never

---

[18]*Id.*

[19]*All Property & Casualty Carriers*, 937 So. 2d at 321.

[20]20 La. Civ. L. Treatise, Legis. Law & Proc. § 7.10.

[21]*See id.*

[22]2005-0762 (La. App. 1 Cir. 8/02/2006), 943 So. 2d 403.

existed.[23]   The Louisiana First Circuit Court of Appeal reasoned, however, that the **"legislative history indicates the contrary**, in that it reflects that the legislature considered and expressly rejected the thought of making the repeal of Section 1225(D) retroactive."[24]

*Industrial Risk Insurers v. New Orleans Public Service, Inc.* arose out of a 1980 fire.[25] Plaintiff sued several entities, including the New Orleans Fire Department.  The fire department ultimately moved to dismiss the claims, arguing that it was immune from suit under Louisiana Revised Statute § 9:2798.1, the 1985 statute that immunized government employees from their discretionary or policy-making acts.[26]   Judge Mentz agreed with state court rulings that "the legislature intended that [Section 9:2798.1] be applied retroactively."[27]   As support for this statement, **Judge Mentz cited the Minutes of Meetings in both the Louisiana House of Representatives and the Louisiana Senate**.[28]   It is therefore appropriate for this Court to consider the Minutes of Meetings connected with the enactment of Act 813 when considering whether the legislature intended for this Act to apply retroactively.[29]

---

[23]*See id.* at 408.

[24]*Id.* (emphasis added).

[25]735 F. Supp. 200 (1990).

[26]*See id.* at 201.

[27]*Id.* at 202.

[28]*See id.*

[29]*See also Abate v. Healthcare Int'l, Inc.,* 560 So. 2d 812, 814 (La. 1990) (referring to legislative history to determine if legislative history evinced intent to overrule jurisprudence);

Furthermore, as discussed, the "Historical and Statutory Notes" to Louisiana Revised Statute § 22:658 include House Concurrent Resolution No. 58, which blames insurance companies' dilatory conduct for "delays in the recovery process." Along with legislative history, Louisiana courts examine "Historical and Statutory Notes" to determine legislative intent.[30]   In *Beutler England Chiropractic Clinic v. Mermentau Rice, Inc.,* for example, the court reviewed the "Historical and Statutory Notes" to determine whether, for retroactivity purposes, a statute could be considered procedural or interpretive.[31]

Here, the "Historical and Statutory Notes" to Louisiana Revised Statute § 22:658 establish the legislature's concern that the failure of insurance companies to adjust claims timely stalled the recovery process.  Senator Murray confirmed this belief when he noted, in support of his bill, that increasing the penalties available under Section 22:658 would **"encourage" insurers to timely resolve the claims of insureds who were already "deal[ing] with the costs associated with a disaster**.**"**[32]   The statements of Senator Murray, the bill's sponsor, have no meaning unless the Act is applied retroactively to insurers who arbitrarily and capriciously failed to pay claims timely in the aftermath of Hurricanes Katrina and Rita.

---

*Wooley v. State Farm Fire & Cas. Ins. Co.*, 2005-1490 (La. App. 1 Cir. 2/10/2006), 928 So. 2d 618, 622 (reviewing legislative history to decide if statute "should be given retroactive effect").

[30]*See Wilcox v. Gamble Guest Care Corp.,* 40,650 (La. App. 2 Cir. 4/12/2006), 928 So. 2d 695, 698.

[31]2005-942 (La. App. 3 Cir. 5/31/2006), 931 So. 2d 553, 561 (Peters, J., concurring).

[32]*See* Exhibit "A," pp. 2-3 (emphasis added).

9

Plaintiffs expect the Insurers to cite rulings from other courts that hold that Act 813 does not apply to claims asserted before its enactment. In *Tomlinson v. Allstate Indemnity Co.*, No. 06-617 (E.D. La. Feb. 12, 2007), Judge Feldman stated that the 2003 version of Section 22:658 applied to claims asserted before the passage of Act 813. It is unclear, however, whether the plaintiff in *Tomlinson* presented the Act's legislative history, which unmistakably evidences the legislature's intent that it apply retroactively. Further, in a case pending in Orleans Parish, *Sher v. Lafayette Insurance Co.*, No. 06-9276, Judge Robin Giarusso agreed with the insured's argument that Act 813 applies retroactively.[33] Plaintiffs submit that, in light of the legislative history and "Historical and Statutory Notes," which establish the legislature's disgust over the dilatory conduct of insurance companies, the intent of the Louisiana Legislature is clear: Act 813 applies retroactively.

C.   **Applying Act 813 Retroactively Will Not Impermissibly Impair Contractual Obligations or Disturb Vested Rights.**

Once a court finds that the legislature intended a law to apply retroactively, it must decide whether such an application unconstitutionally "impair[s] contractual obligations or disturb[s] vested rights."[34] To the extent the Insurers argue that the retroactive application of Act 813 impairs contractual obligations,[35] the Louisiana Supreme Court has already determined that

---

[33]Judge Giarusso has not, as of this date, signed the Judgment that formalized her ruling. Once the Judgment is signed, the Insurance PSLC will supplement the record accordingly.

