## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:  KATRINA CANAL BREACHES              CIVIL ACTION
         CONSOLIDATED LITIGATION

NO. 05-4182

SECTION "K" (2)

FILED IN:     05-4181, 05-4182, 05-5237, 05-6073, 05-6314, 05-6324,
               05-6327, 05-6359, 06-0225, 06-0886, 06-1885, 06-2152,
               06-2278, 06-2287, 06-2824, 06-4024, 06-4065, 06-4066,
               06-4389, 06-4634, 06-4931, 06-5032, 06-5155, 06-5159,
               06-5161, 06-5260, 06-5162, 06-5771, 06-5937, 07-0206,
               07-0621, 07-1073, 07-1271, 07-1285

PERTAINS TO: MRGO

_____

### OPPOSITION TO WASHINGTON GROUP INTERNATIONAL, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12( c)

PLAINTIFFS in the referenced actions hereby oppose defendant Washington Group International Inc.'s Motion to Dismiss the Consolidated Master Class Complaint.

### I.    SUMMARY OF ARGUMENTS AND RESPONSES

Defendant Washington Group International, Inc. ("WGII") urges two interdependent reasons to dismiss the Master Complaint.

**First**, WGII seeks dismissal under Rule 12(b)(1), arguing the Court lacks jurisdiction because Plaintiffs "effectively seek[] to challenge Congress' decision to replace the [IHNC] lock." (Def. Memo. at 1.)  This is a facial attack on the complaint based upon the governmental contractor's defense, (*id.* at 8), simply questioning whether Plaintiffs have alleged WGII's

negligence so as to satisfy Rule 12 standards.  WGII acknowledges it avoids liability under the defense only "so long as the contractor was not negligent" in carrying out its contractual duties. (Id.)  Plaintiffs have alleged that WGII was negligent, and (again, as WGII concedes) those allegations must be taken as true. (Id. at 6.)  Rule 12(b)(1) dismissal would thus be improper.

**Second**, WGII argues for judgment on the pleadings pursuant to Rule 12© because "the allegations against WGII cannot sustain a negligence claim." (Def. Memo. at 1-2.)  This is but a repeat attack on the sufficiency of the complaint, and it fails for the same reason as the first argument. [1]

## II.   WGII IS NOT ENTITLED TO DISMISSAL PURSUANT TO RULE 12(b)(1)

WGII seeks dismissal alleging that this court cannot exercise jurisdiction over the subject matter of the cause of action because "WGII was a government contractor [but] Plaintiffs have not alleged that WGII committed any acts or omissions that were beyond the scope of the tasks the USACE hired it to do."(Id. at 5.) [2]  Not so.  Plaintiffs have made numerous allegations citing WGII's negligence.

Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary;" the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v.

---

[1] Both arguments are reviewed under the most liberal and forgiving of standards—that of Rule 12(b)(6).  The first argument is a facial attack under 12(b)(1), and "[a] motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)." McWaters v. FEMA, 436 F. Supp. 2d 802, 811 (E.D. La. 2006) (citing Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998)). WGII's second argument is brought under Rule 12(c).  It is well settled that "the legal standards for review of motions pursuant to Rule 12(b)(6) and Rule 12(c) are indistinguishable . . . ." DeMuria v. Hawkes, 328 F.3d 704, 706 n.1 (2d Cir. 2003).  WGII acknowledges as much by articulating the 12(b)(6) standard of review in its motion. (Def. Memo. at 6.)

[2] WGII states that this court is without jurisdiction to entertain a suit that effectively seeks to challenge Congress's decision to replace [a lock on the Inner Harbor Navigational Canal]. (Def. Memo. at 1.)

Pardus, 551 U.S. ____( June 4, 2007) (slip op., at 5) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. ____ (2007) (slip op., at 7-8) (quoting Conley v. Gibson, 355 U.S. 41,47 (1957)).

