UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION NO. 05-4182 |
| _____ | * * | SECTION: K(2) |
| PERTAINS TO: | * * | JUDGE DUVAL |
| INSURANCE (*Vidacovich*, 2:06-cv-4719) | * * | MAG. WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## HARTFORD'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

Defendant Hartford Insurance Company of the Midwest ("Hartford"), files this Response to the Motion to Compel filed by Plaintiffs Chester and Murleen Vidacovich ("Plaintiffs"), and would show:

### I.   INTRODUCTION

Plaintiff's motion to compel should be denied because:

- Hartford has responded to Plaintiff's discovery request for the claim file by stating it will produce the information subject to an agreed protective order. Hartford seeks the protective order primarily to prevent further disclosure of its confidential and proprietary commercial information and trade secrets outside this litigation. However, Plaintiff refuses to sign the protective order, yet articulates no reasonably legitimate basis as to why it should be allowed to further disseminate information it obtains through discovery in this litigation.

- Plaintiff's requests for the most part seek information not in Hartford's possession and control. Furthermore, many of Plaintiff's requests are overly broad and not limited to the claim at issue in this lawsuit.

## II. ARGUMENT AND AUTHORITIES

### A. Hartford should not be compelled to produce its confidential and proprietary documents until a protective order is in place.

Plaintiffs complain that Hartford promised to produce documents in response to Plaintiffs' Requests for Production Nos. 1, 4, 6, and 8. Indeed Hartford did, subject to a proposed agreement with Plaintiffs to keep such information confidential for purposes of this litigation, which they refused to so. Request for Production No. 8 is a request for a copy of the policy, which was indeed produced to Plaintiffs. In response to Requests for Production No. 1 in which Plaintiffs requested the claim file, Hartford responded: "Hartford will produce the claim file herein subject to a review for privilege and after a mutually agreeable protective confidentiality order is entered." In response to Requests for Production Nos. 4 and 6 seeking adjuster reports and photographs or drawings of the property, Hartford referred to its response to Request for Production No. 1 because the responsive documents are in the claim file.

Hartford maintains that a protective order is appropriate in this case. Good cause exists to enter a protective order as stated in Hartford's Motion for Entry of a Protective Order filed contemporaneously herewith. Such an order would require non-dissemination of any responsive non-privileged documents outside of this litigation. By entering into the proposed protective order Plaintiffs are not conceding that any of the documents designated as "confidential" are in fact confidential, and Plaintiffs can challenge the designation after reviewing the documents. Therefore, Plaintiffs could have signed the protective order and received the documents weeks ago, while still reserving their right to challenge the designation of confidential documents.

Federal Rule of Civil Procedure 26(c) specifically provides for the entry of a protective order "that a trade secret or other confidential research, development or **commercial information** not be revealed or be revealed only in a designated way." See Fed. Rule Civ. P. 26(c) (emphasis added). The claim file contains such commercial information and trade secrets. Contrary to Plaintiffs' assertions, Hartford's information is not public. But for this litigation, Plaintiffs would not be entitled, nor would anyone else, to access this privately maintained corporate information.

Trade secret issues are governed by state law. *Aroson v. Quick Point Pencil Co.*, 940 U.S. 257, 265-66 (1979). The threshold inquiry is whether any legally protectable information exists. A trade secret is information that has independent economic value because it is not generally known or readily ascertainable and efforts are taken to maintain the information's secrecy. *SDT Industries, Inc. v. Leeper*, 793 So.2d 327, 331 (La. App. 2 Cir. 2001).

The claim file reveals the manner in which claims are adjusted, inspected, and analyzed. This information is not public knowledge. Hartford considers the whole claim file to be a confidential and proprietary set of documents. The materials are generated in connection with a particular claim and should remain confined to the discrete claim. The primary objective of the protective order is to limit use of the documents to the case at hand and to obtain a promise to return the documents after the litigation is over. This is the only way to maintain the confidential status of the information. The protective order request is not onerous, and is routinely agreed to by Plaintiffs' lawyers in most jurisdictions, including in several Katrina related cases.

