UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br>NUMBER: 05-4182 "K"(2)<br>JUDGE DUVAL<br>MAG. WILKINSON |
| PERTAINS TO: MRGO, Robinson<br>(No. 6-2268) | |

**PLAINTIFFS' SUR-REPLY IN SUPPORT OF OPPOSITION TO DEFENDANTS'
MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL;
MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiffs are obligated to file this Sur-reply to the Defendant United States' Reply Memorandum in Support of Its Motion to Certify ("Reply Memorandum") because the Government has raised an entirely new issue not previously advanced in its Motion to Certify, namely, that Plaintiffs made judicial admissions about "levees" in their Complaint.

The Motion to Certify seeks an order permitting an interlocutory appeal of the Court's order denying the Government's Motion to Dismiss alleging that Plaintiffs' Complaint was barred by the Flood Control Act of 1928 ("FCA") because the Mississippi River Gulf-Outlet ("MR-GO") had morphed from a navigable waterway to a flood control project due to the construction of supposed "levees" adjacent to Reach 2 of the MR-GO.  This argument was premised on unauthenticated maps that the Government claimed irrefutably established flood control "levees" were constructed along the MR-GO pursuant to the Lake Pontchartrain and Vicinity Hurricane Protection Plan ("LPVHPP").  In neither the opening nor reply memorandum

1

in support of the Motion to Dismiss did the Government allege that the Complaint contained judicial admissions about "levees" along the MR-GO.

Plaintiffs' opposition to the Motion to Dismiss offered substantial evidence establishing that vast stretches of the MR-GO did not contain "levees" and raised numerous disputed issues of fact requiring discovery. The Court properly denied the Motion to Dismiss in order to allow Plaintiffs to conduct discovery on the nature and extent of any "levees" along the MR-GO and their relationship to the LPVHPP. *See* Order and Reasons, dated February 2, 2007 ("Order"), at page 17.

Notwithstanding the Court's decision not to certify the FCA immunity issue because of the need for discovery (*see id*. at page 17, n. 5), the Government moved for an immediate appeal. In their Opposition to the Defendants' Motion for Certification, Plaintiffs argued that the Government's claim of conclusive evidence of "an 'established relationship' between the MR-GO and the LPVHPP . . . is a sharply disputed issue manifestly unsuited for interlocutory appeal." Plaintiffs' Opposition to Defendants' Motion for Certification of Interlocutory Appeal at p. 2. Since this pivotal mixed question of fact and law remains unresolved, Plaintiffs asserted, an interlocutory appeal is barred under controlling Fifth Circuit jurisprudence.

Faced with this insuperable barrier to certification, the Government's Reply attempts to salvage its meritless motion by claiming—*for the very first time in 10 months since the Government moved to dismiss*—that further discovery related to "levees" and their relationship between the MR-GO and the LPVHPP is unnecessary because Plaintiffs judicially admitted the existence of such "levees" in the Complaint. As demonstrated below, this assertion is manifestly untrue.

On a procedural basis, the Court should disregard this judicial admission contention because a moving party may not introduce new legal arguments in a reply brief. *See, e.g., Brazos Valley Coalition for Life, Inc. v. City of Bryan, Tex.*, 421 F.3d 314, 321 at n.7 (5th Cir. 2005); *In re Henlar, Ltd.*, 1997 WL 4567 at p. 2 (E.D. La. 1997). Accordingly, the Government—having waived its right to belatedly insist that Plaintiffs' Complaint contains judicial admissions on "levees"—is not "permitted to cure by way of reply what is in fact a defective motion . . . ." *Springs Indust., Inc. v. American Motorist Ins. Co.*, 137 F.R.D. 238, 240 (N.D. Tex. 1991). On this basis alone, the argument should be ignored.

