UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES § <br> CONSOLIDATED LITIGATION § <br> § <br> § <br> § <br> PERTAINS TO:  MRGO § <br> § <br> FILED IN:   05-4181, 05-4182, 05-5237, 05-6073, § <br> 05-6314, 05-6324, 05-6327, 06-0225, § <br> 06-0886, 06-2278, 06-2287, 06-4065, § <br> 06-4389, 06-4634, 06-4931, 06-5032, § <br> 06-5159, 06-5161, 06-5260, 06-5786, § <br> 06-5937, 07-1271 § <br> § | CIVIL ACTION <br> NO.  05-4182 "K"(2) <br> JUDGE DUVAL <br> MAG. WILKINSON |

**REPLY MEMORANDUM IN SUPPORT OF
WASHINGTON GROUP INTERNATIONAL, INC'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(c)**

Plaintiffs' opposition (the "Opposition") to the Motion to Dismiss the Complaint (the "Motion"), like the complaint itself (the "Complaint"), is replete with unsupported assertions and conclusory statements that do not address the substance of the arguments that (1) the Court lacks subject matter jurisdiction over an action challenging Congress' decision to replace the lock on the Inner Harbor Navigation Canal ("IHNC"); (2) Plaintiffs have failed to state facts supporting all five elements of a negligence claim against Washington Group International, Inc. ("WGII") under Louisiana law; or (3) any duty WGII may have owed to Plaintiffs did not encompass the risks or harms arising from the alleged acts of the United States Army Corps of Engineers (the "USACE"), the real target of the Complaint.  Granting Plaintiffs' implicit suggestion that the Court take their word that discovery will substantiate their claims and their explicit request that the Court allow yet another amendment to cure the deficiencies in the Complaint would improperly reward Plaintiffs for failing to meet their obligation to plead more than a speculative claim against WGII.

I.   **WGII Is Immune from Liability Under *Yearsley* in the Absence of Any Facts Substantiating Plaintiffs' Conclusory Negligence Allegations**

Tellingly, Plaintiffs do not respond to the substance of WGII's argument that the Court lacks subject matter jurisdiction over the Complaint under *Yearsley v. W.A. Ross Construction Company*, 309 U.S. 18 (1940). Instead, Plaintiffs invite the Court to consider whether, "[b]ased upon the limited scope of documentation provided by WGII in its initial disclosures," WGII will be able to satisfy the requirements of the "government contractor defense" set forth in *Boyle v. United Technologies Corporation*, 487 U.S. 500 (1988), and its progeny. Opp'n at 6-7. But Plaintiffs are not entitled to proceed with this action or with discovery to refute the assertion of a government contractor defense if the Court lacks subject matter jurisdiction over their claims in the first place.[1]

WGII is immune from liability for implementing Congress' decision to enlarge and update the IHNC lock under the Supreme Court's decision in *Yearsley* and this Court's more recent decision in *Reed v. United States*, Civ. Action No. 06-2152, 2007 WL 763742, *3 (E.D. La. Mar. 9, 2007). As WGII argued more fully in the Motion, the *Yearsley* doctrine protects a government contractor from suit, provided that: (1) the authority to carry out the contract "was validly conferred" by Congress; and (2) the "contractor was not negligent" in performing it. Mot. at 5-9 (citations omitted). Both conditions are readily satisfied here.

As to the first prong, Plaintiffs do not dispute Congress' authority to order the IHNC lock replacement project. *See* Compl. at ¶ 40 (alleging that WGII's work was performed under contract with the USACE and pursuant to authorization from Congress under the River and Harbor Act of 1956 and the Water Resources Development Acts of 1986 and 1996). As to the

---

[1] WGII, which worked for the USACE in the East Bank Industrial Area from January 2001 to May 2005, expressly reserved its right to move for summary judgment under the *Boyle* doctrine for this very reason. *See* Mot. at 5 n.2.

second, Plaintiffs blithely assert that they "have made numerous allegations citing WGII's negligence" in the Complaint and that their allegations must be taken as true for the purposes of the Motion.  Opp'n at 2.

Plaintiffs' allegations, as set forth more fully in the Motion and further below, simply recite a laundry list of tasks that WGII performed and summarily conclude that WGII undermined or damaged the levee and/or floodwall and "caus[ed] and/or contribut[ed]" to the failure of those flood protection structures.  Compl. at ¶ 44.  Fairly read, the Complaint alleges only that WGII contracted with and performed work for the USACE near an area that flooded following Hurricane Katrina.  This is the same insufficient allegation the Court found wanting when it dismissed the dredging defendants in *Reed,* and it should likewise dismiss WGII from the Complaint here.

