UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATRINA CANAL BREACHES § | | CIVIL ACTION |
| CONSOLIDATED LITIGATION § | | NO.   05-4182 "K"(2) |
| § | | JUDGE DUVAL |
| § | | MAG. WILKINSON |
| _____ § | | |
| § | | |
| PERTAINS TO: § | | |
| § | | |
| INSURANCE CASES § | | |
| _____ § | | |

**OPPOSITION TO STATE FARM'S MOTION TO QUASH DEPOSITION**
**OF ALEXIS KING AND FOR PROTECTIVE ORDER**

NOW INTO COURT, through undersigned counsel, come Plaintiffs in the above referenced matters, who respectfully oppose the defendant State Farm Fire and Casualty Company's (hereinafter "State Farm") second Motion to Quash the Deposition of Alexis King and for Protective Order, for the following reasons, to wit:

**I.**

**OVERVIEW**

On May 9, 2007, Plaintiffs properly noticed the deposition of Alexis King, a State Farm claims manager identified as having responsibility and oversight of catastrophe claims in many states for many years.  State Farm unsuccessfully moved to quash this deposition citing relevancy issues.  State Farm now seeks to quash Ms. King's deposition because she will be

1

instructed to adopt a "blanket assertion" of her Fifth Amendment privilege against self-incrimination to any questions posed to her. (See Defendant's Exhibit B - Affidavit of Joseph M. Holomon, ¶ 5).

This court should not quash the deposition because a prophylactic blanket of Fifth Amendment privilege is inappropriate. The scope of inquiry in Ms. King's deposition will focus on overall catastrophe claims handling practices within the State Farm organization and the interaction between the various groups as they relate to the catastrophe claims handling practice in Louisiana post-Hurricane Katrina. The responses will not require Ms. King to provide incriminatory admissions.

II.

**MS. KING IS NOT ENTITLED TO A "BLANKET ASSERTION"
OF THE FIFTH AMENDMENT PRIVILEGE**

It is well settled that a person can assert a privilege against compulsory self-incrimination when he "reasonably apprehends a risk of self-incrimination." Wheling v. Columbia Broadcasting System, 608 F.2d 1084, 1087 (5th Cir. 1979). However, this privilege is not absolute.

The right against self-incrimination extends to any compelled testimony that may be used directly against the witness in a subsequent criminal prosecution or any compelled testimony that may lead to the discovery of any evidence later used against him in a criminal prosecution. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); Malloy v. Hogan, 378 U.S. 1, 6, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653 (1964). A witness may only invoke the privilege if he *reasonably* believes that the information sought could lead to criminal prosecution of him. Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472,

478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 (1972). This belief cannot be speculative or the product of mere conjecture; it must be supported by reason or cause. Marchetti v. United States, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968). Hoffman, 341 U.S. at 486, 71 S.Ct. at 818.

Before a witness is entitled to remain silent, there must be a ***valid*** assertion of the Fifth Amendment privilege. Pillsbury Co. v. Conboy, 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983) (emphasis added). A blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions. The Fifth Amendment privilege against self-incrimination does not exonerate a witness from answering solely upon the witness' own estimation of whether his answers would tend to incriminate. Hoffman, 341 U.S. at 486-88, 71 S.Ct. 818-19. Rather, the Court must determine whether the witness' silence is justified and must make this determination upon the particular facts of the case. Zicarelli, 406 U.S. at 480; United States v. Melchor Moreno, 536 F.2d 1042, 1046-47 and 1050 n. 10 (5th Cir. 1976).

Under the Wehling test, a court must ordinarily make two inquiries to determine whether a witness is entitled to assert the privilege and refuse to respond to questioning:

*First*, the court must determine whether answers to the questions might tend to reveal that the witness has engaged in criminal activities. If the answers could not be incriminatory, the witness must answer. Zicarelli, 406 U.S. at 480.

*Second*, if answering the questions might incriminate the witness, the court must ask whether there is a risk that the witness will be prosecuted for the criminal activities that his testimony might touch on, not simply a remote and speculative possibility. In re Corrugated Container Anti-Trust Litigation, 620 F.2d 1086 (5th Cir. 1980);

In sum, the witness is not the exclusive judge of the right to exercise the Fifth Amendment privilege in a civil case. The privilege is asserted on a question-by-question basis, with the Court maintaining the authority to review whether the assertion of this privilege is reasonable.

As will be shown below, the scope of inquiry in Ms. King's deposition will focus on Sate Farm's overall catastrophe claims handling practices, not the specific conduct Ms. King undertook.

