**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | § | MAG. WILKINSON |
| | § | |
| FILED IN: | § | |
| 06-1885, 06-4634, 06-4931, 06-5042, | § | |
| 06-5159, 06-5163, 06-5771, 07-0206, | § | |
| 07-0647, 07-1284, 07-1286, 07-1288, | § | |
| 07-1289 | § | |
| | § | |
| PERTAINS TO: LEVEE | § | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | § | |

**DEFENDANT UNITED STATES OF AMERICA'S OPPOSITION TO LEVEE PLSC'S MOTION TO COMPEL DISCOVERY FROM THE UNITED STATES**

Pursuant to Local Rule 7.5E, Defendant United States of America hereby files its Opposition to Levee PLSC's Motion to Compel Discovery.

**I. INTRODUCTION**

The Levee PLSC's motion to compel discovery from the United States should be summarily denied because it was filed before counsel for the Levee PLSC had discharged their obligation to confer in good faith with counsel for the United States in an effort to resolve the discovery dispute without the Court's intervention.  Further, in the event that the Court were to

reach the merits of the Levee PLSC's motion to compel, it should be denied because the United States has fully responded to the Levee PLSC's discovery requests.

Counsel for the United States received a letter dated May 18, 2007, requesting the scheduling of a Local Rule 37.1 conference with counsel for the Levee PLSC, and did participate in a telephonic conference with counsel for the Levee PLSC on May 30, 2007.  During that telephonic conference, counsel for the two sides discussed some of the concerns set forth in the letter dated May 18, 2007, but counsel for the Levee PLSC did not raise or attempt to discuss other matters set forth in the letter.  As a result of the conference call, the United States understood that the issues had been narrowed and that several matters raised in the Levee PLSC's letter were no longer at issue.  Additionally, counsel for the United States agreed to explore possible compromises regarding certain other issues.

With no further consultation, counsel for the Levee PLSC filed the motion to compel on May 31, 2007, one day after the telephonic conference had taken place.  The Levee PLSC's motion sought (1) to compel discovery concerning certain matters which counsel for the Levee PLSC never even attempted to discuss or resolve during the May 30 conference; (2) to compel discovery regarding certain other matters which counsel for the United States understood to be resolved as a result of that conference; and (3) to compel discovery concerning certain matters as to which counsel for the United States was exploring possible compromises.

Notwithstanding that counsel for the Levee PLSC had short-circuited the process by precipitously filing the motion to compel, counsel for the United States continued to explore the possibility for compromise, and toward that end sent counsel for the Levee PLSC a letter dated June 15, 2007, proposing that the parties resolve some of the outstanding issues.  A copy of this

letter is attached hereto as Exhibit 1.  To date, counsel for the Levee PLSC has not responded.

The Levee PLSC's motion and accompanying memorandum in support thereof cites no legal authorities other than simply paraphrasing Fed.R.Civ.P. 36(a).  Additionally, the motion and supporting memorandum provide no legal argument or analysis.  Despite the lack of argument or analysis, the Levee PLSC challenges the overwhelming majority of the United States' discovery responses consisting of a collective total of 70 challenges to our responses.  However, the Levee PLSC has not challenged any of the United States' objections to the discovery requests.

## II.  ARGUMENT

### A.  THE LEVEE PLSC DID NOT CONFER IN GOOD FAITH PRIOR TO FILING THE MOTION TO COMPEL

There were several issues raised in the Levee PLSC's motion which were either never discussed by counsel for the Levee PLSC in the May 30, 2007, conference call, or which concern matters that counsel for the Levee PLSC indicated were no longer at issue.  The motion to compel should be summarily denied with respect to these discovery requests, which are discussed separately below, because the Levee PLSC has not conferred in good faith with counsel for the United States as required by the rules.  See Childress v. Darby Lumber, Inc., 357 F.3d 1000, 1010 (9th Cir. 2004)(upholding district court's denial of defendant's motion to compel because the parties had not conferred on all disputed issues before the motion was filed); Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 171 (D.Nevada 1996)("in order to bring a proper motion to compel under Rule 37(a)(2)(B), a moving party must personally engage in two-way communication with the non-responding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention.").

3

As acknowledged by the Levee PLSC in its Local Rule 37.1 Certificate, counsel for the United States agreed at the May 30, 2007, teleconference to look into several of the issues raised by the Levee PLSC and get back to them in an attempt to resolve matters.  However, the Levee PLSC filed the motion to compel the next day on May 31, 2007, before the United States could get back to them on these issues.  In fact, the motion was filed 15 days prior to the deadline for filing motions to compel, which was June 15, 2007, pursuant to CMO 4.  Nevertheless, the United States sent a letter to the Levee PLSC in an attempt to resolve several of the outstanding discovery issues that are the subject of this motion.  Because the Levee PLSC filed the motion prematurely and never even attempted to confer with regard to numerous matters, the Levee PLSC has not complied with Fed. R. Civ. P. 37(a)(2)(B) or Local Rule 37.1E.  Additionally, the Levee PLSC has wasted the court's time on matters that may yet be able to be resolved on their own.  Therefore, the motion to compel should be summarily denied.

