# EXHIBIT 1

**U.S. Department of Justice**

Civil Division, Torts Branch
Federal Tort Claims Act Staff

---

Daniel M. Barish
Trial Attorney

P.O. Box 888, Benjamin Franklin Station
Washington, DC 20044
Tel.: (202) 616-4272   Fax: (202) 616-5200
Daniel.Barish@usdoj.gov

JGT:DMB

June 15, 2007

Via E-mail

Richard M. Martin, Jr.
20 Versailles Boulevard
New Orleans, LA 70125-4114

Re:    *In Re Katrina Canal Breaches Consolidated Litigation*, Civil Action No. 05-4182 "K" (2)

Dear Mr. Martin:

I am writing in response to your letter of May 18, 2007, and in light of our teleconference on May 30, 2007, in which we discussed the discovery issues you raised in your letter. In our telephone discussion, you and Joe Bruno narrowed the issues raised in your letter. I offered to check and get back to you on some of the issues we discussed. Nevertheless, on May 31, 2007, the Levee PLSC filed a Motion to Compel Discovery from the United States. We will be formally opposing your motion at the appropriate time, as we are confident that we have responded fully to your discovery and have made appropriate objections when necessary. However, in a good faith effort to get back to you on some of the issues we discussed and in hopes of resolving them without the need for court intervention, we provide the following information.

<u>Electronic Databases that Organize Information from the Standard Form 95s (SF-95s)</u>

During our telephone call, you asked for more information about the database we are creating for the SF-95s. Specifically, Mr. Bruno requested the name of the contractor processing the claims, what information is being culled out of the claims, and whether and how the claims are being scanned. Though we believe that we already have provided much of this information, in an effort to cooperate in good faith, we provide the following additional information.

Sourcecorp is the vendor which has been retained to scan and compile data from the claims forms. The claims are being scanned to standard Tiff4 format. The information being compiled from the claims includes the following: claim identifying numbers; names and addresses of claimants; names of claimants' attorneys, if this information is provided; location of

1

damaged property, if this information is provided; and total amount of claims, and amounts claimed for property damage, personal injury, and wrongful death, if this information is provided.

After the SF-95s are scanned and the information referenced above is compiled, certain aggregate data from the database can be furnished. For example, your RFP No. 3 requests an estimate of the total dollar value of all claims asserted against the United States in the SF-95s. We should be able to provide you with the overall total of the sums certain from approximately 300,000 SF-95s shortly after June 20, 2007. This total, of course, would be subject to change as additional claims will continue to be submitted and be added to the database.

The Army Corps of Engineers processed approximately 32,000 administrative claims related to Hurricane Katrina. These 32,000 claims are being included within the Sourcecorp database described above. A spreadsheet can be created from a Corps database that includes these 32,000 claims. If you are interested, the following information could be furnished: the claim identification number; the claim amount; the date of the claim; the date of the incident; and the name of attorney, if any. As described above, we can provide more complete aggregate data for 300,000 claims using the Sourcecorp database.

Please be advised that both databases are trial preparation materials protected pursuant to Fed. R. Civ. P. 26(b)(3). However, we are willing to provide aggregate information from these databases as described above.

<u>Your Request for the SF-95s</u>

We understood from the conference call that your primary concern was your request for all of the SF-95s for Katrina losses. We have produced the SF-95s submitted to the Corps by or on behalf of the proposed class representatives because the class representatives themselves requested them and because we received written authorization to disclose them to certain other parties in this litigation. The SF-95s contain personal and confidential information that was requested by the Corps for the purpose of allowing it to evaluate administrative claims submitted by individual claimants. In addition to names and addresses, many of the SF-95s (or other written notifications of an incident and supplemental materials submitted therewith) contain telephone numbers, birth dates, social security numbers, copies of drivers licenses and military identification cards, copies of birth and death certificates, copies of medical records, and details concerning visits to doctors and mental health professionals.

In the conference call, Mr. Bruno requested redacted versions of the SF-95s so that personal information would be protected. Mr. Bruno stated that the names and addresses could be redacted but he would need the zip codes of the claimants and the sums certain from their claims. We have looked into the redaction option and have determined that the task of redacting the personally identifying information from each of the over 300,000 SF-95s, including any supplemental materials sent with the SF-95s, would be very costly, time-consuming, and burdensome. Because personally identifying information could appear anywhere on the form or

2

in any of the supplemental materials, close and intensive review of each claim would be necessary to find the material to be redacted. We estimate that these redactions would take approximately 6 to 7 months to complete and cost approximately $3 million for the approximately 300,000 claims. We anticipate that many more claims may be filed before August 29, 2007, which could significantly increase the time and costs of redaction. The alternative we suggest instead is to provide you with aggregate information once we have finished the scanning and keying process. Again, the expected completion date of the scanning and keying process is June 20, 2007, for approximately 300,000 claims. We could provide you with aggregate information such as the zip code and amount claimed for each claim. Please let us know exactly what information you need while keeping in mind that it cannot contain personally identifying information. This solution should allow you to get the information you need and allow us to protect the privacy of the hundreds of thousands of claimants, while also not spending an inordinate amount of time and money on redactions.

