UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION<br>NO.   05-4182 "K"(2)<br>JUDGE DUVAL<br>MAG. WILKINSON |
| PERTAINS TO:<br><br>ALL CASES | | |

## NOTICE OF VIDEOTAPED FEDERAL RULE 30(b)(6) DEPOSITION

**TO:**  To all Defendants and their respective counsel,
Through Defense Liaison Attorney of Record:
Ralph S. Hubbard III
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras St.
Suite 2775
New Orleans, Louisiana 70130-6041

PLEASE TAKE NOTICE that Plaintiffs, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, will take the videotaped deposition upon oral examination of **The United States Army Corps of Engineers**, concerning the matters as set forth on Exhibit A and B attached hereto.

The oral examination will take place on Monday, June 11, 2007 at the offices of Bruno &

1

Bruno, 855 Baronne Street, New Orleans, Louisiana 70113 at 9:00 a.m. and will continue from day to day until completed. The deposition will be taken before a Notary Public or some other officer authorized to administer oaths under the law. This deposition is taken for discovery and use at trial and for any other purpose permitted under the Federal Code of Civil Procedure. The deposition will be recorded stenographically and by videotape. You are invited to attend and examine the witnesses if you so desire.

**The United States Army Corps of Engineers** is requested to designate one or more officers, directors, or managing agents, or other persons who consent to testify as the person most knowledgeable concerning each subject on its behalf, and to set forth, for each person designated, the matters on which the person will testify.

In connection with and pursuant to Fed. Rule of Civil Procedure 30(b)(5), the deponent is requested to designate and produce for inspection and copying documents responsive to this Notice two (2) business days prior to the deposition as identified on Exhibit "B."

## DEFINITIONS

1. "You" and its various forms such as "your" and "yourself" shall mean the person and/or entity subject to this notice and/or subpoena and/or request for production and all present and former agents, employees, representatives, attorneys, custodian of records, and all other persons acting on behalf of such person and/or entity, including, but not limited to, the deponent, its divisions, parents, subsidiaries, related companies or corporations, predecessors, successors, and all present and former officers, directors, agents, employees, representatives, and attorneys, and all other persons acting or purporting to act on behalf of the entity subject to the Notice.

2. "Describe" means to explain in detail and/or provide a detailed description of the information sought in the particular Request Interrogatory.

3. "Document(s)" shall mean or refer to all written or graphic matter of every kind of description, however, produced or reproduced, whether draft or final, original or reproduction, original and all non-identical copies, and all tangible things within the

scope of Federal Rule of Civil Procedure 30(b)(6), specifically including, but not limited to: writings, graphs, charts, photographs, satellite and/or radar imagery, telephone records, data compilations (from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form), letters, correspondence, e-mail communications and attachments, instant messages, memoranda, minutes, notes, contracts, agreements, books, diaries, time sheets, laboratory books, logs, bulletins, circular, notices, rules, regulations, prospects, directions, teletype messages, inter-office communications, intra-office communications, reports, company worksheets, credit files, evidence of indebtedness, negotiable instruments, telegrams, mailgrams, books, news releases, newspapers, magazines, advertisements, periodicals, pamphlets, sketches, drawings, statements, reports, articles of incorporation, by-laws, directives, minutes of meetings, balance sheets, income and loss statements, profit and loss statements, inventories, operating budgets, accounting worksheets, financial accounts, bills, vouchers, bank checks, proposals, offers, orders, acknowledgments, receipts, invoices, checks, working papers, telephone messages (whether written or recorded), notebooks, post cards, evaluations, recommendations, annual reports, confirmations, leases, analyses, feasibility or market studies, disbursement requests or orders, indices, projections, forms, data sheets, data processing discs, or readable computer-produced interpretations thereof, booklets, articles, manuals, speeches, stenographic notes, maps, studies, tests, surveys, cables, tape and disc recordings (both audio and video), graphic and aural representations of any kind (including, without limitation, photograph, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans drawings and surveys) and electronic, mechanical, magnetic, optical or electric records or representations of any kind (including, without limitation, computer files and programs, tapes, cassettes, discs, recordings, including metadata, blueprints, containers, cartons, package labels, slides, audit reports, tender offers or invitations, personal interviews, summaries, abstracts, compilations or paraphrases of any of the foregoing, or material similar to any of the foregoing, however denominated, which are in the possession, custody or control of the party upon whom this subpoena and/or request for production of documents is served or to which said party can obtain access. The subpoena and/or request for production of documents calls for originals, unless otherwise specified, and for all copies when originals are not available. If a document has been prepared in several copies, or additional copies have been made and the copies are not identified (or by reason of subsequent modification of the copy by additions or notations, or other modifications, are no longer identical), each non-identical copy is a separate "document."

