# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION** | **CIVIL ACTION** |
| | **NO. 05-4182** |
| | **SECTION "K" MAG "2"** |
| **PERTAINS TO: INSURANCE (XAIVER UNIVERSITY OF LOUISIANA V. TRAVELERS CASUALTY PROPERTY COMPANY OF AMERICA NO. 06-516)** | |

*******************************************************************

<u>**MEMORANDUM IN SUPPORT OF**</u>
<u>**MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>
<u>**REGARDING COLLATERAL SOURCE**</u>

**MAY IT PLEASE THE COURT:**

NOW COMES, through undersigned counsel, Plaintiff Xavier University of Louisiana ("Xavier"), who respectfully submits this Memorandum in Support of its Motion for Partial Summary Judgment Regarding Collateral Source.  Xavier moves this Court for partial summary judgment recognizing that any proceeds received by Xavier under the National Flood Insurance Program neither alters nor reduces the amounts owed to Xavier under the "all risks" policy of insurance issued to Xavier by defendant Travelers Property Casualty Company of America ("Travelers").

As stated by two separate courts:

The question is not whether a windfall is to be conferred, but rather who shall receive the benefit of a windfall that already exists.[1]

[I]f the question must be resolved on the basis of who gets a windfall, ***it seems more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it has collected a premium.***[2]

The failure of the levee protection system during Hurricane Katrina, described as the greatest engineering failure in American history, created a unique scenario that entitles Plaintiffs to collect funds from the National Flood Insurance Program ("NFIP") and the commercial and homeonwers' insurance policies issued by Travelers.

In certain hurricane cases, insurers have contended that, with respect to coverage owed for damage caused by levee and floodwall breaches, they are entitled to a reduction or offset equal to the amounts received by insureds under the NFIP.  Xavier respectfully submits that Travelers will take the same position in this case, (in fact, Travelers has filed a motion to compel production of NFIP documents pending before the Court) but such an argument is in error because it violates the collateral source rule and/or the equitable principles involved in the proposed offset.

Xavier submits that summary judgment is appropriate for the following reasons:

- There is __no language__ in the Policy that specifically states that Xavier's recovery under the Policy will be reduced by NFIP payments.

- Under the collateral source rule, payments to a plaintiff from a "collateral source do not

---

[1]*Gypsum Carrier, Inc v. Handelsman*, 307 F.2d 525, 534 (9th Cir. 1962).

[2]*Van Tassel v. Horace Mann Ins. Co.*, 207 N.W.2d 348, 352 (1973) (emphasis added).

2

reduce the [plaintiff's] recovery against" the defendant.[3]

- Louisiana courts recognize that the main reason for the collateral source rule is that "**the defendant should not gain an advantage from outside benefits provided to the plaintiff independently of any act of the defendant.**"[4]

  - Travelers will gain an unfair advantage if it can use benefits independently provided by the federal government, and for which Xavier paid premiums, to reduce their coverage obligations to Xavier.

- The application of the collateral source rule is <u>**not**</u> limited to tort suits.

  - As noted by the Louisiana Supreme Court, it is "mere happenstance that the collateral source rule has been applied chiefly in the context" of a conventional tort.[5]

  - Courts throughout the country have held that the collateral source rule applies to actions sounding in contract, as well as tort.[6]

  - The collateral source rule "has been applied in connection with breach of contract, when there is a tortious or negligence component to the breach, <u>**or when the equitable balance is such that any windfall should not benefit the wrongdoer.**</u>"[7]

- There are two <u>**independent sources**</u> of coverage for Xavier's levee-related damages.

---

[3] *Suhor v. Lagasse*, 2000-1628 (La.App. 4 Cir. 9/13/2000), 770 So. 2d 422, 423.

[4] *La. Dept. of Transp. & Dev. v. Kansas City So. R.R.,* 2002-2349 (La. 5/2/2003), 846 So. 2d 734, 739 (emphasis added).

[5] *Id.* at 741.

[6] *See Hall v. Miller*, 143 Vt. 135, 465 A.2d 222 (Vt. 1983); *Hartnett v. Riveron*, 361 So. 2d 749 (Fla.3d DCA 1978); *In re Emergency Beacon Corp.*, 48 B.R. 341 (D.C.N.Y. 1985).

[7] *LaSalle Talman Bank v. U.S.*, 317 F.3d 1363, 1372 (Fed. Cir. 2003).

- One source is Travelers, a commercial, for-profit entity that entered into a valid contract with Xavier for an "all risk" insurance policy.

- If Travelers receives the benefit of premium-secured policy payments funded by Xavier and made under the NFIP, <u>there would effectively be a transfer of funds from the government to Travelers.</u>

- An insurer cannot reduce an insured's recovery merely because the insured received payments from a collateral source.

    - In *Protection Sprinkler Co. v. Lou Charno Studio*,[8] a party's obligations, under a "hold harmless" agreement, to defend and indemnify plaintiff were not reduced by defense and indemnity payments made by plaintiff's liability insurer.[9]

    - In *Merchants Medical Insurance Group v. Orthopedic Professional Association*,[10] an uninsured motorist insurer could not offset payments to insured injured in an employment-related accident by amounts received from workers' compensation insurer.[11]

- The other source of coverage is the NFIP, a *subsidized* government program designed

---

[8]888 S.W.2d 422 (Mo. App. 1994.

