LAW OFFICES OF

# SHER GARNER CAHILL RICHTER
# KLEIN & HILBERT, L.L.C.

TWENTY-EIGHTH FLOOR
909 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70112-1033
http://www.shergarner.com

LEOPOLD Z. SHER [1]
JAMES M. GARNER [2]
ELWOOD F. CAHILL, JR.
RICHARD P. RICHTER
STEVEN I. KLEIN [1,5]
PETER L. HILBERT, JR.
MARIE A. MOORE [3]
DEBRA J. FISCHMAN
ROBERT P. THIBEAUX
DARNELL BLUDWORTH [3]
MARTHA Y. CURTIS [2]
NEAL J. KLING
KEITH A. KORNMAN [2]
JOSHUA S. FORCE [3,4]

DEBORAH J. MOENCH
DOROTHY S. WATKINS LAWRENCE [2]
JOHN T. BALHOFF, II
ALVIN C. MIESTER, III
KAREN T. HOLZENTHAL
ASHLEY S. BERGERON
ELIZABETH S. ROBINS
CHRISTOPHER T. CHOCHELES
HOWARD T. BOYD, III [2]
RYAN D. ADAMS
TERRI B. LOUGHLIN
JACOB A. AIREY
THOMAS J. MADIGAN, II [5]
KEVIN M. McGLONE

SHARONDA R. WILLIAMS [5,9]
CHAD P. MORROW
LAUREN L. HUDSON [3]
ELLEN PIVACH DUNBAR
JEFFREY D. KESSLER [7]
KEITH L. MAGNESS
R. SCOTT HOGAN

OF COUNSEL:
TIMOTHY B. FRANCIS
DAVID A. MARCELLO

[1] LAW CORPORATION
[2] MEMBER OF LOUISIANA AND TEXAS BARS
[3] MEMBER OF LOUISIANA AND ALABAMA BARS
[4] MEMBER OF LOUISIANA AND CALIFORNIA BARS
[5] MEMBER OF LOUISIANA AND GEORGIA BARS
[6] MEMBER OF LOUISIANA AND MISSISSIPPI BARS
[7] MEMBER OF LOUISIANA AND NEW YORK BARS
[8] BOARD CERTIFIED TAX ATTORNEY LOUISIANA
     BOARD OF LEGAL SPECIALIZATION
[9] REGISTERED TO PRACTICE BEFORE THE
     UNITED STATES PATENT AND TRADEMARK
     OFFICE

ALL OTHERS LOUISIANA BAR

jgarner@shergarner.com
Direct Dial: (504) 299-2102
Direct Fax: (504) 299-2302

(504) 299-2100
FAX (504) 299-2300

April 13, 2007

## VIA EMAIL

Ralph S. Hubbard, III
Simeon B. Reimonenq, Jr.
601 Poydras St., Suite 2775
New Orleans, LA  70130

> RE:  Xavier University of Louisiana v. Travelers
>      USDC No. 06-0516
>      Our File: 17004.0002

Gentlemen:

In accordance with Case Management Order No. 4 issued by Judge Duval on March 1, 2007, we make the following initial disclosures regarding the above referenced matter. American Bankers Insurance Company of Florida, 8655 East Via De Ventura, Scottsdale, Arizona 85258 provided flood insurance coverage to Xavier University at all pertinent times.

The additional information required by Case Management Order No. 4 has already been provided. We refer you to those documents bates labeled XAVIER 000062 -XAVIER 000088. They were also attached to George Claypool's deposition exhibit no. 13. The claim numbers are the same as the policy numbers for the insured locations.



**EXHIBIT**

A

LAW OFFICES OF

# SHER GARNER CAHILL RICHTER
# KLEIN & HILBERT, L.L.C.

April 13, 2007
Page - 2 -

Please advise if you have any additional questions.

