LAW OFFICES OF

# SHER GARNER CAHILL RICHTER
# KLEIN & HILBERT, L.L.C.

TWENTY-EIGHTH FLOOR
909 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70112-1033
http://www.shergarner.com

LEOPOLD Z. SHER [1]
JAMES M. GARNER [2]
ELWOOD F. CAHILL, JR.
RICHARD P. RICHTER [6]
STEVEN I. KLEIN [1,4]
PETER L. HILBERT, JR.
MARIE A. MOORE [5]
DEBRA J. FISCHMAN
ROBERT P. THIBEAUX
DARNELL BLUDWORTH [2]
MARTHA Y. CURTIS [1]
NEAL J. KLING
KEITH A. KORNMAN [3]
JOSHUA S. FORCE [1,4]

DEBORAH J. MOENCH
DOROTHY S. WATKINS LAWRENCE [2]
JOHN T. BALHOFF, II
ALVIN C. MIESTER, III
KAREN T. HOLZENTHAL
ASHLEY S. BERGERON
CHRISTOPHER T. CHOCHELES
HOWARD T. BOYD, III [2]
RYAN D. ADAMS
JACOB A. AIREY
THOMAS J. MADIGAN, II [6]
KEVIN M. McGLONE
SHARONDA R. WILLIAMS [5,9]
CHAD P. MORROW

LAUREN L. HUDSON [3]
ELLEN PIVACH DUNBAR
JEFFREY D. KESSLER [7]
KEITH L. MAGNESS
R. SCOTT HOGAN


OF COUNSEL:
TIMOTHY B. FRANCIS
DAVID A. MARCELLO

[1] LAW CORPORATION
[2] MEMBER OF LOUISIANA AND TEXAS BARS
[3] MEMBER OF LOUISIANA AND ALABAMA BARS
[4] MEMBER OF LOUISIANA AND CALIFORNIA BARS
[5] MEMBER OF LOUISIANA AND GEORGIA BARS
[6] MEMBER OF LOUISIANA AND MISSISSIPPI BARS
[7] MEMBER OF LOUISIANA AND NEW YORK BARS
[8] BOARD CERTIFIED TAX ATTORNEY LOUISIANA
     BOARD OF LEGAL SPECIALIZATION
[9] REGISTERED TO PRACTICE BEFORE THE
     UNITED STATES PATENT AND TRADEMARK
     OFFICE

ALL OTHERS LOUISIANA BAR

jgarner@shergarner.com
Direct Dial: (504) 299-2102
Direct Fax: (504) 299-2302

dbludworth@shergarner.com
Direct Dial: (504) 299-2114
Direct Fax: (504) 299-2314

(504) 299-2100
FAX (504) 299-2300

September 11, 2006

**VIA MAIL**
Ralph S. Hubbard, III
Simeon B. Reimonenq, Jr.
601 Poydras St., Suite 2775
New Orleans, LA  70130

Re:   Xavier University of Louisiana v.
      Travelers Property Casualty Company of America
      Our ref 17004.0002

Dear Ralph and Simeon:

Enclosed you will find Xavier's Bates label XAVIER001994 produced as a part of
our ongoing discovery obligation

Please advise if you have any questions.

Cordially,

James M. Garner
Darnell Bludworth

Enclosures

JMG/kl



LAW OFFICES OF

# SHER GARNER CAHILL RICHTER
# KLEIN & HILBERT, L.L.C.

TWENTY-EIGHTH FLOOR
909 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70112-1033
http://www.shergarner.com

LEOPOLD Z. SHER[1]
JAMES M. GARNER[2]
ELWOOD F. CAHILL, JR.
RICHARD P. RICHTER
STEVEN I. KLEIN[1,8]
PETER L. HILBERT, JR.
MARIE A. MOORE[2]
DEBRA J. FISCHMAN
ROBERT P. THIBEAUX
DARNELL BLUDWORTH[2]
MARTHA Y. CURTIS[2]
NEAL J. KLING
KEITH A. KORNMAN[2]
JOSHUA S. FORCE[2,4]

DEBORAH J. MOENCH
DOROTHY S. WATKINS LAWRENCE[5]
JOHN T. BALHOFF, II
ALVIN C. MIESTER, III
KAREN T. HOLZENTHAL
ASHLEY S. BERGERON
CHRISTOPHER T. CHOCHELES
HOWARD T. BOYD, III[2]
RYAN D. ADAMS
JACOB A. AIREY
THOMAS J. MADIGAN, II[6]
KEVIN M. McGLONE
SHARONDA R. WILLIAMS[5,9]
CHAD P. MORROW

LAUREN L. HUDSON[3]
ELLEN PIVACH DUNBAR
JEFFREY D. KESSLER[7]
KEITH L. MAGNESS
R. SCOTT HOGAN


OF COUNSEL:
TIMOTHY B. FRANCIS
DAVID A. MARCELLO

[1] LAW CORPORATION
[2] MEMBER OF LOUISIANA AND TEXAS BARS
[3] MEMBER OF LOUISIANA AND ALABAMA BARS
[4] MEMBER OF LOUISIANA AND CALIFORNIA BARS
[5] MEMBER OF LOUISIANA AND GEORGIA BARS
[6] MEMBER OF LOUISIANA AND MISSISSIPPI BARS
[7] MEMBER OF LOUISIANA AND NEW YORK BARS
[8] BOARD CERTIFIED TAX ATTORNEY LOUISIANA
   BOARD OF LEGAL SPECIALIZATION
[9] REGISTERED TO PRACTICE BEFORE THE
   UNITED STATES PATENT AND TRADEMARK
   OFFICE

ALL OTHERS LOUISIANA BAR

jgarner@shergarner.com
Direct Dial: (504) 299-2102
Direct Fax: (504) 299-2302

dbludworth@shergarner.com
Direct Dial: (504) 299-2114
Direct Fax: (504) 299-2314

(504) 299-2100
FAX (504) 299-2300

October 3, 2006

**VIA MAIL**
Ralph S. Hubbard, III
Simeon B. Reimonenq, Jr.
601 Poydras St., Suite 2775
New Orleans, LA 70130

Re:     Xavier University of Louisiana v.
        Travelers Property Casualty Company of America
        Our ref 17004.0002

Dear Ralph and Simeon:

Enclosed you will find Xavier's Bates labels XAVIER001995 through
XAVIER002195 produced as a part of our ongoing discovery obligation

Please advise if you have any questions.

Cordially,

James M. Garner
Darnell Bludworth

Enclosures

JMG/kl



LAW OFFICES OF

# SHER GARNER CAHILL RICHTER
# KLEIN & HILBERT, L.L.C.

TWENTY-EIGHTH FLOOR
909 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70112-1033
http://www.shergarner.com

LEOPOLD Z. SHER [1]
JAMES M. GARNER [2]
ELWOOD F. CAHILL, JR.
RICHARD P. RICHTER
STEVEN I. KLEIN [1, 8]
PETER L. HILBERT, JR.
MARIE A. MOORE [2]
DEBRA J. FISCHMAN
ROBERT P. THIBEAUX
DARNELL BLUDWORTH [2]
MARTHA Y. CURTIS [2]
NEAL J. KLING
KEITH A. KORNMAN [2]
JOSHUA S. FORCE [2, 4]

DEBORAH J. MOENCH
DOROTHY S. WATKINS LAWRENCE [2]
JOHN T. BALHOFF, II
ALVIN C. MIESTER, III
KAREN T. HOLZENTHAL
ASHLEY S. BERGERON
CHRISTOPHER T. CHOCHELES
HOWARD T. BOYD, III [2]
RYAN D. ADAMS
JACOB A. AIREY
THOMAS J. MADIGAN, II [6]
KEVIN M. McGLONE
SHARONDA R. WILLIAMS [3, 9]
CHAD P. MORROW

LAUREN L. HUDSON [2]
ELLEN PIVACH DUNBAR
JEFFREY D. KESSLER [7]
KEITH L. MAGNESS
R. SCOTT HOGAN

OF COUNSEL:
TIMOTHY B. FRANCIS
DAVID A. MARCELLO

[1] LAW CORPORATION
[2] MEMBER OF LOUISIANA AND TEXAS BARS
[3] MEMBER OF LOUISIANA AND ALABAMA BARS
[4] MEMBER OF LOUISIANA AND CALIFORNIA BARS
[5] MEMBER OF LOUISIANA AND GEORGIA BARS
[6] MEMBER OF LOUISIANA AND MISSISSIPPI BARS
[7] MEMBER OF LOUISIANA AND NEW YORK BARS
[8] BOARD CERTIFIED TAX ATTORNEY LOUISIANA
    BOARD OF LEGAL SPECIALIZATION
[9] REGISTERED TO PRACTICE BEFORE THE
    UNITED STATES PATENT AND TRADEMARK
    OFFICE

