# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | ) | CIVIL ACTION |
| CONSOLIDATED LITIGATION | ) | |
| | ) | NO. 05-4182 |
| | ) | |
| PERTAINS TO: LEVEES AND MRGO | ) | SECTION "K"(2) |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF MOTION
## TO STRIKE ADMIRALTY CLAIMS
## AGAINST THE UNITED STATES

The Court's Order of June 1, 2007 (Doc. 5435) requested that the United States

file an appropriate motion in respect to the question of whether these actions sound in

admiralty.  The United States therefore has moved to strike, for lack of subject matter

jurisdiction, all admiralty claims set forth in the MR-GO Master Consolidated Class

Action Complaint (Doc. 3415) [hereafter "MR-GO"], and the Superseding Master

Consolidated Class Action Complaint (Doc. 3420) [hereafter "Levee"], to the extent those

claims are directed against the United States of America and/or the United States Army

Corps of Engineers.[1]

This Court has already dismissed certain alleged maritime claims in related

Katrina litigation involving alleged deficiencies of the MR-GO.  On March 9, 2007, this

---

[1] The United States understands the Court's desire to address the issue of admiralty
jurisdiction prior to the expiration of the two-year statute of limitations under the Suits in
Admiralty Act ["SAA"], 46 U.S.C. § 30905 (formerly 46 U.S.C. app. § 745).  This statute of
limitations is incorporated into the other admiralty waiver statute, the Public Vessels Act
["PVA"], pursuant to 46 U.S.C. § 31103 (formerly 46 U.S.C. app. § 782).  To the extent a claim
arises under the SAA or the PVA, it is excluded from the operation of the Federal Tort Claims
Act ["FTCA"], 28 U.S.C. § 2680(d).

Court dismissed all claims against the "dredging defendants" in *Reed* and *Ackerson* on the ground that it was not alleged that they themselves, or their vessels, had performed any negligent act or omission or any intentional act that was beyond the scope of their dredging contracts with the Corps (Doc. 3365).[2]

The allegations against the United States are of a different order.  With respect to the Levee actions, they relate to the design, construction, and/or maintenance of the levee system around New Orleans and to the issuance of permits for construction and maintenance work on various waterways.  *See e.g.,* Levee  ¶ 48 (Corps issued permit for dredging and installation of flood walls and mooring structures in 17th Street Canal); ¶ 76 (Corps responsible for design and construction of London Avenue Canal levee system), ¶ 94 (Corps responsible for creation of "Hurricane Alley" through wetlands); ¶ 105 (Corps responsible for design and construction of Lake Pontchartrain Hurricane Protection Project).  Although it is true that this work involved, *inter alia*, dredging work, the focus of the complaint is on the design and construction of levees, a non-maritime activity.

With respect to the MR-GO actions, the allegations relate to decisions made by the Corps over a 40-year period concerning the design, construction, repair, maintenance,

---

[2] In the same Order, this Court in *Reed* dismissed claims brought against the government under the Admiralty Extension Act, 46 U.S.C. § 30101 (formerly 46 U.S.C. app. § 740) based on lack of subject matter jurisdiction because the plaintiff had failed to file an administrative claim as required by the Act.  On June 13, 2007, this Court dismissed similar claims raised in *Anderson* for the same reason (Doc. 5551).  However, the Court did not reach the issue of admiralty jurisdiction *per se.*

inspection and operation of the waterway, and its alleged failure to appreciate, or take into account, the hydrologic effects of the waterway as designed and maintained-- specifically, the waterway's effect on storm surges.  MR-GO ¶¶ 23-25.  To the extent that the maintenance of the waterway involved dredging, the allegations appear to involve a failure to dredge adequately so as to maintain the design depth and thereby diminish or minimize this hydrologic effect.  *See* MR-GO ¶ 24; *see also* Levee ¶ 101 (Corps failed to dredge often enough to maintain design depth of MR-GO).  It is also alleged that the Corps, in various particulars, failed to follow regulations requiring it to consult, do studies, etc., and that it or its contractors improperly disposed of dredge spoil over many years by depositing it as spoil banks.  MR-GO ¶¶ 26-31; Levee ¶¶ 243-9.

