## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES                 CIVIL ACTION
CONSOLIDATED LITIGATION

NO. 05-4182 "K" (2)

PERTAINS TO:                                  JUDGE DUVAL
ALL INSURANCE CASES                           MAG. WILKINSON

───────────────────────────────────────────────────────────────

**PLAINTIFFS' MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF MOTION TO COMPEL REGARDING CERTAIN OF DEFENDANTS' GROUP OBJECTIONS TO PLAINTIFFS' COMMON DISCOVERY TO ALL INSURER DEFENDANTS**

───────────────────────────────────────────────────────────────

PURSUANT TO the parties' proposed revised joint protocol and Fed. R. Civ. P. 37(a)(2), Plaintiffs move this Court for an order overruling four of Defendants' objections going to the scope of common insurance discovery and the scope of the stay pending appeal.

### I. Background

Pursuant to CMO 4 and the joint protocol, Plaintiffs propounded a single set of common insurance interrogatories and requests for production. (**Ex. A**, The Insurance PSLC's Am. Common Disc. to All Insurer Defs.)  Plaintiffs also served a common 30(b)(6) notice. (**Ex. B**, Not. of Videotaped Fed. Rule 30(b)(6) Dep.)

By the parties' agreement, the Defendants responded to each set of discovery in two

ways.  First, the insurers collectively served through liaison counsel a unified set of group objections.  Second, each insurer served (or will in the coming weeks serve) supplemental insurer-specific objections together with its substantive responses.[1]  Defendants interposed 33 general objections to Plaintiffs' interrogatories, 42 general objections to the requests for production, and 46 general objections to the 30(b)(6) notice.  Some objections were stated in response to every request; some went to a limited number; and some went only to a specific request.  Thus, for example, Plaintiffs' 18 interrogatories resulted in a total of 226 objections stated in a 49-page document.  Altogether, the Defendants' group objections to common discovery span 294 pages.  For ease of reference, the verbatim objections are charted in Exhibits C-E to this motion. (**Ex. C-E**, Common Ins. Disc. Charts.)

Given the overwhelming task of conferring with respect to the general objections and as many as 32 additional individual sets of objections, the parties agreed to establish a dual track for addressing objections and responses.  Track 1 encompasses 12 group objections (those that were each directed to numerous requests).  Track 2 encompasses all other group objections and each insurer's individiual objections/responses.

On June 15 Plaintiffs delivered a Rule 37 letter addressing the Track 1 group objections. The parties conferred on June 20 and resolved seven of the 12 objections, deferred one for Track 2 treatment, and agreed that four "big picture" objections must be addressed by this Court.  This motion concerns those four objections.[2]

---

[1] By the parties' agreed interpretation of this Court's protocol, an insurer joined in only one consolidated action need not participate in common discovery. Plaintiffs' currently have identified 32 insurers who must participate in common discovery.

[2] Although only four objections are addressed, each is lodged against nearly all of Plaintiffs' 102 interrogatories, requests for production, and 30(b)(6) designations, and is adopted by as many as 32

2

## II.   The Objections at Issue – "Scope of Common Discovery" Objections

The group objections at issue here go to two issues—(1) what discovery is truly

"common," and (2) the extent to which the stay pending appeal precludes common discovery.

These two issues may be addressed and resolved on a fairly abstract level because the parties'

respective positions are well-defined.  However, liaison counsel was not authorized by the

various insurers to resolve these objections as applied to specific requests, so once the issues

are resolved on a general level, the Court and parties must apply that understanding to the

specific requests at issue.  Thus, each is outlined below.

### A.   The "Scope of Common Discovery" Objections – Generally

The first two objections at issue pertain to the scope of common discovery.[3]

Objection A/A.   Defendants object **"to the extent [a request] exceeds the permissible scope of common discovery as addressed in [CMO] No. 4, insofar as the Request relates to issues that are not individual issues common to all insureds of a particular insurance company, the quantification of individual damage claims, individual adjusting and other individual coverage issues or to any issues other than general and common claims adjustment."**

Objection M/P.   Defendants object **"[t]o the extent [a request] seeks information [/documents] concerning individual policyholders other than the individual policyholders whose claims are at issue in this litigation.  Such a request is overbroad, unduly burdensome, improperly invasive of the privacy of CARRIER insureds and may be subject to or protected by applicable privacy statutes and regulations.  With the exception of the individually named**

---

individual defense responses.

