## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION** | **CIVIL ACTION** |
| | **NO. 05-4182 "K" (2)** |
| **PERTAINS TO:** | |
| | **JUDGE DUVAL** |
| **ALL INSURANCE CASES** | **MAG. WILKINSON** |

_____

## THE INSURANCE PSLC'S AMENDED
## COMMON DISCOVERY TO ALL INSURER DEFENDANTS
_____

PURSUANT TO ¶ VII of Case Management & Scheduling Order No. 4, the Joint

Liaison Counsel Submission (D.E. 3687), and Fed. R. Civ. P. 33 and 34, and agreement of

the parties, the INSURANCE PSLC, on behalf of plaintiffs in all non-class action cases,

hereby propounds the following discovery upon the Insurer Defendants in all such actions.

The PSLC requests that each Defendant produce responsive documents at the offices of

Joseph M. Bruno, Bruno & Bruno, 855 Baronne St., New Orleans, LA 70113.

### **DEFINITIONS**

*As used herein, the following words and phrases shall have the following meanings.*

**Describe** means to offer a detailed description of the thing sought including, where

appropriate, to **identify** the thing.

**Document** has the meaning given it under the Federal Rules of Civil Procedure, specifically includes electronically stored information, and refers to "documents" in your custody, possession, and/or control as defined by federal law.  The parties are negotiating a document management protocol pursuant to Case Management Order No. 4.  Your response should conform to the document management protocol once it is finalized.

**E.g.** means "for example" (*exempli gratia*).

**Employees and agents** has its general meaning and also includes anyone specially retained to perform Katrina-related claims services, e.g., third-party adjusters and engineers.

**Hurricane Katrina** or **Katrina** means the landfalling tropical cyclone commonly referred to as "Hurricane Katrina," which made landfall on the Louisiana and Mississippi gulf coasts on August 29, 2005.

**Identify** means the following:

(i) with regard to a document or tangible thing, to describe it with sufficient specificity to distinguish it from all other documents and tangible things, and to identify its current custodian (or, if it has been destroyed, to identify its last known custodian and the date of its loss or destruction);

(ii) with regard to a person, to give their full name, address, telephone number, and to set forth information sufficient to discern their role or involvement in the matter at hand (e.g., their job title or the relevant information they possess, etc.).

**Repair costs** means estimated prices or costs (including unit costs) for labor, materials, overhead and profit, and all other expenses incurred in repairing, renovating, or replacing a damaged property.

**You** and **yours** shall refer respectively to each Insurer Defendant.

✳✳

## COMMON INTERROGATORIES

1.  Please describe your organizational structure including a specific breakdown by department, category, and/or job description of the divisions responsible for property casualty underwriting (by whatever name) and property casualty claims (by whatever name).

2.  Please describe your standard, general procedures for intake and adjustment of Katrina-related claims under any of your homeowner policy forms, including in your response the following information and any other similar information that would illustrate the claims process: methods of claim reporting; intake and triage methods and protocols; distribution and assignment of claims; field adjustment; use of specialists such as engineers; transmission of field adjustment reports and recommendations; review of such reports and recommendations; approval and/or modification and/or rejection of such reports and recommendations, including how such actions are communicated to field personnel; final approval for claims payments and/or denials; and transmission or communication of such final decisions to field personnel and to insureds.  Please include in your answer the titles of each department and person/position involved in the process.

3.  Please describe each document routinely generated in connection with a Katrina-related Louisiana property damage claim, including in your description the job title of the person who ordinarily would generate such document and the job title of the person who ultimately would acquire possession and custody of each document so described.

4.   Please identify every agent and employee from the level of adjuster and up who was employed or contracted by you to adjust claims in Jefferson Parish, Orleans Parish and St. Bernard Parish, including in your identification of each, his or her date of hire, salary, whether the person is currently employed or contracted, and if not, the reason for separation.

