UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATRINA CANAL BREACHES § | | CIVIL ACTION |
| CONSOLIDATED LITIGATION § | | NO.   05-4182 "K"(2) |
| § | | JUDGE DUVAL |
| § | | MAG. WILKINSON |
| _____ § | | |
| § | | |
| PERTAINS TO: § | | |
| § | | |
| INSURANCE CASES | § | |
| § | | |
| _____ § | | |

**NOTICE OF VIDEOTAPED FEDERAL RULE 30(b)(6) DEPOSITION**

**TO:**  To all Defendants and their respective counsel,
Through Defense Liaison Attorney of Record:
Ralph S. Hubbard III
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras St.
Suite 2775
New Orleans, Louisiana 70130-6041

PLEASE TAKE NOTICE that Plaintiffs, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, will take the videotaped deposition upon oral examination of **[Field 1]**, concerning the matters as set forth on Exhibit A and B attached hereto.

The oral examination will take place on **[Field 2]** at the offices of Bruno & Bruno, 855 Baronne Street, New Orleans, Louisiana 70113 at 9:00 a.m. and will continue from day to day

1

until completed.  The deposition will be taken before a Notary Public or some other officer authorized to administer oaths under the law.  This deposition is taken for discovery and use at trial and for any other purpose permitted under the Federal Code of Civil Procedure.  The deposition will be recorded stenographically and by videotape.  You are invited to attend and examine the witnesses if you so desire.

**[Field 1]** is requested to designate one or more officers, directors, or managing agents, or other persons who consent to testify as the person most knowledgeable concerning each subject on its behalf, and to set forth, for each person designated, the matters on which the person will testify.  The deponent is requested to designate documents responsive to this Notice two (2) business days prior to the deposition.

## DEFINITIONS

1. "You" and its various forms such as "your" and "yourself" shall mean the person and/or entity subject to this notice and/or subpoena and/or request for production and all present and former agents, employees, representatives, attorneys, custodian of records, and all other persons acting on behalf of such person and/or entity, including, but not limited to, the deponent, its divisions, parents, subsidiaries, related companies or corporations, predecessors, successors, and all present and former officers, directors, agents, employees, representatives, and attorneys, and all other persons acting or purporting to act on behalf of the entity subject to the Notice.

2. "Describe" means to explain in detail and/or provide a detailed description of the information sought in the particular Request Interrogatory.

3. "Document(s)" shall mean or refer to all written or graphic matter of every kind of description, however, produced or reproduced, whether draft or final, original or reproduction, original and all non-identical copies, and all tangible things within the scope of Federal Rule of Civil Procedure 30(b)(6), specifically including, but not limited to: writings, graphs, charts, photographs, satellite and/or radar imagery, telephone records, data compilations (from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form), letters, correspondence, e-mail communications and attachments, instant messages, memoranda, minutes, notes, contracts, agreements, books, diaries, time sheets, laboratory books, logs, bulletins, circular, notices, rules, regulations,

prospects, directions, teletype messages, inter-office communications, intra-office communications, reports, company worksheets, credit files, evidence of indebtedness, negotiable instruments, telegrams, mailgrams, books, news releases, newspapers, magazines, advertisements, periodicals, pamphlets, sketches, drawings, statements, reports, articles of incorporation, by-laws, directives, minutes of meetings, balance sheets, income and loss statements, profit and loss statements, inventories, operating budgets, accounting worksheets, financial accounts, bills, vouchers, bank checks, proposals, offers, orders, acknowledgments, receipts, invoices, checks, working papers, telephone messages (whether written or recorded), notebooks, post cards, evaluations, recommendations, annual reports, confirmations, leases, analyses, feasibility or market studies, disbursement requests or orders, indices, projections, forms, data sheets, data processing discs, or readable computer-produced interpretations thereof, booklets, articles, manuals, speeches, stenographic notes, maps, studies, tests, surveys, cables, tape and disc recordings (both audio and video), graphic and aural representations of any kind (including, without limitation, photograph, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans drawings and surveys) and electronic, mechanical, magnetic, optical or electric records or representations of any kind (including, without limitation, computer files and programs, tapes, cassettes, discs, recordings, including metadata, blueprints, containers, cartons, package labels, slides, audit reports, tender offers or invitations, personal interviews, summaries, abstracts, compilations or paraphrases of any of the foregoing, or material similar to any of the foregoing, however denominated, which are in the possession, custody or control of the party upon whom this subpoena and/or request for production of documents is served or to which said party can obtain access. The subpoena and/or request for production of documents calls for originals, unless otherwise specified, and for all copies when originals are not available. If a document has been prepared in several copies, or additional copies have been made and the copies are not identified (or by reason of subsequent modification of the copy by additions or notations, or other modifications, are no longer identical), each non-identical copy is a separate "document."

