# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | KATRINA CANAL BREACHES | * | CIVIL ACTION |
| | CONSOLIDATED LITIGATION | * | NO. 05-4182 "K" (2) |
| | | * | |
| | | * | JUDGE DUVAL |
| | | * | MAG. WILKINSON |
| PERTAINS TO:   LEVEE: 06-6642 | | * | |
| (PONTCHARTRAIN BAPTIST CHURCH) | | * | |
| (BRIDGE PROJECTS) | | * | |

*********************************************

## SECOND AMENDED COMPLAINT AND INCORPORATED EXHIBITS

NOW come Plaintiffs, Pontchartrain Baptist Church, Arthur C. Sargent, Lucy T. Sargent, Pamela Young Smallpage, Richard Matiland Smallpage, Jr., Mr & Mrs. H. J. Bosworth, Rothfos Corporation, InterAmerican Coffee, Inc. and Noble Americas Corporation, by and through their undersigned counsel, who pursuant to the Court's Minute Entry of May 30, 2007 (Doc. 5437), Fed. R. Civ. P. 15(c)(3), and Case Management Order #4 (Doc. 3299 Sec 2(A), page 13) file this Second Amended Complaint and Incorporated Exhibits.

Defendants uniformly oppose this Proposed Amended Complaint.



1

## RE-ALLEGATIONS

Plaintiffs incorporate by reference and re-allege each and every allegation in Paragraphs 1 – 82 of their original Petition as though fully set forth herein and as set forth in their First Amended Complaint (Doc. 3644).

Plaintiffs, due to computer error, amend Paragraphs 34, 35, 36, 56, 60, 65, 72, and 78 by deleting the words "**paragraphs 1-Error! Reference source not found**" and in lieu thereof inserts the words "**paragraphs 1 – 55.**"

Plaintiffs amend Paragraph 1 and allege, for each individual Plaintiff, that each was the owner of moveable and immoveable property at the time of the alleged takings on August 29, 2005 and that the takings were the probable result of authorized activities and the cause-in-fact and law and/or proximate cause and/or concurrent cause and/or substantial factor in the harm and emotional and physical damages incurred by Plaintiffs.

Plaintiffs amend Paragraph 2(g) by deleting "C.R. Pittman Construction Co." and adding and substituting as a new additional Defendant the "Board of Commissioners of the East Jefferson Levee District" (hereafter "EJLD"), a political subdivision, organized and existing in accordance with La. R.S. 38:291, amenable to suit, and domiciled in the Parish of Jefferson.  Plaintiffs allege EJLD is not an "arm of the State of Louisiana." Plaintiffs re-allege each and every allegation in Paragraphs 1 – 82 of their previous pleadings as though fully set forth herein and as set forth in their First Amended Complaint (Doc. 3644).

2

Plaintiffs amend and supplement the following Paragraphs:

3.

## JURISDICTION AND VENUE

Venue is proper in Admiralty in this District and, in the alternative, is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(e).

This Court has jurisdiction over the subject matter of these claims under the general maritime law, the "savings to suitors clause," 28 U.S.C. § 1333, the Extension of Admiralty Jurisdiction Act," 46 U.S.C. §740, Supplemental Jurisdiction under 28 U.S.C. §1367 et seq, and the Suits in Admiralty Act, 46 U.S.C. §741 et seq.

Plaintiffs amend and allege that the nexus of operative facts on the claims asserted give rise to the alleged faults, acts, omissions, torts, wrongs, harms, negligence, negligent misdiagnosis, unseaworthiness, breaches of contracts, breaches of express and implied warranties, breaches of duties, failure to warn, failure to disclose, failure to investigate, negligent misrepresentation of information, negligent design and misdiagnosis and use of methods, techniques, sequences, and procedures, negligent supervision and administration, strict liability, products liability, absolute liability, inverse condemnation, and constitutional torts all arising from and related to "Bridge Projects."

