# EXHIBIT A

# Agenda

## Contract 02-C-0016, 17th St. Outfall Canal, Metairie Relief, Hammond Hwy Complex Progress Meeting, Friday, 10 January 2003, 10:00 @ New Orleans District Area Office

1. <u>Attendance Roster</u>.

2. <u>Purpose</u>:  To review current progress and submittal review, and discuss issues that must be resolved to ensure continued progress.

3. <u>Discussion Items</u>:
   a.  Job Progress and upcoming activities
   - The following activities were completed, underway or scheduled to start:

     <u>Completed</u>:
     - ✓ Drive H-piles at east abutment.
     - ✓ Casting 24" concrete piles
     - ✓ Drive 24" concrete piles for south portion of Bent #4
     - ✓ Construction of crane platform
     - ✓ Construction of concrete pile driving templates (Bents #1, #2, & #3)

     <u>Underway</u>:
     - ✓ Removing the existing roadway, curbs and gutters and making modifications of the utilities in the area in preparation for the Phase 1A roadwork.
     - ✓ Installation of Storm Drainage System (Landside Run-off)
     - ✓ Casting girders
     - ✓ Casting 12" piles (swing gate at Orpheum Ave.)
     - ✓ Degrading for parking lot
     - ✓ Clearing and Grubbing for Orpheum Detour Road

     <u>Scheduled</u>:
     - ❑ Phase 1 Dredging on south side of bridge.
     - ❑ Roadwork on the southeast side of the existing bridge in Orleans Parish.
     - ❑ Form and place south portion of east abutment
     - ❑ Form and place south portion of Bent #4
     - ❑ Drive 24" concrete piles for south portion of Bent #1, #2, & #3
     - ❑ Parking lot retaining wall
     - ❑ Drive down existing sheets for Orpheum Detour Road
     - ❑ Degrade levee for Orpheum Detour Road
     - ❑ Close South portion of Orpheum Avenue
     - ❑ Levee embankment

   b.  Submittal Review
   - Outstanding submittals
   - Submittals that need to be turned in / resubmitted

A-1

# Agenda

### Contract 02-C-0016, 17th St. Outfall Canal, Metairie Relief,
### Hammond Hwy Complex Progress Meeting,
### Friday, 10 January 2003, 10:00 @ New Orleans District Area Office

| Trans # | Item # | Description | Suspense Date | Status |
|---|---|---|---|---|
| 0091 | 32 | 12" pile driving equipment | NOAO – 2 Jan 03 | |
| 0028d | 58 & 92 | Fly ash for concrete mix design | NOAO – 17 Jan 03 | |
| 0091 | 69 | Retaining wall forms @ parking lot | NOAO – 17 Jan 03 | |

c.  Review Status of Outstanding Modifications

1.  CIN-003 -- Steel sheetpile driving at SE corner of bridge (Special T). Ready to negotiate.
2.  CIN-004 – Finalizing modification.
3.  CIN-008 – Removal of II Tony's Sign. Preparing modification.
4.  CIN-009 – Definitization of CO-001 – Raise Hurricane Protection. Contractor submitted proposal for direct costs, but still waiting on indirect cost proposal.
5.  CIN-010 - Orpheum Detour Roadway. Contractor submitted proposal on 18 Nov 02. Preparing Change Order and preparing Government Estimate.
6.  CIN-011 – Change catch basin inlet #128 to a full depth manhole. Waiting on contractor's proposal.
7.  CIN-012 – Addition of dividers to Hammond Highway bridge. Preparing modification.
8.  CIN-013 - TS Isidore. Ready to negotiate.
9.  CIN-014 – Hurricane Lili. Contractor submitted proposal for direct costs, but still waiting on indirect cost proposal.
10. CIN-015 – Additional dredging. Contractor has submitted proposal. What is status?
11. Addition of layout drawings (xy coordinates). Waiting on contractor's proposal.
12. Minor discrepancies in plans (2nd modification). Preparing RFP.
13. RFI #001 – Removal of debris from L/S run-off excavated material.
14. RFI #002 - Additional sandfill required to backfill the storm drainage system trench in the area of the Coast Guard Ramp.

d.  Lingering Questions/Issues to be Answered

1.  Detour Roadway modification

   ➢ Contractor has begun to clear and grub. A change order will be issued to start the remaining work for the detour road. The contractor will soon begin degrading levee and driving sheetpile below roadway.
   ➢ Relocation of two power poles, sign and lighting on west side of II Tony's.

A-2

June 18, 1986

Engineering Division
Projects Engineering Section


Mr. Harold J. Gorman
Executive Director
Sewerage & Water Board of New Orleans
Room 5W02, City Hall - Civic Center
New Orleans, Louisiana 70165

Dear Mr. Gorman:

Reference is made to your May 21, 1986 letter and the
May 14, 1986 Resolution concerning our General Design
Memorandum (GDM) on the 17th Street Canal, one part of the
Lake Pontchartrain Hurricane Protection Project (High
Level Plan).

The current schedule for this project requires that we
submit to our Division Office the completed GDM in
November 1987.  Our GDM will address two alternative
plans, a gated structural plan at the lakefront, and a
parallel levee plan along the canal, to provide
protection against the design hurricane.

We have been coordinating with Modjeski and Masters
who has been under contract with both the Levee Board and
the Sewerage & Water Board of New Orleans on the 17th
Street Canal Project.  Based on a preliminary review of
their data, the parallel levee plan, designed and
constructed to High Level Plan standards, would be cost
competitive with the frontline plan.  There are, however,
two aspects of the Modjeski and Masters plan which remain
to be resolved.

The first of these relates to the treatment of the
several bridges crossing the 17th St. Canal.  Modjeski and
Masters proposes flood proofing at the bridges, but does
not provide data sufficient for a determination of the
adequacy of this approach.  We commented to this effect in
our letter to the Orleans Levee District dated
September 30, 1985.  To date there has been no response.

Encl 2

A-3

-2-

The second problem relates to the need for measures to insure the stability of Pumping Station No. 6 for the differential heads which could obtain with the high level plan. We feel that, in the absence of additional supporting data to the contrary, such measures are required as part of the parallel levees plan. We commented to this effect in the letter referred to above. Again, there has been no response.

We are proceeding with our GDM on the schedule provided to the Orleans Levee District in our September 30, 1985 letter and discussed that schedule with, inter alia, Messrs. Sullivan and Bodet of your staff at a meeting on April 18, 1986. We appreciate the importance to you of an early determination of the plan to be adopted for providing hurricane protection along the 17th St. Canal. We are reluctant, however, to make such a determination without the full benefit of your views and those of the Orleans and East Jefferson Levee Districts. At the outset, we indicated that we would favor the parallel levees plan if it could be demonstrated that that plan could be constructed at a cost comparable to that for the frontline plan. The studies undertaken by Modjeski and Masters were, as we understand it, partly for the purpose of insuring that the costs for the parallel levees plan not be overstated. Thus, we see the completion of those studies as the key to advancing the time when reasonable assurance of what the Federal plan will be, can be given.

If firm data on the two problem areas referred to previously are forthcoming by 1 August of this year, we believe that we will be able to offer reasonable assurance as to what the selected Federal plan will be by November 1986. While this determination will have to be confirmed through completion and review of the GDM, it should nevertheless provide a basis on which you can proceed with reasonable confidence that confirmation will, in fact, be forthcoming; and it will also provide a basis for reviewing the GDM schedule to determine whether its acceleration is practicable.

Sincerely,

Frederic M. Chatry
Chief, Engineering Division

Copies Furnished:

Mr. Arthur R. Theis
Deputy Chief Engineer
Department of Transportation and Development
P.O. Box 94245
Baton Rouge, Louisiana 70804-9245

PLMPR
LMNED-SP

BARTON
LMNED-SP

HARRINGTON
LMNED-S

JUDLIN
LMNED-D

PIXXIOL
LMNFD-P

CHATRY
LMNED

A-4

A0006791

September 30, 1985

Engineering Division
Projects Engineering Section

Mr. Earl J. Magner, Jr.
Chief Engineer
The Board of Levee Commissioners
Orleans Levee District
Suite 202 - Administration Building
New Orleans Lakefront Airport
New Orleans, Louisiana 70126

Dear Mr. Magner:

Reference is made to your June 20, 1985, letter concerning
The Lake Pontchartrain and Vicinity Hurricane Protection
Orleans Avenue Outfall Canal, London Avenue Outfall Canal and
the 17th Street Outfall Canal which transmitted for our review
a report entitled, "A Study of High Level Flood Protection 17th
Street Outfall Canal OLB Project No. 2043-0222" and to our
September 17, 1985 phone conversation about same.

