UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br>NUMBER: 05-4182 "K"(2)<br>JUDGE DUVAL<br>MAG. WILKINSON |
| PERTAINS TO: MRGO, Robinson<br>(No. 6-2268) | |

**PLAINTIFFS' SUR-REBUTTAL IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES**

I. **THE GOVERNMENT HAS MADE A DRAMATIC ABOUT-FACE ON THE ISSUE OF LEVEES ALONG THE MR-GO AND ITS RELATIONSHIP TO THE LPVHPP**

The Government's latest filing on its Motion to Certify purports to be necessary because Plaintiffs filed a Sur-reply that allegedly "is designed to distract the Court from the legal issues that make certification appropriate at this time." Defendant's Rebuttal at p. 1. In fact, it is the Government that seeks to muddy the waters by announcing a dramatic about-face on a critical, disputed factual issue related to Flood Control Act ("FCA") immunity, namely, the relationship (if any) between the Lake Pontchartrain and Vicinity Hurricane Protection Project ("LPVHPP") and the Mississippi River-Gulf Outlet ("MR-GO"). In a desperate effort to hurdle the insuperable barrier to certification posed by the need for discovery on this hotly-disputed issue, the Government completely reverses course, asserting that there is no need for discovery because the United States now **admits** that the MR-GO was never a flood control project; the MR-GO was not absorbed into the LPVHPP after 1965; the MR-GO did not have a flood control purpose or function; and "no levees were constructed *as part of the MR-GO project*." Defendants'

1

Rebuttal at p. 4 (emphasis in original); *see also id.* at pp. 8-10.  Put most starkly, the Government insists:

> The United States does not and has not at any time contended that the MRGO became a flood control project *either in whole or in part*.  *The character of the MRGO project remained unchanged from its inception until Hurricane Katrina.*

*Id.* at p. 8 (emphasis added).  Thus, the United States contends, the only issue for certification is a pure legal question.

It is patently untrue that the Government has never claimed that it is immune from liability because the MR-GO morphed from an immune navigable waterway into an immune flood control project due to the construction of levees along the MR-GO pursuant to the post-Betsy LPVHPP.  In at least four pleadings, the United States has repeatedly taken this position—and thereby created the seriously-disputed factual issue that requires discovery and denial of certification.  *See* Attachment "A."

In support of its Motion to Dismiss, the Government argued that the United States was immune under the FCA from any flooding caused by the MR-GO because of its established relationship to the LPVHPP.  In particular, the Government argued that the Fifth Circuit's decision in *Graci v. United States*, 456 F.2d 20 (5th Cir. 1971)—holding that FCA immunity did not apply to the MR-GO because it was a navigable waterway and not a flood control project—was no longer controlling precedent because of flood control works constructed after Hurricane Betsy as part of the LPVHPP.  Specifically, the Government contended that

> [a]lthough no federal flood control works were involved in the Betsy flood, the United States soon began to build *the flood control works that now line MR-GO,* the GIWW, the Industrial Canal, the shores of Lake Pontchartrain, and the outfall canals.  Since *Graci* was decided, the United States has invested hundreds of millions of dollars in flood control projects in southeastern Louisiana.

Motion to Dismiss at p. 24 (emphasis added).

Repeatedly in the Motion to Dismiss, the Government points to the allegedly changed nature of the MR-GO after the LPVHPP. At page 4, Defendant asserts that "[t]he Complaint is correct in acknowledging that MR-GO and the LPVHPP are *inherently and inextricably intertwined*." (Emphasis added). At page 25, Defendant further claims that

> [t]hough formally separate (largely, if not entirely, owing of the appropriations process), *the two projects were physically and functionally related*. Consequently, in the papers submitted to Congress seeking approval of the flood control project, 'provision for modifying the authorized MR-GO navigation project, which is currently under construction' was described, even though the reports were 'concerned primarily with providing protection against hurricane water levels.'

(Emphasis added; citations omitted).

