**ATTACHMENT "A"**

*United States' Motion to Dismiss*

Page 4: "The Complaint is correct in acknowledging that MR-GO and the LVPHPP are inherently and inextricably intertwined.  The MR-GO waterway forms a constituent element of the hydrologic system that the flood control project was designed to contain."

Page 24: "Although no federal flood control works were involved in the Betsy flood, the United States soon after began to build the flood control works that now line MR-GO, the GIWW, the Industrial Canal, the shores of Lake Pontchartrain, and the outfall canals.  Since *Graci* was decided, the United States has invested hundreds of millions of dollars in flood control projects in southeastern Louisiana."

Pages 24-25: "Although the plaintiffs found their case on certain acts and omissions related to the MR-GO, the plain and substantial nexus between their alleged damages and the federal flood works cannot be masked; there is nothing 'tenuous' about the relationship between these damages or this conduct and the LPVHPP. . . . Thus, even under the approaches employed by the Fifth Circuit prior to *Central Green*, there is a 'sufficient association' between the plaintiffs' alleged damages and flood control *and* between flood control and the challenged conduct to warrant application of § 702c."  (Emphasis in original).

Page 25: "Though formally separate (largely, if not entirely, owing of the appropriations process), *the two projects were physically and functionally related*.  Consequently, in the papers submitted to Congress seeking approval of the flood control project, 'provision for modifying the authorized MR-GO navigation project, which is currently under construction' was described, even though the reports were 'concerned primarily with providing protection against hurricane water levels.'"  (Emphasis added).

*United States' Reply in Support of Motion to Dismiss*

Page 4:  "The *proposal to build* the Seabrook Lock is only mentioned in the defendant's opening brief because construction of the lock was proposed by the Corps to remedy some of the undesirable hydrological effects of the MR-GO.  The *proposal* shows that the LPVHPP project and the MR-GO project *are not unrelated.*"  (First and second emphasis in original, third emphasis added).

*United States' Motion to Certify*

Page 5:  "[T]he United States has sought this Court's permission to certify a single well-defined legal issue – the applicability of 33 U.S.C. § 702c to claims for Katrina-related flood damages—

1

and has not sought certification with respect to the other grounds which the United States moved to dismiss the Complaint."

Page 10:  "The legislative history reveals that MRGO was understood to be related not only to adjacent natural waterways but also to the national flood control program."

Page 11:  "The relationship between MR-GO and the national flood control program is underscored in the reports that Congress relied on when it authorized the LPVHPP, after Hurricane Betsy.  The report of the Army's Chief of Engineers, which is referenced in the post-Betsy law that authorized the LPVHPP, explained in detail that the contemplated levees were intended to guard against flood risk created by MRGO.  In so doing, the report revealed the relationship between the two projects."

Page 12:  "In short, the facts on which the *Graci* court based its holding no longer obtain.  An immediate appeal would allow the Court of Appeals to decide whether the established relationship between MRGO and the LPVHPP is sufficient to render the United States immune from liability for damage caused by MRGO and afford it an opportunity to determine whether the established relationship between the two projects provides an adequate basis for assessing the immunity of the United States."

*United States' Reply in Support of Motion to Certify*

Page 16, n.4:  "Notably, even if a federal flood project 'connection' is required, the United States would enjoy Flood Control Act immunity under any reasonable application of this standard.  For example, there *was a clear 'connection' between the LPVHPP and the MR-GO* in that the LPVHPP was designed to protect Greater New Orleans from surrounding waters, including those contained in the MRGO."  (Emphasis added).