UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES      CIVIL ACTION
CONSOLIDATED LITIGATION
                                    NO. 05-4182
PERTAINS TO:
INSURANCE CASES                     SECTION "K" (2)

## ORDER AND REASONS ON MOTION

For the second time, Defendant, State Farm Fire and Casualty Company ("State Farm"), has moved for a protective order to preclude the deposition of its supervisory employee, Alexis King. Record Doc. No. 5588.  In support of the motion, State Farm asserts that requiring King to testify will violate her Fifth Amendment privilege against self-incrimination.  Plaintiffs filed a timely opposition memorandum.  Record Doc. No. 5621.  Defendant received leave to file a reply memorandum.  Record Doc. Nos. 5989, 6009.

State Farm generally argues that King's deposition should be quashed and a protective order entered because State Farm is the subject of criminal investigation in which King might also be implicated.  The motion is supported by evidence, the most significant of which is the sworn affidavit of Joseph M. Hollomon, who states that he is a criminal defense attorney with personal knowledge that the United States Attorney for

the Southern District of Mississippi, the Attorney General of the State of Mississippi and two congressional subcommittees are investigating

> allegations of criminal misconduct allegedly by State Farm . . . and certain of [its] employees arising from their adjustment of insurance claims filed after Hurricane Katrina struck Louisiana and the Mississippi Gulf Coast in August, 2005.  Alexis 'Lecky' King is an employee of State Farm and was a catastrophe claim team manager assigned to work on claims in Mississippi resulting from Hurricane Katrina.

Defendant's Exh. B, Hollomon affidavit at ¶ 2.  The affidavit states that King has retained Hollomon to represent her in relation to the criminal and congressional investigations.  He states that "representatives of the United States Attorney for the Southern District of Mississippi have declined to give me binding assurances as to Ms. King's status other than to advise me that the federal investigation is ongoing."  Id. at ¶ 3.  In addition, Hollomon states that he "was advised by a Special Assistant Attorney General for the State of Mississippi that Ms. King was a target of the criminal investigation being conducted by the Mississippi Attorney General.  Although Attorney General Hood later informed State Farm that his investigation had been concluded, he has since been quoted in the news media indicating the contrary . . ."  Id. at ¶ 4.  Hollomon concludes that "if Ms. King is subpoenaed to testify at a deposition in [the instant action], I will instruct her to invoke her rights under the Fifth Amendment to the Constitution of the United States,

and those rights as guaranteed by the Constitution of the State of Mississippi, and I fully expect her to follow my advice as she has in the past." <u>Id.</u> at ¶ 5.

Plaintiffs do not present any evidence of their own which might dispute the facts established by State Farm's evidence. However, they argue among other things that a protective order barring King's deposition in its entirety is inappropriate because the Fifth Amendment privilege must be asserted on a question-by-question basis.

Fed. R. Civ. P. 26(c) governs motions for protective orders. The Rule provides that

> [u]pon motion by a party or by the person from whom discovery is sought, . . . and <u>for good cause shown</u>, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that the disclosure or discovery not be had [or] that the . . . discovery may be had only on specified terms and conditions, <u>including a designation of the time or place</u> (emphasis added).

The requirement "of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" <u>In re Terra Int'l, Inc.</u>, 134 F.3d 302, 306 (5th Cir. 1998) (quoting <u>United States v. Garrett</u>, 571 F.2d 1323, 1326 n.

3

3 (5th Cir.1978)); see also United States v. Talco Contractors, Inc., 153 F.R.D. 501, 513 (W.D.N.Y. 1994) ("Good cause must be established and not merely alleged.").

It is axiomatic that the scope of permissible discovery extends only to relevant matters that are "not privileged." Fed. R. Civ. P. 26(b)(1). The Fifth Amendment "privilege against compulsory self-incrimination 'can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.'" In re Corrugated Container Anti-Trust Litig. 620 F.2d 1086, 1091 (5th Cir. 1980) (quoting Kastigar v. United States, 406 U.S. 441, 444 (1972)). However, the privilege

> applies only when the possibility of self-incrimination is a real danger, not a remote and speculative possibility. . . . [T]he claim of privilege must be sustained if it is 'evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.' If, however, the incriminating nature of the response is not readily apparent to the court, the claimant must 'specify how he would be injured by any specific question [or answer]' . . . . In short, unless the danger of self-incrimination is readily apparent, the burden of proving that the danger exists lies on the claimant.

