## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, *Robinson* (06-2268) | § | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | § | |

## DEFENDANT UNITED STATES' REBUTTAL OF PLAINTIFFS'
## SUR-REPLY IN SUPPORT OF OPPOSITION TO
## DEFENDANT'S MOTION TO CERTIFY

To forestall entry of an order certifying Record Document 2994 for interlocutory appeal under 28 U.S.C. § 1292(b), the plaintiffs have filed yet another brief that is designed to distract the Court from the legal issues that make certification appropriate at this time. The plaintiffs' sur-reply is replete with misrepresentations and irrelevancies, and, ironically, highlights the need for an immediate appeal, to resolve without further delay whether this Court has subject matter jurisdiction. Certifying Record Document 2994 will allow the United States to petition the Court of Appeals for leave to appeal, to resolve whether the Flood Control Act of 1928 ("FCA"), 33 U.S.C. § 702c, bars this action. The motion to certify should be granted because there is

substantial ground for difference of opinion as to this controlling legal question.  *See* 28 U.S.C. § 1292(b).

The plaintiffs submitted their sur-reply to contest whether their Complaint's allegations concerning the Lake Pontchartrain and Vicinity Hurricane Protection Project ("LPVHPP") and its levees along the Mississippi River-Gulf Outlet ("MRGO") place those facts beyond dispute.  But as previously noted, these facts are established not only by the Complaint but also by a broad array of documents.  The failure of the federal hurricane protection system during Hurricane Katrina is so well known as to be subject to judicial notice.  Indeed, the Court of Appeals itself has taken judicial notice that the flooding of which the plaintiffs complain was precipitated by the breaching of the levees.[1]  The documents that place the LPVHPP and its levees and floodwalls beyond dispute are also susceptible to judicial notice.  The plaintiffs themselves not only have these documents, as revealed by their initial disclosures and their document productions, but have put some of them into the record.  Not fewer than four lengthy reports by teams of academics and engineers have documented the performance of the LPVHPP during Hurricane Katrina. Incorporated into the  Complaint is a map drawn from one of these reports.  It depicts the locations of most of the levee breaches and severely distressed (but not breached) levee sections as well as minor or partial breaches on the levees that lined the MRGO and the Inner Harbor Navigation Canal ("IHNC").  The plaintiffs have thus acknowledged the existence of the LPVHPP in general and the existence of the levees built as part of that project along some of the banks of the MRGO.

---

[1]*See Preston v. Tenet Healthsys. Mem. Med.,* 485 F.3d 804, 817 & n.6 (5th Cir. 2007).

Although the plaintiffs had some or all of these reports when they filed their opposition to the motion to certify, the plaintiffs refused to produce them prior to the filing of the United States' reply brief.  Now that those documents have been produced, they confirm that discovery is not needed to establish whether the LPVHPP encircled New Orleans East, St. Bernard Parish, and the Lower Ninth Ward when Katrina struck.  The LPVHPP and its performance during Hurricane Katrina have been exhaustively studied by the Interagency Performance Evaluation Task Force, which produced a report exceeding 6,000 pages in length.  The plaintiffs have this report.  A team of scientists led by engineering professors at the University of California at Berkeley also investigated these matters and produced a report.  The plaintiffs used a preliminary report of this team to draft the Complaint.  Yet a third investigation was conducted by professors from Louisiana State University.  These investigators produced a report.  The plaintiffs have it too.  Each and every one of these reports describes in detail the LPVHPP levees and floodwalls that encircled the plaintiffs' properties when Katrina struck.  In light of these sources, whose accuracy the plaintiffs cannot reasonably question, and the widespread knowledge concerning the breaching of levees during Katrina, the arguments in the sur-reply about whether the Complaint's averments constitute judicial admissions are not only baseless but also utterly inconsequential.

