## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**IN RE KATRINA CANAL BREACHES**                                **CIVIL ACTION**
**CONSOLIDATED LITIGATION**
                                                                **NO. 05-4182**

**PERTAINS TO:  *Robinson v. United States***                   **SECTION "K"(2)**
**C.A. No.  06-2268**

### ORDER AND REASONS

Before the Court is Defendant United States' Motion to Certify Order and Reasons (R.D.
2994) For Interlocutory Appeal (Doc. 3842).  Approximately two months after the entry of the
Court's Order and Reasons denying its Motion to Dismiss the Robinson plaintiffs' suit, the
United States seeks certification of whether the Flood Control Act of 1928 ("FCA"), 33 U.S.C. §
702c, compels dismissal of the complaint on the present record.  Having reviewed the motion,
memoranda and the relevant law, the Court finds the motion without merit for the reasons that
follow.


**Background**

The United States sought the dismissal of the *Robinson* complaint which seeks
compensation for damages allegedly caused by the Mississippi River Gulf Outlet ("MRGO").
The motion was brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Doc.
No. 822).  In Order and Reasons entered on February 2, 2007 , the Court denied the Motion to
Dismiss finding that it was legally insufficient in part because there were certain salient facts in
dispute.

In its original Motion for Certification (Doc. No. 3842), the United States argued that
under the law, the United States is immune for any damages caused by flood waters irrespective

of any involvement of a flood control project. principally relying on *Central Green v. United States,* 531 U.S. 425 (2001).  Additionally, the Government argued that in any event, the waters at issue were in fact waters that a federal flood control project were unable to control.  In support of this second argument, the Government urged that the Court could take judicial notice that the Lake Pontchartrain Vicinity Hurricane Protection Plan ("LPVHPP") did not control the flood waters of Hurricane Katrina and that "it is uncontested that the waters passing through MRGO did not damage plaintiffs before first going through or around the LPVHPP...." (Doc. 3842, p. 3).

Plaintiffs filed their Opposition (Doc. 4431) which *, inter alia*, emphasized that certain of the levees along MRGO were spoil area and embankments, and not part of a flood control project subject to § 702c immunity.

The Government then filed a twenty-two page reply memorandum taking a different tack from its original arguments.  In this document, the Government engaged in a detailed analysis of the instant Complaint and stated that the plaintiffs' had judicially admitted that the levees along the MRGO were part of a flood control project and were in fact levees as contemplated under § 702c.

Plaintiffs filed a sur-reply, (Doc. No. 5553) arguing that there were no such judicial admissions as was demonstrated by other paragraphs in the complaint, which were not discussed by the Government.  Plaintiffs argued that the Government mischaracterized the complaint and that clearly plaintiffs have argued from the beginning that the so-called MRGO levees are not "levees" for the purpose of FCA immunity as they were not built in compliance with Army Corps of  Engineer (the Corps) standards and were not erected using funds appropriated by

Congress expressly for flood control.  The Government filed a sur-reply in rebuttal to plaintiffs'

Sur-reply (Doc. No. 6052) stated the following:

> The United States has unequivocally disavowed the position that the
> plaintiffs falsely attribute to it.  In its Reply Memorandum in Support of the
> Motion to Dismiss, the United States stated in no uncertain terms that "it accepts
> the claim the MR-GO was a navigation project.  Contrary to the plaintiffs'
> assertions, the Unite State does not contend that the MR-GO ever became
> anything other than what it always was: a navigation project."  R.D. 1183-1, at 5.

Doc. 6052 at 9.  Apparently, the United States hinges its argument as to certification on a very

broad reading of *Central Green*, such that if flood waters cause damage and the United States is

sued as a result of those flood waters, it is immune regardless of the cause.  Taken to its logical

extreme, the United States could dynamite a levee along the Mississippi and be immune.  A ship

owned by the United States could collide into a dam causing flooding, and it would be immune.

The United States could break a water main causing flooding, and it could be immune.  In

essence, this is how broadly the United States reads *Central Green*.

Plaintiffs filed another Sur-Rebuttal (Doc. 6052) which takes the Government to task for

its ostensibly shifting theories.  Plaintiffs note that the Government first interjected the notion

that the MRGO had metamorphosed into a flood control project in its original motion to dismiss

and has been at least a component of its argument until Doc. 6052's filing.

