UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES       CONSOLIDATED LITIGATION  _____  PERTAINS TO: ALL CASES _____ | § § § § § § § § | CIVIL ACTION NO. 05-4182 "K" (2) JUDGE DUVAL MAG. WILKINSON |

**DEFENDANT UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION TO PSLC'S MOTION TO COMPEL VIDEOTAPED FEDERAL 30(b)(6) DEPOSITION**

_____

Pursuant to Local Rule 7.5E, Defendant United States of America hereby files its Opposition to Plaintiffs' Subgroup Litigation Committees' (PSLC) Motion to Compel 30(b)(6) Deposition of the United States Army Corps of Engineers.

**I. INTRODUCTION**

The PSLC's motion to compel should be summarily denied because the PSLC (1) failed to provide adequate notice for the United States to respond to the 30(b)(6) Notice; (2) failed to comply with the requirement to confer or attempt to confer with the United States regarding

1

those discovery issues specified in PSLC's Motion to Compel (R. Doc. 5730-4, 5730-5), and (3) used the 30(b)(6) Notice for an improper purpose, specifically, to shift the burden to the United States to search through and reproduce documents previously produced to PSLC.

## II. BACKGROUND

On June 5, 2007, PSLC noticed the Videotaped Federal 30(b)(6) Deposition of the Corps of Engineers to take place on June 11, 2007.  The Notice required the deponent to produce documents responsive to the Notice two business days prior to the deposition.  *See* R. Doc. 5730-6.  On June 6, 2007, PSLC submitted a letter brief to Magistrate Wilkinson requesting the Court's assistance in resolving certain discovery matters.  *See* R. Doc 5730-8.  On June 7, the United States objected to the submission of the letter brief.

In the letter brief filed on June 6, PSLC expressed their dissatisfaction with the United States's responses and objections to the PSLC's written discovery requests pertaining to class certification issues.  PSLC noted counsel for the United States objected to many of the requests as "publicly available and therefore, obtainable from some source that is more convenient, less burdensome, and less expensive... Fed. R. Civ. P. 26(b)(2)(C)(I)," and referred PSLC to a website containing the IPET report and other documentation that may be relevant to each request, https://ipet.wes.army.mil.  PSLC argued this website does not allow public access to a "plethora" of information upon which the IPET report is based.

After receiving notice of the 30(b)(6) deposition, counsel for the United States, informed counsel for PSLC that the United States would provide the requested information, i.e., the information upon which the IPET report is based, in accordance with the United States' Document Production Protocol created in accordance with paragraph IV(C)(2) of this Court's

Case Management and Scheduling Order No. 4 (CMO 4). Specifically, production of the requested information would begin on June 15, 2007 and continue on a rolling basis. Plaintiffs' Liaison Counsel agreed to postpone the noticed deposition. *See* R. Doc. 5844 (June 7 email from Traci L. Colquette to Joseph Bruno).

On June 15, the United States produced to Plaintiffs' Liaison Counsel nearly all of the ESI (electronically stored information) from the IPET's web-based data repository—more than 400 gigabytes of data, on two hard drives.[1] Plaintiffs' only communication concerning this ESI production consisted of a telephone call from Plaintiffs' Liaison Counsel to United States' counsel Robin D. Smith in which Plaintiffs' Liaison Counsel expressed surprise that the hard drives were internal rather than external. Plaintiffs did not express dissatisfaction with the ESI production or advise or intimate in any way that they intended to proceed with the previously noticed deposition, which Plaintiffs' Liaison Counsel had agreed to postpone.

The United States had no notice that the PSLC intended to proceed with the deposition or was planning to move to compel. The PSLC made no attempt to secure a date for the deposition, nor did they inform the United States that they desired anything other than the ESI that the United States produced on June 15. Indeed, Plaintiffs' Liaison Counsel expressly represented that the PSLC would be satisfied if the requested ESI was produced and that no testimony was

---

[1] This 400 gigabytes contained 876,000 OCR text searchable pages and 24,000 native files. Notably, one file in particular displays an error message when one attempts to open it; this is a "test file." This same message pops up when one tries to access the same file directly from the IPET web-based data repository. The United States included this file with its production to the PSLC in attempt to provide them with a *complete* replica of the repository. Additionally, a small amount of ESI was intentionally withheld pending completion of a privilege review. The United States will supplement the June 15 ESI production pursuant to CMO No. 4.

sought.  On June 21, PSLC filed the Motion to Compel to which the United States instantly responds.

