

| | | | |
|---|---|---|---|
| JOHN F. ASMAR | MARTIN H. LEVIN | MIKE PAPANTONIO | DAVID H. LEVIN |
| BRIAN H. BARR | STANLEY B. LEVIN | A. RENEE PRESTON | (1938-2002) |
| M. ROBERT BLANCHARD | ROBERT M. LOEHR | MARK J. PROCTOR | |
| VIRGINIA M. BUCHANAN | MICHAEL B. LYNCH | TROY A. RAFFERTY | OF COUNSEL: |
| STEPHEN H. ECHSNER | NEIL E. McWILLIAMS, JR | D. KRISTIAN W. RASMUSSEN, III | |
| RACHAEL R. GILMER | STEVEN A. MEDINA | MATTHEW D. SCHULTZ | ROBERT F. KENNEDY, JR. |
| ROSS M. GOODMAN | Wm. JEMISON MIMS | F. JEROME TAPLEY | (LICENSED ONLY IN NEW YORK) |
| PETER L. KAUFMAN | CLAY MITCHELL | LEO A. THOMAS | W. STEVE BOZEMAN |
| KIMBERLY R. LAMBERT | R. LARRY MORRIS | BRETT VIGODSKY | (LICENSED ONLY IN MISSISSIPPI) |
| FREDRIC G. LEVIN | TIMOTHY M. O'BRIEN | CHRISTOPHER M. VLACHOS | |

LEVIN · PAPANTONIO
THOMAS · MITCHELL
ECHSNER & PROCTOR · P.A.
PROFESSIONAL CORPORATION   ATTORNEYS AT LAW

May 21, 2007

<u>VIA U.S. MAIL & FAX</u> (504/581-3361)

William D. Treeby, Esq.
Stone, Pigman, Walther, Wittmann, LLC
546 Carondolet St.
New Orleans, LA 70130

    Re:   *In Re Katrina Canal Breaches Consolidated Litigation*
            **Defendant Washington Group International, Inc.'s Objections & Answers**
            **to MRGO Plaintiffs' First Requests for Admission, Interrogatories,**
            **and Requests for Production of Documents**

Dear Mr. Treeby:

In conjunction with the other firms comprising the MRGO PSLC, I will be handling the Defendants' respective responses to our class certification discovery requests, including those of WGII. Any motion to compel we might file with respect to your discovery objections and responses will be due Monday, May 30. I write in accordance with CMO No. 4 ¶ III(B)(2), Fed. R. Civ. P. 37(a)(2)(B), and LR 37.1E, to address our concerns in that regard.

Your substantive responses were candid and made with every effort to provide what limited information is available to you this early in the class proceedings, which makes life easier for all of us. My only concern at this point regards your "General Objections" and the privilege/work product objections routinely interposed in your otherwise apparently forthcoming responses. I am honestly (and pleasantly) surprised that I have no real quarrel with any of your 76 individual responses, but the general objections raise serious concerns and require a frank discussion. As untoward as the implication may seem, I hope they are no more than typical boilerplate prefatory objections. If so, I believe we can get past them in short order. I can be available by phone virtually anytime this week to discuss these matters.

WGII has lodged five "General Objections." They are (to paraphrase):

1. that the caption in our discovery requests reflects docket numbers of civil actions that do not name WGII as a defendant;

2. that Plaintiffs used defined terms in propounding the discovery;

3. that Plaintiffs borrowed terminology from Fed. R. Civ. P. 23 without specifically referring to Rule 23;

4. that Plaintiffs have sought responses from WGII pertaining to submission of Form 95s; and

5. that all discovery requests are objectionable "to the extent they seek discovery protected by the attorney-client privilege or attorney work product doctrine."

By their terms, as I read them, these "general" objections purport to apply to each and every discovery request.

