UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HENRY WELLMEYER AND KELLY WELLMEYER | * * * | CIVIL ACTION NO.: 06-1585 |
| VERSUS | * * | JUDGE: FELDMAN |
| ALLSTATE INSURANCE COMPANY and KELT INSURANCE AGENCY, L.L.C. | * * | MAGISTRATE: ROBY |

**ALLSTATE INSURANCE COMPANY'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

After their home was significantly damaged from over ten feet of flood water caused by Hurricane Katrina, plaintiffs filed a claim under their flood insurance policy. Having been paid full policy limits for dwelling ($191,000) and contents ($50,000) under their flood policy, plaintiffs now flip-flop and contend in this suit that wind significantly damaged their house and contents, entitling them to full policy limits under their homeowner policy. Pet., ¶ XV; Am. Pet., ¶ VIII. Plaintiffs are not entitled to double dip. As shown below, plaintiffs are estopped as a matter of law from seeking recovery for the same losses under their homeowner policy. In the alternative, Allstate Insurance Company ("Allstate") is entitled to partial summary judgment declaring that plaintiffs' recovery, if any, under their homeowner policy should be offset by the total amount recovered under their flood policy.

EXHIBIT 12

78689

## BACKGROUND

This action arises out of significant damage to plaintiffs' property at 3540 Van Cleave Drive, Mereaux, Louisiana, as a result of Hurricane Katrina. The property sustained over ten feet of flood water, and plaintiffs filed a claim under their flood policy and recovered the full policy limits: $191,000 for dwelling and $50,000 for contents, for a total payment of $241,000. *See* Flood Payments, Ex. A. Plaintiffs admit this. Am. Pet., ¶ VIII. In fact, the $191,000 flood payment for the dwelling was nearly the amount of the actual cash value of the entire home, $200,233. *See* Flood Estimate, Ex. B.

Plaintiffs also instituted a claim under the Allstate homeowner policy, contending that wind damaged their home and contents. To date, plaintiffs have been paid a total of $4,880.65 for their dwelling, $2,500 for additional living expenses, and $6,197.22 for mold under their homeowner policy. Between the flood and homeowner policies, plaintiffs have been paid over $250,000.

Plaintiffs filed this suit on February 6, 2006, alleging that wind caused significant damage to their home, rendering it a total loss and entitling them to recover their policy limits under their homeowner policy, which they characterize as "$325,000 + in policy coverage." Pet., ¶ VIII.[1] They also seek additional living expenses, penalties, and attorney fees. As set forth herein, the Court should hold that plaintiffs are estopped from claiming that their damage was caused by wind. In the alternative, the Court should hold that plaintiffs are not entitled to recover their full policy limits and that any additional recovery by plaintiffs under their

---

[1] The homeowner policy provided coverage for dwelling in the amount of $182,226, for other structures in the amount of $18,223, for contents in the amount of $127,559, and for additional living expenses up to twelve months. *See* Policy, Ex. C.

homeowner policy must be offset by amounts paid to plaintiffs under their flood insurance policy.

## LAW AND ARGUMENT

### A. Standard for Motion for Summary Judgment.

Summary judgment should be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). If the moving party meets this burden, Federal Rule of Civil Procedure 56(e) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047. The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995).

### B. Plaintiffs are Estopped From Claiming That Damage to Their Home Was Caused by Wind.

The Louisiana Supreme Court recently stated that an "'insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code.'" *Samuels v. State Farm Mut. Auto. Ins. Co.*, 939 So. 2d

- 3 -

78689

1235, 1240 (La. 2006) (quoting *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994)). In interpreting an insurance contract, a court must attempt to determine the parties' common intent. *Id.* The parties' intent, as reflected by the language in the policy, determines the extent of coverage. *Id.* An insurance contract must be construed as a whole, and each provision in the policy is to be interpreted in light of the other provisions, so that each provision is given meaning. *Rolston v. United Services Auto. Ass'n*, No. 2006CA0978, 2006 WL 3849949, at *3 (La. App. 4 Cir. 2006). Further, words and phrases in insurance policies must be construed in accordance with their plain, ordinary and generally prevailing meaning. *Menendez v. O'Niell*, No. 2006CA0451, 2006 WL 3804626, at *3 (La. App. 1 Cir. 2006).

Like all homeowner insurance policies, plaintiffs' Allstate homeowner policy excludes coverage for damage caused by flood waters. In pertinent part, plaintiffs' policy provides as follows: "We do not cover loss to the property ... consisting of or caused by ... [f]lood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind." *See* Ex. C. This language is clear and unambiguous and unarguably encompasses damages caused by the over ten feet of flood water that inundated plaintiffs' property in connection with Hurricane Katrina. *See Buente v. Allstate Ins. Co.*, No. 05CV712, 2006 WL 980784, * 2 (S.D. Miss. Apr. 12, 2006) (finding the flood exclusion language in the plaintiffs' homeowner policy clear and enforceable); *Leonard v. Nationwide*, 438 F. Supp. 2d 684, 693 (S.D. Miss. 2006) (holding that provisions of plaintiffs' homeowner policy that exclude coverage for damages caused by water "are valid and enforceable terms of the insurance contract"); *Dobson v. Allstate Ins. Co.*, No. 06-0252, *et seq.*,

2006 WL 2078423, *11 (E.D. La. July 21, 2006) ("plaintiffs' homeowner's policies contain a clearly worded flood exclusion"). Indeed, plaintiffs do not contend in this lawsuit that their homeowner policy covers losses from flooding.

