**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

PERTAINS TO: MRGO

FILED IN      05-4181, 05-4182, 05-5237, 05-6073,
              05-6314, 05-6324, 05-6327, 05-6359,
              06-0225, 06-0886, 06-1885, 06-2152,
              06-2278, 06-2287, 06-2824, 06-4024,
              06-4065, 06-4066, 06-4389, 06-4634,
              06-4931, 06-5032, 06-5155, 06-5159,
              06-5161, 06-5162, 06-5260, 06-5771,
              06-5786, 06-5937, 07-0206, 07-0621,
              07-1073, 07-1271, 07-1285

CIVIL ACTION

NO. 05-4182 "K" (2)

JUDGE DUVAL
MAG. WILKINSON

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ANSWERS TO
MRGO DEFENDANTS' FIRST SET OF JOINT CLASS-CERTIFICATION
INTERROGATORIES, TO COMPEL PRODUCTION OF
DOCUMENTS, AND TO DECLARE REQUESTS
FOR ADMISSIONS ADMITTED AND OBJECTIONS WAIVED**

The MRGO defendants move to compel plaintiffs to provide proper responses to

the MRGO defendants' First Set of Joint Class-Certification Interrogatories and Requests

for Production.  Plaintiffs have failed to answer basic questions about their claims, their

injuries, their proposed class, and how they contend that their claims could be tried as a

class action on a representative basis.  This is proper class-certification discovery, and

plaintiffs should be required to respond to it.  Further, the MRGO defendants' Requests

for Admissions should be deemed admitted, and plaintiffs' objections to the MRGO

defendants' class-certification discovery should be deemed waived, because plaintiffs

failed to serve their responses or objections by the deadline established in the Court's Case Management Order No. 4.  (Docket No. 3299.)

## I.    Introduction

In compliance with the Court's CMO, the MRGO defendants timely served their class-certification discovery requests on plaintiffs on April 30, 2007 (CMO § III(B)(2)). The CMO, as amended by the Court's April 17 order (Docket No. 3776), required plaintiffs to respond to those discovery requests by May 30, 2007.  Plaintiffs, however, did not serve written answers or objections to any of the MRGO defendants' discovery requests on May 30.  Nor did plaintiffs request an extension of time from defendants, or file a motion to extend the Court-ordered deadline.

When the MRGO defendants did not receive any responses or objections, undersigned counsel contacted plaintiffs' Liaison Counsel on June 4, 2007.  Plaintiffs' Liaison Counsel informed defendants that plaintiffs had confused the deadline for class-certification-discovery responses (May 30) with the deadline for common-liability-issue-discovery responses (June 14) and that plaintiffs' responses would be forthcoming. Defendants, however, did not receive plaintiffs' discovery responses until June 12, 2007. In addition, plaintiffs' interrogatory answers did not include a verification as required by Fed. R. Civ. P. 33(b)(1) and (2).  *See, e.g., In re: Katrina Canal Breaches Consol. Litig.*, No. 05-4182 "K"(2), slip. op. at 6 (E.D. La. June 27, 2007) (Wilkinson, M.J.) (Docket No. 6049.)

After reviewing plaintiffs' discovery responses, the MRGO defendants again contacted plaintiffs' counsel and then conducted an in-person meet and confer with

2

plaintiffs' Liaison Counsel on June 19, 2007, to discuss the deficiencies in plaintiffs'

discovery responses, including their over-broad and sweeping objections and their

meager substantive responses.  In response, plaintiffs provided limited, but inadequate,

supplemental information for certain requests on June 26, 2007 and June 27, 2007.  For

the remaining deficiencies, plaintiffs indicated that they would stand by their original

responses.[1]

Documents relevant to this motion are submitted as accompanying Exhibits:

| | |
|---|---|
| Exhibit 1 | Plaintiffs' Response to MRGO Defendants' First Set of Joint Class Certification Requests for Admission, Interrogatories, and Requests for Production of Documents |
| Exhibit 2 | Chart summarizing plaintiffs' June 12, 2007 responses to requests for admissions |
| Exhibit 3 | Chart summarizing plaintiffs' June 12, 2007 responses to interrogatories |
| Exhibit 4 | Chart summarizing plaintiffs' June 12, 2007 responses to document requests |
| | (The charts attached as Exs. 2-4 are intended to serve merely as a guide for the Court—not as a complete summary of the discovery requests or the plaintiffs' responses.) |

---

[1] Defendants have served deposition notices on the named plaintiffs attaching as Exhibit "A" document requests that ask for documents substantially similar to defendants' requests for production.  (An illustrative example is attached as Ex. 7.)  The parties have agreed that plaintiffs' Motion for Protective Order and their opposition to this Motion satisfy any obligation plaintiffs would have to file motions to quash the document requests attached to the named plaintiffs' deposition notices.  The parties have agreed that, if the Court ultimately orders plaintiffs to produce additional information or documents that defendants could have used in the named-plaintiffs' depositions, (which begin July 9), defendants will have the right, either by agreement with plaintiffs or by appropriate Court Order, to conduct further examination to cover the compelled information.

882329v.1

| | |
|---|---|
| Exhibit 5 | Letter dated June 26, 2007 from Plaintiffs' Liaison Counsel to W. Treeby, G. Zwain, and C. Sutton, Jr. |
| Exhibit 6 | June 27, 2007 and June 28, 2007 email correspondence between F. Dudenhefer, Jr. and W. Treeby |
| Exhibit 7 | Sample Class Representative Deposition Notice with document request, Exhibit "A" |
| Exhibit 8 | Washington Group International, Inc.'s Objections and Answers to MRGO Plaintiffs' First Requests for Admissions, Interrogatories, and Requests for Production of Documents |
| Exhibit 9 | Letter dated May 21, 2007 from M. Schulz to W. Treeby with corresponding email communication on June 12, 2007 from J. Doak to M. Schultz. |

**II.   Because The Court Must Conduct A Rigorous Analysis Of Plaintiffs' Claims, Defenses, And The Relevant Facts In Order To Decide Class Certification, Defendants Must Be Able To Obtain Proper Responses To Class-Certification Discovery**

The Supreme Court and Fifth Circuit have repeatedly held that district courts must conduct a "rigorous analysis" of the requirements of Rule 23 before reaching a class-certification decision. *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). To engage in that "rigorous analysis," however, a court is dependent on a class-certification record that can be developed only through proper responses to discovery of the kind propounded by defendants here. For this reason, the MRGO defendants move to compel responses to their class-certification discovery.

Deciding whether the named-plaintiffs' claims can, at trial, represent the claims of all other proposed class members, *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

882329v.1

623 (1997), depends upon understanding the nature of plaintiffs' claims—the causes of action alleged, the elements of each claim asserted, the applicable defenses, and the facts upon which such questions as injury, causation, comparative fault, and damages will turn. As *Castano* instructs, the district court must go "beyond the pleadings" and "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues" under Rule 23.  84 F.3d at 744.

