# Exhibit 1

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

CIVIL ACTION

NO.: 05-4182

SECTION "K"(2)

FILED IN:  05-4181, 05-4182, 05-5237, 05-6073, 05-6314, 05-6324,
05-6327, 05-6359, 06-0225, 06-0886, 06-1885, 06-2152,
06-2278, 06-2287, 06-2824, 06-4024, 06-4065, 06-4066,
06-4389, 06-4634, 06-4931, 06-5032, 06-5155, 06-5159,
06-5161, 06-5260, 06-5162, 06-5771, 06-5937, 07-0206,
07-0621, 07-1073, 07-1271, 07-1285

PERTAINS TO: MR-GO

_____

## PLAINTIFFS' RESPONSE TO MRGO DEFENDANTS' FIRST SET OF JOINT CLASS-CERTIFICATION REQUESTS FOR ADMISSION, INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36 and Case Management and Scheduling Order No. 4, Section III(B)(2), as amended by Order issued March 29, 2007, the plaintiffs submit these responses to the MRGO Defendants' First Set of Joint Class-Certification Requests for Admission, Interrogatories, and Requests for Production of Documents to Plaintiffs.

### General Objection # 1.

The issues relevant to this discovery concern only class certification. Determination of the cause of individual plaintiff's damages is beyond the scope of class certification discovery. *See* CMO No. 4, § IV, at page 19.

### General Objection # 2.

_____Plaintiffs assert a continuing objection to the premature disclosure of a Trial Plan more appropriately disclosed and discussed at the conclusion of class certification discovery. All responses to this discovery are made with full reservation of, and subject to, this objection.

1

## REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that in order to determine whether any individual or entity is included in either of your two proposed subclasses (as set forth in paragraph 13(A) and (B) of the MR-GO Master Consolidated Class Action Complaint), it will be necessary to determine whether or not that individual or entity sustained damages as a result of inundation/flooding in this area which occurred during and immediately following the landfall of Hurricane Katrina on or about August 29, 2005.

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Denied. Class inclusion for an individual will be based on the Court's acceptance of an appropriate class definition once the class certification requirements of Rule 23 are satisfied.

### REQUEST FOR ADMISSION NO. 2:

Admit that in order to determine whether any individual or entity is included in either of your two proposed subclasses, it will be necessary to determine whether or not that individual or entity has fulfilled the administrative claim filing requirements necessary to maintain a claim under the Federal Tort Claims Act.

### RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Denied as to the putative class action against the Government because of the "futility doctrine" plead by Plaintiffs and denied as to the putative class action brought against all other Defendants on the grounds of relevance.

### REQUEST FOR ADMISSION NO. 3:

Admit that both of your proposed subclasses include individuals and entities that have not submitted to the United States Army Corps of Engineers a Standard Form 95 or other administrative claim requesting damages related to Hurricane Katrina.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Denied.  The class definition, as pled, fulfills the Form 95 requirement.  Plaintiffs reserve

the right amend this response should the Court recognize the Futility Doctrine.

**REQUEST FOR ADMISSION NO. 4:**

Admit that, for each of the causes of action pleaded in your MR-GO Master Consolidated

Class Action Complaint, the jury will be required under substantive law to determine the cause(s)

of each different injury alleged by any plaintiff.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Objection.  The issues relevant to this discovery concern only class certification.

Determination of the cause of individual plaintiff's damages is beyond the scope of class

certification discovery.  *See* CMO No. 4,  § IV, at page 19.

Denied.  It is the intent of the Plaintiffs, consistent with CMO #4, that a jury will hear and

decide the certified common issues.  This common issues trial will determine the cause(s) of the

levee breach(s) which allowed water to penetrate the geographical boundaries of the class, the

parties at fault who are responsible for the levee breach(s), and the apportionment of fault

between the Defendants. The common questions of the causation fault, and the apportionment of

fault will then be determined for all class members.   The common question of the geographical

reach of the flood waters will likewise be determined. There also may be common questions of

certain class-wide damages to be tried.

The Court may include in its Trial Plan provisions to permit the Class Representatives or

other selected Plaintiffs to try their individual damage claims.  In that event, the Trial Plaintiff

will then be required to prove that he or she was caused injury and damages as a result of the

flooding.  If damages were proven, the jury would then assess damages specific to that particular

Plaintiff.  This jury could also assess the comparable fault attributable to the Plaintiff.

**REQUEST FOR ADMISSION NO. 5:**

Admit that both of your proposed subclasses include individuals or entities that sustained multiple injuries, (such as injury to real property, injury to personal property, and lost income), each of which injuries might have been caused by different legally responsible persons.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Denied. The common issues trial contemplated by the Plaintiffs will determine the legal responsibility of the Defendants for the flooding/inundation at issue (general causation), and the apportionment of fault. The extent to which a given plaintiff's damages (all elements are due to this flooding/inundation will be a separate, triable question. If general causation is established, all defendants found responsible for the flooding/inundation will be responsible for all proven elements of plaintiff's damages found to be caused by the flooding/inundation, (individual causation).

**REQUEST FOR ADMISSION NO. 6:**

Admit that the same jury that determines the cause(s) of multiple injuries alleged by a particular class member also would have to determine comparative fault by allocating percentages of fault among all persons causing or contributing to each of those injuries.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Denied. See Response to Request for Admission No. 5, *supra.*

**REQUEST FOR ADMISSION NO. 7:**

Admit that the list of individuals and entities to be allocated fault by the jury will not be the same for every member of the proposed New Orleans East Subclass.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Denied.

**REQUEST FOR ADMISSION NO. 8:**

Admit that the list of individuals and entities to be allocated fault by the jury will not be the same for every member of the proposed Lower Ninth Ward and St. Bernard Subclass.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Denied.

**REQUEST FOR ADMISSION NO. 9:**

Admit that individualized proofs will be required at trial to determine the cause in fact and resulting injury (if any) for each proposed class member.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Denied.  Whether individualized proofs will be required will depend upon the "trial" to which this request refers. Such proof will not be offered in connection with  the adjudication of the common issues of fault, fault apportionment, and general causation. On the other hand, such individualized proofs will be necessary in the trial of a given class member's individual damages.

**REQUEST FOR ADMISSION NO. 10:**

Admit that individualized proofs will be required at trial to determine the amount of damages for any proposed class member.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

See Response to Request for Admission No. 9.

