# Exhibit 8

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | §<br>§<br>§<br>§ | CIVIL ACTION NO. 05-4182 "K"(2)<br>JUDGE DUVAL<br>MAG. WILKINSON |
| PERTAINS TO: | §<br>§<br>§ | |
| MRGO | §<br>§ | |
| FILED IN:<br>05-4181, 05-4182, 05-5237, 05-6073, 05-<br>6314, 05-6324, 05-6327, 06-0225, 06-0886,<br>06-2278, 06-2287, 06-4065, 06-4389, 06-<br>4634, 06-4931, 06-5032, 06-5159, 06-5161,<br>06-5260, 06-5786, 06-5937, 07-1271 | §<br>§<br>§<br>§<br>§<br>§ | |

### WASHINGTON GROUP INTERNATIONAL, INC.'S
### OBJECTIONS AND ANSWERS TO MRGO PLAINTIFFS'
### FIRST REQUESTS FOR ADMISSION, INTERROGATORIES,
### AND REQUESTS FOR PRODUCTION OF DOCUMENTS

In accordance with Fed. R. Civ. P. 33, 34, and 36, Washington Group

International, Inc (WGII) submits these Objections and Answers to MRGO Plaintiffs'

First Requests for Admission, Interrogatories, and Requests for Production of Documents

as follows:

### GENERAL OBJECTIONS

The caption of the subject discovery served upon WGII reflects docket

numbers of civil actions which do not name WGII as a defendant and/or as to which

WGII has never been served with process or otherwise made an appearance.

Consequently, WGII objects to plaintiffs serving written discovery upon WGII in cases in

which WGII has not been made a party. By serving these Objections and Answers, WGII

1

is responding exclusively to the discovery in those actions in which it has made an appearance, and WGII does not waive any rights in regard to the actions in which it has not been made a party.

WGII objects to the discovery insofar as it requires defendant to apply plaintiffs' arbitrary definitions to certain words, as set forth in the Definitions section of plaintiffs' discovery. These arbitrary definitions do not reflect commonly understood or otherwise accepted meanings. For example, the plaintiffs define "inundation" as "the touching of real or personal property by water (other than but possibly including precipitation)." Webster's New World College Dictionary (2002), however, defines "inundation" as the noun form of inundate, "to cover or engulf with a flood or deluge; to overwhelm with a rush or great amount of anything." Moreover, the plaintiffs' definition is nonsensical because it has a qualifying phrase that makes no sense — "the touching of real or personal property by water (*other than but possibly including* precipitation)" (italics added). WGII cannot determine from plaintiffs' definition whether "precipitation" is included or excluded.

WGII further objects to the discovery insofar as it requires WGII to respond to discovery that uses specific terms taken from Federal Rule of Civil Procedure 23, without reference to the Rule itself. As such, plaintiffs seek to require responses to the discovery which disregard the plain language of Rule 23 and the vast body of jurisprudence that has interpreted these terms. In all such instances, while reserving its objection, WGII has responded herein to discovery using such Rule 23 terms by applying the meaning of those terms as they are used within Rule 23.

2

WGII also objects to discovery that requires it to respond concerning the submission of so-called "Form 95's." Such forms would have been submitted by the plaintiffs and proposed class members to the United States Army Corps of Engineers. Plaintiffs have not provided copies of such forms to WGII. Consequently, WGII has no information on which it can be expected to respond to plaintiffs' inquiries concerning Form 95's. Plaintiff's Requests for Admission, Interrogatories and Requests for Production directed to Form 95's, propounded to WGII, are therefore unreasonable, burdensome, and not calculated to lead to the discovery of admissible evidence.

Finally, WGII objects to these discovery requests to the extent they seek discovery protected by the attorney-client privilege or attorney work product doctrine.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Each class representative has submitted a Form 95 to the USA.

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

WGII is without knowledge to respond to this Request for Admission because Forms 95 are submitted to the United States Army Corps of Engineers, and WGII has not had access to these documents. Consequently, WGII denies the Request for lack of information, subject to the General Objections noted above. Presumably, this Request is directed only to the United States Army Corps of Engineers.

### REQUEST FOR ADMISSION NO. 2:

The Form 95 submitted by each respective class representative was legally sufficient.

3

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

WGII is without knowledge to respond to this Request for Admission because Forms 95 are submitted to the United States Army Corps of Engineers, and WGII has not had access to these documents. Consequently, WGII denies the Request for lack of information, subject to the General Objections noted above. Presumably, this Request is directed only to the United States Army Corps of Engineers.

**REQUEST FOR ADMISSION NO. 3:**

The USA has not paid, settled, or otherwise resolved, in whole or in part, any claim set forth in any Form 95 submitted by any class representative.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

WGII is without knowledge to respond to this Request for Admission because Forms 95 are submitted to the United States Army Corps of Engineers, and WGII has not had access to these documents. Consequently, WGII denies the Request for lack of information, subject to the General Objections noted above. Presumably, this Request is directed only to the United States Army Corps of Engineers.

**REQUEST FOR ADMISSION NO. 4:**

No Defendant has paid, settled, or otherwise resolved, in whole or in part, any Katrina-related claim asserted against it by any class representative.

4

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

WGII objects to this Request insofar as it purports to require WGII to make an admission regarding the other defendants.

Subject to this Objection and the General Objections set out above, WGII admits that it has not paid, settled or otherwise resolved, in whole or in part, any Katrina-related claim asserted against it by any proposed class representative.

**REQUEST FOR ADMISSION NO. 5:**

Each class representative has satisfied all statutory conditions precedent to maintenance of an action pursuant to 28 U.S.C. § 2671, *et seq.* (Federal Tort Claims Act).

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

WGII is without knowledge to respond to this Request for Admission because the Request pertains to the Federal Tort Claims Act, a cause of action that was asserted against the United States Army Corps of Engineers, but not asserted against WGII. Moreover, Forms 95 are submitted to the United States Army Corps of Engineers, not WGII, and WGII has not had access to those forms. Consequently, WGII denies the Request for lack of information, subject to the General Objections noted above. Presumably, this Request was directed only to the United States Army Corps of Engineers.

**REQUEST FOR ADMISSION NO. 6:**

Each class representative suffered some damage as a result of inundation associated with Hurricane Katrina.

5

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

WGII is without information or knowledge to admit or deny this Request. At this point in the litigation, the proposed class representatives have not responded to defendants' written discovery or been deposed. Consequently, WGII denies the Request for lack of information, subject to the General Objections noted above.

**REQUEST FOR ADMISSION NO. 7:**

Each class representative suffered damage to real property as a result of inundation associated with Hurricane Katrina.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

WGII is without information or knowledge to admit or deny this Request. At this point in the litigation, the proposed class representatives have not responded to defendants' written discovery or been deposed. Consequently, WGII denies the Request for lack of information, subject to the General Objections noted above.

**REQUEST FOR ADMISSION NO. 8:**

Each class representative suffered damage to personal property as a result of inundation associated with Hurricane Katrina.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

WGII is without information or knowledge to admit or deny this Request. At this point in the litigation, the proposed class representatives have not responded to any written discovery or been deposed. Consequently, WGII denies the Request for lack of information, subject to the General Objections noted above.

6

**REQUEST FOR ADMISSION NO. 9:**

Members of the Greater New Orleans Class are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

While WGII denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions, WGII admits that the number of people who resided within the geographic boundaries of plaintiffs' proposed class and sub-classes would meet the numerosity requirement of Federal Rule of Civil Procedure 23.

**REQUEST FOR ADMISSION NO. 10:**

Members of the New Orleans East Sub-Class are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

While WGII denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions, WGII admits that the number of people who resided within the geographic boundaries of plaintiffs' proposed class and sub-classes would meet the numerosity requirement of Federal Rule of Civil Procedure 23.

**REQUEST FOR ADMISSION NO. 11:**

Members of the Lower Ninth Ward & St. Bernard Sub-Class are so numerous that joinder of all such persons and entities in this action is impracticable.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

While WGII denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions, WGII admits that the number of people who resided within the

geographic boundaries of plaintiffs' proposed class and sub-classes would meet the

numerosity requirement of Federal Rule of Civil Procedure 23.

## REQUEST FOR ADMISSION NO. 12:

Members of the Greater New Orleans Class are so geographically dispersed

that joinder of all such persons and entities in this action is impracticable.

## RESPONSE TO REQUEST FOR ADMISSION NO. 12:

WGII denies this Request for Admission.

## REQUEST FOR ADMISSION NO. 13:

Members of the New Orleans East Sub-Class are so geographically

dispersed that joinder of all such persons and entities in this action is impracticable.

## RESPONSE TO REQUEST FOR ADMISSION NO. 13:

WGII denies this Request for Admission.

## REQUEST FOR ADMISSION NO. 14:

Members of the Lower Ninth Ward and St. Bernard Sub-Class are so

geographically dispersed that joinder of all such persons and entities in this action is

impracticable.

## RESPONSE TO REQUEST FOR ADMISSION NO. 14:

WGII denies this Request for Admission.

