UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | NO. 05-4182 "K" (2) |
| PERTAINS TO: ALL INSURANCE CASES | JUDGE DUVAL MAG. WILKINSON |

**INSURER DEFENDANTS' JOINT MEMORANDUM IN RESPONSE TO PLAINTIFFS' MOTION TO COMPEL REGARDING CERTAIN GROUP OBJECTIONS TO PLAINTIFFS' PURPORTEDLY "COMMON" DISCOVERY**

**MAY IT PLEASE THE COURT:**

On behalf of the Insurance Defendants, Defendants Liaison Counsel hereby submits the instant Joint Memorandum in Response to Plaintiffs' Motion to Compel Regarding Certain Group Objections to Plaintiffs' Purportedly "Common" Discovery on behalf of all insurer defendants in the insurance umbrella of the consolidated litigation.

The Insurance Defendants oppose Plaintiffs' motion for an order overruling two categories of objections Defendants have raised to Plaintiffs' supposedly "common" interrogatories, document requests, and Rule 30(b)(6) deposition notice. Specifically, Plaintiffs' motion concerns: (1) objections regarding the scope of "common" discovery; and (2) objections regarding the effect of the stay orders.

Critically, Plaintiffs' motion does *not* purport to address the other objections Defendants have asserted to Plaintiffs' supposedly "common" discovery. By agreement of the parties,

1

confirmed in the Court's June 28, 2007 order (Docket No. 6094), Defendants' other objections will be dealt with in a subsequent "track" of motions to compel.

In the instant motion, then, the Court is not being asked for a final or all-encompassing ruling as to the sufficiency of Defendants' discovery responses, or an ultimate decision regarding what information or documents Defendants must produce. Instead, the Court is being asked solely to rule on the validity of *two discrete categories* of objections. The parties have agreed to treat these objections separately because they go to the permissible scope of Plaintiffs' discovery on a global, conceptual level. For that reason, it is particularly appropriate for the Court to resolve these disputes in the abstract, as this will help define what constitutes the overall "universe" of potentially discoverable information. Once the parties receive this general guidance from the Court, they will be in a much better position to address Defendants' remaining objections.

Finally, it should be noted that, with few exceptions, Defendants do *not* contend the two categories of objections at issue relieve them of *any* obligation to respond to Plaintiffs' discovery requests. Defendants instead view these objections as limiting the necessary *scope* of their responses, not as precluding a response altogether. Thus, while Plaintiffs' motion repeatedly implies that Defendants have stonewalled their discovery through objections, that is simply not true. In actuality, Defendants have served Plaintiffs with individual responses to their interrogatories and document requests – including individual document productions which, collectively, include tens, if not hundreds, of thousands of pages of documents.

## I.     Introduction and Summary of Argument

The first category of disputed objections concerns the scope of Plaintiffs' purported "common issue" discovery. More specifically, Defendants objected to Plaintiffs' discovery requests to the extent they are not directed to "issues . . . common to all insureds of a particular

insurance company," as required by the Court's Discovery Protocol.  (*See* Exhibit "A," p. 1.) Notably, this limiting language was negotiated and jointly drafted by liaison counsel for both Plaintiffs and Defendants, and was adopted by this Court on April 18, 2007.  (*See id.*, pp. 1, 4.) Along similar lines, Defendants also objected to the extent Plaintiffs' requests sought information regarding claims by individual policyholders other than the policyholders who are actual parties to the consolidated cases presently before the Court.[1]

The parties' dispute over this category of objections is conceptual in nature.  Defendants maintain that, with respect to any one given Defendant, an issue does not qualify as a "common issue" subject to discovery unless that issue is *relevant* to the claims that are *actually pled* against that particular Defendant in the consolidated lawsuits to which it is a party.  Stated otherwise, the standard for what is discoverable as a "common issue" must be viewed in conjunction with the more fundamental question of whether the issue is "relevant to the claim or defense" of a party, as required by Federal Rule of Civil Procedure 26(b)(1).  If this threshold relevance requirement is not satisfied, then the information sought is not discoverable, regardless of whether Plaintiffs claim to have an abstract, "common interest" in obtaining it.

