UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES          CIVIL ACTION
CONSOLIDATED LITIGATION
                                       NO. 05-4182 "K" (2)

PERTAINS TO: All Insurance Cases       JUDGE DUVAL
                                       MAG. WILKINSON

### JOINT LIAISON COUNSEL SUBMISSION
### RE: PURPORTED COMMON INSURANCE DISCOVERY PROTOCOL

In Section VII of the Case Management Order No. 4 ("CMO"), the Court observed that there may be discovery relating to individual issues that is common to all insureds of a particular insurance company ("Purported Common Insurance Discovery"). Pursuant to Section VII of the CMO, Plaintiffs' and Defendants' Liaison Counsel jointly submit this protocol concerning the Purported Common Insurance Discovery.

**I.   WRITTEN DISCOVERY**

   a.   Plaintiffs shall jointly propound a single set of Master Set of Interrogatories and a single Master Set of Requests for Production regarding the Purported Common Insurance Discovery no later than April 16, 2007. Plaintiffs' Liaison Counsel shall serve Defendants Liaison Counsel via e-mail. Service upon Defendants Liaison Counsel shall constitute service upon all insurers in the Insurance Umbrella.

   b.   All interrogatories and requests for production served in accordance with this protocol shall count toward the overall limits established in Section IV(B)(1)(b) of the CMO. Further, the number of Master Interrogatories regarding Purported Common Insurance Discovery undertaken pursuant to this protocol shall be limited to 25.

1



  c. The insurers' deadline for written response and objections to the Master Set of Requests for Production is May 16, 2007.

  d. The insurers' deadline for written responses to the Master Set of Interrogatories is May 23, 2007.

  e. The deadline for production of documents to which there are no objections to production is June 16, 2007.

  f. Any motion to compel related to the Purported Common Insurance Discovery shall be filed on or before May 31, 2007.

  g. The deadline to oppose any motion to compel related to the Purported Common Insurance Discovery shall be June 15, 2007.

  h. Any reply brief related to any opposition to a motion to compel concerning the Purported Common Insurance Discovery shall be filed by June 21, 2007.

  i. The hearing date for any motions to compel concerning Purported Common Insurance Discovery shall be June 27, 2007.

  j. Contention Interrogatories and Requests for Admission are not to be propounded until completion of deposition discovery.

  k. Each Defendant shall produce its responses to written discovery to a document repository.

  l. Each Defendant shall produce a privilege log in conformity with the Federal Rules of Civil Procedure in connection with the production of documents.

## II. DEPOSITIONS

  a. A Master 30(b)(6) Deposition Notice concerning only Purported Common Insurance Discovery shall be served on Defendants Liaison Counsel on or before May 1, 2007 via e-mail. Service upon Defendants Liaison Counsel shall constitute service upon all insurers in the Insurance Umbrella.

  b. Each Defendant's objections to Rule 30(b)(6) depositions, if any, shall be filed no later than May 31, 2007.

  c. Any motion to compel related to the Purported Common Insurance Discovery Master 30(b)(6) Deposition Notice shall be filed on or before June 7, 2007.

    d.    The deadline to oppose any motion to compel related to the Purported Common Insurance Discovery Master 30(b)(6) Deposition Notice shall be June 19, 2007.

    e.    Any reply brief related to any opposition to a motion to compel concerning the Purported Common Insurance Discovery Master 30(b)(6) deposition notice shall be filed by June 25, 2007.

    f.    The hearing date for any motions to compel concerning Purported Common Insurance Discovery Master 30(b)(6) depositions shall be June 27, 2007.

    g.    Plaintiffs and Defendants Liaison Counsel are to meet and confer after the hearing on any motions to compel to organize and schedule Purported Common Insurance Discovery Master 30(b)(6) Depositions of each insurer. On or before July 27, 2007, Plaintiffs and Defendants Liaison Counsel are to submit a protocol addressing the Purported Common Insurance Discovery Master 30(b)(6) Depositions of those insurers sought to be deposed by plaintiffs.

