# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

CIVIL ACTION

NO. 05-4182 "K" (2)

PERTAINS TO: MRGO and LEVEE

JUDGE DUVAL
MAG. WILKINSON

FILED IN     05-4181, 05-4182, 05-5237, 05-6073,
05-6314, 05-6324, 05-6327, 05-6359,
06-0225, 06-0886, 06-1885, 06-2152,
06-2278, 06-2287, 06-2824, 06-4024,
06-4065, 06-4066, 06-4389, 06-4634,
06-4931, 06-5032, 06-5155, 06-5159,
06-5161, 06-5162, 06-5260, 06-5771,
06-5786, 06-5937, 07-0206, 07-0621,
07-1073, 07-1271, 07-1285

---

## LEVEE AND MRGO PLAINTIFFS MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ANSWERS TO MRGO AND LEVEE DEFENDANTS' FIRST SET OF JOINT CLASS-CERTIFICATION INTERROGATORIES, TO COMPEL PRODUCTION OF DOCUMENTS, AND TO DECLARE REQUESTS FOR ADMISSIONS ADMITTED AND OBJECTIONS WAIVED

---

**MAY IT PLEASE THE COURT:**

## I.     Introduction.

The MRGO defendants have moved to compel plaintiffs to provide further responses to the MRGO defendants' First Set of Joint Class-Certification Interrogatories and Requests for Production.  Plaintiffs will demonstrate that their original and post-37.11 conference additional responses satisfy the discovery requirements of Fed. R. Civ. P. 26.

Further, the MRGO defendants' have moved for an Order that its Requests for

Admissions should be deemed admitted, and plaintiffs' objections to the MRGO defendants' class-certification discovery should be deemed waived, because plaintiffs failed for a period of 11 days in Levee and 12 days in MRGO to serve their responses or objections by the deadline established in the Court's Case Management Order No. 4. (Docket No. 3299.). Plaintiffs will demonstrate in their Fed. R. Civ. P. 33(b) motion simultaneously filed herein that the defendant's Admissions should not be deemed admitted for the reason that at this early stage of the litigation no harm or prejudice results from granting the Plaintiffs Rule 33(b) relief.

The Levee defendants have adopted and filed a "me too" motion for the very same reasons and seeking the very same relief as do the MRGO defendants. Plaintiffs will address both the Levee and the MRGO motions herein.

## II.   VERIFICATION.

Plaintiffs will supplement their responses consistent with the representations made in their July 37.11 conference letter and as offered here. At that time they will submit verified responses.

## III.   SUMMARY CHARTS.

Plaintiffs object to Defendants Exhibits 2, 3, and 4 which purport to summarize the Plaintiffs' responses. The Plaintiffs will, where their responses are challenged by the defendants, quote the entire response.

## IV.   INDIVIDUALIZED CAUSATION AND DAMAGES ARE NOT DISCOVERABLE IN AN ISSUES ONLY CLASS.

THE Supreme Court and Fifth Circuit have repeatedly held that district courts must conduct a "rigorous analysis" of the requirements of Rule 23 before reaching a class-certification decision. Gen Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); Steering Comm. v. Exxon Mobil Corp., 461 F.3d 598, 601 (5th Cir. 2006); Castano v. Am. Tobacco Co.,

84 F.3d 734, 740 (5th Cir. 1996).  The Plaintiffs agree that to engage in that "rigorous analysis," however, a court is dependent on a class-certification record that can be developed only through proper responses to discovery, but not of the over-broad, fishing expedition kind propounded by defendants here.  It attempts to seek discovery, e.g. evacuation damages, personal injuries, and more that will neither be "relevant or likely to lead to the discovery of relevant evidence" to the issues of liability for water intrusion and water dispersal.

Plaintiffs have offered to stipulate that the certification they seek is limited to common issues certification, that is, issues which overarch all plaintiffs and that their intent is not to seek certification on issues relating to individualized causation and damages. Simply put, did the Levees fail, who was responsible for the failure, did Plaintiff suffer water intrusion to his/her property?

These are the types of common issues for which certification will be sought. Certification will not be sought to prove what damages did the water cause to a particular home or person; those are matters of individualized proof outside the purview of Fed. R. Civ. P. 23

The Defendants have refused all such offers. The Plaintiffs renew their offer to stipulate here again.

The circumstances of this case are similar to those in *Watson*, in which the Fifth Circuit affirmed class certification pursuant to Federal Rule of Civil Procedure 23(b)(3). *Watson* involved an explosion caused by the failure of a pipe elbow, fabricated and installed by Brown & Root at Shell Oil's facility in Norco, Louisiana. *See Watson*, 979 F.2d at 1016. The class consisted of over 18,000 people, asserting claims under different legal theories against Shell and Brown & Root.

In analyzing the predominance requirement, the Fifth Circuit recognized that Rule 23(b)(3) requires that "resolution of the common questions affect all or a substantial number of the class members." *Id.* at 1022 (internal quotations and emphasis omitted). The Court observed further that "a class issue predominates if it constitutes a significant part of the individual cases." *Id.* Applying these standards, the court emphasized that "the claims of all plaintiffs require resolution of Shell's liability for punitive damages and of Brown & Roots liability for negligence, **both arising out of the same event**." *Id.* (emphasis added). The court held that these common issues of liability predominated and thus satisfied Rule 26(b)(3). *Id.* at 1022-23.[1] Similarly, the liability of the defendants arises out of the same event–the failure of levees and floodwalls during Hurricane Katrina. Like the liabilities resulting from Shell explosion, the liabilities resulting from the failure of levees and floodwalls during Hurricane Katrina are common to all class members and predominate.

