1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | Civil Action No. 05-4182 |
| | * | Consolidated Litigation |
| _____ | * | |
| | * | Section "K" |
| PERTAINS TO: | * | |
| RECORD DOCUMENT 3773 | * | New Orleans, Louisiana |
| | * | May 2, 2007 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

HEARING
BEFORE THE HONORABLE STANWOOD R. DUVAL, JR.,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Ashton R. O'Dwyer:          Loyola University New Orleans
                                College of Law
                                By:  DANE CIOLINO, ESQ.
                                7214 St. Charles Ave., Box 901
                                New Orleans, Louisiana 70118

                                Ashton R. O'Dwyer, Jr., Attorney
                                  at Law
                                By:  ASHTON R. O'DWYER, JR., ESQ.
                                One Canal Place, Suite 2670
                                New Orleans, Louisiana 70130

For Plaintiff Liaison           Bruno & Bruno
Counsel:                        By:  JOSEPH M. BRUNO, ESQ.
                                855 Baronne Street
                                New Orleans, Louisiana 70113


Court Audio Operator:           Bonnie G. Hebert

Transcriptionist:               Dorothy Bourgeois
                                c/o U.S. District Court
                                (504) 589-7721

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
                                                                    2


                          I N D E X

                    Direct      Cross      Redirect     Recross
WITNESSES:

