# State Farm Insurance Companies 

Winter Haven Operations Center
7401 Cypress Gardens Boulevard
Winter Haven, Florida  33888-0007

Date:   May 2, 2007

I, the undersigned, do hereby certify that I am custodian of the records pertaining to the issuance of policies by the Flood Division of State Farm Fire and Casualty of Bloomington, Illinois.

I further certify that the attached policy, number  98-D7-7434-5    is a copy of the policy issued to Katz, Marlene for the property located at 5600 Marcia Ave
New Orleans, LA  70124.

based on our available records.

_____

Rocky Bryan, Underwriting Section Manager

State of Florida
County of Polk

Subscribed and sworn to me before this 2nd   day of  May              , 2007 .



_____
Notary Public

My commission Expires:

October 12, 2009





**State Farm Fire and Casualty Company**
A Stock Company With Home Offices in Bloomington, Illinois

7401 Cypress Gardens Blvd.
Winter Haven, FL 33888-0007

**Named Insured**

22-1374-F692 F D

KATZ, MARLENE
C/O STEVE COMBS
913 W 25TH ST
HOUSTON TX 77008-1825

lllulllullllullullulullulllulululblllullulllduldl

| Policy Number | 98-D7-7434-5 |
| NFIP Policy: | 2022286245 |

| Policy Period | Effective Date | Expiration Date |
|---|---|---|
| 12 Months | APR 29 2005 | APR 29 2006 |

The policy period begins and ends at 12:01 am
standard time at the building premises.

**Loan # 102422**
**Mortgagee**

FNMA MBS EUSTIS POOL 211767
C/O STANDARD MORTGAGE CORP
ISAOA ATIMA
ATTN ESCROW DEPT
701 POYDRAS ST BOX 80
NEW ORLEANS LA 70139-0300

# FLOOD POLICY - DWELLING FORM

Requested By: Policyholder

Issued pursuant to the National Flood Insurance Act of 1968 as amended and so administered by the Federal Emergency
Management Agency.

**Location of Residence Premises**

5600 MARCIA AVE
NEW ORLEANS LA 70124

FLOOD HAZARD ZONE B

| Coverages & Property | Limits of Liability |
|---|---|
| A DWELLING | $ 250,000 |
| B PERSONAL PROPERTY | $ 100,000 |
| C OTHER COVERAGES | $ * |
| D Increased Cost of Compliance | $ * |

*See policy booklet for explanation of coverage.

**Deductibles**

| DWELLING | $ 500 |
| PERS PROPERTY | $ 500 |

In case of loss under this policy, we cover only that
part of the loss over the deductible stated.

Coverage A - Inflation Coverage Index: 161.5
Coverage B - Consumer Price Index: 191.0

| Forms, Options, and Endorsements | | POLICY PREMIUM | $ | 944.00 * |
|---|---|---|---|---|
| FLOOD DWELLING FORM | FP-7920.4 | | | |
| INCREASED COST OF COMPLIANCE | FE-8746 | | | |

Discount Applied:
Community Rating

*INCLUDES $30 FEDERAL POLICY FEE

Your policy consists of this page, any endorsements
and the policy form. PLEASE KEEP THESE TOGETHER.

FP-7060.1C

0089   48   I

N

Prepared   SEP 06 2005

*TONY CEMO*
504-455-1993

555-7020f.2
011242he Rev.01 20(

# Standard Flood Insurance Policy

# *Dwelling Form*

**Issued Pursuant to the National Flood Insurance Act of 1968, or
Any Acts Amendatory Thereof, and Applicable Federal Regulations
in Title 44 of the Code of Federal Regulations, Subchapter B**

# STANDARD FLOOD INSURANCE POLICY

## DWELLING FORM

PLEASE READ THE POLICY CAREFULLY. THE FLOOD INSURANCE PROVIDED IS SUBJECT TO LIMITATIONS, RESTRICTIONS, AND EXCLUSIONS.

THIS POLICY COVERS ONLY:

1. A NON-CONDOMINIUM RESIDENTIAL BUILDING DESIGNED FOR PRINCIPAL USE AS A DWELLING PLACE FOR ONE TO FOUR FAMILIES, OR

2. A SINGLE-FAMILY DWELLING UNIT IN A CONDOMINIUM BUILDING.

## I. AGREEMENT

State Farm Fire and Casualty Company provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations (CFR).

We will pay you for direct physical loss by or from flood to your insured property if you:

1. Have paid the correct premium;

2. Comply with all terms and conditions of this policy; and

3. Have furnished accurate information and statements.

We have the right to review the information you give us at any time and to revise your policy based on our review.

## II. DEFINITIONS

A. In this policy, "you" and "your" refer to the insured(s) shown on the Declarations Page of this policy and your spouse, if a resident of the same household. "Insured(s)" includes: Any mortgagee and loss payee named in the Application and Declarations Page, as well as any other mortgagee or loss payee determined to exist at the time of loss in the order of precedence. "We," "us," and "our" refer to the insurer.

Some definitions are complex because they are provided as they appear in the law or regulations, or result from court cases. The precise definitions are intended to protect you.

Flood, as used in this flood insurance policy, means:

1. A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:

   a. Overflow of inland or tidal waters;

   b. Unusual and rapid accumulation or runoff of surface waters from any source;

   c. Mudflow.

2. Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood as defined in A.1.a. above.

B. The following are the other key definitions that we use in this policy:

1. Act. The National Flood Insurance Act of 1968 and any amendments to it.

2. Actual Cash Value. The cost to replace an insured item of property at the time of loss, less the value of its physical depreciation.

3. Application. The statement made and signed by you or your agent in applying for this policy. The application gives information we use to determine the eligibility of the risk, the kind of policy to be issued, and the correct premium payment. The application is part of this flood insurance policy. For us to issue you a policy, the correct premium payment must accompany the application.

4. Base Flood. A flood having a one percent chance of being equaled or exceeded in any given year.

5.  **Basement.** Any area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides.

6.  **Building.**

    a.  A structure with two or more outside rigid walls and a fully secured roof, that is affixed to a permanent site;

    b.  A manufactured home (a "manufactured home," also known as a mobile home, is a structure: built on a permanent chassis, transported to its site in one or more sections, and affixed to a permanent foundation); or

    c.  A travel trailer without wheels, built on a chassis and affixed to a permanent foundation, that is regulated under the community's floodplain management and building ordinances or laws.

    Building does not mean a gas or liquid storage tank or a recreational vehicle, park trailer, or other similar vehicle, except as described in B.6.c. above.

7.  **Cancellation.** The ending of the insurance coverage provided by this policy before the expiration date.

8.  **Condominium.** That form of ownership of real property in which each unit owner has an undivided interest in common elements.

9.  **Condominium Association.** The entity made up of the unit owners responsible for the maintenance and operation of:

    a.  Common elements owned in undivided shares by unit owners; and

    b.  Other real property in which the unit owners have use rights;

    where membership in the entity is a required condition of unit ownership.

10. **Declarations Page.** A computer-generated summary of information you provided in the application for insurance. The Declarations Page also describes the term of the policy, limits of coverage, and displays the premium and our name. The Declarations Page is a part of this flood insurance policy.

11. **Described Location.** The location where the insured building(s) or personal property are found. The described location is shown on the Declarations Page.

12. **Direct Physical Loss By or From Flood.** Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property.

