UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DARYL AND CATHY CHAUVIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED <br> Plaintiffs, | * CIVIL ACTION <br> * <br> * <br> * NO. 05-6454 <br> * <br> * SECTION "R" |
| VERSUS | * <br> * JUDGE VANCE |
| STATE FARM FIRE AND CASUALTY COMPANY <br> Defendant, | * <br> * MAGISTRATE 5 <br> * <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*

## STATE FARM'S MEMORANDUM IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

**NOW INTO COURT,** through undersigned counsel comes defendant, State

Farm Fire and Casualty Company ("State Farm") and respectfully submits the following

memorandum in support of its Motion for Judgment on the Pleadings.

### I.   INTRODUCTION

Plaintiffs bring this action seeking an after-the-fact re-writing of their

homeowners insurance policy so that they can recover for losses caused by an excluded peril.

Plaintiffs predicate their claims on a fundamental mischaracterization of an inapplicable statute.



Contrary to Plaintiffs' contentions, Louisiana's Valued Policy Law, La. R.S. 22:695 does not entitle them to recover the face value of their homeowners policy for losses that were caused by an excluded peril and therefore were not covered by their policy. To allow Plaintiffs to recover on their claims would not only contravene the intent and language of Louisiana's Valued Policy Law, but also would significantly impair the objectives of the National Flood Insurance Program and violate State Farm's constitutional rights.

Plaintiffs purport to represent all State Farm insureds residing in parishes affected by Hurricane Katrina "who sustained a covered loss of, or damage to [covered property] and [whose covered] property was rendered a total loss as a result of Hurricane Katrina." (Compl., ¶ V.) Plaintiffs assert that, because they suffered some amount of damage as a result of a covered peril (i.e., wind damage), they are entitled, pursuant to the Valued Policy Law, to collect the full "value" of their policy even though the property is alleged to have been rendered a "total loss" by water damage, a peril that is explicitly and unambiguously excluded under the terms of the State Farm policy. In essence, Plaintiffs argue that suffering *any* loss as a result of a covered peril entitles the insured to recover the face amount of the policy limits for the premises even though the Valued Policy Law only requires payment of the face amount if a **total** loss is caused by a covered peril. Contrary to Plaintiffs' assertion, the Valued Policy Law only applies when there is an insurance policy covered by the Valued Policy Law *and* a peril that is actually covered by that policy is the cause of the property reaching the status of a total loss. Here, Plaintiffs do not allege that a covered peril caused their property to become a total loss. As such, the Valued Policy Law does not apply as a matter of law and Plaintiffs are clearly not entitled to the relief they seek.

-2-

Plaintiffs' Complaint is an unsupportable attempt to circumvent State Farm's policy language that must be rejected. State Farm's policy language, which has been approved by the Louisiana Department of Insurance, clearly and unambiguously excludes coverage for water damage. In addition, the exclusionary language that Plaintiffs seek to invalidate has been held by Louisiana courts, as well as courts in other jurisdictions, to exclude loss that would not have occurred in the absence of flood and surface water. Because the Plaintiffs seek a recovery that is contrary to both the policy language and the law, the recovery sought should be denied.

Plaintiffs' attempt to disregard State Farm's water damage exclusion is also impermissible under the filed rate doctrine. The Louisiana Insurance Rating Commission and the Louisiana Commissioner of Insurance have exclusive authority to review and approve insurance rates and insurance policy forms and have approved the rates and terms of State Farm's homeowners insurance policies. The policy form clearly excludes losses caused by water damage and the approved rates are not designed to cover those risks. Accordingly, the filed rate doctrine precludes a *de facto* invalidation of State Farm's water damage exclusion, as doing so would effectively constitute an impermissible alteration of the rates and terms approved by these regulatory bodies.

The claims alleged in the Plaintiffs' Complaint are also infirm because they seek relief in contravention of the Constitutions of the United States and the State of Louisiana. Plaintiffs' attempt to impose massive retroactive liability for flood losses that State Farm never contracted to insure and for which policyholders did not pay premiums violates due process and is an impermissible taking without compensation and an impairment of State Farm's contracts. The magnitude of relief sought would also unconstitutionally burden interstate commerce.

- 3 -

Finally, Plaintiffs' claims are also contrary to public policy and are preempted because they would impermissibly obstruct the goals of the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001 *et seq.* The NFIA established a comprehensive, unified national flood insurance program ("NFIP"). The Federal government provides flood insurance and in exchange, mandates that participating communities undertake appropriate flood control measures. Maintaining Plaintiffs' lawsuit would eliminate one of the incentives for communities to participate in the NFIP, thus impermissibly frustrating federal public policy goals.

For all these reasons, which are fully briefed below, the Court should enter a judgment as a matter of law for State Farm on all of the Plaintiffs' claims against it.

## II.   STATEMENT OF THE FACTS

Hurricane Katrina was an unparalleled catastrophe for the State of Louisiana. Thousands of homes and businesses were destroyed or damaged by the floodwaters that inundated the state in the hurricane. Many property owners, however, had no flood insurance, and those who did have flood insurance under the National Flood Insurance Program (NFIP) were subject to the maximum flood coverage limits set by the government ($250,000 for residences).[1]

Many Louisiana property owners have unquestionably been left in a very difficult position by their failure to buy flood insurance, or by the limitations set by the federal government on the amounts of flood insurance that even *can* be bought under the NFIP. The answer, however, does not lie in asking the courts to engage in *ex post facto* judicial re-writing of homeowners' policies to create coverage for damage caused by the specifically excluded peril of

---

[1]   As will be discussed further in Part III(B)(4), *infra*, the NFIP was established in part because Congress recognized that private insurers did not offer flood coverage under the terms of their homeowners policies. 42 U.S.C. § 4001(b).

