

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAY 23 P 4 46

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHAUVIN, ET AL. | * | |
| | * | CIVIL ACTION NO: 05-6454 c/w 06-0177 |
| | * | |
| VERSUS | * | SECTION: "R"(5) |
| | * | |
| STATE FARM FIRE AND CASUALTY | * | JUDGE: VANCE |
| COMPANY ET AL. | * | |
| | * | MAGISTRATE: ALMA L. CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This Document applies to the following civil actions in the Eastern District of Louisiana: Nos. 05-6454, 05-6455, 05-6456, 05-6457, 05-6458, 05-6887, 05-6888, 06-0078, 06-0177, 06-0252, 06-0340, 06-0518, 06-0558, 06-0559, 06-0560, 06-0561, 06-0596, 06-0813, 06-0830, 06-0831, 06-0885, 06-1053, 06-1064, 06-1081, 06-1090, 06-1091, 06-1092, 06-1097, 06-1148, 06-1242, 06-1243, 06-1255, 06-1271, 06-1297, 06-1439, 06-1440, 06-1571, 06-1580, 06-1585, 06-1597, 06-1734.

### DEFENDANTS' CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF RULE 12 MOTIONS[1]

---

[1] Pursuant to the Court's order dated April 6, 2006, Defendants have combined their responses to Plaintiffs' opposition memoranda into a single, Consolidated Reply Memorandum that addresses all of the arguments made by Plaintiffs in opposition to the various Rule 12 motions of the various Defendants. Each defendant adopts the parts of this consolidated memorandum that addresses issues raised in that defendant's motion and/or adopted by that defendant in prior filings.

EXHIBIT F

\_\_\_ Fee\_\_\_
\_\_\_ Process\_\_\_
X Dktd\_\_\_
\_\_\_ CtRmDep\_\_\_
\_\_\_ Doc. No\_\_\_

## PRELIMINARY STATEMENT

Plaintiffs argue that the Valued Policy statute, La. R.S. 22:695 ("VPL"), applies, not just to a fire loss under a fire policy, but to any policy and to any total loss, regardless of whether the total loss is caused by a covered peril. Plaintiffs' argument stretches the VPL well beyond its plain statutory terms and any reasonable construction. Under Plaintiffs' interpretation, the VPL requires an insurer to pay the total policy limits even if wind (a non-fire covered peril) only caused 1% of the damage to a home destroyed by flood (an excluded peril). Just last week, Judge Richard Haik rejected this very same argument in *Joe Turk, et al. v. Louisiana Citizens Property Insurance Corporation, et al.*, USDC, Western District, No. 06-0144. *See* Exh. A, Minute Entry. Plaintiffs' tortured construction of the VPL is directly at odds with the statute itself, and Plaintiffs' claims fail as a matter of law for two independent and equally important reasons: (1) the VPL by its terms only applies to a fire loss under a fire insurance policy; and (2) the VPL only applies where the total loss is caused by a covered peril.

In advocating that the VPL applies to non-fire losses, Plaintiffs ignore controlling rules of statutory interpretation and fail to persuasively distinguish *In re Consolidated Cos., Inc.*, 185 B.R. 223, 226 (E.D. La. 1995), *aff'd*, 106 F.3d 396 (5th Cir. 1996), a case affirmed by the Fifth Circuit in which Judge McNamara squarely held that the VPL does not apply to non-fire losses. Instead, relying solely on inapposite decisions, unsupported public policy arguments, and inadmissible exhibits,[2] Plaintiffs propose an interpretation of the VPL that would render

---

[2] The Affidavit of Wayne R. Rasmussen cannot be considered on Defendants' Rule 12 motions. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Moreover, as this Court has previously recognized, the affidavit of a purported expert in insurance law consisting of his legal opinion as to the meaning of a term used in a Louisiana statute is improper. *U.S. v. McKenna*, No. 91-446, 1992 WL 95933, at *2 n. 3 (E.D. La. Apr. 28, 1992) (excluding expert opinion on the law); *see also Willette v. Finn*, 778 F. Supp. 10, 11 (E.D. La. 1991).

1

meaningless numerous provisions of the Insurance Code, would be contrary to expressed legislative intent, and previously has been rejected by the Fifth Circuit.

Plaintiffs likewise offer no basis for the Court to stretch the VPL to require a policy to cover a total loss caused by a peril expressly excluded under the policy. Plaintiffs would have the VPL create coverage for losses caused by excluded perils such as flood. Applying the basic principles of statutory construction, the VPL's only reasonable and logical construction is that it only applies to "any" loss that is both a "covered loss" and a "total loss," not merely to a partially-covered loss. Any other reading would lead to absurd results. An insurer that wrote a policy expressly excluding flood damage would be compelled to pay its policy limits for a flood loss, if, by happenstance, a tiny portion of the loss was also caused by wind (*e.g.*, where wind blew a shutter off a house destroyed by flood). The authority Plaintiffs rely upon, which largely predates World War II, does not support such an absurd result. Plaintiffs simply do not state a claim under the VPL.

