UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARLENE KATZ | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 06-4155 |
| | * | |
| STATE FARM FIRE AND CASUALTY | * | SECTION "R" (2) |
| COMPANY, and ANTHONY J. CEMO, | * | |
| individually and as agent of STATE FARM | * | JUDGE VANCE |
| FIRE AND CASUALTY COMPANY | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |

* * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF THE
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
TO DISMISS PLAINTIFF'S EXCESS FLOOD ALLEGATIONS**

Anthony J. Cemo ("Cemo") and State Farm Fire and Casualty Company ("State Farm") (collectively "Defendants") submit this Memorandum in Support of their Motion for Partial Summary Judgment To Dismiss Plaintiff's Excess Flood Allegations.   As shown below, plaintiff's claims against Cemo and State Farm for the alleged failure to advise about and/or provide excess flood insurance should be dismissed because the claims fail as a matter of law.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On August 6, 2006, plaintiff Marlene Katz commenced this action by filing a Complaint against Defendants State Farm and State Farm agent Anthony J. Cemo.  On May 30, 2007, the Court allowed plaintiff to file a First Supplemental and Amended Complaint.  The Complaint, as amended, generally alleges that plaintiff suffered uninsured property losses as a result of the alleged negligence and/or purported failure of Defendants to 1) advise plaintiff regarding the

availability and/or option to purchase excess flood insurance, 2) provide plaintiff with access to excess flood insurance, and for 3) advising plaintiff that no excess flood insurance was available to plaintiff.  The Complaint further alleges that State Farm is liable for the purported acts and omissions of Cemo.

Additionally, the Complaint alleges that State Farm engaged in the following independent acts of negligence and/or purported breaches of fiduciary duties:

1)      failure to make excess flood insurance available;

2)      failure to adequately train, school and supervise its agents on the availability of excess flood insurance;

3)      failure to obtain independent third-party excess coverage and make it available for sale through its agents;

4)      failure to disclose and/or advise State Farm insureds of potential excess coverage by either placing same in bold print on the face of its policies, sending notices to its insureds of excess flood insurance availability, and otherwise failing to notify State Farm insureds of excess flood insurance availability;

5)      failure to initiate proper policies and procedures to assure State Farm customers would receive adequate advise and proper access to insurance products that would protect their assets; and

6)      undertaking and breaching a duty to advise insurance purchasers of the need for flood insurance through representations on the websites of State Farm and its agents that plaintiffs would be provided with an "'annual check-up'" to assess the adequacy of her insurance and that appropriate flood insurance should be purchased because a home is three times more likely to be destroyed by flood than fire.  Compl. at ¶ XXI.

## II.  ARGUMENT AND AUTHORITIES

### A.      The Pleadings and Evidence

The Complaint, as amended, generally alleges that plaintiff suffered uninsured property losses as a result of the alleged negligence and purported failure of Defendants to provide excess flood insurance or information about excess flood insurance.  The Complaint alleges that in

879397v.1

September 2004, the plaintiff requested flood insurance coverage beyond the $250,000 building and $100,000 contents limits offered under the National Flood Insurance Program ("NFIP"), and further alleges that Cemo told her that additional flood insurance was not available.  Compl. at ¶ IX.  Plaintiff testified that she believed that she had a better knowledge of the value of her home than Mr. Cemo because of her work in real estate.  Ex. A Katz deposition at p. 46, ll. 6-14. She further testified that she had heard, before contacting Mr. Cemo in September 2004, that excess flood insurance was available through Lloyds of London.  *Id.* at p. 50, ll. 16-25; p. 51, ll1-8; p. 52, ll. 17-25; p. 54, ll. 10-25; p. 55, ll. 1-18.  Yet she did not contact anyone offering Lloyd's of London insurance products.  Instead, she asked Mr. Cemo, a State Farm agent, licensed to sell only State Farm insurance products, whether she could get additional flood insurance above the $250,000/$100,000 limits under the NFIP.  *Id.* at p. 50, ll. 16-25; p. 51, ll. 1-8.  Ms. Katz testified that Mr. Cemo told her no.  *Id.* at p. 54, ll. 10-23.  She further testified that she then told Mr. Cemo that she had heard excess flood insurance was available through Lloyd's of London and that Mr. Cemo told her that she could not get it.  *Id.*  Indeed, Ms. Katz could not purchase excess flood insurance through Mr. Cemo; nor could she purchase any insurance product offered by Lloyd's of London from Mr. Cemo.  Mr. Cemo was licensed to sell only State Farm insurance products and the only flood insurance he and State Farm offer is the Standard Flood Insurance Policy issued by State Farm in its capacity as a WYO carrier under the NFIP. Ms. Katz did not ask Cemo, and Cemo did not undertake a duty, to investigate whether excess flood insurance could be obtained from any other insurer in the private market; nor did he undertake to provide information about and/or make available excess flood insurance.  Ms. Katz

could have asked Cemo to investigate into whether excess flood insurance was available on the private market, but she did not.  Nor did Ms. Katz herself look into the matter.  Ms. Katz could have done so readily because she was a licensed real estate agent, who routinely sold homes in the price range of upwards to $400,000 in the New Orleans metropolitan area (*id.* at pp. 13-15; p. 56, ll. 18-25; p. 57, ll. 1-2), and she had heard that excess flood insurance was available through Lloyd's of London.  She did not contact an insurance broker who sells insurance products other than those offered by State Farm and she did not contact anyone selling insurance products offered by Lloyd's of London.

