UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARLENE KATZ** | \* | **CIVIL ACTION NO. 06-4155** |
| | \* | |
| **VERSUS** | \* | **JUDGE SARAH S. VANCE** |
| | \* | |
| **STATE FARM FIRE AND CASUALTY** | \* | **MAGISTRATE** |
| **COMPANY, and ANTHONY J. CEMO,** | \* | **JOSEPH C. WILKINSON, JR.** |
| **individually and as agent of STATE FARM** | \* | |
| **FIRE AND CASUALTY COMPANY** | \* | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF HAIG NEVILLE**

MAY IT PLEASE THE COURT:

This memorandum is submitted on behalf of plaintiff Marlene Katz in opposition to the motion of defendants State Farm Fire and Casualty Company ("State Farm") and Anthony Cemo ("Cemo") to exclude testimony and opinions and Haig Neville, plaintiff's expert. As the following will demonstrate, defendants' motion should be denied, because Mr. Neville is eminently qualified to testify regarding the standard of care applicable to insurance agents, and because his opinions and observations are based on the sum total of his education, training and experience, and on documentation setting forth the specific facts and allegations at issue in this case. Furthermore, his testimony is relevant to the issue at hand and will assist the trier of fact.

**I. Introduction and Factual Background**

This action arises, in part, out of defendants' negligence breach of duties owed to plaintiff Marlene Katz, whose home was severely damaged by flooding during Hurricane Katrina. Specifically, in September of 2004, Ms. Katz heard that flood insurance in excess of the limits available through the National Flood Insurance Program ("NFIP") could be purchased from private insurers. Desiring to obtain adequate flood coverage, Ms. Katz called Cemo, her State Farm agent, and specifically asked whether flood insurance over and above the NFIP limits of $250,000 for dwelling coverage and $100,000 for contents coverage could be purchased. Cemo misrepresented to plaintiff that excess flood insurance could not be purchased on the private market, either from State Farm or any other insurer, and that the $250,000/100,000 NFIP limits were the maximum flood insurance available. Accordingly, plaintiff wrote a check[1] to increase her flood insurance coverage to the NFIP limits.

Cemo knew that plaintiff's State Farm homeowner's policy (policy number 18-70-0937-4)[2] provided over $1 million in dwelling and contents coverage, because he sold her the original policy in 1985, and had renewed it every year since. Nevertheless, Cemo did not divulge to plaintiff that she could purchase excess flood insurance, and thus gain adequate flood protection, from other insurance carriers. Instead, Cemo simply told plaintiff that additional flood insurance was not available, and plaintiff relied on that misrepresentation.

Plaintiff was justified in relying on the misrepresentation by Cemo, because Cemo is a trained and licensed Louisiana agent, and owes plaintiff a duty to exercise reasonable care, skill, and diligence. *Durham v. McFarland, Gay and Clay, Inc.*, 527 So.2d 403, 405 (La.App. 4th Cir.1988). Cemo also owes a fiduciary duty to advise plaintiff of recommended coverages. *Id.*

---

[1] A photocopy of this check is attached hereto as Exhibit 1.
[2] A photocopy of the declarations page of plaintiff's homeowner's policy is attached hereto as Exhibit 2.

Plaintiff was also justified in relying on statements made by Cemo, because State Farm proudly advertises that it provides "one-stop shopping" for insurance needs, and that its agents conduct "annual check-ups" to evaluate whether their insured's coverage is adequate.  In short, State Farm holds itself and its agents out as experts in the insurance industry.  It warns the public in its advertising websites that appropriate flood insurance should be purchased because a home is three times more likely to be destroyed by flood than by fire – indicating that a home should be insured for its full value.

Cemo's statement that the NFIP coverage limits were the maximum flood insurance available seemed plausible in light of State Farm's "one-stop shopping" motto, which implies that all insurance needs can be met through State Farm.  Likewise, State Farm's annual check-up program to determine the adequacy of coverage indicates that a State Farm agent would recommend that a client obtain sufficient coverage to insure against all potential losses.  According to State Farm and Cemo, the NFIP coverage limits were the best that plaintiff could do – not just the best that State Farm could do for plaintiff.

