# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: KATRINA CANAL BREACHES               CIVIL ACTION
     CONSOLIDATED LITIGATION

NO. 05-4182

SECTION "K" (2)

FILED IN:    05-4181, 05-4182, 05-5237, 05-6073, 05-6314, 05-6324,
             05-6327, 05-6359, 06-0225, 06-0886, 06-1885, 06-2152,
             06-2278, 06-2287, 06-2824, 06-4024, 06-4065, 06-4066,
             06-4389, 06-4634, 06-4931, 06-5032, 06-5155, 06-5159,
             06-5161, 06-5260, 06-5162, 06-5771, 06-5937, 07-0206,
             07-0621, 07-1073, 07-1271, 07-1285

PERTAINS TO: MR-GO

---

**THE MRGO PLAINTIFFS' RESPONSES TO DEFENDANT UNITED STATES OF
AMERICA'S FIRST SET OF REQUESTS FOR ADMISSIONS**

---

PURSUANT TO ¶ IV(B)(h) of Case Management and Scheduling Order No. 4 and Rule

36 of the Federal Rule of Civil Procedure, the MR-GO PSLC, on behalf of the consolidated class

action representatives, provides the following objections and responses to Defendant the United

States' First Set of Requests for Admissions.

## PRELIMINARY STATEMENT

By providing answers to these Requests for Admissions, Responding Parties do not

concede the relevancy, materiality, or admissibility of any information sought by any of the

Requests for Admissions, or any response hereto.  Plaintiffs' responses are made subject to and

without waiver of any objections as to the relevancy, materiality, privilege, or admissibility as

evidence or for any other purpose, of any of the information referred to, or of the responses given

herein, or of the subject matter thereof, in any proceeding, including any arbitration of this action

or any other subsequent proceeding.

1

Further, Responding Parties' responses have been made after a reasonable inquiry and are based solely on information presently known to them before they have had any opportunity to review any discovery responses or documents produced by Defendants in this litigation.

## REQUESTS FOR ADMISSIONS, OBJECTIONS, AND RESPONSES

REQUEST FOR ADMISSION NO. 1:

Admit that the United States Army Corps of Engineers ("USACE") could not legally implement the hurricane flood protection project authorized by Pub. L. No. 89-298 (Oct. 27, 1965) without approval of the State of Louisiana through its legal entities, including the Board of Commissioners of the Orleans Parish Levee District ("OLD") and the Board of Commissioners of the Lake Borgne Basin Levee District ("LBLD").

RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Responding Parties object to this Request for Admission on the grounds that it calls for a legal conclusion or opinion about the meaning and applicability of the Flood Control Act of 1965, P. L. No. 89-298 (Oct. 27, 1965) ("Lake Pontchartrain and Vicinity Hurricane Flood Protection Plan" or "LPVHPP").  Responding Parties further object to this Request for Admission on the grounds that it is vague and ambiguous.  Specifically, this Request for Admission, as phrased, implies the existence of some legal impediment barring the United States Army Corps of Engineers ("USACE") from taking some action, but this Request for Admission is unclear as to whether that legal impediment is contained within the statutory terms of the LPVHPP or some other State or federal law.

The Request for Admission, as written, is also vague and ambiguous and calls for

2

speculation because it assumes that the USACE could not act under the LPVHPP because there was no "approval of the State of Louisiana through its legal entities, including the Board of Commissioners of the Orleans Parish Levee District ("OLD") and the Board of Commissioners of the Lake Borgne Basin Levee District ("LBLD")."  The Request for Admission, however, does not specify what precisely these entities should have "approved" in order to trigger the USACE's duty to act.  Accordingly, Responding Parties would be forced to speculate as to the nature of the "approval."

Finally, this Request for Admission is irrelevant and assumes facts not in evidence. Propounding Parties have presented no evidence of any relationship between flood control structures constructed pursuant to the LPVHPP and the Mississippi River-Gulf Outlet ("MR-GO").

Accordingly, without waiving any objection to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.


REQUEST FOR ADMISSION NO. 2:

Admit that the Report of the Chief of Engineers in House Document 89-231 and its accompanying reports and recommendations reflect that the U.S. Corps of Engineers noted the problem of "[h]urricane damages result[ing] from surges entering Lake Pontchartrain from Lake Borgne . . . through improved channels of the Mississippi River-Gulf Outlet and Inner Harbor Navigation Canal."  H.R. Doc. 89-231, Report of the District Engineer at 17.

3

RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Responding Parties object to this Request for Admission on the grounds that it is irrelevant. Specifically, Plaintiffs have not alleged that they suffered "[h]urricane damages result[ing] *from surges entering Lake Pontchartrain from Lake Borgne . . . .*" (emphasis added). The mechanism by which the USACE's negligence caused Plaintiffs' injuries stemmed from the USACE's negligent design, construction, maintenance, and operation of the MR-GO.

In addition, Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous, it calls for speculation, it assumes facts not in evidence, and the document speaks for itself. First, the phrase "noted the problem" is vague and ambiguous. The USACE could have either "noted the problem" and accepted the conclusion that such a "problem" existed or it may have "noted the problem" and rejected such a conclusion. This is unclear from the way the Request for Admission as phrased.

Similarly, the use of the word "reflect" is also vague and ambiguous and calls for speculation. It is unclear from the Request for Admission as phrased whether the document "reflects" the USACE's acceptance or rejection of the so-called "problem." Furthermore, whether the document accurately "reflects" the state of mind or knowledge of the Chief of Engineers or any other USACE officer or employee is known only by such persons, is not known by Responding Parties, and any admission or denial would be speculative.

Finally, the document speaks for itself and Responding Parties are under no obligation to interpret the document for Propounding Parties. Therefore, without waiving any objection to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 3:

Admit that on August 29, 2005, federal flood control levees, floodwalls, or other flood-protection structures surrounded the "Class Geography," where the named plaintiffs and proposed class members allegedly resided.

RESPONSE TO REQUEST FOR ADMISSION NO. 3:

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous. Specifically, the phrase "federal flood control levees, floodwalls, or other flood protection structures" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; or (d) so-called "flood protection structures" that also serve non-flood control purposes.

Responding Parties further object to this Request for Admission on the grounds that the term "surrounded" is also vague and ambiguous. Specifically, it assumes an unbroken and contiguous line of "federal flood control levees, flood walls, or other flood-protection structures" around the entire "Class Geography," including landlocked areas where flood control structures would not be needed.

