UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: ALL LEVEE | § | |
| | § | |

**DEFENDANT UNITED STATES' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL (REC. DOC. 6405)**

## <u>INTRODUCTION</u>

Defendant United States timely responded to plaintiffs' discovery requests.  Virtually all

of plaintiffs' requests are so vague and ambiguous that in many cases the United States could not

identify the purported document or event to which the request referred.  Most of the requests

contained numerous complaint - style allegations, with generally more argument and opinion

than effort to discover facts or to narrow the issues.  Plaintiffs made it difficult, if not impossible,

to disentangle facts that were inextricably intermingled with the argument and opinion.

Consequently, defendant asserted numerous timely objections to each discovery request followed

by a specific answer, denying the request or admitting parts that could be fairly admitted.

Plaintiffs' requests to admit suffer from the foregoing problems.  Plaintiffs appear to recognize this because their motion to compel generally ignores defendant's objections which plaintiffs are unable to attack.  In many instances their motion to compel rewrites with new meaning the original request to admit.  They also argue that the defendant's answers are evasive.  Defendant's answers, however, are not evasive.  Each answer fairly meets the substance of the requested admission.  Much time and effort, along with reasonable inquiries to the United States Corps of Engineers (USACE or Corps), went into the answers.

Plaintiffs motion to compel production of documents contends that the United States has produced <u>no</u> documents.  The United States has satisfied, and is continuing to satisfy, its responsibility to produce documents as required by the production protocol, which production plaintiffs do not mention to the Court.  This production involves more than 1200 boxes already.  Plaintiffs have had full opportunity to inspect these documents through the review - and - select procedures, which fully satisfies the rule.  <u>See</u> Fed. R. Civ. P. 34.  In addition, plaintiffs also have agreed to a schedule, which the United States is working to satisfy, for copying the documents.  Surely, plaintiffs cannot ignore this massive document production when petitioning the Court and expect to obtain an order compelling production.

Plaintiffs' interrogatories asked defendant to identify former and current USACE "supervisory" employees.  Most of the interrogatories were extremely vague and ambiguous and contained unsupported, incorrect, argumentative, and opinionated qualifiers with which the United States cannot agree.  In addition, that most of the purported events described in the interrogatories occurred over a period of more than forty years, made identifying responsive Corps employees problematic.  As with the requests for admissions, the United States timely

2

responded to plaintiffs' Interrogatories by asserting numerous objections followed by a specific answer either identifying USACE employees or stating that the United States, after reasonable inquiry, was unable to do so.  Not only did the United States conduct a reasonable inquiry to try to identify responsive former and present Corps "supervisory" employees, but in response to several interrogatories the United States even provided names of former Corps employees who, in the usual course of business, may have been responsive.  Indeed, after fully answering or objecting to plaintiffs' Interrogatories, defendant added attachment A which named additional Corps employees who over the years may have gained information relevant to this litigation but are not necessarily covered in the interrogatories.

Plaintiffs' memorandum in support of their Motion to Compel simply ignores virtually all of the United States' objections.  This is tantamount to an admission that the objections are well taken.   Instead, plaintiffs' memorandum offers irrelevant contentions and conclusions based on unsupported and incorrect premises, and attempts to rewrite, after the discovery deadline the fatally defective  requests.  The United States does not agree with the unsupported, inaccurate, and argumentative language included in almost every request.  Plaintiffs have in no way demonstrated that the United States' responses are inadequate in any way, and thus, their Motion to Compel should be denied.  Plaintiffs' remedy now is to prove the matters that they have asserted and afterward move for the cost of proving the matter, if they are able.

## UNITED STATES' ANSWERS TO PLAINTIFFS' REQUESTS FOR ADMISSIONS

In furtherance of the objections already raised in its answers, and in response to plaintiffs' motion to compel, defendants states as follows:

**Answer no. 1**:  Plaintiffs' fail to address a single objection asserted by the United States. Instead, they state, without any support, that "[t]his is simply an evasion of a direct factual question."  The United States asserted in its answer that this request is "argumentative, vague, ambiguous, misleading, and based on alleged statements that are paraphrased out of context rather than quoted with a transcript provided as permitted by the rules."  Indeed, the transcript of General Strock's testimony, which plaintiffs did not attach to the request, indicates that plaintiffs' paraphrase of his testimony is "misleading" and "out of context."  After the meet and confer, plaintiffs produced a copy of that transcript.  General Strock in fact "did <u>not</u> affirm" the allegations as paraphrased by plaintiffs.  Thus, the objections are valid and the United States stands by the objections and denial.  Additionally, the last sentence of their argument is not understandable and has no relationship to the request for admission.

**Answer no. 2**:  Plaintiffs argument, that the United States answers, nos. 1 and 2, are inconsistent, is wrong.  In answer no. 1, the United States denied that General Strock  testified that the Hurricane Protection System failed due to "basic design and engineering deficiencies and failures of the [USACE]."   In answer no. 2, the United States denied that the failure at the 17th Street and London Avenue Canals were "due to deficiencies in the design and engineering of flood walls 'as built by man.'"  These answers are perfectly consistent.  They also are appropriate answers not subject to attack by motion to compel.

**Answer no. 3**:  Plaintiffs ignore the United States' objections to their request.  Instead, plaintiffs assert without any support that "this denial was contrary to facts already possessed by the United States and should have been admitted."  However, plaintiffs point to no such "facts already possessed" that would require the United States to admit to this request, nor did they do

4

so in their request.  Indeed, there is evidence that suggests overtopping of the 17th Street Canal.

Defendant has not been able definitively to confirm or reject this evidence.

**Answer no. 4**:  Plaintiffs ignore the United States' objections to their request.  Plaintiffs

do not define the ambiguous and argumentative term "funneled".   They again merely assert

without any support that "this denial was contrary to facts already possessed by the United States

and should have been admitted."  However, plaintiffs point to no such facts already possessed by

defendant that would require the United States to admit to this request.

