**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: ALL LEVEE | § | |
| _____ | § | |

**DEFENDANT UNITED STATES OF AMERICA'S ANSWERS OR OBJECTIONS**
**TO THE LEVEE PLAINTIFFS' FIRST REQUESTS FOR ADMISSION**

Pursuant to Federal Rules of Civil Procedure 26 and 36, and Case Management and

Scheduling Order No.4, Defendant United States of America (the "United States")[1] hereby

answers or objects to the Levee Plaintiffs' First Requests for Admissions ("RFAs").  In addition,

the United States responds herein on its own behalf, and not on behalf of any other Defendant.

In accordance with Fed. R. Civ. P. 36, any admission made below is for the purpose of

this pending, consolidated action only and is not an admission for any other purpose, nor may it

be used against the United States in any other proceeding.

---

[1]  The United States Army Corps of Engineers cannot be sued eo nomine under the Federal Tort Claims Act.  See Galvin v. Occupational Safety & Health Admin., 860 F.2d 181, 183 (5th Cir. 1988).



EXHIBIT
A

## GENERAL OBJECTIONS

The following general objections are continuing in nature and apply to each RFA, and are hereby incorporated into each Response provided, as if fully set forth therein, unless expressly waived with regard to a particular RFA.

GENERAL OBJECTION NO. 1: The United States objects to any definition or instruction in Plaintiffs' RFAs, including those referenced in the Levee Master Complaint, insofar as they purport to broaden the United States' obligations under the Federal Rules of Civil Procedure in answering these RFAs.

GENERAL OBJECTION NO. 2: The definitions and instructions render many of the RFAs vague, ambiguous, incomprehensible, or otherwise objectionable.

GENERAL OBJECTION NO. 3: The RFAs as propounded are overly broad, unduly burdensome, and request information that is not reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1).

GENERAL OBJECTION NO. 4: The RFAs as propounded are vague and ambiguous.

GENERAL OBJECTION NO. 5: The United States objects to Plaintiffs' RFAs to the extent that they call for information that is not within the custody, control or possession of the United States.

GENERAL OBJECTION NO. 6: The United States objects generally to all RFAs, as well as the instructions contained therewith, that call for information covered by the attorney-client or attorney work product privileges or any other applicable privilege or protection.

GENERAL OBJECTION NO. 7: The United States has not completed its investigation of the facts relating to this action; has not interviewed all potential witnesses; has not completed

2

discovery; and has not completed its preparation for any trial or evidentiary hearing in this

matter. Accordingly, the Responses are given without prejudice to the United States' right to

produce, at any time, subsequently discovered evidence relating to presently known material facts

and to produce all evidence, whenever discovered, relating to subsequently discovered material

facts.

GENERAL OBJECTION NO. 8: The United States objects to Plaintiffs' RFAs to the

extent they call for confidential and/or sensitive information, including that from personnel files,

proprietary or trade secret and confidential business information, or information protected by the

Privacy Act, 5 U.S.C. § 552a.

GENERAL OBJECTION NO. 9: Except for explicit facts admitted herein, no general

admission of any nature whatsoever is implied or should be inferred from the United States'

Responses to these RFAs.

Without waiving these objections and reserving the right to reassert them at or before any

trial or evidentiary hearing in this matter, the United States hereby answers or objects to the

Levee Plaintiffs' First Requests for Admission.

## ANSWERS TO LEVEE PLAINTIFFS' REQUESTS FOR ADMISSION

**REQUEST NO. 1**: ADMIT or DENY that Lt. General Carl Strock, Commander and Chief of

Engineers, United States Army Corps of Engineers, affirmed in a April 5, 2006 Hearing before

the United States Senate, Committee on Appropriations, Subcommittee on Energy and Water,

that the failure of the New Orleans Metropolitan Area Hurricane Protection System occurred as a

3

result of the basic design and engineering deficiencies and failures of the United States Army Corps of Engineers.

**ANSWER TO REQUEST FOR ADMISSION NO. 1**: Objection. The United States objects to this request for admission as argumentative, vague, ambiguous, misleading, and based on alleged statements that are paraphrased out of context rather than quoted with a transcript provided as permitted by the rules. Notwithstanding and without waiving these objections, Request for Admission No. 1 is denied.

