IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Barbara Kimble,                    :        DOCKET NO: 06-4800
            Plaintiff

v.                                 :        SECTION: "R" 5

Republic Fire and Casualty,        :
            Defendant

### <u>SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL</u>

**MAY IT PLEASE THE COURT:**

On January 19, 2007, via U.S. Mail, Plaintiff, Barbara Kimble, forwarded its

Interrogatories and Requests for Production of Documents to Defendant, Republican Fire and

Casualty.  These discovery requests were made pursuant to the Federal Rules of Civil Procedure,

and as such, were due within in thirty days of receipt by Defendant's counsel.

The Defendant failed to respond to these discovery requests, and as such, on June 12,

2007, Plaintiff filed the instant Motion to Compel.

On June 18, 2007, Defendant sent to Plaintiff via facsimile transmission its Discovery

Responses.  These Discovery Responses are marked Exhibit B to Defendant's Memorandum in

Opposition to Plaintiff's Motion to Compel.

The Defendant's responses, however, are allusive, non-responsive and not performed in the spirit of discovery.

The Plaintiff has been prejudiced by the Defendant's failure to adequately respond to Plaintiff's discovery requests.

The responses in controversy were not provided to the Plaintiff until after the expiration of the following deadlines:  Plaintiff's Expert Reports, Witness and Exhibit Lists.  Furthermore, the case is scheduled for trial in less than three months, and *all* discovery must be complete by both parties before July 18, 2007.

Although Defendant has provided Plaintiff with a document titled "Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents," in actuality it is little more than an attempt to dilute Plaintiff's Motion to Compel.    Plaintiff is no less prejudiced by the Defendant's failure to fulfill its obligations to this court than it was on June 17, 2007, the day prior to receiving the discovery "responses."

**Inadequate Responses to Plaintiff's Interrogatories**

The following are the nature of incomplete answers to Plaintiff's Interrogatories to Defendant:

**Interrogatory No. 3 and Scope of Discovery**

In Interrogatory No. 3, Plaintiff seeks information regarding Defendant's procedures for the investigation and evaluation of claims, and specifically the claim(s) of Plaintiff.  Defendant

asserts that such Interrogatory "seeks information which is irrelevant to the subject litigation, and, as such, unlikely to lead to the discovery of admissible evidence."  In her complaint against the Defendant, the Plaintiff alleges that Defendant:  (1) failed to properly train its adjusters and agents; (2) failed to provide its adjusters and agents with proper uniform materials with which to evaluate claims; (3) fails to take into account the economic climate after Hurricane Katrina; (4) failed to account for increase in labor, materials, costs and time in valuing Plaintiff's claims; (5) failed to provide a proper means to facilitate contact between Plaintiff and Defendant insurer; (6) instructed adjusters and agents to undervalue the Plaintiff's damages; (7) instructed adjusters and agents to delay the process of Plaintiff's claims; (8) instructed adjusters and agents t engage in multiple and time consuming evaluations of the Plaintiff's claim.  *See* Complaint ¶ 34.

Furthermore, Louisiana Revised Statute § 22:1220 provides that an insurer (such as the Defendant) owes to his insured "a duty of good faith and fair dealng," an "affirmative duty to adjust claims fairly and promptly" and a duty "to make a reasonable effort to settle claims with the insured."

Plaintiff submits, and has so submitted since the inception of her action that Republic Fire and Casualty acted in bad faith and inadequately and inappropriately investigated and/or evaluated her claim.  Furthermore, Plaintiff has maintained that Defendant has acted in bad faith in handling her claim.  Through Interrogatory Number 3, Plaintiff is seeking to find out what procedures Republic Fire and Casualty utilized – or should have utilized – in the evaluation of Plaintiff's claim.  Yet, Defendant is refusing to provide such pertinent information.

Pursuant to Federal Rules of Civil Procedure Rule 26(b)(1):

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The discovery rules are accorded a broad and liberal treatment in order to affect their purpose of adequately informing litigants in civil trials.  *See Herbert v. Lando*, 441 U.S. 153, 176 (1979).   Accordingly, the federal courts have considered relevancy to require a broad interpretation.  *See* Fed.R.Civ.P. 26(b)(1); *see also Beach v. City of Olathe,* 2000 WL 960808, *2 (D.Kan.2000), *Yeager v. Corinthian Colleges, Inc.*, 2002 WL 1976773 (E.D. La. 2002), attached as Exhibit A.   In *Yeager v. Corinthian Colleges, Inc.*, the United States District Court for Eastern Louisiana District stated that "a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter in the action or if there is any possibility that the information sought may lead to the discovery of admissible evidence."  *See Id.* at 3.

