# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: ALL LEVEE | § | |
| | § | |

## DEFENDANT UNITED STATES OF AMERICA'S ANSWERS TO THE LEVEE PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, and Case Management and Scheduling Order No.4, Defendant United States of America (the "United States")[1] hereby Answers the Levee Plaintiffs' First Set of Interrogatories.  The United States responds herein on its own behalf, and not on behalf of any other Defendant.

### GENERAL OBJECTIONS

The following general objections are continuing in nature and apply to each Interrogatory, and are hereby incorporated into each Answer provided, as if fully set forth therein, unless

---

[1]  The United States Army Corps of Engineers cannot be sued eo nomine under the Federal Tort Claims Act. See Galvin v. Occupational Safety & Health Admin., 860 F.2d 181, 183 (5th Cir. 1988).



expressly waived with regard to a particular Interrogatory.   Additionally, several of Plaintiffs'
Interrogatories demand answers to more than one query and may not properly be viewed as
individual interrogatories or subparts of individual interrogatories as defined in § III(B)(2) of
CMO 4. The United States construes such interrogatories as multiple interrogatories which
count against the 50 interrogatories Plaintiffs are permitted pursuant to CMO 4. Specifically,
Interrogatory No. 10 constitutes two individual interrogatories; No. 13 constitutes three
individual interrogatories; No. 33 constitutes two individual interrogatories, and No. 43
constitutes two individual interrogatories.  Thus, Plaintiffs served 55 interrogatories, five in
excess of the 50  Plaintiffs are permitted under CMO 4.

GENERAL OBJECTION NO. 1: The United States objects to any definition or
instruction in Plaintiffs' Interrogatories, including those referenced in the Levee Master
Complaint, insofar as they purport to broaden the United States' obligations under the Federal
Rules of Civil Procedure in answering these Interrogatories.

GENERAL OBJECTION NO. 2: The definitions and instructions render many of the
Interrogatories vague, ambiguous, incomprehensible, or otherwise objectionable.

GENERAL OBJECTION NO. 3:  The Interrogatories as propounded are overly broad,
unduly burdensome, and request information that is not reasonably calculated to lead to the
discovery of admissible evidence.  See Fed. R. Civ. P. 26(b)(1).

GENERAL OBJECTION NO. 4:  The Interrogatories as propounded are vague and
ambiguous.

GENERAL OBJECTION NO. 5:  The United States objects to the extent Plaintiffs'
Interrogatories call for information that is not within the custody, control or possession of the
United States.

2

GENERAL OBJECTION NO. 6:  The United States objects generally to all Interrogatories, as well as the instructions contained therein, that call for information covered by the attorney-client or work product privilege or protection or any other applicable privilege or protection.

GENERAL OBJECTION NO. 7: Due to the large number of documents and personnel involved in the Lake Ponchartrain and Vicinity Hurricane Protection Project and associated flood control projects, the United States has not completed its investigation of the facts relating to this action; has not interviewed all potential witnesses; has not completed discovery; and has not completed its preparation for any trial or evidentiary hearing in this matter.  Accordingly, its Answers are given without prejudice to the United States' right to produce, at any time, subsequently discovered evidence, relating to presently known material facts, and to produce all evidence, whenever discovered, relating to subsequently discovered material facts.

GENERAL OBJECTION NO. 8:  The United States objects to Plaintiffs' Interrogatories to the extent that they call for confidential and/or sensitive information, including that from personnel files, proprietary or trade secret or confidential business information, and that protected by the Privacy Act, 5 U.S.C. § 552a, et seq..

GENERAL OBJECTION NO. 9:  Except for explicit facts admitted herein, no general admission of any nature whatsoever is implied or should be inferred from the United States' Answers to these Interrogatories.

GENERAL OBJECTION NO. 10:  The United States objects to all Interrogatories to the extent that they seek information obtainable from another more convenient, less burdensome, and less expensive source (e.g., the IPET website documents and the universe of USACE documents the United States is producing on a rolling basis as required by CMO4 and the

document production protocol, which documents plaintiffs have agreed to review and select).
See Fed. R. Civ. P. 26(b)(2)(C)(I).  The names of USACE personnel who handled the different
issues and projects inquired about in these interrogatories spanning more than forty (40) years
will be available to plaintiffs through the review and select production.  Consequently, the
United States relies on the document production to supplment these interrogatory answers
regarding personnel assignments and titles.

GENERAL OBJECTION NO. 11:  The United States objects to all Interrogatories that
request identification of "supervisory officer(s) and/or supervisory civilian employee(s)"
[hereinafter these will be referred to as "supervision" terms] on the basis that the undefined
word "supervisory" is vague and ambiguous because, in part, it does not identify the status (e.g.,
whether contractor employee or USACE employee) of personnel allegedly being supervised, nor
do the terms in the interrogatory identify the acts allegedly being supervised.  Further, they do
not identify whether the thrust of the supervision allegation is for general or specific supervision.
Additionally, the term "supervision" is misleading if it is used in the context of USACE
interaction with contractor personnel.

Without waiving these objections and reserving the right to reassert them at or before any
trial or evidentiary hearing in this matter, the United States hereby Answers the Levee Plaintiffs'
First Set of Interrogatories.

## ANSWERS AND OBJECTIONS TO LEVEE PLAINTIFFS' INTERROGATORIES

Subject to the forgoing conditions and objections, as well as the objections noted herein,
the United States answers as follows:

4

**INTERROGATORY NO. 1**:  Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who participated in, monitored, or supervised the 1985 E-99 sheet pile test section experiment on the Atchafalaya River.

**ANSWER TO INTERROGATORY NO. 1**: Particularly, because the activity to which the Interrogatory refers took place 22 or more years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome.  Also, See General Objection No. 10. The United States also objects  because the Interrogatory is vague and ambiguous, particularly the phrase "participated in, monitored, or supervised."  See General Objection No. 11.  It also is not calculated to lead to the discovery of admissible evidence.  Notwithstanding and without waiving these objections, the United States responds that Gary Brouse (Planning, Programs & Project Mgt. Div., Floodwalls-West Branch & Vicinity; phone no. (504) 862-2707, Room 142), William Caver (retired from Corps, currently working for Eustis Engineering), Rodney Picciola (then Chief, Foundation and Materials Branch, Engineering Division), and Gerard Satterlee (then Chief, Dams, Levees, and Channels Section) (currently Director, New Orleans Operations for C.H. Fenstermaker & Associates, Inc., 1100 Poydras, Suite 1550, New Orleans, Louisiana 70163; phone no. (504) 582-2201) worked on a 1985 E-99 sheet pile test section experiment on the Atchafalaya River.


