## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO.: 05-4182 "K"(2) |
| | * | |
| _____ | * | JUDGE DUVAL |
| | * | |
| PERTAINS TO:  INSURANCE, | * | |
| *Xavier Univ. of La.*, No. 06-0516 | * | MAGISTRATE JUDGE WILKINSON |
| | * | |
| | * | |

## DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S ORDER ON DEFENDANT'S MOTION TO COMPEL

Defendant Travelers Property Casualty Company of America ("Travelers") respectfully requests reconsideration of the portion of this Court's July 12, 2007 Order (Record Doc. 6428) that denied Travelers' motion to compel responses to Interrogatories Nos. 17 and 18 and Requests for Production Nos. 8, 9, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 25.  These requests sought information pertaining post-Katrina grants, donations or payments that Plaintiff Xavier

University of Louisiana ("Xavier") sought from the Federal Emergency Management Agency, U.S. Department of Housing and Urban Development and other sources.

The Court should reconsider its ruling for three reasons. First, when this Court ruled that how Xavier characterized its losses in applications for grants and donations was irrelevant under Judge Duval's decision on the water damage exclusion, this Court did not consider a crucial portion of that decision. In particular, the question of the extent to which Xavier's losses were caused by wind versus flood remains an important issue in this case under Judge Duval's decision, regardless of how the Fifth Circuit rules. How Xavier characterized its losses in applications for grants, donations, and other sources of collateral funding is therefore a highly relevant area of inquiry.

Second, initial information obtained by Travelers indicates that there is substantial reason to believe that Xavier's applications for grants and donations contain information pertinent to both the cause and the extent of Xavier's losses. For example, Xavier applied for FEMA grants to make specific repairs to particular buildings. Xavier's statements to FEMA, HUD and others may well be relevant to the parties' dispute on the amount of the loss in this case even if both flood damage and wind damage are covered.

Third, Travelers may be entitled to an offset or credit for amounts received by Xavier from grants and donations. The question of whether Travelers may be entitled to such a credit is presently pending before the District Judge on Xavier's motion for summary judgment, and the resolution of that motion may depend on the facts. Without discovery on the nature of the applications made by Xavier to third parties and the funds received, Travelers cannot fully respond to Xavier's pending motion for partial summary judgment. For example, if Xavier received money from FEMA to repair a roof on a particular building, it would be inconsistent

with the fundamental principle of indemnity for Travelers to be required to pay for the same

repairs. This Court's ruling on the motion to compel prejudges how the District Judge might rule

on Xavier's motion, and prevents Travelers from fully responding to that motion. For all of

these reasons, Xavier should be required to provide discovery on post-Katrina grants, donations

or payments it received.

## I.    This Court's Order on the Motion to Compel Omitted Consideration of a Critical Portion of the District Judge's Decision on the Water Damage Exclusion

In moving to compel production of information pertaining to post-Katrina grants and

donations, Travelers argued that how Xavier characterized the nature and extent of its losses, and

the causes of those losses, in requests for grants and donations would be relevant to the parties'

claims and defenses. This Court ruled that "how Xavier may have characterized its damages

when applying for other funds is irrelevant" because "Xavier's claim is that Travelers owes it

indemnity under the policy for all of its damages, not just damages caused by wind," and "[t]he

presiding district judge has denied defendant's motion to dismiss plaintiff's claim for damages

caused by inundation." (Order dated July 12, 2007, at 6-7.) The Court noted that "[a]lthough

that holding is on appeal, the Fifth Circuit has not yet ruled and plaintiff's claim for all damages

remains in this case." (Id., at 7.)

In ruling that the District Judge's decision on Xavier's motion for partial summary

judgment rendered irrelevant how Xavier characterized its losses, the Court omitted

consideration of a critical aspect of the District Judge's decision. Assuming that the District

Judge's decision is affirmed on appeal, it still leaves open the very important question of whether

the cause of the inundation of Xavier's property was "natural" or "man-made." Judge Duval

ruled that "the Water Damage Exclusion as found in Xavier's Travelers policy is ambiguous and

as such affords Xavier coverage for damages sought provided that Xavier can prove that the

flooding it experienced was caused by the negligence of man." In re Katrina Canal Breaches
Consolidated Litig., 466 F. Supp. 2d 729, 767 (E.D. La. 2006) (emphasis added). He further
held that "as this litigation proceeds, if it is shown that an insured premises sustained damage
from a covered peril, i.e. wind or water damage caused by a failed levee caused by negligence,
and a non-covered peril, i.e. naturally occurring flooding such as overtopping of a levee, then the
Court must determine the applicability and enforceability of the anti-concurrent cause clause."
Id. at 752-53 (emphasis added). Xavier's motion for partial summary judgment was "**DENIED**
in part as the Court finds there are material questions of fact as to the cause of the water damage
to Xavier." Id. at 767.

