UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | NO. 05-4182 |
| | SECTION "K" (2) |
| PERTAINS TO: ALL CASES | |
| FILED: _____ | _____ |
| | DEPUTY CLERK |

## DECLARATION OF JOSEPH M. BRUNO IN SUPPORT OF PLAINTIFFS' REQUEST TO CONDUCT ADDITIONAL DISCOVERY PURSUANT TO FED. R. CIV. P. 56(f)

I am the Court-appointed Liaison Counsel in the matter entitled In Re: Katrina Canal Breaches Consolidated Litigation. As such I have personal knowledge of the matters set forth herein, except for those matters stated upon information and belief, and as to those matters I am informed and believe them to be true. If called as a witness I could and would testify completely to the following:

A.  Introduction

1.  This declaration is submitted in support of plaintiffs request for discovery pursuant to Fed. R. Civ. P. 56(f) and *McAllister v. F.D.I.C.*, 87 F. 3d 762, 766 (5th Cir. 1996) ("When a district court makes factual determinations decisive of a motion to dismiss for lack of jurisdiction, it must give plaintiffs an opportunity for discovery and a hearing that is appropriate

to the nature of the motion to dismiss." Plaintiffs' Opposition filed concurrently herewith argues that (1) substantial disputed issues of material fact are evident from Defendants' Motion and its unauthenticated evidence; and (2) Plaintiffs are entitled to conduct discovery before any determination of disputed facts raised in the Motion. Plaintiffs therefore request that the Motion be denied, or, in the alternative, that any ruling on the Motion be held in abeyance until Plaintiffs have had a reasonable opportunity to conduct discovery with respect to the controverted facts discussed below.

2. The first part of this declaration will describe the factual controversies and the second part references Plaintiffs' evidence supporting the existence of the contested facts, as well as the authenticated sources for this proof. The documents contained in the accompanying volumes of exhibits are true and correct copies of documents identified and referenced herein.

**B.  Disputed Facts**

**Whether the Work Performed on the London Avenue, Orleans Avenue and/or 17th Street Canals Were Designed and Constructed as Elements of the Lake Ponchartrain and Vicinity Hurricane Protection Project ("LPVHPP").**

3. The United States cites in support of its contention that these canals are part of the LPVHPP Act of 1965 104-05, 153 162, 169, 175, 183, 190: Public Law No. 89-298, 79 statute 1073, 1077 (1965). The Federal Flood Control Project that was approved can be found at p. 1077 and states as follows:

> The project for Hurricane-Flood Protection on Lake Ponchartrain, Louisiana is hereby authorized substantially in accordance with the recommendations of the Chief of Engineers and House Document Numbered 231, 89th Congress, except that the recommendations of the Secretary of the Army in that document shall apply with respect to the Secra block feature of the project. The estimated cost is $56,235,000.00.

4. House Document 231 describes the approved Project. It has been and continues to be referred to as the "Barrier Plan".

5. At page 46 of House Document Numbered 231, at page 63-64 it states:

IV. PROPOSED SOLUTIONS AND PROJECT FORMULATION at Paragraph 17, Sub-section D (2) describes in its entirety what Congress contemplated to be done pursuant to it's authorization.

Subparagraph G, New Orleans. The existing low levees landward of the seawall in this 4.1- mile reach will be raised in elevation of 11.5 feet, as shown on plate 10. The ramping of streets will be required at 12 locations of levee crossings, as shown in Appendix E. The levee along 5.8 miles of the inner harbor navigation canal can be raised only by construction of a sheet piling wall with concrete cap at elevation 13 feet in the crown of the existing levee. Stop wall structures will be provided at an elevation of 13 feet for crossings of the 7 railway at Seabrook and Florida Avenue, end of the Louisville and Nashville Railroad. Low bridge crossings over London Avenue at Robert E. Lee Boulevard and Gentilly Boulevard, will require minor sandbagging for the occurrence of a designed hurricane.

It is clear that the 1965 Lake Ponchartrain Vicinity Hurricane Protection Project Protection Act did not in fact authorize the Corps of Engineers to do any work, nor did it appropriate any money for work at the 17th Street, London Avenue, Orleans Street Canals.

