UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THE PARFAIT FAMILY, ET AL.          *     CIVIL CASE NO.

VERSUS                              *     07-3500 "K" (1)

THE UNITED STATES OF
AMERICA, ET AL.                     *

**************************************

## CERTIFICATE OF IMPOSSIBILITY OF COMPLIANCE

**COME NOW** Plaintiffs in the above-styled and numbered cause, appearing through undersigned counsel, and hereby certifies that, notwithstanding due diligence on the part of counsel, it is impossible for Plaintiffs and their counsel to comply with the July 11, 2007 Order of the Honorable Stanwood R. Duval, attached as Exhibit No. 1, insofar as the following was specifically ordered:

> "No later than **July 25, 2007,** plaintiffs' counsel in the Parfait case is **ORDERED** to draft two separate amended complaints, one for the claims involving the barge and one for all other claims asserted in the captioned complaint."

Preliminarily, counsel reminds This Honorable Court that the above-styled and numbered cause was filed in order to "cure" the "no jurisdiction" and "prematurity" arguments advanced (successfully to date) by the United States of America in Civil Action No. 05-4419 and consolidated cases, and to perfect timely litigated claims against the United States six (6) months after the presentation of Plaintiffs' administrative claims.

-1-

Counsel for Plaintiffs avers that it is simply impossible to discreetly separate "the claims involving the barge" from "all other claims asserted in the captioned complaint", since there were two separate breaches in the retaining walls on the East side of the Industrial Canal, between the Florida Avenue and Claiborne Avenue bridges, with the southernmost breach allegedly being caused by, or contributed to, by the Ingram Barge ING-4727, but with the northernmost breach having occurred without any "help" from a barge or watercraft.[1]

The claims asserted by Plaintiffs in this litigation are already a matter of public record and will not be repeated here. To summarize, however, the claims implicating the United States of America include the following:

1. The COE's use of an illegal, and artificially low, vertical elevation datum during construction of the retaining walls along this particular stretch of the canal.

2. The failure of the COE to take subsidence into account.

3. Erecting retaining walls which were not armored on the land side.

4. Numbers 1 and 2, supra, resulting in water from the canal overtopping the retaining walls during KATRINA, and for a longer period of time than if they had been built higher.

5. All of which permitted erosion of the soil on the opposite or landward side of the retaining walls, destabilizing the walls and the soils in which they

---

[1] However, the Court should be aware that eyewitness testimony which was recently taken in the consolidated cases bearing Civil Action No. 05-4419 revealed that the northernmost breach did not actually occur until **AFTER** the breach allegedly caused by the Ingram barge occurred, although some overtopping and under-seepage had been observed at the northernmost breach site before the barge came through the retaining wall structure. This eyewitness testimony raises the possibility that the northernmost breach may have been contributed to by the Ingram barge.

>were imbedded, which were not as robust or stable as the soils should have been, since COE regulations provide that levees be built "outwards" for every foot built "upwards", i.e., the survey term "rise-to-run".

The overtopping described, supra, was attributable, in part, to the fact that the U.S. Army Corps of Engineers did not open the lock where the Industrial Canal meets the Mississippi River prior to or during KATRINA, therefore allowing the water level in the canal to rise significantly above where it would have been had the lock been opened.

Plaintiffs also will not repeat their allegations of fault against Washington Group International, Inc., except to emphasize that the extensive excavation work performed by WGI and the Corps of Engineers in the batture area between the canal and the retaining walls over the course of several years prior to KATRINA occurred directly adjacent to the two breaches described, supra.  Refer to the attached aerial photographs, marked as Exhibits Nos. 2 and 3, respectively, which show as follows:

>Exhibit No. 2:  Large sink hole directly opposite the northernmost breach; and

>Exhibit No. 3 – Large sink hole directly opposite the northernmost part of the southernmost breach.  See bottom photograph discreetly marked as Exhibit No. 3.

Plaintiffs aver that the sink holes are more than a mere coincidence and are directly attributable to the work performed negligently by WGI for the COE.  Plaintiffs also aver that the sump holes which are clearly visible in Exhibit Nos. 2 and 3 indicate evidence of "mechanisms of seepage and subsurface erosion", engineering concepts which were recently addressed by Professor Robert G. Bea in Record Document No. 6674 in Civil Action No. 05-4182 as follows:

>>Most egregious were oversimplified assumptions and analyses concerning mechanisms of seepage and subsurface erosion.  Such mechanisms have been well known for decades.  Seepage beneath levees

>is discussed in depth in the USACE Engineer Manual EM 1110-2-1913, *Design and Construction of Levees*, Chapter 5 "Seepage Control." This chapter begins as follows: *"Without control, underseepage in pervious foundations beneath levees may result in (a) excessive hydrostatic pressures beneath an impervious stratum on the landside, (b) sand boils, and (c) piping beneath the levee itself. Under seepage problems are most acute where a pervious substratum underlies a levee and extends both landward and riverward of the levee and where a relatively thin top stratum exists on the landside of a levee."* <u>Inappropriate evaluation and analyses of the hydraulic and strength – deformation characteristics of the highly pervious organic marsh (swamp) layers underlying most of the greater New Orleans area has been a historic and pervasive `blind spot'. Forensic engineering investigations subsequent to hurricane Katrina clearly have identified its potential effects</u> at the SSC breach, the London Canal breaches, many of the important breaches along the Mississippi River Gulf Outlet protective structures, and <u>at the two breaches at the Lower 9th Ward.</u> (emphasis supplied). Record Document No. 6674, Bea Declaration, pp. 37-38.

Although Plaintiffs also aver that negligence *per se,* and a presumption of fault, is applicable to the liability of all parties which had actual or constructive care, custody and control of the Ingram Barge ING-4727, because the barge moorings were supposed to hold the barge during the storm, and not break, the evidence in this case will demonstrate that the moorings broke, at least in part, due to the water level and currents in the canal. Additionally, if one or more of the breaches occurred prior to the barge moorings breaking, then those breaches probably contributed to the barge being sucked away from shore, straining its moorings.

Accordingly, it is simply impossible to separate "the claims involving the barge" from "all other claims asserted in the captioned complaint".

Undersigned counsel for plaintiffs has tried, unsuccessfully, to get the Plaintiffs' Liaison Committee to deal with the issues contained in Judge Duval's Order of July 11 2007, Exhibit No. 1. However, undersigned counsel for plaintiffs is not a member of the

Committee, and his opinions apparently did not carry sufficient "weight" when these issues were first raised with Members of the Committee more than a year ago by correspondence to Mr. Meunier on March 29, 2006, with a copy to Mr. Bruno, a copy of which is attached as Exhibit No. 4.  See paragraph No. 14 on page 15.

Accordingly, plaintiffs and their counsel aver that literal compliance with Judge Duval's Order of July 11, 2007 is impossible.

>LAW OFFICES OF
>ASHTON R. O'DWYER, JR., L.L.C.
>Counsel for Plaintiffs
>
>By: __S/Ashton R. O'Dwyer, Jr._____
>     Ashton R. O'Dwyer, Jr.
>     In Proper Person
>     Bar No. 10166
>     821 Baronne Street
>     New Orleans, LA  70113
>     Tel. (504) 679-6166
>     Fax. (504) 581-4336

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via electronic filing with the Court, this 25th day of July 2007.

>_____S/Ashton R. O'Dwyer, Jr._____