# EXHIBIT 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES       CIVIL ACTION
CONSOLIDATED LITIGATION

NO.: 05-4182

SECTION "K" (2)

FILED IN:  05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073,
05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885,
06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346,
06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931,
06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471,
06-5771, 06-5786, 06-5937, 06-7682, 07-0206, 07-0647,
07-0993, 07-1284, 07-1286, 07-1288, 07-1289

PERTAINS TO: LEVEE

---

LEVEE PLAINTIFFS' ANSWERS AND OBJECTIONS TO UNITED STATES OF
AMERICA'S FIRST SET OF INTERROGATORIES (COMMON LIABILITY)

---

**COMES NOW** the Levee PLSC, which pursuant to ¶ IV(B)(h) of Case Management and

Scheduling Order No. 4 and Rule 33 of the Federal Rule of Civil Procedure, and on behalf of the

consolidated class action representatives ("Responding Parties"), provides the following

objections and responses to the United States' First Set of Interrogatories (Common Liability).

## I. PRELIMINARY STATEMENT

By providing answers to these Interrogatories, Responding Parties do not concede the

relevancy, materiality, or admissibility of any information sought by any of the Requests for

Admissions, or any response hereto. Plaintiffs' responses are made subject to and without waiver

of any objections as to the relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the information referred to, or of the responses given herein, or of the subject matter thereof, in any proceeding, including any arbitration of this action or any other subsequent proceeding.

Further, Responding Parties' responses have been made after a reasonable inquiry and are based solely on information presently known to them before they have had any opportunity to review any discovery responses or documents produced by Defendants in this litigation.

## II.  OBJECTIONS AND/OR ANSWERS TO INTERROGATORIES

### INTERROGATORY NO.1:

If you contend that the United States bears any responsibility for injury to plaintiffs or damage to their property, whatsoever, due to any act or failure to act of any employee of any co-defendant (listed at pages 3-4 of the Complaint), or for any co-defendant's acts or failures to act in their entirety, state your contention and provide in detailed narrative form the factual basis for the contention.

### ANSWER NO.1:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds that it is vague, ambiguous, and overbroad as to time.  Specifically, the phrase "detailed

narrative form" is not limited to facts, but may also encompass the thoughts, impressions and

ideas of Plaintiffs' counsel, and the opinions of Responding Parties' experts.  Because of the

breadth of the phrase, Responding Parties therefore further object to this interrogatory on the

grounds that it seeks information protected from disclosure by the attorney-client privilege and

the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this

interrogatory, *see* Superceding Master Consolidated Class Action Complaint.

## INTERROGATORY NO.2:

If you base your complaint, in whole or in part, on any violation by an employee of the

United States of America or any federal or state statute, regulation, policy, or other similar law

or directive, state your contention and provide in detailed narrative form the factual basis for the

contention.

## ANSWER NO.2:

The United States, through the USACE, negligently failed to follow federal regulations

and its own engineering standards and procedures, in regard to the issuance of a permit to dredge

the 17th Street Canal.  The United States through the USACE violated federal law to the extent

the River & Harbors Act prohibits the granting of a dredging permit that is contrary to the public

interest.  Published federal regulations (including 33 CFR §320.4) established general policies

for the federal government's evaluation of permit applications, and require that the reasonably

expected benefits of the requested dredging be balanced against the reasonably foreseeable harm

from same, including possible harm related to detrimental effects on flood control. The United

States through the USACE violated this policy in not considering the impact of its approval of the dredging permit for the 17th Street Canal, and in fact disregarded overwhelming evidence to the effect that approval of the permit would dangerously compromise the 17th Street Canal's flood protection levee.

The United States, defendant Corps negligently issued a dredging permit which caused and allowed changes to occur in the 17th Street Canal bottom, leading to subsurface and soil destabilization of the canal levee.

To the extent the Flood Control Act of 1928 does apply, the United States, through the USACE, defendant Corps breached its affirmative duty to institute proceedings to acquire either the absolute ownership of the lands adjacent to the 17th Street Canal which was subject to overflow and damage, or to acquire the floodage rights over such lands, as provided for in 33 U.S.C. §702c.

**INTERROGATORY NO.3:**

Identify all documents that you contend support each of your allegations and contentions in this lawsuit.

**ANSWER NO.3:**

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.

Responding Parties object to this interrogatory to the extend that it calls for information protected from disclosure by the attorney-client privilege or the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this

interrogatory, Responding Parties state that they are still in the process of assessing the mechanism by which the USACE's negligence caused Responding Parties' damages.

