Exhibit    A

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES          CIVIL ACTION
      CONSOLIDATED LITIGATION

                                         NO. 05-4182

                                         SECTION "K" (2)


FILED IN:    05-4181, 05-4182, 05-5237, 05-6073, 05-6314, 05-6324,
             05-6327, 05-6359, 06-0225, 06-0886, 06-1885, 06-2152,
             06-2278, 06-2287, 06-2824, 06-4024, 06-4065, 06-4066,
             06-4389, 06-4634, 06-4931, 06-5032, 06-5155, 06-5159,
             06-5161, 06-5260, 06-5162, 06-5771, 06-5937, 07-0206,
             07-0621, 07-1073, 07-1271, 07-1285

PERTAINS TO: MRGO

---

### THE MRGO PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT UNITED STATES' FIRST SET OF INTERROGATORIES

---

PURSUANT TO ¶ IV(B)(h) of Case Management and Scheduling Order No. 4 and Rule 33 of the Federal Rules of Civil Procedure, the MRGO PSLC, on behalf of the consolidated class action representatives, provides the following amended objections and responses to Defendant the United States of America's first set of interrogatories.

### PRELIMINARY STATEMENT

Responding Parties do not concede the relevancy, materiality, or admissibility of any information sought by any of the interrogatories or any response hereto. Responding Parties' responses are made subject to and without waiver of any objections as to the relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the information referred to or of the responses given herein, or of the subject matter thereof, in any proceeding, including any arbitration of this action or any other subsequent proceeding.

Further, Responding Parties' responses have been made after a reasonable inquiry and

are based solely on information presently known to them before they have had an opportunity to review any discovery responses or documents produced by Defendants in response to their discovery requests.  Accordingly, Responding Parties' responses are made without prejudice to Responding Parties' right to supplement, amend, or correct these responses or to argue other evidence during any proceeding related to the issues presented herein.

## **OBJECTIONS AND RESPONSE TO INTERROGATORIES**

INTERROGATORY NO. 1:

Explain in full narrative detail how the MRGO ought to have been designed, engineered, and constructed "to take account of the waterway's inherent and known capability of serving as a funnel or conduit for rapidly-accelerated, storm-driven surge." MRGO Master Complaint  ¶ 23.


RESPONSE TO INTERROGATORY NO. 1:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds that it is vague, ambiguous, and overbroad as to time.  Specifically, the phrase "full narrative detail" is not limited to facts, but may also encompass the thoughts, impressions and ideas of Plaintiffs' counsel, and the opinions of Responding Parties' experts.  Because of the breadth of the phrase, Responding Parties therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.  Moreover, the question misstates the nature and substance of Plaintiff's complaint.  Specifically, Responding Parties' contend the negligent design, engineering, or construction of the MR-GO originally created the "waterway's inherent and known capability of serving as a funnel or conduit for rapidly -accelerated, storm-driven surge."

The question, as phrased, presupposes a pre-existing problem that was not "accounted for."

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigation the design, engineering and construction aspects of the MR-GO.  Preliminarily, Responding Parties believe that, at a minimum, the MR-GO should never have been connected or tied to the GIWW which created a "funnel" that combined the force and water levels of storm surge from Reach 2 of the MR-GO and the GIWW into the single channel formed by the combined Reach 1 of the MR-GO and the GIWW.

INTERROGATORY NO. 2:

Please describe in full narrative detail every aspect of the "failure of the Corps to follow the MRGO 1951 Authorization Report." MRGO Master Complaint at 18.

RESPONSE TO INTERROGATORY NO. 2:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds that it is vague, ambiguous, and overbroad as to time.  Specifically, the phrase "full narrative detail" is not limited to facts, but may also encompass the thoughts, impressions and ideas of Plaintiffs' counsel, and the opinions of Responding Parties' experts.  Because of the breadth of the phrase, Responding Parties therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.  Responding Parties also object to this interrogatory on the grounds that the term "aspect" is vague, ambiguous, overbroad, and calls for information

protected from disclosure by the attorney work product doctrine.  Specifically, the word "aspect," as used, can mean the legal thought process employed, and reasoning developed, by counsel for Responding Parties that is protected from disclosure by the attorney work product doctrine.  Similarly, the word "aspect, as used, can also mean expert opinions that need not be disclosed at this point in the litigation.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that the USACE was required to connect the land-cut portion of the Mississippi River-Gulf Outlet ("MR-GO"), otherwise known as "Reach 2," to the Inner Harbor Navigation Canal (the "Industrial Canal" or "IHNC") by way of a distinct canal or other waterway, separate from the Gulf Intracoastal Waterway ("GIWW").

