UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION NO.: 05-4182 "K"(2) |
| | * | JUDGE DUVAL |
| PERTAINS TO: INSURANCE, *Xavier Univ. of La.*, No. 06-0516 | * * * * | MAGISTRATE JUDGE WILKINSON |

**DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH**

Plaintiff Xavier University of Louisiana's ("Xavier") motion to quash subpoenas issued to Landis Construction Company ("Landis") and FoxCor, Inc. ("FoxCor") (Rec. Doc. 6401) should be denied. Landis and FoxCor have not appeared in this case and have not joined in Xavier's motion. The documents sought by Defendant Travelers Property Casualty Company of America ("Travelers") in those subpoenas are centrally relevant to certain of Travelers' defenses in this case, and the same type of documents have been ordered disclosed as a matter of course in another court in this District. Xavier inappropriately asks this Court to prejudge the merits of Travelers' defenses in ruling on whether the documents are discoverable.

There are three categories of documents at issue: (1) documents pertaining to Xavier's flood insurance claim; (2) documents pertaining to non-insurance funds that Xavier applied for from the Federal Emergency Management Agency ("FEMA"); and (3) documents pertaining to

work performed by Landis and/or FoxCor on Xavier's campus in the 18 months immediately prior to Katrina. With respect to the first category of documents, this Court has already ruled that documents pertaining to Xavier's flood insurance claim are discoverable. The motion to quash should therefore be denied as to the flood insurance documents.

With regard to the second category of documents, Travelers has filed a motion for reconsideration of this Court's ruling on the discoverability of the FEMA-related documents (Rec. Doc. 6667). For the same reasons stated in the motion for reconsideration, Landis and FoxCor should be required to produce FEMA-related documents. In fact, FoxCor has already produced certain FEMA-related documents. While Xavier's counsel requested that these documents be returned because they were inadvertently produced, the inadvertent disclosure doctrine, which governs when a privilege is waived, is inapplicable to documents that are purportedly "irrelevant."[1] Xavier's relevance objection is not a basis for requiring the documents to be returned and barring Travelers from utilizing 98 pages of FEMA-related materials that have already been produced by FoxCor.

With respect to the third category at issue, work performed on Xavier's campus prior to Hurricane Katrina, Travelers is only seeking documents generated in the 18 months immediately prior to Katrina, and documents concerning improvements to Xavier's buildings that were planned prior to Katrina and scheduled to be implemented after Katrina. These documents are relevant to establishing the condition of Xavier's buildings just prior to Katrina and to determining the extent to which the repairs to Xavier's buildings included improvements and betterments not covered by the Travelers Policy. Xavier's motion to quash should therefore be denied in its entirety.

---

[1] Counsel for Travelers returned the documents as requested by Xavier, but retained the right to have this Court adjudicate the issue of whether the documents were required to be returned.

203279-1

2

## I. This Court Has Already Ruled That Documents Pertaining to Xavier's Flood Insurance Claim Must Be Produced

In an order dated July 12, 2007, this Court granted Travelers' motion to compel Xavier to produce documents pertaining to its flood insurance policy and flood insurance claims it made after Katrina. The Court recognized that, although Xavier has filed a motion challenging the admissibility of the flood insurance documents, "[t]he scope of discovery is broader than the standard for admissibility of evidence at trial," and "[t]he judges of this court have held in similar Hurricane Katrina insurance coverage cases that the proceeds from a plaintiff's flood insurance policy are relevant to the amount that the plaintiff can recover under its other policies, because an insured cannot be indemnified by its insurance policies for more than the total value of its loss." (Order, at 3-4 (Rec. Doc. 6428) (citing cases).) Xavier did not timely seek reconsideration of this ruling and did not timely file an appeal to the District Judge.

For the same reasons that this Court required Xavier to produce documents pertaining to its flood insurance claims, Xavier's motion to quash should be denied insofar as it seeks to bar Landis and FoxCor from producing documents pertaining to the flood insurance claim. Xavier offers no reason why the subpoenas should be treated differently from the document requests that Travelers served on Xavier. There is none.

## II. Documents Pertaining to Xavier's Submissions to FEMA Are Relevant and Should Be Produced

This Court denied Travelers' motion to compel insofar as it sought to compel production by Xavier of documents pertaining to non-insurance funds received from FEMA. (Order dated July 12, 2007, at 6-7.) Travelers timely filed a motion for reconsideration of the Court's ruling in this respect. (Rec. Doc. 6667.) For the same reasons set forth in Travelers' motion for reconsideration, documents in the possession of Landis and FoxCor concerning submissions

made by Xavier to FEMA are relevant and discoverable. At a minimum, the Court should allow the production and use of the FEMA-related documents that were already produced by FoxCor. Xavier improperly contends that these documents can be "called back" because they were inadvertently produced.

