# EXHIBIT 1

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | NO.: 05-4182 |
| | SECTION "K" (2) |

FILED IN:  05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073,
05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885,
06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346,
06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931,
06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471,
06-5771, 06-5786, 06-5937, 06-7682, 07-0206, 07-0647,
07-0993, 07-1284, 07-1286, 07-1288, 07-1289

PERTAINS TO: LEVEE

---

## LEVEE PLAINTIFFS' RESPONSES TO DEFENDANT UNITED STATES OF AMERICA'S FIRST REQUESTS FOR ADMISSION

**COMES NOW** the Levee PLSC, which pursuant to ¶ IV(B)(h) of Case Management and

Scheduling Order No. 4 and Rule 36 of the Federal Rule of Civil Procedure, and on behalf of the

consolidated class action representatives ("Responding Parties"), provides the following

objections and responses to Defendant the United States' First Set of Requests for Admissions

(Common Liability).

## PRELIMINARY STATEMENT

By providing answers to these Requests for Admissions, Responding Parties do not

concede the relevancy, materiality, or admissibility of any information sought by any of the

Requests for Admissions, or any response hereto. Plaintiffs' responses are made subject to and

**Page 1 of 22**

without waiver of any objections as to the relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the information referred to, or of the responses given herein, or of the subject matter thereof, in any proceeding, including any arbitration of this action or any other subsequent proceeding.

Further, Responding Parties' responses have been made after a reasonable inquiry and

are

based solely on information presently known to them before they have had any opportunity to review any discovery responses or documents produced by Defendants in this litigation.

## REQUESTS FOR ADMISSIONS, OBJECTIONS, AND RESPONSES

### REQUEST FOR ADMISSION NO. 1:

Admit that the United States Army Corps of Engineers (USACE) did not operate the 17th Street Canal (see Complaint, ¶ 24) at anytime pertinent to the Complaint allegations.

### ANSWER NO. 1:

Denied. Upon information and belief, and in connection with drainage projects not authorized by Congress as hurricane protection projects, the USACE reviewed permit applications relating to dredging of the 17th Street Canal, including inter alia soil studies, and approved an inappropriate "I-wall" structure mounted atop sheet pilings of inadequate depth. The USACE managed the permit process, and thus controlled all aspects of the installation of inadequate flood wall structures on the 17th Street Canal. Subsequent "operation" by any third-party does not absolve of legal responsibility for its negligent acts and/or omissions.

**REQUEST FOR ADMISSION NO. 2:**

Admit that between July 15, 1974 and January, 10, 1992 the USACE was not responsible for managing any dredging project on the 17th Street Canal (see Complaint ¶¶.25-54, 196-215).

**ANSWER NO. 2:**

Denied. Upon information and belief, and in connection with drainage projects not authorized by Congress as hurricane protection projects, the USACE reviewed permit applications relating to dredging of the 17th Street Canal, including *inter alia* soil studies, and approved an inappropriate "I-wall" structure mounted atop sheet pilings of grossly inadequate depth. The USACE managed the permit process, and thus controlled the nature of the inadequate "as built|" flood wall structures on the 17th Street Canal.

**REQUEST FOR ADMISSIONS NO.3:**

Admit that the only USACE activity, regarding the 17th Street Canal dredging between 1974 and 1992, that you contend caused injury to you or damage to your property was the granting of the dredging permit(s) (see Complaint ¶¶ 196-205).

**ANSWER NO. 3:**

Denied. Upon information and belief, and in connection with drainage projects not authorized by Congress as hurricane protection projects, the USACE reviewed permit applications relating to dredging of the 17th Street Canal, including inter alia soil and design studies, and approved an inappropriate "I-wall" structure mounted atop sheet pilings of inadequate depth. The USACE managed the permit process, and thus controlled the nature of the inadequate flood wall structure "as built" on the 17th Street Canal.

