UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:    KATRINA CANAL BREACHES               CIVIL ACTION
          CONSOLIDATED LITIGATION
                                               NO.: 05-4182

                                               SECTION "K" (2)

FILED IN:   05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073,
            05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885,
            06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346,
            06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931,
            06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471,
            06-5771, 06-5786, 06-5937, 06-7682, 07-0206, 07-0647,
            07-0993, 07-1284, 07-1286, 07-1288, 07-1289

PERTAINS TO: LEVEE

---

### DEFENDANTS' CONSOLIDATED OPPOSITION MEMORANDUM TO PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND LEVEE MASTER CONSOLIDATED CLASS ACTION COMPLAINT AND MOTION TO CERTIFY

**I.    INTRODUCTION:**

On July 18, 2007, scarcely one hundred days before the November 5, 2007 class certification hearing, plaintiffs filed Motions for Leave to File an Amended Levee Master Consolidated Class Action Complaint (Document # 6584) and an Amended Motion for Class Certification (Document #6589). Plaintiffs' pleadings propose to do the following:

1.    Remove originally designated named plaintiffs/class representatives and replace them with new ones;

2.    Enlarge the geographic boundaries of certain sub-classes;

3.    Assert claims by some sub-classes against some Levee Defendants when no claims had been previously made therein;

4.      Add an entirely new defendant, National Union Insurance Company,[1] as an alleged liability insurer of East Jefferson Levee District; and

5.      Assert claims pursuant to Fed.R.Civ.P. 23(b)(2), i.e. for "injunctive relief to the class as a whole because the harm is not suffered by any single individual, rather it is societal in nature and is suffered by the class as a whole, and can only be fairly and efficiently adjudicated as such."[2]

For the reasons set out below, plaintiffs' request to amend their complaint and their motion to certify are untimely and, if granted, would unduly prejudice the Levee Defendants' abilities to properly prepare for the November class certification hearings.  This is particularly true in light of plaintiffs' failure to articulate a compelling reason, or good cause, to support the need for amendments.

## II      PROCEDURAL HISTORY:

This Court entered Case Management and Scheduling Order No. 4 ("CMO 4") on March 1, 2007.[3]  After finding "that ample time for completion of the pleadings has been provided..., CMO 4 ordered that the deadline for amending pleadings is now deemed lapsed."[4]  CMO 4 further ordered plaintiffs to file a Master Complaint no later than March 15, 2007, and a motion for class certification no later than March 30, 2007.  Plaintiffs complied with these aspects of CMO 4 by filing their Superseding Master Consolidated Class Action Complaint ("Master Complaint") on March 15, 2007, and their class certification motion on March 30, 2007.[5]

---

[1]It is specifically noted that National Union has never been a party to the consolidated proceedings–even in the earlier iterations, which were filed prior to the (original) Master Complaint.

[2]See Amended Motion for Class Certification pp. 13-14.

[3]Document 3299 (CMO 4).

[4]Document #3299, at pp.12-13 (CMO4).

[5]Document 3420 (Master Complaint); Document #3629 (Motion to Certify Class).

In conformity with the deadlines established by CMO 4, the Levee Defendants propounded written class certification discovery to plaintiffs on April 30, 2007.   Among other things, the discovery sought  information about each proposed class representative's damage and the causes thereof.  Although CMO 4 required the plaintiffs to respond to class certification written discovery no later than May 30, 2007, plaintiffs did not do so.  Rather, plaintiffs' responses were forwarded two weeks later on June 12, 2007.[6]  The responses included wholesale objections to any discovery requests perceived by the plaintiffs to relate to the individual causation and damage claims made by the class representatives.   At the same time, plaintiffs moved for a protective order to bar the Levee Defendants from questioning the class representatives about their individual damages and the causes thereof.[7]  Magistrate Wilkinson denied plaintiffs' motion for protective order on July 3, 2007, finding the information sought to be "vitally important."[8]

Despite Magistrate Wilkinson's ruling on the protective order motion, Levee Defendants were forced to file a motion to compel to obtain written discovery responses relate to plaintiffs' individual claims because plaintiffs refused to amend their responses after a Rule 37.1 conference. The Levee Defendants' motion was granted in part, denied in part, and affirmed in part on July 19, 2007.  In his ruling Magistrate Wilkinson noted that "for the same reasons set out in my previous order denying plaintiffs' motions for protective orders, Record Doc. No. 6222, . . . some damages discovery concerning the claims of . . . proposed class representatives, is relevant and proportionally

---

[6]Document #6592, at p.8 (Order Granting Motion to Compel).

[7]*See* Document #s 5761 and 6011 (Motions for Protective Order).

