UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 "K" (2)<br><br>JUDGE DUVAL<br>MAG. WILKINSON |
| PERTAINS TO: MRGO | |
| FILED IN   05-4181, 05-4182, 05-5237, 05-6073,<br>05-6314, 05-6324, 05-6327, 05-6359,<br>06-0225, 06-0886, 06-1885, 06-2152,<br>06-2278, 06-2287, 06-2824, 06-4024,<br>06-4065, 06-4066, 06-4389, 06-4634,<br>06-4931, 06-5032, 06-5155, 06-5159,<br>06-5161, 06-5162, 06-5260, 06-5771,<br>06-5786, 06-5937, 07-0206, 07-0621,<br>07-1073, 07-1271, 07-1285 | |

**MRGO DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO
RECONSIDER COURT'S ORDER (DOCKET NO. 6592)
<u>ON MRGO DEFENDANTS' MOTION TO COMPEL</u>**

The MRGO defendants move the Court to reconsider its July 19, 2007 Order (Docket No. 6592), insofar as it denied the MRGO defendants' motion to compel on three discovery issues: (1) plaintiffs' insurance claim files, (2) plaintiffs' applications for benefits from all sources, including the "Road Home" program, and (3) plaintiffs' trial plan.

887151v.1

A.   **Plaintiffs' Insurance Claims And Applications For Benefits Contain Admissions That Plaintiffs Sustained Injuries Caused By Wind And Rain— Not Flooding—And Are Highly Relevant To The Court's Decision Whether Individual Causation Issues Preclude Class Certification.**

Defendants asked plaintiffs to produce documents related to insurance claims that named plaintiffs or proposed class members filed to recover for damages or injuries sustained between August 28, 2005 and September 25, 2005. *See* Defs.' Mot. to Compel (Docket No. 6231), Ex. 1, DR No. 3. The Court denied defendants' motion to compel production of plaintiffs' insurance claims, holding that this discovery request was among ones that "relate primarily to individual damage claims or broadly to the subject matter of this action." Docket No. 6592 at 31. In making this ruling, the Court relied on its overall analysis that "[a]s to damages discovery, it is necessary to find some proportionately appropriate middle ground." *Id.* at 4. As set forth below, the MRGO defendants respectfully request reconsideration because insurance claim files relate to *causes of plaintiffs' injuries* – e.g., wind and rain, not flooding. These materials will show many proposed class members have significant individual issues of alternative causation for the injury to property that they allege. Such overwhelmingly individualized issues of causation may preclude class certification because the named plaintiffs cannot demonstrate that, for their proposed class, common issues predominate over individual issues where the cause of each class member's alleged injury would have to be determined individually. As such, these requests are highly relevant to the class certification issue of predominance. They also go to whether a class action could ever be a superior method of adjudication when causation would still have to be individually

determined, and whether the named plaintiffs have typical claims, or could even be adequate representatives of their proposed class when nearly every individual member of that class has an individual mix of causes for his alleged injuries that includes not only flooding but also, at least, wind and rain. These are the core disputed requirements of the Rule 23 class certification plaintiffs propose—adequacy, typicality, predominance and superiority.

Indeed, both the U.S. Supreme Court and the Fifth Circuit have recognized that one of the crucial issues in determining whether a case can be certified as a class action is whether causation requires individualized proof—an essential inquiry in the predominance determination. *See Amchem Prods., Inc., v. Windsor* 521 U.S. 591, 623-25 (1997); *Castano v. Am. Tobacco Co.*, 84 F. 3d 734, 739-41, 744-45 (5th Cir. 1996). To the extent that a proposed class member's property was damaged by wind or rain, the MRGO defendants were not responsible for such damage and cannot be held liable for it. Thus, defendants are entitled to discover a plaintiff's party admissions[1] that some portion of the injury he or she claims was not caused by defendants, so that defendants can address the barriers to class certification that this issue creates and the Court can consider it in making the required "rigorous analysis" at the class hearing.

The testimony of the named plaintiffs (obtained at their depositions after defendants filed their motion to compel) illustrates the significance of insurance claim files to class issues. All of the named plaintiffs admitted that they had filed insurance

---

[1] *See* Fed. R. Evid. 801(d)(2). A statement that is "the party's own statement" is not hearsay.

claims, under their homeowner's insurance policies, for wind and/or rain damage or looting during Hurricane Katrina.  *See* K. Armstrong Dep. at 21 (Ex. 1); J. Armstrong Dep. at 18 (Ex. 2); Davis Dep. at 52 (Ex. 3); Wade Dep. at 32-33 (Ex. 4); Coats Dep. at 60-61 (Ex. 5).  Three of the five named plaintiffs received payments for wind and/or rain damage under their homeowner's policies.  *See* Ex. 1 at 22-23; Ex. 2 at 72-73; and Ex. 5 at 60-62.  Moreover, the named plaintiffs have copies of their insurance claims and other documentation relating to them.  *See* Ex. 1 at 22-23,145-146; Ex. 3 at 52; and Ex. 5 at 71.  So, they can easily produce them.  Defendants should be entitled to obtain these admissions by a party opponent and to use those documents in opposing class certification.  These materials will demonstrate that, in order to resolve *each* plaintiff's liability claim, the jury will have to determine which injuries were caused by flood,[2] and which were caused by wind, rain, or looting.

