UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 "K" (2)<br><br>JUDGE DUVAL<br><br>MAG. WILKINSON |
| PERTAINS TO: MRGO | |
| FILED IN    05-4181, 05-4182, 05-5237, 05-6073, 05-6314, 05-6324, 05-6327, 05-6359, 06-0225, 06-0886, 06-1885, 06-2152, 06-2278, 06-2287, 06-2824, 06-4024, 06-4065, 06-4066, 06-4389, 06-4634, 06-4931, 06-5032, 06-5155, 06-5159, 06-5161, 06-5162, 06-5260, 06-5771, 06-5786, 06-5937, 07-0206, 07-0621, 07-1073, 07-1271, 07-1285 | |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL WGII'S
FIRST REQUESTS FOR PRODUCTION AND 30(B)(6) DEPOSITIONS**

Washington Group International, Inc. ("WGII") moves to compel production of documents and a brief Rule 30(b)(6) deposition of the major insurers who insured proposed class members against damage during Hurricane Katrina. WGII propounded five very narrowly focused document requests on Allstate Insurance Company, Farmer's Exchange Insurance Company, Standard Insurance Company, Liberty Mutual Insurance Company, and Liberty Mutual Fire Insurance Company ("Insurers") seeking insurance claim files of the five named plaintiffs and 21 former named plaintiffs[1] for losses occurring during the 34-day period following Hurricane

---

[1] "Former Named Plaintiffs" refers to 21 persons who previously filed various proposed class action lawsuits against WGII, that were pending in the United States District Court

887246v.1

Katrina. *See* Ex. 2. WGII also asked the insurers to provide readily-available information concerning the total number of claims and total payments on claims for losses due to wind, rain, fire, vandalism, or theft during the same 34-day, post-Katrina period. *Id.* The insurers responded to WGII's requests agreeing to produce insurance claim files of the five named plaintiffs, if they had them, but objecting to the production of any other information. *See* Ex. 2. Further, they objected to providing a witness for a short Rule 30(b)(6) deposition[2] to briefly explain the information and authenticate it. *See* Ex. 3.

WGII should be permitted to obtain this information to show in their class briefing and at the class hearing that the overwhelming majority of proposed class members admitted that at least part of the damages for which they seek class certification were caused by wind, rain, or other causes — not flooding. Moreover, a short Rule 30(b)(6) deposition of each insurer should be permitted so that WGII may confirm information concerning the total number of wind or rain claims and authenticate documents. This discovery is not burdensome because the insurers have already made public statements (*see* Exs. 5-7) regarding the total number and amount of claims paid. Yet, when asked to produce and discuss similar information in this lawsuit, they resisted.

---

(continued…)
      for the Eastern District of Louisiana, but who are not listed in the MR-GO Master Consolidated Class Action Complaint filed on March 15, 2007. *See* Ex. 1.

[2]     WGII has attached only one of the deposition notices (Ex. 4) because the notices to other insurers are substantially the same.

WGII's counsel conferred with the insurers to offer to allow them to provide the requested information in affidavit form, and one insured, the Louisiana Farm Bureau, readily accepted this common-sense approach. The other insurers refused, so WGII brings this motion seeking relief from the Court as to them.

**I.     Information Showing The Number Of Wind And Rain Claims And The Amounts Paid On The Claims Will Demonstrate That Putative Class Members Sustained Damage Caused By Wind And Rain — Not Flooding — And Is Highly Relevant To Whether Individual Causation Issues Preclude Class Certification.**

Information possessed by the insurers showing that the majority of proposed class members made claims for wind and rain damage will confirm that there are significant individual issues of alternative causation for the injury to property that plaintiffs allege. Such overwhelmingly individualized issues of causation may preclude class certification because each class member's alleged injury would have to be determined individually. As such, these discovery requests are highly relevant to the class certification issue of predominance. The requests also go to whether a class action could ever be a superior method of adjudication when causation would still need to be individually determined, and whether the named plaintiffs' claims are typical, or could even be adequate representatives of their proposed class when nearly every individual member has an individual mix of causes for his or her alleged injuries that includes not only flooding but also, at least, wind and rain. These are the core disputed requirements of the Rule 23 class certification plaintiffs propose—adequacy, typicality, predominance, and superiority.

887246v.1

Indeed, both the U.S. Supreme Court and the Fifth Circuit have recognized that one of the crucial issues in determining whether a case can be certified as a class action is whether causation requires individualized proof — an essential inquiry in the predominance determination. *See Amchem Prods., Inc., v. Windsor* 521 U.S. 591, 623-25 (1997); *Castano v. Am. Tobacco Co.*, 84 F. 3d 734, 739-41, 744-45 (5th Cir. 1996). To the extent that a class member's property was damaged by wind or rain, WGII certainly was not responsible for such damage and cannot be held liable for it. Thus, WGII is entitled to discover information showing that some portion of the injuries of proposed class members was not caused by WGII. WGII can then address the barriers to class certification that this issue creates and the Court can consider this issue in making the required "rigorous analysis" at the class hearing.

Insurance claim files of former named plaintiffs and a summary of the information concerning insurance claims of the proposed class are highly relevant to whether individualized alternative causation issues, like wind and rain damages, would defeat class certification. As such, these documents relate to an important issue for defendants to develop in their expert reports, class-certification briefing, and at the class hearing. These materials will demonstrate that, in order to resolve each plaintiff's claims, the jury will have to determine which injuries were caused by flood,[3] and which were caused by wind and rain or something else. Therefore, the Court should permit WGII to obtain this information.

---

[3] A plaintiff would then still have to prove which defendants, if any, caused the flood injuries to the plaintiff at the particular location.

