1                  UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA
2


3   IN RE: CANAL BREACH     * Civil Action No. 05-4182
    CONSOLIDATED LITIGATION,* c/w 06-6642-"K"
4   PONTCHARTRAIN BAPTIST   *
    CHURCH, ET AL           * New Orleans, Louisiana
5                           *
         Plaintiff,         * Wednesday, May 30, 2007
6                           *
         v.                 * 3 p.m.
7                           *
    THE SEWERAGE AND WATER  *
8   BOARD, ET AL,           *
                            *
9       Defendants.         *
    *   *   *   *   *   *   *   *   *

10
                        STATUS CONFERENCE
11        BEFORE THE HONORABLE JOSEPH C. WILKINSON, JR.
                   UNITED STATES MAGISTRATE JUDGE
12


13  APPEARANCES:


14  For Pontchartrain        O'Neil/Vance Group LLC
     Baptist Church:         BY: WILLIAM E. O'NEIL
15                           701 North Causeway Blvd.
                             Metairie, LA   70001
16                           504-833-4770

17
    For the Board of         McCranie, Sistrunk, Anzelmo,
18   Commissioners for the   Hardy, Maxwell & McDaniel
     Orleans Levee District: BY: THOMAS P. ANZELMO
19                           3445 North Causeway Blvd.
                             Suite 800
20                           Metairie, LA   70002
                             504-831-0946
21


22  For Modjeski and Masters: Deutsch, Kerrigan & Stiles, LLP
                              BY: FRANCIS J. BARRY, JR.
23                            755 Magazine Street
                              New Orleans, LA   70130
24                            504-581-5141

25

1   APPEARANCES (continued):

2

    For Boh Brothers:          Kingsmill Riess, LLC
3                              BY: MICHAEL R.C. RIESS
                               201 St. Charles Avenue
4                              Suite 3300
                               New Orleans, LA   70170
5                              504-581-3300

6

    For Gulf Group:            Porteous, Hainkel & Johnson
7                              BY: GLENN B. ADAMS
                               704 Carondelet Street
8                              New Orleans, LA   70130
                               504-581-3838
9

10  For C.R. Pittman:          Galloway, Johnson, Tompkins, Burr
                               & Smith
11                             BY: JASON MARKEY
                               701 Poydras Street
12                             Suite 4040
                               New Orleans, LA   70139
13

14  For James Construction:    Jones, Walker, Waechter,
                               Poitevent, Carrere & Denegre
15                             BY: RICHARD JOHN TYLER
                               201 St. Charles Avenue
16                             50th Floor
                               New Orleans, LA   70170
17                             504-582-8266

18
    Reported by:               David A. Zarek, CCR, RPR, CP
19                             500 Poydras Street
                               Room 406
20                             New Orleans, LA   70130
                               504-523-6062
21

22      Proceedings recorded by mechanical stenography;
    transcript produced from dictation.
23

24

25

1                       P R O C E E D I N G S

2                        (AFTERNOON SESSION)

3                      (WEDNESDAY, MAY 30, 2007)

4        (Court convened at 3 p.m.)

5        THE COURT:  This is In Re: Canal Breach Consolidated

6    litigation, Civil Action No. 05-482.  We are set for a

7    status conference in the case that is part of this

8    consolidated litigation, which is Civil Action 06-6642,

9    Pontchartrain Baptist Church and others.  Let's see,

10   gentlemen, why don't you make your appearances for the

11   record.

12       MR. O'NEIL:  Good afternoon, Bill O'Neil for

13   Pontchartrain Baptist Church.

14       MR. BARRY:  Good afternoon, Frank Barry for Modjeski

15   and Masters, Inc.

16       MR. RIESS:  Good afternoon, Judge.  Michael Riess for

17   Boh Brothers.

18       MR. ANZELMO:  May it please the Court, Tommy Anzelmo

19   representing the Orleans Levee District.

