# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES    *      CIVIL ACTION
CONSOLIDATED LITIGATION        *
                                 *      No. 05-4182
PERTAINS TO:                  *      & Consolidated Cases
LEVEE (Ferdinand, No. 06-5132)    *
                                 *      SECTION K
                                 *      JUDGE DUVAL
                                 *      MAGISTRATE WILKINSON

**************************************

## SECOND AMENDMENT TO COMPLAINT
## FOR DECLARATORY JUDGMENT AND DAMAGES
## AND REQUEST FOR JURY TRIAL

    **NOW COMES** Plaintiffs, Keith C. Ferdinand, M.D, APMC, Carol and Byron James, Sr.,

Beatrice Turner, and Alyne J. Mac Quinn, and other persons identified in the first allegation of

the Complaint for Declaratory Judgment and Damages and Request for Jury Trial, residing in, or

doing business in Bywater and Mid City sections of the City of New Orleans, State of Louisiana,

(hereinafter "Bywater and Mid City Plaintiffs"), who suffered damages due to failure of the

flood protection system for the New Orleans East Bank polder, and in furtherance thereof hereby

amends the Complaint filed herein on August 28, 2006 [Doc. 1] as amended by First

Amendment to the Complaint for Declaratory Judgment and Damages and Request for Jury Trial

[Doc. 3716] to add paragraphs 14a. through 14u., paragraph 22a. and b, paragraphs 26a. to 26f.,

and paragraphs 64a. and 64b., to-wit:

14a.

    The flooding was proximately caused by the failure of the flood wall on the West  Bank

of the Industrial Canal or Inner Harbor Navigational Canal;

14b.

The Board of Commissioners, Port of New Orleans built the Inner Harbor Navigation Canal, it was completed in 1921, before the Flood Control Act of 1928, and for reasons wholly unrelated to it;

14c.

The Canal is owned by the Port of New Orleans And The United States the same having been by the Port via menses conveyances from *inter alia*, the Ursuline Nuns of the Parish of Orleans, an institution created by the Act of the Legislature of the State of Louisiana approved 18 March 1855, and portions thereof were transferred by the Port to the United States Army Corps of Engineers by among others the Act of Sale and Easement /Servitude Agreement dated 10 December 2002, and Act of Sale dated January 2, 2002.

14d.

The December 10, 2002 deed to the United States quitclaimed unto the United States, all right title and interest which the Port had "in the banks, shores, beds and waters opposite to and fronting on the land, including all littoral and or riparian rights incident thereto and whatever rights the Port may have had in any alleys, roads, streets, ways, strips, gores or railroad rights of way located in or abutting or adjoining said land";

14e.

The transfer to the United States were effected for purposes unrelated to flood control works for the purposes of improving the Inner Harbor Navigational Canal , New Lock Project , as authorized by the Act of Congress approved March 29, 1956 (P.L. 85-44, the Act of Congress approved November 7, 1986 (P.L. 99-662) and the Act of Congress approved October 12, 1996 (P.L. 104-303);.

14f.

The Industrial Canal is a navigable waterway used by the maritime industry to move vessels and cargo from and to the Mississippi River Gulf Outlet to and from the Mississippi River and to and from the River to and from Lake Ponchartrain through the Seabrook Pass.

14g.

The canal were designed and operated to accommodate the maritime interests as aforesaid; in fact, the Port and Corps collaborated on the construction of the Industrial Canal Locks constructed on lands acquired by the United States form the Port;

14h.

The Sewerage & Water Board continued to pump rainwater into the Orleans Canal, but due to the absence of fronting protection the waters flooded into the northern basin of the New Orleans East Polder;

14i.

In addition the United States failed to complete fronting protection on the Orleans Canal at Pump Station Seven as it was obliged to do under contract with the Sewerage & Water Board which left the section of legacy wall significantly lower than the adjacent floodwalls, providing a route for water to enter the City without overtopping adjacent floodwalls;

14j.

Thereafter works were prosecuted by Washington Capital and others at the direction and instances of the United States Army Corps of Engineers from crane and derrick barges operating from the waters in the Industrial Canal owned by the Port of New Orleans and the United States and/or subject to Perpetual Easement /Servitude Agreement in favor of the United States Army Corp of Engineers;

14k.

The real estate was purchased from the Port of New Orleans for $16.8 million. The final act of sale took place Dec. 19, 2002;

14l.

A $29 million contract was let Washington Group to remove of aboveground and underground structures and canal-side obstructions, and also extensive environmental restoration.  The work was completed in June 2005.

14m.

A second construction contract, for demolition of the Galvez Street Wharf, was awarded to Virginia Wrecking Co. in April 2001 and completed in February 2003. After wharf demolition, nine mooring buoys were emplaced to protect the exposed bank line and enhance navigation.

14n.

The canal's purpose was to connect the Mississippi River with Lake Pontchartrain, a shorter distance than to the mouth of the river, and to stimulate industrial development along its banks.

14o.

Plaintiffs allege, on information and belief, that the Army Corps of Engineers did not exercise due care in investigating the conditions prompting the Lake Pontchartrain and Vicinity Plan ("Lake Plan),  or the Industrial Canal New Lock Project (Industrial Canal Lock Replacement Project), or in prosecuting the work and failure to prosecute and complete aspects of the works, pursuant to the initial Plan, and/or pursuant to the initial Lake Plan and New Lock Project , or in investigating and adapting to the changing conditions, and prosecuting the work

determined necessary in the Reevaluation Plan and the 1992 Energy and Water Development Appropriation Act And the New Lock Project;

14p.

