UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KATRINA CANAL BREACHES § | CIVIL ACTION |
| CONSOLIDATED LITIGATION § | NO.   05-4182 "K"(2) |
| § | JUDGE DUVAL |
| § | MAG. WILKINSON |
| _____ § | |
| § | |
| PERTAINS TO: § | |
| § | |
| LEVEE CASES § | |
| _____ § | |

## OPPOSITION TO LEVEE DEFENDANTS' MOTION TO EXTEND DEADLINES FOR DEFENDANTS CLASS-CERTIFICATION EXPERT REPORTS

**NOW INTO COURT**, through undersigned counsel, comes the Levee PSLC in the above referenced matters, which vehemently opposes the Levee Defendants' Motion to Extend Deadlines for Defendants Class-Certification Expert Reports, for the following reasons:

**I.**

**OVERVIEW**

As the schedule currently stands, the Levee Defendants' (hereinafter the "defendants") expert reports will be due on August 29, 2007.  With the Levee PSLC's memorandum regarding class certification due on September 10, 2007, the Levee PSLC is already saddled with a short time frame of 11 days to prepare its Memorandum in Support of the Motion for Class Certification.

Any prejudice claimed by the defendants as a result of the current schedule is of dubious distinction because the defendants have already benefitted from an expert disclosure schedule in which all of the Levee PSLC's expert reports were turned over 29 days before their own expert

reports are produced and the depositions of the Levee PSLC's experts <u>completed</u> before the defendants' reports are due. (See Exhibit "A").

If the two week extension is granted, the defendants' expert reports will be due on the same day as the Levee PSLC's class certification memorandum, which will result in undue prejudice to the Levee PSLC.

## II.

## **FACTS**

Ordinarily, the exchange of expert information is done on a simultaneous basis, as governed by Rule 26, *et. seq.*, of the Federal Rules of Civil Procedure. In the present case, the court's Case Management and Scheduling Order No. 4 (CMO # 4) and subsequent Motions to Amend CMO # 4 staggered the production of reports for class certification. This allowed the defendants to benefit not only from the production of expert reports, but also to secure the deposition testimony of these experts before the defendants' expert reports are produced.

That defendants are seeking an extension should come as no surprise to the Court. This is just another in a long line of attempts to extend the deadlines established by CMO #4, and the reasons for this extension are just as transparent as those asserted previously. Plaintiffs are required to file their motions in support of class certification on September 10, 2007 (Document 6825), which by no coincidence is the same day that the defendants want to provide their expert reports.

From the outset of discovery, the Levee PSLC has made it clear that the bases for its experts opinions would rely substantially on the findings contained in the IPET report, as well as other publicly available reports such as the ILIT and Team Louisiana reports. The testimony to be

presented at the class certification hearing would focus in great part on the following areas:

    A.    the *sources* of inundation of class area.;
    B.    the *causes* of inundation of class area;
    C.    the *process* of inundation of class area;
    D.    the *timing* of inundation of class area;
    E.    information *reflecting the depth* of inundation of class area;
    F.    information *reflecting the duration* of inundation of class area;
    G.    infomation *reflecting the recession* of inundation of class area.

Even at this early stage, the United States began a systematic effort to extend the deadlines of CMO #4. The United States vacillated in its written discovery responses to those discovery requests seeking information concerning the innundation issues set forth above. The Corps responded that the information sought was "publicly available and, therefore, obtainable from some source that is more convenient, less burdensome, and less expensive. Fed.R.Civ. P., Rule 26(b)(2)(C)(I). The United States refers Plaintiffs to the website containing the IPET report and other documentation that may be relevant to this request. See https://ipet.wes.army.mil/." However, the Corps consistently held that the opinions of IPET are "not necessarily the official opinion of the United States Army Corps of Engineers.

When the PSLC heeded this directive and turned to the IPET website for the information, it was determined that the IPET website did not allow public access to a plethora of information upon which the IPET report was based. This information was password protected, accessible only to members of the IPET team and/or the government. Then, the United States refused to provide the password!

To overcome this dilatory tactic, the PSLC developed a deposition notice pursuant to F.R.C.P., Rule 30(b)(6) to obtain this relevant data. The United States resisted the effort to have it

appear, instead relying upon the production of two hard drives of information on June 15, 2007 as a fulfillment of its obligations under F.R.C.P., Rule 30. Upon review of these hard drives, the purpose for the United States' delay became clear. The hard drives contained a data dump, with no apparent organization. There are approximately 400 gigabytes of data that was effectively useless without an organizational structure. In addition, some of the files would not open due to error messages that refer to improper access authorization due to network settings.

