UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 |
| PERTAINS TO:<br>LEVEE AND MRGO | SECTION "K"(2) |

### ORDER AND REASONS

Before the Court are the following motions:

1) Motion for Appointment of a Special Master (Doc. 7225) and

2) Motion for Plaintiffs' Permanent Master Committee (PMC) for Appoint of Curator Pursuant to Federal Rule of Civil Procedure 53 (Doc. 7269).

These matters came for hearing this day and having heard counsels' arguments and having reviewed the memoranda and the relevant law, the Court is prepared to rule thereon.

As previously noted the thrust of both motions is for the Court to appoint an attorney to file suit on behalf of all persons who have filed administrative claims (Form 95) with the Army Corps of Engineers with respect to damages arising from the breaches of the levees in and around New Orleans at the time of Hurricane Katrina and/or damages caused by the design, maintenance and operation of the MRGO all as more particularly described in the various complaints pending before this Court under this umbrella litigation and who are not yet specifically represented by counsel and who will not be named in the suits to be filed by counsel on or before August. 29, 2007. In this case, such a suit would apply to all persons who filed their Form 95's, against the Corps of Engineers, on or before March 1, 2007.

The genesis for these motions arises from the fact that the PMC has been provided with information from the Army Corps of Engineers ("the Corps") that indicates that 350,000 claims

have been filed; however, the data as provided is less than clear as it pertains to claimants' indication as to whether they are represented by counsel.  At the hearing, Plaintiffs Steering Committee indicated that if allowed, the suit would name all parties who have filed Form 95s, even those who are or may be represented by counsel.  Moreover, the complaint would not only allege admiralty jurisdiction under the appropriate federal statutes, Suits in Admiralty Act ("SAA"), 46 U.S.C. § 30903 (formerly 46 U.S.C. app. § 745),  the Public Vessels Act ("PVA"), 46 U.S.C. § 31102 (formerly 46 U.S.C. app. § 782), and the Admiralty Extension Act, ("AEA"), 46 U.S.C. §30101 (formerly 46 U.S.C. app. § 740) as a basis for jurisdiction, but alternatively pursuant to the Federal Tort Claim Act, 28 U.S.C. § 1346(b), 2671 *et seq.* ("FTCA").   Counsel stated to the Court that because of the volume of claims involved, it is difficult in the time remaining (August 29, 2007) to ascertain the clients the respective lawyers have agreed to represent and those who have not retained an attorney.  Additionally, plaintiffs' counsel stated that since the admiralty and FTCA claims could not be divided, the FTCA claim should be plead in the alternative in this pleading.  Counsel for the PMC assured the Court that if the suit were filed, they would diligently go through the materials and eliminate duplication of named plaintiffs using the PMC's own resources.

   Counsel for plaintiffs argued that due to the general confusion among the public as to the appropriate statute of limitations, the diaspora that still affects the population of New Orleans, and the fact that many people may think that they are protected by class actions which  may or may not be certified and more importantly which may or may not be appropriate with respect to these AEA/FTCA claims, that the Court should enter this extraordinary order.

The Government opposed the motions and stated, *inter alia,* that there was no basis for admiralty jurisdiction, there was no showing that the persons who have not filed suit were incompetent or minors, and further that these unrepresented persons actually intended to make a claim in federal court.

Unfortunately, the motions before the Court were filed on August 22, 2007, and in order for any ruling thereon to be meaningful, must be decided post haste.

There is scant precedent to guide the Court. One instance presented arose in the context of consolidated suits filed in the United States District Court for the Eastern District of Louisiana as a result of a tragic ferry accident. In a Minute Entry entered December 15, 1976 in the *McKeithen v. S.S. Frosta,* C.A. No. 76-3251, (Doc. No. 21), Judge Alvin Rubin in a Pre-Trial Order No. 2 stated:

> Plaintiffs' counsel having advised the Court that a Trial Committee has been formed, and their names having been set forth in Pre-Trial Order No. 1, and their having orally suggested to the Court that the time for filing claims has not yet elapsed and there are potential claimant who have not yet entered an appearance and that these persons may not be represented by counsel and that therefore the Court should appoint counsel to act on behalf of any potential claimants who are unrepresented in these proceedings until such time as to persons enter an appearance through counsel of their own selection or otherwise indicate that they do not with to be represented in this matter, the Court hereby appoints William Jefferson, Esq. a member of th bar of this Court . . . .

*Id.*

Although not directly on point the Court found another instance where a court appointed a legal representative for future claimants in certain asbestos litigation. In *In re Joint Eastern and Southern Dist. Asbestos Litigation*, 129 B.R. 720 (E.D.N.Y. 1991) the Court stated:

> The long latency period for disease resulting from exposure to asbestos, which can take twenty to forty years after the victim's exposure to manifest itself, necessitated the appointment of a legal representative for those who will contract

>asbestos-related injuries and consequently seek compensation from the Trust in the future ("future claimants"). The number of future claimants is impossible to predict with certainty. Special Master Frankel adopted the Trust's best current estimate that it will receive roughly 47,000 additional claims.

*Id.* at 771.  The Court notes that there is a difference here in that the number of claimants are not unknown; however, the other circumstances outlined herein make this distinction less compelling.

