# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION<br><br>PERTAINS TO:<br>Levee/MRGO (Bourgeois, No. 06-5131; Ferdinand, No. 06-5132; Christophe, No. 06-5134; Williams, No. 06-5137; Porter, No. 06-5140) | CIVIL ACTION<br><br>NO. 05-4182<br>& Consol. Cases<br><br>SECTION "K" (2)<br>JUDGE DUVAL<br><br>MAGISTRATE WILKINSON |

## MEMORANDUM IN OPPOSITION TO MOTION TO AMEND COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES AND REQUEST FOR JURY TRIAL

**MAY IT PLEASE THE COURT:**

### Introduction

Leave to amend a Complaint should be denied if the proposed amendment would be futile. An amendment is futile if it would be subject to dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs' original Complaints against the Board of Commissioners of the Port of New Orleans (hereinafter "the Port") are the subject of a Rule 12(b)(6) motion that is currently under advisement. Plaintiffs' now propose to amend their original Complaints to assert strict liability claims against

1

the Port under La. C.C. Arts. 2317, 2317.1, and La. R.S. § 9:2800. But Plaintiffs have failed to allege all of the elements necessary for such a claim. Moreover, Plaintiffs' proposed amended allegations against the Port arise out of the alleged failure of certain floodwalls in the vicinity of the Industrial Canal. The Port, however, has no statutory duties or responsibilities with regard to flood control. The question before this Honorable Court is whether Plaintiffs' should be denied leave to amend their Complaints against the Port on the basis that the amendments proposed are futile.

## Background

Plaintiffs, in the above-referenced actions, have requested leave of court to amend their various Complaints. In their supporting Memoranda, Plaintiffs represent that: (1) no defendant will be prejudiced; (2) the amendments define the claim against the United States; (3) the amendments clarify the claims asserted; and (4) "as they relate[ ] to defendants other than the United States, the amendments merely elaborate of allegations previously made as a result of information only recently discovered."[1] Despite Plaintiffs' representations to the contrary, the proposed Amended Complaints do not merely elaborate their prior allegations against the Port, but rather the Plaintiffs seek to assert a new claim against the Port—namely, that "the Port had the care, custody, and control of the Industrial Canal … and is, accordingly, answerable for Plaintiffs' damages under Civil Code Articles 2317 and 2317.1."[2]

---

[1] See, Rec. Doc. No. 7080-2 at p. 2; Rec. Doc. No. 7081-2 at p. 2; Rec. Doc. No. 7083-2 at p. 2; Rec. Doc. No. 7084-2 at p. 2; Rec. Doc. No. 7088-2 at p. 2.

[2] See, Rec. Doc. No. 7080-6 at ¶ 63, p. 7; Rec. Doc. No. 7081-6 at ¶ 64a, p. 8; Rec. Doc. No. 7083-6 at ¶ 27e, p. 9; Rec. Doc. No. 7084-6 at ¶ 63, p. 8; Rec. Doc. No. 7088-6 at ¶ 63, p. 7.

2

Nearly seven months ago, the Port filed a Rule 12(b)(6) Motion to Dismiss the Plaintiffs' original Complaints for failure to state a claim upon which relief could be granted.[3] The Port's Motion was set for hearing, without oral argument, on March 23, 2007, and is currently under advisement. The original Complaints, despite the existence of overwhelming caselaw precedent to the contrary, sought to hold the Port vicariously liable to the Plaintiffs under certain Congressionally-mandated Acts of Assurance that the Port had executed in favor of the United States in conjunction with the federal funding and construction of the Mississippi River-Gulf Outlet and other projects. The original Complaints did not allege any wrongdoing on the Port's behalf. Instead, the Plaintiffs simply claimed status as third-party beneficiaries of the Acts of Assurance and dubiously asserted a direct action against the Port as an "insurer" under La. R.S. § 22:655.