[34]*All Property & Casualty Carriers*, 937 So. 2d at 313.

[35]In *Nettleton v. Audubon Ins. Co.*, 93-1576 (La. App. 1 Cir. 5/20/1994), 637 So. 2d 792, 795, the court noted that the penalties set forth in Section 22:658 "are predicated upon the

legislation enacted to combat the unique problems caused by Katrina is constitutional.

In *All Property & Casualty Carriers*, the Court reviewed Louisiana Revised Statute § 22:658.3, which extended the prescriptive period to file certain claims arising out of Hurricanes Katrina and Rita.[36]   After concluding that the legislature intended the statute to apply retroactively, the Court addressed whether the legislative extension of the one-year prescriptive period set forth in the policies unconstitutionally impaired contractual rights and obligations.

The Court observed that Louisiana Revised Statute § 22:658 did, in fact, impair contractual obligations and that the impairment "could be said to be substantial."[37]   Nevertheless, the Court upheld the constitutionality of the statute, finding a significant and legitimate public purpose behind its enactment.   Specifically, the Court found that the "unimaginable hardship" inflicted on Louisiana citizens, including forced evacuation and multiple relocations, justified the extension of the prescriptive period.[38]

The Court also reasoned that, in the heavily-regulated insurance industry, a legislative-mandated change in the rights and obligations of an insurer and insured "may be anticipated."[39] Because there was "considerably less than the total destruction of the insurers' contractual expectations," the Court held that the retroactive application of Louisiana Revised Statute §

---

contractual relationship between the insurer and his insured and the obligations which flow therefrom."

[36]2006-2030 (La. 8/25/2006), 937 So. 2d 313.

[37]*Id.* at 325.

[38]*See id.*

22:658 was constitutional.[40]   The Louisiana Supreme Court's reasoning applies with equal force to the revised version of Louisiana Revised Statute § 22:658.  The statute does not, therefore, unconstitutionally impair contractual obligations.

Just as there is no unconstitutional impairment of contractual obligations, there is no unconstitutional disturbance of vested rights in the retroactive application of Act 813.   The Louisiana Supreme Court described vested rights as "absolute, complete, and unconditional, independent of any contingency . . . . **a mere expectancy of future benefit, or a contingent interest in property does not constitute a vested right**."[41]  The pre-Act 813 version of Section 22:658.2 provided, at most, the "expectancy of a future benefit" with respect to the penalty provisions.

In *Alleman v. Ke-Co, Inc.*, an injured employee entered into a stipulated judgment that enabled his employer's insurer to offset amounts owed to him with social security disability payments received by the employee.[42]   Fifteen days after the judgment was rendered, the Louisiana Supreme Court issued a decision (*Al Johnson Construction Co. v. Pitre*) that prohibited employers (or their insurers) from using social security payments to offset amounts

---

[39]*Id.* at 327.

[40]*Id.* at 325.

[41]*Tennant*, 39 So. 2d at 728 (emphasis added).

[42]2000-1138 (La. App. 3 Cir. 1/31/2001), 783 So. 2d 409.

owed for workers' compensation.[43]   The insurer argued that *Al Johnson* could not apply retroactively because it had a vested right to the offset set forth in the stipulated judgment.   The court disagreed, holding that the right to offset "was conditioned on [the employee] receiving Social Security Disability benefits."[44]   Because the employee had not received the social security benefits at the time of the judgment, *Al Johnson* applied to the employee's claims.

In this matter, the applicability of Louisiana Revised Statute § 22:658 is conditioned upon a finding that an insurer arbitrarily and capriciously adjusted an insured's claims.   Until such a finding is rendered, the insurer's "right" to pay 25 percent (as opposed to 50 percent) of the difference of the amount tendered and the amount due, is simply a "future benefit."   Similarly, in *Henderson v. Pacific Marine Ins. Co.,* a workers' compensation insurer argued that, after paying benefits to an injured employee, it had a vested right to pursue a subrogation claim against the third-party tortfeasor, which trumped a recently-enacted statute that prohibited subrogation claims against an insured (*i.e.,* the third-party tortfeasor) whose insurer, as in *Henderson*, was insolvent.[45]   The court dismissed the subrogation claims of the insurer and concluded that insurer's right to subrogation was "merely a hypothetical expectancy."[46]   Just like the alleged "right" of subrogation in *Henderson*, Allstate's alleged "right" to a 25 percent penalty for arbitrary and capricious adjusting is merely a "hypothetical" expectancy that is subject to change

---

[43]*See id.* at 411.

[44]*Id.* at 412.

[45]611 So. 2d 822 (La. App. 3 Cir. 1992).

in a heavily-regulated insurance industry.   The retroactive application of Act 813 does not disturb any vested rights.