In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980).  In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir.1982).  Courts must proceed cautiously in dismissing claims for lack of subject matter jurisdiction at an early stage if relevant facts are in dispute and pertinent discovery has not been concluded. Mortensen v. First Fed. Savings & Loan Ass'n, 549 F.2d 884, 892 (3d Cir.1977).

The Master Complaint describes in detail the tasks WGII undertook on the IHNC, including the removal of trees and wharfage, the removal of bulkheads by vibratory extraction, and the removal of more than 3,000 pilings (on land and in the water) by vibratory extraction far exceeding the depth of the floodwalls. (Compl. ¶¶ 41-42.)  Plaintiffs then specifically allege Plaintiffs' belief that in doing so WGII "undermined the integrity of the levee and/or flood wall along the eastern shoreline of the IHNC . . . ." (Id. ¶ 43.) [3]  The Master Complaint then specifically avers that WGII's activities "resulted in underseepage-induced erosion and other damage to the levee and/or flood wall, ultimately causing and/or contributing to its catastrophic failure." (Id. ¶ 44.)  This assertion of fact is deemed 100% true in the present analysis.  WGII characterizes this as a "conclusory" statement.  It is not; it is a fact assertion connecting WGII's activities with the failure of the IHNC.  The next paragraph is even more explicit, stating:

_____

[3] WGII makes much of Plaintiffs' use of the phrase "upon information and belief."  That is but another way of saying "an inference may fairly be drawn that . . . ."  Inferences furnish solid and perfectly valid support in federal notice pleading.  Indeed, in a 12(b)(6) analysis, "[a]ll inferences must be drawn in plaintiff's favor . . . ." R2 Inves. LDC v. Phillips, 401 F.3d 638, 645 (5th Cir. 2005).

> Defendant Washington Group was negligent and/or at fault in the following non-exclusive respects: (1) it knew or should have known that its work was causing damage to the levee and/or flood wall structures and did nothing to correct the problem; (2) it failed to follow proper procedures in performing its work; (3) it failed to comply with appropriate regulations and standards in performing its work; (4) it failed to notice the damage caused by its work and failed to call that damage to the attention of the appropriate authorities; (5) and any other acts of fault or negligence to be proven upon the trial of the cause.

(Compl. ¶ 45.)

WGII itself admits that a federal governmental contractor is not liable for damages only "so long as the contractor was not negligent" in carrying out its contract. (Def. Memo. at 8.)  It thus necessarily argues that "Plaintiffs have not alleged any facts supporting a claim that WGII performed any of its work for the USACE in a negligent fashion." (Id. at 10.)  As demonstrated above, Plaintiffs have in fact sufficiently alleged negligence against WGII.  It follows that the first argument fails under the very standards WGII admits govern it.[4]

### III.   WGII DOES NOT ENJOY SOVEREIGN IMMUNITY

Within this argument, WGII relies upon Yearsley et.al v. W.A. Ross Const.Co., 309 U.S. 18, 60 S. Ct. 413 (1940), to argue that it enjoys an immunity precluding the Court from exercising jurisdiction.  In Yearsley, the plaintiff brought suit against a contractor to recover damages resulting from acts producing artificial erosion that washed away part of plaintiff's

---

[4] Though WGII makes only a facial attack on the Master Complaint, Plaintiffs also note that dismissal under 12(b)(1) would run afoul of Montez v. Dept. of Navy, 392 F. 3d 147 (5th Cir. 2004), because whether this Court maintains jurisdiction depends, as WGII concedes, upon whether WGII was negligent—a merits question.  Montez held that where a jurisdictional attack is intertwined with the merits of a claim, resolution of the jurisdictional issue on a 12(b)(1) motion is improper. See Id., at 150. See also United States ex rel. Laird v. Lockheed Martin Eng'g. & Sci. Servs. Co., 336 F. 3d 346, 350 (5th Cir. 2003) ("When the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action, the court should assume jurisdiction over the case and decide the case on the merits."); Williamson v. Tucker, 645 F.2d 404, 415 (5th Cir. 1981) (holding that where a "challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case").