The claim file contains proprietary information that should be kept confidential. If such information is revealed to the public, Hartford may lose its claim to trade secret status in future matters, some of which may be commercial/contractual and unrelated to this case or bad faith

claims. Furthermore, this proprietary information is wholly unrelated to how Hartford fulfills its good faith obligation to its customers. Accordingly, Hartford seeks to protect the entire claim file.

The claim file documents reflect Hartford's own method of claims handling / management, including the manner in which the information is compiled and patterned that is unique to Hartford; thus meeting the legal definition of trade secret. The files also represent information on how the claims handlers perform their work pursuant to Hartford's own general business operations. These operations are all part of what, when combined with the entire claim file, helps Hartford do its business in a competitive insurance market. Hartford should be permitted to keep this information confidential and Plaintiffs should not be allowed, especially in the Katrina environment, to broadcast it to anyone who is not a party to this litigation, which is precisely the protection Hartford seeks. Plaintiffs have no legitimate purpose for this information outside of this litigation and no legitimate basis for disseminating it further, yet won't agree not to do so.

Federal courts have recognized the significant potential damage that an insurance company could suffer if its confidential claims handling information were released without the benefit of a protective order and these courts have complied with defendant insurance company's requests under Rule 26(c). *See e.g., Cohen v. Metropolitan Life Ins. Co.*, No. 00CV6112, 2003 WL 1563349 (S.D.N.Y. Mar. 26, 2003) (finding that the "Best Practices Manual" and "Claims Management Guidelines" of the defendant insurance company contained "confidential information, valuable to [the defendant] and potentially valuable to its competitors who could take unfair advantage of [the defendant's] substantial analytical and experiential investment by using the material to achieve efficiencies in their claims handling operations, and that the

181231-1                                          4

material thus warrants appropriate protection"); *Republic Services, Inc. v. Liberty Mut. Ins. Companies*, No. 03CV 494, 2006WL1635655 (E.D. Ky. June 9, 2006) (holding that the defendant insurance companies claims handling and training manuals "have independent economic value to [the defendant] due to . . . their confidential nature, . . . the time, effort and expense . . . invested in creating these materials . . . and . . . the fact that competitors in the . . . industry do not disclose information about their claims handling policies and procedures to one another" and finding that issuance of a protective order was appropriate); *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420 (S.D. Ind. 2001) (issuing protective order as to the defendant insurance company's claims handling materials); *Adams v. Allstate Ins. Co.*, 189 F.R.D. 331 (E.D. Pa. 1999) (ordering that the information in the defendant insurance company's claims manuals and training materials were to be kept confidential).

Because the claim file – in both form and content – is the embodiment of the client's adjusting manuals and training materials, these cases are instructive and highly persuasive, strongly supporting the issuance of a protective order in this case. This is particularly true where entry of the protective order does not restrict the Plaintiffs' ability to use the materials in the present litigation, but merely imposes an obligation to maintain the confidential character of the documents and to return them once the case is resolved.

Additionally, and more importantly, courts in the Eastern District of Louisiana have entered protective orders in several Katrina-related cases. *See e.g. Fischer v. Encompass Ins. Co.*, No. 06-2498; *Tomlinson v. Allstate*, No. 06-0617. Furthermore, Judge Duval recently entered a protective order in the *In Re Katrina* matter which covers multiple insurers and policyholders. *See In re Katrina Canal Breaches Consolidated Litigation*, Civil Action No. 2:05-cv-4182, Rec. Doc. 5393.

181231-1

Accordingly, Hartford should not be required to produce its confidential and proprietary documents until a protective order is in place prohibiting dissemination of the claim file and any underwriting materials outside of this litigation. Indeed, if Hartford does not seek such protection it may later be prohibited from precluding use of the information in unrelated litigation should Plaintiffs disseminate it further. Plaintiffs have not even expressed an intent or need to disseminate the material outside of the lawsuit and would suffer no harm if a protective order were entered.