Defendants grossly misstate, paraphrase, and take out of context the actual allegations in the Complaint as well as the contents of the Declaration of Dr. Paul Kemp and the Scientists' Statement of Concerns. None of these documents remotely makes fatal judicial admissions about "levees." For example, contrary to the Government's contention, Plaintiffs' Complaint did not "expressly aver[] both the existence of the LPVHPP and the floodwalls along MR-GO and that it was these flood control structures that were breached during Hurricane Katrina thereby releasing flood waters that allegedly caused plaintiffs' damages." Reply Memorandum at p. 3. Indeed, the gravamen of the Complaint is that but for the defects in the MR-GO, Plaintiffs' homes and business would not have been destroyed and that the existence or absence of flood control structures is irrelevant. *See* Order at pp. 2, 7, 15; *see also* Plaintiffs' Opposition to Dismiss at pp. 19-23.

Even a casual reading of the Complaint demonstrates that the term "levee" was used loosely as a generic descriptive and not a technical term. In fact, the Complaint uses interchangeably "spoilbanks," "levees," "banks," and "structures" to describe the north and south sides of the MR-GO. Nowhere do Plaintiffs allege, much less concede, that all of the projects,

3

levees, and activities along the MR-GO are flood control projects.  By no means are the few mentions of "levees"—which are open to multiple interpretations—a "deliberate, clear, and unequivocal" statement of fact required for a conclusive judicial admission.  *Heritage Bank v. Redcom Lab. Inc.,* 250 F.3d 319, 329 (5th Cir. 2001).

As for the isolated references to "levees" in the Complaint, the Government fails to explain how they satisfy the legal prerequisites for judicial admissions.  These are hardly facts peculiarly within the Plaintiffs' knowledge, and Defendants have provided no evidence showing that Plaintiffs had any unique knowledge concerning whether the earthen structures along the MR-GO were "levees."  Indeed, since Defendants claimed to have built these alleged levees, the relevant information is presumptively in their possession.  *See Banks v. Yokemich*, 214 F.Supp.2d 401, 406 (S.D.N.Y. 2002) (conclusory statements made by one party in routine pleadings are not judicial admissions when the facts are uniquely known by the other party).

Finally, this Court has the authority to relieve Plaintiffs from the consequences of an inadvertent judicial admission.  Since this case is in the earliest stages of factual development, and the parties have yet to even conduct any meaningful discovery, this Court, in addition to disregarding the untimely judicial admissions argument, should alternatively rule that the statements in the Complaint concerning levees were not judicial admissions, or if they were, Plaintiffs are relieved from any conclusive evidentiary consequences from such an admissions.

## II.     LEGAL ARGUMENT

### A.     This Court Should Refuse To Consider Defendants' Judicial Admission Argument Since It Was Raised For The First Time In Their Reply

In its Reply Memorandum, the Government extracts a few words from Plaintiffs' Complaint to argue—*for the very first time in the 10 months that FCA immunity has been*

4

*litigated before this Court*—that the pleading contains judicial admissions establishing the existence of "levees" along the MR-GO.  *See* Reply Memorandum at pp. 6, 10.  This argument is untimely and must be disregarded.  As the Fifth Circuit has stated, it is a "contemptible situation where a . . . [party] raises a completely new issue in its reply brief . . . ."  *Cousin v. Trans Union Corp.*, 246 F.3d 359, 373 at n.22 (5th Cir. 2001) (bracketed text added).  Moreover, even though this Court "allowed [Plaintiffs to file a sur-rebuttal] . . . does not alter . . . [the] rule of not considering issues raised in a reply brief."  *Cavallini v. State Farm Mut., Auto Ins. Co.*, 44 F.3d 256, 260 at n.9 (5th Cir. 1995) (bracketed text added).  Accordingly, this Court should refuse to even consider Defendants' argument that the Complaint admitted the existence of levees adjacent to Reach 2 of the MR-GO.