II.     **Plaintiffs Have Failed to Plead Facts Satisfying All Five Elements of a Negligence Claim Under Louisiana Law**

While a complaint need not contain detailed factual allegations, a plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. __, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).  Thus, in order to state a negligence claim under Louisiana law Plaintiffs bear the burden of pleading *facts* demonstrating five separate legal elements:  (1) that the defendant owed a duty to the plaintiffs; (2) that defendant breached that duty; (3) that the conduct in question was a substantial factor of the alleged harm; (4) that the risk and harm caused were within the scope of protection afforded by the duty breached; and (5) actual damages.  *Roberts v. Benoit,* 605 So. 2d 1032, 1051 (La. 1991).  A failure to plead facts substantiating any one of these factors precludes a plaintiff from proceeding with his claim.  *See, e.g., Buxton v. Fireman's Fund Ins. Co.,* 422 So. 2d 647 (La. Ct. App. 3d 1982) (dismissing petition for failure to allege the existence or breach of a duty); *see*

*also Snider v. Pagragan*, 480 So. 2d 1053, 1054 (La. Ct. App. 5th 1985) (dismissing petition for failure to allege facts indicating that risk and harm were within the scope of the duty purportedly breached).

Although the Court must construe a complaint "in the light most favorable to the plaintiff and take the factual allegations contained therein as true," *Reed*, 2007 WL 763742, at *3, Plaintiffs cannot avoid dismissal without pleading "specific facts, not mere conclusory allegations." *McWaters v. FEMA,* 436 F. Supp. 2d 802, 811 (E.D. La. 2006) (citations omitted). Plaintiffs do not measure their allegations against any applicable law; instead, they repeat the same conclusory allegations contained in the Complaint.

Plaintiffs place particular weight on the summary allegations contained in Paragraph 45 of the Complaint, pointing to them as the most explicit assertions "connecting WGII's activities with the failure of the [levee and floodwall bordering the] IHNC." Opp'n at 4.  First, Plaintiffs contend that WGII "knew or should have known that its work was causing damage to the levee and/or flood wall structure and did nothing to correct the problem," or to call that damage to the attention of the "appropriate authorities." Compl. ¶¶ 45(1) and (4). If, as their allegations and arguments suggest, WGII's work was so obviously damaging the levee and/or floodwall, Plaintiffs should have alleged facts describing how that damage would have manifested itself to WGII. They did not.

Second, Plaintiffs assert that WGII failed to comply with certain "procedures" and "regulations and standards" while removing industrial debris from the East Bank Industrial Area. Compl. ¶¶ 45(2) and (3). Neither the Complaint nor the Opposition purports to identify those procedures, regulations, or standards, which is reason alone to disregard these allegations in their entirety. *See, e.g., Klott v. Chapman*, 191 F. Supp. 484, 485 (N.D. Ind. 1961); *accord* 82 C.J.S.

878418v.1

*Statutes* § 433 (2007) ("[W]here statutes are in issue as a standard of ordinary care alleged to have been violated, the specific statutes are material, and must be pleaded.").

Finally, reiterating their implicit suggestion that the Court take their word that discovery will substantiate their claims, Plaintiffs allege that they will prove "any other acts of fault or negligence to be proven upon the trial of the cause." Compl. ¶ 45(5). Plaintiffs have not responded to WGII's argument that this allegation constitutes an impermissible attempt to bookmark the possibility of additional claims. *See, e.g., Snoddy v. City of Marksville*, 702 So. 2d 890, 898-99 (La. Ct. App. 3d 1997) (noting that such open-ended allegations do not "fairly allow a defendant to form a defense" to negligence and strict liability claims and striking them from a petition).

In *Twombly* the Supreme Court unequivocally rejected similarly unsupported allegations, finding that they failed to "raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1965. There, plaintiff alleged numerous background facts about parallel conduct in the telecommunications industry, and asserted that a conspiracy existed among the "Baby Bell" companies to artificially inflate the cost of local telephone and high-speed internet services. The claim turned on plaintiff's ultimate allegation "on information and belief" that the Baby Bells "entered into a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets and [] agreed not to compete with one another." *Twombly*, 127 U.S. at 1963. The Supreme Court affirmed the dismissal of the complaint, holding that Rule 8(a)(2)

> still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.*, 127 S.Ct. at 1965 n.3.[2] Plaintiffs' conclusory allegations in this case should be dismissed for the same reasons.