### III.

### THE DEPOSITION TESTIMONY OF ALEXIS KING WILL DISCLOSE RELEVANT, NON-PRIVILEGED INFORMATION CONCERNING STATE FARM

As set forth in the previous motion papers concerning this deposition, Ms. King possesses a substantial amount of relevant, non-privileged information concerning the catastrophe claims operation for State Farm's Corporate Catastrophe Services organization.  Ms. King has been involved with the catastrophe claims operations in many states, which indicates that State Farm utilizes a system of claims adjustment procedures that is consistent throughout many states.  In particular, such conduct is relevant to show that State Farm's claims handling conduct is consistent with a pattern or routine practice that is "relevant to prove that the conduct of [State Farm] on a particular occasion was in conformity with the habit or routine practice." Federal Rules of Evidence, Rule 406.  McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,, 894 F.2d 1482, (5th Cir. 1990).

State Farm's overall catastrophe claims handling practice (as exhibited by their operations in other states) dictated patterns of conduct in State Farm's response to Katrina claims in southern Louisiana.   State Farm's catastrophe response obviously centers initially on the

assignment of adjusters and engineers to evaluate claims.  It is unlikely that such responses were formulated and designed by the one Claims Team Manager assigned to southern Louisiana as State Farm would have this Court believe; in any event, it is fair game for discovery.

Further, plaintiffs are entitled to examine State Farm policies regarding conflicting reports, and its policy regarding the denial of claims.  The claims handling procedures of State Farm are directly relevant to the manner in which loss adjustment was instituted and resolved. Ms. King likely has knowledge about how claims handling practices in Louisiana compare to her practices in Mississippi, including whether third-party engineers and adjusters worked in both states and/or, if they did, what policies and procedures would have governed their conduct. Similarly, plaintiffs are entitled to know whether her counterparts in Louisiana took orders from the same supervisor(s) she did.

Plaintiffs are entitled to know whether the Catastrophe Claims Team Managers discussed overall Katrina strategy and how that strategy compared to catastrophe responses in other states. Based upon allegations that State Farm failed to adequately adjust the Katrina claims presented, it is material to the investigation of this allegation to determine the overall claims handling practices of the defendant; and then evaluate any deviations from the normal investigation process.

### IV.

### MS. KING CAN ONLY AVOID ANSWERING QUESTIONS THAT ARE INCRIMINATORY

Plaintiffs intent to pose questions to Ms. King that concern State Farm's overall catastrophe claims handling practices.  These questions do not expose Ms. King to possible criminal prosecution because the answers will not divulge involvement in criminal activity.

Plaintiffs are entitle to pose each such question to Ms. King for answer. If there is the possibility of criminal exposure by responding, Ms. King bears the burden of proving to this court that she is entitled to invoke her Fifth Amendment privilege.

Plaintiffs understand there is a difference between a question that seeks information concerning State Farms's catastrophe claims handling procedure, and a question that requires Ms. King to disclose what *she* did in relation to those claims handling procedures.

As this Court noted in Document 67 in the matter of Leo Mitchell v. LA. Law Enforcement Agency, et. al., USDC, EDLA, No. 01-877 "N"(2), before a claim of privilege can be sustained it must be "evident from the implications of the question...that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Id., at 3.[1]

In the present case, Plaintiffs intend to propound questions that concern State Farm's overall catastrophe claims handling procedures. This is an innocuous inquiry that does not lend itself to the type of readily apparent incriminatory response necessary that avoid the deposition altogether. It is for this very reason that it is incumbent on Ms. King to specify how a particular answer would be injurious. As the Supreme Court asserted in Conboy, "questions do not incriminate; answers do." Id., at 608, 103 S.Ct. 613.

Therefore, the Court should require Ms. King to appear at deposition. Plaintiffs fully expect to propound their questions in such a way that Ms. King will be providing responses that

---

[1] In Mitchell, the plaintiff's competency was in doubt and unresolved in a pending state criminal proceeding with the potential of a death penalty. The court found that here was "considerable danger" in the plaintiff jeopardizing his 5th Amendment privilege and thus stayed the proceedings because plaintiff's ability to prosecute his civil case was impaired. In this case, Ms. King labors under no such impairment and is ably represented by both State Farm's assigned counsel and independent counsel. As such, the determinative facts found in Mitchell do not substantiate the blanket assertion of 5th Amendment privilege by Ms. King.

tend to incriminate her. For any questions that raise the specter of doubt, Ms. King will be able to preserve her privilege for later review by the Court to determine the reasonableness of the assertion of privilege.

V.