**B.  REQUESTS FOR ADMISSION ("RFAs")**

The Levee PLSC's Motion to Compel Discovery was filed pursuant to Fed. R. Civ. P. 37(a)(1) and 37(a)(2)(B).  However, by its express terms Rule 37(a)(2)(B) only applies to circumstances in which either a deponent fails to answer a question propounded under Rules 30 or 31, a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a), a party fails to answer an interrogatory under Rule 33, or a party fails to permit inspection pursuant to a Rule 34 request.  Fed.R.Civ.P. 37(a)(2)(B).  Rule 37(a)(2)(B) simply does not provide for a Motion to Compel Discovery with respect to requests for admission.  Therefore, the Levee PLSC's Motion must be denied with respect to the requests for admission.

For many of the requests for admission as to which the Levee PLSC challenges the

United States' response, the Levee PLSC simply states that either the United States should admit the requests or provide an explanation of the United States' denial of the requests.  However, the proper ground for challenging a denial of a request for admission is FED.R.CIV.P. 37(c)(2), which provides that a party may seek costs that it incurred in proving a fact that was not admitted.  But this occurs after trial, as "there is simply no provision of the Federal Rules allowing a party to litigate a denied request for an admission at this stage of the proceedings." Foretich v. Chung, 151 F.R.D. 3, 5 (D. D.C. 1993); see also United States v. Operation Rescue Nat'l, 111 F. Supp.2d 948, 968 (S.D. Ohio 1999); Lakehead Pipe Line, 177 F.R.D. at 457-58. Additionally, "a qualified denial or admission cannot require a court to inquire into the *bona fides* of the person uttering it.  The cost shifting remedy provided by FED. R. CIV. P. 37(c)(2) suffices.  Hence, the validity, or *bona fides*, of a qualified answer to a request for admission must await the trial to see if the party forced to prove what was not admitted can meet the requirements of that rule."  Nat'l Semiconductor v. Ramtron Intern. Corp., 265 F. Supp.2d 71, 74-75 (D.D.C. 2003).  Therefore, the Levee PLSC's Motion to Compel should be denied with respect to the requests for admission.

The one citation that the Levee PLSC has submitted in support of its motion is the fact that Fed.R.Civ.P. 36(a) allows requests for admission that relate to the "application of law to fact."  In the United States' responses to the requests for admission, the United States included General Objection No. 12 which objected to the extent that the requests for admissions sought legal arguments and legal conclusions.  Additionally, the United States specifically objected to several requests for admission on the basis that they called for legal conclusions (RFA 2, 5, 22, 44, and 45).  Requests that seek a pure conclusion of law are improper.  Lakehead Pipe Line Co.

Inc. v. American Home Assurance Co., 177 F.R.D., 454, 458 (D. Minn. 1997) ("a request for admission which involves a pure matter of law, that is, requests for admissions of law which are related to the facts of the case, are considered to be inappropriate.")  Despite the fact that the United States made these appropriate objections to requests that called for legal conclusions, the United States responded to each request for admission by either denying the request or explaining that it had insufficient information to admit or deny the request.

### 1. Requests for Admission 9-14

RFA Numbers 9 through 14 are variations of the same request to admit that "[m]embers of the Class [or each Sub-Class] are so numerous that joinder of all such persons and entities in this action is impracticable."  For each of these requests, the United States' response refers to General Objection Nos. 11 and 12, and denies the requests.[1]  The Levee PLSC argues that the U.S. is in possession of information regarding the number of persons affected locally by Hurricane Katrina and that the United States is under a good faith requirement to explain its denial that joinder of all claims in the class or subclass is impractical.  The Levee PLSC's argument is tantamount to challenging the United States' denial, and as explained above, a motion to compel discovery is not the proper vehicle or time to challenge a denial to a request for admission.  This can only be done after trial pursuant to Rule 37(c)(2).  Additionally, contrary to the Levee PLSC's argument that the United States is under a good faith obligation to explain its denial, Rule 36 does not require an explanation of a denial of a request for admission. The Rule states that "[t]he answer shall specifically deny the matter or set forth in detail the

---

[1]  The United States' Responses to the Levee PLSC's first set of discovery requests are attached to the Levee PLSC's Motion as Exhibits 1, 2, and 3.

reasons why the answering party cannot truthfully admit or deny the matter." Fed.R.Civ.P.