Mr. Bruno also suggested that another option would be for us to turn over all of the SF-95s, unredacted, subject to a confidentiality order from the court such that if the class is not certified, the SF-95s would be returned to the United States and could not be used by the plaintiffs. We do not understand this request. If plaintiffs do not intend to make use of the SF-95s until after the Court decides whether to certify the class, then they obviously do not pertain to class certification.

Finally, Mr. Bruno requested copies of the SF-95s that have been filed by his clients. In order for us to produce these, we simply need proof that Mr. Bruno actually represents these individuals, and authorization for their SF-95s to be disclosed to the parties in this litigation.

<u>Legal Sufficiency of Proposed Class Representatives' SF-95s</u>

Your RFA No. 2 asks the United States to admit that the SF-95 submitted by each proposed class and sub-class representative was "legally sufficient." While making appropriate objections and without waiving our objections, we denied this request and gave several examples of how the administrative claims of the proposed class representatives were legally deficient. In your letter and in our telephone conference, you and/or Mr. Bruno further explained what was meant by "legally sufficient." While we were not required to address every proposed class representative's administrative claim since the request was worded such that even just one legally insufficient SF-95 would warrant a denial, we have agreed to provide you with information regarding the sufficiency of the SF-95s for the remaining proposed class representatives. You also requested this same information for the MRGO class representatives, and so we have included them as well.

As explained in our discovery responses, the Corps has no record of SF-95s for the following proposed class representatives: Laurie Coniglio; Alice Meyer; and Denise Meade.

3

The following proposed class representatives failed to wait the requisite six months after presenting their claims before filing suit as required by 28 U.S.C. § 2675(a): Beatrice Drew; Gertrude Esteves; Daisy Innis; Betty Jones; Gladys Le Beaud; Calvin Levy Jr.; Glynn Wade; Stella Washington; and Emanuel Wilson.

Kenneth Armstrong, Henry Davis, Anita Harrison, Trenise Jackson, Calvin Levy Sr., Dwayne Mallet, and Glynn Wade, failed to provide separate dollar sums for all the persons listed on their administrative claims. Joella Cephas, Lucinda Coco, Gertrude Esteves, Daisy Innis, Betty Jones, Eddie Knighten, Gladys La Beaud, Glynn Wade, and Stella Washington failed to quantify their claimed personal injury damages. Betty Jones failed to quantify her claimed property damages. Lucinda Coco, Leslie Dorantes, Beatrice Drew, Gertrude Esteves, Calvin Levy Jr., Nicola McCathen, Leo Mitchell, Charles Moses, John B. Williams, and Emanuel Wilson all claim real property damages for property that, according to the information in the administrative claim, is owned by a third party.

Experts

In our conference call, Mr. Bruno asked whether the Corps is conducting analyses other than what is in the IPET report. For the class track, we are sharing experts with the other defendants since each side is limited to 5 experts. Joint witness and exhibit lists have been provided by the defendants and have been supplemented on the 20th of each month as is required by Case Management Order No. 4. Expert reports in the class track are due in August and will be provided at that time.

Population Information

Your requests for production 7 and 8 seek documents establishing the number of persons residing in the geographical area encompassed by the proposed Greater New Orleans Class definition on August 28, 2005, and since August 29, 2005. We objected based on the fact that these requests are overly broad and unduly burdensome. We also objected to the extent that these requests seek information that can be obtained from other sources that are more convenient, less burdensome, and less expensive. See Fed. R. Civ. Pr. 26(b)(2)(C)(i). In an attempt to clarify what other sources may have this information, we refer you, for example, to the U.S. Census Bureau and its publicly available website at www.census.gov which has population information. The IPET report and other documents available on the IPET public website at https://ipet.wes.army.mil/ may also have information relevant to this request.

June 15, 2007 Production

On June 15, 2007, we produced two external hard drives containing documents and data underlying the IPET report. Members of the IPET team continue to send in information, and, as we receive that information, we will process it and produce it as quickly as is feasible. We

4

believe that the information we produced may be responsive to your discovery requests, but we produced it so quickly that we have not yet been able to review it.

Please consider this letter as a supplement to our discovery responses. We hope that it has helped resolve some or all of the issues in your motion to compel. If you have any questions or need to discuss these issues further, feel free to contact me.

Sincerely,

Daniel M. Barish
Trial Attorney
Civil Division, Torts Branch

5