The term "photographs" shall be interpreted to mean all pictorial depictions by whatever means and shall include negatives, positive prints, and copies of prints, Polaroid, or any other pictorial information in the custody of the defendant.

The term "file" shall be interpreted to mean any and all documents, as defined herein,

in your possession.

"Imaged copy" means bit-by-bit copy or replication of data stored on a device in an accessible format.

4. "Relate(s) to," "related to", or "relating to" means to refer to, reflect, concern, pertain to or in any manner be connected with the matter discussed.

5. With respect to the production of any documents which are claimed to be privileged, a statement shall be provided by the attorneys for the respondent setting forth as to each such document (and, where applicable, each attachment thereto):
   a. the name of the sender, if any, of the document;
   b. the name of the author of the document;
   c. The name of each person or persons (other than stenographic or clerical assistants) participating in the preparation of the document;
   d. the name of the person, if any, to whom the document and copies were sent;
   e. The name and position, if any, of each person to whom the contents of the documents have been communicated by copy, exhibition, reading, or substantial summarization;
   f. the date of the document;
   g. the date on which the document was received by those having possession of the document;
   h. a description of the nature and the subject matter of the document;
   i. the statute, rule or decision which is claimed to give rise to the privilege;
   j. the last-known custodian of the document and the present location of the document;
   k. attachments to the document;
   l. the number of pages comprising the document;
   m. whether the document is handwritten, typewritten or otherwise prepared;
   n. A statement of the specific basis on which privilege is claimed and whether or not the subject matter or the contents of the document is limited to legal advice or information provided for the purpose of securing legal advice;
   o. The identity and position of the person(s) supplying the attorney, if any, signing the list with the information requested in the subparagraphs above.
   p. any other information which is useful in identifying or is necessary to identify the document.

6. If any response is qualified, made in part, but not in whole, objected to, or if any requested information is withheld on the basis of privilege or otherwise, please:

   > i. State the name, address, and status or job title of the person(s) asserting any objection or privilege, or withholding any requested information;

        ii.    State in detail the privilege asserted or other reason for withholding the requested information; and

        iii.    State in general the nature of the information or response withheld sufficient to establish the claim or privilege or other reason for withholding the information.

7. Whenever appropriate, the singular form of the word shall be interpreted in the plural and vice versa.

8. All words and phrases shall be construed as masculine, feminine, or neutral gender according to the context.

9. "And" as well as "or" shall be construed either disjunctively as necessary to bring within the scope of the subpoena and/or request for production of documents any matters which might otherwise be construed to be outside of the scope of the subpoena and/or request for production of documents.

10. "Identify" with regard to a natural person, means to provide the name, last known address, last known telephone number; whether ever employed by you, and if so, dates of employment, descriptions and/ or title of each position held, and the reasons for termination; and, current employer and/or last known employer and position held.

    "Identify," *with regard to a corporation*, means to provide the name of the entity along with its primary business address and telephone number.

    "Identify," *with regard to documents or other inanimate objects*, means to provide the date, author, address, number of pages, subject matter, custodian of the document, and location of the document.

11. The term "IHNC/Industrial Canal" means the Inner Harbor Navigation Canal a/k/a the "Industrial Canal," which connects Lake Pontchartrain, the Mississippi River and Reach 1 of the MRGO.

12. The term "IHNC Lock Replacement Project" means the project authorized by the River and Harbor Act of 1956 and the Water Resources Development Acts of 1986 and 1996 designed to enlarge and deepen the IHNC lock.

13. The term "IPET Report" means the Final Report of the Interagency Performance Evaluation Task Force, Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System, all volumes, dated March 26, 2007.

14. The term "TLR" means Team Louisiana report.

15. The term "ILIT" means Independent Levee Investigation Team.

16. The term "LPVHPP" means the Lake Pontchartrain and Vicinity Hurricane Protection Project as authorized by the Flood Control Act of 1965.