[9]*Id.* at 424.

[10]480 A.2d 840, 844 (N.H. 1984), *superseded by statute as stated in Rooney v. Fireman's Fund Ins. Co.*, 645 A.2d 52 (1994)

[11]*Id.* at 844.

4

to "alleviate the economic hardships caused by unforeseen flood disasters."[12]

- The NFIP was not designed to provide a subsidy to private insurance companies.

- Application of the collateral source rule notwithstanding, Travelers is still not entitled to a collateral source *credit* in the form of an offset.

  - Xavier will receive **no windfall** if it is permitted to recover from multiple policies beyond what Travelers assumes to be a total loss.

  - Regardless of whether Xavier receives a windfall through a NFIP policy for which it paid, courts have prohibited insurers from using offset principles to obtain **insurer windfalls**.

  - In this case, Travelers, which agreed to pay for all covered losses, should not enjoy a reduction of its obligations because Xavier may have purchased insurance that may cover the some of the same type of losses. Thus, when the question is who will "*receive the benefit of a windfall that already exists*," the collateral source rule provides an answer — **Travelers should not receive a windfall at the expense of Xavier's bargained-for benefits**. Xavier requests, therefore, that this Court grant the Motion for Partial Summary Judgment.

## **INTRODUCTION**

I.    **The Ambiguous "Flood Exclusion."**

Prior to Hurricane Katrina, Xavier was covered by a policy issued by Travelers, bearing

---

[12]*Powers v. United States,* 996 F.2d 1121, 1126 (11th Cir. 1993).

number Y-630-528d9763-TIL-04 ("the Policy").[13]   The Policy contained a "Deluxe Property

Coverage Form" providing "all risks" coverage for "direct physical loss" to covered property.

Following Katrina, Xavier sued Travelers over Travelers failure to discharge is obligations under the

Policy.  In its Answer, Travelers raised the alleged "flood exclusion" as a coverage defense to claims

that the levee breaches resulted in a covered loss.[14]

The defective performance of the Southeast Louisiana Hurricane Protection System (the

"System") during Hurricane Katrina has been called the greatest engineering failure in American

history.  In light of the levee and floodwall failures, Xavier argued that the "flood exclusion" in the

Travelers Policy was, at best, ambiguous because it did not distinguish between a natural flood and

a man-made flood.  In its November 27, 2006 opinion (the "Opinion"), this Court agreed and held

that, as a matter of law, the "flood exclusion" in the Policy was ambiguous.[15]   The impact of the

Opinion is clear — to the extent it is determined that property damage resulted from the conduct of

the United States Army Corps of Engineers in designing and maintaining (all or part of) the System,

Xavier's "all risk" Policy will cover that damage.

At the time of Hurricane Katrina, Xavier was also covered by certain policies of insurance

issued by American Bankers Insurance Company through the National Flood Insurance Program

("NFIP").[16] Xavier brings this motion and submits that any proceeds received from American

---

[13]A copy of the Policy has already been entered into the Record and is attached as Exhibit
1 to Xavier's Motion for Partial Summary Judgment, Record Doc. No. 1217.

[14]*See* Record Doc. No. 9.

[15]*See* Opinion, pp. 58-59 [Record Doc. No. 1803].

[16]*See* April 13, 2007 Letter to Ralph Hubbard, attached hereto as Exhibit A (making
required disclosures pursuant to this Court's Case Management Order No. 4).

Bankers Insurance Company constitute an inadmissible collateral source and are irrelevant to this case.[17]

## II.    The National Flood Insurance Program and Katrina.

In 1968, the United States Congress, having found that "flood disasters have created personal hardships and economic distress which have required unforeseen disaster relief measures and have placed an increasing burden on the Nation's resources," enacted the National Flood Insurance Act.[18] The NFIP, which was created in that Act, is not a for-profit entity.[19]   Rather, it is a *subsidized* government program, for which the insureds also pay premiums, designed to "alleviate the economic hardships" suffered by the policy holders caused by floods.[20]

As of August 29, 2005, Xavier had procured an insurance policy under the NFIP, a program that based its premiums more on "political and statutory considerations" than "actuarial consideration[s]."[21]   When water burst through the System's levees and floodwalls and damaged Xavier's properties, Xavier received its flood insurance money from the "public treasury," *i.e.,*

---

[17]Travelers has filed a motion seeking to compel Xavier to disclose the amount of funds received from American Bankers through the NFIP.  As set forth herein, Xavier submits that the amount of the proceeds received is inadmissible.  In opposition to the motion to compel, Xavier will further contend that the amount of proceeds is inadmissible and not reasonably calculated to lead to the discovery of admissible evidence.

[18]*See* 42 U.S.C. § 4001(a).

[19]*See Newton v. Capital Assurance Co.,* 245 F.3d 1306, 1310 (11th Cir. 2001).