Sincerely,

James Garner
Darnell Bludworth
Kevin M. McGlone

JG/tw

U.S. Department of Homeland Security
500 C Street SW
Washington, DC 20472

 **FEMA**

W-05054

September 21, 2005

MEMORANDUM FOR:    Write Your Own Principal Coordinators and the NFIP Servicing Agent

FROM:    David I. Maurstad
Acting Administrator / Director
Mitigation Division
Federal Emergency Management Agency

SUBJECT:    Hurricane Katrina - Flood Claim Handling Standards

The numbers and severity of Katrina flood losses are unprecedented in the history of the National Flood Insurance Program (NFIP). The complexities presented, both logistically and in terms of claim handling itself, have not been encountered before. To date, the WYO companies and the NFIP Servicing Agent have reported 150,000 claims. As a point of reference, the NFIP handled 74,000 flood claims nationwide in 2004. The situation requires innovative claim handling that will assist our policyholders to quickly recover from these losses, while maintaining adequate controls over NFIP funds.

FEMA, with the help of claims experts from some of our WYO companies, has sought to identify characteristics of flood claims that would lend those losses to an expedited claim handling process.

As a result, we have developed three processes, described in Attachment A, for handling claims with specific characteristics. Process # 1 should be used to expedite the claims handling of structures that have or have had standing water in them for an extended period of time. In order for your company to participate in this process, you must be able to acquire a reliable square foot measurement so that an accurate value can be developed. Some companies have a homeowner policy base that largely matches the flood policy base and may develop the square foot measurement from that information.

Process # 2 is to be used when it has been determined that the structure has been washed off its foundation by flood water and the square foot measurements are known. The company should use the same settlement procedures as in process # 1. All other claims require a site visit and will be handled using the company's normal claim procedures (process # 3).

www.fema.gov



EXHIBIT
tabbies
B

Hurricane Katrina – Flood Claim Handling Standards
September 21, 2005
Page 2

As part of a separate e-mail to individual companies, we will provide depth data that includes three sets of data identified by the value in the "floodarea" field. One set includes areas that are known to have flooded (identified as "in"). The second set includes areas that may have flooded (identified as "near0"). The third set includes areas that did not flood to the best of our knowledge (identified as "out"). If a company receives a claim for a risk located in an area identified as "out" in the third set, it cannot use process # 1 or # 2.

Attached to this memorandum are three documents:

Attachment A: Description of Katrina Expedited Claim Handling Processes;
Attachment B: File Documentation Requirements; and
Attachment C: Example of a Valuation Worksheet

The NFIP's general adjusters will be involved in closely monitoring the performance and procedures of the WYO carriers utilizing this process. Their activities will include site visits to field operations and the homes and businesses of insureds.

The existing NFIP fee schedule will be modified for the claims handled by processes # 1 and # 2. The fee will be $750.00 for each claim + $400.00 if a site visit is necessary at a later date. Process # 3 will be paid based upon the existing NFIP fee schedule. FEMA will not seek reimbursement from the company when a subsequent review identifies overpayments resulting from the company's proper use of the FEMA depth data and a reasonable method of developing square foot value in concluding claims.

If your company has a method of acquiring reliable square foot measurements and wants to participate in these processes of handling Katrina claims, please reply to Jim Shortley or Tim Johnson at: James.Shortley@dhs.gov or Timothy.Johnson@dhs.gov. If your company chooses not to participate in process # 1 or # 2, it should still use process # 3 for those circumstances.

Attachments (3)

cc: Vendors, IBHS, FIPNC, WYO Marketing Committee, Government Technical Representative

Suggested Routing: Claims, Marketing, Underwriting

# KATRINA EXPEDITED CLAIM HANDLING PROCESSES

## # 1 APPLIES TO PRE-SELECTED AREAS

WYO carriers will utilize available depth data to determine areas of standing water. A site inspection would not be required.

The process uses flood depth data to identify structures that have been severely impacted. Depth data will be furnished by FEMA for the area of flooding caused by failure of the levees in the New Orleans area, resulting in flooding from Lake Pontchartrain. The depth data is being provided relative to the prevailing ground level at the risk. In addition, the flood elevation is estimated to be 2.7 feet relative to National Geodetic Vertical Datum (NGVD29). These water depths were at this level for at least five days.

Using the flood elevation and the depth data provided, the company should be able to determine the depth of the flood waters in the risk. For risks that are not elevation rated, speak with the insured to determine the first floor level of the risk relative to the prevailing ground. This information should be subtracted from the FEMA provided water depth relative to the prevailing ground to calculate the depth of the water in the building. If the resulting depth is a negative number, it is an indication that the risk may not have been flooded. For elevation rated risks, the first floor level relative to NGVD29 should be verified from the elevation certificate information. This information can be subtracted from the 2.7 foot NGVD29 flood elevation to determine depth of water in the building.