ALL OTHERS LOUISIANA BAR

jgarner@shergarner.com
Direct Dial: (504) 299-2102
Direct Fax: (504) 299-2302

dbludworth@shergarner.com
Direct Dial: (504) 299-2114
Direct Fax: (504) 299-2314

(504) 299-2100
FAX (504) 299-2300

November 7, 2006

**VIA MAIL**
Ralph S. Hubbard, III
Simeon B. Reimonenq, Jr.
601 Poydras St., Suite 2775
New Orleans, LA   70130

> Re:   Xavier University of Louisiana v.
>        Travelers Property Casualty Company of America
>        Our ref 17004.0002

Dear Ralph and Simeon:

    Enclosed you will find Xavier's Bates labels XAVIER002196 through XAVIER002346 produced as a part of our ongoing discovery obligation

    Please advise if you have any questions.

                         Cordially,

                         James M. Garner
                         Darnell Bludworth

Enclosures

JMG/kl


EXHIBIT
6

LAW OFFICES OF
# SHER GARNER CAHILL RICHTER
# KLEIN & HILBERT, L.L.C.

TWENTY-EIGHTH FLOOR
909 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70112-1033
http://www.shergarner.com

LEOPOLD Z. SHER[1]
JAMES M. GARNER[2]
ELWOOD F. CAHILL, JR.
RICHARD P. RICHTER
STEVEN I. KLEIN[1,8]
PETER L. HILBERT, JR.
MARIE A. MOORE[2]
DEBRA J. FISCHMAN
ROBERT P. THIBEAUX
DARNELL BLUDWORTH[2]
MARTHA Y. CURTIS[2]
NEAL J. KLING
KEITH A. KORNMAN[2]
JOSHUA S. FORCE[2,4]

DEBORAH J. MOENCH
DOROTHY S. WATKINS LAWRENCE[2]
JOHN T. BALHOFF, II
ALVIN C. MIESTER, III
KAREN T. HOLZENTHAL
ASHLEY S. BERGERON
ELIZABETH S. ROBINS
CHRISTOPHER T. CHOCHELES
HOWARD T. BOYD, III[2]
RYAN D. ADAMS
TERRI B. LOUGHLIN
JACOB A. AIREY
THOMAS J. MADIGAN, II[5]
KEVIN M. MCGLONE

SHARONDA R. WILLIAMS[5,8]
CHAD P. MORROW
LAUREN L. HUDSON[3]
ELLEN PIVACH DUNBAR
JEFFREY D. KESSLER[7]
KEITH L. MAGNESS
R. SCOTT HOGAN

OF COUNSEL:
TIMOTHY B. FRANCIS
DAVID A. MARCELLO

[1] LAW CORPORATION
[2] MEMBER OF LOUISIANA AND TEXAS BARS
[3] MEMBER OF LOUISIANA AND ALABAMA BARS
[4] MEMBER OF LOUISIANA AND CALIFORNIA BARS
[5] MEMBER OF LOUISIANA AND GEORGIA BARS
[6] MEMBER OF LOUISIANA AND MISSISSIPPI BARS
[7] MEMBER OF LOUISIANA AND NEW YORK BARS
[8] BOARD CERTIFIED TAX ATTORNEY LOUISIANA
    BOARD OF LEGAL SPECIALIZATION
[8] REGISTERED TO PRACTICE BEFORE THE
    UNITED STATES PATENT AND TRADEMARK
    OFFICE

ALL OTHERS LOUISIANA BAR

dbludworth@shergarner.com
Direct Dial: (504) 299-2114
Direct Fax: (504) 299-2314

(504) 299-2100
FAX (504) 299-2300

February 5, 2007

Ralph S. Hubbard, III
Simeon B. Reimonenq, Jr.
601 Poydras St., Suite 2775
New Orleans, LA   70130

> RE:   Xavier University of Louisiana v. Travelers
>        USDC No. 06-0516
>        Our File:  17004.0002

Gentlemen:

Enclosed please find Xavier's bates labels XAVIER 002347- XAVIER 003827.

Please advise if you have any additional questions.

Sincerely,

Darnell Bludworth
Kevin M. McGlone

DB/tw
Enclosures

**EXHIBIT**

tabbies®

H

LAW OFFICES OF

# SHER GARNER CAHILL RICHTER
# KLEIN & HILBERT, L.L.C.

TWENTY-EIGHTH FLOOR
909 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70112-1033
http://www.shergarner.com

LEOPOLD Z. SHER [1]
JAMES M. GARNER [2]
ELWOOD F. CAHILL, JR.
RICHARD P. RICHTER
STEVEN I. KLEIN [1,4]
PETER L. HILBERT, JR.
MARIE A. MOORE [3]
DEBRA J. FISCHMAN
ROBERT P. THIBEAUX
DARNELL BLUDWORTH [2]
MARTHA Y. CURTIS [5]
NEAL J. KLING
KEITH A. KORNMAN [7]
JOSHUA S. FORCE [3,4]

DEBORAH J. MOENCH
DOROTHY S. WATKINS LAWRENCE [2]
JOHN T. BALHOFF, II
ALVIN C. MIESTER, III
KAREN T. HOLZENTHAL
ASHLEY E. BERGERON
ELIZABETH S. ROBINS
CHRISTOPHER T. CHOCHELES
HOWARD T. BOYD, III [2]
RYAN D. ADAMS
TERRI B. LOUGHLIN
JACOB A. AIREY
THOMAS J. MADIGAN, II [8]
KEVIN M. McGLONE

SHARONDA R. WILLIAMS [5,9]
CHAD P. MORROW
LAUREN L. HUDSON [3]
ELLEN PIVACH DUNBAR
JEFFREY D. KESSLER [7]
KEITH L. MAGNESS
R. SCOTT HOGAN

OF COUNSEL:
TIMOTHY B. FRANCIS
DAVID A. MARCELLO

[1] LAW CORPORATION
[2] MEMBER OF LOUISIANA AND TEXAS BARS
[3] MEMBER OF LOUISIANA AND ALABAMA BARS
[4] MEMBER OF LOUISIANA AND CALIFORNIA BARS
[5] MEMBER OF LOUISIANA AND GEORGIA BARS
[6] MEMBER OF LOUISIANA AND MISSISSIPPI BARS
[7] MEMBER OF LOUISIANA AND NEW YORK BARS
[8] BOARD CERTIFIED TAX ATTORNEY LOUISIANA
    BOARD OF LEGAL SPECIALIZATION
[9] REGISTERED TO PRACTICE BEFORE THE
    UNITED STATES PATENT AND TRADEMARK
    OFFICE

ALL OTHERS LOUISIANA BAR

jgarner@shergarner.com
Direct Dial: (504) 299-2102
Direct Fax: (504) 299-2302

(504) 299-2100
FAX (504) 299-2300

April 13, 2007

**VIA EMAIL**
Ralph S. Hubbard, III
Simeon B. Reimonenq, Jr.
601 Poydras St., Suite 2775
New Orleans, LA  70130

  RE: Xavier University of Louisiana v. Travelers
     USDC No. 06-0516
     Our File:  17004.0002

Gentlemen:

   In accordance with Case Management Order No. 4 issued by Judge Duval on March 1, 2007, we make the following initial disclosures regarding the above referenced matter. American Bankers Insurance Company of Florida, 8655 East Via De Ventura, Scottsdale, Arizona 85258 provided flood insurance coverage to Xavier University at all pertinent times.

   The additional information required by Case Management Order No. 4 has already been provided. We refer you to those documents bates labeled XAVIER 000062 -XAVIER 000088. They were also attached to George Claypool's deposition exhibit no. 13. The claim numbers are the same as the policy numbers for the insured locations.



LAW OFFICES OF
# SHER GARNER CAHILL RICHTER
## KLEIN & HILBERT, L.L.C.