Importantly for this motion, there is no allegation in either the Levee or the MR-GO complaint of a specific maritime incident or incidents, and no allegation naming a specific or identifiable vessel or vessels.  There is no allegation that any dredge was improperly navigated, moored, positioned, or operated such as to implicate the concerns of maritime law.  Rather, the gravamen of the complaints against the government relates to challenging policies regarding waterway construction and maintenance in the broadest sense--over a period of decades--which only incidentally involved dredging--rather than focusing on a particular vessel involved in a particular maritime incident.

3

As the government has previously argued, because all of the losses alleged by plaintiffs occurred on land,[3] admiralty jurisdiction is conferred, if at all, by the AEA, 46 U.S.C. § 30101.[4]  That statute provides:

> **(a) In general.**--The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.

> **(b) Procedure.**--A civil action in a case under subsection (a) may be brought in rem or in personam according to the principles of law and the rules of practice applicable in cases where the injury or damage has been done and consummated on navigable waters.

> **(c) Actions against the United States.**--

> **(1) Exclusive remedy.**--In a civil action against the United States for injury or damage done or consummated on land by a vessel on navigable waters, chapter 309 or 311 of this title, as appropriate, provides the exclusive remedy.

> **(2) Administrative claim.**--A civil action described in paragraph (1) may not be brought until the expiration of the 6-month period after the claim has been presented in writing to the agency owning or operating the vessel causing the injury or damage.

---

[3] As this Court noted in dismissing claims against the dredging defendants (Dkt. 3365 at 8), "wetlands" are not navigable waters for the purpose of invoking admiralty jurisdiction.  In addition, it is the United States' position, as stated by certain defendants (Dkt. 5380, 5381), that the 17th Street Canal is non-navigable for admiralty jurisdiction purposes.  However, *even if* some of the relevant waterways are deemed "navigable", the damage occurred on land, and therefore admiralty jurisdiction arises, if at all, under the AEA.

[4] Effective October 6, 2006, the AEA was recodified to this new section.  Previously, it was found at 46 U.S.C. app. § 740.  The new statute has minor variations in wording from the previous statute, but is substantively the same.

4

The AEA's language makes it applicable to damage "caused by *a vessel*" (Section 30101(a), emphasis added.)  By extending admiralty jurisdiction only to actions involving "a vessel" as the causative force of land damages, it is submitted the AEA provides jurisdiction only where there is an *identifiable* vessel or vessels, and the only damage for which recovery can be made is damage which is appropriately attributed to a *maritime incident* involving *that* vessel or vessels.  *See. e.g., Egorov v. Terriberry et al.,* 185 F.3d 453, 456 (5th Cir. 1999)["By the Act's express terms, . . . the injury must be caused 'by a vessel'."]

This construction is supported by the venue requirement of the Public Vessels Act, 46 U.S.C. § 31101-13 [PVA],[5] which is one of the statutes incorporated into the AEA at Section 30101(c)(1).  Section 31104 (formerly 46 U.S.C. app. § 782) of the PVA requires that a civil action for damages caused by a public vessel be brought "in the district court of the United States for the district in which the vessel or cargo *is found* within the United States [emphasis added]."  This provision is the counterpart of private *in rem* liability in which jurisdiction attaches through the medium of admiralty arrest.  For a vessel to be "found", it must be identifiable, just as a private vessel against which is filed an *in rem* action must be identifiable in order to be arrested and brought before the Court.[6]  *See*

---

[5] Formerly found at 46 U.S.C. app. §§ 781-90.  Plaintiffs have not alleged proper venue under either the PVA or the SAA.

[6] The Suits in Admiralty Act, 46 U.S.C. §§ 30901-30918 ["SAA"], is the other statute incorporated into the AEA at Section 30101(c)(1).  It provides, alternatively, for venue either in the district where "any plaintiff resides or has its principal place of business" *or* where "the vessel

(continued...)

Supplemental Rule C(2)(b) [*in rem* complaint must "describe with reasonable particularity the property that is the subject of the action"].

Further, the AEA requires a presentation in writing, at least six months prior to suit, "to the federal agency owning or operating *the vessel* causing the injury or damage". The language would appear to require, at least with respect to the United States, that the government, through one of its agencies, "own[s] or operat[es]" the vessel doing the damage.