[3] The objections are identified by letter corresponding to the designation given the objection in the charts attached as Exhibits C (interrogatories) and D (requests for production).  Thus, for example, objection M/P is objection "M" on Exhibit C and objection "P" on Exhibit (requests for production).  The designation given on Exhibit E (30(b)(6)) is ignored because that chart was not referred to during Rule 37 discussions.  The parties do agree, however, that resolution of general objections with respect the interrogatories and requests for production resolve the identical general objections where stated in response to 30(b)(6) designations.  The parties continue to negotiate in good faith attempts to resolve the 30(b)(6) objections not addressed here.

**plaintiffs, CARRIERS will not produce documents related to any individual CARRIER policyholder."**

The joint protocol defines common insurance discovery as "discovery relating to individual issues that is common to all insureds of a particular insurance company," (Doc. 3687 at 1.)  The crux of the parties' disagreement is this:  Plaintiffs consider a given request as appropriately "common" if (1) without undue burden, a response would create a central repository of information potentially relevant to all current or future litigants against a given company, or (2) if it is premised upon the existence of uniform policies, practices, methodologies, etc. (for, similarly situated insureds presumably were treated similarly; and if they were not, they are entitled to discover that fact).  Defendants agree with the latter, but disagree with the former.  Thus, the only question for the court is the appropriateness of "repository" requests.

Plaintiffs contend that common discovery is not common if responses are limited to only that information that would be forthcoming in the individual suits, which is what Defendants seek when it comes to what may be called "repository" type requests.  As one example, Interrogatory 6 asks that each Defendant:

> identify every third-party adjusting agency, engineering firm, or other similar entity utilized by you in Louisiana in response to Hurricane Katrina, including in your description the terms of your relationship with each such entity.

If this Court accepts the insurers' position and there were, say, three consolidated cases pending against XYZ Insurance Company, then XYZ would be obliged to name only the third-party adjusting agency, engineering firm, or similar entitity it utilized in those three claims.  That is of no "common" benefit to the litigation or, particularly, to the insureds who bring consolidated claims against XYZ in the future.  Not only is the identity of all third-

party adjusting agencies and engineering firms calculated to lead to the discovery of admissible evidence in the claim of any given XYZ insured, but adpoting this approach means that any one subject area is covered only one time for all current and future cases. This comports with the Court's adoption of the joint protocol stating that "Purported Common Insurance Discovery shall not be duplicated in any individual insurance case." (Doc. 3687 at 3, ¶ III.b.)  The entire point of common discovery is to streamline the process, avoiding redundant, piecemeal requests and the squabbles they inevitably engender.  Truly "common" discovery embraces "repository" type requests because "big picture" issues are resolved by a single request, a single response, and a single Court ruling, rather than being piecemealed in two or 20 or 200 individual cases.

Ultimately, the requests are "common" in the most common sense of the term—they seek information and documents that are of a common interest to all insureds of a given company,  and they are not claim-specific.  That is to say, Plaintiffs do not seek claim-specific documents relating to claims not consolidated before this Court, nor do they contend that Defendants must conduct a file-by-file review in order to satisfy the requests.  These requests are "common" in every sense of the word, and they are an appropriate means of conducting discovery.

B.   The "Scope of Common Discovery" Objections – Specific Requests

Because defense liaison counsel was not authorized by the insurers to resolve objections as applied to specific requests, those issues remain for Court resolution.  The questions to ask for each request are (1) whether it is a "uniform policy" type request, which Defendants concede is "common," (2) whether it is a "repository" type request (and hence appropriate or

inappropriate depending upon the Court's approach to that issue), and/or (3) whether it is neither, but common nevertheless.  In the interests of preserving space, and because these objections do not require parsing the requests, Plaintiffs have paraphrased each and briefly described their position.  The full text of each request is set out in Exhibit A.[4]

*Interrogatory 1.* [Resolved.  This is the sole request Defendants resolved at the Rule 37 conference, conceding that it is common.  It, like a few other resolved individual requests, is mentioned here because it is reflected on the attached charts.]

*Interrogatory 2.*  This interrogatory seeks a generic description of the responding carrier's claims process.  This is an appropriate "uniform policy" type request.

*Interrogatory 3.*  This interrogatory seeks a description of each document routinely generated in connection with a Katrina-related Louisiana property damage claim.  It too is an appropriate "uniform policy" type request.

*Interrogatory 4.*  This interrogatory seeks the identity of every agent and employee who worked on the responding carrier's behalf in the relevant geographical area.  This is a "repository" type request seeking information that is true for and of common interest to all insureds of a given company.  Incidentally, Defendants do not object on "commonality" grounds to the corresponding request for production seeking the agreements with the third-party adjusting and engineering entities.