5.   Please **(i)** describe the guidelines, policies, and procedures utilized in determining how to assign a given adjuster to a given claim and **(ii)** whether/when to transfer a given adjuster from one file or claim to another file or claim.

6.   Please identify every third-party adjusting agency, engineering firm, or other similar entity utilized by you in Louisiana in response to Hurricane Katrina, including in your description the terms of your relationship with each such entity.

7.   Please identify each training manual, procedures manual, employee handbook, protocol, bulletin, guideline, and other such document that you provided or maintained for the use of those employees and agents who handled Katrina-related property damage claims (both in the field and in-house).

8.   Please describe **(i)** the method(s) utilized to estimate or calculate the damages and losses (including repair costs) claimed by or paid to Louisiana residents who made Katrina-related property damage claims.  If any computer software was utilized in estimating or calculating any such claims, please **(ii)** provide the name, version, and developer/ manufacturer of each such software (including changes of the versions used from time to time).

9.   With respect to any and all software referred to in your response to the preceding interrogatory, please **(i)** describe the method by which its price database (reflecting repair

costs) was established and updated from time to time, **(ii)** describe all guidelines, protocols, and/or efforts established or undertaken by you to ensure that the price database reflected current repair costs in the Greater New Orleans area, and **(iii)** describe whether and under what circumstances field and/or in-house claims personnel were permitted or required to depart from the prices (repair costs) reflected in the database or add to the pricing items reflected in the database.

10.  Please describe all training routinely provided to (or undertaken at your request by) adjusters who performed services on your behalf in connection with Hurricane Katrina, specifically including in your response any training such persons received with respect to any adjusting software referred to in your responses to either of the two preceding interrogatories.

11.  In addition to the information provided in response to Interrogatory No. 9, please **(i)** describe all other methods by which you established, updated, and communicated repair costs to be used in calculating damage estimates for your insureds' properties, and **(ii)** describe all guidelines, protocols, and/or efforts established or undertaken by you to ensure that repair costs reflected current repair costs.

12.  Please describe the methodology you employed (and trained your employees and agents to employ) for **(i)** differentiating water damage from wind damage and **(ii)** differentiating water damage that you deemed covered (e.g., rain entering from a breach in a structure) from water damage you deemed not covered (e.g., water resulting from a levee breach).

13.  Please **(i)** identify every coverage form you utilized in Louisiana as of August 29, 2005, with respect to homeowners and commercial properties, and **(ii)** identify every

coverage form for which you sought or intended to seek approval for use in Louisiana as of that date.

14.  For every structure you insured in Louisiana as of August 29, 2005, for which you did not place a valuation upon the covered property and use such valuation for purposes of determining the premium charge to be made under the policy, please identify where in each of the coverage forms identified in your response to the preceding interrogatory you set forth the actual method you would use for loss computation in the event of a total loss.

15.  Please describe for the property casualty policies in effect in Louisiana on August 29, 2005, all standards, guidelines, and/or minimum requirements governing whether a request for coverage would be deemed a sufficient application for such.  (If you used a standard application form or forms for the property casualty policies you had in effect in Louisiana on August 29, 2005, production of a sample of each applicable application form will suffice.)

16.  With respect to any insurance policy covering any type of real or personal property, please describe all efforts, including the results of such efforts, undertaken by you or on your behalf during the past 15 years to seek from any Louisiana department or official the interpretation, approval, or other official disposition of any actual, draft, or proposed policy or form language.  This request encompasses all policy language including that relating to water damage; flood; storm surge; breach of or damage to a levee or other similar structure; and/or man-made or third-party negligence as a cause or contributing factor to any of the above.

17.  Please identify by name, employer, position, and current professional address each person who has assisted in the formulation of responses to any of your responses to these interrogatories, including in your response the interrogatory that each such person assisted in answering, and a general description of the assistance provided.

18.  Please describe every instance during the past 5 years in which any criminal investigation has been launched that was in any way related to your business practices, specifically including your claims practices.