The term "photographs" shall be interpreted to mean all pictorial depictions by whatever means and shall include negatives, positive prints, and copies of prints, Polaroid, or any other pictorial information in the custody of the defendant.

The term "file" shall be interpreted to mean any and all documents, as defined herein, in your possession.

"Imaged copy" means bit-by-bit copy or replication of data stored on a device in an accessible format.

4. "Relate(s) to," "related to", or "relating to" means to refer to, reflect, concern, pertain to or in any manner be connected with the matter discussed.

5. With respect to the production of any documents which are claimed to be privileged, a statement shall be provided by the attorneys for the respondent setting forth as to each such document (and, where applicable, each attachment thereto):
   a. the name of the sender, if any, of the document;
   b. the name of the author of the document;
   c. The name of each person or persons (other than stenographic or clerical assistants) participating in the preparation of the document;
   d. the name of the person, if any, to whom the document and copies were sent;
   e. The name and position, if any, of each person to whom the contents of the documents have been communicated by copy, exhibition, reading, or substantial summarization;
   f. the date of the document;
   g. the date on which the document was received by those having possession of the document;
   h. a description of the nature and the subject matter of the document;
   i. the statute, rule or decision which is claimed to give rise to the privilege;
   j. the last-known custodian of the document and the present location of the document;
   k. attachments to the document;
   l. the number of pages comprising the document;
   m. whether the document is handwritten, typewritten or otherwise prepared;
   n. A statement of the specific basis on which privilege is claimed and whether or not the subject matter or the contents of the document is limited to legal advice or information provided for the purpose of securing legal advice;
   o. The identity and position of the person(s) supplying the attorney, if any, signing the list with the information requested in the subparagraphs above.
   p. any other information which is useful in identifying or is necessary to identify the document.

6. If any response is qualified, made in part, but not in whole, objected to, or if any requested information is withheld on the basis of privilege or otherwise, please:

   i. State the name, address, and status or job title of the person(s) asserting any objection or privilege, or withholding any requested information;
   ii. State in detail the privilege asserted or other reason for withholding the requested information; and
   iii. State in general the nature of the information or response withheld sufficient to establish the claim or privilege or other reason for withholding the information.

7. Whenever appropriate, the singular form of the word shall be interpreted in the plural and vice versa.

8. All words and phrases shall be construed as masculine, feminine, or neutral gender according to the context.

9. "And" as well as "or" shall be construed either disjunctively as necessary to bring within the scope of the subpoena and/or request for production of documents any matters which might otherwise be construed to be outside of the scope of the subpoena and/or request for production of documents.

10. "Identify" with regard to a natural person, means to provide the name, last known address, last known telephone number; whether ever employed by you, and if so, dates of employment, descriptions and/ or title of each position held, and the reasons for termination; and, current employer and/or last known employer and position held.

    "Identify," *with regard to a corporation*, means to provide the name of the entity along with its primary business address and telephone number.

    "Identify," *with regard to documents or other inanimate objects*, means to provide the date, author, address, number of pages, subject matter, custodian of the document, and location of the document.

11. The term "IHNC/Industrial Canal" means the Inner Harbor Navigation Canal a/k/a the "Industrial Canal," which connects Lake Pontchartrain, the Mississippi River and Reach 1 of the MRGO.