The term "Bridge Projects" as used herein and in the previous pleadings includes, without limitation, work, actions, and activities, maritime and non-maritime, (hereinafter

3

collectively "Activities")[1] of Defendants acting as Vessel operators on navigable waters using Vessels and Appurtenances ("Vessels"), materialmen suppliers and vendors of goods, products, and components necessary in the Activities in the repairs, operations, excavations and dredgings, in, under, and in the vicinity of the Bridges (Hammond Highway, Robert E. Lee, Filmore Avenue, and Mirabeau Avenue), in particular, north and south of the Bridges.  Plaintiffs attach hereto Exhibit A (consisting of pages A-1 through A-44) which they incorporate by reference and make a part hereof.

In Exhibit A, on pages A-1 and A-2, in a document dated January 10, 2003 (Hammond Highway Complex), the notation appears "Dredging on south side of bridge" (Ex. A, p. A-1) and on page A-2, line item 10, "CIN-015 Additional Dredging." Defendants were involved in the repair, demolition, removal and driving of bridge pilings, reconstruction, and flood-proofing of the Bridges, including the bridge abutments, bents, and formworks acting in the roles of Designers, Engineers, Architects, Contractors, Construction Contract Managers, Consultants, and Geotechnical Engineers.

3(a).

## INAPPLICABILITY OF AFFIRMATIVE DEFENSES

Plaintiffs allege that the below facts show Defendants are estopped from asserting certain Affirmative Defenses, to-wit:

---

[1] The term "Activities" used throughout this Amended Complaint includes, without limitation, those activities *relating to the repair, excavation, dredging, demolition, reconstruction, pile-removal, pile-driving,* and other vibratory activities of the various Bridges in and over the 17th Street and London Avenue Canals.

1.   Sovereign Immunity

Defendants are estopped from asserting sovereign immunity as an affirmative defense because the Sewerage & Water Board (S&WB), Board of Commissioners of the Orleans Levee District (OLD), the City of New Orleans, and EJLD do not qualify as an "arm of the State." Northern Insurance Company of New York v. Chatham County, GA, 547 U.S. 189 (April 25, 2006).  For other reasons set forth in Northern Insurance, *supra*, all other Defendants are estopped as well.

2.   Peremption, Prescription, Equitable Estoppel, Due Process, Open Access to the Courts

Defendants are estopped from asserting peremption or prescription as an affirmative defense under Louisiana statutes of repose, and under the Admiralty doctrines of Laches and the Discovery Rule, Equitable Estoppel, Due Process and Open Access to the Courts.  (Doc. 3550). The Bridge Project maritime and non-maritime claims are not subject to statutes of repose because five years has not elapsed since completion of construction or acceptance of the works.

3.   Constitutional Limitations

Louisiana Constitution Article XII, § 10(A) waives and limits sovereign immunity, and as such, OLD, EJLD, S&WB, and the City of New Orleans are estopped from asserting sovereign immunity.

5

4.   Indispensable Party, Fed. R. Civ. Proc. 19, affirmative defense does not apply

USACE is not an indispensable party under Fed. R. Civ. P. Rule 19 because of the way this suit is plead. The United States, USACE and the State of Louisiana are not Defendants.  The Bridge Projects involved, to a limited extent, "flood-proofing."  Should that activity arguably give rise to an asserted 33 U.S.C. § 702(c), Flood Act defense, that defense, if availing, is  is only available to the United States.

5.   Act of God

Katrina was foreseeable.  No Act of God or *force majeure* affirmative defense is available to Defendants.