We have reviewed the referenced report and offer the
following technical and general comments:

a.  Section I, Introduction.

The first paragraph on page 1 states that credits
for subject work would be granted to the Orleans Levee District
(OLD) under any project funded jointly by the Corps and
OLD.  This paragraph should be corrected to state that, if
approved, the subject work would be creditable towards the
OLD's contribution for the Lake Pontchartrain, LA & Vicinity
Hurricane Protection project.  Preparation and higher authority
approval of a General Design Memorandum, GDM, for the 17th
Street Canal will be necessary to determine the recommended
plan.  If your plan proves to be the recommended plan, which
appears likely at this time, then the GDM will detail the
creditable items of work and their associated costs.  If the
recommended plan proves to be a less costly plan than your
plan, then that plan would establish the basis for maximum
federal participation for cost-sharing purposes.

A-5

-2-

b.   Section III, Design Parameters.

(1)   The design elevations used in this study represent "net grades" and do not include additional height to account for settlement. The report does not indicate whether or not the effects of settlement were considered in the design and cost estimates.

(2)   Page 6, paragraph B, should read "The coefficient of lateral pressure, K, for piles in tension in sand is .75 for displacement piles and .5 for nondisplacement piles unless values are obtained from pile tests."

c.   Section IV, Levees - Canal Dredged.

(1)   In paragraph A and B, the report recommends, for economic reasons, leaving the steel sheetpiling uncapped. Uncapped sheet piling is subject to corrosion, the effects of which may, with time, weaken the structure. There is also the aesthetic consideration that one should consider when floodwall work is accomplished in a high visibility area. It is generally accepted that capped sheetpiling is more aesthetically pleasing than uncapped. Because of these reasons, we do not recommend using uncapped sheetpiling.

(2)   This report states that a pile supported T-wall for Alternatives 1, 2, and 4 is required between the Lake and Hammond Highway. The wall stickup could be decreased from 8 to 5 feet by adding 3 feet of fill on the protected side crown. The resulting section with an "I" type floodwall would be stable and the decrease in stickup should satisfy deflection criteria. It is recommended that the consultant for the OLD reanalyze this floodwall reach utilizing an I-wall (a more economical floodwall). A preliminary reanalysis performed by this office indicates that an I-wall would satisfy the project's criteria if the levee cross-section shown on Appendix C, enclosure 1, is modified by raising the levee crown on the protected side of the wall by 3 feet.

(3)   The cross sections for alternative 2 (Crown Setback with Vertical Canal - Side Levee Slope) was informally reviewed by this office. Stability analysis plates similar to Enclosure 1 in Appendix C for alternative 2 should be submitted for formal review along with the detailed final analyses for the floodgates, bridge work, and other improvements by the

A-6

-3-

Orleans Levee Board if the high level protection plan for the 17th St. Outfall Canal is to be adopted.

  d. Section VI, Bridges.

     (1)  Sealing of Bridges.  The study provides general details of the sealing of the bridge decks and the anchoring of the substructures, however, the report does not address how the bridge decks would be anchored.  The detailed design for this proposal must be submitted for our review to insure this work satisfies the project's criteria.

     (2)  The Highway Department (LADOTD) has not officially submitted their proposal for sealing and anchoring the Hammond Hwy. bridge.  Our previous review of the proposed widening of this bridge was limited to evaluating the impact of the bridge work on the existing flood protection on the west bank of the canal.  During a meeting held on July 12, 1985 with LADOTD, we were informed that the new bridge work provides waterproofing of the deck expansion and the existing deck would remain unsealed.  This proposal does not satisfy the project's criteria.

     (3)  It is unclear as to whether or not the LADOTD in the sealing and anchoring design for the Hammond Hwy. bridge considered wave loading which the bridge would be subjected to during the Design Storm.  This additional loading is a primary concern for design of this feature.

  e.  The subject report addresses only the cost of protection for the Orleans Parish side of the 17th Street Canal.  In order to compare this plan's cost to the cost of other plans i.e., fronting protection at the lake, it will be necessary to develop the comprehensive cost of your plan.  The comprehensive cost must include all costs for the plan i.e., west bank portion and the closure in front of the pumping station.

     As we discussed in our phone conversation, since the Orleans Levee Board is most anxious to have a ruling on credit for your work, we will initiate our GDM studies for the 17th Street Canal.  Preparation of the GDM is expected to take about 24 months.  As soon as we are in a definitive position to recommend a tentatively selected plan, we will notify you.  In the meantime, we will keep you informed about the progress in this area.

A-7

Mr. Stutts/dn/2614

-4-

Your office has previously furnished the soils data taken for your designs on the 17th Street Canal.  To aid us in preparing the GDM, it is requested that you furnish all the field data taken in connection with your designs.  In particular, we would like to have your plotted cross-section data and copies of the field notes so that we can avoid duplication of effort and minimize the cost in report preparation.

Should you have any questions concerning our review comments, please contact Mr. Vann Stutts at 862-2614.

Sincerely,


Frederic M. Chatry
Chief, Engineering Division

STUTTS
LMNED-SP

BARTON
LMNED-SP

HARRINGTON
LMNED-S

SOILS
LMNED-H

JUDLIN
LMNED-D

RUCCIOLA
LMNED-F

CHATRY
LMNED

A-8





**DEPARTMENT OF THE ARMY**

NEW ORLEANS DISTRICT, CORPS OF ENGINEERS

P.O. BOX 60267

NEW ORLEANS, LOUISIANA 70160-0267

March 16, 1987

REPLY TO
ATTENTION OF:

Engineering Division
Projects Engineering Section

Mr. Charles Higgins
Director of Planning and Design Division
Louisiana Department of
Transportation and Development
P.O. Box 94245
Baton Rouge, Louisiana 70804-9245

Dear Mr. Higgins:

Reference is made to your March 2, 1987 letter concerning
the 17th Street Canal Bridge Crossings in Jefferson Parish.
I concur with your assessment of the need for all concerned
parties to review design plans in an expeditious manner, and
I assure you that this office will make every effort to minimize
any delays.

Relative to your question concerning placement of pile bents
within the levee section, I offer the following observations:-

In general, we would prefer not to have pile bents located
within the theoretical levee section inasmuch as there exists
a potential for development of a seepage path between strata
of permeable and impermeable materials. However, as you might
expect, this potential would certainly be site-specific.
Therefore, if there were compelling reasons (economic or
otherwise) to place the bents within the levee section, we would
consider the proposal on a case-by-case basis.  As I mentioned
in paragraph 5 of my October 3, 1986 letter, it is likely that
the least costly alternative for the bridges, which would also
allow for a portion of the bridge's substructure to be creditable
under the hurricane protection project, would employ the bridge
abutment as part of the line of flood protection.  Provisions
for seepage cutoffs at the abutments would likely have to be
a part of the bridge plan.  If the bridge replacement proposal
employs an abutment arrangement as outlined above, we will be
glad to meet with your design engineers and also provide your
office with our design criteria.  We will also conduct any
necessary reviews of designs, as your office develops them and
submits them to this office. This arrangement will hopefully
provide for the quickest way to develop an acceptable plan for
all agencies concerned.

The recommendation for providing "temporary" flood protection
at the existing Hammond Highway Bridge may be a viable
alternative, if it is LDOTD's intent to eventually abandon this

A49

bridge and, in the future, place the new crossing in the vicinity of West Esplanade Ave. However, if LDOTD's intent is to also keep the existing bridge open as a secondary local traffic route, then we would have to develop a permanent flood protection plan for the existing Hammond Highway Bridge. I would appreciate it if you could provide this office with LDOTD's position.