In its Reply in Support of the Motion to Dismiss, the Government, responding to Plaintiffs' proof that the Seabrook Lock was never built, argued that this was a flood control measure "proposed by the Corps to remedy some of the undesirable hydrologic effects of the MR-GO." Reply in Support of Motion to Dismiss, at p. 4. Thus, the Government concluded, the Seabrook Lock proposal "shows that the LPVHPP project and the MR-GO project *are not unrelated.*" *Id.* (emphasis added).[1]

The Government's insistence on this point continued in its Motion to Certify. At page 10, Defendant insisted that "[t]he legislative history reveals that *MRGO was understood to be related* not only to adjacent natural waterways but also *to the national flood control program.*" (Emphasis added). Defendants further argued:

---

[1] During oral argument on the Motion to Dismiss, counsel for the United States, using an Army Corps map of Greater New Orleans (Exhibit 11), insisted that a ring of levees had been built around St. Bernard Parish, New Orleans East, and the Lower Ninth Ward pursuant to the LPVHPP. Therefore, counsel for the United States argued, the FCA applied here because floodwaters from the MR-GO were not contained by these flood control works.

> *The relationship between MR-GO and the national flood control program is underscored* in the reports that Congress relied on when it authorized the LPVHPP, after Hurricane Betsy. The report of the Army's Chief of Engineers, which is referenced in the post-Betsy law that authorized the LPVHPP, explained in detail that the contemplated levees were intended to guard against flood risk created by MRGO. In so doing, the report *revealed the relationship between the two projects*.

Motion to Certify at p. 11 (emphasis added).

Finally, in its Reply in Support of Motion to Certify, the Government argued that "even if a flood control 'connection' is required, the United States would enjoy Flood Control Act immunity under any reasonable application of this standard." Reply in Support of Motion to Certify at p. 16, n.4  Then, in unambiguous declaration of its position, the Government asserted: "For example, there *was a clear 'connection' between the LPVHPP and the MRGO* in that the LPVHPP was designed to protection Greater New Orleans from surrounding flood waters, *including those contained in the MRGO*." *Id.* (emphasis added).

Given these clear, unequivocal statements in four pleadings and its oral argument on the Motion to Dismiss, it is incredible that the Government asserts in its most recent filing that it "does not and has not at any time contended that the MRGO became a flood control project either in whole or in part." Defendant's Rebuttal at p. 8. The fact that Plaintiffs correctly understood the Government's argument—as illustrated in the foregoing quotations—is underscored by the fact that this Court also had the same understanding when deciding the Motion to Dismiss. In noting that the Government was trying to distinguish *Graci*, the Court stated:

> The Government now contends that certain 'levees' that were constructed in conjunction with MRGO constitute projects that would be subject to immunity under § 702c. . . . The Court would be extremely precipitous if it decided the underlying facts concerning the appropriations and the interrelationship between the LVP and the MRGO now. It is certainly not clear that *the MRGO*

4

> *has morphed into a hybrid flood control project/navigational aid project.*"

Order Denying Motion to Dismiss at pp. 16-17 (emphasis added).

It is therefore clear that until its latest pleading, the Government was heavily relying upon the existence of levees along the MR-GO and an interrelationship between the LPVHPP and the MR-GO to establish FCA immunity. It is equally clear that Plaintiffs vigorously disputed this factual assertion, thereby prompting this Court to recognize the parties' polar opposite views and to order discovery on the issue. The Government's stunning reversal of position in this most recent filing is obviously a ploy to eliminate a major obstacle to certification.

The Court should repudiate this cynical gamesmanship. The Government must live with the undeniable fact that it injected a disputed issue into its jurisdictional attack against Plaintiffs' Complaint, *i.e.*, whether there were levees along Reach 2 of the MR-GO such that the MR-GO was transformed into a flood control project. Plaintiffs are not required to abandon discovery merely because the Government finds it convenient to claim that it is not contesting this issue. Plaintiffs have a right to make a factual record on this pivotal issue—not only for trial in this Court but for purposes of protecting themselves on appeal if the Government once again finds it expedient to reverse its position and argue that the appellate court can take judicial notice of the existence of levees along the MR-GO or the interrelationship between the MR-GO and the LPVHPP.