Steinbrecher v. Commissioner, 712 F.2d 195, 197-98 (5th Cir. 1983) (quoting Hoffman v. United States, 341 U.S. 479, 486-87 (1951); United States v. Carroll, 567 F.2d 955, 957 (10th Cir. 1977)) (additional citations omitted) (emphasis added). Thus, a "blanket refusal to answer questions is not sufficient to raise constitutional issues." National Life

Ins. Co. v. Hartford Accident & Indem. Co., 615 F.2d 595, 599 (3d Cir. 1980) (citations omitted).  Nonetheless, "[i]f a party reasonably apprehends a risk of self-incrimination, he may claim the privilege though no criminal charges are pending against him, . . . even if the risk of prosecution is remote."  Wehling v. Columbia Broad. Sys., 608 F.2d 1084, 1086 n.5 (5th Cir. 1979) (citations omitted); see also In re Corrugated Container, 620 F.2d at 1092 ("When a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster.") (quotation omitted) (emphasis added).  As to whether questioning of a witness might violate the Fifth Amendment, "the court focuses inquiry on what a truthful answer might disclose, rather than on what information is expected by the questioner."  Zicarelli v. New Jersey State Comm'n, 406 U.S. 472, 480 (1972).

     Applying these standards to the instant case, State Farm has shown that the possibility of King's self-incrimination is real, not remote and speculative.  Because the criminal investigations in Mississippi and the present civil action both relate to the adjusting of insurance claims in the aftermath of Hurricane Katrina, King would likely be exposed during a deposition to "'a responsive answer to the question or an explanation of why it cannot be answered [that] might be dangerous because injurious disclosure

5

could result.'"  Steinbrecher, 712 F.2d at 198 (quoting Hoffman, 341 U.S. at 486-87). Given the close relationship between the information about which King would be deposed in the instant case and the subject matter of the criminal investigations, King could reveal potentially self-incriminating information by answering or explaining why she could not answer.

In addition, plaintiffs may obtain substantial information that they need concerning State Farm's disaster adjusting practices through other means at this time, without subjecting King to the danger of criminal self-incrimination.  Such means include State Farm's corporate deposition under Fed. R. Civ. P. 30(b)(6), which has already been noticed and which is the subject of a separate pending motion, and the individual deposition of Michael Entwistle, whose sworn affidavit attached to State Farm's motion indicates that he held a supervisory position concerning Hurricane Katrina claims in Louisiana similar to King's position in Mississippi.  Defendant's Exh. E.

Under these circumstances, State Farm has established "good cause" for entry of a protective order concerning King's deposition.  Plaintiffs' necessary discovery can proceed in an orderly fashion without exposing King to the self-incrimination risks presented by requiring her immediate deposition.  The passage of time before she is

deposed may lessen the risk that she will have to assert her Fifth Amendment privilege if the pending investigations conclude or otherwise progress in a way that is favorable to King.  Accordingly,

State Farm's Motion to Quash Deposition of Alexis King and for Protective Order, Record Doc. No. 5588, is GRANTED, subject to the following conditions:  King's deposition in this litigation is merely being postponed, not precluded altogether.  At some point, King will be deposed in this matter.  **IT IS ORDERED** that no later than **September 25, 2007**, State Farm must submit a new affidavit from King's criminal defense counsel that describes the status of any pending relevant criminal investigations and King's involvement, if any, in the same direct way set out in Exhibit B.  In the meantime, plaintiffs may pursue the depositions of State Farm and Entwistle.  After receiving the new affidavit and pursuing these other depositions, plaintiffs may revisit the issue of deposing King by conferring with State Farm's counsel and by filing a new motion, if appropriate.

New Orleans, Louisiana, this  28th  day of June, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

CLERK TO NOTIFY:
Hon. Stanwood R. Duval, Jr.

7