What truly matters at this stage of the litigation is whether the plaintiffs' legal arguments about the immunity accorded by the Flood Control Act have any merit.  The plaintiffs contend that this Court has subject-matter jurisdiction because the MRGO was not part of the LPVHPP and was not itself a flood control project.  This is a legal contention that cries out for prompt resolution.  If the United States is immune regardless of whether the MRGO was transmogrified into a flood control project or was absorbed into the LPVHPP, as the United States contends, then this Court lacks jurisdiction and the case must be dismissed without delay.  This legal

question can be resolved by the Court of Appeals as soon as a certificate of appealability issues and an appeal is authorized.  The parties agree that the MRGO was *not* a flood control project and was *not* absorbed into the LPVHPP.  The parties agree that the MRGO did *not* have a flood control purpose or function.  The parties agree that no levees were constructed *as part of the MRGO project.*  There is no factual dispute.  There can be no factual dispute because the parties are in agreement as to the relevant facts.

If the plaintiffs' legal theory is sustained on appeal, then the case can proceed in this Court, guided by the circuit court's construction of § 702c.  An immediate appeal will allow the appellate court to say whether the discovery that the plaintiffs intend to pursue is necessary—or even relevant—to the controlling legal question.  Any delay occasioned by an interlocutory appeal would be more than offset by the prospective savings that an appeal offers.  On the other hand, if the United States's construction of § 702c is correct—and there is substantial ground for concluding that the "plain language" construction advocated by the United States is (or, at a minimum, may be) correct—then this litigation is at an end.  And even if the correct construction of § 702c is one that gives less than full effect to the plain language of the statute and confines immunity to "damage from or by floods or floodwaters" *that a federal project could not control,* then this litigation is at an end.  Given the surpassing importance of this controlling legal question and the sprawling litigation to which it applies, the Court of Appeals is certain to expedite its review and provide a definitive answer to this controlling legal question as quickly as possible.  A certificate of appealability should therefore be issued now, to advance the ultimate termination of the litigation.

# ARGUMENT

### I. THE ORDER AND REASONS SHOULD BE CERTIFIED REGARDLESS OF THE LEGAL IMPORT OF THE COMPLAINT'S AVERMENTS CONCERNING LEVEES ALONG THE MRGO.

The United States has repeatedly and consistently cited the Complaint as establishing that levees along the MRGO were overtopped and washed away during Hurricane Katrina. *See, e.g.,* R.D. 822-1 (U.S. Mem. in Supp. of Mot. to Dismiss) at 3-4, 7, 15, 25, 27; R.D. 1183-1 (U.S. Reply Mem. in Supp. of Mot. to Dismiss) at 8-9, 12, 14; R.D. 3842-1 (U.S. Mem. in Supp. of Mot. to Certify) at 11, 14. Indeed, the motion to dismiss was a "facial" challenge which "accepts these allegations as true and establishes that jurisdiction is absent because (1) the plaintiffs' alleged damages were caused by floodwaters . . . ." R.D. 1183-1 ((U.S. Reply Mem. in Supp. of Mot. to Dismiss) at 10 n.4). Exhibits were adduced "merely [to] provide background information about MR-GO and the LPVHPP levees that were obliterated by Katrina's onslaught." *Id.* at 10. The plaintiffs have long recognized that the Complaint's averments pose an impediment to their argument that discovery is necessary prior to ruling on Flood Control Act immunity. *See* R.D. 1003-1 (Plt. Opp. to Gov't Mot. to Dismiss) at 23 & n.12. Initially, they attempted to trivialize the averments: "the references to failures and overtopping of levees was [sic] not intended to assert a basis for the Army Corps' liability." *Id.* at 23. They promised to "file a First Amended Complaint omitting these references," *id.* at 23 n.12, a step they have not taken. Pointing out that the Complaint's averments constitute judicial admissions simply drives home the point, which was already crystal clear: the flood of which the plaintiffs complain was a flood that occurred when

levees along the MRGO and elsewhere were breached.  This fact and others pose insuperable

problems for the plaintiffs.[2]