Plaintiffs further contend that clearly there is a factual dispute as to the nature of the

embankments of  Reach Two of the MRGO which renders certification unfeasible.  (See Dec.

Nina D. Froeschle, ¶¶ 11-15).

The United States filed yet another Sur-Reply (Doc. 6167) and at this point and both

plaintiffs' and defendant's memoranda are filled with repetition.  Distilled to its essence, the

Government argues yet again that the controlling question is that flood control projects failed to

contain flood waters and therefore § 702c immunity applies regardless of its argument as to the broad scope of *Central Green*.

**Standard**

As stated by Judge Rosenthal in *Halliburton Energy Serv., Inc. v. NL Industries*, 2007 WL 268492 (S.D. Tex. Jan. 26, 2007):

> "Section 1292(b) appeals are exceptional. They are permitted only when there is a substantial difference of opinion about a controlling question of law and the resolution of that question will materially advance, not retard, ultimate termination of the litigation." *Clark-Dietz & Assocs. v. Basic Constr. Co.,* 702 F .2d 67, 69 (5th Cir.1983). "[F]act-review questions" are "inappropriate for § 1292(b) review." *Id.* "Finally, there must be substantial ground for difference of opinion over the controlling question of law for certification under § 1292(b)." *Ryan v. Flowserve Corp.,* 44 F.Supp.2d 718, 723 (N.D.Tex.2006). "But simply because a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement." *Id.* (citing 4 Am.Jur.2d *Appellate Review* § 128 (2005)). A "key concern consistently underlying § 1292(b) decisions is whether permitting an interlocutory appeal will 'speed up the litigation.' " *Id.* (citing *Ahrenholz v. Bd. of Trustees of the Univ. of Ill.,* 219 F.3d 674, 676 (7th Cir.2000)).

*Id.* at *11.

**Analysis**

So where do these meandering legal peregrinations take the Court?  First, the Court holds that the issue of whether the United States is immune from any damage it allegedly caused by flood waters  whether related to a flood control project or not is not a controlling issue of law where there is substantial ground for difference of opinion. In overruling the circuit court's decision, the Supreme Court narrowed the immunity granted by § 702c.  The holding in *Central Green* is: In order for the United States to be immune from damages caused by water under its control or supervision (1) the water must have a nexus to a flood control project and (2) the

water must be "flood waters."  In *Central Green,* the court remanded the case to determine what amount of damage, in any was caused by water which was not "flood water."  It involved a causation issue and did not broaden § 702c immunity.  Clearly there are circumstances where the United States may be held liable for damage resulting from flood water caused by its acts of omission or commission.

Second, the United States argues that all of the damage complained of was caused as a result of the LPVHPP not containing flood waters.  The issue is not ripe for adjudication because of the substantial factual dispute over the existence over flood control levees along Reach 2 of the MRGO.  (See Appendix 1)[1].  In the event there is no flood control protection along Reach 2, certainly the inhabitants of St. Bernard Parish would have been deluged with flood waters not attempted to be contained by a  flood control project.  The larger question, as to whether the United States is immune from damage in areas clearly protected by flood control projects is certainly not ripe for certification because it will not dispose of the entire case in light of the factual dispute above.[2]

Third, the Court finds that there has been no "judicial admission"  that there is a levee along Reach Two of the MRGO that would comport with the definition of  flood control project for purposes of § 702c immunity.  As stated in *Propath Services, L.L.P. v. Quest Diagnostics*, 2002 WL 535056 (N.D. Tex. April 9, 2002):

---

[1]The Court has attached a map which it found on the noted website prepared by the Army Corps of Engineers.  Plaintiffs hotly contest the nature of the "levee" that runs from the northwest to the southeast along the western bank of what is known as the Second Reach of the MRGO.  See Declaration of Nina Froeschle, ¶¶11-15 and the Declaration of Dr. Paul Kemp which were filed in connection with the plaintiffs' opposition to the original Motion to Dismiss.

[2]By this statement, the Court does not intend to indicate that it would certify this question if there were no factual disputes.