On June 26, U.S. Counsel James F. McConnon, Jr. received a phone call from PSLC Frank Dudenhefer during which Mr. Dudenhefer advised Mr. McConnon that his staff was having difficulties accessing the information on the hard drives.  *See* Declaration of James McConnon, at ¶ 3.  Mr. McConnon offered to have the technical staff from the United States' contractor, CACI, speak with PSLC's technical staff to assist in resolving those difficulties.  *See* Declaration of James McConnon, at ¶ 3.

On June 27, Mr. Dudenhefer emailed a query from his technical advisor, Mr. Rob Warren, regarding DAT files on one of the drives, and Mr. McConnon promptly forwarded it to the CACI personnel.  *See* Declaration of James McConnon at ¶ 4.  Later that same day, Mr. Dudenhefer forwarded another email to Mr. McConnon, which addressed a number of technical issues.  *See* Exhibit 2 attached to the Declaration of James McConnon.  Mr. McConnon encouraged Mr. Dudenhefer to have his technical staff consult with Mr. Joe Green, a CACI employee.  *See* Exhibit 2 attached to the Declaration of James McConnon.  Shortly thereafter, Mr. McConnon received confirmation that Mr. Warren was able to resolve the issues after speaking with Mr. Green.  *See* Declaration of James McConnon at ¶ 6.

On June 28 and 29, Mr. McConnon asked Mr. Dudenhefer if he needed any additional assistance with the hard drives.  *See* Exhibit 3 attached to the Declaration of James McConnon.  Mr. Dudenhefer responded on June 29 as follows, "[t]he Government Technical Consultants have provided their counterparts [sic] on the Plaintiffs side with assistance over the course of the past several days.  We thank you for seeing that this line of communication was opened."  *See* Exhibit 4 attached to the Declaration of James McConnon.

Finally, on July 2 (today), Mr. Dudenhefner, in response to Mr. McConnon's previous email query as to whether PSLC had any additional issues that needed to be resolved regarding the hard drives, contacted Mr. McConnon and advised him that the PSLC was having difficulty searching the 24,000 files that were in "native" format. *See* Declaration of James McConnon at ¶ 8. Mr. Dudenhefner also asked whether Mr. McConnon would perform a search for "elevations for MRGO." *See* Declaration of James McConnon at ¶ 8. Mr. McConnon responded that the United States had no greater abilities to search for files than he did and that he should contact the United States' technical staff for assistance. *See* Declaration of James McConnon at ¶ 8. In the afternoon of July 2, Mr. Green discussed these technical issues with Mr. Carl Gethers, PSLC's technical contractor, and Mr. Gethers advised the United States needed to take no additional action. *See* Exhibit 5 attached to the Declaration of James McConnon. Approximately two hours later, Mr. Dudenhefner contacted Mr. McConnon and advised that his technical staff contacted CACI personnel and they were unable to resolve the issues with regard to accessing the native files. *See* Declaration of James McConnon at ¶ 10. Mr. McConnon then contacted Mr. Green who advised that the only way to productively search the native files was to open them one at a time with the application that produced them or with some compatible viewer. *See* Declaration of James McConnon at ¶ 11. Mr. Green also advised Mr. McConnon that an index would be needed to identify the software packages that belonged to the file extensions so the native files could be opened. *See* Declaration of James McConnon at ¶ 11. Mr. McConnon then notified Mr. Dudenhefer of his conversation with Joe Green and produced to him an index for some of the extensions and identified their associated software packages to be used to open the

native files.  *See* Declaration of James McConnon at ¶ 11.  Mr. McConnon also informed Mr. Dudenhefer that he would provide the remainder of the file extensions with associated software packages in the very near future.  *See* Exhibit 6 attached to the Declaration of James McConnon.