To begin with, federal courts uniformly frown upon "general objections" of this sort. The District Court of Kansas recently explained why:

> This Court has characterized these types of objections as worthless for anything beyond delay of the discovery. Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery. Thus, this Court has deemed such ostensible objections waived or [has] declined to consider them as objections.

*Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 666-67 (D. Kan. 2004) (internal citations and quotations omitted). With this admonition in mind, I turn to WGII's own general objections.

*First General Objection.* We have no problem with your first general objection. The PSLC was ordered to file a master class complaint that consolidated all extant class actions, including many in which WGII was not named as a defendant. We did not intend to (nor could we) serve discovery upon WGII in cases in which WGII is not a party.

*Second General Objection.* We view the second general objection as a serious problem. As I am sure you appreciate, the PSLC used defined terms in order to streamline the requests (avoiding lengthy and repetitious formulaic phrases) and to clarify exactly what was meant by use of terms central to the issues (such as "inundation," which I address below). You cite Webster's in noting that our defined terms stray from standard dictionary definitions. That a given defined term might not fit Webster's definition is precisely the reason why defined terms were used—to avoid ambiguity as to what a given term meant as used in the requests (though of course the defined terms hew closely to their everyday definitions, e.g., we did not define "you" to include other Defendants or "inundation" to include wind, etc.).

Disregarding the defined terms is tantamount to rewriting the discovery requests because doing so literally gives a new and different meaning to the terms of the requests, and thus to the requests themselves. As just one example, our definition of the term "you" includes

representatives working on your behalf. I doubt that Webster's defines "you" in such a way, but your reinterpretation of the term consistent with Webster's would relieve you of any obligation to respond with respect to those working on your behalf—an otherwise perfectly valid request and one made clear only by virtue of the defined term "you."

I suppose one way of dealing with this would be for WGII to explain what meaning it gave to the various defined terms that it refused to acknowledge. I think the more appropriate course—and the one we would request from the Court—would be for WGII to reconsider the requests while honoring the defined terms. In doing so, it might confirm that different responses are not required or give the different responses that are required. Either would satisfy us.

Finally on this point, and illustrative of it, our definition of "inundation" ("the touching of real or personal property by water (other than but possibly including precipitation)") is not "nonsensical" as your narrative objection claims. Carefully read, the term refers to "flooding," i.e., the touching of real or personal property by water, including property that also was touched by precipitation, but not property that was touched only by precipitation. In other words, if "flood" waters touched a property, it was inundated. The fact that precipitation also touched the property would not change that. But the touching of property by precipitation only would not constitute inundation. We did not use the term "flood" because it has ambiguous vernacular and legal meanings (and connotations) that we wished to avoid. That you took particular issue with the term "inundation" is of specific concern to us because you take care to reiterate the general objections in response to requests that use that term (e.g., RFAs 21-28, 35, 37, 43-45). Your general objections purport to apply to all requests, but the reiteration of the general objections in response to requests containing the term "inundation" strongly suggests that you have reinterpreted the term and then responded based upon your interpretation of it, which would be tantamount to rewriting the requests, as discussed above.

A five-minute conversation may allay our concerns over your rejection of our defined terms, but I have taken the time to lay out the problem at length here in hopes of clarifying those concerns.

***Third General Objection.*** Our discovery does not ask that you "disregard the plain language of Rule 23 and the vast body of jurisprudence that has interpreted these terms." To the contrary, it assumed that the responding attorneys would recognize "numerosity" and the like as the terms of art they are. Your objection indicates that in fact you have applied the legal meaning of each such term in responding, so I do not believe we have any quarrel here.

***Fourth General Objection.*** I don't quite understand the fourth general objection. You state that "WGII has no information on which it can be expected to respond to plaintiff's inquiries concerning Form 95's." I believe the correct response thus would be that WGII has insufficient knowlege rather than to object that a request seeking information not in your possession is "unreasonable, burdensome, and not calculated to lead to the discovery of

Page Four
May 21, 2007
Re: WGII Discovery Responses

admissible evidence." If WGII has no information regarding Form 95s then that is that; and that is fine. I believe that to be the case based on your first interrogatory answer. But I would like to confirm this belief. For what it's worth, you are correct that the primary target of all such discovery requests was the United States, but to the extent WGII has any responsive information or materials, it would be obliged to respond rather than to stand on a general objection.