It is undisputed that plaintiffs' home sustained extensive damages from flood waters and that plaintiffs made a claim to their flood insurer. It also is undisputed that the plaintiffs received $241,000 in flood payments, and never disputed or returned the payments. Significantly, plaintiffs' flood claim constitutes an admission that their home was substantially damaged by flood. *See Mayton v. Auto-Owners Ins. Co.*, No. 05-667, 2006 WL 1214831, at * 3 (E.D. Va. May 2, 2006) (holding that evidence of flood insurance claim made by plaintiffs was admission against interest by plaintiffs). Plaintiffs are therefore "estopped from recharacterizing, as wind damage, losses for which [they have] accepted flood insurance compensation." *See Glover v. Nationwide Mut. Fire Ins. Co.*, No. 06cv85, 2006 WL 3780858, at * 1 (S.D. Miss. Dec. 21, 2006). Accordingly, the Court should grant summary judgment because plaintiffs' losses were caused by flooding, an excluded cause of loss under plaintiffs' homeowner policy.

C. **In the Alternative, Plaintiffs' Additional Recovery Under Their Homeowner Policy, If Any, Should Be Limited to the Difference Between the Flood Payments and the Actual Cash Value of the Home and Contents.**

At a minimum, and alternatively, although Allstate believes that it has paid plaintiffs all amounts due under their homeowner policy, Allstate requests that this Court order that Allstate's additional obligations under the homeowner policy, if any, be offset by all payments made to plaintiffs under their flood policy and limited to the difference between the total amount of flood payments and the actual cash value of the home and contents.

It is a fundamental legal principle that "the purpose of the insurance contract is to indemnify the owner against loss, that is, to place him in the same position in which he would have been if no [loss] had occurred." *Berkshire Mut. Ins. Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967); *see also Wright v. Assurance Co. of America*, 728 So. 2d 974, 975 (La. App. 2d Cir. 1999) ("the universally recognized rule to the effect a policy of insurance on property is predominately a contract of indemnity"). Because insurance law is based on principles of indemnification and reimbursement, "the benefit derived from insurance should be no greater in value than the loss." *Tejedor v. State Farm Fire and Cas. Co.*, No. 05CV679, 2006 WL 3257526, at * 2 (S.D. Miss. Nov. 6, 2006); *see also State Farm Fire & Cas. Co. v. Griffin*, 888 S.W.2d 150, 156 (Tex. 1st Dist. Ct. App. 1994) ("insurance contract is by definition a contract of indemnity, under which an insurer cannot be required to pay its insured more than the amount of his actual loss"); 15 La. Civ. L. Treatise, *Insurance Law & Practice* § 312 (3d ed.) ("insurance should be a device for making a person whole after a loss is suffered rather than a way in which he might increase his wealth"). Consequently, the maximum recovery that a plaintiff may receive from all applicable insurance policies for a loss to both his dwelling and personal property is the value of the plaintiff's actual loss. *Id.* Where a plaintiff has collected proceeds under his flood insurance policy, his maximum loss therefore is measured by "the difference between the pre-storm value [of his damaged property] and the insurance benefits he has collected to compensate him for [the damaged property]." *Id*; *see also Madere v. State Farm Prop. & Cas. Co.*, No. 06CV2889, 2006 WL 2644961, at *2 (E.D. La. Sept. 13, 2006) (contemplating deduction of amount paid to plaintiff under flood policy from total amount of

coverage under homeowner policy to determine potential amount owed under homeowner policy).

To allow greater recovery would provide insureds who have flood insurance and homeowner insurance the ability to collect windfalls and double recoveries for what is a single loss to their home and contents. It would further allow plaintiffs to collect payments from one policy for damages that were not covered by that policy and for which plaintiffs did not pay premiums. *See Griffin*, 888 S.W. 2d at 157; *Chauvin v. State Farm Fire and Cas. Co.*, 450 F. Supp. 2d 660, 666 (E.D. La. 2006) (recognizing that homeowner is not entitled to policy limits on one policy where majority of damage was caused by excluded peril, which is covered by another policy). Such a result would violate clear, well-settled Louisiana Supreme Court precedent, which provides that "Louisiana law does not allow for double recovery of the same element of damages." *See, e.g., Albert v. Farm Bureau Ins. Co.*, 940 So. 2d 620, 622 (La. 2006) (citing *Gagnard v. Baldridge*, 612 So. 2d 732, 736 (La. 1993)).