Without a discovery record on which to base its determinations, a court cannot conduct this proper Rule 23 analysis—deciding whether the named-plaintiffs' claims are typical of the class they seek to represent; whether the named plaintiffs are adequate to represent their proposed class without conflicts of interest; whether common questions truly predominate over those that will depend on individualized evidence; and whether, given the issues that will require individualized proof, a class trial can be manageable or superior to individual litigation.  For this reason, the Advisory Committee Notes to Rule 23 recognize the need for class discovery in order to make an "informed" class-certification decision.  Fed. R. Civ. P. 23(c), 2003 advisory committee's notes ("Time may be needed to gather information necessary to make the certification decision . . . . [D]iscovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial.").  Fifth Circuit precedent could not be more clear.  *See Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 420 (5th Cir. 2004) ("To make a determination on class certification, a district court must conduct an intense factual investigation."); *Unger v. Amedisys, Inc.*, 401 F.3d 316,

5

321 (5th Cir. 2005) (requiring district court to "find, not merely assume, the facts

favoring class certification").

Indeed, the evolution of class-action precedent and Rule 23 itself over the past

decade underscores the necessity for a well-developed class-certification record so the

court can scrutinize whether the case can be tried on a class-action basis:

- In 1996, after the district court "conditionally" certified "core liability" issues for class-action treatment but severed the critical issues of injury-in-fact, proximate cause, reliance—and affirmative defenses—the Fifth Circuit reversed because the district court had failed to consider the "relevant facts" and "how a trial on the merits would be conducted." *Castano*, 84 F.3d 734, 739, 740, 744.

- In 1997, the Supreme Court reversed class certification of asbestos claims because "'mass accident' cases are likely to present 'significant questions, not only of damages but of liability and defenses of liability, . . . affecting the individuals in different ways.'" *Amchem Prods., Inc.* 521 U.S. at 625 (quoting Fed. R. Civ. P. 23 advisory committee notes).

- In 1999, the Supreme Court rejected the notion that exigent circumstances could ever substitute for a case satisfying the requirements of Rule 23. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 864 (1999).

- In 2003, Rule 23(c) was amended to eliminate the availability of "conditional" class certification. "A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23(c) advisory committee notes.

- In 2003, Rule 23(c) was also changed to eliminate the former requirement that a class-certification decision be made "as soon as practicable." The new requirement of "an early practicable time" recognized that "[t]ime may be needed to gather information necessary to make the certification decision. Although an evaluation of the probable outcome on the merits is not properly part of the certification decision, discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial. In this sense, it is appropriate to conduct discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis." *See* Fed. R. Civ. P. 23(c)(1)(A) and advisory committee notes. Along these lines, an increasing number of courts require plaintiffs to submit a trial plan

because of the "critical need [for] determin[ing] how the case will be tried." *Id.*

- Most recently, the Fifth Circuit recognized this evolution of Rule 23 and re-emphasized that courts are no longer allowed to "conditionally certify" class actions, and courts must "find, not merely assume, the facts favoring class certification." *See Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, No. 05-10791, 2007 WL 1430225, at *5 (5th Cir. May 16, 2007) (internal citation omitted).

This evolving precedent confirms the critical importance of class-certification discovery. Without such discovery, defendants cannot address the issues that so frequently defeat class certification, such as causation, comparative fault, injury, and damages. And without a record on those issues, the Court cannot conduct the requisite rigorous analysis under Rule 23. Indeed, the recent experience of other courts considering proposed Hurricane Katrina class actions further demonstrates the need for class-certification discovery:

- Class certification was denied in a Hurricane Katrina insurance case because the "nature and extent of property damage . . . will vary greatly in its particulars, depending on the location and condition of the property . . . and depending also on what combination of forces caused the damage. Thus, . . . each individual claim will require particular evidence to establish the cause of and the extent of the loss . . . ." *Comer v. Nationwide Mut. Ins. Co.*, No. 1:05 CV 436 LTD RHW, 2006 WL 1066645, at *2 (S.D. Miss. Feb. 23, 2006);

- Class certification was denied in a Hurricane Katrina insurance case because of differences in the evidence that would be required "to ascertain the cause of the destruction and damage to" the relevant properties. *Guice v. State Farm Fire & Cas. Co.*, No. 1:06CV001 LTS-RHW, 2007 WL 912120, at *1 (S.D. Miss. March 22, 2007). [2]

---

[2] *See also Rohr v. Metro. Ins. & Cas. Co.*, No. 06-10511, 2007 WL 163-37, at *3 (E.D. La. Jan. 17, 2007) (Feldman, J.) (Hurricane Katrina case addressing improper joinder, but finding "each individual claim [required] particular evidence to establish the cause of and the extent of the loss."); *Weiss v. Allstate Ins. Co.*, No. 06-3774 "R" (5), 2007 U.S. Dist. LEXIS

The MRGO defendants propounded class-certification discovery to develop a record on the same issues that have defeated class certification in other cases, but plaintiffs refused to answer the overwhelming majority of these discovery requests. Consequently, defendants move to compel with respect to: the basis for the named-plaintiffs' claims; the members of their proposed class; the manner in which they intend to address in a class-action trial individual issues such as causation, comparative fault, injury, and damages; and the fundamentals of their alternative claims for certification under Rule 23(b)(3) and (b)(2), including the injunctive relief, if any, that they seek—all matters that are relevant to the class-certification decision. Thus, plaintiffs' objections should be overruled, and plaintiffs should be required to immediately provide meaningful responses to the outstanding discovery.

## III.   Defendants' Requests For Admissions Should Be Deemed Admitted, And Plaintiffs' Objections Should Be Deemed Waived, Because Plaintiffs Failed To Timely Respond

At plaintiffs' request, the Court entered a CMO that established a schedule for determining the class-certification issue, culminating with class-certification briefing in August and September 2007, and a class-certification hearing in early November. To reach that goal, the Court established a series of progressive interim deadlines. The May 30 deadline for plaintiffs' responses to written class-certification discovery (*see* CMO § III(B)(2), as amended (Docket Nos. 3299 and 3776)) was established to allow the

---

(continued…)

19973, at **5-6 (E.D. La. Mar. 21, 2007) (Vance, J.) (setting forth the type of conflict that will occur between proposed class members who filed or have an insurance claim for property damage resulting from the wind, as opposed to the proposed class members who allege damage from the flood waters).

882329v.1

parties to obtain basic information to conduct fact depositions that are scheduled to begin July 9 with depositions of the named plaintiffs.  The Court also set a July 20 deadline for *final* class-certification witness and expert designations.  (*See* Docket No. 5919.) Plaintiffs' class-certification expert disclosures are due July 30, and defendants' expert disclosures are due August 27.  Plaintiffs' class brief is due August 31.  In September, expert depositions and *Daubert* briefing are due to be completed, with the *Daubert* hearing set for October, and the class-certification hearing in early November.

Each step in this schedule depends on the successful completion of each preceding step—beginning with plaintiffs' providing answers to defendants' written class-certification discovery by May 30, so that defendants could effectively depose the named plaintiffs on schedule between July 9 and August 3.  (*See* Docket Nos. 3299 and 5919.) Plaintiffs have thwarted this entire schedule by failing to provide discovery responses until almost two weeks beyond the deadline, and then providing grossly incomplete and unresponsive answers.  For this reason, defendants have requested expedited consideration of this Motion to Compel and have also advised the plaintiffs that they will seek to re-depose the named plaintiffs at a second session.

### A.    Each Request For Admission Is Admitted Under Rule 36(a)

Plaintiffs' responses to defendants' requests for admission were due on May 30, but were not served until June 12.  (*See* Pls.' Resp., Ex. 1 at 38.)  Plaintiffs did not contact defendants' counsel or move for an extension of time to respond.  Thus, under the express terms of Rule 36(a), each request for admission is admitted.