**REQUEST FOR ADMISSION NO. 11:**

Admit that you are seeking for the proposed class only the following categories of damages, which are specifically identified in paragraph 80(a) and (b) of the MR-GO Master Consolidated Class Action Complaint:

      a. loss of real property,
      b. loss of personal property,
      c. diminution of property value,

d. loss of income,
e. costs of relocation,
f. loss of business opportunities and business interruption,
g. evacuation expenses,
h. personal injury,
i. wrongful death,
j. survival damages,
k. fear, fright and emotional distress,
l. grief,
m. mental anguish,
n. inconvenience,
o. pain and suffering,
p. loss of the capacity to enjoy life,
q. loss of consortium, and
r. costs of suit.

## RESPONSE TO REQUEST FOR ADMISSION NO. 11:

Denied.

## REQUEST FOR ADMISSION NO. 12:

Admit that one or more proposed class members seek to recover repair, remediation, or

restoration costs that exceed the fair market value of their properties before Hurricane Katrina.

## RESPONSE TO REQUEST FOR ADMISSION NO. 12:

The term "more" is vague and ambiguous.  The term "fair market value" is not given a

pre or post-Katrina time reference, rendering it vague and ambiguous. The term "more" is vague

and ambiguous and therefore as written, this Request is denied.  Plaintiffs do admit, however,

that at least one proposed class member falls within the category described in the Request

## REQUEST FOR ADMISSION NO. 13:

Admit that both of your proposed subclasses include individuals who did not sustain any

personal injury due to Hurricane Katrina passing near New Orleans on or about August 29, 2005.

## RESPONSE TO REQUEST FOR ADMISSION NO. 13:

Plaintiffs admit this request to the limited extent that at least one proposed class member

may fall within the category described by this request.

6

**REQUEST FOR ADMISSION NO. 14:**

Admit that both of your proposed subclasses include individuals or entities who did not sustain any property damage due to Hurricane Katrina passing near New Orleans on or about August 29, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 15:**

Admit that both of your proposed subclasses include individuals or entities who were damaged or injured, in whole or in part, because of rain, wind, or tornados related to Hurricane Katrina passing near New Orleans on or about August 29, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

The term "more" is vague and ambiguous and therefore, as written, this Request is denied.  Without waiving said objection, the Plaintiffs partially admit this request: one or more proposed class members were damaged or injured, in part, because of rain, wind, or tornados related to Hurricane Katrina passing near New Orleans on or about August 29, 2005; but deny that any proposed class members were damaged or injured, *in whole*, because of rain, wind, or tornados related to Hurricane Katrina passing near New Orleans on or about August 29, 2005.

**REQUEST FOR ADMISSION NO. 16:**

Admit that both of your proposed subclasses include individuals or entities whose property was damaged, in whole or in part, by water that overtopped a levee or floodwall on August 29, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

The term "more" is vague and ambiguous and therefore, as written, this Request is denied.

Without waiving said objection, the Plaintiffs partially admit this request: one or more proposed class members' property was damaged, in part, by water that overtopped a levee or floodwall on August 29, 2005 ; but deny that any proposed class members were damaged or injured, *in whole*, by water that overtopped a levee or floodwall on August 29, 2005.

**REQUEST FOR ADMISSION NO. 17:**

Admit that both of your proposed subclasses include individuals or entities who were damaged or injured, in whole or in part, because of electrical power that was lost due to heavy wind or rain when Hurricane Katrina passed near New Orleans on or about August 29, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

The term "more" is vague and ambiguous and therefore, as written, this Request is denied.  Without waiving said objection, the Plaintiffs partially admit this request: one or more proposed class members' property was damaged, in part, because of electrical power that was lost due to heavy wind or rain when Hurricane Katrina passed near New Orleans on or about August 29, 2005; but deny that any proposed class members were damaged or injured, *in whole*, because of electrical power that was lost due to heavy wind or rain when Hurricane Katrina passed near New Orleans on or about August 29, 2005.

**REQUEST FOR ADMISSION NO. 18:**

Admit that both of your proposed subclasses include individuals or entities who were damaged or injured, in whole or in part, because of looting or other criminal activity following Hurricane Katrina.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

The term "more" is vague and ambiguous and therefore, as written, this Request is denied.  Without waiving said objection, the Plaintiffs partially admit this request: one or more proposed class members' property was damaged, in part, because of looting or other criminal

activity following Hurricane Katrina; but deny that any proposed class members were damaged or injured, *in whole*, because of looting or other criminal activity following Hurricane Katrina.

**REQUEST FOR ADMISSION NO. 19:**

Admit that both of your proposed subclasses include individuals or entities who were damaged or injured, in whole or in part, because of Hurricane Rita passing near New Orleans on or about September 24, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

The term "more" is vague and ambiguous and therefore, as written, this Request is denied.  Without waiving said objection, the Plaintiffs partially admit this request: one or more proposed class members' property was damaged, in part, because of Hurricane Rita passing near New Orleans on or about September 24, 2005; but deny that any proposed class members were damaged or injured, *in whole*, because of Hurricane Rita passing near New Orleans on or about September 24, 2005.

**REQUEST FOR ADMISSION NO. 20:**

Admit that both of your proposed subclasses include individuals or entities whose residences or businesses were constructed in the 19th century.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 21:**

Admit that both of your proposed subclasses include individuals or entities whose residences or businesses had pre-existing, unrepaired damage when Hurricane Katrina passed near New Orleans on or about August 29, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 22:**

Admit that both of your proposed subclasses include individuals or entities that filed insurance claims for property damage that was caused by wind or rain on August 29, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 23:**

Admit that both of your proposed subclasses include individuals or entities that do not have clear title to the real property that they claim was damaged when Hurricane Katrina passed near New Orleans on or about August 29, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 24:**

Admit that both of your proposed subclasses include individuals or entities who sustained damages or injuries that were the result of multiple causes.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 25:**

Admit that both of your proposed subclasses include individuals or entities who sustained property damages from rising water irrespective of any levee and/or floodwall breaches in the "Greater New Orleans" area (as defined in your proposed class definition) when Hurricane Katrina passed near New Orleans on or about August 29, 2005.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Denied.  Plaintiffs are unaware of any rising water causing property damage arising for reasons other than levee and/or flood wall breaches.

**REQUEST FOR ADMISSION NO. 26:**

Admit that both of your proposed subclasses include individuals or entities who sustained property damages on August 29, 2005, exclusively due to an Act of God (e.g., an individual whose property was damaged only by wind and rain).

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Denied.

**REQUEST FOR ADMISSION NO. 27:**

Admit that your proposed Lower Ninth Ward and St. Bernard Subclass includes individuals or entities who were damaged or injured, in whole or in part, because of the spill of crude oil and other substances from a storage tank on Murphy Oil USA Inc.'s Meraux property related to Hurricane Katrina.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Objection.  The class boundry deemed affected by the the spill of crude oil and other substances from a storage tank on Murphy Oil USA Inc.'s Meraux property related to Hurricane Katrina has already been established.  To the degree that this request seeks an admission regarding subclasses or subclass members outside the established class boundry, this Request is denied.