## REQUEST FOR ADMISSION NO. 15:

The filing of an individual civil action for Katrina-related property losses

by each member of the Greater New Orleans Class would create the risk of inconsistent

or varying adjudications among such actions.

8

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

WGII denies this Request for Admission.

**REQUEST FOR ADMISSION NO. 16:**

The filing of an individual civil action for Katrina-related property losses by each member of the Greater New Orleans Class would create the risk of adjudications that would substantially impair or impede the ability of some class members to protect their interests.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

WGII denies this Request for Admission.

**REQUEST FOR ADMISSION NO. 17:**

As of August 29, 2005, the MRGO was a "thing" over which the USA had "custody" within the meaning of the Louisiana Civil Code art. 2317.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

WGII objects to this Request because the term "USA" does not specify which of the multitude of federal juridical bodies it intends. Moreover, WGII currently has no means to determine whether "the USA" had custody of the MRGO on August 29, 2005, as that term is used in Louisiana Civil Code art. 2317. Thus, WGII denies this Request for lack of information.

**REQUEST FOR ADMISSION NO. 18:**

The USA has not paid, settled, or otherwise resolved, in whole or in part, any claim set forth in the Form 95 submitted by any member of the Greater New Orleans Class.

9

## RESPONSE TO REQUEST FOR ADMISSION NO. 18:

WGII is without knowledge or information to respond to this Request for Admission because the Request pertains to the conduct of another party. Consequently, WGII denies the Request for lack of information, subject to the General Objections noted above. Presumably, this Request is directed only to the United States Army Corps of Engineers.

## REQUEST FOR ADMISSION NO. 19:

No Defendant has paid, settled, or otherwise resolved, in whole or in part, any Katrina-related claim asserted against it by any member of the Greater New Orleans Class.

## RESPONSE TO REQUEST FOR ADMISSION NO. 19:

WGII objects to this Request insofar as it purports to require WGII to make an admission regarding other defendants.

Subject to this Objection and the General Objections set out above, WGII admits that it has not paid, settled, or otherwise resolved, in whole or in part, any Katrina-related claim asserted against it by any proposed member of the Greater New Orleans Class.

## REQUEST FOR ADMISSION NO. 20:

Each member of the Greater New Orleans Class, as defined, has suffered some damage as a result of inundation associated with Hurricane Katrina.

870963v.1

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

WGII objects to this Request because plaintiffs' proposed class definition is circular and purports to define a class composed of only those persons and entities "who/which sustained damages as a result of inundation/flooding in this area which occurred during and immediately following the landfall of Hurricane Katrina." WGII disputes that the proposed class definition is legally sufficient and therefore denies this Request for Admission.

WGII also expressly denies that each proposed class member in the geographical area for the proposed Greater New Orleans Class has suffered some damage as a result of Hurricane Katrina.

**REQUEST FOR ADMISSION NO. 21:**

Every member of the New Orleans East Sub-Class experienced inundation that had as its sole source the MRGO.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

WGII objects to this Request because WGII is not a defendant in the proposed New Orleans East Sub-Class. Subject to this Objection and the General Objections stated above, WGII denies this Request.

**REQUEST FOR ADMISSION NO. 22:**

Every member of the New Orleans East Sub-Class experienced inundation that had as one of its sources the MRGO.

11

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

      WGII objects to this Request because WGII is not a defendant in the

proposed New Orleans East Sub-Class. Subject to this Objection and the General

Objections stated above, WGII denies this Request.

**REQUEST FOR ADMISSION NO. 23:**

      Every member of the New Orleans East Sub-Class has suffered loss or

damage due to inundation that had as one of its sources the MRGO.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

      WGII objects to this Request because WGII is not a defendant in the

proposed New Orleans East Sub-Class. Subject to this Objection and the General

Objections stated above, WGII denies this Request.

**REQUEST FOR ADMISSION NO. 24:**

      Every member of the Lower Ninth Ward & St. Bernard Sub-Class

experienced inundation that had as its source the IHNC, the MRGO, or both of them.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

      Subject to the General Objections stated above, WGII denies this Request.

**REQUEST FOR ADMISSION NO. 25:**

      Every member of the Lower Ninth Ward & St. Bernard Sub-Class has

suffered loss or damage due to inundation that had as its source the IHNC, the MRGO, or

both of them.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

      Subject to the General Objections stated above, WGII denies this Request.

**REQUEST FOR ADMISSION NO. 26:**

The source of inundation affecting any member of the Greater New Orleans

Class is a question that is common to every member of the Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Subject to the General Objections noted above, WGII denies this Request.

**REQUEST FOR ADMISSION NO. 27:**

The source of inundation affecting any member of the New Orleans East

Sub-Class is a question that is common to every member of that Sub-Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Subject to the General Objections stated above, WGII denies this Request.


**REQUEST FOR ADMISSION NO. 28:**

The source of inundation affecting any member of the Lower Ninth & St.

Bernard Sub-Class is a question that is common to every member of that Sub-Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Subject to the General Objections stated above, WGII denies this Request.

**REQUEST FOR ADMISSION NO. 29:**

Whether the USA committed the negligent acts and omissions described in

Count I of the Complaint is a question that is common to every member of the Greater

New Orleans Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

WGII denies this Request.

870963v.1

**REQUEST FOR ADMISSION NO. 30:**

Whether the USA violated Louisiana Civil Code article 667, as alleged in

Count II of the Complaint, is a question that is common to every member of the Greater

New Orleans Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

WGII denies this Request.

**REQUEST FOR ADMISSION NO. 31:**

Whether the Washington Group and/or Orleans and/or Lake Borgne

committed the negligent acts and omissions described in Counts III and IV of the

Complaint, or either of them, is a question that is common to every member of the Lower

Ninth Ward & St. Bernard Sub-Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

WGII denies this Request.

**REQUEST FOR ADMISSION NO. 32:**

Whether Orleans committed the negligent acts and omissions described in

Count V of the Complaint is a question that is common to every member of the New

Orleans East Sub-Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

WGII denies this Request.

14

**REQUEST FOR ADMISSION NO. 33:**

Whether the USA committed the negligent acts and omissions described in Count VI of the Complaint is a question that is common to every member of the Greater New Orleans Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

WGII denies this Request.

**REQUEST FOR ADMISSION NO. 34:**

The attorneys (and their respective firms) appointed by the Court as Plaintiffs' Liaison Counsel and as members of the MRGO PSLC are competent to fairly and adequately protect the interests of the proposed Greater New Orleans Class.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

WGII acknowledges that Plaintiffs' Liaison Counsel are professionally competent, but deny that they — or any other counsel — can fairly and adequately represent the proposed Greater New Orleans Class, given the large size, diversity, and inherent conflicts within that proposed class.

**REQUEST FOR ADMISSION NO. 35:**

Inundation of the properties of the Greater New Orleans Class substantially contributed to the breakdown in social structure and loss of cultural heritage in New Orleans (including the area encompassed by the Greater New Orleans Class definition).

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

WGII objects to this Request because the phrases "the breakdown in social structure" and the "loss of cultural heritage in New Orleans" contain broad and

15

amorphous terms that mean different things to different people. Subject to these

Objections and the General Objections noted above, WGII denies this Request.

## REQUEST FOR ADMISSION NO. 36:

Each member of the Greater New Orleans Class has suffered damages as a

result of the breakdown in New Orleans' social structure and loss of cultural heritage.

## RESPONSE TO REQUEST FOR ADMISSION NO. 36:

WGII objects to this Request because the phrases "the breakdown in New

Orleans' social structure" and "loss of cultural heritage" contain broad and amorphous

terms that mean different things to different people. Subject to this Objection and to the

General Objections, WGII denies this Request.

## REQUEST FOR ADMISSION NO. 37:

Inundation of the properties of the Greater New Orleans Class substantially

contributed to alteration of the physical, economic, political, social, and psychological

character of the New Orleans area (including the area encompassed by the Greater New

Orleans Class definition).

## RESPONSE TO REQUEST FOR ADMISSION NO. 37:

WGII objects to this Request because the phrase "alteration of the physical,

economic, political, social, and psychological character of the New Orleans area"

contains broad and amorphous terms that mean different things to different people.

Subject to this Objection and the General Objections noted above, WGII denies this

Request.

16

**REQUEST FOR ADMISSION NO. 38:**

Each member of the Greater New Orleans Class has suffered damages as a result of the alteration of the physical, economic, political, social, and psychological character of the New Orleans area (including the area encompassed by the Greater New Orleans Class definition).

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

WGII objects to this Request because the phrase "alteration of the physical, economic, political, social, and psychological character of the New Orleans area" contains broad and amorphous terms that mean different things to different people. Subject to this Objection and the General Objections noted above, WGII denies this Request.

**REQUEST FOR ADMISSION NO. 39:**

The causes of the classwide losses suffered by members of the New Orleans East Sub-Class are susceptible to analysis and determination on a classwide basis.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

WGII objects to this Request because it improperly assumes that proposed members of the New Orleans East Sub-Class suffered "classwide losses." Moreover, WGII objects to this Request because WGII is not a defendant in the proposed New Orleans East Sub-Class. Subject to these Objections, WGII denies this Request.