Plaintiffs, by contrast, contend their "common issue" discovery requires each Defendant to produce any information that *might potentially* be relevant to any present *or future* litigant – even if that information has no bearing on the claims *actually* asserted against that Defendant in the pending consolidated cases.  Essentially, Plaintiffs want to pursue far-reaching discovery into irrelevant subjects, based on the speculative possibility that, at some future date, a new lawsuit might arise that would make previously irrelevant topics relevant.  The Court should reject this approach, as it effectively would nullify the fundamental, statutory limitations on the scope of

---

[1] In Plaintiffs' motion, they label the two specific objections at issue as "Objection A/A" and "Objection M/P."  (*See* Plfs. Memo, p. 3.)

3

permissible discovery.

The second category of disputed objections concerns the scope of the stay pending the resolution of Defendants' appeal from Judge Duval's ruling on the "water damage" exclusion. In particular, Defendants objected to the extent Plaintiffs' discovery requests violate Paragraph III(c) of the Discovery Protocol, which expressly prohibits "discovery related to the water damage exclusion." (*See* Exhibit "A," p. 3.) As before, this language was jointly negotiated by liaison counsel for both Plaintiffs and Defendants, and approved by this Court. Defendants also objected to the extent Plaintiffs' requests run afoul of the Court's order entered March 16, 2007, which stayed discovery with respect to "all common liability issues – that is causation of the levee breaches – and class certification issues." (*See* Exhibit "B," at p. 3.)[2]

Plaintiffs acknowledge these provisions limit the scope of their "common issue" discovery. However, they contend the stay only applies to issues concerning the *interpretation* of the water damage exclusion, as opposed to how Defendants *applied* that exclusion in adjusting individual insurance claims. This proffered distinction is cut from whole cloth. Nothing in the Discovery Protocol or the March 16, 2007 order purports to limit the scope of the stay to the "interpretation" of the water damage exclusion. Indeed, any such limitation would be impractical and unworkable. If, as Plaintiffs contend, they are entitled to discover any information regarding how Defendants applied the exclusion in claims involving water damage, or the procedures or "methodologies" Defendants used to adjust such claims, the stay will become meaningless.

Furthermore, Plaintiffs' approach would defeat the basic purpose of the stay: namely, to postpone any discovery relating to the water damage exclusion until the Fifth Circuit renders its opinion, so that the parties and the Court can intelligently determine which issues, if any, require fact discovery. Until the parties learn how the Fifth Circuit rules, it would be counterproductive

---

[2] Plaintiffs' motion describes these two objections as "Objection I/L" and "Objection J/M." (*See* Plfs. Memo, p. 15.)

4

and inefficient to allow Plaintiffs to conduct expansive, "common issue" discovery into subjects that ultimately may prove unnecessary and irrelevant. The Court therefore should sustain Defendants' objections based on the stay.

## II.  Objections Based on Scope of "Common Issue" Discovery

In accordance with Section VII of Case Management Order No. 4, the Court's Discovery Protocol authorizes Plaintiffs to conduct "discovery relating to individual issues that [are] common to all insureds of a particular insurance company[.]"  (*See* Exhibit "A," p. 1.)  While Plaintiffs agree this provision of the Discovery Protocol limits their discovery to "common issues," the parties dispute what this limitation means in practice.

Defendants contend that, with respect to any individual Defendant, a "common issue" must be relevant to the actual cases against that Defendant that are currently pending before the Court in this consolidated litigation. If those cases do not implicate a given issue, that issue is not of "common" relevance as regards the Defendant in question, and thus is not a permissible subject of discovery.

Plaintiffs, by contrast, do not view the scope of their "common" discovery as being limited by what is actually pled in the consolidated lawsuits currently on file. They instead contend that a "common issue" is one that is "*potentially* relevant to all current *or future litigants* against a given company." (Plfs. Memo., at p. 4 [emphasis added].)  According to Plaintiffs, they therefore should be allowed to create a "central repository" of information that might be of "common benefit" to any insureds who might "bring consolidated claims . . . . *in the future*." (*Id.*)  Stated otherwise, with respect to any given Defendant, Plaintiffs contend they can probe into any issues that theoretically might, at some later date, be raised in a new lawsuit filed against that Defendant –

5

even if those issues are immaterial to the consolidated cases that *actually* have been filed against that Defendant to date.