## III. GENERAL PROVISIONS

    a.    All discovery related to Purported Common Insurance Discovery shall be subject to a confidentiality/protective order to be issued by this Court.

    b.    Purported Common Insurance Discovery shall not be duplicated in any individual insurance case.

    c.    Nothing contained herein alters or amends the stay order entered by this Court on March 16, 2007, [Doc. No. 3426] in connection with the insurers' Motion to Enforce Stay Order Issued By Fifth Circuit on February 28, 2007 or the Stay Order issued by the Fifth Circuit on February 28, 2007. It is understood that the Purported Common Insurance Discovery shall not include discovery regarding issues that fall within the scope of the stay orders such as discovery related to the water damage exclusion.

    d.    Neither this protocol nor this Court's Case Management and Scheduling Order No. 4 entered in the *In re Katrina Canal Breaches Consolidated Litigation shall apply to Aaron, et al. v. AIG, et al.*, C.A. No. 06-4746, *Abadie, et al. v. Aegis Security Ins. Co., et al.*, No. 06-5164; *Kiefer v. Allstate Ins. Co.*, No. 06-5370 and *Austin v. Allstate Fire and Casualty Ins. Co.*, No. 06-5383, which were administratively closed per this Court's March 27, 2007 Order. Pursuant to this Order, moreover, no discovery shall be taken in Abadie, Aaron, Austin and Keifer until such time as the cases are re-opened and Plaintiffs and Defendants confer in good faith, nor shall parties to these four cases be subject to the disclosure requirements of the Federal Rules of Civil Procedure.

3

Respectfully submitted,

s/Joseph M. Bruno
**Joseph M. Bruno, T.A., La. Bar # 3604**
**Plaintiffs' Liaison Counsel**
Bruno & Bruno
855 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-1335
Facsimile: (504)581-1493
E-Mail:     jbruno@brunobrunolaw.com

**And**

s/Ralph S. Hubbard
**Ralph S. Hubbard, III, T.A., La. Bar #7040**
**Defendants' Liaison Counsel**
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:  (504) 568-1990
Facsimile:  (504) 310-9195
E-Mail:     rhubbard@lawla.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 9th day of April, 2007, a copy of the foregoing **JOINT LIAISON COUNSEL SUBMISSION RE: PURPORTED COMMON INSURANCE DISCOVERY PROTOCOL** was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to All Known Counsel of Record by operation of the Court's electronic filing system.

/s/ Joseph M. Bruno

/s/ Ralph S. Hubbard

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES         CIVIL ACTION
CONSOLIDATED LITIGATION
                                      NO. 05-4182 "K" (2)

                                      JUDGE DUVAL
PERTAINS TO:  ALL CASES               MAG. WILKINSON

## ORDER

In compliance with Case Management Order No. 4, Section VII, Liaison Counsel have jointly submitted a protocol concerning purported common insurance discovery as to those individual cases within the captioned umbrella that contain individual adjusting and other insurance claims in addition to the common liability issues. Having considered the joint submission and the record, **IT IS ORDERED** that the court hereby approves and adopts the jointly submitted discovery protocol, which is Record Doc. No. 3687, and makes it the ORDER OF THE COURT for future proceedings in these matters.

New Orleans, Louisiana, this ___18th___ day of April, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

**CLERK TO NOTIFY:**
HON. STANWOOD R. DUVAL, JR.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES　　　　　　　　　　CIVIL ACTION
CONSOLIDATED LITIGATION

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　NO. 05-4182

PERTAINS TO: Levee, MRGO, and Insurance　　　　　SECTION "K"(2)
*Publish to Web*

### ORDER AND REASONS

Before the Court is Insurer Defendants' Motion to Enforce Stay Order Issued by Fifth Circuit on February 28, 2007. The Court held oral argument this day and has reviewed the pleadings filed with the Fifth Circuit concerning the Stay and issued oral reasons at the conclusion of the hearing. Nonetheless, for the sake of clarity, this Order is being entered.