For the same reasons that the Fifth Circuit determined that class litigation was superior in *Watson*, litigating the class members' common claims in a class action is superior here. The

*Watson* court distinguished prior personal injury cases "in which numerous plaintiffs suffer various types of injuries at different times and through different causal mechanisms, thereby creating many separate issues" and focused on the common liability issues, noting "the great import of the class issues to the claims of each plaintiff." *Id.* at 1023. The court determined that, "[i]n light of massive proportions of this litigation, and the need to reduce the systemic burden it will impose," class litigation was superior and affirmed certification of the class consisting of more than 18,000 members.[2] The Court recognized that once the issues of fault were determined, individualized presentation of individual damages and causation, did the water cause the injuries claimed, will then proceed.

As the Court will see, the Plaintiffs have fairly responded to the Defendants discovery initiatives and explained their certification intention, common issues only, with no inclusion of individualized injury or individualized causation questions. They have explained their common issues trial plan.   Yet the Defendants argue that without the discovery sought it "...cannot address the issues that so frequently defeat class certification, such as causation, comparative fault, injury, and damages..." The Defendants are trying to redefine what the Plaintiffs seek so as to defeat certification. Perhaps this is a silent admission that it cannot defeat common issues certification.

The Defendants in shaping its discovery should have followed the lead of the Plaintiffs and recognize the certification sought was issue constrained. Apparently, the Defendants do not

---

[1] *See also Mullen*, 186 F.3d at 626 (affirming class certification under Rule 23(b)(3) where liability issues of negligence and seaworthiness were common to all class members).

[2] Indeed, the Fifth Circuit opened its analysis by describing the gargantuan scale of the litigation as follows: "The instant litigation, involving claims by more than 18,000 plaintiffs, starkly presents the nearly insurmountable problems of balancing procedural fairness with judicial efficiency in this mass tort litigation." *Id.* at 1018.

intend to address these issues on the same wavelength as the Plaintiffs and thus, remain intractable in their misguided view of the limits on certification that the Plaintiffs seek from which their equally misguided Motion to Compel follows.

The Defendants claim they are entitled to know the manner in which they intend to address in class-action trial individual issues such as causation, comparative fault, injury, and damages. They are not so entitled because like, *Watson, supra,* and as repeatedly explained to these defendants, those issues are outside the bounds of the certification order which the Plaintiffs seek.

## VI.    DISCOVERY AS TO DAMAGES IS LIMITED BY CMO # 4.

CMO # 4 in III(A) limits discovery as follows:   "As to each proposed class representative, the motions must provide his or her full name, current address, occupation and age, and the street address of any property as to which he or she seeks to recover damages in these cases, including whether he or she owned or leased the property, a brief description of the size of the property and any buildings or other improvements on it, and whether it was or is used for residential and/or business purposes."  Plaintiffs have complied with these directives and would refer the Defendants to its previously filed Motion for Certification..

Further, CMO #4, IV limits current discovery "...to common liability issues as dined above and will not include damages, except as permitted later in this Order for individual cases in the insurance category."   CMO #4, III(B)(2) limits certification discovery to "class certification issues." The defendants have ignored this admonition.

## VII.   TIMELINESS.

The Plaintiffs have sought relief under Fed. R. Civ. P. 33(b) to allow them to amend their

admission responses deemed admitted by operation of law. Expedited consideration has been requested as well as oral argument on the 18th of July to coincide with the hearing on the Motion to Compel, etc. to which this reply relates. For the reasons stated in those motion papers, plaintiffs do not believe its 11/12 day delay has resulted in any prejudice to the defendants, particularly since it has conducted a37.11 conference with the plaintiffs and has extensively briefed the merits of the responses as if they had not been deem admitted. Likewise, this minimum delay, without prejudice, is insufficient to warrant such a drastic penalty as waiver of the right to object to unreasonable discovery.

## VIII. PLAINTIFFS HAVE PROPERLY RESPONDED TO DEFENDANTS ADMISSION REQUEST.

In organizing their papers, the defendants did not sequentially address these discovery initiatives. Given the defendants presentation, the plaintiffs will address each admission in the same order as did the defendants.

**Request for Admission No. 1: "Admit that in order to determine whether an individual or entity is included in either of the two proposed classes, . . . it will be necessary to determine whether or not that individual or entity sustained damages as a result of inundation/flooding in this area which occurred during and immediately following landfall of Hurricane Katrina on or about August 29, 2005."**

**RESPONSE TO REQUEST FOR ADMISSION NO. 1: Denied. Class inclusion for an individual will be based on the Court's acceptance of an appropriate class definition once the class certification requirements of Rule 23 are satisfied.**

The Defendant asserts that this admission was properly directed at identifying issues of causation and resulting damages, which will require individual determination. As discussed infra these individualized issues are not part of the requested certification as to common issues. Further, unless and until the Court frames the class definition, the Plaintiffs do not have

sufficient information to admit this admission. Their response is sufficient.

**Request for Admission No. 2**: **"Admit that in order to determine whether an individual or entity is included in the proposed class, it will be necessary to determine whether or not a person had fulfilled the administrative claim filing requirements necessary to maintain a claim under the Federal Tort Claims Act."**

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:** **Denied as to the     putative class action against the Government because of the "futility doctrine" plead by    Plaintiffs and  denied as to the putative class action brought against all other Defendants on the grounds of  relevance.**

The defendants argue "If plaintiffs are planning to take the position that persons who

have not filed a Form 95 and thus have not met the administrative-filing requirement are

included in their proposed class, they should say so." The plaintiffs did so by virtue of their

denials. Their response is sufficient.