Ashton O'Dwyer        4          --          --           --



EXHIBITS:                                    Marked     Received

O'Dwyer 1    Show Cause Order                   4          --

O'Dwyer 2    O'Dwyer Objection                  9          --
```

```
 1                    P R O C E E D I N G S
 2                     (Wednesday, May 2, 2007)
 3              THE CLERK:  This is Civil Action 05-4182, In Re:
 4   Katrina Canal Breaches here on a motion.
 5              MR. CIOLINO:  Good morning, Your Honor; Dane Ciolino
 6   on behalf of Ashton O'Dwyer.
 7              THE COURT:  Good morning, sir.
 8              Just as I'm sure you've seen the order, --
 9              MR. CIOLINO:  Yes, Your Honor.
10              THE COURT:  -- the Court issued the order because we
11   wanted to hear Mr. O'Dwyer's explanation of referring to the
12   Court --
13              MR. CIOLINO:  Yes, Your Honor.
14              THE COURT:  -- as he did in an e-mail, which e-mail
15   is one thing, when it's attached to a pleading --
16              MR. CIOLINO:  Absolutely, Your Honor.
17              THE COURT:  -- that's filed with the Court, it then
18   takes on a different, I mean --
19              MR. CIOLINO:  Absolutely.
20              THE COURT:  I assume Mr. O'Dwyer is free to refer to
21   me or whomever he intends to refer to as an e-mail not attached
22   to the Court as he pleases, but when it's attached -- when it
23   becomes a court pleading, then it is somewhat problematic.
24              MR. CIOLINO:  Absolutely, Your Honor, and we are
25   prepared to go forward with a very brief bit of testimony and
```

1  argument to address the Court.
2           THE COURT:  Go ahead, sir.
3           MR. CIOLINO:  We would call Ashton O'Dwyer to the
4  stand.
5           THE COURT:  Yes, sir.
6                      *   *   *   *   *
7            **ASHTON O'DWYER, JR., WITNESS, SWORN**
8                      *   *   *   *   *
9           MR. CIOLINO:  Your Honor, I'm going to pass up the
10 two exhibits I'm going to use, if you don't mind.
11          THE COURT:  Yes, sir.
12          THE WITNESS:  Good morning.
13          THE COURT:  Good morning.
14          Mr. O'Dwyer has the exhibits as well.
15          THE CLERK:  Would you please state your name for the
16 record?
17          THE WITNESS:  Ashton R. O'Dwyer, Jr.
18                     *   *   *   *   *
19                     DIRECT EXAMINATION
20 BY MR. CIOLINO:
21 Q.   Mr. O'Dwyer, what is your business address?
22 A.   One Canal Place, 365 Canal Street, Suite 2670,
23 New Orleans, 70130.
24 Q.   Mr. O'Dwyer, I have given you two exhibits, one marked
25 O'Dwyer Exhibit Number 1, and one marked O'Dwyer Exhibit

1  Number 2.  The first one, Exhibit 1, is an order compelling you
2  to show cause this morning why sanctions should not be awarded.
3  Do you have that before you?
4  A.    Yes, I do, sir.
5  Q.    Okay.  What I'd like to do, Mr. O'Dwyer, is to give the
6  Court some brief background on the events leading up to this
7  order and I believe those events start back on Thursday,
8  March 15th, when you received an e-mail from Mr. Bruno; is that
9  correct?
10 A.    That is correct, sir.
11 Q.    All right.  What I'd like you to do is turn to Exhibit 2,
12 Page 4, which is a copy of the e-mail that started this chain
13 of events, and if you could just briefly describe for the Court
14 what happened.
15 A.    All right.  Well, prior to getting this e-mail from
16 Mr. Bruno, I was generally familiar with the contents of Case
17 Management Order Number 4, and generally familiar with the
18 Manual for Complex Litigation.  The one thing that leaped out
19 at me when I got Mr. Bruno's e-mail and I read the attached
20 complaints, there were two of them as I recall, one a complaint
21 in the Levee matter which was styled "Superseding Master
22 Consolidated Class Action Complaint," and then the other one
23 obviously referred to the MR-GO case, which was a separate
24 complaint, and the two documents in their styles were notably
25 different.  The Levee complaint included the words

1  "superseding" and "replace," whereas the MR-GO complaint had no
2  such restriction in it.
3      I didn't have a chance right away to read the MR-GO
4  complaint, but I did read the levee complaint and I decided for
5  a number of reasons to send Mr. Bruno, who is Liaison Counsel
6  and is doing an excellent job, my concern about use of the word
7  "superseding," and I think I said "replace" -- I did.
8  Q.   Okay, so you received the e-mail from Mr. Bruno at 10:27
9  in the morning and he wanted a response within an hour,
10 correct?
11 A.   That is correct.
12 Q.   Okay.  Did you respond to him within an hour?
13 A.   I did.  I think I responded to him approximately
14 30 minutes later with the e-mail that is marked Exhibit 2,
15 Page 4.  "Joe, the complaint is well done.  My only
16 constructive comment is that the word "superseding" is
17 misleading and is contradicted by what is stated in the
18 introduction paragraph.  I think the word 'superseding' should
19 be removed and replaced with something like 'court ordered
20 supplemental complaint filed to comply with CMO 4,' or
21 something similar."
22      My instincts at the time told me that the Manual for
23 Complex Litigation generally provided for a master complaint to
24 be filed, but it was to be used as a tool to preserve rights,
25 not take away rights that had already been pleaded by Counsel

1  representing other plaintiffs.  And I think my instincts in
2  that regard were right on.
3       I was also concerned for two other reasons.  One, I had --
4  the next Saturday, this was sent on a Thursday, the next
5  Saturday --
6  Q.   All right, well let's just slow up.
7  A.   All right.
8  Q.   Okay, so on Thursday you wrote back to Mr. Bruno and told
9  him the complaint was well done and expressed some concern
10 about the use of the term "superseding."
11 A.   That is correct.
12 Q.   Now, let's go to Saturday.  There was a meeting at
13 Mr. Bruno's office with some experts on Saturday and you
14 received a copy of the Superseding Consolidated Class Action