13. **Dwelling.** A building designed for use as a residence for no more than four families or a single-family unit

in a building under a condominium form of ownership.

14. **Elevated Building.** A building that has no basement and that has its lowest elevated floor raised above ground level by foundation walls, shear walls, posts, piers, pilings, or columns.

15. **Emergency Program.** The initial phase of a community's participation in the National Flood Insurance Program. During this phase, only limited amounts of insurance are available under the Act.

16. **Expense Constant.** A flat charge you must pay on each new or renewal policy to defray the expenses of the Federal Government related to flood insurance.

17. **Federal Policy Fee.** A flat charge you must pay on each new or renewal policy to defray certain administrative expenses incurred in carrying out the National Flood Insurance Program. This fee covers expenses not covered by the expense constant.

18. **Improvements.** Fixtures, alterations, installations, or additions comprising a part of the insured dwelling or the apartment in which you reside.

19. **Mudflow.** A river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water. Other earth movements, such as landslide, slope failure, or a saturated soil mass moving by liquidity down a slope, are not **mudflows.**

20. **National Flood Insurance Program (NFIP).** The program of flood insurance coverage and floodplain management administered under the Act and applicable Federal regulations in Title 44 of the Code of Federal Regulations, Subchapter B.

21. **Policy.** The entire written contract between you and us. It includes:

    a.  This printed form;

    b.  The application and Declarations Page;

    c.  Any endorsement(s) that may be issued; and

    d.  Any renewal certificate indicating that coverage has been instituted for a new policy and new policy term.

    Only one dwelling, which you specifically described in the application, may be insured under this policy.

22. **Pollutants.** Substances that include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

23.  Post-FIRM   Building.   A   building   for   which

26.  Special Flood Hazard Area. An area having special

23. **Post-FIRM Building.** A **building** for which construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map (FIRM), whichever is later.

24. **Probation Premium.** A flat charge you must pay on each new or renewal **policy** issued covering property in a community that the NFIP has placed on probation under the provisions of 44 CFR 59.24.

25. **Regular Program.** The final phase of a community's participation in the **National Flood Insurance Program.** In this phase, a Flood Insurance Rate Map is in effect, and full limits of coverage are available under the **Act.**

26. **Special Flood Hazard Area.** An area having special flood, or mudflow, and/or flood-related erosion hazards, and shown on a Flood Hazard Boundary Map or Flood Insurance Rate Map as Zone A, AO, A1-A30, AE, A99, AH, AR, AR/A, AR/AE, AR/AH, AR/AO, AR/A1-A30, A1-V30, VE, or V1-V30.

27. **Unit.** A single-family unit you own in a **condominium building.**

28. **Valued Policy.** A **policy** in which the insured and the insurer agree on the value of the property insured, that value being payable in the event of a total loss. The Standard Flood Insurance Policy is not a valued **policy.**

## PROPERTY COVERED

### A. COVERAGE A - BUILDING PROPERTY

We insure against direct physical loss by or from flood to:

1. The **dwelling** at the described location, or for a period of 45 days at another location as set forth in III.C.2.b., Property Removed to Safety.

2. Additions and extensions attached to and in contact with the **dwelling** by means of a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof. At your option, additions and extensions connected by any of these methods may be separately insured. Additions and extensions attached to and in contact with the **building** by means of a common interior wall that is not a solid load-bearing wall are always considered part of the **dwelling** and cannot be separately insured.

3. A detached **garage** at the described location. Coverage is limited to no more than 10 percent of the limit of liability on the **dwelling.** Use of this insurance is at your option but reduces the **building** limit of liability. We do not cover any detached **garage** used or held for use for residential (i.e., **dwelling**), business, or farming purposes.

4. Materials and supplies to be used for construction, alteration, or repair of the **dwelling** or a detached **garage** while the materials and supplies are stored in a fully enclosed **building** at the described location or on an adjacent property.

5. A **building** under construction, alteration, or repair at the described location.

    a. If the structure is not yet walled or roofed as described in the definition for building (see II.B. 6.a.) then coverage applies:

    (1) Only while such work is in progress; or

    (2) If such work is halted, only for a period of up to 90 continuous days thereafter.

    b. However, coverage does not apply until the **building** is walled and roofed if the lowest floor, including the basement floor, of a non-elevated **building** or the lowest elevated floor of an **elevated building** is:

    (1) Below the **base flood** elevation in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO; or

    (2) Below the **base flood** elevation adjusted to include the effect of wave action in Zones VE or V1-V30.

    The lowest floor levels are based on the bottom of the lowest horizontal structural member of the floor in Zones VE or V1-V30 and the top of the floor in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO.

6. A manufactured home or a travel trailer as described in the Definitions section (see II.B.6.b. and II.B.6.c.).

    If the **manufactured home** or **travel trailer** is in a **special flood hazard area,** it must be anchored in the following manner at the time of the loss:

    a. By over-the-top or frame ties to ground anchors; or

    b. In accordance with the manufacturer's specifications; or

    c. In compliance with the **community's** floodplain management requirements;

unless it has been continuously insured by the NFIP at the same **described location** since September 30, 1982.

7. The following items of property which are covered under Coverage A only:

a. Awnings and canopies;
b. Blinds;
c. Built-in dishwashers;
d. Built-in microwave ovens;
e. Carpet permanently installed over unfinished flooring;
f. Central air conditioners;
g. Elevator equipment;
h. Fire sprinkler systems;
i. Walk-in freezers;
j. Furnaces and radiators;
k. Garbage disposal units;
l. Hot water heaters, including solar water heaters;
m. Light fixtures;
n. Outdoor antennas and aerials fastened to **buildings**;
o. Permanently installed cupboards, bookcases, cabinets, paneling, and wallpaper;
p. Plumbing fixtures;
q. Pumps and machinery for operating pumps;
r. Ranges, cooking stoves, and ovens;
s. Refrigerators; and
t. Wall mirrors, permanently installed.

8. Items of property in a **building** enclosure below the lowest elevated floor of an **elevated post-FIRM building** located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a **basement**, regardless of the zone. Coverage is limited to the following:

a. Any of the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

   (1) Central air conditioners;
   (2) Cisterns and the water in them;
   (3) Drywall for walls and ceilings in a **basement** and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing;
   (4) Electrical junction and circuit breaker boxes;
   (5) Electrical outlets and switches;
   (6) Elevators, dumbwaiters, and related equipment, except for related equipment installed below the **base flood** elevation after September 30, 1987;
   (7) Fuel tanks and the fuel in them;
   (8) Furnaces and hot water heaters;
   (9) Heat pumps;
   (10) Nonflammable insulation in a **basement**;
   (11) Pumps and tanks used in solar energy systems;
   (12) Stairways and staircases attached to the **building**, not separated from it by elevated walkways;
   (13) Sump pumps;

(14) Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system;
(15) Well water tanks and pumps;
(16) Required utility connections for any item in This list; and
(17) Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a building.

b. Clean-up.

B. **COVERAGE B - PERSONAL PROPERTY**

1. If you have purchased personal property coverage, we insure against **direct physical loss by or from flood** to personal property inside a **building** at the **described location**, if:

a. The property is owned by you or your household family members; and

b. At your option, the property is owned by guests or servants.

Personal property is also covered for a period of 45 days at another location as set forth in III.C.2.b., Property Removed to Safety.