- 4 -

flood. This litigation asks just that. State Farm did not sell, and was not paid for, flood coverage under its homeowners policies. Nothing in the law or in equity could justify the after-the-fact imposition of liability for uninsured flood damages as sought by Plaintiffs.

### A.      The Complaint

On August 29, 2005, Hurricane Katrina "made landfall in Southeast Louisiana". (Class Action Complaint, ("Compl.") ¶ XII.) Plaintiffs, insureds of State Farm, suffered damage to their covered property from both water and wind. Plaintiffs attempt to blur the fact that hurricanes set in motion *two* powerful forces of nature – flood and wind – which are covered by *two entirely separate types of insurance*. Compressing it all into the one-name jargon of the weather media, Plaintiffs' allegations say that "as a result of *Hurricane Katrina*, plaintiffs . . . sustained damage to their home, rendering it a total loss." (Compl. ¶ XIV.) (emphasis added). Plaintiffs then allege that the State Farm homeowners policy "placed a valuation upon the covered immovable property owned by [P]laintiffs" (Compl. ¶ VV.) but fail to mention that the valuation is for purposes of losses from perils actually covered by the policy, which quite specifically do not include flood.

Plaintiffs claim that State Farm "used such valuation for purposes of determining the premium charges to be made under the policy covering [P]laintiffs' immovable property" (Compl. ¶ XVI.), but again neglect to mention that the premium charges would, of course, be based only on perils covered by the policy. Pivotally, Plaintiffs never allege that they suffered a "total loss" to their property as a result of damage from wind or as a result of any other peril that is in fact covered by the homeowners policy issued by State Farm.

Although Plaintiffs cannot and do not allege that their property became a total loss because of any peril covered by their homeowners policy, they mistakenly rely on the

- 5 -

Louisiana Valued Policy Law[2] to pray for judgment against State Farm for (1) the face value of the homeowners insurance policy; (2) pre-judgment and post-judgment interest; (3) court costs; and (4) all general and equitable relief.

## B.   The State Farm Policy

The State Farm-issued homeowners policy referenced in Plaintiffs' Complaint states the following under the "Losses Not Insured" Section of the Policy:[3]

> 2.   We do not insure under any coverage for loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded even to produce the loss; or (d) whether the even occurs suddenly or gradually; involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these.
>
> *.....*.....*
>
> c.   Water Damage, meaning:
>
> (1)   flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not[.]*...*...*

(See Exhibit A at p. 10.) As required by law, this policy language was filed with, and approved by, the Louisiana Commissioner of Insurance prior to its use. See La. R.S. 22:620(A)(1).

## III.   LAW & ARGUMENT

## A.   The Standard

"A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co.*

---

[2]   As discussed below, the Louisiana Valued Policy Law, reduced to its essentials, requires fire and extended coverage insurers to pay the face value of a policy if an insured's property suffers a total loss due to a covered peril.

[3]   A true copy of the State Farm homeowners policy issued to Plaintiffs is attached hereto as Exhibit A.

795295v.5

*v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citing 5A Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1367, at 509-10 (1990)). The Court may consider as part of the pleadings any documents referred to in the plaintiff's complaint that are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Thus, it is appropriate for this Court to consider the homeowners policy issued by State Farm to Plaintiffs, which is attached hereto as Exhibit A. The Court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). The Court accepts well-pleaded facts in the complaint as true, viewing them in the light most favorable to the plaintiff. *Id.* at 312-13. However, the Court will not accept as true conclusory allegations or unwarranted deductions of fact." *Id.* at 313.[4] Moreover, interpretation of unambiguous policy provisions (such as those at issue here) is a question for law for the Court to resolve. *American Deposit Ins. Co. v. Myles*, 2000-2457 (La. 2001) 783 So. 2d 1282, 1286.

## B. Plaintiffs Are Not Entitled to Recover for Damage That Is Unambiguously Excluded by State Farm's Policy

The focal point of Plaintiffs' Complaint is the Louisiana Valued Policy Law, which the Plaintiffs seek to invoke to require their homeowners insurer to pay them the full face value amount of the policy. As set forth in this section, however, the Louisiana Valued Policy Law only applies in situations where a structure has been rendered a total loss by a covered peril, which Plaintiffs do not and cannot allege. As noted above, Plaintiffs do not allege that they suffered a "total loss" as a result of a peril that is covered by the State Farm policy, but instead

---

[4] "Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same." *Great Plains*, 313 F.3d at 313 n.8 (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1368, at 591 (Supp. 2002)).

loosely attribute the "substantial damage" and "total loss" to "Hurricane Katrina". (Compl., ¶¶ XIII, XIV.) At best, such allegations indicate that there was wind damage **and** flood damage caused to their property during the hurricane.