A. **By Its Terms, The VPL Applies Only To Fire Losses Under Fire Policies.**

   1. **Plaintiffs Ignore The Rules Of Statutory Construction And Legislative History.**

Defendants' Motions present a straightforward issue governed by the law for statutory construction: whether the VPL applies to non-fire losses under a homeowner policy.[3] Yet Plaintiffs totally ignore the law governing statutory construction and the VPL's legislative history. They fail to explain how their proposed interpretation of the VPL comports with the

---

[3] Although Plaintiffs devote a significant portion of their brief to arguing that insurance contracts are contracts of adhesion that must be strictly construed against the insurer, their argument is irrelevant because the interpretation of a policy is not at issue in these motions. Instead, the issue is one of statutory interpretation of the VPL statute. *See, e.g., P.O.P. Constr. Co. v. State Farm Fire & Cas. Co.*, 328 So. 2d 105, 107 (La. 1976) (explaining that statutory "phrase[s] should not be construed liberally in favor of the insured, but must be interpreted according to the principles of statutory construction, without leaning toward one side or the other.").

2

elementary rules of statutory construction, which, *inter alia*, require that statutes be interpreted to give effect to all terms and provisions and that different terms are given different meanings. Contrary to these rules of statutory interpretation and without citing any legal authority, Plaintiffs attempt to convince this Court that the term "fire insurance policy" as used in the VPL is synonymous with a "homeowner policy," a distinct term in the Insurance Code.[4] Viewing Plaintiffs' argument through the lens of statutory construction rules, as the Court must, Plaintiffs' argument collapses.

First, Plaintiffs' VPL interpretation is entirely inconsistent with other statutory provisions. Plaintiffs' argument that the term "fire insurance policy" in the VPL really means the broader multi-peril homeowner policy would render meaningless whole sections of Section 691, which, like the VPL, is located in the Fire Insurance Chapter. Section 691(E)(1) provides:

> Appropriate forms of other contracts or endorsements whereby the interest in the property described in such policy shall be insured against one or more perils which the insurer is empowered to assume, <u>in addition to the perils covered by said standard fire insurance policy</u>, may be approved and may, unless at any time disapproved by the office of property and casualty, be used <u>in connection with a standard fire insurance policy</u> and <u>such forms may contain provisions and stipulations inconsistent with the standard policy if applicable only to such other perils.</u>

La. R.S. 22:691 E(1) (emphasis added).[5]

---

[4] Defendants do not dispute that the standard fire insurance policy is incorporated into their homeowner policies, as is allowed by La. R.S. 22:691. However, as this Court flatly held in *Consolidated Cos.*, affirmed by the Fifth Circuit, the standard fire provisions and the VPL "need not be complied with, with respect to the non-fire perils . . . ." *Consolidated Cos,.* 185 B.R. at 226.

[5] La. R.S. 22:691 E(2) further provides that any such policies which provide coverage against the peril of fire and substantial coverage against other perils need not comply with the mandatory provisions for the standard fire insurance policy form, as long as it meets certain requirements, which essentially require that it provide coverage for the peril of fire not less than the coverage afforded by the standard fire insurance policy as outlined in the Insurance Code. *See Consolidated Cos.*, 185 B.R. at 226. Plaintiffs have not disputed that Defendants' policies satisfy these requirements.

3

Section 691 could not be clearer, plainly providing that policies such as homeowner policies, which provide coverage for fire and one or more other perils, may contain a provision inconsistent with the standard fire policy, which includes the VPL, if applicable only to the non-fire perils. *See Consolidated Companies*, 185 B.R. at 226. By its terms, Section 691 plainly establishes that: (1) coverage for non-fire perils is separate and distinct from the standard fire insurance policy; and (2) coverage forms for non-fire perils "may contain provisions and stipulations inconsistent with the standard fire policy" so long as the inconsistent terms apply only to the non-fire perils. *See also* La. R.S. 22:691.2. But Section 691(E)(1) would be unnecessary and meaningless if, as Plaintiffs urge, "fire insurance policy" is synonymous with a homeowner policy or any other multi-peril policy and the provisions of the standard fire policy including the VPL must apply to non-fire perils. The rules of statutory construction preclude Plaintiffs' interpretation of the VPL.[6]

Plaintiffs also fail to explain how their VPL interpretation treating the term "fire insurance policy" as meaning something more comports with statutory interpretation rules dictating that when the legislature uses different terms in statutes, different meanings were intended. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n.9 (2004). Plaintiffs totally ignore the fact that the Insurance Code's two valued policy laws, one for immovables (§ 695) and one for personal property (§ 667(A)), are nearly identical except that § 695, which was re-enacted in 1991 and drew heavily from § 667(A), applies solely to a "fire insurance policy," while § 667(A)

---

[6] Indeed, Plaintiffs fail to even cite Section 691(E)(1) when citing Section 691, presumably because section 691(E)(1) entirely refutes their argument that a fire insurance policy is synonymous with a homeowner policy and that the Insurance Code mandates application of the VPL to any insurance policy which includes coverage for the peril of fire.