Further, there is no evidence that flood insurance in excess of the $250,000/$100,000 NFIP limits was available through Lloyd's of London or anywhere else in the private insurance market for plaintiff's property.  Nor is there any evidence that even if flood insurance in excess of the $250,000/$100,000 NFIP limits was available in the private insurance market, plaintiff's property was eligible for such coverage, or even that she would have purchased it.

**B.     Plaintiff Fails To State A Claim Against the Defendants For the Alleged Failure of a Purported Duty To Offer, Make Available, Provide Information About, And/Or Sell Excess Flood Insurance.**

The pleadings, evidence, and applicable law amply demonstrate that plaintiff has failed to establish a cause of action against the Defendants for the alleged failure to offer, make available, provide information about, and/or sell excess flood insurance.  First, there is no duty at law to advise an insured regarding the availability of excess flood insurance.  Second, neither Cemo nor State Farm ever undertook a duty to provide plaintiff with information on excess flood insurance.  Further, neither federal nor Louisiana law requires an agent to spontaneously identify an

insured's needs or identify whether he is underinsured.  Moreover, an insured is charged with knowledge of the terms of his policies, including the level of coverage purchased.  Further still, neither Cemo nor State Farm can be held liable for failing to sell plaintiff a product which they do not sell.  Finally, plaintiff's claims against the Defendants are prescribed and/or perempted.

> 1.    **No Cause of Action Exists Against the Defendants Under Federal Law.**

The Complaint, as amended, merely presents conclusory allegations that Cemo and State Farm owed plaintiff a duty to inform and advise her of the availability and option to purchase excess flood insurance.  There is no federal statutory or jurisprudential authority for the proposition that an insurance agent owes a fiduciary duty to inform insurance customers of the availability and option to purchase excess flood insurance.  Nor was there any undertaking by the Defendants to do so.  Cemo is an independent contracting sales agent who is licensed to sell State Farm insurance products.  (State Farm's Answer at ¶ 3; Cemo's Answer at ¶ 18).  One of the products offered by State Farm, through its agents, is a Standard Flood Insurance Policy ("SFIP").  State Farm sells SFIPs covering both residential and commercial properties in Louisiana solely pursuant to its participation in the NFIP which was established in 1968 by the National Flood Insurance Act ("NFIA"), 42 U.S.C. §§ 4001 *et seq*.  The NFIP is operated by the Federal Emergency Management Agency ("FEMA"), which has the authority to regulate the participation of private insurance companies in the NFIP, the terms on which flood insurance will be provided, and the manner in which claims are adjusted and paid.  42 U.S.C. §§ 4013(a), 4019, 4071, 4081.

879397v.1

Individuals can purchase flood insurance under the NFIP either directly from FEMA or from private insurance companies like State Farm when FEMA authorizes the insurance companies to write NFIP flood insurance policies under their own names. *See* 44 C.F.R. § 62.23. Such private insurers are known as "Write Your Own" (WYO) companies. 44 C.F.R. §§ 62.23-24; 48 Fed. Reg. 46789 (1983). WYO companies are subject to, *inter alia*, FEMA regulations and the terms of an "Arrangement" between FEMA and WYO companies. 44 C.F.R. Pt. 62, App. A. However, approval of an insurer as a WYO company does not mean that the insurance company controls the limits of the policy exposure or the coverage terms. Rather, WYO companies merely commit to sell coverage authorized by FEMA and on the terms and conditions established in the SFIP.

All policies issued under the NFIP (whether by FEMA or by a WYO company) use the terms and conditions of the SFIP. 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c). The SFIP itself is a regulation and is found in 44 C.F.R. Pt. 61, App. A. WYO companies are not authorized to vary or waive any of the SFIP terms and conditions without the express written consent of FEMA. 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c). "A WYO Company issuing flood insurance coverage shall arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the [NFIP], based upon the terms and conditions of the Standard Flood Insurance Policy." 44 C.F.R. § 62.23(d).

WYO carriers are paid by FEMA for the services they provide in connection with the underwriting and sale of SFIPs and for the handling and defense of claims under the policy. *See* 44 C.F.R. Part 62, App. A, Art. III. WYO carriers, however, do not bear the risk of loss under

the SFIPs.  WYO carriers are fiscal agents of the United States, 42 U.S.C. § 4071(a)(1); 44 C.F.R. § 62.23(g), and payments on SFIP claims are a direct charge on the United States Treasury.  *See Wright v. Allstate Ins. Co.,* 415 F.3d 384, 387-88 (5th Cir. 2005); 42 U.S.C. § 4017(d)(1).