Clearly, when plaintiff specifically asked Cemo about the availability of flood insurance in excess of the NFIP coverage limits, she was entitled to an accurate answer, even if that coverage was not available through State Farm.  According to Neville, the accurate answer from an agent exercising reasonable care, skill, and diligence would have been that excess insurance does, in fact, exist, and is available through other insurance carriers.[3]  Even if State Farm chooses not to offer such coverage, neither State Farm nor Cemo is entitled to respond falsely to an inquiry by its insured regarding whether such coverage is available.[4]

---

[3] See Report of Observations and Opinions by Haig G. Neville, CLU, CPCU attached hereto as Exhibit 5, at p. 3.
[4] Apparently, State Farm is reluctant to inform its insureds of the availability of excess flood insurance, because it fears that its policyholders will then purchase other types of coverage from those providers.  This self-serving

When Hurricane Katrina struck New Orleans on August 29, 2005, it caused a number of canal levees to be breached, resulting in widespread flooding of homes and businesses, including plaintiff's. The damage to plaintiff's home and contents far exceeded the NFIP coverage limits. Indeed, according to State Farm's own estimate, the replacement cost of the damage to her dwelling was $426,852.84.[5]  Had State Farm and Cemo provided accurate information and advice to plaintiff, she would have had the opportunity to obtain excess flood insurance and could have been fully protected against the losses she sustained as a result of Hurricane Katrina.

Plaintiff filed suit against State Farm and Cemo, alleging, *inter alia*, that defendants are liable to plaintiff for her uninsured flood losses, because they breached their fiduciary duties owed to plaintiff by misrepresenting, when plaintiff specifically asked, that flood insurance in excess of the NFIP coverage limits was not available, and by negligently failing to advise plaintiff on insurance needs and to procure adequate coverage. Defendants hold themselves out as experts in the insurance industry, and as providers of all available insurance needed by plaintiff ("one-stop shopping"). The standard of care applicable to insurance agents is thus at issue in this case, and plaintiff is entitled to put on an expert to testify regarding that standard of care, and whether, in Neville's expert opinion, defendants breached that standard of care. Accordingly, defendants' motion should be denied.

## II.  Legal Standard for Insurance Agents

Under Louisiana law, an insurance agent owes a fiduciary duty to the insured, and is liable for intentional or negligent breach of that duty. *Roger v. Dufrene*, 613 So.2d 947, 949 (La.1993). *See also Taylor v. Sider*, 765 So.2d 416, 418-19 (La.App. 4th Cir.2000); *Offshore*

---

motive does not justify intentionally misrepresenting that excess flood insurance is not available on the private market.

[5] A photocopy of State Farm's Statement of Loss and Inspection report is attached hereto as Exhibit 3.

*Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir.1990).  An agent's fiduciary duty includes advising his client with regard to recommended coverage. *Barash v. Encompass Indemnity Co.*, 2006 WL 3791310, *4 (E.D.La.2006) (*citing Durham v. McFarland, Gay and Clay, Inc.*, 527 So.2d 403, 405 (La.App. 4th Cir.1988)).  Furthermore, "**an agent may breach his duty to advise a plaintiff of needed flood insurance even if a plaintiff does not specifically request flood insurance**."  *Id.*, (emphasis added).  *See also Roby v. State Farm Fire and Casualty Co.*, 464 F.Supp.2d 572, 579 (E.D.La.2006).

In *Durham*, the insured sued his insurance agent for failing to procure flood insurance coverage on the insured's residence.  The trial court concluded that Clay, the insurance agent, (1) failed to properly advise Durham on the need to secure flood insurance; (2) failed to secure said coverage; (3) failed to exercise due diligence in not specifically discussing flood protection on Durham's residence; (4) failed to notify Durham of the absence of flood protection; and (5) failed to implement a system whereby he would be alerted that Durham had not received pertinent correspondence regarding his insurance coverage.  *Durham*, 527 So.2d at 404.  Defendant argued that the Louisiana Supreme Court set out an exclusive list of duties owed by an agent or broker to the insured in *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728 (La.1973).[6]  The Louisiana Fourth Circuit Court of Appeal rejected this argument.

According to the *Durham* Court:

---

[6] In *Karam*, the Louisiana Supreme Court held that:
> An agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance.  The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted the assumption of the client that he was properly insured in the amount of the desired coverage.

281 So.2d at 730-31.

> Clay was acting as Durham's broker[7] and thus is responsible for any fault or neglect while performing in that capacity. The jurisprudence has recognized that a broker's fiduciary duty includes advising his client with regards to recommended coverage, to investigate and ascertain the financial condition of prospective companies, and to notify the insured of cancellation or termination of coverage. **We conclude that the *Karam* decision does not relegate the insurance broker to a mere "order taker."** That case sets out the broker's duties when there is an admitted request for insurance, but is not an exclusive recitation of a broker's duties to his client.