Responding Parties object to this Request for Admission on the grounds that the term

5

"levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring

to any mound of soil, or a flood control structure built in compliance with the USACE's

standards, guidelines, or policies governing the construction of levees intended to protect human

life using funds specifically appropriated by the United States Congress for the purpose of levee

construction.  Similarly, Responding Parties object to this Request for Admission on the grounds

that it assumes facts not in evidence in that no evidence has been produced thus far establishing

that the USACE actually constructed any levees, or that levees were constructed on behalf of the

USACE.

Finally, this Request for Admission calls for an expert opinion as to the existence and

nature of putative flood control structures in the relevant areas.  Therefore, without waiving any

objection to this Request for Admission, Responding Parties deny this Request for Admission.


REQUEST FOR ADMISSION NO. 4:

Admit that the named plaintiffs and proposed class members seek to recover for damages

caused by floodwaters.


RESPONSE TO REQUEST FOR ADMISSION NO. 4:

Responding Parties object to this Request for Admission on the grounds that it calls for a

legal opinion or conclusion and is vague and ambiguous.  Specifically, the term "floodwaters" is

a legal term of art in the context of this litigation due to its use in the Flood Control Act of 1928,

33 U.S.C. § 702c.  Moreover, it misstates the nature of Plaintiffs' claims since Plaintiffs seek to

recover for damages caused by the USACE's negligence.

Therefore, without waiving any objection to this Request for Admission, Responding

Parties deny this Request for Admission.


REQUEST FOR ADMISSION NO. 5:

Admit that the "Class Geography," where the named plaintiffs and proposed class

members allegedly resided, would have been inundated on or about August 29, 2005, even if the

design and construction of federal levees and floodwalls had been based on the most up-to-date

elevation datums.


RESPONSE TO REQUEST FOR ADMISSION NO. 5:

Responding Parties object to this Request for Admission on the grounds that it is vague

and ambiguous, and misstates the substance of Plaintiffs' claims.  First, the term "inundated"

covers a broad spectrum of water intrusion or submersion from sporadic "inundation," which

might not have caused significant damage, to a substantial "inundation," causing significant

property damage and loss of life.  Second, the term "most up-to-date elevation datums" is vague

and ambiguous as to time.  Specifically, Propounding Parties do not specify whether they are

referring to the most recent datums existing at the time the putative flood control structures were

supposedly constructed by the USACE or on behalf of the USACE, or the most recent datums

existing as of August 29, 2005.

Responding Parties further object to this Request for Admission on the grounds that the

phrase "federal levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "federal

levees and floodwalls" does not specify or differentiate between (a) such flood protection

structures which were constructed by State or local authorities, but transferred to federal

7

ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; or (d) so-called "federal levees and floodwalls" that also serve non-flood control purposes.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure built in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.  Similarly, Responding Parties object to this Request for Admission on the grounds that it assumes facts not in evidence in that no evidence has been produced thus far establishing that the USACE actually constructed any levees, or that levees were constructed on behalf of the USACE.

Responding Parties also object to this Request for Admission on the grounds that it calls for an expert opinion.

Notwithstanding the foregoing, and without waiving any objection to this Request for Admission, Responding Parties admit that they have sustained substantial personal and property damage due to the negligence of the USACE, including, but not limited to, the failure of the USACE, or any person or entity serving on behalf of the USACE, to construct flood control structures as authorized by the United States Congress, and the failure of the USACE, or any person or entity serving on behalf of the USACE, to use the most recent scientific and

engineering principles and data existing at the time of, and during, the investigation, planning, design, construction, or maintenance of any flood control structures, to the extent that such flood control structures existed or were constructed.

REQUEST FOR ADMISSION NO. 6:

Admit that the "Class Geography," where the named plaintiffs and proposed class members allegedly resided, would have been inundated on or about August 29, 2005, even if federal levees and floodwalls had been constructed with "proper materials." MRGO Master Complaint ¶ 56.

RESPONSE TO REQUEST FOR ADMISSION NO. 6:

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous, and misstates the substance of Plaintiffs' claims. The term "inundated" covers a broad spectrum of water intrusion or submersion from sporadic "inundation," which might not have caused significant damage, to a substantial "inundation," causing significant property damage and loss of life.

Responding Parties further object to this Request for Admission on the grounds that the phrase "federal levees and floodwalls" is vague and ambiguous. Specifically, the phrase "federal levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control

9

structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; or (d) so-called "federal levees and floodwalls" that also serve non-flood control purposes.

Responding Parties object to this Request for Admission on the grounds that it assumes facts not in evidence in that Propounding Parties have produced no evidence that it constructed, or caused to be constructed, levees or floodwalls in Greater New Orleans.  Responding Parties also object to this Request for Admission on the grounds that it calls for an expert opinion, protected from disclosure by the attorney-work product doctrine at this point in this litigation.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Notwithstanding the foregoing, and without waiving any objection to this Request for Admission, Responding Parties admit that the USACE constructed, or caused to be constructed, certain earthen structures or mounds along or abutting the MR-GO and other relevant locations using sandy, water saturated or organic soils; uncompacted hydraulic fill; or other materials which the USACE's own manuals or guidelines state are inappropriate, unsafe, unstable, or unusable for the construction of levees or other similar flood control structures intended to protect human life, safety or property.

<u>REQUEST FOR ADMISSION NO. 7</u>:

Admit that the levees and floodwalls adjacent to the IHNC in the Lower Ninth Ward were not designed by an employee of the United States.

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 7</u>:

Responding Parties object to this Request for Admission on the grounds that the term "designed" is vague and ambiguous.  Specifically, the term "design" necessarily includes either (a) a decision as to what type of flood control structure to use in a given location; (b) the creation or drafting of written plans providing specifications for a specific type of flood control structure; or (c) the process of constructing a specific type of flood control structure based on prior experience or knowledge, without the use of written plans.  Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "designed."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous.  As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership

11

retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.


REQUEST FOR ADMISSION NO. 8:

Admit that you do not contend that the levees and floodwalls adjacent to the IHNC in the Lower Ninth Ward were designed by an employee of the United States.

RESPONSE TO REQUEST FOR ADMISSION NO. 8:

Responding Parties object to this Request for Admission on the grounds that the term "designed" is vague and ambiguous. Specifically, the term "design" necessarily includes either (a) a decision as to what type of flood control structure to use in a given location; (b) the creation or drafting of written plans providing specifications for a specific type of flood control structure; or (c) the process of constructing a specific type of flood control structure based on prior experience or knowledge, without the use of written plans. Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "designed."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous. As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous. Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures

13

which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "contend" is vague and ambiguous and overbroad in that "contend" may refer only to the allegation in Plaintiffs' complaint, or it may also refer to a "contention" developed during the course of litigation.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.