**Answer no. 5**:   Plaintiffs ignore the United States' objections to their request.  Indeed,

plaintiffs do not define the ambiguous and argumentative terms "failures and deficiencies" or

"substantially contributed to."  Instead, plaintiffs argue that "the United States can answer

whether it is factually correct that approximately 80% of the City of New Orleans flooded as a

result of flood wall failures and/or deficiencies."  That, however, is not the question asked by the

request.  Plaintiffs' argument also contains a partial sentence which is incomprehensible.  The

United States certainly does not agree that the flooding was all caused by flood wall or other

hurricane protection system failures.  Consequently, without knowing what is meant by

"substantially contributed to," defendant's objections stand.   Plaintiffs have not demonstrated

that the United States is obligated to answer otherwise.

**Answer no. 6**:  Plaintiffs acknowledge that "responsible," in their request, "is susceptible

to different meanings, including legal fault," thus agreeing with the United States' objections that

their request is vague and ambiguous.  Plaintiffs then rewrite this request to state that

"responsible" was intended to mean only "has purview over."  This modification would not fix

the ambiguity.  The United States, however, is required to answer only the request as it is written

the first time.  Defendant's answer fairly meets the substance of the requested admission and should not be the subject of a motion to compel.

**Answer no. 7**:  Again, plaintiffs acknowledge that "responsible," in their request, "is susceptible to different meanings, including legal fault," thus agreeing with the United States' objection that their request is vague and ambiguous.  Plaintiffs then  rewrite this request in the same way as in no. 6 above.  The modification would not fix the ambiguity.  The United States is required to answer requests only as originally written.  It has admitted that "the [USACE] New Orleans District's Operations Division issues permits to dredge navigable waterways."  This admission fairly states who in the USACE issues permits.  Along with the proper objection, defendant has fairly met the substance of the requested admission.  This answer should not be the subject of a motion to compel.

**Answer no. 8**:  Plaintiffs ignore the United States' objections.  The United States admitted that "the Army Corps issued a permit on June 13, 1984, to dredge the 17th Street Canal," and it properly objected to and denied the vague, argumentative, opinionated contentions that the issuance of that permit "caused and allowed changes to occur in the 17th Street Canal bottom, leading to subsurface and soil destabilization of the canal levee" in part because of the vague and ambiguous terms "caused and allowed" and "changes."   The United States also properly denied that the issuance of the permit "lead[] to subsurface and soil destabilization of the canal levee," in part because that entire allegation is extremely vague.  It also is more contention, argument or opinion than it is an effort to narrow the issues.  Plaintiffs have pointed to no facts or law that would require the United States to admit to anything in this request beyond the actual issuance of the permit.

6

**Answer no. 9**:  Plaintiffs ignore the United States' objections to their request.  Instead, Plaintiffs argue that "the United States evaded the issue and said that the memorandum would be the best evidence of its terms."  Plaintiffs  then assert that "[i]f such memoranda exist, this RFA cannot be denied."  This is a concession that plaintiffs' request for admission is based on nothing more than speculation.  Plaintiffs' argument has the same handicap as in no. 1 above.  They do not produce the memoranda; they speculate about the memoranda contents; and then they demand that the United States agree with their uninformed argument and opinion.  The United States appropriately denied this request for admission, and plaintiffs' have not demonstrated otherwise.

**Answer no. 10**:  Plaintiffs ignore the United States' objections to their request.  The United States objected that "in-depth," "treacherous" and "highly variable" are vague and ambiguous.  Plaintiffs also ask about marsh and swamp deposits without stating where they are located even within a general area.  Yet, plaintiffs assert that the "USACE has studies and guidelines and can respond candidly to this request."  Plaintiffs do not attach or even reference any such "studies" or "guidelines."  Nevertheless, the United States admitted to "possessing information concerning the Mississippi Basin soils."  However, there is nothing specific enough about the request that should require defendant to admit to plaintiffs' vague and undefined allegations regarding "in-depth," "treacherous," or "highly variable," or to anything related to undefined "marsh and swamp deposits."  Plaintiffs point to no facts or law that would require the United States to admit to this request.

**Answer no. 11**:  Plaintiffs essentially ignore the United States' objections to their request, particularly those regarding the argumentative, vague, and ambiguous terms

"overwhelming" and "dangerously compromise."  Instead, plaintiffs now, without attaching it, refer to a " January 1981 soil stability analysis" and an "August 1982 report by Eustis Engineering," and then ask "[d]oes the United States deny it had this evidence?"  Again, however, plaintiffs may not now rewrite their discovery requests.  Plaintiffs' original request did not ask if the United States received those identified documents.  Instead, plaintiffs asked an argumentative, opinionated, vague, and ambiguous request, which  they now change.  Again, in addition to failing to address the United States' objections, plaintiffs point to no facts or law that would require the United States to admit to this request.

**Answer no. 12**:  Plaintiffs acknowledge that "legal responsibility," the operative word in this request, "can be interpreted" in different ways, thus agreeing with the United States' objection that their request is vague and ambiguous.  Plaintiffs then attempt to rewrite this request to clarify which meaning of "legal responsibility" they now claim to have intended to use. The rewrite would not fix the ambiguity.  It would simply make the request also objectionable as calling for a legal conclusion rather than application of law to fact.  The United States, however, is required to answer only those requests as originally written.

**Answer no. 13**:  Plaintiffs ignore the United States' objections to their request.  Instead, plaintiffs rewrite the request, asserting that "[i]f that [alleged dredging below the depth of sheet piles] was a derogation from the USACE's own engineering standards and procedures, the United States cannot deny this request for admission."  They also do not provide any support for the premise on which the new request/argument is based, i.e., that there was a "derogation from the USACE's own engineering standards and procedures."  Indeed,  plaintiffs point to no facts nor even identify any "federal regulations" or "engineering standards and procedures" that the

8

Army Corps allegedly violated.  The United States, however, is entitled to answer the request as it is originally written.  Neither the original nor the rewrite satisfies a motion to compel.  Further, a violation of federal law would not create a duty actionable under the FTCA.  <u>Johnson v. Sawyer</u>, 47 F.3d 716, 727 (5th Cir. 1995).  The defendant's objection in its answer, that no subject matter jurisdiction attaches, also is still valid.