**REQUEST NO. 2**: ADMIT or DENY that the failure of the 17th Street Canal and London Avenue Canal flood walls on August 29, 2005 were not due to an "act of God" but were, rather, due to deficiencies in the design and engineering of flood walls "as built by man."

**ANSWER TO REQUEST FOR ADMISSION NO. 2**:     Denied.

**REQUEST NO. 3**: ADMIT or DENY that the storm surge from Lake Pontchartrain associated with Hurricane Katrina did not overtop the flood walls at the sites of either of the 17th Street Canal or the London Avenue Canals.

**ANSWER TO REQUEST FOR ADMISSION NO. 3**: Objection. This request for admission is vague, ambiguous, overly broad and assumes facts that are yet to be proven in this litigation, which facts the United States does not admit. Notwithstanding and without waiving these objections, Request for Admission No. 3 is denied.

4

**REQUEST NO. 4**: ADMIT or DENY that the storm surge funneled by the Mississippi River Gulf Outlet and the Gulf Intracoastal Waterway into the Inner Harbor Navigation Canal overtopped the majority of flood protection structures along the West Bank of the Inner Harbor Navigation Canal.

**ANSWER TO REQUEST FOR ADMISSION NO. 4**:    Objection. This request for admission is vague, ambiguous, argumentative, and assumes facts that are yet to be proven in this litigation, which facts the United States does not admit.  Notwithstanding and without waiving these objections, Request for Admission No. 4 is denied.

**REQUEST NO. 5**: ADMIT or DENY that the combined flood wall failures and deficiencies at the various sites caused and substantially contributed to the inundation of approximately 80% of the City of New Orleans.

**ANSWER TO REQUEST FOR ADMISSION NO. 5**: Objection. This request for admission (e.g., "failures and deficiencies" and "substantially contributed to") is vague, ambiguous, argumentative, and assumes facts that are yet to be proven in this litigation, which facts the United States does not admit.  Notwithstanding and without waiving these objections, Request for Admission No. 5 is denied.

**REQUEST NO. 6**: ADMIT or DENY that the U.S. Army Corps of Engineers' New Orleans District's Engineering Division is responsible for flood control.

**ANSWER TO REQUEST FOR ADMISSION NO. 6**:    Objection.  This request for admission is contrary to law, vague, ambiguous, and overly broad (e.g., "is responsible for,"if

directed to legal responsibility in tort, is contrary to law in part because the United States has not waived sovereign immunity to suit for flood control ). Notwithstanding and without waiving these objections, Request for Admission No. 6 is denied.

**REQUEST NO. 7**: ADMIT or DENY that the U.S. Army Corps of Engineers' New Orleans District's Operations Division is responsible for the issuance of permits to dredge navigable waterways.

**ANSWER TO REQUEST FOR ADMISSION NO. 7**: Objection. This request for admission is vague, ambiguous, and if directed to legal responsibility in tort, is contrary to law (e.g., "is responsible for"). Notwithstanding and without waiving these objections, the United States admits only that the U.S. Army Corps of Engineers' New Orleans District's Operations Division issues permits to dredge navigable waterways. All other allegations contained in Request for Admission No.7 are denied.

**REQUEST NO. 8**: ADMIT or DENY that the Army Corps issued a permit on June 13, 1984, to dredge the 17th Street Canal which caused and allowed changes to occur in the 17th Street Canal bottom, leading to subsurface and soil destabilization of the canal levee.

**ANSWER TO REQUEST FOR ADMISSION NO. 8**: Objection. This request for admission is vague, ambiguous, argumentative and assumes facts yet to be proven in this litigation, which facts the United States does not admit. Notwithstanding and without waiving these objections, the United States admits only that the Army Corps issued a permit on June 13, 1984, to dredge the 17th Street Canal. The United States denies all other allegations contained in Request for

Admission No. 8.

**REQUEST NO. 9**:  ADMIT or DENY that prior to the permitting of the dredging project, the Army Corps issued internal memoranda which acknowledged that, in connection with the proposed dredging of the 17th Street Canal, factors of safety were substantially below the minimum factor of safety, and that levee and flood wall stability problems were likely if the dredging permit was to be granted.