Further, when the discovery sought appears relevant, the Eastern District has held that the party objecting to the discovery request carries the burden of proof:

> that the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Red.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential ham occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.  *Id.*

Clearly the claims handling process, and the claims handling procedures of the Defendant, are fundamental to the Plaintiff's Complaint.   Plaintiff avers to the Court that its difficult to imagine a scenario where the claims handling procedures of the Defendant would not be relevant to this litigation or unlikely to lead to the discovery of admissible evidence.  To the contrary, the claims handling procedures and instructions of the Defendant would provide appropriate and important information to the Plaintiff about her claim for damages under LA R.S. 22:1220, 22;658, LA CC 1994, 1995, and other statutes referenced in her Complaint.

As the discovery sought by Interrogatory No. 3 appears relevant, therefore, the burden to establish its lack of relevance rests with the Defendant.  Plaintiff's aver that the Defendant has not met this burden, and respectfully requests this Honorable Court to order the answer to Interrogatory No. 3.


**Interrogatory No. 5 (c)**

In Interrogatory No. 5 (c), Plaintiff asked the Defendant to identify "any and all instructions, whether written, electronic or oral, given to the independent adjusting firm(s)" used by Defendant in the investigation and/or evaluation of Plaintiff's claim.   Defendant neither responds to this Interrogatory nor objects to it.  Presumably, the Defendants would object to the request as it objected to Interrogatory No. 3, which requested similar information.   If Defendant would so object, the Plaintiff directs the Court to its discussion of the Defendant's objections to Interrogatory No. 3, and respectfully requests this Honorable Court to order the answer to Interrogatory No. 5.

**Interrogatory No. 8**

In Interrogatory No. 8, the Plaintiff asks the Defendant whether it contends that any act or omission on the part of the Plaintiff or any person acting on her behalf affected Defendant's ability to conduct an adequate investigation or evaluation of the claim.   In response, the Defendant avers that "Discovery is in its infancy," and as such, it is unable to determine the answer to this question.  Furthermore, the Defendant states that it will supplement its answer to Interrogatory No. 8 after Plaintiff responds to the discovery requests propounded by Republic.

At the onset, it is important to highlight two factual misrepresentations contained within Defendant's "response" to Plaintiff's Interrogatory No. 8.

First, discovery is not within its infancy.  In fact, it was on December 19, 2006 – more than six months ago – that the parties held a preliminary conference with the Court and the period of discovery commenced.  The discovery completion date in this case is less than thirty (30) days away, on July 18, 2007.   Contrary to the Defendant's statement, discovery is in its old age.

Second, the Plaintiff's have responded to the Defendant's Discovery Requests.   On April 12, 2007, the Defendant's served Plaintiff with its first set of Interrogatories and Request for Production of Documents.  Plaintiff's responses were served upon Defendant on May 18, 2007, and Supplemental Responses were thereafter served on June 18, 2007.

In its response to Interrogatory No. 8, Defendant avers that "upon receipt of said information [Plaintiff's Discovery Answers]…and through further case investigation, Republic will supplement the response to Interrogatory No. 8 as necessary."

Plaintiff avers that Defendant has evaded responding to Interrogatory No. 8, and respectfully requests this Honorable Court to order the answer to Interrogatory No. 8.

**Inadequate Responses to Plaintiff's Requests for Production of Documents**

The following are the nature of incomplete responses to Plaintiff's Request for Production of Documents to Defendant:

**Request No. 1 and Attorney-Client Privilege and Work Product Doctrine**

In Request No. 1, the Plaintiff seeks a copy of the Defendant's claim file for the property and the claim in controversy, and the Plaintiff defines this to include

> Policies of insurance, reinsurance contracts, notices, proof of loss, photographs, records, diaries, recordings, notes, memoranda, meeting minutes, correspondence, letters, electronic mail (both sent and received) and/or other communications, writings, reports, appraisals, investigations, evaluations, recommendations, accounts, statements (both recorded and written), and or any other documentary materials relating to the Property, regardless of physical characteristics or form.