**INTERROGATORY NO. 2**:  Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who in connection with their official duties would have received a copy of the January 1981 soil stability analysis performed by Modjeski and Masters regarding the dredging of the 17th Street Canal.

**ANSWER TO INTERROGATORY NO. 2**:  Particularly because the analysis to which

5

Interrogatory No. 2 refers apparently was performed 26 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects because the Interrogatory is vague and ambiguous, particularly the phrase "would have received." The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, after reasonable inquiry, the United States answers that the following personnel may "have received a copy of the January 1981 soil stability analysis performed by Modjeski and Masters regarding the dredging of the 17th Street Canal": Jim Richardson (retired) (Engineering Division), Frederic M. Chatry (deceased) (then Chief, Engineering Division MVN), Phil Napolitano (deceased) (Engineering Division). Also, Ron Ventola (retired) (former Chief, Regulatory Branch) or Charles Decker (former Chief, Regulatory Branch) may have received a copy.

**INTERROGATORY NO. 3**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who in connection with their official duties would have received a copy of the August 1982 report by Eustis Engineering which addressed the possible impact(s) of deepening and enlarging the 17th Street.

**ANSWER TO INTERROGATORY NO. 3**: Particularly because the report to which the Interrogatory refers apparently was written 25 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects because the Interrogatory is vague and ambiguous, particularly the phrase "would have received." The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving

these objections, the United States responds that the following personnel may "have received a copy of the August 1982 report by Eustis Engineering": Jim Richardson (retired) (Engineering Division), Frederic M. Chatry (deceased) (then Chief, Engineering Division MVN), Phil Napolitano (deceased) (Engineering Division). Ron Ventola (retired) (former Chief, Regulatory Branch) or Charles Decker (former Chief, Regulatory Branch) may have received a copy.

**INTERROGATORY NO. 4:** Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who in response to the August 1982 Eustis Engineering report received or authored any related correspondence regarding measures to prevent a landside blow-out related to dredging activities at the 17th Street Canal.

**ANSWER TO INTERROGATORY NO. 4:** Particularly because the report to which the Interrogatory refers apparently was written 25 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects because the Interrogatory is vague and ambiguous, misleading, and appears to allege facts that the United States does not admit, particularly the phrase "measures to prevent a landside blow-out related to dredging." The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, after reasonable inquiry, the United States cannot identify anyone in response to this Interrogatory.

**INTERROGATORY NO. 5:** Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who knew of, or participated in, the Corps of Engineers' July 1985 decision to continue using the NGVD29 benchmark elevations.

7

**ANSWER TO INTERROGATORY NO. 5**: Particularly because the "decision" to which the Interrogatory refers allegedly was made 22 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects because the Interrogatory is vague and ambiguous and potentially misleading, particularly the phrase "July 1985 decision." The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, the United States answers that, Frederic M. Chatry (deceased) (then Chief, Engineering Division at Division or MVD) and Fred H. Bayley, III (then Chief, Engineering Divison) (11 Crestwood Drive, Vicksburg, MS 39180; phone no. (601) 636-3597); likely would have known about and participated in decisions related to NGVD29.

**INTERROGATORY NO. 6**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who knew by the end of 1994, or learned before Hurricane Katrina struck, that the New Orleans Sewerage & Water Board [SWB] had dredged the 17th Street Canal bottom to a depth below that of the bottom of adjacent levee sheet piling.

**ANSWER TO INTERROGATORY NO. 6**: The United States objects to this Interrogatory as vague and ambiguous, particularly the phrases "knew" "learned" "17th Street Canal bottom," and adjacent levee sheet piling." It also treats the SWB itself as having "dredged" the canal. It is also potentially misleading in that it assumes facts that are yet to be proven in this litigation and which the United States does not admit. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Further, the United States objects to this interrogatory as overly broad and unduly burdensome. Also, See General

Objection No. 10. Notwithstanding and without waiving these objections, after a good faith effort, the United States cannot identify anyone in response to this Interrogatory.

**INTERROGATORY NO. 7**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who knew by the end of 1994, or learned before Hurricane Katrina struck, that the 17th Street Canal's levee on the Orleans Parish side (inboard of the I-wall) had been excavated by the New Orleans Sewerage & Water Board's dredging activities so that canal water touched the Orleans Parish-side I-wall.

**ANSWER TO INTERROGATORY NO. 7**: The United States objects to this Interrogatory as vague and ambiguous, particularly the phrases "knew," "learned," and "so that canal water touched the Orleans Parish-side I-wall." The interrogatory also treats the SWB itself as having performed dredging activities. It is also potentially misleading, in that it assumes facts that are yet to be proven in this litigation and which the United States does not admit. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. The United States also objects to this Interrogatory as being overly broad and unduly burdensome. Also, See General Objection No. 10. Notwithstanding and without waiving these objections, after a good faith effort, the United States cannot identify anyone in response to this Interrogatory.

**INTERROGATORY NO. 8**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who wrote and/or approved the Corps of Engineers' August 18, 2000 "Unwater Plan, Greater Metropolitan Area, New Orleans, Louisiana."

**ANSWER TO INTERROGATORY NO. 8**:  The United States objects to this Interrogatory as vague and ambiguous.  The United States also objects to the "supervision" terms within this interrogatory.  See General Objection No. 11.  Also, See General Objection No. 10. Notwithstanding and without waiving these objections, the United States responds that the following supervisory Corps employees took part in writing the Corps of Engineers' August 18, 2000 "Unwater Plan, Greater Metropolitan Area, New Orleans, Louisiana":  Arthur Laurent (retired) (then Chief of Hydraulics), Jay Combe (retired) (then Chief of Coastal Engineering Section, Hydraulics Branch), and Robert Fairless (retired from USACE, but currently in MVN as contractor in Protection & Restoration Office; phone no. (504) 862-2237; formerly Acting Assistant Chief, Engineering Division).  The Division also may have been involved with the plan, however, this has not yet been confirmed by USACE.

**INTERROGATORY NO. 9**:  Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who attended the annual inspections of the LPVHPP from 1965 to 2005.