If Judge Duval's ruling is affirmed, Travelers intends to take discovery on the cause of
the levee breaches. Travelers expects to present evidence at trial that the cause of the inundation
of Xavier's property was the very powerful "natural" forces of Hurricane Katrina, not "man
made" factors, and that overtopping of levees may have contributed to the inundation of Xavier's
property. Travelers will also be entitled to present evidence at trial of the extent to which
Xavier's property was impacted by what Travelers contends was "natural" flooding as opposed
to wind and wind-driven rain.

The question of the extent to which the damage to Xavier's property was caused by wind
versus flood (either "natural" flooding or any type of flooding, depending on how the Fifth
Circuit rules) remains alive and well and a very important part of this case. How Xavier
characterized its losses with respect to wind and flood is certainly a subject that is relevant to the
claims and defenses of the parties and reasonably calculated to lead to the discovery of
admissible evidence. See Fed. R. Civ. P. 26(b)(1). The District Judge's decision denying

Xavier's motion should not be a basis for preventing Travelers from obtaining discovery from Xavier on how it characterized its losses in its applications for grants and donations.

That the allocation of damages between wind and flood is still an important question in this litigation is further evidenced by the fact that the Plaintiffs in the Insurance Umbrella in In re Katrina have served master interrogatories and document requests on all of the insurers seeking, inter alia, information pertaining to the insurers' policies and procedures for allocation of damages between wind and flood. In an order dated July 19, 2007, this Court ruled that "[r]egardless what decision the Fifth Circuit reaches, it will be necessary in hundreds of Hurricane Katrina cases . . . to determine the level of water in particular properties; the effect of water inundation, if any, on damage above the water line," etc. (Record Doc. 6590 (emphasis added).) This case is one of the hundreds of cases in which those issues are implicated, and how Xavier characterized the cause and extent of its losses is of central relevance to this case. Travelers should therefore be entitled to obtain in discovery documents pertaining to Xavier's applications for post-Katrina grants and donations.

Notably, other judges in the Eastern District of Louisiana have recognized that payments received by insureds from FEMA, the Small Business Administration, the Louisiana Recovery Authority and other sources are an appropriate area of inquiry in discovery. Judge Feldman has ordered that this information must be disclosed by plaintiffs in all of the Allstate cases pending in his court, as part of a series of disclosures that he ordered in lieu of Rule 26(a)(1) initial disclosures. See Plaintiffs v. Allstate, Civ. A. No. 06-617, 2007 U.S. Dist. LEXIS 28081, at *11-12 (E.D. La. Feb. 12, 2007) (Feldman, J.) (attached as Exhibit A hereto).

Furthermore, even if the subject of how Xavier characterized the cause of the damage (wind vs. flood) were irrelevant, the question of how much damage there was to Xavier's

buildings and the cost of making the repairs is certainly relevant. Documents pertaining to

Xavier's applications for grants and donations likely contain information pertaining to the extent

of the damages to Xavier's campus and the anticipated or actual cost of making the repairs. See

Part II below. Information regarding the nature and extent of the damages unquestionably falls

within the scope of relevance as defined by Fed. R. Civ. P. 26(b)(1).

**II.   There Is Substantial Reason to Believe That Xavier's Applications for Grants and
Donations Contain Information Pertinent to Both the Cause and Extent of its Losses**

Information available from public sources demonstrates that the documents that Xavier is

withholding contain relevant information regarding both the cause and the extent of Xavier's

losses. For example, a spreadsheet available on the FEMA website indicates that Xavier applied

for and may have received funds to repair flood damage to mechanical equipment in the House

of Studies Building, Student Center and College of Pharmacy, to make certain specified repairs

to Buildings Nos. 1, 2, 56, 65, 87 and 98, and to make repairs to a roof on its Counseling Center

and Health Services Building (both presumably damaged by wind). The dollar amounts applied

for, as reflected on the spreadsheet, exceed $900,000, and the spreadsheet may not be a complete

listing of grants applied for by Xavier -- it appears to cover only a limited time period. See

www.fema.gov/xls/plan/ehp/noma/aa-schools-0710.xls (attached as Exhibit B hereto). Travelers

should be entitled to obtain copies of the documents pertaining to Xavier's applications to FEMA

and other sources of funds because they may be relevant to both the cause of the losses and the

reasonable cost of the repairs. Even if it were determined that Xavier is entitled to a double

recovery, i.e., that it can recover from Travelers for the exact same damage for which it received

specifically-designated grant funds from FEMA, the documents could still be relevant to the cost

of the repairs. At a minimum, this newly-discovered information demonstrates "good cause" to

expand the scope of discovery. See Order dated July 12, 2007, at 11.