6. The next public law cited in support of its contention that the outfall canals were designed and constructed as elements of the Lake Ponchartrain Vicinity Hurricane Protection Project is Public Law No.102-377, 106 statute 1315, 1320 (1992). This public law provides as follows at page 5:

Provided further that, using $7,700,000.00 of the funds appropriated herein and $4,300,000.00 of the funds appropriated in public law 102-104, the secretary of the Army acting through the Chief of Engineers, is directed to incorporate parallel protection along the Orleans and London Avenue Outfall Canals into the authorized Lake Ponchartrain Vicinity Hurricane Protection Project and award continuing contracts for construction of this parallel protection to be cost shared as part of the overall project, not separately, in accordance with the cost sharing provisions outlined in public law 89-298 and public law 102-104.

The government fails then to cite the Court to public law 102-104, 105 statues

510 (1991) which at page 5 states "Provided further, that with funds appropriated herein and herein after for the Lake Ponchartrain Vicinity, Louisiana Hurricane Protection Project, the secretary of the Army is authorized and directed to provide parallel hurricane protection along the entire lengths of the Orleans Avenue and London Avenue Outfall Canals by raising levees in and proving flood protection works along and parallel to the entire lengths of the Outfall Canals and other pertinent work necessary to complete an entire parallel protection system, to be cost shared as an authorized project feature, the federal cost participation in which shall be 70 percent of the total cost of the entire parallel protection system, and the total cost participation in which shall be 30 percent of the total cost of such an entire parallel protection system;"

It is crystal clear that what the congress regarded as parallel protection was the construction of levees and not I-Walls. There were no levees constructed on the London Avenue Canal there were no Levees constructed on the 17th Street Canal. Although there were T-Walls and I-Walls constructed on Orleans Canal, for reasons unknown there is a 300 ft gap on the east side of the Orleans Canal and a 75 ft gap on the west side of the Orleans Canal. As such, there remains a substantial question of fact, as to whether or not the Corps acted in compliance with the specific authorizations and directives of Congress.

**Whether the Corps had discretion to grant the Sewerage and Water Board a permit to dredge the 17th Street Canal.**

7. There is no question that the Corp of Engineers was aware of the detrimental effects of dredging on the the existing flood protection in the form of levees on the East and West banks of the 17th Street Canal. As such, the Sewerage and Water Board was required to amend its permit to seek permission to improve the levees on either side of the canal. There is some suggestion that the Corps of Engineers only evaluated the impact of the dredging on the west side of the canal and did not do any evaluation of the impact or did not concern itself with an evaluation of the east side of the canal. There is much needed discovery with regard to understanding what engineering standards and guidelines existed with regard to the construction of sheet pile walls, the potential for seepage and under seepage, and for allowing the dredging permit that would have the bottom of the canal lower than the sheet pile and also a permit. Although it is not clear from the original permit grant in 1984, the "as-built" drawings which

reflect the dredging done by Boh Brothers, show that the dredging included removal of the top of the levee on the east side of the 17th Street Canal. The fact that it was approved is demonstrated by the fact that the as-built drawings are identical to the drawings that appear in the design memorandum for the future flood protection work on the 17th Street Canal.

### C.   Exhibits

See the attached plaintiffs final list of exhibits supporting the existence of the contested facts, as well as the authenticated sources for this proof for the indication of relevance.

Respectfully Submitted,

APPROVED PLAINTIFFS LIAISON COUNSEL

/s/ Joseph M. Bruno
Joseph M. Bruno(La. Bar # 3604)
PLAINTIFFS LIAISON COUNSEL
Law Office Of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com

LEVEE PLAINTIFFS' SUB-GROUP
LITIGATION COMMITTEE

/s/ Gerald E. Meunier
GERALD E. MEUNIER (La. Bar #9471)
LEVEE PSLC LIAISON COUNSEL
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Telephone: (504) 522-2304
Facsimile: (504) 528-9973
E-mail: gmeunier@gainsben.com

For

LEVEE PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE

GERALD E. MEUNIER  
DANIEL E. BECNEL, Jr.  
JOSEPH M. BRUNO  
D. BLAYNE HONEYCUTT  
HUGH P. LAMBERT  
DARLENE JACOBS  
WALTER DUMAS

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Petition upon all counsel of record by placing the same in the United States mail, properly addressed and with first- class postage, or by facsimile or other electronic transmission this 23rd day of July, 2007.

/s/ Joseph M. Bruno

Joseph M. Bruno