**INTERROGATORY NO.4:**

Identify all witnesses that you contend have information relevant to the allegations and contentions in this lawsuit.

**ANSWER NO. 4:**

Responding Parties object to this interrogatory on the grounds that it is overbroad, and seeks information protected from disclosure by the attorney-client privilege and attorney work product doctrine.

Responding Parties state that they are still in the process of assessing the mechanism by which the USACE's negligence caused Responding Parties' damages, and are assessing the identities of persons will have information relevant to the allegations and contentions in this lawsuit.

**INTERROGATORY NO.5:**

Identify any and all past or present employees, agents, or servants of the USACE or any other United States of America entity, who you interviewed, consulted, received information from, or have been contacted by, regarding your allegations and contentions in this lawsuit.

**ANSWER NO. 5:**

Responding Parties object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and attorney work product doctrine.

Responding Parties further object to this interrogatory on the grounds that it is vague and ambiguous and overbroad. Specifically, the question asks for the identity of parties with whom responding parties "had any contact whatsoever relevant to these consolidated cases." This question, as phrased, would necessarily include Plaintiffs' counsel or consulted hired by Plaintiffs' counsel, as well as anyone with whom Plaintiffs had a casual conversation concerning this litigation and the facts and events underlying this lawsuit.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they are still in the process of assessing the mechanism by which the USACE's negligence caused Responding Parties' damages.

**INTERROGATORY NO.6:**

If you contend that any department, agency, branch, employee, or other entity of the United States of America, in any way, negligently designed, constructed, maintained or operated any part of the Lake Ponchatrain & Vicinity Hurricane Protection System (LP&VHPS) so as to cause breaches during or after Hurricane Katrina at or along the 17th Street Canal, state your contention and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO.6:**

A legal responsibility was owed to plaintiffs by the defendant Corps, to devise, implement, and maintain the Lake Pontchartrain Vicinity Hurricane Protection Project in a manner that afforded plaintiffs protection against the catastrophic failure and deficiencies giving rise to this litigation.

In regard to its deliberate departures from authorized, current and safe criteria, the United States, through the USACE, instead assured that an inherently flawed Project would exist as of the time of this catastrophe.

The United States is liable to plaintiffs for its negligence as well as its willful and wanton recklessness in causing or allowing the serious failures and deficiencies of this Project, which in turn caused or substantially contributed to the catastrophic harm suffered by plaintiffs.

The 17th Street Canal was not an authorized federal flood control project. Accordingly, the United States enjoys no immunity under 33 U.S.C. §702c with respect to the alleged failures and deficiencies in the levees and flood walls of the 17th Street Canal.

The design of the I-walls for the 17th Street Canal was never authorized by Congress. The design and construction of these I-walls therefore was not a flood protection project authorized by Congress, making the immunity provision of 33 U.S.C. §702c inapplicable.

The United States, through the USACE, knew or should have known that the design and construction of these levees and flood walls were impracticable, unsafe, and subject to overflow and damage, putting plaintiffs' safety and property at risk.

To the extent the Flood Control Act of 1928 does apply, the United States, through the USACE, breached its affirmative duty to institute proceedings to acquire either the absolute ownership of the lands adjacent to the canal which was subject to overflow and damage, or to acquire the floodage rights over such lands, as provided for in 33 U.S.C. §702c.

**INTERROGATORY NO.7:**

If you contend that any department, agency, branch, employee, or other entity of the United States of America, in any way, negligently designed, constructed, maintained or operated any part of the LP&VHPS so as to cause breaches during or after Hurricane Katrina at or along the London Avenue Canal, state your contention and provide in detailed narrative form the factual basis for the contention.

## ANSWER NO. 7:

A legal responsibility was owed to plaintiffs by the defendant Corps, to devise, implement, and maintain the Lake Pontchartrain Vicinity Hurricane Protection Project in a manner that afforded plaintiffs protection against the catastrophic failure and deficiencies giving rise to this litigation.

In regard to its deliberate departures from authorized, current and safe criteria, the United States, through the USACE, instead assured that an inherently flawed Project would exist as of the time of this catastrophe.

The United States is liable to plaintiffs for its negligence as well as its willful and wanton recklessness in causing or allowing the serious failures and deficiencies of this Project, which in turn caused or substantially contributed to the catastrophic harm suffered by plaintiffs.

The London Avenue Canal was not an authorized federal flood control project. Accordingly, the United States enjoys no immunity under 33 U.S.C. §702c with respect to the alleged failures and deficiencies in the levees and flood walls of the 17th Street Canal.