INTERROGATORY NO. 3:

If you contend that the construction of the MRGO along the route of the existing GIWW constituted an unauthorized deviation from the route approved by Congress, please set forth in full and complete narrative detail the basis for this contention.

RESPONSE TO INTERROGATORY NO. 3:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds that it is vague, ambiguous, and overbroad as to time.  Specifically, the phrase "full narrative detail" is not limited to facts, but may also encompass the thoughts, impressions and ideas of Plaintiffs' counsel, and the opinions of Responding Parties' experts.  Because of the breadth of the phrase, Responding Parties therefore further object to this interrogatory on the

grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that the USACE was required to connect the land-cut portion of the MR-GO, otherwise known as "Reach 2," to the Industrial Canal by way of a distinct canal or other waterway, separate from the GIWW.  Responding Parties are still investigating the history of the MR-GO, but it appears that some of the documents recently produced by Defendants in New Orleans support Responding Parties' contentions.  Responding Parties presently have not received copies of the documents produced by Defendants in their possession for further review or study, and Responding Parties, therefore, cannot specify the exact documents supporting their contentions.

INTERROGATORY NO. 4:

If you contend that the modification of the MRGO route below Bayou La Loutre (i.e. gulfward from the bayou) so that it passed through Breton Sound rather than Chandeleur Sound, caused the alleged damages, please set forth in full narrative detail the basis for this contention.

RESPONSE TO INTERROGATORY NO.4:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds that it is vague, ambiguous, and overbroad as to time.  Specifically, the phrase "full narrative detail" is not limited to facts, but may also encompass the thoughts, impressions and ideas of Plaintiffs' counsel, and the opinions of Responding Parties' experts.  Because of the

breadth of the phrase, Responding Parties therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the manner in which the MR-GO caused the flooding associated with Hurricane Katrina, and consequently Responding Parties cannot respond to this special interrogatory at this time.

INTERROGATORY NO. 5:

If you contend that the building of the MRGO as "a separate canal running parallel to the GIWW" would have diminished or prevented the alleged damages, please explain fully the basis for your contention, identifying any and all documents that you rely on and any and all persons on whose analysis or study you rely in so contending.

RESPONSE TO INTERROGATORY NO. 5:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Notwithstanding the foregoing, and without waiving any objections to this interrogatory, the February, 2007 report entitled *The Failure of the New Orleans Levee System* prepared by "Team Louisiana" supports Responding Parties' contentions.

INTERROGATORY NO. 6:

For each negligent or wrongful act or omission that you contend caused or contributed to the failure or overtopping of a levee or floodwall adjacent to the INHC, the GIWW, the MRGO,

the 40 Arpent Canal, or the Florida Walk Canal, please provide all of the information that is available, including, without limitation:

(a)  the date or inclusive dates of the act or omission

(b)  a complete narrative description of the act or omission

(c)  the identity of the person or persons who negligently acted or failed to act

(c)  what the person or persons ought to have done or refrained from doing in order to conform their behavior to the standard required by the law

(d)  how the act or omission caused or contributed to the failure or overtopping

(e)  the precise location or locations of the levees and floodwalls that failed or were overtopped as a result of the act or omission (identifying the location with sufficient precision to differentiate it from other locations and thereby allow an investigation)

(f)  the identity of any and all persons who have analyzed or studied or provided information concerning the causal connection between the act or omission and the failure

(g)  the identity of any and all persons who knew or should have known prior to August 29, 2005, that the act or omission was negligent or wrongful

(h)  the pinpoint legal citation (or analogous identifying reference information) of any and all statutory or regulatory provisions and other mandatory and specific federal directives that the act or omission contravened.