### A. Documents Concerning Xavier's Submissions to FEMA Are Relevant to *Both* the Cause of Xavier's Losses *and* the Reasonable Cost of Necessary Repairs

The nature and extent of Xavier's losses, and the causes of those losses are of central relevance to the parties' claims and defenses. The documents pertaining to Xavier's applications to FEMA likely contain information pertinent to both the cause of Xavier's losses and the extent of those losses. Travelers' requests for these documents are therefore relevant to the claims and defenses of the parties and reasonably calculated to lead to the discovery of admissible evidence.

The District Judge's decision on the water damage exclusion should not be a basis for barring discovery on the cause of Xavier's losses. Assuming that the District Judge's decision is affirmed on appeal, it still leaves open the very important question of whether the cause of the inundation of Xavier's property was "natural" or "man-made." Judge Duval ruled that "the Water Damage Exclusion as found in Xavier's Travelers policy is ambiguous and as such affords Xavier coverage for damages sought provided that Xavier can prove that the flooding it experienced was caused by the negligence of man." In re Katrina Canal Breaches Consolidated Litig., 466 F. Supp. 2d 729, 767 (E.D. La. 2006) (emphasis added). He further held that "as this litigation proceeds, if it is shown that an insured premises sustained damage from a covered peril, i.e. wind or water damage caused by a failed levee caused by negligence, and a non-covered peril, i.e. naturally occurring flooding such as overtopping of a levee, then the Court must determine the applicability and enforceability of the anti-concurrent cause clause." Id. at 752-53 (emphasis added). Xavier's motion for partial summary judgment was "**DENIED** in part

as the Court finds there are material questions of fact as to the cause of the water damage to Xavier." Id. at 767.

If Judge Duval's ruling is affirmed, Travelers will take discovery on the cause of the levee breaches. Travelers expects to present evidence at trial that the cause of the inundation of Xavier's property was the very powerful "natural" forces of Hurricane Katrina, not "man made" factors, and that storm surge and overtopping of levees contributed to the inundation of Xavier's property. Travelers will also be entitled to present evidence at trial of the extent to which Xavier's property was impacted by what Travelers contends was "natural" flooding as opposed to wind and wind-driven rain.

The question of the extent to which the damage to Xavier's property was caused by wind versus flood (either "natural" flooding or any type of flooding, depending on how the Fifth Circuit rules) is a very important part of this case. How Xavier, or those authorized to speak on Xavier's behalf, characterized its losses with respect to wind and flood is not only reasonably calculated to lead to the discovery of admissible evidence, but highly relevant to the claims and defenses of the parties in this case. See Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 801(d)(2). The District Judge's decision denying Xavier's motion should not be a basis for preventing Travelers from obtaining discovery from Xavier on how it characterized its losses in its applications to FEMA.

That the allocation of damages between wind and flood is still an important question in this litigation is further evidenced by the fact that the Plaintiffs in the Insurance Umbrella in In re Katrina have served master interrogatories and document requests on all of the insurers seeking, inter alia, information pertaining to the insurers' policies and procedures for allocation of damages between wind and flood. In an order dated July 19, 2007, this Court ruled that

"[r]egardless what decision the Fifth Circuit reaches, it will be necessary in hundreds of Hurricane Katrina cases . . . to determine the level of water in particular properties; the effect of water inundation, if any, on damage above the water line," etc. (Record Doc. 6590 (emphasis added).) This case is one of the hundreds of cases in which those issues are implicated, and how Xavier characterized the cause and extent of its losses is of central relevance to this case. Travelers should therefore be entitled to obtain in discovery documents pertaining to Xavier's applications to FEMA.

Furthermore, even if this Court deems irrelevant how Xavier characterized the cause of the damage (wind vs. flood), the question of how much damage there was to Xavier's buildings and the cost of making the repairs is certainly relevant. Information available from public sources demonstrates that the documents that Xavier is seeking to bar Landis and FoxCor from producing may contain relevant information regarding both the cause and the extent of Xavier's losses. For example, a spreadsheet available on the FEMA website indicates that Xavier applied for and may have received funds to repair flood damage to mechanical equipment in the House of Studies Building, Student Center and College of Pharmacy, to make certain specified repairs to Buildings Nos. 1, 2, 56, 65, 87 and 98, and to make repairs to a roof on its Counseling Center and Health Services Building (both presumably damaged by wind). The dollar amounts applied for, as reflected on the spreadsheet, exceed $900,000, and the spreadsheet may not be a complete listing of grants applied for by Xavier -- it appears to cover only a limited time period. See www.fema.gov/xls/plan/ehp/noma/aa-schools-0710.xls (attached as Exhibit A hereto). Travelers should be entitled to obtain copies of the documents pertaining to Xavier's applications to FEMA and other sources of funds because they may be relevant to both the cause of the losses and the reasonable cost of the repairs. Even if it were determined that Xavier is entitled to a double

recovery, i.e., that it can recover from Travelers for the exact same damage for which it received specifically-designated grant funds from FEMA, the documents could still be relevant to the cost of the repairs.