**REQUEST FOR ADMISSIONS NO.4:**

Admit that the USACE could not legally implement any hurricane protection plan involving the 17th Street, London Avenue or Inner Harbor Navigation (west side) Canals without approval by the State of Louisiana through its legal entities: SWB, the Board of Commissioners of the Orleans Parish Levee District (OLD), and/or the Board of Commissioners of the East Jefferson Levee District(EJLD) (see Complaint ¶¶. 208, 210-11).

**ANSWER NO.4:**

Denied.  The USACE could not legally implement any hurricane protection plan involving the 17th Street, London Avenue or Inner Harbor Navigation (west side) Canals without the specific authorization of the U.S. Congress.

**REQUEST FOR ADMISSIONS NO.5:**

Admit that neither the USACE, nor any other United States of America entity, owned the land underlying or surrounding the 17th Street, London Avenue, and Inner Harbor Navigation (west bank) Canals.

**ANSWER NO. 5:**

Denied because discovery has not progressed to a point where Plaintiffs have sufficient information to admit or deny this request for admission.

**REQUEST FOR ADMISSION S NO.6:**

Admit that neither the USACE, nor any other United States entity, was responsible for "oversight, maintenance, and inspection of the 17th Street Canal levee/flood wall system ...." (see Complaint ¶ 211) at the time of the events alleged in the Complaint.

**ANSWER NO. 6:**

Denied.

**REQUEST FOR ADMISSIONS NO.7:**

Admit that the USACE did not engineer or design the dredging project for the 17th Street Canal (see Complaint ¶ 214).

**ANSWER NO. 7:**

Responding Parties object to this Request for Admission on the grounds that the term "designed" is vague and ambiguous. Specifically, the term "design" necessarily includes either:

(a) a decision as to what type of dredging to use in a given location;

(b) the creation or drafting of written plans providing specifications for the dredging; or

(c) the process of implementing dredging based on prior experience or knowledge, without the use of written plans.

Accordingly, it is unclear from the Request for Admission, as phrased, which meaning(s) Propounding Parties should ascribe to the term "design."

Answering further, this Request for Admission is denied because, in connection with a dredging project not authorized by the U.S. Congress as a flood control project, the USACE reviewed permit applications relating to dredging of the 17th Street Canal, including *inter alia* soil and design studies, and approved an inappropriate "I-wall" structure mounted atop sheet pilings of inadequate depth. The USACE managed the permit process, and thus controlled the nature of the inadequate flood wall structure "as built" on the 17th Street Canal.

**REQUEST FOR ADMISSIONS NO.8:**

Admit that the USACE did not physically place any piezometers for testing done at the 17th Street, London Avenue or IHNC (west side) Canals. (see, e.g., Complaint ¶ 215).

**ANSWER NO. 8:**

Denied. Upon information and belief, and in connection with drainage projects not authorized by Congress as hurricane protection projects, the USACE reviewed permit applications relating to dredging of the 17th Street Canal, including inter alia soil and design studies, and piezometer studies, and approved an inappropriate "I-wall" structure mounted atop sheet pilings of inadequate depth. The USACE managed the permit process, and thus controlled the nature of the inadequate flood wall structures "as built" on the 17th Street Canal.

**REQUEST FOR ADMISSIONS NO.9:**

Admit that the design and construction of the 17th Street Canal levee/flood wall system was performed by contractors, not by employees of the USACE. (See Complaint ¶ 223).

**ANSWER NO. 9:**

Responding Parties object to this Request for Admission on the grounds that the term "designed" is vague and ambiguous. Specifically, the term "design" necessarily includes either (a) a decision as to what type of flood control structure to use in a given location; (b) the creation or drafting of written plans providing specifications for a specific type of flood control structure; or (c) the process of constructing a specific type of flood control structure based on prior experience or knowledge, without the use of written plans. Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties

ascribe to the term "designed."