[8]*See* Document #6222, at p.2; See also, Document #6592, at p.20 (Order Granting Motion to Compel);  See also,. Plaintiffs cannot argue that the individual claims of each plaintiff are irrelevant to  class certification since the Fifth Circuit held, in Steering Committee v. Exxon Mobile Corp., 461 F.3d 598, 601 (5th Cir.2006), *citing*, Castano v. American Tabacco Co., 84 F.3d 734, 745 n.21 (5th Cir. 1996), that "the cause of action as a whole must satisfy Rule 23(b)(3)'s predominance requirement."

appropriate to the class certification discovery track.''[9]

Because plaintiffs asserted that some otherwise relevant documents and/or materials were privileged, Magistrate Wilkinson's order required plaintiffs to produce a privilege log on July 25, 2007.  Plaintiffs were further ordered to supplement their class certification written discovery responses no later than August 2, 2007.  CMO 4, as amended, requires that all fact depositions related to class certification must be completed by August 3, 2007.[10]

The Levee Defendants had hoped to obtain reasonably full and complete written discovery responses relating to class certification *prior* to the depositions of the twenty-two class representatives.  Thus, in addition to interrogatories and requests for production, the Levee Defendants served each class representative with a written request for production pursuant to Fed.R.Civ.P 30(b)(5) and 34.[11]  The request for production was attached to each notice of deposition as Exhibit A.[12]

The depositions of twenty-two (22) class representatives were taken between July 9 and July 19, 2007.  Thirteen (13) failed or refused to furnish any documents (other than Form 95s and/or photos) responsive to Exhibit A.[13]  Nine made (9) made minimal responses.  None of the class representatives responded to all items of Exhibit A; and despite plaintiffs' counsel's on the record assurances, none of the initial responses has been supplemented as of this filing.  Magistrate

---

[9]Document #6592, at p.20 (Order Granting Motion to Compel); See also, Document #6592, at pp.30-31 (Order Granting Motion to Compel).

[10]Document #5919 (Order).

[11]*See* Document #s 5980, 5982, 5983, 5985, 5987, 5989, 5991, 5993, 5994, 5996, 5998-6008, 6010, 6012, 6014, 6015, 6060, 6062 (Notices of Depositions with Rfpds attached).

[12]*Id.*

[13]Exhibit 1 *in globo* (Class Rep Depo Excerpts).

Wilkinson's order of July 19, 2007 reserved to the Levee Defendants the right to move to re-depose class representatives after plaintiffs have supplemented their written discovery responses.

Thus, at best, the Levee Defendants will have responses to their written discovery on August 2, 2007, over two months after it was initially due, and scarcely three months before the class certification hearing. Yet, in response to Magistrate Wilkinson's order that plaintiffs file a privilege log on July 25, 2007, plaintiffs instead filed a pleading entitled "Levee and MRGO Plaintiffs' Response to the Courts' Order of July 19, 2007 Re: Privileges."[14] As the title suggests, the document is not a log at all but, rather, an explanation as to why the plaintiffs are unable to comply with the requirement that a log be filed. In essence, the plaintiffs say there are too many documents to review that are potentially responsive to the Levee Defendants' discovery requests, thus, they have not been reviewed.[15]

## III   PROCEDURAL IMPLICATIONS OF PERMITTING THE AMENDMENTS:

On July 18, 2007 (16 days before the fact discovery cut off for class certification) plaintiffs filed their Motion for Leave to File Plaintiffs' "Restated" Levee Master Consolidated Class Action Complaint ("Amended Master Complaint"). The Amended Master Complaint adds eight new class representatives who are alleged to own nineteen (19) separate pieces of real property.[16] These eight proposed class representatives purport to replace nine original plaintiffs who, according to plaintiffs',

---

[14]Document #6685

[15]In correspondence dated July 26, 2007, counsel reminded plaintiffs of the Court's May 23, 2007, Discovery Order Concerning Materials as to Which Privileges May be Asserted wherein privileges are deemed not to have been waived when producing documents in bulk. As of this writing, plaintiffs have not responded. *See* Exhibit 2

[16]This number was arrived at by including the two additional properties defendants were first made aware of at this deposition. Most of 19 new properties are duplex or multi unit properties. This is significant because a duplex or multi unit properties takes about the same amount of time to inspect as two separate properties.

no longer wish to serve.  Thus, the following rough time line will result if the amendments are permitted:

(1)     Plaintiffs are to produce documents and provide answers to interrogatories in accordance with Magistrate Wilkinson's July 19, 2007 order no later than August 2, 2007.  At that point, Levee Defendants must decide whether to move to retake class representative depositions in light of their supplemented discovery responses. Certain to affect that decision will be the lack of available time leading up to the class certification hearing;

(2)     Depositions of fact witnesses are to be completed by August 3, 2007; although without discovery responses, Levee Defendants are hampered in their efforts to identify such fact witnesses;

(3)     Levee Defendants received qualified reports of plaintiffs' experts on July 30, 2007;

(4)     Levee Defendants' experts are arranging to inspect nineteen (19) new properties by August 3, 2007;[17]

(5)     Levee Defendants took depositions of the proposed "substitute" class representatives while property inspections are ongoing and, as with the other proposed class representatives, without the benefit of discovery responses or materials responsive to Exhibit A to the notices of deposition;

(6)     Levee Defendants' experts will need to incorporate the seventeen new properties

---

[17]The cost and fees of inspections of real properties by engineers and real estate appraisers is considerable , and the Levee Defendants specifically reserve their rights to seek reimbursement of these costs from the plaintiffs.  It is entirely possible that the costs incurred by the additions and/or deletions of plaintiffs could be in the range of $150,000.00.

inspections and depositions into their expert reports by August 27, 2007;

(7)     Levee Defendants' experts have less than 30 days to provide responsive reports to

plaintiffs' experts;

(8)     Defense counsel will be preparing for and taking the depositions of plaintiffs' experts

throughout August 2007;

(9)     The deadline for plaintiffs to file memoranda in support of their class certification

motion is August 31, 2007; and

(10)    Levee Defendants are to file their opposition memoranda by September 28, 2007.