For similar reasons, defendants asked for "all administrative claims relating to Hurricane Katrina that [named plaintiffs] or proposed class members have submitted to any governmental body or agency (including but not limited to claim forms submitted to the Louisiana Recovery Authority)."  *See* Defs.' Motion to Compel, Ex. 1, DR 2.  The Court denied the MRGO defendants' motion to compel production of these documents for the same reason as it denied production of insurance claims.  *See* Docket No. 6592 at 31.  Like insurance claim files, however, Road Home documents relate not only to the

---

[2] A plaintiff would then still have to prove which defendants, if any, caused the flood injuries to the plaintiff at the particular location.

4

amount of damages, but include statements, made by plaintiffs themselves, about the cause(s) of their property damages.

At the named plaintiffs' depositions, defendants learned that all of the named plaintiffs have applied for "Road Home"[3] benefits from the LRA. *See* Ex. 1 at 149; Ex. 2 at 39-40; Ex. 3 at 45; Ex. 4 at 46; and Ex. 5 at 60. Three plaintiffs already received substantial payments and the other two are negotiating a substantial payment. *See* Ex. 1 at 47-48; Ex. 3 at 45; Ex. 4 at 47; and Ex. 5 at 60. The Road Home application requires an applicant to state the cause of his or her property damage, including whether the injury was caused by Hurricane Katrina or Hurricane Rita (which would be an independent and alternate cause of plaintiffs' injuries). *See* Ex. 6. Significantly, the Road Home program pays for wind and rain damage ("601 square feet or greater of roof damage and associated interior damage"[4]). Thus, Road Home documents contain party admissions as to the *cause* of the damage to plaintiffs' property and relate to a significant issue to be determined at the class hearing such as typicality, adequacy and predominance.

Plaintiffs' party admissions in their insurance claim files, Road Home documents, and other applications for benefits are highly relevant to whether individualized alternative causation issues, like wind and rain damages, would defeat class certification. As such, these documents relate to an important issue for defendants to develop in their expert reports, class-certification briefing, and at the class hearing. Defendants ask the

---

[3] As the Court knows, the "Road Home" program is a program that provides outright grants to repair, rebuild, or build a new house if damage was caused by wind, rain, or flooding. *See* www.road2LA.org/homeowners/faqs.htm.

[4] *See* www.road2LA.org/homeowner/faqs.htm.

5

Court to reconsider its earlier ruling and order the production of documents in response to the MRGO defendants' document requests numbers 2 and 3.

**B.     Defendants Are Entitled To Know Plaintiffs' Trial Plan Now.**

Defendants sought answers to straightforward interrogatories on plaintiffs' proposed trial plan.[5]  *See* Defs.' Motion To Compel, Ex. 1, Interrogs. 1-7, 21, and 28. These interrogatories sought to discover how plaintiffs propose, in a class-action trial, to determine each element of proof, including the cause of each injury, and comparative fault.  Defendants wanted to know which elements of proof plaintiffs propose to try on a class basis, and which issues would have to be tried on an individual basis for every member of the proposed class.  This Court ruled that no trial plan "more detailed than what has already been provided will be required" and that the answers already provided "are sufficient" (subject to plaintiffs' ongoing duty to supplement them).  *See* Docket No. 6592 at 18.  The Court suggested that if the answers already provided "are insufficient to satisfy the predominance, superiority or any other Rule 23 requirement, that will be the Court's ruling on the class certification motions." *Id.* at 18-19.  This Court also suggested that the information in plaintiffs' answers to interrogatories could be "coupled with the motions and the other materials to be submitted by plaintiffs in connection with the class certification hearings." *Id.* at 18.