## II.     The Insurers' Objections Should Be Overruled.

### A.     The Insurers Are Parties To This Litigation For Purposes Of Service.

The insurers contend that they are not parties to this litigation, and thus should have been served via subpoena pursuant to Federal Rule 45.  *See* Ex. 2.  That is incorrect.  This Court has consolidated all "Katrina Canal Breach cases" — which arise out of damages allegedly caused by breaches and overtopping of levees during and immediately following Hurricane Katrina — under cause number 05-4182.  *See* Docket No. 259 .  The insurers are parties to this consolidated case.  So, for the purposes of service, the insurers are before the Court and may be served without a subpoena.  Moreover, the Court declared that the purpose of consolidating these cases is "to meet two special goals, both of which are of paramount importance to any court:  judicial economy and timely justice."  Docket No. 3426 at 1.  Therefore, it would be contrary to the language and purpose of this Court's consolidation of all "Katrina Canal Breach cases" to require WGII to incur the needless expense and delay of serving parties to the consolidated litigation via subpoena when all the parties are before this Court in the above-captioned case.

### B.     The Court's March 16, 2007 Stay Of The Insurance Cases Does Not Prohibit MRGO Defendants From Obtaining Class-Certification Discovery From The Insurance Defendants.

The Insurers attempt to rely on the Court's March 16, 2007 Order staying discovery in the insurance cases as a basis to avoid responding to WGII's discovery and to avoid presenting a representative for a brief Rule 30(b)(6) deposition.  This objection

also should be overruled.  Although the Court did stay "all insurance cases…with respect to all common liability issues and…class action certification," the Court also preserved the ongoing discovery efforts of the MRGO and Levee Groups by clearly stating that those cases were "**NOT STAYED** in any respect as to any matter contained herein."  Docket No. 3426 (emphasis in original).  As set forth above, the requested information goes directly to core class-certification issues in the MRGO litigation that WGII must address at the class-certification hearing.

     **C.**    **WGII's Request Are Not Overly Broad and Unduly Burdensome And The Requested Information Is In the Possession, Custody and Control Of The Insurers.**

The discovery requests for insurance claim forms propounded by WGII were narrowly tailored to encompass only 26 individuals (current and former named plaintiffs) who made wind and rain claims related to damages caused by Hurricane Katrina and its aftermath.  *See* Ex. 2, DR No. 2.  The time period was limited to approximately one month and the names and addresses of the 26 individuals were set forth in the request.  It is fair to conclude that the insurers could have just as easily identified and produced the claims files for these persons as they did the claims files of the five named plaintiffs that they agreed to produce (or were able to state they had no documents).

WGII also requested information regarding the total number of claims for wind, rain, fire, vandalism, or theft submitted by policyholders in the New Orleans Metropolitan Statistical Area from August 28, 2005 through September 30, 2005, the

887246v.1

total amount of money paid to policyholders for these claims, and the lawsuits filed against the insurers resulting from these claims. *See* Ex. 2, DR Nos. 3-5. The insurers objected that these requests are overly broad and unduly burdensome in that the requests would require a file-by-file review. They submitted absolutely no evidence or any specificity as to this claimed burden, such as the number of man hours needed to produce this information. Moreover, this objection is obviously without any merit because WGII's requests are not overly broad, but narrowly tailored to a specific geographic area and limited to claims arising during a brief, 34-day time period following Hurricane Katrina. Nor are these requests unduly burdensome. One insurance company, Louisiana Farm Bureau, to whom WGII propounded basically the same discovery requests as are in issue here, produced an affidavit providing the requested information, and did so in a very short amount of time. *See* Ex. 8. Thus, the insurers have failed to establish any undue burden.

Moreover, some of the insurers used similar statistics for public relations purposes, touting their efficient responses to Hurricane Katrina claims. For example, Allstate's website stated that "more than 98% of claims resulting from Hurricane Katrina have been settled." *See* Ex. 5. Farmers announced that as of October 4, 2005, their "pre-tax losses after reinsurance are estimated between $200 and $220 million" as a result of Hurricane Katrina. *See* Ex. 6. Liberty Mutual reported "$658 million of after-tax catastrophes losses related to Hurricanes Katrina and Rita" *See* Ex. 7. These public statements indicate that the insurers do, in fact, have readily-accessible information

concerning the total number of insurance claims made for wind and rain damage as a result of Hurricane Katrina.

The insurers lodged the same objections to WGII's Rule 30(b)(6) deposition notices as they did to the document requests. The insurers' objections are invalid for the same reasons as their objections to WGII's document requests are invalid. Moreover, WGII has offered to conduct the depositions of the insurer's Rule 30(b)(6) representatives at a time and place convenient and agreeable to the insurers. If the insurers produce the limited information requested, the depositions are likely to last an hour or less. As such, there is no reason that the insurers should not provide witnesses pursuant to WGII's notices.

For all of the above reasons, the Court should order the insurers to produce the documents requested and appear for a brief Rule 30(b)(6) deposition.

Dated: August 3, 2007  Respectfully submitted,

*/s/Heather S. Lonian*
William D. Treeby, 12901
Carmelite M. Bertaut, 3054
Heather S. Lonian, 29956
   Of
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:   (504) 581-3361

Attorneys for Washington Group International, Inc.

Of counsel

Adrian Wager-Zito
Julie McEvoy
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-4645
Facsimile:  (202) 626-1700

Jerome R. Doak
Jones Day
2727 N. Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

887246v.1

## **C E R T I F I C A T E**

I hereby certify that a copy of the above and foregoing Memorandum in Support of Motion To Compel WGII's First Requests For Production and 30(b)(6) Deposition has been served upon all counsel of record by electronic notice via the Court's CM/ECF system this 3rd day of August, 2007.

*/s/Heather S. Lonian*
Heather S. Lonian

887246v.1