20       THE COURT:  How are you.  And we missed you the other

21   day.  We needed a hand raiser.

22       MR. ANZELMO:  I was advised by my counsel, so I am

23   here today.

24       THE COURT:  Excellent, excellent.  Nobody raises their

25   hand better than Anzelmo.

4

```
 1      MR. TYLER:  Richard Tyler for James Construction
 2  Group.
 3      MR. ADAMS:  Good afternoon, Glenn Adams for Gulf
 4  Group, Inc.
 5      MR. MARKEY:  Good afternoon, Jason Markey on behalf of
 6  C.R. Pittman Construction Company.
 7      THE COURT:  Good afternoon.  Mr. O'Neil, the report
 8  that you sent in at my request, and to me it constitutes
 9  something of an agenda, but if you want to make some kind
10  of opening remarks, you certainly may.
11      MR. O'NEIL:  Thank you, Judge.  May it please the
12  Court, Your Honor, at the outset I would like to state to
13  the Court that I am not going to continue to advocate the
14  path of de-consolidation.
15      THE COURT:  That's good, because I might as well tell
16  you now that answer is no way, okay.
17      MR. O'NEIL:  And it is troublesome to me, because in
18  the amended supplemental class action, many of the
19  allegations that are in my --
20      THE COURT:  You are talking about the master?
21      MR. O'NEIL:  The master are now --
22      THE COURT:  They are.
23      MR. O'NEIL:  -- asserted in that except for some, not
24  all.
25      THE COURT:  Yes.  But we have notice pleading.  There
```

1   is so much in the master complaint about breaches and

2   dredging.  And I don't come out here -- maybe you should

3   come out here as a blank tablet fully open to manipulation,

4   but I don't.  I read all these things, and also I discussed

5   it with Judge Duval.  This is not going to be taken out of

6   consolidation.  And I might as well tell you this, too: It

7   is subject to case management order number four.  So we

8   included in the case management order the opportunity for

9   folks who had individual cases to have a conference like

10  this one.  This was for two reasons: The first is we don't

11  want to cut off the opportunity to say things to the Court

12  for one; and second, there are some cases in this big group

13  that to some extent are amenable to some sort of

14  individualized treatment.  And it is one thing to look at a

15  record and try to figure that out; it is another thing to

16  hear from people.  So that's why we are doing this.  But on

17  the, it is not good that you want to argue the

18  consolidation -- that is not going to happen.  I am telling

19  you before you start, the case management order applies in

20  this case, okay.

21       MR. O'NEIL:  On that, Your Honor, I have some copies

22  of some e-mails that David Meyer got in an automobile

23  accident, very minor, and made copies for everybody.  But I

24  circulated them.  I would like to hand it to the Court in

25  connection with my dealings with Mr. Bruno and Mr. Meunier

1  and my attempts to comply with case management order number

2  four and bring to the Court's attention that my civil

3  action is not listed on the amended class action.  It is

4  not up there along with, I suppose, what I hear from Mr.

5  Barry and a number of others.

6      THE COURT:  It is because yours isn't a class action.

7      MR. O'NEIL:  And so a lot of allegations are in there,

8  667,665, not the constitutional tort, not inverse

9  condemnation, all the admiralty claims in there.  So I

10  don't see any reason to be consolidated.  If the Court will

11  recall when Mr. Barry advised me that there was a

12  conference with Your Honor and Mr. Bruno was here, I think

13  things have changed.  I think initially it was thought that

14  this case should go somewhere else.

15      THE COURT:  Okay, well how would you like?  You want

16  to go through your letter and try to address each issue

17  individually, and then if any of you all have anything to

18  say about a particular topic, okay, you should feel free to

19  step forward and say it.  And then maybe some unfortunate

20  interruption of people, that --

21      MR. BARRY:  I need to ask you, Did you want to take

22  one topic at a time?