Plaintiffs allege, on information and belief, that the Army Corps of Engineers violated mandatory laws, rules and regulations in conducting in investigating predicate to the adoption of the Lake Plan, the Reevaluation Plan and the 1992 adaptation of the Lake Plan and in prosecuting the works pursuant to the Lake Plan and New Lock Project;

14q.

Plaintiffs allege, on information and belief, that the design of both the Lake Plan and the New Lock Project , and their subsequent implementation, and in operation of the completed work, the Army Corps of Engineers exercised judgment or choice not based on or rooted in public policy, as, for instance by giving in to the wishes of state interest,  such as to Sewerage & Water Board, as respects the location of the Pumping Stations in the London Avenue Outfall Canals,  when the Corps of Engineers knew that those accommodations compromised the Lake Plan and the New Lock Project;

14r.

The erection of the New Lock,  completed in June 2005, increased the size to 110 feet wide by 1,200 feet long by 36 feet in the place of the existing Lock erected in 1921 which was only 640 feet long, 75 feet wide and 31.5 feet deep, which meaningfully altered the hydrology of the Canal, and contributed to the failures or breaches of the floodwalls and causing overtopping of the floodwalls in Hurricane Katrina

14s.

5

The Army Corps of Engineers has admitted fault, as aforesaid, and it must be presumed that that those admissions are rooted in violation of Congressional mandate, Regulations, in failing to exercise due care and or in exercising judgments not rooted in public policy;

14t.

The Regulations requires that the Corps "shall ensure that the requirements of 208.10 of 33 Code of Federal Regulations (CFR) are met" i.e that the structures and facilities oif the United States shall be continuously maintained  in such a manner and operated at such times and for such periods as may be necessary to obtain maximum benefits." 208.10(a)(1)

14u.

These Regulations put the Corps squarely in charge of maintenance and operations, forbidding the local operator from making any change to any feature of the works without prior Corps approval Id 208.10(a)(5) and commanding that "(m)aintenance measures and repairs" that the Corps deems necessary "shall be promptly taken or made." Id. 208.10(a)(8)

22a.

The defendant United States had the care custody and control of the banks, shores, beds and waters opposite to and fronting on Industrial Canal, including all littoral and or riparian rights incident thereto, and is accordingly answerable under Civil Code Articles 2317 and 2317.1.

22b.

Plaintiffs asserting claims against the United States in damages, amend their Complaint to delete the request for declaratory judgment relief under the Rule of Restatement (Second) Torts § 324A, as interpreted in *Bujol v. Entergy Services, Inc. et al.*, 03-0492, 502 (La.5/25/04), 922 So.2d 1113;

26a.

The defendant had the care, custody and control of the Locks it caused to be constructed in the Industrial Canal.

26b.

The filing of Forms 95 satisfied the Notice of Claim filed pursuant to the Admiralty Extension Act.

26c..

The United States is liable to Plaintiffs under the Admiralty Extension Act.

26d.

The Industrial Canal is owned by the Port and the United States as aforesaid .

26e.

The flood waters which caused the damage to plaintiffs were not contained in or carried through a federal flood control project nor did it consist of waters such projects could not control.

26f.

The Inner Harbor Navigational Canal, New Lock Project, authorized by the Act of Congress approved March 29, 1956,  November 7, 1986 and October 12, 1996 completed in June 2005  (P.L. 104-303) of the Industrial Canal altered the flow of waters advancing from the Gulf of Mexico through the Mississippi River Gulf Outlet and the Intracoastal waterway in a manner not contemplated by the Lake Pontchatrain and Vicinity Plan contributing to the failure of the banks and walls of the Industrial Canal and which resulted in damage to Plaintiffs' properties and causing their losses.

64a.

The defendant Port had the care, custody and control of the Industrial Canal having

acquired the lands from the Ursulines and retaining an interest in same and is, accordingly,

answerable for Plaintiffs damages under Civil Code Articles 2317 and 2317.1.

64b.

The defendant had the care, custody and control of the Locks it caused to be constructed

in the Industrial Canal.

WHEREFORE, Plaintiffs pray that the defendants be duly cited to appear and answer this

Amended Complaint, and after due proceeding had, there be judgment in Plaintiffs' favor and

against defendants.

Respectfully submitted,

/s/ William C. Gambel
WILLIAM C. GAMBEL, Bar # 5900
MILLING BENSON WOODWARD, LLP    909 Poydras Street, Suite 2300
New Orleans, LA 70112
Telephone: (504) 569-7210
wgambel@millinglaw.com

Attorneys for Plaintiffs

John J. Cummings, III (#4652)
Cummings & Cummings
416 Gravier Street
New Orleans, LA  70130
Phone:  (504) 586-0000
Fax:      (504) 522-8423

W363824

CERTIFICATE OF SERVICE

     I certify that on this 16th day of August, 2007, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana, and all counsel of record are being served this filing by either the Court's electronic filing system, email, or by telefaxing and/or placing a copy of same in the United States mail, properly addressed with adequate postage affixed thereon.

                            /s/ William C. Gambel

W363824