Unfortunately, the United States lulled the PSLC into postponing the Rule 30(b)(6) Deposition. Over the course of the next month, the United States provided varying degrees of technical support. However, the Levee PSLC could not wait on this and was required to expend considerable resources while the experts poured over millions of pages of uncollated data. Despite the efforts of the defendants to overwhelm the Levee PSLC, the deadline to provide expert reports was met.

The defendants completed all of the class certification fact witnesses by August 3, 2007. By the end of this week, all of the Levee PSLC's experts will have been deposed as well.

### III.

### ARGUMENT

The defendants argue that they are prejudiced by five (5) distinct elements that constitute good cause for the extension to be granted.

Indeed, eight (8) new class representatives were substituted, but they have already been deposed and their properties inspected. These individuals' properties were in the same neighborhoods as the proposed class reps for whom they were substituted, so the causes of loss are not wholly different than those already known by the defendants. This is particularly

important in considering the alleged prejudice suffered by the enlargement of Subclass 2.

The enlargement simply corrected a clerical error naming Bayou St. John as the westernmost boundary of the subclass instead of the Orleans Canal.  In making this correction, the southernmost boundary of City Park Avenue did not change; the only addition was City Park and the residential area north of City Park, Lake Vista.  The defendants have failed to specify how this enlargement prejudices them for class certification purposes, especially since none of the new class representatives live in City Park or the Lake Vista neighborhood.

The new defendant recently added was merely an insurance company that insured one of the already named defendants, so its interests have been and continue to be adequately protected by the substantive defendant.

The defendants further complain that they will be prejudiced by the updating of one of the Levee PSLC's expert report.  As indicated in Exhibit 1 of defendants' Motion (Doc. 7043-3), Chad Morris (hereinafter "Morris") indicated that the Corps of Engineers provided an additional 500 gigabytes of data the week the report was due.  It is only prudent for Morris to qualify his opinion based upon the information provided to him to date.  Now that more information has been obtained, Morris's opinion would only incorporate data and conclusions recently provided.  For the Corps to complain that its' own expert is prejudiced by the late production of its own data to the plaintiffs is ludicrous.

Obviously, the Corps has had access to the entirety of the information that the plaintiffs' experts are relying for a period of time substantially greater that the plaintiffs' experts.  In consideration of this clear advantage to the defendant, one would expect some great wisdom to be imparted explaining how the defendants are prejudiced.  Disappointingly, defendants merely state

that they will need more than six (6) days to digest Mr. Morris's update of Corps information because "until defendants receive such updates, defendants are unable to forward same to their experts for consideration in the preparation of their reports."

What hypocrisy! This court should deny the defendants' Motion outright based upon this assertion alone, in essence telling the defense experts to review their own client's materials.

The final factor that the defendants rely upon is the Supplement to the TU Delft Report dated August 3, 2007. (Exhibit 2, Doc. 7043-4). This report does nothing more than clarify the difference between IPET and Delft Polder Flood Simulations, which should be obvious to the defendants anyway since the IPET report was developed by the Corps of Engineers and referenced heavily by all of the defendants in their written discovery responses. Here, defendants are again simply asserting the tired argument that this new material needs additional review.

## IV.

## CONCLUSION

By evaluating the reasons for the bringing this motion with a critical eye, it becomes apparent that the defendants merely seek to extend the class certification deadlines by pushing the Levee PSLC into the untenable situation of having to provide its Memorandum in Support of the Motion for Class Certification to the Court without the benefit of the defendants' expert reports.

The defendants have consistently delayed production of pertinent discovery to hinder the Levee PSLC in meeting its expert deadlines, all to no avail. Now, the defendants continue their efforts to retard this prosecution of this case by claiming that they cannot adequately evaluate the materials of the Plaintiffs' experts in a timely fashion, all while avoiding the admission to the court that the materials which they claim they have not had adequate access to are fact the

materials they have produced.

As such, the Levee Defendants' Motion to Extend Deadlines for Defendants Class-Certification Expert Reports must be denied.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**

    /s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS LIAISON COUNSEL
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775

-and-
GERALD E. MEUNIER (La. Bar #9471)
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Phone:504/522-2304
Facsimile:504/528-9973
E-mail:gmeunier@gainsben.com
Levee PSLC Liaison Counsel

**CERTIFICATE OF SERVICE**

    I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 20th day of August, 2007.

                                           /s/ Joseph M. Bruno

                                           Joseph M. Bruno