The situation before the Court is indeed unique.  The claimants who filed Form 95s were victims of the most massive natural and man-made disaster in this country's history.  Hundreds of thousands of residents were compelled to leave the New Orleans metropolitan area and vicinity in Katrina's immediate aftermath, and many thousands have not returned.

Additionally, compounding the problems facing these claimants is the difference in the statute of limitations between the AEA and the FTCA.  In order for a claim to be timely under the AEA, it must be filed on or before August 29, 2007;  this assumes that a Form 95 was timely filed.  Under the FTCA, prescription does not run until the Government denies the claim; thereafter, a claimant has six months to file suit.  The Government has not filed any denials of claims at this time.  Therefore, many claimants could be lulled into a false sense of security for not understanding the dramatic difference between the AEA and the FTCA.   To further compound the equation, jurisdiction under each is exclusive–that is if the claim should arise under admiralty law, no claim would rest under the FTCA and vice versa.

It should be noted that this Court apprised the parties today that it is considering granting the Government's motion to strike all admiralty claims urged against the Government.  However, if the Court were to be reversed, many thousands of people would lose their rights as a claim against the Government which sounds in admiralty may not be brought pursuant to the FTCA.

Additionally, in the normal course of events,  the class actions that are pending would protect a putative plaintiff whether the class is certified or not.  However, the Government has stated that it intends to take the position that no class action is available when a claim is being made under the AEA or the FTCA.  Again, an unsuspecting claimant could be caught in the myriad  and complex switches that exist in this massive and complex litigation.  Indeed, the mere fact that these plaintiffs filed Form 95s demonstrate a clear intention to pursue their claim against the United States by taking all necessary and legally required steps.

This Court is of the view that its authority to grant the PMC's motion is rooted in its equitable powers, and Rule 17(c) of the Federal Rules of Civil Procedure.  On its face, Rule 17(c) allows the Court to appoint a guardian ad litem for an infant or incompetent person to protect his or her interest when he or she is not represented.

As one commentator has noted:

> The district court's power to appoint a guardian ad litem under Rule 17(c) has been broadly interpreted and has not been limited by a narrow construction of the words "infant" or "incompetent person."  For example, the scope of the rule has been extended to permit a court to appoint a guardian ad litem to represent the interests of unborn children.  In another case, a three–judge court appointed a guardian ad litem for seven inmates of a mental institution who had brought a class action challenging the constitutionality of a state mental health statute.  In determining the extent of its power under Rule 17(c), the court should be guided by its appraisal of the particular party's ability to protect his interests in the litigation adequately.

Wright, Miller, & Kane, *Federal Practice and Procedure: Civil 2d* § 1570 at 504 (1990).

The Court clearly recognizes that it is being asked to make an appointment for persons who certainly in the main are neither infants nor incompetents.  The Court further recognizes that it is being asked to do something that is unprecedented.  The Court has considered this matter carefully and has attempted to  balance the exceptional nature of this remedy with the

exceptional circumstances that face the victims of Hurricane Katrina.  As stated above, in determining the extent of its power, under Rule 17(c), "the Court should be guided by its appraisal of the particular party's ability to protect his interest in the litigation adequately." *Id.* The Court has personally observed the confusion and bewilderment involved in the legal nuances present in this litigation.  The Court has made these personal observations by reading memoranda and listening to attorneys in its court having a complete misunderstanding of the law.  Certainly, it is understandable that some the victims could not be expected to understand when their claims need to be filed for all of the reasons stated above.

Therefore, in the interest of justice, pursuant to Fed. R. Civ. P. 17(c) and the Court's equitable powers,

**IT IS ORDERED** that the Motion for Appointment of a Special Master (Doc. 7225) and the Motion for Plaintiffs' Permanent Master Committee (PMC) for Appoint of Curator Pursuant to Federal Rule of Civil Procedure 53 (Doc. 7269) are **GRANTED** in the following aspects:

(1) The Court appoints the Attorney General of the State of Louisiana Charles C. Foti, Jr. who has represented to the Court that he would be willing to undertake such a responsibility as Guardian Ad Litem for the Unrepresented Plaintiffs in these proceedings who filed Form 95s on or before March 1, 2007.

(2) The Attorney General shall file suit on behalf of these unrepresented plaintiffs on or before August 29, 2007.

(3) All costs, expenses and fees attendant with this appointment, if any, shall be borne by the PMC.

(4)     Upon the filing of the suit, it shall be immediately administratively closed subject to any appropriate party filing a motion to open the matter.

(5)     The Attorney General, the Plaintiffs' Steering Committee and the United States shall **no later than November 26, 2007**,  propose a protocol as to (1) the method of notifying the unrepresented clients; (2) eliminating any duplication of claimants who are in fact represented;  (3) determining how these unrepresented parties will indicate whether they want to opt-in or opt-out of this litigation; (4) draft the specific notice that will be confected to advise these persons on selecting an attorney; and (5) any other matters that will be necessary for the administration of this order.

By this order, all claimants who have not filed suit are put on notice that the validity of this order may well be challenged, and it is in their interest to immediately seek counsel and file their respective claims if they wish to pursue them.  As stated, the Court has had an extremely truncated time period to deal with this complex issue presented to it, and all claimants should be

aware that the order is not an absolute panacea and that they must take responsibility for the prosecution of their own lawsuit against the Corps, should they so choose.

New Orleans, Louisiana, this 24th day of August, 2007.

_____
**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**