Now, to the detriment and prejudice of the Port, Plaintiffs seek to thwart the Port's pending Rule 12(b)(6) motion and stave off the inevitable consequences of dismissal by amending their Complaints to add a new strict liability claim against the Port. Plaintiffs have made no showing as to why this claim could not have been included in their original Complaints that were filed nearly one year ago. Nor have Plaintiffs given any explanation for waiting nearly seven months after the Port filed its motion to dismiss to assert new claims. Including such allegations in their original Complaints would have allowed the Port to dispose of Plaintiffs' meritless claims in one motion to dismiss rather than several. Nevertheless, as will be explained more fully below, because the

---

[3] See, Rec. Doc. Nos. 2935 (Port Motion and Supporting Memorandum), 3407 (Plaintiffs' Opposition Memorandum) & 3462 (Port Reply Memorandum in Support).

Plaintiffs' proposed new claims against the Port are equally as flawed as their original claims, the Plaintiffs' motions to amend their Complaints to include new allegations against the Port should respectfully be denied on grounds of futility.

**1. The decision to grant or deny leave to amend a pleading lies within the sound discretion of the District Court. A District Court does not abuse its discretion, however in denying leave to amend, if the proposed amendment would be futile.**

Plaintiffs filed their original Complaints herein on August 28, 2006, and the Port timely filed responsive pleadings. On January 31, 2007, the Port moved to dismiss the Plaintiffs' Complaints under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. Plaintiffs now seek leave to amend their pleadings nearly one year after their Complaints were originally filed.

Under Federal Rule of Civil Procedure 15, once responsive pleadings have been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party."[4] Although leave to amend "shall be freely given when justice so requires,"[5] such leave "is by no means automatic."[6] Factors the Court should consider in granting or denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."[7] A district court's decision to deny leave to amend a pleading is reviewed under an abuse

---

[4] See, Fed.R.Civ.P. 15(a).
[5] See, Fed.R.Civ.P. 15(a).
[6] See, Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993).
[7] See, Wimm, 3 F.3d at 139.

4

of discretion standard.[8] Thus, the decision to grant or deny leave to amend "is entrusted to the discretion of the trial court."[9]

Appellate Courts have held that a District Court does not abuse its discretion in denying leave to amend a pleading if the amendment would be futile.[10] The U.S. Fifth Circuit has recognized that an amendment to a Complaint is futile if "the amended complaint would fail to state a claim upon which relief could be granted."[11] In determining the futility of a proposed amendment, Courts "apply the same standard of legal sufficiency as applies under Rule 12(b)(6)."[12]

When considering a motion to dismiss for failure to state a claim, the district court "is to take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff."[13] However, if it appears without a doubt that the facts alleged, taken as true, would not entitle the plaintiff to the relief sought, the complaint should be dismissed.[14] "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[15] When the plaintiff's allegations are wholly conclusory and fail to set forth the facts which, if proved, would entitle plaintiff to the relief sought,

---

[8] See, United States v. Regents of the University of California, 363 F.3d 398, 403 (5th Cir. 2004).
[9] See, Barrett v. Independent Order of Forresters, 625 F.2d 73, 75 (5th Cir. 1980).
[10] See, Stripling v. Jordan Production Company, LLC, 234 F.3d 863, 872-73 (5th Cir. 2000).
[11] See, Stripling, 234 F.3d at 873.
[12] See, Stripling, 234 F.3d at 873.
[13] See, Fernandez-Montes v. Allied Pilots Ass'n., 987 F.2d 278, 284 (5th Cir. 1993).
[14] See, Fernandez-Montes, 987 F.2d at 284-85; Hoshman v. Esso Standard Oil Co., 263 F.2d 499, 502 (5th Cir. 1959), cert. denied, 361 U.S. 818, 80 S.Ct. 60, 4 L.Ed.2d 64 (1959).
[15] See, Fernandez-Montes, 987 F.2d at 284.

dismissal of the complaint is warranted.[16] To that end, dismissal of the plaintiff's complaint is warranted if it "lacks an allegation regarding a required element necessary to obtain relief."[17]

2. **The Plaintiffs' proposed Amended allegations against the Port are futile because the Plaintiffs' have failed to allege all of the elements necessary for a prima facie claim of strict liability against a public entity such as the Port.**

Keeping the foregoing basic principles in mind, it is respectfully submitted that Plaintiffs should be denied leave to amend because their proposed amended claims against the Port fail to state a claim upon which relief can be granted and are, therefore, futile. In their proposed Amended Complaints, Plaintiffs seek to assert claims against the Port under Louisiana Civil Code Articles 2317 and 2317.1. These articles read as follows:

> Art. 2317.   Acts of others and of things in custody
>
> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.[18]
>
> Art. 2317.1   Damage caused by ruin, vice, or defect in things
>
> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.[19]

---

[16] See, Fernandez-Montes, 987 F.2d 278; Hoshman, 263 F.2d 499; Davidson v. State of Ga., 622 F.2d 895 (5th Cir. 1980).
[17] See, Blackburn v. City of Marshall, 42 F.3d 925 (5th Cir. 1995).
[18] See, La. C.C. Art. 2317.
[19] See, La. C.C. Art. 2317.1.