**II.     EVEN IF ACT 813 APPLIES PROSPECTIVELY ONLY, IT STILL GOVERNS PLAINTIFFS' CLAIMS DUE TO THE INSURERS' CONTINUING DUTY TO ADJUST CLAIMS FAIRLY AND PROMPTLY**

Plaintiffs submit that Act 813 should be applied retroactively.   But even assuming for the sake of argument that Act 813 applies only prospectively, it still governs Plaintiffs' claims against the Insurers because the Insurers' duty to pay what they owed under the policies **continued past the effective date of Act 813**, August 15, 2006.[47]

Louisiana Revised Statute § 22:658 imposes a duty on insurers to "adjust claims fairly and promptly and to take reasonable steps to settle valid claims."[48]   In one of the Mississippi Katrina cases, *Broussard v. State Farm Fire and Casualty Co.,* Judge Senter ruled that insurers had a "**continuing duty** to act reasonably and in good faith in investigating and paying legitimate claims under its polices."[49]   Although Judge Senter rendered his decision under Mississippi law, Louisiana law is no different.

---

[46]*Id.* at 824.

[47]Governor Blanco signed Act 813 into law on June 30, 2005.  The Bill History lists the effective date of Act 813 as August 15, 2006.

[48]*Chargois v. Guillory*, 97-439 (La. App. 3 Cir. 10/29/1997), 702 So. 2d 1068, 1069.

[49]*Broussard*, 2007 WL 1213942 at * 3 (emphasis added).

For example, in *Harris v. Fontenot*, the court observed that there is nothing in Louisiana Revised Statute 22:658 (or Section 22:1220) limiting its application to "pre-litigation conduct."[50] In *Theriot v. Midland Risk Ins. Co.*, moreover, the court held that the duties of good faith and fair dealing imposed on insurers by Section 22:658 "continue[] throughout the litigation."[51]

The Insurers' duty to adjust claims fairly and promptly extended beyond August 15, 2006, and continues to this day, thus subjecting them to the increased penalties provisions set forth in Act 813. In effect, then, the Insurers had a "safe harbor" of 30 days following August 15, 2006, to pay claims pursuant to any satisfactory proof of loss received by them. Any failure to make payments within this "safe harbor" period will be governed by the current version of Louisiana Revised Statute § 22:658.[52]

## CONCLUSION

Following Katrina, the Louisiana Legislature concluded that the dilatory practices of insurance companies were stalling the region's recovery. To "encourage" insurers to act quicker to resolve claims, the legislature amended Louisiana Revised Statute § 22:658 to increase the penalties for arbitrary and capricious claims handling. As expressed in the legislative history and the "Historical and Statutory Notes," the legislature intended that this amendment apply

---

[50]606 So. 2d at 74.

[51]664 So. 2d at 550, *rev'd on other grounds*, 694 So. 2d  184 (La. 1997).

[52]Furthermore, as this Court knows, a huge number of Katrina-related lawsuits were filed at or immediately before the first anniversary of the storm. All of the complaints filed at that time constituted satisfactory proofs of loss.   If the Insurers failed to make payments within thirty

retroactively.    Accordingly, the Insurance PSLC requests that this Court grant its motion and find that Act 813, amending Louisiana Revised Statute § 22:6587, applies retroactively.

Alternatively, if this Court holds that Act 813 applies prospectively only, the Insurance PSLC requests that, due to the continuing duty owed by the Insurers to their policyholders, any failure to pay what was owed under the policies within thirty days of August 15, 2006 will subject the Insurers to the penalties provisions in Act 813.

---

days of receiving any such complaint, they will be subject to the current version of Section 22:658.

**Respectfully Submitted:**

PLAINTIFFS' LIAISON COUNSEL

/s/ Joseph M. Bruno
Joseph M. Bruno (#3604)
THE LAW OFFICES OF JOSEPH M. BRUNO
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
jbruno@jbrunolaw.com
FOR THE INSURANCE PLAINTIFFS
SUBGROUP LITIGATION COMMITTEE

AND

Calvin C. Fayard, Jr. (La. Bar No. 5486)
FAYARD AND HONEYCUTT, APLC
519 Florida Avenue, SW
Denham Springs, LA 70726
Telephone: (225) 664-4193
Facsimile: (225) 664-6925
calvinfayard@fayardlaw.com
LIAISON COUNSEL – INSURANCE PSLC

AND

John N. Ellison, Esq.
ANDERSON, KILL & OLICK, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 568-4202
Facsimile: (215) 568-4375
jellison@andersonkill.com
*Admitted Pro Hac Vice*

17

AND

James M. Garner (La. Bar No. 19589)
SHER, GARNER, CAHILL, RICHTER, KLEIN,
& HILBERT
909 Poydras Street, Suite 2800
New Orleans, LA 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com

AND

Joseph J. McKernan (La. Bar. No. 10027)
MCKERNAN LAW FIRM
8710 Jefferson Highway
Baton Rouge, LA 70809
Telephone: (225) 926-1234
Facsimile: (225) 926-1202
jemckernan@mckernanlawfirm.com

AND

Drew A. Ranier (La. Bar No. 8320)
RANIER, GAYLE and ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
Telephone: (337) 494-7171
Facsimile: (337) 494-7218
drainer@rgelaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on this 1st day of  June, 2007 a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all known counsel of record by operation of the court's electronic filing system.

/s/ Joseph M. Bruno
JOSEPH M. BRUNO