land.  The Supreme Court upheld the appellate court ruling in favor of the defendant, holding

simply that "if the authority to carry out the project was validly conferred, that is, if what was

done was within the constitutional power of Congress, there is no liability on the part of the

contractor for executing its will." Id. at 414. [5]

However, the Supreme Court made clear that this ruling did not confer "immunity," only

that there would be "no liability" in this case.  It recognized that "where an agent or officer of

the Government purporting to act on its behalf has been held to be liable for his conduct causing

injury to another, the grounds of liability has been found to be either that he exceeded his

authority or that it was not validly conferred." Id. at 414.

The logic of Yearsley has developed substantially since 1940.  The defense was

developed in the context of whether private contractors would be held liable for design defects in

government-commissioned military equipment.[6]  "The government contractor defense, as

formulated in 1988 by the Supreme Court in Boyle, generally immunizes government

contractors from civil liability arising out of the performance of federal procurement contracts."

Bailey v. McDonnell Douglas Corp., 989 F.2d 794, 797 (5th Cir.1993) (citing Boyle, 487 U.S. at

505-06, 108 S. Ct. at 2515). "The defense stems from the immunity enjoyed by the United States

from claims based on the performance of so-called 'discretionary functions', pursuant to the

---

[5] The court avoided any further extension of the ruling by recognizing that "if the authorized action at issue constituted a taking of property for which there must be just compensation under the Fifth Amendment, the Government has impliedly promised to pay that compensation and has afforded a remedy for its recovery by a suit in the Court of Claims."

[6] In Boyle v. United Technologies Corp., the Supreme Court held that "[l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).

[Federal Tort Claims Act], 28 U.S.C. § 2680(a)." Id. at 797-98. "The primary purpose behind the formulation of the government contractor defense was to 'prevent the contractor from being held liable when the government is actually at fault . . .'" Mitchell v. Lone Star Ammunition, Inc., 913 F.2d 242, 245 & n.5 (5th Cir. 1990) (quoting Trevino v. General Dynamics Corp., 865 F.2d 1474, 1478 (5th Cir. 1989)).

However, the protective shield in favor of the contractor collapses when the actions of the government contractor—and not those of the Government—produce the damaging condition. Mitchell, at 245-46.  In such a situation, fairness dictates that a government contractor should not be permitted to escape liability by asserting the sovereign immunity of the Government. Id. at 246.  In fact, the Boyle court specifically held that "the government contractor defense does not confer sovereign immunity on contractors."  487 U.S. at 505 n.1, 108 S. Ct. 2510.

Additionally, the defense shields a government contractor only from claims arising out of its actions where the government has exercised its discretion and judgment in approving precise specifications to which the contractor must adhere. Malesko v. Corr. Servs. Corp., 229 F.3d 374, 382 (2d Cir. 2000), rev'd on other grounds, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001).  "The affirmative defense applies only if the government exercised significant control over the relevant actions of the contractor." Densberger v. United Techs. Corp., 297 F.3d 66, 75 (2d Cir. 2002).  "Stripped to its essentials," the government contractor defense claims:  "[t]he Government made me do it."  In re Joint E. & S. Dist. N.Y. Asbestos Litig., 897 F.2d 626, 632 (2d Cir. 1990).

To prevail on the government contractor defense, a defendant bears the burden of proving all three elements of the Boyle standard.  Based upon the limited scope of documentation provided by WGII in its initial disclosures, it is unlikely that WGII will be able to show any of the following:

(1) that the United States government approved reasonably precise specifications;

(2) that the product conformed to those specifications; and

(3) the contractor must warn the United States government about dangers associated with the use of the product known to the manufacturer but not to the government. [7]

These three conditions "serve to ensure that the defense operates to immunize the contractor only where the government has actually participated in discretionary design decisions, either by designing a product itself or approving specifications prepared by the contractor." Landgraf v. McDonnell Douglas Helicopter Co., 993 F.2d 558, 560 (6th Cir. 1993) (quoting Harduvel v. General Dynamics Corp., 878 F.2d 1311, 1316 (11th Cir. 1989).