**B.     Hartford's Responses to Plaintiffs' Requests for Production are sufficient.**

Plaintiffs ask that Hartford be compelled to respond more fully to several requests for production. As will be discussed below, each of Hartford's responses are appropriate given the improper construction of the requests and the fact that the requests seek documents that bear little relevance to the claims actually asserted in the litigation.

**REQUEST FOR PRODUCTION NO. 2:**

Copies of any and all written policies, handbooks, instruction booklets or other documentation regarding the adjustment of property damage claims.

**ANSWER:**

Hartford objects to Request for Production No. 2 because it is overbroad in scope and time. As written, this request is unlimited as to time, geographic region, coverage type or cause of loss, and necessarily calls for production of documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. This request is so broad as to be unduly burdensome and harassing and the request is an impermissible fishing expedition. Hartford further objects to Request for Production No. 2 because, as Hartford understands this Request, it appears to seek confidential, proprietary business information and trade secrets. Hartford further objects to Request for Production No. 2 because it is unduly burdensome to produce and as written the request calls for production of documents protected from discovery by the attorney-client and work product privileges. Hartford further objects to Request for Production No. 2 to the extent that it calls for production of documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs essentially acknowledge that the request is overbroad as written. But Plaintiffs claim in their Motion to Compel that Hartford "is fully aware" that Plaintiffs are not seeking a loss adjustment manual used when evaluating claims submitted under other Hartford property policies, and that Plaintiffs only seek claims manuals used immediately prior to, during, and after Hurricane Katrina. This is simply not true. Nevertheless, a party responding to discovery requests should not be required to further analyze what was meant by the request as opposed to what was actually requested. Hartford responded to the request as it was submitted. If Plaintiffs meant for the request to be limited in scope and time, they should have drafted the request accordingly.

In light of Plaintiffs' representation that they seek more limited production, Hartford answers that there are no responsive documents specifically related to adjustment of claims arising from Hurricane Katrina. However Hartford agrees to produce its "Property & Marine Best Practices: General Guidelines" and its "2005 Hurricane Issues" document subject to the entry of an appropriate protective order limiting use to the present litigation and requiring return of the documents at the end of the case.

### REQUEST FOR PRODUCTION NO. 4:

Copies of any and all reports, including, but not limited to, adjuster's reports, prepared by you or someone acting on your behalf regarding the property damage claim made subject of this suit.

### ANSWER:

Hartford objects to Request for Production No. 4 because it is overbroad and unduly burdensome to produce, calling for production of "any and all" documents in the specified category and as written the request necessarily calls for production of documents protected from discovery by the attorney-client and work product privileges. Responsive documents are being withheld pursuant to the attorney-client, work product or party communications privileges. Subject to these objections and without waiving same, see response to Request for Production No. 1. Some responsive documents may be in the possession of third parties and not within the care, custody or control of this

181231-1                                           7

defendant, but Hartford's investigation is ongoing and Hartford reserves the right to supplement this answer if additional responsive information is acquired.

Hartford has agreed to produce the Cat Crew report which is in the claim file, subject to the entry of an appropriate protective order limiting use to the present litigation and requiring return of the documents at the end of the case. Hartford's previous response merely acknowledged the fact that there might also be copies of this report in the Cat Crew files, but the Cat Crew report in the claim file is the only report to which Hartford has knowledge. Plaintiffs state that they "fail to comprehend how defendant cannot possess all versions/copies of its adjusters' reports. . . ." The reason is simple – Hartford used an independent adjuster, Bob Currie of Cat Crew. Plaintiffs are aware of this fact because Bob Currie is identified in Hartford's Rule 26 initial disclosures and in response to Interrogatory No. 4. Hartford is not required to produce documents not within its possession, custody or control. *See* Fed. R. Civ. P. 34(a). If Plaintiffs want copies of the Cat Crew report from Cat Crew, Plaintiffs should request it from Cat Crew.