Defendants' Motion to Dismiss never raised the issue of judicial admissions in the Complaint.  Instead, Defendants insisted that unauthenticated maps provided such conclusive evidence of levees abutting Reach 2 of the MR-GO that discovery was not required.  Having failed to timely tender the issue in support of their Motion to Dismiss, Defendants waived the right to claim the existence of Plaintiffs' judicial admissions in the context of their certification motion.[1]  At a minimum, the Government should have raised this belated contention in its Motion to Certify—and not in its Reply Memorandum—so that Plaintiffs could respond.  In any event, the lack of a fully developed factual record on this issue dooms a certification motion under 28 U.S.C. § 1292(b).  *See Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71

---

[1] Parties are not allowed to "hide the ball" by not allowing their adversary to rebut an argument.  Defendants waived the ability to rely on alleged judicial admissions in the Complaint by failing to address the purported admissions at the earliest opportunity.  In *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391 (5th Cir. 1983) – the opinion primarily relied upon by Defendants in support of their belated judicial admission argument – the Fifth Circuit emphasized this salutary rule of law when it held that *the defendant waived its right to rely on purported judicial admissions made by the plaintiff*.  720 F.2d at 1397.

5

F.Supp.2d 139, 166-67 (E.D.N.Y. 1999) (citations omitted) ("'[T]he purpose of section 1292(b) is not to offer advisory opinions 'rendered on hypotheses which evaporate in light of full factual development.'") (citation omitted).

> **B.   Plaintiffs Have Consistently Alleged That Their Losses Were Caused By A Defective MR-GO And Not Failed Levees And That The MR-GO Is A Navigable Waterway, Not A Flood Control Project**

The Government's judicial admissions argument—and the Government's claim that the FCA immunizes its negligence—is legally irrelevant because the existence of "levees" and the relationship of the MR-GO and the LPVHPP are not relevant to Plaintiffs' theory of the Government's liability.  As masters of their Complaint, Plaintiffs clearly set out in the first paragraph that the flooding of their neighborhoods was not caused by the failure of levees, but rather by two defects in the MR-GO unrelated to levees: "(1) the destruction of the wetlands surrounding the MR-GO that intensified a huge east-west storm surge that resulted in the inundation of much of New Orleans; and (2) the funnel effect stemming from the MR-GO's faulty design that accelerated the force and strength of the storm surge to lethal proportions."

Throughout the Complaint, Plaintiffs consistently allege that these two fundamental defects in the MR-GO—and not the failure of federal flood control facilities or their inability to control flood waters—were the causes of their damages.  *See, e.g.*, Complaint, ¶¶ 2, 3, 30, 33, 49, 50, 52, 74, 75, 84 94.  Indeed, the Complaint could not be clearer that "[t]he Plaintiffs' losses were suffered *as a direct result of* the Defendants' breaches of their legal duty to adequately design, construct, maintain, and operate the MR-GO." *Id.* at ¶ 6; *see also* ¶ 74 ("but for the Army Corps' negligence, most or all of the severe flooding of Plaintiffs' neighborhoods would not have occurred").  As this Court has noted: "Plaintiffs argue that they seek damages solely for the defalcations of the Army Corps with respect to the MRGO, *not for any failure of any flood*

6

*control project* (Complaint, ¶¶ 1, 6, 10, 76, 91-94), *thus making § 702 c inapplicable."* Order at p. 7 (emphasis added); *see also id.* at p. 15.[2]

The only reason that this issue has arisen is because the Government—desperately trying to extricate itself from its concessions in *Graci v. United States*, 435 F. Supp. 189, 192 (E.D. La. 1977)—now alleges that the MR-GO somehow morphed from a navigable waterway into a flood control project as a result of "levees" allegedly constructed after 1965 pursuant to the LPVHPP. *See* Order at p. 17. The Government took this position for the first time in its Motion to Dismiss. Thus, in drafting their Complaint, Plaintiffs had no reason to believe that Defendants were claiming that "levees" were built along the entirety of the MR-GO after 1965, thereby converting the MR-GO from a non-immune navigable waterway into an immunized flood control facility.