### III. WGII Does Not Have a Duty to Insure Against All the Risks of Harm Asserted in the Complaint

Plaintiffs argue that WGII breached a duty to "refrain from negligently undermining the floodwalls." Opp'n at 8. Plaintiffs appear to presume that stating a duty and claiming its breach will satisfy their pleading obligations. Not so. Plaintiffs must also demonstrate that the defendant's duty encompassed the type of harm arising from the facts alleged in the complaint. *See Roberts*, 605 So. 2d at 1044-45 (observing that the breach of a duty does not *ipso facto* give rise to liability and noting that the "scope of protection inquiry asks whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff" from the type of harm arising in manner alleged). Plaintiffs have failed this requirement with respect to WGII, since the theory of liability alleged in the Complaint focuses on the actions of entities other than WGII.

---

[2] Unlike the plaintiff in *Twombly,* who did not have access to any discovery when drafting his complaint, these plaintiffs had more than 35 boxes of documents from WGII for more than six months before they filed the Complaint. Notwithstanding that mountain of information about WGII's work for the USACE, Plaintiffs have failed to allege any facts to support their conclusion "on information and belief" that WGII "undermined the integrity of the levee, and/or flood wall along the eastern shoreline of the IHNC/Industrial Canal, abutting the Lower Ninth Ward of Orleans Parish." Compl. ¶ 43.

Pleading "on information and belief" is tolerable in initial pleadings so long as a party has "conduct[ed] an appropriate investigation; . . . it is not a license to . . . make claims . . . without any factual basis or justification." Fed. R. Civ. P. 11 (1993 Advisory Committee Notes at 80 (West 2007 ed.)); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1224 at 301 (3d ed. 2004) ("[S]ince Rule 11 requires that allegations be based on 'reasonable inquiry,' care must be exercised in terms of the pleader having a solid basis for pleading on information and belief.").

WGII respectfully submits that Plaintiffs have greatly exceeded whatever license they had to plead "on information and belief." This was not an initial pleading. It was an amended complaint filed six months after Plaintiffs received a substantial volume of documents from WGII. If there had been any information in those documents to support Plaintiffs' claims – and if Plaintiffs had reviewed those documents as they were obliged to do as part of an appropriate pre-filing investigation – Plaintiffs would have alleged facts to support their wholly conclusory allegations. They did not.

6

The gravamen of Plaintiffs' theory is that the USACE's design, construction, and maintenance of the Mississippi River Gulf Outlet ("MRGO"), Compl. ¶¶ 23-33, magnified the effects of a storm surge caused by Hurricane Katrina at the convergence of the Gulf Intra-Coastal Waterway ("GIWW") and the MRGO waterway, and that the storm surge overwhelmed inadequate levees and floodwalls along those bodies of water, the IHNC, and the Forty Arpent Canal, Compl. ¶ 34. Plaintiffs posit further that the USACE relied on insufficient hurricane strength assumptions and erroneous elevation data when designing the levees and floodwalls, used inappropriate materials when constructing them, and failed to appropriately maintain those flood protection structures in order to prevent their catastrophic erosion, collapse or failure, *see generally* Compl. ¶¶ 59-74. These allegations, as WGII argued in its opening memorandum (*see* Mot. at 16-18), do not implicate anything WGII did or could have done in the East Bank Industrial Area.

Plaintiffs acknowledge "the negligence of others" in their opposition to WGII's motion, but contend that allegations against those unidentified others do not "diminish" the allegations against WGII. Opp'n at 8. But the allegations against WGII cannot be viewed in a vacuum. Because the Plaintiffs have alleged more than one "but-for" cause of damages, the Court must determine whether, as a policy matter, a claim for liability should proceed against WGII in light of *all* the facts alleged. *See Roberts,* 605 So. 2d at 1045 (observing that the scope of protection inquiry requires "logic, reasoning and policy decisions . . . to determine whether liability should be imposed under the particular factual circumstances presented"); *Todd v. La.,* 699 So. 2d 35, 39 (La. 1997) (noting that the "extent of protection owed a particular plaintiff is determined on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms").[3]