**A PROTECTIVE ORDER IS NOT WARRANTED**

Under the Federal Rules of Civil Procedure, relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. Miller v. Doctor's General Hospital, 76 F.R.D. 136 (W.D.Okl.1977). Discovery rules are to be accorded a broad and liberal treatment. Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Rule 26( c) provides in pertinent part:

> "Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . . "

Under the liberal discovery principles of the Federal Rules, a party is "required to carry a heavy burden of showing why discovery was denied." Blankenship v. Hearst Corp., 519 F.2d 418 (C.A.Cal. 1975); General Dynamics Corp. v. Selb Manufacturing Co., 481 F.2d 1204 (Eighth Cir. 1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974).

"Good cause" within the meaning of Rule 26( c) contemplates a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." General Dynamics Corp., supra, at 1212. The party requesting a protective order must make a "specific demonstration of facts in support of the request as opposed to conclusory or speculative

statements about the need for a protective order and the harm which will be suffered without one." In re PE Corp. Sec. Litig., 221 F.R.D. 20, 26 (D.Conn.2003); Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 412 (M.D.N.C.1991); Gulf Oil v. Bernard, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

It is highly unusual for a court to prohibit the taking of a deposition altogether and "absent extraordinary circumstances, such an order would likely be in error." Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979). State Farm suggests that the Wehling case supports the entry of a protective order precluding the deposition. (Def. Mot. at 5) (citing Wehling v. Columbia Broad. Sys., 608 F.2d 1084 (5th Cir. 1979). But in Wehling, the plaintiff/deponent had been subpoenaed to testify before a grand jury on five occasions, id. at 1086, and the dramatic step of postponing the deposition was required to avoid dismissing the case entirely (which would have violated the plaintiff's due process rights). Id. at 1087-88.

In the present case, the burden to preclude the taking of the Alexis King's deposition rests upon the shoulders of State Farm. As discussed above, State Farm has failed to articulate any "extraordinary circumstances" that satisfy its burden.[2]  Conversely, the plaintiffs have demonstrated a substantial, relevant need to obtain Ms. King's deposition testimony.

Therefore, State Farm's Motion for Protective Order should be denied.

---

[2] Notably, the affidavit filed by Ms. King's personal counsel, Mr. Holloman, rests on unsupported hearsay. He concedes that the Attorney General for the State of Mississippi informed State Farm that his investigation had concluded, (Def. Mot., Ex. B ¶ 4), but he then relies on uncited "quotes" in the news media "indicating the contrary." (Id.)  He also refers to a "reinstituted civil suit," but there is no effort to relate that civil suit to any privilege against *criminal* incrimination Ms. King might enjoy. This is not the "particular and specific demonstration of fact" required to establish good cause under Rule 26(c).

## VI.
## **CONCLUSION**

Despite being properly noticed, State Farm now seeks to completely preclude the taking of this Alexis King's deposition for the second time. In so moving, State Farm carries the heavy burden of showing why this discovery must be denied, and must demonstrate extraordinary circumstances to meet this burden.

In it's Motion for Protective Order, State Farm alleges that Ms. King will assert a blanket privilege against self-incrimination to all questions propounded to her. However as shown above, Plaintiffs have set forth just a few circumstances which indicate that such a blanket assertion is improper.

Plaintiffs anticipate propounding questions that seek information concerning State Farms's overall catastrophe claims handling procedure, and a question that arguably requires Ms. King to disclose what *she* did in relation to those claims handling procedures will be met by her assertion of 5th Amendment privilege. Any dispute regarding the propriety of the assertion of privilege will then be the subject of review by the Court.

Such a procedure clearly serves the best interests of all the parties involved while still accommodating the broad and liberal discovery rules established by the Federal Rules of Civil Procedure. In contrast, the complete preclusion of Alexis King's deposition is not substantiated by any extraordinary circumstances set forth by State Farm.

Therefore, State Farm's Motion for Protective Order must be denied and Ms. King ordered to appear at deposition.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**

/s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS LIAISON COUNSEL
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775

**INSURANCE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

s/ Calvin C. Fayard, Jr.
Calvin C. Fayard, Jr. (La. Bar #5486)
INSURANCE PSLC LIAISON COUNSEL
Fayard & Honeycutt, APLC
519 Florida Avenue, SW
Denham Springs, LA 70726
Tel: (225) 664-4193
Fax: (225) 664-6925
calvinfayard@fayardlaw.com

For

**INSURANCE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

John N. Ellison
James M. Garner
Joseph J. McKernan
Drew A. Ranier
Calvin C. Fayard, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 19th day of June, 2007.

/s/ Joseph M. Bruno

Joseph M. Bruno