36(a). There is no specific requirement that a denial be explained. As noted by Magistrate

Wilkinson in Camp v. Progressive Corp., 2003 WL 21939778 (E.D.La. 2003), "[w]hen

responding to requests for admissions, explanation generally is unnecessary." Camp 2003 WL

21939778, quoting 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2258, at 546-

547, citing United Coal Cos. v. Powell Constr. Co., 839 F.2d 958, 968 (3d Cir. 1988).

Notwithstanding this fact, the United States has provided an explanation for each of its denials to

the requests for admission in its answers to Interrogatory No. 1 which asks for an explanation of

the basis of any request that was denied or qualified. As the United States explained in its

answers to Interrogatory No. 1 with respect to Requests for Admission 9-14, joinder of all claims

in the proposed class or sub-classes will not be impracticable because the court will only have

jurisdiction over those claimants who have exhausted their administrative remedies, and it will

not be impracticable to join them since the United States will have the name and address of each

entity that filed a proper administrative claim with the U.S. Army Corps of Engineers (Corps).

## 2. Requests For Admission Nos. 15-19

Although these RFAs were referenced in the Levee PLSC's letter of May 18, 2007,

counsel for the Levee PLSC indicated in the teleconference that they were no longer at issue.

Therefore, the motion to compel should be summarily denied with respect to them.

Request for Admission Nos. 15-19 all deal with the geographic dispersal issue and are

variations of the same request to admit that "[m]embers of the Class [or Sub-classes] are so

geographically dispersed that joinder of all such persons and entities in this action is

impracticable." In the responses, the United States referred to General Objection Nos. 11 and 12

and stated that it "has made a reasonable inquiry and the information known or readily obtainable by the United States is insufficient to enable it to admit or deny this RFA."  In the Levee PLSC's memorandum it argues that the United States has been presented with tens of thousands of SF-95s which each identify a unique location where the injury, loss of property, or death allegedly occurred, and that the United States knows or has access to information regarding the geographic dispersal.  The United States explained in its answers to Interrogatory No. 1 regarding these requests for admission that it has not completed its investigation of the facts relating to this action, has not interviewed all potential witnesses, and has not completed discovery.  The United States also explained in its discovery responses that the Corps has received over 300,000 SF-95s for alleged Hurricane Katrina losses, and they keep coming in. The United States has not yet  completed the processing and review of the SF-95s that have been submitted to date, let alone had time to analyze the geographic dispersal of these claims. Therefore, the United States appropriately responded that it had insufficient information to admit or deny these requests.

### 3.  <u>Requests For Admission Nos.  20-22, and 25</u>

Because these RFAs were not addressed by the Levee PLSC in the conference call, the motion to compel should be summarily denied with respect to these requests.

The United States denied RFAs 20-22, and as explained above, this is not the appropriate forum to litigate the propriety of these denials.  The United States' response to RFA 25 indicates that, without waiving our objections, the United States has made a reasonable inquiry and the information known or readily obtainable is insufficient to enable it to admit or deny that "each member of the Class, as defined, has suffered some damage as a result of inundation associated

with Hurricane Katrina." As previously explained, the United States has not completed its investigation of the facts relating to this action, has not interviewed all potential witnesses, has not completed discovery, and has not finished processing and reviewing the hundreds of thousands of SF-95s that have been filed.

### 4. Requests For Admission Nos. 26-36

The United States denied RFAs 26-36, and as explained above, this is not the appropriate forum to litigate the propriety of these denials. Additionally, the United States adequately explained the basis of these denials in our answer to Interrogatory No. 1.

### 5. Requests For Admission Nos. 37-42

Because these RFAs were not addressed by the Levee PLSC in the conference call, the motion to compel should be summarily denied with respect to them.

The United States denied RFAs 37-42, and as explained above, this is not the appropriate forum to litigate the propriety of these denials.

### 6. Request For Admission No. 43

Because this RFA was not addressed by the Levee PLSC in the conference call, the motion to compel should be summarily denied with respect to it.

The United States denied RFA 43, and as explained above, this is not the appropriate forum to litigate the propriety of this denial.

### 7. Requests For Admission Nos. 44-45

The United States denied RFAs 44-45, and as explained above, this is not the appropriate forum to litigate the propriety of this denial.

### 8.  **Requests For Admission Nos. 46-49**

Because these RFAs were not addressed by the Levee PLSC in the conference call, the

motion to compel must be summarily denied with respect to them.

The United States denied RFAs 46-49, and as explained above, this is not the appropriate

forum to litigate the propriety of these denials.