17. The term "GIWW" means the Gulf Intracoastal Waterway.

18. The term "MR-GO" or "MRGO" means the Mississippi River Gulf Outlet (specifically including the reach along Lake Borgne and the reach between New Orleans East and St. Bernard Parish referred to at times by the Defendants as a reach of the GIWW).

19. The term "Reach 1" means the segment of the MRGO connecting with the Gulf Intracoastal Waterway between New Orleans East and St. Bernard Parish that runs into the IHNC/Industrial Canal.

20. The term "Reach 2" means the land cut segment of the MRGO along Lake Borgne, between the interconnection of the MRGO and the GIWW running southeasterly into the Gulf of Mexico.

21. "17th Street Canal," "London Avenue Canal," "Orleans Canal," and "Industrial Canal" means the entirety of the canal systems associated with the 17th Street Canal, London Avenue Canal, Orleans Canal and Industrial Canal and, unless otherwise noted, is not limited to any specific breach location.

22. The East Jefferson Levee District also means the Pontchartrain Levee District.

23. The term "RPC" means Regional Planning Commission.

**THIS DEPOSITION IS NOT FOR RECORDS ONLY.**

Respectfully Submitted,

**APPROVED PLAINTIFFS LIAISON COUNSEL**

_____
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS LIAISON COUNSEL
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**

s/ James Parkerson Roy
JAMES PARKERSON ROY (La. Bar # 11511)
MR-GO PSLC LIAISON COUNSEL
Domengeaux Wright Roy & Edwards LLC
P.O.Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com

For

MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE
Jonathan Andry
Clay Mitchell
Pierce O'Donnell
James Parkerson Roy

**INSURANCE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

s/ Calvin C. Fayard, Jr.
Calvin C. Fayard, Jr. (La. Bar #5486)
INSURANCE PSLC LIAISON COUNSEL
Fayard & Honeycutt, APLC
519 Florida Avenue, SW
Denham Springs, LA 70726
Tel: (225) 664-4193
Fax: (225) 664-6925
calvinfayard@fayardlaw.com

For

INSURANCE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE

John N. Ellison
James M. Garner
Joseph J. McKernan
Drew A. Ranier
Calvin C. Fayard, Jr.

7

LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE

s/Gerald E. Meunier
GERALD E. MEUNIER (La. Bar #9471)
LEVEE PSLC LIAISON COUNSEL
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Phone:504/522-2304
Facsimile:504/528-9973
E-mail:gmeunier@gainsben.com

For

LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE

Gerald E. Meunier
Daniel E. Becnel, Jr.
Joseph M. Bruno
D. Blayne Honeycutt
Hugh P. Lambert
Darlene Jacobs
Walter Dumas

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing Notice of Deposition upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 5th day of June, 2007.

Joseph M. Bruno

8

## "EXHIBIT "A"

Please produce, pursuant to Federal Rule 30(b)(6), the person(s) most knowledgeable of the following areas:

1. Information on all data as listed and described in the IPET Report, Volume IX. – General Appendices - Appendix A; including but not limited to what work was undertaken, what studies were conducted, and how the findings and conclusions were reached, particularly regarding the following items contained on the list of Geographic Information System ("GIS") data layers (Appendix IX-A-4 through Appendix IX-A-6):

   A. High water marks collected by USGS and FEMA for Louisiana;
   B. High water marks collected by USACE Louisiana;
   C. High water marks collected by CHL for Mississippi;
   D. Levee centerlines in the CEMVN digitized from the best available;
   E. 3001 Inc. 1ft true color imagery - post-Katrina (42 files);
   F. Center of levees;
   G. Estimated water depth for the specified day's inundation for New Orleans East;
   H. New Orleans Levee Breaches not attributed;
   I. Estimated peak water depth for New Orleans;
   J. Estimated water depth for the specified day's inundation for New Orleans;
   K. Estimated peak water depth for St. Bernard;
   L. Digital Elevation Model for the St. Bernard Levee District, part 1;
   M. Digital Elevation Model for the St. Bernard Levee District, part 2;
   N. Estimated water depth for the specified day's inundation for St. Bernard;
   O. maximum levee/ floodwall elevations extracted from the adjusted pre-Katrina DEMs;
   P. levee damage points.