[20]*Powers v. United States,* 996 F.2d 1121, 1126 (11th Cir. 1993); *see also Newton*, 245 F.3d at 1310.

[21]*Studio Frames Ltd v. Standard Fire Ins. Co.,* 397 F.Supp.2d 685, 687 (M.D. N.C. 2005).

federal funds, pursuant to the NFIP.[22]  In a September 21, 2005 memorandum, an official at the

Federal Emergency Management Administration ("FEMA"), which administered the NFIP, set forth

expedited claims handling processes to address the "unprecedented" flood losses in New Orleans.[23]

Plainly, the federal government made a policy decision to quickly transfer as much as money as

possible to as many people as possible who paid premiums for insurance through the NFIP.   The

government made this decision for the benefit its policy holders and not private insurers who issued

"all risks" insurance policies.

## III.   <u>Insurers' Demand for Reduction or Offset.</u>

This Court has held that, under the unique and terrible facts that led to the destruction of so

much property, the levee-related damage sustained by Xavier and other insureds may be covered

under Travelers' "all risks" insurance policy.  Since this Court issued its Opinion, the insurers have

engaged in a desperate search to avoid or reduce their obligation to pay for covered losses of an "all

risk" policy.  In other Hurricane Katrina cases, insurers have latched onto the theory that an insured's

recovery of funds pursuant to the NFIP limits the amount of money that insured can recover under

the all risk policies.

In one such case, Allstate Insurance Company ("Allstate") explicitly moved for a Judgment

declaring that a plaintiff's recovery against the Insurers must be "offset by the total amount recovered

under the flood policy."[24]  Allstate contended that allowing plaintiffs to recover under NFIP and the

---

[22]*Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998).

[23]*See* September 21, 2005 memorandum from David I. Maurstad, attached hereto as
Exhibit B.

[24]*See* Allstate Insurance Company's Memorandum in Support of Motion for Summary
Judgment in *Wellmeyer v. Allstate Insurance Company,* No. 06-1585 (E.D. La.), attached as

Policies would result in impermissible "windfalls and double recoveries for what is a single loss to their home and contents."[25]

Curiously absent from this analysis is a recognition that if the levee breach-related damage is a covered loss under the Policy, then **insurers would receive a windfall by collecting the policy premiums from Xavier and then paying a fraction of what they owe.**[26]  Such a result would conflict with basic principles on the interpretation of insurance contracts.  It would also thwart the intent of the federal government in streamlining the requirements for payment under the NFIP so that more policy holders could receive more money in a shorter amount of time.  As such, Xavier moves this Court for a Judgment that the collateral source rule prohibits any offset or reduction of monies paid by the NFIP from amounts owed by Travelers.

## **ARGUMENT**

### I.    **Principles of Contract Interpretation Establish That There Is No Basis for Offset.**

When interpreting insurance policies, a court should not interpret an insurance policy so as to "enlarge or restrict its provisions beyond what its terms reasonably contemplated."[27]  The interpretive goal is, instead, to "fulfill the reasonable expectations of the parties."[28]  When policy

---

Exhibit "C."

[25] *See id.,* p. 7.

[26] The Insurers have also not explained why they should treat their insureds differently. An insured who was covered by the NFIP would have his recovery against the Insurers reduced while another insured who did not have NFIP coverage would recover full benefits from the Insurers.  Such a distinction is the height of arbitrariness in that it treats similarly-situated insureds vis-a-vis their insurer differently.

[27] *Lindsey v. Poole*, 579 So. 2d 1145, 1147 (La.App. 2 Cir. 1991).

[28] *Trinity Industries, Inc. v. Ins. Co. of North America*, 916 F.2d 267, 269 (5th Cir. 1990).

9

provisions are ambiguous, they must be "construed against the insurer who issued coverage and in favor of the insurer."[29]   A court's interpretation of a contract should never lead to "absurd consequences."[30]   The position of insurers, if accepted, would lead to an absurd result whereby an insured pays premiums on flood insurance for years only to find that it must surrender payments under that policy to a third party.

As noted by this Court, if an "insurer wanted to exclude coverage for damages covered by a national insurance program, it could so state in the relevant exclusion."[31]   Here, the Policy contains **no** language suggesting Xavier's recovery would in any way be limited or reduced if it received funds from the NFIP.   If there is nothing in the policy about the NFIP, an insured's reasonable expectation would be that the NFIP would not affect his recovery.

In *Phelps v. State Farm Mutual Automobile Insurance Co.*,[32] plaintiff was injured in an auto accident while driving his employer's car.[33]  Following the accident, plaintiff recovered from his employers' workers' compensation insurer and from a privately purchased disability policy.  When plaintiff sued his uninsured motorist ("UM") insurer, the UM insurer sought to offset the amounts owed under its policy with the amounts plaintiff received from the workers' compensation and

---

[29]*Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 764 (La. 1994)

[30]*See* Louisiana Civil Code article 2046.

[31]*See* Opinion, p. 46.

[32]112 P.2d 944 (1996).