The company should use its best judgment, based on the depth and duration of the water in the building, to determine if it is likely that the covered damage exceeds policy limits. If the depth of water in the building is not likely to cause damage in excess of the policy limits the company should proceed based upon # 3.

The risks in selected areas as identified above will be subject to the following claim handling process for the Dwelling form and General Property form of the Standard Flood Insurance Policy. While this is primarily for certain parishes in Louisiana, this process may also be used in other areas if the WYO carrier or NFIP Servicing Agent has a method to determine the damage will exceed policy limits without a site visit.

The insured should be given the option to decline to have their claims processed in this manner. If the insureds accepts this process, but are not satisfied with the settlement offer from this process, the company should proceed based upon # 3.

**Reminder** – The Proof of Loss requirement has been waived as noted in WYO Bulletin W-05040.

## BUILDING – DWELLING FORM

- If known, Insurer will obtain the square foot area of the building from their underwriting records to determine the replacement cost, utilizing the square foot cost determined for the specific geographic area.

## KATRINA EXPEDITED CLAIM HANDLING PROCESSES

- If square footage is unavailable from the underwriting record, ask insured for the square footage of the property. If the information provided appears incorrect, advise insured a site inspection will be needed. File needs to be documented as to how square footage was determined.

- If RCV or ACV, as appropriate, is more than the limit of liability, pay the limit.

- If the risk is not insured to 80% of value, a detailed discussion will take place with the insureds to determine appropriate depreciation to be applied to the building component categories.

### CONTENTS – DWELLING FORM*

- Assist the insured to list major categories of contents (e.g. Appliances, electronics, furniture, clothing, etc.).

- If ACV of the contents exceeds policy limits, issue payment of policy limits.

- If ACV does not exceed policy limits, issue amount agreed upon with insured.

- Serial and Model numbers for appliances are not required.

- File documentation by the adjuster must reflect how amounts were determined, e.g. # of adults / children in the residence, etc.

### BUILDING – GENERAL PROPERTY FORM

- If known, Insurer will obtain the square foot area of the building from the underwriting records to determine the replacement cost, utilizing the square foot cost determined for the specific geographic area.

- If square footage is unavailable from the underwriting record, ask the insured for the square footage of the property. If the information provided appears incorrect, advise insured a site inspection will be needed. File needs to be documented as to how square footage was determined.

- Determine the age of the building and apply depreciation.

- If ACV of building is more than the limit of liability, pay the limit.

### CONTENTS – GENERAL PROPERTY FORM*

- Assist insured to list major categories of contents.

- If ACV of contents exceeds policy limits, issue payment of policy limits.

- If ACV does not exceed policy limits, issue amount agreed upon with insured.

- Serial and Model numbers for appliances are not required.

- File documentation by the adjuster must reflect how amounts were determined, e.g. # of adults / children in the residence, etc.

# KATRINA EXPEDITED CLAIM HANDLING PROCESSES

### # 2 - APPLIES TO STRUCTURES WASHED OFF THEIR FOUNDATIONS

This process is to be used in handling of losses without a site visit, where the covered damages appear to exceed policy limits, where only a slab or pilings remain or where the company can obtain its own flood depth data.

#### BUILDING – DWELLING FORM

- If known, Insurer will obtain the square foot area of the building from their underwriting records to determine the replacement cost, utilizing the square foot cost determined for the specific geographic area.

- If square footage is unavailable from the underwriting record, ask insured for the square footage of the property. If the information provided appears incorrect, advise insured a site inspection will be needed. File needs to be documented as to how square footage was determined.

- If RCV or ACV, as appropriate, is more than the limit of liability, pay the limit.

- If the risk is not insured to 80% of value, a detailed discussion will take place with the insureds to determine appropriate depreciation to be applied to the building component categories.

#### CONTENTS – DWELLING FORM*

- Assist the insured to list major categories of contents (e.g. Appliances, electronics, furniture, clothing, etc.).

- If ACV of the contents exceeds policy limits, issue payment of policy limits.

- If ACV does not exceed policy limits, issue amount agreed upon with insured.