April 13, 2007
Page - 2 -

Please advise if you have any additional questions.

Sincerely,

James Garner
Darnell Bludworth
Kevin M. McGlone

JG/tw

LAW OFFICES OF

# SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.

TWENTY-EIGHTH FLOOR
909 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70112-1033
http://www.shergarner.com

LEOPOLD Z. SHER [1]
JAMES M. GARNER [2]
ELWOOD F. CAHILL, JR.
RICHARD P. RICHTER
STEVEN L. KLEIN [1,3]
PETER L. HILBERT, JR.
MARIE A. MOORE [3]
DEBRA J. FISCHMAN
DARNELL BLUDWORTH [2]
MARTHA Y. CURTIS [2]
NEAL J. KLING
KEITH A. KORNMAN [3]
JOSHUA S. FORCE [2,4]

DEBORAH J. MOENCH
DOROTHY S. WATKINS LAWRENCE [2]
JOHN T. BALHOFF, II
ALVIN C. MIESTER, III
KAREN T. HOLZENTHAL
ASHLEY S. BERGERON
ELIZABETH S. ROBINS
CHRISTOPHER T. CHOCHELES
HOWARD T. BOYD, III [3]
RYAN D. ADAMS
TERRI B. LOUGHLIN
JACOB A. AIREY
THOMAS J. MADIGAN, II [6]
KEVIN M. McGLONE

SHARONDA R. WILLIAMS [5,9]
CHAD P. MORROW
LAUREN L. HUDSON [3]
ELLEN PIVACH DUNBAR
JEFFREY D. KESSLER [7]
KEITH L. MAGNESS
R. SCOTT HOGAN

OF COUNSEL:
TIMOTHY B. FRANCIS
DAVID A. MARCELLO

[1] LAW CORPORATION
[2] MEMBER OF LOUISIANA AND TEXAS BARS
[3] MEMBER OF LOUISIANA AND ALABAMA BARS
[4] MEMBER OF LOUISIANA AND CALIFORNIA BARS
[5] MEMBER OF LOUISIANA AND GEORGIA BARS
[6] MEMBER OF LOUISIANA AND MISSISSIPPI BARS
[7] MEMBER OF LOUISIANA AND NEW YORK BARS
[8] BOARD CERTIFIED TAX ATTORNEY LOUISIANA
    BOARD OF LEGAL SPECIALIZATION
[9] REGISTERED TO PRACTICE BEFORE THE
    UNITED STATES PATENT AND TRADEMARK
    OFFICE

ALL OTHERS LOUISIANA BAR

dbludworth@shergarner.com
Direct Dial: (504) 299-2114
Direct Fax: (504) 299-2314

(504) 299-2100
FAX (504) 299-2300

May 1, 2007

**VIA HAND DELIVERY**
Ralph S. Hubbard, III
Simeon B. Reimonenq, Jr.
601 Poydras St., Suite 2775
New Orleans, LA  70130

> RE:  Xavier University of Louisiana v. Travelers
>       USDC No. 06-0516
>       Our File:  17004.0002

Gentlemen:

Enclosed please find the following:

1) Landis Pay Application No. 23- XAVIER4129-4497;

2) Landis Pay Application No. 24- XAVIER4498-4834;

3) Landis Pay Application No. 25- XAVIER 4835-5364;

4) Landis Pay Application No. 26- XAVIER5365-5717; and

5) Landis Pay Application No. 27- XAVIER5718-6007.

Please advise if you have any additional questions.


EXHIBIT

LAW OFFICES OF
# SHER GARNER CAHILL RICHTER
## KLEIN & HILBERT, L.L.C.

May 1, 2007
Page - 2 - _____

Sincerely,

Darrell Bludworth
Kevin M. McGlone

DB/tw
Enclosures

Regular Session, 2006    **ACT No. 813**    <u>ENROLLED</u> .

SENATE BILL NO. 620

BY SENATOR MURRAY AND REPRESENTATIVES FARRAR AND RICHMOND

1                           AN ACT

2    To amend and reenact R.S. 22:658(B)(1), relative to insurance claims; to increase the

3         penalties for failure to timely pay a claim; to authorize the assessment of attorney

4         fees and cost against an insurer who fails to timely pay a claim; and to provide for

5         related matters.

6    Be it enacted by the Legislature of Louisiana:

7         Section 1. R.S. 22:658(B)(1) is hereby amended and reenacted to read as follows:

8         §658. Payment and adjustment of claims, policies other than life and health and

9                 accident; personal vehicle damage claims; penalties; arson-related

10                claims suspension

11                           *      *      *

12         B.(1) Failure to make such payment within thirty days after receipt of such

13         satisfactory written proofs and demand therefor or failure to make a written offer to

14         settle any property damage claim, including a third-party claim, within thirty days

15         after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs

16         (A)(1) and (4), respectively, or failure to make such payment within thirty days after

17         written agreement or settlement as provided in Paragraph (A)(2), when such failure

18         is found to be arbitrary, capricious, or without probable cause, shall subject the

19         insurer to a penalty, in addition to the amount of the loss, of ~~twenty-five~~ <u>**fifty**</u> percent

20         damages on the amount found to be due from the insurer to the insured, or one

21         thousand dollars, whichever is greater, payable to the insured, or to any of said

22         employees, or in the event a partial payment or tender has been made, twenty-five

Coding: Words which are struck through are deletions from existing law;
words in <u>**boldface type and underscored**</u> are additions.



EXHIBIT

tabbies'

SB NO. 620                                                    ENROLLED

1    fifty percent of the difference between the amount paid or tendered and the amount

2    found to be due as well as reasonable attorney fees and costs. Such penalties, if

3    awarded, shall not be used by the insurer in computing either past or

4    prospective loss experience for the purpose of setting rates or making rate

5    filings.

6                                    *       *       *


_____
PRESIDENT OF THE SENATE


_____
SPEAKER OF THE HOUSE OF REPRESENTATIVES


_____
GOVERNOR OF THE STATE OF LOUISIANA


APPROVED: _____

Coding: Words which are struck-through are deletions from existing law;
words in boldface type and underscored are additions.

SLS 06RS-291                                          <u>ORIGINAL</u>

Regular Session, 2006

SENATE BILL NO. 620

BY SENATOR MURRAY

INSURANCE CLAIMS. Increases penalties for insurers who fail to timely pay claims.

| | |
|---|---|
| 1 | AN ACT |
| 2 | To amend and reenact R.S. 22:658(B)(1), relative to insurance claims; to increase the |
| 3 | penalties for failure to timely pay a claim; to authorize the assessment of attorney |
| 4 | fees and cost against an insurer who fails to timely pay a claim; and to provide for |
| 5 | related matters. |
| 6 | Be it enacted by the Legislature of Louisiana: |
| 7 | Section 1. R.S. 22:658(B)(1) is hereby amended and reenacted to read as follows: |
| 8 | §658. Payment and adjustment of claims, policies other than life and health and |
| 9 | accident; personal vehicle damage claims; penalties; arson-related |
| 10 | claims suspension |
| 11 | *          *          * |
| 12 | B.(1) Failure to make such payment within thirty days after receipt of such |
| 13 | satisfactory written proofs and demand therefor or failure to make a written offer to |
| 14 | settle any property damage claim, including a third-party claim, within thirty days |
| 15 | after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs |
| 16 | (A)(1) and (4), respectively, or failure to make such payment within thirty days after |
| 17 | written agreement or settlement as provided in Paragraph (A)(2), when such failure |

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in <b><u>boldface type and underscored</u></b> are additions.

SLS 05RS-291                                              ORIGINAL
                                                         SB NO. 620

1       is found to be arbitrary, capricious, or without probable cause, shall subject the

2       insurer to a penalty, in addition to the amount of the loss, of twenty-five fifty percent

3       damages on the amount found to be due from the insurer to the insured, or one

4       thousand dollars, whichever is greater, payable to the insured, or to any of said

5       employees, or in the event a partial payment or tender has been made, twenty-five

6       fifty percent of the difference between the amount paid or tendered and the amount

7       found to be due as well as reasonable attorney fees and costs.

The original instrument and the following digest, which constitutes no part
of the legislative instrument, were prepared by Carla S. Roberts.