This construction of the AEA is additionally supported by admiralty jurisprudence in general, which has emphasized the need for a uniform body of law to protect and oversee maritime commerce.[7]  *See, In Re Ingram Barge Co.,* 435 F.Supp.2d 524, 528-32 (E.D.La. 2006) ["*Ingram Barge I*"].  The Supreme Court has established a two-part test for admiralty tort jurisdiction.  *Grubart v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995).  "[A] party seeking to invoke federal admiralty jurisdiction. . . over a

---

[6](...continued)
or cargo is found." 46 U.S.C. § 30906.  Although the SAA literally extends to the whole reach of admiralty jurisdiction, *McCormick v. United States*, 680 F.2d 345 (5th Cir. 1982), it does not displace the PVA, whose more restrictive terms apply to actions involving public vessels.  *See, United States v. United Continental Tuna,* 425 U.S. 164 (1976).  This would include the venue provision, *Justice v. United States,* 6 F.3d 1474, 1476, n. 5 (11th Cir. 1993).  "A public vessel is a vessel owned or operated by the United States unless it is engaged in transporting cargo for hire for private shippers."  Schoenbaum, *Admiralty and Maritime Law* § 20-1 at 372-3 (4th ed. 2004).

[7] Neither the SAA nor the PVA creates a new cause of action.  They only waive sovereign immunity for "traditional admiralty claims".  *See, Trautman v. Buck Steber, Inc.,* 693 F.2d 440, 443-4 (5th Cir. 1982); *Williams v. Central Gulf Lines,* 874 F.2d 1058, 1059 (5th Cir. 1989).

6

tort claim must satisfy conditions both of location and of connection with maritime activity." *Id.*

The primary concern of the "location" test is "whether the tort occurred on navigable waters or [pursuant to the AEA] whether injury suffered on land was caused by a vessel on navigable water." *Id.* If the damage occurred on land, "[t]he vessel or its defective appurtenances must be the proximate cause of the accident." *Margin v. Sea-Land Services, Inc.,* 812 F.2d 973, 976 (5th Cir. 1987); see *Grubart*, 513 U.S. 527, 536-7.

Although the exact definition of the "connection" or "nexus" test for admiralty jurisdiction has shifted over the years, the definition most recently set forth in *Grubart, supra,* which dealt specifically with the AEA, follows closely that of *Sisson v. Ruby,* 497 U.S. 358 (1990). This test itself consists of a two-part inquiry. The first asks "whether the *incident* involved was of a sort with the potential to disrupt maritime commerce," *Grubart* (emphasis added) at 538, while the second asks "whether the general character of the activity giving rise to the *incident* shows a substantial relationship to traditional maritime activity. We ask whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity *traditionally subject to admiralty law* that the reasons for applying special admiralty rules would apply in the suit at hand." *Grubart* (emphasis added) at 539-40.

Admiralty expertise traditionally focuses on the navigation and operation of vessels on navigable waters, not policy decisions like the design and long-term

maintenance of a waterway and flood works resulting in land-based injury.  As stated in

*Executive Jet Aviation Inc. v. City of Cleveland,* 409 U.S. 249, 269-70 (1972):

> The law of admiralty has evolved over many centuries, designed and
> molded to handle problems of vessels relegated to ply the waterways of the
> world, beyond whose shores they cannot go.  That law deals with
> navigational rules--rules that govern the manner and direction those vessels
> may rightly move upon the waters.  When a collision occurs or a ship
> founders at sea, the law of admiralty looks to those rules to determine fault,
> liability, and all other questions that may arise from such a catastrophe.
> Through long experience, the law of the sea knows how to determine
> whether a particular ship is seaworthy, and it knows the nature of
> maintenance and cure.  It is concerned with maritime liens, the general
> average, captures and prizes, limitation of liability, cargo damage, and
> claims for salvage.

*See also,* Schoenbaum, *Admiralty and Maritime Law* § 3-5 (4th Ed. 2004).