*Interrogatory 5.*  This interrogatory seeks a description of the guidelines and policies governing assignment of adjusters and transfer of files.  This is a "uniform policy" type

---

[4] The Defendants agreed to attempt to resolve as many request-specific objections as possible between the filing of this motion and the July 11 hearing on it.

request and is common.

*Interrogatory 6.*  This interrogatory seeks the identity of all third-party adjusting, engineering, and similar firms who worked for a carrier on Louisiana Katrina claims.  This is "repository" type request seeking information that is of common interest to all insureds of a given company.

*Interrogatory 7.*  This interrogatory seeks the identity of all claims manuals, bulletins, etc., that governed a carrier's adjustment of claims.  This is both a "uniform policy" and a "repository" type request.  Defendants do not object on "commonality" grounds to RFPs 5-7, which seek actual production of the documents sought to be identified by this interrogatory.

*Interrogatory 8.*  This interrogatory seeks a description of a carrier's method of estimating and calculating Louisiana Katrina claims, including relevant software information. This is a "uniform policy" and "repository" type request that seeks common information.

*Interrogatory 9.*  This interrogatory seeks more detailed information concerning the estimating software used by the responding carrier.  This is appropriate for the same reasons as the preceding interrogatory.

*Interrogatory 10.*  This interrogatory seeks a description of the training provided adjusters.  This is a "uniform policy" type request inasmuch as the training (or not) of a given adjuster is relevant here, as is its comparison with the training of others if there were inconsistent practices between adjusters.

*Interrogatory 11.*  This interrogatory seeks a description of the insurer's efforts to establish and maintain a current and accurate cost database.  This is a "uniform policy" and "repository" type request.

*Interrogatory 12.*  This interrogatory seeks a description of the methodology employed by the responding carrier's adjusters in differentiating water from wind, and covered water from non-covered water.  This is a "uniform policy" type request that seeks information common to all insureds of a given carrier.

*Interrogatory 13.*  This interrogatory seeks the identity of every coverage form the carrier utilized in Louisiana as of Katrina's landfall.  This is a "repository" type request.

*Interrogatory 14.*  This interrogatory seeks to have the carrier identify where in its coverage forms it set forth the method for loss computation in the event it did not value the property in accordance with the VPL statute.  This is a "uniform policy" type request. Though this admittedly would be relevant only in VPL claims, those are significant enough in number and this is a significant enough issue in all such claims, to qualify as of common interest.  It also reinforces the relevance of and need for the information sought in the preceding interrogatory.

*Interrogatory 15.*  This interrogatory seeks to have the carrier describe what amounts to an "application" for insurance—a determination also crucial to all VPL cases with respect to whether the insurer complied with the dictates of La. R.S. § 22:695 (requiring that the policy and application set forth the actual method of computation of property valuation).  This goes hand in hand with Interrogatories 13-14, and is of common interest for the same reasons. Notably, Defendants did not lodge a "commonality" objection to companion RFP 28, which seeks a sample/exemplar of each application form in effect when Katrina made landfall, whilst this interrogatory makes clear that production of same would satisfy the interrogatory.

*Interrogatory 16.*  [Resolved.  Plaintiffs concede this request is stayed pending appeal.]

*Interrogatory 18.*  This interrogatory seeks to learn of every instance during the past five years that the responding insurer was subject to any business-related criminal investigation. This is neither a "repository" nor a "uniform policy" request.  Rather, it is of direct relevance to every person with a claim against a given insurer.

*RFP 1.*  This request seeks all organizational charts reflecting the information set forth in response to Interrogatory 1.  This is neither a "repository" nor a "uniform policy" request, but it is of obvious relevance in any claim against the insurer and is the type of request that should be answered once for all cases.

*RFP 2.*  This request seeks all charts reflecting the information set forth in response to Interrogatory 2.  The request should have been for "any" chart, rather than all.  With that modification, it is a "uniform policy" type request.

*RFP 3.*  This request seeks a sample document/exemplar of the documents described in response to Interrogatory 3.  It is a "uniform policy" type request.

*RFP 8.*  This is the first of several "pricing-related" RFPs (including 8-16).  All are both "uniform policy" and "repository" type requests.  All are relevant because the valuation of a given loss ultimately is a central issue in any property case.  Like our other requests, this one assumes that each insurer engaged in consistent practices from claim to claim and treated similarly situated insureds in a similar manner.  This RFP seeks all price lists, pricing guidelines, etc., to be used by field personnel.  Unless the insurers used different price lists and guidelines from claim to claim, this information would be relevant to every insured of a particular carrier, i.e., it is of common interest (much like the pricing-related Interrogatories 8-10 and 11.)