✳ ✳

## COMMON REQUEST FOR PRODUCTION OF DOCUMENTS

**PLEASE PRODUCE LEGIBLE COPIES OF THE FOLLOWING.**

1. All organizational charts that reflect all of the information set forth in Interrogatory No. 1.

2. All organizational charts, flow charts, or similar documents that depict or illustrate your claims process.

3. A sample of each document described in your response to Interrogatory No. 3.

4. Each agreement between you and any third-party adjusting agency, engineering firm, and/or similar entity identified in your response to Interrogatory No. 4.

5. Each training manual, procedures manual, employee handbook, protocol, or similar document that you provided or maintained for the use of those employees and agents who handled Katrina-related property damage claims (both in the field and in-house).

6. Every claims-related bulletin issued by you to your field adjusters since 8/22/05.

7. Every claims-related bulletin issued by you to your in-house adjusters since 8/22/05.

8. All price lists, pricing guidelines, or other documents establishing or designating repair costs to be used by your field employees and agents (including field adjusters) in estimating property losses sustained by your insureds.

9. All price lists, pricing guidelines, or other documents establishing or designating repair costs to be used by your in-house employees and agents (including in-house adjusters and claims supervisors) in estimating property losses sustained by your insureds.

10. Every depreciation table or other such document relied upon, utilized by, or recommended for use by employees and agents in estimating your insureds' property losses.

11.  A user's manual for each loss-estimating software identified in your response to Interrogatory No. 9.

12.  Any and all agreements between you and any manufacturer or licensor of loss-estimating software which agreement concerns the establishment or use of a price database (reflecting repair costs) that is particular to your insureds or their properties.

13.  Every other document that would govern or facilitate the use (with respect to Katrina-related losses) of any of the loss-estimating software identified in your response to Interrogatory No. 9.

14.  Every document unrelated to loss-estimating software which document would reflect the loss-estimating methods identified in your response to Interrogatory No. 9.

15.  Every document that would corroborate that the methods, guidelines, protocols, and efforts employed or undertaken by you as described in your response to Interrogatory No. 10 were in fact employed or undertaken.

16.  Every document that would corroborate that the methods, guidelines, protocols, and efforts employed or undertaken by you as described in your response to Interrogatory No. 12 were in fact employed or undertaken.

17.  Every document reflecting your customs, policies, procedures, or guidelines for differentiating water damage from wind damage.

18.  Every document reflecting your customs, policies, procedures, or guidelines for differentiating water damage that you deemed covered (e.g., rain entering from a breach in a structure) from water damage you deemed not covered (e.g., water resulting from a levee breach).

19.  Every document reflecting any customs, policies, procedures, or guidelines you maintained with respect to using (or not using) a "water line" in determining damages to a given property.

20.  Every document reflecting the customs, policies, procedures, or guidelines you maintained with respect to the adjustment of claims involving total loss of a structure.

21.  Every document reflecting the customs, policies, procedures, or guidelines you maintained with respect to adjustment of total structural loss that resulted from a combination of wind and water.

22.  Each coverage form identified in your response to Interrogatory No. 14(i).

23.  Each coverage form identified in your response to Interrogatory No. 14(ii).

24.  All applications and requests by you to the Louisiana Department of Insurance or any state official seeking interpretation, approval, or other official disposition of any policy or form language relating in any way to water damage, with respect to policies covering to residential and/or commercial properties.

25.  All applications and requests by you to the Louisiana Department of Insurance or any state official seeking interpretation, approval, or other official disposition of any policy or form language relating in any way to the term "flood," with respect to policies covering residential and/or commercial properties.

26.  All applications and requests by you to the Louisiana Department of Insurance or any state official seeking interpretation, approval, or other official disposition of any policy or form language relating in any way to breach of or damage to a levee or other similar structure, with respect to policies covering residential and/or commercial properties.

27.  All applications and requests by you to the Louisiana Department of Insurance or any state official seeking interpretation, approval, or other official disposition of any policy or form language relating in any way to damage caused by "man-made negligence," "third-party negligence," or similar terminology, with respect to policies covering residential and/or commercial properties.