12. The term "IHNC Lock Replacement Project" means the project authorized by the River and Harbor Act of 1956 and the Water Resources Development Acts of 1986 and 1996 designed to enlarge and deepen the IHNC lock.

13. The term "IPET Report" means the Final Report of the Interagency Performance Evaluation Task Force, Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System, all volumes, dated March 26, 2007.

14. The term "TLR" means Team Louisiana report.

15. The term "ILIT" means Independent Levee Investigation Team.

16. The term "LPVHPP" means the Lake Pontchartrain and Vicinity Hurricane Protection Project as authorized by the Flood Control Act of 1965.

17. The term "GIWW" means the Gulf Intracoastal Waterway.

18. The term "MR-GO" or "MRGO" means the Mississippi River Gulf Outlet (specifically including the reach along Lake Borgne and the reach between New Orleans East and St. Bernard Parish referred to at times by the Defendants as a reach of the GIWW).

19. The term "Reach 1" means the segment of the MRGO connecting with the Gulf Intracoastal Waterway between New Orleans East and St. Bernard Parish that runs into the IHNC/Industrial Canal.

20. The term "Reach 2" means the land cut segment of the MRGO along Lake Borgne, between the interconnection of the MRGO and the GIWW running southeasterly into the Gulf of Mexico.

21. "17th Street Canal," "London Avenue Canal," "Orleans Canal," and "Industrial Canal" means the entirety of the canal systems associated with the 17th Street Canal, London Avenue Canal, Orleans Canal and Industrial Canal and, unless otherwise noted, is not limited to any specific breach location.

22. The East Jefferson Levee District also means the Pontchartrain Levee District.

23. The term "RPC" means Regional Planning Commission.

**THIS DEPOSITION IS NOT FOR RECORDS ONLY.**

                      **Respectfully Submitted,**

                      **APPROVED PLAINTIFFS LIAISON COUNSEL**

                      JOSEPH M. BRUNO (La. Bar # 3604)
                      PLAINTIFFS LIAISON COUNSEL
                      Bruno & Bruno, L.L.P.
                      855 Baronne Street
                      New Orleans, Louisiana 70113
                      Telephone: (504) 525-1335
                      Facsimile: (504) 561-6775
                      Email: jbruno@brunobrunolaw.com

**INSURANCE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

                      s/ Calvin C. Fayard, Jr.
                      Calvin C. Fayard, Jr. (La. Bar #5486)
                      INSURANCE PSLC LIAISON COUNSEL
                      Fayard & Honeycutt, APLC
                      519 Florida Avenue, SW
                      Denham Springs, LA 70726
                      Tel: (225) 664-4193
                      Fax: (225) 664-6925
                      calvinfayard@fayardlaw.com

For

INSURANCE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE

John N. Ellison
James M. Garner
Joseph J. McKernan
Drew A. Ranier
Calvin C. Fayard, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Notice of Deposition upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this ??? day of ????, 2007.

_____
Joseph M. Bruno

## "EXHIBIT "A"

Please produce, pursuant to Federal Rule(b)(6), the person(s) most knowledgeable of the following areas:

1. Your organizational structure including a specific breakdown by department, category, and/or job description of the divisions responsible for property casualty underwriting (by whatever name) and property casualty claims (by whatever name).

2. Your standard, general procedures for intake and adjustment of a claim under any of your homeowner policy forms before Hurricane Katrina, advise whether the procedures changed for handling Katrina-related claims, and if so, the nature and purpose of each change, including in your response the following information and any other similar information that would illustrate the claims process: methods of claim reporting; intake and triage methods and protocols; distribution and assignment of claims; field adjustment; use of specialists such as engineers; transmission of field adjustment reports and recommendations; review of such reports and recommendations; approval and/or modification and/or rejection of such reports and recommendations, including how such actions are communicated to field personnel; final approval for claims payments and/or denials; and transmission or communication of such final decisions to field personnel and to insureds. Please include in your answer the titles or descriptions of each department and person/position involved in the process.