6.   Military Contractor Defense

Defendants are estopped from asserting the "military contractor defense." The Bridge Projects, contracts, and Activities and elements of those contracts and Activities were conducted by Defendants as members of a joint venture/partnership, which included S&WB, OLD, EJLD, the City of New Orleans, and USACE.  To the extent Defendants allege they complied with and followed Plans and Specifications allegedly approved by USACE, which Plaintiffs deny, Defendants are estopped from asserting the "military contractor defense," especially in light of the Supreme Court's recent decision in Watson v. Philip Morris Companies, Inc., 2007 WL 1660910

6

(June 11, 2007).  S&WB and OLD, contracted for and paid for this element of the Bridge Projects Activities which did not involve "acting under a federal officer", as shown below:

A.      Modjeski & Masters was under contract[2] with both OLD and S&WB for the excavation and dredging "Design Plans" and specifications including the treatment of several Bridges crossing the 17th Street Canal (hereinafter collectively "Design Plans").

B.      Modjeski & Masters was allegedly acting under Construction Management Contracts[3] with S&WB and OLD.

C.      Modjeski & Masters, on information and belief, allegedly designed and sold to S&WB and OLD the Design Plans for the excavation and dredging in, under, and in the vicinity of the Bridge Projects, especially on the Hammond Highway 17th Street Canal Bridge.[4]

D.      The actual dredging, excavation and formwork in connection with the Bridge Projects and the bridge pier removal, pier installation, and pile-driving were authorized by S&WB, OLD, EJLD, and USACE. Gulf Coast contracted for the Hammond Highway Bridge Project. James contracted for the London Avenue Canal's Mirabeau and Filmore Avenue Bridge Projects (Contracts DACW29-02-C-001 and

---

[2] Ex. A, pp. A-3 - A-4.
[3] Ex. A, p. A-29.
[4] Ex. A, pp. A-14 – A-15.

7

DACW29-B-0092, (December 4, 2001)) and Boh allegedly for the *London Avenue Canal's, Robert E. Lee Bridge Project.*

E.   A lump sum payment[5] of $125,000.00 for "Excavation and Flood Protection" was paid for by S&WB on December 20, 2001 per Contract No. 4117 (1988) (Hammond Highway Bridge Project). For that reason, the "military contractor defense" is unavailing to Defendants involved in Bridge Project Activities on the 17th Street and London Avenue Canals.

F.   Modjeski & Masters allegedly entered into *Construction Management Agreements* with S&WB and OLD.[6] As Construction Contract Manager, Modjeski & Masters allegedly implemented, coordinated, supervised, approved, and ratified all elements of the Bridge Projects and assumed the responsibility of managing contractors and others, and assumed the responsibility for the safety of all aspects of the Bridge Projects.[7]

---

[5] Ex, A, pp. A-32 – A-33.
[6] There is no definition in Louisiana of "construction manager" since Construction Management is a relatively new outgrowth of the construction profession. Accordingly, a question may exist as to whether any statutes of repose or other protections benefitting Contractors cover "construction managers." Holiday, Jr., James S. *Louisiana Construction Law*, 2007 Ed., at p. 15.
[7] Ex. A, pp. A-29.

## THE 17TH STREET AND LONDON AVENUE CANALS ARE NAVIGABLE WATERS

Plaintiffs incorporate by reference and re-allege each and every allegation in Paragraph 7 and amend Paragraph 7 by further alleging that the 17th Street and London Avenue Canals are navigable waters of the United States because:

1) They are connected to Lake Pontchartrain ("Lake") which is connected to the Gulf of Mexico.

2) They are subject to the *ebb and flow* of the Lake's tidal waters (tidal test, i.e. the mean high water mark).

3) The waters of both Canals are historically and *in fact* navigable because there is a *surface hydraulic connection* (even if intermittent) to the Lake.

4) Each Canal is and does hold and carry pollutants to or from "other waters of the United States".

5) Each Canal is a tributary to other "waters of the United States". U.S. v. Eidson, 108 F.3d 1336, 1342 (11th Cir.1997); Ex Parte Boyer, 109 U.S. 629 (1884).

6) The Canals are <u>not</u> inland bodies of water, and accordingly, "the tidal waters test" is satisfied and that is all that is required. Complaint of Paradise Holding, Inc., 785 F.2d 756, 761 (9th Cir. 1986), cert den'd 479 U.S. 1008 (1986).