We are currently evaluating two alternatives for providing hurricane flood protection at the 17th Street Canal. The first involves improvements of the levee system paralleling the canal on both banks from Lake Pontchartrain to Pumping Station No. 6. The second provides for construction of an automatic floodgate in the canal at the lake. In order that the essential flood protection for both Jefferson and Orleans not be further delayed, we propose to proceed with our designs on the basis that action to deal with the Hammond Highway and I-10/I-610 crossings by your agency is not in early prospect. This means that our alternate hurricane protection plan for improving the parallel levees would include floodgates at the Hammond Highway Bridge, and reconstruction of the I-10 and I-610 crossings. With the large costs involved in the latter crossings chargeable to the hurricane protection plan, the alternate plan for fronting protection apparently will be substantially less costly than the improvements of the lateral levees, and under the circumstances, would necessarily serve as the basis for setting the limits for Corps participation in the costs for constructing either alternate.

We would be happy to meet with you to discuss this matter.

Sincerely,


Frederic M. Chatry
Chief, Engineering Division

Copies Furnished:

Ms. Geneva P. Grille, District Design
Water Resources and Development Engineer
Department of Transportation and Development
7252 Lakeshore Drive
New Orleans, Louisiana 70124

Mr. John Evanco
District Administrator
Louisiana Department of
Transportation and Development
P.O. Box 9179
Bridge City, Louisiana 70094

A-10

-3-

Mr. John Lauricella, Jr.
President, Board of Commissioners
East Jefferson Levee District
203 Plauche Court
Harahan, Louisiana 70123

Mr. Harold J. Gorman
Executive Director
Sewerage & Water Board of New Orleans
Room 5W02, City Hall - Civic Center
New Orleans, Louisiana 70165

Mr. C.E. Bailey, Chief Engineer
Board of Levee Commissioners
Orleans Levee District
Suite 202, Administration Building
New Orleans Lakefront Airport
New Orleans, Louisiana 70126

A-11

PARTNERS

W. B. CONWAY
H. H. SNYDER
C. F. COMSTOCK
J. J. SCHERRER
J. M. KULICKI

SENIOR ASSOCIATES

R. W. CHRISTIE
C. T. FORTRAN
H. E. WALDNER

CONSULTANTS

T. R. KEALEY
R. E. FELSBURG

**MODJESKI AND MASTERS**
CONSULTING ENGINEERS
*Founded 1893*

1055 ST. CHARLES AVE.
NEW ORLEANS, LA. 70130
TELEPHONE 504 - 524-4344

November 12, 1987

ASSOCIATES

H. E. ECKHOFF
T. Y. SOONG
J. E. PRICKETT
B. P. STRAIN, JR
D. F. SORGENFREI
B. T. MARTIN, JR
J. L. McKENNEY
G. A. MURRAY
D. H. LeROY
R. A. LITTLE
P. C. PIERCE
L. V. BORDEN
E. W. ROHRBAUGH

JN 0908

Mr. Frederick M. Chatry,
Chief-Engineering Division
New Orleans District,
Corps of Engineers
Post Office Box 60267
New Orleans, Louisiana  70160

RE:  17TH STREET CANAL PARALLEL FLOOD PROTECTION
     PHASE 1B – HAMMOND HIGHWAY TO SOUTHERN RAILWAY
     OLB PROJECT NO. 2043-2027

Dear Mr. Chatry:

We have discovered that in our haste to deliver the 30% Plans and
Specifications for the referenced project, we failed to provide some
geotechnical information that we feel you will need to complete your
review.  Hence you will find herewith the following two items:

   1.  Land-side and Canal-side levee slope stability analyses for
       the reach of the canal from Station 636+00 to 638+31.  We are
       sending this analyses because we have varied our cross sec-
       tion significantly from the earlier analyses that were per-
       formed by Eustis.  This change in the cross section allowed us
       to move the canal more to the East in this reach and perform
       partial dredging of the canal without affecting the existing
       stability of the Jefferson side levee.  Please note that we
       have discovered for this reach that our preliminary plans do
       not reflect the same sheet pile tip elevation as shown in the
       calculations.  This has been corrected on our original set of
       plans.

   2.  We are also sending canal-side analyses for typical reaches of
       the Jefferson levee to show that the partial dredging shown
       in the plans does not adversely affect the factor of safety of
       that levee.

We have prepared the plans showing partial dredging, even though our
permit was for completed dredging of the canal, due to no positive
indications from the Jefferson Levee District that they will par-
ticipate in the project.  As you know, it is the wish of the Orleans
Levee Board to improve flood protection along the 17th Street Canal as
soon as possible.  Because the Sewerage and Water Board can realize
both drainage and financial benefits by partially dredging the canal
at the same time as the levee work, they have decided to go ahead with
the partial dredging.  The Sewerage and Water Board will complete the
dredging of the canal at the time the Jefferson levee is modified

A-12

## MODJESKI AND MASTERS

November 12, 1987

Mr. Frederick M. Chatry,
Chief-Engineering Division                              Page 2


We are also attaching the preliminary cost estimate for this phase of
the project.  Please note that this estimate assumes no work will be
done to the bridges in the phase.  It is the intention of the Orleans
Levee Board to do all bridge work under a separate contract.

If your should have any questions regarding the attached analyses or
the earlier submitted plans, please call.

                              Very truly yours,

                              MODJESKI AND MASTERS
                              Engineers



                              Barney T. Martin, Jr.

BTM:gls

cc:  Mr. Ed Bailey
     Mr. Joseph Sullivan
     Mr. John Holtgreve

A-13



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

REPLY TO
ATTENTION OF

January 4, 1988

Engineering Division
Structural Design Section

Mr. Barney T. Martin, Jr.
Modjeski and Masters
Consulting Engineers
1055 St. Charles Avenue
New Orleans, Louisiana  70130

Dear Mr. Martin:

Reference is made to your letter dated November 2,
1987 to Mr. Ed Bailey, Chief Engineer of the Orleans
Levee District, and to your letter dated November 12,
1987 to this office, in which you requested our review
of the in-progress plans and specifications for the
17th Street Canal Parallel Flood Protection, Phase 1B,
Hammond Highway to Southern Railway, OLB project number
2043-2047.

We are considering changes in the factors of safety
used in determining penetration of I-wall sheet piling
and changes in the method of determining I-wall
deflections.  We will let you know more by the end of
January 1988.  However, we have reviewed the subject
plans and specifications based on present criteria and
offer the following comments:

a.  Sta. 636+00 to Sta. 638.31.  Our preliminary
analysis indicates that a higher tip penetration for
the steel piling in this area can be obtained by
applying submerged soil weight on the floodside of the
floodwall and also by raising the levee crown to
elevation 11.0 National Geodetic Vertical Datum.

b.  A transition in sheet pile tip penetration is
required for the sections between station 589+00 and
station 590+00, station 614+00 and station 615+00, and
between station 635+00 and station 636+00.

c.  Station 625+00 to Sta. 635+00.  Our preliminary
analysis indicates that a lower tip penetration of the
sheet piling than the penetration shown on the plan is
required to satisfy the floodwall stability into the
canal.

MODJESKI-E2
01208

A-14

-2-

d.  Based on the information presented in the
typical sections, drawing number 3, a discontinuity in
the sheetpile wall would occur at station 589+00.  This
should be clarified.

e.  Our stability analysis of the floodwall reaches
described in enclosures 1 through 8, indicates that a
more economical design for the floodwall in those
reaches can be obtained by using the floodwall layout
depicted on the enclosures.  It is recommended that you
revise the subject plans to reflect the floodwall
layout shown on the enclosures.

f.  Since the dredging of the canal will not extend
into the Jefferson Parish side, the potential for scour
of the levee on this bank of the canal will exist.  To
be able to detect such scour, control lines, as shown
on enclosures 9 through 13 will be required.  These
control lines should be added to the drawings.
Additionally, survey cross-sections of the existing
levee and canal bank, with initial cross-sections of
the levee and dredged canal immediately after
construction and cross-sectional surveys taken on a
yearly basis thereafter, must be provided to this
office.  These surveys are required to detect erosion
into the control lines, which if it occurs, could cause
failure of the subject levee.  Should erosion beyond
the control lines occur, the Sewerage and Water Board
of New Orleans will be responsible for taking
corrective action at their own cost.

If there are any questions concerning our
requirements, please let us know.