In any event, at least with respect to this certification motion, Defendant is bound by its prior own statements and contentions that the MR-GO was transformed into a "constituent component" of the LPVHPP. This unresolved factual dispute over the existence of alleged levees along Reach 2 of the MR-GO fatally undermines Defendant's motion for certification.

## II.     THE FIFTH CIRCUIT HAS NOT TAKEN JUDICIAL NOTICE OF ANY ISSUE RELATED TO FCA IMMUNITY

While arguing that the issue of levees along the MR-GO is no longer disputed in this case, Defendant's Rebuttal nonetheless asks this Court to take judicial notice of these levees based on the Fifth Circuit's decision to take judicial notice of certain facts in *Preston v. Tenet Healthsys. Mem. Med.*, 485 F.3d 804, 817 & n.6 (5th Cir. 2007).  *See* Defendants' Rebuttal at p. 2 & n.1.  In truth, the Fifth Circuit in *Preston* never took judicial notice of the existence of levees along Reach 2 of the MR-GO.

The sole issue before the Fifth Circuit was whether the District Court properly remanded a post-Katrina class action to a Louisiana state court pursuant to the "local controversy" exception to the Class Action Fairness Act of 2005, 28 U.S.C. § 1369.  *Preston*, 485 F.3d at 808.  The District Court's decision was predicated, in part, on statements of eight potential class members that they intended to return to Louisiana.  Taking judicial notice of certain Katrina-related events, the Fifth Circuit held that this was sufficient to conclude that there was a significant local Louisiana interest.  *Id*. at 817.  Specifically, the Fifth Circuit took judicial notice of the following facts:

> In the wake of Hurricane Katrina, and the compounding effects of *the breached levees*, nearly eighty percent of New Orleans was engulfed in flood waters rising over twenty feet in lower-lying areas.  These cataclysmic events damages, destroyed, or rendered inaccessible approximately 850,000 housing units.

*Id*. at 817 & n. 6 (emphasis added).

The Fifth Circuit simply took judicial notice of "breached levees."  There was no discussion of the locations of these levees, their nature or composition, the origins of the waters, or any reference as to the nature or cause of these levee breaches, *i.e.,* were the breaches caused

by "flood waters," defective design or construction, or any other cause such as impact by a barge or other vessel. Certainly, the contribution of the MR-GO to the flooding of New Orleans East, St. Bernard Parish, and the Lower Ninth Ward was not even discussed.

Simply put, *Preston* does not stand for the proposition that this Court can take judicial notice of the existence of levees along Reach 2 of the MR-GO or that Plaintiffs' losses were caused solely "by the breaching of the levees." Defendants' Rebuttal at p. 2. Indeed, as this Court has recognized, Plaintiffs do not predicate Defendant's liability on levee breaches. *See* Order Denying Motion to Dismiss at p. 15 ("Plaintiffs are not seeking damages for the failure of the levees or flood projects.")[2]

### III.     CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Certify for interlocutory appellate review this Court's Order Denying Defendant's Motion to Dismiss.

Dated:  June 27, 2007                          Respectfully submitted,

**O'Donnell & Associates P.C.**

By: s/ Pierce O'Donnell
Pierce O'Donnell (*pro hac vice*)
550 S. Hope St., Suite 1000
Los Angeles, California 90071

---

[2] Besides the existence of disputed facts on the levees issue, certification should also be denied because the Government has failed to cite a single decision supporting their expansive interpretation of the Flood Control Act immunity provision contained in 33 U.S.C. § 702c. Defendant's interpretation of the law is flatly contradicted by the Supreme Court's decisions in *Central Green Co. v. United States*, 531 U.S. 425, 434 (2001) and *United States v. James*, 478 U.S. 597 (1986). Defendant's misplaced reliance on language taken out of context does not create a reasonable difference of opinion warranting certification. *See* Order Denying Motion to Dismiss at p. 15 ("[C]ontrary to the Government's contention that *Central Green* broadens the immunity provided by 702c, in reality, *Central Green* requires the Court to identify *the cause of the damage* rather than base a decision on the mere fact that a flood control project was involved. *Central Green* does not directly answer the question of what nexus to a flood control project is required for floodwaters to trigger immunity.")