In view of this extensive development of the issue in earlier briefings, the plaintiffs'

assertion that they were "obligated" to file a sur-reply to address "an entirely new issue not

previously advanced" rings hollow.  *See* Plt. Sur-reply at 1.  Equally unfounded is their claim that

---

[2]The plaintiffs' more recent briefs seem to be coming to grips with the overwhelming evidence about the levees.  The recent filings no longer dispute the existence of levees along the MRGO.  They now merely confine their assertions to two factual irrelevancies.  First, they assert that the levees were not along the *entire* waterway.  *See* Plt. Sur-reply at 9 (reference in Complaint ¶ 73 to "levees along the MRGO and the Industrial Canal" does not "specify[] which part of the canal is bounded by levees"); 9 ("there is nothing in this statement reflecting the location of these alleged levees"); 10 (plaintiffs have not admitted "that there were levees abutting Reach 2 of the MR-GO").  Second, the plaintiffs now assert that the levees did not comply with "relevant engineering standards," Plt. Sur-reply at 12.  They do not deny that there were levees but simply contend that these "levees" did not measure up to certain criteria.  And to avoid addressing the *evidence that they now have* concerning the existence of levees along the MRGO (and elsewhere), they assert that the facts about the levees are not "peculiarly within the Plaintiffs' knowledge."  *Id.* at 4.

To avoid confessing that levees were built along the MRGO to the extent necessary to enclose Chalmette, Meraux, and other nearby communities in St. Bernard Parish, the plaintiffs attempt to redefine the issue as whether "'levees' were built along the entirety of the MR-GO."  *Id.* at 7; *see also id.* at 8 (plaintiffs "challenge . . . any suggestion that the entire MR-GO contained [sic] a flood control element").  Whether levees were built along the entirety of the MRGO is neither at issue nor at all relevant.  By repeatedly making an irrelevant assertion about "the entirety of the MR-GO," the plaintiffs avoid addressing the relevant facts that they cannot honestly contest:  levees *were* built along some stretches of the MRGO, and the breaching of those levees sent floodwaters cascading into the communities that those levees were erected to protect.

Whether the levees complied with "relevant engineering standards" is another dodge to avoid directly admitting the relevant facts.  In none of their briefs have the plaintiffs even attempted to show that compliance with "relevant engineering standards" has any relevance to the controlling legal question of Flood Control Act immunity.  Indeed, at bottom, this is nothing more than a claim that the MRGO levees were negligently designed or constructed, a claim clearly barred by the Flood Control Act.  Moreover, by redefining the issue as one of compliance with engineering standards, the plaintiffs are able to claim that levees do not exist—essentially defining the levees out of existence by virtue of their putative failure to comply with "relevant engineering standards."

the United States' citation of case law concerning judicial admissions was "untimely." *Id.* at 5 &

n.1.  The citation of controlling legal authority concerning the legal force accorded to factual

statements in pleadings was evoked by the plaintiffs' patently false assertion that "whether any

LPVHPP-mandated flood control structures—as approved by Congress—were ever constructed

by Defendants adjacent to the MR-GO-consistent with Army Corps design criteria—is a sharply

disputed question of fact."  Plt. Resp. at 7-8.  The sole purpose of a reply brief is to respond to

arguments raised in a prior opposition brief.  Citing the authorities that rebut the arguments made

by the plaintiffs in their opposition brief was therefore entirely proper and appropriate in the

United States' reply brief and did not justify the submission of a sur-reply.[3]

       But in any event, as set forth more fully in the United States' prior briefs, certification

does not depend upon establishing that levees were built along the MRGO.  *See, e.g.,* U.S. Mem.