> For a statement to constitute a judicial admission it must 1) be made in a judicial proceeding; 2) be contrary to a fact essential to the theory of recovery; 3) be deliberate, clear, and unequivocal; 4) such that giving it conclusive effect meets with public policy; and 5) about a fact on which judgment for the opposing party can be based. *See Heritage Bank v. Redcom Laboratories, Inc.,* 250 F.3d 319, 329 (5th Cir.2001). The Court finds that although Plaintiff's statement in its First Amended Complaint was careless, especially in light of the arguments presented in its Motion for Summary Judgment and its Response to Defendants' Motion, it does not constitute a judicial admission because prong five of the *Heritage Bank* test is not satisfied.

*Id.* at *7; *see  Mullins v. Testamerica, Inc.*, 2006 WL 2167401, *6 (N.D. Tex. Aug. 2, 2006) (*citing Propath*). This issue has been vigorously contested from the inception of this matter and was argued to the Court prior to its rendering of its original decision on the Motion to Dismiss. (See Declaration of Nina Froeschle, ¶¶11-15 and the Declaration of Dr. Paul Kemp attached to original opposition to the original Motion to Dismiss). The United States virtually concedes in Doc. 6167 that if there is a factual dispute Reach 2, certification is not proper.  It stated at p. 8 of its memoranda:

> "In all events, even if application of the Flood Control Act turned on whether levees were constructed along portions of the MRGO, certification would still be proper.  As discussed, the plaintiffs' Complaint and judicial admissions establish that the flood of which the plaintiffs complain occurred when the levees that were, in fact, constructed along the MRGO were breached.

(Doc. 6167 at 8).  Of course, this statement is premised on the Government's contention that there were judicial admissions by plaintiffs in reference to the "levees" along Reach 2.  As stated above, the Court finds there were  no such admissions made.  The Government's multiple briefs have a Gilbert and Sullivan topsy-turvy flavor.  But in the final analysis, factual disputes preclude certification.

As this Court noted in *Gottfried Corp. v. Travelers Cas. and Surety Co.*, 2004 WL 1857656 (E.D.La. Aug. 17, 2004):

"The statutory language [of 28 U.S.C. § 1292(b) ] naturally suggests an opposition between a question of law and "a question of fact or matter for the discretion of the trial court." Wright & Miller, § 3930 (quoting *Garner v. Wolfinbarger,* 430 F.2d 1093, 1097 (5 Cir.1970)). Professors Wright and Miller further state:

> There is indeed no reason to suppose that interlocutory appeals are to be certified for the purpose of inflicting upon courts of appeals an unaccustomed and ill-suited role as factfinders. Even when the question is the supposed question of law whether there are any genuine issues of material fact that preclude summary judgment, ordinarily it seems better to keep courts of appeals aloof from interlocutory embroilment with the factual content of the record.

Wright & Miller, § 3930 (citations omitted). Indeed, federal courts have consistently held that questions of fact, such as whether a genuine of issue of material fact precludes summary judgment, are inappropriate for interlocutory appeal under 28 U.S.C. § 1292(b). *See Clark-Dietz & Assocs.-Engrs. v. Basic Constr. Co.,* 702 F.2d 67, 69 (5 Cir.1983); *see also, e.g., Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627, 631 (2 Cir.1991); *Johnson v. Alldredge,* 488 F.2d 820, 822 (3 Cir.1973); *Brown v. City of Onconta,* 858 F.Supp. 340, 349 (D.C.N.Y.1994); *Kaken Pharmaceutical Co. v. Eli Lilly & Co.,* 737 F.Supp. 510, 526-527 (D.C.Ind.1989).

*Id.* at *2.  Accordingly,

   **IT IS ORDERED** that  Defendant United States' Motion to Certify Order and Reasons

(R.D. 2994) For Interlocutory Appeal (Doc. 3842) is **DENIED**.

   New Orleans, Louisiana, this   2nd  day of July, 2007.

_____
   **STANWOOD R. DUVAL, JR.**
   **UNITED STATES DISTRICT COURT JUDGE**

7

APPENDIX NO. 1



Source: US Army Corps of Engineers, New Orleans District, Hurricane & Emergency
         Information. (*See* www.mvn.usace.army.mil/pao/response/chalmette)