## III. ARGUMENT

### A. PSLC's MOTION TO COMPEL IS PREMATURE BECAUSE THEY FAILED TO NOTICE THE DEPOSITION 30 DAYS IN ADVANCE

Rule 30(b)(5) of the Federal Rules of Civil Procedure permits a notice to a party deponent to be accompanied by a request made in compliance with Rule 34 for the production of documents at the taking of the deposition.  It further requires that Rule 34 apply to such a request.  Rule 34(b), however, states that the party upon whom the request is served shall have 30 days to respond to such request.

PSLC's Motion to Compel is premature because they failed to provide the United States with the requisite 30 days notice.  PSLC noticed the deposition, which requested the deponent to produce certain documents on June 5, 2007.  This Notice required the deponent to appear for oral examination on June 11, 2007 and produce the requested documents two business days prior–giving the United States a mere four days to respond to the request.  Although PSLC failed to provide the 30 days notice, the United States still provided the requested information on June 15, 2007.

### B. PSLC DID NOT CONFER IN GOOD FAITH PRIOR TO FILING THE MOTION TO COMPEL

PSLC's Motion to Compel the 30(b)(6) Deposition of the United States Army Corps of Engineers should be denied because the PSLC failed to comply with the "meet and confer"

requirement of Rule 37 of the Fed. R. Civ. P., which states that a party may move to compel disclosure after having "in good faith" conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action. *See Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1010 (9th Cir. 2004)(upholding district court's denial of defendant's motion to compel because the parties had not conferred on all disputed issues before the motion was filed); *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D.Nevada 1996)("in order to bring a proper motion to compel under Rule 37(a)(2)(B), a moving party must personally engage in two-way communication with the non-responding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention."); *see also* Local Rule 37.1E.  PSLC made no such efforts prior to filing the motion to compel.

  Plaintiffs did not meet and confer with the United States concerning their dissatisfaction with the ESI production nor did they indicate that they intended to re-notice the deposition.  The *only* "meet and confer" that occurred took place *before* the June 7 agreement that Plaintiffs would withdraw their letter brief and postpone the deposition.  *See* R. Doc. 5730-7 (June 6 email from U.S. Counsel Richard Stone to Plaintiffs' Counsel Scott Joanen).  The United States received no other communications regarding this matter from the PSLC until learning through the ECF system (after the fact) of the filing of the motion to compel and the motion for expedited hearing.

  It is essential that the PSLC be required to comply with Rule 37 because the subject matter for which they are requesting 30(b)(6) testimony is extremely over-broad and requests testimony not reasonably calculated to the discovery of admissible evidence pertaining to class

certification.  *See* R. Doc. 5730-6, pages 9-12.  The Interagency Performance Evaluation Task Force (IPET) consisted of over 200 members who gathered the information which is contained in the IPET repository.  PSLC has requested a single witness to testify regarding the "completeness or accuracy" of the 400 gigabytes of information from the IPET repository.

Request No. 11 of Exhibit A is a specific example of one such over-broad request.  It asks for "[T]he identification of all information and reports on the location and date from temporary water level gauges installed to monitor the draining of Southeast Louisiana and the New Orleans region."  This request provides no limitations as to time and its referenced locations "Southeast Louisiana" and "New Orleans region" are ambiguous.  In addition, Request No. 19 asks for, "The identity and roles of any additional partners needed to complete the LIDAR, aerial and terrestrial, post Katrina."  Taken as written, this request is not reasonably calculated to lead to the discovery of admissible evidence.  These are just two examples of the many over-broad requests submitted in the PSLC's deposition notice.  Accordingly, it is imperative that counsel for both sides to be able to discuss and attempt to narrow the scope of the subject matter for which PSLC requests 30(b)(6) testimony by a single witness.

Further, in the Motion to Compel, PSLC asserts the United States should be required to produce a witness who can provide testimony "substantiating the veracity of the background information and conclusions of the [IPET] report..."  PSLC argue such is necessary because the IPET website contains a disclaimer that the IPET "report is the independent opinion of the IPET and is not necessarily the official position of the United States Army Corps of Engineers."  Although the United States through the Corps has not adopted the report as its "official position," it is responsive to PSLC's requests for production.