*Fifth General Objection.* Your fifth general objection is a common and pernicious one. WGII objects to the discovery requests "to the extent they seek discovery protected by the attorney-client privilege or attorney work product doctrine." This objection is specifically reiterated in many of your individual responses.

The problem with this objection is that even when responsive information is forthcoming, we have no guarantee that WGII has not unilaterally withheld information subject to its unsupported claims of privilege and work-product protection. It is for this very reason that Rule 26(b)(5) requires claims of privilege be stated with particularity and accompanied by a privilege log enabling us (and the Court, if necessary) to assess the applicability of the privilege claimed. We must assume that the privilege is asserted for a reason, i.e., that responsive and ostensibly privileged information in fact exists, else no privilege would be implicated. It follows that a privilege log must accompany all such responses. But none was produced. If that is because no information was withheld, then there is no reason not to withdraw the objection, for it serves no purpose. If information has in fact been withheld, then we are entitled to a privilege log. We therefore request withdrawal of the general objection or a privilege log identifying all information withheld on grounds of work-product protection or privilege. I recognize that certain requests sought the basis for likely legal attacks on certification (e.g., Interrogatories 3-9), and that it would serve no purpose to demand a privilege log that spells out the work product underlying your responses; but the general objections do not fall into that category, so we must ensure that no responsive information has been withheld based on them. I sense that is the case, but we need to discuss the matter.

You may call me anytime. I look forward to hearing from you.

Sincerely,

MATTHEW D. SCHULTZ

On Behalf of the MRGO PSLC:

Page Five
May 21, 2007
Re: WGII Discovery Responses

        James P. Roy, PSLC Liaison Counsel
        Domengeaux, Wright, Roy &
        Edwards, LLC
        Lafayette, LA

        John Andry
        Andry Law Firm, LLC
        New Orleans, LA

        Clay Mitchell
        Levin, Papantonio, Thomas, Mitchell
        Echsner & Proctor, PA
        Pensacola, FL

        Pierce O'Donnell
        O'Donnell & Associates, PC
        Los Angeles, CA



Jerome R. Doak/JonesDay
Extension 5-2977
06/12/2007 03:18 PM

To  mschultz@levinlaw.com
cc  "Treeby, William" <wtreeby@stonepigman.com>, "Marple, Bill" <wemarple@jonesday.com>
Subject  WGI's Responses to Class Cert Discovery

**Dear Matthew:**

**This email confirms our telephone call on June 5, 2007, when we discussed and resolved the matters raised in your May 21, 2007 letter to Bill Treeby about Washington Group International's responses to plaintiffs' class certification discovery.**

**We told you that we had not withheld privileged documents or information, other than attorney work product generated by WGI's litigation counsel after litigation was filed against WGI. You confirmed that you were not seeking a privilege log as to that information.**

**With respect to Form 95s of the named plaintiffs, we did not have any at the time of our response. After our response, we obtained Form 95s for the named plaintiffs in the MRGO Group through releases that plaintiffs' counsel provided. You indicated that you believed we should supplement our discovery responses based on WGI now having those Form 95s. We will review the Form 95s that we have and supplement WGI's responses to your class certification discovery within the next week, if appropriate.**

**As to Washington Group's objection to your definition of the word "inundation," we stated that although we believe that our objection is valid, we did not hold back information or documents based on our objection to your definition of the word.**

## If there is anything further that we need to discuss, please let me know.

---

Jerre Doak
Jones Day
2727 No. Harwood
Dallas, TX 75201
(214) 969-2977
jrdoak@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========