The analogous case of *State Farm Fire & Casualty Company v. Griffin* is both instructive and persuasive here. In *Griffin*, the plaintiffs' property was first damaged by flooding and then damaged by a fire several months later. *Griffin*, 888 S.W. 2d at 152. As a result of the flood damage, the plaintiffs recouped a payment under their flood policy. *Id.* As a result of the fire damage that the plaintiffs' house later sustained, the plaintiffs' homeowner insurer tendered a check to the plaintiffs for the amount necessary to repair all damage, less the actual cash value of the unrepaired items paid for under the flood policy. *Id.* The plaintiffs rejected that tender and filed suit, asserting that flood insurance and homeowner insurance policies cover different risks and that the amount that they were paid under the flood policy could not be used to offset recovery under the homeowner policy. *Id.* The appellate court disagreed, finding that the

contractual measure of damages with respect to each policy was actual cash value of the loss, and that the plaintiffs could have been indemnified for the portion of the home that had been damaged by flood under their homeowner policy only "if they had lost that amount a second time," which they did not. *Id.* at 157. The court therefore held that the insurer properly offset its payment to the plaintiffs by the amount paid under their flood policy. *Id.*

Here, plaintiffs were paid $241,000 under their flood policy for damage to their home and contents. As in *Griffin*, plaintiffs cannot now recover under their homeowner policy for the same damage for which they recovered under their flood policy. Plaintiffs suffered one loss. Further, as noted above, plaintiffs are estopped from now contending that the damage for which they recovered under their flood policy was caused by wind.

Applying these sound principles here, plaintiffs' additional recovery under their homeowner policy, if any, is limited. Specifically, the actual cash value of the plaintiffs' home at the time of the loss is $200,233. *See* Ex. B. Because plaintiffs were paid $191,000 under their flood policy for damage to their home, and because Allstate previously paid plaintiffs $4,880.65 under their homeowner policy for their dwelling, plaintiffs could not possibly be entitled to any more than $4,352.35 under the homeowner policy, if anything, for damage to their dwelling. Allstate, at most, may owe that additional amount to plaintiffs under the homeowner policy, though Allstate disputes that any additional monies are owed at all.

Likewise, plaintiffs were paid $50,000 under their flood policy for damaged contents. Plaintiffs have submitted a contents list to Allstate in connection with their lawsuit, and they estimate their damaged contents at $84,405, which has not been reduced to actual cash value. *See* Contents List, Ex. D. Accordingly, their maximum additional loss -- the most that plaintiffs possibly could be entitled to recover under their homeowner policy with respect to their

contents – is $34,405.[2] Once again, however, Allstate disputes that any additional monies are owed.

Accordingly, to the extent that the Court deems entry of complete summary judgment inappropriate, Allstate requests that this Court enter partial summary ruling that plaintiffs' recovery, if any, under their homeowner policy is limited to the difference between the actual cash value of their damaged property and their flood insurance payments.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of Allstate.

Respectfully Submitted,

_____
Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
Of
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 589-9700

Attorneys for Allstate Insurance Company

---

[2] This amount should be reduced further to reflect actual cash value. It is not necessary for the Court to determine the exact actual cash value on this Motion.

Case 2:06-cv-01585-MLCF-KWR   Document 53-4   Filed 03/06/2007   Page 10 of 10

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Memorandum in Support of Motion for Summary Judgment has been served upon all parties by electronic mail, facsimile and/or placing same in the United States mail, properly addressed and postage pre-paid, this 6th day of March, 2007.

_____

78689

## McGlone, Kevin

**From:** McGlone, Kevin
**Sent:** Thursday, November 09, 2006 8:41 AM
**To:** 'sreimonenq@lawla.com'; 'rhubbard@lawla.com'
**Cc:** Garner, James M.; Bludworth, Darnell
**Subject:** Xavier/ Travelers

Simeon,

This will confirm our conversation yesterday concerning various discovery issues. Please provide us with a copy of the VeriClaim document production no later than Monday, November 13. We also discussed whether Travelers had produced all documents concerning reinsurance and reserves information. You indicated that you had produced all such responsive information and were not withholding any information. Please confirm no later than Monday, November 13, whether this is, in fact, the case. If you have additional documents responsive to this request, please let us know whether you will produce them. As I mentioned, Judge Barbier, in the Children's Hospital case, granted a motion to compel production of this information and said that the production could be subject to a confidentiality agreement. If you prefer a confidentiality agreement, please let us know. A copy of Judge Barbier's order is attached for your review.

Finally, you asked inquired about our producing additional information regarding flood insurance. We object to any such production as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Please consider our discussion and this e-mail to have fulfilled the requirements of FRCP 37.1.

We look forward to hearing from you by Monday.

Kevin M. McGlone
Sher, Garner, Cahill, Richter,
    Klein, & Hilbert
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112
Phone:  504-299-2133
Fax:    504-299-2300



EXHIBIT
13

7/3/2007