Courts have repeatedly enforced this express provision of Rule 36(a) and held that when the responses were untimely, the requests for admissions were admitted by operation of law.  *See In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) (untimely responses to requests for admission deemed admitted where party failed to demonstrate a stipulation to extend the response time); *Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548 (5th Cir. 1985) (plaintiffs' "failure to make a timely response" to defendant's request for admission "negates" plaintiffs' subsequent denial of the request); *Stewart v. Marriott Courtyard*, No. CIV.A.3-2727, 2004 WL 2988488, at *1-2 (E.D. La. Dec. 13, 2004) (Duval, J.) (deeming requests admitted when responses were filed late and rejecting excuse that delays were "minimal").

Plaintiffs' counsel stated that they confused the deadline for class-certification discovery (May 30) with the deadline for common-liability discovery (June 14).  But the deadlines for class-certification matters are stated in § III of the CMO, while the deadlines for common-liability matters are stated in § IV of the CMO.  This error is hardly excusable, given the number of experienced attorneys representing plaintiffs in this action.  Moreover, plaintiffs' counsel have recently argued to this Court that another defendant's failure to timely respond to requests for admission resulted in a deemed admission.[3]

---

[3] *See* Pls.' Mot. to Deem Matters Admitted as to Requests for Admissions Propounded to Defs. Eustis Engineering Co., Inc., et al. (Docket No. 5278) (plaintiffs moved to have requests for admissions deemed admitted and objections waived where defendants did not respond by deadline set forth in CMO #4, arguing that the "magnitude of this case demands order" and "strict adherence" to CMO deadlines, because failure to respond will "hinder progress" under the CMO).

882329v.1

Significantly, plaintiffs still have not filed any motion to be relieved of the admissions that follow automatically, under Rule 36(a), from their failure to respond by the May 30 deadline.  Consequently, the Court has no basis upon which to relieve plaintiffs from their deemed admissions.  *See Am. Auto. Ass'n. v. AAA Legal Clinic, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991) (a court may not *sua sponte* relieve a party from deemed admissions).  Thus, defendants' requests for admission have been admitted by operation of law under Rule 36(a), and the Court should so declare.

### B.    Plaintiffs' Objections To Defendants' Discovery Requests Are Waived

Plaintiffs' objections to defendants' class-certification interrogatories, requests for admission, and requests for production were likewise due on May 30, but no objections were served on defendants until June 12.  Again, plaintiffs' counsel never contacted defense counsel nor filed a motion with the Court seeking an extension of the May 30 deadline.  Generally, "when a party fails to object *timely* to interrogatories, production requests, or other discovery efforts, objections thereto are waived."  *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) (emphasis added); *Leboeuf v. JAG Const. Servs., Inc.*, No. 01-942, 2001 WL 1298693, at *1 (E.D. La. Oct. 24, 2001) (Wilkinson, M.J.) (untimely responses to interrogatories and requests for production waived objections); s*ee also* Fed. R. Civ. P. 33(b)(4).  Thus, all of plaintiffs' objections to defendants' discovery requests are waived.

882329v.1

### C.   Plaintiffs Failed To Meet The Substance Of Defendants' Requests For Admissions And Failed To Provide Explanations For Their Denials And Qualifications

Even if defendants' requests for admission were not deemed admitted by operation of law, plaintiffs' responses to several of them still fail to meet the substance of the requested admission, as Rule 36(a) requires.  *See* Fed. R. Civ. P. 36(a) ("A denial shall fairly meet the substance of the requested admission . . . .").  Therefore, the Court should deem them admitted for this reason as well.  *See Apex Oil Co. v. Belcher Co.*, 855 F.2d 1009, 1015 (2d Cir. 1988) ("If the response is deemed insufficient, . . . the district court may order that the matter is deemed admitted or that a proper response be provided."); *see also Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994) (a party should not seek to evade answering by "quibbling and objection").

Specifically, plaintiffs' responses to Requests for Admission 1, 2, 3, 5, 6, 31, 35, and 36 simply do not meet the substance of the requests:

> **Request for Admission No. 1:**  "Admit that in order to determine whether an individual or entity is included in either of the two proposed classes, . . . it will be necessary to determine whether or not that individual or entity sustained damages as a result of inundation/flooding in this area which occurred during and immediately following landfall of Hurricane Katrina on or about August 29, 2005."

This Request was based upon plaintiffs' own proposed class definitions, as set forth in plaintiffs' motion for class certification (Docket No. 3616), and was properly directed at identifying issues of causation and resulting damages, which will require individual determination.

882329v.1

Plaintiffs denied this Request, but their explanation indicates that they simply dodged the substance of the Request.  Rather than admitting what plaintiffs' own proposed class definitions require, plaintiffs offered the evasion that "[c]lass inclusion . . . will be based on the Court's acceptance of an appropriate class definition . . . ." (*See* Pls.' Resp., Ex. 1 at 2.)  But defendants' Request was not directed at what the Court might do, but at what determinations were required for an individual to be included in plaintiffs' "*two proposed classes.*"  (*See id.* (emphasis added).)  Defendants are entitled to a response that fairly meets—not evades—the substance of this Request.

> **Request for Admission No. 2:**  "Admit that in order to determine whether an individual or entity is included in the proposed class, it will be necessary to determine whether or not a person had fulfilled the administrative claim filing requirements necessary to maintain a claim under the Federal Tort Claims Act."

Plaintiffs denied this Request, saying they did so because of the "futility" doctrine pleaded against the Government and "on the grounds of relevance."  (*See* Pls.' Resp., Ex. 1 at 2.)  This response once again dodges the substance of the Request, which asks whether or not plaintiffs admit that membership "in the proposed class" depends on fulfilling administrative-filing requirements, such as submitting Form 95 that is part of the exhaustion of administrative remedies required by the FTCA.  Indeed, plaintiffs' own proposed class definition, in their class motion, includes only "individuals and entities . . . who/which . . . will have fulfilled whatever administrative claim filing requirements this Court deems applicable in this matter."  (Docket No. 3616)  If plaintiffs are planning to take the position that persons who have not filed a Form 95 and thus have not met the administrative-filing requirement are included in their proposed class, they should say so.

**Request for Admission No. 3:**  "Admit that both of your proposed subclasses include individuals and entities that have not submitted to the United States Army Corps of Engineers a standard Form 95 or other administrative claim requesting damages related to Hurricane Katrina."

Plaintiffs denied this Request saying that their "class definition, as pled, fulfills the Form 95 requirement . . . [and] Plaintiffs reserve the right [to] amend this response should the Court recognize [sic] the Futility Doctrine."  (*See* Pls.' Resp., Ex. 1 at 3.)  Plaintiffs' cryptic explanation fails to meet the substance of the Request, which simply asks whether some proposed class members have not filed Form 95's—not whether plaintiffs are asserting a legal doctrine that they contend may excuse them from filing a Form 95. Thus, plaintiffs should answer the Request that was propounded.

**Request for Admission No. 5:**  "Admit that both of your subclasses include individuals or entities that sustained multiple injuries, (such as injury to real property, injury to personal property, and lost income), each of which injuries might have been caused by different legally responsible persons."