Without waiving said objection, the Plaintiffs partially admit this request as it relates to the St. Bernard subclass: one or more proposed class members' property was damaged, in part, because of the spill of crude oil and other substances from a storage tank on Murphy Oil USA Inc.'s Meraux property related to Hurricane Katrina; but deny that any proposed class members were damaged or injured, *in whole*, because of the spill of crude oil and other substances from a storage tank on Murphy Oil USA Inc.'s Meraux property related to Hurricane Katrina.

11

**REQUEST FOR ADMISSION NO. 28:**

Admit that your proposed class definition for the New Orleans East Subclass includes individuals or entities that are also members of the proposed Lower Ninth Ward and St. Bernard Subclass.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 29:**

Admit that your proposed class definition for the MRGO Group includes individuals or entities that are also members of the proposed class in the Levee Group.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 30:**

Admit that your proposed class definition for the MRGO Group includes individuals or entities that are also members of the proposed classes in the Insurance Group.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 31:**

Admit that the primary relief you are seeking is monetary relief.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

The term "primary" is vague and ambiguous and therefore, as written, this request is denied. The plaintiffs do admit that they are seeking such compensation and relief as to which they are entitled under the law.

**REQUEST FOR ADMISSION NO. 32:**

Admit that some proposed class members have made an assignment of their legal rights arising out of Hurricane Katrina (including, for example, class members who obtained SBA loans).

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 33:**

Admit that some proposed class members have already received payments from their insurance companies for property damage due to Hurricane Katrina, and those class members' insurance companies may have subrogation rights under the insurance policies.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 34:**

Admit that some proposed class members who have received payments on Hurricane Katrina property damage claim(s) from their insurance companies have legally subrogated their recovery to the extent of any insurance proceeds paid to them for the same property damages.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 35:**

Admit that as of the date that the MR-GO Master Consolidated Class Action Complaint in this action was filed, each and every member of the proposed class had not exhausted their administrative remedies under the FTCA.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Denied as written.  The MR-GO Master Consolidated Class Action Complaint proposes a putative class which includes individuals or entities that will have exhausted their administrative remedies as of the date on which the Order of Certification is granted.

**REQUEST FOR ADMISSION NO. 36:**

Admit that as of the date that the MR-GO Master Consolidated Class Action Complaint in this action was filed, each and every member of the proposed class had not exhausted their administrative remedies under the Admiralty Extension Act.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

Denied as written.  The MR-GO Master Consolidated Class Action Complaint proposes a putative class which includes individuals or entities that will have exhausted their administrative remedies as of the date on which the Order of Certification is granted.

**REQUEST FOR ADMISSION NO. 37:**

Admit that some named plaintiffs and/or proposed class members currently reside outside of the State of Louisiana.

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

See Response to Request for Admission No. 13.

**REQUEST FOR ADMISSION NO. 38:**

Admit that the law of a state other than Louisiana will apply to determine the legal rights of at least one named plaintiff or proposed class member.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

Denied.

**REQUEST FOR ADMISSION NO. 39:**

Admit that the law of a state other than Louisiana will apply to determine the damages of at least one named plaintiff or proposed class member.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

Denied.

**REQUEST FOR ADMISSION NO. 40:**

Admit that both of your proposed subclasses include corporations that suffered damage as a result of Hurricane Katrina.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

Admitted.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

If the Court were to certify your proposed class, describe in detail the trial plan that you contend would enable the Court to adjudicate each element of proof required for each cause of action alleged against each defendant.

**ANSWER TO INTERROGATORY NO. 1:**

It is the intent of the Plaintiffs, consistent with CMO #4, that a jury will hear and decide the certified common issues. This common issues trial will determine the cause(s) of the levee breach(s) which allowed water to penetrate the geographical boundaries of the class, the parties at fault who are responsible for the levee breach(s), and the apportionment of fault between the Defendants. The common questions of the causation fault, and the apportionment of fault will then be determined for all class members. The common question of the geographical reach of the flood waters will likewise be determined. There also may be common questions of certain class-wide damages to be tried.

The Court may include in its Trial Plan provisions to permit the Class Representatives or other selected Plaintiffs to try their individual damage claims. In that event, the Trial Plaintiff will then be required to prove that he or she was caused injury and damages as a result of the flooding. If damages were proven, the jury would then assess damages specific to that particular Plaintiff.

**INTERROGATORY NO. 2:**

If the Court were to certify your proposed class, describe in detail the trial plan that you contend would enable the Court to adjudicate the cause(s) of each injury alleged by each proposed class member.

**ANSWER TO INTERROGATORY NO. 2:**

See Answer to Interrogatory No. 1.

**INTERROGATORY NO. 3:**

If the Court were to certify your proposed class, describe in detail the trial plan that you contend would enable the Court to adjudicate comparative fault with regard to the various injuries alleged by each proposed class member.

**ANSWER TO INTERROGATORY NO. 3:**

See Answer to Interrogatory No. 1.

**INTERROGATORY NO. 4:**

If the Court were to certify your proposed class, describe in detail the trial plan that you contend would enable the Court to determine all damage issues, including the amount of damage, for each proposed class member.

**ANSWER TO INTERROGATORY NO. 4:**

See Answer to Interrogatory No. 1.

**INTERROGATORY NO. 5:**

16

If the Court were to certify your proposed class, explain whether your proposed trial plan would use the same or different juries to adjudicate (i) the elements of proof for each cause of action, (ii) affirmative defenses, and (iii) damage issues. If you propose the use of two or more different juries, explain what each jury will determine, and what each jury will be informed about the results of previous phases of the trial. If you contend that particular issues do not require a jury, identify those issues and describe how those issues will be adjudicated.

## ANSWER TO INTERROGATORY NO. 5:

The same jury would address those common issues and others which may be certified by the Court.  Those common issues would include causes of action common to all Plaintiffs and affirmative defenses common to all Plaintiffs.  Depending on the trial plan adopted by the Court, it may be that the Class Representatives or other selected Trial Plaintiffs will try their individual damage claims to the common issue jury.

Subsequent to a determination of all certified common issues, individual trials, to a jury or to the Bench which would be limited to individualized proofs of damages and quantum.  Various Courts have used different methods to address these individualized proofs.  Any more detailed discussion of individual damage trials is premature. Claims against the government would be tried to the Bench contemporaneously with the common issues jury trial as to all common issues.