17

**REQUEST FOR ADMISSION NO. 40:**

The causes of the classwide losses suffered by members of the Lower Ninth Ward & St. Bernard Sub-Class are susceptible to analysis and determination on a classwide basis.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

WGII objects to this Request because it improperly assumes that proposed members of the Lower Ninth Ward & St. Bernard Sub-Class suffered "classwide losses." WGII denies this Request.

**REQUEST FOR ADMISSION NO. 41:**

The causes of the individual property losses suffered by members of the Lower Ninth Ward & St. Bernard Sub-Class are susceptible to proof by way of a class trial.

**RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

WGII denies this Request.

**REQUEST FOR ADMISSION NO. 42:**

The causes of the individual property losses suffered by members of the New Orleans East Sub-Class are susceptible to proof by way of a class trial.

**RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

WGII denies this Request for Admission.

870963v.1

## REQUEST FOR ADMISSION NO. 43:

The source of inundation affecting any given property encompassed by the Lower Ninth Ward & St. Bernard Sub-Class definition is susceptible to analysis and determination by expert witnesses.

## RESPONSE TO REQUEST FOR ADMISSION NO. 43:

Subject to the General Objections noted above, WGII admits that expert testimony — if it meets the standards required by the Federal Rules of Evidence and *Daubert* — may assist a jury in analyzing and, possibly, determining (on an individual basis) the sources of water affecting any specific individual property at a particular time, but WGII denies that such analysis or determination can be made on a classwide or sub-classwide basis. Moreover, WGII denies that any determination of the sources of water affecting any specific individual property at a particular time can be made by expert witnesses; such determinations of fact are committed to the jury, based upon all of the relevant, admissible evidence pertaining to that individual property. Consequently, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 44:

The source of inundation affecting any given property encompassed by the New Orleans East Sub-Class definition is susceptible to analysis and determination by expert witnesses.

## RESPONSE TO REQUEST FOR ADMISSION NO. 44:

Subject to the General Objections noted above, WGII admits that expert testimony — if it meets the standards required by the Federal Rules of Evidence and

19

*Daubert* — may assist a jury in analyzing and, possibly, determining (on an individual basis) the sources of water affecting any specific individual property at a particular time, but WGII denies that such analysis or determination can be made on a classwide or sub-classwide basis. Moreover, WGII denies that any determination of the sources of water affecting any specific individual property at a particular time can be made by expert witnesses; such determinations of fact are committed to the jury, based upon all of the relevant, admissible evidence pertaining to that individual property. Consequently, WGII denies the Request.

**REQUEST FOR ADMISSION NO. 45:**

The USA has undertaken efforts to analyze and determine the source or sources of inundation affecting properties encompassed by the Greater New Orleans Class definition.

**RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

WGII objects to this Request because the term "USA" does not specify which of the multitude of federal juridical bodies it presumably intends. Subject to this Objection and the General Objections noted above, WGII admits that the United States Army Corps of Engineers has published its IPET report, which describes certain efforts to analyze some of the sources of water that entered in the geographical area included in the Greater New Orleans Class definition. WGII is otherwise without sufficient knowledge or information to respond and therefore denies the remainder of this Request.

20

## ANSWERS TO FIRST INTERROGATORIES

### INTERROGATORY NO. 1:

For each request for admission you denied, or for which you qualified your answer, please provide the following:  (i) a list of all persons, by name and title, you contacted in formulating your response; (ii) a description of the information they provided to you in formulating your response; and (iii) an explanation of the basis for your denial or qualification of your response.

### ANSWER TO INTERROGATORY NO. 1:

WGII's responses to plaintiffs' Requests for Admission concerning class certification were formulated by WGII's litigation counsel.  Identification of the specific names of and information possessed by litigation counsel is subject to the attorney-client privilege, and/or protected attorney work product.  WGII therefore objects to subparts (i) and (ii) of interrogatory.

Subject to the objections already stated in WGII's responses to the Requests for Admissions, WGII explains the basis for its denial or qualification of responses to Requests for Admission as follows:

### RFA 1:

WGII does not know whether each proposed class representative submitted a Form 95 to the USA.  Forms 95 are submitted to the United States Army Corps of Engineers, and WGII has not had access to these documents.  Presumably, this request is directed only to the United States Army Corps of Engineers.

21

**RFA 2:**

WGII does not know whether the Form 95, if any, submitted by each proposed

class representative was legally sufficient. Forms 95 are submitted to the United States

Army Corps of Engineers, and WGII has not had access to these documents. Presumably,

this request is directed only to the United States Army Corps of Engineers.

**RFA 3:**

WGII does not know whether the USA has paid, settled, or otherwise resolved in

whole or in part, any claim set forth in any Form 95 submitted by any proposed class

representative. Presumably, this request is directed only to the United States Army Corps

of Engineers.

**RFA 4:**

WGII admits that it has not paid, settled, or otherwise resolved, in whole or in part,

any Katrina-related claim asserted against it by any proposed class representative. WGII

does not know and cannot speak as to what the other defendants have done.

**RFA 5:**

WGII does not know whether each proposed class representative has satisfied all

statutory conditions precedent to maintain an action under the Federal Tort Claims Act.

Presumably, this request is directed only to the United States Army Corps of Engineers.

**RFA 6:**

WGII does not know, at this early stage, whether each proposed class

representative has suffered some damage as a result of inundation associated with Katrina.

At this point in the litigation, the proposed class representatives have not responded to

Defendant's written discovery or been deposed.

22

*RFA 7:*

WGII does not know, at this early stage, whether each proposed class representative has suffered some damage to real property as a result of inundation associated with Katrina. At this point in the litigation, the proposed class representatives have not responded to Defendant's written discovery or been deposed.

*RFA 8:*

WGII does not know, at this early stage, whether each proposed class representative has suffered some damage to personal property as a result of inundation associated with Katrina. At this point in the litigation, the proposed class representatives have not responded to Defendant's written discovery or been deposed.

*RFA 9:*

Qualified in that WGII denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions because the determination whether any proposed class member "sustained damages as a result of . . . the landfall of Hurricane Katrina" is ambiguous, may not be objectively ascertainable, and must be determined based on individual proofs, but WGII has admitted the number of people who reside within the geographic boundaries of plaintiffs' proposed class and sub-classes would satisfy the Federal Rule of Civil Procedure 23 numerosity requirements.

*RFA 10:*

Qualified in that WGII denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions because the determination whether any proposed class member "sustained damages as a result of . . . the landfall of Hurricane Katrina" is ambiguous, may not be objectively ascertainable, and must be determined based on individual proofs,

23

but WGII has admitted the number of people who reside within the geographic boundaries of plaintiffs' proposed class and sub-classes would satisfy the Federal Rule of Civil Procedure 23 numerosity requirements.

*RFA 11:*

Qualified in that WGII denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions because the determination whether any proposed class member "sustained damages as a result of . . . the landfall of Hurricane Katrina" is ambiguous, may not be objectively ascertainable, and must be determined based on individual proofs, but WGII has admitted the number of people who reside within the geographic boundaries of plaintiffs' proposed class and sub-classes would satisfy the Federal Rule of Civil Procedure 23 numerosity requirements.

*RFA 12:*

WGII states that individuals may employ and direct counsel to act on their behalf using modern methods of communications; hence, geographical dispersal of the members of the proposed class does not support class certification.

*RFA 13:*

WGII states that individuals may employ and direct counsel to act on their behalf using modern methods of communications; hence, geographical dispersal of the members of the proposed class does not support class certification.

24

**RFA 14:**

WGII states that individuals may employ and direct counsel to act on their behalf using modern methods of communications; hence, geographical dispersal of the members of the proposed class does not support class certification.

**RFA 15:**

WGII states that adjudicating individual actions for Katrina-related property losses based on the individualized evidence of each proposed class member's unique facts and circumstances would not create any undesirable risk of inconsistent adjudications that would support class certification. Different outcomes based on different facts are acceptable and expected in our judicial system.

**RFA 16:**

WGII states that adjudicating individual actions for Katrina-related property losses based on the individualized evidence of each proposed class member's unique facts and circumstances would not create any undesirable risk of inconsistent adjudications that would support class certification. Different outcomes based on different facts are acceptable and expected in our judicial system.

**RFA 17:**

WGII is without knowledge to respond whether the "USA" had "custody" under Louisiana Civil Code art. 2317 over MRGO, or whether MRGO was a "thing" under that act. Presumably, this request is directed only to the United States Army Corps of Engineers.

870963v.1

*RFA 18:*

WGII does not know whether the USA has paid, settled, or otherwise resolved in whole or in part, any claim set forth in any Form 95 submitted by any proposed class member. Forms 95 are submitted to the United States Army Corps of Engineers, and WGII has not had access to these documents. Presumably, this request is directed only to the United States Army Corps of Engineers.

*RFA 19:*

WGII does not know whether any other defendant has paid, settled, or otherwise resolved in whole or in part, any Katrina-related claim asserted by any proposed class member.