Plaintiffs' interpretation is improper, and cannot be adopted, because it ignores the fundamental limitations on pretrial discovery.  As the Supreme Court has explained, discovery is not unlimited, but has "ultimate and necessary boundaries[.]" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507, 91 L. Ed. 451, 67 S. Ct. 385 (1947)).  Here, Plaintiffs' expansive interpretation would nullify the most basic, threshold requirement of pretrial discovery:  relevance.  Under the Federal Rules of Civil Procedure, information is not discoverable in the first instance unless it is "relevant to the claim or defense of any party" to the action.  FRCP 26(b)(1).  This standard requires that "the parties and the court focus on the *actual* claims and defenses involved in the action," such that the determination of relevance "depends on the circumstances of the *pending* action."  *Morgan v. Offshore Drilling Co.*, 2005 U.S. Dist. LEXIS 36873, *4 (E.D. La. 2004) (quoting Rule 26(b)(1), Advisory Comm. Notes, 2000 Amendments) (emphasis added).

Accordingly, under Rule 26(b)(1), this Court "has the authority to confine discovery to the claims and defenses asserted in the pleadings," and Plaintiffs "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Id.*  In the words of one respected treatise:

> A court resolving a discovery dispute on the ground of relevance must . . . focus on the specific claim or defense alleged in the pleadings.  This does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact.  It means that the fact must be germane to a specific claim or defense asserted in the pleadings for information concerning it to be a proper subject of discovery.
>
> \*  \*  \*

> The more highly focused definition of relevance reminds the courts that they have the authority to control discovery by confining it to the claims and defenses asserted in the pleadings and that they should exercise that authority more vigorously than they have in the past.

6 MOORE'S FED. PRACTICE, §§ 26.41[2][a], 26.41[6][c]; *see also Estate of J. Edgar Monroe v. Bottle Rock Power Corp.*, 2005 U.S. Dist. LEXIS 760, *13 (E.D. La. 2005) ("[T]hough discovery rules are to be broadly applied, courts should not allow discovery to be a boundless fishing expedition.")

Moreover, even if Plaintiffs could show "good cause" to broaden the scope of discovery beyond that which is "relevant to the claim or defense of any party," their discovery still would have to be "relevant to the subject matter *of the action*," as well as "*reasonably* calculated to lead to the discovery of *admissible* evidence." FRCP 26(b)(1) (emphasis added). Thus, as Judge Berrigan of this Court recently explained:

> [W]hile it is true that relevance in discovery is broader than that required for admissibility at trial, the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue. Further, the information must be reasonably calculated to lead to the discovery of admissible evidence. Courts have also recognized that *the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery.*

*Hunter v. Copeland*, 2004 U.S. Dist. LEXIS 12992, *6 (E.D. La. 2004) (citations and internal quotation marks omitted) (emphasis added); *accord Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Resource, Inc.*, 2004 U.S. Dist. LEXIS 6015, *18-19 (E.D. La. 2004).

In light of these well-recognized limitations, the Court should reject Plaintiffs' overbroad view of what they can discover as a "common issue." As regards any individual Defendant, the only issues that are relevant within the meaning of Rule 26(b)(1) are the issues raised in the

consolidated cases that *actually* have been filed against that Defendant. In those cases, the ultimate question before the Court is whether the Defendant properly adjusted the insurance claims of the particular Plaintiffs who filed suit against it.[3]

In that vein, Defendants do not dispute that Plaintiffs can conduct discovery into the general claims-handling guidelines and procedures that would universally apply to Plaintiffs' claims at issue in this litigation. Beyond that, however, how a particular Defendant may have handled other claims, brought by other insureds, under other policies or types of policies, concerning other losses to other properties, is simply not a relevant or proper line of inquiry. As aptly stated by one District Court:

> [T]his interrogatory [seeking information regarding other claims] is not relevant to the issues in this case nor is it likely to lead to admissible evidence. The issues in this case are limited to Defendant's conduct regarding Plaintiff's claim for insurance benefits and to the adequacy of Defendant's reasons for that conduct. Defendant's conduct regarding the insurance claims of others is of no consequence to this case.