As was made clear at the hearing, the Court notes that this consolidated litigation is a creation of convenience–that is, the en banc court for United States District Court for the Eastern District of Louisiana decided to attempt to manage this litigation– all of which arises out of damages allegedly caused by the various breaches to the levees caused by Hurricane Katrina–to meet two specific goals, both of which are of paramount importance to any court: judicial economy and timely justice. The Court believes that to the degree that discovery can be coordinated among the myriad claims that are lodged under this umbrella, such coordination[1] is an important goal. However, equally important is the need to begin substantive discovery and prepare these cases to go to trial in as swift a manner as is possible. There are thousands, if not hundreds of thousands of litigants who have no claims against any insurer who are entitled to trial in a timely fashion. This fact greatly outweighs any inconvenience that is caused to the Insurance Defendants considering that but for the United States District Court's decision to try

---

[1] As the Court noted in Court, there are parallel proceedings on-going in state courts for the parishes harmed by Hurricane Katrina; obviously, this Court has no control over those actions. Nonetheless, the Court has met with and is in communication with these various courts in order to bring some order out of this litigation chaos. Clearly, staying all of deposition discovery in all of the matters under this umbrella would have no effect on those parallel proceedings.

EXHIBIT B

and coordinate such discovery, they would be subjected to thousands of individual suits and class actions all operating on different schedules, in different sections of the court, and not subject to this particular Court's oversight. Moreover, if the Court determines that all or some part of this "umbrella" is not operating efficiently, it will sever any category of cases necessary to achieve maximum efficiency.

To that end, the Court specifically carved out of its Case Management Order No. 4 *Robinson, et al. v. United States, et al.*, C.A. No. 06-2286, which is **not** a class action, involves 6 plaintiffs and is brought solely against United States defendants for the damages these persons suffered as a result of the MRGO. The Court has set a September 8, 2008 trial date in that case which is three years after tragedy of Katrina occurred. This case has absolutely no relationship to insurance coverage.

Likewise, those cases designated as "MRGO" or "Levee" cases do not involve insurance coverage questions. These suits are brought only against the persons plaintiffs contend are directly responsible for damage caused by the levee breaches. In addition, there are innumerable individual insurance claims that are likewise lodged under this umbrella and are categorized as "Insurance" claims under the umbrella. The Court entered Case Management Order No. 4 in an attempt to put all of these cases, as well as the class actions contained in the Insurance umbrella–the *Chehardy* claims as they are known–in a posture for either settlement or trial. To that end, the Court carefully and with the input of all the parties crafted an extremely detailed plan which would have, in essence, prepared the Levee, MRGO and Insurance cases to be in a posture for trial in March of 2009–3 years and 7 months after the horror of Katrina.

As a result of this Court's certification of the insurance coverage issue to the United States Court for the Fifth Circuit, the Insurer Defendants filed an appeal which has been accepted by the Fifth Circuit and indeed a motion for expedited hearing has been granted by that court with argument to be held during the week of June 4, 2007. The Insurer Defendants also filed for

2

a stay of these proceedings during the pendency of that appeal with the Fifth Circuit which was granted on February 28, 2007 and is the subject of the instant motion.

The hearing today was to discuss the breadth of that Stay and what effect it should have on all of the other litigation, since the Fifth Circuit's jurisdiction covers only *Chehardy*, C.A. Nos. 06-1672, 06-1673, and 06-1674, *Vanderbrook*, No. 05-6323 and *Xavier University*, C.A. 06-516. *Chehardy* is a class action, and the Court had limited the motion to practice to these "test" cases under the Insurance category. The parties agree that the Fifth Circuit Stay Order clearly mandates a complete stay of two of the cases–*Chehardy* and *Vanderbrook*, and a limited stay as to *Xavier*–that is *Xavier* is only stayed with respect to the cause of the levee breaches. Nonetheless, in enforcing the spirit of the stay,

**IT IS ORDERED** that:

1. With respect to **all Insurance Cases,** all discovery and application of deadlines established in the CMO No. 4 are **STAYED** with respect to all common liability issues–that is causation of the levee breaches–and class action certification.

   With respect to the Master Insurance Class Action Complaint which had been ordered to be filed under the CMO No. 4 this day, that matter is **STAYED** and no responsive pleadings shall be filed therein pending a resolution of the pending appeal in *Chehardy, Vanderbrook and Xavier* or until such time this Court determines otherwise.