**Request for Admission No. 3**: **"Admit that both of your proposed subclasses include individuals and entities that have not submitted to the United States Army Corps of Engineers a standard Form 95 or other administrative claim requesting damages related to Hurricane Katrina."**

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:** **Admitted as to the putative class action against the Government but denied as to the putative class action brought against all other Defendants.**

This request as written does not ask whether plaintiffs are asserting a legal doctrine that

they contend may excuse them from filing Form 95. However, as written  this Admission asks

Plaintiffs to admit that their proposed subclass definition as written includes those who have not

filed Form 95's. The definition as written does not , therefore this denial is an appropriate

response.

**Request for Admission No. 5**: "Admit that both of your subclasses include individuals or entities that sustained multiple injuries, (such as injury to real property, injury to personal property, and lost income), each of which injuries might have been caused by different legally responsible persons."

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:** Denied. The common issues trial contemplated by the Plaintiffs will determine the legal responsibility of the Defendants for the flooding/inundation at issue (general causation), and the apportionment of fault. The extent to which a given plaintiff's damages (all elements are due to this flooding/inundation will be a separate, trialble question. If general causation is established, all defendants found responsible for the flooding/inundation will be responsible for all proven elements of plaintiff's damages found to be caused by the flooding/inundation, (individual causation).

Defendants argue that "[i]f plaintiffs' proposed subclasses include individuals with different combinations of those 18 types of injuries—as defendants believe—defendants are entitled to crystallize that issue for the class-certification briefing. Similarly, defendants are entitled to confirm that the legally responsible persons may vary—for each different injury and person. Plaintiffs will not seek certification for individualized causation and damages issues. Once those plaintiffs prove failure, fault, and water penetration, fault and fault allocation for water inundating a particular plaintiff's property will already have been established. Plaintiffs' response is sufficient.

**Request for Admission No. 6**: "Admit that the same jury that determines the cause(s) of multiple injuries alleged by a particular class member would have to determine comparative fault by allocating percentages of fault among all persons causing or contributing to each of those injuries.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:** Denied. See Response to Request for Admission No. 5, *supra.*

The defendants argue "[i]f plaintiffs contend that one jury can decide causation, and another jury can later decide comparative fault for the same class member's claims, defendants need to know. Plaintiffs do not so contend.

The common issues trial contemplated by the Plaintiffs will determine the legal responsibility of the Defendants for the flooding/inundation at issue (general causation), and the apportionment of fault. The extent to which a given plaintiff's damages (all elements are due to this flooding/inundation will be a separate, trialble question. If general causation is established, all defendants found responsible for the flooding/inundation will be responsible for all proven elements of plaintiff's damages found to be caused by the flooding/inundation, (individual causation). Their response is sufficient.

**Request for Admission No. 31: "Admit that the primary relief that you are seeking is monetary relief."**

**RESPONSE TO REQUEST FOR ADMISSION NO. 31: The term "primary" is vague and ambiguous and therefore, as written, this request is denied. The plaintiffs do admit that they are seeking such compensation and relief as to which they are entitled under the law.**

The defendants argue that this request for admission is directly relevant to plaintiffs' class motion, which lists Rule 23(b)(2) and 23(b)(3) as alternative bases for class certification. In fact, this admission seeks to commit plaintiffs to a theory of law, i.e. their burden of proof. This is a classic example of asking a party to admit a legal conclusion not a factual statement and is objectionable. The term "primary" is further objectionable as vague and call for an interpretation of the legal effect of plaintiffs motion, all of which is within the exclusive province of the Court. Plaintiffs' response is satisfactory.

**Request for Admission No. 35:** "Admit that as of the date that the MR-GO Master Consolidated Class Action Complaint in this action was filed, each and every member of the proposed class had not exhausted their administrative remedies under the FTCA."

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**Denied as written.   The MR-GO Master Consolidated Class Action Complaint proposes a putative class which includes individuals or entities that will have exhausted their administrative remedies as of the date on which the Order of Certification is granted.

**Request for Admission No. 36:** "Admit that as of the date that the MR-GO Master Consolidated Class Action Complaint was filed, each and every member of the proposed class had not exhausted their administrative remedies under the Admiralty Extension Act."

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:** Denied as written.   The MR-GO Master Consolidated Class Action Complaint proposes a putative class which includes individuals or entities that will have exhausted their administrative remedies as of the date on which the Order of Certification is granted.

Response # 35 and 36 requires the plaintiffs to guess -- to assume a fact of which it has

no means to know. Since the admissions directed itself to the question of standing, plaintiffs

explanatory note was to inform the defendants that standing was to be measured on the day the

order of certification issues.

**REQUEST FOR ADMISSION NO. 7:** Admit that the list of individuals and entities to be allocated fault by the jury will not be the same for every member of the proposed New Orleans East Subclass.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:** Denied.

The defendants complain that no explanation for the denial was given. In Admission

Response # 4, the plaintiffs advised the defendants that:

"It is the intent of the Plaintiffs, consistent with CMO #4, that a jury will hear and decide the certified common issues. This common issues trial will determine the cause(s) of the levee breach(s) which allowed water to penetrate the geographical boundaries of the class, the parties at fault who are responsible for the levee breach(s), and the apportionment of fault between the Defendants. The common questions of [the] causation[,] fault, and the apportionment of fault will then be determined for all class members. The common question of the geographical reach of the flood waters will likewise be determined. There also may be common questions of certain class-wide damages to be tried.