15 Complaint, correct?
16 A.   Correct.
17 Q.   All right.  After receiving it what were your thoughts?
18 A.   Well, the first thought I had was that -- and I had this
19 thought on Thursday, it was confirmed on Saturday.  The thought
20 was that I had made allegations in terms of the immunity of the
21 United States.  And by way of background, there are a lot of
22 people that think that this is a one issue case, either the
23 Government has immunity or it doesn't.  If it doesn't have
24 immunity, then we're whistling Dixie.
25      But at the meeting on Saturday, Joe and I had an

1  intellectual conversation in the presence of all the other
2  lawyers and the experts who were in the room.  This was the
3  purpose of the meeting and it was an excellent meeting.  It got
4  us going on the right track.  But we had an honest disagreement
5  about whether or not 702(c) immunity is absolute, or whether
6  the Government cannot commit criminal acts, or otherwise
7  violate the law, and I'm talking about civil law as well as
8  criminal law, and still be entitled to invoke 702(c) immunity.
9  I have made a number of --
10 Q.   All right, I don't mean to cut you off, Mr. O'Dwyer, --
11 A.   All right.
12 Q.   -- but I just kind of want to stick to the --
13 A.   Okay.
14 Q.   -- issues we're dealing with.
15 A.   The only other issue that I had besides the immunity issue
16 -- there were two other issues.  One was Joe is aligned with
17 the State of Louisiana in a litigation that was formerly in
18 Section "K" and was transferred to Judge Feldman with the State
19 of Louisiana.  I have sued the State of Louisiana and various
20 state agencies and Judge Duval's dismissals of my -- dismissal
21 of my action, my causes of action in certain of those cases is
22 on appeal to the Fifth Circuit.  I did not see in the Levee
23 complaint any allegations whatsoever against any State agency
24 including particularly the Louisiana Department of
25 Transportation and Development, which served as the engineering

1   arm of the Orleans Levee District.  That was a concern.
2       The third concern on Thursday had been and was reaffirmed
3   on Saturday when I saw the thickness of the complaint, I just
4   didn't have time to sit down with my pleadings and review word
5   by word and compare that to the new proposed Superseding Master
6   Consolidated Class Action Complaint.
7   Q.  All right.  So, given that you had these concerns about
8   the superseding nature of this master complaint, on Monday
9   after you got back to your office and reviewed the complaint in
10  more detail did you send Mr. Bruno another e-mail?
11  A.  I did.
12  Q.  All right.  Is that e-mail in Exhibit 2 at Page 6?
13  A.  It is.
14  Q.  Okay.  In substance what was the purpose of you sending
15  that e-mail to Mr. Bruno?
16  A.  Well, the first reason I sent it was to reiterate my prior
17  objection, and then I wanted to ask other members of the
18  Plaintiffs' Levee Group whether I was the only person who felt
19  the way I did.  I was trying to see if anybody else thought I
20  was off the wall, or whether the issue that I had raised twice
21  now to Mr. Bruno was a reasonable issue.
22  Q.  All right.
23  A.  I did get two responses back and at least two people
24  agreed with me.
25  Q.  All right.  So, after sending that e-mail out and talking

Case 2:05-cv-04182-SRD-JCW   Document 6508   Filed 07/16/07   Page 10 of 15

O'Dwyer - Direct                                                      10

1  to some other lawyers, on Wednesday, two days later, did you
2  then file a formal notice of objection to the Superseding
3  Master Complaint?
4  A.   Correct.  I thought I had to get something on the record
5  and that I did by filing the objection that Judge Duval has
6  taken offense with.
7  Q.   Okay, and that is O'Dwyer Exhibit Number 2, correct?
8  A.   That is correct.
9  Q.   All right.  Now, in O'Dwyer Exhibit Number 2 you have
10 included as Exhibits 1 and 2 the two e-mails that we've just
11 discussed, correct?
12 A.   Yes, sir.
13 Q.   All right.  What was the purpose of attaching those e-
14 mails to the formal objections?
15 A.   To let the finder of fact know that I had
16 contemporaneously objected to certain language in the
17 Superseding Master Consolidated Class Action Complaint.
18 Q.   So, to show that you had made your objections timely known
19 to Liaison Counsel?
20 A.   Exactly, and that I had solicited input from other members
21 of the Levee Group.
22 Q.   All right.  Before you attached these e-mails to the
23 formal notice of objection did you review them?
24 A.   Honestly, I did not, sir, and I plead guilty to that.
25 Q.   All right.  Included in the attachments, as noted in the

1  Order to Show Cause this morning, is language that says
2  "Neither Judge Duval Daley, nor any committee member has the
3  authority to supersede any pleading I filed on behalf of my
4  clients."  Why did you include that language in that e-mail and
5  attach it to notice?
6  A.  We have to separate the two matters.  One, I put it in the
7  e-mail to Counsel on the Monday following the Saturday meeting
8  for a stupid, inappropriate reason.  It was a juvenile attempt
9  on my part to be clever and to elicit a grin at the expense of
10 the Judge and Ms. Daley.
11 Q.  Did you attach that clever attempt to make a joke to the
12 Notice of Objections intentionally?
13 A.  No, I didn't.  I do not have a death wish.  If I had read
14 the e-mail before attaching it, or asking my secretary to
15 attach it to the Notice of Objection, I would have sanitized it
16 out of respect for the Judge and his spouse.
17 Q.  Did you intend to disrupt the tribunal by doing that?
18 A.  I did not and I don't think I've done anything to
19 intentionally disrupt the tribunal.
20 Q.  How do you feel about doing it now, about attaching that
21 e-mail now?
22 A.  I feel awful about it.  I apologize to the Judge.  I
23 apologize to Ms. Daley.  I'm embarrassed, I'm humiliated, and
24 I'm throwing myself on the mercy of the Court.
25         MR. CIOLINO:  Your Honor, I don't have any more