Personal property in a **building** that is not fully enclosed must be secured to prevent flotation out of the **building**. If the personal property does float out during a flood, it will be conclusively presumed that it was not reasonably secured. In that case there is no coverage for such property.

2. Coverage for personal property includes the following property, subject to **B.1.** above, which is covered under Coverage B only:

a. Air conditioning units, portable or window type;
b. Carpets, not permanently installed, over unfinished flooring;
c. Carpets over finished flooring;
d. Clothes washers and dryers;
e. "Cook-out" grills;
f. Food freezers, other than walk-in, and food in any freezer; and
g. Portable microwave ovens and portable dishwashers.

3. Coverage for items of property in a **building** enclosure below the lowest elevated floor of an **elevated post-FIRM building** located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE; or in a **basement**, regardless of the zone, is limited to the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

a. Air conditioning units, portable or window type;
b. Clothes washers and dryers; and
c. Food freezers, other than walk-in, and food in any freezer.

4. If you are a tenant and have insured personal property under Coverage B in this **policy**, we will cover such property, including your cooking stove or range and refrigerator. The **policy** will also cover **improvements** made or acquired solely at your expense in the **dwelling** or apartment in which you reside, but for not more than 10 percent of the limit of liability shown for personal property on the **Declarations Page.** Use of this insurance is at your option but reduces the personal property limit of liability.

5. If you are the owner of a **unit** and have insured personal property under Coverage B in this **policy**, we will also cover your interior walls, floor, and ceiling (not otherwise covered under a flood insurance **policy** purchased by your **condominium association**) for not more than 10 percent of the limit of liability shown for personal property on the **Declarations Page.** Use of this insurance is at your option but reduces the personal property limit of liability.

6. **Special Limits.** We will pay no more than $2,500 for any one loss to one or more of the following kinds of personal property:

   a. Artwork, photographs, collectibles, or memorabilia, including but not limited to, porcelain or other figures, and sports cards;

   b. Rare books or autographed items;

   c. Jewelry, watches, precious and semiprecious stones, or articles of gold, silver, or platinum;

   d. Furs or any article containing fur which represents its principal value; or

   e. Personal property used in any business.

7. We will pay only for the functional value of antiques.

## C. COVERAGE C - OTHER COVERAGES

1. **Debris Removal**

   a. We will pay the expense to remove non-owned debris on or in insured property and owned debris anywhere.

   b. If you or a member of your household perform the removal work, the value of your work will be based on the Federal minimum wage.

   c. This coverage does not increase the Coverage A or Coverage B limit of liability.

2. **Loss Avoidance Measures**

   a. **Sandbags, Supplies, and Labor**

      (1) We will pay up to $1,000 for costs you incur to protect the insured **building** from a **flood** or imminent danger of **flood**, for the following:

         (a) Your reasonable expenses to buy:

            (i) Sandbags, including sand to fill them;

            (ii) Fill for temporary levees;

            (iii) Pumps; and

            (iv) Plastic sheeting and lumber used in connection with these items.

         (b) The value of work, at the Federal minimum wage, that you or a member of your household perform.

      (2) This coverage for Sandbags, Supplies, and Labor applies only if damage to insured property by or from **flood** is imminent, and the threat of **flood** damage is apparent enough to lead a person of common prudence to anticipate **flood** damage. One of the following must also occur:

         (a) A general and temporary condition of flooding in the area near the described **location** must occur, even if the **flood** does not reach the insured **building**; or

         (b) A legally authorized official must issue an evacuation order or other civil order for the community in which the insured **building** is located calling for measures to preserve life and property from the peril of **flood**.

      This coverage does not increase the Coverage A or Coverage B limit of liability.

   b. **Property Removed to Safety**

      (1) We will pay up to $1,000 for the reasonable expenses you incur to move insured property to a place other than the described **location** that contains the property in order to protect it from **flood** or the imminent danger of **flood**;

Reasonable expenses include the value of work, at the Federal minimum wage, that you or a member of your household perform.

(2) If you move insured property to a location other than the **described location** that contains the property, in order to protect it from **flood** or the imminent danger of **flood**, we will cover such property while at that location for a period of 45 consecutive days from the date you begin to move it there. The personal property that is moved must be placed in a fully enclosed **building** or otherwise reasonably protected from the elements.

Any property removed, including a moveable home described in **II.B.6.b.** and **c.**, must be placed above ground level or outside of the **special flood hazard area.**

This coverage does not increase the Coverage A or Coverage B limit of liability.

3. Condominium Loss Assessments:

a. If this policy insures a **unit**, we will pay, up to the Coverage A limit of liability, your share of loss assessments charged against you by the **condominium association** in accordance with the **condominium association's** articles of association, declarations and your deed.

The assessment must be made as a result of **direct physical loss by or from flood** during the **policy** term, to the **building's** common elements.

b. We will not pay any loss assessment charged against you:

(1) And the **condominium association** by any governmental body;

(2) That results from a deductible under the insurance purchased by the **condominium association** insuring common elements;

(3) That results from a loss to personal property, including contents of a **condominium building;**

(4) That results from a loss sustained by the **condominium association** that was not reimbursed under a flood insurance **policy** written in the name of the association under the Act because the **building** was not, at the time of loss, insured for an amount equal to the lesser of:

(a) 80 percent or more of its full replacement cost; or

(b) The maximum amount of insurance permitted under the Act;

(5) To the extent that payment under this **policy** for a **condominium building** loss, in combination with payments under any other NFIP **policies** for the same **building** loss, exceeds the maximum amount of insurance permitted under the Act for that kind of **building;** or

(6) To the extent that payment under this **policy** for a **condominium building** loss, in combination with any recovery available to you as a tenant in common under any NFIP **condominium association policies** for the same **building** loss, exceeds the amount of insurance permitted under the Act for a single-family dwelling.

Loss assessment coverage does not increase the Coverage A limit of liability.

D. COVERAGE D - INCREASED COST OF COMPLIANCE

1. General

This **policy** pays you to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering **flood** damage. Compliance activities eligible for payment are: elevation, floodproofing, relocation, or demolition (or any combination of these activities) of your structure. Eligible floodproofing activities are limited to:

a. Nonresidential structures.

b. Residential structures with **basements** that satisfy the Federal Emergency Management Agency's (FEMA's) standards published in the Code of Federal Regulations [44 CFR 60.6 (b) or (c)].

2. Limit of Liability

We will pay you up to $20,000 under this Coverage D - Increased Cost of Compliance, which only applies to **policies** with **building** coverage (Coverage A). Our payment of claims under Coverage D is in addition to the amount of coverage which you selected on the **application** and which appears on the Declarations Page. But the maximum you can collect under this **policy** for both Coverage A - Building Property and Coverage D - Increased Cost of Compliance cannot exceed the maximum permitted under the Act. We do not charge a separate deductible for a claim under Coverage D.

3.  **Eligibility**

    a.  A structure covered under Coverage A - Building Property sustaining a loss caused by a **flood** as defined by this **policy** must:

        (1) Be a "repetitive loss structure." A repetitive loss structure is one that meets the following conditions:

            (a) The structure is covered by a contract of flood insurance issued under the NFIP.

            (b) The structure has suffered **flood** damage on two occasions during a 10-year period which ends on the date of the second loss.