Plaintiffs' homeowners policy here has a "Losses Insured" section and a "Losses Not Insured" section. Direct physical loss from wind is a "Loss Insured", but loss from flood and water is a "Loss Not Insured." Specifically, the policy excludes loss that would not have occurred "in the absence of . . . water damage," which is defined to include "flood, surface water, waves, tidal water, . . . [or] overflow of a body of water, . . . all <u>whether driven by wind or not</u>" (emphasis added). This exclusion applies regardless of "the cause of the [flooding or surface water]," "other causes of the loss," or "whether other causes acted concurrently or in any sequence with the [flooding or surface water] to produce the loss."[5]

Given the clear coverage and exclusion provisions of the Plaintiffs' homeowners policy, the Louisiana Valued Policy Law is simply not activated here. The Valued Policy Law merely requires payment of full face value when a covered peril causes a covered property to become a total loss. La. R.S. 22:695 states:

> (A)     Under any fire insurance policy insuring inanimate, immovable property in this state, <u>if the insurer places a valuation upon the covered property</u> and uses such valuation for purposes of determining the premium charge to be made under the policy, <u>in case of **total loss** the insurer</u> shall compute and indemnify or <u>compensate</u> <u>any</u> **covered loss** of, or damage to, such property which occurs during the term of the policy <u>at such valuation without deduction or offset</u>, unless a different method is to be used in the computation of loss, in which latter case, the policy, and the application therefore, shall be set forth in type of equal size, the

---

[5]     Louisiana courts, of course, interpret insurance policies according to the general rules of contract interpretation set forth in the Civil Code. *See Ledbetter v. Concord Gen. Corp.*, 95-0809 (La. 1/6/96) 665 So. 2d 1166, 1169. Courts look to the intent of the parties as reflected by the words of the policy. *Id.* When the words are clear and unambiguous and lead to no absurd consequences, courts will enforce the policy language as written. La. Civ. Code art. 2046; *Central La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 985 (La. 1991). Insurance policies are construed as a whole, and each provision must be interpreted in light of the other provisions so that each has meaning. La. Civ. Code art. 2050; *Central La. Elec. Co.*, 579 So. 2d at 985.

actual method of such loss computation by the insurer." \*.....\*....\* (emphasis added)

There is nothing in the jurisprudence, language or legislative history of Louisiana's Valued Policy Law to support the ruling Plaintiffs' seek, to wit, that the statute applies to require insurers to pay face value whenever a property becomes a total loss, even when the total loss is not caused by a peril covered by the insurer's policy.

Louisiana first enacted a Valued Policy Law in 1900 as a wave of similar valued policy statutes were adopted in other states at the turn of the Twentieth Century. "Valued policy laws were created to fix in advance the value of property being insured and to place upon the insurer the burden of inspecting the property to insure its proper valuation. . . . The perils outlined by a statute are the only perils to which the statute applies." HERBERT J. BAUMANN, JR. "Recovery Under the Valued Policy Law", 19-WTR BRIEF 45. The valued policy law is intended to preclude after-the-fact arguments over the value of the property in question when it becomes a total loss; the insured is disallowed from arguing that the property is worth **more** than the value set out on the face of the policy (e.g., because of claimed improvements made), and the insurer is disallowed from arguing that property is worth less than the face value (because of claimed depreciation).

> The effect of the [Louisiana] valued policy law is generally to recognize the right of the insurer to limit its liability to the face of the policy and also to recognize the right of the insured to fix his right of recovery to a definite sum in case of total loss; the insurer knows that its liability cannot be above the face of the policy, and the insured knows that his recovery will not be below the face of the policy.

*The Forge, Inc. v. Peerless Cas. Co.*, 131 So. 2d 838, 840 (La. App. 2 Cir. 1961). *See also, e.g., Chambers v. North British & Mercantile Ins. Co.*, 175 So. 95, 96 (La. App. 1 Cir. 1937). *See also Harvey v. Gen. Guar. Ins. Co.*, 201 So. 2d 689, 692 (La. App. 3 Cir. 1967) ("[The purpose of VPL statutes] is to protect the insured by relieving him of the burden of proving the full value

-9-

of his property after its total destruction, and to prevent insurance companies from receiving premiums on overvaluations but thereafter repudiating their contracts when it becomes to their interest to do so.").[6]

The Valued Policy Law was thus intended to prevent either party from contesting the value of the covered property in the event of total loss caused by a covered peril, and nothing more. As noted below, Louisiana courts have confirmed the validity of the water damage exclusion contained in State Farm's policy. For the Court to require, as Plaintiffs pray, that State Farm pay the full amount of the policy even though no covered peril caused the property to become a "total loss" would be wholly inconsistent with Louisiana law and improperly disregard the policy's valid water damage exclusion.

Nothing in the VPL purports to provide that an insurer is liable for the full amount of its policy when a property has become a total loss because it sustained some damage from a covered peril and some damage from a non-covered peril. In one of the only decisions that appears to have addressed a similar claim, *Brady v. State Ins. Co. of Neb.*, 100 Neb. 497, 160 N.W. 882 (1916), the insured residence was destroyed, partially by a tornado and partially by fire. 160 N.W. at 883. The homeowner had separate policies for tornado and fire coverage. *Id.* Under Nebraska's VPL, where two insurers provided coverage for the *same* peril, each is liable for the full policy amount in the event of a total loss from the peril. *Id.* at 885. ("[w]here several concurrent policies of insurance upon real property have been written . . ., and the property insured is wholly destroyed by fire, each company is liable for the full amount of its policy") (citation omitted.)