4

applies to loss "<u>from whatever cause</u>." (Emphasis added.) This distinction makes clear that § 695, unlike § 667(A), does not apply to losses from any cause. Similarly, Plaintiffs cannot explain why Section 694, the statute immediately preceding the VPL, expressly applies to any "policy of fire, lightning, or <u>windstorm</u> insurance," while the VPL only references a "fire insurance policy."[7] (Emphasis added.) If the Legislature intended to apply the VPL to losses "from whatever cause" or to losses from "windstorm," as in the other statutes, it would have said so. If, as Plaintiffs urge, the term "fire insurance policy" encompassed all other perils such as lightning and windstorm, the Legislature needlessly specified these perils in § 694. Moreover, in 1991, when the Legislature reenacted the VPL limiting it to fire insurance policies only, it simultaneously enacted a statute, La. R.S 22:636.6, specifically applicable to "homeowner's insurance."[8] This use in § 636.6 of the term "homeowner's insurance" when it was specifically intended, further evidences that the Legislature did not mean "homeowner's insurance" when it used the term "fire insurance" in the VPL.

---

[7] See the Memorandum in Support of Defendant's Rule 12(b)(6) Motion to Dismiss in *Labin v. Hartford Ins. Co. of the Midwest*, No. 06-0561, at p. 11 for a side by side analysis of all three statutes.

[8] In fact, the Louisiana legislature specifically considered and rejected a proposed amendment to the 1991 enactment of the VPL which would have expanded the VPL's application to any policy which included coverage for fire instead of just a fire policy. Proposed Amendment No. 1 to House Bill 766 read:

> 'A. In any case in which a policy includes coverage for loss of or damage for property of the insured from the peril of fire, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, the insurer shall compute and indemnify or compensate any covered loss. . . .' See House Committee Amendments, June 7, 1991 at Page 9 (emphasis added).

The Louisiana Legislature rejected the opportunity to expand the purview of the statute to apply to "any case in which a policy includes coverage for loss . . . from . . . fire," and instead adopted the more restrictive language to limit the application of the VPL to "any fire insurance policy." La. R.S. 22:695.

5

Plaintiffs also ignore the VPL's legislative history, which, as recently as 1991, declared that the "law would provide for a 'valued policy clause' which would prohibit a fire insurer from insuring property against <u>fire loss</u> in an amount less than the total amount for which the property is insured."[9]

In short, Plaintiffs' VPL interpretation is simply not sustainable under the Insurance Code.

## 2. Plaintiffs Cannot Distinguish Controlling Fifth Circuit Authority That Supports Defendants.

This Court flatly held in *Consolidated Cos.* that the VPL does not apply to non-fire losses. The Fifth Circuit affirmed *Consolidated Cos.*, in accord with its previous decision in *Graham v. Milky Way Barges*, interpreting La. R.S. 22:692, a related statute, which also uses the term "fire insurance." In *Graham*, the Fifth Circuit held that "[b]ased upon the language of the statute itself, the provision would appear to apply to fire policies only," noting that "this Court has not been able to find any Louisiana case law to the effect that La. R.S. § 22:692 should be applied to any other than fire losses covered by a policy for insurance covering losses due to fire." *Graham*, 824 F.2d at 381-82.

*Consolidated Cos.* and *Graham* are on point and support Defendants' VPL interpretation. Plaintiffs' attempts to avoid their application here are unpersuasive. Unable to actually distinguish the holding of *Consolidated Cos.*, Plaintiffs argue that Judge McNamara's decision, affirmed by the Fifth Circuit, is simply erroneous. Plaintiffs list several purported errors in the Court's decision, but fail to cite any authority to support their position.[10]

---

[9] 1991 H.B. No. 776; Digest; House Commerce Committee Minutes, 6/6/91; Senate Minutes, 7/3/91, attached as Exhibits A-C to Metropolitan's 12(b)(6) Motion to Dismiss, Case No. 05-6456, Rec. Doc. no. 10.

[10] For example, Plaintiffs accuse Judge McNamara of reaching his decision without actually reviewing the Sun insurance policy at issue in the case. (Opp. at 16.) This is incorrect. The opinion clearly states:

6

Even more unpersuasive is Plaintiffs' desperate attempt to distinguish *Graham*. Plaintiffs list several facts that they assert render the decision inapposite. However, none of the facts listed by Plaintiffs would affect the Fifth Circuit's interpretation of the term "fire insurance" as that term is used in La. R.S. 22:692. The Fifth Circuit's holding that the statute's term "fire insurance" applied only to fire policies was a straightforward matter of statutory interpretation -- the same statutory interpretation that is called for here. The facts on which Plaintiffs seek to distinguish the case are completely irrelevant to the Court's holding.