The maximum coverage available under the NFIP for residential properties, per property, is $250,000 for building and $100,000 for contents.  Neither State Farm nor Cemo offer any flood insurance other than the SFIP and they carry no excess flood insurance product.

Plaintiff alleges that she acquired a federal flood insurance policy from State Farm through Cemo but asserts that she should have been advised about and/or offered excess flood insurance.  Plaintiff's claims are premised on the assertion that WYO carriers participating in the NFIP have a duty to offer, make available, and/or inform customers about excess flood insurance coverage anytime the WYO carrier sells an SFIP, even if the WYO carrier itself has no excess flood insurance coverage product to offer and even though the customer has never stated a desire to purchase excess flood coverage.  As an extension of this premise, plaintiff further contends that because WYO carriers including State Farm, have a duty to offer, make available, and/or inform customers about excess flood coverage, the agents of the WYO carriers, including State Farm agent Cemo, also have a duty to provide and/or inform customers about the availability of excess flood insurance, even though the WYO carrier itself has no excess flood insurance coverage product and the customer has not stated a desire to purchase excess flood coverage. These premises have no support in law.

879397v.1

Participation by private insurers in the NFIP as a WYO carrier is voluntary and is regulated by FEMA, pursuant to federal statute.  42 U.S.C. §§ 4071, 4081.  FEMA regulates such participation through the "Arrangement" between FEMA and WYO companies, 44 C.F.R. Pt. 62, App. A, as well as numerous regulations and directives.  There is nothing in the Arrangement agreement that imposes a duty upon State Farm, or any WYO company, to offer, make available, provide information about, and/or sell excess flood insurance coverage.  Nor are there any other federal statutes, regulations, or other directives that impose such a duty on WYO companies like State Farm.  Where there is no duty on a WYO company to offer, make available, provide information about, and/or sell excess flood insurance coverage, there certainly is no duty on the part of the WYO company's agents to provide and/or inform customers about the availability of excess flood insurance.  Accordingly, plaintiff fails to state a cause of action against the Defendants under federal law.

Moreover, imposing on WYO companies and their agents the duties asserted by plaintiff would interfere with the significant goals that Congress sought to accomplish in establishing the NFIP.  The Court of Appeals for the Fifth Circuit has described the principal purpose of the NFIP as follows:  "Clearly, the principal purpose in enacting the NFIP was to reduce through the implementation of adequate land use controls and the availability of subsidized flood insurance, the massive and ever increasing burden of federal flood disaster assistance."  *United States v. Parish of St. Bernard*, 756 F.2d 1116, 1122 (5th Cir. 1985).  As the Fifth Circuit noted, one of the ways Congress sought to reduce the flood disaster relief burden on the federal government was by making federally-backed flood insurance available.  Congress recognized that private

insurance companies would play an important role in accomplishing the goal of making federally-backed flood insurance widely available.  *See* 42 U.S.C. § 4001(d)(1) (NFIA authorizes "a flood insurance program by means of which flood insurance, over a period of time, can be made available on a nationwide basis through the cooperative efforts of the Federal Government and the private insurance industry"); *see also* 42 U.S.C. § 4071 (authorizing FEMA to provide for participation by insurance companies); 42 U.S.C. § 4081 (authorizing FEMA to enter into contracts, agreements, or arrangements with insurance companies).

In establishing the WYO program in 1983, FEMA recognized at least two benefits of private insurance company participation:

> [I]t was felt that the public would best be served if the flood insurance program was grounded in the considerable insurance expertise reposing in the private sector.  Also, if the program is to be truly "nationwide" in scope, it must effectively penetrate its potential insurance market in every flood hazard area in the nation.  48 Fed. Reg. 46789 (October 14, 1983).

Clearly, the program was designed to get the federally-backed flood insurance policies into the hands of the consumers.  But nothing in the NFIA or the regulations that implement it, imposes upon WYO companies any duty regarding advice, placement, or offers of <u>excess</u> flood insurance coverage that might be sold by other insurers.  Indeed, requiring WYO companies and their agents like State Farm agent Cemo to offer, make available, and/or inform customers about excess flood insurance coverage, would discourage insurers' participation in the NFIP and frustrate the federal goal of making flood insurance widely available.

879397v.1

**2.      Plaintiff Fails to State a Cause of Action Against Cemo And State Farm Under  Louisiana Law.**

Plaintiff similarly fails to state a cause of action against the Defendants under Louisiana law.  Plaintiff brashly proposes that insurance companies and their agents have a standing affirmative duty to advise and/or provide access to excess flood insurance coverage; but no such duty exists at law.  No Louisiana statute,[1] regulation, or jurisprudence imposes a duty upon an insurance agent to provide excess flood insurance and/or inform insurance customers of the availability and option to purchase excess flood insurance.