527 So.2d at 405 (internal citations omitted)(emphasis added). The Court went on to affirm a finding of fault on the part of the agent, "even absent a specific finding that Durham requested flood insurance." *Id.*, at 407.

Similarly, in *Zinsel Co., Inc. v. J. Everett Eaves, Inc.*, 749 So.2d 798 (La.App. 5th Cir.1999), the insured sustained a $300,000 underinsured flood loss due to the fact that its coverage had not been increased when Congress increased the available limits of flood insurance. The insured sued its insurance agency, claiming that the agency breached its duty to keep the insured informed of changes in available flood insurance. The Court found that the agency owed a fiduciary duty to keep its client abreast of pertinent changes in available flood insurance. *Id.*, at 800. The Court affirmed the lower court's denial of liability, however, based on evidence that the agency's duty was satisfied by the fact that the insurer mailed a letter to the insured advising of the change in available flood insurance.

## III. Legal Standard For Motions in Limine

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702. *See General Electric Co. v. Joiner,* 522 U.S. 136, 138-39, 118 S.Ct. 512, 515, 139 L.Ed.2d 508 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.,* 200 F.3d 358, 371 (5th Cir.2000) (citations omitted). Rule 702, which governs the admissibility of expert witness

---

[7] The Louisiana Supreme Court has also rejected the argument that the duty of an agent/broker depends on his status an either an agent or broker. *See, e.g.*, *Tiner v. Aetna Life Insurance Co.*, 291 So.2d 774 (La.1974).

6

testimony, provides that an expert witness "qualified ... by knowledge, skill, experience, training or education," may testify when scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. *See also Daubert,* 509 U.S. at 587, 113 S.Ct. at 2794. For the testimony to be admissible, Rule 702 establishes the following requirements: (1) the testimony [must be] based upon sufficient facts or data; (2) the testimony [must be] the product of reliable principles and methods; and (3) the witness [must apply] the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

In *Daubert,* the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." 509 U.S. at 589, 113 S.Ct. at 2795. *See also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999) (clarifying that *Daubert* gatekeeping function applies to all forms of expert testimony). The Court's gatekeeping function thus involves a two-part inquiry into reliability and relevance.

First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Moore v. Ashland Chemical Inc.,* 151 F.3d 269, 276 (5th Cir.1998) (citing *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717 (3rd Cir.1994)). The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert,* 509 U.S. at 589, 113 S.Ct. at 2795. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* at 590, 113 S.Ct. at 2795. *Daubert* identified a number of factors that are useful in analyzing reliability of an expert's testimony, including testing, peer review and publication, evaluation of known rates of error, and

general acceptance within the scientific community. *See id.* at 592-94, 113 S.Ct. at 2796-97. In *Kumho Tire,* the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert's* list of specific factors does not necessarily nor exclusively apply to every expert in every case. 526 U.S. 137, 119 S.Ct. at 1175, 143 L.Ed.2d 238. *See also Seatrax,* 200 F.3d at 372 (reliability is fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony"). Nevertheless, in the vast majority of cases, the district court should first consider the *Daubert* factors before addressing whether other factors are relevant to the case. *See Black v. Food Lion, Inc.,* 171 F.3d 308, 311-12 (5th Cir.1999). *See also Watkins v. Telsmith,* 121 F.3d 984, 991 (5th Cir.1997) (regardless of basis of expert's opinion, *Daubert's* non-exclusive factors are relevant to initial reliability assessment). The objective "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. at 152, 119 S.Ct. at 1176. The proponent of the expert testimony must prove by a preponderance of the evidence that the testimony is reliable. *Tanner v. Westbrook,* 174 F.3d 542, 547 (5th Cir.1999) (citing *Moore,* 151 F.3d at 276).