REQUEST FOR ADMISSION NO. 9:

Admit that the levees and floodwalls along or adjacent to the GIWW in Orleans Parish were not designed by an employee of the United States.

14

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 9</u>:

Responding Parties object to this Request for Admission on the grounds that the term "designed" is vague and ambiguous.  Specifically, the term "design" necessarily includes either (a) a decision as to what type of flood control structure to use in a given location; (b) the creation or drafting of written plans providing specifications for a specific type of flood control structure; or (c) the process of constructing a specific type of flood control structure based on prior experience or knowledge, without the use of written plans.  Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "designed."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous.  As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures

15

which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous. Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.


REQUEST FOR ADMISSION NO. 10:

Admit that you do not contend that the levees and floodwalls along or adjacent to the GIWW in Orleans Parish were designed by an employee of the United States.


RESPONSE TO REQUEST FOR ADMISSION NO. 10:

Responding Parties object to this Request for Admission on the grounds that the term "designed" is vague and ambiguous. Specifically, the term "design" necessarily includes either (a) a decision as to what type of flood control structure to use in a given location; (b) the creation or drafting of written plans providing specifications for a specific type of flood control structure; or (c) the process of constructing a specific type of flood control structure based on prior

16

experience or knowledge, without the use of written plans.  Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "designed."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous.  As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human

life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "contend" is vague and ambiguous and overbroad in that "contend" may refer only to the allegation in Plaintiffs' complaint, or it may also refer to a "contention" developed during the course of litigation.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 11:

Admit that the levees and floodwalls along or adjacent to the MRGO were not designed by an employee of the United States.

RESPONSE TO REQUEST FOR ADMISSION NO. 11:

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous, and assumes facts not in evidence. Specifically, Responding Parties are informed and believe that the MR-GO is a 76 mile canal that begins at the IHNC and terminates in the Gulf of Mexico. Accordingly, the question assumes that any and all flood control structures, if any, were "designed" by a single person or party. Moreover, there is at present no evidence that levees and/or floodwalls were ever constructed along the *entire* MR-GO or any portion thereof.

Responding Parties also object to this Request for Admission on the grounds that the term "designed" is vague and ambiguous.  Specifically, the term "design" necessarily includes either (a) a decision as to what type of flood control structure to use in a given location; (b) the creation or drafting of written plans providing specifications for a specific type of flood control structure; or (c) the process of constructing a specific type of flood control structure based on prior experience or knowledge, without the use of written plans.  Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "designed."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous.  As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures

which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.


REQUEST FOR ADMISSION NO. 12:

Admit that you do not contend that the levees and floodwalls along or adjacent to the MRGO were designed by an employee of the United States.


RESPONSE TO REQUEST FOR ADMISSION NO. 12:

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous, and assumes facts not in evidence. Specifically, Responding Parties are informed and believe that the MR-GO is a 76 mile canal that begins at the IHNC and terminates in the Gulf of Mexico.  Accordingly, the question assumes that any and all flood control structures, if any, were "designed" by a single person or party.  Moreover, there is at present no

20

evidence that levees and/or floodwalls were ever constructed along the *entire* MR-GO or any portion thereof.

Responding Parties also object to this Request for Admission on the grounds that the term "designed" is vague and ambiguous. Specifically, the term "design" necessarily includes either (a) a decision as to what type of flood control structure to use in a given location; (b) the creation or drafting of written plans providing specifications for a specific type of flood control structure; or (c) the process of constructing a specific type of flood control structure based on prior experience or knowledge, without the use of written plans. Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "designed."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous. As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous. Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees

and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "contend" is vague and ambiguous and overbroad in that "contend" may refer only to the allegation in Plaintiffs' complaint, or it may also refer to a "contention" developed during the course of litigation.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 13:

Admit that the levees and floodwalls adjacent to the IHNC in the Lower Ninth Ward were not constructed by an employee of the United States.

RESPONSE TO REQUEST FOR ADMISSION NO. 13:

Responding Parties object to this Request for Admission on the grounds that the term "constructed" is vague and ambiguous.  Specifically, the term "constructed" necessarily includes investigation; reconnaissance and planning; design; and contract bidding, negotiation, and execution.  Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "constructed."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous.  As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous. Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 14:

Admit that you do not contend that the levees and floodwalls adjacent to the IHNC in the Lower Ninth Ward were constructed by an employee of the United States.

RESPONSE TO REQUEST FOR ADMISSION NO. 14:

Responding Parties object to this Request for Admission on the grounds that the term "constructed" is vague and ambiguous. Specifically, the term "constructed" necessarily includes investigation; reconnaissance and planning; design; and contract bidding, negotiation, and execution. Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "constructed."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous. As used, the term "employee" may mean an individual who is paid a wage for

24

work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "contend" is vague and ambiguous and overbroad in that "contend" may refer only to the

allegation in Plaintiffs' complaint, or it may also refer to a "contention" developed during the course of litigation.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 15:

Admit that the levees and floodwalls along or adjacent to the GIWW in Orleans Parish were not constructed by an employee of the United States.

RESPONSE TO REQUEST FOR ADMISSION NO. 15:

Responding Parties object to this Request for Admission on the grounds that the term "constructed" is vague and ambiguous.  Specifically, the term "constructed" necessarily includes investigation; reconnaissance and planning; design; and contract bidding, negotiation, and execution.  Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "constructed."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous.  As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 16:

Admit that you do not contend that the levees and floodwalls along or adjacent to the GIWW in Orleans Parish were constructed by an employee of the United States.

RESPONSE TO REQUEST FOR ADMISSION NO. 16:

Responding Parties object to this Request for Admission on the grounds that the term "constructed" is vague and ambiguous. Specifically, the term "constructed" necessarily includes investigation; reconnaissance and planning; design; and contract bidding, negotiation, and execution. Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "constructed."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous. As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous. Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures

which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "contend" is vague and ambiguous and overbroad in that "contend" may refer only to the allegation in Plaintiffs' complaint, or it may also refer to a "contention" developed during the course of litigation.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.


REQUEST FOR ADMISSION NO. 17:

Admit that the levees and floodwalls along or adjacent to the MRGO were not constructed by an employee of the United States.

RESPONSE TO REQUEST FOR ADMISSION NO. 17:

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous, and assumes facts not in evidence. Specifically, Responding Parties are informed and believe that the MR-GO is a 76 mile canal that begins at the IHNC and terminates in the Gulf of Mexico. Accordingly, the question assumes that any and all flood control structures, if any, were "designed" by a single person or party. Moreover, there is at present no evidence that levees and/or floodwalls were ever constructed along the *entire* MR-GO or any portion thereof.