**Answer no. 14**:  Plaintiffs ignore the United States' objections to their request.  Instead, plaintiffs assert only that, "[i]f that was contrary to public safety interests, the United States cannot deny this request for admission."  They provide no support for the premise on which the argument is based, <u>i.e.</u>, that anything "was contrary to public safety interests".  Indeed, plaintiffs point to no facts or law that would require the United States to admit to this request.  Additionally, defendant incorporates by reference its opposition stated in no. 13 above.

**Answer no. 15**:  Plaintiffs ignore defendants' objections to their request, which request asks the defendant to interpret the effect of and requirements stemming out of a particular federal regulation, clearly improperly calling for a legal conclusion.  Instead, plaintiffs incorrectly assert that "[t]he United States denied that the USACE violated published federal regulations . . . ."  Plaintiffs' request had nothing to do with whether a federal regulation had been violated.  Rather, the request asks only for the interpretation of a federal regulation.  Finally, plaintiffs again argue that, "[i]f that was in derogation from published regulations, the United States cannot deny this request for admission." Plaintiffs provide no support for the premise on which the argument is based,  <u>i.e.</u>, that there was a "derogation from published regulations."  Indeed, plaintiffs point to no facts or law that would require the United States to admit to this request.

**Answer no. 16**:  Plaintiffs ignore the United States' objections to their request.  Instead,

plaintiffs argue only that, "[i]f that plan was in derogation from published federal regulations, the USACE wold [sic] not have had discretion to approve the dredging permit and the United States cannot deny this request for admission." Plaintiffs provide no support for the premise on which the argument is based, i.e., that there was a "derogation from published federal regulations."  The request is vague, ambiguous, argumentative, and not a proper attempt to apply law to fact, as defendant has stated.  Indeed, plaintiffs point to no fact or law  that would require the United States to admit to this request.

**Answer no 17**:  Plaintiffs ignore the United States' objections to their request.  Instead, plaintiffs raise numerous unrelated assertions concerning "navigable waters," and then contend that "[i]f these factual matters are true, the United States cannot deny this request for admission." However, plaintiffs' various new allegations relating to "navigable waters" simply do not demonstrate that the United States is bound to admit the original request propounded by plaintiffs.  Further, the Court in this litigation has recently ruled that the 17th Street Canal is not a navigable waterway.  Rather, it is a drainage ditch.  Consequently, there is no basis to compel a different answer.

**Answer no. 18:**  Plaintiffs ignore the United States' objections to their request. Moreover, plaintiffs merely ask "so what 'authorized plan' allowed issuance of the dredging permit and denial of this request for admission?"  Plaintiffs cannot now change the request to admit to an interrogatory.  More importantly, plaintiffs point to no facts or law that would require the United States to admit to this request.  Indeed, as stated in defendant's answer, the Court has held contrary to plaintiffs' request for admission.  <u>Berthelot v. Boh Brothers Construction Co.</u>,

CA No. 05-4182, decided June 1, 2006 (E.D. La., J. Duval) (17th Street Canal flood walls were an authorized flood control project.)

**Answer no. 19**:  Plaintiffs ignore the United States' objections to their request, which asks the United States to interpret the effect of and requirements stemming out of a particular federal regulation, clearly an improper request for a conclusion of law.  The modified statement in the motion to compel "that language or <u>similar language</u>...." indicates that plaintiffs' request also is vague and therefore not definite enough to be admitted.  Moreover, plaintiffs point to no facts or law that would require the United States to admit to anything more in this request.

**Answer no. 20**:  Plaintiffs rewrite their request to state now that the request "refers to the LPVHPP which was developed after 1965's Hurricane Betsy."  This contemplates a more than forty year time period and thus does not cure the request's vagueness.  Further, the terms used in requests nos. 20 and 21 are inconsistent and ambiguous.  Next, plaintiffs brief in support of their Motion to Compel asserts only, and without any support whatsoever, that "there is no basis for denial of this request for admission."  Plaintiffs, however, point to no fact or law, nor even offer any argument, that would require the United States to admit to this request.

**Answer no. 21**:  Plaintiffs ignore the United States' objections to their request.  Indeed, this request is so vague and ambiguous that the United States simply cannot admit to any part of it.  The United States relies on its answer as complete and fairly meeting the substance of the requested admission.

**Answer no. 22**: Plaintiffs ignore the United States' objections to their request.  After defining the vague and ambiguous word "ignore" to mean "did not comply with," plaintiffs argue only that, "[i]f the USACE did not revise all Standard Project Hurricane-based analysis to reflect

the 1979 National Weather Service data, the United States cannot deny this request for admission." Plaintiffs' argument, however, incorrectly assumes that "the order of the Chief of Engineers (ER 1110-2-1453)" was intended to be applied retroactively to projects already completed, or to projects at various stages of completion, i.e., to "all Standard Project Hurricane-based analysis." Thus, plaintiffs have not demonstrated through either fact or law that the United States is obligated to admit this request. Defendant relies on its original answer and objections.

**Answer no. 23**: Plaintiffs ignore the United States' objections to their request. Instead, plaintiffs assert only that, "[i]f the USACE did not use the 1979 SLOSH model for surge prediction, it cannot deny this request for admission." However, because the request was vague and ambiguous, the United States simply could not admit that <u>no one</u> authorized to act on behalf of the Corps <u>ever</u> "used," <u>to any extent</u>, the "SLOSH model" for <u>any</u> "surge prediction," much less whether that model "<u>became available</u>" in 1979 or "<u>clearly showed</u>" that all structures built under the authority of the LPVHPP "<u>would be subject to</u> overtopping by <u>many</u> Category 3 hurricanes." (Emphasis added.) For example, not all LPVHPP structures were overtopped. The United States properly objected to and denied this vague, argumentative and ambiguous request. Plaintiffs have not demonstrated otherwise.

**Answer no. 24**: Plaintiffs ignore the United States' objections to their request. Plaintiffs now rewrite the request to state that "[t]his request contemplates levee and floodwall heights constructed after 1965." However, even plaintiffs' rewrite only narrows the breadth of the request to a period of more than a forty years. They do not address the request's broad application to "all levee and flood wall crown elevations." Next, plaintiffs assert several rambling factual allegations unsupported by evidence, none of which by themselves, or

12

collectively, demonstrate, or even relate to, the statement contained in plaintiffs' request for an admission.  Again, plaintiffs point to no facts, law, nor even offer any argument, that would require the United States to admit to this objectionable and improper request.