**ANSWER TO REQUEST FOR ADMISSION NO. 9**:     Objection. This request for admission is vague, ambiguous, does not attach or quote the alleged memoranda language, likely takes the memorandum and its language out of context in time and content, and assumes facts yet to be proven in this litigation, which facts the United States does not admit.  Moreover, any such internal memoranda would be the best evidence and most accurate statement of their terms. Notwithstanding and without waiving these objections, Request for Admission No. 9 is denied.

**REQUEST NO. 10**:  ADMIT or DENY that the Army Corps possessed in-depth background on the geologic and depositional environment of the Mississippi Basin soils, and that it was recognized that the marsh and swamp deposits were "treacherous" and highly variable.

**ANSWER TO REQUEST FOR ADMISSION NO. 10**: Objection. This request for admission is vague and ambiguous, e.g., the terms "treacherous," and "highly variable."   Notwithstanding and without waiving these objections, the United States admits that the Army Corps possessed

7

information concerning the Mississippi Basin soils. The United States denies all other

allegations contained in Request for Admission No. 10.


**REQUEST NO. 11**: ADMIT or DENY that the Army Corps disregarded overwhelming

evidence to the effect that approval of the dredging permit would dangerously compromise the

existing 17th Street Canal's flood protection levee.

**ANSWER TO REQUEST FOR ADMISSION NO. 11**: Objection. This request for admission

is argumentative, vague, and ambiguous. It also draws conclusions that are not supported by

identified "overwhelming evidence." Further, the request assumes facts that are yet to be proven,

which facts the United States does not admit. Notwithstanding and without waiving these

objections, Request for Admission No. 11 is denied.


**REQUEST NO. 12**: ADMIT or DENY that the Army Corps had the legal responsibility and

duty to assure that the dredging project would not compromise the safety of the 17th Street

Canal's levee/flood wall system.

**ANSWER TO REQUEST FOR ADMISSION NO. 12**: Objection. This request is vague,

ambiguous, and appears to be an ineffective attempt to apply law to fact. It also assumes that

USACE has legal responsibility for the actions of other entities during their dredging activities,

which USACE does not. Further, the United States has not waived sovereign immunity over any

of the activities addressed in this request. Notwithstanding and without waiving these objections,

Request for Admission No. 12 is denied.

**REQUEST NO. 13**: ADMIT or DENY that the Army Corps failed to follow federal regulations and its own engineering standards and procedures, in regard to the issuance of a permit to dredge the 17th Street Canal.

**ANSWER TO REQUEST FOR ADMISSION NO. 13**: Objection. This request is vague, ambiguous, and appears to be an ineffective attempt to apply fact to law. As a matter of law, the USACE's failure to comply with a federal regulation cannot create a duty actionable under the Federal Tort Claims Act. Further, the USACE did not violate any mandatory or specific federal regulation, engineering standard, or procedure. The issuance of a permit entails the exercise of discretion and policy judgment; and no subject matter jurisdiction attaches to the act. Notwithstanding and without waiving these objections, Request for Admission No. 13 is denied.

**REQUEST NO. 14**: ADMIT or DENY that the Army Corps violated federal law to the extent the River & Harbors Act prohibits the granting of a dredging permit that was contrary to the public interest.

**ANSWER TO REQUEST FOR ADMISSION NO. 14**: Objection. The United States incorporates herein by reference its objections to Request for Admission No. 13, above. Notwithstanding and without waiving these objections, Request for Admission No. 14 is denied.

**REQUEST NO. 15**: ADMIT or DENY that published federal regulations (including 33 C.F.R. §320.4) established general policies for the U.S. Army Corps of Engineer's evaluation of permit applications, and required that the reasonably expected benefits of the requested dredging be

9

balanced against the reasonably foreseeable harm from same, including possible harm related to detrimental effects on flood control.

**ANSWER TO REQUEST FOR ADMISSION NO. 15**: Objection. This request for admission calls for a purely legal interpretation and conclusion. See also the objections to Requests for Admissions Nos. 12 through 14, above, which are incorporated herein by reference. Notwithstanding and without waiving these objections, Request for Admission No. 15 is denied.

**REQUEST NO. 16**: ADMIT or DENY that the Army Corps had no discretion to permit the dredging activity in question, since the approved activity constituted damage to the public interest in violation of the U.S. Army Corps of Engineers' clear statutory duties and obligations.