The Defendant objected to Plaintiff's Request arguing that it seeks information that is privileged on the grounds of work-product and attorney/client privileges, and information obtained in anticipation of litigation/trial.  Subject to the objection, however, the Defendant does

refer Plaintiff to the Initial Disclosures it provided to Plaintiff on June 18, 2007.   Furthermore,

the Defendant states that attached to the Initial Disclosures are a "Privilege Log."

Whenever a party objects to the production of a document on the grounds of the attorney-

client privilege and/or the work product doctrine, it is required to produce a privilege log of those

documents that have been withheld as per Fed.R.Civ.P. 26(b)(5), which provides as follows:

> When a party withholds information otherwise discoverable under these rules by
> claiming that it is privileged or subject to protection as trial-preparation material,
> the party shall make the claim expressly and shall describe the nature of the
> documents, communications, or things not produced or disclosed in a manner that,
> without revealing information itself privileged or protected, will enable other
> parties to assess the applicability of the privilege or protection.  *See* Fed.R.Civ.P.
> 26(b)(5)(A); *see also Guzzino v. Felterman*. 174 F.R.D. 59 (W.D. La. 1997).

Unfortunately, nothing attached to the Initial Disclosures provided is labeled "Privilege

Log."  The only document that appears to be a log by design is attached hereto and labeled

Exhibit B.   However, the Plaintiff avers that the document is likely more appropriately titled an

Activity Log of Defendant.

As previously discussed, Fed.R.Civ.P. 26(b)(1) defines the scope of discovery in

pertinent part as "any matter, not privileged, which is relevant to the claims and defenses of any

party…"  It is well established by the courts that the attorney-client privilege and the work-

produce doctrine are two distinct protections that can be invoked to exempt certain information

from discovery.  *See generally Woodland v. Nalco Chemical Co.*, 2003 WL 22928808 (E.D. La.

2003), attached hereto as Exhibit C.  The Defendant has invoked both of these doctrines here.

The attorney-client privilege generally protects confidential communications made by a client to his lawyer for the purposes of obtaining legal advice.   Inquiry into the substance of the client's and attorney's discussions implicates the privilege and an assertion of the privilege is required to preserve it.  *See Id.* at 2, *see also Nguyen v. Excel Corporation*, 197 F.3d 200, 206 (5 Cir. 1999)(citing *Upjohn Co. v. United States*, 499 U.S. 383 (1981).   The attorney-client privilege is not absolute. *See Nance v. Thompson Medical Co.*, 173 F.R.D. 178, 181 (E.D. Tex. 1997).

The attorney work-product privilege, first established in *Hickman v. Taylor*, 329 U.S. 495 (1947), and codified in Fed.R.Civ.P. Rule 26(b)(3) protects from disclosure materials prepared by or for an attorney in anticipation of litigation.   *See Varel v. Banc One Capital Partners, Inc.*, 1997 WL 86457 (N.D.Tex.).   The Fifth Circuit describes the standard for determining whether a document has been prepared in anticipation of litigation as the "primary purpose" test.  *See In Re Kaiser Aluminum and Chemical Co.*, 214 F.3d 586, 593 n.19 (5 Cir. 2000).  The primary purpose test states:

> It is admittedly difficult to reduce to a neat formula the relationship between the preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the **primary motivating purpose** behind the creation of the document was to aid in possible future litigation.  *See Woodland* at 3; *see also United States v. Davis*, 636 F.2d 1028, 1039 (5 Cir. 1981), **emphasis added.**

Similar to the attorney-client privilege, the work-product doctrine is also not absolute. *See Nance* at 181.  Fed.R.Civ.P. 26(b)(3) provides that:

a party may obtain discovery of documents and tangible things otherwise
discoverable under subdivision (b)(1) of this rule and prepared in anticipation of
litigation or for trial by or for that other party's representative (including the other
party's attorney, consultant, surety, indemnitor, insurer or agent) only upon a
showing that the party seeking discovery has substantial need of the materials in
the preparation of the party's case and that the party is unable without undue
hardship to obtain the substantial equivalent of the materials by other means.

Finally, it is fundamental that **the burden of demonstrating the applicability of the**

**privilege rests on the party who invokes it** (Emphasis added).  *See Guzzino* at 61; *see also*

*Hodges, Grant & Kaufmann v. United States Government*, 768 F.2d 719, 720 (5h Cir. 1985).