**ANSWER TO INTERROGATORY NO. 9**:  Particularly because the Interrogatory seeks information concerning an unspecified number of events that occurred throughout a 41-year period, the United States objects to this Interrogatory as overly broad and unduly burdensome. See General Objection No. 10.  The United States also objects because the Interrogatory is vague and ambiguous.  The United States also objects to the "supervision" terms within this interrogatory.  See General Objection No. 11.  Notwithstanding and without waiving these objections, the United States responds that Jerry Colletti (currently Assistant Chief, Operations Division; phone no. (504) 862-2302, Room 286) attended at least one "annual inspection[s] of

10

the LPVHPP" between 1965 to 2005". The Corps does not normally retain records of such attendance.

**INTERROGATORY NO. 10**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who knew that Floodgate W-30 was missing, who signed off on the repair plan for Floodgate W-30, and who ensured that Floodgate W-30 was replaced.

**ANSWER TO INTERROGATORY NO. 10**: The United States objects to this Interrogatory as vague and ambiguous, particularly the phrases "Floodgate W-30," "missing," "signed off on" and "ensured." It is also potentially misleading in that it appears to allege facts, without stating them, that are yet to be proven in this litigation. The United States also objects to this Interrogatory as overly broad and unduly burdensome. See General Objection No. 10. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, the United States answers as follows: John Bivona, Assistant Chief, Engineering Division, Room 302; phone no. (504) 862-2730, may have information related to USACE's knowledge of "Floodgate W-30."

**INTERROGATORY NO. 11**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who participated in the Corps of Engineers' evaluation of the New Orleans Sewerage & Water Board's May 9, 1983 permit application to dredge the 17th Street Canal from Pump Station No. 6 to about 400 feet north of the Bucktown Pedestrian Bridge.

**ANSWER TO INTERROGATORY NO. 11**: Particularly because the permit application to which the Interrogatory refers apparently was filed 24 years ago, The United States objects to

11

this Interrogatory as overly broad and unduly burdensome.  Also, See General Objection No. 10.
The United States also objects to this Interrogatory as vague and ambiguous, particularly the
phrases "participated in" and "evaluation." The United States also objects to the "supervision"
terms within this interrogatory.  See General Objection No. 11.  Notwithstanding and without
waiving these objections, The United States answers that C.J. Nettles (retired) (former Chief,
Operations Division) signed a May 9, 1983 permit to dredge the 17th Street Canal, and Roger
Swindler (then Permit Section Chief, Regulatory Branch MVN, and currently Senior Project
Manager, Operations Division, Regulatory Branch MVN; phone no. (504) 862-2278)
participated in the approval process for a May 9, 1983 permit application to dredge the 17th
Street Canal.  Moreover, upon information and belief, the following USACE personnel, in the
regular course of business, may also have participated in the permitting process:  Ron Ventola
(retired) (then Chief, Regulatory Branch); Jim Richardson (retired) (then Engineering Division,
Geotechnical Branch) and Dan Juldin (retired) (former Chief, Engineering Division, Design
Branch)

**INTERROGATORY NO. 12**:  Please identify the Army Corps' supervisory officer(s) and/or
supervisory civilian employee(s) who was assigned to the Corps of Engineers' New Orleans
District's Operations and Engineering Divisions and who authorized the issuance of the June 13,
1984 dredging permit for the 17th Street Canal.

**ANSWER TO INTERROGATORY NO. 12**:  Particularly because the permit to which the
Interrogatory refers apparently was issued 23 years ago, the United States objects to this
Interrogatory as overly broad and unduly burdensome.  Also, See General Objection No. 10.
The United States also objects because the Interrogatory is vague and ambiguous.  The United

12

States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, the United States answers that C.J. Nettles (retired) (then Chief, Operations Division) signed the permit on behalf of the Corps.

**INTERROGATORY NO. 13**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who were in charge of the New Orleans District's Operations and Engineering Divisions for the years 1963 through 2006.

**ANSWER TO INTERROGATORY NO. 13**: Particularly because interrogatory no. 13 requests information about personnel matters covering a period of forty (40) years, this interrogatory is burdensome and oppressive. Also, See General Objection No. 10. Nothwithstanding, and without waiving these objections, the United States answers that the following Operations and Engineering Chiefs have served the USACE since 1963.

**Operations Chiefs**

Chris Accardo  (2005 - present)

Otis Jernigan  (1963)

Gregory E. Breerwood (12/15/02 - 6/25/05)

Henry Schorr  (7/31/88 - 2/28/93)

Robert L. Tisdale  (11/14/93 - 3/16/96)

Albert J. Guillot  (6/9/96 - 1/2/99)

C. J. Nettles  (1/13/80 - 7/1/88)

Hugh Brownlee (unknown)

**Engineering Chiefs**

Walter Baumy  (12/15/02 - present)

Frederic M. Chatry  (8/3/75 - 12/30/89)

Wilfred EugeneTickner  (2/4/90 - 4/24/99)

Gerald S. Satterlee, Jr.  (2/4/90 - 4/24/99)

Jerome C. Baehr (1963 - 1965)

Hudson (unknown)

Additionally, attached to these answers is a list of current and former personnel who may have, or may have had, knowledge relevant to this litigation. If there are any inconsistencies between the attached list and the information provided elsewhere within these answers, the list is most likely to be the most accurate source of information. The United States also will provide addresses and phone nos. of retired personnel on an as needed basis.

**INTERROGATORY NO. 14**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who, on or about August 23, 1979, received and evaluated a second 17th Street Canal dredging permit application from Modjeski and Masters submitted on the behalf of the New Orleans Sewerage & Water Board.

**ANSWER TO INTERROGATORY NO. 14**: Particularly because the permit application to which the Interrogatory refers apparently was received 28 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects to this Interrogatory as vague and ambiguous and assumes facts yet to be proven which the United States does not admit. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, after reasonable inquiry, the United States cannot verify the identification of any USACE personnel who, "on or about August 23, 1979, [in fact] received and evaluated a second 17th Street Canal dredging permit application from Modjeski and Masters submitted on the behalf of the New Orleans Sewerage & Water Board." However, upon information and belief, the following personnel, in the regular course of business, may have been involved in the USACE permitting process related to the identified permit application: C.J. Nettles (retired) (former Chief, Operations Division), Jim Richardson (retired) (formerly with

14

Engineering Div, Geotechnical Branch), Dan Juldin (retired) (former Chief, Design Branch), Roger Swindler (then Permit Section Chief, Regulatory Branch MVN, and currently Senior Project Manager, Operations Div, Regulatory Branch MVN; phone no. (504) 862-2278). Ron Ventola (retired) (former Chief, Regulatory Branch) or Charles Decker (former Chief, Regulatory Branch) also may have been involved in the USACE's permitting process.