Similarly, information available on Xavier's website indicates that, in seeking donations, Xavier may have made various representations to third parties concerning the nature and extent of the damage to its campus. For example, Xavier's website indicates that Xavier applied for a grant from the Bush-Clinton Hurricane Relief Fund "based on the extent of damages the midtown campus suffered from Hurricane Katrina's fierce winds and the massive flooding that followed the storm." See http://www.xula.edu/institutional-advancement/ tmax_recoverybulletin4.htm (attached as Exhibit C hereto), at p. 1. Xavier also created a "Hurricane Relief Fund" and requested donations specifically for the purpose of making repairs to its campus, apparently telling donors that proceeds from insurance and FEMA would not be sufficient. (Id., at p. 2.) Travelers should be entitled to take discovery on what Xavier told donors and potential donors about the nature and extent of the damage to its property, and what amounts were received for what purposes.

## III.   Travelers Could Potentially Obtain an Offset or Credit for Amounts Received By Xavier From Grants and Donations

As this Court recognized (see July 12, 2007 Order, at 3), "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In its July 12, 2007 Order, this Court effectively prejudged the issues pending before the District Judge when it concluded that "Xavier's receipt of funds from other, non-insurance sources is completely irrelevant to Travelers' obligations under its contract of insurance with Xavier." (Order dated July 12, 2007, at 6.) Without such discovery, Travelers cannot properly respond to Xavier's motion for partial summary judgment.

The question of whether Travelers is entitled to an offset for funds received by Xavier from non-insurance sources is the subject of a motion presently pending before the District

Judge. See Xavier's Supplemental Memorandum in Support of Motion for Partial Summary Judgment Regarding Collateral Source (Record Doc. 6398-3). Travelers has a right to marshal evidence to oppose Xavier's motion for partial summary judgment, including discovery to show that FEMA made non-insurance payments to Xavier for specific damage to specific buildings. See Exhibit B hereto. There is a "universally recognized rule to the effect [that] a policy of insurance on property is predominately a contract of indemnity . . . ." Wright v. Assurance Co. of Am., 728 So. 2d 974, 975 (La. Ct. App. 2d Cir. 1999). See also Weiss v. Allstate Ins. Co., 2007 WL 891869, at *3 (E.D. La. Mar. 21, 2007) (Vance, J.) (noting the "well-established propositions that insurance contracts are contracts of indemnity and that an insured cannot recover an amount greater than her loss"); Ferguson v. State Farm Ins. Co., 2007 WL 1378507, at *3 (E.D. La. May 9, 2007) (Berrigan, C.J.) (recognizing "the principle that the fundamental purpose of property insurance is indemnity, not profit"). If Xavier received an undesignated contribution to its general fund from an alumnus after Hurricane Katrina, Travelers would not contend that it is entitled to a credit on Xavier's insurance claim for such a donation. If, however, Xavier received funds from FEMA in order, for example, to repair damage to the roof on a particular building (see Exhibit B), it would be wholly inconsistent with the principle of indemnity for Xavier to be able to recover for the same damage to the same roof under the Travelers Policy.

Travelers should be entitled to obtain the documents that will reveal what payments Xavier received from what sources and for what purposes. This Court need not decide whether Travelers is entitled to a credit for FEMA, HUD and other non-insurance payments in order to determine whether the information is discoverable.

## CONCLUSION

For all of the foregoing reasons, Travelers' motion for reconsideration should be granted, and its motion to compel should be granted with respect to Interrogatories Nos. 17 and 17 and Requests for Production Nos. 8, 9, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 25.

Respectfully submitted,

s/Simeon B. Reimonenq, Jr.
SIMEON B. REIMONENQ, JR., T.A., #19755
RALPH S. HUBBARD III, #7040
LUGENBUHL, WHEATON, PECK,
    RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

Stephen E. Goldman (pro hac vice)
Christopher J. Hug (pro hac vice)
Wystan M. Ackerman (pro hac vice)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone:    (860) 275-8255
Facsimile:    (860) 275-8299

Attorneys for Travelers Property
Casualty Company of America

## CERTIFICATE OF SERVICE

I hereby certify that, on July 24, 2007, a copy of Defendant Travelers Property Casualty Company of America's Memorandum in Support of Its Motion for Reconsideration of the Court's Order on Defendant's Motion to Compel was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

s/Simeon B. Reimonenq, Jr.
SIMEON B. REIMONENQ, JR.

195887-1

9