**Page 8 of 31**

The design of the I-walls for the London Avenue Canal was never authorized by Congress. The design and construction of these I-walls therefore was not a flood protection project

authorized by Congress, making the immunity provision of 33 U.S.C. §702c inapplicable.

The United States, through the USACE, knew or should have known that the design and construction of these levees and flood walls were impracticable, unsafe, and subject to overflow and damage, putting plaintiffs' safety and property at risk.

To the extent the Flood Control Act of 1928 does apply, the United States, through the USACE, breached its affirmative duty to institute proceedings to acquire either the absolute ownership of the lands adjacent to the canal which was subject to overflow and damage, or to acquire the floodage rights over such lands, as provided for in 33 U.S.C. §702c.

**INTERROGATORY NO.8:**

If you contend that any department, agency, branch, employee, or other entity of the United States of America, in any way, negligently designed, constructed, maintained or operated any part of the LP&VHPS so as to cause breaches during or after Hurricane Katrina at or along the Inner Harbor Navigational Canal, state your contention and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO. 8:**

A legal responsibility was owed to plaintiffs by the defendant Corps, to devise, implement,

and maintain the Lake Pontchartrain Vicinity Hurricane Protection Project in a manner that afforded plaintiffs protection against the catastrophic failure and deficiencies giving rise to this litigation.

In regard to its deliberate departures from authorized, current and safe criteria, the United States, through the USACE, instead assured that an inherently flawed Project would exist as of the time of this catastrophe.

The United States is liable to plaintiffs for its negligence as well as its willful and wanton recklessness in causing or allowing the serious failures and deficiencies of this Project, which in turn caused or substantially contributed to the catastrophic harm suffered by plaintiffs.

The IHNC was not an authorized federal flood control project. Accordingly, the United States enjoys no immunity under 33 U.S.C. §702c with respect to the alleged failures and deficiencies in the levees and flood walls of the IHNC.

The design of the I-walls for the IHNC was never authorized by Congress. The design and construction of these I-walls therefore was not a flood protection project authorized by Congress, making the immunity provision of 33 U.S.C. §702c inapplicable.

The United States, through the USACE, knew or should have known that the design and construction of these levees and flood walls were impracticable, unsafe, and subject to overflow and damage, putting plaintiffs' safety and property at risk.

To the extent the Flood Control Act of 1928 does apply, the United States, through the USACE, breached its affirmative duty to institute proceedings to acquire either the absolute ownership of the lands adjacent to the canal which was subject to overflow and damage, or to acquire the floodage rights over such lands, as provided for in 33 U.S.C. §702c.

**Page 10 of  31**

**INTERROGATORY NO.9:**

you contend that any department, agency, branch, employee, or other entity of the United States of America in any way caused injury to you or damage to your property by issuing a permit on June 13, 1984, or at any other time, "to dredge to enlarge and maintain an area and install and maintain flood walls and mooring structures in the 17th-Street Canal. .." (see Complaint ¶ 48), state your contention and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO.9:**

In 1978, the New Orleans Sewerage & Water Board ("SWB") retained a civil engineering firm, Modjeski &Masters ("M&M"), to provide a plan for the design and implementation of the dredging project; and, on August 23, 1979, M&M submitted a second dredging permit application on behalf of the SWB. The latter application was resubmitted on December 29, 1980, after environmental concerns were raised relative to the disposal of the dredged material in Lake Pontchartrain and on the banks of the canal.

On January 28, 1981, M&M responded to inquiries about the impact of the dredging on existing levees, by providing the USACE with its first memorandum addressing the stability of the

existing levees and sheet pile wall along the canal. The memo indicated that on three of the six test

locations, the factors of safety fell below the required values set by the USACE. The handwritten report specifically stated that "two locations yielded low factors of safety due to...the existence

of

very soft clays...." On February 6, 1981, M&M provided the USACE with a stability analysis of

the existing sheet pile wall along the east side of the canal, north of Hammond Highway. This

report stated that "portions of the wall are extremely unstable as they now stand. This instability,

even under normal water level situations is due to...the soft to very soft clays which make up the

soil stratum...."

On March 5, 1981, the USACE issued an internal memorandum addressing the soil

stability analyses provided by M&M, which acknowledged that, in connection with the proposed

dredging of the canal, factors of safety were substantially below the minimum 1.30 factor of

safety, requiring that the project should be redesigned.  The specific location of the canal's levee

system to which the latter memo refers, coincides with the area where the canal levee breached

following Hurricane Katrina.