RESPONSE TO INTERROGATORY NO. 6:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds that it is compound.  Because of the breadth of the interrogatory, Responding Parties

therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine. Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims. Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time. Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 7:

For each occasion on which you contend dredging was negligently performed, please provide all of the available information, including without limitation:

(a)  the date or dates (inclusive)

(b)  the location, specifying the specific reach, including mile markers or other geospatial identification

(c)  the vessel or vessels, if any, involved in the dredging

the manner in which the dredging failed to conform to the applicable standard of care (*e.g.*, too deep, too shallow, too narrow, too wide, too long, improper placement of spoils)

(d)  the identity of the person or persons who performed the dredging

(e)  the identity of the person or persons who supervised the dredging

(f)  the identity of the  all documents that evidence the dredging, including the contract or

contracts, if any, under which the dredging was performed

(g)  the acts and omissions of any and all employees of the Government upon which you found your claim of negligence with respect to the dredging performed on this occasion

(h)  the effect of the dredging on wetlands and marsh

(i)  the specific effect of the dredging on each plaintiff who was affected by the dredging

(j)  the name and address of any and all persons who have studied or analyzed the effect of the dredging on wetlands or marsh at any time or on storm surge during Hurricane Katrina

(k)  the surface area (in square feet, acres, square miles, or other standardized measure) of wetlands and marsh lost as a result of the dredging

(l)  the extent of the increase (in centimeters, meters, or other standardized measure) in storm surge elevation during Hurricane Katrina directly or indirectly resulting from the dredging

(m)  how you contend the dredging ought to have been performed, if at all

(n)  alternative measures, if any, that you contend ought to have been employed to maintain the seaway at its authorized depth in lieu of dredging.


RESPONSE TO INTERROGATORY NO 7:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds that it is compound.  Because of the breadth of the interrogatory, Responding Parties therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the

Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that

supplemental responses be provided in a short period of time (approximately 1 week),

Responding Parties are unable to locate the responsive information in the allotted time.  Should

Responding Parties determine that Propounding Parties may have additional time to locate this

information, Responding Parties will certainly provide a more complete response to this

interrogatory.


INTERROGATORY NO. 8:

Explain in full narrative detail how "proper dredging of the MR-GO would ameliorate

the 'funneling effect' of the waterway" and "diminish the lethal threat to residents and

businesses in Orleans and St. Bernard Parishes during hurricanes such as Katrina."  MRGO

Master Complaint ¶ 24.


RESPONSE TO INTERROGATORY NO. 8:

Responding Parties object to this interrogatory to the extent it seeks the premature

disclosure of expert testimony.  Responding Parties further object to this interrogatory on the

grounds that it is vague, ambiguous, and overbroad as to time.  Specifically, the phrase "full

narrative detail" is not limited to facts, but may also encompass the thoughts, impressions and

ideas of Plaintiffs' counsel, and the opinions of Responding Parties' experts. Because of the

breadth of the phrase, Responding Parties therefore further object to this interrogatory on the

grounds that it seeks information protected from disclosure by the attorney-client privilege and

the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this

10

interrogatory, Responding Parties state that they and their experts are still investigating the

Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that

supplemental responses be provided in a short period of time (approximately 1 week),

Responding Parties are unable to locate the responsive information in the allotted time.  Should

Responding Parties determine that Propounding Parties may have additional time to locate this

information, Responding Parties will certainly provide a more complete response to this

interrogatory.


INTERROGATORY NO. 9:

If you contend that any MRGO operational or maintenance activity other than dredging

caused the alleged damages, please provide all of the available information about each such

activity, including without limitation:

(a)  a full and complete detailed description of each such activity

(b)  the date or inclusive dates on which the activity occurred

(c)  the identity of the person or persons who performed the activity

(d)  the identity of the person or persons who supervised the activity

(e)  the identity of all documents that evidence the activity

(f)  the effects and consequences of the activity in causing the alleged damages

(g)  the pinpoint legal citation (or analogous identifying reference information) for each

and every statutory or regulatory provision or other mandatory and specific federal directive that

was violated by the performance of the activity.

11

RESPONSE TO INTERROGATORY NO. 9:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony. Responding Parties further object to this interrogatory on the grounds that it is compound. Because of the breadth of the interrogatory, Responding Parties therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 10:

For each "known defect[] in the levee system," MRGO Master Complaint ¶ 56, please provide all of the available information, including without limitation:

(a)  a full and complete description of the defect

(b)  the precise location of the defect (sufficiently precise to differentiate it from other defects and allow an investigation)

(c)  the date on which the defect came into existence

(d)  the acts and omissions of the person or persons who caused the defect to come into existence

(e)  the name, last known address, and employer of each person who caused the defect to come into existence

(f)  the name and last known address of every person who had knowledge of the defect prior to August 29, 2005

(g)  each and every effect of the defect in producing the alleged damages

(h)  the pinpoint legal citation (or analogous identifying reference information) of every statutory or regulatory provision or other mandatory and specific federal directive that was violated by the acts and omissions that caused the defect to come into existence.