### B. In Ruling on Discoverability, This Court Need Not Decide Whether Travelers Is Entitled to an Offset for Non-Insurance Funds Received From FEMA

The question of whether Travelers is entitled to an offset for funds received by Xavier from non-insurance sources is the subject of a motion presently pending before the District Judge. See Xavier's Supplemental Memorandum in Support of Motion for Partial Summary Judgment Regarding Collateral Source (Record Doc. 6398-3). Travelers has a right to marshal evidence to oppose Xavier's motion for partial summary judgment, including discovery to show that FEMA made non-insurance payments to Xavier for specific damage to specific buildings. See Exhibit A hereto. There is a "universally recognized rule to the effect [that] a policy of insurance on property is predominately a contract of indemnity . . . ." Wright v. Assurance Co. of Am., 728 So. 2d 974, 975 (La. Ct. App. 2d Cir. 1999). See also Weiss v. Allstate Ins. Co., 2007 WL 891869, at *3 (E.D. La. Mar. 21, 2007) (Vance, J.) (noting the "well-established propositions that insurance contracts are contracts of indemnity and that an insured cannot recover an amount greater than her loss"); Ferguson v. State Farm Ins. Co., 2007 WL 1378507, at *3 (E.D. La. May 9, 2007) (Berrigan, C.J.) (recognizing "the principle that the fundamental purpose of property insurance is indemnity, not profit"). If Xavier received funds from FEMA in order, for example, to repair damage to the roof on a particular building (see Exhibit A), it would be wholly inconsistent with the principle of indemnity for Xavier to be able to recover for the same damage to the same roof under the Travelers Policy.

Xavier argues that federal law provides for the amount of a grant approved by FEMA to be reduced based upon insurance proceeds received, citing the following regulation:

> <u>Prior to approval of a Federal grant for the restoration of a facility and its contents which were damaged by a disaster *other than flood*</u>, the Grantee shall notify the Regional Director of any entitlement to insurance settlement or recovery for such facility and its contents. The Regional Director shall reduce the eligible costs by the actual amount of insurance proceeds relating to the eligible costs.

44 C.F.R. § 206.253(a) (emphasis added). As in initial matter, this provision expressly applies only to non-flood damage. To the extent that Xavier obtained grant funds from FEMA to repair flood damage (<u>see</u> Exhibit A), this regulation does not apply. With respect to repairs made to non-flood damage, Xavier represents to the Court that "any proceeds received from FEMA have already been reduced by expected insurance recovery from Travelers." (Xavier Memo. at 6.) Travelers is entitled to explore in discovery whether this representation is in fact true. What Xavier told FEMA was its "expected insurance recovery from Travelers" is clearly relevant to this case. Travelers is entitled to explore whether Xavier's representations to FEMA in that regard are inconsistent with the positions it is now taking in litigation against Travelers. Moreover, the regulation Xavier cites provides only that insurance payments should be taken into account "[<u>p]rior to</u> approval of a Federal grant . . . ." 44 C.F.R. § 206.253(a) (emphasis added). Xavier does not contend that, if it recovers additional insurance proceeds from Travelers, it will be required to provide a refund to FEMA, and the regulation it cites does not provide for any such refund. In essence, Xavier contends that it is entitled to recover for the same non-flood damage from Travelers and FEMA as long as in its application to FEMA it inaccurately underestimated the insurance proceeds it was expecting from Travelers. Such a position is contrary to the fundamental principle that a property insurance contract is a contract of

indemnity, and would create an incentive for applicants for FEMA funding to misrepresent their anticipated insurance recovery.[2]

In any event, Xavier's arguments on the "collateral source" rule go to the merits of the admissibility of these documents, not their discoverability. Travelers should be entitled to obtain the documents that will reveal what information was provided to FEMA and what funds were provided for what purposes. This Court need not decide whether Travelers is entitled to a credit for the FEMA payments in order to determine whether the information is discoverable.