Responding Parties further object to the term "employee" on the grounds that it is vague and ambiguous. As used, the term "employee" may mean an individual who is paid a wage for work performed on behalf of the USACE, but it may also refer to a contractor – whether an individual or an entity – who is "employed" by the USACE to perform certain projects or tasks for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and flood walls" is vague and ambiguous. Specifically, the phrase "levees and flood walls" does not specify or differentiate between:

(a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership;

(b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE;

(c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control;

(d) so-called "levees and flood walls" that also serve non-flood control purposes; and/or

(e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous. Propounding Parties do not specify whether they are

referring to any mound of soil, or a flood control structure constructed in compliance with the

USACE's standards, guidelines, or policies governing the construction of levees intended to

protect human life using funds specifically appropriated by the United States Congress for the

purpose of levee construction.

Upon information and belief, and in connection with drainage projects not authorized by

the U.S. Congress as hurricane protection projects, the USACE reviewed permit applications

relating to dredging of the 17th Street Canal, including inter alia soil and design studies, and

approved an inappropriate "I-wall" structure mounted atop sheet pilings of inadequate depth.

The USACE managed the permit process, and thus controlled the nature of the inadequate flood

wall structures "as built" on the 17th Street Canal.

Accordingly, without waiving any objections to this Request for Admission, after

conducting a reasonable inquiry into the information known to, or reasonably obtainable by

Responding Parties, Responding Parties state that they have insufficient information to admit or

deny this Request for Admission.

## REQUEST FOR ADMISSIONS NO. 10:

Admit that neither the USACE nor any other United States entity had care, custody or

control of the London Avenue Canal levee and flood wall systems at any time pertinent to the

events complained of in the Complaint. (see Complaint ¶ 237).

## ANSWER NO. 10:

Denied. Upon information and belief, and in connection with drainage projects

not authorized by Congress as hurricane protection projects, the USACE reviewed permit

applications relating to the London Avenue Canal, including inter alia soil and design studies, and approved an inappropriate "I-wall" structure mounted atop sheet pilings of inadequate depth. The USACE managed the permit process, and thus controlled the nature of the inadequate flood wall structures "as built" on the London Avenue Canal.  Subsequent care, custody and/or control by third-parties did not cure these defects, or stop their active and progressive damage to the integrity of the flood wall support structures (which were not levees).

**REQUEST FOR ADMISSIONS NO. 11:**

Admit that the London Avenue Canal levee and flood wall system was physically built by contractor(s) and not by the USACE (see Complaint ¶¶ 238 & 239).

**ANSWER NO. 11:**

Denied. Upon information and belief, and in connection with drainage projects not authorized by Congress as hurricane protection projects, the USACE reviewed permit applications relating to flood walls to be built on the London Avenue Canal, including inter alia soil and design studies, and approved an inappropriate "I-wall" structure mounted atop sheet pilings of inadequate depth. The USACE managed the permit process, and thus controlled the nature of the inadequate flood wall structures "as built" on the London Avenue Canal. Subsequent construction by third-parties did not cure these defects, or stop their active and progressive damage to the integrity of the flood wall support structures (which were not levees).

**REQUEST FOR ADMISSIONS NO. 12:**

Admit that the London Avenue Canal levee and flood wall system was designed by contractor(s) and not by the USACE (see Complaint ¶ 239 & 240).

**ANSWER NO. 12:**

Responding Parties also object to this Request for Admission on the grounds that the

term

"designed" is vague and ambiguous. Specifically, the term "design" necessarily includes either:

(a) a decision as to what type of flood control structure to use in a given location;

(b) the creation or drafting of written plans providing specifications for a specific type of

flood control structure; or

(c) the process of constructing a specific type of flood control structure based on prior

experience or knowledge, without the use of written plans.

Accordingly, it is unclear from the Request for Admission, as phrased, which of the

aforementioned meanings Propounding Parties ascribe to the term "designed."

Responding Parties further object to the term "contractor" on the grounds that it is vague

and ambiguous. As used, the term "contractor" may mean an individual who is paid a wage for

work performed on behalf of the USACE, but it may also refer to a contractor – whether an

individual or an entity – who is "employed" by the USACE to perform certain projects or tasks

for, or on behalf of, the USACE.