The prejudice to the Levee Defendants by further compressing an already ambitious class

certification time line is clear.  Yet plaintiffs state no compelling reasons as to why additional class

representatives are required, why sub-class boundaries require re-definition, or why some sub-classes

now must bring new claims against the Levee Defendants when no such claims had been advanced

to date.  Plaintiffs have also failed to articulate a compelling reason to add a wholly new defendant

within three months of a class certification hearing.

## IV     FEDERAL RULE CIVIL PROCEDURE 23(b)(2) RELIEF:

Plaintiffs' amended complaint and amended class certification motion seek relief under Fed.

R. Civ. P. 23(b)(2).[18]  Rule 23(b)(2) permits class certification when all the prerequisites of Rule

23(a) have been met and "the party opposing the class has acted or refused to act on grounds

generally applicable to the class, thereby making appropriate final injunctive relief or corresponding

declaratory relief with respect to the class as a whole . . .".

On April 30, 2007, Levee Defendants propounded written class certification discovery, as

---

[18]See Restated Levee Master Consolidated Class Action Complaint at ¶25, 205c; Amended Motion for
Class Certification pp. 13-14.

follows:

**INTERROGATORY NO. 11:**   If you are seeking class certification under Federal Rules of Civil Procedure 23(b)(2) describe the basis for your assertion that class certification would be appropriate pursuant to Rule 23(b)(2), including a description of the specific injunctive and/or declaratory relief you seek and the specific conduct of each defendant that you seek to enjoin and/or compel.

**INTERROGATORY NO. 12:**   In your motion for class certification, you contend that "certain elements of class wide damage such as the breakdown in social structure and loss of cultural identity, might be remedied by way of declaratory and/or injunctive relief." State whether you are seeking such relief and, if so, describe the specific declaratory and/or injunctive relief that you are seeking to remedy these alleged damages.

On June 12, 2007, plaintiffs responded to Interrogatory No. 11 by saying "See Plaintiffs' certification papers."  Similarly, the response to Interrogatory No. 12 was:

> "Objection.  Plaintiffs object on the grounds that this request seeks the disclosure of expert opinions and reliance materials, all of which is not yet due under the deadlines established by CMO #4, as amended."

Subsequently, Magistrate Wilkinson's July 19, 2007 order required plaintiffs to answer both interrogatories on or before August 2, 2007.  However, by the time the Levee Defendants receive plaintiffs' supplemental responses, the time to undertake discovery relative to their Rule 23(b)(2) contentions will have long since passed.

The fact that the opportunity to conduct such discovery is necessary to form a fair appreciation of plaintiffs' contentions should not be in doubt.  Clearly, the Rule 23(b)(2) allegations

contained in both the amended complaint and the amended class certification motion are purely conclusory and shed no light whatsoever upon what conduct plaintiffs are seeking to enjoin.

**V      LAW & ARGUMENT:**

**A.      LAW GOVERNING UNTIMELY AMENDMENTS:**

It is well settled that an untimely filed Motion for Leave to depart from a scheduling order requires that a plaintiff "satisfy both the requirements of [Federal Rule of Civil Procedure] Rule 15 and Rule 16 before obtaining leave."[19] Under Rule 15, the factors the Court considers in determining whether a substantial reason exists to grant a Motion for Leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."[20] Additionally, the Fifth Circuit recognized, in S&W Enterprises, LLC v. Southtrust Bank of Alabama, that Rule 16(b) "governs amendment of pleadings once a scheduling order has been issued by the district court."[21] Fed.R.Civ.P. 16(b) (hereinafter "Rule 16(b)") specifically states that a scheduling order "shall not be modified except **upon a showing of good cause** and by leave of the district judge..."(emphasis added).[22] Furthermore, the Fifth Circuit has acknowledged that the purpose of requiring a showing of good cause for an untimely filed Motion for Leave to amend

---

[19]*See* Southwestern Bell Telephone Co. v. City of El Paso, 346 F.3d 541, 546 (5th Cir. 2003); *See also* Kemp v. Metabolife International, Inc., 2004 WL 2095618, *2 (E.D. La. 2004).

[20]*See* Schiller v. Physicians Resource Group, 342 F.3d 563, 566 (5th Cir.2003); Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir.1993).

[21]S&W Enterprises, LLC v. Southtrust Bank of Alabama, 315 F.3d 533, 536 (5th Cir. 2003); See also, Smith v. BCE, Inc., 2007 WL 570302, at p. 4 (5th Cir. 2007).

[22]Fed.R.Civ.P 16(b).

pleadings is to promote "court efficiency" and "to expedite pretrial procedure."[23]

The good cause standard requires the movant "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."[24]  Consequently, "[o]nly upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."[25] Moreover, where a substantial delay will result, the "plaintiff bears the burden of demonstrating that [the failure to amend within the parameters of the scheduling order] was due to oversight, inadvertence or excusable neglect."[26]

The S&W Enterprises Court articulated a four-part test for a determination of "good cause" under Rule 16(b): "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice."[27]

## B.   PLAINTIFFS HAVE NOT OFFERED A SUFFICIENT EXPLANATION FOR THIS AMENDMENT:

Beyond their cryptic contention that several of the proposed class representatives decided they did not wish to serve as representatives in this class action, plaintiffs have given no explanation, much less a compelling one, for their failure to abide by the mandates of the scheduling order. Considering the dates set forth in CMO 4, plaintiffs have had approximately 1½ years since Katrina

---

[23]S&W Enterprises, LLC, 315 F.3d at 536.