But defendant respectfully submits that it is fundamentally unfair to force defendants to wait until after fact discovery has closed on class certification, until after

---

[5] Defendants will not repeat the legal authorities that they submitted in support of their Motion to Compel with respect to plaintiffs' trial plan (Docket No. 6231 at 4-8 & 29-35) but refer to them in support of this motion.

their class expert designations and reports have been filed, until after they have conducted expert depositions, to learn for the first time, in the class-certification briefing, plaintiffs' plan for trying this mammoth case on a class-action basis. That is simply too late to try to meet the issues raised by this case and for the Court to have an adequate record upon which to conduct the rigorous analysis of all Rule 23 prerequisites required by the Fifth Circuit. *See Steering Comm. v. Exxon Mobil Corp.* 461 F. 3d 598, 601 (5th Cir. 2006). Specifically, without more detailed responses, defendants are left to guess as to what proposed class action they are defending against, because defendants have no basis to know:

- the specific issues plaintiffs plan to try on a class-action basis;

- how many stages they propose for trial of class issues or the specific issues that they propose to try at each of the various stages; and

- which issues that they propose will not be tried on a class basis, and if they are unsuitable for class treatment, how plaintiffs propose to adjudicate these disputed, individual issues for a class as large as the one plaintiffs propose.

Plaintiffs have intermittently changed, revised, and variously stated their class theory, but they have never given more than the most cryptic explanation of how they propose to try a case with multiple defendants purportedly causing breaches or overtopping at dozens of sites along various levees and floodwalls. Nor have they explained how they propose to try causation as to each named plaintiff and thousands of proposed class members, including the cause of injury at each plaintiff's particular location, from wind and rain and from water that had as its source one or more of the breaches or overtoppings.

In their Class Action Complaint, plaintiffs set forth a generalized, purportedly "common" issue: "Whether Defendants were negligent, and whether such negligence was a proximate cause of such damages sustained by the Class." Docket No. 3415 at 12. Two weeks later, in their class motion, the plaintiffs suggested that: "all class members have a common interest in establishing by common evidence where the water came from, how high the water got, how long it remained before receding, whether it damaged all properties within the scope of the class, and whether it resulted from breaches of various legal duties owed the class members." Docket No. 3616 at ¶1(b). Plaintiffs also alluded to "the breakdown of social structure, and loss of cultural identity" as some sort of common class issue (*Id*. at ¶1(f)), although that alleged injury was not included in the 18 categories of injury specifically alleged in the Complaint.

In their answers to interrogatories, plaintiffs identified a new set of supposedly "common" questions: "the cause(s) of levee breach(es)," "the geographical reach of the flood waters," "the parties at fault who are responsible for the levee breach(es)," "the apportionment of fault between the Defendants," and "certain class-wide damages." *See* Defs.' Motion To Compel, Ex. 1 at 3. Plaintiffs' latest variation of their proposed common issues (in their opposition to the motion to compel) was to limit "common issues certification" to "did the Levees fail, who was responsible for the failure, did Plaintiff suffer water intrusion to his/her property." Docket No. 6404 at 3.

This Court has recognized the "difficulty presented" by "the shifting sands of plaintiffs' class allegations." Docket No. 6592 at 4. Defendants are faced with the same "difficulty" as they try to prepare their class-certification defense. In preparing to oppose

class certification, defendants are entitled to discover not only which issues plaintiffs claim are common, but also which issues plaintiffs acknowledge to be individual, and how plaintiffs propose that these individual issues would ultimately be addressed.

Plaintiffs have created far more than an abstract problem. After defendants filed their motion to compel, they conducted depositions of the MRGO named plaintiffs. Their testimony illustrates the individual causation issues that must be tried, but which plaintiffs do not address in their cryptic answers about their trial plan. The named plaintiffs' properties are in diverse locations throughout the broad, approximately 50-60 square mile class area. The amount of water that reached the named plaintiffs' properties varied from property to property. For example, named plaintiff Henry Davis may have had a few inches of flood water in his home in New Orleans East. *See* Ex. 3 at 59-62. Named plaintiffs Kenneth and Jeannine Armstrong had flood water up over the roof line of their house in St. Bernard Parish near the Florida Walk Canal levee. *See* Ex. 1 at 16. The other two named plaintiffs had other amounts of water somewhere in between. *See* Ex. 4 at 29-31; Ex. 5 at 38. The source(s) of water that reached the named plaintiffs also varies from property to property. The named plaintiffs either do not know where the water came from or believe that the sources of water varied from property to property. *See* Ex. 2 at 48-50; Ex. 3 at 57; Ex. 4 at 73-74; and Ex. 5 at 76-79. One named plaintiff (Jeannine Armstrong) has a unique and peculiar personal injury (a fungus infection in her back purportedly caused by airborne spores in her post-Katrina house). *See* Ex. 2 at 31. Each of the named plaintiffs claims different symptoms, durations, and causes for his or her mental distress. *See* Ex. 2 at 19-21; Ex. 3 at 38-39; Ex. 4 at 83-84; and Ex. 5 at 53.

9

Plaintiffs' answers to defendants' trial plan interrogatories do not begin to address how plaintiffs propose to try the above factual variances on a common basis. Indeed, plaintiffs have not provided any information on how they will ever try such issues.