23      THE COURT:  Yes, I think so.

24      MR. BARRY:  Okay.

25      THE COURT:  I'm usually a one thing at a time type of

1  guy.  Let's see.  It looked to me like sort of a list that

2  starts at page four.

3      MR. O'NEIL:  Yes.

4      THE COURT: Okay, and the first topic is the amended

5  complaint.  Now, this causes me to ask you to say to you

6  there is an amended complaint that is filed in this case.

7  There is at least one that I saw.  The most recent one is

8  record document number 3644 filed on March 30th, Judge

9  Duval having granted leave on your motion to do so.  Is

10 there another one?

11     MR. O'NEIL:  Yes, Your Honor.  I hand you -- I didn't

12 make copies of it -- may I approach the bench?

13     THE COURT:  This one has been filed?

14     MR. O'NEIL:  This one was filed, and then there is one

15 other, and I can try to explain what happened.  But you can

16 see it is crossed out.  It was filed and docketed on March

17 the 16th.  And I had left to go to New York to argue in the

18 Second Circuit when --

19     THE COURT:  Wait, wait, wait.  The one that is

20 actually filed is filed on March 30th.

21     MR. O'NEIL:  March what?

22     THE COURT:  30th.

23     MR. O'NEIL:  The one on March 23rd --

24     MR. BARRY:  Your Honor, that's the one that is in your

25 right hand Judge Duval ordered allowing the amended

1  complaint.

2      THE COURT:  You had to make Mr. O'Neil stretch like

3  that.  What a mess.

4      MR. BARRY:  Your Honor, it appears that Judge Duval's

5  order of March -- Frank Barry on behalf of Modjeski, is

6  document number 3643.  And then right behind that is

7  document 3644, which appears to be, it says draft of

8  amended complaint.

9      THE COURT:  Right.  That's the amended complaint.

10  That he permitted to be filed, which is the one you just

11  handed me.

12      MR. O'NEIL:  May I explain, Your Honor.

13      THE COURT:  Yes, please.

14      MR. O'NEIL:  What happened was it was my intent in

15  responding to the motion for summary judgment and 12(b)(6)

16  and recognizing what the Court had done earlier in December

17  to make as part of my response --

18      THE COURT:  Wait, let me stop you, because this

19  crossed-out-file that you handed me is not an amended

20  complaint at all.

21      MR. O'NEIL:  It is attached.

22      THE COURT:  It is a brief.

23      MR. O'NEIL:  It is attached.

24      THE COURT:  It is attached?

25      MR. O'NEIL:  Right, it was all -- that's what I was

1    about to tell Your Honor.

2         THE COURT:  Go ahead.

3         MR. O'NEIL:  What I did is out of an abundance of

4    caution not knowing whether the Court would go down the

5    12(b)(6) road or treat it for summary judgment, I attached

6    an affidavit and requested that the Court defer ruling.

7    And I asked the Court to take judicial notice.  I asked the

8    Court to let me have some limited discovery, and then I

9    said if necessary I will file an amended complaint.  And I

10   attached the proposed areas that I would consider without

11   specifying.

12        And then what happened was I learned when I came back

13   that the intake desk would not take it, would not accept

14   it.  And they said that you can't do it that way.  You have

15   to file a motion for a leave, and you have to change the

16   caption from state court to federal court.  And I said we

17   are still in the remand mode.  And that in a nutshell is

18   what happened.  And so --

19        THE COURT:  Let me ask you this question: Because here

20   is the state of affairs as they are now, okay: Now this

21   crossed-out-thing that you gave me is not on file.

22        MR. O'NEIL:  It was and it is not.

23        THE COURT:  Okay.  There is an amended complaint

24   which, yes, it is mis-designated, I guess.  But Judge Duval

25   permitted you to file it.