6

Because, however, the Port is a public entity, the provisions of La. R.S. § 9:2800 are also implicated. Relevant portions of La. R.S. § 9:2800 state:

> § 2800. Limitation of liability for public bodies
>
> * * *
>
> C.    [N]o person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so. ...
>
> H.    (1)    Notwithstanding any provision of law to the contrary, except for gross negligence or willful and wanton misconduct, no person shall have a cause of action based solely upon liability imposed under Civil Code Articles 2317 and 2317.1 against a public entity for any damages arising from hurricanes Katrina or Rita, including aftereffects of either hurricane and post-hurricane restoration, repair, cleaning, and construction.[20]

Under Louisiana law, "[i]n order to prove public entity liability for a thing, a plaintiff must establish: (1) custody or ownership of the defective thing by the public entity; (2) that the defect created an unreasonable risk of harm; (3) that the public entity had actual or constructive knowledge of the defect; (4) that the public entity failed to take corrective measures within a reasonable time; and (5) causation."[21]

Applying the foregoing law, in order to have alleged a prima facie cause of action against the Port under these articles, Plaintiffs, at a minimum, were required to allege facts showing that: (1) the Port had custody or ownership of the floodwalls in question; (2) the defect in the floodwalls created an unreasonable risk of harm; (3) the Port had actual or constructive knowledge of

---

[20] See, La. R.S. § 9:2800 (C), (H)(1).
[21] See, Craft v. Sewerage and Water Board of New Orleans, 874 So.2d 908, 912 (La.App.4Cir. 2004), writ denied, 882 So.2d 1134 (La. 2004).

7

the defect; (4) the Port failed to take corrective measures within a reasonable time; and (5) causation. An examination of the proposed Amended Complaints, however, reveals that Plaintiffs make no such allegations against the Port. Instead, Plaintiffs' proposed allegations against the Port are wholly conclusory:

> The flooding was proximately caused by the failure of the flood wall on the East [or West] Bank of the Industrial Canal or Inner Harbor Navigational Canal and the surge from MRGO.[22] ...
>
> The defendant Port had the care[,] custody[,] and control of the Industrial Canal having acquired the lands from the Ursulines and retaining an interest in same and is, accordingly, answerable for Plaintiffs['] damages under Civil Code Articles 2317 and 2317.1.[23]

Examining these proposed allegations, first, Plaintiffs are making a Hurricane Katrina claim against the Port under La. C.C. Arts. 2317 and 2317.1, which arguably appears to be precluded by the plain wording of La. R.S. § 9:2800(H)(1) set forth above. Next, the Plaintiffs fail to allege all of the elements required to hold a public entity, such as the Port, liable for a thing under Louisiana law. In this regard, the Plaintiffs fail to allege that the Port had custody or ownership of the allegedly defective flood walls along the Industrial Canal. Nor do the Plaintiffs allege that the Port had actual or constructive knowledge of any such defects contained in the flood walls or that the Port failed to take appropriate measures to correct the alleged defects within a reasonable time.

---

[22] See, Rec. Doc. No. 7080-6 at ¶ 10a, p. 1 (East Bank); Rec. Doc. No. 7081-6 at ¶ 14a, p. 1 (West Bank); Rec. Doc. No. 7083-6 at ¶ 11a, p. 1 (West Bank); Rec. Doc. No. 7084-6 at ¶ 10a, p. 2 (East Bank); Rec. Doc. No. 7088-6 at ¶ 10a, p. 1 (East Bank).
[23] See, Rec. Doc. No. 7080-6 at ¶ 63, p. 7; Rec. Doc. No. 7081-6 at ¶ 64a, p. 8; Rec. Doc. No. 7083-6 at ¶ 27e, p. 9; Rec. Doc. No. 7084-6 at ¶ 63, p. 8; Rec. Doc. No. 7088-6 at ¶ 63, p. 7.