As set forth above, Plaintiffs have specifically alleged the negligent acts of WGII that preclude the granting of the Motion to Dismiss.

## IV.    WGII IS NOT ENTITLED TO JUDGMENT PURSUANT TO RULE 12 ( c )

A Rule 12 ( c) motion is reviewed using the same standard employed under Rule 12(b)(6). Thus, a court must construe the Plaintiffs' complaint in the light most favorable to the Plaintiffs and take the factual allegations contained therein as true. Butler v. Nance, 2001 WL 671745 (N.D. Tex. June 12, 2001) (citing Mitchell v. McBryde, 944 F.2d 229, 230 (5th Cir. 1991)); Mann v.Adams Realty Co., Inc., 556 F.2d 288 (5th Cir. 1977).

The motion is not granted unless it appears beyond doubt that the plaintiff can prove no facts sufficient to support his claim for relief.  Frey v. Bank One, 91 F.3d 45, 46 (7th Cir. 1996); Church v. General Motors Corp., 74 F.3d 795, 798 (7th Cir. 1996).  The issue is not whether a plaintiff will or not ultimately prevail on his or her claim, but whether he or she is entitled to offer evidence in support of the allegations in the complaint.  Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012 (1984).

---

[7] Boyle, supra.

WGII's second argument is a rerun of the first.  Its' first argument turned on whether Plaintiffs "alleged any facts suggesting that WGII performed work for the USACE in a negligent manner," (Def. Memo. at 10), the second argument turns on whether Plaintiffs "fail to allege an actionable claim of negligence against WGII." (Id. at 11.)  The second argument necessarily fails for the same reason as the first.

WGII adds here that Plaintiffs "cannot credibly argue that the scope of any duty required of WGII encompassed the risk and harm posed by the confluence of circumstances that caused the catastrophic failure of certain levees and floodwalls abutting the Lower Ninth Ward." (Def. Memo. at 6.)  WGII fails to recognize that the "confluence of events" includes its activities on and about the IHNC's floodwalls, and the (for present purposes irrefutable) fact that those activities were a cause-in-fact and legal cause of the "catastrophic failure" of the IHNC floodwalls, resulting in damages to tens of thousands of class members, as alleged. (Compl. ¶¶ 41-45.)  WGII seems to argue that it had no duty to prevent a hurricane; but Plaintiffs have alleged no such duty. (Def. Memo. at 6, 13, 16-17.)  WGII's duty to all class members was to refrain from negligently undermining the floodwalls that were designed to protect against the very harm that occurred, which Plaintiffs alleged. (Compl. ¶ 75.)  WGII breached that duty, and its breach of that duty caused harm. (Id. ¶¶ 43, 44, 75.)  That is negligence, and that is what Plaintiffs have alleged.  That WGII's negligence may have concurrently caused harm with the negligence of others, (Def. Memo. at 17-18), does nothing to make it less negligent, or to diminish the allegations against it.

These allegations are not conclusory in nature.  They address specific breaches of WGII's duty both in tort and as they relate to the governmental contractor defense. In particular, the allegation that WGII failed to notice the damage it caused by its work and failed to call that damage to the appropriate authority (which again for present purposes must be accepted as true)

specifically offsets the third necessary prong of the governmental contractor defense.