### REQUEST FOR PRODUCTION NO. 9:

Copies of any and all licenses, certificates and/or degrees described in your answer to interrogatory number 5(d).

### ANSWER:

Hartford has objected to Interrogatory No. 5 and objects to this Request for Production No. 9 on the basis that they are overly broad, unduly burdensome, exceed the scope of available discovery under the rules, and are not reasonably calculated to lead to the discovery of relevant evidence. Hartford further objects to Request for Production No. 9 because the documents requested are not within Hartford's care, custody or control. Hartford's investigation is ongoing and Hartford reserves the right to supplement this response if responsive documents are acquired.

Interrogatory No. 5 (see below) was an inquiry into the training, education, and qualifications of the adjuster that inspected Plaintiffs' residence. As stated by Hartford in

response to Interrogatory No. 4: "Bob Currie of Cat Crew inspected the residence on October 9, 2005. Cat Crew was retained by Hartford for the purpose of supplying an independent adjuster to perform this inspection." Again, Hartford is not required to produce documents not within its possession, custody or control. *See* Fed. R. Civ. P. 34(a). If Plaintiffs want copies of Bob Currie's licenses, certificates, and/or degrees, Plaintiffs should request those from Cat Crew and/or Bob Currie.

### REQUEST FOR PRODUCTION NO. 10:

Copies of any and all certificates or other documentation obtained following completion of the seminar(s), lecture(s) and/or event(s) described in your answer to interrogatory number 5(g).

### ANSWER:

Hartford has objected to Interrogatory No. 5 and objects to this Request for Production No. 10 on the basis that they are overly broad, unduly burdensome, exceed the scope of available discovery under the rules, and are not reasonably calculated to lead to the discovery of relevant evidence. Hartford further objects to Request for Production No. 10 because the documents requested are not within Hartford's care, custody or control. Hartford's investigation is ongoing and Hartford reserves the right to supplement this response if responsive documents are acquired.

Interrogatory No. 5(g) (see below) was an inquiry into the name(s) of any and all continuing education seminars, lectures or other events attended by the adjuster that inspected Plaintiffs' residence. As stated by Hartford in response to Interrogatory No. 4: "Bob Currie of Cat Crew inspected the residence on October 9, 2005. Cat Crew was retained by Hartford for the purpose of supplying an independent adjuster to perform this inspection." Again, Hartford is not required to produce documents not within its possession, custody or control. *See* Fed. R. Civ. P. 34(a). If Plaintiffs want copies of any and all certificates or other documentation obtained by Bob Currie following completion of any such seminars, lectures and/or events, Plaintiffs should

181231-1                                   9

request those from his employer Cat Crew and/or Bob Currie. Hartford simply does not have this information.

C.   **Hartford's Answers to Plaintiffs' Interrogatories are sufficient.**

Like Plaintiffs complaints about Hartford's responses to the requests for production, Plaintiffs complaints about Hartford's answer to interrogatories are not well-founded.

**INTERROGATORY NO. 1:**

Please state the name and job title of each and every individual who answered or assisted in answering any of these Interrogatories.

**ANSWER:**

Hartford objects to Interrogatory No. 1 because it is overbroad and unduly burdensome and seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence and exceeds the scope of permissible discovery. Subject to these objections and without waiving same:

Hartford Insurance Company of the Midwest responds to these discovery requests with the assistance of counsel.

Hartford answered the question posed, so it remains somewhat unclear what forms the basis of Plaintiffs' complaint. Plaintiffs state in their Motion to Compel that they were attempting to identify the principals of Hartford with knowledge of Plaintiffs' claim. Plaintiffs did not ask that question in the discovery request. Hartford should not be compelled to respond to interrogatories that were not even asked. Nevertheless, the principals of Hartford who were involved with this claim are no longer employed by Hartford.