As much as anything else, this sequence of events explains any lack of technical precision with respect to a few random references to "levees" in the Complaint. The term "levees" is used as a generic descriptive, and the Complaint does not define the term "levee" or refer to any technical manual or engineering standards. In fact, the Complaint variously refers to the earthen sides of the MR-GO as "levees," "banks," "structures," and "spoilbanks." *See* Complaint at ¶¶ 73, 78, 79.[3]

---

[2] With stark clarity, the Plaintiffs also alleged that the MR-GO was constructed to be "a navigable waterway." The Government has acknowledged that the purpose of the MR-GO is that of a 'navigation aid,' as opposed to a flood control project," and "[c]onsequently, this action is not barred by any of the immunity provisions of the Mississippi Flood Control Act of 1928 . . . ." Complaint at ¶ 39. On the very immunity issue that the Government (despite its concessions over three decades ago) has chosen to litigate, the Complaint alleges in Paragraph 40 that the MR-GO's status as a navigable waterway, as opposed to an immune flood control project, is an issue foreclosed by the post-Hurricane Betsy *Graci* litigation. *See also id.*, ¶ 99 (Defendants are not immune from civil liability under Section 702c).

[3] In its Order, the Court correctly noted that Plaintiffs had not alleged in the Complaint that "all of the projects, levees, and activities in that area [MR-GO] are flood control projects . . . ." Order at p. 15. Indeed, the Court highlighted the "intense disagreement as to the scope of the 'levees' that were created in the dredging of the MR-GO—are these spoilbanks or actual flood control

On the very issue of whether Plaintiffs concede that the MR-GO is a food control project, this Court, in denying the Motion to Dismiss, observed that Plaintiffs expressly pled to the contrary. *See* Order at p. 7 ("Neither are there allegations that MRGO includes flood control elements, nor that the MRGO became part of the Lake Pontchartrain and Vicinity Hurricane Protection Plan . . . .") Accordingly, the Court has already determined that the clear thrust of the Complaint is a strenuous challenge to any suggestion that the entire MR-GO contained a flood control element at the time of Hurricane Katrina.

### C.  Defendants Misconstrue The Language Of Plaintiffs' Complaint To Create The Illusion Of Plaintiffs' Purported Judicial Admissions

Under Fifth Circuit jurisprudence, statements in pleadings that are open to alternative interpretation cannot constitute judicial admissions because they must be "deliberate, clear, and unequivocal." *Heritage Bank*, 250 F.3d at 329; *see also Greenwell v. Boatwright*, 184 F.3d 492, 498 (5th Cir. 1999) ("Statements become judicial admissions only when they are 'deliberate, clear and unambiguous.'") (citation omitted); *Corland Corp. v. Stephenson*, 967 F.2d 1069, 1074 (5th Cir. 1992) ("[O]nly 'deliberate, clear and unequivocal' statements can constitute conclusive judicial admissions.") (citation omitted). The Government cites no language from Plaintiffs' complaint that amounts to "deliberate, clear and unequivocal" judicial admissions.

Defendants first reference Paragraph 46 where they describe "a portion of the foreshore lying between the Lake Pontchartrain and Vicinity Hurricane Protection Project levees and the MR-GO." Reply Memorandum at p. 6. This statement, however, does not identify where these "levees" were located. Defendants next note a passage from Paragraph 46, stating "[t]his included six miles along the north bank of the MR-GO in the reach which is part of the GIWW

---

projects? Likewise, there are serious questions as to the relationship between the MR-GO and the [LPVPP]." *Id.* at pp. 15-16.

and 18 miles along the south shore of the MR-GO." The word "levee" appears nowhere in this second quote. Simply put, even when considered together, these two excerpts do not even suggest, much less definitively affirm, an admission about the existence of "levees" along any portion of the MR-GO.