---

[3] Needless to say, significant consequences would flow from a rule that a contractor may be liable for the shortcomings of the government agency that hired it. Any reputable contractor would think twice

The pertinent question is whether WGII's alleged failure to "refrain from negligently undermining the floodwalls" while working for the USACE should insure Plaintiffs against the acts or omissions of other entities long before and well after WGII removed industrial debris from the East Bank Industrial Area. Plaintiffs' theory would require WGII to insure against the risks that: (1) the USACE designed, built, and maintained the MRGO waterway in a negligent fashion beginning as many as 60 years ago; (2) Hurricane Katrina would cause a storm surge to converge at the intersection of the defective MRGO waterway and the GIWW, and that the storm surge would overwhelm inadequate levees and floodwalls along the MRGO, GIWW, IHNC, and the Forty Arpent Canal; and (3) the USACE and other entities designed, built, and maintained those flood protection structures in an allegedly deficient manner beginning nearly 100 years ago. WGII respectfully submits that too much else has intervened – "time, space, people, and bizarreness," to borrow a phrase from the Louisiana Supreme Court – to extend any duty WGII might have owed to Plaintiffs to insure against all of these risks. *Roberts,* 605 So. 2d at 1058. Plaintiffs should not be allowed to survive this motion in the vain hope that additional discovery might substantiate their speculative theories of recovery against WGII.

**IV.    Plaintiffs' Transparent Request for Leave to Amend Should Be Denied**

Finally, Plaintiffs argue that if the Court grants the Motion they should be allowed yet another opportunity to amend their Complaint. Opp'n at 9. Rule 15 requires courts to grant leave to amend "when justice so requires." But such leave is "by no means automatic" and a court need not grant relief if doing so would unduly prejudice the nonmoving party. *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992). Courts should be especially wary of

---

(continued…)

> about agreeing to work for the government, and any prudent contractor would build a significant insurance premium into the price it would charge. Both considerations would make it much more difficult for the government to implement important public projects such as the rebuilding of New Orleans.

878418v.1

requests to amend that would increase delay or would substantially alter the nature of the plaintiff's claims. *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (affirming district court's denial of leave to amend where amendment would "unduly prejudice the defendants by increasing the delay and by expanding the allegations beyond the scope of the initial complaint"); *Little*, 952 F.3d at 846 (denial proper because proposed amendment "was not merely clerical or corrective" but "would have established an entirely new factual basis for the plaintiffs' claims"). This is just such a case.

As set forth more fully in the Motion, Plaintiffs have already amended their claims against WGII and substantially altered their allegations against it. *See* Mot. at 2-4. Allowing Plaintiffs yet another bite at the apple would work a significant injustice to WGII, and violate the plain language of the Court's last Case Management Order. *See* CMO No. 4, § II(A) ("the deadline for amending pleadings is now deemed lapsed, and only answers and responsive motions may now be filed without leave of Court").

Moreover, granting Plaintiffs another opportunity to alter their allegations against WGII would upset the ambitious timetable underlying this consolidated litigation – a timetable that Plaintiffs themselves requested, *see, e.g.*, Letter from J. Bruno to Judge Duval (Feb. 9, 2007) (arguing for class-certification hearing to occur in September 2007) (copy attached hereto as Exhibit A) – and would have severe effects on WGII's ability to respond properly to rapidly approaching deadlines. Accordingly, the Court should deny Plaintiffs' request for leave to amend their Complaint.

## CONCLUSION

For the foregoing reasons, WGII respectfully requests that the Court grant the Motion and dismiss all claims against WGII for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/Heather S. Lonian
William D. Treeby, Bar No. 12901
John M. Landis, Bar No. 7958
Heather S. Lonian, Bar No. 29956
STONE PIGMAN WALTHER WITTMANN LLC
546 Carondelet Street
New Orleans, LA 70130
Phone: 504-581-3200
Fax: 504-581-3361

Adrian Wager-Zito
Julia E. McEvoy
Christopher R. Farrell
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: 202-879-3939
Fax: 202-626-1700

George T. Manning
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309-3053
Phone: 404-521-3939
Fax: 404-581-8330

*Attorneys for Defendant*
Washington Group International, Inc.

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Reply Memorandum in Support of Washington Group International, Inc's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c) has been served upon all counsel of record through the Court's CM/ECF system or by placing same in the United States mail, postage prepaid and properly addressed, this 11th day of June, 2007.

/s/Heather S. Lonian

878418v.1