### C.  **REQUESTS FOR PRODUCTION ("RFPs")**

The Levee PLSC states in its memorandum that the "USA has produced no documents

whatsoever."  Of course, this is false.  The USA has provided the SF-95s for the named plaintiffs

who have submitted SF-95s to the Corps.  The United States has also provided copies of the

authorizations to release these SF-95s.  On June 15, 2007, the United States produced hard drives

containing approximately 400 Gigabytes (GB) of documents and data underlying the IPET

report. Additionally, on June 15, 2007, the United States opened our review and select document

repository in New Orleans, which the Plaintiffs' counsel have begun to review.

### 1.  **Request For Production No. 1**

This request seeks "a copy of every Form 95 that sets forth a claim by any Louisiana

citizens against the United States Army Corps of Engineers for losses arising in connection with

Hurricane Katrina."  In the United States' response, the United States objected on the basis that

the request is overly broad and unduly burdensome, and that it seeks information protected by

the Privacy Act, 5 U.S.C. §552a.  The Levee PLSC has not challenged our objections.  In fact, in

the Levee PLSC's responses to the Levee Defendants' First Set of Joint Class Certification

Interrogatories and Requests for Production of Documents, the Levee PLSC "adopt the

Government's objections to the extent that this Interrogatory seeks Form 95s from putative class

members not yet Plaintiffs in this litigation." <u>See</u> Levee PLSC's Response to Interrogatory No. 24 and Response to Request for Production No. 1. (copy of excerpts attached hereto as Exhibit 2). The Levee PLSC cannot seek to compel disclosure of documents (SF-95s) from the United States for which the Levee PLSC has itself adopted the United States' objections in responding to the Levee Defendants' requests for the same documents. <u>See</u> <u>In re Papst Licensing GmbH Patent Litigation</u>, 2001 WL 797315 (E.D.La.)(J. Wilkinson).

As our discovery responses make clear, the United States has produced the SF-95s submitted to the Corps by or on behalf of the proposed class representatives because the proposed class representatives themselves requested them and because the United States received written authorization to disclose them to certain other parties in this litigation. The United States has not produced any other SF-95s. As explained in our letter to the Levee PLSC (Exhibit 1), the SF-95s contain personal and confidential information that was requested by the Corps for the purpose of allowing it to evaluate administrative claims submitted by individual claimants. In addition to names and addresses, many of the SF-95s (or other written notifications of an incident and supplemental materials submitted therewith) contain telephone numbers, birth dates, social security numbers, copies of drivers licenses and military identification cards, copies of birth and death certificates, copies of medical records, and details concerning visits to doctors and mental health professionals. This information is protected by the Privacy Act, 5 U.S.C. § 552a, and is extremely sensitive, private, and confidential in nature.

Courts have long recognized that interests of third parties in privacy may call for an extra measure of protection even where the information sought is not privileged. <u>See</u> <u>In Re Sealed Case (Medical Records)</u>, 381 F.3d 1205, 1215 (D.C. Cir. 2004). Legitimate privacy interests are

among the proper subjects of Fed. R. Civ. P. 26(b)(2) & (c)'s protection.  Id.  Although the

Privacy Act does not create a qualified discovery privilege, the fact that a document is subject to

the Act is not irrelevant to how discovery should proceed.  Id. at 1215-1216, citing Laxalt v.

McClatchy, 809 F.2d 885, 889 (D.C. Cir. 1987).  The court should prevent unnecessary

intrusions into legitimate privacy interests, and must balance the privacy interests of the

claimants versus the Plaintiffs' need for the information.  See Id. at 1216-1217; Perry v. State

Farm Fire & Cas. Co., 734 F.2d 1441, 1447 (11th Cir. 1984) (requests for a court order should be

evaluated by balancing the need for the disclosure against the potential harm to the subject of the

disclosure).

        In Sonderegger v. U.S. Dep't of the Interior, 425 F. Supp. 847 (D.Idaho 1976),

individuals who filed claims in the aftermath of the Teton Dam flood disaster sought an

injunction preventing the Department of Interior from publicly disclosing the names of the

claimants, the amount claimed, the amount paid to the claimant, and the category for which the

payment occurred.  The court held that the names of claimants and the amount they claimed were

protected by Exemption 4 and Exemption 6 of the Freedom of Information Act, and could not be

disclosed.  Id. at 856.  The court also concluded that to disclose the claimant's name, amount of

claim, amount paid, and the category of payment would be a clearly unwarranted invasion of

privacy that should not be condoned.  Id.  The court did find that access to categories of amount

paid and category of payment warrant public interest in disclosure where guarantees sufficient to

safeguard privacy exist.  The court therefore held that the amount paid and category of payment

may be disclosed with personal references and identifying information deleted.  Id. at 856.