2. Information on all data used in the Advanced Circulation ("ADCIRC") Model - TF01x2 implementation - as listed and described in the IPET Report, Volume IV – The Storm; including, but not limited to what work was undertaken, what studies were conducted, and how the findings and conclusions were reached. Additional inquiry will address whether the data was processed through/exists as ASCII format (or binary PC readable), in particular, whether the following data sets were used as model input, or generated as model output, by the ADCIRC Model - TF01x2 implementation - used for the Katrina storm surge simulation as presented in the IPET Report:

   A. Input files:

      (1) fort.15, which contains simulation parameters and flags;
      (2) fort.13, which contains node attributes;
      (3) fort.14, which contains node coordinates, bathymetry, and other geographic information;
      (4) fort.22, which contains wind and surface pressure data;

9

   B. Output files:

    (1) fort.16, which echoes the model configuration and simulation parameters, node coordinate and bathymetry information;
    (2) fort.63, which provides global water surface elevation at each node and output interval;
    (3) fort.64, which provides global water velocity (current) at each node and output interval;
    (4) fort.73, which provides global atmospheric pressure at each node and output interval;
    (5) fort.74, which provides global wind velocity at each node and output interval.

(For all ADCIRC outputs, information on the datum used, as well as the cartographic projection will be addressed).

3. The methods and metadata used to prepare the maps showing the extend and depth of flooding in the greater New Orleans area (Jefferson, Orleans, and St. Bernard Parishes).

4. The satellite data that was used to show the extend and depth of flooding in the greater New Orleans area (Jefferson, Orleans, and St. Bernard Parishes).

5. The elevation datum, and its origin/proprietor, that was used to examine and measure the extend and depth of flooding in the greater New Orleans area (Jefferson, Orleans, and St. Bernard Parishes).

6. A explanation of how the data showing the extend and depth of flooding in the greater New Orleans area (Jefferson, Orleans, and St. Bernard Parishes) that was hosted by the National Oceanic & Atmospheric Administration ("NOAA") on their website.

7. The identification of all reports and maps on the storm surge of Hurricanes Katrina and Rita in Southeast Louisiana and the New Orleans region (Parishes of Orleans, Jefferson, and St. Bernard).

8. The identification of all tide gauge water level time-series documents of the storm surges of Hurricanes Katrina: flooding and draining.

9. The identification of all information, methods of calculation, maps, and reports that quantify the flooding volumes of Southeast Louisiana and the New Orleans region (Parishes of Orleans, Jefferson, and St. Bernard).

10. The identification of all maps that depict the maximum storm surge elevations of Hurricanes Katrina.

11. The identification of all information and reports on the location and data from temporary water level gauges installed to monitor the draining of Southeast Louisiana and the New Orleans region.

10

12. The identification of all maps, data, and reports depicting the water levels observed in Southeast Louisiana and the New Orleans region (Parishes of Orleans, Jefferson, and St. Bernard), for the time period of August 15, 2005 through October 15, 2005.

13. The identification of any Light Detection And Ranging (hereinafter "LIDAR") surveys, aerial and terrestrial, performed by you or at your request or behest, for any person or entity, in Southeast Louisiana post-Katrina.

14. The metadata for any LIDAR survey, aerial and terrestrial, performed by you or at your request or behest, for any person or entity, in Southeast Louisiana post-Katrina.

15. Any LIDAR surveys, aerial and terrestrial, performed by you or at your request or behest, for any person or entity, in Southeast Louisiana pre-Katrina.

16. The metadata for any LIDAR survey, aerial and terrestrial, performed by you or at your request or behest, for any person or entity, in Southeast Louisiana pre-Katrina.

17. The post-processed data in Digital Elevation Model (DEM) format, with a horizontal resolution of five meters or better (to match the pre-storm LIDAR).

18. The metadata for the post-processed data in Digital Elevation Model (DEM) format, with a horizontal resolution of five meters or better (to match the pre-storm LIDAR), including but not limited to, the date of acquisition, source, and post-processing methodology.

19. The identity and roles of any additional partners needed to complete the LIDAR, aerial and terrestrial, post-Katrina.

20. The quality control/quality assurances necessary to assure that the LIDAR, aerial and terrestrial, met or exceeded relevant NSSDA and fully complied with the FGDC metadata format, post-Katrina.

21. The quality control/quality assurances necessary to assure that the LIDAR, aerial and terrestrial, met or exceeded National map Accuracy Standards for DEM (Digital Elevation Model) and contour generation.