[33]*Id.* at 945.

private disability insurers.[34]

The policy at issue in *Phelps* contained a provision explicitly authorizing the UM insurer to reduce any amounts owed by any amounts paid under any workers' compensation law, but there was no comparable provision for privately purchased disability insurance. The Nevada Supreme Court ruled that, while the UM insurer could offset the workers' compensation benefits, it could not do so for the private disability insurance. The court focused on the absence of a provision in the policy authorizing offset for private disability insurance:

> **[i]t is incumbent upon the policy issuer to specifically delineate in the policy which funds it can offset**, and in this case, State Farm could have expressly stated in its UM policy that payments made to the insured pursuant to the UM policy would be offset by funds received by the insured from the insured's own private disability insurance.[35]

Likewise, "it was incumbent" upon Travelers to explicitly state in the Policy that any funds Xavier received under the NFIP would reduce the amount owed by the Travelers. Because Travelers did not include such language in the Policy, it has no right, under the plain terms of the Policy, to offset amounts owed to Xavier with amounts received by Xavier pursuant to the NFIP.

## II.     The Collateral Source Rule Applies to Prevent Offset by Travelers.

### A.     General Collateral Source Principles

Proving once again that no man (or state) is an island, the collateral source rule is a common law concept that has become "well-established" in Louisiana.[36] In *Suhor v. Lagasse*, the court

---

[34]*See id.* at 946 (emphasis added).

[35]*Id.* at 949.

[36]*La. Dept. of Transp. & Dev. v. Kansas City So. R.R.,* 2002-2349 (La. 5/2/2003), 846 So. 2d 734, 739 (hereinafter, "*Kansas City Southern*"). Louisiana law will apply to this motion. *See* November 27, 2006 Opinion, pp. 4-5.

11

provided the following summary of the collateral source rule:

> [A] tortfeasor generally is not entitled to a credit for a payments made to the plaintiff through collateral sources independent of the wrongdoer's procuration or contribution.  Generally, payments to a tort victim from a collateral source do not reduce the victim's recovery against the tortfeasor.  Thus, the collateral source rule applies to situations where the victim receives compensation for his damages from a source independent of the tortfeasor.[37]

Among the several "public policy" reasons for the collateral source rule, the "reason most often stated . . . is that the <u>defendant should not gain an advantage from outside benefits provided to the plaintiff</u> independently of any act of the defendant."  Under this rule, payments received from an independent source "**are not deducted** from the award the aggrieved party would otherwise receive from the wrongdoer."[38]

### B.     The Collateral Source Rule Applies to Breach of Contract Claims.

The Louisiana Supreme Court has rejected the suggestion that the collateral source rule should be narrowly applied only to tort claims.  In *Kansas City Southern*, the Louisiana Department of Transportation ("DOTD") expended several million dollars to remove environmental pollution at a state construction site.  The United States government, through the Federal Highway Administration ("FHWA"), reimbursed the DOTD ninety percent of the remediation costs.  The DOTD then sued several defendants as the parties responsible for the clean-up costs pursuant to Louisiana Environmental Quality Act ("LEQA").[39]

The defendants contended that the DOTD's maximum recovery against them would be the

---

[37]*Suhor v. Lagasse*, 2000-1628, (La.App. 4 Cir. 9/13/2000); 770 So. 2d 422, 423.

[38]*Kansas City Southern* 846 So. 2d at 739 (emphasis added).

[39]*See id* at 736.

ten percent of clean-up costs that the DOTD actually paid.  The defendants claimed that any damages owed by them under the LEQA had to be offset by the amount covered by the FHWA.  According to defendants, permitting the DOTD to recover more than ten percent of the clean-up costs would result in an "impermissible double recovery."[40]  The district court agreed with the defendants and the Louisiana First Circuit Court of Appeals affirmed, finding that the collateral source rule did not apply because it was a "tort based concept."[41]

The Louisiana Supreme Court reversed the rulings of the lower courts.  The Court found that it was "**mere happenstance** that the collateral source rule has been applied chiefly in the context of a conventional [Article 2315] tort."[42]  Reviewing jurisprudence from across the country, the Court held that the collateral source rule had been applied in "a range of situations where the collateral source is provided to the plaintiff by a **government agency** or even a gratuitous source."[43]

Once the Louisiana Supreme Court ruled that the collateral source rule *could* apply to the DOTD's claim against the defendants, it held that the rule *should* apply to prevent any offset of the amounts paid to the DOTD by the FHWA.[44]  The Court reasoned that, even if its decision resulted in a "windfall" for the DOTD, it was preferable to "**allowing the liability of the potential**

---

[40]*Id.* at 737.

[41]*La. Dept. of Trans. & Dev. v. Kansas City Southern R.R.*, 36,002 (La.App. 2 Cir. 8/8/2002), 827 So. 2d 443, 461.

[42]*Kansas City Southern*, 846 So. 2d at 741 (emphasis added).

[43]*Id.* at 740 (emphasis added).  The Louisiana Supreme Court observed that, considering the origin of the collateral source doctrine, decisions from other states on the collateral source rule were "persuasive."  *Id.* at 742.

[44]*Id.* at 744.