- Serial and Model numbers for appliances are not required.

- File documentation by the adjuster must reflect how amounts were determined, e.g. # of adults / children in the residence, etc.

#### BUILDING – GENERAL PROPERTY FORM

- If known, Insurer will obtain the square foot area of the building from the underwriting records to determine the replacement cost, utilizing the square foot cost determined for the specific geographic area.

- If square footage is unavailable from the underwriting record, ask the insured for the square footage of the property. If the information provided appears incorrect, advise insured a site inspection will be needed. File needs to be documented as to how square footage was determined.

# KATRINA EXPEDITED CLAIM HANDLING PROCESSES

- Determine the age of the building and apply depreciation.
- If ACV of building is more than the limit of liability, pay the limit.

## CONTENTS – GENERAL PROPERTY FORM*

- Assist insured to list major categories of contents.
- If ACV of contents exceeds policy limits, issue payment of policy limits.
- If ACV does not exceed policy limits, issue amount agreed upon with insured.
- Serial and Model numbers for appliances are not required.
- File documentation by the adjuster must reflect how amounts were determined, e.g. # of adults / children in the residence, etc.

## # 3 – APPLIES TO ALL OTHER CLAIMS

### BUILDING

If the claim requires a site visit it will be handled using the company's normal claim procedures.

### CONTENTS*

- Assist insured to list major categories of contents.
- If ACV of the contents exceeds policy limits, issue payment of policy limits.
- If ACV does not exceed policy limits, issue amount agreed upon with insured.
- Serial and Model numbers for appliances are not required.
- File documentation by the adjuster must reflect how amounts were determined, e.g. # of adults / children in the residence, etc.

**\* The contents portion of a claim file must reflect the basis for the adjuster's determination of the quantity, quality and value of the insured's personal property.**



**Elevation Rated**

FEMA provides flood elevation = 2.7 ft NGVD29

Adjuster determines low floor elevation = -1.2 ft NGVD29

Depth in risk = flood elevation – low floor elevation

Depth in risk = 2.7 ft NGVD29 – (-1.2 ft NGVD29)

Depth in risk = 3.9 ft

Flood elevation = 2.7 ft NGVD29

0.0 NGVD29

Low Floor elevation = -1.2 ft NGVD29

Depth in risk 3.9 ft



**Non-Elevation Rated**

FEMA provides depth relative to ground = 5.4 ft

Adjuster determines low floor height above ground = 1.5 ft

Depth in risk = FEMA provided depth = low floor height above ground

Depth in risk = 5.4ft – 1.5 ft

Depth in risk = 3.9 ft

Depth provided by FEMA = 5.4 ft above ground

Prevailing ground elevation

Depth in risk = 3.9 ft

Height = 1.5 ft above ground

6

# FILE DOCUMENTATION

### # 1

- Insured and coverage information
- Activity log
- Adjuster's narrative report
- NFIP final report
- Water Depth data or equivalent
- Valuation worksheet – including square footage
- Contents information – listed by major categories
- Letter to insured including ICC language

### #2

- Insured and coverage information
- Activity log
- Adjuster's narrative report
- NFIP final report
- Company obtained data such as water depths, aerial photographs or the equivalent
- Valuation worksheet – including square footage
- Contents information – listed by major categories
- Letter to insured including ICC language

### # 3

- Normal Claim Handling Procedure (with the exception that personal property may be grouped)
- Letter to insured including ICC language

ATTACHMENT - C

# VALUATION WORKSHEET
## - EXAMPLE -

**Policyholder Structure**

|  |  |
|---|---|
| **Policy Number:** | **1-2345-6789-0** |
| **Name:** | **Donald Waters** |
| **Property Address:** | **1234 Main Street** |
| | **Hammond, LA  70402** |

|  |  |
|---|---|
| **Date of Loss:** | **08/29/2005** |
| **Date Assigned:** | **09/05/2005** |

**Structure Type**

|  |  |
|---|---|
| **Configuration:** | **100% - 1 Story** |
| **Style:** | **Ranch** |
| **Built In:** | **1988** |
| **Purpose:** | **Single Family** |
| **Sq. Feet:** | **1,500** |
| **Roof Type:** | **70% Gable** |
| | **30% Hip** |
| **Overall Quality:** | **Average** |