DIGEST

Present law provides that failure to make a payment to a claimant within thirty days after
receipt of such satisfactory written proofs or failure to make a written offer to settle any
property damage claim, including a third-party claim, within thirty days after receipt of
satisfactory proofs of loss of that claim, or failure to make such payment within thirty days
after written agreement or settlement when such failure is found to be arbitrary, capricious,
or without probable cause, the insurer is subject to a penalty of 25% percent damages on the
amount found to be due or $1,000, whichever is greater.

Proposed law retains present law but changes the penalty amount from 25% of the damages
owed to 50% of the damages owed.

Present law provides if a partial payment or tender has been made and the court finds
damages in excess of the partial payment, 25% of the difference between the amount paid
or tendered and the amount found to be due will be paid as a penalty.

Proposed law retains present law but changes the penalty amount from 25% of the damages
owed to 50% of the damages owed.

Proposed law, in addition to the 50% penalty, that reasonable attorney fees and cost be paid
by an insurer who fails to timely pay claims.

(Amends R.S. 22:658(B)(1))

Coding: Words which are struck-through are deletions from existing law;
words in boldface type and underscored are additions.

**HURRICANE LITIGATION**

| | |
|---|---|
| **JOSEPH SHER** | **NO. 06-9276    DIVISION G-11** |
| versus | **CIVIL DISTRICT COURT** |
| **LAFAYETTE INSURANCE COMPANY, ET AL** | **PARISH OF ORLEANS** |
| | **STATE OF LOUISIANA** |

FILED:_____

**DEPUTY CLERK**

**JUDGMENT**

Plaintiff's, Joseph Sher, Motion for Award of Attorneys' Fees and to Tax Costs (hereinafter Plaintiff's "Motion") came for a regularly-scheduled hearing on April 27, 2007.

| **PRESENT:** | **James M. Garner, Esq.** | **For Plaintiff, Joseph Sher** |
|---|---|---|
| | **Darnell Bludworth, Esq.** | **For Plaintiff, Joseph Sher** |
| | **William D. O'Regan, IV Esq.** | **For Lafayette Insurance Company** |

The Court, after considering the memoranda, evidence and argument of counsel, as well as the complete trial record with all exhibits and all trial testimony, and the entire court record, including, but not limited to, the Petition and all exhibits and returns of service, which were admitted into evidence without objection by Lafayette Insurance Company at the hearing on Plaintiff's Motion, ruled as follows:

**IT IS ORDERED** that Plaintiff's Motion is GRANTED for all legal and factual bases argued by Plaintiff's counsel in brief and in oral argument;

**IT IS FURTHER ORDERED** that Lafayette Insurance Company is ordered to pay Plaintiff the following amounts, ~~plus interest thereon from the date of judicial demand until paid:~~

**$16,288.60** in costs pursuant to Louisiana Code of Civil Procedure article 1920;

**$42,020.24** in costs pursuant to Louisiana Code of Civil Procedure article 970; and

**$258,728.00** in attorneys' fees pursuant to Louisiana Civil Code article 1997 and/or Louisiana Revised Statutes 22:658.



EXHIBIT
tabbies®
K

06-9276

**JUDGMENT RENDERED** this 27ᵗʰ day of April, 2007 at New Orleans, Louisiana;

**JUDGMENT READ AND SIGNED** this _____ day of May, 2007 at New Orleans,

Louisiana.

_____
**JUDGE ROBIN GIARRUSSO**

A TRUE C?
DEPUTY CLERK, CIVI
PARISH OF
STATE ?

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.:  2006-5961          DIVISION "L"          SECTION 6

ROYAL CLOUD NINE, L.L.C.

VERSUS

LAFAYETTE INSURANCE COMPANY

FILED: _____          _____

DEPUTY CLERK:

### JUDGMENT

This matter came before the court on February 8, 2007.

PRESENT:          JAMES GARNER, ELLEN DUNBAR, and DARNELL
                  BLUDWORTH, attorneys for Plaintiff, ROYAL CLOUD
                  NINE, L.L.C.; and

                  RAYMOND A. PELLETERI and ALEXANDER R.
                  SAUNDERS, attorney for Defendant, LAFAYETTE
                  INSURANCE CO.

After considering the pleadings and arguments made, as well as the testimony and evidence introduced on that date, the Court hereby renders judgment as follows:

IT IS ORDERED, ADJUDGED AND DECREED that the Lafayette Policy covers Royal Cloud's Hurricane Katrina damages.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Lafayette is liable to Royal Cloud for the replacement cost of repairing the interior damage to the Latrobes building in accordance with Angelo Farrell's October 25, 2006 estimate totaling $114,375.60, plus all applicable judicial interest. Lafayette is also liable for the replacement cost of the exterior damages to the Latrobes building in accordance with Mr. Auslander's June 2, 2006 estimate, namely, the cost to repair the exterior front, totaling $10,204 and the cost to repair the Conti Street side of the building, totaling $4,450, plus all applicable judicial interest.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Lafayette is liable to Royal Cloud for the replacement cost of the roof of the Latrobes building in accordance with Angelo Farrell's April 20, 2006 roofing estimate totaling $304,140, plus all applicable judicial interest.


EXHIBIT
tabbies
L

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Pursuant to §22:658 (A)(1), Lafayette is liable to Royal Cloud for a penalty of $247,784.80 for failure to render payment within thirty days of proof of loss, plus all applicable judicial interest.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Pursuant to §22:658 (A)(1), Lafayette is liable to Royal Cloud for the payment of all reasonable attorneys' fees and costs incurred in the present litigation against Lafayette, totaling $111,727.33, plus all applicable judicial interest.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that The Court further taxes all costs of this proceeding against Lafayette and further awards Royal Cloud judicial interest from the date of judicial demand on all amounts awarded here.

New Orleans, Louisiana, this _____ day of March, 2007.

JUDGE KERN A. REESE
DIVISION "L"

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2006-5961        DIVISION "L"        SECTION 6

ROYAL CLOUD NINE, L.L.C.

VERSUS

LAFAYETTE INSURANCE COMPANY

FILED: _____      _____

DEPUTY CLERK:

## REASONS FOR JUDGMENT

This matter came before the court on February 8, 2007.

PRESENT:      JAMES GARNER, ELLEN DUNBAR, and DARNELL
BLUDWORTH, attorneys for Plaintiff, ROYAL CLOUD
NINE, L.L.C.; and

RAYMOND A. PELLETERI and ALEXANDER R.
SAUNDERS, attorney for Defendant, LAFAYETTE
INSURANCE CO.

This case arises out of Plaintiff's claims for damages to the insured property allegedly occasioned by Hurricane Katrina. According to the Plaintiff, the insured property ("Latrobe's") suffered a great deal of damage to the roof, among other damages. Since Plaintiff's claim was made, Royal Cloud Nine, LLC, ("Royal Cloud") and Lafayette Insurance Company ("Lafayette") have settled Plaintiff's claims for all damages other than the damage to the roof. The evidence presented at trial shows that the only material dispute remaining is relative to the roof of the Latrobe's building.

### BACKGROUND

Lafayette issued Royal Cloud a commercial lines insurance policy for the period December 11, 2004 to December 11, 2005, insuring the property the Latrobe building located at 401-405 Royal Street, New Orleans. The Latrobe building was designed by the renowned architect Benjamin Henry Latrobe, and was constructed in 1820. It has a position on the National Register of Historic Places, and the Latrobe building is rated "purple" on the Vieux Carre Commission's Architectual and Historical Rating System, the highest rating assigned.

1

On August 29, 2005, Hurricane Katrina struck the New Orleans area, causing substantial property damage to the Latrobes building during the time in which the Lafayette policy was in effect. The building sustained extensive interior and exterior damage, including damage to the roof of the main building and carriage house. In particular, there was evidence of wind-driven water intrusion to the first and second floors, including damage to the plaster, windows, and flooring caused by several leaks in the roof. The roof itself sustained wind damage, including but not limited to, missing, slipped and broken tiles, hairline cracks in the slate, missing ridgecaps, and evidence of the tiles being uplifted by the winds of Hurricane Katrina.

Royal Cloud notified Lafayette of its Hurricane Katrina damages no later than September 27, 2005. Lafayette retained David Cushing of Property Loss Consulting, Inc. as the independent adjuster assigned to Royal Cloud's claim. Lafayette did not assign an in-house adjuster to Royal Cloud's claim until February 2006 when Lafayette assigned Rita Heagy and her supervisor, Patrick Challenger, to the claim. Royal Cloud retained Carter Auslander as a public adjuster to assist with the adjustment of its Hurricane Katrina claim.