This concept was elucidated in *National Union Fire Ins. Co. of Pa. v. United States,* 436 F.Supp. 1078 (M.D.Tenn. 1977), where the court held that admiralty law was not implicated in a case alleging the Corps of Engineers' alleged failure to control dams on the Cumberland River, a navigable waterway, resulting in flooding.  The court noted that "while control of the water level does generally involve considerations affecting navigation and commerce upon the water, the only actual impact of concern in this instance is the flooding of a shore-based warehouse.  Viewed in this way, it becomes more difficult to perceive an actual maritime incident for which the unique principles and procedures of admiralty are pertinent. . . ."  *Id.* at 1083.

As noted, this Court has already dismissed the dredging defendants, as the complaints involved therein did not allege any negligence on their parts, or on the parts of

their vessels, individually.  Similarly the Levee and MR-GO complaints do not allege any negligence on the part of any government vessel *qua* vessel, or pertaining to a specific maritime incident.  Rather they allege, at best, a cumulative effect of dredging activity which the Corps either allowed (through permits) or contracted for--or (in the case of the MR-GO) the *failure* to dredge--which created a hydrologic *condition* of the waterway which, it is alleged, intensified the effects of the storm surge.  This does not invoke the kind of expertise with which admiralty courts typically deal.  To the contrary, the gravamen of the allegations are that the land-based decisions of the Corps which involved permitting or contracting for dredging activity were improper.  Indeed, there appears to be no claim that the vessels that implemented these decisions did so improperly, as this Court has previously held.

*In re Ingram Barge,* 2007 WL 837181, C.A. 05-4419 (E.D.La. 2007) ["Ingram Barge II"] addressed a third-party complaint filed against the United States in related Katrina litigation.  The *Ingram* Court described the claim as "negligent dredging by vessels operated by the U.S. Army Corps of Engineers ("USCOE") and its contractors, which destroyed protective wetlands and cypress swamps in Southeast Louisiana, thereby exacerbating the effects of Hurricane Katrina."  *Id.* at *1.  The claim involved several named vessels alleged to be owned or operated by the United States, as well as private

vessels under contract.[8]   The *Ingram* Court held that this was enough to invoke AEA jurisdiction as to the United States  *Id.* at *6.

However, the claim also involved a separate vessel, not government-owned or operated (the Ingram Barge) which broke free during the storm and breached a flood wall (Doc. 1, C.A. No. 05-4419, *see*, *Ingram Barge I*, 435 F.Supp.2d 524), a discrete maritime incident for which the United States was also alleged to be responsible (Doc. 12, C.A. No. 05-4419).  The "maritime flavor" of the entire case therefore was much more distinct than the instant claims.  Indeed, the lawsuit itself was instigated by the owner of the Ingram Barge through a petition for exoneration from or limitation of liability, a distinctly maritime proceeding under 46 U.S.C. § 181 *et seq.* and Supplemental Rule F (Doc. 1, C.A. No. 05-4419).  *See, Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA,* 761 F.2d 229 (5th Cir. 1985) [admiralty law applies to third-party claim if admiralty law governs the primary cause of action].

Because the general nature of the claims against the United States in the instant actions do not implicate maritime concerns on their face, and are not tied to maritime claims asserted by other parties in the same litigation, these actions do not arise in admiralty.  Here there are simply no claims of specific vessel negligence by vessels owned or operated by the United States.

---

[8] See Doc. 202 (C.A. No. 05-4419).

## **Conclusion**

_____For the above reasons, the claims set forth in the MR-GO Consolidated Class Action Complaint (Doc. 3415) and the Superseding Master Consolidated Class Action omplaint (Doc. 3420) do not arise under admiralty jurisdiction, and any claims which are so designated should be stricken.

Dated:          June 22, 2007

<div style="margin-left: 45%;">

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

PHYLLIS J. PYLES
Director

JAMES TOUHEY
Assistant Director

/s/ Robin D. Smith
ROBIN D. SMITH
Trial Attorney
DAMON C. MILLER
Senior Admiralty Counsel
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, DC 20044
Tel: (202) 616-4047
Fax: (202) 616-4159
E-mail: damon.miller@usdoj.gov

Attorneys for the United States

</div>

11

## **CERTIFICATE OF SERVICE**

_____I, Robin D. Smith, hereby certify that on June 22, 2007, I served a true copy of the

foregoing upon all parties by ECF.

_____/s/ Robin D. Smith_____
ROBIN D. SMITH