*RFP 9.*  This request seeks all price lists, pricing guidelines, etc., to be used by in-house personnel and is common for precisely the same reason as the preceding RFP.

*RFP 10.*  This request seeks depreciation tables and similar documents used in adjusting claims.  It is a common pricing document for the same reason as the two preceding RFPs.

*RFP 11.*  This request seeks the user's manual for each loss-estimating software identified in the carrier's response to Interrogatory 9.  In order to understand the pricing software used by a particular insurer (which is a prerequisite to understanding pricing methodology and, hence, loss adjustment), plaintiffs require this document.  It is at root a pricing document of common interest to insureds.  Notably, Defendants did not object on "commonality" grounds to RFP 13, which seeks documents governing or facilitating the use of loss-estimating software.

*RFP 12.*  This request seeks all agreements between the insurer and any manufacturer or licensor of the loss-estimating that insurer employs (another pricing request).  It is a "uniform policy" and a "repository" type request.  If, for example, XYZ Insurance Company has an agreement with Exactimate or some other software manufacturer to use a pricing list or database employing different unit prices than those furnished for other users of the software, then XYZ's insureds certainly would be entitled to know; and that question would be common to all of them.

*RFP 14.*  This request seeks all documents reflecting loss-estimating methods identified in response to Interrogatory 9, other than software-related documents.  It is the logical counterpart to Interrogatory 9, to the software-related RFPs, and is common for the same reasons all pricing-related requests are so.  It is a "uniform policy" type request.

*RFP 15.*  This request seeks all documents corroborating or reflecting efforts to maintain

the current and accurate cost database described in response to Interrogatory 10.[5]  This is yet another pricing related request; it goes to documentation that the carriers ensured a current and accurate unit pricing database for the loss-estimating software.  It is of common interest for the same reasons all pricing-related requests are so.  It is a "uniform policy" type request.

*RFP 16.*  This request seeks all documents reflecting or corroborating the insurer's efforts to maintain a current and accurate cost database outside of the software context.[6]  This is another pricing-related, "uniform policy" type request; it goes to documentation that the carriers ensured a current and accurate unit pricing database outside of the loss-estimating software context, and is common for the same reasons all pricing-related requests are so.

*RFP 17.*  This request seeks all documents reflecting the methodology for differentiating water from wind damage (a subject area suggested by the court in CMO 4).  It is the companion RFP to Interrogatory 12(i), and it is a relevant "uniform policy" type common request for the same reason as the Interrogatory.

*RFP 18.*  This request seeks all documents reflecting methodology for differentiating covered water damage from non-covered water damage (a subject area suggested by the court in CMO 4).  It is the  companion RFP to Interrogatory 12(ii), and it is a relevant and a

---

[5]  The request identifies "Interrogatory 10," but Interrogatory 10 was renumbered to become Interrogatory 9(ii) when Plaintiffs amended the interrogatories, while the original RFP was not amended to match that change.  It should make no difference because the individual RFP responses were served before the interrogatories were amended, but Plaintiffs wished to note this for the record and for Defendants' benefit in responding.

[6] Another casualty of amending, this request refers to Interrogatory 12, but that Interrogatory became Interrogatory 11 when Plaintiffs amended, yet the RFP was not amended to match.  Plaintiffs note this for the record and for Defendants' benefit.

"uniform policy" type common request for the same reason as the Interrogatory.

*RFP 19.*  This request seeks all documents reflecting any customs, policies, etc., with respect to using a water line to determine damages.  This also goes to differentiation of wind vs. water (a subject area suggested by the court in CMO 4).  It is a more general companion RFP to Interrogatory 12, and it is a relevant "uniform policy" type common request for the same reason as the Interrogatory.

*RFP 20.*  This "uniform policy" type request seeks all documents reflecting customs, policies, etc., relating to the adjustment of total loss claims.  This is relevant and common for the reasons expressed above in relation to Interrogatory 14 (regarding the VPL).

*RFP 21.*  This "uniform policy" type request seeks all documents reflecting customs, policies, etc., relating to the adjustment of total loss claims involved both wind and water (on the assumption that might differ from total loss by wind or water alone).  This too is relevant and common for the reasons expressed above in relation to Interrogatory 14.