28.  A sample of each application form used or deemed acceptable by you with respect to Louisiana  property casualty policies for whatever period of time would suffice to cover all policies in effect on August 29, 2005.

29.  A sample of each application form used or deemed acceptable by you with respect to Louisiana property casualty policies for the past 20 years.

30.  Every document that you contend accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the relative timing of the arrival of tropical storm force winds and/or hurricane force winds in the Greater New Orleans area or any part of it with relation to any flood or inundation within the Greater New Orleans area or any part of it, with respect to Hurricane Katrina.

31.  Every document that you contend inaccurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the relative timing of the arrival of tropical storm force winds and/or hurricane force winds in the Greater New Orleans area or any part of it with relation to any flood or inundation within the Greater New Orleans area or any part of it, with respect to Hurricane Katrina.

32.  Every document that you contend accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the depth of any flooding or inundation of the Greater New

Orleans area over time or at any time due to any discrete cause and all of them, including, but not limited to, rainfall and/or other precipitation and the breach and/or overtopping of any levee, spoilbank, or similar structure, with respect to Hurricane Katrina.

33.   Every document that you contend inaccurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the depth of any flooding or inundation of the Greater New Orleans area over time or at any time due to any discrete cause and all of them, including, but not limited to, rainfall and/or other precipitation and the breach and/or overtopping of any levee, spoilbank, or similar structure, with respect to Hurricane Katrina.

34.   Every document that you contend accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the duration and/or amount of rainfall that occurred in the Greater New Orleans area, or any part of it, during the policy occurrence period for Hurricane Katrina.

35.   Every document that you contend inaccurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the duration and/or amount of rainfall that occurred in the Greater New Orleans area, or any part of it, during the policy occurrence period for Hurricane Katrina.

36.   Every document reflecting the minimum qualifications you required in order for a person to act as a third-party adjuster or engineer (in the field or in-house) on your behalf.

37.   Every document that would reflect any statement by any of your employees or agents that the flooding or inundation of Greater New Orleans was caused by the negligence of the United States Army Corps of Engineers or some other third party.

38.  Every document pertaining to or reflecting plans, communications, or projections by the insurer whereby the insurer attempted to decrease its losses by reducing the number, size, and/or payments on claims from 2002 to date related in any way to catastrophic property damage claims.

39.  Every document you produced to any governmental agency investigating your conduct relating in any way to Hurricane Katrina, including, but not limited to production to the Mississippi Attorney General and Mississippi Department of Insurance.

✳ ✳

PLAINTIFFS' LIAISON COUNSEL

s/ Joseph M. Bruno
JOSEPH M. BRUNO
PLAINTIFFS LIAISON COUNSEL
LA Bar Roll No. 3604
Bruno & Bruno, L.L.P.
855 Baronne Street
New Orleans, Louisiana 70113
Tel: (504) 525-1335
Fax: (504) 561-6775
jbruno@brunobrunolaw.com

and

INSURANCE PLAINTIFFS' SUB-GROUP
LITIGATION COMMITTEE

s/ Calvin C. Fayard, Jr.
Calvin C. Fayard, Jr.
LIAISON COUNSEL – INSURANCE PSLC
La. Bar Roll No. 5486
calvinfayard@fayardlaw.com
Fayard & Honeycutt, APLC
519 Florida Avenue, SW
Denham Springs, LA 70726
Tel: (225) 664-4193
Fax: (225) 664-6925
calvinfayard@fayardlaw.com

For

INSURANCE PLAINTIFFS' SUB-GROUP
LITIGATION COMMITTEE

John N. Ellison (Anderson, Kill & Olick, Philadelphia, PA)
James M. Garner (Sher, Garner, et al., New Orleans, LA)
Joseph J. McKernan (McKernan Law Firm, Baton Rouge, LA)
Drew A. Ranier (Ranier, Gayle & Elliot, Lake Charles, LA)