3. Each document routinely generated in connection with a Katrina-related Louisiana property damage claim, including in your description, the job title of the person who ordinarily would generate such document and the job title of the person who ultimately would acquire possession and custody of each document so described.

4. Every adjuster employed by you to adjust claims in Jefferson Parish, Orleans Parish and St. Bernard Parish, including in your identification of each, his or her date of hire, salary, nature and date of training, whether the person is currently employed, and if not, the reason for separation.

5. Each employee or agent above the level of adjuster who is/was involved in the adjustment, payment, and/or settlement of Katrina-related claims.

6. The guidelines, policies, and procedures utilized in determining how to assign a given adjuster to a given claim and whether/when to transfer a given adjuster from one file or claim to another file or claim.

7. Every third-party adjusting agency, engineering firm, or other similar entity utilized by you in Louisiana in response to Hurricane Katrina, including in your description the terms of your relationship with each such entity.

8. Each training manual, procedures manual, employee handbook, protocol, bulletin, guideline, and other such document that you provided or maintained for the use of those employees and agents who handled Katrina-related property damage claims (both in the field and in-house).

8

9. The method(s) utilized to estimate or calculate the damages and losses (including repair costs) claimed by or paid to Louisiana residents who made Katrina-related property damage claims. If any computer software was utilized in estimating or calculating any such claims, the name, version, and developer/ manufacturer of each such software (including changes of the versions used from time to time).

10. With respect to any and all software referred to in your response to the preceding interrogatory, the method by which its price database (reflecting repair costs) was established and updated from time to time, the guidelines, protocols, and/or efforts established or undertaken by you to ensure that the price database reflected current repair costs in the Greater New Orleans area, and whether and under what circumstances field and/or in-house claims personnel were permitted or required to depart from the prices (repair costs) reflected in the database or add to the pricing items reflected in the database.

11. All training routinely provided to (or undertaken at your request by) adjusters who performed services on your behalf in connection with Hurricane Katrina, specifically including in your response any training such persons received with respect to any adjusting software referred to in your responses to either of the two preceding interrogatories.

12. All other methods, in addition to the information provided in response to inquiry No. 10, by which you established, updated, and communicated repair costs to be used in calculating damage estimates for your insureds' properties, and all guidelines, protocols, and/or efforts established or undertaken by you to ensure that repair costs reflected current repair costs.

13. The methodology you employed (and trained your employees and agents to employ) for **(i)** differentiating water damage from wind damage and **(ii)** differentiating water damage that you deemed covered (e.g., rain entering from a breach in a structure) from water damage you deemed not covered (e.g., water resulting from a levee breach).

14. Every coverage form you utilized in Louisiana as of August 29, 2005, with respect to homeowners and commercial properties, and identify every coverage form for which you sought or intended to seek approval for use in Louisiana in the past ten years as of that date.

15. With respect to the structures you insured in Louisiana as of August 29, 2005, describe the valuation you placed upon the covered property and how you used such valuation for purposes of determining the premium charge to be made under the policy.

16. The use of a standard application form or forms for the property casualty policies you had in effect in Louisiana on August 29, 2005, including the standards, guidelines, and/or minimum requirements governing whether a request for coverage would be deemed a sufficient application for such.

17. With respect to any policy covering any type of real or personal property, the efforts, including the results of such efforts, undertaken by you or on your behalf during the past 15 years to seek from any Louisiana department or official the interpretation, approval, or other official disposition of any actual, draft, or proposed policy or form language relating in any way to water damage;

9

      flood; storm surge; breach of or damage to a levee or other similar structure; and/or man-made or third-party negligence as a cause or contributing factor to any of the above.

18. Every instance during the past 5 years in which any criminal investigation has been launched that was in any way related to your business practices, specifically including your claims practices.

19. Whether any insurance policy related to any Katrina related claims was ever amended, changed or otherwise modified at any time after it was issued, an explanation of each amendment, change or modification to the policy issued to the policyholder(s), including:
    a. the substance of the amendment, change or modification;
    b. the date when the amendment, change or modification became effective;
    c. the name address of each person who was involved in effecting the amendment, change or modification; and
    d. the nature of each person's involvement in the amendment, change or modification.