> "Because we conclude that none of the activities on the river constituted commerce we held the action was not cognizable in admiralty. **This ruling extends only to inland bodies of water and was not intended to alter the rule pertaining to tidal waters.**" 785 F.2d 756 at 759.

### 7a.

Plaintiffs incorporate by reference and re-allege each and every allegation in Paragraph 7 and amend and further allege that the Bucktown Fleet (17th Street Canal

9

Vessels) and other watercraft and Vessels (admitted by "James") were used and operated on the navigable waters of the London Avenue Canal. (Declaration of Michael Killgore, Doc. 2484-2).



*London Avenue Canal, Filmore Avenue Bridge Project, November 17, 2002.

Photographs of Pumping Station #6 (the largest such pumping station in the world) and of the 17th Street and London Avenue Canal Bridge Projects are set forth in Exhibit B attached hereto, made a part hereof, and incorporated by reference herein.



*17th Street Canal, Pumping Station #6, April 27, 1992.



*17th Street Canal, Hammond Highway Bridge Project, April 15, 2005.



*17th Street Canal, Corps of Engineers photograph, August 22, 1933.

Defendants, especially Gulf Coast, James and Boh used and operated Vessels on the navigable waters of the 17th Street and London Avenue Canals while performing "Activities" such as excavation, dredging, pile driving, and other vibratory Activities. The incidents for which Plaintiffs seek to hold Defendants liable occurred on the navigable waters of the 17th Street and London Avenue Canals while conducting traditional maritime Activities and resulted in damages to Plaintiffs manifested on land and in water. The incidents not only posed threats to maritime commerce but caused damage to maritime commerce arising from traditional maritime activities. (Doc. 3170).

11.

Plaintiffs incorporate by reference and re-allege each and every allegation in Paragraph 11 and amend by further alleging that Activities by Vessels at the "Bridge Projects" were a cause-in-fact and law and/or proximate cause and/or concurrent cause and/or substantial factor in caused the subterranean failure below the levees in the banks of the Canals. In the IPET Preliminary Report, certain LIDAR photographs confirm that under-seepage occurred at and in the vicinity of the Bridge Projects sites which was a cause in fact and law, and/or a proximate cause, and/or a concurrent cause, and/or a substantial factor in bringing about the harm, and physical and emotional damage suffered by Plaintiffs.[8]

---

[8] *See* Doc. 3550-3, Exhibit E.

18.

## MARITIME SALES CONTRACTS

Plaintiffs amend Paragraph 18 by further alleging that the S&WB, OLD, EJLD, and the City of New Orleans, at all times pertinent, purchased from Modjeski & Masters and from Does 1, 2, and 3, "Design Plans", reports, and other documents relating to the excavation and dredging in, under, and in the vicinity of the Bridge Projects.  Plaintiffs incorporate by reference herein and further allege the facts set forth in Doc. 3170.

18(a).

## MARITIME CONSTRUCTION CONTRACTS

Plaintiffs allege that Defendants entered into maritime contracts for the Bridge Projects and elements thereof, specifically, but without limitation, maritime contracts for the sale of "Design Plans," materials, supplies, and components, and maritime contracts for personal services of Defendants as Architects, Engineers, Contractors, Construction Contract Managers, Consultants, and Geotechnical Engineers to accomplish the Activities required for the Bridge Projects.

18(b).

Plaintiffs allege that James (formerly known as Angelo Iafrate Construction, L.L.C.), on or about December 12, 2001, entered into a Bridge Project contract with USACE, a joint-venturer/partner with OLD, S&WB, EJLD, and the City of New Orleans, using Vessels (Contract #: DACW29-02-C-0013) on the Mirabeau and Filmore Avenue

14

Bridge Projects on the London Avenue Canal where maritime Activities with Vessels on navigable waters occurred.

18(c).