Sincerely,

Frederic M. Chatry
Chief, Engineering
Division

Enclosures





STA 568+00 TO STA 589+00
ORLEANS SIDE

EL 11.6 ▽

L.W.E -5.0 ▽

EL -18.4

Gross EL 14.1 — Net EL 13.6

EL 2.5

Theoretical Section

11

HEAVAIT

FLOODSIDE TOE SAME AS
MODJESKI + MASTERS PLANS

TIP EL -30.7

DEGRADE

2.5

NET EL 5.5

EL 2.0

EL -3.0

EL -4.0

- 34.0
OR 2.5

SCALE 1" = 20'
ELEVATION IN FEET NGVD

MODJESKI-E2
01211

A-17    ENCL. 2



STA 589+00 TO STA 614+00
ORLEANS SIDE

EL 11.6

GROSS EL 14.1

L.W.E. -5.0

1 VON 3H

THEORETICAL SECTION

EL 13.4

EL 2.5

18.5

Nret EL 13.6
DEGRADE

NET EL 7.0

EL 3.5

EL 2.6

EL -2.5

TOP EL 14.6

FLOODSIDE TOE SAME AS MODJESKI + MASTERS PLANS

SCALE : 1" = 20'

MODJESKI-E2
01212

A-18    ENCL. 3

STA. 614+00 TO STA. 625+00
ORLEANS SIDE

GROSS EL. 14.1

NET EL. 13.6

EL 116

Degrade
EL. 4.0

EL 4.5

L.W.E. ▽ EL -5.0

1V ON 3H

EL -18.4

THEORETICAL SECTION

FLOODSIDE TOE SAME AS MODJESKI & MASTERS PLAN

SCALE: 1" = 20'

NET EL 8.0

EL. 7.0

TIP EL. -7.02

MODJESKI-E2
01213

A-19

ENCL. 4

STA. 625+00 TO STA C35+00
ORLEANS SIDE

GROSS EL. 14.6

∇ EL. 12.1

∇ EL. -5.0   L.W.E.

EL. -174

Degrade

EL. 3.5'

17.5'

THEORETICAL SECTION 2.

1V ON 3H

NET EL. 14.1

NET EL 8.0
EL 7.5

8'

FILL

TIP EL. -16.8

FLOODSIDE TOE SAME AS MODJESKI & MASTERS PLANS

SCALE : 1" = 20'

MODJESKI-E2
01214

A-20

Encl. 5



STR. 635+00 TO STR. 647+00
ORLEANS SIDE

I-WALL GROSS EL. 15.1' (NET EL. 14.6')
GROSS LEVEE EL. 11.5" (NET EL. 11.0')

EL.12.6

THEORETICAL SECTION

EL.-5.0 L.W.E.

EL.-16.4

FLOOD SIDE TOE SAME
AS MODJESKI & MASTERS

SCALE: 1" = 2.0'
ELEVATION IN FEET N.G.V.D.

EL.-0.5

TIP EL. 0.0'

MODJESKI-E2
01215

A-21

Encl. 6



STA 647+00 TO STA 663+00
ORLEANS AND JEFFERSON SIDE

Cross El. 15.1 (NBd El. 14.6)
NET EL. 12.0

Degrade

EL 12.6

EL -8.4

1V ON 3.3 H
EL 5.5

TIP EL 6.7
(STABILITY)

EL -1.0

EL -7

1V ON 3H

OVER DREDGING

EL -5.0

THEORETICAL SECTION

EL -16.1

Flood side levee toe same as Modjeski + Masters Plans

Scale 1" = 20'
Elevations in Feet N.G.V.D

up 11's

MODJESKI-E2
01216

A-22

Encl. 7

STA 663+00 TO STA 670+00
ORLEANS SIDE

EL 12.6

▽ L.W.E. -5.0

EL 12.0

+11'

TIP EL 0.0.

Net EL 14.6' Gross EL 15.1.

NET EL 11.5

+8'

EL-16.4

EL 4.5

SCALE 1"=20'
ELEVATION IN FEET NGVD

MODJESKI-E2
01217

A-23

End- 8

7



STA. 568+00  CANAL-SIDE FAILURE

* NOTE : ELEVATIONS REFER TO CAIRO DATUM *

| STRATA | T | C<sub>top</sub> | C<sub>bot</sub> | φ |
|--------|-----|-----|-----|-----|
| 1 | 120 | 500 | 500 | 0 |
| 2 | 103 | 500 | 500 | 0 |
| 3 | 103 | 780 | 780 | 0 |
| 4 | 103 | 280 | 280 | 0 |
| 5 | 103 | 280 | 360 | 0 |
| 6 | 100 | 360 | 580 | 0 |
| 7 | 122 | 0 | 0 | 30° |



STA. 610+00 CANAL SIDE FAILURE

| STRATA | γ | Cᴘ | Cₛᴇᴄ φ |
|---|---|---|---|
| 1 | 110 | 500 | 500 | 0 |
| 2 | 103 | 500 | 500 | 0 |
| 3 | 103 | 280 | 280 | 0 |
| 4 | 103 | 280 | 280 | 0 |
| 5 | 103 | 280 | 280 | 0 |
| 6 | 102 | 280 | 280 | 0 |
| 7 | 122 | 0 | 0 | 30° |

⑧ STABILITY CONTROL LINE

* NOTE : ELEVATIONS REFER TO CAIRO DATUM *



STA 634+00 CANAL-SIDE FAILURE

STABILITY CONTROL LINE

LIMITS OF PARTIAL DREDGING

| STA | STA | γ | C₁ (cₜ) | C₂ (cₜ) | Φ |
|-----|-----|-----|-----|-----|-----|
| 1 | | 120 | 500 | 500 | 0 |
| 2 | | 103 | 500 | 500 | 0 |
| 3 | | 103 | 200 | 200 | 0 |
| 4 | | 103 | 200 | 200 | 0 |
| 5 | | 103 | 200 | 200 | 0 |
| 6 | | 122 | 0 | 0 | 10° |

EL. 24.0
EL. 18.5
EL. 15.7
EL. 10.2

* NOTE: ELEVATIONS REFER TO CAIRO DATUM *



STA. 614+00  CANAL-SIDE FAILURE

* NOTE: ELEVATIONS REFER TO CAIRO DATUM *

MODJESKI-E2
01221

A-28

Encl. 12





# The Board of Levee Commissioners
## OF THE
# East Jefferson Levee District

PROTECTION <u>YOU</u>
AND <u>YOUR</u> FAMILY

(504) 733-0087

**COMMISSIONERS**

GREGORY F. GANUEL, PRESIDENT
RICKARD RICHTER, VICE-PRESIDENT
FRANK CRANBERLAIR
GEORGE MARL III

203 PLAUCHE COURT
Harahan, La.
70123

C.J. NETTLES
CHIEF ADMINISTRATIVE OFFICER

BRUCE REED
T. ROBERT LACOUR
SPECIAL COUNSEL

April 26, 1991

Col. Richard V. Gorski
District Engineer
New Orleans District
U. S. Army Corps of Engineers
P. O. Box 60267
New Orleans, La. 70160

Dear Col. Gorski:

The purpose of this letter is to formally notify New Orleans
District that East Jefferson Levee District intends to let
a construction contract to build most of the High Level Plan
Hurricane Protection floodwall on the west bank of the 17th
St. Canal.

We are in the process of finalizing a joint venture agree-
ment with the New Orleans Sewerage and Water Board to dredge
the remaining 40% of the 17th St. Canal and construct the
sheet pile and concrete floodwall.  Both agencies have enter-
ed into contracts with Modjeski and Masters to design the
work and prepare plans and specifications.  When a firm con-
struction cost estimate is available so that a division of
costs can be made, we will sign a formal Agreement with the
Sewerage and Water Board and award a construction management
contract to Modjeski and Masters.

The floodwall work that we propose to do will consist of tie-
in to the Lakefront Levee and construction of the floodwall,
including the concrete cap, from the Lakefront to the exist-
ing floodwall and gate at the Southern Railroad.  No work areas
will be designated at the gate structure for Old Hammond High-
way/Orpheum Ave.; Veterans Blvd. bridges; and the I-10/610
bridges.  We desire that N.O.D. design and construct or co-
ordinate the design and construction of the structural work
in these areas.

A-29

Col. Richard V. Gorski
Page 2 - 4-26-91

The present schedule projects us to seek bids around the end
of the year with an 18 to 24 month construction period.

Two reasons drive the decision to let the contract ourselves.
Foremost is the fact that we can joint venture with Sewerage
and Water Board and their dredging can be carried out coinci-
dent with construction of the floodwall.  This will allow the
Canal to be dredged to match the upgraded capacity of Pump-
ing Station No. 6, considerably earlier than if they had to
wait until the floodwall was constructed by the Corps.  Second-
ly, if we let the contract, we will have substantially upgrad-
ed protection some 2.5 years earlier than the current Corps
schedule.