Phone:  (213) 347-0290
Fax:  (213) 347-0298

**The Andry Law Firm, LLC**

By: s/ Jonathan B. Andry
Jonathan B. Andry (LSBA No. 20081)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile:  (504) 585-1788

| | |
|---|---|
| **Bruno & Bruno** | **Domengeaux Wright Roy & Edwards LLC** |
| Joseph M. Bruno (LSBA No. 3604) | Bob F. Wright (LSBA No. 13691) |
| David S. Scalia (LSBA No. 21369) | James P. Roy (LSBA No. 11511) |
| 855 Baronne Street | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70133 | P.O. Box 3668 |
| Telephone: (504) 525-1335 | Lafayette, Louisiana 70502-3668 |
| Facsimile:  (504) 581-1493 | Telephone: (337) 233-3033 |
| | Facsimile:  (337) 233-2796 |
| **Fayard & Honeycutt** | **Girardi & Keese** |
| Calvin C. Fayard, Jr. (LSBA No. 5486) | Thomas V. Girardi (*pro hac vice*) |
| Blayne Honeycutt (LSBA No. 18264) | 1126 Wilshire Boulevard |
| 519 Florida Avenue, S.W. | Los Angeles, CA 90017 |
| Denham Springs, Louisiana 70726 | Telephone: (213) 489-5330 |
| Telephone: (225) 664-4193 | Facsimile:  (213) 481-1554 |
| Facsimile:  (225) 664-6925 | |
| **Ranier, Gayle & Elliot, LLC** | **Levin, Papantonio, Thomas, Mitchell Echsner & Proctor, P.A.** |
| N. Frank Elliot III | |
| 1419 Ryan Street | Clay Mitchell (*pro hac vice*) |
| Lake Charles, LA 70601 | Matt Schultz (*pro hac vice*) |
| Telephone: (337) 494-7171 | 316 S. Baylen Street, Suite 600 |
| Facsimile: (337).494.7218 | Pensacola, Florida 32502-5996 |
| | Telephone: (850) 435-7140 |
| | Facsimile:  (850) 436-6123 |
| **McKernan Law Firm** | **Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC** |
| Joseph Jerry McKernan (LSBA No | |

8

10027)
John Smith (LSBA No. 23308)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile:  (225) 926-1202

**Law Office of Elwood C. Stevens, Jr., a Professional Law Corporation**

Elwood C. Stevens, Jr.  (LSBA No. 12459)
1205 Victor II Boulevard
P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile:  (985) 385-4861

**Law Office of Frank J. D'Amico, Jr. APLC**

Frank J. D'Amico, Jr. (LSBA No. 17519)
Richard M. Exnicios, Esq. (LSBA No. 25666)
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-9561
Fax: 504-525-9522

Gerald E. Meunier  (LSBA 9471)
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile:  (504) 528-9973

**Cotchett, Pitre, Simon & McCarthy**

Joseph W. Cotchett  (*pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

**Salas & Co., LC**

Camilo K. Salas, III (LSBA No. 11657)
650 Poydras Street, Suite 1650
New Orleans, LA  70130
Telephone: (504) 799-3080
Facsimile:  (504) 799-3085
**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I, Pierce O'Donnell, hereby certify that on June 27, 2007, I caused to be served Plaintiffs' Sur-Rebuttal In Support Of Opposition To Defendants' Motion For Certification Of Interlocutory Appeal, upon Defendants' counsel, Robin D. Smith, Catherine Corlies, Traci Colquette, and Jim McConnon by ECF and email at robin.doyle.smith@usdoj.gov; catherine.corlies@usdoj.gov, traci.colquette@usdoj.gov, and jim.mcconnon@usdoj.gov

/s/ Pierce O'Donnell