in Support at 2-3, 6-11; Reply Mem. at 2-3, 13-14, 16-18 &n.4.  All that matters for purposes of

certification is that the plaintiffs have alleged floodwater damage and that the floodwaters were

waters that the LPVHPP failed to control.  Although the plaintiffs desperately denied even the

existence of the LPVHPP in their opposition to dismissal, *see* R.D. 1003-1 (Plt. Opp. to Gov't

Mot. to Dismiss) at 48 ("here, no flood control project existed"), the existence of the LPVHPP is

certainly beyond dispute.  The exact location and the precise nature of the levees, floodwalls, and

other flood control structures need not be shown if the plain meaning of the statutory text

provides any guidance as to the extent of the immunity conferred.  Because the controlling legal

---

[3]The sur-reply was incorrectly filed as a consent motion.  The undersigned counsel for the
United States was out of the office to attend to a death in the family when counsel for the
plaintiffs sought consent.  Although the undersigned informed plaintiffs' counsel that he would
respond when he returned to the office, the plaintiffs' "consent" motion for leave to file a sur-
reply was filed while the undersigned was traveling back from a funeral.

question can be resolved without reference to the specific nature and location of the LPVHPP flood control structures, the Court need not concern itself with whether levees lined any of the banks of the MRGO or whether they complied with "relevant engineering standards."[4]  For purposes of resolving the controlling legal question, other facts, which the plaintiffs no longer even attempt to dispute, provide a sufficient basis for certification.

In all events, even if application of the Flood Control Act turned on whether levees were constructed along portions of the MRGO, certification would still be proper.  As discussed, the plaintiffs' Complaint and judicial admissions establish that the flood of which the plaintiffs complain occurred when the levees that were, in fact, constructed along the MRGO were breached.

## II. Plaintiffs' focus on whether the MRGO "morphed from a navigable waterway to a flood control project" reveals the need for certification, to resolve whether this question has any relevance to the litigation.

The United States does not and has not at any time contended that the MRGO became a flood control project either in whole or in part.  The character of the MRGO project remained unchanged from its inception until Hurricane Katrina.  Any confusion about the nature of the MRGO project is attributable to the plaintiffs' legal theory and their desire to contrive factual disputes and avoid a prompt resolution of the litigation.  The plaintiffs' contend that the Flood Control Act does not provide immunity to their claims because they are suing for damage caused by the MRGO, a navigable waterway.  *See, e.g.,* R.D. 1003-1 (Plt. Opp. to U.S. Mot. to Dismiss)

---

[4]It would be strange indeed if the "sweeping" immunity "for any damage from or by floods or flood waters" does not apply unless flood control structures are built in compliance with "relevant engineering standards," *i.e.,* non-negligently.

at 34.  To forestall a definitive ruling on their legal theory, they erected a straw man, falsely

asserting that "[t]he Government claims that the MK-GO was, in reality, a flood control project at

least after 1965."  R.D. 1003-1 (Plt. Opp. to U.S. Mot. to Dismiss) at 28; *accord id.* at 4, 18, 48,

51.  The United States has unequivocally disavowed the position that the plaintiffs falsely attribute

to it.  In its Reply Memorandum in Support of  the Motion to Dismiss, the United States stated in

no uncertain terms that "it accepts the claim that MR-GO was a navigation project.  Contrary to

the plaintiffs' assertions, the United States does not contend that the MR-GO has flood control

features, nor does the United States contend that MR-GO ever became anything other than what

it always was: a navigation project."  R.D. 1183-1, at 5.  The plaintiffs' continued repetition of

the contrary does not make it true.  *See* Plt. Sur-reply at 1, 7, 11.

The controlling legal question is *not* the one posited by the plaintiffs.  In one fell swoop

they formulate the issue in a way that neatly combines both of the principal misrepresentations on

which they hang their opposition to certification:  "whether the MR-GO is a navigable waterway

not subject to FCA immunity as determined in the *Graci* litigation or whether the MR-GO

morphed into a flood control facility as a part of the LPVHPP is ultimately a question of law that

turns in part on a resolution of factual issues."  *Id.* at 11-12.  This statement is doubly misleading.