Finally, PSLC asserts in the Motion to Compel that "the United States enjoys no general right to withhold information from an opposing litigation and secrecy must be predicated upon a specific claim of some privilege... The government has shown no claim of such privilege." This argument is completely unfounded. The United States has made no attempts to "hide the ball" at any point during the discovery process. PSLC is well aware of the United States' document and ESI production obligations, as they are specifically indicated in the United States Documentation Production Protocol, which was implemented pursuant to CMO 4.

The Motion to Compel is merely an attempt by PSLC to circumvent the procedures which have already been agreed upon by the parties *and* approved by the Court. Massive amounts of information (documents and ESI) exist that are relevant to this litigation–so much that they cannot be produced in the traditional manner. The Court understood this and approved the United States Document Production Protocol to establish alternative production procedures, as well as the Court's Master Protective Order (*See* R. Doc. 5393). The United States produced the ESI pursuant to the Protocol, converting those files that could be converted and leaving the others in their "native" formats.

In accordance with the same Protocol, PSLC are to establish a joint electronic repository for document production. This process will require PSLC to hire a vendor which will advise PSLC as to the databases and/or software required to access the information produced by the United States. The PSLC is unable to view the information because they have apparently failed to select a vendor and obtain the appropriate software/database(s) to view the files.

## C. PSLC IS USING THE 30(b)(6) NOTICE FOR AN IMPROPER PURPOSE

The United States has produced, in accordance with the United States' Document Production Protocol, the information requested by PSLC. However, based on conversations between PSLC and counsel for the United States, PSLC doesn't want to take the time to search through the information. PSLC is trying to use the 30(b)(6) Notice as a means of forcing the United States to bear the costs and the burden of sorting through the information for them. Specifically, in their motion to compel, the PSLC states that the "government should be required to appear at deposition, producing the appropriate records, and submit to inquiry regarding the same." Essentially, the PSLC wants the United States to search through all of the information that has already been provided to the PSLC and sift out those documents specifically responsive to the 30(b)(6) deposition notice, and have the deponent produce that documentation–again. There are no discovery rules under which a party may be required to *re*produce discovery which has already been produced.

The United States has gone above and beyond its duty to simply provide PSLC with responsive discovery. The United States has even provided assistance through its *own* vendor, CACI, to PSLC's technical staff to assist them with numerous technical issues. Every time Mr. Dudenhefer contacted Mr. McConnon with a technical issue, Mr. McConnon promptly forwarded the query to the United States' contractor, which promptly addressed each issue. *See* Declaration from James McConnon. Moreover, Mr. McConnon promptly followed up with PSLC just to confirm whether each issue had been resolved, as well as, whether they needed

*additional* assistance.  *See* Exhibit 3 and Exhibit 4 attached to the Declaration of James McConnon.

The United States has gone above and beyond the requirements set forth under Rules 30(b)(6) and 34 of the Federal Rules of Civil Procedure.  There is no basis for requiring the United States, via motion to compel 30(b)(6) deposition, or any other means for that matter, to sort through and reproduce documents already previously produced to PSLC.

### IV.  CONCLUSION

For these reasons, the United States respectfully requests that the PSLC's Motion to Compel Videotaped Federal 30(b)(6) Deposition be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

C. FREDERICK BECKNER III
Deputy Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY, JR.
Assistant Director, Torts Branch

/s/ Tara A. Bowman
TARA A. BOWMAN
ROBIN D. SMITH
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 888
Washington, D.C.  20044
(202)-616-4400 / (202) 616-5200 (Fax)
Attorneys for the United States

Dated: July 2, 2007

## **CERTIFICATE OF SERVICE**

I, Tara A. Bowman, hereby certify that on July 2, 2007, I served a true copy of the United States' Memorandum in Opposition to PSLC's Motion to Compel 30(b)(6) Deposition upon all parties by ECF.

                           s/   Tara A. Bowman  
                           TARA A. BOWMAN