Plaintiffs' explanation for their denial of this Request was that unspecified individual issues will be tried separately.  (*See* Pls.' Resp., Ex. 1 at 4.)  This explanation is totally unrelated to the substance of the Request, which was directed at whether plaintiffs' proposed subclasses include persons with multiple injuries, each of which might have been caused by different legally responsible parties.  Plaintiffs' Consolidated Complaint alleges 18 separate types of injuries, ranging from property damage to personal injury to lost income.  (*See* Docket No. 3415, at 39-40, ¶ 80.)  If plaintiffs' proposed subclasses include individuals with different combinations of those 18 types of injuries—as defendants believe—defendants are entitled to crystallize that issue for the

14

class-certification briefing.  Similarly, defendants are entitled to confirm that the legally

responsible persons may vary—for each different injury and person.  *See Castano*, 84

F.3d at 739-40, 744-45.

> **Request for Admission No. 6:**  "Admit that the same jury that determines
> the cause(s) of multiple injuries alleged by a particular class member would
> have to determine comparative fault by allocating percentages of fault
> among all persons causing or contributing to each of those injuries."

Plaintiffs repeated their explanation of their denial of Request 5 as their response

here.  That response is even more inappropriate as to Request 6, however, because it

utterly fails to address the substance of the Request:  whether the same jury that decides

causation of a plaintiff's injury would also have to decide comparative fault.  If plaintiffs

contend that one jury can decide causation, and another jury can later decide comparative

fault for the same class member's claims, defendants need to know.  This issue is directly

relevant to the Rule 23 requirement that a class must be superior to individual trials,

because a proposed class that offends the Seventh Amendment by improperly slicing

interrelated issues cannot be certified.  *See Castano*, 84 F.3d at 750-51.

Defendants also requested plaintiffs to admit that they are seeking primarily

monetary relief:

> **Request for Admission No. 31:**  "Admit that the primary relief that you
> are seeking is monetary relief."

Plaintiffs' response was:  "The term 'primary' is vague and ambiguous and

therefore, as written, this request is denied.  The plaintiffs do admit that they are seeking

such compensation and relief as to which they are entitled under the law."  (Pls.' Resp.,

Ex. 1 at 12.)  But the "admission" in plaintiffs' response is *not* directed to what

882329v.1

defendants asked.  Moreover, plaintiffs' objection to the word "primary" is without any basis whatsoever.

As plaintiffs' counsel surely knows, this request for admission is directly relevant to plaintiffs' class motion, which lists Rule 23(b)(2) and 23(b)(3) as alternative bases for class certification.  (*See* Docket No. 3616.)  But if plaintiffs are seeking primarily monetary relief, they must proceed under Rule 23(b)(3)—not Rule 23(b)(2).  This Court has held "that Rule 23(b)(2) cannot be satisfied on the basis of allegations with a *primary* focus on individual demands for monetary relief."  *Horizon Sec. & Vault Co. v. BFI Waste Syst. Of N. Am.*, 2003 WL 22326519 at *3, (E.D. La. Oct. 8, 2003) (Knowles, M. J.) (emphasis added); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.221 (2007) ("Courts have held that where money damages constitute the *primary relief* requested, even though injunctive relief is also sought, the class must be certified under Rule 23(b)(3) and must meet due process requirements.") (emphasis added).  Plaintiffs should not be allowed to dodge a simple request to admit that they are seeking primarily monetary relief in their proposed class action.  Thus, the Court should deem this Request admitted for setting forth a meritless and "quibbling" response that totally fails to meet the substance of the Request.  *See* Fed. R. Civ. P. 36(a); *Apex*, 855 F.2d at 1009; *Marchand*, 22 F.3d at 938.

> **Request for Admission No. 35:**  "Admit that as of the date that the MR-GO Master Consolidated Class Action Complaint in this action was filed, each and every member of the proposed class had not exhausted their administrative remedies under the FTCA."

> **Request for Admission No. 36:**  "Admit that as of the date that the MR-GO Master Consolidated Class Action Complaint was filed, each and every

member of the proposed class had not exhausted their administrative remedies under the Admiralty Extension Act."

These requests were relevant to the standing of members of the proposed class to litigate their claims, and to conflicts within plaintiffs' proposed class, *i.e.*, between those who have exhausted their administrative remedies and those who have not. Plaintiffs denied both of these Requests "as written," but their explanation answered a different question, stating that their proposed class "will have exhausted their administrative remedies *as of the date on which the Order of Certification is granted*." (*See* Pls.' Resp., Ex. 1 at 14 (emphasis added).)

For all of the above reasons, the Court should deem Requests 1-3, 5-6, 31 and 35-36 admitted, or, in the alternative, require plaintiffs to provide a response or explanation that meets the substance of these Requests.

Finally, defendants propounded Interrogatory 32 that asked plaintiffs to explain the basis for denying any of defendants' requests for admissions. (*See* Pls.' Resp., Ex. 1 at 26-27 (Interrog. 32, subpart iii.)) This interrogatory was identical to plaintiffs' Interrogatory 1, to which defendants responded with 15 pages of answers. (Def. WGII's Resp., Ex. 8 at 21-35.) Plaintiffs did not object to Interrogatory 32. Rather, for their answer, they simply referred back to their responses to defendants' request for admissions. (*See* Pls.' Resp., Ex. 1 at 26-27.) But, plaintiffs failed to provide *any explanation whatsoever* for their denials of Requests for Admission 7, 8, 11, 26, 38, and 39. And, as set forth above, plaintiffs' explanations for the denials to Requests 1-3, 5-6, 31, and 35-36 were totally inadequate to explain their evasive denials. So, with respect to

17

those Requests—1-3, 5-8, 11, 26, 31, 35-36, and 38-39—plaintiffs failed either to object

or to provide *any* adequate answer at all to Interrogatory 32, subpart (iii).

Plaintiffs' failure to explain the denial of Request 11 is an especially egregious

example of plaintiffs' cavalier treatment of their obligation to respond to discovery.

Defendants asked plaintiffs to admit that they were seeking only the categories of

damages that plaintiffs pleaded in a list in the damages section of their Consolidated

Complaint.  (Docket. No. 3415.)  Defendants even enumerated all 18 categories—just as

listed in plaintiffs' Complaint—so there would be no doubt about the matter.  Plaintiffs

then *denied* this Request, and yet failed to provide any information about the other

categories of damages—over and above the 18 categories listed in the Complaint—that

plaintiffs must be seeking.  (*See* Pls.' Resp., Ex. 1 at 5-6, 26.)  Moreover, plaintiffs did

not object to Interrogatory 32.  Given this blatant refusal to answer Interrogatory 32—

leaving the defendants to wonder, at this late date, what categories of damages are being

asserted—this Court should order Request 11 admitted and preclude plaintiffs from

asserting any other type of damages beyond the 18 categories specifically listed in

paragraph 80 of their Consolidated Complaint.