## INTERROGATORY NO. 6:

If you contend that defendants are not entitled to individual proofs at trial for each proposed class member to determine: (i) the cause of each injury alleged by each proposed class member; (ii) the allocation of fault among all persons causing or contributing to each such injury; and (iii) the amount of any damages sustained by each proposed class member as a result of each defendant's

alleged negligence, then identify and describe the trial procedures that you contend would enable the Court to adjudicate each of these issues.

**ANSWER TO INTERROGATORY NO. 6:**

See Answer to Interrogatory Nos. 1 and 5.

**INTERROGATORY NO. 7:**

If the Court does not accept the futility-doctrine argument set forth in paragraphs 2 and 3 of the MR-GO Master Consolidated Class Action Complaint, describe in detail how your proposed class-trial plan would enable the Court to determine whether or not each proposed class member had fulfilled the administrative claim filing requirements necessary to maintain a claim under the Federal Tort Claims Act.

**ANSWER TO INTERROGATORY NO. 7:**

The common issues trial as proposed by the Plaintiffs would not require such proof. The trial of individualized damage claims would be the appropriate time for the introduction of such proof.

**INTERROGATORY NO. 8:**

Identify and describe any mathematical or formulaic calculations or other models that you contend may be used to determine the cause(s) of alleged injuries to any proposed class member, and explain how such calculations or models would be legally sufficient in any trial of your proposed class action.

**ANSWER TO INTERROGATORY NO. 8:**

Objection. The words "mathematical or formulaic calculations or other models" are vague and ambiguous insofar as they could be intended to refer to damage calculation or to levee breach scenarios.

Plaintiffs further object as this interrogatory as premature as it seeks information that would be considered "protected work product" as contemplated by CMO #4 (III)(D).

**INTERROGATORY NO. 9:**

Identify and describe any mathematical or formulaic calculations or other models that you contend may be used to determine the type or amount of damages sustained by any proposed class member, and explain how such calculations or models would be legally sufficient in any trial of your proposed class action.

**ANSWER TO INTERROGATORY NO. 9:**

See Answer to Interrogatory No. 8.

**INTERROGATORY NO. 10:**

If you are seeking class certification under Federal Rule of Civil Procedure 23(b)(1), describe the basis for your assertion that class certification would be appropriate pursuant to Rule 23(b)(1).

**ANSWER TO INTERROGATORY NO. 10:**

See Plaintiffs' Motion for Class Certification.

**INTERROGATORY NO. 11:**

If you are seeking class certification under Federal Rule of Civil Procedure 23(b)(2), describe the basis for your assertion that class certification would be appropriate pursuant to Rule 23(b)(2), including a description of the specific injunctive and/or declaratory relief you seek and the specific conduct of each defendant that you seek to enjoin and/or compel.

**ANSWER TO INTERROGATORY NO. 11:**

See Plaintiffs' Motion for Class Certification.

**INTERROGATORY NO. 12:**

In your motion for class certification, you contend that "certain elements of classwide damage, such as the breakdown in social structure and loss of cultural identity, might be remedied

19

by way of declaratory and/or injunctive relief." State whether you are seeking such relief and, if so, describe the specific declaratory and/or injunctive relief that you are seeking to remedy these alleged damages.

**ANSWER TO INTERROGATORY NO. 12:**

Objection. Plaintiffs object on the grounds that this request seeks the disclosure of expert opinions and reliance materials, all of which is not yet due under the deadlines established by CMO # 4, as amended.

**INTERROGATORY NO. 13:**

In paragraphs 12 and 13 of the MR-GO Master Consolidated Class Action Complaint, your definitions for your proposed class and subclasses refer to "[a]ll individuals and entities **in** . . ." (emphasis added) the various geographical areas. For purposes of ascertaining class membership, explain what you mean by "in," how you believe the Court would determine whether an individual or entity was "in" the geographical areas specified in your class and subclass definitions, and state the time or date as of which you would make that determination. (For example, does "in" mean a resident of, owned property in, or was physically present on August 29, 2005, etc.?)

**ANSWER TO INTERROGATORY NO. 13:**

Plaintiffs object to this interrogatory on the grounds that it fails to address the word "in" in proper context and specifically fails to acknowledge any logical and grammatical relationship between the word "in" and the balance of the class and subclass definitional language limiting class/subclass membership to those "who/which sustained damages as a result of the inundation/flooding in [the] area."

**INTERROGATORY NO. 14:**

Do you contend that named plaintiffs or proposed class members who have recovered damages in other lawsuits related to Hurricane Katrina, or who by the time of trial will have

recovered such damages in other lawsuits, (including for example the *Murphy Oil* settlement), are members of your proposed class? If so, how do you propose to account for the monetary awards in those other lawsuits in determining any damages award to a proposed class member in this case?

**ANSWER TO INTERROGATORY NO. 14:**

Yes.  During the course of the individualized damage trial the Court or the jury will take into account appropriate offsets as may be permitted by law.

**INTERROGATORY NO. 15:**

For each named plaintiff, identify and describe each separate type of injury alleged by the named plaintiff, including but not limited to the nature and extent of each such injury, when and where each such injury occurred, the amount of monetary damages being sought for each such injury, and all facts that form the basis of your contention that one or more MR-GO defendants proximately caused each such injury.

**ANSWER TO INTERROGATORY NO. 15:**

Objection. This Interrogatory seeks to discover information which is outside the permissible bounds of discovery at this time.  CMO #4 at III(A) limits discovery as follows:  "As to each proposed class representative, the motions must provide his or her full name, current address, occupation and age, and the street address of any property as to which he or she seeks to recover damages in these cases, including whether he or she owned or leased the property, a brief description of the size of the property and any buildings or other improvements on it, and whether it was or is used for residential and/or business purposes."  Plaintiffs have complied with these directives and would refer the Defendants to its previously filed Motion.

CMO #4, IV limits current discovery "…to common liability issues as defined above and will not include damages, except as permitted later in this Order for individual cases in the insurance category."   CMO #4, III(B)(2) limits certification discovery to "class certification issues."  The

Plaintiffs' certification papers seek only common issues certification as discussed in Response to Interrogatory No. 1, *supra*.  For these reasons Plaintiffs object to all and any individualized damage discovery directed to putative class members, and named Plaintiffs.

As to Class Representatives, the Plaintiffs have complied with their discovery obligations as defined by the Court.

**INTERROGATORY NO. 16:**

For each named plaintiff, identify and describe every time you have seen a physician, psychologist, psychiatrist, or other medical professional as a result of any injuries or damages alleged in the lawsuit or otherwise related to Hurricane Katrina. Include in your description the name and address of each such medical professional, the date of visit, the reason for the visit, and the medications, if any, that were prescribed.

**ANSWER TO INTERROGATORY NO. 16:**

Objection.  See Response to Interrogatory No. 15.