*RFA 20:*

WGII states that the proposed class definition is circular and not legally sufficient. Furthermore, it is each class member's burden of proof to establish damages, which class members have not yet done.

*RFA 21:*

WGII states that whether a proposed sub-class member has experienced inundation, and the source of the water, are individual issues that require individual determinations. There are various sources of water, including at least rain, rain induced flooding, Lake Pontchartrain, MRGO, and the Gulf Intracoastal Waterway, some or all of which may have affected a particular proposed sub-class member based upon his or her particular circumstances. See also, response to Interrogatory No. 14.

26

*RFA 22:*

WGII states that whether a proposed sub-class member has experienced
inundation, and the source of the water, are individual issues that require individual
determinations. There are various sources of water, including at least rain, rain induced
flooding, Lake Pontchartrain, MRGO, and the Gulf Intracoastal Waterway, some or all of
which may have affected a particular proposed sub-class member based upon his or her
particular circumstances. See also, response to Interrogatory No. 14.

*RFA 23:*

WGII states that whether a proposed sub-class member has experienced
inundation, incurred a loss or damage, and the source of the water, are individual issues
that require individual determinations. There are various sources of water, including at
least rain, rain induced flooding, Lake Pontchartrain, MRGO, and the Gulf Intracoastal
Waterway, some or all of which may have affected a particular proposed sub-class
member based upon his or her particular circumstances. See also, response to
Interrogatory No. 14.

*RFA 24:*

WGII states that whether a proposed sub-class member has experienced
inundation, and the source of the water, are individual issues that require individual
determinations. There are various sources of water, including at least rain, rain-induced
flooding, MRGO, the Mississippi River, Lake Borgne, the Gulf Intracoastal Waterway,
and the Inner Harbor Navigational Canal, some or all of which may have affected a

27

particular proposed sub-class member based upon his or her particular circumstances. See also, response to Interrogatory No. 14.

*RFA 25:*

WGII states that whether a proposed sub-class member has experienced inundation, incurred a loss or damage, and the source of the water, are individual issues that require individual determinations. There are various sources of water, including at least rain, rain-induced flooding, MRGO, the Mississippi River, Lake Borgne, the Gulf Intracoastal Waterway, and the Inner Harbor Navigational Canal, some or all of which may have affected a particular proposed sub-class member based upon his or her particular circumstances. See also, response to Interrogatory No. 14.

*RFA 26:*

WGII states that whether a proposed sub-class member has experienced inundation, and the source of the water, are individual issues that require individual determinations, given the many possible sources of water entering the geographical area of the proposed sub-class. See also, response to Interrogatory No. 14.

*RFA 27:*

WGII states that whether a proposed sub-class member has experienced inundation, and the source of the water, are individual issues that require individual determinations, given the many possible sources of water entering the geographical area of the proposed sub-class. See also, response to Interrogatory No. 14.

*RFA 28:*

WGII states that whether a proposed sub-class member has experienced inundation, and the source of the water, are individual issues that require individual

28

870963v.1

determinations, given the many possible sources of water entering the geographical area

of the proposed sub-class. See also, response to Interrogatory No. 14.

**RFA 29:**

WGII states that a cause of action for negligence requires proof of duty, breach,

causation, and resulting injury in fact, and that proof of these elements will vary

depending upon the location and circumstances of the particular injury alleged, including

the source(s) the water allegedly affecting any proposed class member. For examples of

individual issues, see responses to Interrogatories 3-9. Moreover, the allocation of fault,

if any, among defendants and others, necessary to adjudicate comparative fault, will

depend upon individualized circumstances unique to the facts surrounding a particular

class member's alleged injuries.

**RFA 30:**

WGII states that proof of the elements of a cause of action under article 667 will

vary depending upon the location and circumstances of the particular injury alleged,

including the source(s) of the water allegedly affecting any proposed class member. For

examples of individual issues, see responses to Interrogatories 3-9.

**RFA 31:**

WGII states that a cause of action for negligence requires proof of duty, breach,

causation, and resulting injury in fact, and that proof of these elements will vary

depending upon the location and circumstances of the particular injury alleged, including

the source(s) of the water allegedly affecting any class member. For examples of

individual issues, see responses to Interrogatories 3-9. Moreover, the allocation of fault,

29

if any, among defendants and others, necessary to adjudicate comparative fault, will depend upon individualized circumstances unique to the facts surrounding a particular class member's alleged injuries. Moreover, WGII denies that it committed any negligent acts or omissions.

*RFA 32:*

WGII states that a cause of action for negligence requires proof of duty, breach, causation, and resulting injury in fact, and that proof of these elements will vary depending upon the location and circumstances of the particular injury alleged, including the source(s) of the water allegedly affecting any class member. For examples of individual issues, see responses to Interrogatories 3-9. Moreover, the allocation of fault, if any, among defendants and others, necessary to adjudicate comparative fault, will depend upon individualized circumstances unique to the facts surrounding a particular class member's alleged injuries.

*RFA 33:*

WGII states that a cause of action for negligence requires proof of duty, breach, causation, and resulting injury in fact, and that proof of these elements will vary depending upon the location and circumstances of the particular injury alleged, including the source(s) of the water allegedly affecting any class member. For examples of individual issues, see responses to Interrogatories 3-9. Moreover, the allocation of fault, if any, among defendants and others, necessary to adjudicate comparative fault, will depend upon individualized circumstances unique to the facts surrounding a particular class member's alleged injuries.

30

**RFA 34:**

WGII states that the large size, diversity, and inherent conflicts within the proposed class would make any counsel purporting to represent the proposed class inadequate.  See also WGII's answer to Interrogatory No. 4.

**RFA 35:**

"Breakdown in social structure" and "loss of cultural heritage in New Orleans" are broad and ambiguous phrases that mean different things to different people, and their existence, impact, extent, and causes would depend on individual facts and circumstances that cannot be considered in the aggregate for the proposed class.

**RFA 36:**

"Breakdown in social structure" and "loss of cultural heritage in New Orleans" are broad and ambiguous phrases that mean different things to different people, and their existence, impact, extent, and causes would depend on individual facts and circumstances that cannot be considered in the aggregate for the proposed class. Whether any class member could establish any legally recoverable damages based on these items, and the amount of any such alleged damages, would also depend on individualized proofs.  These questions cannot be decided across-the-board for "[e]ach member" of plaintiffs' proposed class.

**RFA 37:**

"Alteration of the physical, economic, political, social, and psychological character of the New Orleans area" is a broad and ambiguous phrase that means different things to different people, and its existence, impact, extent, and causes would depend on

31

individual facts and circumstances that cannot be considered in the aggregate for the proposed class.

*RFA 38:*

"Alteration of the physical, economic, political, social, and psychological character of the New Orleans area" is a broad and ambiguous phrase that means different things to different people, and its existence, impact, extent, and causes would depend on individual facts and circumstances that cannot be considered in the aggregate for the proposed class.   Whether any class member could establish any legally recoverable damages based on these items, and the amount of any such alleged damages, would also depend on individualized proof.  These questions cannot be decided across-the-board for "[e]ach member" of plaintiffs' proposed class.

*RFA 39:*

WGII states that the causes of alleged injuries and damages are individual issues for each proposed sub-class member's claim; hence there are no classwide losses. Deciding the named plaintiffs' particular claims and the causes of their particular alleged losses, would not decide the claims of any other proposed sub-class member nor would it decide the causes of any other sub-class member's particular alleged losses.  Causation, injury, comparative fault, and damages must be determined based upon each individual's unique facts and circumstances.  See also, responses to Interrogatories 3-9.

*RFA 40:*

WGII states that the causes of alleged injuries and damages are individual issues for each proposed sub-class member's claim; hence there are no classwide losses.

870963v.1

Deciding the named plaintiffs' particular claims and the causes of their particular alleged losses, would not decide the claims of any other proposed sub-class member nor would it decide the causes of any other sub-class member's particular alleged losses. Causation, injury, comparative fault, and damages must be determined based upon each individual's unique facts and circumstances. See also, responses to Interrogatories 3-9.

*RFA No 41:*

WGII states that the causes of alleged individual property losses for each proposed sub-class member's claim are individual issues; hence individual property losses are not susceptible to proof by way of a class trial. Deciding the named plaintiffs' particular claims and the causes of their particular alleged losses, would not decide the claims of any other proposed sub-class member nor would it decide the causes of any other sub-class member's particular alleged losses. Causation, injury, comparative fault, and damages must be determined based upon each individual's unique facts and circumstances. See also, responses to Interrogatories 3-9.

*RFA 42:*

WGII states that the causes of alleged individual property losses for each proposed sub-class member's claim are individual issues; hence individual property losses are not susceptible to proof by way of a class trial. Deciding the named plaintiffs' particular claims and the causes of their particular alleged losses, would not decide the claims of any other proposed sub-class member nor would it decide the causes of any other sub-class member's particular alleged losses. Causation, injury, comparative fault, and

33

damages must be determined based upon each individual's unique facts and circumstances.  See also, responses to Interrogatories 3-9.