*Moses v. State Farm Mut. Auto Ins. Co.*, 104 F.R.D. 55, 57 (N.D. Ga. 1984). Additional authorities supporting this sound premise are legion.[4]

---

[3] Under Louisiana law, insurance "bad faith" actions are creatures of statute that can be premised only on certain, specified actions by the insurer, such as arbitrarily and unreasonably failing to pay benefits due under the policy. *See* La. Rev. Stat. 22:658; La. Rev. Stat. 22:1220(B) (same); *see also Theriot v. Midland Risk Insurance Co.*, 694 So.2d 184, 188 (La. 1997) (penalties may be recovered under La. Rev. Stat. 22:1220 only when an insurer commits one of the five specific acts enumerated in the statute).

[4] *See*, *e.g.*, *American Nat'l Bank & Trust Co. v. Aetna Ins. Co.*, 447 F.2d 680, 686 (7th Cir. 1971) (information relating to other claims for damages to buildings within 10-mile radius of plaintiff's building on date plaintiff's building was damaged was not relevant because it would not show the cause of damage to plaintiff's building); *North River Ins. Co. v. Greater New York Mut. Ins. Co.*, 872 F. Supp. 1411, 1412 (E.D. Pa. 1995) ("These prior bad faith cases . . . will necessarily involve totally different facts and circumstances from those present here. Such information . . . does not even 'appear reasonably calculated to lead to the discovery of admissible evidence.' [Citation.] Any discovery of this material would properly be characterized as a fishing expedition[.]"); *Lawyers Title Ins. Co. v. United States Fid. & Guar. Co.*, 122 F.R.D. 567, 570 (N.D. Cal. 1988) ("[I]nformation about how other people, insured under different policies, have felt about how Aetna has responded to their claims is too marginal in utility to justify the burden on defendant that complying with the requests as originally framed would entail."); *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 125 (M.D.N.C. 1989) ("Conclusory claims of bad faith may not be the bases for conducting marginally relevant discovery which is by its nature burdensome. Such discovery requests amount to nothing more than an out-of-season fishing expedition"); *Ramirez v. American Family Mutual Ins. Co.,* 652 N.E. 2d 511, 516-17

Under these standards, Plaintiffs cannot use their "common issue" discovery to bootstrap otherwise irrelevant issues into the realm of permissible discovery. Plaintiffs' assumption that certain issues may, in the future, prove to be of "common interest" to hypothetical lawsuits that have not been filed – and may never be – is pure speculation. At bottom, Plaintiffs' justification for the discovery they seek can be colloquially expressed as: "You never know, maybe it will become relevant later, so just let us discover it now." That is the quintessential definition of an impermissible fishing expedition.

To illustrate these principles, assume that there are five consolidated cases currently pending against a hypothetical carrier, XYZ Insurance Company, and that all five cases involve homeowners claims. In that situation, information about the specific procedures XYZ used to handle *other* claims brought under *commercial* property policies would be neither relevant nor "common." Plaintiffs could not obtain discovery about XYZ's commercial claims-handling procedures simply by speculating that a commercial policyholder later might file suit against XYZ. Indeed, unless and until that occurred, it would be impossible to predict which issues, if any, the new lawsuit would share in "common" with the cases already on file.

The example Plaintiffs offer in their brief only further illustrates the impropriety of their approach. In an effort to justify their overbroad discovery, Plaintiffs refer to Interrogatory No. 6, which asked Defendants to "[i]dentify every third-party adjusting agency, engineering firm, or other similar entity utilized by you in Louisiana in response to Hurricane Katrina[.]" Plaintiffs then ask the Court to assume there are three consolidated cases pending against a hypothetical carrier, XYZ Insurance Company. (*See* Plfs. Memo., p. 4.) According to Plaintiffs, XYZ's response would have to identify *every single* third-party adjuster, engineer, or other entity who

---

(Ind. Ct. App. 1995) ("Information regarding other claims made by other insureds under other contracts is not relevant to the coverage afforded under the [policyholder's] insurance policy.").