2. Discovery and the application of deadlines established in the CMO No. 4 for the individual insurance claims are **NOT STAYED** except with respect to common liability issues as noted above.

3. As to the MRGO, Levee and the *Robinson* case, these matters are **NOT STAYED** in any respect as to any matter contained therein.

3

4.  Should any further clarification be required, the parties may file whatever motions they find necessary.

**IT IS FURTHER ORDERED** that State Farm Insurance Company shall file a memorandum no later than **March 21, 2008** concerning its position with respect to the Stay ordered by the Fifth Circuit as it relates to the severing of the claims against it in the class action insurance cases.

New Orleans, Louisiana, this 16th day of March, 2007.

> STANWOOD R. DUVAL, JR.
> UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT "C"

## COMPARISON OF PLAINTIFFS' DESCRIPTIONS OF THEIR DISCOVERY REQUESTS

### TO ACTUAL TEXT OF THE DISCOVERY REQUESTS THEMSELVES

| Interrogatory No. | Plaintiffs' Description | Actual Text of Request |
|---|---|---|
| 2 | This interrogatory seeks a generic description of the responding carrier's claims process. | Please describe your standard, general procedures for intake and adjustment of Katrina-related claims under any of your homeowner policy forms, including in your response the following information and any other similar information that would illustrate the claims process: methods of claim reporting; intake and triage methods and protocols; distribution and assignment of claims; field adjustment; use of specialists such as engineers; transmission of field adjustment reports and recommendations; review of such reports and recommendations; approval and/or modification and/or rejection of such reports and recommendations, including how such actions are communicated to field personnel; final approval for claims payments and/or denials; and transmission or communication of such final decisions to field personnel and to insureds. Please include in your answer the titles of each department and person/position involved in the process. |

| Interrogatory No. | Plaintiffs' Description | Actual Text of Request |
|---|---|---|
| 3 | This interrogatory seeks a description of each document routinely generated in connection with a Katrina-related Louisiana property damage claim. | Please describe each document routinely generated in connection with a Katrina-related Louisiana property damage claim, including in your description the job title of the person who ordinarily would generate such document and the job title of the person who ultimately would acquire possession and custody of each document so described. |
| 4 | This interrogatory seeks the identity of every agent and employee who worked on the responding carrier's behalf in the relevant geographical area. | Please identify every agent and employee from the level of adjuster and up who was employed or contracted by you to adjust claims in Jefferson Parish, Orleans Parish and St. Bernard Parish, including in your identification of each, his or her date of hire, salary, whether the person is currently employed or contracted, and if not, the reason for separation. |
| 5 | This interrogatory seeks a description of the guidelines and policies governing assignment of adjusters and transfer of files. | Please (i) describe the guidelines, policies, and procedures utilized in determining how to assign a given adjuster to a given claim and (ii) whether/when to transfer a given adjuster from one file or claim to another file or claim. |
| 6 | This interrogatory seeks the identity of all third-party adjusting, engineering and similar firms who worked for a carrier on Louisiana Katrina claims. | Please identify every third-party adjusting agency, engineering firm, or other similar entity utilized by you in Louisiana in response to Hurricane Katrina, including in your description the terms of your relationship with each such entity. |

- 2 -

| Interrogatory No. | Plaintiffs' Description | Actual Text of Request |
|---|---|---|
| 7 | This interrogatory seeks the identity of all claims manuals, bulletins, etc., that governed a carrier's adjustment of claims. | Please identify each training manual, procedures manual, employee handbook, protocol, bulletin, guideline, and other such document that you provided or maintained for the use of those employees and agents who handled Katrina-related property damage claims (both in the field and in-house). |
| 8 | This interrogatory seeks a description of a carrier's method of estimating and calculating Louisiana Katrina claims, including relevant software information. | Please describe (i) the method(s) utilized to estimate or calculate the damages and losses (including repair costs) claimed by or paid to Louisiana residents who made Katrina-related property damage claims. If any computer software was utilized in estimating or calculating any such claims, please (ii) provide the name, version, and developer/ manufacturer of each such software (including changes of the versions used from time to time). |
| 9 | This interrogatory seeks more detailed information concerning the estimating software used by the responding carrier. | With respect to any and all software referred to in your response to the preceding interrogatory, please (i) describe the method by which its price database (reflecting repair costs) was established and updated from time to time, (ii) describe all guidelines, protocols, and/or efforts established or undertaken by you to ensure that the price database reflected current repair costs in the Greater New Orleans area, and (iii) describe whether and under what circumstances field and/or in-house claims personnel were permitted or required to depart from the prices (repair costs) reflected in the database or add to the pricing items reflected in the database. |