The Court may include in its Trial Plan provisions to permit the Class Representatives or other selected Plaintiffs to try their individual damage claims. In that event, the Trial Plaintiff will then be required to prove that he or she was caused injury and damages as a result of the flooding. If damages were proven, the jury would then assess damages specific to that particular Plaintiff. This jury could also assess the comparable fault attributable to the Plaintiff. "

Plaintiffs have explained their denial albeit in #4. Their answer is satisfactory.

**REQUEST FOR ADMISSION NO. 8:** Admit that the list of individuals and entities to be allocated fault by the jury will not be the same for every member of the proposed Lower Ninth Ward and St. Bernard Subclass.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:** Denied.

The defendants complain that no explanation for the denial was given. For the very same reasons discussed in Response to Request # 7, plaintiffs have explained their denial. Their answers are proper.

**REQUEST FOR ADMISSION NO. 11:** Admit that you are seeking for the proposed class only the following categories of damages, which are specifically identified in paragraph 80(a) and (b) of the MR-GO Master Consolidated Class Action Complaint:
   a. loss of real property,
   b. loss of personal property,
   c. diminution of property value,
   d. loss of income,
   e. costs of relocation,
   f. loss of business opportunities and business interruption,
   g. evacuation expenses,
   h. personal injury,

i. wrongful death,
j. survival damages,
k. fear, fright and emotional distress,
l. grief,
m. mental anguish,
n. inconvenience,
o. pain and suffering,
p. loss of the capacity to enjoy life,
q. loss of consortium, and
r. costs of suit.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:** Denied.

The defendants complain that no explanation for the denial was given. The plaintiffs

suggest that no explanation is necessary as the plaintiffs, by virtue of their denial, affirmed that

they sought damages beyond those listed in the Complaint. The plaintiffs responded to the

Request as drawn, a response that is proper.

**REQUEST FOR ADMISSION NO. 26:** Admit that both of your proposed subclasses include individuals or entities who sustained property damages on August 29, 2005, exclusively due to an Act of God (e.g., an individual whose property was damaged only by wind and rain).

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:** Denied.

The defendants complain that no explanation for the denial was given.  The plaintiffs

suggest that no explanation is necessary as the plaintiffs, by virtue of their denial, affirmed that

they believed that there no putative class member sustained such damages "exclusively".  The

plaintiffs responded to the Request as drawn, a response that is proper.

**REQUEST FOR ADMISSION NO. 38:** Admit that the law of a state other than Louisiana will apply to determine the legal rights of at least one named plaintiff or proposed class member.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:** Denied.

**REQUEST FOR ADMISSION NO. 39:** Admit that the law of a state other than Louisiana will apply to determine the damages of at least one named plaintiff or proposed class member.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39: Denied.**

The defendants complain that in 38 and 39 no reason for the denial was given. The plaintiffs suggest that no explanation is necessary as the plaintiffs, by virtue of their denial, affirmed that they believed the law of Louisiana to apply. The plaintiffs responded to the Request as drawn, a response that is proper.

## IX.  PARTICULAR DISCOVERY REQUESTS, DEFENDANTS SECTION IV(A).

For whatever reasons the defendants have chosen to first list the discovery at issue sequentially, then summarize the request, sometimes accurately, other times not, then shuffle its summary, and then argue globally. See Section A at page 18. Such a presentation does not simplify preparing a response. Here, plaintiffs will follow the defendants shuffled order as to issues raised in IV(A) but will provide the Court with the full text of the request.

**INTERROGATORY NO. 15: For each named plaintiff, identify and describe each separate type of injury alleged by the named plaintiff, including but not limited to the nature and extent of each such injury, when and where each such injury occurred, the amount of monetary damages being sought for each such injury, and all facts that form the basis of your contention that one or more MR-GO defendants proximately caused each such injury.**

**INTERROGATORY NO. 16: For each named plaintiff, identify and describe every time you have seen a physician, psychologist, psychiatrist, or other medical professional as a result of any injuries or damages alleged in the lawsuit or otherwise related to Hurricane Katrina. Include in your description the name and address of each such medical professional, the date of visit, the reason for the visit, and the medications, if any, that were prescribed.**

Plaintiffs' objection to individualized causation and damage discovery as to # 15 and 16 is discussed in Section IV and IV, supra.

**INTERROGATORY 30: Identify and described in detail the circumstances if any of the**

named plaintiffs suffer from any mental or physical illness, disability, or impairment.

plaintiffs' objection to individualized causation and damage discovery is

discussed, supra. Further, as a result of the 37.11 conference, plaintiffs have disclosed in

Response to Interrogatory # 30, any current medical issues, infirmities, or disabilities so that the

defendants can discover any such issue that would disqualify a particular representative.

**INTERROGATORY NO. 17: For each named plaintiff, identify and describe any payment, insurance proceed, settlement, loan disbursement, government assistance, benefit, or other funds paid to the named plaintiff or on his/her behalf related to Hurricane Katrina passing near New Orleans on or about August 29, 2005, or Hurricane Rita passing near New Orleans on or about September 24, 2005.**

Plaintiffs' objection to individualized causation and damage discovery is discussed, supra.

**INTERROGATORY NO. 24: If you contend that each of the named plaintiffs and/or proposed class members have exhausted their administrative remedies before instituting an action, state the basis for, and the facts that support, this contention.**

Their are now mechanisms in place for the Government to make all Form 95's available.