```
 1  questions.
 2           THE COURT:  Mr. O'Dwyer, you see the person wearing
 3  the robe here?
 4           THE WITNESS:  Yes, Your Honor.
 5           THE COURT:  You know my name?
 6           THE WITNESS:  Yes, Your Honor.
 7           THE COURT:  It's Duval.
 8           THE WITNESS:  I know that.
 9           THE COURT:  A name I'm proud of, sir, just as you're
10  proud of yours.  You talk about honor.  Honor means a lot to
11  me, too.  My family over the period of hundreds of years has I
12  think proven that.  And you know Ms. Daley is my law clerk, of
13  course, correct?
14           THE WITNESS:  Oh, yes, Your Honor.
15           THE COURT:  And that she's also my spouse.
16           THE WITNESS:  Yes, sir.
17           THE COURT:  That has to be in my mind put out of the
18  equation.  She is in my fact my law clerk, from my standpoint.
19  But whether she were or weren't, the Court has one name, Duval.
20  The Court -- the signatures on the decisions are one name,
21  Duval.  To hybridize the name is quite insulting, because it
22  implies, even if you didn't intend it, it implies that the
23  Court is two-headed.  I can promise you, sir, this Court is
24  one-headed, always will be until the head is insufficiently
25  functioning to be a judge, and then hopefully the head will
```

1  resign or go out to pasture.
2          So, the reason that I took umbrage is, one, it's
3  clearly unprofessional and you do know we have a Code of
4  Professionalism.
5          THE WITNESS:  Yes, Your Honor.
6          THE COURT:  It's clearly unprofessional.  Whether it
7  insults my personal honor is something that I have to I think
8  as a Judge put on the side.  You sacrifice certain things when
9  you become a Judge and defending your personal honor is a
10 little more difficult as a Judge.  So, I'm trying to
11 intellectually separate that out and look at this clinically
12 and simply professionally.  And had this e-mail being going
13 about among the lawyers, you know, that's too bad for me.  When
14 it becomes a court pleading, then it's a different matter, as I
15 think you acknowledge.
16          If you're telling me under oath that you did not --
17 you intended to attach the e-mail, but you didn't read it --
18          THE WITNESS:  I didn't remember that it had the snide
19 comment in it that was intended to be clever, but was
20 inappropriate and juvenile.  I do not have a death wish,
21 Your Honor.
22          THE COURT:  Well, if you tell me that's
23 inadvertent --
24          THE WITNESS:  That was inadvertent.
25          THE COURT:  -- I accept that, because that's the only

1  thing that really matters.  You certainly have every right to
2  object to the word "superseding."  You certainly have every
3  right to preserve every claim you made and to make sure you
4  haven't somehow waived it; I understand that completely.  You
5  have every right, frankly, at least outside of the presence of
6  the Court in court to make snide comments about a judge.  It's
7  a free country.  But, when you make them to the Court in court
8  in a court pleading, the Court has to act.  To do nothing, to
9  have not called you in here would have been craven on my part
10 in my opinion.
11             THE WITNESS:  I sincerely apologize, Your Honor.
12             THE COURT:  That's sufficient for me.
13             MR. CIOLINO:  Thank you, Judge.
14             THE COURT:  This hearing is said and done.  The Court
15 accepts Mr. O'Dwyer's testimony that it was inadvertent and,
16 therefore, we all err and I understand.
17             MR. CIOLINO:  Thank you, Your Honor.
18             THE COURT:  I might just point out if this were a
19 personal matter, it would be quite different.
20             All right.
21                      *   *   *   *   *
22                      (Hearing Concluded)
23
24
25

15

**C E R T I F I C A T E**

     I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

**/S/Dorothy M. Bourgeois**          **7/13/07**
 **DOROTHY M. BOURGEOIS**           **DATE**