            (c) The cost to repair the **flood** damage, on average, equaled or exceeded 25 percent of the market value of the structure at the time of each flood loss.

            (d) In addition to the current claim, the NFIP must have paid the previous qualifying claim, and the State or community must have a cumulative, substantial damage provision or repetitive loss provision in its floodplain management law or ordinance being enforced against the structure; or

        (2) Be a structure that has had **flood** damage in which the cost to repair equals or exceeds 50 percent of the market value of the structure at the time of the **flood**. The State or community must have a substantial damage provision in its floodplain management law or ordinance being enforced against the structure.

    b.  This Coverage D pays you to comply with State or local floodplain management laws or ordinances that meet the minimum standards of the **National Flood Insurance Program** found in the Code of Federal Regulations at 44 CFR 60.3. We pay for compliance activities that exceed these standards under these conditions:

        (1) **3.a.(1)** above:

        (2) Elevation or floodproofing in any risk zone to preliminary or advisory base **flood** elevations provided by FEMA which the State or local government has adopted and is enforcing for **flood**-damaged structures in such areas. (This includes compliance activities in B, C, X, or D zones which are being changed to zones with base flood elevations. This also includes compliance activities in zones where base **flood**

elevations are being increased, and a **flood**-damaged structure must comply with the higher advisory base **flood** elevation.) Increased Cost of Compliance coverage does not apply to situations in B, C, X, or D zones where the community has derived its own elevations and is enforcing elevation or floodproofing requirements for flood-damaged structures to elevations derived solely by the community.

        (3) Elevation or floodproofing above the base **flood** elevation to meet State or local "freeboard" requirements, i.e., that a structure must be elevated above the base **flood** elevation.

    c.  Under the minimum NFIP criteria at 44 CFR 60.3 (b)(4), States and communities must require the elevation or floodproofing of structures in unnumbered A zones to the base **flood** elevation where elevation data is obtained from a Federal, State, or other source. Such compliance activities are also eligible for Coverage D.

    d.  This coverage will also pay for the incremental cost, after demolition or relocation, of elevating or floodproofing a structure during its rebuilding at the same or another site to meet State or local floodplain management laws or ordinances, subject to Exclusion D.5.g. below.

    e.  This coverage will also pay to bring a **flood**-damaged structure into compliance with State or local floodplain management laws or ordinances even if the structure had received a variance before the present loss from the applicable floodplain management requirements.

4.  **Conditions**

    a.  When a structure covered under Coverage A - Building Property sustains a loss caused by a **flood**, our payment for the loss under this Coverage D will be for the increased cost to elevate, floodproof, relocate, or demolish (or any combination of these activities) caused by the enforcement of current State or local floodplain management ordinances or laws. Our payment for eligible demolition activities will be for the cost to demolish and clear the site of the **building** debris or a portion thereof caused by the enforcement of current State or local floodplain management ordinances or laws. Eligible activities for the cost of clearing the site will include those necessary to discontinue utility service to the site and ensure proper abandonment of on-site utilities.

    b.  When the **building** is repaired or rebuilt, it must be intended for the same occupancy as the present **building** unless otherwise required by current floodplain management ordinances or laws.

5. **Exclusions**

Under this Coverage D - Increased Cost of Compliance, we will not pay for:

a. The cost to comply with any floodplain management law or ordinance in communities participating in the **Emergency Program**;

b. The cost associated with enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**;

c. The loss in value to any insured **building** or other structure due to the requirements of any ordinance or law.

d. The loss in residual value of the undamaged portion of a **building** demolished as a consequence of enforcement of any State or local floodplain management law or ordinance.

e. Any Increased Cost of Compliance under this Coverage D:

(1) Until the **building** is elevated, floodproofed, demolished, or relocated on the same or to another premises; and

(2) Unless the **building** is elevated, floodproofed, demolished, or relocated as soon as reasonably possible after the loss, not to exceed 2 years (see 3.b.).

f. Any code upgrade requirements, e.g., plumbing or electrical wiring, not specifically related to the State or local floodplain management law or ordinance.

g. Any compliance activities needed to bring additions or **improvements** made after the loss occurred into compliance with State or local floodplain management laws or ordinances.

h. Loss due to any ordinance or law that you were required to comply with before the current loss.

i. Any rebuilding activity to standards that do not meet the **NFIP's** minimum requirements. This includes any situation where you have received from the State or community a variance in connection with the current **flood** loss to rebuild the property to an elevation below the **base flood** elevation.

j. Increased Cost of Compliance for a garage or carport.

k. Any structure insured under an NFIP Group Flood Insurance Policy.

l. Assessments made by a **condominium association** on individual condominium unit owners to pay increased costs of repairing commonly owned **buildings** after a **flood** in compliance with State or local floodplain management ordinances or laws.

6. **Other Provisions**

a. Increased Cost of Compliance coverage will not be included in the calculation to determine whether coverage meets the 80 percent insurance-to-value requirement for replacement cost coverage as set forth in **VII. General Conditions, V. Loss Settlement.**

b. All other conditions and provisions of this policy apply.

## IV. PROPERTY NOT COVERED

We do not cover any of the following property:

1. Personal property not inside the fully enclosed **building**;

2. A **building**, and personal property in it, located entirely in, on, or over water or seaward of mean high tide if it was constructed or substantially improved after September 30, 1982;

3. Open structures, including a **building** used as a boathouse or any structure or **building** into which boats are floated, and personal property located in, on, or over water;

4. Recreational vehicles other than travel trailers described in II.B.6.c., whether affixed to a permanent foundation or on wheels;

5. Self-propelled vehicles or machines, including their parts and equipment. However, we do cover self-propelled vehicles or machines not licensed for use on public roads that are:

a. Used mainly to service the **described location**, or

b. Designed and used to assist handicapped persons,

while the vehicles or machines are inside a **building** at the **described location**;

6. Land, land values, lawns, trees, shrubs, plants, growing crops, or animals;

7. Accounts, bills, coins, currency, deeds, evidences of debt, medals, money, scrip, stored value cards, postage stamps, securities, bullion, manuscripts, or other valuable papers;

8. Underground structures and equipment, including wells, septic tanks, and septic systems;

9. Those portions of walks, walkways, decks, driveways, patios, and other surfaces, all whether protected by a roof or not, located outside the perimeter, exterior walls of the insured building or the building in which the insured unit is located;

10. Containers, including related equipment, such as, but not limited to, tanks containing gases or liquids;

11. **Buildings or units** and all their contents if more than 49 percent of the **actual cash value of the building or unit** is below ground, unless the lowest level is at or above the **base flood** elevation and is below ground by reason of earth having been used as insulation material in conjunction with energy efficient building techniques;

12. Fences, retaining walls, seawalls, bulkheads, wharves, piers, bridges, and docks;

13. Aircraft or watercraft, or their furnishings and equipment;

14. Hot tubs and spas that are not bathroom fixtures, and swimming pools, and their equipment such as, but not limited to, heaters, filters, pumps, and pipes, wherever located;

15. Property not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act and the Coastal Barrier Improvement Act and amendments to these acts;

16. Personal property you own in common with other **unit owners** comprising the membership of a **condominium association.**

## V. EXCLUSIONS

A. We only provide coverage for **direct physical loss by or from flood,** which means that we do not pay you for:

1. Loss of revenue or profits;

2. Loss of access to the insured property or described **location;**

3. Loss of use of the insured property or described **location;**

4. Loss from interruption of business or production;

5. Any additional living expenses incurred while the insured **building** is being repaired or is unable to be occupied for any reason;

6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities that we describe in Coverage **D** - Increased Cost of Compliance; or

7. Any other economic loss.

B. We do not insure a loss directly or indirectly caused by a **flood** that is already in progress at the time and date:

1. The **policy** term begins; or

2. Coverage is added at your request.

C. We do not insure for loss to property caused directly by earth movement even if the earth movement is

caused by **flood.** Some examples of earth movement that we do not cover are:

1. Earthquake;

2. Landslide;

3. Land subsidence;

4. Sinkholes;

5. Destabilization or movement of land that results from accumulation of water in subsurface land area; or

6. Gradual erosion.

We do, however, pay for losses from **mudflow** and land subsidence as a result of erosion that are specifically covered under our definition of **flood** (see II.A.1.c. and II.A.2.).