---

6       Indeed, in an apparent attempt to avoid interference with the parties' contractual rights, Louisiana court(s) have interpreted the VPL statute narrowly. *See, e.g., Graham v. Milky Way Barge, Inc., et al.*, 824 F.2d 376 (5th Cir. 1987) (holding that the VPL statute applies only to total losses causes by fire); *see also In re: Consolidated Cos., Inc.*, 185 B.R. 223 (Bankr. E.D.La. 1995).

- 10 -

But, the Brady court held, where two or more different perils cause damage to a building and it ends up being a total loss, "[t]he case is entirely different from where two or more insurance companies . . . write a specific amount of insurance upon a building covering the same liability" and the insurer would not be required to pay out the policy limits for the non-covered peril. *Id.* at 885. Specifically, the court reasoned as follows:

> We think it is a matter of common knowledge, not only among insurers but with the insuring public, that insurance for a certain sum against loss or damage by fire or lightning, and for the same sum for loss or damage by tornado, is understood and intended to mean that the insurance by the second policy is not for a sum in addition to the first, but is the assumption by the insurer of risk from elements not covered by the first policy. When a fire policy is taken on a building, it is not unusual for the insurer to grant additional protection against loss or damage by tornadoes by what is called a "rider" attached to the fire policy, in which the insurer, for a certain additional amount of premium, assumes the risk for damage by tornado; the amount of this additional premium being based upon the extent to which the insured desires the insurer to assume this additional risk. In such a case, it surely would not be claimed that under the valued policy law the insurer could be held liable for both amounts; thus, for the reason that **the assured can only recover under the provisions of the valued policy law when his building is "wholly destroyed," and, as it could not be wholly destroyed by fire and also wholly destroyed by tornado,** there will be no theory upon which the assured could recover under both. The case is entirely different from where two or more insurance companies, each with the consent of the others, write a specific amount of insurance upon a building covering the same liability.

*Id.* This rationale is fully applicable to Louisiana's statute.

And, in fact, no Louisiana court has ever held the Valued Policy Law to apply to a situation where a covered peril was not, at the very least, the proximate cause of the building becoming an actual or constructive total loss. In *Hart v. North British & Mercantile Ins. Co.*, 182 La. 551 (La. 1935), the Louisiana Supreme Court held that an insurer had to pay the full amount of the policy after the covered property had been condemned by the municipal authorities in the wake of a devastating fire. The Court held that the property had been rendered a "constructive total loss" by the fire, and that the Valued Policy Law therefore applied. *See also*

- 11 -

*Occhipinti et al. v. Boston Ins. Co.*, 72 So.2d 326 (La. Ct. App. Orleans 1954) (insurer liable for full amount of the policy under Valued Policy Law when the property rendered a "constructive total loss" by fire). In *Hart*, the covered peril, fire, destroyed 75% of the property, rendering the remaining 25% "so damaged as to become useless."[7]

Reading the facts as alleged in this case most favorably to the Plaintiffs, there is no allegation that their property was rendered a "total loss" or even a "constructive total loss" by the covered peril of wind. Rather, the Plaintiffs allege only that they "sustained loss or damage from hurricane-related wind, which is a covered peril" (Compl., ¶ XIII.), and that "as a result of Hurricane Katrina, plaintiffs . . . sustained substantial damage to their home, rendering it a total

---

[7]    A Florida court used Florida's VPL statute to require an insurer to pay policy limits even though the structure in question was caused to be a total loss by a peril specifically excluded by the policy at issue. *See Mierzwa v. Florida Windstorm Underwriting Assoc.*, 877 So. 2d 774 (Fla. 4th DCA 2004). The *Mierzwa* decision represents an unprecedented deviation from prior Florida law, which had *never* required insurers to pay for damage caused by an excluded peril, under the Florida VPL or otherwise. *See, e.g., Deni Associates of Florida, Inc. v. State Farm Fire and Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998); *State Farm Fire and Cas. Ins. Co. v. Metropolitan Dade County*, 639 So. 2d 63 (Fla. 3d DCA 1994). *Mierzwa* is an intermediate Florida appellate court decision with no precedential effect in Louisiana anyway, but there are also reasons why it should not be regarded as sound or as persuasive precedent for interpreting Louisiana's VPL. In the first instance, the language of the Florida VPL is materially different from that of the Louisiana VPL, not least in that it makes no specific reference to compensation for "a covered loss" as does the Louisiana statute. The entirely different language of the then-existing version of the Florida VPL states as follows, in the excerpted portions upon which the *Mierzwa* court relied in reaching its decision: "In the event of the total loss of any building . . . located in this state and insured by any insurer as to a covered peril ... the insurer's liability, *if any*, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy. . . ." § 627.702(1), Fla. Stat. (2003)(emphasis added). Moreover, the conclusions and rationale set out in the *Mierzwa* decision were so far off the mark in interpreting the Florida VPL that the Florida legislature acted with lightning speed to revise the VPL to pretermit any further use of the *Mierzwa* decision and reasoning. *See* Ch. 2005-111, §§ 16,30, Laws of Florida (effective June 1, 2005). The Senate Staff Analysis specifically directed its comments to pointing out that *Mierzwa* was in error and at odds with the legislative intent of the Florida VPL:

> *Valued Policy Law (Mierzwa)* – In response to a recent district court opinion, [the bill] provides legislative intent that the valued policy law is not intended to require an insured to pay for a loss caused by a peril other than the covered peril.