### 3. **Plaintiffs' Inapposite Cases Do Not Support Their VPL Interpretation.**

Contrary to Plaintiffs' assertion, no Louisiana court has held that the VPL (La. R.S. 22:695) applies to a non-fire loss under a homeowner insurance policy. The unremarkable proposition that some courts have cited the prescriptive period in § 691 in evaluating non-fire losses does not salvage Plaintiffs' misinterpretation of the VPL.[11] *Smith v. Metro. Prop. & Cas. Ins. Co.*, 868 So. 2d 57 (La. App. 1st Cir. 2003) is typical of the cases cited by Plaintiffs. It involved an insurer who simply asserted its policy provisions regarding the statute of limitations. The *Smith* case did not address the VPL. Plaintiffs' reliance on *Grice v. Aetna Cas. & Sur. Co.*, 359 So. 2d 1288 (La. 1978) is similarly misplaced. The *Grice* court simply analyzed the applicable prescriptive period under La. R.S. 22:691, where the fire and extended coverage policy at issue did not contain any other prescriptive period. The court did not consider or even

---

"[a]fter a review of the memoranda, **the Sun policy,** and the applicable law, the court finds that provisions in Louisiana Revised Statute 22:695 should not be read into the Sun policy for the reasons set forth below." *Consolidated Cos.*, 185 B.R. at 225 (emphasis added).

[11] Plaintiffs cite *Florida Bldg., Inc. v. Standard Fire Ins. Co.*, 272 F. Supp. 400 (E.D. La. 1967) and *Holloway v. Liberty Mut. Fire. Ins. Co.*, 290 So. 2d 791 (La. App. 1st Cir. 1974) (per curiam) to support application of the VPL to non-fire losses. Neither case actually held that the VPL applied to non-fire losses; rather, the issue of whether the VPL should apply to non-fire losses was never raised and not addressed by the courts. In *Florida Building*, the court held that the building was not a total loss and the opinion does not discuss the VPL. The result in *Holloway* was reached under the policy at issue. The more recent federal cases, *Consolidated Cos.* and *Graham*, directly confront the issue and correctly reject the notion that the VPL should apply to non-fire losses.

7

mention the VPL.[12] Indeed, the *Grice* court acknowledged that non-fire coverages may be "limited" beyond the terms of the standard fire policy, if the policy so provides. *Id.*, at 1291. *Grice* does not support application of the VPL to a non-fire loss under a homeowner policy. In fact, in *Consolidated Cos.*, the on point case that was affirmed by the Fifth Circuit in 1996, this Court refused to apply the VPL to a non-fire loss under a multi-peril policy even upon consideration of the *Grice* decision. *See Consolidated Cos.*, 185 B.R. at 227 n.4 (noting that "Louisiana courts have applied the prescription provisions to non-fire losses where the policy does not set forth a specific prescriptive period for those losses," acknowledging *Grice*).

Finally, Plaintiffs' mistaken interpretation of the VPL finds no support in *Real Asset Management, Inc. v. Lloyd's of London*, 61 F.3d 1223 (5th Cir. 1995), which was decided the year before the Fifth Circuit affirmed *Consolidated Cos. Real Asset Management* did *not* apply the VPL to a non-fire loss; in fact, the Fifth Circuit there did not apply the VPL at all because the total loss was not caused by a covered peril.[13] Moreover, neither the district court nor the Fifth Circuit even considered the issue of whether the VPL applied to a non-fire loss and instead supported their respective holdings by analyzing the case using the valuation provisions contained in the policy.

---

[12] The other cases cited by Plaintiffs are similarly distinguishable. *Makofsky v. Ind. Lumbermens Mut. Ins. Co.*, 194 So. 2d 442, 445 (La. App. 4th Cir. 1967) (holding that suit was filed prematurely under the Standard Fire Policy); *McBride v. Security Indus. Fire Ins. Co.*, 622 So. 2d 743, 744 (La. App. 3rd Cir. 1993) (holding that insurer was entitled to raise a non-occupancy clause as a defense, despite failure to plead it); *Beazor-Williams v. St. Paul Fire & Marine Ins. Co.*, 598 So. 2d 1249, 1250-51 (La. App. 4th Cir. 1992) (following holding in *Grice* that suit limitation provision in standard fire policy applied to a burglary loss). None of these cases involved the VPL.

[13] The court remanded the case for further proceedings to determine the extent to which the insured's recovery should be reduced for its failure to fulfill its duty to mitigate losses and prevent unnecessary subsequent damage. *Real Asset Mgmt.*, 61 F.3d at 1230. Based on this holding, the *Real Asset Management* case supports Defendants' argument that neither the policy, nor any reading of the VPL, would mandate payment of the face value of the homeowner policy in the event of a total loss that is not caused by a covered peril.

### B. The VPL Applies Only Where the "Total Loss" is a "Covered Loss."

#### 1. Plaintiffs Improperly Attempt to Stretch The VPL To Cover Any Total Loss, Regardless Of The Cause.

Plaintiffs' claims also fail because, even if applicable beyond fire insurance policies, the VPL only applies where the "total loss" is a "covered loss." The VPL provides:

> Under any fire insurance policy insuring inanimate, immovable property in this state . . . in the case of total loss the insurer shall compute and indemnify or compensate any **covered loss** of, or damage to, such property which occurs during the term of the policy at such valuation [i.e., the policy limit] without deduction or offset . . . .