Louisiana law imposes a fiduciary duty on insurance agents in their dealings with the insured in certain instances, but this is not one of those instances.  The Complaint, as amended, alleges merely that 1) plaintiff purchased a standard flood insurance policy for her property from State Farm through agent Cemo; 2) that plaintiff relied on Cemo's expertise with respect to her flood insurance decisions; 3) that Cemo did not inform plaintiff of the availability of additional or supplemental flood insurance outside of the NFIP, and 4) that State Farm and Cemo did not provide plaintiff excess flood insurance.  Accordingly, if the law does not impose an affirmative duty upon State Farm and State Farm agents to inform customers about excess flood coverage and/or provide them with excess flood coverage, plaintiff's claims must fail.

Nor did State Farm or Cemo otherwise assume such obligations.  Under Louisiana law, in order to hold an insurance carrier or agent liable for failure to procure insurance for another, the

---

[1]  While the Louisiana legislature has statutorily imposed requirements on insurance companies for providing certain types of coverage, such as uninsured motorist coverage (*see* La. R.S. 22:680*)*, the Louisiana legislature has not imposed similar requirements relating to excess flood insurance.

complainant must allege and prove: 1) an undertaking or agreement by the insurance agent to procure insurance; 2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and 3) the actions of the agent warranted an assumption by the client that he was properly insured. *See e.g., Karam v. St. Paul Fire & Marine Ins. Co.,* 281 So. 2d 728, 730-731 (La. 1973).  The Complaint makes no allegations that purport to establish any of these elements.  It does not allege that State Farm or Cemo undertook to advise plaintiff about and/or provide access to excess flood insurance.  Nor does it allege that State Farm or Cemo offered or agreed to procure excess flood insurance for plaintiff.  Plaintiff avers that State Farm and Cemo undertook "the duty to advise insurance purchasers, including plaintiff of the need for flood insurance" through "representations posted on the web-sites of State Farm and its agents that plaintiff would be provided with an 'annual check-up' to assess the adequacy of her insurance" and through statements on its website that "appropriate flood insurance should be purchased because a home is three times more likely to be destroyed by flood than by fire."  These allegations fail to set forth facts sufficient to show any undertaking by the Defendants to sell plaintiff excess flood insurance and/or advise her about excess flood insurance coverage.  Generalized statements on a website encouraging consumers to purchase flood insurance does not amount to an undertaking to advise plaintiff regarding and/or provide her with access to excess flood insurance, a product not offered by State Farm.  Likewise, allegations that the websites of State Farm and its agents contains statements that it offers insureds an "annual check-up" to assess their insurance needs does not constitute an undertaking to advise plaintiff regarding and/or provide her with access to

excess flood insurance, a product not offered by State Farm.  Nor does plaintiff allege that she saw State Farm's website before Hurricane Katrina or asked State Farm to conduct an "annual check-up" to assess the adequacy of protection afforded by her flood insurance policy.  Thus, there was no undertaking by the Defendants, nor any reliance by the plaintiff.  Plaintiff, who before contacting Cemo in September 2004, had heard that excess flood insurance was available through Lloyds of London, did not contact an insurance broker who sells insurance products other than those offered by State Farm.  She also did not contact anyone selling insurance products offered by Lloyd's of London.  Mr. Cemo had no excess flood insurance product to sell or advise plaintiff about.

Louisiana state courts, in analogous situations, have found no duty owed by the insurance company or agent to advise actual or prospective insureds.  For instance, in *Graves v. State Farm Mut. Auto Ins. Co.*, 821 So. 2d 769 (La. App. 3 Cir. 2002), the court held that the insurance agent and agency had no duty, either in contract or in tort, to inquire into the insureds' financial condition and advise them to carry higher liability limits or purchase an umbrella policy even though the additional coverage was available from the defendant companies.  821 So. 2d at 773-74.  In that case, the plaintiffs, State Farm insureds, had been involved in an automobile accident.  *Id.* at 770.  The owners of the other vehicle involved in the accident, the Roys, sued the Graves.  *Id.*  Ultimately, the Graves and State Farm settled with the Roys for an amount that exceeded the Graves' liability limits.  *Id.*  The Graves then brought suit against State Farm, and the insurance agency and agent that issued the Graves' policy, to recover their contribution to the settlement, asserting that State Farm, and the insurance agency and agent that issued the Graves' policy had a

879397v.1

duty, both in contract and in tort, to advise them to carry higher liability limits or purchase an umbrella policy. *Id.* The evidence established that the Graves had been doing business with the agency for approximately ten years prior to the accident. *Id.* at 772. However, there was no evidence that they asked the defendants for insurance advice. *Id.* at 772-73. Thus, the court found nothing to establish that any of the defendants ever assumed a duty to advise the plaintiffs or that the defendants failed to procure the coverage requested by the plaintiffs. *Id.* at 773-74.