      The Court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence; in other words, whether it is relevant. *See Daubert,* 509 U.S. at 591, 113 S.Ct. at 2795-96; Fed. R. Evid. 702. The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

**IV. Argument**

According to her deposition testimony, plaintiff Marlene Katz contacted her agent, Anthony Cemo, in September of 2004 and specifically and affirmatively asked whether she could purchase flood insurance in excess of the NFIP limits, so that her flood coverage would be equal to her homeowner's coverage.[8] Cemo told plaintiff that no such excess flood insurance was available, and that the NFIP coverage limits were the maximum flood insurance that could be purchased.[9] According to the expert opinion of Mr. Haig G. Neville, CLU, CPCU, this information was incorrect, because excess flood insurance was available in September of 2004, and Cemo either knew, or in the exercise of reasonable care and diligence, should have known this.[10]

Neville is qualified to render such an opinion based on his education, practical experience and qualification in the insurance industry for more than forty years as an agent and risk management professional and as part-time faculty at the University of Michigan, Wayne State University, Eastern Michigan University and other institutions, including as a lecturer at continuing education forums on the responsibilities of insurance agents and brokers in the United States, Canada, United Kingdom, Bermuda, and Japan.

Thus, Neville does not base his testimony on subjective belief or unsupported speculation. Instead, the testimony applies the full extent of Neville's professional studies and personal experiences. The trust universities and insurance companies have shown towards Neville's opinions demonstrates the reliability of his testimony. Such as he has done for the insurance companies through his lectures and training seminars, Neville's testimony details the

---

[8] See excerpts of plaintiff's deposition testimony, attached hereto as Exhibit 4, at p. 54.
[9] *Id*. at 48.
[10] See Report of Observations and Opinions by Haig G. Neville, CLU, CPCU attached hereto as Exhibit 5, at p. 3.

duties and responsibilities of insurance agents.   Therefore, Neville employs the same level of intellectual rigor that characterizes the practice of an expert in the field of insurance.

Moreover, given his vast experience in the insurance industry, Neville's testimony is relevant to the issue at hand.  As an expert and lecturer on the responsibilities of insurance agents, Neville's testimony adds clarity to the issue of fiduciary duties of insurance agents.  By testifying that insurance agents owe a fiduciary duty to advise clients of recommended coverage, Neville's testimony makes the existence of that fiduciary duty more probable.  Thus, Neville's testimony satisfies the Federal Rules of Evidence's definition of "relevant evidence".

The defendant's argument that Neville's testimony is inadmissible because it is a legal opinion is unfounded.  Neville's testimony provides important information to the trier of fact because it clarifies the duties and responsibilities of insurance agents.  Neville's opinion set forth in his report stresses that the fiduciary duty of an insurance agent to make accurate representations about insurance coverage is a fundamental teaching in basic licensure courses and training seminars.  Those statements do not contain legal conclusions.  The cases cited by the defendant distinguish between testimony helping to define fiduciary duties and those making legal conclusions.  For example, in *Estate of Sowell v. United States,* 198 F.3d 169 (5th Cir. 1999) citied by the defendants, the Fifth Circuit agreed with the district court, allowing the expert "to testify as to the definition and general standards of conduct of a fiduciary."  Each of the cases the defendants rely upon pertain only to legal *conclusions*, not the defining of fiduciary duties.  *See Askanse v. Fatijo*, 130 F.3d 657 (5th Cir. 1997); *In re Midland Enterprises*, 2002 WL 31780156 (E.D. La. 2002); *Musmeci v. Schwegmann Giant Supermarkets*, 2001 WL 406267 (E.D. La. 2001); *Jarrow v. Cupit*, 2000 WL 1537989 (E.D. La. 2000).  Therefore, Neville's testimony is

admissible because it establishes the *fact* that there is a fiduciary duty to not misrepresent insurance coverage to policyholders.

## VII.  Conclusion

Louisiana law clearly establishes that an insurance agent owes a fiduciary duty to the insured, and is liable for intentional or negligent breach of that duty.  What constitutes reasonable care, skill and diligence on the part of insurance agents is a question of fact, and plaintiff is entitled to put on expert testimony to answer that question, since such testimony will assist the trier of fact.

For all of the foregoing reasons, defendants' motion should be denied.

Respectfully submitted,

   /s/ Jeffery B. Struckhoff
**TERRENCE J. LESTELLE – 8540**
**ANDREA S. LESTELLE – 8539**
**JEFFERY B. STRUCKHOFF - 30173**
**LESTELLE & LESTELLE**
3421 N. Causeway Blvd, Ste. 602
Metairie, LA 70002
Telephone:  504-828-1224
Facsimile:  504-828-1229
**Attorneys for Plaintiff**
**Marlene Katz**

### CERTIFICATE OF SERVICE

I do hereby certify that I have on this 29th day of June, 2007, electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I

mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are not CM/ECF participants.

                                                  ___/s/ Jeffery B. Struckhoff_____
                                                  **Jeffery B. Struckhoff**