Responding Parties also object to this Request for Admission on the grounds that the term "constructed" is vague and ambiguous. Specifically, the term "constructed" necessarily includes investigation; reconnaissance and planning; design; and contract bidding, negotiation, and execution. Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "constructed."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous. As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous. Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership

retained by State or local authorities, but responsibility for maintenance or repair assumed by, or

transferred to, the USACE; (c) such flood control structures constructed by the USACE, but

using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees

and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures

which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by

entities other than the United States or the USACE.

Finally, Responding Parties object to this Request for Admission on the grounds that the

term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are

referring to any mound of soil, or a flood control structure constructed in compliance with the

USACE's standards, guidelines, or policies governing the construction of levees intended to

protect human life using funds specifically appropriated by the United States Congress for the

purpose of levee construction.

Accordingly, without waiving any objections to this Request for Admission, after

conducting a reasonable inquiry into the information known to, or reasonably obtainable by

Responding Parties, Responding Parties state that they have insufficient information to admit or

deny this Request for Admission.


REQUEST FOR ADMISSION NO. 18:

Admit that you do not contend that the levees and floodwalls along or adjacent to the

MRGO were constructed by an employee of the United States.

RESPONSE TO REQUEST FOR ADMISSION NO. 18:

      Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous, and assumes facts not in evidence. Specifically, Responding Parties are informed and believe that the MR-GO is a 76 mile canal that begins at the IHNC and terminates in the Gulf of Mexico.  Accordingly, the question assumes that any and all flood control structures, if any, were "designed" by a single person or party.  Moreover, there is at present no evidence that levees and/or floodwalls were ever constructed along the *entire* MR-GO or any portion thereof.

      Responding Parties also object to this Request for Admission on the grounds that the term "constructed" is vague and ambiguous.  Specifically, the term "constructed" necessarily includes investigation; reconnaissance and planning; design; and contract bidding, negotiation, and execution.  Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "constructed."

      Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous.  As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

      Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership

retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "contend" is vague and ambiguous and overbroad in that "contend" may refer only to the allegation in Plaintiffs' complaint, or it may also refer to a "contention" developed during the course of litigation.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.


REQUEST FOR ADMISSION NO. 19:

Admit that the levees and floodwalls adjacent to the IHNC in the Lower Ninth Ward

33

were not maintained by an employee of the United States.

RESPONSE REQUEST FOR ADMISSION NO. 19:

Responding Parties object to this Request for Admission on the grounds that the term "maintained" is vague and ambiguous.  Specifically, the term "maintain" necessarily includes either (a) the mere inspection of a putative levee or floodwall; (b) the repair of a putative levee or floodwall; (c) the upgrade or improvement of a putative levee or floodwall; or (d) the process of replacing a putative levee or floodwall for whatever reason.  Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "maintained."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous.  As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees

34

and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous. Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.


REQUEST FOR ADMISSION NO. 20:

Admit that you do not contend that the levees and floodwalls adjacent to the IHNC in the Lower Ninth Ward were maintained by an employee of the United States.


RESPONSE TO REQUEST FOR ADMISSION NO. 20:

Responding Parties object to this Request for Admission on the grounds that the term "maintained" is vague and ambiguous. Specifically, the term "maintain" necessarily includes either (a) the mere inspection of a putative levee or floodwall; (b) the repair of a putative levee or floodwall; (c) the upgrade or improvement of a putative levee or floodwall; or (d) the process of

replacing a putative levee or floodwall for whatever reason.  Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "maintained."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous.  As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human

36

life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "contend" is vague and ambiguous and overbroad in that "contend" may refer only to the allegation in Plaintiffs' complaint, or it may also refer to a "contention" developed during the course of litigation.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 21:

Admit that the levees and floodwalls along or adjacent to the GIWW in Orleans Parish were not maintained by an employee of the United States.

RESPONSE TO REQUEST FOR ADMISSION NO. 21:

Responding Parties object to this Request for Admission on the grounds that the term "maintained" is vague and ambiguous. Specifically, the term "maintain" necessarily includes either (a) the mere inspection of a putative levee or floodwall; (b) the repair of a putative levee or floodwall; (c) the upgrade or improvement of a putative levee or floodwall; or (d) the process of replacing a putative levee or floodwall for whatever reason. Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "maintained."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous.  As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 22:

Admit that you do not contend that the levees and floodwalls along or adjacent to the GIWW in Orleans Parish were maintained by an employee of the United States.

RESPONSE TO REQUEST FOR ADMISSION NO. 22:

Responding Parties object to this Request for Admission on the grounds that the term "maintained" is vague and ambiguous.  Specifically, the term "maintain" necessarily includes either (a) the mere inspection of a putative levee or floodwall; (b) the repair of a putative levee or floodwall; (c) the upgrade or improvement of a putative levee or floodwall; or (d) the process of replacing a putative levee or floodwall for whatever reason.  Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "maintained."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous.  As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "contend" is vague and ambiguous and overbroad in that "contend" may refer only to the allegation in Plaintiffs' complaint, or it may also refer to a "contention" developed during the course of litigation.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by

40

Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 23:

Admit that the levees and floodwalls along or adjacent to the MRGO were not maintained by an employee of the United States.

RESPONSE TO REQUEST FOR ADMISSION NO. 23:

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous, and assumes facts not in evidence. Specifically, Responding Parties are informed and believe that the MR-GO is a 76 mile canal that begins at the IHNC and terminates in the Gulf of Mexico. Accordingly, the question assumes that any and all flood control structures, if any, were "maintained" by a single person or party. Moreover, there is at present no evidence that levees and/or floodwalls were ever constructed along the *entire* MR-GO or any portion thereof.

Responding Parties object to this Request for Admission on the grounds that the term "maintained" is vague and ambiguous. Specifically, the term "maintain" necessarily includes either (a) the mere inspection of a putative levee or floodwall; (b) the repair of a putative levee or floodwall; (c) the upgrade or improvement of a putative levee or floodwall; or (d) the process of replacing a putative levee or floodwall for whatever reason. Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "maintained."

41

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous.  As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Accordingly, without waiving any objections to this Request for Admission, after

42

conducting a reasonable inquiry into the information known to, or reasonably obtainable by

Responding Parties, Responding Parties state that they have insufficient information to admit or

deny this Request for Admission.


REQUEST FOR ADMISSION NO. 24:

Admit that you do not contend that the levees and floodwalls along or adjacent to the

MRGO were maintained by an employee of the United States.