**Answer no. 25**:  Plaintiffs ignore the United States' objections to their request.  Instead, plaintiffs now rewrite to cite "historical record[s]" concerning statistical characteristics of other storms.  They then argue, without any evidence or expert testimony or opinion, that those "numerous" storms must be "more severe" and that "[t]he United States has no factual basis to deny this request for admission."  However, plaintiffs' unsupported and improper rewrite of the request does not demonstrate that the United States is required to admit to this objectionable and improper request.  The United States relies on its original answer and objections.

**Answer no. 26**:  Plaintiffs ignore the United States' objections to their request.  For example, Standard Project Hurricane data can be revised every year.  The Corps cannot constantly go back and rebuild earlier finished projects.  Plaintiffs attempt to define terms in this litigation without understanding the physical limitations of the system.  Now, plaintiffs rewrite their request to assert that, "[i]f the USACE did not comply with ER 1110-2-1453, it cannot deny this request for admission."  As written, however, the request does not refer to compliance with any regulation.  Plaintiffs can point to no facts, or law, nor even offer any argument, that would require the United States to admit to this objectionable and improper request.   Further, their attempt to evaluate compliance without understanding the physical limits of the system is misguided.

**Answer no. 27**:  Plaintiffs ignore the United States' objections to their request.  Instead, plaintiffs assert that, "[i]f it is true that when the Corps' adopted design specifications . . . zero

13

NGVD 29, was already between 1.3 and 1.6 feet below LMSL at different parts of the system, the United States cannot deny this request for admission."  Not only does plaintiffs' premise not necessarily follow, plaintiffs also fail to demonstrate with evidence that "zero NGVD 29 was already between 1.3 and 1.6 feet below LMSL."  Indeed, that this motion to compel changes the parameters as stated in the original request of 1 to 2 feet to now 1.3 to 1.6 feet indicates that the original request is inaccurate and that defendant was right to object and to deny the request. Plaintiffs point to no facts or law, nor even offer any argument, that would require the United States to admit to this objectionable and improper request.

**Answer no. 28**:  Plaintiffs ignore the United States' objections to their request.  Instead, plaintiffs assert that, "[i]f it is factually true that subsidence between 1929 and 1965 . . . affected the accuracy of the National Geodetic Vertical Datum of 1929 (NGVD29), the United States cannot deny this request for admission."  Not only do plaintiffs fail to show the premise of this argument, that "subsidence between 1929 and 1965 . . . affected the accuracy of the National Geodetic Vertical Datum of 1929," but even if it did "affect" the NGVD29's "accuracy," it does not follow that "zero NGVD29 was 1.3 to 1.6 feet below mean sea level," as stated in the request for admission.  Again, plaintiffs point to no facts, or law, nor even offer any argument, that would require the United States to admit to this objectionable and improper request.

**Answer no. 29**:  Plaintiffs ignore the United States' objections to their request.  Instead, Plaintiffs first assert that "[t]he United States denied that the USACE adopted a policy in 1985 to explicitly use the 1965 NGVD29 adjustment for elevation control.  Amazingly, in its answer to Levee PLSC INT #5, the United States identified two persons who 'likely would have known about and participated in decisions related to NGVD29.'"  (Emphasis in original.)  However,

14

plaintiffs rewritten version of the request does not accurately reflect the actual request for admission, which the United States answered.  Plaintiffs' current version conveniently omits the operative and objectionable phrases "mistake," "locked in,"and "outdated."  It also treats the referenced interrogatory answer as somehow an admission relevant to the request to admit, which it is not.  The witnesses that the United States identified must state whether, and how, the datum was used, if at all.  Again, the United States properly objected to and then denied this request, and plaintiffs have not demonstrated otherwise.

**Answer no. 30**:  Plaintiffs ignore the United States' objections to their request.  Instead, plaintiffs assert only  that, "[i]f there is a known 3 to 4 foot per century subsidence rate in the greater New Orleans area, this portion of the request for admission cannot be denied."  They provide no support for the argumentative and vague premise that there was a "known 3 to 4 foot per century subsidence rate in the greater New Orleans area".  Thus, plaintiffs have not demonstrated that the United States is required to, and it does not, admit to this request.  The United States relies on its original answers and objections.

**Answer no. 31**:  Plaintiffs ignore the United States' objections to their request.  Instead, plaintiffs assert that, "[i]f the United States takes issue with the descriptive word 'prolonged,' it should nevertheless admit or deny that crown elevation deficiencies lead to overtopping along the IHNC."  Plaintiffs do not, however, address the vague and ambiguous terms and subjective generalizations "deficiencies," "prolonged overtopping" or "overtopped only briefly."  Nevertheless, and notwithstanding these objections, the United States denied the request, and plaintiffs point to no facts or law, nor even offer any argument, that would require the United States to admit to this objectionable and improper request.

15

**Answer no. 32**:  Plaintiffs ignore the United States' objections to their request.  They also attempt now to rewrite to convert to an interrogatory their failed request to admit.  Plaintiffs assert that, "If the United States denies that it was the only project design authorized by Congress, its denial should identify which other project was authorized and when it was authorized."  To the contrary, the United States is under no obligation to supplement its denials to plaintiffs' requests for admissions with additional information.  If plaintiffs wanted to ask "which other project was authorized and when it was authorized" they could have done so via a timely interrogatory.