**ANSWER TO REQUEST FOR ADMISSION NO. 16**: Objection. Regarding permitting, the issuance of a permit entails the exercise of discretion and policy judgment and no subject matter jurisdiction attaches to the act. Also, the United States incorporates herein by reference its objections to Requests for Admissions Nos. 12 through 15. Notwithstanding and without waiving these objections, Request for Admission No. 16 is denied.

**REQUEST NO. 17**: ADMIT or DENY that the U.S. Army Corps of Engineers' dredging permit decision-making and activity relate to traditional maritime matters, activity, and commerce.

**ANSWER TO REQUEST FOR ADMISSION NO. 17**: Objection. This request for admission is vague, ambiguous, and calls for a purely legal interpretation and conclusion. Notwithstanding and without waiving these objections, Request for Admission No. 17 is denied.

**REQUEST NO. 18**:  ADMIT or DENY that the activities undertaken by the Army Corps in connection with the issuance of the 17th Street Canal dredging permit were not activities undertaken as a result of an authorized federal flood control project.

**ANSWER TO REQUEST NO. 18**: Objection.  This request is vague, ambiguous, contrary to both fact and law (Berthelot v. Boh Brothers Construction Co., CA NO. 05-4182, decided June 1, 2006, pertains to Vanderbrook and Harvey), and calls for a legal interpretation or conclusion. Notwithstanding and without waiving these objections, Request for Admission No. 18 is denied.


**REQUEST NO. 19**:  ADMIT or DENY that the "Lake Pontchartrain, and Vicinity, Hurricane Protection Project", authorized by Congress in 1965, mandated the Army Corps to provide protection for the Greater New Orleans Metropolitan Area from "a hurricane that may be expected from the most severe combination of meteorological conditions considered characteristic of the region."

**ANSWER TO REQUEST NO. 19**: Objection.  This request is vague and ambiguous,( e.g., the term "provide protection" does not identify the level of protection); further, the project itself did not mandate anything.  The United States also objects because the request improperly calls for a legal interpretation of an unidentified Congressional act.  Notwithstanding and without waiving these objections, the United States admits only that in 1965 Congress authorized  the "Lake Pontchartrain, and Vicinity, Hurricane Protection Project."   The United States denies all other allegations contained in Request for Admission No. 19.

11

**REQUEST NO. 20**:  ADMIT or DENY that the Army Corps used the 1959 U.S. Weather Bureau 1-in-100 year Standard Project Hurricane as the equation for "the most severe combination of meteorological conditions considered characteristic of the region."

**ANSWER TO REQUEST FOR ADMISSION NO. 20:** Objection.  This request for admission as vague and ambiguous, in part because it does not refer to any time frame.  Notwithstanding and without waiving these objections, Request for Admission No. 20 is denied.

**REQUEST NO. 21**:  ADMIT or DENY that the U.S. Army Corps of Engineers, New Orleans District Engineering Division, deemed the 1959 U.S. Weather Bureau 1-in-100 year Standard Project Hurricane to have a re-occurrence/frequency of 1-in-200 years to 1-in-300 years.

**ANSWER TO REQUEST NO. 21:** Objection.  This request for admissions is vague, ambiguous, overly broad and misconstrues the standard project hurricane data (e.g., if a standard project hurricane may strike a larger area, such as Louisiana, once in 100 years, then the probability of it striking a smaller area, such as Now Orleans, is much lower, e.g., once in 200 or 300 years, but this is a function of probability, not the USACE "deeming" it).  Notwithstanding and without waiving these objections, Request for Admission No. 21 is denied.

**REQUEST NO. 22**:  ADMIT or DENY that the Army Corps, New Orleans District Engineering Division, did ignore the order of the Chief of Engineers (ER 1110-2-1453) to revise all Standard Project Hurricane-based analysis to reflect the 1979 National Weather Service data.

**ANSWER TO REQUEST FOR ADMISSION NO. 22**: Objection.  This request for admission is argumentative and vague and ambiguous (e.g., the term "ignore" is not descriptive of acts

12

performed by USACE personnel in response to orders of the Chief of Engineers).

Notwithstanding and without waiving these objections, Request for Admission No. 22 is denied.

**REQUEST NO. 23**: ADMIT or DENY that the Army Corps did not use the National Weather
Service SLOSH model for surge prediction, which became available in 1979, which clearly
showed that the structures built under the authority of the LPVHPP would be subject to
overtopping by many Category 3 hurricanes.