The first step the Court may take in determining whether the Defendant's objection to

Request No. 1 is warranted is to determine exactly where and when the Defendant is asserting

the privilege.  This is a difficult task because the Defendant's alleged "*Privilege Log"* is vague

and inconclusive, the Defendant fails to indicate which documents or category of documents are

protected by either the attorney-client privilege and/or work product doctrines, and the areas

"blacked out" by the Defendant within its Initial Disclosures are suspicious.

Based on the problems stated in the above paragraph, the Plaintiff must assume that the

information and/or documentation allegedly protected by privilege is the information "blacked

out" by the Defendant's on the "Logs" attached to this Memorandum as Exhibit B, and the text

and/or "remarks" of IAS Claims Adjustor Gordon Gauthreaux "blackened out" on the October

22, 2005, adjustment report attached hereto as Exhibit D.

Concerning the latter, contained within Exhibit D are two copies of the same document.

The first copy was provided to the Plaintiff through Defendant's June 18, 2007 Initial

Disclosures, and the last four or five lines of text are covered with black marks.  The second copy was provided to the Plaintiff before the commencement of this litigation, and the last four or five lines of text are not covered with the black marks.   From an examination of this copy, we can see that the lines in controversy read as follows:  "At this time I recommend a reserve setting at $35,000.00.  I also recommend that we pay insured based on repair estimate less depreciation and deductible, which according to the paperwork submitted to me to be only $250.00.  Please verify deductible prior to making any payment to insured."

It seems clear to the Plaintiff that these lines do not contain any information that would be protected by the attorney-client privilege, as this was a communication between the adjustor and adjusting firm and the Defendant, Republic Fire and Casualty.  Further, it would not be protected under the work-product doctrine because the adjustment was not done in anticipation of litigation, but was created in October 22, 2005, for the *primary purpose* of evaluating the Plaintiff's claims.

It seems suspicious to the Plaintiff, therefore, that the lines would be covered by black marks in the Defendant's Initial Disclosures, and that the Defendants would assert that the lines were protected by a privilege.   The Plaintiff has requested through this Request No. 1, and other Interrogatories and Requests and further discussed herein, copies of documents, instructions and/or other information given to independent adjusters and adjusting firms.  The text in controversy here contains a statement proving that some type of information was passed between the parties, yet Defendant is refusing to provide this information.  This is further discussed below in Plaintiff's analysis of Defendant's objections to its Request No. 10.

Concerning the "Logs" above-referenced and attached hereto as Exhibit B., there are a number of suspicious entries deleted and information missing, as follows:

(1)     Activity Report indicates that between March 22, 2006 and March 23, 2006, the Defendant sent supplemental payments to the Plaintiff.  The "claim file" provided to us in the "Initial Disclosures," however, did not include any correspondence between the Plaintiff and Defendant around this date, or any correspondence related to this supplemental payment.

(2)     On June 6, 2006, activity report or log indicates that the adjuster emailed a copy of the IAS Claims estimates to mark@wolfelaw.com.  A copy of this correspondence was not included in the Initial Disclosures.

(3)     On June 27, 2006, activity report indicates that the estimates were request by an agent of the Plaintiffs, and that an adjuster emailed the estimate. However, a copy of this correspondence was not included in the Initial Disclosures.

(4)     On June 29, 2006, and July 7, 2006, the activity report indicates that the policy and estimates were mailed to an agent.  However, copies of these correspondences were not included in the Initial Disclosures.

The "correspondence" provided in the Defendant's Initial Disclosures are attached hereto as Exhibit E.

Finally, upon review of the "Logs," the Plaintiff finds it suspicious that entries are covered in black marker around the following dates:  between Oct 24 2005 and Nov 29 2005; between March 3, 2006 and March 13, 2006;  between March 14, 2006 and March 22, 2006. Within the range of these dates, the Plaintiff was not represented by counsel, nor was the matter

in litigation.  Therefore, it is suspicious that the notes would be covered based on one the two privileges above-discussed.

The other covering of data occurs between the dates of August 21, 2006 and August 23, 2006, and between August 23, 2006 and the present day.  The Plaintiff had filed her lawsuit by August 21, 2006, but the Defendant has not produced a privilege log to indicate what category of information is excluded or what information is being excluded.

The second step the Court may take in determining whether the Defendant's objection to Request No. 1 is warranted is to determine whether the assertion of the privilege is justified.  As discussed above, however, this is exceedingly difficult because of the absence of the required privilege log.