**INTERROGATORY NO. 15**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who received, reviewed, and evaluated the New Orleans Sewerage & Water Board's December 29, 1980 permit application for Phase I of the 17th Street Drainage Canal Improvement Project.

**ANSWER TO INTERROGATORY NO. 15**: Particularly because the permit application to which the Interrogatory refers apparently was received 27 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States further objects to this Interrogatory as vague and ambiguous. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, after reasonable inquiry, the United States cannot verify the identification of any specific personnel who, in fact, acted in any way regarding "the New Orleans Sewerage & Water Board's December 29, 1980 permit application for Phase I of the 17th Street Drainage Canal Improvement Project." However, upon iformation and belief, the following personnel, in the regular course of business, may have been involved in the permitting process for such a permit application: C.J.Nettles (retired) (former Chief, Operations Division), Jim Richardson (retired) (formerly with Engineering Div, Geotechnical Branch), Dan Judland (retired) (former Chief, Engineering Div, Design Branch),

15

Roger Swindler (then Permit Section Chief, Regulatory Branch MVN, and currently Senior

Project Manager, Operations Div, Regulatory Branch MVN; phone no. (504) 862-2278).   Also,

Ron Ventola (retired) (former Chief, Regulatory Branch) or Charles Decker (former Chief,

Regulatory Branch) may have been involved in the permitting process.


**INTERROGATORY NO. 16**:  Please identify the Army Corps' supervisory officer(s) and/or

supervisory civilian employee(s) who, on or about January 28, 1981, received, reviewed, and

evaluated a memorandum from Modjeski and Masters addressing the stability of the existing

levees and sheet pile wall along the 17th Street Canal with respect to safety factors established

by the Army Corps.

**ANSWER TO INTERROGATORY NO. 16**:  Particularly because the memorandum to which

the Interrogatory refers purportedly was received 26 years ago, the United States objects to this

Interrogatory as overly broad and unduly burdensome.  Also, See General Objection no. 10.  The

United States also objects because the Interrogatory is vague and ambiguous, particularly the

terms "reviewed" and "evaluated" and because the memorandum referenced is not attached,

quoted, nor described with sufficient specificity.  The United States also objects to the

"supervision" terms within this interrogatory.  See General Objection No. 11. Notwithstanding

and without waiving these objections, after reasonable inquiry, the United States cannot identify

any USACE personnel who, "on or about January 28, 1981, [in fact] received, reviewed, and

evaluated a memorandum from Modjeski and Masters addressing the stability of the existing

levees and sheet pile wall along the 17th Street Canal with respect to safety factors established

by the Army Corps."  However, the following personnel, in the regular course of business, may

have received, such a memorandum:   Jim Richardson (retired) (formerly with the Engineering

16

Division), Frederic M. Chatry (deceased) (then Chief, Engineering Division MVN), and Phil

Napolitano (deceased) (formerly with the Engineering Division).

**INTERROGATORY NO. 17**:  Please identify the Army Corps' supervisory officer(s) and/or

supervisory civilian employee(s) who wrote the Corps of Engineers' March 5, 1981 internal

memorandum which addressed the soil stability analyses provided by Modjeski and Masters and

made recommendations in response to the soil stability analyses.

**ANSWER TO INTERROGATORY NO. 17**:  Particularly because the memorandum to which

the Interrogatory refers purportedly was written 26 years ago, the United States objects to this

Interrogatory as overly broad and unduly burdensome.  Also, See General Objection No. 10.

The United States also objects because the Interrogatory is vague and ambiguous, particularly

because the memorandum referenced is not attached, quoted,  nor described with sufficient

specificity.  This interrogatory may also be an inquiry into the deliberative process, which is a

privileged area of performance.  The United States also objects to the "supervision" terms within

this interrogatory.  See General Objection No. 11.  Notwithstanding and without waiving these

objections, the United States answers that Ronald Lee (deceased) (formerly Civil Engineer,

Levees, Engineering Division MVN) authored, and Frederic M. Chatry (deceased) (then Chief,

Engineering Division MVN) signed a March 5, 1981  memorandum that addressed a soil

stability analysis provided by Modjeski and Masters.

**INTERROGATORY NO. 18**:  Please identify the Army Corps' supervisory officer(s) and/or

supervisory civilian employee(s) who participated in the Corps of Engineers' March 31, 1981

public hearing regarding 17th Street Canal dredging.

**ANSWER TO INTERROGATORY NO. 18**: Particularly because the public hearing to which the Interrogatory refers took place 26 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, the United States responds that Colonel Tom Sands (then District Engineer, MVN) attended a March 31, 1981 public hearing, regarding 17th Street Canal dredging.

**INTERROGATORY NO. 19**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who, in or about March 1981, received concerns from by Modjeski and Masters that the 17th Street Canal levees and other outfall canal levees were in violation of the Corps' engineering standards for levee stability.

**ANSWER TO INTERROGATORY NO. 19**: Particularly because the Interrogatory asks about "concerns" purportedly communicated 26 years ago, the United States objects to this Interrogatory as overly broad unduly burdensome, vague and ambiguous. Also, See General Objection No. 10. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Further, the United States objects because the interrogatory appears to assert unstated facts that the United States does not admit. Notwithstanding and without waiving these objections, the United States answers that, after reasonable inquiry, the United States cannot identify anyone in response to this Interrogatory.

**INTERROGATORY NO. 20**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who, on or about April 20, 1981, received Modjeski and

18

Masters' preliminary plan, prior to any dredging or excavation, to install sheet pile walls with concrete caps for the entire length of the 17th Street Canal.

**ANSWER TO INTERROGATORY NO. 20**: Particularly because the "preliminary plan" to which the Interrogatory refers purportedly was received 26 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10.  The United States also objects because the Interrogatory is vague and ambiguous, particularly the phrase "preliminary plan."  The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11.  Notwithstanding and without waiving these objections, the United States answers that, after reasonable inquiry and without more specific description of the referenced "preliminary plan," the United States cannot identify any such "preliminary plan" or any USACE personnel who in fact received such a "preliminary plan."  However, upon information and belief, if such a "preliminary plan" had been received by the Corps at that time, the following personnel, in the regular course of business, may likely have received it: Jim Richardson (retired) (formerly with the Engineering Div), Frederic M. Chatry (deceased) (then Chief, Engineering Division MVN), or Phil Napolitano (deceased) (formerly with the Engineering Div).