On March 31, 1981, the USACE held a public hearing regarding the 17th Street Canal

dredging permit application. There was discussion at this hearing about whether raising the

existing sheet pile wall along the canal, as opposed to the requested dredging to deepen the

canal, would provide a greater cross-section and greater pump capacity. The consulting engineer

representing M&M voiced his concerns about widening the canals, and stated that not only were

the levees already in violation of the Corps' engineering standards for levee stability, but that

dredging attempts to remove material adjacent to the levees would only worsen the stability

problem.

Despite knowing of these serious safety concerns, the USACE ignored the warnings and

negligently and/or recklessly approved the dredging permit application _

**Page 13 of  31**

**INTERROGATORY NO. 10:**

If you contend that any department, agency, branch, employee, or other entity of the United States of America caused injury to you or damage to your property due to any pre-Katrina dredging (see Complaint ¶ 32) by compromising the integrity of any canal's (17th Street, London Avenue, or IHNC (west side)) flood protection levee or system (see Complaint ¶ 200), state your contention and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO. 10:**

*See* Responding Parties' answers to interrogatories 6, 7, and 8, *supra*.

**INTERROGATORY NO. 11:**

If you contend that any department, agency, branch, employee, or other entity of the United States caused injury to you or damage to your property through the construction of "I-walls" rather than "levees or T-walls" (see Complaint ¶ 58), at any place along the 17th Street, London Avenue, or IHNC (west side) Canals, state your contention and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO. 11:**

Although the USACE's Manual on Engineering, Design and Construction of Levees dated April 30, 2000 states that for stability reasons, flood walls utilizing the "I-wall" design rarely exceed seven (7) feet above ground surface, and that an inverted "T-wall" design is used when walls higher than seven feet are required. The "I-walls" on the 17th Street Canal, the

London Avenue Canal, and the IHNC nonetheless were built in concrete sections that rise

higher.  For example, "I-walls" on the 17th Street Canal rise eleven (11) feet above the ground.

**INTERROGATORY NO. 12:**

If you contend that any department, agency, branch, employee, or other entity of the

United States of America caused injury to you or damage to your property in any way as a

result of acts or omissions related to soil quality or condition, including but not limited to, soil

borings, "slope stability" (see Complaint ¶ 90) and/or subsidence of the soil or other material,

beneath or adjacent to any levee or flood wall of the 17th  Street, London Avenue and Inner

Harbor Navigation (west side) Canals, state your contention and provide in detailed narrative

form the factual basis for the contention.

**ANSWER NO. 12:**

Upon information and belief, a 17th Street Canal soil analysis was performed in 1981 by

Eustis Engineering, which entailed borings along the canal's levee.  The borings revealed

alternating layers of soft clay and black humus or peat, a soft, spongy soil comprised of decaying

trees and other organic material, occurring from fifteen to twenty-one feet below sea level.  The

layer of humus or peat substantially reduced the strength of the soil, particularly its strength in

resisting lateral pressure and its ability to support the levee and flood walls under pressure

from flood water.

Despite the discovery of such soil material, the flood walls of the 17th Street Canal levee

were constructed with steel sheet piling driven to a depth that was seventeen (17) feet below sea

level. At such depths, the protective sheet pilings ended above or in the middle of layers of weak

soil.  Additionally, the soil adjacent to the 17th Street Canal levee had subsided significantly after construction of the levee and flood wall, thereby significantly reducing the amount of support that the land behind the levee provided against the pressure of flood waters.

The entirety of the London Avenue Canal is constructed over beach sands of the Pine Island trend. The sands are encountered about 13 to 15 feet below the crowns of the I-wall levees of the canal, but are deeper at the vicinity of the northern breach which forms part of the catastrophe giving rise to this litigation (station 113 to 118). The sand is covered with a veneer of peaty swamp deposits.  Of primary importance in constructing an I-wall atop an earthen levee are the composition of the soil into which the sheet piles will be driven and upon which the I-wall will rest, and the depth of the sheet piles as dictated by the composition of the soil.

Soil borings of the levee at the site of London Avenue Canal south breach, which contributed to the catastrophe giving rise to this litigation, indicate the presence of sand at a depth of 10 to 15 feet below sea level.

Soil borings of the levee at the site of London Avenue Canal north breach, which also contributed to the catastrophe, indicate conditions similar to those of the south breach site, with the layer of sand present at the north breach site at a depth of 12 feet below sea level, as well as a layer of peat, a highly porous material that shrinks when dry and expands when wet, and makes for highly unstable soil conditions.

The sheet piles supporting the flood wall monoliths at the site of the London Avenue Canal north breach were driven to a depth of 14 feet below sea level. Thus, the bottom of the sheet piles terminated within a layer of sand.