RESPONSE TO INTERROGATORY NO. 10:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds that it is compound. Because of the breadth of the interrogatory, Responding Parties therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this

information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 11:

Specify the permeability coefficient or coefficients that were used by Robert Bea and fully describe the basis for his use of them in determining that underseepage "contribut[ed] to the failure of the flood protection structure adjacent to the Lower 9th Ward."  Bea Declaration ¶ 26.

RESPONSE TO INTERROGATORY NO. 11:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 12:

Set forth in full and complete detail each of the "transient flow analyses" that have shown, in the opinion of Robert Bea, "that the rising storm surge in the IHNC was effectively transmitted to the inboard side levee toe area." Bea Declaration ¶ 14.

RESPONSE TO INTERROGATORY NO.12:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony. Because of the breadth of the phrase "[s]et forth in full and complete detail," Responding Parties therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine. Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims. Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time. Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 13:

Describe fully in narrative detail the "[a]bundant evidence of flood side cracking and sinkhole formation on the protected side," Bea Declaration ¶ 14, that Robert Bea relied on in forming his opinion that underseepage "contribut[ed] to the failure of the flood protection structure adjacent to the Lower 9th Ward."

RESPONSE TO INTERROGATORY NO. 13:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties object to Propounding Party's request for an explanation "in full narrative detail" as being vague, ambiguous, and overbroad.  Because of the breadth of the phrase "in full narrative detail," Responding Parties further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.  Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.


INTERROGATORY NO. 14:

Inasmuch as Robert Bea concluded his declaration by opining that "the failure of the flood protection structure adjacent to the Lower 9th Ward *potentially* was caused by underseepage," does he have an opinion which he holds to a reasonable degree of professional certainty as to whether underseepage more probably than not caused the failure of the flood protection structure adjacent to the Lower 9th Ward and, if so, what is his opinion?

RESPONSE TO INTERROGATORY NO. 14:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.


INTERROGATORY NO. 15:

Set forth in full detail the scientific analyses and mathematical calculations which underlie your assertion that the enlargement of the GIWW by construction of the MRGO "exponentially enhanced the surge risk."


RESPONSE TO INTERROGATORY NO. 15:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Because of the breadth of the phrase "[s]et forth in full detail," Responding Parties further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the

Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.


INTERROGATORY NO. 16:

Describe in complete and full narrative detail the basis for your assertion that the Corps "fail[ed] to ensure the use of proper materials in constructing the levees."


RESPONSE TO INTERROGATORY NO. 16:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties object to Propounding Party's request for an explanation "in complete and full narrative detail" as being vague, ambiguous, and overbroad. Because of the breadth of the phrase "in complete and full narrative detail," Responding Parties further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine. Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should

Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 17:

For each location where a levee or floodwall "collapsed or was otherwise compromised or overtopped due to construction . . . with porous, erodible lightweight 'shell sand' fill, or other inappropriate fill material not suitable for levee construction," MRGO Master Complaint ¶ 71, please provide all of the available information, including without limitation:

(a)  the precise location (sufficiently precise to differentiate it from other locations and allow an investigation)

(b)  the location (city, state, street address, and room number or other identifying designation) of any and all soil samples (including borings) or other materials obtained from this location

(c)  the identity of  the person or persons who have custody and control of  the samples or other materials

(d)  a complete and full geotechnical description of the characteristics of the samples and other materials obtained

(e)  the identity of any and all persons who have tested or otherwise analyzed the samples and other materials obtained

(f)  the dates on which and locations at which testing or analysis of the samples and other materials was performed

(g)  the commonly accepted name or a complete description of the tests or other analysis, in sufficient detail to allow a qualified expert to replicate the tests or analyses

(h)  the conditions (*e.g.,* temperature and humidity) under which samples and materials have been maintained

(i)  a chronological listing of all persons who have had custody and control of the samples and materials, in sufficient detail to reveal an unbroken chain of custody from the date and time of sampling until the present

(j)  a description of each and every document that evidences the chain of custody of each soil sample or other material obtained

(k)  the name and address of the person or persons who documented the chain of custody for each soil sample or other material.