### C. Requiring Disclosure of Documentation Regarding FEMA Payments Is Consistent With the Decisions of Other Judges In the District

Other judges in the Eastern District of Louisiana have recognized that payments received by insureds from FEMA, the Small Business Administration, the Louisiana Recovery Authority and other sources are an appropriate area of inquiry in discovery. Notably, Judge Feldman has ordered that this information must be disclosed by plaintiffs in *all* of the Allstate cases pending in his court, as part of a series of disclosures that he ordered in lieu of Rule 26(a)(1) initial disclosures. See Plaintiffs v. Allstate, Civ. A. No. 06-617, 2007 U.S. Dist. LEXIS 28081, at *11-12 (E.D. La. Feb. 12, 2007) (Feldman, J.) (attached as Exhibit B hereto).

---

[2] Xavier's citation to Louisiana Dep't of Transp. & Dev. v. Kansas City Southern Ry. Co., 846 So. 2d 734 (La. 2003) is inapposite. In that case, the Louisiana Supreme Court stated that the "collateral source rule," in general, is that "a tortfeasor's liability to an injured plaintiff should be the same, regardless of whether or not that plaintiff had the foresight to obtain insurance." Id. at 740 (emphasis added). Xavier seeks to twist this principle beyond recognition by arguing that an insurer should be required to pay the same amount regardless of whether an insured receives funds from other insurance companies or another source such as FEMA. In Kansas City Southern Ry., the court extended the "collateral source" rule to environmental enforcement actions, holding that "[l]ike conventional tort cases, environmental law statutory remedies involve claims to recover damages for harm caused by a defendant's acts." Id. at 741. The court stressed that "our holding today is commanded by the paramount public interest in ensuring that those persons or entities responsible for harming our environment and the welfare of our citizens be held fully responsible for the consequences of their actions, and deterred from committing future violations" of Louisiana's Environmental Quality Act. Id. at 740. The court further stated that "[w]e emphasize that our holding today is a narrow one addressing the applicability of the collateral source rule in the circumstances of this case." Id. at 745. Kansas City Southern Ry. involves circumstances far afield from what is at issue in this case and does not support Xavier's position that it can recover twice for the same damage to the same property.

### D. Xavier Has No Standing to Complain of Any Burden Imposed on FoxCor and Landis, and Xavier Has Not Established That Any Undue Burden Will Be Imposed On Them

Xavier argues that the FEMA-related documents amount to "many thousands of pages of information, and FoxCor and Landis would be unduly burdened by having to produce such information." (Xavier Memo. at 5.) FoxCor and Landis have not appeared in this case and have not complained that the documents would be difficult to locate. To the contrary, FoxCor had no difficulty locating these documents -- it initially produced 98 pages of documents pertaining to the FEMA applications, which Xavier's counsel has contended were "inadvertently produced." (E-mail from Kevin M. McGlone, Esq. to Simeon Reimonenq, Jr., Esq. dated July 19, 2007, attached as Exhibit C hereto.) Xavier has no standing to complain of any burden imposed on FoxCor and Landis, and has submitted no affidavit or other evidence to substantiate any such burden.

### E. To the Extent That Landis and FoxCor Have Already Produced Documents Pertaining to Xavier's Submissions to FEMA, the Inadvertent Disclosure Doctrine Does Not Apply

On July 19, 2007, while this motion to quash was pending, Xavier's counsel sent an e-mail to Travelers' counsel claiming that certain documents produced by FoxCor were "inadvertently produced," referring to certain documents that appeared to contain information concerning Xavier's submissions to FEMA.[3] (E-mail from Kevin M. McGlone, Esq. to Simeon Reimonenq, Jr., Esq. dated July 19, 2007, attached as Exhibit C hereto.) Even if this Court were to grant the motion to quash the subpoenas with respect to the FEMA documents, the inadvertent disclosure doctrine would not apply to those documents that were previously produced by FoxCor. While courts have, in some circumstances, ordered that privileged documents be

---

[3] Counsel for Travelers promptly returned these documents pursuant to Xavier's request, but retained the right to have this Court adjudicate the parties' dispute.

203279-1        10

returned when they are inadvertently disclosed, Xavier was not justified in seeking to require Travelers to return the non-privileged documents already produced by FoxCor simply because Xavier believes they are irrelevant. Inadvertent disclosure of purportedly "irrelevant" or "inadmissible" documents does not present the same concerns as inadvertent disclosure of privileged documents. See Recon/Optical Inc. v. Lockheed Martin Corp., 2000 WL 1210874, at *5 (D.D.C. May 25, 2000) (recognizing that documents that were inadvertently produced and claimed to be irrelevant could not be treated in the same manner as inadvertently produced privileged documents, ruling that "any inadvertent disclosure of material now claimed to be irrelevant waives the claim of irrelevancy only as to the documents already produced").