Responding Parties further object to this Request for Admission on the grounds that the

phrase "levees and flood walls" is vague and ambiguous. Specifically, the phrase "levees and

flood walls" does not specify or differentiate between:

(a) such flood protection structures which were constructed by State or local authorities,

but transferred to federal ownership;

(b) such flood protection structures which were constructed by State or local authorities,

**Page 10 of 22**

with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE;

(c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control;

(d) so-called "levees and flood walls" that also serve non-flood control purposes; and/or

(e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous. Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee construction.

Upon information and belief, and in connection with drainage projects not authorized by Congress as hurricane protection projects, the USACE reviewed permit applications relating to flood walls to be built on the London Avenue Canal, including inter alia soil and design studies, and approved an inappropriate "I-wall" structure mounted atop sheet pilings of inadequate depth. The USACE managed the permit process, and thus controlled the nature of the inadequate flood wall structures "as built" on the London Avenue Canal.

Therefore, this Request for Admission is denied.

**REQUEST FOR ADMISSIONS NO. 13:**

Admit that any alleged failure of the United States of America to comply with a federal statute or regulation cannot create a duty under state law that is cognizable under the Federal Tort Claims Act (see Complaint ¶¶ 245-249).

## ANSWER NO. 13

Denied. Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2674, in a suit against the federal government, liability is controlled by the law of the jurisdiction where the negligent or wrongful conduct occurred. While federal law and the Federal Rules of Civil Procedure control the *procedural* aspects of this suit, it is Louisiana law that determines whether the ultimate facts give rise to a cause of action.

The United States is liable if a private person would be liable to the claimants in accordance with the law of the place where the act or omission occurred (*i.e.*, Louisiana). Thus, Louisiana law is directly relevant, including whether a tort has been committed and whether damages are recoverable. *See,* generally, La. C.C. arts. 1, *et seq. See*, specifically, La. C.C. arts. 667, 2315, 2315.1, 2315.2, 2315.6, 2316, 2317, 2317.1, 2320, 2323, 2324, and 2324.1.

## REQUEST FOR ADMISSIONS NO. 14:

Admit that neither the USACE, nor any other United States entity, had the final responsibility for the care and inspection of 17th Street, London Avenue, and IHNC (west side) Canal levees or flood walls at any time pertinent to the events complained of in the Complaint. (see Complaint ¶ 251).

## ANSWER NO. 14:

Denied. Upon information and belief, and in connection with drainage projects not

authorized by Congress as hurricane protection projects, the USACE reviewed permit applications relating to floodwalls to be built on the 17TH Street Canal, the London Avenue Canal, and/or the IHNC (west side) including inter alia soil and design studies, and approved an inappropriate "I-wall" structure mounted atop sheet pilings of inadequate depth.

The USACE managed the permit process, and thus controlled the nature of the inadequate flood wall structure on the 17th Street Canal, the London Avenue Canal, and the IHNC (west side).

Subsequent "final responsibility" by third-parties for the "care and inspection" of these structures did not cure these defects, or stop their active and progressive damage to the integrity of the flood wall support structures (which were not levees).

**REQUEST FOR ADMISSIONS NO. 15:**

Admit that neither the USACE, nor any other United States entity, owned, operated, maintained or had care, custody or control of the flood protection structures and flood wall system on the western side of the IHNC at any time relevant to the events complained of in the Complaint. (see Complaint ¶¶ 255-257).

**ANSWER NO. 15:**

Responding Parties object to this Request for Admission on the grounds that the term "maintained" is vague and ambiguous. Specifically, the term "maintain" necessarily includes either:

(a) the mere inspection of a putative levee or flood wall;

(b) the repair of a putative levee or flood wall;

(c) the upgrade or improvement of a putative levee or flood wall; or

(d) the process of replacing a putative levee or flood wall for whatever reason.

Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "maintained."