[24]6A Federal Practice and Procedure §1522.1 (2d. ed. 1990), Charles Allen Wright, et al.

[25]Id.

[26]Gregory v. Mitchell, 634 F.2d 199, 203 (5th Cir.1981).

[27]S&W Enterprises, LLC, 315 F.3d at 536;  See also,  Reliance Ins. Co. v. La. Land & Exploration Co., 110 F.3d 253, 257 (5th Cir.1997) (quoting Geiserman v. MacDonald, 893 F.2d 787, 791 (5th Cir.1990)).

to identify and select potential class representatives in this case.  This Court advised plaintiffs in CMO4 "that ample time for completion of the pleadings has been provided . . .  Accordingly, the deadline for amending pleadings is now deemed lapsed."[28]  As previously stated, the current Master Complaint was filed on the deadline.   Plaintiffs were allotted more than enough time (1½ years) to gauge the interest of the original class representatives as well as the original class representatives' willingness to represent the class as a whole.   As a result, it would be unduly prejudicial to allow plaintiffs to burden Levee Defendants with additional discovery to be completed within a limited period of time simply because counsel failed to exercise due diligence in the selection of class representatives.   Plaintiffs' explanation concerning their untimely motion for leave is grossly insufficient, particularly when considered as a basis for this Court to find good cause to deviate from its scheduling order.

### C.   PLAINTIFFS HAVE NOT DEMONSTRATED THAT THE PROPOSED AMENDMENTS ARE IMPORTANT ENOUGH TO DISREGARD THE CASE MANAGEMENT AND SCHEDULING ORDER:

Plaintiffs contend that the Motion for Leave to file their amended Master Complaint and accompanying Motion for Class Certification is important and necessary given the purported reluctance by their original class representatives.  Assuming, *arguendo*, that this assertion is true, the mere importance of replacing the original class representatives is not, in itself, sufficient to sustain plaintiffs' burden of demonstrating good cause.  In fact, the Fifth Circuit in Geiserman v. MacDonald asserted that the necessity of granting departure from a previously agreed to scheduling order, even where incontrovertibly important, **"cannot singularly override the enforcement of**

---

[28]Document #3299, at p.13 (CMO4).

**local rules and scheduling orders.**" (Emphasis added).[29]   Furthermore, it is particularly demonstrative that plaintiffs' currently proposed amendments to the Master Complaint were not filed until approximately <u>4 months</u> after the deadline as set forth in CMO 4.   Plaintiffs cannot contemporaneously maintain that good cause existed to amend the aforementioned pleadings due to the utmost importance of doing so and, at the same time, wait until the eleventh hour to file the Motion for Leave to Amend.[30]   Quite simply, if these alterations were as important as plaintiffs contend, they should have exercised caution and adhered to the deadlines set forth in CMO 4 to ensure the success of the purportedly necessary changes.   Moreover, if the class representatives that plaintiffs seek to delete were not replaced, plaintiffs would still have 18 proposed class representatives.

     **D.**     **PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE CONSOLIDATED CLASS ACTION COMPLAINT IS HIGHLY PREJUDICIAL TO LEVEE DEFENDANTS AS IT ATTEMPTS TO ADD NEW PLAINTIFFS APPROXIMATELY TWO WEEKS PRIOR TO THE FACT DISCOVERY CUT OFF:**

     Courts in the Fifth Circuit have rejected attempts to amend pleadings shortly before a deadline because it was deemed unduly prejudicial to the defendants.   In <u>Smith v. BCE, Inc.</u>, the Fifth Circuit recently upheld the trial court's denial of plaintiff's motion for leave as it was filed "five months after the deadline" and because "BCE's summary judgment deadline was only two weeks away."[31] The <u>Smith</u> court found that to "require that BCE provide a response to his newest theory of written misrepresentations within two weeks undoubtedly would constitute unfair

---

    [29]<u>Geiserman v. MacDonald</u>, 893 F.2d 787, 792 (5th Cir. 1990).

    [30]Document #3299, at p. 14 (CMO 4).

    [31]<u>Smith v. BCE, Inc.</u>, 2007 WL 570302, *4 (5th Cir. 2007); <u>See also</u>, <u>Smith v. BCE, Inc.</u>, 2005 WL 1593386, *3 (W.D. Tex. 2005).

prejudice.  Accordingly, we affirm the district court's order."[32]  Additionally, in <u>Norman v. Apache Corporation</u>, the Fifth Circuit affirmed the lower court's finding that the proposed amendment was untimely, even <u>after</u> leave had originally been granted, because it was "filed more than five months after leave was granted and approximately **thirty days** before the discovery deadline."[33]  In <u>Mayeaux v. Louisiana Health Service and Indemnity Co.</u>, the Fifth Circuit addressed a pleading similar to the current plaintiffs' "Restated" Complaint.[34]  The court, in labeling the pleading "Plaintiffs' so-called 'Restated Complaint,'" stated, "[W]hen late tendered amendments involve **new theories of recovery and impose additional discovery requirements**, courts [of appeal] are less likely to find an abuse of discretion due to the prejudice involved."[35]  The court reasoned that the plaintiffs' amended complaint "pleaded a fundamentally different case with **new causes of action and different parties**" and cited prejudice therein because parties were "nearing the close of extensive discovery."[36]  Similarly, in <u>Messik v. Ingram Towing Company</u>, Judge Fallon denied plaintiff's attempt to file an amended complaint designating the claim as an admiralty claim "six weeks before trial and two weeks before discovery is scheduled to end"[37] because allowing the plaintiff to amend his complaint "would result in undue prejudice to the defendants . . ."[38]

---

[32] <u>Smith</u>, 2007 WL 570302, at p.4.