Defendants are entitled to learn in class discovery – not in plaintiffs' class brief or at the class hearing – what sort of proposed class action they are defending. As the Advisory Committee's Notes to Rule 23 explain, discovery of plaintiffs' trial plan is necessary to determine the critical class-certification question of how the case will be tried:

> *[D]iscovery* in the aid of the certification decision often *includes information required to identify the nature of the issues that actually will be presented at trial…*A critical need is to determine how the case will be tried. An increasing number of *courts require a party requesting class certification to present a "trial plan"* that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof.

Fed. R. Civ. P. 23 advisory committee's note (2003 amend to subsection (c)) (emphasis added). Thus, Rule 23 does not contemplate either a vague or incomplete disclosure of plaintiffs' trial plan in discovery or an ever evolving one up until the class hearing. "The parties and [the] District Court have invested too many resources in the class discovery process in this case to blithely permit a 'trial by ambush' to unravel those efforts." *Fisher v. CIBA Specialty Chems. Corp.*, 238 F.R.D. 273, 285 (S.D. Ala. 2006). Yet, that is what plaintiffs are attempting to accomplish.

Therefore, defendants request that the Court reconsider its ruling on defendants' trial plan interrogatories and require plaintiffs to set forth the plan under which they propose to try specific issues on a class basis, the stages for each of those issues, how

887151v.1

many different juries will be involved in those stages, and the issues that will be tried on a non-class basis.

Dated: August 2, 2007                        Respectfully submitted,

| | |
|---|---|
| */s/ Gary M. Zwain* | */s/Ralph S. Hubbard III* |
| Lawrence J. Duplass, 5199 | Ralph S. Hubbard III, 7040 |
| Gary M. Zwain, 13809 | Joseph P. Guichet, 24441 |
| Andrew D. Weinstock, 18495 | Rachel Meese, 25457 |
| Of | Of |
| Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock | Lugenbuhl, Wheaton, Peck, Rankin & Hubbard |
| 3838 N. Causeway Blvd., Suite 2900 | 601 Poydras Street, Suite 2775 |
| Metairie, Louisiana 70002 | New Orleans, Louisiana  70130 |
| Telephone: (504) 832-3700 | Telephone:  (504) 568-1990 |
| Facsimile: (504) 837-3119 | Facsimile:   (504) 310-9195 |
| | |
| Attorneys for Board of Commissioners for the Lake Borgne Basin Levee District | Attorneys for St. Paul Fire and Marine Insurance Company |

887151v.1

| | |
|---|---|
| */s/Thomas P. Anzelmo* | */s/Heather S. Lonian* |
| Thomas P. Anzelmo, 2533 | William D. Treeby, 12901 |
| Mark E. Hanna, 19336 | Carmelite M. Bertaut, 3054 |
| Kyle P. Kirsch, 26363 | Heather S. Lonian, 29956 |
| Andre J. Lagarde, 28649 | Of |
| Of | Stone Pigman Walther Wittmann L.L.C. |
| McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel | 546 Carondelet Street |
| 3445 N. Causeway Boulevard, Suite 800 | New Orleans, Louisiana 70130 |
| Metairie, Louisiana 70002 | Telephone: (504) 581-3200 |
| Telephone: (504) 831-0946 | Facsimile: (504) 581-3361 |
| Facsimile: (504) 831-2492 | |
| And | Attorneys for Washington Group International, Inc. |
| James L. Pate, 10333 | |
| Ben L. Mayeux, 19042 | Of counsel |
| Of | |
| Laborde & Neuner | Adrian Wager-Zito |
| One Petroleum Center, Suite 200 | Julie McEvoy |
| 1001 West Pinhook Road, Suite 200 | Jones Day |
| Post Office Drawer 52828 | 51 Louisiana Avenue, N.W. |
| Lafayette, Louisiana 70505-2828 | Washington, D.C. 20001-2113 |
| Telephone: (337) 237-7000 | Telephone: (202) 879-4645 |
| | Facsimile: (202) 626-1700 |
| Attorneys for the Orleans Levee District | |
| | Jerome R. Doak |
| | Jones Day |
| | 2727 N. Harwood Street |
| | Dallas, Texas 75201 |
| | Telephone: (214) 220-3939 |
| | Facsimile: (214) 969-5100 |

887151v.1

*/s/Robin D. Smith*
Robin D. Smith
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4289
Facsimile: (202) 616-5200

Attorneys for United States

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing MRGO Defendants' Memorandum in Support of Motion To Reconsider has been served upon Joseph M. Bruno, Esq. in his capacity as plaintiffs' Liaison Counsel by electronic notice via the Court's CM/ECF System this 2nd day of August, 2007.

*/s/Heather S. Lonian*
Heather S. Lonian