1        MR. O'NEIL:  Right.  And it has -- again all I will

2   say is I considered it a draft.  Because if one looks at

3   it, there are, the computer says error, stop here and those

4   sorts of things.  But I am not going to make --

5        THE COURT:  So as things stand now, this is your

6   record document number 3644 is your complaint.

7        MR. O'NEIL:  I think that that's certainly arguable.

8        THE COURT:  Do you understand I'm telling you it is

9   not only arguable, that's the way the Court views it.  It

10  is your intent to file another amended complaint?

11       MR. O'NEIL:  I would like to file another amended

12  complaint solely for the purpose of asserting maritime

13  contract and admiralty jurisdiction on that basis and

14  third-party person status.  That's it.

15       THE COURT:  All right, would that amended -- have you

16  circulated that amended --

17       MR. O'NEIL:  I have done nothing until coming here

18  today.  I have talked about it with all of the defendants,

19  and when we met indicated what I was considering and that

20  is what --

21       THE COURT:  Will it render your motion to remand moot?

22       MR. O'NEIL:  Yes.

23       THE COURT:  Okay, then I think the way we should

24  handle that -- have you drafted it?

25       MR. O'NEIL:  I have not drafted it, because I was

1  going to try to clean up some of the first draft for the

2  Court, because I had referred to the ODPET report and some

3  of those things.  I was going to get more specific if

4  necessary.  As I said, I did not think it was, but that is

5  what my intent was.

6      THE COURT:  Give that back to -- this is -- wait, I

7  think we will -- this amendment that you consider seeking,

8  does it affect the motions to dismiss that are already

9  pending against you?

10      MR. O'NEIL:  I don't think so, because the admiralty

11  and maritime claims have been asserted in the state court

12  savings and suitor case which have been filed in this

13  court.  This Court could have had exclusive original

14  jurisdiction.  So I don't think so.  I mean it just adds --

15      THE COURT:  There are pending federal contract and

16  immunity motions?

17      MR. BARRY:  No, not contractor and immunity motions at

18  this point, only peremption motions.

19      THE COURT:  Peremptions only?

20      MR. BARRY:  If those are granted, we are done.  If

21  they are denied, then we will have to engage in discovery,

22  and then we will go forward with contract and immunity.

23      THE COURT:  You have already opposed that motion?

24      MR. O'NEIL:  I haven't.  I have responded to that

25  motion, yes, and this argument.

1    MR. BARRY:  Well, the only person that filed an

2  opposition to the peremption motions that were taken under

3  submission before we went to the master complaint said

4  okay, you file a supplemental motion and we will go May 1.

5  Defendant, you all file, Bruno, et al, you file your reply

6  May 29.  Non-party contractors and engineers, you file your

7  reply, and we have done that.  All that briefing is done.

8    MR. O'NEIL:  Both from Mr. Bruno and Mr. Meunier and

9  from --

10    THE COURT:  And from you, okay, excellent.  That is

11  one thing that we have got.  All right, so in this proposed

12  amendment will it affect those arguments?

13    MR. O'NEIL:  No, their arguments have been in the case

14  primarily on the remand side because they have come up on

15  that side.  That's where they are in those dockets and

16  referred to.  And I think all of these --

17    MR. BARRY:  Judge, I think I need to put in a word for

18  my other engineers besides being counsel of record from

19  Modjeski, and I am also the liaison counsel for the other

20  engineers -- Gotech, Burk Kleinpeter and Eustis.  And I

21  know that Will has mentioned that I think at the conference

22  we had at his office he said he is thinking of including

23  Eustis and Burk Kleinpeter as new defendants in what he

24  wants to file as an amended complaint.  I know they will

25  object to that.

 1       THE COURT:  Is that right?

 2       MR. O'NEIL:  Yes.  I discussed it, and I don't have

 3  enough information to do it to be quite honest.  And they

 4  are included in the master class action supplemental

 5  complaint already.

 6       THE COURT:  So you are not going to include them in

 7  your amended complaint?