Finally, the Plaintiffs do not allege that anything the Port did or did not do was a cause of their alleged damages.

Given the foregoing, taking the Plaintiffs' proposed amended claims against the Port as true, because Plaintiffs have failed to allege all of the elements required for a valid claim under La. C.C. Arts. 2317, 2317.1, and La. R.S. §9:2800, their proposed amended claims against the Port necessarily fail as a matter of law. As such, the Plaintiffs' proposed amended allegations against the Port are futile, and leave to amend should respectfully be denied.

2. **Plaintiffs' proposed amended Complaints also fail to state a claim against the Port because the Port has no duties or responsibilities with regard to flood control.**

Moreover, even if Plaintiffs had properly alleged, or are given leave to allege, all of the elements required for a prima facie claim against the Port pursuant to La. C.C. Arts. 2317, 2317.1, and La. R.S. §9:2800, which is specifically denied, their proposed amended claims against the Port would still ultimately fail as a matter of law and be subject to later dismissal because the Port, by law, has no duty or responsibility for the levees and flood control devices at issue. While this may more appropriately be the subject of a subsequent motion for summary judgment if the Plaintiffs are granted leave to amend their Complaints, a brief overview showing the ultimate futile nature of the Plaintiffs' proposed amended claims against the Port will be provided below.

Plaintiffs' proposed amended claims against the Port appear to be based upon the alleged failure of the levees and flood walls on the East and West Banks of the Industrial Canal. To recover against the Port for these allegedly

9

defective "things," whether in negligence or strict liability, Plaintiffs must prove that the Port had custody or *garde* of the allegedly defective things— in this case, the levees and flood walls.[24] Custody or *garde* in this context means the right or power to "supervise and control" the allegedly defective thing.[25] A review of the powers delegated to the Port by the Louisiana Legislature, however, shows that the Port could not have had custody or *garde* over these allegedly defective things because the Port has not been delegated any power or responsibility for the maintenance and repair of levees and flood walls. In other words, the Port's rights and powers are necessarily limited to those delegated by statute and the Constitution,[26] which do not include any right or power with respect to the construction, maintenance, etc. of flood control systems.

The Louisiana Supreme Court has recognized that the powers granted to the Port are derived from the Louisiana legislature and the Louisiana Constitution:

> The Board [of Commissioners of the Port of New Orleans] is a state agency carrying on a public business— the operation of the Port of New Orleans. It is given the complete power to operate and regulate the port, wharves, landings, buildings, to expropriate, to legislate, to maintain a police force. R.S. 34:21-44. Its powers are derived from the legislature and the Constitution.[27]

Historically, those powers granted to the Port have been described as follows:

---

[24] See Smith v. State Department of Public Safety, 620 So.2d 1172, 1182 (La.App. 1 Cir. 1992); Jacobs v. Spinnakers, 474 So.2d 1019 (La.App. 5 Cir. 1985), writ denied, 478 So.2d 149 (La. 1985).

[25] See Socorro v. City of New Orleans, 579 So.2d 931 (La. 1991); Loescher v. Parr, 324 So.2d 441, 449 n.7 (La. 1975); Colleps v. State Farm General Ins. Co., 446 So.2d 988 (La.App. 3 Cir. 1984).

[26] See Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury, 371 So.2d 1127, 1131 (La. 1979)(Political subdivisions only possess those powers conferred by the State's Constitution and Statutes).

[27] See, Board of Commissioners of the Port of New Orleans v. Splendour Shipping & Enterprises Company, Inc., 273 So.2d 19, 20 (La. 1973).