The allegations set forth in the Master Complaint are substantially different than those contained in the Complaint analyzed by this court in <u>Reed</u>, 2007 WL 763742 (<u>In re: Canal Breaches Consol. Litig.</u> (E.D. La. 2007)), a case upon which WGII relies heavily.  In <u>Reed</u>, this Court dismissed the various dredging defendants because "there [was] no allegation that any of the dredging defendants performed any negligent act or omission or any intentional act that was beyond the scope of the task for which the Corps of Engineers hired them." <u>Id.</u> at 3.  This Court analyzed the <u>Boyle</u> standard to state that "contractors cannot be held liable for performing contracts in conformity with the Government's specifications, providing the contractors carried out such contracts with due care and absent negligence." <u>Hercules Inc. v. United States</u>, 516 U.S. 417, 421-22 (1996); <u>Boyle</u> at 487 U.S. at 511-12.

In the present case, the Master Complaint specifically alleges not only that WGII's work was performed in such a negligent manner that it either caused or contributed to the catastrophic failure of the flood walls that were supposed to protect the Lower Ninth Ward subclass, but also that the harmful deficiencies in WGII's work on the project were not reported to the appropriate governmental agencies.  As such, WGII's Motion for Judgment on the Pleadings must be denied.

## V.      ALTERNATIVELY, LEAVE TO AMEND SHOULD BE GRANTED

Alternatively, should the Court find that insufficient facts have been set forth to state a cause of action, leave to amend should be granted.  A district court's discretion to dismiss a complaint without leave to amend is 'severely restricted' by Rule 15(a), which states that leave to amend "shall be freely given when justice so requires."  <u>Thomas v. Town of Davie</u>, 847 F.2d 771, 773 (11th Cir. 1988).  Where it appears a more carefully drafted complaint might state a claim upon which relief can be granted, a district court should give a plaintiff an opportunity to

amend his complaint instead of dismissing it. <u>Friedlander v. Nims</u>, 755 F.2d 810, 813 (11th Cir. 1985).

**VI.   <u>CONCLUSION</u>**

As WGII recognizes, a liberal 12(b)(6) standard governs the disposition of its motion. Though WGII makes two arguments, both turn on the sufficiency of Plaintiffs' allegations. Despite much talk about the federal contractor's defense, WGII concedes that it is not immune from liability if it performed negligently.  Thus the question is whether Plaintiffs have alleged that it performed negligently.  They have.  The argument therefore fails.

WGII's second argument is a straightforward claim that Plaintiffs have failed to allege negligence sufficiently.  As such, it is but an encore presentation of the first argument, and it fails for the same reason.

Plaintiffs respectfully urge the Court to DENY the motion to dismiss to allow full discovery of WGII's invasive activities on the IHNC and how those activities contributed to the catastrophic losses occasioned by the failure of the IHNC flood walls.

Respectfully Submitted,

PLAINTIFFS' LIAISON COUNSEL

s/ Joseph M. Bruno
JOSEPH M. BRUNO
PLAINTIFFS LIAISON COUNSEL
Law Offices of Joseph M. Bruno
LA Bar Roll Number: 3604
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775

MR-GO PLAINTIFFS SUB-GROUP LITIGATION
COMMITTEE

s/ James Parkerson Roy
JAMES PARKERSON ROY
MR-GO PSLC Liaison Counsel
LA. Bar Roll Number: 11511
Domengeaux Wright Roy & Edwards LLC
P.O. Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: (337) 233-2796

For

MR-GO PLAINTIFFS SUB GROUP LITIGATION
COMMITTEE
Jonathan Andry (Andry Law Firm, New Orleans, LA)
Clay Mitchell (Levin, Papantonio et al., Pensacola, FL)
Pierce O'Donnell (O'Donnell & Associates, Los Angeles,
CA)
James Parkerson Roy (Domengeaux, Wright, et al.,
Lafayette, LA)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above referenced pleading upon all known

counsel for all parties via the Court's CM/ECF system, or by placing same in the United States mail,

properly addressed and with first class postage prepaid, or by facsimile, e-mail, or other electronic

transmission this 5th day of June, 2007.

　/s/ Joseph M. Bruno
Joseph M. Bruno