**INTERROGATORY NO. 5:**

For each person listed in your answer to interrogatory number 4, please give the following information:

a)   The total number of years the individual(s) worked as a claims adjuster prior to adjusting the property losses made subject of this suit;

181231-1                                       10

b) The approximate total number of residential property damage claims the individual(s) adjusted prior to adjusting the losses made subject of this suit;

c) The relevant education, including the name(s) of the school(s), college(s), and/or institutions(s) attended and the date(s) of graduation;

d) The name(s) of any and all professional license(s), certificate(s) and/or degree(s) possessed by the individuals(s), the name(s) of the State(s) that issued the license(s) and the date(s) upon which the license(s) were obtained;

e) A description of any and all training you administered to and/or the person underwent, regarding how to adjust property damage losses and the date(s) upon which individual(s) underwent the training;

f) The name(s) of any and all companies the individual(s) worked for or on behalf of as an adjuster prior to working for you. Please give the date(s) of employment for each company listed;

g) The name(s) of any and all continuing education seminars, lectures or other events attended by the individuals(s) and the date(s) so attended.

**ANSWER:**

Hartford objects to this Interrogatory No. 5 on the basis that it is overly broad, unduly burdensome, exceeds the scope of available discovery under the rules, and is not reasonably calculated to lead to the discovery of relevant evidence. Subject to this objection and without waiving same, the information requested is not within the care, custody or control of this defendant, but Hartford's investigation is ongoing and Hartford reserves the right to supplement this answer if additional responsive information is acquired.

As previously noted, in response to Interrogatory No. 4, Hartford stated: "Bob Currie of Cat Crew inspected the residence on October 9, 2005. Cat Crew was retained by Hartford for the purpose of supplying an independent adjuster to perform this inspection." Plaintiffs complain generally that they do not understand how Hartford could not have the information requested. Considering the fact that Bob Currie of Cat Crew was an independent adjuster working for Cat Crew, it makes perfect sense. Mr. Currie is not employed by Hartford and Hartford simply does

181231-1                                    11

not have that information. Hartford should not be compelled to respond to this interrogatory as the information should more appropriately be obtained from Mr. Currie.

### D. Plaintiffs' Request for Attorneys' Fees should be denied.

Plaintiffs have requested attorneys' fees for bringing the Motion to Compel pursuant to Rule 37(a)(4)(A). Plaintiffs complain that all of its requests are "mundane, basic items." Plaintiffs fail to recognize that Hartford is, and has been, prepared to produce its claim file subject to Plaintiffs' agreement to non-disclosure through the entry of a protective order. The other requests were either overbroad or sought information not in the possession of Hartford. The conflict presently before the Court was wholly created by Plaintiffs' unreasonable refusal to agree to non-disclosure of Hartford's confidential documents. Plaintiffs have not even articulated any purpose for this information outside of this litigation and there is no legitimate basis for disseminating it further, yet Plaintiffs won't agree to non-dissemination. There was no need for Plaintiffs' to file the Motion to Compel. Accordingly, Hartford's responses to Plaintiffs' discovery requests were justified and fees should not be awarded.

WHEREFORE, Hartford Insurance Company of the Midwest respectfully requests that the Court deny Plaintiffs' Motion to Compel in its entirety and award Hartford any such further relief to which it is entitled.

Respectfully submitted,

s/Simeon B. Reimonenq, Jr.
Simeon B. Reimonenq, Jr., T.A., La. Bar. # 19755
Ralph S. Hubbard, III, La. Bar # 7040
LUGENBUHL, WHEATON, PECK, RANKIN &
HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

And

OF COUNSEL:

Christopher W. Martin
Texas Bar No.: 13057620
Martin R. Sadler
Texas Bar No.: 00788842
Ethan D. Carlyle
Texas Bar No.: 24031794
MARTIN, DISIERE, JEFFERSON &
WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

**Attorneys for Defendant,
Hartford Insurance Company
of the Midwest**

## CERTIFICATE OF SERVICE

I hereby certify that on 8th day of June, 2007 a copy of Hartford's Response to Motion to Compel was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Remy Voisin Starns by operation of the court's electronic filing system.

                                              s/Simeon B. Reimonenq, Jr.
                                              Simeon B. Reimonenq, Jr.