Defendants also reference a line from Paragraph 73 where Plaintiffs supposedly alleged "that Katrina's storm surge . . . 'undermined the levees along the MR-GO and the Industrial Canal.'" *Id.* at p. 6. Defendants concede that the relevant portion of the MR-GO is the land-cut segment (Reach 2) from the vicinity of the Parish Road Bridge to the Gulf of Mexico, but there is nothing in this statement reflecting the location of these alleged levees.

Moreover, Defendants blatantly take Plaintiffs' allegations out of context and omit critical language. The relevant text from Paragraph 73 of the Complaint reads: "the MR-GO significantly intensified Katrina's surge height and velocity, contributing to the scouring that undermined *the spoilbanks* and levees along the MRGO and the Industrial Canal." (Emphasis added). The actual text of Plaintiffs' complaint identifies *spoilbanks* and levees without specifying which part of the canal is bounded by levees. Pleading facts in the alternative is expressly authorized by the Federal Rules of Civil Procedure, and "[s]ince the purpose of alternative pleadings is to enable a party to meet the uncertainties of proof, policy considerations demand that alternative pleadings *not be admitted...as an admission of a party-opponent . . . .*" 30B Wright & Miller, Fed. Prac. & Proc. Evid. § 7026 (Interim ed. 2007) (emphasis added).

Defendants' reliance on Paragraph 102 suffers from the same fatal defects. Defendants contend "[t]he same admission appears in paragraph 102; 'floodwalls and/or levees along the MRGO and Industrial Canal' were 'breach[ed] and fail[ed]'." Reply Memorandum at p. 6. Again, nothing in this statement reflects which part of the MR-GO contained the purported

9

levees.  Furthermore, Defendants once again omit crucial parts of the sentence: "The breaches and failures of *the spoilbanks*, floodwalls, and/or levees along the MR-GO and the Industrial Canal . . . were directly and proximately caused by the Army Corps' negligence . . . ." Complaint at ¶ 102 (emphasis added).  Again, this alternative pleading of facts precludes any inference of judicial admissions with respect to levees in the Complaint.[4]

In sum, the *complete and relevant* portions of the Complaint contain no "deliberate, clear and unequivocal" admission by Plaintiffs that there were levees abutting Reach 2 of the MR-GO—much less where they were located, where they failed, or whether they were in fact "levees" authorized by Congress and properly constructed according to the Army Corps' manual pursuant to the LPVHPP.  The Government's gross mischaracterization of the Complaint—like the false assertion in its Motion to Dismiss that the Seabrook lock and dam was built as part of the LPVHPP—is a measure of its desperation.

> **D.     Defendants May Not Rely On Non-Party Statements To Substantiate Their Claim That Plaintiffs' Pleading Contained Judicial Admissions**

Judicial admissions may not be fashioned from statements of non-parties.  *See* 30B Wright & Miller, Fed. Prac. & Proc. Evid. (Interim ed. 2007) § 7026 ("A judicial admission is binding *upon the party making it . . . .*") (Emphasis added).  Thus, in each of the three cases on judicial admissions cited by Defendants, the Fifth Circuit stressed the conclusive nature of judicial admissions *made by a party to the action, only*.  *Morales v. Dept. of Army*, 947 F.2d 766, 769 (5th Cir. 1991) ("'Factual assertions in pleadings are judicial admissions conclusively binding *on the party that made them*.'") (emphasis added; citation omitted); *Davis v. A.G.*

---

[4] Defendants also argue that Paragraph 9 of the Complaint contains a further admission of levees along the MR-GO, but "Paragraph 9 contains only one sentence, stating "[f]ive individuals and a business bring this legal action. The locations of their residences and business are depicted on the map below."  Clearly, there is no "levees" admission here.

10

*Edwards and Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) ("'[F]actual assertions in pleadings are . . . judicial admissions *conclusively* binding on <u>the party that made them</u>.'") (emphasis in the original; underlining added; citation omitted); *White*, 720 F.2d at 1396 ("Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them.")