        Although the case at bar is not a Freedom of Information Act case, it has some

similarities to the Teton Dam situation addressed in <u>Sonderegger</u>.  Both cases involve requests

for copies of administrative claims filed for damages from a flood disaster.  Turning over the

personally identifying and private information in the SF-95s in the case at bar would be an

unwarranted intrusion into the privacy interests of hundreds of thousands of citizens.

      The plaintiffs have not demonstrated a need for the over 300,000 SF-95s, particularly the

private information in these claims forms.  Any need the Plaintiffs may have must be weighed

against the significant and legitimate privacy interests of the hundreds of thousand of claimants

who have submitted confidential and private information on their SF-95s and attached materials.

In the memorandum, the Levee PLSC argues that redacted documents or disks could be

produced or the United States could produce unredacted copies of the SF-95s to the Levee PLSC

subject to a return if class certification is denied.  Neither of these options are suitable for the

reasons explained below.  However, as explained in our letter to the Levee PLSC (Exhibit 1), the

United States can provide certain aggregate information from the SF-95s while protecting the

privacy and confidentiality of the hundreds of thousands of claimants.

      The task of redacting the personally identifying information from each of the over

300,000 SF-95s, including the materials attached to the SF-95s, would be very costly, time-

consuming, and burdensome.  Because personally identifying information might appear

anywhere on the form or in any of the supplemental materials, close and intensive review of each

claim would be necessary to find the material to be redacted.  The task would likely consist of

well over one million redactions since each of the over 300,000 SF-95s will likely have at least 4

or 5 items that would need to be redacted.  The United States estimates that this process would

take approximately 6 to 7 months to complete and cost approximately $3 million for the

approximately 300,000 claims. The United States anticipates that many more claims may be filed before August 29, 2007, which could significantly increase the time and costs of redaction.

The alternative the United States suggests instead is to provide aggregate information from the SF-95s once the United States has finished the scanning and keying process of the over 300,000 SF-95s. The expected completion date of the scanning and keying process is June 20, 2007, for approximately 300,000 claims. The United States could provide aggregate information such as the zip code and amount claimed for each claim. The United States has proposed this solution to the Levee PLSC and is awaiting a response. See Exhibit 1. This solution should allow the Levee PLSC to obtain the information it needs and allow the United States to protect the privacy of the hundreds of thousands of claimants, while also not expending an enormous amount of time and money in the process.

The Levee PLSC also has proposed that the United States turn over all of the SF-95s, unredacted, subject to a confidentiality order from the court such that if the class is not certified, the SF-95s would be returned to the United States and could not be used by the Plaintiffs. The United States does not understand this request. If Plaintiffs do not intend to make use of the SF-95s until after the Court decides whether to certify the class, then they obviously do not pertain to class certification. Further, this option would not adequately protect the privacy of the hundreds of thousands of claimants who have provided very sensitive information including medical records, social security numbers, driver's licenses, birth certificates, and death certificates. Finally, it is not necessary to disclose the personally identifying information as the United States can provide certain aggregate and anonymous information, such as zip codes and amounts claimed, as described above.

As an additional alternative, the United States could produce, within approximately one month, a random sample of SF-95s with the personally identifying information redacted.  For example, the United States could produce 300 randomly selected and redacted SF-95s which would be about one one-thousandth of the total received to date.  This alternative would allow the Plaintiffs to obtain copies of a sample of the SF-95s while protecting the privacy interests of the claimants and avoiding the extraordinary cost and time necessary to redact over 300,000 SF-95s.

### 2. <u>Request For Production No. 2</u>

This request seeks "a copy of all electronic files, databases, spreadsheets or other documents that sort, collate, organize, categorize, or deal in some similar fashion with the Form 95s, or any of them, identified in the preceding request and/or any information contained in such Form 95s."  In the United States' response, the United States objected because the request is overly broad, unduly burdensome, seeks documents and information protected by the attorney-client privilege and the work-product doctrine, and seeks information protected by the Privacy Act.  Additionally, the United States referred to General Objection No. 9 which explains that the United States has not yet completed reviewing and processing the SF-95s related to Hurricane Katrina.  Finally, the United States explained in its response that notwithstanding these objections, the United States is attempting to locate documents responsive to this request, and that if any non-privileged non-protected responsive documents are located, they will be produced according to the Court-approved Document Production Protocol.  In our June 15, 2007, letter to the Levee PLSC, the United States provided additional information on the databases containing information from the SF-95s.  The United States also explained that these databases are trial

preparation materials protected pursuant to Fed. R. Civ. P. 26(b)(3).  Because these databases are privileged pursuant to the workproduct doctrine and because they contain information protected by the Privacy Act, the United States did not agree to turn them over.  However, as explained above and explained in our letter to the Levee PLSC, the United States can provide spreadsheets with aggregate information that the Levee PLSC requests, without any personally identifying information.  The United States has proposed this solution to the Levee PLSC and is awaiting a response.