22. The quality control/quality assurances necessary to assure that the total LIDAR system was calibrated prior to any LIDAR survey project initiation, as well as on a daily basis for the purpose of identifying and correcting systematic errors.

23. The quality control/quality assurances necessary to assure that any LIDAR survey of Southeast Louisiana met both horizontal and vertical accuracy.

24. Information regarding any aerial and terrestrial post-Katrina LIDAR data gathered along the breach locations at the 17th Street Canal, the London Avenue Canal, the Industrial Canal east and west sides, the navigation structure at Bayou Bienvenue (along the MR-GO), and navigation structure at Bayou Dupre (along the MR-GO).

11

25. The identification of all videos taken on or after August 29, 2005 along the breach locations at the 17th Street Canal, the London Avenue Canal, the Industrial Canal east and west sides, the navigation structure at Bayou Bienvenue (along the MR-GO), and navigation structure at Bayou Dupre (along the MR-GO).

26. The identification all vertical and oblique photography taken on or after August 29, 2005 along the breach locations at the 17th Street Canal, the London Avenue Canal, the Industrial Canal east and west sides, the navigation structure at Bayou Bienvenue (along the MR-GO), and navigation structure at Bayou Dupre (along the MR-GO).

27. All reports, topographic maps, hydrographic/bathymetric maps and surveys that were produced and conducted on and after August 25, 2005 along the breach locations at the 17th Street Canal, the London Avenue Canal, the Industrial Canal east and west sides, the navigation structure at Bayou Bienvenue (along the MR-GO), and navigation structure at Bayou Dupre (along the MR-GO).

28. The names of all survey companies, organizations, government agencies that performed work and surveyed any breach locations along the 17th Street Canal, the London Avenue Canal, the Industrial Canal east and west sides, the navigation structure at Bayou Bienvenue (along the MR-GO), and navigation structure at Bayou Dupre (along the MR-GO).

29. All information regarding the exact size of any breach/flood wall failure along the 17th Street Canal, the London Avenue Canal, the Industrial Canal east and west sides, the navigation structure at Bayou Bienvenue (along the MR-GO), and navigation structure at Bayou Dupre (along the MR-GO). We want information about and access to the survey data gathered at these and any other breach sites where the sill height of the breach extended below sea level.

## EXHIBIT "B"

1. Any and all documents relative to Paragraph 1 (A-P) of Exhibit "A";

2. Any and all documents relative to Paragraph 2 (A-B) of Exhibit "A";

3. Any and all documents relative to Paragraph 3 of Exhibit "A";

4. Any and all documents relative to Paragraph 4 of Exhibit "A";

5. Any and all documents relative to Paragraph 5 of Exhibit "A";

6. Any and all documents relative to Paragraph 6 of Exhibit "A";

7. Any and all documents relative to Paragraph 7 of Exhibit "A";

8. Any and all documents relative to Paragraph 8 of Exhibit "A";

9. Any and all documents relative to Paragraph 9 of Exhibit "A";

10. Any and all documents relative to Paragraph 10 of Exhibit "A";

11. Any and all documents relative to Paragraph 11 of Exhibit "A";

12. Any and all documents relative to Paragraph 12 of Exhibit "A";

13. Any and all documents relative to Paragraph 13 of Exhibit "A";

14. Any and all documents relative to Paragraph 14 of Exhibit "A";

15. Any and all documents relative to Paragraph 15 of Exhibit "A";

16. Any and all documents relative to Paragraph 16 of Exhibit "A";

17. Any and all documents relative to Paragraph 17 of Exhibit "A";

18. Any and all documents relative to Paragraph 18 of Exhibit "A";

19. Any and all documents relative to Paragraph 19 of Exhibit "A";

20. Any and all documents relative to Paragraph 20 of Exhibit "A";

21. Any and all documents relative to Paragraph 21 of Exhibit "A";

22. Any and all documents relative to Paragraph 22 of Exhibit "A";

23. Any and all documents relative to Paragraph 23 of Exhibit "A";

24. Any and all documents relative to Paragraph 24 of Exhibit "A";

25. Any and all documents relative to Paragraph 25 of Exhibit "A";

26. Any and all documents relative to Paragraph 26 of Exhibit "A";

27. Any and all documents relative to Paragraph 27 of Exhibit "A";

28. Any and all documents relative to Paragraph 28 of Exhibit "A";

29. Any and all documents relative to Paragraph 29 of Exhibit "A";