**wrongdoer under the LEQA to be reduced by the 90 percent federal share**."[45]  In other words, as between the victim and the wrongdoer, any windfall should go to the victim.  Accordingly, the Court held that any judgment against defendants "should not be reduced by the ninety percent of the federal share of the remediation funded by the FHWA."[46]

As support for its broad reading of the collateral source doctrine, the Louisiana Supreme Court favorably cited a Vermont case, *Hall v. Miller*,[47] which held that the collateral source rule applies to tort **and** breach of contract claims.  In *Hall,* plaintiffs purchased cows that were infected with disease.  For promptly destroying the cows, plaintiffs received money from "state and federal indemnification programs."[48]  Plaintiffs then sued the sellers of the cows for breach of warranty. The sellers responded that plaintiffs' "recovery should be reduced by the amount" received under the indemnification programs.[49]   The sellers contended that the collateral source rule was inapplicable to claims sounding in contract.  The Supreme Court of Vermont disagreed:

> [W]e think the better rule is that the collateral source rule should apply to actions sounding in contract, as well as tort.  The breaching party in a contract action or, as here, a breach of warranty action, may not be a wrongdoer in the same sense as is a tortfeasor.   Nonetheless, **as between the two parties, it is better that the injured plaintiff recover twice than that the breaching defendant escape liability altogether**.[50]

---

[45]*Id.* (emphasis added).

[46]*Id.* at 745.

[47]465 A.2d 222 (Vt. 1983).

[48]*Id.* at 226.

[49]*Id.*

[50]*Id.* (emphasis added).

In support of its holding, the *Hall* court cited *Roundhouse v. Owens-Illinois*,[51] in which a purchaser of fish brought a breach of warranty suit against the seller for supplying a diseased product. Similar to *Hall*, the purchaser received $51,000 in compensation from the government for destroying the diseased fish and then sued the seller.[52]  At trial, plaintiff's recovery was reduced by $51,000.  The United States Sixth Circuit Court of Appeals reversed the district court ruling, concluding that, because the source of the compensation was "independent of (collateral to) the wrongdoer," the collateral source rule applied.[53]

Thus, in cases arising under Vermont (*Hall*) and Michigan (*Roundhouse*) law, courts applied the collateral source rule to breach of contract cases where the "independent" funds came from the government.  State and federal courts in Florida,[54] Kansas,[55] Missouri,[56] New York,[57] and Rhode Island[58] have likewise held that the collateral source rule sounds in contract as well as tort.

C.    **The Collateral Source Rule Applies to Xavier's Claims Against Travelers.**

_____Xavier requests that this Court follow *Kansas City Southern* and declare that Xavier's

---

[51]604 F.2d 990 (6th Cir. 1979).

[52]*See id.* at 994.

[53]*Id.*

[54]*See Hartnett v. Riveron*, 361 So. 2d 749, 751 (Fla.3d DCA 1978).

[55]*See Masterson v. Boliden-Allis, Inc.,* 865 P.2d 1031, 1035 (Kan. App. 1993).

[56]*See Protection Sprinkler Co. v. Lou Charno Studio*, 888 S.W.2d 422, 424 (Mo.App. 1994).

[57]*See In re Emergency Beacon Corp.*, 48 B.R. 341 (D.C.N.Y. 1985).

[58]*See Ins. Co. of N. Am. v. Kayser-Roth Corp.*, 1999 WL 813661 (R.I.Super. July 29, 1999), 1999 WL 813661, * 43.

recovery against Travelers will not be reduced by any payments made pursuant to the NFIP. Although the typical application of the collateral source rule occurs in tort suits, the Louisiana Supreme Court recognizes that this fact is "mere happenstance."[59]

Xavier has not located a Louisiana case directly addressing this issue.  However, given the expansive view of the collateral source rule pronounced in *Kansas City Southern* and its favorable citation of *Hall,* Xavier submits that the Louisiana Supreme Court would follow *Hall* and apply the doctrine in breach of contract cases.  Because the main reason for the collateral source rule is to prevent the wrongdoer from obtaining an "advantage from outside benefits" provided independently to plaintiff, as between the breaching party, *i.e.,* the wrongdoer, and the injured plaintiff, the collateral source rule should protect the plaintiff.  Hence, Xavier requests that this Court apply the collateral source rule to its breach of contract claims against Travelers.

In *Protection Sprinkler,* Protection Sprinkler Company ("Protection Sprinkler") was sued by Lou Charno Studio, Inc. ("Lou Charno") for damages related to a fire at a studio.  The parties reached an agreement whereby Lou Charno agreed to release Protection Sprinkler and "hold it harmless from any other actions."[60]  Lou Charno sued other parties, who then impleaded Protection Sprinkler as a third-party defendant.  After Lou Charno failed to pay for attorneys' fees and expenses incurred by Protection Sprinkler in defending the third-party action, Protection Sprinkler sued Lou Charno.[61]  The district court ruled in favor of Protection Sprinkler.

On appeal, Lou Charno asserted that, because Protection Sprinkler's insurer paid for all its

---

[59] *Kansas City Southern*, 846 So. 2d at 741.