**Foundation**

|  |  |
|---|---|
| **Shape:** | **L Shape** |
| **Construction:** | **100 % Basement** |
| **Lot Slope:** | **None/Moderate** |
| **Foundation:** | **100% Concrete** |

**Room Information**

|  |  |
|---|---|
| **Living Space:** | **1 Hallway** |
| | **1 Living Room** |
| | **1 Nook** |
| **Bedrooms:** | **3 Bedrooms** |
| **Kitchen:** | **1 Kitchen** |
| **Bathrooms:** | **2 Full Baths** |
| **Utility/Closets:** | **1 Laundry Room** |
| | **1 Linen Closet** |
| | **1 Pantry** |
| | **1 Utility Room** |
| | **1 Walk-in Closet** |
| **Garage** | **1 Two-Car Garage** |

1

**ATTACHMENT - C**

# VALUATION WORKSHEET
## - EXAMPLE -

| | |
|---|---|
| **Room Finishes and Features** | |
| Wall Materials | 100 % 1/2" Drywall over Wood or Steel Framing - Ready to Paint |
| Wall Finishes | 75% Paint |
| | 10% Open – No wall or included in home's exterior wall finish |
| | 15% Wallpaper |
| Ceiling Finishes | 100% Paint |
| Floor Covering | 70% Carpet |
| | 30% Ceramic Tile/Slate |
| | |
| **Room Features** | 1 Cathedral/Vaulted Ceiling |
| | 2 Ceiling Fan |
| | 3 Corner or Crown Molding |
| | 3 Chair Rail |
| | 8 Recessed Lights |
| | 1 Chandelier |
| **Avg. Interior Wall Height** | 8'0" |
| | |
| **Kitchen and Bathroom** | |
| **Kitchen Appliances** | 1 Garbage Disposal |
| | 1 Dishwasher |
| | 1 Range Hood |
| | |
| **Bath Fixtures & Features** | 1 Acrylic/Fiberglass Tub or Shower Surround |
| | 1 Ceramic Tile tub or Shower Surround |
| | 1 Extra sink (one sink is included w/each bathroom) |
| | |
| **Counter/Vanity Tops** | 50% Plastic Laminate Countertop |
| | 50% Tile Countertop |
| | |
| **Cabinet/Vanity Features** | 1 Peninsula Bar (enter the number in all selected rooms) |
| | 1 Island |
| | |
| **HVAC** | |
| | |
| **Heating, AC, and Fireplace** | 1 Forced Air Heating System |
| | 1 Central Air Conditioning |
| | 1 Masonry Fireplace |
| | |
| **Home Specialty** | 1 Intercom System |

ATTACHMENT - C

# VALUATION WORKSHEET
## - EXAMPLE -

**Appurtenant Private Structures - Garage**

| | |
|---|---|
| **Interior Wall Material** | 100% 1/2" Drywall over wood or steel framing, ready for paint |
| **Interior Wall Finishes** | 100% Paint |
| **Ceiling Finishes** | 100% Paint |
| **Floor Covering** | 100 % Paint/Epoxy Finish on Concrete |
| **Ext. Wall Finishes** | 25% Brick Veneer |
| | 75 % Stucco |
| **Roof Covering** | 100 % Tile |

**Exterior Finishes and Features**

| | |
|---|---|
| **Exterior Wall Finish** | 25% Brick Veneer |
| | 75 % Stucco over Framing |
| **Exterior Feature** | 2 Exterior Doors |
| | 1 Patio Door |
| | 1 Double Garage Door |
| **User Defined** | Redwood Deck |

3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HENRY WELLMEYER AND KELLY WELLMEYER | * * * | CIVIL ACTION NO.: 06-1585 |
| VERSUS | * * | JUDGE: FELDMAN |
| ALLSTATE INSURANCE COMPANY and KELT INSURANCE AGENCY, L.L.C. | * * | MAGISTRATE: ROBY |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ALLSTATE INSURANCE COMPANY'S
### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

After their home was significantly damaged from over ten feet of flood water caused by Hurricane Katrina, plaintiffs filed a claim under their flood insurance policy. Having been paid full policy limits for dwelling ($191,000) and contents ($50,000) under their flood policy, plaintiffs now flip-flop and contend in this suit that wind significantly damaged their house and contents, entitling them to full policy limits under their homeowner policy. Pet., ¶ XV; Am. Pet., ¶ VIII. Plaintiffs are not entitled to double dip. As shown below, plaintiffs are estopped as a matter of law from seeking recovery for the same losses under their homeowner policy. In the alternative, Allstate Insurance Company ("Allstate") is entitled to partial summary judgment declaring that plaintiffs' recovery, if any, under their homeowner policy should be offset by the total amount recovered under their flood policy.