In February 2006, David Cushing, with the authority of Lafayette, retained Gary Boyd of Boyd, Inc. to inspect the damaged roof and prepare estimates. Mr. Boyd physically walked the roof and prepared two roofing estimates, one for repair totaling $138,645.30 and one for replacement totaling, $180,159.88. Mr. Boyd's estimates, however, indicated that he recommended replacement over repair due to the brittle nature of the slate tiles and the many cracks throughout. Mr. Boyd tendered his roofing estimates to Mr. Cushing on February 20, 2006, and Mr. Cushing, in turn, tendered the estimates to Ms. Heagy and Mr. Challenger no later than March 21, 2006 with his first report. Despite having retained Mr. Boyd, Lafayette chose to disregard his estimates without further investigation. Mr. Boyd's estimates did not account for the specific costs of performing construction work in the French Quarter, the increased costs of labor and materials in New Orleans, or the cost to replace the carriage house.

On March 6, 2006, Carter Auslander, the public adjuster retained by Royal Cloud, tendered to Mr. Cushing an initial estimate of damage to the Latrobes building, totaling $441,557.31, including a roofing estimate prepared by Angelo Farrell Construction Co.,

2

L.L.C., totaling $247,740 for replacement of the roof with gray slate. Mr. Cushing included Mr. Auslander's March 6, 2006 estimate with his second report presented to Lafayette on March 21, 2006. Mr. Cushing also included his own estimate of the damage to the Latrobes building with his March 21, 2006 report, totaling $189,680.11. Despite having received these estimates, Lafayette did not render any payment to Royal Cloud.

On April 21, 2006, Mr. Auslander presented Mr. Cushing a revised roofing estimate prepared by Mr. Farrell, totaling $304,140, reflecting an increase in the cost of labor and materials following Hurricane Katrina. After the head of claims, David Connor, looked at the claim and indicated on a quick review that he did not believe the damages were that high — although he had never seen the property — the word came down from the home office to get yet another roofing estimate because Lafayette's home office did not like Mr. Boyd's estimates. On May 10, 2006, Lafayette retained "TC3" who in turn retained Gerald Lehman of Slidell Re-Roofing Company to re-inspect the roof of the Latrobes building, although Lafayette had already received estimates from two roofers, including its own. Lafayette did not have any prior dealings with Slidell Re-Roofing Company. Mr. Lehman did not physically walk the roof, but inspected it from a manlift from which much of the damage to the roof, particularly, the hairline cracks, were not visible. Mr. Lehman prepared a roofing estimate to make spot repairs with gray slate totaling only $5,500 that did not include the carriage house, nor did it include any warranty of the work performed.

On May 22, 2006, Lafayette retained Kevin Vanderbrook to inspect and prepare an engineer's report on the damage to the Latrobes building. Mr. Vanderbrook found that the building showed evidence of interior water intrusion resulting from damage to the roof. Mr. Vanderbrook did not inspect the roof of the main building at the time of the May 22, 2006 inspection. The only time Mr. Vanderbrook inspected the roof was in rainy weather, nine months later on February 1, 2007, at which time the roof was tarped in several large areas and inaccessible.

On June 2, 2006, Carter Auslander tendered to Lafayette a revised estimate of the damages to the Latrobes building, totaling $487,723.70, along with a letter from the Vieux Carre Commission discussing the requirement to replace roofs of historical buildings with special materials, including genuine slate. Mr. Auslander's June 2, 2006

3

estimate specifically included the cost to repair the exterior front of the Latrobes building, totaling $10,204 and the cost to repair the Conti Street side of the building, totaling $4,450. On June 27, 2006, despite having estimates totaling over $400,000 in damages, Lafayette sent a payment of $61,403.33 as "settlement" for Royal Cloud's Hurricane Katrina insurance claim. This was the first time Lafayette rendered any payment on Royal Cloud's claim, despite having received proof of loss as early as March 6, 2006 and despite having reserved Royal Cloud's claim at $50,000 as early as December 13, 2006. The Lafayette payment was not made as an unconditional tender, but rather, the cover letter stated it was a "settlement" of Royal Cloud's claims. Accordingly, Royal Cloud did not negotiate the check sent by Lafayette.

The purported Lafayette "settlement" included a payment based on the $5500 roofing estimate prepared by Slidell Re-Roofing rather than those prepared by Angelo Farrell Construction Co., L.L.C., or Lafayette's own roofer, Boyd, Inc. Lafayette did not make any deduction for depreciation of the roof. Further, Lafayette offered no evidence of depreciation of the roof at trial. Enclosed with the Lafayette payment were the June 2, 2006 estimate prepared by Carter Auslander and the Slidell Re-Roofing estimate. Lafayette did not include all estimates in its file on Royal Cloud's loss, despite numerous requests by counsel for Royal Cloud to tender all estimates on file, particularly roofing estimates.

On January 12, 2007, counsel for Royal Cloud tendered to counsel for Lafayette an October 25, 2006 invoice prepared by Angelo Farrell Construction Co., L.L.C. for the repairs made to the interior of the Latrobes building, totaling $114,375.60. Lafayette has not tendered payment for the replacement cost of these repairs despite the fact the Lafayette Policy provides replacement cost coverage. Royal Cloud has received no additional payments from Lafayette since the June 2006 payment.

## DAMAGE TO THE BUILDING

*Damages*

This Court finds that the Lafayette Policy provides coverage for Royal Cloud's losses sustained as a result of Hurricane Katrina. It is undisputed that the Lafayette Policy is an all-risk policy that, under its own terms, covers all risks of physical loss

4

unless expressly excluded or limited. Mr. Challenger himself admitted that the Lafayette Policy is an all-risk policy.

This Court further finds that the Latrobes building sustained extensive damage as a result of Hurricane Katrina. At trial, Coleman E. Adler, II testified that the building showed evidence of water intrusion to the first and second floors, including damage to the plaster, windows, and flooring caused by several leaks in the roof. Plaintiff's Exhibit 79 illustrates where much of this water intrusion occurred, which Lafayette itself acknowledged and rendered payment for repairs.

Mr. Adler further testified that the roof was damaged and that as many as ten roof leaks caused the water intrusion to the second floor of the building. Mr. Adler also testified that the roof of the carriage house, which had been replaced prior to the hurricane, sustained damage. Mr. Adler testified that the carriage house roof did not leak prior to the storm; however, the roof leaked after Hurricane Katrina. This testimony is undisputed.

Angelo Farrell, Royal Cloud's roofing expert, also testified that the roof sustained extensive damage including missing, slipped and broken tiles, hairline cracks in the slate, and missing ridgecaps. Mr. Farrell actually inspected the roof together with one of his employees. Mr. Farrell further testified that the roof of the carriage house showed signs of damage from wind uplift. Mr. Farrell's testimony is supported by the deposition testimony and photographs of Lafayette's own roofer, Gary Boyd, who recommended replacement of the entire roof because of the hairline cracks in the slate, stating:

> However, when you get up close to the shingles I found many, many tiny fissures or fractures in the slate, either running across the slate or running down the slate, and I was very concerned that we would repair the slate without just having never ending adjacent damage because of these tiny fissures and cracks.

Further, Lafayette's second roofer, Gerald Lehman testified that there was roof damage attributable to wind, including damaged slates and ridge tile. When shown photographs taken by Mr. Boyd, who actually walked the roof, Mr. Lehman acknowledged they depicted the existence of several cracks in the slate tiles. Additionally, Kevin Vanderbrook, Lafayette's own engineer, testified that he saw signs of roof damage caused by high winds, including cracked and broken slates. Mr. Vanderbrook also acknowledged water intrusion damage to the interior of the Latrobes building caused by damage to the roof.

5

Mr. Vanderbrook also admitted that the pattern of damage caused by wind is similar to the pattern of damage caused by wear and tear such that it is difficult to distinguish between the two. Moreover, Mr. Vanderbrook testified that he could offer no opinion as to whether the roof damage was caused by wind or wear and tear. This testimony is supported by that of Mr. Boyd and Mr. Farrell, who also stated that it was very difficult, if not impossible, to determine whether the damaged shingles resulted from or preceded the hurricane.