*RFP 22.*  This is a "repository" type request—the companion request to Interrogatory 13(i); it seeks each coverage form identified in response to that interrogatory.[7]

*RFP 23.*  This is the companion request to Interrogatory 13(ii) (originally 14(ii)).  It is relevant and of common interest for the same reasons as the preceding request.

*RFPs 24-27.*  [Resolved.  Plaintiffs concede these RFPs are stayed pending appeal.]

*RFP 30.*  This seeks every document the insurer contends accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the relative timing of the arrival of

---

[7] The numbers are again mismatched here due to the amendment—the RFP refers to Interrogatory 14(i) but 14(i) became Interrogatory 13(i) when amended.

tropical storm and/or hurricane winds in relation to flood or inundation (a defined term) in the Greater New Orleans area.  This is neither a "uniform policy" nor a "repository" type request.  Rather, it is a request of direct relevance in every individual claim—each insured in the consolidated cases has an interest in his or her insurer's contentions regarding where the wind and water came from, where the wind and water went, and when.  It is relevant to distinguishing wind from water and in distinguishing covered water from non-covered water.

*RFP 31.*  This is a counterpart to RFP 30, seeking every document the insurer contends inaccurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the information identified in RFP 30.  It is common for the same reasons.

*RFP 32.*  This seeks every document the insurer contends accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the depth of flooding or inundation (a defined term) in the Greater New Orleans area due to any discrete cause, such as rainfall or levee breach or overtopping.  This too is a request for documents of common interest as explained at RFP 30 above.

*RFP 33.*  Similar to RFP 31, this is a counterpart to RFP 32 that seeks every document the insurer contends inaccurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the information identified in RFP 32.  It is common for the same reasons.

*RFP 34.*  In the same pattern, this RFP seeks every document the insurer contends accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the duration and/or amount of rainfall that occurred in the Greater New Orleans area, or any part of it, during the policy occurrence period for Katrina.  Like the preceding requests, this is a matter of paramount relevance and common interest.

*RFP 35.*  Similar to RFPs 31 and 33, this is a counterpart to RFP 34 that seeks every document the insurer contends in<u>ac</u>curately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the information identified in RFP 34.  It is common for the same reason.

*RFP 37.*  [Resolved.  Plaintiffs concede this request is stayed pending appeal.]

*RFP 38.*  This RFP seeks every document reflecting plans, communications, etc., by the insurer whereby it attempted to decrease its losses by minimizing catastrophic property damage claims and claims payments from 2002 to date.  This is neither a "uniform policy" nor a "repository" type request; but if responsive documents exist, and regardless of their relevance or admissibility (a later argument for another day), they would be common.

*RFP 39.*  This final RFP seeks all documents the insurer produced to any governmental agency investigating its conduct relating to Hurricane Katrina (including production to the Mississippi AG or Department of Insurance).  This is neither a "uniform policy" nor a "repository" type request; but in purely common interest terms, these documents are appropriate for discovery as they would be of equal interest to any insured of a given insurer whose conduct was investigated by the State of Mississippi, or at the very least the insurer would have to meet its burden of proving that such documents reflected in no way upon its conduct or that of its agents in Louisiana (and could not reasonably lead to admissible evidence of same).

### III.  **The Objections at Issue – "Scope of the Stay" Objections**

The second set of group objections at issue concerns the extent to which the stay pending

appeal precludes common discovery.  This too may be addressed and resolved on a fairly

abstract level, but the Court and parties must apply that understanding to the specific requests

at issue, so each is outlined below.

A.   The "Scope of the Stay" Objections – Generally

The first two objections at issue pertain to the scope of common discovery.  They are as

follows.[8]

> Objection I/L.  Defendants object **"[t]o the extent [a request] violates the Order of
> the Court on March 16, 2007, that '[w]ith respect to all Insurance Cases, all
> discovery and application of deadlines established in the CMO No. 4 are
> STAYED with respect to all common liability issues—that is causation of the
> levee breaches—and class certification issues.'"**

> Objection J/M.  Defendants object **"[t]o the extent [a request] violates the Joint
> Liaison Counsel Submissions Re: Purported Common Insurance Discovery
> Protocol, entered by the Court on April 18, 2007, which says, 'It is understood
> that the Purported Common Insurance Discovery shall not include discovery
> regarding issues that fall within the scope of the stay orders such as discovery
> related to the water damage exclusion.'"**

Of course the parties agree, and the Court has made clear, that there shall be no

discovery on issues that fall within the scope of the stay.  But the parties disagree over its

scope.