20. Any agreement(s) and/or understandings, whether written or verbal you have or have ever had with the policyholder(s), other than the actual insurance policy and endorsements issued by you, that you contend affect the amount or scope of coverage available to the policyholder(s) under the insurance policies which you sold to the policyholder(s).

21. The procedures and methods used by you to determine whether or not coverage existed under the type of policy in place on August 29, 2005 with respect to the claims asserted as a result of Hurricane Katrina.

22. Each and every policy exclusion which you contend precludes coverage with respect to the claims asserted as a result of Hurricane Katrina.

23. Any legal opinions from either in house counsel or outside counsel regarding claims asserted as a result of Hurricane Katrina, and whether any of these opinions were used or rejected in formulating general policy or any specific policy regarding claims asserted as a result of Hurricane Katrina.

24. Your underwriting manuals or guidelines regarding and/or including premium setting information, including but not limited to the policy, application, amendments, letters, and memoranda.

25. Your claims handling manuals or guidelines, including additions, deletions and other revisions from previous versions and any other materials used to train claims handlers for use in handling of the kind at issue, including but not limited to broad settlement policies or any changes of policy.

26. The personnel files of employees involved in premium or rate setting, and processing payment, or denial of claims, including but not limited to information on training, merit based promotions or demotions, and reprimands.

27. Information regarding loss reserves, including but not limited to letters, charts, tables, e-mails, and memoranda.

28. Your document retention policy.

29. Your policies and procedures regarding the use of engineering reports obtained, including but not limited to building, mechanical, technical, and construction reports, both used and unused, in determining coverage for the subject loss.

30. Your policies and procedures concerning the use of daily claim reports that would show the highest and lowest reserve set for claims asserted as a result of Hurricane Katrina.

31. Your policies and procedures concerning re-insurance of risks covered by policies for claims asserted as a result of Hurricane Katrina, including re-insurance contracts, treaties, agreements or communications with any reinsurance company, excess carrier, insurance agent, adjuster, insurance excess carrier that may relate to this claim in any way.

32. Your promotional materials distributed or broadcast by you, including television, radio, or printed advertisements and sales brochures for one year preceding and one year following the issuance of the type of policy in place on August 29, 2005 with respect to the claims asserted as a result of Hurricane Katrina.

33. Every complaint made against you, including but not limited to complaints made against the superintendent of insurance for the past five years and copies of all writings concerning all complaints against you involving the manner in which you handle claims for insurance benefits.

34. The nature and extent of your ability to direct and control the actions of your adjusters and others working on its behalf in connection with claims asserted as a result of Hurricane Katrina, including your ability to direct and control the actions of agents of any engineering companies.

35. The nature and content of any written communication disseminated to your adjusters and others working on your behalf generally and working specifically in connection with claims asserted as a result of Hurricane Katrina, which written communication addressed or pertained to the National Flood Insurance Program.

36. The nature and content of any oral communication disseminated to your adjusters and others working on your behalf generally and working specifically in connection with claims asserted as a result of Hurricane Katrina, which oral communication addressed or pertained to the National Flood Insurance Program.

37. All litigation matters in which a corporate representative has testified by deposition or at trial during the past 5 years as a corporate representative for you.

38. The factual basis for any affirmative defenses set forth in your Answer to the Complaint at issue in the above referenced litigation, including all facts and evidence in support of the contention that there is such an affirmative defense.

39. The procedures and methods by which a communication protocol or standard means of communication was established which would allow communication between members of a loss adjustment team and their supervisors, subordinates, collegues, equal ranking members of that team, new members of that team, former members of that team, etc., including but not limited to emails, standard written reports, written and/ or electronic data transfer, team conferences, etc.

40. All communications and/or meetings in which the concept "levee breach" or "levee failure" was discussed, including whether coverage existed under the policy forms.

41. The extent to which coverage and the existence of "levees" in the Greater N.O. area was discussed, examined or studied following the Mississippi River flooding in the 1990s, including any need to amend or change any policy.