Plaintiffs allege that sometime in 2001, Gulf Coast entered into a Bridge Project contract with USACE, a joint-venturer/partner with OLD, S&WB, EJLD, and the City of New Orleans, using Vessels (Contract # and Contract not provided despite requests) on the navigable waters of the 17th Street Canal's Hammond Highway Bridge Project using Vessels following "Design Plans" for the Hammond Highway Bridge.

18(d).

Plaintiffs allege that sometime in 2003, Boh Bros. Construction Co., L.L.C. entered into a Bridge Project contract with USACE, a joint-venturer/partner with OLD, S&WB, EJLD, and the City of New Orleans, using Vessels (Contract # and Contract not provided despite requests) on the Robert E. Lee Bridge Project and allegedly conducted similar Activities on the London Avenue Canal Bridge Project.

18(e).

Plaintiffs allege that Gulf Coast, on the Hammond Highway Bridge Project, entered into an excavation and dredging contract with S&WB and OLD, on or about April 15, 1988 or December 20, 2001 (S&WB Contract #: 4117)[9].

---

[9] Ex. A, pp. A-34 -- A-39.

18(f).

Plaintiffs allege that the subject matter of the above contracts are maritime in nature involve Activities using Vessels in navigable waters relating to Activities such as repairs, operation, canal excavation and dredging, in, under, and in the vicinity of the Bridges and the repair, demolition and removal of bridge pilings, driving of bridge pilings, reconstruction, and flood-proofing of the Bridges, including the Bridge Abutments.

18(g).

Plaintiffs allege that the Activities of Gulf Coast on the Hammond Highway Bridge Project, in particular, with the use of Vessels north and south of the Hammond Highway Bridge, violated contract and regulatory limits on vibration as confirmed in correspondence, attached hereto, and incorporated by reference herein and made a part hereof in Exhibit A (pp. A-45 – A-51).   These repeated violations subject Gulf Coast to the application of the Pennsylvania Rule in Admiralty and constitute breaches tort duties as well.

16



*Drawing attached to "Report of Vibration Monitoring," January 16, 2004, Alpha Testing and Inspection, Inc.

18(h).

Plaintiffs allege that Gulf Coast, James, Boh, S&WB, EJLD, OLD, the City of New Orleans, and Modjeski & Masters were fully aware of the hazards and soil conditions on and in the navigable waters and at, under, and in the vicinity of every Bridge Project, all of which was brought to their attention, at a minimum, in the Corps of Engineers Board of Contract Appeals in The Matter of Pittman Construction Co., Inc. (Contract No. DACW29-93-C-008).

Defendants, with such knowledge, knew or should have known that the Modjeski & Masters Design Plans and those of others would be relied upon and used by Vessels to accomplish the Bridge Project Activities, and failed to adequately warn the Vessel

17

operators of the subterranean soil conditions and hazards that vibratory Activities conducted by Vessels on the Bridge Projects would have an effect on the subterranean Canal banks and water bottoms near and in the vicinity of the Bridge Projects.[10] Defendants actions were cause in fact and law, and/or proximate cause and/or concurrent cause and/or proximate causes, and/or substantial factors in the harm and emotions and physical damage to Plaintiffs.

18(i).

Plaintiffs allege that Defendants breached duties in contract and in tort arising from the sales, of plans, material, supplies, and components and in failing to render professional engineering, construction, and Construction Management Contract personal services of inspection, supervision, observation, and professional care.  The Activities of Defendants who ratified and implemented the "Design Plans" and conducted Activities and other personal services in navigable waters for the Bridge Projects, were causes in fact and in law, and/or concurrent causes, and/or proximate causes, and/or substantial factors in bringing about the harm, and physical and emotional damages sustained by Plaintiffs.

18(j).