Our contractor will be designing the floodwall in accordance
with the approved GOM for the project, and will be coordinating
and submitting his plans for New Orleans District review and
approval.  We would appreciate expeditious review in order to
keep the project on schedule.  We will keep careful cost re-
cords for project credit purposes.

Sincerely yours,

Gregory F. Gambel
President

CJN:mln


cf - Modjeski & Masters
     Ken Brown, Jefferson Parish
     Geneva Grille, LDOTD
     Larry Bodet, N.O.S&WB

A-30

(70007124)

# DISPOSITION FORM

For use of this form, see AR 340-15; the proponent agency is TAGO.

| REFERENCE OR OFFICE SYMBOL | SUBJECT |
|---|---|
| LMNED-SP | GDM Schedule for:  17th St. Outfall Canal, Orleans & Jefferson Parishes, Lake Pont. La. & Vic. Hurricane Protection Project |

| TO | FROM | DATE | CMT 1 |
|---|---|---|---|
| C/Des Br | C/Des Svcs Br | 23 Jul 86 Mr. Elmer/pas/2618 | |

1.  Reference is made to the following:

    a.  LMNED-DD DF dated 17 Jun 86 subject as above (Encl 1).

    b.  Engineering Division's letter dated 18 Jun 86 to Mr. Harold J. Gorman of the NOS&WB concerning the status of the GDM work for the subject canal (Encl 2).

2.  The purpose of the 18 Jun 86 letter to Mr. Gorman was to address a resolution passed by the NOS&WB and others.  That resolution requested that the Corps of Engineers expedite it's GDM schedule on the 17th St. Canal so that the NOS&WB schedule for it's Canal Drainage Improvement Program could be supported. The driving force behind this resolution was and is the East Jefferson Levee Districts' reluctance to commit to participation in the overall parallel plan until there is reasonable assurance that the Federal plan will support the ongoing NOS&WB Canal Drainage Improvement Program.

3.  In your 17 Jun 86 DF, you state that Projects Engineering Section stated in the 18 Jun 86 letter to Mr. Gorman that the "NOD would begin the design work for the bridge crossings over the canal in the next few months." A review of the letter to Mr. Gorman (Encl 2) shows that the Chief of Engineering Division (Mr. Chatry) indicated that "two aspects of the Modjeski & Masters plan" for parallel protection "remain to be resolved", these two being the "treatment of the several bridges crossing the 17th St. canal and "the need for measures to insure the stability of Pumping Station No. 6".  Mr. Chatry went to say that "we", Engineering Division , "see the completion of" the ongoing Modjeski & Masters "studies as the key to advancing the time when reasonable assurance of what the Federal plan will be, can be given.  If firm data on the two problem areas referred to previously are forthgoing by 1 August of this year, we believe that we will be able to offer reasonable assurance as to what the selected Federal plan will be by November 1986. While this determination will have to be confirmed through completion and review of the GDM, it should nevertheless provide a basis on which" they, the locals "can proceed with reasonable confidence that confirmation will, in fact, be forthcoming; and it will also provide a basis for reviewing the GDM schedule to determine whether its acceleration is practicable." Mr. Chatry did not commit to advancing the GDM schedule, but did commit Engineering Division to providing a reasonable assurance that we would be able to make a decision on which plan would be the selected Federal plan once we recieve firm data on the proposed parallel plan from the locals.  If a change in the GDM schedule is necessary with respect to your branch in order for that determination to be made, please inform us so that necessary adjustments in other organizational elements can be made and impacts on other ongoing and

A-31



DEC 2 0 2001
1065
RECEIVED

*"RE-BUILDING THE CITY'S WATER SYSTEMS FOR THE 21st CENTURY"*

# Sewerage & Water Board OF NEW ORLEANS

625 ST. JOSEPH STREET
NEW ORLEANS, LA., 70165 . 585-2000
www.swbnola.org

MARC H. MORIAL, President
HENRY A. DILLON, JR., President Pro-Tem

December 20, 2001

Mr. Stevan G. Spencer, P.E.
Orleans Levee District
New Orleans Lakefront Airport
Administration Bldg. — Room 202
New Orleans, LA  70126

RE:  **Dredging under Hammond Highway Bridge
     in the 17th Street Canal**

Dear Mr. Spencer:

     In accordance with Mr. Alfred C. Naomi's letter of November
6, 2001, we are attaching herewith $125,000.00 covering the
dredging under Hammond Highway Bridge.

                    Very truly yours,


                    GENERAL SUPERINTENDENT

GJS/J
Attachment: Check
            Letter dated 11/6/01

cc:  Mr. Alfred C. Naomi-USACOE
     Mr. Rudolph St. Germain-S&WB
     Mr. Gary Sarrat-S&WB

A-32

Members of the Board: TROY A. CARTER . HENRY A. DILLON, JR. . BENJAMIN L. EDWARDS, SR. . SIDNEY H. EVANS, JR. . NORMA E. GRACE . WILLIAM F. GRACE, JR.
RONALD C. GUIDRY . BARBARA LAMONT . MARC H. MORIAL . PENELOPE RANDOLPH . EDDIE L. SAPIR . JAMES M. SINGLETON . STAFFORD R. TUREAUD, SR.
"An Equal Opportunity Employer"



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267
November 6, 2001

NOV 0 7 2001
RECEIVED

REPLY TO
ATTENTION OF:

Planning, Programs, and
  Project Management Division
Project Management Branch - East

G. Joseph Sullivan
General Superintendent
Sewerage & Water Board of New Orleans
625 St. Joseph Street
New Orleans, LA 70165

Dear Mr. Sullivan:

This letter is in regard to our future construction contract for the Lake Pontchartrain, Louisiana, and Vicinity, High Level Plan, 17th Street Outfall Canal, Parallel Floodproofing Protection of the Old Hammond Highway Bridge. The work for this contract consists of constructing a new sealed bridge and levee/I-wall systems to provide continuous line of hurricane flood protection. This protection will incorporate reinforced concrete capped steel sheet piling I-walls, cast-in place concrete slab span girders, pile founded reinforced concrete intermediate bents and abutments, reinforced concrete roadway and approach slabs, asphaltic concrete pavement, structural steel access gates and miscellaneous metal work. In addition, the site work will include modifications to existing utilities and surface drainage; some miscellaneous electrical work; miscellaneous excavation, demolition, including removal of the existing bridge; clearing, grubbing and landscaping and various other items of work. One of the bid items included in this contract is to be performed for the benefit of the Sewerage & Water Board of New Orleans (S&WB). This betterment work consists of dredging material from the 17th Street Canal beneath and in the vicinity of the bridge to improve flows in the canal. You have previously advised in your July 27, 1999 letter (enclosed) to the Orleans Levee District that you would pay for these costs.

Because this work constitutes a betterment, funding for this work must be made available prior to contract award. We are currently scheduled to award this contract in December 2001. The cost for performing this work is estimated to be $125,000.00. We request the S&WB submit a payment in the amount of $125,000.00 to the Orleans Levee District prior to the scheduled contract award date. Please note that any additional cost above the actual construction cost associated with this effort will be the responsibility of the S&WB. We will provide you with a final accounting of all cost associated with this effort once the contract is completed.

A-33

SEWERAGE AND WATER BOARD

OF

NEW ORLEANS

SPECIFICATIONS

FOR

EXCAVATION AND FLOOD PROTECTION
OF THE
17TH STREET CANAL

PHASE III
LAKE PONTCHARTRAIN TO HAMMOND HIGHWAY BRIDGE

CONTRACT 4117

PROPOSALS TO BE OPENED
11:00 A.M. LOCAL TIME, FRIDAY, APRIL 15, 1988

A-34

## SECTION 3
## DREDGING, DISPOSAL, AND LEVEE RECONSTRUCTION

**3-01   EXCAVATION**

### 3-01.1  Dredging

Bucket dredging shall be the only method allowed within the limits of work shown on the contract drawings.  All soil encountered while dredging is to be placed in an approved disposal area.  No dredging will be permitted while Pump Station No. 6 is in operation.  Dredging may resume when the Engineer has determined that the flow of water in the canal has ceased.  Dredging will begin at the Hammond Highway Bridge and proceed to the Lake.