First, the plaintiffs' framing of the legal question creates a false dilemma that supposedly prevents

resolution of the controlling legal question of Flood Control Act immunity:  Is "the MR-GO a

navigable waterway," as the plaintiffs contend, in which case immunity does not apply?  Or did

"the MR-GO morph[] into a flood control facility as a part of the LPVHPP" (which the plaintiffs

have misrepresented to be the United States' position), in which case immunity does apply?

9

These are not the only alternatives.  Indeed, they are not even the relevant alternatives.[5]  By framing the legal question in this way, the plaintiffs beg the question of whether the United States is immune *even if* the MRGO *is* a navigable waterway that *was not* transformed into a flood control project or a flood control "facility."  Fundamentally, the immunity question turns on the character of the waters that caused the relevant damage, not the nature of the project.  *See Central Green v. United States,* 531 U.S. 425, 434 (2001).

       The second way in which the plaintiffs' formulation misleads is by implying that there is a factual dispute over the nature of the MRGO.  By framing the question as they have, the plaintiffs' posit a factual dispute where none exists.   This is nothing less than an attempt to fix the outcome of the inquiry, by again assuming their own conclusion.  Since it is undisputed that the MRGO is and always was a navigable waterway and is undisputed that the MRGO did not become a "flood control facility," it is certain that Flood Control Act immunity does not apply if their framing of the legal question is correct.  In addition, by falsely positing a "factual dispute," the plaintiffs gain the added benefit (to them) of painting certification as premature.  In effect, the plaintiffs have attempted to frame the legal issue in a way that assumes the correctness of their own legal position and ignores the United States' contrary reading of the statute.  But this begs the very question that lies at the heart of the motion to certify:  which construction of § 702c is correct?

       The plaintiffs' false framing of the legal question and their distortion of the United States' position highlights the propriety—indeed, the necessity—of issuing a certificate of appealability to

_____

[5]Taking every opportunity to confuse the issues, the Sur-reply also misrepresents that "Defendants argue that any mound of soil along the MR-GO placed there by, or under the direction of, the Army Corps is a 'levee' immunizing Defendants from liability under the FCA." Plt. Sur-reply at 12.  There is no basis for this assertion, and the plaintiffs provide none.

allow the United States to petition the Court of Appeals for permission to appeal.  Whether the Flood Control Act provides immunity for damage caused by the "navigational waters of the MR-GO," R.D. 1003-1 (Plt. Opp. to U.S. Mot. to Dismiss) at 46, that rose up over the banks of the MRGO and joined with the wind-whipped waters of the Gulf of Mexico and Lake Borgne to flood New Orleans East, the Lower Ninth Ward, and St. Bernard Parish as Hurricane Katrina passed by is a legal question that is ripe for decision by the Court of Appeals.  That the relevant damage was caused by those floodwaters is undisputed, as is the failure of the LPVHPP to control those waters and prevent the flooding.  These undisputed facts provide a sufficient basis for determining whether the United States is immune under the plain language of 33 U.S.C. § 702c.

## CONCLUSION

For these reasons, the United States' motion to certify should be granted.

Respectfully submitted,

 PETER D. KEISLER
Assistant Attorney General
C. FREDERICK BECKNER III
Deputy Assistant Attorney General
PHYLLIS J. PYLES
Director, Torts Branch
JAMES G. TOUHEY
Assistant Director, Torts Branch

s/ Robin D. Smith
ROBIN D. SMITH
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888
Washington, D.C.  20044
(202) 616-4289
robin.doyle.smith@usdoj.gov
Attorneys for Defendant United States

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 22, 2007, a true copy of Defendant United States' Rebuttal in

Support of its Motion to Certify was served on all counsel of record by ECF.


_____s/ Robin D. Smith_____
Robin D. Smith