## IV.   Particular Discovery Requests

### A.   Discovery Seeking Basic Information About The Named Plaintiffs

In order to prepare for the depositions of named plaintiffs (set to begin July 9 and

to continue through the month) and to begin developing a proper class-certification

record, defendants propounded straightforward discovery requests (Interrogs. 15, 16, 17,

882329v.1

22, 24, 29, and 30; Document Requests 9, 10, 11, 14, 15, 16 , 17, 18, 22, 26, 28, 29, 30,

and 33) seeking basic information about the named plaintiffs:

- identification and description of each type of injury alleged, the nature of such injury, when and where the injury occurred, the amount of monetary damages being sought, and the factual basis for contending that one or more defendants proximately caused such injury (Interrog. 15);

- each time a named plaintiff saw a medical professional for injuries related to Hurricane Katrina (Interrog. 16);

- identification and description of the circumstances of any named plaintiff suffering from any mental or physical illness, disability, or impairment (Interrog. 30);

- any payment, insurance proceeds, settlement, government assistance, or other funds received related to Hurricane Katrina (Interrog. 17);

- the basis and facts supporting the contention that each named plaintiff or proposed class member had exhausted administrative remedies before filing suit (Interrog. 24);

- whether any of the named plaintiffs has been subject to a claim of breach of fiduciary duty (Interrog. 29);

- identification of each levee breach, overtopping, or other source of water that resulted in damage to a named plaintiff's property and identification of geotechnical and structural failure modes and causes for each source of water (Interrog. 22).

- documents that refer or relate to any claim for any damage, including damage from chemical or other contamination to his or her property (DR 9);

- documents related to claims for lost earnings, lost business opportunities, lost business income, or lost rental income (DR 10);

- documents related to plaintiffs' claims for personal injury and "wrongful death, survival damages, fear, fright, and emotional distress, grief, mental anguish, inconvenience, pain and suffering, loss of the capacity to enjoy life [and] loss of consortium" as alleged in the Consolidated Complaint (DR 11);

- documents related to plaintiff's evacuation, relocation, and return to New Orleans (DR 14);

- statements, transcripts, notes, diagrams, or descriptions of events by the named plaintiffs relevant to the issues in the litigation (DR 15);

- for each named plaintiff, logs, journals, diaries, or other writings that refer or relate to Hurricane Katrina or the litigation (DR 16);

- medical records from August 2000 to the present (DR 17);

- documents evidencing application for or receipt of any benefit, payment, insurance proceeds, loan disbursement, or other funds related to Hurricane Katrina (DR 18);

- photographs of any named plaintiff's property before and after Hurricane Katrina (DR 22);

- documents furnished by any member of the public as a result of advertisements seeking potential plaintiffs or eyewitnesses (DR 26);

- the complaint or petition in any prior litigation to which any named plaintiff was a party (DR 28);

- lease agreements between any named plaintiff and any proposed class member (DR 29);

- documents related to eviction proceedings by or against any named plaintiff after Hurricane Katrina (DR 30); and

- authorizations to obtain medical records (DR 33).

These garden-variety discovery requests seek basic information about the named plaintiffs that is proper in any tort action for property damage, economic loss, personal injury, and mental distress—all of which are alleged here.  (*See* Docket No. 3415, ¶ 80, alleging 18 categories of alleged damage.)

Defendants are entitled to determine basic facts surrounding each named plaintiff, because the named plaintiffs cannot adequately represent the proposed class if they do not possess the same injury as the proposed class.  *Amchem Prods. Inc.*, 521 U.S. at 625-

882329v.1

26 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (quotations omitted).  If the evidence that would be offered by a named plaintiff on issues like causation and injury in fact would not prove any other person's claim, then the claims of the named plaintiff are not typical of those of the class.  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (There is no typicality when "a named plaintiff who proved his own claim would not necessarily have proved anybody else's claim.").  If a named plaintiff is subject to unique defenses, he cannot satisfy the typicality requirement.  Defendants have a due-process right to develop a class-certification record on these issues about the named plaintiffs and their claims.

Rather than provide adequate basic information about their own claims—on which they seek to base a class action for more than a hundred thousand other people's claims— the named plaintiffs interposed invalid objections, engaged in gamesmanship and evasiveness, and only recently provided snippets of information.  For example, plaintiffs objected to some discovery requests on the grounds that they sought expert opinions and reliance materials or that they related to "individualized damages."  (*See* Pls.' Resp., Ex. 1 at 19-22 (Interrogs. 15-17, 22, 29-30).)  Neither of these objections is valid.  First, as this Court recently ruled, discovery directed at underlying facts is not shielded on the basis that it calls for expert discovery.  *See In re:  Katrina Canal Breaches Consol. Litig.*, Civil Action No. 05-4182, "K"(2), slip. op. at 8 (E.D. La. June 27, 2007) (Wilkinson, M.J.) (Docket No. 6049); *accord Spartan Corp. v. United States*, No. 92-580c, 2007 WL 1772005, at *4 (Fed. Cl. June 18, 2007).  Moreover, individualized damages issues—and

21

how they will be tried—remain important to the class-certification analysis, even if plaintiffs propose a so-called "common issues" or bifurcated trial.  *See Castano,* 84 F.3d at 740-41, 745 (explaining that the class-certification decision must consider all aspects of plaintiffs' claims, not just the few issues cherry picked as "common" by plaintiff's counsel, and that the cause of action as a whole must satisfy Rule 23(b)(3)'s predominance requirement).  Therefore, plaintiffs' objections, even if not waived, are without merit.

On June 26 and 27, 2007, plaintiffs' counsel offered a few bits and pieces of the requested information; but it was too little, too late.[4]  Because plaintiffs still have not agreed to fully answer defendants' discovery requests, the Court should require plaintiffs to provide full answers.

**B.     Document Requests Seeking Basic Facts**

Defendants propounded Document Requests 1, 2, 3, 5, 6, 7, 8, and 26 to obtain information regarding basic facts:

- copies of Form 95's submitted by proposed class members that are in the possession, custody, or control of the named plaintiffs or their attorneys (DR 1);

- administrative claims submitted by proposed class members to any governmental body or agency, including forms submitted to the Louisiana Recovery Authority, that are in the possession, custody, or control of the named plaintiffs or their attorneys (DR 2);

---

[4] While the plaintiffs provided a chart with some of the promised information for the Levee Group named plaintiffs (*see* June 26 letter, Ex. 5), they have not provided even that rudimentary information for the MRGO named plaintiffs.  (*See* June 27 and June 28 correspondence, Ex. 6.)

882329v.1

- insurance claims submitted by proposed class members to recover for personal injury or property damages sustained between August 28 and September 25, 2005 that are in the possession, custody, or control of the named plaintiffs or their attorneys (DR 3);

- documents that refer or relate to any eye witness account of Hurricane Katrina (DR 5);

- documents that refer or relate to the matters alleged in the Consolidated Complaint or any damages or injuries allegedly sustained by any proposed class member as a result of Hurricane Katrina (DR 6);

- statements, transcriptions of recorded statements, tape recordings, notes, diagrams and/or descriptions that refer or relate to the matters alleged in the Consolidated Complaint or any damages or injuries allegedly sustained by any proposed class member as a result of Hurricane Katrina (DR 7);

- photographs, digital video discs and/or video tapes that refer or relate to the matters alleged in Consolidated Complaint or any damages or injuries allegedly sustained by any proposed class member as a result of Hurricane Katrina (DR 8); and

- documents furnished by any member of the public to plaintiffs as a result of plaintiffs' public advertisements seeking either potential plaintiffs or eyewitnesses in connection with the claims asserted in this lawsuit (DR 26).