**INTERROGATORY NO. 17:**

For each named plaintiff, identify and describe any payment, insurance proceed, settlement, loan disbursement, government assistance, benefit, or other funds paid to the named plaintiff or on his/her behalf related to Hurricane Katrina passing near New Orleans on or about August 29, 2005, or Hurricane Rita passing near New Orleans on or about September 24, 2005.

**ANSWER TO INTERROGATORY NO. 17:**

Objection.  See Response to Interrogatory No. 15.

**INTERROGATORY NO. 18:**

Identify all lawsuits related to Hurricane Katrina that have been filed by any of plaintiffs' counsel, other than the previously filed class-action complaints that were superseded and replaced

by any of the three Master Consolidated Class Action Complaints (per Case Management Order No. 4, § II.B.1).

**ANSWER TO INTERROGATORY NO. 18:**

Objection.  This Interrogatory does not seek discovery of admissible evidence nor is it calculated to lead to discovery of admissible evidence.

**INTERROGATORY NO. 19:**

Identify and describe every source of water that entered the "Greater New Orleans" area (as defined in your proposed class definition) and caused injury or damage to proposed class members, including a description of which geographical area(s) were affected by each source of the water.

**ANSWER TO INTERROGATORY NO. 19:**

Plaintiffs respectfully refer the Defendants to their MR-GO Master Consolidated Class Action Complaint.

**INTERROGATORY NO. 20:**

For each source of water you identify in response to Interrogatory 19, identify all persons or entities, (including entities that are not currently parties to this lawsuit), that you contend caused the water to enter the "Greater New Orleans" area (as defined in your proposed class definition).

**ANSWER TO INTERROGATORY NO. 20:**

Plaintiffs respectfully refer the Defendants to their MR-GO Master Consolidated Class Action Complaint.  See also Plaintiffs' Witness List previously filed herein.

**INTERROGATORY NO. 21:**

Identify all issues that you expect to be tried in a class proceeding and all issues you expect to be tried individually.

**ANSWER TO INTERROGATORY NO. 21:**

See Response to Interrogatory No. 1.

**INTERROGATORY NO. 22:**

As to each named plaintiff, identify and describe each levee breach, overtopping, or other source of water that resulted in damage to each named plaintiff's property at issue and identify the geotechnical and structural failure modes and causes for each such source of water.

**ANSWER TO INTERROGATORY NO. 22:**

Objection. See Response to Interrogatory No. 12.

**INTERROGATORY NO. 23:**

If you contend that the futility doctrine applies to waive the administrative exhaustion requirements imposed by federal law, state the basis for, and the facts that support, this contention.

**ANSWER TO INTERROGATORY NO. 23:**

The doctrine in question is explained in the jurisprudence of which Defendants should be aware. Its applicability here will be briefed as ordered by the Court

**INTERROGATORY NO. 24:**

If you contend that each of the named plaintiffs and/or proposed class members have exhausted their administrative remedies before instituting an action, state the basis for, and the facts that support, this contention.

**ANSWER TO INTERROGATORY NO. 24:**

Plaintiffs have previously produced all available Form 95's filed by each Class Representative. Plaintiffs have, through previously filed discovery, asked the Government to produce all Form 95's which it received. The Government has objected. Plaintiffs adopt the Government's objections to the extent that this Interrogatory seeks Form 95's from putative class members not yet Plaintiffs in this litigation.

**INTERROGATORY NO. 25:**

State the name, present address, address as of August 29, 2005, occupation, and age for each named plaintiff.

**ANSWER TO INTERROGATORY NO. 25:**

Objection.  See Response to Interrogatory No. 15.

**INTERROGATORY NO. 26:**

Do you contend that the law of any state other than Louisiana will apply to determine the legal claims or damages of any proposed class members? If so, provide the following information: each state's law that will apply, each legal issue to which that state's law applies, and identify each plaintiff to whom that state's law will apply.

**ANSWER TO INTERROGATORY NO. 26:**

No.

**INTERROGATORY NO. 27:**

State all of the common legal duties that you allege each defendant owed to the named plaintiffs and the proposed class members.

**ANSWER TO INTERROGATORY NO. 27:**

Plaintiffs respectfully refer the Defendants to their Superseding Master Consolidated Class Action Complaint.

**INTERROGATORY NO. 28:**

Given that there is no jury trial allowed under the Federal Tort Claims Act, explain in detail how your proposed trial plan will coordinate the bench-trial claims against the United States with the jury-triable claims against other defendants.

**ANSWER TO INTERROGATORY NO. 28:**

Plaintiffs will suggest that trials to both the Bench and jury will occur simultaneously.

**INTERROGATORY NO. 29:**

Identify and describe in detail the circumstances if any of the named plaintiffs have ever been convicted of a crime, filed for bankruptcy, or been subject to a claim of breach of fiduciary duty.

**ANSWER TO INTERROGATORY NO. 29:**

Objection.  See Response to Interrogatory No. 15.

**INTERROGATORY NO. 30:**

Identify and described in detail the circumstances if any of the named plaintiffs suffer from any mental or physical illness, disability, or impairment.

**ANSWER TO INTERROGATORY NO. 30:**

Objection.  See Response to Interrogatory No. 15.

**INTERROGATORY NO. 31:**

If you contend that any of the individuals or entities identified in Requests for Admission No. 13-26 above are not included in each of your proposed subclasses, please describe in detail the reasons why they would not be included.

**ANSWER TO INTERROGATORY NO. 31:**

See Response to Request for Admissions Nos. 13 through 26.

**INTERROGATORY NO. 32:**

For each request for admission you denied, or for which you qualified your answer, please provide the following: (i) a list of all persons, by name and title, you contacted in formulating your response; (ii) a description of the information they provided to you in formulating your response; and (iii) an explanation of the basis for your denial or qualification of your response.

**ANSWER TO INTERROGATORY NO. 32:**

(i)      Undersigned Plaintiffs' Counsel, Plaintiffs' Counsel in MR-GO Litigation, and their staff(s).

(ii)     The IPET Report, Team Louisiana Report, the Independent Levee Investigation Team report, and all discovery provided by any party to this Litigation, all of which is publicly available and incorporated herein by reference. See also those documents listed on Exhibit "A" annexed hereto and incorporated herein by reference.

(iii)     See Response to Request for Admissions.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

Produce a copy of each Standard Form 95 submitted to the United States Army Corps of Engineers by you or by any member of the proposed class from August 29, 2005, to the present, that is in the possession, custody, or control of the named plaintiffs or their attorneys.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Objection.  See Response to Interrogatory No. 24. The United States is the only entity in possession of copies of all Form 95's.