*RFA 43:*

WGII states that expert testimony — if it meets the standards required by the Federal Rules of Evidence and *Daubert* — may assist a jury in analyzing and, if possible, determining, on an individual basis, the sources of water affecting any specific individual property, at a particular time.  No analysis or determination, however, can be made on a classwide or sub-classwide basis as proposed in the MRGO Master Complaint. Moreover, determination of the sources of water affecting any specific individual property at a particular time, cannot be made by expert witnesses; such determinations of fact are committed to the jury, based upon all of the relevant, admissible evidence pertaining to an individual's claim.  See also, responses to Interrogatories 3-9.

*RFA 44:*

WGII states that expert testimony — if it meets the standards required by the Federal Rules of Evidence and *Daubert* — may assist a jury in analyzing and, if possible, determining, on an individual basis, the sources of water affecting any specific individual property, at a particular time.  No analysis or determination, however, can be made on a classwide or sub-classwide basis as proposed in the MRGO Master Complaint. Moreover, determination of the sources of water affecting any specific individual property at a particular time, cannot be made by expert witnesses; such determinations of fact are committed to the jury, based upon all of the relevant, admissible evidence pertaining to an individual's claim.  See also, responses to Interrogatories 3-9.

34

*RFA 45:*

WGII has admitted the only effort it knows that the United States Government has made to analyze some of the sources of water entering the geographical area included in the proposed Greater New Orleans Class.

**INTERROGATORY NO. 2:**

If you contend that the Fed. R. Civ. P. 23(a) numerosity requirement is not satisfied as to the Greater New Orleans Class and/or each of its proposed sub-classes, please (i) set forth every fact you believe supports your contention, and (ii) identify every witness you believe possesses knowledge of such facts, including which such facts each witness possesses. If you agree that the numerosity requirement is satisfied, please say so.

**ANSWER TO INTERROGATORY NO. 2:**

While WGII denies the legal sufficiency of plaintiffs' proposed class and sub-class definitions, WGII admits that the number of people who resided within the geographic boundaries of plaintiffs' proposed class and sub-classes would meet the numerosity requirement of Federal Rule of Civil Procedure 23. WGII states further that it will not contest the numerosity requirement of Federal Rule of Civil Procedure 23 in its class opposition.

**INTERROGATORY NO. 3:**

If you contend that any one or all of the respective claims set forth by the class representatives fails to satisfy the Fed. R. Civ. P. 23(a) typicality requirement with respect to the Greater New Orleans Class, please (i) set forth every fact you believe supports your contention, and (ii) identify every witness you believe possesses

35

knowledge of such facts, including which such facts each witness possesses. If you agree
that the class representatives satisfy the typicality requirement, please say so.

## ANSWER TO INTERROGATORY NO. 3:

WGII objects to this interrogatory as premature because discovery in the
case has just begun. Plaintiffs have not yet been deposed or responded to defendants'
class discovery, and discovery has not yet been taken of WGII's co-defendants or third
parties. WGII should not be required to determine and state its class-opposition
arguments now, when discovery is still ongoing.

WGII also objects because this interrogatory improperly accelerates the
September 28, 2007 deadline (established by the Court in Case Management Order #4)
for WGII to state its basis for opposing class certification. Moreover, the interrogatory
improperly seeks to shift the burden of proof by having WGII declare its position on the
typicality requirement of Federal Rule of Civil Procedure 23 before WGII has seen
plaintiffs' brief and evidence in support of their motion for class certification.

Furthermore, WGII objects to the interrogatory because it improperly
invades the attorney-client privilege and violates the opinion-work-product doctrine;
while directed to WGII, the interrogatory can only be answered by WGII's litigation
counsel.

Subject to the foregoing objections, WGII will contend that the named
plaintiffs do not satisfy the typicality requirement of Federal Rule of Civil Procedure 23
because their proofs will not be representative or typical of any other proposed class
members. Furthermore, with respect to subparts (i) and (ii) of this interrogatory, WGII

36

states that each of the named plaintiffs possesses facts demonstrating that their proofs are applicable only to themselves and not to any other proposed class member.

Each proposed class member is uniquely situated, and the proof necessary to establish each proposed class member's injury/injuries will vary depending on the location of the property, the nature of the alleged injuries, and the circumstances causing the alleged injury/injuries. For example, the proofs that will be needed to determine the claims of named plaintiff Henry Davis, living near Lake Pontchartrain in New Orleans East, will not be typical of those of a proposed class member living near the Industrial Canal, or of another proposed class member who lives near the Gulf Intracoastal Waterway. Similarly, named plaintiffs Kenneth Paul Armstrong, Sr. and Jeannine B. Armstrong, who lived near the levee along the Florida Walk Canal, would not have proofs typical of a proposed class member living on the far east side of St. Bernard Parish near the Mississippi River-Gulf Outlet. As Judge Feldman recently held:

> Each property owner . . . who had real and personal property damaged in Hurricane Katrina is uniquely situated. No two property owners will have experienced the same losses. The nature and extent of the property damage the owners sustain from the common cause, Hurricane Katrina, will vary greatly in its particulars, depending on the location and condition of the property before the storm struck and depending also on what combination of forces caused the damage. Thus, at least with respect to the issue of damages, each individual claim will require particular evidence to establish the cause of and the extent of the loss.

*Rohr v. Metro. Ins. & Cas. Co.*, No. 06-10511, 2007 WL 163037, at *3 (E.D. La. Jan. 17, 2007).

Furthermore, a proposed class member who has only suffered damage to real property would not be typical of another proposed class member who has suffered

37

only personal injury. Similarly, some proposed class members will be subject to unique defenses, while others will not. Finally, the claim of a named plaintiff who satisfied the administrative-filing requirements of the Federal Tort Claims Act would not be typical of other proposed class members who did not. The "premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). There is no typicality when a "named plaintiff who proved his own claim *would not necessarily have proved anybody else's claim.*" *Id.* (emphasis added).

**INTERROGATORY NO. 4:**

    If you contend that the class representatives, or any of them, will not fairly and adequately protect the interests of the New Orleans Class, please (i) set forth every fact you believe supports your contention, and (ii) identify every witness you believe possesses knowledge of such facts, including which such facts each witness possesses.

**ANSWER TO INTERROGATORY NO. 4:**

    WGII objects to this interrogatory as premature because discovery in the case has just begun. Plaintiffs have not yet been deposed or responded to defendants' class discovery, and discovery has not yet been taken of WGII's co-defendants or third parties. WGII should not be required to determine and state its class-opposition arguments now, when discovery is still ongoing.

    WGII also objects because this interrogatory improperly accelerates the September 28, 2007 deadline (established by the Court in Case Management Order #4) for WGII to state its basis for opposing class certification. Moreover, the interrogatory

38

870963v.1

improperly seeks to shift the burden of proof by having WGII declare its position on the adequacy requirement of Federal Rule of Civil Procedure 23 before WGII has seen plaintiffs' brief and evidence in support of their motion for class certification.

Furthermore, WGII objects to the interrogatory because it improperly invades the attorney-client privilege and violates the opinion-work-product doctrine; while directed to WGII, the interrogatory can only be answered by WGII's litigation counsel.

Subject to the foregoing objections, WGII will contend that the named plaintiffs do not satisfy the adequacy requirement of Federal Rule of Civil Procedure 23 because of the enormous conflicts within the very large and diverse class proposed by plaintiffs. With respect to subparts (i) and (ii) of this interrogatory, each of the named plaintiffs, and each proposed class member, possesses facts demonstrating these conflicts within the class.

For example, some of the proposed class members will satisfy the administrative-filing requirements to pursue a claim under the Federal Tort Claims Act, while other proposed class members will not. Another conflict will exist between proposed class members who suffered only real property damage compared to those who suffered only personal injuries. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (quotation marks omitted). A further conflict will occur between proposed class members who filed or have an insurance claim for property damage resulting from the wind, as opposed to proposed class members who

39

allege damage from the flood waters. *See Weiss v. Allstate Ins. Co.*, No. 06-3774 Section
"R" (5), 2007 U.S. Dist. LEXIS 28022, at *6 (E.D. La. Apr. 9, 2007). See also,
responses to Interrogatories 3, 5-9.

## INTERROGATORY NO. 5:

Based upon the claims forms and/or all other information received to date,
including the Complaint, please identify any defense you might set forth in response to
any class member's claim against you that you would not set forth in any class
representative's claim against you. If the answer is "none known at this time" please say
so.

## ANSWER TO INTERROGATORY NO. 5:

WGII objects to this interrogatory as premature because discovery in the
case has just begun. Plaintiffs have not yet been deposed or responded to defendants'
class discovery, and discovery has not yet been taken of WGII's co-defendants or third
parties. WGII should not be required to determine and state its class-opposition
arguments now, when discovery is still ongoing.

WGII also objects to this interrogatory because it incorrectly assumes that
WGII has received "claim forms." No "claim forms" have been received to date, and
therefore WGII cannot answer based upon them.

WGII also objects because this interrogatory improperly accelerates the
September 28, 2007 deadline (established by the Court in Case Management Order #4)
for WGII to state its basis for opposing class certification.