9

worked on any Katrina claim for XYZ, in any parish in Louisiana, at any point in time – even if none of those entities were involved with the particular insurance claims at issue in the three consolidated cases pending against XYZ.  (*See id.*, p. 4.)

This expansive, catch-all discovery cannot be considered relevant, let alone "common."[5] Plaintiffs fail to explain how the name of a third-party adjuster who did not work on a particular insurance claim could be relevant to the way *that claim* was investigated or adjusted.  Nor do Plaintiffs explain why other insureds would have a "common interest" in knowing the name of an adjuster who did not touch their files.  While *Plaintiffs' attorneys* might have a "common interest" in probing into every aspect of Defendants' claims practices and procedures – *e.g.*, for the purpose of pursuing class certification, or perhaps discovering new potential clients or claims – their mere desire to discover this type of information does not make it discoverable for the purposes of the cases at bar.

The Court also should disregard Plaintiffs' suggestion that their approach will facilitate judicial economy and avoid "redundant, piecemeal" discovery.  (Plfs. Memo., p. 5.)  Nothing in the Federal Rules of Civil Procedure permits Plaintiffs to pursue overbroad, irrelevant discovery into what they unilaterally deem the "'big picture' issues" simply because Plaintiffs would find this technique easier than having to focus their discovery on appropriate issues.

In their motion, Plaintiffs offer a cursory summary of each individual interrogatory and document request in dispute, and then argue, in a conclusory fashion, why they believe those requests are directed to "common issues."  (*See* Plfs. Memo., pp. 6-14.)  In many cases, however, Plaintiffs have self-servingly described their discovery requests to make them sound more

---

[5]  As noted above, Defendants have registered other objections to this request that are not at issue in this motion. For example, assembling an accurate list of every single third-party adjuster, engineer, *etc.* would be an incredibly burdensome task for many carriers.  Indeed, for some carriers, composing such a list may be impossible without individually reviewing every single claim file.  If necessary, these other objections will be addressed in the second "track" of motions to compel.

reasonable and less expansive. Along with this brief, Defendants therefore have included a chart that shows, in one column, what each discovery request actually seeks and, in the second column, how Plaintiffs describe it. (*See* Exhibit "C.") As the Court can see, the disputed requests are not as innocuous as Plaintiffs would have the Court believe.

In light of this chart – as well as the above discussion, which applies on a general level to all of Plaintiffs' discovery requests – Defendants see no need to summarize each and every individual discovery request and then state, for each one, that its scope should be confined to relevant matters. To the extent that any request calls for information that is not relevant to the actual claims pled against a particular Defendant in the consolidated cases to which it is currently a party, that Defendant should not be required to respond, and its objections should be sustained.

That said, there are certain discovery requests which, on their face, call for information that, by its very nature, could not possibly be of "common" relevance to every individual lawsuit filed against a given Defendant. With respect to these requests, enumerated below, the Court therefore should order that no response is necessary. In particular:

Interrogatory 12 and RFP 17 and 18: These requests are directed to the "methodology" that each carrier's adjusters used to "differentiate" covered wind or water damage from non-covered water damage. To the extent Plaintiffs are seeking Defendants' global, general guiding principles for the adjustment of claims, Defendants already have responded. However, if Plaintiffs are seeking information regarding the claim-adjustment "methodology" employed in any given individual insurance claim, that information would be claim-specific, and would not be of "common" relevance.

Interrogatory 18 and RFP 39: These discovery requests seek information regarding any business-related criminal investigations over the past five years in which Defendants have been

11

involved.  Plaintiffs offer no meaningful explanation as to why these discovery requests – which are facially overbroad as to time, and have no limitations in terms of subject matter, geography, or jurisdiction – would be of "common relevance" to the actual claims being asserted against Defendants in the consolidated lawsuits.