| Interrogatory No. | Plaintiffs' Description | Actual Text of Request |
|---|---|---|
| 10 | This interrogatory seeks a description of the training provided adjusters. | Please describe all training routinely provided to (or undertaken at your request by) adjusters who performed services on your behalf in connection with Hurricane Katrina, specifically including in your response any training such persons received with respect to any adjusting software referred to in your responses to either of the two preceding interrogatories. |
| 11 | This interrogatory seeks a description of the insurer's efforts to establish and maintain a current and accurate cost database. | In addition to the information provided in response to Interrogatory No. 9, please (i) describe all other methods by which you established, updated, and communicated repair costs to be used in calculating damage estimates for your insureds' properties, and (ii) describe all guidelines, protocols, and/or efforts established or undertaken by you to ensure that repair costs reflected current repair costs. |
| 12 | This interrogatory seeks a description of the methodology employed by the responding carrier's adjuster in differentiating water from wind, and covered water from non-covered water. | Please describe the methodology you employed (and trained your employees and agents to employ) for (i) differentiating water damage from wind damage and (ii) differentiating water damage that you deemed covered (e.g., rain entering from a breach in a structure) from water damage you deemed not covered (e.g., water resulting from a levee breach). |

| Interrogatory No. | Plaintiffs' Description | Actual Text of Request |
|---|---|---|
| 13 | This interrogatory seeks the identity of every coverage form the carrier utilized in Louisiana as of Katrina's landfall | Please (i) identify every coverage form you utilized in Louisiana as of August 29, 2005, with respect to homeowners and commercial properties, and (ii) identify every coverage form for which you sought or intended to seek approval for use in Louisiana as of that date. |
| 14 | This interrogatory seeks to have the carrier identify where in its coverage forms it set forth the method for loss computation in the event it did not value the property in accordance with the VPL statute. | For every structure you insured in Louisiana as of August 29, 2005, for which you did not place a valuation upon the covered property and use such valuation for purposes of determining the premium charge to be made under the policy, please identify where in each of the coverage forms identified in your response to the preceding interrogatory you set forth the actual method you would use for loss computation in the event of a total loss. |
| 15 | This interrogatory seeks to have the carrier describe what amounts to an "application" for insurance[.] | Please describe for the property casualty policies in effect in Louisiana on August 29, 2005, all standards, guidelines, and/or minimum requirements governing whether a request for coverage would be deemed a sufficient application for such. (If you used a standard application form or forms for the property casualty policies you had in effect in Louisiana on August 29, 2005, production of a sample of each applicable application form will suffice.) |
| 18 | Seeks to learn of every instance during the past five years that the responding insurer was subject to any business related criminal investigation. | Please describe every instance during the past 5 years in which any criminal investigation has been launched that was in any way related to your business practices, specifically including your claims practices. |

| Request for Production No. | Plaintiffs' Description | Actual Text of Request |
|---|---|---|
| 1 | This request seeks all organizational charts reflecting the information set forth in response to Interrogatory 1. | All organizational charts that reflect all of the information set forth in Interrogatory No. 1. |
| 2 | This request seeks all charts reflecting the information set forth in response to Interrogatory 2. The request should have been for "any" chart, rather than all. | All organizational charts, flow charts, or similar documents that depict or illustrate your claims process. |
| 3 | This request seeks a sample document/exemplar of the documents described in response to Interrogatory 3 | A sample of each document described in your response to Interrogatory No. 3. |
| 5 | This request seeks training and procedures manuals, employee handbooks, and similar documents distributed to in-house and field personnel. | Each training manual, procedures manual, employee handbook, protocol, or similar document that you provided or maintained for the use of those employees and agents who handled Katrina-related property damage claims (both in the field and in-house). |
| 6 | This request seeks all claims-related bulletins issued to field adjusters since one week prior to Katrina's landfall | Every claims-related bulletin issued by you to your field adjusters since 8/22/05. |
| 8 | This is the first of several "pricing-related" RFPs (including 8-16)… This RFP seeks all price lists, pricing guidelines, etc., to be used by field personnel. | All price lists, pricing guidelines, or other documents establishing or designating repair costs to be used by your field employees and agents (including field adjusters) in estimating property losses sustained by your insureds. |