The Form 95 will by reference to the date of filing determine if the statutory delay has run or not.

This issue is moot.

**INTERROGATORY NO. 29: Identify and describe in detail the circumstances if any of the named plaintiffs have ever been convicted of a crime, filed for bankruptcy, or been subject to a claim of breach of fiduciary duty.**

Plaintiffs have advised the defendants as to the existence of lawsuits involving the class

representatives, if any, for the preceding 10 years.

**REQUEST FOR PRODUCTION NO. 9:For each named plaintiff, produce all documents that refer or relate to any claim a named plaintiff is asserting for any damage alleged in the MR-GO Master Consolidated Class Action Complaint, including but not limited to damages from chemical or other contamination to his or her property, land, home, commercial buildings and/or improvements.**

Plaintiffs' objection to individualized causation and damage discovery is

discussed, supra..

**REQUEST FOR PRODUCTION NO. 10:For each named plaintiff, produce all
documents that refer or relate to any claim a named plaintiff is asserting for lost earnings,
lost future earnings, lost business opportunities, lost future business income, business
interruption, lost rental income, and/or lost future rental income.**

Plaintiffs' objection to individualized causation and damage discovery is

discussed, supra.

**REQUEST FOR PRODUCTION NO. 11:  For each named plaintiff, produce all
documents that evidence, reflect, support, or contradict your claim for personal injury and
"wrongful death, survival damages, fear, fright and emotional distress, grief, mental
anguish, inconvenience, pain and suffering, loss of the capacity to enjoy life; [and] loss of
consortium …." in the MR-GO Master Consolidated Class Action Complaint.**

Plaintiffs' objection to individualized causation and damage discovery is discussed,

supra.

**REQUEST FOR PRODUCTION NO. 14:**
**For each named plaintiff, produce documents that refer or relate the named
plaintiff's evacuation, relocation, and, if applicable, eventual return to New Orleans,
including but not limited, to records of expenses.**

Plaintiffs' objection to individualized causation and damage discovery is discussed,

supra.

**REQUEST FOR PRODUCTION NO. 15:  For each named plaintiff, produce all
statements, transcriptions of recorded statements, tape recordings, notes, diagrams, and/or
descriptions of events by the named plaintiff relevant to the issues subject to this litigation.**

It is self evident that this discovery is not permitted.

**REQUEST FOR PRODUCTION NO. 16:  For each named plaintiff, produce all
logs, journals, diaries, or other writings by the named plaintiff that refer or relate to
Hurricane Katrina or the matters at issue in this litigation.**

Plaintiffs' objection to individualized causation and damage discovery is discussed,

supra.

**REQUEST FOR PRODUCTION NO. 17:  For each named plaintiff, produce all medical records from August 2000 to the present.**

Plaintiffs' objection to individualized causation and damage discovery is discussed,

supra..

**REQUEST FOR PRODUCTION NO. 18:  For each named plaintiff, produce all documents evidencing the application for or receipt of any benefit, payment, insurance proceed, settlement, loan disbursement, or other funds paid to the named plaintiff or on his/her behalf related to Hurricane Katrina and/or its aftermath.**

Plaintiffs' objection to individualized causation and damage discovery is discussed,

supra.

**.REQUEST FOR PRODUCTION NO. 22:  Produce a copy of all photographs of any named plaintiff's real property, including photographs taken before Hurricane Katrina and after Hurricane Katrina.**

Moot. All such materials in the possession of the class representatives have been

Produced.

**REQUEST FOR PRODUCTION NO. 26:  Produce all documents furnished by any member of the public as a result of your public advertisements (whether billboards, newspapers, or others) seeking either potential plaintiffs or eyewitnesses in connection with the claims asserted in this lawsuit.**

Moot. Plaintiffs will amend to state that there are no such documents known to Plaintiffs.

**REQUEST FOR PRODUCTION NO. 28: Produce a copy of the complaint or petition in any prior litigation to which any named plaintiff has been a party.**

Moot. All such materials in the possession of the class representatives have been produced to the defendants.

**REQUEST FOR PRODUCTION NO. 29: Produce a copy of any lease agreements entered into between any named plaintiff and any proposed class member.**

Moot. All such materials in the possession of the class representatives have been produced to the defendants.

**REQUEST FOR PRODUCTION NO. 30: Produce all documents that relate to any eviction proceedings instituted by or against any named plaintiff after Hurricane Katrina.**

Plaintiffs' objection to individualized causation and damage discovery is discussed, supra..

**REQUEST FOR PRODUCTION NO. 33.    Please sign, date, and return the attached Authorizations for release of various records of the proposed named plaintiffs, which include:**
   **(1) Authorization to disclose medical information;**
   **(2) Authorization to disclose patient account information; and**
   **(3) Authorization to disclose psychiatric information and psychotherapy notes**

Plaintiffs' objection to individualized causation and damage discovery is discussed, supra.

## IX.    DISCOVERY REQUESTS, DEFENDANTS SECTION IV(B).

Plaintiffs will address the request in the order listed and summarized.

**REQUEST FOR PRODUCTION NO. 1: Produce a copy of each Standard Form 95 submitted to the United States Army Corps of Engineers by you or by any member of the proposed class from August 29, 2005, to the present, that is in the possession, custody, or control of the named plaintiffs or their attorneys.**

There are now mechanisms in place for the Government to make all Form 95's available. The Form 95 will by reference to the date of filing determine if the statutory delay has run or not. This issue is moot.