D. We do not insure for direct physical loss caused directly or indirectly by any of the following:

1. The pressure or weight of ice;

2. Freezing or thawing;

3. Rain, snow, sleet, hail, or water spray;

4. Water, moisture, mildew, or mold damage that results primarily from any condition:

   a. Substantially confined to the **dwelling;** or

   b. That is within your control, including but not limited to:

      (1) Design, structural, or mechanical defects;

(2) Failure, stoppage, or breakage of water or sewer lines, drains, pumps, fixtures, or equipment; or

(3) Failure to inspect and maintain the property after a flood recedes;

5. Water or waterborne material that:

   a. Backs up through sewers or drains;

   b. Discharges or overflows from a sump, sump pump, or related equipment; or

   c. Seeps or leaks on or through the covered property;

   unless there is a **flood** in the area and the **flood** is the proximate cause of the sewer or drain backup, sump pump discharge or overflow, or seepage of water;

6. The pressure or weight of water unless there is a **flood** in the area and the **flood** is the proximate cause of the damage from the pressure or weight of water;

7. Power, heating, or cooling failure unless the failure results from **direct physical loss by or from flood** to power, heating, or cooling equipment on the **described location**;

8. Theft, fire, explosion, wind, or windstorm;

9. Anything you or any member of your household do or conspire to do to cause loss by **flood** deliberately; or

10. Alteration of the insured property that significantly increases the risk of flooding.

E. We do not insure for loss to any **building** or personal property located on land leased from the Federal Government, arising from or incident to the flooding of the land by the Federal Government, where the lease expressly holds the Federal Government harmless under flood insurance issued under any Federal Government program.

F. We do not pay for the testing for or monitoring of **pollutants** unless required by law or ordinance.

## VI. DEDUCTIBLES

A. When a loss is covered under this policy, we will pay only that part of the loss that exceeds your deductible amount, subject to the limit of liability that applies. The deductible amount is shown on the **Declarations Page**.

   However, when a **building** under construction, alteration, or repair does not have at least two rigid exterior walls and a fully secured roof at the time of loss, your deductible amount will be two times the deductible that would otherwise apply to a completed **building**.

B. In each loss from **flood**, separate deductibles apply to the **building** and personal property insured by this policy.

C. The deductible does not apply to:

1. III.C.2. Loss Avoidance Measures;

2. III.C.3. Condominium Loss Assessments; or

3. III.D. Increased Cost of Compliance.

## VII. GENERAL CONDITIONS

A. **Pairs and Sets**

In case of loss to an article that is part of a pair or set, we will have the option of paying you:

1. An amount equal to the cost of replacing the lost, damaged, or destroyed article, minus its depreciation; or

2. The amount that represents the fair proportion of the total value of the pair or set that the lost, damaged, or destroyed article bears to the pair or set.

B. **Concealment or Fraud and Policy Voidance**

1. With respect to all insureds under this **policy**, this **policy**:

   a. Is void;

   b. Has no legal force or effect;

   c. Cannot be renewed; and

   d. Cannot be replaced by a new NFIP **policy**;

if, before or after a loss, you or any other insured or your agent have at any time:

  (1) Intentionally concealed or misrepresented any material fact or circumstance;

  (2) Engaged in fraudulent conduct; or

  (3) Made false statements;

relating to this **policy** or any other NFIP insurance.

2. This **policy** will be void as of the date the wrongful acts described in B.1. above were committed.

3. Fines, civil penalties, and imprisonment under applicable Federal laws may also apply to the acts of fraud or concealment described above.

4. This **policy** is also void for reasons other than fraud, misrepresentation, or wrongful act. This **policy** is void from its inception and has no legal force under the following conditions:

  a. If the property is located in a community that was not participating in the NFIP on the **policy's** inception date and did not join or reenter the program during the **policy** term and before the loss occurred; or

  b. If the property listed on the **application** is otherwise not eligible for coverage under the NFIP.

C. **Other Insurance**

1. If a loss covered by this **policy** is also covered by other insurance that includes **flood** coverage not issued under the **Act**, we will not pay more than the amount of insurance that you are entitled to for lost, damaged, or destroyed property insured under this **policy** subject to the following:

  a. We will pay only the proportion of the loss that the amount of insurance that applies under this **policy** bears to the total amount of insurance covering the loss, unless C.1.b. or c. immediately below applies.

  b. If the other policy has a provision stating that it is excess insurance, this **policy** will be primary.

  c. This **policy** will be primary (but subject to its own deductible) up to the deductible in the other **flood** policy (except another policy as described in C.1.b. above). When the other deductible amount is reached, this **policy** will participate in the same proportion that the amount of insurance under this **policy** bears to the total amount of both policies, for the remainder of the loss.

2. If there is other insurance in the name of your **condominium association** covering the same property covered by this **policy**, then this **policy** will be in excess over the other insurance.

D. **Amendments, Waivers, Assignment**

This **policy** cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action that we take under the terms of this **policy** constitutes a waiver of any of our rights. You may assign this **policy** in writing when you transfer title of your property to someone else, except under these conditions:

1. When this **policy** covers only personal property; or

2. When this **policy** covers a structure during the course of construction.

E. **Cancellation of Policy by You**

1. You may cancel this **policy** in accordance with the applicable rules and regulations of the NFIP.

2. If you cancel this **policy**, you may be entitled to a full or partial refund of premium also under the applicable rules and regulations of the NFIP.

F. **Nonrenewal of the Policy by Us**

Your **policy** will not be renewed:

1. If the community where your covered property is located stops participating in the NFIP; or

2. If your **building** has been declared ineligible under Section 1316 of the **Act**.

G. **Reduction and Reformation of Coverage**

1. If the premium we received from you was not enough to buy the kind and amount of coverage you requested, we will provide only the amount of coverage that can be purchased for the premium payment we received.

2. The **policy** can be reformed to increase the amount of coverage resulting from the reduction described in G.1. above to the amount you requested as follows:

  a. Discovery of insufficient premium or incomplete rating information before a loss.

    (1) If we discover before you have a **flood** loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current **policy** term (or that portion of the current **policy** term following any endorsement changing

the amount of coverage). If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the **policy** to increase the amount of coverage to the originally requested amount effective to the beginning of the current **policy** term (or subsequent date of any endorsement changing the amount of coverage).

(2) If we determine before you have a **flood** loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information within 60 days of our request. Once we determine the amount of additional premium for the current **policy** term, we will follow the procedure in **G.2.a.(1)** above.