The Staff Analysis continues:

> *Valued Policy Law (Mierzwa)* – The Legislature should consider amending the valued policy law . . . to clarify that a property insurer is responsible to pay only for that portion of damage to a structure which is caused by a peril insured under the property insurance policy and is not required to pay for damage caused by excluded perils; thereby clarifying that the Fourth DCA decision in *Mierzwa v Florida Windstorm Underwriting Association* was incorrect.

795295v.5

loss." (Compl., ¶ XIV.) Plaintiffs have failed to attribute a total loss to a covered peril, so the Valued Policy Law just does not apply.

Nor should Plaintiffs' urged 'interpretation' of the Valued Policy Law be accepted. Under Plaintiffs' 'interpretation', insureds whose house lost one shingle during Hurricane Katrina due to wind and thereafter became a total loss due to flooding from a tidal surge would be entitled to the full value of their homeowners insurance policy even though the homeowners policy has no coverage for flood. There is simply no legal or historical basis for a court to 'interpret' such an extreme extension into the statute.

### 1. The "Lead-In" Language To The Water Damage Exclusion Renders Other Potential Causes Of Loss Irrelevant.

As demonstrated above, the plain language of State Farm's water damage exclusion is sufficient, by itself, to dispose of Plaintiffs' claim; thus, this Court need go no further to dismiss Plaintiffs' Petition. If the court has any doubt, however, other provisions reaffirm the exclusion.

The water damage exclusion, like several other exclusions in the policy, is prefaced by a "lead-in" paragraph that specifically states there is no coverage for a loss that would not have occurred "in the absence of" water damage, regardless of the operation, effect, or sequence of other potential causes of loss.[8] In light of this language, it does not matter whether wind or any other covered peril played a part in Plaintiffs' losses; so long as those losses would not have occurred in the absence of water damage as defined, they are excluded from coverage.

At least two courts have construed and upheld under Louisiana law language similar to State Farm's "lead-in." In *Sweeney v. City of Shreveport*, 584 So. 2d 1248 (La. App. 2

---

[8]     The lead-in provision applies to six separate "excluded events" (i.e., perils): "a. Ordinance or Law, . . . b. Earth Movement, . . . c. Water Damage, . . . d. Neglect, . . . e. War, . . . [and] f. Nuclear Hazard. . . ." *See* Exh. A at p. 10.

Cir. 1991), Sweeney's house was demolished following her apparent refusal to respond to the City's repeated notices of code violations and a notice of impending demolition. Due to an error on the part of the city inspector, the required notices had been sent to the wrong person. *Id.* at 1249. When Sweeney discovered the demolition, she sued the City and her insurer, Vanguard. Vanguard denied Sweeney's claim on the basis of its policy's "ordinance or law" exclusion, which specifically excluded loss "caused directly or indirectly by . . . enforcement of any ordinance or law regulating the . . . demolition of property. . . ." *Id.* at 1250. The preamble to the exclusion stated that the loss was excluded "regardless of any other cause or event contributing concurrently or in any sequence to the loss." *Id.* The Louisiana Second Circuit Court of Appeal affirmed summary judgment for Vanguard, rejecting Sweeney's argument that the exclusion was ambiguous. Courts in at least fourteen jurisdictions outside Louisiana have upheld State Farm's lead-in language, generally in the context of either water damage or earth movement exclusions. At least nineteen courts have also upheld similar language used by other insurers. These cases are compiled in Exhibit B, attached.[9]

### 2. The Filed Rate Doctrine Preludes Plaintiffs' Claims.

Given the clear and unambiguous nature of the relevant exclusions in State Farm's policy, the coverage declaration Plaintiffs seek would, in effect, constitute a judicial nullification of those exclusions. Such a result would violate the filed rate doctrine.

The Louisiana Legislature has given the Commissioner of Insurance exclusive authority to review and approve policy forms for certain lines of insurance, including property

---

[9]    It bears noting that the "lead in" used in State Farm's policy includes a clause not found in the policies of many other insurers which makes the applicability of State Farm's water damage exclusion under Plaintiffs' theory even more certain. The portion of State Farm's lead-in stating that there is no coverage "regardless of: (a) the cause of the excluded event" directly and precisely addresses the situation Plaintiffs allege: a purportedly covered event ("windstorm") and an excluded event (flood). The intent of clause (a) to exclude coverage in that circumstance could not be clearer.

- 14 -

insurance policies, offered and sold in Louisiana.[10]   The Commissioner was *required by law* to disapprove and reject State Farm's policy forms if he concluded that a proposed endorsement or exclusion violated state law or was ambiguous or misleading.  La. R.S. 22:621.  By the same token, "approval by the insurance commissioner constitutes an administrative ruling that the policy and its endorsements conform to the requirements of the law. . . ."  *Carrier v. Allstate Ins. Co.*, 96 2681 (La. App. 1 Cir. 11/7/97) 702 So. 2d 367, 371.

Authority to approve rates is vested in the Louisiana Insurance Rating Commission ("LIRC").  La. R.S. 22:1401, 22:1402.  The Louisiana Legislature has declared that the purpose of rate regulation policy is "to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate, or unfairly discriminatory. . . ."  La. R.S. 22:1402; *see also* 22:1404(2); *Employers-Commercial Union Ins. Co. v. Bernard*, 303 So. 2d 728, 731 (La. 1974).  Rate regulation is "intended . . . to promote fairness of such rates to both the public and insurance companies, and in general promote and protect the public interest insofar as insurance rates are concerned."  *Guillory v. Louisiana Ins. Rating Comm'n*, 357 So. 2d 599, 602 (La. App. 1 Cir. 1978).