La. Rev. Stat. § 22:695(A) (emphasis added). As Judge Haik of the Western District recently ruled, the only reasonable and logical construction of these words is that the statute applies to a loss that is both a "covered loss" and a "total loss." *See* Exh. "A." Plaintiffs' argument that the VPL applies to any total loss regardless of the cause is contrary to: (1) the statutory context; (2) the VPL's purpose; (3) fundamental insurance principles; and (4) the rule of statutory construction requiring a court to avoid absurd results.

As Plaintiffs admit, the VPL simply "determines the **valuation** of a covered loss," it is essentially a "liquidated damages clause." (Opp. at 3, 21 (emphasis in original)). Thus, the VPL does not create coverage for certain perils such as flood, where none exists. Insurance contracts, not the VPL, govern coverage. Plaintiffs' contention that a statute which undisputedly does not address coverage can somehow require insurers to pay for uncovered losses has no support in the statute or the caselaw.

Citing no authority, Plaintiffs invent their own purpose for the VPL: "to ensure that homeowners receive the full value of their policies in the event that their homes are destroyed," regardless of how the homes were destroyed, and regardless of what portion of the

9

loss is covered. (Opp. at 11.) The VPL has no such purpose. Instead, as explained by the Louisiana Fourth Circuit Court of Appeal, the VPL's principal purpose is "to keep insurers and their representatives from writing insurance on property for more than it is actually worth . . . ." *Atlas Lubricant Corp. v. Fed. Ins. Co.*, 293 So. 2d 550, 556 (La. App. 4th Cir. 1974). This is because, when policy limits are too high, the corresponding premiums are also too high. *Seider v. O'Connell*, 612 N.W.2d 659, 671 (Wis. 2000) (explaining purpose of valued policy laws). Plaintiffs' VPL interpretation is at odds with the VPL's main purpose. Defendants did not receive premiums for the risk of loss by flood, which is excluded. Adopting Plaintiffs' VPL interpretation would force insurers to increase premiums because of the risk that they might have to pay for damage caused by an excluded peril in the event of a total loss. Homeowners who purchase both homeowners and flood policies would pay premiums higher than necessary because they would, in effect, be purchasing flood coverage (for a total loss) under two policies, a result the VPL is designed to avoid.[14]

Finally, if accepted, Plaintiffs' VPL interpretation would lead to absurd results, contrary to the Louisiana Supreme Court's instruction that "[c]ourts should avoid constructions which will render legislation absurd" and "statutes must be interpreted in such a manner as to

---

[14] Plaintiffs' VPL interpretation is also contrary to the basic insurance principle, articulated in *Briede*, a case cited by Plaintiffs, that "[b]oth [the] policy and [the valued policy] law are intended merely to make it clear that <u>the contract is one of indemnity and not a mere wager</u>; in other words that <u>the company undertakes merely to indemnify the assured for the actual loss he may suffer,</u> and not simply to bet him so much money that no fire will occur on his premises." *Briede v. Commercial Union Assur. Co.*, 14 Teiss. 120, 126, 1917 WL 1628, at *4 (La. App. Orleans 1917) (emphasis added); *see also In re Clover Ridge Planting & Mfg. Co.*, 151 So. 212, 220 (La. 1933) (stating principle that "a policy of insurance is a contract of indemnity, and not a wager"). If, as Plaintiffs urge, insureds could recover the entire policy limit where only a fraction of the loss is covered, insurance policies would become wagering contracts, not contracts of indemnity, and insureds who did not buy flood insurance would receive coverage for which they never paid a premium.

10

render their meaning rational, sensible, and logical." *State ex rel. Dep't of Pub. Safety & Corrections v. La. Riverboat Gaming Comm'n*, 655 So. 2d 292, 302 (La. 1995). Under Plaintiffs' interpretation of the statute, if floodwaters completely inundated a home to the base of the roof, but wind blew a shutter off the house, Defendants would be required to pay the policy limit. On those facts, an insured with adequate flood coverage would receive nearly twice the value of their home. The VPL cannot be construed to require such an unintended and absurd result, which would result in insuring property for more than it is worth. *See Atlas Lubricant*, 293 So. 2d at 556.

### 2. Plaintiffs Again Cite Inapposite Cases.

Plaintiffs contend that two ancient cases, *Hart v. North British & Mercantile Ins. Co.*, 162 So. 177 (La. 1935) and *Briede*, held that "an insurer with **any** liability for a total loss under Louisiana's VPL is liable for the face amount [of the] policy." (Opp. at 23). Plaintiffs misread the cases. Both cases involved losses caused entirely by *fire*, a covered peril, and involved disputes about whether the loss was a "total loss." Neither case held that the VPL requires an insurer to pay for damage caused by an excluded peril.[15]