In *Jones v. Webb,* 821 So. 2d 614 (La. App. 2d Cir. 2002), the court held that an insurance agent has no fiduciary duty to procure an umbrella policy unless specifically asked to do so. *Id.* at 614, 617. That case involved an underlying automobile accident in which one of the motorists involved in the accident, and her husband, both of whom worked for a corporation owned by their son, brought a personal injury lawsuit against a number of defendants, including the insurance agency that had procured the corporation's commercial general liability policy. *Id.* at 615. Plaintiffs argued that the defendants had breached a fiduciary duty to recommend and procure umbrella coverage. *Id.* at 617. However, there was no evidence that the corporation ever requested umbrella coverage. *Id.* The court found no support for plaintiffs' argument that the insurance agent and agency had a standing duty to procure any coverage other than what the insured specifically requested. *Id.* Since the plaintiffs did not specifically request umbrella coverage, the court held that no such duty existed. *Id.*

In *Smith v. Millers Mut. Ins. Co.*, 419 So. 2d 59 (La. App. 2d Cir. 1982), a lawsuit arising out of a motor vehicle accident, the defendant brought a third-party demand against the insurance agency and agent which had procured his liability policy. He alleged that the third party

defendants were negligent and breached a fiduciary duty to obtain liability insurance coverage with higher limits and to obtain an umbrella policy. *Id.* at 61. The defendant argued that the insurance agency and agent were negligent in failing to recommend higher limits, in failing to advise him of the availability of a higher single limit policy, and in failing to obtain an umbrella policy. *Id.* The court noted that an individual may recover from an insurance agency or agent for loss arising out of an insurance agent's failure to obtain insurance coverage by proving (1) an undertaking by the insurance agent to procure insurance, (2) failure of the agent to use reasonable diligence in attempting to place the requested insurance and failure to promptly notify the client if he fails to obtain the insurance, and (3) the actions or the agent warranted an assumption by the client that he was properly insured. *Id.* However, the court found that the agent discharged his duty to the defendant by procuring the insurance requested by the defendant. *Id.* at 64. The court went on to note that the stated liability limits of an insurance policy is not a complex matter and

> an insured should be held to have read and know the liability limits of his automobile insurance policy, plainly disclosed on the face of the policy, particularly where, as here, the insured is an educated, experienced businessman, signed an application showing the policy limits, and has received copies of his policy each year for several years with advice to review it. *Id.* at 65.

The Louisiana cases that address procurement amply show that plaintiffs have failed to state a cause of action against the Defendants. The courts in *Graves*, *supra*; *Jones*, *supra*; and *Smith*, *supra*, all found that the insurers and/or insurance agencies and agents had no duty to procure the insurance coverage at issue. What is striking about those cases, when compared to the case *sub judice*, is that the unsuccessful plaintiffs in those cases asserted that the defendant

failed to advise about and procure coverage that the defendant insurers actually carried for sale: 1) *Graves*: higher limits of an auto policy and personal umbrella; 2) *Jones*: umbrella policy; and 3) *Smith*: higher limits of an auto policy and umbrella.  Here, neither State Farm nor agent Cemo carry excess flood insurance policies.  There simply is no basis to find that State Farm or its insurance agents have a duty in the first place, or that State Farm or Cemo undertook a duty, to first spontaneously assess an insured's insurance needs, to then research all possible insurance products available from other providers, and to then advise about or procure insurance that State Farm does not sell.  Moreover, the terms and conditions of the flood policy purchased by the plaintiff, specifically the policy limits, are clearly set forth, leaving the plaintiff with no doubt as to the extent of her coverage.  Plaintiff's Complaint is nothing more than a post-Katrina attempt to retroactively impose a duty to advise about and/or provide coverage when no such duty exists.

Significantly, a number of judges in the Eastern District, in cases involving similar allegations, recently have held that there is no standing duty for an agent to advise an insured about the availability of private flood insurance in excess of the amount available under the NFIP Indeed, in a case involving nearly identical allegations against a State Farm agent and State Farm alleging negligence and/or breach of a purported fiduciary duty at law to advise insureds about the availability and/or option to purchase excess flood insurance, the court held that neither State Farm nor its agent have a standing duty at law to advise insureds about excess flood insurance. *Sullivan, et. al. v. State Farm Fire and Cas. Ins. Co.*, No. 06-0004 (E.D. La. 4/6/06) (Duval, J.), Rec. Docs. 42, 44.  Noting that there is no support for the contention that an insurance agent owes a duty to advise of the potential availability of excess flood insurance, Judge Duval stated:

> There is not one case that I can find in the United States that has held an agent and/or company liable for not advising someone that there's another insurance out - - or not saying 'Oh you'd better get excess insurance'

*Sullivan, et. al. v. State Farm Fire and Cas. Ins. Co.*, No. 06-0004, Rec. Doc. 44 at pp. 23-24. The *Sullivan* court further held that plaintiffs failed to state a cause of action against State Farm and the agent, where, as here, plaintiffs did not allege facts evidencing an undertaking by the State Farm agent to advise about and/or offer excess flood insurance. *Id.,* Rec. Docs. 42 and 44.