RESPONSE TO REQUEST FOR ADMISSION NO. 24:

Responding Parties object to this Request for Admission on the grounds that it is vague

and ambiguous, and assumes facts not in evidence. Specifically, Responding Parties are

informed and believe that the MR-GO is a 76 mile canal that begins at the IHNC and terminates

in the Gulf of Mexico.  Accordingly, the question assumes that any and all flood control

structures, if any, were "maintained" by a single person or party.  Moreover, there is at present

no evidence that levees and/or floodwalls were ever constructed along the *entire* MR-GO or any

portion thereof.  Responding Parties object to this Request for Admission on the grounds that the

term "maintained" is vague and ambiguous.  Specifically, the term "maintain" necessarily

includes either (a) the mere inspection of a putative levee or floodwall; (b) the repair of a

putative levee or floodwall; (c) the upgrade or improvement of a putative levee or floodwall; or

(d) the process of replacing a putative levee or floodwall for whatever reason.  Accordingly, it is

unclear from the Request for Admission, as phrased, which of the aforementioned meanings

Propounding Parties ascribe to the term "maintained."

43

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous. As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and floodwalls" is vague and ambiguous. Specifically, the phrase "levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous. Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

44

Finally, Responding Parties object to this Request for Admission on the grounds that the term "contend" is vague and ambiguous and overbroad in that "contend" may refer only to the allegation in Plaintiffs' complaint, or it may also refer to a "contention" developed during the course of litigation.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 25:

Admit that the Corps consulted with the U.S. Fish and Wildlife Service before commencing construction of the MRGO.

RESPONSE TO REQUEST FOR ADMISSION NO. 25:

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous with respect to use of the term "consulted." The USACE was required to "coordinate" its investigation, planning, design and construction of the MR-GO with the United States Fish and Wildlife Service ("USFWS") and report any concerns, problems, or objections voiced or lodged by the USFWS to the United States Congress. "Consultation" may only mean basic communication between the USACE and the USFWS, without the level of coordination required by federal law.

Responding Parties further object to this Request for Admission on the grounds that it is vague and ambiguous as to time. Specifically, the Request for Admission does not specify

45

which phase of MR-GO "construction" is covered by the question since investigation; reconnaissance and planning; design; and contract bidding, negotiation, and execution are all part of the construction process.

Notwithstanding the foregoing, and without waiving any objection to this Request for Admission, Responding Parties deny that the USACE coordinated or communicated with the USFWS or the United States Department of Interior ("DOI") prior to submitting House Doc. No. 245 to Congress in 1951.  Responding Parties further deny that the USACE ever informed Congress, formally or informally, of any of the USFWS's or the DOI's objections or concerns with respect to the MR-GO prior to 1965.


REQUEST FOR ADMISSION NO. 26:

Admit that the Corps consulted with the Louisiana Wildlife and Fisheries Commission before commencing construction of the MRGO.


RESPONSE TO REQUEST FOR ADMISSION NO. 26

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous.  Responding Parties are informed and believe that between 1918 and December, 1944, the lead Louisiana state agency in charge of wildlife and fisheries was known as the Louisiana Conservation Commission.  In December, 1944, the responsibilities of the Louisiana Conservation Commission were distributed between the Louisiana Department of Wild Life and Fisheries, the Louisiana Forestry Commission, and a new Louisiana Department of Conservation.

In 1952, the name of the Department of Wild Life and Fisheries was changed to Louisiana Wild Life and Fisheries Commission, and a commission of seven members was established to oversee and direct the activities of the agency. For day-to-day management and administration, the seven member commission was directed to appoint (hire) a Director for the Agency.

In 1974, the Louisiana Department of Wild Life and Fisheries was abolished, though the seven member commission was retained.  Moreover, in 1975, the Louisiana legislature created a new Louisiana Department of Wildlife and Fisheries.

Therefore, under federal law, the USACE was required to "coordinate" its investigation, planning and design of the MR-GO with either the Louisiana Department of Wild Life and Fisheries or the Louisiana Department of Conservation prior to submitting House Doc. No. 245 to Congress in 1951.  The Request for Admission, however, only references "consultation," not "coordination," and it further addresses such "consultation" with the Louisiana Wildlife and Fisheries Commission, rather including all the relevant State Agencies (i.e., the Louisiana Department of Wild Life and Fisheries or the Louisiana Department of Conservation).

Finally, this Request for Admission is vague, ambiguous and overbroad as to time. Accordingly, without waiving any objection to this Request for Admission, Responding Parties deny that there was any consultation or coordination between the USACE, on the one hand, and the Louisiana Wildlife and Fisheries Commission, the Louisiana Department of Wild Life and Fisheries or the Louisiana Department of Conservation, on the other hand prior to submission of House Doc. No. 245 to the United States Congress in 1951.

REQUEST FOR ADMISSION NO. 27:

Admit that the Corps considered the views of the U.S. Fish and Wildlife Service as the Corps was designing the MRGO.

RESPONSE TO REQUEST FOR ADMISSION NO. 27:

Deny.

REQUEST FOR ADMISSION NO. 28:

Admit that the Corps considered the views of the Louisiana Wildlife and Fisheries Commission as the Corps was designing the MRGO.

RESPONSE TO REQUEST FOR ADMISSION NO. 28

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous.  Responding Parties are informed and believe that between 1918 and December, 1944, the lead Louisiana state agency in charge of wildlife and fisheries was known as the Louisiana Conservation Commission.  In December, 1944, the responsibilities of the Louisiana Conservation Commission were distributed between the Louisiana Department of Wild Life and Fisheries, the Louisiana Forestry Commission, and a new Louisiana Department of Conservation.

In 1952, the name of the Department of Wild Life and Fisheries was changed to Louisiana Wild Life and Fisheries Commission, and a commission of seven members was established to oversee and direct the activities of the agency. For day-to-day management and

administration, the seven member commission was directed to appoint (hire) a Director for the Agency.

In 1974, the Louisiana Department of Wild Life and Fisheries was abolished, though the seven member commission was retained.  Moreover, in 1975, the Louisiana legislature created a new Louisiana Department of Wildlife and Fisheries.

Therefore, under federal law, the USACE was required to "coordinate" its investigation, planning and design of the MR-GO with either the Louisiana Department of Wild Life and Fisheries, Louisiana Department of Conservation, or the Louisiana Wildlife and Fisheries Commission at various times.

Accordingly, without waiving any objection to this Request for Admission, Responding Parties deny this Request for Admission.


REQUEST FOR ADMISSION NO. 29:

Admit that no levees had been constructed under the auspices of the federal Government in Orleans or St. Bernard Parishes existed at the time Hurricane Betsy struck in 1965.