**Answer no. 33**:  Plaintiffs ignore all of the United States' objections to their vague, ambiguous, and oversimplified request.  Instead, plaintiffs assert that "[i]ts [sic] own answer to the Levee PLSC RFA #32, <u>supra</u>, does not mention any structures along the three outfall canals." Plaintiffs fail to mention, however, that the United States' answer to RFA #32 admits only that "the 'Barrier Plan' included, but was <u>not limited to,</u>" certain structures, and so the omission of any particular structure from that plan does not necessarily mean it was not part of plaintiffs' vague, ambiguous, and undefined term, "Barrier Plan."  Indeed, the undefined term "Barrier Plan" may include any number of actual "plans" or variations of such plans, depending on how "Barrier Plan" is defined.  Moreover, plaintiffs' request asks the United States to admit that "the original and <u>only project design of the LPVHPP authorized by Congress</u> . . . never included any hurricane protection structures along the 17th Street, Orleans Avenue, and London Avenue Canal."  (Emphasis added.)  The United States disagrees that there did not exist any design that both was authorized by Congress and included hurricane protection structures along the 17th Street, Orleans Avenue, and London Avenue Canal, and thus, the United States properly denied

the plaintiffs' vague, ambiguous, and argumentative request.   Judge Duval in <u>Berthelot</u>, <u>supra</u>, also identified the 17th Street Canal hurricane protection structures as authorized flood control projects.  (<u>See</u>, also Rec. Doc. 6380-3 at 6-9)

**Answer no. 34**:  Plaintiffs ignore the United States' objections to their request. Moreover, Plaintiffs did not attach a transcript of Colonel Rush's purported statement to Congress referenced in the request.  The United States, after reasonable inquiry has been unable to locate a document fitting plaintiffs' description in the request.  On the morning of Tuesday, July 10, 2007, before plaintiffs filed their Motion to Compel, counsel for the United States emailed plaintiffs' counsel requesting a copy of the transcript referenced in the request. Plaintiffs' counsel still has not responded to that request.  Further, after the Strock incident addressed above, the United States is reluctant to accept plaintiffs' statement of what the document says.  Thus, the United States appropriately denied this request, and plaintiffs have not demonstrated otherwise.

**Answer no. 35**:  Plaintiffs ignore the United States' objections to their request. Moreover, plaintiffs did not attach a transcript of Colonel Rush's purported statement to Congress referenced in the request, and the United States, after reasonable inquiry has been unable to locate any such transcript.  On the morning of Tuesday, July 10, 2007, before plaintiffs filed their Motion to Compel, counsel for the United States emailed plaintiffs' counsel requesting a copy of the transcript referenced in the request.  Plaintiffs' counsel still have not responded to that request.  Thus, the United States appropriately denied this request.

**Answer no. 36**:  Plaintiffs ignore the United States' objections to their request.  Instead, plaintiffs assert that, "[i]f [the High Level Plan] did [include structures along the three outfall

17

canals], the United States should identify in what document or drawing such structures were included.  If not, the United States cannot deny this request for admission."  First, however, the United States is under no obligation to supplement its denials to plaintiffs' requests for admissions with additional information.  Plaintiffs also cannot rewrite the request to admit now as an interrogatory.  Moreover, plaintiffs point to no facts or law, nor even offer any argument, that would require the United States to admit to this objectionable and improper request.

**Answer no. 37**:  Plaintiffs ignore the United States' objections to their request.  Instead, plaintiffs assert that, "[i]f the change to the High Level Plan was authorized by Congress, the United States should identify when and how that authorization was made.  If not, the United States cannot deny this request for admission."  First, however, the United States is under no obligation to supplement its denials to plaintiffs' requests for admissions with additional information.  The request cannot be rewritten as an interrogatory at this time.  Moreover, plaintiffs point to no facts, or law, nor even offer any argument, that would require the United States to admit to this objectionable and improper request.  However, if plaintiffs are now seeking the United States' position of whether levee projects were authorized, this has been briefed in the United States' Motion to Dismiss the Levee Master Complaint.  (See Rec. Doc. 6380-3 at 6-9)

**Answer no. 38**:  Plaintiffs ignore the United States' objections to their vague, ambiguous, and oversimplified request.  Instead, plaintiffs assert that, "[i]f [the outfall canals were congressionally authorized], the United States should identify the date and nature of their authorization.  If not, the United States cannot deny this request for admission."  First, however, the United States is under no obligation to supplement its denials to plaintiffs' requests for

admissions with additional information.  Plaintiffs cannot rewrite the request as an interrogatory at this time.   Moreover, plaintiffs point to no facts or law, nor even offer any argument, that would require the United States to admit to this objectionable and improper request.  See also defendant's opposition in nos. 36 and 37, above which are incorporated herein by reference.

**Answer no. 39**:  Plaintiffs ignore the United States' objections to their request.  The United States reasserts that the request "confuses plans and terms, and confuses initial proposed plans with final adopted plans."  Plaintiffs do not now contend otherwise or they would address the objection.  The United States properly objected to and then denied this request.  Plaintiffs have not demonstrated that the United States is obligated to admit to anything in the request.

**Answer no. 40**:  No opposition required.

**Answer no. 41**:  Plaintiffs ignore the United States' objections to their request.  Because the request is vague and ambiguous, the United States cannot assert that no one who was authorized to act on behalf of the Corps, during the several decades potentially covered by the request, "never considered" options other than the three structure options identified by the plaintiffs.  Consequently, defendant relies on its original answer and objections.

**Answer no. 42**:  Plaintiffs ignore the United States' objections to their request.  Plaintiffs' request limits the Corps' reasons, and ignores the limitations on the Corps, which reasons and limitations entered into the decisions as to how to build hurricane protection systems for the listed canals.  Thus, the request is oversimplified and cannot be admitted as it stands.  It also ignores the issue of whose responsibility it is to "expropriate" land.  The levee boards may have that responsibility.  For certain, the Corps does not have authority over the land, nor is the appropriation of land controlled by the Corps. Notwithstanding these objections, the United

States denied the request for admission.  Plaintiffs point to no facts or law, nor offer any argument, that would require the United States to admit to this objectionable and improper request.

**Answer no. 43**:  Plaintiffs ignore the United States' objections to their request.  Plaintiffs paraphrase out of context a part of the manual rather than quoting it or attaching it.  That plaintiffs use the word "rarely" in the request concedes that the manual does not limit the stated heights as plaintiffs contend.  The United States appropriately objected and denied the request.