**ANSWER TO REQUEST FOR ADMISSION NO. 23**: Objection. This request is vague,
ambiguous, and argumentative (e.g., it does not identify which structures allegedly would be
overtopped; does not state any time parameter; calls for generalization about weather and about a
system built over many decades and conditions by many entities; and is over simplified).
Notwithstanding and without waiving these objections, Request for Admission No. 23 is denied.

**REQUEST NO. 24**: ADMIT or DENY that as a result of the application of the 1959 U.S.
Weather Bureau 1-in-100 year Standard Project Hurricane, all levee and flood wall crown
elevations of the LPVHPP were at least 4 feet too low.

**ANSWER TO REQUEST FOR ADMISSION NO.** 24: Objection. This request is vague,
ambiguous (e.g., no point of reference is given for the term "too low") calls for speculation and
generalization about weather and about a system built over many decades and conditions by
many entities. The request also is over simplified. Additionally, it is based on misstatement of
facts – the term "too low" when addressed to "all levee and flood wall crown elevations" is

13

simply wrong as not all flood walls or levees were breached or overtopped.  Notwithstanding and without waiving these objections, Request for Admission No. 24 is denied.

**REQUEST NO. 25**:  ADMIT or DENY that numerous storms have affected the Greater New Orleans Metropolitan Area before and after the initiation of the LPVHPP in 1965, that were more severe than the 1959 U.S. Weather Bureau 1-in-100 year Standard Project Hurricane.

**ANSWER TO REQUEST FOR ADMISSION NO. 25**: Objection.  This request is argumentative, vague, ambiguous, and calls for speculation and generalization about subjective concepts, e.g., the terms "numerous" and "more severe."  Notwithstanding and without waiving these objections, Request for Admission No. 25 is denied.

**REQUEST NO. 26**:  ADMIT or DENY that the Army Corps did not use – against better knowledge - the updated 1972 and 1979 Standard Project Hurricane data adopted by the National Weather Service and, instead, used the 1959 U.S. Weather Bureau 1-in-100 year Standard Project Hurricane for the design of flood walls along the 17th Street, Orleans Avenue, and London Avenue Canals.

**ANSWER TO REQUEST FOR ADMISSION NO. 26:** Objection.  This request is argumentative, vague, ambiguous and calls for baseless generalizations and comparisons of complex concepts, such as standard project hurricane data that change periodically.  The request is also over simplified.  Notwithstanding and without waiving these objections, Request for Admission No. 26 is denied.

14

**REQUEST NO. 27**: ADMIT or DENY that the U.S. Army Corps of Engineers, New Orleans District, built the levee and flood wall crown elevations 1 to 2 feet low because of the erroneous assumption that an elevation of zero referenced to the National Geodetic Vertical Datum of 1929 (NGVD29) was equal to – and interchangeable with – local mean sea level.

**ANSWER TO REQUEST FOR ADMISSION NO. 27**: Objection.  This request is vague, ambiguous, and not specific as to which levee and flood walls are addressed.  Further, it calls for generalizations about a system built over many decades and conditions by many different entities. Additionally, the fact that not all levees were overtopped, even with the mass of water surge preceding Katrina, indicates that the "1 to 2 feet low" generalization is invalid.  Notwithstanding and without waiving these objections, Request for Admission No. 27 is denied.

**REQUEST NO. 28**: ADMIT or DENY that in 1965, zero NGVD29 was 1.3 to 1.6 feet below mean sea level at different parts of the LPVHPP, and levee and flood wall crown elevations were constructed lower by this margin.

**ANSWER TO REQUEST FOR ADMISSION NO. 28**: Objection.  This request is vague, ambiguous, and not specific as to which parts of the LPVHPP are addressed.  See objections to Requests for Admissions Nos. 24 through 27, above, which objections are incorporated herein by reference.  Notwithstanding and without waiving these objections, Request for Admission No. 28 is denied.

**REQUEST NO. 29**: ADMIT or DENY that this mistake was locked in for continuing construction when the U.S. Army Corps of Engineers, New Orleans District adopted a policy in

15

1985, with the approval of the Army Corps Lower Mississippi Valley Division (LMVD), to explicitly use the outdated 1965 NGVD29 adjustment for elevation control.