Finally, if the Court is to determine that the information sought by Plaintiff is protected by privilege, the Court should then analyze whether (a) the Plaintiff has a substantial need for the materials in the preparation of her case; and (b) the Plaintiff is unable without undue hardship to obtain the substantial equivalent of the materials by other means.   The Plaintiff is unable to analyze these factors in this Memorandum because of the insufficiency of Defendant's Privilege Log.

For clarity, however, and to focus the issue, the Plaintiff highlights that within its Request No. 1, it seeks the following information:  (1)  information that has already been produced but has been covered with black marks by the Defendant without explanation; and (2) information not produced including (a) correspondence above-cited and missing as referenced in the activity reports and logs; (b) information provided to IAS Claims Services and IAS Claims Services

adjustor before its October 21, 2005, and February 2006 inspections; (c) any instructions, guidelines, claims handling manuals, training information or other similar documentation provided to claims handlers, adjusters or third parties for Hurricane Katrina Loss and/or the Plaintiff's claim; and (d) the remainder of the Defendant's claim file as defined in the Request No. 1.

Therefore, Plaintiff respectfully requests that this Honorable Court order Defendant to more adequately respond to Request No. 1.

**Request No. 2 and more Privilege Discussion**

In Request No. 2, the Plaintiff requests photographs, videos, tapes, recordings and/or any other data or record that shows and/or depicts the property and the damage to the property obtained or in the possession of the Defendant.   The Defendant objected to this request on the basis that it seeks information that is privileged on the grounds of the work-product and attorney/client privileges, and information obtained in anticipation of trial.  Subject to their objections, however, the Defendant does refer to their "Initial Disclosures."

The *Initial Disclosures* were provided to Plaintiff on June 18, 2007 – exactly five months after the court required they be exchanged.   Photographs attached to the IAS Claims Adjusting Reports were the only items contained in the Initial Disclosures which could be a response to Plaintiff's request No. 2, and accordingly, the Plaintiff assumes that the Defendant response to its Request No. 2 are with these photographs.

Unfortunately, the quality of the photographs provided are poor.   The photographs are attached hereto as Exhibit F.   Only black and white copies of the photographs were sent to the Plaintiff, and in many instances the graininess of the documents is so much of a problem it is difficult to tell whether the frames are photographs at all.'

Furthermore, the Defendant has not provided the Plaintiff or this Court with a sufficient privilege log as discussed more fully above, nor has Defendant met its burden in proving that the information sought by Plaintiff is subject to any privilege.

Plaintiff therefore respectfully requests that this Honorable Court order Defendant to more adequately respond to Request No. 2.


**Request No. 6 and Scope of Discovery**

<u>In Request No. 6</u>, the Plaintiff seeks production of any and all claims handling manuals or guidelines used to train claims handlers for use in handling claims following Hurricane Katrina and/or Rita.  The Defendant objected to the request arguing that it "seeks information which is irrelevant and unlikely to lead to the discovery of admissible evidence."

Once again, the Plaintiff submits to this Court that the claims handling procedures and processes of the Defendant are fundamental to her Complaint.  The Plaintiff's legal cites and arguments can be found above in this Memorandum, as the Defendant's objection to Request No. 6 is identical to its objection to Interrogatory No. 3.  Furthermore, the documents sought in Request No. 6 is significantly related to the information sought in Interrogatory No. 3.

Plaintiff, therefore, respectfully requests this Honorable Court to order the response to Request No. 6.

**Request No. 10 and Privilege Discussions, Document Retention Policy Sought**

In Request No. 10, the Plaintiff requests Defendant produce its documentation retention policy and the document retention instructions given to agents and independent contractors.  The Defendant objects to this Request as follows:  (1) it is overbroad, vague and ambiguous; (2) not sufficiently limited in time and/or scope; (3) terms "document retention policy" and "document retention instructions" assumes facts not in evidence and is not sufficiently defined such that Republic can adequately respond; (4) seeks information that is privileged on grounds of work-product and attorney/client privileges, and information obtained in anticipation of litigation/trial.

Plaintiff avers that this objection by Defendant is unfounded.  For a discussion of its objection labeled by the number 4 in the preceding paragraph, please see the discussion of the work-product and attorney-client privilege doctrines.

Regarding the remainder of Defendant's objections, the Plaintiff avers that its request was not vague, overbroad and/or ambiguous.  The terms speak for themselves, and the Defendant – in its quest to comply with the letter and spirit of our discovery requests – could have easily understood our request to be associated with the time period associated with the Plaintiff's claim.