**INTERROGATORY NO. 21**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who received the New Orleans Sewerage & Water Board's April 20, 1981 permit application to dredge the 17th Street Drainage Canal.

**ANSWER TO INTERROGATORY NO. 21**: Particularly because the permit application to which the Interrogatory refers purportedly was received 26 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome.  Also, See general Objection No.

19

10. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, after reasonable inquiry, the United States cannot verify the identification of any USACE personnel who [in fact] "received the New Orleans Sewerage & Water Board's April 20, 1981 permit application to dredge the 17th Street Drainage Canal." However, upon information and belief, the following personnel, in the regular course of business, may have received such a permit application: Roger Swindler (then Permit Section Chief, Regulatory Branch MVN, and currently Senior Project Manager, Operations Div, Regulatory Branch MVN; phone no. (504) 862-2278), Frederic M. Chatry (deceased) (then Chief, Engineering Division MVN), and Ron Ventola (retired) (former Chief, Regulatory Branch) or Charles Decker (former Chief, Regulatory Branch) .

**INTERROGATORY NO. 22**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who wrote the June 16, 1981 internal memorandum which acknowledged that a number of levee and flood wall stability problems were likely if the New Orleans Sewerage & Water Board's dredging permit request was granted.

**ANSWER TO INTERROGATORY NO. 22**: Particularly because the memorandum to which the Interrogatory refers purportedly was written 26 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects because the Interrogatory is vague and ambiguous, particularly because the memorandum referenced is not attached, quoted, nor described with sufficient specificity. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. The United States also objects because the interrogatory may

inquire into the deliberative process which is a privileged area of performance. Notwithstanding and without waiving these objections, the United States responds that Cecil Soileau wrote and Frederic M. Chatry (deceased) (then Chief, Engineering Division MVN) signed a June 16, 1981 memorandum with a subject heading: "Permit Application by S&WB of New Orleans for Dredging the 17th Street Canal."

**INTERROGATORY NO. 23**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who wrote the February 12, 1982 internal memorandum from the Corps' Engineering Division to the Corps' Operations Division which noted the existence of a stability problem in the 17th Street Canal at a location where excavation would directly tap the sands underlying the levee.

**ANSWER TO INTERROGATORY NO. 23**: Particularly because the memorandum to which the Interrogatory refers purportedly was written 25 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects because the Interrogatory is vague and ambiguous, particularly because the referenced memorandum is not attached, quoted, nor described with sufficient specificity. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. The United States also objects because the interrogatory appears to rely on unstated facts that are yet to be proven in this litigation and that the United Sates does not admit. Notwithstanding and without waiving these objections, the United States answers that Ronald Lee (deceased) (Civil Engineer, levees, Engineering Division MVN) wrote and Frederic M. Chatry (deceased) (then Chief, Engineering Division MVN) signed a February 12, 1982

21

memorandum about the 17th Street Canal from the Corps' Engineering Division to the Corps' Operations Division.

**INTERROGATORY NO. 24**:  Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who, on or before February 1982, knew that sands underlay the entire 17th Street Canal, from Pumping Station No. 6 to Lake Pontchartrain.

**ANSWER TO INTERROGATORY NO. 24**:  Particularly because the Interrogatory refers to knowledge allegedly possessed "on or before February 1982," covering an unstated period ending at least twenty-five years ago, and an unlimited time before that, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects to this Interrogatory as vague and ambiguous, particularly the word "underlay." The United States also objects because the interrogatory is argumentative and also assumes facts yet to be proven in this litigation, which facts the United States does not admit. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Further, the United States disagrees with the Interrogatory's premise: " that sands underlay the entire 17th Street Canal, from Pumping Station No. 6 to Lake Pontchartrain." Nevertheless, after reasonable inquiry, the United States cannot identify anyone in answer to this Interrogatory.

**INTERROGATORY NO. 25**:  Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who, on or about November 30, 1982, received [from Modjeski &Masters] Eustis Engineering's August 23, 1982 subsoil investigation report for the 17th Street Canal."

22

**ANSWER TO INTERROGATORY NO. 25**: Particularly because the report to which the Interrogatory refers purportedly was received 25 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects to this Interrogatory as vague and ambiguous. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, after reasonable inquiry, the United States cannot verify the identification of any USACE personnel who, "on or about November 30, 1982, [in fact] received [from Modjeski &Masters] Eustis Engineering's August 23, 1982 subsoil investigation report for the 17th Street Canal." However, upon information and belief the following personnel, in the regular course of business, may have received such a report: Roger Swindler (then Permit Section Chief, Regulatory Branch MVN, and currently Senior Project Manager, Operations Division, Regulatory Branch MVN; phone no. (504) 862-2278), Frederic M. Chatry (deceased) (then Chief, Engineering Division MVN and Ron Ventola (retired) (former Chief, Regulatory Branch) or Charles Decker (former Chief, Regulatory Branch)

**INTERROGATORY NO. 26**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who, on February 22, 1983, as the Chief of the Corps' Engineering Division, advised the New Orleans Sewerage & Water Board that the Corps believed "the installation of relief wells would be an appropriate way to provide the necessary assurance against uplift" of the 17th Street Canal levee's sheet piles.

**ANSWER TO INTERROGATORY NO. 26**: Particularly because the communication to which the Interrogatory refers purportedly took place 24 years ago, the United States objects to

23

this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, the United States responds that, in February 1983, the Chief of the Corps' Engineering Division, Frederic M. Chatry (deceased), wrote a letter addressed to G. Joseph Sullivan, "General Superintendent," that stated, in part, that "the installation of relief wells would be an appropriate way to provide the necessary assurance against uplift of the landside toe of levee."

**INTERROGATORY NO. 27**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who received from Modjeski and Masters the New Orleans Sewerage & Water Board's May 9, 1983 permit application for the 17th Street Drainage Canal Improvement Project.