**INTERROGATORY NO. 13:**

If you contend that any department, agency, branch, employee, or any other entity of the United States of America caused injury to you or damage to your property in any way as a result of breaches of the 17th Street, London Avenue, and IHNC (west side) Canals, due to design or construction of, or maintenance under, the Parallel Protection Plan (see Complaint ¶ 57), the Barrier Plan (see Complaint ¶ 56), or any other proposed or adopted hurricane protection plan, state your contention and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO. 13:**

*See* Responding Parties' answers to interrogatories 6, 7,and 8, *supra.*

**INTERROGATORY NO. 14:**

If you contend that any department, agency, branch, employee, or any other entity of the United States of America caused injury to you or damage to your property by adopting, selecting or applying any datum that you allege was inappropriate or wrongly chosen or adopted, including but not limited to the National Geodetic Vertical Datum of 1929.(see Complaint ¶ 114), state your contention and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO. 14:**

The USACE elected to base the Project's overall design specifications on the wrong elevation datum.  The USACE applied the National Geodetic Vertical Datum of 1929 ("NGVD29"), even though it was aware of the fact that NGVD29 was not any longer equal to —

and interchangeable with — local mean sea level ("LMSL"), and that LMSL was the only relevant datum for superimposition of hurricane surge and wave height from a 1950's era oceanographic analysis.  However, when the Corps' adopted design specifications for the Lake Pontchartrain Project in 1965, zero NGVD29, was already between 1.3 and 1.6 feet below LMSL at different parts of the system, and the flood walls crowns were constructed lower by this margin.

This design flaw was perpetuated in the construction of hurricane protection works when the USACE's New Orleans District adopted a policy in 1985, with the approval of the USACE Lower Mississippi Valley Division (LMVD), to explicitly use the outdated 1929 NGVD29 adjustment for elevation control.  As a result, no provision was made to account for the 3 to 4 feet per century subsidence rates characteristic of the greater New Orleans metropolitan area even though this rate was known at the time of congressional authorization of the Lake Pontchartrain Project.

Crown elevation deficiencies ranging up to 6 feet at the time Katrina struck resulted in prolonged overtopping of flood walls and levees along IHNC that otherwise would have been overtopped only briefly. Prolonged overtopping led to catastrophic breaches into the Orleans Metro area west of the IHNC.

**INTERROGATORY NO. 15:**

If you contend that any department, agency, branch, employee, or other entity of the United States of America caused injury to you or damage to your property in any way by adopting, selecting or-applying the 1959 Standard Project Hurricane criteria in anyway to the

LP&VHPS, state your contention and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO. 15:**

The flood control structures that surround the New Orleans metropolitan area were constructed, in part, under the authority of the "Lake Pontchartrain, Louisiana and Vicinity, Hurricane Protection Project" (hereinafter referred to as "Lake Pontchartrain Project"). The legislatively-mandated overall design criterion of the Lake Pontchartrain Project mandated by Congress was to protect the area from "the most severe combination of meteorological conditions considered characteristic for the region."

The USACE expected these conditions to occur once in 200 to 300 years, and they were deemed to be equivalent with the "Standard Project Hurricane" ("SPH"). However, the USACE based its overall design specifications on the 1959 U.S. Weather Bureau 1-in-100 year SPH, which was contradictory to Congress' mandate to protect from a 1-in-200 years to a 1-in-300 year hurricane. Moreover, the 1959 SPH was known to be obsolete by 1972, just as construction of initial parts of the Lake Pontchartrain Project, the flood walls along the IHNC, was getting underway.

The 1959 SPH specification of maximum sustained wind speeds of 107 mph was increased by the National Weather Service to 129 mph. An increase of 20% in maximum winds can lead up to a 40% elevation of maximum surge elevation.

In 1979, the National Oceanic and Atmospheric Administration ("NOAA") raised the maximum sustained winds again to 140 mph, a category 4 hurricane (Technical Report NWS 23),

which further exacerbated the Corps' design deficiencies.  In 1981, the Office of the Chief of

Engineers in Washington issued Engineering Regulation ER 1110-2-1453. The regulation

provides direction for the development of SPH and Probable Maximum Hurricane wind fields

along the Gulf and east coasts of the United States. The regulation states specifically:

> "5.     Requirements. ER 1110-2-1453 provides
>         direction on the selection of the level of protection to
>         be afforded by Corps flood damage prevention
>         projects in urban areas. All field operating activities
>         having Civil Works responsibilities are required to
>         use the National Oceanic and Atmospheric
>         Administration (NOAA) Technical Report NWS 23
>         for specifying meteorological criteria for SPH and
>         PMH wind fields along the gulf and east coasts of the
>         United States."