RESPONSE TO INTERROGATORY NO. 17:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds that it is compound.  Because of the breadth of the interrogatory, Responding Parties therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should

20

Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 18:

For each "design, engineering or construction criteri[on] for levees, flood walls, and/or spoil banks" that you contend was "violated," MRGO Master Complaint ¶ 74, please provide all of the available information, including without limitation:

(a)  the pinpoint legal citation (or analogous identifying reference information) for the criterion

(b)  the date or inclusive dates on which the criterion was violated

(c)  the identity of the person or persons who violated it

(d)  the act or omission that violated or caused a violation of the criterion

(e)  the results and consequences of the act or omission that violated the criterion

(f)  the identity of each and every person who knew or should have known that the act or omission that violated or resulted in a violation of the criterion.

RESPONSE TO INTERROGATORY NO. 18:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony. Responding Parties further object to this interrogatory on the grounds that it is compound.  Because of the breadth of the interrogatory, Responding Parties therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 19:

For each act and omission that you contend failed to comply with state or federal "regulations affecting design, engineering, construction, maintenance and operations of levees, flood walls and spoil banks," MRGO Master Complaint ¶ 74, please provide all of the available information, including without limitation:

(a)  the date or inclusive dates on which the act or omission occurred

(b)  a complete description of the act or omission

(c)  the name, last known address, and employer of the person or persons who acted or failed to act

(d)  the effects and consequences of the act or omission

(e)  the name and last known address of every person with knowledge of the act or omission

(f)  the pinpoint legal citation (or analogous identifying reference information) for the regulations that were violated

22

RESPONSE TO INTERROGATORY NO. 19:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony. Responding Parties further object to this interrogatory on the grounds that it is compound.  Because of the breadth of the interrogatory, Responding Parties therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 20:

For each occasion on which the Corps failed to monitor and properly inspect the work of the contractor, MRGO Master Complaint ¶¶ 47, 56, please provide all of the available information, including without limitation:

(a)  the date or inclusive dates

(b) the precise location of the work (sufficiently precise to differentiate the work from other work and allow an investigation of the allegation)

23

(c) a detailed narrative description of the work that was not monitored or properly inspected;

(d) the identity of the persons who performed the work;

(e) the identity of the persons who supervised the work;

(f) the identity of the persons who failed to monitor and properly inspect the work

(g) a detailed narrative description of the consequences of the work in causing or contributing to the alleged damages

(h) the identity of the persons who knew, prior to August 29, 2005, that the work was negligently performed or substandard

(i) the identity of the persons who should have known, prior to August 29, 2005, that the work was negligently performed or substandard

(j) a complete and detailed description of how the work would have been performed if it had been monitored and properly inspected.


RESPONSE TO INTERROGATORY NO. 20:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony. Responding Parties further object to this interrogatory on the grounds that it is compound. Because of the breadth of the interrogatory, Responding Parties further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims. Moreover, since Propounding Parties' attorneys have insisted that

supplemental responses be provided in a short period of time (approximately 1 week),

Responding Parties are unable to locate the responsive information in the allotted time.  Should

Responding Parties determine that Propounding Parties may have additional time to locate this

information, Responding Parties will certainly provide a more complete response to this

interrogatory.


INTERROGATORY NO. 21:

       With respect to each "warning of impending disaster that would fall upon Greater New

Orleans as a result of the negligent design, construction, operation and maintenance of the MR-

GO and the failure of the Corps to timely do what it should have done to eliminate or at least

ameliorate the impending inundation of Greater New Orleans," Master Complaint ¶ 33, please

provide all of the available information, including without limitation:

       (a)  the contents of the notice

       (b)  the date of the notice

       (c)  the identity of the person or persons who sent or gave the notice

       (d)  the identity of the person or persons who received the notice

       (e) a detailed narrative description of the acts and omissions of the recipient upon receipt

of the notice

       (f) a detailed narrative description of the actions that you contend the recipient ought to

have performed upon receipt.

<u>RESPONSE TO INTERROGATORY NO. 21</u>:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds that the phrase "narrative description" is vague, ambiguous, and overbroad as to time since it is not limited to facts, but may also encompass the thoughts, impressions and ideas of Plaintiffs' counsel, and the opinions of Responding Parties' experts.  Because of the breadth of the phrase, Responding Parties therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.  Responding Parties also object to this interrogatory on the grounds that it is compound.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.