Even if the case law on inadvertent disclosure of privileged documents were applicable, Xavier could not satisfy the applicable standard for establishing inadvertent disclosure under those cases. Factors that courts consider in determining whether to require a party to return inadvertently produced privileged documents include: "(1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." Alldread v. Gren, 988 F.2d 1425, 1433 (5th Cir. 1993). Xavier has made no showing that FoxCor did not intend to produce the FEMA documents that were produced. The fact that 98 pages of these materials were produced strongly suggests that there was no intention to withhold these documents. It is not as if only one or two pages slipped through a careful reviewing process. See, e.g., Stavanger Price K/S v. M/V Joseph Patrick Eckstein, 1993 WL 35174, at *4 (E.D. La. Feb. 10, 1993) (holding that privilege was waived by "inadvertent" disclosure where, although counsel acted quickly when the disclosure was discovered, there was "no showing of any

203279-1

11

precautions taken to prevent inadvertent disclosure," and it was clear that there must have been an initial decision to produce the document at issue).

### III. Work Performed By Landis and/or FoxCor on Xavier's Campus Prior to Katrina is Relevant to Determining the Amount of the Loss Under the Policy

Xavier also argues, without much explanation, that work performed by Landis and/or FoxCor on the Xavier campus prior to Katrina is irrelevant to this case. (Xavier Memo. at 5.) Xavier fails to recognize however, that Travelers is seeking only limited information regarding pre-Katrina work. The subpoenas request, in pertinent part:

> 11. All documents relating to any capital improvements made to any building at Xavier University of Louisiana during 18 months preceding Hurricane Katrina.
>
> 12. All documents relating to capital improvement plans to buildings at Xavier University of Louisiana as of the date of Hurricane Katrina that were planned or potentially planned for a period after Hurricane Katrina.

(Xavier Memo. Exs. 1 and 2.) These requests are relevant to the condition of Xavier's buildings just prior to Hurricane Katrina and in determining the extent to which the post-Katrina work included upgrades of the buildings vis-à-vis their pre-Katrina condition. For example, it appears that Xavier was in the process of putting new roofs on certain buildings at the time of Hurricane Katrina. In the case of at least one building, it appears that part or all of the old roof had been stripped off the building and a new roof had not yet been put on at the time of Katrina. Travelers should not be required to pay for stripping off a roof that had already been stripped or for putting on a new roof where that work was already in the process of being performed and was going to be performed prior to Katrina. Travelers is entitled to discovery of the documents that will reveal this type of information.

The age and condition of the building components at the time of Katrina is clearly relevant to calculating the amount of the loss under the Policy. Indeed, if the documents reveal

that Xavier recently renovated a particular building that was heavily damaged, that will be helpful to Xavier in establishing what would likely be a higher replacement cost. To the extent that Xavier was entitled to replacement cost coverage under the Policy, however, that is limited to the cost of replacing the damaged property with property "[o]f comparable material and quality" or "[t]he amount you [i.e., the insured] actually spend that is necessary to repair or replace the lost or damaged property," whichever is lower. (Policy, Deluxe Property Coverage Form, at 17.) It appears, for example, that certain kitchens in Xavier's buildings were scheduled prior to Katrina to be upgraded. Some of these kitchens sustained minimal damage, and were completely renovated after Katrina, apparently because Xavier was planning to upgrade them. To the extent that the work performed by Landis after Katrina included upgrades as opposed to replacement of damaged property with comparable materials, Travelers is not responsible for those additional costs. The documents requested regarding pre-Katrina work and improvements that were planned prior to Katrina will shed light on those factual issues.

## CONCLUSION

For all of the foregoing reasons, Xavier's motion to quash should be denied.

Respectfully submitted,

s/Simeon B. Reimonenq, Jr.
SIMEON B. REIMONENQ, JR., T.A., #19755
RALPH S. HUBBARD III, #7040
LUGENBUHL, WHEATON, PECK,
   RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

203279-1                    13

>Stephen E. Goldman (pro hac vice)
>Christopher J. Hug (pro hac vice)
>Wystan M. Ackerman (pro hac vice)
>ROBINSON & COLE LLP
>280 Trumbull Street
>Hartford, Connecticut 06103-3597
>Telephone:   (860) 275-8255
>Facsimile:   (860) 275-8299
>
>Attorneys for Travelers Property
>Casualty Company of America

## CERTIFICATE OF SERVICE

I hereby certify that, on July 31, 2007, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

>s/Simeon B. Reimonenq, Jr.
>SIMEON B. REIMONENQ, JR.