Responding Parties further object to this Request for Admission on the grounds that the phrase "levees and flood walls" is vague and ambiguous. Specifically, the phrase "levees and flood walls" does not specify or differentiate between:

(a) such flood protection structures which were constructed by State or local authorities, but transferred to federal ownership;

(b) such flood protection structures which were constructed by State or local authorities, with ownership retained by State or local authorities, but responsibility for maintenance or repair assumed by, or transferred to, the USACE;

(c) such flood control structures constructed by the USACE, but using funds appropriated by Congress for purposes other than flood control;

(d) so-called "levees and flood walls" that also serve non-flood control purposes;

(e) and such flood control structures which were wholly "designed," owned, in the exclusive custody of, maintained or repaired by entities other than the United States or the USACE.

Responding Parties object to this Request for Admission on the grounds that the term "levee" is vague and ambiguous. Propounding Parties do not specify whether they are referring to any mound of soil, or a flood control structure constructed in compliance with the USACE's standards, guidelines, or policies governing the construction of levees intended to protect human life using funds specifically appropriated by the United States Congress for the purpose of levee

construction.

Upon information and belief, the USACE reviewed permit applications relating to floodwalls to be built on the IHNC (western side) including inter alia soil and design studies, and approved an inappropriate "I-wall" structure mounted atop sheet pilings of inadequate depth. The USACE managed the permit process, and thus controlled the nature of the inadequate flood wall structure on the IHNC (western side).   Ownership or subsequent operation or maintenance activities by third-parties did not cure these defects, or stop their active and progressive damage to the integrity of the floodwalls and their support structures (which were not levees).

Therefore, this Request for Admission is denied.

## REQUEST FOR ADMISSIONS NO. 16:

Admit that neither the USACE nor any other entity of the United States had the duty to repair Floodgate W-30 that allegedly was damaged on September 11,2004, by a New Orleans Public Belt Railroad train derailment.

## ANSWER NO. 16:

Objection. This request for admission calls for a conclusion of law (*i.e.*, "duty") which is not properly the subject matter of an admission. Should an answer be required, this request for admission is denied.

## REQUEST FOR ADMISSIONS NO. 17:

Admit that neither the USACE nor any other entity of the United States of America designed or constructed the CSX "railroad crossing at or near the IHNC's flood protection structures" (see Complaint ¶ 258).

## ANSWER NO. 17:

Responding Parties object to this Request for Admission on the grounds that the term "constructed" is vague and ambiguous. Specifically, the term "constructed" necessarily includes investigation; reconnaissance and planning; design; and contract bidding, negotiation, and execution. Accordingly, it is unclear from the Request for Admission, as phrased, which of the aforementioned meanings Propounding Parties ascribe to the term "constructed."

Accordingly, without waiving any objections to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

## REQUEST FOR ADMISSIONS NO. 18:

Admit that at all times pertinent hereto the IHNC levees were not in the "care, custody, control and garde" of the USACE nor any other entity of the United States of America (see Complaint ¶ 265-66).

## ANSWER NO. 18:

Objection. This request for admission calls for a conclusion of law (*i.e.*, "care, custody, control and garde") which is not properly the subject matter of an admission. Should an answer

be required, this request for admission is denied.

**REQUEST FOR ADMISSIONS NO. 19:**

Admit that the USACE did not have care, custody or control "of the entire New Orleans

levee and flood wall systems at all times pertinent herein...." (see Complaint ¶ 270).

**ANSWER NO. 19:**

Objection. This request for admission calls for a conclusion of law (*i.e.,* "care, custody,

control and garde") which is not properly the subject matter of an admission. Should an answer

be required, this request for admission is denied.

**REQUEST FOR ADMISSIONS NO. 20:**

Admit that state and local interests were required to fund a portion of the costs of the

Lake Ponchartrain & Vicinity Hurricane Protection System (LP&VHPS) (see Complaint ¶ 105).

**ANSWER NO. 20:**

Responding Parties object because sharing of funding is irrelevant to fault.

Responding Parties object to this Request for Admission on the grounds that it is vague

and ambiguous, and calls for speculation. Specifically, this Request for Admission does not

specify the federal law involved, and even if it did, this Request asks for a legal interpretation of

the law.