[33] <u>Norman v. Apache Corporation</u>, 19 F.3d 1017, 1020 (5th Cir. 1994).

[34] <u>Mayeaux v. Louisiana Health Service and Indemnity Co.</u>, 376 F.3d 420, 427 (5th Cir. 2004); *quoting* <u>Bell v. Allstate Life Ins. Co.</u>, 160 F.3d 452, 454 (8th Cir. 1998).

[35] <u>Mayeaux</u>, 376 F.3d at 427 (emphasis added).

[36] <u>Mayeaux</u>, 376 F.3d at 427 (emphasis added).

[37] <u>Messik v. Ingram Towing Company</u>, 1996 WL 198120, at p.1 (E.D. La. 1996).

[38] <u>Messik</u>, 1996 WL 198120 at p.3.

Similarly, the Tenth Circuit, in Sipp v. Unumprovident Corp., denied a motion for leave to amend the master complaint because of prejudice to defendants.[39] In Sipp, the plaintiff argued that leave should be granted because the motion for leave to amend had been filed a mere two months after the scheduling deadline for amended complaints had expired.[40] Nonetheless, unpersuaded by the length of time that had elapsed since the deadline, the court stated that "allowing the extension would inevitably require reopening discovery and essentially starting this case anew, and would significantly delay the final deposition (sic)."[41]

The instant case presents an even stronger scenario for denying leave to amend than in the aforementioned cases because:

(1)    the motion for leave was filed sixteen days prior to the fact discovery deadline and over four months after the amended pleading deadline;

(2)    whether or not leave is granted to amend will not be decided until after the fact discovery deadline has expired;

(3)    the Levee Defendants have incurred significant expense by investigating and inspecting the properties of the timely designated class representatives;

(4)    the Levee Defendants' expert reports are due less than a month from now;

(5)    all but one of the original class representatives', who have not withdrawn, depositions have been taken;

---

[39]Sipp v. Unumprovident Corp., 107 Fed.Appx. 867, 876-877 (10th Cir. 2004).

[40]Sipp, 107 Fed.Appx. at 877.

[41]Sipp, 107 Fed.Appx. at 877.

(6)     the class representatives did not provide the required information at their depositions;

(7)     the Levee Defendants and their experts have had to absorb the documentation on each of the current class representatives in a shortened time frame since they had to compel plaintiffs to produce said documents;

(8)     if leave is granted the Levee Defendants will have to inspect twenty-two (22) properties since the proposed class representatives have seventeen (17) new properties along with the five (5) additional properties identified in the original class representatives depositions;

(9)     plaintiffs' qualified expert reports were produced on July 30th just three days before plaintiffs are to produce documents addressing the individual damages of each of the current class representatives; and

(10)    under the scheduling order the Levee Defendants have less than 30 days generally provided to the defendants to provide expert reports responsive to plaintiffs' experts.

Thus, to require Levee Defendants to conduct discovery on these newly proposed class representatives and to have defense experts inspect, digest and include in their reports the new class representatives' information, in addition to receiving, if at all, plaintiffs' supplemental discovery responses that Levee Defendants had to compel production of, all in less than a month, is extremely prejudicial to the Levee Defendants in this case. Simply stated, Levee Defendants are entitled to procedural guarantees that allow for a timely and comprehensive discovery process.[42] This process would be compromised if this Court grants plaintiffs' Motion for Leave to Amend.

Plaintiffs contend that the substitution of Kenneth Polite, Michelle Harrison, Thurman and

---

[42]Fed.R.Civ.P. 26.

Rosemary Kaiser, Betty Sonier Stalbert, Emanuel Esteves,[43] Elois Bell, and Jose Louis Rodriguez

as class representatives for Laurie Coniglio, Lucinda Coco, Anita Harrison, Joella Cephas, Denise

Meade, Gary and Laura Greer, Gertrude Esteves, and Alice Meyer would be comparable and "would

not impede the progress of this litigation."[44]   Unfortunately for plaintiffs, such a position is not

supportable since the proposed new class representatives represent approximately 19 properties,

whereas the class representatives being deleted only represent 10 properties.   Plaintiffs claim that

the changes are minor in nature; however, this contention is belied by the proposed addition of

roughly twice the properties the original class representatives had with very little time to conduct

appropriate discovery.  Thus, this is not merely a simple replacement of parties to appease the wishes

of the original class representatives; this is, in fact, a wholesale addition of new parties to this

litigation.