 8       MR. O'NEIL:  I am not sure again depending on how we

 9  come out of this with all where I stand.  It may not be

10  necessary if, in fact, all the cases are consolidated and

11  those claims are in there, and my case is deemed to be if

12  necessary against people that are already in the suit.

13  This is a master suit in my view at this point, not a class

14  action.

15       THE COURT:  Well, I am not going to advise you as to

16  who to sue and who not to sue.

17       MR. O'NEIL:  Exactly.

18       THE COURT:  What I was going to say was if you want to

19  amend again, then circulate your draft to the parties, see

20  if there is any objection.  If there is an objection, file

21  a notice for hearing.  And if there is no objection, file

22  it as a ex parte motion certifying there is no objection,

23  and it will be granted, okay.

24       MR. O'NEIL:  Okay.

25       THE COURT:  Doesn't the present amendment moot your

1   motion to remand?

2        MR. O'NEIL:  Judge, I don't think so.  And that's why

3   I want to address a maritime contract subject matter

4   jurisdiction.

5        THE COURT:  That's a fine response.

6        MR. O'NEIL:  That's a real fine line, and Professor

7   Shopebaum recognizes the issue, and I just wanted to offer

8   it.

9        THE COURT:  All right, so does anybody have any gripes

10  or complaints or beefs about the procedure we are going to

11  follow or him seeking to amend his complaints?

12       MR. RIESS:  No gripes or complaints, Your Honor.

13       THE COURT:  You can oppose it.

14       MR. RIESS:  We will be going to oppose it.

15       THE COURT:  What, the procedure?

16       MR. RIESS:  The procedure.

17       THE COURT:  You have no problems with the procedure on

18  behalf of Boh Brothers.  I would think you would have a

19  pending motion, right?

20       MR. RIESS:  Yes, Your Honor.

21       THE COURT:  To dismiss.  All sorts of things including

22  his crime.

23       MR. RIESS:  The peremption motion to dismiss the

24  entire case as it relates to Boh Brothers.  All

25  consolidated party contractors and non-party engineers have

1  filed peremption.

2      MR. BARRY:  Frank Barry on behalf of the Modjeski

3  bill.  Civil action is included in the February 1, 2001,

4  motions that were filed by the perempted contractors and

5  perempted engineers and that's under submission now with

6  the briefing.

7      THE COURT:  I got you, okay.  All right, I would think

8  that if his proposed amendment has no effect on the basis

9  for the pending motion and you are not a new party being

10  added like the two you mention, it is hard for me to

11  imagine what the ground for opposition might be.

12      MR. BARRY:  I would like to see it obviously first of

13  all, and second of all I don't know if you walk through

14  that statement the whole way if that statement is entirely

15  true.  Because obviously he is going to allege admiralty

16  jurisdiction.  We, the perempted defendant, are saying

17  Louisiana State Law applies, not admiralty.  So I think

18  that is an inherent conflict in and of itself right there.

19      THE COURT:  Okay, I got you.  All right, we will have

20  to see how this plays out.  If you want to amend again,

21  then that is the process to follow.

22      MR. O'NEIL:  Judge, so there would not be any

23  duplication if I decided to add the parties, I will do it

24  all at one time.

25      THE COURT:  Do it at one time.  When do you think you

1    will be circulating this amended complaint?

2        MR. O'NEIL:  I would like to do it within the next two

3    weeks, Judge, if I could.  If the Court would allow that,

4    unless that is burdensome on any of the defendants, in

5    which case I am open.

6        MR. BARRY:  That's fine.

7        THE COURT:  All right, so, Mr. O'Neil, why don't you

8    circulate your proposed amended complaint by June 13th.

9    And why don't you all who might be receiving this can you

10   give him some sort of answer as to whether you are going to

11   oppose it or not?  We are within a week after that.