10

> The [Port] has the power to regulate the commerce and traffic of the port and harbor of New Orleans in such manner as may, in their judgment, be best for its maintenance and development. They have the power, and it is their duty, to take charge of and administer the public wharves and landings of the port of New Orleans, to construct new wharves where necessary, and to erect sheds on the wharves to protect merchandise in transit, to place and keep the wharves and landings in good condition, maintain sufficient depth of water, and to provide for lighting and policing such wharves, sheds, and landings, etc.[28]

Today, the Port's powers are found primarily in Title 34 of the Louisiana Revised Statutes.[29] For example, La. R.S. § 34:21 provides the following:

> § 21. Rights and powers of Board in general
>
> A. (1) The board of commissioners shall regulate the commerce and traffic of the port and harbor of New Orleans in such manner as may, in its judgment, be best for the maintenance and development thereof.
>
> (2) However, such regulation of such commerce and traffic including international commerce in the parish of St. Bernard shall be governed by the provisions of R.S. 34:1701 et seq.
>
> B. It shall be the duty of the board:
>
> (1) To have charge of, and administer the public wharves, docks, sheds, and landings of the port of New Orleans;
>
> (2) To construct new wharves and other structures when necessary;
>
> (3) To erect sheds and other structures on such wharves or landings;
>
> (4) To place and keep these wharves and landings, sheds and other structures in good condition;
>
> (5) To maintain proper depths of water at all such wharves and landings;

---

[28] See, Warriner v. Board of Com'rs of Port of New Orleans, 62 So. 157, 159 (La. 1913).
[29] See, La. R.S. §§ 34:1-4, 21-30, 41-47.

>   (6)   To provide mechanical facilities for the use of such wharves and landings;
>
>   (7)   To provide light, water, police protection, and any other services for such wharves, landings, and sheds, as it may deem advisable;
>
>   (8)   To finance, erect, and operate all basins, locks, canals, and warehouse elevators;
>
>   (9)   To charge for the use of all facilities administered by it, and for all services rendered by it, such fees, rates, tariffs, or other charges as it may establish.[30]

Notably absent, however, from any list or description of the Port's powers is responsibility for flood control or the maintenance or repair of flood control devices. This is because the Louisiana Legislature has delegated the state's basic responsibility for flood control to other state agencies.[31]

Therefore, because the Port has no duties or responsibilities whatsoever with regard to flood control or the maintenance and repair of flood control devices such as levees and flood walls, it could not have had the requisite supervision or control or *garde* over the levees and flood walls at issue, and cannot be liable, as a matter of law, for their alleged vices and/or defects. Accordingly, the Port cannot be held liable, under either a theory of negligence or strict liability, for the alleged vices or defects of those flood control devices. As such, Plaintiffs' proposed Amended Complaints, even if properly alleged, fail to state a legally cognizable claim against the Port. Consequently, the Plaintiffs' proposed Amended Complaints, with regard to the Port, would be futile. Because the

---

[30] See, La. R.S. § 34:21.
[31] See, e.g., La. R.S. § 38:307; see also, Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 288 (La. 1986)("Under well settled principles, a levee board is a creature or agency of the state brought into existence for the purpose of discharging the state's duties of flood protection.").

12

proposed Amended Complaints against the Port are futile, Plaintiffs cannot be prejudiced by the denial of leave to amend. Given the foregoing, it is respectfully submitted that Plaintiffs' motion for leave to amend their Complaints to allege new allegations against the Port should respectfully be denied.

## CONCLUSION

In the face of a pending motion to dismiss, Plaintiffs seek leave to amend their Complaints to assert new strict liability claims against the Port. As explained above, the Plaintiffs have failed to allege all of the elements necessary for such claims. Moreover, even if Plaintiffs had alleged all of the necessary elements, the Port has no duties or responsibilities with regard to flood control and cannot be liable for the allegedly defective flood walls at issue. Consequently, Plaintiffs' proposed amended claims against the Port necessarily fail as a matter of law and are futile. Given the foregoing, it is respectfully requested that this Honorable Court deny Plaintiffs leave to amend their Complaints against the Port.

Respectfully submitted, this 28th day of August, 2007.

        DAIGLE FISSE & KESSENICH, PLC

BY:  /s/ Kirk N. Aurandt
       J. FREDRICK KESSENICH (7354)
       JONATHAN H. SANDOZ (23928)
       MICHAEL W. MCMAHON (23987)
       JON A. VAN STEENIS (27122)
       KIRK N. AURANDT (25336)
       P. O. Box 5350
       Covington, Louisiana 70434-5350
       Telephone: 985/871-0800
       Facsimile: 985/871-0899
       Attorneys for Defendant, The Board of
       Commissioners of the Port of New
       Orleans

## **CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this 28th day of August, 2007.

        /s/ Kirk N. Aurandt
        KIRK N. AURANDT