Defendants reference several documents that they claim support the existence of judicial admissions in the Complaint, including a Declaration of Dr. Paul Kemp, a "Statement of Concerns" prepared for Congress by various distinguished scientists, and the *Preliminary Report on the Performance of the New Orleans Levee System in Hurricane Katrina on August 29, 2005*. *See* Reply Memorandum at pp. 7-9. None of these documents included statements expressly made by Plaintiffs or their counsel.

Furthermore, the Government once again omits critical language—this time any mention of Dr. Kemp's *express and pointed disavowal of any admission related to the ostensible MR-GO levees*. Specifically, Dr. Kemp stated "[m]y use of the term "levees" in this declaration is for ease of reference and discussion, and *should not be construed or interpreted as an opinion as to the legal definition, requirements, or nature of these structures*." Kemp Decl. at p. 3, n. 1 (emphasis added).[5]

### E.   Whether The Purported Levees Qualify For FCA Immunity Is Ultimately A Question Of Law That Cannot Be Established By Judicial Admissions

In the context of whether the MR-GO is a navigable waterway not subject to FCA immunity as determined in the *Graci* litigation or whether the MR-GO morphed into a flood control facility as a part of the LPVHPP is ultimately a question of law that turns in part on a

---

[5] A copy of the relevant pages from Dr. Kemp's Declaration is attached to the Declaration of Pierce O'Donnell as Exhibit A.

resolution of factual issues.  Defendants argue that any mound of soil along the MR-GO placed there by, or under the direction of, the Army Corps is a "levee" immunizing Defendants from liability under the FCA.  Plaintiffs contend that a "levee," for purposes of FCA immunity, (1) must be built in compliance with Army Corps or other relevant engineering standards for constructing levees intended to protect human life and property; and (2) must be erected using funds appropriated by the United States Congress expressly for flood control.

In sum, the nature of the supposed "levees" skirting the southern banks of the MR-GO involves a question of law, and "[i]t is well established that judicial admissions on questions of law have no legal effect."  *Dabertin v. HCR Manor Care, Inc.*, 68 F. Supp. 2d 998, 1000 (N.D. Ill. 1999).  Even where, as here, an issue involves intermixed questions of law and fact, "while the averment may contain certain assumptions as to the underlying facts, it is more in the nature of a legal conclusion, and does not, therefore, constitute an admission."  *Borecki v. Eastern Intern. Management Corp.*, 694 F. Supp. 47, 56 (D.N.J. 1988).  Accordingly, Plaintiffs' statements about the nature of the dirt piles in St. Bernard Parish cannot be construed as judicial admissions.[6]

---

[6] To the extent that the Court deems any of the statements to be judicial admissions, it has the authority to relieve Plaintiffs of such inadvertent concessions.  *See Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 20 (1st Cir. 1997) ("[e]specially at the early stages of litigation, a party's pleading will not be treated as an admission precluding another, inconsistent, pleading."); *Gray v. Derderian*, 365 F.Supp.2d 218, 226 (D.R.I. 2005), ("[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome  . . . ."); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) ("[a] trial judge has discretion whether to accept a judicial admission."); *Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.*, 87 F.Supp.2d 394, 406 (D.N.J. 2000) ( "it is  . . . well-established that trial judges are given broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases."); s*ee also* 30B Wright & Miller, Fed. Prac. & Proc. § 7026 (Interim ed. 2007) ("The trial court possesses discretion to relieve a party from the consequences of a judicial admission.")

It would be manifestly unfair to use against Plaintiffs a handful of words in their Complaint filed without the benefit of discovery and before the Government contended that the MR-GO had

## III. CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Certify for interlocutory appellate review this Court's February 2, 2007 ruling on Defendants' Motion to Dismiss.