### 3.  Request For Production No. 3

RFP No. 3 requests "a copy of each and every document that contains or reflects any estimate or precise calculation of the total dollar value of all claims asserted against the USA by way of the Form 95s identified in Request No. 1."  In our response the United States objected because the request is overly broad and unduly burdensome, and it seeks documents and information protected by the attorney-client privilege and work-product doctrine.  The United States also referred in our answer to General Objection No. 9 which explains that the United states has not yet completed reviewing and processing the SF-95s related to Hurricane Katrina. Finally, the United States explained in our response that notwithstanding these objections, the United States is attempting to locate documents responsive to this request, and that if any non-privileged non-protected responsive documents are located, they will be produced according to the Court-approved Document Production Protocol.  As explained in our letter to the Levee PLSC, the United States expects to have completed the processing of over 300,000 claims by June 20, 2007.  Shortly thereafter, the United States will be able to provide the Plaintiffs an overall total of the sums certain for these approximately 300,000 claims.

4.  **Request For Production No. 4**

RFP No. 4 seeks "a copy of each and every document that you believe supports your answers to Interrogatories No. 2-4 above, or any of them."  In its memorandum, the Levee PLSC simply states that if the United States has denied numerosity, typicality, and adequacy, the United States should "produce documents proving same."  As the United States explained in its answers to these interrogatories, the United States does deny that numerosity, typicality, and adequacy have been satisfied.  As explained in our response to RFP #4 and without waiving our objections, if the United States locates any non-privileged, non-protected responsive documents, the United States will provide them in accordance with the Court-approved Document Production Protocol pursuant to CMO 4 (IV)(C)(2).  Additionally, the United States notes that regarding Interrogatory No. 4, our response referred to the SF-95s of the named Plaintiffs that have been produced.  Further, the inspections of the properties of the proposed class representatives are beginning this week.  Our experts/investigators have not yet produced any reports.  Additionally, the Plaintiffs missed their discovery deadline for responding to our discovery requests on May 30th, 2007.  They did not answer our discovery until June 11, 2007, and have not provided any responsive documents.  Therefore, the United States does not yet have all of the relevant documents that may be responsive to this request.

5.  **Request for Production No. 5**

This request seeks "a copy of every document consulted, obtained, or generated in connection with any activities described in response to Interrogatory No. 11 above."  In their memorandum, the Levee PLSC states that the United States should produce any Form 95 information compiled or collated into categories and the format containing the information.  As

the United States explained above and in our letter, the SF-95 databases are privileged under the

work-product doctrine and contain information that is protected under the Privacy Act.  The

United States can provide aggregate information from these databases, including, for example,

zip codes and sums certain, without any personally identifying information, once the United

States has processed the SF-95s.

6.  **Request For Production Nos. 7 & 8**

These requests for production seek documents establishing the number of persons

residing in the geographical area encompassed by the proposed Greater New Orleans Class

definition on August 28, 2005, and since August 29, 2005.  The Levee PLSC simply restates the

fact that they are seeking this population data. The United States objected to these requests based

on the fact that these requests are overly broad and unduly burdensome.  The United States also

objected to the extent that these requests seek information that can be obtained from other

sources that are more convenient, less burdensome, and less expensive.  See Fed. R. Civ. Pr.

26(b)(2)(C)(i).  In an attempt to clarify what other sources may have this information, in the

letter to the Levee PLSC the United States referred them, by way of example, to the U.S. Census

Bureau and its publicly available website at www.census.gov which has population information.

The United States also stated in the letter that the IPET report and other documents available on

the IPET public website at https://ipet.wes.army.mil/ may also have information relevant to this

request.

7.  **Request For Production Nos. 9-16**

These requests all seek documents that discuss, analyze, etc. any inundation or

precipitation in the proposed class areas.  In the Levee PLSC's memorandum, they simply

summarize the type of documents being sought.  In the responses, the United States

appropriately objected to these requests based on overbreadth and undue burden, vagueness and

ambiguity, and because these requests seek documents that are publicly available and therefore

obtainable from some other source that is more convenient, less burdensome, and less expensive.

See Fed. R. Civ. Pr. 26(b)(2)(C)(i).  The United States also referred to the website that contains

the IPET report and other documentation.  On June 15, 2007, the United States produced hard

drives containing approximately 400 Gigabytes (GB) of documents and data underlying the

IPET report. These documents may be responsive to RFP's 9-16.  As the United States explained

in our letter, for the class certification cases, the United States is sharing experts with the other

defendants since each side is limited to 5 experts.  Joint witness and exhibit lists have been

provided by the defendants and have been supplemented on the 20th of each month as is required

by Case Management Order No. 4.  Expert reports in the class track are due in August and will

be provided at that time.