[60] *Protection Sprinkler*, 888 S.W.2d at 423.

[61] *See id.*

16

fees and expenses in defending the third-party action, Protection Sprinkler was "no worse off than had Lou Charno not breached the contract."[62]  As argued by Lou Charno, the "trial court's judgment has put Protection Sprinkler in a better position."[63]  The court, relying on the collateral source rule, affirmed the district court's Judgment.  Reasoning that a wrongdoer is "not entitled to a reduction in damages" because a plaintiff receives funds from a collateral source, the court concluded that "**damages assessed against Lou Charno Studio, the wrongdoer, should not be offset**."[64]

Here, Xavier contends that Travelers breached the Policy for failing to pay for levee-related damages.  As the breaching party, Travelers is, like Lou Charno Studio in *Protection Sprinkler*, the "wrongdoer."  Xavier submits that application of the collateral source rule will ensure that the "wrongdoer" will not benefit from Xavier's receipt of funds from an independent source, the federal government, for which Xavier paid separate premiums.

There are three sides to every collateral source issue: (1) the injured party, (2) the injurer, and (3) a source independent of the injurer who has paid the injured party.[65]  If, under the application of the collateral source rule, the injurer pays what he owes without offsetting the amount paid by the independent source, then Plaintiffs may receive "double recovery."[66]  Forty-five years ago, though, the United States Ninth Circuit Court of Appeals addressed and persuasively answered criticisms that

---

[62]*Id.* at 424.

[63]*Id.*

[64]*Id.* (emphasis added).

[65]*See* John G. Fleming, *The Collateral Source Rule and Contract Damages,* 71 CAL. L. REV. 56 (Jan. 1983).

[66]As argued below, Xavier disputes the fact that it will receive a "windfall" if its motion is granted.

the collateral source rule overcompensates plaintiffs:

> [t]he question is not whether a windfall is to be conferred, but rather who shall receive the benefit of a windfall that already exists. **As between the injured person and the tortfeasor, the former's claim is the better**. This may permit a double recovery, but it does not impose a double burden. **The tortfeasor bears only a single burden for his wrong.**[67]

To the extent, therefore, that Xavier may receive funds from Travelers and the NFIP for the same loss, such a result is preferable to allowing Travelers to keep Xavier's premiums without paying for what is owed under the Policy. Permitting Travelers to offset NFIP payments would also sanction the arbitrary distinction of insureds who did not receive NFIP payments receiving one hundred percent of coverage while insureds who procured NFIP coverage receiving less from the insurers. Accordingly, Xavier requests that this Court apply the collateral source rule to payments made to Xavier pursuant to the NFIP.

## III.    Travelers is Not Entitled to a Collateral Source Credit or Offset.

_____Alternatively, if this Court finds that the collateral source rule is inapplicable, it does not follow that Travelers is thereby entitled to a credit or offset. As noted by a court in California:

> [a] court's decision not to grant a defendant collateral source credit does not rely on the same legal basis as the decision to apply the collateral source rule. [Even though] the collateral source rule has never [in California] been extended to breach of contract . . . not granting the [defendant] collateral source credit is well within the judge's discretion. In California, there is no statutory or common law precedent in a breach of contract action to give defendants collateral source credit for income tax benefits which plaintiffs may have received.[68]

Similarly, Louisiana has no precedent allowing for the type of credit sought by Travelers. The

---

[67] *Carrier v. Handelsman,* 307 F.2d 525, 535 (9th Cir. 1962).

[68] *Depalma v. Westland Software House,* 225 Cal.App.3d 1534, 1539 (Cal. 2 Dist. Ct. App. 1990).

applicability of the collateral source rule notwithstanding, Travelers is still not entitled to any offset.

**A.    Courts Have Prohibited Insurers From Using Offset Principles to Obtain a Windfall.**

_____Insurers in other hurricane cases have warned that, unless they are permitted to offset amounts owed under the insurance policies, plaintiffs will receive a "double recovery," *i.e.,* a "windfall."   Left unstated is that, if this Court accepts the insurers' arguments, they will have collected premiums from plaintiffs and then avoided the obligation to pay for covered losses.  They will, in other words, receive a "windfall."

In this zero sum scenario, some party will benefit from a unique scenario whereby a catastrophic failure by the Army Corps of Engineers entitles Xavier to recover under the NFIP **and** the Policy.  The Minnesota Supreme Court aptly framed the question, and answer, as follows:

> if the question must be resolved on the basis of who gets a windfall, **it seems more than just that the insured who has paid a premium should get all he paid for** rather than that the insurer should escape liability for that for which it collected a premium.[69]

It is certainly more just that Xavier, which suffered due to the fault of others, should be paid for all losses covered under the Policy for which it as paid premiums to the Travelers over the years.[70]  Anything less would unfairly and unjustifiably result in a windfall to the Travelers.

In *Merchants Mutual*, an employee injured in an accident brought suit against his UM insurer when it relied on policy language to offset amounts owed under the UM policy with workers'

---

[69]*Van Tassel,* 207 N.W.2d at 352 (emphasis added).