EXHIBIT

_C_

78689

## BACKGROUND

This action arises out of significant damage to plaintiffs' property at 3540 Van Cleave Drive, Mereaux, Louisiana, as a result of Hurricane Katrina. The property sustained over ten feet of flood water, and plaintiffs filed a claim under their flood policy and recovered the full policy limits: $191,000 for dwelling and $50,000 for contents, for a total payment of $241,000. *See* Flood Payments, Ex. A. Plaintiffs admit this. Am. Pet., ¶ VIII. In fact, the $191,000 flood payment for the dwelling was nearly the amount of the actual cash value of the entire home, $200,233. *See* Flood Estimate, Ex. B.

Plaintiffs also instituted a claim under the Allstate homeowner policy, contending that wind damaged their home and contents. To date, plaintiffs have been paid a total of $4,880.65 for their dwelling, $2,500 for additional living expenses, and $6,197.22 for mold under their homeowner policy. Between the flood and homeowner policies, plaintiffs have been paid over $250,000.

Plaintiffs filed this suit on February 6, 2006, alleging that wind caused significant damage to their home, rendering it a total loss and entitling them to recover their policy limits under their homeowner policy, which they characterize as "$325,000 + in policy coverage." Pet., ¶ VIII.[1] They also seek additional living expenses, penalties, and attorney fees. As set forth herein, the Court should hold that plaintiffs are estopped from claiming that their damage was caused by wind. In the alternative, the Court should hold that plaintiffs are not entitled to recover their full policy limits and that any additional recovery by plaintiffs under their

---

[1]   The homeowner policy provided coverage for dwelling in the amount of $182,226, for other structures in the amount of $18,223, for contents in the amount of $127,559, and for additional living expenses up to twelve months. *See* Policy, Ex. C.

-2-

homeowner policy must be offset by amounts paid to plaintiffs under their flood insurance policy.

## LAW AND ARGUMENT

### A. Standard for Motion for Summary Judgment.

Summary judgment should be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). If the moving party meets this burden, Federal Rule of Civil Procedure 56(e) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047. The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995).

### B. Plaintiffs are Estopped From Claiming That Damage to Their Home Was Caused by Wind.

The Louisiana Supreme Court recently stated that an "'insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code.'" *Samuels v. State Farm Mut. Auto. Ins. Co.*, 939 So. 2d

- 3 -

1235, 1240 (La. 2006) (quoting *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994)). In interpreting an insurance contract, a court must attempt to determine the parties' common intent. *Id.* The parties' intent, as reflected by the language in the policy, determines the extent of coverage. *Id.* An insurance contract must be construed as a whole, and each provision in the policy is to be interpreted in light of the other provisions, so that each provision is given meaning. *Rolston v. United Services Auto. Ass'n*, No. 2006CA0978, 2006 WL 3849949, at *3 (La. App. 4 Cir. 2006). Further, words and phrases in insurance policies must be construed in accordance with their plain, ordinary and generally prevailing meaning. *Menendez v. O'Niell*, No. 2006CA0451, 2006 WL 3804626, at *3 (La. App. 1 Cir. 2006).

Like all homeowner insurance policies, plaintiffs' Allstate homeowner policy excludes coverage for damage caused by flood waters. In pertinent part, plaintiffs' policy provides as follows: "We do not cover loss to the property ... consisting of or caused by ... [f]lood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind." *See* Ex. C. This language is clear and unambiguous and unarguably encompasses damages caused by the over ten feet of flood water that inundated plaintiffs' property in connection with Hurricane Katrina. *See Buente v. Allstate Ins. Co.*, No. 05CV712, 2006 WL 980784, * 2 (S.D. Miss. Apr. 12, 2006) (finding the flood exclusion language in the plaintiffs' homeowner policy clear and enforceable); *Leonard v. Nationwide*, 438 F. Supp. 2d 684, 693 (S.D. Miss. 2006) (holding that provisions of plaintiffs' homeowner policy that exclude coverage for damages caused by water "are valid and enforceable terms of the insurance contract"); *Dobson v. Allstate Ins. Co.*, No. 06-0252, *et seq.*,

- 4 -

2006 WL 2078423, *11 (E.D. La. July 21, 2006) ("plaintiffs' homeowner's policies contain a clearly worded flood exclusion"). Indeed, plaintiffs do not contend in this lawsuit that their homeowner policy covers losses from flooding.