### Damages to the Interior, External Front, and External Side

It is undisputed that Royal Cloud has tendered to Lafayette multiple estimates in support of its Hurricane Katrina damages, both interior and exterior. Royal Cloud tendered two estimates of the damages to the Latrobes building to Lafayette in both March and June 2006. Lafayette does not dispute receipt of these estimates. Lafayette, in fact, acknowledged Royal Cloud's estimate and included the cost of repairing the damages in its June 27, 2006 settlement tender.

The undisputed evidence shows that on January 12, 2007, counsel for Royal Cloud emailed to counsel for Lafayette an October 25, 2006 invoice from Angelo Farrell Construction Company outlining the repairs made to the interior of the Latrobes building and the cost of these repairs, totaling $114,375.60. Mr. Adler testified that the all of the work reflected in the invoice has been performed. Ms. Heagy conceded that Lafayette owed the replacement cost of the damage once the work was performed. Moreover, Lafayette has failed to present any evidence in support of depreciation. Thus, the Court finds that Lafayette is liable for the replacement cost of the damages to the interior of the Latrobes building as detailed in Mr. Farrell's invoice in the amount of $114,375.60, plus all applicable judicial interest.

As Mr. Farrell's invoice only includes interior repair work, the Court further finds that Lafayette is liable for the replacement cost of the exterior damages to the Latrobes building in accordance with Mr. Auslander's June 2, 2006 estimate, namely, the cost to repair the exterior front, totaling $10,204 and the cost to repair the Conti Street side of the building, totaling $4,450, plus all applicable judicial interest.

*Replacement Costs*

The Court finds that Lafayette is liable for the replacement cost of the roof of the Latrobes building as repair is not a viable option. Both Angelo Farrell and Gary Boyd, Lafayette's own roofer, testified that the roof of the Latrobes building required replacement rather than repair. Mr. Farrell, who has performed extensive construction work in the French Quarter, including the replacement of multiple slate roofs following Hurricane Katrina, testified that due to the brittle nature of synthetic slate and slate, the roof of the Latrobes building cannot be repaired. Mr. Farrell testified that there were hairline cracks and broken slates throughout the roof and that spot repair was not an option without breaking multiple surrounding tiles. Mr. Farrell further testified that over 50% of the roof was damaged as a result of Hurricane Katrina and that replacement was necessary because of the strong wind load as well as the Vieux Carre Commission requirements.

Mr. Farrell's testimony is consistent with that of Gary Boyd, Lafayette's own roofer, who also recommended replacement of the Latrobes roof. Mr. Boyd, who physically walked the roof for hours, also observed multiple hairline cracks and testified at his December 28, 2006 deposition that repairing the synthetic slate of the Latrobes roof would result in "never ending adjacent damage because of these tiny fissures and cracks." Mr. Boyd specifically stated:

> Given the number of fissures and cracks and splits that I saw in the tile, given the fact that we were going to be pretty high off the ground, and we were going to have to be working with some safety lanyards, we were going to be walking across — really it's almost stomping across the roof when you're in that kind of tension, I felt like we were going to damage a lot more tile.

Further, the multiple photographs taken by Mr. Boyd, who has been installing slate roofs since the mid-eighties, show the extent of these cracks in the roofing tiles. Mr. Boyd also testified that he did not believe the work could be performed for $5,500.78

Lafayette's subsequent efforts to find a roofer with a different opinion do not successfuly counter Mr. Boyd. The Court finds the testimony of Gerald Lehman and Kevin Vanderbrook unconvincing. Mr. Lehman inspected the roof of the Latrobes building from a manlift which only had access to the very font of the roof, and he did not physically walk on or inspect all aspects of the damaged roof. Both Mr. Farrell and Mr. Boyd testified that the hairline cracks in the slate were not visible from a manlift. Mr.

7

Lehman himself testified that he was not able to see cracks from the manlift. Mr. Lehman also testified that he was unable to see several slopes of the roof. Thus, the Court finds that Mr. Lehman's testimony is unreliable.

Further, Mr. Vanderbrook did not physically inspect the roof when preparing his engineer's report on which Lafayette relied in rendering payment. Moreover, Mr. Vanderbrook testified that when he did inspect the roof days before trial, it was in rainy weather and a large portion of the roof was tarped and not visible for inspection. Mr. Vanderbrook also testified that he did not look under the tarp on the roof, and that any visible tiles were darker than usual because of the rain. The Court notes that Mr. Vanderbrook is not a roofer and has not performed construction work since 1999. In fact, Mr. Vanderbrook testified that he has never actually repaired or replaced a slate roof. Thus, the Court finds that Mr. Vanderbrook's testimony is also unreliable, and Lafayette has therefore failed to present sufficient evidence against the need to replace the roof of the Latrobes building. Thus, the Court finds that Lafayette is liable to Royal Cloud for the replacement cost of the roof.

In particular, the Court finds that Lafayette is liable for payment of Angelo Farrell's April 20, 2006 roofing estimate of the Latrobes building, totaling $304,140. For the reasons discussed supra, the Court rejects the $5500 Slidell Re-Roofing estimate as repair is not a viable option and the Slidell estimate fails to include a guaranty of the work or an itemized breakdown of the cost to perform the work required. Further, while Mr. Farrell and Mr. Boyd's estimates are both based on replacement of the roof, the Court finds that Mr. Farrell's April 20, 2006 estimate best reflects the actual cost of replacing the roof as it includes the specific costs of performing construction work in the French Quarter, the increased costs of labor and materials in New Orleans, and includes the cost to replace the carriage house, all of which were not included in Mr. Boyd's estimates. Further, Mr. Boyd admitted in his deposition that pricing has changed since his original estimate and that he did not include the carriage house roof when preparing his estimate. Thus, the Court finds Lafayette liable for payment of Angelo Farrell's April 20, 2006 roofing estimate in the amount of $304,140, plus all applicable judicial interest. Lafayette offered no evidence of depreciation of the roof at trial. Therefore, Royal Cloud is entitled to the full replacement cost of the roof.

8

In sum, the Court finds Lafayette is liable for the replacement cost of the interior damage to the Latrobes building in accordance with Angelo Farrell's October 25, 2006 invoice totaling $114, 375.60, the replacement cost of the exterior damages in accordance with Carter Auslander's June 2, 2006 estimate, namely, the cost to repair the exterior front totaling $10,204 and the cost to repair the Conti Street side of the building totaling $4,450, and the cost to replace the roof in accordance with Mr. Farrell's April 20, 2006 roofing estimate totaling $304,140, for a total cost of $433,169.60. Although Lafayette tendered Royal Cloud a check in the amount of $61,401.33 on June 27, 2006, this payment was not made as an unconditional tender, but rather as a "settlement." Thus, the Court finds that Lafayette remains liable to Royal Cloud for the full amount of $433,169.60, plus all applicable judicial interest, which said payment is presently due and owing.

## BAD FAITH, ATTORNEY'S FEES

*Failure to Initiate Claim Within 30 days*

La. Rev. Stat. 22:658 (A)(3) provides that in the case of catastrophic loss, such as Hurricane Katrina, "the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220."

It is undisputed that Lafayette acknowledged notice of Royal Cloud's Hurricane Katrina claim on September 27, 2005 at which point Lafayette deferred adjustment of the claim to Property Loss Consulting, Inc. ("PLC"). Lafayette presented no evidence indicating that it took any further action on Royal Cloud's claim within thirty days after receipt of notice of loss. Mr. Challenger conceded that Lafayette did nothing more than set up a file and assign the loss to PLC within the thirty days of notice. Mr. Challenger also conceded that these actions did not constitute initiation of loss adjustment. This testimony is supported by Lafayette's own claim notes, which do not contain any entries prior to December 12, 2005.

9

Moreover, Mr. Challenger admitted that Lafayette failed to assign an actual

person to adjust Royal Cloud's claim until late January or early February 2006. Ms.

Heagy also testified that there was no evidence that Lafayette did anything to adjust

Royal Cloud's loss between September 27, 2005 and December 12, 2005, the date of the

first file note entry. However, the Court considers the tremendous strain and difficulties

encountered by all parties post-Katrina, and it finds that this delay was reasonable.

Therefore, Plaintiff's claims for damages under La. Rev. Stat. 22:658 (A)(3) are

dismissed.