This Court's original stay order (Doc. 3426, quoted in Objection I/L) forbids "common

---

[8] The objections are identified by letter corresponding to the designation given the objection in
the charts attached as Exhibits C (interrogatories) and D (requests for production).  Thus, for example,
objection M/P is objection "M" on Exhibit C and objection "P" on Exhibit (requests for production).  The
designation given on Exhibit E (30(b)(6)) is ignored because that chart was not referred to during Rule 37
discussions.  The parties do agree, however, that resolution of general objections with respect the
interrogatories and requests for production resolve the identical general objections where stated in
response to 30(b)(6) designations.

liability" discovery and makes clear that the term "common liability" is synonymous with "causation of the levee breaches."  The parties joint protocol (Doc. 3687, adopted by the Court (Doc. 3782)) expands on the first by forbidding "discovery related to the water damage exclusion."  To be specific, the issue before the Fifth Circuit is interpretation of the water damage exclusion—whether it is ambiguous—not every matter touching in any way upon the issue of wind vs. water, such as how field adjusters distinguish wind damage from water damage.[9]

   Under the two relevant orders, common insurance discovery remains appropriate so long as it does not constitute so-called common liability discovery, which includes "causation of the levee breaches," (stay order) "class certification issues," (stay order) or "discovery related to the water damage exclusion" (joint protocol).

   Plaintiffs therefore take the position that the stay applies to these categories of information:

   1.   the actual cases on appeal;
   2.   "common liability" discovery (that is, according to the court, "discovery regarding causation of the levee breaches");
   3.   class certification issues; and
   4.   discovery "related to the water damage exclusion."

There is no question about the first category.  Nor can Plaintiffs' discovery properly be characterized as Rule 23 class certification discovery.  The core questions are whether any discovery request  goes to "causation of the levee breaches" or is "related to the water

_____

[9] This important distinction is in keeping with the governing law that a "district court maintains jurisdiction as to matters not involved in the appeal . . . ." *Farmhand, Inc. v. Anel Eng'g Indus.*, 693 F.2d 1140, 1145 (5th Cir. 1982). Even if the Fifth Circuit overrules this Court's *Chehardy* ruling and holds that the water damage exclusion is not ambiguous, issues of causation—that is, wind vs. water and covered water vs. non-covered water—will remain an issue in nearly every case.  It would needlessly delay these cases to hamper discovery into how the insurers make such decisions in the real world.

damage exclusion."

B.   The "Scope of the Stay" Objections – Specific Requests

Defendants interposed both stay objections in response to Interrogatories 2-3, 5-16, & 18 and to RFPs 3, 5-10, 14, & 17-39.  Even the briefest description reveals that the vast majority in no way implicate levee breach causation or the water damage exclusion.  Those that might arguably do so are addressed in more detail.  Otherwise, a brief description of the request is evidence enough that it is not implicated by the stay.

*Interrogatory 2.*  This interrogatory seeks a generic description of the responding carrier's claims process.

*Interrogatory 3.*  This interrogatory seeks a description of each document routinely generated in connection with a Katrina-related Louisiana property damage claim.

*Interrogatory 5.*  This interrogatory seeks a description of the guidelines and policies governing assignment of adjusters and transfer of files.

*Interrogatory 6.*  This interrogatory seeks the identity of all third-party adjusting, engineering, and similar firms who worked for a carrier on Louisiana Katrina claims.

*Interrogatory 7.*  This interrogatory seeks the identity of all claims manuals, bulletins, etc., that governed a carrier's adjustment of claims.

*Interrogatory 8.*  This interrogatory seeks a description of a carrier's method of estimating and calculating property damage amounts in Louisiana Katrina claims, including relevant software information.

*Interrogatory 9.*  This interrogatory seeks more detailed information concerning the

estimating software used by the responding carrier.

*Interrogatory 10.*  This interrogatory seeks a description of the training provided adjusters.

*Interrogatory 11.*  This interrogatory seeks a description of the insurer's efforts to establish and maintain a current and accurate cost database.