42. Any meeting, communications or documents discussing or examining endorsements in any of your competitors' policies written in Louisiana excluding coverage for "levee breach or failure".

43. The definition of "hurricane" as used in any policy or endorsement to any policy, and any scientific data, materials or information used or relied upon in developing that defintion.

44. The scope of coverage for property damage resulting from a "hurricane", and any materials, documentation, disclosures, etc. provided to current and prospective policyholders regarding the scope of this coverage and/or lack thereof (e.g., the need for flood insurance or any other form of insurance).

45. The development and adoption of the term "water damage" and "weather conditions" as used in the policies in effect on August 29, 2005.

**EXHIBIT "B"**

1. Any and all documents relative to Paragraph 1 of Exhibit "A";
2. Any and all documents relative to Paragraph 2 of Exhibit "A";
3. Any and all documents relative to Paragraph 3 of Exhibit "A";
4. Any and all documents relative to Paragraph 4 of Exhibit "A";
5. Any and all documents relative to Paragraph 5 of Exhibit "A";
6. Any and all documents relative to Paragraph 6 of Exhibit "A";
7. Any and all documents relative to Paragraph 7 of Exhibit "A";
8. Any and all documents relative to Paragraph 8 of Exhibit "A";
9. Any and all documents relative to Paragraph 9 of Exhibit "A";
10. Any and all documents relative to Paragraph 10 of Exhibit "A";
11. Any and all documents relative to Paragraph 11 of Exhibit "A";
12. Any and all documents relative to Paragraph 12 of Exhibit "A";
13. Any and all documents relative to Paragraph 13 of Exhibit "A";
14. Any and all documents relative to Paragraph 14 of Exhibit "A";
15. Any and all documents relative to Paragraph 15 of Exhibit "A";
16. Any and all documents relative to Paragraph 16 of Exhibit "A";
17. Any and all documents relative to Paragraph 17 of Exhibit "A";
18. Any and all documents relative to Paragraph 18 of Exhibit "A";
19. Any and all documents relative to Paragraph 19 of Exhibit "A";
20. Any and all documents relative to Paragraph 20 of Exhibit "A";
21. Any and all documents relative to Paragraph 21 of Exhibit "A";
22. Any and all documents relative to Paragraph 22 of Exhibit "A";
23. Any and all documents relative to Paragraph 23 of Exhibit "A";
24. Any and all documents relative to Paragraph 24 of Exhibit "A";
25. Any and all documents relative to Paragraph 25 of Exhibit "A";
26. Any and all documents relative to Paragraph 26 of Exhibit "A";
27. Any and all documents relative to Paragraph 27 of Exhibit "A";
28. Any and all documents relative to Paragraph 28 of Exhibit "A";
29. Any and all documents relative to Paragraph 29 of Exhibit "A";
30. Any and all documents relative to Paragraph 30 of Exhibit "A";
31. Any and all documents relative to Paragraph 31 of Exhibit "A";
32. Any and all documents relative to Paragraph 32 of Exhibit "A";
33. Any and all documents relative to Paragraph 33 of Exhibit "A";
34. Any and all documents relative to Paragraph 34 of Exhibit "A";
35. Any and all documents relative to Paragraph 35 of Exhibit "A";

36. Any and all documents relative to Paragraph 36 of Exhibit "A";
37. Any and all documents relative to Paragraph 37 of Exhibit "A."
38. Any and all documents relative to Paragraph 38 of Exhibit "A."
39. Any and all documents relative to Paragraph 39 of Exhibit "A."
40. Any and all documents relative to Paragraph 40 of Exhibit "A";
41. Any and all documents relative to Paragraph 41 of Exhibit "A";
42. Any and all documents relative to Paragraph 42 of Exhibit "A";
43. Any and all documents relative to Paragraph 43 of Exhibit "A."
44. Any and all documents relative to Paragraph 44 of Exhibit "A."
45. Any and all documents relative to Paragraph 45 of Exhibit "A."