Plaintiffs allege that Defendants, fully knowledgeable of the Canals' hydrology and topography failed to stop the Bridge Projects.  Plaintiffs further allege that James, in particular, was fully aware of the compromised and weakened sub-soil conditions along

---

[10] *See* Declaration of H.J. Bosworth, P.E., Doc. 3551-4.

the banks of the 17th Street and London Avenue Canals and the dangers presented.  In fact, Mr. Robert Chautin, the Project Superintendant for T. L. James Company (predecessor in interest to, "James") testified in 1998 before the Corps of Engineers Board of Contract Appeals in The Matter of Pittman Construction Co., Inc. (Contract No. DACW29-93-C-008) that, like Pittman, James encountered soil problems and was aware of soil conditions in the construction of concrete formwork on a London Avenue 1993 Project.[11]

Plaintiffs allege that Mr. Chautin was employed by Burke-Kleinpeter, Inc., in 2004 and involved in the design-build contract with OLD and EJLD for the construction of the Mounes (I-10) Pumping Station and its drainage into the navigable water of the 17th Street Canal of an additional 1,100 cfs on top of the already-increased capacity of Pumping Station #6 10,600 cfs.  Burke-Kleinpeter, Inc., also did work on the jetty at the entrance to the 17th Street Canal at Lake Pontchartrain.  Mr. Chautin and his employers superior knowledge of the 17th Street Canal's navigable water and hydrology, including soil conditions at all locations on the Canal.  With this information, Mr. Chautin and his employers had a duty to inform USACE and Defendants and to ask whether the "jetty work" at the mouth of the Canal could act as a funnel for surge.

As such, Defendants were negligent and breached contractual and tort duties. Each failed to warn third parties, like Plaintiffs, of the dangers and hazard of the various related Projects and failed to use reasonable care. Defendants were a cause in fact and

---

[11] Corps of Engineers Board of Contract Appeals, ENG-BCA-N06198 at p. 16.

law, and/or proximate cause and/or concurrent cause and/or a substantial factor in bringing about the harm, emotional and physical damages sustained by Plaintiffs.

18(k).

## UNSEAWORTHINESS

Plaintiffs allege on information and belief that Modjeski & Masters was the Construction Manager Contractor for the 17th Street Canal Projects, with other Defendants in the capacities of Designers, Engineers, Architects, Contractors, Consultants, and Construction Contract Managers. Defendants, in particular Gulf Coast, James and Boh in their capacity as Vessel owners, operators and managers knew or should have known of the dangers associated with pile removal and driving, and implementing excavation and/or dredging "Design Plans," and performing other vibratory Activities with Vessels in navigable waters in, under, and in the vicinity of Bridge Projects.

Defendants permitted Vessels to be used and furnished those Vessels and their personnel with alleged defective and inadequate "Design Plans" which all knew or should have known would be relied upon and followed (similar to negligently designed navigation charts). Gulf Group, James and Boh created unseaworthy conditions aboard their Vessels. These unseaworthy conditions were a cause-in-fact and law, and/or proximate cause, and/or concurrent cause, and/or a substantial factor in bringing about the harm, emotional and physical damages sustained by Plaintiffs.

20

Plaintiffs allege that those Vessels and their managers, owners, operators, crew and personnel are strictly liable to Plaintiffs for the harms and emotional and physical damages caused as a result of the unseaworthy acts and conditions.

18(l).

Plaintiffs incorporate by reference and re-allege each and every allegation in Paragraph 18-18(k) and further amend to allege that in total disregard of the safety of others, Defendants were negligent and reckless and were causes in fact and law, and/or proximate causes, and/or concurrent causes, and/or substantial factors in bringing about the harm, physical, and emotional damage suffered by Plaintiffs.

18(n).

Plaintiffs amend and further allege that on or about February 23, 1994, and thereafter, the Louisiana Department of Transportation and Development ("LADOTD") entered into Agreements with OLD in which OLD agreed to "provide third-party liability insurance" and to hold harmless and indemnify LADOTD as an Agreement provision. OLD further agreed to hold harmless, indemnify, and defend LADOTD from any liabilities which "may develop" from utilizing the approved agency's accepted standards of practice" for bridge construction.