Dredging will not be permitted from the levees.  Dredging is recommended from a system of flex-float barges.  The Contractor shall obtain approval from the Engineer for the dredging system prior to commencement of work.

### 3-01.2  Levee Raising and Degrading

Levee raising and degrading shall be conducted as described in these Special Specifications in order to reshape the levees to coincide with the contract drawing requirements.

### 3-01.3  Excavation For Tied-Back Sheet Pile Wall Anchors

Excavation for the anchor of the Jefferson tied-back wall between Station 549+67 and Station 552+35 shall be as shown on Sheet No. 10 of the contract drawings.

It shall be the Contractor's responsibility to submit a plan for excavation for the remainder of the Jefferson tied-back wall and for the Orleans tied-back wall, for approval by the Engineer.

### 3-01.4   Flood Control

The Contractor is required to maintain flood control during all construction phases of the project.  Any temporary flood protection must be built to a minimum elevation equivalent to that of the existing levees.  The length of temporary flood protection must never exceed 250 feet.  The Contractor must submit his plan for flood protection to the Engineer for approval prior to the commencement of work.

### 3-01.5   Silt Screens

Silt screens shall be placed within 200 feet downstream and upstream of the dredging operation to prevent silt travel, and shall meet approval of Engineer with respect to type, manufacturer, and usage.

3-1

A-35

3-02   CHARACTER OF MATERIAL TO BE DREDGED
      The material to be removed from the canal within the specified
limits may include sand, silt, clay, shell, logs, stumps, snags,
debris, brush, rip-rap, sunken boats and other obstructions.  Bidders
are expected to examine the site and after investigation decide for
themselves the character of the materials as stated in Paragraph 1-05.

3-03   THEORETICAL SECTION
      3-03.1 After-Dredging Section
            An after-dredging cross-section is herewith established which
shall have a varying bottom width and bottom elevation in accordance
with the contract drawings.  Excavation of six inches of allowable
overdepth below the profile grade will be permitted and side slopes
will be 1 vertical on 3 horizontal unless shown differently on the
plans.  To gain acceptance, sections must be dredged to the specified
profile grade, bottom width and side slopes.  Payment will be made for
the six inches of allowable overdepth below profile grade.  However,
the Contractor will receive no payment for material removed below the
overdepth grade or beyond the required side slopes.

      3-03.2 Levee Degrading and Raising
            In those areas where the required top of levee elevation is
above the existing top of levee elevation, a section of varying top
width and a 3 horizontal to 1 vertical back slope is herewith
established.  Only suitable material for levee-raising may be used and
must meet the approval of the Engineer.  Material removed from
existing levees requiring degradation as indicated on the plans, but
not from canal bottom, may be used to raise levee elevation where
needed.

3-04   DISPOSAL OF EXCAVATED MATERIAL
      3-04.1 Hauling
            All hauling must be done in accordance with Section 1-22 of
this Specification.

      All material dredged from the canal below elevation 22.5'
(Cairo Datum) and all debris shall be hauled in lined trucks to an
approved disposal site.  It shall shall be the Contractor's respon-
sibility to locate an appropriate disposal site and obtain approval of
the site from the U.S. Army Corps of Engineers no later than June 1,
1988.  The disposal site shall be a non-wetland area and if near a
residential area the disposed material shall be covered by one foot of
clean fill.  It is highly recommended that the Contractor contact Mr.
Lloyd Baehr's office (862-2259) of the Army Corps of Engineers for a
judgement on the disposal site prior to bidding.  Canal material below
elevation 22.5' shall not be used for levee fill, nor shall it be
placed at the excess levee material disposal site.

      All excess levee material, above elevation 22.5, is to be
hauled by truck to the designated disposal area site.  This site is
located south of the Civil Defense Shelter between Ponchartrain
Boulevard and West End Boulevard.  The exact placement will be as spe-
cified by the Orleans Levee Board.

A-36

2.  Self-Propelled Tamping Roller - At the option of the Contractor, self-propelled tamping rollers conforming to the requirements of Paragraph 3-05.2(1) above may be used in lieu of tractor-drawn tamping rollers.  Self-propelled rollers exceeding the empty weight requirements may be used provided that, by the substitution of tamping feet having a face area not exceeding 14 square inches, the foot pressure on the tamping feet of the self-propelled roller can be adjusted to approximately the foot pressure of the towed roller for the particular working condition.  In no case shall the foot areas for self-propelled tamping rollers be less than those specified for the towed rollers.  For self-propelled rollers in which steering is accomplished through the use of rubber-tired wheels, the tire pressure shall not exceed 40 pounds per square inch.  The roller shall be operated at a speed of not more than 3.5 miles per hour.

3.  Rubber-Tired Rollers - Rubber-tired rollers shall have a minimum of four wheels equipped with pneumatic tires.  The tires shall be of such size and ply as to be capable of being operated at tire pressures between 80 and 100 pounds per square inch at a 25,000 pound wheel load.  The roller wheels shall be located abreast and so designed that each wheel will carry approximately equal load in traversing uneven ground.  The spacing of the wheel will be such that the distance between the nearest edges of adjacent tires will not be grater than 50 percent of the rated tire width of a single tire.  The roller shall have a rigid steel frame provided with a body suitable for ballast loading such that the load per wheels may be varied, as directed by the Engineer, from 18,000 to 24,000 pounds.  The roller shall be towed at speeds not to exceed 5 miles per hour.

4.  Crawler-Type Tractors - Crawler-type tractors used for spreading or compaction shall weigh not less than 20,000 pounds, shall exert a unit tread pressure of not less than 6 pounds per square inch, and shall be operated at a speed not to exceed 3.5 miles per hour.

5.  Sprinkling Equipment - Sprinkling equipment shall consist of tank trucks, pressure distributors, or other equipment designed to apply water uniformly and in controlled quantities to variable widths of surface.

6.  Miscellaneous Equipment - Scarifiers, disks, spring tooth or spike tooth harrows, spreaders, power tampers, and other equipment shall be of types suitable for construction of levee embankment.

3-05.3 Embankment Foundation Preparation

Immediately prior to the placement of fill material, the entire earth surface on or against which fill is to be placed shall be thoroughly broken to a depth of 6 inches.  If for any cause this broken surface becomes compacted in such a manner that, in the opinion of the Engineer, a plane of seepage or weakness might be induced, it shall again be adequately scarified before the depositing of material thereon.  All scarifying and breaking of ground surface shall be done parallel to the centerline of the levee.  All of the foregoing work shall be completed at least 200 feet in advance of the embankment construction.

A-37

3-07   MEASUREMENT AND ACCEPTANCE
        The total amount of work to be paid for under Bid Item 4,
Dredging;  Bid Item 5, Levee Degrading; and Bid Item 6, Levee Raising,
shall be measured in accordance with the Theoretical Sections
described in Paragraph 3-03 of these Specifications.

        Payment at the applicable unit price will be made when it is
determined by the final quantity survey as described in Section 3-06,
that a particular segment has been dredged to the required cross-
section; in addition, profiles will be taken along each required toe
of slope and at the centerline of the required cross-section to insure
that the entire channel has been excavated to the proper elevation.
These profiles are to be performed by the Contractor using electronic
sounding equipment and under the direction of the Engineer's
Representative.  Only after all cross-sections and profiles for a par-
ticular segment are deemed acceptable by the Engineer will payment for
that segment be made.

        In order to insure the integrity of the completed segments, they
will be limited by the following stipulation; the final quantity sur-
vey will not be made for payment on a segment until dredging opera-
tions are a minimum of 100 linear feet from that segment.

3-08   PAYMENT
        3-08.1 Mobilization and Demobilization
        All costs connected with the mobilization and demobilization of
all of the Contractor's plant and equipment will be paid for at the
contract lump sum price for this item, Bid Item No. 1.  Sixty percent
of this amount will be paid to the Contractor upon the completion of
his mobilization at the work site.  The remaining forty percent will
be paid to the Contractor upon completion of his demobilization from
the work site.

        3-08.2 Dredging
        Payment for Bid Item No. 4 will be made at the applicable
contract unit price per cubic yard based upon quantity surveys and
after acceptance of each particular segment.  Payments for the
dredging item will be made in accordance with Paragraphs 55 through
60, in Section A of the General Specifications and Section 3-03.1 of
these Special Specifications.