These requests properly sought documents relevant to understanding plaintiffs' claims, defenses, and relevant facts, all key to the class-certification analysis required by the Fifth Circuit.  Eyewitness accounts, statements, photographs of injuries, and documents relevant to plaintiffs' own complaint allegations should be provided, so that the Court can inquire whether key disputed issues such as causation, comparative fault, injury-in-fact, and the nature and extent of resulting damages can be tried based on the supposedly representative proofs of the named plaintiffs or will instead require individualized proofs from each proposed class member—all essential matters to the Rule 23(b)(3) predominance determination.  *See Amchem Prods., Inc.* 521 U.S. at 623-25; *Castano*, 84

882329v.1

F.3d at 739-41, 744-45.  And, as the Advisory Committee Notes explain, even at the class-certification stage, discovery "often includes information required to identify the nature of the issues that actually will be presented at trial," since "it is appropriate to conduct controlled discovery into the 'merits,'" when aspects are "relevant to making the certification decision on an informed basis."  Fed. R. Civ. P. 23(c) advisory committee notes.

Plaintiffs' responses to discovery requests seeking basic facts are wholly inadequate.  For instance, several times, plaintiffs made conclusory objections (*e.g.*, "overbroad, burdensome, and unreasonable") which are invalid as a matter of law.  *See, e.g.,* Fed. R. Civ. P. 33(b)(4) ("All grounds for an objection shall be stated with specificity."); Fed. R. Civ. P. 34(b) (In an objection to production of documents, "the reasons for the objection" must be stated.); *see also Bailey v. Lockheed Martin Corp.*, Civil Action No. 4:04CV124LN, 2006 WL 1666275, at *1 (S.D. Miss. June 13, 2006); *High Tech Commc'ns, Inc. v. Panasonic Co.*, Civ. A. No. 94-1477, 1995 WL 133344, at *2 (E.D. La. Mar. 24, 1995) (Vance, J.) ("Asserting a general objection to the production of privileged documents does not constitute compliance with Rule 34(b).").  Other times, plaintiffs asserted the documents were protected by the attorney-client privilege or by the work product doctrine—but those objections are not valid to shield underlying facts. Moreover, plaintiffs have not provided any privilege log as they are required to do if they are withholding documents based on privilege.  *See* Fed. R. Civ. P. 26(b)(5).  The objection that plaintiffs are still conducting fact investigations (DR 6) is not a reason to withhold responsive documents that plaintiffs currently have.  Nor is the objection valid

24

that such existing, responsive documents are "expert opinions and reliance materials" not due until expert disclosures are due (DRs 6, 7, and 26).  All of the requested documents are basic and legitimate discovery, and the Court should order plaintiffs to produce responsive documents.

Plaintiffs' response to Document Request 1 illustrates plaintiffs' cavalier and evasive approach to class discovery.  Document Request 1 asked plaintiffs for copies of "each Standard Form 95 submitted to the United States Army Corps of Engineers by you or any member of the proposed class from August 29, 2005, to the present, that is in the possession, custody, or control of the named plaintiffs or their attorneys."  Plaintiffs objected by cross-referencing to an unintelligible and meritless objection to an interrogatory.  (*See* Pls.' Resp., Ex. 1 at 27.)  Plaintiffs then stated:  "The United States is the only entity in possession of all Form 95's."  (*Id*.)  But defendants did not ask for all Forms 95's, or for the Form 95's in the possession of the government; instead, defendants asked for the Form 95's in possession of named plaintiffs and their counsel.  Plaintiffs' Liaison Counsel has told defense counsel that his office has submitted more than 30,000 Form 95's to the Government on behalf of proposed class members.

As the Court knows, the submission of  Form 95's is a prerequisite to filing suit against the United States.  Indeed, plaintiffs have defined their class to include only persons who have met this administrative-exhaustion requirement.  (*See* Docket No. 3616 at 4.)  An examination of the Form 95's that plaintiffs have is critical to determining how the Court would resolve the exhaustion requirement on a class basis—a question that plaintiffs refused to answer fully. (*See* Pls.' Resp., Ex. 1 at 18, 24 (Interrogs. 7, 24).)

25

Moreover, the Standard Form 95 requires the claimant to "state in detail" his "Basis of Claim" and the "nature and extent of each injury."  As such, Form 95's are likely to contain information relevant to and transcending all requirements of Rule 23(a) and (b).  Form 95's are also admissions of party opponents (*see* Fed. R. Evid. 801(d)(2)), and are likely to contain "relevant facts" and significant information about the claims being asserted on behalf of the proposed class.  Therefore, plaintiffs and plaintiffs' counsel should be compelled to produce all Form 95's that they have in their possession, custody, or control.

Because all of the above Requests concerning the basic facts about plaintiffs are relevant to, and significant to, making a class determination, the Court should order plaintiffs to fully answer the interrogatories and to produce the requested documents.

### C.    Discovery Similar To That Propounded By Plaintiffs

Plaintiffs also refused to answer several discovery requests that are similar to discovery requests they propounded and defendants answered (see Ex. 8):

| Plaintiffs' Request | Defendants' Request |
|---|---|
| "describe. . . each source of inundation" in the geographical areas encompassed in the class definition (Pls.' Interrog. 14) | "describe every source of water that entered the 'Greater New Orleans' areas (as defined in your proposed class definition), . . . including a description of which geographical area(s) were affected." (Defs.' Interrog. 19; *see also* Defs.' Interrogs. 20, 27) |

882329v.1

| Plaintiffs' Request | Defendants' Request |
|---|---|
| "Every member of the . . . Sub-Class[es] has suffered loss or damage due to inundation that had as its source the MRGO . . . ." (Pls.' RFA 25; *see also* Pls.' RFAs 35, 36, 38) | "describe each separate type of injury alleged by the named plaintiff, including. . . the nature. . . of each such injury, when and where each such injured occurred, the amount of monetary damages. . ., and all facts that form the basis of your contention that one or more MRGO defendants proximately caused each such injury." (Defs.' Interrog. 15) |
| "Inundation of the properties of the. . . class substantially contributed to the breakdown in social structure and loss of cultural heritage. . . ." (Pls.' RFA 35) | "State whether you are you seeking declaratory or injunctive relief" for "the breakdown in social structure and loss of cultural identity." (Defs.' Interrog. 12) |
| "produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the source . . . , cause . . . , process . . . , timing . . . , depth . . . , duration . . . , [or] receding of any inundation within the geographical area encompassed by the [classes]." (Pls.' DRs 9-15) | "Produce all models, diagrams, maps and . . . depictions . . . that show the cause, extent, timing, duration, process, location, depth, or receding of flood water due to each levee/floodwall breach or levee/floodwall overtopping." (Defs.' DR 21) |

Plaintiffs provided unresponsive answers and invalid objections to the foregoing discovery requests. Accordingly, plaintiffs should be ordered to answer Interrogatories 12, 15, 19, 20, and 27, and to produce documents in response to Document Request 21.

### D.   Plaintiffs' Class-Action Theory

Defendants propounded several discovery requests (Interrogs. 11, 12, 13, 18, and 23 and DR 4) to obtain basic information about plaintiffs' class-certification theory:

- explaining the basis for seeking class certification under Rule 23(b)(2) (Interrog. 11), *see* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.142 (2007);

27

- identifying the specific injunctive-relief sought (Interrog. 12);

- explaining the proposed class definition's use of the words "[a]ll individuals **in**" the MRGO geographical area and whether "in" means a resident in, owns property in, or was physically present in the area on August 29, 2005 (Interrog. 13), *see* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222 (2007);

- identifying all lawsuits related to Hurricane Katrina filed by any of plaintiffs' counsel, other than those superseded and replaced by any of the three Consolidated Class Action Complaints (Interrog. 18);

- explaining the basis for contending that the futility doctrine applies to waive plaintiffs' administrative exhaustion requirements (Interrog. 23); and

- all documents that refer or relate to the composition of plaintiffs' proposed class or subclasses (DR 4); *see* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222 (2007).