### REQUEST FOR PRODUCTION NO. 2:

Produce all administrative claims relating to Hurricane Katrina that you or proposed class members have submitted to any governmental body or agency (including but not limited to claim forms submitted to the Louisiana Recovery Authority), that are in the possession, custody, or control of the named plaintiffs or their attorneys.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Objection.  See Response to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 3:**

Produce all documents that refer or relate to insurance claims that you or proposed class members have filed to recover for damages or injuries (personal or property) sustained between August 28, 2005, and September 25, 2005, that are in the possession, custody, or control of the named plaintiffs or their attorneys.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Objection.  See Response to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 4:**

Produce all documents that refer or relate to the composition of your proposed class or subclasses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Objection.  This discovery request is over broad, burdensome, and unreasonable.  See also Plaintiffs' Response to Request for Production No. 6.

**REQUEST FOR PRODUCTION NO. 5:**

Produce all documents in the possession, custody, or control of the named plaintiffs or their attorneys that refer or relate to any eye witness account of Hurricane Katrina.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Objection.  This discovery request is over broad, burdensome, and unreasonable.  See also Plaintiffs' Response to Request for Production No. 6.

**REQUEST FOR PRODUCTION NO. 6:**

Produce all documents in the possession, custody, or control of the named plaintiffs or their attorneys that refer or relate to the matters alleged in the MR-GO Master Consolidated Class Action Complaint or any damages or injuries allegedly sustained by any proposed class member as a result of Hurricane Katrina.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

As to damage materials, objection, see Response to Interrogatory No. 15. As to common issue materials, Plaintiffs object to the extent this Interrogatory seeks to have Plaintiffs' counsel disclose mental impressions and work product, all of which is privileged and protected from disclosure. Plaintiffs further object on the grounds that this request seeks the disclosure of expert opinions and reliance materials, all of which is not yet due under the deadlines established by the CMO # 4, as amended. Plaintiffs further object as this request is overly broad, unduly burdensome and/or oppressive and requests information that is irrelevant to the subject matter of this action and/or is not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs have not completed their investigation of the facts relating to this action, have not interviewed all potential witnesses, have not completed discovery and have not completed their preparation for the trial or any evidentiary hearing in this matter. Accordingly, the response provided is given without prejudice to Plaintiffs' rights to produce, at any time, subsequently discovered evidence relating to presently known material facts and to produce all evidence, whenever discovered, relating to subsequently discovered material facts.

Plaintiffs refer Defendants to the factual allegations of the IPET Report, Team Louisiana Report, the Independent Levee Investigation Team report, and all discovery provided by any party to this Litigation, all of which is publicly available and incorporated herein by reference. See also those documents listed on Exhibit "A" annexed hereto and incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 7:**

Produce all statements, transcriptions of recorded statements, tape recordings, notes, diagrams and/or descriptions that refer or relate to the matters alleged in the MR-GO Master Consolidated Class Action Complaint or any damages or injuries allegedly sustained by any proposed class member as a result of Hurricane Katrina.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

To the extent this Request seeks expert materials, Plaintiffs object on the grounds that this request seeks the disclosure of expert opinions and reliance materials, all of which is not yet due under the deadlines established by CMO # 4, as amended.

As to statements, transcriptions, etc. see Response to Request # 15

**REQUEST FOR PRODUCTION NO. 8:**

Produce duplicates of all photographs, digital video discs and/or video tapes that refer or relate to the matters alleged in the MR-GO Master Consolidated Class Action Complaint or any damages or injuries allegedly sustained by any proposed class member as a result of Hurricane Katrina.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Objection. This discovery request is over broad, burdensome, and unreasonable. See also Plaintiffs' Response to Request for Production No. 6.

**REQUEST FOR PRODUCTION NO. 9:**

For each named plaintiff, produce all documents that refer or relate to any claim a named plaintiff is asserting for any damage alleged in the MR-GO Master Consolidated Class Action Complaint, including but not limited to damages from chemical or other contamination to his or her property, land, home, commercial buildings and/or improvements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Objection. See Answer to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 10:**

For each named plaintiff, produce all documents that refer or relate to any claim a named plaintiff is asserting for lost earnings, lost future earnings, lost business opportunities, lost future business income, business interruption, lost rental income, and/or lost future rental income.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Objection.  See Response to Interrogatory No. 15.  See also Plaintiffs' Response to Interrogatory No. 24.

**REQUEST FOR PRODUCTION NO. 11:**

For each named plaintiff, produce all documents that evidence, reflect, support, or contradict your claim for personal injury and "wrongful death, survival damages, fear, fright and emotional distress, grief, mental anguish, inconvenience, pain and suffering, loss of the capacity to enjoy life; [and] loss of consortium …." in the MR-GO Master Consolidated Class Action Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Objection.  See Answer to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 12:**

Produce all mathematical or formulaic calculations or other models that refer or relate to determining the cause(s) of injury to any named plaintiff, any proposed class member, or any group of proposed class members.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

To the extent this Request seeks expert materials, Plaintiffs object on the grounds that this request seeks the disclosure of expert opinions and reliance materials, all of which is not yet due under the deadlines established by  CMO # 4, as amended.

**REQUEST FOR PRODUCTION NO. 13:**

Produce all mathematical or formulaic calculations or other models that refer or relate to the calculation of damages for any named plaintiff, any proposed class member, or any group of proposed class members.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

See Answer to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 14:**

For each named plaintiff, produce documents that refer or relate the named plaintiff's evacuation, relocation, and, if applicable, eventual return to New Orleans, including but not limited, to records of expenses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Objection.  See Answer to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 15:**

For each named plaintiff, produce all statements, transcriptions of recorded statements, tape recordings, notes, diagrams, and/or descriptions of events by the named plaintiff relevant to the issues subject to this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Objection. Communications between counsel and the Plaintiffs is privileged.

**REQUEST FOR PRODUCTION NO. 16:**

For each named plaintiff, produce all logs, journals, diaries, or other writings by the named plaintiff that refer or relate to Hurricane Katrina or the matters at issue in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Objection.  See Answer to Interrogatory No. 15.  Further, Plaintiffs are presently unaware of any such logs, journals, etc. that relate to common liability issues.

**REQUEST FOR PRODUCTION NO. 17:**

For each named plaintiff, produce all medical records from August 2000 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Objection.  See Answer to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 18:**

For each named plaintiff, produce all documents evidencing the application for or receipt of any benefit, payment, insurance proceed, settlement, loan disbursement, or other funds paid to the named plaintiff or on his/her behalf related to Hurricane Katrina and/or its aftermath.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Objection.  See Answer to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 19:**

Produce all demonstrative evidence or exhibits that you may refer to at the class certification hearing and all documents that refer or relate to such demonstrative evidence or exhibits.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Objection.  Plaintiffs object on the grounds that this request seeks the disclosure of expert opinions and reliance materials, all of which is not yet due under the deadlines established by CMO # 4, as amended.