40

Furthermore, WGII objects to the interrogatory because it improperly invades the attorney-client privilege and violates the opinion-work-product doctrine; while directed to WGII, the interrogatory can only be answered by WGII's litigation counsel.

Subject to the foregoing objections, WGII answers that it has already enumerated its affirmative defenses in the Answer it filed on March 30, 2007. Which affirmative defense will be applicable to particular individuals depends on the individual facts unique to each proposed class member.

**INTERROGATORY NO. 6:**

Do you agree that there are some questions of law or fact common to the members Greater New Orleans Class, including the class representatives?

**ANSWER TO INTERROGATORY NO. 6:**

No. There are no meaningful questions of law or fact "common" to the proposed class, as that term is used in Federal Rule of Civil Procedure 23, that could serve as the basis for representative litigation. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (explaining that "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation."). See also, responses to Interrogatories 3, 7-9.

41

## INTERROGATORY NO. 7:

Based upon the claims forms and/or all other information received to date, including the Complaint, please (i) identify all questions of law or fact affecting individual members of the Greater New Orleans Class that you contend would not also affect the class representatives, and (ii) state whether and in what way you contend that such individual questions predominate over questions that are common to the class members and the class representatives.

## ANSWER TO INTERROGATORY NO. 7:

WGII objects to this interrogatory as premature because discovery in the case has just begun. Plaintiffs have not yet been deposed or responded to defendants' class discovery, and discovery has not yet been taken of WGII's co-defendants or third parties. Nor has WGII received any "claim forms." WGII should not be required to determine and state its class-opposition arguments now, when discovery is still ongoing.

WGII also objects because this interrogatory improperly accelerates the September 28, 2007 deadline (established by the Court in Case Management Order #4) for WGII to state its basis for opposing class certification. Moreover, the interrogatory improperly seeks to shift the burden of proof by having WGII declare its position on the predominance requirement of Federal Rule of Civil Procedure 23 before WGII has seen plaintiffs' brief and evidence in support of their motion for class certification.

WGII further objects to the interrogatory because Federal Rule of Civil Procedure 23 places the burden of proof on the named plaintiffs to establish that common questions predominate over individual questions; it is not the defendants' burden to show

42

the contrary, and the interrogatory thus subverts the burden of proof requirements of
Federal Rule of Civil Procedure 23.

Furthermore, WGII objects to the interrogatory because it improperly
invades the attorney-client privilege and violates the opinion-work-product doctrine;
while directed to WGII, the interrogatory can only be answered by WGII's litigation
counsel.

Subject to the foregoing objections, WGII will contend that the named
plaintiffs do not satisfy the predominance requirement because their proposed class
action is permeated with liability issues, affirmative defense issues, and damage issues
that will require individualized proofs to adjudicate at trial.  For example, with respect to
damage to real property, the origin of the water touching a proposed class member's
house will vary dramatically depending on where that proposed class member lives.
Thus, the proposed class representatives' proofs with respect to their property would not
establish the origin of the water touching each proposed class member's property.
Similarly, for each of the sources of water entering the geographical area of the proposed
Greater New Orleans Class (see response to Interrogatory 14) there may be one or more
potentially liable parties, thus compounding the complexity and individual nature of the
causation and comparative-fault determination for each injured plaintiff. *Comer v.
Nationwide Mut. Ins. Co.*, No. 1:05 CV 436 LTD RHW, 2006 WL 1066645, at *2 (S.D.
Miss. Feb. 23, 2006) ("The nature and extent of the property damage the owners sustain
from the common cause, Hurricane Katrina, will vary greatly in its particulars, depending
on the location and condition of the property before the storm struck and depending also

43

on what combination of forces caused the damage. Thus, at least with respect to the issue of damages, each individual claim will require particular evidence to establish the cause of and the extent of the loss.")

For proposed class members alleging personal injury, the circumstances, cause, and nature of injury will also be highly individualized. Furthermore, each proposed class member claiming lost-profit damages makes an inherently individual claim unique to that person. These individual variations also demonstrate that the proposed class and sub-classes are not sufficiently cohesive to warrant adjudication by representation.

## INTERROGATORY NO. 8:

Do you agree that a class action trial is the superior method for the fair and efficient adjudication of the controversies raised in this action vis-à-vis the members of the Greater New Orleans Class? If not, please (i) state in detail why you disagree, and (ii) describe any and every procedure you contend would be superior, including in your description the reasons it would be superior.

## ANSWER TO INTERROGATORY NO. 8:

WGII objects to this interrogatory as premature because discovery in the case has just begun. Plaintiffs have not yet been deposed or responded to defendants' class discovery, and discovery has not yet been taken of WGII's co-defendants or third parties. WGII should not be required to determine and state its class-opposition arguments now, when discovery is still ongoing.

44

WGII also objects because this interrogatory improperly accelerates the September 28, 2007 deadline (established by the Court in Case Management Order #4) for WGII to state its basis for opposing class certification. Moreover, the interrogatory improperly seeks to shift the burden of proof by having WGII declare its position on the superiority requirement of Federal Rule of Civil Procedure 23 before WGII has seen plaintiffs' brief and evidence in support of their motion for class certification.

WGII further objects to the interrogatory because Federal Rule of Civil Procedure 23 places the burden of proof on the named plaintiffs to establish that a class-action trial would be superior to individual trials; it is not the defendants' burden to show the contrary, and the interrogatory thus subverts the burden of proof requirements of Federal Rule of Civil Procedure 23.

Furthermore, WGII objects to the interrogatory because it improperly invades the attorney-client privilege and violates the opinion-work-product doctrine; while directed to WGII, the interrogatory can only be answered by WGII's litigation counsel.

Subject to the forgoing objections, WGII will contend that this proposed class action does not satisfy the superiority requirement of Federal Rule of Civil Procedure 23. For example, the proofs required to prove causation, resulting injury, and allocation of fault will depend on individualized facts and evidence. For example, a house built on a concrete foundation or a reinforced foundation, that was two stories tall, and had its roof blown off by wind presents a completely different causation inquiry from a house that was swept away by flood waters. Whether or not a proposed class member

45

has fulfilled the administrative filing requirement necessary to maintain a claim under the Federal Tort Claims Act will require individualized proofs. The various theories of personal injury damages (e.g. emotional distress, mental anguish, wrongful death) or property damages will be highly individualized. Each of these determinations would require a mini-trial to address these individual proofs. Individual trials are superior to a class trial because a representative class trial could not be conducted consistent with due process and the Seventh Amendment.

**INTERROGATORY NO. 9:**

Please identify and describe in detail every difficulty you contend is likely to be encountered in the management of the class action proposed by the Complaint.

**ANSWER TO INTERROGATORY NO. 9:**

WGII objects to this interrogatory as premature because discovery in the case has just begun. Plaintiffs have not yet been deposed or responded to defendants' class discovery, and discovery has not yet been taken of WGII's co-defendants or third parties. WGII should not be required to determine and state its class-opposition arguments now, when discovery is still ongoing.

WGII also objects because this interrogatory improperly accelerates the September 28, 2007 deadline (established by the Court in Case Management Order #4) for WGII to state its basis for opposing class certification. Moreover, the interrogatory improperly seeks to shift the burden of proof by having WGII declare its position on the manageability requirement of Federal Rule of Civil Procedure 23 before WGII has seen plaintiffs' brief and evidence in support of their motion for class certification.

46

WGII further objects to the interrogatory because Federal Rule of Civil Procedure 23 places the burden of proof on the named plaintiffs to establish that a class-action trial would be manageable; it is not the defendants' burden to show the contrary, and the interrogatory thus subverts the burden of proof requirements of Federal Rule of Civil Procedure 23.

Furthermore, WGII objects to the interrogatory because it improperly invades the attorney-client privilege and violates the opinion-work-product doctrine; while directed to WGII, the interrogatory can only be answered by WGII's litigation counsel.

Subject to the foregoing objections, WGII will contend that this proposed class action does not satisfy the manageability requirement of Federal Rule of Civil Procedure 23. For example, plaintiffs' cause of action for negligence will require individualized proofs of causation, resulting injury in fact, and allocation of fault, depending on the circumstances of each proposed class member's injury. There are also individual issues whether administrative filing requirements have been satisfied. Further, proposed class members will have to first establish that they "sustained damages as a result of inundation/flooding" in order to determine who is and who is not in the class definition. Proposed class members claiming injury to property will have to prove ownership. The award of damages will depend on individualized proofs of the value and the condition of the property. Those seeking emotional distress and lost profits would have to make individual predicate showings to recover these damages. All of these issues, and more, would devolve into mini-trials making the case unmanageable as a class action.

870963v.1

**INTERROGATORY NO. 10:**

Please state the total number of Form 95s submitted which forms set forth claims by Louisiana citizens against the United States Army Corps of Engineers for losses arising in connection with Hurricane Katrina.