RFP 30-35:  This series of requests seeks every document that Defendants contend accurately (or, alternatively, inaccurately) discusses, analyzes, or depicts the factual circumstances of the timing, arrival, and extent of the wind and flood damage associated with Hurricane Katrina in the "Greater New Orleans area."  On their face, these requests go far beyond what would be relevant in the pending consolidated cases – namely, documents discussing how *the particular losses at issue* in those cases occurred.  Accordingly, these requests are not proper subjects of "common issue" discovery.

### III.   Objections Based on Scope of Stay Orders

The second category of disputed objections concerns the scope of the stay pending the resolution of the appeal from the Court's ruling on the "water damage" exclusion.  More specifically, the parties' dispute centers on the meaning of Paragraph III(c) of the Court's Discovery Protocol, which states that the common discovery "shall not include discovery regarding issues that fall within the scope of the stay orders, such as discovery related to the water damage exclusion."  (Exhibit "A," p. 3.)

Defendants maintain this language means what it says:  any discovery "relating to" the water damage exclusion – *e.g.*, discovery regarding the manner in which Defendants adjusted claims where flooding was involved, or any other claims where the water damage exclusion was at issue – is stayed until the Fifth Circuit decides the pending appeal.  Otherwise, depending on how

the Fifth Circuit rules, the parties and the Court will be forced to expend considerable time and resources dealing with discovery issues that ultimately may prove immaterial and unnecessary.

At least conceptually, Plaintiffs agree that the stay orders operate to limit the permissible scope of their "common" discovery. More specifically, Plaintiffs contend the stay prohibits discovery into four categories of information: (1) the actual cases on appeal before the Fifth Circuit; (2) the causation of the levee breaches; (3) class certification issues; and (4) information relating to the water damage exclusion. (*See* Plfs. Memo., p. 16.)

Generally speaking, Defendants view this four-item list as a relatively accurate description of the broad subject areas that are off-limits to discovery. Defendants take issue, however, with several of Plaintiffs' conclusions regarding what specific types of information fall within these prohibited categories.

In particular, Defendants disagree with Plaintiffs' overly restrictive reading as to what constitutes discovery "relating to the water damage exclusion." According to Plaintiffs, this category only encompasses issues relating to the *interpretation* or regulatory *approval* of the water damage exclusion, as opposed to its *application* in individual claims. As a result, Plaintiffs contend they can conduct discovery into the "methodology" the carriers used in adjusting claims involving flood damage, and how the water damage exclusion affected that process. (*See* Plfs. Memo., pp. 16, 18.) Defendants disagree for numerous reasons.

First and foremost, Plaintiffs' proffered distinction finds no support in the actual text of the Discovery Protocol. Paragraph III(c) of the Protocol unambiguously states that the common discovery "shall not include . . . discovery *related to* the water damage exclusion." (Exhibit "A," p. 3 [emphasis added].) As previously noted, this language was jointly drafted and submitted by liaison counsel for both Plaintiffs and Defendants. (*See id.*, pp. 1, 4.) There is nothing to indicate

13

that Plaintiffs (or the Court) intended to limit the scope of the stay to issues solely concerning the interpretation of the exclusion.

Second, Plaintiffs' proposed distinction is inherently unworkable. According to Plaintiffs, they are entitled to any information regarding how Defendants applied the water damage exclusion to individual insurance claims – *e.g.*, the "methodology" by which the exclusion was applied. (*See* Plfs. Memo., p. 18, Interrogatory 12.) By necessity, however, this inquiry also will implicate how Defendants *interpreted* the exclusion. The reason Defendants applied the exclusion to exclude coverage for certain losses (*e.g.*, flooding caused by broken levees) is because they interpreted the exclusion as barring coverage for such losses. The issues of interpretation and application are thus inseparably intertwined, and both should be stayed.

Third, Plaintiffs' restrictive reading would severely limit the scope of the stay. From a factual discovery standpoint, the much larger issue is how the carriers applied the water damage exclusion, and how the exclusion informed their claims-handling procedures and practices. If Plaintiffs can conduct discovery into these subjects, the "stay" on discovery relating to the water damage exclusion would be greatly compromised.