- 6 -

| Request for Production No. | Plaintiffs' Description | Actual Text of Request |
|---|---|---|
| 9 | This request seeks all price lists, pricing guidelines, etc., to be used by in-house personnel [.] | All price lists, pricing guidelines, or other documents establishing or designating repair costs to be used by your in-house employees and agents (including in-house adjusters and claims supervisors) in estimating property losses sustained by your insureds. |
| 10 | This request seeks depreciation tables and similar documents used in adjusting claims. | Every depreciation table or other such document relied upon, utilized by, or recommended for use by employees and agents in estimating your insureds' property losses. |
| 11 | This request seeks the user's manual for each loss-estimating software identified in the carrier's response to Interrogatory 9. | A user's manual for each loss-estimating software identified in your response to Interrogatory No. 9. |
| 12 | This request seeks all agreements between the insurer and any manufacturer or licensor of the loss-estimating that insurer employs (another pricing request). | Any and all agreements between you and any manufacturer or licensor of loss-estimating software which agreement concerns the establishment or use of a price database (reflecting repair costs) that is particular to your insureds or their properties. |
| 14 | This request seeks all documents reflecting loss-estimating methods identified in response to Interrogatory 9, other than software-related documents. | Every document unrelated to loss-estimating software which document would reflect the loss-estimating methods identified in your response to Interrogatory No. 9. |
| 15 | This request seeks all documents corroborating or reflecting efforts to maintain the current and accurate cost database described in response to Interrogatory 10. | Every document that would corroborate that the methods, guidelines, protocols, and efforts employed or undertaken by you as described in your response to Interrogatory No. 10 were in fact employed or undertaken. |

- 7 -

| Request for Production No. | Plaintiffs' Description | Actual Text of Request |
|---|---|---|
| 16 | This request seeks all documents reflecting or corroborating the insurer's efforts to maintain a current and accurate cost database outside of the software context. | Every document that would corroborate that the methods, guidelines, protocols, and efforts employed or undertaken by you as described in your response to Interrogatory No. 12 were in fact employed or undertaken. |
| 17 | This request seeks all documents reflecting the methodology for differentiating water from wind damage[.] | Every document reflecting your customs, policies, procedures, or guidelines for differentiating water damage from wind damage. |
| 18 | This request seeks all documents reflecting methodology from differentiating covered water damage from non-covered water damage[.] | Every document reflecting your customs, policies, procedures, or guidelines for differentiating water damage that you deemed covered (e.g., rain entering from a breach in a structure) from water damage you deemed not covered (e.g., water resulting from a levee breach). |
| 19 | This request seeks all documents reflecting any customs, policies, etc., with respect to using a water line to determine damages. | Every document reflecting any customs, policies, procedures, or guidelines you maintained with respect to using (or not using) a "water line" in determining damages to a given property. |
| 20 | This…request seeks all documents reflecting customs, policies, etc., relating to the adjustment of total loss claims. | Every document reflecting the customs, policies, procedures, or guidelines you maintained with respect to the adjustment of claims involving total loss of a structure. |
| 21 | This…request seeks all documents reflecting customs, policies, etc., relating to the adjustment of total loss claims involved both wind and water (on the assumption that might differ from total loss by wind or water alone). | Every document reflecting the customs, policies, procedures, or guidelines you maintained with respect to adjustment of total structural loss that resulted from a combination of wind and water. |