**REQUEST FOR PRODUCTION NO. 2: Produce all administrative claims relating to Hurricane Katrina that you or proposed class members have submitted to any governmental body or agency (including but not limited to claim forms submitted to the Louisiana Recovery Authority), that are in the possession, custody, or control of the named plaintiffs or their attorneys.**

Plaintiffs' objection to individualized causation and damage discovery is discussed, supra..

**REQUEST FOR PRODUCTION NO. 3:  Produce all documents that refer or relate to insurance claims that you or proposed class members have filed to recover for damages or injuries (personal or property) sustained between August 28, 2005, and September 25, 2005, that are in the possession, custody, or control of the named plaintiffs or their attorneys.**

Plaintiffs' objection to individualized causation and damage discovery is discussed, supra..

**REQUEST FOR PRODUCTION NO. 4:  Produce all documents that refer or relate to the composition of your proposed class or subclasses.**

Plaintiffs have disclosed all documents known to them to be responsive to this request, including  the IPET Report, Team Louisiana Report, the Independent Levee Investigation Team report, all discovery provided by any party to this litigation,  as well as those documents listed on Exhibit A attached to their response. There are no further materials responsive to this request other than expert work product, disclosure of which is premature and thus, objectionable. Plaintiffs expect that their expert disclosures will address this inquiry.

**REQUEST FOR PRODUCTION NO. 5:  Produce all documents in the possession, custody, or control of the named plaintiffs or their attorneys that refer or relate to any eye witness account of Hurricane Katrina.**

Other than published media reports, there are no documents responsive to this request known to plaintiffs.

**REQUEST FOR PRODUCTION NO. 6: Produce all documents in the possession, custody, or control of the named plaintiffs or their attorneys that refer or relate to the matters alleged in the MR-GO Master Consolidated Class Action Complaint or any damages or injuries allegedly sustained by any proposed class member as a result of Hurricane Katrina.**

See Objection to 4, *supra*, as well as plaintiffs' objection to individualized discovery, *supra.*

**REQUEST FOR PRODUCTION NO. 7: Produce all statements, transcriptions of recorded statements, tape recordings, notes, diagrams and/or descriptions that refer or relate to the matters alleged in the MR-GO Master Consolidated Class Action Complaint or any damages or injuries allegedly sustained by any proposed class member as a result of Hurricane Katrina.**

There are no statements, transcriptions of recorded statements, tape recordings, known to

plaintiffs. Plaintiffs object on the grounds that this request seeks the disclosure of expert opinions

and reliance materials, such as notes, diagrams, etc., all of which is not yet due under the

deadlines established by  CMO # 4, as amended

**REQUEST FOR PRODUCTION NO. 8: Produce duplicates of all photographs, digital video discs and/or video tapes that refer or relate to the matters alleged in the MR-GO Master Consolidated Class Action Complaint or any damages or injuries allegedly sustained by any proposed class member as a result of Hurricane Katrina.**

See Objection to 4, *supra*, as well as plaintiffs' objection to individualized discovery, *supra.*

This is not an  Amchem Prods. Inc., 521 U.S. at 625-26 futures class. ("[A] class

representative must be part of the class and possess the same interest and suffer the same injury

as the class members.") nor is it Costano,supra. Plaintiffs do not intend to offer testimony on

issues like individual causation and injury other than for the particular representative---plaintiffs

recognize that such proof  would not prove any other person's claim. Plaintiffs envision

certification as in Watson, supra dealing with common issues.

## X.   DISCOVERY REQUESTS, DEFENDANTS SECTION IV(C)

In Section C, the defendants complain of plaintiffs' responses to Interrogatories 12, 15, 19,

20, and 27 as well as DR 21. #15 has been addressed, supra.

**INTERROGATORY NO. 12: In your motion for class certification, you contend that "certain elements of classwide damage, such as the breakdown in social structure and loss of cultural identity, might be remedied by way of declaratory and/or injunctive relief." State whether you are seeking such relief and, if so, describe the specific declaratory and/or injunctive relief that you are seeking to remedy these alleged damages.**

Plaintiffs have advised the defendants that they will amend their response and considers

this issue moot.

**INTERROGATORY NO. 19: Identify and describe every source of water that entered the "Greater New Orleans" area (as defined in your proposed class definition) and caused injury or damage to proposed class members, including a description of which geographical area(s) were affected by each source of the water.**

Plaintiffs believe their reference to the MR-GO Master Consolidated Class Action

Complaint to be responsive.

**INTERROGATORY NO. 20: For each source of water you identify in response to Interrogatory 19, identify all persons or entities, (including entities that are not currently parties to this lawsuit), that you contend caused the water to enter the "Greater New Orleans" area (as defined in your proposed class definition).**

Plaintiffs believe their reference to the MR-GO Master Consolidated Class Action

Complaint to be responsive.

**INTERROGATORY NO. 27:  State all of the common legal duties that you allege each defendant owed to the named plaintiffs and the proposed class members.**

Plaintiffs believe their reference to the MR-GO Master Consolidated Class Action

Complaint to be responsive.

**REQUEST FOR PRODUCTION NO. 21:Produce all models, diagrams, maps, and/or graphical depictions of the areas of the proposed class and sub-classes that show the cause, extent, timing, duration, process, location, depth, or receding of flood water intrusion due to each levee/floodwall breach or levee/floodwall overtopping.**

Plaintiffs have disclosed all documents known to them to be responsive to this request, including the IPET Report, Team Louisiana Report, the Independent Levee Investigation Team report, all discovery provided by any party to this litigation, as well as those documents listed on Exhibit A attached to their response. There are no further materials responsive to this request other than expert work product, disclosure of which is premature and thus, objectionable. Plaintiffs expect that their expert disclosures will address this inquiry.