(3) If we do not receive the additional premium (or additional information) by the date it is due, the amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

b. Discovery of insufficient premium or incomplete rating information after a loss.

(1) If we discover after you have a **flood** loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current and the prior **policy** terms. If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the **policy** to increase the amount of coverage to the originally requested amount effective to the beginning of the prior **policy** term.

(2) If we discover after you have a **flood** loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information before your claim can be paid. Once we determine the amount of additional premium for the current and prior **policy** terms, we will follow the procedure in **G.2.b.(1)** above.

(3) If we do not receive the additional premium by the date it is due, your **flood** insurance claim will be settled based on the reduced amount of coverage. The amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

3. However, if we find that you or your agent intentionally did not tell us, or falsified, any important fact or circumstance or did anything fraudulent relating to this insurance, the provisions of Condition B. Concealment or Fraud and Policy Voidance apply.

H. **Policy Renewal**

1. This **policy** will expire at 12:01 a.m. on the last day of the **policy** term.

2. We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.

3. If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:

   a. If you or your agent notified us, not later than 1 year after the date on which the payment of the renewal premium was due, of nonreceipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.

   b. If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the **policy**. In that case, the **policy** will remain an expired **policy** as of the expiration date shown on the **Declarations Page**.

4. In connection with the renewal of this **policy**, we may ask you during the **policy** term to recertify, on a Recertification Questionnaire we will provide to you, the rating information used to rate your most recent **application** for or renewal of insurance.

I. **Conditions Suspending or Restricting Insurance**

We are not liable for loss that occurs while there is a hazard that is increased by any means within your control or knowledge.

J. **Requirements in Case of Loss**

In case of a **flood** loss to insured property, you must:

1. Give prompt written notice to us;

2. As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;

3. Prepare an inventory of damaged property showing the quantity, description, **actual cash value**, and amount of loss. Attach all bills, receipts, and related documents;

4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the **policy** signed and sworn to by you, and which furnishes us with the following information:

    a. The date and time of loss;

    b. A brief explanation of how the loss happened;

    c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;

    d. Details of any other insurance that may cover the loss;

    e. Changes in title or occupancy of the covered property during the term of the **policy**;

    f. Specifications of damaged **buildings** and detailed repair estimates;

    g. Names of mortgagees or anyone else having a lien, charge, or claim against the covered property;

    h. Details about who occupied any insured **building** at the time of loss and for what purpose; and

    i. The inventory of damaged personal property described in **J.3.** above.

5. In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.

6. You must cooperate with the adjuster or representative in the investigation of the claim.

7. The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

8. We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.

9. At our option, we may accept the adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages you sustained. You must sign the adjuster's report. At our option, we may require you to swear to the report.

K. Our Options After a Loss

Options we may, in our sole discretion, exercise after loss include the following:

1. At such reasonable times and places that we may designate, you must:

    a. Show us or our representative the damaged property;

    b. Submit to examination under oath, while not in the presence of another insured, and sign the same; and

    c. Permit us to examine and make extracts and copies of:

        (1) Any policies of property insurance insuring you against loss and the deed establishing your ownership of the insured real property;

        (2) **Condominium association** documents including the Declarations of the **condominium**, its Articles of Association or Incorporation, Bylaws, rules and regulations, and other relevant documents if you are a **unit** owner in a **condominium building**; and

        (3) All books of accounts, bills, invoices and other vouchers, or certified copies pertaining to the damaged property if the originals are lost.

2. We may request, in writing, that you furnish us with a complete inventory of the lost, damaged, or destroyed property, including:

    a. Quantities and costs;

    b. **Actual cash values** or **replacement cost** (whichever is appropriate);

    c. Amounts of loss claimed;

    d. Any written plans and specifications for repair of the damaged property that you can reasonably make available to us; and

    e. Evidence that prior **flood** damage has been repaired.

3. If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may:

    a. Repair, rebuild, or replace any part of the lost, damaged, or destroyed property with material or property of like kind and quality or its functional equivalent; and

    b. Take all or any part of the damaged property at the value we agree upon or its appraised value.

L. No Benefit to Bailee

No person or organization, other than you, having custody of covered property will benefit from this insurance.

**M. Loss Payment**

1. We will adjust all losses with you. We will pay you unless some other person or entity is named in the **policy** or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss (or within 90 days after the insurance adjuster files an adjuster's report signed and sworn to by you in lieu of a proof of loss) and:

   a. We reach an agreement with you;

   b. There is an entry of a final judgment; or

   c. There is a filing of an appraisal award with us, as provided in VII.P.

2. If we reject your proof of loss in whole or in part you may:

   a. Accept our denial of your claim;

   b. Exercise your rights under this **policy**; or

   c. File an amended proof of loss, as long as it is filed within 60 days of the date of the loss.

**N. Abandonment**

You may not abandon to us damaged or undamaged property insured under this **policy**.

**O. Salvage**

We may permit you to keep damaged insured property after a loss, and we will reduce the amount of the loss proceeds payable to you under the **policy** by the value of the salvage.

**P. Appraisal**

If you and we fail to agree on the **actual cash value** or, if applicable, replacement cost of your damaged property to settle upon the amount of loss, then either may demand an appraisal of the loss. In this event, you and we will each choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the State where the covered property is located. The appraisers will separately state the **actual cash value**, the replacement cost, and the amount of loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of **actual cash value** and loss, or if it applies, the replacement cost and loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

**Q. Mortgage Clause**

The word "mortgagee" includes trustee.

Any loss payable under Coverage A - Building Property will be paid to any mortgagee of whom we have actual notice as well as any other mortgagee or loss payee determined to exist at the time of loss, and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

1. Notifies us of any change in the ownership or occupancy, or substantial change in risk of which the mortgagee is aware;

2. Pays any premium due under this **policy** on demand if you have neglected to pay the premium; and

3. Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so.

All of the terms of this **policy** apply to the mortgagee.

The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the **building**.

If we decide to cancel or not renew this **policy**, it will continue in effect for the benefit of the mortgagee only for 30 days after we notify the mortgagee of the cancellation or nonrenewal.

If we pay the mortgagee for any loss and deny payment to you, we are subrogated to all the rights of the mortgagee granted under the mortgage on the property. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**R. Suit Against Us**

You may not sue us to recover money under this **policy** unless you have complied with all the requirements of the **policy**. If you do sue, you must start the suit within 1 year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss. This requirement applies to any claim that you may have under this **policy** and to any dispute that you may have arising out of the handling of any claim under the **policy**.

**S. Subrogation**

Whenever we make a payment for a loss under this **policy**, we are subrogated to your right to recover for that loss from any other person. That means that your right to

recover for a loss that was partly or totally caused by someone else is automatically transferred to us, to the extent that we have paid you for the loss. We may require you to acknowledge this transfer in writing. After the loss, you may not give up our right to recover this money or do anything that would prevent us from recovering it. If you make any claim against any person who caused your loss and recover any money, you must pay us back first before you may keep any of that money.