The filed rate, once approved by the regulatory authority with jurisdiction over the subject matter, "is per se reasonable and unassailable in judicial proceedings brought by ratepayers."  *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2nd Cir. 1994); *American Bankers' Ins. Co. of Florida v. Wells*, 819 So. 2d 1196, 1203-04 (Miss. 2001); *see also In re Industrial Life Ins. Litig.*, 148 F. Supp. 2d 719, 721 n.1 (E.D. La. 2001); *Entergy La., Inc. v. Louisiana Public Serv. Comm'n*, 2001-1725 (La. 4/3/02) 815 So. 2d 27, 35, *rev'd on other grounds*, 539

---

[10]     "[N]o basic insurance policy form . . . shall be issued, delivered, or used unless it has been filed with and approved by the commissioner of insurance."  La. R.S. 22:620(a)(1).

U.S. 39 (2003).[11] "[T]he filed rate doctrine is not limited to 'rates' *per se*" but also protects contracts and insurance policy provisions that the regulatory authority has approved before they become effective. *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966 (1986); *see Allen v. State Farm Fire & Cas. Co.*, 59 F. Supp. 2d 1217, 1229 (S.D. Ala. 1999) (upholding hurricane deductible under filed rate doctrine).

The Commissioner's and LIRC's approval of State Farm's homeowners policy forms and rates, pursuant to their statutory authority, establishes the binding legality of these forms and rates. *See generally* La. R.S. 22:2(A) ("Insurance is an industry affected with the public interest and it is the purpose of this Code to regulate that industry in all its phases."); *Fontenot v. State Farm Mut. Ins. Co.*, 119 So. 2d 588, 592 (La. App. 1 Cir. 1960). Having received approval of its policy forms and rates, State Farm was precluded from issuing policies containing anything other than those forms and approved rates.

Although not using the term "filed rate doctrine," Louisiana courts have applied its principles to bar claims against insurers that, if granted, would directly *or* indirectly impact the approved rates or that would have the effect of changing the filed rates. *See Continental Cas. Co. v. Rogers*, 194 F.3d 582, 584 (5th Cir. 1952); *Jung Hotel v. Insurance Comm'n of La.*, 154 So. 2d 448, 556-57 (La. 1934). Courts in other jurisdictions have likewise held that the filed rate doctrine bars claims against insurers that would have the "effect" of changing the filed rates. *See American Bankers Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196 (Miss. 2001); *Kutner v. Sprint Communications Co.*, 971 F. Supp. 302, 306 (W.D. Tenn. 1997) (filed rate doctrine "precludes

---

[11]   The filed rate doctrine has been applied to common carriers, public utilities, telecommunications companies, and insurance companies whose rates and, in the insurance context, policy forms, have been filed with and approved by state or federal regulatory agencies. Indeed, "the filed-rate doctrine has been held to apply equally to rates filed with state agencies by every court to have considered the question." *Destec Energy, Inc. v. Southern Cal. Gas Co.*, 5 F. Supp. 2d 433, 458 (S.D. Tex. 1997) (collecting cases), *aff'd*, 172 F.3d 866 (5th Cir. 1999).

- 16 -

not only the award of remedies that actually change the filed rate, but also of remedies that would have that effect"); *Katz v. MCI Telecommunications Corp.*, 14 F. Supp. 2d 271, 274 (E.D.N.Y. 1998) (filed rate doctrine precludes "any judicial action which undermines agency rate-making authority").[12]

If the Court were to adopt Plaintiffs' interpretation of the Valued Policy Law, the effect would be to expand the scope of coverage under those policies far beyond that contemplated by the LIRC when it approved the applicable rates. Thus, those rates would be grossly "inadequate," in contravention of sections 1402 and 1404, and the Court's action would interfere with the authority of the LIRC. *See Allen*, 59 F. Supp. 2d at 1229 (judicial invalidation of approved form that "increas[es] coverage under the policies . . . necessarily effects a decrease in the defendants' effective rates and disturbs the commissioner's rate making authority").

Had the policies not contained the water damage and other exclusions, the rates would have been very different.[13]   The Plaintiffs' requested *post hoc* circumvention of the exclusionary language would afford insureds greater insurance coverage than that on which the rates filed with and approved by the LIRC were based. Plaintiffs' attempt to rewrite State Farm's property insurance policies is therefore barred by the filed rate doctrine. *See Chandler v. Anthem Ins. Co.*, 8 S.W.3d 48, 50-53 (Ky. Ct. App. 1999) (filed rate doctrine bars rate-payers from challenging filings approved by the Commissioner of Insurance).

---

[12]   *See also Jader v. Principal Mut. Life Ins. Co.*, 975 F.2d 525, 528 (8th Cir. 1992) (dismissing plaintiffs' claim that insurer had failed to coordinate appropriate premium under filed rate doctrine because "to allow a suit in this case would necessarily involve the court in the business of rate-making").

[13]   As the Texas Supreme Court has explained: "[f]rom an underwriting standpoint, there is a vast difference between insuring against loss by hurricane winds only and insuring against loss by a combination of hurricane winds and waters." *Hardware Dealers Mut. Ins. Co. v. Berglund*, 393 S.W.2d 309, 313 (Tex. 1965).