---

[15] Plaintiffs' other Louisiana authority is equally inapposite. *See S. Produce Co. v. Am. Ins. Co.*, 166 So. 2d 59, 60 (La. App. 4th Cir. 1964) (holding, in case involving fire loss, that VPL overrode policy provision limiting amount recoverable to value of the use of improvements and betterments for remainder of lease term); *Nielsen v. Lafayette Ins. Co.*, 300 So. 2d 217, 220 (La. App. 2d Cir. 1974) (holding that, where there was a total loss caused by fire, the trial court appropriately divided the policy limit between the owner and the mortgagee). The additional cases cited by Plaintiff Caritha Williams also do not support Plaintiffs' position. *See Monteleone v. Royal Ins. Co.*, 18 So. 472, 473 (La. 1895) (holding, in case involving a fire loss, that building was a total loss where "no repairs would have furnished a safe building"); *Lake Arthur Dredging Co. v. Mechanics' Ins. Co.*, 111 So. 466, 469 (La. 1927) (holding that valued policy law then in effect was inapplicable to movable property, and that insurer could not write a valued policy on movable property); *Occhipinti v. Boston Ins. Co.*, 72 So. 2d 326, 335 (La. App. Orleans 1954) (holding that policy provision providing insurer with option to rebuild was overridden by valued policy law). Moreover, Williams' argument that application of the VPL to a loss caused by a combination

11

Likewise, Plaintiffs' out of state authorities are neither controlling nor persuasive in determining the issue here of interpretation of a Louisiana statute. In *Mierzwa v. Florida Windstorm Underwriting Ass'n*, 877 So. 2d 774 (Fla. Dist. Ct. App. 2004), a divided intermediate appellate court interpreted different statutory language under unique facts. This decision has been both legislatively overruled and criticized by another Florida appellate court. *See* Fla. Stat. § 627.702(1)(b) (2005); *Citizens Prop. Ins. Corp. v. Ceballo*, No. 05-2259, 2006 Fla. App. LEXIS 7002, at *4 (Fla. Dist. Ct. App. May 10, 2006) (refusing to construe Florida VPL to provide "a windfall to the homeowners"). The Minnesota decision in *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645 (Minn. 1986) does not reference the Minnesota valued policy law and *Benke v. Mukwonago-Vernon Mut. Ins. Co.*, 329 N.W.2d 243 (Wis. Ct. App. 1982) does not mention the Wisconsin valued policy law. The result in *Johnson v. Madelia Lake Crystal Mut. Ins. Co.*, No. 03-820, 2004 WL 61057 (Minn. Ct. App. Jan. 13, 2004) (unpublished) was consistent with the policy provisions and did not require application of a valued policy law.

### C. The Filed Rate Doctrine Bars Plaintiffs' Claims.

The VPL clearly and unambiguously applies only to situations where a peril covered by the insurance policy is the cause of the covered property being rendered a total loss. Consistent with that understanding, the Department of Insurance and the Louisiana Rating Commission ("LIRC") have complied with their duly delegated authority to review and appove policy forms and insurance rates. The policy forms expressly exclude coverage for damage

---

of covered and uncovered perils involves questions of fact supports defendants' Rule 12 arguments that the VPL does not apply to non-covered perils as a matter of law.

12

caused by flood and the rates approved by the LIRC are not "excessive, inadequate, or unfairly discriminatory." La. R.S. 22:1402. Thus, Plaintiffs seek coverage for which they were not charged and which is expressly excluded in their insurance contract.[16] If maintained, Plaintiffs' claims would effect a judicial nullification of the policy exclusions and rates duly approved by the regulatory authorities delegated by the Louisiana Constitution.

### D. Plaintiffs' Claims Violate the Constitutions of the United States and State of the Louisiana.

Plaintiffs' claims are also barred by the Constitutions of the United States and the State of Louisiana. Plaintiffs seek judicial imposition of massive liability for flood damages after that damage has occurred, and their claims therefore impair the contractual rights of the defendant insurers, result in a taking of private property without just compensation, and unduly burden interstate commerce.

Contrary to Plaintiffs' assertions, the contract rights of the defendant insurers enjoy Fourteenth Amendment protection against arbitrary and irrational state interference through the court system. "The test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised." *See New York Times Co. v. Sullivan*, 376 U.S. 254, 265, 84 S. Ct. 710, 718 (1964). Plaintiffs cannot cite any Louisiana court or body that has adopted their interpretation of the VPL, which belies their argument that these consequences were "well-known" to the defendant insurers. (Opp. at 32). Plaintiffs' efforts to

---

[16] If the Court considered the VPL ambiguous, the actions of the LIRC and DOI in approving rates and policies that do not cover flood exposure substantiates defendants' statutory interpretation. "[W]here the statute is ambiguous...a long settled contemporaneous construction by those charged with administering the statute is given substantial and often decisive weight in its interpretation." *Traigle v. PPG Indus., Inc.*, 332 So. 2d 777, 782 (La. 1976) (citation omitted).

shift the liability of flood losses to the defendant insurers would therefore certainly trigger the "'basic protection against 'judgments' without notice afforded by the Due Process Clause." *BMW of N. Am. v. Gore*, 517 U.S. 559, 574-75 & n.22, 116 S. Ct. 1589, 1598 (1996).

Plaintiffs' claims, if successful would also result in a taking without just compensation. "[A] strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Eastern Enters. v. Apfel*, 524 U.S. 498, 523, 118 S. Ct. 2131, 2146 (1998). Plaintiffs clearly wish to shift the catastrophic economic burdens of the flood damage from those who lacked flood insurance or whose coverage was capped by the limits set by the National Flood Insurance Program ("NFIP"), but the Takings Clause prohibits the retroactive shifting of this liability onto insurers who neither charged nor received premiums in exchange for such coverage.