Similarly, in *Dobson, et al. v. Allstate Ins. Co., et al.*, 2006 WL 2078423, *10 (E.D. La. 7/21/06), this Court noted that no Louisiana case imposes a duty on an agent to spontaneously identify a client's needs and advise him as to whether he is underinsured or carries the right type of coverage. Unlike the plaintiff here, the *Dobson* plaintiffs averred that the agent negligently assured them that their insurance "'would cover and insure them for all damages caused by a hurricane.'" *Id.* at *9. The plaintiffs there did not allege that they made a specific inquiry of their agents for a particular type or amount of coverage in connection with the renewal. *Id.* Instead, plaintiffs argued that their agents negligently omitted to supply information or supplied incorrect information to them at the time of renewal, thereby causing plaintiffs to suffer uninsured losses from Hurricane Katrina. The Court, however, ruled that even accepting as true that the agents told plaintiffs that they were insured for all damages caused by hurricanes, the plaintiffs could not prove justifiable reliance on the alleged misrepresentations because they had a copy of their respective policies and were charged with knowledge of the terms of the policies. *Id.* at *11-12. Thus, the plaintiff knew the coverage limits and should have known that certain types of damages were excluded from coverage.

879397v.1

Other judges in the Eastern District, using similar reasoning, also have held that there is no standing duty for an agent to advise an insured about the availability of private flood insurance in excess of the amount available under the NFIP.  In *Parker v. Lexington Ins. Co., et al*, 2006 WL 3328041 (E.D. La. 11/15/06) (Zainey, J.), the court held that there is no reasonable basis for predicting that Louisiana law might impose liability on an insurance agent for an alleged failure of a purported duty to inform customers about and/or advise customers to purchase excess flood insurance.  There, plaintiffs sued their insurer for the alleged improper adjustment of their Katrina claims and their insurance agent for an alleged failure to advise them of the availability of private flood insurance in excess of the amount available under the NFIP, thus causing them to be underinsured.  In denying plaintiffs' motion to remand, the court found that the case did not fall under *Karam* because the agent procured the coverage requested.  The court also found that the case did not involve a failure to give advice about an area in which the agent had superior knowledge given the agent's insurance expertise because the plaintiffs "were in a far better position than Bubrig [their agent] to know that their property was worth more than the coverage limits that they selected."  *Id.* at *4.  "In fact, in the single Louisiana case to address the issue, the Second Circuit concluded that an agent has no duty to counsel an insured on policy limits."  *Id.* (citing *Smith v. Millers Mut. Ins. Co.*, 419 So.2d 59, 64-65 (La. App. 2d Cir. 1982)).

In *Frischhertz v. Lexington Ins. Co.*, 2006 WL 3228385 (E.D. La. 11/03/06) (Barbier, J.), the court denied plaintiff's motion to remand on similar ground.  There, the plaintiff sued her insurance company for the alleged improper adjustment of her Katrina homeowners claim, and also named her insurance brokers as defendants, asserting that they breached purported fiduciary

879397v.1

duties to advise plaintiff with regard to recommended coverage on her properties and to advise her that she was underinsured. The court held that there are no cases that impose a duty on an agent to identify a client's needs and advise him whether he is underinsured or carries the correct type of coverage. *Id.* at *2. Indeed, and as noted by the Fifth Circuit in *Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 205 (5th Cir. 1990), "the client is himself considered responsible for adequately advising the agent of the coverage needed and for reading the clear provisions of the insurance policy."

In *Whitehead v. State Farm Ins. Co, et al.*, 2006 WL 3747520 (E.D. La. 12/15/06) Judge Berrigan denied remand holding that an insurance agent has no duty to independently assess a client's insurance needs and recommend coverage. There, plaintiffs sued their insurer and their insurance agent. With respect to their agent, plaintiffs alleged that they "retained [the agent] to provide advice, and to act as their agent in procuring necessary insurance coverage for the property that was adequate to fully protect the building." *Id.* at *1. They further alleged that their agent should have assessed their insurance needs and that he breached an agreement with them to procure adequate insurance coverage. *Id.* The court maintained State Farm's removal finding that the insurance agent was fraudulently joined because plaintiffs had no cause of action against the agent under Louisiana law. The court observed that there is "no case that imposes a duty on an agent to identify a client's needs and advise him whether he is under-insured or carries the correct type of coverage." *Id.* at *2 (citing *Bilbe v. Belsom, et al.*, 2006 WL 3388482 (E.D. La. 11/21/06) (Barbier, J.)). The plaintiffs there, like the plaintiff here, did not allege that they requested a specific type or amount of coverage which the agent then failed to provide, but rather

that the agent failed to independently and unilaterally assess the plaintiffs' insurance needs and recommend higher coverage.  *Id.*  No such duty on the part of the agent exists under Louisiana law.  *Id.*