RESPONSE TO REQUEST FOR ADMISSION NO. 29:

Responding Parties object to this Request for Admission on the grounds that it is irrelevant.  Specifically, Responding Parties are informed and believe that the construction of flood control structures to prevent or control floods from the Mississippi River or the Gulf of Mexico was under the exclusive jurisdiction of the USACE, not the "federal Government" in general.  Accordingly, the only relevant levees are those constructed by, or on behalf of, the USACE using funds specifically appropriated by the United States Congress for the construction of such structures.

Moreover, Responding Parties further object to this Request for Admission on the grounds that the term "auspices" is vague and ambiguous.  It is unclear as to whether Propounding Parties refer to "levees" constructed by the USACE, or "levees" constructed by a third party on behalf of, or under the direction of, the USACE.

Finally, Responding Parties object to this Request for Admission on the grounds that the term "levees" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 30:

Admit that the Corps's ability to design, construct, operate, maintain, and repair the MRGO and the levees, floodwalls, and other flood-protection structures in Orleans and St. Bernard Parishes depended on the appropriation of funds by Congress.


RESPONSE TO REQUEST FOR ADMISSION NO. 30:

Responding Parties object to this Request for Admission on the grounds that it assumes facts not in evidence since there is at present no evidence that the USACE designed, constructed, operated, maintained, or repaired any "levees, floodwalls, and other flood-protection structures

50

in Orleans and St. Bernard Parishes."

Responding Parties further object to this Request for Admission on the grounds that it is vague, ambiguous and overbroad.  First, the term "ability" can be interpreted as referring to the capacity to construct a given project, regardless of whether it satisfies relevant engineering standards; the capacity to construct a project what comports with scientific or engineering standards, regardless of any threat it may pose to third person's in the vicinity of the project; or it can also mean the capability to construct a project in manner which both meets professional engineering standards and is created in a way that avoids posing a threat to local in habitants.

Without waiving any objection to this Request for Admission, Responding Parties deny this Request for Admission.


REQUEST FOR ADMISSION NO. 31:

Admit that the federal levees, floodwalls, and other flood-protection structures were intended to prevent floods and floodwaters from inundating the "Class Geography" during a storm that was identical to the Standard Project Hurricane.

RESPONSE TO REQUEST FOR ADMISSION NO. 31:

Responding Parties object to this Request for Admission on the grounds that the phrase "federal levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "federal levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the

USACE, but using funds appropriated by Congress for purposes other than flood control; or (d) so-called "federal levees and floodwalls" that also serve non-flood control purposes.

Responding Parties object to this Request for Admission on the grounds that the term "inundate" is vague and ambiguous.  The term "inundate" covers a broad spectrum of water intrusion or submersion from sporadic "inundation," which might not have caused significant damage, to a substantial "inundation," causing significant property damage and loss of life.

Responding Parties object to this Request for Admission on the grounds that it assumes facts not in evidence since there is at present no evidence that the USACE designed, constructed, operated, maintained, or repaired any "levees, floodwalls, and other flood-protection structures" in Greater New Orleans.

Finally, Responding Parties object to this Request for Admission on the grounds that it calls for an expert opinion, and on the further grounds that term "identical" is vague and ambiguous.  Does "identical" mean (a) a hurricane with the same storm track or direction, the same wind speed, pressures, rain fall, physical dimensions, etc. as the Standard Project Hurricane; (b) a hurricane with difference attributes or dimensions, but because of its characteristics produces the same effects as the SPH, or does it mean any combination of the foregoing.  Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

<u>REQUEST FOR ADMISSION NO. 32</u>:

Admit that the federal levees, floodwalls, and other flood-protection structures were intended to prevent floods and floodwaters from inundating the "Class Geography."

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 32</u>:

Responding Parties object to this Request for Admission on the grounds that the phrase "federal levees and floodwalls" is vague and ambiguous.  Specifically, the phrase "federal levees and floodwalls" does not specify or differentiate between (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; or (d) so-called "federal levees and floodwalls" that also serve non-flood control purposes.

Responding Parties object to this Request for Admission on the grounds that the term "inundate" is vague and ambiguous.  The term "inundate" covers a broad spectrum of water intrusion or submersion from sporadic "inundation," which might not have caused significant damage, to a substantial "inundation," causing significant property damage and loss of life.

Responding Parties object to this Request for Admission on the grounds that it assumes facts not in evidence since there is at present no evidence that the USACE designed, constructed, operated, maintained, or repaired any "levees, floodwalls, and other flood-protection structures" in Greater New Orleans.

Finally, Responding Parties object to this Request for Admission on the grounds that it calls for an expert opinion.  Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 33:

Admit that the storm surge generated by Hurricane Katrina exceeded the storm surge that would have been generated by a storm that was identical to the Standard Project Hurricane.

RESPONSE TO REQUEST FOR ADMISSION NO. 33:

Responding party objects to this Request for Admission on the grounds that it is vague and ambiguous.  Specifically, the amount or level of a "storm surge" involves several different factors such as wind speed, storm pressure gradients, water temperature, subsurface salinity levels, etc.  It is not clear whether Defendants use of the term "storm surge" incorporates all of these factors.  It is also unclear whether Propounding Parties are referring to any "storm" or a "hurricane" specifically which is supposedly identical to the Standard Project Hurricane.  The term "identical" is also similarly vague and ambiguous in that it is unclear whether Propounding Parties are referring to the physical dimensions. Similarly, it is unclear what attributes are to be considered "identical" to those that would be produced by a "Standard Project Hurricane." The Request for Admission is also vague and ambiguous in that it fails to specify which "Standard Project Hurricane" is referred to since the hypothetical factors incorporated into the "Standard Project Hurricane" have changed over time.

54

Finally, Responding Parties object to this Request for Admission on the grounds that it calls for an expert opinion.  Accordingly, and without waiving any objections to this Request for Admission, Responding Parties deny this Request for Admission.


REQUEST FOR ADMISSION NO. 34:

Admit that federal law mandates that a portion of the cost of the Lake Pontchartrain & Vicinity Hurricane Protection Project be borne by state or local entities.


RESPONSE TO REQUEST FOR ADMISSION NO. 34:

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous, and calls for speculation.  Specifically, this Request for Admission does not specify the federal law involved, and even if it did, this Request asks for a legal interpretation of the law.  The Request for Admission is also vague and ambiguous, and potentially irrelevant in that it fails to specify what aspect of the Lake Pontchartrain & Vicinity Hurricane Protection Project was supposedly paid for by "state or local entities."  The Request for Admission further fails to specify which "state or local entities" are involved, or the amount or percentage of the cost to be "borne" by these entities.  Finally, it assumes facts not in evidence in that there has been no evidence presented that establishes what, if any, amount of money such entities actually paid in connection with the Lake Pontchartrain & Vicinity Hurricane Protection Project.