**Answer no. 44**:  Plaintiffs ignore the United States' objections to their vague, ambiguous and inaccurate request.  Instead, Plaintiffs argue that "[t]he I-walls either exceed that 7-foot height limitation or they do not."  (Emphasis added.)  First, as stated in the United States' answer no. 44, and by reference to answer no. 43, "the manual is not mandatory . . . but rather it consists of guidelines," and thus, the manual does not set a "limitation" for any "I-wall" to exceed.  Second, plaintiffs fail to consider that some "I-walls," or portions thereof (depending on how one defines "I-wall"), may be more than 7 feet while others may not.  Plaintiffs' vague and ambiguous request appears to require an admission or denial based on the heights of all "I-walls . . . along the 17th Street, Orleans Avenue, and London Avenue Canals" as if the heights were uniform.  Thus, the United States properly objected to,  and then denied,  this request.  Plaintiffs have not demonstrated otherwise.

**Answer no. 45**:  Plaintiffs ignore the United States' objections to their request.  The request is so vague and ambiguous that the United States cannot admit whether the Corps as a whole, or anyone authorized to act on behalf of the Corps, always or ever "relied upon," to any extent, the "Lane's Weighted Average Creep method" for any underseepage analysis ever

<u>performed by the Corps or one or more of its employees</u>, much less whether that method was recognized in an "undefined" profession at an "unspecified" time to be "inappropriate" for an unspecified particular purpose.  The United States properly objected to and denied this request. Plaintiffs have not demonstrated otherwise.

**Answer no. 46**:  Plaintiffs ignore the United States' objections to their request. Notwithstanding these objections, the United States denied the request for admission.  The objections need no explanation.  This request is completely inappropriate.  Plaintiffs point to no facts or law, nor even offer any argument, that would require the United States to admit to this objectionable and improper request.

**Answer no. 47**:  Plaintiffs ignore the United States' objections to their request.  The objections need no explanation.  This request is completely inappropriate.  Notwithstanding these objections, the United States denied the request for admission.  Plaintiffs point to no facts or law, nor even offer any argument, that would require the United States to admit to this objectionable and improper request.

In summary, the United States neither modifies nor withdraws its answers and objections to plaintiffs' requests for admission and reasserts these in this response.  Plaintiffs' attempts, at this time, to rewrite or to add explanations not obvious in the requests should be rejected.  Their reliance on opinion and argument also proves fatal to their requests.  Further, plaintiffs do not address defendant's objections.  Finally, it should not be assumed that because the United States has not affirmatively restated or explained an earlier objection, that it in any way withdraws the objection.

## UNITED STATES' RESPONSES TO PLAINTIFFS'
## REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiffs' assertion that "[t]he United States has produced no documents or things in response to any of the 100 production requests," is untrue. Defendant's responsibility is to make the documents available for inspection. Fed. R. Civ. P. 34. Defendant has produced for review and selection over 1200 boxes of responsive documents. Defendant is now, by agreement with plaintiffs, in the process of making copies for plaintiffs.

Plaintiffs assert at footnote 13 only one specific example of documents they appear to need. Those are purportedly in "the 17th Street canal dredging permit file...." The responsive documents, that defend has found, however, were produced on July 16, 2007. (See Rec. Doc. 6455). Consequently, plaintiffs have no valid reason for moving to compel the United States to produce documents.

## UNITED STATES' ANSWERS AND OBJECTIONS
## TO PLAINTIFFS' INTERROGATORIES

Plaintiffs' assertions that defendants' answers to interrgatories create a pattern of intentionally avoiding listing witnesses to "crucial events" inappropriately reads into defendants' answers an intent that is not there. USACE counsel and Department of Justice counsel have interviewed current and former personnel in an effort to fully comply with the duty to perform a reasonable inquiry into each and every interrogatory. USACE counsel additionally have searched for names in Corps' personnel records and documents. Out of that effort has come a good faith listing of witnesses fully responsive to the interrogatories. Defendants' counsel have no concept or opinion of what events plaintiffs contend are "crucial." Each interrogatory equally has received full attention.

22

Defendant also has now produced for inspection 1200 boxes of documents.  Government counsel have not yet searched all of those documents, but they may have witness names within them that are responsive to plaintiffs' interrogatories.  Plaintiffs have reviewed and selected those documents.  Any responsive names within them are available to plaintiffs as well as to defendant.  In opposition to plaintiffs' specific motion to compel further interrogatory answers, defendant says as follows:

**Interrogatory Answer no. 4**:  Plaintiffs ignore the United States' objections to this interrogatory.  Instead, Plaintiffs assert only that "No witness is identified [in response to this request] . . . , yet witnesses are identified in answer to virtually every other interrogatory."  Nevertheless, as stated in its answer to this interrogatory, the United States completed a reasonable inquiry, but could not identify anyone "who in response to the August 1982 Eustis Engineering report received or authored any related correspondence regarding measures to prevent a landslide blowout related to dredging at the 17th Street Canal."  Further, the United States relies on its original answer and objections.  Plaintiffs' contention does not support compelling the United States to do anything further.

**Interrogatory Answer no. 6**:  Plaintiffs ignore the United States' objections to this interrogatory.  Instead, plaintiffs incorrectly assert that the answer should necessarily "include, e.g., persons who received the . . . proposed dredge-to depth, and/or persons who received the sheet piling depth proposals, and/or persons who received [some unidentified] soil study report."  (Brackets added)  Plaintiffs' argument incorrectly assumes, however, that someone who received "proposals" to do certain work necessarily "knew" that the work was actually completed as proposed.  Again, after reasonable inquiry, the United States could not identify anyone in

23

response to this interrogatory.  Further, defendant relies on its original answer and objections.

Plaintiffs have not demonstrated that defendant has any further duty at this time.

**Interrogatory Answer no. 7**:  Plaintiffs ignore the United States' objections to this

interrogatory.  Instead, plaintiffs incorrectly assert that "[s]ame issue [as in no. 6 above] except

that it related to excavation by SWB until canal water touched the Orleans Parish side of the

canal wall."  (Brackets added)  After reasonable inquiry defendant could not identify anyone in

response to this interrogatory.   Plaintiffs' assertions do not demonstrate that the United States'

answer is inadequate.  Further, defendant relies on its original answer and objections.