**ANSWER TO REQUEST FOR ADMISSION NO. 29:** Objection.  See objections to Requests for Admissions Nos. 24 through 28, above, which objections are incorporated herein by reference.  Additionally, the alleged "mistake" is not identified and the request does not refer to the previous argumentative request.  Notwithstanding and without waiving these objections, Request for Admission No. 29 is denied.


**REQUEST NO. 30**:  ADMIT or DENY that no provision was made to account for the 3 to 4 feet per century subsidence rates characteristic of the greater New Orleans metropolitan area even though this rate was known to the Army Corps at the time of congressional authorization of the Lake Pontchartrain Project.

**ANSWER TO REQUEST FOR ADMISSION NO. 30**: Objection.  See objections to Requests for Admissions Nos. 23 through 29, above, which objections are incorporated herein by reference.  Notwithstanding and without waiving these objections, Request for Admission No. 30 is denied.


**REQUEST NO. 31**:  ADMIT or DENY that crown elevation deficiencies ranging up to 5 feet at the time Hurricane Katrina struck resulted in prolonged overtopping of flood walls and levees along the Inner Harbor Navigation Canal that otherwise would have been overtopped only briefly.

16

**ANSWER TO REQUEST FOR ADMISSION NO. 31**: Objection.  This request is

argumentative, vague, ambiguous, calls for generalization and speculation, and is not supported

by fact, e.g., the terms "deficiencies" "prolonged overtopping" and "overtopped only briefly" are

generalizations with a subjective slant and no facts are provided to define them.  Notwithstanding

and without waiving these objections, Request for Admission No. 31 is denied.


**REQUEST NO. 32**:  ADMIT or DENY that the original and only project design of the LPVHPP

authorized by Congress, known as the "Barrier Plan," included a series of levees along the

lakefront, concrete flood walls along the Inner Harbor Navigation Canal, and surge control

structures, including barriers and flood control gates located at the Rigolets, Chef Menteur Pass.

**ANSWER TO REQUEST FOR ADMISSION NO. 32**: Objection.  This request is

argumentative, vague, ambiguous, and it apparently is based on the faulty assumption that any

part of the "as built" hurricane or flood protection system at and around New Orleans was

unauthorized by Congress.  Notwithstanding and without waiving these objections, the United

States admits only that the "Barrier Plan" included, but was not limited to, a series of levees

along the lakefront, concrete flood walls along the Inner Harbor Navigation Canal, and surge

control structures, including barriers and flood control gates located at the Rigolets, Chef

Menteur Pass.  The United States denies all other allegations contained in Request for Admission

No. 32.

17

**REQUEST NO. 33**:  ADMIT or DENY that the original and only project design of the LPVHPP authorized by Congress, known as the "Barrier Plan," never included any hurricane protection structures along the 17th Street, Orleans Avenue, and London Avenue Canals.

**ANSWER TO REQUEST FOR ADMISSION NO. 33**: Objection.  See the objections to Request for Admission No. 32 above, which objections are incorporated herein by reference. Notwithstanding and without waiving these objections, Request for Admission No. 33 is denied.

**REQUEST NO. 34**:  ADMIT or DENY that an alternative to the Barrier Plan was the so-called "High Level Plan", and that the High Level Plan, in an attachment to the testimony of Colonel Early J. Rush, District Engineer, U.S. Army Engineers District, New Orleans, on January 5, 1978 in a hearing before the U.S. House of Representatives is described to have "many serious drawbacks," including but not limited to: (I) "[T]he foundation soils in this area are not conductive to certain types of construction.; (ii) "In order to construct levees to high levels, it would be necessary to widen the base of each levee, thus requiring more land for rights-of-way. In an urban setting, a demand for more land means higher cost and additional displacement of homes and persons where land areas are congested."

**ANSWER TO REQUEST FOR ADMISSION NO. 34**: Objection.  This request for admissions is vague, ambiguous, and quotes material out of context.  The hearing transcript, which is not attached to the request, is the best evidence of Colonel Rush's full testimony.  Notwithstanding and without waiving these objections, Request for Admission No. 34 is denied.