Plaintiff, therefore, respectfully requests this Honorable Court to order the response to Request No. 10.

**<u>Request for Reasonable Expenses and Attorneys Fees</u>**

Motions to compel discovery responses are governed by Rule 37 of Federal Rules of Civil Procedure.  That rule provides that "if a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions."  *See* Fed.R.Civ.P. 37(a)(2).  Rule 37(a)(4)(A), which governs sanctions under the rule, requires the award of reasonable expenses, including attorney's fees, unless the motion to compel discovery was unjustified or other circumstances make the aware unjust.  *See Lischka v. Tidewater Services, Inc.*, 1997 WL 27066 at 4 (E.D.La. Jan. 22, 1997).  The rule provides:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

In the instant matter, since the motion to compel was filed on June 12, 2007, and the Responses in controversy were provided to Plaintiff only thereafter – on June 18, 2007, the Plaintiff is entitled to attorney's fees for the work in bring that Motion to Compel.

The counsel for Plaintiff avers that its law clerk spent 4.0 hours preparing the Motion to Compel, and attorney spent .4 hours reviewing and editing the same to have filed.

The Defendant's answers to the Discovery Requests, however, were unsatisfactory, merely pointed to tardy Initial Disclosures and appear to be submitted simply to dilute Plaintiff's

original Motion to Compel.  Accordingly, Plaintiff sought to file this Supplemental

Memorandum in Support of its Original Motion to Compel.  It was drafted by the attorney and

required 6.1 hours.

The attorney usual hourly rate is $200.00 per hour.   Attached hereto as Exhibit G is a

report from counsel's case management system showing the amount of time spent on the Motion

to Compel Work.  All non-related time entries have been marked over, as have any confidential

notes.   Also made part of Exhibit G is a statement from Scott G Wolfe, Jr. asserting that he

charges the usual hourly rate of $200.00, and asserting that it is a competitive rate in the New

Orleans area.

The Plaintiff moves this court to award attorneys fees to her for having to file the instant

motion to compel.

**<u>Conclusion</u>**

The Plaintiff filed this Motion to Compel because she had not received any Discovery

Responses from the Defendant.  While awaiting a hearing on this motion, on June 18, 2007, the

Plaintiff received responses to her January 18, 2007, discovery requests, but they were woefully

inadequate and appear to simply be an attempt to dilute the Plaintiff's instant motion.

The Defendant made objections based on attorney-client privilege and the work product

doctrine without enclosing a clear and sufficient privilege log.  Furthermore, the only documents

provided to the Plaintiff were provided in complete disconnect to her requests, through the

Defendant's Initial Disclosures submitted five months tardy.

18

The failure of the Defendant to respond to the Discovery Requests at issue has prejudiced the Plaintiff.  The Plaintiff has had to produce expert reports, exhibit lists and witness lists without receiving Defendant's discovery responses.

Plaintiff now calls upon the court to assist her in moving this matter forward by granting this Motion to Compel and seeks an order compelling the Defendant to immediately fully and properly respond to the written discovery.

Accordingly, Plaintiff respectfully prays that Plaintiff be compelled to promptly provide complete responses to her First Set of Interrogatories and Request for Production of Documents within two days.  Plaintiff also seeks reasonable expenses, including attorneys' fees and costs incurred as a result of the necessity of bringing this Motion and any other appropriate relief.

**Exhibit List:**

A      Yeager v. Corinthian Colleges, Inc.

B      Activity/Privilege Logs produced by Defendant

C      Woodland v. Nalco Chemical Company

D      October 22, 2005, Report Remarks Blackout and non-blackout

E      Correspondence provided by Defendant in Initial Disclosures

F      Poor Quality Copies of Photos

G      Timesheets of Attorney and Statement by Attorney of Hourly Rate

**CERTIFICATE OF SERVICE**

       I hereby certify that a copy of the foregoing pleading has been served on all counsel of record to this proceeding by Federal Electronic Filing System, this 21st day of June, 2007.

            /s    Scott G. Wolfe Jr.    
              SCOTT G. WOLFE

Respectfully Submitted,

/s    Scott G. Wolfe Jr.    
Scott G. Wolfe, Jr. (Bar Roll 30122)
THE WOLFE LAW OFFICES, L.L.C.
4821 Prytania Street
New Orleans, LA 70115
P: 504-894-9653
F: 866-761-8934
Attorney for Plaintiff