**ANSWER TO INTERROGATORY NO. 27**: Particularly because the permit application to which the Interrogatory refers purportedly was received 24 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects to this Interrogatory as vague and ambiguous. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, after reasonable inquiry, the United States cannot verify the identification of any USACE personnel "who [in fact] received from Modjeski and Masters the New Orleans Sewerage & Water Board's May 9, 1983 permit application for the 17th Street Drainage Canal Improvement Project." However, upon information and belief, the following personnel, in the regular course of business, may have received such a permit application: Roger Swindler (then Permit Section Chief, Regulatory

24

Branch MVN, and currently Senior Project Manager, Operations Div, Regulatory Branch MVN; phone no. (504) 862-2278), Frederic M. Chatry (deceased) (then Chief, Engineering Division MVN), and Ron Ventola (retired) (former Chief, Regulatory Branch) or Charles Decker (former Chief, Regulatory Branch).

**INTERROGATORY NO. 28**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who received Eustis Engineering's July 27, 1983 revised soil stability report regarding the 17th Street Canal.

**ANSWER TO INTERROGATORY NO. 28**: Particularly because the report to which the Interrogatory refers purportedly was received 24 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Nevertheless, after reasonable inquiry, the United States cannot identify anyone in response to this Interrogatory.

**INTERROGATORY NO. 29**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who received Eustis Engineering's January 17, 1984 report regarding the 17th Street Canal.

**ANSWER TO INTERROGATORY NO. 29**: Particularly because the report to which the Interrogatory refers purportedly was received 23 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. Further, the United States is unaware of any report concerning the 17th Street Canal from Eustis Engineering dated January 17, 1984. The United States also objects to the "supervision" terms

25

within this interrogatory. See General Objection No. 11. However, upon information and belief, the United States answers that a January 12, 1984, Eustis Engineering report was received by Frederic M. Chatry (deceased) (then Chief, Engineering Division MVN).

**INTERROGATORY NO. 30**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who were responsible for evaluating the 1983-84 piezometer study of the 17th Street Canal test section with regard to the study's conclusions as to soil stability and permeability.

**ANSWER TO INTERROGATORY NO. 30**: Particularly because the study to which the Interrogatory refers purportedly was conducted more than 23-24 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects because the Interrogatory is vague and ambiguous, particularly because documentation of the study referenced is not attached nor is the study quoted or described with sufficient specificity. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, after reasonable inquiry, the United States cannot identify anyone in response to this Interrogatory nor can it verify the existence of the purported "study" referenced in the Interrogatory.

**INTERROGATORY NO. 31**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who on June 13, 1984, issued a permit to "dredge to enlarge and maintain an area and install and maintain flood walls and mooring structures, in the 17th

Street Canal (Metairie Relief Canal) from Pumping Station No. 6 to a point about 400 feet north

of the Bucktown Pedestrian Bridge . . . ."

**ANSWER TO INTERROGATORY NO. 31**:  Particularly because the permit to which the

Interrogatory refers purportedly was issued 23 years ago, the United States objects to this

Interrogatory as overly broad and unduly burdensome.  Also, See General Objection No. 10.

The United States also objects to the "supervision" terms within this interrogatory.  See General

Objection No. 11.  Notwithstanding and without waiving these objections, the United States

responds that C.J. Nettles (retired) (then Chief, Operations Division) signed a permit on behalf of

the Corps to dredge the 17th Street Canal.


**INTERROGATORY NO. 32**:  Please identify the Army Corps' supervisory officer(s) and/or

supervisory civilian employee(s) who prepared the Army Corps' April 24, 1987 drawing of a

sheet pile design for the 17th Street Canal.

**ANSWER TO INTERROGATORY NO. 32**:  Particularly because the "drawing" to which the

Interrogatory refers purportedly was prepared more than 20 years ago, the United States objects

to this Interrogatory as overly broad and unduly burdensome.  Also, See General Objection No.

10.  The United States also objects because the Interrogatory is vague and ambiguous,

particularly because the "drawing" referenced is not attached nor described with sufficient

specificity.  The United States also objects to the "supervision" terms within this interrogatory.

See General Objection No. 11.  Notwithstanding and without waiving these objections, after

reasonable inquiry, the United States cannot identify anyone in response to this Interrogatory.

**INTERROGATORY NO. 33**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who, between June 13, 1984 until 1992, ordered, approved, or authorized any extensions of the June 13, 1984 dredging permit, and which documentation was received to grant such extension.

**ANSWER TO INTERROGATORY NO. 33**: Particularly because the Interrogatory applies to a time period 15-23 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects to this Interrogatory as vague and ambiguous, particularly the phrase "ordered, approved, or authorized." Additionally the interrogatory asks for information about acts that USACE does not do, such as "order" extensions of permits. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, the United States responds that, between 1984 and 1992, Henry Schorr (retired) (former Asst. Chief of Operations Div.) and Albert Guillot (retired) (former Asst. Chief of Operations Div.) issued at least one time extension of a June 13, 1984 dredging permit. In addition, the Corps received two written requests for such time extensions during that period (a February 4, 1987 Sewerage & Water Board letter to USACE and a May 27, 1992 Sewerage & Water Board letter to USACE).

**INTERROGATORY NO. 34**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who, between June 13, 1984 until 1992, ordered, approved, or authorized any deviation(s) from the design plans for, and upon which the June 13, 1984 dredging permit for the 17th Street Canal was granted.

**ANSWER TO INTERROGATORY NO. 34**: Particularly because the Interrogatory applies to

28

a time period 15-23 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects to this Interrogatory as vague and ambiguous, particularly the phrases "ordered, approved, or authorized," "deviation" and "design plans." e.g., the term "deviation" may refer to approved modifications or it may refer to an unapproved avoidance of the plans. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, the United States answers that, after reasonable inquiry, the United States cannot identify anyone in response to this Interrogatory, in part, because the United States does not admit that improper "deviations" occurred.

**INTERROGATORY NO. 35**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who was in possession, and who reviewed plans and specifications, the progress charts, soundings, inspector's logs, deviations from the maintained dimensions, quantity of excavated materials, hydrographic surveys, and cross sections before, during, and after the dredging project at the 17th Street was carried out.

**ANSWER TO INTERROGATORY NO. 35**: The United States objects to this Interrogatory as vague, ambiguous, overly broad and unduly burdensome. See also the United States' objections to Interrogatory No. 34, regarding "deviations", which are incorporated by reference in this answer. Notwithstanding and without waiving these objections, the United States answers that, after reasonable inquiry, the United States cannot identify anyone in response to this Interrogatory.