Notwithstanding this order to revise all SPH-based analysis to reflect the new

understanding of the threat, the Corps elected to base its designs for the Lake Pontchartrain

Project on the 1959 SPH.

## INTERROGATORY NO. 16:

If you contend that any department, agency, branch, employee, or any other entity of the

United States of America selected or used, or required to be used, any material inferior in quality

or condition in the construction of any levee, flood wall, or any other part of the LP&VHPS that

caused any injury to you or damage to your property as a result of any failure of any flood wall,

levee or other hurricane or flood protection along or  adjacent to the 17th Street, London Avenue,

or Inner Harbor Navigation (west side) Canals, state your contention and provide in detailed

narrative form the basis for the contention.

## ANSWER NO. 16:

Responding Parties include unsuitable soils, improper elevation datum, and an inappropriate SPH model, *inter alia*, as responsive to the foregoing interrogatory. Answering further, *see* Responding Parties' answers to interrogatories 12, 14 and 15, *supra*.

## INTERROGATORY NO. 17:

If you contend that any department, agency, branch, employee, or any other entity of the United States of America caused any injury to you or damage to your property by designing, using, constructing, or causing to be designed, used, or constructed, in any way (including but not limited to, type of material and depth of installation), "I-walls", concrete slab sections (monoliths), sheet piles or levees, along the 17th Street, London Avenue or IHNC (west side) Canals, state your contention and provide in detailed narrative form the factual basis for the contention.

## ANSWER NO. 17:

Although the USACE's Manual on Engineering, Design and Construction of Levees dated April 30, 2000 states that for stability reasons, flood walls utilizing the "I-wall" design rarely exceed seven (7) feet above ground surface, and that an inverted "T-wall" design is used when walls higher than seven feet are required. The "I-walls" on the 17th Street Canal, the London Avenue Canal, and the IHNC nonetheless were built in concrete sections that rise higher. For example, "I-walls" on the 17th Street Canal rise eleven (11) feet above the ground.

## INTERROGATORY NO. 18:

If you contend that any department, agency, branch, employee, or any other entity of the United States of America caused any injury to you or damage to your property as a result of flood proofing or any other repair or maintenance of the Filmore Avenue or Mirabeau Bridges over the London Avenue Canal, or any other bridge over the 17th Street Canal or any where else, state your contention and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO. 18:**

_____Denied because discovery has not progressed to a point where Plaintiffs have sufficient information to admit or deny this request for admission.

**INTERROGATORY NO. 19:**

If you contend that any department, agency, branch, employee, or any other entity of the United States of America caused any injury to you or damage to your property due to any failure of the flood walls, levees or other part of the hurricane protection on the IHNC; (west side) as a result of waters carried by the Gulf Intracoastal Water Way during or after Katrina, state your contention and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO. 19:**

Denied because discovery has not progressed to a point where Plaintiffs have sufficient information to admit or deny this request for admission.

**INTERROGATORY NO. 20:**

.If you contend that any department, agency, branch, employee, or any other entity of the United States of America caused any injury to you or damage to your property due to any failure of the flood walls, levees or other part of the hurricane protection on the 17th Street, London Avenue, or IHNC (west side) Canals as a result of waters carried by the Mississippi River Gulf Outlet, state your contention and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO. 20:**

The Fish and Wildlife Coordination Act ["FWCA"], 16 U.S.C. § 662, as amended in 1946 and 1958, required coordination between any federal agency, proposing to "impound," "divert," or "control" a waterway or body of water, and the Fish and Wildlife Service. The MR-GO is such a waterway.. The FWCA statute also required the USACE to consult with officials of the State of Louisiana and DOI during all phases of the MR-GO project, including investigation, planning and construction. The USACE was also directed therein to incorporate any of the observations or concerns raised by these state and federal agencies into any plans and specifications for the design and construction of the MR-GO. The USACE failed in its duties under said laws. In fact, a 1958 DOI report concluded that detailed investigations, coordinating hydrological, vegetative, fish and wildlife findings, as well as a model study would be a prerequisite to predictions of the MR-GO's effects and establishment of mitigatory measures. 1958 Interior Report at 19. The report further concluded that "...this project should be thoroughly investigated from the biological standpoint before construction through the marshes below Paris Road and the Sound is undertaken." 1958 Interior Report at 19-20. A four year regime of testing and study to assess the impact of the MR-GO

was recommended. The USACE negligently, recklessly, wantonly, and illegally proceeded to build the MR-GO without waiting for the completion of the essential four year study requested by the DOI. The USACE knew or should have known that construction of the MR-GO through the wetlands from the GIWW to the Gulf would devastate Louisiana and wetlands and result in the negligent, reckless, wanton, or illegal destruction by the USACE of the best "speed-brake" and inhibitor to tidal surges.