<u>INTERROGATORY NO. 22</u>:

Set forth in complete and full detail the basis for your assertion that "the speeding impact of the surge jet entering from the east through the MRGO/GIWW ship channel" damaged levees and floodwalls along the IHNC.

RESPONSE TO INTERROGATORY NO. 22:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds it is vague and ambiguous with respect to the phrase "[s]et forth in complete and full detail the basis for your assertion . . .  ."  As used, the phrase is not limited to simple facts, but includes expert and attorneys' opinions, conclusions, observations, investigations, and analysis which are either protected from disclosure by the attorney-client privilege or work product doctrine, or which constitute a premature request for expert opinion.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 23:

Describe in full narrative detail the basis for your assertion that "the Corps negligently failed to consider any alteration of the project" after 1981.

RESPONSE TO INTERROGATORY NO. 23:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds that it is vague, ambiguous, and overbroad as to time.  Specifically, the phrase "full narrative detail" is not limited to facts, but may also encompass the thoughts, impressions and ideas of Plaintiffs' counsel, and the opinions of Responding Parties experts.  Because of the breadth of the phrase, Responding Parties therefore further object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.


INTERROGATORY NO. 24:

Describe fully and completely the basis for your assertion that the Corps's use of NGVD29 in designing the LPVHPP floodworks was below the applicable standard of care.

28

RESPONSE TO INTERROGATORY NO. 24:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds it is vague and ambiguous with respect to the phrase "[d]escribe fully and completely the basis for your assertion . . .  ."  As used, the phrase is not limited to simple facts, but includes expert and attorneys opinions, conclusions, observations, investigations, and analysis which are either protected from disclosure by the attorney-client privilege or work product doctrine, or which constitute a premature request for expert opinion.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.


INTERROGATORY NO. 25:

Describe fully and completely the basis for your contention that the design of the IHNC levees and floodwalls was based on "the wrong elevation datum."

RESPONSE TO INTERROGATORY NO. 25:

Responding Parties object to this interrogatory to the extent it seeks the premature

disclosure of expert testimony.  Responding Parties further object to this interrogatory on the

grounds it is vague and ambiguous with respect to the phrase "[d]escribe fully and completely

the basis for your assertion . . .  ."  As used, the phrase is not limited to simple facts, but

includes expert and attorneys opinions, conclusions, observations, investigations, and analysis

which are either protected from disclosure by the attorney-client privilege or work product

doctrine, or which constitute a premature request for expert opinion.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this

interrogatory, Responding Parties state that they and their experts are still investigating the

Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that

supplemental responses be provided in a short period of time (approximately 1 week),

Responding Parties are unable to locate the responsive information in the allotted time.  Should

Responding Parties determine that Propounding Parties may have additional time to locate this

information, Responding Parties will certainly provide a more complete response to this

interrogatory.


INTERROGATORY NO. 26:

Describe fully and completely the basis for your assertion that the Corps knew or should

have known in 1965 that the characteristic rate of subsidence in Greater New Orleans was "3 to

4 feet/century."

RESPONSE TO INTERROGATORY NO. 26:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds it is vague and ambiguous with respect to the phrase "[d]escribe fully and completely the basis for your assertion . . .  ."  As used, the phrase is not limited to simple facts, but includes expert and attorneys opinions, conclusions, observations, investigations, and analysis which are either protected from disclosure by the attorney-client privilege or work product doctrine, or which constitute a premature request for expert opinion.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.


INTERROGATORY NO. 27:

With respect to each levee district that negligently failed to carry out its responsibility for the care and inspection of levees, please set forth in full narrative detail the acts and omissions that did not meet the applicable standard of care.

RESPONSE TO INTERROGATORY NO. 27:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory on the grounds that it is vague and ambiguous in that Propounding Party does not specify whether the "levee districts" referred to as those levee districts formed under, or by, an act of the Louisiana Legislature, or under, or by, some other authority.

Responding Parties further object to this interrogatory on the grounds that it assumes facts not in evidence in that there has been no evidence produced establishing any negligence by any "levee district," regardless of the type or authority of such district, with respect to the care and inspection of levees.

The interrogatory is also vague and ambiguous with respect to the use of the phrase "care and inspection of levees".  Specifically, the term "levees" does not specify or differentiate between either (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other then the United States or the USACE.

In addition, Propounding Party does not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards,

guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

With respect to the phrase "care and inspection," Propounding Party does not identify or specify any criteria, guidelines, or other standards establishing the manner in which such purported levees were to be cared for or inspected by such "levee districts."