The Request for Admission is also vague and ambiguous, and potentially irrelevant in

that it fails to specify what aspect of the Lake Pontchartrain & Vicinity Hurricane Protection

Project was supposedly paid for by "state or local entities."

The Request for Admission further fails to specify which "state or local entities" are

involved, or the amount or percentage of the cost to be "borne" by these entities. Finally, it assumes facts not in evidence in that there has been no evidence presented that establishes what, if any, amount of money such entities actually paid in connection with the Lake Pontchartrain & Vicinity Hurricane Protection Project.

Accordingly, and without waiving any objection to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

## REQUEST FOR ADMISSIONS NO. 21:

Admit that state and local interests demanded that the LP&VHPS be completed as authorized before they would agree to adopt any revised Standard Project Hurricane (SPH) criteria.

## ANSWER NO. 21:

Objection. This Request for Admission fails to specify which "state or local entities" are involved, or who made what 'demands." It assumes facts not in evidence in that there has been no evidence presented that establishes what, if any, demands were made by state and local interests in connection with the Lake Pontchartrain & Vicinity Hurricane Protection Project.

Accordingly, and without waiving any objection to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

**REQUEST FOR ADMISSIONS NO. 22:**

Admit that raising any flood wall system to correct for subsidence required that the existing flood wall be removed and a new flood wall constructed.

**ANSWER NO. 22:**

Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

**REQUEST FOR ADMISSIONS NO. 23:**

Admit that adopting a different datum to replace the National Geodetic Vertical Datum of 1929 as the vertical standard applied to flood wall construction would necessitate that later flood walls or levees be built higher than earlier ones.

**ANSWER NO. 23:**

Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

**REQUEST FOR ADMISSIONS NO. 24:**

Admit that the USACE had an obligation to cooperate with state and local entities to attempt to develop the hurricane protection system that the state and local entities wanted and would help to fund.

**ANSWER NO. 24:**

Objection. This Request for Admission fails to specify which "state or local entities" the USACE "had an obligation to cooperate with."

This Request for Admission fails to specify what hurricane protection system "that the state and local entities wanted and would help to fund."

It further assumes facts not in evidence in that there has been no evidence presented that establishes what, if any, obligation(s) the USACE had regarding cooperation with state and local entities or what hurricane protection system "that the state and local entities wanted and would help to fund."

Accordingly, and without waiving any objection to this Request for Admission, after conducting a reasonable inquiry into the information known to, or reasonably obtainable by Responding Parties, Responding Parties state that they have insufficient information to admit or deny this Request for Admission.

**REQUEST FOR ADMISSIONS NO. 25:**

Admit that the LP&VHPS project was not complete when Hurricane Katrina arrived in 2005.

**ANSWER NO. 25:**

Responding Parties object to this Request for Admission on the grounds that it is vague and ambiguous, and potentially irrelevant. Specifically, this Request for Admission fails to specify what is meant by "complete." Does "complete" refer to portions of the LPVHPP that Defendants claim are relevant to this lawsuit, or does it refer also to parts of the project that were never intended to protect, or apply to, the relevant geographic areas involved in this litigation. Furthermore, this Request for Admission does not specify by what standards "completion" is to be determined, and it also calls for an expert opinion.

Accordingly, notwithstanding the foregoing, and without waiving any objection to this

Request for Admission, Responding Parties deny this Request for Admission.

**RESPECTFULLY SUBMITTED:**

**LEVEE LITIGATION GROUP**

By:___s/Joseph M. Bruno_____
Joseph M. Bruno (#3604)
Law Office of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile:(504) 581-1493
E-Mail:jbruno@brunobrunolaw.com
Plaintiffs' Liaison Counsel

-and-

GERALD E. MEUNIER (La. Bar #9471)
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Phone:504/522-2304
Facsimile:504/528-9973
E-mail:gmeunier@gainsben.com
Levee PSLC Liaison Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 26th day of June, 2007.

_____ /s/ Joseph M.Bruno_____

Joseph M. Bruno