It is noted that Levee Defendants, out of an abundance of caution, have expeditiously

deposed the proposed replacement class representatives and are attempting to inspect the additional

properties.[45]   Nonetheless the proposed amendment would result in prejudice to the Levee

---

[43]Levee Defendants do not object to the substitution of Mr. Esteves for Mrs. Esteves.  They simply object to the Amended Complaint as a whole.  Levee Defendants would not oppose plaintiffs filing a separate Motion to Substitute Mr. Esteves for Mrs. Esteves.

[44]Document #6584, at ¶1 (Motion for Leave to Amend Master Complaint).

[45]Similar to plaintiffs' discovery responses, the coordination of these inspections has been frustrated by either Plaintiffs' lack of diligence or their willful disregard for the Levee Defendants' need to conduct them quickly. Specifically, despite Defendants' repeated requests for basic property information prior to actually conducting the inspections, very little of such information has actually been forthcoming. Moreover, inspection schedules often do not even arrive until the literal eve of the next day's inspections. This, because of problems plaintiffs themselves relate to their inability to contact their own clients. Such is indicative of Plaintiffs' cavalier attitude towards providing Defendants with what they need to properly prepare their expert reports, and is yet another example of both the prejudice Plaintiffs' recent proposed additions have caused and evidence of what Defendants have been forced to accommodate. This is to say nothing of the extra, substantial costs associated with these new inspections and the previous inspections of those plaintiffs who are to be withdrawn. There are approximately 10-12 properties that still need to be inspected as of this date.

Defendants due to the brief time period remaining to inspect the numerous additional properties, prepare expert reports, depose the remaining substituted class representatives, and gather additional relevant discovery in a timely fashion.

> E.   **PLAINTIFFS' ELEVENTH HOUR ADDITION OF DIFFERENT CLAIMS AGAINST CERTAIN DEFENDANTS AND INCLUSION OF NEW PROPERTY IN THE CLASS ALSO IS EXTREMELY PREJUDICIAL TO THE LEVEE DEFENDANTS:**

> 1.   **PLAINTIFFS HAVE EXPANDED SUB-CLASS 2 TO INCLUDE AN AREA NOT ORIGINALLY INCLUDED:**

Plaintiffs' Motion for Leave fails to acknowledge that the geographic boundaries originally proposed for the Zone 2 Sub-Class in the Master Complaint[46] would be expanded by the proposed the Amended Master Complaint.[47]  Specifically, the Amended Master Complaint seeks to expand Zone 2's western boundary from Bayou St. John to the Orleans Avenue Canal.[48]  This change would encompass additional public lands and properties around City Park and the adjacent neighborhood north of Robert E. Lee.  The proposed amendment is significant because it would add new property to Zone 2 and increases the exposure to the Levee Defendants not set forth in the Master Complaint. How plaintiffs can contend that their Amended Master Complaint merely "provides a more precise description of the geographic boundaries of the proposed subclasses" is incomprehensible given this expansion.[49]  Accordingly, in addition to the aforementioned prejudicial effects that would result from the addition of extra properties, Levee Defendants would be further prejudiced if leave were

---

[46]Document #3420, at ¶168(Master Complaint).

[47]Amended Master Complaint, at ¶18(b)

[48]Id.

[49]Document #6584, at ¶2 (Motion for Leave to File Amended Master Complaint).

granted in this matter given the expansion of the Sub-Class.

### 2.   PLAINTIFFS HAVE ADDED NEW THEORIES AND DEFENDANTS TO COUNTS 1 & 2 OF THE MASTER COMPLAINT:

Plaintiffs' proposed amendment also provides additional theories in Counts One and Two as it relates to OLD and SWB.  First, in regards to the implementation of the "parallel protection" flood control plan instead of the "Barrier Plan" project design, Count Two of plaintiffs' Master Complaint originally stated that "[t]he defendant **Corps** negligently abandoned an authorized plan to install floodgates (the "Barrier Plan") which [would] have lessened the storm surge from Hurricane Katrina, and opted instead for a parallel plan...."[50]  Plaintiffs' Amended Master Complaint adds new defendants to this allegation, wherein plaintiffs now contend that, subsequent to the Corp's preference for the parallel protection plan, "the Corps, **OLD, and SWB decided to proceed with this plan**."[51]  It is probative that plaintiffs' original complaint solely claimed that OLD and SWB were **negligent for objecting to the implementation** of the Barrier Plan[52] and not that OLD and SWB were **active participants in deciding to proceed with the parallel protection plan**.  This proposed change amounts to an additional contention of negligence against defendant OLD and SWB; and, as such, is prejudicial to OLD and SWB in this matter.  Moreover, it would require both OLD and SWB to file a Motion to Dismiss based on discretionary immunity under La. R.S. 9:2798.1.[53]

---

[50]Document #3420, at ¶ 222 (Master Complaint)(emphasis added).

[51]Amended Master Complaint, at ¶117 (emphasis added); *See also* ¶88 (stating that OLD "insist[ed] on the adoption of the flawed, alternative "parallel plan" with respect to the 17th Street Canal").

[52]Document #3420, at ¶230 (Master Complaint).

[53]This addition is also futile as OLD and SWB would be immune for the alleged decision to implement to barrier protection plan because it is grounded in social, economic, and political considerations.  *See* State of Louisiana v. Public Investors, Inc., 35 F.3d 216, 220-221 (5th Cir. 1994).