12       MR. BARRY:  By June 20th would be fine, Your Honor.

13       THE COURT:  By June 20th.  So by June 21, Mr. O'Neil,

14   you will know if you have got to file as ex parte no

15   objection motion, or if you have got to file a notice for

16   hearing.

17       MR. O'NEIL:  So may I ask again, I didn't know when

18   you would like it filed, what date?

19       THE COURT:  If they let me know by the 20th, how much

20   time after that do you think you need?

21       MR. O'NEIL:  By the 20th of June?

22       THE COURT:  Yes, sir.

23       MR. O'NEIL:  I think I can do it -- I will have a

24   draft by that time.  So I don't think it is going to

25   take --

1       THE COURT:  Let's say by the 26th.

2       MR. O'NEIL:  Surely a week, not even that.

3       THE COURT:  By June 26th to file your motion, okay.

4       MR. O'NEIL:  Or earlier.

5       THE COURT:  Or earlier.  Okay, does that address the

6  motion to amend?  Do you understand how the Court views the

7  earlier filing of the draft?

8       MR. O'NEIL:  And if the Court would want me to file

9  some type of Rule 16 response or something, I will do so.

10  I have e-mails that I intend to show the Court on that, on

11  the timing issue.

12      THE COURT:  No, I don't think that's necessary at this

13  time.  Okay, next item on the agenda was to confirm some

14  date.

15      MR. O'NEIL:  That's moot.

16      THE COURT:  That's moot.  The next item is discovery.

17  The question of the case management order number four.

18  What I was going to say to you, because it is not related

19  to the next item, which is Rule 26 disclosure, the Rule 26

20  disclosure aspect of the case management order did not

21  specifically address bridge contracts.  In drafting the

22  case management order number, we shrunk the disclosure

23  requirement, and it did not include bridge contracts.  Now,

24  did any of the requests for production that have been sent

25  out by the group address bridge contracts?

1        MR. O'NEIL:  Not to my knowledge, Judge.  You have

2    only seen --

3        THE COURT:  You have only seen what?  You have only

4    seen what?

5        MR. O'NEIL:  One request for production.  I don't know

6    whether Mr. Bruno and Mr. Meunier have sent others out.  If

7    not --

8        MR. RIESS:  I'm sorry, Your Honor, I can help on this

9    issue.  There was one master set of request for production

10   of documents sent to the non-party contractors and non-

11   party engineers.  I believe it was 60 or 61 requests.  I

12   can't remember the exact number.  And I have sent Bill a

13   copy by e-mail of my Boh Brothers' responses which listed

14   every request.

15       THE COURT:  Okay.

16       MR. O'NEIL:  But I didn't see that until he mentioned

17   it to me and told me he was going to send it.

18       THE COURT:  Is there any request for these bridge

19   contracts that you seek?

20       MR. O'NEIL:  I don't think so.  Michael, you may know

21   better.  I don't believe, but he may probably know better

22   than I.

23       MR. RIESS:  I can't remember them all.

24       THE COURT:  It is an open book.  After all you are not

25   required to memorize everything.

1    MR. RIESS:  I didn't bring those, Your Honor.  But I

2    do remember that they were very all encompassing in terms

3    of asking what project have you done at the 17th Street

4    Canal, London Canal and Industrial Canal, those three

5    canals what the limits of the 60 or 61 request A and B

6    identify any and all projects you did.  I believe it was

7    from 2000 forward or in the last five years.  I think they

8    limited it to five years.  I could be wrong on this.  It

9    might have been 10.  I can't recall.

10    THE COURT:  This is what I believe needs to be done at

11    this point: You need to look at the request for production

12    that was sent out, and the responses, okay.  Determine if

13    any of them were broad enough to require production of the

14    information that you seek.  See what the responses were and

15    then get involved in the --

16    MR. O'NEIL:  Refinement.

17    THE COURT:  -- the refinement and the discussions that

18    we require before motions to compel get filed.