Dated: June 13, 2007                                  Respectfully submitted,

**O'Donnell & Associates P.C.**

By: s/ Pierce O'Donnell
Pierce O'Donnell (*pro hac vice*)
550 S. Hope St., Suite 1000
Los Angeles, California 90071
Phone: (213) 347-0290
Fax: (213) 347-0298

**The Andry Law Firm, LLC**

By: s/ Jonathan B. Andry
Jonathan B. Andry (LSBA No. 20081)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile: (504) 585-1788

**Bruno & Bruno**

Joseph M. Bruno (LSBA No. 3604)
David S. Scalia (LSBA No. 21369)
855 Baronne Street

---

somehow morphed into a flood control project after Congress enacted the LPVHPP. Any use of the word "levee" was clearly not intended to convey any technical or legal meaning. Considering the early stage of this litigation, it would be unjust to find that Plaintiffs intentionally surrendered the right to investigate a factual and legal issue so central to their case against Defendants. Plaintiffs therefore respectfully ask that this Court rule that any references to "levees" in the Complaint are not judicial admissions as to the existence of levees adjacent to, adjoining or abutting the MR-GO, or in the alternative, that Plaintiffs are relieved from any evidentiary consequences flowing from their references to levees in the Complaint.

13

New Orleans, Louisiana 70133
Telephone: (504) 525-1335
Facsimile:  (504) 581-1493

**Domengeaux Wright Roy & Edwards LLC**

Bob F. Wright (LSBA No. 13691)
James P. Roy (LSBA No. 11511)
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502-3668
Telephone: (337) 233-3033
Facsimile:  (337) 233-2796

**Fayard & Honeycutt**

Calvin C. Fayard, Jr. (LSBA No. 5486)
Blayne Honeycutt (LSBA No. 18264)
519 Florida Avenue, S.W.
Denham Springs, Louisiana 70726
Telephone: (225) 664-4193
Facsimile:  (225) 664-6925

**Girardi & Keese**

Thomas V. Girardi (*pro hac vice*)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 489-5330
Facsimile:  (213) 481-1554

**Ranier, Gayle & Elliot, LLC**

N. Frank Elliot III
1419 Ryan Street
Lake Charles, LA 70601
Telephone: (337) 494-7171
Facsimile: (337).494.7218

**Levin, Papantonio, Thomas, Mitchell Echsner & Proctor, P.A.**

Clay Mitchell (*pro hac vice*)
Matt Schultz (*pro hac vice*)
316 S. Baylen Street, Suite 600

Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile:  (850) 436-6123

**McKernan Law Firm**

Joseph Jerry McKernan (LSBA No 10027)
John Smith (LSBA No. 23308)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile:  (225) 926-1202

**Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC**

Gerald E. Meunier  (LSBA 9471)
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile:  (504) 528-9973

**Law Office of Elwood C. Stevens, Jr., a Professional Law Corporation**

Elwood C. Stevens, Jr.  (LSBA No. 12459)
1205 Victor II Boulevard
P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile:  (985) 385-4861

**Cotchett, Pitre, Simon & McCarthy**

Joseph W. Cotchett  (*pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

**Law Office of Frank J. D'Amico, Jr. APLC**

Frank J. D'Amico, Jr. (LSBA No. 17519)
Richard M. Exnicios, Esq. (LSBA No. 25666)
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-9561
Fax: 504-525-9522

**Salas & Co., LC**

Camilo K. Salas, III (LSBA No. 11657)
650 Poydras Street, Suite 1650
New Orleans, LA  70130
Telephone: (504) 799-3080
Facsimile:  (504) 799-3085
**Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

I, Pierce O'Donnell, hereby certify that on June 13, 2007, I caused to be served Plaintiffs' Sur-Reply In Support Of Opposition To Defendants' Motion For Certification Of Interlocutory Appeal; Memorandum Of Points And Authorities; Declaration of Pierce O'Donnell with Exhibit A, upon Defendants' counsel, Robin D. Smith, Catherine Corlies, Traci Colquette, and Jim McConnon by ECF and email at robin.doyle.smith@usdoj.gov; catherine.corlies@usdoj.gov, traci.colquette@usdoj.gov, and jim.mcconnon@usdoj.gov

/s/ Pierce O'Donnell