### C.  INTERROGATORIES ("Interr.")

The United States has answered all of the Levee PLSC's interrogatories despite the fact

that United States was not required to do so.  Interrogatory No. 1 counts as 50 individual

interrogatories because it requests, for each request for admission that is denied or for which the

answer is qualified, an explanation of the basis of the denial or qualification.  The United States

answered this interrogatory for each of the 50 separate requests for admission.  By answering

Plaintiffs' First Interrogatories the United States has answered 63 (50+13) interrogatories, which

is 38 in excess of the 25 interrogatories Plaintiffs are permitted to propound under ¶ III(B)(2) of

CMO 4.  See Estate of Manship v. United States, 232 F.R.D. 552 (M.D. La. 2005).  Therefore,

the United States has shown good faith by going above and beyond what was required for its discovery responses.

### 1. **Interrogatory Nos. 2-4**

In its memorandum, the Levee PLSC states that the United States must identify all facts and witnesses supporting our contentions that numerosity, typicality, and adequacy of representation have not been satisfied. In our answer to Interr. No. 2 (numerosity), the United States explained the fact that the proposed class must consist solely of individuals who have satisfied the administrative claim requirements and therefore it will not be impracticable to join them, particularly since the Corps will have their names and addresses from their administrative claims. This is primarily a legal argument and United States is not aware of any additional facts at this time. Because it is a legal argument, there are no witnesses.

In our answer to Interr. No. 3 (typicality), the United States referred to our response to Interr. No. 1, RFA No. 26, in which the United States explained the fact that each claim will be individualized requiring individual proof, for example, on causation and damages. Joint witness and exhibit lists have been provided by the defendants and have been supplemented on the 20th of each month as is required by Case Management Order No. 4. The United States does not have additional specific facts or witnesses to provide because the inspection of the properties of the proposed class representatives is just beginning, and our experts/investigators have not yet produced any reports. Additionally, the Plaintiffs missed their discovery deadline for responding to our discovery requests on May 30th, 2007. They did not answer our discovery until June 11, 2007, and have not provided any responsive documents. Finally, in our response to Interr. No. 3, the United States also explained the fact that typicality will be lacking where the proposed class

members have not satisfied the administrative claim requirements.  This is primarily a legal argument without facts or witnesses.  The same applies to our answer to Interr. No. 4.

## 2. **Interrogatory No. 5**

This interrogatory asks the United States to "identify any defense you might set forth in response to any class member's claim against you that you would not set forth in any class representative's claim against you."  The Levee PLSC states that the United States must identify any other defenses that it is aware of or will become aware of.  In addition to our response which speaks for itself, the United States reiterates the fact that it cannot know all defenses that could be asserted against proposed class members until they have actually filed suit against the United States.

## 3. **Interrogatory No. 6**

This interrogatory asks "[d]o you agree that there are some questions of law or fact common to the members Class, including the class representatives?"  The Levee PLSC contends that the United States evades answering whether some questions of law and fact are common to the class.  The Levee PLSC is simply wrong.  In the United States' answer to Interr. No. 6, it incorporates the answer to Interr. No. 1, RFA No. 26.  In that response, after explaining that each claim will require individualized proof, particularly with respect to causation and damages, the United States specifically stated that "there are no meaningful 'common' questions of fact or law, as that term is used in Federal Rule of Civil Procedure 23, that could serve at [sic] the basis for representative litigation."  (citations omitted).  Therefore, this answer is entirely sufficient.

## 4. **Interrogatory No. 7**

The Levee PLSC argues that the United States fails to answer whether there are questions

of fact or law affecting individual class members but no class representatives, and evades

answering whether such individual questions predominate over questions common to the class.

In the response to this interrogatory the United States incorporated its answer to Interr. No. 1,

RFA No. 26, which does explain that each claim will require individualized proof, particularly

with respect to causation and damages, and therefore by definition there will be questions of fact

and law that affect individual class members but not the class representatives.  Additionally, the

answer explained that there will be uncommon questions to the extent that some class members

have not met the administrative claim requirements and some class representatives have met

these requirements.  The answer also stated that there are no meaningful common questions of

fact or law.  Therefore, by definition, the individual questions predominate since there are no

meaningful common questions.  Further, the United States cannot know all of the differences in

questions of law or fact that would affect the proposed class members' claims and not the

proposed class representatives' claims until the proposed class members have actually filed suit

against the United States.  Finally, this interrogatory impermissibly seeks a legal conclusion at

this early stage of the litigation (<u>See</u> United States' General Objection No. 12) and actually

reverses the correct legal standard which is whether "the questions of law or fact common to the

members of the class predominate over any questions affecting only individual members."  Fed.