[70]*See id.; see also Stout v. AMCO Ins. Co.*, 645 N.W.2d 108, 114 (Minn. 2002) (prohibiting auto insurer from using payments made to plaintiff under state Medicaid system to reduce amounts owed to insured for medical benefits).

compensation benefits received by the employee.[71]  Unlike in *Phelps, infra*, where the court held that a UM insurer could offset workers' compensation benefits because the offset provision was "specifically delineated" in the policy, the court in *Merchants Mutual* held that such a provision was an "invalid restriction of the statutory scope of coverage."[72]

The court reasoned that, if it were to allow the insurer to reduce the amount owed under the policy with the workers' compensation benefits because of the offset provision, it "**would be creating a windfall for uninsured motorist carriers**."[73]  The court recognized, "**this windfall will sometimes be at the expense of plaintiff** [who] has paid for these collateral benefits in the form of insurance premiums or concessions in the wages he receives because of such fringe benefits."[74]

Here, where there is no provision authorizing Travelers to offset NFIP payments and where Xavier paid premiums in exchange for Travelers' commitment to pay for covered losses, Travelers will receive a windfall "at the expense" of Xavier if it is allowed to use offset to reduce its coverage obligations to Xavier.

**B.**      ***Griffin* is Distinguishable and the Fear Over "Double Recovery" Is Misplaced.**

**(I)      The *Griffin* Case**

As stated above, Allstate has, in another hurricane case, moved for a Judgment declaring that a plaintiff's recovery against insurers must be "offset by the total amount recovered under the flood

---

[71]480 A.2d at 841-42.

[72]*Id.* at 655.

[73]*Id.* at 656 (emphasis added).

[74]*Id.*  New Hampshire statutory law was ultimately amended to allow UM insurers to offset workers' compensation benefits.  *See Rooney v. Fireman's Fund Ins. Co.*, 645 A.2d 52, 54 (N.H. 1994).

policy."[75]  Allstate relies heavily on *State Farm Fire & Casualty Co. v. Griffin*[76] in support of its motion.

In *Griffin,* plaintiffs had purchased two policies from State Farm, a homeowners' policy that expressly excluded damage due to flood and a flood policy that expressly excluded damage due to fire.[77]  Within the effective dates of the policies, plaintiffs sustained a flood loss and, nine months later, a fire loss.  After the fire, the adjuster inspected the premises, estimated the amount to replace *all* the damaged property as $59,547.98, and then subtracted from that amount the value of property that had also been damaged in the flood.[78]  State Farm paid the remainder to plaintiffs.

Plaintiffs filed suit, claiming that State Farm improperly deducted the value of flood-damaged property.  The appellate court reversed a district court Judgment in plaintiffs' favor.  The court stated that the lower court ruling would have "allowed [plaintiffs] to recover twice for a loss they incurred only once [*i.e.,* double recovery] and would have allowed [plaintiffs] to recover under the homeowners' policy for a flood loss, <u>which was a type of loss expressly excluded from coverage under the homeowners' policy</u>."[79]

Citing *Griffin*, Allstate argued that the Plaintiffs "cannot now recover under their homeowner

---

[75]*See* Allstate Insurance Company's Memorandum in Support of Motion for Summary Judgment in *Wellmeyer* (hereinafter, "Allstate Memo"), attached as Exhibit "C."

[76]888 S.W.2d 150 (Tex.App-Hous. [1 Dist.] 1994); *see* Allstate Memo, pp. 7-8.

[77]*See id.* at 152.

[78]*See id.*

[79]*See id.* at 157 (emphasis added).

policy for the same damage for which they recovered under the flood policy."[80]  There are, however, two major flaws with Allstate's reliance on *Griffin*.  First, the policy in *Griffin* specifically excluded flood-related damage from coverage.  Here, **the Policy, as found by this Court, provided coverage for levee breach-related damage**.  Unlike *Griffin*, permitting Xavier full recovery will not result in a recovery of a "type of loss expressly excluded from coverage under the homeowners' policy."[81]  As stated in *Phelps*, "it is incumbent upon the policy issuer to specifically delineate in the policy which funds it can offset."[82]  There was no such delineation in the Policy regarding NFIP payments to Xavier.

Second, *Griffin* ignores the central question raised in this motion — who receives the benefit of a windfall that exists because the federal government paid for damage covered by the Policies?  The *Griffin* court expressed concern about plaintiffs' alleged double recovery, but never noted that, under its ruling, State Farm received a windfall in that it "escaped liability for that which it ha[d] collected a premium."[83]  This concern over "double recovery" is further premised on the fear that a "moral hazard" is created if an insured is allowed a "recovery in excess of the actual loss."[84]  Obviously, because Xavier has no control over a hurricane (or the hurricane protection system),  no "moral hazard" arises from allowing Xavier to recover under both the NFIP and the Policy.

---

[80]*See* Allstate Memo, p. 8.

[81]*Griffin*, 888 S.W.2d at 157.

[82]917 P.2d at 946

[83]*Van Tassel*, 207 N.W.2d at 352.