It is undisputed that plaintiffs' home sustained extensive damages from flood waters and that plaintiffs made a claim to their flood insurer. It also is undisputed that the plaintiffs received $241,000 in flood payments, and never disputed or returned the payments. Significantly, plaintiffs' flood claim constitutes an admission that their home was substantially damaged by flood. *See Mayton v. Auto-Owners Ins. Co.*, No. 05-667, 2006 WL 1214831, at * 3 (E.D. Va. May 2, 2006) (holding that evidence of flood insurance claim made by plaintiffs was admission against interest by plaintiffs). Plaintiffs are therefore "estopped from recharacterizing, as wind damage, losses for which [they have] accepted flood insurance compensation." *See Glover v. Nationwide Mut. Fire Ins. Co.*, No. 06cv85, 2006 WL 3780858, at * 1 (S.D. Miss. Dec. 21, 2006). Accordingly, the Court should grant summary judgment because plaintiffs' losses were caused by flooding, an excluded cause of loss under plaintiffs' homeowner policy.

**C. In the Alternative, Plaintiffs' Additional Recovery Under Their Homeowner Policy, If Any, Should Be Limited to the Difference Between the Flood Payments and the Actual Cash Value of the Home and Contents.**

At a minimum, and alternatively, although Allstate believes that it has paid plaintiffs all amounts due under their homeowner policy, Allstate requests that this Court order that Allstate's additional obligations under the homeowner policy, if any, be offset by all payments made to plaintiffs under their flood policy and limited to the difference between the total amount of flood payments and the actual cash value of the home and contents.

78689

It is a fundamental legal principle that "the purpose of the insurance contract is to indemnify the owner against loss, that is, to place him in the same position in which he would have been if no [loss] had occurred." *Berkshire Mut. Ins. Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967); *see also Wright v. Assurance Co. of America*, 728 So. 2d 974, 975 (La. App. 2d Cir. 1999) ("the universally recognized rule to the effect a policy of insurance on property is predominately a contract of indemnity"). Because insurance law is based on principles of indemnification and reimbursement, "the benefit derived from insurance should be no greater in value than the loss." *Tejedor v. State Farm Fire and Cas. Co.*, No. 05CV679, 2006 WL 3257526, at * 2 (S.D. Miss. Nov. 6, 2006); *see also State Farm Fire & Cas. Co. v. Griffin*, 888 S.W.2d 150, 156 (Tex. 1st Dist. Ct. App. 1994) ("insurance contract is by definition a contract of indemnity, under which an insurer cannot be required to pay its insured more than the amount of his actual loss"); 15 La. Civ. L. Treatise, *Insurance Law & Practice* § 312 (3d ed.) ("insurance should be a device for making a person whole after a loss is suffered rather than a way in which he might increase his wealth"). Consequently, the maximum recovery that a plaintiff may receive from all applicable insurance policies for a loss to both his dwelling and personal property is the value of the plaintiff's actual loss. *Id.* Where a plaintiff has collected proceeds under his flood insurance policy, his maximum loss therefore is measured by "the difference between the pre-storm value [of his damaged property] and the insurance benefits he has collected to compensate him for [the damaged property]." *Id; see also Madere v. State Farm Prop. & Cas. Co.*, No. 06CV2889, 2006 WL 2644961, at *2 (E.D. La. Sept. 13, 2006) (contemplating deduction of amount paid to plaintiff under flood policy from total amount of

- 6 -

coverage under homeowner policy to determine potential amount owed under homeowner policy).