*Failure to Tender Payment Owed Under the Policy Within 30 and/or 60 days after
Receipt of Satisfactory Proof of Loss*

Louisiana law imposes specific restrictions on insurance companies when

adjusting property insurance claims. In particular, Louisiana Revised Statute 22:658

provides:

A.(1)   All insurers issuing any type of contract, other than those specified
        in R.S. 22:656, 657, and Chapter 10 of Title 23 of the Louisiana
        Revised Statutes of 1950, shall pay the amount of any claim due
        any insured within thirty days after receipt of satisfactory proof of
        loss from the insured or any party in interest. The insurer shall
        notify the insurance producer of record of all such payments for
        property damage claims made in accordance with this Paragraph.

                          *   *   *

        Failure to make such payment within thirty days after receipt of
        such satisfactory written proofs and demand therefor. . . when such
        failure is found to be arbitrary, capricious, or without probable
        cause, shall subject the insurer to a penalty, in addition to the
        amount of the loss, of fifty percent damages on the amount found
        to be due from the insurer to the insured, or one thousand dollars...
        as well as reasonable attorney fees and costs.

La. R.S. 22:658.

Further, Louisiana Revised Statute 22:1220 provides that an insurer owes an

insured a duty of "good faith and fair dealing" and that the insurer has an affirmative duty

to "fairly and promptly" adjust claims and to make a "reasonable effort" to settle claims

with the insured. Section 22:1220 (A)(5) also provides that an insurer's failure "to pay

the amount of any claim due any person insured by the contract within sixty days after

receipt of satisfactory proof of loss from the claimant when such failure is arbitrary,

capricious, or without probable cause" constitutes a breach of the insurer's good faith

10

duty. An insurer who violates its good faith duty under § 22:1220 is liable for "any general or special damages to which a claimant is entitled for breach of the imposed duty" and penalties in the amount "not to exceed two times the damages sustained or five thousand dollars, whichever is greater."

It is undisputed that Royal Cloud provided Lafayette with satisfactory proof of loss as early as March 6, 2006 with the tendering of Mr. Auslander's initial estimate of damages on the Latrobes building to Mr. Cushing. Mr. Challenger admitted that Mr. Auslander's March 6, 2006 estimate constituted satisfactory proof of loss. Louisiana law supports this testimony as the Louisiana Supreme Court has held that the "proof of loss" requirement under § 22:658 and §22:1220 is a flexible requirement merely to advise the insurer of the facts of the claim and is not required to be in any formal style. *W.P. Sevier v. U.S. Fid. & Guar. Co.*, 497 So. 2d 1380 (La. 1986); *see also Spalitta v. Hartford Fire Ins. Co.*, 428 So. 2d 824, 827 (La. App. 5 Cir. 1983); *Gatte v. Coal Operators Cas. Co.*, 225 So. 2d 256, 258 (La. App. 3 Cir. 1969). Further, the evidence presented shows that Lafayette was put on notice of the claim and given information regarding the claim early on such that Patrick Challenger submitted an Increase Reserve Notification form on February 22, 2006, increasing the reserve to $275,000. Thus, the Court finds that Lafayette received satisfactory proof of loss no later than March 6, 2006.

It is also undisputed that Lafayette failed to tender any payment to Royal Cloud until June 27, 2006 — over three months after receiving the March 6, 2006 claim submission and nearly one year after Hurricane Katrina. Further, because that tender was not unconditional, it has no legal effect. Thus, the Court finds that Lafayette failed to tender payment within thirty and/or sixty days after receipt of satisfactory proof of loss as required by § 22:658 and § 22:1220, respectively. Further, the Court finds that it is undisputed that Lafayette failed to make a written offer to settle Royal Cloud's property damage claim within thirty days of receipt of satisfactory proof of loss in violation of § 22:658 (A)(4).

*Arbitrary and Capricious*

The Court finds not only that Lafayette violated the statutory requirements of § 22:658 and § 22:1220, but that Lafayette's violation was arbitrary, capricious, and

11

without probable cause such that Lafayette is subject to statutory penalties. Specifically, the Court finds that Lafayette acted arbitrarily and capriciously by entirely disregarding the roofing estimates of its own roofer, Gary Boyd, then relying on a clearly anomalous, conspicuously unreliable, and woefully inadequate estimate by Slidell Re-Roofing Company.

The undisputed evidence shows that Ms. Heagy and Mr. Challenger received Mr. Boyd's estimates no later than March 21, 2006 with Mr. Cushing's first report. In his estimates, Mr. Boyd specifically notified Lafayette that he recommended replacement over repair as the slate roof was very brittle and fragile and he was not confident in the method to repair the roof. Lafayette, however, chose to disregard Mr. Boyd's opinion entirely, choosing instead to retain a second roofer, TC3, who in turn retained Mr. Lehman of Slidell Re-Roofing Company, who prepared an estimate hundreds of thousands of dollars lower than the estimates prepared by Mr. Farrell and Mr. Boyd. Mr. Challenger and Ms. Heagy both admitted that they had never worked with Slidell Re-Roofing before, nor did they conduct any research of the company prior to retaining it. Ms. Heagy herself admitted that she was "concerned" about the low value of Mr. Lehman's estimate; yet she chose to rely on this estimate in tendering payment regardless of the fact Lafayette had obtained much higher estimates from two other companies. Further, Mr. Lehman's estimate was prepared from a manlift, whereas both Mr. Farrell and Mr. Boyd physically walked the roof.

The Court notes that this is not the first instance where Lafayette has deliberately rejected a roofing estimate obtained by its own adjuster in favor of an estimate significantly lower. In *Becnel v. Lafayette Insurance Co.*, the Louisiana Fourth Circuit Court of Appeals held that Lafayette violated § 22:658 and § 22:1220 by ignoring the roofing estimate of its own adjuster and failing to tender the recommended payment. Becnel involved an insurance claim for damage to the roof of the insured's home and barn resulting from a hailstorm. 99-2966 (La.App. 4 Cir. 11/15/00); 773 So.2d 247. Lafayette's adjuster submitted an estimate to replace both roofs because of the extensive damage, totaling over $15,000. Upon receiving the replacement estimate, however, Lafayette retained a second adjuster who submitted instead an estimate to merely repair thirteen or so damaged shingles. Relying on the second adjuster's estimate, Lafayette

12

tendered payment for only the repair cost of the damaged roof. The court ultimately found that Lafayette's actions were arbitrary and capricious in violation of § 22:658 and § 22:1220 in ignoring the roofing estimates of its own roofer and that of the insured. *Id.* at 252.

The Court finds that Lafayette's actions in the present matter are nearly identical to Lafayette's actions in *Becnel*. In both instances, Lafayette specifically rejected its own adjuster's submission of an estimate to replace a roof in favor of a significantly lower estimate for repair. Thus, the Court finds that Lafayette acted arbitrarily and capriciously in disregarding the roofing estimate of Mr. Farrell and Mr. Boyd in favor of the much lower and unreasonable Slidell Re-Roofing estimate.

Further, Lafayette's blatant refusal to provide Royal Cloud with a copy of the Boyd roofing estimates when requested constitutes bad faith. Counsel for Royal Cloud repeatedly emailed Rita Heagy requesting both a copy of the Lafayette Policy and all estimates received by Lafayette on the insured property, specifically all estimates on the roof work. Ms. Heagy, however, refused to tender any estimates other than those on which Lafayette based payment under the policy. Ms. Heagy testified that she specifically withheld the Boyd estimates because she believed Royal Cloud already had the Boyd estimates in its possession. However, Ms. Heagy could not point to any file note, correspondence, or other evidence in support of this testimony. Interestingly enough, the Court notes that Leo Wegmann, Mr. Challenger's supervisor, testified in his February 5, 2007 deposition, that he would expect Ms. Heagy to give the insured whatever repair estimates were contained in the file, and that he would have no problem with her doing so.

The Court finds that an apparent lack of supervision of the adjustment of Royal Cloud's claim demonstrated by Ms. Heagy's refusal to produce all estimates is a key theme throughout Lafayette's adjustment of Royal Cloud's claim. Mr. Wegmann testified in his deposition that he has never looked at or reviewed Royal Cloud's insurance policy, despite the fact that he had supervisory authority over the claim as indicated by the file notes. Mr. Wegmann also testified that he has no knowledge of whether those individuals assigned to Royal Cloud's claim followed Lafayette's claim guidelines and the reporting requirements therein. Indeed, Mr. Challenger admitted that

13

Mr. Cushing's reports did not fall within Lafayette's claim adjustment guidelines, as the first report was tendered on February 21, 2006 — hardly within thirty to forty-five days of notice of loss.