*Interrogatory 12.*  This interrogatory seeks a description of the methodology employed by adjusters in differentiating water from wind, and covered water from non-covered water. As discussed above, the stay does not affect this Court's jurisdiction over every matter with some attenuated connection to the water damage exclusion.  This interrogatory seeks to discover the <u>methodology</u> employed to distinguish wind from water and covered water from non-covered water (whatever the ultimate outcome as to what may or may not be covered). As a matter of historical (and discoverable) fact, field and in-house adjusters have made hundreds of thousands of these decisions.  How the Fifth Circuit interprets the water damage exclusion will change nothing about the decisions that have been made in the real world or the policies, procedures, and methodologies underlying those decisions.  If the insurers prevail before the Fifth Circuit, causation will remain an issue in every case and the facts sought to be discovered by this interrogatory will be relevant.  If the insureds prevail before the Fifth Circuit, issues of overtopping, accumulated water, etc., will remain and will be claimed as non-covered water so that, again, these sorts of causation determinations will be at issue (and also will be relevant to demonstrate bad faith and otherwise substandard claims handling practices).  Likewise, discovery on these issues does not intrude in any way on the

Fifth Circuit's jurisdiction over the interpretive issue before it.  This causation discovery

remains relevant and discoverable come what may.


   *Interrogatory 13.*  This interrogatory seeks to identify every coverage form the carrier

utilized in Louisiana as of Katrina's landfall.

   *Interrogatory 14.*  This interrogatory seeks to have the carrier identify where in its

coverage forms it sets forth the method for loss computation in the event it did not value the

property in accordance with the VPL statute; its relevance and importance are discussed

above (at 8).

   *Interrogatory 15.*  This interrogatory seeks to have the carrier describe what amounts to

an "application" for insurance.  Its relevance also is discussed above.

   *Interrogatory 16.*  [Resolved.  Plaintiffs concede this request is stayed pending appeal as

it "relates to the water exclusion."]

   *Interrogatory 18.*  This interrogatory seeks to learn of every instance during the past five

years that the responding insurer was subject to any business-related criminal investigation.

   *RFP 3.*  This request seeks a sample document/exemplar of the documents described in

response to Interrogatory 3.

   *RFP 5.*  This request seeks training and procedures manuals, employee handbooks, and

similar documents distributed to in-house and field personnel.

   *RFP 6.*  This request seeks all claims-related bulletins issued to field adjusters since one

week prior to Katrina's landfall.  It does not implicate the stay unless an insurer issued

bulletins discussing the cause of the levee breaches and/or application of the water damage

exclusion.  If so, Plaintiffs surmise it would be more trouble than not to redact all such references only to return once the Fifth Circuit decision has been rendered and produce all of the withheld documentation.

*RFP 7.*  This request seeks all claims-related bulletins issued to in-house adjusters since one week prior to Katrina's landfall.  The same reasoning applies here.

*RFP 8.*  This is the first of several "pricing-related" RFPs, this RFP seeks all price lists, pricing guidelines, etc., to be used by field personnel.  None implicates the stay.

*RFP 9.*  This pricing request seeks all price lists, pricing guidelines, etc., to be used by in-house personnel.

*RFP 10.*  This pricing request seeks depreciation tables and similar documents used in adjusting claims.

*RFP 14.*  This pricing request seeks all documents reflecting loss-estimating methods identified in response to Interrogatory 9, other than software-related documents.

*RFP 17.*  This request seeks all documents reflecting the methodology for differentiating water from wind damage.  It is the companion RFP to Interrogatory 12(i), and it does not violate the stay for the reasons set forth above with respect to that interrogatory.

*RFP 18.*  This request seeks all documents reflecting methodology for differentiating covered water from non-covered water.  It too is a companion RFP to Interrogatory 12, and it does not violate the stay for the reasons stated above with respect to that interrogatory.

*RFP 19.*  This request seeks all documents reflecting any customs, policies, etc., with respect to using a water line to determine damages.  This also goes to differentiation of wind damage from water damage, and does not violate the stay for the reasons discussed with

respect to Interrogatory 12.

*RFP 20.*  This request seeks all documents reflecting customs, policies, etc., relating to the adjustment of total loss claims.

*RFP 21.*  This request seeks all documents reflecting customs, policies, etc., relating to the adjustment of total loss claims involved both wind and water (on the assumption that might differ from total loss by wind or water alone).  This requests focuses on VPL adjustment.  To the extent it brushes against the water damage exclusion, the discussion at Interrogatory 12 pertains here as well.

*RFP 22.*  This is the companion request to (amended) Interrogatory 13(i) (originally 14(i)).  It seeks each coverage form identified in response to that interrogatory.

*RFP 23.*  This is the companion request to amended Interrogatory 13(ii) (originally 14(ii)).  It also seeks coverage forms.

*RFPs 24-27.*  [Resolved.  Plaintiffs concede these requests are stayed pending appeal as each "relates to the water exclusion."]

*RFP 28.*  This request seeks sample application forms (which are relevant to VPL matters).