Plaintiffs allege that in 1997, in Resolution 7-072397[32], OLD as a local sponsor (joint venturer/partner) with S&WB, the City of New Orleans, EJLD, and USACE granted Assurances to the federal government and LADOTD and promised to hold and

save the United States (USACE) free from damages due to construction, maintenance, and operation of the Bridge Projects.

79(a).

## STIPULATION POUR AUTRUI (MARITIME THIRD-PARTY BENEFICIARY CONTRACT)

Plaintiffs allege that the legal relationship among and between USACE, LADOTD, and OLD involved obligations owed by USACE and LADOTD to third-party beneficiaries such as Plaintiffs, which OLD agreed to discharge. OLD, pursuant to various transfer and assumption agreements, agreed to assume the obligations that USACE and LADOTD imposed as a condition of the "Act of Assurances" indemnities, insurance requirements and assumptions of liability which, under Louisiana law, requires OLD to pay and reimburse Plaintiffs for the harms, emotional and physical damages to their property. The operative nucleus of facts in this case indicates that the cause-in-fact and law, and/or proximate cause, and/or concurrent cause, and/or substantial factors of bringing about the harm and emotional and physical damages sustained by Plaintiffs which arose from the very liabilities USACE and LADOTD foresaw and for whom OLD, by transfer and assumption, is liable to Plaintiffs. The above Agreements constitute *stipulations pour autrui* in favor of Plaintiffs.

---

[x] Attached hereto and incorporated by reference herein and made a part hereof as Exhibit E.

22

79(b).

Plaintiffs additionally amend to allege that the possibility of future liability for damages or takings arising from as yet unidentified Vessel owners/operators who supplied Vessels in navigable waters on the Bridge Projects, and whose Activities were in fact foreseen, and, in fact, were a cause in fact and in law, and/or proximate cause and/or concurrent cause, and/or substantial factor in bringing about the harm, and emotional and physical damage suffered by Plaintiffs were brought about by the joint venture/partners and Defendants and arose from Activities, wrongs, and Agreements anticipating the very harm and damages Plaintiffs sustained. As such, OLD must pay for and reimburse Plaintiffs for its loss and damages.

Plaintiffs allege that under Louisiana Civil Code Article 1978, a *stipulation pour autrui* in favor of Plaintiffs arises from the "Acts of Assurances," and indemnification and insurance undertaken by OLD and S&WB in the contracts and Resolutions for the Bridge Projects. Plaintiffs hereby demand payment from OLD and S&WB and possibly other Defendants under other contracts not yet provided for the harm, physical and emotional damages suffered by Plaintiffs.

81.

Plaintiffs pray for judgment against Defendants and that the Court find in their favor that the Defendants are jointly and severally liable for the loss and damages asserted, emotional and psychological as well as punitive damages, for just compensation to the full extent of their loss and damages and any additional damages or relief this

23

Court deems equitable, just and proper, including attorneys' fees, expert witness fees, legal interest, costs, and litigation expenses under La. R.S. 13:5111, for pre and post-judgment interest and for losses and damages as third party beneficiaries.

82.

Plaintiffs amend paragraph 82 to request trial by jury, as applicable, under Rule 38(e) of the Federal Rules of Civil Procedure.

Respectfully submitted,

WILLIAM E. O'NEIL (#10213)
THE O'NEIL GROUP, L.L.C.
701 N. CAUSEWAY BLVD.
METAIRIE, LA 70001
(504) 833-4770
weo@theoneilgroup.com

-and-

DON M. RICHARD (#11226)
ATTORNEY AT LAW
701 N. CAUSEWAY BLVD.
METAIRIE, LA 70001
(504) 834-9882
don@dmr-law.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing has been served on

all counsel of record via U.S. Mail, e-mail, hand delivery, or facsimile this 26th day of

June, 2007.

New Orleans, Louisiana this 26 day of _____, 2007.


_____
WILLIAM E. O'NEIL

25