        3-08.3 Levee Degrading and Raising
        Payment for Bid Item Nos. 5 and 6 will be made at the applicable
contract unit price per cubic yard based upon quantity surveys and
after acceptance of each particular segment.  Payment for the levee
degrading and raising items will be made in accordance with Paragraphs
55 through 60, in Section A of the General Specifications and Section
3-03.2 of these Special Specifications.

        3-08.4 Silt Screens
        There will be no direct payment for silt screens and, as such,
will be included in Bid Item No. 4, Dredging.

A-38

9-06   TEMPORARY LOADING DOCK
    9-06.1   General
        It is brought to the Contractor's attention that he must
allow boat traffic in the canal during construction.  In addition, the
Contractor shall provide a temporary loading/unloading dock for
fishing vessels, which shall be a barge measuring 10' X 30' minimum.
The Contractor shall be required to move this barge up and down the
canal so as to be out of the way of construction.  This barge shall
have an access walkway to the dry land meeting OSHA standards, and
shall be moored to the Jefferson side of the canal.  The Contractor is
reminded that he must carry the proper maritime insurance for this
action.

        Boats will not be allowed to tie-up in the construction area
except for loading and unloading at the temporary dock.

    9-06.2   Payment
        Payment will be at the contract lump sum price for Bid Item
No.  22, "Temporary Loading Dock", and shall include providing the
barge, moving the barge as required, maintaining a proper level of
safety on the barge, and providing navigation lights (see paragraph
1-36 of the specifications).

9-18

A-39



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267
November 6, 2001

S. & W.B.
GEN. SUPT.

2001 NOV 7 A 9: 29

REPLY TO
ATTENTION OF:

Planning, Programs, and
Project Management Division
Project Management Branch - East


G. Joseph Sullivan
General Superintendent
Sewerage & Water Board of New Orleans
625 St. Joseph Street
New Orleans, LA 70165

Dear Mr. Sullivan:

This letter is in regard to our future construction contract for the Lake Pontchartrain, Louisiana, and Vicinity, High Level Plan, 17th Street Outfall Canal, Parallel Floodproofing Protection of the Old Hammond Highway Bridge. The work for this contract consists of constructing a new sealed bridge and levee/I-wall systems to provide continuous line of hurricane flood protection. This protection will incorporate reinforced concrete capped steel sheet piling I-walls, cast-in place concrete slab span girders, pile founded reinforced concrete intermediate bents and abutments, reinforced concrete roadway and approach slabs, asphaltic concrete pavement, structural steel access gates and miscellaneous metal work. In addition, the site work will include modifications to existing utilities and surface drainage; some miscellaneous electrical work; miscellaneous excavation; demolition, including removal of the existing bridge; clearing, grubbing and landscaping and various other items of work. One of the bid items included in this contract is to be performed for the benefit of the Sewerage & Water Board of New Orleans (S&WB). This betterment work consists of dredging material from the 17th Street Canal beneath and in the vicinity of the bridge to improve flows in the canal. You have previously advised in your July 27, 1999 letter (enclosed) to the Orleans Levee District that you would pay for these costs.

Because this work constitutes a betterment, funding for this work must be made available prior to contract award. We are currently scheduled to award this contract in December 2001. The cost for performing this work is estimated to be $125,000.00. We request the S&WB submit a payment in the amount of $125,000.00 to the Orleans Levee District prior to the scheduled contract award date. Please note that any additional cost above the actual construction cost associated with this effort will be the responsibility of the S&WB. We will provide you with a final accounting of all cost associated with this effort once the contract is completed.


A-41

MOTION:          20-022394

RESOLUTION:      19-022394

BY:              Commissioner James P. Huey,
                 by request

SECONDED BY:     Vice President Patricia W. Harris

February 23, 1994

## R E S O L U T I O N

WHEREAS, to meet accepted standards of practice of the Louisiana Department of Transportation and Development (LADOTD), the Orleans Levee District would attempt to design similar standards to that of the LADOTD as the approving agency for jurisdictional area construction, inter alia, covering typical plans and conventional construction drawings, evidence of third party liability insurance and registered professional engineering certification, and

WHEREAS, these standard requirements, when made a part of the Orleans Levee District operating procedures, will meet the same requirements set by the approving agency.

BE IT HEREBY RESOLVED, That the Orleans Levee District does hereby request permission from the Louisiana Department of Transportation and Development to utilize LADOTD:

A)   typical plans and conventional construction drawings,

B)   evidence of a "Hold Harmless Clause" as a contract provision,

C)   evidence bearing the seal of the registered professional engineering consultant.

A-42

000050

*24921, 24909, 24912*

*OLD Project No. 24909*
*London Canal*
*(Linfield)*
*1997 File*
*35 pages*

MOTION:          7-072397

RESOLUTION:      7-072397

BY:              President J

SECONDED BY:     Commissione

1997

R E S

WHEREAS, construction of the Lake Pontchartrain and Vicinity Hurricane Protection Project (LPVHPP) was authorized by the Flood Control Act of 1965, Section 204, Public Law 298, 89th Congress, 1st Session (approved October 27, 1965), substantially in accordance with the Report of the Chief of Engineers, dated March 4, 1964 (contained in House Document No. 231, 89th Congress, 1st Session), and

WHEREAS, the LPVHPP Re-evaluation Study, dated December, 1983, approved February 7, 1985, has authorized construction of the High Level Plan, rather than the Barrier Plan, and

WHEREAS, the Board of Commissioners of the Orleans Levee District (OLD) as local sponsor for the project granted assurances to the federal government to provide all lands, easements, and rights of way necessary for construction, operation and maintenance of the project, accomplishing all necessary alterations and relocation to drainage structures and other facilities required for construction of the project, and maintaining and operating all features of the project in accordance with regulations prescribed by the Secretary of the Army, and

WHEREAS, in order for the OLD to meet its commitment to accomplish the LPVHPP assurance requirements, seven bridges over the London Avenue and Orleans Avenue Outfall Canals, currently owned and maintained by the City of New Orleans, need to be modified and, as a result, it is necessary to obtain permission from the City of New Orleans for the use of its property to provide the protection, and

A-43

WHEREAS, the City, as owner of the facilities, is charged with the responsibility for providing crossings in the form of bridges over the canals to meet the needs of the city traffic system, and

WHEREAS, the City, through its Orleans and London Avenue Outfall Canals Task Force (Task Force), has recommended that crossings be reconstructed so as to provide minimum impact on the neighborhoods, all of which will require exceptions to current day design requirements, and

WHEREAS, a Cooperative Endeavor Agreement between the OLD and the City of New Orleans should be developed providing a right of entry on the bridges and outlining the City of New Orleans and OLD responsibilities for maintenance of these seven bridges, and

WHEREAS, the Cooperative Endeavor Agreement would expedite the construction schedules for the seven projects, and

WHEREAS, funding for this purpose is available in the LPVHPP approved levee construction funding.

BE IT HEREBY RESOLVED, That the OLD enter into a Cooperative Endeavor Agreement, subject to legal review, outlining the responsibilities of all concerned in providing floodproofing for the seven bridges outlined above.

BE IT FURTHER RESOLVED, That the President be authorized to execute the agreement on behalf of the OLD, and that the President and/or Chief Engineer be authorized to sign any other documents to accomplish the above.

AYES:      Commissioners Cain, Hazeur-Distance, Gusman, Harris, Landry and Livingston

NAYS:      None

ABSENT:    Commissioner Lupo

RESOLUTION ADOPTED:   Yes

THE FOREGOING IS CERTIFIED TO
BE A TRUE AND CORRECT COPY.

*Robert E. Smith Lupo*

ROBERT E. SMITH LUPO, SECRETARY
THE BOARD OF COMMISSIONERS OF
THE ORLEANS LEVEE DISTRICT

2

A-44

# The Board of Commissioners

OF THE

## Orleans Levee District

SUITE 202 • ADMINISTRATION BUILDING

6001 STARS AND STRIPES BLVD.

### New Orleans, La.

70126-8006



TEL. 504-243-4000

PROTECTING YOU
AND YOUR FAMILY

January 23, 2004

Mr. Alfred Naomi, Sr.
Project Manager
U. S. Army Corps of Engineers, New Orleans
Post Office Box 60267
N.. ... .. .. ui. .u 7C1.. .. .7

RE:   OLD Project No. 24316
      Vibration Monitoring at Hammond Hwy Bridge Flood-
      proofing Project

Dear Mr. Naomi:

.tt.. h .l ... .pi.. ... two (2) vibr.tio.. .. ..roring reports, dated January 16 and
20, 2004, from Alpha Testing and Inspection, Inc., indicating that vibrations
exceeded the 0.25 ips threshold stated in the contract.