Many of these Requests sought basic information about plaintiffs' proposed class definition, including who is included in it and how the Court would ascertain class membership. These questions are relevant to whether the proposed class definition is objectively ascertainable, and to determining whether class membership would require individual fact determinations. Plaintiffs' complaint and class motion contain only bare, conclusory statements about any (b)(2) certification they seek. Interrogatories 11 and 12 sought information about plaintiffs' basis for seeking certification under Rule 23(b)(2),[5] and what specific injunctive relief plaintiffs are seeking. Interrogatory 18 sought to explore possible conflicts of interest and adequacy of counsel. Interrogatory 23 inquired about plaintiffs' position on how the futility doctrine applies to their claims.

---

[5] Plaintiffs' class motion also seeks certification under Rule 23(b)(1), but plaintiffs' June 26 letter states that plaintiffs "do not presently contemplate seeking certification for Declaratory Relief under Rule 23(b)(1)." (Ex. 5 at 1.) In reliance on that representation, defendants do not seek to compel discovery responses concerning plaintiffs' now-abandoned (b)(1) theory.

Again, all of these discovery requests seek to discover basic information about plaintiffs' theory of class certification, a proper inquiry for class-certification discovery. Plaintiffs' evasiveness about their basic theory of class certification is intolerable and has precluded defendants from identifying and obtaining fact witnesses and experts to address the specifics of plaintiffs' class-action theory. Plaintiffs' failure to respond is particularly egregious because defendants provided detailed answers to plaintiffs' written class-certification discovery two months ago—on April 30, 2007. (*See* Def. WGII's Resp., Ex. 8.) Indeed, plaintiffs' counsel sent a complimentary letter to WGII counsel stating "your substantive responses were candid and made . . . . every effort to provide …[available] information . . . . " (*See* May 21, 2007 letter, Ex. 9.)

### E.    The Plaintiffs' Proposed Trial Plan

Because plaintiffs are seeking class certification based upon some as-yet-unspecified type of staged trial proceedings, defendants propounded twelve interrogatories and two document requests regarding plaintiffs' proposed trial plan. (Interrogs. 1-9, 21, 27, and 28, and DRs 12 and 13.)

These questions were proper class-certification discovery because the Court must address "how a trial on the merits would be conducted" in order to decide whether class treatment would be manageable and superior to other methods of adjudication. *See Castano,* 84 F.3d at 740; Fed. R. Civ. P. 23(b)(3). To do this, the Court must consider all of the issues necessary to fully adjudicate plaintiffs' claims, not just the issues plaintiffs propose as the "common" ones. *Castano*, 84 F.3d at 744-745. *Castano* makes clear that a proper predominance analysis must consider all of the issues, even the ones that

29

plaintiffs want to bifurcate and defer to some later trial.  Plaintiffs' suggestion of a staged "issues" trial does not eliminate individual issues such as causation, comparative fault, injury, and damages from the class-certification calculus.  *See Exxon Mobil*, 461 F. 3d at 603-604.

Plaintiffs' limited responses to these trial-plan interrogatories and document requests do not even begin to answer the specific questions asked.  But they demonstrate why it is essential for defendants to obtain the requested information.

Plaintiffs' answer to Interrogatory 1 confirms that plaintiffs will propose a trial plan with the following components:

- A "common issues trial" to "determine the cause(s) of the levee breaches," "the parties at fault . . . for the levee breaches," "the apportionment of fault between the defendants," the "geographical reach of the flood waters," and maybe "certain class-wide damages . . . ."

- In addition, the "common questions of causation fault, and the apportionment of fault will then be determined for all class members."

(*See* Pls.' Resp. Ex. 1 at 15-16 (Interrog. 1).)  Plaintiffs elsewhere say that they seek "issue certification" with respect to "fault for levee failure and causation of flooding in various polders."  (Ex. 5 at 1 (Interrog. 10).)  But these answers do not address the causation inquiry necessary for any plaintiff's injury claim, *i.e.*, what is the specific cause of each particular injury alleged by each individual class member?  Determining the so-called "cause" of a levee breach (and there are dozens of such breaches in the MRGO geographical area) does not come close to resolving the causation questions required by substantive law.  What was the "but for" cause in fact of the plaintiff's injury, and what was the legal cause of plaintiff's injury?  Did the risk presupposed by a legal duty

encompass the harm actually suffered by the plaintiff under all the facts alleged? *See Roberts v. Benoit,* 605 So. 2d 1032 (La. 1991); *see also Hanks v. Entergy Corp.*, 944 So. 2d 564, 579 (La. 2006); *Patrick v. State Farm Mut. Auto. Ins. Co.*, No. 42,197-CA, 2007 WL 1428446, at *6 (La. Ct. App. May 16, 2007).  The following are just a few of the types of causation issues that must be addressed.  What was the cause of water damage to the house at 123 Main Street?  Was it flooding?  If so, what levee overtopping or breaches caused water to reach that property?  Was it wind and rain damage?  What was the cause of the broken arm suffered by someone evacuating the area?  What caused the business losses for which a plaintiff seeks compensation?  Did a particular defendant's actions encompass the risk occasioned by alleged defects in the design, maintenance, and construction of various waterways and flood protection structures?  Whose fault contributed to a plaintiff's injury, and in what percentages?  These are causation and comparative-fault inquiries required to try each class member's claims for injury—yet plaintiffs are refusing to answer how they propose to deal with these issues.  Indeed, these are the same reasons other courts have refused to certify Hurricane Katrina class actions.[6]

---

[6] *See Guice*, 2007 WL 912120, at *1 (class of insureds denied coverage for property damage from Hurricane Katrina could not be certified because of differences of "evidence available to ascertain the cause of the destruction and damage to" the relevant properties); *Comer*, 2006 WL 1066645, at *2 (denying plaintiffs' motion to certify a defendant class of insurers because the "combination of forces [that] caused" each property owner's damages "will vary greatly in its particulars" such that "with respect to the issue of damages, each individual claim will require particular evidence to establish the cause of . . . the loss").

31

The defendants' trial-plan inquiries sought to elicit plaintiffs' position on the critical questions about how the case could be tried as a class action, considering the elements of proof and affirmative defenses:

- how the Court would adjudicate "each element of proof required for each cause of action alleged" (Interrog. 1);

- how the Court would adjudicate "the cause(s) of each injury alleged by each proposed class member" (Interrog. 2);

- how the Court would adjudicate "comparative fault with regard to the various injuries alleged by each proposed class member" (Interrog. 3);

- how the Court would adjudicate "all damage issues, including the amount of damage, for each proposed class member" (Interrog. 4);

- whether plaintiffs' "proposed trial plan would use different juries to adjudicate (i) the elements of proof for each cause of action, (ii) affirmative defenses, and (iii) damage issues" and if two or more different juries would be used, "what each jury will determine, and what each jury will be informed about the results of previous phases of the trial" (Interrog. 5);

- if plaintiffs "contend that defendants are not entitled to individualized proofs at trial for each proposed class member to determine:  (i) the cause of each injury alleged . . .; (ii) the allocation of fault among all persons causing . . . each injury; and (iii) the amount of any damages sustained by each proposed class member," a description of the trial procedures that would enable the Court to adjudicate each of these issues (Interrog. 6);

- how plaintiffs' "proposed trial plan would enable the Court to determine whether or not each proposed class member had fulfilled the administrative claim filing requirements necessary to maintain a claim under the Federal Tort Claims Act" (Interrog. 7);

- if plaintiffs contend "any mathematical or formulaic calculations or other models may be used to determine the cause(s) of alleged injuries to any proposed class member" and if those "calculations or models would be legally sufficient in any trial" (Interrog. 8);

- if plaintiffs contend "any mathematical or formulaic calculations or other models may be used to determine the type or amount of damages sustained

by any proposed class member" and how those "calculations or models would be legally sufficient in any trial" (Interrog. 9);

- all issues that plaintiffs expect to be tried in class proceeding and all issues to be tried individually (Interrog. 21);

- "[t]he common legal duties that [plaintiffs] allege each defendant owed to the named plaintiffs and the proposed class members" (Interrog. 27); and

- "[a]n explanation of how plaintiffs' proposed trial plan will coordinate the bench-trial claims against the United States with jury-triable claims against other defendants" (Interrog. 28).