**REQUEST FOR PRODUCTION NO. 20:**

Produce all computer models that you may refer to at the class certification hearing or in support of class certification and all documents that refer or relate to such computer models.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Objection.  Plaintiffs object on the grounds that this request seeks the disclosure of expert opinions and reliance materials, all of which is not yet due under the deadlines established by CMO # 4, as amended.

**REQUEST FOR PRODUCTION NO. 21:**

Produce all models, diagrams, maps, and/or graphical depictions of the areas of the proposed class and sub-classes that show the cause, extent, timing, duration, process, location, depth, or receding of flood water intrusion due to each levee/floodwall breach or levee/floodwall overtopping.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Objection.  Plaintiffs object on the grounds that this request seeks the disclosure of expert

opinions and reliance materials, all of which is not yet due under the deadlines established by CMO

# 4, as amended.

**REQUEST FOR PRODUCTION NO. 22:**

Produce a copy of all photographs of any named plaintiff's real property, including

photographs taken before Hurricane Katrina and after Hurricane Katrina.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Objection.  See Answer to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 23:**

Produce all reports, notes, photographs, drawings, and/or evaluations for each and every

piece of property (including but not limited to lands, homes, commercial buildings, improvements,

movables, and/or other tangible properties, etc.) that was inspected, examined, tested, or appraised

by plaintiffs' experts or consultants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Objection.  Plaintiffs object on the grounds that this request seeks the disclosure of expert

opinions and reliance materials, all of which is not yet due under the deadlines established by CMO

# 4, as amended.

**REQUEST FOR PRODUCTION NO. 24:**

Produce all data or other information considered by any expert witness expected to testify,

submit an affidavit, or otherwise produce or submit evidence on behalf of plaintiffs in support of

your motion for class certification, and all documents that refer or relate to such data or other

information.

34

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Objection.  Plaintiffs object on the grounds that this request seeks the disclosure of expert opinions and reliance materials, all of which is not yet due under the deadlines established by CMO # 4, as amended.

**REQUEST FOR PRODUCTION NO. 25:**

Produce all exhibits to be used as a summary of or support for the opinions of any expert witness expected to testify, submit an affidavit, or otherwise produce or submit evidence on behalf of plaintiffs in support of your motion for class certification, and all documents that refer or relate to such exhibits.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Objection.  Plaintiffs object on the grounds that this request seeks the disclosure of expert opinions and reliance materials, all of which is not yet due under the deadlines established by CMO # 4, as amended.

**REQUEST FOR PRODUCTION NO. 26:**

Produce all documents furnished by any member of the public as a result of your public advertisements (whether billboards, newspapers, or others) seeking either potential plaintiffs or eyewitnesses in connection with the claims asserted in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Objection.  Plaintiffs object on the grounds that this request seeks the disclosure of expert opinions and reliance materials, all of which is not yet due under the deadlines established by CMO # 4, as amended.

**REQUEST FOR PRODUCTION NO. 27:**

Produce all documents that you consulted or relied upon in preparing your response to the MRGO Defendants' First Set of Joint Class-Certification Requests for Admission or Interrogatories, or that refer or relate to any of your answers to those discovery requests, or that are identified in any response to your answers to those discovery requests.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

The IPET Report, Team Louisiana Report, the Independent Levee Investigation Team report, and all discovery provided by any party to this Litigation, all of which is publicly available and incorporated herein by reference. See also those documents listed on Exhibit "A" annexed hereto and incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 28:**

Produce a copy of the complaint or petition in any prior litigation to which any named plaintiff has been a party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Objection. See Answer to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 29:**

Produce a copy of any lease agreements entered into between any named plaintiff and any proposed class member.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Objection. See Answer to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 30:**

Produce all documents that relate to any eviction proceedings instituted by or against any named plaintiff after Hurricane Katrina.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Objection.  See Answer to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 31:**

Produce any and all documents that indicate whether a proposed class member has consented to be represented by counsel.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Objection.  See Answer to Interrogatory No. 15.

**REQUEST FOR PRODUCTION NO. 32:**

Produce any and all documents in your possession indicating that the proposed named plaintiffs will protect the interests of the proposed class.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

This discovery Request is vague and confusing and therefore Plaintiffs are unable to respond.

**REQUEST FOR PRODUCTION NO. 33:**

Please sign, date, and return the attached Authorizations for release of various records of the proposed named plaintiffs, which include:

(1) Authorization to disclose medical information;

(2) Authorization to disclose patient account information; and

(3) Authorization to disclose psychiatric information and psychotherapy notes

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Objection.  See Answer to Interrogatory No. 15.

Respectfully Submitted,
APPROVED PLAINTIFFS LIAISON COUNSEL

*s/ Joseph M. Bruno*
JOSEPH M. BRUNO
PLAINTIFFS LIAISON COUNSEL
LA Bar Roll Number: 3604
Law Offices of Joseph M. Bruno.
855 Baronne Street
New Orleans, Louisiana 701 13
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com

MR-GO PLAINTIFFS SUB-GROUP
LITIGATION COMMITTEE

/s/ Jonathan B. Andry
Jonathan B. Andry, Esq.
THE ANDRY LAW FIRM, LLC
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile: (504)586-8933
Email:  johnandry@yahoo.com

For
MR-GO PLAINTIFFS SUB GROUP
LITIGATION COMMITTEE
Jonathan Andry
Clay Mitchell
Pierce O'Donnell
James Parkerson Roy

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of

record by placing same in the United States mail, properly addressed and with first-class postage,

or by facsimile or other electronic transmission this 12th day of June, 2007.

/s/ Joseph M.Bruno

Joseph M. Bruno

## EXHIBIT "A"

1.    IPET Report.

2.    Team Louisiana Report.

3.    Independent Levee Investigation Team Report.

4.    Plaintiffs' Preliminary Witness and Exhibit List previously submitted in this litigation

5.    MRGO  Master Consolidated Class Action Complaint, and the documents referenced/cited therein.

6.    The River and Harbors Act of 1899 (33 U.S.C. § 403).

7.    U.S. Weather Bureau data regarding "Standard Project Hurricane" ("SPH"), including promulgations from 1959 and 1972.

8.    1979 National Oceanic and Atmospheric Administration ("NOAA") Technical Report NWS 23.

9.    Engineering Regulation ER 1110-2-1453, issued in 1981 by the Office of the Chief of Engineers in Washington.

10.    The National Geodetic Vertical Datum of 1929 ("NGVD29").

11.    Data from the levee project design authorized by Congress, known as the "Barrier Plan," included a series of levees along the lakefront, concrete floodwalls along the IHNC, and control structures, including barriers and flood control gates located at the Rigolets, Chef Menteur Pass, and Seabrook at the northern end of the IHNC.