**ANSWER TO INTERROGATORY NO. 10:**

Subject to its General Objections, WGII is without knowledge to respond to this Interrogatory because Forms 95 are submitted to the United States Army Corps of Engineers, and WGII has not had access to these documents.  Presumably, this Interrogatory is directed only to the United States Army Corps of Engineers.

**INTERROGATORY NO. 11:**

Please describe in detail the ways in which the information contained in the Form 95s described in the preceding interrogatory has been compiled and collated by the USA, e.g., by ZIP code, by damage type, by potential source of inundation, etc., including each format in which such compiled and/or collated information exists, e.g., database, spreadsheet, physical repository, etc.

**ANSWER TO INTERROGATORY NO. 11:**

Subject to its General Objections, WGII further objects to this Interrogatory because Forms 95 are submitted to the United States Army Corps of Engineers, and WGII has not had access to these documents.  Presumably, this Interrogatory is directed only to the United States Army Corps of Engineers.

870963v.1

**INTERROGATORY NO. 12:**

Please set forth your best estimate of the number of Form 95s described in Interrogatory No. 10 that have been received by members of the Greater New Orleans Class.

**ANSWER TO INTERROGATORY NO. 12:**

Subject to its General Objections, WGII further objects to this Interrogatory because Forms 95 are submitted to the United States Army Corps of Engineers, and WGII has not had access to these documents. Presumably, this Interrogatory is directed only to the United States Army Corps of Engineers.

**INTERROGATORY NO. 13:**

Please describe (i) all efforts, if any, to date undertaken by you to estimate the number of persons who sustained damages or incurred losses in the geographical area covered by the Greater New Orleans Class, and (ii) describe all results or conclusions derived as a result of such efforts, specifically including in your response any estimate of the number of affected persons and/or structures, and any estimate of monetary damages or losses.

**ANSWER TO INTERROGATORY NO. 13:**

WGII objects to the interrogatory because the burden of proof is on the named plaintiffs to establish any estimates of the number of persons who sustained damages or incurred losses; it is not the defendants' burden to collect such information, and the interrogatory thus subverts the normal burden of proof.

870963v.1

Subject to the foregoing objection, WGII has not made any efforts in this regard.

**INTERROGATORY NO. 14:**

Please describe in detail each source of inundation and the manner in which you contend the inundation occurred with respect to (i) the geographical area encompassed by the New Orleans East Sub-Class and (ii) the geographical area encompassed by the Lower Ninth Ward & St. Bernard Sub-Class.

**ANSWER TO INTERROGATORY NO. 14:**

Subject to its General Objections, WGII further objects to the interrogatory as premature because discovery in the case has just begun. Nonetheless, two of WGII's likely expert witnesses have prepared a very preliminary initial list of the sources of water entering the geographical area of plaintiffs' proposed class. Since the following list is based on preliminary information, WGII may alter this discovery response later (for example, adding or deleting sources of water) based on future information. WGII's preliminary list is as follows:

50

**Sources of Water that Entered New Orleans East**

| No | Source | Manner |
|---|---|---|
| 1. | Rain | Rain |
| 2. | Rain/Flood Water/Storm Surge | Drainage/Sewer/Pump Stations being overwhelmed |
| 3. | New Orleans East Back Levee, (GIWW east of MRGO) | Levee Overtopping/Breaching/ Failure |
| 4. | Citrus Back Levee (GIWW/MRGO) | Levee Overtopping |
| 5. | Citrus Back Levee (Entergy) | Levee Overtopping |
| 6. | IHNC floodwalls/levee | Levee Overtopping |
| 7. | IHNC gate structures | Levee Overtopping |
| 8. | Citrus Lakefront Levee | Levee Overtopping |
| 9. | New Orleans Airport Floodwall | Levee Overtopping/Breach |
| 10. | New Orleans East Levee | Levee Overtopping |
| 11. | Interior Local Levee | Levee Overtopping |
| 12. | Rain/Flood Water/Storm Surge | Pump Station Backflow |
| 13. | Michoud Canal I-walls | Floodwall Overtopping |
| 14. | Citrus Back Levee East of Elaine Street Pumping Station | Breaches (3) |
| 15. | New Orleans East Back Levee, Michoud Levee to CSX Railroad | Breaches |
| 16. | Pump Station 15 sheet pile wall and levee | Breach |
| 17. | Air Products Site I-wall, sheet pile wall, and levee | Breach |
| 18. | Citrus Back Levee Floodwall | Breach |

870963v.1

| No | Source | Manner |
|---|---|---|
| 19. | Floodgate at CSX Tracks gate and levee (Along New Orleans East Levee) | Breach |
| 20. | IHNC Levee, 5 transition failures (Floodwall to levee transition) | Breach |
| 21. | IHNC East Railroad | Breach |

## Sources of Water that Entered St. Bernard and Lower Ninth Ward

| No | Source | Manner |
|---|---|---|
| 22. | Rain | Rain |
| 23. | Rain/Flood Water/Storm Surge | Drainage/Sewer/Pump Stations |
| 24. | MRGO east embankment levees | Levee Overtopping |
| 25. | MRGO Bayou Dupre Control Structure | Levee Overtopping |
| 26. | MRGO Bayou Bienvenue Control Structure | Levee Overtopping |
| 27. | MRGO to Caernarvon Levee (South facing levee, also described as Caernarvon to Verret Levee) | Levee Overtopping |
| 28. | CIWW/MRGO east of Paris Road | Levee Overtopping |
| 29. | GIWW/MRGO west of Paris Road | Levee Overtopping |
| 30. | IHNC | Levee Overtopping |
| 31. | MRGO to Caernanvon Levee (South facing levee) | Levee Overtopping |
| 32. | Mississippi River | Levee Overtopping |
| 33. | St. Bernard Back Levee along Forty Arpent Canal | Levee Overtopping |
| 34. | St. Bernard Back Levee along Florida Walk Canal | Levee Overtopping |

870963v.1

| No | Source | Manner |
|----|--------|--------|
| 35. | Rain/Flood Water/Storm Surge | Pump Station Backflow |
| 36. | MRGO between Bayou Bienvenue and Bayou Dupre Control Structures | Breach |
| 37. | MRGO/GIWW Paris Road floodgate | Breach |
| 38. | MRGO Bayou Dupre Control Structure | Breach |
| 39. | MRGO Bayou Bienvenue Control | Breach |
| 40. | MRGO to Caernarvon Levee (South facing levee, also described as Caernarvon to Verret Levee) | Breach |
| 41. | IHNC East Bank North (N. Claiborne Avenue to Florida Avenue) | Breach |
| 42. | IHNC East Bank South (Lock to Claiborne Avenue) | Breach |
| 43. | IHNC/GIWW | Breach |

## INTERROGATORY NO. 15:

Please identify by name, employer, position, and current professional address each person who assisted in the formulation of responses to any of your responses to the MRGO Class Plaintiffs' First Set of Requests for Admission, Interrogatories, and Requests for Production, including in your response (i) the request(s) that each such person assisted in answering, and (ii) a general description of the assistance provided.

## ANSWER TO INTERROGATORY NO. 15:

Other than WGII's litigation counsel, two people assisted in preparing WGII's response to Interrogatory 14. The other responses to MRGO Class Plaintiffs'

870963v.1

First Set of Requests for Admission, Interrogatories, and Requests for Production were prepared by WGII's litigation counsel for this matter. WGII objects to providing any other information regarding the description of work done by its litigation counsel, which is protected work product or subject to the attorney-client privilege.

Subject to the foregoing objection, WGII identifies Professor Robert A. Dalrymple and Lee Wooten, PE assisted in preparing WGII's response to Interrogatory 14. Professor Dalrymple is chairman of the Engineering Department at Johns Hopkins University, and Lee Wooten is an Engineer for GEI Consultants. The address of each is listed below:

Prof. Robert A. Dalrymple
Civil Engineering Dep't
210 Latrobe Hall
Johns Hopkins Univ.
Baltimore, MD 21218

Lee Wooten, PE
GEI Consultants, Inc.
400 Unicorn Park Drive
Woburn, MA 01801

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

Please produce a copy of every Form 95 that sets forth a claim by any Louisiana citizens against the United States Army Corps of Engineers for losses arising in connection with Hurricane Katrina.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Subject to its General Objections, WGII has no documents that are responsive to this Request. Form 95's are submitted to the United States Army Corps of Engineers, and WGII has not had access to these documents. Presumably, the Request is directed only to the United States Army Corps of Engineers.

### REQUEST FOR PRODUCTION NO. 2:

Please produce a copy of all electronic files, databases, spreadsheets or other documents that sort, collate, organize, categorize, or deal in some similar fashion with the Form 95s, or any of them, identified in the preceding request and/or any information contained in such Form 95s.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Subject to its General Objections, WGII has no electronic files, databases, spreadsheets or other documents that are responsive to this Request. Form 95's are submitted to the United States Army Corps of Engineers, and WGII has not had access to these documents. Presumably, the Request is directed only to the United States Army Corps of Engineers.