Fourth, until the Fifth Circuit issues its opinion, it makes no sense to entertain Plaintiffs' expansive, burdensome discovery into issues surrounding the water damage exclusion. At the current time, neither the parties nor the Court can know how the Fifth Circuit might rule, or what precise impact that ruling will have on the issues at bar. The Fifth Circuit's review is *de novo*, and the ruling it adopts certainly could have a previously unanticipated effect on the scope of relevant discovery. In the interest of judicial efficiency and economy, therefore, Plaintiffs should wait until the Fifth Circuit decides the appeal before proceeding with discovery concerning the water damage exclusion.

Fifth, Plaintiffs intentionally oversimplify matters by claiming their discovery will be relevant no matter how the Fifth Circuit rules. In the event the Fifth Circuit agrees with Plaintiffs, and holds that flood damage is covered if it results from "man-made" causes, the question will become: What caused the levee breaches here? Were they the product of "man-made" causes, or were they the result of Hurricane Katrina, a natural event? This question of causation will be inexorably intertwined with the question of coverage, and before the first question is answered, the Court cannot determine what is (or is not) relevant to the coverage issues at bar. As Plaintiffs concede, *the stay precludes any discovery into the cause of the levee breaches*. (*See* Plfs. Memo., p. 16.) Plaintiffs are thus asking to proceed with discovery into matters that may or may not be relevant, depending on the resolution of an issue that Plaintiffs admit is subject to the stay. The absurdity of this position is self-evident.

In addition to the stay relating to the water damage exclusion, Plaintiffs' wide-ranging discovery requests also run afoul of the stay on class certification discovery. In many respects, Plaintiffs' requests appear far more similar to the type of discovery propounded in class certification proceedings than the basic type of fact discovery normally used in individual "bad faith" cases. While the idea of going forward with "common issue" discovery may, to a certain degree, be antithetical to a stay on class certification, the fact that there is a stay obviously means the concepts are not co-extensive. Further, as noted above, Plaintiffs' attorneys expressly and unabashedly admit that their ultimate goal in the "common issue" discovery phase is to develop a comprehensive repository of any and all information that might potentially be relevant to any current *or future* litigants. It thus appears that at least one of Plaintiffs' attorneys' objectives is to use the results of their "common issue" discovery as a fishing expedition to help them dredge up evidence of purported misconduct for use in future lawsuits. While Plaintiffs might or might not

15

expressly seek this discovery as part of a Rule 23 class certification proceeding, it certainly has a very distinct "class" flavor, and would seem to be precisely the type of expansive, time-consuming discovery the Court intended to stay pending resolution of the appeal.

Finally, it should be noted that a sizeable number of Plaintiffs' discovery requests are directed to issues concerning the adjustment of "total losses" under Louisiana's Valued Policy Law ("VPL"), La. R.S. § 22:695. (*See* Plfs. Memo., pp. 8, 19-21; Interrogatories 13-15; RFP 20, 21-23, 28, 29.) Whether the VPL applies to total losses brought about by the confluence of both wind and flood damage was considered by Judge Vance in *Chauvin v. State Farm Fire & Cas. Co.*, Case No. 05-6454, a consolidated action involving 37 individual VPL cases. On August 2, 2006, Judge Vance dismissed the VPL cases, ruling that the VPL does not apply to total losses that were only partially caused by covered wind damage. (*See* Order, Document 32 in Case No. 05-6454.) Judge Vance's order is currently on appeal before the Fifth Circuit, which has scheduled oral argument for July 9, 2007. All of the sound, prudential reasons for staying Plaintiffs' discovery concerning the water damage exclusion therefore apply with equal force to Plaintiffs' proposed discovery into VPL-related issues. Accordingly, Defendants respectfully request that these issues also be brought within the ambit of the stay.