- 8 -

| Request for Production No. | Plaintiffs' Description | Actual Text of Request |
|---|---|---|
| 22 | This is…the companion request to Interrogatory 13(i); it seeks each coverage form identifies in response to that interrogatory. | Each coverage form identified in your response to Interrogatory No. 14(i). |
| 23 | This is the companion request to amend Interrogatory 13(ii) (originally 14(ii)). It also seeks coverage forms. | Each coverage form identified in your response to Interrogatory No. 14(ii). |
| 28 | This request seeks sample application forms (which are relevant to VPL matters). | A sample of each application form used or deemed acceptable by you with respect to Louisiana property casualty policies for whatever period of time would suffice to cover all policies in effect on August 29, 2005. |
| 29 | This request also seeks sample application forms (covering a similar time period in a different fashion). | A sample of each application form used or deemed acceptable by you with respect to Louisiana property casualty policies for the past 20 years. |
| 30 | This seeks every document the insurer contends accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the relative timing of the arrival of tropical storm, and/or hurricane winds in relation to flood or inundation (a defined term) in the Greater New Orleans area. | Every document that you contend accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the relative timing of the arrival of tropical storm force winds and/or hurricane force winds in the Greater New Orleans area or any part of it with relation to any flood or inundation within the Greater New Orleans area or any part of it, with respect to Hurricane Katrina. |

- 9 -

| Request for Production No. | Plaintiffs' Description | Actual Text of Request |
|---|---|---|
| 31 | This is a counterpart to RFP 30, seeking every document the insurer contends inaccurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the information identified in RFP 30. | Every document that you contend inaccurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the relative timing of the arrival of tropical storm force winds and/or hurricane force winds in the Greater New Orleans area or any part of it with relation to an flood or inundation within the Greater New Orleans area or any part of it, with respect to Hurricane Katrina. |
| 32 | This seeks every document the insurer contends accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the depth of flooding or inundation (a defined term) in the Greater New Orleans area due to any discrete cause, such as rainfall or levee breach or overtopping. | Every document that you contend accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the depth of any flooding or inundation of the Greater New Orleans area over time or at any time due to any discrete cause and all of them, including, but not limited to, rainfall and/or other precipitation and the breach and/or overtopping of any levee, spoilbank, or similar structure, with respect to Hurricane Katrina. |
| 33 | Similar to RFP 31, this is a counterpart to RFP 32 that seeks every document that insurer contends inaccurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the information identified in RFP 32. | Every document that you contend inaccurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the depth of any flooding or inundation of the Greater New Orleans area over time or at any time due to any discrete cause and all of them, including, but not limited to, rainfall and/or other precipitation and the breach and/or overtopping of any levee, spoilbank, or similar structure, with respect to Hurricane Katrina. |

| Request for Production No. | Plaintiffs' Description | Actual Text of Request |
|---|---|---|
| 34 | In the same pattern, this RFP seeks every document the insurer contends accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the duration and/or amount of rainfall that occurred in the Greater new Orleans area, or any part of it, during the policy occurrence period for Katrina. | Every document that you contend accurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the duration and/or amount of rainfall that occurred in the Greater New Orleans area, or any part of it, during the policy occurrence period for Hurricane Katrina. |
| 35 | Similar to RFPs 31 and 33, this is a counterpart to RFP 34 that seeks every document the insurer contends inaccurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the information identified in RFP 34. | Every document that you contend inaccurately discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the duration and/or amount of rainfall that occurred in the Greater New Orleans area, or any part of it, during the policy occurrence period for Hurricane Katrina. |
| 38 | This RFP seeks every document reflecting plans, communications, etc., by the insurer whereby it attempted to decrease its losses by minimizing catastrophic property damage claims and claims payments from 2002 to date. | Every document pertaining to or reflecting plans, communications, or projections by the insurer whereby the insurer attempted to decrease its losses by reducing the number, size, and/or payments on claims from 2002 to date related in any way to catastrophic property damage claims. |
| 39 | This final RFP seeks all documents the insurer produced to any governmental agency investigating its conduct relating to Hurricane Katrina (including production to the Mississippi AG or department of Insurance). | Every document you produced to any governmental agency investigating your conduct relating in any way to Hurricane Katrina, including, but not limited to production to the Mississippi Attorney General and Mississippi Department of Insurance. |

- 11 -