In asserting its right to further answers these requests the defendants invoke the well tried but never successful "If I do not object to your question, you cannot object when I ask the same thing." Plaintiffs are unaware of any Rule of Evidence, state or Federal, which allows a Court to overrule an objection on the grounds that an opponent elected to not object.

## XI.   DISCOVERY REQUESTS, DEFENDANTS SECTION IV( D).

Defendants complain that Interrogatory 12 and DR 4 require further answer. Plaintiffs have addressed those initiatives, *supra.*

Plaintiffs believe Interrogatory 11 is moot for the very same reasons as discussed in Interrogatory 12, *supra.*

Addressing the remainder of the defendants complaints,

**INTERROGATORY NO. 13:  In paragraphs 12 and 13 of the MR-GO Master Consolidated Class Action Complaint, your definitions for your proposed class and subclasses refer to "[a]ll individuals and entities in. . ." (emphasis added) the various geographical areas. For purposes of ascertaining class membership, explain what you mean by "in," how you believe the Court would determine whether an individual or entity was "in" the geographical areas specified in your class and subclass definitions, and state the time or date as of which you would make that determination. (For example, does "in" mean a resident of, owned property in, or was physically present on August 29, 2005, etc.?)**

Plaintiffs object to this interrogatory on the grounds that it fails to address the word "in" in proper context and specifically fails to acknowledge any logical and grammatical relationship

between the word "in" and the balance of the class and subclass definitional language limiting class/subclass membership to those "who/which sustained damages as a result of the inundation/flooding in [the] area." Plaintiffs objections are well founded.

**INTERROGATORY NO. 18:  Identify all lawsuits related to Hurricane Katrina that have been filed by any of plaintiffs' counsel, other than the previously filed class-action complaints that were superseded and replaced by any of the three Master Consolidated Class Action Complaints (per Case Management Order No. 4, § II.B.1).**

This Interrogatory does not seek discovery of admissible evidence nor is it calculated to lead to discovery of admissible evidence. Plaintiffs believe this to be a proper objection.

**INTERROGATORY NO. 23: If you contend that the futility doctrine applies to waive the administrative exhaustion requirements imposed by federal law, state the basis for, and the facts that support, this contention.**

Plaintiffs suggested to the defendants that this doctrine was explained in the jurisprudence of which Defendants should be aware. Its applicability here will be briefed as ordered by the Court at the appropriate time. Plaintiffs will amend to add that there has not been a single Katrina FTCA claim honored and that the Government will not ever do so. Such conduct on the part of the Government is sufficient to invoke this doctrine.

## XII.    DISCOVERY REQUESTS, DEFENDANTS SECTION IV( E).

**INTERROGATORY NO. 1: If the Court were to certify your proposed class, describe in detail the trial plan that you contend would enable the Court to adjudicate each element of proof required for each cause of action alleged against each defendant.**

It is the intent of the Plaintiffs, consistent with CMO #4, that a jury will hear and decide the certified common issues.  This common issues trial will determine the cause(s) of the levee breach(s) which allowed water to penetrate the geographical boundaries of the class, the parties

at fault who are responsible for the levee breach(s), and the apportionment of fault between the Defendants. The common questions of the causation fault, and the apportionment of fault will then be determined for all class members.   The common question of the geographical reach of the flood waters will likewise be determined. There also may be common questions of certain class-wide damages to be tried.

Plaintiffs expect that the same jury would address those common issues and others which may be certified by the Court.  Those common issues would include causes of action common to all Plaintiffs and affirmative defenses common to all Plaintiffs.  Depending on the trial plan adopted by the Court, it may be that the Class Representatives or other selected Trial Plaintiffs will try their individual damage claims to the common issue jury.

Claims against the government would be tried to the Bench contemporaneously with the common issues jury trial as to all common issues.

Subsequent to a determination of all certified common issues, individual trials, to a jury or to the Bench which would be limited to individualized proofs of damages and quantum. Various Courts have used different methods to address these individualized proofs.  Any more detailed discussion of individual damage trials is premature.

The Court may include in its Trial Plan provisions to permit the Class Representatives or other selected Plaintiffs to try their individual damage claims.  In that event, the Trial Plaintiff will then be required to prove that he or she was caused injury and damages as a result of the flooding.  If damages were proven, the jury would then assess damages specific to that particular Plaintiff. At that stage, comparative fault would be addressed.

To discuss a proposed trial plan at this juncture in any greater detail is a futile exercise until the issue is crystallized by a certification order. That said, plaintiffs believe that they have

fairly responded to the request as written not as the defendants paraphrase them. Plaintiffs

response is sufficient.

INTERROGATORY NO. 2: If the Court were to certify your proposed class, describe in detail the trial plan that you contend would enable the Court to adjudicate the cause(s) of each injury alleged by each proposed class member.

INTERROGATORY NO. 3: If the Court were to certify your proposed class, describe in detail the trial plan that you contend would enable the Court to adjudicate comparative fault with regard to the various injuries alleged by each proposed class member.

INTERROGATORY NO. 4: If the Court were to certify your proposed class, describe in detail the trial plan that you contend would enable the Court to determine all damage issues, including the amount of damage, for each proposed class member.