**T.   Continuous Lake Flooding**

1.   If your insured **building** has been flooded by rising lake waters continuously for 90 days or more and it appears reasonably certain that a continuation of this flooding will result in a covered loss to the insured **building** equal to or greater than the **building policy** limits plus the deductible or the maximum payable under the **policy** for any one **building** loss, we will pay you the lesser of these two amounts without waiting for the further damage to occur if you sign a release agreeing:

   a.   To make no further claim under this **policy**;

   b.   Not to seek renewal of this **policy**;

   c.   Not to apply for any flood insurance under the **Act** for property at the **described location**; and

   d.   Not to seek a premium refund for current or prior terms.

   If the **policy** term ends before the insured **building** has been flooded continuously for 90 days, the provisions of this paragraph T.1. will apply when the insured **building** suffers a covered loss before the **policy** term ends.

2.   If your insured **building** is subject to continuous lake flooding from a closed basin lake, you may elect to file a claim under either paragraph T.1. above or paragraph T.2. (A "closed basin lake" is a natural lake from which water leaves primarily through evaporation and whose surface area now exceeds or has exceeded 1 square mile at any time in the recorded past. Most of the nation's closed basin lakes are in the western half of the United States, where annual evaporation exceeds annual precipitation and where lake levels and surface areas are subject to considerable fluctuation due to wide variations in the climate. These lakes may overtop their basins on rare occasions.) Under this paragraph T.2. we will pay your claim as if the **building** is a total loss even though it has not been continuously inundated for 90 days, subject to the following conditions:

   a.   Lake **flood** waters must damage or imminently threaten to damage your **building**.

   b.   Before approval of your claim, you must:

(1)   Agree to a claim payment that reflects your buying back the salvage on a negotiated basis; and

(2)   Grant the conservation easement described in FEMA's "Policy Guidance for Closed Basin Lakes," to be recorded in the office of the local recorder of deeds. FEMA, in consultation with the community in which the property is located, will identify on a map an area or areas of special consideration (ASC) in which there is a potential for **flood** damage from continuous lake flooding. FEMA will give the community the agreed-upon map showing the ASC. This easement will only apply to that portion of the property in the ASC. It will allow certain agricultural and recreational uses of the land. The only structures that it will allow on any portion of the property within the ASC are certain simple agricultural and recreational structures. If any of these allowable structures are insurable buildings under the NFIP and are insured under the NFIP, they will not be eligible for the benefits of this paragraph T.2. If a U.S. Army Corps of Engineers certified **flood** control project or otherwise certified **flood** control project later protects the property, FEMA will, upon request, amend the ASC to remove areas protected by those projects. The restrictions of the easement will then no longer apply to any portion of the property removed from the ASC; and

(3)   Comply with paragraphs T.1.a. through T.1.d. above.

   c.   Within 90 days of approval of your claim, you must move your **building** to a new location outside the ASC. FEMA will give you an additional 30 days to move if you show that there is sufficient reason to extend the time.

   d.   Before the final payment of your claim, you must acquire an elevation certificate and a floodplain development permit from the local floodplain administrator for the new location of your **building**.

   e.   Before the approval of your claim, the community having jurisdiction over your **building** must:

(1)   Adopt a permanent land use ordinance, or a temporary moratorium for a period not to exceed 6 months to be followed immediately by a permanent land use ordinance, that is consistent with the provisions specified in the easement required in paragraph T.2.b. above.

(2)   Agree to declare and report any violations of this ordinance to FEMA so that under Section 1316 of the National Flood Insurance Act of 1968, as amended, flood insurance to the **building** can be denied; and

(3) Agree to maintain as deed-restricted, for purposes compatible with open space or agricultural or recreational use only, any affected property the community acquires an interest in. These deed restrictions must be consistent with the provisions of paragraph **T.2.b.** above, except that, even if a certified project protects the property, the land use restrictions continue to apply if the property was acquired under the Hazard Mitigation Grant Program or the Flood Mitigation Assistance Program. If a nonprofit land trust organization receives the property as a donation, that organization must maintain the property as deed-restricted, consistent with the provisions of paragraph **T.2.b.** above.

f. Before the approval of your claim, the affected State must take all action set forth in FEMA's "Policy Guidance for Closed Basin Lakes."

g. You must have **NFIP** flood insurance coverage continuously in effect from a date established by FEMA until you file a claim under paragraph **T.2.** If a subsequent owner buys **NFIP** insurance that goes into effect within 60 days of the date of transfer of title, any gap in coverage during that 60-day period will not be a violation of this continuous coverage requirement. For the purpose of honoring a claim under this paragraph **T.2.**, we will not consider to be in effect any increased coverage that became effective after the date established by FEMA. The exception to this is any increased coverage in the amount suggested by your insurer as an inflation adjustment.

h. This paragraph **T.2.** will be in effect for a community when the FEMA Regional Director for the affected region provides to the community, in writing, the following:

(1) Confirmation that the community and the State are in compliance with the conditions in paragraphs **T.2.e.** and **T.2.f.** above; and

(2) The date by which you must have flood insurance in effect.

## U.   Duplicate Policies Not Allowed

1. We will not insure your property under more than one **NFIP** policy.

If we find that the duplication was not knowingly created, we will give you written notice. The notice will advise you that you may choose one of several options under the following procedures:

a. If you choose to keep in effect the **policy** with the earlier effective date, you may also choose to add the coverage limits of the later **policy** to the limits of the earlier **policy**. The change will become effective as of the effective date of the later **policy**.

b. If you choose to keep in effect the **policy** with the later effective date, you may also choose to add the coverage limits of the earlier **policy** to the limits of the later **policy**. The change will be effective as of the effective date of the later **policy**.

In either case, you must pay the pro rata premium for the increased coverage limits within 30 days of the written notice. In no event will the resulting coverage limits exceed the permissible limits of coverage under the **Act** or your insurable interest, whichever is less.

We will make a refund to you, according to applicable **NFIP** rules, of the premium for the **policy** not being kept in effect.

2. Your option under Condition **U.** Duplicate Policies Not Allowed to elect which **NFIP** policy to keep in effect does not apply when duplicates have been knowingly created. Losses occurring under such circumstances will be adjusted according to the terms and conditions of the earlier **policy**. The **policy** with the later effective date will be canceled.

## V.   Loss Settlement

1. Introduction

This **policy** provides three methods of settling losses: Replacement Cost, Special Loss Settlement, and **Actual Cash Value**. Each method is used for a different type of property, as explained in **a.-c.** below.

a. Replacement Cost loss settlement, described in **V.2.** below, applies to a single-family **dwelling** provided:

(1) It is your principal residence, which means that, at the time of loss, you or your spouse lived there for at least 80 percent of:

(a) The 365 days immediately preceding the loss; or

(b) The period of your ownership, if you owned the **dwelling** for less than 365 days; and

(2) At the time of loss, the amount of insurance in this **policy** that applies to the **dwelling** is 80 percent or more of its full replacement cost immediately before the loss, or is the maximum amount of insurance available under the **NFIP**.

b. Special loss settlement, described in **V.3.** below, applies to a single-family **dwelling** that is a manufactured or mobile home or a travel trailer.

c. **Actual Cash Value** loss settlement applies to a single-family **dwelling** not subject to replacement cost or special loss settlement, and to the property listed in **V.4.** below.