- 17 -

### 3. Plaintiffs' De Facto Invalidation of State Farm's Water Damage Exclusion Would Violate the Constitutions of the United States and the State of Louisiana.

Granting the relief prayed for in the Complaint would invalidate the clear terms of homeowners policies issued by State Farm and effectively alter the coverage and rates of these policies filed with and approved by state authorities and accepted by the Plaintiffs when they entered the insurance contract. The resulting imposition of liability under State Farm's insurance contracts would violate the fundamental protections of the United States and Louisiana Constitutions against denial of due process, takings of private property without just compensation, and impairment of contracts, and would unduly burden interstate commerce.

State Farm's contract rights, as well as the funds that Plaintiffs contend should be paid by State Farm for uninsured flood damages caused by Hurricane Katrina, are protected property interests for purposes of due process. *See Stidham v. Texas Comm'n on Private Sec.,* 418 F.3d 486, 492 n.9 (5th Cir. 2005). As such, these interests are protected from arbitrary and irrational state interference by the Fourteenth Amendment to the United States Constitution and Article I, section 2 of the Louisiana Constitution. *See, e.g., Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15 (1976); *Eastern Enters. v. Apfel,* 524 U.S. 498, 535 (1998). A "retroactive assessment of liability" of the magnitude contemplated by Plaintiffs' Petition constitutes arbitrary interference that is unfair and violates due process. *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 733 (1984) (retrospective imposition of obligation to pay benefits "may offend due process if it is particularly harsh and oppressive"); *BMW of N. Am. Inc. v. Gore,* 517 U.S. 559, 574 & n.22 (1996) ("[I]n the civil context, due process retroactivity concerns are implicated by the 'basic protection against "judgments without notice" afforded by the Due Process Clause.'"). The fact that Plaintiffs seek a retroactive imposition of liability through the courts rather than through the legislature does not render their claims constitutionally

- 18 -

permissible. *See Gore*, 517 U.S. at 573 n.17 ("State power may be exercised as much by a jury's application of a state rule of law in a civil lawsuit as by a statute.").

The judicial imposition of liability for uninsured flood damages, as sought by Plaintiffs, would also violate the Taking Clauses of the United States and Louisiana Constitutions. The Taking Clause "stands as a shield against the arbitrary use of governmental power," whether exercised through the courts or by the legislature. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980).[14] Moreover, as a plurality of the United States Supreme Court has held, the constitutional prohibition against takings extends beyond the taking of physical property to such matters as the imposition of retroactive liability for health benefits on an employer. *See Eastern Enters.*, 524 U.S. at 522-23 (a "taking" is not limited to a "'classic' taking," but extends to "interference [that] arises from some public program adjusting the benefits and burdens of economic life to promote the common good," including economic regulation that "takes *property* from A, and gives it to B" or to government action that "'forc[es] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole'") (emphasis in original; citation omitted).

The factors relating to whether a particular action by the government rises to the level of an unconstitutional taking include "the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the governmental action" (*id.* at 523-24) – all are present here. Plaintiffs seek to impose on State Farm the staggering economic burden of uninsured damages caused by a public catastrophe, in contravention of the terms and rates of the insurance policies that have been approved by the

---

[14]     *Accord Hughes v. Washington*, 389 U.S. 290, 298 (1967) (Stewart, J., concurring) (Constitution "forbids . . . confiscation by a State, no less through its courts than though its legislature"); *Chicago, B & Q. R. v. Chicago*, 166 U.S. 226, 235 (1897) ("final judgment of a state court, under the authority of which the property is in fact taken, is to be deemed the act of the state"); *cf. Gore*, 517 U.S. at 573 n.17.

- 19 -

Commissioner and the LIRC and which are protected under Louisiana law by the filed rate doctrine. Shifting this financial burden to State Farm would substantially interfere with its reasonable expectations and would unfairly "attach[] new legal consequences" to insurance contracts after they were entered into and after the damage for which Plaintiffs seek to hold State Farm liable has already occurred. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). In these circumstances, redefining the terms of State Farm's contracts to allow the imposition of a "disproportionate and severely retroactive burden" of liability would contravene the "fundamental principles of fairness underlying the Takings Clause." *See Eastern Enters.*, 524 U.S. at 536-37.

In addition, the retroactive invalidation of contractual provisions and the enlargement of coverage and liability sought by Plaintiffs would impermissibly impair State Farm's insurance contracts in contravention of the Contract Clauses of Article I, section 10 of the United States Constitution and Article I, section 23 of the Louisiana Constitution. *Cf. Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245, 249-50 (1978) (state law requiring additional funding of pension plan violated Contract Clause by "superimposing retroactive obligations upon the company substantially beyond the terms of its employment contracts").

Finally, the enormous burden that Plaintiffs seek to impose upon State Farm clearly implicates the overriding federal interest in interstate commerce. Plaintiffs' lawsuit, if successful, would have a significant adverse effect on the insurance industry nationwide and the national system of flood insurance, thus contravening the federal constitutional prohibition on individual States imposing undue burdens on interstate commerce. *See Gore*, 517 U.S. at 585 (defendant's "status as active participant in the national economy implicates the federal interest in preventing individual States from imposing undue burdens on interstate commerce").