In addition, granting the relief Plaintiffs seek would also clearly implicate interstate commerce. Forcing insurers to provide coverage for which they received no premiums would place an excessive, rather than "incidental" burden upon the insurance industry and would have adverse national effects upon both the private insurance industry and the National Flood Insurance Program ("NFIP"). *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 847 (1970) Plaintiffs cite no authority for their assertion that the purpose of the VPL was to provide insureds with coverage against excluded perils, and furthermore, the desire to provide insureds with coverage for which they did not pay premiums can hardly be categorized as a

14

"legitimate local interest." *Id.* Plaintiffs' claims, if successful, would therefore place an impermissible undue burden on interstate commerce.

E. **Plaintiffs' Claims Are Preempted by the National Flood Insurance Act**

Plaintiffs' claims are preempted by the National Flood Insurance Act ("NFIA") because they would frustrate federal law. *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 663-64, 113 S. Ct. 1732 (1993) (citation omitted). Through the NFIA and the NFIP, Congress clearly sought to establish a program of flood insurance that would "complement and encourage preventative and protective measures" (42 U.S.C. § 4001(a)(3)) and would be "integrally related to a unified national program for flood plain management." *Id.* § 4001(c)(2). Plaintiffs seek to thwart this aim by creating state-mandated flood coverage that has none of the attendant preventative and protective measures of the NFIP. Moreover, under Plaintiffs' interpretation of the VPL, Louisiana insureds would have little, if any, incentive to purchase federal flood insurance. Because this would clearly frustrate the intent of the NFIA, Plaintiffs' claims are preempted.

## CONCLUSION

For all the reasons stated above in addition to those stated in Defendant's prior briefing, Plaintiffs' complaints and each claim stated therein fail as a matter of law and must be dismissed pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure.[17]

---

[17] Lexington Insurance Company's motion to dismiss filed in *Ganucheau v. Lexington Insurance Co.*, CA 06-CIV-0885 should be granted for the additional reason that plaintiff Ganucheau failed to oppose Lexington's motion by neither joining Plaintiffs' consolidated response nor filing a separate response by May 12, as required by the Court's April 6, 2006 Order.

Respectfully submitted,

*/s/ Judy Barrasso*

| | |
|---|---|
| Wayne J. Lee, T.A. # 7916<br>Mary L. Dumestre, # 18873<br>Andrea L. Fannin, # 26280<br>Heather S. Lonian, # 29956<br>Of<br>STONE PIGMAN WALTHER WITTMANN L.L.C.<br>546 Carondelet Street<br>New Orleans, LA 70130<br>Telephone: (504) 581-3200<br>Facsimile: (504) 581-3361<br><br>Attorneys for State Farm Fire and Casualty Company | Judy Y. Barrasso, T.A. # 2814<br>H. Minor Pipes, III, # 20463<br>Susan M. Rogge, # 28203<br>Of<br>BARRASSO USDIN KUPPERMAN<br>FREEMAN & SARVER, L.L.C.<br>909 Poydras Street, Suite 1800<br>New Orleans, Louisiana 70112<br>Telephone: (504) 589-9700<br><br>Attorneys for Allstate Insurance Company, Allstate Indemnity Company and Encompass Insurance Company |
| Ralph S. Hubbard, III, T.A., # 7040<br>Seth A. Schmeeckle, # 27076<br>LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD<br>601 Poydras Street, Suite 2775<br>New Orleans, LA 70130<br>Telephone:(504) 568-1990<br>Facsimile:(504) 310-9195<br><br>Stephen E. Goldman (pro hac vice)<br>Wystan M. Ackerman (pro hac vice)<br>ROBINSON & COLE, LLP<br>280 Trumbull Street<br>Hartford, Connecticut 06103-3597<br>Telephone: (860) 275-8200<br>Facsimile: (860) 275-8299<br><br>Attorneys for Hartford Insurance Company of the Midwest and The Standard Fire Insurance Company | Thomas P. Anzelmo T.A., # 2533<br>MCCRAINIE, SISTRUNK, ANZELMO, HARDY MAXWELL & MCDANIEL<br>3445 N. Causeway Blvd., Suite 800<br>Metairie, Louisiana 70002<br>Telephone:(504) 831-0946<br>Facsimile:(504) 831-249<br><br>Christopher W. Martin (Pro Hac Vice)<br>Texas Bar 13057620<br>Federal ID 13515<br>Martin R. Sadler (Pro Hac Vice)<br>Texas Bar 00788842<br>Federal ID 18230<br>MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.<br>808 Travis Street, Suite 1800<br>Houston, Texas 77002<br>Telephone: (713) 632-1700<br>Facsimile: (713) 222-0101<br><br>Attorneys for United Services Automobile Association |

Judy Y. Barrasso, T.A. # 2814
H. Minor Pipes, III, # 20463
Of
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 589-9700

Attorneys for Liberty Mutual Fire Insurance Company

Judy Y. Barrasso, T.A. # 2814
Brian J. Capitelli, # 27398
Of
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 589-9700