 *Jones v. State Farm Fire & Cas. Ins. Co.*, 2007 WL 29068 (E.D. La. 01/02/2007) (Feldman, J.), is yet another case presenting similar facts and allegations as those presented herein, wherein the court denied remand.  In that case, plaintiffs sued State Farm and their agent, requesting full payment under the policies for damages to their home.  *Id.* at *1.  With respect to their agent, plaintiffs alleged that their agent acted as their fiduciary and breached his duty to them when he did not advise them to purchase greater coverage under the flood insurance policy. *Id.*  The plaintiffs there, as the plaintiff here, did not allege that they requested a specific type or amount of coverage which the agent then failed to provide, but rather that the agent failed to assess independently and unilaterally the plaintiffs' insurance needs and recommend higher coverage.  *Id.* at *2.  The court found no such duty on the part of an agent exists under Louisiana law.  *Id.*

 Judge Livudais, in a case presenting similar facts and allegations as those presented herein, likewise denied remand finding that the non-diverse agent was fraudulently joined. *Birdsall v. State Farm Fire and Cas. Co. and Sidney J. Goodreaux Ins. Agency*, 2007 WL 445345 (E.D. La. 2/06/07).  With respect to her agent, plaintiff alleged that the agent "committed professional negligence by failing to properly inform [her] of the available insurance coverage for purchase covering her property."  *Id.* at p. 6.  As with the plaintiff in this case, the *Birdsall* plaintiff did not allege that she requested specific insurance coverage that the agent failed to

provide.  The court thus found that the agent owed no duty to spontaneously identify and advise the plaintiff of other or additional insurance coverages that she did not request.  *Id.; see also In re Canal Breaches Consolidated Litigation, Mooney,* No. 06-8602, Rec. Doc. 3355 (E.D. La. 3/08/07); *Terrina Jones v. State Farm Fire and Cas. Co.,* No. 06-7994, Rec. Doc. 13 (E.D. La. 2/28/07) (Duval, J.).

      As set forth by the Louisiana Supreme Court in *Karam* and its progeny, insurers and their agents have a duty only to use reasonable diligence in attempting to place the insurance requested.  *See e.g., Karam*, 281 So.2d at 728.  Louisiana law does not impose a duty on an insurer or an agent to "spontaneously identify a client's needs and advise him as to whether he is underinsured or carries the right type of coverage."  *Dobson*, 2006 WL 2078423 at *10.  Here, plaintiff makes no allegations that she requested that Cemo or State Farm provide any insurance other than the federal flood insurance that she did purchase through him.  Thus, plaintiff's claims should be dismissed.

      Further still, Louisiana law recognizes actions for negligent misrepresentation leading to pecuniary loss only when (1) the defendant owed a duty to supply correct information, (2) the defendant breached that duty, and (3) the plaintiff suffered damages resulting from *justifiable* reliance on the misrepresentation.  *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 624 n.38 (5th Cir. 1993); *Chiarella v. Sprint Spectrum, LP*, 921 So.2d 106, 123 (La. App. 4 Cir. 2005); *see also Devore v. Hobart Mfg.*, Co., 367 So.2d 836, 839 (La. 1979).  Thus, in order to recover for negligent misrepresentation, plaintiff must not only identify the "misrepresentation," but also prove they *justifiably* relied on the alleged misrepresentations about plaintiff's policies.  *Dobson*,

2006 WL 2078423 at * 11 (citing *Abbot v. Equity Grp., Inc,.* 2 F.3d 613, 624 n.38 (5th Cir. 1993); *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1131 n.33 (5th Cir. 1988), *vacated on other grounds*, 492 U.S. 914 (1989)).  Plaintiff does not state a claim for negligent misrepresentations or omissions.  There are no facts establishing that any representations made by Cemo or State Farm were false.  Nor can plaintiff show justifiable reliance on any alleged misrepresentations.

Most significantly, an insured is responsible for reading his policy and presumed to know its terms.  *See e.g.*, *Dobson*, 2006 WL 2078423 at *11; *Motors Ins. Co. v. Bud's Boat Rental, Inc.,*, 917 F.2d 199, 205 (5th Cir. 1990); *Stephens v. Audobon Ins. Co.*, 665 So.2d 683, 686 (La. App. 2d Cir. 1995) (citing *Matthews v. Business Men's Assur. Co. of America*, 478 So.2d 634, 337 (La. App. 2d Cir. 1985)); *Perkins v. Shelter Ins. Co.*, 540 So.2d 488 (La. App. 1 Cir. 1989)).  Plaintiff's SFIP was issued in 1985.  Plaintiff is charged with knowledge of the coverage limits of her policies.  Plaintiff has no viable claim against Cemo or State Farm for not telling her what was readily apparent from the face of the policies -- the coverage limits selected by plaintiff.