Accordingly, and without waiving any objection to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 35:

     Admit that the central pressure index of Hurricane Katrina exceeded the central pressure index of the Standard Project Hurricane.

RESPONSE TO REQUEST FOR ADMISSION NO. 35:

     Responding Parties object to this Request for Admission on the grounds that it calls for an expert opinion.  Responding Parties further object to this Request for Admission on the grounds that it is potentially irrelevant in that there is at present no evidence presented that establishes that any variance in central pressure indices between Hurricane Katrina and the Standard Project Hurricane.  The Request for Admission is also vague and ambiguous in that it fails to specify which "Standard Project Hurricane" is referred to since the hypothetical factors incorporated into the "Standard Project Hurricane" have changed over time.  Accordingly, and without waiving any objection to this Request for Admission, Responding Parties deny this Request for Admission.

REQUEST FOR ADMISSION NO. 36:

     Admit that the levees and floodwalls constructed along the MRGO were underlain by compressible soils.

RESPONSE TO REQUEST FOR ADMISSION NO. 36:

     Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring

to any mound of soil, or a flood control structure built in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.  Similarly, Responding Parties object to this Request for Admission on the grounds that it assumes facts not in evidence in that no evidence has been produced thus far establishing that the USACE actually constructed any levees, or that levees were constructed on behalf of the USACE.

Responding Parties further object to this Request for Admission on the grounds that the term "underlain" is vague and ambiguous in that it fails to specify whether it refers to a layer of soil laid down during construction of the dirt mounds which the USACE calls "levees," or whether it refers to a geologic layer of contiguous soil that existed prior to the construction of the dirt mounds.

Finally, Responding Parties object to this Request for Admission on the grounds that it calls for an expert opinion.  Accordingly, notwithstanding the foregoing and without waiving any objection to this Request for Admission, Responding Parties deny this Request for Admission.

REQUEST FOR ADMISSION NO. 37:

Admit that the levees along the MRGO were constructed over a period of years to allow the foundation soils to compress between "lifts" that increased the crown elevation of the levees.

RESPONSE TO REQUEST FOR ADMISSION NO. 37:

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure built in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.  Similarly, Responding Parties object to this Request for Admission on the grounds that it assumes facts not in evidence in that no evidence has been produced thus far establishing that the USACE actually constructed any levees, or that levees were constructed on behalf of the USACE.

Responding Parties further object to this Request for Admission on the grounds that the term "foundation soils" is vague and ambiguous in that it fails to specify whether it refers to a layer of soil laid down during construction of the dirt mounds which the USACE calls "levees," or whether it refers to a geologic layer of contiguous soil that existed prior to the construction of the dirt mounds.

Finally, Responding Parties object to this Request for Admission on the grounds that it calls for a legal opinion.  Notwithstanding the foregoing and without waiving any objection to this Request for Admission, Responding Parties deny this Request for Admission.


REQUEST FOR ADMISSION NO. 38:

Admit that the Corps cannot undertake flood control projects unless and until one or more local sponsors execute letters of assurance that promise to provide funding for the project.

RESPONSE TO REQUEST FOR ADMISSION NO. 38:

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous.  Specifically, this Request for Admission fails to specify whether this alleged prohibition results from a practice, policy, regulation, statute, or other cause.  Similarly, Responding Parties object on the grounds that this Request for Admission calls for a legal conclusion.  Accordingly, and without waiving any objection to this Request for Admission, Responding Parties deny this Request for Admission.

REQUEST FOR ADMISSION NO. 39:

Admit that the LPVHPP was not complete when Hurricane Katrina occurred in 2005.

RESPONSE TO REQUEST FOR ADMISSION NO. 39

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous, and potentially irrelevant.  Specifically, this Request for Admission fails to specify what is meant by "complete."  Does "complete" refer to portions of the LPVHPP that Defendants claim are relevant to this lawsuit, or does it refer also to parts of the project that were never intended to protect, or apply to, the relevant geographic areas involved in this litigation.  Furthermore, this Request for Admission does not specify by what standards "completion" is to be determined, and it also calls for an expert opinion.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this Request for Admission, Responding Parties deny this Request for Admission.

REQUEST FOR ADMISSION NO. 40:

Admit that the GIWW served as a conduit for storm surge into the IHNC before the MRGO was constructed.

RESPONSE TO REQUEST FOR ADMISSION NO. 40

Responding Parties object to this Request for Admission on the grounds that it calls for an expert opinion. Accordingly, without waiving any objection to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

REQUEST FOR ADMISSION NO. 41:

Admit that the peak storm surge elevation during Katrina exceeded the authorized height of the levees along or adjacent to the MRGO.

RESPONSE TO REQUEST FOR ADMISSION NO. 41

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous. Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure built in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction. Similarly, Responding Parties object to this Request for Admission on the grounds that it assumes facts not in evidence in that no evidence has been produced thus far establishing

60

that the USACE actually constructed any levees, or that levees were constructed on behalf of the USACE, "along or adjacent to the MR-GO."  Responding Parties further object to this Request for Admission on the grounds that this Request for Admission is vague and ambiguous in that it fails to specify whether the "authorization" was established by statute, regulation, policy, or some other source.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this Request for Admission, Responding Parties deny this Request for Admission.


REQUEST FOR ADMISSION NO. 42:

Admit that the MRGO could not have been dredged in such a way as to prevent the storm surge during Katrina from overtopping the levees along or adjacent to the MRGO.


RESPONSE TO REQUEST FOR ADMISSION NO. 42

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure built in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.  Similarly, Responding Parties object to this Request for Admission on the grounds that it assumes facts not in evidence in that no evidence has been produced thus far establishing that the USACE actually constructed any levees, or that levees were constructed on behalf of the USACE, "along or adjacent to the MR-GO."

Accordingly, notwithstanding the foregoing, and without waiving any objection to this

Request for Admission, Responding Parties deny this Request for Admission.

REQUEST FOR ADMISSION NO. 43:

Admit that the storm surge during Katrina would have overtopped the levees along or adjacent to the MRGO even if the crown elevation of the levees had met the design specifications.

RESPONSE TO REQUEST FOR ADMISSION NO. 43

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure built in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.  Similarly, Responding Parties object to this Request for Admission on the grounds that it assumes facts not in evidence in that no evidence has been produced thus far establishing that the USACE actually constructed any levees, or that levees were constructed on behalf of the USACE, "along or adjacent to the MR-GO."

Accordingly, notwithstanding the foregoing, and without waiving any objection to this Request for Admission, Responding Parties deny this Request for Admission.