**Interrogatory Answer no. 9**:  Plaintiffs ignore the United States' objections to this

interrogatory.  Instead, plaintiffs assert only that because a particular federal regulation

purportedly required that "the USACE . . . <u>conduct</u> inspections", that "[s]urely someone was

charged" with doing so.  (Emphasis added.)  This does not, however, demonstrate that there are

currently identifiable witnesses responsive to the interrogatory.  After reasonable inquiry, the

United States could identify only one former Corps employee in response to this request.

However, under defendant's duty timely to supplement its interrogatory answers, defendant

supplements, at this time, its answer to add Vick Landry, a current employee,  who has been

recently identified as responsive to the interrogatory.  Further, defendant relies on its original

answer and objections.

**Interrogatory Answer no. 19**:  Plaintiffs ignore the United States' objections to this

interrogatory.  Instead, plaintiffs ask "[w]ould this be one of the persons identified in response to

INT #'s 15, 16, 17, 18, and 20 which chronologically overlap with INT #19?"  This new

interrogatory does not support compelling the United States to do anything further.  Indeed, the

fact that one vague event alleged by plaintiffs "chronologically overlap[s]" with other different (but still vague) events also alleged by plaintiffs, does not require an answer that the same people were involved in all of those purported events.  Again, after reasonable inquiry, the United States could not identify anyone responsive to Plaintiffs' request.  Plaintiffs have not demonstrated otherwise or that defendant is required to do anything further.  Further, defendant relies on its original answer and objections.

**Interrogatory Answer no. 24**:  Plaintiffs ignore the United States' objections to this interrogatory.  Instead, plaintiffs ask "[h]ow could it have no answer to this interrogatory while it answered INT #25 and identified persons who on/about November 30, 1982 received Modjeski and Masters' subsoil investigation report for the 17th Street Canal?"  This question relies on the unsupported assumption that the "Modjeski and Masters' subsoil investigation report" proves conclusively that "sands underlay the entire 17th Street Canal, from Pumping Station No. 6 to Lake Pontchartrain," as asserted in plaintiffs' request.  It also assumes that there is information available to defendant today that in a reasonable inquiry would lead to the identification of responsive witnesses.  Again, after reasonable inquiry, the United States could not identify anyone responsive to plaintiffs' request.  Plaintiffs have not demonstrated otherwise or that defendant is required to do anything further.  Further, defendant relies on its original answers and objections.

**Interrogatory Answer no. 28**:  Plaintiffs ignore the United States' objections to this interrogatory.  The United States still has not been able to identify a report that fits plaintiffs' description.  On the morning of Tuesday, July 10, 2007, before plaintiffs filed their Motion to Compel, counsel for the United States emailed plaintiffs' counsel requesting a copy of the report

referenced in the request.  Plaintiffs' counsel still has not responded to that request.  Moreover, plaintiffs' brief in support of their Motion to Compel merely asserts that " in answers to INT #'s 27 and 19 it identifies persons who received the May 9, 1983 dredging permit application and Eustis Engineering's January 17, 1984 report regarding the 17th Street Canal."  This comment relies on the unsupported assumption that anyone who received "the May 9, 1983 dredging permit application and Eustis Engineering's January 17, 1984 report" necessarily also received the purported "Eustis Engineering[] July 27, 1983" report.  Again, after reasonable inquiry, the United States could not identify anyone responsive to plaintiffs' request.  Plaintiffs have not demonstrated otherwise or that defendant is required to do anything further.  Further, defendant relies on its original answers and objections.

**Interrogatory Answer no. 30**:  Plaintiffs ignore the United States' objections to this interrogatory.  Instead, plaintiffs' assert only that "[t]he United States avoids identifying who evaluated the 1983-94 piezometer study, yet in answer to other interrogatories it identified persons who received chronologically contemporaneous documents."  This contention does not support compelling the United States to do anything further.  Indeed, obviously the fact that the United States was able to identify people who received certain documents between 1983 and 1994 does not necessarily mean that the United States could identify anyone who "evaluated" some purported "study" that plaintiffs describe with hardly any particularity.   Nevertheless, as stated in its answer to this interrogatory, the United States, after reasonable inquiry, could not identify anyone who "evaluated" the "study" as characterized by plaintiffs.  Further, defendant relies on its original answers and objections.

26

**Interrogatory Answer no. 32**:  Plaintiffs ignore the United States' objections to this interrogatory.  The United States was unable to identify the drawing or anyone who "prepared" it.  Moreover, at this time,  plaintiffs ask two questions: "Isn't review of this drawing part of the process of approving the construction of "I-walls" on the canal?  Whose name is on the drawing?"  These questions do not support compelling the United States to do anything further.  Indeed, the "<u>review</u> of th[e] drawing" simply has nothing to do with plaintiffs' interrogatory, which asks for identification of the person who "<u>prepared</u>" the drawing.  Nevertheless, as stated in its answer to this interrogatory, the United States, after reasonable inquiry, could not identify anyone who "prepared" the drawing described in the request.  Further, defendant relies on its original answers and objections.

**Interrogatory Answer no. 34**:  Plaintiffs ignore the United States' objections to this interrogatory.  Instead, plaintiffs assert only that "[t]here is a limited number of persons who could have done so, <u>see</u>, <u>e.g.</u>, the United States' answer to INT #38."  This contention does not support compelling the United States to do anything further.  Indeed, the mere allegation that there may be a finite number of people who fall into the vague and ambiguous category described in plaintiffs' interrogatory, does not prove that the United States is able to name those people, if there even are any.  Nevertheless, as stated in its answer to this interrogatory, the United States, after reasonable inquiry, could not identify anyone in response to this interrogatory.   Further, defendant relies on its original answers and objections.

**Interrogatory Answer no. 35**:  Plaintiffs ignore the United States' objections to this interrogatory.   After reasonable inquiry the United States could not identify anyone in response to this interrogatory.  Further, the defendant relies on its original answers and objections.