18

**REQUEST NO. 35**: ADMIT or DENY that Colonel Early J. Rush, District Engineer, U.S. Army Engineers District, New Orleans, on January 5, 1978 in a hearing before the U.S. House of Representatives testified that "if we made a major change in the Lake Pontchartrain barrier plan, that we would have to come back to Congress for reauthorization."

**ANSWER TO REQUEST FOR ADMISSION NO. 35**: Objection.  This request for admission is vague, ambiguous, and potentially quotes material out of context.  The hearing transcript, which is not attached to the request, is the best evidence of Colonel Rush's full testimony. Notwithstanding and without waiving these objections, Request for Admission No. 35 is denied.

**REQUEST NO. 36**: ADMIT or DENY that in 1984, the Army Corps changed the design of the Lake Pontchartrain Project from the Barrier Plan to High Level Plan, and that the High Level Plan in 1984 did not include any structures along the 17th Street, Orleans Avenue, and London Avenue Canals.

**ANSWER TO REQUEST NO. 36**: Objection.  This request is vague and ambiguous in that the term "changed the design" is not clear.  Notwithstanding and without waiving these objections, the United States admits only that in 1984, the High Level Plan was selected for the LPVHPP. All other allegations of Request for Admission No. 36 are denied.

**REQUEST NO. 37**: ADMIT or DENY that Congress did never authorize the U.S. Army Corps of Engineers' change from the Barrier Plan to the High Level Plan.

**ANSWER TO REQUEST NO. 37**: Objection.  This request for admissions is argumentative, vague, and ambiguous and assumes facts that are yet to be proven in this case, which facts the

United States does not admit.  Notwithstanding and without waiving these objections, Request

for Admission No. 37 is denied.


**REQUEST NO. 38**:  ADMIT or DENY that the 17th Street, Orleans Avenue, and London

Avenue Canals were not congressionally authorized federal flood control projects.

**ANSWER TO REQUEST FOR ADMISSION NO. 38**: Objection.  See objections to Request

for Admission No. 37, above, which objections are incorporated herein by reference.

Notwithstanding and without waiving these objections, Request for Admission No. 38 is denied.


**REQUEST NO. 39**:  ADMIT or DENY that the "Parallel Protection Plan" became a part of the

High Level Plan which provided the installation of hurricane protection gates at the mouth of the

17th Street, Orleans Avenue, and London Avenue Canals.

**ANSWER TO REQUEST FOR ADMISSION NO. 39**: Objection.  This request for admission

is vague and ambiguous in that it confuses plans and terms, and confuses initial proposed plans

with final adopted plans.  Notwithstanding and without waiving these objections, Request for

Admission No. 39 is denied.


**REQUEST NO. 40**:  ADMIT or DENY that hurricane protection gates at the mouth of the 17th

Street, Orleans Avenue, and London Avenue Canals were never constructed prior to August 29,

2005.

**ANSWER TO REQUEST FOR ADMISSION NO.** 40:  Admitted.

**REQUEST NO. 41**: ADMIT or DENY that in connection with the Parallel Protection Plan along the 17th Street, Orleans Avenue, and London Avenue Canals, the Army Corps considered three options of hurricane protection structures: levees, T-walls, or I-walls.

**ANSWER TO REQUEST NO. 41**: Objection. This request is vague and ambiguous. Notwithstanding and without waiving these objections, the United States admits only that regarding the Parallel Protection Plan for the 17th Street, Orleans Avenue, and London Avenue Canals, the USACE considered at least three options for flood control or hurricane protection structures including, but not necessarily limited to, levees, T-walls, and I-walls. The United States denies all other allegations contained in Request for Admission No. 41.

**REQUEST NO. 42**: ADMIT or DENY that levees or T-walls were rejected to be built as the main structures along the 17th Street, Orleans Avenue, and London Avenue Canals because the Army Corps did not want to expropriate land, nor purchase any flood rights adjacent to the Canals.

**ANSWER TO REQUEST FOR ADMISSION NO. 42**: Objection. This request for admission is argumentative, vague, ambiguous, and generalizes and oversimplifies, the USACE process for analyzing and evaluating (and negotiating with other entities in New Orleans involved in flood control and hurricane protection) projects. Notwithstanding and without waiving these objections, Request for Admission No. 42 is denied.