29

**INTERROGATORY NO. 36**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who, in 1993, received from Pittman Construction Company reports that concrete monoliths installed on the top of sheet pilings on the 17th Street Canal and the London Avenue Canal were beginning to lean towards the canal side, because the supporting soil foundation was not of sufficient strength, rigidity and stability.

**ANSWER TO INTERROGATORY NO. 36**: Particularly because the purported "reports" to which the Interrogatory refers purportedly were received 14 years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects because the Interrogatory is vague and ambiguous, particularly because the purported "reports" referenced are not attached, quoted, nor described with sufficient specificity. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, after reasonable inquiry, the United States cannot identify any USACE personnel "who, in 1993, [in fact] received from Pittman Construction Company reports that concrete monoliths installed on the top of sheet pilings on the 17th Street Canal and the London Avenue Canal were beginning to lean towards the canal side, because the supporting soil foundation was not of sufficient strength, rigidity and stability." However, upon information and belief, the following personnel, in the regular course of business, likely would have received any reports submitted to the USACE regarding the 17th Street Canal or the London Avenue Canal: Richard Hill (retired) (former Chief, Construction Division), Dennis Duhon (deceased) (supervisory civil engineer in the Area Office), and Chester J. Ashley (Area Engineer at the time, currently resident engineer in HPO).

**INTERROGATORY NO. 37**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who, despite Pittman Construction Company's concerns, allowed the construction of the 17th Street Canal and London Avenue Canal I-walls to proceed, and be completed prior to Hurricane Katrina.

**ANSWER TO INTERROGATORY NO. 37**: The United States objects to this Interrogatory as vague and ambiguous, particularly the words "concerns" and "allowed." The United States also objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. The United States also objects to this interrogatory because it is argumentative and asserts unstated facts that are yet to be proven in this litigation and which facts the United States does not admit.

**INTERROGATORY NO. 38**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who ordered, approved, or authorized any deviation(s) from the Congressionally-authorized Barrier Plan of the LPVHPP.

**ANSWER TO INTERROGATORY NO. 38**: The United States objects to this Interrogatory as vague, ambiguous, overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. The United States also incorporates herein by reference its objections to interrogatories nos. 34 and 35, above. Notwithstanding and without waiving these objections, the United States answers that any USACE modifications to the LPVHPP likely would have been authorized by the United States Army Corps' Chief of Engineers, within the discretion authorized by Congress.

31

**INTERROGATORY NO. 39**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who ordered, approved, or authorized High Level Plan for the LPVHPP.

**ANSWER TO INTERROGATORY NO. 39**: The United States objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving this objection, see answer to Interrogatory No. 38.

**INTERROGATORY NO. 40**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who ordered, approved, or authorized the "Parallel Protection Plan" for the 17th Street Canal.

**ANSWER TO INTERROGATORY NO. 40**: The United States objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving this objection, the United States answers that Frederic M. Chatry (deceased) (then Chief, Engineering Division New Orleans District) recommended, in Design Memorandum No. 20, the locally preferred Parallel Protection Plan for the 17th Street Canal in lieu of the "butterfly" closure structure at the mouth of the canal. This DM was forwarded through the Lower Mississippi River Division (Fred H. Bayley, III, then Chief of Engineering Division) to the Chief of Engineers for approval.

**INTERROGATORY NO. 41**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who in connection with the "Parallel Protection Plan" for the 17th Street Canal, ordered, approved, or authorized the construction of I-walls instead of levees or T-walls.

32

**ANSWER TO INTERROGATORY NO. 41**: The United States objects to this Interrogatory as vague and ambiguous, particularly the phrase "instead of." The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. The United States also objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. Notwithstanding and without waiving these objections, the United States refers Plaintiffs to the Answer to Interrogatory No. 40, above.

**INTERROGATORY NO. 42**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who made the decision to reject levees and T-walls on the 17th Street Canal.

**ANSWER TO INTERROGATORY NO. 42**: The United States objects to this Interrogatory as argumentative (it implies and assumes facts that are yet to be proven in this litigation, which facts the United States does not admit), vague and ambiguous, particularly the phrase "made the decision to reject." The United States also objects to this Interrogatory as overly broad. Also, See General Objection No. 10. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, the United States directs the Plaintiffs to the Answer to Interrogatory No. 40.

**INTERROGATORY NO. 43**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who authored and approved the design memoranda of the LPVHPP for the 17th Street and London Avenue Canals.

**ANSWER TO INTERROGATORY NO. 43**: The United States objects to this Interrogatory as vague, ambiguous, overly broad and unduly burdensome. Also, See General Objection No.

33

10. The United States also objects to the "supervision" terms within this interrogatory. See General Objection No. 11. Notwithstanding and without waiving these objections, the United States answers that for the 17th Street Canal, the United States directs the Plaintiffs to the Answer to Inrterrogatory No. 40. For the London Avenue Canal, Frederick M. Chatry (deceased) (then Chief, Engineering Division, New Orleans District) recommended in Design Memorandum No. 19A the use of a "butterfly" closure structure in lieu of parallel protection. The DM was forwarded through the Lower Mississippi River Division (Fred H. Bayley, III, then Chief of Engineering Division) to the Chief of Engineers for approval. The authority/requirement for parallel protection came at the direction of Congress in the Energy and Water Development Appropriation Act of 1992 (P.L. 102-104).

**INTERROGATORY NO. 44**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who, before Hurricane Katrina struck, knew that the flood walls of the 17th Street Canal levee and the London Avenue Canal were constructed with protective steel sheet pilings that ended above or in the middle of layers of weak soil.

**ANSWER TO INTERROGATORY NO. 44**: The United States objects to this Interrogatory as vague and ambiguous, particularly the word "weak." The United States also objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects to this interrogatory because it is argumentative and it assumes facts that are yet to be proven in this litigation, which facts the United States does not admit. Notwithstanding and without waiving these objections, after reasonable inquiry, the United States cannot identify anyone in response to this Interrogatory, in part because the United States disagrees with the Interrogatory's premise that "the flood walls of the 17th Street Canal levee

34

and the London Avenue Canal were constructed with protective steel sheet pilings that ended

above or in the middle of layers of <u>weak</u> soil."

**INTERROGATORY NO. 45**: Please identify the Army Corps' supervisory officer(s) and/or

supervisory civilian employee(s) who knew the soil adjacent to the 17th Street Canal and the

London Avenue Canal levees had subsided significantly after construction.