On September 25, 1951, the USACE submitted a report to Congress with its recommendations for construction of the MR-GO ["MR-GO Authorization Report"]. This report contained a letter from the former USACE Chief of Engineers stating that the proposed MR-GO would be connected to the IHNC/Industrial Canal by its own *separate* canal running parallel to the GIWW. MR-GO Authorization Report at 5. However, as built, such a separate parallel canal was not built and, instead, the USACE unilaterally deviated from the MR-GO Authorization Report and did not dig a separate parallel canal to the IHNC/Industrial Canal. Rather the USACE connected the MR-GO into the existing GIWW and significantly deepened and widened the GIWW from the point of connection to the IHNC/Industrial Canal, thus increasing vessel traffic and producing significantly increased hydrologic consequences that were a proximate cause of the flooding of Greater New Orleans.

The MR-GO Authorization Report further included a report from the USACE's Board of Engineers recommending further studies into the MR-GO's impact on the Louisiana coast and opined: "... [t]he exact location of the outlet to the Gulf and the alignment of the seaway should be determined after more complete studies of sand movement, wave action, and local currents are made in cooperation with the Beach Erosion Board. Hence, if the improvement is authorized, ample

provision should be made for modifications of the location and alignment of the canal should further studies show that a more suitable location is available." MR-GO Authorization Report at 14. No such studies were done and thus the USACE did not consider alternatives that would be less destructive to the lands and wetlands of Louisiana.

The USACE further failed to follow requirements of 33 CFR §§ 335-38, particularly 33 CFR § 336.1(c)(4) and 33 CFR § 320.4(b) and Executive Order 11990. The USACE deviated from and/or failed to execute their dredging activities (maintenance and operation of the MR-GO) in the manner required by the USACE pursuant to 33 CFR §§ 337.5 and 338.2. Furthermore, the Corps failed to follow requirements of the State of Louisiana (made applicable by 33 CFR § 337.2) including those contained in Chapter 7, Sections 701 and 707 of the Louisiana Administrative Code relating to dredging activities.  In its actions and omissions set forth above, the USACE also violated several federal and state statutes implicated in the design, construction, maintenance and operation of the MR-GO, including the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332 (c); the Water Resources Development Act of 1990 (WRDA), 33 U.S.C. §§ 2316 and 2317; the Coastal Zone Management Act, 16 U.S.C. § 1452, *et. seq.* and the Louisiana State and Local Coastal Resources Management Act, La. R.S. 49:214.21 *et. seq.*  Additionally, the USACE and its contractors (with the actual knowledge or under the direction of the Corps) illegally and improperly transported or otherwise disposed of dredge spoil including, but not limited to in negligent and illegal placement of said spoil as spoil banks.

After hearings, Congress authorized the construction of the MR-GO in 1956 (P.L.-455) and the record thereof that the USACE unlawfully did not follow the Congressionally authorized design, route, or alignment, and it did not conduct required studies, consultation and coordination to mitigate

adverse environmental impact to Louisiana in the destruction of highly productive estuarine water and marsh areas; nor did the USACE reduce or eliminate what would prove to be disastrous hydrologic consequences to Greater New Orleans.

After the hurricanes of 1947 and 1965 (Betsy), the USACE knew or should have known of the hazards posed by the MR-GO and the effects of its negligent design, construction, operation and maintenance. Additionally, the USACE knew or should have known of the high probability of future damages likely to result from the inundation of Greater New Orleans. In recognition of the probability of further future damage to Greater New Orleans from the MR-GO project consequences, the USACE illegally and/or negligently (or through gross negligence, wonton and/or reckless acts and/or omissions) failed to close the MR-GO, construct Control Structures, and/or constructed levees, floodwalls, and other structures in a defective, negligent, sub-standard fashion; such "Levee" allegations are detailed separately herein.

Virtually from inception of planning and construction, the USACE received many warnings of impending disaster that would fall upon Greater New Orleans as a result of the negligent design, construction, operation and maintenance of the MR-GO and the failure of the USACE to timely do what it should have done to eliminate or at least ameliorate the impending inundation of Greater New Orleans. Such notices were received from private citizens, scholars, scientists, engineers, journalists, municipal and Parish government (especially that of St. Bernard), and the State of Louisiana. Such notices put the USACE repeatedly on notice of massive destruction to marshes, wetlands and other land and forest areas -- all resulting from the negligent and/or faulty inspection, design, construction, operation and maintenance of MR-GO.