Finally, Responding Parties object to this interrogatory on the grounds it is vague and ambiguous with respect to the phrase "set forth in full narrative detail."  As used, the phrase is not limited to simple facts, but includes expert and attorneys opinions, conclusions, observations, investigations, and analysis which are either protected from disclosure by the attorney-client privilege or work product doctrine, or which constitute a premature request for expert opinion.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 28:

If you contend that the United States is liable for failing to insure that a levee district fulfilled its responsibility for the care and inspection of a levee or other flood-control structure, please set forth in full narrative detail the basis for your contention.

RESPONSE TO INTERROGATORY NO. 28:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony. Responding Parties further object to this interrogatory on the grounds that it is vague and ambiguous in that Propounding Party does not specify whether the "levee districts" referred to as those levee districts formed under, or by, an act of the Louisiana Legislature, or under, or by, some other authority.

Responding Parties further object to this interrogatory on the grounds that it assumes facts not in evidence in that there has been no evidence produced establishing any negligence by any "levee district," regardless of the type or authority of such district, with respect to the care and inspection of levees.

The interrogatory is also vague and ambiguous with respect to the use of the phrase "care and inspection of levees". Specifically, the term "levees" does not specify or differentiate between either (a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership; (b) such flood protection structures which were constructed by State or local authorities, ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE; (c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control; (d) so-called "levees and floodwalls" that also serve non-

34

flood control purposes; (e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other then the United States or the USACE.

In addition, Propounding Party does not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

With respect to the phrase "care and inspection," Propounding Party does not identify or specify any criteria, guidelines, or other standards establishing the manner in which such purported levees were to be cared for or inspected by such "levee districts."

Finally, Responding Parties object to this interrogatory on the grounds it is vague and ambiguous with respect to the phrase "set forth in full narrative detail."  As used, the phrase is not limited to simple facts, but includes expert and attorneys opinions, conclusions, observations, investigations, and analysis which are either protected from disclosure by the attorney-client privilege or work product doctrine, or which constitute a premature request for expert opinion.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this

information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 29:

If you base your complaint, in whole or in part, on any violation by an employee of the United States of America of any federal or state statute, regulation, policy, or other similar law or directive, state your contention and the basis for the contention.

RESPONSE TO INTERROGATORY NO. 29:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony. Responding Parties further object to this interrogatory in that the phrase "state your contention and the basis for the contention . . . ," as phrased, encompasses by expert and legal opinions, as well as the thought process of Plaintiffs' attorneys which are protected from disclosure by the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims. Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time. Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 30:

Identify all documents that you contend support your allegations and contentions in this lawsuit.

RESPONSE TO INTERROGATORY NO. 30:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Finally, Responding Parties object to this interrogatory to the extend that it calls for information protected from disclosure by the attorney-client privilege or the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time, especially considering the fact that Defendants have only recently (within the past month) produced documents for Responding Parties to review, and the document inspection is continuing.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 31:

Identify all witnesses that you contend have information relevant to the allegations and contentions in this lawsuit.

RESPONSE TO INTERROGATORY NO. 31:

Responding Parties object to this interrogatory on the grounds that it is overbroad, and seeks information protected from disclosure by the attorney-client privilege and attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 32:

Identify any and all past or present employees, agents, or servants of the United States whom you interviewed, consulted, received information from, or have had any contact whatsoever relevant to these consolidated cases.

RESPONSE TO INTERROGATORY NO. 32:

Responding Parties object to this interrogatory on the grounds that it seeks information protected from disclosure by the attorney-client privilege and attorney work product doctrine. Responding Parties further object to this interrogatory on the grounds that it is vague and

ambiguous and overbroad.  Specifically, the questions asks for the identity of parties with whom responding parties "had any contact whatsoever relevant to these consolidated cases."  This question, as phrased, would necessarily include Plaintiffs' counsel or consulted hired by Plaintiffs' counsel, as well as anyone with whom Plaintiffs had a casual conversation concerning this litigation and the facts and events underlying this lawsuit.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 33:

If you contend that any factual issue(s) must be decided before the Court can finally rule on subject matter jurisdiction, state your contentions and the basis for the contentions.

RESPONSE TO INTERROGATORY NO. 33:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory to the extent that it calls for information protected from discovery by the attorney-client privilege or the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 34:

If you contend that jurisdiction rests in admiralty for all or any part of this lawsuit state with particularity your legal contention and the facts on which you base the contention.