Secondly, plaintiffs have requested leave of this Court for the purpose of adding OLD, SWB, EJLD, St. Paul and a brand new defendant, National Union, to Sub-Class 4 via their Amended Master Complaint. Specifically, in Count One of plaintiffs' Master Complaint,[54] plaintiffs alleged that OLD, SWB, EJLD and St. Paul violated their legal responsibilities to the plaintiffs in **Sub-Classes One, Two, and Five only**.[55] Inconsistently, Count One of plaintiffs' Amended Master Complaint claims that OLD, SWB, EJLD, St. Paul **and National Union** violated their legal responsibilities to the plaintiffs in **Sub-Classes One, Two, <u>Four</u>, and Five**.[56] Similar to the additional language in Count Two, the untimely addition of OLD, SWB, EJLD, St. Paul, and National Union to Sub-Class 4 is prejudicial to OLD, SWB, EJLD, St. Paul, and National Union in this matter. Up to this point, OLD, SWB, EJLD, St. Paul, and National Union have not been named as defendants under Counts 1 & 2 in Sub-Class 4; and, accordingly, it is unduly prejudicial to add Sub-Class 4 to Counts 1 & 2 with only two weeks before the class certification fact discovery deadline. This is especially true for National Union since it would be a newly added defendant and will not have notice of this suit until after the fact discovery cut-off.

As previously stated, the Fifth Circuit in <u>Mayeaux</u> upheld the decision of the district court not to grant leave to amend a complaint where the proposed amendments involved "**new theories of recovery**" or where the changes to the complaint would result in "a fundamentally different case with **new causes of action and different parties**."[57] As such, allowing plaintiffs to amend their

---

[54]This count concerns the dredging of the 17th Street Canal

[55]<i>See</i> Document #3420, at ¶¶206-213 (Master Complaint).

[56]<i>See</i> Document #3420, at ¶¶ 86-91 (Master Complaint).

[57]<u>Mayeaux</u>, 376 F.3d at 427.

complaint at this late date to include new claims against different defendants in different subclasses, in addition to the accession of dissimilar properties and the expanding of Zone 2, would cause undue delay in these proceedings, would be unduly prejudicial to Levee Defendants by causing a new round of discovery to take place, and, consequently, would delay the class certification hearing unnecessarily. Accordingly, this Court should find that there is no good cause to modify the scheduling order and deny plaintiffs Motion for Leave.

F.     **PLAINTIFFS' PROPOSED AMENDMENT IMPROPERLY ATTEMPTS TO REPLACE NAMED CLASS REPRESENTATIVES WITH UNNAMED PLAINTIFF CLASS MEMBERS:**

The Court in Barnes v. First American Title Ins. Co., held that:

> . . . the Court cannot grant Plaintiffs' Motion for Leave to Amend because the proposed amendment seeks to remove named Plaintiffs in favor of substitute Plaintiffs. Pursuant to Fed.R.Civ.P. 41(1), Plaintiffs cannot amend themselves out of this action as Defendant has filed an answer and counterclaim against the named Plaintiffs. Pursuant to Rule 41, no voluntary dismissal can occur without the stipulation of Defendant and Plaintiffs' proposed Second Amended Complaint effectively dismissed current named Plaintiffs' cause of action against Defendant. No such stipulation has occurred. Therefore, named Plaintiffs must remain in this action not only as counterclaim defendants but also as Plaintiffs.[58]

The instant case presents a similar situation because the plaintiffs' proposed Amended Master Complaint and Amended Motion for Class Certification seek to substitute new class representatives in the place of others. Given the fact that Rule 41 prevents the current plaintiffs from amending "themselves out of this action"[59] without a stipulation from the Levee Defendants, this Court should find that the named class representatives should remain plaintiffs in this litigation, or dismiss their claims with prejudice. Moreover, if the current class representatives cannot amend themselves out

---

[58]Barnes v. First American Title Ins. Co., 473 F.Supp.2d 798, 802 (N.D. Ohio 2007).

[59]Barnes, 473 F.Supp.2d at 802.

of this litigation then the addition of new class representatives would result in plaintiffs exceeding the limit of representatives allowed by CMO 4.[60]  Therefore, this Court should find that plaintiffs should not be allowed to file their Amended Master Complaint.

### G.    ALTERNATIVELY, IF LEAVE WERE GRANTED A CONTINUANCE SHOULD BE GRANTED TO CURE PREJUDICE TO THE LEVEE DEFENDANTS:

The Fifth Circuit in S&W Enterprises reasoned that district judges have the "power to control their dockets by **refusing to give ineffective litigants a second chance** to develop their case... ."[61]  Additionally, this Court has not reacted kindly in past cases where a party has not complied with the scheduling order.  In Gray v. Industrial Plant Maintenance, this Court addressed the idea of allowing for a continuance to assuage the resulting prejudicial effect of granting leave from the scheduling order.  In Gray, the Court was vexed by the multiple divergences from the scheduling order, stating that "the day of reckoning is here, and good cause does not exist to continue this case again."[62]  Similarly, in this case, the Court has allowed one superseding Master Complaint, and set an aggressive case management order setting forth specific times for the parties to complete the necessary discovery and motion practice.  A delay in the class certification schedule would only serve to tax the resources of the Court and parties to this action.  As stated in Gray, the day of reckoning is here and the deadlines agreed to in CMO 4 should be adhered to as a result.

Notwithstanding, should this Court opt to grant the Motion for Leave to amend the Master

---

[60]See Document #3299, at p.13 (limiting number of class represntatives to five).