19    MR. O'NEIL:  Your Honor, I'm trying, and I think it is

20    beginning to change.  I was invited by Mr. Bruno's office

21    to come and look at some documents.  So I think Gerald

22    Meunier filed that things are different.

23    THE COURT:  Okay, you should have whether you are a

24    formal member of the --

25    MR. O'NEIL:  Group.

1    THE COURT:  -- Kremlin or not or what did they used to

2  call it?

3    MR. BARRY:  Politburo.

4    THE COURT:  The Politburo.  You should have some

5  access.  We are trying to coordinate discovery so that we

6  do not have individual lawyers for individual claimants

7  having to file individual requests.  So you are going to

8  have to look at the requests, Mr. O'Neil, see what the

9  responses were.  You have to figure out if any of them were

10 broad enough to encompass information that you want.  And

11 then through one of the people on the liaison committee get

12 involved in the discussions.  If the discussions are such

13 that there are allegations about bridge work all through

14 the master complaint, if they did not ask for information

15 about that, I will be a little surprised.

16    MR. O'NEIL:  I did ask to meet with them, and I didn't

17 get to.  So I made Judge, I think there is something that

18 needs to be said so that they are not indicted.

19    THE COURT:  Well, I did not mean to indict them.  I

20 was a big politburo fan.  I mean that --

21    MR. O'NEIL:  Or any inference.

22    THE COURT:  We got that politburo in Gretna.

23    MR. O'NEIL:  Riding on somebody's leg.  I think what I

24 have done is in a different way is a contribution, and I

25 hope that is understood.  That's all I can say.

1      THE COURT:  Well, to address your specific issues,

2   case management order number four applies.  You are right,

3   the Rule 26 disclosures did not require specifically the

4   bridge contract.  If somebody wants the bridge contract on

5   plaintiff's side, I would have expected them to be the

6   subject of the request for production.  I suspect I have --

7   fortunately for me, I have not read those yet, although I

8   guess I might get to do so one day.  You need to

9   investigate and see if they were requested and then get

10  involved, and we have discussions that will occur.

11      MR. O'NEIL:  I requested informally but not -- I will

12  check that.

13      THE COURT: Okay, which brings us to there is a

14  discussion in your report about pending Rule 12 and 56

15  motions.  All I can really say to you about that is that

16  Judge Duval that is his department.  I know that he is

17  keenly aware of every single motion he has got pending and

18  is working through them.  And there are a lot of them.

19      Further about dispositive motions I say not.  Okay,

20  they are actively being reviewed.  He is probably more

21  knowledgeable.  I talk to him all the time.  He is probably

22  more knowledgeable about the nuts and bolts of those

23  motions than you all can imagine.

24      MR. O'NEIL:  I think he is pretty knowledgeable.  I

25  think you are, too.

1    THE COURT:  He is working through them, and he knows

2  what the arguments are.  And he has got to do one at a

3  time, okay.

4    The last thing on my list that I have was that you had

5  made a settlement proposal with the defendants.  This is a

6  question that seeks a yes or no answer: Have you gotten a

7  response?

8    MR. O'NEIL:  I have not.

9    THE COURT:  Okay, here is another question that seeks

10  a yes or no answer, and it is directed to whoever thinks

11  they can speak on behalf of the engineers and contractors:

12  Do you have any why in making a response to the settlement

13  proposal?

14    MR. BARRY:  Your Honor, the engineers have responded.

15    THE COURT:  They have?

16    MR. BARRY:  Even before that meeting, I sent you an e-

17  mail.  It is an e-mail.

18    THE COURT:  All right, are you suggesting as I read

19  between the lines that we should have some formal

20  conference concerning settlement at some point in this

21  case?

22    MR. O'NEIL:  I am.

23    THE COURT:  You are suggesting that?

24    MR. O'NEIL:  Yes.

25    THE COURT:  I thought you were.  All right, do we have

1  all of the defendants in the Baptist Church case here

2  represented?