R. Civ. P. 23(b)(3);  <u>See</u> <u>In re Ford Motor Co. Vehicle Paint Litigation</u>, 1996 WL 99343

(E.D.La.) (J. Wilkinson) (noting that the most appropriate and effective time a plaintiff can fully

answer a broad-ranging interrogatory on the contentions and proof for class certification is

simultaneously at the time the motion for class certification is filed).

5.  **Interrogatory No. 8**

The Levee PLSC contends that the United States fails to identify a superior method and the reasons why that method would be superior.  The United States did state in its response that "individual trials are superior to a class trial."  Further, the United States gave numerous reasons in its answer including the fact that each claim will require individualized proof with respect to fault, causation, injuries, and damages, and the fact that there will be different defenses available to the United States for different plaintiffs, and the fact that a class action would degenerate into multiple lawsuits separately tried.  Additionally, the first individual trial will be in In re Katrina Canal Breaches Litigation, No. 05-4182, pertains to MRGO (Robinson, 06-2268).  This will be the test case and the decision in Robinson will set the legal precedent regarding sovereign immunity for the rest of the claims against the United States.

6.  **Interrogatory No. 9**

The Levee PLSC contends that the United States evades identification of difficulties it contends would likely be encountered in a class action.  In the answer to this interrogatory, the United States incorporated the answer to Interr. No. 1 with respect to RFA No. 26, and the answer to Interr. No. 8.  Both of these answers list the difficulties in managing such a class action such as the fact that each claim would require individualized proof, it would degenerate into separate trials, and that the United States will have defenses unavailable to other defendants.  Further, the Robinson case will be the test case that will set the legal precedent for the government's immunity and may make the rest of the claims against the United States moot.

7.  **Interrogatory No. 11**

The Levee PLSC contends that our answer speaks only of possible prospective methods

of data organization and does not identify how the SF-95s have been compiled already.

However, the United States did explain in the answer that a majority of the SF-95s are organized

by the date of their receipt and are being processed in London, Kentucky.  The United States

provided sufficient detail on the ongoing process of compiling the over 300,000 SF-95s.  As a

result of the teleconference with the Levee PLSC and in an effort to cooperate in good faith, the

United States provided even more details in the letter to the Levee PLSC (Exhibit 1) about the

current process of scanning and keying in information from the hundreds of thousands of SF-95s.

To date, the United States has provided a significant amount of detail on how it is compiling and

collating the SF-95s.

### 8.  <u>Interrogatory No. 12</u>

The Levee PLSC contends that the United States is currently analyzing the SF-95s and

can answer how many persons it estimates sustained damages in the class area.  In the United

States' answer it referred to the publicly available information on the IPET report website.

Additionally, the United States has not had sufficient time to fully review, investigate, and

analyze the hundreds of thousands of SF-95s at issue.  Once the United States finishes scanning

and keying in information for the over 300,000 SF-95s, the United States can provide aggregate

information on these claims.  Finally, the United States is sharing experts with the other

defendants, and if the United States finds anything responsive to this request, it will be provided.

### 9.  <u>Interrogatory No. 13</u>

The Levee PLSC contends that the United States is analyzing the source and progress of

the class area's inundation and if it is doing so, it must explain what it has learned.  In the answer

the United States referred to the publicly available information on the IPET report website.  On

June 15, 2007, the United States produced hard drives containing approximately 400 Gigabytes

(GB) of documents and data underlying the IPET report.  Joint witness and exhibit lists have

been provided by the defendants and have been supplemented on the 20th of each month as is

required by Case Management Order No. 4.  Expert reports in the class track are due in August

and will be provided at that time.  The United States has not finished investigating the facts and

discovering the evidence.

## V.  CONCLUSION

For all the reasons set forth above, the Motion to Compel should be denied.


Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

C. FREDERICK BECKNER III
Deputy Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY
Assistant Director, Torts Branch

 s/ Daniel M. Barish
DANIEL M. BARISH
TRACY L. COLQUETTE
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 888
Washington, D.C.  20044
(202) 616-4272 / (202) 616-5200 (Fax)
Attorneys for the United States


Dated: June 19, 2007

## CERTIFICATE OF SERVICE

I, Daniel M. Barish, hereby certify that on June 19, 2007, I served a true copy of the United States' Opposition to the Levee PLSC's Motion to Compel Discovery from the United States upon all parties by ECF.


    s/   Daniel M. Barish
DANIEL M. BARISH