[84]*DeCespedes v. Prudence Mutual Cas. Co. of Chicago, Ill,* 193 So. 2d 224, 226 (Fla. App. 1966).

**(ii)     There Is No Windfall for the Insured in Collateral Source Cases.**

Travelers' argument that they should be allowed to offset NFIP payments rests entirely on the concept that insured should not be allowed a "windfall," *i.e.,* insureds should not be allowed to recover twice for the same loss.  However, Louisiana courts recognize that, particularly in the insurance context, the collateral source rule does not bestow a "windfall" on plaintiffs.

In *Bozeman v. State,* the Louisiana Supreme Court observed that the Louisiana Fourth Circuit Court of Appeal's opinion in *Bryant v. New Orleans Public Service, Inc.*[85] provides a "lucid discussion of the policy reasons supporting the collateral source rule."[86]  In *Bryan*, the Fourth Circuit analyzed and refuted the suggestion that application of the collateral source rule results in a windfall for plaintiff.

The court reasoned that there is no "windfall" or "double dip" in collateral source cases because the "injured party's patrimony was diminished to the extent that he was forced to recover against outside sources."[87]  The court then applied its reasoning to the insurance context:

> in the case of insurance purchased by the plaintiff or by deductions made form the plaintiff's paycheck, the plaintiff has paid premiums which are a diminution of his patrimony as that cash would have otherwise been available to him.  By going against his own insurance policy, **he is diminishing the benefits of that policy which would otherwise be available, he has suffered a diminution of the patrimony by premium payments and his rates will rise providing a third area of loss**.[88]

To the extent, then, that both Xavier recovers against Travelers and the insurer that issued

---

[85] 406 So. 2d 767 (La.App. 4 Cir. 1981).

[86] 2003-1016 (La. 7/2/2004), 879 So. 2d 692, 699

[87] *Bryan*, 406 So. 2d at 768.

[88] *Id.* (emphasis added).

its flood policy, Xavier is not receiving a windfall.  Xavier has already diminished its patrimony by paying premiums pursuant to the NFIP.  The benefits to be derived from those premiums have also been diminished.  The application of the collateral source rule will not, therefore, result in a windfall for Xavier.

      **C.**     **Permitting an Offset Would Discourage Early Settlements.**

      Permitting defendants like Travelers to offset NFIP payments rewards insurers that delay payment of valid claims.  In *Insurance Company of North America v. Kayser-Roth Corp.*, before the court was an insurer, which had refused to settle its claim, trying to offset the payments received by the insured from settling insurers.[89]  At trial, the district court noted that the insurer's "strategy was quite openly that of waiting out of the settlement process until it could better assess how much [the insured] might reap from other negotiations."[90]

      The Rhode Island Supreme Court endorsed the trial court's view that permitting a setoff would encourage carriers "**simply to wait each other out in the hope that the claim is paid from the settlements before their own insurance fund can be reached.**"[91]  Here, the NFIP pro-actively took steps to pay Katrina-related claims expeditiously.  The insurers now want to use these expeditious payments to reduce their own coverage obligations.  It would be patently unfair if Travelers, and the rest of the insurance industry, turned a public policy decision into a windfall for themselves.  Xavier submits, as such, that offset is inappropriate in these cases.

---

[89]770 A.2d 403 (R.I. 2001).

[90]*Id.* at 413.

[91]*Id.* (emphasis added).

24

## CONCLUSION

Xavier paid premiums to the Travelers on the understanding that, when an unforeseen disaster struck, the Travelers would pay for covered losses. This Court has held that damage caused by breaches in the levee protection system constitutes a covered loss under the Policy. The insurers in these hurricane cases now seek to avoid their obligations for these losses by claiming that the amount owed under their policies should be reduced by amounts paid to plaintiffs, like Xavier, from the NFIP, a subsidized government program, for which Xavier paid separate premiums. Xavier submits that, in accordance with the well-established collateral source rule, the Travelers is not entitled to such a windfall at the expense of Xavier's bargained-for benefits. Accordingly, Xavier move this Court for a Judgment that payments to Xavier under the NFIP do **not** entitle Travelers to reduce or offset the amounts owed under the Policy.

Respectfully Submitted:

 /s/ James M. Garner
JAMES M. GARNER, #19589
DARNELL BLUDWORTH, #18801
TIMOTHY B. FRANCIS, #14973
KEVIN M. MCGLONE, #28145
**SHER GARNER CAHILL RICHTER
 KLEIN & HILBERT, L.L.C.**
909 Poydras St., 28th Floor
New Orleans, LA   70112
Telephone:  504-299-2100
Facsimile: 504-299-2300
 COUNSEL FOR XAVIER UNIVERSITY
OF LOUISIANA

AND

CALVIN C. FAYARD, JR., #5486
FAYARD AND HONEYCUTT, APLC
519 Florida Avenue, SW
Denham Springs, Louisiana 70726
Telephone: 225-664-4193
Fax: 225-664-6925
calvinfayard@fayardlaw.com
LIAISON COUNSEL – INSURANCE PSLC

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2007, I electronically filed the forgoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record in the captioned matter.

/s/ James M. Garner
JAMES M. GARNER