To allow greater recovery would provide insureds who have flood insurance and homeowner insurance the ability to collect windfalls and double recoveries for what is a single loss to their home and contents. It would further allow plaintiffs to collect payments from one policy for damages that were not covered by that policy and for which plaintiffs did not pay premiums. *See Griffin*, 888 S.W. 2d at 157; *Chauvin v. State Farm Fire and Cas. Co.*, 450 F. Supp. 2d 660, 666 (E.D. La. 2006) (recognizing that homeowner is not entitled to policy limits on one policy where majority of damage was caused by excluded peril, which is covered by another policy). Such a result would violate clear, well-settled Louisiana Supreme Court precedent, which provides that "Louisiana law does not allow for double recovery of the same element of damages." *See, e.g., Albert v. Farm Bureau Ins. Co.*, 940 So. 2d 620, 622 (La. 2006) (citing *Gagnard v. Baldridge*, 612 So. 2d 732, 736 (La. 1993)).

The analogous case of *State Farm Fire & Casualty Company v. Griffin* is both instructive and persuasive here. In *Griffin*, the plaintiffs' property was first damaged by flooding and then damaged by a fire several months later. *Griffin*, 888 S.W. 2d at 152. As a result of the flood damage, the plaintiffs recouped a payment under their flood policy. *Id.* As a result of the fire damage that the plaintiffs' house later sustained, the plaintiffs' homeowner insurer tendered a check to the plaintiffs for the amount necessary to repair all damage, less the actual cash value of the unrepaired items paid for under the flood policy. *Id.* The plaintiffs rejected that tender and filed suit, asserting that flood insurance and homeowner insurance policies cover different risks and that the amount that they were paid under the flood policy could not be used to offset recovery under the homeowner policy. *Id.* The appellate court disagreed, finding that the

- 7 -

contractual measure of damages with respect to each policy was actual cash value of the loss, and that the plaintiffs could have been indemnified for the portion of the home that had been damaged by flood under their homeowner policy only "if they had lost that amount a second time," which they did not. *Id.* at 157. The court therefore held that the insurer properly offset its payment to the plaintiffs by the amount paid under their flood policy. *Id.*

Here, plaintiffs were paid $241,000 under their flood policy for damage to their home and contents. As in *Griffin*, plaintiffs cannot now recover under their homeowner policy for the same damage for which they recovered under their flood policy. Plaintiffs suffered one loss. Further, as noted above, plaintiffs are estopped from now contending that the damage for which they recovered under their flood policy was caused by wind.

Applying these sound principles here, plaintiffs' additional recovery under their homeowner policy, if any, is limited. Specifically, the actual cash value of the plaintiffs' home at the time of the loss is $200,233. *See* Ex. B. Because plaintiffs were paid $191,000 under their flood policy for damage to their home, and because Allstate previously paid plaintiffs $4,880.65 under their homeowner policy for their dwelling, plaintiffs could not possibly be entitled to any more than $4,352.35 under the homeowner policy, if anything, for damage to their dwelling. Allstate, at most, may owe that additional amount to plaintiffs under the homeowner policy, though Allstate disputes that any additional monies are owed at all.

Likewise, plaintiffs were paid $50,000 under their flood policy for damaged contents. Plaintiffs have submitted a contents list to Allstate in connection with their lawsuit, and they estimate their damaged contents at $84,405, which has not been reduced to actual cash value. *See* Contents List, Ex. D. Accordingly, their maximum additional loss -- the most that plaintiffs possibly could be entitled to recover under their homeowner policy with respect to their

78689

contents – is $34,405.[2] Once again, however, Allstate disputes that any additional monies are owed.

Accordingly, to the extent that the Court deems entry of complete summary judgment inappropriate, Allstate requests that this Court enter partial summary ruling that plaintiffs' recovery, if any, under their homeowner policy is limited to the difference between the actual cash value of their damaged property and their flood insurance payments.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of Allstate.

Respectfully Submitted,

Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
Of
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 589-9700

Attorneys for Allstate Insurance Company

---

[2]     This amount should be reduced further to reflect actual cash value. It is not necessary for the Court to determine the exact actual cash value on this Motion.

- 9 -

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Memorandum in Support of Motion for Summary Judgment has been served upon all parties by electronic mail, facsimile and/or placing same in the United States mail, properly addressed and postage pre-paid, this 6th day of March, 2007.

- 10 -

78689