Mr. Wegmann further testified that he was not aware of how long it took Lafayette to tender any payment to Royal Cloud. Most notably, Mr. Wegmann conceded that normally he is more involved in the supervision of files such as Royal Cloud's, but was pre-occupied with other tasks such as getting the office up and running and counseling employees.

Further, Bruce Miller, Lafayette's Property Claims Manager, conceded that he is responsible for making sure claims are adjusted promptly and fairly; yet, when questioned about the present matter, Mr. Miller repeatedly deferred to Ms. Heagy and Mr. Challenger and essentially accepted no responsibility for the adjustment of Royal Cloud's claim, despite his supervisory authority. Mr. Miller also testified that he was not aware that Mr. Wegmann was too busy to focus on the supervision of property claims and admitted that he did nothing to assist Mr. Wegmann in that regard.

Further, it is undisputed that Lafayette did not render any payment to Royal Cloud until June 27, 2006 despite the fact that Lafayette had reserved Royal Cloud's claim at $50,000 as early as December 13, 2005. Ms. Heagy testified that Lafayette believed the damages sustained by the Latrobes building totaled at least $50,000 on December 13, 2005. Moreover, the Increase Reserve Notification Form submitted by Mr. Challenger on February 22, 2006 indicates a "prior loss incurred" of $50,000 and requests a reserve increase to $275,000. Yet, Lafayette did not tender one cent to Royal Cloud until nearly 4 months later. Nor did Lafayette tender payment to Royal Cloud upon the receipt of any damage estimates of its own retained adjuster, Mr. Cushing, in February, March, and April 2006. Thus, for these reasons and those discussed supra, the Court finds that Lafayette's failure to render payment within thirty and/or sixty days of receipt of satisfactory proof of loss in accordance with §22:658 and §22:1220 was arbitrary, capricious, and without probable cause such that Lafayette is subject to the statutory penalties contained therein.

14

*Statutory Penalties, Attorneys Fees*

As the Court has found that Lafayette violated §22:658 and §22:1220, and that this violation was arbitrary and capricious, Lafayette is liable for payment of the statutory penalties contained therein. Specifically, the Court finds that Lafayette violated §22:658 and §22:1220 in failing to render payment for Royal Cloud's losses within thirty and sixty days, respectively, of receipt of satisfactory proof of loss. Pursuant to §22:658 (A)(1), Lafayette is liable to Royal Cloud for a penalty of 50% of the amount owed to Royal Cloud that Lafayette failed to timely pay, namely, 50% of $495,569.60. Therefore, the Court finds that pursuant to §22:658 (A)(1), Lafayette is liable to Royal Cloud for a penalty of $247,784.80 for failure to render payment within thirty days of proof of loss, plus all applicable judicial interest.

The Court also finds that pursuant to §22:658 (A)(1), Lafayette is liable to Royal Cloud for the payment of all reasonable attorneys' fees and costs incurred in the present litigation against Lafayette. Alternatively, the Court finds that Lafayette is liable for attorneys' fees and costs under Louisiana Civil Code article 1997 as the Court has found Lafayette failed to fulfill its obligations in bad faith under the Lafayette Policy.

**CONCLUSION**

For the reasons above and in consideration of the applicable law as to the enforcement and interpretation of contracts, particularly contracts of insurance, and Louisiana Revised Statutes §22:1220 and §22:658, as well as the evidence presented, this Court holds as follows:

| | |
|---|---|
| I. | The Lafayette Policy covers Royal Cloud's Hurricane Katrina damages; |
| II. | Lafayette is liable to Royal Cloud for the replacement cost of repairing the interior damage to the Latrobes building in accordance with Angelo Farrell's October 25, 2006 estimate totaling $114,375.60, plus all applicable judicial interest. Lafayette is also liable for the replacement cost of the exterior damages to the Latrobes building in accordance with Mr. Auslander's June 2, 2006 estimate, namely, the cost to repair the exterior front, totaling $10,204 and the cost to repair the Conti Street side of the building, totaling $4,450, plus all applicable judicial interest; |
| III. | Lafayette is liable to Royal Cloud for the replacement cost of the roof of the Latrobes building in accordance with Angelo Farrell's April 20, 2006 roofing estimate totaling $304,140, plus all applicable judicial interest; |
| IV. | Lafayette arbitrarily and capriciously violated Louisiana Revised Statutes §22:658 and §22:1220 and is subject to the statutory penalties contained therein; |

15

V.      Lafayette failed to tender payment owed under the Lafayette Policy within thirty days of receipt of satisfactory proof of loss, specifically violating §22:658(A)(1);

VI.     Lafayette failed to tender payment owed under the Lafayette Policy within sixty days of receipt of satisfactory proof of loss, specifically violating §22:1220(A)(1);

VII.    Lafayette's failure to tender payment within thirty days was arbitrary, capricious and without probable cause, specifically violating §22:658(A)(1);

VIII.   Lafayette's failure to tender payment within sixty days was arbitrary, capricious and without probable cause, specifically violating §22:1220(A)(1);

IX.     Pursuant to §22:658 (A)(1), Lafayette is liable to Royal Cloud for a penalty of $247,784.80 for failure to render payment within thirty days of proof of loss, plus all applicable judicial interest;

X.      Pursuant to §22:658 (A)(1), Lafayette is liable to Royal Cloud for the payment of all reasonable attorneys' fees and costs incurred in the present litigation against Lafayette, totaling $111,727.33, plus all applicable judicial interest; and

XI.     The Court further taxes all costs of this proceeding against Lafayette and further awards Royal Cloud judicial interest from the date of judicial demand on all amounts awarded here.

New Orleans, Louisiana, this ____ day of March, 2007.

JUDGE KERN A. REESE
DIVISION "L"

16

# SB620 - 2006 Regular Session (Act 813)

| Author: **MURRAY** | Status: **SIGNED BY THE GOVERNOR** |
|---|---|
| Summary: **INSURANCE CLAIMS:** Increases penalties for insurers who fail to timely pay claims. | **ACT 813** *Updated: 6/30/2006* |

| Date | Chamber | Page | Action |
|---|---|---|---|
| 06/30/2006 | S | | Effective date 8/15/2006. |
| 06/30/2006 | S | | Signed by the Governor. Becomes Act No. 813. |
| 06/16/2006 | S | 109 | Sent to the Governor for Executive approval. |
| 06/16/2006 | H | 92 | Signed by the Speaker of the House. |
| 06/15/2006 | S | 57 | Enrolled and signed by the President of the Senate. |
| 06/14/2006 | S | 30 | Amendments proposed by the House read and concurred in, 38 yeas and 0 nays. Motion to reconsider tabled. |
| 06/13/2006 | S | 33 | Received from the House with amendments. |
| 06/13/2006 | H | 15 | Read third time by title, amended, roll called on final passage, yeas 74, nays 26. Finally passed, ordered to the Senate. |
| 06/05/2006 | H | 8 | Read by title, passed to 3rd reading - regular calendar. |
| 06/01/2006 | H | 22 | Reported without Legislative Bureau amendments. |
| 05/31/2006 | H | 26 | Reported favorably (10-4-1) (Regular). Referred to the Legislative Bureau. |
| 05/10/2006 | H | 3 | Read by title, under the rules, referred to the Committee on Insurance. |
| 05/09/2006 | H | 3 | Received in the House from the Senate, read by title, lies over under the rules |
| 05/08/2006 | S | 23 | Read by title and finally passed as amended 36 yeas and 1 nays. Title read and adopted, bill ordered to the House. Motion to reconsider tabled. |
| 05/04/2006 | S | 14 | Read by title, engrossed and passed to a third reading. |
| 05/03/2006 | S | 12 | Reported favorably. |
| 03/27/2006 | S | 61 | Read by title and referred to the committee on Insurance. |

EXHIBIT

03/17/2006        S          Prefiled and under the rules provisionally referred to the committee on
                             Insurance.

**Back to Previous Page**

 **to view files accessed from this page.**

Acrobat Reader version 4 or higher is needed to view the files on this page.