*RFP 29.*  This request also seeks sample application forms (covering a similar time period in a different fashion).

*RFP 30.*  This seeks every document the insurer contends accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the relative timing of the arrival of tropical storm and/or hurricane winds in relation to flood or inundation (a defined term) in the Greater New Orleans area.  As noted above, this (like RFPs 31-35) is relevant to proving

where the wind and water came from, where the wind and water went, and when.  While these requests bear an attenuated relationship to the water exclusion issue, they will remain as individual causation issues following the appeal and have nothing to do with the interpretation of the exclusion, which is the matter on appeal.  The requests may appear to embrace levee breach causation issues, but they do not.  The requests seek nothing in relation to man-made or third-party negligence, nor do they seek to determine why the water went where it went—only that it did so and the Defendants' contentions as to how and why it did so.  That is a critical causation issue, the discovery of which in no way intrudes upon the Fifth Circuit's jurisdiction.

*RFP 31.*  This is a counterpart to RFP 30, seeking every document the insurer contends <u>in</u>accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the information identified in RFP 30.  See discussion of RFP 30.

*RFP 32.*  This seeks every document the insurer contends accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the depth of flooding or inundation (a defined term) in the Greater New Orleans area due to any discrete cause, such as rainfall or levee breach or overtopping.  See discussion of RFP 30.  Also, although this seeks documents pertaining to flooding as a result of levee breach or overtopping, it does not implicate what might have caused the breach.

*RFP 33.*  Similar to RFP 31, this is a counterpart to RFP 32 that seeks every document the insurer contends <u>in</u>accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the information identified in RFP 32.  See the preceding discussion.

*RFP 34.*  In the same pattern, this RFP seeks every document the insurer contends

22

accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the duration and/or amount of rainfall that occurred in the Greater New Orleans area, or any part of it, during the policy occurrence period for Katrina.  See discussion of RFP 30.

*RFP 35.*  Similar to RFPs 31 and 33, this is a counterpart to RFP 34 that seeks every document the insurer contends <u>in</u>accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the information identified in RFP 34.  See discussion of RFP 30.

*RFP 36.*  Though oddly placed, this request seeks every document reflecting minimum qualifications for persons acting as third-party adjusters and engineers on behalf of the respective insurers.

*RFP 37.*  [Resolved.  Plaintiffs concede this request is stayed pending appeal as it pertains to levee breach causation.]

*RFP 38.*  This RFP seeks every document reflecting plans, communications, etc., by the insurer whereby it attempted to decrease its losses by minimizing catastrophic property damage claims and claims payments from 2002 to date.  This does not implicate levee breach causation or the water damage exclusion, except insofar as the insurers admit that they have used the water damage exclusion to decrease their respective losses by minimizing claims payments based upon it.  To the extent that is admitted, all such documents may be redacted pending the appeal; but all others should be produced.

**WHEREFORE**, Plaintiffs move this Court for an order overruling the objections specified in this motion and requiring that Defendant insurers respond in full to Plaintiffs' common insurance discovery.

Respectfully Submitted,

PLAINTIFFS' LIAISON COUNSEL

s/ Joseph M. Bruno
JOSEPH M. BRUNO
LA Bar Roll No. 3604
Law Offices of Joe Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Tel: (504) 525-1335
Fax: (504) 561-6775
jbruno@jbrunolaw.com

and

INSURANCE PLAINTIFFS' SUB-GROUP
LITIGATION COMMITTEE

s/ Calvin C. Fayard, Jr.
Calvin C. Fayard, Jr.
LIAISON COUNSEL – INSURANCE PSLC
La. Bar Roll No. 5486
calvinfayard@fayardlaw.com
Fayard & Honeycutt, APLC
519 Florida Avenue, SW
Denham Springs, LA 70726
Tel: (225) 664-4193
Fax: (225) 664-6925
calvinfayard@fayardlaw.com

For

INSURANCE PLAINTIFFS' SUB-GROUP
LITIGATION COMMITTEE

John N. Ellison (Anderson, Kill & Olick, Philadelphia, PA)
James M. Garner (Sher, Garner, et al., New Orleans, LA)
Joseph J. McKernan (McKernan Law Firm, Baton Rouge, LA)
Drew A. Ranier (Ranier, Gayle & Elliot, Lake Charles, LA)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy hereof upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile, or other electronic transmission, including notice of electronic filing.

This the  27th day of June, 2007.

  /s/ Joseph M. Bruno_____

Joseph M. Bruno