As you are aware, the contractor is currently working on the demolition of the
north portion of the old bridge and soon will start driving piles for the new bents.
. is .. .. t.. .... .. to .. .v ......, .ess than 100 ft.  It is requested that
y.. .. .t h. ... vi.. a.. .. t.. . v. .. ti.. . s the contractor is taking to prevent
recurrence of these high vibrations.

                                    Sincerely,

                                    Stevan G. Spencer, P.E.
                                    Chief Engineer

SGS:DE:dba

Attachment

xc:   Max L. Hearn, Executive Director
      Gary Benoit, Esq., Senior Counsel w/attachment
      Alan Hunter, Area Engineer, USACE

A-45

# ALPHA TESTING AND INSPECTION, INC.



2601-A LEXINGTON AVENUE KENNER, LOUISIANA 70062  TEL: 504-467-9694  FAX: 504-467-0166

Report No. 50            January 20, 2004          ATI - 3994

                                                JAN 22 2004

| | |
|---|---|
| Description | Report of Vibration Monitoring    RECEIVED |
| Project | OLD Project No. 24319<br>USACE Contract DACW 29-02-C-0016<br>Hammond Highway Bridge |
| For | The Board of Commissioners<br>of the Orleans Levee District |
| Contractor | The Gulf Group |
| Reported to | The Board of Commissioners<br>of the Orleans Levee District<br>Suite 202, Administration Building<br>6001 Stars and Stripes Boulevard<br>New Orleans, LA 70126-8006<br>Attn: Mr. Stevan G. Spencer, P.E. |

*Duplicate*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On January 19, 2004, our representative, B. Urquhart, reported to the above project for the purpose of monitoring vibrations from construction operations.

Ground vibration measurements were monitored using a Dallas Instrument, Serial No. 2809-17 BR2-3LF Blast Monitor. This instrument performs a vector summation of one (1) vertical and two (2) horizontal vibrations. Scale range is 0 to 4.0 inches per second (IPS).

Ground measurements were monitored at various locations and distances from the construction. All data are shown on the attached log sheet.

The maximum ground vibration reading today was 0.36 inches per second.

ALPHA TESTING & INSPECTION, INC.

Michael A. Devillier
President

2cc: Client

A-46

| Client | The Board of Commissioners of the Orleans Levee District | Order No. | ATI – 3994 |
| --- | --- | --- | --- |
| | Suite 202, Administration Building 6001 Stars & Stripes Boulevard | Date | 1-19-04 |
| Project | OLD Project No. 24319 USACE Contract DACW 29-02-C-0016 Hammond Hwy. Bridge | | |
| Contractor | The Gulf Group | | |
| Monitor Type | Dallas Instruments BR2-3LF Blast Monitor(2809-17) | Settings | 0" - 4.0" |

| Monitor Location | Pile Monitor Distance (Feet) | Time: Start Stop | Max. | Comments |
| --- | --- | --- | --- | --- |
| 30' from Southwest rear corner of apartment #27. | --- | --- | --- | Calibration |
| 30' from Southwest rear corner of apartment #27. | 60' – 70' | 7:30 a.m. 8:30 a.m. | .30 | Pulling Sheet Pile Notified Contractor |
| 30' from Southwest rear corner of apartment #27. | 60' – 70' | 8:30 a.m. 9:30 a.m. | .36 | Pulling Sheet Pile Notified Contractor |
| 30' from Southwest rear corner of apartment #27. | 60' – 70' | 9:30 a.m. 10:30 a.m. | .21 | Pulling Sheet Pile |
| 30' from Southwest rear corner of apartment #27. | 60' – 70' | 10:30 a.m. 11:30 a.m. | .26 | Pulling Sheet Pile Notified Contractor |
| 30' from Southwest rear corner of apartment #27. | 60' – 70' | 11:30 a.m. 12:30 p.m. | .28 | Pulling Sheet Pile Notified Contractor |
| 30' from Southwest rear corner of apartment #27. | 60' – 70' | 12:30 p.m. 1:30 p.m. | .22 | Pulling Sheet Pile |
| 30' from Southwest rear corner of apartment #27. | ----- | ----- | ----- | Calibration |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

A-47



A-48

# ALPHA TESTING AND INSPECTION, INC.



2601-A LEXINGTON AVENUE KENNER, LOUISIANA 70062  TEL: 504-467-9694  FAX: 504-467-0166

Report No. 49                    January 16, 2004                    ATI - 3994

RECEIVED

Description              Report of Vibration Monitoring

Project                  OLD Project No. 24319
                         USACE Contract DACW 29-02-C-0016
                         Hammond Highway Bridge

For                      The Board of Commissioners
                         of the Orleans Levee District

Contractor               The Gulf Group

Reported to              The Board of Commissioners
                         of the Orleans Levee District
                         Suite 202, Administration Building
                         6001 Stars and Stripes Boulevard
                         New Orleans, LA 70126-8006
                         Attn: Mr. Stevan G. Spencer, P.E.

*************************************************************************************

On January 15, 2004, our representative, B. Urquhart & D. Mang, reported to the above project for the purpose of monitoring vibrations from construction operations.

Ground vibration measurements were monitored using a Dallas Instrument, Serial No. 2809-17 BR2-3LF Blast Monitor. This instrument performs a vector summation of one (1) vertical and two (2) horizontal vibrations. Scale range is 0 to 4.0 inches per second (IPS).

Ground measurements were monitored at various locations and distances from the construction. All data are shown on the attached log sheet.

The maximum ground vibration reading today was 0.35 inches per second.

ALPHA TESTING & INSPECTION, INC.

Michael A. Devillier
President

2cc: Client

A-49

| Client | The Board of Commissioners of the Orleans Levee District | Order No. | ATI – 3994 |
|---|---|---|---|
| | Suite 202, Administration Building 6001 Stars & Stripes Boulevard | Date | 1-15-04 |
| Project | OLD Project No. 24319 USACE Contract DACW 29-02-C-0016 Hammond Hwy. Bridge | | |
| Contractor | The Gulf Group | | |
| Monitor Type | Dallas Instruments BR2-3LF Blast Monitor(2809-17) | Settings | 0" - 4.0" |

| Monitor Location | Pile Monitor Distance (Feet) | Time: Start Stop | Max. | Comments |
|---|---|---|---|---|
| Southwest rear corner of apartment #27 at fence corner. | --- | ---- | --- | Calibration |
| Southwest rear corner of apartment #27 at fence corner. | 100' – 20' | 6:30 a.m. 7:30 a.m. | .00 | Mechanical Problems On Stand – By |
| Southwest rear corner of apartment #27 at fence corner. | 100' – 20' | 7:30 a.m. 8:30 a.m. | .00 | Mechanical Problems On Stand – By |
| Southwest rear corner of apartment #27 at fence corner. | 100' – 20' | 8:30 a.m. 9:30 a.m. | .00 | Mechanical Problems On Stand – By |
| Southwest rear corner of apartment #27 at fence corner. | 100' – 20' | 9:30 a.m. 10:30 a.m. | .00 | Mechanical Problems On Stand – By |
| Southwest rear corner of apartment #27 at fence corner. | 100' – 20' | 10:30 a.m. 11:30 a.m. | .22 | Pulling Sheet Piles |
| Southwest rear corner of apartment #27 at fence corner. | 100' – 20' | 11:30 a.m. 12:30 p.m. | .24 | Pulling Sheet Piles |
| South    corner of apartment #27 at fence corner. | 40' – 80' | 12:30 p.m. 1:30 p.m. | .35 | Pulling Sheet Piles Notified Contractor |
| Southwest rear corner of apartment #27 at fence corner. | 40' – 80' | 1:30 p.m. 2:00 p.m. | .27 | Pulling Sheet Pile Notified Contractor |
| Southwest rear corner of apartment #27 at fence corner | ----- | ----- | ----- | Calibration |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

A-50

A-51