Nor did plaintiffs produce:

- "mathematical or formulaic calculations or other models that refer or relate to determining cause(s) of injury to any named plaintiff, any proposed class member, or any group of proposed class members" (DR 12); or

- "mathematical or formulaic calculations or other models that refer or relate to the calculation of damages for any named plaintiff, any proposed class member, or any group of proposed class members" (DR 13).

Defendants are entitled to know how many stages of a class trial plaintiffs propose, what they propose to be decided at each stage, how many juries would be involved, and how plaintiffs would fit particular issues into those various stages in order to fully adjudicate all of the elements of their claims and the applicable defenses. But plaintiffs' limited and evasive answers address causation only at the site of the levee breaches—not cause in fact and legal cause at the site of a plaintiff's purported injuries. Indeed, plaintiffs' response to Request for Admission 9 confirms that the individualized proofs necessary to determine cause-in-fact and resulting injury "will not be offered in connection with the adjudications of the common issues . . . ." (*See* Pls.' Resp., Ex. 1, at 5.)

33

And even with respect to causation, plaintiffs' answers are incomplete. Plaintiffs have confused the causes of a levee breach with the causation element of their negligence claim—which requires each plaintiff to prove the cause in fact, and the legal cause, of each *injury* he or she alleges. Defendants' experts have identified some 45 sources of damage, including wind, rain, levee overtopping, and levee breaches, in the geographical area encompassed by plaintiffs' proposed class. (*See* Def. WGII's Resp., Ex. 8 at 50-53.) To establish a right to recover, each proposed class member must prove that one or more of these 45 sources was the cause-in-fact and legal cause of his or her personal injury or property damage, and then must trace these particular sources of water back to the parties at fault, if any. That fault determination will require a comparison of any fault of the many defendants; any fault of the particular plaintiff; acts of God; the fault of others not made parties to this suit who may have designed, constructed, maintained, or repaired one or more levees over a period of one hundred years; and the fault of still other nonparties who may have criminally vandalized or looted the plaintiff's property. In other words, each plaintiff must establish a specific causal nexus connecting one or more defendants' wrongful actions with that plaintiff's particular injuries from those sources of water. And this nexus must be considered together with all others who may be at fault for that plaintiff's particular injuries. Defendants have asked plaintiffs how they plan to account for these issues at trial and are entitled to some basic answers.

Not only is plaintiffs' failure to answer trial-plan questions an implicit admission that they cannot satisfy the requirements for class certification, it stands in stark contrast to defendants' answers in response to plaintiffs' similar discovery requests provided on

April 30—six weeks before plaintiffs' overdue and unresponsive responses on June 12.

(*See* Def. WGII's Resp., Ex. 8.)

882329v.1

## CONCLUSION

For the foregoing reasons, the MRGO defendants request that the Court:

1)    Declare that defendants' requests for admissions are admitted by operation of law (or, in the alternative, order that plaintiffs provide responses to defendants' request for admissions Nos. 1-3, 5-8, 11, 26, 31, 35-36, and 38-39 and full explanations for any denials in response to Interrogatory 32);

2)    Order that plaintiffs' objections to all of defendants' requests for admission, interrogatories, and document requests are waived;

3)    Order that plaintiffs provide full and complete answers to defendants' interrogatories Nos. 1-13, 15-24, 27-30, and 32;

4)    Order that plaintiffs produce all documents responsive to defendants' document requests Nos. 1-18, 21-22, 26, 28-30, and 33; and

5)    Order that defendants shall be allowed to re-depose each named plaintiff to enable defendants to inquire as to the newly produced material.

882329v.1

Dated: July 2, 2007                     Respectfully submitted,

_/s/ Gary M. Zwain_                     _/s/Ralph S. Hubbard III_
Lawrence J. Duplass, 5199               Ralph S. Hubbard III, 7040
Gary M. Zwain, 13809                    Joseph P. Guichet, 24441
Andrew D. Weinstock, 18495              Rachel Meese, 25457
        Of                                      Of
Duplass, Zwain, Bourgeois, Morton,      Lugenbuhl, Wheaton, Peck, Rankin &
Pfister & Weinstock                     Hubbard
3838 N. Causeway Blvd., Suite 2900      601 Poydras Street, Suite 2775
Metairie, Louisiana 70002               New Orleans, Louisiana  70130
Telephone: (504) 832-3700               Telephone:  (504) 568-1990
Facsimile: (504) 837-3119               Facsimile:   (504) 310-9195


Attorneys for Board of Commissioners for    Attorneys for St. Paul Fire and Marine
the Lake Borgne Basin Levee District        Insurance Company

882329v.1

*/s/Thomas P. Anzelmo*
Thomas P. Anzelmo, 2533
Mark E. Hanna, 19336
Kyle P. Kirsch, 26363
Andre J. Lagarde, 28649
 Of
McCranie, Sistrunk, Anzelmo, Hardy,
 Maxwell & McDaniel
3445 N. Causeway Boulevard, Suite 800
Metairie, Louisiana  70002
Telephone:  (504) 831-0946
Facsimile:   (504) 831-2492
And
James L. Pate, 10333
Ben L. Mayeux, 19042
 Of
Laborde & Neuner
One Petroleum Center, Suite 200
1001 West Pinhook Road, Suite 200
Post Office Drawer 52828
Lafayette, Louisiana  70505-2828
Telephone:  (337) 237-7000

Attorneys for the Orleans Levee District

*/s/Heather S. Lonian*
William D. Treeby, 12901
Carmelite M. Bertaut, 3054
Heather S. Lonian, 29956
 Of
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:   (504) 581-3361

Attorneys for Washington Group
International, Inc.

Of counsel

Adrian Wager-Zito
Julie McEvoy
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-4645
Facsimile:  (202) 626-1700

Jerome R. Doak
Jones Day
2727 N. Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

882329v.1

_/s/Robin D. Smith_
Robin D. Smith
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Telephone:  (202) 616-4289
Facsimile:   (202) 616-5200

Attorneys for United States

# C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing MRGO Defendants'

Memorandum in Support of Motion To Compel has been served upon Joseph M. Bruno,

Esq. in his capacity as plaintiffs' Liaison Counsel via e-mail this 2nd day of July, 2007.

_/s/Heather S. Lonian_
Heather S. Lonian

(DLI-6125255v4)

882329v.1