12.    December 1977 court ruling enjoining the Corps from constructing the barrier complex and certain other parts of the Project, until a revised Environmental Impact Statement was prepared and accepted.

13.    The Flood Control Act of 1928.

14.    The U.S. Army Corps of Engineers Manual on Engineering, Design and Construction of Levees dated April 30, 2000.

15.    Information from the July of 1914 authorization by the Louisiana State Legislature to the City of New Orleans to locate and construct a deep water canal between the Mississippi River and Lake Pontchartrain. Construction of the Inner Harbor Navigations Canal ("IHNC"), which is also known as the Industrial Canal, commenced on June 6, 1918.

16. Information regarding the Gulf Intracoastal Waterway ("GIWW"), which is the navigation canal project completed between New Orleans and Corpus Christi, Texas by mid-1942 under the authority of the Corps.

17. Information regarding the construction and maintenance of the Mississippi River Gulf Outlet navigational canal ("MR-GO").

18. The Corps' report on Hurricane Betsy (USACE, 1965).

19. The Rivers and Harbor Act of 1945, P.L. 79-14, 50 Stat. 10 (March 2, 1945).

20. The Fish and Wildlife Coordination Act ("FWCA"), 16 U.S.C. § 662, as amended in 1946 and 1958, et seq.

21. The 1958 DOI report concluding that detailed investigations, coordinating hydrological, vegetative, fish and wildlife findings, as well as a model study would be a prerequisite to predictions of the MR-GO's effects and establishment of mitigatory measures.

22. September 25, 1951 report by the Corps to Congress with recommendations for construction of the MR-GO ("MR-GO Authorization Report"), including the letter from the former Corps Chief of Engineers stating that the proposed MR-GO would be connected to the IHNC by its own *separate* canal running parallel to the GIWW and the report from the Corps' Board of Engineers recommending further studies into the MR-GO's impact on the Louisiana coast.

23. Executive Order 11990.

24. National Environmental Policy Act (NEPA), 42 U.S.C. § 4332 (c).

25. The Water Resources Development Act of 1990 (WRDA).

26. The Coastal Zone Management Act, 16 U.S.C. § 1452, *et. seq.*

27. The Louisiana State and Local Coastal Resources Management Act, La. R.S. 49:214.21 *et. seq*.

28. Record of the Congressional hearings which authorized the construction of the MR-GO in 1956 (P.L.-455) and the record of the Coprs' subsequent actions regarding the MR-GO.

29. "1984 Re-Evaluation Study" means the study conducted by the Army Corps, published in 1984, that examined the feasibility of providing hurricane protection by raising, elevating, and strengthening levees and floodwalls in Greater New Orleans, as referred to and described in Volume 1, pages 26-27 of the IPET Report.

30. Mississippi River Gulf Outlet Deep-Draft De-Authorization Interim Report to Congress, dated December 2006.

31.   Status Report - Comprehensive Plan for Timely Modification of the Mississippi River Gulf Outlet, Lee Wilson and Associates, Inc., (July 31, 2000)

32.   "Mister Go Must Go; a Guide for the Army Corps' Congressionally-Directed Closure of the Mississippi River Gulf Outlet," Dr. John Day, et al, (December 4, 2006)

33.   Mississippi River-Gulf Outlet, St. Bernad Parish, La., Bank Erosion, Reconnaissance Report, United States Army Corps of Engineers (January 1994)

34.   Notice of Study Findings, Louisiana Coastal Area, Louisiana, Shore and Barrier Island Erosion, Initial Evaluation Study, United States Army Corps of Engineers (July 1984)

35.   An Interim Report on Fish and Wildlife Resources as Related to Mississippi River-Gulf Outlet, Louisiana and an Outline of Proposed Fish and Wildlife Studies, Army Corps of Engineers (April 1958)

36.   The Army Corps' report on the proposed Mississippi River-Gulf Outlet was submitted to the House Committee on Rivers and Harbors. *See* H. R. Doc. No. 71-46 (June 11, 1930)

37.   September 18, 1951 hearings before the House Subcommittee on Rivers and Harbors of the House Committee on Public Works with respect to the Mississippi River Gulf outlet and the Mobile to New Orleans Intracoastal Waterway"

38.   July 26, 1955 Report to the House of Representatives from the House Committee on Public Works on H. R. 6309

39.   Act of March 29, 1956 to "Authorize Construction of the Mississippi River Gulf-Outlet," Pub. L. 84-455, 70 Stat. 65 (1956)

40.   Public Works Appropriation Act of 1958, P. L. 85- 167, 71 Stat. 416 (August 26, 1957) (act authorizing Congressional funds for MRGO construction)

41.   August 24, 1957 letter from United States Secretary of the Interior, Fred A. Seaton, to Army Secretary Wilber M. Bruckner about the proposed canal.

42.   September 24, 1959 memorandum from F. C. Gillett, Acting Regional Director for the United States Fish and Wildlife Service to the Director of the Fish and Wildlife Service in Washington, D.C. outlining the recommendations re MRGO made to the Army Corps, and the Army Corps' response to these recommendations

43.   1959 draft correspondence from the Secretary of the Interior to the Secretary of the Army re invitation for bids on Reach 2 of the MR-GO issued on January 30, 1959, after the 1958 Amendments were enacted

44.   May 4, 1959 correspondence to the Army Corps District Engineer from W. L. Towns, Acting Regional Director for the Fish and Wildlife Service re recommendations on MRGO construction

45.   Letter from Cary W. Kerlin, Field Supervisor for the United States Fish and Wildlife Service in Lafayette, Louisiana to Jack A. Stephen, Director-Secretary of the St. Bernard Parish Planning Commission in response to a written request for information concerning the MR-GO's effects on "St. Bernard Parish's wetlands and water bodies."

46.   1976 Army Corps document entitled *Final Composite Environmental Statement for Operation and Maintenance Work on Three Navigation Projects in the Lake Borgne Vicinity Louisiana*

47.   1958 Army Corps soil report re construction of the MR-GO, entitled *Geological Investigation of the Mississippi River-Gulf Outlet*

48.   *Mississippi River-Gulf Outlet, Louisiana: Design Memorandum Nos. 1-A, 1-B, 1-C*

49.   Mississippi River Gulf Outlet Deep-Draft De-Authorization Interim Report to Congress, dated December 2006

50.   Photographs of the Armstrongs' house.

51.   Photographs of Glynn Wade's house.

52.   US Army Corps of Engineers Soil and Bank Erosion Report from 1998.