55

## REQUEST FOR PRODUCTION NO. 3:

Please produce a copy of each and every document that contains or reflects any estimate or precise calculation of the total dollar value of all claims asserted against the USA by way of the Form 95s identified in Request No. 1.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Subject to its General Objections, WGII has no documents that are responsive to this Request. Form 95's are submitted to the United States Army Corps of Engineers, and WGII has not had access to these documents. Presumably, the Request is directed only to the United States Army Corps of Engineers.

## REQUEST FOR PRODUCTION NO. 4:

Please produce a copy of each and every document that you believe supports your answers to Interrogatories No. 2-4 above, or any of them.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

WGII has no documents that are responsive to this Request.

## REQUEST FOR PRODUCTION NO. 5:

Please produce a copy of every document consulted, obtained, or generated in connection with any activities described in response to Interrogatory No. 13 above.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

See Response to Interrogatory No. 13.

Subject to these and the General Objections, WGII responds to this Request as follows: WGII has no documents that are responsive to this Request.

870963v.1

**REQUEST FOR PRODUCTION NO. 6:**

Please produce a copy of every document consulted, obtained, or generated in connection with any activities described in response to Interrogatory No. 14 above.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

See Response to Interrogatory No. 14.

WGII objects to this Request because it seeks a copy of every document consulted, obtained, or generated in connection with any activities described in response to Interrogatory No. 14, not limited to class certification as mandated by CMO No. 4. WGII further objects to this Request insofar as plaintiffs seek drafts of defendants' expert reports, even though the Court has stated that "[d]rafts of expert reports shall not be discoverable or admissible for any purpose." Case Management Order #4 at 37.

Subject to these and the General Objections, WGII states that IPET, Independent Levee Investigation Team, and Team Louisiana reports were consulted to prepare the response to Interrogatory 14.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce a copy of each and every document that would establish the number of persons residing on August 28, 2005, in the geographical area encompassed by the Greater New Orleans Class definition, or any part of it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

WGII has no documents that are responsive to this Request.

870963v.1

## REQUEST FOR PRODUCTION NO. 8:

Please produce a copy of each and every document that would establish the number of persons residing in the geographical area encompassed by the Greater New Orleans Class definition, or any part of it, since August 29, 2005.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

WGII has no documents that are responsive to this Request.

## REQUEST FOR PRODUCTION NO. 9:

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the source of any inundation within the geographical area encompassed by the Greater New Orleans Class definition, or any part of it.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

See Response to Interrogatory No. 14.

WGII objects to this Request to the extent it seeks production of attorney work product.

Further, WGII objects to this Request to the extent it seeks documents such as the IPET Report, Team Louisiana Report, etc. that are available through public sources and already in the possession of plaintiffs, as disclosed in Plaintiffs' Initial Disclosures submitted herein on April 16, 2007. Beyond these publicly available documents already in plaintiffs' possession, WGII has no documents that are responsive to this Request but will produce its Expert Reports as required by CMO No. 4.

58

**REQUEST FOR PRODUCTION NO. 10:**

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the cause of any inundation within the geographical area encompassed by the Greater New Orleans Class definition, or any part of it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

See Responses to Interrogatories No. 13 and 14.

WGII objects to this Request to the extent it seeks production of attorney work product.

Further, WGII objects to this Request to the extent it seeks documents such as the IPET Report, Team Louisiana Report, etc. that are available through public sources and already in the possession of plaintiffs, as disclosed in Plaintiffs' Initial Disclosures submitted herein on April 16, 2007. Beyond these publicly available documents already in plaintiffs' possession, WGII has no documents that are responsive to this Request but will produce its Expert Reports as required by CMO No. 4.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the process of any inundation within the geographical area encompassed by the Greater New Orleans Class definition, or any part of it.

870963v.1

## RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

WGII objects to this Request to the extent it seeks production of attorney work product.

Further, WGII objects to this Request to the extent it seeks documents such as the IPET Report, Team Louisiana Report, etc. that are available through public sources and already in the possession of plaintiffs, as disclosed in Plaintiffs' Initial Disclosures submitted herein on April 16, 2007. Beyond these publicly available documents already in plaintiffs' possession, WGII has no documents that are responsive to this Request but will produce its Expert Reports as required by CMO No. 4.

## REQUEST FOR PRODUCTION NO. 12:

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the timing of any inundation within the geographical area encompassed by the Greater New Orleans Class definition, or any part of it.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

WGII objects to this Request to the extent it seeks production of attorney work product.

Further, WGII objects to this Request to the extent it seeks documents such as the IPET Report, Team Louisiana Report, etc. that are available through public sources and already in the possession of plaintiffs, as disclosed in Plaintiffs' Initial Disclosures submitted herein on April 16, 2007. Beyond these publicly available documents already

870963v.1

in plaintiffs' possession, WGII has no documents that are responsive to this Request but will produce its Expert Reports as required by CMO No. 4.

## REQUEST FOR PRODUCTION NO. 13:

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the depth of any inundation within the geographical area encompassed by the Greater New Orleans Class definition, or any part of it.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

WGII objects to this Request to the extent it seeks production of attorney work product.

Further, WGII objects to this Request to the extent it seeks documents such as the IPET Report, Team Louisiana Report, etc. that are available through public sources and already in the possession of plaintiffs, as disclosed in Plaintiffs' Initial Disclosures submitted herein on April 16, 2007. Beyond these publicly available documents already in plaintiffs' possession, WGII has no documents that are responsive to this Request but will produce its Expert Reports as required by CMO No. 4.

## REQUEST FOR PRODUCTION NO. 14:

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the duration of any inundation within the geographical area encompassed by the Greater New Orleans Class definition, or any part of it.

61

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

WGII objects to this Request to the extent it seeks production of attorney work product.

Further, WGII objects to this Request to the extent it seeks documents such as the IPET Report, Team Louisiana Report, etc. that are available through public sources and already in the possession of plaintiffs, as disclosed in Plaintiffs' Initial Disclosures submitted herein on April 16, 2007. Beyond these publicly available documents already in plaintiffs' possession, WGII has no documents that are responsive to this Request but will produce its Expert Reports as required by CMO No. 4.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the receding of any inundation within the geographical area encompassed by the Greater New Orleans Class definition, or any part of it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

WGII objects to this Request to the extent it seeks production of attorney work product.

Further, WGII objects to this Request to the extent it seeks documents such as the IPET Report, Team Louisiana Report, etc. that are available through public sources and already in the possession of plaintiffs, as disclosed in Plaintiffs' Initial Disclosures submitted herein on April 16, 2007. Beyond these publicly available documents already

870963v.1

in plaintiffs' possession, WGII has no documents that are responsive to this Request but will produce its Expert Reports as required by CMO No. 4.

## REQUEST FOR PRODUCTION NO. 16:

Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the timing, duration, and depth of precipitation during the period August 27, 2005, and September 1, 2005, within the geographical area encompassed by the Greater New Orleans Class definition, or any part of it.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

WGII objects to this Request to the extent it seeks production of attorney work product.

Further, WGII objects to this Request to the extent it seeks documents such as the IPET Report, Team Louisiana Report, etc. that are available through public sources and already in the possession of plaintiffs, as disclosed in Plaintiffs' Initial Disclosures submitted herein on April 16, 2007. Beyond these publicly available documents already in plaintiffs' possession, WGII has no documents that are responsive to this Request but will produce its Expert Reports as required by CMO No. 4

63

## VERIFICATION

STATE OF _Idaho_

COUNTY OF _Ada_

My name is _Richard D. Parry._ I am _Sr. V.P. and General Counsel_ and an agent designated

by Washington Group International, Inc. ("WGII"), to respond to MRGO plaintiffs' first

interrogatories. I am duly qualified and authorized in all respects to make this affidavit; I

have read the answers to said interrogatories; all of the matters stated within WGII's

responses are not within my personal knowledge and to my knowledge there is no single

officer of WGII who has personal knowledge of all such matters; the information

contained therein was acquired from various representatives of WGII; and, on that basis,

I am authorized to verify these interrogatory responses on behalf of WGII.

_____

SUBSCRIBED AND SWORN TO BEFORE ME on this _30_ day of April, 2007

to certify which witness my hand and office seal.

_____
Notary Public in and for the State of
_Idaho_

My Commission Expires: _6/30/2010_

64

Dated: April 30, 2007

Respectfully submitted,

/s/ William D. Treeby
William D. Treeby, Bar No. 12901
John M. Landis, Bar No. 7958
Heather S. Lonian, Bar No. 29956
STONE PIGMAN WALTHER WITTMANN
LLC
546 Carondelet Street
New Orleans, LA 70130
Phone: 504-581-3200
Fax: 504-581-3361

Of Counsel:

George T. Manning
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309-3053
Phone: 404-521-3939
Fax: 404-581-8330

Adrian Wager-Zito
Julia E. McEvoy
Christopher R. Farrell
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: 202-879-3939
Fax: 202-626-1700

*Attorneys for Defendant*
*Washington Group International, Inc.*

870963v.1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to Joseph M. Bruno, Esq., in his capacity as Plaintiffs' Liaison Counsel, via e-mail on this 30th of April, 2007.

/s/ William D. Treeby
William D. Treeby

870963v.1