In sum, both the letter and spirit of the Court's stay on discovery "relating to" the water damage exclusion require the prohibition of any discovery pertaining to the interpretation, effect, enforcement, or application of the exclusion. This reading of the stay would include any procedures, practices, or "methodologies" Defendants used to determine what types of damage were barred by the exclusion, as well as how Defendants handled claims involving flood damage (or other forms of excluded water damage) generally. Also, in light of the appeal from Judge Vance's VPL ruling, Defendants maintain the stay should be extended to Plaintiffs' discovery

concerning VPL claims.  To the extent Plaintiffs' discovery requests seek any such information, the Court should disallow the discovery and uphold Defendants' objections based on the stay.

As before, Plaintiffs' motion includes a lengthy, if largely conclusory, request-by-request analysis of why they believe certain discovery requests fall outside the stay.  (*See* Plfs. Memo., pp. 17-23.)  Defendants consider it unnecessary to respond in kind, because the parties' dispute is primarily conceptual in nature, and because Defendants' proposed reading of the stay would have a uniform, limiting effect on every discovery request at issue.[6]

Nevertheless, there are a number of requests which, on their face, necessarily call for information that flatly comes within the scope of the stay.  As to those requests, listed below, Defendants therefore ask that the Court order that no response is necessary.  Specifically:

Interrogatory 12 and RFP 17, 18, and 19:  For the reasons discussed above, the "methodologies" employed by Defendants' adjusters to determine what types of water damage were excluded from coverage, and what types of damages were covered, is an issue that directly and unavoidably implicates the water damage exclusion.  This entire line of inquiry is thus barred by the stay.

RFP 21:  How Defendants adjusted total loss claims involving both wind and water damage necessarily involves issues relating to the water damage exclusion.  This request also should be stayed because, as Plaintiffs concede, it is directed to VPL-related issues.

Interrogatories 14 and 15 and RFP 20:  Plaintiffs admit these requests seek information (*e.g.*, coverage forms, policy applications, *etc.*) that would be "relevant only in VPL claims." (Plfs. Memo., p. 8.)  They therefore should be stayed pending the Fifth Circuit's ruling in the *Chauvin v. State Farm* case.

---

[6] As before, Defendants respectfully refer the Court to the chart attached as Exhibit "C," which compares the actual text of Plaintiffs' requests to the self-serving summaries Plaintiffs have offered in an attempt to obscure the invasive, burdensome nature of their discovery.

17

RFP 30-35: As noted above, this series of requests seeks every document that Defendants contend accurately (or inaccurately) discusses, analyzes, or depicts the factual circumstances of the timing, arrival, and extent of the wind and flood damage associated with Hurricane Katrina. Notably, Plaintiffs concede that "these requests bear an attenuated relationship to the water damage exclusion issue." (Plfs. Memo, p. 21.) But Plaintiffs' qualified concession is only half-accurate: in reality, these requests have a *direct* and *inseparable* relationship to the water damage exclusion. They therefore are barred by the stay.

**IV.    Conclusion**

Plaintiffs openly concede that they want to use their "common issue" discovery requests to probe into subject matters that are not presently relevant to the claims actually pled in the consolidated actions before the Court. In addition, Plaintiffs ask the Court to limit the stay on issues relating to the water damage exclusion in an arbitrary fashion that would allow virtually all of the expansive discovery they seek. Because the relief Plaintiffs request would violate the limitations on discovery imposed by the Federal Rules of Civil Procedure, as well as the Court's Discovery Protocol and stay orders, the Court should deny Plaintiffs' motion and sustain Defendants' objections to their discovery requests.

Respectfully submitted,

/s/ Ralph S. Hubbard, III
Ralph S. Hubbard, III, T.A., La. Bar #7040
Defendants' Liaison Counsel
Seth A. Schmeeckle, La. Bar #27076
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Telefax: (504) 310-9195
E-Mail:       rhubbard@lawla.com
              sschmeeckle@lawla.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 6th day of July, 2007, a copy of the foregoing document has been served upon Joseph Bruno, Plaintiffs' Liaison Counsel, by electronic mail.

                                        /s/ Ralph S. Hubbard, III_____
                                        Ralph S. Hubbard, III