INTERROGATORY NO. 5:  If the Court were to certify your proposed class, explain whether your proposed trial plan would use the same or different juries to adjudicate (i) the elements of proof for each cause of action, (ii) affirmative defenses, and (iii) damage issues. If you propose the use of two or more different juries, explain what each jury will determine, and what each jury will be informed about the results of previous phases of the trial. If you contend that particular issues do not require a jury, identify those issues and describe how those issues will be adjudicated.

INTERROGATORY NO. 6: If you contend that defendants are not entitled to individual proofs at trial for each proposed class member to determine: (i) the cause of each injury alleged by each proposed class member; (ii) the allocation of fault among all persons causing or contributing to each such injury; and (iii) the amount of any damages sustained by each proposed class member as a result of each defendant's alleged negligence, then identify and describe the trial procedures that you contend would enable the Court to adjudicate each of these issues.

Interrogatories 2, 3, 4, 5, and 6 are addressed in the argument as to Interrogatory # 1, *supra.*

INTERROGATORY NO. 7:  If the Court does not accept the futility-doctrine argument set forth in paragraphs 2 and 3 of the MR-GO Master Consolidated Class Action Complaint, describe in detail how your proposed class-trial plan would enable the Court to determine whether or not each proposed class member had fulfilled the administrative claim filing requirements necessary to maintain a claim under the Federal Tort Claims Act.

ANSWER TO INTERROGATORY NO. 7: The common issues trial as proposed by the Plaintiffs would not require such proof.  The trial of individualized damage claims would be the appropriate time for the introduction of such proof.

Plaintiffs' response is sufficient.

**INTERROGATORY NO. 8: Identify and describe any mathematical or formulaic calculations or other models that you contend may be used to determine the cause(s) of alleged injuries to any proposed class member, and explain how such calculations or models would be legally sufficient in any trial of your proposed class action.**

**INTERROGATORY NO. 9: Identify and describe any mathematical or formulaic calculations or other models that you contend may be used to determine the type or amount of damages sustained by any proposed class member, and explain how such calculations or models would be legally sufficient in any trial of your proposed class action.**

**REQUEST FOR PRODUCTION NO. 12: Produce all mathematical or formulaic calculations or other models that refer or relate to determining the cause(s) of injury to any named plaintiff, any proposed class member, or any group of proposed class members.**

**REQUEST FOR PRODUCTION NO. 13: Produce all mathematical or formulaic calculations or other models that refer or relate to the calculation of damages for any named plaintiff, any proposed class member, or any group of proposed class members.**

The words "mathematical or formulaic calculations or other models" are vague and ambiguous insofar as they could be intended to refer to damage calculation or to levee breach scenarios. If the intent is to address individual damage and causation issues, such discovery is not permitted as discussed,*supra*. If intended to address common liability and causation issues, this discovery is premature as expert deadlines have not matured.

**INTERROGATORY NO. 21:  Identify all issues that you expect to be tried in a class proceeding and all issues you expect to be tried individually.**

Interrogatories 21 is addressed in the argument as to Interrogatory # 1, *supra*.

**INTERROGATORY NO. 27: State all of the common legal duties that you allege each defendant owed to the named plaintiffs and the proposed class members.**

**ANSWER TO INTERROGATORY NO. 27:**
Plaintiffs respectfully refer the Defendants to their Superseding Master Consolidated Class Action Complaint.

Plaintiffs response is proper.

**INTERROGATORY NO. 28:**
**Given that there is no jury trial allowed under the Federal Tort Claims Act, explain in detail how your proposed trial plan will coordinate the bench-trial claims against the United States with the jury-triable claims against other defendants.**

**ANSWER TO INTERROGATORY NO. 28:**
**Plaintiffs will suggest that trials to both the Bench and jury will occur simultaneously.**

Plaintiffs response is proper.

## CONCLUSION

For the foregoing reasons, plaintiffs ask the Court to grant leave to amend pursuant to

Rule 33(b), maintain all objections advanced by the plaintiffs, and find their responses sufficient.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**
    /s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS LIAISON COUNSEL
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com

**LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

 s/Gerald E. Meunier
GERALD E. MEUNIER (La. Bar #9471)
LEVEE PSLC LIAISON COUNSEL
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street

New Orleans, Louisiana 70163-2800
Phone:504/522-2304
Facsimile:504/528-9973
E-mail:gmeunier@gainsben.com

For
LEVEE PLAINTIFFS' SUB-GROUP LITIGATION
COMMITTEE

Gerald E. Meunier
Daniel E. Becnel, Jr.
Joseph M. Bruno
D. Blayne Honeycutt
Hugh P. Lambert
Darlene Jacobs
Walter Dumas

MR-GO PLAINTIFFS SUB-GROUP
LITIGATION COMMITTEE
s/ James Parkerson Roy
JAMES PARKERSON ROY
MR-GO PSLC Liaison Counsel
LA. Bar Roll Number: 11511
Domengeaux Wright Roy & Edwards LLC
P.O. Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: (337) 233-2796
Email: jimr@wrightroy.com

For

MR-GO PLAINTIFFS SUB GROUP LITIGATION
COMMITTEE

Jonathan Andry (Andry Law Firm, New Orleans, LA)
Clay Mitchell (Levin, Papantonio et al., Pensacola, FL)
Pierce O'Donnell (O'Donnell & Associates, Los Angeles,
CA)
James Parkerson Roy (Domengeaux, Wright, et al.,
Lafayette, LA)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States Mail, properly addressed and first class postage pre-paid, or by facsimile, or other electronic transmission this 10th day of July, 2007.

/s/ Joseph M. Bruno

Joseph M. Bruno