## 2. Replacement Cost Loss Settlement

The following loss settlement conditions apply to a single-family dwelling described in V.1.a. above:

a. We will pay to repair or replace the damaged dwelling after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

   (1) The building limit of liability shown on your Declarations Page;

   (2) The replacement cost of that part of the dwelling damaged, with materials of like kind and quality, and for like use; or

   (3) The necessary amount actually spent to repair or replace the damaged part of the dwelling for like use.

b. If the dwelling is rebuilt at a new location, the cost described above is limited to the cost that would have been incurred if the dwelling had been rebuilt at its former location.

c. When the full cost of repair or replacement is more than $1,000 or more than 5 percent of the whole amount of insurance that applies to the dwelling, we will not be liable for any loss under V.2.a. above or V.4.a.(2) below unless and until actual repair or replacement is completed.

d. You may disregard the replacement cost conditions above and make claim under this policy for loss to dwellings on an actual cash value basis. You may then make claim for any additional liability according to V.2.a., b., and c. above, provided you notify us of your intent to do so within 180 days after the date of loss.

e. If the community in which your dwelling is located has been converted from the Emergency Program to the Regular Program during the current policy term, then we will consider the maximum amount of available NFIP insurance to be the amount that was available at the beginning of the current policy term.

## 3. Special Loss Settlement

a. The following loss settlement conditions apply to a single-family dwelling that:

   (1) Is a manufactured or mobile home or a travel trailer, as defined in II.B.6.b. and II.B.6.c.;

   (2) Is at least 16 feet wide when fully assembled and has an area of at least 600 square feet within its perimeter walls when fully assembled; and

   (3) Is your principal residence, as specified in V.1.a.(1) above.

b. If such a dwelling is totally destroyed or damaged to such an extent that, in our judgment, it is not economically feasible to repair, at least to its predamage condition, we will, at our discretion, pay the least of the following amounts:

   (1) The lesser of the replacement cost of the dwelling or 1.5 times the actual cash value, or

   (2) The building limit of liability shown on your Declarations Page.

c. If such a dwelling is partially damaged and, in our judgment, it is economically feasible to repair it to its predamage condition, we will settle the loss according to the Replacement Cost conditions in paragraph V.2. above.

## 4. Actual Cash Value Loss Settlement

The types of property noted below are subject to actual cash value [or in the case of V.4.a.(2) below, proportional] loss settlement.

a. A dwelling, at the time of loss, when the amount of insurance on the dwelling is both less than 80 percent of its full replacement cost immediately before the loss and less than the maximum amount of insurance available under the NFIP. In that case, we will pay the greater of the following amounts, but not more than the amount of insurance that applies to that dwelling:

   (1) The actual cash value, as defined in II.B.2., of the damaged part of the dwelling; or

   (2) A proportion of the cost to repair or replace the damaged part of the dwelling, without deduction for physical depreciation and after application of the deductible.

   This proportion is determined as follows: If 80 percent of the full replacement cost of the dwelling is less than the maximum amount of insurance available under the NFIP, then the proportion is determined by dividing the actual amount of insurance on the dwelling by the amount of insurance that represents 80 percent of its full replacement cost. But if 80 percent of the full replacement cost of the dwelling is greater than the maximum amount of insurance available under the NFIP, then the proportion is determined by dividing the actual amount of insurance on the dwelling by the maximum amount of insurance available under the NFIP.

b. A two-, three-, or four-family dwelling.

c. A unit that is not used exclusively for single-family dwelling purposes.

d. Detached garages.

e. Personal property.

f. Appliances, carpets, and carpet pads.

g. Outdoor awnings, outdoor antennas or aerials of any type, and other outdoor equipment.

h. Any property covered under this policy that is abandoned after a loss and remains as debris anywhere on the described location.

i. A dwelling that is not your principal residence.

5. **Amount of Insurance Required**

To determine the amount of insurance required for a dwelling immediately before the loss, do not include the value of:

a. Footings, foundations, piers, or any other structures or devices that are below the undersurface of the lowest basement floor and support all or part of the **dwelling;**

b. Those supports listed in V.5.a. above that are below the surface of the ground inside the foundation walls if there is no basement; and

c. Excavations and underground flues, pipes, wiring, and drains.

The Coverage **D** – Increased Cost of Compliance limit of liability is not included in the determination of the amount of insurance required.

---

## VIII.  LIBERALIZATION CLAUSE

If we make a change that broadens your coverage under this edition of our **policy,** but does not require any additional premium, then that change will automatically apply to your insurance as of the date we implement the change, provided that this implementation date falls within 60 days before, or during, the **policy** term stated on the **Declarations Page.**

---

## IX.  WHAT LAW GOVERNS

This **policy** and all disputes arising from the handling of any claim under the **policy** are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.

---

IN WITNESS WHEREOF, we have signed this **policy** below and hereby enter into this Insurance Agreement.

*Kim M. Brunner*

Secretary

*Edward B. Rust, Jr.*

President

## CLAIM GUIDELINES IN CASE OF A FLOOD

For the protection of you and your family, the following claim guidelines are provided by the National Flood Insurance Program (NFIP). If you are ever in doubt as to what action is needed, consult your insurance representative.

Know your insurance representative's name and telephone number. List them here for fast reference:

Insurance Representative _____

Representative's Phone Number _____

- Notify your insurance representative, in writing, as soon as possible after the flood.

- Determine the independent claims adjuster assigned to your claim and contact him or her if you have not been contacted within 24 hours after you reported the claim to your insurance representative.

- As soon as possible, separate damaged property from undamaged property so that damage can be inspected and evaluated.

- Discuss with the claims adjuster any need you may have for an advance or partial payment for your loss.

- To help the claims adjuster, try to take photographs of the outside of the premises showing the flooding and the damage and photographs of the inside of the premises showing the height of the water and the damaged property.

- Place all account books, financial records, receipts, and other loss verification material in a safe place for examination and evaluation by the claims adjuster.

- Work cooperatively and promptly with the claims adjuster to determine and document all claim items. Be prepared to advise the claims adjuster of the cause and responsible party(ies), if the flooding resulted from other than natural cause.

- Make sure that the claims adjuster fully explains, and that you fully understand, all allowances and procedures for processing claim payments on the basis of your proof of loss. This policy requires you to send us detailed proof of loss within 60 days after the loss.

- Any and all coverage problems and claim allowance restrictions must be communicated directly from the Company. Claims adjusters are not authorized to approve or deny claims; their job is to report to the Company on the elements of flood cause and damage.

At our option, we may accept an adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages to your insured property. You must sign the adjuster's report. At our option, we may require you to swear to the report.





┌─────────────────────────────────────────────────────────┐
│ THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY. │
└─────────────────────────────────────────────────────────┘

## STANDARD FLOOD INSURANCE POLICY

## INCREASED COST OF COMPLIANCE ENDORSEMENT

**This Endorsement replaces Paragraph 2, Coverage D - Increased Cost of Compliance, III - Property Covered of the Dwelling, General Property, and Residential Condominium Building Association Policies with the following paragraph.**

2.  Limit of Liability

We will pay you up to $30,000 under this Coverage D - Increased Cost of Compliance, which only applies to **policies** with **building** coverage (Coverage **A**). Our payment of claims under Coverage **D** is in addition to the amount of coverage which you selected on the **application** and which appears on the **Declarations Page**.

But the maximum you can collect under this **policy** for both Coverage **A** - Building Property and Coverage **D** - Increased Cost of Compliance cannot exceed the maximum permitted under the **Act**. We do not charge a separate deductible for a claim under Coverage **D**.

FE-8746