- 20 -

4.    **Plaintiffs' Claims Are Precluded by the National Flood Insurance Act.**

Plaintiffs' claims are preempted by the NFIA, because they "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the law. *See Hines v. Davidowitz*, 312 U.S. 52 (1941); *see also Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000) (preemption of common law tort standards conflicting with federal standards and objectives under the Federal Motor Vehicle Safety Act); *AT&T Corp. v. Public Utility Comm'n*, 373 F.3d 641, 645-47 (5th Cir. 2004) (Texas regulation preempted because it would "frustrate the purposes of Congress").

Congress found that "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions." 42 U.S.C. § 4001(b). *See also Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 387-88 (9th Cir. 2000) (same). Through the NFIA, Congress sought not only to make flood insurance available at a reasonable premium, but also to reduce future flood relief burdens on the federal government. *See United States v. Parish of St. Bernard*, 756 F.2d 1116, 1122 (5th Cir. 1985). Congress sought to establish "as a matter of national policy" a program of flood insurance that would "complement and encourage preventive and protective measures" (42 U.S.C. § 4001(a)(3)) and would be "integrally related to a unified national program for flood plain management." *Id.* § 4001(c)(2). Accordingly, Congress made federal flood insurance available only in communities that adopted flood plain management regulations designed to reduce or avoid future flood damages. *See id.* §§ 4022, 4023. This system has been described as a "carrot and stick" approach. *See Parish of St. Bernard*, 756 F.2d at 1120-21.

Homeowners purchase NFIP flood insurance directly from the Federal Emergency Management Agency ("FEMA") or, more commonly, through private insurers like

- 21 -

State Farm, known as "Write-Your-Own" ("WYO") carriers.[15] *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 265, 267 (3d Cir. 2004) (more than 90% written by WYOs in their own names). All policies sold by FEMA and by WYO carriers are in the form of the Standard Flood Insurance Policy ("SFIP"), the terms of which are prescribed by FEMA regulation. 44 C.F.R. Part 61 App. A; *see also* 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c). Federal funds pay claims under all SFIPs. The federal government bears the risk of loss, and WYO carriers are its fiscal agents. *See* 42 U.S.C. § 4071(a)(1); 44 C.F.R. § 62.23(g)); *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 387-88 (5th Cir. 2005).

Disputes related to SFIP claims are governed exclusively by federal law, in order to ensure the uniformity and consistency that courts have recognized to be essential to the NFIP.[16] 44 C.F.R. Part 61 App. A(1), Art. IX; *see Wright*, 415 F.3d at 390. Thus, in *Peal v. North Carolina Farm Bureau Mutual Insurance Co.*, 212 F. Supp. 2d 508 (E.D.N.C. 2002), the court refused to allow state tort law bad faith claims against a WYO company, because exposing WYO companies to liability under the varying laws of the 50 states would decrease their willingness to participate in the NFIP, and increase the cost of providing flood insurance, making it unaffordable to property owners. *Id.* at 516.

Here, Plaintiffs' attempt to mandate flood coverage through homeowners policies, if successful, would create a court-mandated Louisiana flood insurance program that would disrupt the NFIP and obstruct the national policy objectives of Congress. First, state-mandated

---

[15] *See* http://www.fema.gov/nfipInsurance/companies.jsp (listing participating insurance companies).

[16] *West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978) ("Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law."); *see also Gibson v. American Bankers Ins. Co.*, 289 F.3d 943, 949 (6th Cir. 2002) ("Congress and FEMA have regulated the claims adjustment process and judicial review of coverage claims under flood insurance policies. Uniformity of decision requires the application of federal law and precludes the enforcement of state laws on the same subject.").

- 22 -

coverage through private insurers would discourage and decrease participation in the NFIP by communities and property owners. The result would be to eliminate one of the incentives communities have to adopt flood plain management regulations designed to prevent and/or mitigate future flood damage, a requirement for participation in the NFIP. The absence of such prevention and mitigation steps would increase the burden on the federal government in responding to flood disasters, thereby impeding a significant purpose of the NFIA and the NFIP. *See Parish of St. Bernard*, 756 F.2d at 1122. Second, the requested relief would require insurers to provide flood insurance when Congress had clearly intended insurer participation to be voluntary. *See* 44 C.F.R. § 62.24. Third, forcing insurers to provide flood coverage under existing policies, when current policyholders did not pay for such coverage, is directly contrary to Congressional intent that flood insurance burdens be distributed "equitably among those who will be protected by flood insurance and the general public." 42 U.S.C. § 4001(d). Fourth, granting such relief, would, in the future, force homeowners in special flood hazard areas who are already required to purchase SFIPs as a condition of their mortgages (*id.* § 4012a(b)) to pay additional amounts for overlapping state-mandated coverage once insurers increase their premiums to pay for such coverage. As a result of these conflicts, the NFIA preempts rather than supports Plaintiffs' claims.

795295v.5

## IV.   CONCLUSION

For all the reasons discussed above, State Farm submits that Plaintiffs' Complaint, and each purported claim stated therein, fails as a matter of law and must now be dismissed pursuant to Fed. R. Civ. P. 12(c).

Dated: March 3 , 2006

Respectfully submitted,

Wayne J. Lee, 7916
Mary L. Dumestre, 18873
Andrea L. Fannin, 26280
Heather S. Lonian, 29956
        Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Telephone: (504) 581-3200

Attorneys for State Farm Fire and Casualty Company

- 24 -