Attorneys for Metropolitan Property and Casualty Insurance Company

Matthew J. Ungarino # 15061 T.A
William H. Eckert # 18591
David I. Bordelon # 16815
UNGARINO & ECKERT, LLC
3850 North Causeway Blvd.
Ste. 1280
Metairie, Louisiana 70002
Telephone: (504)836-7565
Fax: (504) 836-7566

David Israel, # 7174
Kevin Barreca, # 24015
Bryan C. Shartle, # 27640
SESSIONS, FISHMAN & NATHAN, L.L.P.
Lakeway Two, Suite 1240
3850 N. Causeway Blvd.
Metairie, LA 70002
Telephone: (504) 828-3700
Facsimile: (504) 828-3737

Attorneys for Auto Club Family Insurance Co.

Robert I. Siegel, # 12063
GIEGER, LABORDE, & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone:(504) 561-0400
Facsimile:(504)561-1011

Richard J. Doren, Esq. (Of Counsel)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone:(213)229-7000
Facsimile:(213) 229-7520

Attorneys for Lexington Insurance Company

Howard B. Kaplan, # 14414
BERNARD, CASSISA, ELLIOTT
& DAVIS
1615 Metairie Road
P.O. Box 55490
Metairie, Louisiana 70055-5490
Telephone: (504) 834-2612

Attorneys for Lafayette Insurance Company

Ralph S. Hubbard III, T.A., # 7040
Kristopher T. Wilson, # 23978
Joseph P. Guichet, # 24441
Seth A. Schmeeckle, # 27076
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

17

| | |
|---|---|
| John W. Waters, Jr., T.A. # 13258<br>Gregory J. McDonald # 1933<br>BIENVENU, FOSTER, RYAN & O'BANNON<br>1010 Common Street, Suite 2200<br>New Orleans, LA 70112-2401<br>Telephone: (504) 581-2146 or 310-1500<br>Fax: (504) 522-7859 or 310-1501<br><br>Attorneys for Louisiana Citizens Property<br>Insurance Corporation | Kevin P. Kamraczewski (Pro Hac Vice)<br>Paul E. B. Glad (Pro Hac Vice)<br>Andrew R. Greene (Pro Hac Vice)<br>David R. Simonton (Pro Hac Vice)<br>SONNENSCHEIN NATH<br>& ROSENTHAL LLP<br>7800 Sears Tower<br>Chicago, IL 60606<br>Telephone:<br>Facsimile:<br><br>Attorneys for Massachusetts Bay Insurance Company |

## CERTIFICATE

I hereby certify that a copy of the above and foregoing *Defendants' Consolidated Reply Memorandum in Support of Rule 12 Motions* has been served upon all counsel of record by electronic mail, facsimile and/or by placing same in the United States mail, postage prepaid and properly addressed this 23rd day of May, 2006.

*/s/ Judy Barrasso*

Case 2:05-cv-04182-SRD-JCW   Document 6543-7   Filed 07/17/07   Page 20 of 20
Case 6:06-cv-00144-SSV-ALC   Document 47   Filed 05/23/2006   Page 20 of 20
Case 6:06-cv-00144-RTH-CMH   Document 75   Filed 05/18/2006   Page 1 of 1

RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 5/18/06
       GB

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

PRESENT: HON.   RICHARD T. HAIK , JUDGE, Presiding        Date: May 18, 2006
                Mary Thompson , Court Reporter
                Gary Brazell  , Minute Clerk
COURT OPENED:   11:12 A.M.                                COURT ADJOURNED: 1:15 P.M.

### MINUTES OF COURT

CASE NO. 06-144     JUDGE: Haik              MAGISTRATE JUDGE Hill

JOE TURK, ET AL                    VS.       LOUISIANA CITIZENS PROPERTY INSURANCE CORP
                                             ET AL

### APPEARANCES

Kenneth DeJean, Arthur Murray, Claude Devall
Lawrence Billeaud, Jennifer Jones, Paul Cox,
Stephen Murray, Thomas Filo,
                                        FOR   Plaintiffs
                                        FOR
Wayne Lee & Stephen Bullock             FOR   State Farm
John Waters & Greg McDonald             FOR   Louisiana Citizens Property Ins Corp
Andre LaPlace                           FOR   Caritha Williams

CASE CALLED FOR                              FILINGS:
_X_ Hearing on motions
___ Jury selection only
___ Trial with/without jury    day
___ Other

VERDICT, RULING, COMMENTS:

Motion (# 35) to Transfer Case or Alternatively to Stay Proceedings by State Fire & Casualty Co.
is DENIED.

Cross-Motion (# 54) for Partial Summary Judgment and Opposition to Plaintiffs' Motion for Partial
Summary Judgment by State Fire & Casualty Co. is GRANTED. The Court shall sign a formal judgment,
upon presentation and approved by the parties.

IT IS ORDERED that plaintiff proffer 1 & 2 be filed into the record.

IT IS ORDERED that the affidavit of Karen Terry and Vickie Temonia submitted by defendant be filed
into the record as D-1 and D-2.