### C.   Plaintiff's Claims Against Cemo and State Farm Are Time-Barred Under Louisiana Law.

Plaintiff's claims against Cemo and State Farm are prescribed and/or perempted under Louisiana Revised Statute § 9:5606.  La. R.S. 9:5606 provides in pertinent part:

> No action for damages against any insurance agent . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed . . . within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

Thus, under the express terms of the statute, regardless of whether a plaintiff sues within one year of discovering his cause of action, the claim is perempted if he does not bring it within three years of the act, omission, or neglect.   La. R.S. 9:5606.   Subsequent renewals of insurance policies do not restart the prescriptive period on torts committed at the time of initial purchase. *See Dobson*, 2006 WL 2078423 at *8; *Biggers v. Allstate Ins. Co.*, 886 So.2d 1179, 1182-83 (La. App. 5 Cir. 2004) (preemptive period ran from date of purchase because the renewal process did not afford the agent the opportunity to make further misrepresentations about the policy); *Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So.2d, 377, 382-83 (La. App. 1 Cir. 2003) (same); *see also Bordelon v. The Indep. Order of Foresters*, 2005 WL 3543815 at *3 (E.D. La. 2005).   Further, peremptive statutes are not subject to suspension.  *Reeder v. North*, 701 So.2d 1291 (La. 1997).

It is undisputed that State Farm issued plaintiff's flood policy to plaintiff in 1985.  The renewals do not operate to re-start peremption.  *See Dobson*, 2006 WL 2078423 at *8; *see also Biggers*, 886 So.2d at 1182-83; *Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So.2d at 382-83.  Nor were there any subsequent misrepresentations to re-start peremption.  Indeed, plaintiff alleges no misrepresentations in connection with any policy renewals.  Accordingly, the renewals do not operate to re-start peremption.  Nor have there been any other communications between the plaintiff and Cemo to re-start the peremptive period.  Indeed, only the plaintiff could describe how much coverage was "sufficient" since plaintiff was in the best position to determine whether there was a difference in the amount of coverages she purchased under her homeowners policy and the amount purchased under her federal flood policy.  *See e.g.*, *Dobson*, 2006 WL 2078423 at *11 (insured is responsible for reading his policy and presumed to know its terms); *see also id*.

at *10 (no case requires agent to "spontaneously identify a client's needs and advise him as to whether he is underinsured or carries the right type of coverage").

In this case, plaintiff makes no allegation of any action by the Defendants that would give rise to a cause of action against them.  Thus, clearly the three-year peremption period must apply.  At a minimum, however, the one-year prescription period of La. R.S. 9:5606 precludes any claims against Cemo and State Farm.  *See e.g.*, *Veron v. Talamo*, 2006 WL 3759561 (E.D. La. 12/19/06) (Lemelle, J.) (plaintiffs' claims against agent barred by one-year prescriptive period under La. R.S. 9:5606 because alleged negligence in underinsuring plaintiffs occurred in May 2004 and suit was filed in July 2006); *see also, e.g.*, *In re Canal Breaches Consolidated Litigation, Campbell,* No. 06-8934, Rec. Doc. 2926 (E.D. La. 1/30/07), *Palmer*, Nos. 06-8126, 06-7540, Rec. Doc. 2930 (E.D. La. 1/30/07), and *Steudlein*, No. 06-7307 Rec. Doc. 2923 (E.D. La. 1/30/07) (denying remand motions and dismissing agents because claims against non-diverse defendants were peremted under La. R.S. 9:5606 because insured in each case could not have justifiably relied on alleged failures of agent in procurement of the policy given the clear policy language with respect to the extent of coverage) (Duval, J.).  Plaintiff did not file suit until August 6, 2006, well more than one year after any communications with Cemo that arguably could have triggered a duty, although plaintiff herself has not identified any communication that would even impose a duty to give rise to her claims.

## III. CONCLUSION

For these reasons, Cemo and State Farm respectfully urge the Court to grant their Motion for Partial Summary Judgment and dismiss plaintiff's claims against the Defendants for an

- 23 -

879397v.1

alleged failure to advise about excess flood insurance and for failure to provide excess flood insurance.

Respectfully submitted,

/s/ Andrea L. Fannin

Douglas J. Cochran, 20751
  dcochran@stonepigman.com
Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
One American Place
301 Main Street, Suite 1150
Baton Rouge, LA  70825
Phone:  (225) 490-8913
Fax:  (225) 490-8960

Wayne J. Lee, 7916
  wlee@stonepigman.com
Mary L. Dumestre, 18873
  mdumestre@stonepigman.com
Andrea L. Fannin, 26280
  afannin@stonepigman.com
Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA  70130-3588
Phone:  (504) 581-3200
Fax:  (504) 581-3361

*Attorneys for State Farm Fire and Casualty Company and Anthony J. Cemo*

## C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Memorandum in Support of the Defendants Motion for Partial Summary Judgment to Dismiss Plaintiff's Excess Flood Allegations has been served upon all counsel of record by electronic notice from the Court's CM/ECF system, this 22nd day of June, 2007.

Terrence J. Lestelle
Andrea S. Lestelle
Jeffery B. Struckhoff
Lestelle & Lestelle
3421 N. Causeway Blvd.
Suite 602
Metairie, Louisiana  70002

/s/ Andrea L. Fannin

879397v.1