REQUEST FOR ADMISSION NO. 44:

Admit that the storm surge generated by Katrina would have exceeded the design height of the MRGO levees regardless of the manner in which the MRGO had been dredged.

RESPONSE TO REQUEST FOR ADMISSION NO. 44

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous.  Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure built in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.  Similarly, Responding Parties object to this Request for Admission on the grounds that it assumes facts not in evidence in that no evidence has been produced thus far establishing that the USACE actually constructed any "MRGO levees," or that "MRGO levees" were constructed on behalf of the USACE.

Accordingly, notwithstanding the forgoing, and without waiving any objection to this Request for Admission, Responding Parties deny this Request for Admission.


REQUEST FOR ADMISSION NO. 45:

Admit that the favorable recommendation of the Board of Engineers for Rivers and Harbors, submitted to Congress as House of Representatives Document No. 89-231, is contingent upon the furnishing of satisfactory assurances that local interests will provide lands, easements, rights-of-ways, borrow and spoil-disposal areas and hold the United States free from damages due to the construction of the project works.


RESPONSE TO REQUEST FOR ADMISSION NO. 45

Responding Parties object to this Request for Admission on the grounds that it calls for a

legal opinion.  Accordingly, Responding Parties deny this Request for Admission.


REQUEST FOR ADMISSION NO. 46:

Admit that the "Plan of Improvement" map (Plate 2) that was submitted to Congress as part of what the Complaint refers to as the "MR-GO Authorization Report" (H.R. Doc. No. 82-245 (1951)) superimposes the MRGO over the GIWW from the point at which the GIWW leaves the IHNC to a point several miles east of the IHNC.


RESPONSE TO REQUEST FOR ADMISSION NO. 46

Responding Parties object to this Request for Admission on the grounds that the document speaks for itself, and calls for an expert opinion as to what is depicted in the referenced map.  Accordingly, notwithstanding the foregoing, and without waiving any objection to this Request for Admission, Responding Parties admit that several maps were attached to what Plaintiffs' Complaint referred to as the "MR-GO Authorization Report."


REQUEST FOR ADMISSION NO. 47:

Admit that your contention that the Corps failed to follow the MR-GO 1951 Authorization Report is based on this description that appears in the Report of the Chief of Engineers:  "from the Industrial Canal, New Orleans, La., eastward along the authorized route of the Intracoastal Waterway." (H.R. Doc. No. 82-245, at 4.)

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 47</u>

       Responding Parties object to this Request for Admission on the grounds that it seeks information related to the mental processes and opinion of Plaintiffs' counsel and is therefore protected from disclosure by the attorney-work product doctrine.  No response will therefore be provided.

<u>REQUEST FOR ADMISSION NO. 48</u>:

       Admit that your contention that the Corps failed to follow the MR-GO 1951 Authorization Report is based on this description that appears in the Report of the Chief of Engineers:  "extending westerly along the Gulf Intracoastal Waterway from the turning basin to the Industrial Canal."  (H.R. Doc. No. 82-245, at 5.)

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 48</u>

       Responding Parties object to this Request for Admission on the grounds that it seeks information related to the mental processes and opinion of Plaintiffs' counsel and is therefore protected from disclosure by the attorney-work product doctrine.  No response will therefore be provided.

<u>REQUEST FOR ADMISSION NO. 49</u>:

       Admit that the MRGO was constructed along the Gulf Intracoastal Waterway.

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 49</u>

       Responding Parties object to this Request for Admission on the grounds that it is vague

and ambiguous.  Specifically, Responding Parties fail to specify whether they are referring to all 76 miles of the MR-GO, or just a portion of the waterway.  Responding Parties further object to this Request for Admission on the grounds that it calls for an expert opinion.  Accordingly, notwithstanding the foregoing, and without waiving any objection to this Request for Admission, Responding Parties admit that the MR-GO intersected with the Gulf Intracoastal Waterway.

REQUEST FOR ADMISSION NO. 50

Admit that your contention that the Corps failed to follow the MR-GO 1951 Authorization Report is based on the notion that the phrase "along the Gulf Intracoastal Waterway" denotes a route parallel to the GIWW and not on or through it.

RESPONSE TO REQUEST FOR ADMISSION NO. 50

Responding Parties object to this Request for Admission on the grounds that it seeks information related to the mental processes and opinion of Plaintiffs' counsel and is therefore protected from disclosure by the attorney-work product doctrine.  No response will therefore be provided.

Respectfully Submitted,

MRGO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE

s/ Pierce O'Donnell
PIERCE O'DONNELL (*pro hac vice*)
MRGO PSLC Liaison Counsel
O'Donnell & Associates PC
550 South Hope Street, Suite 1000
Los Angeles, California 90071-2627

Telephone: (213) 347-0290
Facsimile:  (213) 347-0299
Email:  pod@oslaw.com

PLAINTIFFS' LIAISON COUNSEL

s/ Joseph M. Bruno_____
JOSEPH M. BRUNO
PLAINTIFFS LIAISON COUNSEL
LA Bar Roll Number: 3604
Law Office of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: **jbruno@jbrunolaw.com**


MRGO PLAINTIFFS SUB-GROUP LITIGATION
COMMITTEE

s/ James Parkerson Roy_____
JAMES PARKERSON ROY
MRGO PSLC Liaison Counsel
LA. Bar Roll Number: 11511
Domengeaux Wright Roy & Edwards LLC
P.O. Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: (337) 233-2796
Email: **jimr@wrightroy.com**

For

MRGO PLAINTIFFS SUB GROUP LITIGATION
COMMITTEE

Jonathan Andry (Andry Law Firm, New Orleans, LA)
Clay Mitchell (Levin, Papantonio et al., Pensacola, FL)
Pierce O'Donnell (O'Donnell & Associates, Los Angeles, CA)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

67

<u>**CERTIFICATE OF SERVICE**</u>

I, Pierce O'Donnell, hereby certify that on June 14, 2007, I caused to be served The MR-GO Plaintiffs' Responses To Defendant United States Of America's First Set Of Requests For Admissions, upon Defendants' counsel, Robin D. Smith, Catherine Corlies, Traci Colquette, and Jim McConnon by email at robin.doyle.smith@usdoj.gov; catherine.corlies@usdoj.gov, traci.colquette@usdoj.gov, and jim.mcconnon@usdoj.gov ; and U.S. mail addressed to the United States Department of Justice, Torts Branch, Civil Division, P.O. Box 888, Benjamin Franklin Station, Washington, D.C. 20044.


<u>/s/ Pierce O'Donnell</u>
Pierce O'Donnell