**Interrogatory Answer no. 37**:  Plaintiffs ignore the United States' objections to this interrogatory.  Instead, plaintiffs' brief asserts only that "[h]ere is a limited universe of persons who, in 1993, would have received Pittman's concerns and who would have been empowered to halt the construction."  This contention does not support compelling the United States to do anything further.  First, plaintiffs' interrogatory asked who, despite Pittman['s] . . . concerns, allowed the construction . . . to proceed"; not, as stated in the motion to compel, "who . . . would have received Pittman's concerns and who would have been empowered to halt the construction," as plaintiffs have re-written the interrogatory.  Next, the allegation that there may be  a finite number of people who fall into the vague and ambiguous category described in plaintiffs' interrogatory, does not mean that the United States is able to identify those people, if there even are any.  Nevertheless, although inadvertently not stated in its answer to this interrogatory, the United States, after reasonable inquiry, could not identify anyone in response to this interrogatory.  Further, the United States relies on its original answers and objections.

**Interrogatory Answer no. 38**:  Plaintiffs ignore the United States' objections to this interrogatory.  Instead, plaintiffs assert only that "[t]he United States nevertheless fails to identify the Chief of Engineers."  However, without knowing what, if any, purported "deviations" to which the request refers, the United States cannot identify the appropriate Chief of Engineers.  Further, defendant relies on its original answers and objections.

**Interrogatory Answer no. 39**:  Plaintiffs ignore the United States objections.  However, as a result of an additional search, counsel have determined that, by memorandum dated February 7, 1985, Major General John F. Wall, Director of Civil Works, Headquarters USACE, approved a post authorization change implementing the High Level Plan.  This approval came under the

authority delegated in ER 1105-2-10, paragraph 1-5a(3).  This information is provided herein under the defendant's duty timely to supplement its answers.  Further, defendant relies on its original answers and objections.

**Interrogatory Answer no. 40**:  Plaintiffs move to compel only the name of the Chief of Engineers relevant to interrogatory no. 40.  The Chief of Engineers at the time was Lt. General Henry J. Hatch.  Further, defendant relies on its original answer and objections.

**Interrogatory Answer no. 41**: Plaintiffs move to compel only the name of the Chief of Engineers relevant to interrogatory no. 41.  The Chief of Engineers at the time was Lt. General Henry J. Hatch.  Further defendant relies on its original answer and objections.

**Interrogatory Answer no. 42**: Plaintiffs move to compel only the name of the Chief of Engineers relevant to interrogatory no. 42.  The Chief of Engineers at the time was Lt. General Henry J. Hatch.  Further defendant relies on its original answer and objections.

**Interrogatory Answer no. 43**: Plaintiffs move to compel only the name of the Chief of Engineers relevant to interrogatory no. 43.  The Chief of Engineers at the time was Lt. General Henry J. Hatch.  Further defendant relies on its original answer and objections.

**Interrogatory Answer no. 44**:  Plaintiffs ignore the United States' objections to their request.   Instead, plaintiffs merely assert that because the Corps received certain reports and Design Memoranda, someone in the Corps necessarily "knew" that particular soil was "weak." However, plaintiffs do not demonstrate how any of these documents establish conclusively that the particular soil was "weak," however defined.  Again, the United States properly objected to this interrogatory and plaintiffs have not demonstrated otherwise.  Thus, after a reasonable

inquiry, defendant was  unable to identify anyone responsive to this interrogatory.  Further,
defendant relies on its original answers and objections.

**Interrogatory Answer no. 45**:  Plaintiffs ignore the United States' objections to this
request.  Instead, plaintiffs assert only that "[i]f the United States has post-construction
information regarding any soil subsidence, it can answer this interrogatory.  If it did not obtain or
receive information regarding subsidence, it should say so."   First, plaintiffs' argument
incorrectly assumes that information regarding any "subsidence" necessarily would demonstrate
the existence of "significant subsidence".  It is not clear what plaintiffs intended that vague term
to mean.  After reasonable inquiry, the United States could not identify anyone who "knew" that
certain soil had subsided "significantly."  Finally, the United States has no obligation to answer
plaintiffs' rewritten  interrogatory concerning whether the United States "obtain[ed] or receive[d]
information regarding subsidence."  Further, defendant relies on its original answers and
objections.

**Interrogatory Answer no. 46**:  Plaintiffs ignore the United States' objections to their
request.  Instead, plaintiffs' brief makes one assertion followed by two questions: "[i]f receipt of
such information was part of the process of evaluating a permit application, it can answer this
interrogatory.  For example, was a proof of insurance submitted in connection with the dredging
permit received on May 9, 1983? Or on June 13, 1984?"  First, this simply does not support
plaintiffs' Motion to Compel.  Indeed, plaintiffs' circular position relies on the unsupported and
incorrect assumption that the Corps in fact requested dredging bids or did receive "proof of
insurance from companies submitting [dredging] bids."  However, the motion to compel focuses
on dredging permits.  The United States has no obligation to answer plaintiffs' rewritten

interrogatories.  After a reasonable inquiry the defendant was unable to identify anyone in response to this interrogatory.  Further, defendant relies on its original answers and objections.

      **Interrogatory Answer no. 47**:  Plaintiffs ignore the United States' objections to this request.  Instead, plaintiffs' brief makes one assertion followed by two questions: "Someone failed to comply with the Chief of Engineers' 1981 Engineering Regulation ER 1110-2-1453. Who was in charge with regard to the LPVHPP?  Whose job was it to comply with ER 1110-2-1453?"  First, plaintiffs' unsupported and incorrect assertions have little or nothing to do with the actual interrogatory and do not support plaintiffs' Motion to Compel in any way.  Finally, the United States has no obligation to answer plaintiffs' rewritten interrogatory.  Further, defendant relies on its original answers and objections.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel should be denied in its entirety.

Defendant asks for such other and further relief as the Court deems appropriate.

Respectfully submitted,

PETER D, KEISLER
Assistant Attorney General

C. FREDERICK BECKNER
Deputy Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY
Assistant Director, Torts Branch


 s/ Richard R. Stone, Sr.
RICHARD R. STONE, SR.
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 888
Washington, D.C.  20044
(202) 616-4291/ (202) 616-5200 (FAX)
Attorneys for the United States

Dated:  July 17, 2007

<u>CERTIFICATE OF SERVICE</u>

I, Richard R. Stone, Sr., hereby certify that on July 17, 2007, I served a copy of the Defendant United States Memorandum In Opposition to Plaintiffs' Motion to Compel on all parties by ECF.


s/ Richard R. Stone, Sr.
RICHARD R. STONE, SR.