**REQUEST NO. 43**: ADMIT or DENY that the U.S. Army Corps of Engineers' April 30, 2000 Manual on Engineering, Design and Construction of Levees states, for stability reasons, that

21

flood walls utilizing the "I-wall" design should rarely exceed seven (7) feet above ground surface, and that an inverted "T-wall" design is used when walls higher than seven feet are required.

**ANSWER TO REQUEST FOR ADMISSION NO. 43**: Objection. This request for admission is vague, ambiguous, and paraphrases statements from the identified manual out of context. Additionally, the manual is not mandatory and specific instruction to levee and flood wall construction engineers, but rather it consists of guidelines that permit the discretion and judgment of the engineers. The manual, which has not been attached to this request, is the best evidence of recommendations and guidelines stated therein. Notwithstanding and without waiving these objections, Request for Admission No. 43 is denied.

**REQUEST NO. 44**: ADMIT or DENY that the I-walls on the along the 17th Street, Orleans Avenue, and London Avenue Canals were built above the seven (7) foot height limitations set forth in the U.S. Army Corps of Engineers' April 30, 2000 Manual on Engineering, Design and Construction of Levees.

**ANSWER TO REQUEST FOR ADMISSION NO. 44**: Objection. See the objections to Request for Admission No. 43, above, which objections are incorporated herein by reference. Notwithstanding and without waiving these objections, Request for Admission No. 44 is denied.

**REQUEST NO. 45**: ADMIT or DENY that Army Corps relied upon the Lane's Weighted Average Creep method for under seepage analysis, which method was recognized in the profession at the time to be inappropriate for final design in a critical life-support structure.

22

**ANSWER TO REQUEST FOR ADMISSION NO. 45**: Objection.  This request for admission is argumentative, vague (particularly in terms of time), ambiguous, simplistic and based on generalization in an attempt to avoid proving its scientific application to a specific system or project.  Notwithstanding and without waiving these objections, Request for Admission No. 45 is denied.

**REQUEST NO. 46**:  ADMIT or DENY that the failure mode at the 17th Street and London Avenue breaches involved lateral deflection of the concrete floodwall and the sheet piles that supported that flood wall, which resulted in separation between the sheet piling and the soft soil of the levees, which lowered the lateral resistance of the entire structures.

**ANSWER TO REQUEST FOR ADMISSION NO. 46**: Objection.  This request for admissions is vague, ambiguous, over broad, calls for speculation, is an over simplified summary of unobserved dynamic activity, and is of a complexity that does not lend itself to requests for admissions.  It also alleges facts that are yet to be proven in this litigation, which facts the United States does not admit.  Notwithstanding and without waiving these objections, Request for Admission No. 46 is denied.

**REQUEST NO. 47**:  ADMIT or DENY that Army Corps knew or should have known about that failure mode since the U.S. Army Corps of Engineers, in 1985, had conducted a full scale instrumented lateral load test of a 200-foot long sheet pile wall in the Atchafalaya Basin (the "E-99 Sheet Pile Tests") which indicated the potential soil separation from the sheet piles, and that the calculated factors of safety would not be reached.

**ANSWER TO REQUEST FOR ADMISSION NO. 47**: Objection.  This request for admission is argumentative, vague, ambiguous, overly broad and of a complexity that does not lend itself to requests for admissions.  It makes an over simplified  comparison of a test done in 1985 to events that occurred twenty years later, without comparing the underlying assumed test specifications of 1985 with the actual use and conditions encountered in 2005.  Notwithstanding and without waiving these objections, Request for Admission No. 47 is denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

C. FREDERICK BECKNER
Deputy Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY
Assistant Director, Torts Branch

RICHARD R. STONE, SR.
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 888
Washington, D.C.  20044
(202) 616-4291/ (202) 616-5200 (FAX)
Attorneys for the United States

Dated: June 14, 2007

24

## CERTIFICATE OF SERVICE

I, Richard R. Stone, hereby certify that on June 14, 2007, I served a true copy of the United States' Answers or Objections to the Levee Plaintiffs' First Requests for Admissions upon Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel by electronic mail, for circulation to the respective parties.

Plaintiffs' Liaison Counsel
jbruno@jbrunolaw.com
scott@jbrunolaw.com

Defendants' Liaison Counsel
rhubbard@lawla.com
llangdon@lawla.com


RICHARD R. STONE


Dated: June 14, 2007