**ANSWER TO INTERROGATORY NO. 45**: The United States objects to this Interrogatory

as vague and ambiguous, particularly the phrase "subsided significantly." The United States also

objects to this Interrogatory as overly broad and unduly burdensome. Also, See General

Objection No. 10. The United States also objects to the "supervision" terms within this

interrogatory. See General Objection No. 11. The United States also objects to this

interrogatory because it assumes facts that are yet to be proven in this litigation, which facts the

United States does not admit. Nevertheless, after reasonable inquiry, the United States cannot

identify anyone in response to this Interrogatory.

**INTERROGATORY NO. 46**: Please identify the Army Corps' supervisory officer(s) and/or

supervisory civilian employee(s) who received proof of insurance from companies submitting

bids to dredge or build levees and flood walls on the 17th Street Canal and the London Avenue.

**ANSWER TO INTERROGATORY NO. 46**: The United States objects to this Interrogatory

as vague, ambiguous, overly broad, unduly burdensome, and beyond the authorized limit of fifty

(50) interrogatories. See General Objections introduction. Also, See General Objection No. 10.

The United States also objects to the "supervision" terms within this interrogatory. See General

Objection No. 11. The United States also objects to this interrogatory because it is not

35

calculated to lead to the discovery of admissible evidence.  Notwithstanding and without waiving these objections, after reasonable inquiry, the United States cannot identify anyone in response to this Interrogatory.

**INTERROGATORY NO. 47**:  Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who knew of, or participated in, the Corps of Engineers' decision to continue using the 1959 National Weather Service Standard Project Hurricane for all designs related to the LPVHPP after being ordered by the Chief of Engineers in 1981 to use the most recent available data by the National Weather Service, including the 1979 Standard Project Hurricane and the SLOSH Surge Model.

**ANSWER TO INTERROGATORY NO. 47**:  The United States objects to this Interrogatory as argumentative, vague, ambiguous, overly broad, unduly burdensome, and beyond the authorized limit of fifty (50) interrogatories.  See General Objections introduction  Also, See General Objection No. 10.  This interrogatory also assumes facts that have yet to be  proven in this litigation, which facts the United States does not admit.  Notwithstanding and without waiving these objections, the United States answers that, after reasonable inquiry, the United States cannot identify anyone in response to this Interrogatory, in part because the United States disagrees with the Interrogatory's objectionable, implicit argumentative premise that there existed an "order by the Chief of Engineers in 1981 to use the most recent available data by the National Weather Service" that purportedly intended that recent data be applied retroactively, even to projects for which construction already had begun or were finished, and in a particular mandatory and specific way to any particular project that is a part of the instant litigation.

36

**INTERROGATORY NO. 48**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who provided information and documents, or gave testimony for the August 31,1976 Report to Congress by the Comptroller General of the United States entitled: "Cost, Schedule, And Performance Problems Of The Lake Pontchartrain And Vicinity, Louisiana, Hurricane Protection Project."

**ANSWER TO INTERROGATORY NO. 48**: Particularly because the events about which the Interrogatory asks apparently occurred 31 or more years ago, the United States objects to this Interrogatory as overly broad and unduly burdensome. Also, See General Objection No. 10. The United States also objects because this interrogatory is beyond the authorized fifty (50) interrogatories. See General Objections introduction. The United States specifically refers the Plaintiffs to any transcript associated with, and the text of, the referenced report, which after reasonable inquiry, counsel for the United States has been unable to locate. Notwithstanding and without waiving these objections, after reasonable inquiry, the United States cannot identify anyone in answer to this interrogatory.

**INTERROGATORY NO. 49**: Please identify the Army Corps' supervisory officer(s) and/or supervisory civilian employee(s) who provided information and documents, or gave testimony for the August 17,1982 Report to the Secretary of the Army by the General Accounting Office of the United States entitled: "Improved Planning Needed By The Corps Of Engineers To Resolve Environmental, Technical, And Financial Issues On The Lake Pontchartrain Hurricane Protection Project."

**ANSWER TO INTERROGATORY NO. 49**: Particularly because the events about which the Interrogatory asks apparently occurred 25 years ago, the United States objects to this

37

Interrogatory as overly broad, unduly burdensome, and beyond the authorized fifty (50)

interrogatories.  See General Objections introduction.  Also, See General Objection No. 10.  The

United States also specifically refers the Plaintiffs to any transcript associated with, and the text

of, the referenced report, which after reasonable inquiry, counsel for the United States has been

unable to locate.  Notwithstanding and without waiving these objections, after reasonable

inquiry, the United states cannot identify anyone in answer to this interrogatory.


**INTERROGATORY NO. 50**:  Please identify the Army Corps' supervisory officer(s) and/or

supervisory civilian employee(s) who attended the July 2004 "Hurricane Pam" exercise.

**ANSWER TO INTERROGATORY NO. 50**:  The United States objects to this Interrogatory

as not calculated to lead to the discovery of admissible evidence and beyond the authorized fifty

(50) interrogatories.  See General Objections introduction.  Notwithstanding and without

waiving this objection, the United States responds as follows:  Michael Lowe, Operations

Division, Readiness Branch, CEMVN; phone no. (504) 862-2244 Room 292 attended the

exercise.

## **VERIFICATION**

I declare under penalty of perjury that the foregoing responses to the First Set of Interrogatories propounded by the Levee plaintiffs are true and correct to the best information and belief, based upon review of available records and consultation with other agency employees.

Murray P. Starkel
LTC, EN
Deputy District Commander
New Orleans District
United States Army Corps of Engineers

Dated: 14 Jun 07

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

C. FREDERICK BECKNER
Deputy Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY
Assistant Director, Torts Branch

RICHARD R. STONE, SR.
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 888
Washington, D.C.  20044
(202) 616-4291/ (202) 616-5200 (FAX)

Dated: 14 June 2007

Attorneys for the United States

az 39 R.Stone

## CERTIFICATE OF SERVICE

I, Richard R. Stone, hereby certify that on June 14, 2007, I served a true copy of the United States' Answers to the Levee Plaintiffs' First Set of Interrogatories upon Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel by electronic mail, for circulation to the respective parties.

Plaintiffs' Liaison Counsel
jbruno@jbrunolaw.com
scott@jbrunolaw.com

Defendants' Liaison Counsel
rhubbard@lawla.com
llangdon@lawla.com

RICHARD R. STONE

Dated: June 14, 2007