As a result of the negligence and/or fault of the USACE, during and/or immediately following Hurricane Katrina an accelerated/enhanced hurricane surge was propelled up the MR-GO rushing through and/or over the so-called levees and/or I-Walls and/or spoil banks, including but not limited to a Forty Arpent Canal, and then said surge further rushed through the MR-GO/GIWW in an even greater surge smashing into the I-Walls and/or levees along the MR-GO/GIWW and the IHNC/Industrial Canal causing massive inundation of all of the class geography.

**INTERROGATORY NO. 21:**

If you contend that any department, agency, branch, employee, or other entity of the United States of America caused injury to you or damage to your property due to any failure of the flood walls, levees or other hurricane or flood protection of the 17th Street, London Avenue or the IHNC (west side) Canals as a result of any alleged damages caused by the MRGO or GIWW to wetlands, marshes, or other low lying areas, state your contentions and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO. 21:**

*See* Responding Parties' answer to interrogatory number 20, *supra.*

**INTERROGATORY NO. 22:**

If you contend that jurisdiction rests in admiralty for all or any part of this lawsuit, state with particularity your legal contention and the facts upon which you base the contention.

**ANSWER NO. 22:**

*See* the Levee Plaintiffs' recent "Memorandum in Opposition to the Dismissal of Certain Defendants Based Upon the Louisiana Law of Peremption" which sets forth in detail the Levee Plaintiffs' arguments regarding admiralty jurisdiction.

**INTERROGATORY NO. 23:**

If you contend that any department, agency, branch, employee, or any other entity of the United States of America caused injury to you or damage to your property in any way other than as you have stated in response to the above interrogatories, state your contention and provide in detailed narrative form the factual basis for the contention.

**ANSWER NO. 23:**

Objection. This interrogatory presently calls for speculation and cannot be answered. If prospective discovery discloses other causes of damage or injury, they will be identified in accordance with the Federal Rules of Civil Procedure and the Court's case management orders.

**INTERROGATORY NO. 24:**

Identify all experts who you intend to call at the trial of this matter, provide their opinions and conclusions, state the bases for those opinions and conclusions, and provide all other expert disclosures and reports that are required by the Federal Rules of Civil Procedure.

**ANSWER NO. 24:**

Responding Parties object to this interrogatory to the extent that it calls for information

protected from disclosure by the attorney-client privilege or the attorney work product doctrine.

Responding Parties further object to this interrogatory to the extent it seeks the premature

disclosure of expert witnesses and expert testimony before the September 17, 2007 deadline for

Responding Parties' list of all expert witnesses who may be used at trial or in connection with

motions concerning common liability issues; before the October 31, 2007 deadline to supplement

Responding Parties' initial expert witness disclosures; and before the May 30, 2008 deadline for

Responding Parties' expert reports. *See* CMO No. 4 at p. 36, ¶ (E)(1)-(3). Responding Parties

will identify all experts whom they intend to call at the trial of this matter and provide their

opinions and conclusions, the bases for those opinions and conclusions, and all other expert

disclosures and reports, that are required by the Federal Rules of Civil Procedure pursuant to the

deadlines mandated in CMO No. 4.

**INTERROGATORY NO. 25:**

Identify any engineering or construction standard, practice, guideline, or procedure that

you contend the USACE or any other department, agency, branch, employee, or other entity of

defendant United States of America violated that you contend caused or contributed to failure of

any flood walls, levees or other hurricane or flood protection of the 17th Street, London Avenue,

or IHNC (west side) Canals, and state in detailed narrative form the factual basis for the

contention.

**ANSWER NO. 25:**

*See, e.g.,* Responding Parties' answer to interrogatory 20, *supra.*

**RESPECTFULLY SUBMITTED:**

**LEVEE LITIGATION GROUP**

By:___s/Joseph M. Bruno_____
Joseph M. Bruno (#3604)
Law Office of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile:(504) 581-1493
E-Mail:jbruno@brunolaw.com
Plaintiffs' Liaison Counsel

-and-

GERALD E. MEUNIER (La. Bar #9471)
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Phone:504/522-2304
Facsimile:504/528-9973
E-mail:gmeunier@gainsben.com
Levee PSLC Liaison Counsel

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 26th day of June, 2007.

<div align="center">

/s/ Joseph M.Bruno

Joseph M. Bruno

</div>