RESPONSE TO INTERROGATORY NO. 34:

Responding Parties object to this interrogatory to the extent it seeks the premature disclosure of expert testimony.  Responding Parties further object to this interrogatory to the extent that it calls for information protected from disclosure by the attorney-client privilege or the attorney work product doctrine.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this interrogatory, Responding Parties state that they and their experts are still investigating the Responding Parties' claims.  Moreover, since Propounding Parties' attorneys have insisted that supplemental responses be provided in a short period of time (approximately 1 week), Responding Parties are unable to locate the responsive information in the allotted time.  Should

Responding Parties determine that Propounding Parties may have additional time to locate this information, Responding Parties will certainly provide a more complete response to this interrogatory.

INTERROGATORY NO. 35:

Identify all experts whom you intend to call at the trial of this matter and provide their opinions and conclusions, the bases for those opinions and conclusions, and all other expert disclosures and reports, that are required by the Federal Rules of Civil Procedure.

RESPONSE TO INTERROGATORY NO. 35:

Responding Parties object to this interrogatory to the extent that it calls for information protected from disclosure by the attorney-client privilege or the attorney work product doctrine. Responding Parties further object to this interrogatory to the extent it seeks the premature disclosure of expert witnesses and expert testimony before the September 17, 2007 deadline for Responding Parties' list of all expert witnesses who may be used at trial or in connection with motions concerning common liability issues; before the October 31, 2007 deadline to supplement Responding Parties' initial expert witness disclosures; and before the May 30, 2008 deadline for Responding Parties' expert reports. *See* CMO No. 4 at p. 36, ¶ (E)(1)-(3). Responding Parties will identify all experts whom they intend to call at the trial of this matter and provide their opinions and conclusions, the bases for those opinions and conclusions, and all other expert disclosures and reports, that are required by the Federal Rules of Civil Procedure pursuant to the

deadlines mandated in CMO No. 4.

**Respectfully Submitted,**

MRGO PLAINTIFFS SUB-GROUP LITIGATION
COMMITTEE

s/ Pierce O'Donnell
PIERCE O'DONNELL (*pro hac vice*)
MRGO PSLC Liaison Counsel
O'Donnell & Associates PC
550 South Hope Street, Suite 1000
Los Angeles, California 90071-2627
Telephone: (213) 347-0290
Facsimile:  (213) 347-0299
Email:  pod@oslaw.com

PLAINTIFFS' LIAISON COUNSEL

s/ Joseph M. Bruno
JOSEPH M. BRUNO
PLAINTIFFS LIAISON COUNSEL
LA Bar Roll Number: 3604
Law Office of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: **jbruno@jbrunolaw.com**

MRGO PLAINTIFFS SUB-GROUP LITIGATION
COMMITTEE

s/ James Parkerson Roy
JAMES PARKERSON ROY
MRGO PSLC Liaison Counsel
LA. Bar Roll Number: 11511
Domengeaux Wright Roy & Edwards LLC
P.O. Box 3668
Lafayette, LA. 70502

Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: (337) 233-2796
Email: **jimr@wrightroy.com**

For

MRGO PLAINTIFFS SUB GROUP LITIGATION
COMMITTEE

Jonathan Andry (Andry Law Firm, New Orleans, LA)
Clay Mitchell (Levin, Papantonio et al., Pensacola, FL)
Pierce O'Donnell (O'Donnell & Associates, Los Angeles, CA)
James Parkerson Roy (Domengeaux, Wright, et al., Lafayette, LA)

## CERTIFICATE OF SERVICE

I, Pierce O'Donnell, hereby certify that on July 17, 2007, I caused to be served The

MRGO Plaintiffs' Amended Responses To Defendant United States' First Set Of Interrogatories,

upon Defendants' counsel, Robin D. Smith, Catherine Corlies, Traci Colquette, and Jim

McConnon by email at robin.doyle.smith@usdoj.gov; catherine.corlies@usdoj.gov,

traci.colquette@usdoj.gov, and jim.mcconnon@usdoj.gov ; and U.S. mail addressed to the

United States Department of Justice, Torts Branch, Civil Division, P.O. Box 888, Benjamin

Franklin Station, Washington, D.C. 20044.


/s/ Pierce O'Donnell
Pierce O'Donnell