[61]S&W Enterprises, L.L.C., 315 F.3d at 537;  See Reliance Ins. Co. v. La. Land and Exploration Co., 110 F.3d 253, 258 (5 Cir. 1997); See also Turnage v. general Electric Co., 953 F.2d 206, 208-09 (5 Cir. 1992).

[62]Gray v. Industrial Plant Maintenance, 2004 WL 1661209, *3 (E.D. La. 2004).

Complaint, the Levee Defendants would have no choice but to request a brief continuance of the class certification hearing as well as additional time to complete fact discovery, list witnesses, and issue class certification expert reports in this matter.  An extension of 60 days from the currently scheduled hearing and cut off dates to conduct discovery would be sufficient to complete the additional tasks resulting from plaintiffs untimely Motion for Leave.  However, while additional time would be somewhat useful to lessen the prejudicial impact of granting the motions for leave, the Levee Defendants reiterate that good cause does not exist in this case to allow plaintiffs to amend their Master Complaint.  Given the multiple scheduling orders in this case, as well as other amendments, plaintiffs have had ample opportunities to address their concerns about class representation, geographic boundaries, theories of negligence, and defendants to be included in sub-classes in this matter.  As such, the Motion for Leave to amend should be denied.

### H.   PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION IS MOOT SINCE THE MOTION FOR LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED:

Plaintiffs have stated in their Motion for Leave to file their Amended Master Complaint that they have also filed a "motion for leave to amend the Motion for Class Certification to reflect these changes in that pleading as well."[63]  Plaintiffs' Amended Motion to Certify is based on the changes in the Amended Master Complaint making the above arguments applicable to said Amended Motion to Certify.  Accordingly, if plaintiffs cannot file their Amended Master Complaint, then *a fortiori* they cannot file their Amended Motion to Certify which reflects the changes contained in the Amended Master Complaint.

---

[63]Document #6584, at ¶1 (Plaintiffs' Motion for Leave to File Amended Master Complaint).

## III.   CONCLUSION:

WHEREFORE the Levee Defendants pray that this Court deny Plaintiffs' Motion for Leave to Amend their Master Complaint and deny Plaintiffs' Motion for Leave to Amend their Class Certification Motion for the same reasons.

Respectfully submitted,                          Respectfully submitted,

/s/ Kyle P. Kirsch                               /s/ Gary M. Zwain
Thomas P. Anzelmo, T.A. - #2533                  Gary M. Zwain (13809)
Mark E. Hanna - #19336                           Joseph E. Bearden, III (26188)
Kyle P. Kirsch - #26363                          DUPLASS, ZWAIN, BOURGEOIS
Andre J. Lagarde - #28649                        MORTON PFISTER & WEINSTOCK
McCRANIE, SISTRUNK, ANZELMO,                      3838 N. Causeway Boulevard, Suite 2900
HARDY, MAXWELL & McDANIEL                         Metairie, LA 70002
3445 N. Causeway Boulevard, Suite 800            Telephone: (504) 832-3700
Metairie, Louisiana 70002                         Facsimile: (504) 837-3119
TELEPHONE: (504) 831-0946                        Attorneys for the East Jefferson Levee District
FACSIMILE: (504) 831-2492
          and                                    Respectfully Submitted:
LABORDE & NEUNER
Ben L. Mayeaux - #19042                           /s/ Ralph S. Hubbard
James L. Pate - # 10333                           RALPH S. HUBBARD III, T.A., Bar #7040
Gregory A. Koury - #26364                         JOSEPH P. GUICHET, Bar #24441
One Petroleum Center, Suite 200                   RACHEL A. MEESE, Bar #25457
1001 West Pinhook Road                            LUGENBUHL, WHEATON, PECK,
Lafayette, Louisiana 70503                        RANKIN & HUBBARD
TELEPHONE: (337) 237-7000                         601 Poydras Street, Suite 2775
FACSIMILE: (337) 233-9450                         New Orleans, Louisiana 70130
Attorneys for the Orleans Levee District          Telephone: (504) 568-1990
                                                 Facsimile: (504) 310-9195
                                                 Attorneys for St. Paul Fire and Marine
                                                 Insurance Company

Respectfully submitted,                    Respectfully submitted,

/s/ Charles M. Lanier, Jr.                  /s/ Kirk M. Aurandt
CHRISTOVICH & KEARNEY, LLP                  DAIGLE FISSE & KESSENICH, PLC
Charles M. Lanier, Jr. - #                  J. Frederick Kessenich - #7354
J. Warren Gardner, Jr. - #                  Jonathon H. Sandoz - #23928
Pan American Life Center                    Michael W. McMahon - #23987
601 Poydras Street, Suite 2300              Jon A. Van Steenis - #27122
New Orleans, LA 70130-6078                  Kirk N. Aurandt - #25336
Telephone:     (504) 593-4272              P.O. Box 5350
Fax:           (504)/561-5743              Covington, Louisiana 70434-5350
Attorney for The Sewerage and               Telephone: 985/871-0800
Water Board of New Orleans                  Fax: 985/871-0899
                                            Attorneys for the Board of Commissioners
                                            of the Port of New Orleans

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of August, 2007 a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing has been forwarded to all known counsel of record by operation of the Court's electronic filing system.

/s/ Kyle P. Kirsch