3       MR. O'NEIL: The one seemingly is not available is the

4  City of New Orleans.

5       THE COURT:  Not available?

6       MR. O'NEIL:  I send them notices.

7       THE COURT:  That's a nice way of saying it -- not

8  available.  All right, I guess what I would like to do is,

9  Mr. O'Neil expresses interest in having a settlement

10  conference in this matter.  I wonder if it would be

11  possible for the defendants who are available to caucus

12  separately off the record maybe now, maybe today and then

13  let me know as a group if there is interest in making an

14  effort to settle this case individually at this time or if

15  it is something that you want to defer.  Just tell me how

16  you feel about doing it.  There may not be an agreement

17  among the defendants as to how to proceed on settlement,

18  but at least we can find out from that group if there is an

19  interest in having the settlement conference.

20       I will tell you also if there is we will have to

21  figure out who is going to be in on it, if it is going to

22  be me or somebody else.  But I think it is prudent and good

23  for somebody to suggest that settlement possibilities ought

24  to be explored in any case.  I don't really want to have a

25  settlement conference either before me or that somebody

 1  else conducts if there is not a willingness on both sides

 2  to try to address settlement in some meaningful way.  I

 3  don't like the situation when one guy comes prepared to

 4  negotiate and the other guy doesn't.  That's just a waste

 5  of time.  So can I have the defendants make a caucus and

 6  maybe nominate one of you, Mr. Barry, maybe should be

 7  nominated to just to report back to me.  You can meet in my

 8  area if you want.  Before you do that, though, is there

 9  anything else that we need to discuss in this matter today?

10      MR. O'NEIL:  Judge, I have one suggestion: If this

11  case does move one way or the other and that is whether or

12  not in connection, and it really is going to depend on what

13  the Court does on the motion --

14      THE COURT:  Absolutely.

15      MR. O'NEIL:  I'm not going to even bring it up.

16      THE COURT:  Well, I just want to assure you, because

17  this is not the first time that you have said something in

18  one of these conferences, all right.

19      MR. O'NEIL:  No.

20      THE COURT:  The motions are actively considered.  I

21  mean you do not need me to vouch for Judge Duval.  He is

22  actively considering these motions.  When I see him and

23  talk to him, he is very knowledgeable about what the issues

24  are, but he is deliberate in his approach.  And he has got

25  a list.  He knows what is out there.  He is working through

1  it.  And you know to whatever extent your clients who are

2  concerned about the prosecution of this case, these issues

3  are not being shunted aside.  They are not being ignored.

4  They are actively being worked on.

5       MR. O'NEIL:  I know that.

6       THE COURT:  I felt like I had to say that, because he

7  knows what is out there, and he is considering it all.  It

8  is kind of a large job, okay.  Now, was there anything

9  else?

10      MR. O'NEIL:  No, sir.

11      THE COURT:  Was there any issue other than this last

12  settlement thing that anybody wanted to raise in the

13  Baptist case?

14      MR. BARRY:  No, Your Honor.

15      THE COURT:  Okay, why don't we do this: If you can

16  wait for a few minutes, Mr. O'Neil, why don't you come in

17  the back.  Sit in my little room here.  You all converse,

18  and then you can send one or more nominees back there to

19  tell me generally if there is some consensus on whether we

20  should proceed with some kind of formal settlement

21  conference, okay.  All right, Court is in recess.

22      (Court adjourned at 3:33 p.m.)

23

24

25

1                        REPORTER'S CERTIFICATE

2          The undersigned certifies, in his capacity of Official

3     Court Reporter, United States District Court, Eastern

4     District of Louisiana, the foregoing to be a true and

5     accurate transcription of his Stenograph notes taken

6     Wednesday, May 30, 2007.

7          New Orleans, Louisiana, this 5th day of July, 2007.

8

9                              _____

10                             DAVID A. ZAREK
                               Official Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25